# EXHIBIT 15

# TO DECLARATION OF

# ANDREW C. SPITSER

# EXHIBIT 15

# TO DECLARATION OF

# ANDREW C. SPITSER

1   PATRICIA L. GLASER (Bar No. 055668)
    pglaser@glaserweil.com
2   GLASER WEIL FINK JACOBS & SHAPIRO
    10250 Constellation Blvd., 19th Floor
3   Los Angeles, California 90067
    Telephone: (310) 553-3000
4   Facsimile: (310) 557-9815

5   RUSSELL J. FRACKMAN (Bar No. 49087)
    rjf@msk.com
6   PATRICIA H. BENSON (Bar No. 60565)
    phb@msk.com
7   MITCHELL SILBERBERG & KNUPP LLP
    11377 West Olympic Boulevard
8   Los Angeles, California 90064-1683
    Telephone: (310) 312-2000
9   Facsimile: (310) 312-3100

10  Attorneys for Defendants
    MGA Entertainment, Inc., MGA Entertainment
11  HK, Ltd., MGAE De Mexico, S.R.L. De C.V., and
    Isaac Larian

12                  UNITED STATES DISTRICT COURT

13        CENTRAL DISTRICT OF CALIFORNIA -- EASTERN DIVISION

14  CARTER BRYANT, an individual,        CASE NO.  CV 04-9049 SGL (RNBx)

15              Plaintiff,               Consolidated with
                                         Case No.  CV 04-09059
16       v.                              Case No.  CV 05-02727
                                         DISCOVERY MATTER
17  MATTEL, INC., a Delaware             [TO BE HEARD BY DISCOVERY
    corporation,                         MASTER ROBERT O'BRIEN
18                                       PURSUANT TO ORDER OF
              Defendant.                 JANUARY 6, 2009]
19                                       MGA'S OPPOSITION TO MATTEL'S
                                         MOTION TO ENFORCE AND
20  AND CONSOLIDATED CASES              COMPEL RE TRADE DRESS
                                         INTERROGATORIES
21
                                         [DECLARATION OF JEAN PIERRE
22                                       NOGUES AND EVIDENTIARY
                                         OBJECTIONS FILED
23                                       CONCURRENTLY]
24                                       Date:     April 21, 2009
                                         Time:     10:00 a.m.
25                                       Place:    Arent Fox LLP
                                         **Phase 2**
26                                       Discovery Cut-off:    Dec. 11, 2009
                                         Pre-Trial Conference: March 1, 2010
27                                       Trial Date:           March 23, 2010

Mitchell
Silberberg &   28
Knupp LLP

2159926.1          MGA'S OPPOSITION TO MATTEL'S MOTION TO ENFORCE AND COMPEL RE
                                TRADE DRESS INTERROGATORIES

EXHIBIT 15 PAGE 281

Case 2:04-cv-09049-DOC-RNB    Document 6023-7    Filed 07/24/09    Page 3 of 124    Page ID
#:198250
Case 2:04-cv-09049-SGL-RNB    Document 5016    Filed 03/13/2009    Page 2 of 29

# TABLE OF CONTENTS

**Page(s)**

I.    INTRODUCTION ........................................................................................ 2

II.   STATEMENT OF RELEVANT FACTS ................................................. 5

III.  MATTEL HAS MISREPRESENTED THE PRIOR ORDER
      REGARDING INTERROGATORIES 43 AND 44, HAS
      MISREPRESENTED THAT MGA HAS "REFUSED" TO
      ANSWER THOSE INTERROGATORIES, HAS FILED AN
      UNNECESSARY MOTION, AND SHOULD BE
      SANCTIONED. ........................................................................................ 9

      A.    MGA Is Not In Violation Of Judge Infante's Order ...................... 9

      B.    MGA Has Not "Refused" To Answer Interrogatory Nos.
            43-44 ........................................................................................... 11

      C.    Sanctions And An Award Of Attorneys Fees Should Be
            Imposed On Mattel, Not MGA. .................................................... 13

IV.   MATTEL'S MOTION TO COMPEL RESPONSES TO
      INTERROGATORY NOS. 51-55 AND 64 IS
      PROCEDURALLY IMPROPER AND SUBSTANTIVELY
      WITHOUT MERIT, AND SHOULD BE DENIED ............................... 16

      A.    Mattel's Motion To Overrule MGA's Objection Must Be
            Denied Because Mattel Failed To Comply With The
            Requirement To Meet and Confer In Good Faith ......................... 16

      B.    Each Of The Newly-Challenged Objections Is Valid And
            Proper ........................................................................................... 18

            1.    The Definitions Of "SOLD," "SELL," SALE" and
                  "MATTEL" ......................................................................... 19

            2.    The Expert Witness Analysis Objection In
                  Interrogatory Nos. 51 and 53 Is Proper ............................ 20

            3.    Information Better Known to Mattel .................................. 21

            4.    Interrogatory Nos. 51-53 Are Compound .......................... 22

            5.    Some of the Interrogatories Are Duplicative of
                  Others Previously Asked and Answered ............................ 23

            6.    MGA's Undue Burden Objections Are Well-Taken ........... 24

            7.    MGA's Privilege Objections Should Not Be
                  Overruled ........................................................................... 25

Conclusion ......................................................................................................... 26

Mitchell
Silberberg &
Knupp LLP

2159926.1

i

MGA'S OPPOSITION TO MATTEL'S MOTION TO ENFORCE AND COMPEL RE
TRADE DRESS INTERROGATORIES

EXHIBIT 15 PAGE 282

## TABLE OF AUTHORITIES

**Page(s)**

## CASES

*1st Technology LLC v. Bodog Entertainment Group S.A.,*
    2009 WL 426605 (W.D. Wash. Feb. 19, 2009) ........................................ 14

*AMF Inc. v. Sleekcraft Boats,*
    599 F.2d 341 (9th Cir. 1979) ...................................................... 5, 25

*Coastal States Gas Corp. v. Department of Energy,*
    84 F.R.D. 278 (D. Del., 1979) ........................................................ 13

*Collaboration Properties, Inc. v. Polycom, Inc.,*
    224 F.R.D. 473 (N.D. Cal. 2004) .................................................... 23

*Durney v. Wave Crest Laboratories LLC,*
    441 F. Supp. 2d 1055, 1062 (N.D. Cal. 2005) ................................ 22

*In re Netflix Antitrust Litigation,*
    506 F. Supp. 2d 308 (N.D. Cal. 2007) .......................................... 13

*Jada Toys v. Mattel, Inc.,*
    518 F.3d 628 (9th Cir. 2008) ........................................................ 22

*Little v. City of Seattle,*
    863 F.2d 681 (9th Cir. 1989) ........................................................ 13

*Naviant Marketing Solutions v. Larry Tucker, Inc.,*
    339 F.3d 180 (3d Cir. 2003) ........................................................ 18

*Orchid Biosciences, Inc. v. St. Louis University,*
    198 F.R.D. 670 (S.D. Cal. 2001) .................................................. 13

*Robinson v. Potter,*
    453 F.3d 990 (8th Cir. 2006) ........................................................ 18

## STATUTES

28 U.S.C. § 1927 ............................................................................ 15

Mitchell
Silberberg &
Knupp LLP

2159926.1

ii

EXHIBIT 15 PAGE 283

1

## TABLE OF AUTHORITIES
### (continued)

2

**Page(s)**

3

Federal Rules of Civil Procedure

4

      26(c)...............................................................................13, 14

5

      37(a)..............................................................................16, 17

      37(B)..................................................................................15

6

      53(c)(2)...............................................................................15

7

## OTHER AUTHORITIES

8

Kendall et al., Matthew Bender Federal Practice Guide: Federal Civil

9

      Procedure in California § 22.40(4)(a) ........................................13

10

Schwarzer, Tashima & Wagstaff, Federal Civil Procedure Before

11

      Trial (Rutter Group 2008 ¶ 11:2386.........................................14

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Mitchell
Silberberg &
Knupp LLP

28

2159926.1

iii

EXHIBIT 15 PAGE 284

Case 2:04-cv-09049-DOC-RNB    Document 6023-7    Filed 07/24/09    Page 6 of 124    Page ID
#:198253
Case 2:04-cv-09049-SGL-RNB    Document 5016    Filed 03/13/2009    Page 5 of 29

# I.    INTRODUCTION

Mattel attempts to bury beneath a vitriolic brief and almost 700 pages of "exhibits" the real issue here:  Does it make any sense to require MGA to provide massive amounts of information about trade dress claims that, if Mattel is correct, will very shortly be dismissed on summary judgment *as a matter of law?*  Clearly, the answer is "no."

Despite Mattel's egregious distortions[1] and outright misrepresentations, MGA is *not* in violation of the prior Discovery Master's Order, nor has it "refused" to comply with that Order.  The prior Discovery Master never specified a date or time period after the Phase 2 discovery stay was lifted upon which MGA was supposed to provide further responses to Interrogatory Nos. 43 and 44.  MGA has *expressly* has represented that it *will* answer those interrogatories (as well as Interrogatory Nos. 51-55 and 64), and MGA has even proposed dates on which it will do so.

MGA's proposed response dates are the subject of a currently pending Motion for Protective Order that MGA filed one week *before* Mattel filed its Motion to Compel.  MGA's Motion for Protective Order asks the Discovery Master, among other things, to stay MGA's obligation to provide responses to Interrogatory Nos. 43, 44, 51-55 and 64 (the "Trade Dress Interrogatories") until the earlier of (1) 21 days after the Court decides Mattel's summary judgment motion, to the extent any trade dress claims remain, or (2) if the Discovery Master

---

[1] For example, Mattel begins its motion by suggesting that MGA has delayed providing answers to the subject interrogatories for "[a]lmost four years." *See* Mattel Memo. of Points & Authorities at 1:5-7 ("Almost four years later, MGA still has yet to respond to Mattel's interrogatories…")  That is simply not true. There are two sets of interrogatories at issue – one served approximately *four months before the then-applicable discovery cut-off date* (March 3, 2008) and the other served *less than three months before that cut-off date*. *See* Watson Decl. in Support of Mattel's Motion, Ex. 1 at 17 (Mattel's Amended Fourth Set of Interrogatories was served October 23, 2007), Ex. 11 at 225-26 (Mattel's Supplemental Interrogatories were served January 9, 2008).

Mitchell
Silberberg &
Knupp LLP

2159926.1                    MGA'S OPPOSITION TO MATTEL'S MOTION TO ENFORCE AND COMPEL RE
                                          TRADE DRESS INTERROGATORIES

EXHIBIT 15 PAGE 285

1   denies MGA's request for such a Protective Order, 21 days after denial of the

2   Motion for Protective Order.

3          Given the pendency of MGA's Motion for Protective Order, it was

4   completely unnecessary for Mattel to move to compel responses to the Trade Dress

5   Interrogatories. *Whether* MGA will provide responses is not an issue. The

6   question of *when* MGA will do so will be decided when the present Discovery

7   Master rules on MGA's Motion for Protective Order. Accordingly, Mattel's

8   Motion is without any justification whatsoever, let alone the "substantial

9   justification" that the Federal Rules of Civil Procedure demand. Mattel should be

10  sanctioned not only for filing an utterly unnecessary motion, but also for blatantly

11  misrepresenting that MGA has "violated" a prior Order and "refused" to answer

12  Interrogatories 43 and 44.[2]

13         Mattel also should be sanctioned for filing this Motion insofar as it asks the

14  Discovery Master to overrule certain objections MGA made to Interrogatory Nos.

15  51-55 and 64, because Mattel *never* met and conferred with MGA about the

16  objections it now challenges Mattel makes yet another flagrant misrepresentation

17  when it contends that "MGA refused to discuss its specific objections to these

18  interrogatories or whether it would be standing on its remaining objections when it

19  did provide responses." Not surprisingly, Mattel does not (because it cannot)

20  proffer an iota of admissible evidence to support this assertion.[3] Mattel did not

21

22  [2] Mattel also attempted an end-run around the Discovery Master and *both* MGA's
    Motion for Protective Order *and* its own Motion to Compel. Two (court) days
23  after filing its Motion to Compel, Mattel filed an improper *ex parte* application
    asking Judge Larson to hold MGA in contempt for supposedly violating the prior
24  Discovery Master's Order regarding Interrogatory Nos. 43 and 44 – thus seeking to
    preempt the Discovery Master's ruling on the very same issue Mattel had already
25  raised in the instant Motion to Compel. The Court declined to hear the matter,
    instead referring it to the Discovery Master, to whom the Court ruled, the matter
26  should have been addressed. *See* Declaration of Jean Pierre Nogues in Opposition
    to Motion to Compel ("Nogues Decl."), Exs. A and K.

27  [3] *See* MGA's Objections to Declaration of Declaration of Scott L. Watson In Supp.
    of Mattel's Motion ("Watson Decl."). Indeed, the exhibits attached to Mr.

28                                                                      (...continued)

Mitchell
Silberberg &
Knupp LLP

2159926.1

3

EXHIBIT 15 PAGE 286

1   raise the subject of the objections it now challenges either in its initial meet and

2   confer letter[4] or thereafter.  Nor did Mattel's counsel even attempt to discuss those,

3   or any other, objections with MGA's counsel when the parties had their telephonic

4   meet and confer discussions about the Trade Dress Interrogatories.  Watson Decl.,

5   Ex. 15.  MGA's counsel did not "refuse" to discuss MGA's objections to

6   Interrogatories 51-55 and 64 because the topic *was never broached* by Mattel's

7   counsel after MGA responded to Mattel's request for a response date by proposing

8   a stay of trade dress discovery pending resolution of Mattel's summary judgment

9   motion.  *See* Nogues Decl., ¶ 7; Watson Decl., Exs. 17-19.

10        Failure to sanction Mattel and its counsel under the circumstances present

11   here will simply encourage them to continue bombarding MGA (and the Discovery

12   Master) with unnecessary discovery motions[5], to continue shading the truth, and to

13   continue flouting their obligation to meet and confer in good faith.  MGA

14   respectfully requests the Discovery Master to make it clear to Mattel and its

15   counsel that this type of behavior is simply not acceptable.

16

17

18

19   (...continued)
     Watson's Declaration summarizing the February 6 meet and confer session  never
20   mention any alleged refusal to discuss objections to the Trade Dress
     Interrogatories.

21   [4] *Compare* Ex. 12 to Watson Decl. *with* Mattel Memorandum of Points and
     Authorities at 12:1-26:4.

22   [5] Indeed, one (court) day after filing *this*  unnecessary Motion to Compel, Mattel
     advised MGA that was going to (and did) file a *third* motion on the *identical*
23   interrogatories -- an *ex parte* application to the *District Court* seeking to hold
     MGA in contempt for "violating" the prior Master's order to answer Interrogatory
24   Nos. 43 and 44 --*precisely* the argument it has made in this Motion.  Nogues Decl.,
     Ex. A.  The Court declined to rule on the matter, and referred it to the Discovery
25   Master, holding that it should have been filed with the Discovery Master to begin
     with.  Nogues Decl. Ex. K.

26

27

28

Mitchell
Silberberg &
Knupp LLP

2159926.1

4

EXHIBIT 15 PAGE 287

## II.    STATEMENT OF RELEVANT FACTS[6]

**The Interrogatories.** At issue in this Application are eight Interrogatories, two (Nos. 43 and 44) propounded by Mattel on October 23, 2007, and six (Nos. 51 through 55 and 64) propounded on January 9, 2008.  Watson Decl., Exs. 1 and 12. All of these interrogatories (the "Trade Dress Interrogatories") sought information concerning MGA's claims that Mattel had wrongfully copied and diluted the trade dress of MGA products.  Specifically, they sought: dates of conception of the designs and products as to which MGA claims trade dress protection (Interrogatory No. 43); dates the items MGA claims are protected were first "fixed" in tangible form (Interrogatory No. 44); listings of Mattel products that infringed or diluted MGA's products, designs, concepts and packaging (Interrogatory No. 51); units of infringed products and items sold, and revenues, costs and profits relating to those sales (Interrogatory No. 52); facts relating to application of *Sleekcraft* factors[7] (Interrogatory No. 53); facts supporting allegations of willful copying and infringement by Mattel (Interrogatory No. 54); and facts supporting MGA's dilution allegations (Interrogatory No. 55)  *Id.*  MGA initially objected to Interrogatories 43 and 44 on November 15, 2007, and then supplemented its responses on November 30, 2007 and January 8, 2008.  *Id.*, Exs. 3 and 7.[8]  MGA

---

[6] In order to avoid burdening the Discovery Master with duplicative paperwork, this Opposition will, whenever possible, cite to exhibits to the Watson Declaration filed in support of Mattel's Motion to Compel.

[7] In *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979), the Court listed eight factors that should be considered in assessing the likelihood of confusion between two marks: strength of mark, proximity of goods, similarity of marks, evidence of actual confusion, marketing channels used, degree of care exercised by purchaser, defendant's intent and likelihood of expansion of product line. *Id.* at 348-49.

[8] It bears noting that MGA already has provided millions of pages of documents and voluminous pages of interrogatory responses, not to mention hours of deposition testimony, concerning its trade dress claims. *See, e.g.*, February Order Watson Decl., Ex. 8, at 174:1-8 (denying Mattel's Motion to Compel further responses to Interrogatory Nos. 48-50: "[T]he MGA parties' responses identify Mattel's 'My Scene' fashion dolls and pet dolls as the Mattel products that infringe their trade dress. The MGA parties also set forth the principal facts supporting (...continued)

EXHIBIT 15 PAGE 288

1   served objections to Interrogatories 51-55 and 64 on February 8, 2008, after the

2   Court stayed all Phase 2 discovery.  Watson Decl., Ex. 12.

3       **The February 15, 2008, Order.**  In December 2007, Mattel filed a motion

4   to compel further responses to twenty-three interrogatories, including

5   Interrogatories 43 and 44.  Watson Decl., Ex. 4.  On February 15, 2008, the former

6   Discovery Master (Hon. Edward Infante), issued a lengthy order in which he

7   denied Mattel's motion as to seventeen interrogatories, and granted it as to six

8   (after narrowing one of them) (the "February Order").  *Id.*, Ex. 8.  Among the six

9   interrogatories as to which Judge Infante ordered supplemental responses were

10  Interrogatories 43 and 44.  The February Order directed that further supplemental

11  responses be provided by February 26, 2008.  *Id.*

12      **The Phase 2 Discovery Stay And The Clarification Order.**  On

13  February 4, 2008, the Court stayed all Phase 2 discovery.  Believing that the

14  February Order, insofar as it required responses by February 26, 2008 to certain

15  Interrogatories, including Nos. 43 and 44, was in conflict with the February 4,

16  2008 Stay of Phase 2 discovery, MGA moved for clarification to Judge Infante.

17  Judge Infante granted the Motion for Clarification and stayed MGA's obligation to

18  respond to those Interrogatories:

19      "Having reviewed the interrogatories at issue in this
20      Motion for a second time, it is apparent that the
        interrogatories are relevant primarily, if not exclusively,
21      to Phase 2…. Accordingly, the MGA Parties' motion is
        granted.  The MGA Parties' obligation to supplement
22      their responses to Interrogatory Nos. 41, 43, and 44… are
23      hereby stayed until further order of the district court
        lifting the stay on Phase 2 discovery."
24

25

26  _____

27  (…continued)
    their contention that their trade dress is protectable under the applicable trade dress
    legal principles…")

28

Mitchell
Silberberg &
Knupp LLP

2159926.1

MGA'S OPPOSITION TO MATTEL'S MOTION TO ENFORCE AND COMPEL RE
TRADE DRESS INTERROGATORIES

EXHIBIT 15 PAGE 289

1   April 22, 2008, Order re: Clarification (the "Clarification Order") (Watson Decl.,

2   Ex. 10, pp. 206-07).

3        **The Stay is Lifted But No New Response Date Is Ordered.** On January 6,

4   2009, the Court lifted the discovery stay and appointed Robert O'Brien as

5   Discovery Master. Watson Decl., Ex. 13. Neither the Court nor the new

6   Discovery Master set a new deadline for compliance with the February Order, nor

7   did Mattel request either the Court or the Discovery Master to do so. Thus, there is

8   no extant order requiring MGA to provide supplemental responses to the

9   Interrogatories by any specific date.

10        **Mattel Advises MGA That It Intends Immediately To Move For**

11   **Summary Judgment On MGA's Trade Dress Claims.** The first meet and confer

12   letter Mattel sent after the Phase 2 stay was lifted did **_not_** pertain to discovery, but

13   to Mattel's intent to file a motion for summary judgment on MGA's trade dress

14   claims. On January 8, 2009 (less than 48 hours after the stay had been lifted),

15   Mattel sent a letter to counsel for MGA announcing that it planned to move for

16   summary judgment on MGA's trade dress claims on the theory that the Phase 1

17   verdicts precluded MGA from claiming trade dress rights in Bratz products as a

18   matter of law. Watson Decl., Ex. 16. On February 18, 2009, Mattel's counsel

19   stated that the summary judgment motion would be filed within a week after the

20   Court ruled on pending post-trial motions.[9]

21        **Mattel Demands that MGA Provide Supplemental Responses to the**

22   **Trade Dress Interrogatories; The Parties Meet and Confer.** In late January,

23   2009, Mattel sent letters to MGA's counsel inquiring when MGA would provide

24

25   [9] The parties disagree about whether Mattel's counsel stated that its summary judgment motion would be filed within a week or within weeks of the Court's decision on the pending Phase 1 matters. *Compare* Watson Decl., Ex. 23 *with*

26   Nogues Decl. Ex. D. Either way, it is clear that Mattel plans to file the motion quite promptly, and that with the current December 11, 2009, discovery cut-off,

27   there will be ample time to deal with trade dress discovery after the Court rules on that motion.

Mitchell
Silberberg &
Knupp LLP

28

2159926.1

7

EXHIBIT 15 PAGE 290

1  supplemental responses to the Trade Dress Interrogatories (thereby acknowledging

2  that there was no order requiring that responses to Interrogatories 43 and 44 be

3  provided by a specific date). Watson Decl., Exs. 14 and 15.

4       Thereafter, counsel met and conferred about the issue. Reasoning that it did

5  not make sense for MGA to provide detailed discovery that Mattel did not need for

6  its summary judgment motion, and whose relevance would depend on the outcome

7  of that motion, MGA proposed that the parties agree that supplemental responses

8  to the Interrogatories be provided within 30 days after the Court decided Mattel's

9  summary judgment motion. Watson Decl., Ex. 18. MGA's counsel said that if

10  Mattel were unwilling to agree, MGA would seek a protective order staying any

11  obligation to provide further responses to the Interrogatories until after a ruling on

12  the motion for summary judgment. *Id.* Mattel's counsel said they would

13  "consider" MGA's proposal. *Id.*, Ex. 19. On February 12, 2009, Mattel rejected

14  MGA's proposal, and demanded that MGA provide its supplemental responses by

15  February 27. *Id.*, Ex. 21.

16       MGA then proposed that it respond to the Interrogatories (a) if its protective

17  order motion were denied, within 21 days after that denial, or (b) if the motion

18  were granted, within 21 days after the Court's decided Mattel's summary judgment

19  motion. *Id.*, Ex. 23. Mattel did not respond to that proposal. Nogues Decl. ¶ 8.

20  **MGA's Motion For Protective Order and Mattel's Motion To Compel.**

21  On February 27, 2009, MGA filed its Motion for a Protective Order, requesting

22  that the Discovery Master issue an order staying MGA's obligation to provide

23  further responses to the Trade Dress Interrogatories until 21 days after the Court

24  decided  Mattel's motion for summary judgment or, if the Discovery Master denied

25  the Protective Order, 21 days after such denial. Nogues Decl. ¶ 9. The Discovery

26  Master set MGA's Motion for a hearing on April 14, 2009. *Id.*, Ex. E.

27

28

Mitchell
Silberberg &
Knupp LLP

2159926.1

8

MGA'S OPPOSITION TO MATTEL'S MOTION TO ENFORCE AND COMPEL RE
TRADE DRESS INTERROGATORIES

EXHIBIT 15 PAGE 291

1       Mattel filed its opposition to MGA's Motion on March 6, 2009.  Nogues

2   Decl. ¶ 11.  That same day, Mattel also filed its motion to compel further responses

3   to the Trade Dress Interrogatories.  *Id.* ¶ 12.[10]

4   **III.   MATTEL HAS MISREPRESENTED THE PRIOR ORDER**

5         **REGARDING INTERROGATORIES 43 AND 44, HAS**

6         **MISREPRESENTED THAT MGA HAS "REFUSED" TO ANSWER**

7         **THOSE INTERROGATORIES, HAS FILED AN UNNECESSARY**

8         **MOTION, AND SHOULD BE SANCTIONED.**

9

10       **A.   MGA Is Not In Violation Of Judge Infante's Order**

11       Judge Infante's Order directing MGA to provide supplemental responses to

12   Interrogatories 43 and 44 (Ex. 8 to Watson Decl.) was issued on February 15,

13   2008, eleven days after Judge Larson had stayed Phase 2 discovery.  The

14   February 15, 2008 Order did direct MGA to supplement those responses by

15   February 26, 2008.  *Id.*  *However*, Judge Infante subsequently *stayed* his own

16   Order, after "[h]aving reviewed the Interrogatories at issue for a second time," and

17   having concluded that Interrogatory Nos. 43 and 44 "are relevant primarily, if not

18

19   ─────────────

19   [10] Notwithstanding the pending motions before the Discovery Master, on March 9,

20   2009, Mattel's counsel informed MGA (for the first time) that Mattel would be filing an *ex parte* application with the Court "relating to MGA's continuing refusals and failures to comply with the Discovery Master's Order of February 15,

21   2008."  Nogues Decl., Ex. F.  Because Mattel's letter did not specify what "refusals and failures" it was referring to,  MGA's counsel asked for an

22   explanation, pointing out that an ex parte application was inappropriate in light of the many months remaining until the discovery cut-off, and that any dispute about

23   Interrogatory Nos. 43 and 44 was already was pending before the Discovery Master.  Nogues Decl., Ex. G.  At approximately 9:30 p.m. that evening, Mattel

24   wrote a curt response confirming that its *ex parte* Application would be directed to Interrogatory Nos. 43 and 44, and that "unless MGA immediately stipulates to

25   fully and completely supplement its responses as ordered, Mattel will file its ex parte application tomorrow."  *Id.*, Ex. H.  Mattel manually filed its ex parte

26   Application at approximately 12:30 p.m. on Tuesday, March 10, 2009, but did not send it to MGA's counsel (via e-mail) until a few minutes before 5:00 p.m.  *Id.*,

27   Exs. B and C.  The Court declined to hear Mattel's ex parte application, referring it, instead, to the Discovery Master.  *Id.* Ex. K.

28

Mitchell
Silberberg &
Knupp LLP

2159926.1

9

MGA'S OPPOSITION TO MATTEL'S MOTION TO ENFORCE AND COMPEL RE
TRADE DRESS INTERROGATORIES

EXHIBIT 15 PAGE 292

1    exclusively, to Phase 2." Ex. 10 to Watson Decl. at 205:22-23 and 206:1-4. The

2    former Discovery Master's Clarification Order expressly provided that "[t]he

3    MGA Parties' obligation to supplement their responses to Interrogatory Nos....43

4    and 44...[is] hereby stayed until further order of the district court lifting the stay on

5    Phase 2 discovery." *Id.* at 206:1-4. The former Discovery Master did not include

6    any specific date, or time period, after the Phase 2 stay was lifted within which

7    MGA had to provide supplemental responses.

8         Mattel itself recognizes that there is no extant order setting a date by which

9    MGA must respond. Thus, in its initial post-stay communication on the subject of

10   Interrogatory Nos. 43 and 44, Mattel's counsel wrote:

11              "On February 15, 2008, Judge Infante issued an order

12              compelling further responses to certain interrogatories

13              that Mattel had served. By order dated April 22, 2008,

14              Judge Infante clarified that the obligations of MGA and

15              MGA Mexico to respond to certain interrogatories were

16              stayed, as part of Phase 2 discovery. Now that the Phase

17              2 discovery stay has been lifted, please let me know

18              ***when*** we can expect the ordered supplemental

19              responses."

20   Ex. 14 to Watson Decl.)[11] Mattel's counsel did not even intimate there was a

21   specific deadline for responding, and they certainly have never been shy about

22   demanding compliance with orders, or threatening MGA for alleged violations of

23   orders. Absent an order ***expressly mandating*** an express response date, MGA is

24

25

26   [11] Despite these admissions and Judge Infante's ruling, Mattel has recently
     invented a theory that MGA was in contempt of Judge Infante's February Order
27   before he issue his Clarification Order. *See* Mattel Brief in Support of its *Ex Parte*
     Application 9. Clearly, Judge Infante did not think so.

28

Mitchell
Silberberg &
Knupp LLP

2159926.1

10

MGA'S OPPOSITION TO MATTEL'S MOTION TO ENFORCE AND COMPEL RE
TRADE DRESS INTERROGATORIES

EXHIBIT 15 PAGE 293

1   not in "violation" of anything, contrary to Mattel's repeated assertions. *See, e.g.,*

2   Mattel Motion at 1:11, 9:17, 10:2.[12]

3       **B.**     **MGA Has Not "Refused" To Answer Interrogatory Nos. 43-44**

4         Mattel's contention that MGA has "refused" to supplement its responses to

5   Interrogatory Nos. 43 and 44 is belied by the very exhibits it proffers in support of

6   its Motion.  In his February 6, 2009 letter to Mattel's counsel, MGA's counsel,

7   Jean Pierre Nogues, confirmed what he had said during the telephonic meet and

8   confer discussion earlier that day:

9           "This will *confirm* MGA's proposal during our meet-

10          and-confer-session today that MGA *would provide*

11          *further responses to Mattel's Interrogatories 43, 44,* 51

12          through 55, and 64, all of which deal with MGA's trade

13          dress claims, *not later than 30 days after the Court*

14          *decides the trade dress summary judgment motion*

15          which Mattel has indicated it will be bringing...."

