1   MELINDA HAAG (State Bar No. 132612)
    mhaag@orrick.com
2   ANNETTE L. HURST (State Bar No. 148738)
    ahurst@orrick.com
3   WARRINGTON S. PARKER III (State Bar No. 148003)
    wparker@orrick.com
4   ORRICK, HERRINGTON & SUTCLIFFE LLP
    The Orrick Building
5   405 Howard Street
    San Francisco, CA 94105
6   Telephone:  +1-415-773-5700
    Facsimile:   +1-415-773-5759
7
    WILLIAM A. MOLINSKI (State Bar No. 145186)
8   wmolinski@orrick.com
    ORRICK, HERRINGTON & SUTCLIFFE LLP
9   777 South Figueroa Street, Suite 3200
    Los Angeles, CA  90017
10  Telephone:  +1-213-629-2020
    Facsimile:   +1-213-612-2499
11  Attorneys for MGA Parties

12              UNITED STATES DISTRICT COURT

13              CENTRAL DISTRICT OF CALIFORNIA

14                    EASTERN DIVISION

15  | CARTER BRYANT, an individual | Case No. CV 04-9049 SGL (RNBx) |

16  | Plaintiff, | Consolidated with: |

17  | v. | CV 04-9059<br>CV 05-2727 |

18  | MATTEL, INC., a Delaware Corporation | **DISCOVERY MATTER** |

19  | | **[To Be Heard By Discovery Master Robert C. O'Brien]** |

20  | Defendant. | MGA PARTIES' OPPOSITION TO MOTION FOR ADDITIONAL TIME TO |

21  | | CONDUCT THE DEPOSITION OF ISAAC LARIAN; NOTICE AND |

22  | AND CONSOLIDATED ACTIONS | CROSS-MOTION FOR PROTECTIVE ORDER LIMITING THE SCOPE OF |

23  | | EXAMINATION AT FURTHER DEPOSITION OF MR. LARIAN |

24  | | |

25  | | [Declarations of L. Kieran Kieckhefer, Frank Rorie and Yas |

26  | | Raouf] |

27                **PUBLIC REDACTED VERSION**

28

## NOTICE OF CROSS-MOTION AND CROSS-MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT, on a date and time to be determined by the Discovery Master, Plaintiff and Counter-defendant MGA Entertainment, Inc. ("MGAE") and Counter-defendant Isaac Larian will, and hereby do, cross-move for a protective order limiting the scope of any further examination of Mr. Larian solely to the transactions occurring after August 2008 that were newly added to the Third Amended Complaint. This Cross-Motion is made, in part, in response to Mattel's motion to compel further deposition of Mr. Larian in the amount of twenty-one (21) hours wherein it seeks to re-depose the witness on numerous issues that have already been the subject of examination.

The grounds for this Cross-Motion are that Mattel has previously had ample opportunity to depose Mr. Larian on all topics implicated by the Phase 2 Proceedings, it is burdensome and abusive to expect Mr. Larian to prepare and sit for a deposition on any topic that might be implicated in the case when he has already been deposed for two days in this action, and it harms MGAE's business when Mr. Larian is forced to spend many hours preparing and testifying at deposition rather than conducting the business of the company. Mattel should not be permitted to impose ancillary competitive harms upon MGAE using the litigation process as a weapon. Accordingly, MGAE and Larian oppose Mattel's motion for 21 hours of additional deposition time on any topic for the reasons set forth below, and seek the protective order requested herein.

This Cross-Motion is based upon this Notice and Motion, the memorandum of points and authorities following herein, the Declarations of L. Kieran Kieckhefer, Frank Rorie and Yas Raouf filed herewith and such further evidence and argument as may be presented prior to or at the hearing on this Cross-Motion. This Cross-Motion is also based on all papers and pleadings previously filed with the Court in this action, specifically including 2:04-cv-03431 Docket

Nos. 1, 57; 2:04-cv-09049 Docket Nos. 1, 7, 47, 63, 89, 142, 143, 256, 421, 529, 577, 635, 636, an unnumbered entry after 640, 2499, 5143, 5565; 2:04-cv-09059 Docket Nos. 1, 36; 2:05-cv-02727 Docket ## 1, 7, 13, 14, 29.

## CERTIFICATE OF COMPLIANCE

Prior counsel for MGAE and Mr. Larian discussed the continued deposition of Mr. Larian with Mattel, and corresponded regarding the topic on several occasions, but reached no agreement.

Dated:   July 24, 2009                    Respectfully submitted,

                                          ANNETTE L. HURST
                                          Orrick, Herrington & Sutcliffe LLP

                                          By:      /s/ Annette L. Hurst
                                                   Annette L. Hurst
                                                   Attorneys for Plaintiff

OPPOSITION AND CROSS-MOTION REGARDING ADDITIONAL
LARIAN DEPOSITION
CV-04-0049 SGL (RNBx)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY OF ARGUMENT .......................................... 1

STATEMENT OF FACTS ............................................................................. 3

    A.   Summary of Pleadings ............................................................. 3

    B.   Prior Larian Testimony ........................................................... 6

    C.   The Current Motions ............................................................. 11

ARGUMENT ............................................................................................ 11

I.    A FAIR EXAMINATION OF MR. LARIAN DOES NOT REQUIRE MORE THAN THE FOUR ADDITIONAL HOURS OF DEPOSITION OFFERED ......................................................... 11

    A.   Mattel's Premature Motion Is An Invitation To Abuse ..................... 13

    B.   Mattel Has Failed To Demonstrate That Fair Examination Requires More Than An Additional Four Hours Of Larian Deposition ........................................................................... 14

        1.   The IGWT And Omni 808/Wachovia Transactions Do Not Justify More Than Four Hours Of Examination .............. 14

        2.   Mattel Seeks Improperly To Reopen Matters That Were Already The Subject Of Substantial Discovery ...................... 15

