1  MELINDA HAAG (State Bar No. 132612)
   mhaag@orrick.com
2  ANNETTE L. HURST (State Bar No. 148738)
   ahurst@orrick.com
3  WARRINGTON S. PARKER III (State Bar No. 148003)
   wparker@orrick.com
4  ORRICK, HERRINGTON & SUTCLIFFE LLP
   The Orrick Building
5  405 Howard Street
   San Francisco, CA 94105
6  Telephone: +1-415-773-5700
   Facsimile: +1-415-773-5759
7
   WILLIAM A. MOLINSKI (State Bar No. 145186)
8  wmolinski@orrick.com
   ORRICK, HERRINGTON & SUTCLIFFE LLP
9  777 South Figueroa Street, Suite 3200
   Los Angeles, CA 90017
10 Telephone: +1-213-629-2020
   Facsimile: +1-213-612-2499
11
   Attorneys for MGA Parties
12

13              UNITED STATES DISTRICT COURT

14              CENTRAL DISTRICT OF CALIFORNIA

15                    EASTERN DIVISION

| | |
|---|---|
| 16  CARTER BRYANT, an Individual, | Case No.  2:04-cv-09049-SGL-RNBx |
| 17            Plaintiff, | Consolidated with Case No. CV 04-9059 and Case No. CV 05-2727 |
| 18       v. | |
| 19  MATTEL, INC., a Delaware Corporation, | **MGA PARTIES' OPPOSITION TO MATTEL, INC.'S MOTION FOR PRECLUSIVE RELIEF OR, IN THE ALTERNATIVE, ACCESS TO ACTIVE FILES ON THE LARIAN HARD DRIVES** |
| 20            Defendant. | |
| 21  AND CONSOLIDATED ACTIONS | |
| 22 | |
| 23 | Date:       August 10, 2009 |
| 24 | Time:       10:00 A.M. |
|    | Courtroom:  1 |
| 25 | Judge:      Hon. Stephen J. Larson |
| 26 | |
| 27 | |
| 28 | |

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY OF ARGUMENT ......................................1

STATEMENT OF FACTS ...........................................................................2

A.    Mattel's First Request To Access to Mr. Larian's Hard Drives ...................2

B.    Mattel Agrees Undeleted, User-Generated Files Are Irrelevant To Its Assertion Of Spoliation ...................................................................3

C.    MGA's Expert Challenges Mattel's Findings On Spoliation .........................4

      D.    Mattel Seeks A "Supplemental" Production .......................................6

ARGUMENT ................................................................................8

I.    MATTEL'S MOTION FOR ISSUE SANCTIONS IS FRIVOLOUS ...........8

    A.    No Issue Sanction Can Be Imposed Where MGA Has Fully Complied With The Relevant Orders ..................................................8

    B.    Judicial Estoppel Supplies No Ground For Issue Sanctions Against MGA; If Anyone, It Is Mattel Who Is Directly Estopped By The Prior Court Orders ...........................................................10

         1.    The MGA Parties Are Not Subject To Judicial Estoppel .........11

         2.    Mattel Is Directly Estopped By Its Prior Stipulation And The Prior Court Orders ...............................................13

II.    MATTEL'S REQUEST FOR ALTERNATIVE RELIEF IS AN UNTIMELY AND MERITLESS OBJECTION TO THE DISCOVERY MASTER'S MAY 18, 2009 ORDER ..................................14

    A.    Mattel's Request For Alternative Relief Is Simply An Untimely Objection To The Discovery Master's Order ....................................14

    B.    Even Were The Court To Consider An Untimely Challenge To The Discovery Master's Order, Which It Should Not, That Challenge Should Be Rejected .........................................................15

         1.    The Plain Language Of The Inspection Order Limited Review To Deleted Files ...............................................17

         2.    Mattel Failed To Show How "All" Active Files Are Relevant ...........................................................17

         3.    Mattel Is Not Otherwise Entitled To Unrestricted Access To Mr. Larian's Hard Drives ........................................18

         4.    Unfettered Access To Active Files Will Endanger The Attorney-Client Privilege And Privacy Rights .......................19

1

# TABLE OF AUTHORITIES

2

3

**FEDERAL CASES** **Page**

4

*Concrete Pipe & Prods. of Cal., Inc.* v. *Constrs. Laborers Pension Trust*,

5

508 U.S. 602 (1993).......................................................................................16

6

*Disimone* v. *Browner*, 121 F.3d 1262 (9th Cir. 1997) ...........................................14

7

*Folb* v. *Motion Picture Indus. Pension & Health Plans*,

8

16 F. Supp. 3d 1164, 1168 (C.D. Cal. 1998) ...................................................15

9

*Grimes* v. *City and County of San Francisco*, 951 F.2d 236 (9th Cir. 1991) .........16

10

*Hamilton* v. *State Farm Fire & Cas. Co.*, 270 F.3d 778 (9th Cir. 2001)...............11

11

*Kern River Gas Transmission Co.* v. *6.17 Acres of Land, More or Less, in*

12

*Salt Lake Cty, Utah*, 156 Fed. Appx. 96, 99-100 (10th Cir. 2005)...................10

13

*Polec* v. *Nw. Airlines (In re Air Crash Disaster)*, 86 F.3d 498 (6th Cir. 1996)......18

14

*Reilly* v. *NatWest Mkts. Group, Inc.*, 181 F.3d 253 (2d Cir. 1999) .......................10

15

16

*Rissetto* v. *Plumbers & Steamfitters Local 343*, 94 F.3d 597 (9th Cir. 1996) ........11

17

*School District 1J, Multnomah County* v. *ACandS, Inc.*,

5 F.3d 1255 (9th Cir. 1993)...........................................................................15

18

19

*Simpson* v. *Lear Astronics Corp.*, 77 F.3d 1170 (9th Cir. 1996)...........................15

20

*Smith* v. *Massachusetts*, 543 U.S. 462 (2005) .....................................................15

21

*Unigard Sec. Ins. Co.* v. *Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363 (9th

22

Cir. 1991)..........................................................................................................9

