QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 090378)
(johnquinn@quinnemanuel.com)
Michael T. Zeller (Bar No. 196417)
(michaelzeller@quinnemanuel.com)
Jon D. Corey (Bar No. 185066)
(joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Mattel, Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br>Consolidated with<br>Case No. CV 04-09039<br>Case No. CV 05-02727<br><br>**DISCOVERY MATTER**<br><br>**[To Be Heard By Discovery Master Robert O'Brien]**<br><br>**[PUBLIC REDACTED] MATTEL, INC.'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF DISCOVERY MASTER'S RECONSIDERATION OF PORTIONS OF DISCOVERY MASTER ORDER NO. 27 REGARDING MOTION TO COMPEL DOCUMENTS FROM BINGHAM MCCUTCHEN**<br><br>[Declaration of Scott B. Kidman filed concurrently]<br><br>Hearing Date:   August 13, 2009<br>Time:            10:00 a.m.<br>Place:           Arent Fox, LLP<br><br>**Phase 2**<br><br>Discovery Cutoff:     Dec. 11, 2009<br>Pre-trial Conference: March 1, 2010<br>Trial:                March 23, 2010 |

07209/3026407.1

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................. 1

ARGUMENT .......................................................................................... 2

I.   THE TAAC SIGNIFICANTLY HEIGHTENS THE RELEVANCE OF THE REQUESTED DOCUMENTS ........................................................ 2

    A.   Transactions Involving Bingham's Clients That Bingham Structured Are Specifically At Issue In The TAAC ................. 2

    B.   The Requests Seek Highly Relevant Information ................... 5

II.  THE HEIGHTENED RELEVANCE OF THE REQUESTED DOCUMENTS COMPELS BINGHAM'S COMPLIANCE WITH THE SUBPOENA ........................................................................................ 9

    A.   The Potential For Encompassing Some Privileged Materials Does Not Excuse Bingham's Failure To Comply With the Subpoena, Particularly In Light Of The Heightened Relevance Of The Documents Sought ................................................... 10

    B.   Partial Alleged Duplication Does Not Excuse Bingham's Failure To Comply With The Subpoena Particularly In Light Of The Heightened Relevance Of The Documents Sought .............. 14

    C.   The Heightened Relevance Of The Documents Sought Defeats Any Claim Of Undue Burden ............................................... 20

III. BINGHAM SHOULD BE COMPELLED TO PRODUCE RESPONSIVE DOCUMENTS RELATING TO LEXINGTON ................... 22

CONCLUSION ..................................................................................... 22

[PUBLIC REDACTED] MATTEL, INC.'S SUPPLEMENTAL MEMORANDUM ISO DISCOVERY MASTER'S RECONSIDERATION

07209/3026407.1

# TABLE OF AUTHORITIES

**Page**

### Cases

Clarke v. Am. Commerce Nat'l Bank,
  974 F.2d 127 (9th Cir. 1992)...................................................................13

Diamond State Ins. Co. v. Rebel Oil Co., Inc.,
  157 F.R.D. 691 (D. Nev. 1994)...............................................................14

Fairview Development Corp. v. Aztex Custom Homebuilders, LLC,
  2008 WL. 2113492 (D. Ariz. May 16, 2008)..........................................13

Financial Corp. v. Hartford Accident and Indemnity Co.,
  136 F.R.D. 179 (E.D. Cal. 1991).............................................................13

Goodman v. U.S.,
  369 F.2d 166 (9th Cir. 1966)......................................................................4

Green v. Baca,
  219 F.R.D. 485 (C.D. Cal. 2003) .............................................................13

Heat and Control, Inc. v. Hester Industries, Inc.,
  785 F.2d 1017 (Fed. Cir. 1986)..................................................................4

JZ Buckingham Investments, LLC v. United States,
  78 Fed. Cl. 15 (Fed. Cl. 2007)...................................................................4

Maljack Prods., Inc. v. GoodTimes Home Video Corp.,
  81 F.3d 881 (9th Cir. 1996)......................................................................15

Mattel, Inc. v. Walking Mountain Productions,
  353 F.3d 792 (9th Cir. 2003)....................................................................14

Moon v. SCP Pool Corp.,
  232 F.R.D. 633 (C.D. Cal. 2005) ...............................................................3

Northrop Corp. v. McDonnell Douglas Corp.,
  751 F.2d 395 (D.C. Cir. 1984) ...................................................................4

In re PE Corp. Securities Litigation,
  221 F.R.D. 20 (D. Conn. 2003).................................................................14

Snyder v. Whittaker Corp.,
  839 F.2d 1085 (5th Cir. 1988)..................................................................15

[PUBLIC REDACTED] MATTEL, INC.'S SUPPLEMENTAL MEMORANDUM ISO DISCOVERY MASTER'S RECONSIDERATION

1  Viacom Intern. Inc. v. YouTube, Inc.,
2     2008 WL. 3876142 (N.D. Cal. Aug. 18, 2008)..................................................... 14

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

-iii-

[PUBLIC REDACTED] MATTEL, INC.'S SUPPLEMENTAL MEMORANDUM ISO DISCOVERY MASTER'S RECONSIDERATION

1  **Preliminary Statement**

2  On February 12, 2009, Mattel served a subpoena on Bingham McCutchen

3 LLP ("Bingham"), transactional counsel for Omni 808 in connection with the

4 structuring and negotiation and certain financial transactions, including Omni 808's

5 purported acquisition of the note held by MGA's then-largest creditor, Wachovia.

6 Bingham refused to comply with the subpoena and in Order No. 27 the Discovery

7 Master denied Mattel's motion to compel, ███████████████████

8 ██████████████████████████████████████████████

9 ███████

10  Since the Discovery Master issued Order No. 27, Mattel has been granted

11 leave to file its Third Amended Answer and Counterclaims (the "TAAC"). As Judge

12 Larson found, the filing of the TAAC "significantly heightens" the relevancy of the

13 documents sought by the Bingham subpoena and "dramatically altered the calculus that

14 underlies the conclusions" in Order No. 27. Indeed, each of the requests go to the heart

15 of allegations that are now directly at issue in the TAAC, including, among other

16 things, the structure and funding of the Omni transactions, the relationship between the

17 MGA parties and the Omni parties and other documents bearing on Bingham's

18 representation that, as between the MGA parties and the Omni parties, those

19 transactions were arm's length.

20  In light of the "significantly heightened" relevance of the documents

21 sought, Bingham should no longer be permitted to refuse discovery based on its blanket

22 assertions that the subpoena may encompass some privileged documents (that is what

23 privilege logs are for) or that the subpoena "partially" overlaps with subpoenas to other

24 third parties (who may or may not have ever had or preserved the same documents).

