# Exhibit 14

1  Hon. Edward A. Infante (Ret.)
   JAMS
2  Two Embarcadero Center
   Suite 1500
3  San Francisco, California 94111
   Telephone:    (415) 774-2611
4  Facsimile:    (415) 982-5287

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10                        EASTERN DIVISION

11

12  CARTER BRYANT, an individual,          CASE NO. CV 04-09049 SGL (RNBx)
                                           JAMS Reference No. 1100049530
13            Plaintiff,

14       v.                                Consolidated with
                                           Case No. CV 04-09059
15  MATTEL, INC., a Delaware corporation,  Case No. CV 05-2727

16            Defendant.                   **ORDER RE MATTEL'S MOTIONS TO
                                           COMPEL FARHAD LARIAN, KAYE
17                                         SCHOLER AND STERN &
                                           GOLDBERG TO PRODUCE
18                                         DOCUMENTS**

19
    CONSOLIDATED WITH
20  MATTEL, INC. v. BRYANT and
    MGA ENTERTAINMENT, INC. v. MATTEL,
21  INC.

22

23

24                        I. INTRODUCTION

25       The following motions are pending for decision, each of which seeks discovery from non-

26  parties:  Mattel, Inc.'s ("Mattel") (1) Motion to Compel Farhad Larian to Produce Documents; (2)

27  Motion to Compel Kaye Scholer to Produce Documents; and (3) Motion to Compel Stern &

28

1  Goldberg to Produce Documents. Each of the non–parties submitted oppositions.[1]  In addition,

2  MGA Entertainment, Inc., Isaac Larian, MGA Entertainment (HK) Limited, and MGAE de

3  Mexico S.R.L. de C.V. (collectively "MGA") submitted oppositions to the motions.  Mattel

4  submitted a consolidated reply on January 3, 2008.  The motions were heard on January 16, 2008,

5  at which time Mattel agreed to hold in abeyance its Motion to Compel Stern & Goldberg to

6  Produce Documents.  This Order, therefore, addresses only Mattel's motions to compel Farhad

7  Larian and Kaye Scholer to produce documents.

8      On January 22, 2008, the parties submitted a Stipulation Regarding Protective Orders to

9  facilitate production of documents responsive to the subpoenas at issue.

10                          II. BACKGROUND

11     Since the inception of MGA in 1979 until December of 2000, Isaac Larian, a defendant

12  herein and MGA's CEO, and his brother Farhad Larian, a non-party, shared ownership and

13  management of MGA.  A dispute developed between the two brothers and in March of 2000,

14  Isaac Larian proposed that Farhad Larian sell his interest in MGA to him.

15     On September 28, 2000, the Larian brothers agreed to have their uncle, Morad Zarabi,

16  arbitrate their dispute and decide a fair value for MGA and also decide which brother should sell

17  his ownership interest to the other.  The brothers' agreement to arbitrate was entered into ten days

18  after the alleged effective date of Carter Bryant's contract purportedly assigning rights to Bratz to

19  MGA.  Isaac Larian did not tell his brother about the contract with Bryant.

20     Mr. Zarabi retained an appraiser, Ernest Dutcher, to value MGA based on "the period

21  ending December 31, 1999."  By December 4, 2000, Mr. Zarabi determined that Farhad Larian

22  should sell his 45% ownership interest in MGA to Isaac Larian and the two entered into an

23  Agreement for Sale of Stock by which Farhad Larian sold his interest for $8.775 million.

24

25

26  ───────────────

27  [1] Mattel contends that Kaye Scholer's opposition was not timely filed and therefore should not be
considered.  Although the opposition was ten days late, Kaye Scholer's brief will nevertheless be considered in the
interest of resolving these disputes on the merits.

28

1    In the summer of 2002, Farhad Larian complained to Mr. Zarabi that Isaac Larian had

2  allegedly fraudulently concealed Bratz during the negotiations that led to Farhad Larian's sale of

3  MGA stock.  Mr. Zarabi oversaw another appraisal of MGA based upon information he gathered

4  in 2002.  Mr. Dutcher produced an appraisal on February 13, 2003 that valued MGA as of

5  December 31, 2000 and projected a 2001 revenue growth rate of twenty-five percent (25%) based

6  upon "hot projects that came along."  Mattel's Motion at p.4, Ex. 8 to Decl. of Juan Pablo Albán.

7  Other information relied upon by Mr. Dutcher suggests that MGA had expansionary plans in 2000

8  compared to the prior four years.

9    Unable to resolve his disputes through Mr. Zarabi, Farhad Larian sued Isaac Larian,

10  alleging, among other things, that (a) in late 1999 or early 2000, Isaac Larian and MGA became

11  aware of a new product line called Bratz; (b) starting in early 2000 and throughout 2000, Isaac

12  Larian and MGA devised plans to develop and distribute Bratz; and (c) Isaac Larian concealed the

13  plans for Bratz from Farhad Larian and Mr. Zarabi in order to keep the valuation of MGA

14  artificially low.  Notably, MGA and Bryant claim in the instant lawsuit that they did not even

15  meet until September 2000.

16    Isaac Larian successfully moved to compel arbitration of Farhad Larian's claims.  In early

17  February 2005, Mr. Zarabi declined to serve as arbitrator and the court appointed another

18  arbitrator.  A few weeks later, Farhad Larian filed suit against Mr. Zarabi alleging that he

19  conspired with Isaac Larian to conceal facts.

20    The arbitration of Farhad Larian's claims started on November 16, 2005.  Two days into

21  the proceedings, however, Farhad Larian dismissed his claims.  Isaac Larian sought to recover his

22  attorneys' fees and won an award in excess of $1 million against his brother.

23  Mattel Subpoenas Farhad Larian to Produce Documents

24    On August 31, 2007, Mattel subpoenaed Farhad Larian to appear for deposition and to

25  produce (1) documents relating to the Larian v. Larian disputes; (2) documents related to non-

26  Bratz allegations by Mattel and MGA, primarily related to allegations of trade secret theft; (3)

27  documents relating to Farhad Larian's relationship to MGA, including his position there,

28

1    ownership interests, and payments from MGA or Isaac Larian to Farhad Larian; (4) Farhad

2    Larian's knowledge and possession of documents specifically from the instant lawsuit, including

3    his communications with Mattel; and (5) information about the location of responsive documents.

4    The majority of Mattel's requests seek documents in the first category described above.

5            On September 21, 2007, Farhad Larian served responses and objections in which he

6    agreed to produce documents responsive to eleven of Mattel's forty-one document requests.

7    After a brief stay of discovery, counsel for Farhad Larian and Mattel met and conferred beginning

8    on November 20, 2007.  During the meet and confer process, Farhad Larian agreed to produce

9    documents responsive to some, but not all of Mattel's forty-one requests.  On November 21,

10   2007, Farhad Larian produced approximately one red well of documents.

11           The parties held a second meet and confer conference call on November 27, 2007, and

12   were able to resolve their disputes regarding many more, but not all requests.  In particular, the

13   parties were ultimately able to resolve their disputes regarding the requests for documents related

14   to non-Bratz allegations.  At the conclusion of the second meet and confer session, it was agreed

15   that Farhad Larian would make a supplemental production of documents on December 6, 2007,

16   and provide a written supplemental response.  The parties attempted to schedule another meet and

17   confer session, but could not agree upon a date.  On the evening of December 6, 2007, Mattel

18   filed the instant motion.  Mattel seeks an order compelling Farhad Larian to produce documents

19   responsive to every request in its subpoena; overruling each of Farhad Larian's objections; and

20   ordering him to produce a document-by-document privilege log.

21   <u>Mattel Subpoenas Isaac Larian's Attorney –Kaye Scholer</u>

22           On or about September 6, 2007, Mattel also subpoenaed Kaye Scholer, the firm that

23   represented Isaac Larian in the <u>Larian v. Larian</u> proceedings.  The subpoena consisted of thirty-

24   five (35) requests seeking the same five categories of documents it subpoenaed from Farhad

25   Larian.  Kaye Scholer's representation of Isaac Larian included defending him in two related

26   Superior Court actions, two arbitration proceedings and an appeal to the California Court of

27   Appeals, all of which covered a period of several years.  As a result of this representation Kaye

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

4

Exhibit  14   Page  341

1   Scholer has accumulated approximately fifty-six (56) boxes of its client's files, including, among

2   other things, correspondence files, pleading files, discovery files, witness preparation files,

3   research files, exhibits, attorney work files, and billing files.

4          On or about September 18, 2007, Kaye Scholer served its objections, asserting, among

5   other things, that the requests are duplicative, unreasonably cumulative, harassing and oppressive.

6   The parties met and conferred on October 11 and 29, 2007. Kaye Scholer agreed to review the

7   following files for responsive documents: (1) pleading files; (2) discovery files; and (3)

8   arbitration exhibits. Kaye Scholer's rationale for limiting its search for responsive documents to

9   these three files was to avoid undue burden because most of the documents in other files would be

10  protected by the work product doctrine and/or the attorney-client privilege. Kaye Scholer also

11  agreed to produce documents responsive to the majority of Mattel's requests. However, Kaye

12  Scholer repeatedly informed Mattel that it objected to producing a document-by-document

13  privilege log because it would be unduly burdensome, expensive and inconvenient.

14         In the instant motion, Mattel seeks an order compelling Kaye Scholer to produce

15  documents responsive to every request in its subpoena and overruling Kaye Scholer's objections,

16  including privilege, or alternatively, compelling Kaye Scholer to produce a document-by-

17  document privilege log.

18  <u>Mattel's Other Discovery Efforts</u>

19         Mattel has attempted to obtain documents related to the <u>Larian v. Larian</u> proceedings from

20  MGA and Isaac Larian. As far as Mattel can ascertain, however, MGA has produced only four

21  documents relating to the <u>Larian v. Larian</u> proceedings and Isaac Larian has produced none.

22         Mattel also searched public filings in the <u>Larian v. Larian</u> and <u>Larian v. Zarabi et al.</u> civil

23  lawsuits. Mattel found Mr. Dutcher's declaration that included the appraisals described above,

24  however, Mattel was not able to locate any of the raw data on which Mr. Dutcher relied. Mattel

25  also served subpoenas on third parties involved in the <u>Larian v. Larian</u> proceedings, and met with

26  limited success.

27  //

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

5

Exhibit _14_ Page _342_

### III. STANDARDS

Rule 45 of the Federal Rules of Civil Procedure requires third parties to produce documents (and reasonably accessible electronically stored information) that are responsive to a subpoena that a party serves on them. Fed.R.Civ.P. 45(b), (d). If the subpoenaed documents are relevant and there is good cause for their production, the subpoena is enforced unless the documents are privileged or the subpoena is unreasonable, oppressive, annoying or embarrassing. The factors to be balanced by the trial court in determining the propriety of a subpoena are the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena. A person withholding subpoenaed information under a claim of attorney-client privilege or protected by the work product doctrine must expressly make the claim and "describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." Fed.R.Civ.P. 45(d)(2).

