# EXHIBIT 1

Case 2:04-cv-09049-DOC-RNB Document 6048-3 Filed 07/27/09 Page 2 of 21 Page ID
Case 2:04-cv-09049-SGL-RNB Document 1543 Filed 01/16/2008 Page 1 of 20
#:201103

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
  Timothy L. Alger (Bar No. 160303)
  (timalger@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with<br>Case No. CV 04-09039<br>Case No. CV 05-02727 |
| vs. | |
| MATTEL, INC., a Delaware corporation, | MATTEL, INC.'S NOTICE OF MOTION AND MOTION OBJECTING TO PORTIONS OF DISCOVERY MASTER'S DECEMBER 31, 2007 ORDER REGARDING HARD DRIVES; AND |
| Defendant. | |
| AND CONSOLIDATED ACTIONS | MEMORANDUM OF POINTS AND AUTHORITIES |
| | [Declaration of Scott B. Kidman filed concurrently] |
| | Hearing Date: February 25, 2008<br>Time: 10:00 a.m.<br>Place: Courtroom 1 |
| | **Phase 1**<br>Discovery Cut-off: January 28, 2008<br>Pre-trial Conference: April 21, 2008<br>Trial Date: May 27, 2008 |

Exhibit 1 - Page 3

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on February 25, 2008, at 10:00 a.m., or as soon thereafter as counsel may be heard, in the Courtroom of The Honorable Stephen G. Larson, located at 3470 Twelfth Street, Riverside, California 92501, plaintiff and counter-defendant Mattel, Inc. ("Mattel") will, and hereby does, move the Court to overrule portions of the Discovery Master's December 31, 2007 Order Granting in Part and Denying in Part Mattel's Motion to Compel Production of Documents by Isaac Larian; Denying Request for Sanctions relating to the production of hard drives used by Isaac Larian and Carter Bryant. In the alternative, Mattel asks this Court to appoint an expert witness in the field of computer forensics and electronic data recovery to determine if data relevant to this action has been deleted or permanently destroyed off of hard drives in the possession of Isaac Larian.

This Motion is made pursuant to <u>Federal Rules of Civil Procedure</u> 72(a) and <u>Federal Rule of Evidence</u> 706 on the grounds that the Discovery Master's Order was clearly erroneous and contrary to law in its ruling denying Mattel's motion to compel production of Isaac Larian's and Carter Bryant's hard drives relating to Bratz, and on the grounds that there is good cause for the appointment of an independent, neutral expert in these areas because the analyses to be performed are highly relevant, and to protect any privacy interests raised by Isaac Larian.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Scott B. Kidman filed concurrently herewith, and all other matters of which the Court may take judicial notice.

Case 2:04-cv-09049-DOC-RNB Document 6048-3 Filed 07/27/09 Page 4 of 21 Page ID
#:201105
Case 2:04-cv-09049-SGL-RNB Document 1543 Filed 01/16/2008 Page 3 of 20

1    **<u>Statement of Rule 37-1 Compliance</u>**

2            The parties met and conferred regarding this motion on January 10,

3    2008.

4

5    DATED: January 16, 2008          QUINN EMANUEL URQUHART OLIVER &
                                       HEDGES, LLP
6

7                                        By /s/ Scott B. Kidman
8                                          Scott B. Kidman
                                           Attorneys for Mattel, Inc.
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................................. 1

FACTUAL BACKGROUND.................................................................................... 2

    **A.**     Spoliation by Carter Bryant ...................................................... 2

    **B.**     Spoliation by Isaac Larian.......................................................... 6

    **C.**     Mattel's Amended Complaint .................................................. 8

    **D.**     Discovery Master's Order Denying Motion to Compel Production of Isaac Larian and Carter Bryant Hard Drives. .................. 9

ARGUMENT........................................................................................................... 11

**I.**    THE DISCOVERY MASTER'S ORDER IS CLEARLY ERRONEOUS BECAUSE SPOLIATION IS AN ELEMENT OF MATTEL'S CLAIMS............................................................................ 12

**II.**    EVEN IF SPOLIATION WERE NOT PART OF MATTEL'S CLAIMS, IT WOULD STILL BE RELEVANT ........................................... 13

**III.**   IN THE ALTERNATIVE, THE COURT SHOULD APPOINT A NEUTRAL EXPERT WITNESS ............................................................ 14

