# EXHIBIT 4

1  Hon. Edward A. Infante (Ret.)
   JAMS
2  Two Embarcadero Center
   Suite 1500
3  San Francisco, California 94111
   Telephone:    (415) 774-2611
4  Facsimile:    (415) 982-5287

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10                          EASTERN DIVISION

11

12 | CARTER BRYANT, an individual, | CASE NO. CV 04-09049 SGL (RNBx) |
   |                               | JAMS Reference No. 1100049530   |
13 |          Plaintiff,           |                                 |
14 |            v.                 | Consolidated with               |
   |                               | Case No. CV 04-09059            |
15 | MATTEL, INC., a Delaware corporation, | Case No. CV 05-2727     |
16 |                               |                                 |
   |          Defendant.           | **ORDER RE MATTEL'S MOTIONS TO** |
17 |                               | **COMPEL FARHAD LARIAN, KAYE**  |
   |                               | **SCHOLER AND STERN &**         |
18 |                               | **GOLDBERG TO PRODUCE**         |
   |                               | **DOCUMENTS**                   |
19 |                               |                                 |

20 CONSOLIDATED WITH
   MATTEL, INC. v. BRYANT and
21 MGA ENTERTAINMENT, INC. v. MATTEL, INC.

22

23

24                        I. INTRODUCTION

25      The following motions are pending for decision, each of which seeks discovery from non-

26 parties: Mattel, Inc.'s ("Mattel") (1) Motion to Compel Farhad Larian to Produce Documents; (2)

27 Motion to Compel Kaye Scholer to Produce Documents; and (3) Motion to Compel Stern &

28
   Bryant v. Mattel, Inc.,
   CV-04-09049 SGL (RNBx)                                                    1

1  Goldberg to Produce Documents. Each of the non–parties submitted oppositions.[1]  In addition,

2  MGA Entertainment, Inc., Isaac Larian, MGA Entertainment (HK) Limited, and MGAE de

3  Mexico S.R.L. de C.V. (collectively "MGA") submitted oppositions to the motions.  Mattel

4  submitted a consolidated reply on January 3, 2008.  The motions were heard on January 16, 2008,

5  at which time Mattel agreed to hold in abeyance its Motion to Compel Stern & Goldberg to

6  Produce Documents.  This Order, therefore, addresses only Mattel's motions to compel Farhad

7  Larian and Kaye Scholer to produce documents.

8        On January 22, 2008, the parties submitted a Stipulation Regarding Protective Orders to

9  facilitate production of documents responsive to the subpoenas at issue.

10                              II. BACKGROUND

11        Since the inception of MGA in 1979 until December of 2000, Isaac Larian, a defendant

12  herein and MGA's CEO, and his brother Farhad Larian, a non-party, shared ownership and

13  management of MGA.  A dispute developed between the two brothers and in March of 2000,

14  Isaac Larian proposed that Farhad Larian sell his interest in MGA to him.

15        On September 28, 2000, the Larian brothers agreed to have their uncle, Morad Zarabi,

16  arbitrate their dispute and decide a fair value for MGA and also decide which brother should sell

17  his ownership interest to the other.  The brothers' agreement to arbitrate was entered into ten days

18  after the alleged effective date of Carter Bryant's contract purportedly assigning rights to Bratz to

19  MGA.  Isaac Larian did not tell his brother about the contract with Bryant.

20        Mr. Zarabi retained an appraiser, Ernest Dutcher, to value MGA based on "the period

21  ending December 31, 1999." By December 4, 2000, Mr. Zarabi determined that Farhad Larian

22  should sell his 45% ownership interest in MGA to Isaac Larian and the two entered into an

23  Agreement for Sale of Stock by which Farhad Larian sold his interest for $8.775 million.

24

25

26  _____

27  [1] Mattel contends that Kaye Scholer's opposition was not timely filed and therefore should not be considered.  Although the opposition was ten days late, Kaye Scholer's brief will nevertheless be considered in the interest of resolving these disputes on the merits.

28  Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

2

EXHIBIT ___4___

PAGE ___78___

1        In the summer of 2002, Farhad Larian complained to Mr. Zarabi that Isaac Larian had

2   allegedly fraudulently concealed Bratz during the negotiations that led to Farhad Larian's sale of

3   MGA stock. Mr. Zarabi oversaw another appraisal of MGA based upon information he gathered

4   in 2002. Mr. Dutcher produced an appraisal on February 13, 2003 that valued MGA as of

5   December 31, 2000 and projected a 2001 revenue growth rate of twenty-five percent (25%) based

6   upon "hot projects that came along." Mattel's Motion at p.4, Ex. 8 to Decl. of Juan Pablo Albán.

7   Other information relied upon by Mr. Dutcher suggests that MGA had expansionary plans in 2000

8   compared to the prior four years.

9        Unable to resolve his disputes through Mr. Zarabi, Farhad Larian sued Isaac Larian,

10  alleging, among other things, that (a) in late 1999 or early 2000, Isaac Larian and MGA became

11  aware of a new product line called Bratz; (b) starting in early 2000 and throughout 2000, Isaac

12  Larian and MGA devised plans to develop and distribute Bratz; and (c) Isaac Larian concealed the

13  plans for Bratz from Farhad Larian and Mr. Zarabi in order to keep the valuation of MGA

14  artificially low. Notably, MGA and Bryant claim in the instant lawsuit that they did not even

15  meet until September 2000.

16       Isaac Larian successfully moved to compel arbitration of Farhad Larian's claims. In early

17  February 2005, Mr. Zarabi declined to serve as arbitrator and the court appointed another

18  arbitrator. A few weeks later, Farhad Larian filed suit against Mr. Zarabi alleging that he

19  conspired with Isaac Larian to conceal facts.

20       The arbitration of Farhad Larian's claims started on November 16, 2005. Two days into

21  the proceedings, however, Farhad Larian dismissed his claims. Isaac Larian sought to recover his

22  attorneys' fees and won an award in excess of $1 million against his brother.

23  Mattel Subpoenas Farhad Larian to Produce Documents

24       On August 31, 2007, Mattel subpoenaed Farhad Larian to appear for deposition and to

25  produce (1) documents relating to the Larian v. Larian disputes; (2) documents related to non-

26  Bratz allegations by Mattel and MGA, primarily related to allegations of trade secret theft; (3)

27  documents relating to Farhad Larian's relationship to MGA, including his position there,

28

EXHIBIT _____4_____

PAGE _____79_____

1 │ ownership interests, and payments from MGA or Isaac Larian to Farhad Larian; (4) Farhad

2 │ Larian's knowledge and possession of documents specifically from the instant lawsuit, including

3 │ his communications with Mattel; and (5) information about the location of responsive documents.

4 │ The majority of Mattel's requests seek documents in the first category described above.

5 │        On September 21, 2007, Farhad Larian served responses and objections in which he

6 │ agreed to produce documents responsive to eleven of Mattel's forty-one document requests.

7 │ After a brief stay of discovery, counsel for Farhad Larian and Mattel met and conferred beginning

8 │ on November 20, 2007.  During the meet and confer process, Farhad Larian agreed to produce

9 │ documents responsive to some, but not all of Mattel's forty-one requests.  On November 21,

10 │ 2007, Farhad Larian produced approximately one red well of documents.

11 │        The parties held a second meet and confer conference call on November 27, 2007, and

12 │ were able to resolve their disputes regarding many more, but not all requests.  In particular, the

13 │ parties were ultimately able to resolve their disputes regarding the requests for documents related

14 │ to non-Bratz allegations.  At the conclusion of the second meet and confer session, it was agreed

15 │ that Farhad Larian would make a supplemental production of documents on December 6, 2007,

16 │ and provide a written supplemental response.  The parties attempted to schedule another meet and

17 │ confer session, but could not agree upon a date.  On the evening of December 6, 2007, Mattel

18 │ filed the instant motion.  Mattel seeks an order compelling Farhad Larian to produce documents

19 │ responsive to every request in its subpoena; overruling each of Farhad Larian's objections; and

20 │ ordering him to produce a document-by-document privilege log.

21 │ Mattel Subpoenas Isaac Larian's Attorney –Kaye Scholer

22 │        On or about September 6, 2007, Mattel also subpoenaed Kaye Scholer, the firm that

23 │ represented Isaac Larian in the Larian v. Larian proceedings.  The subpoena consisted of thirty-

24 │ five (35) requests seeking the same five categories of documents it subpoenaed from Farhad

25 │ Larian.  Kaye Scholer's representation of Isaac Larian included defending him in two related

26 │ Superior Court actions, two arbitration proceedings and an appeal to the California Court of

27 │ Appeals, all of which covered a period of several years.  As a result of this representation Kaye

28 │

1   Scholer has accumulated approximately fifty-six (56) boxes of its client's files, including, among

2   other things, correspondence files, pleading files, discovery files, witness preparation files,

3   research files, exhibits, attorney work files, and billing files.

4          On or about September 18, 2007, Kaye Scholer served its objections, asserting, among

5   other things, that the requests are duplicative, unreasonably cumulative, harassing and oppressive.

6   The parties met and conferred on October 11 and 29, 2007. Kaye Scholer agreed to review the

7   following files for responsive documents: (1) pleading files; (2) discovery files; and (3)

8   arbitration exhibits. Kaye Scholer's rationale for limiting its search for responsive documents to

9   these three files was to avoid undue burden because most of the documents in other files would be

10  protected by the work product doctrine and/or the attorney-client privilege. Kaye Scholer also

11  agreed to produce documents responsive to the majority of Mattel's requests. However, Kaye

12  Scholer repeatedly informed Mattel that it objected to producing a document-by-document

13  privilege log because it would be unduly burdensome, expensive and inconvenient.

14         In the instant motion, Mattel seeks an order compelling Kaye Scholer to produce

15  documents responsive to every request in its subpoena and overruling Kaye Scholer's objections,

16  including privilege, or alternatively, compelling Kaye Scholer to produce a document-by-

17  document privilege log.

18  Mattel's Other Discovery Efforts

19         Mattel has attempted to obtain documents related to the Larian v. Larian proceedings from

20  MGA and Isaac Larian. As far as Mattel can ascertain, however, MGA has produced only four

21  documents relating to the Larian v. Larian proceedings and Isaac Larian has produced none.

22         Mattel also searched public filings in the Larian v. Larian and Larian v. Zarabi et al. civil

23  lawsuits. Mattel found Mr. Dutcher's declaration that included the appraisals described above,

24  however, Mattel was not able to locate any of the raw data on which Mr. Dutcher relied. Mattel

25  also served subpoenas on third parties involved in the Larian v. Larian proceedings, and met with

26  limited success.

27  //

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

5

EXHIBIT ___4___

PAGE ___81___

1

### III. STANDARDS

2     Rule 45 of the Federal Rules of Civil Procedure requires third parties to produce

3 documents (and reasonably accessible electronically stored information) that are responsive to a

4 subpoena that a party serves on them. Fed.R.Civ.P. 45(b), (d).  If the subpoenaed documents are

5 relevant and there is good cause for their production, the subpoena is enforced unless the

6 documents are privileged or the subpoena is unreasonable, oppressive, annoying or embarrassing.

7 The factors to be balanced by the trial court in determining the propriety of a subpoena are the

8 relevance of the discovery sought, the requesting party's need, and the potential hardship to the

9 party subject to the subpoena.  A person withholding subpoenaed information under a claim of

10 attorney-client privilege or protected by the work product doctrine must expressly make the claim

11 and "describe the nature of the withheld documents, communications, or tangible things in a

12 manner that, without revealing information itself privileged or protected, will enable the parties to

13 assess the claim." Fed.R.Civ.P. 45(d)(2).

14     Rule 45(c)(1), Fed.R.Civ.P., provides that "[a] party or attorney responsible for issuing

15 and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on

16 a person subject to the subpoena."  Furthermore, "[t]he issuing court must enforce this duty and

17 impose an appropriate sanction--which may include lost earnings and reasonable attorney's fees--

18 on a party or attorney who fails to comply." Id.

19

### IV. DISCUSSION

20 A.  Documents Subpoenaed from Farhad Larian

21     Mattel contends that each of the categories of documents it seeks from Farhad Larian is

22 relevant and that there is good cause for production.  First, Mattel contends that the Larian v.

23 Larian proceedings are relevant because Farhad Larian's allegations about the timing of the

24 origins and early development of Bratz and MGA's concealment thereof parallel and provide

25 support for the crux of Mattel's claims in the instant litigation.  Second, Mattel contends that

26 documents about Farhad Larian's relationship with MGA are relevant to his credibility.  In

27 particular, Mattel contends that payments from Isaac Larian and/or MGA to Farhad Larian are

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

6

EXHIBIT ____4____

PAGE ____82____

1 relevant to credibility and possible bias.  Third, Mattel contends that documents relating to this

2 action are clearly relevant, especially in light of MGA and Isaac Larian's threat to disqualify

3 Mattel's counsel based upon purported communications between Mattel's counsel and Farhad

4 Larian.  Fourth, Mattel contends that it seeks information about the location of responsive

5 documents to determine whether Farhad Larian destroyed documents or for another reason no

6 longer has them.

7        Mattel next contends that Farhad Larian has failed to carry his burden of demonstrating

8 that the requests at issue are unreasonable, oppressive, annoying or embarrassing.  Further, Mattel

9 contends that the protective order in place in this lawsuit is sufficient to address Farhad Larian's

10 confidentiality or privacy concerns.  Lastly, Mattel contends that Farhad Larian's privilege log is

11 inadequate because it fails to justify his claims of privilege and work product protection on a

12 document-by-document basis.

13       Farhad Larian contends that Mattel's motion should be denied because Mattel violated its

14 meet and confer obligations by filing the motion before he made his scheduled supplemental

15 production and before the parties' meet and confer discussions had concluded.  According to

16 Farhad Larian, on November 27, 2007, it was agreed that he would make a supplemental

17 production of documents on December 6, 2007, and that he would provide a written supplemental

18 response.  Farhad Larian complied with this agreement and, on December 6, 2007, provided a

19 written supplemental response and, as Mattel acknowledges, approximately six boxes containing

20 approximately 12,000 pages of documents.  Nevertheless, Mattel filed the instant motion on

21 December 6, 2007, without reviewing the supplemental document production and written

22 supplemental response.  Farhad Larian also represents that as of December 6, 2007, the day

23 Mattel filed the instant motion, the parties acknowledged the need for a further meet and confer

24 session, as reflected in the numerous e-mails and correspondence exchanged between counsel.

25 Furthermore, Farhad Larian represents that after Mattel filed the instant motion, he requested that

26 Mattel take the motion off-calendar because his supplemental responses resolved the parties'

27 disputes as to all but three requests and because there was potential for resolving the remaining

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

7

EXHIBIT ___4___

PAGE ___83___

1   requests as well, but that Mattel refused.

2          Farhad Larian contends that in light of his supplemental production, he is now in full

3   compliance with Mattel's subpoena, except for three requests. He represents that he has produced

4   over 12,000 documents, including all non-privileged documents from the Larian v. Larian matters

5   that relate to Bratz (including its origin), Carter Bryant, Mattel, a fee agreement between Farhad

6   and MGA, and all documents related to appraisals of MGA that are not privileged or otherwise

7   covered by a protective order. He also contends that the privilege log he has produced to Mattel,

8   which describes the withheld documents by category instead of document-by-document, is

9   sufficient to substantiate his claims of privilege and work product protection. As for the three

10  remaining requests, Nos. 23, 24 and 41, Farhad Larian contends that they are overbroad, harassing

11  and cumulative and invade his and his family's privacy.

