1
QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
2
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
3
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
4
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
5
Los Angeles, California  90017-2543
Telephone:  (213) 443 3000
6
Facsimile:   (213) 443 3100

7
Attorneys for Mattel, Inc.

8
UNITED STATES DISTRICT COURT

9
CENTRAL DISTRICT OF CALIFORNIA

10
EASTERN DIVISION

| | |
|---|---|
| 11 CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| 12            Plaintiff, | Consolidated with Case No. CV 04-09059 Case No. CV 05-02727 |
| 13        vs. | |
| 14 MATTEL, INC., a Delaware corporation,, | Hon. Stephen G. Larson |
| 15 | **MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO MODIFY SCHEDULING ORDER; AND** |
| 16            Defendant. | |
| 17 AND CONSOLIDATED ACTIONS | **MEMORANDUM OF POINTS AND AUTHORITIES** |
| 18 | |
| 19 | [Declaration of Michael T. Zeller filed concurrently herewith] |
| 20 | Date:     September 14, 2009 |
| 21 | Time:    10:00 a.m. Place:   Courtroom One |
| 22 | **Phase 2:** |
| 23 | Disc. Cut-off:      Dec. 11, 2009 Pre-trial Con.:    Mar. 1, 2010 |
| 24 | Trial Date:        Mar. 23, 2010 |

25

26

27

28

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on September 14, 2009 at 10:00 a.m., or as soon as counsel may otherwise be heard, in the courtroom of the Honorable Stephen G. Larson, located at 3470 Twelfth Street, Riverside, California 92501, Mattel, Inc. ("Mattel") will, and hereby does, move the Court to modify the Scheduling Order in this action to continue all case deadlines by eight months.

Mattel makes this motion pursuant to <u>Federal Rule of Civil Procedure</u> 16(b)(4) on the grounds that, despite diligent efforts by Mattel and through no fault of Mattel, discovery cannot be completed in this action before the expiration of the discovery cut-off.  Good cause exists to extend all deadlines.

This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the accompanying Declaration of Michael T. Zeller, all other pleadings and papers on file in this action, any matters of which this Court may take judicial notice, and such further evidence and argument as may be presented at or before the hearing on this matter.

### Statement of Rule 7-3 Compliance

Counsel for Mattel and defendants conferred regarding the issues presented by this Motion on July 15, 2009, but were unable to resolve the issues presented herein.

DATED:  July 27, 2009

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP


By  /s/ Michael T. Zeller
    Michael T. Zeller
    Attorneys for Mattel, Inc.

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ............................................................................. 1

BACKGROUND ............................................................................................... 4

ARGUMENT ................................................................................................... 11

I.     GOOD CAUSE EXISTS TO MODIFY THE SCHEDULING ORDER ....... 11

    A.     Mattel's New Claims Dramatically Expanded an Already Complex Case ........................................................................................... 12

    B.     MGA and Its Affiliates Have Engaged In Unparalleled Obstructionism, Leaving Much Discovery Work To Be Done ........... 14

        1.     MGA Mexico and MGA Canada Have Refused to Produce Documents or Witnesses ............................................... 14

        2.     MGA and Its Related Parties Have Yet To Produce Any Financing Documents ................................................... 18

        3.     MGA Has Failed To Comply With Discovery Orders Issued Even Before the Phase 1 Trial ..................................... 21

II.     A SUBSTANTIAL EXTENSION OF TIME IS REQUIRED ....................... 23

CONCLUSION ................................................................................................ 25

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page</u>

3

### <u>Cases</u>

4

<u>Dogan Enterprises, Inc. v. Hubsher,</u>
   1987 WL 20312 (E.D.N.Y. Nov. 4, 1987) .................................................. 13

5

6

<u>Frazier v. Arkansas Dept. of Correction,</u>
   2008 WL 5427627 (E.D.Ark. Dec. 30, 2008) ........................................... 13

7

<u>Nobles v. Rural Comm. Ins. Serv.,</u>
   303 F. Supp. 2d 1279 (M.D. Ala. 2004) .................................................... 25

8

9

<u>Noyes v. Kelly Services,</u>
   488 F.3d 1163 (9th Cir. 2007) ........................................................... 11, 14

10

<u>Parakkavetty v. Indus Intern., Inc.,</u>
   2003 WL 22060749 (N.D. Tex. Sept. 2, 2003) ......................................... 13

11

12

<u>Permasteelisa CS Corp. v. Airolite Co., LLC,</u>
   2007 WL 1683668 (S.D. Ohio June 8, 2007) ............................................ 14

13

<u>Richmark Corp. v. Timber Falling Consultants, Inc.,</u>
   1989 WL 112811 (D. Or. Sept. 21, 1989) ................................................. 13

14

15

<u>Southern v. United States,</u>
   503 F. Supp. 2d 829 (W.D. Tex. 2007) ..................................................... 13

16

<u>Stewart v. Coyne Textile Serv.,</u>
   212 F.R.D. 494 (S.D. W.Va. 2003) ........................................................... 14

17

18

<u>Tilberg v. Next Management Co.,</u>
   2005 WL 2759860 (S.D.N.Y. Oct. 25, 2005) ........................................... 14

19

### <u>Miscellaneous</u>

20

<u>Federal Rule of Civil Procedure 16(b)(4)</u>.......................................................... 2

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

The Court has set a discovery cutoff of December 11, 2009, with expert reports due by mid-October, just a few months away.  It set this expedited schedule five and a half months ago in the hopes that the parties would, this time around, "streamline discovery."  Far from that, defendants have redoubled their obstructionist tactics in Phase 2.  To date, even though Mattel has already filed 33 discovery motions since the stay was lifted, defendants and their associated parties have provided hardly a grain of information.  Not one deponent has been made available, notwithstanding orders.  Mattel has been forced to move on 795 document requests in recent months, defendants having failed and refused to produce documents in response to any of them.  And MGA and its affiliates have then used the fact of ongoing disputes over documents—disputes created by their own stonewalling—to put off even ordered depositions still further.  Discovery simply cannot be completed, or even nearly completed, by the existing cutoff.

Mattel recommenced its efforts to obtain critical Phase 2 discovery immediately after the Phase 2 discovery stay was lifted—efforts that had been rebuffed previously when Phase 2 discovery was stayed prior to the Phase 1 trial.  Literally the day after the stay was lifted, Mattel noticed three depositions of key MGA agents, all of whom have avoided deposition to date.  Mattel served Larian and MGA with document requests the day after that and immediately took steps to obtain responses to discovery that had been served before the Phase 2 stay was imposed.  Mattel has continued its diligent efforts for the past six months.

Because of MGA's gamesmanship, however, the evidence has at best trickled in.  MGA Mexico, for example, has not produced a single document in this case—ever— despite Mattel's diligent efforts to obtain its evidence.  MGA and its affiliates have objected to every single request for production served by Mattel in Phase 2, prompting extensive motion practice that, in many cases, has still not resulted in discovery even

where compelled.  What little Mattel has obtained has often come after filing not only successful motions to compel, but also motions to enforce orders already issued.

MGA undoubtedly will try to dispute that it has engaged in obstructionism, but there are some things it cannot dispute.  First, it cannot dispute that the already expansive Phase 2 litigation recently expanded still further.  One of the few things Mattel *has* been able to discover in Phase 2, after the existing cutoff was set, is that counsel's representations to the Court and Discovery Master about the relationship between Omni 808 and MGA were false.  Based in part on that new discovery, Mattel sought and was granted leave to amend its complaint—an amendment that both MGA and the Court recognized would, and did, "radically expand the scope of the litigation."[1]  Just weeks ago MGA filed its answer, asserting *thirteen* new affirmative defenses (for a total of thirty-five) that MGA says it cannot disclose the bases for until the end of August at the earliest.  Discovery into the issues presented by the parties' new pleadings is, of necessity, just beginning, and by their nature discovery into these new issues will take time.  Concealment is not easily or quickly discovered, and concealment is the centerpiece of Mattel's new allegations.

