# EXHIBIT 1

1   MELINDA HAAG (State Bar No. 132612)
    mhaag@orrick.com
2   ANNETTE L. HURST (State Bar No. 148738)
    ahurst@orrick.com
3   WARRINGTON S. PARKER III (State Bar No. 148003)
    wparker@orrick.com
4   ORRICK, HERRINGTON & SUTCLIFFE LLP
    The Orrick Building
5   405 Howard Street
    San Francisco, CA 94105
6   Telephone:  +1-415-773-5700
    Facsimile:  +1-415-773-5759
7
    WILLIAM A. MOLINSKI (State Bar No. 145186)
8   wmolinski@orrick.com
    ORRICK, HERRINGTON & SUTCLIFFE LLP
9   777 South Figueroa Street, Suite 3200
    Los Angeles, CA  90017
10  Telephone:  +1-213-629-2020
    Facsimile:  +1-213-612-2499
11
    Attorneys for MGA Parties
12

13              UNITED STATES DISTRICT COURT

14              CENTRAL DISTRICT OF CALIFORNIA

15                    EASTERN DIVISION

16  | CARTER BRYANT, an individual, | Case No. CV 04-9049 SGL (RNBx) |
17  | Plaintiff, | Consolidated with: Case No. CV 04-9059 and Case No. CV 05-2727 |
18  | v. | |
19  | MATTEL, INC., a Delaware Corporation, | **DISCOVERY MATTER**<br>**[To Be Heard By Discovery Master Robert C. O'Brien]** |
20  | | |
21  | Defendant. | **MGA PARTIES' OPPOSITION TO MOTION TO COMPEL MGA MEXICO TO PRODUCE DOCUMENTS AND THINGS IN RESPONSE TO MATTEL'S FIRST, SECOND, AND THIRD SETS OF REQUESTS FOR PRODUCTION TO MGA MEXICO** |
22  | | |
23  | AND CONSOLIDATED ACTIONS | |
24  | | |
25  | | Date:     TBD<br>Time:     TBD<br>Place:    Arent Fox LLP<br>**Phase 2:** |
26  | | |
27  | | Disc. Cut-off:   Dec. 11, 2009<br>Pre-trial Con.:  Mar. 1, 2010<br>Trial Date:  Mar. 23, 2010 |
28  | | |

EXHIBIT ___1___
PAGE ___12___

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ...........................................................................1
II.     STATEMENT OF FACTS...........................................................2
III.    MATTEL'S MOTION SHOULD BE DENIED IN ITS ENTIRETY ............4
        A.   Mattel's Motion to Compel is Unreasonable and Improper .................4
        B.   Mattel's Motion Is Procedurally Defective............................7
        C.   Mattel's Requests Are Improper .........................................8
             1.   Mattel's Defined Terms Are Objectionable .............................9
             2.   Mattel's Requests Seek Irrelevant Information .......................12
             3.   Mattel's Requests Are Overbroad and Unduly
                  Burdensome ....................................................14
        D.   MGA Mexico's Objections To The Requests Are Proper.................16
IV.     MATTEL SHOULD BE SANCTIONED....................................................17
V.      CONCLUSION ..............................................................................19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

OPPOSITION REGARDING MOTION TO COMPEL PRODUCTION
BY MGA MEXICO (SETS ONE - THREE)
CV-04-0049 SGL (RNBx)

EXHIBIT ___1___
PAGE ___13___

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3
## CASES

4
*Davis v. Kissinger,*
  2009 U.S. Dist. LEXIS 2828 (E.D. Cal. Jan. 8, 2009) ......................................14

5
*Epstein v. MCA, Inc.,*
6
  54 F.3d 1422 (9th Cir. 1995) ..........................................................................12

7
*Equal Rights Ctr. v. Archstone-Smith Trust,*
  251 F.R.D. 168 (D. Md. 2008) ...........................................................................5

8
*Estate of Young v. Holmes,*
9
  134 F.R.D. 291 (D. Nev. 1991) ........................................................................16

10
*Haensel v. Chrysler Corp.,*
  1997 U.S. Dist. LEXIS 13160 (E.D. La. Aug. 22, 1997)..................................17

11

12
*Kilgore v. Mandeville,*
  2009 U.S. Dist. LEXIS 29203 (E.D. Cal. Mar. 26, 2009)...................................8

13
*O'Brien v. Maui County,*
  2002 U.S. App. LEXIS 10835 (9th Cir. May 6, 2002) .....................................14

14

15
*United States v. International Union of Petroleum & Indus. Workers,*
  870 F.2d 1450 (9th Cir. 1989) ............................................................................9

16
*Westhemeco, Ltd. v. New Hampshire Ins. Co.,*
17
  82 F.R.D. 702 (S.D.N.Y. 1979) ........................................................................14

18
## RULES

19
Fed. R. Civ. P.
20
  26 .........................................................................................................................8
  26(b)(1) ...............................................................................................................8
21
  26(b)(2)(C)(i) ......................................................................................................5
  34 .........................................................................................................................8
  34(a) ....................................................................................................................8

22

23

24

25

26

27

28

OPPOSITION REGARDING MOTION TO COMPEL PRODUCTION
BY MGA MEXICO (SETS ONE – THREE)
CV-04-0049 SGL (RNBx)

**EXHIBIT** 1
**PAGE** 14

1    Plaintiff and Counter-Defendant MGA Entertainment, Inc. and

2    Counter-Defendants MGA Entertainment HK, Ltd., MGAE de Mexico S.R.L. de

3    C.V., and Isaac Larian ("MGA Parties") respectfully submit this Opposition to

4    Defendant Mattel, Inc.'s ("Mattel") Motion to Compel the Production of

5    Documents and Things responsive to Mattel's First, Second and Third Sets of

6    Requests for Production.

7    **I.      INTRODUCTION**

8    Mattel is currently seeking to compel production of documents by

9    MGAE de Mexico, S.R.L. de C.V. ("MGA Mexico") in response to more than

10   650 document requests,[1] including nearly 600 separate document requests in this

11   motion alone.

12   More than 4.2 million pages of documents have already been produced

13   by the MGA Parties. With this amount of production, it is hard to imagine how

14   each and every one of the almost 600 requests at issue in this motion is not

15   duplicative of earlier discovery. Moreover, by not eliminating even one single

16   request or agreeing to any limitation of the language therein, Mattel apparently

17   believes it has written almost 600 requests that are relevant, narrowly tailored and

18   not unnecessarily burdensome.

19   Moreover, Mattel cannot make any such showing of relevance by

20   simply asserting that hundreds of requests are relevant to broad issues in the case.

21   Mattel has made no effort to justify the relevance of any particular requests, as the

22   law requires. Instead, Mattel hopes that if the Court finds its requests overbroad,

23   the court will rewrite Mattel's requests so that the requests require the production

24   _____

25   [1] On July 15, 2009, Mattel filed two separate motions to compel production by
     MGA Mexico. Docket Document Nos. 5791 and 5792. The instant motion to
26   compel seeks production of documents in response to each and every document
     request included in its First, Second and Third sets of requests for production, for a
27   total of 574 requests. The second motion to compel seeks production of documents
     in response to each and every document request included in Mattel's First Set of
28   "Phase Two" requests for production, including 83 requests. Together, the motions
     seek to compel production in response to 657 separate requests.

- 1 -           OPPOSITION REGARDING MOTION TO COMPEL PRODUCTION
                                                                 BY MGA MEXICO (SETS ONE – THREE)
                                                                 CV-04-0049 SGL (RNBx)

EXHIBIT ___1___
PAGE ___15___

1   only of relevant information. The Court should not do Mattel's work, and, instead
2   should deny this Motion. At this juncture, Mattel should be required to examine its
3   requests and the documents already available to it (either publicly or through the
4   MGA Parties' numerous productions) and identify which of its requests are relevant
5   to the remaining claims and defenses in this case and have not already received a
6   response. Alternatively, Mattel should be required to re-propound more narrowed
7   requests that seek only discoverable information. To force MGA Mexico to
8   produce documents in response to each of the almost 600 requests at issue here
9   would be unfair and wasteful, and would require MGA Mexico to expend
10  innumerable hours to reproduce documents that have already been produced and are
11  available to Mattel.

12  **II.   STATEMENT OF FACTS**

13          Discovery in this case has been ongoing for years. Mattel has
14  propounded nearly 3,000 requests for production to the MGA Parties. In response,
15  the MGA Parties have produced more than 4.2 million documents. However,
16  Mattel wants to use the reopening of Phase 2 discovery as an opportunity to badger
17  MGA Mexico into reproducing thousands of documents already produced in this
18  action, either by MGA Mexico or by another MGA party.

19          Specifically, Mattel seeks to compel the production of documents by
20  MGA Mexico for each and every request for production included in its First,
21  Second and Third Requests for Production of Documents. Mattel's First Set of
22  Requests includes 148 documents. Mattel's Second Set of Requests includes
23  420 separate requests. Mattel's Third Set of Requests includes six requests. Each
24  of the document requests included in the Second and Third Set of Requests was
25  also served on MGA Entertainment.[2] MGA Mexico served timely and detailed

---

26  [2] *Compare* Mattel, Inc.'s Second Set of Requests for Documents and Things to
27  MGAE de Mexico, S.R.L. de C.V., Declaration of Marshall M. Searcy III in
    Support of Mattel, Inc.'s Motion to Compel MGA Mexico to Produce Documents
28  and Things Responsive to Mattel's First, Second and Third Sets of Requests for
    Production to MGA Mexico ("Searcy Dec."), Ex. 3, *and* Mattel, Inc.'s Third Set of

EXHIBIT ___1___
PAGE ___16___

1    objections to each of these sets of requests.  MGA Mexico also agreed to produce

2    documents in response to 309 separate requests.

3            In April 2, 2009, Mattel sent a letter to MGA Mexico demanding the

4    production of all documents responsive to each of the 574 document requests

5    included in the three sets.[3]  Mattel's letter asserted that not a single one of MGA

6    Mexico's objections was well-received.  Moreover, Mattel asserted that MGA

7    Mexico had not yet produced a single document in this case.

8            During the meet-and-confer process, MGA Mexico explained that

9    Mattel was incorrect.[4]  First, MGA Mexico explained that it had agreed to produce

10   documents in response to 309 of the requests at issue.  Moreover, MGA Mexico

11   explained that documents from MGA Mexico had, in fact, been previously

12   produced in the action and were available to Mattel.  Still not satisfied, Mattel

13   insisted that MGA Mexico identify each and every document within the more than

14   4 million pages of MGA's production that MGA Mexico had individually

15   produced.[5]

16           Moreover, with respect to the remaining 165 requests, where MGA

17   Mexico had previously refused to produce documents, MGA Mexico indicated that

18   it would consider a compromise with Mattel.[6]  MGA Mexico asked Mattel to

19   

20   Requests for Documents and Things to MGAE de Mexico, S.R.L. de C.V., Searcy
     Dec., Ex. 5, *with* Mattel, Inc.'s Sixth Set of Request for Documents and Things to

21   MGA Entertainment, Inc., Declaration of William A. Molinski in Support of MGA
     Parties' Opposition to Mattel, Inc.'s Motion to Compel MGA Mexico to Produce

22   Documents and Things Responsive to Mattel's First, Second and Third Sets of
     Requests for Production to MGA Mexico ("Molinski Dec."), Ex. A *and* Mattel,

23   Inc.'s Seventh Set of Request for Documents and Things to MGA Entertainment,
     Inc., Molinski Dec., Ex. B.

24   [3] Letter from Marshall Searcy to Amman Khan, dated April 2, 2009, Searcy Dec.,
     Ex. 7.

25   [4] Letter from Amman Khan to Marshall Searcy, dated April 9, 2009, Searcy Dec.,
     Ex. 8.

26   [5] Letter from Marshall Searcy to Amman Khan, dated April 10, 2009, Searcy Dec.,
     Ex. 9; letter from Marshall Searcy to Amman Khan, dated April 23, 2009, Searcy

27   Dec., Ex. 11.

     [6] Letter from Marshall Searcy to Amman Khan, dated April 23, 2009, Searcy Dec.,
28   Ex. 11.

OPPOSITION REGARDING MOTION TO COMPEL PRODUCTION
BY MGA MEXICO (SETS ONE – THREE)
CV-04-0049 SGL (RNBx)

EXHIBIT    1
PAGE    17

1   identify which of those remaining requests Mattel still considered to be relevant and

2   not within the documents produced by the MGA Parties. Rather than make any

3   similar gesture of compromise, Mattel simply demanded production in response to

4   each and every one of the 165 remaining requests.[7] Mattel's motion also illustrates

5   its unwillingness to compromise, as it includes not only the 165 remaining requests,

6   but also the 309 requests to which MGM Mexico had previously agreed.

7   **III.   MATTEL'S MOTION SHOULD BE DENIED IN ITS ENTIRETY.**

8       **A.   Mattel's Motion to Compel is Unreasonable and Improper.**

9           The fact that Mattel is seeking to compel production with respect to

10   almost 600 document requests in this single motion demonstrates the burden that

11   Mattel is attempting to place on MGA Mexico. Add to this the fact that Mattel has

12   refused to narrow or limit even a single one of these requests, and the bravado of

13   Mattel's motion becomes too much.

14           First, MGA Mexico has served more than 1,000 pages of detailed

15   objections to the 574 requests.[8] However, Mattel's meet-and-confer efforts and its

16   motion wholly disregard them. Rather than respond to any of MGA Mexico's

17   objections in context, Mattel argues that each and every objection asserted by MGA

18   Mexico is improper. Not only is this unpersuasive where the text of the request

19   itself is absent, it is remarkable that Mattel believes that each and every one of its

20   574 requests at issue is wholly unobjectionable.

21           Second, there has been significant disclosure already made with

22   respect to the requests at issue. Importantly, MGA Mexico has agreed to produce

23   documents in response to more than 300 of the requests at issue.[9] Additionally,

24   _____

25   [7] *Id.*
    [8] MGA Mexico's Objections and Responses to Mattel Inc.'s First Set of Requests
    for Documents and Things, Searcy Dec., Ex. 2; MGA Mexico's Response to

26   Mattel, Inc.'s Second Set of Requests for Documents and Things, Searcy Dec.,
    Ex. 4; MGA Mexico's Response to Mattel, Inc.'s Third Set of Requests for

27   Documents and Things, Searcy Dec., Ex. 6.
    [9] Accordingly, the motion is moot with respect to those 309 requests (Mattel, Inc.'s

28   Second Set of Requests for Documents and Things to MGAE de Mexico. S.R.L. de

**EXHIBIT   1**
**PAGE   18**

1  many of the discovery requests at issue are duplicative of those served on other

2  MGA Parties.[10]  The MGA Parties have produced more than 4.2 million pages of

3  documents in response to these and other requests for production propounded by

4  Mattel.[11]  However, Mattel wants to wholly disregard this production, including the

5  documents it knows have already been produced, and require MGA Mexico to

6  reproduce the documents.[12]  For example, Mattel insists that MGA Mexico has not

7  produced any documents in this action, even though Mattel has previously

8  acknowledged that it has received a "CD contain[ing] the documents seized by

9  Mexican authorities from MGA's office in Mexico."[13]  This admission is even more

10  significant given the fact that Mattel is seeking to compel production of documents

11  "seized by Mexican authorities from [MGA Mexico's] office."[14]  Additionally,

12  Mattel has refused to conduct simple searches in the documents already produced,

13  which would demonstrate that MGA Mexico documents have been produced.[15]

14  Accordingly, Mattel's insistence on duplicative production by MGA Mexico should

15  be denied because "the discovery sought is unreasonably cumulative or

16  duplicative." Fed. R. Civ. P. 26(b)(2)(C)(i); *Equal Rights Ctr. v. Archstone-Smith*

17

18  C.V. ("Second Set of Requests"), Nos. 1-8, 13-22, 25, 42-25, 54-58, 61, 71-85, 89-
96, 101-104, 106, 117-147, 151-167, 174-175, 177-179, 181-192, 195-199, 201-
19  219, 221-222, 227-248, 253-267, 277-299, 302-316, 329-343, 345-385, 387-398,
400-410, 412-418). The only requests properly at issue are Mattel, Inc.'s First Set
20  of Requests for Documents and Things to MGAE de Mexico. S.R.L. de C.V. ("First
Set of Requests"), Nos. 1-148; Second Set of Requests, Nos. 9-12, 23-24, 26-41,
21  46-53, 59-60, 62-70, 86-88, 97-100, 105, 107-116, 148-150, 168-173, 176, 180,
193-94, 200, 220, 223-226, 249-252, 268-276, 300-301, 317-328, 344, 386, 399,
22  411, 419-420, and Mattel, Inc.'s Third Set of Requests for Documents and Things
to MGAE de Mexico. S.R.L. de C.V. ("Third Set of Requests"), Nos. 1-6.
23  [10] *See* footnote 2, *supra*.
[11] Letter from Amman Khan to Marshall Searcy, dated April 9, 2009, Searcy Dec.,
24  Ex. 8.
[12] Letter from Marshall Searcy to Amman Khan, dated April 2, 2009, Searcy Dec.,
25  Ex. 7.
[13] Letter from Jon Corey to Andrew Temkin, dated February 4, 2008, Molinski
26  Dec., Ex. C.
[14] First Set of Requests, No. 6.
27  [15] Letter from Marshall Searcy to Amman Khan, dated April 23, 2009, Searcy Dec.,
28  Ex. 11.

OPPOSITION REGARDING MOTION TO COMPEL PRODUCTION
BY MGA MEXICO (SETS ONE – THREE)
CV-04-0049 SGL (RNBx)

EXHIBIT  1
PAGE  19

1     *Trust*, 251 F.R.D. 168, 172 (D. Md. 2008) (denying motion to compel because

2     burden was unjustified where the requesting party already had information or it

3     could be obtained through a less burdensome and expensive method).

4          Despite this background, Mattel insists that MGA Mexico's production

5     of documents in response to the 574 requests is necessary and neither unreasonably

6     duplicative nor unduly burdensome. Given the volume of documents already

7     produced, it is clear that Mattel has not given any consideration to whether the

8     specific requests at issue are still relevant or necessary. At best, Mattel seeks to

9     justify relevance of the general topic or subject matter of the request.[16] However,

10    the propriety of a request is not judged by whether the request relates to a relevant

11    topic, but whether the request, as worded, seeks only relevant information. Mattel

12    should not be allowed to continue to badger all of the MGA Parties to produce

13    documents that have already been produced in this action.

14         Mattel's argument that MGA Mexico's possession of documents holds

15    specific importance is insufficient to support each one of the almost 600 requests.

16    In almost every instance, it is irrelevant if an MGA-created document is in the

17    possession of MGA Mexico. Additionally, MGA Mexico's possession of non-

18    MGA created documents does not have significance for all claims in this action.

19    For example, Mattel's motion argues that 420 requests relate to the MGA Parties'

20    affirmative defense of unclean hands. This defense relates to actions taken by

21    Mattel, not MGA, and thus, the possession of any documents relating to Mattel's

22    impermissible actions is of no importance. Whether MGA Mexico or MGA

23    Enterprises is in possession of the evidence relating to Mattel's impermissible

24    conduct is immaterial; the important fact is Mattel's action. Given the limited

25    relevance of possession, it is an insufficient basis for Mattel's argument that MGA

26

---

27    [16] *See* Memorandum of Points and Authorities in Support of Mattel Inc.'s Motion to Compel MGA Mexico to Produce Documents and Things in Response to Mattel's

28    First, Second, and Third Sets of Requests for Production to MGA Mexico ("Mattel's Motion to Compel"), pp. 18-31.

OPPOSITION REGARDING MOTION TO COMPEL PRODUCTION
BY MGA MEXICO (SETS ONE – THREE)
CV-04-0049 SGL (RNBx)

EXHIBIT __1__
PAGE __20__

1  Mexico must reproduce documents in response to all 574 document requests at
2  issue here.

3  　　　　Moreover, it is clear from the face of many documents produced
4  whether it was in the possession of MGA Mexico.[17]  Not only is it clear that the
5  document belongs to MGA Mexico if it is written in Spanish, other documents,
6  such as e-mails and memoranda, which list the authors and recipients, provide
7  information sufficient for Mattel to determine whether the documents were in MGA
8  Mexico's possession.  Alternatively, Mattel may serve other discovery requests,
9  such as interrogatories, to verify whether MGA Mexico had possession of any
10  particular document.

11  　　　　Mattel's representation that more than 400 requests are relevant to the
12  issue of unclean hands is also demonstrative of the absurdity of its position.  If
13  Mattel is to be believed that more than 400 requests are properly aimed at this
14  specific affirmative defense, it would be reasonable to extrapolate from that
15  representation that Mattel believes it should be permitted to propound more than
16  14,000 requests for production in relation to the 35 affirmative defenses asserted by
17  the MGA Parties alone, to say nothing of the affirmative claims of any party.
18  (Moreover, according to Mattel's motion, it should be permitted to serve all of the
19  14,000 requests on each of the MGA Parties individually and require separate
20  productions by each MGA party.)  Such posturing should make it clear that
21  Mattel's requests and this motion to compel are wholly unreasonable and amount to
22  an attempt to harass MGA Mexico.

23  　　B.　　**Mattel's Motion Is Procedurally Defective.**

24  　　　　Mattel's motion should be denied because it has not provided the
25  necessary information for each of the 574 requests.  It is Mattel's "burden to
26  inform[] the court which discovery requests are the subject of [its] motion to

27  ―――――――――――
28  [17] Letter from Marshall Searcy to Amman Khan, dated April 23, 2009, Searcy Dec., Ex. 11.

