# EMPLOYEE CONFIDENTIAL INFORMATION AND INVENTIONS AGREEMENT

I acknowledge that Mattel, Inc. (the "Company") operates in a competitive environment and that it enhances its opportunities to succeed by establishing certain policies, including those included in this Agreement. This Agreement is designed to make clear that: (i) I will maintain the confidentiality of the Company's trade secrets; (ii) I will use those trade secrets for the exclusive benefit of the Company; (iii) inventions that I make will be owned by the Company; (iv) my prior and continuing activities separate from the Company will not conflict with the Company's development of its proprietary rights; and (v) when and if my employment with the Company terminates I will not use my prior position with the Company to the detriment of the Company. In consideration of my employment with the Company and other good and valuable consideration, I agree that:

## 1. Provisions Related to Trade Secrets

(a) I acknowledge that the Company possesses and will continue to develop and acquire valuable Proprietary Information (as defined below), including Information that I may develop or discover as a result of my employment with the Company. The value of that Proprietary Information depends on it remaining confidential. The Company depends on me to maintain that confidentiality, and I accept that position of trust.

(b) As used in this Agreement, "Proprietary Information" means any information (including formula, pattern, compilation, device, method, technique or process) that derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use, and includes information on the Company, its customers, suppliers, joint ventures, licensors, licensees, distributors and other persons and entities with whom the Company does business.

(c) I will not disclose or use at any time either during or after my employment with the Company, any Proprietary Information except for the exclusive benefit of the Company as required by my duties for the Company, or as the Company expressly may consent to in writing. I will cooperate with the Company and use my best efforts to prevent the unauthorized disclosure, use or reproduction of Proprietary Information.

(d) Upon leaving employment with the Company for any reason, I immediately will deliver to the Company all tangible, written, graphical, machine readable and other materials (including all copies) in my possession or under my control containing or disclosing Proprietary Information.

## 2. Ownership of Inventions

(a) I agree to communicate to the Company as promptly and fully as practicable all Inventions (as defined below) conceived or reduced to practice by me (alone or jointly by others) at any time during my employment by the Company. I hereby assign to the Company and/or its nominees all my right, title and interest in such Inventions, and all my right, title and interest in any patents, copyrights, patent applications or copyright applications based thereon. I will assist the Company and/or its nominees (without charge but at its expense in me) at any time in every proper way to obtain for it and/or their own benefit, patents and copyrights for all such inventions anywhere in the world and to enforce its and/or their rights in legal proceedings.

(b) As used in this Agreement, the term "Inventions" includes, but is not limited to, all discoveries, improvements, processes, developments, designs, know-how, data computer programs and formulae, whether patentable or unpatentable.

(c) Any provision in this Agreement requiring me to assign my rights in any Invention does not apply to an Invention which qualifies under the provision of Section 2870 of the California Labor Code. That section provides that the requirement to assign "shall not apply to an Invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities or trade secret information except for those Inventions that either (1) relate at the time of conception or reduction to practice of the Invention to the employer's business, or actual or demonstrably anticipated research or development, of the employer; or (2) result from any work performed by the employee for the employer." I understand that I bear the burden of proving that an Invention qualifies under Section 2870.

(d) I hereby irrevocably designate and appoint the Company and each of its duly authorized officers and agents as my agent and attorney-in-fact to act for and in my behalf and stead to execute and file any document and to do all other lawfully permitted acts to further the prosecution, issuance and enforcement of patents, copyrights and other proprietary rights with the same force and effect as if executed and delivered by me.

## 3. Conflicts with Other Activities

(a) My employment with the Company requires my undivided attention and effort. Therefore, during my employment with the Company, I will fully comply with the Company's Conflict of Interest Policy, as it may be amended from time to time. I shall not, without the Company's express written consent, engage in any employment or business other than for the Company, or invest in or assist (in any manner) any business competitive with the business or future business plans of the Company.

## 4. Miscellaneous

(a) My obligations under this Agreement may not be modified or terminated, in whole or in part, except in writing signed by a Vice-President of the Company. Any waiver by the Company of a breach on any provision of this Agreement will not operate or be construed as a waiver of any subsequent breach.

(b) Each provision of this Agreement will be treated as a separate and independent clause, and the unenforceability of any one provision will in no way impair the enforceability of any other provision. If any provision is held to be unenforceable, such provision will be construed by the appropriate judicial body by limiting or reducing it to the minimum extent necessary to make it legally enforceable.

(c) My obligation under this Agreement will survive the termination of my employment, regardless of the manner of such termination. This Agreement will inure to the benefit of and be binding upon the successors and assigns of the Company.

(d) I understand that the provisions of this Agreement are a material condition to my employment with the Company. I also understand that this Agreement is not an employment contract, and nothing in this Agreement creates any right to my continued employment by the Company, or to my employment for any particular term.

(e) Any breach of this Agreement likely will cause irreparable harm to the Company for which money damages could not reasonably or adequately compensate the Company. Accordingly, I agree that the Company will be entitled to injunctive relief to enforce this Agreement, in addition to damages and other available remedies.

(f) This agreement will be governed by and interpreted in accordance with the laws of the State of California.

(g) This Agreement contains the complete agreement between the Company and me concerning the subject matter hereof and supersedes all other agreements and understandings. This Agreement may be executed in counterparts. The Agreement will be deemed effective as of the start of Employee's employment with the Company.

**CAUTION: THIS AGREEMENT CREATES IMPORTANT OBLIGATIONS OF TRUST AND AFFECTS THE EMPLOYEE'S RIGHTS TO INVENTIONS THE EMPLOYEE MAY BE MAKING DURING HIS OR HER EMPLOYMENT.**

_Employee Signature_

Employee Name (print)   CARTER H. BRYANT

Date   01/04/99

MATTEL, INC.

_Signature_

Name of Witness (print)   TERESA NEWCOMB

EXHIBIT ___ PAGE 102

M 0001622

EXHIBIT   35

PAGE   603

EXHIBIT B

EXHIBIT __35__
PAGE ___604___

# CONFLICT OF INTEREST QUESTIONNAIRE

_BRYANT, CARTER H._   _PROJECT DESIGNER_

Name (last, first, MI)           Job Title           Department

Instructions: The purpose of this questionnaire is to confirm the propriety of relations between our key employees and our suppliers and competitors. Please read the definitions below and Mattel's policies concerning Conflicts of Interest. Then answer the questions by checking the correct answer. Base your answers on personal knowledge. There is no need to make inquiries or seek additional information since lack of knowledge of a situation indicates that there is no conflict of interest. Your answers to questions 1 through 8 should cover the past twelve months and the term "you" should include members of your immediate family.

Mattel Supplier is interpreted broadly for purposes of this questionnaire. A Mattel supplier is any person, partnership, trust, corporation, or other enterprise which during the past twelve months has done business or currently contemplates doing business with Mattel or any Mattel subsidiary.

Mattel Competitor is interpreted broadly for purposes of this questionnaire. A Mattel competitor is any person, partnership, trust, corporation, or other enterprise which has done business or contemplates doing business in any field that is in competition with Mattel or any Mattel subsidiary.

Interest means direct or indirect ownership of any stock, bond, option or right to purchase any security, share in profits, investment, partnership interest or other profit participation or equity interest whatsoever. Interest also means any agreement to perform services for or consult with or to deliver materials to or to receive compensation of any kind from any supplier or competitor. You may disregard mutual investment trusts and publicly-owned corporations whose securities are traded publicly, in which you own not more than $25,000 in market value, but not to exceed 10% of an individual's net worth.

Recipient of any commission, etc., means receipt of anything of value, in cash or in kind, over $60 on any one occasion or over $300 total during the past twelve months.

○ YES ● NO   1. Have you owned, directly or indirectly, any interest in a Mattel supplier?

○ YES ● NO   2. Have you owned, directly or indirectly, and interest in a Mattel competitor?

○ YES ● NO   3. Have you been the recipient of any commission, fee, loan, trip, gift, benefit or anything else of value that is derived in any way from a Mattel supplier?

● YES ○ NO   4. Have you been the recipient of any commission, fee, loan, trip, gift, benefit or anything else of value that is derived in any way from a Mattel competitor?

● YES ○ NO   5. Have you or any relative of yours by blood or marriage been a director, officer, consultant, agent, employee, or representative of or acted for any Mattel competitor in any capacity?

○ YES ● NO   6. Have you or any relative of yours by blood or marriage been a director, officer, consultant, agent, employee, or representative of or acted for any Mattel supplier in any capacity?

○ YES ● NO   7. Have you engaged in any activity including the acquisition or ownership of any interest, for personal profit, not expressly within the scope of the foregoing with respect to any supplier or competitor?

○ YES ● NO   8. Excepting normal everyday transactions (purchase of toys, etc.) have you engaged in any business venture or transaction involving a Mattel supplier or competitor or engaged in any activity which could be objectively construed as being a conflict of interest or allegiance?

○ YES ● NO   9. Are you aware of any activity of any employee which you believe could be construed as a potential conflict of interest with Mattel?

If your answer to any of the above questions is "yes," please explain in the space below:

_4, 5,   freelance design & artwork in 1998._
_from appx. 5/98 - 11/98 for the Ashton-Drake_
_galleries_

I certify that I have read Mattel's policies concerning Conflict of Interest and the answers to the above questions are true. I understand that failure to answer this questionnaire fully and truthfully constitutes grounds for immediate termination of my employment. I agree not to divulge any company information to unauthorized recipients. I also agree to notify my superior immediately of any changes in my situation that would cause me to answer any of the above questions differently. I further certify that, to the best of my knowledge, neither I nor any member of my immediate family is or has been engaged in any capacity which creates a Conflict of Interest.

_Carter H. Bryant_   _01/04/98_
Signature                          Date

EXHIBIT C

EXHIBIT __35__
PAGE ___606___

# EXHIBIT C

## TABLE OF COMMUNICATIONS

| Number | Date | Type of Communication | Bates Reference |
|---|---|---|---|
| 1 | 8/2000 | Phone calls from Carter Bryant to Veronica Marlow on 8/24, 8/24, 8/24, 8/24 and 8/29 (Ph. No. 818-517-0640). | M 0001808 - M 0001810 |
| 2 | 10/26/2000 - 11/8/2000 | Phone calls from Carter Bryant to Hong Kong on 10/26 (Phone No. 852 23120101). | BRYANT 01294 - BRYANT 01296 |
| 3 | 10/23/2000 - 11/21/2000 | Phone calls from Carter Bryant to Hong Kong on 10/26, 11/12 and 11/15 (Ph. Nos. 852 29268008 and 852 27215215). | BRYANT 01297 - BRYANT 01299 |
| 4 | 1/22/01- 2/21/01 | Phone calls from Carter Bryant to Hong Kong on 2/18, 2/18 and 2/18 (Ph. No. 852 29268008). | BRYANT 01300- BRYANT 01303 |
| 5 | 9/12/2000 - 9/13/2000 | Email from Victoria O'Connor to Isaac Larian: Email from Isaac Larian to Victoria O'Connor | MGA 0064571 |
| 6 | 9/14/2000 | Facsimile transmission from Carter Bryant to David Rosenbaum (attorney for MGA) | MGA007337 - MGA007340 |
| 7 | 9/17/2000 | Facsimile transmission from Carter Bryant to Kinuyo Shichijyo | BRYANT 01200 - BRYANT 01201 |
| 8 | 9/19/2000 | Email from David Rosenbaum to Carter Bryant, Victoria O'Connor and Isaac Larian | MGA001355 |
| 9 | 9/27/2000 | Email from Paula Treantafelles to Franki Tsang et al. | MGA000422 |
| 10 | 10/3/2000 - 10/4/2000 | Email from Mercedeh Ward to Isaac Larian; Email from Isaac Larian to Victoria O'Connor and Michele Thompson | MGA 0064572 |
| 11 | 10/4/2000 | Emails from David Rosenbaum to Anne Wang (attorney for Carter Bryant) and Victoria O'Connor | MGA001318-27, MGA001329 |
| 12 | 10/5/2000 | Email from Carter Bryant to Isaac Larian; Email from Isaac Larian to Carter Bryant et al. | MGA000423 |
| 13 | 10/5/2000 | Email from Isaac Larian to Carter Bryant et al. | MGA 0064575 |

00505 07975/2870497.2

EXHIBIT 35
PAGE 407

EXHIBIT C
PAGE 104

| Number | Date | Type of Communication | Bates Reference |
|---|---|---|---|
| 14 | 10/16/2000 - 10/17/2000 | Email from Paula Treantafelles to Cecilia Kwok et al.; Email from Judy Rich to Isaac Larian et al.; Email from Mercedeh Ward to Judy Rich et al.; Email from Isaac Larian to Mercedeh Ward et al. | MGA 0009131R- MGA 0009132R |
| 15 | 10/17/2000 | Email from Paula Treantafelles to Isaac Larian et al.; Email from Isaac Larian to Paula Treantafelles et al. | MGA 0009128R |
| 16 | 10/17/2000 - 10/23/2000 | Email from Paula Treantafelles to Cecilia Kwok et al.; Email from Cecilia Kwok to Paula Treantafelles et al.; Email from Mercedeh Ward to Cecilia Kwok et al.; Email from Samuel Wong to Mercedeh Ward et al.; Emails from Paula Treantafelles to Samuel Wong et al.; Email from Samuel Wong to Paula Treantafelles et al.; Emails from Carter Bryant to Paula Treantafelles; Email from Paula Treantafelles to Carter Bryant | MGA 0052031 - MGA 0052036 |
| 17 | 10/18/2000 | Email from Mercedeh Ward to Franki Tsang et al.; Email from Samuel Wong to Mercedeh Ward et al. | MGA000425 - MGA000426 |
| 18 | 10/20/2000 | Email from Kerri Legg to Steve Linker and Liz Hogan et al. | MGA0008032 - MGA0008034 |
| 19 | 10/23/2000 - 10/26/2000 | Email from Isaac Larian to Mercedeh Ward and Paula Treantafelles; Email from Mercedeh Ward to Isaac Larian and Paula Treantafelles; Email from Isaac Larian to Franki Tsang et al. | MGA 0065335 |
| 20 | 10/24/2000 | Email from Carter Bryant to Kinuyo Shichijyo; Email from Carter Bryant to Paula Treantafelles | MGA000427 - MGA000428 |
| 21 | 10/24/2000 - 10/25/2000 | Email from Carter Bryant to Kinuyo Shichijyo; Email from Carter Bryant to Paula Treantafelles; Email from Paula Treantafelles to Carter Bryant et al. | MGA005053 B - MGA005055 B |
| 22 | 10/25/2000 | Fed Ex shipment of Bratz sculpting from Mercedeh Ward to Samuel Wong and Paula Treantafelles et al. | MGA000015- MGA000017 |
| 23 | 10/25/2000 - 10/26/2000 | Emails from Cecilia Kwok to Paula Treantafelles et al.; Email from Paula Treantafelles to Cecilia Kwok et al. | MGA000542 - MGA000544 |

EXHIBIT    35
PAGE    108

EXHIBIT    C
PAGE    105

| Number | Date | Type of Communication | Bates Reference |
|---|---|---|---|
| 24 | 10/25/2000 - 10/27/2000 | Email from Ben Ton to Mercedeh Ward; Email from Mercedeh Ward to Samuel Wong and Paula Treantafelles et al.; Emails from Paula Treantafelles to Mercedeh Ward et al.; Emails from Cecilia Kwok to Paula Treantafelles et al.; Email from Mercedeh Ward to Cecilia Kwok et al.; Email from Carter Bryant to Cecilia Kwok et al.; Email from Mercedeh Ward to Carter Bryant et al. | MGA000015- MGA000017 |
| 25 | 10/25/2000 - 11/2/2000 | Emails from Cecilia Kwok to Paula Treantafelles et al.; Emails from Paula Treantafelles to Cecilia Kwok et al.; Email from Isaac Larian to Paula Treantafelles et al.; Email from Paula Treantafelles to Isaac Larian et al.; Email from Isaac Larian to Paula Treantafelles et al. | MGA 0046799 - MGA 0046802 |
| 26 | 10/26/2000 | Email from Cecilia Kwok to Mercedeh Ward et al. | MGA 006396 - MGA 006397 |
| 27 | 10/26/2000 | Email from Mercedeh Ward to Samuel Wong and Paula Treantafelles et al. | MGA000012 - MGA000013 |
| 28 | 10/26/2000 | Facsimile transmission from Carter Bryant to Cecilia Kwok | BRYANT 00219 |
| 29 | On or about 10/26/2000 | Fed Ex shipment containing Bratz sculpting from Mercedeh Ward to Samuel Wong and Paula Treantafelles et al. | MGA000012 - MGA000013 |
| 30 | 10/26/2000 - 10/27/2000 | Email from Isaac Larian to Colleen O'Higgins et al.; Email from Paul Warner to Isaac Larian et al.; Email from Colleen O'Higgins to Paul Warner et al.; Email from Paul Warner to Colleen O'Higgins et al.; Email from Isaac Larian to Paul Warner et al. | MGA 0009121R - MGA 0009123R |
| 31 | 10/27/2000 | Email from Kerri Legg to Paula Treantafelles and Carter Bryant et al.; Email from Carter Bryant to Kerri Legg et al. | MGA 0046672 |
| 32 | 10/30/2000 | Email from Cecilia Kwok to Paula Treantafelles et al.; Email from Mercedeh Ward to Cecilia Kwok et al.; Email from Paula Treantafelles to Mercedeh Ward | MGA000019- MGA000021 |
| 33 | 10/30/2000 - 11/2/2000 | Email from Cecilia Kwok to Paula Treantafelles et al.; Email from Mercedeh Ward to Cecilia Kwok et al.; Emails from Samuel Wong to Mercedeh Ward et al.; Email from Mercedeh Ward to Samuel Wong et al.; | MGA000037 - MGA000042 |

