# EXHIBIT 38

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 39

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 090378)
johnquinn@quinnemanuel.com
Michael T. Zeller (Bar No. 196417)
(michaelzeller@quinnemanuel.com)
Jon D. Corey (Bar No. 185066)
(joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with Case Nos. CV 04-09059 and CV 05-02727 |
| vs. | **DISCOVERY MATTER**<br>**[To Be Heard By Discovery Master Robert O'Brien]** |
| MATTEL, INC., a Delaware corporation, | |
| Defendant. | MATTEL, INC.'S NOTICE OF MOTION AND MOTION: (1) TO ENFORCE ORDER COMPELLING THE OMNI PARTIES TO PRODUCE DOCUMENTS, (2) TO STRIKE OBJECTIONS, AND (3) FOR SANCTIONS |
| AND CONSOLIDATED ACTIONS | |
| **PUBLIC REDACTED VERSION** | [Proposed Order and Declaration of Michael T. Zeller filed concurrently] |
| | Date:   TBD<br>Time:   TBD<br>Place:  TBD |
| | **Phase 2**<br>Discovery December 11, 2009<br>Pre-trial Conference:  March 1, 2010<br>Trial Date:  March 23, 2010 |

EXHIBIT 34

PAGE 692

MATTEL'S MOTION TO ENFORCE ORDER. STRIKE OBJECTIONS. AND FOR SANCTIONS

1  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2        PLEASE TAKE NOTICE that at a time and place of hearing to be set

3  by Discovery Master Robert O'Brien, Mattel, Inc. ("Mattel") will, and hereby does,

4  move the Discovery Master for an Order:

5        (1)   enforcing Discovery Master's Order No. 27 compelling Vision

6  Capital, LLC ("Vision Capital") to fully produce documents responsive to Mattel's

7  Request Nos. 13, 14, and 16 in its subpoena to Vision Capital;

8        (2)   enforcing Discovery Master's Order No. 27 compelling Omni

9  808 Investors, LLC ("Omni 808"), to fully produce documents responsive to

10  Mattel's Request Nos. 14 and 16 in its subpoena to Omni 808;

11        (3)   enforcing Discovery Master's Order No. 27 compelling OmniNet

12  Capital, LLC ("OmniNet"), to fully produce documents responsive to Mattel's

13  Request No. 11 in its subpoena to OmniNet;

14        (4)   striking the objections of MGA and Larian to producing

15  documents relating to "foreign activities" or to non-parties, declaring that

16  defendants and the Omni Parties may not withhold documents on such grounds, and

17  ordering them to produce any and all documents withheld on such grounds that have

18  either been previously ordered or that were otherwise agreed would be produced;

19  and

20        (5)   imposing sanctions in the amount of $3,000.

21        This Motion is made pursuant to Federal Rules of Civil Procedure

22  33(b)(5) and 37(a) on the grounds that the Omni Parties have failed to comply with

23  the Discovery Master's Order No. 27 and that neither defendants nor the Omni

24  Parties may properly withhold documents or other information by the defendants

25  and the Omni Parties on the basis that they concern activities, persons or entities

26  outside the United States or have not yet been established to be within the Court's

27  personal jurisdiction.

28

EXHIBIT 34
PAGE 693

1        This Motion is based on this Notice of Motion and Motion, the

2    accompanying Memorandum of Points and Authorities, the Declaration of Michael

3    T. Zeller, the records and files of this Court, and all other matters of which the Court

4    may take judicial notice.

5          **Statement of Rule 37-1 Compliance**

6        The parties met and conferred regarding this Motion on July 13, 2009

7    and July 21.[1]

8

9    DATED:  July 24, 2009        QUINN EMANUEL URQUHART OLIVER & HEDGES. LLP

10

11                         By _____

12                           Michael T. Zeller
                             Attorneys for Mattel. Inc.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27   [1]  See Declaration of Michael T. Zeller, filed concurrently ("Zeller Decl.") Exhs.

28   12, 13, 18-24.

07975/3019972.2

EXHIBIT **39**

PAGE **694**

-3-

MATTEL'S MOTION TO ENFORCE ORDER. STRIKE OBJECTIONS. AND FOR SANCTIONS

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................ 1

STATEMENT OF FACTS .................................................................... 3

ARGUMENT .............................................................................. 7

I.   THE OMNI PARTIES HAVE FAILED TO COMPLY WITH
     DISCOVERY MASTER ORDER NO. 27 ................................................. 7

     A.   The Discovery Master Should Enforce His Order Against Omni
          808 And OmniNet ............................................................ 7

     B.   The Discovery Master Should Enforce The Order and Compel
          Vision Capital to Fully Respond to Request Nos. 13, 14, and 16 .......... 9

II.  THE DISCOVERY MASTER SHOULD RULE THAT NEITHER
     THE MGA PARTIES NOR THE OMNI PARTIES MAY
     WITHHOLD DOCUMENTS BASED ON JURISDICTIONAL
     GROUNDS .......................................................................10

III. THE DISCOVERY MASTER SHOULD SANCTION THE OMNI
     PARTIES .......................................................................11

CONCLUSION .............................................................................12

EXHIBIT 39
PAGE 695

MATTEL'S MOTION TO ENFORCE ORDER, STRIKE OBJECTIONS, AND FOR SANCTIONS

07975/3017972.2

# TABLE OF AUTHORITIES

<div align="right">**Page**</div>

### Cases

Braley v. Campbell,
    832 F.2d 1504 (10th Cir. 1987) ................................................................ 12

Hyde & Drath v. Baker,
    24 F.3d 1162 (9th Cir. 1994) ................................................................... 11

RTC v. Dabney,
    73 F.3d 262 (10th Cir. 1995) ................................................................... 12

### Statutes

28 U.S.C. § 1927 ..................................................................................... 11

Fed. R. Civ. P. 37(a)(4) ............................................................................ 11

Fed. R. Civ. P. 37(b)(2)(C) ...................................................................... 11

EXHIBIT 39
PAGE 696

07975/3017972.2

MATTEL'S MOTION TO ENFORCE ORDER. STRIKE OBJECTIONS. AND FOR SANCTIONS

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

Since January, Mattel has been seeking the answer to a simple and critically important question:  who actually funded the ████████ purchase of MGA's debt to Wachovia?  At every turn, MGA, Larian and the Omni Parties have obstructed this discovery by forcing multiple motions, asserting frivolous objections, making misrepresentations to the Discovery Master[2] and the Court,[3] launching "unwarranted, unsubstantiated personal attacks against the Court-Appointed Forensic Auditor,"[4] and when all else fails, as it finally has for MGA and Omni, flouting Court Orders.

Only after repeated Orders by the Discovery Master did the Omni Parties eventually produce documents demonstrating that, contrary to their representations to the Court and the Discovery Master, Isaac Larian directly funded at least $60 million of the Wachovia debt acquisition.  But they have failed and refused, in the face of the Discovery Master's Order, to produce any financial records showing the sources of the remainder of ████████████████.  To date, none of the Omni Parties have produced so much as a single check, wire transfer record or any other underlying financial record reflecting the source ██████ ████████████████████.  Such documents must exist.  It is simply not reasonable or plausible to believe that tens of millions of dollars were legitimately invested without any financial records whatsoever.  ██████████ ████████████████████████████████████.

More specifically, Vision Capital, an entity known to be associated with Isaac Larian's brother-in-law Leon Neman, and Lexington Financial, an off-

---

[2] March 4, 2009 Hearing at 51:3-8.  Zeller Decl., Exh. 2.
[3] February 11, 2009 Hearing at 71:16 to 72:5.  Zeller Decl., Exh. 3.
[4] July 9, 2009 Order at 5.  Zeller Decl., Exh. 4.

EXHIBIT 39
PAGE 697

07975/3017972.2

MATTEL'S MOTION TO ENFORCE ORDER. STRIKE OBJECTIONS. AND FOR SANCTIONS

1    shore entity, filed financing statements indicating that Vision Capital received the
2    $10 million it allegedly provided to Omni 808 for the debt acquisition from
3    Lexington Financial. The Discovery Master ordered Vision Capital to produce all
4    documents relating to "▬▬▬▬▬▬▬▬" for Omni 808, MGA, and
5    any of their subsidiaries. After the Discovery Master's Order, Vision Capital turned
6    over a total of 149 pages. That production principally consists of Omni 808's
7    formal operating agreement, Omni 808-MGA promissory notes, certain internal
8    MGA financial statements and an MGA bank presentation. Absent from Vision
9    Capital's production, however, is a single document showing either the source of its
10    $10 million alleged contribution to the loan acquisition or even the purported
11    transfer of that money to Omni 808. Indeed, no loan agreement with Lexington or
12    any other funding source, or even a single document relating to Vision Capital's
13    supposed financing entity, Lexington, is contained in the production.
14       Likewise, despite the Discovery Master's Order compelling Omni 808
15    to produce "▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
16    ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬,"
17    Omni 808 has not produced any documents showing any actual funding to or from
18    Vision Capital. And Omni 808's production has the same glaring hole with respect
19    to every one of its other purported equity funding sources for the loan acquisition.
20    While Omni 808 produced some financial records reflecting ▬▬▬▬▬▬
21    ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬, neither Omni 808
22    nor any of the other Omni Parties has produced a single check, wire transfer record
23    or any other underlying financial record reflecting any actual transfer of funds to or
24    from any of the claimed funding sources for ▬▬▬▬▬▬▬▬▬▬▬
25    ▬▬▬▬▬▬. Thus, absent from the production are the financial records
26    showing the transfer of such funds to or from Neil Kadisha, the Moinian
27    Development Group, LLC, Gold Leaf Investments, LP, the David and Angella
28    Nazarian Family Trust and the Arsalan Gozini Charitable Lead Annuity Trust.

1    Finally, the Omni Parties, along with MGA and Larian, continue to
2   assert objections on the basis that Mattel's requests seek discovery about "foreign"
3   activities, non-parties and entities over which the Court may not have jurisdiction.
4   This position was rejected by Judge Larson's July 9, 2009 Order and is otherwise
5   legally unsupported.  The Discovery Master should strike objections based on this
6   now-rejected jurisdictional argument and order MGA, Larian and the Omni Parties
7   to produce any documents that were either previously compelled in this litigation or
8   that were agreed to be produced which they have not produced based on such
9   grounds.

10                          **Statement of Facts**

11    **Mattel's Subpoenas.**  In January 2009, Mattel served subpoenas on
12   Omni 808 Investors, LLC ("Omni 808"), OmniNet Capital, LLC ("OmniNet"), and
13   Vision Capital, LLC ("Vision Capital") (collectively, the "Omni Parties"),
14   requesting information related to their purported acquisition from Wachovia of
15   MGA's debt.[5]   The Omni Parties objected, refusing to provide any discovery
16   whatsoever.[6]  Mattel filed a motion to compel, which the Discovery Master granted
17   in part.[7]  Relying on the Omni Parties' representations that Larian had not funded
18   *any* of the debt acquisition, however, the Discovery Master initially denied the
19   majority of Mattel's requests.[8]

20    **Omni 808 Refuses to Comply with the Discovery Master's Order.**  The
21   Discovery Master initially ordered Omni 808 to produce documents responsive to
22
23   _____
24   [5]   Zeller Decl., Exh. 5 (attaching the subpoenas).
     [6]   Non-Party Vision Capital's Objections to Defendant Mattel's Subpoena for
25   the Production of Documents; Non-Party Omni 808 Investor's Objections to
     Defendant Mattel's Subpoena for the Production of Documents; Non-Party
26   OmniNet Capital, LLC's Objections to Defendant Mattel, Inc.'s Subpoena for the
     Production of Documents.  Zeller Decl., Exh. 6.
27   [7]   Phase 2 Discovery Master Order No. 3, dated March 10, 2009, at 28-29.
     Zeller Decl., Exh. 7.
28   [8]   Id. at 25.

EXHIBIT 39
PAGE 699

1   six of Mattel's requests (1 through 3, 13, 15, 17).[9]  Omni 808 was given 30 days to
2   produce.[10]  Omni 808 refused to comply with the Order, however.  On April 21,
3   2009, Mattel was forced to file an *ex parte* application with respect to Omni 808's
4   defiance of the Order.[11]  The Discovery Master again ordered Omni 808 "to produce
5   to Mattel all documents ordered to be produced pursuant to the March 10 Order no
6   later than 5:00 p.m. on April 28, 2009."[12]  On April 28, 2009, Omni 808 finally
7   produced some responsive documents, subject to, among many objections, privilege
8   objections for which Omni 808 did not produce a privilege log.[13]

9            Upon Reconsideration, the Discovery Master Compels Further
10  Production.  After Wachovia produced documents revealing that Larian had indeed
11  provided substantial funding of the debt acquisition, Mattel sought reconsideration
12  of the Discovery Master's Order No. 3.  The Discovery Master granted the motion
13  and compelled the Omni Parties to "produce all non-privileged documents
14  responsive to" additional requests to the extent they related to the Wachovia debt
15  acquisition.[14]  Specifically, ████████████████████████████████
16  ████████████████████████████████████████████████████████████
17  ████████████████████████████████████████████████████████████
18  ████████████████████████████████████████████████████████████

[9]   Id. at 29.
[10]  Id. at 30.
[11]  See Mattel, Inc.'s *Ex Parte* Application for an Order to Show Cause re: Omni
808's Failure to Comply with Court Order or, in the Alternative, for an Order
Shortening Time to Hear Motion for Such Relief, dated April 21, 2009, Zeller Decl.,
Exh. 9.
[12]  See Phase 2 Discovery Master's Order No. 21, dated April 23, 2009. Zeller
Decl., Exh. 10.
[13]  See Mattel's Motion to Compel Production of Documents for Which Any
Claims of Privilege Have Been Waived, filed June 29, 2009. Zeller Decl., Exh. 11.
[14]  Phase 2 Discovery Master's Order No. 27, dated May 6, 2009 ("Order No.
27"). Zeller Decl., Exh 8.

EXHIBIT __39__
PAGE __100__

1 ███████████████████████████████████████████████

2 ████████████████████

3       The Omni Parties Fail To Produce Source Financial Records.

4 Although the Requests the Discovery Master compelled clearly encompass such

5 material, Omni 808 has not produced documents relating to any actual fund transfers

6 from or to Omni 808's purported investors, including ████████████████████

7 ████████████████████████████████████████████████

8 ████████████████████████████████████████████████

9 ████████████████████████████████████████████████

10 ████████████████████████████████████████████████

11 ████████[16]

12       Vision Capital likewise has failed to produce financial records showing

13 the actual source or transfer of the funds it allegedly contributed to the acquisition of

14 the Wachovia loan.   On June 22, 2009, Vision Capital produced 149 pages,

15 consisting largely of already-produced Omni 808 corporate documents and Omni

16 808 promissory notes.[17] ████████████████████████████, Vision

17 Capital has not produced a single document showing the source or the transfer of the

18 $10 million allegedly provided by Vision Capital to Omni 808 to fund the

19 acquisition of the Wachovia debt.[18]   Vision Capital has not produced any loan

20 agreements, contracts or documentation between Vision Capital and Lexington or

21 any other funding source for the money and has not produced any checks, wire

22 transfers or any other information relating to the funding provided to Vision Capital

23 or to Vision Capital's supposed funding of Omni 808.[19]

24

25 _____

26 [15] Id. at 39-40.
   [16] Zeller Decl., ¶ 4.

27 [17] Zeller Decl., ¶ 3.
   [18] Id.

28 [19] Id.

07975/3017972.2

EXHIBIT 39
PAGE 701

MATTEL'S MOTION TO ENFORCE ORDER, STRIKE OBJECTIONS, AND FOR SANCTIONS

1          Finally, for its part, OmniNet has produced no documents whatsoever,

2   claiming that it has no responsive documents to produce beyond those produced by

3   Omni 808.[20]

4          Mattel met and conferred with the Omni Parties on July 13, 2009 in an

5   effort to obtain the missing financial records.[21]  To date, the Omni Parties have

6   neither produced any further documents nor provided a date certain by which they

7   would be produced.[22]

8          Judge Larson's July 9, 2009 Order.  Recognizing that Mattel's Third

9   Amended Answer and Counterclaims ("TAAC") placed the financial transactions

10   among MGA, Larian, and the Omni Parties squarely at issue in Phase 2, Judge

11   Larson recently ordered reconsideration of additional portions of Discovery Master

12   Order No. 27.[23]  In addition, Judge Larson rejected the argument that discovery of

13   documents related to Lexington Financial was barred by Lexington's thus-far

14   successful attempts to avoid jurisdiction.   Specifically, Judge Larson held that

15   "materials that are in the possession of a subpoena recipient, but that are related to a

16   non-party over whom the court has not been shown to have jurisdiction" are subject

17   to discovery.[24]

18          Mattel accordingly met and conferred with the MGA Parties and the

19   Omni Parties to ascertain whether they were withholding discovery based on such

20   now-rejected grounds. The MGA Parties represented that they were not withholding

21   documents based on such grounds, but nevertheless have not withdrawn their

22   written objections to producing documents relating to "foreign" activities or to non-

23

24

---

25   [20]  See Letter from Peter N. Villar to John Quinn, dated June 22, 2009. Zeller

26  Decl., Exh. 1.
    [21]  Zeller Decl., Exhs. 19, 20, 22.

27   [22]  Zeller Decl., Exhs. 19, 20, 22, 24.
    [23]  July 9, 2009 Order, at 3-5. Zeller Decl., Exh. 4.

28   [24]  Id. at 5.

EXHIBIT __37__

PAGE __702__

1   parties.[25]  The Omni Parties have not responded to Mattel's requests and thus have
2   not confirmed that they are no longer withholding documents based upon the
3   jurisdictional argument rejected by Judge Larson.[26]

4                                    **Argument**

5   **I.   THE OMNI PARTIES HAVE FAILED TO COMPLY WITH**
6   **      DISCOVERY MASTER ORDER NO. 27**

7   **      A.   The Discovery Master Should Enforce His Order Against Omni**
8   **           808 And OmniNet**

9              In Order No. 27, the Discovery Master required Omni 808 to produce
10  "all documents referring or relating to all contributions, loans, and any sources of
11  funding for Omni 808 Investors, LLC during the last twelve months, including but
12  not limited to agreements and/or contracts supporting these transactions."[27]
13  Similarly, the Discovery Master ordered Omni 808 to respond to Request No. 14,
14  which seeks "all documents showing detail of all loan facilities with an indication of
15  creditor and relevant terms" as related to the debt acquisition.[28]  Indeed, even *before*
16  the filing of Mattel's Third Amended Answer and Counterclaims, which have
17  placed this information even more directly at issue, ████████████████████████
18  ████████████████████████████████████████████████████████████████
19  ████████████████████████████████████████████████████████████████
20  ████████████████████████████████████████████████████████████████
21  ████████████████████████████████████████████████████████"[29]

22
23
_____

24  [25]   July 17, 2009 Letter from Peter N. Villar to Michael T. Zeller (Zeller Decl.,
25  Exh. 13); July 23, 2009 Letter from William Molinski to Michael Zeller (Zeller
     Decl., Exh. 12).
    [26]   Zeller Decl., Exhs. 13, 18-20, 22. 24.
26  [27]   Subpoena to Omni 808, dated Jan. 9, 2009, at Request No. 13.  Zeller Decl.,
     Exh. 5.
27  [28]   Id. at Request No. 14.
28  [29]   Order No. 27 at 13. Zeller Decl., Exh. 8.

07975/3017972.2

EXHIBIT 39
PAGE 703

-7-

1    Despite this clear Order compelling production within 15 days, Omni

2  808 still refuses to produce responsive documents showing where the funds actually

3  came from and that it undoubtedly possesses, such as wire transfers, checks, and

4  agreements or contracts with its purported investors.[30]   Omni 808's refusal to

5  provide complete responses to these requests, as it was ordered to do over two

6  months ago, is inexcusable.   The Discovery Master should order Omni 808 to

7  comply immediately.

8    For its part, OmniNet has produced no documents at all. ████████

9  ████████████████████████████████████████████████████████

10 ████████████████████████████████████████████████████████

11 ████████████████[31]   Although OmniNet initially claimed it has no

12 documents other than those already produced by Omni 808, the Omni 808

13 production on which it relies is plainly deficient for the reasons discussed above.

14 Furthermore, counsel for OmniNet recently suggested that additional responsive

15 documents may be "in our clients' possession, custody or control."[32]   To date,

16 however, no such additional documents have been produced.   Nor have any of the

17 Omni Parties provided any date certain by which they will be produced and bring

18 themselves into compliance with the Discovery Master's Order. ████████

19 ████████████████████████████████████████████████████████

20 ████████████████████████████████████████████████████████

21 ████████████████████████████████████████████████████████.

22

23

24
_____
25    [30]   See July 17, 2009 Letter from Peter N. Villar to Michael T. Zeller.  Zeller

26 Decl., Exh. 13.
     [31]   Order No. 27 at 39 (Zeller Decl., Exh. 8); Subpoena to OmniNet, dated

27 January 9, 2009, Request No. 11 (Zeller Decl., Exh. 5).
     [32]   July 17, 2009 Letter from Peter N. Villar to Michael T. Zeller.  Zeller Decl.,

28 Exh. 13.

EXHIBIT 39
PAGE 704

1      **B.**     **The Discovery Master Should Enforce The Order and Compel**

2               **Vision Capital to Fully Respond to Request Nos. 13, 14, and 16**

3  ████████████████████████████████████████████████

4  ████████████████████████████████████████████████

5  ████████████████████████████████████████████████

6  ████████████████████████[33] As shown above, Vision Capital has produced

7  no financial records whatsoever relating to funds transferred to or from it in

8  connection with the debt acquisition.  It takes the position that it need only provide

9  *some*, rather than all, responsive documents and that its production of a self-serving

10  Omni 808 operations agreement *reciting* the transfer of funds suffices.[34] But the

11  Discovery Master's Order was clear – Vision Capital cannot cherry pick which

12  responsive documents it will produce; it must produce all responsive documents,

13  including the underlying financial documents that show the *actual* sources and

14  transfers of funds.

15  ████████████████████████████████████████████████

16  ██████████████████████████████

17          All documents showing detail of all loan facilities with an

18          indication of creditor and relevant terms referring or relating to

19          MGA Entertainement, Inc., OmniNet Capital, LLC, Omni 808

20          Investors, LLC, *Lexington Financial, LLC*, or any subsidiary or

21          affiliate of the foregoing, or to Isaac Larian or his family

22          members.[35]

23

24

25      [33]  Subpoena to Vision Capital, dated Jan. 12, 2009, Requests 13 and 14.  Zeller

26  Decl., Exh. 5.
      [34]  Letter from Peter Villar to Michael Zeller, dated July 17, 2009.  Zeller Decl.,

27  Exh. 13.
      [35]  Subpoena to Vision Capital, dated Jan. 12, 2009, at Request No. 16 (emphasis

28  added).  Zeller Decl., Exh. 5.

EXHIBIT ___39___

PAGE ___705___

1    Despite this plain language, Vision Capital has not produced *any*
2    documents related to Lexington. Not a single loan agreement – or even a letter or
3    email – relating to Lexington's purported funding of Vision Capital for its
4    contribution for the loan acquisition. Counsel for Vision Capital claims it has not
5    produced Lexington-related information in part because Lexington itself "did not
6    provide any funds to Omni or Wachovia."[36] No one has ever suggested that they
7    did: Vision Capital's and Lexington's filings show that Lexington provided funds to
8    Vision Capital, and Mattel's Request – which the Discovery Master compelled –
9    plainly calls for production of documents related to that transaction. Vision Capital
10   has defied its Court-ordered obligation to produce these documents, and the
11   Discovery Master should put an end to this pattern of obstruction.

