1  MELINDA HAAG (State Bar No. 132612)
   mhaag@orrick.com
2  ANNETTE L. HURST (State Bar No. 148738)
   ahurst@orrick.com
3  WARRINGTON S. PARKER III (State Bar No. 148003)
   wparker@orrick.com
4  ORRICK, HERRINGTON & SUTCLIFFE LLP
   The Orrick Building
5  405 Howard Street
   San Francisco, CA 94105
6  Telephone:  +1-415-773-5700
   Facsimile:  +1-415-773-5759
7
   WILLIAM A. MOLINSKI (State Bar No. 145186)
8  wmolinski@orrick.com
   ORRICK, HERRINGTON & SUTCLIFFE LLP
9  777 South Figueroa Street, Suite 3200
   Los Angeles, CA  90017
10 Telephone:  +1-213-629-2020
   Facsimile:  +1-213-612-2499
11 Attorneys for MGA Parties

12            UNITED STATES DISTRICT COURT

13            CENTRAL DISTRICT OF CALIFORNIA

14                  EASTERN DIVISION

15 | CARTER BRYANT, an individual | Case No. CV 04-9049 SGL (RNBx) |

16 |             Plaintiff, | Consolidated with: |

17 | v. | CV 04-9059<br>CV 05-2727 |

18 | MATTEL, INC., a Delaware<br>Corporation | **DISCOVERY MATTER** |

19 |             Defendant. | **[To Be Heard By Discovery Master Robert C. O'Brien]** |

20 | | MGA PARTIES' OPPOSITION TO MOTION TO COMPEL MGA |

21 | AND CONSOLIDATED ACTIONS | ENTERTAINMENT, INC. AND ISAAC LARIAN TO PRODUCE DOCUMENTS |

22 | | RESPONSIVE TO MATTEL'S FIRST SETS OF REQUESTS FOR |

23 | | DOCUMENTS (PHASE 2) |

24 | | [Declaration of Warrington S. Parker III and Exhibits Filed Concurrently] |

25

26

27 **PUBLIC REDACTED VERSION**

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY OF ARGUMENT ........................................ 1

STATEMENT OF FACTS ................................................................................... 3

    A.    The Documents Sought By Mattel ................................................ 3

    B.    MGA Objects To These Requests And Meets And Confers ............... 4

    C.    Financial Discovery Has Been Produced As Has Information Regarding Trademarks .................................................................. 6

    D.    Mattel Has Discovery Relating to Debt Transactions .......................... 7

ARGUMENT .................................................................................................... 10

I.    FINANCIAL DOCUMENTS FROM MR. LARIAN AND MGA HAVE BEEN PRODUCED AND THE DISCOVERY MASTER SHOULD NOT REQUIRE ADDITIONAL PRODUCTION— REQUEST NOS. 1, 6, 7, 13, 17 ..................................................... 10

II.    SAMPLES OF BRATZ DOLLS AND DOCUMENTS RELATING TO THE PROFITS, SALES, REVENUES AND TRADEMARKS HAVE BEEN PRODUCED—REQUEST NOS. 8-9, 16, 50-57 .................. 12

III.    DOCUMENTS RELATED TO STATEMENTS OF INSOLVENCY ARE OVERBROAD, BURDENSOME AND IRRELEVANT— REQUEST NOS. 4, 5, 11 ............................................................... 13

IV.    DOCUMENTS RELATED TO LOANS AND CREDITORS ARE PROPERLY LIMITED TO THE CLAIMS MADE BY MATTEL— REQUEST NOS. 2, 3, 18-29, 30-35, 39, 40-42, 43-48. ..................... 15

    A.    The Relevant Universe of Loans and Credit Agreements Have Been Identified by Mattel in Its Allegations—Request Nos. 2-3, 12 ............................................................................................ 15

    B.    Mattel Has in Its Possession the Relevant Documents Relating to the Wachovia Loan—Request Nos. 22-23 ................................... 16

    C.    The Discovery Master Has Defined the Scope of Relevant Discovery as to IGWT Group and IGWT 826—Request Nos. 18-21, 28-29, 35-36, 40-42 ...................................................... 17

    D.    The Discovery Master Has Defined the Scope of Relevant Discovery as to Omni 808, OmniNet, Vision Capital —Request Nos. 24-27, 30-34, 39, 43-49 .................................................. 18

V.    REQUEST NOS. 10, 14, 15 AND 38 ARE OVERBROAD, BURDENSOME AND RAISE THIRD PARTY PRIVACY CONCERNS ................................................................................... 20

CONCLUSION ................................................................................................ 22

1

## TABLE OF AUTHORITIES

2

Page

3

## FEDERAL CASES

4   *Del Campo v. American Corrective Counseling Servs., Inc.,*
5      2008 WL. 2978079 (N.D. Cal. Aug. 26, 2008)..................................... 18

6   *Haensel v. Chrysler Corp.,*
       1997 WL. 537687 (E.D. La. Aug. 22, 1997)......................................... 21

7   *McDaniel v. Anheuser-Busch, Inc.,*
8      987 F.2d 298 (5th Cir. 1993)................................................................ 13

9   *Matter of Rhone-Poulenc Rorer, Inc.,*
       51 F.3d 1293 (7th Cir. 1995)................................................................ 13

