# EXHIBIT

# H

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 90378)
2    (johnquinn@quinnemanuel.com)
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
     Timothy L. Alger (Bar No. 160303)
5    (timalger@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
6  Los Angeles, California  90017-2543
   Telephone:  (213) 443-3000
7  Facsimile:  (213) 443-3100

8  Attorneys for Mattel, Inc.

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11                    EASTERN DIVISION

12  CARTER BRYANT, an individual,         CASE NO. CV 04-9049 SGL (RNBx)

13                 Plaintiff,             Consolidated with
                                          Case No. CV 04-09059
14       v.                               Case No. CV 05-02727

15  MATTEL, INC., a Delaware              MATTEL, INC.'S FIRST SET OF
    corporation,                          REQUESTS FOR DOCUMENTS AND
16                                        THINGS RE CLAIMS OF UNFAIR
                   Defendant.             COMPETITION TO MGA
17                                        ENTERTAINMENT, INC.

18  AND CONSOLIDATED CASES.

19

20

21            Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Mattel,

22  Inc. hereby requests that MGA Entertainment, Inc. ("MGA") respond to these

23  document requests ("Requests") and make available for inspection and copying

24  originals of the following documents within 30 days of service at the offices of

25  Quinn Emanuel Urquhart Oliver & Hedges, LLP, 865 South Figueroa Street, 10th

26  floor, Los Angeles, CA 90017.  MGA shall be obligated to supplement responses to

27  these requests at such times and to the extent required by Rule 26(e) of the Federal

28  Rules of Civil Procedure.

I.    **DEFINITIONS**

For purposes of these Requests, the following definitions apply:

A.    The terms "YOU," "YOUR" and "MGA" mean MGA Entertainment, Inc. and any individual or entity acting directly or indirectly by, through, under or on behalf of MGA Entertainment, Inc., including but not limited to current or former directors, officers, employees, agents, contractors, attorneys, accountants, or representatives of MGA Entertainment, Inc. and any corporation, partnership, association, trust, parent, subsidiary, division, affiliate, predecessor-in-interest and successor-in-interest, and any other PERSON acting on its behalf.

B.    The term "MATTEL" means Mattel, Inc. and all current or former directors, officers, employees, agents, contractors, attorneys, accountants, representatives, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control.

C.    "DOCUMENT" or "DOCUMENTS" means all "writings" and "recordings" as those terms are defined in Rule 1001 of the Federal Rules of Evidence and Rule 34 of the Federal Rules of Civil Procedure and shall include all writings, including but not limited to handwriting, typewriting, printing, image, photograph, photocopy, digital file of any kind, transmittal by (or as an attachment to) electronic mail (including instant messages and text messages) or facsimile, video and audio recordings, and every other means of recording upon any tangible thing, any form of communication or representation, and any record thereby created, regardless of the manner in which the record has been stored, and all non-identical copies of such DOCUMENTS, in the possession, custody, or control of YOU, YOUR counsel, or any other PERSON acting on YOUR behalf.

D.    The term "COMMUNICATION," in the plural as well as the singular, means any transmittal and/or receipt of information, whether such was oral or written, and whether such was by chance, prearranged, formal or informal, and

1  specifically includes, but is not limited to, conversations in person, telephone

2  conversations, electronic mail (including instant messages and text messages),

3  voicemail, letters, memoranda, statements, media releases, magazine and newspaper

4  articles, and video and audio transmissions.

5       E.    "EMBODIMENT" means any representation of the identified

6  product or its retail packaging, whether two-dimensional or three-dimensional, and

7  whether in tangible, digital, electronic or other form, including but not limited to all

8  works, designs, artwork, sketches, drawings, illustrations, representations,

9  depictions, blueprints, schematics, diagrams, images, sculptures, prototypes, models,

10  samples, reductions to practice, developments, inventions and/or improvements, as

11  well as all other items, things and DOCUMENTS in which any of the foregoing are

12  or have been expressed, embodied, contained, fixed or reflected in any manner,

13  whether in whole or in part.

