# EXHIBIT

# J

**1254**          573 FEDERAL SUPPLEMENT, 2d SERIES

the interest shall be compounded annually, as specified by 28 U.S.C. § 1961(b), not monthly, as Plaintiff requests.

CONCLUSION

For the foregoing reasons, Plaintiff's motion for attorneys' fees, costs and pre-judgment interest (Docket No. 169) is GRANTED IN PART. Defendants are ordered to pay Plaintiff attorneys' fees in the amount of $169,540.36 and costs in the amount of $4,059.12. Defendants must also pay Plaintiff pre-judgment interest on his disability benefits, to be calculated as specified in this order. Defendants' motion for attorneys' fees (Docket No. 174) is DENIED.

IT IS SO ORDERED.



**Carter BRYANT, Plaintiff,**

v.

**MATTEL, INC., Defendant.**

**and Consolidated Actions.**

Nos. CV 04–09049 SGL, CV 04–09059 SGL, CV 05–02727 SGL.

United States District Court, C.D. California.

June 27, 2007.

**Background:** Former design employee brought action against toy manufacturer, alleging rights to fashion dolls purportedly based upon manufacturer's product. Employee and other counter-defendants moved to dismiss manufacturer's counter-claims.

**Holdings:** The District Court, Stephen G. Larson, J., held that:

(1) manufacturer alleged Racketeer Influenced and Corrupt Organizations Act (RICO) "conduct";

(2) manufacturer alleged RICO "enterprise";

(3) manufacturer failed to plead predicate acts of mail and wire fraud;

(4) manufacturer alleged predicate act of Travel Act violation;

(5) manufacturer alleged predicate act of criminal copyright infringement;

(6) manufacturer alleged RICO "injury"; and

(7) court had personal jurisdiction over Mexican corporation.

Motions granted in part and denied in part.

**1. Racketeer Influenced and Corrupt Organizations** ⟜70

Toy manufacturer that sued former design employee, stemming from dispute over rights to fashion dolls purportedly based upon manufacturer's product, alleged sufficient "conduct" to state claim under Racketeer Influenced and Corrupt Organizations Act (RICO); complaint averred that employee secretly developed doll concept while employed by manufacturer, and used manufacturer's resources and employees to do so. 18 U.S.C.A. § 1962(c).

See publication Words and Phrases for other judicial constructions and definitions.

**2. Racketeer Influenced and Corrupt Organizations** ⟜73

Toy manufacturer that sued former design employee, stemming from dispute over rights to fashion dolls purportedly based upon manufacturer's product, alleged sufficient "enterprise" to state claim under Racketeer Influenced and Corrupt Organizations Act (RICO); complaint averred common purpose among participants of attempting to defraud manufacturer and steal its trade secrets, that par-

ticipants coordinated efforts at depriving manufacturer of its proprietary information, and that scheme was continuing. 18 U.S.C.A. § 1962(c).

See publication Words and Phrases for other judicial constructions and definitions.

### 3. Racketeer Influenced and Corrupt Organizations ⟶35

To allege Racketeer Influenced and Corrupt Organizations Act (RICO) "enterprise," party must set forth factual allegations of: (1) group of persons associated together for common purpose of engaging in course of conduct; (2) evidence of ongoing organization, formal or informal; and (3) evidence that various associates function as continuing unit. 18 U.S.C.A. § 1962(c).

### 4. Racketeer Influenced and Corrupt Organizations ⟶70

Toy manufacturer that sued former design employee, stemming from dispute over rights to fashion dolls purportedly based upon manufacturer's product, failed sufficiently to plead predicate acts of mail and wire fraud to state claim under Racketeer Influenced and Corrupt Organizations Act (RICO); alleged predicate acts failed to detail time, place and manner of each purported instance of fraud. 18 U.S.C.A. §§ 1341, 1343, 1962(c); Fed.Rules Civ.Proc. Rule 9(b), 28 U.S.C.A.

### 5. Racketeer Influenced and Corrupt Organizations ⟶70

Toy manufacturer that sued former design employee, stemming from dispute over rights to fashion dolls purportedly based upon manufacturer's product, alleged sufficient predicate act of Travel Act violation to state claim under Racketeer Influenced and Corrupt Organizations Act (RICO); complaint averred that employee and others traveled in interstate commerce to commit commercial bribery in violation of California law. 18 U.S.C.A. §§ 1952,

1962(c); West's Ann.Cal.Penal Code § 641.3(a).

### 6. Racketeer Influenced and Corrupt Organizations ⟶70

Toy manufacturer that sued former design employee, stemming from dispute over rights to fashion dolls purportedly based upon manufacturer's product, alleged sufficient predicate act of criminal copyright infringement to state claim under Racketeer Influenced and Corrupt Organizations Act (RICO); complaint averred that manufacturer's copyrights were willfully infringed for purposes of commercial advantage and private financial gain. 18 U.S.C.A. §§ 1962(c), 2319.

### 7. Racketeer Influenced and Corrupt Organizations ⟶75

Toy manufacturer that sued former design employee, stemming from dispute over rights to fashion dolls purportedly based upon manufacturer's product, alleged sufficient "injury" to business or property to state claim under Racketeer Influenced and Corrupt Organizations Act (RICO); complaint averred damages flowing from theft of trade secrets and confidential information committed by direct competitor, and from infringement of copyrights alleged to made millions of dollars. 18 U.S.C.A. § 1962(c).

See publication Words and Phrases for other judicial constructions and definitions.

### 8. Federal Courts ⟶86

District court had personal jurisdiction over Mexican corporation sued by toy manufacturer, stemming from dispute over rights to fashion dolls purportedly based upon manufacturer's product, pursuant to California long-arm statute; alleged actions taken on behalf of corporation were specifically engineered to result in illegal acquisition of trade secrets belonging to manu-

**1256**          **573 FEDERAL SUPPLEMENT, 2d SERIES**

facturer as California resident.   West's Ann.Cal.C.C.P. § 410.10.

**9. Witnesses ⚖199(2)**

"Joint defense privilege" protects communications between individual and attorney for another when communications are part of ongoing and joint effort to set up common defense strategy.

See publication Words and Phrases for other judicial constructions and definitions.

———

John W. Keker, Audrey Walton-Hadlock, Christa M. Anderson, John Elliot Trinidad, Matthew M. Werdegar, Michael H. Page, Rebekah L. Punak, Keker and Van Nest LLP, San Francisco, CA, for Plaintiff.

John B. Quinn, Juan Pablo Alban, Randa A.F. Osman, Timothy L. Alger, Brett Dylan Proctor, Cyrus S. Naim, Diane C. Hutnyan, Jon D. Corey, Melissa Grant, Michael T. Zeller, Oleg Stolyar, Quinn Emanuel Urquhart Oliver and Hedges, Los Angeles, CA, Sanford I. Weisburst, Quinn Emanuel Urquhart Oliver & Hedges LLP, New York, NY, for Defendant.

ORDER RE MOTIONS HEARD ON JUNE 11, 2007

STEPHEN G. LARSON, District Judge.

Presently before the Court is a multitude of motions filed by a number of parties in these consolidated cases.   The factual allegations underlying the present actions are expansive and complex.   They are set forth below only to the extent necessary for the Court's consideration of the present motions.   At their essence, although involving a number of other legal and factual issues, these cases involve the rights to certain fashion dolls.

The present motions, six in total, focus on four basic issues:  Two of the motions, filed by certain counter-defendants, address the sufficiency of the allegations made by Mattel, Inc. ("Mattel") in its counterclaims; most notably, these motions challenge the sufficiency of the allegations which underlie Mattel's claims based on the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968 ("RICO").   Another motion challenges the Court's exercise of personal jurisdiction over a foreign corporation, MGAE de México, S.R.L. de C.V. ("MGA Mexico").   Two additional motions seek review of a ruling, issued by a court-appointed discovery master, overruling objections made during a party's deposition that were based on the attorney-client and joint-defense privileges.   A final motion heard on June 11, 2007, addresses the Court's scheduling order that divided the issues to be tried in these consolidated cases into two phases.   This last motion will be addressed in a separate order.

