QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
   John B. Quinn (Bar No. 090378)
   johnquinn@quinnemanuel.com
   Michael T. Zeller (Bar No. 196417)
   (michaelzeller@quinnemanuel.com)
   Jon D. Corey (Bar No. 185066)
   (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>             Plaintiff,<br><br>        vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>             Defendant.<br><br>AND CONSOLIDATED CASES | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>**DISCOVERY MATTER**<br><br>**[To Be Heard By Discovery Master Robert C. O'Brien]**<br><br>[PUBLIC REDACTED] REPLY IN SUPPORT OF MATTEL, INC.'S MOTION FOR ADDITIONAL TIME TO CONDUCT THE DEPOSITION OF ISAAC LARIAN AND OPPOSITION TO CROSS-MOTION FOR PROTECTIVE ORDER LIMITING SCOPE OF EXAMINATION<br><br>[Supplemental Declaration of Scott B. Kidman filed concurrently]<br><br>Hearing Date:  TBA<br>Time:               TBA<br>Place:              Arent Fox, LLP<br><br>Phase 2<br>Disc. Cut-off:          December 11, 2009<br>Pre-trial Conf.:        March 1, 2010<br>Trial Date:              March 23, 2010 |

07975/3032784.1

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................... 1

ARGUMENT ....................................................................................................... 4

I.    MATTEL IS ENTITLED TO FAR MORE THAN FOUR HOURS TO
      EXAMINE LARIAN ................................................................................... 4

      A.    The Newly Alleged Financial Transactions Require Substantial
            Additional Deposition Time to Unravel ........................................ 4

      B.    The MGA Parties Ignore The Other Claims And Allegations
            That Have Arisen Since The Phase 1 Trial ................................... 8

      C.    "Touching On" a Topic Is Not Sufficient To Constitute a Fair
            Examination ................................................................................. 10

      D.    Mattel Is Entitled To Additional Time To Examine Larian About
            MGA's "Billion" Dollar Unfair Competition Claims ..................... 16

II.   MATTEL'S MOTION IS NOT PREMATURE ............................................. 17

III.  THE ADDITIONAL TIME ALLOTTED FOR LARIAN'S
      EXAMINATION SHOULD ACCOUNT FOR THE CONDUCT AT
      HIS PRIOR DEPOSITION ....................................................................... 19

IV.   MGA'S AND LARIAN'S MOTION FOR PROTECTIVE ORDER
      SHOULD BE DENIED ............................................................................ 21

CONCLUSION .................................................................................................. 23

07975/3032784.1

-i-

[PUBLIC REDACTED] REPLY IN SUPPORT OF MATTEL, INC.'S MOTION FOR ADDITIONAL TIME TO
CONDUCT THE DEPOSITION OF ISAAC LARIAN

1

# <u>**TABLE OF AUTHORITIES**</u>

2

<u>**Page**</u>

3

<u>**Cases**</u>

4

<u>A. Farber and Partners, Inc. v. Garber,</u>

5
    234 F.R.D. 186 (C.D. Cal. 2006)............................................................................9

6

<u>Burket v. Hyman Lippitt, P.C.,</u>
    2007 WL 4201141 (E.D. Mich. Nov. 28, 2007) .....................................................4

7

<u>Dunkin' Donuts, Inc. v. Mary's Donuts, Inc.,</u>

8
    206 F.R.D. 518 (S.D. Fla. 2002) ..........................................................................18

9

<u>Egyptian Chamois Co. v. Evergreen Marine Corp.,</u>

10
    2001 WL 1737458 (C.D. Cal. Jan. 25, 2001).........................................................9

11

<u>Grill v. Costco Wholesale Corp.,</u>
    2004 WL 2314639 (W.D. Wash. Oct. 7, 2004)....................................................18

12

<u>Malec v. Trustees of Boston College,</u>

13
    208 F.R.D. 23 (D.Mass. 2002) .............................................................................17

14

<u>Pratt v. Archstone Willow Glen Apartments,</u>

15
    2009 WL 2032469 (N.D. Cal. July 10, 2009) ......................................................17

16

<u>Smith v. Simmons,</u>
    2009 WL 1312930 (E.D.Cal. May 12, 2009)..........................................................9

17

<u>Wilkerson v. Vollans Automotive, Inc.,</u>

18
    2009 WL 1373678 (W.D. Wash. May 15, 2009) (<u>Fed.R.Civ.P.</u> 26(b)(1) ............9

19

20

21

22

23

24

25

26

27

28

-ii-

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

The MGA parties do not dispute that, as Judge Larson acknowledged, the filing of Mattel's Third Amended Answer and Counterclaims (the "TAAC") "dramatically" expanded the scope of this case.  Indeed, they themselves have described the expansion of the case as "radical."  They also do not dispute the complexity of the financial transactions that are at the heart of the new allegations, nor do they contest Isaac Larian's central role in those transactions.  And they ignore the case law holding that such facts must be weighed in favor of granting far more than the four hours they have proposed for examining Mr. Larian.

Instead, the MGA parties argue that these financial transactions "have already been the subject of exhaustive inquiry by the Forensic Auditor" and that "Mattel has already obtained a temporary receiver, the appointment of a forensic auditor, and the appointment of a monitor, *all without Mr. Larian's testimony on the subject.*"  The Forensic Auditor did spend months attempting to unravel these and other related party transactions, with full access to MGA personnel and files.  But as Judge Larson has repeatedly made clear, his work does not preclude or limit discovery.  To the contrary, MGA insisted that Mr. Durkin's Report not be released or even cited, itself thereby forcing Mattel to replicate through discovery evidence of those facts, even as MGA's related parties and associated counsel, Bingham, falsely attacked the integrity of the Auditor himself.  It adds insult to injury for MGA now to invoke the work of the Auditor who it opposed, silenced and defamed as a reason to shield Mr. Larian from answering questions about the very facts Mattel is entitled to.  And, even apart from its right to develop those facts through discovery, Mattel is entitled to *Mr. Larian's* testimony and explanation of them to avoid being sandbagged at trial.  Notably, the MGA parties nowhere dispute that Mr. Larian intends to testify at trial about such matters.  That Mattel was able to secure a Temporary Receiver, auditor and monitor is not a measure of MGA's

-1-

openness or the transparency of its operations, but of the seriousness of its wrongdoing and the lengths it has been willing to go to hide it, facts which again weigh in favor of more time.

