MELINDA HAAG (State Bar No. 132612)
mhaag@orrick.com
ANNETTE L. HURST (State Bar No. 148738)
ahurst@orrick.com
WARRINGTON S. PARKER III (State Bar No. 148003)
wparker@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP The Orrick Building
405 Howard Street
San Francisco, CA 94105
Telephone: +1-415-773-5700
Facsimile: +1-415-773-5759

WILLIAM A. MOLINSKI (State Bar No. 145186)
wmolinski@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017
Telephone: +1-213-629-2020
Facsimile: +1-213-612-2499

Attorneys for MGA Parties

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an Individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware Corporation,<br><br>Defendant.<br><br>_____<br><br>AND CONSOLIDATED ACTIONS | Case No.  2:04-cv-09049-SGL-RNBx<br><br>Consolidated with:<br>Case No. CV 04-9059<br>Case No. CV 05-2727<br><br>**MGA PARTIES' OPPOSITION TO MATTEL'S MOTION FOR CLARIFICATION OF JUNE 18, 2009 ORDER REGARDING ESCROW OF BRATZ PROFITS**<br><br>Date:          August 17, 2009<br>Time:          10:00 A.M.<br>Courtroom:  1<br>Judge:         Hon. Stephen G. Larson<br><br>[Declaration of Warrington S. Parker III filed concurrently] |

MGA's Opposition to
Mattel's Mtn. for Clarification of June 18 Order
CV 04-9049 SGL (RNBx)

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY OF ARGUMENT ....................................... 1

STATEMENT OF FACTS ............................................................................... 3

    A.    The Jury Determined That The MGA Parties' Actions From The Introduction of the Bratz Dolls Until August 2008 Did Not Willfully Infringe ................................................................................ 3

    B.    This Court's Orders Expressly Allow The MGA Parties To Sell Bratz Dolls After December 3, 2008 With An Accounting Of Profits For Mattel's Benefit ........................................................... 5

ARGUMENT ..................................................................................................... 7

    NO CLARIFICATION OF THE JUNE 18 ORDER SHOULD ISSUE OTHER THAN TO CONFIRM THAT THE PREDICATE ACT OF CRIMINAL COPYRIGHT INFRINGEMENT IS PRECLUDED ................ 7

    A.    Mattel Must Demonstrate Specific Intent To Infringe Copyright In Support Of Its Purported Criminal Infringement Predicate Act ...... 7

    B.    Mattel Cannot Demonstrate Specific Intent To Infringe For The Period Between July 2008 and December 2008 ................................. 9

        1.    The August 26, 2008 Verdict Did Not Place The MGA Parties On Notice As To What Infringed ................................. 9

        2.    Mattel Is Estopped From Asserting That The MGA Parties' Had The Requisite Notice Of Infringement From The Phase 1(b) Verdict ....................................................... 12

    C.    The Court's June 18 Finding That Its Stay Orders Preclude A Showing of Civil Willful Infringement Following The December 3, 2008 Injunction Is Correct And Applies With Even More Force In The Context Of Alleged Criminal Infringement ........ 13

CONCLUSION ................................................................................................ 14

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Bryant v. Mattel, Inc.*,
573 F. Supp. 2d 1254 (C.D. Cal. 2007)...............................................................7

*Cheek v. United States*,
498 U.S. 192 (1991) ...........................................................................7, 8

*Christopher Phelps & Associates, LLC v. Galloway*,
492 F.3d 532 (4th Cir. 2007) ...........................................................15

*Danjaq LLC v. Sony Corp.*, 263 F.3d 942 (9th Cir. 2001).............................11, 12

*Eastern R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961) ...........................................................................15

*Fogerty v. Fantasy, Inc.*,
510 U.S. 517 (1994) ...........................................................................11

*King Records, Inc. v. Bennet*,
438 F. Supp. 2d 812 (M.D. Tenn. 2006) ...........................................11

*Mine Workers v. Pennington*, 381 U.S. 657 (1965) ...............................................15

*Parker v. Brown*,
317 U.S. 341 (1943) ...........................................................................15

*Rissetto v. Plumbers and Steamfitters Local 343*,
94 F.3d 597 (9th Cir. 1996) ...............................................................13

*Screws v. United States*,
325 U.S. 91 (1945) ...........................................................................7, 8

*The Milton Greene Archives Inc. v. CMG Worldwide, Inc.*,
2008 U.S. Dist. LEXIS 71761 (C.D. Cal. March 17, 2008).............................11

*United National Insurance Co. v. Spectrum Worldwide, Inc.*,
555 F.3d 772 (9th Cir. 2009) ...............................................................13

