# Exhibit A

1  UNITED STATES DISTRICT COURT

2  CENTRAL DISTRICT OF CALIFORNIA

3  EASTERN DIVISION

4  - - -

5  HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6  - - -

7  MATTEL, INC.,              )
                              )
8              Plaintiff,     )
                              )
9        vs.                  ) No. CV 04-09049
                              )
10 MGA ENTERTAINMENT, inc., et. Al., ) Trial Day 37
                              ) morning session
11             Defendants.    ) Pages 8069-8171
                              )
12 AND CONSOLIDATED ACTIONS,  )
                              )
13

14

15  REPORTER'S TRANSCRIPT OF JURY TRIAL PROCEEDINGS

16  RIVERSIDE, CALIFORNIA

17  Wednesday, August 20, 2008

18  8:33 A.M.

19

20

21

22

23  THERESA A. LANZA, RPR, CSR
    Federal Official Court Reporter
24  3470 12th Street, Rm. 134
    RIVERSIDE, CALIFORNIA  92501
25  951-274-0844
    WWW.THERESALANZA.COM

**CERTIFIED COPY**

1    Mattel also claims that defendants engaged in willful
2  infringement of Mattel's copyrights.  An infringement is
3  considered willful when the plaintiff has proved both of the
4  following elements by a preponderance of the evidence:
5    One, the defendants engaged in acts that infringed
6  the copyright; and two, the defendants knew that those acts
7  infringed the copyright.
8    A defendant cannot deduct overhead expenses,
9  operating expenses, or taxes from his or its gross revenue when
10 the copyright infringement is willful.
11   Mattel seeks damages under more than one legal claim
12 or theory, and as to three defendants.  In awarding damages as
13 to any particular claim or defendant, you should not consider
14 or discount your award based on amounts, if any, that you award
15 as to any other claim or defendant.  That is, you should award
16 the full amount of damages you find appropriate, if any, as to
17 each separate claim against each defendant.  The Court will
18 ensure, once your verdict has been reached, that the plaintiff
19 does not obtain duplicative damages.
20   If you decide that Isaac Larian's, MGA's, or MGA
21 Hong Kong's conduct caused Mattel harm, you must decide whether
22 that conduct justifies an award of punitive damages.
23   The purposes of punitive damages are to punish a
24 wrongdoer for the conduct that harmed the plaintiff and to
25 discourage similar conduct in the future.

1  characteristics.  The dolls they sued on in Hong Kong, while
2  different in other respects, shared these unique Bratz
3  characteristics.  Because whatever other differences existed in
4  those products, they shared the core protectable Bratz
5  characteristics that make them unique.  And it's true of every
6  single Bratz doll that MGA has made.  Not just the first four.
7  Every single one of them.
8         Now, of course, MGA seizes on little differences
9  between the dolls and the drawings.  But as MGA insisted when
10 it thought it owned the drawings, the test is not identity.
11 The dolls don't have to be identical.  They just have to be
12 substantially similar.  And that's why MGA's argument that
13 their Bratz dolls don't infringe the Bryant drawings is wrong.
14 Of course MGA changed little things on the later dolls.  Of
15 course they changed the hair color, the makeup, the clothes.
16 They want repeat customers.  They want customers to buy more
17 than one doll.  If they change nothing, that's not going to
18 happen.  But if they change too much, if they depart too much
19 from that unique Bratz look, it won't happen either.
20         Customers have to be able to readily identify the
21 later lines of Bratz dolls as Bratz line extensions and as
22 Bratz products.
23         MGA cannot sell a new product as part of the Bratz
24 brand unless each new product stays true to the core Bratz
25 look.  MGA knows this.  You'll remember, MGA's designer, Louis

