# Exhibit B

```
1              UNITED STATES DISTRICT COURT

2              CENTRAL DISTRICT OF CALIFORNIA

3                    EASTERN DIVISION

4                        - - -

5    HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6                        - - -

7   MATTEL, INC.,                )
                                 )
8              PLAINTIFF,        )
                                 )
9         VS.                    ) NO. ED CV 04-09049
                                 )
10  MGA ENTERTAINMENT, INC.,     )
    ET. AL.,                     )
11                               )
               DEFENDANTS.       ) CONFERENCE
12  _____)
    AND CONSOLIDATED ACTIONS,    )
13  _____)
```

REPORTER'S TRANSCRIPT OF PROCEEDINGS

RIVERSIDE, CALIFORNIA

MONDAY, AUGUST 18, 2008

9:02 A.M.

COPY

KYUNG LEE-GREEN, CSR NO. 12655
FEDERAL CONTRACT COURT REPORTER
3470 12TH STREET, RM. 134
RIVERSIDE, CALIFORNIA 92501
(951)274-0844

7874

```
 1  HONG KONG TOY FAIRS WERE INTERMEDIARY, AND THEY INFRINGE THE
 2  DRAWINGS.  BUT THERE'S NO PROOF OF ANY PROFITS DERIVED FROM
 3  ANY OF THAT.
 4            I -- I THINK THAT THIS COMES UP MORE IN
 5  COMPUTER -- COMPUTER TYPE OF CASES WHERE YOU'VE GOT
 6  ITERATIONS OF PROGRAMS THAT YOU'RE WORKING ON.  BUT I
 7  DON'T -- I, RESPECTFULLY, DO NOT BELIEVE THAT THIS HAS ANY
 8  BEARING IN THIS CASE AND COULD PROVE TO BE CONFUSING.
 9            THE COURT:  BUT DON'T WE HAVE ITERATIONS OF DOLLS,
10  BASICALLY, IN THIS CASE?
11            MR. NOLAN:  YOUR HONOR, RESPECTFULLY, OUR VIEW IS
12  THAT DOLL IS A DOLL, AND THAT THE ITERATION --
13            THE COURT:  WELL, I DON'T IF THAT'S BEEN YOUR
14  VIEW -- THINK ABOUT THAT STATEMENT, COUNSEL.
15            MR. NOLAN:  A DOLL --
16            THE COURT:  YOUR -- YOUR POSITION IS CERTAINLY --
17  AND -- AND I'M ACTUALLY SOMEWHAT -- TENTATIVELY, I -- I SIDE
18  WITH MGA ON THE VERDICT FORM THAT PRECISELY BECAUSE A DOLL
19  IS NOT JUST A DOLL, THAT -- THAT WE NEED TO BREAK OUT THE --
20  THE VARIOUS PRODUCTS THAT MATTEL CLAIMS ARE INFRINGING TO
21  FIND OUT WHAT THE JURY IS AND IS NOT FINDING.  AND IT'S
22  PRECISELY THAT A DOLL IS NOT A DOLL IS NOT A DOLL.  IT'S --
23  IT'S ONE CAN BE --
24            MR. NOLAN:  WELL --
25            THE COURT:  I -- I COULD SEE, THEORETICALLY, FOR
                                                         7923
```

```
 1  EXAMPLE, THE JURY COMING BACK AND SAYING THAT THE FIRST
 2  GENERATION ARE SUBSTANTIALLY SIMILAR TO THE DRAWINGS, BUT
 3  PERHAPS THE FIFTH GENERATION IS NOT.
 4              MR. NOLAN:  I -- I SEE WHAT YOU'RE SAYING.  IN --
 5  IN FACT, YOUR HONOR, WE WERE ACTUALLY SAYING THE SAME
 6  THING --
 7              THE COURT:  OKAY.
 8              MR. NOLAN:  -- WHEN I SAID THAT -- I MEAN, I -- I
 9  AGREE WITH THAT.
10              IF THAT'S THE INTERPRETATION THAT WAS BEING
11  APPLIED HERE, IF THIS IS ONE OF -- OF BREAKING THROUGH
12  GENERATIONS, THEN THAT ADDS SOME CLARITY TO US.
13              WE WERE JUST SITTING IN THE CONFERENCE ROOM . . .
14              THE COURT:  WELL, I'LL TAKE --
15              MR. NOLAN:  SO --
16              THE COURT:  -- I'LL TAKE A LOOK AT THIS AGAIN.
17              MR. NOLAN:  I DO -- I ALREADY COVERED EVERYTHING.
18  BUT I -- I CERTAINLY WASN'T INTENDING TO NOT ADOPT THE
19  COURT'S EARLIER VERSION THAT -- WE'RE NOT SAYING THAT EVERY
20  DOLL IS SIMILAR.
21              THE COURT:  OKAY.
22              MR. NOLAN:  THAT'S -- THAT'S NOT THE POINT THAT
23  I -- WHAT I WAS TRYING TO DRAW THE -- THE DISTINCTION IS
24  BETWEEN THE INTERMEDIATE -- THE PROTOTYPE FORM OF THE
25  DOLL --
```

