QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 090378)
johnquinn@quinnemanuel.com
Michael T. Zeller (Bar No. 196417)
(michaelzeller@quinnemanuel.com)
Jon D. Corey (Bar No. 185066)
(joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

CARTER BRYANT, an individual,

Plaintiff,

vs.

MATTEL, INC., a Delaware corporation,

Defendant.

AND CONSOLIDATED ACTIONS

CASE NO. CV 04-9049 SGL (RNBx)

Consolidated with
Case No. CV 04-09059 and
Case No. CV 05-02727

MATTEL, INC.'S REPLY IN SUPPORT OF MOTION FOR PRECLUSIVE RELIEF OR, IN THE ALTERNATIVE, ACCESS TO ACTIVE FILES ON THE LARIAN HARD DRIVES

[Declaration of Marshall M. Searcy III filed concurrently]

Date: August 10, 2009
Time: 10:00 a.m.
Crtrm.: 1

**Phase 2**
Discovery Cut-off: Dec. 10, 2009
Pre-trial Conference: Mar. 1, 2010
Trial Date: Mar. 23, 2010

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .......... 1

ARGUMENT .......... 2

I. MGA SHOULD NOT BE ALLOWED TO CRITICIZE MATTEL'S EXPERT FOR FAILING TO REVIEW DOCUMENTS THAT MGA HAS REFUSED TO PRODUCE .......... 2

A. MGA's Expert Relied on the Unproduced Contents of Active Files to Conduct Its Analysis .......... 3

B. Under Rule 37, MGA May Not Rely On Evidence It Has Refused to Produce .......... 4

C. MGA Is Judicially Estopped from Arguing that Mattel Should Have Examined Active Files .......... 5

II. ALTERNATIVELY, MATTEL SHOULD BE PERMITTED TO CONDUCT THE SAME ANALYSIS MGA'S EXPERT PREVIOUSLY CONDUCTED .......... 8

A. Mattel's Request For Alternative Relief Is Not Untimely .......... 8

B. The Discovery Master's Factual Conclusions Are Clearly Erroneous .......... 9

C. None of the Purported Concerns Raised by MGA Are Implicated By Analysis, as Opposed to Production, of the Full Contents of the Hard Drives .......... 10

CONCLUSION .......... 12

# TABLE OF AUTHORITIES

**Page**

**Cases**

Disimone v. Browner, 121 F.3d 1262 (9th Cir. 1997) ....................7

Nationwide Transport Finance v. Cass Info. Sys., Inc., 523 F.3d 1051 (9th Cir. 2008) ....................5

New Hampshire v. Maine, 532 U.S. 742 (2001) ....................7, 8

United States v. Lummi Indian Tribe, 235 F.3d 443 (9th Cir. 2000) ....................7

**Statutes**

Fed. R. Civ. P. 72(a) ....................8

Fed. R. Civ. P. 26 ....................4

Fed. R. Civ. P. 26(a)(2) ....................4

Fed. R. Civ. P. 37(b) ....................2, 5

## Preliminary Statement

MGA fails to address the basic points in Mattel's motion. MGA tells the Court that it did not really criticize Mattel's expert for failing to look at active user files--which it successfully urged are irrelevant to a spoliation analysis--but instead criticized Mattel's expert for failing to use other tests that would have shown what happened to files deleted from Isaac Larian's computer. A review of MGA's expert's testimony and report shows, however, that this assertion is untrue. MGA's expert admitted that other tests did not give him the results that he wanted, so he reviewed Mr. Larian's active user files. Based on review of these files, he then challenged Mattel's expert's conclusions, even though Mattel's expert had no access to the active files.

Thus, the issue here is a simple one. Under Rule 37, MGA should not be allowed to use documents--such as active user files--to criticize Mattel's expert if it has not produced those files for inspection. Indeed, if the active user files are irrelevant, as MGA claims, then it will not suffer any prejudice if its expert cannot rely on these files.

Moreover, despite MGA's obfuscations, its positions on active users files are inconsistent. On the one hand, MGA contends that, by their nature, the content of active user files will not reveal the files that Larian has deleted. On the other, MGA's expert contends that Mattel's expert cannot really know what Larian has deleted unless he checks those deletions against the content of active files. Judicial estoppel and basic fairness dictate that MGA should not be able to advocate such inconsistencies.

