QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 090378)
johnquinn@quinnemanuel.com
Michael T. Zeller (Bar No. 196417)
(michaelzeller@quinnemanuel.com)
Jon D. Corey (Bar No. 185066)
(joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with Case Nos. CV 04-9059 and CV 05-02727<br><br>**DISCOVERY MATTER**<br>[To Be Heard By Discovery Master Robert O'Brien]<br><br>DECLARATION OF MARSHALL M. SEARCY III IN SUPPORT OF MATTEL, INC.'S REPLY IN SUPPORT OF MOTION FOR PRECLUSIVE RELIEF OR, IN THE ALTERNATIVE, ACCESS TO ACTIVE FILES ON THE LARIAN HARD DRIVES<br><br>Date:  TBA<br>Time:  TBA<br>Place:  TBA<br><br>**Phase 2**<br>Discovery Cut-off:     Dec. 11, 2009<br>Pre-trial Conference:  Mar. 1, 2010<br>Trial Date:            Mar. 23, 2010 |

## DECLARATION OF MARSHALL M. SEARCY III

I, Marshall M. Searcy, III, declare as follows:

1. I am a member of the bar of the State of California and a partner at Quinn Emanuel Urquhart Oliver & Hedges, LLP, attorneys for Mattel, Inc. ("Mattel"). I make this declaration of personal, firsthand knowledge and, if called and sworn as a witness, I could and would testify competently thereto.

2. Attached hereto as Exhibit 1 is a true and correct copy of excerpts from the Deposition Transcript of Samuel Rubin, dated July 3, 2008.

3. Attached hereto as Exhibit 2 is a true and correct copy of a letter I received from Theresa Sutton, dated July 31, 2009.

4. Attached hereto as Exhibit 3 is a true and correct copy of an email I sent to Christopher Chaudoir attaching a proposed protocol for MGA's inspection of certain Mattel computers.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 3rd day of August 2009, at Los Angeles, California.

Marshall M. Searcy III

# EXHIBIT 1

CERTIFIED COPY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

CARTER BRYANT, AN INDIVIDUAL, )
)
        PLAINTIFF, )
) CASE NO.
V. ) CV 04-9049 SGL
) (RNBX)
MATTEL, INC., A DELAWARE ) [CONSOLIDATED WITH
CORPORATION, ) NO. 04-9059 AND CASE NO. 05-2727]
)
        DEFENDANTS. )
_____)
)
AND CONSOLIDATED ACTION (S). )
_____)

# DEPOSITION OF SAMUEL RUBIN

## JULY 3, 2008



REPORTED BY:
ANGELA DUPRE
CSR NO. 7804
JOB NO. 08AD049

COURT REPORTERS
515 S. Flower Street
Suite 3600
Los Angeles, California 90071
Office: (213) 955-0070
Fax: (213) 955-0077

