QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
  865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>           Plaintiff,<br><br>      vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>           Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with Case Nos. CV 04-09059 and CV 05-02727<br><br>**DISCOVERY MATTER**<br><br>**[To Be Heard By Discovery Master Robert O'Brien]**<br><br>[PUBLIC REDACTED] REPLY IN SUPPORT OF MATTEL, INC.'S MOTION TO ENFORCE PRIOR COURT ORDERS AND TO COMPEL RE: INTERROGATORY NOS. 68 AND 69 AND RFPS 75, 85, 95, 105, AND 115 OF MATTEL'S FIRST SET OF REQUESTS RE UNFAIR COMPETITION |

**CONFIDENTIAL --**

**ATTORNEY'S EYES ONLY**

**FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE**

**ORDER**

Hearing Date:  TBA
Time:          TBA
Place:         Arent Fox, LLP

**Phase 2**

Discovery Cut-off:      Dec. 11, 2009
Pre-trial Conference:   Mar. 1, 2010
Trial Date:             Mar. 23, 2010

07975/3035415.3

REPLY ISO MATTEL'S MOTION TO ENFORCE

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT ............................................................................................................ 1

I. DEFENDANTS' INTERROGATORY RESPONSES ARE WHOLLY DEFICIENT ................................................................................. 1

    A. Defendants Admit Their Responses Are Deficient................................ 1

    B. Defendants Impose Improper Limitations On the Discovery Master's Order .......................................................................... 2

II. THE DISCOVERY MASTER SHOULD COMPEL MGA TO SUPPLEMENT ITS RESPONSES TO MATTEL'S REQUESTS FOR PRODUCTION ............................................................................. 5

    A. MGA Concedes Its Production Is Incomplete ......................................... 5

    B. Mattel's Requests Seek Indirect Payments To Former Mattel Employees ................................................................................ 6

    C. MGA's Privilege Objections Are Without Merit .................................... 7

        1. MGA Has Waived All Objections To The Requests..................... 7

        2. Mattel's Requests Do Not Seek Privileged Information............... 9

    D. Mattel Has Not Conceded It Has The Information At Issue ................. 11

III. MGA'S OBJECTIONS SHOULD BE STRICKEN......................................... 11

IV. MATTEL ADEQUATELY MET AND CONFERRED .............................. 12

V. DEFENDANTS SHOULD BE SANCTIONED............................................. 13

CONCLUSION....................................................................................................... 13

# TABLE OF AUTHORITIES

**Page**

## Cases

ACMA USA, Inc. v. Surefil, LLC,
  2008 WL 2714422 (E.D.Va. July 7, 2008) ............................................................. 9

Calderon v. Presidio Valley Farmers Ass'n,
  863 F.2d 384 (5th Cir. 1989) ................................................................................. 8

Chapman v. Pacific Tel. and Tel. Co.,
  613 F.2d 193 (9th Cir. 1979) ................................................................................. 5

Clarke v. American Commerce Nat'l Bank,
  974 F.2d 127 (9th Cir. 1992) ............................................................................... 10

Convertino v. U.S. Dept. of Justice,
  565 F. Supp. 2d 10 (D.D.C. 2008) ........................................................................ 9

Grider v. Keystone Health Plan Central, Inc.,
  2007 WL 2874423 (E.D. Pa. Sep. 27, 2007) ........................................................ 9

Huber v. Marine Midland Bank,
  51 F.3d 5 (2d Cir. 1995) ........................................................................................ 5

Maness v. Meyers,
  419 U.S. 449 (1975) .............................................................................................. 5

Richmark Corp. v. Timber Falling Consultants,
  959 F.2d 1468 (9th Cir. 1992) .............................................................................. 8

United States v. Blackman,
  72 F.3d 1418 (9th Cir. 1995) ................................................................................ 9

W.E. Green v. Baca,
  219 F.R.D. 485 (C.D. Cal. 2003) ........................................................................ 10

**Preliminary Statement**

Defendants admit that, even assuming their arguments have any merit (and they do not), they are *still* in violation of both Discovery Master Orders, and will not supplement absent further Order. They concede their interrogatory responses fail to disclose legal fees paid on behalf of Mattel employees. They also concede that they are in violation of a separate Discovery Master Order because their document production fails to include documents referencing bonus payments to former Mattel employees disclosed in their interrogatory responses. The Discovery Master should enforce the prior Orders, order defendants to immediately comply with those Orders, and sanction MGA.

