# EXHIBIT 1

3589



1        UNITED STATES DISTRICT COURT

2        CENTRAL DISTRICT OF CALIFORNIA

3            EASTERN DIVISION

4              - - -

5     HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6              - - -

7  MATTEL, INC.,                    )

8              PLAINTIFF,            )

9        VS.                        )    NO. CV 04-09049

10 MGA ENTERTAINMENT, INC., ET. AL.,  )

11            DEFENDANTS.            )    TRIAL DAY 17
                                      )    AFTERNOON SESSION
12 AND CONSOLIDATED ACTIONS,         )    PAGES 3589-3689

13

14

15     REPORTER'S TRANSCRIPT OF JURY TRIAL PROCEEDINGS

16            RIVERSIDE, CALIFORNIA

17          TUESDAY, JUNE 24, 2008

18              2:55 P.M.

19

20

21

22

23            THERESA A. LANZA, RPR, CSR
            FEDERAL OFFICIAL COURT REPORTER
24            3470 12TH STREET, RM. 134
            RIVERSIDE, CALIFORNIA  92501
25              951-274-0844
              WWW.THERESALANZA.COM

**CERTIFIED COPY**

1    APPEARANCES:

2

     ON BEHALF OF MATTEL, INC.:

3

                              QUINN EMANUEL
4                             BY:   JOHN QUINN
                                    JON COREY
5                                   MICHAEL T. ZELLER
                                    HARRY OLIVAR
6                                   TIMOTHY ALGER
                              865 S. FIGUEROA STREET,
7                             10TH FLOOR
                              LOS ANGELES, CALIFORNIA  90017
8

9

10   ON BEHALF OF MGA ENTERTAINMENT:

11                            SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
                              BY:   THOMAS J. NOLAN
12                                  JASON RUSSELL
                                    RAOUL SLOAN
13                                  LAUREN AGUIAR
                                    CARL ROTH
14                            300 SOUTH GRAND AVENUE
                              LOS ANGELES, CALIFORNIA  90071-3144
15                            213-687-5000

16

17   ON BEHALF OF THIRD-PARTY DEFENDANT PETER MARLOW:

18                            LAW OFFICE OF STEVEN M. GOLDSOBEL
                              BY:   STEVEN M. GOLDSOBEL
19                            1900 AVENUE OF THE STARS
                              SUITE 1800
20                            LOS ANGELES, CA  90067
                              310-552-4848
21

22

23

24

25

TUESDAY, JUNE 24, 2008 **EXHIBIT** _____/_____ TRIAL DAY 17, AFTERNOON SESSION

                   PAGE _____ <u>4</u>_____

3591

```
 1                          I N D E X

 2                                              PAGE

 3   DEFENSE CASE (CONTINUED) ........................   3592

 4   PLAINTIFF WITNESS................................   3619

 5

 6   DEFENSE
     WITNESS          DIRECT     CROSS     REDIRECT    RECROSS
 7   JACQUELINE PRINCE (VIA VIDEO DEPOSITION)

 8   BY MR. ZELLER    3592

 9

10   PLAINTIFF
     WITNESS          DIRECT     CROSS     REDIRECT    RECROSS
11   PETER MARLOW

12   BY MR. ZELLER    3619
     BY MS. AGUIAR               3658
13

14

15
             EXHIBITS          RECEIVED
16
              61               3618
17            62               3618
            5723 (PP. 1,2)     3632
18          10034              3678

19

20

21

22

23

24

25
```

TUESDAY, JUNE 24, 2008 EXHIBIT _____/_____ TRIAL DAY 17, AFTERNOON SESSION

PAGE _____5_____

| | |
|---|---|
| 1 | RIVERSIDE, CALIFORNIA; TUESDAY, JUNE 24, 2008; 2:55 P.M. |
| 2 | -OOO- |
| 3 | (WHEREUPON, JURORS ENTER COURTROOM.) |
| 4 | THE COURT:  GOOD AFTERNOON, MEMBERS OF THE JURY. |
| 5 | COUNSEL, ARE WE READY TO PROCEED? |
| 6 | MR. NOLAN:  WE ARE, YOUR HONOR. |
| 7 | THE COURT:  VERY WELL. |
| 8 | MR. NOLAN:  WE'LL RESUME WITH THE DEPOSITION PLAYING |
| 9 | OF JACQUELINE PRINCE. |
| 10 | (WHEREUPON, VIDEO DEPOSITION PLAYS; |
| 11 | EXCERPTS PROVIDED BY COUNSEL AS FOLLOWS: ) |
| 12 | Q.  WOULD YOU PLEASE TURN TO THE PAGE OF EXHIBIT 60. |
| 13 | THAT PERTAINS TO THE NOTARIZATION THAT YOU DID |
| 14 | FOR CARTER BRYANT. |
| 15 | YOU'LL SEE THAT THOSE ARE BASICALLY THE LAST TWO |
| 16 | PAGES OF THIS DOCUMENT THAT HAVE WRITTEN ENTRIES IN |
| 17 | YOUR JOURNAL. |
| 18 | A.  YES. |
| 19 | Q.  LET ME ASK FIRST WITH RESPECT TO THE ENTRIES |
| 20 | PERTAINING TO CARTER BRYANT'S DRAWINGS THAT YOU |
| 21 | NOTARIZED, IS ALL OF THAT YOUR HANDWRITING? |
| 22 | A.  YES. |
| 23 | Q.  AND I'M TALKING ABOUT ON BOTH OF THOSE PAGES, |
| 24 | EXCLUDING OF COURSE MR. BRYANT'S SIGNATURE. |
| 25 | A.  YES. |

02:55 (line 5)

02:55 (line 10)

| | |
|---|---|
| 1 | WHICH IS THAT ALSO, I MEAN, AND THIS GOES TO THE AGENCY POINT. |
| 2 | PART OF WHAT I DO WANT TO MAKE CLEAR THROUGH THIS EXAMINATION |
| 3 | IS THAT VERONICA MARLOW -- AND THIS IS KNOWN TO PETER MARLOW -- |
| 4 | MADE EFFORTS TO GET ALL THREE OF THEM JOBS THERE AT MGA. |
| 5 | THE COURT:  WHEN? |
| 6 | MR. ZELLER:  CERTAINLY AT SOME POINT PRIOR TO 2005. |
| 7 | AND WITH MARIA SALAZAR, WE KNOW IT WAS NO LATER THAN 2003. |
| 8 | THIS GOES, AGAIN, TO THE AGENCY RELATIONSHIP; THIS GOES TO |
| 9 | THEIR RELATIONSHIP BETWEEN MGA AND THE MARLOWS. |
| 10 | THE COURT:  YOU CAN EXPLORE THAT IN THE CONTEXT OF |
| 11 | WHAT WAS GOING ON IN 2000, COUNSEL.  I'M GOING TO HOLD YOU TO |
| 12 | THAT TIME PERIOD. |
| 13 | MS. AGUIAR:  I WANT TO RESERVE THE RIGHT TO STRIKE |
| 14 | THE TESTIMONY THAT HAS BEEN RELATED TO THIS MOST RECENT EXHIBIT |
| 15 | BECAUSE HE HAS NOT TIED UP THAT MGA EVER GOT THAT TIME SHEET. |
| 16 | THE COURT:  THIS IS THE -- WE'RE -- |
| 17 | MS. AGUIAR:  WE'RE ON THE TIME SHEET. |
| 18 | THE COURT:  IT DOESN'T NEED TO GO TO MGA.  I'M |
| 19 | ALLOWING INFERENCE ON THAT; SO I'LL OVERRULE THAT OBJECTION. |
| 20 | BUT I'M KEEPING THE 2003 STUFF OUT. |
| 21 | MR. ZELLER:  THANK YOU. |
| 22 | (WHEREUPON, SIDE-BAR PROCEEDINGS WERE CONCLUDED.) |
| 23 | BY MR. ZELLER: |
| 24 | Q   MR. MARLOW, MS. SALAZAR WAS NOT THE ONLY MATTEL EMPLOYEE |
| 25 | WHO WAS SECRETLY WORKING ON BRATZ, THE BRATZ CLOTHING, BACK IN |

03:54
03:54
03:54
03:54
03:55

```
 1    2000; IS THAT TRUE?
 2              MS. AGUIAR:   OBJECTION.   FOUNDATION; RELEVANCE; 403;
 3    ARGUMENTATIVE.
 4              THE COURT:   OVERRULED.
 5              YOU MAY ANSWER.                                          03:55
 6              THE WITNESS:   THERE WAS ANOTHER MATTEL EMPLOYEE
 7    WORKING ON BRATZ.
 8    BY MR. ZELLER:
 9    Q    ANA CABRERA WAS ANOTHER MATTEL EMPLOYEE WHO WAS WORKING ON
10    THE BRATZ PROJECT, WHILE A MATTEL EMPLOYEE, BACK IN 2000; IS      03:56
11    THAT RIGHT?
12    A    YES.
13    Q    AND SHE STARTED WORKING ON THE BRATZ PROJECT NO LATER THAN
14    THE NOVEMBER 2000 TIME PERIOD.
15    A    CORRECT.                                                     03:56
16    Q    AND IT MIGHT HAVE BEEN EARLIER; YOU CAN'T ACTUALLY EXCLUDE
17    THAT IT WAS A LITTLE EARLIER; RIGHT?
18    A    I THINK I CAN.
19    Q    I'M SORRY?
20    A    I CAN EXCLUDE THAT IT WAS EARLIER.                           03:56
21    Q    HOW LONG DID MS. CABRERA WORK ON THE BRATZ PROJECT?
22    A    UNTIL ABOUT JUNE OF 2005.
23    Q    THE WORK THAT MS. CABRERA DID ON BRATZ WHEN SHE WAS A
24    MATTEL EMPLOYEE WAS SAMPLE MAKING.
25    A    YES.                                                         03:56
```

TUESDAY, JUNE 24, 2008 EXHIBIT ____1____            TRIAL DAY 17, AFTERNOON SESSION

PAGE ____8____

1   Q     AND THE WORK THAT MS. CABRERA DID ON BRATZ WHEN SHE WAS A

2   MATTEL EMPLOYEE, SHE WAS PAID FOR THAT WORK.

3   A     YES.

4   Q     AND MGA REIMBURSED YOU AND VERONICA MARLOW FOR THOSE

5   PAYMENTS THAT WERE MADE TO HER FOR THAT WORK; IS THAT RIGHT?          03:56

6   A     PART OF IT, YES.

7   Q     AND THOSE WERE CHARGES YOU PASSED ON THROUGH INVOICES TO

8   MGA.

9   A     PARTIALLY.

10  Q     WHY DO YOU SAY PARTIALLY?                                       03:57

11  A     BECAUSE LATER ON, WE DIDN'T INVOICE SEPARATELY FOR

12  THIRD-PARTY SERVICES.

13  Q     IN ADDITION TO MS. SALAZAR AND MS. CABRERA, THERE WAS AT

14  LEAST ANOTHER MATTEL EMPLOYEE WHO AT SOME POINT WAS SECRETLY

15  WORKING ON BRATZ WHILE A MATTEL EMPLOYEE; IS THAT TRUE?              03:57

16              MS. AGUIAR:  OBJECTION.  RELEVANCE.

17              THE COURT:  OVERRULED ON RELEVANCE.

18              YOU'RE TALKING ABOUT THE 2000 TIME FRAME?

19              MS. AGUIAR:  NO, HE'S NOT.

20              MR. ZELLER:  2001, YOUR HONOR.                           03:57

21              THE COURT:  SUSTAINED.

22              THANK YOU, COUNSEL.

23  BY MR. ZELLER:

24  Q     TO YOUR KNOWLEDGE, DURING THE TIME THAT MS. SALAZAR WAS A

25  MATTEL EMPLOYEE, MATTEL WAS NOT AWARE THAT MS. SALAZAR WAS           03:57

| | |
|---|---|
| 1 | WORKING ON BRATZ AS A MATTEL EMPLOYEE; IS THAT CORRECT? |
| 2 |      MS. AGUIAR:  OBJECTION.  FOUNDATION; CALLS FOR |
| 3 | SPECULATION. |
| 4 |      THE COURT:  LAY A FOUNDATION, COUNSEL. |
| 5 | BY MR. ZELLER: |
| 6 | Q    DID YOU EVER TELL MATTEL THAT MS. SALAZAR WAS WORKING ON |
| 7 | BRATZ WHEN SHE WAS A MATTEL EMPLOYEE? |
| 8 | A    NO. |
| 9 | Q    TO YOUR KNOWLEDGE, DID ANYONE? |
| 10 | A    NO. |
| 11 | Q    DID YOU EVER TELL MATTEL THAT MS. CABRERA WAS WORKING ON |
| 12 | BRATZ WHILE A MATTEL EMPLOYEE? |
| 13 | A    NO. |
| 14 | Q    TO YOUR KNOWLEDGE, DID ANYONE ELSE? |
| 15 | A    NO. |
| 16 | Q    AT SOME POINT, ISN'T IT TRUE THAT IN THESE RECORDS THAT |
| 17 | YOU CREATED FOR WORK THAT MS. SALAZAR DID AND ANA CABRERA DID, |
| 18 | YOU USED FAKE NAMES FOR THEM, FOR THEIR WORK? |
| 19 |      MS. AGUIAR:  OBJECTION.  RELEVANCE; 403. |
| 20 |      THE COURT:  OVERRULED. |
| 21 |      THE WITNESS:  I'M SORRY.  REPEAT THE QUESTION. |
| 22 | BY MR. ZELLER: |
| 23 | Q    AT SOME POINT IN CONNECTION WITH THE RECORDS THAT YOU |
| 24 | CREATED FOR THE WORK THAT MARIA SALAZAR AND ANA CABRERA DID ON |
| 25 | THE BRATZ PROJECT WHILE THEY WERE STILL EMPLOYED BY MATTEL, |

Time stamps (right margin): 03:58, 03:58, 03:58, 03:59, 03:59

```
1              THE COURT:  COUNSEL?

2              MS. AGUIAR:  YOUR HONOR, I THINK THAT YOU RULED AS TO

3    THAT E-MAIL A COUPLE OF DIFFERENT TIMES.  AND IT CAME IN

4    INITIALLY, REDACTED, FOR ISAAC LARIAN'S CREDIBILITY.

5              THE COURT:  I UNDERSTAND.  ON THIS VERY ISSUE,          04:52

6    THOUGH --

7              MS. AGUIAR:  MR. LARIAN SAID -- HIS TESTIMONY -- HE'S

8    TRYING TO CREATE A FACT ISSUE WHERE THERE ISN'T ONE.

9    MR. LARIAN SAID HE DIDN'T KNOW.

10             THE COURT:  THEY DON'T HAVE TO ACCEPT MR. LARIAN'S      04:52

11   TESTIMONY.

12             MS. AGUIAR:  WELL, NOW THIS WITNESS HAS SAID HE

13   DIDN'T TELL ANYONE.

14             THE COURT:  RIGHT.  BUT IT'S CONFLICTED.  THAT'S THE

15   WHOLE QUESTION IS 'DID HE TELL SOMEBODY?'  AND THEIR ARGUMENT     04:53

16   IS THAT E-MAIL DOES -- BOY, THAT DEPOSITION TRANSCRIPT, I

17   ALMOST FELL OUT OF MY SEAT WHEN I SAW IT.  THIS WITNESS IS THE

18   ONE THAT LINKED THAT E-MAIL IN THAT DEPOSITION TO A STATEMENT.

19             YOU'VE GOT TO LAY A FOUNDATION FOR IT.

20             DO YOU UNDERSTAND WHAT I MEAN BY THAT?                 04:53

21             MR. ZELLER:  I BELIEVE I DO.

22             THE COURT:  LAY A FOUNDATION WITH THIS WITNESS THAT

23   HE UNDERSTANDS THAT E-MAIL TO BE TALKING ABOUT MATTEL.  AND

24   YOU'VE GOT TO DO THAT WITHOUT EVER DISCLOSING THAT TO THE JURY

25   IN ADVANCE OF IT.                                                04:53
```

```
 1              I'LL BE LOOKING FOR FOUNDATIONAL OBJECTIONS.
 2              MR. ZELLER:  SO THE COURT KNOWS, WHAT I WOULD --
 3   MAYBE IF I START WITH THE EMPLOYMENT, BECAUSE THAT MAY BE
 4   THAT --
 5              THE COURT:  YOU CAN START WHEREVER YOU WANT.  I'M      04:53
 6   JUST SAYING, BEFORE YOU GET TO THAT E-MAIL --
 7              MR. ZELLER:  INTO THE 2005 ONE.
 8              THE COURT -- IT'S GOT TO BE THIS WITNESS'S
 9   UNDERSTANDING THAT THAT'S WHAT HE WAS COMMUNICATING TO MGA.
10              MR. ZELLER:  AND THIS, OF COURSE, GOES TO            04:53
11   CREDIBILITY.  SHE ASKED THOSE QUESTIONS.
12              THE COURT:  I UNDERSTAND WHAT IT GOES TO, COUNSEL.
13              MR. ZELLER:  THANK YOU.
14              (WHEREUPON, SIDE-BAR PROCEEDINGS WERE CONCLUDED.)
15              THE COURT:  YOU MAY PROCEED, COUNSEL.                04:54
16   BY MR. ZELLER:
17   Q    YOU SAID, IN RESPONSE TO MGA'S COUNSEL'S QUESTIONS, IN
18   VARIOUS WAYS, THAT NEITHER YOU NOR YOUR WIFE EVER TOLD OR EVER
19   INFORMED MGA, IN WORDS OR SUBSTANCE, THAT THESE OTHER MATTEL
20   EMPLOYEES WERE SECRETLY WORKING ON BRATZ WHILE MATTEL          04:54
21   EMPLOYEES; IS THAT CORRECT?
22   A    CORRECT.
23   Q    SO THE RECORD IS CLEAR HERE AS WELL, THERE WAS ACTUALLY A
24   THIRD MATTEL EMPLOYEE WHO WAS SECRETLY WORKING ON BRATZ WHILE A
25   MATTEL EMPLOYEE AND WORKING ON THE BRATZ CLOTHING; IS THAT     04:54
```

