# EXHIBIT 7

CONFORMED COPY
LODGED                    FILED

2007 MAY 16  PM 1: 59   2007 MAY 16  PM 2: 00

CLERK U.S. DISTRICT COURT   CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.     CENTRAL DIST. OF CALIF.
       RIVERSIDE                   RIVERSIDE
                          BY

1 | Hon. Edward A. Infante (Ret.)
  | JAMS
2 | Two Embarcadero Center
  | Suite 1500
3 | San Francisco, California 94111
  | Telephone:    (415) 774-2611
4 | Facsimile:    (415) 982-5287

5

6

7                    UNITED STATES DISTRICT COURT

8                   CENTRAL DISTRICT OF CALIFORNIA

9                         EASTERN DIVISION

10

11 | CARTER BRYANT, an individual,        | CASE NO. C 04-09049 SGL (RNBx)
   |                                      | JAMS Reference No. 1100049530
12 |        Plaintiff,                    |
   |                                      |
13 |    v.                                | Consolidated with
   |                                      | Case No. CV 04-09059
14 | MATTEL, INC., a Delaware corporation,| Case No. CV 05-2727
   |                                      |
15 |        Defendant.                    | **ORDER GRANTING MATTEL'S
   |                                      | MOTION TO COMPEL PRODUCTION
16 |                                      | OF DOCUMENTS AND
   |                                      | INTERROGATORY RESPONSES BY
17 | CONSOLIDATED WITH                    | MGA**
   | MATTEL, INC. v. BRYANT and           |
18 | MGA ENTERTAINMENT, INC. v. MATTEL,   |
   | INC.                                 |
19 |                                      |
20

                           I. INTRODUCTION
21
        On February 2, 2007, Mattel, Inc. ("Mattel") submitted its Motion To Compel Production
22
   of Documents and Interrogatory Answers by MGA Entertainment, Inc. ("MGA"). On February
23
   20, 2007, MGA submitted its opposition brief, and on February 26, 2007, Mattel submitted a
24
   reply brief. The matter was heard on March 5, 2007. Thereafter the motion was taken under
25
   submission pending the parties' submission of a proposed protective order, which was received
26

27

28
   Bryant v. Mattel, Inc.,                                                                1
   CV-04-09049 SGL (RNBx)

                         EXHIBIT ___7___
                         PAGE ___84___

1  on April 23, 2007. Having considered the motion papers and comments of counsel at the hearing,

2  Mattel's motion to compel is granted.

## II. BACKGROUND

A. Requests for Documents

In June of 2004, two months after Mattel filed suit against Bryant, and before MGA became a party to the action, Mattel served MGA with an eight-page subpoena for twenty-one categories of documents, to be produced in ten days. MGA filed a motion to quash, which the court granted because of the short amount of time provided for compliance with the subpoena. The parties met and conferred in July of 2004, and reached an agreement to limit the scope of some of Mattel's requests. In particular, the parties agreed to limit production to the "first generation" Bratz dolls. On August 12, 2004, MGA produced documents.

In 2005, the parties stipulated to supplementing their document productions on May 16, 2005. Mattel agreed to continue limiting its discovery requests to "first generation" Bratz dolls.

In September of 2006, MGA made a supplemental production of documents. On February 5, 2007, MGA produced about 2,300 pages of documents to replace earlier produced documents with legibility problems. On February 20, 2007, MGA produced an additional 224 pages of documents to replace earlier produced documents with legibility problems.

Mattel now moves to compel MGA to produce documents responsive to its requests. As a preliminary matter, Mattel contends that MGA's production is deficient because it contains redactions and cut-off text. Further, Mattel contends that MGA's production is incomplete with respect to essentially five categories of documents. First, Mattel contends that MGA is withholding documents relating to the origins of Bratz and Bryant's work for MGA. Mattel believes that MGA's production is incomplete based upon its review of documents that have been produced by third party Steven Linker. According to Mattel, Linker's documents from October of 2000 show that Bratz was much farther along before Bryant left Mattel than MGA or Bryant previously represented. Mattel also contends that MGA's responses to the document requests

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

2

EXHIBIT ___7___

PAGE ___85___

1   contain inappropriate limitations, such as MGA's statement that it will produce "relevant and

2   responsive non-objectionable documents" or only that it will produce documents "sufficient" to

3   show when certain dates relating to Bratz occurred. Mattel contends that these "carve outs

4   purport to allow MGA to cherry-pick what it will and will not produce to Mattel." Mattel's

5   Separate Statement at 17:11-13. Mattel also contends that the carve-outs fail to provide notice of

6   what is or is not being withheld. Mattel also contends that MGA's objections based upon its

7   confidentiality concerns or the privacy rights of third parties are unwarranted in light of the

8   protective order in place. In addition, Mattel contends that MGA's objection to producing

9   documents relating to activities or conduct in foreign countries is wholly improper because those

10  documents may contain information relevant to Mattel's claims.

11       Second, Mattel seeks documents relating to the origins of Bratz, regardless of whether

12  such documents relate to the "first generation" Bratz dolls. Mattel argues that whether the work

13  ultimately resulted in Bratz dolls that were released at a particular time does not matter for

14  discovery purposes. Mattel contends that the works created by Bryant during his Mattel

15  employment are highly relevant because Mattel owns them, regardless of whether they resulted in

16  a Bratz doll released at a particular time.[1]

17       Mattel next contends that MGA is improperly withholding documents about designs

18  Bryant created on Bratz dolls that were released after June 2001, even though such designs may

19  be derivative of work he did when employed by Mattel. Mattel contends that it is entitled to

20  explore whether such works and the profits from Bratz dolls other than the "first generation"

21  Bratz dolls were derived from works owned by Mattel both for purposes of establishing liability

22  and damages. Furthermore, Mattel asserts that the "first generation" limitation on discovery is

23  improper in light of Bryant's continuing duty not to use Mattel's confidential and proprietary

24  information as well as MGA's unfair competition claims.

25  _____

26       [1]  Mattel also reiterates many of the arguments it made previously in connection with its earlier filed motion
    to compel Bryant to produce documents.

27

28
    Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

                                                                                                    3

EXHIBIT ___7___

PAGE ___86___

1        Mattel also asserts that MGA is improperly withholding documents relating to products,

2  services and matters other than those relating to "dolls." According to Mattel, it has evidence that

3  Bryant conceived of marketing and advertising ideas for the Bratz line while he was employed by

4  Mattel. Mattel contends that any such ideas or contributions may belong to it pursuant to the

5  Inventions Agreement.

6        Third, Mattel seeks documents relating to all of MGA's payments to Bryant, and not just

7  payments for the "first generation" Bratz dolls. Mattel asserts that such information is relevant

8  because (1) Mattel seeks all benefits Bryant received as a result of violating his duties to Mattel;

9  (2) under the Copyright Act, Mattel is entitled to all profits from infringement as well as actual

10  damages; and (3) payments may show when and what trade secret information Bryant and other

11  defendants allegedly misappropriated from Mattel.

12        Fourth, Mattel seeks documents relating to MGA's agreements with Bryant. Mattel

13  contends that all agreements between Bryant and MGA are relevant, not just the original

14  September 18, 2000 agreement. In particular, Mattel contends that it is entitled to discover all

15  documents relating to MGA and Bryant's alleged joint defense agreement because such

16  information would be relevant to demonstrate bias and lack of credibility.

17        Fifth, Mattel seeks production of all declarations, affidavits and other sworn written

18  statements from other cases that refer or relate to Bratz or Angel. Mattel contends that such

19  information may reveal relevant information about the date of creation of Bryant's Bratz

20  drawings.

21        In response, MGA denies withholding responsive documents and asserts that it has

22  produced volumes of documents responsive to Mattel's requests. In particular, MGA represents

23  that it has produced all responsive and relevant documents that it was able to locate in response to

24  request nos. 6, 7, 9, 26, 27, 32, 33, 34, 35, 36, 55, 69, and 70. Further, MGA asserts that even

25  before the motion was filed, it had agreed to address the vast majority of the issues raised in this

26  motion. In particular, MGA represents that it is diligently working to produce documents related

27

28

EXHIBIT _____7_____

PAGE _____87_____

1 │ to Bratz other than "first generation" Bratz in response to request nos. 1, 2, 8, 10, 11, 43, 45, 46,

2 │ 49, 50, 51, 53, 57, 59, 61, 63, 64, 66, 96, 97, 98, 99 and 100. MGA represents that it informed

3 │ Mattel that it would produce documents pertaining to subsequent generations of Bratz dolls that

4 │ have been released on the market. In addition, MGA represents that it has agreed to produce

5 │ documents relevant to Bratz or Prayer Angels that it received from Union Bank. More

6 │ specifically, MGA represents that it agreed to review and produce documents provided to it by

7 │ Union Bank for the years 1999 – 2001 concerning payments that it could identify as being for

8 │ Bratz or Prayer Angels. MGA also represents that it has agreed to produce royalty statements.

9 │ Therefore, MGA views the motion as unnecessary.

10 │     MGA next contends that Mattel's motion should be denied for the following additional

11 │ reasons. First, MGA contends that Mattel is not entitled to MGA's product design documents for

12 │ unreleased products. MGA asserts that its product design documents for its unreleased toy

13 │ concepts are among its most highly valuable trade secrets. Furthermore, MGA contends that

14 │ designs and drawings for products currently under development, over six years after Bryant first

15 │ created his original Bratz drawings, have no relevance to any of Mattel's claims. In the event that

16 │ documents relating to unreleased products are ordered produced, MGA requests a protective order

17 │ under Rule 26(c), Fed.R.Civ.P., that limits the dissemination of its documents more drastically

18 │ than the current protective order provides. In the alternative, MGA requests that any order

19 │ compelling production of documents relating to unreleased products should essentially be stayed

20 │ until after MGA's products are publicly released.

21 │     Second, MGA contends that Mattel is not entitled to information concerning Bryant's

22 │ attorneys' fees because the information is privileged. Furthermore, MGA contends that the

23 │ information is not relevant to demonstrate bias because "there is no dispute that Bryant's interests

24 │

25 │

26 │

27 │

28 │

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

5

EXHIBIT ___7___

PAGE ___88___

1  in this case are aligned with those of MGA, and that Bryant is 'biased' in that sense." MGA's

2  Opposition at 24:9-12.[2]

3       Third, MGA asserts that Mattel is not entitled to review all non-public witness statements

4  and litigation documents concerning Bratz for a variety of reasons, including because Mattel has

5  refused to produce similar types of documents. More significantly, MGA contends that Mattel's

6  requests for non-public witness statements are "a blatant attempt to avoid the discovery

7  limitations imposed by both the Federal Rules of Civil Procedure and those additional limitations

8  imposed by this Court." MGA's Opposition at 25:6-7. MGA explains its position as follows.

9  MGA is involved in litigation against a number of counterfeiters and infringers in Asia. In 2003,

10  Mattel allegedly began feeding documents concerning "Toon Teens" to those defendants in an

11  attempt to prove that Bryant created Bratz while working at Mattel, even though Mattel

12  abandoned its claims based upon "Toon Teens" in this court. Thereafter, those defendants took

13  the position that MGA did not own, and therefore could not enforce, the rights to Bratz. MGA

14  was thus forced to litigate the issue of ownership. MGA contends that "[i]n effect, by prompting

15  foreign counterfeiters to espouse a theory that Mattel now admits has no merit, Mattel has created

16  a situation in which MGA has been forced to give testimony and provide evidence related to

17  issues in this case that Mattel now seeks to obtain wholesale." MGA's Opposition at 25:5-24.

18       Fourth, MGA contends that Mattel is not entitled to documents concerning a family

19  dispute between MGA's chief executive officer and his brother because such documents are in no

20  way relevant to this lawsuit. MGA explains that the brothers were involved in an arbitration

21  proceeding relating to MGA's CEO's purchase of his brother's interest in MGA. Moreover,

22  MGA contends that the brothers were bound by a protective order prohibiting the use of any

23  documents or testimony for any purpose other than the arbitration.

24

25  ―――――――――――――――

26      [2]  Nevertheless, MGA represents that it has produced the only non-privileged document responsive to the

    request.

27

28      Bryant v. Mattel, Inc.,

    CV-04-09049 SGL (RNBx)               6

EXHIBIT ____7____

PAGE ____89____

1    Fifth, MGA contends that Mattel is not entitled to its chief executive officer's personnel
2    files because they contain confidential information and are not relevant to the lawsuit. Sixth,
3    MGA contends that Mattel is not entitled to obtain documents from MGA that belong to, and are
4    in the possession, custody and control of, its indirect foreign subsidiary, MGA HK Ltd. Lastly,
5    MGA objects to producing documents relating to any testing performed to determine the date that
6    Bratz documents were created. MGA contends that such discovery is premature and should not
7    proceed until experts are designated.

8         B. Interrogatories

9         On April 28, 2005, Mattel served its Second Set of Interrogatories. On May 20, 2005,
10   however, the district court stayed the action. On May 17, 2006, the district court lifted the stay.
11   On May 30, 2006, MGA responded to the interrogatories.

12        Mattel contends that MGA's responses to the interrogatories were untimely. Further,
13   Mattel contends that the interrogatory responses to numbers five through eleven are deficient
14   because they lack substantive information and consist almost entirely of objections. MGA
15   responds that the motion is moot because it is prepared to provide supplemental responses to its
16   interrogatories. MGA does not otherwise assert any additional grounds for opposing Mattel's
17   motion to compel responses to interrogatories.

18                              III. DISCUSSION

19        A. Rule 26 of the Federal Rules of Civil Procedure

20        Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain
21   discovery regarding any matter, not privileged, that is relevant to the claim or defense of any
22   party." Fed.R.Civ.P. 26(b)(1). "Relevant information need not be admissible at trial if the
23   discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id.
24   Discovery shall, however, be limited by the court if it determines that: "(i) the discovery sought is
25   unreasonably cumulative or duplicative, or is obtainable from some other source that is more
26   convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample
27
28
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

                                                                                    7

EXHIBIT ___7___

PAGE ___90___

1 | opportunity by discovery in the action to obtain the information sought; or (iii) the burden or

2 | expense of the proposed discovery outweighs its likely benefit, taking into account the needs of

3 | the case, the amount in controversy, the parties' resources, the importance of the issues at stake in

4 | the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P.

5 | 26(b)(2).

6 |      B.  Document Requests

7 |          1.  Requests re Origins of Bratz and Bryant's Work for MGA (Nos. 6, 26, 27, 32, 33,

8 |          34, 35, 51, 53, 55, 64, 69, 96, 97, 98, 99, 100

9 |      The requests above seek discoverable information regarding the origins of Bratz and

10 | Bryant's work for MGA.  MGA represents that it has produced all responsive documents in

11 | response to request nos. 6, 26, 27, 32, 33, 34, 35, 55,and  69 (MGA's Opposition at 13:4-5), and is

12 | "diligently working to produce documents in response to" request nos. 51, 53, 64, 96, 97, 98, 99,

13 | and 100, including documents related to Bratz other than "first generation" (MGA's Opposition at

14 | 14:1-4 and note 39).  MGA does, however, object to producing design documents for unreleased

15 | products and documents from MGA Hong Kong.

16 |      As a threshold matter, MGA's responses are inadequate to the extent MGA has restricted

17 | its production to "relevant and responsive non-objectionable documents" or documents

18 | "sufficient" to show when events relating to Bratz occurred.  These restrictions suggest that MGA

19 | might be excluding documents that are responsive to the request based upon its unilateral

20 | determination of what is "relevant" or "sufficient."  Mattel shall provide the responses to

21 | document requests ordered herein without these restrictions.

22 |                    Design Documents for Unreleased Products

23 |      MGA's design documents for unreleased products are relevant to Mattel's claims and

24 | defenses and must be produced.  See Order Modifying Protective Order.  On April 23, 2007, the

25 | parties submitted a stipulation to modify the existing protective order to limit the disclosure of

26 | design documents for unreleased products that constitute trade secret information.  See Stipulation

27 |

28 |

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

8

EXHIBIT ___7___

PAGE ___91___

1   to Modify Protective Order; And Proposed Order Thereon ("stipulation"). The parties' stipulation

2   has been approved and entered as an order of the court. MGA is ordered to produce design

3   documents for unreleased products that are responsive to Mattel's document requests in

4   accordance with the terms of the stipulation and order.

5                             Documents from MGA Hong Kong

6         Documents relating to activities or conduct in foreign countries are relevant and

7   discoverable because Mattel has evidence indicating that MGA Hong Kong was involved with

8   Bratz. Nevertheless, MGA objects to producing documents from Hong Kong unless Mattel

9   provides reciprocal discovery from its subsidiaries.

10        Whether MGA is entitled to discovery from Mattel's subsidiaries has not been briefed in

11   the context of this motion, and therefore is not addressed herein. MGA is ordered to produce

12   documents from MGA Hong Kong.

13        Mattel's motion is granted with respect to request nos. 6, 26, 27, 32, 33, 34, 35, 51, 53, 55,

14   64, 69, 96, 97, 98, 99, 100.

15            2. Additional Requests re Origins of Bratz (Nos. 7, 8, 9, 10, 11, 12, 13, 36, 46, 57, 59,

16               61, 63, 66, 67, 70, 88, 90, 91

17        Mattel contends that MGA is improperly limiting its document production to the "first

18   generation" Bratz dolls. MGA represents, however, that it has agreed to produce subsequent

19   generations of Bratz products (MGA's Opposition at 9:20-25, 13:6-14:1), except design

20   documents for yet unreleased products.

21        As stated previously, design documents for yet unreleased products are relevant and

22   discoverable. See Order Modifying Protective Order. Accordingly, MGA is ordered to produce

23   all non-privileged documents that are responsive to request nos. 7, 8, 9, 10, 11, 12, 13, 36, 46, 57,

24   59, 61, 63, 66, 67, 70, 88, 90, and 91.

25      //

26      //

27

28                                           9

EXHIBIT ___7___

PAGE ___92___

1      3. MGA's Payments to Bryant (Nos.43, 45)

2          MGA represents that it has already agreed to produce documents related to Bratz, without

3      limiting its production to "first generation" Bratz. MGA's motion at 13:7-14:3. Nevertheless,

4      Mattel is entitled to an order compelling production of such documents by a date certain. Mattel's

5      motion is granted with respect to request nos. 43 and 45.

6          4. MGA's Agreements with Bryant (Nos. 1, 2, 49, 50)

7          MGA represents that it has already agreed to produce non-privileged documents

8      responsive to request nos. 1, 2, 49, and 50, even though it believes that such documents are not

9      relevant (MGA's motion at 13:7-14:3). These requests seek documents relating to fee or

10     indemnity agreements between MGA and Bryant .

11         Fee or indemnity agreements are relevant to demonstrate bias and lack of credibility.

12     Accordingly, Mattel's motion is granted with respect to request nos. 1, 2, 49, and 50. Any

13     responsive documents withheld on the basis of a privilege must be properly identified in a

14     privilege log.

15         5. Declarations, Affidavits & Other Sworn Written Statements (Nos. 37, 38, 39, 40,

16         41,

17         In request nos. 37, 38, 390, 40, and 41, Mattel seeks production of declarations, affidavits,

18     and other sworn written statements from cases that refer or relate to Bratz or Angel. Mattel

19     anticipates that these documents could provide evidence relating to the conception date for Bratz.

