1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 090378)
2    johnquinn@quinnemanuel.com
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
6  Facsimile: (213) 443-3100

7  Attorneys for Mattel, Inc.

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                   EASTERN DIVISION

| | |
|---|---|
| 11  CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| 12            Plaintiff, | Consolidated with<br>Case No. CV 04-09039<br>Case No. CV 05-02727 |
| 13       vs. | |
| 14  MATTEL, INC., a Delaware corporation, | Hon. Stephen G. Larson |
| 15            Defendant. | **REPLY IN SUPPORT OF MATTEL, INC.'S MOTION TO COMPEL MGA ENTERTAINMENT, INC. AND ISAAC LARIAN TO PRODUCE DOCUMENTS IN RESPONSE TO FIRST SETS OF REQUESTS FOR PRODUCTION (PHASE 2)** |
| 16  AND CONSOLIDATED ACTIONS | |
| 17 | |
| 18 | |
| 19  **CONFIDENTIAL – ATTORNEYS EYES ONLY** | [Declaration of Christopher E. Price filed concurrently] |
| 20 | |
| 21  **FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER** | Hearing Date:  TBD<br>Time:  TBD<br>Place:  Arent Fox, LLP<br>555 West Fifth Street<br>Los Angeles, CA 90013 |
| 22 | |
| 23 | |
| 24 | **Phase 2**<br>Discovery Cutoff:  Dec. 11, 2009<br>Pre-trial Conference:  March 1, 2010<br>Trial:  March 23, 2010 |
| 25 | |

26

27

28

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT .................................................................................... 1

ARGUMENT .................................................................................................................. 2

I.  MGA AND LARIAN SHOULD PRODUCE DOCUMENTS RELATED TO FINANCIAL TRANSACTIONS INVOLVING OMNI AND IGWT ................................................................................................ 2

   A.  Similar Requests To Omni And IGWT Do Not Relieve MGA And Larian Of The Obligation to Produce ................................................. 2

   B.  The Forensic Auditor's Exhibits Prove That MGA And Larian Are Withholding Requested Documents ................................................ 4

   C.  There Are Significant Gaps In The Third Parties' Deficient Productions ........................................................................................... 5

II.  MATTEL IS ENTITLED TO LOAN-RELATED DOCUMENTS BEARING ON THE MGA PARTIES FINANCIAL CONDITION AND POSSIBLE FRAUDULENT TRANSFERS ........................................... 7

III.  THE MGA PARTIES SHOULD PRODUCE FINANCIAL DOCUMENTS RELEVANT TO PHASE 2 ..................................................... 8

   A.  Request Nos. 6 And 7 ........................................................................ 10

   B.  Request Nos. 1 And 13 ...................................................................... 12

IV.  THE MGA PARTIES SHOULD PRODUCE BRATZ-RELATED DOCUMENTS ........................................................................................ 12

V.  THE MGA PARTIES SHOULD PRODUCE DOCUMENTS RELATED TO THEIR SOLVENCY OR INSOLVENCY ........................... 13

VI.  INFORMATION ABOUT MGA'S AND LARIAN'S POTENTIALLY FRAUDULENT TRANSFER OF ASSETS SHOULD BE COMPELLED ........................................................................................... 15

CONCLUSION ............................................................................................................ 17

# TABLE OF AUTHORITIES

**Page**

## Cases

In re Advanced Interventional Systems Securities Litigation,
1993 WL 331006 (C.D. Cal. May 17, 1993)..............................................................5

Bodensee Fund, LLC v. United States,
2008 WL 4490361 (D.N.J. Sept. 30, 2008)............................................................2

Burke v. Dowling,
944 F. Supp. 1036 (E.D.N.Y. 1995).......................................................................11

Cumberland Truck Equipment Co. v. Detroit Diesel Corp.,
2006 WL 3626303 (W.D. Wash. Dec. 11, 2006)...................................................11

Diamond State Ins. Co. v. Rebel Oil Co., Inc.,
157 F.R.D. 691 (D. Nev. 1994) ..............................................................................2

EEOC v. HBE Corp.,
135 F.3d 543 (8th Cir. 1998) .................................................................................12

Goodman v. U.S.,
369 F.2d 166 (9th Cir. 1966) ...................................................................................8

In re Heritage Bond Litigation,
2004 WL 1970058 (C.D. Cal. 2004) .....................................................................17

JZ Buckingham Investments, LLC v. United States,
78 Fed. Cl. 15 (Fed. Cl. Ct. 2007) ..........................................................................8

Keith H. v. Long Beach Unified School District,
228 F.R.D. 652 (C.D. Cal. 2005)...........................................................................17

Maljack Prods., Inc. v. GoodTimes Home Video Corp.,
81 F.3d 881 (9th Cir. 1996) .....................................................................................3

Phase Four Industries, Inc. v. Marathon Coach, Inc.,
2007 WL 2429448 (N.D. Cal. Aug. 23, 2007).......................................................10

Putnam v. Eli Lilly and Co.,
508 F. Supp. 2d 812 (C.D. Cal. 2007)....................................................................16

Scouler v. Craig,
116 F.R.D. 494 (D.N.J. 1987) .................................................................................5

Snyder v. Whittaker Corp.,
839 F.2d 1085 (5th Cir. 1988) .................................................................................3

