1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
2  John B. Quinn (Bar No. 090378)
   johnquinn@quinnemanuel.com
   Michael T. Zeller (Bar No. 196417)
3  (michaelzeller@quinnemanuel.com)
   Jon D. Corey (Bar No. 185066)
4  (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
6  Facsimile: (213) 443-3100

7  Attorneys for Mattel, Inc.

8

9                 UNITED STATES DISTRICT COURT

10                CENTRAL DISTRICT OF CALIFORNIA

11                      EASTERN DIVISION

12  | CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
    |---|---|
13  | Plaintiff, | Consolidated with |
    | | Case No. CV 04-09059 |
14  | vs. | Case No. CV 05-02727 |
15  | MATTEL, INC., a Delaware | Hon. Stephen G. Larson |
    | corporation, | |
16  | Defendant. | DECLARATION OF CHRISTOPHER E. PRICE IN SUPPORT OF MATTEL INC.'S REPLY IN SUPPORT OF MOTION TO COMPEL MGA ENTERTAINMENT, INC. AND LARIAN TO PRODUCE DOCUMENTS RESPONSIVE TO MATTEL'S FIRST SETS OF REQUESTS FOR PRODUCTION OF DOCUMENTS (PHASE 2) |
17  | | |
18  | AND CONSOLIDATED ACTIONS | |
19  | | |
20  | **PUBLIC REDACTED** | |
21  | | Hearing Date:        TBD |
    | | Hearing Time:       TBD |
22  | | Place:                   Arent Fox, LLP |
    | | 555 West Fifth St. |
23  | | 48th Floor |
    | | LA, CA 90013 |
24
25  | | **Phase 2:** |
    | | Disc. Cut-off:        December 11, 2009 |
    | | Pre-trial Conf.:      March 1, 2010 |
26  | | Trial Date:            March 23, 2010 |
27
28

07975/3039230.1

DECLARATION OF CHRISTOPHER E. PRICE

DECLARATION OF CHRISTOPHER E. PRICE

I, Christopher E. Price, declare as follows:

1. I am a member of the bar of the State of California and am Of Counsel with Quinn Emanuel Urquhart Oliver & Hedges, LLP, attorneys for plaintiff and counter-defendant, Mattel, Inc. ("Mattel"). I make this declaration of personal, firsthand knowledge, and if called and sworn as a witness, I could and would testify competently hereto.

2. On July 29, 2009, my colleague Michael T. Zeller sent a letter to Anne Hurst, counsel for the MGA parties, and Peter Villar, counsel for the Omni parties, and asked whether they would object to Mattel's use of exhibits from the Forensic Auditor's reports (the "Durkin Report") in this Reply. Attached as Exhibit 1 is a true and correct copy of Mr. Zeller's e-mail and letter.

3. On July 30, 200, Warrington S. Parker III responded on behalf of the MGA parties, stating that they would not object to the use of the exhibits to the Durkin Report in this Reply. Attached as Exhibit 2 is a true and correct copy of Mr. Parker's e-mail and letter.

4. On July 30, 2009, Peter Villar responded, stating that the Omni parties would not object to the use of the exhibits to the Durkin Report in this Reply. Attached as Exhibit 3 is a true and correct copy of the e-mail.

5. Attached as Exhibit 4 is a true and correct copy of the July 30, 2009 letter, with attachments, from Peter Villar to Michael T. Zeller.

6. Attached as Exhibit 5 is a true and correct copy of MGA's First Set of (Phase 2) Requests for Production of Documents and Things.

7. Attached as Exhibit 6 is a true and correct copy of the Supplemental Declaration of Michael T. Zeller in Support of Mattel, Inc.'s Motion Objecting to Portions of Discovery Master Order No. 27, dated July 3, 2009.

8. Attached as Exhibit 7 is a true and correct copy of the Court's July 9, 2009 Order.

9. Attached as Exhibit 8 is a true and correct copy of Mattel, Inc.'s Ex Parte Application for an Order to Show Cause re: Omni 808's Failure to Comply with Court Order, filed April 21, 2009.

10. Attached as Exhibit 9 is a true and correct copy of the Discovery Master's April 23, 2009 Order No. 21.

11. To the best of my knowledge, there are over four hundred pages of relevant documents attached to the Durkin Report that neither MGA nor any third party has produced in this action. Among the documents apparently provided to the forensic auditor, but not produced in this action, are the following:

(a) A true and correct copy of [REDACTED] is attached as Exhibit 10.

(b) A true and correct copy of [REDACTED] is attached as Exhibit 11.

(c) A true and correct copy of [REDACTED] is attached as Exhibit 12.

(d) A true and correct copy of [REDACTED] [REDACTED] as Exhibit 13. [REDACTED].

(e) A true and correct copy of [REDACTED] is attached as Exhibit 14.

(f) A true and correct copy of [REDACTED] is attached as Exhibit 15.

(g) A true and correct copy of [REDACTED] is attached as Exhibit 16.

(h) A true and correct copy of [REDACTED] is attached as Exhibit 17.

(i) A true and correct copy of [REDACTED] is attached as Exhibit 18. [REDACTED] [REDACTED].

(j) A true and correct copy of [redacted] is attached as Exhibit 19. [redacted].

(k) A true and correct copy of [redacted] is attached as Exhibit 20.

(l) A true and correct copy of [redacted] is attached as Exhibit 21.

(m) A true and correct copy of [redacted] is attached as Exhibit 22.

(n) A true and correct copy of [redacted] is attached as Exhibit 23.

(o) A true and correct copy of [redacted] is attached as Exhibit 24.

(p) A true and correct copy of [redacted] is attached as Exhibit 25.

(q) A true and correct copy of [redacted] is attached as Exhibit 26.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 3, 2009, at Los Angeles, California.

/s/ Christopher E. Price
Christopher E. Price

# Exhibit 1

**Christopher Price**

**From:** Michael T Zeller
**Sent:** Wednesday, July 29, 2009 6:46 PM
**To:** Hurst, Annette; Villar, Peter N.
**Cc:** Russell, Jason D
**Subject:** Mattel adv. MGA
**Attachments:** 3030863_Letter to Hurst.DOC

Please see the attached correspondence.

Michael T. Zeller
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Direct: (213) 443-3180
Main Phone: (213) 443-3000
Main Fax: (213) 443-3100
E-mail: michaelzeller@quinnemanuel.com
Web: www.quinnemanuel.com

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL: (213) 443-3000 FAX: (213) 443-3100

July 29, 2009

BY EMAIL AND U.S. MAIL

Annette Hurst, Esq.
Orrick Herrington & Sutcliffe LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105

Peter Villar, Esq.
Bingham McCutchen LLP
600 Anton Boulevard, 18th Floor
Costa Mesa, CA 92626-1924

Re: Mattel, Inc. v. MGA Entertainment, Inc. et al.

Dear Counsel:

As you know, Mattel has filed a motion to compel documents responsive to its First Set of Requests for Production (Phase 2) against MGA and Larian. That Set of Requests seeks, among other things, documents relating to Larian's and MGA's direct and indirect financing of the Wachovia debt acquisition. In their opposition to Mattel's motion, MGA and Larian do not appear to deny that they have produced no documents on that subject, but instead claim that productions by others, such as Wachovia, have provided Mattel with all responsive documents it is entitled to.

MGA and Larian emails and other documents attached as exhibits to the Durkin report prove that representation to be false. We intend to use such documents (but not the Durkin report itself) to so demonstrate in our reply on the motion.

Please confirm that neither the MGA parties nor the clients represented by Bingham will object to such use or argue that doing so is inconsistent with Judge Larson's July 9 Order. If I do not receive confirmation on these subjects by 1 p.m. tomorrow, Mattel intends to file an ex parte with Judge Larson for an order making explicit that such use is proper. There can be no basis for precluding Mattel from using MGA and Larian's own documents to refute erroneous or misleading factual claims made by them in this suit to the Discovery Master or the Court.

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, NY 10010 | TEL (212) 849-7000 FAX (212) 849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, CA 94111 | TEL (415) 875-6600 FAX (415) 875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, CA 94065 | TEL (650) 801-5000 FAX (650) 801-5100
CHICAGO | 250 South Wacker Drive, Suite 230, Chicago, IL 60606 | TEL (312) 463-2961 FAX (312) 463-2962
LONDON | 16 Old Bailey, London EC4M 7EG United Kingdom | TEL +44(0) 20 7653 2000 FAX +44(0) 20 7653 2100
TOKYO | Akasaka Twin Tower Main Bldg., 6th Fl., 17-22 Akasaka 2-Chome, Minato-ku, Tokyo 107-0052 Japan | TEL +81 3 5561-1711 FAX +81 3 5561-1712

I look forward to hearing from you.

Very truly yours,

Michael T. Zeller

cc: Jason Russell, Esq.

76427/3021966.1

# Exhibit 2

## Christopher Price

**From:** Parker, Warrington [wparker@orrick.com]
**Sent:** Thursday, July 30, 2009 9:51 AM
**To:** Michael T Zeller
**Cc:** Jason Russell; peter.villar@bingham.com; Hurst, Annette
**Subject:** MGA/Mattel--Response To Letter of July 29, 2009
**Attachments:** DOC001.PDF

Michael--

Attached please find MGA's response to your letter of yesterday.

Contact me if you have any questions.

**WARRINGTON S. PARKER III**
*Attorney*
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
THE ORRICK BUILDING
405 HOWARD STREET
SAN FRANCISCO, CA 94105
*tel* 415 773 5740
*fax* 415 773 5759
*mobile* 415 994 7584
wparker@orrick.com
www.orrick.com

"EMF <orrick.com>" made the following annotations.
---------------------------------------------------------------------------
==========================================================

IRS Circular 230 disclosure:
To ensure compliance with requirements imposed by the IRS, we inform you that any tax advice contained in this communication, unless expressly stated otherwise, was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any tax-related matter(s) addressed herein.

==========================================================

NOTICE TO RECIPIENT: THIS E-MAIL IS MEANT FOR ONLY THE INTENDED RECIPIENT OF THE TRANSMISSION, AND MAY BE A COMMUNICATION PRIVILEGED BY LAW. IF YOU RECEIVED THIS E-



ORRICK, HERRINGTON & SUTCLIFFE LLP
THE ORRICK BUILDING
405 HOWARD STREET
SAN FRANCISCO, CALIFORNIA 94105-2669

tel +1-415-773-5700
fax +1-415-773-5759

WWW.ORRICK.COM

July 30, 2009

Warrington S. Parker III
415 773 5740
wparker@orrick.com

***VIA E-MAIL AND U.S. MAIL***

Michael T. Zeller
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 South Figueroa St., 10th Floor
Los Angeles, CA 90017
Facsimile No. 213 443 3100

Re: Mattel, Inc. v. MGA Entertainment, Inc. et al.

Dear Mr. Zeller:

I am receipt of your letter of July 29, 2009, regarding the motion to compel documents responsive to Mattel's First Set of Requests for Production (Phase 2) against MGA and Larian. MGA does not object to your use of documents attached to the Durkin report (but not the Durkin report itself or schedules and exhibits created by Durkin) for the purpose of the reply filed in connection with the motion to compel documents responsive to Mattel's First Set of Requests for Production (Phase 2). MGA will use those documents as well at the hearing on the above-referenced motion. MGA believes that these documents and others will show that Mattel has engaged in abusive discovery practices. As reflected in MGA's opposition, rather than seek documents that Mattel does not have, Mattel has consistently asked for the same documents over and again. And then, rather than meet and confer to identify and obtain specific documents it might not have, Mattel has moved wholesale on those document requests.

In any case, I believe this will answer any concerns raised by your July 29, 2009 letter. If it does not, please contact me.

Very truly yours,

Warrington S. Parker III

cc: Peter Villar, Esq.
Jason Russell, Esq.

MAIL IN ERROR, ANY REVIEW, USE, DISSEMINATION, DISTRIBUTION, OR COPYING OF THIS E-MAIL IS STRICTLY PROHIBITED. PLEASE NOTIFY US IMMEDIATELY OF THE ERROR BY RETURN E-MAIL AND PLEASE DELETE THIS MESSAGE FROM YOUR SYSTEM. THANK YOU IN ADVANCE FOR YOUR COOPERATION.