16          [¶] I also advised that if Mattel did not agree to this

17          proposal, MGA would make a motion for a protective

18          order that would defer its obligation to respond until after

19          the Mattel summary judgment motion is heard."

20

21

22  [12] In its *ex parte* Application to the District Court, Mattel made the astonishing argument that "[u]nder any possible reading or scenario, the deadline for

23  compliance is long past," but it carefully refrained from identifying what that deadline was, or when it had expired.  More important, at no time during the

24  parties' meet and confer conversations about MGA's proposal to defer responses until Mattel's summary judgment motion was decided did Mattel *ever* intimate that

25  there was a "deadline" that Mattel either had violated or was about to "violate."  If Mattel *had* told MGA that it believed that a deadline for response was about to

26  expire, MGA would have sought *ex parte* relief from the Master.  Instead, Mattel chose to sandbag MGA by filing a motion to compel in which, *for the very first*

27  *time*, it accused MGA of violating the February 15 Order.

28

Mitchell
Silberberg &
Knupp LLP

2159926.1

MGA'S OPPOSITION TO MATTEL'S MOTION TO ENFORCE AND COMPEL RE
TRADE DRESS INTERROGATORIES

EXHIBIT 15 PAGE 294

1   Ex. 18 to Watson Decl. (emphasis added).  Mattel rejected this proposal by letter

2   dated February 12, 2009, in which its counsel demanded that MGA provide

3   supplemental responses on or before February 27, 2009.  (Ex. 21 to Watson Decl.).

4        Mr. Nogues then made an alternative proposal:

5             "[The MGA Parties] *offer to provide their supplemental*

6             *responses either:* (1) if the protective order motion is

7             denied, *21 days after its denial; or* (2) if the protective

8             order motion is granted, *21 days after the Court decides*

9             *Mattel's summary judgment motion,* to the extent any

10            trade dress claims remain after that decision."

11   (Ex. 23 to Watson Decl.) (emphasis added)[13]  In short, this is a dispute about the

12   timing of the supplemental responses; it is *not* a dispute about whether they will be

13   provided.[14]

14        Because Mattel has already (over) burdened the Discovery Master with

15   pounds of paper, MGA will not repeat here the arguments set forth at length in its

16   opening and reply briefs in support of its Motion for Protective Order, which

17   address MGA's position on the "when" question.  Instead, MGA incorporates

18   those briefs (and the supporting declaration and exhibits) by reference, and based

19   thereon respectfully submits that the Discovery Master should deny Mattel's

20   Motion to Compel.

21

22

23

24

25   [13] Mattel never responded to this proposal.  Nogues Decl. ¶ 8.

26   [14] Mattel attempts to twist a dispute over timing that into a "refusal to respond" by
     sleight-of-hand references to objections made by Phase 1 counsel almost a year
     *before* Mr. Nogues expressly stated that MGA *would* respond.  *See* Mattel Memo

27   of Points and Authorities at 10:10-11 and n. 54 (citing relevance objections
     prepared by Phase 1 counsel on March 3, *2008*).

28

Mitchell
Silberberg &
Knupp LLP

2159926.1

12

EXHIBIT 15 PAGE 295

1    **C.    Sanctions And An Award Of Attorneys Fees Should Be Imposed**
2    **On Mattel, Not MGA.**

3    With almost unbelievable chutzpah, Mattel argues that is entitled to

4    sanctions because MGA "forced" it to file a motion to compel responses to

5    Interrogatories. Nothing of the sort occurred. As discussed above, there is no

6    dispute about whether MGA will respond to Interrogatories 43 and 44, only when,

7    and MGA had already brought the "when" question to the Discovery Master one

8    week *before* Mattel filed the instant motion to compel. Mattel's motion to compel,

9    was entirely unnecessary.

10    Significantly, the "when" question only arose after Mattel announced that it

11    was imminently moving for summary judgment on MGA's trade dress claims

12    (based on the Phase 1 verdicts) but *simultaneously* demanded that MGA provide

13    detailed factual information about the very causes of action Mattel contends

14    *cannot exist as a matter of law* because of the Phase 1 verdicts. When Mattel

15    rejected MGA's informal request to defer the responses until after the summary

16    judgment motion was decided, MGA took the legally appropriate step of moving

17    for a Protective Order. *See* Fed. R. Civ. Proc. 26(c) ( "[t]he court may, for good

18    cause, issue an order to protect a party or person from annoyance, embarrassment,

19    oppression, or undue burden or expense [by]. . . (B) specifying terms, including

20    time and place, for the disclosure or discovery."

21    Cases are legion that recognize the propriety of staying discovery when, as

22    here, a dispositive motion, such as a summary judgment motion, "would obviate

23    the need for discovery." Kendall et al., Matthew Bender Federal Practice Guide:

24    Federal Civil Procedure in California § 22.40(4)(a). *See, e.g., Little v. City of*

25    *Seattle,* 863 F.2d 681, 685 (9th Cir. 1989) (as amended) (stay of discovery pending

26    resolution of dispositive immunity issue appropriate because it "furthers the goal of

27    efficiency for the court and litigants."); *In re Netflix Antitrust Litigation,* 506 F.

Mitchell
Silberberg &    28
Knupp LLP

2159926.1

MGA'S OPPOSITION TO MATTEL'S MOTION TO ENFORCE AND COMPEL RE
TRADE DRESS INTERROGATORIES

EXHIBIT 15 PAGE 296

Case 2:04-cv-09049-DOC-RNB   Document 6023-7   Filed 07/24/09   Page 18 of 124   Page ID
#:198265
Case 2:04-cv-09049-SGL-RNB      Document 5016      Filed 03/13/2009      Page 17 of 29

1    Supp. 2d 308, 321 (N.D. Cal. 2007) (courts have broad discretion to stay discovery

2    pending the resolution of a potentially dispositive motion); *Orchid Biosciences,*

3    *Inc. v. St. Louis University*, 198 F.R.D. 670, 672 (S.D. Cal. 2001) ("court has broad

4    discretion to stay discovery in a case while a dispositive motion is pending");

5    *Coastal States Gas Corp. v. Dept. of Energy*, 84 F.R.D. 278, 282 (D. Del. 1979)

6    ("It is within the sound discretion of the Court to postpone discovery of issues

7    relating to the merits of a case pending resolution of potentially dispositive

8    motions. [Citations]. Indeed, such a procedure is an eminently logical means to

9    prevent wasting the time and effort of all concerned, and to make the most efficient

10   use of judicial resources. [Citation]").

11        It would be a perversion of every conceivable notion of economy and

12   efficiency, not to mention fairness and Rule 26(c) itself, if a motion to compel

13   could be used to sanction a party for exercising its legal right to seek a protective

14   order. *See, e.g.,* Schwarzer, Tashima & Wagstaff, Federal Civil Procedure Before

15   Trial (Rutter Group 2008 ¶ 11:2386 ("[W]here there is legitimate difference of

16   opinion, an award of expenses is usually improper.); *1st Technology LLC v. Bodog*

17   *Entm't Group S.A.*, 2009 WL 426605, at *2 (W.D. Wash. Feb. 19, 2009) (where

18   issues presented "were legitimate and relatively complicated," Defendants' delay

19   in responding to the Discovery Requests until the Court ruled on the Motion to

20   Dismiss was substantially justified; the Court declined to impose sanctions.)

21        We anticipate Mattel will argue, as it did in its *ex parte* Application to the

22   District Court, that "[i]t has…been ruled in this case that it is improper and

23   sanctionable to disobey an Order while appealing or collaterally attacking an order

24   absent an actual stay," and that "MGA was previously sanctioned for disobeying a

25   discovery Order while 'gambling' that it would be granted a stay." *Ex parte*

26   Application at 16.  These arguments are specious.  First, MGA has not appealed,

27   challenged or otherwise refused to obey the February Order.  Nor has it attempted

28

Mitchell
Silberberg &
Knupp LLP

2159926.1                                          14
              MGA'S OPPOSITION TO MATTEL'S MOTION TO ENFORCE AND COMPEL RE
                              TRADE DRESS INTERROGATORIES

EXHIBIT 15 PAGE 297

1    to attack the factual or legal basis for that order as an excuse for noncompliance.

2    All MGA has done is to request that the Discovery Master temporarily defer the

3    time to respond.  MGA's request is based upon the new, intervening circumstances

4    that arose between the issuance of that order and the lifting of the discovery stay –

5    *i.e.,* the Phase 1 verdicts and Mattel's announcement of an imminent summary

6    judgment motion based solely on those verdicts.  Second, the previous sanction

7    ruling to which Mattel refers pertained to MGA's failure to designate and propose

8    dates for a 30(b)(6) *by a specific date set forth in a Discovery Master order* after

9    Judge Larson had denied an emergency request for a stay a few days before the

10   date *specified* in the underlying order.[15]

11         In fact, the party that should be sanctioned is Mattel and its counsel, not

12   MGA.  Sanctions against Mattel are appropriate under both  Fed. R. Civ.

13   Proc. 37(B) and 28 U.S.C. § 1927.  Rule 37(B) provides that a party opposing a

14   motion to compel is entitled to the cost of opposing the motion where, as here, the

15   motion is filed without substantial justification.  Sanctions also are more than

16   warranted under 28 U.S.C. § 1927 which, as Mattel admits, provides that "[a]ny

17   attorney who…so multiplies the proceedings in any case unreasonably and

18   vexatiously may be required by the court to satisfy personally the excess costs,

19   expenses and attorneys fees reasonably incurred because of such conduct."

20         Here, Mattel not only has unreasonably and vexatiously filed a Motion to

21   Compel that was unnecessary because the issue of when MGA should supplement

22   its responses to Interrogatory Nos. 43 and 44 was already before the Discovery

23   Master, but it then *further* multiplied the proceedings and attempted to do an end-

24   run around the Discovery Master by filing an *ex parte* application asking the

25

26

27   _____

     [15] It also bears noting that Mattel itself was sanctioned for failing to produce a
     properly educated 30(b)(6) deposition witness as previously ordered.

28

Mitchell
Silberberg &
Knupp LLP

2159926.1

EXHIBIT 15 PAGE 298

1   District Court to hold MGA in contempt for "refusing" to answer these same

2   interrogatories.[16]

3

4   **IV.   MATTEL'S MOTION TO COMPEL RESPONSES TO**

5   **INTERROGATORY NOS. 51-55 AND 64 IS PROCEDURALLY**

6   **IMPROPER AND SUBSTANTIVELY WITHOUT MERIT, AND**

7   **SHOULD BE DENIED**

8   As with Interrogatory Nos. 43 and 44, the parties' dispute is not about

9   whether MGA will respond to Interrogatory Nos. 51-55 and 64, but when.[17] And,

10  as with Interrogatory Nos. 43 and 44, the "when" question was already before the

11  Discovery Master when Mattel filed this utterly unnecessary Motion to Compel.

12  Thus, MGA again incorporates by reference the arguments in its briefs in support

13  of its Motion for Protective Order.

14  **A.   Mattel's Motion To Overrule MGA's Objection Must Be Denied**

15  **Because Mattel Failed To Comply With The Requirement To**

16  **Meet and Confer In Good Faith**

17  Mattel asks the Discovery Master to overrule objections to Interrogatory

18  Nos. 51-55 and 64 *that Mattel never met and conferred with counsel about,* and

19  some of which were not made with respect to these interrogatories in any event.

20  Fed. R. Civ. Proc. 37(a)  requires a party to "meet and confer in good faith" before

21

22

23  [16] In an argument so lacking in merit that Mattel hid it in a footnote, Mattel tried to
24  justify its *ex parte* application on the ground that "contempt sanctions are outside
    the bounds of the Discovery Master's authority." *See* Nogues Decl., Ex. A at I, n.1.
    That argument ignores the facts that the Discovery Master has the authority to
25  recommend contempt sanctions (Fed. R. Civ. P. 53(c)(2)), and the Discovery Order
26  expressly requires "any and all" discovery matters to be brought to the Discovery
    Master first.

27  [17] *See* J. Nogues letters to J. Corey dated February 6, 2009 and February 19, 2009,
    Exs. 18 and 23 to Watson Decl. and quoted in relevant part in Section III B, *supra.*

28

Mitchell
Silberberg &
Knupp LLP

2159926.1

EXHIBIT 15 PAGE 299

1   filing a discovery motion.  The Discovery Master Order similarly provides, in clear

2   and unambiguous terms:

3              "The moving party **shall** first identify **each** dispute, state

4              the relief sough, and identify the authority supporting the

5              requested relief in a meet and confer letter...."

6   Discovery Master Order, ¶ 5.

7          Mattel's meet and confer letter concerning these interrogatories is utterly

8   devoid of any reference whatsoever to the putative impropriety of the objections it

9   now challenges – objections (1) to the definitions of "SOLD," "SELL," SALE"

10  and "MATTEL" (Mattel Memo. of Points & Authorities at 13:18); (2) that the

11  information sought may be the subject of expert testimony or analysis (*id.* at 16);

12  (3) that some of the information is better known to Mattel (*id.* at 17); (4) that the

13  interrogatories are compound (*id.* at 18); (5) that the interrogatories are duplicative

14  (*id.* at 19); (6) that the interrogatories are unduly burdensome (*id.* at 20); and

15  (7) that information subject to any privilege will not be provided (*id.* at 25).  *See*

16  Ex. 15 to Watson Decl.  The **only** objections with which Mattel took issue in its

17  meet and confer letter were MGA's objections to the definition of "Former Mattel

18  Employees," and "Mattel Documents" – objections that Mattel does not even

19  mention in the instant motion (presumably because the terms "Former Mattel

20  Employees" and "Mattel Documents" do not appear in any of Interrogatory Nos.

21  51-55 or 64).  *Id.*

22         Mattel not only failed to address the now-challenged objections in its meet

23  and confer letter, but it has not proffered an iota of admissible evidence

24  establishing that it ever raised these issues orally.  *See* MGA Objections to

25  Declaration of Scott Watson, including objection to ¶ 18 thereof.  The absence of

26  evidence is hardly surprising, since none of these objections (or any others) were

27  raised by Mattel's counsel in any meet and confer conversation about Interrogatory

28

Mitchell
Silberberg &
Knupp LLP

2159926.1

17

EXHIBIT 15 PAGE 300

1  Nos. 51-55 or 64. *See* Nogues Decl. ¶ 7. Mattel's claim that "MGA refused to

2  discuss specific objections" to these interrogatories (Mattel Memo of Points &

3  Authorities at 7:16-17) is simply another fabrication.

4  　　　　The meet and confer requirement is not some meaningless edict to which

5  counsel need only give a perfunctory nod. It is intended to encourage the parties to

6  have productive interchanges in the hope they can resolve their disputes without

7  the necessity of court intervention. Thus, unless a moving party demonstrates it

8  made a good faith attempt to resolve an issue before asking the court of assistance,

9  a motion to compel should be denied. *See, e.g., Robinson v. Potter*, 453 F.3d 990,

10 995 (8th Cir. 2006) (affirming denial of motion to compel where moving party

11 failed to show parties met and conferred in good faith); *Naviant Marketing*

12 *Solutions, Inc. v. Larry Tucker, Inc.*, 339 F.3d 180, 186-87 (3d Cir. 2003) (district

13 court properly denied motion to compel where movant's counsel "failed to make a

14 good faith effort to resolve discovery disputes prior to invoking court

15 intervention."). Here, Mattel did not meet and confer at all on the objections, let

16 alone do so in good faith.

17 　　　　While the parties did meet and confer about the ***timing*** of MGA's response

18 to Interrogatory Nos. 51-55 and 64, that does not give Mattel *carte blanche* to run

19 to the Discovery Master with ***other*** complaints it purportedly has about MGA's

20 response to these interrogatories – complaints that it neither shared with MGA, nor

21 tried to resolve informally. Accordingly, to the extent Mattel's motion seeks an

22 order "overruling" the objections at issue, the motion must be denied.

23 　　**B.**　　**Each Of The Newly-Challenged Objections Is Valid And Proper**

24 　　　　Although MGA strongly believes that the Discovery Master should not

25 consider Mattel's arguments about MGA's objections because Mattel never met

26 and conferred with MGA, MGA is concerned that its failure to address Mattel's

27 arguments might be deemed a waiver of its right to rebut Mattel's specious

28

Mitchell
Silberberg &
Knupp LLP

2159926.1

18

EXHIBIT 15 PAGE 301

1   contentions.  Accordingly, and without waiving its position that Mattel's

2   arguments are not properly before the Discovery Master, MGA will address each

3   of the objections to which Mattel belatedly has taken umbrage.

**1.     The Definitions Of "SOLD," "SELL," SALE" and**

**"MATTEL"**

6       Mattel's request that the Discovery Master overrule MGA's objections to

7   the definitions of "SOLD," "SELL," SALE" and "MATTEL"  can be dismissed

8   out of hand.  None of Interrogatory Nos. 51, 53, 54, 55 or 64 uses any of those

9   capitalized terms.  Interrogatory No. 52 does use the term "SALES," but in a

10  context that can only mean one thing – the transfer of title for compensation.  That

11  is because Interrogatory No. 52 first asks about products "sold" (*without* that term

12  being capitalized) by MGA or its licensees, and then asks for revenues received by

13  MGA from "*such*" "SALES."  The question thus simultaneously refers back to

14  sales (an undefined term that must be understood in the ordinary sense of the word)

15  of products by MGA or its Licensees, and then uses a term of much broader

16  definition that is not employed in the earlier part of the question.  As such, MGA

17  quite properly incorporated its general objection that the definition rendered the

18  interrogatory ambiguous, since that definition includes concepts such as

19  "marketing" and "distribution" that cannot be squared with the questions posed in

20  Interrogatory No. 52.

21      MGA's objection to Mattel's definition of "MATTEL" also is entirely

22  proper.  Mattel sweeps within that definition "its current employees, officers,

23  directors, agents representatives, attorneys, parents, subsidiaries, divisions,

24  AFFILIATES, predecessors-in-interest, successors-in-interest, and any other

25  PERSON acting on its behalf, pursuant to its authority or subject to its control."[18]

26

27  [18] "AFFILIATE" and "PERSON" are also broadly defined terms, which add extra layers of complexity and confusion to Mattel's definition of "MATTEL."

28

Mitchell
Silberberg &
Knupp LLP

2159926.1

19

MGA'S OPPOSITION TO MATTEL'S MOTION TO ENFORCE AND COMPEL RE
TRADE DRESS INTERROGATORIES

EXHIBIT 15 PAGE 302

1   This broad definition of Mattel makes each of the interrogatories vague,

2   ambiguous and incomprehensible to the MGA Parties.  MGA simply has no idea

3   who or what is included in this definition of MATTEL, and fully suspects that even

4   Mattel and its counsel would be hard pressed accurately to list everyone and every

5   entity included.  Moreover, MGA suspects that this definition, read literally, would

6   encompasses thousands of entities and individuals, rendering the Trade Dress

7   Interrogatories vastly more compound and unduly burdensome than they already

8   are.  *See* discussion *infra*.  Thus, MGA's objection to Mattel's overbroad, vague

9   and incomprehensible definition of MATTEL is spot on, and should be sustained.

10           **2.     The Expert Witness Analysis Objection In Interrogatory**

11                   **Nos. 51 and 53 Is Proper**

12           As the prior Discovery Master already has held, "[t]hat the interrogatory

13   responses include a reservation of rights to supplement during expert discovery

14   does not render the responses inherently improper or objectionable."  Watson

15   Decl., Ex. 8 at 174:8-9.[19]  Interrogatory No. 51 seeks identification of elements and

16   products subject to trade dress infringement and dilution.  As the prior Discovery

17   Master observed in denying Mattel's earlier effort to have the "expert analysis"

18   objection overruled, "Mattel does not contest that the identification of the elements

19   and products subject to trade dress infringement will be a subject of expert

20   analysis."  *Id.* at 174:10-11.  Nor does Mattel dispute that the subject of

21

22

23   [19] Mattel's discussion of this objection conveniently omits that it was made in
     conjunction with MGA's General Objections, which state, among other things,
24   (1) "MGA objects to these Interrogatories to the extent that they may unfairly seek
     to restrict the facts on which MGA may rely at trial… MGA reserves the right to
25   supplement of amend these responses at a future date;" and (2) "MGA objects to
     these Interrogatories to the extent that they seek information that will be the subject
26   of expert witness testimony and that is therefore premature.  MGA further objects
     to these Interrogatories to the extent that they seek to circumvent the expert
27   disclosure provisions of the Federal and Local Rules."  Watson Decl., Ex. 12
     at 230:18-231:2.

Mitchell
Silberberg &  28
Knupp LLP

2159926.1

MGA'S OPPOSITION TO MATTEL'S MOTION TO ENFORCE AND COMPEL RE
TRADE DRESS INTERROGATORIES

EXHIBIT 15 PAGE 303

1   Interrogatory No. 53 – likelihood of confusion – will be the subject of expert

2   testimony.

3         Mattel's assertion that Judge Larson held "this very objection…was not a

4   proper basis for withholding discovery" is disingenuous at best.  Judge Larson's

5   July 2, 2007 order merely *upheld* Judge Infante's ruling that the fact that net worth

6   is generally the subject of expert testimony "does not render it an improper subject

7   *for a Rule 30(b) (6) deposition.*"  Ex. 41 to Watson Decl. at 5.  MGA has not

8   objected to the subject matter of Interrogatory Nos. 51 and 53; it has simply

9   interposed an objection that preserves MGA's right to rely on expert testimony.

10   That Mattel's reliance on Judge Larson's Order is an exercise in substituting apples

11   for oranges is evident from the fact that, seven months *after* Judge Larson upheld

12   Judge Infante's order requiring MGA to designate a 30(b)(6) witness on a topic

13   that might also be the subject of expert testimony, Judge Infante ruled that for

14   *interrogatory* purposes, it was proper for MGA to preserve its right to later rely on

15   expert testimony.

16         **3.    Information Better Known to Mattel**

17         Mattel challenges this objection to Interrogatory Nos. 51 and 54.  Mattel is

18   wrong.  Interrogatory No. 51 demands that MGA identify *Mattel* products "by

19   SKU [Stock Keeping Unit] or bar code number."  If the SKUs or bar codes Mattel

20   assigns to its products are not uniquely known to Mattel, or better known to it than

21   to MGA, it is difficult to know what type of information would be.

22         Interrogatory No. 54 asks MGA, among other things, to identify all persons

23   with knowledge of the facts that Mattel copied MGA concepts, designs, products,

24   packaging, or "other matter."  Obviously, there are persons within Mattel

25   responsible for or knowledgeable about Mattel's copying, and to the extent MGA

26   has not yet identified such persons or Mattel's obstructionist tactics have prevented

27   it from doing so, MGA cannot provide the information.  That is not to say that

Mitchell
Silberberg &
Knupp LLP

28

2159926.1

21

EXHIBIT 15 PAGE 304

1    MGA will not provide whatever information it has (it has already said it will

2    further respond to this Interrogatory, subject to whatever timing order results from

3    its request for a Protective Order).  However, MGA is entitled to preserve its

4    objection to providing information that Mattel has and MGA does not.

### 4.    Interrogatory Nos. 51-53 Are Compound

6         MGA objected to Interrogatories 51, 52 and 53 as compound.  Mattel takes

7    issue with those objections as to Interrogatories 51 and 52, but *not* with respect to

8    Interrogatory 53, thereby conceding that Interrogatory No. 53 is objectionable on

9    this ground.

10        Mattel argues that Interrogatory Nos. 51 and 52 ask the same question about

11   a "common group."  That is not true.  Interrogatory 51 asks about "every [Mattel]

12   concept, design, product, product packaging or other matter" that MGA contends

13   "is a copy of, infringes or dilute" MGA's concepts, designs, products, product

14   packaging or other matters.  Just stopping there, Interrogatory 51 deals with ten

15   very different tangible *and* intangible things (concepts, designs, products, product

16   packaging and "other matters" of MGA, and concepts, designs, products, product

17   packaging and "other matters" of Mattel) and at least two very different legal

18   concepts (copying/infringement and dilution).[20]  The interrogatory then goes on to

19   add more subparts by purporting to require that MGA provide the product name,

20   SKU number or bar code number for each Mattel concept, design, product, product

21   packaging or other matter identified, and then to specify those "elements or

22   attributes that [MGA] contend[s] were copies, infringed and diluted."  MGA's

23   compound objection is more than well-taken.

24        Interrogatory 52 is equally compound.  There, Mattel once again asks

25   questions about multiple categories of different things (concepts, designs, products,

---

[20] *See, e.g., Jada Toys v. Mattel, Inc.,* 518 F.3d 628, 634, 636-37 (9th Cir. 2008); *Durney v. WaveCrest Laboratories, LLC,* 441 F. Supp. 2d 1055, 1062 (N.D. Cal. 2005).

Mitchell
Silberberg &
Knupp LLP

2159926.1

28

22

EXHIBIT 15 PAGE 305

1   product packaging or other matters), and two separate legal concepts

2   (copying/infringement and dilution). It then asks for four categories of information

3   (units sold, revenues, costs and profits) about each of the five things as to which

4   MGA makes one of two contentions. Once again, MGA's objection is well-

5   founded.[21]

6         **5.     Some of the Interrogatories Are Duplicative of Others**

7                **Previously Asked and Answered**

8      MGA objected to Interrogatories 51 and 52 as duplicative of earlier

9   interrogatories. Mattel disagrees with MGA's assertions as to Interrogatory 52, but

10   does not take issue with MGA's duplication objection to Interrogatory 51.

11      Interrogatory 52 asks that MGA provide units sold, revenue, cost and profit

12   information for all products it contends Mattel copied, infringed or diluted. Mattel

13   concedes that its Interrogatory 45 asked MGA to provide units sold, revenues, cost

14   and profit information for Bratz products sold. In a lame attempt to get around this

15   duplication, Mattel argues that MGA has to do it all over again because now Mattel

16   is asking about all infringed and diluted products, not all Bratz products. MGA has

17   *already* told Mattel in great detail which of its products it contends Mattel

18   copied/infringed or diluted. *See* MGA's Fourth Supplemental Response to

19   Interrogatory 2 (Ex. J to Nogues Decl.). MGA should not now have to go back and

20   re-sort and recompile the information which Mattel was already provided when

21   Mattel can just as easily as cost-effectively do it for itself.

22      Mattel *now* argues that the Interrogatory is not duplicative because it covers

23   three non-Bratz products, but that the Interrogatory is not so limited, and Mattel

24   has never offered to so limit it. As Judge Infante previously noted, "[i]t is not the

25

26   [21] *Collaboration Properties, Inc. v. Polycom, Inc.*, 224 F.R.D. 473, 475 (N.D. Cal.

27   2004) (denying motion to compel where single interrogatory seeking information about 26 separate products in a patent case held to contain 26 discrete subparts and therefore would have violated maximum number of interrogatories allowed).

28

EXHIBIT 15 PAGE 306

1  MGA parties' responsibility to re-write the interrogatories[.]" Ex. 8 to Watson
2  Decl. at 169:25-27.

### 6.   MGA's Undue Burden Objections Are Well-Taken

4       Mattel's incredibly broad definitions and multi-faceted questions are
5  overbroad.  The former Discovery Master's rulings on Mattel's motion to compel
6  similarly broad Interrogatories 27 through 29 are instructive in this regard.  In
7  denying Mattel's motion to compel with respect to those interrogatories, Judge
8  Infante noted:

9           "Mattel's motion to compel further responses to
10          Interrogatory Nos. 27-29 is denied because the
11          interrogatories are overbroad and unduly burdensome.
12          The definition of "Bratz Invention" is extremely broad,
13          encompassing numerous intellectual property concepts.
14          . . . Not all contention interrogatories requiring a
15          recitation of all facts, documents and witnesses are
16          objectionable.  In the instant case, however, Mattel's
17          contention interrogatories would force the MGA parties
18          to review nearly 4 million pages of documents produced
19          in this action and more than 50 days of deposition
20          testimony in search of [the requested] information . . . ."
21          Watson Decl. Ex. 8 at 169:2-170:3 (citations omitted).

22      Much the same can be said here.  In the Trade Dress Interrogatories, Mattel
23  has conflated many kinds of tangible and intangible "property," ranging from
24  products to designs to packaging to concepts, and has asked about copying,
25  infringement and dilution.  Mattel has compounded this extraordinary burden
26  further by, for example, purporting to require that MGA identify Mattel's
27  offending products by name or SKU or code number, and "specify" those

28

Mitchell
Silberberg &
Knupp LLP

2159926.1

24

EXHIBIT 15 PAGE 307

1   "elements or attributes" of each product, design, packaging or concept that MGA

2   claims each Mattel product infringes, copies or dilutes (Interrogatory 51); identify

3   *Sleekcraft* factors for each concept, product, design or packaging infringed, copied

4   or diluted (Interrogatory 52); and identify all facts, witnesses and documents

5   pertaining to any of its claims in this case (Interrogatory 64). These requests are at

6   least as overbroad and unduly burdensome as those previously rejected by the prior

7   Discovery Master. MGA's objections should be similarly upheld here.

8          **7.  MGA's Privilege Objections Should Not Be Overruled**

9        Mattel also complains about MGA's privilege objections. Those objections

10   were made to preserve MGA's ability to protect privileged documents and

11   information in the face of broad-ranging interrogatories that, among other things,

12   require MGA to identify documents and persons with knowledge of various things.