        3.   Mattel Cannot Be Permitted To Impose Burdensome Discovery Upon MGAE And Larian In Order To Obtain Relief From Its Own Prior Tactical Judgments ..................... 17

    C.   The Prior Examinations Were Not Impeded By Mr. Larian, And, In All Events, Such Contention Has Long Since Been Waived ........ 18

II.   MGAE AND LARIAN'S CROSS-MOTION TO LIMIT THE SCOPE OF FURTHER EXAMINATION SHOULD BE GRANTED .................... 19

CONCLUSION ........................................................................................ 21

1

# TABLE OF AUTHORITIES

2

**Page**

3

## FEDERAL CASES

4  *Ameristar Jet Charter, Inc.* v. *Signal Composites, Inc.,*
5  244 F.3d 189 (1st Cir. 2001) ................................................................ 11

6  *Independence Park Ap'ts* v. *United States,*
   59 Fed. Cl. 765 (2004)......................................................................... 12

7  *Malec* v. *Trustees of Boston College,*
8  208 F.R.D. 23 (D. Mass. 2002) ............................................................ 13

9  *Roberson* v. *Bair,*
   242 F.R.D. 130 (D.D.C. 2007) ............................................................ 12

10 *Cardenas* v. *Prudential Insurance Co.,*
11 2003 WL. 21302960 (D. Minn. 2003) ................................................. 14

12 *General Electric Co.* v. *Indem. Ins. Co. of Am.,*
   2006 WL. 1525970 (D. Conn. 2006) ............................................. 13, 14

13 *Greenly* v. *Lee,*
   2007 WL. 2221444 (E.D. Cal. 2007) .................................................. 12

14 *Pratt* v. *Archstone Willow Glen Ap'ts,*
15 2009 WL. 2032469 (N.D. Cal. 2009).................................................. 13

16

## STATUTES

17 Fed. R. Civ. P.
   26(b)(2)(C) ........................................................................................... 12
18 30(a)(2)(A)(ii).................................................................................... 11
   30(d)(1)......................................................................................... 11, 12

19

20

21

22

23

24

25

26

27

28

OPPOSITION AND CROSS-MOTION REGARDING ADDITIONAL
LARIAN DEPOSITION
CV-04-0049 SGL (RNBx)

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION AND SUMMARY OF ARGUMENT**

MGA Entertainment, Inc. ("MGAE") and Isaac Larian hereby oppose Mattel's Motion for Additional Time to Conduct Deposition of Isaac Larian in the amount of twenty-one hours, and cross-move for a protective order limiting the subject of Mattel's further examination during MGAE's proffered four additional hours of deposition to the new transactions in the Third Amended Answer and Counterclaims described as ████████████████████████████████████ Mattel's Motion should be denied, and the Cross-Motion granted, because Mattel should not be permitted to use the burdens of this litigation to destroy MGAE as its competitor.

The Court has expressly recognized the singular importance of Mr. Larian in running MGA's business: "It's clear to the Court that MGA needs to be run by Isaac Larian." Raouf Decl. Ex. A at 5. In contrast, Mattel has an avowed strategy of knocking MGA out of the marketplace with litigation. In the words of one Mattel executive, "[o]ne of the strategies for trying to defeat Bratz was to litigate them to death." 2:04-cv-09049 Docket #2499 at 311 (Declaration of Jason D. Russell In Support of MGA Parties' Motion for Partial Summary Judgment Ex 21). Nothing will kill MGAE faster than forcing the man recognized by the Court as its guiding light to sit for another twenty-one hours of deposition, or to spend days wasting time preparing for an even shorter deposition when such deposition could be conducted upon any of the myriad topics upon which Mr. Larian has already been deposed. Mr. Larian has testified in response to Mattel's questions, all told in two volumes of deposition and seven days of trial, for nearly 1000 pages of transcript. Enough is enough. The four hours offered by MGAE and Mr. Larian on the new transactions is more than reasonable under the circumstances, and that is precisely what the Discovery Master should order.

First, Mattel has wholly failed in its burden to demonstrate that a fair

1   examination of Mr. Larian requires an amount of deposition time of more than

2   quadruple to what it is entitled, especially in light of the obvious burdens to Mr.

3   Larian and his already lengthy prior testimony.  Part I, *infra*.  Rather, this motion is

4   premature because Mattel has not even attempted to accomplish a fair examination

5   on the new topics in the additional amount of time to which MGAE and Mr. Larian

6   agreed.  Part I(A), *infra*.  Second, Mattel has not demonstrated that four hours is

7   inadequate to examine on the new transactions (Part I(B)(1), *infra*); a full

8   examination of the past testimony offered by Mr. Larian demonstrates that Mattel

9   has had a fair opportunity to examine on all other topics that were relevant to Phase

10  2 Proceedings prior to the recent amendment—indeed, Mr. Quinn *adjourned* Mr.

11  Larian's deposition after the first session (Part I(B)(2), *infra*); and, the purportedly

12  belated production of documents can be no excuse, since Magistrate Judge Block

13  has already admonished Mattel that its tactical decision to take an early deposition

14  precluded such a later stance.  Part I(B)(3), *infra*.  Nor is there any basis for a

15  conclusion that Mr. Larian previously impeded the taking of testimony—as

16  demonstrated by the fact that Mattel had no complaint at all after the witness's

17  entire first day of deposition.  Part I(C), *infra*.

18          Finally, since Mattel has had a prior full and fair opportunity to

19  examine on all topics relevant to the Phase 2 Proceedings other than the new

20  transactions, since Mattel admits in the Motion that it intends to engage in

21  duplicative examination of the witness, and since Mattel should not be permitted to

22  use the burdens of this litigation to impose ancillary competitive harm upon MGA,

23  the Discovery Master should issue a protective order limiting the scope of the

24  additional four hours of examination offered by MGAE and Larian to ███████

25  ████████████████████████.  Part II, *infra*.