23

*United States* v. *Bauer*, 132 F.3d 504 (9th Cir. Cal. 1997) ...................................19

24

*United States* v. *Hook*, 195 F.3d 299 (7th Cir. 1999)...........................................11

25

*United States* v. *Lummi Indian Tribe*, 235 F.3d 443 (9th Cir. 2000)....................14

26

# DOCKETED CASES

27

*Davis* v. *Nevarez*, No. 3:07-CV-00427-EJL-LMB, 2009 WL 1468705

28

(D. Idaho, May 22, 2009)..............................................................................10

# TABLE OF AUTHORITIES
## (continued)

**Page**

## FEDERAL STATUTES

Fed.R.Civ.P. 26.................................................................................................6

Fed.R.Civ.P. 34(a) ...................................................................................6, 7, 14

Fed. R. Civ. P. 37(b)(2).......................................................................................18

Fed.R.Civ.P. 72..........................................................................................14, 15

1

## INTRODUCTION AND SUMMARY OF ARGUMENT

2   Despite Mattel's long, documented history of urging production only of the

3   deleted files on Mr. Larian's hard drives to support its spoliation allegations, Mattel

4   now improperly seeks to broaden the Court's prior Order related to such inspection

5   to discover *all* documents on his hard drives—in a fishing expedition to support its

6   other allegations.  The Discovery Master correctly concluded that the record does

7   not and cannot support such a request:  the Court's February 27, 2008 Inspection

8   Order is limited in scope to determine the extent to which files were deleted and

9   whether they can be recovered.  In addition, Mattel *agreed* not to review the content

10  of active user generated files because it was unnecessary for any spoliation analysis.

11  MGA's expert criticized Mattel's expert not because he failed to examine the

12  contents of the active files, but because he failed to perform several admittedly

13  valid techniques that did *not* require access to the contents of those files.  Moreover,

14  the overbreadth, invasion of privacy and burden analysis has not change in any way

15  with respect to Mr. Larian's hard drives, and neither should the Court's position.

16  Mattel should not be permitted to have access to the entire contents of Mr. Larian's

17  hard drives, and there is no unfairness to its forensic expert in the absence of such

18  access.  The Motion should be denied in its entirety.

19  Mattel's request for issue sanctions lacks any merit.  Insofar as its request for

20  issue sanctions is founded upon Rule 37(b), Mattel has not and cannot identify any

21  order requiring the production of all of Mr. Larian's active files.  MGA and

22  Mr. Larian have complied with every order on this subject.  Part I(A), *infra.*.

23  Insofar as its request for issue sanctions is founded upon judicial estoppel, Mattel

24  has not identified any inconsistent position taken by MGA or unfair disadvantage to

25  Mattel.  Rather, it is Mattel who should be estopped from seeking access to

26  Mr. Larian's active files.  Part I(B), *infra.*

27  Mattel's "alternative" relief must also be denied.  It is an untimely objection

28  to the Discovery Master's May 19 Order.  Part II(A), *infra.*  Even were this

untimely challenge to Discovery Master O'Brien's May 19 Order considered, it should be rejected for the same reasons that Mattel previously stipulated and the Discovery Master ordered that access to active files was neither necessary nor appropriate.  The contents of Mr. Larian's active files will not assist Mattel in determining whether files have been deleted, which files have been deleted, or whether deleted files can be recovered.  And rummaging through the contents of those files would be an impermissibly overbroad and burdensome exercise.  Part II(B), *infra*.

## STATEMENT OF FACTS

### A.    Mattel's First Request To Access to Mr. Larian's Hard Drives

On June 13, 2007, Mattel served its First Set of Requests for Production of Documents to Isaac Larian seeking 276 categories of documents.  Searcy Decl. Ex. 3.  Request Nos. 222 and 224 sought the production of Mr. Larian's "storage device[s] used to create, prepare, generate, copy, transmit, receive, delete or modify any digital information relating to Bratz, Angel or Bryant," as well as documentation related to the purchase or disposition of those devices.  *Id*. Ex. 3 at 81-82.  Mr. Larian objected to the production of his hard drives on relevancy, privacy and privilege grounds, among others.  Declaration of Annette L. Hurst in Support of MGA Parties' Opposition to Motion for Preclusive Relief ("Hurst Decl."), Decl. Ex. A at 212-213.

On October 11, 2007, Mattel moved to compel production of Mr. Larian's hard drives to find evidence "that goes to explicit allegations made in its counterclaims," namely, spoliation of evidence.  Docket No. 2186[1] at 25:6-7, 16-20; Hurst Decl. Ex. D at 284:5-7 ("We need access to those hard drives, so we can image them to seek what was destroyed"); *see generally* Searcy Decl. Ex. 4 (Mot.

---

[1] Docket No. 2186, Mattel's Reply Memorandum In Support Of Mattel, Inc.'s Motion Objecting To Portions Of Discovery Master's December 31, 2007 Order Regarding Hard Drives, was previously filed with the Court and is being lodged concurrently with the MGA Parties' Opposition.  It has been consecutively numbered pursuant to Local Rule.

to Compel).  Discovery Master Edward Infante denied Mattel's motion to compel production.  Searcy Decl. Ex. 5.  In seeking to overturn Judge Infante's ruling that it was not entitled to inspect Mr. Larian's hard drives, Mattel argued that "[s]poliation is an element of Mattel's RICO claim and would also support an evidentiary inference of intent and guilty knowledge on defendants' part."  Docket No. 2186 at 27:8-10.  The Court overruled Judge Infante's Order, calling it "clearly erroneous and contrary to law" and ordered the inspection.  Searcy Decl. Ex. 6 at 132:14-15.

> **B.  Mattel Agrees Undeleted, User-Generated Files Are Irrelevant To Its Assertion Of Spoliation.**

The February 2008 Order required Mr. Larian to produce his computer hard drives so Mattel's forensic consultant could inspect them for evidence of spoliation. *Id*. Ex. 6.  In support of its motion, Mattel had argued that its requests for production were narrowly tailored to discover evidence of improperly deleted files and were "the antithesis of a "fishing expedition": they are intended to demonstrate that the fish are gone."  Docket No. 2186 at 24:14-16.