25 There is no legal or factual basis for these objections and, in any event, it is now

26 apparent that they are operating to deny Mattel documents that are not only highly

27 relevant to the claims and allegations of the TAAC, but that also have never been

28

1   produced by, and may not be available from, any other source.  The "dramatically

2   altered calculus" also defeats Bingham's claim of undue burden.  Judge Larson made

3   clear that Bingham bears the burden of proving that any purported burden is undue; it

4   failed to present any such evidence, let alone evidence that would outweigh the

5   significantly heightened relevance of the documents sought.

6        The Discovery Master should reconsider the challenged portion of Order

7   No. 27 and compel Bingham to produce responsive, non-privileged documents sought

8   by Mattel's subpoena and properly log any documents claimed to be privileged.

9                              **Argument**

10  **I.    THE TAAC SIGNIFICANTLY HEIGHTENS THE RELEVANCE OF**

11        **THE REQUESTED DOCUMENTS**

12        **A.    Transactions Involving Bingham's Clients That Bingham Structured**

13             **Are Specifically At Issue In The TAAC**

14        In Order No. 27, the Discovery Master ruled that the documents sought by

15  the Bingham subpoena did not relate to the RICO claims in Mattel's Second Amended

16  Answer and Counterclaims (the "SAAC") because the RICO claims were asserted in

17  July 2007 ████████████████████████████████████

18  ████████████████████████████████████

19  ████████████████████[1]  The Discovery Master recognized--and Bingham

20  did not dispute--the relevance of the requested documents to those claims in the event

21  Mattel's then-pending motion for leave to file its Third Amended Answer and

22

23

24  ────────────────

25  [1]   Discovery Master Order No. 27 at p. 30, attached as Exhibit 1 to the concurrently filed Declaration of Scott B. Kidman ("Kidman Dec.").  The Discovery Master's Order recognized,

26  however, that the subpoena sought documents relevant to a number of other Phase 2 issues, including the bias and credibility of third party witnesses, Mattel's disgorgement remedy and

27  MGA's and Larian's financial condition.  Id. at 27, 32 and 34, respectively.

28

1   Counterclaims (the "TAAC") were to be granted.[2]   Mattel's motion, which MGA

2   opposed precisely because it would add the Omni transactions to Phase 2, was granted.

3   As Judge Larson found, the filing of the TAAC "significantly heightens the relevancy

4   of the issue of how the MGA parties and the parties represented by Bingham may be

5   related, the formation of certain of those entities, and other issues implicated by

6   Mattel's requests."[3]

7           This "significantly heightened relevance" is apparent from the face of the

8   TAAC.   The allegations of wrongdoing expressly include the Omni financial

9   transactions as part of the RICO claims and specifically identify Omni 808, Vision

10  Capital, Lexington and others as members of an ongoing criminal enterprise.[4] Among

11  other things, the TAAC alleges that:

12  •   Larian and MGA and those acting in concert with them have created, affiliated with, employed or purchased one or more shell entities,
13      including Omni 808, Vision Capital and Lexington, to conceal, receive, hold and transfer funds generated by the wrongful conduct and the
14      enterprises alleged in the TAAC.[5]

15  •   Through these entities, including Omni 808, Vision Capital and Lexington, Larian and his co-conspirators have transferred their ill-gotten
16      funds from the United States and/or moved laundered funds back into the United States, including in an attempt to obtain purported priority as an
17      alleged secured creditor over Mattel's claims and to deprive Mattel of assets to which it has a legitimate claim.[6]

18  •   Larian and MGA, in order to maintain control over MGA's revenue and to
19      frustrate the jury's verdict in Mattel's favor, determined to purchase, at a substantial discount, the note held by MGA's then-largest creditor,
20      Wachovia. Larian intended to use Lexington, Vision Capital and Omni 808 to distance himself from the transaction and thereby conceal the true

21  _____

22  [2]   Id. at 31, n. 12, Kidman Dec., Exh. 1 ███████████

23  ████████████████████████████████████████████████

24  ████████████████████████████████████████████████

25  [3]   Judge Larson's Omnibus Order dated July 9, 2009 at 5, Kidman Dec., Exh. 2.

26  [4]   See TAAC (exhibits omitted) at ¶¶ 136, 138-141, Kidman Dec., Exh. 3.

27  [5]   Id. at ¶ 108, Kidman Dec., Exh. 3.
    [6]   Id. at ¶ 110, Kidman Dec., Exh. 3.

28

source of the funds used to purportedly purchase the debt and to conceal that Larian in fact participated in or controlled its acquisition. By this scheme, Larian and his co-conspirators sought to disguise their identities and to obtain purported priority as an alleged secured creditor (rather than as a shareholder) over Mattel's claims against MGA's assets.[7]

- Omni 808's claimed acquisition of the Wachovia note was not--as Omni 808 had represented to the Court--an arm's length business transaction by an independent investor or investors. Instead, it was an insider transaction facilitated by Larian and MGA through the use of Omni 808, Vision Capital and Lexington for the purpose of maintaining substantial control over MGA's revenues in the near term, continuing their wrongful activities despite the jury's verdict against them and establishing purported priority as a secured creditor over Mattel's claims in any eventual bankruptcy; Larian participated and was involved in the purported acquisition of MGA's debt, though the claimed acquisition was structured to conceal it from Mattel; and the funds Omni 808 used to purportedly purchase the Wachovia note were, in whole or in part, generated by Larian's and MGA's wrongful conduct directed towards Mattel.[8]

- As part of the scheme to convert MGA equity to purported secured debt or otherwise frustrate the jury's verdict and deprive Mattel of assets to which it has a legitimate claim, Omni 808 purportedly loaned additional amounts to MGA which were, in whole or in part, generated by Larian's and MGA's wrongful conduct towards Mattel and transferred through Larian-controlled conduits to conceal the true source of the funds.[9]

These allegations put squarely at issue--and render highly relevant--the nature and extent of the relationship between the MGA parties, on the one hand, and the Omni parties and others involved with them, on the other. In the same Order in which he found that the TAAC "significantly heightens the relevancy of the issue of how the MGA parties and parties represented by Bingham may be related," Judge Larson also confirmed that the relationship between the MGA parties and the Omni parties is directly relevant to whether or not their business dealings are arm's length.[10] Likewise, the source of the funds used to purchase MGA's debt, including for example

---

[7]  Id. at ¶¶ 107, 114, Kidman Dec., Exh. 3.
[8]  Id. at ¶¶ 115-119, Kidman Dec., Exh. 3.
[9]  Id. at ¶118, Kidman Dec., Exh. 3.
[10]  Judge Larson's Omnibus Order dated July 9, 2009 at 11-12, Kidman Dec., Exh. 2. The relationship among the Omni parties is also relevant to the allegation that Lexington, Vision Capital and Omni 808 are alter egos of each other, among other things. See TAAC at ¶ 111, Kidman Dec., Exh. 3.