Rule 45(c)(1), Fed.R.Civ.P., provides that "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Furthermore, "[t]he issuing court must enforce this duty and impose an appropriate sanction--which may include lost earnings and reasonable attorney's fees-- on a party or attorney who fails to comply." Id.

### IV. DISCUSSION

**A. Documents Subpoenaed from Farhad Larian**

Mattel contends that each of the categories of documents it seeks from Farhad Larian is relevant and that there is good cause for production. First, Mattel contends that the Larian v. Larian proceedings are relevant because Farhad Larian's allegations about the timing of the origins and early development of Bratz and MGA's concealment thereof parallel and provide support for the crux of Mattel's claims in the instant litigation. Second, Mattel contends that documents about Farhad Larian's relationship with MGA are relevant to his credibility. In particular, Mattel contends that payments from Isaac Larian and/or MGA to Farhad Larian are

1    relevant to credibility and possible bias.  Third, Mattel contends that documents relating to this

2    action are clearly relevant, especially in light of MGA and Isaac Larian's threat to disqualify

3    Mattel's counsel based upon purported communications between Mattel's counsel and Farhad

4    Larian.  Fourth, Mattel contends that it seeks information about the location of responsive

5    documents to determine whether Farhad Larian destroyed documents or for another reason no

6    longer has them.

7         Mattel next contends that Farhad Larian has failed to carry his burden of demonstrating

8    that the requests at issue are unreasonable, oppressive, annoying or embarrassing.  Further, Mattel

9    contends that the protective order in place in this lawsuit is sufficient to address Farhad Larian's

10   confidentiality or privacy concerns.  Lastly, Mattel contends that Farhad Larian's privilege log is

11   inadequate because it fails to justify his claims of privilege and work product protection on a

12   document-by-document basis.

13        Farhad Larian contends that Mattel's motion should be denied because Mattel violated its

14   meet and confer obligations by filing the motion before he made his scheduled supplemental

15   production and before the parties' meet and confer discussions had concluded.  According to

16   Farhad Larian, on November 27, 2007, it was agreed that he would make a supplemental

17   production of documents on December 6, 2007, and that he would provide a written supplemental

18   response.  Farhad Larian complied with this agreement and, on December 6, 2007, provided a

19   written supplemental response and, as Mattel acknowledges, approximately six boxes containing

20   approximately 12,000 pages of documents.  Nevertheless, Mattel filed the instant motion on

21   December 6, 2007, without reviewing the supplemental document production and written

22   supplemental response.  Farhad Larian also represents that as of December 6, 2007, the day

23   Mattel filed the instant motion, the parties acknowledged the need for a further meet and confer

24   session, as reflected in the numerous e-mails and correspondence exchanged between counsel.

25   Furthermore, Farhad Larian represents that after Mattel filed the instant motion, he requested that

26   Mattel take the motion off-calendar because his supplemental responses resolved the parties'

27   disputes as to all but three requests and because there was potential for resolving the remaining

28

1   requests as well, but that Mattel refused.

2       Farhad Larian contends that in light of his supplemental production, he is now in full

3   compliance with Mattel's subpoena, except for three requests. He represents that he has produced

4   over 12,000 documents, including all non-privileged documents from the <u>Larian v. Larian</u> matters

5   that relate to Bratz (including its origin), Carter Bryant, Mattel, a fee agreement between Farhad

6   and MGA, and all documents related to appraisals of MGA that are not privileged or otherwise

7   covered by a protective order. He also contends that the privilege log he has produced to Mattel,

8   which describes the withheld documents by category instead of document-by-document, is

9   sufficient to substantiate his claims of privilege and work product protection. As for the three

10  remaining requests, Nos. 23, 24 and 41, Farhad Larian contends that they are overbroad, harassing

11  and cumulative and invade his and his family's privacy.

12              <u>Farhad Larian Has Substantially Complied with the Subpoena</u>

13      Farhad Larian made a substantial supplemental production and provided a supplemental

14  written response on December 6, 2007. Indeed, Mattel acknowledges that it received

15  approximately six boxes of documents from Farhad Larian, which contain approximately 12,000

16  pages of documents. Nevertheless, Mattel contends in its reply brief that there are a few

17  deficiencies in Farhad Larian's production. For example, Mattel contends that Farhad Larian has

18  not produced (1) documents bates stamped "MZ" and "ED"; (2) raw data provided to the

19  appraisers in the <u>Larian v. Larian</u> litigations and the 2000 financial models that Farhad Larian

20  claimed Isaac Larian prepared; (3) three boxes of documents that Farhad Larian's counsel showed

21  Mattel's counsel and upon which MGA's disqualification threats against Mattel's counsel are

22  based; (4) the Dutcher Declaration; and (5) documents responsive to Request Nos. 17-19. Mattel

23  also contends that Farhad Larian has improperly limited its production to only those documents

24  that directly reference Bratz and Carter Bryant.

25      At the hearing, counsel for Farhad Larian confirmed that all responsive documents,

26  including the documents identified in Mattel's reply brief, had been or would be produced after

27  the parties executed the Stipulation Regarding Protective Orders, which has now been

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

8

Exhibit 14  Page 345

1   accomplished.  Significantly, counsel represented that Farhad Larian did not limit his production

2   to only those documents that directly reference Bratz and Carter Bryant, and that his supplemental

3   responses make this point clear.  Counsel for Farhad Larian also represented that all privileged

4   documents have been identified on a privilege log.

5        In light of the December 6, 2007 supplementation, and based upon the representations

6   made by counsel for Farhad Larian at the hearing, Farhad Larian has substantially discharged his

7   obligation to comply with Mattel's subpoena.  Therefore, there is no need for an order compelling

8   any further production of documents.

9        <u>Farhad Larian's Objections to the Three Remaining Requests are Justified</u>

10       The only three requests to which Farhad Larian objects are Nos. 23, 24 and 41, which are

11   set forth in full below:

12       <u>Request No. 23</u>:  All DOCUMENTS RELATING TO any and all payments of
         money or transfers of anything of value that ISAAC LARIAN, his FAMILY
13       MEMBERS and/or MGA have made, have offered or have proposed, promised or
         agreed to make, to or for the benefit of YOU or YOUR FAMILY MEMBERS at
14       any time from January 1, 1999 through the present.

15       <u>Request No. 24</u>:  All DOCUMENTS RELATING TO any and all payments of
         money or transfers of anything of value that any PERSON has made, has offered
16       or has proposed, promised or agreed to make, to or for the benefit of YOU or
         YOUR FAMILY MEMBERS and that was related in any way to BRATZ,
17       BRYANT, MGA or this ACTION at any time from January 1, 1999 through the
         present.

18       <u>Request No. 41</u>:  DOCUMENTS sufficient to IDENTIFY since January 1, 1999
19       through the present (a) each account with any bank or financial institution that
         YOU have or have had, or that YOU have or have had any legal beneficial
20       interest in; (b) each telephone subscription service account that YOU have or have
         had, or that YOU use or have used; and (c) each email account that YOU have or
21       have had, or that YOU use or have used.

22   Farhad Larian contends that Mattel's stated justification for the requests – bias and credibility – is

23   questionable because he is not an adverse witness to Mattel.  Farhad Larian represents that MGA

24   has never asked him to testify on the company's behalf.  Rather, only Mattel intends to call him as

25   a witness.  Farhad Larian asserts that there is no reason for Mattel to impeach its own witness.

26       Furthermore, Farhad Larian contends that even if it is advantageous for Mattel to attack

27

28

1   his credibility, the scope of Mattel's requests go far beyond what Mattel is reasonably entitled to

2   receive through discovery.  He contends that pursuant to Rule 26, Fed.R.Civ.P., he should not be

3   subjected to discovery that is burdensome, cumulative, unnecessarily costly, or insufficiently

4   probative to the issues in the litigation to warrant the expense of production.  Furthermore, he

5   contends that the usual restrictions on discovery set forth in Rule 26 should be rigorously applied

6   to protect non-parties such as himself.

7        Farhad Larian contends that the three requests at issue are overbroad and harassing in

8   several respects.  First, he points out that the requests seek documents from 1999, which is five

9   years before this action was filed and six years before MGA was involved in this action.  Farhad

10  Larian contends that payments made to him and his family before this action was filed and before

11  MGA was a party to the case have no relevance to his credibility as a witness in this case.

12  Second, Farhad Larian contends that the requests, as phrased, would include any card that

13  accompanied a gift to anyone in the Larian family, regardless of the dollar value of the gift.

14  Farhad Larian contends that family gifts for birthdays, Chanukah, or general gifts of money

15  between family members, have nothing to do with bias and violate his and his family's privacy

16  rights.  Third, Farhad Larian contends that the requests are overbroad because they would require

17  him to disclose all documents reflecting payments he received as an employee of MGA and its

18  predecessor, a company he was employed by for decades.

19       Furthermore, Farhad Larian contends that he has already produced all non-privileged

20  documents which could potentially show bias, including the amount of money he was paid for his

21  shares of MGA, his consulting agreement with MGA after he sold his shares, and his fee

22  agreement with MGA.  He contends that requiring him to search for and produce additional

23  payment documents would only result in him producing cumulative information, which is not

24  only irrelevant but violates his and his family's right to privacy under the California Constitution.

25  Farhad Larian also contends that it would be far less intrusive for Mattel to question him at a

26  deposition about payments he received from Isaac Larian and MGA than for him to respond to the

27  three requests at issue.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

10

Exhibit _14_ Page _347_

1    Mattel's motion is denied with respect to Request Nos. 23, 24 and 41. The requests seek

2    information that is only minimally relevant to the claims and defenses in the case. Mattel's only

3    stated justification for the discovery is that it is relevant to establish Farhad Larian's credibility

4    and bias. Although impeachment information is discoverable, Mattel is not entitled to the type of

5    unfettered discovery it is now seeking. Rather, Rule 26(b)(2), Fed.R.Civ.P., requires the court to

6    restrict or prevent discovery if (i) the discovery is unreasonably cumulative or duplicative, or is

7    obtainable from some other source that is more convenient, less burdensome, or less expensive;

8    (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the

9    information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely

10   benefit, taking into account the needs of the case, the amount in controversy, the parties'

11   resources, the importance of the issues at stake in the litigation, and the importance of the

12   proposed discovery in resolving the issues. These restrictions are particularly important to

13   consider where the discovery requests are directed at a non-party. See Moon v. SCP Pool Corp.,

14   232 F.R.D. 633, 638 (C.D. Cal. 2005) (citing Dart Indus. Co., Inc. v. Westwood Chem. Co., Inc.,

15   649 F.2d 649 (9th Cir. 1980) (discovery should be "more limited to protect third parties from

16   harassment, inconvenience, or disclosure of confidential information.").