CONCLUSION........................................................................................................ 15

MATTEL'S MOTION OBJECTING TO PORTIONS OF DISCOVERY MASTER'S DECEMBER 31, 2007 ORDER

# TABLE OF AUTHORITIES

**Page**

## Cases

*Bridgeport Music, Inc. v. Universal Music Group, Inc.*,
 244 F.R.D. 271 (S.D.N.Y. 2007).............................................................. 12

*DeAngelis v. A. Tarricone, Inc.*,
 151 F.R.D. 245 (S.D.N.Y. 1993)............................................................ 15

*Glover v. BIC Corp.*,
 6 F.3d 1318 (9th Cir. 1993) ................................................................... 13

*Kucala Enterprises, Ltd.*,
 2003 WL. 21230605 ............................................................................. 13

*Kucala Enterprises, Ltd. v. Auto Wax Co., Inc.*,
 2003 WL. 21230605 (N.D. Ill. 2003) .................................................... 13

*Leon v. IDX Systems Corp.*,
 464 F.3d 951 (9th Cir. 2006) ................................................................. 13

*In re Philadelphia Mortgage Trust*,
 930 F.2d 306 (3d Cir. 1991) .................................................................. 14

*Rambus, Inc. v. Infineon Technologies AG*,
 222 F.R.D. 280 (E.D. Va. 2004)............................................................ 13

*Students of California School for the Blind v. Honig*,
 736 F.2d 538 (9th Cir. 1984),
 <u>vacated on other grounds</u>, 471 U.S. 148 (1985)............................ 14, 15

## Statutes

18 U.S.C. §§ 1961(1) .................................................................................. 8

<u>Fed. R. Evid.</u> 706 .................................................................................. 14, 15

<u>Fed. R. Evid.</u> 706(a)............................................................................... 14, 15

<u>Fed. R. Civ. Proc.</u> 72(a) .......................................................................... 11, 12

Case 2:04-cv-09049-DOC-RNB Document 6048-23 Filed 07/27/09 Page 7 of 21 Page ID
#:201108
Case 2:04-cv-09049-SGL-RNB Document 1543 Filed 01/16/2008 Page 6 of 20

# MEMORANDUM OF POINTS AND AUTHORITIES

## Preliminary Statement

Mattel has uncovered serious evidence of spoliation. Among other things, after a drawn out discovery battle, Mattel discovered that evidence on Carter Bryant's hard drives was destroyed using a software program entitled "Evidence Eliminator." There is also deposition testimony that Isaac Larian routinely switches computers at least once a year, and has the old computer wiped of all information, and that often Larian has rendered the entire computer unusable. There is testimony that Larian ordered another MGA executive to white-out Mattel fax headers from Carter Bryant's signed contract with MGA in an attempt to hide the fact that Carter Bryant was working at Mattel at the time. These facts ultimately became part of the basis for Mattel's counterclaims alleging RICO violations.

In an attempt to learn the extent of this damage, and establish RICO liability, Mattel served requests for production on Isaac Larian seeking hard drives that were used by either him or Carter Bryant and relating to this action. After Mattel moved to compel, the Discovery Master denied production of these drives, finding them "minimally relevant (if at all)."

Far from being irrelevant, these drives—and the destruction of data on them—are specifically referenced in Mattel's counterclaims. The destruction of the data is one of the elements of these claims. Moreover, and as defendants themselves acknowledged in their motion for terminating sanctions, evidence of spoliation could ultimately result in a directed verdict for Mattel.

The Discovery Master's Order is clearly erroneous and contrary to law. It prevents Mattel from access to drives necessary to establish its claims, and it incorrectly applies a relevance standard to prevent investigation into spoliation, even where evidence has been adduced that spoliation occurred.

Finally, at a minimum, the Court should appoint its own expert witness in computer forensics and electronic data recovery to investigate spoliation. If

1  Mattel cannot access these drives, having an independent expert do so would be the

2  only way of establishing whether in fact spoliation occurred.

## Factual Background

4      During the course of discovery in this case, Mattel has uncovered

5  evidence of spoliation by defendants Carter Bryant and Isaac Larian.