12                      Farhad Larian Has Substantially Complied with the Subpoena

13         Farhad Larian made a substantial supplemental production and provided a supplemental

14  written response on December 6, 2007. Indeed, Mattel acknowledges that it received

15  approximately six boxes of documents from Farhad Larian, which contain approximately 12,000

16  pages of documents. Nevertheless, Mattel contends in its reply brief that there are a few

17  deficiencies in Farhad Larian's production. For example, Mattel contends that Farhad Larian has

18  not produced (1) documents bates stamped "MZ" and "ED"; (2) raw data provided to the

19  appraisers in the Larian v. Larian litigations and the 2000 financial models that Farhad Larian

20  claimed Isaac Larian prepared; (3) three boxes of documents that Farhad Larian's counsel showed

21  Mattel's counsel and upon which MGA's disqualification threats against Mattel's counsel are

22  based; (4) the Dutcher Declaration; and (5) documents responsive to Request Nos. 17-19. Mattel

23  also contends that Farhad Larian has improperly limited its production to only those documents

24  that directly reference Bratz and Carter Bryant.

25         At the hearing, counsel for Farhad Larian confirmed that all responsive documents,

26  including the documents identified in Mattel's reply brief, had been or would be produced after

27  the parties executed the Stipulation Regarding Protective Orders, which has now been

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

8

EXHIBIT ____4____

PAGE ____84____

1   accomplished. Significantly, counsel represented that Farhad Larian did not limit his production

2   to only those documents that directly reference Bratz and Carter Bryant, and that his supplemental

3   responses make this point clear. Counsel for Farhad Larian also represented that all privileged

4   documents have been identified on a privilege log.

5        In light of the December 6, 2007 supplementation, and based upon the representations

6   made by counsel for Farhad Larian at the hearing, Farhad Larian has substantially discharged his

7   obligation to comply with Mattel's subpoena. Therefore, there is no need for an order compelling

8   any further production of documents.

9        <u>Farhad Larian's Objections to the Three Remaining Requests are Justified</u>

10       The only three requests to which Farhad Larian objects are Nos. 23, 24 and 41, which are

11   set forth in full below:

12       <u>Request No. 23</u>: All DOCUMENTS RELATING TO any and all payments of
         money or transfers of anything of value that ISAAC LARIAN, his FAMILY
13       MEMBERS and/or MGA have made, have offered or have proposed, promised or
         agreed to make, to or for the benefit of YOU or YOUR FAMILY MEMBERS at
14       any time from January 1, 1999 through the present.

15       <u>Request No. 24</u>: All DOCUMENTS RELATING TO any and all payments of
         money or transfers of anything of value that any PERSON has made, has offered
16       or has proposed, promised or agreed to make, to or for the benefit of YOU or
         YOUR FAMILY MEMBERS and that was related in any way to BRATZ,
17       BRYANT, MGA or this ACTION at any time from January 1, 1999 through the
         present.
18
         <u>Request No. 41</u>: DOCUMENTS sufficient to IDENTIFY since January 1, 1999
19       through the present (a) each account with any bank or financial institution that
         YOU have or have had, or that YOU have or have had any legal beneficial
20       interest in; (b) each telephone subscription service account that YOU have or have
         had, or that YOU use or have used; and (c) each email account that YOU have or
21       have had, or that YOU use or have used.

22   Farhad Larian contends that Mattel's stated justification for the requests – bias and credibility – is

23   questionable because he is not an adverse witness to Mattel. Farhad Larian represents that MGA

24   has never asked him to testify on the company's behalf. Rather, only Mattel intends to call him as

25   a witness. Farhad Larian asserts that there is no reason for Mattel to impeach its own witness.

26       Furthermore, Farhad Larian contends that even if it is advantageous for Mattel to attack

27

28   Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

                                                                                            9

                                    EXHIBIT _____ 4 _____

                                    PAGE _____ 85 _____

1    his credibility, the scope of Mattel's requests go far beyond what Mattel is reasonably entitled to

2    receive through discovery. He contends that pursuant to Rule 26, Fed.R.Civ.P., he should not be

3    subjected to discovery that is burdensome, cumulative, unnecessarily costly, or insufficiently

4    probative to the issues in the litigation to warrant the expense of production. Furthermore, he

5    contends that the usual restrictions on discovery set forth in Rule 26 should be rigorously applied

6    to protect non-parties such as himself.

7            Farhad Larian contends that the three requests at issue are overbroad and harassing in

8    several respects. First, he points out that the requests seek documents from 1999, which is five

9    years before this action was filed and six years before MGA was involved in this action: Farhad

10   Larian contends that payments made to him and his family before this action was filed and before

11   MGA was a party to the case have no relevance to his credibility as a witness in this case.

12   Second, Farhad Larian contends that the requests, as phrased, would include any card that

13   accompanied a gift to anyone in the Larian family, regardless of the dollar value of the gift.

14   Farhad Larian contends that family gifts for birthdays, Chanukah, or general gifts of money

15   between family members, have nothing to do with bias and violate his and his family's privacy

16   rights. Third, Farhad Larian contends that the requests are overbroad because they would require

17   him to disclose all documents reflecting payments he received as an employee of MGA and its

18   predecessor, a company he was employed by for decades.

19           Furthermore, Farhad Larian contends that he has already produced all non-privileged

20   documents which could potentially show bias, including the amount of money he was paid for his

21   shares of MGA, his consulting agreement with MGA after he sold his shares, and his fee

22   agreement with MGA. He contends that requiring him to search for and produce additional

23   payment documents would only result in him producing cumulative information, which is not

24   only irrelevant but violates his and his family's right to privacy under the California Constitution.

25   Farhad Larian also contends that it would be far less intrusive for Mattel to question him at a

26   deposition about payments he received from Isaac Larian and MGA than for him to respond to the

27   three requests at issue.

28
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)                                                                        10

EXHIBIT ____4____

PAGE ____86____

1    Mattel's motion is denied with respect to Request Nos. 23, 24 and 41. The requests seek

2    information that is only minimally relevant to the claims and defenses in the case. Mattel's only

3    stated justification for the discovery is that it is relevant to establish Farhad Larian's credibility

4    and bias. Although impeachment information is discoverable, Mattel is not entitled to the type of

5    unfettered discovery it is now seeking. Rather, Rule 26(b)(2), Fed.R.Civ.P., requires the court to

6    restrict or prevent discovery if (i) the discovery is unreasonably cumulative or duplicative, or is

7    obtainable from some other source that is more convenient, less burdensome, or less expensive;

8    (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the

9    information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely

10   benefit, taking into account the needs of the case, the amount in controversy, the parties'

11   resources, the importance of the issues at stake in the litigation, and the importance of the

12   proposed discovery in resolving the issues. These restrictions are particularly important to

13   consider where the discovery requests are directed at a non-party. See Moon v. SCP Pool Corp.,

14   232 F.R.D. 633, 638 (C.D. Cal. 2005) (citing Dart Indus. Co., Inc. v. Westwood Chem. Co., Inc.,

15   649 F.2d 649 (9th Cir. 1980) (discovery should be "more limited to protect third parties from

16   harassment, inconvenience, or disclosure of confidential information.").

17   Aside from asserting that the requested information is relevant to bias and credibility,

18   Mattel has made no attempt to justify the significant breadth and burden of its requests. The

19   requests are so broad as to include every payment or gift, regardless of amount, made between

20   Farhad and Isaac Larian, their family members and MGA since 1999. The number of years for

21   which Mattel seeks financial information is overbroad. Mattel is seeking documents since 1999,

22   five years before this action was filed and six years before MGA became a party to this action.

23   Mattel fails to explain how any payments MGA or Isaac Larian made to Farhad or his family

24   members before this action was filed or MGA was a party to the action have any bearing on his

25   credibility as a witness in this action. The requests are also overbroad in that they encompass

26   customary gifts between family members and Farhad Larian's routine salary payments, which

27   have only minimal relevance to Farhad Larian's credibility and bias as a witness in this case.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

11

EXHIBIT _____4_____

PAGE _____87_____

1    The requests are also cumulative of discovery Farhad Larian has already provided. In

2 particular, Farhad Larian represents that he has already disclosed to Mattel the amount of money

3 he was paid for his shares of MGA, his consulting agreement with MGA after he sold his shares,

4 and his fee agreement with MGA. In light of this production , it is unreasonable to require Farhad

5 Larian to search for and produce gift receipts, cards, and the breadth of other financial documents

6 responsive to Request Nos. 23, 24 and 41. Furthermore, there are other less intrusive and

7 burdensome means of obtaining discovery regarding Farhad Larian's credibility and bias. For

8 example, Mattel may question Farhad Larian about payments he received from his brother and

9 MGA during his deposition.

10    Nor has Mattel justified the intrusive and harassing nature of the requests. Personal

11 financial information is afforded protection by the California Constitution that is also recognized

12 by federal courts. Cal. Const., Art. I, §1; Valley Bank of Nevada v. Superior Court, 15 Cal.3d

13 652, 656 (1975); Kelly v. City of San Jose, 114 F.R.D. 653, 656 (N.D. Cal. 1987) (federal courts

14 should give "some weight" to privacy rights that are protected by state constitutions); Soto v. City

15 of Concord, 162 F.R.D. 603, 616 (N.D. Cal. 1995) (right to privacy in financial information has

16 been recognized by federal courts). When a privacy right is asserted as an objection to discovery,

17 the court must balance the need for the information versus the privacy right asserted. Soto, 162

18 F.R.D. at 616.

19    As discussed previously, there is little to no need for the breadth of financial information

20 sought by Mattel. Many of the documents covered by Request Nos. 23, 24, and 41 have little to

21 no relevance to Farhad Larian's credibility and bias as a witness in this case. Furthermore,

22 Farhad Larian has already produced numerous documents showing payments he received from

23 both his brother and MGA. There are also other less intrusive means for obtaining discovery

24 relating to Farhad Larian's credibility and bias. Furthermore, the scope of these three requests

25 unduly intrude into Farhad Larian's private affairs. The requests are so broad as to include gifts

26 exchanged between family members and Farhad Larian's paycheck stubs, and would require

27 Farhad Larian to disclose every account number he has at a bank or financial institution since

28
Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                                    12

EXHIBIT _____ 4

PAGE _____ 88

1   1999. Thus, the balance tips sharply in favor of protecting Farhad Larian's personal financial

2   information.

3                           Farhad Larian's Privilege Log is Inadequate

4        Mattel challenges the sufficiency of Farhad Larian's privilege log. At issue is whether

5   Farhad Larian must describe and assert claims of privilege on a document-by-document basis, or

6   whether he may do so categorically. Farhad Larian is withholding approximately one bankers'

7   box of documents based upon claims of privilege and work product protection. Farhad Larian's

8   Opposition at p.20, n. 9.

9        Rule 45(d)(2), Fed.R.Civ.P., requires a party responding to a subpoena to provide

10  sufficient information to enable the party seeking discovery to assess the claims of privilege and

11  work product protection. The "universally accepted" means of claiming that requested documents

12  are privilege is by producing a document-by-document privilege log. Gail v. New England Gas

13  Co., Inc., 234 F.R.D. 28, 33 (D. R.I. 2007). The advisory comments to the 1993 amendment to

14  Rule 26(b), however, state that a description of documents by category is appropriate where it

15  would be "unduly burdensome" to provide a document-by-document privilege log. Specifically,

16  the advisory comment states, "Details concerning time, persons, general subject matter, etc., may

17  be appropriate if only a few items are withheld, but may be unduly burdensome when voluminous

18  documents are claimed to be privileged or protected, particularly if the items can be described by

19  categories."

20       Farhad Larian relies upon the advisory comments and cases citing the advisory comments

21  to support his contention that as a non-party, it would be unduly burdensome to require a

22  document-by-document privilege log in this case. The cases cited by Farhad Larian, however, are

23  distinguishable from the present case. In SEC v. Thrasher, 1996 WL 125661 (S.D. N.Y. 1996),

24  the Commission sought production of all communications between defense counsel concerning

25  the lawsuit. The court observed that this demand, on it face, sought wholesale production of

26  documents that are ordinarily protected from disclosure. Further, the defendant represented that

27  the requested documents were extremely voluminous and that a document-by-document privilege

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

13

EXHIBIT ___4___

PAGE ___89___

1    log would be a long and fairly expensive project to undertake. In <u>Fifty-Six Hope Road Music,</u>

2    <u>Ltd. v. Mayah Collections, Inc.</u>, 2007 WL 1726558 (Nev. 2007), the withheld documents

3    consisted of e-mail communications between plaintiffs and their counsel or between plaintiffs'

4    counsel. Plaintiffs represented that there were hundreds and perhaps thousands of such email

5    communications which were protected by the attorney-client privilege and work product doctrine.

6            In contrast to the volume of documents at issue in <u>Thrasher</u> and <u>Fifty-Six Hope Road</u>

7    <u>Music</u>, Farhad Larian represents that he has about one bankers' box of privileged documents.

8    Farhad has not established that to produce a privilege log on a document-by-document basis for

9    this volume of documents is unduly burdensome. Furthermore, even if it were appropriate for

10   Farhad Larian to produce a privilege log that described documents categorically, which it is not,

11   the information provided in Farhad Larian's privilege log is insufficient to enable Mattel to assess

12   the claims of privilege and work product protection as required by Rule 45, Fed.R.Civ.P. For

13   example, in some instances, Farhad Larian fails to identify the author and recipient of the

14   documents being withheld. In other instances, Farhad Larian fails to provide the date or date

15   ranges for the documents being withheld. Therefore, Farhad Larian is ordered to provide a

16   supplemental privilege log that complies with Rule 45.

17   <u>B. Documents Subpoenaed from Kaye Scholer</u>

18           Mattel contends that the documents it seeks from Kaye Scholer are relevant for all the

19   same reasons previously articulated in the context of Mattel's motion to compel Farhad Larian to

20   produce documents. Mattel contends that its requests are not unreasonable, oppressive, annoying

21   or embarrassing. Mattel points out that Kaye Scholer has separate case files containing all or the

22   vast majority of responsive documents, which undermines Kaye Scholer's boilerplate burden

23   objections. Mattel also points out that it offered to alleviate some of the burden to Kaye Scholer

24   by paying for Kay Scholer's copying costs and by providing a paralegal to inspect documents

25   from Kaye Scholer's files with an agreement that the inspection would not result in a waiver of

26   any privileges. Further, Mattel contends that the protective order in place in this action is

27   sufficient to address any confidentiality concerns Kaye Scholer may have.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

14

EXHIBIT _____4_____

PAGE _____90_____

1      Mattel next contends that the documents it seeks from Kaye Scholer are not available from

2   other sources, as evidenced by Mattel's repeated and unsuccessful attempts to seek the same

3   documents from MGA.  Indeed, Mattel contends that the documents in Kaye Scholer's possession

4   are in fact documents within MGA's possession, custody and control that should have, but have

5   not yet been, produced pursuant to prior discovery orders obligating MGA and Isaac Larian to

6   produce documents from the Larian v. Larian proceedings.  Mattel also points out that it has

7   searched public files and served additional subpoenas on other third parties involved in the Larian

8   v. Larian proceedings.  Moreover, Mattel argues that federal law requires Kaye Scholer to comply

9   with the subpoena, even if the evidence sought is obtainable from another source.  See e.g. State

10  Farm Mut. Auto. Ins. Co. v. Accurate Medical, P.C., 2007 WL 2993840 at *1 (E.D. N.Y. 2007).

11     Mattel contends that Kaye Scholer's proposal to search only certain files for responsive

12  documents is unacceptable because it would inevitably exclude relevant documents.  In particular,

13  Mattel contends that Kaye Scholer's proposal would exclude relevant documents likely to be

14  found in its correspondence file, such as an August 29, 2003 letter from Isaac Larian to Mr.