Second, MGA cannot dispute that a substantial amount of discovery remains to be taken, both on the newly added claims and the nearly 20 claims that already had been set for Phase 2 trial (including the misconduct at issue in Mattel's Second Amended Counterclaims and the purportedly "billion" dollar claims brought by MGA).  MGA has rejected Mattel's proposal that interrogatory limits be set at 35 per side, claiming defendants cannot agree to less than their claimed right to serve 125 interrogatories (less than 20 of which, in their view, have been served to date), and MGA itself has acknowledged that ten depositions per side will not likely be enough for Phase 2. Though many have been noticed, not a single witness has been produced for deposition

---

[1]   MGA Parties' Opposition to Mattel, Inc.'s Motion for Leave to File Third Amended Answer and Counterclaims, dated April 27, 2009, at 5-10, Zeller Dec., Exh. 24.

in Phase 2 even when ordered.  Attorneys for Neil Kadisha, for example, have asserted that he cannot be produced for some two more months in response to a deposition subpoena served in January—despite an Order requiring him to appear—because document production is incomplete (as it indeed is), and because MGA's counsel needs time to get up to speed.  Like MGA Mexico, MGA Canada has yet to produce a single document or witness for deposition, despite this Court's issuance of letters of request.

Nor, to date, has MGA or Larian produced a single document relating to the money laundering and other financial improprieties that are the subject of Mattel's claims.  Even now, the Omni parties, MGA and Larian have failed to produce any financial documents evidencing where $49 million of the financing of the Wachovia debt acquisition came from or even documents identifying who is behind the supposed investors in Omni 808, such as Vision Capital.  None of the fee agreements Mattel has repeatedly asked for have been produced, nor has MGA identified—as two Discovery Masters have ordered it to do—the Mattel employees it has paid and how much it paid them.  Documents relating to MGA's payments made to former Mattel employees, which are directly relevant to Mattel's claims for commercial bribery and which the Discovery Master has compelled, have yet to be produced.  The list goes on and on.  Thirteen discovery motions are presently pending before the Discovery Master, ten brought by Mattel, even apart from the 41 Orders he has issued to date.

The standard for granting more time is good cause; there clearly is good cause for an extension here.  If MGA is not delaying intentionally to run out the clock, its discovery practices have had the same effect.  The Phase 1 trial involved five claims. Twenty claims are set for trial in Phase 2.  To say that Mattel has been diligent in pursuing discovery is an understatement—the Court's docket now exceeds 6,000 filings. But no amount of diligence will allow discovery to be complete by December.  Mattel respectfully requests that the Court continue the discovery cut-off, and all other scheduled dates, by eight months to provide sufficient time for discovery.

**Background**

**The Prior Pleadings.**   Mattel filed its original Complaint on April 27, 2004, alleging that Carter Bryant breached his duties to Mattel by working with and assisting a Mattel competitor, MGA, while employed by Mattel.[2]  MGA intervened in that case on December 7, 2004.[3]  In April 2005, MGA filed an unfair competition complaint against Mattel, claiming trade dress infringement and challenging Mattel's business practices.[4] Isaac Larian has proclaimed that MGA is seeking "billions" of dollars from Mattel.[5]

On July 12, 2007, Mattel filed its Second Amended Answer and Counterclaims against MGA, MGA Entertainment (HK) Limited, MGA de Mexico, S.R.L. de C.V., Carter Bryant, Isaac Larian, Carlos Gustavo Machado Gomez, and DOES 4 through 10 (the "SAAC").[6]  In addition to claims related to the ownership of Bratz and infringement of Bratz copyrights, the SAAC alleged, among other things, that the MGA parties and others engaged in a widespread pattern of illegal acts targeting Mattel, including their inducement of Mattel employees to steal Mattel's trade secrets.[7]  The SAAC alleged that the MGA parties and others carried out their scheme through a pattern of racketeering activity that includes repeated acts of mail fraud, wire fraud, commercial bribery, evidence tampering and destruction and criminal copyright infringement.[8]  In total, the SAAC alleged thirteen claims against six named defendants, and identified two RICO enterprises.[9]  In their answers, defendants alleged twenty-two affirmative defenses.[10]

---

[2]   Mattel, Inc.'s Complaint in Case No. 04-9059 SGL (RNBx), dated April 27, 2004, Zeller Dec., Exh. 5.

[3]   Stipulation Permitting MGA Entertainment to Intervene in Case No. 04-9059, dated December 3, 2004, Zeller Dec., Exh. 6.

[4]   MGA Entertainment, Inc.'s Complaint in Case No. CV 05-2727, dated April 13, 2005, Zeller Dec., Exh. 7.

[5]   See Zeller Dec., Exh. 27.

[6]   Mattel, Inc.'s Second Amended Answer In Case No. 05-2727 and Counter-Claims, dated July 12, 2007, Zeller Dec., Exh. 8.

[7]   Id. at ¶¶ 1-5.

[8]   Id. at ¶¶ 88-93.

[9]   Id. at ¶¶ 82-179.

*MGA Seeks, and Obtains, A Stay of Phase 2 Discovery.* Initially discovery in this case was not bifurcated. Accordingly, Mattel attempted to take Phase 2 discovery prior to the Phase 1 trial. Starting in 2007, however, MGA repeatedly insisted that discovery into Phase 2 issues was too burdensome and complex and urged it should be stayed pending the completion of Phase 1 to fend off complying with its obligations. "[H]ere's my proposal, your Honor," counsel for MGA told the Court on January 7, 2008. "That the parties focus on Phase One discovery . . . . Let's focus and narrow the issues to bring the case home for you, your Honor."[11] In opposition to a Mattel Application to Compel Additional Depositions, MGA argued that "the discovery Mattel seeks, which relates primarily to Phase 2, should be deferred until after the Phase 1 trial," and declared (with the bold font in the original) "**this much is clear: if the leave Mattel now seeks is granted to conduct Phase II discovery during the pretrial period of Phase I, MGA or Bryant will not be able to try the case in May.**"[12] On February 4, 2008, the Court stayed Phase 2 discovery at MGA's urging. At that time, Mattel had six motions pending seeking Phase 2 discovery; that discovery was generally denied without prejudice by Judge Infante based on the stay.[13]

---

[10] See Amended Answer and Affirmative Defenses of MGA Entertainment Inc., MGA Entertainment (HK) Limited and MGAE de Mexico S.R.L. de C.V. to Mattel, Inc.'s Second Amended Answer and Counterclaims, dated September 19, 2007, at 19-26, Zeller Dec., Exh. 9.

[11] See Hearing Tr. dated January 7, 2008, at 22:20-23:25, Zeller Dec., Exh. 11; see also Hearing Tr. dated October 31, 2007, at 14:18-19, Zeller Dec., Exh. 10.

[12] MGA's and Carter Bryant's Opposition to Mattel's Ex Parte Applications to Compel Additional Depositions, dated January 30, 2008, at 4 (emphasis in original), Zeller Dec., Exh. 12.