OHS West:260697810.3　　　　- 7 -　　　　OPPOSITION REGARDING MOTION TO COMPEL PRODUCTION BY MGA MEXICO (SETS ONE - THREE) CV-04-0049 SGL (RNBx)

EXHIBIT __1__
PAGE __21__

1   compel, which of defendants' responses are disputed, why [it] believes defendants'

2   responses are deficient, why defendants' objections are not justified, and why the

3   information [it] seeks through discovery is relevant to the prosecution of this

4   action." *Kilgore v. Mandeville*, 2009 U.S. Dist. LEXIS 29203, at \*5-\*6 (E.D. Cal.

5   Mar. 26, 2009). It simply is not enough for Mattel to broadly categorize its requests

6   and summarily dismiss each of MGA Mexico's detailed objections and responses to

7   the requests. Moreover, Mattel has not presented any information to demonstrate

8   the insufficiency of documents produced in response to its demands. At this stage

9   in the case, with more than 4.2 million pages of documents at its disposal, Mattel

10  should be required to specifically justify each of the 574 requests at issue.

11          The lack of information provided by Mattel and the burden imposed by

12  Mattel's motion is demonstrated by Mattel's lack of a separate statement. Mattel

13  buries in a footnote the fact that it has intentionally opted not to prepare a separate

14  statement.[18] The fact that Mattel declined to present a separate statement speaks

15  volumes about the unreasonableness of its position that production in response to

16  each of the requests is not unduly burdensome. If it is too burdensome for Mattel to

17  even type each of the requests (and MGA Mexico's detailed objections), Mattel

18  cannot argue in good faith that the production that it is requesting is not unduly

19  burdensome.

20      C.      **Mattel's Requests Are Improper.**

21          Mattel argues that it is the master of its demands; however, its

22  demands are limited by the bounds of Federal Rules of Civil Procedure, including

23  Rules 26 and 34. Under these rules, Mattel may only ask for relevant, non-

24  privileged documents. Fed. R. Civ. P. 26(b)(1). Additionally, Mattel may only ask

25  MGA Mexico to produce documents that are within MGA Mexico's "possession,

26  custody, or control." Fed. R. Civ. P. 34(a). Courts have interpreted this to mean

27

28  [18] Mattel's Motion to Compel, fn. 14.

EXHIBIT __1__

PAGE __22__

1   that the responding party must have "legal authority" over the requested documents.

2   *United States v. International Union of Petroleum & Indus. Workers*, 870 F.2d

3   1450, 1452 (9th Cir. 1989). The burden is on Mattel to demonstrate that its requests

4   are, in fact, so limited. *Id.* (explaining that "the party seeking production of the

5   documents has the burden of proving that the opposing party has such control").

6   Where Mattel's requests go beyond these bounds, MGA Mexico has the right to

7   object to the requests and has done so.[19]

8                    **1.   Mattel's Defined Terms Are Objectionable.**

9              Mattel may not use defined terms to expand beyond the discovery

10   limitations imposed by the Federal Rules of Civil Procedure. Because Mattel's

11   defined terms do just that, MGA Mexico has properly objected to them.

12              The definitions of "MACHADO", "TRUEBA" and "VARGAS" are

13   impermissibly overbroad.[20] The definitions of "MACHADO", "TRUEBA" and

14   "VARGAS" include "all of [his/her] current and former employees, agents,

15   representatives, attorneys, accountants, vendors, consultants, independent

16   contractors, predecessors-in-interest and successors-in-interest, and any other

17   PERSON acting on their behalf, pursuant to their authority, or subject to their

18   control." Even assuming that MGA Mexico does have the power to require

19   production by these individuals, it does not have the legal authority to demand

20   production from the individuals "acting on their behalf, pursuant to their authority,

21   or subject to their control." To obtain such documents, Mattel must direct their

22   requests to Machado, Trueba and Vargas themselves, who would have the legal

23   authority to request production from persons "acting on their benefit, pursuant to

24   their authority, or subject to their control."

25

26   _____
     [19] Nothing in this opposition should be deemed a waiver of any of MGA Mexico's
27   objections included in it's objections and responses to the production requests at
     issue. The requests identified herein are meant to be examples only and not
28   exhaustive lists of objectionable requests.
     [20] First Set of Requests, Searcy Dec., Ex. 1 at p. 7.

OPPOSITION REGARDING MOTION TO COMPEL PRODUCTION
BY MGA MEXICO (SETS ONE   THREE)
CV-04-0049 SGL (RNBx)

EXHIBIT   1
PAGE   23

1          Mattel's proposed definitions of "YOU", "YOUR" and "MGA" are
2    similarly impermissible.[21]  Mattel's definition of these terms includes, without
3    limitation, "current or former directors, officers, employees, agents, contractors,
4    attorneys, accountants, or representatives of [MGA Mexico] and any corporation,
5    partnership, association, trust, parent, subsidiary, division, affiliate, predecessor-in-
6    interest and successor-in-interest, and any other PERSON acting on its behalf."
7    Not only does this definition make it difficult for MGA Mexico to determine the
8    limits of its obligation, it goes beyond the permissible scope of requests.  Absent an
9    objection, this definition would require that MGA Mexico produce documents in
10   the possession and control of MGA Entertainment or MGA Entertainment (HK)
11   Limited.  Considering that both of these entities are parties to this action, and there
12   is no justification for requiring MGA Mexico to produce documents held by any
13   related company (and Mattel has also propounded hundreds of document requests
14   on those entities), it is unreasonable to define MGA Mexico so as to require
15   production of documents outside of MGA Mexico's specific control.  Mattel has no
16   justification for making the requests so arduous, especially where Mattel has the
17   ability to request production by each MGA entity relevant to the dispute (and, in
18   fact, has done so).  Additionally, the definition would lead to some absurd results as
19   used.  For example, Mattel is demanding production of "YOUR phone records from
20   January 1, 2002 through the present."[22]  If Mattel's request is granted, with Mattel's
21   definition of "YOUR" still controlling, then MGA Mexico will arguably be
22   required to provide the personal telephone records of its "current or former
23   directors, officers, employees, agents, contractors, attorneys, accountants, or
24   representatives . . . and any corporation, partnership, association, trust, parent,
25   subsidiary, division, affiliate, predecessor-in-interest and successor-in-interest, and
26

_____

[21] First Set of Requests, Searcy Dec., Ex. 1 at p. 5; Second Set of Requests, Searcy
Dec., Ex. 3 at p. 273; Third Set of Requests, Searcy Dec., Ex. 5 at p. 1066.
[22] First Set of Requests, No. 35, Searcy Dec., Ex. 1.

OPPOSITION REGARDING MOTION TO COMPEL PRODUCTION
BY MGA MEXICO (SETS ONE – THREE)
CV-04-0049 SGL (RNBx)

EXHIBIT ___1___
PAGE ___24___

1   any other PERSON acting on its behalf" from 2002 to the present.[23]

2   Mattel's definition of "BRATZ" is impermissible.[24] The definition is

3   almost fifteen lines long and includes such broad language as "includes without

4   limitation any names, fashions, accessories, artwork, packaging, or any other

5   works, materials, matters, or items included or associated therewith." By trying to

6   include every possible related issue, Mattel has caused the defined word to lose any

7   defined boundary.

8   Mattel's definition of "FORMER MATTEL EMPLOYEE" includes

9   any Mattel employee who left Mattel to "join" MGA Mexico. Mattel does not

10  define the term "join" as used in this request. MGA Mexico's objections define

11  this term to prevent argument over who in fact is within the scope of the requests.

12  The definition of "MATTEL DOCUMENTS" includes any document

13  "taken from MATTEL" without any requirement that the document be authored by

14  Mattel. Accordingly, this definition includes any document, even if a publicly

15  available document with no relation to Mattel (such as a newspaper or magazine

16  that had been at Mattel). Absent an identifiable limitation, "MATTEL

17  DOCUMENTS" includes numerous irrelevant documents.

18  Mattel's definition of "REFER OR RELATE TO" is impermissibly

19  broad. Not only does the definition include "refer to, discuss, constitute, evidence,

20  pertain to, mention, support, undermine, disprove, refute, contradict, negate, bear

21  on, touch on, contain, embody, reflect, identify, state, deal with, concern, comment

22  on, summarize, respond to, relate to, or describe", it also includes any *synonyms* of

23  those terms.[25] As a result, Mattel's definition would require the production of

24

25   [23] Even if MGA Mexico's proposed definition of "YOU/YOUR" is accepted, this
     request is still overbroad as it would arguably require the production of telephone

26   records of any current or previous employee.
     [24] First Set of Requests, Searcy Dec., Ex. 1 at pp. 5-6; Second Set of Requests,

27   Searcy Dec., Ex. 3 at p. 275.
     [25] First Set of Requests, Searcy Dec., Ex. 1 at p. 11; Second Set of Requests, Searcy

28   Dec., Ex. 3 at p. 277; Third Set of Requests, Searcy Dec., Ex. 5 at p. 1067.

OPPOSITION REGARDING MOTION TO COMPEL PRODUCTION
BY MGA MEXICO (SETS ONE - THREE)
CV-04-0049 SGL (RNBx)

EXHIBIT __1__
PAGE __25__

1  documents that have no material relation whatsoever to the specific request for
2  production itself, not to mention the issues and claims remaining in this action.

3                  **2.     Mattel's Requests Seek Irrelevant Information.**

4       Mattel may only seek information relevant to the Phase Two claims or
5  defenses. *See Epstein v. MCA, Inc.*, 54 F.3d 1422, 1423-24 (9th Cir. 1995)
6  (reversing grant of motion to compel where document requests sought information
7  not relevant to any claims). Mattel's motion to compel states that it is has complied
8  with this requirement for each of the 574 requests at issue by generally grouping its
9  requests into categories. However, with the volume of discovery already available,
10 it is not sufficient for Mattel to make broad unsupported statements speculating
11 how hundreds of its requests "relate to" general issues in this case.

12      For example,[26] Mattel states that all of the 420 requests in its third set of
13 document requests "relate to" its unclean hands defense. As explained above, the
14 claim that Mattel needs more than 420 requests to explore the unclean hands
15 defense is striking. Moreover, many of the requests are overbroad or do not in fact
16 "relate" to MGA Mexico's affirmative defense of unclean hands.[27] For example,
17 Mattel asks for documents relating to communications between MGA Mexico (or
18 its affiliates) and "any regulatory body or agency, including but not limited to,
19 government regulators, with responsibility or oversight authority for the acquisition
20 of or investment in ZAPF."[28] This request is not limited in time or subject matter.
21 Accordingly, any communication had with the "regulatory body or agency"

---

[26] Given the breadth of Mattel's motion to compel, MGA Mexico will not list each
request that asks for irrelevant information. MGA Mexico's relevance objections
are included in its objections and responses to the First, Second, and Third Set of
Requests. *See* MGA Mexico's Objections and Responses to Mattel Inc.'s First Set
of Requests for Documents and Things, Searcy Dec., Ex. 2; MGA Mexico's
Response to Mattel, Inc.'s Second Set of Requests for Documents and Things,
Searcy Dec., Ex. 4; MGA Mexico's Response to Mattel, Inc.'s Third Set of
Requests for Documents and Things, Searcy Dec., Ex. 6.
[27] *See, e.g.*, Requests 9-12, 23-24, 26-41, 46-53, 59-60, 62-70, 86-88, 97-100, 105,
107-116, 148-150, 168-173, 176, 180, 193-94, 200, 220, 223-226, 249-252,
268 276, 300-301, 317-328, 344, 386, 399, 411, 419-420.
[28] Third Set of Requests, No. 52.

OPPOSITION REGARDING MOTION TO COMPEL PRODUCTION
BY MGA MEXICO (SETS ONE – THREE)
CV-04-0049 SGL (RNBx)

EXHIBIT ___1___
PAGE ___26___

1    referenced would be responsive. Such information is not relevant to MGA

2    Mexico's affirmative defense that Mattel engaged in impermissible conduct.

3            Additionally, each of the requests relating to MGA Mexico's storage

4    facilities are not relevant to the affirmative claims and defenses in Phase 2.[29] The

5    requests relate to "any OFFSITE STORAGE FACILITIES",[30] used by MGA

6    Mexico or its "AFFILIATES",[31] and seek information relating to "all tangible

7    things".[32] No documents responsive to these requests, from documents identifying

8    off-site storage to documents recording tangible things that have been sent or

9    received from such sites, are relevant to any of the claims or issues in Phase 2.

10   Mattel's assertion that these requests are proper because they could relate to MGA

11   Mexico's document production procedures is simply a red herring. To investigate

12   MGA Mexico's document production, to the extent any such investigation is

13   permitted, Mattel may ask interrogatories regarding MGA Mexico's document

14   procedures or ask for documents relating to the document collection itself. Mattel's

15   assertion that such documents are relevant to its Phase 2 allegations rings hollow

16   when the date range of the requests is examined.[33] The requests seek information

17   relating to off-site storage beginning in 1995. However, Mattel alleges in its

18   counterclaims that MGA decided to establish in "late 2003 or early 2004".[34] Given

19   this inconsistency, it is apparent that Mattel has not crafted appropriate requests

20   with respect to storage issues, and MGA Mexico should not be compelled to

21   respond.

22

23   [29] *Id.*, Nos. 1-6.
     [30] *Id.*, Nos. 1, 3, 5.

24   [31] *Id.*, Nos. 2, 4, 6.

25   [32] *Id.*, Nos. 3-6.
     [33] Most of Mattel's requests have no time limitation. For those that do have a time

26   limitation, many ask for documents well beyond the "late 2003 or early 2004" time
     frame. *See, e.g.*, First Set of Requests, Nos. 35, 76, 118, 124, 127-130, 132-133,

27   136-139.
     [34] Mattel, Inc.'s Third Amended Answer in Case No. 05-2727 and Counterclaims,

28   Searcy Dec., Ex. 16, p. 1238.

EXHIBIT ___1___
PAGE ___27___

3.   <u>Mattel's Requests Are Overbroad and Unduly Burdensome</u>.

Mattel's requests are also overly broad and unduly burdensome. *O'Brien v. Maui County*, 2002 U.S. App. LEXIS 10835, at *9 (9th Cir. May 6, 2002) (upholding denial of motion to compel where requests were "irrelevant, overbroad, and unduly burdensome"); *Davis v. Kissinger*, 2009 U.S. Dist. LEXIS 2828, at *10 (E.D. Cal. Jan. 8, 2009) (denying motion to compel because the requests were overbroad, burdensome and not reasonably calculated to lead to the discovery of admissible evidence). Especially considering "the wealth of material already made available in this case", Mattel should not be allowed to compel responses where the requests are overly broad and unduly burdensome. *Westhemeco, Ltd. v. New Hampshire Ins. Co.*, 82 F.R.D. 702, 709 (S.D.N.Y. 1979).

For example, close to half of Mattel's requests ask for all documents that "REFER OR RELATE TO" the subject matter of the request.[35] With the "REFER OR RELATE TO" extrapolation included, the requests quickly become overbroad. For example, Mattel asks for all DOCUMENTS that REFER OR RELATE TO the electronic messaging SYSTEMS used by YOUR employees within the scope of their employment . . . including but not limited to electronic mail, instant messenger, telephone or voicemail . . . ."[36] All messages sent via these systems arguably "relate to" the systems themselves. Accordingly, such a request goes beyond those issues remaining for Phase 2 of this litigation.

Other requests encompass all documents ever provided by MGA to a "FORMER MATTEL EMPLOYEE" or vice versa.[37] For example, Mattel asks for

---

[35] First Set of Requests, Nos. 5, 7-10, 12, 16-34, 36-46, 48, 50-52, 62, 68, 72-78, 84, 93, 101, 111, 122, 125, 127-130, 132-135, 137, 139-140, 144-148; Second Set of Requests, Nos. 1, 3, 9-13, 22-25, 31, 35-42, 46, 49-50, 62-71, 86-88, 91, 96, 99, 104, 108-117, 136-160, 165-167, 169, 172-173, 175, 179, 181, 192-193, 197-199, 201, 208, 220-222, 224-227, 243, 245, 247-248, 250, 252-253, 260, 269-275, 277, 285-287, 298-299, 317-329, 337, 345, 356, 359, 361, 365, 369, 387, 400, 404, 408-410, 418-420.
[36] First Set of Requests, No. 139.
[37] *See, e.g., id.*, Nos. 3, 13, 14, 15, 18, 21, 26, 27, 28, 29, 30, 146, 147.

OPPOSITION REGARDING MOTION TO COMPEL PRODUCTION
BY MGA MEXICO (SETS ONE – THREE)
CV-04-0049 SGL (RNBx)

EXHIBIT ___1___
PAGE ___28___

1   "[a]ll DOCUMENTS given, sent, or transmitted from or shared by YOU to any

2   FORMER MATTEL EMPLOYEE prior to April 20, 2004"[38] and for "[a]ll

3   DOCUMENTS given, sent or transmitted to or shared with YOU from or by

4   whether directly or indirectly, any of the FORMER MATTEL EMPLOYEES prior

5   to April 20, 2004."[39]  These requests include each and every document exchanged

6   between MGA Mexico and any of the FORMER MATTEL EMPLOYEES.

7   However, Mattel's counterclaims are not so broad as to include aspects of MGA

8   Mexico's business that are unrelated to Mattel.  If Mattel's motion to compel is

9   granted with respect to this category, MGA Mexico will be required to produce all

10  documents and correspondence, regardless of subject matter, in response—*even*

11  *birthday cards*.  Mattel is not entitled to such broad discovery.  Another example is

12  "All DOCUMENTS which YOU contend were prepared by any FORMER

13  MATTEL EMPLOYEE for the benefit of YOU at any time prior to April 20,

14  2004"[40] would include any and all documents created by a former Mattel employee

15  during his or her employment at MGA Mexico, including each and every e-mail

16  that person ever sent.  Even an e-mail notifying someone at the company of an issue

17  as trivial as a lightbulb that needed to be changed would be a document that was

18  "prepared" "for the benefit of" MGA Mexico.

19          Some requests go even farther afield.  Mattel asks for "[a]ll

20  DOCUMENTS that REFER OR RELATE TO YOUR product or product line

21  offerings, or contemplated or proposed product or product line offerings . . . and all

22  DOCUMENTS that REFER OR RELATE TO changes or amendments or

23  contemplated or proposed changes or amendments thereto" for the years 2004

24  through 2007.[41]  Arguably almost any MGA Mexico document could in some

25  manner "relate to" the "contemplated", "proposed" or actual "product line

26  [38] *Id.*, No. 13.

27  [39] *Id.*, No. 14.

    [40] *Id.*, No. 3.

28  [41] *Id.*, Nos. 72-75.

EXHIBIT ___1___

PAGE ___29___

1    offerings".

2         Moreover, Mattel's motion impermissibly demands that MGA Mexico

3    produce documents that are readily accessible to Mattel through public sources.

4    *See Estate of Young v. Holmes*, 134 F.R.D. 291, 294 (D. Nev. 1991) (finding that a

5    party was not required to produce documents that the requesting party had equal

6    ability to obtain through public sources). For example, Mattel seeks "all

7    DOCUMENTS served, transmitted, received or filed in any lawsuit that MATTEL

8    allegedly assisted in against MGA . . . ."[42] Each document request that seeks

9    production of documents that are readily accessible to Mattel through public

10   sources is unreasonable given the volume of production and the number of requests

11   issued in this action.

12       **D.    MGA Mexico's Objections To The Requests Are Proper**.

13            MGA Mexico's objections to Mattel's discovery requests are proper.

14   MGA Mexico's objections to Mattel's requests for production are not "boilerplate"

15   objections and have been specifically tailored to each request. For example, MGA

16   Mexico lists each of the defined terms that it contends makes the request improper.

17   Additionally, MGA Mexico specifies, where possible, the portion of the request

18   that it contends makes it overbroad and unduly burdensome, including, but not

19   limited to, italicizing the portion of the request that MGA Mexico contends is

20   objectionable  In essence, MGA Mexico's objections provide Mattel helpful

21   information about what MGA Mexico thinks is wrong with the request. Such

22   detailed information is not properly labeled "boilerplate."

23            Mattel's argument that MGA's objections are boilerplate appears to be

24   based on the fact that MGA's objections are thorough. However, thorough

25   objections are not boilerplate. First, as discussed above, Mattel's requests

26   themselves are vague and overbroad. Without objections, MGA Mexico would be

27

28   _____
     [42] Second Set of Requests, No. 199.

OPPOSITION REGARDING MOTION TO COMPEL PRODUCTION
BY MGA MEXICO (SETS ONE – THREE)
CV-04-0049 SGL (RNBx)

EXHIBIT ___1___
PAGE ___30___

1  required to produce thousands (if not millions) of pages of unnecessary documents

2  in response to the requests. Second, given the parties' competition in the toy

3  industry, MGA Mexico is entitled to object to requests that necessarily relate to its

4  business in such a manner as to protect its interest in its business to the extent

5  permissible under the discovery rules. Finally, and perhaps most importantly, given

6  Mattel's broad interpretation of its right to discovery and its repeated refusal to

7  accept any limitation of discovery requests based upon the responding party's

8  arguments of what is reasonable, it is wholly reasonable for MGA Mexico to have

9  included all possible objections to each and every request for production

10  propounded by Mattel. In fact, Mattel's motion itself, which seeks production of

11  "all responsive, non-privileged documents" responsive to each and every one of the

12  574 requests included in its first, second and third sets of requests without any

13  limitation whatsoever, serves to illustrate why MGA Mexico's thorough and

14  detailed objections are not only reasonable but necessary.

15       Given that Mattel's requests are improper and MGA Mexico has

16  properly objected to them, the Discovery Master should deny Mattel's motion in its

17  entirety. The Discovery Master should not rewrite Mattel's irrelevant and

18  overbroad requests, so that they are narrowly tailored and proper. *See, e.g.,*

19  *Haensel v. Chrysler Corp.*, 1997 U.S. Dist. LEXIS 13160, *6 (E.D. La. Aug. 22,

20  1997) (refusing to "rewrite these requests for the plaintiffs in order to transform

21  them into narrow, specific inquiries"). That burden is properly placed on Mattel.