EXHIBIT __35__
PAGE __609__

EXHIBIT __C__
PAGE __106__

| Number | Date | Type of Communication | Bates Reference |
|--------|------|----------------------|-----------------|
| | | Email from Victor Lee to Mercedeh Ward et al.; Email from Mercedeh Ward to Victor Lee et al. | |
| 34 | 11/1/2000 | Email from Paula Treantafelles to Jimmy Cheng et al. | MGA 0053419 - MGA 0053420 |
| 35 | 11/2/2000 - 11/6/2000 | Emails from Victor Lee to Mercedeh Ward and Paula Treantafelles et al.; Emails from Mercedeh Ward to Victor Lee and Paula Treantafelles et al. | MGA000043 - MGA000045 |
| 36 | 11/3/2000 - 11/4/2000 | Email from Carter Bryant to Paula Treantafelles; Email from Paula Treantafelles to Isaac Larian and Carter Bryant et al.; Email from Isaac Larian to Carter Bryant and Paula Treantafelles et al. | MGA000047 |
| 37 | 11/6/2000 - 12/1/2000 | Emails from Samuel Wong to Paula Treantafelles et al.; Emails from Paula Treantafelles to Samuel Wong et al.; Email from Franki Tsang to Paula Treantafelles et al. | MGA000071 - MGA000074 |
| 38 | 11/8/2000 | Email from Carter Bryant to Paula Treantafelles | MGA000046 |
| 39 | 11/8/2000 | Email from Carter Bryant to Paula Treantafelles | MGA 0046656 |
| 40 | 11/9/2000 | Email from Isaac Larian to All in Sales Global and All in Marketing | MGA 0052683 - MGA 0052684 |
| 41 | 11/10/2000 | Email from Mercedeh Ward to Cecilia Kwok et al. | MGA 0046660 |
| 42 | 11/11/2000 - 11/13/2000 | Email from Judy Rich to Cecilia Kwok and Mercedeh Ward; Email from Cecilia Kwok to Judy Rich and Mercedeh Ward | MGA000049 |
| 43 | 11/15/2000 | Email from Cecilia Kwok to Paula Treantafelles et al. | MGA 0046875 - MGA 0046882 |
| 44 | 11/21/2000 | Email from Paula Treantafelles to Mercedeh Ward et al. | MGA0004611 B - MGA0004616 B |
| 45 | 11/21/2000 | Email from Paula Treantafelles to Samuel Wong et al.; Email from Franki Tsang to Paula Treantafelles et al.; Email from Cecilia Kwok to Paula Treantafelles et al. | MGA 0046580 - MGA 0046599 |
| 46 | 11/26/2000 | Email from Stephen Lee to Isaac Larian; | MGA004251 |

EXHIBIT __35__
PAGE __610__

EXHIBIT __C__
PAGE __107__

| Number | Date | Type of Communication | Bates Reference |
|---|---|---|---|
| | | Email from Isaac Larian to Paula Treantafelles et al. | |
| 47 | 11/28/2000 - 11/30/2000 | Email from Paul Warner to Isaac Larian; Email from Isaac Larian to Paul Warner et al.; Emails from Eric Yip to Isaac Larian et al; Emails from Isaac Larian to Eric Yip et al. | MGA 0009205 - MGA 0009208 |
| 48 | 12/1/2000 | Email from Carter Bryant to Paula Treantafelles | MGA000075 |
| 49 | 12/1/2000 | Email from Carter Bryant to Paula Treantafelles | MGA000076 |
| 50 | 12/8/2000 | Email from Mercedeh Ward to Cecilia Kwok and Samuel Wong | MGA 0046463 - MGA 0046467 |
| 51 | 12/9/2000 - 12/13/2000 | Email from Isaac Larian to Stephen Lee et al.; Emails from Samuel Wong to Isaac Larian et al.; Emails from Isaac Larian to Samuel Wong et al. | MGA 0009351 - MGA 0009353 |
| 52 | 12/10/2000 - 12/20/2000 | Email from Mercedeh Ward to Sarah Halpern; Email from Mercedeh Ward to Samuel Wong et al. | MGA000147 - MGA000149 |
| 53 | 12/12/2000 | Fed Ex shipment containing patterns, swatch cards and fabric for Bratz from MGA Los Angeles to Samuel Wong and Cecilia Kwok | MGA000131 - MGA000132 |
| 54 | 12/13/2000 - 12/20/2000 | Email from Wendy Reed to Samuel Wong et al.; Email from Cecilia Kwok to Wendy Reed et al.; Emails from Mercedeh Ward to Cecilia Kwok et al.; Email from Cecilia Kwok to Mercedeh Ward et al. | MGA000131 - MGA000132 |
| 55 | 12/15/2000 | Email from Samuel Wong to Mercedeh Ward and Paula Treantafelles et al.; Email from Paula Treantafelles to Samuel Wong and Mercedeh Ward et al. | MGA000091 - MGA000092 |
| 56 | 12/15/2000 - 12/18/2000 | Emails from Samuel Wong to Mercedeh Ward and Paula Treantafelles et al.; Email from Samuel Wong to Judy Rich et al.; Emails from Judy Rich to Samuel Wong et al.; Email from Mercedeh Ward to Samuel Wong et al. | MGA000097 - MGA000104 |
| 57 | 12/15/2000 - 12/26/2000 | Email from Franki Tsang to All in Marketing & PD (LA) and All in Product Development (HK) et al.; Email from Isaac Larian to Franki Tsang et al.; Email from Paula Treantafelles | MGA000212 - MGA000217 |

EXHIBIT 35
PAGE 611

EXHIBIT C
PAGE 108

| Number | Date | Type of Communication | Bates Reference |
|---|---|---|---|
| | | to Isaac Larian et al.; Email from Mercedeh Ward to Paula Treantafelles and Isaac Larian et al.; Email from Cecilia Kwok to Mercedeh Ward and Paula Treantafelles et al.; Emails from Franki Tsang to Mercedeh Ward and Paula Treantafelles et al.; Email from Mercedeh Ward to Franki Tsang and Paula Treantafelles et al.; Emails from Paula Treantafelles to Franki Tsang and Mercedeh Ward et al.; Email from Sarah Chui to Paula Treantafelles et al. | |
| 58 | On or about 12/16/2000 | Package of fabric swatches sent from MGA Los Angeles to MGA Hong Kong | MGA000113 - MGA000122 |
| 59 | 12/19/2000 | Email from Cecilia Kwok to Mercedeh Ward and Judy Rich et al. | MGA000113 - MGA000122 |
| 60 | 12/19/2000 - 12/20/2000 | Emails from Cecilia Kwok to Mercedeh Ward et al.; Email from Mercedeh Ward to Cecilia Kwok et al.; Email from Samuel Wong to Mercedeh Ward et al. | MGA000124 - MGA000125 |
| 61 | 12/19/2000 - 12/21/2000 | Email from Carter Bryant to Mercedeh Ward et al.; Email from Mercedeh Ward to Samuel Wong et al.; Emails from Cecilia Kwok to Mercedeh Ward et al.; Email from Judy Rich to Cecilia Kwok et al.; Email from Mercedeh Ward to Cecilia Kwok et al. | MGA000530 B - MGA000531 B |
| 62 | 12/20/2000 | Emails from Paula Treantafelles to Jimmy Cheng et al. | MGA000140 B - MGA000141 B |
| 63 | On or about 12/20/2000 | Package of tooling aids and samples sent from MGA Los Angeles to MGA Hong Kong | MGA000124 - MGA000125 |
| 64 | 12/21/2000 - 12/22/2000 | Email from Cecilia Kwok to Mercedeh Ward et al.; Email from Samuel Wong to Mercedeh Ward et al.; Email from Mercedeh Ward to Samuel Wong et al. | MGA000190 |
| 65 | 12/21/2000 - 12/27/2000 | Emails from Cecilia Kwok to Mercedeh Ward et al.; Email from Paula Treantafelles to Cecilia Kwok and Mercedeh Ward et al. | MGA000253 |
| 66 | 12/22/2000 | Email from Franki Tsang to Mercedeh Ward and Paula Treantafelles et al.; Email from Isaac Larian to Franki Tsang, Mercedeh Ward and Paula Treantafelles et al. | MGA000524 B - MGA000528 B |
| 67 | 12/22/2000 | Email from Samuel Wong to Judy Rich, Mercedeh Ward, Paula Treantafelles and | MGA000197 - MGA000199 |

00505.07975/2870497.2

EXHIBIT ℓ
PAGE 109

EXHIBIT 35
PAGE 412

| Number | Date | Type of Communication | Bates Reference |
|---|---|---|---|
|  |  | Isaac Larian et al.; Email from Paula Treantafelles to Samuel Wong et al. |  |
| 68 | On or about 12/23/2000 | Package containing Bratz working sample sent from MGA Hong Kong to MGA Los Angeles per instructions from MGA Los Angeles | MGA000091 - MGA000092 |
| 69 | 12/26/2000 | Email from Cater Bryant to Paula Treantafelles and Victoria O'Connor | MGA000202 |
| 70 | 12/26/2000 | Email from Mercedeh Ward to Samuel Wong et al. | MGA000211 |
| 71 | 12/26/2000 | Email from Paula Treantafelles to Carter Bryant and Mercedeh Ward | MGA000219 |
| 72 | 12/27/2000 | Email from Carter Bryant to Mercedeh Ward | MGA000248 |
| 73 | 12/27/2000 | Email from Cecilia Kwok to Paula Treantafelles and Mercedeh Ward et al.; Email from Mercedeh Ward to Cecilia Kwok and Paula Treantafelles et al. | MGA000249 - MGA000250 |
| 74 | 12/27/2000 | Email from Carter Bryant to Paula Treantafelles | MGA000255 |
| 75 | 12/27/2000 | Email from Cecilia Kwok to Paula Treantafelles and Mercedeh Ward et al.; Email from Mercedeh Ward to Cecilia Kwok and Paula Treantafelles et al. | MGA000482 B |
| 76 | 12/27/2000 | Emails from Mercedeh Ward to Samuel Wong et al.; Email from Samuel Wong to Mercedeh Ward et al. | MGA000234 - MGA000236 |
| 77 | 12/27/2000 | Email from Paula Treantafelles to Samuel Wong et al. | MGA000256 |
| 78 | 12/27/2000 | Email from Paula Treantafelles to Samuel Wong, Cecilia Kwok and Mercedeh Ward | MGA000254 |
| 79 | 12/28/2000 - 12/29/2000 | Email from Cecilia Kwok to Mercedeh Ward et al.; Email from Samuel Wong to Mercedeh Ward et al.; Email from Mercedeh Ward to Samuel Wong et al. | MGA000322 |
| 80 | 12/29/2000 | Email from Paula Treantafelles to Carter Bryant and Mercedeh Ward et al. | MGA000333 |
| 81 | 1/4/2001 - 1/6/2001 | Email from Cecilia Kwok to Janet Lam; Email from Janet Lam to Judy Rich et al.; | MGA 0009177 - MGA 0009178.5 |

EXHIBIT    C
PAGE    110

EXHIBIT    35
PAGE    U13

| Number | Date | Type of Communication | Bates Reference |
|---|---|---|---|
| | | Email from Judy Rich to Isaac Larian et al.; Email from Samuel Wong to Colleen O'Higgins et al.; Email from Isaac Larian to Samuel Wong et al. | |
| 82 | 1/5/2001 | Email from Cecilia Kwok to Paula Treantafelles et al.; Email from Samuel Wong to Cecilia Kwok et al. | MGA 0048571 |
| 83 | 1/10/2001 | Email from Isaac Larian to Eva Chuck et al. | MGA003727 B - MGA003728 B |
| 84 | 1/11/2001 | Email from Carter Bryant to Paula Treantafelles | MGA000365 |
| 85 | 1/15/2001 - 1/17/2001 | Email from Paula Treantafelles to Samuel Wong et al.; Emails from Cecilia Kwok to Paula Treantafelles et al.; Email from Paula Treantafelles to Cecilia Kwok et al. | MGA000369 - MGA000370 |
| 86 | 1/16/2001 | Email from Paula Treantafelles to Samuel Wong et al.; Email from Cecilia Kwok to Paula Treantafelles et al. | MGA000366 - MGA000368 |
| 87 | 1/17/2001 - 1/18/2001 | Email from Carter Bryant to Cecilia Kwok et al.; Email from Paula Treantafelles to Carter Bryant et al. | MGA000380 |
| 88 | 1/17/2001 - 1/18/2001 | Emails from Cecilia Kwok to Paula Treantafelles et al.; Email from Paula Treantafelles to Cecilia Kwok et al. | MGA000371 - MGA000378 |
| 89 | 1/20/2001 | Letter from Carter Bryant to Cecilia Kwok | BRYANT 00376 |
| 90 | 1/20/2001 - 2/5/2001 | Email from Judy Rich to Cecilia Kwok et al.; Email from Cecilia Kwok to Judy Rich et al.; Emails from Paula Treantafelles to Cecilia Kwok et al.; Email from Cecilia Kwok to Paula Treantafelles et al. | MGA000603 - MGA000605 |
| 91 | 1/22/2001 | Email from Paula Treantafelles to Cecilia Kwok et al. | MGA000612 |
| 92 | 1/22/2001 | Email from Paula Treantafelles to Cecilia Kwok et al. | MGA000613 |
| 93 | 1/24/2001 | Email from Carter Bryant to Cecilia Kwok et al. | MGA000381 |
| 94 | 1/24/2001 | Email from Carter Bryant to Paula Treantafelles; Email from Paula Treantafelles to Carter Bryant | MGA000611 |

00505.07975/2870497.2

EXHIBIT ___35___
PAGE ___44___

EXHIBIT ___C___
PAGE ___111___

| Number | Date | Type of Communication | Bates Reference |
|--------|------|----------------------|-----------------|
| 95 | 1/25/2001 – 1/26/2001 | Email from Carter Bryant to Paula Treantafelles; Email from Paula Treantafelles to Carter Bryant | MGA000610 |
| 96 | 1/30/2001 | Email from Judy Rich to Paula Treantafelles et al.; Email from Paula Treantafelles to Judy Rich and Carter Bryant et al. | MGA000609 |
| 97 | On or about 1/30/2001 | Shipment of fabric swatches for Bratz from MGA Los Angeles to Carter Bryant | MGA000609 |
| 98 | 1/31/2001 | Email from Paula Treantafelles to Carter Bryant | MGA000608 B |
| 99 | 2/2/2001 – 2/3/2001 | Email from Carter Bryant to Cecilia Kwok; Email from Cecilia Kwok to Carter Bryant et al.; Email from Paula Treantafelles to Cecilia Kwok et al. | MGA000606 |
| 100 | 2/2/2001 | Email from Carter Bryant to Cecilia Kwok and Paula Treantafelles; Email from Paula Treantafelles to Carter Bryant and Cecilia Kwok | MGA000602 |
| 101 | 2/5/2001 | Email from Paula Treantafelles to Carter Bryant | MGA000600 |
| 102 | 2/5/2001 | Email from Paula Treantafelles to Cecilia Kwok et al. | MGA000599 B |
| 103 | 2/5/2001 – 2/17/2001 | Email from Carter Bryant to Paula Treantafelles; Email from Paula Treantafelles to Carter Bryant et al.; Email from Cecilia Kwok to Paula Treantafelles; Email from Paula Treantafelles to Cecilia Kwok | MGA000576 |
| 104 | 2/12/2001 – 2/16/2001 | Email from Cecilia Kwok to Paula Treantafelles et al.; Email from Paula Treantafelles to Cecilia Kwok | MGA000582 |
| 105 | 2/12/2001 – 2/16/2001 | Email from Lon Ross to Rachel Harris et al.; Email from Samuel Wong to Lon Ross et al.; Email from Rachel Harris to Colleen O'Higgins et al.; Email from Paula Treantafelles to Rachel Harris et al. | MGA000583 B – MGA000587 B |
| 106 | 2/14/2001 – 2/16/2001 | Email from Carter Bryant to Cecilia Kwok; Email from Cecilia Kwok to Carter Bryant et al.; Email from Paula Treantafelles to Cecilia Kwok et al. | MGA000589 |