12   **II.    THE DISCOVERY MASTER SHOULD RULE THAT NEITHER THE**
13   **MGA PARTIES NOR THE OMNI PARTIES MAY WITHHOLD**
14   **DOCUMENTS BASED ON JURISDICTIONAL GROUNDS**

15   In its July 9, 2009 Order, the Court remanded to the Discovery Master
16   issues related to Bingham McCutchen's refusal to produce documents related to
17   Lexington, and stated that discovery related to Lexington could proceed regardless
18   of whether the Court asserted jurisdiction over Lexington.[37] MGA and Larian have
19   asserted this same objection to numerous other discovery requests in this case.[38]

20   _____

21   [36]   Letter from Peter Villar to Michael Zeller, dated July 17, 2009. Zeller Decl.,
22   Exh. 13.
     [37]   July 9, 2009 Order at 5. Zeller Decl., Exh. 4.
     [38]   These include, for example, General Objection Nos. 14 and 15 of Larian's
23   Response to Mattel, Inc.'s Third Set of Requests for Documents and Things to Isaac
     Larian, dated February 21, 2008 (Zeller Decl., Exh. 14); General Objection Nos. 11
24   and 12 of Larian's Response to Mattel Inc.'s Second Set of Requests for Documents
     and Things to Isaac Larian, dated January 11, 2008 (Zeller Decl., Exh. 15); General
25   Objection Nos. 14 and 15 of MGA HK's Response to Mattel, Inc.'s Third Set of
     Requests for Documents and Things to MGA Entertainment (HK) Limited, dated
26   February 21, 2008 (Zeller Decl., Exh. 16); and General Objection Nos. 14 and 15 of
     MGA's Response to Mattel, Inc.'s Seventh Set of Requests for Documents and
27   Things to MGA Entertainment, Inc., dated February 21, 2008 (Zeller Decl., Exh.
     17).
28

EXHIBIT __39__
PAGE ___706___

1 | Despite Mattel's requests, they have not withdraw those objections despite Judge
2 | Larson's ruling. These objections should be overruled and stricken from MGA and
3 | Larian's prior responses.

4 |       As shown above, Mattel also requested that the Omni Parties confirm
5 | that they have not withheld any documents based on the now-rejected jurisdictional
6 | ground. They have not done so. Accordingly, the Discovery Master should order
7 | the Omni Parties, as well as the MGA Parties, to produce any documents that were
8 | previously compelled or agreed to be produced which any of them are withholding
9 | on alleged jurisdictional grounds.

10 | **III.   THE DISCOVERY MASTER SHOULD SANCTION THE OMNI**
11 |       **PARTIES**

12 |       Rule 37(a)(4) of the Federal Rules of Civil Procedure provides that a
13 | party forced to bring a motion to compel is entitled to the "reasonable expenses
14 | incurred in making the motion, including attorney's fees, unless the court finds that
15 | the motion was filed without the movant's first making a good faith effort to obtain
16 | the disclosure or discovery without court action, or that the opposing party's
17 | nondisclosure, response or objection was substantially justified, or that other
18 | circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(4).
19 | Likewise, fees may be awarded for a party's violation of a Court Order. Fed. R.
20 | Civ. P. 37(b)(2)(C). The burden of establishing substantial justification is on the
21 | party being sanctioned. Hyde & Drath v. Baker, 24 F.3d 1162, 1171 (9th Cir. 1994).
22 | Independently, sanctions may be imposed under 28 U.S.C. § 1927, which provides
23 | that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably
24 | and vexatiously may be required by the court to satisfy personally the excess costs,
25 | expenses, and attorneys' fees reasonably incurred because of such conduct."
26 | Sanctions under this section are appropriate "for conduct that, viewed objectively,
27 | manifests either intentional or reckless disregard of the attorney's duties to the
28 |

EXHIBIT __37__
PAGE __707__

07975/3017972.2

-11-

1   court."   RTC v. Dabney, 73 F.3d 262, 265 (10th Cir. 1995) (citing Braley v.

2   Campbell, 832 F.2d 1504, 1512 (10th Cir. 1987)).

3           Here, the Discovery Master should impose sanctions on the Omni

4   Parties for their refusal to comply with numerous aspects of the Discovery Master's

5   Order.  Indeed, this is the second motion that Mattel has had to bring just to *enforce*

6   the Discovery Master's prior Order compelling Omni 808 to produce the relevant

7   financial records.  There is no justification for the Omni Parties' continued

8   stonewalling.  Mattel therefore requests that the Omni Parties be ordered to pay

9   $3000 as partial reimbursement for the fees and costs that Mattel has incurred in

10  bringing this motion.

## Conclusion

12          For the foregoing reasons, Mattel respectfully requests that the

13  Discovery Master enforce his prior Order No. 27 against the Omni Parties, compel

14  them to make full and complete production and sanction them for their willful

15  noncompliance in the amount of $3000.  In addition, Mattel respectfully requests

16  that the Discovery Master strike MGA and Larian's jurisdictional objections, and

17  compel MGA, Larian, and the Omni Parties to produce any and all documents

18  withheld on the basis of the jurisdictional arguments rejected in the Court's July 9,

19  2009 Order.

20  DATED: July 24, 2009          QUINN EMANUEL URQUHART OLIVER &
21                                HEDGES, LLP

23                                By  /s/ Michael T. Zeller
24                                    Michael T. Zeller
                                      Attorneys for Mattel, Inc.

27                                EXHIBIT 37
28                                PAGE    708

07975/3017972.2

-12-

MATTEL'S MOTION TO ENFORCE ORDER, STRIKE OBJECTIONS, AND FOR SANCTIONS

# EXHIBIT 40

1   Hon. Edward A. Infante (Ret.)
    JAMS
2   Two Embarcadero Center
    Suite 1500
3   San Francisco, California 94111
    Telephone:    (415) 774-2611
4   Facsimile:    (415) 982-5287

5

6

7

8                  UNITED STATES DISTRICT COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10                      EASTERN DIVISION

11

12  CARTER BRYANT, an individual,          CASE NO. CV 04-09049 SGL (RNBx)
                                           JAMS Reference No. 1100049530
13              Plaintiff,

14       v.                                Consolidated with
                                           Case No. CV 04-09059
15  MATTEL, INC., a Delaware corporation,  Case No. CV 05-2727

16              Defendant.                 ORDER GRANTING IN PART AND
                                           DENYING IN PART MATTEL'S
17                                         MOTION TO COMPEL RESPONSES
                                           TO INTERROGATORY NOS. 27-44
18                                         AND 46-50 BY THE MGA PARTIES

19
    CONSOLIDATED WITH
20  MATTEL, INC. v. BRYANT and
    MGA ENTERTAINMENT, INC. v. MATTEL,
21  INC.

22                      I. INTRODUCTION

23       On December 20, 2007, Mattel, Inc. ("Mattel") submitted a Motion to Compel Responses

24  to Interrogatory Nos. 27-44 and 46-50 by the MGA Parties.  MGA Entertainment, Inc., MGA

25  Entertainment (HK) Limited, MGAE De Mexico, S.R.L. De C.V., and Isaac Larian (collectively

26  referred to as "MGA parties") submitted an opposition on December 31, 2007.  Mattel submitted

27  a reply on January 7, 2008.  On February 8, 2008, the MGA parties submitted their second

28
    Bryant v. Mattel, Inc.,                                            1
    CV-04-09049 SGL (RNBx)

2·15·08

EXHIBIT   40
PAGE   707

1  supplemental responses and third supplemental responses to the interrogatories at issue.  The
2  matter was heard on February 11, 2008.

3  <center>II. BACKGROUND</center>

4      Mattel served its Revised Third Set of Interrogatories on the MGA parties on September
5  21, 2007, asking each of them the same fifteen questions (Nos. 27-41).  Mattel served its Fourth
6  Set of Interrogatories on the MGA parties on October 12, 2007, propounding four additional
7  interrogatories (Nos. 42-45).  Mattel served an Amended Fourth Set on October 23, 2007,
8  removing No. 45, but retaining Nos. 42-44.  Mattel served its Fifth Set of Interrogatories on
9  October 19, 2007, which consisted of two additional questions (Nos. 46-47).  On October 23,
10  2007, Mattel served its Sixth Set of Interrogatories, which consisted of Interrogatory No. 45 to
11  replace the previously withdrawn interrogatory.  On October 25, 2007, Mattel served its Seventh
12  Set of Interrogatories, which consisted of Nos. 48-50.

13      In November of 2007, the MGA parties served responses and objections to Mattel's
14  interrogatories, and in some instances supplemental responses.  For the most part, the answers of
15  each of the MGA parties are substantially similar.  However, in several instances where MGA
16  Entertainment, Inc. provides a response, either MGA Entertainment (HK), MGAE de Mexico
17  S.R.L. de C.V. and/or Larian do not, asserting that the interrogatory "appears directed at another
18  party."

19      The parties met and conferred on December 10 and 12, 2007 regarding the supplemental
20  responses.  The MGA parties offered to provide supplemental responses by January 7, 2008.
21  Mattel contends, however, that the scope of the MGA parties' proposed supplemental responses
22  was inadequate.  Therefore, Mattel filed the instant motion on December 20, 2007.[1]

23      Mattel contends that the interrogatories at issue seek information relevant to central issues
24  in the case, such as:  MGA's contentions regarding which Bratz inventions were created before,

25

26  _____

[1] One of the issues raised in the motions papers --whether the interrogatories exceed the 50 interrogatory
27  per side limit -- has been rendered moot by Judge Larson's Order Granting in Part and Denying in Part Mattel's
Motion for Leave to Take Additional Discovery, dated January 7, 2008.

28
Bryant v. Mattel, Inc.,                                                                                    2
CV-04-09049 SGL (RNBx)

EXHIBIT  40
PAGE  710

1    during and after Carter Bryant's ("Bryant") employment with Mattel; the identity of electronic

2    storage devices MGA used prior to 2002 for digital information related to Bratz; the identity of

3    the sources of information from which MGA has collected documents in this litigation which

4    relate to Bratz and the time period prior to February 28, 2001; the facts allegedly supporting

5    MGA's contention that the Bratz dolls are not based on designs Bryant created while employed

6    by Mattel; MGA's contentions regarding Mattel's claims against MGA, Bryant and others,

7    including how Bryant's Inventions Agreement with Mattel and his assignment of rights to Bratz

8    inventions to MGA and services with or for MGA while employed by Mattel affect who owns the

9    rights to Bratz inventions, and the alleged basis for MGA's claims that it purportedly acted with

10   innocent intent; the identity of MGA's bank or financial accounts; the identity of former Mattel

11   employees that have been employed by MGA; non-privileged facts concerning the dispute

12   leading to the withdrawal of MGA's prior counsel that relate to MGA's handling of discovery in

13   this case; the facts supporting MGA's claims against Mattel, including MGA's contentions that

14   Mattel has copied, infringed or diluted MGA's trade dress; and the relevant dates regarding the

15   products MGA asserts MGA has copied or infringed.  Mattel's Motion at pp. 2-3.

16       Mattel contends that although it has received responses to all of the interrogatories except

17   Nos. 39, 46 and 47, all of the responses are deficient.  As an initial matter, Mattel contends that

18   the MGA parties' "boilerplate" objections -- that the interrogatories are vague and ambiguous,

19   overbroad, unduly burdensome and oppressive, seek information not in the possession, custody or

20   control of MGA, seek information protected by the attorney-client privilege, work product or joint

21   defense privileges, and call for a legal conclusion -- are without merit.  Mattel contends that the

22   MGA parties fail to specify how the questions are overbroad, unduly burdensome or oppressive.

23   Mattel also contends that its interrogatories do not require the disclosure of privileged information

24   or work product, but rather require the MGA parties to state their contentions about facts or the

25   application of law to facts.

26       Mattel further contends that some of the MGA parties' responses are deficient in that they

27   merely lay out the "basic facts" (instead of "all facts") on which they intend to rely, without any

28

Bryant v. Mattel, Inc.,                                                                    3
CV-04-09049 SGL (RNBx)

EXHIBIT  40
PAGE  711

1    details. Mattel contends that its contention interrogatories, including the purportedly "negative"
2    interrogatories asking for every fact which supports the denial of a statement or allegation, are
3    commonly used and well accepted to elucidate facts regarding a party's contentions, absent a
4    showing of undue burden. Indeed, Mattel points to decisions by the district judge which it
5    contends supports its use of the contention interrogatories at issue. Mattel also points out that it
6    provided the MGA parties with the details supporting its contentions in a one hundred-ten page
7    supplemental interrogatory response, and contends that the MGA parties ought to provide
8    comparable details to Mattel.

9         Mattel also contends that the MGA parties have unilaterally limited many of their
10   responses by disregarding Mattel's definitions of terms and phrases used in the interrogatories.
11   Further, Mattel contends that the MGA parties have failed to identify with specificity documents
12   they intend to rely upon, as requested by some of the interrogatories.

13        Mattel acknowledges that fully responding to the interrogatories will require some effort.
14   However, Mattel contends that the interrogatories are not unduly burdensome in this high stakes
15   litigation. Mattel contends that its need to discover MGA's key contentions outweighs any effort
16   the MGA parties will be required to undertake to disclose the requested information.
17   Accordingly, Mattel seeks an order overruling all of the MGA parties' objections and compelling
18   the MGA parties to provide complete responses to Interrogatory Nos. 27-44 and 46-50.

19        The MGA parties contend that their current responses comply with Rule 33 of the Federal
20   Rules of Civil Procedure and that Mattel is not entitled to any additional information for a number
21   of reasons. The MGA parties raise four main arguments in opposition to Mattel's motion. First,
22   the MGA parties contend that Mattel is not entitled to information about MGA's substitution of
23   counsel because such information is protected by the attorney-client privilege or the work product
24   doctrine. Second, the MGA parties contend that Mattel is not entitled to the sweeping financial
25   data that has been requested. Third, the MGA parties contend that Mattel's contention
26   interrogatories contain misleading and unfair definitions and are unduly burdensome in that they
27   require a recitation of all facts supporting the MGA parties' contentions. Fourth, the MGA parties

28
                                                                                              4

EXHIBIT __40
PAGE ___712

1 | contend that Rule 33 does not require a response to a contention interrogatory to set forth more
2 | than the principal factual and legal bases for the response.

3 |                                  III. STANDARDS

4 |       Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain
5 | discovery regarding any matter, not privileged, that is relevant to the claim or defense of any
6 | party." Fed.R.Civ.P. 26(b)(1).  Fishing expeditions to discover new claims, however, are not
7 | permitted.  See Fed.R.Civ.P. 26(b)(1); Rivera v. NIBCO, Inc., 364 F.3d 1057, 1072 (9th Cir.
8 | 2004) ("District courts need not condone the use of discovery to engage in 'fishing
9 | expeditions.'"); Bernstein v. Travelers Ins. Co., 447 F.Supp.2d 1100, 1102 (N.D. Cal. 2006)
10 | (citing Rule 26(b), Advisory Committee's Note to Amendments Effective December 1, 2000)
11 | (Congress' changes in the language of Rule 26(c), substituting the words "claim or defense" for
12 | the phrase "subject matter involved in the pending action," were intended to prevent discovery
13 | that swept far beyond the claims and defenses of the parties and that seemed designed not to fairly
14 | litigate the issues presented by the pleadings but to develop new claims or defenses.).

15 |       Further, pursuant to Rule 26(b)(2), Fed.R.Civ.P., the court shall limit the frequency or
16 | extent of use of the discovery methods if the court determines that (i) the discovery sought is
17 | unreasonably cumulative or duplicative, or is obtainable from some other source that is more
18 | convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample
19 | opportunity by discovery in the action to obtain the information sought; or (iii) the burden or
20 | expense of the proposed discovery outweighs its likely benefit, taking into account the needs of
21 | the case, the amount in controversy, the parties' resources, the importance of the issues at stake in
22 | the litigation, and the importance of the proposed discovery in resolving the issues. Fed.R.Civ.P.
23 | 26(b)(2)(C).

24 |       Rule 33 of the Federal Rules of Civil Procedure allows a party to propound
25 | interrogatories, for which the responding party is required to furnish such information as is
26 | available to the party after conducting a reasonable inquiry. "Each interrogatory must, to the
27 | extent it is not objected to, be answered separately and fully in writing under oath." Fed.R.Civ.P.
28 |

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                                    5

EXHIBIT __40__
PAGE __713__

1   33(b)(3). "The grounds for objecting to an interrogatory must be stated with specificity."

2   Fed.R.Civ.P. 33(b)(4).

3   <div align="center">IV. DISCUSSION</div>

4   A. Interrogatories About the Identity of Bratz Inventions (Nos. 27, 28 and 29)

5        Interrogatory Nos. 27-29 request information relating to Bratz inventions created during

6   three different time periods, namely before, during and after Bryant's employment with Mattel:

7   **Interrogatory No. 27:** IDENTIFY each and every BRATZ INVENTION YOU

8   contend was CREATED, in whole or in part, prior to January 4, 1999, and for
     each BRATZ INVENTION so identified state all FACTS that support YOUR

9   contention that such BRATZ INVENTION (or aspects or portions thereof) was
     CREATED prior to January 4, 1999, and IDENTIFY all PERSONS with

10   knowledge of such facts and all DOCUMENTS which REFER OR RELATE TO
     such facts.

11

12   **Interrogatory No. 28:** IDENTIFY each and every BRATZ INVENTION YOU
     contend was CREATED, in whole or in part, after October 19, 2000 and before

13   June 1, 2001, and for each BRATZ INVENTION so identified state all FACTS
     that support YOUR contention that such BRATZ INVENTION (or aspects or

14   portions thereof) was CREATED after October 19, 2000 and before June 1, 2001,
     and IDENTIFY all PERSONS with knowledge of such facts and all

15   DOCUMENTS which REFER OR RELATE TO such facts.

16

17   **Interrogatory No. 29:** IDENTIFY each and every BRATZ INVENTION that
     was CREATED, in whole or in part, after January 3, 1999 and before October 21,

18   2000, and for each BRATZ INVENTION so identified state all FACTS that
     REFER OR RELATE TO such timing of the creating of such BRATZ

19   INVENTION and IDENTIFY all PERSONS with knowledge of such facts and all
     DOCUMENTS which REFER OR RELATE TO such facts.

20

21   Mattel contends that these interrogatories seek information that is plainly relevant and

22   discoverable, and that the MGA parties do not contend otherwise. Mattel further contends that

23   the partial response given using the MGA parties' definition, not Mattel's definition, of BRATZ

24   INVENTION is inadequate. Mattel also contends that the MGA parties have failed to carry their

25   burden of showing that the interrogatories are burdensome or oppressive, particularly given the

26   importance of the information sought. Mattel emphasizes that the information sought will prove

27   liability as to a number of its claims. Moreover, Mattel contends that knowing which inventions

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

6

EXHIBIT __40__
PAGE __714__

1  MGA claims were created before and just after Bryant's second period of employment at Mattel

2  is essential so that Mattel can avoid unfair surprise at trial and impeach the defendants'

3  chronology of Bratz design and development.

4      The MGA parties contend that Mattel is using misleading and unfair definitions to create

5  jury confusion. In particular, the MGA parties object to Mattel's definition of "BRATZ

6  INVENTION," which they contend contains separate component parts ("representation, idea,

7  concept, work, process, procedure, plan, improvement, DESIGN or other development"), and

8  Mattel's definition of "DESIGN," which they contend adds at least another 21 elements ("all

9  works, designs, artwork, sketches, drawings, illustrations, representations, depictions, blueprints,

10  schematics, diagrams, images, sculptures, prototypes, models, samples, rotocasts, reductions to

11  practice, developments, inventions and/or improvements"). The MGA parties contend that

12  including all of these concepts in the definition "improperly conflates distinct issues of patent law,

13  copyright protection, trade secret law and the common law protecting original ideas, many of

14  which have no place in the ordinary usage of the term 'invention.'" MGA Parties' Opposition at

15  2:11-13. The MGA parties emphasize that these distinctions are important because Mattel lays

16  claim to Bratz under a January 4, 1999 "Employee Confidential Information and Inventions

17  Agreement." Further, the MGA parties accuse Mattel of using the contention interrogatories to

18  elicit a misleading "sound bite" it can read to the jury to argue that the MGA parties concede that

19  Bryant "invented" Bratz while employed by Mattel. The MGA parties contend that they have

20  provided adequate responses to the interrogatories using the common and ordinary meaning of the

21  term "invention," and should not be required to provide anything further.

22      Next, the MGA parties contend that they have given Mattel the principal factual and legal

23  bases for their contentions, and Rule 33 does not require them to provide anything further. The

24  MGA parties contend that requiring a narrative response setting forth all evidence in support of

25  their contentions would render the interrogatories unduly burdensome and "inherently improper."

26  See e.g. Clean Earth Remediation & Constr. Servs. v. Am. Int'l Group, 245 F.R.D. 137, 141 (S.D.

27  N.Y. 2007) ("[A] number of cases have held that interrogatories seeking identification of all facts

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                    7

EXHIBIT __40__
PAGE ___715___

1   supporting a particular allegation are *inherently improper*.").

2        Mattel's motion to compel further responses to Interrogatory Nos. 27-29 is denied because

3   the interrogatories are overbroad and unduly burdensome.  The definition of "Bratz Invention" is

4   extremely broad, encompassing numerous intellectual property concepts.  Mattel has not shown

5   how each and every concept embedded in its multi-faceted definition of "Bratz Invention" is

6   relevant to interpreting the term "invention" for purposes of enforcing the "Employee

7   Confidential Information and Inventions Agreement," signed by Bryant.  The breadth and undue

8   burden of Interrogatory Nos. 27-29 are also compounded by the fact that Mattel is employing an

9   extremely broad definition of "Bratz Invention" in a contention interrogatory seeking all facts

10  supporting the MGA parties' contentions, the identities of all persons knowledgeable, and all

11  supporting documents.  Not all contention interrogatories requiring a recitation of all facts,

12  documents and witness are objectionable.  See e.g. Tatum v. Schwartz, 2007 WL 2220977 at *1

13  (E.D. Cal. Aug. 2, 2007) (noting that contention interrogatories can impose undue burdens, but

14  that "courts have otherwise approved of them when they are limited to discrete, narrow factual

15  events"); Roberts v. Heim, 130 F.R.D. 424, 427 (N.D. Cal. 1989) (recognizing a broad spectrum

16  of contention interrogatories, and noting that it is not possible to announce a hard and fast rule as

17  to the exact amount of detail a party has to supply in response to a contention interrogatory).  In

18  the instant case, however, Mattel's contention interrogatories would force the MGA parties to

19  review the nearly 4 million pages of documents produced in this action and more than 50 days of

20  deposition testimony in search of information relating to "any representation, idea, concept, work,

21  process, procedure, plan, improvement, design or other development" that refers or relates to

22  Bratz, including "all works, designs, artwork, sketches, drawings, illustrations, representations,

23  depictions, blueprints, schematics, diagrams, images, sculptures, prototypes, models, samples,

24  rotocasts, reductions to practice, developments, inventions and/or improvements" that refer or

25  relate to Bratz.  It is not the MGA parties' responsibility to re-write the interrogatories in a

26  manner that will yield Mattel the most amount of information to support Mattel's claims and

27  defenses.  On balance, the burden of responding further to Interrogatory Nos. 27-29, as written,

28
    Bryant v. Mattel, Inc.,                                                                          8
    CV-04-09049 SGL (RNBx)

EXHIBIT  4b
PAGE  716

1  outweighs the likely benefit of the interrogatories, taking into account the needs of the case, the

2  amount in controversy, the parties' resources, the importance of the issues at stake in the

3  litigation, and the importance of the proposed discovery in resolving the issues.

4      In any event, the MGA parties' responses are adequate under the circumstances. Faced

5  with overbroad and unduly burdensome interrogatories, the MGA parties provide facts supporting

6  the contentions identified in the interrogatories, identify persons with knowledge of those facts,

7  and identify the principal documents or categories of documents that support each contention.

8  See e.g. Moses v. Halstead, 236 F.R.D. 667, 674 (D. Kan. 2006). For example, in response to

9  Interrogatory No. 27, the MGA parties set forth their contention that the concept for a new line of

10  fashion dolls envisioned by Bryant in August and/or September of 1998 could not have been

11  patented as a utility patent because fashion dolls were in the public domain for the purposes of

12  utility patent protection. However, the MGA parties contend that Bryant's idea of a line of

13  fashion dolls he called Bratz was sufficiently novel and original to be protected under California

14  law as a confidential novel idea under Desny v. Wilder, 46 Cal.2d 715 (1956) and its progeny.