10  *Ryan v. Editions Ltd. West, Inc.,*
       2007 WL. 2348724 (N.D. Cal. Aug. 14, 2007)................................... 18
11

## FEDERAL STATUES

12

Bankruptcy Code § 548 ....................................................................... 14

13

## MISCELLANEOUS

14

15  J.B. Heaton, *Solvency Tests,*
       62 BUSINESS LAWYER 983 (May 2007).............................................. 14

16

17

18

19

20

21

22

23

24

25

26

27

28

## INTRODUCTION AND SUMMARY OF ARGUMENT

Mattel possesses the majority of the documents it seeks to compel. They have been produced. To the extent documents have not been produced, it is the result of Mattel's continuing use of requests that use terms like "all documents" that "refer or relate" to the items requested, which expand the scope of the document requests beyond what is reasonable or relevant in this case. Additionally, because Mattel now seeks bank account and other sensitive information of third parties MGA[1] has objected to those requests.

Starting with Mattel's request for financial documents from MGA and Mr. Larian. It has those documents. The Discovery Master noted this in its Order of May 7, 2008, concluding "Mattel has received ample financial documents" from MGA and Mr. Larian. Ex. S at 672 (5/7/08 Disc. Order).[2] On April 29, 2009, additional financial documents were produced to Mattel. There is therefore no reason for Mattel to seek yet another round of financial data.

Because Mattel does not admit that it has reams of financial data both from MGA and Mr. Larian, Mattel does not explain why these particular document requests need to be enforced. It does not claim that there is a need to supplement responses. This would not be reasonable in any case. This was just done.

In addition, these documents requests are broader, but with no reason given. They use terms like "all documents" that "refer and relate" to items such as MGA's and Mr. Larian's net worth. As previously found by the Discovery Master, such broad requests could require the production of a virtually limitless number of documents, from hotel receipts to MGA's paper supply. There is no cause to order such a production.

---

[1] MGA is used to refer to MGA Entertainment and Mr. Larian unless there is need to refer only to Mr. Larian.
[2] All exhibits identified by a letter of the alphabet are attached to the Declaration of Warrington S. Parker III ("Parker Decl.") filed concurrently with this opposition. References to exhibits followed by a number are references to the exhibits attached to the Declaration of Jon Corey filed in support of the motion to which this opposition responds.

1    In addition to financial data, Mattel has in its possession samples of Bratz

2    dolls, sales relating to Bratz dolls, licensing information relating to Bratz dolls and

3    a host of related information.  It knows it has these items because it has used them

4    in Court.  For example, it submitted the Bratz dolls as exhibits in opposition to

5    MGA's post-trial motions.

6        Similarly, Mattel has documents relating to its RICO claims.  It has the

7    documents showing money paid by MGA to Larian family members. ████

8    ███████████████████████████████████████████████████

9    ███████████████████████████████████████████████████

10   █████████████████████████████████████████

11       It has documents relating to the Wachovia loan.  It has documents relating to

12   the activities of Omni 808 Investors, OmniNet, LLC, Vision Capital, LLC, IGWT

13   Group, LLC and IGWT 826 Investors.

14       What Mattel does not have, however, and what it is not entitled to are

15   boundless requests and requests that seek information already in its possession.

16   There is no reason to require production of every document that uses the word

17   solvency or insolvency, for example.  Proof of whether MGA was or was not

18   insolvent is shown by the financial documents and not a belief or opinion of

19   someone at MGA.  Similarly, there is no purpose is requiring MGA to produce

20   every "ITEM OF VALUE" transferred from Mr. Larian to a family member.

21   "ITEM OF VALUE" is defined literally to mean anything transferred down to a

22   penny, a paperclip or a pen.  This cannot be what Mattel is looking for.  If it is, it

23   should be denied.

24       Finally, Mattel is now seeking bank account information from third parties.

25   They possess a privacy interest that should not be trammeled.  Mattel has the

26   financial data necessary to show where monies went and from where it was

27   received.  Its allegations in the Third Amended Complaint are proof of that.

28       Mattel's motion to compel should be denied.

OPPOSITION TO MTN. COMPEL DOCS RE  1ST SET OF
REQUESTS (PHASE 2)
CV-04-0049 SGL (RNBx)

1

## STATEMENT OF FACTS

This case is now in Phase 2, where at issue, among other things, is Mattel's claim

### A.  The Documents Sought By Mattel.

Broadly speaking, Mattel has characterized the documents it seeks as financial documents. These documents fall into the following categories:

- Documents relating to the net worth of MGA, Request Nos. 1, 6, 13, 17

- Documents relating to the net worth of Mr. Larian, Request Nos. 7

- Documents reflecting the sales of Bratz dolls, Bratz and Jade trademarks, Request Nos. 8-9 16, 50-57

- Documents reflecting representations concerning MGA's solvency and insolvency, Request Nos. 4, 5, 11

- Documents relating to loans obtained or denied by MGA since January 1, 2007, Request Nos. 2-3, 12

- Documents reflecting any communication with Wachovia, Request Nos. 22-23

- Documents relating to IGWT Group and IGWT 826, Request Nos. 18-21, 28-29, 35-36, 40-42

- Documents relating to Omni 808, OmniNet LLC, Vision Capital and Lexington Financial, Request Nos. 24-27, 30-34, 39, 43, 49

- Documents relating to any ITEM OF VALUE transferred by MGA or Mr. Larian to a Larian family member, bank account information and W-2s of Larian family members, Request Nos. 10, 14, 15, 38.