14       F.    "CONTESTED MGA PRODUCTS" means the CONTESTED

15  BRATZ DOLLS PRODUCTS, the CONTESTED BRATZ PETZ PRODUCTS, the

16  CONTESTED BRATZ FUNKY FASHION MAKEOVER HEAD, the

17  CONTESTED 4-EVER BEST FRIENDS PRODUCTS, the CONTESTED

18  MOMMY'S LITTLE DOLL PRODUCTS, and the CONTESTED ALIENRACERS

19  PRODUCTS, and any doll, toy, portion thereof, or version thereof that is now or has

20  ever been known as, or sold, offered for sale, licensed, offered for license or

21  marketed under the name or terms "Bratz," "4-ever Best Friends," "Mommy's

22  Little," "Alienracers," or any derivative thereof, that provides a basis for any claim

23  by YOU against MATTEL, including but not limited to "Bratz Dolls," "Bratz

24  Dogz," "Winter Wonderland," "Bratz Sportz," "Formal Funk," "Sun-Kissed

25  Summer," "Funky Fashion Makeover Head," "Runway Disco," "4-ever Best

26  Friends," "Mommy's Little Patient," and "Alienracers."

27       G.    "CONTESTED BRATZ DOLLS PRODUCTS" means any of

28  the following that provides a basis for any claim by YOU against MATTEL:  (i) any

-3-

MATTEL'S FIRST SET OF DOCUMENT REQUESTS (UNFAIR COMPETITION)

1    EMBODIMENT or project ever known by the name "Bratz" or any derivative

2    thereof (whether in whole or in part and regardless of what such EMBODIMENT or

3    project is or has been also, previously or subsequently called) and any doll or any

4    portion thereof that is now or has ever been known as, or sold, offered for sale,

5    licensed, offered for license or marketed under, the name or term "Bratz" or any

6    derivative thereof (whether in whole or in part and regardless of what such doll is or

7    has been also, previously or subsequently called), and all prototypes, models,

8    samples and versions of such EMBODIMENT, doll or any portion thereof; (ii) any

9    playset and accessory that YOU distribute under the name "Bratz" or any derivative

10   thereof; and/or (iii) any and all other goods, product packaging, advertisements,

11   promotional materials or other thing or item or material manufactured, produced,

12   printed, ordered, marketed, advertised, promoted, displayed, distributed, shipped,

13   imported, exported, licensed, offered for license, sold or offered for sale by YOU or

14   on YOUR behalf under the name "Bratz" or any derivative thereof.

15         H.    "CONTESTED BRATZ PETZ PRODUCTS" means any of the

16   following that provides a basis for any claim by YOU against MATTEL:  (i) any

17   EMBODIMENT or project ever known by the name "Bratz Petz" or any derivative

18   thereof (whether in whole or in part and regardless of what such EMBODIMENT or

19   project is or has been also, previously or subsequently called) and any toy pet or any

20   portion thereof that is now or has ever been known as, or sold, offered for sale,

21   licensed, offered for license or marketed under, the name or term "Bratz" or any

22   derivative thereof (whether in whole or in part and regardless of what such toy pet is

23   or has been also, previously or subsequently called), and all prototypes, models,

24   samples and versions of such EMBODIMENT, toy pet or any portion thereof; (ii)

25   any playset and accessory that YOU distribute under the name "Bratz Petz" or any

26   derivative thereof; and/or (iii) any and all other goods, product packaging,

27   advertisements, promotional materials or other thing or item or material

28   manufactured, produced, printed, ordered, marketed, advertised, promoted,

07975/1928319.2

-4-

1    displayed, distributed, shipped, imported, exported, licensed, offered for license,

2    sold or offered for sale by YOU or on YOUR behalf under the name "Bratz Petz" or

3    any derivative thereof.