The Court has reviewed the parties' filings regarding these motions and held a hearing on June 11, 2007.   For the reasons and in the manner set forth more fully herein, the Court makes the following rulings regarding these motions:

1.   Motion of MGA Entertainment, Inc., ("MGA") and Issac Larian ("Larian") to Dismiss Mattel's Amended Answer and Counterclaims (docket # 189):1 [1] **GRANTED IN PART AND DENIED IN PART.**

2.   Motion of Carter Bryant to Dismiss Counterclaims II, III, V, VII, IX, and XI (docket # 191):  **GRANTED IN PART AND DENIED IN PART.**

———

1.   Joining in this Motion were MGA Entertainment (HK) Ltd. ("MGA Hong Kong"), Carter     Bryant ("Bryant"), and MGA Mexico.

3. Motion of MGA Mexico to Dismiss Mattel's Amended Answer and Counterclaims (docket # 266): **DENIED.**

4. Motion of MGA Objecting to Discovery Master's March 7, 2007, Order (docket # 308): **GRANTED IN PART AND DENIED IN PART.**

5. Motion of Carter Bryant Objecting to Discovery Master's March 7, 2007, Order (docket # 306): **GRANTED IN PART AND DENIED IN PART.**

### I. Factual Allegations

The following allegations appear in the Amended Answer and Counterclaims ("AAC"):

### A. *Bryant's Employment by Mattel*

Carter Bryant was hired by Mattel as a Barbie product designer in January 1999. (AAC ¶ 21.) At that time, Bryant signed an "Employee Confidential Information and Inventions Agreement," wherein he agreed not to assist or work for a Mattel competitor while employed by Mattel and that the designs and inventions he created while employed by Mattel were Mattel property. (AAC ¶¶ 22–23.) Bryant also executed a "Conflict of Interest Questionnaire" wherein he certified that, other than as disclosed, he had not worked for a Mattel competitor in the past year, had not engaged in a business transaction with a Mattel competitor that could create a conflict of interest, and that he would inform Mattel immediately if such an event occurred. (AAC ¶¶ 24–25.) While still employed by Mattel, Bryant used Mattel property and resources to develop and design the Bratz concept. (AAC ¶ 26.) Bryant also allegedly enlisted other Mattel employees to perform work on the Bratz line, in some cases, falsely informing those employees that they were working on a Mattel project. (AAC ¶ 27.)

### B. *MGA's Involvement in Bryant's Conduct*

MGA knew of and encouraged Bryant's misappropriation of Mattel property and resources. (AAC ¶ 33.) Bryant made affirmative misrepresentations to Mattel, including that he was leaving Mattel for "non-competitive" pursuits. (AAC ¶ 28.) Bryant and MGA concealed from Mattel that Bryant developed Bratz while employed by Mattel, that Bryant worked with MGA during the time he was employed by Mattel, and that Larian and others, not Bryant, were the creators of Bratz. (AAC ¶ 35.) Prior to his departure from MGA, Bryant entered into a contract with MGA to provide design services to MGA on a "top priority" basis. (AAC ¶ 36.)

Bryant left Mattel's employ on October 20, 2000; three weeks later, MGA showed the Bratz prototypes to focus groups and retailers. (AAC ¶ 29.) Soon thereafter, MGA showed the Bratz line to retailers at the Hong Kong Toy Fair in January, 2001, and then began manufacturing and selling the dolls to retailers for an annual revenue in the excess of $500 million. (AAC ¶¶ 31–32.)

### C. *Proprietary Information*

#### 1. *Mexico*

Counter-defendant Carlos Gustavo Machado Gomez ("Machado"), nonparty Mariana Trueba Almada ("Trueba"), and nonparty Pablo Vargas San Jose ("Vargas") were upper-level employees at Mattel Mexico. (AAC ¶¶ 38–40.) In the three months before all three simultaneously resigned from Mattel Mexico on April 19, 2004, they were in contact with MGA via an email account with the address "plot 04@aol.com". (AAC ¶ 42.) The three former employees allegedly used this account to supply MGA with confidential and proprietary Mattel information. (AAC ¶ 42.) The three also copied various proprietary

Mattel documents onto USB flash drives prior to resigning. (AAC ¶¶ 44–46.) Shortly before her departure, Trueba increased her access to Mattel's confidential information and attended a meeting at which Mattel personnel analyzed Barbie programs for the United States, Canada, and South America. (AAC ¶ 47.)

Among them, Machado, Trueba, and Vargas stole documents containing information regarding Mattel's future products, production and shipping costs, sales information, customer information, marketing information, and strategic research information both in Mexico and worldwide. (AAC ¶ 48.) The stolen data was not limited to the Mexican market; rather, the information stolen had the potential, and in fact did, give MGA an unfair competitive advantage in the United States and around the world. (AAC ¶ 49.)

In an attempt to conceal his actions, Machado ran a software program on his Mattel computer in order to erase information pertaining to his contact with MGA. (AAC ¶ 51.) When Mattel alerted Mexican authorities about the theft, they seized from MGA's Mexico City offices, pursuant to a search warrant, a large number of documents containing Mattel trade secrets and confidential information. (AAC ¶ 53.)

Shortly after the theft, Machado, Trueba, and Vargas traveled to Los Angeles to meet face-to-face with MGA personnel. (AAC ¶ 52.)

### 2. *Canada*

Jane Brisbois was the Director of Sales for the Girls Division in Canada. (AAC ¶ 71.) When she was hired in 1999, she agreed to preserve and not disclose Mattel's proprietary information. (AAC ¶ 71.) While still employed by Mattel, Brisbois spoke with Larian on September 22, 2005. (AAC ¶ 74.) That same day, Brisbois copied approximately 45 Mattel documents containing Mattel trade secret information

into a USB flash drive that she took from the Mattel Canada office. (AAC ¶ 74.) The files taken by Brisbois included documents regarding Mattel sales, advertising strategies, market analyses, product launch dates, and profit margins in Canada, Mexico, and the United States. (AAC ¶ 74.) Four days later, she resigned from Mattel. (AAC ¶ 74.)

When Mattel learned of Brisbois' misappropriation of Mattel documents, it notified Canadian law enforcement officials, who were able to recover the flash drive and the documents from Brisbois. (AAC ¶ 75.)

### 3. *United States*

Ron Brawer was Mattel's Senior Vice President and General Manager. (AAC ¶ 55.) On September 17, 2004, Brawer informed Mattel that he was leaving Mattel to work for MGA. (AAC ¶ 63.) During Brawer's exit interview, he falsely represented that he had returned all proprietary information to Mattel; specifically, Brawer took the information in his contacts file which included contact information for Mattel customers and Mattel employees. (AAC ¶ 68.) Brawer has since used the contact information to induce certain Mattel employees to join MGA and misappropriate Mattel trade secrets. (AAC ¶ 69.)

MGA has also allegedly hired at least 25 other Mattel employees, some of whom have provided MGA with Mattel's confidential information. (AAC ¶ 77.)

### D. *Larian's Communications Regarding Mattel's New Product Line*

On May 12, 2006, Larian sent an email message to an email distribution list that included a reference to a new Mattel Barbie line ("MY SCENE MY BLING BLING") which Mattel had not yet made public. (AAC ¶ 79.) The distribution of the email included members of the media

BRYANT v. MATTEL, INC.                1259
Cite as 573 F.Supp.2d 1254 (C.D.Cal. 2007)

and many of Mattel's most significant cus-
tomers. (AAC ¶ 78.)  Soon after sending
the email, Larian began calling these sig-
nificant customers and making false repre-
sentations about the product; specifically,
Larian told each that it was the only retail-
er to purchase the product and that Mattel
would not be supporting the product with
television advertising.  (AAC ¶ 80.)

### E.  *Exhibit C*

In Exhibit C to the AAC, Mattel refer-
ences a number of communications, num-
bering well over one hundred, that it con-
tends constitutes predicate acts of mail
fraud or wire fraud.  Exhibit C does not
describe the contents of those communica-
tions.