The Omni transactions are not the only issues as to which Larian has unique knowledge. The MGA parties urge that Mattel should be given *no* additional time to examine Larian about any of the other Phase 2 issues as well. But they make no serious attempt to argue that the five hours Mattel was allotted for Larian's March 2008 deposition was adequate to fairly examine him about all of Mattel's Phase 1 and Phase 2 claims against Larian and the other MGA parties *and* MGA's "billion dollar" unfair competition claims against Mattel. Instead, they point to Larian's earlier deposition in 2006 and his seven days of Phase 1 trial. However, Larian's 2006 deposition took place before Mattel had filed any claims at all against the MGA parties, and the parties had agreed at MGA's own request that no questions would be asked regarding MGA's unfair competition claims. At that time, MGA promised that Larian would be produced for a separate day of deposition regarding those claims, only to later refuse to do so. As for Larian's seven days of trial testimony in Phase 1, it was obviously addressed exclusively to Phase 1 issues, which have now been decided against him. That Larian testified for seven days in Phase 1 only underscores his central role in this case -- yet another fact weighing in favor of additional time.

When the MGA parties do discuss Larian's March 2008 deposition, the testimony they cite merely confirms that Mattel did not have an opportunity to fairly examine him about Phase 2 claims. Indeed, in one passage, MGA's counsel prevents Larian from answering a question relating to the commercial bribery of three Mattel Design Center employees because the allotted five hours had expired. They accuse Mattel of wasting time at the deposition by examining Larian about his sworn testimony in a Hong Kong proceeding that three-dimensional dolls infringed two-dimensional Bratz drawings when in fact that examination was critical to

-2-

impeaching Larian's testimony that he could not compare Bratz dolls to Bratz drawings because one is three-dimensional and the other two-dimensional.  They also argue that Mattel's failure to complain about Larian's conduct at the *first* day of his deposition proves that Larian did not impede the *second* day of this deposition, a claim that makes no sense and that is belied in any event by the video excerpts from the second day.  They even argue that Mattel is to blame for not having the opportunity to examine Larian about any of the tens of thousands of documents they produced after the Phase 1 trial because Mattel made the tactical decision to take an "early" deposition, when in fact Larian's March 2008 deposition took place a mere two months before the start of the Phase 1 trial.  Only by waiting until after the Phase 1 trial to take the deposition would Mattel have had any opportunity to depose Larian about any of those documents, hardly a "tactical" for which Mattel must bear the blame.

The MGA parties argue that Mattel's motion is "premature" and should not be considered at all because Mattel is obligated to "exhaust" the four hours they have unilaterally proposed before it can even consider asking for more time.  No case so holds.  Mattel attempted to examine Larian regarding all Phase 1 claims and all then-pending Phase 2 claims in the five hours allotted and it turned out to be woefully inadequate.  The only thing that has changed since then is that the scope of the case has been "radically expanded" to include new facts and claims, including based on events, transactions and documents that did not even happen or exist until *after* Mr. Larian was deposed.  The four hours the MGA parties propose now is plainly inadequate.  Requiring Mattel to use them up and then come back for more distorts the questioning process and will only lead to further delay and motion practice.  Nor do the MGA parties' offer any evidence to support their speculation that MGA will come to financial ruin if Larian is allowed to be deposed for anything more than the four hours they have proposed, thus providing a further ground to deny their motion for a Protective Order.

Finally, the MGA parties resort to simply attacking Mattel.  They invoke testimony from an unnamed "Mattel executive" about Mattel using litigation to "destroy" MGA, without disclosing that the so-called Mattel executive is Ron Brawer, *MGA's* senior vice president, who is specifically alleged to have committed multiple illegal acts, including stealing Mattel's trade secrets and soliciting Mattel employees to come to MGA and bring Mattel trade secrets with them.

The purpose of discovery is to obtain the truth and avoid being sandbagged at trial.  Larian is a central -- indeed the central -- witness in Phase 2.  Mattel should be permitted a full and fair opportunity to examine him.

## Argument

## I.     MATTEL IS ENTITLED TO FAR MORE THAN FOUR HOURS TO EXAMINE LARIAN

### A.     The Newly Alleged Financial Transactions Require Substantial Additional Deposition Time to Unravel

The MGA parties argue that "Mattel has made no showing that it requires more than four hours" to depose Larian regarding the newly alleged financial transactions in the TAAC.  (Opp. at 14.)  But they completely ignore the authority cited by Mattel showing that courts will grant in excess of seven hours of deposition time solely on the grounds that the issues on which the witness is to be examined are "complex."[1]  The transactions at issue here were intentionally structured to conceal everything that could be concealed.  It has taken Mattel and the Forensic Auditor months to just begin to piece together the source of funding for the Wachovia loan acquisition and the purported ownership of the secured debt, and

_____

[1]  See Motion at 13-15; see also Burket v. Hyman Lippitt, P.C., 2007 WL 4201141, at *2 (E.D. Mich. Nov. 28, 2007) (granting extension of deposition beyond seven hours because "this is a complex, multi-party case" and deponent "is a central figure in these actions").

1   much more remains to be determined prior to trial.  MGA's practice of blanket

2   refusals to produce any discovery has only increased the time necessary to examine

3   Mr. Larian.

4            The Court recognized in granting Mattel leave to amend, over MGA's

5   vigorous opposition, that the addition of these financial transactions would

6   "exceedingly complicate an already complicated case."[2]   For its part, MGA

7   recognized that adding claims based on these transactions would "radically expand

8   the scope of the litigation," "add a host of new issues  . . . none of which is remotely

9   raised by Mattel's current counterclaims," "inject new allegations . . . that Isaac

10  Larian is the alter ego of at least five LLCs and at least five trusts," "allege an

11  entirely new RICO enterprise that is separate and distinct from the two alleged

12  RICO enterprises currently alleged in the SAAC" and "effectively require a separate

13  trial, about a separate RICO enterprise, within the trial of the RICO counterclaim."[3]

14  There is no dispute that Larian is the central figure in all of these transactions.

15           Recent events confirm that Larian is a key source available to Mattel to

16  explain these transactions.  Only after repeated Orders by the Discovery Master did

17  any of the Omni Parties eventually produce documents demonstrating that, contrary

18  _____

19       [2]   Hearing Transcript dated May 18, 2009 at 19:24-20:3, attached to the

20  Declaration of Scott B. Kidman in Support of Mattel, Inc.'s Motion for Additional
    Time to Conduct The Deposition of Isaac Larian dated July 17, 2009 ("Kidman
21  Dec."), Exh. 47.