*United States v. Acevedo-Cruz*,
2006 WL 448680 (D.P.R. Feb. 23, 2006) ...........................................7

*United States v. Goss*,
803 F.2d 638 (11th Cir. 1986) ...........................................................7

*United States v. Heilman*,
614 F.2d 1133 (7th Cir. 1980) ...................................................1, 7, 8

*United States v. Moran*,
757 F. Supp. 1046 (D. Neb. 1991)...........................................................7

- ii -

MGA's Opposition to
Mattel's Mtn. for Clarification of June 18 Order
CV 04-9049 SGL (RNBx)

**TABLE OF AUTHORITIES**
**(continued)**

Page

*United States v. Murdock*,
  290 U.S. 389 (1933) ...............................................................................7

*United States v. Wise*,
  550 F.2d 1180 (9th Cir. 1977) ...................................................... 1, 7, 8

*Video Views, Inc. v. Studio 21, Ltd.*,
  925 F.2d 1010 (7th Cir. 1991) ............................................................ 11

**STATUTES**

17 U.S.C. 512(c)(3)(A)(iii) ..................................................................... 11

**MISCELLANEOUS**

S. Korniczky, D. Martens, Verdict Forms—*A Peek Into The "Black Box"*, 23
  AIPLA Quarterly Journal 617, 635 (Fall 1995)................................ 13

- iii -

MGA's Opposition to
Mattel's Mtn. for Clarification of June 18 Order
CV 04-9049 SGL (RNBx)

**INTRODUCTION AND SUMMARY OF ARGUMENT**

Mattel's Motion for Clarification of June 18, 2009 Order Regarding The Escrow of Bratz Profits ("Motion" or "Mot.") should be denied, and this Court's June 18, 2009 Order should stand as written. If any clarification is appropriate, it would be for this Court to end Mattel's effort to re-litigate the willfulness issue and issue an order now that entirely precludes Mattel from seeking to prove its criminal copyright predicate act—because Mattel cannot meet the elements of that claim.

Willfulness is an element of a criminal copyright claim. The Phase 1 jury found that no defendant had willfully infringed under the civil "knowingly infringed" standard charged by the Court in its Phase 1 instructions. For purposes of *criminal* copyright infringement, willfulness requires proof of an even higher standard—that a defendant acted with the *specific intent* to infringe—that "the defendant acted with the purpose of depriving the victim of the interest protected by that right." *United States v. Heilman*, 614 F.2d 1133, 1137 (7th Cir. 1980); *United States v. Wise*, 550 F.2d 1180, 1186 (9th Cir. 1977). And, this is a subjective intent standard that is cannot be defeated even by a showing of objective unreasonableness. *See* Part I(A), *infra*.

There are at least two independent reasons why Mattel cannot demonstrate specific intent to infringe for the period from July 2008 to December 2008.

*First*, the jury's verdict did not put the MGA Parties on notice of precisely *what* infringed. There was no special verdict form. In the words of Mattel, "[y]ou're going to be able to discern from the damages award what the jury finds." Ex. B at 14[1] (8/18/08 Tr. 7981:23-25). The jury returned a verdict of $10M on the copyright claim in response to a request for more than $1B in damages calculated on all dolls, after it asked whether it could find that only the first generation of dolls infringed and was told yes. To the extent the Phase 1 jury's verdict tells us

_____

[1] All exhibits are attached to the Declaration of Warrington S. Parker III, filed concurrently. The jump cite for exhibits references the consecutive numbering required by the local rules.

1  anything about the scope of infringement, it tends most strongly to support the

2  notion that only the first generation dolls were found to infringe—dolls that the trial

3  record demonstrate were long since off the market by the time of the verdict.  But

4  no matter how one looks at it, the damages verdict must at least mean that the jury

5  found that not *every* Bratz doll ever marketed infringed.  If not every doll infringed,

6  then without a special verdict form there is no way to know exactly *which* subset of

7  dolls the jury did find infringed, and whether they were still on the market or not.

8  This lack of notice as to precisely *what* was infringing would be fatal even to a

9  claim of civil willfulness—but it is surely dispositive of the specific intent required

10  to criminally infringe.  Part I(B)(1), *infra*.

11      *Second*, Mattel is estopped to claim that the jury's general verdict on

12  infringement put the MGA Parties on notice of what infringed for the July through

13  December 2008 period.  Willfulness even for assessing civil infringement, let alone

14  criminal infringement, requires that defendant had exact notice of what was alleged

15  to infringe.  But by objecting to the MGA Parties' proposed use of a special verdict

16  form requesting that the jury identify precisely which of the accused dolls infringed,

17  and successfully obtaining this Court's order that no special verdict form would be

18  used, Mattel invited this circumstance and is estopped from taking advantage of it.