1  Domingo, who took the stand last week, showed you his drawing
2  for the Bratz Tokyo A Go-Go dolls that were released in 2004.
3       Now, MGA could have made a doll that looked exactly
4  like this. It could have. But it didn't, as Mr. Domingo
5  testified. Instead, the final Bratz Tokyo A Go-Go doll, Sasha
6  doll, was readily identifiable as a Bratz Sasha doll. It
7  needed to share the basic characteristics. They could have
8  made a doll like this, but they didn't, as Mr. Domingo
9  acknowledged.
10      MGA's later dolls can't be exactly the same or there
11 will be no new sales. But they still have to be identifiably
12 Bratz; they have to be substantially the same, or there will be
13 no sale at all. MGA knows that, but they have to deny it now.
14      MGA's argument is so strange that Ms. Garcia made the
15 remarkable statement when she was on the stand that the Bratz
16 Twiins were identical but totally different. You'll recall
17 that testimony. And that really cuts to the heart of the
18 matter here, as far as when MGA talks about later-generation
19 Bratz. They have the same sculpt, the same large head, the
20 same unique eyes, the same diminished nose, the same large
21 lips, the same oversized feet. But MGA says they are totally
22 different, just like the Bratz Twiins. Identical, but totally
23 different.
24      Now, let me repeat, if you do not find that the later
25 Bratz dolls infringed Mr. Bryant's drawings, then MGA will be

Wednesday, August 20, 2008                Trial Day 37, morning session

Exhibit A - Page 5

1  free to profit from their theft in the future. Whatever
2  damages you award, if you don't find that the Bratz dolls are
3  infringing, MGA will be able to continue copying the ideas and
4  drawings which they wrongfully induced Mr. Bryant to bring over
5  from Mattel.
6  　　　　MGA says they are a great toy company. They say they
7  can package, market, brand, sell anything. Fine. Then tell
8  them to sell anything else, anything other than the dolls they
9  stole from Mattel.
10  　　　　If you find copyright infringement, then you have to
11  determine what the damages are that have resulted from that
12  infringement. And the starting point for copyright damages,
13  like the damages on the other claims, are the profits that MGA
14  and Mr. Larian have made on Bratz. And remember, as I told you
15  earlier, copyright law also says that Mattel is entitled to
16  indirect profits in addition to direct profits, indirect
17  profits that result, at least in part, from infringement of
18  Mattel's copyrights in Carter Bryant's drawings.
19  　　　　On copyright damages, there's a threshold question
20  you have to consider; and that's whether the infringement was
21  willful. In other words, did MGA know that they were making
22  dolls that infringed drawings that they had no business owning?
23  And I think it's pretty clear that MGA knew exactly what they
24  were doing. The importance of finding willfulness is it
25  means -- and you heard testimony about this -- that MGA is not

```
 1   entitled to deduct those general and administrative expenses
 2   from its revenues for purposes of calculating copyright
 3   damages.  The Court instructed you on this.
 4            If you find that MGA's infringement was not willful,
 5   then the profits number you should use is this $777.9 million.
 6   But if you find that MGA willfully infringed, then those
 7   general and administrative expenses are not deducted, and the
 8   number you should use is $1,121,300,000.  And here on the
 9   screen, we have put both of those numbers.
10            With regard to Mr. Larian, it doesn't matter whether
11   you find willful infringement, because he doesn't have
12   overhead; he doesn't have those general and administrative
13   expenses.
14            The measure of damages is the value of Mr. Larian's
15   benefits received from Bratz, his distributions and the
16   Bratz-related value of his interest in the company.
17            And remember that we gave Mr. Larian the benefit of
18   the doubt and calculated that value based upon those tens of
19   thousands of documents, late-produced financial documents, that
20   we received after your verdict.
21            So, as to Mr. Larian, the copyright damages are
22   $696 million.
23       THE COURT:  Mr. Quinn, I'm sorry to interrupt you,
24   but one of the jurors has indicated a need for a quick break;
25   so we're going to take a brief break here.
```

Wednesday, August 20, 2008                Trial Day 37, morning session

CERTIFICATE

I hereby certify that pursuant to section 753, title 28, united states code, the foregoing is a true and correct transcript of the stenographically recorded proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the judicial conference of the united states.

THERESA A. LANZA, RPR, CSR
Official COURT Reporter

8-21-08
Date