7924

```
 1   WITH TOON TEENZ, WHICH IS THAT WOULD BE A DIFFERENT CLAIM.
 2              AND I'M -- I'M VERY CONCERNED ABOUT THE PROSPECT
 3   FOR JURY CONFUSION, IF THAT'S COMING OUT.  I MEAN, THE COURT
 4   OBVIOUSLY FOREWARNED MR. NOLAN, THAT THERE WOULD BE AN
 5   INSTRUCTION IF HE WERE TO RELY UPON THE STRUCK TESTIMONY.
 6              HOWEVER, I STILL THINK THAT -- AND -- AND PART OF
 7   WHAT I'D WANT TO DO IS SIMPLY MAKE SURE IS CLEAR IT UP, IS
 8   THAT, IN THE EVENT THAT MGA STARTS TRYING TO SAY THAT
 9   SOMEHOW THAT SHOULD HAVE PUT MATTEL ON NOTICE, IN OTHER
10   WORDS, THAT IT HAD ANOTHER CLAIM, THAT THAT IS SOMETHING
11   THAT THAT'S EXACTLY WHY WE HAVE SUGGESTED THIS OTHER JURY
12   INSTRUCTION, TO MAKE IT PERFECTLY CLEAR TO THE JURY THAT
13   THEY CAN'T RELY ON THAT.
14              IF WE COULD HAVE BROUGHT ANOTHER CLAIM, THAT IS
15   IRRELEVANT TO STATUTE OF LIMITATIONS.
16              THE COURT:  I'LL SPEAK TO THIS AT FOUR O'CLOCK TO
17   TRY TO MAKE IT CLEAR.  I WANT TO THINK ABOUT THIS MYSELF.
18              MR. ZELLER:  THANK YOU.
19              THE COURT:  MR. PROCTOR, IF YOU WOULD, THE VERDICT
20   FORM.
21              MR. PROCTOR:  THANK YOU, JUDGE.
22              THE COURT:  AND AS YOU HEARD, I -- I TENTATIVELY
23   AGREE WITH MGA'S APPROACH THAT THERE NEEDS TO BE -- I HAVE
24   KIND OF A TWO-EXTREME APPROACH AS ONE IS BREAKING DOWN ALL
25   THE VARIOUS PRODUCTS.  THE OTHER IS A ONE-LINE QUESTION:
                                                         7977
```

```
 1  HAS THERE BEEN AN INFRINGEMENT?
 2          I'M CONCERNED THAT -- WITH THAT KIND OF SIMPLISTIC
 3  APPROACH.
 4          MR. PROCTOR:  RIGHT.
 5          THE COURT:  I COULD VERY WELL SEE A JURY FINDING
 6  SUBSTANTIAL SIMILARITY WITH RESPECT TO CERTAIN DOLLS OR
 7  CLASSES OF DOLLS AND -- AND NOT FINDING IT WITH RESPECT TO
 8  OTHERS.
 9          MR. PROCTOR:  SURE, BUT THEIR -- THEIR DAMAGES
10  AWARD WILL REFLECT THAT.  I MEAN, THERE ARE -- THIS
11  FUNDAMENTAL ISSUE, THERE -- YOU KNOW, I HAVE SMALLER
12  COMMENTS ON OTHER ASPECTS OF THE -- THE FORM, BUT THIS IS
13  THE MAJOR ISSUE, I THINK.
14          THE COURT:  AND I UNDERSTAND THAT RESPONSE.  BUT
15  WHY -- WHAT IS THE DOWNSIDE OF HAVING THE JURY ALSO IDENTIFY
16  EXACTLY WHAT IT IS THAT THEY'VE HAVE FOUND?  I MEAN, THAT'S
17  GOING TO BE VERY HELPFUL TO THE COURT WITH RESPECT TO
18  TAILORING INJUNCTIVE RELIEF.
19          MR. PROCTOR:  THERE ARE -- THERE ARE TWO MAJOR
20  PROBLEMS THAT I -- THAT I SEE.  THE FIRST ONE IS NOT EVERY
21  INFRINGING PRODUCT IS IN EVIDENCE.  YOU KNOW, WE'VE GOT --
22  WE'VE GOT THE TOY STORE UPSTAIRS, YOU KNOW, AND THE JURY WAS
23  TAKEN TO SEE THE STUFF, BUT ---
24          THE COURT:  AND THAT'S ALL IN EVIDENCE.
25          MR. PROCTOR:  THAT'S -- THAT'S ALL IN EVIDENCE,
```