Alternatively, if the Court does not preclude MGA from relying upon the content of active user files, it should allow Mattel's expert to access those files when conducting his own analysis. MGA offers no reason why its expert should access materials that Mattel's expert cannot and that Mattel has sought. Instead, its primary response is that Mattel's request is supposedly untimely. But MGA is

incorrect. The Court stayed discovery in this case effective on the same day that the Discovery Master issued the order requiring that Larian provide hard drives for supplemental inspection. After the stay was lifted, Mattel timely filed its motion.

Accordingly, because basic fairness dictates that MGA's expert should not be able to criticize Mattel's expert for failing to look at information that MGA has blocked him from seeing, Mattel's motion should be granted in its entirety.

## Argument

### I. MGA SHOULD NOT BE ALLOWED TO CRITICIZE MATTEL'S EXPERT FOR FAILING TO REVIEW DOCUMENTS THAT MGA HAS REFUSED TO PRODUCE

MGA argues that Rule 37(b) does not apply here because MGA has produced all of the materials ordered by the Court. In fact, MGA was ordered to produce the hard drives within 45 days of Order No. 34 and, by its own admission, has failed to do so.[1] Even as of today, MGA has not produced the hard drives, in indisputable violation of Phase 2 Discovery Matter Order No. 34. More importantly, however, MGA's argument fails to respond to the substance of Mattel's Motion. If allowed, MGA's expert will continue to rely on materials that neither Mattel nor its expert may see, and MGA's expert will use these materials to MGA's strategic advantage. Rule 37, as well as principles of fairness dictate that neither MGA nor its expert may rely on evidence that it has failed or refused to produce.

---

[1] Letter from Theresa Sutton to Marshall Searcy, dated July 31, 2009, attached as Exh. 2 to the Declaration of Marshall M. Searcy III in Support of Mattel, Inc.'s Reply in Support of Motion for Preclusive Relief or, in the Alternative, Access to Active Files on the Larian Hard Drives ("Searcy Reply Dec.").

### A. MGA's Expert Relied on the Unproduced Contents of Active Files to Conduct Its Analysis

In opposing Mattel's motion, MGA claims that Mattel "misunderstands" its criticisms of Mattel's expert.[2] MGA asserts that "MGA's expert...challenged Mr. Pavan not because he failed to review the *content* of any active files, but because he failed to perform a valid procedure that rested in no way on access to the content of the active files...."[3] The expert discovery taken in this case, however, reveals that MGA is misstating its position.

First, MGA contends that its expert criticized Mattel merely for failing to run a "hash" analysis, saying that with such an analysis Mattel's consultant could have determined if deleted files were present in other, active files without actually reviewing the content of the active files.[4] In fact, as MGA's own expert testified, searching hash values by itself would have been totally inadequate to cross check deleted files against active files. According to MGA's expert, many of the files Mattel identified as deleted didn't even have hash values "because the file listed would have been deleted and overwritten, in which case you can't have a hash value."[5] MGA's expert further testified that "certain types of files [can] produce differing hash values, even if you have...near identical content."[6]

Next, MGA suggests that Mattel's expert should have run a "file name search." But MGA's expert admitted that such a search is of limited usefulness.

---

[2] MGA Parties' Opposition to Mattel, Inc.'s Motion for Preclusive Relief or, in the Alternative, Access to Active Files on the Larian Hard Drives ("Opp."), at 8.

[3] Opp. at 11:20-23.

[4] Opp. at 7:4-6 (emphasis in original).

[5] July 3, 2008 Deposition Transcript of Samuel Rubin ("Rubin Depo Tr."), Searcy Reply Dec., Exh. 1 at 64:25-65:1.

[6] Because of these deficiencies, MGA's expert estimated that only about half of the files supposedly active in other locations were identified using hash analysis. Rubin Depo Tr., Searcy Reply Dec., Exh. 1 at 65:8-10.

According to MGA's expert, this method is particularly unreliable because two files can easily have the same name, but different content.[7]

Indeed, because MGA's own expert was dissatisfied with the results of the hash searches and the file name searches, he looked at the actual contents of active files. "***We looked at content...because the hash value and the file name searches weren't turning up results.***"[8] MGA's expert later testified again that "we looked for the file name, a hash value, and then, in some instances, the content,"[9] and then yet again "we search for them in the manner I described earlier, by hash value, by file name, and lastly, by content."[10]

Thus, despite what MGA would have the Court believe, its expert did review active user files, and later criticized Mattel's expert for not looking at those same files. This situation is manifestly unfair.