EXHIBIT   1
PAGE   2

```
 1        A.    YES.
 2        Q.    -- CONTAINING USER-GENERATED CONTENT THAT
 3   WERE DELETED?
 4        A.    CORRECT.
 5        Q.    AND I THINK YOU SAID YOU HAD BEEN ABLE TO
 6   LOCATE 397 OF THOSE ELSEWHERE ON THE LARIAN MEDIA;
 7   IS THAT RIGHT?
 8        A.    THAT'S CORRECT.
 9        Q.    SO THERE ARE NINE OF THEM THAT ARE
10   MISSING?
11        MR. SHEK:  OBJECTION; VAGUE AND AMBIGUOUS.
12   BY MR. COREY:
13        Q.    NINE THAT YOU WEREN'T ABLE TO LOCATE?
14        A.    ON THE LARIAN.  CORRECT.
15        Q.    NOW, OF THOSE 397 -- OF THE 397 DELETED
16   FILES THAT YOU IDENTIFIED, HOW MANY OF THOSE ARE
17   HASH VALUE MATCHES?
18        A.    AS I SIT HERE RIGHT NOW, I DON'T KNOW
19   THAT NUMBER.
20        Q.    IS THAT IN YOUR REPORT ANYWHERE?
21        A.    IT'S NOT.
22        Q.    WHAT'S YOUR BEST ESTIMATE AS TO WHAT THAT
23   NUMBER WAS?
24        A.    I BELIEVE WELL OVER HALF OF THEM.
25        Q.    OKAY.  NOW, OF THOSE 397 FILES, HOW MANY
```

```
 1   OF THOSE ARE IDENTICAL WITH RESPECT TO THE CONTENT,
 2   THE VIEWABLE CONTENT?
 3        A.    WELL, CERTAINLY IT WOULD HAVE BEEN ALL OF
 4   THOSE THAT HAD HASH VALUE MATCHES, JUST BECAUSE BY
 5   THE NATURE HASH -- IF THE HASH VALUE IS IDENTICAL,
 6   THE CONTENT IS GOING TO BE IDENTICAL.  BEYOND THAT,
 7   I DON'T KNOW, BECAUSE CONTENT WAS USED MINIMALLY TO
 8   IDENTIFY THE FILES.
 9        Q.    HOW MANY OF THOSE ARE IDENTICAL, JUST BY
10   FILE NAME?
11        A.    I DON'T KNOW THE EXACT NUMBER.
12        Q.    BUT IF THEY'RE IDENTICAL JUST BY FILE
13   NAME, THEN CONTENT COULD HAVE CHANGED DRAMATICALLY
14   AND STILL HAVE THE SAME FILE NAME; CORRECT?
15        A.    THEORETICALLY, YES -- OR YES.
16        Q.    WELL, AS A MATTER OF FACT, DON'T YOU KNOW
17   FROM YOUR INSPECTION THAT THERE ARE FILES -- THERE
18   ARE ACTIVE FILES WITH THE SAME FILE NAMES WHERE THE
19   CONTENT IS NOT THE SAME AS THE DELETED FILES THAT
20   42 IDENTIFIED?  CORRECT?
21        A.    I DON'T KNOW SPECIFICALLY IN THAT
22   INSTANCE.  I'M NOT FAMILIAR, BUT IT'S CERTAINLY
23   POSSIBLE.
24        Q.    WELL, DID YOU LOOK?
25        A.    DID I LOOK FOR?
```