**Argument**

**I.   DEFENDANTS' INTERROGATORY RESPONSES ARE WHOLLY DEFICIENT**

**A.   Defendants Admit Their Responses Are Deficient**

Buried in a footnote, defendants admit that their responses to Interrogatories 68 and 69 are in violation of the Discovery Master's Order, and will remain so absent further Order. Defendants state, "MGA has since discovered that the information provided with respect to payment of fees omits such information paid on behalf of three individuals. MGA will provide this information once the Court determines the propriety of such a production in light of privilege issues." (Opp. at 9 n.5.)

It is not clear which three former employees they are referring to. But MGA does not dispute—or even address—Mattel's evidence that the responses are incomplete as to at least *eight* former Mattel employees as to whom their arguments regarding "ordinary compensation" do not apply, because they relate either to legal

fees or bonuses, both of which even MGA admits are not "ordinary compensation."[1] Thus, for example, MGA does not dispute that it paid legal fees for Carter Bryant, Veronica Marlow, and Margaret Leahy, and that those payments are not listed in Defendants' interrogatory responses.[2] MGA does not even address Mattel's evidence that it failed to provide information regarding ████████████ ████████████████████████████████████████████████████████ ██████████████████.[3]

Defendants' earlier statement that they were "fully compliant" with the Discovery Master's March 30, 2009 Order is thus indisputably false.[4] Nevertheless, as it touts elsewhere, MGA has no intention of abiding by the Order and supplementing its admittedly incomplete responses until further order of the Discovery Master. The Discovery Master should issue that Order, and sanction MGA for requiring it in the first place.

### B. Defendants Impose Improper Limitations On the Discovery Master's Order

Nor are those conceded deficiencies the only ones. Mattel identified numerous payments to former Mattel employees that MGA did not disclose in its responses. (See Motion at 8-11.) For example, MGA failed to list any royalty payments to Carter Bryant, or any of the non-salary payments to Veronica Marlow,

---

[1] See Supplemental Response of MGA Entertainment, Inc. to Interrogatory Nos. 68 and 69 Pursuant to Discovery Master's Order of March 31, 2009, dated June 15, 2009, attached as Exhibit 15 to the Declaration of Scott W. Watson filed July 22, 2009 ("Watson Dec."), at Response No. 68 (noting payment of legal fees), and Response No. 69 (noting bonus payments); Supplemental Response of Isaac Larian to Interrogatory Nos. 68 and 69 Pursuant to Discovery Master's Order of March 31, 2009, dated June 15, 2009, Watson Dec., Exh. 16.
[2] See Motion at 10.
[3] Motion at 6 n. 25.
[4] Letter from Amman Khan to Michael T. Zeller, dated June 29, 2009, Watson Dec., Exh. 19.

Margaret Leahy, Tina Tomiyama, Ana Cabrera, Maria Salazar, or Beatriz Morales.[5] In response, defendants argue that none of these payments need be listed on their responses because they are "ordinary compensation," which they argue was excluded by the Discovery Master's Order. (Opp. at 8.) But that phrase appears nowhere in the Order. Instead, the Order required "the MGA Parties to identify fully and separately each and every payment of money or other item of value that they have made or offered to pay to or on behalf of any former employee of Mattel since January 1, 1998 . . . excluding **ordinary salary and benefits** paid to such person **while an MGA employee** . . . ."[6]