3670

```
 1   TRUE?
 2   A    CORRECT.
 3   Q    AND THAT WAS BEATRIZ MORALES?
 4   A    CORRECT.
 5   Q    SO WE HAVE THE TIME FRAMES CLEARLY IN MIND, MARIA SALAZAR,    04:54
 6   WHILE A MATTEL EMPLOYEE, WORKED ON THE BRATZ CLOTHING FROM AT
 7   LEAST THE 2000 AND 2001 TIME PERIOD; CORRECT?
 8   A    CORRECT.
 9   Q    ANA CABRERA DID THAT AS WELL, FROM THE 2000 TO 2005 TIME
10   PERIOD; IS THAT CORRECT?                                          04:55
11   A    CORRECT.
12   Q    AND BEATRIZ MORALES DID THAT FROM AT LEAST THE 2001
13   THROUGH THE 2005 TIME PERIOD; CORRECT?
14   A    CORRECT.
15   Q    SO THERE WERE AT LEAST ANOTHER THREE MATTEL EMPLOYEES WHO    04:55
16   WORKED FOR YEARS, SECRETLY, ON BRATZ AND WERE PAID BY YOU AND
17   YOUR WIFE AND REIMBURSED BY MGA TO WORK ON BRATZ; IS THAT TRUE?
18   A    CORRECT.
19   Q    IF I UNDERSTAND IT, THIS WENT ON FOR YEARS AND YEARS, WITH
20   ALL THREE OF THEM, WITHOUT ANY INKLING, ANY HINT, TO MGA AS TO    04:55
21   WHAT WAS GOING ON; IS THAT RIGHT?
22   A    CORRECT.
23   Q    NOW, ISN'T IT TRUE THAT MARIA SALAZAR, IN FACT, BECAME
24   EMPLOYED BY MGA BACK IN 2003?
25   A    CORRECT.                                                     04:56
```

EXHIBIT

PAGE 13

TUESDAY, JUNE 24, 2008                    TRIAL DAY 17, AFTERNOON SESSION

1    Q    AND CERTAINLY, SHE KNEW THAT SHE HAD BEEN SECRETLY WORKING

2    ON BRATZ WHILE A MATTEL EMPLOYEE; CORRECT?   SO SHE HAD TO HAVE

3    KNOWN.

4            MS. AGUIAR:   OBJECTION AS TO TIME FRAME, YOUR HONOR.

5            THE COURT:   SUSTAINED.                                    04:56

6            REPHRASE YOUR QUESTION.   JUST CLARIFY AS TO THE TIME

7    PERIOD IN QUESTION.

8            MR. ZELLER:   YES, YOUR HONOR.

9    BY MR. ZELLER:

10   Q    PRIOR TO THE TIME THAT MARIA SALAZAR ACTUALLY BEGAN AS AN   04:56

11   EMPLOYEE THERE AT MGA IN THE 2003 TIME PERIOD, OBVIOUSLY SHE

12   HAD ALREADY KNOWN SHE HAD BEEN SECRETLY WORKING ON BRATZ AS A

13   MATTEL EMPLOYEE FOR A COUPLE OF YEARS BEFORE THAT; RIGHT?

14           MS. AGUIAR:   OBJECTION.   MISSTATES THE TESTIMONY AND

15   INACCURATE TIME FRAME.                                            04:56

16           THE COURT:   REPHRASE, COUNSEL.

17   BY MR. ZELLER:

18   Q    MARIA SALAZAR, OF COURSE, BY YOUR UNDERSTANDING, KNEW WHAT

19   SHE HAD DONE ON BRATZ; THAT IS, SECRETLY WORK ON IT WHILE A

20   MATTEL EMPLOYEE; RIGHT?                                           04:57

21   A    CORRECT.

22   Q    AND SHE KNEW THAT PRIOR TO 2003; IS THAT TRUE?

23   A    CORRECT.

24   Q    AND SHE KNEW THAT, THEREFORE, WHEN SHE BEGAN AS AN

25   EMPLOYEE AT MGA.                                                  04:57

TUESDAY, JUNE 24, 2008    EXHIBIT _____ / _____    TRIAL DAY 17, AFTERNOON SESSION

PAGE _____ /4 _____

1  A    CORRECT.

2  Q    SO CERTAINLY, SOMEBODY -- WHEN YOU TOLD US NO ONE AT MGA

3  KNEW, AT LEAST MARIA SALAZAR, AN MGA EMPLOYEE FROM 2003 ON, SHE

4  KNEW WHAT HAD HAPPENED; RIGHT?

5  A    CORRECT.                                                     04:57

6  Q    NOW, AS FAR AS YOU KNOW, MARIA SALAZAR, TO THIS DAY, IS AN

7  MGA EMPLOYEE; IS THAT TRUE?

8  A    I DON'T KNOW.

9  Q    WELL, LAST YOU KNEW, SHE WAS AN MGA EMPLOYEE; RIGHT?

10 A    RIGHT.                                                       04:57

11 Q    DIRECTING YOUR ATTENTION TO EXHIBIT 10034.  I THINK IN

12 RESPONSE TO -- SOME OF THE QUESTIONS YOU WERE ASKED WERE

13 BASICALLY, 'DID MARIA SALAZAR EVER KNOW?  DID YOU EVER TELL HER

14 THAT SHE HAD WORKED ON BRATZ, THAT THE PRODUCT SHE WAS WORKING

15 ON WAS BRATZ WHILE SHE WAS A MATTEL EMPLOYEE?'                    04:58

16        MS. AGUIAR:  OBJECTION.  MISSTATES THE QUESTION AND

17 THE TESTIMONY.

18        THE COURT:  SUSTAINED.

19        MR. ZELLER:  I'LL REPHRASE IT, THEN.

20 BY MR. ZELLER:

21 Q    IT'S TRUE, THEN, AT SOME POINT, MARIA SALAZAR BECAME AWARE

22 THAT THE PROJECT SHE WAS SECRETLY WORKING ON WHILE A MATTEL

23 EMPLOYEE WAS A MGA PROJECT CALLED "BRATZ"?

24 A    YES.

25 Q    AND ALSO ANA CABRERA LEARNED THAT AT SOME POINT; IS THAT    04:5

TUESDAY, JUNE 24, 2008 EXHIBIT _____|_____  TRIAL DAY 17, AFTERNOON SESSION

PAGE ___15___

3673

1   TRUE?

2   A    YES.

3   Q    AND BEATRIZ MORALES LEARNED THAT AT SOME POINT AS WELL?

4   A    YES.

5   Q    ISN'T IT TRUE THAT YOU USED PHONY NAMES IN DOCUMENTS TO           04:58

6   COVER UP THE FACT THAT THESE MATTEL EMPLOYEES WERE SECRETLY

7   WORKING ON BRATZ WHILE MATTEL EMPLOYEES?

8   A    IT WASN'T MY INTENT TO COVER ANYTHING UP.

9   Q    WHETHER YOU INTENDED TO OR NOT, THAT IS WHAT YOU DID; IS

10  THAT NOT TRUE?                                                        04:59

11  A    CORRECT.

12  Q    AND IN AT LEAST SOME OF THOSE DOCUMENTS THAT YOU

13  PROVIDED -- AND ALSO WHAT YOU DID IS, NOT ONLY USED PHONY NAMES

14  FOR PEOPLE IN THESE DOCUMENTS; YOU USED PHONY SOCIAL SECURITY

15  NUMBERS; CORRECT?                                                     04:59

16  A    I WASN'T AWARE THAT THEY WERE PHONY.

17  Q    I'M SORRY?

18  A    I WASN'T AWARE OF THAT AT THE TIME.

19  Q    YOU CERTAINLY BECAME AWARE OF IT AT SOME POINT THAT THAT'S

20  WHAT YOU WERE DOING; RIGHT?                                           04:59

21  A    RIGHT.

22  Q    IN FACT, BACK IN 2003, YOU GOT A NOTICE FROM THE I.R.S.

23  TELLING YOU THAT THOSE SOCIAL SECURITY NUMBERS FOR THE WORK

24  THAT WAS BEING DONE AND THE PAYMENTS THAT WERE BEING MADE WERE

25  WRONG.                                                                04:59

TUESDAY, JUNE 24, 2008  EXHIBIT_____/_____ TRIAL DAY 17, AFTERNOON SESSION

PAGE____/6

3674

```
 1  A    RIGHT.
 2  Q    SO YOU CERTAINLY HAD AN INKLING OR AN UNDERSTANDING BY
 3  THAT POINT THAT THE SOCIAL SECURITY NUMBERS THAT WERE BEING
 4  USED WERE PHONY.
 5            MS. AGUIAR:  OBJECTION.  RELEVANCE.                    04:59
 6            THE COURT:  OVERRULED.  THIS IS IMPEACHMENT.
 7            THE WITNESS:  THAT'S RIGHT.
 8  BY MR. ZELLER:
 9  Q    AND WHAT DID YOU DO ONCE YOU RECEIVED THAT NOTICE FROM THE
10  I.R.S. THAT THERE WAS SOMETHING WRONG WITH THOSE TAX DOCUMENTS   05:00
11  BECAUSE YOU WERE USING PHONY SOCIAL SECURITY NUMBERS TO COVER
12  UP THE FACT THAT THESE MATTEL EMPLOYEES WERE WORKING ON BRATZ
13  SECRETLY?
14  A    I ASKED THE MATTEL EMPLOYEES TO PLEASE GIVE ME CORRECT
15  SOCIAL SECURITY NUMBERS.                                         05:00
16  Q    WHEN DID YOU DO THAT, SIR?
17  A    AFTER RECEIVING THE NEXT NOTICE.
18  Q    YOU DID THAT RIGHT WITHIN THE LAST COUPLE OF WEEKS.
19  A    WELL, ACTUALLY, IT WAS IN 2005.
20  Q    SO YOU WAITED THREE YEARS?  TWO YEARS?                      05:00
21  A    THAT WAS THE TIME I RECEIVED THE NEXT NOTICE.
22  Q    SO DIRECTING YOUR ATTENTION, THEN, TO EXHIBIT 10034.
23  A    RIGHT.
24  Q    YOU RECOGNIZE THIS, GENERALLY SPEAKING, AS AN EMPLOYMENT
25  APPLICATION THAT MARIA SALAZAR FILLED OUT FOR MGA BACK IN THE    05:0
```

EXHIBIT _____ /

3689

1              HAVE A GOOD WEEK.   I'LL SEE YOU NEXT TUESDAY.

2              **THE CLERK:**   COURT STANDS ADJOURNED.

3

4

5

6

7

8

9

10                              CERTIFICATE

11

12     I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED
       STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF
13     THE STENOGRAPHICALLY RECORDED PROCEEDINGS HELD IN THE
       ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN
14     CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF
       THE UNITED STATES.
15

16

17     THERESA A. LANZA, RPR, CSR                6-30-08
       OFFICIAL COURT REPORTER                     DATE
18

19

20

21

22

23

24

25

TUESDAY, JUNE 24, 2008          EXHIBIT _____/_____
                                                        TRIAL DAY 17, AFTERNOON SESSION
                                PAGE _____18_____

# EXHIBIT 2

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 3

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA  92501
CIVIL MINUTES -- GENERAL

Case No.    CV 04-09049 SGL(RNBx)                          Date:  April 8, 2008

Title:      **CARTER BRYANT -v- MATTEL, INC.**

Consolidated With Related Actions:
CASE NO. CV 04-09059 SGL(RNBx):  MATTEL, INC., v. CARTER BRYANT,
CASE NO. CV 05-02727 SGL (RNBx): MGA ENTERTAINMENT, INC., v. MATTEL, INC.,
=======================================================================
PRESENT:  HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

          Jim Holmes
          Courtroom Deputy Clerk

PROCEEDINGS
(issued in chambers):        **ORDER GRANTING MOTION TO DISQUALIFY EXPERT
                              ORDER DENYING MOTION TO DISQUALIFY COUNSEL**

        Based on the findings of fact set forth on the record, and for the reasons stated therein, the
Court **GRANTS** the motion to disqualify the expert, Christina Tomiyama.

        Toward that end, the Court **ORDERS** the following:

              Counsel for MGA, including in-house counsel, shall have no
              further contact with Ms. Tomiyama regarding this litigation except as
              necessary to effectuate the Court's orders.

              All counsel for MGA and Ms. Tomiyama, and any persons
              subject to their authority or control, or those acting in concert with them,
              are **ORDERED**  to refrain from using, disclosing, or otherwise
              disseminating any of Mattel's privileged communications or attorney
              work product for any purpose.


              All counsel for MGA and Ms. Tomiyama, and any persons

MINUTES FORM 90
CIVIL -- GEN                              Page 1                    Initials of Deputy Clerk: jh

EXHIBIT ____3____
PAGE ____27____

subject to their authority or control or those acting in concert with them, are **ORDERED** to return to Mattel and/or destroy all of Mattel's privileged and work-product materials.

Counsel for MGA is **ORDERED** to file under seal the original Tomiyama expert report, and to destroy all other copies thereof. If the original report has been destroyed, a copy of the report shall be so filed, along with a declaration of trial counsel regarding the original's destruction.

Counsel for MGA are **ORDERED** to arrange for a copy of this Order to be personally served on Ms. Tomiyama and shall file a proof of service with an accompanying declaration of the process server.

Should Ms. Tomiyama wish to serve in the future as an expert witness in any unrelated litigation, she is **ORDERED** to provide to counsel for all parties in that litigation a copy of this Order before entering into an agreement to provide expert witness opinions, reports, or testimony.

The Court **DENIES** the motion to disqualify counsel. Given the nature of the attorney-client privileged material and attorney work product possessed by Ms. Tomiyama and the particular circumstances of this case, this Court finds that it was incumbent upon Mattel to seek a protective order once she was no longer employed by Mattel. See Nalian Truck Lines, Inc. v. Nakano Warehouse & Transportation Corp., 6 Cal.App.4th 1256, 1264 (1992) ("[I]t is incumbent upon a party who knows that its former employees . . . possess privileged information to seek a protective order."). Moreover, a careful consideration of the relative burdens and costs to each party and to the Court does not warrant disqualification. See City of Santa Barbara v. Superior Court, 122 Cal.App.4th 17, 23 (2004) (noting that motions for disqualification should be "examined carefully" because attorney disqualification "imposes heavy burdens on both the clients and courts [because] clients are deprived of their chosen counsel, litigation costs inevitably increase and delays inevitably occur.").

Nevertheless, in addition to the steps taken in the injunction set forth above, in order to further limit any inadvertent disclosure of privilege, at the appropriate time, the Court will consider both a motion in limine to preclude Ms. Tomiyama from testifying as a fact witness and a motion in limine to preclude MGA from presenting its legal argument based on the ramifications of comparing two-dimensional drawings of Bratz dolls with the three-dimensional products.

The Court **DENIES** Mattel's request for attorney fees.

**IT IS SO ORDERED.**

EXHIBIT ___3___

PAGE ___28___

# NOTICE PARTY SERVICE LIST

Case No.   CV 04-09049 SGL(RNBx)   Case Title   Carter Bryant v. Mattel, Inc.