20         Request nos. 37, 38, 39, 40, and 41 seek relevant information regarding the conception

21     date for Bratz. MGA admits in its opposition brief that this issue was litigated in its suits against

22     alleged counterfeiters and infringers.[3] The issue also appears to have been raised in the

23     arbitration proceedings between MGA's chief executive officer, Isaac Larian, and his brother

24     Farhad Larian. In those proceedings, Farhad Larian alleged that Isaac Larian concealed from him

25     ─────────────────────

26     [3] Although MGA questions the propriety of Mattel providing assistance to the alleged counterfeiters and
       infringers in raising ownership of Bratz as a defense against MGA's claims, MGA has not cited to any legal authority
       that prohibits Mattel's conduct.

27

28     Bryant v. Mattel, Inc.,                                                              10
       CV-04-09049 SGL (RNBx)

EXHIBIT ___7___
PAGE ___93___

1  that MGA was developing Bratz by early 2000. Nevertheless, MGA objects to producing

2  documents from the Larians' arbitration on the grounds that the arbitration was governed by a

3  protective order that prohibits the use of any documents or testimony for any purpose other than

4  the arbitration. MGA, however, has not provided any evidence of the protective order.

5  Accordingly, Mattel's motion to compel is granted as to request nos. 37, 38, 39, 40 and 41.[4]

6         6. Documents Regarding Date-Testing (Request No. 92)

7         Mattel's request no. 92 seeks documents that refer or relate to "any testing of or sampling

8  from any documents that refer or relate to Bratz or Bryant, including without limitation any such

9  testing or sampling in connection with ink, paper or chemical analysis to date any such documents

10  and including without limitation all results and reports relating thereto." MGA contends that the

11  request is premature, and should proceed in the course of expert discovery.

12         The request calls for relevant discovery and there is no basis for delaying production of

13  responsive documents, other than expert reports. The timing of expert reports is governed by

14  Rule 26(a)(2)(C), Fed.R.Civ.P. Accordingly, Mattel's motion is granted as to request no. 92.

15         C. Interrogatories

16         Mattel contends that MGA's responses to interrogatories were untimely, and therefore

17  MGA has waived its objections to the interrogatories. Pursuant to Rule 33(b)(3), Fed.R.Civ.P.,

18  responses to interrogatories are due thirty days after service. In this case, Mattel served its

19  interrogatories on April 28, 2005, and responses were initially due May 31, 2005. The district

20  court, however, issued a stay on May 20, 2005, twenty-two days after the interrogatories were

21  served. The district court lifted the stay on May 17, 2006.

22

23

24

25     [4] In its discussion of the arbitration proceedings, MGA raises an objection to producing Isaac Larian's

26  personnel file based upon privacy grounds. The personnel file may have documents relevant to Bratz, and therefore should be produced. The protective order is sufficient to alleviate Mr. Isaac Larian's privacy concerns.

27

28  Bryant v. Mattel, Inc.,
   CV-04-09049 SGL (RNBx)                                                        11

EXHIBIT 7
PAGE 94

1    Neither party has cited to any caselaw governing the calculation of the 30-day period

2    when there is an intervening stay in discovery. In the absence of any caselaw, MGA's responses

3    will be treated as timely in order to preserve any valid objections MGA may have asserted.

4    Interrogatory No. 5 seeks the identity of each and every person who was involved in the

5    conception, origin, creation, design, development, sculpting, engineering, reduction to practice,

6    tooling or painting of, or who otherwise produced or contributed to any embodiment of Bratz

7    before December 31, 2001, including a description of each person's role and the start and end

8    dates of each person's involvement. In response, MGA asserted numerous objections, but did

9    provide the names of five individuals.

10    The interrogatory clearly seeks information relevant to the claims at issue. MGA's

11   objections are without merit. The interrogatory is not vague, ambiguous, compound or overbroad.

12   Nor has MGA carried its burden of establishing that the interrogatory is unduly burdensome, calls

13   for confidential, proprietary or commercially sensitive information, or seeks information

14   protected by the attorney-client privilege. Furthermore, MGA's response is incomplete insofar as

15   it fails to provide the description of each person's role and the start and end dates of each person's

16   involvement. Accordingly, MGA is ordered to provide a complete response to Interrogatory No.

17   5 and identify documents in compliance with Rule 33(d), Fed.R.Civ.P.

18    Interrogatory No. 6 seeks the same information as Interrogatory No. 5 with respect to any

19   embodiment of Angel. MGA is ordered to provide a complete response to Interrogatory No. 6 for

20   the reasons previously discussed in connection with Interrogatory No. 5.

21    Interrogatory No. 7 asks MGA to identify each and every embodiment of Bratz prior to

22   December 31, 2001. In response, MGA asserted numerous objections and did not provide any

23   substantive information.

24    MGA's objections are without merit. The interrogatory clearly seeks information relevant

25   to establishing when Bryant first conceived Bratz. The interrogatory is not vague, ambiguous,

26   compound or overbroad. Nor has MGA carried its burden of establishing that the interrogatory is

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

12

EXHIBIT ____7____

PAGE ____95____

1  unduly burdensome, calls for confidential, proprietary or commercially sensitive information, or

2  seeks information protected by the attorney-client privilege.  Accordingly, MG is ordered to

3  provide a complete response to Interrogatory No. 7.

4      Interrogatory No.8 asks MGA to identify each and every embodiment of Angel.  MGA is

5  ordered to provide a complete response to Interrogatory No. 8 for the reasons previously

6  discussed in connection with Interrogatory No. 7.

7      Interrogatory No. 9 requires MGA to identify each and every sworn statement that refers

8  or relates to the conception, origin, creation, design, development, sculpting, engineering, tooling

9  or painting of Bratz.  In response, MGA asserted numerous objections and did not provide any

10  substantive information.

11      The interrogatory seeks information relevant to establishing when Bryant first conceived

12  Bratz.  Furthermore, MGA's boiler-plate objections are unsubstantiated.  Accordingly, MGA is

13  ordered to provide a complete response to Interrogatory No. 9.

14      Interrogatory No. 10 requires MGA to identify each and every instance in which Bratz

15  was shown, displayed, or exhibited prior to June 1, 2001, including by stating the date(s) on

16  which each such instance occurred, the location of each show or exhibit, and the identity of

17  persons with knowledge of the shows or exhibits.  In response, MGA asserted numerous

18  objections and provided the following information:  Hong Kong Toy Fair in Hong Kong in or

19  about January 2001 and New York Toy Fair, New York, in or about February 2001.

20      Once again, MGA's boiler-plate objections are unsubstantiated.  The information is

21  potentially relevant to establish when Bryant conceived Bratz.  Further, the response is

22  incomplete insofar as it fails to identify any persons with knowledge.  Therefore, MGA is ordered

23  to provide a complete response to Interrogatory No. 10.

24      Interrogatory No. 11 requires MGA to state the "number for each and every telephone,

25  including without limitation each office, home and cell phone number, in the name of, for the

26  benefit of or for the account of Isaac Larian and any other telephone that Isaac Larian used from

27

28  Bryant v. Mattel, Inc.,
   CV-04-09049 SGL (RNBx)

13

EXHIBIT _____7_____

PAGE _____96_____

1  January 1, 1998 through the present, and IDENTIFY each and every carrier (including without
2  limitation any long-distance carrier) for each such number.  In response, MGA asserted numerous
3  boiler-plate objections.

4    Once again, MGA has failed to substantiate any of its objections with supporting
5  declarations or legal authorities.  Accordingly, all objections are overruled and MGA is ordered to
6  provide a full response to Interrogatory No. 11.

7  IV. CONCLUSION

8    For the reasons set forth above, Mattel's motion to compel production of documents is
9  granted.  MGA shall produce all non-privileged documents that are responsive to the requests
10  identified in this Order.  Further, MGA shall produce all documents in un-redacted form, except
11  for redactions that are justified by the attorney-client privilege or work product doctrine.  Mattel's
12  motion to compel interrogatory answers is also granted.  MGA shall produce documents and
13  provide responses to interrogatories consistent with this Order, and produce a privilege log in
14  compliance with Rule 26(b)(5), Fed.R.Civ.P., no later than May 31, 2007.  Mattel's request for
15  sanctions is denied.

16    Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery
17  Master, Mattel shall file this Order with the Clerk of Court forthwith.

21  Dated: May /5, 2007

HON. EDWARD A. INFANTE (Ret.)
Discovery Master

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

14

EXHIBIT 7
PAGE 97

## PROOF OF SERVICE BY E-MAIL

I, Anthony Sales, not a party to the within action, hereby declare that on May 15,

2007, I served the attached ORDER GRANTING MATTEL'S MOTION TO COMPEL

PRODUCTION OF DOCUMENTS AND INTERROGATORY RESPONSES BY MGA in

the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| Robert Millman Esq. | Littler Mendelson | rfmillman@littler.com |
| Douglas Wickham Esq. | Littler Mendelson | dwickham@littler.com |
| Keith Jacoby Esq. | Littler Mendelson | kjacoby@littler.com |
| Dominic Messiha Esq | Littler Mendelson | dmessiha@littler.com |
| Diba Rastegar Esq. | Littler Mendelson | drastegar@littler.com |
| Michelle Park Esq. | Littler Mendelson | mpark@littler.com |
| Alaya B. Meyers, Esq. | Littler Mendelson | ameyers@littler.com |
| Brady Mitchell, Esq. | Littler Mendelson | bmitchell@littler.com |
| Carol Miller, Esq. | Littler Mendelson | cmiller@littler.com |
| Ryan P. Eskin, Esq. | Littler Mendelson | reskin@littler.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | jbq@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Morris Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgetmorris@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on May 15, 2007, at San Francisco, California.

Anthony Sales

EXHIBIT ___7___

PAGE ___98___

# EXHIBIT 8



CONFORMED COPY

1  Hon. Edward A. Infante (Ret.)
   JAMS
2  Two Embarcadero Center
   Suite 1500
3  San Francisco, California 94111
   Telephone:    (415) 774-2611
4  Facsimile:    (415) 982-5287

5

6                    UNITED STATES DISTRICT COURT

7                   CENTRAL DISTRICT OF CALIFORNIA

8                         EASTERN DIVISION

9

10

11  CARTER BRYANT, an individual,          CASE NO. C 04-09049 SGL (RNBx)
                                           JAMS Reference No.1100049530
12          Plaintiff,

13      v.                                 Consolidated with
                                           Case No. CV 04-09059
14  MATTEL, INC., a Delaware corporation,  Case No. CV 05-2727

15          Defendant.                     **ORDER GRANTING IN PART AND
                                           DENYING IN PART MATTEL'S
16                                         MOTION TO ENFORCE THE
                                           COURT'S ORDER OF JANUARY 25,
17                                         2007, TO COMPEL PRODUCTION OF
                                           DOCUMENTS BY CARTER BRYANT
18                                         AND FOR SANCTIONS**

19  CONSOLIDATED WITH
    MATTEL, INC. v. BRYANT and
20  MGA ENTERTAINMENT, INC. v. MATTEL,
    INC.
21

22

23

24                        I. INTRODUCTION

25      On May 15, 2007, Mattel, Inc. ("Mattel") submitted its "Motion to Enforce the Court's

26  Order of January 25, 2007, to Compel Production of Documents by Carter Bryant and for

27

28  Bryant v. Mattel, Inc.,                                              1
    CV-04-09049 SGL (RNBx)

                        EXHIBIT        8
                        PAGE          99                    C6|19|C7

1  Sanctions." On May 18, 2007, Carter Bryant ("Bryant") submitted his opposition brief, and on
2  May 23, 2007, Mattel submitted a reply brief. Mattel essentially seeks an order compelling
3  Bryant to produce copies of a document identified on Bryant's privilege log that has been
4  withheld on the basis of the attorney-client privilege.[1] Having considered all the papers submitted
5  by the parties, Mattel's motion to produce the two documents withheld under a claim of privilege
6  is granted and the request for sanctions is denied.

II. BACKGROUND

8  In early January of 2007, Mattel filed a motion to compel Bryant to produce, among other
9  things, his fee agreement with MGA in response to Request Nos. 2, 13, and 48. Bryant argued
10  that such agreements are irrelevant and privileged. The Discovery Master held that the
11  documents relating to fee or indemnity agreements between MGA and Bryant are relevant to
12  demonstrate bias and lack of credibility. Accordingly, the Discovery Master ordered Bryant to
13  produce, among other things, all non-privileged documents responsive to Request Nos. 2, 13, and
14  48, and to produce a privilege log in compliance with Rule 26(b)(5), Fed.R.Civ.P. See Discovery
15  Master's Order Granting Mattel's Motion to Compel Production of Documents, dated January 25,
   2007 (the "January 25, 2007 Order").

16  On March 16, 2007, Bryant served a privilege log that listed as items Nos. 9 and 10 copies
17  of a fee agreement between MGA and the law firm of Littler Mendelson, P.C. ("Littler"). Littler
18  is counsel of record for Bryant in this action. Notably, however, the privilege log indicates that
19  the author of the fee agreement is "Robert F. Millman, Esq. (attorney with Littler Mendelson,
20  P.C., counsel for MGA Entertainment, Inc., and acting in his capacity as counsel for MGA
21  Entertainment, Inc.)." Proctor Decl., Ex. 5. The recipient is identified as "Daphne Gronich, Esq.

---

[1] The parties were able to resolve a portion of the motion during the briefing process. In addition to the fee agreements, Mattel originally sought production of a communication between MGA's patent counsel to Mr. Bryant regarding a patent for interchangeable doll footgear and feet. A day before the opposition brief was due, Bryant offered to produce the communication if Mattel agreed that doing so would not constitute a waiver of privilege as to any other document or testimony. Mattel accepted Bryant's offer. See Bryant's Opposition at 1 and Mattel's Reply at 1. Mattel continues to assert, however, that Bryant's conduct warrants sanctions because Bryant should have offered to produce the communication during the meet and confer process.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT ___8___

PAGE ___100___

2

1  (general counsel for MGA Entertainment, Inc.)."  Id.  Privilege Log Entry Nos. 9 and 10 are both

2  described as an "addendum to retainer agreement between Littler Mendelson, P.C. and MGA

3  Entertainment, Inc."  Id.  The only difference in the description is that Privilege Log Entry No. 9

4  is "executed," whereas No. 10 is a "draft."  Id.  In his opposition brief, Bryant represents that

5  items No. 9 and No. 10 are "the same document, save that one copy has two signatures and the

6  other only one."  Id.  Bryant is not a party to the fee agreement.  MGA, however, has apparently

7  asserted the attorney-client privilege as to item Nos. 9 and 10 and Bryant is withholding the

8  document pursuant to their joint defense agreement.  Bryant's Opposition at 3.

9        Mattel contends that the fee agreement identified as items No. 9 and 10 should be

10  produced pursuant to the January 25, 2007 Order.  Mattel contends that although Bryant was not a

11  party to that agreement, the agreement between MGA and Littler is nevertheless an agreement for

12  MGA to pay Bryant's legal fees and is relevant to show Bryant's bias and lack of credibility.

13  Mattel further contends that the agreement between MGA and Littler is not privileged under

14  Ninth Circuit law.  See e.g. United States v. Blackman, 72 F.3d 1418, 1424 (9th Cir. 1995) ("[a]s a

15  general rule, client identity and the nature of the fee arrangement between attorney and client are

16  not protected from disclosure by the attorney-client privilege."); Clarke v. American Commerce

17  Natl. Bank, 974 F.2d 127, 129 (9th Cir. 1992) ("Our decisions have recognized that the identity of

18  the client, the amount of the fee, the identification of payment by case file name, and the general

19  purpose of the work performed are usually not protected from disclosure by the attorney-client

    privilege.").

20        Bryant contends that the documents at issue are in his possession solely because they were

21  provided to his counsel under a joint defense agreement.  He contends that this joint defense

22  agreement prevents him from waiving the attorney-client privilege asserted by MGA.  He further

23  asserts that if Mattel wants to challenge the privilege asserted, Mattel should seek the document

24  directly from MGA.

25                          III. DISCUSSION

26        For reasons already set forth in the January 25, 2007 Order, the documents at issue are

27  relevant to the claims and defenses in the case.  Pursuant to the terms of the January 25, 2007

28

EXHIBIT _____ 8
PAGE _____ 101

1  Order, Bryant was required to either produce the documents or identify them on a privilege log.

2  As the party withholding the documents, Bryant was required to substantiate the claim of

3  privilege under Federal Rule of Civil Procedure 26(b)(5). He has failed to do so. Bryant has not

4  made any attempt to submit affidavits or other admissible evidence to establish that, for instance,

5  the withheld documents contain confidential attorney-client communications made for the

6  purpose of giving legal advice. Nor has he made any challenge to the caselaw cited by Mattel

7  holding that, in general, fee agreements are not privileged under Ninth Circuit law. That Bryant

8  and MGA are parties to a joint defense agreement does not excuse Bryant from substantiating the

9  underlying claim of attorney-client privilege. See Griffin v. Davis, 161 F.R.D. 687, 691 (C.D.

10  Cal. 1995).

11    Moreover, MGA, which participated in the meet and confer on this motion and was served

12  with the motion[2], has not made any attempt to substantiate its claim of the attorney-client

13  privilege other than the unsupported assertions in Bryant's privilege log. Therefore, the claim of

14  privilege is overruled as to privilege log items Nos. 9 and 10 and the documents are ordered

15  produced.

IV. CONCLUSION

16    For the reasons set forth above, Bryant is ordered to produce privilege log items Nos. 9

17  and 10 forthwith. Mattel's motion for sanctions is denied.

18    Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

19  Master, Bryant shall file this Order with the Clerk of Court forthwith.

20

21  Dated:   June 19, 2007

22           /s/Edward A. Infante

23          HON. EDWARD A. INFANTE (Ret.)
        Discovery Master

24

25

26    [2] See Mattel's Reply at 1.

27

28  Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

         4

EXHIBIT ___8___

PAGE ___102___

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on June 19, 2007,
I served the attached ORDER GRANTING IN PART AND DENYING IN PART
MATTEL'S MOTION TO ENFORCE THE COURT'S ORDER OF JANUARY 25, 2007,
TO COMPEL PRODUCTION OF DOCUMENTS BY CARTER BRYANT AND FOR
SANCTIONS in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| Robert Millman Esq. | Littler Mendelson | rfmillman@littler.com |
| Douglas Wickham Esq. | Littler Mendelson | dwickham@littler.com |
| Keith Jacoby Esq. | Littler Mendelson | kjacoby@littler.com |
| Dominic Messiha Esq | Littler Mendelson | dmessiha@littler.com |
| Diba Rastegar Esq. | Littler Mendelson | drastegar@littler.com |
| Michelle Park Esq. | Littler Mendelson | mpark@littler.com |
| Alaya B. Meyers, Esq. | Littler Mendelson | ameyers@littler.com |
| Brady Mitchell, Esq. | Littler Mendelson | bmitchell@littler.com |
| Carol Miller, Esq. | Littler Mendelson | cmiller@littler.com |
| Ryan P. Eskin, Esq. | Littler Mendelson | reskin@littler.com |
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | jbq@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Michael C. Keats, Esq. | O'Melveny & Myers LLP | mkeats@omm.com |
| Kendall Burr, Esq. | O'Melveny & Myers LLP | kburr@omm.com |
| Melanie Bradley, Esq. | O'Melveny & Myers LLP | mbradley@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that
the above is true and correct.