United States v. Sabbeth,
125 F. Supp. 2d 33 (E.D.N.Y. 2000) ....................................................................11

00505.07975/3035589.1

REPLY IN SUPPORT OF MTC DOCUMENTS

Viacom Intern. Inc. v. YouTube, Inc.,
    2008 WL 3876142 (N.D. Cal. Aug. 18, 2008) ........................................................3

Zaken v. Boerer,
    964 F.2d 1319 (2d Cir. 1992) ...................................................................................12

### Statutes

18 U.S.C. § 152(7) ............................................................................................................14

Fed. R. Civ. P. 26(b)(1)....................................................................................................13

Fed. R. Civ. P. 33(b)(2)(B)(c)............................................................................................6

### Miscellaneous

31 Federal Practice & Procedure: Evidence § 7105, at 39 .............................................3

00505.07975/3035589.1

REPLY IN SUPPORT OF MTC DOCUMENTS

**Preliminary Statement**

MGA and Larian justify their refusal to produce a single page of documents by claiming that many responsive documents have already been produced, or requested from third parties, or that Mattel doesn't really need any more documents if they exist. These excuses are unsupportable, and wrong as a matter of fact and law. While some responsive documents have been compelled it is clear that many have not been produced. The exhibits to the Forensic Auditor's reports include numerous, critically relevant documents that have yet to be produced, including ▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ demonstrating that the MGA Parties' representations about their transactions with the IGWT and Omni Parties are false. As for the requests relating to Omni and IGWT, which the Court recently found were of "heightened" relevance, a *party* cannot refuse to produce documents on the grounds that discovery was also sought from related, third parties. MGA cites no authority supporting its claimed immunity because there is none. Production by Larian and MGA of the documents sought here also has independent significance because it tends to prove the relationship between the parties as well as the defendants' knowledge and intent. Moreover, there are substantial gaps in the Omni and IGWT Parties' compelled productions, as Omni's belated production of ▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ with no further documentation demonstrates.

The MGA Parties refuse to produce any documents related to their net worth and future finances on the grounds that they have produced *some* responsive documents pursuant to an order to compel, and Mattel has "all it needs" to determine solvency. Not so. There are gaps in both MGA's and Larian's prior productions, including plainly relevant documents that were included among the exhibits to the Durkin Report but have yet to be produced. Similarly, the MGA Parties contend that they need not produce any Bratz documents because the Discovery Master already compelled MGA to produce similar documents. The prior order established the

00505.07975/3035589.1

-1-

1   relevance of Bratz-related documents; it did not impose future limits on their

2   production. The present requests seek related but distinct documents and production

3   should be compelled.

4          It is not up to the MGA Parties to decide when Mattel has "enough"

5   relevant documents. Their obligation is to produce responsive documents unless they

6   can prove undue burden. MGA and Larian have not even attempted to establish undue

7   burden. And, as the Court and the Discovery Master have repeatedly held, the privacy

8   concerns of third parties -- if any -- are addressed by the protective order in this matter.

9   <u>**Argument**</u>

10   **I.**     **<u>MGA AND LARIAN SHOULD PRODUCE DOCUMENTS RELATED TO</u>**

11          **<u>FINANCIAL TRANSACTIONS INVOLVING OMNI AND IGWT</u>**

12        **A.**     **<u>Similar Requests To Omni And IGWT Do Not Relieve MGA And</u>**

13            **<u>Larian Of The Obligation to Produce.</u>**

14          Contradicting their earlier representation to the Discovery Master that they

15   could and would produce, MGA and Larian now try to use requests to Omni and IGWT

16   as an excuse not to produce responsive documents,[1] but can cite no authority even

17   remotely supporting this argument. (Opp., § 4). Far from being improper, multiple

18   requests are recognized as essential to developing a full record. <u>See, e.g.</u>, <u>Diamond</u>

19   <u>State Ins. Co. v. Rebel Oil Co., Inc.</u>, 157 F.R.D. 691, 697 (D. Nev. 1994) (although

20   requests were "duplicative in part," they were "directed toward two separate business

21   entities, and the documents "actually maintained in the files of each entity may not be

22   identical"). Comparing documents among different entities is critical. <u>See, e.g.</u>,

23   <u>Bodensee Fund, LLC v. United States</u>, 2008 WL 4490361 (D.N.J. Sept. 30, 2008)

24   (requiring party to produce even where "similar information has already been produced

25   from other sources" because of the importance of comparing documents). The same

26   

27      [1]    Request Nos. 1, 18-23, 28-29, 35-36, 40-42.

28   

REPLY IN SUPPORT OF MTC DOCUMENTS

1    requests may produce different documents both because of differences in record
2    keeping, and because each source is likely to have internal documents, emails and
3    analysis as well. See, e.g., Viacom Intern., Inc. v. YouTube, Inc., 2008 WL 3876142 at
4    *3 (N.D. Cal. Aug. 18, 2008) (requiring third party to produce documents "likely to be
5    in the possession of defendants" because defendants' "poor initial record keeping
6    raise[d] questions about the completeness of its files"). Even if these are not the arms
7    length transactions that MGA once misrepresented them to be, MGA may still have in
8    its files internal memos, emails, and records that were not (or never where) in the files
9    of Omni or IGWT. Furthermore, as Mattel has shown, the existence and production of
10   documents, even identified documents, from MGA and Larian have independent
11   significance -- including with respect to authenticity, knowledge and control. See
12   Maljack Prods., Inc. v. GoodTimes Home Video Corp., 81 F.3d 881, 889 n. 12 (9th Cir.
13   1996) (documents produced in discovery were deemed authentic when offered by the
14   party-opponent); Snyder v. Whittaker Corp., 839 F.2d 1085, 1089 (5th Cir. 1988)
15   (same); 31 Federal Practice & Procedure: Evidence § 7105, at 39 ("Authentication can
16   also be accomplished through judicial admissions such as ... production of items in
17   response to ... [a] discovery request.").