For more information about Orrick, please visit http://www.orrick.com/

==========================================================

=============================================================================

# Exhibit 3

**Christopher Price**

**From:** Villar, Peter N. [peter.villar@bingham.com]
**Sent:** Thursday, July 30, 2009 10:45 AM
**To:** Michael T Zeller; 'Parker, Warrington'
**Cc:** 'Jason Russell'; 'Hurst, Annette'; Gordinier, Todd E.
**Subject:** RE: MGA/Mattel--Response To Letter of July 29, 2009

Michael: I don't understand why you are asking for our input regarding a motion that does not involve our non-party clients. But, in any event, I have no objection to the agreement reached between you and MGA's counsel as set forth in Warrington's letter.

Regards, Peter

BINGHAM
Peter N. Villar |
Plaza Tower, 18th Floor |
600 Anton Boulevard |
Costa Mesa, CA 92626-1924 |
T 714.830.0640 |
F 714.830.0700 |
peter.villar@bingham.com |

---

**From:** Michael T Zeller [mailto:michaelzeller@quinnemanuel.com]
**Sent:** Thursday, July 30, 2009 9:58 AM
**To:** 'Parker, Warrington'
**Cc:** 'Jason Russell'; Villar, Peter N.; 'Hurst, Annette'
**Subject:** RE: MGA/Mattel--Response To Letter of July 29, 2009

Thank you for your letter, Warrington. While I don't agree with the various claims made in the letter, I appreciate your confirmation of the point I asked about in my letter about the use of the exhibits. Peter, I need your concurrence in that by 1 p.m. on behalf of your clients to avoid an ex parte. I look forward to hearing from you on that.

Michael T. Zeller
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Direct: (213) 443-3180
Main Phone: (213) 443-3000
Main Fax: (213) 443-3100
E-mail: michaelzeller@quinnemanuel.com
Web: www.quinnemanuel.com

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

**From:** Parker, Warrington [mailto:wparker@orrick.com]
**Sent:** Thursday, July 30, 2009 9:51 AM
**To:** Michael T Zeller
**Cc:** Jason Russell; peter.villar@bingham.com; Hurst, Annette
**Subject:** MGA/Mattel--Response To Letter of July 29, 2009

Michael--

Attached please find MGA's response to your letter of yesterday.

Contact me if you have any questions.

**WARRINGTON S. PARKER III**
*Attorney*
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
THE ORRICK BUILDING
405 HOWARD STREET
SAN FRANCISCO, CA 94105
*tel* 415 773 5740
*fax* 415 773 5759
*mobile* 415 994 7584
wparker@orrick.com
www.orrick.com

"EMF <orrick.com>" made the following annotations.
---------------------------------------------------------------------
=========================================================

IRS Circular 230 disclosure:
To ensure compliance with requirements imposed by the IRS, we inform you that any tax advice contained in this communication, unless expressly stated otherwise, was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any tax-related matter(s) addressed herein.

=========================================================

NOTICE TO RECIPIENT: THIS E-MAIL IS MEANT FOR ONLY THE INTENDED RECIPIENT OF THE TRANSMISSION, AND MAY BE A COMMUNICATION PRIVILEGED BY LAW. IF YOU RECEIVED THIS E-MAIL IN ERROR, ANY REVIEW, USE, DISSEMINATION, DISTRIBUTION, OR COPYING OF THIS E-MAIL IS STRICTLY

PROHIBITED. PLEASE NOTIFY US IMMEDIATELY OF THE ERROR BY RETURN E-MAIL AND PLEASE DELETE THIS MESSAGE FROM YOUR SYSTEM. THANK YOU IN ADVANCE FOR YOUR COOPERATION.

For more information about Orrick, please visit http://www.orrick.com/
==========================================================
============================================================================

---

Confidentiality Notice: The information in this e-mail (including attachments, if any) is considered confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this e-mail is prohibited except by or on behalf of the intended recipient. If you have received this email in error, please notify me immediately by reply email, delete this email, and do not disclose its contents to anyone.

Bingham McCutchen LLP Circular 230 Notice: To ensure compliance with IRS requirements, we inform you that any U.S. federal tax advice contained in this communication is not intended or written to be used, and cannot be used by any taxpayer, for the purpose of avoiding any federal tax penalties. Any legal advice expressed in this message is being delivered to you solely for your use in connection with the matters addressed herein and may not be relied upon by any other person or entity or used for any other purpose without our prior written consent.

**EXHIBIT 4 REMOVED**

**PURSUANT TO PROTECTIVE ORDER**

# Exhibit 5

RECEIVED
MAR 27 2009
CALENDARED

Patricia L. Glaser, State Bar No. 055668
Pglaser@glaserweil.com
Joel N. Klevens, State Bar No. 045446
Jklevens@ glaserweil.com
GLASER, WEIL, FINK, JACOBS
& SHAPIRO, LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, California 90067
Telephone: 310-553-3000
Facsimile: 310-556-2920

Russell J. Frackman, State Bar No. 049087
rjf@msk.com
MITCHELL, SILBERBERG & KNUPP, LLP
11377 West Olympic Boulevard
Los Angeles, California 90064
Telephone: 310-312-2000
Facsimile: 310-312-3100

Attorneys for the MGA Parties For Phase Two

GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

CARTER BRYANT, an individual

Plaintiff,

v.

MATTEL, INC., a Delaware Corporation

Defendant.

AND CONSOLIDATED ACTIONS

CASE NO. CV 04-9049 SGL (RNBx)

Consolidated with Case No. 04-9059 and Case No. 05-2727

**DISCOVERY MATTER**

**MGA ENTERTAINMENT, INC.'S FIRST SET OF (PHASE 2) REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS**

**Phase 2:**
Discovery Cut-Off: December 11, 2009
Pre-Trial Conference: March 1, 2010
Trial Date: March 23, 2010

3-27

**PROPOUNDING PARTY:** **MGA ENTERTAINMENT, INC. ("MGA")**

**RESPONDING PARTY:** **MATTEL, INC.**

**SET NUMBER:** **ONE (PHASE 2)**

**NOS.** **1 - 33**

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, plaintiff MGA Entertainment, Inc. ("MGA") requests that defendant Mattel, Inc. ("MATTEL") produce all DOCUMENTS and tangible things described, in accordance with the Definitions and Instructions set forth below, at 9:00 a.m. on April 27, 2009, at the offices of Glaser, Weil, Fink, Jacobs & Shapiro, LLP, 10250 Constellation Boulevard, 19th Floor, Los Angeles, California 90067.

LAW OFFICES GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP 10250 CONSTELLATION BOULEVARD NINETEENTH FLOOR LOS ANGELES, CALIFORNIA 90067 (310) 553-3000

## DEFINITIONS

As used in these Requests:

1. "ACTION" shall mean this action now consolidated under Case No. 04-9049 before the Hon. Stephen Larson and formerly Mattel v. Bryant, Inc., first filed in Los Angeles County Superior Court; Bryant v. Mattel, Inc.; and MGA Entertainment, Inc. v. Mattel, Inc.; and all counterclaims, cross-claims and defenses therein.

2. "BRATZ INJUNCTION EXHIBITS" means Exhibits 1-12 referenced in the Order Granting Mattel, Inc.'s Motion for Permanent Injunction issued in Case No. CV 04-9049, Consolidated with Case Nos. CV 04-09059 and CV 05-2727, and dated December 3, 2008.

3. "BRAWER" means Ron Brawer individually.

4. "BRISBOIS" means Janine Brisbois individually.

5. "CASTILLA" means Jorge Castilla individually.

6. "COMMUNICATION[S]" means any transmission of information from

one person or entity to another, including, without limitation, by personal meeting, conversation, letter, telephone, facsimile or electronic mail. Each request that encompasses information relating in any way to communications to, from or within a business or corporate entity is hereby designated to mean, and should be construed to include, all communications by and between representatives, employees, agents or servants of the business or corporate entity.

7. "COUNTERCLAIMS" or "COUNTERCLAIM" means MATTEL, Inc.'s Second Amended Answer and Counterclaims for: 1. Copyright Infringement; 2. Violation of the Racketeer Influenced and Corrupt Organizations Act; 3. Conspiracy to Violate the Racketeer Influenced and Corrupt Organizations Act; 4. Misappropriation of Trade Secrets; 5. Breach of Contract; 6. Intentional Interference with Contract; 7. Breach of Fiduciary Duty; 8. Aiding and Abetting Breach of Fiduciary Duty; 9. Breach of Duty of Loyalty; 10. Aiding and Abetting Breach of Duty of Loyalty; 11. Conversion; 12. Unfair Competition; and 13. Declaratory Relief filed July 12, 2007, in MGA v. Mattel, Inc., CV 05-02727, including any amendment or supplement thereto.

8. "DOCUMENT[S]" incorporates the full meaning of Federal Rule of Civil Procedure 34, and shall be construed in the broadest sense to mean any and all writings, tangible things and property, of any kind, that are now or that have been in YOUR actual or constructive possession, custody or control, including, but not limited to, any handwritten, typewritten, printed, drawn, charted, taped, filmed, punched, copied, recorded, transcribed, graphic or photographic matter of any kin f or nature, in, through, or from which information may be embodied, translated, conveyed or stored, whether an original, a draft or copy, however produced or reproduced, whether sent or received or neither, including, but not limited to, notes, memoranda, correspondence, letters, facsimiles, and facsimile transmittals, reports, inter- and intra-office COMMUNICATIONS, work papers, work sheets, work records, ledgers, graphs, indexes, advertisements, brochures, price lists, cost sheets,

LAW OFFICES GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP 10250 CONSTELLATION BOULEVARD NINETEENTH FLOOR LOS ANGELES, CALIFORNIA 90067 (310) 553-3000

estimating sheets, bills, bills of lading, bids, time cards, receipts, purchase orders, telephone records, telegrams, telexes, literature, invoices, contracts, purchase orders, estimates, recordings, transcripts of recordings, records, books, pamphlets, periodicals, publications, papers, tapes, DVDs, video CDs, video, audio and digital recordings, television commercials, story boards, website or other spot advertisements, movies, movie trailers, prototypes, products, diaries, calendars, charts, drawings, sketches, messages, photographs and data contained in or accessible through any electronic data processing system, including but not limited to, computer databases, data sheets, data processing cars, computer files and tapes, computer disks, CD-ROMs, computer metadata, microfilm, microfiche, electronic mail, website and web pages and transcriptions thereof and all other memorializations of any conversations, meetings and conferences, by telephone or otherwise. The term DOCUMENT also means every copy of a DOCUMENT, where such copy is not an identical duplicate of the original, whether because of deletions, underlinings, showing of blind copies, initialing, signatures, receipt stamps, comments, notations, differences in stationery or any other difference or modification of any kind.

LAW OFFICES
GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000

9. "LARIAN" means MGA's Chief Executive Officer Isaac Larian.

10. "MACHADO" means Carlos Gustavo Machado Gomez individually.

11. "MATTEL," "YOU," or "YOUR" means the party Mattel, Inc. and any of its past or present officers, directors, employees, parents, subsidiaries, divisions, affiliates, predecessors-in-interest, and joint venture partners.

12. "MATTEL LITIGATION" shall mean the action now pending in the U.S. District Court for the Central District of California (Eastern District), consolidated under Case No. 04-9049 SGL (RNBx) before the Hon. Stephen Larson and formerly Mattel v. Bryant, Inc., first filed in Los Angeles County Superior Court; Bryant v. Mattel, Inc.; and MGA Entertainment, Inc. v. Mattel, Inc.; and all counterclaims, cross-claims and defenses therein.

13. "MGA" means MGA Entertainment, Inc.

14. "MGA HK" means MGA Entertainment (HK) Limited.

15. "MGA MEXICO" means MGAE de Mexico, S.R.L. de C.V.