13   MGA is fully aware of its obligation to provide privilege logs when privileged

14   documents and information are responsive to discovery. But given some of the

15   assertions and arguments made in this case to date, it cautiously and properly made

16   it clear that it was not waiving the attorney-client privilege and would not produce

17   any privileged information or documents responsive to Mattel's requests.

18        Once again, the prior Discovery Master's February 2008 rulings are

19   instructive in this regard. In the motion that was the subject of that order, Mattel

20   had asserted that various MGA objections, including a privilege objection, were

21   improper boilerplate. Watson Decl., Ex. 8 at 184:16-25. The Discovery Master

22   did not overrule MGA's privilege objections. Indeed, the only privilege ruling in

23   the February Order sustained MGA's privilege objections to Interrogatory 46. *Id.*

24   at 182:10-183:12.

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

2159926.1

MGA'S OPPOSITION TO MATTEL'S MOTION TO ENFORCE AND COMPEL RE
TRADE DRESS INTERROGATORIES

EXHIBIT 15 PAGE 308

## Conclusion

For all the reasons set forth herein the Discovery Master should deny Mattel's motion to compel and award sanctions in favor of the MGA Parties and against Mattel for this baseless and unnecessary motion.

DATED: March 13, 2009               RUSSELL J. FRACKMAN
                                    PATRICIA H. BENSON
                                    MITCHELL SILBERBERG & KNUPP LLP


                                    By:_____/s/_____.
                                        Patricia H. Benson
                                        Attorneys for Defendants
                                        MGA Entertainment, Inc., MGA
                                        Entertainment HK, Ltd., MGAE De
                                        Mexico, S.R.L. De C.V., and Isaac Larian

Mitchell
Silberberg &
Knupp LLP

2159926.1

EXHIBIT 15 PAGE 309

# EXHIBIT 16

# TO DECLARATION OF

# ANDREW C. SPITSER

# EXHIBIT 16

# TO DECLARATION OF

# ANDREW C. SPITSER

1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      John B. Quinn (Bar No. 090378)
2     johnquinn@quinnemanuel.com
      Michael T. Zeller (Bar No. 196417)
3     (michaelzeller@quinnemanuel.com)
      Jon D. Corey (Bar No. 185066)
4     (joncorey@quinnemanuel.com)
      865 South Figueroa Street, 10th Floor
5   Los Angeles, California 90017-2543
    Telephone:  (213) 443-3000
6   Facsimile:  (213) 443-3100

7   Attorneys for Mattel, Inc.

8

9                      UNITED STATES DISTRICT COURT

10                  CENTRAL DISTRICT OF CALIFORNIA

11                           EASTERN DIVISION

12   CARTER BRYANT, an individual,        CASE NO. CV 04-9049 SGL (RNBx)

13            Plaintiff,                   Consolidated with Case Nos. CV 04-
                                           09059 and CV 05-02727
14        vs.
                                           DISCOVERY MATTER
15   MATTEL, INC., a Delaware              [To Be Heard By Discovery Master
     corporation,                          Robert O'Brien]
16
              Defendant.                   REPLY IN SUPPORT OF MATTEL,
17                                         INC.'S MOTION TO ENFORCE
                                           ORDER COMPELLING MGA TO
18   AND CONSOLIDATED ACTIONS              PROVIDE DISCOVERY, TO COMPEL
                                           RESPONSES TO CONTENTION
19                                         INTERROGATORIES BY MGA AND
                                           FOR SANCTIONS
20
                                           [Supplemental Declaration of Scott
21                                         Watson filed concurrently]

22                                         Date:   TBD
                                           Time:   TBD
23   PUBLIC REDACTED                       Place:  TBD

24                                         Phase 2
                                           Discovery December 11, 2009
25                                         Pre-trial Conference: March 1, 2010
                                           Trial Date: March 23, 2010
26

27

28

07975/2840467.1

                                                    REPLY ISO MOTION TO COMPEL

EXHIBIT 12 PAGE 183
EXHIBIT 16 PAGE 310

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................1

ARGUMENT .............................................................................................2

I.   MGA IS IN VIOLATION OF THE PRIOR DISCOVERY MASTER'S ORDER AND SHOULD BE SANCTIONED ...........................................2

    A.   MGA Was In Violation Of The Order Both Before And After The Stay.........................................................................................2

    B.   MGA Should Be Sanctioned..............................................................3

II.  THE DISCOVERY MASTER SHOULD COMPEL MGA TO PROVIDE FULL AND COMPLETE RESPONSES TO INTERROGATORY NOS. 51 THROUGH 55 AND 64..........................4

    A.   Mattel's Motion Is Not Moot.............................................................4

    B.   Mattel Properly Met and Conferred with MGA Regarding Interrogatory Nos. 51-55 and 64 Before It Filed Its Motion..................5

    C.   The Court Should Overrule Each of MGA's Objections .......................7

        1.   MGA Admits That Mattel's Interrogatories Seek Relevant, Discoverable Phase 2 Information ...................................7

        2.   MGA Cannot Substitute Its Own Definitions For Mattel's Definitions......................................................................7

    D.   MGA Cannot Withhold Information Simply Because It May Be The Subject Of Expert Witness Analysis.............................................10

    E.   MGA's Objections That Information Is Better Known To Mattel Should Be Overruled......................................................................11

    F.   Mattel's Interrogatories Are Not Compound And Must Be Answered....................................................................................11

    G.   Mattel's Interrogatories Are Not Duplicative ...................................13

    H.   Mattel's Interrogatories Are Not Unduly Burdensome .......................13

    I.   MGA's Boilerplate Privilege Objections Should Be Overruled...........15

CONCLUSION...........................................................................................16

REPLY ISO MOTION TO COMPEL

EXHIBIT 12 PAGE 184
EXHIBIT 16 PAGE 311

1

## TABLE OF AUTHORITIES

2                                                                                                          **Page**

3                                         <u>**Cases**</u>

4   <u>Adidas-Saloman AG v. Target Corp.</u>,
        228 F. Supp. 2d 1192 (D. Or. 2002) ..................................................................9
5
    <u>Am. Oil Co. v. Penn. Petro. Co.</u>,
6       23 F.R.D. 680 (D.R.I. 1959) ...........................................................................14

7   <u>Avery Dennison Corp. v. Sumpton</u>,
        189 F.3d 868 (9th Cir. 1999) ...........................................................................9
8
    <u>Burton Mechanical Contractors, Inc. v. Foreman</u>,
9       148 F.R.D. 230 (N.D. Ind. 1992) ....................................................................13

10  <u>Chapman v. California Dept. of Educ.</u>,
        2002 WL 32854376 (N.D. Cal. Feb. 6, 2002) ..................................................8
11
    <u>Collaboration Properties, Inc. v. Polycom, Inc.</u>,
12      224 F.R.D. 473 (N.D. Cal. 2004) ...................................................................12

13  <u>Convergent Business Systems, Inc. v. Diamond Reporting, Inc.</u>,
        1989 WL 92038 (E.D.N.Y. 1988) ..................................................................15
14
    <u>Durney v. WaveCrest Laboratories, LLC</u>,
15      441 F. Supp. 2d 1055 (N.D. Cal. 2005) ..........................................................12

16  <u>eMachines, Inc. v. Ready Access Memory, Inc.</u>,
        2001 WL 456404 (C.D. Cal. Mar. 5, 2001) ...................................................10
17
    <u>Jackson v. Montgomery Ward & Co., Inc.</u>,
18      173 F.R.D. 524 (D. Nev. 1997) ......................................................................13

19  <u>Jada Toys v. Mattel, Inc.</u>,
        518 F.3d 628 (9th Cir. 2008) ..........................................................................12
20
    <u>King v. E.F. Hutton & Co., Inc.</u>,
21      117 F.R.D. 2 (D.D.C. 1987) ......................................................................11, 15

22  <u>Pacific Lumber Co. v. National Union Fire Ins. Co. of Pittsburgh</u>,
        2005 WL 318811 (N.D. Cal. Jan. 5, 2005) .....................................................12
23
    <u>Roberts v. Heim</u>,
24      130 F.R.D. 424 (N.D. Cal. 1989) ...................................................................11

25  <u>Swackhammer v. Sprint Corp. PCS</u>,
        225 F.R.D. 658 (D. Kan. 2004) ......................................................................12
26
    <u>Vision Sports v. Melville Corp.</u>,
27      888 F.2d 609 (9th Cir. 1989) ...........................................................................9

28

-ii-

EXHIBIT 12 PAGE 185
EXHIBIT 16 PAGE 312

## Statutes/Rules

15 U.S.C. § 1055...................................................................................10

F.R.C.P. Rule 26 ...............................................................................5, 8

## Other Authorities

Wright & Miller 8A Federal Practice & Procedure § 2167.........................14

Wright & Miller 8A Federal Practice & Procedure 2d § 2168.1...............12

-iii-

### Preliminary Statement

MGA's Opposition spends more time attacking Mattel and its counsel than addressing the substance of Mattel's motion.  Yet, this smoke screen cannot hide that MGA is in violation of a prior Order as to two of the interrogatories at issue and has asserted only baseless objections as to the others.

Mattel's motion is not "unnecessary," "procedurally improper" or sanctionable.  It is undisputed that, two months after the Phase 2 stay was lifted, MGA has not provided its required responses.  That MGA is seeking to stay its discovery obligations does not allow MGA to unilaterally ignore its overdue obligations to comply with a Court Order and does not preclude Mattel from seeking an Order requiring them to provide long-overdue interrogatory answers (for the second time, as to two interrogatories).  Indeed, not only is it more efficient to consider all issues related to these interrogatories together, but it avoids yet more months of delay by MGA in providing the information that Mattel is entitled to— including information the Discovery Master ruled a year ago MGA must provide.

MGA also attacks Mattel for purportedly failing to meet and confer.  But the record is clear—Mattel identified the interrogatories in a letter to MGA's counsel, and multiple discussions about these interrogatories between counsel followed, with no agreement being reached.  Mattel fully complied with its meet and confer obligations.

The merits are equally straightforward.  MGA has never provided the information sought by Interrogatory Nos. 43 and 44, and the Discovery Master already compelled MGA to fully respond to them.  The remaining interrogatories are simple contention interrogatories pertaining to MGA's own claims.  MGA does not even attempt to dispute their relevance, and MGA's boilerplate objections serve as no excuse for MGA's refusal to disclose information about it own alleged claims.

Finally, MGA should be sanctioned for refusing to supplement its responses to Interrogatories 43 and 44.  The Discovery Master already ordered them to do so.

REPLY ISO MOTION TO COMPEL

EXHIBIT 12 PAGE 187
EXHIBIT 16 PAGE 314

1  Nothing has relieved MGA of that obligation.  MGA is in violation of the prior
2  Order, and sanctions are appropriate to ensure compliance, deter future refusals to
3  comply with valid Court Orders and to reimburse Mattel for a part of its costs in
4  having to move twice to obtain the information the Discovery Master already ruled
5  Mattel is entitled to.

6                                   **Argument**
7  I.   **MGA IS IN VIOLATION OF THE PRIOR DISCOVERY MASTER'S**
8       **ORDER AND SHOULD BE SANCTIONED**
9       A.   **MGA Was In Violation Of The Order Both Before And After The**
10            **Stay**
11           MGA has long been in violation of the Discovery Master's February 15, 2008
12  Order which required that MGA provide amended interrogatory responses no later
13  than February 26, 2008 -- *within 11 days* of its entry.[1]  As Mattel has shown at
14  length in its Opposition to MGA's stay motion,[2] MGA was *already in violation* of
15  the Order when it filed a motion for "clarification" that it did not have to comply
16  with the February 15 Order's terms.[3]  When, almost two months later, the Discovery
17  Master granted MGA a temporary reprieve, the Discovery Master expressly stated

18

19      [1]   This Order required MGA to fully answer Interrogatories 43 and 44, which are
20  contention interrogatories seeking basic information as to the dates that MGA products
    directly at issue in this litigation were conceived and committed to tangible form.  This
21  information is indispensable to Mattel's Phase 2 defenses and Mattel's claims of unfair
    competition and misappropriation of trade secrets.  They are essential for important aspects
22  of Phase 2 discovery to even proceed, and until answered, Mattel's ability to take
    depositions and conduct other follow-up discovery is thwarted.
23      [2]   Mattel's Opposition to MGA's Motion for Protective Order, dated March 6, 2009.
24  To avoid burdening the Discovery Master with unnecessary repetition, Mattel respectfully
    directs the Discovery Master to its Opposition and incorporates that Opposition herein by
25  this reference.
26      [3]   Motion Of MGA Parties For Clarification Regarding Portions Of February 15, 2008
27  Order Granting In Part And Denying In Part Mattel's Motion To Compel Response To
    Interrogatory Nos. 27-44 And 46-50 By MGA Parties, Supp. Watson Dec., Exh. 1.
28

-2-

1   *when* MGA's compliance with the Order would again be due: "The MGA Parties'

2   obligation to supplement their responses . . . are hereby stayed *until further order of*

3   *the district court lifting the stay on Phase 2 discovery.*"[4]  This language could not

4   be more clear.  Once the Phase 2 stay was lifted, MGA's obligation to supplement

5   was no longer stayed, and its already overdue obligation resumed.

6          There is simply nothing in the April 22, 2008 Order, or any other order,

7   supporting MGA's baseless position that there is no deadline for compliance or that

8   there is some ambiguity excusing its refusals to answer these interrogatories.

9          **B.     MGA Should Be Sanctioned**

10          MGA is willfully violating the Discovery Master's Order, and should be

11   sanctioned.  Indeed, MGA was previously sanctioned in this case for refusing to

12   comply with an existing discovery Order once a stay was lifted.[5]  The Court

13   previously held that once a discovery stay is lifted prior orders requiring compliance

14   become effective again; MGA was sanctioned for not producing Mr. Larian within

15   20 days once a prior stay was lifted.[6]  The Discovery Master should again sanction

16   MGA for its failure to comply with the prior Discovery Master's Order.

17          MGA asserts that it should not be sanctioned because it has moved for a stay

18   of discovery relating to MGA's trade dress claims, but that does not justify its

19   refusal to comply with the Discovery Master's previous Order.  As Mattel has shown

20   elsewhere: (1) under the law and under prior Orders in this litigation, a party is

21   *required* to comply with a Court Order absent an actual stay from the Court

22   excusing compliance; (2) Judge Larson has already rejected MGA's repeated

23   ――――――――――――――――――――

24          [4]   Order Granting MGA Parties' Motion for Clarification Regarding Portions of
February 15, 2008 Order Granting in Part and Denying in Part Mattel's Motion to Compel

25   Responses to Interrogatory Nos. 27-44 and 46-50 by the MGA Parties, dated April 22,
2008, Watson Dec., Exh. 10 (emphasis added).

26          [5]   Civil Minutes - General Re: Mattel's Motion to Enforce the Court's Order on March

27   23, 2005 and for Sanctions, dated June 16, 2006, Supp. Watson Dec., Exh. 2.

28          [6]   Id.

-3-

1  arguments for staying Phase 2 and explicitly stated that discovery is to proceed; (3)

2  the Discovery Master lacks the power to alter the Scheduling Order or impose a

3  discovery stay, as the Discovery Master has recognized; (4) MGA not only waited

4  seven weeks to seek its purported stay, but it knew about Mattel's contemplated

5  partial summary judgment motion at the Scheduling Conference when it insisted

6  that discovery and trial be completed this year; and (5) the stay request lacks any

7  merit, including because it suffers from the exact same flaws Judge Larson

8  previously identified in refusing MGA's earlier requests for partial discovery stays.[7]

9      MGA's assertion that Mattel should be sanctioned for moving to compel

10  responses to Interrogatory Nos. 51-55 and 64 is groundless.  (Opp. at 13-16).  It is

11  not duplicitous of Mattel to attempt to resolve all outstanding issues regarding these

12  interrogatories at once by opposing MGA's stay motion, filing a Motion for an

13  Order to Show Cause, and moving to compel full and complete responses to these

14  interrogatories.  If anything, Mattel's approach saves judicial resources by allowing

15  the Discovery Master decide all issues regarding these interrogatories at the same

16  time.  It is MGA, not Mattel, that should be sanctioned for its continued defiance of

17  the Discovery Master's Order and its improper delay tactics.

18  **II.**  **THE DISCOVERY MASTER SHOULD COMPEL MGA TO PROVIDE**

19     **FULL AND COMPLETE RESPONSES TO INTERROGATORY NOS.**

20     **51 THROUGH 55 AND 64**

21     **A.**  **Mattel's Motion Is Not Moot**

22      MGA argues that Mattel's Motion is unnecessary because MGA has stated

23  that it will provide responses to Interrogatory Nos. 51-55 and 64.  (Opp. at 16).  This

24

25

26     [7]  See Mattel, Inc.'s Opposition to the MGA Parties' Motion for Protective Order Staying Discovery on Trade Dress Claims, dated March 6, 2009; see also Mattel, Inc.'s Ex

27  Parte Application for an Order to Show Cause Re: MGA Entertainment, Inc.'s Failure to Comply with Court Order, dated March 10, 2009.

28

-4-

EXHIBIT 12 PAGE 190
EXHIBIT 16 PAGE 317

1    mischaracterizes the parties' dispute.  Not only does MGA refuse to commit to

2    providing responses in a timely fashion, but it also refuses to withdraw its improper

3    objections when it does finally provide responses to these interrogatories.  Mattel is

4    entitled to responses to these Interrogatories that are not limited by MGA's improper

5    objections.

6          Moreover, MGA's statement that it will provide responses sometime in the

7    future is not binding, and Mattel cannot rely on it.  As the prior Discovery Master

8    has ruled, absent a binding stipulation among the parties, the prior statements of

9    intent by the parties will not be enforced or considered as a basis for a later ruling.

10   "Because the parties did not execute a binding stipulation, there is no legal basis to

11   enforce the terms contained in the draft stipulation. Therefore, Mattel's right to the

12   discovery it seeks in the instant motion to compel is governed by the familiar

13   guidelines set forth in Rule 26 of the Federal Rules of Civil Procedure."[8]  Mattel's

14   Motion is not moot.

15         **B.**    **Mattel Properly Met and Conferred with MGA Regarding**

16                **Interrogatory Nos. 51-55 and 64 Before It Filed Its Motion**

17         It is undisputed that Mattel sent a meet and confer letter and had multiple

18   phone calls with MGA's counsel about these interrogatories.[9]  Still, MGA argues

19   this was insufficient.  This argument is unavailing.  MGA does not claim that it was,

20   in fact, willing to withdraw its objections to these interrogatories.  Mattel correctly

21   understood MGA's refusal to discuss its specific objections to these interrogatories

22

23

_____

24      [8]  Order Granting Mattel's Motion to Compel Production of Documents, dated January

25   25, 2007, at 10-11, Supp. Watson Dec., Exh. 5.

        [9]  Letter from Scott Watson to Thomas Nolan, dated January 28, 2009, Watson Dec.,

26   Exh. 15; see also Watson Dec., at ¶18; Letter from Scott Watson to Amman Khan, dated

27   February 6, 2009, Watson Dec., Exh 17 (referencing the parties' February 6, 2009 call and

     the parties' anticipated call on February 9, 2009).

28

-5-

EXHIBIT 12 PAGE 191

EXHIBIT 16 PAGE 318

1  for what it was—a refusal to withdraw its improper objections and to fully answer

2  the substance of the interrogatories.

3  　　More specifically, Mattel asked MGA on January 28, 2009, whether MGA

4  intended to limit its responses to Interrogatory Nos. 51-64 based on **any** of its

5  objections and informed MGA that if the parties could not resolve the matter during

6  meet and confer, Mattel would move to compel complete responses to these

7  interrogatories.[10]   The parties met and conferred on February 6, 2009.[11]   During the

8  meet and confer, Mattel again asked MGA whether it would stand on its objections,

9  and MGA declined to agree to withdraw its objections with respect to Interrogatory

10  Nos. 51-55 and 64.[12]   That *MGA* refused to attempt to defend those objections

11  during the meet and confer does not and cannot impair *Mattel's* discovery rights.   At

12  that point, under the express terms of the Discovery Master Stipulation and Order,

13  Mattel was entitled to move to compel, as far more than five court days had already

14  passed since Mattel sent its meet and confer letter.[13]

15

16

17

18

19

20

---

21  [10]   Letter from Scott Watson to Thomas Nolan, dated January 28, 2009, Watson Dec.,
   Exh. 15 ("If MGA or Larian intends to limit their responses based on these **or any other**

22  **objections**, please let me know when you are available to meet and confer regarding these

23  interrogatories.   If we cannot resolve this matter during meet and confer, Mattel will move
   to compel.") (emphasis added).

24  [11]   Watson Dec., ¶ 18, Exh. 17.
   [12]   Watson Dec., ¶ 18.

25  [13]   See Stipulation for Appointment of Discovery Master, dated December 6, 2006, at

26  4, Watson Dec., Exh. 38 ("If the dispute has not been resolved within five court days after
   such service, the moving party may seek relief from the Discovery Master by formal

27  motion"); see also Order No. 1, Regarding Procedure Governing Motions, dated
   February 12, 2009, Supp. Watson Dec., Exh. 3.

28

EXHIBIT 12 PAGE 192
EXHIBIT 16 PAGE 319

**C.   The Court Should Overrule Each of MGA's Objections**

   **1.   MGA Admits That Mattel's Interrogatories Seek Relevant, Discoverable Phase 2 Information**

MGA never disputes, and thus concedes, that each of the interrogatories at issue here seeks relevant Phase 2 information. (Mot. at 12-13). The Court should therefore overrule ███████████████████████████████████
███████████████████████████████[15]

   **2.   MGA Cannot Substitute Its Own Definitions For Mattel's Definitions**

MGA's complaint that the term "MATTEL" is vague and ambiguous is unfounded.[16] The prior Discovery Master has repeatedly compelled MGA to produce discovery using this definition.[17] And, MGA itself has used this and comparable definitions in its own discovery.[18]

---

[14]   MGA's Responses to Mattel's Supplemental interrogatories at 2, Watson Dec., Exh. 12.

[15]   Id. at No. 52.

[16]   As Mattel pointed out in its Motion, even MGA recognizes that these objections do not have merit. (Mot. at 13-14). Mattel specifically asked the Discovery Master to overrule these same objections in its pending motion to compel responses to Interrogatory Nos. 56-63 and 67-69, and MGA did not defend them. Id.

[17]   E.g., Order Granting in Part and Denying in Part Mattel's Motion to Compel Responses to Interrogatory Nos. 27-44 and 46-50 by the MGA Parties, dated February 15, 2008 (granting motion to compel on various interrogatories which include the definition of MATTEL), Watson Dec., Exh. 8; see also Mattel, Inc.'s Amended Fourth Set of Interrogatories, dated October 23, 2007, Watson Dec., Exh. 1 (Interrogatory Nos. 43 and 44 use the defined term MATTEL which MGA now objects to).

[18]   MGA's First Set of Interrogatories to Mattel, Inc., dated February 4, 2005, at 6, Supp. Watson Dec., Exh. 6 (defining "MATTEL" as any of its past or present officers, directors, agents, employees, representatives, consultants, attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, entities and persons acting in joint venture or partnership relationships with YOU and any others acting on YOUR behalf, pursuant to YOUR authority or subject to YOUR control."); MGA's Second Set of Interrogatories to Mattel, Inc., dated December 4, 2007, Supp. Watson Dec., Exh. 7
   (footnote continued)

-7-

1    Furthermore, as Mattel explained in its Motion, there is no merit to MGA's

2    contention. (Mot. at 15). MGA asserts that it will interpret the term "MATTEL" ████

3    ████████████████████████████████████████████████████████████████████████

4    ████████████████████████████████████████████████[19] This interpretation

5    excludes, without justification, anyone who has held themselves out to be Mattel

6    directors, representatives, attorneys, parents, "AFFILIATES, predecessors-in-

7    interest, successors-in-interest, and any other PERSON acting on Mattel's behalf,

8    pursuant to its authority or subject to its control."[20] MGA is perfectly capable of

9    identifying entities and persons that MGA believed or knew to be acting on Mattel's

10   behalf, pursuant to its authority or subject to its control. MGA has no grounds for

11   excluding some of these persons or entities from its interrogatory responses.

12   MGA's suggestion that the definition of MATTEL would encompass "thousands" of

13   entities and individuals is clearly mere hyperbole.  Such unsupported assertions

14   cannot be used to deny Mattel discovery or to substitute MGA's definition for

15   Mattel's. Chapman v. California Dept. of Educ., 2002 WL 32854376, at * 3 (N.D.

16   Cal. February 6, 2002) ("The proponent of discovery is the master of its terms. So

17   long as the information sought is within the broad bounds of relevancy as set forth

18   in Rule 26 and is otherwise properly discoverable, the respondent may not

19   unilaterally reshape or rephrase the discovery request.").

20   Nor are the terms "sold," "sell" or "sale" vague and ambiguous. MGA does

21   not dispute that its unilateral, substitute definition of "sale" -- meaning its use in the

22   "ordinary sense of the word" -- provides no specificity whatsoever and would

23   improperly allow MGA to interject whatever definition it sees fit. MGA also does

24   ───────────────────────

25   (defining "MATTEL" as "any of its past or present officers, directors, employees, parents, subsidiaries, divisions, affiliates, predecessors-in-interest, and joint venture partners.").

26   [19] MGA's Objections and Responses to Mattel's Supplemental Interrogatories, at 8 and

27   No. 52, Watson Dec., Exh. 12.

      [20] Mattel's Supplemental Interrogatories, at 2, Watson Dec., Exh. 11.

28

-8-

EXHIBIT 12 PAGE 194
EXHIBIT 16 PAGE 321

1    not dispute that Mattel is entitled to discover information relating to the distribution,

2    licensing and marketing of the MGA products at issue.  Indeed, even MGA

3    recognizes its objections to this definition have no merit.  ████████████████

4    ████████████████████████████████████████████████████████████████

5    ████████████████████████████████.[21]  Mattel specifically asked the

6    Discovery Master to overrule this objection and MGA's unilaterally imposed

7    counter-definitions in its pending motion, and MGA did not defend them.[22]

8         As to Interrogatory No. 52, MGA's argument that the term "sales" must be

9    limited to the "transfer of title for compensation" is mistaken and seeks to exclude

10   plainly discoverable information.  Mattel needs to know the alleged extent and

11   nature of the use of MGA's purported trade dress because "use" is a specific factor

12   in both secondary meaning and likelihood of confusion analysis for infringement

13   claims and a specific factor in determining the element of alleged fame for dilution

14   claims.  See, e.g., Vision Sports v. Melville Corp., 888 F.2d 609, 615-616 (9th Cir.

15   1989) (factors to be assessed in determining secondary meaning include the degree

16   and manner of the use of the trade dress); Adidas-Saloman AG v. Target Corp., 228

17   F. Supp. 2d 1192 (D. Or. 2002) (factors for likelihood of confusion include the

18   strength of the mark, the marketing channels used, and the likelihood of expansion

19   of the product lines); Avery Dennison Corp. v. Sumpton, 189 F.3d 868, 875-76 (9th

20   Cir. 1999) (fame for a dilution cause of action is determined by the "duration and

21   extent of use of the mark in connection with the goods or services with which the

22   mark is used," "the duration and extent of advertising and publicity of the mark,"

23   ──────────────

24   [21]   Mattel, Inc.'s Motion to Compel Responses to Interrogatories and Production of
       Documents by MGA Entertainment, Inc., and Isaac Larian, dated February 10, 2009,

25   Watson Dec., Exh. 26.

26   [22]   Id. at 14-16; see also MGA Entertainment, Inc. and Isaac Larian's Opposition to
       Mattel, Inc.'s 2/10/09 Motion to Compel Responses to Interrogatories and Production of

27   Documents, dated February 18, 2009, Watson Dec., Exh. 27 (not opposing Mattel's motion
       to overrule MGA's and Larian's unilateral definitions).

28

EXHIBIT 12 PAGE 195

EXHIBIT 16 PAGE 322

1  "the geographical extent of trading area in which the mark is used," and "the

2  channels of trade for the goods or services with which the mark is used," among

3  other factors). None of these authorities limit these key inquiries into the extent and

4  nature of use to only sales involving "transfer of title for compensation," and MGA

5  cites no authority suggesting that use is so limited or that would otherwise allow it

6  to exclude legally relevant information about the use of MGA's alleged trade dress.[23]

7  MGA's objections to Mattel's defined terms should be overruled.

8      **D.**    **MGA Cannot Withhold Information Simply Because It May Be**

9          **The Subject Of Expert Witness Analysis**

10      MGA objects to Interrogatories 51 and 53 on the grounds ███████████

11  ████████████████████████████████████████████████████████████████

12  ████████████████████████████████████████████████████████████████

13  ████████████████████████████████████████████████[24]   In its

14  Opposition, however, MGA now asserts that it was merely trying to "preserve its

15  right to rely on expert testimony." (Opp. at 21). But the intent of MGA's general

16  and specific objection was clearly much broader, and any attempt to withhold

17  information as "premature" should be overruled. MGA cites no authority

18  supporting a contention that it can withhold factual information on the basis that it

19  might be the topic of expert testimony. (Opp. at 20-21). To the contrary, the law is

20

21      [23]  Further underscoring the point that trade dress rights do not accrue only upon the

22  satisfaction of MGA's artificial, unsupported "transfer of title for compensation" definition

    and that adopting MGA's constrained view would deny Mattel legally relevant information

23  it is entitled to, the Lanham Act provides that a licensee's use inures to the licensor's

    benefit -- without any reference to transfer to title or any similar limitation at all. 15

24  U.S.C. § 1055 ("Where a registered mark . . . .is or may be used legitimately by related

    companies, such use shall inure to the benefit of the registrant . . . and such use shall not

25  affect the validity of such mark . . . "); eMachines, Inc. v. Ready Access Memory, Inc.,

    2001 WL 456404, at * 8 (C.D. Cal. March 5, 2001) ("a license to use a mark is evidence of

26  use of the mark by the mark's registrant").