26

27

28

# STATEMENT OF FACTS

## A.   <u>Summary of Pleadings</u>

Mattel initiated the consolidated cases on April 27, 2004 by filing a complaint in Los Angeles County Superior court against its former employee and creator of the BRATZ dolls concept, Carter Bryant.  Case No. 2:04-cv-09059 Docket #1.  That complaint (*"Mattel v. Bryant"*) alleged five state law causes of action against Bryant premised upon his alleged breach of duties to Mattel.  *Id*.  On May 14, 2004, Bryant removed *Mattel v. Bryant* to this Court on the basis of diversity jurisdiction. 2:04-cv-03431 Docket #1.  On August 20, 2004, the Court remanded on the basis of Mattel's argument that it was unclear that more than $75,000 was in controversy.  03431 Docket #57.

On November 2, 2004, Bryant filed a separate action in this Court seeking declaratory relief against Mattel (*"Bryant v. Mattel"*) which was numbered 2:04-cv-09049.  09049 Docket #1.  The same day, Bryant again removed the pending state court action *Mattel v. Bryant*, which was numbered Case No. 2:04-cv-09059.  09059 Docket #1.  On November 16, 2004, the Court transferred Case No. 09059 to Judge Manella as the judge assigned to the lower-numbered related case.  09049 Docket #7.  On December 7, 2004, the Court approved MGA's stipulated intervention as a defendant in the removed *Mattel v. Bryant* action.  09059 Docket #36.

On April 13, 2005, MGA filed a separate unfair competition lawsuit against Mattel (*"MGA v. Mattel"*), alleging trade dress infringement, unlawful attempts to block the marketing of rights in the BRATZ dolls, and other efforts to undermine the BRATZ product lines.  2:05-cv-02727 Docket # 1.  The case was transferred to Judge Manella as a related case on April 25, 2005.  02727 Docket #7.  Mattel answered and moved to dismiss on May 13, 2005.  *Id*.  Docket ##13, 14.  After the Court denied in part the motion to dismiss, Mattel filed an amended answer on September 13, 2005.  *Id*. Docket #29.

1           On June 19, 2006, the Court consolidated all three cases and ordered

2    all subsequent filings to be made in the case with the lowest number, which was the

3    Bryant declaratory relief action.  09049 Docket #47. On July 18, 2006, the Court

4    dismissed that case.  09049 Docket #63.  Thus, since that time, the two cases have

5    proceeded in the lowest-numbered action which was otherwise dismissed.

6           On November 20, 2006, Mattel filed a Motion for Leave to File

7    Amended Complaint, seeking leave to amend its Complaint in *Mattel v. Bryant.*

8    09049 Docket #89.  On January 11, 2007, the Court allowed the amendment, but

9    required Mattel to file it as a counterclaim in Case No. 2:05-cv-2727.  09049

10   Docket #142.  Mattel then filed its Amended Answer and Counterclaims ("AAC")

11   on January 12, 2007.  09049 Docket #143.  (Because there was an earlier Amended

12   Answer, this was actually Mattel's second amended answer).  This initial set of

13   counterclaims filed in January 2007 in the 05-2727 action included a broad set of

14   thirteen claims adding several new counterclaim-defendants who were not

15   previously parties in the case.  The AAC added claims for:  (1) copyright

16   infringement, (2) violation of the RICO act, (3) conspiracy to violate the RICO act,

17   (4) misappropriation of trade secrets, (5) breach of contract, (6) intentional

18   interference with contract, (7) breach of fiduciary duty, (8) aiding and abetting

19   breach of fiduciary duty, (9) breach of the duty of loyalty, (10) aiding and abetting

20   breach of the duty of loyalty, (11) conversion, (12) unfair competition, and (13)

21   declaratory relief.  *Id.*  The January 2007 AAC added MGA Entertainment (HK)

22   Limited, MGA de Mexico, S.R.L. de C.V., Isaac Larian, and Carlos Gustavo

23   Machado Gomez as new parties on these various counterclaims.  *Id.*

24          Several of the counterclaim-defendants moved to dismiss the new

25   Counterclaims; the hearing on the motions was initially set for April 2, 2007, later

26   continued to May 21, 2007, and ultimately heard on June 11, 2007.  09049 Docket

27   ##256, 421, 529.  On June 27, 2007, the Court granted in part and denied in part the

28   motions to dismiss (*id.* Docket #577), resulting in the filing of the Second Amended

OPPOSITION AND CROSS-MOTION REGARDING ADDITIONAL
LARIAN DEPOSITION
CV-04-0049 SGL (RNBx)

1   Answer and Counterclaims on July 12, 2007 ("SAAC").  *Id.* Docket #635, 636, and

2   unnumbered entry after Docket # 640.

3          After the Phase 1 Trial—in which Mattel received only a small

4   fraction of the damages that it sought—Mattel again sought leave to expand the

5   factual scope of the case.  On April 9, 2009, Mattel filed its Motion for Leave to

6   File Third Amended Answer and Counterclaims ("TAAC").  *Id.* Docket #5143.

7   The Court granted leave to file the "TAAC" on May 21, 2009 and it was deemed

8   filed as of that date.  *Id.* Docket #5565.  The TAAC includes one new claim not

9   alleged in the SAAC—a claim for avoidance of intentional and constructive

10  fraudulent transfers under the uniform fraudulent transfer act.  09049 Docket

11  #5565, ¶¶217-222. ███████████████████████████████

12  ███████████████████████████████████████████

13  ███████████████ *Id.* at ¶¶ 2, 7, 16, 77-87, 95-97, 105,

14  107, 112, 114.