At the hearing, the Court confirmed that Mattel sought production of the hard drives "to prove up the allegation that documents were deleted … and that the hard drives need to be inspected by [Mattel] for that purpose."  Hurst Decl. Ex. B at 261:5-11.  Mattel agreed and reiterated the goal of its proposed inspection:

> Mr. Quinn:  … we are seeking this evidence to prove the predicate act of deletion of information from the hard drives.
>
> The Court:  As opposed to the actual documents on the hard drives themselves.
>
> Mr. Quinn:  Yes.  Exactly.

*Id*. at 264:15-20.  The Court then ordered the production and inspection within the following parameters:

> Mattel's consultant shall have the right to inspect any and all information on said hard drives to determine:

3

(a) whether, when and by whom any information was deleted, destroyed, written over, lost, exported, moved, spoliated or otherwise rendered inaccessible or unreadable;

(b) whether, when and by whom any attempts were made to delete, destroy, write over, export, move, spoliate or otherwise render inaccessible or unreadable any information on those hard drives;

(c) the current or past presence or use of any hardware or software tool to accomplish any of the actions identified above;

(d) whether any information deleted, destroyed, written over, lost, exported, moved, spoliated or otherwise rendered inaccessible or unreadable may be recovered; and

(e) to recover any such information, in whole or in part.

Searcy Decl. Ex. 6 (the "Inspection Order") at 133:4-17.

*After* entry of the Inspection Order, in May 2008, Mattel drafted a stipulated protocol governing the execution of the Larian drive inspection. The protocol provides in relevant part:

With respect to the hard drives, [Mattel's consultant] 42 Consulting, LLC, may inspect the images of the hard drives in their entirety, including … metadata for all files (allocated and unallocated) … . Notwithstanding the foregoing, 42 Consulting, LLC shall not access the user generated content of any active file that exists on the hard drives. …

*Id*. Ex. 8 at 159, ¶ 6. In May 2008, Mr. Larian turned over seven computer hard drives for inspection and analysis. Mattel's expert inspected and analyzed the media over the course of forty-three days and documented his findings in a June 2008 "Preliminary Examination Report." *Id*. Ex. 7. That initial report, authored by Christopher Pavan, concluded that the drives contained evidence of improper deletion. *Id.* at 137.

## C. **MGA's Expert Challenges Mattel's Findings On Spoliation**

In response to Pavan's report, MGA's expert opined that Pavan "could have but chose not to determine whether" deleted files were otherwise active on one of

4

1   Mr. Larian's seven hard drives.  *Id*. Ex. 2 at 9.  The methods identified that had not

2   been used included, *inter alia*, using fingerprints generated by hash algorithms that

3   compare the contents of files to determine whether they are identical.  *Id*. Ex. 2 at 9;

4   Hurst Decl. Ex. C at 279:17-280:9.  By running such an analysis on two files they

5   can be compared without any review of the contents.  Searcy Decl. Ex. 2 at 9.  Such

6   further analysis would have assisted Mattel's consultant in determining that,

7   although a file (*e.g*., a Word document) may have been deleted on one of

8   Mr. Larian's hard drives, the same document, in fact, was active (or not deleted) on

9   one or more of his other hard drives.  *Id*. Ex. 2 at 14 ("Thus, although 42 LLC's

10  analysis identified a number of deleted user-created documents on the Larian

11  Media, it chose not to determine whether those documents might be active and

12  accessible in other places on the Larian Media.  Indeed, … Mr. Pavan stated that he

13  had not searched the Larian Media for active versions of the deleted files, and that,

14  'had I found [the deleted files] … existed somewhere else I would … not have

15  included them'"); Hurst Decl. Ex. C at 274:14-275:20; 277:25-278:4.  Mattel's

16  expert agreed that comparing hash values would have been a "very valid technique"

17  that would have matched active file "fingerprints" to their deleted counterparts.

18  Mot. at 11:16-18; Hurst Decl. Ex. C at 279:23-280:9.  42 Consulting apparently

19  cared little for the fairness of its analysis, however, since that concededly valid

20  alternative technique, which might have wholly undermined its preliminary

21  conclusion, was "not on the list of things to get done in priority order."  Hurst Decl.

22  Ex. C at 279:4-14.

23         Thus, MGA criticized Mattel not for failing to review content of active files

24  but for failing to assess whether files it thought were deleted from one machine

25  were alive and well on one of the other six Larian hard drives being inspected.

26  Searcy Decl. Ex. 2 at 7, 14.  Specifically, Mattel's experts could have, as noted,

27  "search[ed] hash values" of active files (Hurst Decl. Ex. C at 279:17-280:9) to find

28  matches to deleted files, compared files in the allocated (*i.e*., active) space on the

1   hard drives with those files Mattel determined had been deleted (*id.* at 274:14-

2   275:20; 279:4-16), or reviewed the metadata of active and deleted files (*id.* at

3   273:6-8; Searcy Decl. Ex. 8 at 159, ¶ 6) to ascertain any matches.  Each of these

4   forensically sound methods could have been performed without opening a single

5   nondeleted file on Mr. Larian's computer.  Searcy Decl. Ex. 2 at 9 ("… although

6   unable to view the content of active files on the Larian Media, 42 LLC could …

7   [listing various forensic techniques for reconciling deleted versus nondeleted

8   files]").