-4-

1  agreements by Larian, his affiliates or family members to loan or repay such amounts to

2  Omni 808 or others who ostensibly funded Omni, go to the heart of that issue. So, too,

3  does the source of other funds purportedly loaned to MGA.

4        Documents produced thus far establish that Bingham was transactional

5  counsel for Omni 808 and Neil Kadisha for these transactions and indeed, Omni 808

6  lists Bingham's Los Angeles office, 355 South Grand Avenue, Suite 4400, Los Angeles,

7  CA 90071, as its registered address with the California Secretary of State.[11]  Bingham

8  also extensively communicated with many parties with respect to whom no privilege

9  claim could be made, including with numerous representatives of MGA, Larian and

10  other participants in the transactions.[12] The blanket assertions of privilege should be

11  rejected.

12       **B.**    **The Requests Seek Highly Relevant Information**

13        Each of the requests in the Bingham subpoena is reasonably calculated to

14  obtain information that is reasonably calculated to lead to the discovery of admissible

15  evidence, especially in light of the filing of the TAAC.

16        **Request Nos. 1 and 2**.  These requests seek documents "referring or

17  relating to any fee agreement or fee arrangement referring or relating to [Bingham's]

18  representation of Vision Capital . . . and/or Omni 808" and "documents sufficient to

19  identify each and every person or entity billed for, liable to pay, responsible for

20  payment of, or who has paid or promised to pay, whether directly or indirectly,

21  Bingham's fees in connection with Bingham's representation of Omni 808 or Vision

22

23

24

---

25  [11]  _See_ Omni 808 Investors, LLC's Registration Information (available at
&lt;http://kepler.sos.ca.gov/corpdata/ShowLpllcAllList?QueryLpllcNumber=

26  200822610026&printer=yes&gt;) as accessed on July 26, 2009, Kidman Dec., Exh. 4.

27  [12]  _See_ Bingham emails sent pursuant to the Omni Transaction, collected in Kidman Dec.,
Exh. 5.

28

-5-

1 Capital."[13]  Documents which refer to an agreement or arrangement by which Larian,
2 his affiliates or family members--or others under their control--paid Bingham's fees for
3 representing Omni 808 or Vision Capital in connection with the purported acquisition
4 of the Wachovia note go directly to the relationship between the MGA parties and the
5 Omni parties and, in turn, the allegations in the TAAC that Omni 808 and Vision
6 Capital were created at the direction of or on behalf of Larian and that Omni's purported
7 purchase of the Wachovia note was not--as Omni claims--an arm's length transaction by
8 an independent investor or investors.  Further, as the Court and the prior Discovery
9 Master have previously held, such information is relevant to bias and credibility.[14]

10        Relevant information is not limited to any actual fee agreement.  There
11 may be no formal fee agreement as such, in which case documents sufficient to show
12 who has been billed for or actually paid the fees or communications regarding the
13 payment of fees may be the only documents that disclose the existence of the pertinent
14 relationship.  Moreover, communications about an agreement to pay fees may be as
15 probative, if not more probative, than the agreement itself and could, for example, show
16 the quid pro quo for the payment of fees or reasons for the absence of a formal
17 agreement, such as a desire to conceal the existence of the relationship sought to be
18 discovered.  Evidence of the payment of fees absent a formal agreement to do so might
19 even show a closer relationship than could otherwise be inferred.

20

21

22  [13]   Mattel's Notice of Subpoena Issued to Bingham McCutchen LLP, dated February 12,
23 2009, at Attachment A, ¶¶ 1-2, Kidman Dec., Exh. 6.
   [14]   See, e.g., Order Granting Mattel's Motion to Compel Documents, dated January 25,
24 2007, at 11-12, Kidman Dec., Exh. 7; Order Granting Mattel's Motion to Compel Production
   of Documents and Interrogatory Responses by MGA, dated May 15, 2007, at 10, Kidman
25 Dec., Exh. 8; Order Granting in Part and Denying in Part Mattel's Motion to Enforce the
   Court's Order of January 25, 2007, to Compel Production of Documents by Carter Bryant and
26 for Sanctions, dated June 19, 2007, at 2-4, Kidman Dec., Exh. 9; Order Re Motions Heard on
27 June 11, 2007, dated June 27, 2007, at 33-34, Kidman Dec., Exh. 10.

28

**Request Nos. 3 and 4.** These requests seek documents that refer or relate to the "formation, governance, ownership, capitalization and/or funding of, or credit for, Omni 808, Vision Capital and/or Lexington" and documents identifying "any member, shareholder, holder of any ownership interest in, officer, director, employee and/or agent" of these entities.[15]  The identity of the individuals behind these entities goes directly to the relationship between MGA parties and the Omni parties and whether there dealings are arm's length.  So too does information about the sources of their capitalization, funding and credit.  Such information also bears directly on the allegations in the TAAC that Larian and MGA purchased the Wachovia note and used Omni 808, Vision Capital and Lexington to conceal to the true source of the funds and funded other purported loans by Omni 808 to MGA as part of their scheme to turn MGA equity into purported secured debt and obtain priority over Mattel.  As Judge Larson expressly found, information regarding the "formation" of these entities is also significantly heightened by the filing of the TAAC and, among other things, goes to the allegation that they are single purpose entities created by or on behalf of and controlled by Larian.  Information regarding the "governance" of these entities is highly relevant to all of these issues and, in addition, bears directly on the allegation that they are shell entities and alter egos of each other.

**Request No. 5.** This request seeks all "contracts and agreements, and proposed or offered contracts or agreements, referring or relating to Omni 808, Vision Capital and/or Lexington, including . . . all drafts thereof disclosed to, shared with, exchanged with or received from Wachovia, MGA[], Fred Mashian, Leon Neman, Isaac Larian and/or any person or entity other than Omni 808."[16]  Such contracts and agreements are relevant to all of the above issues and, in particular, the relationship

---

[15] Id. at Attachment A, ¶¶ 3-4, Kidman Dec., Exh. 6.
[16] Id. at Attachment A, ¶ 5, Kidman Dec., Exh. 6.

07209/3026407.1

1  between the MGA parties and the Omni parties, the relationship among the Omni

2  parties and the source of funds for Omni 808's purported acquisition of the Wachovia

3  note and other purported loans to MGA.  For example, an agreement or proposed

4  agreement by a Larian trust, family member or affiliate to fund, capitalize or loan

5  money to Omni 808, Vision Capital or Lexington would not only provide evidence of a

6  relationship that is not arm's length, but would be direct proof that Omni 808, Vision

7  Capital and/or Lexington are indeed sham entities set up to conceal to true source of the

8  funds used to acquire the Wachovia note and make other purported loans to MGA as

9  part of the scheme to use MGA's and Larian's ill-gotten gains to further harm Mattel.