17   Aside from asserting that the requested information is relevant to bias and credibility,

18   Mattel has made no attempt to justify the significant breadth and burden of its requests. The

19   requests are so broad as to include every payment or gift, regardless of amount, made between

20   Farhad and Isaac Larian, their family members and MGA since 1999. The number of years for

21   which Mattel seeks financial information is overbroad. Mattel is seeking documents since 1999,

22   five years before this action was filed and six years before MGA became a party to this action.

23   Mattel fails to explain how any payments MGA or Isaac Larian made to Farhad or his family

24   members before this action was filed or MGA was a party to the action have any bearing on his

25   credibility as a witness in this action. The requests are also overbroad in that they encompass

26   customary gifts between family members and Farhad Larian's routine salary payments, which

27   have only minimal relevance to Farhad Larian's credibility and bias as a witness in this case.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

11

**Exhibit 14 Page 348**

1    The requests are also cumulative of discovery Farhad Larian has already provided.  In
2    particular, Farhad Larian represents that he has already disclosed to Mattel the amount of money
3    he was paid for his shares of MGA, his consulting agreement with MGA after he sold his shares,
4    and his fee agreement with MGA.  In light of this production , it is unreasonable to require Farhad
5    Larian to search for and produce gift receipts, cards, and the breadth of other financial documents
6    responsive to Request Nos. 23, 24 and 41.  Furthermore, there are other less intrusive and
7    burdensome means of obtaining discovery regarding Farhad Larian's credibility and bias.  For
8    example, Mattel may question Farhad Larian about payments he received from his brother and
9    MGA during his deposition.

10    Nor has Mattel justified the intrusive and harassing nature of the requests.  Personal
11    financial information is afforded protection by the California Constitution that is also recognized
12    by federal courts.  Cal. Const., Art. I, §1; Valley Bank of Nevada v. Superior Court, 15 Cal.3d
13    652, 656 (1975); Kelly v. City of San Jose, 114 F.R.D. 653, 656 (N.D. Cal. 1987) (federal courts
14    should give "some weight" to privacy rights that are protected by state constitutions); Soto v. City
15    of Concord, 162 F.R.D. 603, 616 (N.D. Cal. 1995) (right to privacy in financial information has
16    been recognized by federal courts).  When a privacy right is asserted as an objection to discovery,
17    the court must balance the need for the information versus the privacy right asserted.  Soto, 162
18    F.R.D. at 616.

19    As discussed previously, there is little to no need for the breadth of financial information
20    sought by Mattel.  Many of the documents covered by Request Nos. 23, 24, and 41 have little to
21    no relevance to Farhad Larian's credibility and bias as a witness in this case.  Furthermore,
22    Farhad Larian has already produced numerous documents showing payments he received from
23    both his brother and MGA.  There are also other less intrusive means for obtaining discovery
24    relating to Farhad Larian's credibility and bias.  Furthermore, the scope of these three requests
25    unduly intrude into Farhad Larian's private affairs.  The requests are so broad as to include gifts
26    exchanged between family members and Farhad Larian's paycheck stubs, and would require
27    Farhad Larian to disclose every account number he has at a bank or financial institution since

28

1   1999. Thus, the balance tips sharply in favor of protecting Farhad Larian's personal financial

2   information.

3   <u>Farhad Larian's Privilege Log is Inadequate</u>

4       Mattel challenges the sufficiency of Farhad Larian's privilege log. At issue is whether

5   Farhad Larian must describe and assert claims of privilege on a document-by-document basis, or

6   whether he may do so categorically. Farhad Larian is withholding approximately one bankers'

7   box of documents based upon claims of privilege and work product protection. Farhad Larian's

8   Opposition at p.20, n. 9.

9       Rule 45(d)(2), Fed.R.Civ.P., requires a party responding to a subpoena to provide

10  sufficient information to enable the party seeking discovery to assess the claims of privilege and

11  work product protection. The "universally accepted" means of claiming that requested documents

12  are privilege is by producing a document-by-document privilege log. <u>Gail v. New England Gas</u>

13  <u>Co., Inc.</u>, 234 F.R.D. 28, 33 (D. R.I. 2007). The advisory comments to the 1993 amendment to

14  Rule 26(b), however, state that a description of documents by category is appropriate where it

15  would be "unduly burdensome" to provide a document-by-document privilege log. Specifically,

16  the advisory comment states, "Details concerning time, persons, general subject matter, etc., may

17  be appropriate if only a few items are withheld, but may be unduly burdensome when voluminous

18  documents are claimed to be privileged or protected, particularly if the items can be described by

19  categories."

20      Farhad Larian relies upon the advisory comments and cases citing the advisory comments

21  to support his contention that as a non-party, it would be unduly burdensome to require a

22  document-by-document privilege log in this case. The cases cited by Farhad Larian, however, are

23  distinguishable from the present case. In <u>SEC v. Thrasher</u>, 1996 WL 125661 (S.D. N.Y. 1996),

24  the Commission sought production of all communications between defense counsel concerning

25  the lawsuit. The court observed that this demand, on it face, sought wholesale production of

26  documents that are ordinarily protected from disclosure. Further, the defendant represented that

27  the requested documents were extremely voluminous and that a document-by-document privilege

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

13

Exhibit _14_ Page _350_

1   log would be a long and fairly expensive project to undertake.  In <u>Fifty-Six Hope Road Music,</u>

2   <u>Ltd. v. Mayah Collections, Inc.,</u> 2007 WL 1726558 (Nev. 2007), the withheld documents

3   consisted of e-mail communications between plaintiffs and their counsel or between plaintiffs'

4   counsel.  Plaintiffs represented that there were hundreds and perhaps thousands of such email

5   communications which were protected by the attorney-client privilege and work product doctrine.

6          In contrast to the volume of documents at issue in <u>Thrasher</u> and <u>Fifty-Six Hope Road</u>

7   <u>Music</u>, Farhad Larian represents that he has about one bankers' box of privileged documents.

8   Farhad has not established that to produce a privilege log on a document-by-document basis for

9   this volume of documents is unduly burdensome.  Furthermore, even if it were appropriate for

10  Farhad Larian to produce a privilege log that described documents categorically, which it is not,

11  the information provided in Farhad Larian's privilege log is insufficient to enable Mattel to assess

12  the claims of privilege and work product protection as required by Rule 45, Fed.R.Civ.P.  For

13  example, in some instances, Farhad Larian fails to identify the author and recipient of the

14  documents being withheld.  In other instances, Farhad Larian fails to provide the date or date

15  ranges for the documents being withheld.  Therefore, Farhad Larian is ordered to provide a

16  supplemental privilege log that complies with Rule 45.

17  <u>B. Documents Subpoenaed from Kaye Scholer</u>

18         Mattel contends that the documents it seeks from Kaye Scholer are relevant for all the

19  same reasons previously articulated in the context of Mattel's motion to compel Farhad Larian to

20  produce documents.  Mattel contends that its requests are not unreasonable, oppressive, annoying

21  or embarrassing.  Mattel points out that Kaye Scholer has separate case files containing all or the

22  vast majority of responsive documents, which undermines Kaye Scholer's boilerplate burden

23  objections.  Mattel also points out that it offered to alleviate some of the burden to Kaye Scholer

24  by paying for Kay Scholer's copying costs and by providing a paralegal to inspect documents

25  from Kaye Scholer's files with an agreement that the inspection would not result in a waiver of

26  any privileges.  Further, Mattel contends that the protective order in place in this action is

27  sufficient to address any confidentiality concerns Kaye Scholer may have.

28

1    Mattel next contends that the documents it seeks from Kaye Scholer are not available from

2    other sources, as evidenced by Mattel's repeated and unsuccessful attempts to seek the same

3    documents from MGA.  Indeed, Mattel contends that the documents in Kaye Scholer's possession

4    are in fact documents within MGA's possession, custody and control that should have, but have

5    not yet been, produced pursuant to prior discovery orders obligating MGA and Isaac Larian to

6    produce documents from the Larian v. Larian proceedings.  Mattel also points out that it has

7    searched public files and served additional subpoenas on other third parties involved in the Larian

8    v. Larian proceedings.  Moreover, Mattel argues that federal law requires Kaye Scholer to comply

9    with the subpoena, even if the evidence sought is obtainable from another source.  See e.g. State

10   Farm Mut. Auto. Ins. Co. v. Accurate Medical, P.C., 2007 WL 2993840 at *1 (E.D. N.Y. 2007).

11   Mattel contends that Kaye Scholer's proposal to search only certain files for responsive

12   documents is unacceptable because it would inevitably exclude relevant documents.  In particular,

13   Mattel contends that Kaye Scholer's proposal would exclude relevant documents likely to be

14   found in its correspondence file, such as an August 29, 2003 letter from Isaac Larian to Mr.

15   Zarabi relating to an appraisal of MGA, and a letter from Farhad Larian's attorney to Kaye

16   Scholer detailing the evidence of Isaac Larian's alleged concealment of Bratz.  Mattel contends

17   that the relevance of these documents and others that are likely to exist justifies the burden of

18   production on Kaye Scholer.

19   Further, Mattel contends that Kaye Scholer has failed to produce a privilege log in

20   violation of Rule 45(d)(2), Fed.R.Civ.P., and therefore Kaye Scholer has waived any claims of

21   privilege.  In the alternative, Mattel requests an order compelling Kaye Scholer to produce a

22   document-by-document privilege log.

23   Kaye Scholer contends that the instant motion is premature, unnecessary and a waste of

24   judicial resources.  Kaye Scholer represents that after meeting and conferring in good faith, it

25   agreed to produce documents responsive to thirty of the thirty-five requests, and that the

26   remainder of the requests are grossly overbroad.  Further, Kaye Scholer represents that it has

27   completed its review pursuant to the agreement, and is prepared to produce responsive

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

15

Exhibit 14 Page 352

1   documents. However, Kaye Scholer continues to object to producing a document-by-document

2   privilege log on the grounds that it would be unduly burdensome and expensive. Kaye Scholer

3   emphasizes that Mattel is seeking documents from a law firm, and therefore the vast majority of

4   responsive documents are protected by multiple privileges, including but not limited to the

5   attorney-client privilege and the work product doctrine. Kaye Scholer estimates that it would take

6   in excess of seventy (70) hours to create a document-by-document privilege log for this case, and

7   that the Federal Rules of Civil Procedure do not require Kaye Scholer to undertake such an

8   unreasonable burden. Furthermore, Kaye Scholer contends that the failure to produce a

9   document-by-document privilege log does not result in a per-se waiver of any privilege.