6      **A.    Spoliation by Carter Bryant**

7      During the course of discovery, Bryant repeatedly represented that he

8  had possession of a single Desktop computer that he had purchased the day after he

9  resigned from Mattel.  His counsel represented that it searched the drive and found

10  no responsive documents.  Bryant confirmed this in a November 1, 2004 letter to

11  Mattel claiming that the Desktop "has been retrieved and searched for responsive

12  documents, and none have been located."[1]  Mattel wrote back asking that the

13  Desktop hard drive be preserved.[2]

14      Again, in January 2005, in response to a motion to compel production

15  of the hard drive, Bryant's counsel represented to the Court that he had "tirelessly

16  searched for and inspected" the Desktop drive "for relevant information" and had

17  made an "extensive and diligent search" for responsive information.[3]  Bryant's

---

19  [1]  Letter dated November 1, 2004 from Keith Jacoby, counsel for Bryant, to John
20  Quinn, counsel for Mattel, at p. 2, attached as Exhibit 1 to the Declaration of Scott
21  B. Kidman, dated January 16, 2007 filed concurrently herewith ("Kidman Dec.")
    ("Regarding [Mattel's] requests to inspect Mr. Bryant's home computer, I have made
22  further inquir[i]es on that subject to Mr. Bryant and my colleagues.  Mr. Bryant did
23  not own a home computer during his time at Mattel.  He later purchased a computer,
    which he used for a time, and then gave away to his niece.  That computer has been
24  retrieved and searched for responsive documents, and none have been located.  Mr.
    Bryant declines to produce his hard drive for inspection for the reasons articulated in
25  his response to Mattel's document request.").

26  [2]  Letter dated November 17, 2004 from Kirk Garey, counsel for Mattel, to Keith
27  A. Jacoby, Kidman Dec., Exh. 2.
    [3]   Joint Stipulation Re: Mattel's Motion to Compel Production of Documents,
28  filed on January 6, 2005 (excerpts) ("Joint Stipulation") at 62:1-13, Kidman Dec.,
          (footnote continued)

Exhibit 1 - Page 9

-2-

MATTEL'S MOTION OBJECTING TO PORTIONS OF DISCOVERY MASTER'S DECEMBER 31, 2007 ORDER

counsel averred that he had "extensively" examined the Desktop and that the firm had spent "scores of attorney hours" searching for responsive documents, and had found none.[4]

Due to an intervening discovery stay, Mattel's original motion to compel was not ruled on. After Mattel renewed its motion, Bryant represented that he had conducted a "diligent" search for the hard drives and stated that the ***only*** drive he could locate was from the Desktop.[5] Though Carter Bryant had previously stated that he used two other computers, including one belonging to a laptop computer, Bryant said they could not be found.[6]

The Discovery Master granted Mattel's motion to compel.[7] Shortly before the production deadline, Bryant asked Mattel for an extension of time to comply with the Discovery Order, claiming additional time was required because (i) the quantity of responsive documents "may be significant" and (ii) because Bryant

---

Exh. 3; [Redacted] Declaration of Keith A. Jacoby in Support of Defendant and Cross-Claimant Carter Bryant's Portion of Joint Stipulation (excerpted and without exhibits) ("2005 Jacoby Dec.") at ¶¶ 22, 23, attached as Exh. 4 to the Kidman Dec. Bryant's opposition also made clear that the hard drive purportedly searched was from the Desktop. Id. at ¶ 23 (referencing the "hard drive from Bryant's home computer, which he gave to his niece in 2002").

[4]    Joint Stipulation at 62:2-13, 18-20, Kidman Dec., Exh. 3; 2005 Jacoby Dec. at ¶¶ 23, 24, Kidman Dec., Exh. 4.

[5]    Separate Statement of Defendant Carter Bryant in Opposition to Mattel's Motion to Compel, filed on January 11, 2007 ("Bryant's 2007 Separate Statement") at 39, Kidman Dec., Exh. 5; Declaration of Keith A. Jacoby in Support of Carter Bryant's Opposition to Mattel, Inc.'s Motion to Compel Production of Documents (excerpted and without exhibits) ("2007 Jacoby Dec.") at ¶ 31, Kidman Dec., Exh. 6.

[6]    Bryant's 2007 Separate Statement at 39, Kidman Dec., Exh. 5.

[7]    Order of the Discovery Master Hon. Edward Infante (Ret.) dated January 25, 2007 at 17, Kidman Dec., Exh. 7.

07209/2348965.1

Case 2:04-cv-09049-DOC-RNB Document 6049-3 Filed 07/27/09 Page 10 of 21 Page ID
Case 2:04-cv-09049-SGL-RNB Document 1343 Filed 01/16/2008 Page 9 of 20
#:201111

would be traveling.[8]  Mattel agreed to extend Bryant's time to produce the hard drives.[9]

Four days later, in a February 27, 2007 email, Bryant asserted a new reason for failing to produce the hard drives, i.e., that it contained some unspecified "highly private material" and seeking "some sort of agreement" on that issue.[10] Mattel's counsel agreed to extend the deadline.  In return, Bryant agreed to provide a log of the "highly private" files at issue by no later than the end of the following week (by March 23, 2007).[11]  By March 26, 2007, Bryant had still not produced that log.[12]

In view of Bryant's failure to comply with the January 25, 2007 Order, Mattel sought to meet and confer in advance of a motion to enforce it.[13]  Bryant's counsel then made two new claims:

First, although Bryant had previously represented to the Court that he *only* had the Desktop hard drive,[14] he now stated that forensic images of *two* Bryant

---

[8]    Stipulation and Order re: Request to Extend Deadline Within Which Carter Bryant Must Comply with the Discovery master's January 25, 2007 Order Granting Mattel's Motion to Compel Production of Documents dated February 23, 2007, Kidman Dec., Exh. 8.