15  Zarabi relating to an appraisal of MGA, and a letter from Farhad Larian's attorney to Kaye

16  Scholer detailing the evidence of Isaac Larian's alleged concealment of Bratz.  Mattel contends

17  that the relevance of these documents and others that are likely to exist justifies the burden of

18  production on Kaye Scholer.

19     Further, Mattel contends that Kaye Scholer has failed to produce a privilege log in

20  violation of Rule 45(d)(2), Fed.R.Civ.P., and therefore Kaye Scholer has waived any claims of

21  privilege.  In the alternative, Mattel requests an order compelling Kaye Scholer to produce a

22  document-by-document privilege log.

23     Kaye Scholer contends that the instant motion is premature, unnecessary and a waste of

24  judicial resources.  Kaye Scholer represents that after meeting and conferring in good faith, it

25  agreed to produce documents responsive to thirty of the thirty-five requests, and that the

26  remainder of the requests are grossly overbroad.  Further, Kaye Scholer represents that it has

27  completed its review pursuant to the agreement, and is prepared to produce responsive

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

15

EXHIBIT ____4____

PAGE ____91____

1  documents. However, Kaye Scholer continues to object to producing a document-by-document

2  privilege log on the grounds that it would be unduly burdensome and expensive. Kaye Scholer

3  emphasizes that Mattel is seeking documents from a law firm, and therefore the vast majority of

4  responsive documents are protected by multiple privileges, including but not limited to the

5  attorney-client privilege and the work product doctrine. Kaye Scholer estimates that it would take

6  in excess of seventy (70) hours to create a document-by-document privilege log for this case, and

7  that the Federal Rules of Civil Procedure do not require Kaye Scholer to undertake such an

8  unreasonable burden. Furthermore, Kaye Scholer contends that the failure to produce a

9  document-by-document privilege log does not result in a per-se waiver of any privilege.

10      MGA also opposes Mattel's motion for several reasons. First, MGA contends that

11  Mattel's requests are overbroad, encompassing documents that are only marginally related, if at

12  all, to the claims and defenses in the case. Second, MGA contends that Mattel's requests are

13  completely duplicative of requests it has served on the parties in the case. In particular, MGA

14  contends that Mattel has sought the Larian v. Larian documents from both MGA Entertainment,

15  Inc. and Isaac Larian. See Mattel's Request No. 41 in Mattel's First Set of Request for

16  Production of Documents and Tangible Things to MGA, and Request Nos. 123-125 in Mattel's

17  First Set of Requests for Documents and Things to Isaac Larian. MGA and Isaac Larian are both

18  under court order to comply with the requests, although Isaac Larian is only required to produce

19  documents that refer or relate to Bratz in response to Request Nos. 123-125. Third, MGA

20  contends that Mattel's requests to Kaye Scholer are much broader than requests Mattel previously

21  served on the parties to this case. Fourth, MGA contends that there is no reason Mattel cannot

22  obtain a complete set of all relevant documents from the Larian v. Larian proceedings without this

23  third-party subpoena. Fifth, MGA contends that the vast majority of documents Mattel seeks

24  from Kaye Scholer are protected by the attorney-client privilege, the work product doctrine, or

25  other privileges, and that it is improper for Mattel to attempt to subpoena these documents and

26  then insist that Kaye Scholer produce a document-by-document privilege log. In summary, MGA

27  contends that Mattel has misused the subpoena process by serving deliberately overbroad and

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

16

EXHIBIT _____4_____

PAGE _____92_____

1    burdensome requests in an attempt to harass and intimidate MGA and non-parties.  Accordingly,

2    MGA contends that Mattel's motion should be denied or Mattel's subpoena should be

3    substantially limited in scope.

4              Mattel's Subpoena is Overbroad, Unduly Burdensome and Cumulative

5         Mattel's subpoena to Kaye Scholer is overbroad and is not reasonably tailored to seek

6    documents relevant to the claims and defenses in this case.  Of the thirty-five requests Mattel

7    served on Kaye Scholer, all but one begin with the phrase "all documents" or a similarly broad

8    phrase.  For example, Request Nos. 1-3, which are set forth below, seek virtually all documents

9    relating to lawsuits and/or arbitrations between Isaac Larian and Farhad Larian:

10        Request No. 1:  All DOCUMENTS, including all COMMUNICATIONS,
          RELATING TO any and all arbitration proceedings between FARHAD LARIAN
11        and ISAAC LARIAN, including without limitation all video and/or sound
          recordings, transcripts, exhibits, memoranda, witness statements, declarations,
12        affidavits and sworn testimony given by any PERSON in connection with such
          arbitration proceedings.

13
          Request No. 2:  All DOCUMENTS including all COMMUNICATIONS,
14        RELATING TO Los Angeles Superior Court Case No. BC301371 filed by
          FARHAD LARIAN against ISAAC LARIAN and/or any related proceedings,
15        including any appeal thereof, and including without limitation all video and/or
          sound recordings, transcripts, exhibits, pleadings, briefs, memoranda, witness
16        statements, declarations, affidavits and sworn proceedings and/or any appeal
          related to such lawsuit.

17
          Request No. 3:  All DOCUMENTS RELATING TO Los Angeles Superior Court
18        Case No. BC329501 filed by FARHAD LARIAN against ISAAC LARIAN,
          MORAD ZARABI and Kambiz Zarabi, and/or any related proceedings and/or any
19        appeal of such lawsuit, including without limitation all video and/or sound
          recordings, transcripts, exhibits, pleadings, briefs, memoranda, witness
20        statements, declarations, affidavits and sworn testimony given by any PERSON in
          connection with such suit and/or related proceedings and/or any appeal related to
21        such lawsuit.

22   Mattel has not limited the subject matter of these requests (and others) in any way to exclude

23   irrelevant information.  To the contrary, Request Nos. 1-3 are drafted in the broadest possible

24   language, encompassing documents that are only marginally related, if at all, to this case.  As

25   such, Mattel's requests are also unduly burdensome.

26        Furthermore, Mattel's requests are clearly duplicative of other requests propounded to the

27

28
     Bryant v. Mattel, Inc.,                                                        17
     CV-04-09049 SGL (RNBx)

EXHIBIT     4

PAGE      93

1   parties in this action.  In particular, the requests relating to the <u>Larian v. Larian</u> proceedings are

2   duplicative of Mattel's Request No. 41 to MGA and Request Nos. 123-125 to Isaac Larian.

3   During the hearing, counsel for MGA acknowledged that Isaac Larian is required to comply with

4   Request Nos. 123-125, and is prepared to review Kaye Scholer's files for responsive documents

5   to fulfill his responsibility.  Also during the hearing, Kaye Scholer agreed to make its

6   correspondence file available to MGA's counsel for review.

7        In light of Mattel's failure to take reasonable steps to avoid unduly burdening Kaye

8   Scholer and in light of MGA's and Kaye Scholer's representations during the hearing as outlined

9   above, Mattel's motion to compel Kaye Scholer to comply with the full scope of the subpoena is

10   denied.

11        <u>Kaye Scholer's Compromise is Reasonable Under the Circumstances</u>

12        As an alternative to complying with the full scope of the subpoena, Kaye Scholer agreed

13   to review the following files for documents responsive to every one of Mattel's requests except

14   Nos. 1-3, 6 and 10: (1) pleading files; (2) discovery files; and (3) arbitration exhibits.  Kaye

15   Scholer's Opposition at p.5.  Kaye Scholer's compromise is reasonable under the circumstances.

16   Narrowing the scope of Kaye Scholer's search in this manner will significantly minimize the

17   burden, expense, and inconvenience imposed by the subpoena because, unlike Kaye Scholer's

18   other files, most of the documents in the three files it agreed to search are not likely to be covered

19   by the attorney-client privilege or work product doctrine.  Further, narrowing Kaye Scholer's

20   search in this manner will not significantly deprive Mattel of relevant discovery to which it is

21   entitled because, as stated previously, MGA's counsel represented during the hearing that Isaac

22   Larian is prepared to review Kaye Scholer's documents, including the correspondence file, to

23   comply with Request Nos. 123-125.

24        Accordingly, to the extent it has not already done so, Kaye Scholer shall conduct the

25   agreed upon search of its three files and produce documents responsive to all of Mattel's requests,

26   except Nos. 1-3, 6 and 10.

27   //

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

18

EXHIBIT ___4___

PAGE ___94___

1       Kaye Scholer Must Produce a Privilege Log in Compliance with Rule 45

2       Mattel contends that Kaye Scholer has waived its claims of privilege by failing to produce

3  any privilege log. The law is clear, however, that the failure to produce a document-by-document

4  privilege log does not result in a per-se waiver of any privilege. See Burlington Northern & Santa

5  Fe Ry. Co. v. U.S. Dist. Court for Dist. Of Mont., 408 F.3d 1142, 1147 (9th Cir. 2005). In this

6  case, Kaye Scholer raised a legitimate objection to producing a document-by-document privilege

7  log on the grounds that it would impose an undue burden. Under these circumstances, a finding

8  of waiver is unjustified.

9       Nevertheless, Kaye Scholer's claim of undue burden is unpersuasive. Kaye Scholer has

10  acknowledged that most of the documents in the three files it has agreed to search are not likely to

11  be covered by the attorney-client privilege or work product doctrine. Kaye Scholer Opposition at

12  pp. 5 and 9. Indeed Kaye Scholer agreed to search these files precisely because they were not

13  likely to contain privileged documents. Therefore, requiring Kaye Scholer to produce a

14  document-by-document privilege log for documents withheld from these three files should not

15  impose an undue burden. Accordingly, Kaye Scholer is ordered to produce a document-by-

16  document privilege log for documents withheld from the three files it agreed to search.

17                      V. CONCLUSION

18       For the reasons set forth above, it is ordered as follows:

19       1. Farhad Larian is in substantial compliance with Mattel's subpoena with respect to all of

20  the requests, except Nos. 23, 24 and 41. Request Nos. 23, 24 and 41 are overbroad, unduly

21  burdensome, cumulative, harassing and invade the right of privacy of Farhad Larian and his

22  family. Therefore, Mattel's motion to compel Farhad Larian to produce documents in response to

23  the subpoena is denied.

24       2. Farhad Larian shall produce a document-by-document privilege log to Mattel no later

25  than January 30, 2008.

26       3. Farhad Larian's request for sanctions against Mattel is denied.

27       4. Mattel's subpoena to Kaye Scholer is overbroad, unduly burdensome and cumulative.

28  

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

19

EXHIBIT _____ 4 _____

PAGE _____ 95 _____

1 | Therefore, Mattel's motion to compel Kaye Scholer to produce documents responsive to the
2 | subpoena is denied.  Instead, Kaye Scholer is ordered to abide by its agreement to review its
3 | pleading files, discovery files, and arbitration exhibits for documents responsive to all of Mattel's
4 | requests, except Request Nos. 1-3, 6 and 10.  Kaye Scholer shall produce responsive documents
5 | no later than January 30, 2008.

6 |      5. Kaye Scholer shall also produce a document-by-document privilege log identifying all
7 | documents withheld from its pleading files, discovery files, and arbitration exhibits, no later than
8 | January 30, 2008.

9 |      6. Mattel shall abide by its agreement to reimburse Farhad Larian and Kaye Scholer for
10 | their copying costs.

11 |      7. Isaac Larian is granted an extension of time to comply with Request Nos. 123-125.
12 | Isaac Larian shall deliver documents responsive to these requests to Mattel no later than 12:00
13 | p.m. on January 25, 2008.

14 |      8. Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery
15 | Master, Mattel shall file this Order with the Clerk of Court forthwith.

16 |

17 | Dated: January 25, 2008

                    /s/Edward A. Infante
18 |                     HON. EDWARD A. INFANTE (Ret.)
                    Discovery Master

EXHIBIT _____4_____

PAGE _____96_____

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on January 25, 2008, I served

the attached ORDER RE MATTEL'S MOTIONS TO COMPEL FARHAD LARIAN, KAYE SHOLER

AND STERN & GOLDBERG TO PRODUCE DOCUMENTS in the within action by email addressed

as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| Matthew M. Werdegar, Esq. | Keker & Van Nest | mwerdegar@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| Audrey Walton-Hadlock, Esq. | Keker & Van Nest | awalton-hadlock@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Thomas J. Nolan, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tnolan@skadden.com |
| Raoul D. Kennedy, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | rkennedy@skadden.com |
| Amy S. Park, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | apark@skadden.com |
| Harriet S. Posner, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | hposner@skadden.com |
| Carl Alan Roth, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | croth@skadden.com |
| Timothy A. Miller, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tmiller@skadden.com |
| Marcus R. Mumford, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Mmumford@skadden.com |
| Patricia Glaser, Esq. | Christensen, Glaser, Fink, et al. | pglaser@chrisglase.com |
| Scott E. Gizer, Esq. | Christensen, Glaser, Fink, et al. | sgizer@chrisglase.com |
| Alisa Morgenthaler-Lever, Esq. | Christensen, Glaser, Fink, et al. | amorgentaler@chrisglase.com |
| Alan N. Goldberg, Esq. | Stern & Goldberg | agoldberg@sgattys.com |
| Mark Overland, Esq. | Overland, Borenstein, et al. | moverland@obsklaw.com |
| Alexander Cote, Esq. | Overland, Borenstein, et al. | acote@obsklaw.com |
| Bryant S. Delgadillo, Esq. | Kaye Scholer | bdelgadi@kayscholer.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above

is true and correct.

Executed on January 25, 2008, at San Francisco, California.

_Sandra Chan_

Sandra Chan

EXHIBIT ____4____

PAGE ____97____

# EXHIBIT 5

# THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

# EXHIBIT 6

1   Robert C. O'Brien (SBN 154372)
    ARENT FOX LLP
2   555 West Fifth Street, 48th Floor
    Los Angeles, CA 90013-1065
3   Telephone: 213.629.7400
    Facsimile: 213.629.7401
4   obrien.robert@arentfox.com

5   Discovery Master

6

7

8               UNITED STATES DISTRICT COURT

9               CENTRAL DISTRICT OF CALIFORNIA

10              EASTERN DIVISION

11

12  CARTER BRYANT, an individual,        Case No. CV 04-09049 SGL (RNBx)

13              Plaintiff,
                                         **Consolidated with**
14          v.                           **Case No. CV 04-09059**
                                         **Case No. CV 05-2727**
15  MATTEL, INC., a Delaware
    corporation,                         **PHASE II DISCOVERY MATTER**
16
                Defendant.               **ORDER NO. 3, REGARDING:**
17
                                         **(1)  MOTION OF MGA**
18                                       **ENTERTAINMENT, INC.,**
                                         **ISAAC LARIAN AND MGA**
19                                       **ENTERTAINMENT (HK)**
                                         **LIMITED TO QUASH**
20                                       **NON-PARTY SUBPOENAS; and**

21                                       **(2)  MOTION OF MATTEL, INC.**
                                         **TO COMPEL PRODUCTION OF**
22                                       **DOCUMENTS RESPONSIVE TO**
                                         **THE SAME NON-PARTY**
23                                       **SUBPOENAS**

24  ┌─────────────────────────────────┐
25  │ CONSOLIDATED WITH               │
    │ MATTEL, INC. v. BRYANT and      │
26  │ MGZ ENTERTAINMENT, INC. v.      │
    │ MATTEL, INC.                    │
27  └─────────────────────────────────┘

28
─────────────────────────────────────────────────────────────────
ARENT FOX LLP                        1              ORDER NO. 3
ATTORNEYS AT LAW                            [Case No. CV 04-09049 SGL (RNBx)]
LOS ANGELES

EXHIBIT ____6____
PAGE ____102____

1        This Order sets forth the Discovery Master's ruling on: (1) the motion of

2    MGA Entertainment, Inc., Isaac Larian, and MGA Entertainment (HK) Limited

3    (collectively "MGA") to quash certain non-party subpoenas [Docket Number 4779]

4    and (2) the corresponding motion of Mattel, Inc. ("Mattel") to compel production of

5    documents responsive to the same non-party subpoenas [Docket Numbers 4769 and

6    4788] (collectively, the "Motions").