[13] See, e.g., Order Granting in Part Mattel's Motion to Compel MGA To Produce Communications Regarding This Action, dated April 14, 2008, at 5-6 ("In view of the stay on Phase 2 discovery, Mattel's request is denied as to the following individuals . . . ."), Zeller Dec., Exh. 13; Order Granting MGA Parties' Motion for Clarification Regarding Portions of February 15, 2008 (obligations to respond to interrogatories 41, 43, and 44 "are hereby stayed until further order of the district court lifting the stay on Phase 2 discovery"), Zeller Dec., Exh. 15; Order Granting in Part and Denying in Part Mattel's Motion to Compel (footnote continued)

***The Court Lifts the Stay On Phase 2 Discovery.***  On January 6, 2009, the Court lifted the stay on Phase 2 discovery, and Mattel immediately recommenced its Phase 2 discovery efforts.  Mattel promptly served subpoenas on IGWT 826, Omni, Omninet, Vision Capital, Wachovia, Fred Mashian, Neil Kadisha and Lexington Financial regarding MGA's finances, and sought to enforce Phase 2-related discovery orders that had been pending when the stay was imposed.[14]  Mattel served its First Set of Requests for Production (Phase 2) against Larian and MGA on January 8, 2009,[15] two days after the stay was lifted.  A day before that, Mattel noticed the depositions of Pablo Vargas, Shirin Salemnia, and Mariana Trueba.[16]

As of January 29, when new counsel substituted in, Mattel had received nothing.  New counsel objected to every request made by Mattel, and also took the position that the prior Discovery Master's Orders no longer obligated MGA to produce discovery because the deadlines set by them had long since passed, and/or the materials were no longer relevant, and/or the appointment of a forensic auditor prevented Mattel from

---

Production of Documents and Things By MGA Entertainment, Inc., dated April 14, 2008, at 4 (noting Mattel's agreement to defer motion to compel as to certain requests related to Phase 2), Zeller Dec., Exh. 14; see also MGA's Preliminary Response to Mattel's Motion for Letters of Request, dated February 15, 2008 ("In light of the Court's ruling, MGA will respond to Mattel's motion at the appropriate time after the conclusion of the Phase 1 trial."), Zeller Dec., Exh. 16; Joint Report to Discovery Master Regarding Pending Discovery Motions, dated March 28, 2008 (noting agreement to defer ruling on "[1] Mattel's Motion to Compel: 1) Deposition of Carlos Gustavo Machado Gomez; and 2) Consent to Production of Electronic Mail Messages (filed 11/15/07) . . . and [2] Mattel's Motion to: 1) Enforce the Court's 8/13/07 Order and to Compel; and 2) for an Award of Monetary Sanctions (filed 1/22/08)"), Zeller Dec., Exh. 17.

[14]   See infra Section IC; Phase 2 Discovery Matter Order No. 3, dated March 10, 2009, Zeller Dec., Exh. 65.

[15]   Mattel, Inc.'s First Set of Requests for Document and Things to Isaac Larian (Phase 2), dated January 8, 2009, Zeller Dec., Exh. 28; Mattel, Inc.'s First Set of Requests for Document and Things to MGA Entertainment, Inc. (Phase 2), dated January 8, 2009, Zeller Dec., Exh. 29.

[16]   See Exhs. 30-32.

seeking discovery regarding MGA's finances from any source.[17]  MGA also self-imposed a stay on all discovery into its claims, arguing that the fact that Mattel might file a summary judgment motion at some point down the line meant discovery should not go forward.[18]  MGA achieved months of delay by sheer non-compliance, even in the face of monetary sanctions.[19]

**_The Discovery Master Limits Discovery of Financial Transactions._** MGA and its affiliates also obtained delays by making misrepresentations.  The very first subpoenas served by Mattel in January 2009 and documents requests to MGA sought to determine the relationship between the Omni entities and the MGA parties.  MGA first refused to discuss them at all, claiming that the forensic auditor's appointment stayed MGA's discovery obligations.[20]  After the Court rejected that position a month later,[21] another month passed before Mattel obtained a ruling on the discovery at issue.[22]  And while the Discovery Master then rejected MGA's motion to quash the January subpoenas, he required only a limited production of documents from Omni and other purported third parties because Omni's counsel represented that Larian had funded none of the transactions.[23]  Even though the deal was structured by his own firm, Omni's counsel specifically represented in opposition to the motion to compel—while counsel for MGA

---

[17]   See MGA Parties' Notice of Motion and Motion to Quash Receiver Subpoenas Issued By Mattel, dated February 3, 2009, at 4-6, Zeller Dec., Exh. 18; Phase 2 Discovery Matter Order No. 17, dated April 14, 2009, at 14-18, Zeller Dec., Exh. 19; Master's Phase 2 Discovery Matter Order No. 34, dated May 18, 2009, at 6-8, Zeller Dec., Exh. 20.

[18]   See Phase 2 Discovery Matter Order No. 17, at 14-18, Zeller Dec., Exh. 19.

[19]   Id.

[20]   MGA Parties' Notice of Motion and Motion to Quash Receiver Subpoenas Issued By Mattel, dated February 3, 2009, Zeller Dec., Exh. 18.

[21]   February 11, 2009 Hearing Tr. at 97:8-15, Zeller Dec., Exh. 21 ("I will instruct the Discovery Master this afternoon, in no uncertain terms, that there is no stay on any discovery related to this case at all . . . . As I indicated, I thought that I made this clear before").

[22]   See Phase 2 Discovery Matter Order No. 3, dated March 10, 2009, at 4-6, Zeller Dec., Exh. 65.

[23]   See id. at 16 n.13.

-7-

and Larian sat by silently—"What documents do we have that show that either Mr. Larian or MGA paid money into this to purchase this debt? *I can tell you there are none*. This is a ready, fire, aim situation. The allegations that were made and were made publicly are unconscionable and can't be undone."[24]  We now know that was false in light of documents later produced by Wachovia, but the misrepresentation served its intended purpose—in his initial Order, the Discovery Master expressly relied on these misrepresentations to deny Mattel basic categories of discovery.[25]

*Mattel Discovers New Information Which Supports New Claims And Allegations.*  On April 8, 2009, after receiving documents produced by Wachovia in March and other information, Mattel sought leave to file a Third Amended Answer and Counterclaims (the "TAAC").[26]  Leave was granted on May 21.[27]  MGA argued in opposition to Mattel's motion that the filing of Mattel's new TAAC would "radically expand the scope of the litigation," and indeed it has.[28]  The new TAAC adds a new counterclaim; allegations regarding hundreds of additional predicate acts of money laundering, concealing assets, mail and wire fraud and engaging in monetary transactions involving property derived from unlawful activity, based largely on defendants' unlawful financial transactions; allegations regarding additional predicate acts of commercial bribery, destruction of evidence and obstruction of justice, based largely on MGA's secret payments to Mattel employees and the destruction of documents and perjury at the Phase 1 trial; and a new RICO enterprise relating to these and other allegations.[29]  MGA

---

[24]  See March 4, 2009 Hearing Transcript at 51:3-8, Zeller Dec., Exh. 66 (emphasis added).
[25]   Phase 2 Discovery Matter Order No. 3, dated March 10, 2009, at 4 ("Based on the information presented at the February 11, 2009 hearing and in connection with the pending motions, it does not appear that either MGA Entertainment, Inc., MGA Entertainment (HK) Limited, or Larian have an ownership interest in the Financing Entities."), Zeller Dec., Exh. 65.
[26]  Id.
[27]  Order dated May 21, 2009, at 6, Zeller Dec. Exh. 25.
[28]  MGA Parties' Opposition to Mattel, Inc.'s Motion for Leave to File Third Amended Answer and Counterclaims, dated April 27, 2009, at 5-10, Zeller Dec., Exh. 24.
[29]  Id. at 10-12; see also TAAC at ¶¶ 77-87, Zeller Dec., Exh. 35.