22  **IV.   MATTEL SHOULD BE SANCTIONED.**

23       Not only should Mattel's motion for sanctions against MGA Mexico

24  be denied, Mattel itself should be sanctioned for its use of an omnibus motion to

25  compel. Mattel's motion is particularly egregious for several reasons.

26       First, Mattel has moved to compel production for more than

27  300 documents requests to which MGA Mexico has agreed to provide documents in

28  response. Mattel then baldly asserts that MGA Mexico "appears not to have


EXHIBIT  1
PAGE  31

1  produced a single page of documents in this litigation."[43]  However, Mattel knows

2  that this statement is false.  This is contrary to Mattel's understanding of the MGA

3  Parties document production, as reflected in its meet-and-confer correspondence,

4  where Mattel suggested that MGA Mexico should identify each of the documents it

5  had produced in the MGA Parties' production.[44]  Additionally, Mattel has

6  previously acknowledged its receipt of MGA Mexico documents, including a "CD

7  contain[ing] the documents seized by Mexican authorities from MGA's office in

8  Mexico."[45]  In essence, Mattel refuses to review the documents previously provided

9  by the MGA Parties and instead has impermissibly attempted to shift the burden to

10  MGA Mexico to reproduce all documents previously produced by itself (or other

11  MGA Parties).  MGA Mattel's opposition to such a request is reasonable.

12          Second, Mattel's motion includes each and every request in its First,

13  Second and Third set of requests for production issued to MGA Mexico with no

14  limitations whatsoever.  At no point in the meet-and-confer process did Mattel offer

15  to eliminate or even narrow any of the 657 requests now at issue.  This is blatantly

16  apparent in Mattel's response to MGA Mexico's offer to compromise regarding the

17  165 requests where the MGA Mexico had previously not agreed to produce

18  documents.  Mattel did nothing more than relist all 165 requests in response to

19  MGA Mexico's good-faith offer to compromise.  Again, where MGA Mexico has

20  attempted to discuss legitimate limitations to the requests that would allow

21  production, Mattel should not be awarded sanctions for refusing to meaningfully

22  engage in the meet-and-confer process.

23          In fact, it is Mattel's hard-line position that has resulted in unnecessary

24  motion practice.  It is Mattel's behavior, if anything, that should be sanctioned.

25
_____
26  [43] Motion to Compel, p. 11.
    [44] Letter from Marshall Searcy to Amman Khan, dated April 23, 2009, Searcy Dec.,
27  Ex. 11.
    [45] Letter from Jon Corey to Andrew Temkin, dated February 4, 2008, Molinski
28  Dec., Ex. C.

EXHIBIT ___1___
PAGE ___32___

V.    **CONCLUSION**

The MGA Parties request that Mattel's motion be denied in its entirety and that the MGA Parties be awarded sanctions against Mattel for its omnibus motion to compel.

Dated:    July 22, 2009          ORRICK, HERRINGTON & SUTCLIFFE LLP


                                By: _____/s/ William A. Molinski_____
                                          William A. Molinski
                                Attorneys for MGA ENTERTAINMENT, INC.,
                                MGA ENTERTAINMENT HK, LTD., MGA de
                                MEXICO, S.R.L. de C.V., and ISAAC LARIAN

OHS West:260697810.3                      - 19 -

EXHIBIT ___1___
PAGE ___33___

1

## CERTIFICATE OF SERVICE

2          I, Maria Mercado-Navarro, declare:

3          I am more than eighteen years old and not a party to this action. My

4   business address is Orrick, Herrington & Sutcliffe LLP, 777 South Figueroa Street,

5   Suite 3200, Los Angeles, California 90017-5855.

6          I hereby certify that on July 22, 2009, I electronically filed the

7   following documents with the Clerk of the Court using the CM/ECF system which

8   will send notification of such filing to the parties listed below:

9   **MGA PARTIES' OPPOSITION TO MOTION TO COMPEL MGA
    MEXICO TO PRODUCE DOCUMENTS AND THINGS IN**
10  **RESPONSE TO MATTEL'S FIRST, SECOND, AND THIRD SETS OF**
    **REQUESTS FOR PRODUCTION TO MGA MEXICO**
11

12                 **SEE ATTACHED SERVICE LIST**

13          I declare under penalty of perjury that the foregoing is true and correct
    and that I am employed in the office of a member of the bar of this court at whose
14  direction the service was made.

15          Executed on July 22, 2009, at Los Angeles, California.

16

17

18                                      _____/s/_____
                                        Maria Mercado-Navarro
19

20

21

22

23

24

25

26

27

28

OHS West:260698887.1                          - 1 -

EXHIBIT ___1___
PAGE ___34___

## PHASE 2 SERVICE LIST

<u>Counsel for Mattel. Inc.</u>
John B. Quinn, Esq.
johnquinn@quinnemanuel.com
Michael T. Zeller, Esq.
michaelzeller@quinnemanuel.com
Jon D. Corey, Esq.
Joncorey@quinnemanuel.com
Brett D. Proctor
dylanproctor@quinnemanuel.com
QUINN EMANUÉL URQUHART OLIVER & HEDGES, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA  90017-2543
Telephone: (213) 443-3000
Facsimile:  (213) 443-3100

<u>Counsel for Carlos Gustavo Machado Gomez</u>
Mark E. Overland, Esq.
moverland@ scheperkim.com
Alexander H. Cote, Esq.
acote@ scheperkim.com
SCHEPER KIM & OVERLAND LLP
601 W. 5th Street, 12th Floor
Los Angeles, CA  90017
Telephone: (213) 613-4655
Facsimile:  (213) 613-4656

Leah Chava Gershon, Esq.
leah@spertuslaw.com
JAMES W. SPERTUS LAW OFFICES
1990 S. Bundy Drive, Suite 705
Los Angeles, CA  90025
Telephone: (310) 584-7671
Facsimile:  (310) 826-4711

OHS West 260698887.1                        - 1 -

EXHIBIT ___1___
PAGE ___35___

1  <u>Counsel for Limited Intervenor, Omni 808 Investors LLC</u>
2  Todd E. Gordinier, Esq.
   todd.gordinier@bingham.com
3  BINGHAM MCCUTCHEN LLP
4  600 Anton Blvd., 18th Floor
   Costa Mesa, CA  92626
5  Telephone:  (714) 830-0600
6  Facsimile:  (714) 830-0700

7  <u>Additional Counsel:</u>

8  Thomas J. Nolan, Esq.
   thomas.nolan@skadden.com
9  Raoul D. Kennedy, Esq.
   raoul.kennedy@skadden.com
10 Jason D. Russell, Esq.
   jason.russell@skadden.com
11 SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
   300 South Grand Avenue
12 Suite 3400
   Los Angeles, CA 90071-3144
13 Telephone:  (213) 687-5000
   Facsimile:  (213) 687-5600
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

OHS West:260698887.1                        - 2 -

EXHIBIT ___1___
PAGE ___36___

# EXHIBIT 2



1  ANNETTE L. HURST (State Bar No. 148738)
   ahurst@orrick.com
2  WARRINGTON S. PARKER III (State Bar No. 148003)
   wparker@orrick.com
3  ORRICK, HERRINGTON & SUTCLIFFE LLP
   The Orrick Building
4  405 Howard Street
   San Francisco, CA 94105
5  Telephone:  +1-415-773-5700
   Facsimile:   +1-415-773-5759
6
   WILLIAM A. MOLINSKI (State Bar No. 145186)
7  wmolinski@orrick.com
   ORRICK, HERRINGTON & SUTCLIFFE LLP
8  777 South Figueroa Street, Suite 3200
   Los Angeles, CA  90017
9  Telephone:  +1-213-629-2020
   Facsimile:   +1-213-612-2499
10
   Attorneys for MGA ENTERTAINMENT, INC., MGA
11 ENTERTAINMENT HK, LTD.,
   MGAE de MEXICO, S.R.L. de C.V., and ISAAC
12 LARIAN

13                UNITED STATES DISTRICT COURT

14                CENTRAL DISTRICT OF CALIFORNIA

15                     EASTERN DIVISION

16

17 CARTER BRYANT, an individual        | Case No. CV 04-9049 SGL (RNBx)

18            Plaintiff,                | Consolidated with: Case No. CV 04-9059
                                        | and Case No. CV 05-2727
19 v.
                                        | DISCOVERY MATTER
20 MATTEL, INC., a Delaware            | [Assigned to Discovery Master Robert
   Corporation                          | O'Brien]
21
            Defendant.                  | **STIPULATION RE CONTINUANCE
22                                      | OF DATE FOR** *IN CAMERA* **REVIEW**

23                                      | ([PROPOSED] ORDER FILED
                                        | CONCURRENTLY)
24
25 AND CONSOLIDATED ACTIONS

26

27

28

OHS West:260698783.1

STIP. RE CONTINUANCE OF DATE FOR *IN CAMERA* REVIEW
CV-04-0049 SGL (RNBx)

EXHIBIT ____2____
PAGE ____37____

1  WHEREAS, on March 27, 2009 Mattel, Inc. filed its Motion to Compel *In*

2  *Camera* Review and Production of Non-Attorney or Non-Legal Communications

3  Listed on MGA's Privilege Logs;

4  WHEREAS, on May 18, 2009, Discovery Master Robert C. O'Brien ordered

5  that Plaintiff and Counter-Defendant MGA Entertainment, Inc. and Isaac Larian

6  (collectively "MGA Parties") produce documents listed in Appendices A-E of

7  Mattel's Motion to Compel for *in camera* review;

8  WHEREAS, the deadline for the MGA Parties to comply with that portion of

9  Order No. 33 is July 28, 2009;

10  WHEREAS, the MGA Parties have requested, and Mattel is agreeable to, a

11  continuance of the deadline for the MGA Parties to comply with that portion of

12  Order No. 33 until August 4, 2009;

13  WHEREAS, the MGA Parties represent that the requested continuation is not

14  for the purposes of delay, but to allow new counsel for the MGA Parties an

15  opportunity to perform a complete and meaningful review of the documents on

16  Appendices A-E;

17  NOW THEREFORE, Mattel and the MGA Parties, by and through their

18  respective counsel of record, hereby stipulate and agree, subject to the approval of

19  the Discovery Master, that the deadline for the MGA Parties to comply with the *in*

20  *camera* review submission required by Order No. 33 is August 4, 2009.

21  IT IS SO STIPULATED.

22  Dated:   July 22, 2009              QUINN EMANUEL URQUHART OLIVER &
                                        HEDGES LLP
23

24

25                                      By:   /s/ B. Dylan Proctor
                                              B. Dylan Proctor
26                                            Attorneys for Mattel, Inc.

27

28

EXHIBIT   2
PAGE   38

| | |
|---|---|
| 1 | Dated:   July 21, 2009 |

ORRICK, HERRINGTON & SUTCLIFFE LLP

By:   /s/ Annette L. Hurst
       Annette L. Hurst
       Attorneys for the MGA Parties

OHS West:260698783.1

- 2 -

STIP. RE CONTINUANCE OF DATE FOR *IN CAMERA* REVIEW
CV-04-0049 SGL (RNBx)

EXHIBIT ___2___
PAGE ___39___

# EXHIBIT 3

1    ANNETTE L. HURST (State Bar No. 148738)
     ahurst@orrick.com
2    WARRINGTON S. PARKER III (State Bar No. 148003)
     wparker@orrick.com
3    ORRICK, HERRINGTON & SUTCLIFFE LLP
     The Orrick Building
4    405 Howard Street
     San Francisco, CA 94105
5    Telephone: +1-415-773-5700
     Facsimile: +1-415-773-5759
6
7    WILLIAM A. MOLINSKI (State Bar No. 145186)
     wmolinski@orrick.com
8    ORRICK, HERRINGTON & SUTCLIFFE LLP
     777 South Figueroa Street, Suite 3200
     Los Angeles, CA 90017
9    Telephone: +1-213-629-2020
     Facsimile: +1-213-612-2499
10
11    Attorneys for MGA ENTERTAINMENT, INC., MGA
     ENTERTAINMENT HK, LTD.,
12    MGAE de MEXICO, S.R.L. de C.V., and ISAAC
     LARIAN

13            UNITED STATES DISTRICT COURT

14            CENTRAL DISTRICT OF CALIFORNIA

15                EASTERN DIVISION

16

| | |
|---|---|
| 17   CARTER BRYANT, an individual | Case No. CV 04-9049 SGL (RNBx) |
| 18        Plaintiff, | Consolidated with: Case No. CV 04-9059 and Case No. CV 05-2727 |
| 19   v. | The Honorable Stephen J. Larson |
| 20   MATTEL, INC., a Delaware Corporation | **STIPULATION FOR CONTINUANCE OF HEARING DATE ON MATTEL'S MOTION FOR CLARIFICATION OF JUNE 18, 2009 ORDER RE THE ESCROW OF BRATZ PROFITS** |
| 21 22        Defendant. | |
| 23 | |
| 24 | ([PROPOSED] ORDER FILED CONCURRENTLY) |
| 25   AND CONSOLIDATED ACTIONS | |
| 26 | |

27

28

1    WHEREAS, Mattel, Inc. filed a Motion for Clarification of June 18 Order

2  Regarding the Escrow of Bratz Profits ("the Motion") on June 26, 2009;

3    WHEREAS, the hearing date for the Motion is August 10, 2009;

4    WHEREAS, the date to respond to the Motion is July 27, 2009;

5    WHEREAS, Plaintiff and Counter-Defendant MGA Entertainment, Inc., and

6  Counter-Defendants MGA Entertainment HK, Ltd., MGAE de Mexico S.R.L. de

7  C.V., and Isaac Larian ("MGA Parties") have requested for the reason set forth

8  below, and Mattel is agreeable to, a continuance of the hearing date on the Motion

9  until August 17, 2009;

10    WHEREAS the MGA Parties represent that the continuation is not for the

11  purposes of delay, but so as to accommodate the previously-scheduled and pre-paid

12  family vacation, during the week of July 20, 2009 and continuing to July 28, 2009,

13  of Warrington S. Parker III, the attorney responsible for drafting the response to the

14  Motion;

15    NOW THEREFORE, Mattel and the MGA Parties, by and through their

16  respective counsel of record, hereby stipulate and agree, subject to the approval of

17  the Court that:

18    1.    The hearing on the Motion shall be continued from August 10, 2009 to

19  August 17, 2009.

20    2.    The dates on which the MGA Parties' response and Mattel's reply

21  brief will be filed will be calculated pursuant to Local Rules 7-9 and 7-10 from the

22  date of August 17, 2009.

23    IT IS SO STIPULATED.

24  Dated:    July 17, 2009            QUINN EMANUEL URQUHART OLIVER &
                                       HEDGES LLP
25

26

27                                     By:    /s/ Michael T. Zeller
                                              Michael T. Zeller
28                                            Attorneys for Mattel, Inc.

                                       - 1 -

EXHIBIT   3
PAGE   41

1

2    Dated:    July 17, 2009            ORRICK, HERRINGTON & SUTCLIFFE LLP

3                                 By:    /s/ Annette L. Hurst
                                         Annette L. Hurst
4                                        Attorneys for MGA Entertainment, Inc.,
                                         MGA Entertainment HK Ltd., MGAE de
5                                        Mexico, S.R.L. de C.V., and Isaac Larian

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 2 -

STIP. RE CONTINUANCE OF HRG. DATE ON MTN FOR
CLARIFICATION
CV-04-0049 SGL (RNBx)

EXHIBIT __3__
PAGE __42__

**CERTIFICATE OF SERVICE**

I, Maria Mercado-Navarro, declare:

I am more than eighteen years old and not a party to this action. My business address is Orrick, Herrington & Sutcliffe LLP, 777 South Figueroa Street, Suite 3200, Los Angeles, California 90017-5855.

I hereby certify that on July 17, 2009, I electronically filed the following documents with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the parties listed below:

**STIPULATION FOR CONTINUANCE OF HEARING DATE OF MATTEL'S MOTION FOR CLARIFICATION OF JUNE 18, 2009 ORDER RE THE ESCROW OF BRATZ PROFITS**

**SEE ATTACHED SERVICE LIST**

I declare under penalty of perjury that the foregoing is true and correct and that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on July 17, 2009, at Los Angeles, California.

/s/
Maria Mercado-Navarro

- 1 -

EXHIBIT 3
PAGE 43

## SERVICE LIST

Counsel for Defendant-Appellee, Mattel, Inc.
John B. Quinn, Esq.
johnquinn@quinnemanuel.com
Michael T. Zeller, Esq.
michaelzeller@quinnemanuel.com
Jon D. Corey, Esq.
Joncorey@quinnemanuel.com
Brett D. Proctor
dylanproctor@quinnemanuel.com
QUINN EMANUÉL URQUHART OLIVER & HEDGES, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA  90017-2543

Counsel for Counter-Defendant, Carlos Gustavo
Machado Gomez
Mark E. Overland, Esq.
moverland@obsklaw.com
Alexander H. Cote, Esq.
acote@obsklaw.com
OVERLAND BORENSTEIN SCHEPER & KIM LLP
601 W. 5th Street, 12th Floor
Los Angeles, CA  90017

Attorneys for Patrick A. Fraioli, Jr., Monitor
Byron Z. Moldo, Eq.
bmoldo@ecjlaw.com
David Seror, Esq.
dseror@ecjlaw.com
Peter A. Davidson, Esq.
pdavidson@ecjlaw.com
ERVIN COHEN & JESSUP LLP
9401 Wilshire Boulevard, Ninth Floor
Beverly Hills, California 90212-2974

Peter A. Davidson, Esq.
pdavidson@ecjlaw.com
ERVIN COHEN & JESSUP LLP
9401 Wilshire Boulevard, Ninth Floor
Beverly Hills, California 90212-2974

- 2 -

EXHIBIT  3
PAGE  44

1   Joseph A. Eisenberg, Esq.
2   JEisenber@JMBM.com
    JEFFER MANGELS BUTLER & MARMARO LLP
3   1900 Avenue of the Stars, 7th Floor
4   Los Angeles, California 90067
    Counsel for Counter-Defendant, Carlos Gustavo
5   Machado Gomez
6   Leah Chava Gershon, Esq.
    leah@spertuslaw.com
7   JAMES W. SPERTUS LAW OFFICES
8   12100 Wilshire Blvd., Suite 620
    Los Angeles, CA  90025
9
10  Counsel for Third Party Defendant, Anne Wang
    Linda M. Burrow, Esq.
11  burrow@caldwell-leslie.com
12  CALDWELL LESLIE AND PROCTOR PC
    1000 Wilshire Blvd., Suite 600
13  Los Angeles, CA  90017
14
    Counsel for Limited Intervenor, Omni 808 Investors LLC
15  Todd E. Gordinier, Esq.
16  todd.gordinier@bingham.com
    BINGHAM MCCUTCHEN LLP
17  600 Anton Blvd., 18th Floor
18  Costa Mesa, CA  92626
19  Additional Counsel:
20  Thomas J. Nolan, Esq.
    thomas.nolan@skadden.com
21  Raoul D. Kennedy, Esq.
    raoul.kennedy@skadden.com
22  Jason D. Russell, Esq.
    jason.russell@skadden.com
23  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
    300 South Grand Avenue
24  Suite 3400
    Los Angeles, CA 90071-3144
25  Telephone:  (213) 687-5000
    Facsimile:  (213) 687-5600
26
27
28

- 3 -

EXHIBIT ___3___
PAGE ___45___

1    James I. Stang, Esq.
      jstang@pszjlaw.com
2    PACHULSKI, STANG, ZIEHL & JONES
      10100 Santa Monica Boulevard
3    11th Floor
      Los Angeles, CA 90067-4100
4    Telephone: (310) 277-6910
      Facsimile:  (310) 201-0760
5
      David M. Stern, Esq.
6    dstern@ktbslaw.com
      Matthew C. Heyn, Esq.
7    mheyn@ktbslaw.com
      Kevin E. Deenihan, Esq.
8    kdeenihan@ktbslaw.com
      KLEE, TUCHIN, BOGDANOFF & STERN LLP
9    1999 Avenue of the Stars
      39th Floor
10   Los Angeles, CA 90067-6049
      Telephone: (310) 407-4025
11   Facsimile:  (310) 407-9090

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 4 -

EXHIBIT 3
PAGE 46

# EXHIBIT 4

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

July 24, 2009

VIA FACSIMILE AND U.S. MAIL

Warrington Parker, Esq.
Orrick Herrington & Sutcliffe LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105

Re:   Mattel, Inc. v. MGA Entertainment, Inc. et al.

Dear Warrington:

I write to confirm our conversation of earlier today in which you stated that the MGA Defendants will supplement their responses to Mattel's supplemental interrogatory and bring themselves into compliance with the Court's December 3, 2007 Order by the end of August 2009. Such supplementation will include the first articulation of the MGA Defendants' contentions regarding the thirteen affirmative defenses that they asserted for the first time in response to Mattel's TAAC. Given that the end of August is approximately five weeks away, I asked whether the MGA Defendants could provide its answer to the supplemental interrogatory sooner than that. You informed me that the MGA Defendants needed that time to provide the required information and thus could not agree to an earlier deadline.

If you have any questions regarding the foregoing, please do not hesitate to call.