00505.07975/2870497.2

EXHIBIT __35__
PAGE __415__

EXHIBIT ___C___
PAGE ___112___

| Number | Date | Type of Communication | Bates Reference |
|--------|------|----------------------|-----------------|
| 107 | 2/16/2001 | Email from Paula Treantafelles to Cecilia Kwok et al. | MGA000590 |
| 108 | 2/14/2001 - 2/27/2001 | Emails from Cecilia Kwok to Paula Treantafelles et al.; Emails from Paula Treantafelles to Cecilia Kwok et al.; Emails from Rachel Harris to Paula Treantafelles et al.; Email from Cecilia Kwok to Rachel Harris et al.; Email from Paula Treantafelles to Rachel Harris et al. | MGA 0048576 - MGA 0048579 |
| 109 | 2/15/2001 - 2/16/2001 | Emails from Cecilia Kwok to Carter Bryant et al.; Email from Paula Treantafelles to Cecilia Kwok et al. | MGA000579 |
| 110 | 2/15/2001 - 2/19/2001 | Emails from Cecilia Kwok to Paula Treantafelles et al.; Emails from Paula Treantafelles to Cecilia Kwok et al. | MGA000571 - MGA000572 |
| 111 | 2/16/2001 | Email from Carter Bryant to Paula Treantafelles; Email from Paula Treantafelles to Carter Bryant | MGA000575 |
| 112 | 2/16/2001 | Email from Cecilia Kwok to Paula Treantafelles; Email from Paula Treantafelles to Cecilia Kwok | MGA000574 |
| 113 | 2/16/2001 | Email from Paula Treantafelles to Carter Bryant | MGA000588 |
| 114 | 2/16/2001 | Email from Paula Treantafelles to Cecilia Kwok et al. | MGA000573 |
| 115 | 2/19/2001 | Email from Carter Bryant to Paula Treantafelles; Email from Paula Treantafelles to Carter Bryant | MGA000568 |
| 116 | 2/19/2001 | Email from Paula Treantafelles to Cecilia Kwok et al. | MGA000569 - MGA000570 |
| 117 | 2/20/2001 | Email from Cecilia Kwok to Paula Treantafelles; Email from Paula Treantafelles to Cecilia Kwok and Carter Bryant | MGA000566 |
| 118 | On or about 2/20/2001 | Fed Ex shipment of Bratz sewn samples from Carter Bryant to Cecilia Kwok | MGA000566 |
| 119 | 2/20/2001 - 2/21/2001 | Emails from Paula Treantafelles to Cecilia Kwok et al.; Email from Cecilia Kwok to Paula Treantafelles et al. | MGA000561 |

EXHIBIT 35
PAGE 616

EXHIBIT C
PAGE 113

| Number | Date | Type of Communication | Bates Reference |
|---|---|---|---|
| 120 | 2/21/2001 - 2/23/2001 | Emails from Paula Treantafelles to Cecilia Kwok et al.; Emails from Cecilia Kwok to Paula Treantafelles et al. | MGA000556 - MGA000557 |
| 121 | 2/22/2001 - 2/23/2001 | Email from Carter Bryant to Paula Treantafelles; Email from Paula Treantafelles to Carter Bryant | MGA000560 |
| 122 | 2/22/2001 - 2/26/2001 | Emails from Cecilia Kwok to Paula Treantafelles et al.; Emails from Paula Treantafelles to Cecilia Kwok et al. | MGA000551 |
| 123 | 2/23/2001 | Email from Paula Treantafelles to Cecilia Kwok et al. | MGA000554 |
| 124 | 2/23/2001 | Email from Carter Bryant to Cecilia Kwok; Email from Cecilia Kwok to Paula Treantafelles; Email from Paula Treantafelles to Cecilia Kwok and Carter Bryant | MGA000558 |
| 125 | On or about 2/24/2001 | Fed Ex shipment of Bratz brush tooling sample sent from Cecilia Kwok to Paula Treantafelles and Carter Bryant | MGA004260 - MGA004268 |
| 126 | 2/26/2001 | Email from Carter Bryant to Paula Treantafelles; Email from Paula Treantafelles to Carter Bryant | MGA000549 |
| 127 | 2/26/2001 | Email from Cecilia Kwok to Carter Bryant and Paula Treantafelles; Email from Paula Treantafelles to Cecilia Kwok and Carter Bryant | MGA000550 |
| 128 | 2/26/2001 | Email from Paula Treantafelles to Samuel Wong et al. | MGA000548 B |
| 129 | 2/26/2001 - 2/27/2001 | Emails from Cecilia Kwok to Paula Treantafelles et al.; Email from Paula Treantafelles to Cecilia Kwok et al. | MGA004260 - MGA004268 |
| 130 | 2/27/2001 | Email from Paula Treantafelles to Cecilia Kwok et al. | MGA000546 - MGA000547 |
| 131 | 2/27/2001 | Email from Paula Treantafelles to Cecilia Kwok et al. | MGA000545 |
| 132 | 3/1/2001 - 3/5/2001 | Email from Cecilia Kwok to Paula Treantafelles; Email from Paula Treantafelles to Cecilia Kwok; Email from Cecilia Kwok to Paula Treantafelles et al.; Email from Paula Treantafelles to Cecilia Kwok et al. | MGA000634 |

EXHIBIT 35
PAGE 617

EXHIBIT C
PAGE 114

| Number | Date | Type of Communication | Bates Reference |
|---|---|---|---|
| 133 | On or about 3/2/2001 | Fed Ex shipment of production fabric from MGA Hong Kong to MGA Los Angeles | MGA000634 |
| 134 | 3/5/2001 - 3/6/2001 | Emails from Paula Treantafelles to Cecilia Kwok et al.; Email from Cecilia Kwok to Paula Treantafelles et al. | MGA000625 - MGA000626 |
| 135 | 3/6/2001 | Emails from Cecilia Kwok to Paula Treantafelles et al.; Emails from Paula Treantafelles to Cecilia Kwok et al. | MGA000621 - MGA000622 |
| 136 | 3/10/2001 | Email from Isaac Larian to John Young | MGA001289 B - MGA001290 B |
| 137 | 3/10/2001 - 3/11/2001 | Email from Carter Bryant to Paula Treantafelles; Email from Paula Treantafelles to Carter Bryant | MGA000620 B |
| 138 | 3/11/2001 | Email from Carter Bryant to Paula Treantafelles; Email from Paula Treantafelles to Carter Bryant | MGA000618 |
| 139 | 3/25/2001 - 3/26/2001 | Email from Carter Bryant to Paula Treantafelles; Email from Paula Treantafelles to Carter Bryant | MGA000617 |
| 140 | 3/27/2001 - 4/04/2001 | Emails from Isaac Larian to John Young | MGA001278 B - MGA001282 B |
| 141 | 3/28/2001 & 4/5/2001 | Email from Stephen Lee to Earlylight and Isaac Larian; Email from Isaac Larian to Isaac Larian | MGA000747 B |
| 142 | On or about 3/28/2001 | Letter from Isaac Larian to Ron Stover | MGA001116 B - MGA001117 B |
| 143 | 3/28/2001 - 3/29/2001 | Emails from Stephen Lee to Isaac Larian et al.; Emails from Isaac Larian to Stephen Lee | MGA001113 B - MGA001114 B |
| 144 | 3/30/2001 | Email from Cecilia Kwok to Janet Lam; Email from Janet Lam to Judy Rich and Cecilia Kwok; Email from Judy Rich to Paula Treantafelles; Email from Paula Treantafelles to Isaac Larian et al. | MGA 0049106 - MGA 0049113 |
| 145 | 4/2/2001 | Email from Isaac Larian to Craig Cunningham et al. | MGA0001105 B |
| 146 | 4/2/2001 - 4/3/2001 | Emails from Isaac Larian to Ron Stover | MGA001099 B - MGA001100 B |

EXHIBIT   C
EXHIBIT   35         PAGE   115
PAGE   618

00505.07975/2870497.2

# EXHIBIT 36

1   MELINDA HAAG (State Bar No. 132612)
    mhaag@orrick.com
2   ANNETTE L. HURST (State Bar No. 148738)
    ahurst@orrick.com
3   WARRINGTON S. PARKER III (State Bar No. 148003)
    wparker@orrick.com
4   ORRICK, HERRINGTON & SUTCLIFFE LLP
    The Orrick Building
5   405 Howard Street
    San Francisco, CA 94105
6   Telephone:  +1-415-773-5700
    Facsimile:   +1-415-773-5759
7
8   WILLIAM A. MOLINSKI (State Bar No. 145186)
    wmolinski@orrick.com
9   ORRICK, HERRINGTON & SUTCLIFFE LLP
    777 South Figueroa Street, Suite 3200
10  Los Angeles, CA  90017
    Telephone:  +1-213-629-2020
11  Facsimile:   +1-213-612-2499

12  Attorneys for MGA Parties

13              UNITED STATES DISTRICT COURT

14              CENTRAL DISTRICT OF CALIFORNIA

15                    EASTERN DIVISION

| | |
|---|---|
| 16 CARTER BRYANT, an individual | Case No. CV 04-9049 SGL (RNBx) |
| 17 Plaintiff, | Consolidated with: |
| 18 v. | CV 04-9059 <br> CV 05-2727 |
| 19 MATTEL, INC., a Delaware Corporation | **DISCOVERY MATTER** |
| 20 Defendant. | **[To Be Heard By Discovery Master Robert C. O'Brien]** |
| 21 | MGA PARTIES' MOTION TO COMPEL PREVIOUSLY COLLECTED CUSTODIAN INFORMATION OF PRODUCED DOCUMENTS AND TO REQUIRE FUTURE COLLECTION AND PRODUCTION OF CUSTODIAL DATA; MOTION FOR SANCTIONS |
| 22 | |
| 23 | |
| 24 | |
| 25 | [Declaration of Annette L. Hurst] |
| 26 | |
| 27 AND CONSOLIDATED ACTIONS | |

28

MOTION TO COMPEL CUSTODIAN INFORMATION OF
PRODUCED DOCUMENTS
CV-04-0049 SGL (RNBx)

EXHIBIT 36
PAGE 419

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that pursuant to Rules 26, 34, and 37 of the Federal Rules of Civil Procedure, on a date and time to be determined by the Discovery Master, Plaintiff and Counter-defendant MGA Entertainment, Inc. ("MGA") will, and hereby does, move for an order requiring Mattel, Inc. ("Mattel") to provide the custodial metadata that Mattel already possesses for all electronic documents that Mattel has already produced to MGA, and to require the collection and production of such information in connection with future document productions. MGA also requests sanctions for Mattel's unreasonable refusal to comply with this request.

The grounds for the Motion to Compel are as follows: (1) custodial data is expressly relevant under Rule 26, Mattel has admitted as much by seeking custodial data in the meet and confer concerning this Motion, and Mattel has failed to provide the custodial information repeatedly requested by MGA; (2) the only reasonable way to manage document production and prepare for depositions in a case of this magnitude is to use custodial data; (3) MGA's request for production of electronic data Mattel has previously collected and for the production of all future documents will impose no burden because MGA is not asking Mattel to re-collect or re-review any documents—only to produce what data it already has, and to collect it in the first instance going forward.

The grounds for the Motion for Sanctions are that the Motion to Compel should be granted, MGA engaged in good faith to meet and confer with Mattel, and Mattel cannot demonstrate that its refusal to comply was made with substantial justification. Indeed, Mattel's sole ground for refusing to produce the data is its apparent belief that production of such data might provide greater benefit to MGA than a comparable production by MGA of custodial data be to Mattel. This is wholly inappropriate.

- 2 -

EXHIBIT **36**

PAGE **620**

MOTION TO COMPEL CUSTODIAN INFORMATION OF PRODUCED DOCUMENTS
CV-04-0049 SGL (RNBx)

The Motion to Compel and Motion for Sanctions is based upon this Notice and Motion, the Memorandum of Points and Authorities following herein, the Declaration of Annette L. Hurst filed herewith, the papers and pleadings previously filed with the Court in this action, as well as such further evidence and argument as may be presented prior to or at the hearing on this Motion to Compel.

### CERTIFICATE OF COMPLIANCE

Counsel for MGA and Mattel have discussed this topic in person, on the phone, and have exchanged several letters, but Mattel has refused to agree and has berated MGA's counsel in the process as described more fully herein.

Dated:    July 24, 2009

Respectfully submitted,

ANNETTE L. HURST
Orrick, Herrington & Sutcliffe LLP

By: _Annette L. Hurst_

ANNETTE L. HURST
Attorneys for Plaintiff

EXHIBIT __36__
PAGE __621__

MOTION TO COMPEL CUSTODIAN INFORMATION OF
PRODUCED DOCUMENTS
CV-04-0049 SGL (RNBx)

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

MGA has propounded twelve sets of requests for production of documents on Mattel, each of which requests the custodial information of the documents to be produced. Mattel has not provided this information, rendering its responses and production incomplete. MGA has requested that Mattel comply with these earlier requests and produce such custodial information that already exists in Mattel's possession and that it collect and produce custodial information on a going forward basis. Since MGA has requested only what Mattel already possesses and has collected, there is no burden whatsoever to complying with this request. And, as Mattel admits, custodian information is expressly made relevant by Rule 26.

In response to MGA's meet and confer efforts on this issue, Mattel has refused to provide custodial information. It has refused to say whether it has any custodial information. It has refused to say whether it would agree to a reciprocal exchange of custodial information, while at the same time purporting to propose one. Mattel's position boils down to this: "you go first and if I'm satisfied with what you do, then maybe I'll give you mine." This abusive tactic is expressly forbidden by Rule 26(d)(2), which proscribes any insistence upon sequencing absent a prior court order not present here. Accordingly, MGA requests that this Court order Mattel to comply with the request for custodial information and to collect and produce it in the future. Further, given the lack of justification for Mattel's position—which is directly contrary to Rule 26(d)(2)—MGA requests that Mattel be ordered to pay MGA's reasonable expenses incurred in making this motion.

MOTION TO COMPEL CUSTODIAN INFORMATION OF
PRODUCED DOCUMENTS
CV-04-0049 SGL (RNBx)

EXHIBIT ___36___
PAGE ___622___

## ARGUMENT

I.  **THE DISCOVERY MASTER SHOULD GRANT THE MOTION TO COMPEL EXISTING CUSTODIAL DATA AND DIRECT MATTEL TO COLLECT AND PRODUCE SUCH DATA IN THE FUTURE.**

    A.  **As Mattel Admits, Requests For Custodial Information Are Expressly Authorized And Relevant Under Rule 26.**

Custodial information is expressly made relevant by Rule 26:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense— including the existence, description, nature, *custody*, condition, and location of any documents or other tangible things and the identity and location of or persons who know of any discoverable matter.

Fed. R. Civ. P. 26(b) (emphasis added).  Accordingly, in each of its document requests to Mattel, MGA requested custodian information for each electronic document produced, either by a record of the metadata, *see, e.g.*, Declaration of Annette L. Hurst ("Hurst Decl.") ¶¶ 2-7 and Exs. A-F ("[e]ach DOCUMENT maintained or stored electronically in native, electronic format is to be produced with all relevant metadata intact and in an appropriate and useable electronic manner"), or by a record of whose folder the document came from, *see, e.g.*, Hurst Decl. ¶¶ 8-13 and Exs. G-L ("[e]ach DOCUMENT is to be produced as it is kept in the usual course of business, including all file folders, binders, notebooks, and other devices by which such DOCUMENTS may be organized or separated").  Mattel admits the relevance of custodial information.  *Id.* Ex. O.  Mattel, however, has not provided the requested custodial information.  Its responses and production are therefore incomplete.  Fed. R. Civ. P. 37(a)(3)(B)(iv), 37(a)(4).

    B.  **Custodial Information Is Important In A Case Of This Size.**

Mattel has previously produced almost 200,000 separate documents— comprising over one million pages—in response to MGA's requests for production. Hurst Decl. ¶ 24.  Mattel has provided no information about which documents were in the custody of which individuals when such documents were produced.  The

- 5 -

1   voluminous production contains a wide assortment of documents, ranging from

2   emails, to documents articulating business strategy, to sketches of doll heads.

3   Many of the documents have no names visibly associated with them.  The most

4   effective means of preparing for depositions in a case with a document production

5   of this size and nature is to collect and review all of the documents produced from a

6   particular person's files.  In some instances, this may be the only efficient method

7   of handling a case of this type.  Mattel's refusal to produce custodial information

8   makes this impossible.

9          C.     **MGA's Request Does Not Create Any Burden On Mattel.**

10                Production of the requested information will cause no burden to

11  Mattel.  Collection of this data is standard in the collection and production of

12  electronic materials, and is commonly produced as part of a table of data along with

13  the documents themselves.  MGA has only requested what has already been

14  collected, and that Mattel agree to collect and produce such data in the future.  *See*

15  Hurst Decl. Ex. M.  MGA has expressly disavowed any intention of having anyone

16  have to go back and re-invent the wheel by finding this data if it doesn't already

17  exist.  To further emphasize this point, MGA's July 15, 2009 letter expressly noted

18  that MGA is "not looking to impose new burdens in collecting custodial data

19  regarding past productions...."  *Id.*  Accordingly, all Mattel needs to do is burn a

20  few new disks containing the requested data—a couple of hours at most of time for

21  someone in practice support.  There is no burden in complying with this request.