15      The MGA parties' supplemental responses to Interrogatory No. 27 also include the MGA

16  parties' contention that Bryant's pre-1999 drawings were never reduced to practice; that design

17  patents are not available for drawings or two-dimensional flat art of the sort that Bryant sketched

18  in 1998; that Bryant was not a sculptor and any effort to translate his pre-1999 two-dimensional

19  flat art into a three-dimensional form for use as a fashion doll sculpt would have produced shapes

20  that were different from the actual shape of the final three-dimensional Bratz sculpt used in

21  manufacturing the first generation of Bratz dolls released on the market by MGA in or about June

22  2001; that the final physical shape of the first generation of Bratz dolls released on the market by

23  MGA in or about June 2001 was conceived by Margaret Leahy; and that Bryant's drawings used

24  standard fashion model poses, and thus were not novel or original. Further, the MGA parties'

25  supplemental responses to Interrogatory No. 27 include the MGA parties' contention that the

26  drawings Bryant completed in August and September of 1998 contained original expression

27  covered by copyright, but that subsequent modifications and versions of the drawings made by

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

9

EXHIBIT ___40___
PAGE ___77___

1    Bryant in 1999 and 2000 did not contain original expression. The MGA parties also identify

2    numerous individuals having knowledge of the facts supporting their contentions, and identify

3    documents that are relevant to the MGA parties' contentions.

4    B. Interrogatory About the Identity of Former Mattel Employees Hired by MGA (No. 41)

5            Interrogatory No. 41 asks the MGA parties to "IDENTIFY" all former Mattel employees

6    "who are now or have been employed" by MGA since January 1, 1999. More specifically,

7    Interrogatory No. 41 asks the MGA parties to:

8            IDENTIFY all PERSONS who at any time have been employed by or under
             contract with MATTEL who are now or have been employed by or under contract
9            with YOU since January 1, 1999, and, for each such PERSON, state his or her
             name, date of hire or effective date of contract, the date on which YOU first had
10           contact with such PERSON regarding potential employment or contracting, the
             date(s) on which such PERSON was interviewed for possible employment or
11           contracting, each title (if any) such PERSON has held while employed by or
             under contract with YOU, and the date of termination (if applicable).
12
     In their supplemental response, the MGA parties assert numerous objections, but also provide a
13
     list of well over a hundred individuals with their position title and employment dates.
14
             Mattel contends that the MGA parties' response is incomplete because it does not contain
15
     the date of first contact regarding potential employment or contracting, as well as the interview
16
     date for potential employment or contracting.
17
             The MGA parties contend that during the meet and confer process, they agreed to
18
     investigate whether the additional requested information was reasonably available. The MGA
19
     parties represent that they are in the process of looking for the requested information, and that
20
     they will supplement their response if the information is reasonably available without undue
21
     burden.
22
             Mattel's motion to compel a further response to Interrogatory No. 41 is granted in part.
23
     The requested information is clearly relevant to Mattel's claims, and the MGA parties do not
24
     contend otherwise. In particular, the date of first contact, interview date, start date and end date
25
     for Bryant's employment are highly relevant, but are conspicuously absent from the MGA
26
     parties' response. The MGA parties shall provide the missing information for Bryant. In
27

28
     Bryant v. Mattel, Inc.,                                                          10
     CV-04-09049 SGL (RNBx)

EXHIBIT _40_
PAGE ___718__

1    addition, the MGA parties shall provide the interview dates for each of the individuals identified

2    in their supplemental responses.  The interview dates are potentially relevant to Mattel's claim

3    that the MGA parties induced former Mattel employees to abscond with Mattel's trade secrets.

4    However, the MGA parties are not required to provide the date of first contact for each individual

5    because the burden of producing such information outweighs its likely benefit, taking into

6    account the factors set forth in Rule 26(b)(2)(C), Fed.R.Civ.P.

7    C. Interrogatories re Allegedly Copied or Infringed Products (Nos. 43-44)

8          Interrogatory Nos. 43 and 44 request dates on which each "concept, design, product,

9    product packaging or other matter that YOU contend Mattel copied or infringed" was (1)

10   "conceived" and (2) "first fixed in any tangible medium of expression," and the identity of

11   persons with knowledge and documents that refer or relate to the foregoing.  In the responses, the

12   MGA parties state numerous objections, but also refer Mattel to MGA's response to Interrogatory

13   No. 3 of Mattel's First Set of Interrogatories re Claims of Unfair Competition.  The MGA parties

14   also respond that, in general, at MGA, product development is completed 7-8 months before the

15   first invoice date, although that time period could be reduced in certain situations to 5-6 months.

16         Mattel contends that the information it seeks is relevant to its defense against MGA's

17   claims that Mattel copied or infringed MGA's products.  One of Mattel's defenses is that "Mattel

18   was the one who came up with relevant matters first – before MGA – and that MGA was the one

19   who copied or stole from Mattel."  Mattel's Motion at p.23.  Mattel contends that the MGA

20   parties' responses to Interrogatory Nos. 43 and 44 are inadequate because the referenced

21   Interrogatory No. 3 requested different information, namely the dates on which the products were

22   first "disclosed to any PERSON not employed by MGA" and first "made available for sale."

23         In response to the instant motion to compel, the MGA parties represent that they are

24   assessing whether they can provide more specific information without undue hardship, and will

25   supplement their responses if such information is available.  MGA's Opposition at p.29.

26         Mattel's motion to compel further responses to Interrogatory Nos. 43 and 44 is granted.

27   The requested information is relevant to Mattel's defense against the MGA parties' claims that

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                                11

EXHIBIT __40__
PAGE __719__

their products have been copied or infringed by certain Mattel products. Although the MGA parties served supplemental responses after filing their opposition brief, the supplemental responses do not include the requested information. The MGA parties have failed to establish that the interrogatories are unduly burdensome.

D. Interrogatories About the Trade Dress MGA Claims Mattel Products Infringe (Nos. 48-50)

Interrogatory Nos. 48-50 are directed to the MGA parties' trade dress claims:

**Interrogatory No. 48:** Separately IDENTIFY each trade dress that YOU contend MATTEL has copied, infringed or diluted or that is otherwise the subject of YOUR claims, defenses or allegations in THIS ACTION.

**Interrogatory No. 49:** For each trade dress identified in response to Interrogatory No. 48, separately and fully IDENTIFY each and every MATTEL product, packaging or other matter that YOU contend copies, infringes or dilutes such trade dress, including without limitation by describing fully and separately, for each such MATTEL product, packaging or other matter, each and every element of the claimed trade dress that YOU contend MATTEL has copied, infringed or diluted.

**Interrogatory No. 50:** For each trade dress identified in response to Interrogatory No. 48, separately and completely IDENTIFY all facts that support YOUR contention that such trade dress is protectible, all DOCUMENTS that REFER OR RELATE to the foregoing and all PERSONS with knowledge of the foregoing.

Mattel contends that these interrogatories seek core contentions underlying the MGA parties' trade dress infringement claims and that the partial responses provided are inadequate because they set forth only the "basic facts" without identifying a single product that MGA alleges was infringed or any other details. Mattel also contends that the responses are improper insofar as the MGA parties state that their responses "may be incomplete" as the subject matter of this interrogatory will be the source of expert testimony and an expert may identify additional facts that support MGA's contentions. Mattel contends that such a limitation would allow MGA to sandbag Mattel by introducing new products into the litigation after fact discovery has closed.

As a preliminary matter, the MGA parties contend that Interrogatory Nos. 48-50 are directed to a Phase 2 issue, and therefore, they reserve their right to supplement the responses in Phase 2. Nevertheless, the MGA parties contend that their responses provide Mattel with the principal facts supporting their contentions in compliance with Rule 33.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

12

EXHIBIT ___40___
PAGE ____720___

1   Mattel's motion to compel further responses to Interrogatory Nos. 48-50 is denied. The

2   MGA parties are in substantial compliance with Rule 33, having identified numerous elements of

3   trade dress they contend Mattel has infringed. More specifically, the MGA parties' responses

4   identify Mattel's "My Scene" fashion dolls and pet dolls as the Mattel products that infringe their

5   trade dress. The MGA parties also set forth the principal facts supporting their contention that

6   their trade dress is protectible under the applicable trade dress legal principles, including that the

7   trade dress is aesthetic and non-functional, inherently distinctive, and has acquired secondary

8   meaning. That the interrogatory responses include a reservation of rights to supplement during

9   expert discovery does not render the responses inherently improper or inadequate. Mattel does

10   not contest that the identification of the elements and products subject to trade dress infringement

11   will be a subject of expert testimony.

12   E. Interrogatory About the Identity of MGA's Bank Accounts (No. 39)

13   Interrogatory No. 39 asks MGA to "IDENTIFY each and every bank or financial

14   institution account that REFERS OR RELATES TO YOU, including accounts in YOUR name or

15   for YOUR benefit, since January 1, 1999." The MGA parties objected to this interrogatory as

16   seeking information "not relevant to the claims or defenses of any party to the action and not

17   reasonably calculated to lead to the discovery of admissible evidence.

18   Mattel contends that the information sought is discoverable because it may lead to direct

19   evidence of liability regarding Mattel's allegations of commercial bribery against MGA and

20   Larian. More specifically, Mattel contends that the timing and amounts of payments made to

21   Bryant and to other then-Mattel employees from MGA's bank accounts would establish

22   commercial bribery and other tortious conduct. Mattel also contends that the timing of such

23   payments would also be indicative of the timing of Bryant's first involvement with MGA.

24   Further, Mattel contends that the requested information is relevant to establish net worth for

25   purposes of calculating punitive damages. Mattel also contends that the MGA parties' objection

26   based upon Rule 69(a), Fed.R.Civ.P., is without merit because the requested information is

27   independently relevant to many issues in the liability phase of trial, and is not just directed at

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

13

EXHIBIT __40__
PAGE ___721___

1 | seeking discovery in aid of a judgment or execution.

2 |     The MGA parties contend that Mattel is not entitled to the sweeping financial data sought

3 | in Interrogatory No. 39. The MGA parties are particularly concerned that Mattel will use the

4 | information it obtains pursuant to Interrogatory No. 39 to launch abusive third-party discovery for

5 | even more private financial information. Further, the MGA parties contend that Mattel has

6 | already received substantial financial information from MGA Entertainment, Inc. directly, and

7 | has not shown how that information is insufficient. More specifically, the MGA parties point out

8 | that Mattel already has audited and unaudited quarterly and annual profit and loss statements;

9 | audited and unaudited quarterly and annual statements; annual reports; various MGA financial

10 | reports; various financial documents relating to Veronica Marlow; documents showing royalty

11 | payments to Bryant; documents showing MGA's sales, returns and costs of good sold for each

12 | month, by SKU, since 2001; documents showing MGA's promotional advertising and media

13 | expenditures, including MGA's internal allocation of those expenditures by brand and/or product;

14 | documents showing MGA's amortization and depreciation of certain capital assets and

15 | expenditures; documents showing MGA's monthly general ledger entries aggregated by account,

16 | including income and expense accounts, reserves and liabilities; and documents sufficient to

17 | explain MGA's various accounts as presently and historically maintained in MGA's books and

18 | records, as well as various nomenclature assigned to items, products, brands, sub-brands, and

19 | profit centers. MGA's Opposition at pp. 10-11. Further, the MGA parties contend that MGA's

20 | witness, Lisa Tonnu, has testified regarding payments to Mr. Bryant.

21 |     Mattel's motion to compel a further response to Interrogatory No. 39 is denied on the

22 | grounds that the financial information sought is cumulative of other discovery already sought and

23 | obtained by Mattel, as outlined above by the MGA parties. Mattel has also sought and obtained

24 | documents sufficient to identify each of Mr. Larian's bank accounts or financial institutions and

25 | other banking relationships since January 1, 1999. See Order Granting in Part and Denying in

26 | Part Mattel's Motion to Compel Production of Documents by Isaac Larian; Denying Request for

27 | Sanctions (Document Request No. 207). Further, as Mattel acknowledges, Mattel has sought and

28 |

EXHIBIT   40
PAGE   722

1    obtained deposition testimony regarding payments to Mr. Larian, including the account to which

2    such payments were made. See Order Granting in Part and Denying in Part Mattel's Motion to

3    Compel MGA to Produce Witnesses Pursuant to Third Notice of Deposition Under Rule 30(b)(6).

4    In light of the financial information discovery Mattel has already obtained, Interrogatory No. 39 is

5    unjustified, taking into consideration all of the factors set forth in Rule 26(b)(2)(C), Fed.R.Civ.P.

6    F. Contention Interrogatories (Nos. 30-38 and 42)

7          Mattel served several contention interrogatories on several additional topics. The

8    remaining contention interrogatories at issue are set forth below.

9          **Interrogatory No. 30:** State all facts that support YOUR contention, if YOU so
contend, that, assuming BRYANT assigned rights in any BRATZ INVENTION
10   to MATTEL pursuant to the INVENTIONS AGREEMENT, MGA is entitled to
priority over and/or has superior rights to MATTEL as to such BRATZ
11   INVENTION, and IDENTIFY all PERSONS with knowledge of such facts and
all DOCUMENTS that REFER OR RELATE TO such facts.

12

13         **Interrogatory No. 31:** State all facts that support YOUR contention, if YOU so
contend, that the INVENTIONS AGREEMENT is not valid and enforceable, and
14   IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS
that REFER OR RELATE TO such facts.

15         **Interrogatory No. 32:** State all facts that support YOUR contention, if YOU so
contend, that MATTEL is not or would not be entitled to injunctive relief as
16   requested in its COMPLAINT and/or COUNTERCLAIMS if it is not ultimately
determined that MATTEL owns one or more BRATZ INVENTIONS, and
17   IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS
that REFER OR RELATE TO such facts.

18

19         **Interrogatory No. 33:** State all facts that support YOUR contention, if YOU so
contend, that MATTEL is not entitled to an award of punitive or exemplary
20   damages against YOU, and IDENTIFY all PERSONS with knowledge of such
facts and all DOCUMENTS that REFER OR RELATE TO such facts.

21         **Interrogatory No. 34:** State all facts that support YOUR contention, if YOU so
contend, that YOU did not intentionally interfere with the INVENTIONS
22   AGREEMENT when BRYANT purported to TRANSFER and MGA purported
to ACQUIRE rights to BRATZ, and IDENTIFY all PERSONS with knowledge
23   of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

24         **Interrogatory No. 35:** State all facts that support YOUR contention, if YOU so
contend, that YOU did not aid or abet any breach of fiduciary duty or duty of
25   loyalty owed by BRYANT to MATTEL when BRYANT performed work or
services with or for MGA while BRYANT was employed by MATTEL, and
26   IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS
that REFER OR RELATE TO such facts.

27

28         **Interrogatory No. 36:** State all facts that support YOUR contention, if YOU so

EXHIBIT   40
PAGE      123

1  contend, that YOU acted with an innocent state of mind or reasonably believed that MATTEL did not own any rights in any BRATZ INVENTION when Bryant
2  purported to TRANSFER and MGA purported to ACQUIRE rights to BRATZ, and IDENTIFY all PERSONS with knowledge of such facts and all
3  DOCUMENTS that REFER OR RELATE TO such facts.

4  **Interrogatory No. 37:** State all facts that support YOUR contention, if YOU so contend, that BRYANT did not breach the INVENTIONS AGREEMENT when
5  BRYANT purported to TRANSFER right to BRATZ to MGA, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER
6  OR RELATE TO such facts.

7  **Interrogatory No. 38:** State all facts that support YOUR contention, if YOU so contend, that BRYANT did not breach BRYANT's duty of loyalty or fiduciary
8  duties to MATTEL when BRYANT performed work or services with or for MGA while BRYANT was employed by MATTEL, and IDENTIFY all
9  PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

10
11  **Interrogatory No. 42:** State all facts that support YOUR contention, if YOU so contend, that any BRATZ DOLLS are not BASED ON BRATZ DESIGNS
12  created by BRYANT on or before October 19, 2000, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR
13  RELATE TO such facts.

14  Mattel contends that each of these interrogatories seeks facts relating to key issues in this case,

15  including MGA's contentions, if any, regarding the priority of Mattel's rights in Bratz vis-à-vis

16  MGA; how Bryant's Inventions Agreement with Mattel, Bryant's assignment of rights to Bratz

17  inventions to MGA, and Bryant's services with or for MGA while employed by Mattel affect who

18  owns the rights to Bratz inventions; Mattel's alleged entitlement to punitive damages and other

19  relief; MGA's purported innocent state of mind; MGA's alleged intentional interference with the

20  Inventions Agreement; MGA's alleged aiding and abetting of Bryant's breach of fiduciary duty

21  and duty of loyalty to Mattel; why the Bratz dolls purportedly are not based on designs Bryant

22  created during his Mattel employment; and why the trade dress MGA contends Mattel infringed is

23  protectible. Mattel contends that the MGA parties cannot show burden sufficient to outweigh

24  Mattel's need for the information sought.

25      In addition to the objections discussed in connection with Interrogatory Nos. 27-29, the

26  MGA parties contend that they have given sufficient responses to Interrogatory Nos. 30 and 42.

27
28
Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

16

EXHIBIT __40__
PAGE ___724___

1   As for Interrogatory Nos. 31-38, the MGA parties contend that the interrogatories improperly
2   assume that Mattel owns Bryant's original idea for Bratz and ask the MGA parties to explain why
3   they should not be punished for developing Bryant's ideas.  Nevertheless, the MGA parties
4   represent that they responded to the interrogatories in good faith by providing the principal facts
5   supporting their contentions, and therefore are in compliance with Rule 33.

6         Mattel's motion to compel a further response to Interrogatory No. 30 is denied.  Like
7   Interrogatory Nos. 27-29, the definition of "Bratz Invention" in No. 30, combined with the
8   request for all facts, the identity of all persons and all supporting documents, render the
9   interrogatory overbroad and unduly burdensome.  In any event, the MGA parties have provided a
10  reasonably sufficient response.  The MGA parties' supplemental response includes their
11  contention that the "Inventions Agreement" did not apply to design patent rights.  Further, the
12  MGA parties contend that (a) the pre-October 21, 2000 drawings of characters that Bryant named
13  Bratz were never reduced to practice; (b) under 35 U.S.C. §171, design patents are available for
14  three-dimensional objections, not drawings or two-dimensional flat art of the sort that Bryant
15  sketched in 1998; (c) Bryant was not a sculptor, and any direct translation of his pre-October 21,
16  2000 two-dimensional flat art into a three-dimensional form for use as a fashion doll sculpt would
17  have produced shapes that were different from the actual shape of the final three-dimensional
18  Bratz sculpt used in manufacturing the first generation of Bratz dolls released on the market by
19  MGA in or about June 2001; (d) the final physical shape of the first generation of Bratz dolls,
20  released on the market by MGA in or about June 2001 was "conceived of" and "reduced to
21  practice" by Margaret Leahy, working on behalf of MGA, after October 20, 2000 and before June
22  1, 2001, along with other MGA agents and employees; (e) Bryant's drawings used standard
23  fashion model poses, and thus were not novel or original; and (f) the "dummy" brought by Bryant
24  to his meeting with MGA on September 1, 2000, was merely an assemblage of random pre-
25  existing doll parts that was never intended to, and did not, provide an accurate representation of
26  what became the Bratz sculpt.  Based on the foregoing, the MGA parties contend that, assuming
27  arguendo that both Bryant assigned his 1998 drawings to Mattel and that such drawings were the
28

EXHIBIT __40__
PAGE ____125____

1  conception of what could have been developed into a tangible item that would have qualified for

2  protection under a design patent, such conception would not have covered the shape of the final

3  Bratz sculpt utilized in the first generation of Bratz dolls released to market in or about June 2001,

4  nor any subsequent three-dimensional Bratz shape.  The MGA parties' supplemental responses to

5  Interrogatory No. 30 also address copyright protection and trademark protection, and identify

6  persons with knowledge and documents relevant to the MGA parties' contentions.

7       Mattel's motion to compel further responses to Interrogatory Nos. 31-37 and 42 is denied.

8  The MGA parties are in substantial compliance with Rule 33, having set forth sufficient facts,

9  identified persons with knowledge, and identified documents to support their contentions.  To

10  require any further information would be unduly burdensome, taking into consideration all of the

11  factors set forth in Rule 26(b)(2)(C), Fed.R.Civ.P.

12       Mattel's motion to compel a further response to Interrogatory No. 38 is granted, however,

13  because the supplemental response does not identify supporting documents.

14  G. Interrogatories About MGA's Searches for Documents (40 and 47)

15       Mattel has propounded two interrogatories to the MGA parties about their searches for

16  documents and storage devices containing evidence of early work on Bratz:

17       **Interrogatory No. 40:**  IDENTIFY each and every STORAGE DEVICE that
18       YOU have used for any purpose which contains or contained DIGITAL
         INFORMATION that REFERS OR RELATES TO BRATZ and/or ANGEL prior
·19       to January 1, 2002.

20       **Interrogatory No. 47:**  IDENTIFY each and every SOURCE OF
         INFORMATION from which YOU have COLLECTED DOCUMENTS in THIS
21       ACTION that REFER OR RELATE TO BRATZ and that also REFER OR
         RELATE TO the time period prior to February 28, 2001 (regardless of when such
22       DOCUMENT was, in whole or part, created, drafted, generated, sent, received or
         transmitted).

23  In response to Interrogatory No. 40, the MGA parties described the computer systems that existed

24  worldwide at MGA prior to January 1, 2002.  The MGA parties did not provide any substantive

25  response to No. 47.

26       Mattel contends that the interrogatories are designed to test MGA's productions in this

27  litigation and obtain additional responsive documents and information.  Further, Mattel contends

28


EXHIBIT  40
PAGE  726

1   that there is legal precedent allowing access to a party's information storage systems where the

2   party is shown to have improperly withheld relevant documents or information.  Mattel contends

3   that Interrogatory No. 40 seeks legitimate discovery regarding the identification of MGA's

4   storage devices because Mattel may have a right to access such storage devices.  In particular,

5   Mattel contends that it is entitled to, but the MGA parties have failed to provide, an identification

6   of specific storage devices, the individuals who have used them, the persons who currently

7   possess them, and the dates on which they were destroyed or copied, if any.  Mattel contends that

8   the information requested in Interrogatory No. 40 is necessary to determine whether MGA has

9   withheld responsive documents and to enable Mattel to obtain such documents.

10          Similarly, Mattel contends that Interrogatory No. 47 seeks relevant information regarding

11   the sources of information – i.e. the media – from which the MGA parties have collected

12   documents relating to Bratz and the period prior to February 28, 2001.  Mattel contends that the

13   information it seeks will enable it to determine what sources the MGA parties have examined and

14   have not examined to produce documents in the case.

15          During the meet and confer process, the MGA parties proposed that the parties exchange

16   "source logs" regarding the entirety of their productions in lieu of MGA's responses to Nos. 40

17   and 47.  The "source logs" would provide each document's Bates number, the identity of the

18   individual associated with or who maintained the document and the location where the document

19   was found.  Mattel contends that the "source log" proposal is unnecessary because Mattel is only

20   seeking information about key early Bratz documents, not every document produced in the case.

21   Mattel also contends that the "source log" proposal is unacceptable because the "source log,"

22   would not reveal sources that contain early Bratz documents that MGA has not produced

23   documents from, or where MGA looked for documents, as well as where MGA failed to look.

24          The MGA parties contend that the interrogatories assume, without any factual support,

25   that the MGA parties are aware of the existence of Bratz documents on their computer systems

26   that relate to the time period prior to January 1, 2002, and have not produced those documents.

27   The MGA parties contend that Mattel's speculation is not a basis to compel further responses to

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                                          19

EXHIBIT __40__
PAGE __727__

1   Interrogatory Nos. 40 and 47.  The MGA parties emphasize that they have already produced more

2   than 3.7 million pages of documents, whereas Mattel has only produced a few hundred thousand

3   pages of documents.  Furthermore, the MGA parties contend that these interrogatories are

4   cumulative of deposition testimony Mattel has previously sought and obtained regarding the

5   collection of documents produced in this action.  The MGA parties also represent that they have

6   agreed to provide additional testimony on this topic.

7        Mattel's motion to compel further responses to Interrogatory Nos. 40 and 47 is granted.

8   The interrogatories seek relevant information about the identity of each storage device that

9   contains or contained information referring or relating to Bratz prior to January 1, 2002, and other

10   sources of information from which the MGA parties collected documents in this action that refer

11   or relate to Bratz and the time period prior to February 28, 2001.  The "source log" information is

12   not a reasonable substitute for the information requested in the interrogatories because it would

13   not necessarily identify all storage devices used by the MGA parties during the relevant period.