**B.    MGA Objects To These Requests And Meets And Confers**

As to all of these requests, MGA and Mr. Larian objected. As reflected in the objections served in response to the documents requests, Exs. 3, 4, and in MGA's meet and confer letter, Ex. 7, these requests are overbroad, seek information that invades the rights of privacy of third parties, and are not tailored to obtain relevant documents. For example, as noted in MGA's March 11, 2009, meet and confer letter, Request No. 1 seeks financial information from MGA, but also from "any person acting directly or indirectly by, through or under or on behalf of MGA." Ex. 7 at 293.[3] Moreover, the requests seek "*all*" documents pertaining to things like MGA's and Mr. Larian's net worth or the sale of Bratz dolls, which as MGA noted in its objections and in its meet and confer letter, are overbroad, burdensome and seek irrelevant information. *See, e.g.*, Ex. 3 at 64-68 (Response to Request Nos. 6, 7, 8); Ex. 4 at 165-70 (same); *see also* Ex. 7 at 293  This breadth is compounded by the fact that Mattel has asked not merely for "all" documents, but documents that "refer or relate" to the requests made. Thus, for example, in

---

[3] The page cites are to the consecutive numbering of the exhibits.

addition to net worth documents, Mattel seeks documents that "refer or relate" to net worth documents, which Mattel defines as "refer to, discuss, constitute, evidence, pertain to, mention, support, undermine, disprove, refute, contradict, negate, bear on, amend, revise, modify, touch on, contain, embody, reflect, identify, state, deal with, concern, comment on, summarize, respond to, relate to, describe." Ex. 1 at 14; Ex. 2 at 34.

Such requests have already been found to be overbroad, burdensome and vague. As noted in MGA's objections and in its meet and confer letter, *see* Exs. 3, 4, 7, the Discovery Master has already determined that references to "all" documents that "refer or relate" to a matter are overbroad. Ex. S at 669-70.

Likewise, the requests intrude on the privacy interests of third parties. For example, Mattel seeks the bank account information of any account from which or to which Mr. Larian transferred an "ITEM OF VALUE." As defined, "ITEM OF VALUE" is any amount, however, insignificant and for whatever reason. *See* Ex. 1 at 14; Ex. 2 at 34; *e.g.*, Ex. 4 at 219-20 (Response to Request No. 38). In addition to its overbreadth, MGA objected because such a request intrudes on the privacy rights of third parties. *Id.* MGA leveled the same objections to all requests that seek bank account information. *See, infra.*

Finally, the documents requested seek information relating to Wachovia, Omni 808, OmniNet, Vision Capital, Lexington Financial, IGWT Group and IGWT 826. At the time of the meet and confer, March 11, 2009, the objections leveled were based on the District Court's orders and the order of the Discovery Master in Order No. 3. Ex I.

However, the objections remain as to overbreadth, relevancy, privacy remain. These requests too seek "*all*" documents "*referring and relating to*" any transaction with Omni 808, Vision Capital, Lexington Financial, IGWT Group and IGWT 826. *See* Ex. 1 at 22-26 (Request Nos. 24-29, 35-36, 40-42); Ex. 2 at 42-46 (same). In addition, Mattel seeks bank account information, which again intrudes on privacy

1  rights.  *See* Ex. 3 at 120-21, 135-38 (Response to Request Nos. 39, 48-49); Ex. 4 at

2  221-22, 235-37 (same).

3  **C.  Financial Discovery Has Been Produced As Has Information Regarding Trademarks.**

4

5  Mattel has the financial documents it seeks, with limited exception.  As noted

6  in a May 7, 2008 Order of the Discovery Master denying an earlier request for

7  financial information:

8  > [T]o the extent any of Mattel's requests for financial
   > information encompass relevant materials, the requests
9  > remain unreasonably duplicative and cumulative of
   > discovery Mattel has already sought and obtained from
10 > MGA and Isaac Larian . . . .  MGA has produced the
   > following: audited and unaudited quarterly and annual
11 > profit and loss statements, audited and unaudited quarterly
   > and annual statements; annual reports; various MGA
12 > financial reports; . . . documents showing MGA's sales,
   > returns and costs of goods for each month by SKU since
13 > 2001; documents showing MGA's promotional
   > advertising and media expenditures, including MGA's
14 > internal allocation of those expenditures by brand and/or
   > product; documents showing MGA's amortization and
15 > depreciation of certain capital assets and expenditures;
   > documents showing MGA's monthly ledger entries
16 > aggregated by account, including income and expense
   > accounts, reserves and liabilities; and documents
17 > sufficient to explain MGA's various accounts as presently
   > and historically maintained in MGA's books and records.
18

19  Ex. S at 672 (5/7/08 Disc. Order).

20  In addition, as of May 7, 2008, Mr. Larian produced

21  > over 50,000 pages of documents, which include, among
   > other things, documents showing his net worth; his gross
22 > income, wages, dividend income, interest income, and
   > other income; his banks and bank accounts and various
23 > other financial documents.