4          I.    "CONTESTED BRATZ FUNKY FASHION MAKEOVER

5    HEAD" means any of the following that provides a basis for any claim by YOU

6    against MATTEL: (i) any EMBODIMENT or project ever known by the name

7    "Bratz Funky Fashion Makeover Head" or any derivative thereof (whether in whole

8    or in part and regardless of what such EMBODIMENT or project is or has been

9    also, previously or subsequently called) and any styling head or any portion thereof

10    that is now or has ever been known as, or sold, offered for sale, licensed, offered for

11    license or marketed under, the name or term "Bratz" or any derivative thereof

12    (whether in whole or in part and regardless of what such styling head is or has been

13    also, previously or subsequently called), and all prototypes, models, samples and

14    versions of such EMBODIMENT, styling head or any portion thereof; (ii) any

15    accessory that YOU distribute under the name "Bratz Funky Fashion Makeover

16    Head" or any derivative thereof; and/or (iii) any and all other goods, product

17    packaging, advertisements, promotional materials or other thing or item or material

18    manufactured, produced, printed, ordered, marketed, advertised, promoted,

19    displayed, distributed, shipped, imported, exported, licensed, offered for license,

20    sold or offered for sale by YOU or on YOUR behalf under the name "Bratz Funky

21    Fashion Makeover Head" or any derivative thereof.

22          J.    "CONTESTED 4-EVER BEST FRIENDS PRODUCTS" means

23    any of the following that provides a basis for any claim by YOU against MATTEL:

24    (i) any EMBODIMENT or project ever known by the name "4-ever Best Friends" or

25    any derivative thereof (whether in whole or in part and regardless of what such

26    EMBODIMENT or project is or has been also, previously or subsequently called)

27    and any doll or any portion thereof that is now or has ever been known as, or sold,

28    offered for sale, licensed, offered for license or marketed under, the name or term

1   "4-ever Best Friends" or any derivative thereof (whether in whole or in part and

2   regardless of what such doll is or has been also, previously or subsequently called),

3   and all prototypes, models, samples and versions of such EMBODIMENT, doll or

4   any portion thereof; (ii) any playset and accessory that YOU distribute under the

5   name "4-ever Best Friends" or any derivative thereof; and/or (iii) any and all other

6   goods, product packaging, advertisements, promotional materials or other thing or

7   item or material manufactured, produced, printed, ordered, marketed, advertised,

8   promoted, displayed, distributed, shipped, imported, exported, licensed, offered for

9   license, sold or offered for sale by YOU or on YOUR behalf under the name "4-ever

10  Best Friends" or any derivative thereof.

11         K.     "CONTESTED MOMMY'S LITTLE DOLL PRODUCTS"

12  means any of the following that provides a basis for any claim by YOU against

13  MATTEL: (i) any EMBODIMENT or project ever known by the name "Mommy's

14  Little Patient" or similar name or any derivative thereof (whether in whole or in part

15  and regardless of what such EMBODIMENT or project is or has been also,

16  previously or subsequently called) and any doll or any portion thereof that is now or

17  has ever been known as, or sold, offered for sale, licensed, offered for license or

18  marketed under, the name or term "Mommy's Little Patient" or similar name or any

19  derivative thereof (whether in whole or in part and regardless of what such doll is or

20  has been also, previously or subsequently called), and all prototypes, models,

21  samples and versions of such EMBODIMENT, doll or any portion thereof; (ii) any

22  playset and accessory that YOU distribute under the name "Mommy's Little Patient"

23  or similar name or any derivative thereof; and/or (iii) any and all other goods,

24  product packaging, advertisements, promotional materials or other thing or item or

25  material manufactured, produced, printed, ordered, marketed, advertised, promoted,

26  displayed, distributed, shipped, imported, exported, licensed, offered for license,

27  sold or offered for sale by YOU or on YOUR behalf under the name "Mommy's

28  Little Patient" or similar name or any derivative thereof.

-6-

MATTEL'S FIRST SET OF DOCUMENT REQUESTS (UNFAIR COMPETITION)

**Exhibit H - Page 52**

L.     "CONTESTED ALIENRACERS PRODUCTS" means any of the following that provides a basis for any claim by YOU against MATTEL: (i) any EMBODIMENT or project ever known by the name "Alienracers" or any derivative thereof (whether in whole or in part and regardless of what such EMBODIMENT or project is or has been also, previously or subsequently called) and any toy vehicle, character, or any portion thereof that is now or has ever been known as, or sold, offered for sale, licensed, offered for license or marketed under, the name or term "Alienracers" or any derivative thereof (whether in whole or in part and regardless of what such toy is or has been also, previously or subsequently called), and all prototypes, models, samples and versions of such EMBODIMENT, toy vehicle, character, or any portion thereof; (ii) any playset and accessory that YOU distribute under the name "Alienracers" or any derivative thereof; and/or (iii) any and all other goods, product packaging, advertisements, promotional materials or other thing or item or material manufactured, produced, printed, ordered, marketed, advertised, promoted, displayed, distributed, shipped, imported, exported, licensed, offered for license, sold or offered for sale by YOU or on YOUR behalf under the name "Alienracers" or any derivative thereof.