## II.  Counterclaims Asserted

Based on these allegations, Mattel as-
serts the following counterclaims:  (1)
Copyright Infringement, including willful,
vicarious, and contributory infringement,
asserted against MGA, MGA Hong Kong,
Larian and Bryant; (2) violation of RICO's
substantive      prohibition,     18    U.S.C.
§ 1962(c), asserted as authorized by 18
U.S.C. § 1964(c) against all defendants,
which alleges predicate acts of, *inter alia*,
mail fraud, wire fraud, and criminal copy-
right infringement; (3) a violation of
RICO's prohibition against conspiracies, 18
U.S.C. § 1962(d), asserted against all de-
fendants; (4) state-law misappropriation of
trade secrets against MGA, MGA Mexico,
Larian, and Machado; (5) breach of con-
tract, asserted against Bryant only and
based on certain employment agreements
between Bryant and Mattel; (6) intention-
al interference with contract, asserted
against MGA and Larian and based on
Bryant's employment agreements; (7)
breach of fiduciary duty, asserted against
Bryant and Machado; (8) aiding and abet-
ting breach of fiduciary duty, asserted
against MGA and Larian; (9) breach of
the duty of loyalty, asserted against

Bryant and Machado; (10) aiding and
abetting breach of the duty of loyalty,
asserted against MGA and Larian; (11)
conversion, asserted against all counter-
defendants; (12) violation of California's
unfair competition law, Cal. Bus. & Prof.
Code § 17200, asserted against all counter-
defendants;  and finally, (13) a claim for
declaratory relief.

## III.  Counter–Defendants' Motions
## to Dismiss for Failure to
## State a Claim

The parties have moved to dismiss a
number of Mattel's counterclaims on vari-
ous grounds.  The Court addresses each
claim in turn, considering at all times the
standard for dismissal pursuant to Fed.
R.Civ.P. 12(b)(6).

### A.  *Standard for Dismissal Pursuant to*
### *Fed.R.Civ.P. 12(b) (6)*

In lieu of an answer, a party may, as the
counter-defendants have here, file a mo-
tion to dismiss pursuant to Fed.R.Civ.P.
12(b) (6), which provides that such a mo-
tion may be made where the pleader has
"fail[ed] to state a claim upon which relief
can be granted."  *Id.*  In deciding a Rule
12(b)(6) motion, the Court must also con-
sider the requirements of Fed.R.Civ.P.
8(a), which requires only a "short and plain
statement of the claim showing that the
pleader is entitled to relief or, when the
claim at issue avers fraud or mistake", the
motion must be considered in conformity
with Fed.R.Civ.P. 9(b), which requires
fraud and mistake to be pleaded with par-
ticularity.  *See* 5B Charles A. Wright &
Arthur Miller, *Federal Practice and Pro-
cedure*, § 1356 (1990); James Wm. Moore,
*Moore's    Federal    Practice*,   Vol.   2
§ 12.34[1][c].

In bringing a motion pursuant to Rule
12(b)(6), the moving party has the burden
of persuading the Court that the complaint
has failed to state a claim upon which

relief can be granted. *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir.). *cert. denied*, 501 U.S. 1222, 111 S.Ct. 2839, 115 L.Ed.2d 1007 (1991). In considering the motion, "courts must consider the complaint in its entirety," and read it in the light most favorable to the plaintiff, accepting as true all factual allegations in the complaint, as well as reasonable inferences to be drawn therefrom. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, —— U.S. ——, 127 S.Ct. 2499, 2509, 168 L.Ed.2d 179 (2007); *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir.1998). However, the Court need not accept any unwarranted deductions of fact, or conclusory legal statements cast in the form of factual allegations. *See Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir.), *cert. denied*, 454 U.S. 1031, 102 S.Ct. 567, 70 L.Ed.2d 474 (1981).

Generally, a court cannot consider evidence in deciding a Rule 12(b)(6) motion; however, a court may consider exhibits attached to the complaint as well as documents that are not physically attached to the complaint but "whose contents are alleged in [the] complaint and whose authenticity no party questions." *Branch v. Tunnell*, 14 F.3d 449, 453–54 (9th Cir.1994), *cert. denied*, 512 U.S. 1219, 114 S.Ct. 2704, 129 L.Ed.2d 832 (1994). Facts of which a court may take judicial notice pursuant to Fed.R.Evid. 201 are also properly considered. *Mir v. Little Company of Mary Hospital*, 844 F.2d 646, 649 (9th Cir.1998).

**B.** *RICO Claims*

The counter-defendants devote most of their motions to the sufficiency of the allegations regarding Mattel's RICO claims. The Court's analysis begins, as it must when considering a federal statute, with the language of that statute. The substantive RICO prohibition at issue is found in 18 U.S.C. § 1962(c):

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

*Id.* Conspiracies to violate this substantive prohibition are themselves prohibited by § 1962(d), which states that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." *Id.* Many of these terms are defined by the statutory language, including "racketeering activity," "enterprise," and "pattern of racketeering activity":

> (1) "racketeering activity" means . . . (B) any act which is indictable under any of the following provisions of title 18, United States Code: . . . section 1341 (relating to mail fraud), section 1343 (relating to wire fraud), . . . section 1512 (relating to tampering with a witness, victim, or an informant), . . . section 1952 (relating to [interstate and foreign travel or transportation in aid of racketeering enterprises] ), [and] section 2319 (relating to criminal infringement of a copyright) [.]

> . . . .

> (4) "enterprise" includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity;

> (5) "pattern of racketeering activity" requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment)

after the commission of a prior act of racketeering activity[.]

18 U.S.C. § 1961.

In considering a Rule 12(b)(6) motion seeking to dismiss a RICO claim, the Court measures the sufficiency of alleged predicate acts of wire fraud and mail fraud by the Rule 9(b) "pleading-with-particularity" standard; however, the Court measures the sufficiency of all other predicate acts by the more lenient standard set forth in Rule 8(a). *Compare* Fed.R.Civ.P. 9(b) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.") *with* Fed.R.Civ.P. 8(a) ("A pleading which sets forth a claim for relief, ... shall contain ... (2) a short and plain statement of the claim showing that the pleader is entitled to relief ...."); *see Lancaster Community Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir.1991) (applying Rule 9(b) standard to allegations of mail fraud and noting that "[t]he Ninth Circuit has repeatedly insisted that [Rule 9(b)] be followed in RICO actions alleging the predicate act of mail fraud."), *cert. denied*, 502 U.S. 1094, 112 S.Ct. 1168, 117 L.Ed.2d 414 (1992).

In order to state its claim under § 1962(c), Mattel "must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (5) causing injury to [its] business or property." *Ove v. Gwinn*, 264 F.3d 817, 825 (9th Cir.2001) (internal quotation marks and citation omitted). Here, counter-defendants' motions challenge the first, second, fourth, and fifth elements.

### 1. *"Conduct or Participate"*

[1] Bryant contends that his role in any alleged scheme or enterprise is too tenuous to constitute the "conduct" necessary to impose RICO liability. In order to

have RICO liability imposed upon him, a defendant must "conduct or participate, directly or indirectly, in the conduct of [an] enterprise's affairs through a pattern of racketeering activity ...." 18 U.S.C. § 1962(c). The United States Supreme Court has elaborated on this statutory language in *Reves v. Ernst & Young*, 507 U.S. 170, 179, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993), wherein it noted:

> [T]he word "participate" makes clear that RICO liability is not limited to those with primary responsibility for the enterprise's affairs, just as the phrase "directly or indirectly" makes clear that RICO liability is not limited to those with a formal position in the enterprise, but some part in directing the enterprise's affairs is required.

*Id.* Here, Mattel has alleged that Bryant secretly developed Bratz while employed by Mattel and using Mattel's resources and employees, that he concealed that fact when he had a duty to disclose it, and that he did these things in order to facilitate the development of the Bratz concept by Mattel's direct competitor, in violation of, *inter alia*, criminal copyright law. These allegations, if proven to be true, are sufficient to impose RICO liability on Bryant.

### 2. *Enterprise*

[2] Bryant's motion challenges the sufficiency of the allegations regarding a RICO enterprise. That enterprise is alleged to be an "association-in-fact" enterprise comprised of the counter-defendants, Brawer, Trueba, Vargas, Brisbois, and others. (AAC ¶ 89.) Mattel alleges that counter-defendants participated in or conducted the affairs of the association-in-fact enterprise through a pattern of racketeering activities, including, as detailed in the AAC, predicate acts of mail fraud, wire fraud, evidence tampering, interstate and foreign travel to aid racketeering activities, and criminal copyright infringement. (AAC ¶ 90.) The counter-defendants' goal

is alleged to have been to "execut[e] or attempt to execut[e][a] scheme to improperly defraud Mattel and steal its trade secret or otherwise confidential and proprietary information . . . ." (AAC ¶ 90.)