22       [3]   MGA Parties' Opposition to Mattel, Inc.'s Motion for Leave to File Third

23  Amended Answer and Counterclaims, dated April 27, 2009 at 5-10, Kidman Dec.,
    Exh. 46.  These admissions, as well as Judge Larson's acknowledgement that the
24  TAAC "will dramatically expand the scope of the present litigation" (May 21, 2009
    Order at 6, Kidman Dec., Exh. 32) also belie the MGA parties' accusation that the
25  10 hours of additional time sought in initial meet and correspondence shows that the
    21 hours now sought is a mere bargaining ploy.  The additional 10 hours initially
26  sought was months before the filing of the TAAC and the resulting dramatic
27  expansion of the scope of the case.

28

07975/3032784.1

-5-
[PUBLIC REDACTED] REPLY IN SUPPORT OF MATTEL, INC.'S MOTION FOR ADDITIONAL TIME TO
CONDUCT THE DEPOSITION OF ISAAC LARIAN

1   to their representations to the Court and the Discovery Master, ███████████

2   ████████████████████████████████[4]  But they have failed and refused,

3   even in the face of the Discovery Master's Orders, to produce any financial records

4   showing the sources of the remainder of the $109 million transaction price.[5]

5   Lexington has successfully avoided any obligation to provide discovery, Mattel's

6   subpoena to Fred Mashian, who acted for Lexington, has been quashed and, even to

7   this day, Mattel still does not know who owns or operates Lexington.[6]  In addition,

8   Neil Kadisha, the purported CEO of Omni 808, and Leon Neman, Isaac Larian's

9   brother--in-law and the owner of the building listed as the address for Vision

10

11

12   _____

13   [4]   See Mattel, Inc.'s Ex Parte Application for an Order to Show Cause re: Omni
     808's Failure to Comply with Court Order or, in the Alternative, for an Order
14   Shortening Time to Hear Motion for Such Relief, dated April 21, 2009, attached to
     the concurrently filed Supplemental Declaration of Scott B. Kidman ("Supp.
15   Kidman Dec."), Exh. 1; Phase 2 Discovery Master's Order No. 21, dated April 23,
16   2009, Supp. Kidman Dec., Exh. 2.
     [5]   See Supplemental Declaration of Michael T. Zeller in Support of Mattel, Inc.'s
17   Motion Objecting to Portions of Discovery Master Order No. 27 Re Mattel's Motion
18   to  Compel Documents from Bingham McCutchen, Dated July 3, 2009 at ¶ 4 (Supp.
     Kidman Dec., Exh. 3); see also  Omni 808's Statement of Position Re Order To
19   Show Cause Re Appointment of Permanent Receiver, dated May 14, 2009 at 8:12-
20   18 (identifying Omni 808's alleged investors), (Supp. Kidman Dec., Exh. 4).  While
     the Omni Parties have claimed that the $49 million came from  Omni 808's
21   purported investors  (Neil Kadisha, Gold Leaf Investments, LP, Benjamin Nazarian,
22   Moinian Development Group, LLC, Joseph Moinian, Vision Capital, LLC, Leon
     Neman, David and Angella Nazarian Family Trust, David Nazarian, Angella
23   Nazarian, Arsalan Gozini or Elahe Pezeshkifar, Trustee of the Arsalan Gozini
24   Charitable Lead Annuity Trust), no financial records showing any actual transfer of
     funds from any of these alleged investors to Omni 808 have been produced.
25   [6]   Supplemental Declaration of Michael T. Zeller in Support of Mattel, Inc.'s
26   Motion Objecting to Portions of Discovery Master Order No. 27 Re Mattel's Motion
27   to  Compel Documents from Bingham McCutchen, dated July 3, 2009 at ¶ 3, Supp.
     Kidman Dec., Exh. 3.

28

1    Capital, have both violated the Discovery Master's Order to appear for deposition by

2    the end of this month.[7]

3         The MGA parties' only response is that the financial transactions "have

4    already been the subject of exhaustive inquiry by the Forensic Auditor" and that

5    "Mattel has already obtained a temporary receiver, the appointment of a forensic

6    auditor, and the appointment of a monitor, *all without Mr. Larian's testimony on the*

7    *subject.*"  (Opp. at 14-15.)   This, however, is little more than a rehash of an

8    argument rejected by both Judge Larson and the Discovery Master previously.  As

9    Judge Larson stated at the February 11, 2009 hearing in rejecting MGA's position,

10   the work of the Forensic Auditor did nothing to bar discovery.[8]  The Discovery

11   Master subsequently reiterated the point.[9]

12        Furthermore, even without Mr. Larian's testimony, it is clear that he

13   went to great lengths to conceal the source of funding for the Omni 808 purchase,

14   using a Nevis-based corporation as well as two special purpose entities to invest $60

15   million to buy down his own company's debt.  The Court's concerns leading to the

16   appointment of the Forensic Auditor -- that MGA's finances were utterly mysterious

17   as a result of MGA's inconsistent representations ( ██████████████████ )

18   and that the MGA parties were engaged in fraudulent transactions aimed at evading

19   the Court's Orders -- simply confirms the seriousness of the MGA parties'

20   wrongdoing.  That Larian and his company have required so much Court-

21   supervision is scarcely a reason to excuse Isaac Larian from having to answer

22   _____

23   [7]  See Phase 2 Discovery Master Order No. 33, dated May 18, 2009 at 36

24   (ordering the depositions of both Neil Kadisha and Leon Neman), Supp. Kidman
      Dec., Exh. 5; see also Supp. Kidman Dec., ¶ 6; Discovery Master Order No. 43,

25   dated July 30, 2009 at 2, Supp. Kidman Dec., Exh. 6.

26   [8]  February 11, 2009 Hearing Tr. at 97:8-99:11, Supp. Kidman Dec., Ex 7.

27   [9]  See Phase II Discovery Master Order No. 3, dated March 10, 2009, at 5, Supp.
      Kidman Dec., Exh. 8.

28

07975/3032784.1

1  questions.  To the contrary, all of these facts, and all of the appointments, weigh

2  entirely in favor of more time for Larian's examination, not less time or no time at

3  all.

4  **B.   The MGA Parties Ignore The Other Claims And Allegations That**

5  **Have Arisen Since The Phase 1 Trial**

6  The MGA parties assert that the "IGWT and Omni/Wachovia

7  transactions" are "the only new matter in the case."  (Opp. at 13-14.)  Not so.  The

8  TAAC includes new RICO predicate acts of criminal copyright infringement

9  addressing Larian's and MGA's post-verdict infringements.  It also includes new

10  RICO predicate acts of perjury, conspiracy to commit perjury and obstruction of

11  justice based on, among other things, Larian's repeated sworn testimony during the

12  Phase 1 trial that Bryant told him, and that Larian believed, that Bryant had not

13  created Bratz while employed by Mattel, as well as MGA's and Larian's submission

14  of knowingly false statements in court pleadings in this action.[10]

15  Obviously, Mattel has had no opportunity to examine Larian about such

16  matters as his intent in this post-verdict period, including his numerous public

17  statements to the effect that MGA would continue to produce and sell Bratz despite

18  the jury's verdict.  While Larian's perjured testimony is a matter of record, Mattel

19  has had no opportunity since that testimony was proffered to examine Larian about

20  the other elements necessary to establish the predicate acts of perjury and conspiracy

21  to commit perjury and how those predicate acts furthered the RICO enterprise   Any

22  suggestion by the MGA parties that Larian has already been examined about these

23  issues ignores the incontrovertible fact that they happened after his deposition.