19  Mattel insisted on a general verdict form, arguing vociferously that the damages

20  would provide the Court with all of the guidance it needed to determine the scope

21  of infringement.  As the Court later expressly found (again, at Mattel's invitation

22  and insistence), that turned out not to be the case.  Mattel created the uncertainty

23  that now defeats any claim of specific intent to infringe and must live with it.  Part

24  I(B)(2), *infra*.

25      Finally, for the period from December 3, 2008 through January 21, 2010, this

26  Court rightly concluded in its June 18 order that the MGA Parties' "reliance on the

27  Court's imposition of the stay is sufficient to negate an inference of willfulness."

28  Dkt. No. 5740 at 6.  The MGA Parties were acting pursuant to stay orders that

MGA's Opposition to
Mattel's Mtn. for Clarification of June 18 Order
CV 04-9049 SGL (RNBx)

1  expressly permitted selling dolls.  And, since April 27, 2009, the MGA Parties have

2  been acting under the auspices or guidance of either a Temporary Receiver or

3  Monitor, both of whom this Court expressly authorized to sell Bratz dolls and Bratz

4  products subject to a duty to account.  The Court has already found that this

5  circumstance necessitates the conclusion that the MGA Parties did not act with civil

6  willfulness during the post-December 3 time period, and a criminal copyright

7  predicate act is therefore necessarily precluded.  Moreover, since MGA is selling

8  dolls pursuant to an express order to escrow profits, Mattel's rights are exhausted

9  and there can be no further claim of copyright infringement *at all*, let alone criminal

10 copyright infringement.  Part I(C), *infra*.

11        In short, Mattel's Motion should be denied and to the extent any clarification

12 issues, it should be to confirm that the Court's June 18 order *does* preclude further

13 litigation of the criminal copyright predicate act.

## STATEMENT OF FACTS

14

15        **A.    The Jury Determined That The MGA Parties' Actions From The
16               Introduction of the Bratz Dolls Until August 2008 Did Not
               Willfully Infringe.**

17        As the Court is aware, in Phase 1 of the trial, the parties tried, among other

18 claims, Mattel's copyright ownership and infringement claims.  After prevailing on

19 its ownership claim in Phase 1(a), Mattel argued in Phase 1(b) that every one of the

20 hundreds of Bratz female dolls created, manufactured, and distributed from the

21 introduction of the dolls in 2001 right up through the time of the jury's verdict

22 infringed on Mattel's newly minted copyrights.  Mattel asked for damages in excess

23 of $1 billion, calculated based upon the profits to the MGA Parties of every doll

24 sold.  Ex. A at 4-7 (8/20/08 Tr. 8155-58).  In addition, Mattel asked the jury to find

25 this alleged infringement willful.  *Id.*

26        In connection with Mattel's willfulness claim, the Court instructed the jury

27 that

28

1
2
> An infringement is considered willful when the plaintiff has proved both of the following elements by a preponderance of the evidence:

3
4
> 1. The defendants engaged in acts that infringed on the copyright; and

5
> 2. The defendants knew that those acts infringed on the copyright.

6  Ex. A at 3 (8/20/08 Tr. at 8108).

7          The MGA Parties requested a special verdict form setting forth each doll

8  accused by Mattel in order to obtain a determination which dolls infringed. Dkt.

9  No. 4250 (MGA Proposed Special Verdict Form). Mattel objected vociferously,

10  urging the Court to use only a general verdict form. Ex. B at 10-18 (8/18/08 Tr.

11  7977-85). Mattel prevailed on its argument for a general verdict form, arguing

12  "[y]ou're going to be able to discern from the damages award what the jury finds."

13  Ex. B at 14 (8/18/08 Tr. 7981:23-24).

14          On August 22, 2008 during deliberations, the jury sent a note asking: "Can

15  we find the first generation dolls violate the copyright of Mattel but that subsequent

16  generations of dolls do not violate the copyright?" Ex. C at 21 (8/22/08 Tr. 8288).

17  The Court answered in the affirmative. Ex. C at 22 (8/22/08 Tr. 8290). On August

18  26, 2008, the jury returned the general verdict on Mattel's copyright claim. Dkt.

19  No. 4279 (Phase 1(b) Verdict). That verdict found that no defendant had willfully

20  infringed, and awarded only $10M of the requested $1B in copyright damages.