7978

```
 1   BUT THAT IS -- AND THIS IS A ROUGH APPROXIMATION.  I DON'T
 2   KNOW.
 3          IT -- IT -- LESS THAN HALF OF THE ALLEGEDLY
 4   INFRINGING PRODUCTS ARE IN EVIDENCE.  AND YOU WILL RECALL --
 5   OR YOU MAY RECALL, THERE IS A STIPULATION WHICH WAS REACHED.
 6   WE TRIED TO GET ALL THE PRODUCTS IN DISCOVERY.  MGA SAID NO.
 7   AND ONE THING THAT MGA SAID WAS WE WILL GIVE YOU A
 8   REPRESENTATIVE SAMPLE.
 9          AND BASED ON THAT, THERE IS A STIPULATION WHICH
10   WAS REACHED, WHICH WAS READ INTO THE RECORD ABOUT TWO WEEKS
11   AGO, WHICH SAID THE PRODUCTS THAT ARE THERE ARE
12   REPRESENTATIVE OF THE OTHER PRODUCTS, BUT NOT ALL THE
13   PRODUCTS ARE IN EVIDENCE.  AND SO LISTING PRODUCTS IS --
14          THE COURT:  AND -- AND THE COURT WILL CERTAINLY
15   ACCEPT THAT FOR PURPOSES OF HAVING IT TAILORED, IF IT IS
16   CALLED UPON TO DO SO IN THE INJUNCTIVE RELIEF.  I STILL
17   WONDER WHY IS IT NOT A GOOD IDEA TO DO EXACTLY WHAT WE DID
18   IN THE FIRST PHASE AND HAVE THEM TELL US WHAT IS AND WHAT IS
19   NOT, OF THIS REPRESENTATIVE SAMPLE, INFRINGING?
20          MR. PROCTOR:  THE -- THE SECOND MAIN PROBLEM WITH
21   IT IS -- I MEAN, NUMBER ONE, LISTING ALL THE PRODUCTS THAT
22   ARE UP THERE WOULD BE -- I MEAN, YOU'RE TALKING ABOUT A LIST
23   THAT IS FAR GREATER THAN WHAT'S LISTED HERE.
24          THE COURT:  I THINK -- I THINK THE -- THE -- MGA
25   TOOK A REASONABLE STAB, AND I WOULD CERTAINLY BE WILLING TO
```