### B. Under Rule 37, MGA May Not Rely On Evidence It Has Refused to Produce

MGA's arguments here show precisely why the relief Mattel seeks is necessary. Under Rule 37, MGA should not be allowed to rely on evidence that it refuses to produce.

MGA attempts to distinguish Mattel's cases on this basic point, arguing that they all involve violations of court orders. These attempts are unavailing. Requiring an order as a prerequisite to preclusive relief under Rule 37 would defeat the mandatory disclosure requirements for expert testimony under Rule 26. Courts thus, for example, routinely preclude the use of expert evidence not adequately disclosed under Rule 26(a)(2), without requiring violation of an order.

---

7 Rubin Depo. Tr., Searcy Reply Dec., Exh. 1 at 63:12-15.

8 Rubin Depo. Tr., Searcy Reply Dec., Exh. 1 at 64:5-8.

9 Rubin Depo Tr., Searcy Reply Dec., Exh. 1 at 65:11-13.

10 Rubin Depo Tr., Searcy Reply Dec., Exh. 1 at 113:12-14.

MGA tries to distinguish Kern River Gas Transmission Co. v. 6.17 Acres of Land, More or Less, In Salt Lake County, Utah, by stating that Rule 37 applied because a party failed to comply with court-ordered deadlines.[11] Actually, the court precluded defendant's use of an expert report because the defendant did not submit a complete report in violation of Rule 26(a)(2). 156 Fed. Appx. 96, 102 (10th Cir. 2005). Similarly, in Nationwide Transport Finance v. Cass Info. Sys., Inc., the court held that an expert was properly precluded from testifying about hold harmless agreements where he failed to discuss them in his report. 523 F.3d 1051, 1062 (9th Cir. 2008).

Because MGA has refused to produce active files on Larian's hard drives, Mattel has been unable to test the reliability, accuracy and veracity of the claims MGA has based on the contents of those files. Allowing MGA to make claims based on material it has not produced, and to which Mattel has no access despite its efforts to obtain it, would subject Mattel to unfair prejudice. On the other hand, as discussed below, MGA has urged repeatedly that active user files are irrelevant to determining whether Mr. Larian has deleted files from hard drives. Accordingly, MGA would not suffer any prejudice from being precluded from relying on those files in criticizing Mattel's expert. Thus, use of these files should be precluded under Rule 37(b).

### C. MGA Is Judicially Estopped from Arguing that Mattel Should Have Examined Active Files

In addition to preventing jury confusion and avoiding the unfair surprise and prejudice stemming from MGA's use of undisclosed information, the relief Mattel seeks is also appropriate in light of MGA's own successful arguments that active user files are not pertinent to a spoliation analysis. In obtaining an order

---

[11] Opp. at 10.

from the Discovery Master barring Mattel from analyzing active files, MGA argued that [REDACTED][12] Even now, MGA continues to claim that active files are unrelated to deletion analysis. In its Opposition, MGA urges--as it did successfully to the Discovery Master-- that "the *content* of user-generated active files is irrelevant to Mattel's assessment of whether Mr. Larian improperly deleted electronic files from his hard drives."[13] It further argues that judicial estoppel is not appropriate because this position is not inconsistent with the positions it has taken concerning the adequacy of Mattel's consultant's review of Larian's hard drives.[14]

MGA's argument is disingenuous. As discussed above, MGA's expert admitted performing an analysis of active files, which specifically included a comparison of the contents of active and deleted files. In his report, MGA's expert criticized Mattel's expert for [REDACTED][15] Specifically, [REDACTED][16] However, in contradiction to its representation to the Discovery Master that Mattel need not examine active files to conduct an analysis of deletion, MGA's expert admitted that comparing the contents of active files was an integral part of

---

[12] MGA's Opposition to Mattel, Inc.'s Motion to Compel Production of Hard Drives from Computers Used by Isaac Larian after February 27, 2008, attached as Exh. 17 to the Declaration of Marshall M. Searcy III in Support of Mattel, Inc.'s Motion for Preclusive Relief or, in the Alternative, Access to Active Files on the Larian Hard Drives ("Searcy Dec."), at 15:25-26.

[13] Opp. at 11:15-17.

[14] Opp. at 11:10-11 ("MGA has taken no inconsistent position to Mattel's disadvantage....").

[15] Report on Larian Media Analysis ("MGA Report"), dated July 1, 2008, Searcy Dec., Exh. 2 at 2.

identifying the 397 files it contended Mattel should have found active on the hard drives.[17] These are not consistent positions, thus making judicial estoppel appropriate. New Hampshire v. Maine, 532 U.S. 742, 750-751 (2001) (judicial estoppel is appropriate where a party gains an unfair advantage by taking a position "clearly inconsistent" with a position it was previously successful in asserting).