1  Q. TO SEE IF THE CONTENT FROM SOME OF THE
2  FILES THAT 42 IDENTIFIED AS BEING DELETED WAS THE
3  SAME AS THE CONTENT OF THE FILES THAT YOU CLAIM
4  EXIST ELSEWHERE ON THE LARIAN MEDIA?
5  A. WE LOOKED AT CONTENT ONLY WHEN WE HAD TO,
6  BECAUSE -- BECAUSE OTHER -- BECAUSE THE HASH VALUE
7  AND THE FILE NAME SEARCHES WEREN'T TURNING UP
8  RESULTS.
9  Q. SO, IS WHAT YOU'RE SAYING IS THAT IF THE
10 FILE NAME -- IF YOU HAD A FILE NAME MATCH, YOU
11 DIDN'T LOOK PAST THAT TO CONFIRM THAT THE FILES
12 WERE IDENTICAL?
13 A. I CAN GIVE YOU AN EXAMPLE OF WHAT I MEAN.
14 Q. ACTUALLY, LET'S DO THIS. JUST TELL ME
15 THE PROCESS THAT YOU AND YOUR TEAM WENT THROUGH TO
16 DETERMINE WHETHER THE FILES THAT 42 HAD IDENTIFIED
17 AS BEING DELETED EXISTED ELSEWHERE ON THE LARIAN
18 MEDIA.
19 A. SURE. FIRST AND FOREMOST, WE LOOKED FOR
20 THE HASH VALUES OF THE FILES ACTIVE IN OTHER
21 LOCATIONS ON THE LARIAN MEDIA. AND IF WE FOUND
22 THOSE, GREAT, THOSE WERE TAKEN CARE OF.
23      IN CERTAIN OTHER INSTANCES, WE DIDN'T
24 HAVE THE HASH VALUE OF THE FILE, BECAUSE THE FILE
25 LISTED WOULD HAVE BEEN DELETED AND OVERWRITTEN, IN

```
 1   WHICH CASE YOU CAN'T HAVE A HASH VALUE.  IN THOSE
 2   INSTANCES, WE HAD TO RELY ON AS MUCH INFORMATION AS
 3   WE HAD, WHICH WOULD HAVE BEEN, IN SOME CASES, A
 4   FULL PATH AND A FILE NAME, OR IN OTHER INSTANCES,
 5   JUST A FILE NAME.  SO FOR -- IN THOSE INSTANCES, WE
 6   LOOKED FOR A FILE NAME.
 7          IN THE OTHER INSTANCES, WHERE YOU HAVE
 8   CERTAIN TYPES OF FILES THAT WILL PRODUCE DIFFERING
 9   HASH VALUES, EVEN IF YOU HAVE IDENTICAL CON- -- OR
10   NEAR IDENTICAL CONTENT, WHICH COULD BE, A -- A DOT
11   MSG FILE, WHICH IS AN E-MAIL FILE, WE LOOKED FOR
12   THE FILE NAME, A HASH VALUE, AND THEN, IN SOME
13   INSTANCES, THE CONTENT.
14       Q.   BUT YOU'RE NOT OPINING HERE TODAY THAT OF
15   THE -- THAT THE 397 FILES THAT YOU IDENTIFIED AS
16   BEING IN EXISTENCE ON THE LARIAN HARD DRIVES ARE
17   IDENTICAL TO THE DELETED FILES THAT 42 HAD
18   IDENTIFIED?
19       A.   NOT ALL OF THEM ARE FORENSICALLY
20   IDENTICAL, IN THAT THEY HAVE THE SAME HASH VALUES,
21   AND IT WOULD BE -- WE CAN'T MAKE THAT
22   DETERMINATION, BECAUSE OF THE FACT THAT SOME OF
23   THEM ARE DELETED AND OVERWRITTEN.
24       Q.   AND AS A MATTER OF FACT, IF THE BEST
25   PRACTICES IN THIS CASE HAD BEEN FOLLOWED, AND AN
```

```
 1   IMAGE HAD BEEN MADE BEFORE THE ONES THAT WERE MADE
 2   AT YOUR OFFICES, THOSE FILES WOULD NOT HAVE BEEN
 3   OVERWRITTEN; IS THAT CORRECT?
 4        MR. SHEK:  OBJECTION; INCOMPLETE HYPOTHETICAL,
 5   CALLS FOR SPECULATION.
 6        THE DEPONENT:  COULD YOU CLARIFY THAT SCENARIO
 7   FOR ME.
 8   BY MR. COREY:
 9        Q.   WELL, LET'S DO IT THIS WAY:  DO YOU KNOW
10   WHEN -- DO YOU KNOW WHEN MR. LARIAN WAS INSTRUCTED
11   TO PRESERVE INFORMATION RELATED TO THIS MATTER?
12        MR. SHEK:  OBJECTION; ASSUMES FACTS.
13        THE DEPONENT:  I DON'T KNOW.
14        MR. COREY:  LET GET THIS MARKED AS 6033.
15             (DEFENDANT'S EXHIBIT NUMBER 6033
16             WAS MARKED FOR IDENTIFICATION
17             AND IS ATTACHED HERETO.)
18   BY MR. COREY:
19        Q.   MY FIRST QUESTION WILL BE WHETHER YOU'VE
20   SEEN THIS BEFORE.
21        A.   I HAVE NOT.
22        Q.   DO YOU RECALL SEEING THIS AS PART OF THE
23   REPORTS THAT 42 PREPARED?
24        A.   NO, I DON'T.
25        Q.   SO YOU WERE NEVER ADVISED -- YOU WERE
```

```
 1   REDUNDANT COPY ON THE COMPUTER.
 2   BY MR. COREY:
 3       Q.    OKAY.  DO YOU KNOW WHERE THE BACKUP
 4   FOR -- DO YOU KNOW WHERE THE BACKUP WAS BEING
 5   WRITTEN TO FOR ANY OF THE MEDIA -- ASSUMING THE
 6   INFORMATION ON THESE HARD DRIVES?
 7       A.    I DON'T.
 8       Q.    AND AS A MATTER OF FACT, ISN'T THE --
 9   ISN'T THE INFORMATION IN THE PATHS CONTAINING THE
10   VERITOSE NAME, THAT'S NOT, IN FACT, A COPY OF THE
11   FILE, THAT'S JUST A RECORD OF WHAT'S BEING BACKED
12   UP SOMEWHERE ELSE; IS THAT CORRECT?
13       A.    ACTUALLY, WE FOUND THAT IT WAS A COPY OF
14   THE FILE, AND THAT IT -- IT HAD THE SAME HASH VALUE
15   IN SOME INSTANCES, AND IT WAS A COPY OF THE FILE IN
16   THAT LOCATION.
17       Q.    DID YOU TAKE ANY STEPS TO DETERMINE
18   WHETHER ANY OF THE -- OR AS PART OF YOUR OPINION,
19   THAT SOME OF THE FILES THAT 43 -- OR 42 IDENTIFIED
20   AS BEING DELETED, WAS IN EXISTENCE ON MEDIA OTHER
21   THAN THE SEVEN HARD DRIVES?
22       A.    ONLY WHERE INDICATED IN THE CATEGORY
23   (STROZ) COLUMN, WHERE IT WILL SAY -- FOR EXAMPLE, I
24   BELIEVE IT SAYS, IDENTIFIED OR FILE FOUND BY MGA,
25   FOR EXAMPLE.  ON THE FIRST PAGE THERE'S ONE ACCESS
```