As commonly known, salary is "fixed compensation paid regularly for services,"[7] and benefits are "a service (as health insurance) or right (as to take vacation time) provided by an employer in addition to wages or salary."[8] Under any definition, royalties to non-employees are not "ordinary salary and benefits." MGA does not explain how they could be. They are neither fixed, nor are they paid regularly for services. Rather they are variable payments allegedly based on Bratz profits. Indeed, Veronica Marlow, Ana Cabrera, and Beatriz Morales were *never* MGA employees.[9] They could not have been receiving "ordinary salary and benefits . . . while an MGA employee." And the payments to Maria Salazar were

---

[5] Motion at 9 nn. 38-45, 11.
[6] Phase 2 Discovery Matter Order No. 11, dated March 30, 2009, at 39:6-13, Watson Dec., Exh. 5 (emphasis added).
[7] See "salary", Merriam-Webster Online Dictionary, 2009, at http://www.merriam-webster.com/dictionary/salary.
[8] See "benefit", Merriam-Webster Online Dictionary, 2009, at http://www.merriam-webster.com/dictionary/benefits.
[9] See Excerpts from the Trial Transcript, dated June 24, 2008, at 3639:21-3640:12 (Ana Cabrera was a *Mattel* employee); 3669:23-3670:18 (same for Beatriz Morales), Watson Dec., Exh. 25; Further Excerpts from the Trial Transcript, dated June 24, 2008, at 3663:17-18 (Marlow was an independent contractor), attached as Exhibit 1 to the
(footnote continued)

made when she was, in fact, a *Mattel* employee.[10]  Similarly, MGA made payments to Margaret Leahy for her work on the Bratz sculpt in late 2000,[11] when she did not become an MGA employee until April of 2005.[12]  The payments to Tina Tomiyama were for not for work as an employee, but rather for testimony as an expert witness regarding privileged Mattel communications (for which she was ultimately excluded).[13]  None of these payments constitute salary or benefits that were paid while the persons involved were MGA employees.

Nor is it unreasonable to demand that defendants produce this information as ordered.  The evidence shows that payments MGA made to Veronica Marlow explicitly included money for payments she made to Mattel employees, under false names and social security numbers, for their work on Bratz.[14]  Other payments may on the surface appear to be for services, but may also be payment for theft of Mattel's trade secrets.  This is why "ordinary salary" was excluded by the prior Order, but lump-sum payments like bonuses and royalties were not.  Such payments may well provide evidence of commercial bribery.  Mattel has the right to investigate such claims.

In any case, if defendants believed they should not have had to provide this information, they were required to make this argument in opposition to the original motion or move for reconsideration of the Order.  But they were not free to

---

Supplemental Declaration of Scott L. Watson, filed concurrently herewith ("Supp. Watson Dec.").
[10]  See Excerpts from the Trial Transcript, dated June 24, 2008, at 3634:19-3634:25, Watson Dec., Exh. 25.
[11]  Excerpts from the Deposition of Margaret Leahy, dated December 12, 2007 at 158:3-14, Watson Dec., Exh. 22.
[12]  Further Excerpts from the Deposition of Margaret Leahy, dated December 12, 2007, at 178:24-179:2, Supp. Watson Dec., Exh. 2.
[13]  See Order dated April 8, 2008, Supp. Watson Dec., Exh. 3.
[14]  Further Excerpts from the Trial Transcript, dated June 24, 2008, at 3672:21-3673:21, Supp. Watson Dec., Exh. 1.

rewrite the Discovery Master's Order to permit them to improperly and secretly exclude "ordinary compensation." Indeed, the law is clear that Defendants cannot dispute or relitigate the propriety of the Discovery Master's prior Orders on this motion to enforce. The only issue is whether Defendants have complied with those Orders. See, e.g., Chapman v. Pacific Tel. and Tel. Co., 613 F.2d 193, 197 (9th Cir. 1979) ("An attorney who believes a court order is erroneous is not relieved of the duty to obey it."); Huber v. Marine Midland Bank, 51 F.3d 5, 8 (2d Cir. 1995) ("[A] contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed and thus become a retrial of the original controversy."); see also Maness v. Meyers, 419 U.S. 449, 458 (1975) ("If a person to whom a court directs an order believes that order is incorrect, the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal."). As they concede, Defendants have not.