Title of Document   Minute Order of April 8, 2008

| | |
|---|---|
| | Atty Sttlmnt Officer Panel Coordinator |
| | BAP (Bankruptcy Appellate Panel) |
| | Beck, Michael J (Clerk, MDL Panel) |
| | BOP (Bureau of Prisons) |
| | CA St Pub Defender (Calif. State PD) |
| | CAAG (California Attorney General's Office - Keith H. Borjon, L.A. Death Penalty Coordinator) |
| | Case Asgmt Admin (Case Assignment Administrator) |
| | Catterson, Cathy (9th Circuit Court of Appeal) |
| | Chief Deputy Admin |
| | Chief Deputy Ops |
| | Clerk of Court |
| | Death Penalty H/C (Law Clerks) |
| | Dep In Chg E Div |
| | Dep In Chg So Div |
| | Federal Public Defender |
| | Fiscal Section |
| | Intake Section, Criminal LA |
| | Intake Section, Criminal SA |
| | Intake Supervisor, Civil |
| | PIA Clerk - Los Angeles (PIALA) |
| | PIA Clerk - Riverside (PIAED) |
| | PIA Clerk - Santa Ana (PIASA) |
| | PSA - Los Angeles (PSALA) |
| | PSA - Riverside (PSAED) |
| | PSA - Santa Ana (PSASA) |
| | Schnack, Randall (CJA Supervising Attorney) |
| | Statistics Clerk |

| | |
|---|---|
| | US Attorneys Office - Civil Division -L.A. |
| | US Attorneys Office - Civil Division - S.A. |
| | US Attorneys Office - Criminal Division -L.A. |
| | US Attorneys Office - Criminal Division -S.A. |
| | US Bankruptcy Court |
| | US Marshal Service - Los Angeles (USMLA) |
| | US Marshal Service - Riverside (USMED) |
| | US Marshal Service -Santa Ana (USMSA) |
| | US Probation Office (USPO) |
| | US Trustee's Office |
| | Warden, San Quentin State Prison, CA |

| ✓ | ***ADD NEW NOTICE PARTY*** (if sending by fax, mailing address must also be provided) |
|---|---|

Name: Ambassador Pierre-Richard Prosper

Firm:

Address (include suite or floor): P.O. Box 581103

Salt Lake City,  UT   84158

*E-mail: Prosper.Pierre@Arentfox.com

*Fax No.:

\* For CIVIL cases only

| ***JUDGE / MAGISTRATE JUDGE (list below):*** |
|---|
| |
| |
| |
| |

Initials of Deputy Clerk  jh

EXHIBIT       3

PAGE       29

# EXHIBIT 4

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

July 13, 2009

<u>VIA E-MAIL AND U.S. MAIL</u>

Annette Hurst
Orrick, Herrington & Sutcliffe LLP
The Orrick Building,
405 Howard Street
San Francisco, CA 94104

Re:    Mattel v. MGA Entertainment, Inc., et al.

Dear Ms. Hurst:

I write pursuant to paragraph 5 of the Discovery Master Stipulation and Order to request a meet and confer in advance of an anticipated motion by Mattel to compel and for sanctions regarding MGA's production of documents in response to Request Nos. 75, 85, 95, 105, and 115 of Mattel, Inc.'s First Set of Requests for Documents and Things Re Claims of Unfair Competition to MGA Entertainment, Inc., dated December 18, 2006.

These Requests seek all documents relating to the payment of "compensation, money, or any item of value" to or for Carlos Gustavo Machado Gomez, Mariana Trueba Almada, Pablo Vargas San Jose, Janine Brisbois, and Ronald Brawer.  MGA was ordered to provide all documents responsive to these Requests by the Discovery Master's Order Granting in Part and Denying in Part Mattel's Motion to Compel Production of Documents By MGA; Denying Request for Monetary Sanctions, dated August 14, 2007.

In its recent response to Interrogatory Nos. 68 and 69, MGA states that it has made a series of payments of legal fees for these individuals.  MGA has produced no documents reflecting these

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
TOKYO | Akasaka Twin Tower Main Building, 6th Floor, 17-22 Akasaka 2-Chome, Minato-ku, Tokyo 107-0052, Japan | TEL +81-3-5561-1711 FAX +81-3-5561-1712
LONDON | 16 Old Bailey, London EC4M 7EG, United Kingdom | TEL +44-20-7653-2000 FAX +44-20-7653-2100

EXHIBIT

PAGE _____ 30

payments, although it is now clear that at least some such documents exist. MGA is therefore in
violation of its obligations under the August 14, 2007 order.

Please let me know when MGA will be supplementing its production. In the alternative, let me
know who will be handling this issue for defendants and when they are available to discuss it. In
the event that we are unable to promptly resolve these matters, Mattel anticipates bringing a
motion to compel, to enforce the prior Order and for sanctions.

I look forward to hearing from you.


Very truly yours,


Scott L. Watson
07975/3006321.1


2

EXHIBIT _____4_____

PAGE _____3/_____

# EXHIBIT 5

1   Robert C. O'Brien (SBN 154372)
    ARENT FOX LLP
2   555 West Fifth Street, 48th Floor
    Los Angeles, CA 90013-1065
3   Telephone: 213.629.7400
    Facsimile: 213.629.7401
4   obrien.robert@arentfox.com

5   Discovery Master

6

7

8                  UNITED STATES DISTRICT COURT

9                 CENTRAL DISTRICT OF CALIFORNIA

10                       EASTERN DIVISION

11  CARTER BRYANT, an individual,        Case No. CV 04-09049 SGL (RNBx)

12                Plaintiff,

13          v.                           Consolidated with
                                         Case No. CV 04-09059
14  MATTEL, INC., a Delaware             Case No. CV 05-2727
    corporation,
15                                       **PHASE 2 DISCOVERY MATTER**
                  Defendant.
16                                       **ORDER NO. 17, REGARDING:**

17                                       **(1) THE MGA PARTIES' MOTION
                                         FOR A PROTECTIVE ORDER
18                                       STAYING DISCOVERY ON
                                         TRADE DRESS CLAIMS;**
19

20                                       **(2) MOTION OF MATTEL, INC. TO
                                         ENFORCE PRIOR COURT ORDER
21                                       AND TO COMPEL RESPONSES TO
                                         INTERROGATORIES; and**
22

23
                                         **(3) *EX PARTE* APPLICATION
24  CONSOLIDATED WITH                    FILED BY MATTEL, INC. FOR AN
    MATTEL, INC. v. BRYANT and           ORDER TO SHOW CAUSE RE:**
25  MGA ENTERTAINMENT, INC. v.           **MGA ENTERTAINMENT, INC.'S
    MATTEL, INC.                         FAILURE TO COMPLY WITH
26                                       COURT ORDER**

27

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES                                      ORDER NO. 17
                                         [Case No. CV 04-09049 SGL (RNBx)]

                        EXHIBIT ____5____

                        PAGE ____32____

1   This Order sets forth the Discovery Master's ruling on the following
2   discovery matters:  (1) the motion for a protective order staying discovery on trade
3   dress claims filed by MGA Entertainment, Inc., MGA Entertainment (HK) Limited,
4   MGAE De Mexico, S.R.L. De C.V. and Isaac Larian (the "MGA Parties")
5   ("Protective Order Motion") [Docket No. 4921]; (2) the motion filed by Mattel, Inc.
6   ("Mattel") to enforce a prior order compelling MGA Entertainment, Inc. ("MGA")
7   to answer Interrogatory Nos. 43 and 44, and compelling responses to Supplemental
8   Interrogatory Nos. 51 – 55 and 64 ("Motion To Compel") ("[Docket No. 4987]; and
9   (3) the *ex parte* application filed by Mattel for an order to show cause regarding
10  MGA's failure to comply with a prior court order ("Application") [Docket No.
11  4997] (collectively, the "Motions").

12   The Motions came on regularly for hearing before the Discovery Master on
13  April 14, 2009.  All interested parties were represented by counsel and afforded the
14  opportunity to present oral argument on the Motions.  The Discovery Master,
15  having considered the papers filed in support of and in opposition to the Motions,
16  and having heard oral argument, rules as set forth below.

17  **I.    THE TRADE DRESS DISCOVERY AT ISSUE**
18   All of the Motions concern discovery related to MGA's trade dress claims.
19  **A.    Interrogatory Nos. 43 And 44**
20   On October 23, 2007, Mattel served its Amended Fourth Set of
21  Interrogatories on MGA, including Interrogatory Nos. 43 and 44.  (Declaration of
22  Scott L. Watson in Support of the Motion To Compel ("Watson Decl."), Ex. 1 at
23  pp. 7 – 8).  These interrogatories ask MGA to identify, for each design, product
24  and packaging that MGA contends Mattel copied, the date of conception and the
25  date it was first fixed in a tangible medium:

26   • Interrogatory No. 43: "For each concept, design, product, product
27    packaging or other matter that YOU contend MATTEL copied or
28    infringed, including but not limited to those identified in MGA's

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 1 -                    ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___5___
PAGE ___33___

1    Responses To Mattel, Inc.'s First Set Of Interrogatories Re Claims Of

2    Unfair Competition, Response To Interrogatory No. 2 (and any

3    Supplemental Responses to such Interrogatory), state the date that each

4    such concept, design, product, product packaging or other matter was

5    conceived, and IDENTIFY, all PERSONS with knowledge of, and all

6    DOCUMENTS that REFER OR RELATE TO, the foregoing." (*Id.*,

7    Ex. 1 at p. 7).

8    • Interrogatory No. 44: "For each concept, design, product, product

9    packaging or other matter that YOU contend MATTEL copied or

10    infringed, including but not limited to those identified in MGA's

11    Responses To Mattel, Inc.'s First Set Of Interrogatories Re Claims Of

12    Unfair Competition, Response To Interrogatory No. 2 (and any

13    Supplemental Responses to such Interrogatory), state the date that each

14    such concept, design, product, product packaging or other matter was

15    first fixed in any tangible medium of expression (if ever), and

16    IDENTIFY, all PERSONS with knowledge of, and all DOCUMENTS

17    that REFER OR RELATE TO, the foregoing." (*Id.*, Ex. 1 at pp. 7 and

18    8).

19    MGA responded to Interrogatory Nos. 43 and 44 with only objections on

20    November 15, 2007. (*Id.*, Ex. 2 at pp. 10 – 13). On November 30, 2007, MGA

21    supplemented its responses to both interrogatories. (*Id.*, Ex. 3 at pp. 12 – 19). On

22    December 20, 2007, Mattel moved to compel further responses to the

23    interrogatories. (*Id.*, Ex. 4). The MGA Parties filed their opposition to Mattel's

24    motion to compel on December 31, 2007. (*Id.*, Ex. 5). On January 7 and 28, 2008,

25    MGA served its second and third set of supplemental responses to Interrogatory

26    Nos. 43 and 44. (*Id.*, Ex. 6 at pp. 20 – 26 and Ex. 7 at pp. 28 – 33).

27    On February 4, 2008, the Court stayed all Phase 2 discovery. (Order dated

28    February 4, 2008, p. 3). On February 15, 2008, the prior discovery master granted

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 2 -                                    ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT     5
PAGE     34

1   Mattel's motion to compel, finding that the "requested information is relevant to
2   Mattel's defense against the MGA [P]arties' claims that their products have been
3   copied or infringed by certain Mattel products." (Watson Decl., Ex. 8 at pp. 11 –
4   12). The prior discovery master further ruled that the supplement responses
5   provided by MGA were deficient, reasoning as follows:

6            Although the MGA [P]arties served supplemental
7            responses after filing their opposition brief, the
8            supplemental responses do not include the requested
9            information. The MGA [P]arties have [also] failed to
10           establish that the interrogatories are unduly burdensome.
11  (Id., Ex. 8 at p. 12). The prior discovery master then ordered MGA to
12  supplement its responses "no later than February 26, 2008." (Id., Ex. 8
13  at p. 22).

14       On March 3, 2008, seven days after the deadline specified in the prior
15  discovery master's order, MGA supplemented its responses to Interrogatory Nos.
16  43 and 44 for a fourth time, objecting that the discovery in question related to
17  Phase 2 and was therefore stayed pursuant to the stay imposed by the Court on
18  Phase 2 discovery on February 4, 2008. (Id., Ex. 9 at pp. 7 – 16). On April 22,
19  2008, the prior discovery master granted the MGA Parties' motion for clarification
20  concerning his February 15, 2008 ruling, stating that "the MGA Parties' obligation
21  to supplement their responses to Interrogatory Nos. . . . 43 and 44 . . . [is] hereby
22  stayed until further order of the district court lifting the stay on Phase 2 discovery."
23  (Id., Ex 10 at p. 3).

24       **B.    Supplemental Interrogatory Nos. 51 – 55 And 64**

25       On January 9, 2008, Mattel served Supplemental Interrogatory Nos. 51 – 55
26  and 64 on MGA. (Id., Ex 11 at p. 12 – 14 and 16). These interrogatories seek
27  information regarding MGA's allegations that Mattel copied, infringed or diluted
28  MGA's products:

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 3 -                              ORDER NO. 17
                                   [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____ 5 _____
PAGE _____ 35 _____

1   • Supplemental Interrogatory No. 51: "For each concept, design,
2       product, product packaging or other matter that YOU contend
3       MATTEL has copied, infringed, or diluted, including but not limited to
4       those identified in MGA's Responses to Mattel, Inc.'s First Set of
5       Interrogatories Re Claims of Unfair Competition, Response To
6       Interrogatory No. 2 (and any Supplemental Responses to such
7       Interrogatory), describe, fully and separately, each and every concept,
8       design, product, product packaging or other matter of or by MATTEL
9       that YOU contend is a copy of, infringes or dilutes YOUR alleged
10      concept(s), design(s), product(s), product packaging or other matter.
·11     Your answer should describe the Mattel concept, design, product,
12      product packaging or other matter with specificity and in detail
13      (including without limitation by product name, product number, SKU,
14      or bar code number), and specify those elements or attributes of
15      YOUR claimed concept, design, product, product packaging or other
16      matter that YOU contend were copied, infringed or diluted by
17      MATTEL." (*Id.*, Ex. 11 at pp. 12 – 13).
18  • Supplemental Interrogatory No. 52: "For each trade dress that YOU
19      contend MATTEL copied, infringed, or diluted, separately IDENTIFY
20      each product sold by YOU or YOUR licensees that incorporates such
21      trade dress and, for each such product, separately state (a) the number
22      of units, by year, of each such product sold by YOU or YOUR
23      licensees; (b) revenue received by YOU from such SALES of each
24      such product; (c) all costs YOU have incurred in connection with each
25      product; including but not limited to YOUR cost of good sold, and (D)
26      YOUR gross and net worth from each such product." (*Id.*, Ex. 11 at p.
27      13).
28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 4 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ____5____

PAGE ____36____

1       • Supplemental Interrogatory No. 53: "For each MATTEL concept,

2       design, product, product packaging or other matter that YOU contend

3       is likely to cause confusion, to cause mistake, or to deceive as to

4       affiliation, connection, or association, or as to origin, sponsorship, or

5       approval, separately state all facts that support YOUR contention of

6       such, including but not limited to all facts that support YOUR

7       contention, if YOU so contend, that any of the SLEEKCRAFT

8       FACTORS weighs against MATTEL, and IDENTIFY all PERSONS

9       with knowledge of such facts, and all DOCUMENTS that REFER OR

10      RELATE TO such facts." (Id.).

11     • Supplemental Interrogatory No. 54: "For each concept, design,

12      product, product packaging or other matter that YOU contend

13      MATTEL copied, infringed or diluted, state all facts that support

14      YOUR contention, if YOU so contend, that such copying or

15      infringement was intentional or willful, and IDENTIFY all PERSONS

16      with knowledge of such facts, and all DOCUMENTS that REFER OR

17      RELATE TO such facts." (Id.).

18     • Supplemental Interrogatory No. 55: "State all facts which support the

19      allegation in Paragraph 120 of YOUR COMPLAINT that MATTEL

20      has "caused and continues to cause blurring and dilution of the

21      distinctive look of MGA's products and trade dress," and IDENTIFY

22      all PERSONS with knowledge of such facts, and all DOCUMENTS

23      that REFER OR RELATE TO such facts." (Id., Ex. 11 at p. 14).

24     • Supplemental Interrogatory No. 64: "To the extent YOU have not

25      previously disclosed such information in a prior interrogatory response

26      YOU provided to Mattel, state all facts which support YOUR claims

27      against Mattel in THIS ACTION, and IDENTIFY all PERSONS with

28      knowledge of such facts, and all DOCUMENTS that REFER OR

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____5_____

PAGE _____37_____

1    RELATE TO such facts." (*Id.*, Ex. 11 at p. 16).

2    MGA responded to Supplemental Interrogatory Nos. 51 – 55 and 64 on

3    February 8, 2008, objecting that the discovery related to Phase 2 issues and was

4    therefore stayed. (*Id.*, Ex. 12 at pp. 15 – 19 and 34 – 35).

5    **C.     The Court Lifts The Stay On Phase 2 Discovery**

6    On January 6, 2009, the Court vacated the stay on Phase 2 discovery.

7    (Watson Decl., Ex. 13 at p. 2). Mattel's counsel subsequently wrote to counsel for

8    MGA on January 20, 2009 to ask when MGA planned to serve the required

9    responses to Interrogatory Nos. 43 and 44, which the prior discovery master had

10   previously ordered answered. (*Id.*, Ex. 14).

11   Mattel's counsel also wrote to MGA on January 28, 2009, requesting that the

12   parties meet and confer on Supplemental Interrogatory Nos. 51 – 55 and 64. (*Id.*,

13   Ex. 15 at pp. 2 – 3). Counsel for the parties then spoke on February 6, 2009

14   regarding Mattel's eight trade dress interrogatories. (*Id.*, ¶ 18 and Ex. 18 at p. 1).

15   During the conference, MGA stated, that it would provide responses to

16   Interrogatory Nos. 43 and 44, and Supplemental Interrogatory Nos. 51 – 55 and 64,

17   "not later than 30 days after the Court decides the trade dress summary judgment

18   motion which Mattel has indicated it will be bringing." (*Id.*, Ex. 18 at p. 1).