Executed on June 19, 2007, at San Francisco, California.

*Sandra Chan*

Sandra Chan

EXHIBIT _____8_____

PAGE _____103_____

# EXHIBIT 9

CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
Priority ___✓__ Send ___
Entered ___ Closed ___
JS-5/JS-6 ___ JS-2/JS-3 ___
Scan Only___ Docketed on CM ___
___THIS CONSTITUTES NOTICE OF
ENTRY AS REQUIRED BY FRCP 77(d)
JUN 2 7 2007
EASTERN DIVISION
BY ___ DEPUTY

FILED - EASTERN DIVISION
CLERK, U.S. DISTRICT COURT
JUN 2 7 2007
CENTRAL DISTRICT OF CALIFORNIA
BY JIM HOLMES DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CARTER BRYANT,

                    Plaintiff,

        v.

MATTEL, INC.,

                    Defendant,

AND CONSOLIDATED ACTIONS

CASE NO. CV 04-09049 SGL

CONSOLIDATED WITH
        CV 04-09059 SGL
        CV 05-02727 SGL

ORDER RE MOTIONS HEARD ON
JUNE 11, 2007

Presently before the Court is a multitude of motions filed by a number of parties in these consolidated cases. The factual allegations underlying the present actions are expansive and complex. They are set forth below only to the extent necessary for the Court's consideration of the present motions. At their essence, although involving a number of other legal and factual issues, these cases involve the rights to certain fashion dolls.

The present motions, six in total, focus on four basic issues: Two of the motions, filed by certain counter-defendants, address the sufficiency of the allegations made by Mattel, Inc. ("Mattel") in its counterclaims; most notably, these motions challenge the sufficiency of the allegations which underlie Mattel's claims based on the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C.

EXHIBIT 9
PAGE 104

Docket No. 577
06/27/07

1  §§ 1961-1968 ("RICO"). Another motion challenges the Court's exercise of
2  personal jurisdiction over a foreign corporation, MGAE de México, S.R.L. de C.V.
3  ("MGA Mexico"). Two additional motions seek review of a ruling, issued by a court-
4  appointed discovery master, overruling objections made during a party's deposition
5  that were based on the attorney-client and joint-defense privileges. A final motion
6  heard on June 11, 2007, addresses the Court's scheduling order that divided the
7  issues to be tried in these consolidated cases into two phases. This last motion will
8  be addressed in a separate order.

9      The Court has reviewed the parties' filings regarding these motions and held
10  a hearing on June 11, 2007. For the reasons and in the manner set forth more fully
11  herein, the Court makes the following rulings regarding these motions:

12      1.    Motion of MGA Entertainment, Inc., ("MGA") and Issac Larian
13  ("Larian") to Dismiss Mattel's Amended Answer and Counterclaims (docket # 189):[1]
14  **GRANTED IN PART AND DENIED IN PART.**

15      2.    Motion of Carter Bryant to Dismiss Counterclaims II, III, V, VII, IX, and
16  XI (docket # 191): **GRANTED IN PART AND DENIED IN PART.**

17      3.    Motion of MGA Mexico to Dismiss Mattel's Amended Answer and
18  Counterclaims (docket # 266): **DENIED.**

19      4.    Motion of MGA Objecting to Discovery Master's March 7, 2007, Order
20  (docket # 308): **GRANTED IN PART AND DENIED IN PART.**

21      5.    Motion of Carter Bryant Objecting to Discovery Master's March 7,
22  2007, Order (docket # 306): **GRANTED IN PART AND DENIED IN PART.**

23

24

25

26

27
    [1] Joining in this Motion were MGA Entertainment (HK) Ltd. ("MGA Hong
28  Kong"), Carter Bryant ("Bryant"), and MGA Mexico.

2    EXHIBIT  9

     PAGE  105

1                              **I. Factual Allegations**

2          The following allegations appear in the Amended Answer and Counterclaims

3    ("AAC"):

4    **A.    Bryant's Employment by Mattel**

5          Carter Bryant was hired by Mattel as a Barbie product designer in January

6    1999. (AAC ¶ 21.) At that time, Bryant signed an "Employee Confidential

7    Information and Inventions Agreement," wherein he agreed not to assist or work for

8    a Mattel competitor while employed by Mattel and that the designs and inventions

9    he created while employed by Mattel were Mattel property. (AAC ¶¶ 22-23.) Bryant

10   also executed a "Conflict of Interest Questionnaire" wherein he certified that, other

11   than as disclosed, he had not worked for a Mattel competitor in the past year, had

12   not engaged in a business transaction with a Mattel competitor that could create a

13   conflict of interest, and that he would inform Mattel immediately if such an event

14   occurred. (AAC ¶¶ 24-25.) While still employed by Mattel, Bryant used Mattel

15   property and resources to develop and design the Bratz concept. (AAC ¶ 26.)

16   Bryant also allegedly enlisted other Mattel employees to perform work on the Bratz

17   line, in some cases, falsely informing those employees that they were working on a

18   Mattel project. (AAC ¶ 27.)

19   **B.    MGA's Involvement in Bryant's Conduct**

20         MGA knew of and encouraged Bryant's misappropriation of Mattel property

21   and resources. (AAC ¶ 33). Bryant made affirmative misrepresentations to Mattel,

22   including that he was leaving Mattel for "non-competitive" pursuits. (AAC ¶ 28.)

23   Bryant and MGA concealed from Mattel that Bryant developed Bratz while

24   employed by Mattel, that Bryant worked with MGA during the time he was

25   employed by Mattel, and that Larian and others, not Bryant, were the creators of

26   Bratz. (AAC ¶ 35.) Prior to his departure from MGA, Bryant entered into a contract

27   with MGA to provide design services to MGA on a "top priority" basis. (AAC ¶ 36.)

28         Bryant left Mattel's employ on October 20, 2000; three weeks later, MGA

3    EXHIBIT _____9_____

     PAGE _____106_____

1 showed the Bratz prototypes to focus groups and retailers. (AAC ¶ 29.) Soon

2 thereafter, MGA showed the Bratz line to retailers at the Hong Kong Toy Fair in

3 January, 2001, and then began manufacturing and selling the dolls to retailers for

4 an annual revenue in the excess of $500 million. (AAC ¶¶ 31-32.)

5 **C.    Proprietary Information**

6       **1.    Mexico**

7       Counter-defendant Carlos Gustavo Machado Gomez ("Machado"), nonparty

8 Mariana Trueba Almada ("Trueba"), and nonparty Pablo Vargas San Jose

9 ("Vargas") were upper-level employees at Mattel Mexico. (AAC ¶¶ 38-40.) In the

10 three months before all three simultaneously resigned from Mattel Mexico on April

11 19, 2004, they were in contact with MGA via an email account with the address

12 "plot04@aol.com". (AAC ¶ 42.) The three former employees allegedly used this

13 account to supply MGA with confidential and proprietary Mattel information. (AAC

14 ¶ 42.) The three also copied various proprietary Mattel documents onto USB flash

15 drives prior to resigning. (AAC ¶ 44-46.) Shortly before her departure, Trueba

16 increased her access to Mattel's confidential information and attended a meeting at

17 which Mattel personnel analyzed Barbie programs for the United States, Canada,

18 and South America. (AAC ¶ 47.)

19      Among them, Machado, Trueba, and Vargas stole documents containing

20 information regarding Mattel's future products, production and shipping costs, sales

21 information, customer information, marketing information, and strategic research

22 information both in Mexico and worldwide. (AAC ¶ 48.) The stolen data was not

23 limited to the Mexican market; rather, the information stolen had the potential, and

24 in fact did, give MGA an unfair competitive advantage in the United States and

25 around the world. (AAC ¶ 49.)

26      In an attempt to conceal his actions, Machado ran a software program on his

27 Mattel computer in order to erase information pertaining to his contact with MGA.

28 (AAC ¶ 51.) When Mattel alerted Mexican authorities about the theft, they seized

4        EXHIBIT ___9___

         PAGE ___107___

1  from MGA's Mexico City offices, pursuant to a search warrant, a large number of

2  documents containing Mattel trade secrets and confidential information. (AAC

3  ¶ 53.)

4      Shortly after the theft, Machado, Trueba, and Vargas traveled to Los

5  Angeles to meet face-to-face with MGA personnel. (AAC ¶ 52.)

6      **2.    Canada**

7      Jane Brisbois was the Director of Sales for the Girls Division in Canada.

8  (AAC ¶ 71.) When she was hired in 1999, she agreed to preserve and not disclose

9  Mattel's proprietary information. (AAC ¶ 71.) While still employed by Mattel,

10  Brisbois spoke with Larian on September 22, 2005. (AAC ¶ 74.) That same day,

11  Brisbois copied approximately 45 Mattel documents containing Mattel trade secret

12  information into a USB flash drive that she took from the Mattel Canada office.

13  (AAC ¶ 74.) The files taken by Brisbois included documents regarding Mattel sales,

14  advertising strategies, market analyses, product launch dates, and profit margins in

15  Canada, Mexico, and the United States. (AAC ¶ 74.) Four days later, she resigned

16  from Mattel. (AAC ¶ 74.)

17      When Mattel learned of Brisbois' misappropriation of Mattel documents, it

18  notified Canadian law enforcement officials, who were able to recover the flash

19  drive and the documents from Brisbois. (AAC ¶ 75.)

20      **3.    United States**

21      Ron Brawer was Mattel's Senior Vice President and General Manager.

22  (AAC ¶ 55.) On September 17, 2004, Brawer informed Mattel that he was leaving

23  Mattel to work for MGA. (AAC ¶ 63.) During Brawer's exit interview, he falsely

24  represented that he had returned all proprietary information to Mattel; specifically,

25  Brawer took the information in his contacts file which included contact information

26  for Mattel customers and Mattel employees. (AAC ¶ 68.) Brawer has since used

27  the contact information to induce certain Mattel employees to join MGA and

28  misappropriate Mattel trade secrets. (AAC ¶ 69.)

5

EXHIBIT ___9___

PAGE ___108___

1    MGA has also allegedly hired at least 25 other Mattel employees, some of
2    whom have provided MGA with Mattel's confidential information.  (AAC ¶ 77.)

3    **D.    Larian's Communications Regarding Mattel's New Product Line**

4    On May 12, 2006, Larian sent an email message to an email distribution list
5    that included a reference to a new Mattel Barbie line ("MY SCENE MY BLING
6    BLING") which Mattel had not yet made public.  (AAC ¶ 79.)  The distribution of the
7    email included members of the media and many of Mattel's most significant
8    customers.  (AAC ¶ 78.)  Soon after sending the email, Larian began calling these
9    significant customers and making false representations about the product;
10   specifically, Larian told each that it was the only retailer to purchase the product
11   and that Mattel would not be supporting the product with television advertising.
12   (AAC ¶ 80.)

13   **E.    Exhibit C**

14   In Exhibit C to the AAC, Mattel references a number of communications,
15   numbering well over one hundred, that it contends constitutes predicate acts of mail
16   fraud or wire fraud.  Exhibit C does not describe the contents of those
17   communications.

18                          **II. Counterclaims Asserted**

19   Based on these allegations, Mattel asserts the following counterclaims:
20   (1) Copyright Infringement, including willful, vicarious, and contributory
21   infringement, asserted against MGA, MGA Hong Kong, Larian and Bryant;
22   (2) violation of RICO's substantive prohibition, 18 U.S.C. § 1962(c), asserted as
23   authorized by 18 U.S.C. § 1964(c) against all defendants, which alleges predicate
24   acts of, *inter alia*, mail fraud, wire fraud, and criminal copyright infringement; (3) a
25   violation of RICO's prohibition against conspiracies, 18 U.S.C. § 1962(d), asserted
26   against all defendants; (4) state-law misappropriation of trade secrets against MGA,
27   MGA Mexico, Larian, and Machado; (5) breach of contract, asserted against Bryant
28   only and based on certain employment agreements between Bryant and Mattel;

                                6    EXHIBIT ___9___

                                     PAGE ___109___

1   (6) intentional interference with contract, asserted against MGA and Larian and

2   based on Bryant's employment agreements; (7) breach of fiduciary duty, asserted

3   against Bryant and Machado; (8) aiding and abetting breach of fiduciary duty,

4   asserted against MGA and Larian; (9) breach of the duty of loyalty, asserted

5   against Bryant and Machado; (10) aiding and abetting breach of the duty of loyalty,

6   asserted against MGA and Larian; (11) conversion, asserted against all counter-

7   defendants; (12) violation of California's unfair competition law, Cal. Bus. & Prof.

8   Code § 17200, asserted against all counter-defendants; and finally, (13) a claim for

9   declaratory relief.

10   **III. Counter-Defendants' Motions to Dismiss for Failure to State a Claim**

11        The parties have moved to dismiss a number of Mattel's counterclaims on

12   various grounds.  The Court addresses each claim in turn, considering at all times

13   the standard for dismissal pursuant to Fed. R. Civ. P. 12(b)(6).

14   **A.     Standard for Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6)**

15        In lieu of an answer, a party may, as the counter-defendants have here, file a

16   motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), which provides that such a

17   motion may be made where the pleader has "fail[ed] to state a claim upon which

18   relief can be granted."  Id.  In deciding a Rule 12(b)(6) motion, the Court must also

19   consider the requirements of Fed. R. Civ. P. 8(a), which requires only a "short and

20   plain statement of the claim showing that the pleader is entitled to relief" or, when

21   the claim at issue avers fraud or mistake, the motion must be considered in

22   conformity with Fed. R. Civ. P. 9(b), which requires fraud and mistake to be pleaded

23   with particularity.  See 5A Charles A. Wright & Arthur Miller, Federal Practice and

24   Procedure, §1356 (1990); James Wm. Moore, Moore's Federal Practice, Vol. 2

25   § 12.34[1][c].

26        In bringing a motion pursuant to Rule 12(b)(6), the moving party has the

27   burden of persuading the Court that the complaint has failed to state a claim upon

28   which relief can be granted.  Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406,

7     EXHIBIT ___9___

PAGE ___110___

1   1409 (3d Cir.), cert. denied, 501 U.S. 1222 (1991). In considering the motion,

2   "courts must consider the complaint in its entirety," and read it in the light most

3   favorable to the plaintiff, accepting as true all factual allegations in the complaint, as

4   well as reasonable inferences to be drawn therefrom. Tellabs, Inc. v. Makor Issues

5   & Rights, Ltd., __ U.S. __, No. 06-484, 2007 WL 1773208, at *9 (June 21, 2007);

6   Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th Cir. 1998). However, the Court need not

7   accept any unwarranted deductions of fact, or conclusory legal statements cast in

8   the form of factual allegations. See Western Mining Council v. Watt, 643 F.2d 618,

9   624 (9th Cir.), cert. denied, 454 U.S. 1031 (1981).

10           Generally, a court cannot consider evidence in deciding a Rule 12(b)(6)

11   motion; however, a court may consider exhibits attached to the complaint as well as

12   documents that are not physically attached to the complaint but "whose contents

13   are alleged in [the] complaint and whose authenticity no party questions." Branch v.

14   Tunnell, 14 F.3d 449, 453-54 (9th Cir. 1994), cert. denied, 512 U.S. 1219 (1994).

15   Facts of which a court may take judicial notice pursuant to Fed. R. Evid. 201 are

16   also properly considered. Mir v. Little Company of Mary Hospital, 844 F.2d 646,

17   649 (9th Cir. 1988).

18   **B.**     **RICO Claims**

19           The counter-defendants devote most of their motions to the sufficiency of the

20   allegations regarding Mattel's RICO claims. The Court's analysis begins, as it must

21   when considering a federal statute, with the language of that statute. The

22   substantive RICO prohibition at issue is found in 18 U.S.C. § 1962(c):

23             It shall be unlawful for any person employed by or associated

24           with any enterprise engaged in, or the activities of which affect,

25           interstate or foreign commerce, to conduct or participate, directly or

26           indirectly, in the conduct of such enterprise's affairs through a pattern

27           of racketeering activity or collection of unlawful debt.

28   Id. Conspiracies to violate this substantive prohibition are themselves prohibited by

8   EXHIBIT ___9___

PAGE ___11___

1 § 1962(d), which states that "[i]t shall be unlawful for any person to conspire to
2 violate any of the provisions of subsection (a), (b), or (c) of this section." Id. Many
3 of these terms are defined by the statutory language, including "racketeering
4 activity," "enterprise," and "pattern of racketeering activity":

5          (1) "racketeering activity" means . . . (B) any act which is
6      indictable under any of the following provisions of title 18, United
7      States Code: . . . section 1341 (relating to mail fraud), section 1343
8      (relating to wire fraud), . . . section 1512 (relating to tampering with a
9      witness, victim, or an informant), . . . section 1952 (relating to
10     [interstate and foreign travel or transportation in aid of racketeering
11     enterprises]), [and] section 2319 (relating to criminal infringement of a
12     copyright)[.]

13                        . . . .

14         (4) "enterprise" includes any individual, partnership,
15     corporation, association, or other legal entity, and any union or group
16     of individuals associated in fact although not a legal entity;

17         (5) "pattern of racketeering activity" requires at least two acts of
18     racketeering activity, one of which occurred after the effective date of
19     this chapter and the last of which occurred within ten years (excluding
20     any period of imprisonment) after the commission of a prior act of
21     racketeering activity[.]

22 18 U.S.C. § 1961.

23         In considering a Rule 12(b)(6) motion seeking to dismiss a RICO claim, the
24 Court measures the sufficiency of alleged predicate acts of wire fraud and mail
25 fraud by the Rule 9(b) "pleading-with-particularity" standard; however, the Court
26 measures the sufficiency of all other predicate acts by the more lenient standard set
27 forth in Rule 8(a). Compare Fed. R. Civ. P. 9(b) ("In all averments of fraud or
28 mistake, the circumstances constituting fraud or mistake shall be stated with

                                    9   EXHIBIT ___9___

                                        PAGE ___112___

1   particularity.  Malice, intent, knowledge, and other condition of mind of a person

2   may be averred generally.") with Fed. R. Civ. P. 8(a) ("A pleading which sets forth a

3   claim for relief, . . . shall contain . . . (2) a short and plain statement of the claim

4   showing that the pleader is entitled to relief . . . ."); see Lancaster Community Hosp.

5   v. Antelope Valley Hosp. Dist., 940 F.2d 397, 405 (9th Cir. 1991) (applying Rule

6   9(b) standard to allegations of mail fraud and noting that "[t]he Ninth Circuit has

7   repeatedly insisted that [Rule 9(b)] be followed in RICO actions alleging the

8   predicate act of mail fraud."), cert. denied, 502 U.S. 1094 (1992).

9       In order to state its claim under § 1962(c), Mattel "must allege (1) conduct

10  (2) of an enterprise (3) through a pattern (4) of racketeering activity (5) causing

11  injury to [its] business or property." Ove v. Gwinn,  264 F.3d 817, 825 (9th Cir.

12  2001) (internal quotation marks and citation omitted). Here, counter-defendants'

13  motions challenge the first, second, fourth, and fifth elements.