18          The Discovery Master has held that the discovery obligations of parties are
19   broader than those of third parties.[2] Omni 808, Vision Capital and Lexington were
20   created for the express purpose of concealing the details and source of funds involved
21   in the purchase of the Wachovia debt. Mattel still does not even know who Lexington
22   is, or where and how Vision Capital got its funding. It is precisely because of the
23   incompleteness of these productions that Mattel has been forced to repeatedly move to
24   compel and enforce prior orders. For MGA and Larian now to cite these incomplete

25

26   _____

27      [2]  Order No. 27, at 2:5-15, Declaration of Warrington S. Parker III ("Parker Dec."), Ex. J;
     Order No. 3, at 14:1-13, Parker Dec., Exh. I.

28

1  productions and violations of the Discovery Master's orders to excuse them of the even
2  broader obligation of a party to produce adds insult to injury.

3  **B.**   **The Forensic Auditor's Exhibits Prove That MGA And Larian Are**
4        **Withholding Requested Documents**

5        The MGA Parties' contention that the third parties have produced all of the
6  relevant documents is demonstrably untrue.   The Forensic Auditor attached to his
7  reports over four hundred pages of relevant documents that neither MGA nor any third
8  party have produced in this action.[3]   Among the documents provided by the MGA
9  Parties to the Forensic Auditor, but not produced in this action, are highly relevant
10 documents regarding the purported $300 million debt acquisition by Omni 808 from
11 Wachovia and the financing of IGWT Group, including:



21

22   [3]   Counsel for Mattel contacted the MGA Parties' counsel before filing this motion and
     asked them to agree that Mattel could use exhibits to the Durkin Report to show that MGA
23   possessed documents not produced by the third parties.  They agreed.  July 29, 2009 e-mail
     and letter form M. Zeller to A. Hurst and P. Villar, July 30, 2009 e-mail and letter from W.
24   Parker to M. Zeller, July 30, 2009 e-mail from P. Villar to M. Zeller, Declaration of
25   Christopher E. Price, dated August 3, 2009 ("Price Dec."), Exhs. 1-3.

26   Price Dec., Exh. 10.

27   Price Dec., Exhs. 11, 22, 23, 24, and 25.

28



10    Nor have the MGA Parties (or any one else) produced documents relating

11 to these withheld materials that obviously must exist.  The MGA Parties cannot hide

12 behind the deficient productions of their "third-party" proxies.  The MGA Parties

13 should be compelled to produce all responsive documents.

14    C.    **There Are Significant Gaps In The Third Parties' Deficient**

15        **Productions**

16    The third-party productions are patently deficient in any event, which is

17 why Mattel has recently moved to compel enforcement of an already existing order

18

19



Price Dec., Exh. 12.

Price Dec., Exhs. 13, 14, 15, and 16, respectively.

Price Dec., Exh. 17.

Price Dec., Exh. 18.

Price Dec., Exh. 19.

1   compelling the Omni Parties to produce.[11]   Only after repeated orders by the Discovery

2   Master did any of the Omni Parties produce documents demonstrating that, contrary to

3   their representations to the Court and the Discovery Master, Isaac Larian directly

4   funded ████████████████████████████[12]   But despite these Orders, Mattel

5   has still not received key information.   Mattel has no documents showing the identities

6   of the principals, members or officers of Lexington, let alone its source of funding, all

7   of which is indisputably relevant to claims and allegations of the TAAC.[13]   Vision

8   Capital's production consisted of only 149 pages of documents, most of which consists

9   of already-produced Omni 808 documents, and none of it showing the source of the $10

10  million Vision allegedly provided to Omni 808 to fund the acquisition of the Wachovia

11  debt.[14]   Vision Capital has not produced any loan agreement between Vision Capital

12  and its purported funding source, Lexington, much less any communications, checks,

13  wire transfers or any other underlying financial information relating to the actual loan

14  to or funding of Vision Capital.[15]

15          Until July 30, 2009 -- months after the Discovery Master had ordered their

16  production and a week after Mattel filed this motion -- the Omni Parties also had not

17  produced so much as a single check, wire transfer record or any other underlying

18  financial record reflecting the source of the $49 million not already directly traced to

19

20  —————————————————

21  [11]   On July 24, 2009, Mattel filed its Motion: (1) to Enforce Order Compelling the Omni

22  Parties to Produce Documents, (2) to Strike Objections, and (3) for Sanctions.
    [12]   See Mattel, Inc.'s Ex Parte Application for an Order to Show Cause re: Omni 808's

23  Failure to Comply with Court Order or, in the Alternative, for an Order Shortening Time to

24  Hear Motion for Such Relief, dated April 21, 2009, Price Dec., Exh. 8; Phase 2 Discovery
    Master's Order No. 21, dated April 23, 2009, Price Dec., Exh. 9.