16. "PERSON[S]" means any or all entities, including but not limited to, any or all individuals, single proprietorships, associations, companies, firms, partnerships, joint ventures, corporations, employees or former employees, or any other business, governmental, or labor entity, and any divisions, departments, or other units thereof.

17. "REFERRING OR RELATING TO" and "REFLECTING" should be construed in the broadest possible sense to mean concerning, consisting of, referring to, relating to, describing, discussions, constituting, evidencing, containing, reflecting, mentioning, pertaining to, citing, summarizing, analyzing or bearing any logical or factual connection with the matter discussed.

18. "THIS ACTION" refers to the MATTEL LITIGATION, including *Mattel, Inc. v. Bryant*, Case No. CV 04-9059 (SGL (RNBx), filed on April 27, 2004 and all cases consolidated or coordinated therewith.

19. "TRUEBA" means Mariana Trueba Almada individually.

20. "VARGAS" means Pablo Vargas San Jose individually.

21. The singular form includes the plural, and vice versa.

22. The terms "any" and "all" are interchangeable.

23. The terms "and" and "or" shall be construed disjunctively and conjunctively, and each shall include the other whenever such dual construction will serve to bring within the scope of any Request, DOCUMENTS that would otherwise not be within its scope.

## INSTRUCTIONS

1. YOU are instructed to produce all non-privileged DOCUMENTS in YOUR possession, custody or control. A DOCUMENT is in YOUR "possession, custody, or control" if it is in YOUR physical possession, or if, as a practical matter,

LAW OFFICES GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP 10250 CONSTELLATION BOULEVARD NINETEENTH FLOOR LOS ANGELES, CALIFORNIA 90067 (310) 553-3000

YOU have the ability, upon request, to obtain possession of the DOCUMENT or a copy thereof from another person or entity who has physical possession of the DOCUMENT.

2. YOU are instructed to produce all non-privileged DOCUMENTS responsive to these Requests to the extent YOU have not previously produced them to MGA.

3. If any DOCUMENT or category of DOCUMENTS is not produced in full, please state with particularity the reason or reasons it is not being produced in full.

4. Each DOCUMENT is to be produced as it is kept in the usual course of business, including all file folders, binders, notebooks, and other devices by which such DOCUMENTS may be organized, separated, or identified.

5. Each DOCUMENT maintained or stored electronically in native, electronic format is to be produced with all relevant metadata intact and in an appropriate and useable electronic manner.

6. Unless otherwise noted, these Requests seek DOCUMENTS from January 1, 1995, to the present.

7. These Requests impose a continuing obligation subsequent to your initial production to the full extent provided for in Rule 26(e) of the Federal Rules of Civil Procedure.

**REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS**

**REQUEST NO. 1**

All DOCUMENTS REFERRING OR RELATING TO any efforts by MACHADO to damage the hard drive of his MATTEL personal computer as described in lines 24-25 on page 28 of MATTEL's Supplemental Responses and Objections to MGA's First Set of Interrogatories.

LAW OFFICES
GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000

**REQUEST NO. 2**

All DOCUMENTS REFERRING OR RELATING TO any directions allegedly given by LARIAN or MGA to MACHADO, TRUEBA or VARGAS to steal confidential and proprietary information from MATTEL and bring it with them to MGA, as described in lines 20-23 on page 29 of MATTEL's Supplemental Responses and Objections to MGA's First Set of Interrogatories.

**REQUEST NO. 3**

DOCUMENTS sufficient to identify any computers assigned by MATTEL to TRUEBA for use during her employment with MATTEL.

**REQUEST NO. 4**

The hard drive(s) or any mirror image thereof (including but not limited to any mirror image on any server or storage device) from any and all computers assigned by MATTEL to TRUEBA for use during the last year of her employment with MATTEL.

**REQUEST NO. 5**

All DOCUMENTS REFLECTING that TRUEBA took from MATTEL any of the documents identified in page 31, line 12, through page 32, line 24 of MATTEL's Supplemental Responses and Objections to MGA's First Set of Interrogatories.

**REQUEST NO. 6**

All DOCUMENTS REFLECTING that any documents allegedly taken by TRUEBA from MATTEL, including, without limitation, any of the documents identified in page 31, line 12, through page 32, line 24 of MATTEL's Supplemental Responses and Objections to MGA's First Set of Interrogatories, were given to MGA by TRUEBA.

LAW OFFICES GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP 10250 CONSTELLATION BOULEVARD NINETEENTH FLOOR LOS ANGELES, CALIFORNIA 90067 (310) 553-3000

LAW OFFICES GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP 10250 CONSTELLATION BOULEVARD NINETEENTH FLOOR LOS ANGELES, CALIFORNIA 90067 (310) 553-3000

**REQUEST NO. 7**

All DOCUMENTS REFLECTING that any documents allegedly taken by TRUEBA from MATTEL, including, without limitation, any of the documents identified in page 31, line 12, through page 32, line 24 of MATTEL's Supplemental Responses and Objections to MGA's First Set of Interrogatories, were given to MGA HK by TRUEBA.

**REQUEST NO. 8**

All DOCUMENTS REFLECTING that any documents allegedly taken by TRUEBA from MATTEL, including, without limitation, any of the documents identified in page 31, line 12, through page 32, line 24 of MATTEL's Supplemental Responses and Objections to MGA's First Set of Interrogatories, were given to MGA MEXICO by TRUEBA.

**REQUEST NO. 9**

All DOCUMENTS REFLECTING that any documents allegedly taken by TRUEBA from MATTEL, including, without limitation, any of the documents identified in page 31, line 12, through page 32, line 24 of MATTEL's Supplemental Responses and Objections to MGA's First Set of Interrogatories, were given to LARIAN by TRUEBA.

**REQUEST NO. 10**

All DOCUMENTS REFLECTING that any documents allegedly taken by TRUEBA from MATTEL, including, without limitation, any of the documents identified in page 31, line 12, through page 32, line 24 of MATTEL's Supplemental Responses and Objections to MGA's First Set of Interrogatories, gave MGA an "unfair competitive advantage," as referenced on page 32, lines 25 through 27, of

MATTEL's Supplemental Responses and Objections to MGA's First Set of Interrogatories.

**REQUEST NO. 11**

All DOCUMENTS REFLECTING that any documents allegedly taken by TRUEBA from MATTEL, including, without limitation, any of the documents identified in page 31, line 12, through page 32, line 24 of MATTEL's Supplemental Responses and Objections to MGA's First Set of Interrogatories, gave MGA HK an "unfair competitive advantage," as referenced on page 32, lines 25 through 27, of MATTEL's Supplemental Responses and Objections to MGA's First Set of Interrogatories.

**REQUEST NO. 12**

All DOCUMENTS REFLECTING that any documents allegedly taken by TRUEBA from MATTEL, including, without limitation, any of the documents identified in page 31, line 12, through page 32, line 24 of MATTEL's Supplemental Responses and Objections to MGA's First Set of Interrogatories, gave MGA MEXICO an "unfair competitive advantage," as referenced on page 32, lines 25 through 27, of MATTEL's Supplemental Responses and Objections to MGA's First Set of Interrogatories.

**REQUEST NO. 13**

DOCUMENTS sufficient to identify any computers assigned by MATTEL to VARGAS for use during his employment with MATTEL.

**REQUEST NO. 14**

The hard drive(s) or any mirror image thereof (including but not limited to any mirror image on any server or storage device) from any and all computers

LAW OFFICES GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP 10250 CONSTELLATION BOULEVARD NINETEENTH FLOOR LOS ANGELES, CALIFORNIA 90067 (310) 553-3000

assigned by MATTEL to VARGAS for use during the last year of his employment with MATTEL.

**REQUEST NO. 15**

All DOCUMENTS REFLECTING that VARGAS took from MATTEL any of the documents identified in page 31, line 12, through page 32, line 24 of MATTEL's Supplemental Responses and Objections to MGA's First Set of Interrogatories.

**REQUEST NO. 16**

All DOCUMENTS REFLECTING that any documents allegedly taken by VARGAS from MATTEL, including, without limitation, any of the documents identified in page 31, line 12, through page 32, line 24 of MATTEL's Supplemental Responses and Objections to MGA's First Set of Interrogatories, were given to MGA by VARGAS.

**REQUEST NO. 17**

All DOCUMENTS REFLECTING that any documents allegedly taken by VARGAS from MATTEL, including, without limitation, any of the documents identified in page 31, line 12, through page 32, line 24 of MATTEL's Supplemental Responses and Objections to MGA's First Set of Interrogatories, were given to MGA HK by VARGAS.

**REQUEST NO. 18**

All DOCUMENTS REFLECTING that any documents allegedly taken by VARGAS from MATTEL, including, without limitation, any of the documents identified in page 31, line 12, through page 32, line 24 of MATTEL's Supplemental Responses and Objections to MGA's First Set of Interrogatories, were given to MGA MEXICO by VARGAS.

LAW OFFICES GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP 10250 CONSTELLATION BOULEVARD NINETEENTH FLOOR LOS ANGELES, CALIFORNIA 90067 (310) 553-3000

**REQUEST NO. 19**

All DOCUMENTS REFLECTING that any documents allegedly taken by VARGAS from MATTEL, including, without limitation, any of the documents identified in page 31, line 12, through page 32, line 24 of MATTEL's Supplemental Responses and Objections to MGA's First Set of Interrogatories, were given to LARIAN by VARGAS.

**REQUEST NO. 20**

All DOCUMENTS REFLECTING that any documents allegedly taken by VARGAS from MATTEL, including, without limitation, any of the documents identified in page 31, line 12, through page 32, line 24 of MATTEL's Supplemental Responses and Objections to MGA's First Set of Interrogatories, gave MGA an "unfair competitive advantage," as referenced on page 32, lines 25 through 27, of MATTEL's Supplemental Responses and Objections to MGA's First Set of Interrogatories.

**REQUEST NO. 21**

All DOCUMENTS REFLECTING that any documents allegedly taken by VARGAS from MATTEL, including, without limitation, any of the documents identified in page 31, line 12, through page 32, line 24 of MATTEL's Supplemental Responses and Objections to MGA's First Set of Interrogatories, gave MGA HK an "unfair competitive advantage," as referenced on page 32, lines 25 through 27, of MATTEL's Supplemental Responses and Objections to MGA's First Set of Interrogatories.

**REQUEST NO. 22**

All DOCUMENTS REFLECTING that any documents allegedly taken by

LAW OFFICES GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP 10250 CONSTELLATION BOULEVARD NINETEENTH FLOOR LOS ANGELES, CALIFORNIA 90067 (310) 553-3000

VARGAS from MATTEL, including, without limitation, any of the documents identified in page 31, line 12, through page 32, line 24 of MATTEL's Supplemental Responses and Objections to MGA's First Set of Interrogatories, gave MGA MEXICO an "unfair competitive advantage," as referenced on page 32, lines 25 through 27, of MATTEL's Supplemental Responses and Objections to MGA's First Set of Interrogatories.

**REQUEST NO. 23**

DOCUMENTS sufficient to identify any computers assigned by MATTEL to MACHADO for use during his employment with MATTEL.

**REQUEST NO. 24**

The original damaged hard drive from MACHADO's computer at MATTEL, as described in lines 3-9 on page 28 of MATTEL's Supplemental Responses and Objections to MGA's First Set of Interrogatories.

**REQUEST NO. 25**

The hard drive(s) or any mirror image thereof (including but not limited to any mirror image on any server or storage device) from any and all computers assigned by MATTEL to MACHADO for use during the last year of his employment with MATTEL.

**REQUEST NO. 26**

All DOCUMENTS REFLECTING that MACHADO took from MATTEL any of the documents identified in page 31, line 12, through page 32, line 24 of MATTEL's Supplemental Responses and Objections to MGA's First Set of Interrogatories.

LAW OFFICES GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP 10250 CONSTELLATION BOULEVARD NINETEENTH FLOOR LOS ANGELES, CALIFORNIA 90067 (310) 553-3000

**REQUEST NO. 27**

All DOCUMENTS REFLECTING that any documents allegedly taken by MACHADO from MATTEL, including, without limitation, any of the documents identified in page 31, line 12, through page 32, line 24 of MATTEL's Supplemental Responses and Objections to MGA's First Set of Interrogatories, were given to MGA by MACHADO.