27      [24]  Watson Dec., Exh. 12, at 3-4, 15, 18.

28

EXHIBIT 12 PAGE 196
EXHIBIT 16 PAGE 323

1  clear that interrogatories requesting factual information are not objectionable even

2  on the basis that the responding party would need to consult with an expert to clarify

3  relevant facts.  (Mot. at 16-17) (citing King v. E.F. Hutton & Co., Inc., 117 F.R.D.

4  2, 5 (D.D.C. 1987); Roberts v. Heim, 130 F.R.D. 424, 429-30 (N.D. Cal. 1989)).

5  Thus, even if at some point MGA obtains expert information, MGA's proper course

6  would be to *supplement* its response.  What MGA cannot do is assert this objection

7  as a basis to further delay answering Mattel's interrogatories with the information

8  that is now available to it.

9      **E.**    **MGA's Objections That Information Is Better Known To Mattel**

10        **Should Be Overruled**

11      Interrogatories 51 and 54 seek information about the factual basis of MGA's

12  own contentions and ask MGA to identify Mattel's purportedly infringing products

13  *with specificity*.  It is not unreasonable for Mattel to require MGA to specifically

14  identify the allegedly infringing products so that Mattel can understand the basis for

15  MGA's allegations.  Such specific identification is well within MGA's knowledge

16  and not within Mattel's.  Indeed, without such specific identification, Mattel cannot

17  fully identify the products that are the subject of MGA's claims.  Furthermore,

18  MGA cannot withhold information on the theory that Mattel better knows which

19  people have knowledge of Mattel's purported copying of MGA's intellectual

20  property.  Once again, Mattel seeks information regarding the factual basis of

21  MGA's own claims and is entitled to the information.

22      **F.**    **Mattel's Interrogatories Are Not Compound And Must Be**

23        **Answered**

24      Interrogatories 51, 52 and 53 inquire into the factual basis for MGA's claims

25  that Mattel infringed MGA's intellectual property.  These interrogatories each seek

26

27

28

-11-

1  information on a common theme and about a common group.[25]  For example,

2  Interrogatory 51 asks that for the allegedly infringed MGA products, concepts or

3  designs, MGA identify with specificity the alleged infringement.[26]  Interrogatory 52

4  asks for sales information for MGA's allegedly infringed products.[27]  Neither of

5  these interrogatories is compound.  Similarly, Interrogatory 53 is not compound.  It

6  asks that for each instance where MGA claims likelihood of confusion between

7  Mattel and MGA marks, MGA identify the witnesses, facts and documents

8  supporting that contention.[28]  As the Discovery Master has previously ruled in this

9  case, such interrogatories with "subparts seeking facts supporting a contention, the

10  identity of persons with knowledge, and documents are not counted separately for

11

12  ───────────────────────

[25]  MGA does not even attempt to distinguish Mattel's authorities.  See Mot. at 18 (citing Swackhammer v. Sprint Corp. PCS, 225 F.R.D. 658, 664 (D. Kan. 2004) ("[A]n interrogatory containing subparts directed at eliciting details concerning a 'common theme' should generally be considered a single question."); Pacific Lumber Co. v. National Union Fire Ins. Co. of Pittsburgh, 2005 WL 318811, at * 7 (N.D. Cal. January 5, 2005) (interrogatory that asked the "same question regarding a common group of people" was not compound) (citing Wright & Miller, 8A Fed. Prac. & Proc. Civ. 2d § 2168.1 at 261)).

[26]  In other words, this interrogatory asks MGA to identify specifically which Mattel products infringed specifically what MGA intellectual property.  Contrary to what MGA suggests, simply requiring that MGA provide specificity in its description of the alleged infringement (by identifying the allegedly infringed elements, and by specifically identifying the allegedly infringing Mattel products) does not make the interrogatory compound.

[27]  Each of the authorities MGA relies on to support its contention that Mattel's interrogatories are compound are inapposite.  In Collaboration Properties, Inc. v. Polycom, Inc., 224 F.R.D. 473, 475 (N.D. Cal. 2004), the plaintiff had identified the products that formed the basis of its own claims and was propounding interrogatories to defendant about those products.  By contrast, here, Mattel asks MGA to identify the products that are the subject of MGA's own contentions.  Jada Toys v. Mattel, Inc., 518 F.3d 628 (9th Cir. 2008), and Durney v. WaveCrest Laboratories, LLC, 441 F. Supp. 2d 1055 (N.D. Cal. 2005), are also inapposite.  These cases do not even relate to discovery, let alone discuss what constitutes a compound interrogatory.  See Opp., at 22, fn. 20.

[28]  By requiring MGA to identify the Sleekcraft factors supporting MGA's contentions, the interrogatory simply identifies the level of specificity with which MGA must answer the interrogatory.

-12-

EXHIBIT 12 PAGE 198

EXHIBIT 16 PAGE 325

1  the purposes of applying the . . . interrogatory limit."[29]  MGA cites no authority to

2  the contrary.

3  **G.   Mattel's Interrogatories Are Not Duplicative**

4      Interrogatory 52 does not duplicate Interrogatory 45.  Interrogatory 52 seeks

5  MGA profits, costs and revenue associated with each trade dress Mattel allegedly

6  infringed, while Interrogatory 45 seeks similar information with respect to each

7  Bratz product.   Thus, Interrogatory 52 encompasses products not covered by

8  Interrogatory 45 and also requires MGA to identify which of the Bratz products and

9  associated trade dress MGA alleges Mattel infringed.[30]

10  **H.   Mattel's Interrogatories Are Not Unduly Burdensome**

11      MGA does not dispute that it has failed to provide any proof to support its

12  burden assertions.    The Court should therefore overrule each of MGA's

13  unsubstantiated burden objections.[31]  Indeed, although Mattel drew attention to this

14  deficit in its Motion, MGA has not even attempted to cure this deficiency.  Nor does

15  MGA dispute, for example, that it regularly maintains reports containing revenue,

16  profit, and cost information on a product-by-product basis, which is precisely the

17  _____

18  [29]    Order Granting Joint Motion for Protective Order Regarding Mattel's

19  Interrogatories, dated September 5, 2007, at 5-7, Supp. Watson Dec., Exh. 4.

    [30]    Contrary to MGA's assertion, Mattel also challenges MGA's objection that

20  Interrogatory 51 is duplicative.  (Mot. at 19, fn. 81) (explaining that in answer to

21  Interrogatories 6 and 49 MGA has not provided all the information requested in

    Interrogatory 51).

22  [31]    See Mot. at 20-22; see also Jackson v. Montgomery Ward & Co., Inc., 173 F.R.D.

23  524, 528-9 (D. Nev. 1997) ("The party claiming that a discovery request is unduly

    burdensome must allege specific facts which indicate the nature and extent of the burden,

24  usually by affidavit or other reliable evidence.") (citing Burton Mechanical

    Contractors, Inc. v. Foreman, 148 F.R.D. 230, 233 (N.D. Ind. 1992)).   The former

25  Discovery Master also ruled that MGA must substantiate its burden objections with

    supporting proof.   See Order Granting Mattel's Motion to Compel Production of

26  Documents and Interrogatory Responses by MGA, dated May 15, 2007, at 14 ("Once

27  again, MGA has failed to substantiate any of its objections with supporting declarations or

    legal authorities).

28

-13-

1  information sought by Interrogatory No. 52.  Thus, providing a response to this

2  interrogatory will not impose an undue burden.  (Mot. at 21-22).

3      As Mattel explained in its Motion, MGA cannot complain that Mattel's

4  interrogatories are unduly burdensome when Mattel simply seeks information

5  regarding MGA's own claims and allegations.[32]  If MGA contends that Mattel has

6  infringed vast amounts of MGA's intellectual property, Mattel has the right to seek

7  and obtain discovery as to each of MGA's contentions.  For this reason, courts hold

8  there can be no undue burden in requiring a party to identify its own claims and the

9  factual basis for them.  See 8A Federal Practice & Procedure § 2167 (citing Am. Oil

10  Co. v. Penn. Petro. Co., 23 F.R.D. 680, 683 (D.R.I. 1959) ("Since the information

11  sought here will undoubtedly be assembled by the defendant prior to trial in the

12  preparation of its defenses, it cannot be said that these interrogatories are

13  objectionable as being burdensome.")).

14      MGA's only complaint is that the interrogatories are unduly burdensome

15  because Mattel requests information about all alleged infringement of MGA

16  intellectual property, whether that property is tangible or intangible.  (Opp. at 24).

17  But as explained above, Mattel is entitled to information regarding all of MGA's

18  claims and allegations, and interrogatories seeking such information are not unduly

19  burdensome.

20      Similarly, MGA complains that Interrogatory 53 and 64 are unduly

21  burdensome -- 53 because it requires MGA to identify the Sleekcraft factors

22  supporting each of MGA's alleged claims, and 64 because it requires MGA to

23  identify the facts, witnesses and documents pertaining to its claims.[33]  Again,

24

25  [32]  (Mot. at 20-24).  In such circumstances, the burden of responding is created by and
   under the control of MGA.

26  [33]  See Opp. at 25.  Note that MGA states that it objects to Interrogatory 52 because it

27  requires identification of Sleekcraft factors.  Interrogatory 52 does not mention Sleekcraft
   factors but rather seeks information about revenue, profit and cost.  Mattel therefore

28      (footnote continued)

-14-

EXHIBIT 12 PAGE 200

EXHIBIT 16 PAGE 327

1    however, these objections are unavailing because the interrogatories seek

2    information regarding the details of MGA's own allegations against Mattel.  The

3    Court should overrule MGA's meritless burden objections.

4        **I.**    **MGA's Boilerplate Privilege Objections Should Be Overruled**

5        As Mattel explained in its Motion, MGA's privilege objections are improper.

6    (Mot. at 25-26).  MGA now asserts that it was simply trying to make clear that "it

7    was not waiving attorney-client privilege and would not produce any privileged

8    information or documents." (Opp. at 25).  MGA's privilege objections are much

9    broader than this, however.[34]  In fact, MGA objects to Interrogatory Nos. 52, 53, 55,

10   and 64 on the grounds that they ██████████████████████████████████

11   ████████████████████████████████████████████████████████████████

12   ████████████████████████████████████████████████████████████████

13   ████████████████████████████████████████████████████████████████

14   ████████████  Such broad assertions of privilege cannot be sustained in the context

15   of contention interrogatories where the law makes clear that a party cannot avoid

16   responding by claiming that the interrogatories call for a legal conclusion or by

17   invoking the attorney-client privilege or the work product doctrine.[35]  To the extent

18   MGA is merely asserting that it is not waiving attorney-client privilege and that it

19   will not produce any documents protected by the attorney-client privilege, then the

20   Court should overrule the remainder of MGA's objection regarding the ████████

21   ████████████████████████████████████████████████████████████████

22   ████████████████████████████████████████████████████████████████

23   

24   ────────────────────────

25   assumes MGA meant to object to Interrogatory 53, which does require the identification of Sleekcraft factors.

26   [34]   MGA's Objections and Responses to Mattel's Supplemental Interrogatories (Nos. 52, 53, 55, 64), Watson Dec., Exh. 12.

27   [35]   Convergent Business Systems, Inc. v. Diamond Reporting, Inc., 1989 WL 92038, at *1 (E.D.N.Y. 1988); King v. E.F. Hutton & Co., Inc., 117 F.R.D. 2, 5 n.3 (D.D.C. 1987).

28   

-15-

EXHIBIT 12 PAGE 201
EXHIBIT 16 PAGE 328

1   ██████████████████ which MGA does not even attempt to defend. Mattel is

2   entitled to full, complete information about MGA's own claims in this case, and

3   MGA should not be permitted to further withhold that information from Mattel

4   through such limitations.

5                                    **Conclusion**

6          For the foregoing reasons, Mattel respectfully requests that the Discovery

7   Master enforce the prior Discovery Master's Order, overrule each of MGA's

8   objections and compel MGA to respond to Nos. 43-44 of Mattel's Amended Fourth

9   Set of Interrogatories and Nos. 51-55 and 64 of Mattel's Supplemental

10  Interrogatories, and impose sanctions in the amount of $4,515.

11

12  DATED: March 18, 2009          QUINN EMANUEL URQUHART OLIVER &
                                    HEDGES, LLP
13

14

15                                 By/s/ Scott L. Watson
                                      Scott L. Watson
16                                    Attorneys for Mattel, Inc.

17

18

19

20

21

22

23

24

25

26

27

28

-16-

# EXHIBIT 17

# TO DECLARATION OF

# ANDREW C. SPITSER

# EXHIBIT 17

# TO DECLARATION OF

# ANDREW C. SPITSER

1   Robert C. O'Brien (SBN 154372)
    ARENT FOX LLP
2   555 West Fifth Street, 48th Floor
    Los Angeles, CA  90013-1065
3   Telephone:  213.629.7400
    Facsimile:   213.629.7401
4   obrien.robert@arentfox.com

5   Discovery Master

6

7

8              UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10                   EASTERN DIVISION

11   CARTER BRYANT, an individual,        Case No.  CV 04-09049 SGL (RNBx)

12              Plaintiff,                 Consolidated with
                                           Case No. CV 04-09059
13        v.                               Case No. CV 05-2727

14   MATTEL, INC., a Delaware             **PHASE 2 DISCOVERY MATTER**
     corporation,
15                                        **ORDER NO. 17, REGARDING:**
                Defendant.
16
                                             **(1)  THE MGA PARTIES' MOTION**
17                                           **FOR A PROTECTIVE ORDER**
                                             **STAYING DISCOVERY ON**
18                                           **TRADE DRESS CLAIMS;**
19
                                             **(2)  MOTION OF MATTEL, INC. TO**
20                                           **ENFORCE PRIOR COURT ORDER**
                                             **AND TO COMPEL RESPONSES TO**
21                                           **INTERROGATORIES; and**
22
23
                                             **(3)  *EX PARTE* APPLICATION**
24   CONSOLIDATED WITH                        **FILED BY MATTEL, INC. FOR AN**
     MATTEL, INC. v. BRYANT and              **ORDER TO SHOW CAUSE RE:**
25   MGA ENTERTAINMENT, INC. v.              **MGA ENTERTAINMENT, INC.'S**
     MATTEL, INC.                            **FAILURE TO COMPLY WITH**
26                                           **COURT ORDER**
27
28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES
                                                      ORDER NO. 17
                                           [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 13 PAGE 203
EXHIBIT 17 PAGE 330

1    This Order sets forth the Discovery Master's ruling on the following

2   discovery matters: (1) the motion for a protective order staying discovery on trade

3   dress claims filed by MGA Entertainment, Inc., MGA Entertainment (HK) Limited,

4   MGAE De Mexico, S.R.L. De C.V. and Isaac Larian (the "MGA Parties")

5   ("Protective Order Motion") [Docket No. 4921]; (2) the motion filed by Mattel, Inc.

6   ("Mattel") to enforce a prior order compelling MGA Entertainment, Inc. ("MGA")

7   to answer Interrogatory Nos. 43 and 44, and compelling responses to Supplemental

8   Interrogatory Nos. 51 – 55 and 64 ("Motion To Compel") ("[Docket No. 4987]; and

9   (3) the *ex parte* application filed by Mattel for an order to show cause regarding

10  MGA's failure to comply with a prior court order ("Application") [Docket No.

11  4997] (collectively, the "Motions").

12    The Motions came on regularly for hearing before the Discovery Master on

13  April 14, 2009.  All interested parties were represented by counsel and afforded the

14  opportunity to present oral argument on the Motions.  The Discovery Master,

15  having considered the papers filed in support of and in opposition to the Motions,

16  and having heard oral argument, rules as set forth below.

17  **I.    THE TRADE DRESS DISCOVERY AT ISSUE**

18    All of the Motions concern discovery related to MGA's trade dress claims.

19  **A.    Interrogatory Nos. 43 And 44**

20    On October 23, 2007, Mattel served its Amended Fourth Set of

21  Interrogatories on MGA, including Interrogatory Nos. 43 and 44.  (Declaration of

22  Scott L. Watson in Support of the Motion To Compel ("Watson Decl."), Ex. 1 at

23  pp. 7 – 8).  These interrogatories ask MGA to identify, for each design, product

24  and packaging that MGA contends Mattel copied, the date of conception and the

25  date it was first fixed in a tangible medium:

26    • Interrogatory No. 43: "For each concept, design, product, product

27      packaging or other matter that YOU contend MATTEL copied or

28      infringed, including but not limited to those identified in MGA's

EXHIBIT 13 PAGE 204
EXHIBIT 17 PAGE 331

1     Responses To Mattel, Inc.'s First Set Of Interrogatories Re Claims Of

2     Unfair Competition, Response To Interrogatory No. 2 (and any

3     Supplemental Responses to such Interrogatory), state the date that each

4     such concept, design, product, product packaging or other matter was

5     conceived, and IDENTIFY, all PERSONS with knowledge of, and all

6     DOCUMENTS that REFER OR RELATE TO, the foregoing." (*Id.,*

7     Ex. 1 at p. 7).

8     •  Interrogatory No. 44: "For each concept, design, product, product

9        packaging or other matter that YOU contend MATTEL copied or

10       infringed, including but not limited to those identified in MGA's

11       Responses To Mattel, Inc.'s First Set Of Interrogatories Re Claims Of

12       Unfair Competition, Response To Interrogatory No. 2 (and any

13       Supplemental Responses to such Interrogatory), state the date that each

14       such concept, design, product, product packaging or other matter was

15       first fixed in any tangible medium of expression (if ever), and

16       IDENTIFY, all PERSONS with knowledge of, and all DOCUMENTS

17       that REFER OR RELATE TO, the foregoing." (*Id.,* Ex. 1 at pp. 7 and

18       8).

19     MGA responded to Interrogatory Nos. 43 and 44 with only objections on

20 November 15, 2007. (*Id.,* Ex. 2 at pp. 10 – 13). On November 30, 2007, MGA

21 supplemented its responses to both interrogatories. (*Id.,* Ex. 3 at pp. 12 – 19). On

22 December 20, 2007, Mattel moved to compel further responses to the

23 interrogatories. (*Id.,* Ex. 4). The MGA Parties filed their opposition to Mattel's

24 motion to compel on December 31, 2007. (*Id.,* Ex. 5). On January 7 and 28, 2008,

25 MGA served its second and third set of supplemental responses to Interrogatory

26 Nos. 43 and 44. (*Id.,* Ex. 6 at pp. 20 – 26 and Ex. 7 at pp. 28 – 33).

27     On February 4, 2008, the Court stayed all Phase 2 discovery. (Order dated

28 February 4, 2008, p. 3). On February 15, 2008, the prior discovery master granted

EXHIBIT 13 PAGE 205
EXHIBIT 17 PAGE 332

1  Mattel's motion to compel, finding that the "requested information is relevant to

2  Mattel's defense against the MGA [P]arties' claims that their products have been

3  copied or infringed by certain Mattel products." (Watson Decl., Ex. 8 at pp. 11 –

4  12). The prior discovery master further ruled that the supplement responses

5  provided by MGA were deficient, reasoning as follows:

6          Although the MGA [P]arties served supplemental

7          responses after filing their opposition brief, the

8          supplemental responses do not include the requested

9          information. The MGA [P]arties have [also] failed to

10         establish that the interrogatories are unduly burdensome.

11  (*Id.*, Ex. 8 at p. 12). The prior discovery master then ordered MGA to

12  supplement its responses "no later than February 26, 2008." (*Id.*, Ex. 8

13  at p. 22).

14         On March 3, 2008, seven days after the deadline specified in the prior

15  discovery master's order, MGA supplemented its responses to Interrogatory Nos.

16  43 and 44 for a fourth time, objecting that the discovery in question related to

17  Phase 2 and was therefore stayed pursuant to the stay imposed by the Court on

18  Phase 2 discovery on February 4, 2008. (*Id.*, Ex. 9 at pp. 7 – 16). On April 22,

19  2008, the prior discovery master granted the MGA Parties' motion for clarification

20  concerning his February 15, 2008 ruling, stating that "the MGA Parties' obligation

21  to supplement their responses to Interrogatory Nos. . . . 43 and 44 . . . [is] hereby

22  stayed until further order of the district court lifting the stay on Phase 2 discovery."

23  (*Id.*, Ex 10 at p. 3).

24     **B.     Supplemental Interrogatory Nos. 51 – 55 And 64**

25         On January 9, 2008, Mattel served Supplemental Interrogatory Nos. 51 – 55

26  and 64 on MGA. (*Id.*, Ex 11 at p. 12 – 14 and 16). These interrogatories seek

27  information regarding MGA's allegations that Mattel copied, infringed or diluted

28  MGA's products:

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

-3-

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 13 PAGE 206
EXHIBIT 17 PAGE 333

1     •  <u>Supplemental Interrogatory No. 51</u>: "For each concept, design,

2         product, product packaging or other matter that YOU contend

3         MATTEL has copied, infringed, or diluted, including but not limited to

4         those identified in MGA's Responses to Mattel, Inc.'s First Set of

5         Interrogatories Re Claims of Unfair Competition, Response To

6         Interrogatory No. 2 (and any Supplemental Responses to such

7         Interrogatory), describe, fully and separately, each and every concept,

8         design, product, product packaging or other matter of or by MATTEL

9         that YOU contend is a copy of, infringes or dilutes YOUR alleged

10       concept(s), design(s), product(s), product packaging or other matter.

11       Your answer should describe the Mattel concept, design, product,

12       product packaging or other matter with specificity and in detail

13       (including without limitation by product name, product number, SKU,

14       or bar code number), and specify those elements or attributes of

15       YOUR claimed concept, design, product, product packaging or other

16       matter that YOU contend were copied, infringed or diluted by

17       MATTEL." (*Id.*, Ex. 11 at pp. 12 – 13).

18     •  <u>Supplemental Interrogatory No. 52</u>: "For each trade dress that YOU

19         contend MATTEL copied, infringed, or diluted, separately IDENTIFY

20         each product sold by YOU or YOUR licensees that incorporates such

21         trade dress and, for each such product, separately state (a) the number

22         of units, by year, of each such product sold by YOU or YOUR

23         licensees; (b) revenue received by YOU from such SALES of each

24         such product; (c) all costs YOU have incurred in connection with each

25         product; including but not limited to YOUR cost of good sold, and (D)

26         YOUR gross and net worth from each such product." (*Id.*, Ex. 11 at p.

27         13).

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 4 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 13 PAGE 207
EXHIBIT 17 PAGE 334

1    • Supplemental Interrogatory No. 53: "For each MATTEL concept,
2    design, product, product packaging or other matter that YOU contend
3    is likely to cause confusion, to cause mistake, or to deceive as to
4    affiliation, connection, or association, or as to origin, sponsorship, or
5    approval, separately state all facts that support YOUR contention of
6    such, including but not limited to all facts that support YOUR
7    contention, if YOU so contend, that any of the SLEEKCRAFT
8    FACTORS weighs against MATTEL, and IDENTIFY all PERSONS
9    with knowledge of such facts, and all DOCUMENTS that REFER OR
10   RELATE TO such facts." (*Id.*).

11   • Supplemental Interrogatory No. 54: "For each concept, design,
12   product, product packaging or other matter that YOU contend
13   MATTEL copied, infringed or diluted, state all facts that support
14   YOUR contention, if YOU so contend, that such copying or
15   infringement was intentional or willful, and IDENTIFY all PERSONS
16   with knowledge of such facts, and all DOCUMENTS that REFER OR
17   RELATE TO such facts." (*Id.*).

18   • Supplemental Interrogatory No. 55: "State all facts which support the
19   allegation in Paragraph 120 of YOUR COMPLAINT that MATTEL
20   has "caused and continues to cause blurring and dilution of the
21   distinctive look of MGA's products and trade dress," and IDENTIFY
22   all PERSONS with knowledge of such facts, and all DOCUMENTS
23   that REFER OR RELATE TO such facts." (*Id.*, Ex. 11 at p. 14).

24   • Supplemental Interrogatory No. 64: "To the extent YOU have not
25   previously disclosed such information in a prior interrogatory response
26   YOU provided to Mattel, state all facts which support YOUR claims
27   against Mattel in THIS ACTION, and IDENTIFY all PERSONS with
28   knowledge of such facts, and all DOCUMENTS that REFER OR

EXHIBIT 13 PAGE 208

EXHIBIT 17 PAGE 335

1       RELATE TO such facts." (*Id.*, Ex. 11 at p. 16).

2       MGA responded to Supplemental Interrogatory Nos. 51 – 55 and 64 on

3  February 8, 2008, objecting that the discovery related to Phase 2 issues and was

4  therefore stayed.   (*Id.*, Ex. 12 at pp. 15 – 19 and 34 – 35).

5     **C.    The Court Lifts The Stay On Phase 2 Discovery**

6       On January 6, 2009, the Court vacated the stay on Phase 2 discovery.

7  (Watson Decl., Ex. 13 at p. 2).   Mattel's counsel subsequently wrote to counsel for

8  MGA on January 20, 2009 to ask when MGA planned to serve the required

9  responses to Interrogatory Nos. 43 and 44, which the prior discovery master had

10  previously ordered answered. (*Id.*, Ex. 14).

11      Mattel's counsel also wrote to MGA on January 28, 2009, requesting that the

12  parties meet and confer on Supplemental Interrogatory Nos. 51 – 55 and 64. (*Id.*,

13  Ex. 15 at pp. 2 – 3).   Counsel for the parties then spoke on February 6, 2009

14  regarding Mattel's eight trade dress interrogatories. (*Id.*, ¶ 18 and Ex. 18 at p. 1).

15  During the conference, MGA stated, that it would provide responses to

16  Interrogatory Nos. 43 and 44, and Supplemental Interrogatory Nos. 51 – 55 and 64,

17  "not later than 30 days after the Court decides the trade dress summary judgment

18  motion which Mattel has indicated it will be bringing." (*Id.*, Ex. 18 at p. 1).

19      On February 18, 2009, the parties met and conferred regarding Mattel's

20  contemplated summary judgment motion concerning MGA's trade dress claims and

21  again discussed the responses to the eight trade dress interrogatories at issue. (*Id.*,

22  Ex. 23 at p. 1).   The next day, MGA informed Mattel that it would not agree to

23  provide further responses to the interrogatories. (*Id.*).   Rather, MGA said that it

24  planned to request a protective order to stay its obligation to respond and that it

25  would only provide responses: (1) if their planned protective order was denied; or

26  (2) if the protective order is granted, 21 days after the Court decides Mattel's

27  summary judgment motion, to the extent any trade dress claims remain after that

28  decision. (*Id.*).

EXHIBIT 13 PAGE 209
EXHIBIT 17 PAGE 336

1     On February 26, 2009, the MGA Parties filed the Protective Order Motion.

2  Eight days later, Mattel filed its Motion To Compel.  Mattel filed the Application

3  on March 10, 2009.

4  **II.**    **THE MGA PARTIES' MOTION FOR A PROTECTIVE ORDER**

5     The Discovery Master first addresses the MGA Parties' Protective Order

6  Motion.

7     **A.**    **The Relief Sought By The MGA Parties**

8     The MGA Parties "seek a stay to defer responding to eight specific

9  interrogatories relating to MGA's trade dress claims until 21 days after the Court

10  rules on Mattel's [contemplated] summary judgment motion." (Motion for a

11  Protective Order, p. 5).  "The MGA Parties also seek a stay of all discovery relating

12  to MGA's trade dress claims for the same period." (*Id.*).

13     **B.**    **Mattel's Opposition**

14     Mattel opposes the Protective Order Motion on five grounds.  First, Mattel

15  argues that the motion is inconsistent with the Court's January 6, 2009 order lifting

16  the stay on Phase 2 discovery. (Opposition, pp. 12 – 13).  Second, Mattel argues

17  that any request to stay discovery is not properly directed to the Discovery Master.

18  (*Id.*, p. 13).  Third, Mattel argues that the request for a stay lacks merit, since "it is

19  commonplace for a party to bring dispositive motions prior to trial . . ." (*Id.*, pp. 13

20  – 14).  Fourth, Mattel argues that the request for a stay is unworkable since the

21  trade dress claims "are intertwined with Mattel's Phase 2 claims." (*Id.*, pp. 13 –

22  15).  Finally, Mattel argues that the stay would unduly prejudice it and that there is

23  no corresponding undue burden placed on the MGA Parties. (*Id.*, pp. 16 – 20).

24     **C.**    **Legal Standard**

25     In general, parties may obtain discovery regarding any matter, not privileged,

26  that is relevant to the claim or defense of any party. (Fed. Rule Civ. P. 26(b)(1)).

27  The motion brought by the MGA Parties to stay discovery is made pursuant to

28  Federal Rule of Civil Procedure 26(c), which governs motions for protective orders.

EXHIBIT 13 PAGE 210
EXHIBIT 17 PAGE 337

1   Rule 26(c) provides that a protective order may be issued "for good cause" and "to

2   protect a party or person from annoyance, embarrassment, oppression, or undue

3   burden or expense." (Fed. Rule Civ. P. 26(c)).

4       A district court is afforded considerable discretion in deciding whether to

5   issue a protective order that stays discovery. (*See, e.g., Wang v. Hsu*, 919 F.2d 130,

6   130 (10th Cir. 1990). While it is within a district court's discretion to stay

7   discovery pending the outcome of a dispositive motion, (*see Monreal v. Potter*, 367

8   F.3d 1224, 1238 (10th Cir. 2004), such stays are not routinely granted, (*see, e.g.,*

9   *TSM Associates, LLC v. Tractor Supply Co.*, 2008 WL 2404818, at *1 (N.D.Okla.