15         The TAAC also includes 14 more exhibits than appended to the

16  SAAC.  For purposes of this motion, however, there is little substantive difference

17  between the pleading exhibits.  Exhibits A and B to the TAAC are identical to those

18  in the SAAC.  There is no document in Exhibit C to the TAAC not in its SAAC

19  counterpart.  The TAAC does include a new Exhibit D containing seven various

20  documents, but these documents were produced by MGA, used as exhibits to Mr.

21  Larian's March 2008 deposition, or used as exhibits to depositions that occurred

22  prior to his deposition, i.e., the July 18, 2007 deposition of Armstrong (TAAC Ex.

23  D at 640), and the August 30, 2007 deposition of Malacordia (TAAC Ex. D at 637).

24  Only new Exhibit E contains the (seven) documents pertaining to Mattel's new

25  legal claim.

26

27

28

**B.    Prior Larian Testimony**

Mr. Larian was deposed for the first time on July 19, 2006, after the three cases had been consolidated.  He was deposed at Mattel's insistence despite MGA's objection that it was early in the case and many documents had yet to be produced.  In overruling MGA's objection and ordering the deposition to proceed, Magistrate Judge Block expressly noted that further requests for deposition time with Mr. Larian would be limited by Mattel's deliberate tactical choice to depose him early in the case:

> [M]GA's purported concern about the possibility of Mr. Larian being subjected to multiple and repeated depositions is a complete red herring.  Federal Rule 30(d)(2) limits the deposition to one day of seven hours, unless otherwise authorized by the Court or stipulated to by the parties.  If Mattel later seeks to redepose Mr. Larin on the basis of additional information developed in subsequent discovery, the Court will take into account the fact that Mattel persisted in going forward with Mr. Larian's deposition at the outset of discovery.  (Kidman Decl. Ex. 7 at 86)

Before the Larian deposition could actually be conducted in response to this order, however, the Court imposed a blanket stay. *Id.* Ex. 8 at 88.  After the stay was lifted approximately one year later on May 16, 2006, Mattel again moved to compel and MGA produced the witness.[1]

On July 19, 2006, Mr. Quinn arrived approximately thirty minutes late and proceeded to take Mr. Larian's deposition.  Raouf Decl. Ex. B at 10. Questioning by Mr. Quinn proceeded for more than two hundred and fifty pages of transcript, at which time Mr. Quinn stated (at approximately 3:30 p.m.), "[w]e don't have anything further." *Id.* at 258:4.  Thus, Mr. Quinn adjourned the deposition as completed.

---

[1] Contrary to Mattel's characterization, there were not two orders to compel "and" a sanctions order—there were not three separate orders.  Mot. at 3.  The sanctions order was made in response to the second motion to compel.



OPPOSITION AND CROSS-MOTION REGARDING ADDITIONAL
LARIAN DEPOSITION
CV-04-0049 SGL (RNBx)

1  ████████████████████████████████████████████████████████

2  ████████████████████████████████████

3        On March 26, 2008—more than fourteen months after Mattel's

4  January 12, 2007 filing of its expanded Counterclaims—Mattel again deposed Mr.

5  Larian pursuant to the Court's order for an additional five hours of deposition.

6  Raouf Decl. Ex. C at 267, 518.  At the time of that second day of deposition, there

7  was no prior agreement regarding any subject matter limitation, and no limitation

8  was imposed—counsel did not instruct the witness not to answer a single time

9  during the deposition.  Mr. Zeller, rather than Mr. Quinn, conducted the second

10  examination.  In a wide-ranging examination that again consumed approximately

11  two hundred and fifty pages of transcript, Mr. Zeller touched on every topic in the

12  counterclaims of the SAAC.  Indeed, despite the fact that Mr. Quinn had previously

13  conducted an entire examination regarding the conception of Bratz, Mr. Zeller

14  again covered this ground.  *E.g.*, Raouf Decl. Ex. C at 270-72.

15  ████████████████████████████████████████████████████

16  ████████████████████████████████████████████████████

17  ████████████████████████████████████████████████████

18  ████████████████████████████████████████████████████

19  ████████████████████████████████████████████████████

20  ████████████████████████████████████████████████████

21  ████████████████████████████████████████████████████

22  ████████████████████████████████████████████████████

23  ████████████████████████████████████████████████████

24  ████████████████████████████████████████████████████

25  ████████████████████████████████████████████████████

26  ████████████████████████████████████████████████████

27  ███████████████████████   In short, Mr. Zeller examined the witness on every

28  topic then in the case about which he could have reasonably been expected to have

1   knowledge.

2          In addition to this comprehensive examination on topics of relevance

3   to the action, however, Mr. Zeller also spent time examining the witness on a

4   number of issues that bore no seeming relevance to the case. ▓▓▓▓▓▓▓▓▓

5   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

6   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

7   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

8   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

9   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

10  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

11         In its Motion, Mattel cites eight examples of what it asserts was

12  excessive time taken by the witness to review documents.  Mot. at 25 n.84.  The

13  table on the following page demonstrates the amount of time taken to review each

14  document and other pertinent circumstances regarding that review.  Rorie Decl.

15  ¶¶2-9.