9          **D.    Mattel Seeks A "Supplemental" Production**

10         After its original inspection of Mr. Larian's hard drives, Mattel requested that

11  Mr. Larian "supplement" his hard drive production pursuant to Fed.R.Civ.P. 26(e).

12  *See Id.* Exs. 11, 12.  This "supplementation" request included for the first time a

13  request for the active files.  *Id.*  Unsurprisingly, the MGA Parties resisted the

14  expanded scope of this "supplemental" production—so Mattel filed a motion to

15  compel.  *Id.* Exs. 16-19.  In its motion to compel, Mattel sought to gain access to

16  the contents of all nondeleted files on Mr. Larian's hard drives.  *Id.* Ex. 16 at 338,

17  n10.  These nondeleted, or active, files include *all e-mail*, as well as all other

18  documents created or stored by Mr. Larian using programs such Microsoft Word,

19  Excel, PowerPoint, and the like.  Mattel argued that it was entitled to access the

20  entire contents of all of these active files for two reasons:  first, because MGA's

21  expert had criticized Mattel for failing to do so during its earlier analysis; and

22  second, because some documents on Mr. Larian's hard drives would be relevant to

23  the pending claims.  *Id.* Exs. 19 at 413:22-24; 16 at 347:6-10.  Discovery Master

24  O'Brien rejected both of these contentions.

25         As to the first point, as set out above, MGA's expert in fact opined that

26  Mattel's consultant should have compared the electronic *fingerprint* of deleted and

27  nondeleted files using methods that did not require Mattel to transgress the

28  prohibition on opening "active" files to review their content.  *Id.* Ex. 2 at 9

1    ("Effectively, then, although unable to view the content of active files on the Larian

2    Media, 42 LLC could … and chose not to [for example] determine whether deleted

3    files resided in active space across the Larian Media through file name comparison

4    and hash file analysis …").  Thus, the criticism was *not* in any way founded upon

5    the contents of the active files—rather on the failure to carry out a procedure that

6    required no access to the contents of those files.  *Id.*  Discovery Master O'Brien

7    confirmed this view in his findings rejecting Mattel's motion:  "there is no

8    connection between Mattel's claim that it is entitled to view *active files* and the

9    inspection permitted by the Court relating to *deleted files*."  *Id.* Ex. 12 at 187:5-7.

10          On the second point, Discovery Master O'Brien also rejected the overbroad

11    and burdensome request for the entire contents of Mr. Larian's hard drive.  *Id.* at

12    189:23-24.  This was precisely the type of "fishing expedition" that Discovery

13    Master Infante rejected when Mattel first sought production of the hard drives, as

14    well as the type of review Mattel argued it was not interested in pursuing.  *Id*. Ex. 5

15    at 124:1-15; Hurst Decl. Exs. B at 264:15-20; D at 284:5-7 ("We need access to

16    those hard drives, so we can image them to seek what was destroyed").  Discovery

17    Master O'Brien thus found that a supplemental production was appropriate only

18    within the parameters of the Court's Inspection Order.  Searcy Decl. Exs. 12 at

19    289:12-22; 6 at 133:4-17.  That Order included the parties' agreement prohibiting

20    Mattel's consultant from opening nondeleted files to review the content (*i.e.*,

21    "access[ing] the content of user generated active files").  *Id.* Exs. 8 at 159, ¶ 6; 12 at

22    289:23-24.  Discovery Master O'Brien thus denied Mattel's request insofar as it

23    ventured into review of nondeleted files for purposes beyond the scope of this

24    Court's earlier Order.  *Id*. Ex. 12 at 289:23-24.  As he pointed out, "[t]he fact that

25    Mattel's counsel agreed [not to access user generated content of any active file]

26    following the issuance of the Court's February 27, 2008 Order suggests that even

27    Mattel realizes the … Order was not designed to allow it access to active files on

28    the Hard Drives." *Id*. Ex. 12 at 187, n 6.

1

**ARGUMENT**

2

**I.      MATTEL'S MOTION FOR ISSUE SANCTIONS IS FRIVOLOUS.**

3       Mattel's expert Pavan failed to perform an analysis on Mr. Larian's hard

4   drives that required no access to the contents of the active files, but would have

5   provided more accurate information about whether any files had been permanently

6   deleted.  Mr. Pavan was rightfully criticized by MGA's expert for having failed to

7   perform that alternative analysis.  Mattel now either misunderstands or

8   mischaracterizes that criticism, putting it forth as a basis for gaining access to the

9   contents of Mr. Larian's active files that is not and was never needed to perform the

10   alternative analysis.  On that basis, Mattel seeks an order from this Court

11   precluding the MGA Parties from challenging Mattel's allegations of spoliation.

12   Mot. at 8.  In support, Mattel offers two equally untenable legal theories:  Rule

13   37(b) and the doctrine of judicial estoppel.

14       As demonstrated below, Mattel comes nowhere near to establishing the

15   requirements for such sanctions, which, in all events would be entirely

16   inappropriate on this factual record.  First, Mattel has failed to establish that the

17   MGA Parties violated any prior order of this Court as required for issue sanctions—

18   to the contrary, Mattel's complaint is that MGA and Mr. Larian have complied with

19   prior orders to which it stipulated but that it now does not like.  Part A, *infra*.

20   Second, judicial estoppel can serve as no substitute ground here for issue sanctions.

21   If anyone should be estopped on the issue of the scope of review of the Larian hard

22   drives, it is Mattel.  Part B, *infra*.

23       **A.      No Issue Sanction Can Be Imposed Where MGA Has Fully
            Complied With The Relevant Orders.**

24

25       A fundamental prerequisite to the grant of issue sanctions under Rule 37(b) is

26   the violation of a prior court order.  Fed. R. Civ. P. 37(b)(2)(A) ("If a party or a

27   party's officer, director, or managing agent … *fails to obey an order* to provide or

28   permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where

MGA PARTIES' OPPOSITION TO
                                                                                    MOTION FOR PRECLUSIVE RELIEF
                                                                                    CV 04-9049 SGL (RNBx)

1   the action is pending may issue further just orders.") (emphasis added); *see, e.g.,*

2   *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 367 (9th

3   Cir. 1991).  Mattel has not identified any order pursuant to which any MGA party is

4   required to allow Mattel to review the contents of nondeleted files on Mr. Larian's

5   hard drives.