10  The sharing of draft agreements--even draft agreements between Wachovia and Omni

11  808--with Larian, MGA and others who purportedly are not represented by Bingham is

12  also highly relevant to the relationship between the MGA parties and the Omni parties

13  and would tend to show that the relationship is other than arm's length.

14        **Request No. 6.**  This request seeks "communications referring or relating

15  to Omni 808, Vision Capital and/or Lexington" and expressly carves out any privileged

16  communications between Bingham and Omni 808 and/or Vision Capital as well as all

17  communications with Mattel's counsel or the Court in connection with this matter.[17]

18  Particularly given that Omni 808 and Vision Capital were only recent formed and all

19  three appear to be single purpose entities, the request is reasonably calculated to obtain

20  discoverable information regarding such the negotiation and terms of the transactions at

21  issue and the relationship among the MGA parties and the Omni parties (for example,

22  almost any communication between Bingham and the MGA parties or their counsel

23  regarding any of these entities prior to acquisition of the Wachovia note would tend to

24  be probative of whether the relationship is arm's length or not), the individuals behind

25  the Omni parties and the source of the funds used by these entities, all of which, as

26  _____

27  [17]  Id. at Attachment A, ¶ 6, Kidman Dec., Exh. 6.

28

07209/3026407.1

-8-

shown, goes to the heart of the new allegations in the TAAC. Furthermore, the <u>absence</u> of communications may be probative as well. For example, if there are no communications with a particular alleged investor, that may be probative of his or her lack of actual involvement and refute claims by MGA or Larian that that investor was in control.

**Request No. 7.** This request seeks documents "sufficient to identify any instances in which Bingham has represented MGA[], any affiliate of MGA[], Fred Mashian, Leon Neman, Yoel Neman, Monica Neman (aka Monia Mashian), Angela Larian, Farhad Larian, Isaac Larian, and/or any entity associated with Isaac Larian since June 1, 2001."[18] It is narrowly tailored to obtain information sufficient to show Bingham's representation of MGA and Larian and their related entities and family members. This information, like that sought in Request Nos. 1 and 2, goes to the issue of the relationship between the MGA parties and the Omni parties and whether their dealings are arm's length.

## II.   THE HEIGHTENED RELEVANCE OF THE REQUESTED DOCUMENTS COMPELS BINGHAM'S COMPLIANCE WITH THE SUBPOENA

As Judge Larson stated, the recent filing of the TAAC and the significantly heightened relevance of the documents sought by the Bingham subpoena "dramatically altered the calculus that underlies the conclusions reached in [Discovery Master Order No. 27]."[19] The requested documents plainly go to the heart of the new claims and

---

[18]   Id. at Attachment A, ¶ 7, Kidman Dec., Exh. 6. Leon Neman is Isaac Larian's brother-in-law and has served as a director of MGA. TAAC at ¶ 116, Kidman Dec., Exh. 3. As Judge Larson described it, this request seeks documents regarding "Bingham's representation of MGAE and certain named individuals who have some connection with MGAE, including a number of Mr. Larian's family members." Judge Larson's Omnibus Order dated July 9, 2009 at 4, Kidman Dec., Exh. 2.

[19]   Judge Larson's Omnibus Order dated July 9, 2009 at 5, Kidman Dec., Exh. 2.

[PUBLIC REDACTED] MATTEL, INC.'S SUPPLEMENTAL MEMORANDUM ISO DISCOVERY MASTER'S RECONSIDERATION

allegations. Each of Bingham's purported grounds for refusing to comply with the subpoena should be rejected in light of the heightened relevance of the documents sought.[20]

    **A.**    **The Potential For Encompassing Some Privileged Materials Does Not Excuse Bingham's Failure To Comply With the Subpoena, Particularly In Light Of The Heightened Relevance Of The Documents Sought**

In opposing Mattel's motion to compel, Bingham offered the blanket assertion that Mattel's subpoena ████████████████████████████████ ████████████████████████████[21] The Discovery Master found that sufficient, stating that ████████████████████████████████████████████ ████████████████████████████[22] But the requests also encompass clearly non-privileged documents which, as shown, go to the heart of new claims and allegations in the TAAC.

For example, the Discovery Master acknowledged--and Bingham did not dispute--that Request Nos. 1 and 2 seek information about fee agreements and fee

---

[20]  Any argument by Bingham that the privilege, partial duplication and burden arguments discussed below are "independent" grounds for not compelling its compliance with the subpoena and are unaffected by the heightened relevance of the documents sought would be contrary to Judge Larson's ruling, both explicitly and implicitly. As noted, Judge Larson found that the heightened relevancy of the documents sought "dramatically altered the calculus that underlies the conclusions reached in [Discovery Master Order No. 27]." Moreover, there would have been no reason to remand to the Discovery Master for reconsideration in light of the "dramatically altered calculus" if these purported grounds independently supported Bingham's refusals to comply with the subpoena.

[21]  Bingham McCutchen LLP's Memorandum of Points and Authorities in Opposition to Mattel, Inc.'s Motion to Compel Bingham McCutchen LLP to Produce Documents Responsive to Subpoena ("Opposition to Motion to Compel") at 9. [Docket No. 5006.]

[22]  Discovery Master Order No. 27 at 23 (emphasis added), Kidman Dec., Exh. 1. See also Id. at 20 (emphasis added) ████████████████████████████

---

07209/3026407.1

-10-

arrangements that is not privileged,[23] but stated that the portion of Request No. 1 seeking communications relating to any such agreement or arrangement █████████ █████████████████████████████████████████████████[24] It may or it may not. If, as the evidence shows, Isaac Larian/MGA are paying Bingham's fees, the request is *likely* to encompass mainly, if not entirely, communications that are not only *not* privileged, but that also go directly to core allegations in the TAAC--that Larian/MGA control and direct the Omni parties and that their relationship with them is not arm's length.[25]

Likewise, Request No. 3, which seeks documents that regarding the "formation, governance, ownership, capitalization and/or funding of, or credit for, Omni 808, Vision Capital and/or Lexington," also encompasses non-privileged documents that may be among those most critical to proving the new claims and allegations in the TAAC, including the source of funding for Omni 808, Vision Capital and Lexington and the ownership and control of these entities. Those are the documents Mattel seeks; they are highly relevant to the claims and allegations in the TAAC and Mattel is entitled to discover them.