10       MGA also opposes Mattel's motion for several reasons. First, MGA contends that

11   Mattel's requests are overbroad, encompassing documents that are only marginally related, if at

12   all, to the claims and defenses in the case. Second, MGA contends that Mattel's requests are

13   completely duplicative of requests it has served on the parties in the case. In particular, MGA

14   contends that Mattel has sought the Larian v. Larian documents from both MGA Entertainment,

15   Inc. and Isaac Larian. See Mattel's Request No. 41 in Mattel's First Set of Request for

16   Production of Documents and Tangible Things to MGA, and Request Nos. 123-125 in Mattel's

17   First Set of Requests for Documents and Things to Isaac Larian. MGA and Isaac Larian are both

18   under court order to comply with the requests, although Isaac Larian is only required to produce

19   documents that refer or relate to Bratz in response to Request Nos. 123-125. Third, MGA

20   contends that Mattel's requests to Kaye Scholer are much broader than requests Mattel previously

21   served on the parties to this case. Fourth, MGA contends that there is no reason Mattel cannot

22   obtain a complete set of all relevant documents from the Larian v. Larian proceedings without this

23   third-party subpoena. Fifth, MGA contends that the vast majority of documents Mattel seeks

24   from Kaye Scholer are protected by the attorney-client privilege, the work product doctrine, or

25   other privileges, and that it is improper for Mattel to attempt to subpoena these documents and

26   then insist that Kaye Scholer produce a document-by-document privilege log. In summary, MGA

27   contends that Mattel has misused the subpoena process by serving deliberately overbroad and

28

1    burdensome requests in an attempt to harass and intimidate MGA and non-parties.  Accordingly,

2    MGA contends that Mattel's motion should be denied or Mattel's subpoena should be

3    substantially limited in scope.

4                    Mattel's Subpoena is Overbroad, Unduly Burdensome and Cumulative

5            Mattel's subpoena to Kaye Scholer is overbroad and is not reasonably tailored to seek

6    documents relevant to the claims and defenses in this case.  Of the thirty-five requests Mattel

7    served on Kaye Scholer, all but one begin with the phrase "all documents" or a similarly broad

8    phrase.  For example, Request Nos. 1-3, which are set forth below, seek virtually all documents

9    relating to lawsuits and/or arbitrations between Isaac Larian and Farhad Larian:

10           Request No. 1:  All DOCUMENTS, including all COMMUNICATIONS,
             RELATING TO any and all arbitration proceedings between FARHAD LARIAN
11           and ISAAC LARIAN, including without limitation all video and/or sound
             recordings, transcripts, exhibits, memoranda, witness statements, declarations,
12           affidavits and sworn testimony given by any PERSON in connection with such
             arbitration proceedings.
13
             Request No. 2:  All DOCUMENTS including all COMMUNICATIONS,
14           RELATING TO Los Angeles Superior Court Case No. BC301371 filed by
             FARHAD LARIAN against ISAAC LARIAN and/or any related proceedings,
15           including any appeal thereof, and including without limitation all video and/or
             sound recordings, transcripts, exhibits, pleadings, briefs, memoranda, witness
16           statements, declarations, affidavits and sworn proceedings and/or any appeal
             related to such lawsuit.
17
             Request No. 3:  All DOCUMENTS RELATING TO Los Angeles Superior Court
18           Case No. BC329501 filed by FARHAD LARIAN against ISAAC LARIAN,
             MORAD ZARABI and Kambiz Zarabi, and/or any related proceedings and/or any
19           appeal of such lawsuit, including without limitation all video and/or sound
             recordings, transcripts, exhibits, pleadings, briefs, memoranda, witness
20           statements, declarations, affidavits and sworn testimony given by any PERSON in
             connection with such suit and/or related proceedings and/or any appeal related to
21           such lawsuit.

22    Mattel has not limited the subject matter of these requests (and others) in any way to exclude
23
      irrelevant information.  To the contrary, Request Nos. 1-3 are drafted in the broadest possible
24
      language, encompassing documents that are only marginally related, if at all, to this case.  As
25
      such, Mattel's requests are also unduly burdensome.
26
             Furthermore, Mattel's requests are clearly duplicative of other requests propounded to the
27

28

1   parties in this action.  In particular, the requests relating to the <u>Larian v. Larian</u> proceedings are

2   duplicative of Mattel's Request No. 41 to MGA and Request Nos. 123-125 to Isaac Larian.

3   During the hearing, counsel for MGA acknowledged that Isaac Larian is required to comply with

4   Request Nos. 123-125, and is prepared to review Kaye Scholer's files for responsive documents

5   to fulfill his responsibility.  Also during the hearing, Kaye Scholer agreed to make its

6   correspondence file available to MGA's counsel for review.

7        In light of Mattel's failure to take reasonable steps to avoid unduly burdening Kaye

8   Scholer and in light of MGA's and Kaye Scholer's representations during the hearing as outlined

9   above, Mattel's motion to compel Kaye Scholer to comply with the full scope of the subpoena is

10   denied.

11        <u>Kaye Scholer's Compromise is Reasonable Under the Circumstances</u>

12        As an alternative to complying with the full scope of the subpoena, Kaye Scholer agreed

13   to review the following files for documents responsive to every one of Mattel's requests except

14   Nos. 1-3, 6 and 10:  (1) pleading files; (2) discovery files; and (3) arbitration exhibits.  Kaye

15   Scholer's Opposition at p.5.  Kaye Scholer's compromise is reasonable under the circumstances.

16   Narrowing the scope of Kaye Scholer's search in this manner will significantly minimize the

17   burden, expense, and inconvenience imposed by the subpoena because, unlike Kaye Scholer's

18   other files, most of the documents in the three files it agreed to search are not likely to be covered

19   by the attorney-client privilege or work product doctrine.  Further, narrowing Kaye Scholer's

20   search in this manner will not significantly deprive Mattel of relevant discovery to which it is

21   entitled because, as stated previously, MGA's counsel represented during the hearing that Isaac

22   Larian is prepared to review Kaye Scholer's documents, including the correspondence file, to

23   comply with Request Nos. 123-125.

24        Accordingly, to the extent it has not already done so, Kaye Scholer shall conduct the

25   agreed upon search of its three files and produce documents responsive to all of Mattel's requests,

26   except Nos. 1-3, 6 and 10.

27   //

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

18

Exhibit _14_  Page _355_

<u>Kaye Scholer Must Produce a Privilege Log in Compliance with Rule 45</u>

Mattel contends that Kaye Scholer has waived its claims of privilege by failing to produce any privilege log.  The law is clear, however, that the failure to produce a document-by-document privilege log does not result in a per-se waiver of any privilege.  See <u>Burlington Northern & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. Of Mont.</u>, 408 F.3d 1142, 1147 (9th Cir. 2005).  In this case, Kaye Scholer raised a legitimate objection to producing a document-by-document privilege log on the grounds that it would impose an undue burden.  Under these circumstances, a finding of waiver is unjustified.

Nevertheless, Kaye Scholer's claim of undue burden is unpersuasive.  Kaye Scholer has acknowledged that most of the documents in the three files it has agreed to search are not likely to be covered by the attorney-client privilege or work product doctrine.  Kaye Scholer Opposition at pp. 5 and 9.  Indeed Kaye Scholer agreed to search these files precisely because they were not likely to contain privileged documents.  Therefore, requiring Kaye Scholer to produce a document-by-document privilege log for documents withheld from these three files should not impose an undue burden.  Accordingly, Kaye Scholer is ordered to produce a document-by-document privilege log for documents withheld from the three files it agreed to search.

## V. CONCLUSION

For the reasons set forth above, it is ordered as follows:

1. Farhad Larian is in substantial compliance with Mattel's subpoena with respect to all of the requests, except Nos. 23, 24 and 41.  Request Nos. 23, 24 and 41 are overbroad, unduly burdensome, cumulative, harassing and invade the right of privacy of Farhad Larian and his family.  Therefore, Mattel's motion to compel Farhad Larian to produce documents in response to the subpoena is denied.

2. Farhad Larian shall produce a document-by-document privilege log to Mattel no later than January 30, 2008.

3. Farhad Larian's request for sanctions against Mattel is denied.

4. Mattel's subpoena to Kaye Scholer is overbroad, unduly burdensome and cumulative.

1  Therefore, Mattel's motion to compel Kaye Scholer to produce documents responsive to the

2  subpoena is denied.  Instead, Kaye Scholer is ordered to abide by its agreement to review its

3  pleading files, discovery files, and arbitration exhibits for documents responsive to all of Mattel's

4  requests, except Request Nos. 1-3, 6 and 10.  Kaye Scholer shall produce responsive documents

5  no later than January 30, 2008.

6        5. Kaye Scholer shall also produce a document-by-document privilege log identifying all

7  documents withheld from its pleading files, discovery files, and arbitration exhibits, no later than

8  January 30, 2008.

9        6. Mattel shall abide by its agreement to reimburse Farhad Larian and Kaye Scholer for

10  their copying costs.

11        7. Isaac Larian is granted an extension of time to comply with Request Nos. 123-125.

12  Isaac Larian shall deliver documents responsive to these requests to Mattel no later than 12:00

13  p.m. on January 25, 2008.

14        8. Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

15  Master, Mattel shall file this Order with the Clerk of Court forthwith.

16

17  Dated: January 25, 2008                    /s/Edward A. Infante

18                                         HON. EDWARD A. INFANTE (Ret.)
                                             Discovery Master

19

20

21

22

23

24

25

26

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

20

Exhibit _14_ Page 3_57_

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on January 25, 2008, I served the attached ORDER RE MATTEL'S MOTIONS TO COMPEL FARHAD LARIAN, KAYE SHOLER AND STERN & GOLDBERG TO PRODUCE DOCUMENTS in the within action by email addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| Matthew M. Werdegar, Esq. | Keker & Van Nest | mwerdegar@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| Audrey Walton-Hadlock, Esq. | Keker & Van Nest | awalton-hadlock@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Thomas J. Nolan, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tnolan@skadden.com |
| Raoul D. Kennedy, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | rkennedy@skadden.com |
| Amy S. Park, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | apark@skadden.com |
| Harriet S. Posner, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | hposner@skadden.com |
| Carl Alan Roth, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | croth@skadden.com |
| Timothy A. Miller, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tmiller@skadden.com |
| Marcus R. Mumford, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Mmumford@skadden.com |
| Patricia Glaser, Esq. | Christensen, Glaser, Fink, et al. | pglaser@chrisglase.com |
| Scott E. Gizer, Esq. | Christensen, Glaser, Fink, et al. | sgizer@chrisglase.com |
| Alisa Morgenthaler-Lever, Esq. | Christensen, Glaser, Fink, et al. | amorgentaler@chrisglase.com |
| Alan N. Goldberg, Esq. | Stern & Goldberg | agoldberg@sgattys.com |
| Mark Overland, Esq. | Overland, Borenstein, et al. | moverland@obsklaw.com |
| Alexander Cote, Esq. | Overland, Borenstein, et al. | acote@obsklaw.com |
| Bryant S. Delgadillo, Esq. | Kaye Scholer | bdelgadi@kayscholer.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on January 25, 2008, at San Francisco, California.