[9]    Id.

[10]   E-mail dated February 27, 2007, from Douglas Wickham to John Quinn and Michael Zeller, Kidman Dec., Exh. 9.

[11]   Letter dated March 2, 2007 from Douglas Wickham to Michael Zeller, Kidman Dec., Exh. 10; letter dated March 16, 2007 from Douglas Wickham to Michael Zeller, Kidman Dec., Exh. 11;  letter dated March 27, 2007 from Douglas Wickham to Michael Zeller, Kidman Dec., Exh. 12.

[12]   Letter dated March 26, 2007 from Michael Zeller to Douglas Wickham, Kidman Dec., Exh. 16.

[13]   Id.

[14]    Bryant's 2007 Separate Statement at 39, Kidman Dec., Exh. 5; 2007 Jacoby Dec. at ¶ 31, Kidman Dec., Exh. 6; Letter dated March 26, 2007 from Douglas Wickham to Michael Zeller, Kidman Dec. Exh. 13; Letter dated March 27, 2007 from Douglas Wickham to Michael Zeller, Kidman Dec. Exh. 14.

1  hard drives had been made in ***July 2004***—after this suit was filed and long before

2  Bryant's representations to the Court that ***only*** the Desktop drive had been located.[15]

3  Bryant claimed that one of these forensic images made in July 2004 was the laptop

4  drive that Bryant had represented to the Court had not been located.[16]  The existence

5  of these drives had thus been concealed since July 2004.[17]  Bryant further informed

6  Mattel that the imaged data were from the 2002 and 2003 time period, giving the

7  impression that the computers from which the hard drives were imaged were not in

8  use before that time.[18]

9          Second, in response to Mattel's specific requests for an explanation

10  regarding the status of the Desktop hard drive, Bryant's counsel stated that it no

11  longer knew the whereabouts of the Desktop.[19]  Counsel stated that it was "not sure"

12  about the accuracy of its prior representations—i.e., that the Desktop drive had been

13  retrieved from Bryant's niece—and that it may have been "wrong."[20]

_____

15  Letter dated April 6, 2007 from Michael Zeller to Douglas Wickham, Kidman Dec. Exh. 15.

16  Id.  More specifically, Bryant identified the two images that were made in July 2004 as being of (1) a 20 GB Travelstar hard drive from a Compaq Presario laptop, and (2) a 20 GB Quantum Fireball LCT 15 hard drive.  Id., p. 1. Also during the meet and confer process, Bryant's counsel represented that Bryant was still in possession of the physical hard drive from the laptop but no longer had the Quantum hard drive.  Id., p. 1.

17  Letter dated March 27, 2007 from Douglas Wickham to Michael Zeller, Kidman Dec. Exh. 14.  Bryant's counsel further disclosed that there were additional "hard drive(s)" that had been "recently copied in Missouri," and that "[a]fter further examination, it appears that these drives also contain highly private, non-responsive documents."  Id.  As noted above, in subsequent conversations, Bryant's counsel stated that there were three images of these additional drives, for a total of at least five hard drive images.   Letter dated April 6, 2007 from Michael Zeller to Douglas Wickham, Kidman Dec., Exh. 15.

18  Id.

19  Letter dated April 6, 2007 from Michael Zeller to Douglas Wickham, Kidman Dec., Exh. 15.

20  Id.

Case 2:04-cv-09049-DOC-RNB Document 6048-23 Filed 07/27/09 Page 12 of 21 Page ID
Case 2:04-cv-09049-SGL-RNB Document 4543 Filed 01/18/2008 Page 11 of 20
#:201113

Faced with these starkly conflicting representations, Mattel moved to enforce the Court's January 25, 2007 Order and again compel Bryant to produce the computer hard drives.[21]  The day before Bryant's Opposition was due, Bryant's counsel wrote stating that it had discovered an image of the Desktop in its possession, and would now make it available to Mattel.[22]  Mattel imaged that drive, and took its motion off calendar.[23]  Shortly after, Bryant's counsel (now at Keker & Van Nest) subsequently produced the Laptop drive and the image.