7        The Motions came on regularly for hearing before the Discovery Master on

8    March 4, 2009. All interested parties were represented by counsel and afforded the

9    opportunity to present oral argument on the Motions. The Discovery Master,

10   having considered the papers filed in support of and in opposition to the Motions,

11   and having heard oral argument thereon, rules as set forth below.

12   **I.  INTRODUCTION**

13

14       **A.  The Court's February 11, 2009 Ruling**

15       On February 11, 2009, the Court heard oral argument on various motions

16   filed by the parties. During the proceedings, counsel took the opportunity to orally

17   request clarification by the Court regarding whether the parties' respective motions

18   relating to the subpoenas served by Mattel on various entities allegedly related to

19   MGA (the "Subpoenas") are in any way stayed or precluded by any of the Court's

20   prior orders.

21       In response, the Court stated: "I will instruct the Discovery Master this

22   afternoon, in no uncertain terms, that there is no stay on any discovery related to

23   this case at all." (Reporter's Transcript of Proceedings, February 11, 2009 ["Tr."],

24   99:8 – 10). Counsel for MGA then referred to the fact that the Court had

25   previously declined to allow Mattel to serve certain discovery accompanying

26   Mattel's motion for a receiver and characterized the third-party subpoenas as an

27   attempt to circumvent the Court's ruling. (Tr., 101:12 – 17). In response, the Court

28   stated:

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT   6

PAGE   103

> Then the question becomes – and this is a question for the
> Discovery Master, not for this Court – whether or not the
> discovery is related to Phase 2. If it is, it is. I'm not going to
> pass any judgment whatsoever. I'm going to leave that
> completely up to the Discovery Master. ... The question for the
> [D]iscovery [M]aster will be whether or not the disputed
> discovery request is related or relevant to the trial that has now
> been scheduled for March [2010] or not.

(Tr., 101:18 – 22; 103:1 – 3).

The Discovery Master understands the Court's ruling as indicating that, in

deciding the motions relating to the Subpoenas, the Discovery Master should

consider whether there is a nexus between the information sought by the

Subpoenas, on the one hand, and the Phase 2 claims and counterclaims set for trial

in March 2010, on the other hand. If the information sought by the Subpoenas is, to

use the Court's words, "related to Phase 2" or "related or relevant to the [Phase 2]

trial," then that information could potentially be the subject of appropriate

discovery requests by Mattel.[1]

**B.     Information Sought By The Subpoenas**

The information sought by Mattel's Subpoenas falls into two broad

categories. First, Mattel seeks documents from third parties Omni 808 Investors,

LLC, OmniNet Capital, LLC and Vision Capital, LLC (collectively, the "Financing

Entities") involving, among other things, their internal ownership and operations

and their role in providing financing to MGA during the summer of 2008 (the

---

[1] Even prior to the Court's February 11, 2009 ruling, Mattel acknowledged that it had the burden of demonstrating a
nexus between the information sought by the Subpoenas and the Phase 2 issues, as demonstrated by Mattel's
inclusion of a section in its Motion to Compel summarizing the claims to be adjudicated in Phase 2, (Motion, pp. 5 –
8), and a section arguing that the information sought by the third-party subpoenas is relevant to Mattel's Phase 2
claims, (*Id.*, pp. 18 - 24 and 24 – 25). However, Mattel also argued that the information sought might be appropriate
regardless of any nexus to Phase 2. (*See id.*, pp. 14 – 17 [arguing that MGA's prior statements regarding its finances
in Phase 1 "opened the door" to discovery on this issue] and *id.*, p. 23 [arguing that the information sought is relevant
to MGA's credibility]). Based on the Court's subsequent ruling on February 11, 2009, as well as the Discovery
Master's own independent evaluation of those arguments, the Discovery Master concludes, as discussed more fully
below, that these arguments are insufficient, standing alone, to justify the non-party discovery Mattel seeks. Rather,
Mattel must demonstrate some link between the information sought and the issues to be adjudicated by the Court at
the Phase 2 trial.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

1  "Financing Discovery"). Based on the information presented at the February 11,

2  2009 hearing and in connection with the pending motions, it does not appear that

3  either MGA Entertainment, Inc., MGA Entertainment (HK) Limited, or Larian have

4  an ownership interest in the Financing Entities.[2] (*See* Tr., 70:22 – 72:5; 78:9 -25).

5      Second, Mattel seeks documents from third parties IGWT Group, LLC and

6  IGWT 826 Investments, LLC (collectively, the "Transferee Entities") regarding

7  MGA's sale to them of infringing MGA inventory, namely Bratz dolls (the

8  "Transferee Discovery"). MGA does not dispute that the Transferee Entities are

9  owned and/or controlled by Larian. (*See, e.g.,* MGA's Reply in support of its

10  Motion to Quash, at p. 5, fn. 6, where MGA refers to the purchase of Bratz

11  inventory by the Transferee Entities as "Larian's purchase of those . . .

12  products . . . .").[3]

13  **II.   MGA's Motion To Quash**

14      Because it could dispose of all outstanding discovery issues related to the

15  Subpoenas, the Discovery Master first addresses MGA's Motion to Quash filed on

16  February 3, 2009.

17      **A.   Legal Standard**

18      As the party moving to quash the Subpoenas, MGA bears the burden of

19  satisfying the standard set forth in Rule 45(b), which provides that the court may

20  "quash or modify the subpoena if it is unreasonable and oppressive." (Fed. R. Civ.

21  P. 45(b); *see also Wiwa v. Royal Dutch Petroleum Co.,* 392 F.3d 812, 818 (5th Cir.

22  2004) ["The moving party has the burden of proof to demonstrate that compliance

23

24  [2] Of course, this is one of the facts Mattel seeks to investigate through the Subpoenas to the Financing Entities. The

25  Discovery Master's ruling denying Mattel's Motion to Compel the Financing Parties to comply with the Subpoenas does not address – and should not be construed as deciding – whether Mattel could, upon establishing a nexus to a legitimate Phase 2 issue, seek to obtain this information from MGA.

26
[3] Moreover, MGA does not dispute the assertions made by Mattel in its Motion to Compel at pp. 11– 12, including

27  that Larian created IGWT Group during the Phase 1 trial and registered its place of business as his home address, and that Larian created IGWT 826 Investments the day after the Phase 1 trial ended and registered it at the home address

28  of his sister.

EXHIBIT ___6___

PAGE ___105___

1  with the subpoena would be unreasonable and oppressive" (internal quotations

2  omitted)]; *Linder v. Department of Defense*, 133 F.3d 17, 24 (D.C. Cir. 1998) [The

3  burden of proving that a subpoena is oppressive is on the party moving to quash];

4  *Washington v. Thurgood Marshall Academy*, 230 F.R.D. 18, 21 (D.D.C. 2005) [the

5  burden is on the movant to establish that a subpoena duces tecum should be

6  quashed]). "The burden is particularly heavy to support a 'motion to quash as

7  contrasted to some more limited protection.'" (*Westinghouse Electric Corp. v. City

8  of Burlington*, 351 F.2d 762, 766 (D.C.Cir.1965) [denying a motion to quash

9  supported by two affidavits]).

10        **B.      Arguments Made By MGA In Support Of Its Motion To Quash**

11        The sole argument set forth in MGA's Motion to Quash is that the Court's

12  January 7, 2009 order appointing a forensic auditor bars Mattel from seeking the

13  information sought by the Subpoenas. (*See* MGA's Motion to Quash, pp. 1 - 6).

14  But that argument fails for the reasons set forth above. The Court made it clear at

15  the hearing on February 11, 2009 that:

16              There is no stay on discovery. Period. . . . . [The forensic auditor
17              appointed by the Court] is acting at the Court's discretion to
               inform the Court of information. . . . That's an entirely separate
18              matter. And I have not stayed any discovery and there should be
19              no reliance on that. If that was misunderstood, it's clarified now.

20  (Tr., 97:15, 98:8 - 9, and 98:13 - 15).

21        Recognizing that its only argument has been rejected by the Court, MGA

22  argues for the first time in its Reply that its Motion to Quash should be granted

23  because the Subpoenas are not relevant to any of Mattel's Phase 2 claims. (*See*

24  MGA's Reply Brief in Support of the Motion to Quash, pp. 1 and 5 - 12).

25  However, MGA did not make this argument in its opening brief. It instead declared

26  in its moving papers that whether the Subpoenas are related to any "Phase 2 issues

27  is beside the point." (*Id.*, p. 5). Because MGA did not address the relevance of the

28  subject discovery until the filing of its Reply, the Discovery Master declines to

EXHIBIT ___6___

PAGE ___106___

1   consider the argument in connection with the Motion to Quash.

2         The Discovery Master, like the Court,[4] disfavors the insertion of new

3   arguments at the reply stage that could have been raised in the moving papers.  A

4   party filing a motion is required to raise all of its arguments in its opening brief to

5   prevent "sandbagging" of the non-moving party and to provide opposing counsel

6   the chance to respond.  This rule is routinely adhered to by courts in the Ninth

7   Circuit.  (*See, e.g., United States v. Boyce*, 148 F.Supp .2d 1069, 1085

8   (S.D.Cal.2001); *Leick v. Hartford Life and Acc. Ins. Co.,* 2007 WL 1847635 at *1,

9   n. 1 (E.D.Cal. 2007); *Stewart v. Wachowski,* 2004 WL 2980783, at *11 (C.D.Cal.

10  Sept. 28, 2004); *Hamilton v. Willms,* 2007 WL 2558615, *11 (E.D.Cal.2007); *see*

11  *also United States v. Cox,* 7 F.3d 1458, 1463 (9th Cir.1993); *United States v.*

12  *Wright,* 215 F.3d 1020, 1030 n. 3 (9th Cir.2000)).

13        Furthermore, MGA will not suffer any prejudice from this decision because

14  the issue it raised in its Reply (i.e., are the Subpoenas seeking information related to

15  any Phase 2 claims) has been fully briefed by the parties and is ruled upon by the

16  Discovery Master in connection with Mattel's Motion to Compel.[5]  (*See* Section III

17  below).

18        Accordingly, MGA's Motion to Quash is **DENIED**.

19  //

20  //

21  //

22  //

23

24  [4] In *Bryant v. Mattel, Inc.*, 573 F.Supp.2d 1254, 1273 n.7 (C.D. Cal. 2007), the Court noted that it "ordinarily would not consider" arguments made for the first time on reply but did so only "because [undertaking the analysis did] not change [its] ultimate conclusion."

25

26  [5] That the arguments raised in the Reply are the same as those in MGA's Opposition to the Motion to Compel is conceded by Mattel. Indeed, Mattel admitted in its Request to Consolidate MGA's Motion to Quash and Motion to Compel (which was denied as untimely by the Discovery Master at the hearing on March 4, 2009) that the "MGA Parties' Opposition to Mattel's Motion to Compel Production of Documents Responsive to Third Party Subpoenas . . . makes the same arguments as the MGA Parties' Reply in support of their Motion to Quash." (Mattel's Request to Consolidate MGA's Motion to Quash and Mattel's Motion to Compel, p. 2).

27

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 6 -                           ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___6___

PAGE ___107___

| | |
|---|---|
| 1 | **III.   Mattel's Motions To Compel** |
| 2 | **A.   The Purported Procedural Defects Barring Mattel's Motions To** |
| 3 | **Compel** |
| 4 | MGA, the Financing Entities, and the Transferee Entities all argue that that |
| 5 | Mattel's Motion to Compel should be denied on several different procedural |
| 6 | grounds. |
| 7 | **1.   The Court's January 7, 2009 Order** |
| 8 | As an initial matter, the Transferee Entities and the Financing Entities repeat |
| 9 | the argument made by MGA in its Motion to Quash that the Court's January 7, |
| 10 | 2009 Order appointing a forensic auditor barred Mattel from seeking the discovery |
| 11 | sought by the Subpoenas. (Financing Entities' Opposition to Mattel's Motion to |
| 12 | Compel at p. 3; Transferee Entities' Opposition to Mattel's Motion to Compel at |
| 13 | pp. 5 - 7). But that argument fares no better here than it did with respect to MGA's |
| 14 | Motion to Quash and is rejected for the reasons discussed in Section II above. |
| 15 | **2.   Local Rule 37** |
| 16 | The Financing Entities and the Transferee Entities also argue that Mattel's |
| 17 | Motion to Compel should be denied because Mattel failed to comply with Local |
| 18 | Rule 37 by, among other things, failing to meet and confer and failing to file a joint |
| 19 | stipulation. (Financing Entities' Opposition to Mattel's Motion to Compel, pp. 1 - |
| 20 | and 7 - 10; Transferee Entities' Opposition to Mattel's Motion to Compel, p. 2 |
| 21 | [referencing Local Rule 37 in passing]).  However, Local Rule 37 (as distinguished |
| 22 | from Federal Rule 37, which is discussed in subsection 7a, below) does not apply to |
| 23 | discovery disputes in this case.  Rather, the applicable procedure is the one adopted |
| 24 | by the Court in its order appointing a discovery master dated December 6, 2006 |
| 25 | ("Discovery Master Order").[6]  Because the Discovery Master Order provides that |
| 26 | |
| 27 | [6] The Discovery Master Order is incorporated by reference into the Court's January 6, 2009 Order appointing a discovery master for Phase 2 of this litigation. (*See* Court's Order dated January 6, 2009, p. 2 ["The Discovery |
| 28 | Master will serve under the terms and conditions of the Stipulation and Order dated December 6, 2006"]). |

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____6_____

PAGE _____108_____

1    "all third parties subject to discovery requests . . . in this litigation shall be bound

2    by the terms of this Stipulation and Order," (Discovery Master Order, p. 6), that

3    order applies to the Financing Entities as well as the Transferee Entities, and its

4    procedures replace those set forth in Local Rule 37. (*Id.*, p. 4).

5            **3.**    **Local Rule 11-6 And Paragraph 4(b) Of The Court's**

6                     **Standing Order**

7        The Financing Entities and MGA further argue that Mattel's Motion to

8    Compel should be denied because it exceeds the page limitations set forth in Local

9    Rule 11-6 and Paragraph 4(b) of the Court's Standing Order. (*See* Financing

10   Entities' Opposition to Mattel's Motion to Compel, p. 9; MGA's Opposition to

11   Mattel's Motion to Compel, pp. 18 - 19). Each of these contentions is unavailing.

12   The Discovery Master Order (not the Local Rules or the Court's Standing Order)

13   governs discovery disputes in this case, and it does not impose any page limit on

14   such motions.[7] In fact, the Discovery Master Order dispenses with the formatting

15   requirements of the Local Rules in certain ways, such as allowing letter briefs, and

16   even permits the parties to agree to alternative procedures, including, presumably,

17   filing briefs that are more than 25 pages in length. (*See* Discovery Master Order, p.