1   argued in opposition to Mattel's motion that "the proposed UFTA and new RICO claims

2   . . . add a host of new issues . . . none of which is remotely raised by Mattel's current

3   counterclaims," "inject new allegations . . . that Isaac Larian is the alter ego of at least

4   five LLCs and at least five trusts," and "allege an entirely new RICO enterprise that is

5   separate and distinct from the two alleged RICO enterprises currently alleged in the

6   SAAC."[30]  The Court made clear, in granting leave, that "the Court is fully aware that the

7   . . . amendments will dramatically expand the scope of the present litigation"[31] and

8   "would exceedingly complicate an already exceedingly complicated case."[32]

9       ***The Court Imposes A Discovery Stay.***  In the same Order in which it granted leave

10  to amend the Court also issued a four-week stay of discovery to focus the parties on

11  possible settlement.[33]  This one-month stay was in addition to the "stays" defendants

12  unilaterally arrogated to themselves when discovery first re-opened.[34]

13      ***The MGA Parties' Answer, and Seek Further Extensions.***  On June 29, 2009, the

14  MGA Parties served their answer to the TAAC.  In addition to the twenty-two defenses

15  they had previously raised, defendants alleged thirteen more, for a total of thirty-five

16  affirmative defenses.[35]   Mattel promptly asked MGA to provide its contentions

17  supporting these new defenses in response to Mattel's contention interogatories.  MGA,

18  however, has stated that it cannot possibly do so for at least another month.[36]

19      ***MGA Substitutes Counsel, Causing More Delays***.  The excuse for that latest

20  delay is the most recent substitution of counsel by MGA.  New counsel, being new to the

21  case, understandably sought extensions on numerous outstanding deadlines upon

---

[30]   Id.
[31]   Order dated May 21, 2009, at 6, Zeller Dec. Exh. 25.
[32]   Hearing Transcript dated May 18, 2009 at 19:24-20:3, Zeller Dec., Exh. 26.
[33]   Order dated May 21, 2009, at 13-14, Zeller Dec. Exh. 25
[34]   Supra at nn. 18-19.
[35]   See MGA Parties' Answer and Affirmative Defenses to Mattel, Inc.'s Third Amended Answer and Counterclaims, dated June 29, 2009, at 20-33.

substituting as counsel on July 6.[36]   Orrick sought an extension of time regarding its obligation to submit allegedly privileged documents to the Discovery Master for *in camera* review because, as "new counsel," it needed time to conduct a "meaningful review" of the documents.[38]   Counsel has represented that the earliest by which defendants could provide interrogatory responses specifying the bases for their thirteen new affirmative defenses is "the end of August."[39]   Counsel has stated that they are "just not in a position right now" even to begin to determine the number of depositions defendants will need in this case.[40]   And counsel has criticized Mattel for threatening to file motions to compel "in the midst of a firm transition,"[41] and insisted Mattel must be "patient" in receiving discovery.[42]

Mattel approached MGA, after new counsel had substituted, to determine if a stipulated case management schedule could be reached.  However, even while MGA proclaims it needs vast discovery from Mattel, and even while new counsel says they are entitled to extensions given the large task they face in integrating into the case, MGA

---

[36]   See Letter from Jon Corey to Warrington Parker, dated July 24, 2009, Zeller Dec., Exh. 4.

[37]   See, e.g., Stipulation Re Continuance of Date for *In Camera* Review, dated July 22, 2009, Zeller Dec., Exh. 2; Stipulation for Continuance of Hearing Date on Mattel's Motion for Clarification of June 18, 2009 Order Re The Escrow of Bratz Profits, dated July 17, 2009, Zeller Dec., Exh. 3; see also Letter from Jon Corey to Warrington Parker, dated July 24, 2009 (earliest by which defendants could provide interrogatory responses detailing the bases for their thirteen new affirmative defenses is "the end of August"), Zeller Dec., Exh. 4.

[38]   Stipulation Re Continuance of Date for *In Camera* Review, dated July 22, 2009, Zeller Dec., Exh. 2.

[39]   See Letter from Jon Corey to Warrington Parker, dated July 24, 2009, Zeller Dec., Exh. 4.

[40]   Email from Annette Hurst to Dylan Proctor, dated July 26, 2009, Zeller Dec., Exh. 70.

[41]   Email from Annette Hurst to Scott Watson, dated July 14, 2009, Zeller Dec., Exh. 72.

[42]   See MGAE de Mexico, S.R.L. de C.V.'s Opposition to Mattel, Inc.'s Motion to Compel Production of Documents and Consolidated Actions and Things in Response to Mattel, Inc.'s First Set of Requests for Production (Phase 2), dated July 22, 2009, at 15, Zeller Dec., Exh. 73.

refused to agree that the case schedule should be modified in any way to extend discovery—not even by a day.[43]

## **Argument**

## I.   **GOOD CAUSE EXISTS TO MODIFY THE SCHEDULING ORDER**

This Court may modify the Scheduling Order upon a showing of "good cause." Good cause "focuses on the reasonable diligence of the moving party." Noyes v. Kelly Services, 488 F.3d 1163, 1174 n. 6 (9th Cir. 2007).  Where a defendant has delayed the discovery process, it would be an abuse of discretion under Ninth Circuit law *not* to modify the scheduling order.  Id. at 1173-74 ("In view of Noyes' timely noticing of Heinz's deposition, Kelly Services' multiple requests to delay the deposition, and Heinz's failure to appear as scheduled, it was an abuse of discretion to deny the motion to modify the scheduling order.").

Good cause to modify the scheduling order clearly exists here.  Mattel has been more than diligent—it has been tenacious, and has devoted substantial resources towards conducting and obtaining discovery—yet a great deal of discovery remains to be conducted.  Some of this may have been inevitable.  Completing discovery on Mattel's new claims and MGA's new defenses in less than six months (discovery into them was first available last month, after the stay was lifted) may not have been possible under the best of circumstances.  Some of this might have been avoided, had MGA abandoned its delay tactics and acted like an ordinary litigant in complying with discovery obligations. But, whether delays were avoidable or not, two things are clear:  Mattel needs more time to complete discovery, and Mattel certainly is not at fault for that.

---

[43]   Letter from B. Dylan Proctor to Annette Hurst, dated July 22, 2009, Zeller Dec., Exh. 74.

A.   **Mattel's New Claims Dramatically Expanded an Already Complex Case**

Before the addition of the new claims and allegations in the TAAC, the Court described the Phase 2 case as already "exceedingly complicated."[44]  Mattel's Phase 2 claims, as stated in the SAAC, included nine claims against MGA and Larian alone.  As set forth in the SAAC, Mattel's RICO claims alleged a widespread, ongoing criminal enterprise to steal Mattel's confidential and proprietary information that spans a ten-year time period, took place in multiple countries and was carried out through hundreds of criminal predicate acts.[45]  MGA's own claims, which it claims are worth "billions,"[46] themselves involve hundreds of dolls and products.

Mattel's TAAC "dramatically expanded" this "exceedingly complex" action, adding to it the facts and claims arising out of Larian's efforts to evade the Court's Orders and undermine Mattel's rights to Bratz by structuring a series of complex financial transactions using related entities and individuals.  A panoply of new allegations are now in play, putting at issue dozens upon dozens of financial transactions and related misconduct comprising a scheme to conceal and evade, all of which Mattel may now explore in discovery for the first time.  At least dozens of additional predicate acts are now at issue.  Mattel's task is to unravel layers and layers of transactions which were specifically designed to conceal their true purposes—considering that they were designed to avoid just such unraveling, no small feat.  The amount of discovery Mattel is taking and still needs to take to support these claims is substantial.