Best regards,

Jon Corey

Jon Corey

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
07975/3023163.1 SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
TOKYO | Akasaka Twin Tower Main Building, 6th Floor, 17-22 Akasaka 2-Chome, Minato-ku, Tokyo 107-0052, Japan | TEL +81-3-5561-1711 FAX +81-3-5561-1712
LONDON | 16 Old Bailey, London EC4M 7EG, United Kingdom | TEL +44-20-7653-2000 FAX +44-20-7653-2100

EXHIBIT  4
PAGE  47

# EXHIBIT 5

COPY

1 │ QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
2 │   John B. Quinn (Bar No. 90378)
       Michael T. Zeller (Bar No. 196417)
3 │   865 South Figueroa Street, 10th Floor
      Los Angeles, California 90017
4 │   Telephone:   (213) 443-3000
      Facsimile:   (213) 443-3100
5 │ Attorneys for Plaintiff
6 │ Mattel, Inc.
7 │
8 │

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

APR 2 7 2004

John A. Clarke, Executive Officer/Clerk
By _____ Deputy
        SUE GABB

8        SUPERIOR COURT OF THE STATE OF CALIFORNIA

9            FOR THE COUNTY OF LOS ANGELES

10

11 │ MATTEL, INC., a Delaware corporation,       )   CASE NO. _____ BC314398
12 │                                             )
                      Plaintiff,                 )   COMPLAINT FOR:
13 │                                             )
14 │          v.                                 )   (1)  BREACH OF CONTRACT;
                                                 )   (2)  BREACH OF FIDUCIARY
15 │                                             )        DUTY;
      CARTER BRYANT, an individual; and          )   (3)  BREACH OF DUTY OF
16 │  DOES 1 through 10, inclusive,              )        LOYALTY;
                                                 )   (4)  UNJUST ENRICHMENT; AND
17 │                                             )   (5)  CONVERSION
                      Defendants.                )
18 │                                             )
19 │                                             )
20
21
22
23
24
25
26
27
28

EXHIBIT  5
PAGE  48

COMPLAINT

07209/579342.1

1       Plaintiff Mattel, Inc. ("Mattel") brings this action against defendants Carter
2   Bryant ("Bryant") and Does 1 through 10 (all defendants being collectively referred to as
3   "defendants") and alleges as follows:

4

5                                    Parties

6

7           1.      Mattel is a corporation organized and existing under the laws of the
8   State of Delaware and has its principal place of business in El Segundo, California.
9           2.      Mattel is informed and believes, and on that basis alleges, that defendant
10  Bryant is an individual currently residing in Springfield, Missouri.
11          3.      The true names and capacities of defendants sued herein as Does 1
12  through 10, inclusive, are unknown to Mattel, which therefore sues said defendants by such
13  fictitious names.  Mattel will amend this Complaint to allege their true names and capacities
14  when the same are ascertained.
15          4.      Mattel is informed and believes, and on that basis alleges, that at all
16  times relevant herein, defendants, and each of them, were acting in concert and active
17  participation with each other in committing the wrongful acts alleged herein, and were the
18  agents of each other, and in doing the things alleged herein, each defendant was acting
19  within the course and scope of his, her or its agency and was subject to and under the
20  supervision of, and was acting with the knowledge of, his, her or its co-defendants.

21

22                            Jurisdiction and Venue

23

24          5.      During the time of the acts complained of herein, Bryant was employed
25  by Mattel in, and was a resident of, Los Angeles County.  Bryant's contracts with Mattel that
26  are at issue in this action were executed, performed and breached by Bryant in Los Angeles
27  County.   In addition, defendants committed the tortious conduct alleged herein while
28  physically located in Los Angeles County, and Mattel felt the effects of Bryant's breach and

-2-

EXHIBIT  5
PAGE  49                        COMPLAINT

1 | defendants' other wrongful acts in Los Angeles County.  Accordingly, this Court has
2 | personal jurisdiction over defendants.

3 |          6.        Venue is proper pursuant to <u>Code of Civil Procedure</u> §§ 393 and 395(a),
4 | as the causes of action arose in Los Angeles County, the contractual obligations at issue were
5 | incurred, were to be performed and were breached by Bryant in Los Angeles County, and
6 | Bryant does not currently reside in California.

7 |

8 |                                          <u>Factual Background</u>

9 |

10 |          7.        Mattel is a long standing and successful independent manufacturer and
11 | marketer of toys, dolls, games and stuffed toys and animals.  Mattel was founded in 1945 by
12 | Elliot and Ruth Handler and Harold "Matt" Mattson.  The name of the company was created
13 | by incorporating the names of two of its founders, "MATT-son" and "EL-liot."  Originating
14 | from the Handlers' garage in Southern California, the company greatly expanded its
15 | operations following World War II and soon began to thrive as its reputation for producing
16 | high-quality toys spread.  During the next several decades, Mattel became world famous for
17 | producing high-quality products at reasonable prices.  Today, some of Mattel's most famous
18 | brands include BARBIE, HOT WHEELS, MATCHBOX and FISHER-PRICE.

19 |          8.        Critical to Mattel's success, and to the livelihood of its employees, is
20 | Mattel's ability to design and develop new products.  Mattel invests many millions of dollars
21 | in product design and development annually, and it introduces hundreds of new products
22 | each year.  In El Segundo, California alone, Mattel maintains a 180,000 square-foot design
23 | center that houses more than 850 designers, sculptors, painters and other artists, whom
24 | Mattel pays to work exclusively and full-time to create the products that Mattel sells and on
25 | which Mattel's business depends.

26 |          9.        Defendant Bryant was employed by Mattel from September 1995
27 | through April 1998, and then again from January 1999 through October 2000, as a product
28 | designer at Mattel's design center in El Segundo, California.

EXHIBIT _5_
PAGE _50_

COMPLAINT

1         10.    On January 4, 1999, upon starting his second term of employment by

2  Mattel, and as a condition of and in consideration for his employment, Bryant executed an

3  Employee Confidential Information and Inventions Agreement (the "Employee

4  Agreement"). Among other things, Bryant agreed that he would not, without Mattel's

5  express written consent, "engage in any employment or business other than for [Mattel], or

6  invest in or assist (in any manner) any business competitive with the business or future

7  business plans of [Mattel]." Bryant further acknowledged that he held a position of trust

8  with Mattel. In addition, Bryant assigned to Mattel all rights, title and interest in

9  "inventions," including without limitation "designs," that he conceived or reduced to practice

10  during his employment by Mattel. A true and correct copy of Bryant's Employee Agreement

11  with Mattel is attached as Exhibit A.

12         11.    Also on January 4, 1999, Bryant executed Mattel's Conflict of Interest

13  Questionnaire (the "Conflict Questionnaire"). Among other things, Bryant certified in the

14  Conflict Questionnaire that, other than as disclosed, he had not worked for any competitor

15  of Mattel in the prior twelve months and had not engaged in any business venture or

16  transaction involving a Mattel competitor that could be construed as a conflict of interest.

17  Bryant specifically agreed that he would immediately notify his supervisor of any change

18  in his situation that would cause him to change any of the foregoing certifications. The only

19  conflict disclosure that Bryant made on the Conflict Questionnaire (or at any time

20  subsequently) concerned freelance work that is unrelated to the conduct alleged herein. A

21  true and correct copy of the Conflict Questionnaire executed by Bryant is attached as

22  Exhibit B.

23         12.    In late November 2003, Mattel learned that Bryant had secretly aided,

24  assisted and worked for a Mattel competitor, including without limitation by entering into

25  an agreement with the competitor, during the time Bryant was employed by Mattel pursuant

26  to the above-referenced agreements and was being paid by Mattel as a product designer.

27  Bryant's agreement with the competitor obligated Bryant to provide product design services

28  to the competitor on a "top priority" basis. Bryant's agreement also provided, among other

EXHIBIT __5__

PAGE __51__

COMPLAINT

1   things, that Bryant would receive royalties and other consideration for sales of products on

2   which Bryant provided aid or assistance; that all work and services furnished by Bryant to

3   the competitor under the agreement purportedly would be considered "works for hire"; and

4   that all intellectual property rights to preexisting work by Bryant purportedly would be

5   assigned to the competitor.  In addition, while Bryant was employed by Mattel, Bryant and

6   the other defendants converted, misappropriated and misused Mattel property and resources

7   for the benefit of, and to aid and assist, Bryant personally and Mattel's competitor.

8          13.     During the time that he was employed by Mattel and thereafter, Bryant

9   concealed these actions from Mattel, including without limitation by failing to notify his

10  supervisor of his conflict of interest regarding the competitor and by making affirmative

11  misrepresentations to Mattel management upon his departure from Mattel.  Because of

12  Bryant's acts of concealment and his misrepresentations to Mattel, Mattel had no reason to

13  suspect that Bryant had worked for the competitor while still employed by Mattel until late

14  November 2003, when Mattel received, through an unrelated legal action, a copy of Bryant's

15  agreement with the competitor and saw that the date of the agreement predated Bryant's

16  departure from Mattel.

17         14.     As a consequence, Bryant breached his contracts with Mattel and

18  violated his duty of loyalty and his fiduciary duties to Mattel; the other defendants have

19  unlawfully aided and abetted his violation of such duties; and each of the defendants has

20  been unjustly enriched and engaged in acts of conversion.

21

22                          FIRST CLAIM FOR RELIEF

23                             (Breach of Contract)

24

25         15.     Mattel repeats and realleges each and every allegation set forth in

26  paragraphs 1 through 14, above, as though fully set forth at length.

27         16.     Pursuant to his Mattel Employment Agreement, and for good and

28  valuable consideration, Bryant agreed that he would not, without Mattel's express written

07209/579342.1

-5-

EXHIBIT __5__

PAGE __52__

COMPLAINT

1  consent, engage in any employment or business other than for Mattel or assist in any manner
2  any business competitive with the business or future business plans of Mattel during his
3  employment with Mattel.  Pursuant to his Mattel Employment Agreement, Bryant further
4  assigned to Mattel all right, title and interest in "inventions," including without limitation
5  "designs," that he conceived or reduced to practice during his employment by Mattel.  In
6  addition, pursuant to the Conflict Questionnaire, Bryant certified that, other than as
7  disclosed, he had not worked for any competitor of Mattel and had not engaged in any
8  business venture or transaction involving a Mattel competitor that could be construed as a
9  conflict of interest.  Bryant further promised that he would notify his superior immediately
10  of any change in his situation that would cause him to change any of the foregoing
11  certifications or representations.

12       17.   The Employment Agreement and the Conflict Questionnaire are valid,
13  enforceable contracts, and Mattel has performed each and every term and condition of the
14  Employment Agreement and Conflict Questionnaire required to be performed by Mattel.

15       18.   Bryant materially breached the foregoing contracts with Mattel, in that,
16  among other things, he secretly aided, assisted and worked for a Mattel competitor during
17  his employment with Mattel, without the express written consent of Mattel.

18       19.   As a consequence of Bryant's breach, Mattel has suffered and will in
19  the future continue to suffer damages in an amount to be proven at trial.  Such damages
20  include, without limitation, the amounts paid by the competitor to Bryant during his Mattel
21  employment; the amounts paid by the competitor to Bryant as a result of the work he
22  performed for the competitor during his Mattel employment; the amount that Mattel paid
23  Bryant during the time he wrongfully worked for the competitor; the value of information
24  and intellectual property owned by Mattel which Bryant provided to the competitor; the
25  value of the benefits the competitor obtained from Bryant during the time he was employed
26  by Mattel; and the value of the benefits the competitor obtained from Bryant as a result of
27  the work he performed for the competitor during his Mattel employment.
28

07209/579342.1                      -6-

EXHIBIT 5
PAGE 53
COMPLAINT

20.     Furthermore, Bryant's conduct has caused, and unless enjoined will continue to cause, irreparable injury to Mattel that cannot be adequately compensated by money damages and for which Mattel has no adequate remedy at law. Bryant specifically acknowledged in his Employment Agreement that his breach of the Agreement "likely will cause irreparable harm" to Mattel and that Mattel "will be entitled to injunctive relief to enforce this Agreement, in addition to damages and other available remedies." Accordingly, Mattel is entitled to orders mandating Bryant's specific performance of his contracts with Mattel and restraining Bryant from further breach.

## SECOND CLAIM FOR RELIEF

### (Breach of Fiduciary Duty)

21.     Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 20, above, as though fully set forth at length.

22.     Bryant held a position of trust and confidence with Mattel. In his position, Bryant had access to and was entrusted with Mattel's proprietary and confidential information, supervised the work of others, exercised discretion and worked independently in many of his job assignments and duties. In his position, Bryant also represented Mattel in its dealings with third parties and, in his actions in the course and scope of his employment with Mattel, was an agent of Mattel. Bryant confirmed his relationship of trust with Mattel in the Employee Agreement. Bryant thus owed Mattel a fiduciary duty that included, but was not limited to, an obligation not to take any action that would be contrary to Mattel's best interests or that would deprive Mattel of any opportunities, profit or advantage which Bryant might bring to Mattel.

23.     Bryant breached his fiduciary duty to Mattel in that, while employed by Mattel, he secretly aided, assisted and worked for a competitor of Mattel, including without limitation by entering into an agreement with a Mattel competitor. As alleged

EXHIBIT 5
PAGE 54

COMPLAINT

1   above, Bryant also breached the aforementioned duty by using Mattel property and resources

2   for the benefit of, and to aid and assist, himself personally and the competitor of Mattel.

3        24.    The other defendants, acting with full knowledge of Bryant's obligations

4   to Mattel, aided and abetted Bryant in such conduct.

5        25.    As a direct and proximate result of defendants' wrongful conduct,

6   Mattel has incurred damages in an amount to be determined at trial.

7        26.    Defendants acted with malice, fraud and oppression, and in conscious

8   disregard of Mattel's rights. Accordingly, Mattel is entitled to an award of punitive damages

9   against defendants in an amount to be determined at trial.

10        27.    Furthermore, defendants' conduct has caused, and unless enjoined will

11   continue to cause, irreparable injury to Mattel that cannot be adequately compensated by

12   money damages and for which Mattel has no adequate remedy at law. Accordingly, Mattel

13   is entitled to an order restraining further breach of Bryant's fiduciary duty to Mattel and/or

14   restraining defendants from continuing to benefit from such breach.

15

16        THIRD CLAIM FOR RELIEF

17        (Breach of Duty of Loyalty)

18

19        28.    Mattel repeats and realleges each and every allegation set forth in

20   paragraphs 1 through 27, above, as though fully set forth at length.

21        29.    As an employee of Mattel, Bryant owed a duty of undivided loyalty to

22   Mattel, his employer. Pursuant to this duty, Bryant could not compete with Mattel or assist

23   a competitor of Mattel during his employment with Mattel. Pursuant to this duty, Bryant

24   was required to always give preference to Mattel's business over his own, similar interests

25   during the course of his employment with Mattel.

26        30.    Bryant breached his duty of loyalty to Mattel in that, while employed

27   by Mattel, he secretly aided, assisted and worked for a competitor of Mattel, including

28   without limitation by entering into an agreement with a Mattel competitor. As alleged

EXHIBIT  5
PAGE  55
COMPLAINT

1  above, Bryant also breached the aforementioned duty by using Mattel property and resources
2  for the benefit of, and to aid and assist, himself personally and the competitor of Mattel.

3         31.    The other defendants, acting with full knowledge of Bryant's obligations
4  to Mattel, aided and abetted Bryant in such wrongful conduct.

5         32.    As a direct and proximate result of defendants' wrongful conduct,
6  Mattel has incurred damages in an amount to be determined at trial.

7         33.    Defendants acted with malice, fraud and oppression, and in conscious
8  disregard of Mattel's rights. Accordingly, Mattel is entitled to an award of punitive damages
9  against defendants in an amount to be determined at trial.

10         34.    Furthermore, defendants' conduct has caused, and unless enjoined will
11 continue to cause, irreparable injury to Mattel that cannot be adequately compensated by
12 money damages and for which Mattel has no adequate remedy at law. Accordingly, Mattel
13 is entitled to an order restraining further breach of Bryant's duty of loyalty to Mattel and/or
14 restraining defendants from continuing to benefit from such breach.

15

16                      FOURTH CLAIM FOR RELIEF

17                         (Unjust Enrichment)

18

19         35.    Mattel repeats and realleges each and every allegation set forth in
20 paragraphs 1 through 34, above, as though fully set forth at length.

21         36.    Defendants, by the aforementioned conduct, unfairly used and diverted
22 Mattel property, resources and opportunities for the benefit of, and to aid and assist,
23 themselves, all without authorization by or payment to Mattel for the same. Defendants have
24 been unjustly enriched as a result.

25         37.    Mattel is entitled to an award of all such amounts by which defendants
26 have been unjustly enriched in an amount to be determined at trial.

27

28

EXHIBIT __5__
PAGE __5<u>6</u>__

COMPLAINT

38.     Defendants acted with malice, fraud and oppression, and in conscious disregard of Mattel's rights. Accordingly, Mattel is entitled to an award of punitive damages against defendants in an amount to be determined at trial.

39.     Furthermore, defendants' conduct has caused, and unless enjoined will continue to cause, irreparable injury to Mattel that cannot be adequately compensated by money damages and for which Mattel has no adequate remedy at law. Accordingly, Mattel is entitled to an order restraining defendants from any further unjust enrichment.

## FIFTH CLAIM FOR RELIEF

### (Conversion)

40.     Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 39, above, as though fully set forth at length.

41.     Mattel was entitled to, inter alia, Bryant's exclusive services and the exclusive ownership of his inventions as a Mattel product designer. However, Bryant provided such services, and purported to grant rights to such inventions, to a competitor during the time of his exclusive Mattel employment. All such services and the inventions and work product resulting from such services, including without limitation ideas, concepts, rights, designs, proprietary information, and other intellectual property and intangible property created by Bryant during the term of the aforesaid agreements, were the property of Mattel. Such services and property were provided by Bryant to others, including defendants, and used by them.

42.     Defendants wrongfully converted Mattel property and resources by asserting ownership thereto and by appropriating and using Mattel's property and resources for their own benefit and gain and for the benefit and gain of others, without the permission of Mattel.

EXHIBIT  5
PAGE  57

43.    As a direct and proximate result of defendants' wrongful conversion of Mattel's property and resources, Mattel has incurred damages.  Mattel is entitled to recover compensatory damages against defendants in an amount to be determined at trial.

44.    Defendants acted with malice, fraud and oppression, and in conscious disregard of Mattel's rights. Accordingly, Mattel is entitled to an award of punitive damages against defendants in an amount to be determined at trial.

45.    Furthermore, defendants' conduct has caused, and unless enjoined will continue to cause, irreparable injury to Mattel that cannot be adequately compensated by money damages and for which Mattel has no adequate remedy at law.  Accordingly, Mattel is entitled to an order restraining defendants from further conversion of Mattel property and resources and/or restraining defendants from continuing to benefit from such conversion.

## PRAYER FOR RELIEF

WHEREFORE, Mattel hereby respectfully requests that this Court:

A.    Award Mattel its damages;

B.    Order defendants to disgorge to Mattel all payments, revenue, profits, monies, royalties and any other benefits derived or obtained by defendants as a result of the conduct described herein;

C.    Order specific performance by Bryant to comply with and satisfy Bryant's contractual obligations to Mattel;

D.    Enter an injunction restraining defendants, and all those acting in concert or participation with them, from engaging in further wrongful conduct and/or from continuing to benefit from their wrongful conduct;

E.    Order defendants to pay Mattel the full cost of this action and Mattel's reasonable attorneys' fees;

F.    Award Mattel punitive damages in an amount sufficient to punish defendants and deter such misconduct in the future; and

EXHIBIT __5__
PAGE __58__
COMPLAINT

1       G.    Award such other and further relief as this Court deems just and proper.

2

3  DATED: April 27, 2004        QUINN EMANUEL URQUHART OLIVER &
                        HEDGES, LLP

4

5

6                  By_____
                     Michael T. Zeller
7                   Attorneys for Plaintiff
                   Mattel, Inc.

EXHIBIT 5
PAGE 59

COMPLAINT

-12-

07209/579342.1

Exhibit A

EXHIBIT ___5___
PAGE    66

# EMPLOYEE CONFIDENTIAL INFORMATION AND INVENTIONS AGREEMENT

I acknowledge that Mattel, Inc. (the "Company") operates in a competitive environment and that it enhances its opportunities to succeed by establishing certain policies, including those included in this Agreement. This Agreement is designed to make clear that: (i) I will maintain the confidentiality of the Company's trade secrets; (ii) I will use those trade secrets for the exclusive benefit of the Company; (iii) inventions that I create will be owned by the Company; (iv) my prior and continuing activities separate from the Company will not conflict with the Company's development or its proprietary rights; and (v) when and if my employment with the Company terminates I will not use my prior position with the Company to the detriment of the Company. In consideration of my employment with the Company and other good and valuable consideration, I agree that:

### 1. Provisions Related to Trade Secrets

(a) I acknowledge that the Company possesses and will continue to develop and acquire valuable Proprietary Information (as defined below), including information that I may develop or discover as a result of my employment with the Company. The value of that Proprietary Information depends on it remaining confidential. The Company depends on me to maintain that confidentiality, and I accept that position of trust.

(b) As used in this Agreement, "Proprietary Information" means any information (including formula, pattern, compilation, device, method, technique or process) that derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use, and includes information on the Company, its customers, suppliers, joint ventures, licensors, licensees, distributors and other persons and entities with whom the Company does business.

(c) I will not disclose or use at any time either during or after my employment with the Company, any Proprietary Information except for the exclusive benefit of the Company as required by my duties for the Company, or as the Company expressly may consent to in writing. I will cooperate with the Company and use my best efforts to prevent the unauthorized disclosure, use or reproduction of any Proprietary Information.

(d) Upon leaving employment with the Company for any reason, I immediately will deliver to the Company all tangible, written, graphical, machine readable and other materials (including all copies) in my possession or under my control containing or disclosing Proprietary Information.