22  **II.    THE DISCOVERY MASTER SHOULD GRANT THE MOTION FOR**
        **SANCTIONS.**
23

24                MGA's initial efforts to meet and confer with Mattel on this issue were

25  completely ignored, despite the fact that MGA indicated that a response was time-

26  sensitive in light of the migration of files from predecessor counsel.  *See* Hurst

27  Decl. ¶¶ 14-21 & Exs. M-P.  Finally, we were forced to use the magic words of the

28  five-day rule, and Mattel responded with a proposed time for a conference.  *Id.*

- 6 -

EXHIBIT ___36___
PAGE ___624___

1   During the conference, Mattel's counsel not only refused to provide any of the

2   requested information or respond to the request, but was abusive towards MGA's

3   counsel—seemingly making fun of the fact that MGA's counsel had just joined the

4   case. Hurst Decl. ¶ 18 ("you don't even know what MGA has"). Mattel's counsel

5   then expressed his ultimate position that Mattel will not agree to produce the

6   custodial information, will not state whether it has custodial information, and will

7   not agree to a reciprocal exchange of custodial information, unless and until Mattel

8   is satisfied with what MGA has to offer. *Id.* ¶ 21 & Ex. P.

9           Mattel's position directly contravenes Rule 26(d)(2), which prohibits

10   any requirement of the sequencing of discovery absent prior court order. Further,

11   the Discovery Master already admonished Mattel on July 8, 2009 not to refuse to

12   respond to discovery based on Mattel's notions of what MGA ought to do. *Id.* ¶ 22.

13   Mattel's response that it won't tell what it has, refuses to produce it, and won't even

14   confirm that it will engage in a reciprocal exchange (accompanied by some nasty

15   commentary poking fun at opposing counsel just for good measure) is the essence

16   of unreasonableness, a position wholly lacking in good faith, and contrary to the

17   Federal Rules of Civil Procedure, which permit no party to insist upon sequencing

18   or priority of discovery obligations.

19           This situation cries out for relief under Rule 37(a)(5)(A). MGA thus

20   requests monetary sanctions against Mattel and its counsel in the amount reasonable

21   and necessary for prosecuting the motion to compel, in an amount to be stated in a

22   further declaration supplied to the Discovery Master prior to the hearing of these

23   Motions.

24

25

26

27

28

MOTION TO COMPEL CUSTODIAN INFORMATION OF
PRODUCED DOCUMENTS
CV-04-0049 SGL (RNBx)



EXHIBIT ___36___

PAGE ___625___

1

**CONCLUSION**

2           For all of the foregoing reasons, MGA's Motions to Compel and for

3    Sanctions should be granted.

4    Dated:     July 24, 2009                    Respectfully submitted,

5                                                 ANNETTE L. HURST
                                                  Orrick, Herrington & Sutcliffe LLP
6

7                                                 By: _____

8                                                      ANNETTE L. HURST
                                                       Attorneys for Plaintiff
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 8 -

EXHIBIT ___36___

PAGE ___626___

MOTION TO COMPEL CUSTODIAN INFORMATION OF
PRODUCED DOCUMENTS
CV-04-0049 SGL (RNBx)

# EXHIBIT 37

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 090378)
2    johnquinn@quinnemanuel.com
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
     865 South Figueroa Street, 10th Floor
5  Los Angeles, California  90017-2543
   Telephone:   (213) 443-3000
6  Facsimile:   (213) 443-3100

7  Attorneys for Mattel, Inc.

8

9                    UNITED STATES DISTRICT COURT

10                  CENTRAL DISTRICT OF CALIFORNIA

11                         EASTERN DIVISION

| 12 | CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
|---|---|---|
| 13 | Plaintiff, | Consolidated with Case Nos. CV 04-9059 and CV 05-02727 |
| 14 | vs. | |
| 15 | MATTEL, INC., a Delaware corporation, | **DISCOVERY MATTER** [To Be Heard By Discovery Master Robert O'Brien] |
| 16 | | |
| 17 | Defendant. | MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL MGA MEXICO TO PRODUCE DOCUMENTS AND THINGS IN RESPONSE TO MATTEL'S FIRST, SECOND AND THIRD SETS OF REQUESTS FOR PRODUCTION TO MGA MEXICO; AND |
| 18 | AND CONSOLIDATED ACTIONS | |
| 19 | | |
| 20 | | |
| 21 | | MEMORANDUM OF POINTS AND AUTHORITIES |
| 22 | | |
| 23 | | [Declaration of Marshall M. Searcy III filed concurrently herewith] |
| 24 | | |
| 25 | | Date:   TBA |
| 26 | | Time:   TBA |
| 27 | | Place:   TBA |
| 28 | | |

Date:   TBA
Time:   TBA
Place:   TBA

**Phase 2**
Discovery Cut-off:           Dec. 11, 2009
Pre-trial Conference:        Mar. 1, 2010
Trial Date:                  Mar. 23, 2010

EXHIBIT  37
PAGE  027

07975.30088831.2

MATTEL'S MOTION TO COMPEL MGA MEXICO TO PRODUCE DOCUMENTS AND THINGS

1

2　TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3　　　　　PLEASE TAKE NOTICE that at a time and place of hearing to be set

4　by Discovery Master Robert O'Brien, Mattel, Inc. ("Mattel") will, and hereby does

5　move the Discovery Master for an order:

6　　　　　(1) compelling MGA de Mexico, S.R.L. de C.V. ("MGA Mexico") to

7　produce all relevant, non-privileged documents in MGA Mexico's custody,

8　possession or control which are responsive to Mattel's First, Second, and Third Sets

9　of Requests for Documents and Things to MGA Mexico ("Requests");

10　　　　　(2) compelling MGA Mexico to provide Mattel with a privilege log

11　sufficient for Mattel to assess the validity of MGA Mexico's privilege claims with

12　respect to all documents withheld on privilege grounds;

13　　　　　(3) overruling all of MGA Mexico's objections to the Requests; and

14　　　　　(4) imposing sanctions in the amount of $5000.

15　　　　　This motion is made pursuant to Federal Rules of Civil Procedure 26,

16　34(b) and 37(a) on the grounds that Mattel's Requests seek discoverable information

17　and MGA Mexico's objections lack merit.

18　　　　　This motion is based on this Notice of Motion and Motion, the

19　accompanying Memorandum of Points and Authorities, the Declaration of Marshall

20　M. Searcy III filed concurrently herewith, the records and files of this Court, and all

21　other matters of which the Court may take judicial notice.

22

23

24

25

26

27

28

EXHIBIT _37_

PAGE _628_

07975.3008831.2

-2-

1

2

### Certificate of Compliance

3     On April 2, 2009 and again on April 10, 2009, Mattel sent a letter

4 pursuant to Paragraph 5 of the Discovery Master Stipulation requesting that MGA

5 Mexico meet and confer.  On April 23, Mattel and MGA Mexico met and conferred

6 but did not reach agreement.

7

8 DATED:  July 15, 2009           QUINN EMANUEL URQUHART OLIVER &
                                    HEDGES, LLP

9

10

                           By/s/ Marshall M. Searcy III

11

                             Marshall M. Searcy III
                             Attorneys for Mattel, Inc.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT __37__
PAGE __629__

07975.3008831.2

-3-

# TABLE OF CONTENTS

                                                                                    **Page**

PRELIMINARY STATEMENT...................................................................................... 1

BACKGROUND........................................................................................................ 2

ARGUMENT ............................................................................................................ 4

I.      MATTEL IS ENTITLED TO A COMPLETE PRODUCTION FROM
        MGA MEXICO .............................................................................................. 4

        A.      MGA Mexico's Boilerplate Objections Are Improper And
                Should Be Overruled .......................................................................... 5

                1.      MGA Mexico's Relevance Objections Are Conclusory
                        And Should Be Overruled ......................................................... 6

                2.      MGA Mexico May Not Avoid Producing Documents In
                        Its "Custody, Possession, Or Control" By Requiring Mattel
                        To Seek Documents From Other Sources ................................... 7

                3.      Mattel's Requests Describe The Categories Of Documents
                        To Be Produced With "Reasonable Particularity" ...................... 8

                4.      The Protective Order In This Action Is Sufficient To
                        Protect Commercially Sensitive Information And Privacy
                        Rights ........................................................................................ 9

        B.      Production of Documents By Other Parties Does Not Relieve
                MGA Mexico Of Its Discovery Obligations ......................................... 10

        C.      MGA Mexico's Improper General Objections Do Not Provide A
                Basis To Withhold Documents ............................................................ 11

        D.      MGA Mexico's Mere Agreement To Produce Documents Does
                Not Foreclose An Order Compelling Production .................................. 13

        E.      MGA Mexico's Definitional Objections Are Improper ........................ 14

                1.      "YOU," "YOUR," and "MGA" ................................................... 15

                2.      "MATTEL" .............................................................................. 15

                3.      "BRATZ" ................................................................................. 16

                4.      "MACHADO," TRUEBA," And "VARGAS" ............................. 16

                5.      "FORMER MATTEL EMPLOYEE" ......................................... 16

                6.      "MATTEL DOCUMENTS" ....................................................... 17

                7.      "REFER OR RELATE TO"....................................................... 17

EXHIBIT __37__

PAGE __ᴜ30__

07975.3008831.2

-i-

8.      "SYSTEM" And "SYSTEMS" ................................................. 17

F.    Mattel's Requests Are Relevant to Phase 2 Claims and Defenses ....... 18

1.    Requests Relating to MGA's Theft of Mattel's Trade
Secret and Confidential Information ........................................ 18

2.    Requests Relating to MGA's "Copycatting" and Other
Unfair Competition Claims ...................................................... 21

3.    Requests Relating to MGA's "Unclean Hands" Defense .......... 24

4.    Requests Relating the Scope of MGA Mexico's Search for
Responsive Documents ............................................................ 30

5.    Requests Relating to MGA's Defenses and to Information
on Which MGA Intends to Rely in This Action .......................... 31

II.    MGA MEXICO SHOULD BE SANCTIONED FOR ITS WILLFUL
REFUSAL TO COMPLY WITH ITS DISCOVERY OBLIGATIONS ........ 31

CONCLUSION ................................................................................................ 32

EXHIBIT __37__
PAGE __631__

07975.3008831.2

-ii-

MATTEL'S MOTION TO COMPEL MGA MEXICO TO PRODUCE DOCUMENTS AND THINGS

1

## TABLE OF AUTHORITIES

2                                                                                                 **Page**

3                                                     <u>Cases</u>

4    <u>A. Farber and Partners, Inc. v. Garber,</u>
5        234 F.R.D. 186 (C.D. Cal. 2006) .................................................................... 5, 9, 14

6    <u>In re Bankers Trust Co.,</u>
        61 F.3d 465 (6th Cir. 1995) ................................................................................ 5, 12
7
     <u>Bible v. Rio Properties, Inc.,</u>
8        246 F.R.D. 614 (C.D. Cal. 2007) ............................................................................ 7

9    <u>Braley v. Campbell,</u>
10       832 F.2d 1504 (10th Cir. 1987) .............................................................................. 32

11   <u>Buckminster v. Prudential Financial, Inc.,</u>
         2008 WL 624532 (D. Neb. March 3, 2008) ............................................................ 6
12
     <u>Chapman v. California Dept. of Educ.,</u>
13       2002 WL 32854376 (N.D. Cal. February 6, 2002) ........................... 14, 15, 16, 17

14   <u>Goodman v. U.S.,</u>
15       369 F.2d 166 (9th Cir. 1966) .................................................................................. 8

16   <u>In re Heritage Bond Litigation,</u>
         2004 WL 1970058 (C.D. Cal. 2004) ........................................................................ 9
17
     <u>Hyde & Drath v. Baker,</u>
18       24 F.3d 1162 (9th Cir. 1994) ................................................................................ 31

19   <u>Keith H. v. Long Beach Unified School Dist.,</u>
         228 F.R.D. 652 (C.D. Cal. 2005) ............................................................................ 9
20
21   <u>Lamoureux v. Genesis Pharmacy Services, Inc.,</u>
         226 F.R.D. 154 (D. Conn. 2004) ...................................................................... 13, 14
22
     <u>Mintz v. Dietz & Watson, Inc.,</u>
23       2008 WL 5147234 (S.D. Cal. Dec. 5, 2008) .......................................................... 13

24   <u>Oakes v. Halvorsen Marine, Ltd.,</u>
         179 F.R.D. 281, <u>Rule 34</u> ........................................................................................ 5
25
26   <u>Panola Land Buyers Ass'n v. Shuman,</u>
         762 F.2d 1550 (11th Cir. 1985) .............................................................................. 5
27
     <u>Putnam v. Eli Lilly and Co.,</u>
28       508 F. Supp. 2d 812 (C.D. Cal. 2007) .......................................................... 9

EXHIBIT **37**
PAGE **632**

1 | <u>RTC v. Dabney,</u>
2 | 73 F.3d 262 (10th Cir. 1995) ............................................................ 32

3 | <u>Ramirez v. Nicholson,</u>
   2007 WL 2990283 (S.D. Cal. 2007) ................................................... 5

4
5 | <u>Rockwell Int'l Corp. v. H. Wolfe Iron & Metal Co.,</u>
   576 F. Supp. 511 (W.D. Pa 1983) ...................................................... 5

6 | <u>Streck, Inc. v. Research & Diagnostic Systems, Inc.,</u>
7 | 250 F.R.D. 426 (D. Neb. 2008) ........................................................ 13

8 | <u>Sullivan v. Prudential Ins. Co. of America,</u>
   233 F.R.D. 573 (C.D. Cal. 2005) ........................................................ 7

9 | <u>Walker v. Lakewood Condominium Owners Ass'n,</u>
10 | 186 F.R.D. 584 (C.D. Cal. 1999) .................................................. 5, 14

11

12 | **Statutes**

13 | <u>Fed. R. Civ. P.</u> 26(b)(1) ............................................................ 4, 30

14 | <u>Fed. R. Civ. P.</u> 34(a) .................................................................. 11

15 | <u>Fed. R. Civ. P.</u> 34(a)(1) ................................................................ 7

16 | <u>Fed. R. Civ. P.</u> 34(b)(1)(A) ............................................................. 8

17 | <u>Fed. R. Civ. P.</u> 34(b)(2)(E) ............................................................ 11

18 | <u>Fed. R. Civ. P.</u> 37(a)(5) ............................................................... 31

EXHIBIT 37
PAGE 633

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

Mattel has propounded three Sets of Requests for Production of Documents and Things to MGA Mexico seeking information pertinent to Mattel's and MGA's Phase Two claims, including Mattel's trade secret and other misappropriation claims and MGA's unfair competition claims. Mattel's Requests cover, among other things:

- confidential documents taken from Mattel by those working for MGA;
- MGA Mexico's efforts to recruit employees and contractors from Mattel;
- MGA Mexico's product line offerings for 2004-2007;
- financial information relating to MGA Mexico's sale and licensing of Bratz dolls, including market share;
- MGA Mexico's knowledge of Mattel designs that were never brought to market.

MGA Mexico refuses to comply with Mattel's Requests. Indeed, MGA Mexico appears to have <u>never</u> produced any responsive documents -- not even documents supporting MGA's own claims and defenses, which are what Mattel seeks through many of these requests. Instead, along with a series of generic, boilerplate objections, MGA Mexico has suggested it should be excused from producing documents because <u>other</u> MGA parties have produced some responsive documents. MGA Mexico has also suggested that some documents contained in the productions of other MGA parties might actually belong to MGA Mexico, but admits these documents are not marked or identified in any way and refuses to identify any of the documents it might possibly have produced. Nor will MGA Mexico stipulate even that the documents produced by MGA may be deemed to have been in MGA Mexico's possession, custody or control.

An order compelling production by MGA Mexico should issue. Moreover, because MGA Mexico has willfully refused to satisfy its discovery

EXHIBIT 37
PAGE 634

07975.3008831.2

-1-

1   obligations, requiring Mattel to file this motion in order to get even a single

2   document in response to three sets of Requests, sanctions should be imposed to

3   compensate Mattel for a portion of its costs in bringing this motion.

4                                **Background**

5          Mattel's First Set of Requests for Production to MGA Mexico. Mattel

6   served its First Set of Requests for Documents and Things to MGAE de Mexico,

7   S.R.L. de C.V. on November 21, 2007. These Requests seek information primarily

8   relating to MGA Mexico's theft of Mattel's trade secrets and to MGA's unfair

9   competition claims.[1]  Rather than respond, MGA Mexico served a series of

10  boilerplate objections on December 21, 2007. MGA Mexico did not agree to

11  produce documents responsive to any of the Requests in Mattel's First Set.[2]

12         Mattel's Second Set of Requests for Production to MGA Mexico. On

13  December 12, 2007, Mattel served its Second Set of Requests for Documents and

14  Things to MGAE de Mexico, S.R.L. de C.V. These requests seek information

15  related to MGA's "unclean hands" affirmative defense. MGA Mexico served its

16  response on January 11, 2008. MGA Mexico's response once again asserted a series

17  of boilerplate objections in response to each request, but this time MGA Mexico

18  agreed to produce documents in response to certain requests seeking documents that

19  support MGA's claims.[3]  MGA Mexico did not agree to produce documents

20

---

21        [1]   Mattel, Inc.'s First Set of Requests for Documents and Things to MGAE de
22  Mexico, S.R.L. de C.V. ("First Set of Requests"), Declaration of Marshall M. Searcy
23  III in Support of Mattel, Inc.'s Motion to Compel MGA Mexico to Produce
     Documents and Things in Response to Mattel's First, Second and Third Sets of
24  Requests for Production to MGA Mexico ("Searcy Dec."), Exh. 1.
         [2]   MGAE de Mexico S.R.L. de C.V.'s Objections and Responses to Mattel, Inc.'s
25  First Set of Requests for Documents and Things ("Response to First Set of
26  Requests"), Searcy Dec., Exh. 2 at Request Nos. 1-148.
         [3]   See Mattel, Inc.'s Second Set of Requests for Documents and Things to
27  MGAE de Mexico, S.R.L. de C.V., ("Second Set of Requests") Searcy Dec., Exh. 3
28        (footnote continued)

EXHIBIT   37
PAGE   635

1  responsive to any Requests other than those seeking documents supporting MGA's

2  own claims.[4]  Nor, for that matter, did MGA Mexico ever actually produce even the

3  documents supporting its own claims as it had agreed.