14   The interrogatories are narrowly tailored to a key subject, namely early Bratz documents and

15   other information.  The MGA parties have failed to establish that the interrogatories are unduly

16   burdensome.  Nor are the interrogatories cumulative of other discovery propounded by Mattel.

17   Interrogatory Nos. 40 and 47 have the potential of imparting more detailed information than a

18   witness might be able to recall in the course of a deposition.  Furthermore, the information sought

19   in Interrogatory Nos. 40 and 47 will enable Mattel to question MGA's witnesses more effectively.

20   H. Interrogatory Regarding MGA's Substitution of Counsel (No. 46)

21        Interrogatory No. 46 seeks facts regarding MGA's substitution of counsel as follows:

22   **Interrogatory No. 46:**  Without disclosing the content of communications which
are protected by the attorney-client privilege, state fully and in detail all facts

23   which REFER OR RELATE TO any dispute regarding THIS ACTION between,
on the one hand, MGA, LARIAN, BRYANT and/or MACHADO and, on the

24   other hand, O'MELVENY and/or CHRISTENSEN, including but not limited to
any and all disputes which were or have been asserted as a basis for, or which

25   underlie, contributed to or were a factor in, the withdrawal, termination and/or
substitution of O'MELVENY and/or CHRISTENSEN as counsel of record in this

26   ACTION, and IDENTIFY all PERSONS with knowledge of such facts and all
DOCUMENTS that REFER OR RELATE TO such facts.

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

20

1   Mattel contends that the interrogatory is limited to facts, and does not require the disclosure of

2   information protected by either the attorney-client privilege or the work product doctrine.

3   Further, Mattel contends that the requested facts are relevant and discoverable.  Mattel reasons

4   that O'Melveny cited to California Rule of Professional Conduct 3-700(c) as the basis for its

5   motion to withdraw, and that Rule 3-700(c) sets forth several grounds for withdrawal that could

6   be relevant to the case.  For example, Mattel contends that O'Melveny may have withdrawn

7   because MGA sought to provide false testimony, or was seeking "to pursue an illegal course of

8   conduct" or "insist[ed] that counsel pursue a course of conduct that is illegal or prohibited under

9   the State Bar Act."  Mattel's Motion at p. 38.

10          The MGA parties contend that Interrogatory No. 46 is predicated upon an imagined

11   "dispute" with former counsel, and moreover, that the information sought is protected by the

12   work product doctrine and/or attorney-client privilege.  The MGA parties reason that even if

13   Mattel is correct that there was some sort of dispute, either (1) the dispute does not relate to the

14   claims and defenses in this action, and therefore the requested information is irrelevant and

15   outside the proper scope of discovery, or (2) the dispute does relate to the claims or defenses in

16   this action, such that revelation of the substance of the dispute would necessarily reveal the

17   thought processes of trial counsel and the communication of those thought processes to the MGA

18   parties.

19          Mattel's motion to compel is denied as to Request No. 46.  The interrogatory is not

20   tethered to any particular claim or defense.  Nor is the interrogatory directed at uncovering the

21   factual events giving rise to any claim or defense.  Instead, the interrogatory assumes that there

22   was a "dispute" with former counsel involving false testimony, illegal conduct, or attorney

23   misconduct; that this "dispute" led to the withdrawal, termination and/or substitution of counsel;

24   and that this "dispute" potentially relates to a claim or defense in this suit.  There is no evidence,

25   however, to substantiate such a series of assumptions.  Although the publicly available

26   information suggests that there was a breakdown of the attorney-client relationship, this evidence,

27   without more, is insufficient to justify Interrogatory No. 46 because the burden or expense of the

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

21

EXHIBIT  40

PAGE  729

1  proposed discovery outweighs its likely benefit under Rule 26(b)(2)(C), Fed.R.Civ.P.

2  Furthermore, the interrogatory is grossly overbroad in seeking information about "any and all

3  disputes" with former counsel, regardless of whether such disputes relate to a claim or defense in

4  the case.

5     The interrogatory is also objectionable because it intrudes upon MGA's relationship with

6  former counsel, and thus necessarily intrudes upon the protections afforded by the attorney-client

7  privilege and work product doctrine. Mattel's rank speculation that there were attorney-client

8  discussions of wrongdoing is insufficient to vitiate the attorney-client privilege. See e.g. In re

9  Napster, Inc. Copyright Litig., 479 F.3d 1078, 1090 (9th Cir. 2007). Nor have the MGA parties

10  waived the attorney-client privilege. Although the MGA parties discussed the reasons for their

11  substitution of counsel with the press, there has been no showing that the information they

12  disclosed revealed the substance of an attorney-client privileged communication.

13                          V. CONCLUSION

14     For the reasons set forth above, it is hereby ordered as follows:

15     1. Mattel's motion to compel is granted as to Interrogatory Nos. 38, 40, 41 (as narrowed),

16  43-44 and 47. The MGA parties shall serve supplemental responses to said interrogatories no

17  later than February 26, 2008.

18     2. Mattel's motion to compel is denied as to Interrogatory Nos. 27-37, 39, 42, 46 and 48-

19  50.

20  Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery Master,

21  Mattel shall file this Order with the Clerk of Court forthwith.

22

23  Dated: February 15, 2008

24                          HON. EDWARD A. INFANTE (Ret.)
                            Discovery Master

25

26

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                              22

EXHIBIT   40
PAGE   730

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on February 15, 2008, I

served the attached ORDER GRANTING IN PART AND DENYING IN PART MATTEL'S MOTION

TO COMPEL RESPONSES TO INTERROGATORY NOS. 27-44 AND 46-50 BY THE MGA

PARTIES in the within action by email addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| Matthew M. Werdegar, Esq. | Keker & Van Nest | mwerdegar@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| Audrey Walton-Hadlock, Esq. | Keker & Van Nest | awalton-hadlock@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Thomas J. Nolan, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tnolan@skadden.com |
| Raoul D. Kennedy, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | rkennedy@skadden.com |
| Amy S. Park, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | apark@skadden.com |
| Harriet S. Posner, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | hposner@skadden.com |
| Carl Alan Roth, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | croth@skadden.com |
| Timothy A. Miller, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tmiller@skadden.com |
| Marcus R. Mumford, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Mmumford@skadden.com |
| Paul M. Eckles, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Paul.eckles@skadden.com |
| Robert J. Herrington, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Robert.herrington@skadden.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above

is true and correct.

Executed on February 15, 2008, at San Francisco, California.

Sandra Chan

EXHIBIT ___40___

PAGE ___731___

# EXHIBIT 41

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
    John B. Quinn (Bar No. 090378)
2    (johnquinn@quinnemanuel.com)
    Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
    Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California 90017-2543
   Telephone:  (213) 443-3000
6  Facsimile:   (213) 443-3100

7  Attorneys for Mattel, Inc.

8            UNITED STATES DISTRICT COURT

9            CENTRAL DISTRICT OF CALIFORNIA

10                  EASTERN DIVISION

11  CARTER BRYANT, an individual,        CASE NO. CV 04-9049 SGL (RNBx)
                                         Consolidated with
12          Plaintiff,                   Case Nos. CV 04-09059 & CV 05-2727

13      vs.

14  MATTEL, INC., a Delaware             [PROPOSED] ORDER GRANTING
    corporation,                         MATTEL, INC.'S MOTION OBJECTING
15                                       TO PORTIONS OF DISCOVERY
            Defendant.                   MASTER'S DECEMBER 31, 2007 ORDER
16                                       REGARDING HARD DRIVES

17  AND CONSOLIDATED ACTIONS            Phase 1
                                        Discovery Cut-Off:   January 28, 2008
18                                      Pre-Trial Conference: May 5, 2008
                                        Trial Date:          May 27, 2008
19

20

21

22

23

24

25

26

27                                      EXHIBIT __41__
28                                      PAGE __732__

07209/2414052.3

1
2

## [~~PROPOSED~~] ORDER

3
4           Having considered Mattel, Inc.'s Motion Objecting To Portions Of
5   Discovery Master's December 31, 2007 Order Regarding Hard Drives and all
6   supporting papers, all papers submitted in opposition to the Motion, and having
7   considered the arguments of counsel, the Court finds good cause to grant the Motion
8   and to overrule in part the Discovery Master's Order Granting in Part and Denying
9   in Part Mattel's Motion to Compel Production of Documents by Isaac Larian;
10  Denying Request for Sanctions, dated December 31, 2007, as to Request Nos. 222
    and 225:

11          IT IS HEREBY ORDERED THAT the Discovery Master's Order is
12  overruled as to Request Nos. 222 and 225.  Destruction of electronic evidence on
13  hard drives is relevant to Mattel's claims, including specific predicate acts alleged in
14  Mattel's RICO counterclaims.  The Discovery Master's Order denying such evidence
15  to Mattel was clearly erroneous and contrary to law.

16          IT IS FURTHER ORDERED THAT Isaac Larian shall make available
17  within ten (10) calendar days the following hard drives that are in his possession,
18  custody, or control for inspection and copying:

19      1.      All hard drives from, or that were at any time connected to, any
20              computer used by either Isaac Larian or Carter Bryant at any time from
21              1999 to the present and that contain or previously contained any digital
22              information referring or relating to Bratz, Angel, MGA or Bryant (as
23              those terms are defined in Mattel's Requests).

24  A consultant of Mattel's choosing, who Mattel will identify before the inspection,
25  shall be allowed to inspect each of the hard drives produced.  Mattel's consultant
26  shall be allowed to make a forensically sound image of each hard drive produced.
27  The inspection may take place at a location of Larian's choosing in this District, so
28  long as the location has the minimum requirements necessary to inspect and create a

-2-

EXHIBIT ___41___
PAGE ___733___

1  forensically sound image of the produced hard drives.  A consultant of Larian's

2  choosing, who Larian will identify before the inspection, shall be allowed to observe

3  the inspection and imaging of the hard drives.

4         IT IS FURTHER ORDERED THAT Mattel's consultant shall have the

5  right to inspect any and all information on said hard drives to determine:

6         (a)    whether, when and by whom any information was deleted,

7  destroyed, written over, lost, exported, moved, spoliated or otherwise rendered

8  inaccessible or unreadable;

9         (b)    whether, when and by whom any attempts were made to delete,

10  destroy, write over, export, move, spoliate or otherwise render inaccessible or

11  unreadable any information on those hard drives;

12         (c)    the current or past presence or use of any hardware or software

13  tool to accomplish any of the actions identified above;

14         (d)    whether any information deleted, destroyed, written over, lost,

15  exported, moved, spoliated or otherwise rendered inaccessible or unreadable may be

16  recovered; and

17         (e)    to recover any such information, in whole or in part.

18

19  DATED:    2/27    , 2008    _____

20         Hon. Stephen G. Larson
       United States District Judge

21

22

23

24

25

26

27                   EXHIBIT _41__

28                   PAGE _734__

07209/2414052.3

-3-

[PROPOSED] ORDER GRANTING MATTEL'S MOTION OBJECTING TO DECEMBER 31, 2007 ORDER RE
HARD DRIVES

# EXHIBIT 42

CONFORMED COPY

1   Hon. Edward A. Infante (Ret.)
    JAMS
2   Two Embarcadero Center
    Suite 1500
3   San Francisco, California 94111
    Telephone:   (415) 774-2611
4   Facsimile:    (415) 982-5287

5

6

7                   UNITED STATES DISTRICT COURT

8                   CENTRAL DISTRICT OF CALIFORNIA

9                         EASTERN DIVISION

10

11  CARTER BRYANT, an individual,          CASE NO. C 04-09049 SGL (RNBx)
                                           JAMS Reference No.1100049530
12           Plaintiff,

13      v.                                 Consolidated with
                                           Case No. CV 04-09059
14  MATTEL, INC., a Delaware corporation,  Case No. CV 05-2727

15           Defendant.                    **ORDER GRANTING IN PART AND
                                           DENYING IN PART MATTEL'S
16                                         MOTION TO COMPEL PRODUCTION
                                           OF DOCUMENTS BY MGA;
17                                         DENYING REQUEST FOR
                                           MONETARY SANCTIONS**
18  CONSOLIDATED WITH
    MATTEL, INC. v. BRYANT and
19  MGA ENTERTAINMENT, INC. v. MATTEL,
    INC.
20

21                       I.  INTRODUCTION

22      On June 26, 2007, Mattel, Inc. ("Mattel") submitted its Motion To Compel Production of

23  Documents by MGA Entertainment, Inc. ("MGA") and for Award of Monetary Sanctions.  Mattel

24  seeks an order compelling MGA "to produce documents responsive to Mattel's First Set of

25  Requests for Documents and Things Re Unfair Competition Claims, including, without limitation,

26  Request Nos. 1, 3-10, 12-13, 16-18, 19-20, 26-27, 29-30, 32-40, 42-43, 45, 48-52, 54-56, 58-60,

27

28  Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

EXHIBIT  42
PAGE  735

1   65-119, 137-140, 157-161, 164 and 166," and for sanctions in the amount of $4,500, which

2   represents a portion of the costs incurred by Mattel in bringing this motion. Mattel's Motion at

3   p.1. On July 3, 2007, MGA submitted its opposition brief, and on July 9, 2007, Mattel submitted

4   a reply brief. The matter was heard via telephonic conference on August 13, 2007. Having

5   considered the motion papers and comments of counsel at the hearing, Mattel's motion to compel

6   is granted in part and denied in part, and the request for sanctions is denied.

7                                  II. BACKGROUND

8        This consolidated action includes MGA's claims for unfair competition against Mattel.

9   Among other things, MGA alleges that Mattel has engaged in "serial copycatting" of MGA

10  products, packaging and advertising, including Bratz dolls and other Bratz products, Bratz

11  packaging and Bratz television commercials. MGA also alleges that Mattel engaged in improper

12  conduct in dealing with retailers, licensees, employees and industry organizations.

13       After MGA filed its claims against Mattel, Mattel sought and was granted leave to file

14  several counterclaims against MGA, including claims for copyright infringement, violation of

15  RICO, conspiracy to violate RICO, misappropriation of trade secrets and unfair competition.

16  Among other things, Mattel alleges that MGA has induced Mattel employees to steal Mattel's

17  trade secrets, confidential information and other property and take it with them to their new

18  employment with MGA. Mattel also alleges that Bryant conceived, created and developed Bratz

19  designs while he was employed by Mattel as a designer, that he concealed his Bratz work from

20  Mattel, and that he sold Bratz to MGA while he was a Mattel employee. Mattel alleges that it is

21  the rightful owner of the Bratz designs and that MGA is engaging in copyright infringement of

22  the Bratz designs.

23       On December 18, 2006, Mattel propounded its First Set of Requests for Production of

24  Documents and Things re Claims for Unfair Competition to MGA (the "Requests for

25  Production"). The Requests for Production consist of 166 requests seeking information that

26

27

28
    Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

                                        EXHIBIT __42__   2
                                        PAGE ___736___

1   Mattel contends is relevant primarily to MGA's claims for unfair competition and Mattel's

2   defenses thereto.

3        In the meantime, MGA served its initial disclosures related to its unfair competition

4   claims. Mattel immediately filed a motion to compel MGA to provide complete initial

5   disclosures in compliance with Rule 26, Fed.R.Civ.P. Although the initial disclosures were

6   wholly inadequate, the Discovery Master denied the motion to compel, reasoning that it would be

7   more efficient and orderly for the parties to proceed with Mattel's pending Requests for

8   Production.

9        MGA served its responses to Mattel's Requests for Production on January 17, 2007.

10   MGA objected and refused to produce documents responsive to approximately two-thirds of

11   Mattel's requests. As to the remaining requests, MGA agreed to produce "relevant and non-

12   objectionable documents," subject to its General and Specific Objections.

13        Thereafter the parties met and conferred in person and exchanged a few letters. On

14   February 9, 2007, counsel for MGA advised Mattel by letter that MGA, subject to its General and

15   Specific objections, agreed to produce all "relevant and non-objectionable documents" responsive

16   to Request Nos. 1-4, 11, 13-15, 18, 21-26, 28-29, 31-36, 44-51, 53, 61-64, 118, 120-137, 141-156,

17   162-163, 165 and 166. Kidman Decl., Ex. 14. As to Request Nos. 9, 10 and 12, MGA also

18   agreed to produce "documents sufficient to show the timing of, and relevant facts regarding"

19   certain specified products. Id. Counsel for MGA sent another letter on February 16, 2007,

20   advising Mattel that MGA would produce documents responsive to Request Nos. 29 and 30.

21   Bradley Decl., Ex. 1. On May 21, 2007, MGA advised Mattel by letter that it agreed, in essence,

22   to withdraw its restriction to "relevant and non-objectionable documents" in its responses to the

23   Requests For Production. Bradley Decl., Ex. 3. On May 31, 2007, MGA served supplemental

24   responses to Mattel's Requests for Production, which no longer included the phrase "relevant and

25   non-objectionable." Kidman Decl., Exs. 11 and 16.

26

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT __42__   3

PAGE __737__

1    In its opening brief, Mattel contends that MGA has improperly refused to produce

2    documents relating to:  the creation, origin, timing and ownership of the contested MGA products

3    and packaging, including the contested Bratz products and packaging (Request Nos. 5, 6-8, 16,

4    17, 19, 20, 38, 39, 48); MGA's alleged theft of Mattel's trade secrets and confidential information

5    by, among other things, targeting and recruiting current and former Mattel employees (Request

6    Nos. 42, 59, 60, 65-117, 138-140, 160, 161 and 164); damages (Request Nos. 27, 30 and 157-

7    159); facts MGA contends support its unfair competition claims (Request Nos. 45, 119 and 166).

8    Mattel contends that MGA has no legitimate basis for refusing to produce these categories of

9    documents because they are directly relevant to the claims and defenses in the case.  Mattel also

10   contends that MGA has improperly restricted the scope of its document production in response to

11   Request Nos. 1, 3, 4, 13, 18, 29, 49, 52 and 137.

12    MGA contends that Mattel's motion should be denied in its entirety for three reasons.

13   First, Mattel is seeking documents MGA already agreed to produce as a result of the meet and

14   confer process.  Second, Mattel is seeking documents that may be precluded by other motions

15   pending before the district court.  Third, Mattel is seeking documents that constitute an

16   unreasonable and overbroad fishing expedition.

17    As to the first point, MGA contends that it has already agreed to produce documents

18   responsive to Request Nos. 9, 10, 12, 26, 29, 30, 32-36, 45, 48-51, 118, 137, and 166.  Moreover,

19   MGA represents that it has produced more than 110,000 pages of documents, including

20   documents relating to the origin, infringement, design and tooling of Bratz and has also provided

21   Mattel with access to Bratz molds and sculpts.  MGA also represents that it is continuing to

22   search for and produce documents responsive to Mattel's requests on a rolling basis.

23    MGA also asserts that it "has revisited certain of Mattel's requests, and so as to avoid

24   further burdening the Court, MGA agrees to produce non-privileged documents in its possession,

25   custody or control, subject to its previously stated General and Specific Objections, that are

26

27

28
Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT ___42___

PAGE ___738___

1  responsive to the following sixteen requests:  5-8, 16-17, 19-20, 27, 37-40, 43, 52, 55-56, and

2  157-159."  MGA's Opposition at p. 3.

3        MGA also represents that it is prepared to produce documents responsive to Mattel's

4  Request Nos. 65-117 and 119 (which seek documents concerning MGA-Mexico and its

5  employees, and other topics relevant to Mattel's counterclaims) now that Judge Larson issued an

6  order denying MGA's motion to dismiss Mattel's trade secret claims.[1]  MGA's Opposition at pp.

7  2 and 6.

8        As to the second point, MGA contends that Mattel's motion to compel is premature with

9  respect to Request Nos. 1, 3, 4, 13 and 18.  MGA explains that these requests seek, among other

10  things, information pertaining to undisclosed and/or unreleased MGA products.  The Discovery

11  Master issued an order compelling MGA to produce such documents in response to other Mattel

12  discovery requests.  MGA appealed the Discovery Master's ruling, which was heard by Judge

13  Larson on July 2, 2007.  MGA contends that it should not be required to produce documents

14  responsive to Request Nos. 1, 3, 4, 13 and 18 until Judge Larson issues a ruling.

15        For the remaining requests, however, MGA stands by its objections.  More specifically,

16  MGA contends that Request Nos. 42, 54, 58-60, 138-140, 160, 161 and 164 are grossly overbroad

17  and unduly burdensome.

18        In its reply brief, Mattel contends that MGA's belated offers to produce responsive

19  documents do not obviate the need for an order compelling production for several reasons.  First,

20  Mattel contends that in many instances, MGA's purported agreements to produce responsive

21  documents are subject to major qualifications.  For example, in response to Request Nos. 9, 10

22  and 12, MGA's meet and confer letter indicates that MGA has limited its production of

23  documents to only "documents sufficient to show the timing of, and relevant facts regarding"

24  certain products.  Kidman Decl., Ex. 14.  Second, Mattel points out that, in some instances, the

25

26  _____

27      [1]  Judge Larson issued the order on June 27, 2007, a day after Mattel submitted its opening brief.

28  Bryant v. Mattel, Inc.,
   CV-04-09049 SGL (RNBx)

EXHIBIT __42__ 5

PAGE ___739___

1  representations in MGA's meet and confer letters conflict with MGA's subsequent May 31, 2007

2  supplemental responses. For example, even though MGA stated earlier in its two meet and confer

3  letters that it would produce documents responsive to Request Nos. 9, 10, 12, 26, 30, 32-36, 45,

4  48, 50, 51, 118 and 166, MGA's May 31, 2007 supplemental responses indicate that MGA

5  objects and refuses to produce documents responsive to these requests. Third, Mattel contends

6  that MGA has acknowledged its responsibility to produce documents responsive to Request Nos.

7  65-117 and 119 in view of Judge Larson's June 27, 2007 order denying MGA's motion to dismiss

8  Mattel's counterclaims, and yet, MGA has failed to do so. Fourth, Mattel points out that MGA's

9  opposition brief is internally inconsistent with respect to Request Nos. 55 and 56, stating both that

10  MGA agrees to produce documents responsive to the requests, and that MGA objects to the

11  requests as overbroad and burdensome. See MGA's Opposition at pp. 3 and 8.

12       Mattel also contends that Request Nos. 1, 3, 4, 13 and 18 are no longer premature because

13  on July 5, 2007, two days after MGA submitted its opposition brief, Judge Larson issued an order

14  upholding the Discovery Master's ruling with respect to undisclosed and/or unreleased MGA

15  products. Accordingly, Mattel requests an order compelling production of documents all

16  documents responsive to Request Nos. 1, 3, 4, 13 and 18 without any limitations, and overruling

17  any objections thereto.

18       With respect to the remaining requests to which MGA continues to object, Mattel reasserts

19  that the requests seek documents relevant to Mattel's trade secret counterclaims. Mattel also

20  contends that MGA has failed to establish that complying with the requests would impose an

21  undue burden.

22                                    III. DISCUSSION

23       Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain

24  discovery regarding any matter, not privileged, that is relevant to the claim or defense of any

25  party." Fed.R.Civ.P. 26(b)(1). Fishing expeditions to discover new claims, however, are not

26  permitted. See Fed.R.Civ.P. 26(b)(1); Rivera v. NIBCO, Inc., 364 F.3d 1057, 1072 (9th Cir.

27

28  Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

EXHIBIT 42  6

PAGE  740

1   2004) ("District courts need not condone the use of discovery to engage in 'fishing

2   expeditions.'"); Bernstein v. Travelers Ins. Co., 447 F.Supp.2d 1100, 1102 (N.D. Cal. 2006)

3   (citing Rule 26(b), Advisory Committee's Note to Amendments Effective December 1, 2000)

4   (Congress' changes in the language of Rule 26(c), substituting the words "claim or defense" for

5   the phrase "subject matter involved in the pending action," were intended to prevent discovery

6   that swept far beyond the claims and defenses of the parties and that seemed designed not to fairly

7   litigate the issues presented by the pleadings but to develop new claims or defenses.).