24  *Id.*

25  In light of this, the Discovery Master concluded: "Mattel has received ample

26  financial documents."  *Id.*

27  Moreover, Mattel used these financials in the Phase 1 trial.  They were used

28  to exam Mr. Larian about his net worth at trial.  Ex. E at 144-49 (Tr. 6375-79).  At

1   trial, Mattel's financial expert provided a 243 page exhibit that summarized MGA's

2   financial performance. Ex. F. According to Mattel's expert "[t]here are hundreds

3   and thousands of pages that support [the summary] that are not part of this. The

4   underlying data would fill a number of banker's boxes as well." Ex. E at 143, 150

5   (Tr. 6292, 6395).

6        Since then, and as recent as April 29, 2009, both MGA and Mr. Larian have

7   supplemented the production of documents relating to their financials. Parker Decl.

8   ¶ 24. For example, Mr. Larian produced these documents in response to documents

9   requests such as this one: "DOCUMENTS sufficient to calculate YOUR net worth

10   on a yearly basis for each year from 1999 to the present." Ex. D at 104 (Order No.

11   11). MGA also produced additional financial documents, including financial

12   projections up to April 2009, its profits and losses for 2008 by month and through

13   February 2009, Bratz profits and losses, its sales to customers, and its licensing

14   revenue. Parker Decl. ¶ 24; Ex. D at 103-04.

15        In addition, Mattel has already received documents concerning payments

16   made to certain Larian family members, including their W-2s. ███████

17   ████████████████████████████████████████

18   ████████████████████████████████████████

19   ████████

20        Finally, as to trademarks, on June 17, 2009, pursuant to Mattel's request,

21   MGA provided to Mattel a list of more than 40 pages that detail the Bratz and Jade

22   trademarks, the application number, the registration number and date wherever in

23   the world obtained. MGA provided the domain names relevant to Bratz and Jade as

24   well. Ex. G (trademark registration documents).

25      **D.**    **Mattel Has Discovery Relating to Debt Transactions.**

26        Wachovia has produced in excess of 10,000 documents relating to its loan

27   with MGA. Mattel has those documents. Parker Decl. ¶ 22.

28        With regard to Omni 808 Investors LLC, Omninet Capital, LLC, Vision

1    Capital LLC, IGWT Group, LLC, and IGWT 826 Investments, LLC, Mattel has

2    those documents as well.  Ex. R (letter from counsel).

3          The Discovery Master has twice had to consider the appropriate scope of

4    discovery given Mattel's claims that MGA has tried to place money out of the reach

5    of Mattel.  It has issued two orders concerning the scope of that discovery, Order

6    Nos. 3 and 27, issued in response to Mattel's subpoenas on Omni 808 Investors

7    LLC, Omninet Capital, LLC, Vision Capital LLC, IGWT Group, LLC, and IGWT

8    826 Investments, LLC.  Exs. I, J (Order Nos. 3, 27).  As reflected in the Orders and

9    the arguments relating to them, Mattel has claimed that MGA and Mr. Larian

10   engaged in transactions involving Omni 808 Investors LLC, Omninet Capital, LLC,

11   Vision Capital LLC, IGWT Group, LLC, and IGWT 826 Investments, LLC in order

12   to take money out of the reach of Mattel.  There were two transactions that Mattel

13   identified: the $313 million loan arrangement with Wachovia and Omni 808 and the

14   sale of inventory to IGWT.  That this is the focus of Mattel's claims are reflected in

15   its hearing before the Discovery Master when the issue first arose.  *See* Ex. H at

16   431-34 (Tr. 21-24) (discussing the "$300 million" loan and the sale of inventory to

17   IGWT); *id.* at 434a-34c (Tr. 29-31) (discussing the "$300 million debt" and sale of

18   inventory to IGWT); *id.* at 434d-34l (Tr. 67-75) (same).

19         In response to these arguments, the Discovery Master has already ordered

20   discovery consonant with the allegations leveled by Mattel, including the

21   allegations made in the Third Amended Complaint.





With regard to IGWT Group LLC and IGWT 826, the Discovery Master has ordered the production of "documents relating to the purchase by, or transfer to IGWT Group LLC[4] of any items of value, including Bratz products, from MGA, Larian, his spouse, his children, his siblings or their spouses, or any entity or person affiliated with them," documents relating to the revenue generated by Bratz products and the "transfer or disposition of such revenue," documents sufficient to identify "any ownership interest by Larian, his spouse, his children, his siblings, or their spouses, or any entity or person affiliated with them," the source of contributions, loans and any sources of funding provided by during the last twelve

---

[4] Precisely the same language is used with respect to IGWT 826 in all respects.  Ex M (Subpoena on IGWT 826); Ex. I (Order No. 3).

months to "Larian, his spouse, his children, his siblings, or their spouses, or any entity or person affiliated with them," documents showing compensation, loans, advances and fees paid by IGWT Group to Larian, his spouse, his children, his siblings, or their spouses, or any entity or person affiliated with them," and all communications with Vision Capital, Lexington Financial, Mattel, MGA, Isaac Larian and/or Bratz.  Ex. N (Subpoena on IGWT Group); Ex. I (Order No. 3).