M.     "CONTESTED MATTEL PRODUCTS" means the CONTESTED MATTEL MY SCENE DOLLS PRODUCTS, the CONTESTED MATTEL MY SCENE PETS PRODUCTS, the CONTESTED MATTEL MY SCENE STYLING HEAD, the CONTESTED MATTEL WEE-3 PRODUCTS, the CONTESTED MATTEL LITTLE MOMMY DOLL PRODUCTS, and the CONTESTED MATTEL ACCELERACERS PRODUCTS, and any doll, toy, portion thereof, or version thereof that is now or has ever been known as, or sold, offered for sale, licensed, offered for license or marketed under the name or terms "My Scene," "Wee-3," "Little Mommy," "AcceleRacerS," or any derivative thereof, that provides a basis for any claim by YOU against MATTEL, including but not limited to "My Scene Dolls," "My Scene Pets," "My Scene Chillin' Out," "My Scene

1   Miami Getaway," "My Scene Night on the Town," "My Scene Jammin' in Jamaica,"

2   "My Scene Guava Gulch Tiki Lounge," "My Scene Sound Lounge," "My Scene

3   Stylin' Head," "Mattel Wee-3," "Mattel Little Mommy Potty Training Baby Doll,"

4   and "Mattel Acceleracers."

5         N.    "CONTESTED MATTEL MY SCENE DOLLS PRODUCTS"

6   means any of the following that provides a basis for any claim by YOU against

7   MATTEL: (i) any EMBODIMENT or project ever known by the name "My Scene"

8   or any derivative thereof (whether in whole or in part and regardless of what such

9   EMBODIMENT or project is or has been also, previously or subsequently called)

10  and any doll or any portion thereof that is now or has ever been known as, or sold,

11  offered for sale, licensed, offered for license or marketed under, the name or term

12  "My Scene" or any derivative thereof (whether in whole or in part and regardless of

13  what such doll is or has been also, previously or subsequently called), and all

14  prototypes, models, samples and versions of such EMBODIMENT, doll or any

15  portion thereof; (ii) any playset and accessory that MATTEL distributes under the

16  name "My Scene" or any derivative thereof; and/or (iii) any and all other goods,

17  product packaging, advertisements, promotional materials or other thing or item or

18  material manufactured, produced, printed, ordered, marketed, advertised, promoted,

19  displayed, distributed, shipped, imported, exported, licensed, offered for license,

20  sold or offered for sale by MATTEL under the name "My Scene" or any derivative

21  thereof.

22        O.    "CONTESTED MATTEL MY SCENE PETS PRODUCTS"

23  means any of the following that provides a basis for any claim by YOU against

24  MATTEL: (i) any EMBODIMENT or project ever known by the name "My Scene

25  Pets" or any derivative thereof (whether in whole or in part and regardless of what

26  such EMBODIMENT or project is or has been also, previously or subsequently

27  called) and any toy pet or any portion thereof that is now or has ever been known as,

28  or sold, offered for sale, licensed, offered for license or marketed under, the name or

1  term "My Scene" or any derivative thereof (whether in whole or in part and

2  regardless of what such toy pet is or has been also, previously or subsequently

3  called), and all prototypes, models, samples and versions of such EMBODIMENT,

4  toy pet or any portion thereof; (ii) any playset and accessory that MATTEL

5  distributes under the name "My Scene Pets" or any derivative thereof; and/or (iii)

6  any and all other goods, product packaging, advertisements, promotional materials

7  or other thing or item or material manufactured, produced, printed, ordered,

8  marketed, advertised, promoted, displayed, distributed, shipped, imported, exported,

9  licensed, offered for license, sold or offered for sale by MATTEL under the name

10  "My Scene Pets" or any derivative thereof.