A recent *en banc* decision of the Ninth Circuit sets forth a comprehensive analysis of the sufficiency of allegations regarding a RICO enterprise necessary to state a claim. *See Odom v. Microsoft Corp.*, 486 F.3d 541, 2007 WL 1297249 (9th Cir.2007) (designated for publication). That decision provides the blueprint for the Court's present analysis.

*Odom* involved an alleged scheme involving consumers who purchased computers from Best Buy retail stores. *Id.* at 543. The computers would include a Microsoft compact disc that the cashier would scan; the consumer's credit card was also scanned for purchase. *Id.* The credit card information was transmitted to Microsoft, and Microsoft would, at some point, begin making unauthorized charges to the credit card used to purchase the computer, ostensibly for Microsoft's provision of internet services. *Id.* Odom brought substantive RICO and RICO conspiracy claims based on these allegations. *Id.* at 544.

The Ninth Circuit first noted the evidenced judicial resistance to RICO in the lower courts, contrasted with the Supreme Court's four reversals of such narrow readings of RICO. *Id.* at 545–47 (citing *United States v. Turkette*, 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981)) (rejecting notion that RICO prohibited only the infiltration of legitimate businesses by organized crime); *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 481, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985) (rejecting notion that RICO could be used to impose civil liability only where the defendant had been criminally convicted and that such liability was limited to a narrow measure of damages); *National Organization for Women v. Scheidler*, 510 U.S. 249,

114 S.Ct. 798, 127 L.Ed.2d 99 (1994) (rejecting the notion that RICO liability could be imposed only when the acts of a RICO enterprise had an economic motive); and *Cedric Kushner Promotions v. King*, 533 U.S. 158, 121 S.Ct. 2087, 150 L.Ed.2d 198 (2001) (reversing lower court's ruling that no RICO claim was stated where president and sole shareholder of a corporation was alleged to have associated with his wholly owned corporation as a RICO "enterprise," and relying on fact that person and corporation were separate legal entities). In *Odom*, the Ninth Circuit understandably viewed these four holdings as a "general instruction that we should not read the statutory terms of RICO narrowly." *Odom*, 486 F.3d at 547 (internal citation omitted).

In *Odom*, the Ninth Circuit clarified—and relaxed—the standard for pleading and proving an "associated-in-fact" enterprise such as the one alleged here:

> The definition of "enterprise" in the text of RICO is fairly straightforward. In its entirety, the definition is as follows: " 'enterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). As is evident from the text, this definition is not very demanding. A single "individual" is an enterprise under RICO. Similarly, a single "partnership," a single "corporation," a single "association," and a single "other legal entity" are all enterprises. At issue in this case is the last kind of enterprise listed in the definition—a "group of individuals associated in fact." It is undisputed that a corporation can be an "individual" for purposes of an associated-in-fact enterprise.

*Id.* at 548.

[3] The Ninth Circuit acknowledged that "enterprise" must be something

BRYANT v. MATTEL, INC.    **1263**
Cite as 573 F.Supp.2d 1254 (C.D.Cal. 2007)

greater than merely a pattern of racketeering activity; however, the court rejected the notion that an enterprise must have a particular ascertainable organizational structure. *Id.* at 551 ("We take this opportunity to join the circuits that hold that an associated-in-fact enterprise under RICO does not require any particular organizational structure, separate or otherwise.") (citations omitted). A party need only set forth factual allegations of "a group of persons associated together for a common purpose of engaging in a course of conduct," "evidence of an ongoing organization, formal or informal," and "evidence that the various associates function as a continuing unit." *Id.* at 552 (internal citations and quotation marks omitted).

As for the common purpose, it was met in Odom, where the plaintiff had alleged the following:

[D]efendants had the common purpose of increasing the number of people using Microsoft's Internet Service, and doing so by fraudulent means. Best Buy furthered this common purpose by distributing Microsoft Internet Trial CD's and conveying its customers' debit and credit card information to Microsoft. Microsoft then used the information to activate customer accounts.

*Id.* Here, Mattel has alleged the common purpose of attempting to defraud Mattel and steal its trade secrets. Mattel's many factual allegations, detailed herein, support this alleged common purpose.

As for the "ongoing organization" requirement, the Ninth Circuit in *Odom* noted that the plaintiffs had met that element, which was met where the organization was alleged to be "a vehicle for the commission of two or more predicate crimes." *Id.* (internal quotation marks and citation

omitted). The Ninth Circuit noted the following factual allegations:

Microsoft and Best Buy established mechanisms for transferring plaintiffs' personal and financial information from Best Buy to Microsoft. That information then allowed Microsoft to activate plaintiffs' Internet accounts without their knowledge or permission. These mechanisms enabled Microsoft to bill plaintiffs improperly for MSN services in 2001, 2002 and 2003.

*Id.* Here, plaintiffs have alleged that the counter-defendants coordinated their many efforts at depriving Mattel of its proprietary information and its intellectual property. The allegations regarding common use of the "plot04@aol.com" email address to transfer confidential Mattel information to MGA support the finding of an "ongoing organization." So, too, do the allegations regarding the repeated communications between Bryant and MGA.

The "continuing unit" requirement does not appear to the Court to mandate that the organization continues to this day;[2] rather, the requirement is related to the notion that RICO was not meant to address discrete instances of fraud or criminal conduct. "[T]he continuity requirement focuses on whether the associates' behavior was 'ongoing' rather than isolated activity." *Id.* at 553 (internal quotation marks and citation omitted). Related to that concern, it is also clear to the Court that this requirement is related to the duration of the ongoing racketeering activities. *See id.* ("An almost two-year time span is far more than adequate to establish that Best Buy and Microsoft functioned as a continuing unit."). Here, the allegations do not reveal that the conduct complained of was mere isolated activity; rather, Mat-

---

**2.** Nevertheless, Mattel alleges that the enterprise exists to this day by virtue of its contin-

ued use of Mattel's information and property.

tel sets forth allegations of racketeering activity that spanned a period of three years. The allegations describe a scheme consisting of corporate warfare between competitors that has been waged over a long period of time and waged on a number of fronts, both foreign and domestic. The "continuing unit" requirement is therefore satisfied.

Accordingly, the Court finds that Mattel has sufficiently pleaded the existence of a RICO enterprise.

### 3. *Predicate Acts of Racketeering Activity*

### a. *Mail Fraud and Wire Fraud*

The criminal prohibition against mail fraud is found in 18 U.S.C. § 1341:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, . . . for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, . . . shall be fined under this title or imprisoned not more than 20 years, or both.

*Id.* The Ninth Circuit has described the elements of mail fraud as "(1) proof of a scheme to defraud; (2) using or causing the use of the mails to further the fraudulent scheme; and (3) specific intent to defraud." *United States v. Rogers,* 321 F.3d 1226, 1229 (9th Cir.2003) (internal citation omitted).

The criminal prohibition against wire fraud is similar:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, . . . transmits or causes to be transmitted by means of wire, radio, or

television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1343. The Ninth Circuit has described the elements of wire fraud as "(1) a scheme to defraud; (2) use of the wires in furtherance of the scheme; and (3) a specific intent to deceive or defraud." *United States v. Shipsey,* 363 F.3d 962, 971 (9th Cir.2004) (citations omitted).

As all parties acknowledge, the predicate acts of mail fraud and wire fraud must be pleaded with particularity pursuant to Fed.R.Civ.P. 9(b). Specifically, Mattel must detail "the time, place, and manner of each act of fraud, [and it must set forth] the role of each defendant in each scheme." *Lancaster Community Hosp.,* 940 F.2d at 405. This standard applies in RICO actions alleging predicate acts of mail fraud. *Id.*

[4] Here, Mattel sets forth allegations of predicate acts of mail fraud and wire fraud referenced in Exhibit C to the AAC. However, these alleged predicate acts are insufficiently pleaded because they fail to adequately describe the contents of the communications; specifically, they fail to detail time, place and manner of "each act of fraud." The substantive RICO claim is therefore dismissed to the extent it is premised on those communications. Mattel is **GRANTED** leave to amend the RICO claim based on this insufficiency; Mattel must attach to the Second Amended Answer and Counterclaims ("SAAC") copies of the referenced communications. The contents of packages referenced in Exhibit C must be described in order to meet the Rule 9(b) requirements.