24  Even apart from this fatal timing problem, the MGA parties' argument

25  that Mattel has had a full and fair opportunity to fairly examine Larian on every

26  _____

27  [10]   See Mattel Inc.'s Third Amended Answer and Counterclaims, dated May 22, 2009 ("TAAC"), ¶¶ 104, 141(d)(ii)-(iii), lodged concurrently with Mattel's Motion.

28

07975/3032784.1

-8-

[PUBLIC REDACTED] REPLY IN SUPPORT OF MATTEL, INC.'S MOTION FOR ADDITIONAL TIME TO CONDUCT THE DEPOSITION OF ISAAC LARIAN

topic relevant to the Phase 2 proceedings other than the newly alleged financial transaction (Opp. at 14) fails.  They make no serious attempt to show that the five hours granted by the prior Discovery Master for the second day of Larian's deposition was anywhere near enough time to fairly examine him about all of Mattel's then-pending Phase 1 and Phase 2 claims *and* MGA's "billion" unfair competition claims.  Instead, they point to the first day of Larian's deposition and his seven days of testimony at the Phase 1 trial as supposedly providing that opportunity.  But the first day of Larian's deposition took place *before* Mattel had alleged any claims at all against Larian or any of the MGA parties.  Other than MGA's unfair competition claims against Mattel--which MGA promised would be the subject of a separate day of testimony--the only claims then pending were Mattel's contract claims against Carter Bryant.  The MGA parties' repeated suggestion that Mr. Quinn's adjournment of that deposition serves as some kind of admission by Mattel regarding the adequacy of Larian's examination (Opp. at 2 and 6) simply has no merit.  As for Larian's Phase 1 trial testimony, it pertained to Phase 1 issues and was not the time or the place to obtain discovery regarding Phase 2.  To the extent Larian's time on the witness stand at the Phase 1 trial is relevant at all to the present motion, it merely confirms that Larian is and always has been a critical witness in this case and that Mattel is entitled to a fair and adequate opportunity to depose him.[11]

---

[11]   Wilkerson v. Vollans Automotive, Inc., 2009 WL 1373678, at *1 (W.D. Wash. May 15, 2009) (Fed.R.Civ.P. 26(b)(1) "is liberally construed so that parties may conduct the wide-ranging discovery necessary to avoid surprise at trial and properly evaluate and resolve their dispute.") (citing A. Farber and Partners, Inc. v. Garber, 234 F.R.D. 186, 188 (C.D. Cal. 2006)); Smith v. Simmons, 2009 WL 1312930, at *1 (E.D.Cal. May 12, 2009) ("The purpose of discovery is to make trial 'less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent possible.'") (citing United States v. Procter & Gamble, 356 U.S. 677, 683 (1958)); Egyptian Chamois Co. v. Evergreen Marine Corp., 2001 WL 1737458, at *6 (C.D. Cal. Jan. 25, 2001) ("The discovery rules were specifically intended to prevent the trial by ambush").

07975/3032784.1

-9-
[PUBLIC REDACTED] REPLY IN SUPPORT OF MATTEL, INC.'S MOTION FOR ADDITIONAL TIME TO CONDUCT THE DEPOSITION OF ISAAC LARIAN

## C.   **"Touching On" a Topic Is Not Sufficient To Constitute a Fair Examination**

The most the MGA parties can say about the second day of Larian's deposition is that Mattel "touched on every topic in the counterclaims in the SAAC." (Opp. at 8.)  But <u>Rule</u> 30(d)(2) does not speak of merely allowing time to "touch on" topics,; it provides that the court "must allow" time to "fairly examine the deponent."  Moreover, even the assertion that Mattel "touched on" every topic is simply incorrect.  As set forth in its moving papers, Mattel had no opportunity to fairly examine Larian about a broad array of issues that are directly relevant to Mattel's Phase 2 claims against MGA and Larian and the MGA parties have not shown otherwise.[12]

***Mattel's Trade Secret Claims***.  The MGA parties argue that Mattel "examined Mr. Larian about every single one of the employees who purportedly misappropriated trade secrets," including Castilla, Machado, Vargas and Trueba,

---

[12]   The MGA parties also accuse Mattel of wasting time at Larian's second deposition by asking Larian questions about copyright infringement which, the claim, had already been the subject of lengthy examination on the first day of Mr. Larian's deposition."  (Opp. at 10.)  In fact, as discussed above, Mattel not yet even filed its copyright claims as of the date of Larian's first deposition.  Likewise, the MGA parties' contention that the time spent examining Larian at the second day of his deposition about "the relationship between two-dimensional and three-dimensional works" bore "no seemingly relevance to the case" is mistaken.  Indeed, it was an issue that the *MGA parties* themselves raised in alleged defense of copyright infringement.  As the video clips submitted by Mattel show, when Larian testified that he could not compare Bratz drawings to Bratz dolls because one is two-dimensional and the other three-dimensional, Mattel was required to devote a substantial portion of its allotted five hours impeaching that testimony by showing that Larian had in fact compared two-dimensional drawings to three-dimensional dolls in copyright infringement litigation MGA filed in Hong Kong.  <u>See</u> Video Clip No. 8, attached to the Declaration of Cyrus S. Naim in Support of Mattel, Inc.'s Motion for Additional Time to Conduct The Deposition of Isaac Larian dated July 17, 2009 ("Naim Dec."), Exh. 1.