21          No one could "discern from the damages award what the jury" found to be

22  infringing. In this Court's words, "the Court and the parties are left to hazard

23  various guesses as to the jury's intentions." *See* Dkt. No. 4439 at 10 (12/3/08

24  Order). The jury verdict reflected only a dollar amount, and that dollar amount of

25  $10 million is a very small fraction of the damages sought by Mattel.

26          Between the time of the jury's August 26, 2008 verdict and this Court's order

27  of December 3, 2008, there were no other findings of infringement.

28

MGA'S OPPOSITION TO
MATTEL'S MTN. FOR CLARIFICATION OF JUNE 18 ORDER
CV 04-9049 SGL (RNBx)

**B.**     **This Court's Orders Expressly Allow The MGA Parties To Sell Bratz Dolls After December 3, 2008 With An Accounting Of Profits For Mattel's Benefit.**

In the briefing in which it requested a permanent injunction, Mattel expressly urged the Court to undertake a re-assessment of which dolls infringed, itself acknowledging that the scope of infringement could not be ascertained from the jury's verdict.  Dkt. No. 4384 at 1-5 (Mattel's 10/22/08 Reply Brief).  On December 3, 2008, this Court entered an injunction.  Dkt. No. 4443 (Order Granting Mattel's Motion for Injunction).  In its companion order, as noted above, the Court agreed with Mattel's assertion that the scope of infringement could not be ascertained from the jury's Phase 1b verdict: "But where, as here, the Court and the parties are left to hazard various guesses as to the jury's intentions, the Court can make no principled inferences and must therefore engage in its own fact-finding."  Dkt. No. 4439 at 10 (12/3/08 Order).  The Court then undertook to reassess that question—identifying for the first time the Bratz dolls that infringed.  *See* Dkt Nos. 4439, 4443.

The Court then granted a stay.  The stay order authorized the MGA Parties to sell Bratz product.

> Notwithstanding any previous Order of the Court, the December 3, 2008, Order Granting Mattel, Inc.'s Motion for Permanent Injunction (docket #4439), shall remain **STAYED**, . . . Specifically, retailers and distributors will be permitted to purchase the Spring and Fall 2009 lines of Bratz and Bratz-related products from MGA and MGA licensees, up to and including December 31, 2009.

Dkt. No. 4657 (1/7/09 Order).  In two subsequent rulings, this Court affirmed that the stay permitted the MGA Parties to continue to sell Bratz and Bratz-related products.

First, in its April 27, 2009 Order, this Court left "undisturbed" the stay set forth in its January 7, 2009 Order, "which relates to the purchase of Bratz products by retailers and distributors up to and including December 31, 2009."  The Court also appointed a Temporary Receiver who was expressly authorized to sell "Bratz Assets."  Dkt. No. 5273 at 22(g).  According to this Court's Order, the Temporary

- 5 -

1  Receiver

2      shall have the power to take any and all action which may
       be necessary appropriate or advisable to effectuate the
3      purpose of the Temporary Receivership, including, but
       not limited to the power to:
4
       c. exploit, license, distribute and sell the assets of the
5      MGA entities and the Bratz Assets and products for
       profit, including without limitation, by selling Bratz-
6      branded dolls and other good through appropriate
       channels of trade and distribution;
7
       d. market, promote and/or advertise the assets of the
8      MGA entities and the Bratz Assets and/or Bratz-branded
       products;
9

10  Dkt. No. 5273 at 23 (4/27/08 Order).

11      Second, the Court's Order of May 21, 2009 again authorized the sale of Bratz

12  dolls and Bratz-related products.  Dkt. No. 5565 (5/21/09 Order).  The Court

13  modified its prior orders only to the extent that it extended the date of sale from

14  December 31, 2009 to January 21, 2010.  "The MGA parties and others in the

15  distribution chain may sell all 2009 Bratz products up through and including

16  January 21, 2010."  Dkt. No. 5565 at 7.  The Court revoked the temporary

17  receivership, appointing a Monitor instead of a permanent receiver.  The Monitor

18  has the authority to "monitor, supervise, and oversee the exploitation of the Bratz

19  Assets," a term that includes all Bratz dolls and Bratz and Jade trademarks.  Dkt.

20  No. 5565 at 10.  The Monitor is presently supervising the implementation of the

21  Court's equitable orders, and has counseled MGA to continue selling 2009

22  products.  MGA has been and will be requesting the Monitor's advice regarding the

23  continued manufacturing and distribution of 2009 products.  The Monitor also

24  claims the authority to require monthly profits from such exploitation to be

25  escrowed, a power which Mr. Fraoli has recently exercised.  Mattel has not itself

26  exploited any of the Bratz assets since the time the permanent injunction was

27  entered.