7979

1  ENTERTAIN ANY RESPONSES OR CLARIFICATIONS OF -- OF GROUPING
2  CERTAIN TYPES OF PRODUCTS TOGETHER.
3       I MEAN, I -- I AGREE, HAVING 900-AND-SOME
4  QUESTIONS IS PROBABLY A LITTLE OVER -- OVERBROAD.  BUT --
5  BUT WE HAVE A -- YOU KNOW, A REASONABLE ATTEMPT AT MAKING IT
6  A MANAGEABLE AMOUNT BASED ON THE SUBMISSION FROM MGA.
7       MR. PROCTOR:  RIGHT.
8       WELL, I MEAN, THE -- WHAT -- WHAT I'VE ADDRESSED
9  THUS FAR IS WHAT I WOULD REFER TO AS, YOU KNOW, SORT OF A
10 PRAGMATIC PROBLEM.  THERE IS A -- THERE IS A THEORETICAL
11 PROBLEM WITH -- WITH THIS APPROACH AS WELL, AND THAT IS
12 INDIRECT PROFITS.
13       OUR CLAIM IS -- WE HAVE -- WE HAVE -- WE HAVE TWO
14 CLAIMS, IN EFFECT, TWO CLAIMS FOR DAMAGES.  WE CLAIM
15 DAMAGES, YOU KNOW, DIRECT PROFITS FROM THE INFRINGING WORKS.
16 AND WE CLAIM INDIRECT PROFITS FROM WORKS WHICH ARE NOT
17 INFRINGING.  THOSE ARE DISTINCT AND SEPARATE, BUT THEY ALSO
18 OVERLAP.
19       SOME WORKS, FOR EXAMPLE, ARE DIRECTLY INFRINGING
20 BECAUSE THEY HAVE ON THE PACKAGING IMAGES WHICH WE CLAIM ARE
21 INFRINGING BECAUSE -- YOU KNOW, FOR EXAMPLE, THE HERO POSE,
22 THEY REPLICATE THE HERO POSE.
23       BUT ALSO WE ARE SEEKING INDIRECT PROFITS FOR THE
24 PROFITS FROM THOSE WORKS WHETHER OR NOT THE -- YOU KNOW,
25 WE'RE NOT CONTENDING THE HELMET LOOKS LIKE THE DOLL.  AND WE

7980

```
 1   MAY CONTEND THAT THE HELMET IS INFRINGING IF IT HAS AN IMAGE
 2   ON IT, DIRECTLY INFRINGING.  BUT EVEN IF IT'S NOT DIRECTLY
 3   INFRINGING, WE'RE ENTITLED TO INDIRECT PROFITS FROM IT.
 4           THE COURT:  AND THAT CAN BE ADDRESSED IN THE
 5   DAMAGES QUESTIONS.  NO QUESTION ABOUT THAT.
 6           MR. PROCTOR:  I MEAN, IT'S NOT ADDRESSED AT ALL IN
 7   MGA'S FORMS.  INDIRECT PROFITS IS --
 8           THE COURT:  I -- I UNDERSTAND.  INDIRECT PROFITS
 9   ARE GOING TO BE ADDRESSED.  BUT -- BUT THAT'S EASIER TO
10   ADDRESS WITH AN INDIRECT PROFITS QUESTION, AND WE CAN STILL
11   HAVE THE JURY MAKE THE FINDINGS ON WHAT'S INFRINGING.
12           MR. PROCTOR:  I SUPPOSE THERE COULD BE SOME WAY TO
13   GROUP -- COME UP WITH SOME CATEGORIES, NOT SPECIFIC
14   PRODUCTS, BUT CATEGORIES OF PRODUCTS TO MAKE A DETERMINATION
15   ABOUT EXACTLY WHAT IS DIRECTLY INFRINGING AND WHAT IS NOT.
16           I DON'T REALLY SEE THE FRUITFULNESS OF IT IN THE
17   SENSE THAT IT'S NOT GOING TO AFFECT DAMAGES BECAUSE YOU'VE
18   GOT THE INDIRECT PROFITS THEORIES AS TO THE SAME WORKS,
19   WHICH ARE ALSO ALLEGEDLY DIRECTLY INFRINGING.  AND SO YOU
20   HAVE THIS OVERLAP, WHICH IS NOT EASY TO SEPARATE OUT IN ANY
21   WAY.
22           AND THE DAMAGES NUMBER IS GOING TO REFLECT THE
23   OVERALL AWARD ONE WAY OR THE OTHER.  YOU'RE GOING TO BE ABLE
24   TO DISCERN FROM THE DAMAGES AWARD WHAT THE JURY FINDS.  SO
25   THE JURY WILL MAKE A FINDING AND MAKE A DAMAGES AWARD BASED
```