Further, if MGA is once again allowed to argue that Mattel's expert's analysis is flawed--based on MGA's expert's review of files that Mattel's own expert is not allowed to see--Mattel will suffer unfair prejudice. Because of the limitations of the protocol set by the Discovery Master, Mattel would not have a way to contest the reliability, accuracy or veracity of MGA's criticisms. To prevent further unfair advantage to MGA and unfair prejudice to Mattel, MGA should be estopped from using active files, or Mattel's failure to examine them, as a basis for attacking or answering the findings of Mattel's expert.

Additionally, MGA is incorrect that Mattel is estopped by the prior protocol in this case.[18] Mattel opposed the limitations imposed on its expert's inspection,[19] and only acceded to them because the inspection was set to occur shortly before the Phase 1 trial. Nowhere does MGA even claim that Mattel took

---

[16] MGA Report, Searcy Dec., Exh. 2 at 2.

[17] Rubin Depo. Tr., Searcy Reply Dec., Exh. 1 at 64:5-8 ("We looked at content…because the hash value and the file name searches weren't turning up results.").

[18] MGA cites only two cases in support of its argument that judicial estoppel applies to Mattel, both of which are inapposite. MGA quotes from Disimone v. Browner, 121 F.3d 1262 (9th Cir. 1997), and from United States v. Lummi Indian Tribe, 235 F.3d 443 (9th Cir. 2000), but these quotes were all drawn from discussions of the "law of the case" doctrine. The term "judicial estoppel" does not even appear in either of these cases.

[19] [redacted] Deposition of Christopher Pavan, dated June 26, 2008, Searcy Dec., Exh. 9 at 23:13-24:22.

inconsistent positions before the Court. But even if MGA were correct that Mattel has taken inconsistent positions, which it has not, Mattel has certainly not gained any advantage by agreeing that it would not access active files in the previous inspection. On the contrary, Mattel ultimately suffered disadvantage and prejudice as a result of its agreement and of MGA's expert's subsequent, unfair criticisms. New Hampshire v. Maine, 532 U.S. at 750-751 (decision to invoke judicial estoppel is informed, in part, by whether the party to be estopped would gain an unfair advantage). MGA's argument that Mattel should be precluded from seeking access to active files is only an attempt to obscure MGA's own inconsistent positions and misconduct.

## II. ALTERNATIVELY, MATTEL SHOULD BE PERMITTED TO CONDUCT THE SAME ANALYSIS MGA'S EXPERT PREVIOUSLY CONDUCTED

### A. Mattel's Request For Alternative Relief Is Not Untimely

MGA argues that Mattel's request for alternative relied is a request that the Court overrule Order No. 34, and is untimely. This argument is incorrect. The Discovery Master issued Order No. 34 on May 18, immediately after which the Court stayed discovery from May 18 to June 12 and ordered that all discovery deadlines would be extended accordingly.[20] Due to the intervening weekend, the 10-day period for Mattel to object to Order No. 34 under Fed. R. Civ. P. 72(a) therefore began to run on June 15, and Mattel's Motion was timely submitted on June 24.

[20] Order Imposing Limited and Temporary Stay of Phase 2 and Requiring Mandatory Settlement Conference, dated May 21, 2009, Searcy Dec., Exh. 13 at 13-14.

**B. The Discovery Master's Factual Conclusions Are Clearly Erroneous**

In denying Mattel's request for access to active files, the Discovery Master concluded that examination of active files is not related to "the inspection permitted by the Court relating to *deleted files*."[21] As evidenced by MGA's rebuttal report and to the testimony of MGA's expert, this ruling is clearly erroneous. MGA's own analysis of deletion activity included an inspection of active files, which MGA's expert described as so: "we search for [active files] in the manner I described earlier, by hash value, by file name, and lastly, by content."[22]

Moreover, the Discovery Master's conclusion that analysis of active files was not within the scope of the Court's February 27, 2008 Order is also clearly erroneous. That Order permits Mattel the right to inspect "any and all information on [the Larian Hard Drives]" to determine:

> (a) whether . . . any information was deleted, destroyed, written over, lost, exported, moved, spoliated or otherwise rendered inaccessible or unreadable; . . . (d) whether . . . any information deleted, destroyed, written over, lost, exported, moved, spoliated or otherwise rendered inaccessible or unreadable may be recovered; and (e) to recover any such information, in whole or in part.[23]

As the testimony of MGA's own expert makes clear, the "any and all information" that should be inspected as part of a proper analysis of deletion activity

---

[21] Id. at 10:6-7.