112

EXHIBIT 1
PAGE 8

```
 1   CODE, "13JULY2007.GIF," ABOUT HALFWAY DOWN THE
 2   PAGE.
 3           AND IT SAYS, IN THE CATEGORY COLUMN, "E.
 4   VILLETTE DATA, FILE IDENTIFIED BY MGA." THAT'S AN
 5   EXAMPLE OF A FILE THAT STROZ FRIEBERG DID NOT FIND
 6   ACTIVE ON THE LARIAN MEDIA.
 7      Q.   WHAT WAS THE PROCESS THAT EITHER STROZ OR
 8   MGA WENT THROUGH TO LOCATE THOSE TYPES OF FILES?
 9      MR. SHEK:   OBJECTION; CALLS FOR SPECULATION.
10      THE DEPONENT:   I DON'T KNOW EXACTLY THE PROCESS
11   THAT MGA WENT THROUGH TO IDENTIFY THEM.
12           WE SEARCH FOR THEM IN THE MANNER I
13   DESCRIBED EARLIER, BY HASH VALUE, BY FILE NAME, AND
14   LASTLY, BY CONTENT.
15   BY MR. COREY:
16      Q.   WE MAY BE MISSING EACH OTHER.
17           WHEN YOU SAY MGA IDENTIFIED IT, MGA
18   IDENTIFIED IT IN A LOCATION OTHER THAN ON THESE
19   SEVEN HARD DRIVES; RIGHT?
20      A.   CORRECT.
21      Q.   AND WAS STROZ INVOLVED AT ALL IN LOCATING
22   THAT INFORMATION, THAT FILE?
23      A.   THE FILES, AFTER THEY WERE IDENTIFIED BY
24   MGA, WERE PROVIDED TO STROZ.
25      Q.   THEY GAVE THE FILES TO YOU?
```

```
 1      A.     YES.
 2      Q.     AND YOU DON'T KNOW WHERE THOSE FILES CAME
 3   FROM?
 4      A.     I DON'T.
 5      Q.     YOU KNOW THEY CAME FROM MGA, YOU DON'T
 6   KNOW -- YOU DON'T KNOW WHAT SYSTEM AT MGA THEY CAME
 7   FROM?
 8      A.     CORRECT.
 9      Q.     DID ANYONE AT STROZ ACCESS MGA'S NETWORK
10   TO LOOK FOR FILES?
11      A.     IN THE CONTEXT OF THE LARIAN MEDIA, TWO
12   REPRESENTATIVES FROM STROZ WORKED WITH MGA I.T.
13   PERSONNEL.
14      Q.     TO DO WHAT?
15      A.     TO ASSIST IN -- WITH THE IDENTIFICATION
16   OF THE FILES.
17      Q.     WHO FROM STROZ DID THAT?
18      A.     SHAWN KERR AND ELIJAH PACIS.
19      Q.     WHO DID -- WHO IN THE MGA I.T. DEPARTMENT
20   DID THEY WORK WITH?
21      A.     I DON'T KNOW.
22      Q.     DID YOU HAVE A CONVERSATION WITH SHAWN OR
23   ELIJAH ABOUT WHAT THEY DID?
24      A.     I DID.
25      Q.     WHAT DID THEY SAY?
```