## II. THE DISCOVERY MASTER SHOULD COMPEL MGA TO SUPPLEMENT ITS RESPONSES TO MATTEL'S REQUESTS FOR PRODUCTION

### A. MGA Concedes Its Production Is Incomplete

MGA concedes that its document production is incomplete, even aside from its arguments about legal fees (addressed below). As Mattel noted in its motion, MGA failed to produce documents reflecting **bonus payments** it identified in response to Interrogatory No. 69.[15]

Again in a footnote, MGA argues only that it should not have to supplement its production relating to bonus payments because Mattel did not expressly mention them in its meet and confer.[16] But Mattel is not "mov[ing] to compel . . . documents relating to bonus payments." Mattel seeks MGA's

---

[15] See Motion at 6-7 & n. 28; 15 & nn. 69-70.

compliance with an existing Order. That Order requires MGA to produce documents relating to *all* payments, direct or indirect, to the identified former Mattel employees. MGA's failure to produce documents relating to bonus payments and legal fees is merely *evidence* that it is in violation of that Order. It is by no means a list of the only documents MGA must produce.[17]

In short, MGA once again concedes that it has not produced all documents relating to payments to the former Mattel employees, but still does not agree to produce them. The prior Order should be enforced, and MGA should be sanctioned.

### B. Mattel's Requests Seek Indirect Payments To Former Mattel Employees

MGA argues that it has not failed to comply with respect to legal fees, because those are paid "on behalf" of former Mattel employees, and Mattel did not use that specific phrase in its Requests. Indeed, MGA goes so far as to claim that Mattel misquoted the Requests in an intent to mislead the Discovery Master. (Opp. at 7.) This is ironic, given *MGA's* failure to quote the Requests in their entirety *itself*.

Mattel's requests sought: "All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO compensation, money or any other item of value paid to [Machado, Trueba, Vargas,

---

[16] See Opp. at 5 n. 2.
[17] As discussed below, it is for this reason that MGA's meet-and-confer argument also fails. Mattel's meet and confer letter noted that MGA was in violation of the Discovery Master's Order, and asked when MGA would supplement its production. See Supp. Watson Dec., Exh. 4. Mattel need not cite to each and every deficiency of which it is aware in order to confirm that MGA is not abiding by its obligations, let alone ones belatedly conceded by MGA for the first time in its papers.

Brisbois or Brawer], ***whether directly or indirectly***, by YOU."[18]  The Requests thus specifically seek payments made "***indirectly***" to the former Mattel employees.  This includes any payments by MGA for the benefit of the former Mattel employees. The payments of legal fees—which would otherwise have to be paid by the employees—is clearly such a payment.

Once again the truth is in the footnotes; the only time MGA acknowledges that Mattel's Requests seek indirect payments is in note four, where it makes the strained, untenable argument that indirect payment must mean *only* that MGA paid a third party, who "then pays the identified individual."  (Opp. at 6 n.4.) According to MGA, a payment of a former Mattel employee's debts is not an indirect payment.  MGA provides no basis for finding the phrase is so limited.  An indirect payment is one which provides value to the former Mattel employee through anything other than a direct line.  Payment for attorney's fees is exactly such a payment.  MGA's argument that made "on behalf" of former Mattel employees are not "indirect" payments is evidence of the bad faith way in which MGA treats both Mattel's discovery and the Discovery Master's Orders to conceal plainly relevant—and compelled—discovery.