19   On February 18, 2009, the parties met and conferred regarding Mattel's

20   contemplated summary judgment motion concerning MGA's trade dress claims and

21   again discussed the responses to the eight trade dress interrogatories at issue. (*Id.*,

22   Ex. 23 at p. 1). The next day, MGA informed Mattel that it would not agree to

23   provide further responses to the interrogatories. (*Id.*). Rather, MGA said that it

24   planned to request a protective order to stay its obligation to respond and that it

25   would only provide responses: (1) if their planned protective order was denied; or

26   (2) if the protective order is granted, 21 days after the Court decides Mattel's

27   summary judgment motion, to the extent any trade dress claims remain after that

28   decision. (*Id.*).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 6 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___5___

PAGE ___38___

1      On February 26, 2009, the MGA Parties filed the Protective Order Motion.
2   Eight days later, Mattel filed its Motion To Compel.  Mattel filed the Application
3   on March 10, 2009.

4   **II.    THE MGA PARTIES' MOTION FOR A PROTECTIVE ORDER**

5      The Discovery Master first addresses the MGA Parties' Protective Order
6   Motion.

7   **A.    The Relief Sought By The MGA Parties**

8      The MGA Parties "seek a stay to defer responding to eight specific
9   interrogatories relating to MGA's trade dress claims until 21 days after the Court
10   rules on Mattel's [contemplated] summary judgment motion." (Motion for a
11   Protective Order, p. 5). "The MGA Parties also seek a stay of all discovery relating
12   to MGA's trade dress claims for the same period." (*Id.*).

13   **B.    Mattel's Opposition**

14      Mattel opposes the Protective Order Motion on five grounds.  First, Mattel
15   argues that the motion is inconsistent with the Court's January 6, 2009 order lifting
16   the stay on Phase 2 discovery.  (Opposition, pp. 12 – 13).  Second, Mattel argues
17   that any request to stay discovery is not properly directed to the Discovery Master.
18   (*Id.*, p. 13).  Third, Mattel argues that the request for a stay lacks merit, since "it is
19   commonplace for a party to bring dispositive motions prior to trial . . ." (*Id.*, pp. 13
20   – 14).  Fourth, Mattel argues that the request for a stay is unworkable since the
21   trade dress claims "are intertwined with Mattel's Phase 2 claims." (*Id.*, pp. 13 –
22   15).  Finally, Mattel argues that the stay would unduly prejudice it and that there is
23   no corresponding undue burden placed on the MGA Parties.  (*Id.*, pp. 16 – 20).

24   **C.    Legal Standard**

25      In general, parties may obtain discovery regarding any matter, not privileged,
26   that is relevant to the claim or defense of any party.  (Fed. Rule Civ. P. 26(b)(1)).
27   The motion brought by the MGA Parties to stay discovery is made pursuant to
28   Federal Rule of Civil Procedure 26(c), which governs motions for protective orders.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

-7-                                    ORDER NO. 17
                          [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___5___
PAGE ___39___

1   Rule 26(c) provides that a protective order may be issued "for good cause" and "to

2   protect a party or person from annoyance, embarrassment, oppression, or undue

3   burden or expense." (Fed. Rule Civ. P. 26(c)).

4       A district court is afforded considerable discretion in deciding whether to

5   issue a protective order that stays discovery. (*See, e.g., Wang v. Hsu*, 919 F.2d 130,

6   130 (10th Cir. 1990). While it is within a district court's discretion to stay

7   discovery pending the outcome of a dispositive motion, (*see Monreal v. Potter*, 367

8   F.3d 1224, 1238 (10th Cir. 2004), such stays are not routinely granted, (*see, e.g.,*

9   *TSM Associates, LLC v. Tractor Supply Co.*, 2008 WL 2404818, at *1 (N.D.Okla.

10  June 11, 2008) ["Unless some compelling reason is presented, in the usual case

11  discovery is not stayed as Defendant requests."]; *Kutilek v. Gannon*, 132 F.R.D.

12  296, 297-98 (D.Kan. 1990) ["The general policy in this district is not to stay

13  discovery even though dispositive motions are pending."]).

14      The underlying principle in determining whether to grant or deny a stay is

15  that "[t]he right to proceed in court should not be denied except under the most

16  extreme circumstances." (*Commodity Futures Trading Com'n v. Chilcott Portfolio*

17  *Management, Inc.*, 713 F.2d 1477, 1484 (10th Cir. 1983). In other words, stays of

18  the normal proceedings of a court should be the exception rather than the rule.

19      Nonetheless, a stay may be appropriate if "resolution of a preliminary motion

20  may dispose of the entire action," (*Nankivil v. Lockheed Martin Corp.*, 216 F.R.D.

21  689, 692 (M.D.Fla. 2003)), "where the case is likely to be finally concluded as a

22  result of the ruling thereon; where the facts sought through uncompleted discovery

23  would not affect the resolution of the motion, or where discovery on all issues of

24  the broad complaint would be wasteful and burdensome," (*Kutilek*, 132 F.R.D. at

25  298).

26      In deciding whether to stay discovery pending the resolution of a dispositive

27  motion, federal courts in California conduct the following inquiry: (1) Is the

28  pending motion "potentially dispositive of the entire case, or at least dispositive on

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 8 -
ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ____5____

PAGE ____40____

1    the issue at which discovery is directed," and, if so (2) can the pending dispositive
2    motion be decided "absent additional discovery." (*Qwest Communications Corp. v.*
3    *Herakles, LLC,* 2007 WL 2288299, *2 (E.D.Cal. August 8, 2007)).  If the court
4    answers both questions in the affirmative, it may then analyze other factors,
5    including the likelihood that the dispositive motion will be granted, (*id.*), and/or
6    "(1) plaintiff's interests in proceeding expeditiously with the civil action and the
7    potential prejudice to plaintiff of a delay; (2) the burden on the defendants; (3) the
8    convenience to the court; (4) the interests of persons not parties to the civil
9    litigation; and (5) the public interest." (*Schmaltz v. Smithkline Beecham Corp.,*
10   2008 WL 3845260, *1 (D.Colo. Aug.15, 2008)).

11        **D.    Analysis**

12        The MGA Parties' primary argument in favor of the requested stay is that, in
13   the event Mattel's contemplated motion for summary judgment is granted, "the
14   Trade Dress Interrogatories may prove unnecessary or may be substantially
15   narrowed." (Protective Order Motion, p. 13; *see also id.* at pp. 1, 2, and 11 – 15).
16   The MGA Parties reason that "[i]t is particularly appropriate to stay discovery when
17   a dispositive motion, such as a summary judgment motion, 'would obviate the need
18   for discovery.'" (*Id.*, p. 11 (citation omitted)).

19        The Discovery Master finds this rationale unpersuasive for the following
20   reasons.

21        **1.    The Discovery Master Does Not Have the Power To Issue**
22             **The Requested Stay**

23        First, the Discovery Master does not have authority to render a ruling that
24   could directly override the Court's scheduling order and delay the Phase 2 trial.
25   While the Discovery Master has been appointed to resolve "any and all . . .
26   discovery disputes in this case,"[1] and may issue orders that indirectly impact the

---

[1] *See* Order appointing the prior discovery master dated December 6, 2006 ("Discovery Master
Order) and the Order appointing the current Discovery Master dated January 6, 2009.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

-9-                                    ORDER NO. 17
                              [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____5_____

PAGE _____41_____

1    scheduling order (e.g., resolving motions to compel, motions to quash, etc.),[2] there

2    is nothing in the order appointing the Discovery Master that authorizes him to

3    override the scheduling order directly.[3]  Indeed, the power to control scheduling in

4    this matter is vested with the Court, as evidenced by the scheduling order issued by

5    it on February, 11, 2009.[4]  (Order dated February 11, 2009, p. 2).  Because the

6    Court, not the Discovery Master, established the applicable discovery cut-off and

7    trial dates for Phase 2, (*id.*), the Discovery Master cannot issue a stay that overrides

8    that order.

9                    **2.      The Court Previously Indicated That the Parties Should**

10                              **Proceed With Phase 2 Discovery.**

11          Second, the Court advised the Discovery Master on February 11, 2009 that

12   "[t]here is no stay on discovery.  Period."  (Reporter's Transcript of Proceedings,

13   February 11, 2009, p. 97:15).  It further instructed the Discovery Master "in no

14   uncertain terms, that there is no stay on *any* discovery related to this case at all,"

15   (*id.*, p. 97:9–10 [emphasis added]), and "there is nothing from this Court which is

16   precluding *any* discovery that is properly sought for the trial that is scheduled," (*id.*,

17   p. 101:22:24 [emphasis added]).  While these statements admittedly arose in the

18   context of the lifting of the stay on Phase 2 discovery, the Discovery Master

19   nevertheless believes that they are instructive of the Court's view that any request

20

---

21   [2] *See* Order dated February 4, 2008, p. 3 (stating that "[t]he fact that the Discovery Master's
22   ruling might impact upon the Court's scheduling order does not relieve the parties of following
     this procedure.")

23
     [3] That the stay requested by the MGA Parties could force the Court to alter its scheduling order is
24   clear, because the requested stay is of an indefinite duration.  Although the MGA Parties request a
     stay until 21 days after the Court rules on Mattel's contemplated summary judgment motion,
25   (Protective Order Motion, p. 5), no such motion is pending before the Court.  Nor is there a
     hearing date on the yet-to-be-filed motion, let alone an indication as to when the Court might be
26   able to issue a ruling disposing of it.

27
     [4] The Court issued its Phase 2 scheduling order more than one month after the appointment of the
28   current Discovery Master.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

                                                                    - 10 -                    ORDER NO. 17
                                                                              [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____ 5 _____

PAGE _____ 42 _____

1   to the Discovery Master for a stay of Phase 2 discovery should be rejected absent

2   extraordinary circumstances not present here.

3                    **3.    There Is No Dispositive Motion Pending**

4          Third, the MGA Parties have failed to demonstrate that a stay is warranted,

5   because no dispositive motion is pending before the Court.  The MGA Parties

6   concede in their moving papers and again in their Reply that Mattel has merely

7   represented that it will file a summary judgment motion at some point in the future.

8   (Protective Order Motion, p. 4; Reply, p. 4).  In the absence of a *pending*

9   dispositive motion, there is no basis for granting the requested stay.[5]

10                 **4.    Mattel's Contemplated Summary Judgment Motion Will**

11                        **Not Dispose Of MGA's Trade Dress Claims**

12         Even assuming a dispositive motion had been filed with the Court, the MGA

13

14   [5] The cases cited by the MGA Parties to support its request for a stay are inapposite. In each case,
     the party seeking the discovery stay was the party who had brought the pending dispositive
15   motion. (*See In re Netflix Antitrust Litig.*, 506 F.Supp.2d 308, 321 (N.D. Cal. 2007) [Defendant
     who filed a motion to dismiss and requested a stay of discovery was ordered to disclose some
16   documents upon partial lifting of stay by the Ninth Circuit.]; *Orchid v. Biosciences, Inc. v. St.
     Louis University*, 198 F.R.D. 670, 671 – 672 (S.D. Cal. 2001) [Defendant, who had moved to
17   dismiss for lack of personal jurisdiction, sought protective order denying all discovery or,
     alternatively, limiting the discovery to jurisdictional issues]; *Landry v. Air Pilots Ass'n Intern.
18   AFL-CIO*, 901 F.2d 404, 435 – 436 (5th Cir. 1990) [Defendant, who had brought motion for
     summary judgment, properly sought and obtained a protective order staying discovery
19   propounded on it by plaintiffs.]); *Little v. City of Seattle*, 863 F.2d 681 (9th Cir. 1988) [Stay on
     discovery upheld in favor of party who raised immunity issue via a summary judgment motion];
20   *Coastal States Gas Corp. v. Dep't of Energy*, 84 F.R.D. 278, 282 (D.C.Del., 1979) [Defendant
     who filed motion to dismiss for lack of ripeness sought a stay of discovery]. By comparison, the
21   MGA Parties are not arguing that a stay is appropriate due to a dispositive motion that they intend
     to bring or that the contemplated motion will defeat their trade dress claims. On the contrary, the
22   MGA Parties are arguing that a stay should be imposed until Mattel's contemplated summary
     judgment motion, which the MGA Parties believe should be denied, is resolved.
23          Further, the five cases cited by the MGA Parties all involved situations where a dispositive
24   motion had already been filed with the Court. (*Id.*)
            Finally, most of the cases relied upon by the MGA Parties were at a relatively nascent stage.
25   Indeed, the dispositive motion was typically a motion to dismiss. (*See, e.g., In re Netflix Litig.*,
     506 F.Supp.2d at 321; *Orchid*, 198 F.R.D. at 671 – 672; *Coastal States Gas Corp.*, 84 F.R.D. at
26   282;). In contrast, a trial has already been held in this matter and the lawsuit has been pending for
27   several years.

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

                                                    - 11 -                    ORDER NO. 17
                                                            [Case No. CV 04-09049 SGL (RNBx)]

                         EXHIBIT ____5____

                         PAGE ____43____

1    Parties have not demonstrated that "[t]he pending motion [is] potentially dispositive

2    of the entire case, or at least dispositive on the issue at which discovery is directed."

3    (*Qwest Communications Corp.*, 2007 WL 2288299, *2).  Mattel's contemplated

4    summary judgment motion will not dispose of MGA's trade dress claims because it

5    is undisputed that MGA's trade dress claims "concern products and other matters

6    that will not be the subject of Mattel's contemplated motion." (Opposition, p. 15;

7    *see also* Reply p. 11 n.6).

8         The MGA Parties nevertheless argue in their Reply that "it would make far

9    more sense for MGA to compile responsive information once the summary

10   judgment motion is decided and the full scope of the trade dress claims is settled."

11   (Reply, p. 11 n. 6).  Phrased differently, the MGA Parties argue not that the

12   summary judgment motion may moot all of the requested discovery, but only that,

13   if granted, it would narrow the scope of the trade dress discovery.  Because

14   discovery will inevitably be required on certain portions of MGA's trade dress

15   claims, this is not a situation where the contemplated motion is potentially

16   dispositive of the issue at which the discovery is directed.  Accordingly, the stay

17   requested by the MGA Parties can be denied for that reason alone.

18              **5.    Other Factors Also Weigh Against Issuing The Requested**

19                    **Stay**

20        Finally, many, if not all, of the other factors a court may consider in deciding

21   whether a stay is appropriate pending the resolution of a dispositive motion weigh

22   in favor of denying the requested stay.

23              **a.    The Merits Of The Dispositive Motion**

24        As explained in *Qwest Communications Corp.*, 2007 WL 2288299, *2, one

25   of the additional factors a court may consider is whether the merits of the pending

26   dispositive motion make it likely that the motion will be granted.  Although the

27   Discovery Master cannot perform such an analysis here (because no dispositive

28   motion is pending), I note that the MGA Parties stated in their moving papers that

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

                                        - 12 -                    ORDER NO. 17
                                                      [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____5_____

PAGE _____44_____

1   Mattel's contemplated summary judgment "arguments are not well-taken . . ."

2   (Protective Order Motion, p. 13). In light of this statement, the MGA Parties are

3   precluded from arguing that it is likely Mattel's motion will be granted in order to

4   justify their request for a stay. Accordingly, the Discover Master finds that – based

5   on the record presented – this factor weighs against issuing the requested stay.[6]

6                      b.      **Prejudice To Mattel**

7          Imposing a stay on MGA's trade dress claims could also prejudice Mattel by

8   delaying the ultimate resolution of the matter and increasing litigation costs. As

9   explained above, the stay requested by the MGA Parties is of an indefinite duration

10  and could delay the trial or, alternatively, force Mattel to expedite discovery efforts

11  after the stay is lifted. Moreover, Mattel could be forced to depose the same

12  witnesses multiple times in Phase 2 (once for those issues not related to MGA's

13  trade dress claims and later with respect to those trade dress issues that remain

14  following the disposition of Mattel's contemplated summary judgment motion).

15  For these reasons, this factor weighs against staying the trade dress discovery.

16                     c.      **The MGA Parties Have Not Demonstrated They Will**

17                             **Suffer Any Undue Burden**

18         While the MGA Parties claim that it will "be extremely difficult, time-

19  consuming and costly" to respond to the eight trade dress interrogatories at issue,

20  (Protective Order Motion, p. 14), as noted above, some trade dress discovery will

21  have to be taken regardless of the outcome of Mattel's anticipated summary

22  judgment motion. Further, while it is possible that Mattel's contemplated summary

23  judgment motion, if granted, could simplify the issues for trial and reduce the costs

24  imposed on the MGA Parties, it is also possible that the resolution of the motion

25  will not have any bearing on the scope of the discovery needed in this case.

26  Regardless, a party is always burdened with costs when it voluntarily chooses to

27  ───────────────

28  [6] Of course, the Discovery Master is in no way deciding the merits of Mattel's contemplated summary judgment motion.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

                                    - 13 -                    ORDER NO. 17
                                                    [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____ 5 _____

PAGE _____ 45 _____

1   pursue a claim, whether the case ultimately is dismissed, summary judgment is
2   granted, the case is settled, or a trial occurs.  If the MGA Parties wish to avoid these
3   costs in connection with MGA's trade dress claims, MGA can always dismiss them.
4   Because any hardship that MGA might face is one of its own making, any burden
5   imposed on it in having to respond to the discovery is justified.  Accordingly, this
6   factor weighs against issuing the requested stay.