14          1.      **"Conduct or Participate"**

15      Bryant contends that his role in any alleged scheme or enterprise is too

16  tenuous to constitute the "conduct" necessary to impose RICO liability.  In order to

17  have RICO liability imposed upon him, a defendant must "conduct or participate,

18  directly or indirectly, in the conduct of [an] enterprise's affairs through a pattern of

19  racketeering activity . . . ." 18 U.S.C. § 1962(c). The United States Supreme Court

20  has elaborated on this statutory language in Reves v. Ernst & Young, 507 U.S. 170,

21  179 (1993), wherein it noted:

22          [T]he word "participate" makes clear that RICO liability is not limited to

23          those with primary responsibility for the enterprise's affairs, just as the

24          phrase "directly or indirectly" makes clear that RICO liability is not

25          limited to those with a formal position in the enterprise, but some part

26          in directing the enterprise's affairs is required.

27  Id.  Here, Mattel has alleged that Bryant secretly developed Bratz while employed

28  by Mattel and using Mattel's resources and employees, that he concealed that fact

1  when he had a duty to disclose it, and that he did these things in order to facilitate
2  the development of the Bratz concept by Mattel's direct competitor, in violation of,
3  *inter alia*, criminal copyright law. These allegations, if proven to be true, are
4  sufficient to impose RICO liability on Bryant.

5  ## 2.  Enterprise

6  Bryant's motion challenges the sufficiency of the allegations regarding a
7  RICO enterprise. That enterprise is alleged to be an "association-in-fact" enterprise
8  comprised of the counter-defendants, Brawer, Trueba, Vargas, Brisbois, and
9  others. (AAC ¶ 89.) Mattel alleges that counter-defendants participated in or
10 conducted the affairs of the association-in-fact enterprise through a pattern of
11 racketeering activities, including, as detailed in the AAC, predicate acts of mail
12 fraud, wire fraud, evidence tampering, interstate and foreign travel to aid
13 racketeering activities, and criminal copyright infringement. (AAC ¶ 90.) The
14 counter-defendants' goal is alleged to have been to "execut[e] or attempt to
15 execut[e] [a] scheme to improperly defraud Mattel and steal its trade secret or
16 otherwise confidential and proprietary Information . . . ." (AAC ¶ 90.)

17 A recent *en banc* decision of the Ninth Circuit sets forth a comprehensive
18 analysis of the sufficiency of allegations regarding a RICO enterprise necessary to
19 state a claim. See Odom v. Microsoft Corp., 486 F.3d 541, 2007 WL 1297249 (9th
20 Cir. 2007) (designated for publication). That decision provides the blueprint for the
21 Court's present analysis.

22 Odom involved an alleged scheme involving consumers who purchased
23 computers from Best Buy retail stores. Id. at 543. The computers would include a
24 Microsoft compact disc that the cashier would scan; the consumer's credit card was
25 also scanned for purchase. Id. The credit card information was transmitted to
26 Microsoft, and Microsoft would, at some point, begin making unauthorized charges
27 to the credit card used to purchase the computer, ostensibly for Microsoft's
28 provision of Internet services. Id. Odom brought substantive RICO and RICO

11     EXHIBIT ___9___

PAGE ___114___

maximum

extreme

lowest

highest

balanced

standard

normal

medium-high

mid

moderate

conspiracy claims based on these allegations. Id. at 544.

The Ninth Circuit first noted the evidenced judicial resistance to RICO in the lower courts, contrasted with the Supreme Court's four reversals of such narrow readings of RICO. Id. at 545-47 (citing United States v. Turkette, 452 U.S. 576 (1981) (rejecting notion that RICO prohibited only the infiltration of legitimate businesses by organized crime); Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 481 (1985) (rejecting notion that RICO could be used to impose civil liability only where the defendant had been criminally convicted and that such liability was limited to a narrow measure of damages); National Organization for Women v. Scheidler, 510 U.S. 249 (1994) (rejecting the notion that RICO liability could be imposed only when the acts of a RICO enterprise had an economic motive); and Cedric Kushner Promotions v. King, 533 U.S. 158 (2001) (reversing lower court's ruling that no RICO claim was stated where president and sole shareholder of a corporation was alleged to have associated with his wholly owned corporation as a RICO "enterprise," and relying on fact that person and corporation were separate legal entities). In Odom, the Ninth Circuit understandably viewed these four holdings as a "general instruction that we should not read the statutory terms of RICO narrowly." Odom, 486 F.3d at 547 (internal citation omitted).

In Odom, the Ninth Circuit clarified -- and relaxed -- the standard for pleading and proving an "associated-in-fact" enterprise such as the one alleged here:

> The definition of "enterprise" in the text of RICO is fairly straightforward. In its entirety, the definition is as follows: "'enterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). As is evident from the text, this definition is not very demanding. A single "individual" is an enterprise under RICO. Similarly, a single "partnership," a single "corporation," a single "association," and a single "other legal entity"

12

EXHIBIT ___9___

PAGE ___115___

1         are all enterprises. At issue in this case is the last kind of enterprise

2         listed in the definition -- a "group of individuals associated in fact." It is

3         undisputed that a corporation can be an "individual" for purposes of

4         an associated-in-fact enterprise.

5   Id. at 548.

6         The Ninth Circuit acknowledged that "enterprise" must be something greater

7 than merely a pattern of racketeering activity; however, the court rejected the notion

8 that an enterprise must have a particular ascertainable organizational structure. Id.

9 at 551 ("We take this opportunity to join the circuits that hold that an

10 associated-in-fact enterprise under RICO does not require any particular

11 organizational structure, separate or otherwise.") (citations omitted). A party need

12 only set forth factual allegations of "a group of persons associated together for a

13 common purpose of engaging in a course of conduct," "evidence of an ongoing

14 organization, formal or informal," and "evidence that the various associates function

15 as a continuing unit." Id. at 552 (internal citations and quotation marks omitted).

16         As for the common purpose, it was met in Odom, where the plaintiff had

17 alleged the following:

18         [D]efendants had the common purpose of increasing the

19         number of people using Microsoft's Internet Service, and doing so by

20         fraudulent means. Best Buy furthered this common purpose by

21         distributing Microsoft Internet Trial CD's and conveying its customers'

22         debit and credit card information to Microsoft. Microsoft then used the

23         information to activate customer accounts.

24 Id. Here, Mattel has alleged the common purpose of attempting to defraud Mattel

25 and steal its trade secrets. Mattel's many factual allegations, detailed herein,

26 support this alleged common purpose.

27         As for the "ongoing organization" requirement, the Ninth Circuit in Odom

28 noted that the plaintiffs had met that element, which was met where the

13   EXHIBIT ___9___

        PAGE ___116___

1    organization was alleged to be "a vehicle for the commission of two or more
2    predicate crimes." Id. (internal quotation marks and citation omitted). The Ninth
3    Circuit noted the following factual allegations:

4           Microsoft and Best Buy established mechanisms for
5        transferring plaintiffs' personal and financial information from Best Buy
6        to Microsoft. That information then allowed Microsoft to activate
7        plaintiffs' Internet accounts without their knowledge or permission.
8        These mechanisms enabled Microsoft to bill plaintiffs improperly for
9        MSN services in 2001, 2002 and 2003.

10   Id. Here, plaintiffs have alleged that the counter-defendants coordinated their many
11   efforts at depriving Mattel of its proprietary information and its intellectual property.
12   The allegations regarding common use of the "plot04@aol.com" email address to
13   transfer confidential Mattel information to MGA support the finding of an "ongoing
14   organization." So, too, do the allegations regarding the repeated communications
15   between Bryant and MGA.

16         The "continuing unit" requirement does not appear to the Court to mandate
17   that the organization continues to this day;[2] rather, the requirement is related to the
18   notion that RICO was not meant to address discrete instances of fraud or criminal
19   conduct. "[T]he continuity requirement focuses on whether the associates'
20   behavior was 'ongoing' rather than isolated activity." Id. at 553 (internal quotation
21   marks and citation omitted). Related to that concern, it is also clear to the Court
22   that this requirement is related to the duration of the racketeering activities. See id.
23   ("An almost two-year time span is far more than adequate to establish that Best
24   Buy and Microsoft functioned as a continuing unit."). Here, the allegations do not
25   reveal that the conduct complained of was mere isolated activity; rather, Mattel sets
26   forth allegations of racketeering activity that spanned a period of three years. The

27

28         [2] Nevertheless, Mattel alleges that the enterprise exists to this day by virtue
      of its continued use of Mattel's information and property.

                                   14       EXHIBIT _____ G_____

                                            PAGE _____ 117_____

1 allegations describe a scheme consisting of corporate warfare between competitors
2 that has been waged over a long period of time and waged on a number of fronts,
3 both foreign and domestic. The "continuing unit" requirement is therefore satisfied.
4     Accordingly, the Court finds that Mattel has sufficiently pleaded the existence
5 of a RICO enterprise.

6     **3.    Predicate Acts of Racketeering Activity**

7          **a.    Mail Fraud and Wire Fraud**

8     The criminal prohibition against mail fraud is found at 18 U.S.C. § 1341:

9          Whoever, having devised or intending to devise any scheme or
10         artifice to defraud, . . . for the purpose of executing such scheme or
11         artifice or attempting so to do, places in any post office or authorized
12         depository for mail matter, any matter or thing whatever to be sent or
13         delivered by the Postal Service, or deposits or causes to be deposited
14         any matter or thing whatever to be sent or delivered by any private or
15         commercial interstate carrier, or takes or receives therefrom, any such
16         matter or thing, . . . shall be fined under this title or imprisoned not
17         more than 20 years, or both.

18 Id. The Ninth Circuit has described the elements of mail fraud as "(1) proof of a
19 scheme to defraud; (2) using or causing the use of the mails to further the
20 fraudulent scheme; and (3) specific intent to defraud." United States v. Rogers, 321
21 F.3d 1226, 1229 (9th Cir. 2003) (internal citation omitted).

22     The criminal prohibition against wire fraud is similar:

23         Whoever, having devised or intending to devise any scheme or
24         artifice to defraud, . . . transmits or causes to be transmitted by means
25         of wire, radio, or television communication in interstate or foreign
26         commerce, any writings, signs, signals, pictures, or sounds for the
27         purpose of executing such scheme or artifice, shall be fined under this
28         title or imprisoned not more than 20 years, or both.

15

EXHIBIT _____ 9

PAGE _____ 118

1    18 U.S.C. § 1343.  The Ninth Circuit has described the elements of wire fraud as

2    "(1) a scheme to defraud; (2) use of the wires in furtherance of the scheme; and

3    (3) a specific intent to deceive or defraud." United States v. Shipsey, 363 F.3d 962,

4    971 (9th Cir. 2004) (citations omitted).

5         As all parties acknowledge, the predicate acts of mail fraud and wire fraud

6    must be pleaded with particularity pursuant to Fed. R. Civ. P. 9(b).  Specifically,

7    Mattel must detail "the time, place, and manner of each act of fraud, [and it must

8    set forth] the role of each defendant in each scheme." Lancaster Community

9    Hosp., 940 F.2d at 405.  This standard applies in RICO actions alleging predicate

10   acts of mail fraud. Id.

11        Here, Mattel sets forth allegations of predicate acts of mail fraud and wire

12   fraud referenced in Exhibit C to the AAC.  However, these alleged predicate acts

13   are insufficiently pleaded because they fail to adequately describe the contents of

14   the communications; specifically, they fail to detail time, place and manner of "each

15   act of fraud."  The substantive RICO claim is therefore dismissed to the extent it is

16   premised on those communications.  Mattel is **GRANTED** leave to amend the RICO

17   claim based on this insufficiency; Mattel must attach to the Second Amended

18   Answer and Counterclaims ("SAAC") copies of the referenced communications.

19   The contents of packages referenced in Exhibit C must be described in order to

20   meet the Rule 9(b) requirements.

21        At oral argument, counsel for MGA argued that the substance of many, if not

22   all of the communications, cannot be read to further a scheme to defraud.  That

23   argument will be considered another day, after Mattel files the SAAC.  However, the

24   Court takes the opportunity today to note that, given the broad scope of the alleged

25   scheme to defraud, including the criminal copyright infringement allegations,

26   otherwise innocuous and routine communications regarding day-to-day operations

27   and product development may be found to be in furtherance of that scheme. See

28   Tellabs, Inc. v. Makor Issues & Rights, Ltd., ___ U.S. ___, No. 06-484, 2007 WL

16    EXHIBIT _____9_____

PAGE _____119_____

1 1773208, at *9 (June 21, 2007) (noting that, in considering a Rule 12(b)(6) motion,

2 "courts must consider the complaint in its entirety").

3      Counter-defendants also argue that Mattel failed to plead each defendant's

4 role in furtherance of the scheme to defraud. As interpreted by the Ninth Circuit,

5 the Rule 9(b) standard clearly requires that a plaintiff so plead. Lancaster

6 Community Hosp., 940 F.2d at 405. However, the Court will view the

7 communications alleged to constitute mail and wire fraud in conjunction with all the

8 allegations set forth regarding the alleged scheme in the counterclaims. See Flood

9 v. Makowski, No. 3:CV-03-1803, 2004 WL 1908221, at *14 (M.D. Pa., Aug. 24,

10 2004) (applying the principle that reasonable inferences in favor of a plaintiff must

11 be made when considering a Rule 12(b)(6) motion and noting that "[a]lthough

12 Plaintiffs' Complaint does not expressly identify how each particular mail or wire

13 communication furthered the scheme, the Complaint clearly alleges facts which

14 create an unquestionable inference that the alleged communications furthered the

15 scheme.").

16      Counter-defendants also argue that, because the emails alleged to

17 constitute wire fraud were sent among individuals physically located in the same

18 state, Mattel will not be able to establish the interstate nature of the

19 communications. See 18 U.S.C. § 1343 (setting forth the requirement that

20 communications be transmitted "in interstate or foreign commerce"). Mattel has

21 alleged that the communications were transmitted in interstate or foreign

22 commerce. (AAC ¶ 93(b).) This suffices at the pleadings stage; however,

23 eventually Mattel will be called upon to support these allegations with evidence.

24 See First Pacific Bancorp, Inc. v. Bro, 847 F.2d 542, 547 (9th Cir. 1988) (implicitly

25 holding that wire fraud must be supported, at the summary judgment stage, by

26 evidence of interstate wire fraud).

27      The Court dismisses the RICO claim to the extent it is based on the alleged

28 predicate acts of mail fraud and wire fraud because those acts are not pleaded with

17      EXHIBIT _____9_____

PAGE _____120_____

1   particularity as required by Rule 9(b). Mattel is **GRANTED** ten days' leave to file a

2   SAAC that incorporates and attaches and/or describes the communications and the

3   contents of packages referenced in Exhibit C.

4              **b.    Evidence Tampering**

5           Unlike the mail fraud and wire fraud allegations, the allegations regarding the

6   remaining predicate acts are governed by the more lenient pleading standards of

7   Rule 8(a). See Slade v. Gates, No. 01-8244-RMT, 2002 WL 31387263, at *6 (C.D.

8   Cal., Oct. 11, 2002). The Court considers the sufficiency of those remaining

9   allegations pursuant to this Rule.

10          The criminal prohibition against tampering with evidence is found at 18

11  U.S.C. § 1512:

12              Whoever corruptly . . . alters, destroys, mutilates, or conceals a

13              record, document, or other object, or attempts to do so, with the intent

14              to impair the object's integrity or availability for use in an official

15              proceeding . . . shall be fined under this title or imprisoned not more

16              than 20 years, or both.

17  Id. Mattel's opposition makes clear that its evidence tampering allegations are

18  based upon two categories of documents: The first category of documents,

19  perhaps composed of only one multi-page document, involves the alleged alteration

20  of Bryant's contract with MGA to remove a fax header showing that the date of its

21  execution, which predated the effective date of Bryant's resignation from Mattel.[3]

22  The second category of documents are those filed with the United States Copyright

23  Office, which are alleged to omit the disclosure that certain Bratz drawings were

24  "works for hire," and which are alleged to have had alterations made to certain

25

26         [3] The AAC merely alleges that counter-defendants Bryant and MGA
27  "tamper[ed] with and defac[ed] documents which showed that . . . Bryant was a
    Mattel employee while he was working for and with MGA . . . ." (AAC ¶ 35.)
28  However, it is clear from other filings by the parties that, at a minimum, this
    allegation refers to MGA's contract with Bryant.

                            18      EXHIBIT _____ 9 _____

                                    PAGE _____ 121 _____

1   relevant dates.  (See AAC ¶ 35; Mattel Opp. to MGA's Motion at 9.)

2        As to the first category, a predicate act is sufficiently alleged.  Mattel has

3   alleged that a document was altered in a manner designed to conceal critical

4   evidence, highly relevant to the present official proceeding, regarding the timing of

5   the execution of the document.

6        Conversely, it is unclear whether Mattel has alleged a predicate act with

7   respect to the second category of documents.  The issue of whether submitting

8   fraudulent registrations and "altering relevant dates" on documents submitted to the

9   United States Copyright Office has not been fully briefed by the parties; the issue

10  was framed in this manner only upon the filing of the reply.[4]  Therefore, the Court

11  reserves this issue for a later date, and anticipates that it will be addressed by the

12  parties in a motion to dismiss the SAAC.

13              **c.    Travel Act Violation**

14       Federal criminal law prohibits interstate or foreign travel to aid in

15  racketeering activities.  18 U.S.C. § 1952; see also 18 U.S.C. § 1961 (defining a

16  violation of § 1962 as a RICO predicate act).  In relevant part, the criminal

17  prohibition states:

18       Whoever travels in interstate or foreign commerce or uses the

19       mail or any facility in interstate or foreign commerce, with intent to . . .

20       promote, manage, establish, carry on, or facilitate the promotion,

21       management, establishment, or carrying on, of any unlawful activity,

22       and thereafter performs or attempts to perform . . . [such an act,] shall

23       be fined under this title, imprisoned not more than 5 years, or

24       both . . . .

25                    . . . .

26       As used in this section . . . "unlawful activity" means . . .

27

28       [4] The Court does not view this failure as the fault of any party.

19

EXHIBIT ___ Q

PAGE ___ 122

1    extortion, bribery, or arson in violation of the laws of the State in which
2    committed or of the United States . . . .

3  Id. Mattel alleges that Bryant and others traveled in interstate commerce to commit
4  commercial bribery in violation of California's prohibition against commercial
5  bribery, which in relevant part provides:

6    (a) Any employee who solicits, accepts, or agrees to accept
7    money or any thing of value from a person other than his or her
8    employer, other than in trust for the employer, corruptly and without
9    the knowledge or consent of the employer, in return for using or
10    agreeing to use his or her position for the benefit of that other person,
11    and any person who offers or gives an employee money or any thing
12    of value under those circumstances, is guilty of commercial bribery.
13  Cal. Penal Code § 641.3.  Several allegations support a violation of § 641.3(a),
14  which in turn supports a violation of 18 U.S.C. § 1952.  Mattel has alleged that
15  Bryant, while still employed by Mattel, entered into a contract with MGA to provide
16  design services to MGA on a "top priority" basis, and used Mattel property,
17  employees, and resources to develop and design the Bratz concept.

18    Counter-defendants argue that the requirement under California's
19  commercial bribery statute that a violator act "corruptly" is not met because Bryant
20  did not intend to injure Mattel.  Such an intent is not required; rather it is sufficient
21  that Bryant is alleged to have intended to defraud Mattel.  See Cal. Penal Code
22  § 341.3(d)(3) (defining "corruptly" as involving the intent "to injure or defraud")
23  (emphasis added).