25  [13]   Supplemental Declaration of Michael T. Zeller in Support of Mattel, Inc.'s Motion

26  Objecting to Portions of Discovery Master Order No. 27 Re Mattel's Motion to   Compel
    Documents from Bingham McCutchen at ¶ 3, attached to Price Dec. as Exh. 6.

27  [14]   Id. at ¶ 4.
    [15]   Id.

28

1    Isaac Larian.[16]   After Mattel filed yet another motion to enforce the prior Orders,

2    counsel for Omni 808 and Vision Capital supplemented their production with a few

3    additional pages consisting of ███████████████████████████

4    ████████████████████[17] Not only are these documents improperly redacted to block

5    information necessary to analyze the transfers and determine follow-up discovery, but it

6    is simply not plausible that no supporting agreements or other related financial

7    documents exist for transactions of this magnitude.

8        In claiming Mattel has adequate recourse from the Omni entities, MGA

9    also ignores the fact that Mattel's subpoena on Lexington was quashed, as was Mattel's

10    deposition subpoena to Fred Mashian, who has acted for Lexington. MGA and Larian

11    may be the only source of information regarding Lexington, and who owns and

12    operates it, which Mattel still doesn't know.

13    **II.**    **MATTEL IS ENTITLED TO LOAN-RELATED DOCUMENTS**

14        **BEARING ON THE MGA PARTIES FINANCIAL CONDITION AND**

15        **POSSIBLE FRAUDULENT TRANSFERS**

16        The MGA Parties argue that they need not produce documents responsive

17    to Request Nos. 2 (agreements with lenders or creditors), 3 (identification of persons

18    from whom MGA Parties sought but were denied credit) and 12 (capital contributions

19    to MGA) because the requests "outstrip any allegation made by Mattel;" the only loans

20    that are relevant, MGA argues, are the ones specifically mentioned in the TAAC. (Opp.

21    16:6-8).

22        As an initial matter, this argument is undercut by MGA's concession

23    elsewhere that Mattel is entitled to establish its financial condition by looking at

24

25

26    [16]   See Supplemental Declaration of Michael T. Zeller in Support of Mattel, Inc.'s Motion Objecting to Portions of Discovery Master Order No. 27 Re Mattel's Motion to Compel Documents from Bingham McCutchen at ¶¶ 3-5, Price Dec., Exh. 6.

27    [17]   July 30, 2009 letter from P. Villar to M. Zeller, Price Dec., Exh. 4.

28

REPLY IN SUPPORT OF MTC DOCUMENTS

1  objective data. (Opp., 10:19-11:3). MGA's manipulation of its debt relates directly to

2  the solvency and net worth issues already recognized as relevant to Phase 2, since those

3  calculations properly include a full and honest account of debt.[18]

4         In all events, the MGA Parties' argument has already been rejected. Long

5  before the TAAC allegations were even made, the prior Discovery Master recognized

6  the relevance of MGA's *other* loans, compelling Wachovia to produce "all documents

7  relating to any loan agreement entered into by MGA, or sought or requested by

8  MGA."[19] These loans need not be among the allegations of wrongdoing, at least at this

9  point: "[t]he matter requested need only be relevant to the subject matter of the action-

10 not necessarily relevant to the specific issues of the action."   In re Advanced

11 Interventional Systems Securities Litigation, 1993 WL 331006, *2 (C.D. Cal. May 17,

12 1993). See Scouler v. Craig, 116 F.R.D. 494, 496 (D.N.J. 1987) (admissibility at trial

13 requires evidence be relevant to the issues of the action). It is sufficient for purposes of

14 discovery that the requests seek information relevant to Mattel's Phase 2 claims.

15 **III.   THE MGA PARTIES SHOULD PRODUCE FINANCIAL DOCUMENTS**

16 **RELEVANT TO PHASE 2**

17        The MGA Parties argue that they have no obligation to produce relevant,

18 responsive documents to Request Nos. 1 (financial statements), 6 (net worth), 7 (net

19 worth), and 13 (MGA financial projections) because they have produced *some* financial

20 documents related to net worth.  (Opp., 10-11).[20]  But Mattel is entitled to a full

21 production, not one of MGA's choosing, and entitled to have inappropriate objections

22 overruled and to receive written responses clearly stating what will (and won't) be

23

24

---

25   [18]  Declaration of Michael Wagner, ¶ 14, Notice of Lodging, Exh. 2.
    [19]  May 8, 2008 Discovery Master Order, at 12:18-26, Parker Dec., Exh. S.
26   [20]  The MGA Parties list No. 17 as relating to MGA's financial projections. In fact, No.
27  17 seeks "All DOCUMENTS REFERRING OR RELATING TO agreements, transactions,
    sales, shipments or the transfer of any item of value between MGA and IGWT Group, LLC."
28

produced.[21]  Here, not only did MGA fail to note any other production, serving only objections and producing nothing in response to Mattel's request, but it is absolutely clear that MGA is withholding relevant evidence.  MGA provided the Auditor a host of financial documents not produced to Mattel by anyone in this action.[22]  For example, MGA provided to the Forensic Auditor but not Mattel, ███████████ ████████████████.[23]  Similarly, it provided the Auditor with ████ ████████████████████████████████████████████████ ███████████████.[24]  It also gave the Auditor numerous █████████ ████████████████████████.[25]  The standard is not whether a party has previously produced some documents related to a similar topic, but whether the documents Mattel requested are relevant.  The MGA Parties' financial records clearly are.