**REQUEST NO. 28**

All DOCUMENTS REFLECTING that any documents allegedly taken by MACHADO from MATTEL, including, without limitation, any of the documents identified in page 31, line 12, through page 32, line 24 of MATTEL's Supplemental Responses and Objections to MGA's First Set of Interrogatories, were given to MGA HK by MACHADO.

**REQUEST NO. 29**

All DOCUMENTS REFLECTING that any documents allegedly taken by MACHADO from MATTEL, including, without limitation, any of the documents identified in page 31, line 12, through page 32, line 24 of MATTEL's Supplemental Responses and Objections to MGA's First Set of Interrogatories, were given to MGA MEXICO by MACHADO.

**REQUEST NO. 30**

All DOCUMENTS REFLECTING that any documents allegedly taken by MACHADO from MATTEL, including, without limitation, any of the documents identified in page 31, line 12, through page 32, line 24 of MATTEL's Supplemental Responses and Objections to MGA's First Set of Interrogatories, were given to LARIAN by MACHADO.

GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP
LAW OFFICES
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000

**REQUEST NO. 31**

All DOCUMENTS REFLECTING that any documents allegedly taken by MACHADO from MATTEL, including, without limitation, any of the documents identified in page 31, line 12, through page 32, line 24 of MATTEL's Supplemental Responses and Objections to MGA's First Set of Interrogatories, gave MGA an "unfair competitive advantage," as referenced on page 32, lines 25 through 27, of MATTEL's Supplemental Responses and Objections to MGA's First Set of Interrogatories.

**REQUEST NO. 32**

All DOCUMENTS REFLECTING that any documents allegedly taken by MACHADO from MATTEL, including, without limitation, any of the documents identified in page 31, line 12, through page 32, line 24 of MATTEL's Supplemental Responses and Objections to MGA's First Set of Interrogatories, gave MGA HK an "unfair competitive advantage," as referenced on page 32, lines 25 through 27, of MATTEL's Supplemental Responses and Objections to MGA's First Set of Interrogatories.

**REQUEST NO. 33**

All DOCUMENTS REFLECTING that any documents allegedly taken by MACHADO from MATTEL, including, without limitation, any of the documents identified in page 31, line 12, through page 32, line 24 of MATTEL's Supplemental Responses and Objections to MGA's First Set of Interrogatories, gave MGA MEXICO an "unfair competitive advantage," as referenced on page 32, lines 25 through 27, of MATTEL's Supplemental Responses and Objections to MGA's First Set of Interrogatories.

LAW OFFICES GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP 10250 CONSTELLATION BOULEVARD NINETEENTH FLOOR LOS ANGELES, CALIFORNIA 90067 (310) 553-3000

**REQUEST NO. 34**

All DOCUMENTS REFLECTING that MACHADO, TRUEBA or VARGAS delivered an "internal line list to LARIAN or another MGA officer during their negotiations with MGA," as set forth in lines 7-8 on page 33 of MATTEL's Supplemental Responses and Objections to MGA's First Set of Interrogatories.

**REQUEST NO. 35**

All DOCUMENTS REFLECTING that MGA's alleged access to MATTEL's confidential business plans or methods caused MGA to increase its market share in Mexico.

**REQUEST NO. 36**

All DOCUMENTS REFLECTING that MGA's alleged access to MATTEL's confidential business plans or methods caused MGA MEXICO to increase its market share in Mexico.

**REQUEST NO. 37**

All DOCUMENTS REFLECTING that Mexican authorities seized from MGA's offices electronic and paper copies of a large number of MATTEL trade secrets, as alleged in lines 14-20 of page 33 of MATTEL's Supplemental Responses and Objections to MGA's First Set of Interrogatories.

**REQUEST NO. 38**

All DOCUMENTS REFLECTING that Ron BRAWER "removed proprietary and trade secret information from MATTEL that he did not return," as alleged in lines 9-10 on page 35 of MATTEL's Supplemental Responses and Objections to MGA's First Set of Interrogatories.

LAW OFFICES GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP 10250 CONSTELLATION BOULEVARD NINETEENTH FLOOR LOS ANGELES, CALIFORNIA 90067 (310) 553-3000

LAW OFFICES
GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000

**REQUEST NO. 39**

All DOCUMENTS REFLECTING that Ron BRAWER "has targeted certain MATTEL employees who have broad access to MATTEL proprietary information in an effort to induce and encourage them to join MGA and to steal or otherwise wrongfully misappropriate MATTEL confidential information and secrets," as alleged in lines 17-21 on page 35 of MATTEL's Supplemental Responses and Objections to MGA's First Set of Interrogatories.

**REQUEST NO. 40**

All DOCUMENTS REFLECTING that MGA made an effort to induce or encourage BRISBOIS to steal MATTEL confidential information and trade secrets, as alleged in lines 2-6 on page 36 of MATTEL's Supplemental Responses and Objections to MGA's First Set of Interrogatories.

**REQUEST NO. 41**

All DOCUMENTS REFLECTING that BRISBOIS took from MATTEL the documents listed on page 37, line 5 through page 38, line 5 of MATTEL's Supplemental Responses and Objections to MGA's First Set of Interrogatories.

**REQUEST NO. 42**

All DOCUMENTS REFLECTING that BRISBOIS and/or MGA used trade secrets stolen from MATTEL for MGA's benefit, as alleged in lines 12-14 on page 38 of MATTEL's Supplemental Responses and Objections to MGA's First Set of Interrogatories.

**REQUEST NO. 43**

All DOCUMENTS REFLECTING that any documents allegedly taken by BRISBOIS from MATTEL were given to MGA by BRISBOIS.

**REQUEST NO. 44**

All DOCUMENTS REFLECTING that any documents allegedly taken by BRISBOIS from MATTEL were given to MGA HK by BRISBOIS.

**REQUEST NO. 45**

All DOCUMENTS REFLECTING that any documents allegedly taken by BRISBOIS from MATTEL were given to MGA MEXICO by BRISBOIS.

**REQUEST NO. 46**

All DOCUMENTS REFLECTING that any documents allegedly taken by BRISBOIS from MATTEL were given to LARIAN by BRISBOIS.

**REQUEST NO. 47**

DOCUMENTS sufficient to identify any computers assigned by MATTEL to BRISBOIS for use during her employment with MATTEL.

**REQUEST NO. 48**

The hard drive(s) or any mirror image thereof (including but not limited to any mirror image on any server or storage device) from any and all computers assigned by MATTEL to BRISBOIS for use during the last year of her employment with MATTEL.

**REQUEST NO. 49**

DOCUMENTS sufficient to identify any computers assigned by MATTEL to CASTILLA for use during his employment with MATTEL.

LAW OFFICES GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP 10250 CONSTELLATION BOULEVARD NINETEENTH FLOOR LOS ANGELES, CALIFORNIA 90067 (310) 553-3000

**REQUEST NO. 50**

The hard drive(s) or any mirror image thereof (including but not limited to any mirror image on any server or storage device) from any and all computers assigned by MATTEL to CASTILLA for use during the last year of his employment with MATTEL.

**REQUEST NO. 51**

All DOCUMENTS REFLECTING that CASTILLA took from MATTEL the documents listed on page 42, line 6 through page 43, line17 of MATTEL's Supplemental Responses and Objections to MGA's First Set of Interrogatories.

**REQUEST NO. 52**

All DOCUMENTS REFLECTING that CASTILLA has used proprietary and confidential information taken from MATTEL to improve MGA's sales forecasting and inventory planning, as alleged in lines 1-3 on page 44 of MATTEL's Supplemental Responses and Objections to MGA's First Set of Interrogatories.

**REQUEST NO. 53**

All DOCUMENTS REFLECTING that any documents allegedly taken by CASTILLA from MATTEL were given to MGA by CASTILLA.

**REQUEST NO. 54**

All DOCUMENTS REFLECTING that any documents allegedly taken by CASTILLA from MATTEL were given to MGA HK by CASTILLA.

**REQUEST NO. 55**

All DOCUMENTS REFLECTING that any documents allegedly taken by CASTILLA from MATTEL were given to MGA MEXICO by CASTILLA.

LAW OFFICES GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP 10250 CONSTELLATION BOULEVARD NINETEENTH FLOOR LOS ANGELES, CALIFORNIA 90067 (310) 553-3000

LAW OFFICES GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP 10250 CONSTELLATION BOULEVARD NINETEENTH FLOOR LOS ANGELES, CALIFORNIA 90067 (310) 553-3000

**REQUEST NO. 56**

All DOCUMENTS REFLECTING that any documents allegedly taken by CASTILLA from MATTEL were given to LARIAN by CASTILLA.

**REQUEST NO. 57**

All DOCUMENTS REFLECTING that MGA used any alleged trade secrets owned by MATTEL, except for any BRATZ INJUNCTION EXHIBITS, for any purpose.

**REQUEST NO. 58**

All DOCUMENTS REFLECTING that MGA HK used any alleged trade secrets owned by MATTEL, except for any BRATZ INJUNCTION EXHIBITS, for any purpose.

**REQUEST NO. 59**

All DOCUMENTS REFLECTING that MGA MEXICO used any alleged trade secrets owned by MATTEL, except for any BRATZ INJUNCTION EXHIBITS, for any purpose.

**REQUEST NO. 60**

All DOCUMENTS REFLECTING that LARIAN used any alleged trade secrets owned by MATTEL, except for any BRATZ INJUNCTION EXHIBITS, for any purpose.

**REQUEST NO. 61**

All DOCUMENTS REFLECTING, REFERRING OR RELATING TO any payment by MATTEL to any government or law enforcement authorities in any

country in connection with any actual, requested or proposed investigation and/or prosecution of the alleged theft of MATTEL's trade secrets by BRISBOIS, CASTILLA, VARGAS, TRUEBA and/or MACHADO.

**REQUEST NO. 62**

All DOCUMENTS REFLECTING, REFERRING OR RELATING TO any gifts given by MATTEL to any government or law enforcement authorities in any country in connection with any actual, requested or proposed investigation and/or prosecution of the alleged theft of MATTEL's trade secrets by BRISBOIS, CASTILLA, VARGAS, TRUEBA and/or MACHADO.

**REQUEST NO. 63**

All DOCUMENTS REFLECTING, REFERRING OR RELATING TO any compensation, monetary or non-monetary, given by MATTEL to any government or law enforcement authorities in any country in connection with any actual, requested or proposed investigation and/or prosecution of the alleged theft of MATTEL's trade secrets by BRISBOIS, CASTILLA, VARGAS, TRUEBA and/or MACHADO.

**REQUEST NO. 64**

DOCUMENTS sufficient to identify with specificity any alleged trade secret owned by MATTEL that YOU contend was misappropriated by or on behalf of MGA, except for any BRATZ INJUNCTION EXHIBITS.

**REQUEST NO. 65**

DOCUMENTS sufficient to identify with specificity each alleged trade secret owned by MATTEL that YOU contend was used by MGA, except for any BRATZ INJUNCTION EXHIBITS.

LAW OFFICES
GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000

**REQUEST NO. 66**

All DOCUMENTS REFLECTING any damage, loss or injury caused to MATTEL by reason of any alleged misappropriation by MGA of any of MATTEL'S alleged trade secrets, except for any BRATZ INJUNCTION EXHIBITS, that YOU allege in YOUR COUNTERCLAIMS.

**REQUEST NO. 67**

All DOCUMENTS REFLECTING any damage, loss or injury caused to MATTEL by reason of any violation of the Racketeer Influenced and Corrupt Organization Act that YOU allege in the Second Counterclaim of YOUR COUNTERCLAIMS.

**REQUEST NO. 68**

All DOCUMENTS REFLECTING any other damage, loss or injury caused to MATTEL by reason of any act or omission alleged in those of MATTEL'S COUNTERCLAIMS being tried in PHASE 2.