10  June 11, 2008) ["Unless some compelling reason is presented, in the usual case

11  discovery is not stayed as Defendant requests."]; *Kutilek v. Gannon*, 132 F.R.D.

12  296, 297-98 (D.Kan. 1990) ["The general policy in this district is not to stay

13  discovery even though dispositive motions are pending."]).

14      The underlying principle in determining whether to grant or deny a stay is

15  that "[t]he right to proceed in court should not be denied except under the most

16  extreme circumstances." (*Commodity Futures Trading Com'n v. Chilcott Portfolio

17  Management, Inc.*, 713 F.2d 1477, 1484 (10th Cir. 1983). In other words, stays of

18  the normal proceedings of a court should be the exception rather than the rule.

19      Nonetheless, a stay may be appropriate if "resolution of a preliminary motion

20  may dispose of the entire action," (*Nankivil v. Lockheed Martin Corp.*, 216 F.R.D.

21  689, 692 (M.D.Fla. 2003)), "where the case is likely to be finally concluded as a

22  result of the ruling thereon; where the facts sought through uncompleted discovery

23  would not affect the resolution of the motion, or where discovery on all issues of

24  the broad complaint would be wasteful and burdensome," (*Kutilek*, 132 F.R.D. at

25  298).

26      In deciding whether to stay discovery pending the resolution of a dispositive

27  motion, federal courts in California conduct the following inquiry: (1) Is the

28  pending motion "potentially dispositive of the entire case, or at least dispositive on

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 8 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 13 PAGE 211

EXHIBIT 17 PAGE 338

1   the issue at which discovery is directed," and, if so (2) can the pending dispositive

2   motion be decided "absent additional discovery." (*Qwest Communications Corp. v.*

3   *Herakles, LLC*, 2007 WL 2288299, *2 (E.D.Cal. August 8, 2007)).  If the court

4   answers both questions in the affirmative, it may then analyze other factors,

5   including the likelihood that the dispositive motion will be granted, (*id.*), and/or

6   "(1) plaintiff's interests in proceeding expeditiously with the civil action and the

7   potential prejudice to plaintiff of a delay; (2) the burden on the defendants; (3) the

8   convenience to the court; (4) the interests of persons not parties to the civil

9   litigation; and (5) the public interest." (*Schmaltz v. Smithkline Beecham Corp.*,

10   2008 WL 3845260, *1 (D.Colo. Aug.15, 2008)).

11       **D.    Analysis**

12           The MGA Parties' primary argument in favor of the requested stay is that, in

13   the event Mattel's contemplated motion for summary judgment is granted, "the

14   Trade Dress Interrogatories may prove unnecessary or may be substantially

15   narrowed." (Protective Order Motion, p. 13; *see also id.* at pp. 1, 2, and 11 – 15).

16   The MGA Parties reason that "[i]t is particularly appropriate to stay discovery when

17   a dispositive motion, such as a summary judgment motion, 'would obviate the need

18   for discovery.'" (*Id.*, p. 11 (citation omitted)).

19           The Discovery Master finds this rationale unpersuasive for the following

20   reasons.

21       **1.    The Discovery Master Does Not Have the Power To Issue**

22               **The Requested Stay**

23           First, the Discovery Master does not have authority to render a ruling that

24   could directly override the Court's scheduling order and delay the Phase 2 trial.

25   While the Discovery Master has been appointed to resolve "any and all . . .

26   discovery disputes in this case,"[1] and may issue orders that indirectly impact the

---

27   [1] *See* Order appointing the prior discovery master dated December 6, 2006 ("Discovery Master

28   Order) and the Order appointing the current Discovery Master dated January 6, 2009.

EXHIBIT 13 PAGE 212
EXHIBIT 17 PAGE 339

1   scheduling order (e.g., resolving motions to compel, motions to quash, etc.),[2] there

2   is nothing in the order appointing the Discovery Master that authorizes him to

3   override the scheduling order directly.[3]  Indeed, the power to control scheduling in

4   this matter is vested with the Court, as evidenced by the scheduling order issued by

5   it on February, 11, 2009.[4]  (Order dated February 11, 2009, p. 2).  Because the

6   Court, not the Discovery Master, established the applicable discovery cut-off and

7   trial dates for Phase 2, (id.), the Discovery Master cannot issue a stay that overrides

8   that order.

9   　　　　　2.　　　**The Court Previously Indicated That the Parties Should**

10  　　　　　　　　　　　**Proceed With Phase 2 Discovery.**

11  　　　　Second, the Court advised the Discovery Master on February 11, 2009 that

12  "[t]here is no stay on discovery. Period." (Reporter's Transcript of Proceedings,

13  February 11, 2009, p. 97:15).  It further instructed the Discovery Master "in no

14  uncertain terms, that there is no stay on *any* discovery related to this case at all,"

15  (*id.*, p. 97:9–10 [emphasis added]), and "there is nothing from this Court which is

16  precluding *any* discovery that is properly sought for the trial that is scheduled," (*id.*,

17  p. 101:22:24 [emphasis added]).  While these statements admittedly arose in the

18  context of the lifting of the stay on Phase 2 discovery, the Discovery Master

19  nevertheless believes that they are instructive of the Court's view that any request

20

---

21  [2] *See* Order dated February 4, 2008, p. 3 (stating that "[t]he fact that the Discovery Master's

22  ruling might impact upon the Court's scheduling order does not relieve the parties of following this procedure.")

23  [3] That the stay requested by the MGA Parties could force the Court to alter its scheduling order is

24  clear, because the requested stay is of an indefinite duration. Although the MGA Parties request a stay until 21 days after the Court rules on Mattel's contemplated summary judgment motion,

25  (Protective Order Motion, p. 5), no such motion is pending before the Court. Nor is there a

26  hearing date on the yet-to-be-filed motion, let alone an indication as to when the Court might be able to issue a ruling disposing of it.

27  [4] The Court issued its Phase 2 scheduling order more than one month after the appointment of the

28  current Discovery Master.

EXHIBIT 13 PAGE 213
EXHIBIT 17 PAGE 340

1  to the Discovery Master for a stay of Phase 2 discovery should be rejected absent

2  extraordinary circumstances not present here.

3       **3.**    **There Is No Dispositive Motion Pending**

4      Third, the MGA Parties have failed to demonstrate that a stay is warranted,

5  because no dispositive motion is pending before the Court. The MGA Parties

6  concede in their moving papers and again in their Reply that Mattel has merely

7  represented that it will file a summary judgment motion at some point in the future.

8  (Protective Order Motion, p. 4; Reply, p. 4). In the absence of a *pending*

9  dispositive motion, there is no basis for granting the requested stay.[5]

10       **4.**    **Mattel's Contemplated Summary Judgment Motion Will**

11              **Not Dispose Of MGA's Trade Dress Claims**

12      Even assuming a dispositive motion had been filed with the Court, the MGA

13

14  [5] The cases cited by the MGA Parties to support its request for a stay are inapposite. In each case,

15  the party seeking the discovery stay was the party who had brought the pending dispositive motion. (*See In re Netflix Antitrust Litig.*, 506 F.Supp.2d 308, 321 (N.D. Cal. 2007) [Defendant

16  who filed a motion to dismiss and requested a stay of discovery was ordered to disclose some documents upon partial lifting of stay by the Ninth Circuit.]; *Orchid v. Biosciences, Inc. v. St.*

17  *Louis University*, 198 F.R.D. 670, 671 – 672 (S.D. Cal. 2001) [Defendant, who had moved to dismiss for lack of personal jurisdiction, sought protective order denying all discovery or,

18  alternatively, limiting the discovery to jurisdictional issues]; *Landry v. Air Pilots Ass'n Intern.*

19  *AFL-CIO*, 901 F.2d 404, 435 – 436 (5th Cir. 1990) [Defendant, who had brought motion for summary judgment, properly sought and obtained a protective order staying discovery

20  propounded on it by plaintiffs.]); *Little v. City of Seattle*, 863 F.2d 681 (9th Cir. 1988) [Stay on discovery upheld in favor of party who raised immunity issue via a summary judgment motion];

21  *Coastal States Gas Corp. v. Dep't of Energy*, 84 F.R.D. 278, 282 (D.C.Del., 1979) [Defendant who filed motion to dismiss for lack of ripeness sought a stay of discovery]. By comparison, the

22  MGA Parties are not arguing that a stay is appropriate due to a dispositive motion that they intend to bring or that the contemplated motion will defeat their trade dress claims. On the contrary, the

23  MGA Parties are arguing that a stay should be imposed until Mattel's contemplated summary judgment motion, which the MGA Parties believe should be denied, is resolved.

24      Further, the five cases cited by the MGA Parties all involved situations where a dispositive

25  motion had already been filed with the Court. (*Id.*)

26      Finally, most of the cases relied upon by the MGA Parties were at a relatively nascent stage. Indeed, the dispositive motion was typically a motion to dismiss. (*See, e.g., In re Netflix Litig.*,

27  506 F.Supp.2d at 321; *Orchid*, 198 F.R.D. at 671 – 672; *Coastal States Gas Corp.*, 84 F.R.D. at 282;). In contrast, a trial has already been held in this matter and the lawsuit has been pending for

28  several years.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 11 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 13 PAGE 214

EXHIBIT 17 PAGE 341

1   Parties have not demonstrated that "[t]he pending motion [is] potentially dispositive

2   of the entire case, or at least dispositive on the issue at which discovery is directed."

3   (*Qwest Communications Corp.*, 2007 WL 2288299, *2). Mattel's contemplated

4   summary judgment motion will not dispose of MGA's trade dress claims because it

5   is undisputed that MGA's trade dress claims "concern products and other matters

6   that will not be the subject of Mattel's contemplated motion." (Opposition, p. 15;

7   *see also* Reply p. 11 n.6).

8       The MGA Parties nevertheless argue in their Reply that "it would make far

9   more sense for MGA to compile responsive information once the summary

10   judgment motion is decided and the full scope of the trade dress claims is settled."

11   (Reply, p. 11 n. 6). Phrased differently, the MGA Parties argue not that the

12   summary judgment motion may moot all of the requested discovery, but only that,

13   if granted, it would narrow the scope of the trade dress discovery. Because

14   discovery will inevitably be required on certain portions of MGA's trade dress

15   claims, this is not a situation where the contemplated motion is potentially

16   dispositive of the issue at which the discovery is directed. Accordingly, the stay

17   requested by the MGA Parties can be denied for that reason alone.

18         **5.**     **Other Factors Also Weigh Against Issuing The Requested**

19               **Stay**

20       Finally, many, if not all, of the other factors a court may consider in deciding

21   whether a stay is appropriate pending the resolution of a dispositive motion weigh

22   in favor of denying the requested stay.

23         **a.**     **The Merits Of The Dispositive Motion**

24       As explained in *Qwest Communications Corp.*, 2007 WL 2288299, *2, one

25   of the additional factors a court may consider is whether the merits of the pending

26   dispositive motion make it likely that the motion will be granted. Although the

27   Discovery Master cannot perform such an analysis here (because no dispositive

28   motion is pending), I note that the MGA Parties stated in their moving papers that

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 12 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 13 PAGE 215

EXHIBIT 17 PAGE 342

1    Mattel's contemplated summary judgment "arguments are not well-taken . . ."

2    (Protective Order Motion, p. 13).  In light of this statement, the MGA Parties are

3    precluded from arguing that it is likely Mattel's motion will be granted in order to

4    justify their request for a stay.  Accordingly, the Discover Master finds that – based

5    on the record presented – this factor weighs against issuing the requested stay.[6]

**b.    Prejudice To Mattel**

7        Imposing a stay on MGA's trade dress claims could also prejudice Mattel by

8    delaying the ultimate resolution of the matter and increasing litigation costs.  As

9    explained above, the stay requested by the MGA Parties is of an indefinite duration

10   and could delay the trial or, alternatively, force Mattel to expedite discovery efforts

11   after the stay is lifted.  Moreover, Mattel could be forced to depose the same

12   witnesses multiple times in Phase 2 (once for those issues not related to MGA's

13   trade dress claims and later with respect to those trade dress issues that remain

14   following the disposition of Mattel's contemplated summary judgment motion).

15   For these reasons, this factor weighs against staying the trade dress discovery.

**c.    The MGA Parties Have Not Demonstrated They Will**

**Suffer Any Undue Burden**

18       While the MGA Parties claim that it will "be extremely difficult, time-

19   consuming and costly" to respond to the eight trade dress interrogatories at issue,

20   (Protective Order Motion, p. 14), as noted above, some trade dress discovery will

21   have to be taken regardless of the outcome of Mattel's anticipated summary

22   judgment motion.  Further, while it is possible that Mattel's contemplated summary

23   judgment motion, if granted, could simplify the issues for trial and reduce the costs

24   imposed on the MGA Parties, it is also possible that the resolution of the motion

25   will not have any bearing on the scope of the discovery needed in this case.

26   Regardless, a party is always burdened with costs when it voluntarily chooses to

27
_____
[6] Of course, the Discovery Master is in no way deciding the merits of Mattel's contemplated
28   summary judgment motion.

EXHIBIT 13 PAGE 216

EXHIBIT 17 PAGE 343

1   pursue a claim, whether the case ultimately is dismissed, summary judgment is

2   granted, the case is settled, or a trial occurs.  If the MGA Parties wish to avoid these

3   costs in connection with MGA's trade dress claims, MGA can always dismiss them.

4   Because any hardship that MGA might face is one of its own making, any burden

5   imposed on it in having to respond to the discovery is justified.  Accordingly, this

6   factor weighs against issuing the requested stay.

7            **d.**    **The Interests Of The Judiciary And The General**

8                **Public**

9       The Court, using funds supplied by the general public, has already expended

10   a great deal of effort and resources in this matter, including conducting a lengthy

11   trial in Phase 1.  The Court further issued a scheduling order that established a

12   specific trial date and discovery cut-off for Phase 2.  Consequently, the general

13   interests of controlling the court's docket and the fair and speedy administration of

14   justice weigh heavily in favor of denying the requested stay.

15       **E.**   **Summary Of Ruling Regarding The Protective Order Motion**

16       For all of the foregoing reasons, the MGA Parties have failed to meet their

17   burden of demonstrating that good cause exists for issuance of a protective order

18   staying their obligation to respond to the subject discovery.

19   **III.**   **MATTEL'S MOTION TO COMPEL**

20       Having denied the Protective Order Motion, the Discovery Master now turns

21   to Mattel's Motion To Compel.

22       **A.**   **Interrogatory Nos. 43 and 44**

23          **1.**   **Orders Issued By The Prior Discovery Master**

24       As explained in Section I.A., above, this is not the first time that Mattel has

25   moved to compel responses to Interrogatory Nos. 43 and 44.  The prior discovery

26   master ordered MGA to supplement its responses to these interrogatories as part of

27   his February 15, 2008 order ("February 15, 2008 Order").  (Watson Decl., Ex. 8 at

28   pp. 11 – 12).  Seven days after the deadline specified in the February 15, 2008

EXHIBIT 13 PAGE 217

EXHIBIT 17 PAGE 344

1   Order for supplementing its responses to Interrogatory Nos. 43 and 44, MGA

2   served objections stating that the discovery in question related to Phase 2 and had

3   been stayed pursuant to a February 4, 2008 order from the Court. (*Id.*, Ex. 9 at pp.

4   7 – 16). After having been advised of the stay imposed by the Court on

5   February 4, 2008, the prior discovery master clarified his February 15, 2008 Order

6   on April 22, 2008 ("April 22, 2008 Order"), ruling that "[t]he MGA Parties

7   obligation to supplement their responses . . . [was] stayed until further order of the

8   district court lifting the stay on Phase 2 discovery." (*Id.*, Ex. 10 at p. 3).

9            **2.      The Relief Sought By Mattel**

10           Because MGA failed to supplement its response to Interrogatory Nos. 43 and

11   44 after the Court lifted the stay on Phase 2 discovery on January 6, 2009, Mattel

12   requests that the Discovery Master enforce the February 15, 2008 Order and require

13   MGA to supplement its responses. (Motion To Compel, pp. 9 – 10).

14           **3.      MGA's Opposition**

15           In its Opposition, MGA relies on two grounds for refusing to provide

16   responses to Interrogatory Nos. 43 and 44. First, MGA argues that it is not in

17   violation of the prior discovery master's February 15, 2008 Order because that

18   order was subsequently stayed by the April 22, 2008 Order, which "did not include

19   any specific date, or time period, after the Phase 2 stay was lifted within which

20   MGA had to provide supplemental responses." (Opposition, p. 10; *see also id.*, pp.

21   9 and 11). Second, MGA argues that it has not refused to answer Interrogatory

22   Nos. 43 and 44 but rather simply moved for a protective order and noted that it will

23   either provide further responses following the denial of that motion or, in the event

24   the motion is granted, after the Court decides Mattel's contemplated summary

25   judgment motion. (*Id.*, pp. 11 – 12).

26           The Discovery Master does not find either of these arguments persuasive.

27           **a.      The April 22, 2008 Order**

28           While MGA is correct that the prior discovery master temporarily stayed the

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 15 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 13 PAGE 218

EXHIBIT 17 PAGE 345

1   enforcement of his February 15, 2008 Order in his April 22, 2008 Order, its

2   argument that it does not have any obligation to supplement the responses to

3   Interrogatory Nos. 43 and 44 because the April 22, 2008 Order did not specify a

4   time within which MGA had to provide responses is not supported by the record.

5        As soon as the stay on Phase 2 discovery was lifted, MGA's obligation to

6   supplement its responses to Interrogatory Nos. 43 and 44 pursuant to the

7   February 15, 2008 Order returned.  Indeed, the plain language of the prior

8   discovery master's April 22, 2008 Order states that the "MGA Parties obligation to

9   supplement their responses . . . are hereby stayed **until further order of the**

10  **district court lifting the stay on Phase 2 discovery.**" (Watson Decl., Ex. 10 at p.

11  3 (emphasis added)).  Because the Court lifted the stay on Phase 2 discovery on

12  January 6, 2009, the April 22, 2008 Order has not been a shield to the enforcement

13  of the prior discovery master's February 15, 2008 Order since the lifting of the stay.

14       Further, MGA had, at most, eleven days following the lifting of the stay on

15  Phase 2 discovery to supplement its responses to Interrogatory Nos. 43 and 44.

16  (Watson Decl., Ex. 8 at pp. 11 – 12 and 22).  The prior discovery master's February

17  15, 2008 Order required MGA to provide its supplemental responses within eleven

18  days of the order (i.e., on February 26, 2008).  (*Id.*, Ex. 8 at p. 22).  Giving MGA

19  the benefit of the doubt and assuming that all eleven of those days remained at the

20  time the stay was lifted on January 6, 2009, MGA had until January 19, 2009 to

21  provide its responses to Mattel (i.e., 11 days under the February 15, 2008 Order,

22  plus 2 additional days because January 17, 2009 falls on a Saturday).  Because

23  more than three months have passed without a response, MGA has not complied

24  with the terms of the prior discovery master's February 15, 2008 Order.

25              **b.     MGA's Offer To Produce The Supplemental**

26                     **Responses Following The Disposition Of The**

27                     **Protective Order Motion**

28       The contention that MGA somehow remedied its failure to supplement its

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

ORDER NO. 17
                                        [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 13 PAGE 219

EXHIBIT 17 PAGE 346

1   responses to Interrogatory Nos. 43 and 44 by offering to provide further responses
2   following the ruling on the Protective Order Motion is likewise unavailing. (*Id.*,
3   pp. 11 – 12). MGA cites no legal authority, and the Discovery Master has found
4   none, supporting the proposition that a party may refuse to respond to an
5   interrogatory after it has been ordered to do so by subsequently filing a motion for a
6   protective order. Nor would such a rule be logical, as it would permit the party
7   ordered to respond to thereby nullify the effect of the court order. Regardless, the
8   Discovery Master denied the Protective Order Motion and finds that it cannot be
9   used as a basis for failing to comply with the February 15, 2008 Order.

10          **4.    Conclusion**

11          For all of the foregoing reasons, MGA must promptly provide full and
12   complete responses to Interrogatory Nos. 43 and 44.

13          **B.    Mattel's Request For Sanctions Regarding Interrogatory Nos. 43**
14                  **And 44**

15          In its Motion To Compel, Mattel also requests that the Discovery Master
16   sanction MGA in the amount of $4,515 for failing to comply with the prior
17   discovery master's February 15, 2008 Order. (Motion To Compel, pp. 10 – 11). In
18   response, MGA argues that the Motion To Compel is "entirely unnecessary," since
19   "there is no dispute about whether MGA will respond to Interrogatories 43 and 44,
20   only when, and MGA had already brought the 'when' question to the Discovery
21   Master one week before Mattel filed the instant motion to compel" as part of its
22   Protective Order Motion. (Opposition, p. 13). However, the fact that one party has
23   moved for a protective order does not prevent the party opposing that motion from
24   subsequently filing a motion to enforce a prior court order, particularly where the
25   latter motion requests that the Discovery Master compel MGA to provide responses
26   to the interrogatories at issue "without further delay," (Motion To Compel, p. 10),
27   while the motion for a protective order indicates that MGA will respond to the
28   interrogatories, at the earliest, "within 21 days after" the denial of the Protective

EXHIBIT 13 PAGE 220

EXHIBIT 17 PAGE 347

1  Order Motion, (Protective Order Motion, p. 10).

2         MGA next argues that sanctions should be denied because its Protective

3  Order Motion is supported by numerous cases, (Opposition, pp. 13 – 14), and that

4  "it would be a perversion of every conceivable notion of economy and efficiency,

5  not to mention fairness . . . if a motion to compel could be used to sanction a party

6  for exercising its legal right to seek a protective order." (Id., p. 14).  But these

7  arguments are not persuasive for the same reasons discussed in Section II and

8  Section III.A.3.b., above, namely that the Protective Order Motion is not

9  meritorious and MGA has not cited any legal authority supporting the proposition

10  that a party may refuse to respond to an interrogatory after it has been ordered to do

11  so by subsequently filing a motion for a protective order.

12         Finally, MGA argues that it "has not appealed, challenged or otherwise

13  refused to obey" the prior discovery master's order, (id.), but merely requested that

14  the "Discovery Master temporarily defer the time to respond . . . based upon the

15  new, intervening circumstances that arose between the issuance of that order and

16  the lifting of the discovery stay," (id., p. 15).  However, this is just another way of

17  saying that MGA refused to supplement its responses as required by the prior

18  discovery master due to its mistaken belief that the Protective Order Motion

19  obviated the need to comply with the February 15, 2008 Order.  Because that

20  argument has already been rejected, MGA has failed to show that it had substantial

21  justification for opposing the enforcement of the February 15, 2008 Order.

22  Accordingly, the Discovery Master sanctions MGA in the amount of $4,515.[7]

23         **C.     Supplemental Interrogatory Nos. 51 – 55 And 64**

24                **1.     The Relief Sought By Mattel**

25         Mattel next requests that the Discovery Master overrule MGA's objections

26  and compel it to provide full and complete responses to Supplemental Interrogatory

---

[7] Having determined that MGA lacked substantial justification for failing to comply with the February 15, 2008 Order, the Discovery Master denies MGA's request for sanctions.

EXHIBIT 13 PAGE 221
EXHIBIT 17 PAGE 348

1    Nos. 51 – 55 and 64. (Motion To Compel, pp. 12 – 21).

2                2.        MGA's Opposition

3        In its Opposition, MGA initially argues that Mattel failed to meet and confer

4    in good faith. (Opposition, pp. 16 – 18). It further argues that even if Mattel did

5    meet and confer sufficiently, its other objections to the interrogatories (i.e., that

6    they (1) contain overbroad definitions, (2) are compound, (3) are duplicative of

7    other interrogatories, (4) improperly seek expert witness information, privileged

8    information, and information better known to Mattel, and/or (5) impose an undue

9    burden) are meritorious and should be sustained. (Id., pp. 18 – 26).

10                a.        Purported Failure To Meet And Confer

11       Because it could dispose of the outstanding discovery issues related to

12   Supplemental Interrogatory Nos. 51 – 55 and 64, the Discovery Master first

13   addresses MGA's argument that Mattel failed to meet and confer in good faith prior

14   to filing its motion.

15       MGA argues that Mattel did not meet and confer in good faith because its

16   "meet and confer letter concerning these interrogatories is utterly devoid of any

17   reference whatsoever to the putative impropriety of the objections it now challenges

18   . . ." (Opposition, p. 17). However, MGA admits that the parties did meet and

19   confer about certain issues regarding these interrogatories. (Id., p. 18 ["While the

20   parties did meet and confer about the timing of MGA's response to Interrogatory

21   Nos. 51 – 55 and 64 . . ." (emphasis omitted)]). The record further reflects Mattel

22   sent a meet and confer letter and had multiple phone calls with MGA's counsel

23   about these specific interrogatories. (Watson Decl., ¶ 18 and Exs. 15, 17 and 19).[8]

24   In fact, a letter dated January 28, 2008 specifically asks MGA to let Mattel know

25   "[i]f MGA or Larian intends to limit their responses [to the Supplemental

26

27   [8] The Discovery Master overrules MGA's evidentiary objections to Paragraph 18 of the Watson
     Decl. because the statements are based on Mr. Watson's personal knowledge, are not vague and
28   ambiguous, do not constitute hearsay, and are not argumentative.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

                                                       - 19 -          ORDER NO. 17
                                                            [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 13 PAGE 222

EXHIBIT 17 PAGE 349

1  Interrogatories] based on . . . any other objections . . ." (Watson Decl., Ex. 15).

2  Under such circumstances, the Discovery Master finds that Mattel satisfied Rule

3  37's "good faith" meet and confer requirement.

**b.   Definitional Objections**

5  MGA's first substantive argument in opposition to Supplemental

6  Interrogatory Nos. 51 – 55 and 64 is that Supplemental Interrogatory No. 52 is

7  ambiguous because of the manner in which the term "SALES" is defined.

8  (Opposition p. 19). MGA likewise asserts that Supplemental Interrogatory Nos. 51

9  – 55 are ambiguous because of the definition used for the term "MATTEL." (*Id.*,

10  pp. 19 – 20).  However, MGA has not cited any legal authority in support of its

11  position.

12  Moreover, MGA did not set forth the grounds for its objections "with

13  specificity," at the time it objected to the interrogatories, as required by Federal

14  Rule of Civil Procedure 33(b)(4).  To the contrary, it merely "incorporate[d]

15  General Objection Nos. 14 – 15 (regarding Definitions), including without

16  limitation its objection to the definition of the term 'MATTEL" for Supplemental

17  Interrogatory Nos. 51 – 55, (Separate Statement, pp. 4 – 8), as well as the term

18  "SALES" with respect to Supplemental Interrogatory No. 52 (*id.*, pp. 5 – 6).  This

19  incorporation by reference of a list of general objections is insufficient to preserve

20  an objection.  (*Convertino v. U.S. Dept. of Justice*, 565 F.Supp.2d 10, 12 – 13

21  (D.D.C. 2008); *ACMA USA, Inc. v. Surefil, LLC*, 2008 WL 2714422, *2 (E.D.Va.

22  July 7, 2008); *Grider v. Keystone Health Plan Central, Inc.*, 2007 WL 2874423, *5

23  - *6 (E.D.Pa. September 27, 2007); *see also* Fed. R. Civ. Proc. 33(b)(4)).

24  Regardless, the Discovery Master is not persuaded that MGA is unable to

25  understand the terms MATTEL and SALES.  Accordingly, the definitional

26  objections are overruled.  MGA must answer the interrogatories.[9]

---

27  [9] The prior discovery master repeatedly required MGA to respond to discovery that used these

28  definitions, including Interrogatory Nos. 43 and 44. (Watson Decl., Exs. 1 and 8).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

-20-

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 13 PAGE 223

EXHIBIT 17 PAGE 350

### c.  Expert Witness Objection

1         With respect to Supplemental Interrogatory Nos. 51 and 53, MGA asserts

3 that it "has simply interposed an objection that preserves [its] right to rely on expert

4 testimony." (Opposition, p. 21).  Since that is the full extent of MGA's expert

5 witness objection, the Discovery Master agrees that the objection, as limited by

6 MGA, is valid.  What MGA cannot do is assert that this objection permits it to

7 withhold information that is now available to it.  Accordingly, the objection is

8 sustained to the extent that MGA's interrogatory response merely includes a

9 reservation of rights to supplement the response during expert discovery.

### d.  Objection That The Information Is Better Known By Mattel

12         Regarding Supplemental Interrogatory No. 51, MGA asserts that the request

13 for it to identify Mattel products by stock keeping number or bar code number is

14 objectionable because that information is better known to Mattel.  (*Id.*, p. 21).

15 However, MGA cannot withhold information on the ground that Mattel knows

16 which people have knowledge of Mattel's purported copying of MGA's intellectual

17 property.  Mattel is entitled to discover the information MGA possesses and the

18 factual bases of its trade dress claims.

19         As for MGA's claim that Supplemental Interrogatory No. 54 improperly asks

20 it to identify all persons with knowledge of certain facts even though it does not

21 know everyone who may possess such information, (*id.*, pp. 21 – 22), it is

22 incumbent upon MGA to provide the information that is within its custody,

23 possession or control.  In fact, MGA concedes that it will provide "whatever

24 information it has." (*Id.*, p. 22).