16

17

18

19

20

21

22

23

24

25

26

27

28

| Exhibit | Description | First marked | Started Review | Finished Review | Time | Notes |
|---------|-------------|--------------|----------------|-----------------|------|-------|
| 4942 | 2 page document memorializing 3 emails | 3-26-08 | 9:52:03 | 9:53:55 | 1 min, 52 sec | |
| 4943 | 3 page document memorializing 7 emails | 3-26-08 | 10:08:30 | 10:11:05 | 2 min, 35 sec | |
| 4944 | 3 page document memorializing 5 emails | 3-26-08 | 10:18:20 | 10:20:47 | 2 min, 27 sec | |
| 615 | 8 page document memorializing patent application | 8-20-07 | 14:35:33 | 14:39:00 | 4 min 27 sec | |
| 631 | 3 page document 750 plus word article (in tiny font) | 8-30-07 | 9:36:15 | 9:43:00 | 6 min, 45 sec | Exhibit not legible; Interrupted while reviewing |
| 302 | 15 page document with 14 drawings | 7-18-06 | 12:47:20 | 12:53:20 | 6 min | Interrupted while reviewing |
| 10 & 12 (reviewed at same time) | 18 page document with 17 drawings and 12 page declaration | 11-5-04 | 12:56:48 | 13:08:20 | 11 min, 32 sec | Interrupted while reviewing |

In each of these instances, the subject matter of the examination concerned the creation of BRATZ or copyright infringement—topics that had already been the subject of lengthy examination on the first day of Mr. Larian's deposition.

Finally, Mr. Larian was examined at length during the Phase 1 Trial Proceedings. He was on the witness stand on seven separate days comprising six hundred eighty-four (684) pages of testimony. Kieckhefer Decl. ¶¶2, 6. Excluding side bars and questioning by MGA, Mattel's questions of the witness during the

1    Phase 1 Trial accounted for four hundred sixty-eight (468) pages of testimony. *Id.*

2    **C.    The Current Motions**

3                On January 27, 2009, Mattel requested an additional ten hours of

4    deposition from Mr. Larian. Kidman Decl. Ex. 33. At that time, the prior RICO

5    claims were already pending, Mattel had already alleged criminal copyright

6    infringement as a predicate act, Mattel had already made a contention that Mr.

7    Larian had committed perjury, and Mattel was already aware of the IGWT and

8    Omni 808/Wachovia Transactions. *See* Kidman Decl. Ex. 31 at 418-20 (Mattel's

9    Motion for Leave to Amend detailing its prior knowledge and disclosure to MGA

10   of all of these circumstances by December 2008). Thus, when Mattel first proposed

11   in January 2009 that it be afforded ten hours of additional examination, it was

12   already aware of all of the allegations that it now claims justify an additional

13   deposition of twenty-one hours.

14               Nonetheless, in light of the filing of the TAAC and the new allegations

15   contained therein concerning the IGWT and Omni 808/Wachovia transactions,

16   counsel for the MGA Parties offered an additional four hours of deposition of Mr.

17   Larian limited to those new topics. *Id.* Ex. 37. Rather than proceed with the

18   proffered four-hour deposition, ask its pertinent questions, and make a record that

19   the Discovery Master could evaluate to assess whether it really required more time

20   to complete the deposition, Mattel refused to proceed at all and instead filed the

21   instant Motion.

22                                    **ARGUMENT**

23   **I.    A FAIR EXAMINATION OF MR. LARIAN DOES NOT REQUIRE**
         **MORE THAN THE FOUR ADDITIONAL HOURS OF DEPOSITION**
24       **OFFERED.**

25               Rule 30 requires a stipulation or court order to depose a witness a

26   second time (Fed. R. Civ. P. 30(a)(2)(A)(ii); *see Ameristar Jet Charter, Inc. v.*

27   *Signal Composites, Inc.*, 244 F.3d 189, 192 (1st Cir. 2001)), or to depose a witness

28   in excess of seven hours. Fed. R. Civ. P. 30(d)(1). No extension should be

1   permitted unless (1) necessary for a fair examination, or (2) the examination was

2   improperly impeded. Fed. R. Civ. P. 30(d)(1). In assessing the motion for

3   extension of deposition time, the Court must also consider (i) whether the discovery

4   sought is unreasonably cumulative or duplicative or can be obtained from some

5   other sources that is more convenient, less burdensome or more expensive, (ii)

6   whether the party seeking the discovery has had ample opportunity to obtain the

7   information, or (iii) whether the burden outweighs the likely benefits. Fed. R. Civ.

8   P. 26(b)(2)(C). If any of these three factors is met, the discovery must be limited.

9   *Id.*

10          Under Rule 30, the burden is on the party seeking the extended

11   examination to demonstrate good cause why it is necessary. *See Greenly v. Lee*,

12   2007 WL 2221444 (E.D. Cal. 2007) ("'The party seeking a court order to extend

13   the examination . . . is expected to show good cause to justify such an order'")

14   (quoting Advisory Committee Notes to 2000 Amendments to Federal Rule of Civil

15   Procedure 30); *Independence Park Ap'ts v. United States*, 59 Fed. Cl. 765, 769

16   (2004); *Roberson v. Bair*, 242 F.R.D. 130, 138 (D.D.C. 2007) ("[T]he court should

17   begin with the presumption that the seven-hour limit was carefully chosen and that

18   extensions of that limit should be the exception, not the rule. Automatic extensions

19   eviscerate the rule. Moreover, the seven-hour limit encourages efficiency; it has

20   been said that a writer's best friends are a deadline and a page limitation. The same

21   may be said of lawyers conducting depositions.")

22          In seeking to more than quadruple ((11 + 21 = 32) (32/7 = 4.6)) its

23   otherwise allowable examination time with Mr. Larian, Mattel undertakes the

24   burden of demonstrating that the time offered is inadequate for purposes of fair

25   examination in light of the circumstances of the case. Mattel has wholly failed to

26   meet this burden, for three reasons. First, its Motion is premature since it has not

27   even attempted to complete its examination on the truly new issues injected by the

28   TAAC. Part A, *infra*. Second, its Motion fails to demonstrate a specific factual

- 12 -

1   showing that ten hours, twenty-one hours (or anything else close) is necessary for

2   fair examination, particularly in light of the two prior opportunities to examine the

3   witness of which it fully availed itself.  Part B, *infra*.  Third, Mattel's motion does

4   not demonstrate that prior examinations were unfairly impeded and in all events,

5   such a contention has long since been waived.  Part C, *infra*.