6         The Inspection Order was not an order requiring production of active files.

7   Rather, that Order required the production of Mr. Larian's computer hard drives to

8   allow Mattel's consultant to search for evidence of *deleted* files and, if any were

9   found, to recover them.  Searcy Decl. Ex. 6 at 133:4-17.  By definition, access to

10  the contents of the active files was unnecessary to perform that task.  Indeed, at the

11  hearing during which it sought the Inspection Order, Mattel expressly represented

12  that it required no access to the actual documents on Mr. Larian's active files in

13  order to perform such an analysis.  Hurst Decl. Ex. B at 264:15-20.  Consistent with

14  its representation at the hearing, shortly after the Court entered its Order, Mattel

15  drafted a stipulated protocol governing the inspection which *expressly prohibited* its

16  consultant from "access[ing] the user generated content of any active file that exists

17  on the hard drives."  Searcy Decl. Ex. 8 at 159, ¶ 6.  MGA and Mr. Larian then

18  produced the hard drives pursuant to the stipulated protocol and as required by the

19  Inspection Order, and Mattel's expert, Mr. Pavan, performed the inspection and

20  analysis pursuant to the Inspection Order, and the stipulated protocol governing it.

21  *Id*. Ex. 7 at 135.  Given this procedural history, as well as the overbreadth, invasion

22  of privacy, invasion of the attorney-client privilege, and extreme burden that would

23  have been imposed by permitting review of Mr. Larian's active files, it is plain that

24  the February 27 Order did not require production of the active files.  Mattel's

25  assertion that the February 27 Inspection Order authorized Mattel to gain access to

26  the contents of all of Mr. Larian's active files must be rejected—as Discovery

27  Master O'Brien found.

28        It was only much later, long after the Inspection Order, that Mattel sought an

1   order expressly permitting it to review active files on Mr. Larian's hard drives.  The

2   Discovery Master rejected that request.  *Id.* Exs. 17-19, 12.  Absent an order, Mattel

3   is not entitled to review active files, and no MGA party has been required to

4   produce them.  *See id.* Exs. 6 at 133:4-17; 8 at 159, ¶ 6.  MGA and Mr. Larian have

5   produced the hard drives they were required to produce and the analysis authorized

6   by the Court was performed.  *See id.* Exs. 2, 7.  Issue sanctions are wholly

7   inappropriate.

8        Mattel's cases support this conclusion.  In each case upon which it relies

9   where issue sanctions were granted under Rule 37(b), there was a prior order with

10  which a party had failed to comply.  In *Davis v. Nevarez*, No. 3:07-CV-00427-EJL-

11  LMB, 2009 WL 1468705, at *5 (D. Idaho, May 22, 2009), the court excluded

12  defendant's testimony at trial because he failed to appear for deposition despite

13  court order to do so.  In *Kern River Gas Transmission Co. v. 6.17 Acres of Land,*

14  *More or Less, in Salt Lake Cty, Utah*, 156 Fed. Appx. 96, 99-100 (10th Cir. 2005),

15  the court precluded the defendant from introducing expert testimony at trial because

16  it failed to comply with court-ordered disclosure of experts.  And in *Reilly v.*

17  *NatWest Mkts. Group, Inc.*, 181 F.3d 253, 269 (2d Cir. 1999), the corporation failed

18  to produce a person with sufficient knowledge in response to rule 30(b)(6)

19  deposition notice and the court excluded testimony at trial from other witnesses

20  with more knowledge on the subject because the corporation violated the court's

21  order requiring timely disclosure.  No such facts exist here, and Mattel offers no

22  basis for issuing evidentiary sanctions against any MGA party.  Its request for

23  sanctions must be denied.

24     **B.     Judicial Estoppel Supplies No Ground For Issue Sanctions Against MGA; If Anyone, It Is Mattel Who Is Directly Estopped By The Prior Court Orders.**

25

26        Mattel next argues that the MGA Parties should be judicially estopped from

27  "using active files, or Mattel's failure to examine them" to demonstrate that

28  Mr. Larian did not improperly delete his electronic files.  Mot. at 10:1-3.  Again,

1    this contention should be soundly rejected.

2        Judicial estoppel is an equitable doctrine that precludes a party from gaining

3    an advantage by asserting one position, and then later seeking an advantage by

4    taking a clearly inconsistent position. *Rissetto v. Plumbers & Steamfitters Local*

5    *343*, 94 F.3d 597, 600-601 (9th Cir. 1996).  There are three requirements for

6    application of judicial estoppel:  (1) inconsistency of position; (2) judicial

7    acceptance of the earlier position; and (3) unfair disadvantage. *Hamilton v. State*

8    *Farm Fire & Cas. Co.,* 270 F.3d 778, 782 (9th Cir. 2001); *United States v. Hook*,

9    195 F.3d 299, 306 (7th Cir. 1999).  Mattel cannot meet these fundamental

10   requirements here because MGA has taken no inconsistent position to Mattel's

11   disadvantage (Part 1, *infra*), and in fact Mattel is directly estopped by the prior

12   orders on this issue which are the law of this case.  Part 2, *infra*.

### 1.    <u>The MGA Parties Are Not Subject To Judicial Estoppel.</u>

14       The MGA Parties have consistently maintained that Mattel should not be

15   given access to the content of the active files on Mr. Larian's hard drives, and that

16   no such review is necessary to determine whether materials were improperly

17   deleted from his computer.  *See* Searcy Decl. Exs. 2 at 9 ("Although unable to view

18   the content of active files on the Larian Media…"); 12 at 182:2-6; 17 at Sections E,

19   F, G, H.  The proper attack on Mr. Pavan's opinion was no exception to this

20   consistent position.  MGA's expert, Samuel Rubin, challenged Mr. Pavan not

21   because he failed to review the *content* of any active files, but because he failed to

22   perform a valid procedure that rested in no way on access to the content of the

23   active files, and instead was a procedure that could have been performed (but was

24   not) without such access.  *Id*. Ex. 2 at 9.

25       Mattel argues that, in an effort to prevent production of the contents of

26   Mr. Larian's seven hard drives, the MGA Parties asserted that "active user

27   generated files have nothing to do with any purported spoliation because such files

28   have not been deleted."  Mot. at 9:5-6.  Correct.  And, Mattel agreed with this

1  position, arguing that it was not looking to review "the actual documents on the

2  hard drives themselves," because it only sought evidence of deletion.  Hurst Decl.