---

[23] Id. at 21; see also Bingham McCutchen LLP's Memorandum in Opposition to Mattel, Inc.'s Motion Objecting to Portions of Discovery Master Order No. 27, dated June 22, 2009 ("Opposition to Motion Objecting to Discover Master Order No. 27"), at 11, Kidman Dec., Exh. 11. For the convenience of the Discovery Master, Mattel has also attached Mattel's Notice of Motion and Motion Objecting to Portions of Discovery Master Order No. 27 Regarding Motion of Mattel, Inc. to Compel Documents from Bingham McCutchen, dated May 21, 2009 (Kidman Dec., Exh. 12) as well as Mattel's Reply in Support of Motion Objecting to Portions of Discovery Master Order No. 27 Regarding Motion of Mattel, Inc. to Compel Documents from Bingham McCutchen, dated June 29, 2009 (Kidman Dec., Exh. 13).

[24] Discovery Master Order No. 27 at 22, Kidman Dec., Exh. 1.

[25] The Discovery Master also stated that ████████████████████████████ ████████████████████████████ (Id. at 22, Kidman Dec., Exh. 1.) But if Larian/MGA are billed for the legal services Bingham performed for Omni 808 or Vision Capital, then the invoices sent to Larian/MGA would likewise be not privileged and highly relevant to the claims and allegations in the TAAC.

-11-

1          Order No. 27 stated that Request No. 4, which seeks documents

2  identifying the members, owners, shareholders, officers, directors and employees of

3  Omni 808, Vision Capital and Lexington, would potentially encompass confidential

4  communications Bingham had with such individuals. But the subpoena request is not

5  seeking the substance of any validly privileged communications between Bingham and

6  its clients, only documents identifying the principals and stakeholders of these entities.

7  Such information is indisputably relevant--among other things it goes directly to the

8  relationship between the MGA parties and the Omni parties which, as Judge Larson

9  explained, is relevant to whether or not their business dealings are arm's length--and no

10  claim is made, nor could it be, that it is inherently privileged.[26]

11          Request No. 5 also seeks categories of plainly non-privileged, relevant

12  information because it encompasses drafts of agreements exchanged between Bingham

13  and individuals or entities that are not its clients including, for example, Wachovia,

14  Larian and MGA or their counsel. Such documents are not privileged and, as shown,

15  they too are highly relevant to the claims and allegations of the TAAC. Indeed,

16  Request No. 5 expressly excludes drafts shared only with Omni 808 and thus does not

17  even purport to encompass any such privileged information.

18          Furthermore, under the law, <u>Rule</u> 45 does not allow the withholding of

19  documents, let alone highly relevant ones, simply because a request covers both

20

21      [26]  Order No. 27 stated that Request No. 6, which calls for communications that refer or

22  relate to Omni 808, Vision Capital and Lexington, is "problematic" because, while it expressly carves out Bingham's communications with Omni 808 and Vision Capital, it omits a similar

23  carve out for communications with Lexington. The Request did not include that exception

24  because Mattel understood that Fred Mashian has claimed to have been Lexington's transactional counsel.    If so, then those communications would not be privileged.

25  Furthermore, in any event, that should not be a grounds for denying Mattel non-privileged

26  communications which go to the heart of the claims and allegations of the TAAC. Even absent a specific carve out, Bingham can identify communications regarding Lexington that

27  are claimed to be privileged on a log, as discussed below.

28

-12-

1   privileged and non-privileged documents. <u>Rule</u> 45(d)(2) requires a party withholding
2   subpoenaed documents under a claim that it is privileged to describe the withheld
3   documents and provide sufficient information to enable the party seeking discovery to
4   assess the claim and the "'universally accepted' means of claiming that requested
5   documents are privileged is by producing a document-by-document log," as the Court
6   already has held in this case.[27]

7           If Bingham possesses responsive documents which it believes are
8   protected by the attorney-client privilege, it should have withheld those documents and
9   produced those that are not. It failed to do so, relying instead on its blanket objection
10  that the Mattel subpoena broadly seeks privileged information.[28]  That was improper.
11  "A  party may not make a blanket assertion of privilege in response to a discovery
12  request." <u>Green v. Baca</u>, 219 F.R.D. 485, 491 (C.D. Cal. 2003) (collecting numerous
13  cases). <u>See also</u> <u>Financial Corp. v. Hartford Accident and Indemnity Co.</u>, 136 F.R.D.
14  179, 182 (E.D. Cal. 1991) ("Whether a responding party states a general objection to an
15  entire discovery document on the basis of privilege, or generally asserts a privilege
16  objection within an individual discovery response, the resulting 'blanket objection' is
17  decidedly improper"); <u>Clarke v. Am. Commerce Nat'l Bank</u>, 974 F.2d 127, 129 (9th
18  Cir. 1992) ("[B]lanket assertions of the privilege are 'extremely disfavored.'  The
19
20
21
22

---

23  [27]   <u>Rule</u> 45(d)(2)(A); Discover Master's Order Re Mattel's Motions to Compel Farhad
        Larian, Kaye Scholder and Stern & Goldberg to Produce Documents, dated January 25, 2008
24      at 13, Kidman Dec., Exh. 14.  <u>See also</u> <u>Fairview Development Corp. v. Aztex Custom</u>
        <u>Homebuilders, LLC</u>, 2008 WL 2113492, *2 (D. Ariz. May 16, 2008) ("A witness who
25      withholds information on a claim of privilege or other protection must state the claim
26      expressly and support it with sufficient documentation to enable the demanding party to
        contest the claim.").
27  [28]   Opposition to Motion to Compel at 9. [Docket No. 5006.]
28

07209/3026407.1

[PUBLIC REDACTED] MATTEL, INC.'S SUPPLEMENTAL MEMORANDUM ISO DISCOVERY MASTER'S RECONSIDERATION

1  privilege must ordinarily be raised as to each record sought to allow the court to rule

2  with specificity.").[29]

3          Bingham should be ordered to produce responsive, non-privileged

4  documents and properly identify claimed privileged ones on a log.

5  **B.     Partial Alleged Duplication Does Not Excuse Bingham's Failure To**

6          **Comply With The Subpoena Particularly In Light Of The Heightened**

7          **Relevance Of The Documents Sought**

8          That the Bingham subpoena may "partially" duplicate the subpoenas to

9  Omni 808 and Vision Capital is not, as Bingham has urged, a proper grounds for

10 denying Mattel relevant discovery, particularly given the heightened importance of the

11 documents sought.