_____
                  Sandra Chan

Exhibit 14 Page 358

# Miscellaneous Filings (Other Documents)

2:04-cv-09049-SGL-RNB Carter Bryant v. Mattel Inc

(RNBx), AO279, DISCOVERY, PROTORD, RELATED-G

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

**Notice of Electronic Filing**

The following transaction was entered by Alban, Juan on 1/28/2008 at 12:54 PM PST and filed on 1/28/2008
**Case Name:**        Carter Bryant v. Mattel Inc
**Case Number:**      2:04-cv-9049
**Filer:**            Mattel Inc
**Document Number:** 1699

**Docket Text:**
Order re Mattel's Motions to Compel Farhad Larian, Kaye Scholer and Stern & Goldberg to Produce Documents filed by Defendant Mattel Inc (Alban, Juan)

**2:04-cv-9049 Notice has been electronically mailed to:**

Juan Pablo Alban     juanpabloalban@quinnemanuel.com

Timothy L Alger     timalger@quinnemanuel.com

Christa M Anderson     canderson@kvn.com

Michelle M Campana     michelle.campana@skadden.com

Jon D Corey     joncorey@quinnemanuel.com

Alexander H Cote     acote@obsklaw.com

Leah Chava Gershon     leah@spertuslaw.com

Alan Neil Goldberg     agoldberg@sgattys.com

Emil W Herich     eherich@kmwlaw.com

John W Keker     jkeker@kvn.com, DRoberts@kvn.com, efiling@kvn.com

Raoul D Kennedy     rkennedy@skadden.com

Alisa Morgenthaler Lever     amorgenthaler@chrisglase.com

Nathan Meyer     nmeyer@kayescholer.com, dclow@kayescholer.com

Exhibit /4 Page 359

Cyrus S Naim   cyrusnaim@quinnemanuel.com

Thomas J Nolan   tnolan@skadden.com, carl.roth@skadden.com, marcus.mumford@skadden.com

Mark E Overland   moverland@obsklaw.com

Michael H Page   mhp@kvn.com

Kenneth A Plevan   kenneth.plevan@skadden.com, drogosa@skadden.com, sumclaug@skadden.com

Brett Dylan Proctor   dylanproctor@quinnemanuel.com

John B Quinn   johnquinn@quinnemanuel.com

David C Scheper   dscheper@obsklaw.com, feseroma@obsklaw.com

Oleg Stolyar   alexstolyar@quinnemanuel.com

Kien C Tiet   ktiet@sgattys.com

John Elliot Trinidad   jtrinidad@kvn.com, efiling@kvn.com, yjayasuriya@kvn.com

Audrey Walton-Hadlock   awaltonhadlock@kvn.com

Matthew M Werdegar   mmw@kvn.com

Michael T Zeller   michaelzeller@quinnemanuel.com

**2:04-cv-9049 Notice has been delivered by First Class U. S. Mail or by fax to: :**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**C:\Documents and Settings\lorrainerobles\Desktop\MATTEL\Order re Mattel's Motions to Compel.PDF
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=1/28/2008] [FileNumber=5265683-0]
[b90e9037e8c528f2d567bc85114c4aaa1713c671077be21a773ae6519e5f91c70a37
3be159128f53671daae8ab9cc894a0d7711b23710d92b5162f8da4167739]]

Exhibit _14_ Page_360_

# Exhibit 15

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION

CARTER BRYANT, an individual,

     Plaintiff,

    vs.

MATTEL, INC., a Delaware
corporation,

      Defendants.

No. CV 04-9049 SGL (RNBx)
Consolidated with
Nos. CV 04-9405 and
05-2727

**CERTIFIED
COPY**

_____
AND CONSOLIDATED ACTIONS.
_____

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Los Angeles, California

Wednesday, March 4, 2009

Volume 1

Reported by:
CHERYL R. KAMALSKI
CSR No. 7113

Job No. 106479



EXHIBIT __15__ PAGE 361



877.955.3855
www.sarnoffcourtreporters.com

IRVINE □ LOS ANGELES □ SAN FRANCISCO □ LAS VEGAS □ SAN DIEGO

SARNOFF
*Court Reporters and
Legal Technologies*

TRANSCRIPT OF PROCEEDINGS          03/04/09

1                  UNITED STATES DISTRICT COURT
                  CENTRAL DISTRICT OF CALIFORNIA
2                        EASTERN DIVISION

3

4    CARTER BRYANT, an individual,

5        vs.                        No. CV 04-9049 SGL (RNBx)
                                    Consolidated with
6    MATTEL, INC., a Delaware       Nos. CV 04-9405 and
     corporation,                   05-2727
7
             Defendants.
8

9

10

11   _____

12   AND CONSOLIDATED ACTIONS.

13

14

15

16       REPORTER'S TRANSCRIPT OF PROCEEDINGS, Volume 1,

17   taken at 555 West Fifth Street, 48th Floor, Los Angeles,

18   California, beginning at 10:08 a.m. and ending at

19   12:12 p.m. on Wednesday, March 4, 2009, before

20   CHERYL R. KAMALSKI, Certified Shorthand Reporter No. 7113.

21

22

23

24

25
                              EXHIBIT _15_ PAGE _362_

2

```
 1    APPEARANCES:

 2

 3    Discovery Master:

 4         ROBERT C. O'BRIEN
           Attorney at Law
 5         555 West Fifth Street, Suite 4800
           Los Angeles, California  90013-1065
 6         (213) 629-7400

 7    For Defendant Mattel, Inc.:

 8         QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
           BY:  MICHAEL T. ZELLER
 9         BY:  JON COREY
           Attorneys at Law
10         865 South Figueroa Street, 10th Floor
           Los Angeles, California 90017
11         (213) 624-7707

12         MATTEL, INC.
           BY:  JILL E. THOMAS
13         Assistant General Counsel
           333 Continental Boulevard
14         El Segundo, California 90245-5012
           (310) 252-2000

15

      For Defendants MGA and Isaac Larian:
16

           SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
17         BY:  JASON D. RUSSELL
           BY:  JENNIFER K. DEL CASTILLO
18         Attorneys at Law
           300 South Grand Avenue
19         Los Angeles, California 90071
           (213) 687-5000

20

      For Defendant IGWT Group and IGWT 826 Investments:
21

           VALLE & ASSOCIATES
22         BY:  JEFFREY B. VALLE
           BY:  ILAN WISNIA
23         Attorneys at Law
           11911 San Vicente Boulevard, Suite 324
24         Los Angeles, California 90049
           (310) 476-0300
25                             EXHIBIT __15__ PAGE 363
```

```
 1    APPEARANCES (Continued):

 2

 3    For 808 Investors, LLC, Vision Capital, LLC, and OmniNet
      Capital, LLC:
 4
              BINGHAM McCUTCHEN LLP
 5            BY:   TODD E. GORDINIER
              BY:   PETER VILLAR
 6            Attorneys at Law
              600 Anton Boulevard, 18th Floor
 7            Costa Mesa, California 92626-1924
              (714) 830-0622
 8
      Also Present:
 9
              STEPHEN HAUSS
10            CRAIG HOLDEN

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
                                   EXHIBIT   15   PAGE 364
```

1   abusive fishing expedition, which is what we've got going

2   on.

3           MR. O'BRIEN:  And I understand your position.

4   I'm not negotiating with you on MGA's behalf and I'm not

5   suggesting that you -- I'm just trying to get an idea of

6   where you think the law -- what the parameters of

7   discovery are with respect to your client.  So I'm not

8   telling you you should, on the record or otherwise, offer

9   to give them documents if you don't think they're due.

10  I'm not trying to push you into that position and hold

11  it -- the point of this isn't to meet and confer.  I'm

12  just trying to get an idea of where you see the contours

13  of the law with respect to your client as to what

14  discovery might or might not be proper.

15          And I understand your position that on this

16  record you don't think any of the current discovery is

17  proper, but --

18          MR. GORDINIER:  Right.  Assuming they can't get,

19  from MGA, the payments from MGA on the loan, I have no

20  problem with that.  I have no problem with the loan

21  documents.

22          Now, it's true MGA was not a party directly to

23  the transaction between Omni 808 and Wachovia.  They had

24  to sign some guarantees, I think, or some

25  indemnifications, I'm not sure exactly, I'm not a

EXHIBIT __5__ PAGE 365

1   corporate guy.  But that deal was negotiated between

2   Omni 808 and Wachovia.  And so -- let's make sure that I'm

3   communicating with you, and that is on this record they're

4   not entitled to anything.  However, what I want more than

5   anything out of today is efficiency and economy and peace

6   and you guys in the front of this table go on and do your

7   thing leading to the trial between all the MGA entities

8   and the Mattel entities and leave me and my clients alone.

9   And if that will cut it off, I'd be happy to do that.

10  That's my position.  Do you see what I'm saying?

11          MR. O'BRIEN:  I do.  I understand.  Mr. Zeller

12  took the position that in the Ninth Circuit the law that

13  we're dealing with here, unlike New York, a party isn't

14  required to go to their adversary before going to a third

15  party to seek discovery.  Do you have a -- you seem to be

16  taking a different position --

17          MR. GORDINIER:  It's ironic --

18          MR. O'BRIEN:  -- as a practical matter.  Is there

19  a case cite or.

20          MR. GORDINIER:  Absolutely.  It's ironic that

21  Mr. Zeller would cite the Ninth Circuit.  Google

22  Mr. Zeller and Mattel and read the Ninth Circuit's opinion

23  on why a subpoena like this should be quashed, and why

24  sanctions against an attorney can be granted.  The case

25  name is Mattel versus Walking Mountain Productions.  So

EXHIBIT __15__ PAGE 346

```
 1    that's the case I'd cite to you.

 2              MR. O'BRIEN:  All right.

 3              MR. GORDINIER:  Here it is, it's 353 F 3rd 792.

 4    If you want, I can hand it up to you.

 5              MR. O'BRIEN:  I can take a look at it.  One --

 6              MR. GORDINIER:  Most of it is not related.  Go to

 7    the end where they're upholding -- Judge Lew found that

 8    what Mr. Zeller was doing was improper, and sanctioned

 9    him, and the Ninth Circuit affirmed it.  So if you want

10    the authority I'm relying on, that's it.

11              MR. O'BRIEN:  Okay.  I'll take it -- if that's

12    the authority you're relying on for that position, I'll

13    take it.

14              The one thing that I do want to caution here is

15    that we're not litigating that case.  I don't know what

16    the discovery issues were in that case.  We're going to be

17    together for a fair amount of time.  I know you may not --

18              MR. GORDINIER:  Hopefully not me.

19              MR. O'BRIEN:  I understand that.

20              MR. GORDINIER:  No offense, Mr. O'Brien.

21              MR. O'BRIEN:  None taken.  But I do -- I don't

22    want to have, unless it's directly relevant, and I'm

23    sure you weren't intending to do so, but I don't want any

24    sort of ad hominum attacks on counsel and question their

25    motives and that sort of thing.  My feeling here is that
```

EXHIBIT _15_ PAGE 3 2 7

1    everybody comes to this table in good faith.  We've got

2    excellent lawyers here.  And so I just caution that.  I

3    don't think you were attacking Mr. Zeller personally.