Upon reviewing the drives, Mattel discovered that a software program titled "Evidence Eliminator" had been installed and run on them.  Evidence Eliminator purports to be a program designed to permanently destroy data to prevent its use in legal proceedings:  "Evidence Eliminator ... the data destroyed is 'gone forever' and it is impossible to create mirror images of defendants' hard drives ..."[24]  This meant that, although it is undisputed that Bryant used the Desktop from October 21, 2000 to November 2003, data from 2000 – 2001 had been eliminated— perhaps explaining why Bryant had represented that (without explanation) only data from 2002 to 2003 was present on the drive.

**B.  <u>Spoliation by Isaac Larian</u>**

Carter Bryant is not the only defendant to have apparently destroyed evidence.  To date, Mattel has uncovered evidence pointing to two types of actions by Isaac Larian and MGA that have destroyed or altered relevant evidence.

---

[21]  <u>See</u> Notice of Motion and Motion of Mattel, Inc. for an Order to Enforce Court's January 25, 2007 Order Compelling Bryant to Produce Desktop Computer Hard Drive, dated April 10, 2007, Kidman Dec., Exh. 16.

[22]  Letter dated April 23, 2007, from Keith A. Jacoby to Michael Zeller, Kidman Dec., Exh. 17.

[23]  Mattel, Inc.'s Notice of Withdrawal Without Prejudice of Motion for an Order to Enforce Court's January 25, 2007 Order Compelling Bryant to Produce Desktop Computer Hard Drive, Kidman Dec., Exh. 18.

[24]  Kidman Dec. ¶ 20, Exh. 19.

Case 2:04-cv-09049-DOC-RNB   Document 6048-23   Filed 07/27/09   Page 13 of 21   Page ID
#:201114
Case 2:04-cv-09049-SGL-RNB   Document 4543   Filed 07/18/2008   Page 12 of 20

**Removal of Fax Headers from Carter Bryant's Contract.**  When

Larian first hired Carter Bryant, he was a Mattel employee.  Bryant sent his signed

contract with MGA to MGA from a Mattel fax machine.  Upon receiving this

document, Larian ordered an MGA executive to remove the fax headers showing

that the fax was sent from Mattel.  As this MGA executive testified:

> When the original contract was executed by Carter Bryant,
> it was sent to me via fax, and on the top of the fax listed
> the phone number from where it was faxed, which said
> "Barbie Collectibles," and at one point my boss, Isaac
> Larian, asked me to white that out and send it to a lawyer,
> Patty Glaser.[25]

**Destruction of Computers and Computer Hard Drives.**  Isaac

Larian has also destroyed his computers and the information contained on them,

including since the inception of this case.  Larian generally switches computers at

least once a year.[26]  In the process, he and MGA wipe the information from those

older hard drives of Mr. Larian's computers, preserving only a portion of the

information they contained.[27]  An MGA employee testified,

> Q.   Have any of Mr. Larian's laptops that have been
> replaced not been wiped?
>
> A.   No.
>
> Q.   They all have been wiped?  We had a double
> negative there.  All of the laptops that Mr. Larian -- all of
> the hard drives of the laptops that Mr. Larian has replaced
> have been wiped?

---

[25]   Tr. of Victoria O'Connor Depo. at 18:13-18, Kidman Dec., Exh. 20.
[26]   See Depo. Tr. of Ken Lockhart (Vol. 2), dated June 15, 2007 at 255:20-21,
Kidman Dec., Exh. 21.
[27]   Id. at 255:2-258:9.

Case 2:04-cv-09049-DOC-RNB Document 6048-23 Filed 07/27/09 Page 14 of 21 Page ID
Case 2:04-cv-09049-SGL-RNB Document 1543 Filed 01/18/2008 Page 13 of 20
#:201115

A.   The ones which were -- where the computer was
still functional get reimaged before anyone else is allowed
to use them.[28]

Larian has damaged many of his older computers so that they are no longer
functional.  That same witness testified that, although Larian's computers are
frequently changed, "most of the time when we're replacing laptops for him, they're
generally nonfunctional."[29]

## C.   Mattel's Amended Complaint

In July of 2007, after this Court's Order allowing Mattel to file its
counterclaims, Mattel incorporated the facts regarding spoliation as a basis for its
RICO claims—Mattel's RICO claim was explicitly based on alleged destruction of
evidence on the hard drives of Carter Bryant and Isaac Larian:

93.   The pattern of racketeering activity, as defined by 18
U.S.C. §§ 1961(1) and (5), presents both a history of
criminal conduct and a distinct threat of continuing
criminal activity . . . .These racketeering activities
included repeated acts of: . . .