18   4). Thus, while the Discovery Master encourages the parties to be as efficient as

19   possible in their briefing, he recognizes that briefs in excess of 25 pages are either

20   directly permitted under the Discovery Master Order (since no page limitation was

21   imposed by the Court) or implicitly allowed (since the parties may agree to

22   alternate procedures). He further recognizes that the complex nature of this case

23   may periodically necessitate the filing of briefs that exceed 25 pages.[8] For all of

24

25   [7] Even assuming the 25 page limitation for briefs did apply, Mattel had the option of filing separate motions to

26   compel for each of the subpoenas at issue and could have easily extended the page limitation well beyond the 30 pages it filed in connection with its combined motion that addressed multiple subpoenas propounded on the Transferee Entities and the Financing Entities.

27   [8] In fact, the parties to this lawsuit have filed multiple discovery motions in this case that contained more than 25

28   pages. (*See* Supplemental Declaration of Jon D. Corey in Support of Mattel, Inc.'s Reply in Response to The MGA Parties' Opposition to Motion to Compel, ¶ 7).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____6_____

PAGE _____109_____

1   these reasons, filings in excess of 25 pages are permitted.[9]

2         **4.   Local Rule 6-1**

3         The Financing Entities argue in passing that Mattel's motion to compel

4   should be denied because it violates Local Rule 6-1. (Financing Entities'

5   Opposition to Mattel's Motion to Compel, p. 6).   However, the Discovery Master

6   Order adopts a completely different set of deadlines than the Local Rules for the

7   filing of motions, oppositions and replies, and a different schedule for noticing

8   hearing dates. (Discovery Master Order, p. 4). Therefore, Local Rule 6-1 has no

9   applicability here.

10         **5.   Failure To Name MGA In The Motion To Compel**

11         MGA next argues that Mattel's motion to compel is procedurally improper

12   because MGA was not named in the Motion to Compel and Mattel should not be

13   allowed to respond to MGA's objections.   (MGA's Opposition to Mattel's Motion

14   to Compel, p. 18). But MGA has cited no legal authority, and the Discovery

15   Master has found none, standing for the proposition that a party must name in its

16   motion to compel all parties who have objected to an underlying subpoena even if

17   they are not actually the target of the subpoena. In fact, the contention that Mattel's

18   Motion to Compel should have been brought against MGA makes no sense given

19   that it could not possibly comply with any order compelling a response to the

20   Subpoenas.

21         **6.   Mattel's Separate Statement**

22         MGA also contends that Mattel's Motion to Compel should be denied

23   because its' separate statement "is another classic example of . . . inefficiency."

24   (*Id.*, p. 19). Once again, nothing in the Discovery Master Order prevents a party

25   from filing a separate statement that first identifies the request in dispute and then

26

27

28

[9] In the event the length of briefs ever becomes excessive, the Discovery Master will issue an order setting a specific page limitation.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____6_____

PAGE _____110_____

1    sets forth the various contentions of the parties, even if the information regarding

2    the various requests happens to be repetitive.  Regardless, MGA has not cited any

3    legal authority in support of its position and the Discovery Master finds no reason

4    to dispose of Mattel's Motion to Compel merely because it filed a separate

5    statement that contains duplicative arguments.[10]

6               **7.     Meeting And Conferring**

7          As their final procedural argument in opposition to the Motion to Compel,

8    the Transferee Entities and the Financing Entities assert that the motion should be

9    denied because Mattel failed to adequately meet and confer prior to filing the

10   motion.  (Financing Entities' Opposition to Mattel's Motion to Compel, pp. 7 - 8;

11   Transferee Entities' Opposition to Mattel's Motion to Compel, pp. 2 - 5).

12               **a.     Applicable Procedure**

13         Prior to filing its motion to compel, Mattel had an obligation to comply with

14   both the Federal Rules of Civil Procedure and the Discovery Master Order.  Federal

15   Rule of Civil Procedure 37(a) expressly requires that a party filing a motion to

16   compel discovery first meet and confer in "good faith."  (Fed. R. Civ. Proc. 37(a)).

17   Similarly, the Discovery Master Order states that unless an "alternative procedure"

18   is agreed upon or otherwise ordered by the Discovery Master, the

19               moving party shall first identify each dispute, state the relief
20               sought, and identify the authority supporting the requested relief
                 in a meet and confer letter that shall be served on all parties by
21               facsimile or electronic mail.  The parties shall have five court
                 days from the date of service of that letter to conduct an in-person
22               conference to attempt to resolve the dispute.  If the dispute has
                 not been resolved within five court days after such service, the
23               moving party may seek relief from the Discovery Master by
                 formal motion or letter brief . . .

24   (Discovery Master Order, p. 4).

25   //

26

27

28

---

[10] The Discovery Master notes that where there are numerous discovery requests in dispute he would prefer for a separate statement to be submitted by the moving party.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 10 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____ 6

PAGE _____ 111

1       **b.**    **Mattel's Meet And Confer Regarding The Financing**
2          **Entities**

3     In challenging Mattel's meet and confer effort, the Financing Entities first

4 claim that Mattel violated the Discovery Master Order because no "in-person

5 meeting occurred." (Financing Entities' Opposition to Mattel's Motion to Compel,

6 p. 8). But that argument is without merit, since Mattel and the Financing Entities

7 agreed to an alternative procedure that disposed of the in-person meet and confer

8 requirement.[11] Indeed, MGA's counsel sent counsel for Mattel, counsel for the

9 Transferee Entities and counsel for the *Financing Entities* a letter on January 23,

10 2009 memorializing the parties' agreement and establishing a schedule whereby the

11 parties would "meet and confer on January 29 and 30 . . ." (Mattel's Reply in

12 Support of its Motion to Compel filed on February 13, 2009, pp. 9 - 10;

13 Supplemental Declaration of Jon D. Corey in Support of Mattel's Reply to the

14 Motion to Compel filed on February 13, 2009, ¶ 4 and Ex. 2). That the Financing

15 Entities' counsel received this letter and acted in accordance with its terms is

16 evidenced by, among other things, the fact that they served objections to the

17 Subpoenas on January 28, 2009 (which was the deadline specified in the January 23

18 letter) and started meeting and conferring with Mattel's counsel telephonically on

19 January 30. (Financing Entities' Opposition to Mattel's Motion to Compel, pp. 3

20 and 4). Accordingly, Mattel did not have any obligation to meet with the Financing

21 Entities in person since the parties had agreed to waive that obligation.

22     Nevertheless, Mattel still had an obligation to meet and confer with the

23 Financing Entities in good faith. Good faith cannot be shown merely through

24 perfunctory efforts; rather Federal Rule of Civil Procedure 37 mandates a genuine

25 attempt to resolve the discovery dispute through non-judicial means. (Fed. R. Civ.

26   [11] To promote efficiency and minimize the necessity for counsel to travel between their respective offices, the
27   Discovery Master shall deem Paragraph 5 of the Discovery Master Order (mandating that the parties have an in
person conference to attempt to resolve discovery disputes) to be sufficiently satisfied if the parties and non-parties
28   involved in a discovery dispute meet and confer telephonically or by video conference. However, the Discovery
Master emphasizes that this accommodation in no way lessens the parties' obligation to meet and confer in good
faith.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

              - 11 -          ORDER NO. 3
                    [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____ 6 _____

PAGE _____ 112 _____

1    Proc. 37(a)(1)).

2    Because the evidence and declarations submitted by Mattel and the Financing

3    Entities are in conflict regarding what transpired during their respective meet and

4    confer communications, (*Cf.* Financing Entities' Opposition to Mattel's Motion to

5    Compel, pp. 3 – 5; Mattel's Reply Brief in Support of its Motion to Compel filed on

6    February 13, 2009, pp. 9-10), the Discovery Master gives Mattel the benefit of the

7    doubt and concludes that it adequately met and conferred with respect to Omni 808

8    Investors, LLC and Vision Capital, LLC.

9    By contrast, Mattel arguably did not even begin the meet and confer process

10   with OmniNet Capital, LLC prior to filing its motion to compel, because counsel

11   for the Financing Entities informed Mattel that they did not receive that Subpoena

12   until the afternoon of February 2, 2009 and filed objections to the Subpoena on that

13   date. (Financing Entities' Opposition to Mattel's Motion to Compel at p. 5).  No

14   "good faith" meeting could therefore have taken place.

15   Although the meet and confer with respect to OmniNet Capital, LLC was

16   inadequate, the Discovery Master will nonetheless address the merits of Mattel's

17   Motion to Compel in all respects, including concerning the Subpoena served on

18   OmniNet Capital, LLC.  The Discovery Master does so for purposes of efficiency

19   (i.e., the issues to be decided regarding the subpoena served on OmniNet Capital,

20   LLC are essentially identical to those that must be addressed in connection with the

21   subpoenas served on Omni 808 Investors, LLC and Vision Capital, LLC) and

22   because addressing the merits of the motion does not alter the outcome.[12]

23                    **c.    Mattel's Efforts To Meet And Confer Regarding The**

24                           **Transferee Entities**

25   Like the Financing Entities, the Transferee Entities contend that Mattel's

26   motion to compel should be denied because it did not meet and confer in good faith.

27

28   _____

[12] As noted above, the parties are admonished to abide by the provisions of the Discovery Master Order requiring a good faith attempt to meet and confer regarding discovery disputes prior to the filing of any discovery motion.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 12 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____ 6

PAGE _____ 113

1   (Transferee Entities' Opposition to Mattel's Motion to Compel, pp. 2 - 5). Yet, the

2   Transferee Entities concede that their counsel engaged in multiple meet and confer

3   teleconferences.  (*Id.* at pp. 3 - 4). Several emails and letters were also exchanged

4   between the parties as part of the meet and confer process. (*Id.*).  In light of these

5   interactions, the Discovery Master again gives Mattel the benefit of the doubt in

6   favor of resolving the issues on the merits and concludes that it adequately met and

7   conferred with the Transferee Entities.

8          **B.    Legal Standard Governing Enforcement Of The Subpoenas**

9          Federal Rule of Civil Procedure 26(b)(1) provides for discovery in civil

10  actions of "any matter, not privileged, which is relevant to the subject matter

11  involved . . .. The information sought need not be admissible at the trial if the

12  information sought appears reasonably calculated to lead to the discovery of

13  admissible evidence."  Rule 26(b) is liberally interpreted to permit wide-ranging

14  discovery of all information reasonably calculated to lead to discovery

15  of admissible evidence; but the discoverable information need not be admissible at

16  the trial. (*Jones v. Commander, Kansas Army Ammunitions Plant*, 147 F.R.D. 248,

17  250 (D.Kan.1993)).

18         The broad scope of discovery described in subsection (b)(1) is tempered by

19  provisions protecting the responding party from undue burden.  Rule 26(b)(2)

20  provides that the frequency or extent of discovery otherwise allowed by the Rules

21  must be limited if the court determines that "(i) the discovery sought is

22  unreasonably cumulative or duplicative, or is obtainable from some other source

23  that is more convenient, less burdensome, or less expensive; (ii) the party seeking

24  discovery has had ample opportunity by discovery in the action to obtain the

25  information sought; or (iii) the burden or expense of the proposed discovery

26  outweighs its likely benefit, taking into account the needs of the case, the amount in

27  controversy, the parties' resources, the importance of the issues at stake in the

28  litigation, and the importance of the proposed discovery in resolving the issues."

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 13 -                    ORDER NO. 3
                [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____ 6
PAGE _____ 114

1    Moreover, the Federal Rules distinguish between discovery from non-parties
2    to a lawsuit (governed under Rule 45) and discovery from parties (governed
3    generally by Rule 26), based in part on the recognition that the former is inherently
4    more burdensome and less convenient than the latter. (*See, e.g., Solarex v. Arco
5    Solar, Inc.*, 121 F.R.D. 163, 179 (E.D.N.Y. 1988) [The status of a non-party is
6    significant when determining whether compliance with a discovery demand would
7    constitute an undue burden]; *Katz v. Batvia Marine and Sporting Supplies, Inc.*, 984
8    F.2d 422, 424 (Fed. Cir. 1993) [The fact that discovery is sought from a non-party
9    is one factor that the Court may weigh in determining whether the discovery
10   requested is necessary, relevant, or burdensome]. Courts applying Rules 26 and 45
11   have interpreted these rules to afford non-parties special heightened protection
12   against burdensome discovery. (*See, e.g., Exxon Shipping Co. v. U.S. Dept of
13   Interior*, 34 F.3d 774, 779 (9th Cir. 1994)).

14   Accordingly, requests for documents that pertain to a party and that can be
15   more easily and inexpensively obtained from that party also impose an undue
16   burden. (*Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 638 (C.D. Cal. 2005)).
17   Further, if the documents sought are neither relevant nor calculated to lead to the
18   discovery of admissible evidence, "then any burden whatsoever imposed upon the
19   non-party would be by definition undue." (*Compaq Computer Corp. v. Packard
20   Bell Electronics, Inc.*, 163 F.R.D. 329, 335-336 (N.D.Cal. 1995)).

21   Each of the moving parties bears the burden of establishing the basis for the
22   relief it seeks. As the party moving to compel compliance with the Subpoenas,
23   Mattel bears the burden of "establishing that the information sought is relevant and
24   necessary to its lawsuit." (*Cytodyne Technologies, Inc. v. Biogenic Technologies,
25   Inc.*, 216 F.R.D. 533, 534 (M.D.Fla. 2003)).

26   Finally, in deciding whether to enforce a subpoena, the Discovery Master
27   must balance "the relevance of the discovery sought, the requesting party's need,
28   and the potential hardship to the party subject to the subpoena." (*Heat & Control,*

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 14 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____ 6
PAGE _____ 115

1   *Inc. v. Hester Industries, Inc.*, 785 F.2d 1017, 1024 (Fed.Cir.1986) citing

2   *Deitchman v. E.R. Squibb & Sons, Inc.*, 740 F.2d 556, 560, 564 (7th Cir.1984)).

3   **C.    Mattel's Contention That MGA Has Placed Its Finances At Issue**

4   As its first ground for moving to compel production of the documents sought

5   by the Subpoenas, Mattel argues that MGA has misrepresented its finances, thereby

6   making it necessary and appropriate for Mattel "to obtain an accurate understanding

7   of MGA's and Larian's finances." (Motion to Compel, p. 14). According to

8   Mattel, MGA's supposed misrepresentations have placed its financial condition at

9   issue, and have opened the door to discovery of any information bearing on MGA's

10   finances. (*Id.* ["Discovery on MGA's financials is amply warranted by MGA's

11   own statements *alone.*"] (emphasis added)).

12   However, after Mattel filed its Motion, the Court made it clear that the

13   validity of the Subpoenas must be evaluated with reference to whether they relate to

14   the matters to be adjudicated in Phase 2. As the Discovery Master understands the

15   Court's ruling, the Subpoenas cannot be justified merely because they seek

16   information regarding some contention made during Phase 1, without regard to

17   Phase 2. In other words, putting a fact at issue in Phase 1, cannot, standing alone,

18   suffice to render that fact the proper subject of discovery in Phase 2.

19   Thus, to the extent Mattel's first argument asserts that MGA's statements,

20   standing alone, warrant discovery from the Subpoena recipients, that argument is

21   rejected. Rather, the Discovery Master will evaluate whether discovery of MGA's

22   finances is warranted in light of the issues to be adjudicated in Phase 2.

23   Further, even if Mattel were not required to demonstrate some nexus between

24   the Subpoenas and the issues to be adjudicated in Phase 2, the argument that the

25   Subpoenas are justified because MGA placed its financial condition at issue would

26   still fail for the simple reason that Mattel is not seeking discovery from MGA but

27   rather *non-parties*. Mattel does not cite any statements or conduct by the

28   //

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 15 -                                    ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____ 6

PAGE _____ 116

1   Financing Entities putting their financial affairs at issue in this litigation.[13]

2   Rather, Mattel argues that the statements and conduct of *MGA* should be attributed

3   to the Financing Entities and construed as their consent to discovery of their

4   internal financial affairs.  Such an assumption is unwarranted.