Moreover, MGA's amended answer, which Mattel received less than 30 days ago, alleges thirteen new affirmative defenses: (1) comparative fault; (2) Good Faith Improver/Set Off (entitled to credit for improvements to Mattel ideas); (3) Bar On Damages And Relief; (4) Employee Right Of Mobility; (5) Mattel's Bad Faith Claim Of

---

[44]   Hearing Transcript dated May 18, 2009 at 19:24-20:3, Zeller Dec., Exh. 26.
[45]   See, e.g., SAAC at ¶¶ 122-128; 136-141; 149-154, Zeller Dec., Exh. 8.

Misappropriation; (6) Preemption By California Uniform Trade Secrets Act; (7) Preemption By Copyright Act; (8) Res Judicata And Collateral Estoppel; (9) Law Of The Case, Direct Estoppel And Reexamination Clause; (10) No Injury Sustained By Alleged Creditor; (11) Lack Of Jurisdiction; (12) Illegal Conduct/Fraud; and (13) Spoliation Of Evidence.  Mattel must take discovery as to each of these defenses, once the interrogatories explaining what they mean are received at the end of August (assuming MGA meets that date).[47]

Courts regularly cite new evidence leading to new claims and defenses as grounds for modifying a scheduling order.  <u>See, e.g.</u>, <u>Southern v. United States</u>, 503 F. Supp. 2d 829, 833 (W.D. Tex. 2007) (modifying scheduling order to permit amendment of pleadings and extend discovery deadlines where counsel learned information supporting additional allegations well into the discovery period); <u>Frazier v. Arkansas Dept. of Correction</u>, 2008 WL 5427627, at *1 (E.D. Ark. Dec. 30, 2008) ("the court will extend the discovery deadline for the purpose of conducting discovery as to the newly allowed claims"); <u>Parakkavetty v. Indus Intern., Inc.</u>, 2003 WL 22060749, at *1 (N.D. Tex. Sept. 2, 2003) (modifying scheduling order because "the court's decision allowing him to expand his claims by amended complaint warrants adjusting the discovery and motion deadlines"); <u>Richmark Corp. v. Timber Falling Consultants, Inc.</u>, 1989 WL 112811, at *1 (D. Or. Sept. 21, 1989) (modifying scheduling order where "additional discovery is necessary due to the expansion of the lawsuit caused by [new] counterclaims"); <u>Dogan Enterprises, Inc. v. Hubsher</u>, 1987 WL 20312, at *10 (E.D.N.Y. Nov. 4, 1987) ("In light of the amended complaint, plaintiff's motion to extend the discovery deadline is granted.").  Here, the new facts and claims are complex on their face.  By the very nature of these claims, Mattel must uncover an intentionally hidden effort to deceive Mattel and the Court.  The enterprise alleged here involves hundreds of millions of dollars and was

---

[46]   <u>See</u> Zeller Dec., Exh. 27.

carefully structured using multiple entities, including off-shore ones.  It is precisely with respect to such a hidden enterprise that discovery is both most challenging and most critical.  Such discovery takes time, particularly with parties such as MGA and Omni 808.

**B.**   **MGA and Its Affiliates Have Engaged In Unparalleled Obstructionism, Leaving Much Discovery Work To Be Done**

Defendants' delays would also amply justify an extension even if no new claims had been added.  Discovery delays classically justify extensions of discovery cutoffs. Noyes, 488 F.3d at 1173-74; see also Permasteelisa CS Corp. v. Airolite Co., LLC, 2007 WL 1683668, *2 (S.D. Ohio June 8, 2007) (extending deadlines where "there were some delays in producing documents"); Stewart v. Coyne Textile Serv., 212 F.R.D. 494, 497 (S.D. W.Va. 2003) ("The Court will not allow Defendants to benefit by their discovery violations by placing the onus on Plaintiff to seek amendment of her claims before Defendants have supplied their responses."); Tilberg v. Next Management Co., 2005 WL 2759860, at *2 (S.D.N.Y. Oct. 25, 2005) (extending discovery deadline where party's failure to abide by discovery obligations resulted in incomplete discovery).  And the delays here have been extraordinary.  A sampling of the episodes Mattel has had to contend with—by no means all—are set forth below.

**1.**   **MGA Mexico and MGA Canada Have Refused to Produce Documents or Witnesses**

(1) ***MGA Mexico***. MGA Mexico has not produced a single page of documents even though it is a named defendant and figures centrally in Mattel's Phase 2 claims. Mattel served three sets of requests for production prior to the Phase 2 stay.  MGA Mexico objected to all of the requests in the first two sets, including on the grounds that

---

[47]   See Letter from Jon Corey to Warrington Parker, dated July 24, 2009, Zeller Dec., Exh. 4.

a Phase 2 discovery stay was subsequently imposed,[48] and agreed to produce only those documents sought in the third set which specifically related to the allegations in MGA's own claims.[49] Even though the stay was lifted months ago, MGA Mexico has not produced even what it agreed to produce.

Mattel then served an additional set of requests for production on MGA Mexico on April 16, 2009. Even though the requests seek documents that either MGA itself had argued were directly relevant to Phase 2 or go directly to MGA Mexico's contentions (including its new contention that Vargas and Trueba are not its managing agents), MGA Mexico objected to all 83 requests.[50] Mattel has been forced to move to compel production as to well over 500 requests.[51] To date, MGA Mexico has never produced a

---

[48] See, e.g., MGAE de Mexico S.R.L. de C.V.'S Objections and Responses to Mattel, Inc.'s First Set of Requests For Documents and Things, dated December 21, 2007, at Request Nos. 2 (seeking all documents that "any of the FORMER MATTEL EMPLOYEES removed, sent or transferred from Mattel or removed, deleted, copied, reproduced or transferred from any MATTEL computer or electronic storage device."); 21 (documents relating to MGA Mexico's communications with the former Mattel employees prior to April 20, 2004 (the date they resigned from Mattel); 143 (documents MGA Mexico intends to rely on in this action), Zeller Dec., Exh. 48; see also Mattel, Inc.'s Motion to Compel MGA Mexico to Produce Documents and Things in Response to Mattel's First, Second and Third Sets of Requests for Production to MGA Mexico, dated July 15, 2009, at 2-4, Zeller Dec., Exh. 37.

[49] Id.

[50] See, e.g., MGAE de Mexico's Responses to First Set of Requests for Documents and Things (Phase 2), dated May 18, 2009, at Request Nos. 53 (communications by Vargas or Trueba regarding their or MGA Mexico's receipt, use, reproduction, or theft of defined Mattel trade secrets); 69 ("DOCUMENTS REFERRING OR RELATING TO any COMMUNICATIONS or agreement between YOU and VARGAS or TRUEBA regarding their testimony in any proceedings REFERRING OR RELATING TO YOUR theft, possession or use of the trade secrets or confidential information of any other PERSON"), Zeller Dec., Exh. 49; Zeller Dec., ¶ 2.