### 2. Ownership of Inventions

(a) I agree to communicate to the Company as promptly and fully as practicable all inventions (as defined below) conceived or reduced to practice by me (alone or jointly by others) at any time during my employment by the Company. I hereby assign to the Company and/or its nominees all my right, title and interest in such inventions, and all my right, title and interest in any patents, copyrights, patent applications or copyright applications based thereon. I will assist the Company and/or its nominees (without charge but at no expense to me) at any time in every proper way to obtain for its and/or their own benefit, patents and copyrights for all such inventions anywhere in the world and to enforce its and/or their rights in legal proceedings.

(b) As used in this Agreement, the term "inventions" includes, but is not limited to, all discoveries, improvements, processes, developments, designs, know-how, data computer programs and formulae, whether patentable or unpatentable.

(c) Any provision in this agreement requiring me to assign my rights in any invention does not apply to an invention which qualifies under the provision of Section 2870 of the California Labor Code. That section provides that the requirement to assign "shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities or trade secret information except for those inventions that either (1) relate at the time of conception or reduction to practice of the invention to the employer's business or actual or demonstrably anticipated research or development of the employer; or (2) result from any work performed by the employee for the employer." I understand that I bear the burden of proving that an invention qualifies under Section 2870.

(d) I hereby irrevocably designate and appoint the Company and each of its duly authorized officers and agents as my agent and attorney-in-fact to act for and in my behalf and stead to execute and file any document and to do all other lawfully permitted acts to further the prosecution, issuance and enforcement of patents, copyrights and other proprietary rights with the same force and effect as if executed and delivered by me.

### 3. Conflicts with Other Activities

(a) My employment with the Company requires my undivided attention and effort. Therefore, during my employment with the Company, I will fully comply with the Company's Conflict of Interest Policy, as it may be amended from time to time. I shall not, without the Company's express written consent, engage in any employment or business other than for the Company, or invest in or assist in any manner any business competitive with the business or future business plans of the Company.

### 4. Miscellaneous

(a) My obligations under this Agreement may not be modified or terminated, in whole or in part, except in writing signed by a Vice-President of the Company. Any waiver by the Company of a breach on any provision of this Agreement will not operate or be construed as a waiver of any subsequent breach.

(b) Each provision of this Agreement will be treated as a separate and independent clause, and the unenforceability of any one provision will in no way impair the enforceability of any other provision. If any provision is held to be unenforceable, such provision will be construed by the appropriate judicial body by limiting or reducing it to the minimum extent necessary to make it legally enforceable.

(c) My obligation under this Agreement will survive the termination of my employment, regardless of the manner of such termination. This Agreement will inure to the benefit of and be binding upon the successors and assigns of the Company.

(d) I understand that the provisions of this Agreement are a material condition to my employment with the Company. I also understand that this Agreement is not an employment contract, and nothing in this Agreement creates any right to my continuous employment by the Company, or to my employment for any particular term.

(e) Any breach of this Agreement likely will cause irreparable harm to the Company for which money damages could not reasonably or adequately compensate the Company. Accordingly, I agree that the Company will be entitled to injunctive relief to enforce this Agreement, in addition to damages and other available remedies.

(f) This agreement will be governed by and interpreted in accordance with the laws of the State of California.

(g) This Agreement contains the complete agreement between the Company and me concerning the subject matter hereof and supersedes all other agreements and understandings. This Agreement may be executed in counterparts. The Agreement will be deemed effective as of the start of Employee's employment with the Company.

**CAUTION: THIS AGREEMENT CREATES IMPORTANT OBLIGATIONS OF TRUST AND AFFECTS THE EMPLOYEE'S RIGHTS TO INVENTIONS THE EMPLOYEE MAY MAKE DURING HIS OR HER EMPLOYMENT.**

Employee Signature: *[signature: Carter J. Bryant]*

Employee Name (print): CARTER M. BRYANT

Date: 01/04/99

MATTEL, INC.
By: *[signature: Teresa Newcomb]*
Signature

TERESA NEWCOMB
Name of Witness (print)

EXHIBIT A PAGE 13

EXHIBIT 5
PAGE 61

Exhibit B

EXHIBIT   5

PAGE   02

# CONFLICT OF INTEREST QUESTIONNAIRE

_BRYANT, CARTER H.    PROJECT DESIGNER_

Name (Last, First, M.I.)                Job Title                        Department

**Instructions:** The purpose of this questionnaire is to confirm the propriety of relations between our key employees and our suppliers and competitors. Please read the definitions below and Mattel's policies concerning Conflicts of Interest. Then answer the questions by checking the correct answer. Base your answers on personal knowledge. There is no need to make inquiries or seek additional information since lack of knowledge of a situation indicates that there is no conflict of interest. Your answers to questions 1 through 8 should cover the past twelve months and the term "you" should include members of your immediate family.

**Mattel Supplier** is interpreted broadly for purposes of this questionnaire. A Mattel supplier is any person, partnership, trust, corporation, or other enterprise which during the past twelve months has done business or currently contemplates doing business with Mattel or any Mattel subsidiary.

**Mattel Competitor** is interpreted broadly for purposes of this questionnaire. A Mattel competitor is any person, partnership, trust, corporation, or other enterprise which has done business or contemplates doing business in any field that is in competition with Mattel or any Mattel subsidiary.

**Interest** means direct or indirect ownership of any stock, bond, option or right to purchase any security, share in profits, investment, partnership interest or other profit participation or equity interest whatsoever. Interest also means any agreement to perform services for or consult with or to deliver materials to or to receive compensation of any kind from any supplier or competitor. You may disregard mutual investment trusts and publicly-owned corporations whose securities are traded publicly, in which you own not more than $25,000 in market value, but not to exceed 10% of an individual's net worth.

**Recipient of any commission, etc.,** means receipt of anything of value, in cash or in kind, over $60 on any one occasion or over $300 total during the past twelve months.

○ YES ● NO   1. Have you owned, directly or indirectly, any interest in a Mattel supplier?

○ YES ● NO   2. Have you owned, directly or indirectly, and interest in a Mattel competitor?

○ YES ● NO   3. Have you been the recipient of any commission, fee, loan, trip, gift, benefit or anything else of value that is derived in any way from a Mattel supplier?

● YES ○ NO   4. Have you been the recipient of any commission, fee, loan, trip, gift, benefit or anything else of value that is derived in any way from a Mattel competitor?

● YES ○ NO   5. Have you or any relative of yours by blood or marriage been a director, officer, consultant, agent, employee, or representative of or acted for any Mattel competitor in any capacity?

○ YES ● NO   6. Have you or any relative of yours by blood or marriage been a director, officer, consultant, agent, employee, or representative of or acted for any Mattel supplier in any capacity?

○ YES ● NO   7. Have you engaged in any activity including the acquisition or ownership of any interest, for personal profit, not expressly within the scope of the foregoing with respect to any supplier or competitor?

○ YES ● NO   8. Excepting normal everyday transactions (purchase of toys, etc.) have you engaged in any business venture or transaction involving a Mattel supplier or competitor or engaged in any activity which could be objectively construed as being a conflict of interest or allegiance?

○ YES ● NO   9. Are you aware of any activity of any employee which you believe could be construed as a potential conflict of interest with Mattel?

If your answer to any of the above questions is "yes," please explain in the space below:

_4, 5, freelance design & artwork in 1998,_
_from appx. 5/98 - 11/98 for the Ashton Drake_
_galleries._

I certify that I have read Mattel policies concerning Conflict of Interest and the answers to the above questions are true. I understand that failure to answer this questionnaire fully and truthfully constitutes grounds for immediate termination of my employment. I agree not to divulge any company information to unauthorized recipients. I also agree to notify my superior immediately of any changes in my situation that would cause me to answer any of the above questions differently. I further certify that, to the best of my knowledge, neither I nor any member of my immediate family is or has been engaged in any capacity which creates a Conflict of Interest.

Signature _Carter Bryant_          Date _01/04/98_

EXHIBIT **B** PAGE **14**

EXHIBIT __5__
PAGE __63__

# EXHIBIT 6

RECEIVED

DEC 07 2004

1    M. RANDALL OPPENHEIMER (S.B. #77649)
     DIANA M. TORRES (S.B. #162284)
2    O'MELVENY & MYERS LLP
     400 South Hope Street
3    Los Angeles, California 90071-2899
     Telephone: (213) 430-6000
4    Facsimile: (213) 430-6407

5
     Attorneys for Applicant-Intervenor
6    MGA ENTERTAINMENT, INC.

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11   MATTEL, INC., a Delaware          Case No. CV 04-9059 NM (RNBx)
     Corporation,
12                                      STIPULATION PERMITTING MGA
                     Plaintiff,         TO INTERVENE AS A PARTY TO
13                                      THIS ACTION
            v.
14                                      Hon. Nora Manella
     CARTER BRYANT, an individual;
15   and DOES 1 through 10, inclusive,

16                   Defendant.

17

18

19

20

21

22

23

24

25

26

27                                     EXHIBIT  6
                                       PAGE  64
28
                                       STIPULATION PERMITTING MGA TO
                                       INTERVENE AS A PARTY

1    WHEREAS, on April 27, 2004, Plaintiff Mattel, Inc. ("Mattel") filed suit
2  against Carter Bryant ("Bryant") and ten unnamed "Does" alleging breach of
3  contract, breach of the duty of loyalty, breach of fiduciary duty, conversion and
4  unjust enrichment.

5    WHEREAS, MGA, believes, at this time, that it has a significantly
6  protectable interest relating to the subject matter of the action, that the disposition
7  of the action may impair or impede MGA's ability to protect its interest absent
8  intervention, and that MGA's interest is not adequately represented by the existing
9  parties.

10    WHEREAS, Mattel is agreeable to the filing of the Answer in Intervention as
11  a procedural matter pursuant to this Stipulation, without waiver of, or prejudice to,
12  its rights, defenses or positions in this or any other action or to the Answer in
13  Intervention, including without limitation to Mattel's jurisdictional objections;

14    WHEREAS, Bryant is agreeable to the filing of the Answer in Intervention as
15  a procedural matter pursuant to this Stipulation, without waiver of, or prejudice to,
16  his rights, defenses or positions in this or any other action;

17    NOW THEREFORE, MGA, Mattel and Bryant hereby stipulate, subject to
18  this Court's approval, as follows:

19    1.    MGA may intervene as a party to this action; and
20    //
21    //
22    //
23    //
24    //
25    //
26    //
27    //
28    //

- 1 -

EXHIBIT __V__
PAGE __V5__

1          2.      MGA shall be permitted to file its Answer in Intervention, lodged

2    concurrently with this Stipulation.

3
          Dated:        December 3, 2004        O'MELVENY & MYERS LLP
4

5
                                               By: _____
6                                                  Diana M. Torres
                                               Attorneys for Applicant-Intervenor
7                                              MGA ENTERTAINMENT, INC.

8

9          Dated:        December___, 2004        QUINN EMANUEL URQUHART
                                               OLIVER & HEDGES LLP
10

11
                                               By: _____
12                                                 Michael T. Zeller
                                               Attorneys for Plaintiff
13                                             MATTEL, INC.

14

15         Dated:        December___, 2004        LITTLER MENDELSON, P.C.

16

17                                             By: _____
                                                   Keith A. Jacoby
18                                             Attorneys for Defendant
                                               CARTER BRYANT

19   IT IS SO ORDERED.

20

21         Dated:        December___, 2004

22
                                               _____
23                                                 Hon. Nora M. Manella
                                               United States District Judge
24

25

26

27

28

EXHIBIT __6__
PAGE __66__

1    2.   MGA shall be permitted to file its Answer in Intervention, lodged

2  concurrently with this Stipulation.

3

4    Dated:   December___, 2004   O'MELVENY & MYERS LLP

5

6            By:_____

7               Diana M. Torres
               Attorneys for Applicant-Intervenor
               MGA ENTERTAINMENT, INC.

8

9    Dated:   December___, 2004   QUINN EMANUEL URQUHART
                      OLIVER & HEDGES LLP

10

11

12           By:_____
               Michael T. Zeller

13           Attorneys for Plaintiff
           MATTEL, INC.

14

15    Dated:   December___, 2004   LITTLER MENDELSON, P.C.

16

17           By:_____
               Keith A. Jacoby

18           Attorneys for Defendant
           CARTER BRYANT

19  IT IS SO ORDERED.

20

21    Dated:   December___, 2004

22

23                Hon. Nora M. Manella
                United States District Judge

24

25

26

27

28

-2-

EXHIBIT 6
PAGE 67

1      2.    MGA shall be permitted to file its Answer in Intervention, lodged

2  concurrently with this Stipulation.

3

4       Dated:     December___, 2004    O'MELVENY & MYERS LLP

5

6                                 By:_____
                                      Diana M. Torres

7                                  Attorneys for Applicant-Intervenor
                                  MGA ENTERTAINMENT, INC.

8

9       Dated:     December___, 2004    QUINN EMANUEL URQUHART

10                                     OLIVER & HEDGES LLP

11

12                                  By:_____

13                                      Michael T. Zeller
                                  Attorneys for Plaintiff

14                                  MATTEL, INC.

15      Dated:     December_3_, 2004    LITTLER MENDELSON, P.C.

16

17                                  By:_____

18                                      Keith A. Jacoby
                                  Attorneys for Defendant

19                                    CARTER BRYANT
  IT IS SO ORDERED.

20

21       Dated:     December____, 2004

22

23                                  Hon. Nora M. Manella
                                  United States District Judge

24

25

26

27

28

EXHIBIT __1__
PAGE __68__

1   M. RANDALL OPPENHEIMER (S.B. #77649)
    DIANA M. TORRES (S.B. #162284)
2   O'MELVENY & MYERS LLP
    400 South Hope Street
3   Los Angeles, California 90071-2899
    Telephone:  (213) 430-6000
4   Facsimile:   (213) 430-6407

5   Attorneys for Applicant-Intervenor
    MGA ENTERTAINMENT, INC.

6

7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11  MATTEL, INC., a Delaware          Case No. CV 04-9059 NM (RNBx)
    Corporation,
12                                    **MGA ENTERTAINMENT, INC.'S**
                   Plaintiff,         **ANSWER IN INTERVENTION TO**
13                                    **PLAINTIFF'S UNVERIFIED**
          v.                          **COMPLAINT**
14
    CARTER BRYANT, an individual;     Hon. Nora Manella
15  and DOES 1 through 10, inclusive,

16                 Defendant.

17

18

19

20

21

22

23

24

25

26

27                                    EXHIBIT __6__
                                      PAGE __69__
28

LA2:730044                    3        ANSWER IN INTERVENTION TO
                                       PLAINTIFF'S UNVERIFIED COMPLAINT

1    As it has now become abundantly clear that its rights are directly at stake in

2    this action, MGA Entertainment, Inc. ("MGA") intervenes in this case as a

3    defendant.  Plaintiff Mattel, Inc. ("Mattel") filed suit against Carter Bryant

4    ("Bryant"), a design consultant for MGA, asserting, among other claims, that he

5    "wrongfully converted Mattel property" for his own benefit and "the benefit and

6    gain of others" and seeking both monetary and injunctive relief.  It is now evident

7    that Mattel's claims are based on Mattel's misguided theory that Bryant allegedly

8    converted intellectual property from Mattel and used it as the underlying work for

9    his own and MGA's benefit.  MGA reaches this conclusion in light of at least the

10   following:

11        (a)    Mattel's recent registration for an unreleased project created in

12               approximately 1999 that it now calls "Toon Teens," from which Mattel

13               has asserted in the press Bryant "borrowed liberally" for his work on

14               "Bratz," and which is also the subject of the declaratory relief action

15               that Bryant has filed;

16        (b)    the questioning of Bryant at his recent deposition focusing on the

17               creation and development of "Bratz;"

18        (c)    Mattel's recent efforts to subpoena third parties who worked on

19               MGA's "Bratz" products and have no information concerning Bryant's

20               employment relationship with Mattel; and

21        (d)    Mattel's recent attempts to assist those who have infringed MGA's

22               rights in other countries to prove (falsely) that MGA does not own the

23               copyrights to its "Bratz" products.

24   Indeed, Mattel's purported conversion claim is nothing more than a copyright claim

25   in disguise.  It is preempted by federal copyright law, accordingly, and must be

26   recast as a copyright claim under federal law.  This copyright action necessarily

27   implicates MGA's rights, as MGA owns all intellectual property rights in "Bratz."

28   While MGA denies that Mattel is entitled to rights in any of MGA's intellectual

LA2:730044                          - 1 - 4              ANSWER IN INTERVENTION TO
                                                 PLAINTIFF'S UNVERIFIED COMPLAINT

EXHIBIT  6

PAGE   70

1    property, including, without limitation, MGA's copyrights in the "Bratz" line of

2    products, MGA must now intervene in this action to defend its intellectual property

3    rights.  Therefore Defendant in Intervention MGA, as answer to the Complaint

4    herein, admits, denies, and alleges as follows:

5         1.    Upon information and belief, MGA admits that Mattel is a corporation

6    organized and existing under the laws of the State of Delaware and has a place of

7    business in El Segundo, California.  Except as so admitted, MGA is without

8    sufficient information to admit the allegations of ¶ 1, and on that basis denies the

9    same.

10        2.    MGA admits that defendant Bryant is an individual currently residing

11   in Springfield, Missouri.

12        3.    MGA is without sufficient information concerning either Mattel's

13   knowledge or the identities of the Doe Defendants, if any, to enable it to admit the

14   allegations of ¶ 3, and on that basis denies the same.

15        4.    MGA denies the allegations of ¶ 4.

16        5.    MGA denies the allegations of ¶ 5.

17        6.    MGA admits that Bryant does not currently reside in California and

18   that Los Angeles County is a proper venue for this action.  Except as so admitted,

19   MGA denies the allegations of ¶ 6.

20        7.    MGA is without information to admit the specific allegations of ¶ 7

21   and on that basis denies the same, but admits that reports from Mattel and other

22   public sources make assertions similar to those alleged in ¶ 7.

23        8.    MGA is without information to admit the specific allegations of ¶ 8

24   pertaining to Mattel's operations, and on that basis denies the same, but admits that

25   Mattel has a large facility in El Segundo, California, in which Mattel employs a

26   number of people.

27        9.    MGA is without information to admit the specific allegations of ¶ 9

28   pertaining to Mattel's operations, and on that basis denies the same, but admits that

LA2:730044                          - 2 -    5        ANSWER IN INTERVENTION TO
                                                     PLAINTIFF'S UNVERIFIED COMPLAINT

EXHIBIT ___4___

PAGE ___71___

1    Bryant was employed by Mattel during two time periods.

2        10.    MGA is informed and on that basis admits that Bryant signed

3    documents during his employment at Mattel.  MGA alleges that Exhibit A speaks

4    for itself as to its contents.  MGA lacks information sufficient to enable it to

5    identify or authenticate Exhibit A and on that basis denies each and every allegation

6    in ¶ 10 purporting to describe the content of Exhibit A.  MGA further alleges that

7    the allegations in ¶ 10 purporting to describe the legal effect of Exhibit A consist of

8    legal argument and conclusions to which no response is required.

9        11.    MGA is informed and on that basis admits that Bryant signed

10   documents during his employment at Mattel.  MGA alleges that Exhibit B speaks

11   for itself as to its contents.  MGA lacks information sufficient to enable it to

12   identify or authenticate Exhibit B and on that basis denies each and every allegation

13   in ¶ 11 purporting to describe the content of Exhibit A.  MGA further alleges that

14   the allegations in ¶ 11 purporting to describe the legal effect of Exhibit B consist of

15   legal argument and conclusions to which no response is required.

16       12.    MGA admits that Bryant signed a contract with MGA on or about

17   October 4, 2000 that provided that Bryant would receive royalties in connection

18   with certain work to be performed by him thereafter under that agreement, and that

19   MGA would own all intellectual property rights in property for which Bryant

20   provided services, as well as in the work assigned thereunder by Bryant to MGA.

21   Except as so admitted, MGA denies the allegations of ¶ 12.

22       13.    MGA is without information sufficient to admit the allegations in  ¶ 13

23   and on that basis denies the same.

24       14.    MGA denies the allegations of ¶ 14.

25       15.    In answer to ¶ 15, MGA repeats its answers to the allegations in

26   paragraphs 1 through 14, above.

27       16.    MGA is informed and on that basis admits that Bryant signed

28   documents during his employment at Mattel.  MGA alleges that any purported

LA2:730044                          - 3 -        6        ANSWER IN INTERVENTION TO
                                                          PLAINTIFF'S UNVERIFIED COMPLAINT

EXHIBIT __6__

PAGE __72__

1 "Mattel Employment Agreement" and "Conflict Questionnaire" speak for

2 themselves as to their contents. MGA lacks information sufficient to enable it to

3 identify or authenticate the purported "Mattel Employment Agreement" and

4 "Conflict Questionnaire" and on that basis denies each and every allegation in ¶ 16

5 purporting to describe the contents of such documents. MGA further alleges that

6 the allegations in ¶ 16 purporting to describe the legal effect of any purported

7 "Mattel Employment Agreement" or "Conflict Questionnaire" consist of legal

8 argument and conclusions to which no response is required.

9       17.    MGA alleges that any purported "Mattel Employment Agreement" and

10 "Conflict Questionnaire" speak for themselves as to their contents. MGA lacks

11 information sufficient to enable it to identify or authenticate the purported "Mattel

12 Employment Agreement" and "Conflict Questionnaire" and on that basis denies

13 each and every allegation in ¶ 16 purporting to describe the contents of such

14 documents. MGA further alleges that the allegations in ¶ 16 purporting to describe

15 the legal effect of any purported "Mattel Employment Agreement" or "Conflict

16 Questionnaire" consist of legal argument and conclusions to which no response is

17 required. MGA is without sufficient information concerning Mattel's performance,

18 if any, and on that basis denies all allegations regarding the same.

19       18.    MGA denies the allegations of ¶ 18.