4             Mattel's Third Set of Requests for Production to MGA Mexico.  Mattel

5  served its Third Set of Requests for Documents and Things to MGAE de Mexico,

6  S.R.L. de C.V. on January 22, 2008.  These requests seek information related

7  primarily to MGA Mexico's offsite storage of documents, as pertinent to Mattel's

8  claims for theft of trade secrets.  MGA Mexico served objections to Mattel's

9  Requests on February 21, 2008, refusing to produce any responsive documents.[5]

10            Mattel Attempts to Meet and Confer.  On April 2, Mattel contacted

11  MGA Mexico to request that MGA Mexico produce its withheld documents.[6]

12  Rather than agree to meet and confer, MGA Mexico claimed it had already

13  produced documents responsive to Mattel's requests and asked Mattel to "identify

14  with specificity the requests for production to which MGA Mexico has not allegedly

15  produced responsive documents."[7]  Mattel advised that it has not received *any*

16

17  _____

18  at Request Nos. 1-8, 13-22, 25-35, 42-45, 54-58, 61, 71-85, 89-96, 101-104, 106,
    117-147, 151-167, 174-175, 177-179, 181-192, 194-199, 201-219, 221-222, 227-
19  248, 253-268, 277-299, 302-316, 329-342, 345-385, 387-397, 400-410, 412-417.
       [4]   Response to Mattel, Inc.'s Second Set of Requests for Documents and Things
20  to MGAE de Mexico, S.R.L. de C.V. ("Response to Second Set of Requests"),
    Searcy Dec., Exh. 4 at Request Nos. 9-12, 23-24, 36-41, 46-53, 59-60, 62-70, 86-88,
21  97-100, 105, 107-116, 148-150, 168-173, 176, 180, 193, 200, 220, 223-226, 249-
22  252, 269-276, 300-301, 317-328, 343-344, 386, 398-399, 411, 418-420.
       [5]   Mattel, Inc.'s Third Set of Requests for Documents and Things to MGAE de
23  Mexico, S.R.L. de C.V. ("Third Set of Requests"), Searcy Dec., Exh. 5; Response to
24  Mattel, Inc.'s Third Set of Requests for Documents and Things to MGAE de
    Mexico, S.R.L. de C.V. ("Response to Third Set of Requests"), Searcy Dec., Exh. 6.
25     [6]   Letter from Marshall Searcy to Amman Khan, dated April 2, 2009, Searcy
26  Dec., Exh. 7.
       [7]   Letter from Amman Khan to Marshall Searcy, dated April 9, 2009, Searcy
27  Dec., Exh. 8.

28                                              EXHIBIT  37

07975 3008831.2

                                         -3-               PAGE   636

1  documents from MGA Mexico.[8]  MGA Mexico still refused to meet and confer,

2  instead sending a letter repeating its earlier suggestion that it had already responded

3  to Mattel's Requests.[9]

4           Mattel then requested that MGA Mexico stipulate that the documents

5  produced by other MGA parties be deemed to have been in MGA Mexico's

6  possession, custody or control.[10]  MGA Mexico rejected any such stipulation.[11]

7  Because MGA Mexico stated that it might provide further responses if Mattel would

8  provide it with a list of Requests for which MGA Mexico had refused to produce

9  documents, Mattel provided the requested list even though such information was

10  readily accessible to MGA Mexico.[12]  MGA Mexico, however, failed to respond.[13]

11                                    <u>Argument</u>

12  I.    **MATTEL IS ENTITLED TO A COMPLETE PRODUCTION FROM**

13        **MGA MEXICO**

14           MGA Mexico's refusal to respond to Mattel's Requests is contrary to

15  both the <u>Federal Rules of Civil Procedure</u> and case law.  Under <u>Rule</u> 26(b),

16  "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant

17  to the claim or defense of any party. . . .  Relevant information need not be

18  admissible at trial if the discovery appears reasonably calculated to lead to the

19  discovery of admissible evidence." <u>Fed. R. Civ. P.</u> 26(b)(1). <u>Rule</u> 26(b) is liberally

20  interpreted to allow "wide-ranging discovery of information necessary for parties to

21  _____

22  [8]  Letter from Marshall Searcy to Amman Khan, dated April 10, 2009, Searcy

23  Dec., Exh. 9.
     [9]  Letter from Amman Khan to Marshall Searcy, dated April 14, 2009, Searcy

24  Dec., Exh. 10.
     [10]  Letter from Marshall Searcy to Amman Khan, dated Aril 23, 2009, Searcy

25  Dec., Exh. 11.

26  [11]  <u>Id.</u>
     [12]  <u>Id.</u>

27  [13]  Searcy Dec., ¶ 13.

28

07975.300883 1.2

EXHIBIT __37__

PAGE __651__

-4-

1   evaluate and resolve their dispute." <u>Ramirez v. Nicholson</u>, 2007 WL 2990283, at *2

2   (S.D. Cal. 2007) (citing <u>Oakes v. Halvorsen Marine, Ltd.</u>, 179 F.R.D. 281, 283

3   (C.D. Cal. 1995)).

4         <u>Rule</u> 34 allows a party to propound requests for production of

5   documents and things.  In responding to <u>Rule</u> 34 requests, the responding party is

6   obliged to produce all specified discoverable documents and things which are in his

7   or her "possession, custody, or control." <u>Rockwell Int'l Corp. v. H. Wolfe Iron &</u>

8   <u>Metal Co.</u>, 576 F. Supp. 511, 512 (W.D. Pa 1983).  Since the "custody, possession,

9   or control" requirement is in the disjunctive, actual possession of a document or

10  thing is not required.  <u>See In re Bankers Trust Co.</u>, 61 F.3d 465, 469 (6th Cir. 1995).

11      A.   <u>MGA Mexico's Boilerplate Objections Are Improper And Should</u>

12          <u>Be Overruled</u>

13        MGA Mexico has asserted a litany of generic, boilerplate objections in

14  response to each of Mattel's Requests.  Sometimes repeating the same objection

15  verbatim in response to every single Request in a set, MGA Mexico variously

16  objects that Mattel's Requests seek irrelevant information, privileged information,

17  private and commercially sensitive information, information that is otherwise

18  available to Mattel, and information insufficiently limited in time and geographic

19  scope.  MGA Mexico does not explain why each of these conclusory assertions

20  applies to the allegedly objectionable Requests.

21        Boilerplate objections such as these are improper. <u>See A. Farber and</u>

22  <u>Partners, Inc. v. Garber</u>, 234 F.R.D. 186, 188 (C.D. Cal. 2006) ("[G]eneral or

23  boilerplate objections such as 'overly burdensome and harassing' are improper—

24  especially when a party fails to submit any evidentiary declarations supporting such

25  objections."); <u>Walker v. Lakewood Condominium Owners Ass'n</u>, 186 F.R.D. 584,

26  587 (C.D. Cal. 1999) ("Boilerplate, generalized objections are inadequate and

27  tantamount to not making any objection at all."). <u>See also Panola Land Buyers</u>

28  <u>Ass'n v. Shuman</u>, 762 F.2d 1550, 1559 (11th Cir. 1985) (holding that court did not

EXHIBIT 37
PAGE 638

1  have discretion to limit discovery on the basis of boilerplate objections).

2  Accordingly, these objections should all be overruled.[14]

3            **1.    MGA Mexico's Relevance Objections Are Conclusory And**

4                  **Should Be Overruled**

5            Ignoring the broad standard for relevance set by Rule 26, MGA Mexico

6  claims that every single Request in Mattel's First and Third Sets of Requests is

7  irrelevant, and that many of the Requests in Mattel's Second Set of Requests are

8  irrelevant.[15]  MGA Mexico has  provided no explanation to support its assertions.

9  Instead, it merely recites the boilerplate objection that Mattel's Requests seek

10  "documents not relevant to the claims or defenses in this action and not reasonably

11  calculated to lead to the discovery of admissible evidence. Mattel has not

12  demonstrated how '*all* DOCUMENTS [related to this request]' could be relevant to

13  the claims and defenses in this action."[16]

14            These objections are improper and should be overruled.  First, the

15  specific grounds for relevance objections must be stated.  "It is insufficient for the

16  party objecting to discovery based on relevance to simply make conclusory

17  allegations that the request is irrelevant." Buckminster v. Prudential Financial, Inc.,

18  2008 WL 624532, *2 (D. Neb. March 3, 2008) (overruling relevance objections and

19  granting motion to compel).  MGA has done nothing more than state conclusory

---

21  [14]    Because MGA Mexico has asserted virtually the same litany of objections to

22  every Request, Mattel has not included a separate statement with this Motion, which

23  it believes would not aid the Discovery Master in the resolution of this Motion since

    it would consist of lengthy, unhelpful repetitions of the same MGA Mexico

24  objections over and over again.

25  [15]    See Response to First Set of Requests, Searcy Dec., Exh. 2 at Request Nos. 1-

    148; Response to Second Set of Requests, Searcy Dec., Exh. 4 at Requests Nos. 11,

26  276, 317-328, 343-344, 393-395, 399, 418-420; Response to Third Set of Requests,

27  Searcy Dec., Exh. 6 at Request Nos. 1-6.

    [16]    Response to First Set of Requests, Searcy Dec., Exh. 2 at Request Nos. 1-148.

28

07975.3008831.2

EXHIBIT __37__

PAGE __439__

MATTEL'S MOTION TO COMPEL MGA MEXICO TO PRODUCE DOCUMENTS AND THINGS

1  relevance objections in response to nearly every one of Mattel's Requests.

2  Moreover, Mattel need not preemptively demonstrate that its Requests are relevant.

3  Given the broad reach of discovery under Rule 26, the burden to show why

4  discovery should not be allowed is on the party resisting discovery. Bible v. Rio

5  Properties, Inc., 246 F.R.D. 614, 618 (C.D. Cal. 2007); Sullivan v. Prudential Ins.

6  Co. of America, 233 F.R.D. 573, 575 (C.D. Cal. 2005).  In all events, as discussed in

7  detail in Section F below, all of Mattel's requests seek discoverable information.

8      **2.**    **MGA Mexico May Not Avoid Producing Documents In Its**

9             **"Custody, Possession, Or Control" By Requiring Mattel To**

10             **Seek Documents From Other Sources**

11      Rule 34 requires that a party respond to a request for production by

12  producing all non-privileged, relevant documents in the party's "custody, possession,

13  or control." Fed. R. Civ. P. 34(a)(1).  MGA Mexico seeks to withhold non-

14  privileged, relevant documents in its custody, possession, or control because such

15  documents allegedly "are already in Mattel's possession or are readily accessible to

16  Mattel."[17]  MGA Mexico has made no showing, however, that all or any relevant

17  documents it possesses are somehow already available to Mattel.  Moreover, the

18  Discovery Master has previously overruled the objection that MGA may withhold

19  information because it is better known by Mattel.[18]

20

21

———————————

22  [17]  Response to First Set of Requests, Searcy Dec., Exh. 2 at Request Nos. 1-40,

23  42-46, 51-148; Response to Second Set of Requests, Searcy Dec., Exh. 4 at
   Requests Nos. 1-88, 91-306, 309-312, 314-420; Response to Third Set of Requests,

24  Searcy Dec., Exh. 6 at Request Nos. 1-6.

25  [18]  See Phase Two Discovery Matter Order No. 17, Searcy Dec., Exh. 15 at
   21:10-18 ("MGA cannot withhold information on the ground that Mattel knows

26  which people have knowledge of Mattel's purported copying of MGA's intellectual

27  property.  Mattel is entitled to discover the information MGA possesses and the
   factual bases of its trade dress claims.").

28                                        **EXHIBIT 37**

07975.300883 1.2                                              **PAGE 640**

MATTEL'S MOTION TO COMPEL MGA MEXICO TO PRODUCE DOCUMENTS AND THINGS

1    This objection is especially inappropriate here. In addition to obtaining
2  relevant documents, Mattel seeks through its requests to establish that MGA
3  Mexico, a named defendant, is in possession of certain documents. Among its other
4  Phase Two claims, Mattel has alleged that MGA Mexico stole proprietary and
5  confidential trade secret information from Mattel.[19] If MGA Mexico possesses
6  protected Mattel information and produces it as required, the fact of the production
7  itself is powerful evidence. According to MGA Mexico's logic, it is free to withhold
8  from Mattel the very documents and information that MGA Mexico is accused of
9  misappropriating and that production would show that it possesses. That
10  nonsensical position should be rejected.

11       3.    <u>Mattel's Requests Describe The Categories Of Documents To</u>
12            <u>Be Produced With "Reasonable Particularity"</u>
13    Another boilerplate objection MGA Mexico asserts is that Mattel's
14  Requests are not limited in time and "geographic scope."[20] <u>Rule</u> 34 only requires
15  that the party propounding requests for production describe each category of
16  documents "with reasonable particularity." Fed. R. Civ. P. 34(b)(1)(A). There is no
17  requirement that Mattel's Requests be limited in time or "geographic scope." If
18  MGA Mexico contends that the "reasonable particularity" requirement has not been
19  met, it must describe with specificity the reasons each request is not reasonably
20  particular, which it has not done and cannot do. See <u>Goodman v. U.S.</u>, 369 F.2d
21  166, 169 (9th Cir. 1966) (objecting party bears the burden of proving undue burden
22
23  _____
24  [19]   Mattel's Third Amended Answer and Counterclaims ("TAAC"), dated May
25  22, 2009, Searcy Dec., Exh. 16 at ¶¶ 44-61.
    [20]   Response to First Set of Requests, Searcy Dec., Exh. 2 at Request Nos. 1-19,
26  21-40. 42-148; Response to Second Set of Requests, Searcy Dec., Exh. 4 at
27  Requests Nos. 1-10, 12-69, 71-160, 165-167, 172-284, 286-361, 363-420; Response
    to Third Set of Requests, Searcy Dec., Exh. 6 at Request Nos. 1-6.
28

EXHIBIT 37
PAGE 641

1   by "specific and compelling" proof; conclusory assertions are insufficient).  This

2   boilerplate objection is unsupported and should be overruled.

3       **4.**    **The Protective Order In This Action Is Sufficient To Protect**

4              **Commercially Sensitive Information And Privacy Rights**

5       MGA Mexico has objected to many of Mattel's Requests on the

6   grounds that they purportedly "violate[] the privacy rights of third parties to their

7   private, confidential, proprietary or trade secret information."[21]  MGA Mexico

8   similarly claims that many of Mattel's Requests "seek[] confidential, proprietary or

9   commercially sensitive information...."[22]  The Court has entered a Protective Order

10  in this action, which defeats MGA Mexico's professed concerns about

11  confidentiality.[23]  Indeed, the Court, the current Discovery Master, and the former

12  Discovery Master have all ruled that the Protective Order is sufficient to address

13

14

15      [21]    Response to First Set of Requests, Searcy Dec., Exh. 2 at Request Nos. 3, 5-35, 38-46, 51, 55-58, 61-75, 77-78, 84-88, 93-96, 101-105, 111-113, 122, 125-129,

16  131, 138-140, 144-148; Response to Second Set of Requests, Searcy Dec., Exh. 4 at Requests Nos. 1-420.

17      [22]    Response to First Set of Requests, Searcy Dec., Exh. 2 at Request Nos. 1, 3,

18  5-8, 13-51, 55-148; Response to Second Set of Requests, Searcy Dec., Exh. 4 at Requests Nos. 1-420.

19      [23]    See, e.g., Putnam v. Eli Lilly and Co., 508 F. Supp. 2d 812, 814 (C.D. Cal.

20  2007) (protective order "can strike the appropriate balance between the need for the

21  information and the privacy concerns" of the party opposing production of information); Keith H. v. Long Beach Unified School Dist., 228 F.R.D. 652, 658

22  (C.D. Cal. 2005) (compelling production of student records because slight redactions and a protective order would "minimize any invasion of the students'

23  privacy rights"); In re Heritage Bond Litigation, 2004 WL 1970058 at *5, n.12

24  (C.D. Cal. 2004) ("Any privacy concerns...defendants have in their bank records and related financial statements are adequately protected by the protective order, and

25  are not sufficient to prevent production in this matter"); A. Farber and Partners, Inc.,

26  234 F.R.D. at 191-192 (plaintiff's need for defendant's financial information outweighed defendant's privacy claim, especially because a protective order could

27  protect against disclosure of the information).

28      EXHIBIT __37__

    PAGE ___642___

1   confidentiality concerns.[24]  Moreover, the parties have already produced large

2   numbers of "confidential, proprietary, or commercially sensitive" documents in this

3   action under the designation "Attorneys' Eyes Only" as provided in the Protective

4   Order.  MGA Mexico's wholesale withholding of documents cannot be justified by

5   purported concerns about privacy or confidentiality.