8          Further, pursuant to Rule 26(b)(2), Fed.R.Civ.P., the court shall limit the frequency or

9   extent of use of the discovery methods if the court determines that "(i) the discovery sought is

10  unreasonably cumulative or duplicative, or is obtainable from some other source that is more

11  convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample

12  opportunity by discovery in the action to obtain the information sought; or (iii) the burden or

13  expense of the proposed discovery outweighs its likely benefit, taking into account the needs of

14  the case, the amount in controversy, the parties' resources, the importance of the issues at stake in

15  the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P.

16  26(b)(2).

17  <u>Request Nos. 1, 3, 4, 13 and 18</u>

18         Request No. 1 seeks "[a] sample of each of the CONTESTED MGA PRODUCTS,

19  together with each such product's packaging, instructions, promotional materials and other

20  associated packaging materials."  Request No. 3 seeks "[a] complete copy of each advertisement

21  or promotional statement prepared, produced, printed, broadcast, made available to anyone in any

22  manner via the Internet, or otherwise used or disseminated in any way in connection with the

23  CONTESTED MGA PRODUCTS."  Request No. 4 seeks "[a] complete copy of each

24  COMMUNICATION, advertisement, promotional statement that provides a basis for any claim

25  by [MGA] against MATTEL."  Request No. 13 seeks "[a]ll DOCUMENTS RELATING TO any

26  revision of any CONTESTED MGA PRODUCTS, including but not limited to any proposed

27

28  Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

EXHIBIT __42__  [7]
PAGE ____741____

1  alternatives, modifications or changes (whether or not implemented) to such CONTESTED MGA

2  PRODUCTS." Request No. 18 seeks "[a]ll DOCUMENTS RELATING TO the marketing,

3  advertising, promotion, licensing, offering for sale or sale of the CONTESTED MGA

4  PRODUCTS, including but not limited to all marketing studies, marketing plans, sales plans,

5  sales forecasts, strategies, surveys and analyses and including but not limited to all catalogs,

6  advertisements, brochures, displays and Internet publications."

7         During the meet and confer process, MGA agreed to produce documents responsive to

8  Request Nos. 1, 3, 4, 13 and 18.  Kidman Decl., Ex. 14.  In its subsequent supplemental

9  responses, however, MGA responded that it would produce responsive documents "visible to the

10  consuming public at the point of purchase," "made available to the public," or "presented to the

11  consuming public."  MGA's Supp. Response, Kidman Decl., Ex. 8 and 16.

12        Mattel contends that the requested documents and items are relevant to MGA's claim of

13  "serial copying," whether or not they are seen by the consuming public.  Mattel also contends that

14  the documents it seeks are relevant to any claim by MGA of "post sale confusion."  Furthermore,

15  Mattel argues that MGA's restrictions on discovery are unreasonable in light of MGA's own

16  claimed trade dress, which MGA alleges extends to the entirety of MGA's marketing techniques

17  and product appearance.  Mattel also contends that Request No. 13 seeks documents that are

18  directly relevant to MGA's claim that Mattel systematically modified its products to increase their

19  similarity to MGA's products over time.

20        In its opposition brief, MGA does not attempt to refute any of Mattel's relevancy

21  arguments above, relying instead on its argument that these requests are premature until Judge

22  Larson issues a ruling.  Judge Larson, however, issued an order on July 5, 2007.  Accordingly, the

23  requests are no longer premature.  The subject requests are relevant and not unduly burdensome.

24  MGA is ordered to produce all non-privileged documents that are responsive to Request Nos. 1,

25  3, 4, 13 and 18.

26  //

27

28
Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT __42__ 8

PAGE __742__

1   **Request Nos. 5-8, 16-17, 19-20, 27, 37-40, 43, 52, 55-56, and 157-159**

2       In its opposition brief, MGA agrees to produce documents responsive to Request Nos. "5-

3   8, 16-17, 19-20, 27, 37-40, 43, 52, 55-56, and 157-159." MGA's Opposition at p. 3. Later in its

4   opposition brief, however, MGA contends that Request Nos. 55 and 56 are overbroad and

5   burdensome. See MGA's Opposition at pp. 3 and 8. Request No. 55 seeks production of "[a]ll

6   periodicals, whether they be magazines, newspapers, newsletters, or any other type of periodical,

7   that mention the CONTESTED MGA PRODUCTS that have been published since January 1,

8   1999." Request No. 56 seeks "[a]ll television or radio broadcasts or cablecasts that mention the

9   CONTESTED MGA PRODUCTS that have been disseminated since January 1, 1999." MGA

10  contends that these requests encompass, among other things, every single advertisement MGA

11  ever ran in connection with BRATZ or any of the other products at issue.

12      Mattel contends that Request Nos. 55 and 56 are designed to obtain documents that may

13  contain admissions relevant to various issues in the case, including admissions regarding the

14  origin and timing of the products at issue; the performance of the contested products or MGA as a

15  whole, which may undercut MGA's claims for damages; and statements that might reveal that

16  MGA had access to confidential Mattel information.

17      Although Request Nos. 55 and 56 encompass potentially relevant documents, they are

18  overbroad. They require MGA to produce every single advertisement MGA ever ran in

19  connection with all of the products at issue. The requests are not limited in any respect to the

20  subjects of interest to Mattel, i.e., the origin and timing of the products at issue. Furthermore,

21  Mattel has utilized other document requests and depositions to obtain the type of evidence it now

22  seeks.

23      Accordingly, Mattel's motion is granted as to Request Nos. 5-8, 16-17, 19-20, 27, 37-40,

24  43, 52, and 157-159 to ensure a deadline for production, and denied as to Request Nos. 55 and 56

25  pursuant to Rule 26(b)(2), Fed.R.Civ.P.

26  //

27

28  Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

EXHIBIT __42__ 9
PAGE __743__

1   <u>Request Nos. 9, 10, 12</u>

2          Request Nos. 9, 10 and 12 call for "[a]ll DOCUMENTS RELATING TO the invention,

3   creation, origin, conception, authorship, design, development, production, engineering,

4   manufacture, distribution, sale and ownership of products and packaging" "that YOU contend

5   provide a basis for any claim against MATTEL, whether or not such claim is in the

6   COMPLAINT" (No. 9); "that YOU contend MATTEL copied or infringed" (No. 10); and related

7   "COMMUNICATIONS" (No. 12). During the meet and confer process, MGA agreed to produce

8   "documents sufficient to show the timing of, and relevant facts" regarding the following products

9   on the following topics:

10         • "First generation 'Bratz'" line, including packaging – invention, creation, origin,

11            conception, authorship, design, development, sale and ownership;

12         • "Bratz" "Wintertime Wonderland" line, including packaging – invention, creation,

13            origin, conception, authorship, and first sale;

14         • "Bratz" "Sportz" Cloe, including packaging – invention, creation, origin, conception,

15            authorship and first sale;

16         • "Bratz" "Sun-Kissed Summer" line, including packaging and playset – invention,

17            creation, origin, conception, authorship, and first sale;

18         • "Bratz" "Formal Funk" line –invention, creation, origin, conception, authorship, and first

19            sale;

20         • "Bratz" "Runway Disco," including packaging – invention, creation, origin, conception,

21            authorship, and first sale;

22         • "Bratz" "Funky Fashion Makeover Head," including packaging – invention, creation,

23            origin, conception, authorship, and first sale;

24         • "Bratz" "Petz," including packaging – invention, creation, origin, conception,

25            authorship, and first sale;

26

27

28   Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

EXHIBIT __42__ 10
PAGE ___744___

1     • "4-Ever Best Friends," including packaging – invention, creation, origin, conception,

2     authorship, and first sale;

3     • "Mommy's Little Patient" – invention, creation, origin, conception, authorship, and first

4     sale;

5     • "AlienRacers," including logo – invention, creation, origin, conception, authorship, and

6     first sale; and

7     • "Bratz" "Diamondz" line – invention, creation, origin, conception, authorship, and first

8     sale.

9     Kidman Decl., Ex. 14. In response to Request No. 9, MGA also agreed to produce documents

10    containing development, production and sales information for the product(s) affected by the hair

11    shortage allegedly caused by Mattel and "sufficient to show the timing of and relevant facts

12    regarding the shortage and its effect on MGA." Id. Thereafter, MGA asserted objections to these

13    requests in its May 31, 2007 supplemental responses. In opposition to Mattel's motion, however,

14    MGA restated that it would produce documents responsive to these requests consistent with its

15    prior meet and confer letter. MGA's Opposition at p. 5.

16        Mattel contends that MGA's agreement to produce documents is insufficient because

17    MGA has limited its production to documents "sufficient to show." MGA's opposition brief fails

18    to address Mattel's argument. Instead, MGA merely asserts that it agreed to produce documents

19    responsive to Request Nos. 9, 10 and 12 during the meet and confer process, and therefore

20    Mattel's motion should be denied as moot.

21        Request Nos. 9, 10 and 12 clearly seek relevant information, and MGA has failed to

22    justify why its production should be limited to documents "sufficient to show." Therefore,

23    Mattel's motion is granted as to Request Nos. 9, 10 and 12.

24    <u>Request Nos. 26, 29, 30, 32, 36, 45, 48-51, 118, 137 and 166</u>

25        In its two meet and confer letters MGA agreed to produce, subject to its General and

26    Specific Objections, documents responsive to Request Nos. 26, 29, 30, 32-36, 45, 48-51, 118, 137

27

28

EXHIBIT  42  11

PAGE  745

1    and 166. Kidman Decl., Ex. 14. Mattel points out, however, that MGA's May 31, 2007

2    supplemental responses are inconsistent insofar as the responses indicate that MGA continues to

3    object to some of the requests or otherwise agrees to produce only a limited portion of documents

4    responsive to other requests. Mattel's Reply Brief at p. 7. Nevertheless, in its opposition brief,

5    MGA reaffirms its earlier agreement to produce all responsive documents, and states that it

6    considers Mattel's motion to be moot. See MGA's Opposition at pp. 5-6. Mattel's motion is

7    granted as to this category of requests.

8    **Request Nos. 65-117 and 119**

9        In its opposition brief, MGA agrees to produce documents responsive to Mattel's Request

10   Nos. 65-117 and 119 now that Judge Larson issued an order denying MGA's motion to dismiss

11   Mattel's trade secret claims. MGA's Opposition at pp. 2 and 6. Mattel's motion is granted as to

12   these requests.

13   **Request Nos. 42, 54, 58-60, 138-140, 160-161 and 164**

14       MGA contends that Request Nos. 42, 54, 58-60, 138-140, 160-161 and 164 are overbroad

15   and unduly burdensome. Mattel insists that they are not. More specifically, Mattel contends that

16   the requests seek documents regarding MGA's alleged theft of Mattel's trade secrets, and in

17   particular, the theft of trade secrets through targeting and hiring current and former Mattel

18   employees.

19       Request No. 42 seeks "[a]ll COMMUNICATIONS between [MGA] and any individual

20   while the individual was employed by MATTEL." Although the request may encompass relevant

21   documents, it is overbroad insofar as it requires production of all communications, regardless of

22   subject matter. Furthermore, the request is objectionable to the extent it seeks documents that are

23   equally available to Mattel. Therefore, Mattel's motion is denied as to Request No. 42 pursuant

24   to Rule 26(b)(2), Fed.R.Civ.P.

25       Request No. 54 seeks "[a]ll DOCUMENTS RELATING TO any COMMUNICATION by

26   [MGA] with any news organization regarding the CONTESTED MGA PRODUCTS or the

27

28   Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

EXHIBIT __42__
PAGE __746__

1   CONTESTED MATTEL PRODUCTS." Once again, the request encompasses potentially

2   relevant documents, however it is overbroad, seeking all documents relating to any

3   communications by MGA with any news organization. Furthermore, the request seeks documents

4   that are of relatively minimal relevance to the claims and defenses in the case. Therefore,

5   Mattel's motion is denied as to Request No. 54 pursuant to Rule 26(b)(2), Fed.R.Civ.P.

6        Request Nos. 58 seeks "[a]ll DOCUMENTS RELATING TO publicity by [MGA] or

7   about the CONTESTED MGA PRODUCTS since January 1, 1999, including but not limited to

8   advertising, media releases, and public relations material." This request is also overbroad in that

9   it seeks all documents relating to publicity by MGA about its products at issue in the litigation.

10  Mattel's motion is therefore denied as to Request No. 58 pursuant to Rule 26(b)(2), Fed.R.Civ.P.

11       Request No. 59, asks for "[a]ll DOCUMENTS RELATING TO any effort by [MGA] to

12  recruit employees or contractors since January 1, 1999, including but not limited to advertising,

13  media releases, brochures, articles, catalogs, handbooks, and public relations material." The

14  request is overbroad insofar as it requires production of all documents relating to MGA's

15  recruiting, including for instance, recruiting from competitors other than Mattel. Mattel's motion

16  is therefore denied as to Request No. 59 pursuant to Rule 26(b)(2), Fed.R.Civ.P.

17       Request No. 60 seeks "[a]ll DOCUMENTS RELATING TO the hiring, engagement, or

18  retention by [MGA] of any former or current MATTEL employee or contractor since January 1,

19  1999, including but not limited to all employment agreements and agreements RELATING TO

20  confidentiality or the invention, authorship, or ownership of any concept or product." Request

21  No. 138 seeks "[a]ll COMMUNICATIONS between [MGA] and any PERSON RELATING TO

22  the departure from MATTEL of any current or former MATTEL employee or contractor."

23  Request No. 139 seeks "[a]ll COMMUNICATIONS between [MGA] and any PERSON

24  RELATING TO the obligations to MATTEL, including the duty of confidentiality, of any current

25  or former MATTEL employee or contractor. Request No. 140 seeks "[a]ll

26  COMMUNICATIONS between [MGA] and any current or former MATTEL employee or

27

28  Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

EXHIBIT __42__ 13

PAGE ___747___

1   contractor RELATING TO the ownership of any idea, concept, design, or product. Unlike the

2   previous requests, Request Nos. 60, 138, 139 and 140 are reasonably tailored to seek documents

3   central to Mattel's allegation that MGA stole its trade secrets through targeting and hiring current

4   and former Mattel employees. MGA has not carried its burden of establishing that it would be

5   unduly burdensome to comply with these requests. Accordingly, Mattel's motion is granted as to

6   Request Nos. 60, 138, 139 and 140.

7       Request No. 160 seeks "[a]ll DOCUMENTS received from MATTEL (whether directly

8   or indirectly) by [MGA] at any time since January 1, 1999." Request No. 161 seeks "[a]ll

9   DOCUMENTS that [MGA has] reason to believe were created by or originated from MATTEL,

10  other than MATTEL products that [MGA] purchased at retail." Request No. 164 seeks "[a]ll

11  DOCUMENTS RELATING TO any COMMUNICATIONS with, or inquiry or investigation by,

12  any government entity RELATING TO the CONTESTED MGA PRODUCTS or the

13  CONTESTED MATTEL PRODUCTS." These three requests are also reasonably tailored to seek

14  documents that could support Mattel's allegations of trade secret theft. MGA has failed to

15  establish that it would be unduly burdensome to comply with these requests. Mattel's motion is

16  granted as to Request Nos. 160, 161 and 164.

17                                  IV. CONCLUSION

18      For the reasons set forth above, Mattel's motion is granted as to Request Nos. 1, 3-10, 12,

19  13, 16-20, 26, 27, 29, 30, 32-40, 43, 45, 48-52, 60, 65-117, 118, 119, 137-140, 157-161, 164 and

20  166, and denied as to Request Nos. 42, 54-56, 58, 59. MGA shall produce, without limitation, all

21  non-privileged responsive documents in accordance with this Order no later than August 30,

22  2007. Mattel's request for sanctions is denied.

23      Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

24  Master, Mattel shall file this Order with the Clerk of Court forthwith.

25  Dated: August 13, 2007

26                                  HON. EDWARD A. INFANTE (Ret.)
                                    Discovery Master
27

28
    Bryant v. Mattel, Inc.,
    CV-04-09049 SGl. (RNBx)

EXHIBIT 42 14

PAGE 748

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on August 13, 2007, I served the attached ORDER GRANTING IN PART AND DENYING IN PART MATTEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY MGA; DENYING REQUEST FOR MONETARY SANCTIONS in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Michael C. Keats, Esq. | O'Melveny & Myers LLP | mkeats@omm.com |
| Kendall Burr, Esq. | O'Melveny & Myers LLP | kburr@omm.com |
| Melanie Bradley, Esq. | O'Melveny & Myers LLP | mbradley@omm.com |
| Marvin Putnam, Jr., Esq. | O'Melveny & Myers LLP | mputnam@omm.com |
| William Charron, Esq. | O'Melveny & Myers LLP | wcharron@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on August 13, 2007, at San Francisco, California.

Sandra Chan

EXHIBIT   42
PAGE   747

# EXHIBIT 43

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 44

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 45

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 46

# THIS EXHIBIT IS FILED UNDER SEAL
# PURSUANT TO PROTECTIVE ORDER

# EXHIBIT 47

RECEIVED

DEC 2 1 2007

1  THOMAS J. NOLAN (Bar No. 66992)
   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2  300 South Grand Avenue
   Los Angeles, California 90071-3144
3  Telephone:  (213) 687-5000
   Facsimile:   (213) 687-5600
4  E-mail:    tnolan@skadden.com

5  RAOUL D. KENNEDY (Bar No. 40892)
   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
6  Four Embarcadero Center, Suite 3800
   San Francisco, California 94111-5974
7  Telephone:  (415) 984-6400
   Facsimile:   (415) 984-2698
8  Email:     rkennedy@skadden.com

9  Attorneys for MGA
   ENTERTAINMENT, INC., ISAAC
10 LARIAN, MGA ENTERTAINMENT
   (HK) LIMITED, and MGAE de
11 MEXICO S.R.L. de C.V.

12              UNITED STATES DISTRICT COURT

13             CENTRAL DISTRICT OF CALIFORNIA

14                   EASTERN DIVISION

15 CARTER BRYANT, an individual          ) CASE NO. CV 04-9049 SGL (RNBx)
                                         )
16              Plaintiff,               ) Consolidated with Case No. 04-9059
                                         ) and Case No. 05-2727
17      v.                               )
                                         ) MGAE de MEXICO S.R.L
18 MATTEL, INC., a Delaware              ) de C.V.'S OBJECTIONS
   corporation                           ) AND RESPONSES TO
19                                       ) MATTEL INC.'S FIRST SET OF
              Defendant.                  ) REQUESTS FOR DOCUMENTS
20                                       ) AND THINGS
                                         )
21 Consolidated with MATTEL, INC. v.     ) Honorable Stephen G. Larson
   BRYANT and MGA                        ) Courtroom 1
22 ENTERTAINMENT, INC. v.                )
   MATTEL, INC.                          )
23                                       )
                                         )
24 _____ )

25 PROPOUNDING PARTY:     MATTEL, INC.

26 RESPONDING PARTY:      MGAE de MEXICO, S.R.L. de C.V.

27 SET NUMBER:            ONE

28                                       EXHIBIT 47
                                         PAGE 783

────────────────────────────────────────────
       MGAE de MEXICO S.R.L. de C.V.'S OBJECTIONS AND RESPONSES TO MATTEL, INC.'S
    FIRST SET OF REQUESTS FOR DOCUMENTS AND THINGS NO. - CV 04-9049 SGL (RNBx)
256415.05-Palo Alto Server 1A              MSW - Draft December 19, 2007 - 1:25 PM

1    Pursuant to Rule 34 of the Federal Rules of Civil Procedure, MGAE de

2  Mexico, S.R.L. de C.V. ("MGA Mexico") hereby submits these responses and

3  objections (the "Response") to Mattel, Inc.'s ("Mattel's") First Set of Requests for

4  Production of Documents to MGA (the "Requests").

## GENERAL RESPONSE

6    The General Response and General and Specific Objections set forth herein

7  apply to all documents that MGA Mexico may in the future produce in response to

8  the Requests.  The Response is made without waiving, or intending to waive but, on

9  the contrary, expressly reserving:  (a) the right to object, on the grounds of

10  competency, privilege, relevancy or materiality, or any other proper grounds, to the

11  use of the documents, for any purpose in whole or in part, in any subsequent step or

12  proceeding in this action or any other action; (b) the right to object on any and all

13  grounds, at any time, to other requests for production or other discovery procedures

14  involving or relating to the subject matter of the Requests; and (c) the right at any

15  time to revise, correct, add to, or clarify any of the responses propounded herein.

16    The Response reflects only the present state of MGA Mexico's discovery

17  regarding the documents sought by Mattel.  Except as otherwise stated below, an

18  objection to a specific document request does not imply that documents responsive

19  to the request exist or have ever existed.  In addition, an agreement to produce

20  documents responsive to any specific document request does not imply that

21  documents responsive to the request exist or have existed; rather, it is an agreement

22  to produce non-privileged documents responsive to that particular document request

23  as limited by or interpreted in any applicable General or Specific objections, if any

24  exist.  Production of any document is not intended as, and, to the extent permitted by

25  law, shall not be deemed to be, a waiver of any objection set forth herein.  Discovery

26  and other investigation or research concerning this litigation are continuing.  MGA

27  Mexico, therefore, reserves the right to amend or supplement this Response at any

28  time in light of future investigation, research or analysis, and also expressly reserves

EXHIBIT __47__
-1-
PAGE __184__

1 | the right to rely on, at any time, including trial, subsequently discovered information
2 | or information omitted from this Response as a result of mistake, error, oversight or
3 | inadvertence. MGA Mexico does not hereby admit, adopt or acquiesce in any
4 | factual or legal contention, assertion or characterization contained in the Requests or
5 | any particular request therein, even where MGA Mexico has not otherwise objected
6 | to a particular request, or has agreed to produce documents responsive to a particular
7 | request.

8 | MGA Mexico invites Mattel to meet and confer regarding these Reponses, the
9 | scope of the Requests, and arriving at protocol for production of documents in this
10 | litigation.

11 | **GENERAL OBJECTIONS**

12 | MGA Mexico incorporates the following General Objections, as well as the
13 | General Response, into its Specific Responses and Objections to each and every
14 | request for documents contained in the Requests:

15 | 1. MGA Mexico objects to the date and place of production on the
16 | grounds that they impose an undue burden on MGA Mexico. The time set for
17 | compliance is unduly burdensome, especially in light of the number of document
18 | requests, and the scope and volume of the material being sought. To the extent
19 | MGA Mexico later agrees to produce responsive documents, MGA Mexico intends
20 | to proceed expeditiously to collect the documents for production, if any, and will
21 | produce them at a date and time, and in such a manner, as may be mutually agreed
22 | by counsel for the parties.

23 | 2. MGA Mexico objects to the Requests to the extent that they seek
24 | documents not relevant to the claims or defenses in this action and are not reasonably
25 | calculated to lead to the discovery of admissible evidence.

26 | 3. MGA Mexico objects to the Requests on the grounds that they are
27 | overly broad and unduly burdensome.

28 |

EXHIBIT **47**
PAGE **785**

-2-

1          4.    MGA Mexico objects to the Requests insofar as they seek

2 documents that are protected from disclosure under any applicable privilege, doctrine

3 or immunity, including without limitation the attorney-client privilege, the attorney

4 work product doctrine, the right of privacy, and all other privileges recognized under

5 the constitutional, statutory or decisional law of the United States of America, the

6 State of California or any other applicable jurisdiction, including, but not limited to,

7 such laws existing in the United Mexican States.  MGA Mexico shall not produce

8 such documents in response to Mattel's Request.  Any production of such protected

9 or privileged materials is inadvertent and shall not be construed as a waiver of those

10 privileges or protections.

11          5.    MGA Mexico objects to the Requests insofar as they seek

12 documents that by reason of public filing, public distribution or otherwise are already

13 in Mattel's possession or are readily accessible to Mattel from public sources or third

14 parties.

15          6.    MGA Mexico objects to the Requests insofar as they seek

16 production of documents (1) not within its possession, custody or control; (2) that

17 MGA Mexico cannot locate after a reasonably diligent search; or (3) that refer to

18 persons, entities, or events not known to MGA Mexico.  Such instructions,

19 definitions, or requests are objectionable where they subject MGA Mexico to

20 unreasonable and undue annoyance, oppression, burden, and expense; and/or seek to

21 impose upon MGA Mexico an obligation to produce documents from sources

22 equally accessible to Mattel.  To the extent MGA Mexico agrees to produce

23 documents in response to the Requests, MGA Mexico will make a reasonably

24 diligent search for responsive documents within its possession, custody or control

25 and located at MGA Mexico's offices.