ARGUMENT

**I.   FINANCIAL DOCUMENTS FROM MR. LARIAN AND MGA HAVE BEEN PRODUCED AND THE DISCOVERY MASTER SHOULD NOT REQUIRE ADDITIONAL PRODUCTION—REQUEST NOS. 1, 6, 7, 13, 17.**

Mattel justifies its net worth discovery by claiming that it is relevant to punitive damages, its theory of disgorgement, Mr. Larian's credibility and Mattel's claims that there has been looting of MGA's assets.  Mtn. at 7-13.  Therefore, Mattel claims that it should get, from January 1, 2007, audited and unaudited monthly statements from January 1, 2007 (Request No. 1); "all documents referring or relating to" MGA's net worth (Request No. 6); "all documents" related to Mr. Larian's net worth (Request No. 7); documents showing MGA's projected revenue, costs, profits and financial performance (Request Nos. 13 and 17).[5]

For MGA, documents sufficient to show net worth have been produced and then supplemented as of April 29, 2009.  This does not mean every single document that could possibly bear on net worth because such a production would be endless.  It means documents sufficient to show net worth.

Mr. Larian has already produced such documents and has been further ordered in an order dated March 31, 2009 to supplement his document production

---

[5] For all of the discovery requests referenced in this Opposition, MGA and Mr. Larian have asserted objections.  They are found at Exhibits 3 and 4.  Neither MGA nor Mr. Larian in this Opposition have re-asserted each and every objection.  For example, the attorney-client privilege objection is not addressed in this Opposition with the understanding that neither MGA nor Mr. Larian are thereby waiving that objection or any other.

- 10 -

1 in response to the request asking him to produce "DOCUMENTS sufficient to

2 calculate YOUR net worth on a yearly basis for each year from 1999 to the

3 present." DM Order No. 11.

4   Even were Mattel entitled to these documents once, there is no discovery rule

5 that requires MGA or Mr. Larian to re-do a document production. But that is what

6 Mattel seeks under the guise of a credibility determination and other theories.

7   Nor should Mattel be allowed the opportunity to make the same request but

8 increase the burden on the MGA Parties. For example, Mattel has sought, and

9 obtained, documents "*sufficient* to calculate" Mr. Larian's net worth. Now, Mattel

10 wants—without explanation or acknowledgement of its earlier request and its

11 motions to enforce that request—"*all* documents" related to Mr. Larian's net worth

12 and "all" documents relating to MGA's net worth. It then compounds the breadth

13 of the requests by asking for documents that "refer or relate" to net worth.

14   As already decided by the Discovery Master, nothing justifies such broad and

15 limitless requests. Mattel does not argue that this broader articulation of the request

16 is somehow necessary to root out relevant documents. Nor could it. There is no

17 reason to require MGA and Mr. Larian to respond to a document request that seeks

18 the production of every single document effecting their finances from a restaurant

19 receipt to documentation relating to a car loan.

20   Furthermore, these requests cannot be justified as requests to supplement

21 older responses. They simply are not. If they were, Mattel would say so plainly.

22 *See* Ex. D (Order No. 11). Rather, Mattel is seeking a do-over.

23   In addition, MGA and Mr. Larian have supplemented the documents they

24 produced. While the discovery rules might impose on a party this obligation,

25 Mattel provides no explanation for why the MGA Parties and Mr. Larian should be

26 required to undertake the burden of producing documents over and again.

27   As was true in May 2008, these requests are duplicative of prior requests and

28 Mattel is charging on as if it has never obtained or seen a financial document,

1    which is demonstrably false.

2    **II.    SAMPLES OF BRATZ DOLLS AND DOCUMENTS RELATING TO**
3    **THE PROFITS, SALES, REVENUES AND TRADEMARKS HAVE**
     **BEEN PRODUCED—REQUEST NOS. 8-9, 16, 50-57.**

4            As with documents relating to the net worth of MGA and Mr. Larian, MGA

5    has produced documents relating to the sales of Bratz, including its revenue, its

6    profits, the amounts received from licensees and its financial projections.  Mtn. to

7    Compel at 29; Request Nos. 8, 16, 51. This was done prior to Phase 1.  These

8    documents were supplemented in response to Discovery Master Order No. 11 and

9    produced on April 29, 2009.  Parker Decl. ¶ 24.  Given this, there is no basis for

10   Mattel moving to compel production of cancelled or held orders for Spring and Fall

11   2009 (Request Nos. 8-9); the sale, distribution or transfer by MGA of Bratz

12   products since January 1, 2007 (Request No. 16); or identify licensees and amounts

13   received from them for Bratz products since January 2007 (Request Nos. 50-51).

14           In addition, samples of Bratz dolls sold or marketed since January 2008

15   (Request No. 53), have been produced to Mattel.

16

17

18           Beyond the documents produced, there is no reason—no relevancy to—the

19   requests that MGA produce "all" documents "referring and relating" to every order

20   of Bratz for Spring and Fall 2009 (Request Nos. 8-9), or the request that MGA

21   produce all trademark registrations and communications with the Trademark Office

22   relating to Bratz and Jade, (Request Nos. 54-57).