11         P.    "CONTESTED MATTEL MY SCENE STYLING HEAD"

12  means any of the following that provides a basis for any claim by YOU against

13  MATTEL:  (i) any EMBODIMENT or project ever known by the name "My Scene

14  Styling Head" or any derivative thereof (whether in whole or in part and regardless

15  of what such EMBODIMENT or project is or has been also, previously or

16  subsequently called) and any styling head or any portion thereof that is now or has

17  ever been known as, or sold, offered for sale, licensed, offered for license or

18  marketed under, the name or term "My Scene" or any derivative thereof (whether in

19  whole or in part and regardless of what such styling head is or has been also,

20  previously or subsequently called), and all prototypes, models, samples and versions

21  of such EMBODIMENT, styling head or any portion thereof; (ii) any accessory that

22  MATTEL distributes under the name "My Scene Styling Head" or any derivative

23  thereof; and/or (iii) any and all other goods, product packaging, advertisements,

24  promotional materials or other thing or item or material manufactured, produced,

25  printed, ordered, marketed, advertised, promoted, displayed, distributed, shipped,

26  imported, exported, licensed, offered for license, sold or offered for sale by

27  MATTEL under the name "My Scene Styling Head" or any derivative thereof.

28

-9-

Exhibit H - Page 55

1    Q.    "CONTESTED MATTEL WEE-3 PRODUCTS" means any of

2  the following that provides a basis for any claim by YOU against MATTEL:  (i) any

3  EMBODIMENT or project ever known by the name "Wee-3" or any derivative

4  thereof (whether in whole or in part and regardless of what such EMBODIMENT or

5  project is or has been also, previously or subsequently called) and any doll or any

6  portion thereof that is now or has ever been known as, or sold, offered for sale,

7  licensed, offered for license or marketed under, the name or term "Wee-3" or any

8  derivative thereof (whether in whole or in part and regardless of what such doll is or

9  has been also, previously or subsequently called), and all prototypes, models,

10  samples and versions of such EMBODIMENT, doll or any portion thereof; (ii) any

11  playset and accessory that MATTEL distributes under the name "Wee-3" or any

12  derivative thereof; and/or (iii) any and all other goods, product packaging,

13  advertisements, promotional materials or other thing or item or material

14  manufactured, produced, printed, ordered, marketed, advertised, promoted,

15  displayed, distributed, shipped, imported, exported, licensed, offered for license,

16  sold or offered for sale by MATTEL under the name "Wee-3" or any derivative

17  thereof.

18    R.    "CONTESTED MATTEL LITTLE MOMMY DOLL

19  PRODUCTS" means any of the following that provides a basis for any claim by

20  YOU against MATTEL:  (i) any EMBODIMENT or project ever known by the

21  name "Little Mommy" or any derivative thereof (whether in whole or in part and

22  regardless of what such EMBODIMENT or project is or has been also, previously or

23  subsequently called) and any doll or any portion thereof that is now or has ever been

24  known as, or sold, offered for sale, licensed, offered for license or marketed under,

25  the name or term "Little Mommy" or any derivative thereof (whether in whole or in

26  part and regardless of what such doll is or has been also, previously or subsequently

27  called), and all prototypes, models, samples and versions of such EMBODIMENT,

28  doll or any portion thereof; (ii) any playset and accessory that MATTEL distributes

1  under the name "Little Mommy" or any derivative thereof; and/or (iii) any and all

2  other goods, product packaging, advertisements, promotional materials or other

3  thing or item or material manufactured, produced, printed, ordered, marketed,

4  advertised, promoted, displayed, distributed, shipped, imported, exported, licensed,

5  offered for license, sold or offered for sale by MATTEL under the name "Little

6  Mommy" or any derivative thereof.

7          S.      "CONTESTED MATTEL ACCELERACERS PRODUCTS"

8  means any of the following that provides a basis for any claim by YOU against

9  MATTEL: (i) any EMBODIMENT or project ever known by the name

10  "AcceleRacers" or any derivative thereof (whether in whole or in part and regardless

11  of what such EMBODIMENT or project is or has been also, previously or

12  subsequently called) and any toy vehicle, character, or any portion thereof that is