At oral argument, counsel for MGA argued that the substance of many, if not all of the communications, cannot be read to

further a scheme to defraud. That argument will be considered another day, after Mattel files the SAAC. However, the Court takes the opportunity today to note that, given the broad scope of the alleged scheme to defraud, including the criminal copyright infringement allegations, otherwise innocuous and routine communications regarding day-to-day operations and product development may be found to be in furtherance of that scheme. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* —— U.S. ——, 127 S.Ct. 2499, 2509, 168 L.Ed.2d 179 (2007) (noting that, in considering a Rule 12(b)(6) motion, "courts must consider the complaint in its entirety").

Counter-defendants also argue that Mattel failed to plead each defendant's role in furtherance of the scheme to defraud. As interpreted by the Ninth Circuit, the Rule 9(b) standard clearly requires that a plaintiff so plead. *Lancaster Community Hosp.,* 940 F.2d at 405. However, the Court will view the communications alleged to constitute mail and wire fraud in conjunction with all the allegations set forth regarding the alleged scheme in the counterclaims. *See Flood v. Makowski,* No. 3:CV–03–1803, 2004 WL 1908221, at *14 (M.D.Pa., Aug. 24, 2004) (applying the principle that reasonable inferences in favor of a plaintiff must be made when considering a Rule 12(b)(6) motion and noting that "[a]lthough Plaintiffs' Complaint does not expressly identify how each particular mail or wire communication furthered the scheme, the Complaint clearly alleges facts which create an unquestionable inference that the alleged communications furthered the scheme.").

Counter-defendants also argue that, because the emails alleged to constitute wire fraud were sent among individuals physically located in the same state, Mattel will not be able to establish the interstate nature of the communications. *See* 18 U.S.C. § 1343 (setting forth the requirement that

communications be transmitted "in interstate or foreign commerce"). Mattel has alleged that the communications were transmitted in interstate or foreign commerce. (AAC ¶ 93(b).) This suffices at the pleadings stage; however, eventually Mattel will be called upon to support these allegations with evidence. *See First Pacific Bancorp, Inc. v. Bro,* 847 F.2d 542, 547 (9th Cir.1988) (implicitly holding that wire fraud must be supported, at the summary judgment stage, by evidence of interstate wire fraud).

The Court dismisses the RICO claim to the extent it is based on the alleged predicate acts of mail fraud and wire fraud because those acts are not pleaded with particularity as required by Rule 9(b). Mattel is **GRANTED** ten days' leave to file a SAAC that incorporates and attaches and/or describes the communications and the contents of packages referenced in Exhibit C.

**b.   *Evidence Tampering***

Unlike the mail fraud and wire fraud allegations, the allegations regarding the remaining predicate acts are governed by the more lenient pleading standards of Rule 8(a). *See Slade v. Gates,* No. 01–8244–RMT, 2002 WL 31387263, at *6 (C.D.Cal., Oct. 11, 2002). The Court considers the sufficiency of those remaining allegations pursuant to this Rule.

The criminal prohibition against tampering with evidence is found at 18 U.S.C. § 1512:

> Whoever corruptly ... alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding ... shall be fined under this title or imprisoned not more than 20 years, or both.

*Id.* Mattel's opposition makes clear that its evidence tampering allegations are based

**1266**          **573 FEDERAL SUPPLEMENT, 2d SERIES**

upon two categories of documents: The first category of documents, perhaps composed of only one multi-page document, involves the alleged alteration of Bryant's contract with MGA to remove a fax header showing that the date of its execution, which predated the effective date of Bryant's resignation from Mattel.[3] The second category of documents are those filed with the United States Copyright Office, which are alleged to omit the disclosure that certain Bratz drawings were "works for hire," and which are alleged to have had alterations made to certain relevant dates. (*See* AAC ¶ 35; Mattel Opp. to MGA's Motion at 9.)

As to the first category, a predicate act is sufficiently alleged. Mattel has alleged that a document was altered in a manner designed to conceal critical evidence, highly relevant to the present official proceeding, regarding the timing of the execution of the document.

Conversely, it is unclear whether Mattel has alleged a predicate act with respect to the second category of documents. The issue of whether submitting fraudulent registrations and "altering relevant dates" on documents submitted to the United States Copyright Office has not been fully briefed by the parties; the issue was framed in this manner only upon the filing of the reply.[4] Therefore, the Court reserves this issue for a later date, and anticipates that it will be addressed by the parties in a motion to dismiss the SAAC.

### c.  *Travel Act Violation*

**[5]** Federal criminal law prohibits interstate or foreign travel to aid in racketeering activities. 18 U.S.C. § 1952; *see also* 18 U.S.C. § 1961 (defining a violation of § 1962 as a RICO predicate act). In relevant part, the criminal prohibition states:

> Whoever travels in interstate or foreign commerce or uses the mail or any facility in interstate or foreign commerce, with intent to ... promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity, and thereafter performs or attempts to perform ... [such an act,] shall be fined under this title, imprisoned not more than 5 years, or both ....
>
>               ....
>
> As used in this section ... "unlawful activity" means ... extortion, bribery, or arson in violation of the laws of the State in which committed or of the United States ....

*Id.* Mattel alleges that Bryant and others traveled in interstate commerce to commit commercial bribery in violation of California's prohibition against commercial bribery, which in relevant part provides:

> (a) Any employee who solicits, accepts, or agrees to accept money or any thing of value from a person other than his or her employer, other than in trust for the employer, corruptly and without the knowledge or consent of the employer, in return for using or agreeing to use his or her position for the benefit of that other person, and any person who offers or gives an employee money or any thing of value under those circumstances, is guilty of commercial bribery.

---

**3.**  The AAC merely alleges that counter-defendants Bryant and MGA "tamper[ed] with and defac[ed] documents which showed that ... Bryant was a Mattel employee while he was working for and with MGA ...." (AAC ¶ 35.) However, it is clear from other filings by the parties that, at a minimum, this allegation refers to MGA's contract with Bryant.

**4.**  The Court does not view this failure as the fault of any party.

Cal.Penal Code § 641.3. Several allegations support a violation of § 641.3(a), which in turn supports a violation of 18 U.S.C. § 1952. Mattel has alleged that Bryant, while still employed by Mattel, entered into a contract with MGA to provide design services to MGA on a "top priority" basis, and used Mattel property, employees, and resources to develop and design the Bratz concept.

Counter-defendants argue that the requirement under California's commercial bribery statute that a violator act "corruptly" is not met because Bryant did not intend to injure Mattel. Such an intent is not required; rather it is sufficient that Bryant is alleged to have intended to defraud Mattel. *See* Cal.Penal Code § 341.3(d) (3) (defining "corruptly" as involving the intent "to injure *or* defraud") (emphasis added).

### d.  *Criminal Copyright Violations*

The parties dispute the relevant pleading standard that governs the allegations which underlie the criminal copyright violation claim. Counter-defendants would have the Court apply the more exacting Rule 9(b) standards because, in their assessment, the claim "sounds in fraud." Mattel, however, contends that there is no reason to depart from the more lenient Rule 8(a) standard generally applied to copyright claims because, in its assessment, the claims "sound in copying, not fraud." (Mattel Opposition to MGA's Motion at 4.)

The recent Ninth Circuit case on this issue, cited by both parties, stands for the unremarkable proposition that, consistent with Rule 9(b), all *averments* of fraud must be pleaded with particularity, regardless of whether fraud is an essential element of the claim to which the averment relates. *See Vess v. Ciba–Geigy Corp. USA,* 317 F.3d 1097, 1103 (9th Cir.2003); Fed.R.Civ.P. 9(b) ("In all *averments* of

fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.") (emphasis added).

Considering Rules 8(a), 9(b), and the teachings of *Vess,* a spectrum emerges. At the left end of this spectrum are claims that do not involve any allegations of fraud. Those need only satisfy Rule 8(a)'s "short and plain statement" standard. At the opposite end of the spectrum are claims based solely on fraud, and the facts underlying such a claim must be alleged with particularity pursuant to Rule 9(b). Lying closer to the Rule 9(b) end of the spectrum is a category of claims discussed in *Vess:*

> In cases where fraud is not a necessary element of a claim, a plaintiff may choose nonetheless to allege in the complaint that the defendant has engaged in fraudulent conduct. In some cases, the plaintiff may allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of a claim. In that event, the claim is said to be "grounded in fraud" or to "sound in fraud," and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b).