1   Brawer and Brisbois.  (Opp. at 8:15-18.) [13]   Not so.  The one page of testimony

2   regarding Ron Brawer merely asked how long MGA had been in discussions with

3   Brawer about his potential employment with MGA before he was actually hired, but

4   *nothing* about his theft of Mattel trade secrets or the role he played in targeting and

5   hiring of other Mattel employees with access to Mattel proprietary information.[14]

6   The examination regarding Vargas and Trueba covered less than two pages

7   combined and consisted of a handful of general questions about when and where

8   Larian first met with them and whether he personally approved the hiring of

9   Trueba.[15]  The sum and substance of the examination regarding Ms. Brisbois was

10  whether Larian knew if she took anything with her when she left Mattel without any

11  follow-up whatsoever.[16]  The examination regarding Mr. Castilla was equally

12  cursory.[17]  While the examination regarding Machado included additional questions,

13  it did not come close to a full examination regarding his theft of "virtually every

14  type of document a competitor would need to enter the Mexican market and to

15  unlawfully compete with Mattel in Mexico, in the United States and elsewhere" and

16  Larian's central role in that theft.[18]

17         In fact, those questions were asked in order to establish, and the

18  testimony elicited shows, that Mr. Larian *possesses* personal knowledge of relevant

19  matters.  It did not, and could not, because of time constraints, delve into what that

---

[13]   Tellingly, the MGA parties cite to a grand total of 19 pages of testimony to support their claim that Mattel has fairly examined Mr. Larian about its theft of trade secret claims.  See Opposition at 8:15-18.

[14]   See Larian Tr. at 497:1-498:2, attached to the Declaration of Yas Raouf in Support of MGA Parties' Opposition to Motion for Additional Time to Conduct The Deposition of Isaac Larian and Cross-Motion to Limit Further Examination dated July 24, 2009 ("Raouf Dec.") as Exhibit C.

[15]   Id. at 323:21-324:18, Raouf Dec., Exh. C.

[16]   Id. at 493:18-496:25, Raouf Dec., Exh. C.

[17]   Id. at 349:13-352:21 and 356:11-358:14, Raouf Dec., Exh. C.

[18]   TAAC at ¶¶ 44-61.

07975/3032784.1

-11-

[PUBLIC REDACTED] REPLY IN SUPPORT OF MATTEL, INC.'S MOTION FOR ADDITIONAL TIME TO CONDUCT THE DEPOSITION OF ISAAC LARIAN

knowledge is.  Thus, for example, Mattel had no opportunity to examine Larian about any of the actual trade secret documents that were stolen, including the documents seized by Mexican criminal authorities from MGA's offices in Mexico City (TAAC at ¶ 60) or any of the emails exchanged with Machado, Vargas and Trueba in furtherance of their "plot" including through the America Online e-mail account with the address <plot04@aol.com> (TAAC at ¶ 49).  None of these documents were even marked as exhibits at Larian's deposition, even though they are squarely at issue in the case.

Nor are Mattel's theft of trade secret claims limited to the individuals specifically identified above.  Mattel has alleged that many other Mattel employees were specifically target by MGA, including by Larian, based on the Mattel confidential and proprietary information they could access and that such information is being disclosed to and used by MGA.[19]  A fair examination must allow Mattel time to examine Larian about these allegations as well.

***Mattel's RICO claims.***  Among other things, Mattel had no opportunity to examine Larian about any of the dozens of predicate acts of mail fraud and wire fraud Larian is alleged to have personally committed in furtherance of the ongoing RICO enterprises.  The fraudulent communications are attached as part of Exhibit C to the SAAC.  None of them was marked as an exhibit at Larian's deposition; the MGA parties do not contend otherwise.  Nor do the MGA parties contend that Mattel examined Larian about the obstruction of justice predicate acts based on the destruction of evidence on Larian's computer hard drive or Farhad Larian's destruction of evidence.[20]  They do claim that Mattel examined Larian regarding the commercial bribery of three Mattel seamstresses who were employed by MGA

---

[19]  TAAC at ¶ 98.
[20]  Id. at ¶ 141(c).

07975/3032784.1

1    through its contractor Veronica Marlow.[21]  (Opp. at 8:26-27.)  In fact, the only

2    question Larian was asked about them is whether he recognized their names.  When

3    Mattel's counsel sought to ask a general question regarding the use of Mattel

4    employees to work on MGA projects, MGA's counsel prevented him from doing so

5    because the five hours of allotted time had expired.[22]

6          ***Mattel's unfair competition claims.***  As part of the MGA parties efforts

7    to compete unfairly with Mattel, Larian has made false representation to members of

8    the media and many of Mattel's most significant about Mattel products and, has

9    repeatedly issued false and misleading press releases and spread false rumors in the

10   marketplace, including false statements about Mattel's products.[23]  Mattel had no

11   opportunity to examine Larian about any of these emails, press releases or other

12   false statements he is alleged to have made.  The MGA parties do not and cannot

13   show otherwise.

14         ***Larian's net worth.***  The MGA parties correctly point out that Mattel

15   examined Larian about his net worth.  (Opp. at 8.)  Even apart from the fact that the

16   MGA parties subsequently disavowed the accuracy of that testimony,[24] Larian's

17   deposition testimony was more than sixteen months ago.  They do not dispute that

18   months after his second deposition, Larian produced additional financial records

19   showing dramatic changes in his net worth.  Nor do they dispute that Larian claimed

20   even after that, at Phase 1 trial, that the Phase 1 trial liability verdict itself changed

21   his purported net worth.[25]  Mattel is entitled to examine him about his current net

22   worth in connection with its Phase 2 damages claims.

23   _____

24   [21]  <u>Id</u>. at ¶¶ 95-97.

25   [22]  Larian Tr. at 509:13-513:21, Raouf Dec., Exh. C.
     [23]  TAAC at ¶¶ 99-102.

26   [24]  <u>See</u> August 7, 2008 Trial Tr. at 6277:14-25, Supp. Kidman Dec., Exh. 9.

27   [25]  <u>See</u> August 15, 2008 Trial Tr. 7760:1-17 (Supp. Kidman Dec., Exh. 10);
     December 30, 2008 Hearing Tr. 15:17-23 (Supp. Kidman Dec., Exh. 11).

28

[PUBLIC REDACTED] REPLY IN SUPPORT OF MATTEL, INC.'S MOTION FOR ADDITIONAL TIME TO
CONDUCT THE DEPOSITION OF ISAAC LARIAN

*Larian's and MGA's affirmative defenses.*  The MGA parties do not dispute that Larian has been identified as a witness with knowledge of facts supporting MGA's defenses, including its unclean hands affirmative defense.[26]  Nor do they dispute that Mattel has had no opportunity to examine Larian about them. Mattel is entitled to additional time to do so to avoid being surprised at trial.

*MGA's and Larian's ongoing unlawful activities since his last deposition.*  The MGA parties do not dispute that, even as alleged in the SAAC, Mattel's RICO and unfair competition claims are, as the Discovery Master has held in multiple orders, ongoing to the present day.[27]  Nor do they dispute that Mattel has had no opportunity to examine Larian regarding MGA's and Larian's ongoing use of Mattel's trade secrets, any intervening acts of trade secret theft, unfair competition or destruction of evidence or other RICO predicate acts in the sixteen months since his last deposition.  Mattel is entitled to additional time to do so.