28

MGA'S OPPOSITION TO
MATTEL'S MTN. FOR CLARIFICATION OF JUNE 18 ORDER
CV 04-9049 SGL (RNBx)

1

**ARGUMENT**

2

**NO CLARIFICATION OF THE JUNE 18 ORDER SHOULD ISSUE OTHER THAN TO CONFIRM THAT THE PREDICATE ACT OF CRIMINAL COPYRIGHT INFRINGEMENT IS PRECLUDED.**

3

4

    A.    **Mattel Must Demonstrate Specific Intent To Infringe Copyright In Support Of Its Purported Criminal Infringement Predicate Act.**

5

6

    As Mattel acknowledges, the remaining copyright claim is Mattel's criminal

7

copyright infringement predicate act for its RICO claim.  Mot. at 3.  To establish its

8

criminal copyright claim, Mattel must prove "'three elements: (1) infringement of a

9

copyright (2) done willfully (3) for purposes of commercial advantage or private

10

financial gain.'"  *Bryant v. Mattel, Inc.*, 573 F. Supp. 2d 1254, 1268 (C.D. Cal.

11

2007) (quoting *United States v. Goss*, 803 F.2d 638, 642 (11th Cir. 1986)).

12

    Willfulness is strictly defined for the purpose of criminal copyright

13

infringement.  Courts have adopted the willfulness standard articulated by the

14

Supreme Court in the context of criminal tax evasion and other criminal statutes.

15

*United States v. Wise*, 550 F.2d 1180, 1186 (9th Cir. 1977) (defining willfulness by

16

reference to *Screws v. United States*, 325 U.S. 91 (1945)); *United States v.*

17

*Heilman*, 614 F.2d 1133, 1137 (7th Cir. 1980) (defining willfulness by reference to

18

*Screws v. United States*, 325 U.S. 91 (1945), and *United States v. Murdock*, 290

19

U.S. 389 (1933)); *United States v. Acevedo-Cruz*, 2006 WL 448680 *3 (D.P.R. Feb.

20

23, 2006) (defining willfulness by reference to *Cheek v. United States*, 498 U.S.

21

192 (1991)); *United States v. Moran*, 757 F. Supp. 1046, 1049 (D. Neb. 1991)

22

(same).  *See generally Screws v. United States*, 325 U.S. 91 (1945); *Cheek v. United*

23

*States*, 498 U.S. 192 (1991).

24

    As a result, for the purposes of willfulness under the criminal copyright

25

statute, "something more is required than the doing of the act proscribed by the

26

statute."  *Screws*, 325 U.S. at 101.  Rather, willfulness requires a showing of "[a]n

27

evil motive to accomplish that which the statute condemns."  *Id.*  Thus, to establish

28

criminal willfulness for purposes of its RICO predicate act, Mattel must

demonstrate that the MGA Parties infringed on Mattel's copyright with the "specific intent to deprive [Mattel] of a . . . right." *Id.* at 103.  Mattel must show "that the law imposed a duty on the defendant, that the defendant knew of this duty, and that he voluntarily and intentionally violated that duty." *Cheek*, 498 U.S. at 201; *Wise*, 550 F.2d at 1194 (noting that "in addition to the usual requirement of an act intentionally done in violation of the law," the government established that defendant knew that he was violating copyright law); *Heilman*, 614 F.2d at 1138 (same).

Moreover, this is a purely subjective standard.  Specific intent to infringe requires a subjective state of mind that cannot be overcome even by a showing of objective unreasonableness.

> We thus disagree with the Court of Appeals' requirement that a claimed good-faith belief must be objectively reasonable if it is to be considered as possibly negating the Government's evidence purporting to show a defendant's awareness of the legal duty at issue. Knowledge and belief are characteristically questions for the factfinder, in this case the jury. Characterizing a particular belief as not objectively reasonable transforms the inquiry into a legal one and would prevent the jury from considering it.  It would of course be proper to exclude evidence having no relevance or probative value with respect to willfulness; but it is not contrary to common sense, let alone impossible, for a defendant to be ignorant of his duty based on an irrational belief that he has no duty, and forbidding the jury to consider evidence that might negate willfulness would raise a serious question under the Sixth Amendment's jury trial provision.

*Cheeks*, 498 U.S. at 203.  Thus, *any reason* the MGA Parties actually held that they did not continue to infringe must be considered in light of this subjective standard—including, for example, the notion that the first verdict was the product not of considered deliberation but of improper juror bias.