7981

```
 1   ON THAT.
 2              THE ONLY FINDING THAT'S LEGALLY REQUIRED IS THE
 3   FINDING OF COPYRIGHT INFRINGEMENT.  MAYBE THERE'S SOME WAY
 4   TO DO IT WITH SOME GROUPED CATEGORIES.  BUT GIVEN THE
 5   PROBLEMS OF THE -- THE INDIRECT DAMAGES INTERPLAY WITH WORKS
 6   WHICH ARE ALSO DIRECTLY INFRINGING, AND THE PROBLEMS OF
 7   HAVING ONLY -- BECAUSE THE SAME WORK IS DIRECTLY INFRINGING
 8   IN PART BECAUSE, IF FOR EXAMPLE, THE IMAGE ON IT, BUT
 9   ALSO -- BUT ALSO WE'RE SEEKING INDIRECT PROFITS ON IT --
10   WE'RE SEEKING INDIRECT PROFITS ON A -- ON A INDIRECT PROFITS
11   THEORY, A CAUSATION THEORY.  AND COUPLED WITH THE PROBLEMS
12   OF THE LACK OF EVIDENCE IN THE SENSE THAT NOT ALL THE
13   ALLEGEDLY INFRINGING PRODUCTS HAVE BEEN SEEN BY THE JURY.
14              THEN, WHEN YOU START GROUPING IT OUT, THAT
15   SOMEHOW, SOMEWHERE ALONG THE LINE, THE JURY IS GOING TO HAVE
16   TO -- I MEAN, SAY YOU HAVE A CATEGORY AND YOU GET FINDINGS
17   YEA AS TO SOME CATEGORIES, NAY AS TO OTHER CATEGORIES.  THE
18   STIPULATION WHICH WAS READ SIMPLY SAID THE PRODUCTS THAT ARE
19   IN EVIDENCE ARE REPRESENTATIVE.
20              I THINK SEPARATING IT OUT IN THAT WAY COULD CREATE
21   ALL SORTS OF PROBLEMS DEPENDING ON WHAT COMES DOWN.
22              THE COURT:  WELL, THE WAY IT'S BEEN SEPARATED OUT
23   BY MGA IS YOU HAVE THE FIRST GENERATION OF BRATZ FASHION
24   DOLLS, THE LATER FASHION BRATZ DOLLS, AND THEN OTHER
25   PRODUCTS LINES.  SO THERE'S THREE BROAD CATEGORIES.
```