[22] Rubin Depo Tr., Searcy Dec., Exh .__ at 113:12-14.

[23] February 27, 2008 Order, Searcy Decl., Exh. 6, at 3.

includes the contents of active files. "We looked at content...because the hash value and the file name searches weren't turning up results."[24]

It is also clearly erroneous that there has been no showing that active files are relevant to Phase 2 issues.[25] MGA's expert has made it quite clear that active files, and particularly the contents of active files, are relevant to a proper and thorough analysis of deletion activity. An analysis of deletion activity is plainly relevant to Mattel's Phase 2 counterclaims. As the Court recognized in issuing its February 27, 2008 Order, "[d]estruction of electronic evidence on hard drives is relevant to Mattel's claims, including specific predicate acts alleged in Mattel's RICO counterclaims."[26] In fact, as part of its RICO counterclaims, Mattel has specifically alleged that evidence on Larian's hard drives was intentionally destroyed.[27] Accordingly, it is clearly erroneous that there has been no showing that active files are relevant to Phase 2 issues.

**C. None of the Purported Concerns Raised by MGA Are Implicated By Analysis, as Opposed to Production, of the Full Contents of the Hard Drives**

The Discovery Master also concluded that (1) Mattel does not have the right to "rifle through Larian's electronic files looking for unspecified information," and (2) allowing Mattel access to active files would allow it to discovery attorney-

---

24 Rubin Depo. Tr., Searcy Reply Dec., Exh. 1 at 64:5-8.

25 See Phase 2 Discovery Matter Order No. 34 ("Order No. 34"), Searcy Dec., Exh. 12 at 10:12-13.

26 February 27, 2008 Order, Searcy Dec., Exh. 6, at 2:12-14.

27 Mattel, Inc.'s Third Amended Answer and Counterclaims, Searcy Dec., Exh. 15, at ¶ 141(c) (the MGA Parties and Larian "did corruptly alter, destroy, mutilate, or conceal more than one record, document, or other object, or attempted to do so, with the intent to impair the object's integrity or availability for use in an official proceeding, including this action, including without limitation by . . .
(footnote continued)

client privileged information.[28] Seeking to bolster this conclusion, MGA characterizes Mattel's request to analyze active files as a request for production of the contents of all active files on Larian's hard drives. This characterization is wrong.

First, Mattel is not seeking a production of files. Rather, Mattel has proposed a protocol that would allow its expert specific, targeted access to active files in order to conduct the same sort of analysis that MGA's expert previously claimed to have conducted. Such a protocol does not provide Mattel's expert unrestricted access to active files, but rather only such limited access as is necessary to conduct an analysis of deletion. Moreover, pursuant to such a protocol, Mattel will agree as it did previously to provide MGA with print outs of any user-generated files identified in the inspection so that MGA may identify privileged documents, if any, and prepare a privilege log.[29] Indeed, Mattel is sufficiently confident in this protocol that Mattel has itself proposed a nearly identical protocol for the inspection of its own computers by MGA.[30] Accordingly, MGA's purported concerns that Mattel's request would be invasive, extremely burdensome, and endanger the attorney-client privilege are unfounded,[31] and the Discovery Master's concerns about "rifling" electronic files are clearly erroneous.[32]

---

destroying electronic and other evidence, including by destroying evidence previously contained on . . . Isaac Larian's hard drives . . .").

[28] Order No. 34, Searcy Dec., Exh. 12, at 10-11.

[29] See Letter from John Corey to Lance Etcheverry, dated April 22, 2008, Searcy Dec., Exh. 8, at ¶¶ 5(c) and 6(c).

[30] See Letter from Marshall Searcy to Christopher Chaudoir, Searcy Reply Dec., Exh. 3.

[31] Opp. at 9:21-22.

[32] Order No. 34, Searcy Dec., Exh. 12 at 10:20-21.

**Conclusion**

For the foregoing reasons, Mattel respectfully requests that MGA be precluded from making any argument based on, or introducing any evidence of, Mattel's non-examination of active files. In the alternative, Mattel requests that it be allowed to view active files as part of its forensic analysis of Larian's hard drives.

DATED: August 3, 2009

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By /s/ Marshall M. Searcy III
Marshall M. Searcy III
Attorneys for Mattel, Inc.