114

EXHIBIT 1
PAGE 10

```
1   STATE OF CALIFORNIA      )
                             )  SS.
2   COUNTY OF LOS ANGELES    )
3        I, ANGELA DUPRE, CERTIFIED SHORTHAND
4   REPORTER, CERTIFICATE NUMBER 7804, FOR THE STATE OF
5   CALIFORNIA, HEREBY CERTIFY:
6           THE FOREGOING PROCEEDINGS WERE TAKEN
7   BEFORE ME AT THE TIME AND PLACE THEREIN SET FORTH,
8   AT WHICH TIME THE DEPONENT WAS PLACED UNDER OATH BY
9   ME;
10          THE TESTIMONY OF THE DEPONENT AND ALL
11  OBJECTIONS MADE AT THE TIME OF THE EXAMINATION WERE
12  RECORDED STENOGRAPHICALLY BY ME AND WERE THEREAFTER
13  TRANSCRIBED;
14          THE FOREGOING TRANSCRIPT IS A TRUE AND
15  CORRECT TRANSCRIPT OF MY SHORTHAND NOTES SO TAKEN;
16          I FURTHER CERTIFY THAT I AM NEITHER
17  COUNSEL FOR NOR RELATED TO ANY PARTY TO SAID ACTION
18  NOR IN ANY WAY INTERESTED IN THE OUTCOME THEREOF.
19          IN WITNESS WHEREOF, I HAVE HEREUNTO
20  SUBSCRIBED MY NAME THIS 7th DAY OF July
21  2008.
22
23          _____
                    [signature: Angela Dupre]
24
25
```

143

EXHIBIT 1
PAGE 11

# EXHIBIT 2


**ORRICK**

ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 MARSH ROAD
MENLO PARK, CALIFORNIA 94025-1015

tel +1-650-614-7400
fax +1-650-614-7401

WWW.ORRICK.COM

July 31, 2009

Theresa A. Sutton
(650) 614-7307
tsutton@orrick.com

VIA ELECTRONIC MAIL: MARSHALLSEARCY@QUINNEMANUEL.COM
AND VIA FACSIMILE: (213) 443-3100

Marshall M. Searcy, III, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 19th Floor
Los Angeles, CA 90017

Re: <u>Carter Bryant v. Mattel, Inc. and consolidated actions</u>

Dear Marshall:

I am writing in response to your July 30, 2009, letter regarding the supplemental production of Mr. Larian's hard drives, pursuant to the Discovery Master's Order No. 34. Thank you for bringing this matter to our attention. We are working as quickly as possible to bring MGA and Mr. Larian into compliance with the Order, and expect to be able to make the responsive images available to Mattel's consultant for inspection no later than Friday, August 8, 2009, at the offices of Stroz Friedberg. The inspection shall be governed by Order No. 34, and the parties' April 22, 2008, stipulated protocol. Please confirm in writing that Mattel will adhere to the stipulated protocol.

If you have any questions, please call me.