### C. MGA's Privilege Objections Are Without Merit

#### 1. MGA Has Waived All Objections To The Requests

MGA argues that the Requests seek privileged information.  It has wholly waived any such objections.  In response to Mattel's Requests, MGA raised only two objections:  That they (1) were irrelevant; and (2) sought disclosure of information that "would implicate the rights of third parties to protect private,

---

[18] See Mattel, Inc.'s First Set of Requests for Documents and Things Re Claims of Unfair Competition to MGA Entertainment, Inc., dated December 18, 2006, at Request Nos. 75, 85, 95, 105, and 115 (emphasis added), Watson Dec., Exh. 1.

confidential, proprietary or trade secret information."[19]  When Mattel moved to compel, it waived even those objections, and agreed to produce all responsive documents, and *was ordered to do so*.  See Order Granting in Part and Denying in Part Mattel's Motion to Compel Production of Documents By MGA; Denying Request for Monetary Sanctions, dated August 13, 2007, at 12, Watson Dec., Exh. 41 ("In its opposition brief, MGA agrees to produce documents responsive to Mattel's Request Nos. 65-117 and 119 . . . Mattel's motion is granted as to these requests.").

Having failed to raise these objections either in its original responses, or in opposing Mattel's motion to compel, it has unquestionably waived them.  See, e.g., Richmark Corp. v. Timber Falling Consultants, 959 F.2d 1468, 1473 (9th Cir. 1992) (party waived objections it failed to make in discovery responses or opposition to motion to compel); Calderon v. Presidio Valley Farmers Ass'n, 863 F.2d 384, 389 (5th Cir. 1989) (party waived claim it failed to raise in opposition to discovery motion).

In yet another footnote, MGA makes two arguments as to why it has not waived.  (Opp. at 6 n.3.)  First, MGA claims that it incorporated its general objections in response to the Requests, and those general objections included an objection based on attorney-client privilege.  As a matter of law, general objections are insufficient, and the Discovery Master has already so held in this case.  See Phase 2 Discovery Matter Order No. 17, dated April 14, 2009, at 20 ("This incorporation by reference of a list of general objections is insufficient to preserve an objection.") (citing ACMA USA, Inc. v. Surefil, LLC, 2008 WL 2714422, *2 (E.D.Va. July 7, 2008) (refusing to recognize general objections including an

---

[19]  MGA Entertainment, Inc.'s Response to Mattel, Inc.'s First Set of Requests for Documents and Things Re Claims of Unfair Competition, dated January 17, 2007, at Response Nos. 75, 85, 95, 105, and 115, Watson Dec., Exh. 40.

assertion of attorney-client privilege); Convertino v. U.S. Dept. of Justice, 565 F. Supp. 2d 10, 12-13 (D.D.C. 2008); Grider v. Keystone Health Plan Central, Inc., 2007 WL 2874423, *5-*6 (E.D. Pa. Sep. 27, 2007)).[20] In any case, even if this were sufficient to preserve MGA's objections at one point, MGA's failure to defend them on Mattel's motion to compel also waived. And if not waived, they were rejected when the Discovery Master ordered production of *all* responsive documents.[21]

MGA argues that "Mattel's newly expanded view of the RFPs . . . justifies MGA's current privilege objection." This claim fares no better. As discussed above, indirect payments are already explicitly sought by the Requests. There is no expansion here. Moreover, MGA cannot claim it was confused as to the scope of the Requests, as it also failed to object that the Requests are vague and ambiguous.

### 2. Mattel's Requests Do Not Seek Privileged Information

In any case, defendants' belated, make-weight excuse for its defiance of the Orders is meritless since the Requests do not seek privileged information. As repeatedly found by both the Court and the Discovery Master, the payments of legal fees is not privileged.[22] See also United States v. Blackman, 72 F.3d 1418, 1424 (9th Cir. 1995) ("client identity and the nature of the fee arrangement between attorney and client are not protected from disclosure by the attorney-client privilege"); Clarke v. American Commerce Nat'l Bank, 974 F.2d 127, 130 (9th Cir.