7                    d.       The Interests Of The Judiciary And The General
8                             Public

9          The Court, using funds supplied by the general public, has already expended
10   a great deal of effort and resources in this matter, including conducting a lengthy
11   trial in Phase 1.  The Court further issued a scheduling order that established a
12   specific trial date and discovery cut-off for Phase 2.  Consequently, the general
13   interests of controlling the court's docket and the fair and speedy administration of
14   justice weigh heavily in favor of denying the requested stay.

15        E.      Summary Of Ruling Regarding The Protective Order Motion
16          For all of the foregoing reasons, the MGA Parties have failed to meet their
17   burden of demonstrating that good cause exists for issuance of a protective order
18   staying their obligation to respond to the subject discovery.

19   III.    MATTEL'S MOTION TO COMPEL
20          Having denied the Protective Order Motion, the Discovery Master now turns
21   to Mattel's Motion To Compel.

22        A.      Interrogatory Nos. 43 and 44
23              1.      Orders Issued By The Prior Discovery Master
24          As explained in Section I.A., above, this is not the first time that Mattel has
25   moved to compel responses to Interrogatory Nos. 43 and 44.  The prior discovery
26   master ordered MGA to supplement its responses to these interrogatories as part of
27   his February 15, 2008 order ("February 15, 2008 Order").  (Watson Decl., Ex. 8 at
28   pp. 11 – 12).  Seven days after the deadline specified in the February 15, 2008

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES
                                  - 14 -                  ORDER NO. 17
                                              [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___5___

PAGE ___46___

1    Order for supplementing its responses to Interrogatory Nos. 43 and 44, MGA

2    served objections stating that the discovery in question related to Phase 2 and had

3    been stayed pursuant to a February 4, 2008 order from the Court. (*Id.*, Ex. 9 at pp.

4    7 – 16). After having been advised of the stay imposed by the Court on

5    February 4, 2008, the prior discovery master clarified his February 15, 2008 Order

6    on April 22, 2008 ("April 22, 2008 Order"), ruling that "[t]he MGA Parties

7    obligation to supplement their responses . . . [was] stayed until further order of the

8    district court lifting the stay on Phase 2 discovery." (*Id.*, Ex. 10 at p. 3).

9                    **2.    The Relief Sought By Mattel**

10           Because MGA failed to supplement its response to Interrogatory Nos. 43 and

11   44 after the Court lifted the stay on Phase 2 discovery on January 6, 2009, Mattel

12   requests that the Discovery Master enforce the February 15, 2008 Order and require

13   MGA to supplement its responses. (Motion To Compel, pp. 9 – 10).

14                   **3.    MGA's Opposition**

15           In its Opposition, MGA relies on two grounds for refusing to provide

16   responses to Interrogatory Nos. 43 and 44. First, MGA argues that it is not in

17   violation of the prior discovery master's February 15, 2008 Order because that

18   order was subsequently stayed by the April 22, 2008 Order, which "did not include

19   any specific date, or time period, after the Phase 2 stay was lifted within which

20   MGA had to provide supplemental responses." (Opposition, p. 10; *see also id.*, pp.

21   9 and 11). Second, MGA argues that it has not refused to answer Interrogatory

22   Nos. 43 and 44 but rather simply moved for a protective order and noted that it will

23   either provide further responses following the denial of that motion or, in the event

24   the motion is granted, after the Court decides Mattel's contemplated summary

25   judgment motion. (*Id.*, pp. 11 – 12).

26           The Discovery Master does not find either of these arguments persuasive.

27                   **a.    The April 22, 2008 Order**

28           While MGA is correct that the prior discovery master temporarily stayed the

                                   - 15 -

EXHIBIT     5
                         47
PAGE

1    enforcement of his February 15, 2008 Order in his April 22, 2008 Order, its

2    argument that it does not have any obligation to supplement the responses to

3    Interrogatory Nos. 43 and 44 because the April 22, 2008 Order did not specify a

4    time within which MGA had to provide responses is not supported by the record.

5          As soon as the stay on Phase 2 discovery was lifted, MGA's obligation to

6    supplement its responses to Interrogatory Nos. 43 and 44 pursuant to the

7    February 15, 2008 Order returned.  Indeed, the plain language of the prior

8    discovery master's April 22, 2008 Order states that the "MGA Parties obligation to

9    supplement their responses . . . are hereby stayed **until further order of the**

10   **district court lifting the stay on Phase 2 discovery.**" (Watson Decl., Ex. 10 at p.

11   3 (emphasis added)).  Because the Court lifted the stay on Phase 2 discovery on

12   January 6, 2009, the April 22, 2008 Order has not been a shield to the enforcement

13   of the prior discovery master's February 15, 2008 Order since the lifting of the stay.

14         Further, MGA had, at most, eleven days following the lifting of the stay on

15   Phase 2 discovery to supplement its responses to Interrogatory Nos. 43 and 44.

16   (Watson Decl., Ex. 8 at pp. 11 – 12 and 22).  The prior discovery master's February

17   15, 2008 Order required MGA to provide its supplemental responses within eleven

18   days of the order (i.e., on February 26, 2008).  (*Id.*, Ex. 8 at p. 22).  Giving MGA

19   the benefit of the doubt and assuming that all eleven of those days remained at the

20   time the stay was lifted on January 6, 2009, MGA had until January 19, 2009 to

21   provide its responses to Mattel (i.e., 11 days under the February 15, 2008 Order,

22   plus 2 additional days because January 17, 2009 falls on a Saturday).  Because

23   more than three months have passed without a response, MGA has not complied

24   with the terms of the prior discovery master's February 15, 2008 Order.

25                    **b.    MGA's Offer To Produce The Supplemental**

26                           **Responses Following The Disposition Of The**

27                           **Protective Order Motion**

28         The contention that MGA somehow remedied its failure to supplement its

EXHIBIT ___5___

PAGE ___48___

1    responses to Interrogatory Nos. 43 and 44 by offering to provide further responses

2    following the ruling on the Protective Order Motion is likewise unavailing. (Id.,

3    pp. 11 – 12). MGA cites no legal authority, and the Discovery Master has found

4    none, supporting the proposition that a party may refuse to respond to an

5    interrogatory after it has been ordered to do so by subsequently filing a motion for a

6    protective order. Nor would such a rule be logical, as it would permit the party

7    ordered to respond to thereby nullify the effect of the court order. Regardless, the

8    Discovery Master denied the Protective Order Motion and finds that it cannot be

9    used as a basis for failing to comply with the February 15, 2008 Order.

10                    **4.    Conclusion**

11            For all of the foregoing reasons, MGA must promptly provide full and

12    complete responses to Interrogatory Nos. 43 and 44.

13            **B.    Mattel's Request For Sanctions Regarding Interrogatory Nos. 43**

14                    **And 44**

15            In its Motion To Compel, Mattel also requests that the Discovery Master

16    sanction MGA in the amount of $4,515 for failing to comply with the prior

17    discovery master's February 15, 2008 Order. (Motion To Compel, pp. 10 – 11). In

18    response, MGA argues that the Motion To Compel is "entirely unnecessary," since

19    "there is no dispute about whether MGA will respond to Interrogatories 43 and 44,

20    only when, and MGA had already brought the 'when' question to the Discovery

21    Master one week before Mattel filed the instant motion to compel" as part of its

22    Protective Order Motion. (Opposition, p. 13). However, the fact that one party has

23    moved for a protective order does not prevent the party opposing that motion from

24    subsequently filing a motion to enforce a prior court order, particularly where the

25    latter motion requests that the Discovery Master compel MGA to provide responses

26    to the interrogatories at issue "without further delay," (Motion To Compel, p. 10),

27    while the motion for a protective order indicates that MGA will respond to the

28    interrogatories, at the earliest, "within 21 days after" the denial of the Protective

EXHIBIT _____5_____

PAGE _____49_____

1    Order Motion, (Protective Order Motion, p. 10).

2          MGA next argues that sanctions should be denied because its Protective

3    Order Motion is supported by numerous cases, (Opposition, pp. 13 – 14), and that

4    "it would be a perversion of every conceivable notion of economy and efficiency,

5    not to mention fairness . . . if a motion to compel could be used to sanction a party

6    for exercising its legal right to seek a protective order." (Id., p. 14). But these

7    arguments are not persuasive for the same reasons discussed in Section II and

8    Section III.A.3.b., above, namely that the Protective Order Motion is not

9    meritorious and MGA has not cited any legal authority supporting the proposition

10   that a party may refuse to respond to an interrogatory after it has been ordered to do

11   so by subsequently filing a motion for a protective order.

12         Finally, MGA argues that it "has not appealed, challenged or otherwise

13   refused to obey" the prior discovery master's order, (id.), but merely requested that

14   the "Discovery Master temporarily defer the time to respond . . . based upon the

15   new, intervening circumstances that arose between the issuance of that order and

16   the lifting of the discovery stay," (id., p. 15). However, this is just another way of

17   saying that MGA refused to supplement its responses as required by the prior

18   discovery master due to its mistaken belief that the Protective Order Motion

19   obviated the need to comply with the February 15, 2008 Order. Because that

20   argument has already been rejected, MGA has failed to show that it had substantial

21   justification for opposing the enforcement of the February 15, 2008 Order.

22   Accordingly, the Discovery Master sanctions MGA in the amount of $4,515.[7]

23         **C.    Supplemental Interrogatory Nos. 51 – 55 And 64**

24               **1.    The Relief Sought By Mattel**

25         Mattel next requests that the Discovery Master overrule MGA's objections

26   and compel it to provide full and complete responses to Supplemental Interrogatory

27   _____

[7] Having determined that MGA lacked substantial justification for failing to comply with the

28   February 15, 2008 Order, the Discovery Master denies MGA's request for sanctions.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 18 -                                    ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____ 5 _____

PAGE _____ 50 _____

1    Nos. 51 – 55 and 64. (Motion To Compel, pp. 12 – 21).

2              **2.    MGA's Opposition**

3          In its Opposition, MGA initially argues that Mattel failed to meet and confer

4    in good faith. (Opposition, pp. 16 – 18). It further argues that even if Mattel did

5    meet and confer sufficiently, its other objections to the interrogatories (i.e., that

6    they (1) contain overbroad definitions, (2) are compound, (3) are duplicative of

7    other interrogatories, (4) improperly seek expert witness information, privileged

8    information, and information better known to Mattel, and/or (5) impose an undue

9    burden) are meritorious and should be sustained.  (*Id.*, pp. 18 – 26).

10             **a.    Purported Failure To Meet And Confer**

11         Because it could dispose of the outstanding discovery issues related to

12   Supplemental Interrogatory Nos. 51 – 55 and 64, the Discovery Master first

13   addresses MGA's argument that Mattel failed to meet and confer in good faith prior

14   to filing its motion.

15         MGA argues that Mattel did not meet and confer in good faith because its

16   "meet and confer letter concerning these interrogatories is utterly devoid of any

17   reference whatsoever to the putative impropriety of the objections it now challenges

18   . . ." (Opposition, p. 17). However, MGA admits that the parties did meet and

19   confer about certain issues regarding these interrogatories.  (*Id.*, p. 18 ["While the

20   parties did meet and confer about the timing of MGA's response to Interrogatory

21   Nos. 51 – 55 and 64 . . ." (emphasis omitted)]).  The record further reflects Mattel

22   sent a meet and confer letter and had multiple phone calls with MGA's counsel

23   about these specific interrogatories. (Watson Decl., ¶ 18 and Exs. 15, 17 and 19).[8]

24   In fact, a letter dated January 28, 2008 specifically asks MGA to let Mattel know

25   "[i]f MGA or Larian intends to limit their responses [to the Supplemental

26

27   ────────────────
     [8] The Discovery Master overrules MGA's evidentiary objections to Paragraph 18 of the Watson

28   Decl. because the statements are based on Mr. Watson's personal knowledge, are not vague and
     ambiguous, do not constitute hearsay, and are not argumentative.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT ____5____

PAGE ____51____

1    Interrogatories] based on . . . any other objections . . .." (Watson Decl., Ex. 15).

2    Under such circumstances, the Discovery Master finds that Mattel satisfied Rule

3    37's "good faith" meet and confer requirement.

4                    **b.    Definitional Objections**

5         MGA's first substantive argument in opposition to Supplemental

6    Interrogatory Nos. 51 – 55 and 64 is that Supplemental Interrogatory No. 52 is

7    ambiguous because of the manner in which the term "SALES" is defined.

8    (Opposition p. 19). MGA likewise asserts that Supplemental Interrogatory Nos. 51

9    – 55 are ambiguous because of the definition used for the term "MATTEL." (*Id.*,

10   pp. 19 – 20). However, MGA has not cited any legal authority in support of its

11   position.

12        Moreover, MGA did not set forth the grounds for its objections "with

13   specificity," at the time it objected to the interrogatories, as required by Federal

14   Rule of Civil Procedure 33(b)(4). To the contrary, it merely "incorporate[d]

15   General Objection Nos. 14 – 15 (regarding Definitions), including without

16   limitation its objection to the definition of the term 'MATTEL" for Supplemental

17   Interrogatory Nos. 51 – 55, (Separate Statement, pp. 4 – 8), as well as the term

18   "SALES" with respect to Supplemental Interrogatory No. 52 (*id.*, pp. 5 – 6). This

19   incorporation by reference of a list of general objections is insufficient to preserve

20   an objection. (*Convertino v. U.S. Dept. of Justice*, 565 F.Supp.2d 10, 12 – 13

21   (D.D.C. 2008); *ACMA USA, Inc. v. Surefil, LLC*, 2008 WL 2714422, *2 (E.D.Va.

22   July 7, 2008); *Grider v. Keystone Health Plan Central, Inc.*, 2007 WL 2874423, *5

23   - *6 (E.D.Pa. September 27, 2007); *see also* Fed. R. Civ. Proc. 33(b)(4)).

24        Regardless, the Discovery Master is not persuaded that MGA is unable to

25   understand the terms MATTEL and SALES. Accordingly, the definitional

26   objections are overruled. MGA must answer the interrogatories.[9]

27   _____

28   [9] The prior discovery master repeatedly required MGA to respond to discovery that used these
     definitions, including Interrogatory Nos. 43 and 44. (Watson Decl., Exs. 1 and 8).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

1

c.      **Expert Witness Objection**

2        With respect to Supplemental Interrogatory Nos. 51 and 53, MGA asserts

3   that it "has simply interposed an objection that preserves [its] right to rely on expert

4   testimony." (Opposition, p. 21). Since that is the full extent of MGA's expert

5   witness objection, the Discovery Master agrees that the objection, as limited by

6   MGA, is valid. What MGA cannot do is assert that this objection permits it to

7   withhold information that is now available to it. Accordingly, the objection is

8   sustained to the extent that MGA's interrogatory response merely includes a

9   reservation of rights to supplement the response during expert discovery.

10      d.      **Objection That The Information Is Better Known By**

11              **Mattel**

12       Regarding Supplemental Interrogatory No. 51, MGA asserts that the request

13   for it to identify Mattel products by stock keeping number or bar code number is

14   objectionable because that information is better known to Mattel. (*Id.*, p. 21).

15   However, MGA cannot withhold information on the ground that Mattel knows

16   which people have knowledge of Mattel's purported copying of MGA's intellectual

17   property. Mattel is entitled to discover the information MGA possesses and the

18   factual bases of its trade dress claims.

19       As for MGA's claim that Supplemental Interrogatory No. 54 improperly asks

20   it to identify all persons with knowledge of certain facts even though it does not

21   know everyone who may possess such information, (*id.*, pp. 21 – 22), it is

22   incumbent upon MGA to provide the information that is within its custody,

23   possession or control. In fact, MGA concedes that it will provide "whatever

24   information it has." (*Id.*, p. 22).

25      e.      **Compound Objection**

26       MGA next asserts that Supplemental Interrogatory Nos. 51 – 53 are

27   impermissibly compound. (Opposition, pp. 22 – 23). This contention is

28   unavailing. The questions in each interrogatory refer to one common theme and a

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 21 -                      ORDER NO. 17
                    [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ____5____

PAGE ____53____

1    common group, and count as a single interrogatory. (*See Swackhammer v. Sprint*
2    *Corp. PCS*, 225 F.R.D. 658, 644 (D.Kan. 2004) ["[A]n interrogatory containing
3    subparts directed at eliciting details concerning a 'common theme' should generally
4    be considered a single question"]). Accordingly, the objection is overruled.

5                          **f.    Duplicative Objection**

6         MGA's sixth argument is that Supplemental Interrogatory Nos. 51 and 52 are
7    duplicative of other interrogatories Mattel propounded previously. (Opposition, pp.
8    23 – 24). But MGA has failed to demonstrate that this is the case. As an initial
9    matter, MGA does not explain why Supplemental Interrogatory No. 51 is
10   duplicative of other interrogatories. Rather, it simply states that Mattel "does not
11   take issue with MGA's duplication objection," (*id.*, p 23), even though Mattel
12   addressed that issue in footnote 81 of its Motion to Compel, (Motion To Compel, p.
13   19 ["MGA further objects that Interrogatory No. 51 is duplicative of Interrogatory
14   No. 6 . . . No. 49 . . . .Although Interrogatory Nos. 6 and 49 also address the facts
15   regarding MGA's trade dress claims, MGA has yet to identify each of the Mattel
16   products it contends copied, infringed, or diluted MGA's products by SKU number,
17   as requested by Interrogatory 51."]). Because it has not analyzed Interrogatory No.
18   51, MGA's objection to that interrogatory is overruled.