24       **d.    Criminal Copyright Violations**

25    The parties dispute the relevant pleading standard that governs the
26  allegations which underlie the criminal copyright violation claim.  Counter-
27  defendants would have the Court apply the more exacting Rule 9(b) standards
28  because, in their assessment, the claim "sounds in fraud."  Mattel, however,

20    EXHIBIT ____9____

PAGE ____123____

1  contends that there is no reason to depart from the more lenient Rule 8(a) standard
2  generally applied to copyright claims because, in its assessment, the claims "sound
3  in copying, not fraud." (Mattel Opposition to MGA's Motion at 4.) ¯

4         The recent Ninth Circuit case on this issue, cited by both parties, stands for
5  the unremarkable proposition that, consistent with Rule 9(b), all *averments* of fraud
6  must be pleaded with particularity, regardless of whether fraud is an essential
7  element of the claim to which the averment relates. See Vess v. Ciba-Geigy Corp.
8  USA, 317 F.3d 1097, 1103 (9th Cir. 2003); Fed. R. Civ. P. 9(b) ("In all *averments*
9  of fraud or mistake, the circumstances constituting fraud or mistake shall be stated
10  with particularity.") (emphasis added).

11        Considering Rules 8(a), 9(b), and the teachings of Vess, a spectrum
12  emerges. At the left end of this spectrum are claims that do not involve any
13  allegations of fraud. Those need only satisfy Rule 8(a)'s "short and plain
14  statement" standard. At the opposite end of the spectrum are claims based solely
15  on fraud, and the facts underlying such a claim must be alleged with particularity
16  pursuant to Rule 9(b). Lying closer to the Rule 9(b) end of the spectrum is a
17  category of claims discussed in Vess:

18             In cases where fraud is not a necessary element of a claim, a
19        plaintiff may choose nonetheless to allege in the complaint that the
20        defendant has engaged in fraudulent conduct. In some cases, the
21        plaintiff may allege a unified course of fraudulent conduct and rely
22        entirely on that course of conduct as the basis of a claim. In that
23        event, the claim is said to be "grounded in fraud" or to "sound in
24        fraud," and the pleading of that claim as a whole must satisfy the
25        particularity requirement of Rule 9(b).

26  Vess, 317 F.3d at 1103-04 (internal citations omitted). It is into this category MGA
27  contends that the allegations of criminal copyright claims fit, and MGA therefore
28  contends that all allegations regarding the criminal copyright claims must be

                                21    EXHIBIT ___9___

                                      PAGE ___124___

1  pleaded with particularity.

2      However, Vess sets up another category, lying closer to the Rule 8(a) part of

3  the spectrum (but nevertheless requiring pleading with some particularity):

4          In other cases, however, a plaintiff may choose not to allege a

5      unified course of fraudulent conduct in support of a claim, but rather

6      to allege some fraudulent and some non-fraudulent conduct.  In such

7      cases, only the allegations of fraud are subject to Rule 9(b)'s

8      heightened pleading requirements. . . . The rule does not require that

9      allegations supporting a claim be stated with particularity when those

10     allegations describe non-fraudulent conduct.

11         [In other words,] in a case where fraud is not an essential

12     element of a claim, only allegations ("averments") of fraudulent

13     conduct must satisfy the heightened pleading requirements of Rule

14     9(b).  Allegations of non-fraudulent conduct need satisfy only the

15     ordinary notice pleading standards of Rule 8(a).

16  Id. at 1104-05.

17     Whether fraud is an essential element of criminal copyright infringement

18  must be determined by reference to the statutory language and any interpretative

19  case law.  In relevant part, the prohibition against criminal copyright infringement

20  provides: "Any person who violates section 506(a) (relating to criminal offenses) of

21  title 17 shall be punished as provided [herein] in and such penalties shall be in

22  addition to any other provisions of title 17 or any other law."  18 U.S.C. § 2319.  In

23  turn, the relevant provision in 17 U.S.C. § 506 states that "[a]ny person who willfully

24  infringes a copyright shall be punished as provided under section 2319 of title 18, if

25  the infringement was committed . . . for purposes of commercial advantage or

26  private financial gain . . . ."  17 U.S.C. § 506(a)(1)(A).  The elements of the offense

27  are easily gleaned from the straightforward statutory language: "Criminal

28  infringement of copyright has three elements: (1) infringement of a copyright

22    EXHIBIT  9

PAGE  125

1   (2) done wilfully (3) for purposes of commercial advantage or private financial gain."
2   United States v. Goss, 803 F.2d 638, 642 (11th Cir. 1986).

3       Clearly, fraud is not an essential element of a criminal copyright claim, taking
4   it out of the category at the far end of the spectrum described above, and
5   necessitating an inquiry into whether Mattel has chosen to incorporate a fraud
6   element into its criminal copyright claim. The AAC at ¶ 93(e) reveals that the
7   criminal copyright claim is premised upon the "willfull[] infringe[ment of] Mattel's
8   copyrights, including with respect to documents containing Mattel trade secret and
9   confidential information . . . ." The Opposition fills in more details regarding this
10  claim, noting that the criminal copyright claim is premised upon the Bratz-related
11  works, Bratz-derivative works, and works contained within Mattel's allegedly
12  purloined trade secrets and confidential information. (Mattel Opposition to MGA's
13  Motion at 5).

14      These allegations do not "allege a unified course of fraudulent conduct and
15  rely entirely on that course of conduct as the basis of a claim" such that the claim
16  could be said to "sound in fraud" and therefore require pleading with particularity as
17  to the entire claim. The allegations establish that much of the conduct complained
18  of consists of simple copying of the Bratz-related works or the creation of Bratz-
19  derivative works. Such allegations are unrelated to allegations of fraud. Therefore,
20  if this claim falls anywhere on the spectrum other than the Rule 8(a) category, it
21  falls in the category described by Vess as those claims in which a claimant chooses
22  to "allege some fraudulent and some non-fraudulent conduct." Id. at 1104.

23      When one considers that the alleged predicate acts of criminal copyright
24  infringement are but a small part of a larger, and singular, claim brought pursuant to
25  RICO, it is evident that the RICO claim falls neatly into the category of claims that
26  are based partly on fraudulent and partly on non-fraudulent conduct. The Court
27  has already found that certain fraudulent conduct -- that supporting the alleged
28  predicate acts of mail fraud and wire fraud -- is insufficiently pleaded. The current

                    23    EXHIBIT _____9_____

                          PAGE _____126_____

1  focus, however, is whether the allegations supporting the predicate acts of criminal
2  copyright infringement involve fraudulent conduct.

3      Here, there are two types of works allegedly infringed. The first type is the
4  Bratz-related and Bratz-derivative works. The second type is Mattel's other trade
5  secrets and confidential information. Both types are alleged -- with particularity -- to
6  have been procured by MGA through fraudulent conduct, but the criminal copyright
7  infringement predicate acts do not implicate that fraudulent conduct. Rather, they
8  implicate only questions of whether counter-defendants wilfully infringed Mattel's
9  works for commercial advantage or private financial gain. Here, Mattel has
10 sufficiently alleged predicate acts of criminal copyright infringement by alleging that
11 MGA and other counter-defendants willfully infringed its copyrights for purposes of
12 gaining commercial advantage and private financial gain. As Mattel correctly
13 contends, state of mind, in this instance willfulness, may be pleaded generally. See
14 Ferguson Beauregard/Logic Controls v. Mega systems, LLC, 350 F.3d 1327, 1343
15 (Fed. Cir. 2003).

16      **4.      Injury to Business or Property**

17      "Recovery under RICO is limited to those injuries flowing from predicate
18 acts . . . ." Resolution Trust Corp. v. Keating, 186 F.3d 1110, 1117 (9th Cir. 1999)
19 (citing Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 497 (1985)). Here, Mattel
20 has alleged damages flowing from the alleged acts of racketeering activity. (AAC
21 ¶ 96). Damages easily flow from theft of trade secrets and confidential information
22 committed by a direct competitor and from infringement of copyrights that are
23 alleged to have been used to make millions -- if not billions -- of dollars.

24      Counter-defendants argue that Mattel lacks standing to sue on behalf of its
25 subsidiaries. This issue arises because many of the allegations of the thefts of
26 trade secrets involve actions taken in Mexico or Canada by employees of Mattel's
27 foreign subsidiaries. Mattel argues that it is not attempting to sue for damages
28 incurred by its subsidiaries; rather, Mattel alleges that much of the confidential

24      EXHIBIT ___9___

PAGE ___127___

1  information stolen by the employees of Mattel's subsidiaries belonged not to

2  Mattel's subsidiaries, but to Mattel itself.  Based on these allegations, Mattel may

3  sue for damages it sustained.  Mattel may not sue for damages incurred by its

4  foreign subsidiaries.

5              **5.    Ruling on Motions to Dismiss**

6              The Motions to Dismiss the RICO claims are **GRANTED** in part.  As set forth

7  herein, the alleged predicate acts of mail fraud and wire fraud are insufficiently

8  alleged, and Mattel is **GRANTED** leave to amend the AAC.

9  **C.    Trade Secrets**

10             MGA contends that Mattel has failed to plead its trade secrets with sufficient

11  particularity to comply with its duties under Cal. Code Civ. P. § 2019.210, which

12  provides:

13              In any action alleging the misappropriation of a trade secret

14              under the Uniform Trade Secrets Act . . . , before commencing

15              discovery relating to the trade secret, the party alleging the

16              misappropriation shall identify the trade secret with reasonable

17              particularity subject to any orders that may be appropriate under

18              Section 3426.5 of the Civil Code [involving in camera reviews and

19              sealing of court documents].

20  Id.  Based on the unambiguous language of the statute, the Court agrees with

21  Mattel's characterization of this requirement as one related to discovery rather than

22  related to pleading.

23             The Court also agrees that, by identifying documents in discovery by Bates-

24  stamp number, Mattel has complied with the dictates of § 2019.210.  See

25  Advanced Modular Sputtering, Inc. v. Superior Court, 132 Cal.App.4th 826, 835-36,

26  (2005) (internal quotation marks and citations omitted) ("[Reasonable particularity]

27  means that the plaintiff must make some showing that is reasonable, i.e., fair,

28  proper, just and rational[,] . . . under all of the circumstances to identify its alleged

                              25      EXHIBIT _____ 9 _____

                                      PAGE _____ 128 _____

1 trade secret in a manner that will allow the trial court to control the scope of

2 subsequent discovery, protect all parties' proprietary information, and allow them a

3 fair opportunity to prepare and present their best case or defense at a trial on the

4 merits."). MGA's complaints regarding the volume of documents so identified, and

5 their skepticism of Mattel appropriately attaching such an identification to many of

6 those identified documents, are not properly addressed at this stage of the

7 proceedings.

8       The motion to dismiss the trade secrets claim on this basis is therefore

9 **DENIED.**

10 **D.    Duplicative State-Law Claims**

11      Bryant's motion to dismiss Mattel's duplicative state-law claims is **DENIED.**

12 The state-law counterclaims asserted against Bryant in the AAC admittedly overlap

13 with the claims asserted against him in the 04-9059 case, however, the factual

14 allegations underlying the claims asserted in the AAC are broader in scope than

15 those underlying the claims asserted in the 04-9059 case.

16                **IV. Motion to Dismiss for Lack of Personal Jurisdiction**

17      MGA Mexico challenges this Court's exercise of personal jurisdiction over it.

18 As set forth below, the Court concludes that it may, consistent with California law

19 and the federal Due Process Clause, exercise specific personal jurisdiction over

20 this admittedly foreign corporation.

21 **A.    The Constitutional Exercise of Personal Jurisdiction**

22      Where a party moves to dismiss a claim for lack of personal jurisdiction, the

23 party asserting the claim bears the burden of demonstrating that jurisdiction is

24 appropriate. Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir.

25 2004). However, in opposing a motion to dismiss for lack of personal jurisdiction,

26 the party asserting the claim need only make a *prima facie* showing of jurisdictional

27 facts. Id. Disputed facts are to be resolved in favor of the exercise of personal

28 jurisdiction. Id.

                                         26        EXHIBIT ___9___

                                                   PAGE ___129___

1   Because there is no applicable federal statute governing personal

2   jurisdiction, the Court applies the law of the state in which the district court sits. Id.

3   (citations omitted). "Because California's long-arm jurisdictional statute is

4   coextensive with federal due process requirements, the jurisdictional analyses

5   under state law and federal due process are the same." Id. at 800-01 (citations

6   omitted). In order for a court's exercise of personal jurisdiction over a nonresident

7   defendant to be constitutionally permissible, the defendant must have "minimum

8   contacts" with the forum state "such that the exercise of jurisdiction does not offend

9   traditional notions of fair play and substantial justice." Id. at 801 (internal quotation

10  marks and citation omitted).

11  Personal jurisdiction may be either general or specific. For general personal

12  jurisdiction to apply, a defendant (or here, a counter-defendant) "must engage in

13  continuous and systematic general business contacts . . . that approximate a

14  physical presence in the forum state." Id. (internal quotation marks and citations

15  omitted).

16  To determine whether it has specific personal jurisdiction over a nonresident

17  defendant, the Court employs a three-part test:

18          (1) The non-resident defendant must purposefully direct his

19      activities or consummate some transaction with the forum or resident

20      thereof; or perform some act by which he purposefully avails himself

21      of the privilege of conducting activities in the forum, thereby invoking

22      the benefits and protections of its laws; (2) the claim must be one

23      which arises out of or relates to the defendant's forum-related

24      activities; and (3) the exercise of jurisdiction must comport with fair

25      play and substantial justice, i.e. it must be reasonable.

26  Id. at 802.

27  The party asserting the claim bears the burden of establishing the first two

28  parts of the test. Id. If that party establishes the first two parts, then the burden

27    EXHIBIT _____9_____

        PAGE _____130_____

1    shifts to the party resisting the Court's exercise of personal jurisdiction "to present a
2    **compelling case** that the exercise of jurisdiction would not be reasonable." Id.
3    (emphasis added).

4        The first part of the test is satisfied by either "purposeful availment" or
5    "purposeful direction." Id. Purposeful availment is shown when a defendant avails
6    itself of the privilege of doing business in a forum state, usually met when the
7    defendant took some action in the forum, such as executing or performing a
8    contract there. Id. By virtue of such actions, a defendant "purposefully avails itself
9    of the privilege of conducting activities within the forum State, thus invoking the
10   benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958).
11   When taking advantage of these "benefits and protections," a defendant must also
12   "submit to the burdens of litigation in that forum." Burger King Corp. v. Rudzewicz,
13   471 U.S. 462, 476 (1985).

14       By contrast, purposeful direction, involves actions by the defendant outside
15   of the forum state but that are directed at the forum. Schwarzenegger, 374 F.3d at
16   803. The purposeful direction analysis is derived from a three-part "effects test"
17   that finds its roots in the Supreme Court's decision in Calder v. Jones, 465 U.S. 783
18   (1984). Pursuant to this analysis, the defendant must "have (1) committed an
19   intentional act, (2) expressly aimed at the forum state, (3) causing harm that the
20   defendant knows is likely to be suffered in the forum state." Id.; Schwarzenegger,
21   374 F.3d at 803. All three parts of the test must be satisfied. The second part of
22   the effects test is described by the Ninth Circuit as the "express aiming"
23   requirement, and requires that the counter-defendants "expressly aimed" its
24   intentional act at California. See Schwarzenegger, 374 F.3d at 806. Specifically,
25   "express aiming" is found where the defendant is alleged to have engaged in
26   wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident
27   of the forum state." Bancroft & Masters, Inc. v. Augusta Nat. Inc., 223 F.3d 1082,
28

                                26    EXHIBIT _____ 9 _____

                                      PAGE _____ 131 _____

1   1087 (9th Cir. 2000).[5]

2       Assuming that the party asserting a claim can establish that the party

3   resisting the Court's exercise of personal jurisdiction has met either the purposeful

4   availment or express aiming part of the three-part test regarding the exercise of

5   specific personal jurisdiction, courts next consider whether the claim arises out of or

6   relates to the forum-related activities. In making this determination, the Court

7   considers whether the contacts with the forum gave rise to the claims asserted,

8   employing a "but for" standard.  See Doe v. Unocal Corp., 248 F.3d 915, 924 (9th

9   Cir. 2001).

10      Once the purposeful availment/express aiming and relatedness requirements

11  are established, the burden shifts to the party resisting the Court's exercise of

12  jurisdiction to show that exercise of jurisdiction is unreasonable. In determining

13  reasonableness, the Court considers seven factors:

14      1) the extent of the defendant's purposeful interjection into the forum

15      state's affairs; 2) the burden on the defendant; 3) conflicts of law

16      between the forum and defendant's home jurisdiction; 4) the forum's

17      interest in adjudicating the dispute; 5) the most efficient judicial

18      resolution of the dispute; 6) the plaintiff's interest in convenient and

19      effective relief; and 7) the existence of an alternative forum.

20

21      [5] What constitutes, or doesn't constitute, "express aiming" is best
    illustrated by example. For instance, in Pebble Beach Co. v. Caddy, 453 F.3d
22  1151 (9th Cir. 2006), no express aiming was found where the owner of a bed-and-
    breakfast in England (overlooking a pebbly beach) used the term "pebblebeach,"
23  the name of a famous golf course located in California, on its web site. Id. at
    1153, 1156-57. The Ninth Circuit acknowledged that it might be foreseeable that
24  the defendant's use of the web site might have some effect on California, but
    noted that mere foreseeability of effect in a forum state is not enough to constitute
25  express aiming. Id. at 1157. In contrast to Pebble Beach is the case of
    Panavision Intern., L.P. v. Toeppen, 141 F.3d 1316, 1321 (9th Cir. 1998), in which
26  the Ninth Circuit found that the express aiming requirement was met where the
    defendant registered plaintiff's marks as Internet domain names in order to force a
27  California plaintiff to pay him money.
28

EXHIBIT      9

PAGE      132

1   Roth v. Garcia Marquez, 942 F.2d 617, 623 (9th Cir. 1991) (internal citation
2   omitted). No factor is dispositive and the Court must balance all seven. Id.
3   (internal citation omitted).

4   **B.    MGA Mexico's Contacts with the Forum State**

5           The AAC alleges that Issac Larian and other MGA officers, while in
6   California, executed a plot to target three high-level employees of Mattel Mexico,
7   and entice them to steal Mattel's trade secrets. In written offers of employment to
8   these three individuals, Issac Larian held himself out to be the CEO of MGA
9   Mexico. This plot was facilitated by a number of cross-border communications
10  among the participants as well as travel to the United States by the targeted
11  employees.

12  **C.    The Court May Exercise Personal Jurisdiction over MGA Mexico**

13          The AAC repeatedly alleges that Larian, who held himself out to be MGA
14  Mexico's CEO, and who was designated as MGA Mexico's "legal agent" in Mexican
15  registration document actively sought to induce others to access and steal Mattel's
16  trade secrets while located in the California. See Velázquez Decl. Exs. A-C; Salem
17  Decl. Ex. B. This constitutes purposeful availment.

18          To the extent that any of the actions taken in Mexico by the three Mexican
19  employees may be imputed to Mattel Mexico, there is also purposeful direction.
20  The alleged actions taken on behalf of MGA Mexico were specifically engineered to
21  result in the alleged illegal acquisition of trade secrets belonging to Mattel, a
22  California resident.[6]

23          The relatedness requirement is also clearly met. The contacts with
24  California involve actions allegedly taken in order to further the illegal acquisition of
25  Mattel's trade secrets, leading to the present claims against MGA Mexico for
26  misappropriation of trade secrets and the related RICO claims.