---

[21]  Despite their argument, defendants' responses do not claim to have made any such production. As they admit, MGA and Larian only served objections, refusing to produce any documents. (Opp., 4:13).  If the MGA Parties have produced responsive documents, they must so state in discovery responses, not in vague allusions in the briefs.  Fed. R. Civ. P. 33(b)(2)(B)(c) (responding party must state what it will produce and what it objects to).  As the prior Discovery Master has held, having failed to serve proper responses, the Discovery Master should compel the MGA Parties to serve supplemental responses stating whether and which responsive documents have been produced and which have been withheld.  See May 15, 2007 Discovery Master Order, at 8:16-21, Corey Dec., Exh. 20.

██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
███████████  Price Dec., Exh. 18.
███  Price Dec., Exh. 21.
Price Dec., Exh. 20.
█████████████  Price Dec., Exh. 26.

00505.07975/3035589.1

1    **A.      Request Nos. 6 And 7**

2           Mattel does not demand that the MGA Parties "re-produce" documents.

3    But the MGA Parties must produce <u>all</u> relevant, responsive documents.  If the MGA

4    Parties contend that they have produced all, non-privileged documents responsive to

5    each Mattel request, then they must say so in supplemental discovery responses.  It is

6    clear, however, that they have not.

7           As for Larian's net worth, he promises that he will produce unspecified

8    documents pursuant to the Discovery Master's March 31, 2009 Order.  As the prior

9    Discovery Master has held, however, a promise to produce does not preclude an order

10   compelling responsive, relevant documents.[26]  Thus, Larian should be compelled to

11   produce all responsive documents.

12          The MGA Parties object to language in Request Nos. 6 and 7 that seek "all

13   documents referring or relating to" net worth.  MGA has itself repeatedly demanded

14   "all documents referring or relating to" topics.[27]  The prior Discovery Master did not

15   rule such requests per se overbroad.  To the contrary, his May 2008 Order clearly stated

16   that it was not intended to preclude Mattel from seeking documents in Phase 2;[28] that

17   order involved subpoenas served on third parties, not on a party opponent -- an

18

19   [26]  May 15, 2007 Discovery Master Order, at 10:2-14; August 13, 2007 Discovery Master
20   Order, at 9:23-25, 12:4-7, 9-12, December 31, 2007 Discovery Master Order, at 3:26-4:2,
     Price Dec., Exhs. 20, 48, and 42 respectively.
21   [27]  For example, in its First Set of (Phase 2) Requests for Production, MGA's Request Nos.
22   1 and 2 demand "All DOCUMENTS REFERRING OR RELATING TO" topics and Nos. 61,
     62, and 63 demand "All DOCUMENTS REFLECTING, REFERRING OR RELATING TO"
23   topics. Notably, MGA defines "REFERRING OR RELATING" to as to "be construed in the
     broadest possible sense to mean concerning, consisting of, referring to, relating to, describing,
24   discussions, constituting, evidence, containing, reflecting, mentioning, pertaining to, citing,
25   summarizing, analyzing or bearing any logical or factual connection with the matter
     discussed." MGA defines "REFLECTING" in the same way and seeks "All DOCUMENTS
26   REFLECTING" topics in Request Nos. 5-12, 25-22, 26-46, 51-60, and 66-68. The First Set of
27   (Phase 2) Requests is Exhibit 5 to the Price Dec.
     [28]  May 7, 2008 Discovery Master Order, at 13:5-6, Parker Dec., Exh. S. at 13:5-6.
28

00505.07975/3035589.1

-10-

important distinction that the prior Discovery Master relied on.[29] Moreover, in the very same May 2008 Order, the Discovery Master compelled the production of documents responsive to a request requiring the production of "all documents relating to any loan agreement...,"[30] demonstrating that the language is not improper on its face. Finally, the current Discovery Master has recently compelled third parties to produce documents pursuant to many requests using the same "all documents . . . referring and relating to" language.[31]

The MGA Parties also vastly exaggerate the reach of Request Nos. 6 and 7. They do not encompass "every single document" from "a restaurant receipt" to "a car loan." (Opp. at 11:16-19). Such documents do not "refer to, discuss, constitute, evidence, pertain to, mention, support, undermine, disprove, refute, contradict, negate, bear on, amend, revise, modify, touch on, contain, embody, reflect, identify, state, deal with, concern, comment on, summarize, respond to, relate to, or describe" the net worth of a large company such as MGA.[32] Further, the MGA Parties have made no effort to prove that producing documents responsive to these Requests would impose an undue burden. To sustain an undue burden objection, the MGA Parties must prove burden by "specific and compelling" proof, not conclusory assertions. Goodman v. U.S., 369 F.2d 166, 169 (9th Cir. 1966); JZ Buckingham Investments, LLC v. United States, 78 Fed. Cl. 15, 25 (Fed. Cl. Ct. 2007). As Judge Larson and both the prior and the current

---

[29] Id. at 10:3-4, 11:12-17.

[30] Id. at 12:18-26.