Dated: March 27, 2009

Patricia L. Glaser
Joel N. Klevens
GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP

Russell J. Frackman
MITCHELL, SILBERBERG & KNUPP, LLP

By: [signature]
Caroline H. Mankey
Attorneys for the MGA Parties for Phase Two

LAW OFFICES
GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000

LAW OFFICES
GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000

**PROOF OF SERVICE**

STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California; I am over the age of 18 and not a party to the within action; my business address is 10250 Constellation Boulevard, Nineteenth Floor, Los Angeles, California 90067.

On March 27, 2009, I served the foregoing document described as:

**MGA ENTERTAINMENT, INC.'S FIRST SET OF (PHASE 2) REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS**

on the interested parties to this action by placing a copy thereof enclosed in a sealed envelope addressed as follows:

**PLEASE SEE ATTACHED SERVICE LIST**

☐ (BY MAIL) I am readily familiar with the business practice for collection and processing of correspondence for mailing with the United States Postal Service. This correspondence shall be deposited with the United States Postal Service this same day in the ordinary course of business at our Firm's office address in Los Angeles, California. Service made pursuant to this paragraph, upon motion of a party served, shall be presumed invalid if the postal cancellation date of postage meter date on the envelope is more than one day after the date of deposit for mailing contained in this affidavit.

☐ (BY OVERNIGHT DELIVERY SERVICE) I served the foregoing document by Federal Express, an express service carrier which provides overnight delivery, as follows. I placed true copies of the foregoing document in sealed envelopes or packages designated by the express service carrier, addressed to each interested party as set forth above, with fees for overnight delivery paid or provided for.

☒ (BY PERSONAL SERVICE) I caused such envelope to be delivered by hand to the offices of the above named addressee.

☒ (BY EMAIL). I caused such documents to be delivered via email to the addressee(s).

☐ (BY FACSIMILE) I caused such documents to be delivered via facsimile to the offices of the addressee(s) at the following facsimile number:

Executed this 27th day of March, 2009, at Los Angeles, California.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

*[signature]*
LUCILLE E. YOUNG

LAW OFFICES
GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000

**SERVICE LIST**

John Quinn, Esq.
(johnquinn@quinnemanuel.com)
Jon D. Corey, Esq.
(joncorey@quinnemanuel.com)
Michael T. Zeller, Esq.
(michaelzeller@quinnemanuel.com)
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
**[By Personal Service]**

Russell J. Frackman, Esq.
(rjf@msk.com)
Patricia H. Benson, Esq.
(phb@msk.com)
Mitchell, Silberberg & Knupp, LLP
11377 W. Olympic Blvd.
Los Angeles, CA 90067
(310) 312-2000
**[By Email Service]**

Thomas J. Nolan, Esq.
(tnolan@skadden.com)
Raoul D. Kennedy, Esq.
(rkennedy@skadden.com)
Jason D. Russell, Esq.
(Jason.russell@skadden.com)
Skadden, Arps, Slate, Meagher & Flom LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071-3144
(213) 687-5000
**[By Email Service]**

Mark E. Overland, Esq.
moverland@obsklaw.com
Alexander H. Cote, Esq.
acote@obsklaw.com
Overland Borenstein Scheper & Kim LLP
601 W. 5th Street, 12th Floor
Los Angeles, CA 90017
**[By Email Service]**

# Exhibit 6

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 090378)
johnquinn@quinnemanuel.com
Michael T. Zeller (Bar No. 196417)
(michaelzeller@quinnemanuel.com)
Jon D. Corey (Bar No. 185066)
(joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br>Plaintiff,<br>vs.<br>MATTEL, INC., a Delaware corporation,<br>Defendant. | CASE NO. CV 04-9049 SGL (RNBx)<br>Consolidated with Case Nos. CV 04-09059 and CV 05-02727<br>Hon. Stephen G. Larson |
| AND CONSOLIDATED ACTIONS | **SUPPLEMENTAL DECLARATION OF MICHAEL T. ZELLER IN SUPPORT OF MATTEL, INC.'S MOTION OBJECTING TO PORTIONS OF DISCOVERY MASTER ORDER NO. 27 RE MATTEL'S MOTION TO COMPEL DOCUMENTS FROM BINGHAM MCCUTCHEN**<br>Date: July 6, 2009<br>Time: 1:30 p.m.<br>Place: Ctrm. 1<br>Discovery: December 11: 2009<br>Pre-trial Conference: March 1, 2010<br>Trial Date: March 23, 2010 |

DECLARATION OF MICHAEL T. ZELLER

1. I am a member of the bars of the States of California, New York and Illinois and a partner at Quinn Emanuel Urquhart Oliver & Hedges, LLP, attorneys for Mattel, Inc. I make this declaration of personal, firsthand knowledge, and if called and sworn as a witness, I could and would testify competently thereto.

2. I am making this supplemental declaration to update the Court on the status of document production in this litigation. In particular, Bingham has argued that it should not have to produce documents in response to Mattel's subpoena because Mattel allegedly has already received relevant documents and that the subpoena to Bingham is "at least partially" duplicative of the subpoenas to Omni 808 Investors, LLC ("Omni 808"), OmniNet Investors, LLC ("OmniNet") and Vision Capital, LLC ("Vision Capital") (Opp. at 15.)

3. As shown by Mattel previously, however, Mattel has not received key information from any of these entities pursuant to subpoena or from any other source. This still remains true as of the date of this Declaration. Thus, for example, Mattel has not received information regarding even the identities of the principals, members or officers of Lexington Financial Limited ("Lexington"), let alone its source of funding.

4. Vision Capital, an alleged investor in Omni 808 whose principal is Isaac Larian's brother-in-law, claims to have been funded by Lexington. Vision Capital's production as of this writing consists of only 149 pages of documents, the majority of which consist of previously produced Omni 808 corporate documents and Omni 808 promissory notes. Although it was compelled by prior Order to do so, Vision Capital has produced no documents showing the source or the transfer of the $10 million allegedly provided by Vision Capital to Omni 808 to fund the acquisition of the Wachovia debt. Vision Capital has not even produced any loan agreement between Vision Capital and Lexington, much less any communications,

other loan documents, checks, wire transfers or any other information relating to Lexington's alleged loan or other funding to Vision Capital.

5. Although it also was compelled by prior Order to do so, Omni 808 has not produced any documents purporting to document any wire transfers or other fund transfers to Omni 808 from most of Omni 808's alleged investors, including such alleged funding from Vision Capital, Leon Neman, Neil Kadisha, Benjamin Nazarian, David Nazarian or Joseph Moinian. See Omni 808's Statement of Position Re Order To Show Cause Re Appointment of Permanent Receiver, dated May 14, 2009 at 8:12-18 (identifying Omni 808's alleged investors).

6. For its part, OmniNet has represented that it had no responsive documents to produce beyond those produced by Omni 808. See Letter from Peter N. Villar to John Quinn, dated June 22, 2009, a true and correct copy of which is attached hereto as Exhibit 1.

Executed on July 3, 2009, at Los Angeles, California.

/s/ Michael T. Zeller
Michael T. Zeller

EXHIBIT 1

Exhibit 6
Page 48

BINGHAM

RECEIVED
JUN 2 2 2009

Peter N. Villar
Direct Phone: 714.830.0640
Direct Fax: 714.830.0719
peter.villar@bingham.com

June 22, 2009

**Via Hand Delivery**

John Quinn, Esq.
Michael Zeller, Esq.
Quinn, Emanuel, Urqhart, Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543

**Re: Mattel, Inc. v. MGA Entertainment, Inc., et al**

Counsel:

Pursuant to the Discovery Master's Order No. 27, enclosed is Omni 808 Investors, LLC's supplemental production of documents (Bates Nos. OMNI0010220-OMNI0010382). Also enclosed are Vision Capital, LLC's production of documents (Bates Nos. VISION000001-VISION000149). Finally, Omninet Capital, LLC has no responsive documents beyond those already produced by Omni 808 Investors, LLC.

We are in the process of updating and completing our privilege log and will serve it once it's completed.

Sincerely,

Peter N. Villar

Enclosures

Boston
Hartford
Hong Kong
London
Los Angeles
New York
Orange County
San Francisco
Santa Monica
Silicon Valley
Tokyo
Walnut Creek
Washington

Bingham McCutchen LLP
Plaza Tower, 18th Floor
600 Anton Boulevard
Costa Mesa, CA
92626-1924

T 714.830.0600
F 714.830.0700
bingham.com

A/73066426.1

Exhibit 1
Page 3

# Exhibit 7

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES -- GENERAL

Case No. CV 04-09049 SGL(RNBx) Date: July 9, 2009

Title: MATTEL, INC. V. MGA ENTERTAINMENT, INC., et al.

==================================================================

PRESENT: HONORABLE STEPHEN G. LARSON, U.S. DISTRICT JUDGE

| | |
|---|---|
| Cindy Sasse<br>Courtroom Deputy | None Present<br>Court Reporter |

| | |
|---|---|
| ATTORNEYS PRESENT FOR PLAINTIFFS: | ATTORNEYS PRESENT FOR DEFENDANTS: |
| None Present | None Present |

**PROCEEDINGS:** **ORDER GRANTING EX PARTE APPLICATION RE TEMPORARY RECEIVERSHIP (DOCKET #5728)**

**ORDER GRANTING EX PARTE APPLICATION RE COST SHIFTING (DOCKET #5865)**

**ORDER GRANTING IN PART EX PARTE APPLICATION FOR RELEASE OF JUROR TRANSCRIPTS (DOCKET #5805)**

**ORDER GRANTING IN PART MATTEL'S MOTION RE DISCOVERY MASTER ORDER NO 27 AND REMANDING DISCOVERY MASTER ORDER NO. 27 FOR RECONSIDERATION BY THE DISCOVERY MASTER IN LIGHT OF THE FILING OF THE TAAC (DOCKET #5561)**

**ORDER DENYING MOTION TO STRIKE THE FORENSIC AUDITOR'S REPORTS (DOCKET #5705)**

**I. ORDER GRANTING EX PARTE APPLICATION RE TEMPORARY RECEIVERSHIP (DOCKET #5728)**

Because the only opposition to the Ex Parte Application regarding the winding up of the Temporary Receivership involves the issue of cost-shifting, which is addressed separately, below, the Court **GRANTS** the Ex Parte Application. A separate order addressing this Ex Parte Application has been concurrently filed.

**II. ORDER GRANTING EX PARTE APPLICATION RE COST SHIFTING (DOCKET #5865)**

The MGA parties' opposition to the Temporary Receiver's Ex Parte Application argued that the costs of the Temporary Receivership should be shifted to Mattel (as the party who sought appointment of a Temporary Receiver). However, the Court has previously ruled that, at some yet-to-be defined date in the future, the Court will consider whether to shift the costs of both the Temporary Receivership and the Forensic Audit. Therefore, Mattel filed an Ex Parte Application seeking either to be relieved of the responsibility to respond to the MGA parties' argument or, alternatively, for an order setting a briefing schedule on the issue. It is not the intention of the Court to address the cost-shifting issue at this time; rather, as the Court has stated previously on the record, that issue is more efficiently resolved at a later date, most likely a date after completion of Phase 2 of the trial. Accordingly, the Court **GRANTS** Mattel's Ex Parte Application re Cost Shifting. Mattel is relieved of any duty to respond to MGA's argument regarding the appropriate allocation of costs arising from the Temporary Receiver that is set forth in the MGA parties's June 26, 2009 Opposition to the Temporary Receiver's Ex Parte Application.

**III. ORDER GRANTING IN PART EX PARTE APPLICATION FOR RELEASE OF JUROR TRANSCRIPTS (DOCKET #5805)**

The Court has received and reviewed the MGA Parties' Ex Parte Application For Partial Release of *In Camera* Juror Interview Transcripts, as well as the Opposition, the Reply, and the accompanying exhibits. The Court **GRANTS IN PART** the Ex Parte Application. Although the Court declines to award the relief sought, the Court will take steps to ensure that the transcript of the juror interviews are provided to the Ninth Circuit for its consideration of the appeal filed by the MGA parties.