### e.  Compound Objection

26         MGA next asserts that Supplemental Interrogatory Nos. 51 – 53 are

27 impermissibly compound. (Opposition, pp. 22 – 23).  This contention is

28 unavailing.  The questions in each interrogatory refer to one common theme and a

EXHIBIT 13 PAGE 224

EXHIBIT 17 PAGE 351

1   common group, and count as a single interrogatory. (*See Swackhammer v. Sprint*

2   *Corp. PCS,* 225 F.R.D. 658, 644 (D.Kan. 2004) ["[A]n interrogatory containing

3   subparts directed at eliciting details concerning a 'common theme' should generally

4   be considered a single question"]). Accordingly, the objection is overruled.

### f.   Duplicative Objection

6        MGA's sixth argument is that Supplemental Interrogatory Nos. 51 and 52 are

7   duplicative of other interrogatories Mattel propounded previously. (Opposition, pp.

8   23 – 24). But MGA has failed to demonstrate that this is the case. As an initial

9   matter, MGA does not explain why Supplemental Interrogatory No. 51 is

10   duplicative of other interrogatories. Rather, it simply states that Mattel "does not

11   take issue with MGA's duplication objection," (*id.,* p 23), even though Mattel

12   addressed that issue in footnote 81 of its Motion to Compel, (Motion To Compel, p.

13   19 ["MGA further objects that Interrogatory No. 51 is duplicative of Interrogatory

14   No. 6 . . . No. 49 . . . .Although Interrogatory Nos. 6 and 49 also address the facts

15   regarding MGA's trade dress claims, MGA has yet to identify each of the Mattel

16   products it contends copied, infringed, or diluted MGA's products by SKU number,

17   as requested by Interrogatory 51."]). Because it has not analyzed Interrogatory No.

18   51, MGA's objection to that interrogatory is overruled.

19        MGA's claim that Supplemental Interrogatory No. 52 is duplicative of

20   Interrogatory No. 45 is also unpersuasive. Supplemental Interrogatory No. 52 seeks

21   MGA profit, costs and revenue associated with each trade dress MGA contends

22   Mattel copied, infringed or diluted, (Separate Statement, p. 5), whereas

23   Interrogatory No. 45 asks MGA to identify each Bratz product that MGA sold and

24   to identify the profits, costs and revenue associated with each such product.

25   The questions are therefore not the same.[10]  Accordingly, the objections are

---

[10] If the interrogatories were the same as previous interrogatories it answered, MGA should be able to respond to the latest interrogatories by cutting and pasting its responses to the prior interrogatories. However, as discussed below, MGA alleges that responding to Supplemental Interrogatory Nos. 51 and 52 will be overly burdensome, thereby implying that the questions are not identical in scope. (Opposition, p. 25).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 22 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 13 PAGE 225

EXHIBIT 17 PAGE 352

1   overruled.

2          **g.     Undue Burden Objection**

3          MGA next objects that Supplemental Interrogatory Nos. 51 – 53 and 64 are

4   unduly burdensome.

5          However, MGA has not provided any evidence in connection with its Motion

6   To Compel to support its claim of burden.  (*See Jackson,* 173 F.R.D. at 528-9 ["The

7   party claiming that a discovery request is unduly burdensome must allege specific

8   facts which indicate the nature and extent of the burden, usually by affidavit or

9   other reliable evidence."]).  Further, MGA cannot complain that the interrogatories

10  are unduly burdensome when Mattel merely seeks information regarding the extent

11  of MGA's trade dress claims.  If MGA contends Mattel infringed numerous

12  products, Mattel has the right to discover the scope of the alleged claims.

13  Accordingly, the objections are overruled.

14         **h.     Privilege Objection**

15         Regarding Supplemental Interrogatory Nos. 52, 53, 55 and 64, MGA argues

16  that it asserted a privilege objection merely to "preserve [its] ability to protect,

17  privileged documents and information . . . . [and to make] clear that it was not

18  waiving the attorney-client privilege . . . ." (Opposition, p. 25).   Since that is the

19  full extent of MGA's privilege objection, the Discovery Master agrees that

20  objection as so limited is valid.  Accordingly, the objection is sustained on that

21  limited ground.

22         **3.     Conclusion**

23         For all of the foregoing reasons, MGA must promptly provide full and

24  complete responses to Supplemental Interrogatory Nos. 51 – 55 and 64, except as

25  limited above.

26  **D.     Summary Of Ruling Regarding The Motion To Compel**

27         Mattel's Motion To Compel is granted, except as limited above.  Mattel's

28

EXHIBIT 13 PAGE 226

EXHIBIT 17 PAGE 353

1   request for sanctions in connection with Interrogatory Nos. 43 and 44 is also

2   granted.

3   **IV.   MATTEL'S *EX PARTE* APPLICATION**

4          Several days after Mattel filed its Motion to Compel on March 6, 2009,

5   Mattel filed its Application for issuance of an order to show cause regarding

6   contempt.  The Application addresses Interrogatory Nos. 43 and 44 (the

7   "Interrogatories") and is based on the same facts summarized above with respect to

8   the Motion to Compel and Protective Order Motion.  However, unlike the Motion

9   to Compel, Mattel filed its Application with the Court, arguing that the Discovery

10  Master is not authorized to issue contempt sanctions.  By order dated March 12,

11  2009, the Court referred the Application to the Discovery Master, who was

12  instructed to review it in the first instance and recommend a disposition to the

13  Court.  (Order dated March 12, 2009, p. 1).

14      **A.    Basis For The Application**

15          **1.    Circumstances Warranting *Ex Parte* Relief.**

16      In the introductory section of its Application preceding the Memorandum of

17  Points and Authorities, Mattel sets forth the following grounds for *ex parte* relief:

18          [F]or two months, MGA failed and refused to produce Phase 2

19          discovery, including such discovery that was previously ordered.

20          MGA also has a history of flouting Court Orders, but remains

21          undeterred by prior warnings and prior awards of sanctions.

22          Absent prompt intervention by this Court, MGA will continue to

23          block even ordered Phase 2 discovery.  Furthermore, MGA's

24          conduct is a direct challenge to the authority of the court and the

25          Discovery Master, and additional delay would inappropriately

26          reward MGA for its refusals to comply with the [prior discovery

27          master's February 15, 2008] Order.

28  (Application, p. i).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 24 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 13 PAGE 227

EXHIBIT 17 PAGE 354

1    In its Reply, Mattel offers the following as a further justification for bringing

2    the matter on an *ex parte* basis:

3            MGA has repeatedly employed the procedural tactic of refusing

4        to comply with discovery requests and forcing Mattel to return to

5        court for multiple successive orders and sanctions compelling

6        discovery.  In so doing, MGA effectively halts the discovery

7        process and deprives Mattel of crucial information to which it is

8        entitled. ... Requiring Mattel to repeat the process of filing a

9        regularly noticed motion would unduly reward MGA for its

10       refusal to comply with the [February 15, 2008] Order and

11       enhance MGA's ability to perpetually deprive Mattel of crucial

12       time in which to conduct discovery.

13   (Reply, pp. 3-4).

14       **2.      Circumstances Warranting Issuance Of An Order To Show**

15               **Cause**

16       In its Application, Mattel argues that, although MGA has improperly refused

17   to respond to all of the discovery referenced in the Motion to Compel (including the

18   Interrogatories), that refusal is, in essence, an "aggravated offense" with respect to

19   the Interrogatories, because MGA had already been ordered to provide responses to

20   those Interrogatories pursuant to the prior discovery master's February 15, 2008

21   Order.  Mattel therefore argues that MGA's failure to provide responses to the

22   Interrogatories should be singled out for special treatment as contempt of the Court.

23       **3.      Relief Sought**

24       MGA seeks issuance of an order to show cause that MGA is in contempt, a

25   finding of contempt, and the following monetary relief:

26       •   An award of coercive sanctions against MGA in the amount of $5,000

27           for each day that MGA fails to produce full and complete responses to

28           Interrogatories Nos. 43 and 44 as mandated by the Order, and, in the

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 25 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 13 PAGE 228

EXHIBIT 17 PAGE 355

1  event that MGA does not comply within five days of the Court's

2  Order, the amount of coercive sanctions should be increased to

3  $10,000 per day (with all such per diem fine amounts being paid to the

4  Court); and

5  • An award of monetary sanctions against MGA in the amount of

6  $7,000, which represents a portion of the costs incurred by Mattel in

7  bringing the Application.

8  (Application, pp. i - ii).

9  **B.  Discussion**

10  **1.  *Ex Parte* Relief Is Not Justified**

11  As MGA notes, the Court's standing order indicates that *ex parte*

12  applications are "solely for extraordinary relief." This directive was underscored

13  by the Court's Discovery Master Order, which requires that a party applying for *ex*

14  *parte* relief must show that "good cause" exists for hearing any dispute "on

15  shortened time" and that it will "be prejudiced absent prompt resolution" of the

16  issue. (Discovery Master Order, pp. 4 – 5).

17  This standard is not satisfied here. Mattel does not adequately demonstrate

18  that it will be prejudiced if the underlying motion is heard according to regularly

19  noticed motion procedures. The discovery cut-off is still eight months in the future

20  (December 11, 2009), and trial is more than a year away. In its Reply, Mattel

21  argues that it would be unfair to require Mattel to seek relief by means of a

22  regularly noticed motion, given the relevant history:

23  Mattel *already* followed this course of action and already

24  obtained an Order that MGA produce amended interrogatory

25  responses. MGA refuses to obey that [February 15, 2008] Order.

26  Requiring Mattel to repeat the process of filing a regularly

27  noticed motion would unduly reward MGA for its refusal to

28  comply with the [February 15, 2008] Order and enhance MGA's

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 26 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 13 PAGE 229

EXHIBIT 17 PAGE 356

1 |    ability to perpetually deprive Mattel of crucial time in which to

2 |    conduct discovery.

3 | (Reply, p. 4, emphasis in original).

4 |    Mattel's frustration is understandable; Mattel has already been through this

5 | process twice (counting the pending motion to compel) with respect to the identical

6 | interrogatories which are the subject of the Application. However, Mattel's

7 | assertion that it should be allowed to dispense with a noticed motion ignores one

8 | important point: the Application seeks relief which both parties acknowledge is

9 | entirely different in character than an award of ordinary monetary sanctions for

10 | discovery abuses. Unlike its motions to compel, the Application seeks a finding

11 | that MGA has deliberately disobeyed a Court order and should be punished by an

12 | award of coercive sanctions until it complies with the order. This is the first time

13 | Mattel has sought such relief, and MGA has never previously been provided the

14 | opportunity to oppose the requested relief in connection with a regularly noticed

15 | motion. Thus, while Mattel's above quoted argument might have some application

16 | if Mattel were seeking ordinary discovery sanctions on an *ex parte* basis, it does not

17 | justify Mattel in seeking contempt sanctions for the first time on an *ex parte* basis.

18 |    Moreover, the chronology of events tends to negate the assertion that Mattel

19 | is suffering immediate and irreparable prejudice from the delay occasioned by

20 | MGA's failure to respond to the Interrogatories. MGA has refused to respond to

21 | the Interrogatories since the Court lifted the stay on Phase 2 discovery on January 6,

22 | 2009. Nevertheless Mattel did not file its Application until two months later, after

23 | MGA filed the Protective Order Motion and after Mattel filed its Motion to Compel

24 | MGA to respond to the outstanding trade dress discovery, including providing

25 | responses to the Interrogatories. The timing of these events undermines Mattel's

26 | argument that expedited relief is necessary.

27 |    In the absence of some exigency, the Discovery Master believes that the

28 | severity and punitive character of contempt sanctions warrant affording the parties

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

-27-

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 13 PAGE 230

EXHIBIT 17 PAGE 357

1   the time and opportunity to present their arguments in the context of a regularly

2   noticed motion.  Consequently Mattel was not justified in seeking relief on an *ex*

3   *parte* basis.  Nevertheless, because Mattel could simply re-file the Application as a

4   regularly noticed motion and because the Discovery Master is not inclined to

5   recommend that the Court grant the relief Mattel seeks at this time, I address the

6   substantive issues raised by the Application below.

7               **2.    MGA's Alleged Disobedience Of The Prior Order**

8                     **a.    Legal Standard**

9        As the Ninth Circuit has observed:

10              Courts are invested with inherent powers that are 'governed not

11              by rule or statute but by the control necessarily vested in courts to

12              manage their own affairs so as to achieve the orderly and

13              expeditious disposition of cases.'

14   (*Unigard Security Ins. Co. v. Lakewood Engineering & Manufacturing Corp.*, 982

15   F.2d 363, 368 (9th Cir. 1992) (citations omitted)).  When a party fails to comply

16   with a court order, that party commits civil contempt.  (*General Signal Corp. v.*

17   *Donallco, Inc.*, 787 F.2d 1376, 1376 (9th Cir. 1986)).  Additionally, Federal Rule of

18   Civil Procedure 37(b)(2)(A) authorizes a court to treat the failure to obey a

19   discovery order as contempt.

20        The Ninth Circuit has further observed that "courts have strictly adhered to

21   the principle that the power to punish for contempt is limited to '(t)he least possible

22   power adequate to the end proposed.'" (*In re Gustafson*, 619 F.2d 1354, 1361 (9th

23   Cir. 1980) (citations omitted)).

24        Mattel acknowledges that it must meet an exacting standard in order to

25   prevail on its Application.  Specifically, the party seeking imposition of civil

26   contempt sanctions must demonstrate "by *clear and convincing evidence* that the

27   contemnors violated a *specific and definite* order of the court." (*United States v.*

28   *Rose*, 437 F.Supp.2d 1166, 1170 (S.D. Cal. 2006) *quoting FTC v. Affordable Media*

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

-28-

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 13 PAGE 231

EXHIBIT 17 PAGE 358

1    *LLC*, 179, F.3d 1228, 1239 (9th Cir. 1990) (emphasis added)).  Further, any doubts

2    as to whether the requirements for civil contempt have been met in a particular case

3    must be resolved in favor of the party accused of civil contempt.  (*In re Chief*

4    *Executive Officers Clubs, Inc.*, 359 B.R. 527, 535 (S.D.N.Y. 2007)).

5        In accordance with this standard, contempt sanctions will not be imposed

6    unless the language of the order allegedly violated is clear and unambiguous.

7    (*Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc.*, 689 F.2d 885, 892 (9th Cir.

8    1982) (affirming district court's denial of applications to hold defendants in

9    contempt for violating terms of consent judgment where, among other things,

10    certain "language of the judgment was ambiguous"); *Sunbeam Corp. v. Black &*

11    *Decker (U.S.) Inc.*, 151 F.R.D. 11, 15 (D.R.I. 1993) (denying motion for contempt

12    and for sanctions where the discovery at issue was open to interpretation: "Any

13    ambiguities or uncertainties in the court order must be read in a light favorable to

14    the person charged with contempt. ... Contempt power should not be used where

15    there is uncertainty"); *Redman v. U.S.*, 77 F.2d 126, 127 (9th Cir. 1935) ("[T]he

16    power of the court to punish for contempt should be used with caution and

17    deliberation.")).

18        **b.**    **Application To The Facts**

19        Mattel argues that MGA violated the February 15, 2008 Order, and that it

20    continued to do so for two months before the prior discovery master stayed MGA's

21    obligation to respond to the Interrogatories on April 22, 2008.  (Application, p. 13).

22    That assertion is not accurate.  In granting MGA's motion for clarification of the

23    February 15, 2008 Order, the prior discovery master in essence retroactively found

24    that MGA should not have been ordered to immediately provide supplemental

25    responses because the Interrogatories involved Phase 2 issues and were therefore

26    subject to the Court's February 4, 2008 stay order – a stay imposed 11 days before

27    the February 15, 2008 Order.

28        When the stay was lifted, on January 6, 2009, the Court did not set a new

EXHIBIT 13 PAGE 232

EXHIBIT 17 PAGE 359

1   deadline for MGA to provide supplemental responses in compliance with the

2   February 15, 2008 Order, nor did Mattel request that either the Court or the current

3   Discovery Master do so.  However, one month after the stay was lifted, Mattel did

4   meet and confer with MGA in an attempt to obtain responses.  At that time, MGA

5   took the position that it would provide responses to the Interrogatories "not later

6   than 30 days after the Court decides the trade dress summary judgment motion

7   which Mattel has indicated it will be bringing." (Ex. 16 to Watson Decl. in support

8   of Application).  Three weeks later, MGA filed the Protective Order Motion

9   seeking a stay of its obligation to respond to the Interrogatories.

10          As set forth above, the Discovery Master finds that, in pursuing this course of

11   conduct instead of responding to the Interrogatories and other discovery that is the

12   subject of Mattel's Motion to Compel, MGA acted without substantial justification

13   and therefore grants Mattel's Motion To Compel and also awards sanctions against

14   MGA.  The question raised by the Application is whether MGA should *also* be

15   ordered to appear and show cause why it should not be held in contempt and subject

16   to further sanctions for failing to comply with the February 15, 2008 Order.

17          Since Mattel, as the moving party, has the burden of demonstrating by clear

18   and convincing evidence that MGA has committed civil contempt and should be

19   punished, Mattel must, in the first instance, identify the existence of a "specific and

20   definite" provision of the February 15, 2008 Order which MGA has violated.

21   (*Rose*, 437 F.Supp.2d at 1170).  In an attempt to meet this burden Mattel argues:

22              The Discovery Master's [February 15, 2008] Order directed

23              MGA to provide full, complete and updated responses to

24              Interrogatories Nos. 43 and 44 within eleven days.  MGA did not

25              comply with that Order and refused to do so for two months

26              before the Discovery Master stayed MGA's obligation to respond

27              while the Court's Phase 2 stay was in place.

28   (Application, p. 13).  However, as indicated above, MGA's failure to provide the

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 30 -      ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 13 PAGE 233

EXHIBIT 17 PAGE 360

1   responses specified in the February 15, 2008 Order cannot reasonably be viewed to

2   be a violation of that order during the period of February 15, 2008 to April 22, 2008

3   because the prior discovery master himself retracted the portion of his ruling

4   requiring MGA to comply in response to MGA's motion for clarification. In other

5   words, the prior discovery master found, in effect, that MGA had *properly* withheld

6   supplemental responses on the ground that the subject Interrogatories sought Phase

7   2 discovery, which had been stayed by the Court nearly two weeks *before* the prior

8   discovery master issued the February 15, 2008 Order. Given the prior discovery

9   master's April 22, 2008 ruling granting MGA's motion for clarification, MGA can

10   hardly be deemed to have been in violation of the February 15, 2008 Order while

11   the Court's stay of Phase 2 discovery was in place. A party who believes a ruling is

12   in error has the right to seek clarification or reconsideration, and doing so is not

13   equivalent to willfully disobeying the court.

14          Mattel also argues that MGA "resumed" its violation of the February 15,

15   2008 Order by failing to comply once the Court lifted the Phase 2 discovery stay on

16   January 6, 2009. While the Discovery Master does not agree that any violation

17   resumed on January 6, 2009, as set forth above, I do agree that MGA should have

18   promptly complied with the February 15, 2008 Order once the stay was lifted by

19   serving supplemental responses within 11 days of the lifting of the stay. *Lucero v.*

20   *Martinez*, 2006 WL 1304945 at *2 (D.N.M. Mar. 11, 2006) (party waived all

21   objections to interrogatories served before a stay was issued by failing to respond

22   within 30 days of the stay's expiration); *Donovan v. Mazzola*, 716 F.2d 1226, 1240

23   (9th Cir. 1983) ("Absent a stay, 'all orders and judgments of courts must be

24   complied with promptly.'").

25          However, today's ruling that MGA should have promptly provided responses

26   to the Interrogatories upon the stay being lifted by the Court is not equivalent to a

27   finding that MGA deliberately violated a "specific and definite" provision in the

28   February 15, 2008 Order. That order arguably does not contemplate the situation

EXHIBIT 13 PAGE 234

EXHIBIT 17 PAGE 361

1   which ensued after the order was issued, namely, the prior discovery master's

2   decision to suspend MGA's obligation to respond to the Interrogatories without

3   setting a new deadline to run from the lifting of the stay.

4       While it is reasonable to conclude, as the Discovery Master has done, that the

5   same 11-day deadline imposed by the February 15, 2008 Order would apply once

6   the stay was lifted, an inference, however reasonable, is not the same thing as an

7   express obligation imposed by Court order. (*U.S. v. Saccoccia*, 433 F.3d 19, 29-30

8   (1st Cir. 2005) [government did not carry its burden on civil contempt claim of

9   proving that acceptance of attorney fees by defense attorneys, post-verdict, fell

10  within list of activities expressly forbidden by earlier protective order]; *Independent*

11  *Living Aids, Inc. v. Maxi-Aids, Inc.*, 349 F.Supp.2d 509, 516 (E.D.N.Y. 2004) [the

12  defendant's supposed "understanding," based on oral comments by the Court that

13  he was being ordered to request that search engines discontinue using infringing

14  phrase, was not the same as express provision of injunction and could not serve as

15  basis for civil contempt]).   Further, as noted above, any doubts regarding

16  disobedience of a court order are to be resolved in favor of the party charged with

17  contempt.   Accordingly, the Discovery Master declines, under the applicable case

18  law and on the record presented, to find that MGA deliberately disobeyed the

19  Court, thereby meriting sanctions for civil contempt.   The Discovery Master also

20  declines to recommend that the Court issue the requested order to show cause.

21       However, as set forth in the Disposition section below, the Discovery

22  Master's ruling today *does* contain an express deadline by which MGA must

23  respond fully and without objection to the Interrogatories (as well as the other

24  discovery that is the subject of Mattel's Motion to Compel).   If MGA fails to

25  comply with the express, definite deadline imposed by this Order, the Discovery

26  Master reserves the right to recommend that the Court impose appropriate sanctions

27  from the date of MGA's non-compliance should Mattel renew its request for an

28  order to show cause regarding contempt by filing a noticed motion.

EXHIBIT 13 PAGE 235

EXHIBIT 17 PAGE 362

**V.    DISPOSITION**

    A.    MGA's Protective Order Motion is **DENIED.**

    B.    Mattel's Motion To Compel is **GRANTED**, except as limited above. MGA's responses to Interrogatory Nos. 43 and 44 shall be served within ten (10) days of this Order, subject to any applicable confidentiality designations available under the Protective Order.  MGA's responses to Supplemental Interrogatories Nos. 51 – 55 and 64 shall be served within thirty (30) days of this Order, subject to any applicable confidentiality designations available under the Protective Order.

    C.    Mattel's request for sanctions against MGA in connection with its Motion To Compel is **GRANTED.**  MGA shall pay $4515 to Mattel within ten (10) days of this Order.

    D.    MGA's request for sanctions in connection with Mattel's Motion To Compel is **DENIED.**

    E.    Mattel's Application for issuance of an order to show cause regarding contempt is **DENIED,** without prejudice to any noticed motion for an order to show cause regarding contempt that Mattel may deem appropriate in the event that MGA fails to comply with any provision of the present Order.

Dated:  April 14, 2009

                By:   /s/ Robert C. O'Brien
                      ROBERT C. O'BRIEN
                      Discovery Master

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 33 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 13 PAGE 236

EXHIBIT 17 PAGE 363

# EXHIBIT 18

# TO DECLARATION OF

# ANDREW C. SPITSER

# EXHIBIT 18

# TO DECLARATION OF

# ANDREW C. SPITSER

1   Hon. Edward A. Infante (Ret.)
    JAMS
2   Two Embarcadero Center
    Suite 1500
3   San Francisco, California 94111
    Telephone:   (415) 774-2611
4   Facsimile:   (415) 982-5287

5

6

7                    UNITED STATES DISTRICT COURT

8                    CENTRAL DISTRICT OF CALIFORNIA

9                           EASTERN DIVISION

10

11  CARTER BRYANT, an individual,          CASE NO. C 04-09049 SGL (RNBx)
                                           JAMS Reference No. 1100049530
12          Plaintiff,

13      v.                                 Consolidated with
                                           Case No. CV 04-09059
14  MATTEL, INC., a Delaware corporation,  Case No. CV 05-2727

15          Defendant.                     ORDER GRANTING MATTEL'S
                                           MOTION TO COMPEL PRODUCTION
16                                         OF DOCUMENTS AND
                                           INTERROGATORY RESPONSES BY
17  CONSOLIDATED WITH                      MGA
    MATTEL, INC. v. BRYANT and
18  MGA ENTERTAINMENT, INC. v. MATTEL,
    INC.
19

20

21                          I.  INTRODUCTION

22         On February 2, 2007, Mattel, Inc. ("Mattel") submitted its Motion To Compel Production

23  of Documents and Interrogatory Answers by MGA Entertainment, Inc. ("MGA").  On February

24  20, 2007, MGA submitted its opposition brief, and on February 26, 2007, Mattel submitted a

25  reply brief.  The matter was heard on March 5, 2007.  Thereafter the motion was taken under

26  submission pending the parties' submission of a proposed protective order, which was received

27

28

    Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

EXHIBIT 14 PAGE 237

EXHIBIT 18 PAGE 364

on April 23, 2007. Having considered the motion papers and comments of counsel at the hearing, Mattel's motion to compel is granted.

## II. BACKGROUND

A. Requests for Documents

In June of 2004, two months after Mattel filed suit against Bryant, and before MGA became a party to the action, Mattel served MGA with an eight-page subpoena for twenty-one categories of documents, to be produced in ten days. MGA filed a motion to quash, which the court granted because of the short amount of time provided for compliance with the subpoena. The parties met and conferred in July of 2004, and reached an agreement to limit the scope of some of Mattel's requests. In particular, the parties agreed to limit production to the "first generation" Bratz dolls. On August 12, 2004, MGA produced documents.

In 2005, the parties stipulated to supplementing their document productions on May 16, 2005. Mattel agreed to continue limiting its discovery requests to "first generation" Bratz dolls.

In September of 2006, MGA made a supplemental production of documents. On February 5, 2007, MGA produced about 2,300 pages of documents to replace earlier produced documents with legibility problems. On February 20, 2007, MGA produced an additional 224 pages of documents to replace earlier produced documents with legibility problems.

Mattel now moves to compel MGA to produce documents responsive to its requests. As a preliminary matter, Mattel contends that MGA's production is deficient because it contains redactions and cut-off text. Further, Mattel contends that MGA's production is incomplete with respect to essentially five categories of documents. First, Mattel contends that MGA is withholding documents relating to the origins of Bratz and Bryant's work for MGA. Mattel believes that MGA's production is incomplete based upon its review of documents that have been produced by third party Steven Linker. According to Mattel, Linker's documents from October of 2000 show that Bratz was much farther along before Bryant left Mattel than MGA or Bryant previously represented. Mattel also contends that MGA's responses to the document requests

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

2

EXHIBIT 14 PAGE 238
EXHIBIT 18 PAGE 365

1   contain inappropriate limitations, such as MGA's statement that it will produce "relevant and

2   responsive non-objectionable documents" or only that it will produce documents "sufficient" to

3   show when certain dates relating to Bratz occurred.  Mattel contends that these "carve outs

4   purport to allow MGA to cherry-pick what it will and will not produce to Mattel."  Mattel's

5   Separate Statement at 17:11-13.  Mattel also contends that the carve-outs fail to provide notice of

6   what is or is not being withheld.  Mattel also contends that MGA's objections based upon its

7   confidentiality concerns or the privacy rights of third parties are unwarranted in light of the

8   protective order in place.  In addition, Mattel contends that MGA's objection to producing

9   documents relating to activities or conduct in foreign countries is wholly improper because those

10   documents may contain information relevant to Mattel's claims.

11       Second, Mattel seeks documents relating to the origins of Bratz, regardless of whether

12   such documents relate to the "first generation" Bratz dolls.  Mattel argues that whether the work

13   ultimately resulted in Bratz dolls that were released at a particular time does not matter for

14   discovery purposes.  Mattel contends that the works created by Bryant during his Mattel

15   employment are highly relevant because Mattel owns them, regardless of whether they resulted in

16   a Bratz doll released at a particular time.[1]

17       Mattel next contends that MGA is improperly withholding documents about designs

18   Bryant created on Bratz dolls that were released after June 2001, even though such designs may

19   be derivative of work he did when employed by Mattel.  Mattel contends that it is entitled to

20   explore whether such works and the profits from Bratz dolls other than the "first generation"

21   Bratz dolls were derived from works owned by Mattel both for purposes of establishing liability

22   and damages.  Furthermore, Mattel asserts that the "first generation" limitation on discovery is

23   improper in light of Bryant's continuing duty not to use Mattel's confidential and proprietary

24   information as well as MGA's unfair competition claims.

25

26       [1] Mattel also reiterates many of the arguments it made previously in connection with its earlier filed motion to compel Bryant to produce documents.

27

28   Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)                                3

EXHIBIT 14 PAGE 239
EXHIBIT 18 PAGE 366

1    Mattel also asserts that MGA is improperly withholding documents relating to products,

2    services and matters other than those relating to "dolls." According to Mattel, it has evidence that

3    Bryant conceived of marketing and advertising ideas for the Bratz line while he was employed by

4    Mattel. Mattel contends that any such ideas or contributions may belong to it pursuant to the

5    Inventions Agreement.

6    Third, Mattel seeks documents relating to all of MGA's payments to Bryant, and not just

7    payments for the "first generation" Bratz dolls. Mattel asserts that such information is relevant

8    because (1) Mattel seeks all benefits Bryant received as a result of violating his duties to Mattel;

9    (2) under the Copyright Act, Mattel is entitled to all profits from infringement as well as actual

10    damages; and (3) payments may show when and what trade secret information Bryant and other

11    defendants allegedly misappropriated from Mattel.

12    Fourth, Mattel seeks documents relating to MGA's agreements with Bryant. Mattel

13    contends that all agreements between Bryant and MGA are relevant, not just the original

14    September 18, 2000 agreement. In particular, Mattel contends that it is entitled to discover all

15    documents relating to MGA and Bryant's alleged joint defense agreement because such

16    information would be relevant to demonstrate bias and lack of credibility.