6       **A.**    **Mattel's Premature Motion Is An Invitation To Abuse.**

7           Courts considering the issue of augmentation of deposition time limits

8   ordinarily require the party seeking more time to conduct its examination first and

9   then explain in detail what could not be accomplished.  *Malec v. Trustees of Boston*

10  *College*, 208 F.R.D. 23 (D. Mass. 2002) ("[T]he better practice is for the deposition

11  to go forward to determine how much is able to be covered in the seven hours and,

12  then, if additional time is needed, for counsel to stipulate to extend the deposition

13  for a specific additional time period.  If the parties cannot reach a stipulation, then

14  Court intervention may be sought."); *Pratt v. Archstone Willow Glen Ap'ts*, 2009

15  WL 2032469 (N.D. Cal. 2009) ("Defendants fail to show why this examination

16  requires fourteen hours or why every effort should not be made to complete the

17  deposition in the standard time allotted.  Defendants should complete their first

18  seven hour deposition before seeking leave for additional time."); *General Electric*

19  *Co. v. Indem. Ins. Co. of Am.*, 2006 WL 1525970 (D. Conn. 2006) ("Like the

20  number of depositions, courts have viewed Rule 26(b)(2) as containing an

21  exhaustion requirement with regard to moving for leave to extend a deposition.")

22          This exhaustion requirement makes sense, because absent such a

23  requirement, the court has no ability to evaluate the depth of the witness's

24  knowledge on the particular subjects on which examination is purportedly required,

25  whether counsel examining the witness have acted efficiently, and other factors

26  relevant to the Rule 26(b)(2) analysis.  Here, requiring Mattel to examine the

27  witness for the proffered time on the new matters first makes the most sense.  Four

28  hours is almost certain to exhaust the depth of Mr. Larian's knowledge on the

OPPOSITION AND CROSS-MOTION REGARDING ADDITIONAL
LARIAN DEPOSITION
CV-04-0049 SGL (RNBx)

1 ███████████████████████████ which are the only new matter in the

2 case.  And, as set forth below, Mattel has provided no good reason why it could not

3 examine the witness on all other issues on prior occasions.  By allowing Mattel so

4 many hours in advance, the Court would simply be setting up an invitation to abuse.

5 Mattel could simply keep asking questions to use up the allotted time, irrespective

6 of whether it is an efficient use of resources.  Accordingly, the Motion should be

7 denied in the first instance without prejudice to Mattel returning to explain that it

8 used its four hours wisely to examine the witness on new topics and exactly what it

9 could not accomplish.

10     **B.**    **Mattel Has Failed To Demonstrate That Fair Examination**
            **Requires More Than An Additional Four Hours Of Larian**
11             **Deposition.**

12         Assuming the Court chooses to address itself to this premature Motion,

13 in assessing the question of fair examination, the burden is on Mattel to offer

14 specific factual support demonstrating why it requires more time.  *General Electric*,

15 2006 WL 1525970 (party moving to extend time must "present the court with

16 information specific to the deposition sought to be extended which would allow the

17 court to undertake a Rule 26(b)(2) analysis"); *Cardenas v. Prudential Ins. Co.*,

18 2003 WL 21302960 (D. Minn. 2003).  Despite the voluminous stack of papers

19 submitted with its Motion, Mattel has utterly failed to meet this requirement.

20        **1.**    **The IGWT And Omni 808/Wachovia Transactions Do Not**
             **Justify More Than Four Hours Of Examination.**
21

22         As set out below, with the exception of the IGWT and Omni

23 808/Wachovia transactions, each of the proposed subject matters on which Mattel

24 now seeks to examine the witness has already been covered in the prior deposition

25 sessions.  Even with regard to those transactions, Mattel has made no showing that

26 it requires more than four hours.  Those transactions have already been the subject

27 of exhaustive inquiry by the Forensic Auditor.  Mattel has already obtained a

28 temporary receivership, the appointment of a forensic auditor, and the appointment

OPPOSITION AND CROSS-MOTION REGARDING ADDITIONAL
LARIAN DEPOSITION
CV-04-0049 SGL (RNBx)

1   of a monitor, *all without Mr. Larian's testimony on the subject.*  Mattel is obviously

2   more than capable of ascertaining the nature of these transactions without reference

3   to *any* testimony by Mr. Larian.  Four hours is plenty of time to examine on these

4   new transactions..

### 2.   Mattel Seeks Improperly To Reopen Matters That Were Already The Subject Of Substantial Discovery.

7          Remarkably, Mattel's Motion omitted the complete transcripts of Mr.

8   Larian's prior two days of deposition as well as his lengthy trial testimony.  They

9   are now provided as Exhibits B, C, and D, respectively, to the Raouf declaration.

10   Having failed to supply the Court with the full evidentiary predicate for assessing

11   this Motion under Rule 26(b)(2) standards, Mattel failed to meet its burden

12   altogether under the cases set out above requiring a good cause standard.  Nor is it

13   surprising that Mattel omitted these transcripts, since, as set out in detail in the

14   Statement of Facts, *supra*, Mattel has already examined Mr. Larian at length about

15   the purported "Bratz Enterprise" (aka Bryant's transfer of ownership of Bratz to

16   MGA), copyright infringement, MGAE's claims of unfair competition, alleged

17   misappropriation of trade secrets, duty of loyalty, the three seamstresses

18   ("commercial bribery") and *every other issue in the case.*  The only thing about

19   which Mattel has not had an opportunity to examine the witness is the new

20   transactions—which counsel for MGAE and Mr. Larian agreed would afford the

21   basis for an additional four hours of questioning.