3  Ex. B at 264:15-20.  The problem is that Mattel's expert Pavan then apparently

4  failed to conduct a complete analysis, or at least did not disclose the completion of

5  such analysis in his report.  Whether the analysis was in fact completed and the

6  results discarded because they were unfavorable; whether the expert avoided,

7  ignored, or his inquiry was directed away from, such exculpatory evidence; or

8  whether he was simply inadequate to the task, in no event was this MGA's fault nor

9  the product of any inconsistent position taken by MGA or its proffered witnesses.

10      Mattel contends that, in an effort to prevent the "supplemental production" of

11  Mr. Larian's hard drives in April 2009, the MGA Parties argued that Mattel's

12  expert "should have considered the contents of active files" when assessing whether

13  evidence was spoliated.  Mot. at 9:3-4.  Remarkably, Mattel offers no support for

14  this assertion. *Id.*  No MGA party has ever taken this position.  Instead, the MGA

15  Parties have consistently argued that the *content* of user-generated active files is

16  irrelevant to Mattel's assessment of whether Mr. Larian improperly deleted

17  electronic files from his hard drives.  Searcy Decl. Ex. 2 at 7, Ex. 17 at Sections E,

18  F, G, H.  The MGA Parties have not wavered from this position, and Mattel cannot

19  point to any facts that suggest otherwise.  Thus, the fundamental requirement for

20  application of judicial estoppel, that a party take inconsistent positions, is not met

21  here.

22      Unsurprisingly, since the MGA Parties took no inconsistent position, they

23  also have not been the beneficiary of any unfair advantage.  As discussed at length

24  above, the attack on the inadequacy of Mattel's expert analysis was carried out in a

25  fashion entirely consistent with the MGA Parties' contention that no review of the

26  content of active files should or need occur to assess the spoliation issue—as Mattel

27  has repeatedly admitted and this Court has previously found.

28

2.  **Mattel Is Directly Estopped By Its Prior Stipulation And The Prior Court Orders.**

In obtaining the Orders of this Court providing it limited access to Mr. Larian's hard drives, Mattel repeatedly urged the Court that this would not be intrusive because it need not review the contents of active files.  Hurst Decl. Ex. B at 264:17-20 ("Mr. Quinn:  … We are seeking this evidence to prove the predicate act of deletion of information from the hard drives. The Court:  As opposed to the actual documents on the hard drives themselves.  Mr. Quinn: Yes.  Exactly.");  Docket No. 2186 at 27:6-7 ("Mattel is seeking to discover evidence of spoliation by an analysis of what is not on the drives, when the information was deleted, and how.").  Mattel then drafted a stipulation governing the protocol for inspection of Mr. Larian's computers, whereby its own expert was expressly prohibited from "access[ing] the user generated content of any active file that exists on the hard drives."  Searcy Decl. Ex. 8 at 159, ¶ 6.  Mattel now complains that MGA unilaterally imposed that condition, but the agreement is on Mattel's counsel's letterhead, and frankly, this contention is ridiculous.  Mot. at 5:11-12.  This would mean that Mattel's counsel signed a stipulation without reading it.  Or agreed to something accidentally.  Certainly there is no basis to believe that the MGA Parties have ever unilaterally imposed anything on Mattel in this action.  When Mattel has a problem, it never hesitates to bring it to the Court's attention.  If the stipulation were not its own, we would have heard about it long before now.

Rather, Mattel faced the prospect of denial of its motion for full access to the hard drives.  Such access is highly intrusive, plainly is vastly overbroad in that it encompasses numerous materials that have nothing to do with this lawsuit, and furthermore creates an extreme burden in connection with the protection of the attorney-client privilege.  Searcy Decl. Ex. 17 at Sections D, F, G, & H.  Given the fashion in which Mattel previously urged its position, and obtained the right to a limited review of the hard drives, it is Mattel who is estopped from taking a

13

1   contrary position—both by concepts of unfair advantage and by direct estoppel, or

2   law of the case.  "No litigant deserves an opportunity to go over the same ground

3   twice, hoping that the passage of time or changes in the composition of the court

4   will provide a more favorable result the second time." *Disimone v. Browner*, 121

5   F.3d 1262, 1266 (9th Cir. 1997); *see also id.* at 1266-67 (noting that "where

6   litigants have once battled for the court's decision, they should neither be required,

7   nor without good reason permitted, to battle for it again."  (citations omitted));

8   *United States v. Lummi Indian Tribe*, 235 F.3d 443, 452 (9th Cir. 2000) (noting that

9   a court should generally refrain from "reconsidering an issue previously decided by

10  the same court, or a higher court in the identical case.").

11          Mattel is the party estopped from asserting full access to Mr. Larian's hard

12  drives for the purpose of a spoliation analysis.

13  **II.    MATTEL'S REQUEST FOR ALTERNATIVE RELIEF IS AN**
**UNTIMELY AND MERITLESS OBJECTION TO THE DISCOVERY**
14  **MASTER'S MAY 18, 2009 ORDER.**

15          Approximately one year after first analyzing Mr. Larian's hard drives, Mattel

16  sought a supplemental production pursuant to Fed.R.Civ.P. 26(e).  The Discovery

17  Master granted Mattel's request for supplementation, but denied the remainder of

18  its motion insofar as it requested access to all active files on Mr. Larian's hard

19  drives.  Mattel now seeks improperly to overturn the latter portion of Mr. O'Brien's

20  order.  Such a challenge is both untimely (Part A, *infra*), and meritless.  Part B,

21  *infra*.