12         There is no rule which states that it is improper to seek the same discovery

13 from multiple parties or multiple non-parties, and Bingham has not pointed to any

14 authority for such a proposition.[30]  Far from being improper, multiple requests are

15 recognized as essential to developing a full record.[31]  That is because similar,

16 _____

17 [29]  Nor can Bingham claim that it would be unduly burdensome to separate privileged

18 documents from non-privileged documents.  See Green, 219 F.R.D. at 491 ("[D]efendant
   argues that he does not assert a blanket privilege objection; rather, he contends, he maintains

19 only that segregating privileged from unprivileged documents will be too burdensome.  This,
   however, effectively *is* a blanket privilege objection, since defendant's claim of burden rests

20 on general assertions regarding the existence of privileged material.") (emphasis in original).
   In any event, Bingham failed to make any such showing of undue burden, and the significantly

21 heightened relevance of the documents would outweigh any such claim now.

22 [30]  Bingham has claimed that Mattel, Inc. v. Walking Mountain Productions, 353 F.3d 792

23 (9th Cir. 2003), supports the contrary position.  It does not.  Over the years, MGA and Bryant
   have sought to attack Mattel by also using this same off-point decision multiple occasions, to

24 no avail.  At the March 4, 2009 hearing, when Bingham interjected this same case -- based on
   the wholly erroneous claim that the decision requires party discovery before third party

25 discovery can be taken -- the Discovery Master noted the impropriety of *ad hominem* attacks.

26 (March 4, 2009 hearing transcript at 56:24-57:25, Kidman Dec., Exh. 15.)

   [31]  See, e.g., Diamond State Ins. Co. v. Rebel Oil Co., Inc., 157 F.R.D. 691, 697 (D. Nev.

27 1994) (recognizing that although the requests were "duplicative in part," they were "directed
   (footnote continued)

28

07209/3026407.1

-14-
_____
[PUBLIC REDACTED] MATTEL, INC.'S SUPPLEMENTAL MEMORANDUM ISO DISCOVERY MASTER'S RECONSIDERATION

1  overlapping or duplicative requests do not mean duplicative productions; different

2  entities may and likely will have different documents for a variety of reasons, some

3  innocent and others perhaps not.  For example, because Bingham was directly involved

4  in structuring the financial transactions that are now at the heart of the new claims and

5  allegations in the TAAC, it extensively communicated with numerous persons and thus

6  has any number of responsive documents--such as communications with counsel for

7  other entities or individuals involved in the transactions or non-clients who purportedly

8  funded or were conduits for funding the transactions--that are not and never have been

9  in Omni's or Vision Capital's files.  Moreover, Omni 808, Vision Capital and Lexington

10  were created for the express purpose of concealing the details and source of funds

11  involved in the purchase of the Wachovia debt, thereby increasing the likelihood that

12  even if they once had certain responsive documents in their possession, they no longer

13  do.[32]  For these reasons, Bingham's claim that, to the extent the subpoenas overlap,

14  Mattel should be limited to getting the information to which it is entitled directly and

15  solely from Omni or Vision Capital is simply incorrect.

16  _____

17  toward two separate business entities, and the documents "actually maintained in the files of
18  each entity may not be identical").  Some parties are more forthcoming, or more honest, than
    others.  See, e.g., Viacom Intern. Inc. v. YouTube, Inc., 2008 WL 3876142 at *3 (N.D. Cal.
19  Aug. 18, 2008) (requiring third party to produce documents "likely to be in the possession of
20  defendants" because defendants' "poor initial record keeping raise[d] questions about the
    completeness of its files").  There is no general rule that a party cannot seek non-party
21  discovery of documents likely to be in defendants' possession.  Id.  "While serving non-parties
    with identical document requests may result in duplication, such action would ensure
22  discovery of all facts necessary to unearth the truth."  In re PE Corp. Securities Litigation, 221
23  F.R.D. 20, 28 (D. Conn. 2003).
    [32]   Prior experience in this very case establishes that multiple requests, and especially
24  requests to law firms, may be the only means of uncovering relevant information.   For
    example, Mattel propounded numerous requests to determine what documents Farhad Larian
25  had destroyed; it was only, finally, the attorneys who had retained a copy of highly relevant
26  email between Farhad Larian and Isaac Larian discussing Isaac's instruction to hide original
    documents in litigation.  See Trial Tr. at 3802:16 to 3803:12; 3816:13 to 3818:3, Kidman
27  Dec., Exh. 16; Trial Exh. 13380, Kidman Dec., Exh. 17.

28

[PUBLIC REDACTED] MATTEL, INC.'S SUPPLEMENTAL MEMORANDUM ISO DISCOVERY MASTER'S RECONSIDERATION

1    Moreover, because Bingham was transactional counsel for the transactions

2 alleged in the TAAC, one or more of their corporate attorneys are witnesses and will be

3 deposed. The production of documents from Bingham's files alone--whether or not

4 they are also produced by any other non-party--has independent significance and will

5 eliminate issues regarding authenticity and foundation when Mattel attempts to

6 question Bingham about such documents. See Maljack Prods., Inc. v. GoodTimes

7 Home Video Corp., 81 F.3d 881, 889 n. 12 (9th Cir. 1996) (documents produced in

8 discovery were deemed authentic when offered by the party-opponent); Snyder v.

9 Whittaker Corp., 839 F.2d 1085, 1089 (5th Cir. 1988) (same); 31 Federal Practice &

10 Procedure: Evidence § 7105, at 39 ("Authentication can also be accomplished through

11 judicial admissions such as ... production of items in response to ... [a] discovery

12 request.").[33] It is and will be important for additional reasons that the documents

13 accessible to each witness be produced, even if purportedly duplicative of documents

14 found in the files of others. Otherwise, a witness will be free to deny that he or she had

15 access to a given document (or else force counsel to spend hours in deposition

16 determining which of the documents produced by others are also in the witness's files

17 and whether they were truly the same as or different from the witness's documents), and

18 counsel cannot question or impeach witnesses with the documents from their own files

19 or establish operative facts that a particular person or entity had them in their

20 possession and therefore were on notice of their contents. In short, what Bingham has

21 in its files is itself relevant and important to ensure efficient examinations and truthful

22 answers.

23

24

25

26    _____

[33] Opposition to Motion Objecting to Discover Master Order No. 27 at 17, Kidman Dec.,

27 Exh. 11.

28

1    Also mistaken is Bingham's recent, unsubstantiated assertion ████████

2    ████████████████████████████████████████[34] In fact, despite Orders

3    compelling production by the Omni Parties, Mattel has not received key information in

4    response to the subpoenas to Omni 808 or Vision Capital or from any other source.