4    I'll certainly take a look at the case.

5            The point that I was trying to get to is this

6    issue in the Ninth Circuit, do you have to go first, is it

7    a requirement that you go first to the party to obtain the

8    discovery, and then to the third party.  It may make

9    practical sense from a litigation standpoint, but is

10   that -- is it your position that that is not the law?

11           MR. GORDINIER:  No.  You, trial courts, you, as

12   Discovery Master, trial courts have discretion.  However,

13   it is a higher burden when you're going to a third party.

14   And if it's cumulative and duplicative of what can be and

15   should be and already has been sought from a party,

16   there's no reason to -- and the court should quash the

17   subpoena to the third party.  But I'm not telling you that

18   it's a requirement under the Ninth Circuit.  I'm not

19   telling you that.

20           MR. O'BRIEN:  Okay.

21           MR. GORDINIER:  I don't have anything else on the

22   substance, since you don't want to hear about the

23   procedure, other than to say the lack of procedure here so

24   colored the substance, we didn't have a chance to properly

25   present this to you.  And I was optimistic, as I am

SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
877.955.3855
EXHIBIT 15 PAGE 368

1           I, the undersigned, a Certified Shorthand

2   Reporter of the State of California, do hereby certify:

3          That the foregoing proceedings were taken

4   before me at the time and place herein set forth; that

5   any witnesses in the foregoing proceedings, prior to

6   testifying, were duly sworn; that a record of the

7   proceedings was made by me using machine shorthand

8   which was thereafter transcribed under my direction;

9   that the foregoing transcript is a true record of the

10   testimony given.

11         Further, that if the foregoing pertains to

12   the original transcript of a deposition in a Federal

13   Case, before completion of the proceedings, review of

14   the transcript [  ] was [  ] was not requested.

15         I further certify I am neither financially

16   interested in the action nor a relative or employee

17   of any attorney or party to this action.

18         IN WITNESS WHEREOF, I have this date

19   subscribed my name.

20

21   Dated:    MAR 0 9 2009

22

23                 _Cheryl R. Kamalski_

                    CHERYL R. KAMALSKI

24                    CSR No. 7113

25

EXHIBIT _15_ PAGE 369

# Exhibit 16

3690

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

– – –

HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

MATTEL, INC.,                        )
                                     )
              PLAINTIFF,             )
                                     )
         VS.                         )    NO. CV 04-09049
                                     )
MGA ENTERTAINMENT, INC., ET. AL.,    )
                                     )
              DEFENDANTS.            )    TRIAL DAY 18
_____)    MORNING SESSION
AND CONSOLIDATED ACTIONS,            )    PAGES 3690-3821
                                     )
_____)

CERTIFIED COPY

REPORTER'S TRANSCRIPT OF JURY TRIAL PROCEEDINGS

RIVERSIDE, CALIFORNIA

TUESDAY, JULY 1ST, 2008

8:44 A.M.

THERESA A. LANZA, RPR, CSR
FEDERAL OFFICIAL COURT REPORTER
3470 12TH STREET, RM. 134
RIVERSIDE, CALIFORNIA  92501
951-274-0844
WWW.THERESALANZA.COM

EXHIBIT __16__ PAGE 3.70

3691

```
 1   APPEARANCES:

 2
     ON BEHALF OF MATTEL, INC.:
 3
                          QUINN EMANUEL
 4                        BY:   JOHN QUINN
                                JON COREY
 5                              MICHAEL T. ZELLER
                                HARRY OLIVAR
 6                              TIMOTHY ALGER
                          865 S. FIGUEROA STREET,
 7                        10TH FLOOR
                          LOS ANGELES, CALIFORNIA  90017
 8

 9

10   ON BEHALF OF MGA ENTERTAINMENT:

11                        SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
                          BY:   THOMAS J. NOLAN
12                              JASON RUSSELL
                                RAOUL SLOAN
13                              LAUREN AGUIAR
                                CARL ROTH
14                        300 SOUTH GRAND AVENUE
                          LOS ANGELES, CALIFORNIA  90071-3144
15                        213-687-5000

16

17

18

19

20

21

22

23

24

25
```

EXHIBIT __16__ PAGE 3 7/

3692

```
 1                        I N D E X

 2                                               PAGE

 3   DEFENSE CASE (CONTINUED)........................ 3705

 4   PLAINTIFF CASE (INTERRUPTED)..................... 3770

 5

 6

 7   DEFENSE
     WITNESS        DIRECT    CROSS    REDIRECT    RECROSS
 8   JANET LENORE BRYANT  (VIA VIDEO DEPOSITION)

 9   BY MR. ZELLER    3705

10

11   PLAINTIFF
     WITNESS        DIRECT    CROSS    REDIRECT    RECROSS
12   FARHAD LARIAN

13   BY MR. QUINN     3770              3798, 3816
     BY MR. NOLAN              3790                3809
14

15
```
━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━
```
16

17         EXHIBITS          RECEIVED

18           734               3768
             736               3768
19           744               3768
             754               3768
20           767               3768
             774               3768
21           778               3768
             779               3768
22           781               3768
             783               3768
23           795               3768
           18569               3811

24

25                          EXHIBIT  16  PAGE 32
```

TUESDAY, JULY 1, 2008                    TRIAL DAY 18, MORNING SESSION

3801

1   THAT ON 403 GROUNDS.

2          MR. QUINN:   UNDERSTOOD, YOUR HONOR.

3          MAY WE PUBLISH THAT?

4          THE COURT:   JUST THE BOTTOM ONE.

5          MR. NOLAN:   CAN I BE HEARD AT SIDE-BAR?          11:39

6          THE COURT:   YES, YOU MAY.

7          (WHEREUPON, THE FOLLOWING PROCEEDINGS

8          WERE HELD AT SIDE-BAR:)

9          THE COURT:   I SHOULD CHANGE THAT RESPONSE:  'UNLESS

10  YOU WANT TO DO IT THAT WAY," COUNSEL.   PERHAPS YOU MIGHT WANT   11:39

11  TO DO THAT.

12          MR. NOLAN:   "YOUR APPLICATION PROVES FALSE."

13          THE COURT:   CORRECT.

14          MR. QUINN:   WELL, THEN WE SHOULD HAVE THIS LINE HERE.

15          THE COURT:   LET'S INCLUDE THE RESPONSE.          11:40

16          MR. QUINN:   RIGHT.

17          THE COURT:   OUT OF COMPLETENESS, I'LL PERMIT THAT.

18          MR. QUINN:   RIGHT.   THEN WOULDN'T THE TOP LINE IN

19  RESPONSE TO THE RESPONSE --

20          THE COURT:   NO.   GET THAT OUT.   THAT'S THE PART --   11:40

21          MR. NOLAN:   JUST THAT --

22          THE COURT:   UNLESS THERE'S NO OBJECTION.

23          MR. NOLAN:   NO.   LET'S DO IT THIS WAY.   I THINK THIS

24  IS THE WAY.

25          THE COURT:   I AGREE.          11:40

EXHIBIT __16__ PAGE 323

TUESDAY, JULY 1, 2008          TRIAL DAY 18, MORNING SESSION

3802

1          THE COURT:  SO I'LL INCLUDE IN THE RECORD THE

2     ORIGINAL MESSAGE, DATED MAY 24 AT 6:32 P.M., THE RESPONSE, MAY

3     24, 2000 -- THE COURT IS EXCLUDING ON 403 GROUNDS THE NEXT

4     DAY'S RESPONSE ON MAY 25, 12:49.

5          AND JUST SO YOU KNOW, IT'S BASICALLY BECAUSE OF THE     11:4C

6     ANSWERS, THE MUDDLED ANSWERS WE'RE GETTING.

7          MR. NOLAN:  I UNDERSTAND THAT.

8          THE COURT:  VERY GOOD.

9          (WHEREUPON, SIDE-BAR PROCEEDINGS WERE CONCLUDED.)