(c)   Tampering With a Witness, Victim or
Informant:  Counter-defendants MGA, MGA
Entertainment (HK) Limited, MGA de
Mexico, Larian, Bryant, Machado and Does 4
through 10, aided and abetted by each other
and some or all of the remaining members of
the MGA Criminal Enterprise, did corruptly
alter, destroy, mutilate, or conceal more than

---

[28]  Id. at 257:24-258:9.
[29]  Id. at 256:4-5.

1    one a record, document, or other object, or

2    attempted to do so, with the intent to impair

3    the object's integrity or availability for use in

4    an official proceeding, including this action,

5    including without limitation by . . .

6    (iii)  destroying electronic and other evidence,

7    including by **destroying evidence**

8    **previously contained on Carter**

9    **Bryant's and Isaac Larian's computer**

10   **hard drives**.[30]

**D.    Discovery Master's Order Denying Motion to Compel Production
of Isaac Larian and Carter Bryant Hard Drives.**

On June 13, 2007, Mattel propounded its First Set of Requests for
Production of Documents and Things To Isaac Larian.[31]  Among these requests were
two seeking the production of Isaac Larian's hard drives that were used to store data
related to Bryant or Bratz, and any hard drives used by Carter Bryant to store
information relating to Bratz or MGA in Larian's possession.[32]  For the Court's
convenience, the text of these Requests is included verbatim, below:

---

[30]   Mattel, Inc.'s Second Amended Answer In Case No. 05-2727, dated July 12,
2007 (public redacted version, without exhibits), at ¶ 93, Kidman Dec., Exh. 22.

[31]   Kidman Dec., ¶ 24.

[32]   Request Nos. 222 and 225, found in the excerpts of Mattel, Inc.'s
Consolidated Separate Statement in Support of Motion to Compel Production of
Documents by Isaac Larian at pp. 193-197, Kidman Dec., Exh. 23.

**REQUEST FOR PRODUCTION NO. 222:**

Each STORAGE DEVICE that YOU have used to create, prepare, generate, copy, transmit, receive, delete or modify any DIGITAL INFORMATION RELATING TO BRATZ, ANGEL or BRYANT.

**REQUEST FOR PRODUCTION NO. 225:**

Each STORAGE DEVICE that BRYANT has used to create, prepare, generate, copy, transmit, receive, delete or modify any DIGITAL INFORMATION RELATING TO BRATZ, ANGEL or MGA.[33]

Larian refused to provide any documents in response to these and other Requests, and Mattel moved to compel their production on October 11, 2007.[34] In its motion and reply, Mattel showed that its counterclaims were based on, among other things, destruction of evidence from computer hard drives.[35] Moreover, defendants had placed spoliation in issue in their motion for terminating sanctions against Mattel, and Mattel argued that it should have a right to inquire in this area on that basis alone.[36] Of course, the sanctions for spoliation of evidence can be significant.

In Opposition, Larian argued that he should not have to produce his hard drives because Mattel had shown no improper conduct sufficient to justify production of the drives, and that he had privacy interests that would be impinged upon by their production.[37]

---

[33]  Id.
[34]  Kidman Dec., ¶ 25.
[35]  Excerpts of Mattel, Inc.'s Consolidated Separate Statement in Support of Motion to Compel Production of Documents by Isaac Larian at p. 203, Kidman Dec., Exh. 23.
[36]  Id.
[37]  Id. at 199-203.

1    Judge Infante ruled on the motion on December 31, 2007.[38]  In

2    considering the issue of the hard drive, Judge Infante stated that the only basis

3    Mattel had shown for seeking access to the hard drives was, "to ensure that relevant

4    information has not been deleted or permanently destroyed."[39]  As such, he stated

5    that Mattel was seeking to launch a "fishing expedition" for new claims.  This

6    ignored that Mattel was seeking access to drives specifically referenced in its

7    allegations regarding spoliation in its existing counterclaims.[40]  The Discovery

8    Master also found that the request was overbroad, because it could be interpreted to

9    encompass every CD and DVD in MGA's possession containing copies of Bratz-

10   related video and audio content.[41]  Finally, the Discovery Master ruled that the

11   request was duplicative, because other Mattel requests sought documents that would

12   require Larian and MGA to search the drives themselves.[42]

13                        **<u>Argument</u>**

14          By the stipulation and court order appointing a Discovery Master, the

15   Discovery Master's rulings are treated like those of a magistrate judge.  Such rulings

16   should be overruled if they are "clearly erroneous or [] contrary to law." <u>Fed. R. Civ.</u>

17   <u>Proc.</u> 72(a).