5       **D.   Mattel's Contention That The Subject Discovery Is Relevant To**

6             **Phase 2**

7           **1.   Subpoenas To The Financing Entities**

8       Mattel next argues that the Subpoenas to the Financing Entities seek

9   information relevant to a variety of Phase 2 issues.[14]

10          **a.   Mattel's RICO Counterclaim**

11      Mattel first asserts in its Motion to Compel that the discovery it seeks is

12  relevant to its RICO counterclaim because "Mattel alleges that the counter-

13  defendants have operated a widespread criminal enterprise that has engaged in

14  numerous acts of mail and wire fraud and other predicate acts in violation of the

15  RICO statute" and that "MGA's mid-trial transactions with Omni 808 and the other

16  non-operating entities" is "a continuation of that pattern of racketeering activity."

17  (Motion, p. 18).

18

19  [13] In its Reply to the Financing Entities' Opposition to its Motion to Compel, Mattel argues that the Financing

20  Entities (referred to by Mattel as the "Omni Parties") have injected themselves into the litigation because one of
    them, Omni 808 Investors, LLC, applied to intervene. (Reply, p. 8).  However, a decision on that application has

21  been deferred by the Court, (Tr., 80:15 – 17), and therefore Omni 808 Investors, LLC and the other Financing
    Entities remain outsiders to the litigation entitled to the heightened protection from discovery normally afforded non-
    parties.

22  [14] Mattel argues in one of its reply briefs filed on February 25, 2009 that the Discovery Master should strike MGA's

23  Opposition to the Motion to Compel because: (1) MGA indicated that it would not be filing an Opposition and
    (2) the Opposition was filed a week late. (*See* Mattel's Reply in Response to MGA's Opposition to the Motion to

24  Compel, p. 4).  The Discovery Master declines that request.  The assertion that MGA would not file an Opposition is
    based on an alleged oral conversation which counsel for Mattel apparently did not confirm in writing. (*See*

25  Supplemental Declaration of Jon D. Corey in Support of Mattel's Reply in Response to MGA's Opposition to the
    Motion to Compel, ¶ 4).  Even assuming such a statement had been made, MGA was entitled to change its mind.  As

26  for Mattel's argument that the Opposition was untimely, the Discovery Master notes that he was only recently
    appointed.  This fact combined with the backlog of discovery motions may have resulted in some confusion as to

27  when various briefs were due to be filed.  The Discovery Master prefers to address issues on the merits and declines
    to strike the Opposition as untimely.  Notwithstanding the foregoing, the Discovery Master urges the parties to

28  strictly comply with the briefing schedule set forth under the Discover Master Order for all future discovery motions
    unless an alternative procedure is agreed upon by the parties and approved by the Discovery Master or the Court.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ____6____

PAGE ____117____

1    But Mattel's allegations in support of its RICO counterclaim turn on

2    misappropriation of trade secrets and confidential information, and make no

3    mention of improper transfers of funds or any other predicate act similar to MGA's

4    purported business transactions with any of the Financing Entities.[15]   Accordingly,

5    these financial transactions are not a "continuation" of the "pattern" of conduct

6    Mattel alleges in very precise detail in its RICO counterclaim. (*Asdourian v.*

7    *Konstantin*, 77 F. Supp. 2d 349, 358 (E.D.N.Y. 1999) [cited by Mattel and stating

8    RICO claimant must show "[a]n interrelationship between acts, suggesting the

9    existence of a pattern, [which] may be established...[by] proof of their temporal

10   proximity, or common goals, or similarity of methods, or repetitions' (citation

11   omitted)]; *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 238-39 (1989) [RICO claims

12   must be supported by a "pattern" of activity and "the mere fact that there are a

13   number of predicates is no guarantee that they fall into any arrangement or order.

14   A pattern is not formed by sporadic activity ...  Instead, the term 'pattern' itself

15   requires the showing of a relationship between the predicates" (quotations and

16   internal citations omitted)]).

17       At this stage, Mattel has failed to demonstrate a relationship between the

18   predicate acts alleged by Mattel in its Counterclaims – which were bound together

19   by a purported scheme to misappropriate Mattel's trade secrets – and the

20   //

21   //

22   //

23   [15] *See* Mattel's Second Amended Answer and Counterclaims ("Counterclaims"), p. 55-62, ¶ 90 [alleging the MGA

24   Parties and other counter-defendants "for the purpose of executing and attempting to execute the scheme to improperly defraud Mattel and steal its trade secret or otherwise confidential and proprietary information" committed

25   various predicate acts], ¶ 91 [alleging the MGA Parties and other counter-defendants "shared the common purpose of enabling MGA to obtain confidential, proprietary and otherwise valuable Mattel property through improper means in

26   order to assist MGA in illegally competing with Mattel"], ¶ 92 [alleging the enterprises are continuing enterprises because they are "designed to and did unlawfully acquire the confidential business information and property of

27   Mattel and incorporated this information and property into MGA's ongoing business, marketing strategies and business methods, practices, and processes"], ¶ 93(a) [alleging mail fraud committed in furtherance of scheme to

28   "defraud Mattel of its confidential trade secret information and property"], ¶ 93(b) [alleging wire fraud "defraud Mattel of its confidential and trade secret information and property"], and ¶ 102 [the MGA Parties and other counter-
     defendants "schemed to defraud Mattel and steal its property and trade secret information"].

EXHIBIT _____ 6

PAGE _____ 118

1   transactions Mattel seeks to investigate here.[16]

2       Also, the RICO counterclaim (like the other counterclaims to be adjudicated

3   in Phase 2) was asserted in July, 2007 – more than a year before either Omni 808

4   Investors, LLC or Vision Capital, LLC came into existence – and therefore

5   apparently did not encompass the activities of those entities or the transactions

6   which are the subject of the Financing Discovery. While that fact might be

7   overcome by a showing that the Financing Entities were created or used to further a

8   scheme to carry on misconduct that is the subject of Phase 2, Mattel did not

9   demonstrate that such is the case in its briefs and supporting evidence.

10      In sum, absent some argument or evidence demonstrating a nexus between

11  the predicate activities alleged in the RICO counterclaim, on the one hand, and the

12  transactions and other matters which are the subject of the Financing Discovery, on

13  the other hand, there has been no showing by Mattel that the Subpoenas to the

14  Financing Entities are reasonably calculated to lead to the discovery of admissible

15  evidence regarding the RICO counterclaim.

16              **b.    Mattel's Disgorgement Remedy**

17      Next, Mattel asserts that the Subpoenas to the Financing Entities seek

18  information relevant to its remedy of disgorgement, which is an available remedy

19  for Mattel's Phase 2 counterclaim for misappropriation of trade secrets. Mattel

20  argues:

21

22  [16] This conclusion is consistent with the case cited by Mattel – *Eastman Kodak Co. v. Camarata*, 238 F.R.D. 372
    (W.D.N.Y. 2006). There, the plaintiffs "asserted broad civil RICO claims against the Nicolo defendants predicated,

23  among other violations, upon alleged money laundering violations. Specifically, the Complaint alleges that the
    Nicolo defendants and the other named defendants constituted an enterprise as defined in the RICO statute that was

24  engaged in a pattern of racketeering activity, including mail and wire fraud and, more importantly for purposes of
    this motion, money laundering." (*Id.*, at 375). "The alleged money laundering consisted of repeated deposits into

25  various financial institutions in order both to promote and carry on the unlawful activity – that is, by paying and
    depositing kickbacks to certain members of the enterprise – and to conceal and attempt to conceal the proceeds, their

26  nature, source and location – that is, by transferring funds between defendants and between various accounts
    maintained by those defendants." (*Id.* [emphasis added]). Thus, inquiry into the defendants' finances was

27  appropriate as it was likely to reveal activity related to the alleged predicate acts. Here, on the other hand, Mattel has
    not alleged any sort of financial scheme which would support inquiry into the MGA Parties' financial transactions

28  with third parties.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

                                                    - 18 -                    ORDER NO. 3
                                                                    [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____ 6
PAGE _____ 119

> For purposes of establishing disgorgement, Mattel must take into account money transferred from MGA and Isaac Larian, regardless of the manner in which it was transferred. Mattel is entitled to discovery that shows all assets siphoned from MGA or Isaac Larian . . . . By these subpoenas, Mattel seeks evidence to prove the amount the defendants must disgorge. Money that properly belonged to Mattel was transferred from MGA or Isaac Larian to an entity controlled by them.

(Motion, pp. 20:1 – 4, 21:12 – 14).

While the foregoing statements may be true as a general proposition, none of the Financing Entities is alleged to have "received money that properly belonged to Mattel." To the contrary, Mattel asserts that the Financing Entities are creditors of MGA. Therefore, Mattel has not demonstrated how any of the categories of documents sought from the Financing Entities would aid it in ascertaining the amount defendants must disgorge.

### c.  Phase 2 Damages

Mattel's third argument in favor of enforcement of the Subpoenas is that they "seek documents relevant to MGA's financial condition" and other "factors relevant to an award of punitive damages." (Motion to Compel, p. 21:19 – 22). Depending on the particular scope of the document request, such discovery from Omni 808 Investors, LLC may be appropriate in connection with Phase 2 because any information evidencing MGA's indebtedness to Omni 808 Investors, LLC from the purchase of the alleged Wachovia debt or direct loans to MGA is relevant to MGA's net worth (and hence punitive damages).[17] As the Court noted in its February 11, 2009 ruling:

I can see tremendous overlap between, for example, discovery on

---

[17] The Discovery Master's analysis is fundamentally different for OmniNet Capital, LLC and Vision Capital, LLC because neither entity is alleged by Mattel to be a creditor of MGA Entertainment, Inc. (Motion to Compel, pp. 9 and 10). To the contrary, Mattel concedes that "OmniNet [Capital, LLC] is not the secured party, and thus presumably not the actual debt purchase/lender. Rather, the company holding the security interest is Omni 808 [Investors, LLC] . . . [which] appears to be owned funded by a company called Vision Capital, LLC." (Id.) Because it admits that OmniNet Capital, LLC and Vision Capital, LLC are not creditors of MGA, Mattel has failed to show that the information sought from those entities has any bearing on MGA's financial condition.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ____6____

PAGE ____120____

1    financial condition of the company as it relates to damages in the
2    Phase 2 and also issues that the receiver is looking at. And
     without making a ruling on any of this, I would not suggest for a
3    moment that these are mutually exclusive categories.

(Tr., 101:3 - 8)
4
5        Mattel argues that the necessary connection between the Financing

6    Discovery and Phase 2 damages exists because the Financing Entities have acquired

7    a security interest in MGA's assets, which, in turn, affects MGA's financial

8    condition. Specifically, Mattel argues that Omni 808 Investors, LLC is:

9        directly involved in providing funding to MGA in exchange for a
         security interest. Such funding, and security interests, are in and
10       of themselves directly relevant to the financial condition of the
         MGA Parties, including the amount of the security interests, the
11       terms and conditions of the funding, and the rate of funding. . . .

12   (Motion to Compel, p. 22: 13 – 17).

13       The Discovery Master agrees that such limited information, as it relates to

14   the purchase by Omni 808 Investors, LLC of the debt obligation previously held by

15   Wachovia Bank, is reasonably calculated to lead to the discovery of admissible

16   evidence concerning Phase 2 issues, including the calculation of MGA's net worth

17   for purposes of calculating punitive damages.[18] Accordingly, Mattel's motion to

18   compel responses from Omni 808 Investors, LLC is granted with respect to

19   documents relating to (1) the existence of any debt owed by MGA Entertainment,

20   Inc. to Omni 808 Investors, LLC and (2) any communications between Omni 808

21   Investors, LLC and the MGA parties regarding any such indebtedness.

22       The problem, however, is the vast majority of the document requests set forth

23   in the Subpoena propounded on Omni 808 Investors, LLC are not narrowly tailored

24   to obtain information demonstrating the amount and nature of MGA's indebtedness

25   (and hence net worth) or communications regarding any such debt,[19] but instead

26   ─────────────────────
     [18] During oral argument, counsel for MGA represented (and counsel for Mattel seemed to agree) that the Court
27   deferred discovery regarding the Wachovia debt until the middle of the Phase 1 trial. (Reporter's Transcript of
     Proceedings, March 4, 2009, pp. 72, 85 and 86). The extent to which that damages information was obtained directly
28   from Wachovia, as opposed to MGA, is not clear from the record provided to the Discovery Master.

     [19] Nor did Mattel move to compel MGA to produce this information in the first instance.

EXHIBIT _____6_____

PAGE _____121_____

1    would require the Financing Entities to produce virtually every document in their

2    possession regarding their formation, operations, and history of transactions.

3    Among other things, the Subpoenas to the Financing Entities seek:

- All records that "substantiate transfers of assets" by the Financing Entities "to other entities, individuals, and/or parties, within the U.S. and outside of the U.S." (Exhibits 27-29 to Supplemental Declaration of Jon D. Corey In Support Of Mattel, Inc.'s Reply In Support Of Motion To Compel Production of Documents Responsive to Third-Party Subpoenas, Attachment A, ¶ 16);

- All documents "detailing or setting forth the relationship" between each of the Financing Entities and other non-parties (*Id.* at ¶¶ 6-10);

- All documents referring or relating to the "all contributions, loans and any sources of funding" for the Financing Entities (*Id.* at ¶ 13);

- All documents referring or relating to the "source of funding" of other non-parties (*Id.* at ¶ 16);

- All documents showing detail of "all loan facilities" referring or relating to the Financing Entities and other non-parties (*Id.* at ¶ 14);

- All documents referring or relating to "transactions involving any compensation, loans, advances, payments, fees or any other form of consideration" paid to other non-parties (*Id.* at ¶ 15);

- All "communications" referring or relating to the Financing Entities and other non-parties (*Id.* at ¶ 17).

23    Accordingly, the Discovery Master concludes that most of the categories of

24    documents in the Subpoenas are overbroad and not reasonably calculated to lead to

25    the discovery of admissible evidence with respect to Phase 2 issues, as detailed in

26    Section IV below (entitled "Disposition").

27    //

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 21 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____6_____

PAGE _____122_____

### d.    Credibility Of MGA Witnesses

Mattel's fourth argument consists of a single, conclusory paragraph asserting that it is entitled to its discovery in order to determine the credibility of MGA's witnesses. To support this argument, Mattel first states that information is discoverable "if it relates to 'the credibility of any witness.'" (Motion to Compel, p. 23 (citing *Cable & Computer Tech., Inc. v. Lockheed Sanders, Inc.,* 175 F.R.D. 646, 650 (C.D. Cal. 1997)).[20] Next, Mattel asserts that "MGA and Larian made statements under oath about their financial condition as well as about the role of Omni 808 and the other non-operating entities in providing MGA with additional funding." (*Id.*) But that is the full extent of Mattel's argument. Mattel does not attempt to show that the specific discovery that it has propounded is reasonably calculated to lead to the discovery of the evidence that it contends would be admissible.