[51] See Mattel, Inc.'s Notice of Motion and Motion to Compel Production of Documents and Things in Response to Mattel, Inc.'s First Set of Requests for Documents and Things to MGAE de Mexico, S.R.L. de C.V., dated July 15, 2009, Zeller Dec., Exh. 50.

single document.  Mattel's motions are set for hearing before the Discovery Master in August.[52]

(2) **Brisbois.**  To depose Janine Brisbois, Mattel must engage in the process of seeking the Court's approval for a Letter of Request, submit that Letter to the appropriate foreign authority, here Canada, and wait for a hearing and hopefully a ruling setting a schedule for a deposition, a process that can take many months even when proceeding smoothly.  Mattel first moved prior to Phase 1 trial for the issuance of a letter of request for the depositions and production of documents by Janine Brisbois and MGA Canada, but that motion was not considered because of the Phase 2 stay.[53]  Mattel renewed its

---

[52]   The following motions have been scheduled for argument in August: (1) Mattel, Inc.'s Motion to Compel Responses to Mattel, Inc.'s First Set of Interrogatories (Phase 2) to Isaac Larian, dated June 19, 2009; (2) Motion of Mattel, Inc. for Limited Reconsideration of Phase 2 Discovery Matter Order No. 33, dated June 29, 2009; (3) Mattel, Inc.'s Motion for Protective Order Re MGA's First Set of Phase 2 Interrogatories, dated June 29, 2009; (4) Mattel, Inc.'s Motion for Preclusive Relief, or, In the Alternative, Access to Active Files on the Larian Hard Drives, dated June 24, 2009; (5) Motion To Quash Subpoena Issued By Mattel, Inc. To Non-Party Bingham McCutchen, dated February 25, 2009; (6) Mattel, Inc.'s Motion to Compel Production of Documents For Which Any Claims of Privilege Have Been Waived, dated June 29, 2009; (7) Mattel, Inc.'s Motion to Compel Production of Documents and Things in Response to Mattel's First Set of Requests for Documents and Things to MGA Mexico (Phase 2), dated July 15, 2009; (8) Mattel, Inc.'s Motion to Compel MGA Mexico to Produce Documents and Things in Response to Mattel's First, Second and Third Sets of Requests for Production to MGA Mexico, dated July 15, 2009.
    The following motions have yet to be set for argument:  (9) Mattel, Inc.'s Motion for Additional Time to Conduct the Deposition of Isaac Larian, dated July 20, 2009; (10) Mattel, Inc.'s Motion to Compel MGA Entertainment Inc. and Isaac Larian to Produce Documents Responsive to Mattel's First Sets of Requests for Documents (Phase 2), dated July 23, 2009; (11) MGA Parties' Motion to Compel Previously Collected Custodian Information of Produced Documents and to Require Future Collection and Production of Custodial Data; Motion for Sanctions, dated July 24, 2009; (12) MGA Entertainment, Inc.'s Motion to Compel Further Responses to MGA's First Set of Phase 2 Interrogatories and Second Set of Phase 2 Requests for Production, dated July 24, 2009; (13) Mattel, Inc.'s Notice of Motion and Motion: (1) To Enforce Order Compelling The Omni Parties To Produce Documents, (2) To Strike Objections, and (3) For Sanctions, dated July 24, 2009.
[53]   MGA's Preliminary Response to Mattel's Motion for Letters of Request, dated February 15, 2008, Zeller Dec. Exh. 16.

motion on January 26, 2009, and its motion was ultimately granted on May 21, 2009.[54] MGA Canada and Janine Brisbois have still neither produced documents, nor appeared for deposition, in the intervening two months.  A hearing on Mattel's motion to enforce is scheduled for August 26, 2009.

(3) ***Vargas and Trueba***.  Mattel noticed the depositions of Pablo Vargas and Mariana Trueba on the day after the discovery stay was lifted.  MGA Mexico has refused to produce these witnesses, arguing they are mere low- or mid-level employees of MGA Mexico—rather than managing agents—and that the Court had no jurisdiction to require them to appear.  Mattel has initiated the process to seek their depositions through the issuance of a letter of request.[55]  Belying MGA Mexico's claim, however, Vargas and Trueba are now two of only three employees left to run MGA Mexico after layoffs there.[56]

(4) ***Salemnia.***  Counsel for MGA originally represented Shirin Salemnia and accepted both a notice of deposition and a trial subpoena on her behalf.[57]  The day after the Phase 2 stay was lifted, Mattel therefore served MGA's counsel with a renewed notice of deposition.[58]  Counsel for MGA first promised to provide Mattel dates for her deposition by January 26, 2009.[59]  Then, on January 26, for the first time, counsel notified Mattel that Ms. Salemnia no longer worked for MGA (and hadn't since May of 2008), that it no longer represented her, and that Mattel would have to subpoena her

---

[54]   Phase 2 Discovery Master Order No. 35, dated May 21, 2009 (exhibit omitted).

[55]   See Mattel, Inc.'s Notice of Motion and Motion for Issuance of Letters of Request for Vargas and Trueba, dated July 22, 2009, Zeller Dec., Exh. 52.

[56]   See Barbie acaba con las Bratz; se van de Mexico, El Economista, April 29, 2009, and accompanying certified translation, Zeller Dec., Exh. 53.

[57]   See Letter from Jon Corey to Amman Khan, dated January 27, 2009, Zeller Dec., Exh. 54.

[58]   Notice of Deposition of Shirin Salemnia, dated January 7, 2009, Zeller Dec., Exh. 55.

[59]   See Letter from Jon Corey to Amman Khan, dated January 27, 2009, Zeller Dec., Exh. 54.

MATTEL, INC.'S MOTION TO MODIFY SCHEDULING ORDER

1   individually.[60]  Mattel therefore asked counsel for Ms. Salemnia's last known address.[61]

2   MGA refused to provide one,[62] until Mattel threatened to file an ex parte to compel it to

3   do so.[63]  Even then, however, Ms. Salemnia herself evaded eight service attempts—

4   including two stakeouts.[64]  She has yet to be deposed.

5            **2.   MGA and Its Related Parties Have Yet To Produce Any**

6                    **Financing Documents**

7            (1) *Omni Parties*.  After flatly refusing to produce a single document, Omni 808

8   was first ordered to produce certain documents on March 10, 2009.[65]  It still refused to

9   do so, unilaterally deciding it was "neither efficient nor necessary" to search for or

10  produce the ordered documents until the Discovery Master ruled on Mattel's motion for

11  reconsideration on *other* issues (a motion made after documents obtained from Wachovia

12  showed that Omni's counsel had misrepresented the facts to avoid discovery).[66]  Mattel

13  moved for an order to show cause why Omni should not be held in contempt for

14  violating the Discovery Master's Order.  The Discovery Master then issued another

15  Order directing Omni to comply with Order No. 3 by April 28, expressly "reserv[ing] the

16  right to recommend to the Court that the relief requested by Mattel"—including a finding

17  of contempt— "be granted, in whole or in part" should Omni not meet that date.[67]  Later,

18  pursuant to Mattel's motion for reconsideration, the Discovery Master agreed that Mattel

19

20      [60]   Id.; see also Letter from Amman Khan to Jon Corey, dated January 28, 2009, Zeller Dec., Exh. 56.

21      [61]   See Letter from Jon Corey to Amman Khan, dated February 5, 2009, Zeller Dec., Exh. 57.

22      [62]   See Letter from Amman Khan to Jon Corey, dated February 7, 2009, Zeller Dec., Exh. 58.

23      [63]   See Letter from Amman Khan to Jon Corey, dated March 10, 2009, Zeller Dec., Exh. 59.

24      [64]   See Zeller Dec., ¶ 8.
25      [65]   Phase 2 Discovery Matter Order No. 3, dated March 10, 2009, Zeller Dec., Exh. 65.
26      [66]   Letter from Peter Villar to Jon Corey, dated April 17, 2009, Zeller Dec. Exh. 67.
27      [67]   Phase 2 Discovery Matter Order No. 21, dated April 23, 2009, at 1 ¶ 2, Zeller Dec., Exh. 68.