20       19.    MGA denies the allegations of ¶ 19 and affirmatively asserts that the

21 relief sought by Mattel in this paragraph indicates that Mattel's first cause of action

22 implicates federal copyright laws. To the extent that Mattel herein purports to set

23 forth the allegations in support of its first cause of action to substantiate a federal

24 copyright claim, these allegations are also expressly denied.

25       20.    MGA denies the allegations of ¶ 20 except that MGA alleges that any

26 purported "Employment Agreement" speaks for itself as to its contents. MGA

27 lacks information sufficient to enable it to identify or authenticate the purported

28 "Employment Agreement" and on that basis denies each and every allegation in ¶

LA2:730044              - 4 -          ANSWER IN INTERVENTION TO
                                              PLAINTIFF'S UNVERIFIED COMPLAINT

EXHIBIT    6

PAGE    75

20 purporting to describe the contents of such document.  MGA further alleges that
the allegations in ¶ 20 purporting to describe the legal effect of any purported
"Employment Agreement" consist of legal argument and conclusions to which no
response is required.

     21.    In answer to ¶ 21, MGA repeats its answers to the allegations in
paragraphs 1 through 20, above.

     22.    MGA is without information sufficient to admit the allegations of ¶ 22,
and on that basis denies same except that MGA alleges that any purported
"Employee Agreement" speaks for itself as to its contents.  MGA lacks information
sufficient to enable it to identify or authenticate the purported "Employee
Agreement" and on that basis denies each and every allegation in ¶ 22 purporting to
describe the contents of such document.  MGA further alleges that the allegations in
¶ 22 purporting to describe the legal effect of any purported "Employee
Agreement" consist of legal argument and conclusions to which no response is
required.

     23.    MGA denies the allegations of ¶ 23 and affirmatively asserts that the
relief sought by Mattel in this paragraph indicates that Mattel's first cause of action
implicates federal copyright laws.  To the extent that Mattel herein purports to set
forth the allegations in support of its first cause of action to substantiate a federal
copyright claim, these allegations are also expressly denied.

     24.    MGA denies the allegations of ¶ 24.

     25.    MGA denies the allegations of ¶ 25.

     26.    MGA denies the allegations of ¶ 26.

     27.    MGA denies the allegations of ¶ 27.

     28.    In answer to ¶ 28, MGA repeats its answers to the allegations in
paragraphs 1 through 27, above.

     29.    MGA denies the allegations of ¶ 29.

     30.    MGA denies the allegations of ¶ 30 and affirmatively asserts that the

EXHIBIT ___ ʋ
PAGE ___ 74

1 | relief sought by Mattel in this paragraph indicates that Mattel's first cause of action

2 | implicates federal copyright laws.  To the extent that Mattel herein purports to set

3 | forth the allegations in support of its first cause of action to substantiate a federal

4 | copyright claim, these allegations are also expressly denied.

5 |      31.    MGA denies the allegations of ¶ 31.

6 |      32.    MGA denies the allegations of ¶ 32.

7 |      33.    MGA denies the allegations of ¶ 33.

8 |      34.    MGA denies the allegations of ¶ 34.

9 |      35.    In answer to ¶ 35, MGA repeats its answers to the allegations in

10 | paragraphs 1 through 34, above.

11 |      36.    MGA denies the allegations of ¶ 36 and affirmatively asserts that the

12 | allegations in this paragraph indicate that Mattel's fourth cause of action implicates

13 | federal copyright laws.  To the extent that Mattel herein purports to set forth the

14 | allegations in support of its fourth cause of action to substantiate a federal copyright

15 | claim, these allegations are also expressly denied..

16 |      37.    MGA denies the allegations of ¶ 37.

17 |      38.    MGA denies the allegations of ¶ 38.

18 |      39.    MGA denies the allegations of ¶ 39.

19 |      40.    In answer to ¶ 40, MGA repeats its answers to the allegations in

20 | paragraphs 1 through 39, above.

21 |      41.    MGA denies the allegations of ¶ 41 and affirmatively asserts that the

22 | allegations in this paragraph assert legal or equitable rights that are equivalent to

23 | exclusive rights within the general scope of copyright protection and are, therefore,

24 | expressly preempted by the Copyright Act, 17 U.S.C. § 101 *et seq.* and must be

25 | recast as a federal question under copyright law.  To the extent that Mattel herein

26 | purports to set forth the allegations in support of its fifth cause of action to support

27 | a federal copyright claim, these allegations are also expressly denied.

28 |      42.    MGA denies the allegations of ¶ 42 and affirmatively asserts that the

- 6 - 9

ANSWER IN INTERVENTION TO
PLAINTIFF'S UNVERIFIED COMPLAINT

EXHIBIT   6

PAGE   75

1   allegations in this paragraph assert legal or equitable rights that are equivalent to
2   exclusive rights within the general scope of copyright protection, which are
3   expressly preempted by the Copyright Act, 17 U.S.C. § 101 *et seq.* and must be
4   recast as a federal question under copyright law. To the extent that Mattel herein
5   purports to set forth the allegations in support of its fifth cause of action to
6   substantiate a federal copyright claim, these allegations are also expressly denied.

7        43.     MGA denies the allegations of ¶ 43 and affirmatively asserts that the
8   allegations in this paragraph assert legal or equitable rights that are equivalent to
9   exclusive rights within the general scope of copyright protection, which are
10   expressly preempted by the Copyright Act, 17 U.S.C. § 101 *et seq.* and must be
11   recast as a federal question under copyright law. To the extent that Mattel herein
12   purports to set forth the allegations in support of its fifth cause of action to
13   substantiate a federal copyright claim, these allegations are also expressly denied.

14        44.     MGA denies the allegations of ¶ 44.
15        45.     MGA denies the allegations of ¶ 45.

16

17                      **AFFIRMATIVE DEFENSES**
18   MGA asserts the following affirmative defenses:
19                   **FIRST AFFIRMATIVE DEFENSE**
20        1.     Plaintiff's Complaint and each purported claim for relief therein is
21   preempted by the Federal Copyright Act.
22                 **SECOND AFFIRMATIVE DEFENSE**
23        2.     Plaintiff's Complaint and each purported claim for relief therein fail to
24   state facts sufficient to constitute a claim for relief.
25                 **THIRD AFFIRMATIVE DEFENSE**
26        3.     Plaintiff's Complaint and each purported claim for relief therein are
27   barred by the equitable doctrine of unclean hands.

28

LA2:730044

-7-   /0

ANSWER IN INTERVENTION TO
PLAINTIFF'S UNVERIFIED COMPLAINT

EXHIBIT   **ᴜ**
PAGE   **76**

## FOURTH AFFIRMATIVE DEFENSE

4.    Plaintiff's Complaint and each purported claim for relief therein are barred by the equitable doctrine of waiver.

## FIFTH AFFIRMATIVE DEFENSE

5.    Plaintiff's Complaint and each purported claim for relief therein are barred by the equitable doctrine of estoppel.

## SIXTH AFFIRMATIVE DEFENSE

6.    Plaintiff's Complaint and each purported claim for relief therein are barred by the equitable doctrine of laches.

## SEVENTH AFFIRMATIVE DEFENSE

7.    Plaintiff's Complaint and each purported claim for relief therein are barred by the equitable doctrine of consent.

## EIGHTH AFFIRMATIVE DEFENSE

8.    Plaintiff's Complaint and each purported claim for relief therein, or some of them, are barred by the applicable statutes of limitations, including California Code of Civil Procedure sections 337, 339, 343 and 338(c) .

## NINTH AFFIRMATIVE DEFENSE

9.    Plaintiff's Complaint and each purported claim for relief therein, or some of them, are barred because no Defendant owed a legal duty to Plaintiff or, if any legal duty arose, it was not breached by any Defendant.

## TENTH AFFIRMATIVE DEFENSE

10.    Without admitting, and specifically denying, that any Defendant owed any duty to Plaintiff, any duty or obligation, contractual or otherwise, which Plaintiff claims was owed by any Defendant has been fully performed, satisfied and/or discharged.

## ELEVENTH AFFIRMATIVE DEFENSE

11.    Plaintiff's Complaint and each purported claim for relief therein are barred because each Defendant has complied fully with his and/or its obligations, if

LA2:730044

- 8 -    //

ANSWER IN INTERVENTION TO
PLAINTIFF'S UNVERIFIED COMPLAINT

EXHIBIT ___ 𝗟
PAGE ___ 𝟳𝟳

1    any, under all applicable laws.

2    ### TWELFTH AFFIRMATIVE DEFENSE

3        12.    Plaintiff's Complaint and each purported claim for relief therein are

4    barred because Plaintiff has failed to exercise reasonable diligence in properly

5    mitigating its damages, if any in fact were suffered.

6    ### THIRTEENTH AFFIRMATIVE DEFENSE

7        13.    Plaintiff's Complaint and each purported claim for relief therein are

8    barred because the alleged losses or harms sustained by Plaintiff, if any, resulted

9    from causes other than any act or omission by any Defendant.

10   ### FOURTEENTH AFFIRMATIVE DEFENSE

11       14.    Plaintiff's Complaint and each purported claim for relief therein, or

12   some of them, are barred because to the extent Plaintiff has suffered any harm, and

13   Defendant in Intervention denies that Plaintiff has suffered any harm, it is due to

14   Plaintiff's own acts and omissions.

15   ### FIFTEENTH AFFIRMATIVE DEFENSE

16       15.    Plaintiff's Complaint and each purported claim for relief therein, or

17   some of them, are barred because any alleged contract between Plaintiff and

18   Defendant Bryant fails for lack of consideration, is vague and uncertain, and

19   therefore is void, voidable and/or unenforceable.

20   ### SIXTEENTH AFFIRMATIVE DEFENSE

21       16.    Plaintiff's Complaint and each purported claim for relief therein, or

22   some of them, are barred because any breaches of an alleged contract or duty,

23   which Defendant in Intervention denies, are excused by Plaintiff's acts or

24   omissions.

25   ### SEVENTEENTH AFFIRMATIVE DEFENSE

26       17.    To the extent Plaintiff's Complaint and any purported claim for relief

27   therein, or some of them, seek the remedy of injunctive relief, that remedy is barred

28   because Plaintiff's remedies at law are adequate and any alleged harms, and

LA2:730044           - 9 -               ANSWER IN INTERVENTION TO
PLAINTIFF'S UNVERIFIED COMPLAINT

EXHIBIT   6

PAGE   78

1  Defendant in Intervention denies that there are harms, are not irreparable.

2  **EIGHTEENTH AFFIRMATIVE DEFENSE**

3      18.    Plaintiff's Complaint and each purported claim for relief therein

4  cannot be maintained because any duties or obligations, contractual or otherwise,

5  which Plaintiff claims are owed by Defendant Bryant, are contrary to applicable

6  law.

7  **NINETEENTH AFFIRMATIVE DEFENSE**

8      19.    Plaintiff is barred from recovering punitive and/or exemplary damages

9  from Defendant or Defendant in Intervention ("Defendants") because an award of

10  such damages would violate the United States and/or California Constitutions, and

11  applicable case law.

12  **TWENTIETH AFFIRMATIVE DEFENSE**

13      20.    Defendant in Intervention does not presently know all facts concerning

14  the conduct of Plaintiff sufficient to state all affirmative defenses at this time.

15  Defendant in Intervention will seek leave of Court to amend this Answer in

16  Intervention should it later discover facts demonstrating the existence of additional

17  affirmative defenses.

18

19      **WHEREFORE**, Defendant in Intervention prays for judgment as follows:

20      1.    Plaintiff's Complaint shall be dismissed in its entirety with prejudice;

21      2.    Plaintiff shall take nothing by its action against Defendant;

22      3.    Defendant in Intervention shall be awarded its costs of suit and

23  attorneys' fees incurred in this matter (to the extent permitted by applicable law);

24  and

25      4.    Defendant in Intervention shall be awarded such other further relief as

26  may be deemed just and proper.

27

28

LA2:730044                          - 10 -  /3          ANSWER IN INTERVENTION TO
                                                        PLAINTIFF'S UNVERIFIED COMPLAINT

EXHIBIT __6__
PAGE   79

1

2   Dated:         December___, 2004

3                                          O'MELVENY & MYERS LLP

4                                          By:_____
                                              Diana M. Torres
5                                          Attorneys for Defendant-in-Intervention
6                                          MGA ENTERTAINMENT, INC.

7

8   LA2:730044

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LA2:730044                         - 11 -   /4        ANSWER IN INTERVENTION TO
                                                      PLAINTIFF'S UNVERIFIED COMPLAINT

EXHIBIT __6__
PAGE __80__

## PROOF OF SERVICE

I, Deresa Gade, declare:

I am a resident of the State of California and over the age of eighteen years, and not a party to the within action; my business address is 400 South Hope Street, Los Angeles, California 90071-2899. On December, 3, 2004, I served the within documents:

**MGA ENTERTAINMENT INC.'S STIPULATION TO INTERVENE AS A PARTY ANSWER IN INTERVETION, AND CERTIFICATE OF INTERESTED PARTIES**

☒    by transmitting via facsimile machine the document(s) listed above to the fax number(s) set forth below on this date. The outgoing facsimile machine telephone number in this office is (213) 430-6407.

☒    by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below. I am readily familiar with the firm's practice of collecting and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

Douglas A. Wickham
Keith Jacoby
Littler Mendelson
A Professional Corporation
2049 Century Park East, 5th Floor
Los Angeles, CA 90067-3107
Tel: (310) 553-0308
Fax: (310) 553-5583

John B. Quinn
Michael T. Zeller
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Tel: (213) 443-3000
Fax: (213) 443-3100

I declare under penalty of perjury under the laws of the United States that the above is true and correct.

Executed on December 3, 2004, at Los Angeles, California.

_____
Deresa Gade

EXHIBIT **U**
PAGE **81**

# EXHIBIT 7

DALE M. CENDALI
(of counsel, not admitted in California)
DIANA M. TORRES (S.B. #162284)
PAULA E. AMBROSINI (S.B. #193126)
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA  90071-2899
Telephone:  (213) 430-6000
Facsimile:   (213) 430-6407
email:        dtorres@omm.com

PATRICIA GLASER (S.B. # 55668)
CHRISTENSEN, MILLER, FINK,
JACOBS, GLASER, WEIL &
SHAPIRO LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, CA  90067
Telephone:  (310) 553-3000
Facsimile:   (310) 556-2920

Attorneys for Plaintiff
MGA Entertainment, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CV 05-02727 CBM (Rzx)

| | |
|---|---|
| MGA ENTERTAINMENT, INC., | Case No. |
| Plaintiff, | COMPLAINT FOR FALSE DESIGNATION OF ORIGIN, AFFILIATION, ASSOCIATION OR SPONSORSHIP (15 U.S.C. § 1125 (a)); UNFAIR COMPETITION (15 U.S.C. § 1125 (a), Cal. Bus. & Prof. Code § 17200 *et seq.* and California Common Law); DILUTION (15 U.S.C. § 1125 (c), Cal. Bus. & Prof Code § 14330 and California Common Law); AND UNJUST ENRICHMENT |
| v. | |
| MATTEL, INC., a Delaware Corporation, and DOES 1-10, | |
| Defendants. | |
| | **DEMAND FOR JURY TRIAL** |

EXHIBIT __7__
PAGE __82__

Plaintiff MGA Entertainment, Inc. for its complaint against Defendants Mattel, Inc. and DOES 1-10 alleges and avers as follows:

## PARTIES

1.     Plaintiff MGA Entertainment, Inc. ("MGA") is a California corporation organized and existing under the laws of the State of California, with a principal place of business in Van Nuys, California.

2.     MGA is informed and believes, and based thereon alleges, that Defendant Mattel, Inc. ("Mattel") is a Delaware corporation with a principal place of business in El Segundo, California.

3.     MGA is ignorant of the true names and capacities of the defendants sued herein under the fictitious names DOES 1 through 10 inclusive. MGA will seek leave of court to amend this complaint to allege such names and capacities when they are ascertained. MGA is informed and believes, and based thereon alleges, that each of the fictitiously named DOE defendants is responsible in some manner for the wrongful conduct alleged herein. MGA further alleges that each defendant acted in concert with, as agent or representative for, or at the request or on behalf of another or Mattel. Each charging allegation contained herein is, therefore, also hereby alleged against each fictitiously named DOE defendant.

## JURISDICTION AND VENUE

4.     Through this action MGA asserts claims against Mattel arising under the Lanham Act, 15 U.S.C. Sections 1125 (a) and (c), California Business and Professions Code Sections 17200 *et seq.*, California Business and Professions Code Section 14330 and California common law. This Court has original subject matter jurisdiction over MGA's federal claims pursuant to 15 U.S.C. Sections 1116 and 1121, 28 U.S.C. Section 1338(a), and 28 U.S.C. Section 1331, and supplemental

1

EXHIBIT 7
PAGE 83

1   subject matter jurisdiction over MGA's state law claims pursuant to 28 U.S.C.
2   Section 1367(a).

3       5.    This Court has specific personal jurisdiction over Mattel, as it has
4   purposefully committed, within the State of California, the acts from which these
5   claims arise and/or has committed tortious acts outside California, knowing and
6   intending that such acts would cause injury to MGA within the state. The Court
7   also has general personal jurisdiction over Mattel, as it conducts continuous,
8   systematic and routine business within the State of California and the County of
9   Los Angeles.

10       6.    Venue is proper in the United States District Court for the Central
11   District of California pursuant to 28 U.S.C. Sections 1391(b) and 1391(c).

12

13                        **FACTUAL BACKGROUND**

14       7.    MGA seeks by this action to halt Mattel's habitual and unfair tactics of
15   competition-by-intimidation and serial copycatting of MGA's products, which
16   Mattel has used in an unbridled effort to cause confusion in the market place and
17   eliminate MGA as a competitor in the toy and fashion doll market long dominated
18   and controlled by Mattel.

19       8.    MGA is a privately-held company in the San Fernando Valley that
20   began in 1979 as a small consumer electronics business. In 1987, the company
21   made its first foray into the toy business when it secured rights to market handheld
22   LCD games featuring licensed Nintendo® characters. Building on that small
23   success, the company began marketing products for popular licensed properties
24   such as the "Power Rangers"® and "Hello Kitty"®. This little-known but
25   successful company, however, was propelled into the limelight after its daring
26   release in June 2001 of an innovative line of fashion dolls called "BRATZ".
27   "BRATZ" are multi-ethnic fashion dolls that sport a fresh new urban and
28   contemporary look and fashion. At the time of the release of "BRATZ", "Barbie"

2

EXHIBIT  7

PAGE  84

1  sales were in a slump, Mattel was in turmoil, and the market was ripe for something
2  new, exciting and inventive. "BRATZ" fit the bill. It is the first fashion doll that
3  has been able to seriously challenge "Barbie" for market share, and begin to loosen
4  Mattel's 50-year iron-fisted grip on the fashion doll market.

5     9.    Mattel has not taken kindly to the challenge. Either unable or
6  unwilling to compete against "BRATZ" fairly, and on a level-playing field, Mattel
7  has, instead, taken a more expeditious approach, resorting to unfair and anti-
8  competitive business practices. Wielding its substantial clout and influence in the
9  toy industry, Mattel has tried to muscle MGA out of business. MGA is informed
10 and believes that Mattel has intimidated, coerced and threatened retailers, licensees,
11 suppliers and others in the industry   both in the U.S. and internationally   in order
12 to inhibit and stifle MGA's ability to compete with Mattel and to prevent MGA
13 from obtaining licensees, contracts and supplies for its products. Mattel has also
14 serially imitated and copy-catted the look of MGA products, trade dress,
15 trademarks, themes, ideas, advertising and packaging, including for the "BRATZ"
16 line of dolls. MGA brings this action to stop Mattel's tortious, unfair and anti-
17 competitive conduct and to recover the extensive damage that Mattel's illicit
18 behavior has caused, and continues to cause, MGA. Mattel's own website states:
19 "As the global leader in the toy industry, we believe that how we achieve success is
20 just as important as the success itself." It also proclaims that "unwavering integrity
21 defines our corporate culture on every level, guiding how we work and how we do
22 business." Mattel's own corporate governance standards require it to "play by the
23 rules," complete fairly and be a good corporate citizen. Mattel's actions, however,
24 speak louder than its words.

25
26
27
28

3

EXHIBIT ___7___
PAGE ___85___

## Mattel History and Performance

10.    Mattel is the world's largest toy company, but it owes its immense success chiefly to a single product: "Barbie." Since her debut in 1959, "Barbie" has been the fuel for Mattel's growth and success, turning Mattel into an international powerhouse. By the late 1990's, Mattel's annual sales of the doll approached or topped $1.8 billion and Mattel stock reached a record high of approximately $45.00 a share. At that time, the average American girl had eight "Barbie" dolls, and "Barbie" was the world's best-selling toy.

11.    Mattel's reliance on a single, 40-year old product for as much as 50% of its business turned out to be a risky business model, however. Resting on its laurels, Mattel failed to react to the shifting tastes of consumers, changing dynamics in the industry, and an increasing focus on technologically advanced and interactive toys. "Barbie's" record sales fell into a tailspin. According to one report, Adrienne Fontanella, Mattel's "Barbie" brand president, would later be quoted as saying that, "The world changed very quickly, and we missed a beat. . . Barbie wasn't talking to girls. She just wasn't hitting it."

12.    Sales began to plunge in 1997, and Mattel began posting a series of net income losses. In the first quarter of 1998, sales of the "Barbie" brand dropped 17%. This steep slide was followed by another in the second quarter, when sales fell again, down by 15%. By the end of 1998, Mattel reported an overall 14% decline in "Barbie" sales for the year and analysts were using words such as "devastating" and "a catastrophe" to describe Mattel's earnings. The company's stock fell as much as 27% in a single day. "Barbie" was having a crisis.