6       **B.**   **Production of Documents By Other Parties Does Not Relieve MGA**

7             **Mexico Of Its Discovery Obligations**

8             Besides its boilerplate objections, MGA Mexico refuses to produce

9   documents based on the apparent assertion that, because other MGA parties have

10  produced documents, MGA Mexico need not produce any documents of its own.

11  Thus, MGA Mexico claims it has complied with its obligations to respond to the

12  Requests because "[t]he *MGA Parties* have produced over 4.2 million pages of

13  responsive documents."[25]  MGA Mexico objected to *every one* of Mattel's First Set

14  of Requests, and the great majority of Mattel's Second Set of Requests, as

15  "cumulative, duplicative, and unduly burdensome to the extent [they seek]

16  documents previously requested by Mattel and/or produced in response to Mattel's

17  document requests."[26]  MGA Mexico also objected to all of the Requests in Mattel's

18  Third Set as "cumulative, duplicative, and unduly burdensome to the extent [they

19

20

_____

21  [24]   See May 15, 2007 Order, Searcy Dec., Exh. 12 at 11; July 2, 2007 Order,

22  Searcy Dec., Exh. 13 at 3; Phase 2 Discovery Matter Order No. 6, Searcy Dec., Exh. 14 at 7.

23  [25]   April 9, 2009 Letter from Amman Khan to Marshall Searcy, Searcy Dec.,

24  Exh. 8 at 1 (emphasis supplied).

25  [26]   Response to First Set of Requests, Searcy Dec., Exh. 2, at Request Nos. 1-148; Response to Second Set of Requests, Searcy Dec., Exh. 4, at Request Nos. 1-8,

26  13-22, 25-35, 42-46, 54-65, 71-85, 89-96, 101-147, 151-179, 181-192, 194-219,

27  221-222, 227-250, 253-260, 262-268, 277-299, 302-316, 329-342, 345-385, 387-397, 400-410, 412-417.

28

EXHIBIT __37__

PAGE __643__

1   seek] documents previously requested by Mattel or produced by MGA (or any of its

2   affiliates) in response to Mattel's document requests."[27]

3           MGA Mexico is a separate party to this lawsuit and has its own

4   discovery obligations. Fed. R. Civ. P. 34(a) ("A party may serve on any other party

5   a request…"); Fed. R. Civ. P. 34(b)(2)(E) ("A *party* must produce documents…")

6   (emphasis supplied).  MGA Mexico is not relieved of its duty to respond to

7   discovery simply because other parties in this lawsuit have produced some

8   documents in response to other requests.  MGA Mexico *itself* appears not to have

9   produced a single page of documents in this litigation.[28]  Indeed, in three sets of

10  objections and two letters responding to Mattel's attempts to meet and confer, MGA

11  Mexico has not specifically identified a single document it claims to have produced,

12  nor has it specifically identified a single Request for which it claims to have

13  produced any, let alone all, responsive documents.[29]  And indeed its written

14  responses to Mattel's Requests reflect wholesale <u>refusals</u> to produce.  Furthermore,

15  as explained previously, <u>MGA Mexico's</u> possession of documents is itself a relevant,

16  operative fact in this litigation.

17      C.      <u>MGA Mexico's Improper General Objections Do Not Provide A</u>

18              <u>Basis To Withhold Documents</u>

19              In its General Objections to Mattel's First Set of Requests, MGA

20  Mexico states that it will search for responsive documents in its possession, custody,

21

22

_____

23  [27]  Response to Third Set of Requests, Searcy Dec., Exh. 6, at Request Nos. 1-6.
24  [28]  Searcy Dec., ¶ 22.
25  [29]  <u>See</u> Response to First Set of Requests, Searcy Dec., Exh. 2, <u>passim</u>; Response
    Second Set of Requests, Searcy Dec., Exh. 4, <u>passim</u>; Response to Third Set of
26  Requests, Searcy Dec., Exh. 6, <u>passim</u>; April 9, 2009 Letter from Amman Khan to
    Marshall Searcy, Searcy Dec., Exh. 8, <u>passim</u>; April 14, 2009 Letter from Amman
27  Khan to Marshall Searcy, Searcy Dec., Exh. 10, <u>passim</u>.

EXHIBIT  37

PAGE  644

1   or control "and located at MGA Mexico's offices."[30]  This objection attempts to
2   impose limitations on MGA Mexico's obligations inconsistent with the <u>Federal</u>
3   <u>Rules</u>. Because the "custody, possession, or control" requirement is in the
4   disjunctive, MGA Mexico is obligated to produce documents whether or not those
5   documents are in MGA Mexico's actual physical possession or happen to be in its
6   (undefined) "offices." <u>In re Bankers Trust Co.</u>, 61 F.3d at 465. For example,
7   documents stored off-site by MGA Mexico would be in MGA Mexico's control, yet
8   MGA Mexico's suggested limitation would allow it to withhold such documents
9   merely because they are not "located at MGA Mexico's offices."  This objection is at
10  odds with MGA Mexico's obligations under the <u>Federal Rules</u>.

11          In its General Objections to Mattel's First and Second Sets of Requests,
12  MGA Mexico also refuses to produce any "information relating to the activities or
13  conduct of other entities or non-parties."[31]  Such a refusal contravenes <u>Rule 34</u>'s
14  requirement that MGA Mexico produce non-privileged, relevant documents in its
15  custody, possession, or control. Information about "other entities or non-parties"
16  can be highly relevant to Mattel's claims. For example, the "activities or conduct" of
17  Carlos Gustavo Machado Gomez, Mariana Trueba Almada, and Pablo Vargas San
18  Jose go directly to the counterclaims in Mattel's Third Amended Answer and
19  Counterclaims.[32]  MGA Mexico may not arbitrarily withhold highly relevant
20  information simply because it supposedly relates to the "activities or conduct" of
21  others.

22          MGA Mexico's refusal to produce information that "relate[s] to
23  activities or conduct in foreign countries" is similarly meritless and arbitrary. Not

24

---

25  [30]  Response to First Set of Requests, Searcy Dec., Exh. 2 at 3:22-25.
26  [31]  <u>Id.</u> at 4:22-23; Response to Second Set of Requests, Searcy Dec., Exh. 4 at
27  4:20-21.
28  [32]  TAAC, Searcy Dec., Exh. 16 at ¶¶ 44-61.

EXHIBIT __37__
PAGE __645__

MATTEL'S MOTION TO COMPEL MGA MEXICO TO PRODUCE DOCUMENTS AND THINGS

07975.3008834.2

1   only do the claims in this lawsuit involve activities and conduct in three separate

2   countries – the United States, Mexico, and Canada[33] – but the great majority of

3   MGA Mexico's documents are likely to relate to activities and conduct in Mexico.

4   This objection would thus allow MGA Mexico to withhold large amounts of highly

5   relevant information about its own activities. The Discovery Master should overrule

6   this and all of MGA Mexico's other general objections.

7       **D.**    **MGA Mexico's Mere Agreement To Produce Documents Does Not**

8             **Foreclose An Order Compelling Production**

9        Despite its failure to produce any documents, MGA Mexico has

10  claimed it adequately responded to Mattel's Requests because it "agreed to produce

11  non-privileged documents responsive to many of the Requests..."[34] In fact, MGA

12  Mexico agreed only to produce documents supporting its own contentions.[35] But in

13  any case, merely agreeing to produce documents does not render a motion to compel

14  and an order compelling production unnecessary. "Either information has been

15  disclosed or it has not been disclosed. If it has not been disclosed, then, plainly, it

16  remains to be compelled." Lamoureux v. Genesis Pharmacy Services, Inc., 226

17  F.R.D. 154, 159 (D. Conn. 2004). See also Mintz v. Dietz & Watson, Inc., 2008

18  WL 5147234 (S.D. Cal. Dec. 5, 2008) (granting motion to compel and awarding

19  sanctions where defendant agreed to produce invoices, but did not produce all

20  invoices as agreed); Streck, Inc. v. Research & Diagnostic Systems, Inc., 250 F.R.D.

21  426, 435 (D. Neb. 2008) (granting motion to compel plaintiff's requests for

22

23   [33]   See, e.g., id. at ¶¶ 28-43, 62-76, 77-87 (United States), 44-61 (Mexico), 88-94 (Canada).

24   [34]   April 9, 2009 Letter from Amman Khan to Marshall Searcy, Searcy Dec., Exh. 8.

25   [35]   Response to Second Set of Requests, Searcy Dec., Exh. 4 at Request Nos. 1-

26  8, 13-22, 25-35, 42-45, 54-58, 61, 71-85, 89-96, 101-104, 106, 117-147, 151-167,

27  174-175, 177-179, 181-192, 194-199, 201-219, 221-222, 227-248, 253-268, 277-

28  299, 302-316, 329-342, 345-385, 387-397, 400-410, 412-417.   EXHIBIT __37__

PAGE __646__

07975.30088.31.2

1   documents within twenty days where "defendants ha[d] agreed to the production,

2   but later refused" to comply).

3            At this point, Mattel is entitled to a date certain by which MGA will

4   produce.  MGA Mexico has had ample time in which it could have collected

5   documents for production pursuant to its agreement to respond.  Yet Mattel still has

6   not received any documents from MGA Mexico.  The information Mattel seeks

7   from MGA Mexico "has not been disclosed" and "plainly, it remains to be

8   compelled." Lamoureux, 226 F.R.D. at 159.  Furthermore, even if MGA Mexico

9   had, in fact, produced the documents it agreed to (which it has not), MGA Mexico

10  has expressly refused to produce documents responsive to the vast majority of

11  Mattel's requests.[36]  MGA Mexico should be compelled to produce documents

12  responsive to all of Mattel's Requests, both where it expressly refuses and where it

13  nominally has agreed to comply but has not done so.

14       E.    **MGA Mexico's Definitional Objections Are Improper**

15           MGA Mexico serially objects to many of Mattel's defined terms.

16  MGA Mexico may not arbitrarily limit its obligation to respond to discovery by

17  unilaterally redefining terms for which Mattel has provided a definition.  Chapman

18  v. California Dept. of Educ., 2002 WL 32854376, at * 3 (N.D. Cal. February 6,

19  2002) ("The proponent of discovery is the master of its terms.  So long as the

20  information sought is within the broad bounds of relevancy as set forth in Rule 26

21  and is otherwise properly discoverable, the respondent may not unilaterally reshape

22  or rephrase the discovery request.").  Moreover, MGA offers no support for its

23  _____

24  [36]  Response to First Set of Requests, Searcy Dec., Exh. 2 at Request Nos. 1-

25  148; Response to Second Set of Requests, Searcy Dec., Exh. 4 at Requests Nos. 9-
    12, 23-24, 37-41, 46-53, 59-60, 62-70, 86-88, 97-100, 105, 107-116, 148-150, 168-

26  173, 176, 180, 193-193, 200, 220, 223-226, 249-252, 269-276, 300-301, 317-328,
    343-344, 386, 398-399, 411, 418-420; Response to Third Set of Requests, Searcy

27  Dec., Exh. 6 at Request Nos. 1-6.

28                                                    EXHIBIT ___37___

                                                     PAGE ___647___

1   purported re-definitions of Mattel's terms; the objections are boilerplate, and

2   improper.  See A. Farber and Partners, 234 F.R.D. at 188 ("general or boilerplate

3   objections such as 'overly burdensome and harrassing' are improper—especially

4   when a party fails to submit any evidentiary declarations supporting such

5   objections."); Walker, 186 F.R.D. at 587 (boilerplate objections are "tantamount to

6   not making any objection at all.").   The limitations MGA Mexico purports to

7   unilaterally impose on its discovery obligations by redefining Mattel's terms should

8   be rejected.

9            1.     "YOU," "YOUR," and "MGA"

10           MGA Mexico objects to Mattel's definitions of "YOU," "YOUR" and

11  "MGA" and purports to limit Mattel's requests to "persons or entities who hold

12  themselves out to MGA Mexico as officers, employees, agents, subsidiaries or

13  divisions of MGA Mexico."[37] This limitation is unintelligible, and MGA Mexico

14  offers no support for it.  MGA Mexico must respond pursuant to the terms as

15  defined by Mattel. Chapman, 2002 WL 32854376, at *3.

16           2.     "MATTEL"

17           MGA Mexico's objection to the definition of "MATTEL" is likewise

18  meritless.  It claims the term is "overbroad" and "vague and ambiguous," but it does

19  not explain why this is allegedly so.  Indeed, the Discovery Master has previously

20  overruled MGA's objection based on the definition of the term "MATTEL."[38]

21  _____

22  [37] Response to First Set of Requests, Searcy Dec., Exh. 2 at 5:20-21; Response to

23  Third Set of Requests, Searcy Dec., Exh. 6 at 5:8-7.  See also Response to Second
    Set of Requests, Searcy Dec., Exh. 4 at 5:17-21 ("MGA Mexico will interpret the

24  terms "YOU" and "YOUR" and "MGA" to refer to all persons or entities who held

25  themselves out to MGA Mexico as directors, officers, employees, agents,
    contractors, subsidiaries, parents, partners, predecessors-in-interest or successors-in-

26  interest of MGA Mexico.").

27  [38] See Phase 2 Discovery Matter Order No. 17, Searcy Dec., Exh. 15 at 20:4-26
    ("[T]he Discovery Master is not persuaded that MGA is unable to understand the

28      (footnote continued)

EXHIBIT  37
PAGE  648

-15-

07975.3008831.2

### 3.   "BRATZ"

MGA Mexico's limitation of the definition of "BRATZ" to "the line of dolls introduced to the market for sale in May or June of 2001 and subsequent dolls, accessories and other products known as Bratz or associated with the Bratz line of dolls" is also improper. Chapman, 2002 WL 32854376, at * 3. Such a restriction would allow MGA Mexico to withhold documents relating to the design, conception, and creation of Bratz, topics which are all highly relevant to this lawsuit. The Discovery Master has already rejected the limitation posited by MGA and compelled discovery that used Mattel's definition of "BRATZ." [39]

### 4.   "MACHADO," TRUEBA," And "VARGAS"

Mattel clearly defines "MACHADO," "TRUEBA" and "VARGAS" to mean these individuals and persons acting on their behalf, pursuant to their authority or subject to their control.[40] MGA Mexico's attempt to redefine these terms to mean only "the individuals Carlos Gustavo Machado Gomez, Mariana Trueba Almada, and Pablo Vargas San Jose" is unjustified. Chapman, 2002 WL 32854376, at * 3.

### 5.   "FORMER MATTEL EMPLOYEE"

Likewise, MGA Mexico's objection to the term "FORMER MATTEL EMPLOYEE" on the grounds that it is "overbroad" and "vague and ambiguous" is improper. MGA Mexico's attempt to limit the term "join" – where Mattel has

---

terms MATTEL and SALES. Accordingly, the definitional objections are overruled.").

[39]   Phase 2 Discovery Matter Amended Order No. 11, Searcy Dec., Exh. 19 at 1-10 (compelling production of documents in response to Requests which used the terms "BRATZ DOLL" and "BRATZ PRODUCT"); id. at n.4 (noting the definition of "BRATZ PRODUCT," which incorporates the term "BRATZ."). See also Order Granting Mattel's Motion to Compel Production of Documents, dated January 26, 2007, Searcy Dec. Exh. 20 at 3, 8-9 (rejecting Bryant's attempt to limit the definition of Bratz to the first generation dolls).

[40]   See First Set of Requests, Searcy Dec., Exh. 1 at 4:13-27.

EXHIBIT 37
PAGE 649

1   defined the term "FORMER MATTEL EMPLOYEE" to mean any employee "who

2   left MATTEL to join YOU" – to mean "work as a full time, salaried employee for"

3   is similarly improper and indefensible. Chapman, 2002 WL 32854376, at * 3. The

4   plain meaning of "join" is much broader. For example, "join" could also mean

5   "work as a full-time, hourly employee for," or "work as a part-time employee for."

6          **6.      "MATTEL DOCUMENTS"**

7          Mattel's definition of the term "MATTEL DOCUMENTS" clearly

8   indicates that the definition is not limited to the documents listed by Bates number

9   in the definition. MGA Mexico may not unilaterally limit the definition to the

10  documents listed in contravention of the clear language of the definition. Chapman,

11  2002 WL 32854376, at * 3. The Discovery Master recently rejected MGA's efforts

12  to withhold relevant information based on an almost identical objection.[41]

13         **7.      "REFER OR RELATE TO"**

14         MGA Mexico's objection that the term "REFER OR RELATE TO" is

15  "overbroad, unduly burdensome, and/or is vague and ambiguous" is improper.

16  MGA Mexico does not identify any way in which the term is overbroad,

17  burdensome, or vague and ambiguous. This objection should be overruled.

18         **8.      "SYSTEM" And "SYSTEMS"**

19         It is improper for MGA Mexico to limit the terms "SYSTEM" and

20  "SYSTEMS" to the examples listed in the definition, in spite of its clear language to

21  the contrary. MGA Mexico may not ignore the clear language of the definition in

22  order to limit its obligation to respond to discovery. Chapman, 2002 WL 32854376,

23  at * 3.