26          7.    In responding to Mattel's Requests, MGA Mexico has not and

27 will not comply with any instructions or definitions that seek to impose requirements

28 in addition to those imposed by Federal law.

EXHIBIT 47
PAGE 786

-3-

MGAE de MEXICO S.R.I. de C.V.'S OBJECTIONS AND RESPONSES TO MATTEL, INC.'S
FIRST SET OF REQUESTS FOR DOCUMENTS AND THINGS NO. - CV 04-9049 SGL (RNBx)
256415.05-Palo Alto Server 1A               MSW - Draft December 19, 2007 - 1:25 PM

1   8. MGA Mexico objects to each and every request to the extent it

2 purports to require MGA Mexico to search all documents and things within its

3 possession, custody or control or within the possession, custody or control of any of

4 MGA Mexico's current or former employees, officers, directors, agents,

5 representatives, attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-

6 interest and successors-in-interest, and any other person acting on its behalf, pursuant

7 to its authority or subject to its control, on the grounds that such request is

8 unreasonable, overbroad, unduly burdensome and oppressive, violates the right to

9 privacy, and purports to require MGA Mexico to search for documents not within its

10 possession, custody or control.  To the extent MGA Mexico agrees to produce

11 documents in response to the Requests, MGA Mexico will make a reasonably

12 diligent search for responsive documents within its possession, custody or control.

13   9. MGA Mexico objects to each and every request to the extent it

14 seeks "all documents" responsive to a certain category on the grounds that such

15 request is overbroad and unduly burdensome and oppressive.  MGA Mexico will not

16 respond to duplicative or cumulative requests and will not re-produce documents it

17 has already produced or produce documents that it has received from Mattel or

18 others in the course of discovery in this matter.

19   10. MGA Mexico objects to the Requests insofar as they seek

20 production of confidential, proprietary, or trade-secret information, the disclosure of

21 which would be inimical to the business interests of MGA Mexico.

22   11. MGA Mexico objects to each request to the extent it seeks

23 information relating to the activities or conduct of other entities or non-parties.

24   12. MGA Mexico objects to each request to the extent it seeks

25 information relating to activities or conduct in foreign countries.

26   13. MGA Mexico objects to the Definitions and Instructions to the

27 extent such Definitions and Instructions purport to enlarge, expand, or alter in any

28 way the plain meaning and scope of any specific term or specific request on the

-4-

MGAE de MEXICO S.R.I. de C.V.'S OBJECTIONS AND RESPONSES TO MATTEL, INC.'S
FIRST SET OF REQUESTS FOR DOCUMENTS AND THINGS NO. - CV 04-9049 SGL (RNBx)
256415.05-Palo Alto Server 1A     MSW - Draft December 19, 2007 - 1:25 PM

EXHIBIT ___47___
PAGE ___787___

1 ground that such enlargement, expansion, or alteration renders such a term or request
2 vague, ambiguous, unintelligible, overbroad, unduly burdensome, and/or uncertain.

3         14.    MGA Mexico objects to the Instructions to the extent that they
4 purport to deprive MGA Mexico of the right to redact information from any
5 documents "for any reason." MGA Mexico retains and reserves the right to redact
6 documents on any appropriate grounds, including in particular for privilege.

7         15.    MGA Mexico specifically objects to the following definitions in
8 the Requests:

9         (a)    MGA Mexico objects to the terms "YOU," "YOUR" and
10 "MGA" (Definitions ¶ A) as vague, ambiguous, overbroad, and unduly burdensome.
11 The definition broadly includes, without limitation, "current or former directors,
12 officers, employees, agents, contractors, attorneys, accountants, or representatives of
13 MGAE de Mexico, S.R.L. de C.V. and any corporation, partnership, association,
14 trust, parent, subsidiary, division, affiliate, predecessor-in- interest and successor-in-
15 interest, and any other PERSON acting on its behalf." It is impossible for MGA
16 Mexico to know whether a particular person comes within this definition unless that
17 person or entity at some point in time held himself or herself out as being directly
18 affiliated with MGA Mexico. MGA Mexico additionally objects to these terms
19 because they call for legal conclusions. Thus, "YOU," "YOUR," and "MGA" will
20 be interpreted to mean all persons or entities who hold themselves out to MGA
21 Mexico as officers, employees, agents, subsidiaries or divisions of MGA Mexico.

22         (b)    MGA Mexico objects to the defined term "MATTEL"
23 (Definitions ¶ B) on the grounds that the term, as defined, is overbroad, vague and
24 ambiguous, and calls for legal conclusions.

25         (c)    MGA Mexico objects to the definition of the term
26 "BRATZ" (Definitions ¶ C) as vague, ambiguous, overly broad and unduly
27 burdensome, and designed to mislead and confuse the trier of fact. The definition
28 includes "any project, product, doll or DESIGN ever known by [the Bratz] name

MGAE de MEXICO S.R.I. de C.V.'S OBJECTIONS AND RESPONSES TO MATTEL, INC.'S
FIRST SET OF REQUESTS FOR DOCUMENTS AND THINGS NO. - CV 04-9049 SGL (RNBx)
256415.05-Palo Alto Server 1A                      MSW - Draft December 19, 2007 - 1:25 PM

EXHIBIT 47
PAGE 788

1  (whether in whole or in part and regardless of what such project, product or doll is or
2  has been also, previously or subsequently called) and any product, doll or DESIGN
3  or any portion thereof that is now or has ever been known as, or sold or marketed
4  under, the name or term 'Bratz' (whether in whole or in part and regardless of what
5  such product, doll or DESIGN or portion thereof is or has been also, previously or
6  subsequently called) or that is now or has ever been marketed as part of the 'Bratz'
7  line, and each version or iteration of such product, doll or DESIGN or any portion
8  thereof," and it goes on.  By incorporating the definition of "DESIGN," the overly
9  broad definition of "BRATZ" includes two-dimensional and three-dimensional
10  representations, including "works, designs, artwork, sketches, drawings, illustrations,
11  representations, depictions, blueprints, schematics, diagrams, images, sculptures,
12  prototypes, models, samples, rotocasts, reductions to practice, developments,
13  inventions and/or improvements . . . ."  (Definitions ¶ D.)  These convoluted and
14  multi-part definitions combine to render the document requests that refer to the term
15  vague, ambiguous and overly broad, and to include within the term "BRATZ" things
16  that do not fairly represent the Bratz line of dolls, accessories and related products
17  that are the subject of this case.

18        For the same reasons, MGA Mexico objects to the definitions of the phrases
19  "BRATZ DOLL," "BRATZ PRODUCT," "BRATZ LICENSE," "BRATZ MOVIE"
20  and "BRATZ TELEVISION SHOW" (Definitions ¶¶ E-I), all of which incorporate
21  the defined term "BRATZ."

22        Accordingly, in responding to the Requests, MGA Mexico will interpret the
23  term "BRATZ" to mean the line of dolls introduced to the market for sale in May or
24  June of 2001 and subsequent dolls, accessories and other products known as Bratz or
25  associated by MGA Mexico with the Bratz line of dolls.

26              (d)    MGA Mexico objects to the terms "MACHADO,"
27  "TRUEBA" and "VARGAS" (Definitions ¶¶ L-N) on the grounds that they are
28  overbroad, vague and ambiguous and call for legal conclusions.  The definition of

-6-

EXHIBIT   47
PAGE   789

1  these terms include "all of [his/her] current and former employees, agents,
2  representatives, attorneys, accountants, vendors, consultants, independent contractors,
3  predecessors-in-interest and successors-in-interest, and any other PERSON acting on
4  his or her behalf, pursuant to his authority or subject to his control." MGA Mexico
5  will interpret the terms "MACHADO," "TRUEBA" and "VARGAS" to mean
6  respectively, the individuals Carlos Gustavo Machado Gomez, Mariana Trueba
7  Almada, and Pablo Vargas San Jose.

8            (e)    MGA Mexico objects to the definition of the phrase
9  "FORMER MATTEL EMPLOYEE" (Definitions ¶ O) as overbroad, and vague and
10 ambiguous in its use of the terms "join," "YOU," "MACHADO," "TRUEBA" and
11 "VARGAS." MGA Mexico will interpret the term "join" to mean "work as a full
12 time, salaried employee for." MGA further objects to the definition of the phrase
13 "FORMER MATTEL EMPLOYEE" because of its reliance on the phrase
14 "MATTEL employee" which call for a legal conclusion.

15            (f)    MGA Mexico objects to the term "MATTEL
16 DOCUMENTS" (Definitions ¶ P) on the grounds that it is overbroad, unduly
17 burdensome, vague and ambiguous and designed to mislead and confuse the trier of
18 fact. The definition includes "all DOCUMENTS authored by MATTEL or taken
19 from MATTEL and in the possession of MGA or any FORMER MATTEL
20 EMPLOYEE . . ." and lists a string of documents by Bates Numbers. By including
21 "DOCUMENTS taken from MATTEL" without specifying authorship, the definition
22 includes within the term "MATTEL DOCUMENTS" documents in which Mattel has
23 no proprietary interest. By example, news magazines or other publicly available
24 information taken from out of Mattel offices would thus be included in the definition.
25 In responding to these requests, MGA Mexico will interpret the term "MATTEL
26 DOCUMENTS" to mean the specific documents Mattel has identified by Bates
27 Numbers, while specifically denying that MGA Mexico has improperly "taken," or is
28 in improper possession of, any of those documents.

EXHIBIT  47
PAGE  790

-7-

(                                                      (

1          (g)   MGA Mexico also objects to the phrase "REFER OR

2   RELATE TO" (Definitions ¶ U) on the grounds and to the extent it is overbroad,

3   unduly burdensome, and/or is vague and ambiguous in the context of the Requests as

4   written and as those requests would be plainly understood absent Mattel's vague and

5   confusing definitions.

6          (h)   MGA Mexico also objects to the term "SYSTEM" or

7   "SYSTEMS" (Definitions ¶ J) on the grounds and to the extent it is overbroad,

8   unduly burdensome, and/or is vague and ambiguous in the context of the Requests as

9   written.  Mattel purports to define these terms confusingly as "any computer or

10  network of computers or other network devices that allow two or more computers to

11  share information and equipment, including but not limited to local area networks,

12  wide area networks, storage area networks, client-server networks or peer-to-peer

13  networks," including the "brand, model number, technical specifications, and

14  capacities of the computers who are part of each such SYSTEM."  MGA Mexico

15  interprets "SYSTEM" as local area networks, wide area networks, storage area

16  networks, client-server networks or peer-to-peer networks, including such

17  SYSTEM's brand and model number.

18          16.   MGA Mexico objects to the Requests to the extent they seek the

19  production of documents in their native format where the burden of such production

20  outweighs the likelihood of discovering information that is relevant to the subject

21  matter of the claims or defenses in this action or calculated to lead to the discovery

22  of admissible evidence.

23          17.   MGA Mexico objects to the Requests on the grounds that they are

24  harassing, oppressive and unduly burdensome.  Mattel has already propounded over

25  700 requests for documents and things to MGA Mexico, MGA Entertainment (HK)

26  Limited and Isaac Larian ("the MGA Parties"), in response to which the MGA

27  Parties have already produced approximately 3.4 million pages of responsive

28

EXHIBIT __47__

PAGE __791__

-8-

1 | documents. MGA Mexico is, however, willing to meet and confer regarding the

2 | Requests herein, in light of the responses and objections provided herein.

3 | **SPECIFIC RESPONSES AND OBJECTIONS**

4 | Without waiving or departing from its General Response and General

5 | Objections and specifically incorporating its General Response and General

6 | Objections into each of the Specific Responses and Objections below, MGA Mexico

7 | makes the following specific responses and objections to the Requests:

8 | REQUEST FOR PRODUCTION NO. 1:

9 | A sample of each BRATZ PRODUCT including, without limitation, each

10 | BRATZ DOLL, sold by YOU or YOUR licensees.

11 | RESPONSE TO REQUEST FOR PRODUCTION NO. 1:

12 | MGA Mexico incorporates by reference its General Response and General

13 | Objections above, as though fully set forth herein and specifically incorporates

14 | General Objection No. 15 (regarding Definitions), including without limitation MGA

15 | Mexico's objection to the definition of the terms BRATZ, BRATZ PRODUCT, and

16 | BRATZ DOLL. MGA Mexico further objects to the request to the extent it seeks the

17 | production of documents that are protected from disclosure under any applicable

18 | privilege, doctrine or immunity, including without limitation the attorney-client

19 | privilege, the work product doctrine, the right of privacy, and all other privileges

20 | recognized under the constitutional, statutory or decisional law of the United States

21 | of America, the State of California or any other applicable jurisdiction, including, but

22 | not limited to, such laws existing in the United Mexican States. MGA Mexico

23 | further objects to this request on the grounds that it is overly broad and unduly

24 | burdensome in that it seeks documents not relevant to the claims or defenses in this

25 | action and not reasonably calculated to lead to the discovery of admissible evidence.

26 | Mattel has not demonstrated how samples of *each and every* BRATZ PRODUCT

27 | sold by YOU and YOUR licensees could be relevant to the claims and defenses in

28 | this action. The request is not limited to the subject matter of this action and is thus

-9-

MGAE de MEXICO S.R.I. de C.V.'S OBJECTIONS AND RESPONSES TO MATTEL, INC.'S
FIRST SET OF REQUESTS FOR DOCUMENTS AND THINGS NO. - CV 04-9049 SGL (RNBx)
256415.05-Palo Alto Server 1A                                                                MSW - Draft December 19, 2007 - 1.25 PM

EXHIBIT 41

PAGE 192

1   impermissibly overbroad. <u>See</u> Magistrate Judge Infante's August 13, 2007 Order

2   ("Aug. 13 Order") at 9:17-20; <u>see also</u> Magistrate Judge Infante's May 22, 2007

3   Order ("May 22 Order") at 21:5-7 (requests that require production of documents

4   "merely mention[ing] MGA and Bratz but that otherwise have no relevance to the

5   claims and defenses in the suit" are impermissibly overbroad). MGA Mexico further

6   objects to this request as being overly broad and unduly burdensome on the grounds

7   that it is not limited in time or geographic scope. MGA Mexico further objects to

8   this request on the grounds that the terms BRATZ, BRATZ PRODUCT, and BRATZ

9   DOLL render the request vague, ambiguous, overly broad and unduly burdensome.

10   MGA Mexico further objects to the term "sample" as vague and ambiguous. MGA

11   Mexico further objects to the request to the extent that it seeks items that by reason

12   of public distribution or otherwise are already in Mattel's possession or are readily

13   accessible to Mattel. MGA Mexico further objects to the request to the extent that it

14   seeks items not in MGA Mexico's possession, custody or control. MGA Mexico

15   further objects to the request to the extent it seeks confidential, proprietary or

16   commercially sensitive information, the disclosure of which would be inimical to the

17   business interests of MGA Mexico.

18       MGA Mexico further objects to this request as cumulative, duplicative, and

19   unduly burdensome to the extent that it seeks items previously requested by Mattel

20   and/or produced in response to Mattel's document requests.

21   <u>REQUEST FOR PRODUCTION NO. 2:</u>

22       All DOCUMENTS or tangible things that any of the FORMER MATTEL

23   EMPLOYEES removed, sent or transferred from MATTEL or removed, deleted,

24   copied, reproduced or transferred from any MATTEL computer or electronic storage

25   device.

26   <u>RESPONSE TO REQUEST FOR PRODUCTION NO. 2:</u>

27       MGA Mexico incorporates by reference its General Response and General

28   Objections above, as though fully set forth herein and specifically incorporates

EXHIBIT 41

PAGE 193

-10-

MGAE de MEXICO S.R.I. de C.V.'S OBJECTIONS AND RESPONSES TO MATTEL, INC.'S
FIRST SET OF REQUESTS FOR DOCUMENTS AND THINGS NO. - CV 04-9049 SGL (RNBx)
256415.05-Palo Alto Server 1A           MSW - Draft December 19, 2007 - 1:25 PM

1  General Objection No. 15 (regarding Definitions), including without limitation MGA
2  Mexico's objection to the definition of the terms FORMER MATTEL EMPLOYEES
3  and MATTEL. MGA Mexico further objects to the request to the extent it seeks the
4  production of documents that are protected from disclosure under any applicable
5  privilege, doctrine or immunity, including without limitation the attorney-client
6  privilege, the work product doctrine, the right of privacy, and all other privileges
7  recognized under the constitutional, statutory or decisional law of the United States
8  of America, the State of California or any other applicable jurisdiction, including, but
9  not limited to, such laws existing in the United Mexican States. MGA Mexico
10 further objects to this request on the grounds that it is overly broad and unduly
11 burdensome in that it seeks documents not relevant to the claims or defenses in this
12 action and not reasonably calculated to lead to the discovery of admissible evidence.
13 Mattel has not demonstrated how *all* DOCUMENTS or tangible things that any of
14 the FORMER MATTEL EMPLOYEES removed, sent or transferred from MATTEL
15 or removed, deleted, copied, reproduced or transferred from any MATTEL computer
16 or electronic storage device, could be relevant to the claims and defenses in this
17 action. The request is not limited to the subject matter of this action and is thus
18 impermissibly overbroad. See Aug. 13 Order at 9:17-20; May 22 Order at 21:5-7.
19 MGA Mexico further objects to this request as being overly broad and unduly
20 burdensome on the grounds that it is not limited in time or geographic scope. MGA
21 Mexico further objects to this request on the grounds that the terms FORMER
22 MATTEL EMPLOYEES and MATTEL render the request vague, ambiguous, overly
23 broad and unduly burdensome. MGA Mexico further objects to the terms
24 "removed," "transferred" and "reproduced" as vague and ambiguous in the context of
25 this request. MGA Mexico further objects to the request to the extent that it seeks
26 documents that by reason of public filing, public distribution or otherwise are already
27 in Mattel's possession or are readily accessible to Mattel. MGA Mexico further
28

EXHIBIT __47__
PAGE __794__

-11-

1 objects to the request to the extent that it seeks documents not in MGA Mexico's
2 possession, custody or control.

3     MGA Mexico further objects to this request as cumulative, duplicative, and
4 unduly burdensome to the extent that it seeks documents previously requested by
5 Mattel and/or produced in response to Mattel's document requests.

6 REQUEST FOR PRODUCTION NO. 3:

7     All DOCUMENTS which YOU contend were prepared by any FORMER
8 MATTEL EMPLOYEE for the benefit of YOU at any time prior to April 20, 2004.

9 RESPONSE TO REQUEST FOR PRODUCTION NO. 3:

10     MGA Mexico incorporates by reference its General Response and General
11 Objections above, as though fully set forth herein and specifically incorporates
12 General Objection No. 15 (regarding Definitions), including without limitation MGA
13 Mexico's objection to the definition of the term FORMER MATTEL EMPLOYEE.
14 MGA Mexico further objects to the request to the extent it seeks the production of
15 documents that are protected from disclosure under any applicable privilege, doctrine
16 or immunity, including without limitation the attorney-client privilege, the work
17 product doctrine, the right of privacy, and all other privileges recognized under the
18 constitutional, statutory or decisional law of the United States of America, the State
19 of California or any other applicable jurisdiction, including, but not limited to, such
20 laws existing in the United Mexican States. MGA Mexico further objects to this
21 request on the grounds that it is overly broad and unduly burdensome in that it seeks
22 documents not relevant to the claims or defenses in this action and not reasonably
23 calculated to lead to the discovery of admissible evidence. Mattel has not
24 demonstrated how *all* DOCUMENTS prepared by any FORMER MATTEL
25 EMPLOYEE for the benefit of MGA Mexico at any time prior to April 20, 2004
26 could be relevant to the claims and defenses in this action. The request is not limited
27 to the subject matter of this action and is thus impermissibly overbroad. See Aug. 13
28 Order at 9:17-20; May 22 Order at 21:5-7. MGA Mexico further objects to this

EXHIBIT 47
PAGE 795

-12-

MGAE de MEXICO S.R.I. de C.V.'S OBJECTIONS AND RESPONSES TO MATTEL, INC.'S
FIRST SET OF REQUESTS FOR DOCUMENTS AND THINGS NO. - CV 04-9049 SGL (RNBx)
256415.05-Palo Alto Server 1A      MSW - Draft December 19, 2007 - 1:25 PM

1  public filing, public distribution or otherwise are already in Mattel's possession or

2  are readily accessible to Mattel.  MGA Mexico further objects to the request to the

3  extent that it seeks documents not in MGA Mexico's possession, custody or control.

4  MGA Mexico further objects to the request to the extent it seeks confidential,

5  proprietary or commercially sensitive information, the disclosure of which would be

6  inimical to the business interests of MGA Mexico.  MGA Mexico further objects to

7  the request to the extent it violates the privacy rights of third parties to their private,

8  confidential, proprietary or trade secret information.

9      MGA Mexico further objects to this request as cumulative, duplicative, and

10  unduly burdensome to the extent that it seeks documents previously requested by

11  Mattel and/or produced in response to Mattel's document requests.

12  REQUEST FOR PRODUCTION NO. 20:

13      All DOCUMENTS that REFER OR RELATE TO travel to Los Angeles,

14  California by any of the FORMER MATTEL EMPLOYEES between January 1,

15  2004 and April 20, 2004.

16  RESPONSE TO REQUEST FOR PRODUCTION NO. 20:

17      MGA Mexico incorporates by reference its General Response and General

18  Objections above, as though fully set forth herein and specifically incorporates

19  General Objection No. 15 (regarding Definitions), including without limitation MGA

20  Mexico's objection to the definition of the terms REFER OR RELATE TO and

21  FORMER MATTEL EMPLOYEES.  MGA Mexico further objects to the request to

22  the extent it seeks the production of documents that are protected from disclosure

23  under any applicable privilege, doctrine or immunity, including without limitation

24  the attorney-client privilege, the work product doctrine, the right of privacy, and all

25  other privileges recognized under the constitutional, statutory or decisional law of

26  the United States of America, the State of California or any other applicable

27  jurisdiction, including, but not limited to, such laws existing in the United Mexican

28  States.  MGA Mexico further objects to this request on the grounds that it is overly

-36-

MGAE de MEXICO S.R.I. de C.V.'S OBJECTIONS AND RESPONSES TO MATTEL, INC.'S
FIRST SET OF REQUESTS FOR DOCUMENTS AND THINGS NO. - CV 04-9049 SGL (RNBx)
256415.05-Palo Alto Server 1A                                    MSW - Draft December 19, 2007 - 1:25 PM

EXHIBIT ___47___
PAGE ___796___

1  broad and unduly burdensome in that it seeks documents not relevant to the claims or

2  defenses in this action and not reasonably calculated to lead to the discovery of

3  admissible evidence.  Mattel has not demonstrated how *all* DOCUMENTS that

4  REFER OR RELATE TO travel to Los Angeles, California by any of the FORMER

5  MATTEL EMPLOYEES between January 1, 2004 and April 20, 2004 could be

6  relevant to the claims and defenses in this action.  The request is not limited to the

7  subject matter of this action and is thus impermissibly overbroad.  See Aug. 13 Order

8  at 9:17-20; May 22 Order at 21:5-7.  MGA Mexico further objects to this request on

9  the grounds that the terms REFER OR RELATE TO and FORMER MATTEL

10  EMPLOYEES render the request vague, ambiguous, overly broad and unduly

11  burdensome.  MGA Mexico further objects to the request to the extent that it seeks

12  documents that by reason of public filing, public distribution or otherwise are already

13  in Mattel's possession or are readily accessible to Mattel.  MGA Mexico further

14  objects to the request to the extent that it seeks documents not in MGA Mexico's

15  possession, custody or control.  MGA Mexico further objects to the request to the

16  extent it seeks confidential, proprietary or commercially sensitive information, the

17  disclosure of which would be inimical to the business interests of MGA Mexico.

18  MGA Mexico further objects to the request to the extent it violates the privacy rights

19  of third parties to their private, confidential, proprietary or trade secret information.