23           Mattel says that these documents are relevant to show "commercial activities

24   that are the subject of Mattel's criminal copyright predicate acts and to Mattel's

25   remedies, including disgorgement of illicit proceeds . . . ."  Mtn at 29.  And it

26   claims that the documents are relevant to its trade secrets claims. *Id.*  However, to

27   the extent relevant to show monies obtained by MGA, the information has been

28   produced, including information about MGA's commercial activities.  To the extent

- 12 -

1  relevant to trade secrets claims, Mattel has not identified what trade secret would be
2  revealed by communications with retailers and purchasers or in the samples of dolls
3  they seek.

4       To the extent that these documents cover the period of time prior to the jury
5  verdict, which they do—including the request for communications with retailers
6  and prospective purchasers—Mattel has tried their copyright case.  Mattel cannot
7  re-try those aspects of the copyright claim already decided by the jury and these
8  overbroad document requests simply do not have relevance to the case in Phase 2.
9  "[I]nherent in the Seventh Amendment guarantee of a trial by jury is the general
10  right of a litigant to have only one jury pass on a common issue of fact.…[I]f two
11  juries were allowed to pass on an issue involving the same factual and legal
12  elements, the verdicts rendered by those juries could be inconsistent, producing
13  intolerably anomalous results." *McDaniel v. Anheuser-Busch, Inc.,* 987 F.2d 298,
14  305 (5th Cir. 1993); *Matter of Rhone-Poulenc Rorer, Inc.,* 51 F.3d 1293, 1303 (7th
15  Cir. 1995) ("'The right to a jury trial in federal civil cases, conferred by the Seventh
16  Amendment, is a right to have juriable issues determined by the first jury impaneled
17  to hear them … and not reexamined by another finder of fact. This would be
18  obvious if the second finder of fact were a judge. But it is equally true if it is
19  another jury.'" (citations omitted)).

20       Finally, as to the trademarks, Mattel has a list of every trademark bearing the
21  name Bratz and Jade.  Ex. G.  It has a Court Monitor that is required to facilitate the
22  transfer of those trademarks to Mattel.  There is no purpose served beyond merely
23  placing a burden on MGA to require MGA to produce communications it had the
24  Trademark Office, to require it to obtain the applications for the registration of
25  those trademarks or to make it again identify the trademarks.  Request Nos. 54-57.

26  **III.  DOCUMENTS RELATED TO STATEMENTS OF INSOLVENCY ARE OVERBROAD, BURDENSOME AND IRRELEVANT—**
27  **REQUEST NOS. 4, 5, 11.**

28       Mattel seeks "*all* documents referring or relating to solvency or insolvency"

- 13 -

1   from January 1, 2007, "*all* documents relating to representations or statements

2   concerning solvency or insolvency for the same time period, and all

3   communications with any third party in connection with MGA's December 11,

4   2008 stay application pending appeal.  Request Nos. 4, 5, 11.  Mattel's justification

5   is that these documents relate to when and why MGA became insolvent.

6   Specifically, Mattel invokes its fraudulent transfer claims, which as noted relate

7   specifically to the Wachovia debt transaction and the IGWT sale of inventory.  Mtn

8   at 13-14.

9        There are four reasons why these requests should not be enforced.  First, the

10   requests are not tailored to the claims leveled by Mattel.

11

12

13

14

15        Second, Mattel has the financial data to assess whether or not and how there

16   was an issue of insolvency at any point from January 1, 2007 onward.  This

17   financial data is proof of the pudding.

18        Third, the financial evidence is the best evidence of solvency or not.  Indeed,

19   it is the only evidence of solvency and insolvency.  There is a legal definition of

20   solvency.  Bankruptcy Code § 548.  And the ways in which solvency should be

21   determined has confounded courts, accountants and experts for decades with

22   different methods yielding different results.  *See generally* J.B. Heaton, *Solvency*

23   *Tests*, 62 BUSINESS LAWYER 983 (May 2007).[6]  Therefore, whether someone at

24   MGA had some subjective belief that MGA was or was not solvent is entirely

25   irrelevant.  Our recent economic crisis underscores the fact that corporate history is

26   chock full of examples where executives have improperly assessed their solvency.

27   Therefore, it is the financials that speak to this issue, not the feelings or beliefs of

28   _____
[6] A copy is attached as Ex. T to Parker Decl.

someone at MGA.

Fourth, ███████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████ Given this, asking for interchanges between third

parties relating to the ex parte application for a stay that represented that it would be

harmful to third parties and negatively impact MGA's revenue were a stay not

issued is only burdensome and completely unnecessary to Mattel's claim.  Mattel

asserts that such correspondence might be "potential prior inconsistent statements,"

and are likely to contain "candid assessments about the MGA Parties' true financial

condition," Mtn. at 14.  But that financial condition is laid bare by financial

documents.  Mattel has that information in the form that counts.

## IV.  DOCUMENTS RELATED TO LOANS AND CREDITORS ARE PROPERLY LIMITED TO THE CLAIMS MADE BY MATTEL— REQUEST NOS. 2, 3, 18-29, 30-35, 39, 40-42, 43-48.

### A.  The Relevant Universe of Loans and Credit Agreements Have Been Identified by Mattel in Its Allegations—Request Nos. 2-3, 12.