13  now or has ever been known as, or sold, offered for sale, licensed, offered for

14  license or marketed under, the name or term "AcceleRacers" or any derivative

15  thereof (whether in whole or in part and regardless of what such toy is or has been

16  also, previously or subsequently called), and all prototypes, models, samples and

17  versions of such EMBODIMENT, toy vehicle, character, or any portion thereof; (ii)

18  any playset and accessory that MATTEL distributes under the name "AcceleRacers"

19  or any derivative thereof; and/or (iii) any and all other goods, product packaging,

20  advertisements, promotional materials or other thing or item or material

21  manufactured, produced, printed, ordered, marketed, advertised, promoted,

22  displayed, distributed, shipped, imported, exported, licensed, offered for license,

23  sold or offered for sale by MATTEL under the name "AcceleRacers" or any

24  derivative thereof.

25          T.      The term "PERSON," in the plural as well as the singular, means

26  any natural person, association, partnership, corporation, joint venture, government

27  entity, organization, trust, institution, proprietorship, or any other entity recognized

28  as having an existence under the laws in United States or any other nation.

1    U.    The term "RELATING TO" means any and all of the following

2  terms and their synonyms:  refer to, discuss, constitute, evidence, pertain to,

3  mention, support, contradict, negate, bear on, touch on, contain, embody, reflect,

4  identify, state, deal with, concern, comment on, respond to, relevant to, or describe.

5    V.   "COMPLAINT"  means the Complaint for False Designation of

6  Origin, Affiliation, Association or Sponsorship (15 U.S.C. § 1125(a)); Unfair

7  Competition (15 U.S.C. § 1125(a)); Cal. Bus. & Prof. Code § 17200 *et seq.* and

8  California Common Law); Dilution (15 U.S.C. § 1125(c), Cal Bus. & Prof. Code

9  § 14330 and California Common Law); and Unjust Enrichment, filed by YOU on or

10  about April 13, 2005.

11

12  **II.    INSTRUCTIONS**

13    A.    YOU are to produce all requested DOCUMENTS in YOUR

14  possession, custody or control.

15    B.    If YOU contend that YOU are not required to produce certain

16  DOCUMENTS called for by these Requests on the grounds of a privilege or

17  protection that YOU are not prepared to waive, identify each such DOCUMENT

18  and provide the following information:

19    1.    the date and type of the DOCUMENT, the author(s) and

20    all recipients;

21    2.    the privilege or protection that YOU claim permits YOU

22    to withhold the DOCUMENT;

23    3.    the title and subject matter of the DOCUMENT;

24    4.    any additional facts on which YOU base YOUR claim of

25    privilege or protection; and

26    5.    the identity of the current custodian of the original of the

27    DOCUMENT.

28

-12-

MATTEL'S FIRST SET OF DOCUMENT REQUESTS (UNFAIR COMPETITION)

**Exhibit H** - Page 58

C.     DOCUMENTS shall be produced in their original file folders, or in lieu thereof, any writing on the file folder from which each such DOCUMENT is taken shall be copied and appended to such DOCUMENT and the PERSON for whom or department, division or office for which the DOCUMENT or the file folder is maintained shall be identified.

D.     The DOCUMENTS should be produced in their complete and unaltered form.  Attachments to DOCUMENTS should not be removed.  The DOCUMENTS should not be cut-up, pasted over, redacted or altered in any way for any reason, including alleged nonrelevance.  If emails are produced that had attachments, the attachments shall be attached when produced.

E.     DOCUMENTS in electronic form shall be produced in that form.

F.     In the event that any DOCUMENT called for by these requests has been destroyed or discarded, that DOCUMENT is to be identified by stating:

    1.     the date and type of the DOCUMENT, the author(s) and all recipients;

    2.     the DOCUMENT's date, subject matter, number of pages, and attachments or appendices;

    3.     the date of destruction or discard, manner of destruction or discard, and reason for destruction or discard;

    4.     the PERSONS who were authorized to carry out such destruction or discard;

    5.     the PERSONS who have knowledge of the content, origins, distribution and destruction of the DOCUMENT; and

    6.     whether any copies of the document exist and, if so, the name of the custodian of each copy.