*Vess,* 317 F.3d at 1103–04 (internal citations omitted). It is into this category MGA contends that the allegations of criminal copyright claims fit, and MGA therefore contends that all allegations regarding the criminal copyright claims must be pleaded with particularity.

However, *Vess* sets up another category, lying closer to the Rule 8(a) part of the spectrum (but nevertheless requiring pleading with some particularity):

> In other cases, however, a plaintiff may choose not to allege a unified course of fraudulent conduct in support of a claim, but rather to allege some fraudulent and some non-fraudulent conduct. In such cases, only the allegations

of fraud are subject to Rule 9(b)'s heightened pleading requirements.... The rule does not require that allegations supporting a claim be stated with particularity when those allegations describe non-fraudulent conduct.

[In other words,] in a case where fraud is not an essential element of a claim, only allegations ("averments") of fraudulent conduct must satisfy the heightened pleading requirements of Rule 9(b). Allegations of non-fraudulent conduct need satisfy only the ordinary notice pleading standards of Rule 8(a).

*Id.* at 1104–05.

[6] Whether fraud is an essential element of criminal copyright infringement must be determined by reference to the statutory language and any interpretative case law. In relevant part, the prohibition against criminal copyright infringement provides: "Any person who violates section 506(a) (relating to criminal offenses) of title 17 shall be punished as provided [herein] in and such penalties shall be in addition to any other provisions of title 17 or any other law." 18 U.S.C. § 2319. In turn, the relevant provision in 17 U.S.C. § 506 states that "[a]ny person who willfully infringes a copyright shall be punished as provided under section 2319 of title 18, if the infringement was committed ... for purposes of commercial advantage or private financial gain ...." 17 U.S.C. § 506(a)(1)(A). The elements of the offense are easily gleaned from the straightforward statutory language: "Criminal infringement of copyright has three elements: (1) infringement of a copyright (2) done wilfully (3) for purposes of commercial advantage or private financial gain." *United States v. Goss*, 803 F.2d 638, 642 (11th Cir.1986).

Clearly, fraud is not an essential element of a criminal copyright claim, taking it out of the category at the far end of the spectrum described above, and necessitating an inquiry into whether Mattel has chosen to incorporate a fraud element into its criminal copyright claim. The AAC at ¶ 93(e) reveals that the criminal copyright claim is premised upon the "willfull[ ] infringe[ment of] Mattel's copyrights, including with respect to documents containing Mattel trade secret and confidential information ...." The Opposition fills in more details regarding this claim, noting that the criminal copyright claim is premised upon the Bratz-related works, Bratz-derivative works, and works contained within Mattel's allegedly purloined trade secrets and confidential information. (Mattel Opposition to MGA's Motion at 5).

These allegations do not "allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of a claim" such that the claim could be said to "sound in fraud" and therefore require pleading with particularity as to the entire claim. The allegations establish that much of the conduct complained of consists of simple copying of the Bratz-related works or the creation of Bratz-derivative works. Such allegations are unrelated to allegations of fraud. Therefore, if this claim falls anywhere on the spectrum other than the Rule 8(a) category, it falls in the category described by *Vess* as those claims in which a claimant chooses to "allege some fraudulent and some non-fraudulent conduct." *Id.* at 1104.

When one considers that the alleged predicate acts of criminal copyright infringement are but a small part of a larger, and singular, claim brought pursuant to RICO, it is evident that the RICO claim falls neatly into the category of claims that are based partly on fraudulent and partly on non-fraudulent conduct. The Court has already found that certain fraudulent conduct—that supporting the alleged predicate acts of mail fraud and wire fraud—is

BRYANT v. MATTEL, INC. 1269
Cite as 573 F.Supp.2d 1254 (C.D.Cal. 2007)

insufficiently pleaded. The current focus, however, is whether the allegations supporting the predicate acts of criminal copyright infringement involve fraudulent conduct.

Here, there are two types of works allegedly infringed. The first type is the Bratz-related and Bratz-derivative works. The second type is Mattel's other trade secrets and confidential information. Both types are alleged—with particularity—to have been procured by MGA through fraudulent infringement, but the criminal copyright infringement predicate acts do not implicate that fraudulent conduct. Rather, they implicate only questions of whether counter-defendants wilfully infringed Mattel's works for commercial advantage or private financial gain. Here, Mattel has sufficiently alleged predicate acts of criminal copyright infringement by alleging that MGA and other counter-defendants willfully infringed its copyrights for purposes of gaining commercial advantage and private financial gain. As Mattel correctly contends, state of mind, in this instance willfulness, may be pleaded generally. *See Ferguson Beauregard/Logic Controls v. Mega systems, LLC*, 350 F.3d 1327, 1343 (Fed.Cir.2003).

### 4. *Injury to Business or Property*

[7] "Recovery under RICO is limited to those injuries flowing from predicate acts . . . ." *Resolution Trust Corp. v. Keating*, 186 F.3d 1110, 1117 (9th Cir.1999) (citing *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 497, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985)). Here, Mattel has alleged damages flowing from the alleged acts of racketeering activity. (AAC ¶ 96). Damages easily flow from theft of trade secrets and confidential information committed by a direct competitor and from infringement of copyrights that are alleged to have been used to make millions—if not billions—of dollars.

Counter-defendants argue that Mattel lacks standing to sue on behalf of its subsidiaries. This issue arises because many of the allegations of the thefts of trade secrets involve actions taken in Mexico or Canada by employees of Mattel's foreign subsidiaries. Mattel argues that it is not attempting to sue for damages incurred by its subsidiaries; rather, Mattel alleges that much of the confidential information stolen by the employees of Mattel's subsidiaries belonged not to Mattel's subsidiaries, but to Mattel itself. Based on these allegations, Mattel may sue for damages it sustained. Mattel may not sue for damages incurred by its foreign subsidiaries.

### 5. *Ruling on Motions to Dismiss*

The Motions to Dismiss the RICO claims are **GRANTED** in part. As set forth herein, the alleged predicate acts of mail fraud and wire fraud are insufficiently alleged, and Mattel is **GRANTED** leave to amend the AAC.

### C. *Trade Secrets*

MGA contends that Mattel has failed to plead its trade secrets with sufficient particularity to comply with its duties under Cal.Code Civ. P. § 2019.210, which provides:

> In any action alleging the misappropriation of a trade secret under the Uniform Trade Secrets Act . . . , before commencing discovery relating to the trade secret, the party alleging the misappropriation shall identify the trade secret with reasonable particularity subject to any orders that may be appropriate under Section 3426.5 of the Civil Code [involving in camera reviews and sealing of court documents].

*Id.* Based on the unambiguous language of the statute, the Court agrees with Mattel's characterization of this requirement as one

related to discovery rather than related to pleading.

The Court also agrees that, by identifying documents in discovery by Bates-stamp number, Mattel has complied with the dictates of § 2019.210. *See Advanced Modular Sputtering, Inc. v. Superior Court,* 132 Cal.App.4th 826, 835–36, 33 Cal. Rptr.3d 901, (2005) (internal quotation marks and citations omitted) ("[Reasonable particularity] means that the plaintiff must make some showing that is reasonable, i.e., fair, proper, just and rational[,] . . . under all of the circumstances to identify its alleged trade secret in a manner that will allow the trial court to control the scope of subsequent discovery, protect all parties' proprietary information, and allow them a fair opportunity to prepare and present their best case or defense at a trial on the merits."). MGA's complaints regarding the volume of documents so identified, and their skepticism of Mattel appropriately attaching such an identification to many of those identified documents, are not properly addressed at this stage of the proceedings.

The motion to dismiss the trade secrets claim on this basis is therefore **DENIED.**

### D. *Duplicative State-Law Claims*

Bryant's motion to dismiss Mattel's duplicative state-law claims is **DENIED.** The state-law counterclaims asserted against Bryant in the AAC admittedly overlap with the claims asserted against him in the 04–9059 case, however, the factual allegations underlying the claims asserted in the AAC are broader in scope than those underlying the claims asserted in the 04–9059 case.