*MGA's and Larian's recently produced documents.*   The MGA parties do not dispute that they have produced over 160,000 pages of documents since Larian's deposition in March 2008.  Their argument that Mattel's inability to examine Larian about any of these documents due to its own "tactical" decisions (Opp. at 17) is baseless.  Larian's March 2008 deposition took place 14 months after Mattel first filed counterclaims against Larian and the other MGA parties and only two months before the start of the Phase 1 trial.  The undisputed evidence is that Mattel requested the documents in question and even moved to compel MGA to

---

[26]   See MGA Entertainment, Inc.'s Supplemental Disclosures and MGA Entertainment (HK) Limited, MGAE De Mexico S.R.L. De C.V., and Larian's Initial Disclosures Under Rule 26(a)(1) dated September 21, 2007, Kidman Dec., Exh. 49; see also excerpt from MGA's Response to Mattel, Inc.'s Response to Mattel, Inc.'s Amended Supplemental Interrogatory Regarding Defendants' Affirmative Defenses, dated January 7, 2008 (unclean hands/in pari delicto affirmative defense), Supp. Kidman Dec., Exh. 12.

[27]   See Motion at 22-23, fn. 79.

07975/3032784.1

[PUBLIC REDACTED] REPLY IN SUPPORT OF MATTEL, INC.'S MOTION FOR ADDITIONAL TIME TO CONDUCT THE DEPOSITION OF ISAAC LARIAN

produce them well before the March 2008 deposition.[28]  However, because many of these documents related primarily to Phase 2 issues, the former Discovery Master declined to rule on Mattel's motions to compel in light of the Court's then-existing stay on Phase 2 discovery.[29]  Only after the Court lifted the Phase 2 discovery stay and Mattel renewed its motions to compel was it able to obtain tens of thousands of documents relevant to Phase 2 issues.[30]  By the MGA parties' logic, if Mattel wanted the opportunity to examine Larian about any of these documents, its only option was to forego *any* deposition regarding its Phase 1 claims and wait until after the Court lifted the Phase 2 discovery stay to take Larian's deposition.  That, of course, makes no sense.[31]

The MGA parties also argue that Mattel has failed to identify any belatedly produced document "about which it *must* examine" Larian.  (Opp. at 17) (emphasis added).  But as Judge Larson has held, the standard for obtaining discovery is not "necessity."  It is whether the information sought is "reasonably

---

[28]  See Motion at 23-24.

[29]  Id.

[30]  Id.

[31]  Equally without merit is the MGA parties claim that "Mr. Quinn adjourned Mr. Larian's deposition without full production of MGAE's documents" and that to allow Mattel to depose Larian about any of these belatedly produced documents would "flout Magistrate Block's May 2005 Order."  (Opp. at 17.)  The deposition that Mr. Quinn "adjourned" and that Magistrate Block compelled in his May 2005 Order was the first Larian deposition which, as shown, took place well before Mattel had even alleged a single claim against Larian or any of the other MGA parties. Furthermore, as Judge Block's Order shows on its face, he in no way precluded further deposition about documents that did not even yet exist or sought to prognosticate on possible future events such as amendments to pleadings; he merely indicated that Mattel would have to make appropriate showings like any other litigant seeking additional time, which Mattel has done here.

07975/3032784.1

-15-

[PUBLIC REDACTED] REPLY IN SUPPORT OF MATTEL, INC.'S MOTION FOR ADDITIONAL TIME TO CONDUCT THE DEPOSITION OF ISAAC LARIAN

1  calculated to lead to the discovery of admissible evidence."[32]  Among other things,

2  the documents in  question relate to MGA's purported conception of "Scooter

3  Samantha" and "Space Babes" products, at issue as in its counterclaims, and its theft

4  of trade secrets  (including communications with Brawer, Machado, Vargas, Trueba,

5  Brisbois and Castilla about the claims in this lawsuit).

6  **D.      Mattel Is Entitled To Additional Time To Examine Larian About**

7  **MGA's "Billion" Dollar Unfair Competition Claims**

8          The MGA parties do not dispute that they previously promised to

9  produce Larian for a separate day of examination about MGA's unfair competition

10  claims, only to renege on that commitment.  Their only argument regarding MGA's

11  unfair competition claims is that at Larian's March 2008 deposition Mattel

12  "dwell[ed] at length  . . . on MGA's contention that Mattel's MY SCENE BARBIE

13  was a knock off."  (Opp. at 8:19-21.)  The three pages of testimony they cite to does

14  not resemble anything close to a full examination of MGA's claims that MY SCENE

15  dolls infringe MGA's purported rights in Bratz.  And even if it did, MGA's unfair

16  competition claims are hardly so limited, encompassing sweeping allegations of

17  serial copying of MGA's products, trade dress, trademarks, product packaging,

18  themes, ideas, advertising not only with respect to Bratz and Bratz Petz, but also for

19  numerous other product lines such as "4-Ever Best Friends," Mommy's Little

20  Patient" and "Alien Racers."[33]  MGA also alleges that Mattel has damaged MGA, by

21  threatening former employees and potential licensees, intimidating retailers and

22  distributors, tampering with retail displays, making false statements to retailers and

23  exerting undue influence over industry organizations.[34]  MGA has identified Larian

24

25      [32]   Judge Larson's Omnibus Order dated July 9, 2009 at 4, Supp. Kidman Dec.,

26  Exh. 13.

      [33]   MGA's Unfair Competition Complaint, ¶¶ 67-72, Kidman Dec., Exh. 3.

27      [34]   Id. at ¶¶ 74-100, Kidman Dec., Exh. 3.

28

-16-

1   as a witness with knowledge regarding all of these issues, including the alleged

2   "damages suffered by MGA as result of Mattel's conduct,"[35] and has expressly

3   confirmed that it intends to rely on Larian's testimony at trial to support its claims.

4   Except for the handful of general questions regarding the basis for Larian's

5   statement that MY SCENE dolls are a "rip-off" of Bratz referred to above, the MGA

6   parties do not and cannot point to any deposition testimony from Larian regarding

7   any of these issues.

8   **II.      MATTEL'S MOTION IS NOT PREMATURE**

9           The MGA parties claim that Mattel's motion is "premature" because

10  Mattel is obligated to "exhaust" the four hours they have unilaterally proposed

11  before Mattel can even seek any additional time.  (Opp. at 13-14.)  None of the

12  cases they cite for this proposition apply here.  In each, the party seeking the

13  deposition sought more than the seven hours provided by <u>Rule</u> 30(d)(1) before

14  taking any testimony whatsoever.[36]  Thus, far from showing that Mattel's motion is

15  premature, MGA's cited authorities confirm that Mattel has proceeded properly.