Mattel cannot establish criminal copyright infringement under this standard with respect to any relevant time period.[2]

_____

[2] MGAE, MGA HK and Mr. Larian also maintain on appeal at this time other

B.    **Mattel Cannot Demonstrate Specific Intent To Infringe For The Period Between July 2008 and December 2008.**

For the period between July 2008 and December 2008, this Court was correct in concluding that the MGA Parties could not have acted willfully.  While the Court noted that its finding was "limited to the equitable issue of the scope of an appropriate accounting" (thus making Mattel's Motion a curiosity in the first instance)[3], Dkt. No. 5740 at 5 n. 7, if there is to be any clarification then the Court should make clear that this finding governs the case to preclude further litigation of the copyright issue.

For at least two reasons, Mattel cannot demonstrate specific intent to infringe based on the MGA Parties' conduct during the period July 2008 to December 2008.  *First*, the August 22, 2008 jury note and August 26, 2008 damages verdict most strongly supported a reasonable inference that all infringement had by then ceased because the first generation dolls were no longer being reproduced and distributed; and, in all events that verdict defied any notion that every Bratz doll infringed.  Part 1, *infra*.  *Second*, Mattel caused this problem.  Having obtained what it undoubtedly saw as the enormous benefit of not forcing the jury to return answers on each doll, Mattel is now estopped from changing that bargain in order to charge the MGA Parties with notice of specific infringements based on the general verdict.  Part 2, *infra*.

1.    **The August 26, 2008 Verdict Did Not Place The MGA Parties On Notice As To What Infringed.**

The jury's general verdict did not specify which of the hundreds of dolls infringed.  The damages verdict that was only a tiny fraction of what Mattel

---

challenges to the copyright infringement claims, and those points of error are expressly reserved in connection with the Phase 2 claims to the extent Mattel's effort to continue litigating the issue of copyright infringement is accepted by the Court.  As we are respectful of the fact that the Court has already repeatedly addressed itself to those issues we do not address them herein, but instead address only the issue of criminal willfulness on which this Court has not previously ruled.
[3] This also points to the fact that this motion is procedurally improper.

1   requested came after a question from the jury as to whether it could find that only

2   the first generation dolls infringed—and the $10M number awarded by the jury

3   most closely approximated the MGA Parties' explanation of profits for the first

4   generation dolls.  The damages sum certainly did not bear any resemblance to any

5   calculation offered by Mattel for any identifiable subset of allegedly infringing

6   dolls.  Accordingly, the August 26 verdict must at least support the notion that not

7   every doll infringed.  As a result, there cannot ever be a legitimate finding of

8   specific intent to infringe because nothing placed the MGA Parties on notice that

9   the dolls they were reproducing and distributing between July 2008 and December

10  2008 were the dolls that infringed.

11      Given the jury's note and the damages number (as well as all of the evidence

12  offered by the MGA Parties at trial about how the many dolls had changed

13  significantly over time), it was and is a reasonable inference that the jury found

14  only the first generation dolls—products then no longer being reproduced and

15  distributed by MGA—had infringed.  Thus, even if the criminal specific intent

16  standard allowed for considerations of reasonableness, it could not be shown here.

17  It may not be *certain* that only-first-generation-dolls infringed was the true intent

18  behind an apparent compromise verdict, but such an interpretation cannot be wholly

19  discarded either, in light of the evidence presented, the jury's question, the Court's

20  response and the damages verdict.  A reasonable inference that only first generation

21  products were found by the jury to have infringed necessarily defeats any specific

22  intent to infringe in subsequent periods when those products were not being

23  reproduced and distributed.

24      Moreover, another reasonable inference—that whatever the verdict meant, it

25  must have meant that less than all dolls infringed—defeats any claim of notice

26  sufficient to establish the specific intent to infringe from the MGA Parties'

27  continuing conduct in marketing their Bratz dolls in the post-verdict period.  In its

28  June 18 Order, the Court noted exactly this problem with its reference to the MGA

- 10 -

Parties' earlier new trial argument that the rug was too small to cover the floor.  Dkt No. 5740 at 5.  The Court rightly concluded in the accounting context that a lack of particular notice defeats even civil willfulness—which requires a lesser showing than specific intent.  Indeed, as other courts have consistently made clear in the civil context, the failure of a plaintiff to identify *with specificity* the item that is claimed to infringe defeats a showing of willfulness.