7982

1  WE HAVE REPRESENTATIVE PRODUCTS WITHIN EACH -- I'M
2  NOT GOING TO DO THE SUGGESTION OF THEN -- YOU KNOW, HAVE THE
3  DAMAGE FOLLOW IMMEDIATELY UNDER FOR, YOU KNOW, WHAT IS THE
4  INFRINGEMENT DAMAGE BECAUSE THAT DOES VITIATE THE INDIRECT
5  PROFITS.  DAMAGES WILL BE DEALT WITH SEPARATELY, AND WE CAN
6  CERTAINLY ADDRESS THE INDIRECT PROFIT LINE OF ANALYSIS.
7  BUT IT GIVES THE COURT A CERTAIN DEGREE OF
8  CONFIDENCE THAT THE JURY IS DOING WHAT THE JURY SHOULD DO IN
9  TERMS OF THE EXTRINSIC/INTRINSIC TEST BY THEM MAKING
10 PARTICULAR FINDINGS THAT AT LEAST THESE PARTICULAR LINES
11 ARE -- ARE -- AND THEY'VE ACTUALLY CONSIDERED THE ACTUAL
12 PRODUCTS.
13 AND PART OF THIS IS ALSO JUST A -- I -- I DON'T
14 JUST WANT TO THROW IT IN THE BLACK BOX AND HAVE A RESULT
15 COME OUT.  I WANT TO KNOW AND I WANT TO HAVE CONFIDENCE THAT
16 THE JURY IS DOING -- I MEAN, THESE ARE COMPLICATED
17 INSTRUCTIONS ABOUT EXTRINSIC AND INTRINSIC TESTS AND LOOKING
18 AT THE ELEMENTS.  AND WHILE I HAVE EVERY CONFIDENCE THAT --
19 AND I'M TRYING TO SET THIS UP SO THAT THEY HAVE ACCESS TO
20 THE PRODUCTS, I -- I REALLY WANT THEM TO ENGAGE IN THESE
21 TESTS AND ACTUALLY LOOK AT THE PRODUCTS.
22 AND, TO A CERTAIN EXTENT, THIS IS A WAY TO KIND OF
23 FORCE THE JURY TO DO JUST THAT, WHERE THEY HAVE TO CHECK YES
24 OR NO.
25 AND -- AND YOU'RE CORRECT, AT THE END OF THE DAY,

7983

```
 1   GIVEN THE COURT'S INSTRUCTIONS ON DERIVATIVE WORKS, GIVEN
 2   THE COURT'S INSTRUCTIONS ON INTERMEDIATE WORKS, GIVEN THE
 3   COURT'S INSTRUCTIONS ON INDIRECT PROFITS, THAT JUST BECAUSE
 4   THE JURY STRIKES NO TO A PARTICULAR PRODUCT AND SAYS THERE'S
 5   NOT A DIRECT INFRINGEMENT THERE, THAT THEY MAY OR MAY NOT
 6   INCLUDE THAT IN THE DAMAGES, AND THEY MAY OR MAY NOT BE
 7   ENTITLED TO INCLUDE THAT IN THE DAMAGES.
 8            BUT -- THAT THEY CAN DO, BUT AT LEAST I WILL KNOW
 9   THAT THEY CONSIDERED ALL OF THESE PRODUCTS.
10            MR. PROCTOR:  SURE.
11            THE COURT:  AND THERE'S A VALUE IN THAT.
12            MR. PROCTOR:  I -- I THINK I UNDERSTAND --
13   UNDERSTAND THE COURT'S CONCERNS.  I THINK THERE IS A -- A
14   GRAVE RISK OF JUROR CONFUSION IN ASKING THEM TO COME OUT AND
15   LINE UP WITH EXACTLY WHAT THEY'RE FINDING IS DIRECTLY
16   INFRINGING AND THEN HAVE SOME SEPARATE DETERMINATION AS TO
17   INDIRECT PROFITS WHICH THEY HAVE TO WALK THROUGH ON THE
18   VERDICT FORM.
19            THERE'S A RISK OF JUROR CONFUSION, AND THERE'S
20   POTENTIALLY -- AND I DON'T -- I'M -- I'M NOT PRETENDING TO
21   KNOW EXACTLY WHAT IT IS OR TO BE ABLE TO -- TO PREDICT
22   EXACTLY WHAT IT IS, BUT I THINK THERE IS A RISK OF A VERDICT
23   WHICH WOULD POTENTIALLY BE -- BE ATTACKABLE AS INCONSISTENT
24   IF -- IF DONE THIS WAY BECAUSE YOU'RE GOING TO GET -- YOU
25   KNOW, WE DON'T KNOW WHAT WE'RE GOING TO GET BACK, AND YOU
```