Sincerely yours,

*[signature]*

Theresa A. Sutton

cc: Annette Hurst, Esq.
    Mike Zeller, Esq.

OHS West:260704402.1

EXHIBIT 2
PAGE 12

# EXHIBIT 3

| | |
|---|---|
| **From:** | Marshall Searcy |
| **Sent:** | Friday, July 31, 2009 7:11 PM |
| **To:** | cchaudoir@orrick.com |
| **Subject:** | MGA/Mattel |
| **Attachments:** | 2995434_Ltr re Protocol for Inspection of Hard Drives of Machado et al.DOC |

Dear Mr. Chaudoir:

I was surprised to see today that, attached to MGA's Motion to Compel Further Responses to MGA's First Set of Phase 2 Requests for Production, was a letter from you to me dated July 16. I never received this letter, and I note that on the face of the letter, it does not indicate that it was faxed or e-mailed to me. In any event, rather than quarrel about transmission or receipt of the letter, I attach our own proposed protocol for review of the former Mattel employees' hard drives. Please let me know your thoughts on this protocol, so that we may dispose of this issue, as well as others in MGA's unnecessary motion.

I look forward to hearing from you.

EXHIBIT 3
PAGE 13

8/3/2009

1.    On a mutually agreeable date, Mattel, Inc. ("Mattel") will make the following hard drives available for inspection by a consultant of MGA Entertainment, Inc.'s ("MGA") choosing:

- [LIST OF DRIVES]

2.    The hard drives and will be made available at 42 LLC, 2596 Mission Street, Suite 203, San Marino, CA 91108, ("42 LLC") which is a consultant identified by Mattel.

3.    Mattel's consultant shall make EnCase images of the hard drives available for inspection at a time that is mutually convenient for MGA's consultant so that it may perform an analysis of the images. Mattel's consultant shall also provide essentials for the analysis to occur, such as electrical power, lighting, reasonable work space, and internet access. MGA's consultant shall provide any hardware necessary for the inspection. MGA's consultant shall not, however, remove any such hardware from 42 LLC until after the inspection has been completed and 42 LLC has inspected the hardware to ensure no privileged or confidential information is inadvertently removed from 42 LLC's possession.

4.    Mattel's consultant shall be allowed to observe the inspection of the images of the hard drives. At no time shall Mattel's consultant interfere with or otherwise hinder the inspection and, if at any time, MGA's consultant is not present and a search or inspection is being run (such as overnight), then Mattel's consultant shall not take any steps to interfere with, affect, inspect, access or use the hardware or software running any search.

5.    In order to determine whether any information on the hard drives was moved, copied, exported or otherwise transferred from the hard drives, MGA's consultant may, under the supervision of 42 LLC, inspect the images of the hard drives in their entirety.

(a)    So that Mattel may identify privileged and/or confidential documents, if any, and prepare a privilege log and/or appropriately designate documents under the Protective Order, MGA's consultant shall export to drives in 42 LLC's possession all information it has inspected, identified or otherwise relied upon in conducting its analysis or reaching its conclusions (the "Information"). MGA's consultant shall not remove the Information from 42 LLC and shall not disclose any Information to the MGA Parties or their attorneys.

(b)    When MGA's consultant has concluded its inspection, 42 LLC will provide the Information to Mattel for review. Within thirty (30) days of the time that Mattel receives the Information, Mattel will provide MGA with all such Information, except for any such Information for which privilege is asserted. Mattel will also serve MGA with a privilege log identifying the Information, if any, withheld on privilege grounds.

(c)    Prior to disclosing the Information to MGA, Mattel will designate the Information, where appropriate, as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" as provided in Paragraph 2 of the Protective Order.

07975/2995434.2

EXHIBIT 3
PAGE 14

6.  The Parties agree that the actions described herein shall not constitute a waiver of any claim of attorney-client privilege or work product privilege with respect to (a) the information on any hard drive, or (b) the conduct, notes, searches, search terms, communications or any other act performed by any consultant or attorney in connection with these hard drives.