---

[20] Supp. Watson Dec., Exh. 5.
[21] Id.
[22] See Order Granting Mattel's Motion to Compel Production of Documents, dated January 25, 2007, at 11-12, Supp. Watson Dec., Exh. 6; Order Granting Mattel's Motion to Compel Production of Documents and Interrogatory Responses by MGA, dated May 15, 2007, at 10, Supp. Watson Dec., Exh. 7; Order Granting in Part and Denying in Part Mattel's Motion to Enforce the Court's Order of January 25, 2007, to Compel Production of Documents by Carter Bryant and for Sanctions, dated June 19, 2007, at 2-4, Supp.
(footnote continued)

1992) ("Our decisions have recognized that the identity of the client, the amount of the fee, the identification of payment by case file name, and the general purpose of the work performed are usually not protected from disclosure by the attorney-client privilege."). And even assuming some of the documents reflecting payment of legal fees were privileged for other reasons, that cannot excuse MGA's complete failure to produce redacted and non-privileged documents that were compelled. MGA has not produced any redacted documents, nor has it claimed that every responsive document is privileged. Indeed, IGWT produced exactly such a non-privileged document—that was not produced by MGA.[23] The law does not permit MGA to refuse discovery based on sweeping privilege claims. "A party may not make a blanket assertion of privilege in response to a discovery request." W.E. Green v. Baca, 219 F.R.D. 485, 491 (C.D. Cal. 2003) (collecting numerous cases). The prior Discovery Master also has so ruled in this case that such blanket privilege objections are impermissible.[24] Here, MGA has provided no explanation for its failure to produce non-privileged documents. Its privilege objections cannot justify its non-compliance.

MGA's reliance on the Discovery Master's Order No. 27 is misplaced. That Order denied a subpoena against Bingham McCutchen—a law firm—seeking

---

Watson Dec., Exh. 8; Order Re Motions Heard on June 11, 2007, dated June 27, 2007, at 33-34, Supp. Watson Dec., Exh. 9.

[23] See, e.g., IGWT 0051324 – IGWT 0052143 at IGWT 0051510, IGWT 0051920 (reflecting payments for Machado); IGWT 0051451, IGWT 0051861 (reflecting payments for Castilla), Watson Dec., Exh. 42.

[24] Order Re: Mattel's Motions To Compel Farhad Larian, Kaye Scholer and Stern & Goldberg to Produce Documents, dated January 25, 2008, at 13, Supp. Watson Dec., Exh. 10. The Discovery Master went on to state that even if there were a voluminous number of documents (which no one has showed here), such that a document-by-document log would be unduly burdensome, the disclosures must nonetheless provide sufficient information "to enable Mattel to assess the claims of privilege and work product protection as required by Rule 45, Fed.R.Civ.P." Id. at 14.

1  "[a]ll documents referring or relating to any fee agreement or fee arrangement"
2  between that firm and its own clients.  The Discovery Master ▇▇▇▇▇▇▇▇▇▇
3  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.
4  Unlike a law firm, MGA is no more likely to have a high proportion of privileged
5  documents (nor is it entitled to any more protection) than any other party.  It cannot
6  refuse to produce documents on that basis.  Furthermore, Judge Larson directed that
7  Order No. 27 be reconsidered.

8     **D.   Mattel Has Not Conceded It Has The Information At Issue**

9           MGA mistakenly asserts that "***Mattel admits that it already has this***
10 ***information*** [relating to the amount of fees paid by MGA]."  (Opp. at 7 (emphasis in
11 original)).  As discussed above, Mattel has certainly established that MGA's
12 interrogatory responses are deficient, and in violation of the Discovery Master's
13 Order.  Indeed, Mattel has established their deficiency through the equally deficient
14 production MGA has made.  There is no reason to believe that they fully list all
15 payments of attorney's fees, and Mattel has neither a complete list nor the amounts
16 and dates of such payments.  Also, as demonstrated by MGA's own admissions on
17 this motion, Mattel cannot rely on MGA's interrogatory responses to be a full and
18 complete statement of the payments it has made.  Nor is Mattel required to.  The
19 Discovery Master has already ordered these documents produced.  That Order
20 should be enforced, and MGA sanctioned.