19        MGA's claim that Supplemental Interrogatory No. 52 is duplicative of
20   Interrogatory No. 45 is also unpersuasive. Supplemental Interrogatory No. 52 seeks
21   MGA profit, costs and revenue associated with each trade dress MGA contends
22   Mattel copied, infringed or diluted, (Separate Statement, p. 5), whereas
23   Interrogatory No. 45 asks MGA to identify each Bratz product that MGA sold and
24   to identify the profits, costs and revenue associated with each such product.
25   The questions are therefore not the same.[10] Accordingly, the objections are

26   ─────────────────────────────────
27   [10] If the interrogatories were the same as previous interrogatories it answered, MGA should be
     able to respond to the latest interrogatories by cutting and pasting its responses to the prior
     interrogatories. However, as discussed below, MGA alleges that responding to Supplemental
28   Interrogatory Nos. 51 and 52 will be overly burdensome, thereby implying that the questions are
     not identical in scope. (Opposition, p. 25).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES                                    - 22 -              ORDER NO. 17
                                                        [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ____5____
PAGE ____54____

1    overruled.

2                    g.    **Undue Burden Objection**

3           MGA next objects that Supplemental Interrogatory Nos. 51 – 53 and 64 are

4    unduly burdensome.

5           However, MGA has not provided any evidence in connection with its Motion

6    To Compel to support its claim of burden. (*See Jackson,* 173 F.R.D. at 528-9 ["The

7    party claiming that a discovery request is unduly burdensome must allege specific

8    facts which indicate the nature and extent of the burden, usually by affidavit or

9    other reliable evidence."]).  Further, MGA cannot complain that the interrogatories

10   are unduly burdensome when Mattel merely seeks information regarding the extent

11   of MGA's trade dress claims.  If MGA contends Mattel infringed numerous

12   products, Mattel has the right to discover the scope of the alleged claims.

13   Accordingly, the objections are overruled.

14                   h.    **Privilege Objection**

15          Regarding Supplemental Interrogatory Nos. 52, 53, 55 and 64, MGA argues

16   that it asserted a privilege objection merely to "preserve [its] ability to protect,

17   privileged documents and information . . . . [and to make] clear that it was not

18   waiving the attorney-client privilege . . . ." (Opposition, p. 25).  Since that is the

19   full extent of MGA's privilege objection, the Discovery Master agrees that

20   objection as so limited is valid.  Accordingly, the objection is sustained on that

21   limited ground.

22              **3.    Conclusion**

23          For all of the foregoing reasons, MGA must promptly provide full and

24   complete responses to Supplemental Interrogatory Nos. 51 – 55 and 64, except as

25   limited above.

26     **D.    Summary Of Ruling Regarding The Motion To Compel**

27          Mattel's Motion To Compel is granted, except as limited above.  Mattel's

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 23 -                                      ORDER NO. 17
                                     [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____5_____

PAGE _____55_____

1  request for sanctions in connection with Interrogatory Nos. 43 and 44 is also

2  granted.

3  **IV.   MATTEL'S *EX PARTE* APPLICATION**

4         Several days after Mattel filed its Motion to Compel on March 6, 2009,

5  Mattel filed its Application for issuance of an order to show cause regarding

6  contempt.  The Application addresses Interrogatory Nos. 43 and 44 (the

7  "Interrogatories") and is based on the same facts summarized above with respect to

8  the Motion to Compel and Protective Order Motion.  However, unlike the Motion

9  to Compel, Mattel filed its Application with the Court, arguing that the Discovery

10 Master is not authorized to issue contempt sanctions.  By order dated March 12,

11 2009, the Court referred the Application to the Discovery Master, who was

12 instructed to review it in the first instance and recommend a disposition to the

13 Court.  (Order dated March 12, 2009, p. 1).

14         **A.   Basis For The Application**

15              **1.   Circumstances Warranting *Ex Parte* Relief.**

16         In the introductory section of its Application preceding the Memorandum of

17 Points and Authorities, Mattel sets forth the following grounds for *ex parte* relief:

18              [F]or two months, MGA failed and refused to produce Phase 2

19              discovery, including such discovery that was previously ordered.

20              MGA also has a history of flouting Court Orders, but remains

21              undeterred by prior warnings and prior awards of sanctions.

22              Absent prompt intervention by this Court, MGA will continue to

23              block even ordered Phase 2 discovery.  Furthermore, MGA's

24              conduct is a direct challenge to the authority of the court and the

25              Discovery Master, and additional delay would inappropriately

26              reward MGA for its refusals to comply with the [prior discovery

27              master's February 15, 2008] Order.

28 (Application, p. i).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 24 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____5_____

PAGE _____56_____

1    In its Reply, Mattel offers the following as a further justification for bringing
2  the matter on an *ex parte* basis:

3         MGA has repeatedly employed the procedural tactic of refusing
4         to comply with discovery requests and forcing Mattel to return to
5         court for multiple successive orders and sanctions compelling
6         discovery.  In so doing, MGA effectively halts the discovery
7         process and deprives Mattel of crucial information to which it is
8         entitled. ... Requiring Mattel to repeat the process of filing a
9         regularly noticed motion would unduly reward MGA for its
10        refusal to comply with the [February 15, 2008] Order and
11        enhance MGA's ability to perpetually deprive Mattel of crucial
12        time in which to conduct discovery.

13  (Reply, pp. 3-4).

14        **2.    Circumstances Warranting Issuance Of An Order To Show**
15              **Cause**

16    In its Application, Mattel argues that, although MGA has improperly refused
17  to respond to all of the discovery referenced in the Motion to Compel (including the
18  Interrogatories), that refusal is, in essence, an "aggravated offense" with respect to
19  the Interrogatories, because MGA had already been ordered to provide responses to
20  those Interrogatories pursuant to the prior discovery master's February 15, 2008
21  Order.  Mattel therefore argues that MGA's failure to provide responses to the
22  Interrogatories should be singled out for special treatment as contempt of the Court.

23        **3.    Relief Sought**

24    MGA seeks issuance of an order to show cause that MGA is in contempt, a
25  finding of contempt, and the following monetary relief:

26        •  An award of coercive sanctions against MGA in the amount of $5,000
27           for each day that MGA fails to produce full and complete responses to
28           Interrogatories Nos. 43 and 44 as mandated by the Order, and, in the

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 25 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 5
PAGE 57

1    event that MGA does not comply within five days of the Court's
2    Order, the amount of coercive sanctions should be increased to
3    $10,000 per day (with all such per diem fine amounts being paid to the
4    Court); and

5    • An award of monetary sanctions against MGA in the amount of
6    $7,000, which represents a portion of the costs incurred by Mattel in
7    bringing the Application.

8  (Application, pp. i - ii).

9    **B.    Discussion**

10         **1.    *Ex Parte* Relief Is Not Justified**

11         As MGA notes, the Court's standing order indicates that *ex parte*

12  applications are "solely for extraordinary relief." This directive was underscored

13  by the Court's Discovery Master Order, which requires that a party applying for *ex*

14  *parte* relief must show that "good cause" exists for hearing any dispute "on

15  shortened time" and that it will "be prejudiced absent prompt resolution" of the

16  issue. (Discovery Master Order, pp. 4 – 5).

17         This standard is not satisfied here. Mattel does not adequately demonstrate

18  that it will be prejudiced if the underlying motion is heard according to regularly

19  noticed motion procedures. The discovery cut-off is still eight months in the future

20  (December 11, 2009), and trial is more than a year away. In its Reply, Mattel

21  argues that it would be unfair to require Mattel to seek relief by means of a

22  regularly noticed motion, given the relevant history:

23         Mattel *already* followed this course of action and already

24         obtained an Order that MGA produce amended interrogatory

25         responses. MGA refuses to obey that [February 15, 2008] Order.

26         Requiring Mattel to repeat the process of filing a regularly

27         noticed motion would unduly reward MGA for its refusal to

28         comply with the [February 15, 2008] Order and enhance MGA's

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 26 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____5_____

PAGE _____58_____

1          ability to perpetually deprive Mattel of crucial time in which to
2          conduct discovery.
3   (Reply, p. 4, emphasis in original).
4          Mattel's frustration is understandable; Mattel has already been through this
5   process twice (counting the pending motion to compel) with respect to the identical
6   interrogatories which are the subject of the Application. However, Mattel's
7   assertion that it should be allowed to dispense with a noticed motion ignores one
8   important point: the Application seeks relief which both parties acknowledge is
9   entirely different in character than an award of ordinary monetary sanctions for
10  discovery abuses. Unlike its motions to compel, the Application seeks a finding
11  that MGA has deliberately disobeyed a Court order and should be punished by an
12  award of coercive sanctions until it complies with the order. This is the first time
13  Mattel has sought such relief, and MGA has never previously been provided the
14  opportunity to oppose the requested relief in connection with a regularly noticed
15  motion. Thus, while Mattel's above quoted argument might have some application
16  if Mattel were seeking ordinary discovery sanctions on an *ex parte* basis, it does not
17  justify Mattel in seeking contempt sanctions for the first time on an *ex parte* basis.
18         Moreover, the chronology of events tends to negate the assertion that Mattel
19  is suffering immediate and irreparable prejudice from the delay occasioned by
20  MGA's failure to respond to the Interrogatories. MGA has refused to respond to
21  the Interrogatories since the Court lifted the stay on Phase 2 discovery on January 6,
22  2009. Nevertheless Mattel did not file its Application until two months later, after
23  MGA filed the Protective Order Motion and after Mattel filed its Motion to Compel
24  MGA to respond to the outstanding trade dress discovery, including providing
25  responses to the Interrogatories. The timing of these events undermines Mattel's
26  argument that expedited relief is necessary.
27         In the absence of some exigency, the Discovery Master believes that the
28  severity and punitive character of contempt sanctions warrant affording the parties

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

                                  - 27 -              ORDER NO. 17
                                              [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____5_____

PAGE _____59_____

1   the time and opportunity to present their arguments in the context of a regularly

2   noticed motion.  Consequently Mattel was not justified in seeking relief on an *ex*

3   *parte* basis.  Nevertheless, because Mattel could simply re-file the Application as a

4   regularly noticed motion and because the Discovery Master is not inclined to

5   recommend that the Court grant the relief Mattel seeks at this time, I address the

6   substantive issues raised by the Application below.

7            **2.    MGA's Alleged Disobedience Of The Prior Order**

8                 **a.    Legal Standard**

9        As the Ninth Circuit has observed:

10            Courts are invested with inherent powers that are 'governed not

11            by rule or statute but by the control necessarily vested in courts to

12            manage their own affairs so as to achieve the orderly and

13            expeditious disposition of cases.'

14   (*Unigard Security Ins. Co. v. Lakewood Engineering & Manufacturing Corp.*, 982

15   F.2d 363,368 (9th Cir. 1992) (citations omitted)).  When a party fails to comply

16   with a court order, that party commits civil contempt.  (*General Signal Corp. v.*

17   *Donallco, Inc.*, 787 F.2d 1376, 1376 (9th Cir. 1986)).  Additionally, Federal Rule of

18   Civil Procedure 37(b)(2)(A) authorizes a court to treat the failure to obey a

19   discovery order as contempt.

20        The Ninth Circuit has further observed that "courts have strictly adhered to

21   the principle that the power to punish for contempt is limited to '(t)he least possible

22   power adequate to the end proposed.'" (*In re Gustafson*, 619 F.2d 1354, 1361 (9th

23   Cir. 1980) (citations omitted)).

24        Mattel acknowledges that it must meet an exacting standard in order to

25   prevail on its Application.  Specifically, the party seeking imposition of civil

26   contempt sanctions must demonstrate "by *clear and convincing evidence* that the

27   contemnors violated a *specific and definite* order of the court." (*United States v.*

28   *Rose*, 437 F.Supp.2d 1166, 1170 (S.D. Cal. 2006) *quoting FTC v. Affordable Media*

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

                                   - 28 -                        ORDER NO. 17
                                              [Case No. CV 04-09049 SGL (RNBx)]

                        EXHIBIT _____ 5

                        PAGE _____ 60

1    *LLC*, 179, F.3d 1228, 1239 (9th Cir. 1990) (emphasis added)). Further, any doubts

2    as to whether the requirements for civil contempt have been met in a particular case

3    must be resolved in favor of the party accused of civil contempt. (*In re Chief*

4    *Executive Officers Clubs, Inc.*, 359 B.R. 527, 535 (S.D.N.Y. 2007)).

5         In accordance with this standard, contempt sanctions will not be imposed

6    unless the language of the order allegedly violated is clear and unambiguous.

7    (*Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc.*, 689 F.2d 885, 892 (9th Cir.

8    1982) (affirming district court's denial of applications to hold defendants in

9    contempt for violating terms of consent judgment where, among other things,

10   certain "language of the judgment was ambiguous"); *Sunbeam Corp. v. Black &*

11   *Decker (U.S.) Inc.*, 151 F.R.D. 11, 15 (D.R.I. 1993) (denying motion for contempt

12   and for sanctions where the discovery at issue was open to interpretation: "Any

13   ambiguities or uncertainties in the court order must be read in a light favorable to

14   the person charged with contempt. ... Contempt power should not be used where

15   there is uncertainty"); *Redman v. U.S.*, 77 F.2d 126, 127 (9th Cir. 1935) ("[T]he

16   power of the court to punish for contempt should be used with caution and

17   deliberation.")).

18              **b.    Application To The Facts**

19        Mattel argues that MGA violated the February 15, 2008 Order, and that it

20   continued to do so for two months before the prior discovery master stayed MGA's

21   obligation to respond to the Interrogatories on April 22, 2008. (Application, p. 13).

22   That assertion is not accurate. In granting MGA's motion for clarification of the

23   February 15, 2008 Order, the prior discovery master in essence retroactively found

24   that MGA should not have been ordered to immediately provide supplemental

25   responses because the Interrogatories involved Phase 2 issues and were therefore

26   subject to the Court's February 4, 2008 stay order – a stay imposed 11 days before

27   the February 15, 2008 Order.

28        When the stay was lifted, on January 6, 2009, the Court did not set a new

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 29 -                                    ORDER NO. 17
                                    [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____5_____

PAGE _____61_____

1   deadline for MGA to provide supplemental responses in compliance with the
2   February 15, 2008 Order, nor did Mattel request that either the Court or the current
3   Discovery Master do so.  However, one month after the stay was lifted, Mattel did
4   meet and confer with MGA in an attempt to obtain responses.  At that time, MGA
5   took the position that it would provide responses to the Interrogatories "not later
6   than 30 days after the Court decides the trade dress summary judgment motion
7   which Mattel has indicated it will be bringing."  (Ex. 16 to Watson Decl. in support
8   of Application).  Three weeks later, MGA filed the Protective Order Motion
9   seeking a stay of its obligation to respond to the Interrogatories.

10      As set forth above, the Discovery Master finds that, in pursuing this course of
11  conduct instead of responding to the Interrogatories and other discovery that is the
12  subject of Mattel's Motion to Compel, MGA acted without substantial justification
13  and therefore grants Mattel's Motion To Compel and also awards sanctions against
14  MGA.  The question raised by the Application is whether MGA should *also* be
15  ordered to appear and show cause why it should not be held in contempt and subject
16  to further sanctions for failing to comply with the February 15, 2008 Order.

17      Since Mattel, as the moving party, has the burden of demonstrating by clear
18  and convincing evidence that MGA has committed civil contempt and should be
19  punished, Mattel must, in the first instance, identify the existence of a "specific and
20  definite" provision of the February 15, 2008 Order which MGA has violated.
21  (*Rose*, 437 F.Supp.2d at 1170).  In an attempt to meet this burden Mattel argues:

22         The Discovery Master's [February 15, 2008] Order directed
23         MGA to provide full, complete and updated responses to
24         Interrogatories Nos. 43 and 44 within eleven days.  MGA did not
25         comply with that Order and refused to do so for two months
26         before the Discovery Master stayed MGA's obligation to respond
27         while the Court's Phase 2 stay was in place.

28  (Application, p. 13).  However, as indicated above, MGA's failure to provide the

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 30 -                ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___5___

PAGE ___62___

1  responses specified in the February 15, 2008 Order cannot reasonably be viewed to

2  be a violation of that order during the period of February 15, 2008 to April 22, 2008

3  because the prior discovery master himself retracted the portion of his ruling

4  requiring MGA to comply in response to MGA's motion for clarification. In other

5  words, the prior discovery master found, in effect, that MGA had *properly* withheld

6  supplemental responses on the ground that the subject Interrogatories sought Phase

7  2 discovery, which had been stayed by the Court nearly two weeks *before* the prior

8  discovery master issued the February 15, 2008 Order. Given the prior discovery

9  master's April 22, 2008 ruling granting MGA's motion for clarification, MGA can

10  hardly be deemed to have been in violation of the February 15, 2008 Order while

11  the Court's stay of Phase 2 discovery was in place. A party who believes a ruling is

12  in error has the right to seek clarification or reconsideration, and doing so is not

13  equivalent to willfully disobeying the court.