27

28          [6] The AAC alleges the theft of trade secrets belonging not only to Mattel's
    Mexican subsidiary, but also to Mattel itself, which is a California corporation.

                              30    EXHIBIT ___9___

                                    PAGE ___133___

1    The burden, therefore, is on MGA Mexico to show that the exercise of
2    jurisdiction is unreasonable.[7] As noted previously, the Court considers seven
3    factors. The first factor the Court considers is the defendant's purposeful
4    interjection. For the reasons the Court has found purposeful availment and
5    purposeful direction, this factor favors the exercise of personal jurisdiction.

6    MGA Mexico argues, without elaboration, that the burden of defending itself
7    in California is "significant." However, the assumption underlying this argument is
8    that the present action is more properly litigated by MGA's and Mattel's Mexican
9    subsidiaries. This assumption misses the point of Mattel's claim against MGA
10   Mexico; Mattel, the parent company, was itself injured by MGA's Mexico's alleged
11   misappropriation of its own trade secrets because the alleged misappropriation was
12   not limited to trade secrets belonging to its Mexican subsidiary. The argument
13   based on this faulty assumption is therefore unconvincing. In order to show
14   unreasonableness, the burden on the defendant must be great. See Panavision,
15   141 F.3d at 1323 ("A defendant's burden in litigating in the forum is a factor in the
16   assessment of reasonableness, but unless the inconvenience is so great as to
17   constitute a deprivation of due process, it will not overcome clear justifications for
18   the exercise of jurisdiction.") (internal quotation marks and citation omitted).

19   As to the third and seventh factors, regarding conflicts of law and the

20

21       [7] In its reply, MGA Mexico declares that it "made a 'compelling case' in
22   support of its motion to dismiss that it would be unreasonable to force it to litigate
     in this forum." MGA Mexico Reply at 10. However, MGA Mexico's motion papers
23   fail to acknowledge that they bear the burden on this issue. See MGA Mexico's
     Memorandum of Points and Authorities at 10 ("Finally, Mattel has failed to satisfy
     the third element required for specific jurisdiction -- that the exercise of jurisdiction
24   over the defendant would be reasonable."). As Mattel accurately predicted in its
     opposition papers, MGA Mexico implicitly acknowledged its burden in the reply,
25   and used the occasion to improperly present additional arguments for the first
     time. Although the Court ordinarily would not consider such arguments, it does so
26   here because it does not change the Court's ultimate conclusion. See In re Intuit
     Privacy Litigation, 138 F.Supp.2d 1272, 1275 n.3 (C.D. Cal. 2001) ("this court
27   does not consider arguments raised anew for the first time in a reply brief as to do
28   so would unfairly deny the non-moving party an opportunity to respond.").

31    EXHIBIT   9
      PAGE   134

1  existence of an alternative forum, MGA Mexico makes veiled references to the

2  criminal action in Mexico as constituting a choice of forum made by Mattel,

3  apparently implying that Mattel, having chosen to pursue criminal charges in

4  Mexico, should be precluded from invoking the power of this Court. It appears to

5  the Court that MGA Mexico has failed to fully and clearly articulate this argument

6  because it is untenable. Whether Mexican authorities pursue criminal charges

7  based on the same conduct underlying the claims in this action is irrelevant to

8  whether this Court may constitutionally exercise personal jurisdiction over MGA

9  Mexico. Therefore, MGA Mexico's argument on this issue is unpersuasive.

10       The fourth factor, the interest in adjudicating the dispute, weighs in favor of

11  the exercise of personal jurisdiction, as does the sixth, the plaintiff's interest in

12  convenient and effective relief.

13       MGA Mexico argues that the fifth factor weighs in its favor when the Court

14  considers that the site of injury, which it does not believe is California, is the most

15  efficient forum. However, this argument is premised on the rejected assumption

16  that the present action is more properly litigated between MGA's and Mattel's

17  Mexican subsidiaries.

18       On balance, a consideration of the reasonableness factors reveals that MGA

19  Mexico has fallen far short of establishing the "compelling case" necessary to

20  render the Court's exercise of personal jurisdiction unreasonable.

21       The Court concludes that Mattel has established the first two parts of the

22  specific personal jurisdiction test, and that MGA Mexico has failed to establish that

23  the Court's exercise of personal jurisdiction over it is otherwise unreasonable.

24  Accordingly, the Court **DENIES** MGA Mexico's motion to dismiss.

25              **V. MGA's and Bryant's Motions Regarding**

26              **the Discovery Master's March 7, 2007, Order**

27       MGA and Bryant seek review of a decision that resolved discovery disputes

28  that arose during Bryant's deposition, and that was rendered by the Court-

32       EXHIBIT _____9_____

         PAGE _____135_____

1   appointed discovery master, Judge Edward A. Infante (Ret.), on March 7, 2007.
2   The Court's order appointing Judge Infante provides that his orders resolving
3   discovery disputes shall be reviewed in the same manner as those made by a
4   magistrate judge of this Court.

5   Pursuant to Fed. R. Civ. P. 72(a), when the parties object to the ruling of a
6   magistrate judge on a non-dispositive manner, such as a discovery dispute, the
7   district judge may modify or set aside only those portions of the magistrate judge's
8   order that are "clearly erroneous or contrary to law." Id.

9   The "clearly erroneous" language refers to factual findings. See e.g.,
10  Concrete Pipe and Products of California, Inc. v. Construction Laborers Pension
11  Trust, 508 U.S. 602, 622 (1993) (discussing the clearly erroneous standard). Here,
12  there were no explicit factual findings or legal conclusions made by Judge Infante
13  regarding the relevant rulings; therefore, the Court reviews the record presented to
14  Judge Infante to determine whether his rulings are contrary to law. See March 7,
15  2007, Order.

16  Questions that do not seek the substance of attorney-client communications
17  generally do not implicate the attorney-client privilege. United States v. Carrillo,16
18  F.3d 1046, 1050 (9th Cir. 1994) (finding no violation of the attorney-client privilege
19  where prosecutor, who asked whether a criminal defendant had consulted with his
20  attorney during a recess in order to raise an inference of attorney coaching of
21  testimony during the trial, stopped short of asking defendant the substance of
22  defendant's communications with his attorney). Therefore, questions such as the
23  one addressed by objection No. 38, asking whether Bryant talked to counsel for
24  MGA during a break from his deposition, are not subject to objection based on the
25  attorney-client privilege. This conclusion is consistent with Judge Infante's Order.

26  Mattel's question regarding who is paying Bryant's legal fees, addressed by
27  objection No. 42, is likewise not objectionable. MGA and Bryant argue that state
28  law applies; however, because the present consolidated actions involve both

33    EXHIBIT ____9____

          PAGE ___136___

1   federal and state-law claims, the federal law of privilege applies. Agster v.
2   Maricopa County, 422 F.3d 836, 839-40 (9th Cir. 2005) ("Where there are federal
3   question claims and pendent state law claims present, the federal law of privilege
4   applies."). To that end, consistent with federal privilege law, fee-payment
5   arrangements are relevant to credibility and bias, and if asked in discovery, Bryant
6   must disclose who is paying his legal fees. See United States v. Blackman, 72 F.3d
7   1418, 1424 (9th Cir. 1995) ("As a general rule, client identity and the nature of the
8   fee arrangement between attorney and client are not protected from disclosure by
9   the attorney-client privilege."). This conclusion is also consistent with Judge
10  Infante's Order.

11          However, in this case, the joint-defense privilege protects from disclosure the
12  substance of certain statements made by Bryant and his attorneys in the presence
13  of attorneys representing MGA. "The joint defense privilege protects
14  communications between an individual and an attorney for another when the
15  communications are 'part of an on-going and joint effort to set up a common
16  defense strategy.'" United States v. Bay State Ambulance and Hosp. Rental
17  Service, Inc., 874 F.2d 20, 28 (1st Cir. 1989) (internal quotation marks and citation
18  omitted). Generally, to rely on the joint-defense privilege, a party must establish
19  three elements: "(1) [T]he communications were made in the course of a joint
20  defense effort, (2) the statements were designed to further the effort, and (3) the
21  privilege has not been waived." Id.

22          The Court finds the first element was met. The Court, based on its review of
23  the record pending before Judge Infante, is satisfied that the parties had in place at
24  the time of Bryant's deposition, and have in place today, a valid joint-defense
25  agreement. The Court also finds that the second element was met. Mattel cannot
26  seriously contend that MGA's interests are not aligned with Bryant's in this action,
27  or that counsels' thorough preparation of Bryant for his deposition was not designed
28  to further the joint defense effort. Finally, as for the third element, there is no

34      EXHIBIT ___9___

        PAGE ___137___

1  suggestion in the record that any party has waived the attorney-client privilege.

2       Accordingly, the Court holds that Judge Infante's rulings on Objection Nos.

3  39 and 50 are contrary to law to the extent those rulings require Bryant to divulge

4  the substance of his communications with counsel for MGA.

5                              **VII. Conclusion**

6       In the manner set forth more fully herein, the Court makes the following

7  rulings:

8       1.    Motion of MGA Entertainment, Inc., ("MGA") and Issac Larian

9  ("Larian") to Dismiss Mattel's Amended Answer and Counterclaims (docket # 189):

10  **GRANTED IN PART AND DENIED IN PART.**

11      2.    Motion of Carter Bryant to Dismiss Counterclaims II, III, V, VII, IX, and

12  XI (docket # 191): **GRANTED IN PART AND DENIED IN PART.**

13      3.    Motion of MGA Mexico to Dismiss Mattel's Amended Answer and

14  Counterclaims (docket # 266): **DENIED.**

15      4.    Motion of MGA Objecting to Discovery Master's March 7, 2007, Order

16  (docket # 308): **GRANTED IN PART AND DENIED IN PART.**

17      5.    Motion of Carter Bryant Objecting to Discovery Master's March 7,

18  2007, Order (docket # 306): **GRANTED IN PART AND DENIED IN PART.**

19      Mattel is **GRANTED** ten days' leave to amend the AAC in conformity with

20  this Order. The Counter-defendants shall answer or otherwise respond to the

21  SAAC no later than thirty days after the filing of the SAAC.

22

23

24

25

26

27

28

                                    35

EXHIBIT ___9___

PAGE ___138___

1      The Motion Re Trial Structure (docket #462) has been the subject of further

2 briefing by the parties and is set for further oral argument on July 2, 2007.  Ruling

3 on that matter is **DEFERRED** pending oral argument.

4      DATE:  June 27, 2007

5

6                  STEPHEN G. LARSON
                 UNITED STATES DISTRICT JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

36

EXHIBIT    9

PAGE    139

# EXHIBIT 10

1 | Hon. Edward A. Infante (Ret.)
JAMS
2 | Two Embarcadero Center
Suite 1500
3 | San Francisco, California 94111
Telephone:    (415) 774-2611
4 | Facsimile:    (415) 982-5287

5

6

7

8 | UNITED STATES DISTRICT COURT

9 | CENTRAL DISTRICT OF CALIFORNIA

10 | EASTERN DIVISION

11

| | |
|---|---|
| 12 — CARTER BRYANT, an individual, | CASE NO. CV 04-09049 SGL (RNBx) |
| 13 — | JAMS Reference No. 1100049530 |
| 14 — Plaintiff, | |
| 15 — v. | Consolidated with |
| | Case No. CV 04-09059 |
| | Case No. CV 05-2727 |
| 16 — MATTEL, INC., a Delaware corporation, | **ORDER RE MATTEL'S MOTIONS TO** |
| 17 — Defendant. | **COMPEL FARHAD LARIAN, KAYE** |
| | **SCHOLER AND STERN &** |
| 18 — | **GOLDBERG TO PRODUCE** |
| | **DOCUMENTS** |
| 19 — CONSOLIDATED WITH | |
| 20 — MATTEL, INC. v. BRYANT and | |
| | MGA ENTERTAINMENT, INC. v. MATTEL, |
| 21 — INC. | |

22

23

24 | I. INTRODUCTION

25     The following motions are pending for decision, each of which seeks discovery from non-

26 parties: Mattel, Inc.'s ("Mattel") (1) Motion to Compel Farhad Larian to Produce Documents; (2)

27 Motion to Compel Kaye Scholer to Produce Documents; and (3) Motion to Compel Stern &

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

1

1-25    EXHIBIT __10__

PAGE __140__

1  Goldberg to Produce Documents. Each of the non–parties submitted oppositions.[1] In addition,

2  MGA Entertainment, Inc., Isaac Larian, MGA Entertainment (HK) Limited, and MGAE de

3  Mexico S.R.L. de C.V. (collectively "MGA") submitted oppositions to the motions. Mattel

4  submitted a consolidated reply on January 3, 2008. The motions were heard on January 16, 2008,

5  at which time Mattel agreed to hold in abeyance its Motion to Compel Stern & Goldberg to

6  Produce Documents. This Order, therefore, addresses only Mattel's motions to compel Farhad

7  Larian and Kaye Scholer to produce documents.

8       On January 22, 2008, the parties submitted a Stipulation Regarding Protective Orders to

9  facilitate production of documents responsive to the subpoenas at issue.

10                                    II. BACKGROUND

11      Since the inception of MGA in 1979 until December of 2000, Isaac Larian, a defendant

12  herein and MGA's CEO, and his brother Farhad Larian, a non-party, shared ownership and

13  management of MGA. A dispute developed between the two brothers and in March of 2000,

14  Isaac Larian proposed that Farhad Larian sell his interest in MGA to him.

15      On September 28, 2000, the Larian brothers agreed to have their uncle, Morad Zarabi,

16  arbitrate their dispute and decide a fair value for MGA and also decide which brother should sell

17  his ownership interest to the other. The brothers' agreement to arbitrate was entered into ten days

18  after the alleged effective date of Carter Bryant's contract purportedly assigning rights to Bratz to

19  MGA. Isaac Larian did not tell his brother about the contract with Bryant.

20      Mr. Zarabi retained an appraiser, Ernest Dutcher, to value MGA based on "the period

21  ending December 31, 1999." By December 4, 2000, Mr. Zarabi determined that Farhad Larian

22  should sell his 45% ownership interest in MGA to Isaac Larian and the two entered into an

23  Agreement for Sale of Stock by which Farhad Larian sold his interest for $8.775 million.

24

25

26      _____

        [1] Mattel contends that Kaye Scholer's opposition was not timely filed and therefore should not be
27  considered. Although the opposition was ten days late, Kaye Scholer's brief will nevertheless be considered in the
    interest of resolving these disputes on the merits.

28
        Bryant v. Mattel, Inc.,
        CV-04-09049 SGL (RNBx)                                                              2

                                                    *10*

1      In the summer of 2002, Farhad Larian complained to Mr. Zarabi that Isaac Larian had

2 allegedly fraudulently concealed Bratz during the negotiations that led to Farhad Larian's sale of

3 MGA stock. Mr. Zarabi oversaw another appraisal of MGA based upon information he gathered

4 in 2002. Mr. Dutcher produced an appraisal on February 13, 2003 that valued MGA as of

5 December 31, 2000 and projected a 2001 revenue growth rate of twenty-five percent (25%) based

6 upon "hot projects that came along." Mattel's Motion at p.4, Ex. 8 to Decl. of Juan Pablo Albán.

7 Other information relied upon by Mr. Dutcher suggests that MGA had expansionary plans in 2000

8 compared to the prior four years.

9      Unable to resolve his disputes through Mr. Zarabi, Farhad Larian sued Isaac Larian,

10 alleging, among other things, that (a) in late 1999 or early 2000, Isaac Larian and MGA became

11 aware of a new product line called Bratz; (b) starting in early 2000 and throughout 2000, Isaac

12 Larian and MGA devised plans to develop and distribute Bratz; and (c) Isaac Larian concealed the

13 plans for Bratz from Farhad Larian and Mr. Zarabi in order to keep the valuation of MGA

14 artificially low. Notably, MGA and Bryant claim in the instant lawsuit that they did not even

15 meet until September 2000.

16      Isaac Larian successfully moved to compel arbitration of Farhad Larian's claims. In early

17 February 2005, Mr. Zarabi declined to serve as arbitrator and the court appointed another

18 arbitrator. A few weeks later, Farhad Larian filed suit against Mr. Zarabi alleging that he

19 conspired with Isaac Larian to conceal facts.

20      The arbitration of Farhad Larian's claims started on November 16, 2005. Two days into

21 the proceedings, however, Farhad Larian dismissed his claims. Isaac Larian sought to recover his

22 attorneys' fees and won an award in excess of $1 million against his brother.

23 Mattel Subpoenas Farhad Larian to Produce Documents

24      On August 31, 2007, Mattel subpoenaed Farhad Larian to appear for deposition and to

25 produce (1) documents relating to the Larian v. Larian disputes; (2) documents related to non-

26 Bratz allegations by Mattel and MGA, primarily related to allegations of trade secret theft; (3)

27 documents relating to Farhad Larian's relationship to MGA, including his position there,

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

3

EXHIBIT ___10___

PAGE ___142___

1   ownership interests, and payments from MGA or Isaac Larian to Farhad Larian; (4) Farhad

2   Larian's knowledge and possession of documents specifically from the instant lawsuit, including

3   his communications with Mattel; and (5) information about the location of responsive documents.

4   The majority of Mattel's requests seek documents in the first category described above.

5       On September 21, 2007, Farhad Larian served responses and objections in which he

6   agreed to produce documents responsive to eleven of Mattel's forty-one document requests.

7   After a brief stay of discovery, counsel for Farhad Larian and Mattel met and conferred beginning

8   on November 20, 2007. During the meet and confer process, Farhad Larian agreed to produce

9   documents responsive to some, but not all of Mattel's forty-one requests. On November 21,

10   2007, Farhad Larian produced approximately one red well of documents.

11       The parties held a second meet and confer conference call on November 27, 2007, and

12   were able to resolve their disputes regarding many more, but not all requests. In particular, the

13   parties were ultimately able to resolve their disputes regarding the requests for documents related

14   to non-Bratz allegations. At the conclusion of the second meet and confer session, it was agreed

15   that Farhad Larian would make a supplemental production of documents on December 6, 2007,

16   and provide a written supplemental response. The parties attempted to schedule another meet and

17   confer session, but could not agree upon a date. On the evening of December 6, 2007, Mattel

18   filed the instant motion. Mattel seeks an order compelling Farhad Larian to produce documents

19   responsive to every request in its subpoena; overruling each of Farhad Larian's objections; and

20   ordering him to produce a document-by-document privilege log.

21   Mattel Subpoenas Isaac Larian's Attorney –Kaye Scholer

22       On or about September 6, 2007, Mattel also subpoenaed Kaye Scholer, the firm that

23   represented Isaac Larian in the Larian v. Larian proceedings. The subpoena consisted of thirty-

24   five (35) requests seeking the same five categories of documents it subpoenaed from Farhad

25   Larian. Kaye Scholer's representation of Isaac Larian included defending him in two related

26   Superior Court actions, two arbitration proceedings and an appeal to the California Court of

27   Appeals, all of which covered a period of several years. As a result of this representation Kaye

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

4

EXHIBIT ___10___

PAGE ___143___

1   Scholer has accumulated approximately fifty-six (56) boxes of its client's files, including, among

2   other things, correspondence files, pleading files, discovery files, witness preparation files,

3   research files, exhibits, attorney work files, and billing files.