[31] Amended Order No. 11, at 2:11-13; 10:15-18 (RFP Nos. 7, 44); Order No. 27, Corey Dec., Exh. 51 (Subpoena Request Nos. 1, 2, 10, 11, 12, 14 to the Omni Parties) and Subpoena Request Nos. 1, 2, 4, 5, 7 to the IGWT Parties). See also Cumberland Truck Equipment Co. v. Detroit Diesel Corp., 2006 WL 3626303, *1 (W.D. Wash. Dec. 11, 2006) (requests seeking "all documents that relate" to subjects at issue in litigation were not overbroad).

[32] Request for Production, Set One (Phase 2), at 5:1-6 (defining "referring to or relating to"), Corey Dec., Exhs. 1 and 2.

-11-

1 | Discovery Master have repeatedly held, the MGA Parties' failure to provide specific
2 | evidence of burden is fatal to such an objection.[33]

3 | **B.**   **Request Nos. 1 And 13**

4 | The MGA Parties do not even address Request Nos. 1 (financial
5 | statements since January 2007) and 13 (financial performance projections since January
6 | 2007). Those Requests are narrower than Nos. 6 and 7 and do not even include the "all
7 | documents ... referring or relating to" language that the MGA Parties selectively -- and
8 | groundlessly -- complain of.[34] Nor do the MGA Parties point to any "counterpart"
9 | requests to which they have recently produced documents. Although the Discovery
10 | Master compelled MGA in Order No. 11 to produce its "general ledgers," Request Nos.
11 | 1 and 13 seek other financial documents relevant to Phase 2, including "monthly,
12 | quarterly and annual financial statements," "profit and loss statements," "cash flow
13 | statements," "projected revenue, costs, profits or financial performance" from January
14 | 2007 to the present.[35] Order No. 11 establishes the relevance of MGA's financial
15 | documents, but provides no basis for the MGA Parties to refuse to disclose related,
16 | relevant documents.

17 | **IV.** **THE MGA PARTIES SHOULD PRODUCE BRATZ-RELATED**
18 | **DOCUMENTS**

19 | The MGA Parties contend they have produced some documents in
20 | response to requests that relate to "the profits, sales, revenues and trademarks" of Bratz
21 | and therefore are relieved from producing more. (Opp. 12:4-6). This argument suffers
22 | from the same deficiencies as their arguments against producing the financial

23 |

24 | [33]  May 16, 2007 Order, at 12-13, Corey Dec., Exh. 47; August 13, 2007 Discovery Master Order, at 14, Corey Dec., Exh. 48.
25 | [34]  Requests for Production, at 9:3-8, 11:19-21 (Nos. 1 and 13), Corey Dec., Exhs. 1 and 2.
26 | [35]  The Discovery Master compelled MGA to produce documents pursuant to Mattel's request, "YOUR general ledgers from January 1, 1995 through the present." Amended Order
27 | No. 11, at 3:2-3, Parker Dec., Exh. S. Request No 1 is broader in scope but is more limited in time (seeking documents from January 2007).

28 |

00505.07975/3035589.1

REPLY IN SUPPORT OF MTC DOCUMENTS

1  documents.  MGA and Larian have only objected to these requests; if their claim was
2  that they have produced any, or all, of the documents requested, they must so state.
3  They have not done so.  Their reliance on Order No. 11 to foreclose discovery also
4  misrepresents the Order and its implications.  In fact, the Discovery Master held in
5  Order No. 11 that documents related to the sale of Bratz are relevant to the enforcement
6  of the Court's December 3, 2008 Order imposing a constructive trust on the sale of
7  Bratz dolls as well as Mattel's Phase 2 claims for RICO, trade secret misappropriation,
8  and unfair competition.[36]

9        Finally, the MGA Parties concede the relevance of documents related to
10 the Bratz and Jade trademarks (Request Nos. 54-57) but claim they have done all that is
11 required by providing a "list" of those trademarks. (Opp., 13:20-21).  Having conceded
12 the relevance of this information, the MGA Parties cannot refuse to produce.  Mattel is
13 entitled to the documents it requested, not a mere, conclusory list created in litigation
14 by MGA.  See Phase Four Industries, Inc. v. Marathon Coach, Inc., 2007 WL 2429448,
15 at *2 (N.D. Cal. Aug. 23, 2007) (rejecting argument that production of a summary of
16 the information requested excused failure to produce documents).

17 **V.    THE MGA PARTIES SHOULD PRODUCE DOCUMENTS RELATED TO**
18 **       THEIR SOLVENCY OR INSOLVENCY**

19       Request Nos. 4, 5, and 11 seek documents concerning MGA's statements
20 about MGA's solvency.  The MGA Parties make four arguments against production.
21 None are persuasive.

22       First, they argue that the requests are not "tailored" because they do not
23 relate to "specific transactions" in the TAAC.  As discussed above, so long as the

24

25   [36]  Amended Order No. 11, at 8:23-10:14; Corey Dec., Exh. 44. The established relevance
26 of the requested documents to Phase 2 demonstrates the fallacy of the MGA Parties' argument
   that the only purpose served by the requests are to "try again" Mattel's civil copyright claims
27 in violation of the Seventh Amendment.  As the Discovery Master has held, Bratz-related
   documents are relevant to Phase 2 claims, whatever their connections to Phase 1 claims.