The relevant *in camera* juror interviews were conducted on July 25, 2008; the findings made by the Court on the basis of those interviews are set forth in detail in the Court's Order Denying Motion for Mistrial, dated August 8, 2008. Counsel for the parties agreed that the juror interviews, which were conducted mid-trial, should be conducted *in camera*, and the MGA parties did not request that the Court grant them access to the transcripts to prepare their Motion for Mistrial. The Court indicated on the

record around the time of the filing of the Motion for Mistrial that it was not the Court's intent to grant the parties access to the transcripts.

After the conclusion of the trial, the MGA parties did not at any time request this Court grant access to the transcripts. To the contrary, some ten months passed between the date of the Order Denying Motion for Mistrial and the MGA parties' first post-trial request for access to those transcripts. That request was made to the Ninth Circuit, not this Court, on June 10, 2009. When the Ninth Circuit denied the request in favor of the MGA's presentation of the issue to this Court in the first instance, the MGA parties thereafter filed the present Ex Parte Application in a expeditious manner.

Ostensibly, as set forth in both the Motion filed before the Ninth Circuit and the Ex Parte Application before this Court, the reason the MGA parties seek access to those transcripts is so that they may use them to challenge the Court's Order Denying Motion for Mistrial. Although the MGA parties filed its Notice of Appeal on May 4, 2009, and although that Notice clearly indicated that the Order Denying Motion for Mistrial would be implicated in the appeal, the MGA parties failed to file its Motion seeking release of the transcripts until June 10, 2009. The MGA parties' failure to seek this relief until a month after they filed their Notice of Appeal and a month before their opening brief was due, and their decision to present the issue of release of the transcripts to the appellate court (rather than this Court) in the first instance, created the very urgency that cause them to seek ex parte relief from this Court. As such, the Court declines to grant the relief sought.

Nevertheless, in the interest of due process and in order to facilitate the full consideration of the issue by the Ninth Circuit, the Court will take steps to ensure that the transcripts of the *in camera* interviews are provided to the Ninth Circuit for *in camera* filing.

**IV. ORDER GRANTING IN PART MATTEL'S MOTION RE DISCOVERY MASTER ORDER NO 27 AND REMANDING DISCOVERY MASTER ORDER NO. 27 FOR RECONSIDERATION BY THE DISCOVERY MASTER IN LIGHT OF THE FILING OF THE TAAC (DOCKET #5561)**

In the challenged portion of Discovery Master Order No. 27 ("DM Order No. 27"), the Discovery Master denied Mattel's Motion to Compel discovery sought by service of a subpoena on non-party Bingham McCutchen LLP ("Bingham"), a law firm that represents Intervenor Omni 808, as well as a number of non-party entities that are familiar to those involved in this litigation: OmniNet Capital, LLC ("OmniNet"), Vision Capital, LLC ("Vision"), IGWT Group, LLC ("IGWT"), and IGWT 826 Investments, LLC ("IGWT 826"). Broadly categorized, the subpoena sought production of (1) fee agreements relating to Vision and Omni 808; (2) documents regarding the formation, control, and financing of Omni 808, Vision, and Lexington Financial Limited

("Lexington"); (3) documents identifying stakeholders and officers of Omni 808, Vision, and Lexington; (4) all contracts relating to Omni 808, Vision Capital, and Lexington; (5) all communications relating to Omni 808, Vision Capital, and Lexington, excluding attorney-client privileged documents; and (6) Bingham's representation of MGAE and certain named individuals who have some connection with MGAE, including a number of Mr. Larian's family members.

The Discovery Master correctly recognized the essential legal standard in assessing whether a subpoena may be enforced. The information must satisfy the discovery relevance standard, i.e., it must be "'reasonably calculated to lead to the discovery of admissible evidence.'" DM Order No. 27 at 19 (quoting Fed. R. Civ. P. 26(b)(1)). The decision of whether to enforce a subpoena ultimately implicates a balancing test that pits relevance of the materials sought and need to the requesting party against hardship to the party resisting the subpoena. DM Order No. 27 at 20. Non-parties are generally required to bear lesser burdens than parties in responding to subpoenas. Exxon Shipping Co. v. United States Dept. of Interior, 34 F.3d 774, 779 (9th Cir. 1994) ("The Federal Rules also afford nonparties special protection against the time and expense of complying with subpoenas.").

However, the Discovery Master overstated the burden of proof allocated to Mattel, as the party seeking discovery. See DM Order No. 27 at 20 ("As the party moving to compel compliance with the subpoena, Mattel bears the initial burden of establishing that the information sought is relevant and necessary to the claims or defenses at issue.") This standard is both overstated and incomplete. It is overstated in that Mattel need not show that the evidence sought is "necessary to the claims or defenses." Although Mattel indeed bears the burden of establishing relevancy, that showing is not one of "necessity." Rather, Mattel must bear the burden of establishing the discovery relevancy standard -- that the materials sought are "reasonably calculated to lead to the discovery of admissible evidence" – is met. It need not establish that the materials sought are "necessary" to its case.

This point leads to the manner in which the stated burden is incomplete. As clearly articulated by cases cited by Bingham, although Mattel bears an initial burden of establishing relevancy, the party resisting discovery thereafter has the burden of establishing that discovery should be denied. See Bryant v. Ochoa, 2009 WL 1390794 at *1 (S.D. Cal. 2009) ("The party seeking to compel discovery has the burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)(1). . . . Thereafter, the party opposing discovery has the burden of showing that the discovery should be prohibited, and the burden of clarifying, explaining or supporting its objections."); DIRECTV, Inc. v. Trone, 209 F.R.D. 455, 458 (C.D. Cal. 2002) (same); see also Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir. 1975) (reversing the district court's issuance of a protective order based on a failure of the party resisting discovery to meet its burden by asserting that the defendant's deposition would merely yield cumulative evidence).

The effect of this subtle variation on the burden of proof from that stated by the Discovery Master is magnified by the recent filing of the TAAC, which significantly heightens the relevancy of the issue of how the MGA parties and the parties represented by Bingham may be related, the formation of certain of those entities, and other issues implicated by Mattel's requests. Because the question of relevance is featured so prominently in the quintessential balancing test to which the present discovery motion was subjected, the filing of the TAAC dramatically altered the calculus that underlies the conclusions reached in DM No. 27.

For reasons related to judicial economy and preservation of scarce judicial resources (which this case has stretched to the outer limits), the Court defers decision, in light of the changed calculus that has occurred as the result of the filing of the TAAC, of the issues presented in the challenged portions of DM No. 27 to the Discovery Master. For that reason, the Court **REMANDS** the challenged portions of DM No. 27 to the Discovery Master for his reconsideration and re-balancing in light of the recently filed TAAC. The Discovery Master may, in his discretion, set the matter for further briefing and/or hearing, he may take the matter under submission based on the existing record, or he may take other action as he deems appropriate to resolve the present issues.

Notwithstanding the remand of DM Order No. 27, one issue raised by Mattel requires further consideration by the Court. At page 25 of DM Order No. 27, the Discovery Master appears to impose a blanket prohibition on discovery of materials that are in the possession of a subpoena recipient, but that are related to a non-party over whom the Court has not been shown to have jurisdiction. The Discovery Master cites no legal authority for such a blanket prohibition, and the Court, in its own research, has found none. Such a blanket prohibition precludes the application of the balancing test that applies almost universally to discovery motions; accordingly, and because this blanket prohibition is unprecedented, the Court finds that it is contrary to law. As to this narrow issue, the Court **GRANTS** Mattel's Motion. The issue of discovery of materials relating to Lexington is **REMANDED** to the Discovery Master for reconsideration in light of this ruling and in light of the filing of the TAAC.

## V. ORDER DENYING MOTION TO STRIKE THE FORENSIC AUDITOR'S REPORTS (DOCKET #5705)

In an unsealed filing that has since been ordered sealed by the Court, counsel for Omni 808 Investors, LLC ("Omni 808"), Todd E. Gordinier, made unwarranted, unsubstantiated personal attacks against the Court-Appointed Forensic Auditor, Ronald L. Durkin. Mr. Gordinier's selective public disclosure of portions of the Forensic Auditor's Summary Report, coupled with the maintenance of the Summary Report, as well as the later-filed Responsive Report and Final Report, under seal in their entirety, has led to an unbalanced public presentation of the issues discussed therein. In an

attempt to cure this deficiency, the Court has considered the possibility that it should simply unseal the relevant Reports and allow those Reports to speak for themselves.

Because the MGA entities were the primary subject of the Forensic Audit, the MGA parties have, quite understandably, objected to the proposed unsealing. Mattel, for its part, advocates quite emphatically, and not unreasonably, that the Reports should be unsealed in light of the selective disclosure. See Tr. at 31-32 ("It's the underlying analysis that refutes the selective disclosures that MGA and Omni made in a public forum to smear . . . both Mr. Durkin and Mattel.") At the other end of the spectrum, Omni 808 has moved to strike the Reports in their entirety.

In the end, although the Court does not order the unsealing of the Reports, it **DENIES** the Motion to Strike. The Court ordered the Forensic Audit to evaluate whether a receiver should be appointed; as the record bears witness, the Court eventually rejected the suggestion that it should appoint a permanent receiver, and the Court has instead appointed an MGA Monitor with more limited powers than a receiver. Nevertheless, the fact that the Reports were intended to serve a very limited purpose does not mean that there is no possibility that the Forensic Auditor's Reports will not serve any purpose henceforth.

As it currently stands, the Court **ORDERS** that no party shall cite to or rely upon the Reports for any purpose absent further Order of this Court.[1] However, the documents attached to the Reports, to the extent they are otherwise discoverable, are not insulated from discovery on the basis that they have been made part of the Reports. Conversely, documents, such as charts and interview notes, that were prepared by the Forensic Auditor are the property of the Court and are not subject to discovery or use in this or any other litigation by any party or non-party.[2]

Had it been counsel for the MGA parties who mounted the unwarranted, unsubstantiated, and public personal attacks on Mr. Durkin, the Court would find, notwithstanding the sensitive information contained therein, the unsealing of the Reports was an appropriate remedy for the selective disclosure.[3] However, here, it is

---

[1] This Order does not supersede the Court's Order permitting the Forensic Auditor to share information with the Court-Appointed Monitor.

[2] Toward that end, the Court **CLARIFIES** to the parties that the work papers, drafts, notes, detailed time records, and any other materials prepared by or at the direction of the Forensic Auditor are the property of the Court. The Court **ORDERS** the Forensic Auditor, as the custodian of those records on behalf of the Court, to retain those materials, whether maintained in electronic, hard copy, or any other medium, until further order of the Court.

[3] As it stands, counsel for MGAE, James I. Stang, wisely sought, and was granted, leave to file his more restrained, but just as unwarranted and unsubstantiated, personal attacks on Mr. Durkin under seal. See MGA Entertainment, Inc.'s Response to Final *In Camera* Report of Forensic Auditor Ronald L.

counsel for Omni 808 who made those attacks public, and although Mattel maintains that both the MGA parties and Omni 808 are jointly responsible for the selective disclosure, see July 6, 2009, Tr. at 33, whether, or to what extent, the MGA parties act or have acted in concert is an issue to be decided in Phase 2 of this action.

Nevertheless, Mr. Gordinier's attack on Mr. Durkin cannot pass without comment by the Court. The Court's comments are directed toward Mr. Gordinier personally, which is not the Court's usual practice. Although the irony of this form of address is not lost on the Court (given the subject of this Order), it is appropriate. Mr. Gordinier signed all three filings in which the personal attacks appear, and continues to stand behind those filings. Moreover, Mr. Gordinier expressly and unabashedly claimed personal responsibility for the brief that was not filed under seal, by both stating that he gave it a lot of thought before filing it and by implicitly acknowledging that although he considered filing his brief under seal, he ultimately rejected that course of action. See May 18, 2009 Tr. at 46-47 ("My brief speaks for itself. We have nothing to hide. . . . I didn't feel it appropriate, necessary, or desirable to file my brief under seal. And I don't have a problem with the Court or anybody reading what I have to say, because I gave it a lot of thought, and I gave it at lot of consideration.").