17    Fifth, Mattel seeks production of all declarations, affidavits and other sworn written

18    statements from other cases that refer or relate to Bratz or Angel. Mattel contends that such

19    information may reveal relevant information about the date of creation of Bryant's Bratz

20    drawings.

21    In response, MGA denies withholding responsive documents and asserts that it has

22    produced volumes of documents responsive to Mattel's requests. In particular, MGA represents

23    that it has produced all responsive and relevant documents that it was able to locate in response to

24    request nos. 6, 7, 9, 26, 27, 32, 33, 34, 35, 36, 55, 69, and 70. Further, MGA asserts that even

25    before the motion was filed, it had agreed to address the vast majority of the issues raised in this

26    motion. In particular, MGA represents that it is diligently working to produce documents related

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                                           4

EXHIBIT 14 PAGE 240
EXHIBIT 18 PAGE 367

1   to Bratz other than "first generation" Bratz in response to request nos. 1, 2, 8, 10, 11, 43, 45, 46,

2   49, 50, 51, 53, 57, 59, 61, 63, 64, 66, 96, 97, 98, 99 and 100.  MGA represents that it informed

3   Mattel that it would produce documents pertaining to subsequent generations of Bratz dolls that

4   have been released on the market.  In addition, MGA represents that it has agreed to produce

5   documents relevant to Bratz or Prayer Angels that it received from Union Bank.  More

6   specifically, MGA represents that it agreed to review and produce documents provided to it by

7   Union Bank for the years 1999 – 2001 concerning payments that it could identify as being for

8   Bratz or Prayer Angels.  MGA also represents that it has agreed to produce royalty statements.

9   Therefore, MGA views the motion as unnecessary.

10         MGA next contends that Mattel's motion should be denied for the following additional

11  reasons.  First, MGA contends that Mattel is not entitled to MGA's product design documents for

12  unreleased products.  MGA asserts that its product design documents for its unreleased toy

13  concepts are among its most highly valuable trade secrets.  Furthermore, MGA contends that

14  designs and drawings for products currently under development, over six years after Bryant first

15  created his original Bratz drawings, have no relevance to any of Mattel's claims.  In the event that

16  documents relating to unreleased products are ordered produced, MGA requests a protective order

17  under Rule 26(c), Fed.R.Civ.P., that limits the dissemination of its documents more drastically

18  than the current protective order provides.  In the alternative, MGA requests that any order

19  compelling production of documents relating to unreleased products should essentially be stayed

20  until after MGA's products are publicly released.

21         Second, MGA contends that Mattel is not entitled to information concerning Bryant's

22  attorneys' fees because the information is privileged.  Furthermore, MGA contends that the

23  information is not relevant to demonstrate bias because "there is no dispute that Bryant's interests

24

25

26

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                                                      5

EXHIBIT 14 PAGE 241

EXHIBIT 18 PAGE 368

1  in this case are aligned with those of MGA, and that Bryant is 'biased' in that sense." MGA's

2  Opposition at 24:9-12.[2]

3      Third, MGA asserts that Mattel is not entitled to review all non-public witness statements

4  and litigation documents concerning Bratz for a variety of reasons, including because Mattel has

5  refused to produce similar types of documents.  More significantly, MGA contends that Mattel's

6  requests for non-public witness statements are "a blatant attempt to avoid the discovery

7  limitations imposed by both the Federal Rules of Civil Procedure and those additional limitations

8  imposed by this Court." MGA's Opposition at 25:6-7.  MGA explains its position as follows.

9  MGA is involved in litigation against a number of counterfeiters and infringers in Asia.  In 2003,

10  Mattel allegedly began feeding documents concerning "Toon Teens" to those defendants in an

11  attempt to prove that Bryant created Bratz while working at Mattel, even though Mattel

12  abandoned its claims based upon "Toon Teens" in this court.  Thereafter, those defendants took

13  the position that MGA did not own, and therefore could not enforce, the rights to Bratz.  MGA

14  was thus forced to litigate the issue of ownership.  MGA contends that "[i]n effect, by prompting

15  foreign counterfeiters to espouse a theory that Mattel now admits has no merit, Mattel has created

16  a situation in which MGA has been forced to give testimony and provide evidence related to

17  issues in this case that Mattel now seeks to obtain wholesale." MGA's Opposition at 25:5-24.

18      Fourth, MGA contends that Mattel is not entitled to documents concerning a family

19  dispute between MGA's chief executive officer and his brother because such documents are in no

20  way relevant to this lawsuit.  MGA explains that the brothers were involved in an arbitration

21  proceeding relating to MGA's CEO's purchase of his brother's interest in MGA.  Moreover,

22  MGA contends that the brothers were bound by a protective order prohibiting the use of any

23  documents or testimony for any purpose other than the arbitration.

24

25  _____

26      [2]  Nevertheless, MGA represents that it has produced the only non-privileged document responsive to the request.

27

28  Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)                                                                                6

EXHIBIT 14 PAGE 242
EXHIBIT 18 PAGE 369

1    Fifth, MGA contends that Mattel is not entitled to its chief executive officer's personnel

2    files because they contain confidential information and are not relevant to the lawsuit. Sixth,

3    MGA contends that Mattel is not entitled to obtain documents from MGA that belong to, and are

4    in the possession, custody and control of, its indirect foreign subsidiary, MGA HK Ltd. Lastly,

5    MGA objects to producing documents relating to any testing performed to determine the date that

6    Bratz documents were created. MGA contends that such discovery is premature and should not

7    proceed until experts are designated.

8        B. Interrogatories

9    On April 28, 2005, Mattel served its Second Set of Interrogatories. On May 20, 2005,

10   however, the district court stayed the action. On May 17, 2006, the district court lifted the stay.

11   On May 30, 2006, MGA responded to the interrogatories.

12       Mattel contends that MGA's responses to the interrogatories were untimely. Further,

13   Mattel contends that the interrogatory responses to numbers five through eleven are deficient

14   because they lack substantive information and consist almost entirely of objections. MGA

15   responds that the motion is moot because it is prepared to provide supplemental responses to its

16   interrogatories. MGA does not otherwise assert any additional grounds for opposing Mattel's

17   motion to compel responses to interrogatories.

18                        III. DISCUSSION

19       A. Rule 26 of the Federal Rules of Civil Procedure

20   Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain

21   discovery regarding any matter, not privileged, that is relevant to the claim or defense of any

22   party." Fed.R.Civ.P. 26(b)(1). "Relevant information need not be admissible at trial if the

23   discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id.

24   Discovery shall, however, be limited by the court if it determines that: "(i) the discovery sought is

25   unreasonably cumulative or duplicative, or is obtainable from some other source that is more

26   convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample

27

28
Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                    7

EXHIBIT 14 PAGE 243
EXHIBIT 18 PAGE 370

1   opportunity by discovery in the action to obtain the information sought; or (iii) the burden or

2   expense of the proposed discovery outweighs its likely benefit, taking into account the needs of

3   the case, the amount in controversy, the parties' resources, the importance of the issues at stake in

4   the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P.

5   26(b)(2).

6       B.  Document Requests

7          1.  Requests re Origins of Bratz and Bryant's Work for MGA (Nos. 6, 26, 27, 32, 33,

8            34, 35, 51, 53, 55, 64, 69, 96, 97, 98, 99, 100

9       The requests above seek discoverable information regarding the origins of Bratz and

10  Bryant's work for MGA.  MGA represents that it has produced all responsive documents in

11  response to request nos. 6, 26, 27, 32, 33, 34, 35, 55,and 69 (MGA's Opposition at 13:4-5), and is

12  "diligently working to produce documents in response to" request nos. 51, 53, 64, 96, 97, 98, 99,

13  and 100, including documents related to Bratz other than "first generation" (MGA's Opposition at

14  14:1-4 and note 39).  MGA does, however, object to producing design documents for unreleased

15  products and documents from MGA Hong Kong.

16      As a threshold matter, MGA's responses are inadequate to the extent MGA has restricted

17  its production to "relevant and responsive non-objectionable documents" or documents

18  "sufficient" to show when events relating to Bratz occurred.  These restrictions suggest that MGA

19  might be excluding documents that are responsive to the request based upon its unilateral

20  determination of what is "relevant" or "sufficient."  Mattel shall provide the responses to

21  document requests ordered herein without these restrictions.

22                Design Documents for Unreleased Products

23      MGA's design documents for unreleased products are relevant to Mattel's claims and

24  defenses and must be produced.  See Order Modifying Protective Order.  On April 23, 2007, the

25  parties submitted a stipulation to modify the existing protective order to limit the disclosure of

26  design documents for unreleased products that constitute trade secret information.  See Stipulation

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)
                                                            8

EXHIBIT 14 PAGE 244

EXHIBIT 18 PAGE 371

1  to Modify Protective Order; And Proposed Order Thereon ("stipulation").  The parties' stipulation

2  has been approved and entered as an order of the court.  MGA is ordered to produce design

3  documents for unreleased products that are responsive to Mattel's document requests in

4  accordance with the terms of the stipulation and order.

5  <u>Documents from MGA Hong Kong</u>

6      Documents relating to activities or conduct in foreign countries are relevant and

7  discoverable because Mattel has evidence indicating that MGA Hong Kong was involved with

8  Bratz.  Nevertheless, MGA objects to producing documents from Hong Kong unless Mattel

9  provides reciprocal discovery from its subsidiaries.

10      Whether MGA is entitled to discovery from Mattel's subsidiaries has not been briefed in

11  the context of this motion, and therefore is not addressed herein.  MGA is ordered to produce

12  documents from MGA Hong Kong.

13      Mattel's motion is granted with respect to request nos. 6, 26, 27, 32, 33, 34, 35, 51, 53, 55,

14  64, 69, 96, 97, 98, 99, 100.

15      2. <u>Additional Requests re Origins of Bratz (Nos. 7, 8, 9, 10, 11, 12, 13, 36, 46, 57, 59,</u>

16      <u>61, 63, 66, 67, 70, 88, 90, 91</u>

17      Mattel contends that MGA is improperly limiting its document production to the "first

18  generation" Bratz dolls.  MGA represents, however, that it has agreed to produce subsequent

19  generations of Bratz products (MGA's Opposition at 9:20-25, 13:6-14:1), except design

20  documents for yet unreleased products.

21      As stated previously, design documents for yet unreleased products are relevant and

22  discoverable.  <u>See</u> Order Modifying Protective Order.  Accordingly, MGA is ordered to produce

23  all non-privileged documents that are responsive to request nos. 7, 8, 9, 10, 11, 12, 13, 36, 46, 57,

24  59, 61, 63, 66, 67, 70, 88, 90, and 91.

25      //

26      //

27

28  Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)                                                      9

EXHIBIT 14 PAGE 245
EXHIBIT 18 PAGE 372

1          3. MGA's Payments to Bryant (Nos. 43, 45)

2          MGA represents that it has already agreed to produce documents related to Bratz, without

3    limiting its production to "first generation" Bratz.  MGA's motion at 13:7-14:3.  Nevertheless,

4    Mattel is entitled to an order compelling production of such documents by a date certain.  Mattel's

5    motion is granted with respect to request nos. 43 and 45.

6          4. MGA's Agreements with Bryant (Nos. 1, 2, 49, 50)

7          MGA represents that it has already agreed to produce non-privileged documents

8    responsive to request nos. 1, 2, 49, and 50, even though it believes that such documents are not

9    relevant (MGA's motion at 13:7-14:3).  These requests seek documents relating to fee or

10   indemnity agreements between MGA and Bryant.

11         Fee or indemnity agreements are relevant to demonstrate bias and lack of credibility.

12   Accordingly, Mattel's motion is granted with respect to request nos. 1, 2, 49, and 50.  Any

13   responsive documents withheld on the basis of a privilege must be properly identified in a

14   privilege log.

15         5. Declarations, Affidavits & Other Sworn Written Statements (Nos. 37, 38, 39, 40,

16         41.

17         In request nos. 37, 38, 390, 40, and 41, Mattel seeks production of declarations, affidavits,

18   and other sworn written statements from cases that refer or relate to Bratz or Angel.  Mattel

19   anticipates that these documents could provide evidence relating to the conception date for Bratz.

20         Request nos. 37, 38, 39, 40, and 41 seek relevant information regarding the conception

21   date for Bratz.  MGA admits in its opposition brief that this issue was litigated in its suits against

22   alleged counterfeiters and infringers.[3]  The issue also appears to have been raised in the

23   arbitration proceedings between MGA's chief executive officer, Isaac Larian, and his brother

24   Farhad Larian.  In those proceedings, Farhad Larian alleged that Isaac Larian concealed from him

25   _____

26         [3] Although MGA questions the propriety of Mattel providing assistance to the alleged counterfeiters and
     infringers in raising ownership of Bratz as a defense against MGA's claims, MGA has not cited to any legal authority
     that prohibits Mattel's conduct.

27

28   Bryant v. Mattel, Inc.,                                                                            10
     CV-04-09049 SGL (RNBx)

1   that MGA was developing Bratz by early 2000. Nevertheless, MGA objects to producing

2   documents from the Larians' arbitration on the grounds that the arbitration was governed by a

3   protective order that prohibits the use of any documents or testimony for any purpose other than

4   the arbitration. MGA, however, has not provided any evidence of the protective order.

5   Accordingly, Mattel's motion to compel is granted as to request nos. 37, 38, 39, 40 and 41.[4]

6        6. Documents Regarding Date-Testing (Request No. 92)

7        Mattel's request no. 92 seeks documents that refer or relate to "any testing of or sampling

8   from any documents that refer or relate to Bratz or Bryant, including without limitation any such

9   testing or sampling in connection with ink, paper or chemical analysis to date any such documents

10   and including without limitation all results and reports relating thereto." MGA contends that the

11   request is premature, and should proceed in the course of expert discovery.

12        The request calls for relevant discovery and there is no basis for delaying production of

13   responsive documents, other than expert reports. The timing of expert reports is governed by

14   Rule 26(a)(2)(C), Fed.R.Civ.P. Accordingly, Mattel's motion is granted as to request no. 92.

15       C. Interrogatories

16        Mattel contends that MGA's responses to interrogatories were untimely, and therefore

17   MGA has waived its objections to the interrogatories. Pursuant to Rule 33(b)(3), Fed.R.Civ.P.,

18   responses to interrogatories are due thirty days after service. In this case, Mattel served its

19   interrogatories on April 28, 2005, and responses were initially due May 31, 2005. The district

20   court, however, issued a stay on May 20, 2005, twenty-two days after the interrogatories were

21   served. The district court lifted the stay on May 17, 2006.

22

23

24

25

26     [4] In its discussion of the arbitration proceedings, MGA raises an objection to producing Isaac Larian's personnel file based upon privacy grounds. The personnel file may have documents relevant to Bratz, and therefore

27   should be produced. The protective order is sufficient to alleviate Mr. Isaac Larian's privacy concerns.

28   Bryant v. Mattel, Inc., CV-04-09049 SGL (RNBx)

                                                 11

EXHIBIT 14 PAGE 247

EXHIBIT 18 PAGE 374

1    Neither party has cited to any caselaw governing the calculation of the 30-day period
2    when there is an intervening stay in discovery. In the absence of any caselaw, MGA's responses
3    will be treated as timely in order to preserve any valid objections MGA may have asserted.
4    Interrogatory No. 5 seeks the identity of each and every person who was involved in the
5    conception, origin, creation, design, development, sculpting, engineering, reduction to practice,
6    tooling or painting of, or who otherwise produced or contributed to any embodiment of Bratz
7    before December 31, 2001, including a description of each person's role and the start and end
8    dates of each person's involvement. In response, MGA asserted numerous objections, but did
9    provide the names of five individuals.
10   The interrogatory clearly seeks information relevant to the claims at issue. MGA's
11   objections are without merit. The interrogatory is not vague, ambiguous, compound or overbroad.
12   Nor has MGA carried its burden of establishing that the interrogatory is unduly burdensome, calls
13   for confidential, proprietary or commercially sensitive information, or seeks information
14   protected by the attorney-client privilege. Furthermore, MGA's response is incomplete insofar as
15   it fails to provide the description of each person's role and the start and end dates of each person's
16   involvement. Accordingly, MGA is ordered to provide a complete response to Interrogatory No.
17   5 and identify documents in compliance with Rule 33(d), Fed.R.Civ.P.
18   Interrogatory No. 6 seeks the same information as Interrogatory No. 5 with respect to any
19   embodiment of Angel. MGA is ordered to provide a complete response to Interrogatory No. 6 for
20   the reasons previously discussed in connection with Interrogatory No. 5.
21   Interrogatory No. 7 asks MGA to identify each and every embodiment of Bratz prior to
22   December 31, 2001. In response, MGA asserted numerous objections and did not provide any
23   substantive information.
24   MGA's objections are without merit. The interrogatory clearly seeks information relevant
25   to establishing when Bryant first conceived Bratz. The interrogatory is not vague, ambiguous,
26   compound or overbroad. Nor has MGA carried its burden of establishing that the interrogatory is
27
28
Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                                    12

EXHIBIT 14 PAGE 248

EXHIBIT 18 PAGE 375

1   unduly burdensome, calls for confidential, proprietary or commercially sensitive information, or

2   seeks information protected by the attorney-client privilege.  Accordingly, MG is ordered to

3   provide a complete response to Interrogatory No. 7.

4       Interrogatory No. 8 asks MGA to identify each and every embodiment of Angel.  MGA is

5   ordered to provide a complete response to Interrogatory No. 8 for the reasons previously

6   discussed in connection with Interrogatory No. 7.

7       Interrogatory No. 9 requires MGA to identify each and every sworn statement that refers

8   or relates to the conception, origin, creation, design, development, sculpting, engineering, tooling

9   or painting of Bratz.  In response, MGA asserted numerous objections and did not provide any

10  substantive information.

11      The interrogatory seeks information relevant to establishing when Bryant first conceived

12  Bratz.  Furthermore, MGA's boiler-plate objections are unsubstantiated.  Accordingly, MGA is

13  ordered to provide a complete response to Interrogatory No. 9.

14      Interrogatory No. 10 requires MGA to identify each and every instance in which Bratz

15  was shown, displayed, or exhibited prior to June 1, 2001, including by stating the date(s) on

16  which each such instance occurred, the location of each show or exhibit, and the identity of

17  persons with knowledge of the shows or exhibits.  In response, MGA asserted numerous

18  objections and provided the following information:  Hong Kong Toy Fair in Hong Kong in or

19  about January 2001 and New York Toy Fair, New York, in or about February 2001.

20      Once again, MGA's boiler-plate objections are unsubstantiated.  The information is

21  potentially relevant to establish when Bryant conceived Bratz.  Further, the response is

22  incomplete insofar as it fails to identify any persons with knowledge.  Therefore, MGA is ordered

23  to provide a complete response to Interrogatory No. 10.

24      Interrogatory No. 11 requires MGA to state the "number for each and every telephone,

25  including without limitation each office, home and cell phone number, in the name of, for the

26  benefit of or for the account of Isaac Larian and any other telephone that Isaac Larian used from

27

28  Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)                             13

EXHIBIT 14 PAGE 249

EXHIBIT 18 PAGE 376

1    January 1, 1998 through the present, and IDENTIFY each and every carrier (including without

2    limitation any long-distance carrier) for each such number.  In response, MGA asserted numerous

3    boiler-plate objections.

4         Once again, MGA has failed to substantiate any of its objections with supporting

5    declarations or legal authorities.  Accordingly, all objections are overruled and MGA is ordered to

6    provide a full response to Interrogatory No. 11.

7                                IV. CONCLUSION

8         For the reasons set forth above, Mattel's motion to compel production of documents is

9    granted.  MGA shall produce all non-privileged documents that are responsive to the requests

10   identified in this Order.  Further, MGA shall produce all documents in un-redacted form, except

11   for redactions that are justified by the attorney-client privilege or work product doctrine.  Mattel's

12   motion to compel interrogatory answers is also granted.  MGA shall produce documents and

13   provide responses to interrogatories consistent with this Order, and produce a privilege log in

14   compliance with Rule 26(b)(5), Fed.R.Civ.P., no later than May 31, 2007.  Mattel's request for

15   sanctions is denied.

16        Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

17   Master, Mattel shall file this Order with the Clerk of Court forthwith.

18

19

20

21   Dated: May 15, 2007

22                                HON. EDWARD A. INFANTE (Ret.)
                                  Discovery Master

23

24

25

26

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                                          14

EXHIBIT 14 PAGE 250

EXHIBIT 18 PAGE 377

## PROOF OF SERVICE BY E-MAIL

I, Anthony Sales, not a party to the within action, hereby declare that on May 15, 2007, I served the attached ORDER GRANTING MATTEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND INTERROGATORY RESPONSES BY MGA in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| Robert Millman Esq. | Littler Mendelson | rlmillman@littler.com |
| Douglas Wickham Esq. | Littler Mendelson | dwickham@littler.com |
| Keith Jacoby Esq. | Littler Mendelson | kjacoby@littler.com |
| Dominic Messiha Esq | Littler Mendelson | dmessiha@littler.com |
| Diba Rastegar Esq. | Littler Mendelson | drastegar@littler.com |
| Michelle Park Esq. | Littler Mendelson | mpark@littler.com |
| Alaya B. Meyers, Esq. | Littler Mendelson | ameyers@littler.com |
| Brady Mitchell, Esq. | Littler Mendelson | bmitchell@littler.com |
| Carol Miller, Esq. | Littler Mendelson | cmiller@littler.com |
| Ryan P. Eskin, Esq. | Littler Mendelson | reskin@littler.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | jbq@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Morris Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgetmorris@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on May 15, 2007, at San Francisco, California.

Anthony Sales

EXHIBIT 14 PAGE 251
EXHIBIT 18 PAGE 378

# EXHIBIT 19

# TO DECLARATION OF

# ANDREW C. SPITSER

# EXHIBIT 19

# TO DECLARATION OF

# ANDREW C. SPITSER

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 090378)
2    (johnquinn@quinnemanuel.com)
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
6  Facsimile: (213) 443-3100

7  Attorneys for Mattel, Inc.

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                   EASTERN DIVISION

| | |
|---|---|
| 11 CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| 12     Plaintiff, | Consolidated with |
| 13     vs. | Case No. CV 04-09059 Case No. CV 05-02727 |
| 14 MATTEL, INC., a Delaware corporation, | **DISCOVERY MATTER** |
| 15     Defendant. | **[To Be Heard By Discovery Master Robert O'Brien]** |
| 16 | |
| 17 AND CONSOLIDATED ACTIONS | MATTEL, INC.'S NOTICE OF MOTION AND MOTION FOR |
| 18 | PROTECTIVE ORDER REGARDING MGA'S FIRST SET OF PHASE 2 INTERROGATORIES; AND |
| 19 | MEMORANDUM OF POINTS AND AUTHORITIES |
| 20 | |
| 21 | [Declarations of Marshall M. Searcy and Bridget A. Hauler filed concurrently herewith] |
| 22 | |
| 23 | Date:  TBD Time:  TBD |
| 24 | Place:  Arent Fox LLP 555 West Fifth St. |
| 25 | 48th Floor Los Angeles, CA 90013 |
| 26 | |
| 27 | Discovery Cut-off: December 11, 2009 Pre-trial Conference: March 1, 2010 Trial Date: March 23, 2010 |
| 28 | |

07975/2986195.4

MATTEL, INC.'S MOTION FOR PROTECTIVE ORDER

EXHIBIT 19 PAGE 379

1   TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2          PLEASE TAKE NOTICE that, at a hearing before Discovery Master

3   Robert C. O'Brien that will occur on a date and at a time to be determined by the

4   Discovery Master, plaintiff Mattel, Inc. ("Mattel") will, and hereby does, move for a

5   protective order (1) finding that MGA Entertainment, Inc., Isaac Larian, MGAE de

6   Mexico, S.A. de C.V. and MGA Entertainment (HK) Ltd. ("the MGA Parties") have

7   exceeded their allotted interrogatories; and (2) granting Mattel relief from answering

8   MGA's First Set of Phase 2 Interrogatories and Request Nos. 69, 70, 71, 72, 73, 74,

9   75, 76, 80, 82, 84, 85, 90, 93, 98, 107 and 108 of MGA's Second Set of Phase 2

10  Requests for Production.

11         This Motion is made pursuant to <u>Federal Rule of Civil Procedure</u> 26(c)

12  and the Order appointing the Discovery Master on the grounds that the MGA Parties

13  have served more than the 75 Interrogatories they were allotted by the District

14  Court's Orders; the MGA Parties have refused to withdraw interrogatories so as to

15  comply with the District Court's Orders; and the Requests for Production are

16  inextricably intertwined with the Interrogatories.

17         This Motion is based on this Notice of Motion and Motion, the

18  accompanying Memorandum of Points and Authorities, the Declarations of Marshall

19  M. Searcy and Bridget A. Hauler filed concurrently herewith, the records and files

20  of this Court, and all other matters of which the Court may take judicial notice.

21

22

23

24

25

26

27

28

i

MATTEL, INC.'S MOTION FOR PROTECTIVE ORDER

EXHIBIT 19 PAGE 380

1

<u>Conference of Counsel</u>

2

The parties met and conferred concerning the issues regarding this

3

motion on June 19, 2009 and dates thereafter.

4

5

DATED:  June 29, 2009

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

6

7

By /s/ Marshall M. Searcy

8

Marshall M. Searcy
Attorneys for Mattel, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-ii-

MATTEL, INC.'S MOTION FOR PROTECTIVE ORDER

EXHIBIT 19 PAGE 381

1

# TABLE OF CONTENTS

2

**Page**

3

4  Preliminary Statement ................................................................................ 1

5  Statement of Facts ..................................................................................... 2

6  Argument ................................................................................................... 6

7  I.     BECAUSE DEFENDANTS HAVE FAR EXCEEDED THEIR
ALLOTTED INTERROGATORIES IN THIS CASE, A
8         PROTECTIVE ORDER IS APPROPRIATE ......................................... 6

9      A.    Discrete Subparts Of An Interrogatory Count As Separate
Interrogatories ....................................................................... 6

10

11      B.    Defendants' Interrogatories Are Compound ........................... 9

    C.    MGA Has Exceeded Its Allotted Interrogatories ................. 13

12

13  II.    MATTEL WILL BE UNDULY BURDENED IF IT IS REQUIRED
TO ANSWER THE INTERROGATORIES AND REQUESTS IN
QUESTION ..................................................................................... 15

14

15  Conclusion ............................................................................................. 15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT 19 PAGE 382

1

## TABLE OF AUTHORITIES

2                                                                                     **Page**

3                                        **Cases**

4    Hamilton v. State Farm Fire & Cas. Co.,
5        270 F.3d 778 (9th Cir. 2001) ............................................................ 9

6    Helfand v. Gerson,
         105 F.3d 530 (9th Cir. 1997) ............................................................ 9
7
8    Pegram v. Herdrich,
         530 U.S. 211 (2000) ......................................................................... 9

9

                                       **Statutes**

10   Fed. R. Civ. P. 26(c) ........................................................................ 6
11
     Fed. R. Civ. P. 33 ............................................................................ 4
12
13   Fed. R. Civ. P. 33(a) ........................................................................ 6

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-ii-

EXHIBIT 19 PAGE 383

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

Mattel respectfully seeks an order protecting it from having to answer the MGA Parties' excessive and improper interrogatories.  Under legal rulings obtained by the MGA Parties and pursuant to legal principles urged by them, interrogatories that contain discrete subparts, including interrogatories that address separate and distinct legal theories and/or discrete factual matters, count as multiple interrogatories even if numbered as one.  Defendants have far exceeded the number of interrogatories they were allotted under these principles.  Accordingly, the Discovery Master should order that Mattel need not respond to MGA's "First" Set of Phase 2 Interrogatories (as well as related requests for production) and specifying the number of interrogatories the MGA Parties still have available, if any.  With the benefit of the Discovery Master's guidance, the MGA Parties can then serve a revised set of interrogatories that does not exceed the limits set by the Court, assuming they may serve any additional interrogatories.[1]

Prior to the Phase 1 trial, the Court ordered that Defendants may serve up to 50 interrogatories on Mattel.  Defendants served 51 numbered interrogatories

---

[1] There is precedent for this procedure in this case, established by MGA itself.  In July 2007, MGA moved for a protective order that it need not answer Mattel's interrogatories, claiming that the 46 numbered interrogatories that Mattel had served as of that date really were, "conservatively, 227 separate interrogatories."  See Joint Motion for Protective Order Regarding Mattel's Interrogatories, dated July 10, 2007, at 3:17-19, 5:19-21, attached as Exhibit 30 to the Declaration of Marshall M. Searcy III ("Searcy Dec."), dated June 29, 2009 and filed concurrently herewith.  Although the Discovery Master rejected nearly all of MGA's specific counting arguments, he found that Mattel's pending set of interrogatories did put Mattel slightly over the then-applicable limit of 50, and required Mattel to serve an amended set of interrogatories that did not exceed that limit.  See Order Granting Joint Motion for Protective Order Regarding Mattel's Interrogatories; Denying Mattel's Motion to Compel Interrogatory Responses ("Sep. 2007 Order"), dated September 5, 2007, Searcy Dec., Exh. 29.

MATTEL, INC.'S MOTION FOR PROTECTIVE ORDER

07975/2986195.4

EXHIBIT 19 PAGE 384

1  that, because many were compound, far exceeded the limits set by the Court.