22          Counsel for MGAE and Mr. Larian stipulated to resume the deposition

23   for four hours in light of the filing of the TAAC.  Adding the proposed four hours

24   to the eleven for which the witness has already been examined causes the total time

25   proposed to be spent in deposition to exceed the amount of time for which Mr.

26   Larian could have been deposed had the two cases proceeded separately.  Mattel

27   thus will have been afforded more than its full measure of testimony for the two

28

OPPOSITION AND CROSS-MOTION REGARDING ADDITIONAL
LARIAN DEPOSITION
CV-04-0049 SGL (RNBx)

1   consolidated cases.[3]  Yet Mattel refused even to attempt an examination in such

2   time.  Surely the great trial lawyers of Quinn Emmanuel with their widely

3   advertised 91.4% success rate can take a deposition in four hours of a trial witness

4   who has already been deposed for eleven hours and testified at the first trial for

5   seven days!  Indeed, when Mattel's counsel first started negotiating for the privilege

6   to continue the deposition, with full knowledge of every issue in the case, they

7   asked for only ten hours.  Kidman Decl. Ex. 33.  Even that was an overblown

8   request—but the motion for an additional twenty-one hours truly lays bare Mattel's

9   strategy: pick a ridiculous number out of a hat for purposes of negotiation before

10   the Court to get as much as they can without regarding the substantive requirements

11   of law.  The Court should not reward this bald tactic, which is the antithesis of good

12   faith meet and confer.

13          To the extent Mattel offers any specifics at all other than repeated

14   incantation of its various allegations, its argument boils down to nothing more than

15   the assertion that it needs to continue deposing Mr. Larian upon issues about which

16   he has already been examined.  In the face of the more than 500 page deposition

17   record establishing that Mr. Larian has been exhaustively examined, not to mention

18   the 481 pages of trial examination by Mattel, Mattel now claims that it needs

19   twenty-one hours to examine Mr. Larian about:  (1) his prior testimony concerning

20   copyright infringement (aka "perjury") (Mot. at 19), (2) copyright infringement

21   (aka "criminal" copyright infringement) (Mot. at 19), and (3) all other Phase 2

22   issues.  Mot. at 20-23.  Basically, Mattel wants another three days of deposition so

23   they can keep asking Isaac Larian about copyright infringement, his prior testimony

24   about copyright infringement, and all of the other issues *about which they have*

25   *already examined him.*  This is an obvious abuse.[4]

26   ───────────────
[3] As detailed in the Statement of Facts, *supra*, the third consolidated case, Bryant's
27   action for declaratory relief, was dismissed by the Court.
[4] Mattel further supports this argument with its newfound position that the TAAC
28   was a "[dramatic expansion]" of the case.  Mot. At 1.  This is directly contrary to
the position that Mattel took when it filed its motion for leave to amend the SAAC.

### 3. Mattel Cannot Be Permitted To Impose Burdensome Discovery Upon MGAE And Larian In Order To Obtain Relief From Its Own Prior Tactical Judgments.

Mr. Quinn *adjourned* Mr. Larian's deposition without full production of MGAE's documents. It was a deliberate tactical choice to depose Mr. Larian so early in the case, and one the Court (per Magistrate Judge Block) specifically cautioned Mattel would be taken into account in connection with any subsequent claim for further time with the witness. That day of reckoning has now arrived. The witness has already been deposed for more than eleven hours and testified at trial on seven days, with Mattel's portion of the examination comprising four hundred sixty-eight (468) pages. The fact that MGAE produced 160,000 pages of documents subsequent to the two Larian deposition sessions is of no moment, because in each instance Mattel made the deliberate choice to depose the witness knowing full well that MGAE's document productions were not complete.

Moreover, Mattel has identified not one single page out of the purported 160,000 pages about which it must examine *this witness* that would add anything materially new to the topics covered in either of the prior deposition sessions. Just waving around numbers of pages produced does nothing to demonstrate a lack of opportunity to engage in fair examination. Remarkably absent from Mattel's motion is any discussion of any specific document other than e-mails and transaction documents concerning the new transactions about which Mr. Larian *has already agreed to be deposed*. There is little meaningful difference in the presumably key documents identified by Mattel as exhibits to the SAAC and TAAC. The timing and size of MGAE's document productions provide absolutely no rationale for resuming Mr. Larian's deposition for more than the agreed-upon four hours. To consider otherwise would flout Magistrate Judge Block's May 2005 Order. Mattel has not provided the Court with the factual predicate to undertake

---

In that Motion, Mattel boldly proclaimed that "The Amendments Will Not Significantly Expand the Scope Of The Case, If At All." Kidman Decl. Ex. 31 at 420.

1    any kind of meaningful Rule 26(b)(2) analysis whereby it could determine that the

2    incredible burden of an additional twenty-one hours of examination is warranted by

3    these circumstances. The belated document production argument is an

4    unsubstantiated red-herring that was in all events the product of Mattel's own

5    deliberate tactical judgments.

6       **C.**     **The Prior Examinations Were Not Impeded By Mr. Larian, And,**

7             **In All Events, Such Contention Has Long Since Been Waived.**

8       Mattel finally argues that it requires more time with Mr. Larian

9    because he somehow impeded his prior examination. Mot. at 24-25. This

10   contention must be rejected. First, Mattel makes no such argument *about the entire*

11   *first day of Mr. Larian's deposition*—which completely undermines the claim that

12   Mr. Larian is by nature an obstreperous witness. *See id.* Second, Mr. Larian did

13   not spend an inordinate amount of time reviewing exhibits during the second day of

14   his deposition. Mot. at 24:18. Rather, as the chart in the Statement of Facts, *supra*,

15   details, he spent an appropriate amount of time reviewing sometimes illegible,

16   lengthy documents and was repeatedly interrupted during this review. *See* Rorie