22          **A.      Mattel's Request For Alternative Relief Is Simply An Untimely**
**Objection To The Discovery Master's Order.**
23

24          As set out in detail herein, the thrust of the Motion is that if MGA is not

25  precluded from presenting evidence contrary to Mattel's spoliation theory, then

26  Discovery Master O'Brien's Order No. 34 should be overruled as "clearly

27  erroneous."  Mot. at 10:23-14:15.  Mattel's alternative motion is, in essence, a Rule

28  72(a) objection to Discovery Master O'Brien's May 18, 2009 Order No. 34.  But

that objection is untimely.  Rule 72 provides that "[a] party may serve and file objections to the order *within 10 days* after being served with a copy.  A party may not assign as error a defect in the order not timely objected to."  Fed.R.Civ.P. 72(a) (emphasis added); *see also* Civ.L.R. 72-2.1 ("Such motion shall be filed within … ten (10) days of service of a written ruling").  The Discovery Master's rulings are treated like those of a magistrate judge and thus Rule 72 governs.  Searcy Decl. Ex. 14, ¶ 6.  The ten day period for filing objections to Order No. 34 expired nearly a month before this Motion was brought.  Mattel's "alternative" requested relief must therefore be denied as an untimely objection to that Order.  *See Simpson v. Lear Astronics Corp.*, 77 F.3d 1170, 1174-75 (9th Cir. 1996) (noting that failure to timely object forfeits the right to appeal magistrates decision because, among other things, it deprives the district court of the ability to review the decision); *see also, e.g., Folb v. Motion Picture Indus. Pension & Health Plans*, 16 F. Supp. 3d 1164, 1168 (C.D. Cal. 1998) ("A party who fails to file timely objections to a magistrate judge's ruling on a nondispositive motion within ten days forfeits the right to challenge the ruling.").[2]

**B.    Even Were The Court To Consider An Untimely Challenge To The Discovery Master's Order, Which It Should Not, That Challenge Should Be Rejected.**

Having been granted access to Mr. Larian's hard drives a second time, Mattel now seeks to expand the Court's Inspection Order and rescind the parties'

---

[2] Mattel's footnote requesting even further alternative relief in the form of reconsideration also must be rejected.  Mot. at 11, fn 33.  Mattel relies on *Smith v. Massachusetts*, 543 U.S. 462, 475 (2005), for the proposition that the Court may "reconsider" the Discovery Master's ruling.  *Smith* is inapposite.  The Federal Rules provide a mechanism for a District Judge to review and correct, if necessary, a Magistrate Judge's (or Discovery Master's) ruling when it is clearly erroneous or contrary to law.  Fed.R.Civ.P. 72(a).  A motion for reconsideration, however, is only appropriate in circumstances where a District Court is asked to review its own orders after it (1) is presented with newly discovered evidence; (2) has committed clear error or the initial decision was manifestly unjust; or (3) is presented with an intervening change in controlling law. *School District 1J, Multnomah County v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir.1993), cert. denied, 512 U.S. 1236, 114 S.Ct. 2742, 129 L.Ed.2d 861 (1994).  Otherwise, Rule 72's limitations would be meaningless.  Mattel makes no effort to demonstrate it meets any one of these requirements.

1   agreement limiting the scope of its expert's review.  In so doing, Mattel challenges

2   the Discovery Master's findings that "Mattel does not have the right to rifle through

3   Larian's electronic files looking for unspecified information."  Mot. at 13:6-11.

4   Mattel argues that none of the reasons relied upon by Mr. O'Brien in reaching this

5   conclusion "is implicated by access to active files for the purpose of analyzing and

6   recovering deleted files."  *Id.* at 13:12-14.  At least with this argument Mattel

7   admits that it is mounting an untimely direct challenge to Discovery Master

8   O'Brien's Order.  But Mattel utterly fails to meet the clearly erroneous standard of

9   review governing these findings.  Indeed, Mattel does not even cite the pertinent

10  authorities delimiting the appropriate scope of review of a special master's orders.

11      Mattel's motion for supplementation included a request for an order

12  permitting it to review active files because "documents on Larian hard drives … are

13  relevant to numerous claims, including Mattel's copyright infringement, theft of

14  trade secret and unfair competition claims and MGA's trade dress and unfair

15  competition claims."  Searcy Decl. Ex. 16 at 347:6-10.  This new request was

16  inconsistent with Mattel's original request for production, sought to expand the

17  Court's Inspection Order, and seeks to rescind the parties' protocol governing the

18  inspection.  Mr. O'Brien rejected Mattel's request for four reasons, each of which

19  was found sufficient to deny Mattel's request altogether.  *Id.* Ex. 12 at 9-11.

20      Mattel contends Order No. 34, insofar as it denies access to active files, is

21  clearly erroneous.  "A non-dispositive order entered by a magistrate must be

22  deferred to unless it is 'clearly erroneous or contrary to law.'"  *Grimes v. City and

23  County of San Francisco*,  951 F.2d 236, 241 (9th Cir. 1991).  "Under this standard,

24  the district court should overturn the magistrate judge's ruling only when the

25  district court is 'left with the definite and firm conviction that a mistake has been

26  committed.'"  *Concrete Pipe & Prods. of Cal., Inc. v. Constrs. Laborers Pension

27  Trust*, 508 U.S. 602, 622 (1993).  Mr. O'Brien's Order is not clearly erroneous but

28  is, instead in all respects correct and fully supported by the factual record and

1  pertinent authorities; thus, were the Court to consider this improper motion

2  presenting an untimely objection to that Order, the Order should nonetheless be

3  affirmed.

### 1. The Plain Language Of The Inspection Order Limited Review To Deleted Files.

6  The Discovery Master's first basis for rejecting Mattel's request was that the

7  plain language of the Inspection Order limited the scope of the inspection, and that

8  scope does not include "active user generated files."  Searcy Decl. Ex. 12 at 9-10;

9  *see also* Ex. 17 at 371:12-14 ("The Order expressly limited Mattel's inspection of

10  Mr. Larian's hard drives solely to an expert's examination for the purpose of

11  determining whether electronic evidence had been destroyed.").