5    Thus, for example, Mattel has not received information regarding even the identities of

6    the principals, members or officers of Lexington, let alone its source of funding, all of

7    which is indisputably relevant to claims and allegations of the TAAC.[35]   Vision

8    Capital's production consists of only 149 pages of documents, the majority of which

9    consists of previously produced Omni 808 corporate documents and Omni 808

10   promissory notes.   Although compelled by prior Order to do so, Vision Capital has

11   produced no documents showing the source or transfer of the $10 million allegedly

12   provided by Vision Capital to Omni 808 to fund the acquisition of the Wachovia debt.[36]

13   Vision Capital has not even produced any loan agreement between Vision Capital and

14   its purported funding source, Lexington, much less any communications, checks, wire

15   transfers or any other underlying financial information relating to the actual loan to or

16   funding of Vision Capital.[37]

17          Indeed, the Omni Parties have failed to produce any financial records

18   showing the transfer of almost half of the funds supposedly used in the debt

19   acquisition.[38] Only after repeated Orders by the Discovery Master did any of the Omni

20   Parties eventually produce documents demonstrating that, contrary to their

21   representations to the Court and the Discovery Master, Isaac Larian directly funded at

22

23   [34]   Id. at 14, Kidman Dec., Exh. 11.

24   [35]   Supplemental Declaration of Michael T. Zeller in Support of Mattel, Inc.'s Motion
      Objecting to Portions of Discovery Master Order No. 27 Re Mattel's Motion to Compel
25   Documents from Bingham McCutchen at ¶ 3, attached to Kidman Dec. as Exh. 18.

26   [36]   Id. at ¶ 4, Kidman Dec., Exh. 18.

27   [37]   Id., Kidman Dec., Exh. 18.
     [38]   Id., at ¶¶ 3-5, Kidman Dec., Exh. 18.
28

1    least $60 million of the debt acquisition.[39] But they have failed and refused, even in the

2    face of the Discovery Master's Orders, to produce any financial records showing the

3    sources of the remainder of the $109 million transaction price.[40] To date, none of the

4    Omni Parties has produced so much as a single check, wire transfer record or any other

5    underlying financial record reflecting the source of some $49 million spent to acquire

6    the debt.[41]

7              Furthermore, the Bingham subpoena requests categories of documents that

8    are *not* called for by the Omni 808 and Vision Capital subpoenas, including documents

9    regarding fee agreements. Indeed, if, as Mattel suspects, some person or entity other

10   than Omni 808 or Vision Capital is paying Bingham's fees, it is unlikely that Omni 808

11   or Vision Capital would even have such documents. And, in any event, neither Omni

12   808 nor Vision Capital have in fact produced them. The subpoenas to Omni 808 and

13   Vision Capital also do not request--nor are those entities likely to have--documents

14

_____

15   [39]   See Mattel, Inc.'s Ex Parte Application for an Order to Show Cause re: Omni 808's
     Failure to Comply with Court Order or, in the Alternative, for an Order Shortening Time to
16   Hear Motion for Such Relief, dated April 21, 2009, Kidman Dec., Exh. 19; Phase 2 Discovery
     Master's Order No. 21, dated April 23, 2009. Kidman Dec., Exh. 20.

17   [40]   See Supplemental Declaration of Michael T. Zeller in Support of Mattel, Inc.'s Motion
18   Objecting to Portions of Discovery Master Order No. 27 Re Mattel's Motion to Compel
     Documents from Bingham McCutchen at ¶ 4, Kidman Dec., Exh. 18; see also  Omni 808's
19   Statement of Position Re Order To Show Cause Re Appointment of Permanent Receiver,
     dated May 14, 2009 at 8:12-18 (identifying Omni 808's alleged investors), Kidman Dec., Exh.
20   21. More specifically, the Omni Parties have claimed that these remaining $49 million in
     funds were contributed not by Larian, but by Omni 808's purported investors, Neil Kadisha,
21   Gold Leaf Investments, LP, Benjamin Nazarian, Moinian Development Group, LLC, Joseph
     Moinian, Vision Capital, LLC, Leon Neman, David and Angella Nazarian Family Trust,
22   David Nazarian, Angella Nazarian, Arsalan Gozini or Elahe Pezeshkifar, Trustee of the
23   Arsalan Gozini Charitable Lead Annuity Trust. No financial records showing any actual
     transfer of funds from any of these alleged investors to Omni 808 have been produced,
24   however. Id.
     [41]   See Supplemental Declaration of Michael T. Zeller in Support of Mattel, Inc.'s Motion
25   Objecting to Portions of Discovery Master Order No. 27 Re Mattel's Motion to Compel
26   Documents from Bingham McCutchen at ¶¶ 3-5, Kidman Dec., Exh. 18; see also July 17,
27   2009 Letter from Peter N. Villar to Michael T. Zeller, Kidman Dec., Exh. 22.

28

07209/3026407.1

-18-

1  sufficient show Bingham's representation of Larian and/or his family members.[42]
2  Bingham also ignores its success in quashing all efforts to serve Lexington, quashing
3  Mattel's deposition subpoena to Fred Mashian, who has acted for Lexington, and even
4  beating back Mattel's efforts to require document preservation pending effective
5  service.   Quashing the Bingham subpoena because it "partially" overlaps with
6  subpoenas to Omni 808 and Vision Capital will thus deny Mattel what may be its only
7  source of information regarding Lexington, a result that would be at odds with the
8  significantly heightened relevance of such information following the filing of the
9  TAAC.  Indeed, as noted, none of the subpoenas or the Discovery Master's orders to
10  date has yielded documents even about who operates or owns Lexington, documents
11  that are plainly relevant as discussed above.

12        Bingham may attempt to rehash its unsuccessful arguments before Judge
13  Larson by citing <u>Moon v. SCP Pool Corp.</u>, 232 F.R.D. 633, 637 (C.D. Cal. 2005), for
14  the proposition that requests for documents that pertain to a party and that can be more
15  easily and inexpensively obtained from that party may be found to impose an undue
16  burden.[43]  Indeed they may.  But claims of "partial duplication" with the subpoenas to
17  Omni and Vision Capital does not mean the documents sought from Bingham can more
18  easily and less expensively obtained from a party, much less substitute for an actual
19  showing of burden that Judge Larson held that Bingham was required to but did not
20  make.[44]  And, as discussed above, Bingham's duplication arguments are without factual
21  or legal merit here.  Moreover, there is no reason why as between two or more non-
22  parties, Mattel must elect to seek discovery from only one and hope that it chose
23  wisely.  That is particularly true where, as here, the subpoenaed party was a central hub
24

25  [42]  <u>See</u> Bingham subpoena, Request No. 7, Kidman Dec., Exh. 6.
26  [43]  Opposition to Motion Objecting to Discover Master Order No. 27 at 22, Kidman Dec., Exh. 11.
27  [44]  Judge Larson's Omnibus Order dated July 9, 2009 at 4, Kidman Dec., Exh. 2.
28

1  for communication--including unquestionably non-privileged communication--

2  regarding the transactions at issue.