10          THE COURT:  COUNSEL, AS I INDICATED, I'M ADMITTING     11:41

11     THE BOTTOM TWO MESSAGES.

12          MR. QUINN:  UNDERSTOOD, YOUR HONOR.

13          THE COURT:  YOU MAY PROCEED.

14          MR. QUINN:  IF WE MAY PUBLISH THAT, YOUR HONOR.

15     BY MR. QUINN:                                               11:41

16     Q     THIS E-MAIL AT THE BOTTOM IS THE E-MAIL WE'VE BEEN

17     DISCUSSING.

18          DO YOU RECALL WHAT THIS FIREMAN'S FUND LAWSUIT WAS

19     ABOUT?

20     A     YES, I DO.                                            11:4

21     Q     WHAT DID IT CONCERN, JUST IN GENERAL TERMS?

22     A     BAD FAITH CLAIM AGAINST INSURANCE COMPANY.

23     Q     MGA WAS BRINGING A CLAIM AGAINST ITS INSURANCE COMPANY; IS

24     THAT CORRECT?

25     A     YES.                                                  11:4

EXHIBIT _16_ PAGE 3 24

TUESDAY, JULY 1, 2008          TRIAL DAY 18, MORNING SESSION

3803

| 1 | Q | THERE WAS A QUESTION ABOUT -- WHO WAS MARTY KATZ? |

1   Q    THERE WAS A QUESTION ABOUT -- WHO WAS MARTY KATZ?

2   A    MGA'S ATTORNEY.

3   Q    MGA'S ATTORNEY?

4   A    AND MY ATTORNEY, YES.

5   Q    THERE WAS AN ISSUE ABOUT WHETHER LEGIBLE COPIES EXISTED OF          11:42

6   CERTAIN DOCUMENTS.

7         DO YOU RECALL THAT?

8   A    YES, I DO.

9   Q    WHAT YOU WROTE TO YOUR BROTHER IS THAT "YOU INSTRUCTED ME

10  TO NOT PROVIDE THOSE TO MARTY AND TO TELL HIM WE COULD NOT FIND        11:42

11  THE ORIGINALS"; CORRECT?

12  A    THAT'S WHAT I WROTE THERE.

13  Q    BUT, IN FACT, WHAT YOU WROTE WAS, YOU FOUND THE ORIGINAL;

14  YOU HAD THE ORIGINALS; CORRECT?

15  A    THAT'S WHAT IT SAYS, YES.                                         11:42

16  Q    SO YOUR BROTHER HAD INSTRUCTED YOU -- WHAT YOU WROTE WAS,

17  YOUR BROTHER HAD INSTRUCTED YOU TO LIE TO THE ATTORNEY AND SAY

18  THAT THEY COULDN'T BE FOUND; CORRECT?

19  A    AS I SAID, THAT PART, I HAD ADDED MYSELF AS PART OF MY

20  TIT-FOR-TAT GAME WITH ISAAC.                                          11:42

21  Q    ARE YOU SAYING THAT YOU MADE THIS UP?

22  A    YES.

23  Q    WHAT YOU'RE TELLING US IS THAT YOU LIED IN THIS E-MAIL;

24  CORRECT?

25  A    I LIED IN THAT E-MAIL AS FAR AS HIM TELLING ME NOT TO GIVE       11:4

EXHIBIT  16  PAGE 375

TUESDAY, JULY 1, 2008                    TRIAL DAY 18, MORNING SESSION

3804

```
 1   THE ORIGINALS TO MARTY KATZ.

 2   Q    YOU INDICATED THAT ANY OF THE DOCUMENTS YOU HAD THAT YOU

 3   HAD COLLECTED IN CONNECTION WITH YOUR CASE CONCERNING BRATZ --

 4   IN RESPONSE TO MR. NOLAN'S QUESTION, YOU SAID THAT MGA WOULD

 5   HAVE COPIES OF ALL OF THOSE; CORRECT?                           11:43

 6   A    EXCEPT FOR DECLARATIONS AND THINGS THAT I GATHERED

 7   PERSONALLY; AND THOSE DID NOT BELONG TO MGA OR TO MATTEL.

 8   Q    THAT'S WHAT I WAS GOING TO ASK YOU ABOUT.

 9        THOSE DECLARATIONS, THOSE THINGS THAT YOU HAD

10   PERSONALLY COLLECTED, MGA WOULDN'T NECESSARILY HAVE; CORRECT?   11:43

11   A    THAT'S CORRECT.

12   Q    THOSE ARE GONE FOREVER.

13   A    UNLESS YOU GUYS GOT THEM FROM SOME PEOPLE.  AND I BELIEVE

14   YOU DID.

15   Q    WE GOT ALL OF THE DECLARATIONS THAT YOU HAD DRAFTED; IS    11:43

16   THAT YOUR UNDERSTANDING?

17   A    MY UNDERSTANDING IS, YOU GOT AT LEAST A FEW OF THEM.

18   Q    WE GOT ALL OF THE INFORMATION THAT YOU DESTROYED BEFORE

19   YOU DESTROYED IT.

20   A    AS I SAID, I HAVE NO OBLIGATION TO KEEP ANYTHING, SO I     11:44

21   DON'T KNOW WHAT YOU'RE TRYING TO INSINUATE HERE.

22        MAYBE YOUR HONOR CAN TELL ME IF I HAD ANY OBLIGATION

23   TO KEEP ANY OF THESE DOCUMENTS.

24   Q    AND THE REASON YOU DISMISSED YOUR CASE -- DO YOU RECALL

25   YOU FILED AN OPPOSITION TO YOUR BROTHER'S -- WHEN YOUR BROTHER  11:44
```

EXHIBIT _16_ PAGE _376_

3815

1    SUBJECT TO CROSS-EXAMINATION CONCERNING A STATEMENT AND THE

2    STATEMENT IS INCONSISTENT WITH THE DECLARANT'S TESTIMONY WAS

3    GIVEN UNDER OATH SUBJECT TO PENALTY OF PERJURY IN A TRIAL OR

4    CONSISTENT WITH THE DECLARANT'S TESTIMONY AND IS OFFERED TO

5    REBUT EXPRESS OR IMPLIED CHARGES AGAINST FABRICATION."          12:00

6           I THINK THAT'S WHAT WE HAVE HERE; SO I THINK EVEN

7    THOUGH IT WAS NOT MADE UNDER OATH, I THINK THAT IT CAN BE

8    OFFERED NOW.

9           NOW WE'RE OPENING A DOOR HERE, THOUGH, COUNSEL.

10          MR. NOLAN:  I KNOW.  I GOT WHAT I NEEDED.              12:00

11          THE COURT:  BECAUSE IF THE TRANSCRIPT COMES IN, IT

12   ALL COMES IN.  AND THEN MR. QUINN STANDS UP --

13          MR. NOLAN:  I REALIZE THAT.  I CAN TAKE YOUR COURSE.

14          THE COURT:  VERY WELL.

15          (WHEREUPON, SIDE-BAR PROCEEDINGS WERE CONCLUDED.)      12:00

16          MR. NOLAN:  YOUR HONOR, I BELIEVE I ASKED A QUESTION,

17   AND THERE WAS AN OBJECTION.  I WAS ASKING HIM -- LET ME REDO

18   IT.

19          THE COURT:  REPHRASE YOUR QUESTION.

20   BY MR. NOLAN:

21   Q    MR. LARIAN, ALL OF THIS STUFF, THESE QUESTIONS, THEY DON'T

22   GO TO THE QUESTION OF WHEN CARTER BRYANT DID THE BRATZ CONCEPT,

23   DO THEY?

24          MR. QUINN:  YOUR HONOR, THIS IS CLOSING ARGUMENT.

25          THE COURT:  LET'S MAKE A QUESTION, COUNSEL.  ASK A     12:0

EXHIBIT _16_ PAGE 327

3816

1   QUESTION, NOT A STATEMENT.

2   **BY MR. NOLAN:**

3   Q    DID ANY OF THE QUESTIONS THAT MR. QUINN ASKED YOU GO TO

4   WHEN CARTER BRYANT CAME UP WITH THE CONCEPT FOR BRATZ?

5          **MR. QUINN:**  SAME OBJECTION.                        12:01

6          **THE COURT:**  IT'S RELEVANCE.

7          SUSTAINED.

8          **MR. NOLAN:**  NOTHING FURTHER.

9          **THE COURT:**  MR. QUINN, WE'RE AT THE NOON HOUR HERE.

10         MAKE IT QUICK.                                         12:01

11                    **REDIRECT EXAMINATION**

12  **BY MR. QUINN:**

13  Q    YOU TOLD US YOU DESTROYED SOME E-MAILS FROM THE TIME

14  PERIOD BACK IN 2000 RELATING TO BRATZ; CORRECT?

15  A    I DISCARDED DOCUMENTS THAT I NO LONGER NEEDED.          12:01

16  Q    AND THOSE MIGHT HAVE HAD SOMETHING TO DO WITH THE ORIGIN

17  OF BRATZ; CORRECT?

18  A    AND MGA HAS THE ORIGINAL OF ALL OF THOSE E-MAILS.

19  Q    WELL, I KNOW YOU SAID THAT, BUT THIS FIREMAN'S FUND

20  EXHIBIT, FOR EXAMPLE, THAT'S EXHIBIT 13380, THAT'S ONE OF THE   12:0

21  DOCUMENTS THAT YOU DESTROYED; CORRECT?  YOU DIDN'T PRODUCE THIS

22  DOCUMENT IN RESPONSE TO A SUBPOENA?

23         **MR. NOLAN:**  OBJECTION.  MISCHARACTERIZES HIS

24  TESTIMONY.

25         **THE COURT:**  SUSTAINED AS PHRASED.                 12:0

EXHIBIT _16_ PAGE 328

TUESDAY, JULY 1, 2008          TRIAL DAY 18, MORNING SESSION

3817

| | |
|---|---|
| 1 | BY MR. QUINN: |
| 2 | Q    ISN'T IT TRUE THAT THIS IS ONE OF THE DOCUMENTS THAT YOU |
| 3 | DESTROYED? |
| 4 | A    YOU'RE PROVING MY POINT THAT MGA HAD THE DOCUMENT, AND |
| 5 | OBVIOUSLY, THEY GAVE IT TO YOU. |
| 6 | Q    WHAT MAKES YOU THINK THAT MGA PRODUCED THIS DOCUMENT, THAT |
| 7 | WE GOT IT FROM MGA? |
| 8 | A    BECAUSE I KNOW I DIDN'T. |
| 9 | Q    BUT DO YOU SEE DOWN THERE "CG"? |
| 10 | A    YES, I DO. |
| 11 | Q    DO YOU KNOW WHETHER A SUBPOENA WAS SERVED ON THE |
| 12 | CHRISTENSEN GLASER FIRM AND WHETHER THEY PRODUCED THIS |
| 13 | DOCUMENT? |
| 14 | A    SAME THING.  SOMEBODY PRODUCED IT. |
| 15 | Q    RIGHT. |
| 16 |      YOU DON'T KNOW THAT MGA PRODUCED IT, ONE WAY OR THE |
| 17 | OTHER; CORRECT? |
| 18 | A    CG IS ALSO MGA'S ATTORNEY, OR WAS MGA'S ATTORNEY SO... |
| 19 | Q    THERE'S NO MGA -- ON THAT COPY THAT YOU'RE LOOKING AT, |
| 20 | THERE'S NO MGA PRODUCTION STAMP, IS THERE? |
| 21 | A    THE ATTORNEY IS THE SAME AS -- THE ATTORNEY IS ACTING FOR |
| 22 | THE COMPANY. |
| 23 | Q    I UNDERSTAND WHAT YOU'RE SAYING. |
| 24 | A    I DON'T SEE A BATES STAMP. |
| 25 | Q    AND YOUR ATTORNEY HERE IS FROM THE CHRISTIANSEN FIRM. |

12:02
12:02
12:02
12:02
12:03
12:03

EXHIBIT __16__ PAGE 379

3818

```
 1   A     YES.

 2   Q     AND SHE'S BEING PAID BY MGA.

 3   A     YES.

 4          MR. QUINN:  AND, YOUR HONOR, NOW, I THINK, BECAUSE OF

 5   THE QUESTION MR. NOLAN ASKED ABOUT -- I THINK THE FIRST PART      12:03

 6   NOW COMES IN.

 7          THE COURT:  I AGREE.

 8          MR. QUINN:  SO IF WE COULD PUT THE WHOLE EXHIBIT UP.

 9          THE COURT:  NOT JUST THE QUESTION THAT WAS ASKED, BUT

10   THE ANSWER THAT WAS GIVEN.                                        12:03

11          MR. QUINN:  RIGHT.

12   BY MR. QUINN:

13   Q     MR. NOLAN ASKED YOU -- HE SAID THAT MR. QUINN DIDN'T ASK

14   YOU ABOUT YOUR BROTHER'S RESPONSE TO THIS E-MAIL WHERE YOU SAY

15   HE HAD INSTRUCTED YOU TO WITHHOLD DOCUMENTS.                      12:03

16          YOU RESPONDED TO THAT, DIDN'T YOU, SIR?

17   A     YES.

18   Q     AND WHAT YOU RESPONDED WAS, "YOUR DENIAL DOES NOT MAKE MY

19   ALLEGATION ANY LESS TRUE, AND TIME WILL PROVE WHAT THE REAL

20   TRUTH IS.  WHEN THE TIME COMES, WE'LL GO THROUGH BOTH OF OUR      12:04

21   TESTIMONIES AND PROVE WHO LIED ABOUT WHAT."

22          CORRECT?  THAT'S WHAT YOU WROTE AT THE TIME?

23   A     YES.

24   Q     BUT YOU'RE TELLING US THAT DOWN HERE IN THE ORIGINAL

25   E-MAIL, YOU WEREN'T TELLING THE TRUTH.                            12:04
```