18

19

20

21   _____

22   [38]   Discovery Master's Order Granting in Part and Denying in Part Mattel's
     Motion to Compel Production of Documents by Isaac Larian; Denying Request for
23   Sanctions, dated December 31, 2007, Kidman Dec., Exh. 24.

24   [39]   <u>Id.</u> at 17.

     [40]   <u>Id.</u>
25   [41]   <u>Id.</u>  Mattel does not believe the request is unduly burdensome, but is prepared
26   to limit its Request to seek only those hard drives that are or were in the possession
     of Isaac Larian or Carter Bryant personally, or that stored files created or worked
27   with by either of these two individuals.

28   [42]   <u>Id.</u>

# I.  THE DISCOVERY MASTER'S ORDER IS CLEARLY ERRONEOUS BECAUSE SPOLIATION IS AN ELEMENT OF MATTEL'S CLAIMS

As noted above, the Discovery Master's Order clearly stated as a basis for his ruling his belief that Mattel's search for evidence of deletion of relevant evidence "suggests that Mattel is launching a fishing expedition in pursuit of new claims, which is not permitted by the Federal Rules of Civil Procedure."

Mattel is not "fishing" for new claims because it has *already alleged* the destruction of computer evidence as a basis for its existing counterclaims.  In order to prove those allegations, Mattel must have access to the computers.  See Fed. R. Civ. Proc. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."); Bridgeport Music, Inc. v. Universal Music Group, Inc., 244 F.R.D. 271, 272-273 (S.D.N.Y. 2007) (upholding magistrate judge's ruling that documents should be produced where they were encompassed in language of complaint).

Mattel cannot confirm whether evidence has been destroyed without obtaining the hard drives.  It has discovered destruction of evidence on two drives already.[43]  It has deposition testimony that data was destroyed on the drives at issue here.[44]  But, without access to the computer hard drives, Mattel will be unable to prove its claims for the simple reason that it has been denied access to the very items it needs in order to do so.

In this context, the Discovery Master's findings that the requests are "duplicative" misses the point.  The issue is not whether these drives have been reviewed for relevant documents.  The issue is whether defendants deliberately destroyed relevant documents from the drives *before* having them reviewed.  That

---

[43]  Kidman Dec. ¶ 20, Exh. 19.
[44]  Depo. Tr. of Ken Lockhart (Vol. 2), dated June 15, 2007 at 255:2-258:9, Kidman Dec., Exh. 21.

Case 2:04-cv-09049-DOC-RNB Document 6048-23 Filed 07/27/09 Page 19 of 21 Page ID
Case 2:04-cv-09049-SGL-RNB Document 1543 Filed 01/18/2008 Page 18 of 20
#:201120

1    they did so is part of the basis for Mattel's RICO claims.  Whether MGA or Larian

2    have since reviewed drives and found that no relevant information is currently

3    present has no bearing on this issue.

4           Because the Discovery Master did not consider that spoliation of

5    information on computers is part of the very claims Mattel has made, his ruling is

6    clearly erroneous, and should be modified to require production of the drives.

7    **II.    <u>EVEN IF SPOLIATION WERE NOT PART OF MATTEL'S CLAIMS,**

8         **IT WOULD STILL BE RELEVANT</u>**

9           Even if electronic spoliation were not an element of Mattel's claims, the

10   Order would still be contrary to law.  The Discovery Master stated that investigation

11   into spoliation would be a "fishing expedition" for new claims.  But courts routinely

12   permit discovery on spoliation issues, particularly in cases like this, where Mattel

13   has adduced a basis to believe spoliation has occurred.  That spoliation might be a

14   basis for a new claim has not been an obstacle to such discovery.  <u>See, e.g.</u>, <u>Kucala

15   Enterprises, Ltd. v. Auto Wax Co., Inc.</u>, 2003 WL 21230605, *1 (N.D. Ill. 2003)

16   (noting prior order to produce drive for inspection for spoliation); <u>Rambus, Inc. v.

17   Infineon Technologies AG</u>, 222 F.R.D. 280, 296 (E.D. Va. 2004) (permitting

18   discovery on spoliation issues).