Discoverable information generally includes evidence relevant to the credibility of a party or a key witness. (See *Paulsen v. Case Corp.,* 168 F.R.D. 285, 287-288 (C.D. Cal. 1996); see also *Ragge v. MCA/Universal Studios,* 165 F.R.D. 601, 603-604 (C.D. Cal. 1995); *U.S. v. City of Torrance,* 164 F.R.D. 493, 495 (C.D. Cal. 1995)). If Mattel's discovery were reasonably calculated to lead to the discovery of such information, then it might be permissible. (*Id.* ["Rule 26 is liberally interpreted to permit wide ranging discovery of all information reasonably calculated to lead to discovery of admissible evidence."]) But Mattel has not taken any steps to connect its discovery to such evidence. As discussed above, Mattel bears the burden of demonstrating that its discovery is reasonably calculated to lead to the discovery of admissible evidence. Here, Mattel has only stated that credibility evidence can be admissible and that credibility is at issue in this case – without referring at all to specific categories of documents in the Subpoenas or

---

[20] The Discovery Master notes that the case cited by Mattel does not actually discuss or apply this proposition.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 22 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____6_____

PAGE _____123_____

1   linking those categories of documents to prior or anticipated testimony of MGA's
2   witnesses. Simply stating that credibility evidence is discoverable does nothing
3   toward meeting Mattel's burden to demonstrate that the particular discovery at issue
4   here is reasonably calculated to lead to the discovery of such evidence.

5               **e.     MGA's Unclean Hands**

6            Mattel next argues in its Motion to Compel that MGA has asserted an
7   unclean hands defense in response to Mattel's Phase 2 claims, and consequently
8   Mattel is entitled to discover whether the MGA Parties are currently "engaging in
9   sham and fraudulent financial transactions such as concealing profits" to preclude
10  MGA "from invoking the unclean hands defense themselves." (Motion, pp. 23 -
11  24.) But this argument does not apply to the Financing Entities because, as
12  discussed above, Mattel does not claim that the Financing Entities have "received
13  money that properly belonged to Mattel" or otherwise used those entities to conceal
14  profits. To the contrary, Mattel asserts that the Financing Entities are creditors of
15  MGA.

16           Regardless, Mattel's theory is that, even if Mattel has unclean hands, MGA
17  may not assert that defense unless MGA itself is blameless. (*Id.*, at 24 [a "party
18  asserting an equitable defense, however, must itself have 'clean hands.'"]).
19  Mattel's statement of the law is correct as far as it goes. But, as the Ninth Circuit
20  has stated, "'unclean hands does not constitute 'misconduct in the abstract,
21  unrelated to the claim to which it is asserted as a defense.'" (*Jarrow Formulas, Inc.
22  v. Nutrition Now, Inc.*, 304 F.3d 829, 841 (9th Cir. 2002)). "It is fundamental to
23  [the] operation of the doctrine that the alleged misconduct . . . relate directly to the
24  transaction concerning which the complaint is made." (*Dollar Sys., Inc. v. Avcar
25  Leasing Sys., Inc.* 13 F.2d 165, 173 (9th Cir. 1989)). Accordingly, courts will not
26  allow discovery based on an unclean hands defense where the "allegations of
27  misconduct do not relate to the transactions... forming the basis for the
28  []complaint." "(*Gen-Probe, Inc. v. Amoco Corp.*, 926 F. Supp. 948, 952 (S.D.Cal.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 23 -                                    ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____ 6 _____

PAGE _____ 124 _____

1    1996)).

2         Here, Mattel does not link any of the categories of documents referenced in

3    the Subpoenas (which involve the creation and operation of the Financing Entities

4    beginning with their formation in the summer of 2008) to any of the conduct at

5    issue in Phase 2 (which involves such matters as the alleged theft of trade secrets in

6    Mexico in 2004 and other conduct unrelated to the relationship between the

7    Financing Entities and MGA). Accordingly, the Financing Discovery is not

8    reasonably calculated to lead to the discovery of admissible evidence regarding

9    MGA's alleged unclean hands in connection with the matters to be adjudicated in

10   Phase 2.

11                   f.      **Mattel's Unfair Competition Counterclaim**

12        As Mattel acknowledges, California's Unfair Competition Law, Business &

13   Professions Code §§ 17200 et seq. (the "Unfair Competition Law") encompasses

14   "'anti–competitive business practices as well as injuries to consumers, and has as a

15   major purpose the preservation of fair business competition.'"  (Opp. at 24:25 –

16   25:2, quoting *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone*

17   *Co.* (1999) 20 Cal.4th 163, 180)). However, Mattel's papers do not sufficiently

18   demonstrate that the documents sought from the Financing Entities involve "anti-

19   competitive business practices," "injuries to consumers," or anything affecting

20   consumers or the public at all. Instead, Mattel simply asserts, without any

21   supporting analysis, that MGA has violated the Unfair Competition Law by

22   "manipulating the sources of [its own] funding" (presumably the Financing

23   Entities). That allegation, even if true, does not appear to involve the "unlawful,

24   unfair or fraudulent" marketing or sale of anything and therefore does not fall

25   within the ambit of the Unfair Competition Law.

26   //

27   //

28   //

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____6_____

PAGE _____125_____

g.    **Summary Of The Discovery Master's Findings With
Respect To The Subpoenas Directed To The Financing
Entities**

For the foregoing reasons, the Discovery Master finds that, based on the
record before him, Mattel has failed to sufficiently articulate the necessary
connection between most of the Financing Discovery and any Phase 2 issue.
Moreover, while there is a connection between the Financing Discovery and some
of the Phase 2 issues referenced (i.e., MGA's financial condition and its bearing on
Mattel's claim for punitive damages), Mattel has failed to demonstrate that the
Subpoenas meet the standard set forth in Rule 26(b)(2) and that all of the requested
discovery is permissible in light of the case law interpreting Rules 26 and 45.

Accordingly, Mattel's motion to compel the Financing Entities to comply
with the Subpoenas is **GRANTED** in part and **DENIED** in part.

2.    **Subpoenas To The Transferee Entities**

In their briefs regarding the enforceability of the Subpoenas, Mattel and
MGA do not, as a general rule, make a distinction between the Financing Entities
and the Transferee Entities, but rather direct the same arguments to both groups
collectively. However, there are important distinctions between the two groups,
including, without limitation, that: (1) the Transferee Entities appear to be affiliated
with – if not wholly owned by – Larian; (2) the Transferee Discovery involves the
sale of MGA assets (i.e., Bratz products) in which Mattel has an ownership interest
pursuant to the Court's December 3, 2008 ruling; and (3) the Subpoenas seek some
documents relevant to Phase 2 issues which presumably cannot be obtained from
MGA, namely the Transferee Entities' contracts with, and records of sales to, third
parties purchasing the Bratz products. Accordingly, in ruling on the Subpoenas
directed to the Transferee Entities, the Discovery Master's analysis of certain of the
parties' above-referenced arguments differs, as follows.

//

EXHIBIT ___6___

PAGE ___126___

### a. Non-Party Considerations

To begin with, the distinction between a party and non-party here is less compelling given the MGA parties' apparent admission that the Transferee Entities are single purpose entities created and controlled by Larian (who is, of course, himself a party) to dispose of inventory that is the subject of this litigation. Further, the MGA parties presumably do not have custody of the sales contracts whereby IGWT Group LLC sold Bratz products to third parties. The Discovery Master also notes that counsel for the Transferee Entities has submitted a declaration stating that there are "hundreds of sales contracts at issue, and as such, thousands of documents responsive to Mattel's requests." (Declaration of Jeffrey B. Valle dated February 17, 2009 ["Valle Decl."], ¶ 7). The unavailability of these relevant documents from any other source weighs heavily in favor of enforcing the Subpoena to IGWT Group LLC.

### b. Relevance To Phase 2 Issues

#### 1. Phase 2 Damages

As mentioned above, Mattel argues that the Subpoenas "seek documents relevant to MGA and Larian's financial condition, net worth, and ability to pay" on the ground that such information is relevant to Mattel's Phase 2 damages claims, including Mattel's claim for punitive damages.

For the reasons previously discussed, the Discovery Master finds that, with respect to the Financing Entities, the discovery requests were, for the most part overbroad, and/or not sufficiently linked to Phase 2 issues. However, the Discovery Master's analysis is necessarily different with respect to entities which were created and apparently wholly owned and/or controlled by Larian (a defendant in Phase 2), and which are admittedly selling inventory which generate revenues in which Mattel has an interest. Specifically, Mattel contends that Larian has caused MGA to sell the inventory at a deep (80%) discount to the Transferee Entities. This practice, if true, limits MGA's profits (which go to MGA's balance sheet, and ultimately

EXHIBIT _____ 6

PAGE _____ 127

1    affects MGA's net worth) while at the same time allowing Larian to capture

2    additional profits which otherwise would have been realized by MGA and reflected

3    on MGA's balance sheet). Accordingly, the Discovery Master finds that most of

4    the documents Mattel seeks to subpoena from the Transferee Entities properly

5    relate to Phase 2 issues, as specified in Section IV below.[21]

6                    **2.    Mattel's Unfair Competition Counterclaim**

7          Given MGA's admissions regarding Larian's ownership/control of the

8    Transferee Entities, coupled with their sale of inventory purchased from MGA, the

9    Discovery Master finds that many of the documents requested from the Transferee

10   Entities are also arguably related to a "fraudulent," "unlawful," or "unfair" business

11   practice within the meaning of the Unfair Competition Law and the scope of

12   Mattel's Counterclaims.  Among other things, the Court's December 3, 2008 order

13   imposes a constructive trust on the proceeds of MGA's sale of the subject

14   inventory.  If, as Mattel argues, MGA's sale of that inventory to the Transferee

15   Entities constitutes a scheme on the part of Larian to enrich himself by depriving

16   Mattel of the true profits to be paid to Mattel pursuant to the Court's order, then

17   such conduct would constitute an unlawful attempt to circumvent the Court's order

18   and arguably render the transaction between MGA and the Transferee Entities an

19   anti-competitive business practice that is unlawful, unfair or fraudulent to other toy

20   manufacturers, including Mattel.  Therefore, such alleged misconduct, if proven,

21   could violate the Unfair Competition Law.

22         Moreover, although Mattel asserted its counterclaim for violation of the

23   Unfair Competition Law prior to the alleged misconduct (and long before the

24   Transferee Entities came into existence), Mattel phrased its allegations broadly

25

26   [21] The Discovery Master notes that IGWT 826 Investments is registered at the home address of Larian's sister and
     brother-in-law, indicating that some of Larian's relatives may be involved in the ownership or operation of the
27   Transferee Entities.  Accordingly, the Discovery Master has specified in some instances that the production of
     documents shall include those referencing not only Larian, but also his spouse, his children, his siblings, or their
28   spouses, or any entity or person affiliated with them.  However, the Discovery Master has stopped short of ordering
     the production of documents relating to any other entities, individuals "within the U.S. and outside the U.S.," as
     requested in Category 6 of each of the Subpoenas directed to the Transferee Entities.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

                                                   - 27 -              ORDER NO. 3
                                                          [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____6_____

PAGE _____128_____

1    enough to potentially encompass subsequent acts of unfair competition which
2    perpetuate or extend the misconduct alleged in the Counterclaims. Unlike Mattel's
3    RICO counterclaim, Mattel's Twelfth Counterclaim for Unfair Competition does
4    not purport to rest on a list of enumerated, factually detailed and carefully defined
5    acts, but rather is phrased broadly to cover "unlawful, unfair and/or fraudulent acts
6    of unfair competition" which include, "without limitation" certain illustrative
7    examples. (Counterclaims, p. 74, ¶ 165).

8        Of course, the Discovery Master cannot predict whether the Court will
9    ultimately deem Mattel's unfair competition counterclaim to be sufficiently elastic
10   to encompass MGA's alleged misuse of the Transferee Entities or whether Mattel
11   will seek (and the Court permit) amendment of the counterclaim to expressly
12   reference such alleged misconduct. Nevertheless, in light of the fact that the
13   discovery need only appear reasonably calculated to lead to the discovery of
14   admissible evidence, the Discovery Master finds that certain aspects of the
15   Subpoenas are sufficiently related to Mattel's Phase 2 unfair competition claim.

16           **c.**     **Summary Of The Discovery Master's Findings With**
17                  **Respect To The Subpoenas Directed To The**
18                  **Transferee Entities**

19       As set forth above, the Discovery Master finds that Mattel has sufficiently
20   articulated a connection between some of the Transferee Discovery and its Phase 2
21   claims. Accordingly, Mattel's motion to compel the Transferee Entities to comply
22   with the Subpoenas is **GRANTED** in part and **DENIED** in part.

23   **IV.**   **Disposition**

24       1.    The Motion to Quash filed by MGA is **DENIED.**

25       2.    Mattel's Motion to Compel the Financing Entities to produce
26   documents responsive to the Subpoenas is **DENIED** with respect to OmniNet
27   Capital, LLC and Vision Capital, LLC.

28       3.    Mattel's Motion to Compel Omni 808 Investors, LLC to produce

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT     6

PAGE     129

1    documents responsive to the Subpoena propounded on it is **GRANTED** in part and

2    **DENIED** in part, as follows:

3          a.     Requests 1 through 3, 13, 15, and 17: The Motion is granted

4    with respect to documents relating to (1) the existence of any debt owed by MGA

5    Entertainment, Inc. to Omni 808 Investors, LLC, including any debt purchased

6    from Wachovia Bank, and (2) any communications between Omni 808 Investors,

7    LLC and the MGA parties regarding any such indebtedness. The motion is denied

8    regarding any other documents sought by these requests.

9          b.     Requests 4 through 12, 14 and 18: The Motion is denied.

10      4.     Mattel's Motion to Compel the Transferee Entities to produce

11    documents responsive to the Subpoenas is **DENIED** as to Request 6 propounded to

12    IGWT Group LLC and Request 6 propounded to IGWT 826 Investments, LLC.

13      5.     Mattel's Motion to Compel the Transferee Entities to produce

14    documents responsive to the Subpoenas is **GRANTED,** as follows:

15                         **Subpoena To IGWT Group LLC**

16          a.     Request 1:. The Motion is granted with respect to documents

17    relating to the purchase by, or transfer to, IGWT Group LLC of any items of value,

18    including Bratz products, from MGA, Larian, his spouse, his children, his siblings,

19    or their spouses, or any entity or person affiliated with them.

20          b.     Request 2: The Motion is granted

21          c.     Request 3: The Motion is granted with respect to documents

22    relating to any ownership interest by Larian, his spouse, his children, his siblings,

23    or their spouses, or any entity or person affiliated with them.

24          d.     Request 4: The Motion is granted with respect to documents

25    relating to any sources of funding by Larian, his spouse, his children, his siblings,

26    or their spouses, or any entity or person affiliated with them.

27          e.     Request 5: The Motion is granted with respect to documents

28    relating to any compensation, loans, advances, payments, fees or any other form of

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____ 6_____

PAGE _____ 130_____

1   consideration paid by  IGWT Group LLC to Larian, his spouse, his children, his

2   siblings, or their spouses, or any entity or person affiliated with them.

3               · f.      Request 7:  The Motion is granted.

4                   **Subpoena To IGWT 826 Investments LLC**

5               a.      Request 1: The Motion is granted with respect to documents

6   relating to the purchase by, or transfer to, IGWT 826 Investments LLC of any items

7   of value, including Bratz products, from MGA, Larian, his spouse, his children, his

8   siblings, or their spouses, or any entity or person affiliated with them.

9               b.      Request 2:  The Motion is granted

10              c.      Request 3:  The Motion is granted with respect to documents

11  relating to any ownership interest by Larian, his spouse, his children, his siblings,

12  or their spouses, or any entity or person affiliated with them.

13              d.      Request 4:  The Motion is granted with respect to documents

14  relating to any sources of funding by Larian, his spouse, his children, his siblings,

15  or their spouses, or any entity or person affiliated with them.