28

1   is entitled to additional documents from Omni 808 and related parties, but continued to

2   find Lexington Financial, because it is registered in Nevis, to be beyond the Court's

3   jurisdiction.[68]

4        As matters stand, the productions by Omni, Omninet, and Vision Capital remain

5   woefully incomplete, and Mattel has been forced to file another motion to enforce the

6   earlier Orders.  Vision Capital has produced a total of 149 pages, featuring an outdated

7   MGA sales presentation; there is not one reference, much less any supporting

8   documents, evidencing the transfer of the $10 million allegedly provided by Vision

9   Capital to Omni 808 to fund the acquisition of the Wachovia debt.[69]  Supposedly Vision

10  Capital got this money from Lexington, but there is also not a single document, check,

11  wire transfer, or even an e-mail referencing any relationship between Vision and

12  Lexington, much less a $10 million relationship.[70]  Similarly, although it was ordered to

13  do so, Omni 808 has not produced any documents revealing any wire transfers or other

14  fund transfers to Omni 808 from most of Omni 808's supposed "investors," including

15  Vision Capital, Leon Neman, Neil Kadisha, Benjamin Nazarian, David Nazarian or

16  Joseph Moinian.[71]  For its part, Omninet claims it has no documents that have not

17  already been produced by Omni.  It is simply not possible that sophisticated investors

18  completed transactions worth hundreds of millions of dollars, which supposedly required

19  investments by them of tens of millions of dollars, without a single piece of paper or

20  email or agreement being generated.  Yet, Mattel still lacks even these basic documents,

21  despite now multiple Discovery Orders compelling them.

22       (2) ***Kadisha, Neman, and Mashian.***   Mattel served subpoenas for these

23  depositions in February.  Each refused to appear.  The Discovery Master initially ordered

24

25  _____

26  [68]   See Phase 2 Discovery Matter Order No. 27, Docket No. 5365.

    [69]   Zeller Dec., ¶ 5.

27  [70]   Id.

    [71]   Zeller Dec., ¶ 6.

28

that Neman and Kadisha appear for deposition no later than the end of June 2009.[72]  The four-week discovery stay served to extend that deadline until the end of July.   The witnesses still refuse to appear, however.  Notwithstanding the Order, the soonest they are willing to appear for deposition is sometime in September, a delay characterized by their counsel as a mere "few weeks."[73]  Counsel stated that Mr. Neman was dealing with personal issues that would make him unavailable, but made no such representations regarding Mr. Kadisha.  Instead, counsel for Kadisha stated that new counsel for MGA needed to get up to speed and that "we believe it is prudent and necessary to postpone the deposition of Mr. Neman as well as Mr. Kadisha given the parties' unresolved discovery issues."[74]   Mattel responded that, while it was willing to make reasonable accommodations to address Mr. Neman's personal issues, waiting until September was too long particularly since Mr. Kadisha had no offered no reason at all for such a delay.[75]  That same day, counsel wrote to the Discovery Master, advising that the witnesses planned to ignore the deadline for their depositions he had set in order to spare their clients the chance that they might have to be deposed again after documents that are apparently being withheld are finally produced.[76]  In short, although Mattel had been seeking these depositions for six months, they have yet to occur, due to no fault of Mattel.

---

[72]   See Phase 2 Discovery Matter Order No. 33, dated May 18, 2009, at 59, Zeller Dec., Exh. 60.

[73]   Letter from Peter Villar to Michael Zeller, dated July 22, 2009, Zeller Dec., Exh. 61.

[74]   Letter from Peter Villar to Michael Zeller, dated July 15, 2009, Zeller Dec., Exh. 62.

[75]   Letter from Michael Zeller to Peter Villar, dated July 24, 2009, Zeller Dec., Exh. 63.

[76]   Letter from Peter Villar to Discovery Master O'Brien, dated July 24, 2009, Zeller Dec., Exh. 64.  As for Mashian, the Discovery Master, while agreeing that he had at least some relevant information, quashed the subpoena served on him because, as an attorney, most of his testimony would be protected by the attorney-client privilege.  Phase 2 Discovery Matter Order No. 33, dated May 18, 2009, at 36-38, Zeller Dec., Exh. 60.  Mattel has moved for reconsideration of that Order in light of the TAAC.  See Notice of Motion and Motion of Mattel Inc. for Limited Reconsideration of Phase 2 Discovery Matter Order No. 33, dated July 30, 2009, Docket No. 5854.

(3) **MGA and Larian.**  Two days after the Phase 2 stay was lifted, Mattel propounded Requests to both MGA and Larian seeking information related to the financial transactions.[77]  Even though MGA and Larian objected to each and every Request, and refused to produce any documents in response,[78] they nevertheless sought to assist Omni's stonewalling by repeatedly representing to the Discovery Master in March that Mattel could get all the documents relating to the financial transactions from them instead of the Omni parties.[79]  Despite those representations, MGA and Larian still have not produced a single page of such documents to date. Ultimately, Mattel was forced to file a motion to compel,[80] which is pending.

### 3.   MGA Has Failed To Comply With Discovery Orders Issued Even Before the Phase 1 Trial

Mattel has been diligently seeking Phase 2 discovery since well before the trial in Phase 1.  But MGA has yet to provide substantive responses even to requests issued and compelled in 2007 and 2008.

(1) **Trade Dress.**  In February of 2008, the prior Discovery Master ordered MGA to provide responses to Interrogatory Nos. 43 and 44, relating to MGA's claims for trade

---

[77]   See Mattel, Inc.'s First Set of Requests for Document and Things to Isaac Larian (Phase 2), dated January 8, 2009, Zeller Dec., Exh. 28; Mattel, Inc.'s First Set of Requests for Document and Things to MGA Entertainment, Inc. (Phase 2), dated January 8, 2009, Zeller Dec., Exh. 29.

[78]   See, e.g., Responses to Requests for Documents and Things to MGA Entertainment, Inc. (Phase 2), dated February 6, 2009, at Request Nos. 17 (documents relating to any transfer of items of value to IGWT Group, LLC); 27 (documents relating to agreements between MGA and Vision Capital); 28-30 (documents sufficient to identify owners of IGWT Parties and Omni), Zeller Dec., Exh. 69.

[79]   March 4, 2009 Hearing Transcript, at 84:6-7, Zeller Dec., Exh. 66.

[80]   See Mattel, Inc.'s Motion to Compel MGA Entertainment Inc. and Isaac Larian to Produce Documents Responsive to Mattel's First Sets of Requests for Documents (Phase 2), dated July 23, 2009, Docket No. 6006.

1    dress infringement, no later than eleven days after the Order was issued.[81]  MGA did not

2    serve those responses, as it was ordered to do, claiming the Phase 2 discovery stay

3    mooted them.[82]  Once the Phase 2 stay was lifted, MGA then *still* refused to provide

4    responses, claiming that because the original deadline had passed (during the stay) there

5    was no longer *any* deadline by which it had to comply with the Order.[83]  Defendants also

6    refused to produce any discovery related to their trade dress claims, including the

7    compelled responses to Mattel's contention interrogatories, while their motion for

8    protective order was pending.  Mattel thus had to move to compel a second time.  Three

9    months after MGA should have provided responses, the Discovery Master rejected

10   MGA's claims that it need not comply with a Court Order and imposed sanctions.[84]  The

11   Discovery Master also rejected defendants' request for a stay as directly contrary to the

12   Court's February Order that "[t]here is no stay on discovery.  Period."[85]

13       (2) ***Larian Hard Drives.***  On February 27, 2008, the Court held that Mattel was

14   entitled to access Isaac Larian's hard drives to review them for destruction of evidence.[86]

15   In March 2009, however, Larian refused to supplement that production.  He claimed the

16   Court's Order only applied to the hard drives available in 2008 and somehow immunized

17   him from his duty to supplement his production.[87]  Again, Mattel was forced to move to

18

19   [81]   Order Granting in Part and Denying in Part Mattel's Motion to Compel Responses to Interrogatory Nos. 27-44 and 46-50 by the MGA Parties, dated February 15, 2008, at 22, Zeller Dec., Exh. 40.