13.    Jill Barad, who had taken over as Mattel's chairman and chief executive in January 1997, at the height of Mattel's success, had to do something fast. Instead of focusing on and investing in new product development, however, which would obviously take time, Mattel embarked on a series of acquisitions that were seemingly aimed at quickly diversifying the company's product line and

EXHIBIT __7__
PAGE __86__

1  reducing its reliance on "Barbie" and on traditional retailers, such as Toys-R-Us

2  and Wal-Mart. Mattel spent a reported $881 million in March 1997 to purchase

3  Tyco Toys and acquire the "Matchbox" toy car brand. Just more than a year later,

4  it spent $700 million for the Pleasant Co., a mail-order doll company and maker of

5  the "American Girl" doll collection. And in December 1998, Mattel announced

6  plans to fork out a monumental $3.5 billion to buy the Learning Company,

7  followed quickly by Mattel's purchase, in March 1999, of a software company,

8  Purple Moon.

9       14.    Despite these acquisitions, the company continued to struggle. The

10  retail environment and buying patterns had unquestionably changed, but Mattel had

11  not kept up. Despite Mattel's feverish acquisitions, Mattel's mainstay and primary

12  profit-generator was still "Barbie." But "Barbie" had grown stale, and sales

13  languished. Posting additional losses in the first quarter of 1999, Mattel announced

14  that it would lay off 3,000 employees -- 10% of its work force.

15       15.    Mattel's stock plummeted again in late 1999, dropping 30% on

16  Mattel's announcement that it would fall as much as 55% short of analysts' earning

17  estimates for the third quarter. Mattel blamed its troubles primarily on its

18  expensive, $3.5 billion acquisition of the Learning Company, which had turned out

19  to be a disaster fraught with licensing and distribution problems, bad debt, high

20  product returns and high advertising costs.

21       16.    By early 2000, Mattel's stock had crashed to as low as $8 per share,

22  and some analysts considered Mattel vulnerable to a takeover. Investors clamored

23  for Ms. Barad's resignation, and got their wish.

24       17.    Jill Barad resigned from Mattel in February 2000.

25       18.    For three months, the company was without a permanent chief

26  executive until Robert Eckert took the helm in May 2000. Mr. Eckert had spent 23

27  years at Kraft Foods, a subsidiary of Altria Group, Inc., and was widely credited

28

5

EXHIBIT ___7___
PAGE ___87___

1    with reviving its ailing cheese business. Investors looked for him to do the same

2    for Mattel.

3        19.    Upon his arrival at Mattel, Mr. Eckert's promise, according to *Wall*

4    *Street Journal* reports, was to deliver a "leaner and meaner" Mattel.

5        20.    The "leaner" Mattel came quickly. Mr. Eckert laid off hundreds,

6    closed factories in the United States, shipped production to Mexico, and sold off the

7    Learning Company at a fraction of what Mattel had paid for it. It helped Mattel's

8    bottom-line, but did nothing to spur sales growth. Even under Mr. Eckert's "leaner

9    meaner" leadership, domestic "Barbie" sales remained in a slump into 2001. In an

10   industry that had become increasingly driven by consumer whims and fads, and the

11   hot, must-have toys of the moment, Mattel remained disinterested in devoting its

12   resources to searching for or developing a new blockbuster toy. Mr. Eckert's

13   business plan was not to diversify, but to build upon and expand sales of its existing

14   brands. Mattel was, after all, still generating billions in revenue despite the decline

15   of "Barbie." And so, Mattel remained committed to its age-worn icon and its two

16   other core brands, Fisher-Price and Hot Wheels, with each of the three accounting

17   for approximately a third of the company's sales.

18       21.    Then came the competition  MGA's "BRATZ".

19

20   **"BRATZ" Dolls Revolutionize The Fashion Doll Market**

21       22.    "BRATZ" challenged "Barbie's" half-century domination of the

22   fashion-doll market like nothing ever before had been able to do.

23       23.    MGA unveiled a preliminary sample of the "BRATZ" doll at the Hong

24   Kong Toy Fair in January 2001, while continuing to finalize the product throughout

25   that spring. Finished products were first shipped in May 2001. MGA introduced

26   the line to consumers in June 2001.

27

28

                                            6

EXHIBIT 7
PAGE 88

24.   Unlike "Barbie" dolls, the "BRATZ" line of dolls and branded products sported a hip, multi-ethnic urban look that appealed to contemporary teenage and pre-teen girls.

## MGA's "BRATZ"



 

 

25.   At approximately 9.5 to 10 inches tall, the "BRATZ" dolls were intentionally shorter than "Barbie" dolls and looked like no other, with disproportionately large heads, big, dramatic eyes and lips, small, thin bodies, oversized feet (to emphasize shoe fashion and to stand on their own, unlike "Barbie," which requires a stand), and up-to-date fashions.

7

EXHIBIT 7
PAGE 89

26.   Indeed, the classic "Barbie" look was nowhere to be seen in these dolls; they would never be confused with "Barbie".

<u>MGA's "BRATZ"</u>               <u>Mattel's "Barbie"</u>

  

27.   Featuring and embodying the slogan "The Girls With a Passion for Fashion!", "BRATZ" dolls revitalized, transformed and expanded the fashion doll market, in particular proving popular among "tween" age girls — those between childhood and adolescence — who had been all but abandoned as a market by Mattel.

28.   The "BRATZ" line — with its unique and distinctive look — is well recognized and has been critically acclaimed and praised by consumers, retailers and toy industry analysts alike. In 2001, the "BRATZ" line won the Toy Industry Association ("TIA") People's Choice Toy of the Year Award, the Family Fun Toy of the Year Award and Toy Wishes Hot Pick Award. In 2002, the "BRATZ" line again won the TIA People's Choice Toy of the Year Award and the Family Fun Toy of the Year Award. LIMA, the licensing industry's official arm, awarded MGA's "BRATZ" the best character license of the year as well as the overall best licensed property of the year for 2003. MGA's "BRATZ" also earned the coveted TIA "Property of the Year" and "Girl Toy of the Year" for 2003, as well as the Family Fun Toy of the Year Award. MSNBC named "BRATZ" the "Hottest Toy of the Year," and both MGA and "BRATZ" received several other accolades in

8

EXHIBIT 7
PAGE 90

2004, including the Suppliers Performance Award by Retail Category (the "SPARC" award) in the Girls' Toys category sponsored by DSN Retailing Today/Apparel Merchandising.

29.    Although but a tiny fraction of Mattel's size, with "BRATZ", MGA was able to chip away at Mattel's stranglehold on the fashion doll market, gaining shelf space and market share as "Barbie" sales remained flat or, at times, declined.

30.    The competition that MGA (once a licensee of Mattel!) and "BRATZ" posed to Mattel was unexpected and unwelcomed by Mattel.  Where "Barbie" had once enjoyed a 90% share of the fashion doll market in 1997, that share had already slipped to 85% or less by the time of the release of "BRATZ".  With the company still struggling under Mr. Eckert to overcome prior years of declining sales and mounting debt, "Barbie," Mattel – and Mr. Eckert – simply could not afford the untimely competition.  Mr. Eckert's "leaner" Mattel was not enough to battle more potential erosion in "Barbie's" market share.  Mattel had to combat "BRATZ" and MGA, and in the process revealed Mr. Eckert's "meaner" Mattel.

**Mattel's Response to "BRATZ" and Efforts to Thwart MGA's Competition**

31.    Mattel was not poised to nimbly respond to "BRATZ" with a new, creative product of its own – indeed, it had been antithetical to Mattel's corporate culture and mentality for Mattel to even conceive that a product might vie for shelf space with "Barbie", let alone be available for sale to consumers mere months after first being shown to retailers.  Mattel had to take a more expeditious route.

32.    Instead of fairly competing, Mattel waged war against MGA using a wide-array of tortious, unfair and anti-competitive practices including systematic, serial copycatting and intellectual property infringement, aided by intimidation, threats and other acts of unfair competition and anti-competitive conduct, all with one goal in mind – to banish MGA from the market – or minimize its ability to capture any meaningful share before it could do any real harm to Mattel.

9

EXHIBIT __7__
PAGE __91__

**Mattel's serial copycatting and intellectual property infringement**

33.    Mattel's serial copycatting of MGA's product lines began with the "BRATZ" dolls themselves, but quickly extended to MGA's packaging, themes, accessories, advertising and even other product lines.

34.    The first four "BRATZ" dolls that MGA launched in 2001, named Jade, Yasmin, Cloe and Sasha, met their wannabe "BRATZ PACK" members in October 2002 with Mattel's launch of three "My Scene" dolls named Madison, Chelsea and "Barbie." This was no ordinary "Barbie", however.  Indeed, not even close.  Mattel designed its "My Scene" dolls to evoke the unique and distinctive look of the "BRATZ"  also with disproportionately oversized heads, artfully made-up almond-shaped eyes, large, overly-lined and lipsticked lips, trendy, hip clothes and hair styles, and over-sized feet.

| **Mattel's Traditional "Barbie"** | **Mattel's "My Scene" Doll** | |
| --- | --- | --- |
| | circa 2002 | circa 2004 |

  

 

10

EXHIBIT __7__
PAGE __92__

35.      These confusingly similar "BRATZ" imitators may have been originally intended to buy Mattel time while it worked to release another product the following summer, called "Flavas". MGA's founder, Isaac Larian, was quoted by the media as having predicted that the move would backfire on Mattel, and it did.  Released in July 2003, Mattel's "Flavas" dolls took the urban, "hip-hop" look too far, and were widely viewed as portraying a trampy, "bad-girl" image.  The dolls were not well-received, and rumor has it that Mattel had to sell them at below cost prices to get rid of inventory.  Most apparently wound up in discount bins, and Mattel has seemingly abandoned the line.

36.      Realizing that "My Scene" was its best bet for riding MGA's successful coattails and capitalizing on the unique and inherently distinctive look that MGA had developed in its "BRATZ" dolls   and MGA's substantial goodwill   Mattel has systematically proceeded to modify the "My Scene" dolls since their original release, particularly their eyes, to increase their similarity to "BRATZ" more and more over time.

37.      Indeed, when Mattel found out that its initial line of "My Scene" dolls had trouble competing with "BRATZ", they simply *became* "BRATZ", in every version, whether blonde, brunette or African American.  A few pictures here are worth a thousand words.

**BLONDE**

| Mattel's Traditional "Barbie" | Mattel's Original "My Scene" | Mattel's Recent "My Scene" |





11

EXHIBIT __7__
PAGE __93__

| Mattel's Traditional "Barbie" | Mattel's Original "My Scene" | Mattel's Recent "My Scene" |
|---|---|---|



### BRUNETTE

| Mattel's Traditional "Theresa" | Mattel's Original "My Scene" | Mattel's Recent "My Scene" |
|---|---|---|



EXHIBIT 7
PAGE 94

## AFRICAN AMERICAN

| Mattel's Traditional "Barbie" | Mattel's Original "My Scene" | Mattel's Recent "My Scene" |
|---|---|---|



38.     The original "My Scene" eye, as shown here, for example, has recently turned into a virtual carbon-copy of the "BRATZ" eye.

### Original Mattel "My Scene" Eye



13

EXHIBIT __7__
PAGE __95__

39.    The "My Scene" eye pictured above, for instance, has lashes that radiate almost straight out, circumferentially, from the eyelids and, although the eye is more almond shaped than a "Barbie" eye, the eye is not so sleepy and heavy lidded as a "BRATZ" eye and is only lightly shadowed. The new "My Scene" eye, in contrast, is dramatically more similar to a "BRATZ" eye, as shown below in a side-by-side comparison. The doe-eyed innocent look of the "My Scene" eye shown above is gone; replaced with a sultrier look, characteristic of "BRATZ." The new "My Scene" eye, as shown below, boasts lashes that sweep out and away from the outer corner of the eye, just like the "BRATZ" eye. The new "My Scene" eye is also more heavy lidded and thickly lined, and the make-up is more markedly pronounced and dramatic.

<u>MGA's "BRATZ" Eye</u>

<u>New Mattel "My Scene" Eye</u>





40.    Indeed, the progression of the "My Scene" eye, as it has departed from "Barbie" and edged closer and closer to "BRATZ", is readily apparent from virtually every angle, as shown here:

14

EXHIBIT  7
PAGE  96



EXHIBIT 7
PAGE 91



EXHIBIT 7
PAGE 98

41    Mattel has not stopped at the eyes, however. Mattel has also incrementally but steadily modified its "My Scene" packaging, and the manner in which the dolls are displayed, to more closely mimic the packaging, trade-dress and overall look and total image of MGA's "BRATZ".

42.    To illustrate, Mattel's "My Scene" dolls were initially marketed like this:

### Mattel's Early "My Scene" Packaging



43.    Little by little, however, the packaging has changed, creeping ever closer and closer to the open and transparent style of the "BRATZ" packaging. First, the panels seen running down each side of the front of the "My Scene" box shown above, framing the doll and giving the packaging a closed-in look, were changed as shown here:

### Intermediate Mattel "My Scene" Packaging



17

EXHIBIT 7
PAGE 99

44    Mattel replaced this intermediate packaging style with another that looked even more similar to the "BRATZ" packaging, as shown here in a side-by-side comparison:

| MGA's "BRATZ" "Wintertime Wonderland" Packaging | Mattel's "My Scene" "Chillin' Out" Packaging |




45.    Then later, Mattel changed its packaging and product display yet again to look even more closely and confusingly similar to MGA's packaging and "*tout ensemble,*" as shown here

| MGA's "BRATZ" "SPORTZ" Packaging | Mattel's Recent "My Scene" "MIAMI GETAWAY" Packaging |




18.

EXHIBIT  7
PAGE  100

46.     In this incarnation, Mattel notably abandoned the signature figure-eight style design that had appeared on its prior "My Scene" packaging, making this recent version clearer and more transparent on the front and sides than ever before, and much more like "BRATZ", accordingly.  Mattel also discarded its traditional, rectangular shaped box and, like "BRATZ", adopted an unusual, non-rectangular shaped box.  Mattel even adopted the "flying banner" ribbon-style slogan running across the middle of the box, similar to that used on the "BRATZ" packaging.

47.     As if these pointed and deliberate efforts to confuse and mislead consumers were not enough, Mattel exacerbated the confusion, and furthered the impression that the "My Scene" line and the "BRATZ" line are related, by taking up MGA's practice of regularly releasing new dolls in connection with a theme — but not just *any* theme, often *MGA's theme.*

48.     For example, when MGA released its "Wintertime Wonderland" theme in Fall 2003, Mattel released its "Chillin Out!" theme.  Each doll in MGA's line came with winter-sports accessories, such as a snowboard or skis and ski boots.  Each doll in Mattel's line featured winter sports accessories, also including snowboards or ski and ski boots.  Even MGA's color schemes and some of the clothing styles seemed to have made their way into the Mattel products.

49.     When MGA released its "Formal Funk" theme, Mattel released its "Night on the Town" theme.  "BRATZ Formal Funk" was an elaborately themed line with its dolls in hip formalwear; so was Mattel's "Night on the Town."

50.     When MGA released its distinctive "Sun-Kissed Summer" theme, Mattel released its confusingly similar "Jammin' in Jamaica" theme.  Each line featured a bright blue-and-orange color scheme, beach accessories, such as surfboards, and beachwear clothing.  Mattel's "Jammin' in Jamaica" "Guava Gulch Tiki Lounge" playset also contained elements remarkably similar to MGA's "Sun-Kissed Summer" playset.

EXHIBIT __7____
PAGE __101__

51.   Mattel also began running television commercials for its "My Scene" dolls bearing a remarkable similarity to "BRATZ" commercials, combining live action with animated sequences set to similar sounding pop music and lyrics.

52.   Mattel even stooped so low as to mimic "BRATZ" accessories and related products in order to further create consumer confusion in the marketplace.

53.   For instance, when MGA came up with its distinctive "BRATZ" "Runway Disco", Mattel came out with a "My Scene" Sound Lounge with packaging that imitated MGA's trapezoidal box.

54.   Mattel's conduct cannot be explained by sheer coincidence, nor is it merely fair competition. It is a calculated and intentional effort unquestionably designed to trade off of MGA's hard work and goodwill, create confusion in the marketplace, steal MGA's thunder and momentum, and dilute and blur away the novelty and distinctiveness of MGA's products. Out of the seemingly endless possibilities that Mattel could have chosen for a new line of dolls, packaging, themes, color schemes, commercials, accessories and playsets, Mattel deliberately chose *not* to come out with something unique, new or different and has, instead, focused its efforts and resources on flooding the market with something so close to "BRATZ" that the public will, can, and does, simply mistake it for "BRATZ".

55.   As yet another example of this, when MGA came out with a "BRATZ" "Funky Fashion Makeover Head," Mattel came out with a confusingly similar — indeed, practically identical — "My Scene" styling head.

20

EXHIBIT __7__
PAGE __102__

MGA's "BRATZ"
"Funky Fashion Makeover Head"

Mattel's "My Scene"
"Stylin' Head"



56.   Indeed, Mattel's "My Scene" styling head is so close to the "BRATZ" styling head that even the press have mistakenly pictured and identified it as MGA's "BRATZ". The picture of Mattel's "My Scene" styling head shown below, for instance, appeared in the press with a caption indicating that the child was trying out different hairstyles "on a *Bratz* hair and makeup doll head."

21

EXHIBIT  7
PAGE  103

57.    Creating further confusion, Mattel's television commercial for its "My Scene" styling head was like watching a re-run of MGA's commercial for its "Funky Fashion Makeover Head".

58.    At one point in time, Mattel also used a portion of the "BRATZ" dolls' now-famous trademarked tag line "The Girls With a Passion for Fashion" on Mattel's' website for its "Diva Starz" dolls, asking its website users: "Do you have a passion for fashion?"

59.    Mattel has even recently come out with a confusingly similar line of "My Scene" plush pets, which adopt the distinctive look of MGA's "BRATZ" line. The "My Scene" pets feature large, humanlike eyes and wear clothing making them remarkably and confusingly similar to "BRATZ" products, including "BRATZ PETZ", as seen in this example where the pets each wear a jacket, a cap and carry a purse:

<u>MGA's "BRATZ Dogz"</u>                    <u>Mattel's "My Scene" dog</u>

                    

60.    And here too, Mattel chose to package its pets the same way that MGA packaged its "BRATZ PETZ", sitting in an open box, with no top and with partial side panels that slope from a narrow front panel to a higher back panel.

61.    Indeed, the similarity of the "My Scene" pets to "BRATZ PETZ" has confused even sophisticated retailers who have mistakenly merchandised "My Scene" dogs in the middle of the "BRATZ" section of a retail display, next to and as if they were part of MGA's "BRATZ Petz" line.  It comes as no surprise that

EXHIBIT __7__
PAGE ___104___

1   customers too have been confused.

2       62.   Indeed, Mattel's television commercials and "My Scene" products

3   have become so confusingly similar to MGA's that even advertising executives

4   have expressed concern. One went so far as to say that although imitation is the

5   best form of flattery, what the individual had seen at Mattel's showroom, and how

6   its "My Scene" dolls now look so confusingly similar to "BRATZ", was

7   "shocking." This person further opined that it was clear that Mattel is intending to

8   confuse customers and capture "BRATZ" market share, and even asked MGA if it

9   was considering legal action.

10      63.   The press also has taken notice of Mattel's attempts to confuse

11  consumers. On or about February 18, 2005, a visitor to MGA's showroom from a

12  prominent news publication stated, "Oh my, I just came from Mattel's showroom

13  and their new 'My Scene' packaging is just like 'BRATZ' minus the handle."

14  Another member of the press visiting MGA's showroom offered the unsolicited

15  comment, "have you seen the new 'My Scene' dolls eyes are exactly like

16  'BRATZ'?" Yet another opined that Mattel's "My Scene" line was exactly like

17  "BRATZ", indeed, so much so that the reporter confusingly thought that Mattel had

18  bought "BRATZ", and still another has commented on Mattel's imitation of MGA.

19  On or about February 16, 2005, during an interview of a Mattel representative on

20  local network news in New York, "My Scene Barbie" was displayed by a Mattel

21  representative. During conversation about the dolls, the interviewer exclaimed that

22  they looked like "BRATZ". The Mattel representative just laughed — but this is no

23  laughing matter. This colloquy was available for replay and viewing, and was even

24  transcribed, on the internet.

25      64.   Customers too have been similarly confused. Some actually contacted

26  MGA seeking to purchase "My Scene" dolls.

27      65.   Mattel's conduct is planned, deliberate and intentional. Mattel has

28  systematically, copied, imitated and liberally borrowed many of the distinctive,

23

EXHIBIT __7__

PAGE ___105___

essential elements that identify and make "BRATZ" dolls "BRATZ" dolls, diluting the brand, creating customer confusion, and unfairly stifling competition.

66.    Ironically, Mattel sued one of its other competitors in Europe for doing much the same thing: "systematically copying and borrowing elements" from "My Scene", on grounds that "this conduct constitutes unfair competition and passing off." Indeed it does.

67.    What is more, Mattel's conduct has reached beyond "BRATZ" and "BRATZ"-related products to include other new MGA toy lines.