24

25

26

27

28

EXHIBIT __37__
PAGE __650__

---

[41]   Phase 2 Discovery Matter Order No. 17, Searcy Dec., Exh. 15 at 20.

07975.3008831.2

F.  **Mattel's Requests Are Relevant to Phase 2 Claims and Defenses**

Each of Mattel's Requests is reasonably calculated to lead to the discovery of admissible evidence, as discussed below.

1.  **Requests Relating to MGA's Theft of Mattel's Trade Secret and Confidential Information**

Request Nos. 2-78, 126-137, and 144-148 from Mattel's First Set of Requests, and Request Nos. 223-224 (the "Trade Secret Requests") from Mattel's Second Set of Requests, are relevant to the trade secret and related claims in Mattel's Third Amended Answer and Counterclaims. Mattel has alleged that MGA Mexico, along with the other MGA parties, engaged in an enterprise designed to steal confidential, trade secret, and proprietary information from Mattel and to disrupt Mattel's contractual and legal relations with its employees.[42] In furtherance of this enterprise, the MGA parties, including MGA Mexico, poached employees from Mattel and persuaded them to steal Mattel confidential, trade secret and proprietary information before leaving the employ of Mattel to work for MGA.[43] The MGA Parties then used the stolen information to compete unfairly with Mattel. Indeed, in 2005, the year after Machado, Vargas and Trueba left Mattel for MGA Mexico, MGA Mexico increased its market share 90 percent over the previous year.[44] This gain came at the expense of Mattel, which lost market share and was forced to increase advertising and promotional spending to offset further losses.[45] Based on the MGA Parties' misconduct, Mattel has stated claims for (1) Intentional Interference with Contract, (2) Aiding and Abetting Breach of Fiduciary Duty, (3) Aiding and Abetting Breach of Duty of Loyalty, (4) Violation of the RICO Act, (5)

---

[42] See TAAC, Searcy Dec., Exh. 16 at ¶¶ 44-94.
[43] Id.
[44] Id. at ¶ 57.
[45] Id.

EXHIBIT 37
PAGE 051

1   Conspiracy to Violate the RICO Act, (6) Misappropriation of Trade Secrets, (7)

2   Conversion, and (8) Unfair Competition.

3         To support these claims, the Trade Secret Requests seek information

4   related to MGA's scheme to poach Mattel employees and steal Mattel's trade secrets.

5   For instance, the Trade Secret Requests seek information relating to:

6   • MGA Mexico's efforts to hire employees away from Mattel and its knowledge

7       of the legal and contractual duties those employees owed to Mattel;[46]

8   • removal of documents and information from Mattel by former Mattel

9       employees, the transmission of Mattel documents and information to MGA

10      Mexico, and MGA Mexico's possession of Mattel documents and

11      information;[47]

12

13

14   _____

15   [46] See, e.g., First Set of Requests, Searcy Dec., Exh. 1, at Request No. 78 ("All
     DOCUMENTS that REFER OR RELATE TO any effort by YOU to recruit
16   employees or contractors who have been or are employed by or who have worked
     for MATTEL since January 1, 1999, including but not limited to advertising, media
17   releases, brochures, articles, catalogs, handbooks, and public relations material.");
18   Request No. 77 ("To the extent not covered by other Requests, all DOCUMENTS,
     including without limitation all COMMUNICATIONS between YOU and any
19   PERSON, that REFER OR RELATE TO any agreement or contract between
20   MATTEL, on the one hand, and any former employee of MATTEL who has been
21   hired, considered, solicited or interviewed for any position or potential position or
     employment by YOU."). See also id. at Request Nos. 15-17, 19, 20-35, 76, 127, and
22   144-145.
23   [47] See, e.g., First Set of Requests, Searcy Dec., Exh. 1, at Request No. 2 ("All
     DOCUMENTS or tangible things that any of the FORMER MATTEL
24   EMPLOYEES removed, sent or transferred from MATTEL or removed, deleted,
     copied, reproduced or transferred from any MATTEL computer or electronic
25   storage device."); Request No. 14 ("All DOCUMENTS given, sent or transmitted to
26   or shared with YOU from or by, whether directly or indirectly, any of the FORMER
     MATTEL EMPLOYEES prior to April 20, 2004."). See also id. at Request Nos. 3-
27   13, 18, 36-39, 53, 62, 65-69, 126, and 128-131.

28

EXHIBIT  37
PAGE  652

07975.3008831.2

-19-

1    • the elements of Mattel's claim for Misappropriation of Trade Secrets, such as

2      that the information derived independent economic value from not being

3      generally known, and MGA Mexico's own defenses to this claim;[48]

4    • MGA Mexico's use of Mattel's confidential and trade secret information to

5      compete unfairly with Mattel;[49]

6    • MGA Mexico's attempts to conceal its activities by destroying evidence.[50]

7

8

9    [48] See, e.g., First Set of Requests, Searcy Dec., Exh. 1, at Request No. 58 ("All
     DOCUMENTS that YOU contend prove or that YOU will rely on in this ACTION
10   to prove that the information in the MATTEL DOCUMENTS does not derive
     independent economic value from not being generally known to the public or other
11   persons who can obtain economic value from its use."); Request No. 60
12   ("DOCUMENTS sufficient to IDENTIFY any MATTEL DOCUMENT in YOUR
     possession, custody or control that YOU contend does not contain information from
13   which PERSONS can obtain economic value from its disclosure and use."). See
14   also id. at Request Nos. 47-50, 55-57, 59-61 and 70-71.
15   [49] See, e.g., First Set of Requests, Searcy Dec., Exh. 1, at Request No. 43 ("All
     DOCUMENTS, including but not limited to all COMMUNICATIONS, that REFER
16   OR RELATE TO YOUR market planning or product development prepared,
17   created, sent or transmitted, whether in whole or in part, by MACHADO at any time
     prior to April 30, 2005."); Request No. 44 ("All DOCUMENTS, including but not
18   limited to all COMMUNICATIONS, that REFER OR RELATE TO YOUR market
19   planning or product development prepared, created, sent or transmitted, whether in
     whole or in part, by TRUEBA at any time prior to April 30, 2005."); Request No. 45
20   ("All DOCUMENTS, including but not limited to all COMMUNICATIONS, that
21   REFER OR RELATE TO YOUR promotional spending and activities prepared,
     created, sent or transmitted, whether in whole or in part, by VARGAS at any time
22   prior to April 30, 2005."). See also id. at Request Nos. 41, 46, 63-64, 72-75, and
23   146-148; Second Set of Requests, Searcy Dec., Exh. 3, at Request Nos. 223-224.
24   [50] See, e.g., First Set of Requests, Searcy Dec., Exh. 1, at Request No. 132 ("All
     COMMUNICATIONS between YOU and any PERSON that REFER OR RELATE
25   TO the retention or destruction of DOCUMENTS or DIGITAL INFORMATION
     between January 1, 1999 and the present."); Request No. 133 ("All DOCUMENTS
26   that REFER OR RELATE TO the retention or destruction policies, procedures and
27   practices for YOUR DOCUMENTS and DIGITAL INFORMATION that REFER
     OR RELATE TO BRATZ since January 1, 2003, including without limitation the
28   (footnote continued)

EXHIBIT 37
PAGE 653

1    The Trade Secret Requests relate directly to claims and defenses in this case.  If, for

2    example, MGA Mexico possesses documents showing it has destroyed evidence to

3    conceal its wrongdoing, Mattel is clearly entitled to obtain such documents.

4    Likewise, if MGA Mexico possesses documents showing that it covertly

5    communicated with Mattel employees to convince them to steal Mattel trade secrets

6    and to work for MGA, Mattel is entitled to discover this information.  Mattel is

7    similarly entitled to discover documents showing that MGA Mexico used trade

8    secrets stolen from Mattel to compete unfairly with Mattel.  MGA Mexico's refusal

9    to produce such documents is indefensible.

10            **2.        Requests Relating to MGA's "Copycatting" and Other**

11                       **Unfair Competition Claims**

12            MGA has alleged that Mattel has "engaged in tortious, illegal and

13    unethical behavior [intended] to disrupt, if not destroy, MGA,"[51] including "serial

14    copycatting" of Bratz.[52]  MGA has further alleged that, as a result:

15            MGA has suffered…lost sales, lost licensing fees, lost contracts, lost

16            relationships, lost business opportunities and other damages and

17            harm…Its ability to enter new markets and product lines has been

18            hampered and delayed.  Its production costs have increased, its

19            reputation and relationships with important players in the industry

20            have been negatively impacted, the value of its business has been

21

22    _____

23    retention or destruction of DOCUMENTS and DIGITAL INFORMATION when (a)
      hardware is replaced, modified or upgraded and (b) when PERSONS leave YOUR
24    employ."); Request Nos. 134-135 (seeking information relating to "preservation,
      collection, destruction, removal, transfer, loss or impairment" of MGA Mexico
25    documents and digital information).  See also id. at Request Nos. 40, 51-52.
26    [51]   Complaint for False Designation of Origin, dated April 13, 2005
      ("Complaint"), Searcy Dec., Exh. 17 at ¶ 98.
27    [52]   Id. at ¶ 33.

28                                                              EXHIBIT ___37___
                                                              PAGE ___654___

1    diminished, and its ability to attract, hire and retain employees has

2    been affected.[53]

3        Based on its allegation that Mattel has engaged in "serial copycatting"

4 of Bratz, MGA brought claims against Mattel for (1) False Designation of Origin or

5 Affiliation,[54] (2) Dilution,[55] and (3) Unjust Enrichment.[56]  MGA also brought a

6 claim against Mattel for Unfair Competition and Unfair Business Practices based on

7 allegations that Mattel has engaged in tortious acts intended to "disrupt, if not

8 destroy, MGA."[57]  Request Nos. 1 and 79-125 in Mattel's First Set of Requests (the

9 "MGA Claims Requests") are relevant to these allegations and these claims.

10        The MGA Claims Requests seek information to refute MGA's

11 allegations.  The Requests thus seek information about the "unique and inherently

12 distinctive look"[58] of Bratz that Mattel allegedly copied.[59]  The Requests also seek

13 information relating to MGA's damages allegations.  In particular, the Requests seek

14 information relating to MGA's allegations that it has suffered "lost sales, lost

15 licensing fees, lost contracts, lost relationships, lost business opportunities," and that

16 "[i]ts production costs have increased, its reputation and relationships with

17 important players in the industry have been negatively impacted, [and] the value of

18 its business has been diminished," because of Mattel's alleged unlawful conduct.[60]

19 For example, the MGA Claims Requests seek information regarding:

20

---

21    [53] Id. at ¶ 100.

22    [54] Id. at ¶ 101-108.

23    [55] Id. at ¶ 119-123.

     [56] Id. at ¶ 124-125.

24    [57] Id. at ¶¶ 109-118.

25    [58] Id. at ¶ 36.

     [59] See First Set of Requests, Searcy Dec., Exh. 1, at Request No. 1 ("A sample

26 of each BRATZ PRODUCT including, without limitation, each BRATZ DOLL,

27 sold by YOU or YOUR licensees.").

     [60] Complaint, Searcy Dec., Exh. 17 at ¶ 100.

28

EXHIBIT 37
PAGE 655

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- Bratz licensing fees;[61]
- sales of Bratz products;[62]
- revenue derived from Bratz;[63]
- costs related to Bratz;[64]
- profits from Bratz;[65]

---

[61] See First Set of Requests, Searcy Dec., Exh. 1, at Request No. 79 ("DOCUMENTS sufficient to IDENTIFY every PERSON who has entered into a BRATZ LICENSE with YOU or anyone acting on YOUR behalf.").

[62] See, e.g., First Set of Requests, Searcy Dec., Exh. 1, at Request No. 80 ("DOCUMENTS sufficient to IDENTIFY by product name, product number and SKU each BRATZ PRODUCT including, without limitation, each BRATZ DOLL, sold by YOU or YOUR licensees."); Request No. 81 ("DOCUMENTS sufficient to show the number of units of each BRATZ DOLL sold by YOU or YOUR licensees."). See also id. at Request Nos. 90, 94, 97-98, 108, 114, 118 and 120.

[63] See, e.g., First Set of Requests, Searcy Dec., Exh. 1, at Request No. 82 ("DOCUMENTS sufficient to show the revenue received by YOU from the sale of each BRATZ DOLL sold by YOU or YOUR licensees."); Request No. 91 ("DOCUMENTS sufficient to show, by product number or SKU, the revenue received by YOU from the sale of each BRATZ DOLL sold by YOU or YOUR licensees."). See also id. at Request Nos. 95, 97, 99, 109, 114-116, 118 and 121.

[64] See, e.g., First Set of Requests, Searcy Dec., Exh. 1 at Request No. 83 ("DOCUMENTS sufficient to show YOUR cost of goods sold, unit cost and other costs for each BRATZ DOLL sold by YOU or YOUR licensees."); Request No. 92 ("DOCUMENTS sufficient to show, by product number or SKU, YOUR cost of goods sold, unit cost and other costs for each BRATZ DOLL sold by YOU or YOUR licensees."). See also id. at Request Nos. 97, 100, 110, 114, 117 and 118-120.

[65] See, e.g., First Set of Requests, Searcy Dec., Exh. 1 at Request No. 84 ("All DOCUMENTS that evidence, reflect or REFER OR RELATE TO YOUR profits from the sale of each BRATZ DOLL sold by YOU or YOUR licensees."); Request No. 93 ("All DOCUMENTS that evidence, reflect or REFER OR RELATE TO YOUR profits, by product number or SKU, from the sale of each BRATZ DOLL sold by YOU or YOUR licensees."). See also id. at Request Nos. 96, 97, 101, 111, 114-116 and 118-121.

EXHIBIT 37
PAGE 656

1     •   MGA Mexico's relationship with and reputation among its Bratz business

2       partners;[66]

3     •   the value of MGA Mexico's business and of the Bratz brand.[67]

4  The MGA Claims Requests relate directly to MGA's claims, and MGA Mexico

5  undoubtedly possesses documents relating to its Bratz sales, revenue, costs, profits

6  and so on. Mattel is entitled to discover this information so that it can contest

7  MGA's claims.

8           **3.**     **Requests Relating to MGA's "Unclean Hands" Defense**

9           In its Amended Answer, MGA asserted "unclean hands" as an

10  affirmative defense.[68] In support of this defense, MGA accuses Mattel of a long list

11  of bad behaviors.[69] Request Nos. 1-420 from Mattel's Second Set of Requests (the

12  "Unclean Hands Requests") relate to these "unclean hands" allegations as follows:

13

14

15

16

17     [66]   See, e.g., First Set of Requests, Searcy Dec., Exh. 1 at Request No. 85 ("For

18 each customer to whom YOU or YOUR licensees have ever sold any BRATZ

19 DOLL, DOCUMENTS sufficient to show the number of units of each such BRATZ
DOLL sold by YOU or YOUR licensees to that customer."); Request No. 86 ("For

20 each customer to whom YOU or YOUR licensees have ever sold any BRATZ

21 DOLL, DOCUMENTS sufficient to show the revenue received by YOU from each
such BRATZ DOLL sold by YOU or YOUR licensees to that customer."). See also

22 id. at Request Nos. 87-89, 102-107 and 112-113.

23     [67]   See, e.g., First Set of Requests, Searcy Dec., Exh. 1 at Request No. 122 ("All
DOCUMENTS that REFER OR RELATE TO the value of the BRATZ brand.");

24 Request No. 123 ("DOCUMENTS sufficient to calculate YOUR net worth on a

25 yearly basis for each year from 2002 to the present."). See also id. at Request Nos.
124-125.

26     [68]   MGA Parties' Answer and Affirmative Defenses to Mattel Inc.'s Third

27 Amended Answer and Counterclaims, Searcy Dec., Exh. 18 at 21-22.
    [69]   Id.

28

EXHIBIT __37__

1

2

3
- Request Nos. 1-12 and 418-420 relate to MGA's allegation that Mattel engaged in "efforts to undermine MGA's business and 'kill' Bratz at any cost";[70]

4

5
- Request Nos. 13-24 relate to MGA's allegation that Mattel engaged in "efforts to create negative publicity or press about MGA";[71]

6

7

8
- Request Nos. 25-41 relate to MGA's allegation that Mattel engaged in "efforts to fund or commission market research or studies that portray Bratz or MGA products negatively";[72]

9

10
- Request Nos. 42-70 relate to MGA's allegation that Mattel engaged in "efforts to interfere with MGA's acquisition of or investment in [ZAPF]";[73]

11

12

13
- Request Nos. 71-88 relate to MGA's allegation that Mattel engaged in "efforts to include negative references to MGA or Bratz on Mattel's 'We Believe in Girls' website";[74]

14

15

_____

16

17

18
[70]   See, e.g., Second Set of Requests, Searcy Dec., Exh. 3 at Request No. 1 ("All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, that REFER OR RELATE TO YOUR allegation that MATTEL engaged in 'efforts to undermine MGA's business and to 'kill' Bratz at any cost.'").

19

20

21
[71]   See, e.g., id. at Request No. 13 ("All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, that REFER OR RELATE TO YOUR allegation that MATTEL engaged in 'efforts to create negative publicity or press about MGA, MGA products, Bryant, Larian, or MGA employees.'").