20  MGA Mexico further objects to this request as cumulative, duplicative, and

21  unduly burdensome to the extent that it seeks documents previously requested by

22  Mattel and/or produced in response to Mattel's document requests.

23  REQUEST FOR PRODUCTION NO. 21:

24  All DOCUMENTS that REFER OR RELATE to any COMMUNICATIONS

25  between YOU and any of the FORMER MATTEL EMPLOYEES prior to April 20,

26  2004, including without limitation all telephone records, logs, notes, calendars,

27  planners, diaries, letters and other DOCUMENTS relating thereto.

28

EXHIBIT __47__

PAGE __797__

-37-

RESPONSE TO REQUEST FOR PRODUCTION NO. 21:

MGA Mexico incorporates by reference its General Response and General Objections above, as though fully set forth herein and specifically incorporates General Objection No. 15 (regarding Definitions), including without limitation MGA Mexico's objection to the definition of the terms REFER OR RELATE and FORMER MATTEL EMPLOYEES. MGA Mexico further objects to the request to the extent it seeks the production of documents that are protected from disclosure under any applicable privilege, doctrine or immunity, including without limitation the attorney-client privilege, the work product doctrine, the right of privacy, and all other privileges recognized under the constitutional, statutory or decisional law of the United States of America, the State of California or any other applicable jurisdiction, including, but not limited to, such laws existing in the United Mexican States. MGA Mexico further objects to this request on the grounds that it is overly broad and unduly burdensome in that it seeks documents not relevant to the claims or defenses in this action and not reasonably calculated to lead to the discovery of admissible evidence. Mattel has not demonstrated how *all* DOCUMENTS that REFER OR RELATE to any COMMUNICATIONS between YOU and any of the FORMER MATTEL EMPLOYEES prior to April 20, 2004, could be relevant to the claims and defenses in this action. The request is not limited to the subject matter of this action and is thus impermissibly overbroad. See Aug. 13 Order at 9:17-20; May 22 Order at 21:5-7. MGA Mexico further objects to this request as being overly broad and unduly burdensome on the grounds that it is not sufficiently limited in geographic scope. MGA Mexico further objects to this request on the grounds that the terms REFER OR RELATE and FORMER MATTEL EMPLOYEES render the request vague, ambiguous, overly broad and unduly burdensome. MGA Mexico further objects to the phrase "other DOCUMENTS relating thereto" as vague and ambiguous. MGA Mexico further objects to the request to the extent that it seeks documents that by reason of public filing, public distribution or otherwise are already

-38-

MGAE de MEXICO S.R.I. de C.V.'S OBJECTIONS AND RESPONSES TO MATTEL, INC.'S
FIRST SET OF REQUESTS FOR DOCUMENTS AND THINGS NO. - CV 04-9049 SGL (RNBx)
256415 05-Palo Alto Server 1A                                                     MSW - Draft December 19, 2007 - 1:25 PM

EXHIBIT ___47___
PAGE ___198___

1  in Mattel's possession or are readily accessible to Mattel.  MGA Mexico further

2  objects to the request to the extent that it seeks documents not in MGA Mexico's

3  possession, custody or control.  MGA Mexico further objects to the request to the

4  extent it seeks confidential, proprietary or commercially sensitive information, the

5  disclosure of which would be inimical to the business interests of MGA Mexico.

6  MGA Mexico further objects to the request to the extent it violates the privacy rights

7  of third parties to their private, confidential, proprietary or trade secret information.

8      MGA Mexico further objects to this request as cumulative, duplicative, and

9  unduly burdensome to the extent that it seeks documents previously requested by

10  Mattel and/or produced in response to Mattel's document requests.

11  REQUEST FOR PRODUCTION NO. 22:

12      All DOCUMENTS that REFER OR RELATE to any COMMUNICATIONS

13  between YOU and any of the FORMER MATTEL EMPLOYEES that REFER OR

14  RELATE TO MATTEL.

15  RESPONSE TO REQUEST FOR PRODUCTION NO. 22:

16      MGA Mexico incorporates by reference its General Response and General

17  Objections above, as though fully set forth herein and specifically incorporates

18  General Objection No. 15 (regarding Definitions), including without limitation MGA

19  Mexico's objection to the definition of the terms REFER OR RELATE, FORMER

20  MATTEL EMPLOYEES, and MATTEL.  MGA Mexico further objects to the

21  request to the extent it seeks the production of documents that are protected from

22  disclosure under any applicable privilege, doctrine or immunity, including without

23  limitation the attorney-client privilege, the work product doctrine, the right of

24  privacy, and all other privileges recognized under the constitutional, statutory or

25  decisional law of the United States of America, the State of California or any other

26  applicable jurisdiction, including, but not limited to, such laws existing in the United

27  Mexican States. MGA Mexico further objects to this request on the grounds that it is

28  overly broad and unduly burdensome in that it seeks documents not relevant to the

-39-

EXHIBIT   47

~ 1 OF        799

1  overly broad and unduly burdensome in that it seeks documents not relevant to the

2  claims or defenses in this action and not reasonably calculated to lead to the

3  discovery of admissible evidence.  The request is not limited to the subject matter of

4  this action and is thus impermissibly overbroad.  See Aug. 13 Order at 9:17-20; May

5  22 Order at 21:5-7.  MGA Mexico further objects to this request as being overly

6  broad and unduly burdensome on the grounds that it is not limited in time or

7  geographic scope.  MGA Mexico further objects to the request to the extent that it

8  seeks documents that by reason of public filing, public distribution or otherwise are

9  already in Mattel's possession or are readily accessible to Mattel.  MGA Mexico

10  further objects to the request to the extent that it seeks documents not in MGA

11  Mexico's possession, custody or control.  MGA Mexico further objects to the request

12  to the extent it seeks confidential, proprietary or commercially sensitive information,

13  the disclosure of which would be inimical to the business interests of MGA Mexico.

14     MGA Mexico further objects to this request as cumulative, duplicative, and

15  unduly burdensome to the extent that it seeks documents previously requested by

16  Mattel and/or produced in response to Mattel's document requests.

17  REQUEST FOR PRODUCTION NO. 143:

18     To the extent not produced in response to any other Request for Production, all

19  DOCUMENTS and tangible things upon which YOU intend to rely in this ACTION.

20  RESPONSE TO REQUEST FOR PRODUCTION NO. 143:

21     MGA Mexico incorporates by reference its General Response and General

22  Objections above, as though fully set forth herein and specifically incorporates

23  General Objection No. 15 (regarding Definitions).  MGA Mexico further objects to

24  the request to the extent it seeks the production of documents that are protected from

25  disclosure under any applicable privilege, doctrine or immunity, including without

26  limitation the attorney-client privilege, the work product doctrine, the right of

27  privacy, and all other privileges recognized under the constitutional, statutory or

28  decisional law of the United States of America, the State of California or any other

-214-

MGAE de MEXICO S.R.I. de C.V.'S OBJECTIONS AND RESPONSES TO MATTEL, INC.'S
FIRST SET OF REQUESTS FOR DOCUMENTS AND THINGS NO. - CV 04-9049 SGL (RNBx)
256415.05-Palo Alto Server 1A                                    MSW - Draft December 19, 2007 - 1:25 PM

EXHIBIT    47

PAGE    800

1    applicable jurisdiction, including, but not limited to, such laws existing in the United

2    Mexican States. MGA Mexico further objects to this request on the grounds that it is

3    overly broad and unduly burdensome in that it seeks documents not relevant to the

4    claims or defenses in this action and not reasonably calculated to lead to the

5    discovery of admissible evidence. The request is not limited to the subject matter of

6    this action and is thus impermissibly overbroad. See Aug. 13 Order at 9:17-20; May

7    22 Order at 21:5-7. MGA Mexico further objects to this request as being overly

8    broad and unduly burdensome on the grounds that it is not limited in time or

9    geographic scope. MGA Mexico further objects to the request to the extent that it

10    seeks documents that by reason of public filing, public distribution or otherwise are

11    already in Mattel's possession or are readily accessible to Mattel. MGA Mexico

12    further objects to the request to the extent that it seeks documents not in MGA

13    Mexico's possession, custody or control. MGA Mexico further objects to the request

14    to the extent it seeks confidential, proprietary or commercially sensitive information,

15    the disclosure of which would be inimical to the business interests of MGA Mexico.

16    Such information may also be subject to protective orders governing other litigations

17    thereby precluding disclosure in response to this request.

18      MGA Mexico further objects to this request as cumulative, duplicative, and

19    unduly burdensome to the extent that it seeks documents previously requested by

20    Mattel and/or produced in response to Mattel's document requests.

21    REQUEST FOR PRODUCTION NO. 144:

22      All DOCUMENTS that REFER OR RELATE TO Machado's citizenship or

23    residency status in the United States after January 1, 2004.

24    RESPONSE TO REQUEST FOR PRODUCTION NO. 144:

25      MGA Mexico incorporates by reference its General Response and General

26    Objections above, as though fully set forth herein and specifically incorporates

27    General Objection No. 15 (regarding Definitions), including without limitation MGA

28    Mexico's objection to the definition of the term REFER OR RELATE TO. MGA

MGAE de MEXICO S.R.I. de C.V.'S OBJECTIONS AND RESPONSES TO MATTEL, INC.'S
FIRST SET OF REQUESTS FOR DOCUMENTS AND THINGS NO. - CV 04-9049 SGL (RNBx)
256415.05-Palo Alto Server 1A        MSW - Draft December 19, 2007 - 1:25 PM

EXHIBIT 47

PAGE 801

1   seeks documents not in MGA Mexico's possession, custody or control.  MGA

2   Mexico further objects to the request to the extent it seeks confidential, proprietary

3   or commercially sensitive information, the disclosure of which would be inimical to

4   the business interests of MGA Mexico.  Such information may also be subject to

5   protective orders governing other litigations thereby precluding disclosure in

6   response to this request.  MGA Mexico further objects to the request to the extent it

7   violates the privacy rights of third parties to their private, confidential, proprietary or

8   trade secret information.

9         MGA Mexico further objects to this request as cumulative, duplicative, and

10   unduly burdensome to the extent that it seeks documents previously requested by

11   Mattel and/or produced in response to Mattel's document requests.

12

13   DATED:  December 2/, 2007       SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP

14

15                                 By:

16                                       THOMAS J. NOLAN

17                         Attorneys for Counter-Defendants,

18                       MGA ENTERTAINMENT, INC., ISAAC LARIAN, MGA ENTERTAINMENT

19                       (HK) LIMITED, AND MGAE de MEXICO S.R.L. de C.V.

20

21

22

23

24

25

26

27

28

MGAE de MEXICO S.R.L. de C.V.'S OBJECTIONS AND RESPONSES TO MATTEL, INC.'S
FIRST SET OF REQUESTS FOR DOCUMENTS AND THINGS NO. - CV 04-9049 SGL (RNBx)
256415.05-Palo Alto Server 1A                 MSW - Draft December 19, 2007 - 1:25 PM

EXHIBIT    47
PAGE    802

# EXHIBIT 48

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
<u>CIVIL MINUTES -- GENERAL</u>

Case No. CV 04-09049 SGL(RNBx)                    Date: July 9, 2009
Title:      MATTEL, INC. V. MGA ENTERTAINMENT, INC., et al.
================================================================
PRESENT:   HONORABLE STEPHEN G. LARSON, U.S. DISTRICT JUDGE

    Cindy Sasse                              None Present
    Courtroom Deputy                         Court Reporter

ATTORNEYS PRESENT FOR              ATTORNEYS PRESENT FOR
PLAINTIFFS:                        DEFENDANTS:

None Present                       None Present

PROCEEDINGS:    ORDER GRANTING EX PARTE APPLICATION RE TEMPORARY
RECEIVERSHIP (DOCKET #5728)

ORDER GRANTING EX PARTE APPLICATION RE COST
SHIFTING (DOCKET #5865)

ORDER GRANTING IN PART EX PARTE APPLICATION FOR
RELEASE OF JUROR TRANSCRIPTS (DOCKET #5805)

ORDER GRANTING IN PART MATTEL'S MOTION RE
DISCOVERY MASTER ORDER NO 27 AND REMANDING
DISCOVERY MASTER ORDER NO. 27 FOR
RECONSIDERATION BY THE DISCOVERY MASTER IN LIGHT
OF THE FILING OF THE TAAC (DOCKET #5561)

ORDER DENYING MOTION TO STRIKE THE FORENSIC
AUDITOR'S REPORTS (DOCKET #5705)

MINUTES FORM 90
CIVIL -- GEN                          1          Initials of Deputy Clerk __cls_____

EXHIBIT 48
PAGE 803

## I. ORDER GRANTING EX PARTE APPLICATION
## RE TEMPORARY RECEIVERSHIP (DOCKET #5728)

Because the only opposition to the Ex Parte Application regarding the winding up of the Temporary Receivership involves the issue of cost-shifting, which is addressed separately, below, the Court **GRANTS** the Ex Parte Application.  A separate order addressing this Ex Parte Application has been concurrently filed.

## II. ORDER GRANTING EX PARTE APPLICATION RE
## COST SHIFTING (DOCKET #5865)

The MGA parties' opposition to the Temporary Receiver's Ex Parte Application argued that the costs of the Temporary Receivership should be shifted to Mattel (as the party who sought appointment of a Temporary Receiver).  However, the Court has previously ruled that, at some yet-to-be defined date in the future, the Court will consider whether to shift the costs of both the Temporary Receivership and the Forensic Audit.  Therefore, Mattel filed an Ex Parte Application seeking either to be relieved of the responsibility to respond to the MGA parties' argument or, alternatively, for an order setting a briefing schedule on the issue.  It is not the intention of the Court to address the cost-shifting issue at this time; rather, as the Court has stated previously on the record, that issue is more efficiently resolved at a later date, most likely a date after completion of Phase 2 of the trial.  Accordingly, the Court **GRANTS** Mattel's Ex Parte Application re Cost Shifting.  Mattel is relieved of any duty to respond to MGA's argument regarding the appropriate allocation of costs arising from the Temporary Receiver that is set forth in the MGA parties's June 26, 2009 Opposition to the Temporary Receiver's Ex Parte Application.

## III. ORDER GRANTING IN PART EX PARTE APPLICATION FOR
## RELEASE OF JUROR TRANSCRIPTS (DOCKET #5805)

The Court has received and reviewed the MGA Parties' Ex Parte Application For Partial Release of *In Camera* Juror Interview Transcripts, as well as the Opposition, the Reply, and the accompanying exhibits.  The Court **GRANTS IN PART** the Ex Parte Application.  Although the Court declines to award the relief sought, the Court will take steps to ensure that the transcript of the juror interviews are provided to the Ninth Circuit for its consideration of the appeal filed by the MGA parties.

The relevant *in camera* juror interviews were conducted on July 25, 2008; the findings made by the Court on the basis of those interviews are set forth in detail in the Court's Order Denying Motion for Mistrial, dated August 8, 2008.  Counsel for the parties agreed that the juror interviews, which were conducted mid-trial, should be conducted *in camera*, and the MGA parties did not request that the Court grant them access to the transcripts to prepare their Motion for Mistrial.  The Court indicated on the

MINUTES FORM 90
CIVIL -- GEN                                        2                    Initials of Deputy Clerk __cls_____



EXHIBIT 48
PAGE 804

record around the time of the filing of the Motion for Mistrial that it was not the Court's intent to grant the parties access to the transcripts.

After the conclusion of the trial, the MGA parties did not at any time request this Court grant access to the transcripts. To the contrary, some ten months passed between the date of the Order Denying Motion for Mistrial and the MGA parties' first post-trial request for access to those transcripts. That request was made to the Ninth Circuit, not this Court, on June 10, 2009. When the Ninth Circuit denied the request in favor of the MGA's presentation of the issue to this Court in the first instance, the MGA parties thereafter filed the present Ex Parte Application in a expeditious manner.

Ostensibly, as set forth in both the Motion filed before the Ninth Circuit and the Ex Parte Application before this Court, the reason the MGA parties seek access to those transcripts is so that they may use them to challenge the Court's Order Denying Motion for Mistrial. Although the MGA parties filed its Notice of Appeal on May 4, 2009, and although that Notice clearly indicated that the Order Denying Motion for Mistrial would be implicated in the appeal, the MGA parties failed to file its Motion seeking release of the transcripts until June 10, 2009. The MGA parties' failure to seek this relief until a month after they filed their Notice of Appeal and a month before their opening brief was due, and their decision to present the issue of release of the transcripts to the appellate court (rather than this Court) in the first instance, created the very urgency that cause them to seek ex parte relief from this Court. As such, the Court declines to grant the relief sought.

Nevertheless, in the interest of due process and in order to facilitate the full consideration of the issue by the Ninth Circuit, the Court will take steps to ensure that the transcripts of the *in camera* interviews are provided to the Ninth Circuit for *in camera* filing.

## IV. ORDER GRANTING IN PART MATTEL'S MOTION RE DISCOVERY MASTER ORDER NO 27 AND REMANDING DISCOVERY MASTER ORDER NO. 27 FOR RECONSIDERATION BY THE DISCOVERY MASTER IN LIGHT OF THE FILING OF THE TAAC (DOCKET #5561)

In the challenged portion of Discovery Master Order No. 27 ("DM Order No. 27"), the Discovery Master denied Mattel's Motion to Compel discovery sought by service of a subpoena on non-party Bingham McCutchen LLP ("Bingham"), a law firm that represents Intervenor Omni 808, as well as a number of non-party entities that are familiar to those involved in this litigation: OmniNet Capital, LLC ("OmniNet"), Vision Capital, LLC ("Vision"), IGWT Group, LLC ("IGWT"), and IGWT 826 Investments, LLC ("IGWT 826"). Broadly categorized, the subpoena sought production of (1) fee agreements relating to Vision and Omni 808; (2) documents regarding the formation, control, and financing of Omni 808, Vision, and Lexington Financial Limited

EXHIBIT __48__
PAGE __805__

("Lexington"); (3) documents identifying stakeholders and officers of Omni 808, Vision, and Lexington; (4) all contracts relating to Omni 808, Vision Capital, and Lexington; (5) all communications relating to Omni 808, Vision Capital, and Lexington, excluding attorney-client privileged documents; and (6) Bingham's representation of MGAE and certain named individuals who have some connection with MGAE, including a number of Mr. Larian's family members.

The Discovery Master correctly recognized the essential legal standard in assessing whether a subpoena may be enforced.  The information must satisfy the discovery relevance standard, i.e., it must be "'reasonably calculated to lead to the discovery of admissible evidence.'" DM Order No. 27 at 19 (quoting Fed. R. Civ. P. 26(b)(1)).  The decision of whether to enforce a subpoena ultimately implicates a balancing test that pits relevance of the materials sought and need to the requesting party against hardship to the party resisting the subpoena.  DM Order No. 27 at 20.  Non-parties are generally required to bear lesser burdens than parties in responding to subpoenas.  Exxon Shipping Co. v. United States Dept. of Interior, 34 F.3d 774, 779 (9th Cir. 1994) ("The Federal Rules also afford nonparties special protection against the time and expense of complying with subpoenas.").

However, the Discovery Master overstated the burden of proof allocated to Mattel, as the party seeking discovery. See DM Order No. 27 at 20 ("As the party moving to compel compliance with the subpoena, Mattel bears the initial burden of establishing that the information sought is relevant and necessary to the claims or defenses at issue.")  This standard is both overstated and incomplete.  It is overstated in that Mattel need not show that the evidence sought is "necessary to the claims or defenses."  Although Mattel indeed bears the burden of establishing relevancy, that showing is not one of "necessity."  Rather, Mattel must bear the burden of establishing the discovery relevancy standard -- that the materials sought are "reasonably calculated to lead to the discovery of admissible evidence" -- is met.  It need not establish that the materials sought are "necessary" to its case.

This point leads to the manner in which the stated burden is incomplete.  As clearly articulated by cases cited by Bingham, although Mattel bears an initial burden of establishing relevancy, the party resisting discovery thereafter has the burden of establishing that discovery should be denied.  See Bryant v. Ochoa, 2009 WL 1390794 at *1 (S.D. Cal. 2009) ("The party seeking to compel discovery has the burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)(1). . . . Thereafter, the party opposing discovery has the burden of showing that the discovery should be prohibited, and the burden of clarifying, explaining or supporting its objections."); DIRECTV, Inc. v. Trone, 209 F.R.D. 455, 458 (C.D. Cal. 2002) (same); see also Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir. 1975) (reversing the district court's issuance of a protective order based on a failure of the party resisting discovery to meet its burden by asserting that the defendant's deposition would merely yield cumulative evidence).

EXHIBIT __48__
PAGE ____806__

The effect of this subtle variation on the burden of proof from that stated by the
Discovery Master is magnified by the recent filing of the TAAC, which significantly
heightens the relevancy of the issue of how the MGA parties and the parties
represented by Bingham may be related, the formation of certain of those entities, and
other issues implicated by Mattel's requests.  Because the question of relevance is
featured so prominently in the quintessential balancing test to which the present
discovery motion was subjected, the filing of the TAAC dramatically altered the calculus
that underlies the conclusions reached in DM No. 27.

For reasons related to judicial economy and preservation of scarce judicial
resources (which this case has stretched to the outer limits), the Court defers decision,
in light of the changed calculus that has occurred as the result of the filing of the TAAC,
of the issues presented in the challenged portions of DM No. 27 to the Discovery
Master.  For that reason, the Court **REMANDS** the challenged portions of DM No. 27 to
the Discovery Master for his reconsideration and re-balancing in light of the recently
filed TAAC.  The Discovery Master may, in his discretion, set the matter for further
briefing and/or hearing, he may take the matter under submission based on the existing
record, or he may take other action as he deems appropriate to resolve the present
issues.

Notwithstanding the remand of DM Order No. 27, one issue raised by Mattel
requires further consideration by the Court.  At page 25 of DM Order No. 27, the
Discovery Master appears to impose a blanket prohibition on discovery of materials that
are in the possession of a subpoena recipient, but that are related to a non-party over
whom the Court has not been shown to have jurisdiction.  The Discovery Master cites
no legal authority for such a blanket prohibition, and the Court, in its own research, has
found none.  Such a blanket prohibition precludes the application of the balancing test
that applies almost universally to discovery motions; accordingly, and because this
blanket prohibition is unprecedented, the Court finds that it is contrary to law.  As to this
narrow issue, the Court **GRANTS** Mattel's Motion.  The issue of discovery of materials
relating to Lexington is **REMANDED** to the Discovery Master for reconsideration in light
of this ruling and in light of the filing of the TAAC.

## V. ORDER DENYING MOTION TO STRIKE
## THE FORENSIC AUDITOR'S REPORTS (DOCKET #5705)

In an unsealed filing that has since been ordered sealed by the Court, counsel for
Omni 808 Investors, LLC ("Omni 808"), Todd E. Gordinier, made unwarranted,
unsubstantiated personal attacks against the Court-Appointed Forensic Auditor, Ronald
L. Durkin.  Mr. Gordinier's selective public disclosure of portions of the Forensic
Auditor's Summary Report, coupled with the maintenance of the Summary Report, as
well as the later-filed Responsive Report and Final Report, under seal in their entirety,
has led to an unbalanced public presentation of the issues discussed therein.  In an

MINUTES FORM 90
CIVIL -- GEN                                    5                    Initials of Deputy Clerk __cls_____

EXHIBIT __48__
PAGE __807__

attempt to cure this deficiency, the Court has considered the possibility that it should simply unseal the relevant Reports and allow those Reports to speak for themselves.

Because the MGA entities were the primary subject of the Forensic Audit, the MGA parties have, quite understandably, objected to the proposed unsealing. Mattel, for its part, advocates quite emphatically, and not unreasonably, that the Reports should be unsealed in light of the selective disclosure. See Tr. at 31-32 ("It's the underlying analysis that refutes the selective disclosures that MGA and Omni made in a public forum to smear . . . both Mr. Durkin and Mattel.") At the other end of the spectrum, Omni 808 has moved to strike the Reports in their entirety.

In the end, although the Court does not order the unsealing of the Reports, it **DENIES** the Motion to Strike. The Court ordered the Forensic Audit to evaluate whether a receiver should be appointed; as the record bears witness, the Court eventually rejected the suggestion that it should appoint a permanent receiver, and the Court has instead appointed an MGA Monitor with more limited powers than a receiver. Nevertheless, the fact that the Reports were intended to serve a very limited purpose does not mean that there is no possibility that the Forensic Auditor's Reports will not serve any purpose henceforth.