According to Mattel, documents concerning loans and creditors are relevant

to show how it is that MGA has sought to dissipate its assets and launder money, to

MGA's net worth and to show linkages between the various entities.  Mtn. at 15-20,

22-25, 26-32.  However, in each instance, Mattel points to specific transactions that

justify these documents requests.  ████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

Having identified the specific transactions that give rise to its complaint that

1   MGA has been dissipating its assets and engaged in a RICO conspiracy and having

2   identified the specific dates of those transactions, incredibly seeks every single loan

3   agreement, credit agreement, promissory note and *all* communications referring and

4   relating thereto from January 1, 2007 forward.  Request No. 2.  And more

5   incredibly, it seeks the same documents for loans and creditors even if there was no

6   loan or creditor obtained.  Request No. 3.  These requests far outstrip any allegation

7   made by Mattel.  To the extent the loans that MGA has are relevant, they are those

8   reflected in Mattel's allegations. There is no reason to produce documents relating

9   to every capital contribution since January 1, 2007.  Request No. 12.  And in no

10  way can a *denied* loan or a *denied* request for a creditor somehow support a theory

11  that MGA conveyed assets to avoid Mattel's reach or reflect some enterprise.

12  Request No. 3

13  **B.      Mattel Has in Its Possession the Relevant Documents Relating to**
14  **the Wachovia Loan—Request Nos. 22-23.**

15        In Request Nos. 22 and 23, Mattel seeks all agreements and communications

16  between Wachovia and MGA and all documents relating to the amounts extended

17  by and owed to Wachovia.  Mattel justifies these requests by claiming that they

18  show the scope and operation of the enterprise, reflect the manipulation of finances

19  and net worth and reflect Mr. Larian's control.  Mtn. at 31.

20        Mattel has documents relating to the loan made by Wachovia, over 10,000

21  pages worth of documents.  It has documents reflecting the reasons why Wachovia

22  called its loan,

23                                    It got them from Wachovia

24

25                                                                It therefore has

26  the relevant documents.

27        Nor is there a reason to require MGA to produce more or different

28  documents relating to Wachovia.  Wachovia is not alleged to have been part of any

- 16 -

1   enterprise. There is no dispute in this case that Wachovia called the loan. There is

2   no dispute the reasons why it did so. There is therefore no basis for claiming that

3   Wachovia's actions will establish the scope and operation of the enterprise or

4   support the claim that MGA manipulated its finances and net worth.

**C.     The Discovery Master Has Defined the Scope of Relevant Discovery as to IGWT Group and IGWT 826—Request Nos. 18-21, 28-29, 35-36, 40-42.**

7          As for the requests concerning the sale of inventory to IGWT Group and

8   IGWT 826 and their claimed disposition of MGA assets, (Request Nos. 18-21, 28-

9   29, 35-36, 40-42), these documents have been produced by the IGWT entities. Ex.

10  R. More documents should not be required.

11         Moreover, the Discovery Master has already struck a balance between

12  Mattel's claims and documents relevant to them. In ruling on Mattel's subpoenas

13  to these entities, the Discovery Master has ordered the production of all documents

14  referring or relating to any "documents relating to the purchase by, or transfer to,

15  IGWT Group LLC [and IGWT 826] of any items of value, including Bratz

16  products, from MGA, Larian, his spouse, his children, his siblings or their spouses,

17  or any entity or person affiliated with them," documents relating to the revenue

18  generated by Bratz products and the "transfer or disposition of such revenue,"

19  documents sufficient to identify "any ownership interest by Larian, his spouse, his

20  children, his siblings, or their spouses, or any entity or person affiliated with them,"

21  the source of contributions, loans and any sources of funding provided by during

22  the last twelve months to "Larian, his spouse, his children, his siblings, or their

23  spouses, or any entity or person affiliated with them," documents showing

24  compensation, loans, advances and fees paid by IGWT Group to Larian, his spouse,

25  his children, his siblings, or their spouses, or any entity or person affiliated with

26  them," and all communications with Vision Capital, Lexington Financial, Mattel,

27  MGA, Isaac Larian and/or Bratz. Exs. M, N (Subpoenas on IGWT entities); Ex. I

28  (Order No. 3).

- 17 -

1   If as Mattel contends, the IGWT entities are Larian shell companies that are

2   somehow involved in a conspiracy to launder money and hide assets, the

3   documents ordered produced will answer that question.  But what is not necessary,

4   particularly without some different showing, is that MGA should be ordered to

5   produce the same information or information relating to third parties, including

6   bank account information for every bank in which the IGWT entities have placed

7   money.  Request Nos. 35-36, 40-41.  In addition to the burden, there is a right to

8   privacy involved possessed by the third parties to this action.  *Del Campo v.*

9   *American Corrective Counseling Servs., Inc.*, 2008 WL 2978079 (N.D. Cal. Aug.

10   26, 2008) (recognizing the privacy rights should be considered and denying

11   discovery); *Ryan v. Editions Ltd. West, Inc.*, 2007 WL 2348724 (N.D. Cal. Aug. 14,

12   2007) (denying discovery based on privacy interests in financial documents).