1  REQUEST FOR PRODUCTION NO. 74:

2      All DOCUMENTS, including but not limited to all

3  COMMUNICATIONS with any PERSON, RELATING TO Machado's resignation

4  from Mattel.

5

6  REQUEST FOR PRODUCTION NO. 75:

7      All DOCUMENTS, including but not limited to all

8  COMMUNICATIONS with any PERSON, RELATING TO compensation, money

9  or any other item of value paid to Machado, whether directly or indirectly, by YOU.

10

11  REQUEST FOR PRODUCTION NO. 76:

12      All DOCUMENTS received by YOU, directly or indirectly, from

13  Machado RELATING TO any MATTEL product or plan.

14

15  REQUEST FOR PRODUCTION NO. 77:

16      All DOCUMENTS, including but not limited to all

17  COMMUNICATIONS with any PERSON, RELATING TO YOUR receipt,

18  reproduction, copying, storage, transmission, transfer, retention, destruction,

19  deletion or use of any DOCUMENTS, data and/or information, including but not

20  limited to any compilation of information, that was prepared, made, created,

21  generated, assembled or compiled by or for MATTEL and that YOU received,

22  directly or indirectly, from Machado.

23

24  REQUEST FOR PRODUCTION NO. 78:

25      A copy of each personnel file maintained or created by YOU

26  RELATING TO Machado.

27

28

-29-

MATTEL'S FIRST SET OF DOCUMENT REQUESTS (UNFAIR COMPETITION)

Exhibit H - Page 60

REQUEST FOR PRODUCTION NO. 84:

All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO Trueba's resignation from Mattel.

REQUEST FOR PRODUCTION NO. 85:

All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO compensation, money or any other item of value paid to Trueba, whether directly or indirectly, by YOU.

REQUEST FOR PRODUCTION NO. 86:

All DOCUMENTS received by YOU, directly or indirectly, from Trueba RELATING TO any MATTEL product or plan.

REQUEST FOR PRODUCTION NO. 87:

All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO YOUR receipt, reproduction, copying, storage, transmission, transfer, retention, destruction, deletion or use of any DOCUMENTS, data and/or information, including but not limited to any compilation of information, that was prepared, made, created, generated, assembled or compiled by or for MATTEL and that YOU received, directly or indirectly, from Trueba.

REQUEST FOR PRODUCTION NO. 88:

A copy of each personnel file maintained or created by YOU RELATING TO Trueba.

REQUEST FOR PRODUCTION NO. 94:

All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO Vargas' resignation from Mattel.

REQUEST FOR PRODUCTION NO. 95:

All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO compensation, money or any other item of value paid to Vargas, whether directly or indirectly, by YOU.

REQUEST FOR PRODUCTION NO. 96:

All DOCUMENTS received by YOU, directly or indirectly, from Vargas RELATING TO any MATTEL product or plan.

REQUEST FOR PRODUCTION NO. 97:

All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO YOUR receipt, reproduction, copying, storage, transmission, transfer, retention, destruction, deletion or use of any DOCUMENTS, data and/or information, including but not limited to any compilation of information, that was prepared, made, created, generated, assembled or compiled by or for MATTEL and that YOU received, directly or indirectly, from Vargas.

REQUEST FOR PRODUCTION NO. 98:

A copy of each personnel file maintained or created by YOU RELATING TO Vargas.

07975/1928319.2

-33-

1   REQUEST FOR PRODUCTION NO. 104:

2          All DOCUMENTS, including but not limited to all

3   COMMUNICATIONS with any PERSON, RELATING TO Brisbois' resignation

4   from Mattel.

5

6   REQUEST FOR PRODUCTION NO. 105:

7          All DOCUMENTS, including but not limited to all

8   COMMUNICATIONS with any PERSON, RELATING TO compensation, money

9   or any other item of value paid to Brisbois, whether directly or indirectly, by YOU.