### IV. Motion to Dismiss for Lack of Personal Jurisdiction

MGA Mexico challenges this Court's exercise of personal jurisdiction over it. As set forth below, the Court concludes that it may, consistent with California law and the federal Due Process Clause, exercise specific personal jurisdiction over this admittedly foreign corporation.

### A. *The Constitutional Exercise of Personal Jurisdiction*

Where a party moves to dismiss a claim for lack of personal jurisdiction, the party asserting the claim bears the burden of demonstrating that jurisdiction is appropriate. *Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 800 (9th Cir. 2004). However, in opposing a motion to dismiss for lack of personal jurisdiction, the party asserting the claim need only make a prima facie showing of jurisdictional facts. *Id.* Disputed facts are to be resolved in favor of the exercise of personal jurisdiction. *Id.*

Because there is no applicable federal statute governing personal jurisdiction, the Court applies the law of the state in which the district court sits. *Id.* (citations omitted). "Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same." *Id.* at 800–01 (citations omitted). In order for a court's exercise of personal jurisdiction over a nonresident defendant to be constitutionally permissible, the defendant must have "minimum contacts" with the forum state "such that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice." *Id.* at 801 (internal quotation marks and citation omitted).

Personal jurisdiction may be either general or specific. For general personal jurisdiction to apply, a defendant (or here, a counter-defendant) "must engage in continuous and systematic general business contacts . . . that approximate a physical presence in the forum state." *Id.* (internal quotation marks and citations omitted).

To determine whether it has specific personal jurisdiction over a nonresident

defendant, the Court employs a three-part test:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Id.* at 802.

The party asserting the claim bears the burden of establishing the first two parts of the test. *Id.* If that party establishes the first two parts, then the burden shifts to the party resisting the Court's exercise of personal jurisdiction "to present a *compelling case* that the exercise of jurisdiction would not be reasonable." *Id.* (emphasis added).

The first part of the test is satisfied by either "purposeful availment" or "purposeful direction." *Id.* Purposeful availment is shown when a defendant avails itself of the privilege of doing business in a forum state, usually met when the defendant took some action in the forum, such as executing or performing a contract there. *Id.* By virtue of such actions, a defendant "purposefully avails itself of the privilege of conducting activities within the forum

State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). When taking advantage of these "benefits and protections," a defendant must also "submit to the burdens of litigation in that forum." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

By contrast, purposeful direction, involves actions by the defendant outside of the forum state but that are directed at the forum. *Schwarzenegger,* 374 F.3d at 803. The purposeful direction analysis is derived from a three-part "effects test" that finds its roots in the Supreme Court's decision in *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). Pursuant to this analysis, the defendant must "have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.; Schwarzenegger,* 374 F.3d at 803. All three parts of the test must be satisfied. The second part of the effects test is described by the Ninth Circuit as the "express aiming" requirement, and requires that the counter-defendants "expressly aimed" its intentional act at California. *See Schwarzenegger,* 374 F.3d at 806. Specifically, "express aiming" is found where the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state. *Bancroft & Masters, Inc. v. Augusta Nat. Inc.,* 223 F.3d 1082, 1087 (9th Cir.2000).[5]

---

5.  What constitutes, or doesn't constitute, "express aiming" is best illustrated by example. For instance, in *Pebble Beach Co. v. Caddy,* 453 F.3d 1151 (9th Cir.2006), no express aiming was found where the owner of a bed-and-breakfast in England (overlooking a pebbly beach) used the term "pebblebeach," the name of a famous golf course located in California, on its web site. *Id.* at 1153, 1156–57. The Ninth Circuit acknowledged that it might be foreseeable that the defendant's use of the

web site might have some effect on California, but noted that mere foreseeability of effect in a forum state is not enough to constitute express aiming. *Id.* at 1157. In contrast to *Pebble Beach* is the case of *Panavision Intern., L.P. v. Toeppen,* 141 F.3d 1316, 1321 (9th Cir.1998), in which the Ninth Circuit found that the express aiming requirement was met where the defendant registered plaintiff's

Assuming that the party asserting a claim can establish that the party resisting the Court's exercise of personal jurisdiction has met either the purposeful availment or express aiming part of the three-part test regarding the exercise of specific personal jurisdiction, courts next consider whether the claim arises out of or relates to the forum-related activities. In making this determination, the Court considers whether the contacts with the forum gave rise to the claims asserted, employing a "but for" standard. *See Doe v. Unocal Corp.,* 248 F.3d 915, 924 (9th Cir.2001).

Once the purposeful availment/express aiming and relatedness requirements are established, the burden shifts to the party resisting the Court's exercise of jurisdiction to show that exercise of jurisdiction is unreasonable. In determining reasonableness, the Court considers seven factors: 1) the extent of the defendant's purposeful interjection into the forum state's affairs; 2) the burden on the defendant; 3) conflicts of law between the forum and defendant's home jurisdiction; 4) the forum's interest in adjudicating the dispute; 5) the most efficient judicial resolution of the dispute; 6) the plaintiff's interest in convenient and effective relief; and 7) the existence of an alternative forum. *Roth v. Garcia Marquez,* 942 F.2d 617, 623 (9th Cir. 1991) (internal citation omitted). No factor is dispositive and the Court must balance all seven. *Id.* (internal citation omitted).

**B.  *MGA Mexico's Contacts with the Forum State***

The AAC alleges that Issac Larian and other MGA officers, while in California,

executed a plot to target three high-level employees of Mattel Mexico, and entice them to steal Mattel's trade secrets. In written offers of employment to these three individuals, Issac Larian held himself out to be the CEO of MGA Mexico. This plot was facilitated by a number of cross-border communications among the participants as well as travel to the United States by the targeted employees.

**C.  *The Court May Exercise Personal Jurisdiction over MGA Mexico***

[8]  The AAC repeatedly alleges that Larian, who held himself out to be MGA Mexico's CEO, and who was designated as MGA Mexico's "legal agent" in Mexican registration document actively sought to induce others to access and steal Mattel's trade secrets while located in the California. *See* Velazquez Decl. Exs. A–C; Salem Decl. Ex. B. This constitutes purposeful availment.

To the extent that any of the actions taken in Mexico by the three Mexican employees may be imputed to Mattel Mexico, there is also purposeful direction. The alleged actions taken on behalf of MGA Mexico were specifically engineered to result in the alleged illegal acquisition of trade secrets belonging to Mattel, a California resident.[6]

The relatedness requirement is also clearly met. The contacts with California involve actions allegedly taken in order to further the illegal acquisition of Mattel's trade secrets, leading to the present claims against MGA Mexico for misappropriation of trade secrets and the related RICO claims.

The burden, therefore, is on MGA Mexico to show that the exercise of jurisdiction is unreasonable.[7]  As noted previously, the

---

marks as Internet domain names in order to force a California plaintiff to pay him money.

**6.** The AAC alleges the theft of trade secrets belonging not only to Mattel's Mexican sub-

sidiary, but also to Mattel itself, which is a California corporation.

**7.** In its reply, MGA Mexico declares that it "made a 'compelling case'" in support of its

Court considers seven factors. The first factor the Court considers is the defendant's purposeful interjection. For the reasons the Court has found purposeful availment and purposeful direction, this factor favors the exercise of personal jurisdiction.

MGA Mexico argues, without elaboration, that the burden of defending itself in California is "significant." However, the assumption underlying this argument is that the present action is more properly litigated by MGA's and Mattel's Mexican subsidiaries. This assumption misses the point of Mattel's claim against MGA Mexico; Mattel, the parent company, was itself injured by MGA's Mexico's alleged misappropriation of its own trade secrets because the alleged misappropriation was not limited to trade secrets belonging to its Mexican subsidiary. The argument based on this faulty assumption is therefore unconvincing. In order to show unreasonableness, the burden on the defendant must be great. *See Panavision*, 141 F.3d at 1323 ("A defendant's burden in litigating in the forum is a factor in the assessment of reasonableness, but unless the inconvenience is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction.") (internal quotation marks and citation omitted).