16  Here, Mattel deposed Larian in March 2008 and attempted to complete its

17  examination regarding the nine new claims that had been filed since his first

18  deposition, including the copyright infringement, RICO, theft of trade secret,

19  conversion, interference with contract, aiding and abetting, and unfair competition

---

21      [35]  <u>See</u> MGA Entertainment, Inc.'s Supplemental Disclosures and MGA
22  Entertainment (HK) Limited, MGAE De Mexico S.R.L. De C.V., and Larian's
23  Initial Disclosures Under Rule 26(a)(1) dated September 21, 2007, Kidman Dec.,
    Exh. 49.
24      [36]  <u>See</u> <u>Malec v. Trustees of Boston College</u>, 208 F.R.D. 23, 24 (D.Mass. 2002)
25  (request for additional time filed "before the deposition has commenced and ***before***
    ***any testimony has been taken***") (emphasis added); <u>Pratt v. Archstone Willow Glen</u>
26  <u>Apartments</u>, 2009 WL 2032469 (N.D. Cal. July 10, 2009) (denying request for
27  additional time because "Defendants should complete their first seven hour
    deposition before seeking leave for additional time.").

28

-17-

claims pleaded against Larian personally, and MGA's "billion" unfair competition claims.  As shown, the five hours allotted turned out to be woefully inadequate.  Only when subsequent meet and confer efforts failed did Mattel bring this motion.[37]

Moreover, even as to the newly alleged financial transactions, the issue is not whether Mattel is entitled to additional time to depose Larian (the MGA parties concede that it is), but rather how much additional time.  The four hours the MGA parties propose is not fixed by Rule or statute; it is an arbitrary number that is plainly inadequate.  There is no basis for requiring Mattel to "exhaust" the MGA parties' self-imposed time limit before the Discovery Master can even consider what would be a more appropriate amount of time given the relevance and complexity of the transactions and Larian's central role in them.  Indeed, courts routinely grant additional time for deposition in such circumstances even before the seven hours imposed by Rule 30 have been exhausted.  See Dunkin' Donuts, Inc. v. Mary's Donuts, Inc., 206 F.R.D. 518, 522 (S.D. Fla. 2002) (granting plaintiff's motion to extend deposition for fourteen hours before exhausting 7 hour limit); Grill v. Costco Wholesale Corp., 2004 WL 2314639, at *1 (W.D. Wash. Oct. 7, 2004) (granting additional time for examination before defendant had exhausted its remaining time under Rule 30(d)(2)).

Nor would it promote any purported "efficiency" to separate the financial transactions from the many other Phase 2 topics that remain to be covered, and require Mattel to exhaust the four hours proposed by the MGA parties on the financial issues and then re-visit the issues presented here.  Apart from the four hours being plainly inadequate, any such procedure would inevitably lead to endless

---

[37]  It should be noted that, contrary to the argument they now make, the MGA parties argued in those meet and confer discussions that Mattel had *waived* any right to seek additional time for Larian's deposition by not challenging the former Discovery Master's Order granting five hours of testimony.  See Letter from Amman Khan to Jon D. Corey dated February 10, 2009, Supp. Kidman Dec., Exh. 14.

07975/3032784.1

disputes regarding whether particular questions and answers relate to the newly alleged financial transactions and related predicate acts, Mattel's previously alleged Phase 2 claims or MGA's unfair competition claims.  There is bound to be some degree of overlap in any event, which will lead to further delays and additional motion practice.

Finally, any suggestion that Larian would voluntarily agree to appear for further examination once the four hours are exhausted is belied by the fact that Larian has never appeared for deposition in this case absent a Court Order.  Indeed, it took two Court Orders and an award of sanctions before Larian appeared for his first deposition[38] and, after breaking his promise to appear for a separate day of deposition, yet another Court Order to appear for his second.

## III.   THE ADDITIONAL TIME ALLOTTED FOR LARIAN'S EXAMINATION SHOULD ACCOUNT FOR THE CONDUCT AT HIS PRIOR DEPOSITION

The MGA parties urge that Mattel's failure to complain about Larian's conduct at the first day of his deposition "completely undermines the claim that Mr. Larian is by nature an obstreperous witness."  (Opp. at 18.)  But Mattel has never claimed that Larian is "by nature" obstreperous.  To the contrary, Mattel contends that Larian's dilatory conduct on the second day of his deposition was tactical.  The second day of deposition was conducted after Mattel had filed its claims against MGA and Larian and had been allotted only five hours to examine Larian about those claims and MGA's "billion" dollar unfair competition claims.  The fact that Larian's conduct was not so egregious at the first session of this deposition--before

---

[38]   The MGA parties' only response to this is that it did not require three separate orders to get Larian to appear for his first deposition because the sanctions award was part of the second order.  (Opp. at 6, fn. 1.)  That hardly shows that Larian can be counted on to do anything voluntarily.

1  Mattel had filed any such claims--simply proves Mattel's point.  The MGA parties

2  also deny that Larian spent inordinate amounts of time reviewing exhibits[39] and

3  claim that it was Mattel, for reasons they cannot explain, that chose to waste what

4  little time it had by "playing word games."  (Id.)  The video clips submitted by

5  Mattel speak for themselves in this regard.  Moreover, even if the time spent by

6  Larian reviewing documents and dissecting questions cannot be attributed to a

7  deliberate strategy, at the very least it proves that the next deposition, which will be

8  even more document intensive, will require that much more time since he insists on

9  extensive periods of time to review documents during the deposition.[40]

10

11

12

13 _____

14  [39]   They attempt to justify the time spent, at least in part, by claiming that Larian

15  was "repeatedly interrupted during this review" (Opp. at 18) when in fact the clips

16  submitted by Mattel show that the only purported "interruption" was to inform

   Larian that he would be examined about only a specific portion of the document.

17  They also claim that the subject matter of each of the documents on which Larian

   was examined "concerned the creation of Bratz or copyright infringement--topics

18  that had already been the subject of lengthy examination on the first day of Mr.

   Larian's deposition."  (Opp. at 10.)  In fact, there was no claim for copyright

19  infringement even pending when Larian was first deposed and, even if Larian had

20  been examined at length about copyright infringement during the first day of this

   deposition--which he was not--the MGA parties fail to explain why that would

21  require Larian to spend yet more time reviewing documents about that topic during

22  the second day of this deposition.