Nor did the MGA Parties have notice based on Mattel's pleadings.  Mattel's complaint did not identify any particular item it claimed to be infringing.[4]  At trial, Mattel made the overbroad assertion that all Bratz dolls infringed.  Ex. E at 28-29 (8/20/08 Tr. 8138-39).  The jury obviously rejected this claim, as reflected by the size of its damages verdict.  After trial, Mattel continued its overbroad assertions of infringement at odds with the August 26, 2008 verdict in seeking permanent injunctive relief.  The Court also rejected Mattel's attempt to claim infringement based on every doll or other item ever marketed as part of the Bratz brand.  *Compare* Dkt. No. 4443 at 2-3(c), 3(d)(Order Granting Mattel's Motion for Injunction) *with* Dkt No. 4316-1 at 3(c), 3(d), 3(h) (Mattel's Proposed Order).  Even in the civil context, willfulness cannot be found "merely because [plaintiff] had laid claim to certain rights."  *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 959 (9th Cir. 2001).  "To hold that willfulness must be inferred whenever an alleged

---

[4] In *Video Views, Inc. v. Studio 21, Ltd.*, 925 F.2d 1010 (7th Cir. 1991) (overruled on other grounds in *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994)), the court affirmed the trial court's decision to vacate the jury's finding of willfulness.  It did so because when plaintiff notified defendant of the infringing items, plaintiff only identified "some" of the films that it alleged were infringing, "but the only two films that were found to have been infringed were never specifically listed in the letter."  *Id.* at 1021.  Similarly, in *The Milton Greene Archives Inc. v. CMG Worldwide, Inc.*, 2008 U.S. Dist. LEXIS 71761, *98-*99 (C.D. Cal. March 17, 2008), the court granted summary judgment in favor of defendant on the issue of willfulness because plaintiff failed to "identify [for defendant] the images" that he claimed were infringing when he asked defendant to remove them from its website.  And finally, the court in *King Records, Inc. v. Bennet*, 438 F. Supp. 2d 812, 861 (M.D. Tenn. 2006), reached the same result when plaintiff's notice to defendant but did not "furnish [defendant] with a list of the allegedly infringing product or any evidence to prove [plaintiff's] ownership of the Titles."  *Cf.* 17 U.S.C. 512(c)(3)(A)(iii) (requiring "identification of the material that is claimed to be infringing").

1    infringer uses an intellectual property in the face of disputed title would turn every

2    copyright claim into willful infringement . . . ." *Id.*  This is all the more true in this

3    case where Mattel's overbroad assertions of infringement had already been rejected

4    by the jury, and were later carved back by the Court.

5         Whatever may have been the true intent behind the jury's August 26, 2008

6    verdict, there are at least two reasonable inferences to be drawn therefrom which

7    preclude any finding of the specific intent to infringe required for criminal

8    willfulness during the July through December 2008 period.

9         **2.    Mattel Is Estopped From Asserting That The MGA Parties'**
          **Had The Requisite Notice Of Infringement Because They**
10        **Prevailed On The Form Of The Phase 1(b) Verdict.**

11        Moreover, Mattel is estopped from asserting otherwise.  The reason we do

12   not know which products the jury found infringing is that Mattel objected to finding

13   out and prevailed with that objection.  *Compare* Dkt. No. 4161 (Mattel's Proposed

14   1B Verdict Form) *with* Dkt. No. 4250 (MGA Parties' Phase 1(b) Verdict Form).  At

15   the time the Court recognized that using a special verdict form would makes things

16   clearer  Ex. B at 11 (8/18/08 Tr. 7978) ("But why – what is the downside of having

17   the jury also identify exactly what it is that they've have found?  I mean, that's

18   going to be very helpful to the court with respect to tailoring injunctive relief").

19   And the Court anticipated just the circumstance that MGA contends resulted from

20   use of the general verdict form.  Ex. B at 9a-9b (8/18/08 Tr. 7923-24) ("I could see,

21   theoretically, for example, the jury coming back and saying that the first generation

22   are substantially similar to the drawings, but perhaps the fifth generation is not.").

23   Nonetheless, Mattel successfully convinced the Court that the general verdict form

24   was appropriate because  "[y]ou're going to be able to discern from the damages

25   award what the jury finds."  Ex. B at 14 (8/18/08 Tr. 7981:23-24).

26        No plaintiff wants a complicated verdict form.  A complicated verdict form is

27   universally viewed as an impediment to relief for the plaintiff because it is simply

28   easier for the jury to answer "no," then to analyze which questions of many it