7984

```
 1   COULD GET BACK SOMETHING WHICH -- SAY WE GET BACK A -- A
 2   FINDING OF -- OF DIRECT INFRINGEMENT AS TO SOME AND NO
 3   DIRECT INFRINGEMENT AS TO SOME.  WHAT EXACTLY DOES THAT TELL
 4   YOU ABOUT WHAT THE JURY IS FINDING AS TO THE OTHER WORKS NOT
 5   IN EVIDENCE WHICH THESE ARE REPRESENTATIVE OF?  IT'S NOT
 6   EXACTLY CLEAR.
 7           THEN YOU HAVE A SEPARATE NUMBER BASED ON INDIRECT
 8   PROFITS WHICH ISN'T GOING TO BE, PRESUMABLY, SPECIFIED AS
 9   INDIRECT PROFITS.  THE DAMAGES NUMBERS IS JUST GOING TO BE
10   THE DAMAGES NUMBER --
11           THE COURT:  SO -- SO YOU DON'T EVEN WANT THE
12   SPLITTING UP OF DIRECT AND INDIRECT PROFITS?
13           MR. PROCTOR:  ABSOLUTELY NOT.  I MEAN, OUR DAMAGES
14   PRESENTATION -- I THINK BOTH SIDES' DAMAGES PRESENTATION HAS
15   BEEN NOT SPLIT UP IN THAT WAY.
16           IT'S -- YOU KNOW, IT'S PROFITS, AND THEN THERE'S
17   APPORTIONMENT DISCUSSION.  BUT IT'S NOT -- THERE'S NO
18   SEPARATION IN THE PRESENTATION OF EVIDENCE BETWEEN DIRECT
19   PROFITS AND INDIRECT PROFITS.
20           IN A CASE OF LIKE THIS WHERE YOU HAVE THIS MANY
21   PRODUCTS AND SOMEWHERE IN THE RANGE OF A THIRD OF THEM ARE
22   IN EVIDENCE THAT THE JURY CAN SEE, SEPARATING IT OUT IN THIS
23   WAY IS -- IS CONFUSING AND, I THINK, POTENTIALLY DANGEROUS
24   AFTER THE FACT.
25           THE COURT:  I'LL HEAR FROM MGA ON THIS ISSUE.
```

7985

```
 1
 2                    C E R T I F I C A T I O N

 3          I HEREBY CERTIFY THAT I AM A DULY APPOINTED,
    QUALIFIED AND ACTING CONTRACT COURT REPORTER FOR THE
 4  UNITED STATES DISTRICT COURT; THAT THE FOREGOING IS A TRUE
    AND CORRECT TRANSCRIPT OF THE PROCEEDINGS TAKEN IN THE
 5  AFOREMENTIONED CAUSE ON AUGUST 18, 2008; THAT SAID
    TRANSCRIPT IS A TRUE AND CORRECT TRANSCRIPTION OF MY
 6  STENOGRAPHIC NOTES; AND THAT THE FORMAT USED HEREIN COMPLIES
    WITH THE RULES AND REQUIREMENTS OF THE UNITED STATES
 7  JUDICIAL CONFERENCE.

 8

 9          DATED AUGUST 19, 2008, AT RIVERSIDE, CALIFORNIA.

10
11
12                       _____
                         KYUNG LEE-GREEN, CSR NO. 12655
13                            FEDERAL CONTRACT REPORTER
14
15
...
25
                                                          8042
```