21 **III.   MGA'S OBJECTIONS SHOULD BE STRICKEN**

22          Mattel noted in its motion that defendants continued to propound
23 objections that the Discovery Master had rejected.  In response, defendants claim
24 this was "a waste of paper" because they provided all information "*notwithstanding*
25 *any objections*."  (Opp. at 9-10 (emphasis in original).)  As demonstrated above,
26 defendants have not provided complete information.  If they are not relying on those
27 objections for their failure to comply, they should not have made them.  To ensure
28 that MGA does not attempt to hide behind such objections at a later date—as it has

1 already done with Mattel's document requests—it should be ordered to produce
2 supplemental responses without objections.

### IV. MATTEL ADEQUATELY MET AND CONFERRED

Finally, defendants' argument that Mattel did not adequately meet and confer is baseless. As to the interrogatories, Mattel wrote two letters, left a voicemail for counsel, and conferred by telephone regarding defendants' deficient responses. Defendants claim that this is insufficient because, while Mattel noted some of the former Mattel employees that were missing from the responses, Mattel did not provide them with each and every document that demonstrated the deficiencies. Mattel had no duty to do so, and defendants cite no authority supporting their contention. Indeed, if Mattel had done so, MGA would merely supplement as to those payments, and continue to withhold all information as to payments Mattel did *not* know about (and could not know about, because of MGA's deficient document production). Nor is the evidence submitted on Mattel's motion a complete listing of each and every deficiency in the responses. It is merely enough to establish that the responses *are* deficient. Mattel has no duty to provide defendants during a meet and confer with all the evidence it can marshal.

Similarly, defendants argue that Mattel did not adequately meet and confer as to the document requests. They claim that Mattel did not tell them that their document production was deficient as to both payments of legal fees *and* bonus payments. Defendants were under a duty to produce all documents responsive to the Requests, and Mattel pointed them to information showing they had failed to do so. It again did not have to provide defendants during the meet and confer with all of the evidence showing that they had violated a discovery Order in order to ask that they comply with their obligations. Notifying them of their deficiency, as Mattel repeatedly did here, was sufficient.

Defendants also argue that Mattel's meet-and-confer was improper because Mattel refused to discuss the issue as one of reciprocity. Mattel had no duty

to do so. Defendants were in violation of an Order, and attempted to deflect from their failures by making the issue one of "reciprocity," even though Mattel was under no similar duties. As shown above, the only issue here is whether defendants have complied with the Orders. They have not.

## V. DEFENDANTS SHOULD BE SANCTIONED

Defendants' Opposition demonstrates beyond doubt that, even if all their arguments were accepted (and they should not be), they would still be in violation of two Orders. Even worse, they have evidenced no intent to comply until ordered to do so. There can be no justification, let alone "substantial justification," for such conduct. Mattel has now had to file multiple motions, and wait over 18 months to receive discovery to which it is entitled. This conduct warrants sanctions.

## Conclusion

For the foregoing reasons, Mattel respectfully requests that the Discovery Master: (1) compel MGA and Larian to supplement their answers to Mattel's Interrogatory Nos. 68 and 69; (2) compel MGA to supplement its production of documents responsive to Request Nos. 75, 85, 95, 105, and 115 of Mattel, Inc.'s First Set of Requests for Documents and Things Re Claims of Unfair Competition to MGA Entertainment, Inc., dated December 18, 2006; (3) impose coercive sanctions; and (4) award monetary sanctions against MGA and Larian in the amount of $6,000, which represents a portion of the costs incurred by Mattel in bringing this motion.

DATED: August 3, 2009            QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By /s/ Scott L. Watson
Scott L. Watson
Attorneys for Mattel, Inc.