14      Mattel also argues that MGA "resumed" its violation of the February 15,

15  2008 Order by failing to comply once the Court lifted the Phase 2 discovery stay on

16  January 6, 2009. While the Discovery Master does not agree that any violation

17  resumed on January 6, 2009, as set forth above, I do agree that MGA should have

18  promptly complied with the February 15, 2008 Order once the stay was lifted by

19  serving supplemental responses within 11 days of the lifting of the stay. *Lucero v.*

20  *Martinez*, 2006 WL 1304945 at *2 (D.N.M. Mar. 11, 2006) (party waived all

21  objections to interrogatories served before a stay was issued by failing to respond

22  within 30 days of the stay's expiration); *Donovan v. Mazzola*, 716 F.2d 1226, 1240

23  (9th Cir. 1983) ("Absent a stay, 'all orders and judgments of courts must be

24  complied with promptly.'").

25      However, today's ruling that MGA should have promptly provided responses

26  to the Interrogatories upon the stay being lifted by the Court is not equivalent to a

27  finding that MGA deliberately violated a "specific and definite" provision in the

28  February 15, 2008 Order. That order arguably does not contemplate the situation

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 31 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____5_____

PAGE _____63_____

1    which ensued after the order was issued, namely, the prior discovery master's
2    decision to suspend MGA's obligation to respond to the Interrogatories without
3    setting a new deadline to run from the lifting of the stay.

4    　　　　While it is reasonable to conclude, as the Discovery Master has done, that the
5    same 11-day deadline imposed by the February 15, 2008 Order would apply once
6    the stay was lifted, an inference, however reasonable, is not the same thing as an
7    express obligation imposed by Court order. (*U.S. v. Saccoccia*, 433 F.3d 19, 29-30
8    (1st Cir. 2005) [government did not carry its burden on civil contempt claim of
9    proving that acceptance of attorney fees by defense attorneys, post-verdict, fell
10   within list of activities expressly forbidden by earlier protective order]; *Independent*
11   *Living Aids, Inc. v. Maxi-Aids, Inc.*, 349 F.Supp.2d 509, 516 (E.D.N.Y. 2004) [the
12   defendant's supposed "understanding," based on oral comments by the Court that
13   he was being ordered to request that search engines discontinue using infringing
14   phrase, was not the same as express provision of injunction and could not serve as
15   basis for civil contempt]). Further, as noted above, any doubts regarding
16   disobedience of a court order are to be resolved in favor of the party charged with
17   contempt. Accordingly, the Discovery Master declines, under the applicable case
18   law and on the record presented, to find that MGA deliberately disobeyed the
19   Court, thereby meriting sanctions for civil contempt. The Discovery Master also
20   declines to recommend that the Court issue the requested order to show cause.

21   　　　　However, as set forth in the Disposition section below, the Discovery
22   Master's ruling today *does* contain an express deadline by which MGA must
23   respond fully and without objection to the Interrogatories (as well as the other
24   discovery that is the subject of Mattel's Motion to Compel). If MGA fails to
25   comply with the express, definite deadline imposed by this Order, the Discovery
26   Master reserves the right to recommend that the Court impose appropriate sanctions
27   from the date of MGA's non-compliance should Mattel renew its request for an
28   order to show cause regarding contempt by filing a noticed motion.

EXHIBIT ___5___

PAGE ___64___

1  **V.    DISPOSITION**

2          A.     MGA's Protective Order Motion is **DENIED.**

3          B.     Mattel's Motion To Compel is **GRANTED,** except as limited above.

4  MGA's responses to Interrogatory Nos. 43 and 44 shall be served within ten (10)

5  days of this Order, subject to any applicable confidentiality designations available

6  under the Protective Order. MGA's responses to Supplemental Interrogatories Nos.

7  51 – 55 and 64 shall be served within thirty (30) days of this Order, subject to any

8  applicable confidentiality designations available under the Protective Order.

9          C.     Mattel's request for sanctions against MGA in connection with its

10  Motion To Compel is **GRANTED.**  MGA shall pay $4515 to Mattel within ten (10)

11  days of this Order.

12         D.     MGA's request for sanctions in connection with Mattel's Motion To

13  Compel is **DENIED.**

14         E.     Mattel's Application for issuance of an order to show cause regarding

15  contempt is **DENIED,** without prejudice to any noticed motion for an order to show

16  cause regarding contempt that Mattel may deem appropriate in the event that MGA

17  fails to comply with any provision of the present Order.

18  Dated:  April 14, 2009

19

20                                    By:   /s/ Robert C. O'Brien
21                                          ROBERT C. O'BRIEN
                                            Discovery Master
22

23

24

25

26

27

28

EXHIBIT _____ 5
PAGE _____ 65

# EXHIBIT 6

CONFORMED COPY                    FILED

Hon. Edward A. Infante (Ret.)
JAMS
Two Embarcadero Center
Suite 1500
San Francisco, CA 94111
415-774-2611
415-982-5287 (fax)

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant. | CASE NO. C 04-09049 SGL (RNBx)<br>JAMS Reference No. 1100049530<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-2727<br><br>**ORDER GRANTING MATTEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS** |
| CONSOLIDATED WITH<br>MATTEL, INC. v. BRYANT and<br>MGA ENTERTAINMENT, INC. v. MATTEL, INC. | |

## I. INTRODUCTION

On January 3, 2007, Mattel, Inc. ("Mattel") submitted its Motion to Compel Production of Documents to the undersigned Discovery Master for disposition.[1]  On January 11, 2007, Carter Bryant ("Bryant") submitted his opposition brief, and on January 18, 2007, Mattel submitted a reply brief.  The matter was heard via telephonic conference call on January 24, 2007.  Having

---

[1] Pursuant to a stipulation and order filed December 6, 2006, the undersigned was designated Discovery Master in accordance with Rule 53 of the Federal Rules of Civil Procedure.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

1

EXHIBIT _____ 6 _____
PAGE _____ 66 _____

1-26

considered the motion papers and comments of counsel at the hearing, Mattel's Motion to Compel Production of Documents is GRANTED.

## II. BACKGROUND

At the heart of this lawsuit is a dispute over the rights to the "Bratz" dolls. This highly lucrative line of dolls was first conceived by Bryant, a former Mattel employee, and made commercially available by MGA Entertainment, Inc. ("MGA") in the summer of 2001. Sales of Bratz dolls now rival Mattel's Barbie doll.

A. Mattel's Original Complaint

On April 27, 2004, Mattel, the world's largest manufacturer and marketer of toys, filed suit against its former employee Bryant in state court asserting claims for breach of contract, breach of fiduciary duty, breach of duty of loyalty, unjust enrichment, and conversion. Mattel employed Bryant as a product designer from September 1995 through April 1998, and from January 1999 through October 2000. Upon starting his second term, Bryant signed an Employee Confidential Information and Inventions Agreement which required him not to engage in any employment or business other than for Mattel, or invest or assist in any manner any business competitive with the business or future business plans of Mattel. Bryant also assigned to Mattel all rights, title, and interest in the "inventions" he conceived of, or reduced to practice, during his employment.

In addition, Bryant completed Mattel's Conflict of Interest Questionnaire, certifying that he had not worked for any of Mattel's competitors in the prior twelve months and had not engaged in any business dealings creating a conflict of interest. Bryant agreed to notify Mattel of any future events raising a conflict of interest.

Mattel alleges that during his employment, Bryant secretly aided, assisted and worked for a Mattel competitor (later identified as MGA). Bryant entered into an agreement with MGA to

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

2

EXHIBIT _____ 6 _____

PAGE _____ 67 _____

provide product design services on a "top priority" basis.[2] The agreement further provided that Bryant would receive royalties and other consideration for sales of products on which he provided aid or assistance; that all work and services furnished by Bryant to MGA under the agreement would be considered "works for hire"; and that all intellectual property rights to preexisting work by Bryant purportedly would be assigned to MGA. Mattel further alleges that Bryant converted, misappropriated and misused Mattel property and resources while he was employed at Mattel. In the complaint, Mattel claims ownership of all inventions and works created by Bryant during his Mattel employment and seeks to recover all benefits obtained as a result of his alleged breach of duties.

In May of 2004, Bryant removed the state court action to the U.S. District Court, asserting subject matter jurisdiction under both 28 U.S.C. §1331 (federal question jurisdiction) and 28 U.S.C. §1332 (diversity jurisdiction). Mattel filed a motion to remand and submitted a copy of Bryant's agreement with Mattel's competitor, namely MGA. The agreement was dated September 18, 2000 – a time when Bryant was still employed by Mattel — and required Bryant to provide MGA with design services for the Bratz dolls. In return, MGA agreed to compensate Bryant at a monthly rate for a period of time and to pay Bryant a 3% royalty on sales of Bratz dolls. In August of 2004, the district court remanded the action.

B. Bryant's Cross-complaint

In September of 2004, after the case was returned to state court, Bryant filed a cross-complaint against Mattel to challenge the legality of Mattel's Employee Confidential Information and Inventions Agreement. Bryant's cross-complaint included claims for unfair competition, rescission, declaratory relief, and fraud.

//

---

[2] Bryant has already produced his agreement with MGA. Therefore, the existence of the agreement does not appear to be in dispute.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

3

EXHIBIT _____ 6

PAGE _____ 68

C. <u>Bryant's Second Notice of Removal (CV 04-9059)</u>

In November of 2004, Bryant filed a second notice of removal, once again invoking federal question and diversity jurisdiction. Bryant asserted that Mattel's complaint presented a federal question because events occurring since the first removal and remand demonstrated that Mattel's conversion claim involved the rights to the Bratz dolls, and therefore was preempted by the Copyright Act. Bryant also contended that there was diversity jurisdiction because he and Mattel were citizens of different states and the amount in controversy exceeded the $75,000 jurisdictional limit because the rights to the Bratz dolls were at stake. After the second notice of removal, MGA intervened as a defendant pursuant to a stipulation and order.

D. <u>Bryant's Declaratory Relief Action Against Mattel (CV 04-9049)</u>

On the same day that Bryant filed his second notice of removal, he also filed a complaint in federal court seeking a declaratory judgment that the Bratz dolls do not infringe Mattel's copyrights in a project known as "Toon Teens."

E. <u>MGA's Complaint Against Mattel (CV 05-2727)</u>

In April of 2005, MGA filed suit against Mattel alleging essentially unfair competition claims. MGA alleged that Mattel engaged in "serial copycatting" of Bratz dolls, Bratz "pets" and other Bratz products, Bratz television commercials, and Bratz packaging.

F. <u>Mattel's Second Motion to Remand its Complaint against Bryant</u>

Mattel filed another motion to remand its suit against Bryant. In March of 2005, the district court issued an order denying the motion to remand and certifying the order for interlocutory review. Mattel filed an appeal, and the district court stayed discovery in May of 2005. Discovery did not resume until May 2006, when the Ninth Circuit affirmed the district court ruling. After the stay was lifted the district court consolidated all three actions for all purposes. There is no scheduling order currently in place.

EXHIBIT ___6___

PAGE ___69___

### G. Court Dismisses Bryant's Cross-claims and Declaratory Relief Action

In July of 2006, the district court dismissed Bryant's cross-claims pursuant to Rule 12(b)(6), Fed.R.Civ.P., for failure to state a claim upon which relief may be granted. The district court also dismissed Bryant's declaratory relief action, finding there existed no reasonable apprehension of an imminent copyright infringement claim against him by Mattel based upon Mattel's Toon Teen intellectual property.

### H. Mattel's Counterclaims against MGA

Mattel sought leave to file an amended complaint in case no. CV 05-9059 to add five defendants and nine new legal claims alleging a wide range of commercial disputes. For example, Mattel's proposed amended complaint contains RICO claims, a trade secret misappropriation claim, and aiding and abetting claims predicated on allegations that MGA cherry-picked certain high ranking Mattel executives or designers and then enticed them to steal Mattel's trade and proprietary secrets and deliver them to MGA before beginning work with MGA. Mattel also sought leave to add a copyright infringement claim. Mattel has recently filed copyright registrations with the U.S. Copyright Office claiming ownership in various Bratz doll designs created by Bryant.

On January 11, 2007, the district court granted Mattel leave to file its proposed amendments, but only insofar as they are pled in the form of an amended answer and counterclaim in the case MGA filed against Mattel, CV 05-2727. The next day, Mattel filed its amendments as ordered in case no. CV 05-2727.

### I. Mattel's Requests for Production of Documents

Mattel served the requests for production of documents at issue in this motion on June 14, 2004. Bryant served objections and responses on July 16, 2004. The parties met and conferred, but ultimately Mattel moved to compel production in January of 2005. That motion, however,

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

5

EXHIBIT _____ 6

PAGE _____ 70

was not heard before the district court stayed all discovery pending resolution of Mattel's appeal
to the Ninth Circuit on subject matter jurisdiction issues.

After the stay of discovery was lifted, the parties met and conferred on June 20, 2006, at
the courthouse, and were able to achieve apparent agreement on the bulk of the present motion to
compel. The parties informed the court that they would submit a stipulation and order. See
Minutes dated June 20, 2006, Zeller Dec. Ex. 6 ("With respect to Mattel's Motion to Compel
Production of Documents, counsel will be submitting a stipulation and order which will be
dispositive of all the issues in dispute.").

Over the next several months, the parties exchanged draft stipulations and orders to
memorialize the parties' meet and confer session, but were unable to reach final agreement
because Bryant insisted upon including the following sentence in the stipulation: "The stipulation
resolves all issues raised in Mattel's motion to compel, which is hereby withdrawn." Bryant's
Opposition at 1:18-20. By including this sentence, Bryant intended to prevent further law and
motion regarding the requests at issue in Mattel's original motion to compel. Id. at 1:21-23.
From Mattel's perspective, however, the proposed sentence amounted to a demand that Mattel
waive its right to all further discovery in connection with its requests. Mattel proposed the
following provision as an alternative:

> Except as, and only as set forth in the terms of Paragraph One above, nothing in
> this Stipulation shall preclude or limit Mattel from seeking further discovery on
> any matter, including as to matter on which the parties could not reach complete
> agreement, or preclude or limit any right of Bryant to object or resist to such
> discovery.

Bryant's Opposition at 7:5-11. Apparently Mattel's alternative language was
unacceptable to Bryant. At the direction of the Discovery Master, the parties met and
conferred again in late December 2006, but to no avail.

Despite the parties' inability to reach final agreement, Bryant produced approximately

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

6

EXHIBIT _____ 6
PAGE _____ 71

1,600 pages of documents to date. Mattel contends, however, that the production is inadequate and consistent with a pattern of stonewalling.[3] Accordingly, Mattel filed the instant motion to compel responsive documents, which includes a request for sanctions in the amount of $7,805.

J. Mattel's Motion to Compel Production of Documents

Mattel's motion has three parts. First, Mattel seeks an order compelling Bryant to produce the following categories of requested documents: (a) documents relating to Bratz designs created by Bryant while employed by Mattel; (b) doll prototypes created by Bryant while working for Mattel; (c) documents that refer to the conception, creating or development of Bratz; (d) Mattel-related documents that Bryant disclosed to MGA; (e) communications between Bryant and MGA that relate to Mattel or Mattel employees; and (f) documents showing what dolls Bryant was exposed to while working at Mattel. Mattel's Motion at 6. Mattel asserts that these categories of documents are relevant to establish Bryant's liability and would reveal works rightfully owned by Mattel.

Second, as to other categories of documents which Bryant has agreed to produce, Mattel contends that Bryant has imposed unjustified limitations. According to Mattel, Bryant will not produce any responsive documents that were created after the suit was filed; Bryant will not produce any communications with MGA "created" after the end of his Mattel employment; Bryant is limiting production of Bratz-related documents to designs that, in Bryant's view, "resulted in" the first line of Bratz dolls released in June 2001; Bryant has not produced known contracts between him and MGA and refuses to produce non-privileged communications relating to those contracts; and Bryant has withheld all but one category of financial documents relating to

---

[3] According to Mattel, Bryant evaded a deposition until Mattel obtained a court order compelling him to appear. Similarly, MGA allegedly refused to permit its CEO, Isaac Larian, from being deposed. Mattel again obtained a court order compelling the deposition and sanctions. To date, only Bryant and Larian have been deposed.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

7

EXHIBIT _____ 6
PAGE _____ 72

his earnings from his work for MGA. Mattel's Motion at 7. Mattel seeks full production of responsive documents without any of the limitations described above.

Third, Mattel contends that the documents Bryant has produced are inadequate for a number of reasons: the financial documents are so heavily redacted they are useless; faxed documents are missing fax header information, including the sending and receiving parties[4]; e-mails and other electronic documents that are known to exist have not been produced; Bryant refuses to inspect, and refuses to permit Mattel to inspect, the hard drive of a computer he used during the relevant period; and Bryant's privilege log is facially incomplete and lists only four documents.