4        On or about September 18, 2007, Kaye Scholer served its objections, asserting, among

5   other things, that the requests are duplicative, unreasonably cumulative, harassing and oppressive.

6   The parties met and conferred on October 11 and 29, 2007.  Kaye Scholer agreed to review the

7   following files for responsive documents:  (1) pleading files; (2) discovery files; and (3)

8   arbitration exhibits.  Kaye Scholer's rationale for limiting its search for responsive documents to

9   these three files was to avoid undue burden because most of the documents in other files would be

10  protected by the work product doctrine and/or the attorney-client privilege.  Kaye Scholer also

11  agreed to produce documents responsive to the majority of Mattel's requests.  However, Kaye

12  Scholer repeatedly informed Mattel that it objected to producing a document-by-document

13  privilege log because it would be unduly burdensome, expensive and inconvenient.

14       In the instant motion, Mattel seeks an order compelling Kaye Scholer to produce

15  documents responsive to every request in its subpoena and overruling Kaye Scholer's objections,

16  including privilege, or alternatively, compelling Kaye Scholer to produce a document-by-

17  document privilege log.

18  Mattel's Other Discovery Efforts

19       Mattel has attempted to obtain documents related to the Larian v. Larian proceedings from

20  MGA and Isaac Larian.  As far as Mattel can ascertain, however, MGA has produced only four

21  documents relating to the Larian v. Larian proceedings and Isaac Larian has produced none.

22       Mattel also searched public filings in the Larian v. Larian and Larian v. Zarabi et al. civil

23  lawsuits.  Mattel found Mr. Dutcher's declaration that included the appraisals described above,

24  however, Mattel was not able to locate any of the raw data on which Mr. Dutcher relied.  Mattel

25  also served subpoenas on third parties involved in the Larian v. Larian proceedings, and met with

26  limited success.

27  //

28

5

EXHIBIT __10__

PAGE __144__

### III. STANDARDS

1
2      Rule 45 of the Federal Rules of Civil Procedure requires third parties to produce
3  documents (and reasonably accessible electronically stored information) that are responsive to a
4  subpoena that a party serves on them. Fed.R.Civ.P. 45(b), (d). If the subpoenaed documents are
5  relevant and there is good cause for their production, the subpoena is enforced unless the
6  documents are privileged or the subpoena is unreasonable, oppressive, annoying or embarrassing.
7  The factors to be balanced by the trial court in determining the propriety of a subpoena are the
8  relevance of the discovery sought, the requesting party's need, and the potential hardship to the
9  party subject to the subpoena. A person withholding subpoenaed information under a claim of
10 attorney-client privilege or protected by the work product doctrine must expressly make the claim
11 and "describe the nature of the withheld documents, communications, or tangible things in a
12 manner that, without revealing information itself privileged or protected, will enable the parties to
13 assess the claim." Fed.R.Civ.P. 45(d)(2).
14     Rule 45(c)(1), Fed.R.Civ.P., provides that "[a] party or attorney responsible for issuing
15 and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on
16 a person subject to the subpoena." Furthermore, "[t]he issuing court must enforce this duty and
17 impose an appropriate sanction--which may include lost earnings and reasonable attorney's fees--
18 on a party or attorney who fails to comply." Id.

### IV. DISCUSSION

20 A.  Documents Subpoenaed from Farhad Larian

21     Mattel contends that each of the categories of documents it seeks from Farhad Larian is
22 relevant and that there is good cause for production. First, Mattel contends that the Larian v.
23 Larian proceedings are relevant because Farhad Larian's allegations about the timing of the
24 origins and early development of Bratz and MGA's concealment thereof parallel and provide
25 support for the crux of Mattel's claims in the instant litigation. Second, Mattel contends that
26 documents about Farhad Larian's relationship with MGA are relevant to his credibility. In
27 particular, Mattel contends that payments from Isaac Larian and/or MGA to Farhad Larian are

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                        6

EXHIBIT _____ 10 _____

PAGE _____ 145 _____

1   relevant to credibility and possible bias.  Third, Mattel contends that documents relating to this

2   action are clearly relevant, especially in light of MGA and Isaac Larian's threat to disqualify

3   Mattel's counsel based upon purported communications between Mattel's counsel and Farhad

4   Larian.  Fourth, Mattel contends that it seeks information about the location of responsive

5   documents to determine whether Farhad Larian destroyed documents or for another reason no

6   longer has them.

7           Mattel next contends that Farhad Larian has failed to carry his burden of demonstrating

8   that the requests at issue are unreasonable, oppressive, annoying or embarrassing.  Further, Mattel

9   contends that the protective order in place in this lawsuit is sufficient to address Farhad Larian's

10  confidentiality or privacy concerns.  Lastly, Mattel contends that Farhad Larian's privilege log is

11  inadequate because it fails to justify his claims of privilege and work product protection on a

12  document-by-document basis.

13          Farhad Larian contends that Mattel's motion should be denied because Mattel violated its

14  meet and confer obligations by filing the motion before he made his scheduled supplemental

15  production and before the parties' meet and confer discussions had concluded.  According to

16  Farhad Larian, on November 27, 2007, it was agreed that he would make a supplemental

17  production of documents on December 6, 2007, and that he would provide a written supplemental

18  response.  Farhad Larian complied with this agreement and, on December 6, 2007, provided a

19  written supplemental response and, as Mattel acknowledges, approximately six boxes containing

20  approximately 12,000 pages of documents.  Nevertheless, Mattel filed the instant motion on

21  December 6, 2007, without reviewing the supplemental document production and written

22  supplemental response.  Farhad Larian also represents that as of December 6, 2007, the day

23  Mattel filed the instant motion, the parties acknowledged the need for a further meet and confer

24  session, as reflected in the numerous e-mails and correspondence exchanged between counsel.

25  Furthermore, Farhad Larian represents that after Mattel filed the instant motion, he requested that

26  Mattel take the motion off-calendar because his supplemental responses resolved the parties'

27  disputes as to all but three requests and because there was potential for resolving the remaining

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

7

EXHIBIT _____ 10
PAGE _____ 146

1 requests as well, but that Mattel refused.

2      Farhad Larian contends that in light of his supplemental production, he is now in full
3 compliance with Mattel's subpoena, except for three requests. He represents that he has produced
4 over 12,000 documents, including all non-privileged documents from the <u>Larian v. Larian</u> matters
5 that relate to Bratz (including its origin), Carter Bryant, Mattel, a fee agreement between Farhad
6 and MGA, and all documents related to appraisals of MGA that are not privileged or otherwise
7 covered by a protective order. He also contends that the privilege log he has produced to Mattel,
8 which describes the withheld documents by category instead of document-by-document, is
9 sufficient to substantiate his claims of privilege and work product protection. As for the three
10 remaining requests, Nos. 23, 24 and 41, Farhad Larian contends that they are overbroad, harassing
11 and cumulative and invade his and his family's privacy.

12                   <u>Farhad Larian Has Substantially Complied with the Subpoena</u>

13      Farhad Larian made a substantial supplemental production and provided a supplemental
14 written response on December 6, 2007. Indeed, Mattel acknowledges that it received
15 approximately six boxes of documents from Farhad Larian, which contain approximately 12,000
16 pages of documents. Nevertheless, Mattel contends in its reply brief that there are a few
17 deficiencies in Farhad Larian's production. For example, Mattel contends that Farhad Larian has
18 not produced (1) documents bates stamped "MZ" and "ED"; (2) raw data provided to the
19 appraisers in the <u>Larian v. Larian</u> litigations and the 2000 financial models that Farhad Larian
20 claimed Isaac Larian prepared; (3) three boxes of documents that Farhad Larian's counsel showed
21 Mattel's counsel and upon which MGA's disqualification threats against Mattel's counsel are
22 based; (4) the Dutcher Declaration; and (5) documents responsive to Request Nos. 17-19. Mattel
23 also contends that Farhad Larian has improperly limited its production to only those documents
24 that directly reference Bratz and Carter Bryant.

25      At the hearing, counsel for Farhad Larian confirmed that all responsive documents,
26 including the documents identified in Mattel's reply brief, had been or would be produced after
27 the parties executed the Stipulation Regarding Protective Orders, which has now been

28 Bryant v. Mattel, Inc., CV-04-09049 SGL (RNBx)

EXHIBIT 10
PAGE 147

8

1  accomplished.  Significantly, counsel represented that Farhad Larian did not limit his production

2  to only those documents that directly reference Bratz and Carter Bryant, and that his supplemental

3  responses make this point clear.  Counsel for Farhad Larian also represented that all privileged

4  documents have been identified on a privilege log.

5       In light of the December 6, 2007 supplementation, and based upon the representations

6  made by counsel for Farhad Larian at the hearing, Farhad Larian has substantially discharged his

7  obligation to comply with Mattel's subpoena.  Therefore, there is no need for an order compelling

8  any further production of documents.

9            Farhad Larian's Objections to the Three Remaining Requests are Justified

10      The only three requests to which Farhad Larian objects are Nos. 23, 24 and 41, which are

11  set forth in full below:

12       Request No. 23:  All DOCUMENTS RELATING TO any and all payments of
         money or transfers of anything of value that ISAAC LARIAN, his FAMILY
13       MEMBERS and/or MGA have made, have offered or have proposed, promised or
         agreed to make, to or for the benefit of YOU or YOUR FAMILY MEMBERS at
14       any time from January 1, 1999 through the present.

15       Request No. 24:  All DOCUMENTS RELATING TO any and all payments of
         money or transfers of anything of value that any PERSON has made, has offered
16       or has proposed, promised or agreed to make, to or for the benefit of YOU or
         YOUR FAMILY MEMBERS and that was related in any way to BRATZ,
17       BRYANT, MGA or this ACTION at any time from January 1, 1999 through the
         present.
18
         Request No. 41:  DOCUMENTS sufficient to IDENTIFY since January 1, 1999
19       through the present (a) each account with any bank or financial institution that
         YOU have or have had, or that YOU have or have had any legal beneficial
20       interest in; (b) each telephone subscription service account that YOU have or have
         had, or that YOU use or have used; and (c) each email account that YOU have or
21       have had, or that YOU use or have used.

22  Farhad Larian contends that Mattel's stated justification for the requests – bias and credibility – is

23  questionable because he is not an adverse witness to Mattel.  Farhad Larian represents that MGA

24  has never asked him to testify on the company's behalf.  Rather, only Mattel intends to call him as

25  a witness.  Farhad Larian asserts that there is no reason for Mattel to impeach its own witness.

26      Furthermore, Farhad Larian contends that even if it is advantageous for Mattel to attack

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

9

EXHIBIT _____10_____

PAGE _____148_____

1   his credibility, the scope of Mattel's requests go far beyond what Mattel is reasonably entitled to

2   receive through discovery. He contends that pursuant to Rule 26, Fed.R.Civ.P., he should not be

3   subjected to discovery that is burdensome, cumulative, unnecessarily costly, or insufficiently

4   probative to the issues in the litigation to warrant the expense of production. Furthermore, he

5   contends that the usual restrictions on discovery set forth in Rule 26 should be rigorously applied

6   to protect non-parties such as himself.

7        Farhad Larian contends that the three requests at issue are overbroad and harassing in

8   several respects. First, he points out that the requests seek documents from 1999, which is five

9   years before this action was filed and six years before MGA was involved in this action. Farhad

10  Larian contends that payments made to him and his family before this action was filed and before

11  MGA was a party to the case have no relevance to his credibility as a witness in this case.

12  Second, Farhad Larian contends that the requests, as phrased, would include any card that

13  accompanied a gift to anyone in the Larian family, regardless of the dollar value of the gift.

14  Farhad Larian contends that family gifts for birthdays, Chanukah, or general gifts of money

15  between family members, have nothing to do with bias and violate his and his family's privacy

16  rights. Third, Farhad Larian contends that the requests are overbroad because they would require

17  him to disclose all documents reflecting payments he received as an employee of MGA and its

18  predecessor, a company he was employed by for decades.

19       Furthermore, Farhad Larian contends that he has already produced all non-privileged

20  documents which could potentially show bias, including the amount of money he was paid for his

21  shares of MGA, his consulting agreement with MGA after he sold his shares, and his fee

22  agreement with MGA. He contends that requiring him to search for and produce additional

23  payment documents would only result in him producing cumulative information, which is not

24  only irrelevant but violates his and his family's right to privacy under the California Constitution.

25  Farhad Larian also contends that it would be far less intrusive for Mattel to question him at a

26  deposition about payments he received from Isaac Larian and MGA than for him to respond to the

27  three requests at issue.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

10

EXHIBIT _____ *10*

PAGE _____ *149*

1    Mattel's motion is denied with respect to Request Nos. 23, 24 and 41. The requests seek

2  information that is only minimally relevant to the claims and defenses in the case. Mattel's only

3  stated justification for the discovery is that it is relevant to establish Farhad Larian's credibility

4  and bias. Although impeachment information is discoverable, Mattel is not entitled to the type of

5  unfettered discovery it is now seeking. Rather, Rule 26(b)(2), Fed.R.Civ.P., requires the court to

6  restrict or prevent discovery if (i) the discovery is unreasonably cumulative or duplicative, or is

7  obtainable from some other source that is more convenient, less burdensome, or less expensive;

8  (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the

9  information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely

10  benefit, taking into account the needs of the case, the amount in controversy, the parties'

11  resources, the importance of the issues at stake in the litigation, and the importance of the

12  proposed discovery in resolving the issues. These restrictions are particularly important to

13  consider where the discovery requests are directed at a non-party. See Moon v. SCP Pool Corp.,

14  232 F.R.D. 633, 638 (C.D. Cal. 2005) (citing Dart Indus. Co., Inc. v. Westwood Chem. Co., Inc.,

15  649 F.2d 649 (9th Cir. 1980) (discovery should be "more limited to protect third parties from

16  harassment, inconvenience, or disclosure of confidential information.").

17    Aside from asserting that the requested information is relevant to bias and credibility,

18  Mattel has made no attempt to justify the significant breadth and burden of its requests. The

19  requests are so broad as to include every payment or gift, regardless of amount, made between

20  Farhad and Isaac Larian, their family members and MGA since 1999. The number of years for

21  which Mattel seeks financial information is overbroad. Mattel is seeking documents since 1999,

22  five years before this action was filed and six years before MGA became a party to this action.

23  Mattel fails to explain how any payments MGA or Isaac Larian made to Farhad or his family

24  members before this action was filed or MGA was a party to the action have any bearing on his

25  credibility as a witness in this action. The requests are also overbroad in that they encompass

26  customary gifts between family members and Farhad Larian's routine salary payments, which

27  have only minimal relevance to Farhad Larian's credibility and bias as a witness in this case.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

11

EXHIBIT ___10___

PAGE ___150___

1    The requests are also cumulative of discovery Farhad Larian has already provided. In

2  particular, Farhad Larian represents that he has already disclosed to Mattel the amount of money

3  he was paid for his shares of MGA, his consulting agreement with MGA after he sold his shares,

4  and his fee agreement with MGA. In light of this production , it is unreasonable to require Farhad

5  Larian to search for and produce gift receipts, cards, and the breadth of other financial documents

6  responsive to Request Nos. 23, 24 and 41. Furthermore, there are other less intrusive and

7  burdensome means of obtaining discovery regarding Farhad Larian's credibility and bias. For

8  example, Mattel may question Farhad Larian about payments he received from his brother and

9  MGA during his deposition.

10    Nor has Mattel justified the intrusive and harassing nature of the requests. Personal

11  financial information is afforded protection by the California Constitution that is also recognized

12  by federal courts. Cal. Const., Art. I, §1; Valley Bank of Nevada v. Superior Court, 15 Cal.3d

13  652, 656 (1975); Kelly v. City of San Jose, 114 F.R.D. 653, 656 (N.D. Cal. 1987) (federal courts

14  should give "some weight" to privacy rights that are protected by state constitutions); Soto v. City

15  of Concord, 162 F.R.D. 603, 616 (N.D. Cal. 1995) (right to privacy in financial information has

16  been recognized by federal courts). When a privacy right is asserted as an objection to discovery,

17  the court must balance the need for the information versus the privacy right asserted. Soto, 162

18  F.R.D. at 616.

19    As discussed previously, there is little to no need for the breadth of financial information

20  sought by Mattel. Many of the documents covered by Request Nos. 23, 24, and 41 have little to

21  no relevance to Farhad Larian's credibility and bias as a witness in this case. Furthermore,

22  Farhad Larian has already produced numerous documents showing payments he received from

23  both his brother and MGA. There are also other less intrusive means for obtaining discovery

24  relating to Farhad Larian's credibility and bias. Furthermore, the scope of these three requests

25  unduly intrude into Farhad Larian's private affairs. The requests are so broad as to include gifts

26  exchanged between family members and Farhad Larian's paycheck stubs, and would require

27  Farhad Larian to disclose every account number he has at a bank or financial institution since

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

12

EXHIBIT _____ 10 _____

PAGE _____ 151 _____

1 │ 1999. Thus, the balance tips sharply in favor of protecting Farhad Larian's personal financial
2 │ information.

3 │ Farhad Larian's Privilege Log is Inadequate

4 │ Mattel challenges the sufficiency of Farhad Larian's privilege log. At issue is whether
5 │ Farhad Larian must describe and assert claims of privilege on a document-by-document basis, or
6 │ whether he may do so categorically. Farhad Larian is withholding approximately one bankers'
7 │ box of documents based upon claims of privilege and work product protection. Farhad Larian's
8 │ Opposition at p.20, n. 9.

9 │ Rule 45(d)(2), Fed.R.Civ.P., requires a party responding to a subpoena to provide
10 │ sufficient information to enable the party seeking discovery to assess the claims of privilege and
11 │ work product protection. The "universally accepted" means of claiming that requested documents
12 │ are privilege is by producing a document-by-document privilege log. Gail v. New England Gas
13 │ Co., Inc., 234 F.R.D. 28, 33 (D. R.I. 2007). The advisory comments to the 1993 amendment to
14 │ Rule 26(b), however, state that a description of documents by category is appropriate where it
15 │ would be "unduly burdensome" to provide a document-by-document privilege log. Specifically,
16 │ the advisory comment states, "Details concerning time, persons, general subject matter, etc., may
17 │ be appropriate if only a few items are withheld, but may be unduly burdensome when voluminous
18 │ documents are claimed to be privileged or protected, particularly if the items can be described by
19 │ categories."

20 │ Farhad Larian relies upon the advisory comments and cases citing the advisory comments
21 │ to support his contention that as a non-party, it would be unduly burdensome to require a
22 │ document-by-document privilege log in this case. The cases cited by Farhad Larian, however, are
23 │ distinguishable from the present case. In SEC v. Thrasher, 1996 WL 125661 (S.D. N.Y. 1996),
24 │ the Commission sought production of all communications between defense counsel concerning
25 │ the lawsuit. The court observed that this demand, on it face, sought wholesale production of
26 │ documents that are ordinarily protected from disclosure. Further, the defendant represented that
27 │ the requested documents were extremely voluminous and that a document-by-document privilege

28 │ 

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

13

EXHIBIT ____10____

PAGE ____152____

1   log would be a long and fairly expensive project to undertake.  In <u>Fifty-Six Hope Road Music,</u>

2   <u>Ltd. v. Mayah Collections, Inc.</u>, 2007 WL 1726558 (Nev. 2007), the withheld documents

3   consisted of e-mail communications between plaintiffs and their counsel or between plaintiffs'

4   counsel.  Plaintiffs represented that there were hundreds and perhaps thousands of such email

5   communications which were protected by the attorney-client privilege and work product doctrine.