28

requests relate to the subject matter of the TAAC, discovery should be compelled. Second, the MGA Parties argue that they have no obligation to produce because Mattel "has the financial data to assess whether or not and how there was an issue of solvency at any point from January 1, 2007 onward." (Opp. 14:15-17). Again, this is the wrong standard. The documents are relevant and the MGA Parties have made no showing of undue burden.

The MGA Parties also contend that "the only evidence of solvency and insolvency" is "financial evidence." (Opp., 14:18-26). They fail to define that term or explain why admissions, statements, communications, analysis and memos by MGA executives about the financial condition of MGA are not related to solvency. They are certainly relevant to Mattel's RICO and Fraudulent Transfers claims: Mattel's fraudulent transfers claim allege that MGA and Larian fraudulently transferred assets with the intention of defrauding Mattel in its role as a creditor of MGA and Larian, making intent critical.[37] Mattel similarly asserts fraud in anticipation of bankruptcy, 18 U.S.C. § 152(7) as one of its RICO predicate acts,[38] which again turns on the state of mind of MGA executives, including Larian.[39]

Mattel should not be forced to rely on a subset of relevant documents – chosen by MGA and Larian – to evaluate the meaning, reliability, and accuracy of the opposing party's financial statements. What the MGA Parties attempt to shield from production as the "subjective beliefs" of MGA personnel are admissions of material

---

[37] TAAC, ¶¶ 217-222, Corey Dec., Exh. 45.

[38] TAAC, ¶ 141(h), Corey Dec., Exh. 45.

[39] That MGA has not yet filed for bankruptcy is irrelevant. "Unlike the other provisions of § 152, it does not appear to require that a Title 11 case actually be pending. All that it requires is that the defendant transfer assets with the ultimate intent to defraud a bankruptcy court, whether or not such proceedings ever actually commence." Burke v. Dowling, 944 F. Supp. 1036, 1065 (E.D.N.Y. 1995); see also United States v. Sabbeth, 125 F.Supp.2d 33, 39 (E.D.N.Y. 2000) (citing Burke and stating conduct could violate § 152(7) even "if the corporation somehow managed to escape bankruptcy").

1  fact by MGA and discoverable on that basis alone. See, e.g., EEOC v. HBE Corp., 135

2  F.3d 543, 552 (8th Cir. 1998) (CFO's and other managers' statements were admissible

3  party admissions); Zaken v. Boerer, 964 F.2d 1319, 1322-23 (2d Cir. 1992) (same).

4          Finally, the MGA Parties argue that Request No. 11 is "burdensome and

5  completely unnecessary to Mattel's claim." (Opp. 15:8). They do not deny that their

6  communications about the purported necessity of the stay because of MGA's financial

7  condition is relevant to Phase 2. Having conceded relevance, they cannot refuse to

8  produce on the basis that the documents may not be "necessary." As the Court recently

9  held, although the moving parties have "the burden of establishing relevancy, that

10 showing is not one of 'necessity'.... It need not establish that the materials sought are

11 'necessary' to the case."[40] Nor can the MGA Parties hide behind claims of burden.

12 They have made no showing of undue burden.

13 **VI.  INFORMATION ABOUT MGA AND LARIAN'S POTENTIALLY**

14 **FRAUDULENT TRANSFER OF ASSETS SHOULD BE COMPELLED**

15         The MGA Parties contend that they need not produce any documents in

16 response to Nos. 10, 14, 15, 17 and 38, because "Mattel has documents relating to

17 transfers made to certain Larian family members." (Opp., 20:18-24). As discussed

18 above, this is unavailing. If the MGA Parties have produced responsive documents,

19 they should have set forth in their responses which documents were produced. Having

20 failed to do so, they should be compelled to produce all such documents in their

21 possession.

22         The MGA Parties also contend that the requests are overbroad and would

23 encompass the giving of a pen by MGA to a Larian family member, providing coffee,

24 and so forth. (Opp. 21:2). The hypothetical parade of horribles is both baseless and

25 irrelevant. The definition of "ITEM OF VALUE," requires the item transferred to have

26

27 [40]  July 9, 2009 Order, at 4, Price Dec., Exh. 7.

28

1  "material" or "monetary" value.[41]  Mattel is seeking documents, and a cup of coffee is

2  not going to create documents requiring production, let alone burdensome volumes of

3  documents.  Furthermore, the MGA Parties offer no legal or factual basis for their

4  position that their mere speculation that some documents *may* exist permits them to

5  avoid producing others.  To the contrary, the question is not whether each and every

6  responsive document that one could hypothesize will be admissible, but rather whether

7  the Request as a whole seeks documents likely to lead to the discovery of admissible

8  evidence.  See Fed. R. Civ. P. 26(b)(1).  Even for their hypotheticals, the MGA Parties

9  do not provide any declaration or other evidence whatsoever that producing the

10 documents sought by Mattel would actually be a burden for them or showing that the

11 requests in fact would unduly sweep in documents that would be burdensome to

12 produce, let alone create an undue burden in relationship to the relevance of the

13 information sought.  As has been held by Judge Larson and both Discovery Masters in

14 this case on multiple occasions, such unsubstantiated burden arguments are no basis to

15 refuse production of documents.[42]

16     The MGA Parties' privacy argument is also unavailing.  The Protective

17 Order is sufficient to alleviate any alleged privacy concerns, as has been repeatedly

18 determined in this case.[43]  See, e.g., Putnam v. Eli Lilly and Co., 508 F. Supp. 2d 812,

19

20 _____

[41]  Requests for Production, at 5:12-19, Corey Dec., Exhs. 1 and 2.