At the July 6, 2009, hearing, the Court outlined its concerns that while the attacks on Mr. Durkin were public, the Reports are not, and that "it doesn't seem fair" to the Court to allow those allegations to stand alone without a chance to respond to them. July 6, 2009, Tr. at 25-26. In response, Mr. Gordinier contended that his comments "respond[ed] to the report," and that "[w]hat we said was that there were problems with that report." July 6, 2009, Tr. at 28. This statement is an implicit denial that any personal attacks were made; however, as set forth in great detail below, the record belies Mr. Gordinier's *post hoc* protestations.

Lest Mr. Gordinier's statement reflecting his implicit denial that he engaged in personal attacks be perceived as one being made at oral argument without ample time to reflect upon its significance, the statement is also made by Mr. Gordinier in Omni 808's Reply Memorandum, a document upon which he had ample time to reflect: "Each and all of the references in Omni's Statement of Position refer to the contents of Mr. Durkin's Reports and the shortcomings contained therein and omitted therefrom, not to his person." Id. at 2 n.1. To be sure, the criticisms leveled at Mr. Durkin are framed in

---

Durkin (docket #5918) at 4 (accusing Mr. Durkin of "making McCarthy-like statements of non-existent buybacks and unsupported insinuations of conflicts of interest"); id. at 9 (suggesting that Mr. Durkin's formulation of certain search terms relating to criminal acts in Farsi without a concurrent formulation of those terms in English demonstrated a "predisposition that Persian members of MGA's management and staff (and only the Persian members) might be engaged in illegal conduct"). Mr. Stang's attacks pale in comparison to those advanced by Mr. Gordinier, and they were filed under seal. Thus, although the Court's analysis and conclusions regarding the Forensic Auditor's Reports applies with equal force to Mr. Stang's statements, his are not the focus of the Court's attention at this time.

terms of his Reports. Still other criticisms are, as counsel maintains, addressed to the Reports themselves; those must be analyzed based on their substance. However, as aptly demonstrated by the cited and quoted portions of Mr. Gordinier's filings that appear below, his criticisms do not, by any measure, confine themselves to those Reports, and instead reach out in a highly personal manner to attack the author, his professionalism, his competence, his objectivity, and his integrity.[4]

Indeed, in a display the likes of which have not been previously witnessed by this Court, Mr. Gordinier strayed far afield of legitimate criticism of the discussions, analyses, and conclusions reached in the Summary Report and the Reports that followed. To be sure, there are instances in which Mr. Gordinier addressed the message found in those Reports; just as surely, however, as detailed below, Mr. Gordinier attacked the messenger. Specifically, the papers filed by Mr. Gordinier on behalf of Omni 808 call into question Mr. Durkin's professionalism and competence, as well as his objectivity and integrity. Moreover, and alarmingly, they falsely accuse Mr. Durkin of being influenced by an ethnocentric bias against Mr. Larian and Mr. Kadisha. Such attacks, aimed at Mr. Durkin personally rather than the discussion, analyses, and conclusions set forth in his Reports, appear throughout Omni 808's papers. See Omni 808 Investors, LLC's Statement of Position re Order to Show Cause re Appointment of a Permanent Receiver (docket #5446) ("SOP"), filed May 14, 2009, at 11 (referring to Mr. Durkin's "irresponsible" analysis); id. (noting that Mr. Durkin is "far too experienced" to believe that he "produced . . . a balanced presentation"); id. (stating that "Mr. Durkin's report is a polemic" and "a piece of advocacy"); id. at 12 n.9 (calling into question Mr. Durkin's "objectivity" based on the fact that the Court ordered Mr. Durkin's fees be paid (at least in the first instance) by Mattel); id. (suggesting that Mr. Durkin's ex parte communications with Mattel were improper); id. at 13 n.10 (characterizing Mr. Durkin's quotation of Mr. Larian's and Mr. Kadisha's account of how the two men were acquainted, from "the Persian community," as "at best, unprofessional" and, "at worst,

---

[4] Adding still further to the mounting irony, in the same footnote that Mr. Gordinier disclaims engaging in improper personal attacks, he falsely accuses counsel for Mattel of advancing their own improper *ad hominen* attacks against Neil Kadisha, who has been referred to as a "common thief" in certain unspecified Mattel filings. Mr. Kadisha is the Managing Partner of a diversified investment firm, Omninet Capital, LLC, and an investor in Omni 808. To call someone a "common thief" is, undoubtably, by any measure, a highly personal attack, therefore an attack addressed "to the man," or *ad hominen*. However, in the same manner Mr. Gordinier accuses Mr. Durkin of failing to provide appropriate context to the Court in his Reports, Mr. Gordinier himself fails to acknowledge that counsel for Mattel's use of the term "common thief" in connection with Mr. Kadisha merely quotes Los Angeles County Superior Court Judge Henry W. Shatford's conclusion regarding Mr. Kadisha, as set forth in his 191-page Statement of Decision, dated October 24, 2006, which was issued after a 200-day trial, which is currently pending appeal, and which conferred upon Mr. Kadisha the oft-repeated moniker of "common thief," as well as "embezzler," and "perjurer." See Uzyel v. Kadisha, Cal. App. Nos. B196045, B203804, B198007, B199850, B201425, 2009 WL 646096 (Mar. 4, 2009) (appellate brief). As always, context is key. The use by counsel for Mattel of another court's findings and conclusions to advance an argument is not inappropriate. Those findings and conclusions may, or may not, be relevant to matters presented to the Court. Used in this manner, although undoubtably addressed "to the man" (and his credibility), it is not an improper *ad hominen* attack.

evidence of improper cultural bias"); id. (in the same footnote, referring to the same quotation, stating that "[t]he tone [of the report] itself is compelling proof that Mr. Durkin had no intention of providing an 'objective' report to the Court."); id. at 23 (referring to the Summary Report as "Mr. Durkin's ill-concealed advocacy piece"); id. (noting that advocacy, rather than objectivity, "is certainly the posture [Mr. Durkin] is most comfortable with"); Omni 808 Investors, LLC's Memorandum in Support of Its Requests to Strike Summary and Responsive Reports of Ronald L. Durkin (docket #5705) ("Motion to Strike"), filed June 8, 2009, at 4 (noting Omni's "doubts that the Court or any party would benefit further by continuing this façade of Mr. Durkin's 'impartiality'"); id. at 7 (calling Mr. Durkin's explanation of his conclusion regarding the relatedness of certain parties as "not only fatuous[,] but [also] intellectually dishonest"); id. at 9 (suggesting that Mr. Durkin intentionally concealed from the Court the fact that Mr. Larian sought other funding sources before turning to Mr. Kadisha); id. at 10 (noting that "Mr. Durkin's repeated references to Mr. Larian's and Mr. Kadisha's common 'Persian' heritage can only be viewed as an attempt to draw some nefarious ethnic connection between them"); id. at 12 (calling the reference to Mr. Larian's and Mr. Kadisha's ethnicity "unprofessional symptoms of improper cultural bias [that] have no place in a supposedly objective report"); Omni 808 Investors, LLC's Reply Memorandum (docket #5809) ("Reply Memo") at 14 (suggesting that not only Mr. Durkin, but also counsel for Mattel, harbor "cultural biases" that lead them to "suggest[] that [Mr. Larian's and Mr. Kadisha's] common heritage makes [them] more likely to act contrary to their own interests); id. at 15 (stating that, according to his own interview notes, Mr. Durkin "misrepresented" to the Court in his Summary Report how Mr. Larian and Mr. Kadisha portrayed their relationship with each other).

As alluded to, Omni 808's criticisms have not been limited to personal attacks; some of the criticisms are in fact aimed at the Reports themselves. See e.g., SOP at 16 ("Mr. Durkin's conclusion that the Wachovia-Omni transaction impacted 'MGAEI's solvency and ability to continue conducting operations' is simply wrong."). Any comment by the Court regarding the substance of the discussions, analyses, and conclusions presented to the Court in the Forensic Auditor's Summary, Responsive, and Final Reports is inadvisable at this time. With the filing of the Third Amended Answer and Counterclaims, much of the subject matter of the Forensic Auditor's Reports have been incorporated into the claims at issue in this action. As such, it would be premature for the Court to comment upon the substance of issues that are yet to be adjudicated, and that are subject to a trial by jury. Nevertheless, the Court has reviewed the Forensic Auditor's Summary, Responsive, and Final Reports, and the exhibits attached thereto. The Court has also reviewed and considered the criticisms aimed at the Forensic Auditor, cited and quoted above, as well as the entirety of all the papers responding to the Forensic Auditor's Reports filed to date. After this review, the Court is firmly convinced that all the personal criticisms of Mr. Durkin are unwarranted and unsubstantiated.

At best, the criticism of Mr. Durkin's performance and presentation represents a

different interpretation of available evidence. That such disagreements would arise between the analyses offered by a Court-Appointed Forensic Auditor and that offered by counsel for a party whose transactions have been a subject of that audit is by no means surprising. A jury considering the relevant evidence might ultimately make factual determinations that tend to agree with Mr. Durkin's assessment, it might ultimately tend to agree with Mr. Gordinier's assessment, or it may very well reject both positions in favor of another. The answer to the merits of the claims at issue in this action must await another day. Today, the Court merely notes that its examination of the Forensic Auditor's Reports reveal that Mr. Gordinier's personal attacks aimed at their author were unjustified.

Some specific attacks directed toward Mr. Durkin – relating to his background as a law enforcement officer, his communications with counsel for Mattel, and specific (but baseless) allegations of ethnocentric bias -- are worthy of more specific comment by the Court.

Stopping short of explicitly stating such, Mr. Gordinier appears to labor under the assumption that Mr. Durkin has been unable to put behind him the prosecutorial mindset under which he presumably operated during his former service to this Nation as an agent of the Federal Bureau of Investigation ("FBI"). At the outset, the Court notes that Mr. Gordinier's unstated assumptions do a disservice to the prosecutors and the law enforcement officers who work with those prosecutors, both of whom conduct their work under the clearly delineated duty to ferret out not only evidence of guilt but also "evidence favorable to the accused." See e.g., Berger v. United States, 295 U.S. 78, 88 (1935) (noting that the role of the prosecutor is not to win at all costs and observing that the prosecutor "is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done."); Brady v. Maryland, 373 U.S. 83, 87 (1963) (imposing a duty on prosecutors to provide to the defense exculpatory evidence when requested to do so).

Secondly, even if prosecutorial duties were not so defined, the Court finds no suggestion that Mr. Durkin skewed the evidence in favor of any particular viewpoint. Undoubtedly, there is a ***complete absence*** of any evidence that, as Mr. Gordinier has suggested, Mr. Durkin has embarked upon a campaign to purposely mislead the Court.

Mr. Gordinier also suggests that, because Mr. Durkin's bills are being paid by Mattel, Mattel has, through this payment or through other communications with Mr. Durkin, bought Mr. Durkin's loyalty. This is utter nonsense. As demonstrated by the Court's communications with him, Mr. Durkin is a Court-Appointed Officer who understands that his role is to work on behalf of the Court and not on behalf of any party. In any event, the Court's Order of January 7, 2009, which appointed Mr. Durkin, imposed the costs of the audit on Mattel "in the first instance," but expressly provided for

the possibility that the audit expenses be shared or shifted to the MGA parties. Moreover, to suggest, however subtly, that ex parte communications with counsel for Mattel were improper ignores the Court's mandate to the Forensic Auditor in the January 7, 2009, Order, which states that Mr. Durkin was provided with attorney contact information and that he "shall direct his initial communications to counsel." At no time has the Court precluded the Forensic Auditor's communications with Mattel or its counsel; in fact, because the Forensic Audit was undertaken based on evidence gathered by and presented to the Court by Mattel, Mr. Durkin would have been remiss in his duties if he failed to communicate with Mattel and its counsel.