2  Accordingly, Mattel objected to Defendants' excessive interrogatories, but offered

3  to respond to 7 of the 21 numbered interrogatories then pending in MGA's Second

4  Set of Interrogatories and Bryant's Second Set of Interrogatories (Mattel had already

5  responded to several prior sets served by MGA and Bryant). Rather than litigate the

6  counting issue (and obviously recognizing what the outcome of such a fight would

7  be), MGA agreed that Mattel need only answer those seven interrogatories.

8  Following the Phase 1 trial, the Court gave each side another 25

9  interrogatories.    MGA then demanded that Mattel answer many of the

10  interrogatories from its Second Set that had gone unanswered prior to the Phase 1

11  trial. Because Defendants had been allotted 25 more interrogatories, Mattel agreed.

12  Now, however, MGA has served an additional set of interrogatories that once again

13  clearly exceeds the limits imposed by the Court. Because MGA may not serve more

14  interrogatories than it has been allotted, the Discovery Master should issue a

15  protective order.

16  **Statement of Facts**

17  <u>Defendants Exceed the Limits on Interrogatories Prior to the Phase 1</u>

18  <u>Trial.</u> In early 2007, the Court set the total number of interrogatories "per side" at

19  50 interrogatories for the consolidated case <u>Carter Bryant v. Mattel, Inc.</u>, CV 04-

20  9049 SGL (RNBx).[2] Although trial was bifurcated between Phase 1 and Phase 2,

21  discovery was not bifurcated.[3] Thus, the parties served discovery relating to both

22  Phase 1 and Phase 2 prior to the Phase 1 discovery cut-off of January 28, 2008.

23

24

25

26  [2]  <u>See</u> Minute Order of February 27, 2007, Searcy Dec., Exh. 1.

27  [3]  <u>See</u> Hearing Transcript, dated June 19, 2007, at 19:22-23 ("And the record as it exists has no bifurcated discovery. End of story."), Searcy Dec., Exh. 2.

28

-2-

MATTEL, INC.'S MOTION FOR PROTECTIVE ORDER

EXHIBIT 19 PAGE 385

1    Carter Bryant served a total of 20 numbered interrogatories on Mattel (in two sets),[4]

2    and the MGA Parties served a total of 31 numbered interrogatories on Mattel (in

3    three sets).[5]   Many of the 51 interrogatories served by Bryant and the MGA Parties

4    consisted of compound interrogatories and, thus, the 51 numbered interrogatories

5    were, in actuality, far in excess of that number.[6]

6                    The Parties Meet and Confer on Defendants' Excessive Interrogatories.

7    On January 3, 2008, Mattel requested that the parties meet and confer because

8    Defendants had exceeded the number of interrogatories they were allotted.[7]

9    Following that conference, Mattel offered to answer seven numbered

10   interrogatories, to be identified by MGA, in addition to the 25 numbered

11   interrogatories that Mattel had already answered.[8]   MGA identified Interrogatory

12   No. 20 from Bryant's Second Set of Interrogatories and Interrogatory Nos. 12, 18,

13   19, 29, 30 and 31 from MGA's Second Set of Interrogatories.[9]   In March 2008,

14   Mattel served supplemental responses to those interrogatories, as promised.[10]

15   _____

16       [4]   See Defendant's First Set of Interrogatories Propounded on Plaintiff, dated
17   June 13, 2004; Bryant's Second Set of Interrogatories to Mattel, Inc., dated
     December 26, 2007, Searcy Dec., Exhs. 3-4.

18       [5]   See MGA's First Set of Interrogatories to Mattel, dated February 4, 2005;
19   MGA's Second Set of Interrogatories to Mattel, dated December 4, 2007; MGA's
     Amended Supplemental Interrogatory to Mattel, Inc. Re Its Affirmative Defenses,
20   dated December 6, 2007, Searcy Dec., Exhs. 5-7.

21       [6]   See January 3, 2008 letter from B. Dylan Proctor to Michael H. Page and
     Thomas J. Nolan ("January 3 Proctor Letter"), Searcy Dec., Exh. 8.

22       [7]   Id.

23       [8]   See January 17, 2008 letter from B. Dylan Proctor to Robert J. Herrington
     ("January 17 Proctor Letter"), Searcy Dec., Exh. 9.   Mattel and the MGA Parties
24   each reserved the right to go to the Court for further relief.   Id.   However, no party
     moved on the outstanding interrogatories.

25       [9]   See Email from Robert Herrington to Dylan Proctor, copy to Matthew
26   Werdegar, dated January 17, 2008, Searcy Dec., Exh. 31.

27       [10]   See Mattel's Supplemental Response to Bryant's Second Set of
     Interrogatories, dated March 4, 2008, attached as Exhibit 5 to the Declaration of
28           (footnote continued)

1          The Court Grants Leave To Serve Additional Discovery.  In February
2    2009, following the Phase 1 trial, the Court ruled that each side would be allowed
3    additional discovery for Phase 2 of this litigation, consistent with the Federal Rules
4    of Civil Procedure and Local Rule 37.[11]  Fed. R. Civ. P. 33 states that "a party may
5    serve on any other party no more than 25 written interrogatories, including all
6    discrete subparts."    Thus, Defendants now were allowed an additional 25
7    interrogatories, for a total of 75.

8          Mattel Agrees To Respond To Additional MGA Interrogatories.  After
9    the Court provided the parties with additional interrogatories, MGA demanded, in
10   March 2009, that the parties meet and confer regarding MGA's Second Set of
11   Interrogatories, served in 2007, and demanded that Mattel supplement its responses
12   to Interrogatory Nos. 20, 21, 22, 23, 28 and 29 from that set.[12]  Among other
13   objections, Mattel had objected, in early 2008, that these interrogatories exceeded
14   Defendants' allotted limit and that certain of them were compound.[13]  Because the
15   interrogatories had exceeded the previously-applicable 50 interrogatory limit, Mattel
16   previously had served only objections to most of them (Interrogatory Nos. 20, 21,
17   22, 23 and 28).    However, because the Court gave each side additional
18   interrogatories, Mattel agreed upon MGA's requested to supplement its responses to
19   Interrogatory Nos. 20, 21, 22, 23, 28 and 29 of MGA's Second Set of

20   _____

21   Bridget A. Hauler ("Hauler Dec."), dated June 26, 2009 and filed concurrently
     herewith; Mattel's Supplemental Responses to MGA's Second Set of
22   Interrogatories, dated March 5, 2008; Hauler Dec., Exh. 2.
     [11]  See Hearing Transcript, dated February 11, 2009, at 102:12-21, Searcy Dec.,
23   Exh. 15.
     [12]  See March 25, 2009 letter from Carolyn H. Mankey to Jon D. Corey and
24   Michael T. Zeller ("March 25 Mankey Letter"), Searcy Dec., Exh. 16.
     [13]  See Mattel's Supp. Responses to MGA's Second Set of Interrogatories at
25   Response to Interrogatory No. 29, Hauler Dec., Exh. 2; see also Mattel's Responses
26   to MGA's Second Set of Interrogatories, dated January 3, 2008, at Responses to
     Interrogatory Nos. 20, 21, 22, 23 and 28, Searcy Dec., Exh. 13.
27
28

1   Interrogatories.[14]   Despite the parties' agreement, MGA then moved to compel

2   Mattel to supplement its responses to these interrogatories anyway; that motion is

3   currently pending before the Discovery Master.[15]

4       <u>MGA Serves Excessive Interrogatories.</u>   On April 14, 2009, MGA

5   served so-called "Phase 2" discovery, including the discovery that is the subject of

6   this motion -- MGA's First Set of Phase 2 Interrogatories and MGA's Second Set of

7   Phase 2 Requests for Production.[16]   Mattel served responses, objecting to the

8   interrogatories on (among other grounds) the basis that Defendants have again

9   exceeded the number of interrogatories they have been allotted.[17]

10       MGA requested that Mattel meet and confer regarding its responses to

11   this so-called Phase 2 discovery on May 21, 2009.[18]   The Court stayed discovery

12   that same day.[19]   The parties met and conferred regarding the discovery, including

13   the interrogatories and requests for production, once the stay was lifted.[20]   The

14   parties were unable to reach agreement regarding how MGA's interrogatories

15

16

17      [14]   <u>See</u> April 16, 2009 letter from Diane C. Hutnyan to Caroline H. Mankey ("April 16 Hutnyan Letter"), at 3, Searcy Dec., Exh. 17.

18      [15]   <u>See</u> Searcy Dec., ¶ 19.

19      [16]   <u>See</u> MGA's First Set of Phase 2 Interrogatories, MGA's Second Set of Phase 2 Requests for Production, Searcy Dec., Exhs. 18-19.

20      [17]   <u>See</u> Mattel's Responses to MGA's First Set of Phase 2 Interrogatories, dated

21   May 18, 2009; Mattel's Responses to MGA's First Set of Phase 2 Requests for Production, dated May 18, 2009, Searcy Dec., Exhs. 20-21.

22      [18]   <u>See</u> May 21, 2009 letter from Jean Pierre Nogues to Marshall M. Searcy ("May 21 Nogues Letter"), Searcy Dec., Exh. 22.

23      [19]   <u>See</u> Court's Order, dated May 21, 2009, Searcy Dec., Exh. 24.

24      [20]   <u>See</u> June 17, 2009 letter from Mr. Nogues to Mr. Searcy ("June 17 Nogues

25   Letter"); June 18 letter from Mr. Searcy to Mr. Nogues ("June 18 Searcy Letter"); June 22 letter from Mr. Searcy to Mr. Nogues ("June 22 Searcy Letter"); June 24

26   letter from Mr. Nogues to Mr. Searcy ("June 24 Nogues Letter"); and June 26 letter

27   from Mr. Searcy to Mr. Nogues ("June 26 Searcy Letter"); Searcy Dec., Exhs. 23, 25-28.

28

-5-

MATTEL, INC.'S MOTION FOR PROTECTIVE ORDER

EXHIBIT 19 PAGE 388

1  should be counted and the total number allowed, and MGA was unwilling to limit

2  its interrogatories in any way.[21]

3  **Argument**

4  **I.    BECAUSE DEFENDANTS HAVE FAR EXCEEDED THEIR**

5  **ALLOTTED INTERROGATORIES IN THIS CASE, A PROTECTIVE**

6  **ORDER IS APPROPRIATE**

7           Federal Rule of Civil Procedure 26(c) provides that "the court in which

8  the action is pending may make any order which justice requires to protect a party or

9  person from annoyance, embarrassment, oppression, or undue burden or expense,

10  including that certain matters not be inquired into, that the scope of the disclosure or

11  discovery be limited to certain matters, or that a trade secret or other confidential

12  research, development, or commercial information not be revealed or be revealed

13  only in a designated way." Fed. R. Civ. P. 26(c).  Defendants have served a total of

14  65 numbered interrogatories to date, many of which are compound; the actual

15  number of interrogatories served is far in excess of Defendants' allotted 75

16  interrogatories.[22]  Accordingly, Mattel is entitled to a protective order, comparable

17  to the one previously obtained by MGA, providing that MGA should serve an

18  amended set of interrogatories within the limits set by the Court to which Mattel

19  may respond.

20      **A.    Discrete Subparts Of An Interrogatory Count As Separate**

21      **Interrogatories**

22           Pursuant to Fed. R. Civ. P. 33(a), "discrete subparts" of an

23  interrogatory are to be counted as separate interrogatories for purposes of the limits

24  on the number of interrogatories a party may serve.

25

26  _____

27  [21]  June 26 Searcy Letter at 1, Searcy Dec., Exh. 28.

    [22]  See Defendants' Interrogatories, Searcy Dec., Exhs. 3-7, 18.

28

07975/2986195.4

-6-

MATTEL, INC.'S MOTION FOR PROTECTIVE ORDER

EXHIBIT 19 PAGE 389

1   The prior Discovery Master analyzed this rule of law in detail in 2007.

2 MGA had moved for a protective order in July of that year, urging that the 46

3 numbered interrogatories that Mattel had served as of that date actually counted as,

4 "conservatively, 227 separate interrogatories."[23] The Discovery Master rejected

5 virtually all of Defendants' specific arguments regarding how Mattel's particular

6 interrogatories should be counted, including their assertions that one interrogatory

7 asking the responding party to state facts, identify all persons with knowledge of

8 such facts, and identify all documents referring or relating to such facts was

9 compound.[24] However, the Discovery Master adopted Defendants' argument that

10 interrogatories that addressed "discrete issues" were compound.[25] The Discovery

11 Master ruled that a handful of Mattel's interrogatories addressed separate and

12 discrete legal theories and/or discrete factual matters, and found that Mattel's 46

13 numbered interrogatories actually totaled more than 60.[26]

14   The Discovery Master explained his holding with reference to the

15 specific interrogatories that had been served by Mattel.  Thus, the Discovery Master

16 ruled that the following interrogatory constituted four separate interrogatories

17 because it was "directed to four separate and discrete defense theories:"

18   State all facts that support YOUR contention, if YOU so

19   contend, that one or more of MATTEL'S claims against

20   YOU in THIS ACTION is barred, in whole or in part, by

21   the doctrines of unclean hands, estoppel, waiver or

22   consent, and IDENTIFY all PERSONS with knowledge of

23

24

25 [23] See Joint Motion at 3:17-19, 5:19-21, Searcy Dec., Exh. 30.

26 [24] See Sep. 2007 Order at 7:1-9, Searcy Dec., Exh. 29.

27 [25] Id. at 7:11-12, 9:4-8.

   [26] Id. at 7:10-9:10.

28

-7-

MATTEL, INC.'S MOTION FOR PROTECTIVE ORDER

EXHIBIT 19 PAGE 390

1    such facts and all DOCUMENTS that REFER OR
2    RELATE TO such facts.[27]

3    Similarly, the Discovery Master ruled that the following interrogatory consisted of
4    six discrete subparts -- three different legal contentions and two different factual
5    allegations – and thus equaled six interrogatories:

6    State all facts that support YOUR contention, if YOU so
7    contend, that YOU did not intentionally interfere with the
8    INVENTIONS AGREEMENT or any other agreement or
9    contract between MATTEL and BRYANT, or aid or abet
10   any breach of fiduciary duty or duty of loyalty owed by
11   BRYANT to MATTEL, when BRYANT purported to
12   TRANSFER and MGA purported to ACQUIRE rights to
13   BRATZ or when BRYANT performed work or services
14   with or for MGA while BRYANT was employed by
15   MATTEL, and IDENTIFY all PERSONS with knowledge
16   of such facts and all DOCUMENTS that REFER OR
17   RELATE TO such facts.[28]

18   Because Mattel had, under these standards, exceeded the 50
19   interrogatory limit, the Discovery Master granted Defendants' motion for protective
20   order and required Mattel to serve an amended set of interrogatories pursuant to his
21   ruling.[29]

22   The rule that interrogatories that address separate and discrete legal
23   theories and/or separate and discrete factual matters count as multiple interrogatories
24   applies now.  This has been the rule in this case since MGA successfully urged it

25   _____

26   [27]  Id. at 7:12-8:2.
     [28]  Id. at 8:3-15.
27   [29]  Id. at 7:10-9:2.

28

1  two years.  MGA obtained the benefits of the rule applied by the prior Discovery

2  Master, which it advocated; it cannot now distance itself from that rule.[30]

3      **B.**    **Defendants' Interrogatories Are Compound**

4          Applying the prior Discovery Master's ruling to the Interrogatories

5  served by Defendants, it is immediately apparent that many of the interrogatories are

6  compound.  To take some examples:

7        • **Bryant Interrogatory No. 6:**  "State all facts supporting YOUR

8          claim that YOU have been damaged by any act or omission of

9          Bryant."[31]

10         This Interrogatory, to which Mattel has responded, purports to require

11  Mattel to provide all facts supporting damages for each of its 10 discrete claims

12  against Bryant.

13

14

---

[30]  To allow MGA to now argue otherwise, after receiving the benefit of the prior ruling it demanded, would be inequitable and inconsistent with the principles of judicial estoppel.  "Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position."  Hamilton v. State Farm Fire & Cas. Co., 270 F.3d 778, 782 (9th Cir. 2001).  The doctrine is invoked "not only to prevent a party from gaining an advantage by taking inconsistent positions, but also because of 'general considerations of the orderly administration of justice and regard for the dignity of judicial proceedings,' and to 'protect against a litigant playing fast and loose with the courts.'"  Id. (quoting Russell v. Rolfs, 893 F.2d 1033, 1037 (9th Cir. 1990)).  Judicial estoppel can apply to inconsistent positions of law or fact.  See Helfand v. Gerson, 105 F.3d 530, 534-536 (9th Cir. 1997) ("The integrity of the judicial process is threatened when a litigant is permitted to gain an advantage by the manipulative assertion of inconsistent positions, factual or legal.")  Judicial estoppel can also apply within the continuing progress of a single action.  See Pegram v. Herdrich, 530 U.S. 211, 228 n. 8 (2000) ("Judicial estoppel generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.").

[31]  See Interrogatory No. 6 to Defendants First Set of Interrogatories, Searcy Dec., Exh. 3.

MATTEL, INC.'S MOTION FOR PROTECTIVE ORDER

07975/2986195.4

EXHIBIT 19 PAGE 392

1      • **MGA Interrogatory No. 1:** "State all facts, with particularity,
2        and IDENTIFY all DOCUMENTS that support YOUR
3        contention, if YOU so contend, that YOU have suffered harm as
4        a result of any act or omission of MGA."[32]

5      Similarly, this interrogatory, to which Mattel has responded, purports to
6  require Mattel to disclose all facts supporting damages for each of Mattel's 15
7  claims against MGA in Mattel's Complaint in Case No. 04-9049 and in Mattel's
8  Third Amended Answer in Case No. 05-2727 (namely, Mattel's claims for unjust
9  enrichment, copyright infringement, violation of RICO, conspiracy to violate RICO,
10  misappropriation of trade secrets, breach of contract, intentional interference with
11  contract, breach of fiduciary duty, aiding and abetting breach of fiduciary duty,
12  breach of duty of loyalty, aiding and abetting breach of duty of loyalty, conversion,
13  unfair competition, avoidance of intentional and constructive fraudulent transfers
14  under Uniform Fraudulent Transfers Act, and declaratory relief).  Each of these
15  claims has distinct elements that Mattel must prove.

16      In addition, many of these claims involve, within them, a variety of
17  factual allegations and sub-theories.  For instance, Mattel's misappropriation of
18  trade secret claims is based on individual thefts across multiple countries involving
19  at least eight different former Mattel employees.[33]  Thus, counting Interrogatory No.
20  1 as only 15 interrogatories truly is "conservative."  Mattel has supplemented its

21
22
23
24

25  [32]  MGA's First Set of Interrogatories at Interrogatory No. 1, Searcy Dec., Exh.
26  5.
27  [33]  See Mattel, Inc.'s [Public Redacted] Third Amended Answer, dated May 22,
      2009, at ¶¶ 28-98, 156-165, Docket No. 5597.
28

                                         MATTEL, INC.'S MOTION FOR PROTECTIVE ORDER

EXHIBIT 19 PAGE 393

1  response to this interrogatory multiple times; its most recent supplemental response

2  exceeds one hundred pages.[34]

3       • **Interrogatory No. 3:** "State, with particularity, the nature,

4       amount, cause and calculation of every item of YOUR alleged

5       damages, including, without limitation, general, actual and

6       statutory damages, restitution, disgorgement of unlawful profits,

7       lost profits, lost payments, lost revenues, lost monies, lost

8       royalties or license fees, reputational harm, lost relationships,

9       lost business opportunities, interest, attorneys' fees, costs,

10      expenses, and any other form of injury or damage or quantifiable

11      remedy that YOU seek to recover in this lawsuit."[35]

12         Interrogatory No. 3, to which Mattel has responded, is in actuality at

13 least ten interrogatories.  It purports to require Mattel to provide facts relating to at

14 least ten unique, enumerated damage theories -- actual; statutory; restitution;

15 disgorgement; lost profits; reputational harm; lost relationships/business; interest;

16 attorneys' fees; and costs/expenses.   Counting Interrogatory No. 3 as ten

17 interrogatories is also conservative in that this approach groups some of the different

18 damages theories and does not count separately each of the dozen plus unique

19 claims Mattel must apply when considering damages.

20      • **Interrogatory No. 4:** "State all facts, with particularity, and

21      IDENTIFY all DOCUMENTS that support YOUR contention, if

22

23

24

---

25 [34]  See Mattel's Second Supplemental Responses to MGA's First Set of Interrogatories at Second Supplemental Response To Interrogatory No. 1, Hauler

26 Dec., Exh. 1.

27 [35]  MGA's First Set of Interrogatories at Interrogatory No. 3, Searcy Dec., Exh. 5.

28

EXHIBIT 19 PAGE 394

1    YOU so contend, that YOU are entitled to exemplary damages,
2    attorneys' fees and costs."[36]

3    Interrogatory No. 4, to which Mattel responded, is in actuality at least
4    three interrogatories in that it requires Mattel to provide facts relating to at least
5    three wholly distinct items -- exemplary damages, attorneys' fees and costs.

6    • **Interrogatory No. 18:** "STATE THE COMPLETE FACTUAL
7        BASIS FOR YOUR CONTENTION that any of the fashions
8        and/or accessories for the BRATZ line of dolls sold by MGA
9        violate or infringe any of MATTEL'S intellectual property and/or
10       proprietary rights."[37]

11   Interrogatory No. 18, to which Mattel responded, is at least two
12   different interrogatories because it addresses two distinct fact patterns -- whether
13   any Bratz fashions violate or infringe any of Mattel's intellectual property and/or
14   proprietary rights and whether any Bratz accessories do so. Fashions are the
15   clothing that a fashion doll wears; accessories include items such as toy cars or toy
16   houses. They are discrete factual items that count as discrete subparts.

17   • **Interrogatory No. 28:** "Describe in detail the complete factual
18       basis for YOUR COUNTERCLAIMS including, without
19       limitation all facts, DOCUMENTS, and witnesses that REFER
20       OR RELATE TO YOUR COUNTERCLAIMS."[38]

21   • **Interrogatory No. 29:** "Describe in detail any estimate or
22       calculation of damage, loss, injury, or unjust enrichment, by
23       reason of any act or omission alleged in YOUR

---

[36]  MGA's First Set of Interrogatories at Interrogatory No. 4, Searcy Dec., Exh. 5.

[37]  MGA's Second Set of Interrogatories at Interrogatory No. 18, Searcy Dec., Exh. 6.

[38]  Id. at Interrogatory No. 28.

24
25
26
27
28

-12-

MATTEL, INC.'S MOTION FOR PROTECTIVE ORDER

EXHIBIT 19 PAGE 395

1    COUNTERCLAIMS, that YOU have made or that has been

2    made on YOUR behalf or at YOUR request, including all facts,

3    DOCUMENTS or witnesses RELATING TO each estimate or

4    calculation."[39]

5           Each of Interrogatory Nos. 28 and 29 is in actuality 14 interrogatories

6    because each requires Mattel to address 14 distinct legal theories -- its 14

7    counterclaims.  Counting each of these interrogatories as only 14 interrogatories is

8    again a conservative approach because, as noted with respect to Interrogatory No. 1,

9    within each of Mattel's counterclaims live separate legal theories and factual

10   allegations that arguably should also count as individual interrogatories under the

11   Discovery Master's analysis, promoted by MGA, in the September 2007 Order.  To

12   date, Mattel has substantively responded to Interrogatory No. 29, and plans to

13   substantively respond to Interrogatory No. 28 pursuant to MGA's recent demands.

14   **C.    MGA Has Exceeded Its Allotted Interrogatories**

15          Accordingly, based on the counting approach that MGA itself has

16   urged, the conclusion that MGA has exceeded its allotted interrogatories is

17   unavoidable.  Based on the Court's Scheduling Order and the February 11 hearing,

18   Defendants were allotted 75 Interrogatories total.  Counting only the interrogatories

19   Mattel has answered to date, Mattel has provided substantive answers to 32

20   numbered interrogatories, which are in actuality at least 80 interrogatories.[40]  In

21   _____

22   [39]  Id. at Interrogatory No. 29.

23   [40]  See Mattel's Responses and Supplemental Responses, Hauler Dec., Exhs. 1-
     5, Searcy Dec., Exhs. 10-13.  Mattel has answered 17 numbered interrogatories

24   served by Bryant, including No. 6, which counts as at least 10 separate
     interrogatories; thus, these 17 numbered interrogatories actually equal at least 26

25   interrogatories.  See Mattel's Responses and Supplemental Responses to Bryant's

26   First and Second sets of interrogatories, Hauler Dec., Exhs. 4 & 5, Searcy Dec.,
     Exhs. 10 & 11.  Mattel has answered 15 numbered interrogatories served by MGA,

27   including Nos. 1, 3, 4, 18 and 29, which count as 15, 10, 3, 2 and 14, respectively;

28       (footnote continued)

1   addition, Mattel has agreed to provide substantive answers to an additional five
2   numbered interrogatories served prior to the Phase 1 trial that Mattel previously had
3   refused to answer because they exceeded the Court's limitations; these five
4   interrogatories are equal to an additional 18 interrogatories.[41]  Thus, MGA is already
5   far in excess of its allotted 75 interrogatories, not including *any,* let alone all, of the
6   14 numbered interrogatories in its "First" Set of Phase 2 Interrogatories.

7           During the meet and confer process, the MGA Parties argued that the
8   Court gave Defendants an additional 25 interrogatories at the February 11 hearing,
9   regardless of the number Defendants had served previously.   Even if that were
10  correct, the MGA Parties are still in excess of the limit.   After that hearing, MGA
11  requested, and Mattel agreed, to supplement its responses to six interrogatories,
12  including five to which Mattel had previously served only objections.   These five
13  equal at least 18 actual interrogatories.[42]  Therefore, even under MGA's theory the
14  nominally 14 "Phase 2" interrogatories served by MGA exceed the 25
15  interrogatories MGA was allotted for Phase 2; MGA is now demanding answers to
16  at least 32 separate and distinct interrogatories that have never been answered
17  before.   At a minimum, the Discovery Master should compel the MGA Parties to

18

19  _____

20  thus these 15 numbered interrogatories actually constitute at least 54 actual
21  interrogatories.   See Mattel's Responses and Supplemental Responses to MGA's
    Sets of Interrogatories, Hauler Dec., Exhs. 1-3, Searcy Dec., Exhs. 12 & 13.

22  [41]  See April 16, 2009 letter, Searcy Dec., Exh. 17; see also MGA's Second Set
23  of Interrogatories at Interrogatory Nos. 20, 21, 22, 23, 28 and 29, Searcy Dec., Exh.
    6.  Mattel substantively answered Interrogatory No. 29 -- one of the compound
24  interrogatories -- prior to the Phase 1 trial.  However, Interrogatory No. 28 which is
25  one of the five numbered interrogatories that Mattel has agreed to answer since the
    discovery stay lifted in January, and which had not previously been answered,
26  constitutes 14 separate interrogatories, as discussed.  Therefore, those five numbered
27  interrogatories actually equal at least 18 interrogatories.
    [42]  See fn. 41.

28

                                    MATTEL, INC.'S MOTION FOR PROTECTIVE ORDER

EXHIBIT 19 PAGE 397

1  identify which seven, of the fourteen "Phase 2" interrogatories they have served,
2  they would like Mattel to respond to.

3  **II.    MATTEL WILL BE UNDULY BURDENED IF IT IS REQUIRED TO**
4         **ANSWER THE INTERROGATORIES AND REQUESTS IN**
5         **QUESTION**

6         Mattel already has served more than a thousand pages of responses to
7  MGA interrogatories served to date.[43]  These interrogatories seek expansive
8  information regarding Mattel's Phase 2 claims and damages theories.[44]  Mattel will
9  be unduly burdened if it has to answer additional interrogatories in excess of the
10  number allotted by the Court and the <u>Federal Rules</u>.  In addition, Mattel will be
11  unduly burdened if it is forced to respond to Requests for Production that are
12  inextricably intertwined with those Interrogatories, which is the case for all of the
13  Request for Production at issue in this motion – there is simply no way to comply
14  with them absent preexisting responses to the interrogatories now at issue since the
15  requests for production, by their terms, assume prior responses to the
16  interrogatories.[45]  The undue burden on Mattel caused by MGA's over-the-limits
17  discovery justifies a protective order.

18  **Conclusion**

19         For the reasons set forth above, Mattel respectfully requests that the
20  Discovery Master issue a protective order (1) finding that the MGA Parties have
21  exceeded their allotted interrogatories; and (2) granting Mattel relief from answering

22
23  [43]  <u>See</u> Mattel's Responses and Supplemental Responses, Hauler Dec., Exhs. 1-5, Searcy Dec., Exhs. 10-13.
24  [44]  <u>See, e.g.,</u> Interrogatory Nos. 28 and 29 of MGA's Second Set of Interrogatories, Searcy Dec., Exh. 6.
25  [45]  <u>See, e.g.,</u> Request for Production No. 69 of MGA's Second Set of Phase 2
26  Requests for Production ("All DOCUMENTS identified, described or referenced in
    YOUR response to INTERROGATORY NO. 1 or containing information that YOU
27  used or to which YOU referred in formulating the response."), Searcy Dec., Exh. 19.
28

EXHIBIT 19 PAGE 398

1   MGA's First Set of Phase 2 Interrogatories and Request Nos. 69, 70, 71, 72, 73, 74,

2   75, 76, 80, 82, 84, 85, 90, 93, 98, 107 and 108 of MGA's Second Set of Phase 2

3   Requests for Production.

4

5   DATED:  June 29, 2009            QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

6

7                                   By /s/ Marshall M. Searcy

8                                      Marshall M. Searcy
                                       Attorneys for Mattel, Inc.
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-16-

MATTEL, INC.'S MOTION FOR PROTECTIVE ORDER

EXHIBIT 19 PAGE 399