17   Decl. ¶¶ 3-9. His review was hardly excessive since the exhibits at issue comprised

18   sixty-four (64) pages of information with dozens of images and thousands of words

19   of text. *Id.* ¶ 2. For example, Exhibit 12 was ███████████████████████

20 ███████████████████████████████████████████████████████

21 ███████████████████ Raouf Decl. Ex. C at 399-424. Plainly the proper course

22   for the witness under such circumstances was to carefully review the entire

23   document.[5]

24   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
      [5] Other documents about which Mattel claims dilatory responses, such as a 2003

25   Businessweek article, also concerned the Bratz conception—which had already
      been the subject of much of the entire first day of deposition. See Depo. Exhibit

26   631. Perhaps Mattel was impatient because it was wasting time examining the
      witness on matters that could have been, and in many instances were, the subject of

27   the first day's deposition. Mattel's impatience and improper desire to limit the
      witness's examination of a document to particular sentences and to prohibit the

28   witness from familiarizing himself with the entire substance and context of the
      material is not a basis for a finding that Mr. Larian impeded the examination. If

1    Lastly, Mattel claims that Mr. Larian delayed his deposition by

2    "forcing Mattel's counsel to spend inordinate amounts of time attempting to obtain

3    answers to straightforward questions." Mot. at 25. Tellingly, Mattel does not

4    elaborate on this point at all in its brief, and the deposition testimony it cites clearly

5    shows that Mattel was more interested in playing word games with Mr. Larian than

6    obtaining substantive discovery. Raouf Decl. Ex. C at 396:6-423:8, 308:19-311:25,

7    453:18-456:9, 384:24-390:17, 402:9-403:15; *id.* ¶6. Mattel's failure to use its time

8    wisely in this regard can hardly be blamed on Mr. Larian.

9    **II.    MGAE AND LARIAN'S CROSS-MOTION TO LIMIT THE SCOPE**
10    **OF FURTHER EXAMINATION SHOULD BE GRANTED.**

11    MGAE continues to be Mattel's competitor in the marketplace for

12    fashion dolls even as it limps along financially subject to a court-imposed Monitor

13    intrusively managing many aspects of its business affairs. MGAE has introduced

14    its new line of MOXIE dolls, and continues to try to run a business in the face of

15    the relentless demand for the attention of its executives created by this litigation. In

16    refusing to appoint a permanent receiver for MGAE, the Court expressly

17    recognized the singular importance of Mr. Larian in running MGA's business: "It's

18    clear to the Court that MGA needs to be run by Isaac Larian." Raouf Decl. Ex A at

19    5.

20    Mattel has an avowed strategy of knocking MGA out of the

21    marketplace with litigation. In the words of one Mattel executive, "[o]ne of the

22    strategies for trying to defeat Bratz was to litigate them to death." 09049 Docket

23    #2499 at 311 (Declaration of Jason D. Russell In Support of MGA Parties' Motion

24    for Partial Summary Judgment Ex 21). Nothing will kill MGAE faster than forcing

25    the man recognized by the Court as its guiding light to sit for another twenty-one

26    _____

27    Mattel is concerned that Mr. Larian will take too long to review documents in the future, the remedy is to take the deposition, ask the questions, and then come back

28    to the Court if assistance is truly needed so that the Court can evaluate the complexity of the task at hand in context and not based upon abstractions.

OPPOSITION AND CROSS-MOTION REGARDING ADDITIONAL
LARIAN DEPOSITION
CV-04-0049 SGL (RNBx)

1   hours of deposition, or to spend days preparing for even a shorter deposition if such

2   deposition could be conducted upon any of the myriad topics upon which Mr.

3   Larian has already been deposed.  21 hours of additional deposition time for a total

4   of 32 hours of deposition is a ridiculous request, and Mattel's initial demand in

5   January for 10 hours of deposition knowing every issue now in the case fully

6   demonstrates that this was never intended to be taken seriously.  It is a throwaway,

7   designed with only one purpose in mind:  to bargain this Court into its original

8   demand for 10 hours—something that is also burdensome and extreme—by making

9   that demand look good in comparison to later demand for 21 hours.  The Court

10   should not indulge Mattel's tactic.

11          Mattel has expressly admitted in its Motion that it intends to spend a

12   good portion of its examination time asking Mr. Larian about what it has already

13   examined him about *ad nauseum*—the conception of Bratz and copyright

14   infringement.  Mr. Larian has testified in response to Mattel's questions, all told in

15   two volumes of deposition and seven days of trial, for nearly 1000 pages of

16   transcript.  Enough is enough.  MGAE has a business to run, and Mr. Larian is

17   critical to that enterprise.  Four hours is plenty of time to examine Mr. Larian fairly

18   on the new transactions.  And, Mattel should be limited to that subject matter

19   because otherwise Mr. Larian will have to spend days preparing to testify on every

20   conceivable topic in the case.  Instead, as the Court has recognized in rejecting the

21   appointment of a permanent receiver, he should be spending that time running

22   MGAE.

23

24

25

26

27

28

1

## CONCLUSION

2            For all of the foregoing reasons, Mattel's Motion for Additional Time

3   to Conduct the Deposition of Isaac Larian should be denied, and MGAE and Mr.

4   Larian's Cross-Motion to Limit Subject of Examination at Further Deposition of

5   Mr. Larian should be granted.

6

7   Dated:    July 24, 2009                    Respectfully submitted,

8                                              ANNETTE L. HURST
                                               Orrick, Herrington & Sutcliffe LLP

9                                              By:  _____/s/ Annette L. Hurst_____
                                                         Annette L. Hurst
10                                                       Attorneys for Plaintiff

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION AND CROSS-MOTION REGARDING ADDITIONAL
LARIAN DEPOSITION
CV-04-0049 SGL (RNBx)