12  In urging the Court to permit the inspection, Mattel argued that it sought

13  evidence "of what is *not* on the drives, when the information was deleted, and

14  how."  Docket No. 2186 at 27:6-7.  At the February 25, 2008, hearing on this issue,

15  the Court confirmed that Mattel was not interested in "the actual documents," to

16  which Mattel answered "Yes. Exactly."  Hurst Decl. Ex. B at 264:15-20.  The Court

17  then issued the Inspection Order, which is "expressly limited … to determining

18  whether anyone had 'deleted, destroyed, written over, lost, exported, moved,

19  spoliated or otherwise rendered inaccessible or unreadable' any information on the

20  Hard Drives."  Searcy Decl. Ex. 12 at 187:2-4.  Mr. O'Brien also did not lose sight

21  of the fact that Mattel *agreed* not to access user generated content, thereby

22  suggesting that Mattel realized the Court's Order "was not designed to allow it

23  access to active files."  *Id.* Ex. 12 at 187, fn 6; Ex. 8 at 159, ¶ 6.

24  On these facts, the Discovery Master was correct in concluding that the

25  Inspection Order is limited in scope to reviewing deleted files.

### 2. Mattel Failed To Show How "All" Active Files Are Relevant.

27  Mr. O'Brien also found that Mattel failed to show that "all active files on the

28  Hard Drives are reasonably calculated to lead to the discovery of admissible

1   evidence regarding a Phase 2 issue" and, thus, the request is overbroad and

2   "improperly seeks to discover irrelevant information." *Id.* Ex. 12 at 187:15-19.

3   Mr. O'Brien specifically recognized that "[w]hat Mattel is essentially requesting is

4   that it should be allowed to access any content on the Hard Drives whether or not

5   those active files have any relevance to a claim or defense in this case." *Id.* at

6   187:13-15.  He also correctly noted that the issue is "whether Larian is required to

7   supplement the *discovery response* in question …"  (*id.* Ex. 12 at 184:19-21) and,

8   thus, unrestricted access to all information on Mr. Larian's hard drives is beyond

9   the scope of the Inspection Order and any reasonable discovery requests.  *Polec v.*

10  *Nw.  Airlines (In re Air Crash Disaster)*, 86 F.3d 498, 539 (6th Cir. 1996) ("Rule

11  26(e)(2) requires that a party supplement a discovery response in certain

12  circumstances. It does not require that a party volunteer information not fairly

13  encompassed by the earlier request").

14      If Mattel seeks discovery into issues unrelated to deletion, it should propound

15  discovery requests.  Its first road to discovery should not be to open up every

16  electronic file on Mr. Larian's hard drives.  Mr. O'Brien was correct to conclude

17  that wholesale access to Mr. Larian's hard drives is inappropriate because those

18  drives contain many documents and much information wholly irrelevant to this

19  action.

20      **3.      Mattel Is Not Otherwise Entitled To Unrestricted Access To**
           **Mr. Larian's Hard Drives.**

21

22      The Discovery Master also denied Mattel's request to review active files on

23  the ground that Mattel does not have the right to unrestricted access to every file on

24  Mr. Larian's hard drives.  Searcy Decl. Ex. 12 at 187:12-24.  As the MGA Parties

25  noted "having a right to *documents* does not give Mattel a right to the *media* on

26  which those documents reside."  *Id.* Ex. 17 at 371:4-6.  *See* Fed.R.Civ.P. 34(a)(1)

27  Adv. Comm. Notes (Amendment of Rule 34 relating to "electronically stored

28  information is not meant to create a routine right of direct access to a party's

1  electronic information system, although such access might be justified in some

2  circumstances. Courts should guard against undue intrusiveness resulting from

3  inspecting or testing such systems."). "Mattel has the right to ask [Mr. Larian] to

4  produce specific [non-privileged, relevant] documents; it does not have the right to

5  go into [his] electronic 'drawers' to see what is there."  Searcy Decl. Ex. 12 at

6  187:22-24.  Finding that this unfettered look-see approach "is precisely the relief

7  Mattel seeks," Mr. O'Brien correctly denied the request. *Id*. Ex. 12 at 187:24-11:1.

8      **4.**    **Unfettered Access To Active Files Will Endanger The**
    **Attorney-Client Privilege And Privacy Rights.**

9

10        Mr. O'Brien's fourth basis for denying Mattel's request is that unfettered

11  access to Mr. Larian's active files would unnecessarily endanger his privacy

12  interests, as well as the attorney-client privilege. *Id*. Ex. 12 at 188:2-13.  As

13  Mr. O'Brien pointed out "if Mattel is given access to all active files on the Hard

14  Drives, the Discovery Master cannot see how Larian can protect his privileged

15  information." *Id*. Ex. 12 at 188:5-6.  Indeed, the MGA Parties urged the Discovery

16  Master to deny Mattel's request for this very reason.  *Id*. Ex. 17 at 372:16-27.

17        Mattel suggests a protocol for protecting these interests, but because Mattel

18  has no legitimate purpose for accessing the active user generated files, such a

19  protocol is unwarranted.  Moreover, the protocol would in essence require the

20  MGA Parties' counsel to spend countless hours reviewing each and every document

21  on the drives, an unreasonable and atrociously expensive burden.  Indeed, in

22  recognition of this burden, the parties have long had an agreement that privileged

23  materials created after the commencement of the litigation need not be logged.

24  Now, Mattel not only seeks to contravene its own prior stipulation, but that

25  agreement as well.  As the Discovery Master found, "Larian should not be burdened

26  with" unnecessary undertakings "because there are less intrusive means by which

27  Mattel could obtain non-privileged, relevant documents, namely through document

28  requests." *Id*. Ex. 12 at 188:2-13.  *See United States v. Bauer*, 132 F.3d 504, 510

1  (the attorney-client privilege is "the most sacred of all legally recognized privileges,

2  and its preservation is essential to the just and orderly operation of our legal

3  system").

4       Based on the facts of this case, the Discovery Master properly denied

5  Mattel's request for access to active files.

6  **CONCLUSION**

7       For all of the foregoing reasons, Mattel's motion should be denied in its

8  entirety.

9

10  Dated:    July 27, 2009          Respectfully submitted,

11

12                            ORRICK, HERRINGTON & SUTCLIFFE LLP

13

14                            By: /s/ Annette Hurst /s/

15                               Annette Hurst
                               Attorneys for MGA Parties

16

17

18

19

20

21

22

23

24

25

26

27

28