3      C.   **The Heightened Relevance Of The Documents Sought Defeats Any**

4           **Claim Of Undue Burden**

5           As Judge Larson held, the decision as to whether to grant relief from the

6  obligation of complying with a subpoena "implicates a balancing test that pits the

7  relevance of the materials sought and need to the requesting party against hardship to

8  the party resisting the subpoena."[45] As he further held, once the subpoenaing party

9  satisfies its initial obligation of showing relevancy, "the party resisting discovery

10 thereafter has the burden of establishing that discovery should be denied."[46] Thus, a

11 party seeking relief under Rule 45 based on purported undue burden "must provide

12 specific and compelling proof that the burden is undue." JZ Buckingham Investments,

13 LLC v. United States, 78 Fed. Cl. 15, 25 (Fed. Cl. 2007). Specific proof is required;

14 conclusory assertions are insufficient. See Northrop Corp. v. McDonnell Douglas

15 Corp., 751 F.2d 395, 403 (D.C. Cir. 1984) (reversing district court's decision quashing

16 subpoena); Goodman v. U.S., 369 F.2d 166, 169 (9th Cir. 1966) (same). "The burden

17 of proving that a subpoena is oppressive is on the party moving to quash and is a heavy

18 one." Heat and Control, Inc. v. Hester Industries, Inc., 785 F.2d 1017, 1025 (Fed. Cir.

19 1986).

20          As Judge Larson also found, the recent filing of the TAAC "significantly

21 heightens" the relevancy of the requested documents and "dramatically altered the

22 calculus that underlies the conclusions reached in [Discovery Master Order No. 27]."[47]

23 _____

24 [45] Id., Kidman Dec., Exh. 2.

25 [46] Id. (citing cases), Kidman Dec., Exh. 2.
   [47] Id. at 5, Kidman Dec., Exh. 2. In Order No. 27, the Discovery Master had ruled that

26 ████████████████████████████████████████████████████████████

27 ████████████████████████████  Discovery Master Order No. 27 at 28
   (emphasis added), Kidman Dec., Exh. 1.

28

1   Indeed, as shown, the subpoena seeks documents that are highly relevant and go

2   directly to the new claims and allegations in the TAAC. Bingham's argument that █████

3   ████████████████████████████████████████████████████████████████████

4   ████████████████████████████████████████████████████████████████████

5   ████████████████████████████████████[48] are contrary to Judge Larson's

6   findings with respect to the TAAC and can no longer be assigned any weight.

7         On the other side of the balance, Bingham presented no proof, let alone

8   "specific and compelling proof," of undue burden.[49]  The record is devoid of any

9   evidence (such as the Discovery Master has required in other instances) documenting

10  how long it would take Bingham to comply or how much it might cost.[50]  The only

11  evidence relating to burden was submitted by Mattel, and it shows that the requests

12  cover a limited time period and the volume of documents sought is unlikely to be

13  voluminous, given that Omni 808 and Vision Capital were formed only recently during

14  the Phase 1 trial and given their avowedly single-purpose nature--with that single

15

16

17

---

18    [48]   Motion to Quash Subpoena at 14. [Docket No. 4916.]

19    [49]  Nor should Bingham be permitted to attempt to make any such purported showing now.

20  To the extent there is any such claimed evidence, it was clearly known to Omni at the time of
    the Discovery Master's initial decision and Omni chose not to present it. See Local Rule 7-18.

21  Moreover, allowing Omni to do so would be highly prejudicial to Mattel given that the
    Discovery Master's Order specifically states that Mattel is not entitled to file a supplemental

22  reply and therefore would have no opportunity to respond. Discovery Master Order No. 40,
    dated July 20, 2009 at 2, Kidman Dec., Exh. 23.

23    [50]   In earlier declining to enforce the subpoena, the Discovery Master stated that ██████

24  ████████████████████████████████████████████████████████████████████

25  ████████████████████████████████████████████████████████████████ (Discovery

26  Master Order No. 27 at 28, Kidman Dec., Exh. 1.) As Judge Larson made clear, however, that

27  burden is properly placed on Omni as the party resisting discovery. (Judge Larson's Omnibus
    Order dated July 9, 2008 at 4, Kidman Dec., Exh. 2.)

28

07209/3026407.1

1 purpose being to serve as funding conduits.[51] Moreover, the number of custodians with
2 relevant documents is presumably limited and the files to be searched discrete.

3       Given the clear and significantly heightened relevance of the documents
4 sought, the fact that Mattel has not obtained numerous categories of documents from
5 any other source and may have no other source for obtaining them and the lack of any
6 evidence of undue burden by Bingham, let alone any that would outweigh the
7 significantly heightened relevance of the requested documents, any claim of undue
8 burden should be rejected and Bingham should be compelled to respond to the
9 subpoena.

10 **III.   BINGHAM SHOULD BE COMPELLED TO PRODUCE RESPONSIVE**
11 **DOCUMENTS RELATING TO LEXINGTON**

12       Judge Larson ruled that discovery of materials that are in the possession of
13 a subpoena recipient properly before the Court may not be refused on the basis that they
14 are related to or concern a non-party over whom the Court has not yet been shown to
15 have jurisdiction.[52] Accordingly, Bingham should be ordered to produce responsive,
16 non-privileged documents sought by Mattel's subpoena that relate to Lexington and
17 properly log any documents claimed to be privileged pursuant to Rule 45(d)(2)(A).

18 **Conclusion**

19       Mattel respectfully requests that the Discovery Master reconsider the
20 portion of Discovery Master Order No. 27 regarding Mattel, Inc.'s Motion To Compel

---

[51] See Mattel's Motion to Compel Bingham McCutchen LLP to Produce Documents Responsive to Subpoena, dated March 5, 2009 at 7-13 [Docket No. 4979]; Mattel's Opposition to Motion to Quash Subpoena by Mattel, Inc. to Bingham McCutchen LLP, dated March 6, 2009 at 11-18 [Docket No. 4982]. For example, Vision Capital has thus far produced only 149 pages of documents. To the extent Bingham has no additional responsive documents, it can hardly claim undue burden; to the extent it does have additional documents, this merely confirms that partial duplication is not a proper grounds for not enforcing the subpoena.
[52] Judge Larson's Omnibus Order dated July 9, 2009 at 5, Kidman Dec., Exh. 2.

-22-

1  Bingham to Produce Documents Responsive to Subpoena and compel Bingham to

2  produce documents in response to Mattel's requests.

3  DATED:  July 27, 2009                QUINN EMANUEL URQUHART OLIVER &
                                         HEDGES, LLP
4

5
                                         By _____
6                                            Michael T. Zeller
                                             Attorneys for Mattel, Inc.
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-23-