EXHIBIT _16_ PAGE _380_

TUESDAY, JULY 1, 2008                    TRIAL DAY 18, MORNING SESSION

3819

```
 1   A    I ALREADY SAID THAT.

 2   Q    IS THAT SOMETHING THAT YOU MAKE A PRACTICE OF; THAT YOU

 3   LIE IN ORDER TO MAKE A POINT?

 4   A    AS I SAID, WE WERE PLAYING TIT-FOR-TAT; WE HAD SIBLING

 5   RIVALRIES; AND I PUT SOMETHING OUT THERE AND I DENIED IT.      12:04

 6   Q    AND YOU'RE NOW TELLING US IT WASN'T TRUE.

 7   A    YES.

 8   Q    THEN THIS EXHIBIT THAT CAME IN, EXHIBIT 18569, WHERE

 9   YOU'RE BEING TOLD THAT YOU SHOULD RETURN ALL DOCUMENTS OF MGA

10   IN YOUR POSSESSION -- IT'S DATED DECEMBER 30, 2005.           12:04

11           DO YOU HAVE THAT THERE, SIR?

12   A    I DO.

13   Q    BY THEN, THE ARBITRATION WAS OVER, RIGHT, HAD BEEN OVER

14   FOR SOME TIME?

15   A    CORRECT.                                                  12:05

16   Q    AND THE DOCUMENTS THAT YOU DESTROYED, YOU SAID YOU

17   DESTROYED JUST DAYS AFTER YOU DISMISSED THE ARBITRATION;

18   CORRECT?

19   A    CORRECT.

20   Q    SO THOSE DOCUMENTS WERE ALL GONE BY THE TIME THEY WROTE   12:05

21   YOU AND TOLD YOU TO RETURN EVERYTHING; CORRECT?

22   A    THEY HAD WRITTEN ME A LETTER PRIOR TO THIS ASKING FOR THE

23   DOCUMENTS AS WELL.

24   Q    BUT LONG BEFORE THIS DOCUMENT DATED DECEMBER 31, 2005, YOU

25   HAD DESTROYED THOSE DOCUMENTS BECAUSE YOU DESTROYED THEM WITHIN  12:0
```

EXHIBIT _16_ PAGE _381_

TUESDAY, JULY 1, 2008                    TRIAL DAY 18, MORNING SESSION

3821

1    COMING BACK UNTIL 1:45.

2              ANYTHING FROM MGA?

3         **MR. NOLAN:**   NO.   WE'RE FINE.

4              (MORNING SESSION CONCLUDED.)

5

6

7

8

9

10

11

12

13                         CERTIFICATE

14

15   I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED
     STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF
16   THE STENOGRAPHICALLY RECORDED PROCEEDINGS HELD IN THE
     ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN
17   CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF
     THE UNITED STATES.

18

19

20   THERESA A. LANZA, RPR, CSR                    7-2-08
     OFFICIAL COURT REPORTER                        DATE

21

22

23

24

25
                                   EXHIBIT __16__ PAGE 382

TUESDAY, JULY 1, 2008              TRIAL DAY 18, MORNING SESSION

# Exhibit 17

ATTORNEYS' EYES ONLY

## Isaac Larian (President / CEO)

**From:** Fred Larian
**Sent:** Thursday, May 25, 2000 12:49 PM
**To:** Isaac Larian
**Subject:** RE: Information requested by Marty Katz regarding Fireman's Fund

Your denial does not make my allegation any less true and time will prove what the real truth is. I doubt you will swear on any of your children's lives that my allegations are not true (then again, I have been surprised before).

When the time comes, we will go through both of our testimonies and prove who lied about what.

-----Original Message-----
**From:** Isaac Larian
**Sent:** Wednesday, May 24, 2000 7:15 PM
**To:** Fred Larian
**Subject:** RE: Information requested by Marty Katz regarding Fireman's Fund

Your allegation stated below is false, and self serving , as usual.

The records we have ( including your testimony in the Fireman Insurance case) speak for themselves.

-----Original Message-----
**From:** Fred Larian
**Sent:** Wednesday, May 24, 2000 6:32 PM
**To:** Isaac Larian
**Subject:** Information requested by Marty Katz regarding Fireman's Fund

You have accused me of falsifying documents. You are the one who is trying to falsify things. For example, during the week of April 24, I informed you that in response to a fax from Risa of Marty Katz's office, the originals of the health insurance termination forms on Leon Michanie (copies of which had been previously provided to Fireman's Fund) were located and that legible copies were made. You instructed me to not provide those to Marty and to tell him we could not find the originals. On April 30, 2000, at my preparation meeting with Marty, I ignored your instructions and gave the copies to Marty.

1

EXHIBIT 17 PAGE 383

CG 0009

EX 13380-0001

# Exhibit 18

1    QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
       John B. Quinn (Bar No. 090378)
2      johnquinn@quinnemanuel.com
       Michael T. Zeller (Bar No. 196417)
3      (michaelzeller@quinnemanuel.com)
       Jon D. Corey (Bar No. 185066)
4      (joncorey@quinnemanuel.com)
     865 South Figueroa Street, 10th Floor
5    Los Angeles, California  90017-2543
     Telephone:  (213) 443-3000
6    Facsimile:   (213) 443-3100

7    Attorneys for Mattel, Inc.

8

9                    UNITED STATES DISTRICT COURT

10                  CENTRAL DISTRICT OF CALIFORNIA

11                        EASTERN DIVISION

| | |
|---|---|
| 12  CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| 13       Plaintiff, | Consolidated with Case Nos. CV 04-09059 and CV 05-02727 |
| 14       vs. | Hon. Stephen G. Larson |
| 15  MATTEL, INC., a Delaware corporation, | **SUPPLEMENTAL DECLARATION OF MICHAEL T. ZELLER IN SUPPORT OF MATTEL, INC.'S** |
| 16       Defendant. | **MOTION OBJECTING TO PORTIONS OF DISCOVERY** |
| 17 | **MASTER ORDER NO. 27 RE** |
| 18  AND CONSOLIDATED ACTIONS | **MATTEL'S MOTION TO COMPEL DOCUMENTS FROM BINGHAM MCCUTCHEN** |
| 19 | |
| 20 | Date:    July 6, 2009 |
| 21 | Time:   1:30 p.m. Place:  Ctrm. 1 |
| 22 | |
| 23 | Discovery: December 11: 2009 Pre-trial Conference:  March 1, 2010 |
| 24 | Trial Date:  March 23, 2010 |
| 25 | |
| 26 | |
| 27 | |
| 28 | EXHIBIT _18_ PAGE _384_ |

07975/2995488.1

DECLARATION OF MICHAEL T. ZELLER

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## DECLARATION OF MICHAEL T. ZELLER

1.    I am a member of the bars of the States of California, New York and Illinois and a partner at Quinn Emanuel Urquhart Oliver & Hedges, LLP, attorneys for Mattel, Inc. I make this declaration of personal, firsthand knowledge, and if called and sworn as a witness, I could and would testify competently thereto.

2.    I am making this supplemental declaration to update the Court on the status of document production in this litigation. In particular, Bingham has argued that it should not have to produce documents in response to Mattel's subpoena because Mattel allegedly has already received relevant documents and that the subpoena to Bingham is "at least partially" duplicative of the subpoenas to Omni 808 Investors, LLC ("Omni 808"), OmniNet Investors, LLC ("OmniNet") and Vision Capital, LLC ("Vision Capital") (Opp. at 15.)

3.    As shown by Mattel previously, however, Mattel has not received key information from any of these entities pursuant to subpoena or from any other source. This still remains true as of the date of this Declaration. Thus, for example, Mattel has not received information regarding even the identities of the principals, members or officers of Lexington Financial Limited ("Lexington"), let alone its source of funding.

4.    Vision Capital, an alleged investor in Omni 808 whose principal is Isaac Larian's brother-in-law, claims to have been funded by Lexington. Vision Capital's production as of this writing consists of only 149 pages of documents, the majority of which consist of previously produced Omni 808 corporate documents and Omni 808 promissory notes. Although it was compelled by prior Order to do so, Vision Capital has produced no documents showing the source or the transfer of the $10 million allegedly provided by Vision Capital to Omni 808 to fund the acquisition of the Wachovia debt. Vision Capital has not even produced any loan agreement between Vision Capital and Lexington, much less any communications,

07975/2995488.1

-1-

DECLARATION OF MICHAEL T. ZELLER

EXHIBIT _18_ PAGE 385

1   other loan documents, checks, wire transfers or any other information relating to

2   Lexington's alleged loan or other funding to Vision Capital.

3       5.    Although it also was compelled by prior Order to do so, Omni 808 has

4   not produced any documents purporting to document any wire transfers or other

5   fund transfers to Omni 808 from most of Omni 808's alleged investors, including

6   such alleged funding from Vision Capital, Leon Neman, Neil Kadisha, Benjamin

7   Nazarian, David Nazarian or Joseph Moinian.  See Omni 808's Statement of

8   Position Re Order To Show Cause Re Appointment of Permanent Receiver, dated

9   May 14, 2009 at 8:12-18 (identifying Omni 808's alleged investors).

10       6.    For its part, OmniNet has represented that it had no responsive

11   documents to produce beyond those produced by Omni 808.  See Letter from Peter

12   N. Villar to John Quinn, dated June 22, 2009, a true and correct copy of which is

13   attached hereto as Exhibit 1.

14

15         Executed on July 3, 2009, at Los Angeles, California.

16

17             /s/ Michael T. Zeller

          Michael T. Zeller

18

19

20

21

22

23

24

25

26

27

28

-2-

DECLARATION OF MICHAEL T. ZELLER

EXHIBIT __18__ PAGE 386

**EXHIBIT 1**

EXHIBIT _18_ PAGE _387_

# BINGHAM

RECEIVED
JUN 2 2 2009

Peter N. Villar
Direct Phone:   714.830.0640
Direct Fax:   714.830.0719
peter.villar@bingham.com

June 22, 2009

**Via Hand Delivery**

John Quinn, Esq.
Michael Zeller, Esq.
Quinn, Emanuel, Urqhart, Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543

Re:  Mattel, Inc. v. MGA Entertainment, Inc., et al

Counsel:

Pursuant to the Discovery Master's Order No. 27, enclosed is Omni 808 Investors, LLC's supplemental production of documents (Bates Nos. OMNI0010220-OMNI0010382). Also enclosed are Vision Capital, LLC's production of documents (Bates Nos. VISION000001-VISION000149). Finally, Omninet Capital, LLC has no responsive documents beyond those already produced by Omni 808 Investors, LLC.

We are in the process of updating and completing our privilege log and will serve it once it's completed.

Sincerely,

Peter N. Villar

Enclosures

Boston
Hartford
Hong Kong
London
Los Angeles
New York
Orange County
San Francisco
Santa Monica
Silicon Valley
Tokyo
Walnut Creek
Washington

Bingham McCutchen LLP
Plaza Tower, 18th Floor
600 Anton Boulevard
Costa Mesa, CA
92626-1924

T 714.830.0600
F 714.830.0700
bingham.com

A/73066426.1

Exhibit 1
Page 3

EXHIBIT  18  PAGE 388