19          Potential spoliation is a relevant and proper subject of discovery.  As

20   MGA argued in its motion for terminating sanctions, one possible result of

21   spoliation could be a directed verdict in Mattel's favor.  <u>See, e.g.</u>, <u>Leon v. IDX

22   Systems Corp.</u>, 464 F.3d 951, 961 (9th Cir. 2006) (affirming dismissal of action for

23   deletion of files from computer hard drive); <u>Kucala Enterprises, Ltd.</u>, 2003 WL

24   21230605 at *6 (dismissing action for use of Evidence Eliminator software to delete

25   computer files).  At the least, such spoliation would potentially give Mattel a

26   valuable presumption at trial of Bryant's work on Bratz while employed at Mattel.

27   <u>See, e.g.</u>, <u>Glover v. BIC Corp.</u>, 6 F.3d 1318, 1329 (9th Cir. 1993).

28

1    Finally, it cannot be argued that Mattel is fishing for new claims, when

2  it was defendants who first raised the issue of spoliation, and made it a part of this

3  case.  Since defendants have opened the door, Mattel should be permitted its own

4  share of inquiry in this area.

5  **III.    IN THE ALTERNATIVE, THE COURT SHOULD APPOINT A**

6  **NEUTRAL EXPERT WITNESS**

7    At a minimum, the Court should appoint a neutral expert to investigate

8  possible spoliation.  This is the only other method Mattel would have to prove its

9  counterclaims, and determine the extent of spoliation.  The Court's power to appoint

10 expert witnesses is codified at <u>Federal</u> <u>Rule of Evidence</u> 706.  Under that Rule,

11    The court may on its own motion or on the motion of any

12    party enter an order to show cause why expert witnesses

13    should not be appointed, and may request the parties to

14    submit nominations. The court may appoint any expert

15    witnesses agreed upon by the parties, and may appoint

16    expert witnesses of its own selection.

17 <u>Fed. R. Evid.</u> 706(a).  By nature, "a court-appointed expert witness is neutral with

18 regard to all parties."  <u>In re Philadelphia Mortgage Trust</u>, 930 F.2d 306, 309 (3d Cir.

19 1991).  Such an expert would also alleviate any of Isaac Larian's alleged concerns

20 regarding privacy and privilege, since Mattel would not have direct access to the

21 drives.

22    The Court has broad discretion to appoint experts whenever it deems

23 such appointments advisable.  <u>See</u> <u>Students of California School for the Blind v.</u>

24 <u>Honig</u>, 736 F.2d 538, 549 (9th Cir. 1984) (affirming *sua sponte* reopening of trial

25 and appointment of neutral expert in light of conflicting expert testimony proffered

26 by parties), <u>vacated on other grounds</u>, 471 U.S. 148 (1985); <u>Fed. R. Evid.</u> 706

27 advisory comm. notes ("The inherent power of a trial judge to appoint an expert of

28 his own choosing is virtually unquestioned.").  Provided the requirements expressly

1  set forth in the <u>Rule</u> are satisfied,[45] a court's appointment of experts will be upheld.

2  <u>See</u> <u>Students of California School for the Blind</u>, 736 F.2d at 549 ("As required by

3  Rule 706, the judge allowed both parties to thoroughly cross-examine its appointed

4  expert.  Thus, under Rule 706, the district court's appointment of a neutral expert

5  was proper."); <u>DeAngelis v. A. Tarricone, Inc.</u>, 151 F.R.D. 245, 246 (S.D.N.Y.

6  1993) (granting defendant's motion for appointment of experts because there was

7  good cause:  "Use of one or more court-appointed experts . . . is appropriate where

8  called for by specific circumstances, provided that the parties have advance notice

9  and an opportunity to participate in selection of the expert and in the definition of

10  the expert's duties.").

## Conclusion

12          For the foregoing reasons, Mattel respectfully requests that its motion

13  be granted in its entirety.

15  DATED:  January 16, 2008          QUINN EMANUEL URQUHART OLIVER &
                                      HEDGES, LLP

17                                    By <u>/s/ Scott B. Kidman</u>
18                                       Scott B. Kidman
                                         Attorneys for Mattel, Inc.

---

26  [45]  Appointed experts must consent to act, act pursuant to written instructions
27  from the Court, advise the parties of their findings, be willing to testify at deposition
     and/or trial at the request of any party, and be subject to cross-examination by any
28  party.  <u>See</u> <u>Fed. R. Evid.</u> 706(a).

Exhibit 1 - Page 22

-15-

MATTEL'S MOTION OBJECTING TO PORTIONS OF DISCOVERY MASTER'S DECEMBER 31, 2007 ORDER