16              e.      Request 5:  The Motion is granted with respect to documents

17  relating to any compensation, loans, advances, payments, fees or any other form of

18  consideration paid by  IGWT 826 Investments LLC to Larian, his spouse, his

19  children, his siblings, or their spouses, or any entity or person affiliated with them. ·

20              f.    . Request 7:  The Motion is granted.

21      5.      All non-privileged documents referenced in Paragraphs 3 and 5, above,

22  shall be produced within 30 days of this Order, subject to any applicable

23  confidentiality designations available under the Protective Order.

24      6.      Nothing in this Order should be deemed to prevent Mattel from

25  seeking discovery from the MGA parties of documents encompassed by the

26  Subpoenas upon the showing of a sufficient nexus between the particular discovery

27  requests and legitimate Phase 2 issues, and subject to any applicable objections.

28  //

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 30 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____ 6

PAGE _____ 131



Dated:  March 10, 2009

By:      /s/ Robert C. O'Brien
         ROBERT C. O'BRIEN
         Discovery Master

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 31 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____ 6

PAGE _____ 132

# EXHIBIT 7

1　　Robert C. O'Brien
　　　ARENT FOX LLP
2　　555 West Fifth Street, 48th Floor
　　　Los Angeles, CA  90013-1065
3　　Telephone:  213.629.7400
　　　Facsimile:　213.629.7401
4
　　　Discovery Master
5

6

7

8　　　　　　　　　UNITED STATES DISTRICT COURT

9　　　　　　　　　CENTRAL DISTRICT OF CALIFORNIA

10　　　　　　　　　　　EASTERN DIVISION

11

| | |
|---|---|
| 12　CARTER BRYANT, an individual,, | Case No.  CV 04-09049 SGL (RNBx) |
| 13　　　　　　Plaintiff, | |
| 14　　　　　v. | **Consolidated with**<br>**Case No. CV 04-09059**<br>**Case No. CV 05-2727** |
| 15　MATTEL, INC., a Delaware<br>　　corporation, | **PHASE II DISCOVERY MATTER** |
| 16　　　　　　Defendant. | **ORDER NO. 1, REGARDING:** |
| 17 | **(1) PROCEDURE GOVERNING**<br>　　**DISCOVERY MOTIONS;** |
| 18 | **(2) PENDING DISCOVERY**<br>　　**MATTERS;** |
| 19 | 　　**and** |
| 20 | **(3) FURTHER/FUTURE**<br>　　**DISCOVERY MOTIONS** |
| 21 | |
| 22　CONSOLIDATED WITH<br>　MATTEL, INC. v. BRYANT and<br>23　MGZ ENTERTAINMENT, INC. v.<br>　MATTEL, INC. | |
| 24 | |

25

26

27

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

LA/136065.1

　　　　　　　　　　　　　1

EXHIBIT ___7___

2-12   PAGE ___133___

## I.   PROCEDURE GOVERNING DISCOVERY MOTIONS

### A.   Meet and Confer Requirements

The parties are reminded of their obligation to comply with the briefing schedule that they agreed to as set forth in the Stipulation For Appointment Of A Discovery Master and Order dated December 6, 2006 (the "Order"). Specifically, before filing any discovery motion, "[t]he moving party shall first identify each dispute, state the relief sought and identify the authority supporting the requested relief in a meet and confer letter that shall be served on all parties by facsimile or electronic mail. The parties shall have five court days from the date of service of that letter to conduct an in-person conference to attempt to resolve the dispute. If the dispute has not been resolved within five court days after such service, the moving party may seek relief from the Discovery Master by formal motion or letter brief, at the moving party's option." *Id.*

### B.   Briefing Schedule

As provided by the Order, once any such motion or letter brief is filed, "[t]he opposing party shall have five court days from the date of service of the motion or letter brief to submit a formal opposition or response. Any reply brief shall be served within three court days from the date of service of a formal opposition or response." *Id.*

### C.   Filing Requirements

All papers submitted, from this date forward, in connection with a discovery motion, opposition or response, or reply brief shall be served on the Discovery Master at Arent Fox LLP, 555 West Fifth Street, 48th Floor Los Angles, California 90013 no later than one business day after they are filed with the Court. The courtesy copies to be provided to the Discovery Master shall include the Court's electronic file-stamp located at the top of each document.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

LA/136065.1

- 2 -

EXHIBIT 7

PAGE 134

**D.     Hearings on Discovery Motions**

1.     Unless ordered otherwise, the hearing on any discovery motion shall be set by the Discovery Master on his first available date following the filing of the reply brief, usually within seven (7) court days.  Unless a telephonic hearing is ordered by the Discovery Master, all such hearings shall take place at the offices of Arent Fox LLP located at 555 West Fifth Street, 48th Floor Los Angles, California 90013.  In the event the Discovery Master determines that no hearing is necessary for a specified motion and the matter can be disposed of on the papers, the Discovery Master shall so notify the parties.

2.     At least twenty-four hours prior to any hearing, counsel for the parties shall each provide Ruben Hernandez, a paralegal at Arent Fox LLP, with a list of all individuals who will be attending the hearing so their names can be provided to the Gas Company Tower's building security.  Mr. Hernandez's email address is: hernandez.ruben@arentfox.com.  The parties should also direct any questions they may have regarding the use of technology or other logistics at a hearing to Mr. Hernandez.

**II.     PENDING DISCOVERY MATTERS**

**A.     *Ex Parte* Application of Non-Party Entities**

1.     On or about February 9, 2009, Omni 808, Investors, LLC, Vision Capital, LLC and Omninet Capital, LLC ("Non-Party Entities") filed an *ex parte* application (the "Application") to strike the Motion to Compel Production of Documents Responsive to Third-Party Subpoenas filed by Mattel, Inc. ("Mattel") on or about February 4, 2009.  The Application is **DENIED** as moot, on the ground that it has been superseded by another pleading filed by the Non-Party Entities. Specifically, one day after filing their Application (i.e., on or about February 10, 2009), the Non-Party Entities filed an opposition (the "Opposition") to a motion to compel by Mattel (the "Motion"), and it contains all of the procedural arguments made in the Application, as well as additional substantive arguments.  The

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 3 -

LA/136065.1

EXHIBIT ___7___

PAGE ___135___

Opposition further states that it was filed "without waiving, and expressly reserving, all arguments raised in [the Non-Party Entities'] ex parte application."

2.      Although the Application has been superseded by the subsequently-filed Opposition, nothing in this ruling precludes the Non-Party Entities from arguing that the Motion should be denied for the reasons set forth in the Application. Mattel may respond to any such arguments in its reply papers, and the parties shall have the right to address all such arguments at the hearing on the Motion.

**B.      Hearing Dates**

The motions already filed by the parties shall be heard by the Discovery Master in accordance with the schedule set forth below.  Unless the Discovery Master notifies the parties otherwise, all discovery hearings shall commence at 10:00 a.m. at the offices of Arent Fox, LLP. To the extent any opposition papers have previously been filed to any of the motions below, the opposing party shall immediately provide the Discovery Master with a copy of all such documents. Similarly, to the extent any reply papers have previously been filed in connection with any of the motions below, the moving party shall immediately provide the Discovery Master with a copy of all such documents.

**March 4, 2009:**

1.      Motion to Compel Production of Documents Responsive to Third-Party Subpoenas filed by Mattel.

- 4 -

EXHIBIT ___7___

PAGE ___136___

2.      Motion to Quash Receiver Subpoenas filed by MGA Entertainment, Inc. et al. ("MGA") on or about February 4, 2009.

**March 11, 2009:**

1.      Renewed Motion to Compel Production of Documents and Things from MGA filed by Mattel on or about January 26, 2009.

2.      Renewed Motion to Compel Mattel To Produce Documents Responsive To Requests For Production 526 and 528 filed by MGA on or about February 6, 2009.

**March 19, 2009:**

1.      Motion to Compel Depositions of Pablo Vargas and Marian Trueba filed by Mattel on or about February 9, 2009.

2.      Motion to Compel Responses to Interrogatories and Production of Documents from MGA et al. filed by Mattel on or about February 10, 2009.

3.      Motion to Compel MGA To Produce And File Certain Documents Reviewed In Camera filed by Mattel on or about February 12, 2009.

**III.    FURTHER / FUTURE DISCOVERY MOTIONS**

1.      In the event any party has previously filed any other discovery motion not referenced above that should be set for hearing, the Discovery Master requests that the parties promptly submit a joint report identifying the motion(s), the date such motion(s) were filed and all papers submitted in connection with the motion(s) to date.

- 5 -

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

LA/136065.1

EXHIBIT __7__

PAGE __137__

2.     Any motion filed after the date of this order will be set for hearing within a reasonable period of time thereafter by the Discovery Master.

Dated:       February 12, 2009

By:      /s/ Robert C. O'Brien
         ROBERT C. O'BRIEN
         Discovery Master

- 6 -

LA/136065.1

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT ___7___

PAGE ___138___

**PROOF OF SERVICE**
*Bryant v. Mattel Inc. and Consolidated Actions*
USDC, Eastern Division, Case No. CV 04 09049 SGL (RNBx)

I am a citizen of the United States.  My business address is Arent Fox LLP, 555 West Fifth Street, 48th Floor, Los Angeles, California 90013-1065.  I am employed in the County of Los Angeles where this service occurs.  I am over the age of 18 years, and not a party to the within cause.

On the date set forth below, according to ordinary business practice, I served the foregoing document(s) described as:

## ORDER NO. 1, REGARDING:  (1) PROCEDURE GOVERNING DISCOVERY MOTIONS; (2) PENDING DISCOVERY MATTERS, and (3) FURTHER/FUTURE DISCOVERY MOTIONS

☐   (BY FAX)  I transmitted via facsimile, from facsimile number (213) 629-7401, the document(s) to the person(s) listed below at the fax number(s) set forth therein, on this date before 5:00 p.m.  A statement that this document was successfully transmitted without error is attached to this Proof of Service.

☒   (BY E-MAIL)  On this date, I caused the above document(s) to be delivered electronically to the e-mail address (es) of the person(s) on the attached service list.

☒   (BY MAIL)  I am readily familiar with my employer's business practice for collection and processing of correspondence for mailing with the U.S. Postal Service, and that practice is that correspondence is deposited with the U.S. Postal Service the same day as the day of collection in the ordinary course of business.  On this date, I placed the document(s) in envelopes addressed to the person(s) listed below and sealed and placed the envelopes for collection and mailing following ordinary business practices.

☐   **(BY PERSONAL SERVICE)**  On this date, I caused the above documents to be delivered by hand delivery to the person(s) listed below.

☐   (BY OVERNIGHT DELIVERY)  On this date, I placed the documents in envelope(s) addressed to the person(s) on the within service list, and caused those envelopes to be delivered to an overnight delivery carrier, with delivery fees provided for, for next-business-day delivery to whom it is to be served.

### SEE ATTACHED SERVICE LIST

☒   (Federal) I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 12, 2009 at Los Angeles, California.

/s/ Armida Flores
Armida Flores

- 1 -

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT ___7___

PAGE ___139___

*Bryant v. Mattel Inc. and Consolidated Actions*
USDC, Eastern Division, Case No. CV 04 09049 SGL (RNBx)

**SERVICE LIST**

| | |
|---|---|
| John B Quinn<br>johnquinn@quinnemanuel.com | Randa A F Osman<br>randaosman@quinnemanuel.com |
| David C Scheper<br>dscheper@obsklaw.com;<br>feseroma@obsklaw.com | Alisa Morgenthaler Lever<br>amorgenthaler@chrisglase.com |
| Larry W McFarland<br>lmcfarland@kmwlaw.com | Raoul D Kennedy<br>rkennedy@skadden.com |
| Mark E Overland<br>moverland@obsklaw.com;<br>jhibino@obsklaw.com | Thomas J Nolan<br>tnolan@skadden.com; carl.roth@skadden.com;<br>marcus.mumford@skadden.com |
| Emil W Herich<br>eherich@kmwlaw.com | Jason D Russell<br>jrussell@skadden.com; allison.velkes@skadden.com |
| Timothy L Alger<br>timalger@quinnemanuel.com | Sandra L Tholen<br>tholen@caldwell-leslie.com; mejia@caldwell-leslie.com; wilson@caldwell-leslie.com |
| Jon D Corey<br>joncorey@quinnemanuel.com | Douglas Andrew Winthrop<br>dwinthrop@howardrice.com |
| Michael T Zeller<br>michaelzeller@quinnemanuel.com | Linda M Burrow<br>burrow@caldwell-leslie.com; wilson@caldwell-leslie.com; popescu@caldwell-leslie.com |
| Diane C Hutnyan<br>dianehutnyan@quinnemanuel.com;<br>reahoeven@quinnemanuel.com | Kenneth A Plevan<br>kenneth.plevan@skadden.com;<br>drogosa@skadden.com; sumclaug@skadden.com |
| Alexander H Cote<br>acote@obsklaw.com;<br>feseroma@obsklaw.com | Marina Vladimir Bogorad<br>marina.bogorad@skadden.com |
| Brett Dylan Proctor<br>dylanproctor@quinnemanuel.com;<br>westonreid@quinnemanuel.com | Stan Karas<br>stankaras@quinnemanuel.com;<br>gayleduran@quinnemanuel.com;<br>westonreid@quinnemanuel.com |
| Scott E Gizer<br>sgizer@glaserweil.com | David W Hansen<br>dhansen@skadden.com |
| Robyn Aronson<br>robynaronson@dwt.com;<br>frankromero@dwt.com | Oleg Stolyar<br>alexstolyar@quinnemanuel.com |

ARENT FOX LLP<br>ATTORNEYS AT LAW<br>LOS ANGELES

- 2 -

**PROOF OF SERVICE**

EXHIBIT _____ 7

PAGE _____ 140

*Bryant v. Mattel Inc. and Consolidated Actions*
USDC, Eastern Division, Case No. CV 04 09049 SGL (RNBx)

**SERVICE LIST**

| | |
|---|---|
| Christian C Dowell<br>cdowell@kmwlaw.com | Cyrus S Naim<br>cyrusnaim@quinnemanuel.com |
| Leah Chava Gershon<br>leah@spertuslaw.com | Michael P Kelly<br>mikelly@skadden.com |
| Sanford I Weisburst<br>sandyweisburst@quinnemanuel.com | Hon. Stephen G. Larson<br>stephen_larson@cacd.uscourts.gov |
| Jerome B Falk<br>Howard Rice Nemerovski Canady Falk<br>& Rabkin<br>3 Embarcadero Ctr 7th Fl<br>San Francisco CA 94111-4024 | Kien C Tiet<br>Stern and Goldberg<br>6345 Balboa Boulevard, Suite 200<br>Encino CA 91316 |
| Lauren E Aguiar<br>Skadden Arps Slate Meagher & Flom<br>1440 New York Ave<br>Washington DC 20005-2111 | Melissa Grant<br>Quinn Emanuel Urquhart Oliver and Hedges<br>865 South Figueroa Street, 10th Fl<br>Los Angeles CA 90017-2543 |
| Cheryl Plambeck<br>Davis & Gilbert LLP<br>1740 Broadway<br>New York NY 10019 | Amy R Sabrin<br>Skadden Arps Slate Meagher & Flom LLP<br>1440 New York Avenue NW<br>Washington DC 20005-2111 |
| David W Foster<br>Skadden Arps Slate Meagher<br>& Flom LLP<br>1440 New York Avenue NW<br>Washington DC 20005-2111 | Peter H Bonis<br>Peter H. Bonis Law Offices<br>1990 N. California Blvd, 8th Floor<br>Walnut Creek CA 94596 |

- 3 -

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

LA/136081.1

**PROOF OF SERVICE**

EXHIBIT ___7___

PAGE ___141___