20   [82]   Order Granting MGA Parties' Motion for Clarification Regarding Portions of February 15, 2008 Order Granting in Part and Denying in Part Mattel's Motion to Compel Responses to Interrogatory Nos. 27-44 and 46-50 by the MGA Parties, dated April 22, 2008, at 2-3, Zeller Dec., Exh. 15.

21   [83]   See Phase 2 Discovery Matter Order No. 17, at 14-18, Zeller Dec., Exh. 19.

22   [84]   See Phase 2 Discovery Matter Order No. 17, at 14-18, Zeller Dec., Exh. 19.

23   [85]   Id. at 10.

24   [86]   See Order Granting Mattel, Inc.'s Motion Objecting to Portions of Discovery Master's December 31, 2007 Order Regarding Hard Drives, dated February 27, 2008, Zeller Dec., Exh. 41.

25   [87]   Phase 2 Discovery Matter Order No. 34, dated May 18, 2009, at 8, Zeller Dec., Exh. 20.

26

27

28

1  compel, and the Discovery Master reaffirmed the Court's Order and Larian's duties.[88]  As

2  of the time of this filing, however, Mattel still has not received the compelled hard

3  drives, though today is last day by which they were ordered to be produced.

4       (3) ***Payments to Former Mattel Employees.***  Mattel has also been forced to move

5  to compel MGA to supplement its production of documents relating to payments it made

6  to former Mattel employees.[89]  MGA was ordered to produce these documents as to

7  certain employees in August of 2007.[90]  In May 2009, MGA  was ordered to answer

8  Mattel's interrogatories asking for information about such payments.  The August 2007

9  productions included documents related to transactions nowhere mentioned in the 2009

10  interrogatory responses;[91] equally telling, the 2009 responses referenced payments to

11  individuals specifically covered by the 2007 Order but nowhere documented in that

12  production.[92]  The inconsistencies show that both were deficient and that Mattel has yet

13  to receive directly relevant, compelled information.  Mattel's motion to enforce both the

14  2007 and 2009 Discovery Master Orders is pending.

15  **II.**  **A SUBSTANTIAL EXTENSION OF TIME IS REQUIRED**

16       A significant amount of discovery remains to be conducted before the Phase 2 trial

17  can proceed.  Even in an ordinary case it would take many months to conduct this

---

[88]  Id. at 11-13.

[89]  See Mattel, Inc.'s Notice of Motion and Motion to Enforce Prior Court Orders and to Compel Re: Interrogatory Nos. 68 and 69 and RFPs 75, 85, 95, 105, and 115 of Mattel's First Set of Requests Re Unfair Competition, dated July 22, 2009, Zeller Dec., Exh. 38.

[90]  Order Granting in Part and Denying in Part Mattel's Motion to Compel Production of Documents By MGA; Denying Request for Monetary Sanctions, dated August 13, 2007, at 12, Zeller Dec., Exh. 42.

[91]  Compare Supplemental Response of MGA Entertainment, Inc. to Interrogatory Nos. 68 and 69 Pursuant to Discovery Master's Order of March 31, 2009, dated June 15, 2009, Zeller Dec., Exh. 43, with, e.g., MGA 0331959 – MGA 0331968, at Rows 5, 13, and 15, Columns B, O, P, and U (reflecting bonus payments to Machado and Vargas), Zeller Dec., Exh. 44; MGA 0602425, at Row 294, Columns A and H (payment to Paula Garcia), Zeller Dec., Exh. 45; MGA 0218366 at Row 431, Columns A and K (payment to Maria Salazar), Zeller Dec., Exh. 46.

[92]  Zeller Dec., ¶ 51.

discovery.  In this case, where defendants routinely refuse to produce information unless ordered, and sometimes unless repeatedly ordered, and where the conduct involves foreign affairs and witnesses and entities, a substantial extension must issue to enable discovery to be completed.

MGA, even while it opposes any extension of time, itself has recognized that much discovery remains to be conducted.  For example, MGA's new counsel has demanded that Mattel unilaterally provide custodial records for all documents—some one million pages—that Mattel already produced.[93]  Counsel has also asserted that defendants cannot agree to serve less than the 125 interrogatories they assert they have been allotted—of which, they claim, fewer than 20 have been served to date.[94]  And, while counsel rejected Mattel's proposal that the parties agree to increase the deposition limit to 25 for Phase 2 (starting now, since none have been taken), counsel does not dispute that more than 10 are required and simply wishes to assess how many are needed on a case by case basis going forward.[95]

It has simply not been possible to "streamline discovery," the premise of the Court's original scheduling order.  Since January, a month was lost to MGA's self-imposed stay on discovery (the auditor and Mattel's contemplated summary judgment motion being the excuses); another month was lost to the Court's stay; there have been two substitutions of counsel, a new complaint vastly expanding the pattern of wrongdoing, and a new answer alleging thirteen new defenses; Mattel must deal with witnesses in Mexico and Canada, and a critical entity that is registered in Nevis so even

---

[93]   See MGA Parties' Motion to Compel Previously Collected Custodian Information of Produced Documents and to Require Future Collection and Production of Custodial Data; Motion for Sanctions, dated July 24, 2009, Zeller Dec., Exh. 36.

[94]   MGA Entertainment, Inc.'s Opposition to Mattel, Inc.'s Motion For Protective Order Regarding MGA's First Set of Phase 2 Interrogatories, dated July 7, 2009, Zeller Dec., Exh. 71.

[95]   Email from Annette Hurst to Dylan Proctor, dated July 26, 2009, Zeller Dec., Exh. 70.

its bare identity can be hidden.  Mattel does not yet know who/what Lexington is, much less where the $49 million that has not already been traced to Larian in the Wachovia transaction actually came from.  In the best of circumstances, Mattel will learn the identities of the parties involved in that transaction and the substance of MGA's defenses by September, and will be able to seek discovery based on what it learns.  But the discovery deadline would, at that point, be a mere three months away (with expert reports due by October), which is simply not enough time for a case as hard-fought and complex as this one.[96]

MGA cannot credibly argue that discovery can be completed in the short period of time remaining; to insist that it should be, in the face of what has not been done to date, is fundamentally unfair.  Even a short modification will simply not be sufficient for Mattel to uncover the evidence relevant to its claims, and will merely serve to encourage defendants' persistent attempts to run out the clock.  Mattel respectfully seeks at least eight additional months to complete discovery.

## Conclusion

For all these reasons, Mattel respectfully requests that the Court modify the Scheduling Order in this action to extend all deadlines by eight months.

DATED:  July 27, 2009             QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP


                                   By  /s/ Michael T. Zeller
                                      Michael T. Zeller
                                      Attorney for Mattel, Inc.

---

[96]   Far fewer disruptions have been found more than sufficient to modify scheduling orders in cases far less complex than this one.  See, e.g., Nobles v. Rural Comm. Ins. Serv., 303 F. Supp. 2d 1279, 1284-1285 (M.D. Ala. 2004) (procedural delays as a result of transfers of case to multiple judges favored modification of scheduling order).

MATTEL, INC.'S MOTION TO MODIFY SCHEDULING ORDER