68.    For example, MGA's "4-Ever Best Friends" line was the obvious, and well-recognized model for Mattel's "Wee 3 Friends" line. Mattel even adopted changes to the color scheme of its similarly-shaped packaging to create confusion with MGA's distinctive packaging.

| MGA's "4-Ever Best Friends" | Mattel's "Wee 3 Friends" |
| --- | --- |
|  |  |
|  |  |

24

EXHIBIT ___7___
PAGE ___10(6___

69.     In the second half of 2002, MGA's "Mommy's Little Patient," originally designed as the first in a series of "Mommy's Little . . ." dolls, was followed by Mattel's "Little Mommy" doll.

| MGA's "Mommy's Little Patient" | Mattel's "Little Mommy Potty Training Baby Doll" |
|---|---|
|  |  |

70.     Sparing nothing, Mattel has also extended its monkey-see monkey-do behavior into its boys' line.  When MGA came out with its "Alien Racers" line of toy racing vehicles, for instance, Mattel rushed to revamp and rename one of its "Hot Wheels" lines.  Although well-known and clearly branded for decades as "Hot Wheels", Mattel's answer to MGA's "Alien Racers" was to re-brand and market its Hot Wheels Highway 35 line under an "AcceleRacerS" logo.  MGA's line consists of "extreme" radio controlled racing vehicles marketed in connection with a strong, almost battle-like, science fiction theme.  MGA's logo accentuates the "A", "R", and "S" in compressed block lettering.  Mattel's line also consists of extreme racing vehicles marketed in connection with a strong, almost battle-like, theme.  Mattel's logo too accentuates the "A", "R", and "S" in compressed block lettering.

25

EXHIBIT ___7___
PAGE ___107___

71.    Here, too, Mattel's mimicry has spilled over into Mattel's advertising and thematic presentation and marketing of this toy line. In particular, Mattel has adopted MGA's "other-worldly" theme in its commercials. For instance, in Mattel's commercials, the product, whose logo appears as "AcceleRacerS", now compete against alien-like Cyborgs engaged in a "race to save the world," mimicking MGA's alien theme and commercials in which MGA's "Alien Racers" are engaged in a "race to save the universe."

72.    None of this is coincidence. Mattel has deliberately adopted a pattern and practice of coming out with variations of MGA's products to create confusion in the marketplace, interfere with MGA's business and divert profits away from MGA. Mattel says, on its website, that it is in the business of creating "[t]he world's premier toy brands [of] today and tomorrow." It seemingly does so, however, by borrowing liberally from its competitors, even when it refreshes its own existing brands and products.

73.    MGA has suffered extensive injury from Mattel's conduct. Mattel's habitual, serial simulation of MGA's products, product lines and trade dress has allowed Mattel to take a free ride on the extensive amount of time, expense and creative development MGA expends on developing new products, product packaging and presentation, giving Mattel an unfair advantage, and making it virtually impossible for MGA to compete with Mattel on a level playing field.

**Mattel's additional unfair, manipulative, anti-competitive conduct**

74.    This already substantial injury has been exacerbated by the strong-arm tactics, and other illegitimate, unfair and anti-competitive means that Mattel has used to manipulate the market and ensure that its control and domination of the industry can continue unabated.

26

EXHIBIT ___7___
PAGE ___108___

75.     For example, wielding the litigation privilege as a potential shield for intimidating conduct, Mattel has sent threatening letters to several of its former employees who now work for MGA warning them not to disclose *even publicly available information* about Mattel, including the names and positions of Mattel employees. Mattel even went so far as to sue one of its former senior executives, after he had the temerity to resign and join MGA in October 2004. Not only was Mattel's lawsuit dismissed for failure to state a viable claim, but Mattel thereafter seemingly could not muster up a shred of evidence sufficient to support an amended complaint. As a result, Mattel's case against its former executive was dismissed with prejudice.

76.     Mattel has also warned a number of companies, including the biggest publishing entity in the United Kingdom, not to license MGA products, or risk retribution. The threats are not idle. In May 2004, Mattel terminated one of its licensees, apparently in retribution for licensing "BRATZ". While some companies have been courageous enough to take the risk, others have not, and MGA has lost valuable licensing opportunities as a result.

77.     Mattel has used similar intimidation to pressure distributors and retailers, particularly in foreign countries, not to distribute "BRATZ", to reduce shelf and display space for "BRATZ" and to place "BRATZ" in unfavorable locations at retail outlets.

78.     When MGA faced a shortage of doll hair in October 2002, MGA is informed and believes that the reason for that shortage was that Mattel had locked MGA out by buying up the supply from the two main hair supply companies.

79.     Mattel has also manipulated the retail market. For instance, Mattel merchandisers have been caught tampering with MGA's retail displays, replacing favorably located MGA merchandise with Mattel merchandise instead. MGA is also informed and believes that Mattel has falsely told a major United States retailer that MGA was giving another major United States retailer below-market pricing

EXHIBIT __7__
PAGE __107__

1    and falsely told a United Kingdom retailer that MGA was discontinuing one of its
2    lines, in order to make such line less attractive to buyers and thereby attempt to
3    increase sales of the competitive Mattel product and improve its own sales, at
4    MGA's expense.

5         80.   Even supposedly unbiased and impartial industry organizations have
6    fallen prey to Mattel's abusive wield of power, to MGA's detriment.

7         81.   NPD Funworld ("NPD"), for one, is the leading supplier of sales
8    statistics in the toy industry. Accurate NPD statistics are essential for efficient
9    product-line management. Without these statistics, it is difficult, if not impossible,
10   for toy companies to assess and measure the relative success of their products in
11   key categories. It is, however, a subscription service, and NPD restricts the manner
12   in which its subscribers may use the data it provides.

13        82.   Mattel has regularly ignored the restrictions – using NPD data about
14   Mattel's comparative standing relative to other companies in press releases and in
15   communications with retailers and financial investors who are not NPD subscribers.

16        83.   Mattel generates substantially more annual subscription revenue for
17   NPD than does MGA, and carries more clout.

18        84.   After MGA had subscribed to the service for more than 12 years, NPD
19   terminated MGA's subscription in 2003 theoretically on the grounds that MGA
20   misused NPD data in a press release.

21        85.   MGA is informed and believes that the termination was the result of
22   pressure from Mattel, notwithstanding Mattel's own frequent violations of NPD's
23   restrictions.

24        86.   In addition to this, the market share numbers that NPD generates are
25   heavily dependent on the category in which NPD places a particular product. MGA
26   is informed and believes that Mattel also pressured NPD into changing certain
27   product classifications for its "BRATZ" products in order to manipulate the data

28

EXHIBIT ___7___
PAGE ___110___

1  and preserve Mattel's market share rankings in the critical fashion doll category –

2  and thereby lower MGA's.

3      87.    The Children's Advertising Review Unit ("CARU") is another

4  organization that, upon information and belief, appears to have been subject to

5  improper influence by Mattel.  CARU is the toy industry's supposedly independent

6  self-regulatory body in charge of maintaining standards in advertising.  CARU's

7  approval is considered critical within the toy industry to avoiding regulatory action

8  by the Federal Trade Commission.

9      88.    CARU is heavily subsidized by Mattel.

10     89.    Upon information and belief, Mattel has used its influence as a major

11 contributor to CARU's budget to induce CARU to place onerous restrictions on

12 MGA advertisements, and require MGA to amend aspects of commercials that have

13 gone unchallenged in other parties' commercials.

14     90.    As a result of CARU's restrictions, MGA has been forced to incur

15 unnecessary costs for reshooting and producing or re-editing its commercials.

16     91.    On several occasions, CARU has also either strongly suggested, if not

17 also required, that MGA respond to inquiries about its website policies and make

18 substantial changes to the "BRATZ" website notably and significantly in excess of

19 restrictions imposed on Mattel and others.

20     92.    Even TIA, the toy industry's trade association, is apparently not

21 untainted by Mattel's influence and power.  Each year, TIA presents the Toy-of-

22 the-Year Awards, the most prestigious of which had been the award for Toy of the

23 Year.  Winning the Toy of the Year Award is a significant achievement that not

24 only very likely increases the sales of the winning toy, but also denotes the winning

25 company as a leader in toy innovation and generates substantial goodwill with

26 retailers, distributors, licensees, and customers.

27     93.    For the years 2000 (the first year of the award), 2001 and 2002, the

28 Toy of the Year award was chosen by consumer vote.  The awards ceremony was

EXHIBIT ___7___
PAGE ___111___

1  then held the following year. at a dinner in New York. (For example, the awards

2  dinner for the year 2000 award was held in February 2001). Leap Frog won the

3  2000 People's Choice Toy of the Year Award and MGA won the 2001 and 2002

4  People's Choice Toy of the Year Awards. With the 2003 Toy of the Year Award,

5  however, the rules suddenly changed. Now, the award is selected by members of

6  the industry.

7       94.    Upon information and belief, this change was orchestrated by a Fisher

8  Price (a Mattel subsidiary) executive who, until recently, served as the Chairman of

9  TIA.

10       95.    Perhaps not surprisingly given this change in the winner selection

11  procedures, "Hokey Pokey Elmo" ("Elmo"), a Fisher Price toy, won for the year

12  2003 (awarded in 2004), beating out the other leading nominee, "BRATZ Formal

13  Funk Super Stylin' Runway Disco."

14       96.    TIA has refused to provide MGA with the vote count procedure and

15  totals for this award, despite repeated requests.

16       97.    MGA is also informed and believes that Mattel was instrumental in

17  attempting to keep MGA from participating as a sponsor in this year's "Kids'

18  Choice Awards."

19       98.    Mattel has clearly engaged in tortious, illegal and unethical behavior in

20  its unfettered efforts to disrupt, if not destroy, MGA. Indeed, this is apparently

21  Mattel's current *modus operandi* when it comes to "competing" in the industry.

22  The once immensely successful "LeapFrog" interactive learning product, for

23  example, has apparently been one of Mattel's other recent victims.

24       99.    Mattel may not shield its illegal, unfair and unethical business practices

25  from the public eye. It is time for the truth to be told, and the world to know of

26  Mattel's unfair, unethical and illegal business practices and unfair competition.

27  "Barbie" does not "play nice" with others (particularly her competitors), and needs

28  to be taught how "to share" (at least in the fashion doll marketplace). She cannot be

30

EXHIBIT __7__
PAGE ____112____

1    allowed to continue to be the playground bully and trample on the rights of others,

2    including MGA.

3         100.   As a result of Mattel's manipulative, illegal, unfair, unethical and anti-

4    competitive conduct, MGA has suffered and, unless abated, will continue to suffer

5    lost sales, lost licensing fees, lost contracts, lost relationships, lost business

6    opportunities and other damages and harm for which there is no adequate remedy at

7    law. Its ability to enter new markets and product lines has been hampered and

8    delayed. Its production costs have increased, its reputation and relationships with

9    important players in the industry have been negatively impacted, the value of its

10   business has been diminished, and its ability to attract, hire and retain employees

11   has been affected.

12

13                    **FIRST CLAIM FOR RELIEF**

14   **(False Designation of Origin or Affiliation in Violation of 15 U.S.C. § 1125 (a))**

15        101.   MGA repeats and realleges the allegations contained in paragraphs 1

16   through 100 of this Complaint and incorporates them by reference as though fully

17   and completely set forth herein.

18        102.   MGA's "BRATZ" line has a unique and distinctive style and

19   distinctive characteristics, such as the disproportionately large head, large dramatic

20   eyes with a distinctive presentation (including the eye shape, make-up and lashes),

21   pouty, plump lips with a distinctive presentation (including the lip shape and make-

22   up), small, thin bodies, oversized feet, and up-to-date fashions. MGA's "BRATZ"

23   line is known for and recognized by the total image that is presented by its product

24   and the style and arrangement of the packaging and display. This "*tout ensemble*"

25   is representatively described and depicted herein. The characteristics of MGA's

26   "BRATZ" line, alone or in combination, have come to identify the "BRATZ" line

27   and its source, MGA, and thus serve as protectable trade dress. MGA's trade dress

28   in its "BRATZ" line is purely aesthetic and non-functional or, if any utility exists, it

                                          31

EXHIBIT **7**

PAGE **113**

1  is not essential to the purpose, quality or source identifying attributes of the
2  aesthetics. MGA's trade dress in its "BRATZ" line is inherently distinctive or has
3  acquired distinction within the meaning of the Lanham Act.

4      103. Similarly, MGA's "BRATZ PETZ," part of the "BRATZ" line, also
5  has its own unique and distinctive characteristics, such as the humanlike eye and
6  unusual appearance of the animals dressed in clothing. MGA's "BRATZ PETZ"
7  line has become known for and recognized by the total image that is presented by
8  the product and the style and arrangement of its packaging. This *"tout ensemble"* is
9  representatively described and depicted herein. The characteristics of MGA's
10  "BRATZ PETZ", alone or in combination, have come to identify the "BRATZ
11  PETZ" line and its source, MGA, and thus serve as protectable trade dress. MGA's
12  trade dress in its "BRATZ PETZ" line is purely aesthetic and non-functional or, if
13  any utility exists, it is not essential to the purpose, quality or source identifying
14  attributes of the aesthetics. MGA's trade dress in its "BRATZ PETZ" line is
15  inherently distinctive or has acquired distinction within the meaning of the Lanham
16  Act.

17      104. Mattel's production, sale and marketing of "My Scene" dolls,
18  including styling heads and doll heads, and "My Scene" pets that are confusingly
19  similar to MGA's "BRATZ" line (including its "BRATZ PETZ"), without MGA's
20  permission or consent, constitutes designation and use of a term, symbol, device or
21  combination thereof that is false or misleading within the meaning of 15 U.S.C.
22  Section 1125 and is likely to cause confusion, or to cause mistake, or to deceive as
23  to the affiliation, connection, or association, or as to the origin, sponsorship, or
24  approval of Mattel's goods or commercial activities, within the meaning of 15
25  U.S.C. Section 1125. MGA has been damaged by Mattel's acts.

26      105. Mattel's conduct has been intentional and willful, and is calculated
27  specifically to trade off the goodwill that MGA has developed in its successful
28  "BRATZ" line. By its aforesaid acts, particularly its imitation of the distinctive

32

EXHIBIT __7__
PAGE __114__

1  features of MGA's "BRATZ" line in connection with goods sold and distributed in

2  interstate commerce, Mattel has infringed and is likely to continue to infringe on

3  MGA's substantial rights in and to the "BRATZ" line trade dress. In so doing,

4  Mattel has falsely represented and designated to the public generally and consumers

5  of fashion doll products specifically the source and origin of Mattel's "My Scene"

6  fashion doll products in violation of 15 U.S.C. § 1125(a).

7      106.  MGA has been damaged by, and Mattel has profited from, Mattel's

8  wrongful conduct in an amount to be proven at trial.

9      107.  For each act of infringement, MGA is entitled to recover its actual

10  damages as well as Mattel's profits from such infringement.

11      108.  Monetary relief alone, however, is not adequate to address fully the

12  irreparable injury that Mattel's illegal actions have caused and will continue to

13  cause MGA, if not enjoined. MGA is therefore entitled to preliminary and

14  permanent injunctive relief to stop Mattel's ongoing infringement of MGA's trade

15  dress.

16              **SECOND CLAIM FOR RELIEF**

17      **(Unfair Competition in Violation of 15 U.S.C. § 1125 (a) and Unfair**

18  **Competition and Unfair Business Practices in Violation of Cal. Bus. & Prof.**

19          **Code § 17200 *et seq.* and California Common Law)**

20      109.  MGA repeats and realleges the allegations contained in paragraphs 1

21  through 108 of this Complaint and incorporates them by reference as though fully

22  and completely set forth herein.

23      110.  Mattel has deliberately and, indeed, repeatedly adopted, imitated and

24  mimicked the make-up, appearance, features, trade dress, and image of MGA's

25  products, packaging and advertising, including its repackaging and refreshing of

26  older Mattel toys. Mattel's actions were and are done with the intent to deceive

27  consumers, cause confusion and mistake, and interfere with the ability of

28  consumers to identify the source of goods by appearance and packaging. By this

EXHIBIT __7__
PAGE ____116____

1   conduct, Mattel pirates and exploits, by subliminal or conscious association with
2   MGA, the goodwill and reputation of MGA and derives benefit therefrom.
3       111.   Mattel has particularly and deliberately poached upon the commercial
4   magnetism of MGA's "BRATZ" and the success of "BRATZ". Mattel's conduct
5   has been intentional and willful, and is calculated specifically to trade off the
6   goodwill that MGA has developed in its successful "BRATZ" line.
7       112.   By its acts, including its intentional imitation of the distinctive features
8   of MGA's "BRATZ" dolls, which has progressively become closer and closer, as
9   well as its imitation of "BRATZ" themes, packaging and the overall look, feel and
10   total image of the "BRATZ" line, imitation of other MGA products, packaging and
11   advertising, and other conduct alleged herein, Mattel has engaged in unfair
12   competition under both federal and California state law.
13       113.   Mattel has also willfully and maliciously used its power, influence and
14   intimidation to threaten certain retailers, suppliers, licensees, distributors and
15   manufacturers so as to limit, if not prevent, MGA from doing business with these
16   retailers, suppliers, licensees, distributors and manufacturers, using its power and
17   influence to intimidate and manipulate industry bodies. Mattel has further used its
18   power and influence to attempt to, if not actually, intimidate and threaten MGA's
19   current and potential employees so as to cause MGA competitive injury.
20       114.   Alone, in combination, or in totality, Mattel's actions discussed and
21   alleged herein constitute unfair competition and unfair business practices within the
22   meaning of federal law, California statutory law and/or California common law.
23       115.   As a result of its conduct, Mattel has derived substantial monetary and
24   non-monetary benefit and business advantage. Mattel has also wrongfully diverted
25   profits away from MGA and to Mattel and, on information and belief, deprived
26   MGA of the patronage of a large number of actual and potential customers.
27       116.   MGA has been damaged by, and Mattel has profited from, Mattel's
28   wrongful conduct in an amount to be proven at trial.

34

EXHIBIT __7__
PAGE ___116___

117.   Monetary relief alone, however, is not adequate to address fully the irreparable injury that Mattel's actions have caused and will continue to cause MGA, if not enjoined.  MGA is therefore entitled to preliminary and permanent injunctive relief to stop Mattel, and all persons acting in concert with Mattel, from engaging in acts of unfair competition and unfair business practices.

118.   MGA is further entitled to relief whereby Mattel is ordered to pay restitution for damages resulting from Mattel's unfair competition and unfair business practices.

### THIRD CLAIM FOR RELIEF

### (Dilution in Violation of 15 U.S.C. § 1125 (c); Cal. Bus. & Prof. Code § 14330 and California Common Law)

119.   MGA repeats and realleges the allegations contained in paragraphs 1 through 118 of this Complaint and incorporates them by reference as though fully and completely set forth herein.

120.   The look and trade dress of the MGA products referenced herein are distinctive and famous, and have been since before Mattel launched its similar versions.  By its aforesaid acts, Mattel caused and continues to cause blurring and dilution of the distinctive look of MGA's products and trade dress, which previously served as a unique source identifier for MGA, within the meaning of the Lanham Act, California Business and Professions Code § 14330 and/or California common law.

121.   Mattel's conduct has been intentional and willful, calculated specifically to trade on MGA's goodwill and reputation and to cause dilution of MGA's famous marks, particularly those connected with MGA's famous and successful "BRATZ" doll head, "BRATZ" doll product line, "BRATZ Funky Fashion Makeover Head" and "BRATZ PETZ" line.

122.   MGA has been damaged by, and Mattel has profited from, Mattel's wrongful conduct in an amount to be proven at trial.

35

EXHIBIT __7__
PAGE ___117___

123. Monetary relief alone, however, is not adequate to address fully the irreparable injury that Mattel's actions have caused and will continue to cause MGA, if not enjoined. MGA is therefore entitled to preliminary and permanent injunctive relief to stop Mattel's ongoing dilution.

## FOURTH CLAIM FOR RELIEF

### (Unjust Enrichment)

124. MGA repeats and realleges the allegations contained in paragraphs 1 through 123 of this Complaint and incorporates them by reference as though fully and completely set forth herein.

125. As a result of the conduct alleged herein, Mattel has been unjustly enriched to MGA's detriment. MGA seeks a worldwide accounting and disgorgement of all ill-gotten gains and profits resulting from Mattel's inequitable activities.

## PRAYER FOR RELIEF

WHEREFORE, MGA prays for relief, as follows:

1. That Mattel, its agents, servants and employees and all persons acting in concert be restrained preliminarily and permanently from directly or indirectly:

    a.    using confusingly similar trade dress;

    b.    improperly influencing, or attempting to improperly influence, standard-setting and industry organizations;

    c.    engaging in unfair competition and unfair business practices; and

    d.    diluting MGA's trade dress;

2. For general and actual damages, according to proof at trial but believed to reach or exceed tens of millions of dollars;

3. For the disgorgement of all profits derived by Mattel for its acts of:

    a.    false designation of origin or affiliation;

36

EXHIBIT 7
PAGE 118

1            b.      unfair competition and unfair business practices; and

2            c.      dilution;

3      4.      For costs of suit and reasonable attorneys' fees;

4      5.      For punitive and/or exemplary damages as a result of Mattel's willful

5 and malicious conduct to the extent allowable by law; and

6      6.      For such other and further relief as the Court deems just and proper.

7

8 Dated:      April 13, 2005            PATRICIA GLASER
9                                   CHRISTENSEN, MILLER, FINK,
                                  JACOBS, GLASER, WEIL &
10                                   SHAPIRO LLP

11                                   DALE M. CENDALI
                                  DIANA M. TORRES
12                                   PAULA E. AMBROSINI
                                  O'MELVENY & MYERS LLP

13

14

15                                   By: _____
16                                       Diana M. Torres
                                  Attorneys for Plaintiff
17                                   MGA ENTERTAINMENT, INC.

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT __7__

PAGE __119__

1

## DEMAND FOR JURY TRIAL

2

3      MGA hereby demands a jury trial on all triable issues.

4

5   Dated:      April 13, 2005

PATRICIA GLASER
CHRISTENSEN, MILLER, FINK,
JACOBS, GLASER, WEIL &
SHAPIRO LLP

6

7

DALE M. CENDALI
DIANA M. TORRES
PAULA E. AMBROSINI
O'MELVENY & MYERS LLP

8

9

10

11   By: _____
Diana M. Torres
Attorneys for Plaintiff
MGA ENTERTAINMENT, INC.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

38

EXHIBIT __7__

PAGE ___120___