22

23
[72]   See, e.g., id. at Request No. 25 ("All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, that REFER OR RELATE TO YOUR allegation that MATTEL engaged in 'efforts to fund or commission market research or studies that portray Bratz or MGA products negatively.'").

24

25

26
[73]   See, e.g., id. at Request No. 42 ("All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, that REFER OR RELATE TO YOUR allegation that MATTEL engaged in 'efforts to interfere with MGA's acquisition of or investment in [ZAPF].'").

27

28
[74]   See, e.g., id. at Request No. 71 ("All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, that REFER OR RELATE
(footnote continued)

EXHIBIT ___37___

PAGE ___658___

07975.3008831.2

1      • Request Nos. 89-90 relate to MGA's contention that Mattel's alleged acts are

2        not protected conduct;[75]

3      • Request Nos. 91-116 relate to MGA's allegation that Mattel engaged in

4        "efforts or inten[ded] to interfere with business dealings or contractual

5        relations between MGA and [SMOBY]";[76]

6      • Request Nos. 117-180 relate to MGA's allegation that Mattel "influenc[ed]

7        Nickelodeon to reject MGA advertisements or to limit time slots for

8        advertisements";[77]

9      • Request Nos. 181-200 relate to MGA's allegation that Mattel "assist[ed]

10     parties in lawsuits against MGA";[78]

11     • Request Nos. 201-226 relate to MGA's allegation that Mattel "monitor[ed],

12       'sp[ied] on' or gain[ed] knowledge of MGA's trade secrets, non-public

13

14  TO YOUR allegation that MATTEL engaged in 'efforts to include negative
references to MGA or Bratz on Mattel's 'We Believe in Girls' website.'").

15    [75]  Id. at Request No. 89 ("All DOCUMENTS that support any contention by

16  YOU that MATTEL'S acts that are the subject of any alleged defense of YOURS,
including without limitation, YOUR alleged "unclean hands" defense, is not barred,

17  in whole or in part, by the Communications Decency Act."); Request No. 90 ("All

18  DOCUMENTS that support any contention by YOU that MATTEL'S acts that are
the subject of any alleged defense of YOURS, including without limitation, YOUR

19  alleged "unclean hands" defense, is not barred, in whole or in part, by the First

20  Amendment to the United States Constitution.").

21    [76]  See, e.g., id. at Request No. 91 ("All DOCUMENTS, including but not
limited to all COMMUNICATIONS with any PERSON, that REFER OR RELATE

22  TO YOUR allegation that MATTEL engaged in 'efforts or inten[ded] to interfere

23  with business dealings or contractual relations between MGA and [SMOBY].'").

24    [77]  See, e.g., id. at Request No. 117 ("All DOCUMENTS, including but not
limited to all COMMUNICATIONS with any PERSON, that REFER OR RELATE

25  TO YOUR allegation that MATTEL 'influenc[ed] Nickelodeon to reject MGA
advertisements or to limit time slots for advertisements.'").

26    [78]  See, e.g., id. at Request No. 181 ("All DOCUMENTS, including but not

27  limited to all COMMUNICATIONS with any PERSON, that REFER OR RELATE
TO YOUR allegation that MATTEL 'assist[ed] parties in lawsuits against MGA.'").

28

EXHIBIT 37
PAGE 659

1    information, non-public activities, unreleased products, and product
2    development";[79]

3    • Request Nos. 227-252 relate to MGA's allegation that Mattel "gain[ed]
4       access, or attempt[ed] to gain access, to MGA showrooms, Plan-o-Grams,
5       merchandising displays [and] Toy Fair displays on false pretenses";[80]

6    • Request Nos. 253-276 relate to MGA's allegation that Mattel "wrongfully
7       obtain[ed] MGA's costs and sales information through Mattel-employed
8       category managers at retailers";[81]

9    • Request Nos. 277-301 relate to MGA's allegation that Mattel "induc[ed] non-
10      party customers to breach confidentiality agreements with MGA and divulge
11      non-public information about MGA's unreleased products";[82]

12    • Request Nos. 302-327 relate to MGA's allegation that Mattel "covertly
13      investigat[ed] MGA, its officers and employees, and their family members";[83]

14

---

15    [79]  See, e.g., id. at Request No. 201 ("All DOCUMENTS, including but not
16 limited to all COMMUNICATIONS with any PERSON, that REFER OR RELATE
17 TO YOUR allegation that MATTEL 'monitor[ed], 'sp[ied] on' or gain[ed]
   knowledge of MGA's trade secrets, non-public information, non-public activities,
18 unreleased products, and product development.'").
19    [80]  See, e.g., id. at Request No. 227 ("All DOCUMENTS, including but not
   limited to all COMMUNICATIONS with any PERSON, that REFER OR RELATE
20 TO YOUR allegation that MATTEL 'gain[ed] access, or attemp[ed] to gain access,
21 to MGA showrooms, Plan-o-Grams, merchandising displays [and] Toy Fair displays
   on false pretenses.'").
22    [81]  See, e.g., id. at Request No. 253 ("All DOCUMENTS, including but not
23 limited to all COMMUNICATIONS with any PERSON, that REFER OR RELATE
   TO YOUR allegation that MATTEL 'wrongfully obtain[ed] MGA's costs and sales
24 information through Mattel-employed category managers at retailers.'").
25    [82]  See, e.g., id. at Request No. 277 ("All DOCUMENTS, including but not
26 limited to all COMMUNICATIONS with any PERSON, that REFER OR RELATE
   TO YOUR allegation that MATTEL 'induc[ed] non-party customers to breach
27 confidentiality agreements with MGA and divulge non-public information about
   MGA's unreleased products.'").
28

EXHIBIT 37
PAGE 660

MATTEL'S MOTION TO COMPEL MGA MEXICO TO PRODUCE DOCUMENTS AND THINGS

07975.3008831.2

1  • Request Nos. 329-344 relate to MGA's allegation that Mattel "contact[ed]
2  persons under false pretenses in order to interrogate them about Bratz and this
3  litigation";[84]

4  • Request Nos. 345-364 relate to MGA's allegation that Mattel "coerc[ed] its
5  employees to accept restrictive covenants (right before a massive layoff) and
6  non-compete clauses and other efforts to prevent prospective MGA
7  employees from accepting offers of employment";[85]

8  • Request Nos. 365-368 relate to MGA's allegation that Mattel "delay[ed] in
9  suing Carter Bryant because, *inter alia*, Mattel wanted Bryant to testify in an
10  unrelated Mattel case";[86]

11  • Request Nos. 369-386 relate to MGA's allegation that Mattel "falsely
12  inflat[ed] its Barbie sales figures in an effort to mislead the public and
13  retailers";[87]

14

15  [83]  See, e.g., id. at Request No. 302 ("All DOCUMENTS, including but not
16  limited to all COMMUNICATIONS with any PERSON, that REFER OR RELATE
17  TO YOUR allegation that MATTEL 'covertly investigat[ed] MGA, its officers and
employees, and their family members.'").
18  [84]  See, e.g., id. at Request No. 329 ("All DOCUMENTS, including but not
19  limited to all COMMUNICATIONS with any PERSON, that REFER OR RELATE
TO YOUR allegation that MATTEL 'contact[ed] persons under false pretense in
20  order to interrogate them about Bratz and this litigation.'").
21  [85]  See, e.g., id. at Request No. 345 ("All DOCUMENTS, including but not
limited to all COMMUNICATIONS with any PERSON, that REFER OR RELATE
22  TO YOUR allegation that MATTEL 'coerc[ed] its employees to accept restrictive
covenants (right before a massive layoff) and non-compete clauses and other efforts
23  to prevent prospective MGA employees from accepting offers of employment.'").
24  [86]  See, e.g., id. at Request No. 365  ("All DOCUMENTS, including but not
25  limited to all COMMUNICATIONS with any PERSON, that REFER OR RELATE
TO YOUR allegation that MATTEL 'delay[ed] in suing Carter Bryant because, *inter
26  alia*, Mattel wanted Bryant to testify in an unrelated Mattel case.'").
27  [87]  See, e.g., id. at Request No. 369 ("All DOCUMENTS, including but not
limited to all COMMUNICATIONS with any PERSON, that REFER OR RELATE
28  (footnote continued)

07975.3008831.2

EXHIBIT __37__
PAGE __661__

1    • Request Nos. 328 and 387-399 relate to MGA's allegation that Mattel "[took]

2       all measures to conceal its bad acts, including the willful non-retention and

3       destruction of documents";[88]

4    • Request Nos. 400-403 relate to MGA's allegation that Mattel "believed from

5       the time that Carter Bryant left Mattel's employ that he was going to perform

6       work for a Mattel competitor";[89]

7    • Request Nos. 404-411 relate to MGA's allegation that Mattel "began

8       investigating Bryant and MGA Defendants, including Bryant's role in the

9       creation and development of Bratz, at least as early as March 2002";[90]

10   • Request Nos. 412-417 relate to MGA's allegation that "Mattel's counterclaims

11      are barred in whole or in part by Mattel unclean hands and wrongful hands."[91]

12

13

14   _____

15   TO YOUR allegation that MATTEL 'falsely inflat[ed] its Barbie sales figures in an
     effort to mislead the public and retailers.'").

16   [88]  See, e.g., id. at Request No. 387 ("All DOCUMENTS, including but not

17   limited to all COMMUNICATIONS with any PERSON, that REFER OR RELATE
     TO YOUR allegation that MATTEL '[took] all measures to conceal its bad acts,

18   including the willful non-retention and destruction of documents.'").

19   [89]  See, e.g., id. at Request No. 400 ("All DOCUMENTS, including but not
     limited to all COMMUNICATIONS with any PERSON, that REFER OR RELATE

20   TO YOUR allegation that MATTEL 'believed from the time that Carter Bryant left
     Mattel's employ that he was going to perform work for a Mattel competitor.'").

21
     [90]  See, e.g., id. at Request No. 404 ("All DOCUMENTS, including but not

22   limited to all COMMUNICATIONS with any PERSON, that REFER OR RELATE

23   TO YOUR allegation that MATTEL 'began investigating Bryant and MGA
     Defendants, including Bryant's role in the creation and development of Bratz, at

24   least as early as March 2002.'").

25   [91]  See, e.g., id. at Request No. 412 ("To the extent not produced in response to
     any other Request for Production, all DOCUMENTS, including but not limited to all

26   COMMUNICATIONS with any PERSON, that REFER OR RELATE TO YOUR

27   allegation that 'Mattel's counterclaims are barred in whole or in part by Mattel's
     unclean hands and wrongful hands.'").

28

EXHIBIT __37__
PAGE __662__

07975 300883 1.2

1   These Requests seek to discover evidence relating to the MGA Parties'
2   own claimed defenses and allegations.  The Requests also seek information relating
3   to whether MGA Mexico has itself engaged in any of the conduct it accuses Mattel
4   of, though MGA Mexico has refused to produce documents responsive to such
5   Requests.[92]  This is all information that Mattel is entitled to discover based on the
6   allegations in MGA's "unclean hands" defense.

7          **4.      Requests Relating the Scope of MGA Mexico's Search for**
8                 **Responsive Documents**

9          Request Nos. 137-139 and 141 in Mattel's First Set of Requests and
10  Request Nos. 1-6 in Mattel's Third Set of Requests seek information regarding the
11  scope of MGA Mexico's search for documents and whether it has been reasonably
12  calculated to located responsive documents.  For instance, Request No. 139 in
13  Mattel's First Set of Requests seeks information about MGA Mexico's electronic
14  message systems, which will provide relevant information about the existence and
15  location of discoverable information and allow Mattel to evaluate whether MGA
16  Mexico has conducted a sufficiently thorough search for documents relating to
17  MGA Mexico's communications with Mattel employees and theft of confidential
18  Mattel information.  Under the Federal Rules, information relating to the location of
19  MGA Mexico information and the scope of MGA Mexico's search for documents is
20  discoverable.  See Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery
21  regarding...the existence, description, nature, custody, condition, and location of
22  any documents or other tangible things...").  Request Nos. 1-6 in Mattel's Third Set
23  of Requests seek information relating to the identity, location, and contents of MGA
24  Mexico's document storage facilities, which constitutes discoverable information for
25  the same reason.

26  _____

27  [92]   See, e.g., Response to Second Set of Requests, Searcy Dec., Exh. 4 at
28  Request Nos. 9-12, 38-41, 111-114, 148, 249-252, and 321-327.

EXHIBIT _37_
PAGE _663_

MATTEL'S MOTION TO COMPEL MGA MEXICO TO PRODUCE DOCUMENTS AND THINGS

07975.300883.2

1         **5.**    **Requests Relating to MGA's Defenses and to Information on**

2           **Which MGA Intends to Rely in This Action**

3         Request No. 140 in Mattel's First Set of Requests is relevant to MGA

4  Mexico's Phase 2 defenses. It seeks "All DOCUMENTS and tangible things

5  REFERRING OR RELATING TO YOUR defenses in this ACTION." If a

6  documents relates to MGA Mexico's defenses in this action, it is clearly relevant

7  information which Mattel is entitled to discover. MGA Mexico has nevertheless

8  objected to this Request on the grounds that "it seeks documents not relevant to the

9  claims or defenses in this action...."[93] Such an objection cannot be sustained.

10         Similarly, Request Nos. 142 and 142 in Mattel's First Set of Requests

11  seek "all DOCUMENTS and tangible things upon which YOU intend to rely to

12  support YOUR defenses in this ACTION" and "all DOCUMENTS and tangible

13  things upon which YOU intend to rely in this ACTION." By definition, these

14  Requests seek only relevant information. Again, however, MGA Mexico has

15  refused to produce such documents, claiming that the Requests seek "documents not

16  relevant to the claims or defenses in this action...."[94] MGA Mexico's frivolous

17  objections should be overruled and MGA Mexico should be compelled to produce

18  these documents.

19  **II.**    **MGA MEXICO SHOULD BE SANCTIONED FOR ITS WILLFUL**

20        **REFUSAL TO COMPLY WITH ITS DISCOVERY OBLIGATIONS**

21         Under the Federal Rules, a party bringing a motion to compel is entitled

22  to the "reasonable expenses incurred in making the motion, including attorney's

23  fees," unless the court finds that the motion was filed without the movant's first

24  making a good faith effort to obtain the discovery without court action, or "that the

25  opposing party's nondisclosure, response or objection was substantially justified," or

26

27  [93] Response to First Set of Requests, Searcy Dec., Exh. 2 at Request No. 140.

28  [94] Id. at Request Nos. 142-143.

EXHIBIT **37**

PAGE **664**

1  that "other circumstances make an award of expenses unjust." <u>Fed. R. Civ. P.</u>

2  37(a)(5). The burden of establishing substantial justification is on the party being

3  sanctioned. <u>Hyde & Drath v. Baker</u>, 24 F.3d 1162, 1171 (9th Cir. 1994).

4  Independently, sanctions may be imposed under 28 U.S.C. § 1927, which provides

5  that "[a]ny attorney...who so multiplies the proceedings in any case unreasonably

6  and vexatiously may be required by the court to satisfy personally the excess costs,

7  expenses, and attorney's fees reasonably incurred because of such conduct."

8  Sanctions under this section are appropriate "for conduct that, viewed objectively,

9  manifests either intentional or reckless disregard of the attorney's duties to the

10 court." <u>RTC v. Dabney</u>, 73 F.3d 262, 265 (10th Cir. 1995) (citing <u>Braley v.</u>

11 <u>Campbell</u>, 832 F.2d 1504, 1512 (10th Cir. 1987)).

12         MGA Mexico has not only refused to respond to discovery, it has

13 apparently failed to produce documents in response to *any* of Mattel's Requests --

14 withholding even documents supporting its own claims and defenses. MGA Mexico

15 thus bears the burden of justifying a total failure to respond to discovery, yet it has

16 not provided any justification other than generic, boilerplate objections.

17 Furthermore, MGA Mexico has attempted to further delay its production of

18 documents with its spurious request that *Mattel* identify the Requests for which

19 MGA Mexico has failed to produce documents, which has the burden exactly

20 backwards. Mattel respectfully requests that MGA Mexico be ordered to pay $5000

21 as partial reimbursement for the fees and costs Mattel has incurred in brining this

22 motion.

23                          ### Conclusion

24         For the foregoing reasons, Mattel respectfully requests that the

25 Discovery Master (1) compel MGA Mexico to produce all non-privileged

26 documents in MGA Mexico's custody, possession, or control that are responsive to

27 Mattel's First, Second, and Third Sets of Requests for Production to MGA Mexico ,

28 (2) compel MGA Mexico to provide Mattel with a privilege log sufficient for Mattel

EXHIBIT 37

PAGE 665

1   to assess the validity of MGA Mexico's privilege claims with respect to all

2   documents withheld on privilege grounds, (3) overrule all of MGA Mexico's

3   objections to the Requests, and (4) impose sanctions in the amount of $5000.

4

5   DATED:  July 15, 2009                QUINN EMANUEL URQUHART OLIVER &
                                         HEDGES, LLP
6

7                                        By /s/ Marshall M. Searcy III
8                                            Marshall M. Searcy III
                                             Attorneys for Mattel, Inc.
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                                      EXHIBIT __37__
28                                                      PAGE ___666___

07975.30088\31.2
                                        -33-