As it currently stands, the Court **ORDERS** that no party shall cite to or rely upon the Reports for any purpose absent further Order of this Court.[1] However, the documents attached to the Reports, to the extent they are otherwise discoverable, are not insulated from discovery on the basis that they have been made part of the Reports. Conversely, documents, such as charts and interview notes, that were prepared by the Forensic Auditor are the property of the Court and are not subject to discovery or use in this or any other litigation by any party or non-party.[2]

Had it been counsel for the MGA parties who mounted the unwarranted, unsubstantiated, and public personal attacks on Mr. Durkin, the Court would find, notwithstanding the sensitive information contained therein, the unsealing of the Reports was an appropriate remedy for the selective disclosure.[3] However, here, it is

---

[1] This Order does not supersede the Court's Order permitting the Forensic Auditor to share information with the Court-Appointed Monitor.

[2] Toward that end, the Court CLARIFIES to the parties that the work papers, drafts, notes, detailed time records, and any other materials prepared by or at the direction of the Forensic Auditor are the property of the Court. The Court ORDERS the Forensic Auditor, as the custodian of those records on behalf of the Court, to retain those materials, whether maintained in electronic, hard copy, or any other medium, until further order of the Court.

[3] As it stands, counsel for MGAE, James I. Stang, wisely sought, and was granted, leave to file his more restrained, but just as unwarranted and unsubstantiated, personal attacks on Mr. Durkin under seal. See MGA Entertainment, Inc.'s Response to Final In Camera Report of Forensic Auditor Ronald L.

Initials of Deputy Clerk __cls_____

EXHIBIT __4 8__
PAGE ___808__

counsel for Omni 808 who made those attacks public, and although Mattel maintains that both the MGA parties and Omni 808 are jointly responsible for the selective disclosure, see July 6, 2009, Tr. at 33, whether, or to what extent, the MGA parties act or have acted in concert is an issue to be decided in Phase 2 of this action.

Nevertheless, Mr. Gordinier's attack on Mr. Durkin cannot pass without comment by the Court. The Court's comments are directed toward Mr. Gordinier personally, which is not the Court's usual practice. Although the irony of this form of address is not lost on the Court (given the subject of this Order), it is appropriate. Mr. Gordinier signed all three filings in which the personal attacks appear, and continues to stand behind those filings. Moreover, Mr. Gordinier expressly and unabashedly claimed personal responsibility for the brief that was not filed under seal, by both stating that he gave it a lot of thought before filing it and by implicitly acknowledging that although he considered filing his brief under seal, he ultimately rejected that course of action. See May 18, 2009 Tr. at 46-47 ("My brief speaks for itself. We have nothing to hide. . . . I didn't feel it appropriate, necessary, or desirable to file my brief under seal. And I don't have a problem with the Court or anybody reading what I have to say, because I gave it a lot of thought, and I gave it at lot of consideration.").

At the July 6, 2009, hearing, the Court outlined its concerns that while the attacks on Mr. Durkin were public, the Reports are not, and that "it doesn't seem fair" to the Court to allow those allegations to stand alone without a chance to respond to them. July 6, 2009, Tr. at 25-26. In response, Mr. Gordinier contended that his comments "respond[ed] to the report," and that "[w]hat we said was that there were problems with that report." July 6, 2009, Tr. at 28. This statement is an implicit denial that any personal attacks were made; however, as set forth in great detail below, the record belies Mr. Gordinier's *post hoc* protestations.

Lest Mr. Gordinier's statement reflecting his implicit denial that he engaged in personal attacks be perceived as one being made at oral argument without ample time to reflect upon its significance, the statement is also made by Mr. Gordinier in Omni 808's Reply Memorandum, a document upon which he had ample time to reflect: "Each and all of the references in Omni's Statement of Position refer to the contents of Mr. Durkin's Reports and the shortcomings contained therein and omitted therefrom, not to his person." Id. at 2 n.1. To be sure, the criticisms leveled at Mr. Durkin are framed in

---

Durkin (docket #5918) at 4 (accusing Mr. Durkin of "making McCarthy-like statements of non-existent buybacks and unsupported insinuations of conflicts of interest"); id. at 9 (suggesting that Mr. Durkin's formulation of certain search terms relating to criminal acts in Farsi without a concurrent formulation of those terms in English demonstrated a "predisposition that Persian members of MGA's management and staff (and only the Persian members) might be engaged in illegal conduct"). Mr. Stang's attacks pale in comparison to those advanced by Mr. Gordinier, and they were filed under seal. Thus, although the Court's analysis and conclusions regarding the Forensic Auditor's Reports applies with equal force to Mr. Stang's statements, his are not the focus of the Court's attention at this time.

EXHIBIT __48__
PAGE __809__

terms of his Reports. Still other criticisms are, as counsel maintains, addressed to the Reports themselves; those must be analyzed based on their substance. However, as aptly demonstrated by the cited and quoted portions of Mr. Gordinier's filings that appear below, his criticisms do not, by any measure, confine themselves to those Reports, and instead reach out in a highly personal manner to attack the author, his professionalism, his competence, his objectivity, and his integrity.[4]

Indeed, in a display the likes of which have not been previously witnessed by this Court, Mr. Gordinier strayed far afield of legitimate criticism of the discussions, analyses, and conclusions reached in the Summary Report and the Reports that followed. To be sure, there are instances in which Mr. Gordinier addressed the message found in those Reports; just as surely, however, as detailed below, Mr. Gordinier attacked the messenger. Specifically, the papers filed by Mr. Gordinier on behalf of Omni 808 call into question Mr. Durkin's professionalism and competence, as well as his objectivity and integrity. Moreover, and alarmingly, they falsely accuse Mr. Durkin of being influenced by an ethnocentric bias against Mr. Larian and Mr. Kadisha. Such attacks, aimed at Mr. Durkin personally rather than the discussion, analyses, and conclusions set forth in his Reports, appear throughout Omni 808's papers. See Omni 808 Investors, LLC's Statement of Position re Order to Show Cause re Appointment of a Permanent Receiver (docket #5446) ("SOP"), filed May 14, 2009, at 11 (referring to Mr. Durkin's "irresponsible" analysis); id. (noting that Mr. Durkin is "far too experienced" to believe that he "produced . . . a balanced presentation"); id. (stating that "Mr. Durkin's report is a polemic" and "a piece of advocacy"); id. at 12 n.9 (calling into question Mr. Durkin's "objectivity" based on the fact that the Court ordered Mr. Durkin's fees be paid (at least in the first instance) by Mattel); id. (suggesting that Mr. Durkin's ex parte communications with Mattel were improper); id. at 13 n.10 (characterizing Mr. Durkin's quotation of Mr. Larian's and Mr. Kadisha's account of how the two men were acquainted, from "the Persian community," as "at best, unprofessional" and, "at worst,

---

[4] Adding still further to the mounting irony, in the same footnote that Mr. Gordinier disclaims engaging in improper personal attacks, he falsely accuses counsel for Mattel of advancing their own improper ad hominen attacks against Neil Kadisha, who has been referred to as a "common thief" in certain unspecified Mattel filings. Mr. Kadisha is the Managing Partner of a diversified investment firm, Omninet Capital, LLC, and an investor in Omni 808. To call someone a "common thief" is, undoubtably, by any measure, a highly personal attack, therefore an attack addressed "to the man," or ad hominen. However, in the same manner Mr. Gordinier accuses Mr. Durkin of failing to provide appropriate context to the Court in his Reports, Mr. Gordinier himself fails to acknowledge that counsel for Mattel's use of the term "common thief" in connection with Mr. Kadisha merely quotes Los Angeles County Superior Court Judge Henry W. Shatford's conclusion regarding Mr. Kadisha, as set forth in his 191-page Statement of Decision, dated October 24, 2006, which was issued after a 200-day trial, which is currently pending appeal, and which conferred upon Mr. Kadisha the oft-repeated moniker of "common thief," as well as "embezzler," and "perjurer." See Uzyel v. Kadisha, Cal. App. Nos. B196045, B203804, B198007, B199850, B201425, 2009 WL 646096 (Mar. 4, 2009) (appellate brief). As always, context is key. The use by counsel for Mattel of another court's findings and conclusions to advance an argument is not inappropriate. Those findings and conclusions may, or may not, be relevant to matters presented to the Court. Used in this manner, although undoubtedly addressed "to the man" (and his credibility), it is not an improper ad hominen attack.

EXHIBIT  48
PAGE     810

evidence of improper cultural bias"); id. (in the same footnote, referring to the same quotation, stating that "[t]he tone [of the report] itself is compelling proof that Mr. Durkin had no intention of providing an 'objective' report to the Court."); id. at 23 (referring to the Summary Report as "Mr. Durkin's ill-concealed advocacy piece"); id. (noting that advocacy, rather than objectivity, "is certainly the posture [Mr. Durkin] is most comfortable with"); Omni 808 Investors, LLC's Memorandum in Support of Its Requests to Strike Summary and Responsive Reports of Ronald L. Durkin (docket #5705) ("Motion to Strike"), filed June 8, 2009, at 4 (noting Omni "doubts that the Court or any party would benefit further by continuing this façade of Mr. Durkin's 'impartiality'"); id. at 7 (calling Mr. Durkin's explanation of his conclusion regarding the relatedness of certain parties as "not only fatuous[,] but [also] intellectually dishonest"); id. at 9 (suggesting that Mr. Durkin intentionally concealed from the Court the fact that Mr. Larian sought other funding sources before turning to Mr. Kadisha); id. at 10 (noting that "Mr. Durkin's repeated references to Mr. Larian's and Mr. Kadisha's common 'Persian' heritage can only be viewed as an attempt to draw some nefarious ethnic connection between them"); id. at 12 (calling the reference to Mr. Larian's and Mr. Kadisha's ethnicity "unprofessional symptoms of improper cultural bias [that] have no place in a supposedly objective report"); Omni 808 Investors, LLC's Reply Memorandum (docket #5809) ("Reply Memo") at 14 (suggesting that not only Mr. Durkin, but also counsel for Mattel, harbor "cultural biases" that lead them to "suggest[] that [Mr. Larian's and Mr. Kadisha's] common heritage makes [them] more likely to act contrary to their own interests); id. at 15 (stating that, according to his own interview notes, Mr. Durkin "misrepresented" to the Court in his Summary Report how Mr. Larian and Mr. Kadisha portrayed their relationship with each other).

As alluded to, Omni 808's criticisms have not been limited to personal attacks; some of the criticisms are in fact aimed at the Reports themselves. See e.g., SOP at 16 ("Mr. Durkin's conclusion that the Wachovia-Omni transaction impacted 'MGAEI's solvency and ability to continue conducting operations' is simply wrong."). Any comment by the Court regarding the substance of the discussions, analyses, and conclusions presented to the Court in the Forensic Auditor's Summary, Responsive, and Final Reports is inadvisable at this time. With the filing of the Third Amended Answer and Counterclaims, much of the subject matter of the Forensic Auditor's Reports have been incorporated into the claims at issue in this action. As such, it would be premature for the Court to comment upon the substance of issues that are yet to be adjudicated, and that are subject to a trial by jury. Nevertheless, the Court has reviewed the Forensic Auditor's Summary, Responsive, and Final Reports, and the exhibits attached thereto. The Court has also reviewed and considered the criticisms aimed at the Forensic Auditor, cited and quoted above, as well as the entirety of all the papers responding to the Forensic Auditor's Reports filed to date. After this review, the Court is firmly convinced that all the personal criticisms of Mr. Durkin are unwarranted and unsubstantiated.

At best, the criticism of Mr. Durkin's performance and presentation represents a

MINUTES FORM 90
CIVIL -- GEN                                    9                    Initials of Deputy Clerk __cls_____

EXHIBIT __48__
PAGE __811__

different interpretation of available evidence. That such disagreements would arise between the analyses offered by a Court-Appointed Forensic Auditor and that offered by counsel for a party whose transactions have been a subject of that audit is by no means surprising. A jury considering the relevant evidence might ultimately make factual determinations that tend to agree with Mr. Durkin's assessment, it might ultimately tend to agree with Mr. Gordinier's assessment, or it may very well reject both positions in favor of another. The answer to the merits of the claims at issue in this action must await another day. Today, the Court merely notes that its examination of the Forensic Auditor's Reports reveal that Mr. Gordinier's personal attacks aimed at their author were unjustified.

Some specific attacks directed toward Mr. Durkin – relating to his background as a law enforcement officer, his communications with counsel for Mattel, and specific (but baseless) allegations of ethnocentric bias -- are worthy of more specific comment by the Court.

Stopping short of explicitly stating such, Mr. Gordinier appears to labor under the assumption that Mr. Durkin has been unable to put behind him the prosecutorial mindset under which he presumably operated during his former service to this Nation as an agent of the Federal Bureau of Investigation ("FBI"). At the outset, the Court notes that Mr. Gordinier's unstated assumptions do a disservice to the prosecutors and the law enforcement officers who work with those prosecutors, both of whom conduct their work under the clearly delineated duty to ferret out not only evidence of guilt but also "evidence favorable to the accused." See e.g., Berger v. United States, 295 U.S. 78, 88 (1935) (noting that the role of the prosecutor is not to win at all costs and observing that the prosecutor "is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done."); Brady v. Maryland, 373 U.S. 83, 87 (1963) (imposing a duty on prosecutors to provide to the defense exculpatory evidence when requested to do so).

Secondly, even if prosecutorial duties were not so defined, the Court finds no suggestion that Mr. Durkin skewed the evidence in favor of any particular viewpoint. Undoubtedly, there is a *complete absence* of any evidence that, as Mr. Gordinier has suggested, Mr. Durkin has embarked upon a campaign to purposely mislead the Court.

Mr. Gordinier also suggests that, because Mr. Durkin's bills are being paid by Mattel, Mattel has, through this payment or through other communications with Mr. Durkin, bought Mr. Durkin's loyalty. This is utter nonsense. As demonstrated by the Court's communications with him, Mr. Durkin is a Court-Appointed Officer who understands that his role is to work on behalf of the Court and not on behalf of any party. In any event, the Court's Order of January 7, 2009, which appointed Mr. Durkin, imposed the costs of the audit on Mattel "in the first instance," but expressly provided for

MINUTES FORM 90
CIVIL -- GEN                                    10                    Initials of Deputy Clerk __cls_____

EXHIBIT __48__
PAGE __812__

the possibility that the audit expenses be shared or shifted to the MGA parties. Moreover, to suggest, however subtly, that ex parte communications with counsel for Mattel were improper ignores the Court's mandate to the Forensic Auditor in the January 7, 2009, Order, which states that Mr. Durkin was provided with attorney contact information and that he "shall direct his initial communications to counsel." At no time has the Court precluded the Forensic Auditor's communications with Mattel or its counsel; in fact, because the Forensic Audit was undertaken based on evidence gathered by and presented to the Court by Mattel, Mr. Durkin would have been remiss in his duties if he failed to communicate with Mattel and its counsel.

Mr. Durkin was vested with powers and discretion to complete a Court-ordered Forensic Audit. Pursuant to an Order of this Court, he undertook this task and exercised those powers and that discretion, presenting his Reports in conformity with the Court's instructions. Despite counsel's attacks, the Court's review of the evidence before it discerns no abuse of those powers or of that discretion.

Particularly troubling to the Court is that counsel speculates that, because Mr. Durkin noted in his report that Mr. Larian knew Mr. Kadisha from "the Persian Community," Mr. Durkin could be "of the view that this common heritage makes Mr. Kadisha more likely to act contrary to his own interests or to do something via third-parties that he wouldn't otherwise do?" See SOP at 13-14 n.10 (appearing to pose this thought as a rhetorical question). There is no indication in the record, or otherwise, that Mr. Durkin holds such a view. To the contrary, Mr. Durkin's comment regarding the acquaintanceship of Mr. Larian and Mr. Kadisha from "the Persian Community" (which is noted in the report within quotation marks and is expressly attributed to a reference made by Mr. Larian himself) is clearly predicated on interviews with these two individuals, each of whom related independently to Mr. Durkin and his colleagues that they knew each other from "the Persian Community." See Durkin Summary Report, Ex. 14, at 2 ¶ 3 (Notes re March 25, 2009, interview with Mr. Larian: "He indicated that he knew Kadisha from the Persian community.") and Ex. 14, at 15 ¶ 2 (Notes re March 26, 2009, interview with Mr. Kadisha: "Kadisha stated that he knows Larian from the Persian community."). The purpose for this reference is made clear in the footnote set forth at the end of the sentence in which the reference appears; namely, the Report discusses evidence that the relationship between Mr. Larian and Mr. Kadisha is stronger and more personal than either man claimed it was. See Summary Report at 5 n.18; Ex. 15 (personal emails).

In the Reply Memo, Mr. Gordinier takes issue with this explanation, this time including not only Mr. Durkin but also counsel for Mattel as the targets for his unsubstantiated allegations of "cultural bias." Mr. Gordinier first mischaracterizes an argument made by Mattel. Mattel argued, and quite correctly, both that how well Mr. Larian and Mr. Kadisha knew each other was relevant to a determination of whether certain transactions between the two were arms-length transactions, and that this point was likely not lost on either of these two very sophisticated and successful

MINUTES FORM 90
CIVIL -- GEN                                           11                    Initials of Deputy Clerk __cls_____

EXHIBIT ___4ᛞ___
PAGE ___813___

businessmen.[5] As noted previously, both Mr. Larian and Mr. Kadisha stated that they knew each other from "the Persian community" which, in the Forensic Auditor's view, was intended to, or at least had the tendency to minimize the existing relationship between the two. Mr. Gordinier incorrectly characterizes this argument as Mattel's contention that Mr. Larian's and Mr. Kadisha's "Persian relationship" and "common Persian heritage" was somehow relevant to a determination of whether the Omni 808 transaction was an arms-length transaction. Mattel made no such argument. Neither counsel for Mattel nor Mr. Durkin have implied that Mr. Larian's and Mr. Kadisha's ethnicity factors into the analysis. Other than to point to Mr. Larian's and Mr. Kadisha's separate, but identical, accounts of how they knew each other which, in turn, suggests how well they know each other, neither counsel for Mattel nor Mr. Durkin have stated or implied that Mr. Larian's and Mr. Kadisha's shared ethnicity is relevant to any matter currently or potentially before the Court. Compare Opposition at 8-9 with Reply Memo at 14-15.

Moreover, Mr. Gordinier's substantive point, that Mr. Durkin "misrepresented" to the Court what Mr. Larian and Mr. Kadisha told him about the closeness of their relationship, fares no better. See Reply Memo at 15. On this point, it is important to set this stage properly. Counsel for all parties have attempted to glean far too much from two sterile paragraphs of interview notes taken by Mr. Durkin. Much can be inferred from conversations and interviews through not only what is said, but what is not said, by the interviewee's demeanor, by the tone of the speaker, by the length and placement of pauses, and by non-verbal gestures and body language. With all these variables, much of what is communicated does not find its way into notes.[6] For instance, Mr. Durkin's interview of Mr. Larian lasted over two and a half hours; however, the interview notes are a mere five and a half pages. Similarly, a one-hour and ten minute interview of Mr. Kadisha yielded only three and a half pages of interview notes. This is not to suggest that the notes should have been longer or that the interviews should have been recorded or transcribed; rather, it is to suggest that counsel's arguments based on another's notes are not particularly probative.

In contrast, Mr. Durkin's assessment, based on his interviews with both of them,

---

[5]  In fact, the Court just this week issued a 30-page, single-spaced opinion resolving a 10-day bench trial conducted over the sole issue of whether a transaction between "closely related" entities reflected its fair market value, one of the more significant arguments ultimately rejected by the Court in that case being that the close relationship between the parties necessarily rendered the transaction a "sweetheart deal." See July 6, 2009, Order, Siegel v. Warner Bros. Entertainment, Inc., et al., CV 04-08400 SGL (RZ) (docket #554).

[6]  Indeed, the interview notes upon which the parties rely concede as much. See Summary Report, Ex. 14 at 2, 15 ("This interview memorandum is a factual representation of the topics discussed during the interview and is not intended to be a word for word or exact transcription of the conversation."). Thus, in addition to not taking into account all non-verbal communication, the notes do not even represent everything that was said during the interview.

MINUTES FORM 90
CIVIL -- GEN                              12              Initials of Deputy Clerk __cls_____

EXHIBIT  48
PAGE  814

is that Mr. Larian and Mr. Kadisha attempted to minimize their relationship because both of them understand the relevance of any friendship or other connection between them to the assessment of the arms-length nature of any transactions in which they have engaged. Mr. Durkin's assessment does not come from the gentle teasing of a strained meaning from two sterile paragraphs of brief notes taken by another person; rather, his assessment springs from his participation in the interview process, the entirety of the interviews he conducted of Mr. Larian and Mr. Kadisha, and his review of all of the evidence. As such, the Court defers to his assessment, at least insofar as how Mr. Larian and Mr. Kadisha portrayed their relationship to him.

As for that scant language from which the parties glean so much meaning, the entirety of which is set forth below, it in no way supports the contention made by Mr. Gordinier that Mr. Durkin "misrepresented" to the Court what Mr. Larian and Mr. Kadisha conveyed to him about the closeness of their relationship. On this topic, the notes of Mr. Larian's interview merely state the following:

> Larian decided to contact Neil Kadisha of OmniNet as he knew his company was in the distressed loan business. He indicated that he knew Kadisha from the Persian community. Kadisha said he wouldn't do the deal alone in today's environment and wanted Larian and their other friends to invest in the deal with MGA. Larian stated that Kadisha negotiated the debt with Wachovia and got it down significantly, Larian said he is not bitter about Kadisha getting a good deal on buying the loan.

Summary Report, Ex. 14, at 2 ¶ 3 (emphasis added). This paragraph contains the word "friends," and perhaps could even be read as an implicit statement by Mr. Larian that he and Mr. Kadisha are "friends." But the language does not compel such an inference. Moreover, it does not comport with the notes of Mr. Kadisha's interview, which on this topic state only the following:

> Larian and Kadisha have never been to dinner together. Kadisha stated that he knows Larian from the Persian community and he sees him often at religious events, etc. He has no investments with Larian. Kadisha did not talk with Larian last night, this morning or in the last two days.

Summary Report, Ex. 14, at 15, ¶ 2. Mr. Durkin's assessment that Mr. Larian and Mr. Kadisha sought to minimize the extent of their relationship is not contradicted by these short passages.

The criticism that Mr. Durkin was acting pursuant to an ethnic or cultural bias is clearly baseless. The allegations are irresponsible, and they are made to capitalize on

MINUTES FORM 90
CIVIL -- GEN

13

Initials of Deputy Clerk __cls_____

EXHIBIT  48
PAGE  816

their inherent sensational nature for counsel's own purposes of diverting attention away from the substance of the Reports. Sensationalism aside, when viewed in context, the Reports' reference to Mr. Larian and Mr. Kadisha knowing each other from "the Persian community" was plainly innocuous. The reference was a direct quotation from both Mr. Larian and Mr. Kadisha. It was used in a broader discussion regarding how (and thus, impliedly, how well) the two knew each other, which is itself relevant to the issue of whether certain transactions relevant to the present litigation were made at arms length.

This is a most unfortunate incident. The Court certainly understands, in a case as hotly contested as this one -- with such high stakes, with such complex legal issues, and with such truly extraordinary legal talent on all sides -- that lawyers, however ethical and committed to the highest standards of professionalism (as the Court presumes and has found all counsel of record here to be), make statements or commit acts in haste that they subsequently regret. All of the players to this drama, are, after all is said and done, human. As such, all of us are vulnerable to all-too-common human frailties. The Court would place itself at the very top of any list of lawyers who have spoken improvidently at one time or another in this case (and any number of others). What the Court has witnessed here, however, in both manner and substance, for the reasons noted above, goes beyond what the Court can let pass without some manner of reprobation. So let the Court be clear: Nothing excuses the attempted character assassination in which Mr. Gordinier has engaged.

        **IT IS SO ORDERED.**

EXHIBIT __48__
PAGE ___816__