13   Mattel has received information about the disposition of the inventory and

14   assets relating to the IGWT entities from those entities and there is no need to

15   require the production of information from MGA or relating to bank accounts.

16   **D.    The Discovery Master Has Defined the Scope of Relevant**
      **Discovery as to Omni 808, OmniNet, Vision Capital —Request**
17   **Nos. 24-27, 30-34, 39, 43-49.**

18   Mattel's justification for discovery concerning Omni 808, OmniNet, Vision

19   Capital and Lexington Financial is no different than that set forth above—it will

20   show dissipation of assets, linkages, and net worth.  Mtn. at 15-20, 22-25, 26-32.

21   But again, the allegations concerning these entities relates to one

22   transaction—the acquisition of the Wachovia loan.  And in response to Mattel's

23   arguments, the Discovery Master has already ordered discovery consistent with

24   Mattel's allegations, including those made in the Third Amended Complaint.

25   Those documents have been produced.  Ex. R.

26

27

28



These documents focus on the transaction about which Mattel is concerned. These documents also will show (or not) the linkages between these various entities.

In addition to not having to produce documents already provided, MGA should not be required to produce documents reflecting bank accounts to or from which Omni 808, Vision Capital, and Lexington Financial transferred any item of

value since January 2007.  Request Nos. 39, 48-49.  Such a request is necessarily overbroad and seeks information relating to those not party to this action. Particularly as the term "ITEM OF VALUE" is defined, MGA should not be required to produce documents.  *See, infra.* ████████████████████ ████████████████████████████████████████ Its involvement, to the extent it had any, began in August and September 2008, relating to the Wachovia loan.  Any discovery is appropriately limited.

## V.    REQUEST NOS. 10, 14, 15 AND 38 ARE OVERBROAD, BURDENSOME AND RAISE THIRD PARTY PRIVACY CONCERNS.

Request Nos. 10, 14, 15 and 38 all broadly seek any "ITEM OF VALUE" that MGA or Mr. Larian transferred to his family or any entity that he controls, the bank accounts from which and to which Mr. Larian transferred any "ITEM OF VALUE" and the W-2s for all family members all since January 1, 2007.   Mattel claims that the Discovery Master has already compelled production of funding and payments to the Larian family and that this information is relevant to issues the transfer of what may be Mattel's property under a theory of disgorgement.  Mtn. at 22.

First, Mattel has documents relating to transfers made to certain Larian family members, including the W-2s issued to them.  To quote Mattel:

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████

Second, these requests as worded are overbroad in the extreme and should not be enforced.  "ITEMS OF VALUE" is a defined term that includes anything at all—from "articles" (whatever that may mean) to "services" to "assistance" to "bonds" and "property" to "any other tangible or intangible matter" (whatever those

1  terms might mean).  Ex. 1 at 14; Ex. 2 at 34.  It therefore includes the handing off

2  of a pen by MGA to a Larian family member[7] and the coffee provided.  And with

3  regard to Mr. Larian, the ITEMS OF VALUE include anything he does in his

4  personal life, whether it is the handing over of a dollar to his niece or allowing the

5  use of his car to drive to work.  *See* Request No. 14.

6       These requests are also overbroad because they seek "*all* documents," i.e.,

7  every single piece of paper that relates to an ITEM OF VALUE.  Mattel is not even

8  asking for *sufficient* documents to show transfers to the Larian family of amounts,

9  or more appropriately sufficient documents to show transfers that are material to

10  MGA and its finances.  Taking the requests on their face, MGA and Mr. Larian

11  would be required to produce a thank you card.

12       And with regard to the bank accounts to which and from which Mr. Larian

13  transferred or has had transferred monies, there is no reason to invade the privacy

14  rights of either the family members who are third parties and third parties to this

15  action that have no involvement whatsoever.  Request No. 38.  This is to say

16  nothing about the fact that this request again uses the defined term "ITEMS OF

17  VALUE," meaning that no transfer of money or any other item can be ignored.  As

18  already noted, there is a right to privacy.  It should not be invaded by this overbroad

19  request.

20       Nor should Mattel be saved by a "meet and confer by motion process."

21  Mattel propounded these overbroad requests.  It already has documents.  Mattel

22  moved on them without meeting and conferring and without making any attempt to

23  determine what they have acknowledged in filings that they have.    Mattel should

24  be left stuck where it decided to place itself.  *See Haensel v. Chrysler Corp.*, 1997

25  WL 537687 *2 (E.D. La. Aug. 22, 1997) (refusing to rewrite discovery requests).

26

27    [7] Because the term "Larian family member" is not defined, this would apparently

28  include the youngest member of the family that might have snatched paperclips off a desk.

1

## CONCLUSION

2

   For all of the foregoing reasons, Mattel's Motion to Compel should be

3

denied.

4

Dated:    July 29, 2009                      Respectfully submitted,

5

                                             WARRINGTON S. PARKER III

6

                                             Orrick, Herrington & Sutcliffe LLP

7

8                                  By:   _____/s/ Warrington S. Parker III_____

9                                             WARRINGTON S. PARKER III
                                             Attorneys for Plaintiff

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO MTN. COMPEL DOCS RE 1ST SET OF
REQUESTS (PHASE 2)
CV-04-0049 SGL (RNBx)