10

11   REQUEST FOR PRODUCTION NO. 106:

12          All DOCUMENTS received by YOU, directly or indirectly, from

13   Brisbois RELATING TO any MATTEL product or plan.

14

15   REQUEST FOR PRODUCTION NO. 107:

16          All DOCUMENTS, including but not limited to all

17   COMMUNICATIONS with any PERSON, RELATING TO YOUR receipt,

18   reproduction, copying, storage, transmission, transfer, retention, destruction,

19   deletion or use of any DOCUMENTS, data and/or information, including but not

20   limited to any compilation of information, that was prepared, made, created,

21   generated, assembled or compiled by or for MATTEL and that YOU received,

22   directly or indirectly, from Brisbois.

23

24   REQUEST FOR PRODUCTION NO. 108:

25          A copy of each personnel file maintained or created by YOU

26   RELATING TO Brisbois.

27

28

1    REQUEST FOR PRODUCTION NO. 114:

2           All DOCUMENTS, including but not limited to all

3    COMMUNICATIONS with any PERSON, RELATING TO Brawer's resignation

4    from Mattel.

5

6    REQUEST FOR PRODUCTION NO. 115:

7           All DOCUMENTS, including but not limited to all

8    COMMUNICATIONS with any PERSON, RELATING TO compensation, money

9    or any other item of value paid to Brawer, whether directly or indirectly, by YOU.

10

11   REQUEST FOR PRODUCTION NO. 116:

12          All DOCUMENTS received by YOU, directly or indirectly, from

13   Brawer RELATING TO any MATTEL product or plan.

14

15   REQUEST FOR PRODUCTION NO. 117:

16          All DOCUMENTS, including but not limited to all

17   COMMUNICATIONS with any PERSON, RELATING TO YOUR receipt,

18   reproduction, copying, storage, transmission, transfer, retention, destruction,

19   deletion or use of any DOCUMENTS, data and/or information, including but not

20   limited to any compilation of information, that was prepared, made, created,

21   generated, assembled or compiled by or for MATTEL and that YOU received,

22   directly or indirectly, from Brawer.

23

24   REQUEST FOR PRODUCTION NO. 118:

25          All DOCUMENTS RELATING TO the existence or extent of

26   competition or substitution between any of the CONTESTED MGA PRODUCTS

27   and any of the CONTESTED MATTEL PRODUCTS.

28

1   <u>REQUEST FOR PRODUCTION NO. 166</u>:

2        To the extent not produced in response to any other Request for

3 Production, all DOCUMENTS and tangible things upon which YOU intend to rely

4 upon in this action.

5

6 DATED: December 18, 2006      QUINN EMANUEL URQUHART OLIVER &

7                        HEDGES, LLP

8

9                By _____

10                   Timothy L. Alger

                      Attorneys for Mattel, Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-47-

MATTEL'S FIRST SET OF DOCUMENT REQUESTS (UNFAIR COMPETITION)

**PROOF OF SERVICE**

1

2      I am employed in the County of Los Angeles, State of California.  I am over

3   the age of eighteen years and not a party to the within action; my business address is

4   NOW Messenger Service, 1301 West Second Street, Suite 206, Los Angeles,

5   California 90026.

6      On December 18, 2006, I true copies of the following document(s) described

7   as:

8      **MATTEL, INC.'S FIRST SET OF REQUESTS FOR DOCUMENTS**

9         **AND THINGS RE CLAIMS OF UNFAIR COMPETITION**

10            **TO MGA ENTERTAINMENT, INC.**

11   on the parties in this action as follows:

12   | Diana M. Torres, Esq. | Keith A. Jacoby, Esq. |
13   | O'Melveny & Myers | Littler Mendelson |
     | 400 So. Hope Street | 2049 Century Park East, 5th Floor |
     | Los Angeles, CA  90071 | Los Angeles, CA  90067-3107 |
14   | Telephone: (213) 430-6000 | Telephone: (310) 553-0308 |
     | Facsimile: (213) 430-6407 | Facsimile: (310) 553-5583 |

15

16   [√]   [PERSONAL] by personally delivering the document listed above to

17   the person(s) at the address(es) set forth above.

18

19      I declare that I am employed in the office of a member of the bar of this court

20   at whose direction the service was made

21

22      Executed on December 18, 2006 at Los Angeles, California.

23

24

25                                        _____

26                                        David Quintana

27

28

07209/2020338.1

Case No. SACV 05-00953 JVS (ANx)
PROOF OF SERVICE

**Exhibit H - Page 66**