As to the third and seventh factors, regarding conflicts of law and the existence of an alternative forum, MGA Mexico

makes veiled references to the criminal action in Mexico as constituting a choice of forum made by Mattel, apparently implying that Mattel, having chosen to pursue criminal charges in Mexico, should be precluded from invoking the power of this Court. It appears to the Court that MGA Mexico has failed to fully and clearly articulate this argument because it is untenable. Whether Mexican authorities pursue criminal charges based on the same conduct underlying the claims in this action is irrelevant to whether this Court may constitutionally exercise personal jurisdiction over MGA Mexico. Therefore, MGA Mexico's argument on this issue is unpersuasive.

The fourth factor, the interest in adjudicating the dispute, weighs in favor of the exercise of personal jurisdiction, as does the sixth, the plaintiff's interest in convenient and effective relief.

MGA Mexico argues that the fifth factor weighs in its favor when the Court considers that the site of injury, which it does not believe is California, is the most efficient forum. However, this argument is premised on the rejected assumption that the present action is more properly litigated between MGA's and Mattel's Mexican subsidiaries.

On balance, a consideration of the reasonableness factors reveals that MGA Mexico has fallen far short of establishing the "compelling case" necessary to render

---

motion to dismiss that it would be unreasonable to force it to litigate in this forum." MGA Mexico Reply at 10. However, MGA Mexico's motion papers fail to acknowledge that they bear the burden on this issue. *See* MGA Mexico's Memorandum of Points and Authorities at 10 ("Finally, Mattel has failed to satisfy the third element required for specific jurisdiction—that the exercise of jurisdiction over the defendant would be reasonable."). As Mattel accurately predicted in its opposition papers, MGA Mexico implicitly ac-

knowledged its burden in the reply, and used the occasion to improperly present additional arguments for the first time. Although the Court ordinarily would not consider such arguments, it does so here because it does not change the Court's ultimate conclusion. *See In re Intuit Privacy Litigation*, 138 F.Supp.2d 1272, 1275 n. 3 (C.D.Cal.2001) ("this court does not consider arguments raised anew for the first time in a reply brief as to do so would unfairly deny the non-moving party an opportunity to respond.").

the Court's exercise of personal jurisdiction unreasonable.

The Court concludes that Mattel has established the first two parts of the specific personal jurisdiction test, and that MGA Mexico has failed to establish that the Court's exercise of personal jurisdiction over it is otherwise unreasonable. Accordingly, the Court **DENIES** MGA Mexico's motion to dismiss.

### V.  MGA's and Bryant's Motions Regarding the Discovery Master's March 7, 2007, Order

MGA and Bryant seek review of a decision that resolved discovery disputes that arose during Bryant's deposition, and that was rendered by the Court-appointed discovery master, Judge Edward A. Infante (Ret.), on March 7, 2007.  The Court's order appointing Judge Infante provides that his orders resolving discovery disputes shall be reviewed in the same manner as those made by a magistrate judge of this Court.

Pursuant to Fed.R.Civ.P. 72(a), when the parties object to the ruling of a magistrate judge on a non-dispositive matter, such as a discovery dispute, the district judge may modify or set aside only those portions of the magistrate judge's order that are "clearly erroneous or contrary to law." *Id.*

The "clearly erroneous" language refers to factual findings.  *See e.g., Concrete Pipe and Products of California, Inc v. Construction Laborers Pension Trust,* 508 U.S. 602, 622, 113 S.Ct. 2264, 124 L.Ed.2d 539 (1993) (discussing the clearly erroneous standard).  Here, there were no explicit factual findings or legal conclusions made by Judge Infante regarding the relevant rulings; therefore, the Court reviews the record presented to Judge Infante to determine whether his rulings are contrary to law.  *See* March 7, 2007, Order.

Questions that do not seek the substance of attorney-client communications generally do not implicate the attorney-client privilege.  *United States v. Carrillo,* 16 F.3d 1046, 1050 (9th Cir.1994) (finding no violation of the attorney-client privilege where prosecutor, who asked whether a criminal defendant had consulted with his attorney during a recess in order to raise an inference of attorney coaching of testimony during the trial, stopped short of asking defendant the substance of defendant's communications with his attorney).  Therefore, questions such as the one addressed by objection No. 38, asking whether Bryant talked to counsel for MGA during a break from his deposition, are not subject to objection based on the attorney-client privilege.  This conclusion is consistent with Judge Infante's Order.

Mattel's question regarding who is paying Bryant's legal fees, addressed by objection No. 42, is likewise not objectionable.  MGA and Bryant argue that state law applies; however, because the present consolidated actions involve both federal and state-law claims, the federal law of privilege applies.  *Agster v. Maricopa County,* 422 F.3d 836, 839–40 (9th Cir. 2005) ("Where there are federal question claims and pendent state law claims present, the federal law of privilege applies.").  To that end, consistent with federal privilege law, fee-payment arrangements are relevant to credibility and bias, and if asked in discovery, Bryant must disclose who is paying his legal fees.  *See United States v. Blackman,* 72 F.3d 1418, 1424 (9th Cir.1995) ("As a general rule, client identity and the nature of the fee arrangement between attorney and client are not protected from disclosure by the attorney-client privilege.").  This conclusion is also consistent with Judge Infante's Order.

[9]  However, in this case, the joint-defense privilege protects from disclosure the substance of certain statements made by Bryant and his attorneys in the presence of attorneys representing MGA.  "The

MUNOZ v. FINANCIAL FREEDOM SENIOR FUNDING CORP.    **1275**
Cite as 573 F.Supp.2d 1275 (C.D.Cal. 2008)

joint defense privilege protects communications between an individual and an attorney for another when the communications are 'part of an on-going and joint effort to set up a common defense strategy.' " *United States v. Bay State Ambulance and Hosp. Rental Service, Inc.*, 874 F.2d 20, 28 (1st Cir.1989) (internal quotation marks and citation omitted). Generally, to rely on the joint-defense privilege, a party must establish three elements: "(1) [T]he communications were made in the course of a joint defense effort, (2) the statements were designed to further the effort, and (3) the privilege has not been waived." *Id.*

The Court finds the first element was met. The Court, based on its review of the record pending before Judge Infante, is satisfied that the parties had in place at the time of Bryant's deposition, and have in place today, a valid joint-defense agreement. The Court also finds that the second element was met. Mattel cannot seriously contend that MGA's interests are not aligned with Bryant's in this action, or that counsels' thorough preparation of Bryant for his deposition was not designed to further the joint defense effort. Finally, as for the third element, there is no suggestion in the record that any party has waived the attorney-client privilege.

Accordingly, the Court holds that Judge Infante's rulings on Objection Nos. 39 and 50 are contrary to law to the extent those rulings require Bryant to divulge the substance of his communications with counsel for MGA.

## VII. Conclusion

In the manner set forth more fully herein, the Court makes the following rulings:

1. Motion of MGA Entertainment, Inc., ("MGA") and Issac Larian ("Larian") to Dismiss Mattel's Amended Answer and Counterclaims (docket # 189): **GRANTED IN PART AND DENIED IN PART.**

2. Motion of Carter Bryant to Dismiss Counterclaims II, III, V, VII, IX, and XI

(docket # 191): **GRANTED IN PART AND DENIED IN PART.**

3. Motion of MGA Mexico to Dismiss Mattel's Amended Answer and Counterclaims (docket # 266): **DENIED.**

4. Motion of MGA Objecting to Discovery Master's March 7, 2007, Order (docket # 308): **GRANTED IN PART AND DENIED IN PART.**

5. Motion of Carter Bryant Objecting to Discovery Master's March 7, 2007, Order (docket # 306): **GRANTED IN PART AND DENIED IN PART.**

Mattel is **GRANTED** ten days' leave to amend the AAC in conformity with this Order. The Counter-defendants shall answer or otherwise respond to the SAAC no later than thirty days after the filing of the SAAC.

The Motion Re Trial Structure (docket # 462) has been the subject of further briefing by the parties and is set for further oral argument on July 2, 2007. Ruling on that matter is **DEFERRED** pending oral argument.



Mary P. **MUNOZ**, individually, and on behalf of herself and all others similarly-situated, Plaintiff,

v.

**FINANCIAL FREEDOM SENIOR FUNDING CORPORATION, Carteret Mortgage Corporation, Kathleen M. Miller, and Louis Soqui, Defendants.**

**Case No. SACV 07–00710–CJC(ANx).**

United States District Court,
C.D. California,
Southern Division.

Aug. 18, 2008.

**Background:** Borrower brought putative class action alleging that lender breached