23  [40]   The MGA parties also assert that Mattel somehow waived any argument

   based on Larian's conduct at his prior deposition.  They fail to cite any authority and

24  offer no basis for this argument.  Nor do they even suggest when Mattel purportedly

25  should have raised this issue given that Larian was deposed on March 26, 2008, the

   Court did not lift the Phase 2 discovery stay until January 6,  2009 and Mattel raised

26  Larian's conduct in meet and confer correspondence immediately thereafter.  See

27  Letter from Jon Corey to Thomas Nolan and Jason Russell dated January 27, 2009,

   Kidman Dec., Exh. 33.

28

07975/3032784.1

-20-

[PUBLIC REDACTED] REPLY IN SUPPORT OF MATTEL, INC.'S MOTION FOR ADDITIONAL TIME TO
CONDUCT THE DEPOSITION OF ISAAC LARIAN

## IV.   MGA'S AND LARIAN'S MOTION FOR PROTECTIVE ORDER SHOULD BE DENIED

The MGA parties purport to seek a protective order limiting Larian's deposition to four hours addressed only to the newly alleged financial transactions in the TAAC.[41]   The MGA parties bear the burden of showing they are entitled to such relief.  They have failed to carry that burden.

The MGA parties fail to submit a shred of evidence to support their prediction of financial ruin to MGA if Larian is required to sit for anything more than the four hours of deposition they propose.  Mr. Larian attended nearly every day of the three month Phase 1 trial in Riverside last summer without giving up the reins of MGA.[42]

MGA's accusation that Mattel seeks additional time to depose Larian as part of a strategy to use this litigation to "destroy" MGA is entitled to no weight and is groundless.  The unnamed "Mattel executive" they tout is in fact Ron Brawer, *MGA's* senior vice-president who is alleged in this lawsuit to have stolen Mattel's trade secrets and to have targeted certain other Mattel employees in an effort to induce them to join MGA and bring Mattel's trade secrets with them.[43]  The language they quote is from Brawer's deposition testimony in this lawsuit -- which

---

[41]   The purported motion for protective order appears to have been tacked onto the end of the opposition in an attempt to gain an improper surreply.  The MGA parties' reply in support of that motion should be limited to matters properly raised regarding the claim of hardship.

[42]   Mattel has never suggested that Larian's deposition must be taken over consecutive days and is certainly willing to make reasonable accommodations to fit Larian's business schedule.

[43]   <u>See</u> TAAC, ¶¶ 62-76.

-21-

07975/3032784.1

[PUBLIC REDACTED] REPLY IN SUPPORT OF MATTEL, INC.'S MOTION FOR ADDITIONAL TIME TO CONDUCT THE DEPOSITION OF ISAAC LARIAN

1 MGA neglects to mention in its citation to an earlier filing and fails to include

2 among its exhibits.[44]

3        MGA's suggestion that Mattel is in any way abusing Mr. Larian

4 through litigation ignores the Phase 1 trial verdict in which the jury found that MGA

5 and Larian stole Mattel's property, committed numerous intentional business torts

6 against Mattel, infringed its rights in Bratz works and awarded $100 million in

7 damages.  It ignores that the Court has found Mattel submitted an "unprecedented"

8 amount of evidence substantiating its Phase 2 claims,[45] ███████████████

9 ██████████████████████████████████████,[46] and that Larian

10 and MGA have engaged in activities designed to flout the Court's injunctive Orders

11 as are also now the basis of additional Phase 2 claims.[47]  And, MGA overlooks that

12 *Larian* is pursuing claims -- for which he says he is seeking "billions" of dollars in

13 damages -- *against* Mattel.[48]

———————————

14

15   [44]   In an effort to obscure this fact, the MGA parties do not attach the document

16 they cite to for the quoted language--Ex. 21 of the Declaration of Jason D. Russell in
Support of MGA Parties' Motion for Partial Summary Judgment--but instead refer to

17 it by an incorrect docket number.  A copy of the document--which is an excerpt

18 from Brawer's deposition transcript, dated February 5, 2008--is attached to the Supp.
Kidman Dec. as Exh. 15.

19   [45]   Judge Larson's Minute Order, dated May 21, 2009, at 6, Kidman Dec., Exh.

20 32.

21   [46]   August 15, 2008 Trial Tr. 7643:15-7644:7, Supp. Kidman Dec., Exh 16.
   [47]   Judge Larson's Minute Order, dated April 27, 2009, at 16-17, Kidman Dec.,

22 Exh. 26.

23   [48]   The MGA parties assert that Mattel has admitted that it intends to spend a
good portion of the deposition asking Larian about issues that have already been

24 covered--the conception of Bratz and copyright infringement.  (Motion for

25 Protective Order at 20.)  Mattel does intend to examine Larian about MGA's post-
verdict infringement of Mattel's rights in Bratz in support of its criminal copyright

26 infringement claim and his perjury at the Phase 1 trial regarding what Bryant told
him and what he believed regarding when Bratz was created, but neither of these

27 topics has been, nor could have been, the subject of prior deposition testimony.

28

The MGA parties repeat their assertion that Mattel's request for only 10 additional hours of time in initial meet and confer correspondence in January 2009 shows that Mattel's request for additional time now is nothing more than a bargaining tactic that the Discovery Master should reject.  That contention is without merit.  In January 2009, Mattel did not know about Larian's financing of the Wachovia debt acquisition, and it was not until the Wachovia production in March and the IGWT production in April that Mattel learned of the wrongdoing detailed in the TAAC.  The notion that Mattel is limited in its questioning because of an offer it made when it did not even know about these transactions, and had received no documents from Wachovia, Omni, MGA or Larian, underscores the challenge Mattel faces.  The essence of this case is Larian's concealment -- of his knowledge of Mattel's rights to Bratz, of the authorship of Bratz, of financial records and hundreds of millions in fraudulent transactions, of the source of funds for these transactions, of relationships between so-called arms length investors and apparently (but not actually) independent entities.  The web he has created is not easily untangled.  Larian's arguments to limit his deposition prove just the opposite.

## Conclusion

For the foregoing reasons, Mattel respectfully requests that its motion be granted in its entirety, that MGA and Larian's motion for protective order be denied and Larian be ordered to appear for an additional 21 hours of deposition testimony.


DATED:  July 30, 2009              QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP


                                   By /s/ Michael T. Zeller
                                      Michael T. Zeller
                                      Attorneys for Mattel, Inc.

07975/3032784.1

-23-
[PUBLIC REDACTED] REPLY IN SUPPORT OF MATTEL, INC.'S MOTION FOR ADDITIONAL TIME TO CONDUCT THE DEPOSITION OF ISAAC LARIAN