- 12 -

should answer "yes."  S. Korniczky, D. Martens, *Verdict Forms—A Peek Into The "Black Box"*, 23 AIPLA QUARTERLY JOURNAL 617, 635 (Fall 1995).  The other reason Mattel didn't want a special verdict was because its damages expert failed to apportion profits properly between direct and indirect infringement—thus a special verdict form would have threatened its entire damages case.  Mattel succeeded in avoiding a complicated verdict form asking for its views on whether each of hundreds of dolls infringed.  Thus Mattel did not have to suffer the risk that the jury might simply have said "no" to the predicate finding of *any* infringement in light of its obviously modest views of the overall scope of infringement, and also avoided the risk of a defect in its damages case.  *Mattel not only avoided those risks, but later used the uncertainty created by the verdict to obtain extremely expansive equitable relief.*  Ex. D at 25 (6/15/09 Tr. 15) ("Nobody could tell us what that verdict on infringement means); *id.* ("The fact of the matter is nobody will ever know what that number came from.").  Having benefited *enormously* by the use of a general verdict form over MGA's objection but at the same time having obtained a verdict that now gives rise to reasonable inferences that favor MGA in a different context, Mattel is precluded from asserting that MGA was on notice.  Mattel must take the burdens with the benefits of its general verdict.

Mattel has argued waiver or judicial estoppel on numerous occasions in this lawsuit.  If there were ever a circumstances that cried out for application of those doctrines, it is this one.  *See Rissetto v. Plumbers and Steamfitters Local 343*, 94 F.3d 597, 600-01 (9th Cir. 1996) (plaintiff was judicially estopped from asserting claims based on her ability to work after receiving workers' compensation settlement based on assertions of inability to work); *see also United Nat. Ins. Co. v. Spectrum Worldwide, Inc.*, 555 F.3d 772, 779-80 (9th Cir. 2009) (defendant judicially estopped from changing its position on which of its products infringed for insurance claim purposes because its "'gaming' of the courts will allow it the possibility of prevailing on the very position it successfully discredited while

1   attempting to avoid preliminary injunction").

2       Having insisted on a verdict form that caused uncertainty as to what infringed

3   and what did not, and having benefited enormously from that general verdict form,

4   Mattel cannot now take advantage of the uncertainty it was instrumental in creating.

5   Criminal willfulness is precluded.

6   **C.   The Court's June 18 Finding That Its Stay Orders Preclude A**
    **Showing of Civil Willful Infringement Following The December 3,**
7   **2008 Injunction Is Correct And Applies With Even More Force In**
    **The Context Of Alleged Criminal Infringement.**
8

9       Finally, for the period of time from December 2008 to the present, this Court

10  correctly concluded in its June 18 Order "that reliance on the Court's imposition of

11  the stay is sufficient to negate an inference of willfulness for the duration of the

12  stay." Dkt. No. 5740 at 6.  Given the language of the stay order and subsequent

13  orders expressly authorizing sales, and appointing a temporary receiver and monitor

14  to conduct or oversee such sales, there can be no other conclusion.  There is no

15  reason for the Court to reconsider, and it should not reconsider, that portion of its

16  June 18 Order.

17      Indeed, were the MGA Parties permitted to be found criminally infringing

18  *even at the present time* as Mattel apparently wishes, then the Court would have

19  unfairly placed the MGA Parties in an impossible Catch-22 situation that the law

20  does not permit.  The Monitor is presently supervising the implementation of the

21  Court's equitable orders while the MGA Parties are selling product.  For example,

22  the Monitor has agreed to review pending requests from licensees for product

23  approvals which can be produced in 2009.  The Court has precluded any claim

24  against the Monitor by granting immunity.  Due process does not permit the MGA

25  Parties to be held responsible for actions taken pursuant to the Court's supervision.

26  Since the Court's appointees have authorized and directed the MGA Parties'

27  activities and are themselves immune to such claims as governmental entities, the

28  MGA Parties also are entitled to the benefit of that immunity pursuant to long-

1  established doctrines.  *See Mine Workers v. Pennington*, 381 U.S. 657 (1965);

2  *Eastern R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961);

3  *Parker v. Brown*, 317 U.S. 341 (1943).

4         Finally, the fact that the Monitor is escrowing profits for Mattel exhausts its

5  copyright interest and disentitles it to make any further claim of infringement

6  during the period of time covered by the escrow.  *See Christopher Phelps &*

7  *Assocs., LLC  v. Galloway*, 492 F.3d 532 (4th Cir. 2007) (denying further relief

8  because plaintiff had been fully compensated).

9                                    **CONCLUSION**

10        For the foregoing reasons, the Motion for Clarification should be denied.  If

11  any clarification is granted, it should be to confirm that the Order precludes any

12  further litigation of the issue of copyright infringement.

13

14  Dated:     August 3, 2009                    Respectfully submitted,

15                                               ORRICK, HERRINGTON & SUTCLIFFE LLP

16

17                                               By: */s/ Annette L. Hurst*

18                                               ANNETTE L. HURST
                                                 Attorneys for MGA Parties

19

20

21

22

23

24

25

26

27

28