K. Bryant's Opposition to Mattel's Motion to Compel

Bryant opposes Mattel's motion to compel. He views the motion as nothing more than Mattel's unwillingness to allow closure on any discovery matter after a lengthy meet and confer process which began back in 2004. Bryant emphasizes that the document requests at issue were first propounded at a time when Mattel was attempting to remand the case, making the claim that it did not know whether $75,000 was in controversy and insisting that it was asserting solely state law claims. Bryant explains that given Mattel's view of the case in 2004, he took the position that discovery should be limited to what occurred in his last days at Mattel and shortly thereafter. See Bryant's Opposition at 4-5 ("Bryant's activities and earnings in connection with Bratz in later years could have no conceivable relevance to the case because if those activities and earnings were at stake, the case was worth millions, not pennies."). Accordingly, in the summer and fall of 2004, he produced the following categories of documents: documents evidencing the artwork used to create the "First Generation" of Bratz dolls – the first dolls sold to the public in the summer of 2001; hundreds of pieces of artwork he was permitted to retain from his employment

---

[4] There is evidence that MGA's CEO instructed an employee to obliterate the fax header on a fax Bryant sent to MGA from Mattel's Design Center. MGA denies the accusation.

EXHIBIT _____ 6 _____

PAGE _____ 73 _____

at Mattel; MGA statements revealing his earnings connected with the sale of the First Generation Bratz dolls and his 2000 contract with MGA; personal phone records and bank records; and hundreds of three dimensional doll parts and toy accessories that came into his possession over the years, including a prototype of the First Generation "Jade" doll.

Bryant generally agrees with Mattel's description of the meet and confer session held at the courthouse on June 20, 2006 and the parties' exchange of draft stipulations. According to Bryant, all the requests addressed in Mattel's original motion to compel and the instant motion led to agreement on the following points: (a) Bryant would produce all agreements for work he performed with or on behalf of MGA prior to June 30, 2001 (the approximate date the First Generation Bratz dolls were released to the public); (b) Bryant would waive the attorney-client privilege with respect to communications with the attorney who assisted him in negotiating his contract with MGA, so long as that waiver would be limited and in no way waive the privilege with respect to litigation counsel; (c) Bryant would produce any documents relating to any payments he received from MGA while employed at Mattel, irrespective of the date of creation; (d) Bryant agreed to make a diligent search for all computers referenced in his deposition and search them for responsive documents; (e) Bryant agreed to produce all documents and tangible things obtained from Mattel during the course of his employment at Mattel; (f) Bryant agreed to conduct a search and produce any patent, trademark or copyright applications, registrations and other non-privileged documents in his possession in connection with his work with MGA prior to June 2001; (g) Bryant agreed to identify documents responsive to particular requests if Mattel could demonstrate that the requests asked for such identification of documents; (h) Bryant agreed to sign a verification that none of the information redacted from his phone records related to Bratz or his work for MGA prior to June 30, 2001; (i) Bryant agreed to supplement his privilege log; and (j) the parties agreed that the stipulation modified Bryant's prior response to the discovery

EXHIBIT _____ 6
PAGE _____ 74

1    requests and that the stipulation controlled to the extent they were inconsistent. Bryant's

2    Opposition at 5:22-6:21.

3        Bryant emphasizes that the parties have engaged in an extensive meet and confer process

4    and asks the Discovery Master to order the disposition of this motion in a manner consistent with

5
6    the parties' draft stipulation. If the draft stipulation is not adopted, Bryant fears the parties will

7    have no incentive to compromise in the future. Bryant's Opposition at 1:24-2:3. Bryant also asks

8    the Discovery Master to order Mattel not to revisit any of the requests that were the subject of

9    Mattel's original motion to compel or the instant motion to compel. Id. at 2:11-13 and 10:9-10.

10       Furthermore, Bryant asserts that Mattel's requests are overbroad in numerous respects. In
11
12   particular, Bryant asserts that Mattel is not entitled to all communications with MGA relating to

13   Mattel employees. Bryant also asserts that Mattel is not entitled to unredacted personal phone

14   records and financial information because these records are protected by privacy rights. Lastly,

15   Bryant asserts that Mattel is not entitled to all Bratz related documents created after the lawsuit
16
17   was filed.

18                              III. DISCUSSION

19       A. The Parties Did Not Reach a Stipulation to Resolve the Instant Motion

20       The parties' extensive submissions make it clear that the parties did not resolve the issues
21
22   raised in the instant motion. The parties met and conferred extensively and in good faith,

23   reaching compromises on virtually all categories of documents in dispute. Despite their efforts,

24   however, the parties were ultimately unable to execute a binding stipulation because they were

25   unable to agree on any provision to govern Mattel's future right to pursue additional discovery
26
27   from Bryant. It is clear that the parties deemed it necessary to include such a provision in the

28   draft stipulation in order to protect their respective positions. Because the parties did not execute

29   a binding stipulation, there is no legal basis to enforce the terms contained in the draft stipulation.

EXHIBIT _____6_____

PAGE _____75_____

Therefore, Mattel's right to the discovery it seeks in the instant motion to compel is governed by the familiar guidelines set forth in Rule 26 of the Federal Rules of Civil Procedure.

Furthermore, because the parties met and conferred in good faith and because they had a legitimate dispute over language governing Mattel's future right to pursue additional discovery from Bryant, the Discovery Master denies Mattel's request for sanctions.

B. Rule 26 of the Federal Rules of Civil Procedure

Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed.R.Civ.P. 26(b)(1). "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id. Discovery shall, however, be limited by the court if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P. 26(b)(2).

C. Mattel's Requests for Production

Request Nos. 2, 13, 48: Documents Relating to Bryant's Agreements with MGA

Mattel seeks documents relating to Bryant's agreements with MGA, including doll-related agreements. Bryant is withholding responsive documents, including (a) documents relating to his Bratz agreements with MGA other than final signed agreements, including communications exchanged by the parties and drafts of the agreements, (b) documents relating to doll-related

EXHIBIT ____6____

PAGE ____76____

agreements discussed or negotiated by Bryant and third parties while he was employed by Mattel other than signed agreements that were "reached" while Bryant was employed by Mattel, and (c) documents relating to Bryant's fee agreements with MGA or other indemnity agreements relating to this action.

The Discovery Master finds that the withheld documents are relevant to Mattel's claims. Among other things, the withheld documents could establish the timing, nature and scope of Bryant's work for MGA (or others), ongoing acts of copyright infringement, and damages. In addition, the withheld documents could be used for impeachment purposes. Further, documents relating to fee or indemnity agreements between MGA and Bryant are relevant to demonstrate bias and lack of credibility. Bryant has failed to establish that the requested discovery is barred by Rule 26(b)(2), Fed.R.Civ.P. Accordingly, Bryant is ordered to produce all non-privileged documents responsive to Request Nos. 2, 13, and 48.

> Request Nos. 11, 12, 19, 37, 40, 41, 42, 43, 53, 54, 55: Documents Relating to Bratz's Development and Other Projects that Bryant Worked on for MGA

Mattel seeks documents relating to the Bratz project and any other projects Bryant worked on for MGA. Bryant produced documents relating only to the First Generation Bratz dolls. Bryant is prepared to produce additional documents relating to work he performed for MGA prior to June 30, 2001, acknowledging that those documents are relevant to Mattel's claim that Bryant breached his employee agreement by allegedly performing services for Mattel and MGA at the same time. Bryant objects to the requests to the extent they seek any additional documents on relevancy and overbreadth grounds.

The Discovery Master finds that Mattel's requests seek relevant information and are not overbroad. The lawsuit is much broader than the First Generation Bratz dolls issued in June 30, 2001. For example, Mattel alleges that it is entitled all works created by Bryant during his Mattel

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

12

EXHIBIT _____ 6 _____

PAGE _____ 77 _____

employment, regardless of whether they resulted in a Bratz doll released in June of 2001. Mattel also alleges that Bryant has breached his ongoing contractual duties not to use any of Mattel's confidential and proprietary information, not just information relating to the Bratz dolls released in June of 2001. Mattel also alleges that Bryant has infringed Mattel's alleged copyrights in Bratz works – works that are allegedly owned by Mattel because they were created while Bryant was employed by Mattel – through his ongoing conduct of reproducing and creating derivative works. Accordingly, Bryant is ordered to produce all non-privileged documents responsive to Request Nos. 11, 12, 19, 37, 40, 41, 42, 43, 53, 54, and 55.

Request Nos. 29, 30, 31, 32, 33, 34, 35, 36, 45, 46: Documents Relating to Bryant's Payments from MGA

Mattel seeks documents relating to Bryant's payments from MGA. Bryant acknowledges that Mattel is entitled to know how much money Bryant has earned from MGA, and represents that he has produced, in redacted form, all royalty statements he has received related to the First Generation Bratz dolls and his 2000 contract with MGA. Bryant asserts that his redactions are justified as a means to avoid disclosing the breakdown of MGA's revenue by particular product, which information Bryant believes constitutes MGA's trade secret information. Bryant also objects to producing tax returns, asserting that Mattel cannot show a "compelling need" for the returns. Bryant's Opposition at 29:21-27.

The Discovery Master finds that documents relating to MGA's payments to Bryant, including royalty statements and other payment information, are relevant to several Mattel claims. First, Mattel's claims against Bryant include breach of contract, breach of fiduciary duty, breach of duty of loyalty, unjust enrichment, and conversion. Mattel seeks to recover all benefits Bryant received as a result of his alleged violations of duties to Mattel. Payments to Bryant from MGA and others might be traceable to work Bryant performed while employed by Mattel, regardless of

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

13

EXHIBIT _____ 6
PAGE _____ 78

1    when the payments were actually made. Such payments might also lead to evidence to support

2    Mattel's allegation that Bryant converted, misappropriated, or misused Mattel information.

3         Second, the payments are relevant to Mattel's recently added claim for copyright

4    infringement. Mattel alleges that Bryant, MGA, and others have infringed Mattel's rights in the

5
6    Bratz drawings and works by copying and preparing derivative works from those works. Under

7    the Copyright Act, a plaintiff is entitled to recover profits from infringement as well as actual

8    damages. 17 U.S.C. §504(b). The works that potentially infringe Mattel's copyrights, therefore,

9    include all Bratz doll products that MGA released to the market. For this reason, and for reasons

10
11   already discussed in the previous subsection, Bryant's limited production of documents relating to

12   only the First Generation of Bratz dolls is inadequate.

13        Third, payments to Bryant are relevant to Mattel's recently added claims for trade secret

14   misappropriation. Payments could show when and what trade secret information Bryant and

15   other defendants allegedly misappropriated from Mattel. Any proof of trade secret theft is also

16
17   relevant to Mattel's defense against MGA's unfair competition claims.

18        Lastly, the breakdown of gross royalty payments may be required to prove actual

19   causation of damages.

20        The protective order filed on January 4, 2005, is sufficient to address any confidentiality

21
22   concerns raised by Bryant. Among other things, the protective order provides protection for

23   confidential trade secret information. It has two tiers of protection, allowing a party to designate

24   documents as either "Confidential" or "Confidential – Attorney's Eyes Only." The protective

25   order also requires the parties to use information produced in discovery only for purposes of this

26   litigation and not for any other purpose.

27
28        Accordingly, Bryant is ordered to produce, without redactions, all non-privileged

29   documents responsive to Request Nos. 29, 30, 31, 32, 33, 34, 35, 36, 45, and 46. Bryant,

Bryant v. Mattel, Inc.,                                                                          14
CV-04-09049 SGL (RNBx)

EXHIBIT ____ 6

PAGE ____ 79

however, is not required to produce tax returns, provided that he otherwise fully complies with these requests as ordered.

### Request Nos. 20, 23, 27, 28: Communications Between Bryant and MGA

Mattel seeks production of Bratz-related communications and communications with MGA. More specifically, Mattel seeks production of four categories of documents Bryant has refused to produce: (1) communications between Bryant and MGA or third parties that explicitly relate to designs Bryant created while employed by Mattel; (2) communications between Bryant and MGA that relate to Mattel employees; (3) communications between Bryant and MGA relating to Bryant's Mattel employment or work Bryant performed for Mattel, except those communications "created" prior to the close of Bryant's Mattel employment; and (4) communications between Bryant and MGA that post-date Bryant's Mattel employment. Bryant contends that the discovery requests for communications between Bryant and MGA are overbroad. Bryant asserts that there are many former Mattel employees and friends of his who have privacy rights that would be impinged upon if he were to disclose his communications. Bryant also asserts that he has his own confidentiality interest regarding any information that he shared with MGA. In particular, he objects to Mattel's discovery requests to the extent they would require him to reveal the identity of current Mattel employees seeking employment with MGA or Bryant.

The Discovery Master finds that Mattel's requests for all communications between Bryant and MGA unquestionably seek information relevant to Mattel's claims: they will reveal what Mattel information Bryant shared with MGA, if any, and when. The protective order is sufficient to address Bryant's confidentiality concerns. It allows parties to designate as "Confidential" private information about current or former employees, contractors or vendors (including employee, contractor and personnel records). Therefore, Bryant is ordered to produce all non-

privileged documents responsive to Request Nos. 20, 23, 27, and 28. However, Bryant may continue to redact his telephone records, and shall provide a signed verification that none of the telephone calls that were redacted relate or refer in any way to MGA, Bratz, or any other project that Bryant worked on, with, for, or on behalf of MGA. Telephone calls that do not relate or refer in any way to MGA or Bratz are irrelevant.

Request Nos. 49, 51: Mattel-Related Documents

Mattel seeks production of Mattel-related documents, and Bryant agrees to produce them. Accordingly, Bryant is ordered to produce all documents responsive to Request Nos. 49 and 51.

Request No. 9: Documents re Registrations and Applications for Registrations

Lastly, in Request No. 9 Mattel seeks production of documents registrations and registrations and applications for registration. Bryant deems the motion moot with respect to Request No. 9 because he agrees to produce any patent, copyright and trademark applications, registrations or other non-privileged documents in his possession, custody or control that constitute or relate to such applications and registrations obtained or applied in connection with (1) work on Bratz prior to January 1, 2001; (2) work related to the release of the First Generation Bratz dolls; and (3) work related to any work Bryant performed with, for or on behalf of MGA during the term of Bryant's employment with Mattel.

As discussed previously, the Discovery Master finds that the First Generation Bratz limitation is improper. Therefore, Bryant is ordered to produce all non-privileged documents responsive to Request No. 9.

IV. CONCLUSION

For the reasons set forth above, the Discovery Master orders as follows:

1. Mattel's motion to compel production of documents responsive to its First Set of Requests for Production, Request Nos. 2, 9, 11, 12, 13, 19, 20, 23, 27, 28, 29, 30, 31, 32, 33, 34,

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

16

EXHIBIT _____ 6 _____

PAGE _____ 81 _____

35, 36, 37, 40, 41, 42. 43. 45, 46, 48, 49, 51, 53, 54, and 55, is GRANTED.  However, Bryant need not produce his tax returns, on the condition that he complies fully with Request Nos. 29, 30, 31, 32, 33, 34, 35, 36, 45, and 46.

2.  Bryant shall produce all redacted documents in un-redacted form, except for redactions that are justified by the attorney-client privilege or work product doctrine or his telephone records pursuant to the terms of this Order.

3.  Bryant shall serve a complete privilege log in conformity with Rule 26(b)(5), Fed.R.Civ.P.

4.  Pursuant to Rule 34, Fed.R.Civ.P., Bryant shall produce the hard drives of his computers for forensic imaging.

5.  Bryant shall complete his production by producing missing attachments, fax cover pages and all other missing responsive documents.

6.  Mattel's request for an award of sanctions in the amount of $7,805 is DENIED.

7.  Bryant shall comply with this Order no later than February 23, 2007.

Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery Master, Mattel shall file this Order with the Clerk of Court forthwith.

IT IS SO ORDERED.

Dated: January 25, 2007

HON. EDWARD A. INFANTE (Ret.)
Discovery Master

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

17

EXHIBIT _____ 6 _____

PAGE _____ 82 _____

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on January 25,

2007, I served the attached ORDER GRANTING MATTEL'S MOTION TO COMPEL

PRODUCTION OF DOCUMENTS in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| Robert Millman Esq. | Littler Mendelson | rfmillman@littler.com |
| Douglas Wickham Esq. | Littler Mendelson | dwickham@littler.com |
| Keith Jacoby Esq. | Littler Mendelson | kjacoby@littler.com |
| Dominic Messiha Esq | Littler Mendelson | dmessiha@littler.com |
| Diba Restagar Esq. | Littler Mendelson | drestagar@littler.com |
| Michelle Park Esq. | Littler Mendelson | mpark@littler.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | jbq@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Valerie Nannery Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | valerienannery@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Morris Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgetmorris@quinnemanuel.com |
| Tamar Buchjaklan Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchjakjian@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| Benjamin Kim Esq. | O'Melveny & Myers LLP | bjkim@omm.com |
| Hamid Jabbar Esq. | O'Melveny & Myers LLP | hjabbar@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Well & Shapiro, LLP | pglaser@chrismill.com |

EXHIBIT _____ 6
PAGE _____ 83