6        In contrast to the volume of documents at issue in <u>Thrasher</u> and <u>Fifty-Six Hope Road</u>

7   <u>Music</u>, Farhad Larian represents that he has about one bankers' box of privileged documents.

8   Farhad has not established that to produce a privilege log on a document-by-document basis for

9   this volume of documents is unduly burdensome.  Furthermore, even if it were appropriate for

10  Farhad Larian to produce a privilege log that described documents categorically, which it is not,

11  the information provided in Farhad Larian's privilege log is insufficient to enable Mattel to assess

12  the claims of privilege and work product protection as required by Rule 45, Fed.R.Civ.P.  For

13  example, in some instances, Farhad Larian fails to identify the author and recipient of the

14  documents being withheld.  In other instances, Farhad Larian fails to provide the date or date

15  ranges for the documents being withheld.  Therefore, Farhad Larian is ordered to provide a

16  supplemental privilege log that complies with Rule 45.

17  B. Documents Subpoenaed from Kaye Scholer

18       Mattel contends that the documents it seeks from Kaye Scholer are relevant for all the

19  same reasons previously articulated in the context of Mattel's motion to compel Farhad Larian to

20  produce documents.  Mattel contends that its requests are not unreasonable, oppressive, annoying

21  or embarrassing.  Mattel points out that Kaye Scholer has separate case files containing all or the

22  vast majority of responsive documents, which undermines Kaye Scholer's boilerplate burden

23  objections.  Mattel also points out that it offered to alleviate some of the burden to Kaye Scholer

24  by paying for Kay Scholer's copying costs and by providing a paralegal to inspect documents

25  from Kaye Scholer's files with an agreement that the inspection would not result in a waiver of

26  any privileges.  Further, Mattel contends that the protective order in place in this action is

27  sufficient to address any confidentiality concerns Kaye Scholer may have.

28
    Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)                                                                14

                        EXHIBIT     _10_

                        PAGE     _153_

1    Mattel next contends that the documents it seeks from Kaye Scholer are not available from

2  other sources, as evidenced by Mattel's repeated and unsuccessful attempts to seek the same

3  documents from MGA.  Indeed, Mattel contends that the documents in Kaye Scholer's possession

4  are in fact documents within MGA's possession, custody and control that should have, but have

5  not yet been, produced pursuant to prior discovery orders obligating MGA and Isaac Larian to

6  produce documents from the Larian v. Larian proceedings.  Mattel also points out that it has

7  searched public files and served additional subpoenas on other third parties involved in the Larian

8  v. Larian proceedings.  Moreover, Mattel argues that federal law requires Kaye Scholer to comply

9  with the subpoena, even if the evidence sought is obtainable from another source.  See e.g. State

10  Farm Mut. Auto. Ins. Co. v. Accurate Medical, P.C., 2007 WL 2993840 at *1 (E.D. N.Y. 2007).

11    Mattel contends that Kaye Scholer's proposal to search only certain files for responsive

12  documents is unacceptable because it would inevitably exclude relevant documents.  In particular,

13  Mattel contends that Kaye Scholer's proposal would exclude relevant documents likely to be

14  found in its correspondence file, such as an August 29, 2003 letter from Isaac Larian to Mr.

15  Zarabi relating to an appraisal of MGA, and a letter from Farhad Larian's attorney to Kaye

16  Scholer detailing the evidence of Isaac Larian's alleged concealment of Bratz.  Mattel contends

17  that the relevance of these documents and others that are likely to exist justifies the burden of

18  production on Kaye Scholer.

19    Further, Mattel contends that Kaye Scholer has failed to produce a privilege log in

20  violation of Rule 45(d)(2), Fed.R.Civ.P., and therefore Kaye Scholer has waived any claims of

21  privilege.  In the alternative, Mattel requests an order compelling Kaye Scholer to produce a

22  document-by-document privilege log.

23    Kaye Scholer contends that the instant motion is premature, unnecessary and a waste of

24  judicial resources.  Kaye Scholer represents that after meeting and conferring in good faith, it

25  agreed to produce documents responsive to thirty of the thirty-five requests, and that the

26  remainder of the requests are grossly overbroad.  Further, Kaye Scholer represents that it has

27  completed its review pursuant to the agreement, and is prepared to produce responsive

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

15

EXHIBIT _____ 10

PAGE _____ 154

1    documents. However, Kaye Scholer continues to object to producing a document-by-document

2    privilege log on the grounds that it would be unduly burdensome and expensive. Kaye Scholer

3    emphasizes that Mattel is seeking documents from a law firm, and therefore the vast majority of

4    responsive documents are protected by multiple privileges, including but not limited to the

5    attorney-client privilege and the work product doctrine. Kaye Scholer estimates that it would take

6    in excess of seventy (70) hours to create a document-by-document privilege log for this case, and

7    that the Federal Rules of Civil Procedure do not require Kaye Scholer to undertake such an

8    unreasonable burden. Furthermore, Kaye Scholer contends that the failure to produce a

9    document-by-document privilege log does not result in a per-se waiver of any privilege.

10    MGA also opposes Mattel's motion for several reasons. First, MGA contends that

11    Mattel's requests are overbroad, encompassing documents that are only marginally related, if at

12    all, to the claims and defenses in the case. Second, MGA contends that Mattel's requests are

13    completely duplicative of requests it has served on the parties in the case. In particular, MGA

14    contends that Mattel has sought the Larian v. Larian documents from both MGA Entertainment,

15    Inc. and Isaac Larian. See Mattel's Request No. 41 in Mattel's First Set of Request for

16    Production of Documents and Tangible Things to MGA, and Request Nos. 123-125 in Mattel's

17    First Set of Requests for Documents and Things to Isaac Larian. MGA and Isaac Larian are both

18    under court order to comply with the requests, although Isaac Larian is only required to produce

19    documents that refer or relate to Bratz in response to Request Nos. 123-125. Third, MGA

20    contends that Mattel's requests to Kaye Scholer are much broader than requests Mattel previously

21    served on the parties to this case. Fourth, MGA contends that there is no reason Mattel cannot

22    obtain a complete set of all relevant documents from the Larian v. Larian proceedings without this

23    third-party subpoena. Fifth, MGA contends that the vast majority of documents Mattel seeks

24    from Kaye Scholer are protected by the attorney-client privilege, the work product doctrine, or

25    other privileges, and that it is improper for Mattel to attempt to subpoena these documents and

26    then insist that Kaye Scholer produce a document-by-document privilege log. In summary, MGA

27    contends that Mattel has misused the subpoena process by serving deliberately overbroad and

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

16

EXHIBIT _____ 10 _____

PAGE _____ 155 _____

1 | burdensome requests in an attempt to harass and intimidate MGA and non-parties. Accordingly,

2 | MGA contends that Mattel's motion should be denied or Mattel's subpoena should be

3 | substantially limited in scope.

4 | Mattel's Subpoena is Overbroad, Unduly Burdensome and Cumulative

5 |      Mattel's subpoena to Kaye Scholer is overbroad and is not reasonably tailored to seek

6 | documents relevant to the claims and defenses in this case. Of the thirty-five requests Mattel

7 | served on Kaye Scholer, all but one begin with the phrase "all documents" or a similarly broad

8 | phrase. For example, Request Nos. 1-3, which are set forth below, seek virtually all documents

9 | relating to lawsuits and/or arbitrations between Isaac Larian and Farhad Larian:

10 |     Request No. 1: All DOCUMENTS, including all COMMUNICATIONS,
11 | RELATING TO any and all arbitration proceedings between FARHAD LARIAN and ISAAC LARIAN, including without limitation all video and/or sound
12 | recordings, transcripts, exhibits, memoranda, witness statements, declarations, affidavits and sworn testimony given by any PERSON in connection with such
13 | arbitration proceedings.

14 |     Request No. 2: All DOCUMENTS including all COMMUNICATIONS, RELATING TO Los Angeles Superior Court Case No. BC301371 filed by
15 | FARHAD LARIAN against ISAAC LARIAN and/or any related proceedings, including any appeal thereof, and including without limitation all video and/or
16 | sound recordings, transcripts, exhibits, pleadings, briefs, memoranda, witness statements, declarations, affidavits and sworn proceedings and/or any appeal
17 | related to such lawsuit.

18 |     Request No. 3: All DOCUMENTS RELATING TO Los Angeles Superior Court Case No. BC329501 filed by FARHAD LARIAN against ISAAC LARIAN,
19 | MORAD ZARABI and Kambiz Zarabi, and/or any related proceedings and/or any appeal of such lawsuit, including without limitation all video and/or sound
20 | recordings, transcripts, exhibits, pleadings, briefs, memoranda, witness statements, declarations, affidavits and sworn testimony given by any PERSON in
21 | connection with such suit and/or related proceedings and/or any appeal related to such lawsuit.

22 | 
23 | Mattel has not limited the subject matter of these requests (and others) in any way to exclude

24 | irrelevant information. To the contrary, Request Nos. 1-3 are drafted in the broadest possible

25 | language, encompassing documents that are only marginally related, if at all, to this case. As

26 | such, Mattel's requests are also unduly burdensome.

27 |     Furthermore, Mattel's requests are clearly duplicative of other requests propounded to the

28 | 

EXHIBIT _____ 10
PAGE _____ 156

1   parties in this action. In particular, the requests relating to the <u>Larian v. Larian</u> proceedings are

2   duplicative of Mattel's Request No. 41 to MGA and Request Nos. 123-125 to Isaac Larian.

3   During the hearing, counsel for MGA acknowledged that Isaac Larian is required to comply with

4   Request Nos. 123-125, and is prepared to review Kaye Scholer's files for responsive documents

5   to fulfill his responsibility. Also during the hearing, Kaye Scholer agreed to make its

6   correspondence file available to MGA's counsel for review.

7        In light of Mattel's failure to take reasonable steps to avoid unduly burdening Kaye

8   Scholer and in light of MGA's and Kaye Scholer's representations during the hearing as outlined

9   above, Mattel's motion to compel Kaye Scholer to comply with the full scope of the subpoena is

10  denied.

11               Kaye Scholer's Compromise is Reasonable Under the Circumstances

12       As an alternative to complying with the full scope of the subpoena, Kaye Scholer agreed

13  to review the following files for documents responsive to every one of Mattel's requests except

14  Nos. 1-3, 6 and 10:  (1) pleading files; (2) discovery files; and (3) arbitration exhibits. Kaye

15  Scholer's Opposition at p.5. Kaye Scholer's compromise is reasonable under the circumstances.

16  Narrowing the scope of Kaye Scholer's search in this manner will significantly minimize the

17  burden, expense, and inconvenience imposed by the subpoena because, unlike Kaye Scholer's

18  other files, most of the documents in the three files it agreed to search are not likely to be covered

19  by the attorney-client privilege or work product doctrine. Further, narrowing Kaye Scholer's

20  search in this manner will not significantly deprive Mattel of relevant discovery to which it is

21  entitled because, as stated previously, MGA's counsel represented during the hearing that Isaac

22  Larian is prepared to review Kaye Scholer's documents, including the correspondence file, to

23  comply with Request Nos. 123-125.

24       Accordingly, to the extent it has not already done so, Kaye Scholer shall conduct the

25  agreed upon search of its three files and produce documents responsive to all of Mattel's requests,

26  except Nos. 1-3, 6 and 10.

27  //

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

18

EXHIBIT _____ 10

PAGE _____ 157

<u>Kaye Scholer Must Produce a Privilege Log in Compliance with Rule 45</u>

Mattel contends that Kaye Scholer has waived its claims of privilege by failing to produce any privilege log. The law is clear, however, that the failure to produce a document-by-document privilege log does not result in a per-se waiver of any privilege. See <u>Burlington Northern & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. Of Mont.</u>, 408 F.3d 1142, 1147 (9th Cir. 2005). In this case, Kaye Scholer raised a legitimate objection to producing a document-by-document privilege log on the grounds that it would impose an undue burden. Under these circumstances, a finding of waiver is unjustified.

Nevertheless, Kaye Scholer's claim of undue burden is unpersuasive. Kaye Scholer has acknowledged that most of the documents in the three files it has agreed to search are not likely to be covered by the attorney-client privilege or work product doctrine. Kaye Scholer Opposition at pp. 5 and 9. Indeed Kaye Scholer agreed to search these files precisely because they were not likely to contain privileged documents. Therefore, requiring Kaye Scholer to produce a document-by-document privilege log for documents withheld from these three files should not impose an undue burden. Accordingly, Kaye Scholer is ordered to produce a document-by-document privilege log for documents withheld from the three files it agreed to search.

V. CONCLUSION

For the reasons set forth above, it is ordered as follows:

1. Farhad Larian is in substantial compliance with Mattel's subpoena with respect to all of the requests, except Nos. 23, 24 and 41. Request Nos. 23, 24 and 41 are overbroad, unduly burdensome, cumulative, harassing and invade the right of privacy of Farhad Larian and his family. Therefore, Mattel's motion to compel Farhad Larian to produce documents in response to the subpoena is denied.

2. Farhad Larian shall produce a document-by-document privilege log to Mattel no later than January 30, 2008.

3. Farhad Larian's request for sanctions against Mattel is denied.

4. Mattel's subpoena to Kaye Scholer is overbroad, unduly burdensome and cumulative.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

19

EXHIBIT _____ 10 _____

PAGE _____ 158 _____

1   Therefore, Mattel's motion to compel Kaye Scholer to produce documents responsive to the

2   subpoena is denied.  Instead, Kaye Scholer is ordered to abide by its agreement to review its

3   pleading files, discovery files, and arbitration exhibits for documents responsive to all of Mattel's

4   requests, except Request Nos. 1-3, 6 and 10.  Kaye Scholer shall produce responsive documents

5   no later than January 30, 2008.

6        5. Kaye Scholer shall also produce a document-by-document privilege log identifying all

7   documents withheld from its pleading files, discovery files, and arbitration exhibits, no later than .

8   January 30, 2008.

9        6. Mattel shall abide by its agreement to reimburse Farhad Larian and Kaye Scholer for

10   their copying costs.

11       7. Isaac Larian is granted an extension of time to comply with Request Nos. 123-125.

12   Isaac Larian shall deliver documents responsive to these requests to Mattel no later than 12:00

13   p.m. on January 25, 2008.

14       8. Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

15   Master, Mattel shall file this Order with the Clerk of Court forthwith.

16

17   Dated: January 25, 2008                    /s/Edward A. Infante
                                          HON. EDWARD A. INFANTE (Ret.)
18                                             Discovery Master

19

20

21

22

23

24

25

26

27

28
     Bryant v. Mattel, Inc.,                                                    20
     CV-04-09049 SGL (RNBx)           EXHIBIT _____10_____

                                      PAGE _____159_____

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on January 25, 2008, I served

the attached ORDER RE MATTEL'S MOTIONS TO COMPEL FARHAD LARIAN, KAYE SHOLER

AND STERN & GOLDBERG TO PRODUCE DOCUMENTS in the within action by email addressed

as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| Matthew M. Werdegar, Esq. | Keker & Van Nest | mwerdegar@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| Audrey Walton-Hadlock, Esq. | Keker & Van Nest | awalton-hadlock@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Thomas J. Nolan, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tnolan@skadden.com |
| Raoul D. Kennedy, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | rkennedy@skadden.com |
| Amy S. Park, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | apark@skadden.com |
| Harriet S. Posner, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | hposner@skadden.com |
| Carl Alan Roth, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | croth@skadden.com |
| Timothy A. Miller, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tmiller@skadden.com |
| Marcus R. Mumford, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Mmumford@skadden.com |
| Patricia Glaser, Esq. | Christensen, Glaser, Fink, et al. | pglaser@chrisglase.com |
| Scott E. Gizer, Esq. | Christensen, Glaser, Fink, et al. | sgizer@chrisglase.com |
| Ailsa Morgenthaler-Lever, Esq. | Christensen, Glaser, Fink, et al. | amorgentaler@chrisglase.com |
| Alan N. Goldberg, Esq. | Stern & Goldberg | agoldberg@sgattys.com |
| Mark Overland, Esq. | Overland, Borenstein, et al. | moverland@obsklaw.com |
| Alexander Cote, Esq. | Overland, Borenstein, et al. | acote@obsklaw.com |
| Bryant S. Delgadillo, Esq. | Kaye Scholer | bdelgadi@kayscholer.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above

is true and correct.

Executed on January 25, 2008, at San Francisco, California.

_____
/.                          Sandra Chan

EXHIBIT _____10_____

PAGE _____160_____

1          **PROOF OF SERVICE**

2          I am employed in the County of Los Angeles, State of California. I am over the age of
   eighteen years and not a party to the within action; my business address is 865 South Figueroa
3  Street, 10th Floor, Los Angeles, California 90017-2543.

4  On August 3, 2009, I served true copies of the following document(s) described as
   **SUPPLEMENTAL DECLARATION OF SCOTT L. WATSON IN SUPPORT OF**
5  **MATTEL, INC.'S MOTION TO ENFORCE PRIOR COURT ORDERS AND TO**
   **COMPEL RE: INTERROGATORY NOS. 68 AND 69, AND RFPS 75, 85, 95, 105, AND 115**
6  **OF MATTEL'S FIRST SET OF REQUESTS RE UNFAIR COMPETITION** on the parties in
   this action as follows:

7

8          Thomas J. Nolan, Esq.                    Melinda Haag
           Jason D. Russell, Esq.                   Annette L. Hurst
9          Skadden Arps Slate Meagher & Flom        Warrington S. Parker III
           300 S. Grand Avenue, Suite 3400          Orrick, Herrington & Sutcliffe, LLP
10         Los Angeles, CA 90071                    The Orrick Building
           thomas.nolan@skadden.com                 405 Howard Street
11         jason.russell@skadden.com                San Francisco, CA 94105
                                                    mhaag@orrick.com
12                                                  ahurst@orrick.com
                                                    wparker@orrick.com

13         William A. Molinski                      Mark E. Overland, Esq.
           Orrick, Herrington & Sutcliffe, LLP      Alexand H. Cote, Esq.
14         777 South Figueroa Street                Overland Borenstein Scheper & Kim
           Suite 3200                               LLP
15         Los Angeles, CA 90017                    601 West Fifth Street, 125th Floor
           wmolinski@orrick.com                     Los Angeles, CA 90071
16                                                  moverland@scheperkim.com
                                                    acote@scheperkim.com
17

18         Todd E. Gordinier
           Bingham McCutchen LLP
19         600 Anton Boulevard, 18th Floor
           Costa Mesa, CA 92626
20         todd.gordinier@bingham.com

21  **BY ELECTRONIC MAIL TRANSMISSION:** By electronic mail transmission from
   cyrusnaim@quinnemanuel.com on August 3, 2009, by transmitting a PDF format copy of such
22  document(s) to each such person at the e-mail address listed below their address(es). The
   document(s) was/were transmitted by electronic transmission and such transmission was reported
23  as complete and without error.

24         I declare that I am employed in the office of a member of the bar of this Court at whose
   direction the service was made.

25
           Executed on August 3, 2009, at Los Angeles, California.
26

27
                                               /s/ Cyrus Naim
28                                             Cyrus Naim

07975/3005518.1