21 [42]  See, e.g., Phase 2 Discovery Matter Order No. 11, dated March 31, 2009, at 18

22 (rejecting burden objection because "[t]he MGA Parties do not provide any supporting
declaration or specific evidence to support their assertion of burden beyond their assertion that

23 the term 'MATTEL DOCUMENTS' refers to 8 boxes of documents"), Corey Dec., Exh. 44;
Phase 2 Discovery Matter Order No. 17, dated April 14, 2009, at 23 ("MGA has not provided

24 any evidence . . . to support its claim of burden"); Phase 2 Discovery Matter Order No. 22,

25 dated April 28, 2009, at 11:20-21 ("MGA has not provided any evidence in connection with
its opposition to support its claim of burden.").

26 [43]  March 13, 2009 Discovery Master Order No. 3, at 7:6-7, Corey Dec., Exh. 6; Order

27 Dated May 15, 2007, at 11, n.4, Corey Dec., Exh. 20; Order Dated July 2, 2007, at 3, Corey
Dec., Exh. 15.

28

00505.07975/3035589.1

-16-

814 (C.D. Cal. 2007) (finding that a protective order "can strike the appropriate balance between the need for the information and the privacy concerns" of the party opposing production of employee information); <u>Keith H. v. Long Beach Unified School District</u>, 228 F.R.D. 652, 658 (C.D. Cal. 2005); <u>In re Heritage Bond Litigation</u>, 2004 WL 1970058, at *5, n.12 (C.D. Cal. 2004).  Accordingly, the MGA Parties' purported privacy concerns are no basis to refuse production.

### Conclusion

For the foregoing reasons, Mattel respectfully requests that the Discovery Master compel the MGA Parties to produce all non-privileged, responsive documents.

DATED:  August 3, 2009

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By /s/ Michael T. Zeller
Michael T. Zeller
Attorneys for Mattel, Inc.

00505.07975/3035589.1

REPLY IN SUPPORT OF MTC DOCUMENTS

1

## **PROOF OF SERVICE**

2

3          I am employed in the County of Los Angeles, State of California.  I am

over the age of eighteen years and not a party to the within action; my business address

4     is 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017-2543.

5          On August 4, 2009, I served true copies of the following document(s) described

as  on the parties in this action as follows:  **REPLY IN SUPPORT OF MATTEL**

6     **INC.'S MOTION TO COMPEL MGA ENTERTAINMENT, INC. AND ISAAC**

7     **LARIAN TO PRODUCE DOCUMENTS IN RESPONSE TO FIRST SETS OF**

**REQUESTS FOR PRODUCTION (PHASE 2)**

8

9     on the parties in this action as follows:

| 10  Skadden, Arps, Slate, Meagher & | **Attorneys for** *the MGA Parties* |
|---|---|
| 11  Flom LLP | |
|        Thomas J. Nolan, Esq. | |
| 12       Jason Russell, Esq. | |
| 13  300 South Grand Avenue, Suite 3400 | |
|  Los Angeles, CA  90071 | |
| 14       tnolan@skadden.com | |
| 15       jrussell@skadden.com | |
| 16  Scheper, Kim & Overland, LLP | **Attorneys for** *Carlos Gustavo Machado* |
| 17       Mark E. Overland, Esq. | *Gomez* |
|        Alexander H. Cote, Esq. | |
| 18  601 West Fifth Street, 12th Floor | |
| 19  Los Angeles, CA 90071 | |
|        moverland@obsklaw.com | |
| 20       acote@obsklaw.com | |
| 21 | |

22

23

24

25

26

27

28

| | |
|---|---|
| Orrick, Herrington & Sutcliffe, LLP<br>  Melinda Haag, Esq.<br>  Annette L. Hurst, Esq.<br>  Warrington S. Parker III, Esq.<br>The Orrick Building<br>405 Howard Street<br>San Francisco, CA 94105<br>  mhaag@orrick.com<br>  ahurst@orrick.com<br>  wparker@orrick.com | **Attorneys for *the MGA Parties*** |
| Orrick, Herrington & Sutcliffe, LLP<br>  William A. Molinski, Esq.<br>777 South Figueroa Street, Suite 3200<br>Los Angeles, CA 90017<br>  wmolinski@orrick.com | **Attorneys for *the MGA Parties*** |
| Bingham McCutchen LLP<br>  Todd E. Gordinier, Esq.<br>  Peter N. Villar, Esq.<br>600 Anton Boulevard, 18th Floor<br>Costa Mesa, CA 92626-1924<br>  todd.gordinier@bingham.com<br>  peter.villar@bingham.com | **Attorneys for *the Omni 808 Investors, LLC*** |

**BY ELECTRONIC MAIL TRANSMISSION:** By electronic mail transmission from chrisprice@quinnemanuel.com on August 4, 2009, by transmitting a PDF format copy of such document(s) to each such person at the e-mail address listed below their address(es). The document(s) was/were transmitted by electronic transmission and such transmission was reported as complete and without error.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on August 4, 2009, at Los Angeles, California.

/s/ Christopher E. Price
Christopher E. Price

REPLY IN SUPPORT OF MTC DOCUMENTS