Mr. Durkin was vested with powers and discretion to complete a Court-ordered Forensic Audit. Pursuant to an Order of this Court, he undertook this task and exercised those powers and that discretion, presenting his Reports in conformity with the Court's instructions. Despite counsel's attacks, the Court's review of the evidence before it discerns no abuse of those powers or of that discretion.

Particularly troubling to the Court is that counsel speculates that, because Mr. Durkin noted in his report that Mr. Larian knew Mr. Kadisha from "the Persian Community," Mr. Durkin could be "of the view that this common heritage makes Mr. Kadisha more likely to act contrary to his own interests or to do something via third-parties that he wouldn't otherwise do?" See SOP at 13-14 n.10 (appearing to pose this thought as a rhetorical question). There is no indication in the record, or otherwise, that Mr. Durkin holds such a view. To the contrary, Mr. Durkin's comment regarding the acquaintanceship of Mr. Larian and Mr. Kadisha from "the Persian Community" (which is noted in the report within quotation marks and is expressly attributed to a reference made by Mr. Larian himself) is clearly predicated on interviews with these two individuals, each of whom related independently to Mr. Durkin and his colleagues that they knew each other from "the Persian Community." See Durkin Summary Report, Ex. 14, at 2 ¶ 3 (Notes re March 25, 2009, interview with Mr. Larian: "He indicated that he knew Kadisha from the Persian community.") and Ex. 14, at 15 ¶ 2 (Notes re March 26, 2009, interview with Mr. Kadisha: "Kadisha stated that he knows Larian from the Persian community."). The purpose for this reference is made clear in the footnote set forth at the end of the sentence in which the reference appears; namely, the Report discusses evidence that the relationship between Mr. Larian and Mr. Kadisha is stronger and more personal than either man claimed it was. See Summary Report at 5 n.18; Ex. 15 (personal emails).

In the Reply Memo, Mr. Gordinier takes issue with this explanation, this time including not only Mr. Durkin but also counsel for Mattel as the targets for his unsubstantiated allegations of "cultural bias." Mr. Gordinier first mischaracterizes an argument made by Mattel. Mattel argued, and quite correctly, both that how well Mr. Larian and Mr. Kadisha knew each other was relevant to a determination of whether certain transactions between the two were arms-length transactions, and that this point was likely not lost on either of these two very sophisticated and successful

businessmen.[5] As noted previously, both Mr. Larian and Mr. Kadisha stated that they knew each other from "the Persian community" which, in the Forensic Auditor's view, was intended to, or at least had the tendency to minimize the existing relationship between the two. Mr. Gordinier incorrectly characterizes this argument as Mattel's contention that Mr. Larian's and Mr. Kadisha's "Persian relationship" and "common Persian heritage" was somehow relevant to a determination of whether the Omni 808 transaction was an arms-length transaction. Mattel made no such argument. Neither counsel for Mattel nor Mr. Durkin have implied that Mr. Larian's and Mr. Kadisha's ethnicity factors into the analysis. Other than to point to Mr. Larian's and Mr. Kadisha's separate, but identical, accounts of how they knew each other which, in turn, suggests how well they know each other, neither counsel for Mattel nor Mr. Durkin have stated or implied that Mr. Larian's and Mr. Kadisha's shared ethnicity is relevant to any matter currently or potentially before the Court. Compare Opposition at 8-9 with Reply Memo at 14-15.

Moreover, Mr. Gordinier's substantive point, that Mr. Durkin "misrepresented" to the Court what Mr. Larian and Mr. Kadisha told him about the closeness of their relationship, fares no better. See Reply Memo at 15. On this point, it is important to set this stage properly. Counsel for all parties have attempted to glean far too much from two sterile paragraphs of interview notes taken by Mr. Durkin. Much can be inferred from conversations and interviews through not only what is said, but what is not said, by the interviewee's demeanor, by the tone of the speaker, by the length and placement of pauses, and by non-verbal gestures and body language. With all these variables, much of what is communicated does not find its way into notes.[6] For instance, Mr. Durkin's interview of Mr. Larian lasted over two and a half hours; however, the interview notes are a mere five and a half pages. Similarly, a one-hour and ten minute interview of Mr. Kadisha yielded only three and a half pages of interview notes. This is not to suggest that the notes should have been longer or that the interviews should have been recorded or transcribed; rather, it is to suggest that counsel's arguments based on another's notes are not particularly probative.

In contrast, Mr. Durkin's assessment, based on his interviews with both of them,

---

[5] In fact, the Court just this week issued a 30-page, single-spaced opinion resolving a 10-day bench trial conducted over the sole issue of whether a transaction between "closely related" entities reflected its fair market value, one of the more significant arguments ultimately rejected by the Court in that case being that the close relationship between the parties necessarily rendered the transaction a "sweetheart deal." See July 6, 2009, Order, Siegel v. Warner Bros. Entertainment, Inc., et al., CV 04-08400 SGL (RZ) (docket #554).

[6] Indeed, the interview notes upon which the parties rely concede as much. See Summary Report, Ex. 14 at 2, 15 ("This interview memorandum is a factual representation of the topics discussed during the interview and is not intended to be a word for word or exact transcription of the conversation."). Thus, in addition to not taking into account all non-verbal communication, the notes do not even represent everything that was said during the interview.

is that Mr. Larian and Mr. Kadisha attempted to minimize their relationship because both of them understand the relevance of any friendship or other connection between them to the assessment of the arms-length nature of any transactions in which they have engaged. Mr. Durkin's assessment does not come from the gentle teasing of a strained meaning from two sterile paragraphs of brief notes taken by another person; rather, his assessment springs from his participation in the interview process, the entirety of the interviews he conducted of Mr. Larian and Mr. Kadisha, and his review of all of the evidence. As such, the Court defers to his assessment, at least insofar as how Mr. Larian and Mr. Kadisha portrayed their relationship to him.

As for that scant language from which the parties glean so much meaning, the entirety of which is set forth below, it in no way supports the contention made by Mr. Gordinier that Mr. Durkin "misrepresented" to the Court what Mr. Larian and Mr. Kadisha conveyed to him about the closeness of their relationship. On this topic, the notes of Mr. Larian's interview merely state the following:

> Larian decided to contact Neil Kadisha of OmniNet as he knew his company was in the distressed loan business. He indicated that he knew Kadisha from the Persian community. Kadisha said he wouldn't do the deal alone in today's environment and wanted Larian and their other friends to invest in the deal with MGA. Larian stated that Kadisha negotiated the debt with Wachovia and got it down significantly, Larian said he is not bitter about Kadisha getting a good deal on buying the loan.

Summary Report, Ex. 14, at 2 ¶ 3 (emphasis added). This paragraph contains the word "friends," and perhaps could even be read as an implicit statement by Mr. Larian that he and Mr. Kadisha are "friends." But the language does not compel such an inference. Moreover, it does not comport with the notes of Mr. Kadisha's interview, which on this topic state only the following:

> Larian and Kadisha have never been to dinner together. Kadisha stated that he knows Larian from the Persian community and he sees him often at religious events, etc. He has no investments with Larian. Kadisha did not talk with Larian last night, this morning or in the last two days.

Summary Report, Ex. 14, at 15, ¶ 2. Mr. Durkin's assessment that Mr. Larian and Mr. Kadisha sought to minimize the extent of their relationship is not contradicted by these short passages.

The criticism that Mr. Durkin was acting pursuant to an ethnic or cultural bias is clearly baseless. The allegations are irresponsible, and they are made to capitalize on

their inherent sensational nature for counsel's own purposes of diverting attention away from the substance of the Reports. Sensationalism aside, when viewed in context, the Reports' reference to Mr. Larian and Mr. Kadisha knowing each other from "the Persian community" was plainly innocuous. The reference was a direct quotation from both Mr. Larian and Mr. Kadisha. It was used in a broader discussion regarding how (and thus, impliedly, how well) the two knew each other, which is itself relevant to the issue of whether certain transactions relevant to the present litigation were made at arms length.

This is a most unfortunate incident. The Court certainly understands, in a case as hotly contested as this one -- with such high stakes, with such complex legal issues, and with such truly extraordinary legal talent on all sides – that lawyers, however ethical and committed to the highest standards of professionalism (as the Court presumes and has found all counsel of record here to be), make statements or commit acts in haste that they subsequently regret. All of the players to this drama, are, after all is said and done, human. As such, all of us are vulnerable to all-too-common human frailties. The Court would place itself at the very top of any list of lawyers who have spoken improvidently at one time or another in this case (and any number of others). What the Court has witnessed here, however, in both manner and substance, for the reasons noted above, goes beyond what the Court can let pass without some manner of reprobation. So let the Court be clear: Nothing excuses the attempted character assassination in which Mr. Gordinier has engaged.

**IT IS SO ORDERED.**

**EXHIBIT 8 REMOVED**

**PURSUANT TO PROTECTIVE ORDER**

# Exhibit 9



Robert C. O'Brien (SBN 154372)
ARENT FOX LLP
555 West Fifth Street, 48th Floor
Los Angeles, CA 90013-1065
Telephone: 213.629.7400
Facsimile: 213.629.7401
obrien.robert@arentfox.com

Discovery Master

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br>Plaintiff,<br>v.<br>MATTEL, INC., a Delaware corporation,<br>Defendant. | Case No. CV 04-09049 SGL (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-2727<br><br>**PHASE 2 DISCOVERY MATTER**<br><br>**ORDER NO. 21, REGARDING:**<br><br>**EX PARTE APPLICATION OF MATTEL FOR OSC RE: OMNI 808's FAILURE TO COMPLY WITH COURT ORDER** |
| CONSOLIDATED WITH MATTEL, INC. v. BRYANT and MGA ENTERTAINMENT, INC. v. MATTEL, INC. | |

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

ORDER NO. 21
[Case No. CV 04-09049 SGL (RNBx)]

Exhibit 9
Page 89

The Discovery Master, having been notified of the Court's decision to refer to the Discovery Master for initial disposition Mattel's *ex parte* application for an Order to Show Cause re: the alleged failure of Omni 808 Investors, LLC ("Omni 808") to comply with the Discovery Master's March 10, 2009 Order (the "March 10 Order") or, alternatively, for an Order shortening time to hear a motion for such relief (the "Application"), and having reviewed the Opposition filed by Omni 808 and supporting papers, hereby **ORDERS** as follows:

1. Omni 808 shall produce to Mattel all documents ordered to be produced pursuant to the March 10 Order no later than 5:00 p.m. on April 28, 2009 and shall simultaneously serve on the Discovery Master a notice confirming Omni 808's compliance.

2. In the event Omni 808 fails to comply in any respect with the provisions of Paragraph 1, above, the Discovery Master shall refer this matter to the Court for further action, and reserves the right to recommend to the Court that the relief requested by Mattel in the Application be granted, in whole or in part.

3. By way of guidance to the parties, and to reduce the likelihood of unnecessary and costly motion practice, the Discovery Master reminds the parties that, until and unless a deadline or other requirement imposed by the Discovery Master is expressly modified by written Order, the parties shall timely comply with all Orders issued by the Discovery Master, including the deadlines by which parties are required to provide supplemental responses or produce documents.

Dated: April 23, 2009

By: /s/ Robert C. O'Brien
ROBERT C. O'BRIEN
Discovery Master

**EXHIBIT 10 REMOVED**

**PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT 11 REMOVED**

**PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT 12 REMOVED**

**PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT 13 REMOVED**

**PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT 14 REMOVED**

**PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT 15 REMOVED**

**PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT 16 REMOVED**

**PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT 17 REMOVED**

**PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT 18 REMOVED**

**PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT 19 REMOVED**

**PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT 20 REMOVED**

**PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT 21 REMOVED**

**PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT 22 REMOVED**

**PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT 23 REMOVED**

**PURSUANT TO PROTECTIVE ORDER**

EXHIBIT 24 REMOVED

PURSUANT TO PROTECTIVE ORDER

**EXHIBIT 25 REMOVED**

**PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT 26 REMOVED**

**PURSUANT TO PROTECTIVE ORDER**