# EXHIBIT 5

1  Robert C. O'Brien (SBN 154372)
   ARENT FOX LLP
2  555 West Fifth Street, 48th Floor
   Los Angeles, CA  90013-1065
3  Telephone:  213.629.7400
   Facsimile:   213.629.7401
4  obrien.robert@arentfox.com

5

6  Discovery Master

7

8              UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10                  EASTERN DIVISION

11

12  CARTER BRYANT, an individual,,          Case No.  CV 04-09049 SGL (RNBx)

13              Plaintiff,                  Consolidated with
                                            Case No. CV 04-09059
14          v.                              Case No. CV 05-2727

15  MATTEL, INC., a Delaware               **PHASE 2 DISCOVERY MATTER**
    corporation,
16                                         **ORDER NO. 6, REGARDING:**
                Defendant.
17                                           **(1)  MOTION OF MATTEL, INC.
                                             TO COMPEL PRODUCTION OF
18                                           DOCUMENTS RESPONSIVE
                                             TO ITS FIRST AND THIRD
19                                           SETS OF REQUESTS FOR
                                             PRODUCTION; and**
20
                                             **(2)  MOTION OF MGA TO
21                                           COMPEL PRODUCTION OF
                                             DOCUMENTS RESPONSIVE TO
22                                           THE DOCUMENT REQUEST
                                             NOS. 526 AND 528**
23

24

25  CONSOLIDATED WITH
    MATTEL, INC. v. BRYANT and
26  MGA ENTERTAINMENT, INC. v.
    MATTEL, INC.
27

28

EXHIBIT __5__
PAGE __101__

## I.   **INTRODUCTION**

This Order sets forth the Discovery Master's ruling on:  (1) the motion of Mattel, Inc. ("Mattel") to compel production of documents by MGA Entertainment, Inc. ("MGA Entertainment") responsive to Mattel's First Set of Requests for Production No. 48 and Third Set of Requests for Production Nos. 43 through 75, 87 and 88 [Docket No. 4741] (the "Mattel Motion"), and (2) the motion of MGA Entertainment, Isaac Larian, MGA Entertainment HK Limited, and MGAE De Mexico SRL De Cv (collectively "MGA") to compel Mattel to produce documents responsive to MGA's Requests for Production 526 and 528 [Docket Number 4782] (the "MGA Motion") (collectively, the "Motions").

The Motions came on regularly for hearing before the Discovery Master on March 11, 2009.  All interested parties were represented by counsel and afforded the opportunity to present oral argument on the Motions.  The Discovery Master, having considered the papers filed in support of and in opposition to the Motions, and having heard oral argument thereon, rules as set forth below.

## II.   **THE MATTEL MOTION**

Mattel seeks to compel MGA Entertainment to produce documents responsive to 36 separate document requests.  (Mattel Motion, pp. 9 – 15). However, MGA Entertainment subsequently agreed to produce all non-privileged documents responsive to 34 of the document requests identified by Mattel.  (MGA Opposition, p. 6).  Therefore, the only document requests that remain at issue are Mattel's Third Set of Requests for Production Nos. 87 and 88.  (*Id.*, p. 7).

### A.   **The Discovery Sought**

Document Request No. 87 seeks "all personnel and vendor files for each person identified in Exhibit 664." (Mattel's Sep. Stmt., p. 3).

Document Request No. 88 seeks "all personnel and vendor files for each person who has worked as an employee of or vendor for [MGA Entertainment] and who also has been at any time an employee or vendor for Mattel." (*Id.*, p. 5).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT **5**
PAGE **102**

**B.    Phase 1 Ruling**

This is not the first time that Mattel has moved to compel responses to Document Request Nos. 87 and 88.  Mattel previously moved to compel responses to these requests as part of Phase 1, but its motion was denied because "Request Nos. 87 and 88 (files for former Mattel employees) . . . relate[d] primarily to Phase 2 issues." (Disc. Master Order, Apr. 14, 2008, p. 7).  The former discovery master's April 14, 2008 Order denying Mattel's original motion to compel further held that "[i]n view of the stay on Phase 2 discovery . . . . [n]othing in this Order is intended to authorize or preclude Mattel from seeking further production of documents in response to Request Nos. 1 – 88 during Phase 2 discovery." (*Id.*, pp.7 - 8).

**C.    Objections of MGA Entertainment**

In its Opposition, MGA Entertainment relies on three basic grounds for refusing to produce the requested documents.  First, MGA Entertainment argues that Mattel failed to meet and confer.  Second, MGA Entertainment argues that the requests are overbroad.  Finally, MGA Entertainment argues that California's privacy laws prevent it from producing the requested documents.

**1.    Purported Failure To Meet And Confer**

As indicated above, MGA Entertainment first asserts that Mattel's Motion to Compel should be denied because Mattel failed to adequately meet and confer. (MGA Opposition, pp. 9 - 10).  However, MGA Entertainment admits that Mattel did meet and confer regarding the two requests at issue prior to filing its original motion to compel in Phase 1.  (*Id.*, p. 2 ["The Renewed Motion is in fact based on meet and confer discussions held over one year ago with MGA's prior lead counsel."]; *see also id.*, p. 9 n.2 [Mattel "met and conferred over a year ago"].)  MGA further provides no legal authority, and the Discovery Master has found none, supporting the proposition that a party must meet and confer again before renewing a motion to compel that was denied merely because the case had been

EXHIBIT  5
PAGE  103

1   divided into phases and where the order denying the motion expressly noted that

2   nothing in the ruling was intended to "preclude Mattel from seeking further

3   production of documents in response" to the requests as part of Phase 2 discovery.[1]

4   (Order Apr. 14, 2008, pp. 7 - 8).

5       Even assuming such a requirement did exist, Mattel in fact met and conferred

6   with MGA Entertainment for a second time following the filing of its current

7   motion and resolved 34 of the 36 document requests in dispute. (MGA Opposition,

8   pp. 1, 6.) However, the parties were still unable to resolve their differences relating

9   to Document Requests Nos. 87 and 88. (*Id.*, 7–9.) It is, therefore, unclear what

10  could have been accomplished by an additional meet and confer on these issues

11  prior to the filing of the motion. Regardless, Mattel met and conferred once before

12  filing its current motion to compel and that is all that is required by the Federal

13  Rules of Civil Procedure and the discovery procedures governing this case.

### 2.   Overbreadth Objection

15      MGA Entertainment's second argument in opposition to Mattel's Motion is

16  that Document Requests Nos. 87 and 88 are "grossly overbroad." (MGA

17  Opposition, pp. 14 – 15). Specifically, MGA Entertainment argues that the requests

18  are improper because they are not tied "to any product(s) that Mattel alleged that

19  MGA [Entertainment] stole from Mattel." (*Id.*,14.) Without citing any legal

20  authority in support of this position, MGA Entertainment asserts that the current

21  Discovery Master should find that the requests are overbroad because the prior

22  discovery master merely compelled it to produce portions of personnel and vendor

23  files related to the Bratz products as part of Phase 1 discovery. (*Id.*; *see also* Order

24  Apr.14, 2008, pp. 7 - 8). But MGA Entertainment's argument fails to recognize

25  //

26

27  [1] The arguments of MGA Entertainment that (1) it has new lead counsel and (2) the case has "changed dramatically" since the initial meet and confer took place in 2008 are not supported by any legal authority, (MGA Opposition, p. 9),

28  and do nothing to alter the fact that Mattel met and conferred on these issues previously.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 3 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT __5__
PAGE __104__

1    the differences between Mattel's Phase 1 and Phase 2 claims.[2]

2         The touchstone for determining whether a particular discovery request is

3    reasonably calculated to lead to the discovery of admissible evidence in this case is

4    whether the request bears some relation to the issues to be tried in Phase 2.

5    Whereas Phase 1 of this case primarily addressed whether Mattel or MGA

6    Entertainment owned the rights to the Bratz products, Mattel's Phase 2 claims are

7    not linked to a single discrete product or even multiple products.  Instead, the issues

8    to be litigated in Phase 2 include, among other things, Mattel's claim that MGA

9    Entertainment stole "a vast array of trade secrets and other confidential information

10   that comprise Mattel's intellectual infrastructure," including, among other things,

11   stealing "Mattel's proprietary business methods, practices and information."

12   (Second Amended Answer and Counterclaims ["SAAC"], ¶ 20).  Mattel alleges in

13   its Counterclaims, which are to be litigated in Phase 2, that MGA Entertainment :

14   • "engaged in a pattern of stealing and using [Mattel's] property and trade

15      secrets," (Id.,    ¶ 1);

16   • "repeated—and even expanded—its pattern of theft [regarding the Bratz

17      dolls] on numerous occasions," including by hiring away three key Mattel

18      employees in Mexico who "stole virtually every category of Mattel's

19      sensitive and trade secret business plans and information for the Mexican

20      market as well as a significant quantity of sensitive and trade secrete

21      information for Mattel's U.S. and worldwide businesses," (Id., ¶ 3);

22   • "stole Mattel trade secrets regarding Mattel's customers, sales, projects,

23      advertising and strategy, not only for Canada, but the United States and the

24      rest of the world," (Id., ¶ 70);

25   //

26

27   _____

[2] MGA Entertainment's claim that the document requests are overbroad is also inconsistent with its statement that it

28   would "produce all requested personnel files in their entirety (except for any medical or health related documents) if
     Mattel gave notice to the employees and obtained their consent for such disclosure." (MGA Opposition, pp. 8 – 9).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

                                        - 4 -                    ORDER NO. 6
                                                        [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT   5
PAGE    105

1      • "took from Mattel documents containing proprietary advertising, project,
2          sales, customer and strategy information for not only Canada, but for the
3          United States," (*Id.*, ¶ 4);
4      • "engaged in an ongoing, widespread pattern of . . . inducing Mattel
5          employees to steal Mattel's confidential information or other property and
6          take it with them to MGA [Entertainment]," (*Id.*, ¶ 5);
7      • stole "Mattel's plans, strategy and business information for the Mexican
8          market and materials related to Mattel's worldwide business strategies," (*Id.*,
9          ¶ 37);
10     • "enticed [Mattel's employees] to steal Mattel's most sensitive business
11         planning materials, and then hired them to assist in establishing and running
12         MGA's new Mexican subsidiary," (*Id.*, ¶ 37);
13     • "directed [certain Mattel employees'] to steal virtually all Mattel confidential
14         and proprietary information that they could access and bring it with them to
15         MGA," (*Id.*, ¶ 43), including "virtually every type of document a competitor
16         would need to enter the Mexican market, and to unlawfully compete with
17         Mattel in Mexico, in the United States and elsewhere," such as "global
18         internal future line lists that detailed anticipated future products; production
19         and shipping costs for Mattel products, daily sales data for Mattel products;
20         customer data; sales estimates and projections; marketing projections;
21         documents analyzing changes in sales performance from 2003 to 2004;
22         budgets for advertising and promotional expenses; strategic research
23         reflecting consumer responses to products in development; media plans;
24         consumer comments regarding existing Mattel products customer discounts
25         and terms of sale; customer inventory level data; assessments of promotional
26         campaign success; market size historical data and projections; marketing
27         plans and strategies, merchandising plans; retail pricing and marketing
28         strategies; and other similar materials," (*Id.*, ¶ 48);

EXHIBIT __5__
PAGE __106__

1    • "targeted certain Mattel employees who have broad access to Mattel

2    proprietary information in an effort to induce and encourage them to join

3    MGA [Entertainment] and to steal or otherwise wrongfully misappropriate

4    Mattel confidential information and trade secrets," including by "promising

5    these employees salaries 25 percent or more higher than they earn at Mattel

6    and stating to them that they should not be concerned by legal action taken

7    by Mattel to protect its trade secrets and its rights because such claims are

8    hard to prove and easy to defeat," (*Id.*, ¶ 69); and

9    • "hired directly from Mattel's United States operations at least 25 employees,

10   from Senior Vice-President level to lower level employees," and that some of

11   these individuals misappropriated "Mattel confidential and proprietary

12   information, including Mattel's strategic plans; business operations; methods

13   and systems; marketing and advertising strategies and plans; future product

14   lines; product profit margins, and customer requirements." (*Id.*, ¶ 77).

15        In light of the foregoing allegations, the documents requested by Mattel fall

16   within the purview of permissible discovery allowed by Federal Rule of Civil

17   Procedure 26. Rule 26 permits the discovery of information that is "relevant to the

18   claim or defense of any party." Fed.R.Civ.P. 26(b)(1). Accordingly, Mattel's

19   request for "all personnel and vendor files" of individuals who either (1) work at

20   MGA Entertainment and previously used to work for Mattel or (2) who are vendors

21   of MGA Entertainment and used to work with or had contact with Mattel appears to

22   be "reasonably calculated to lead to the discovery of admissible evidence." *Id.*

23        **3.    Privacy Rights Objection**

24        MGA Entertainment's final argument is that the records sought by Mattel

25   (i.e., personnel and vendor files) invade the privacy rights of non-parties and cannot

26   be produced under *California law* unless the individuals affected are given advance

27   notice of the requests and afforded an opportunity to object to the production.

28   (MGA's Opposition, pp. 10 – 14). Specifically, MGA Entertainment argues that



EXHIBIT  5
PAGE  107

1   the California Constitution and California Code of Civil Procedure § 1985.3

2   together constitute a fundamental public policy in California that do not allow

3   MGA Entertainment to "place its employees privacy rights at risk." (*Id.*). But each

4   of these contentions is unavailing.

5     As an initial matter, a protective order has been entered in this case. (Mattel

6   Reply, p. 2). This fact is crucial to analyzing the privacy concerns raised by MGA

7   Entertainment, because courts within the Ninth Circuit have repeatedly held that,

8   where such an order has been (or will be) entered, state-based privacy laws do not

9   bar production of personnel files.[3] *See, e.g., Nakagawa v. Regents of Univ. of Cal.*,

10   2008 WL 1808902, *3 (N.D. Cal. April 22, 2008) (ordering production of

11   personnel files and stating "[a]ny other privacy concerns defendant may have

12   should be addressed by a protective order"); *Grinzi v. Barnes*, 2004 WL 2370639,

13   *1 (N.D. Cal. Oct. 20, 2004) ("The proper mechanism for an employer to use to

14   protect an employee's privacy interest in his personnel file is to obtain, either by

15   stipulation or motion, a properly crafted protective order under Rule 26(c)");

16   *Maldonado v. Cal. Dep't of Corr. & Rehab.*, 2007 WL 4249811, *7 (E.D. Cal. Nov.

17   30, 2007) ("The court has already analyzed these non-party privacy rights, and the

18   protective order should serve to remedy any concern in this regard."); *Walton v. K-

19   Mart, Inc.*, 2007 WL 4219395, *2 (N.D. Cal. November 28, 2007) ("In view of the

20   employees' privacy interests, documents shall be produced pursuant to an

21   attorneys' eyes only protective order."); *Keller-McIntrye v. Coll. Of Health &

22   Human Servs.*, 2006 WL 3456672, *1-*2 (N.D. Cal. November 29, 2006) (ordering

23   production of employee information, pursuant to a protective order, despite privacy

24   claims under California law).

25     Further, contrary to MGA Entertainment's assertions, the Ninth Circuit has

26    [3] In fact, some of the California authority relied on by MGA Entertainment contemplates that confidential
information may be appropriately disclosed if a protective order is in place. (*See, e.g., Valley Bank of Nev. v.
27   Superior Court*, 15 Cal. 3d 652, 658 (1975) ["[T]he trial court has available certain procedural devices which may be
useful in fashioning an appropriate order that will, so far as possible, accommodate considerations of both disclosure
28   and confidentiality."]).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

-7-

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___3___
PAGE ___108___

1    held that "personnel files are discoverable in federal question cases . . . despite

2    claims of [state-created] privilege,"[4] (*Garrett v. San Francisco*, 818 F.2d 1515,

3    1519 n. 6 (9th Cir. 1987); *see also Kerr v. District Court*, 511 F.2d 192, 197 (9th

4    Cir. 1975)), and this includes any claim of privilege resulting from California Code

5    of Civil Procedure § 1985.3,[5] (*see Reed v. Williams*, 2007 WL 2140506, *4 (E.D.

6    Cal. July 25, 2007) [holding that the requirements of California Code of Civil

7    Procedure § 1985.3 do not apply in federal question cases because "federal law

8    applies in terms of substantive, privilege and discovery law."]).  Accordingly, the

9    privacy concerns raised by MGA Entertainment have no applicability here.

10           Despite the foregoing, and notwithstanding the existence of the protective

11   order as a safeguard, the Discovery Master finds that the requested documents

12   should exclude "health care specific information," because Mattel's counsel

13   conceded that Mattel is not seeking such information in its discussions with counsel

14   for MGA Entertainment.  (*See* Decl. of Amman Khan, Ex. G, 2).  Counsel for

15   Mattel restated this position at the hearing.

16           The Discovery Master further orders MGA Entertainment to redact any

17   social security numbers, tax identification numbers, dates of birth, indication of

18   sexual orientation, bank account numbers, and checking account numbers that may

19   be included within the requested documents prior to production, as Mattel has not

20   made a showing at this time that such discrete personal information is reasonably

21   calculated to lead to the discovery of admissible evidence.

22   **D.     Conclusion**

23           The documents sought by Mattel's Request Nos. 87 and 88 are reasonably

24   calculated to lead to the discovery of admissible evidence regarding Mattel's Phase

---

25   [4] Mattel's SAAC includes, among other things, claims for alleged RICO violations under U.S.C. §§ 1962(c), 1962(d)

26   and 1964(c), (SAAC at ¶¶ 88 – 105) and MGA Entertainment removed this action to federal court on federal question grounds, (Mattel Reply, p. 5).

27   [5] The same rule may even apply in diversity cases, (see *Corser v. County of Merced*, 2006 WL 2536622, *2 (E.D.

28   Cal. August 31, 2006) [holding that "the extent that Section 1985.3 may provide a California-law privilege [] the privilege does not apply to this litigation"], but the Discovery Master need not resolve that issue.

EXHIBIT __5__
PAGE __109__

1    2 claims, and are not protected from disclosure on the grounds of third-party

2    privacy rights or any other ground cited by MGA Entertainment.

3    **III.    MATTEL'S REQUEST FOR SANCTIONS**

4        In its Reply, Mattel also seeks $1,460 in sanctions relating to the attorneys'

5    fees and costs it incurred in drafting the reply. (Mattel's Reply, pp. 11 – 13; *see*

6    *also* Decl. of Zachary Krug, ¶ 14). As the Discovery Master has previously stated,

7    however, he, like the Court,[6] disfavors the insertion of new arguments at the reply

8    stage that could have been raised in the moving papers.[7] This rule is routinely

9    adhered to by courts in the Ninth Circuit. *See, e.g., United States v. Boyce,* 148

10   F.Supp .2d 1069, 1085 (S.D. Cal. 2001); *Leick v. Hartford Life & Accident Ins. Co.,*

11   2007 WL 1847635, at *1, n. 1 (E.D. Cal. June 27, 2007); *Stewart v. Wachowski,*

12   2004 WL 2980783, at *11 (C.D. Cal. Sept. 28, 2004); *Hamilton v. Willms,* 2007

13   WL 2558615, at *11 (E.D. Cal.2007); *see also United States v. Cox,* 7 F.3d 1458,

14   1463 (9th Cir.1993); *United States v. Wright,* 215 F.3d 1020, 1030 n. 3 (9th

15   Cir.2000).

16       Accordingly, the Discovery Master therefore declines to award sanctions

17   against MGA Entertainment.

18   **IV.    MGA'S MOTION TO COMPEL RESPONSES TO DOCUMENT**

19   **REQUEST NOS. 526 AND 528**

20       In its motion, MGA seeks an order compelling Mattel to produce documents

21   responsive to two document requests (the "Requests") included in MGA's Fifth Set

22   of Requests for Production of Documents and Things dated August 3, 2007.

23   //

24

25   [6] In *Bryant v. Mattel, Inc.*, 573 F.Supp.2d 1254, 1273 n.7 (C.D. Cal. 2007), the Court noted that it "ordinarily would not consider" arguments made for the first time on reply but did so only "because [undertaking the analysis did] not change [its] ultimate conclusion."

26

27   [7] Mattel was apparently aware of MGA Entertainment's grounds for opposing the motion before it filed its moving papers, since Mattel met and conferred with MGA Entertainment prior to bringing its motion. Mattel nevertheless failed to request a sanctions award in its moving papers, thereby depriving opposing counsel and MGA Entertainment of the chance to oppose the request in the Opposition brief.

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 9 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___5___
PAGE ___110___

**A.      The Discovery Sought**

The Requests seek copies of Mattel's communications with law enforcement authorities (Request No. 526) and copies of any documents that it has provided to law enforcement authorities (Request No. 528).   The complete text of the Requests is as follows:

- **Request No 526**:  All DOCUMENTS that constitute COMMUNICATIONS between YOU (including YOUR agents and attorneys) and law enforcement authorities in Mexico, Canada, or the United States, including but not limited to the United States Attorney's Office, the Department of Justice and any national, regional, state or local authorities, concerning any of the allegations in YOUR COUNTERCLAIMS or any other alleged taking of confidential MATTEL information by MGA or persons currently or formerly employed by MGA.

- **Request No. 528**:  All DOCUMENTS that you (including YOUR agents and attorneys) provided to law enforcement authorities in Mexico, Canada [*sic*] or the United States, including but not limited to the United States Attorney's Office, the Department of Justice and any national, regional, state or local authorities concerning any of the allegations in YOUR COUNTERCLAIMS or any other alleged taking of confidential MATTEL information by MGA or persons currently or formerly employed by MGA.

**B.      Mattel's Objections**

In its Opposition, Mattel relies on three basic grounds for refusing to produce the requested documents.  First, Mattel argues that the Requests are overbroad and encompass information not reasonably calculated to lead to the discovery of admissible evidence.  Second, Mattel argues that the documents are protected by the work product doctrine.  Finally, Mattel argues that the documents are

EXHIBIT   5
PAGE   111

1   privileged.

2       **1.    Overbreadth Objection**

3       Among the issues to be adjudicated in Phase 2 are Mattel's counterclaims for

4   RICO violations, misappropriation of trade secrets and unfair competition. Mattel's

5   SAAC alleges that "Mattel notified Mexican authorities about the [alleged] theft of

6   its trade secret and confidential information." (SAAC, ¶ 53). The SAAC further

7   details Mattel's knowledge of the Mexican authorities' activities related to MGAE

8   de Mexico and suggests that Mattel communicated with the authorities regarding

9   their seizure of certain documents from MGA's office. (*Id.*, ¶ 53). Mattel also

10   alleges that "Mattel notified Canadian law enforcement authorities" about its belief

11   that Janine Brisbois copied documents onto a thumb drive when she left Mattel.

12   (*Id.*, ¶ 75). Further, Mattel states that it communicated with Canadian authorities

13   regarding the information allegedly recovered from Brisbois' thumb drive. (*Id.*, ¶

14   75).

15       Mattel has also acknowledged that at least some of the documents responsive

16   to Request No. 526 relate to Mattel's claims by producing to MGA "the judicial file

17   in criminal proceedings in Mexico, relating to the trade secret thefts in that country,

18   *and some of those materials reflected communications between Mattel and law*

19   *enforcement*." (Declaration of Timothy L. Alger dated January 24, 2008 ["Alger

20   Decl."], ¶ 16 (emphasis added).)

21       Given Mattel's allegations regarding the theft of its trade secrets, its

22   communications with law enforcement officials, and the overlap between the civil

23   and criminal claims Mattel is pursuing, the Discovery Master concludes that, as a

24   threshold matter, MGA has made a prima facie case that the Requests seeking the

25   documents Mattel provided to law enforcement officials, as well as Mattel's

26   communications with those officials, are reasonably calculated to lead to the

27   discovery of admissible evidence regarding the claims to be adjudicated in Phase 2.

28       Although the Requests on their face relate to Phase 2 issues, Mattel

EXHIBIT __5__
PAGE __112__

1  nonetheless argues in its Opposition that Request No. 526 is overbroad because

2  Mattel's civil claims are wholly separate and independent from any criminal relief

3  it is seeking. (Mattel Opposition, p. 4 ["The civil claims stand or fall based on

4  MGA's actions, not Mattel's subsequent communications with law enforcement."]).

5        In so arguing, Mattel misses the point. The issue is not whether Mattel's

6  communications with law enforcement officials constitute the basis of Mattel's

7  claims. Rather, the issue is whether those communications are reasonably

8  calculated to lead to the discovery of admissible evidence regarding what Mattel

9  itself characterizes as the basis of its claims, namely MGA's alleged acts of trade

10  secret misappropriation. Mattel does not dispute that its subsequent

11  communications with law enforcement involve the same conduct that is the basis of

12  the civil claims. On the contrary, Mattel has alleged in its SACC that it is

13  concurrently seeking relief through the criminal justice system and this civil action

14  based on the same documents allegedly stolen by MGA and confirmed that fact

15  during the meet and confer process. (See, e.g., Alger Decl., ¶ 16 [asserting that "the

16  judicial file in the criminal proceedings in Mexico" are among the "documents

17  *relating to Mattel's Counterclaims.*"] [emphasis added].)

18        Mattel's communications with law enforcement may, among other things,

19  disclose what Mattel told the investigating authorities about what information was

20  taken, the people who have knowledge of the thefts, and any supposed criminal

21  intent on the part of MGA or the former Mattel employees who supposedly took the

22  information. Given this admitted overlap in subject matter, the communications

23  between Mattel and law enforcement agencies are discoverable. (*See, e.g., In re*

24  *Qwest Commc'ns Intl., Inc.*, 450 F.3d 1179, 1181-82, 1201 (10th Cir. 2006) [private

25  plaintiff permitted discovery of materials provided to law enforcement authorities

26  concerning the same underlying facts]).

27        With respect to Request No. 528 (seeking documents Mattel provided to law

28  enforcement agencies), Mattel argues that it has already provided to MGA tens of

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 12 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT __5__
PAGE __113__

1    thousands of documents that pertain to the underlying facts of Mattel's

2    counterclaims. (Mattel Opposition p, 5). But, as Mattel admits, that production

3    does not satisfy Request No. 528 which, in Mattel's words "seeks something more

4    and different." (*Id.*). According to Mattel, the "different" information sought by

5    Request No. 528 is information that would enable "MGA's executives to defend

6    against actual or potential criminal charges . . ." (*Id.*). However, since those

7    possible criminal charges are based on the same conduct as Mattel's civil claims, it

8    would be inappropriate to bar MGA from obtaining that information for use in this

9    lawsuit, simply because that same information might also relate to possible future

10   criminal cases (which may or may not ever be filed). Put another way, the

11   information sought by MGA to defend the civil claims does not become

12   "irrelevant" simply because it might have the ancillary effect of facilitating MGA's

13   defense of possible criminal claims.

14        Lastly, Mattel argues that both Requests are overbroad because they are not

15   limited to misconduct expressly alleged in the SAAC but also seek "documents

16   'concerning . . . any other alleged taking of confidential MATTEL information by

17   MGA . . .'" (Mattel Opposition, pp. 5 -6). In response, MGA points out that the

18   SAAC includes a catch-all allegation stating that unidentified "additional

19   employees accessed, copied and took from Mattel confidential and proprietary

20   information." (SAAC, ¶ 77). Mattel's apparent purpose in including such an

21   allegation was to preserve its right to allege and prove other acts of

22   misappropriation besides those expressly alleged in the SAAC. Accordingly, since

23   Mattel reserves the right to seek relief regarding additional, un-alleged acts, MGA

24   should likewise be entitled to conduct discovery to identify those additional acts

25   and to determine what evidence Mattel may have to prove them.

26        **2.    Work Product Objection**

27        Next, Mattel argues that production of Mattel's communications with law

28   enforcement agencies, together with the documents Mattel chose to provide to those

EXHIBIT __5__
PAGE __114__

1   agencies, would violate the attorney work-product doctrine by revealing counsel's
2   strategy and mental processes. (Mattel Opposition, p. 6).
3          To qualify for work-product protection under Federal Rule Civil Procedure
4   26, documents must meet two requirements:  (1) they must be "prepared in
5   anticipation of litigation or for trial," and (2) they must be prepared "by or for
6   another party or by or for that other party's representative." *In re Cal. Pub. Utils.*
7   *Comm'n*, 892 F.2d 778, 780-781 (9th Cir. 1989).  In determining whether the
8   doctrine is applicable to a particular document, "the court must consider the
9   *primary purpose* of the work product doctrine, which is to 'prevent exploitation of a
10  party's efforts in *preparing for litigation.*'" *Johnson v. Finn*, 2007 WL 3232253,
11  *1 (E.D. Cal. Oct. 31, 2007) (emphasis added).  The authorities Mattel cites agree
12  that the purpose of the work product doctrine is "to establish a zone of privacy for
13  *strategic litigation planning.*" (Opposition, p. 6 quoting *United States v. Adlman*,
14  68 F.3d 1495, 1501 (2d Cir. 1995) [emphasis added].)
15         Here, Mattel does not demonstrate any connection between its
16  communications with law enforcement officials, on the one hand, and its litigation
17  strategy in the present civil case, on the other hand.  Rather, it appears that Mattel's
18  primary purpose in communicating with, and disclosing the disputed documents to,
19  various law enforcement officials was to instigate criminal prosecutions by
20  prosecutorial agencies, not pursue its civil claims against MGA.  Thus, to the extent
21  the selection of particular documents by Mattel's counsel reveals counsel's
22  impressions and mental processes, the window into counsel's thinking relates to
23  counsel's strategy of encouraging *criminal prosecution* by the relevant authorities.
24  There is no showing that counsel's thinking regarding how best to achieve *that*
25  purpose would also reveal counsel's strategies and impressions in any matter
26  related to the current civil litigation.  In short, Mattel has made an insufficient
27  showing that the communications and documents at issue constitute work product
28  in *this* litigation.  Accordingly, the work-product doctrine is inapplicable.

EXHIBIT   5
PAGE   115

1      Further, even if the work-product doctrine somehow applied to Mattel's

2  communications with law enforcement agencies, Mattel waived it, in at least two

3  ways. First, Mattel admits that it has already produced some of those

4  communications to MGA. (See Alger Decl., ¶ 16.)

5      Second, to the extent Mattel's communications with law enforcement

6  officials disclose its conclusions and theories to law enforcement officials, such a

7  disclosure also constitutes a waiver. Mattel admits that the work-product doctrine

8  is waived when material is "voluntarily disclosed such that it may become readily

9  accessible to an adversary." (Mattel Opposition, pp. 6 - 7 (citing *Aronson v.*

10  *McKesson HBOC, Inc.*, 2005 WL 934331, \*6 (N.D. Cal. Mar. 31, 2005)). In fact,

11  the courts have specifically held that "disclosing information to governmental

12  authorities in the hope that they will attack an adversary . . . cannot be said to be

13  done 'in the pursuit of . . . trial preparation.' Thus, disclosure in such a situation

14  results in a waiver of the work product protection." *Bank of America, NA. v. Terra*

15  *Nova Insur. Co.*, 212 F.R.D. 166, 172-73 (S.D.N.Y. 2002). Therefore, when a party

16  provides information to law enforcement agencies and "harbor[s] the hope, even if

17  un-communicated, that its disclosures would encourage the Government to

18  prosecute" a third party, this disclosure constitutes waiver because it "substantially

19  increase[s] the potential that the information gained during the investigation would

20  be disclosed to [the] adversary." *Id.*

21      Given that Mattel disclosed the documents to these entities with the intention

22  of triggering criminal prosecution of MGA and its representatives, the intended

23  effect of Mattel's disclosure is to make those documents available to MGA under

24  the applicable rules of criminal procedure, which would entitle MGA to the

25  documentary evidence on which any alleged criminal liability is based. Mattel

26  itself concedes this fact when it acknowledges that MGA can request disclosure of

27  the information provided to law enforcement officials "in accordance with the

28  applicable law in the countries involved." (Mattel Opposition, p. 5). Mattel knew

EXHIBIT 5
PAGE 116

1    when it provided the documents to law enforcement agencies that such production

2    "substantially increased the opportunities for potential adversaries to obtain the

3    information." (Mattel Opposition, p. 7).  Thus, Mattel cannot demonstrate a

4    reasonable expectation this material would remain protected.

5                  **3.    Privilege Objections**

6            Lastly, Mattel asserts that the litigation privilege codified in Cal. Civ. Code §

7    47(b) and/or the *Noerr-Pennington* doctrine bar MGA from seeking any affirmative

8    relief from Mattel based on the latter's communications with law enforcement

9    authorities.  Consequently (Mattel reasons), those communications "are not

10   properly discoverable" in this action.  (Mattel Opposition, p. 8).

11           That argument is based on a premise for which there is no support in the

12   record, namely that MGA seeks the subject documents in order to assert a claim

13   against Mattel arising from Mattel's allegedly privileged communications.

14   Proceeding from this unsupported assumption, Mattel then argues that such a non-

15   existent claim would be barred.

16           However, that speculative foray is entirely non-responsive to the MGA

17   Motion.  The MGA Motion asserts that the documents should be produced not

18   because MGA intends to sue Mattel for communicating with law enforcement

19   authorities, but rather because Mattel itself injected the issue of the criminal

20   proceedings *into this lawsuit* by asserting in its SAAC that Mattel has

21   communicated with criminal authorities in various countries regarding the conduct

22   of MGA upon which Mattel bases its counterclaims.  *That* is the reason MGA

23   offers for seeking the subject documents.

24           Accordingly, Mattel's attempt to rely on privilege fails to address the actual

25   position taken by MGA in its Motion or the issues raised in the pleadings.  Further,

26   the cases cited by Mattel demonstrate on their face that the subject privileges are

27   restricted to situations not present here.  Those cases stand for the proposition that

28   parties who communicate with law enforcement officials may be immune from

EXHIBIT   5
PAGE   117

1    *liability* under California tort law and federal anti-trust law, respectively – not that

2    such parties are immune from *discovery* in civil suits.

3            **a.    The Litigation Privilege**

4          The California Supreme Court described the scope of the litigation privilege

5    in a case cited by Mattel, *Hagberg v. Cal. Fed. Bank FSB*, 32 Cal. 4th 350 (2004).

6    According to Mattel, *Hagberg* stands for the proposition that a communication to

7    law enforcement officials about suspected criminal activity "enjoys an unqualified

8    privilege." (Mattel's Opp'n, 8.)  However, nothing in the *Hagberg* opinion

9    addresses the issue presented here, namely whether communications and documents

10    passed from the reporting party to the law enforcement agency is discoverable in

11    litigation arising out of the same underlying, allegedly criminal, activities.  Rather,

12    in *Hagberg* the question presented was "whether *tort liability* may be imposed for

13    statements made when a citizen contacts law enforcement personnel to report

14    suspected criminal activity...." 32 Cal. 4th at 355 (emphasis added).  The Court

15    answered that question in the affirmative.  *Id.*

16          The other California cases cited by Mattel are in accord.  See *Jacob B. v.*

17    *County of Shasta*, 40 Cal. 4th 948, 955, 956 (2007) ("We have discussed the basic

18    principles underlying section 47(b)'s litigation privilege in many cases.... [P]ublic

19    agencies... must be permitted to provide such information without fear of being

20    harassed by *derivative lawsuits*.") (emphasis added); *Silberg v. Anderson*, 50 Cal.

21    3d 205, 213, 214 (1990) (the "*litigation* privilege" provided by section 47(2)

22    "afford[s] litigants and witnesses... the utmost freedom of access to the courts

23    without fear of being harassed subsequently by *derivative tort actions*") (emphasis

24    added); *Williams v. Taylor*, 129 Cal, App. 3d 745 (1982) (affirming summary

25    judgment against plaintiff's claims for slander and malicious prosecution based on

26    Section 47(b)).

27            **b.    The *Noerr-Pennington* Doctrine**

28          "The Noerr-Pennington doctrine *immunizes from the antitrust laws* anti-

EXHIBIT ___5___
PAGE ___118___

1    competitive conduct undertaken to influence or petition government bodies, or to

2    utilize judicial or quasi-judicial mechanisms." (*Forro Precisions, Inc. v. Intl Bus.*

3    *Mach.* 673 F.2d 1045, 1059 (1982) [emphasis added]).  In *Forro*, the plaintiff

4    brought suit against IBM for assisting a police search of his business premises.

5    Based in part on the *Noerr-Pennington* doctrine, the court held that the plaintiff's

6    antitrust claim could not be based on IBM's solicitation of aid from the police

7    department that resulted in the police investigation and search of his premises, or on

8    IBM's assistance in these activities.  (*Id.* at 1053 ["IBM's actions in assisting the

9    police...were privileged and could not serve as a basis for *civil liability*."] [emphasis

10   added]) .  In short, the "privilege" at issue in *Forro* dealt with freedom from

11   antitrust liability, not freedom from discovery.[8]

12                     **c.   Application To The Present Case**

13          Here, MGA has not yet asserted any affirmative claim against Mattel arising

14   out of Mattel's communication with law enforcement officials.  If and when MGA

15   attempts to do so, it may well be appropriate for Mattel to assert the privileges

16   discussed above in an attempt to defeat any such claims on the merits.  In the

17   meantime, MGA is simply defending Mattel's civil claims in the present action, and

18   no privilege cited by counsel prevents MGA from conducting discovery regarding

19   the basis for those claims.

20          **C.   Conclusion**

21          The documents sought by MGA's Request Nos. 526 and 528 are reasonably

22   calculated to lead to the discovery of admissible evidence regarding Mattel's Phase

23   2 claims, and are not protected from disclosure under any of the privileges or

24   doctrines cited by Mattel.

25   //

26   _____

27   [8] Mattel cites only one case in which the Court actually held that a party was protected from the production of communications made to government agencies regarding suspected criminal activity.  However, in that case (which

28   arose under the Annunzio-Wylie Act) the communications were sought to prove a defamation claim based on those communications. *See Whitney Nat'l Bank v. Karam*, 306 F. Supp. 2d 678, 682 (S.D. Tex. 2004).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 18 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___5___
PAGE ___119___

## V.   DISPOSITION

1.    The Mattel Motion is **GRANTED**, with the exception of health care specific information, social security numbers, tax identification numbers, dates of birth, bank account numbers, and checking account numbers.

2.    Mattel's request for sanctions is **DENIED**.

3.    The MGA Motion is **GRANTED**.

4.    All non-privileged documents shall be produced within 30 days of this Order, subject to any applicable confidentiality designations available under the Protective Order.

5.    All documents to be produced pursuant to this Order, including employee personnel files and records of communications between Mattel and law enforcement officials, shall be produced in the same format and order as they are maintained in the original files of the parties as required by Federal Rule of Civil Procedure 34(b)(2)(E)(i).

6.    The documents reflecting Mattel's communications with law enforcement officials shall include any and all enclosures, and documents transmitted as a group shall be marked in a manner that permits MGA to ascertain which pages constitute each individual transmittal.

7.    All personnel or vendor documents redacted by MGA in accordance with this Order shall, whenever applicable, retain any letterhead, title, or other header that permits Mattel to ascertain the general nature and source of the document redacted and shall be marked in a manner that permits Mattel to ascertain which pages comprise a single document.

Dated:      March 13, 2009

By:      /s/ Robert C. O'Brien
ROBERT C. O'BRIEN
Discovery Master

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT 5
PAGE 120

# EXHIBIT 6

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL: (213) 443-3000 FAX: (213) 443-3100

August 4, 2009

BY EMAIL AND U.S. MAIL

Peter Villar, Esq.
Bingham McCutchen LLP
600 Anton Boulevard, 18th Floor
Costa Mesa, CA 92626-1924

Re:   Mattel, Inc. v. MGA Entertainment, Inc. et al.

Dear Peter:

I am in receipt of documents bearing Bates numbers OMNI0010383 through OMNI0010389 and VISION000150, which were attached to your letter dated July 20, 2009.

The belated production of these materials -- provided weeks after the Discovery Master's deadlines compelling their production -- further evidences that your clients have been withholding, and continue to withhold, documents in violation of applicable Orders. Setting that aside, the materials are also improperly redacted to conceal financial information relating to transactions at issue, including account and beneficiary information. These redactions impermissibly hinder our ability to correlate financial documents to one another, to trace the funds that are the subject of Mattel's claims and to identify and seek discovery from banking institutions and others with relevant information about the funding of the transactions at issue.

Nor is there any legal basis for these redactions. Nothing in the Discovery Master's Orders permit such information to be withheld or concealed. To the contrary, your clients' objections in refusing to produce were rejected. Indeed, Judge Larson, the current Discovery Master and the former Discovery Master have all repeatedly ruled that the Protective Order is sufficient to address alleged confidentiality concerns. See May 15, 2007 Order, Searcy Dec., Exh. 12 at 11; July 2, 2007 Order, Searcy Dec., Exh. 13 at 3; Phase 2 Discovery Matter Order No. 6, Searcy Dec., Exh. 14 at 7. The law also is clear on this score. See, e.g., Putnam v. Eli Lilly and Co., 508 F. Supp. 2d 812, 814 (C.D. Cal. 2007) (protective order "can strike the appropriate balance between the need for the information and the privacy concerns" of the party opposing production

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, NY 10010 | TEL (212) 849-7000 FAX (212) 849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, CA 94111 | TEL (415) 875-6600 FAX (415) 875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, CA 94065 | TEL (650) 801-5000 FAX (650) 801-5100
CHICAGO | 250 South Wacker Drive, Suite 230, Chicago, IL 60606 | TEL (312) 463-2961 FAX (312) 463-2962
LONDON | 16 Old Bailey, London EC4M 7EG United Kingdom | TEL +44(0) 20 7653 2000 FAX +44(0) 20 7653 2100
TOKYO | Akasaka Twin Tower Main Bldg., 6th Fl., 17-22 Akasaka 2-Chome, Minato-ku, Tokyo 107-0052 Japan | TEL +81 3 5561-1711 FAX +81 3 5561-1712

EXHIBIT ___6___

PAGE ___121___

of information); <u>In re Heritage Bond Litigation</u>, 2004 WL 1970058 at *5, n.12 (C.D. Cal. 2004) ("Any privacy concerns...defendants have in their bank records and related financial statements are adequately protected by the protective order, and are not sufficient to prevent production in this matter").

Your clients' redactions are thus improper. Please produce complete, unredacted documents immediately. I look forward to hearing from you.

Very truly yours,

Michael T. Zeller

cc:     Jason Russell, Esq.
        Annette Hurst, Esq.

07975/3038762.1

07975/3038762.1

EXHIBIT __6__
PAGE __122__

# EXHIBIT 7

1  Robert C. O'Brien (SBN 154372)
   ARENT FOX LLP
2  555 West Fifth Street, 48th Floor
   Los Angeles, CA  90013-1065
3  Telephone:  213.629.7400
   Facsimile:   213.629.7401
4  obrien.robert@arentfox.com

5  Discovery Master

6

7

8                  UNITED STATES DISTRICT COURT

9                 CENTRAL DISTRICT OF CALIFORNIA

10                     EASTERN DIVISION

11  CARTER BRYANT, an individual,        Case No.  CV 04-09049 SGL (RNBx)

12          Plaintiff,                    Consolidated with
                                          Case No. CV 04-09059
13          v.                            Case No. CV 05-2727

14  MATTEL, INC., a Delaware             **PHASE 2 DISCOVERY MATTER**
    corporation,
15                                       **ORDER NO. 17, REGARDING:**
            Defendant.
16
                                         **(1) THE MGA PARTIES' MOTION
17                                          FOR A PROTECTIVE ORDER
                                            STAYING DISCOVERY ON
18                                          TRADE DRESS CLAIMS;**
19
                                         **(2) MOTION OF MATTEL, INC. TO
20                                          ENFORCE PRIOR COURT ORDER
                                            AND TO COMPEL RESPONSES TO
21                                          INTERROGATORIES; and**
22
23
                                         **(3) *EX PARTE* APPLICATION
24  CONSOLIDATED WITH                       FILED BY MATTEL, INC. FOR AN
    MATTEL, INC. v. BRYANT and             ORDER TO SHOW CAUSE RE:
25  MGA ENTERTAINMENT, INC. v.             MGA ENTERTAINMENT, INC.'S
    MATTEL, INC.                           FAILURE TO COMPLY WITH
26                                          COURT ORDER**
27
28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES
                                                     ORDER NO. 17
                                        [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT  7
PAGE  123

1    This Order sets forth the Discovery Master's ruling on the following

2    discovery matters: (1) the motion for a protective order staying discovery on trade

3    dress claims filed by MGA Entertainment, Inc., MGA Entertainment (HK) Limited,

4    MGAE De Mexico, S.R.L. De C.V. and Isaac Larian (the "MGA Parties")

5    ("Protective Order Motion") [Docket No. 4921]; (2) the motion filed by Mattel, Inc.

6    ("Mattel") to enforce a prior order compelling MGA Entertainment, Inc. ("MGA")

7    to answer Interrogatory Nos. 43 and 44, and compelling responses to Supplemental

8    Interrogatory Nos. 51 – 55 and 64 ("Motion To Compel") ("[Docket No. 4987]; and

9    (3) the *ex parte* application filed by Mattel for an order to show cause regarding

10   MGA's failure to comply with a prior court order ("Application") [Docket No.

11   4997] (collectively, the "Motions").

12       The Motions came on regularly for hearing before the Discovery Master on

13   April 14, 2009. All interested parties were represented by counsel and afforded the

14   opportunity to present oral argument on the Motions. The Discovery Master,

15   having considered the papers filed in support of and in opposition to the Motions,

16   and having heard oral argument, rules as set forth below.

17   **I.    THE TRADE DRESS DISCOVERY AT ISSUE**

18       All of the Motions concern discovery related to MGA's trade dress claims.

19       **A.    Interrogatory Nos. 43 And 44**

20       On October 23, 2007, Mattel served its Amended Fourth Set of

21   Interrogatories on MGA, including Interrogatory Nos. 43 and 44. (Declaration of

22   Scott L. Watson in Support of the Motion To Compel ("Watson Decl."), Ex. 1 at

23   pp. 7 – 8). These interrogatories ask MGA to identify, for each design, product

24   and packaging that MGA contends Mattel copied, the date of conception and the

25   date it was first fixed in a tangible medium:

26       • Interrogatory No. 43: "For each concept, design, product, product

27         packaging or other matter that YOU contend MATTEL copied or

28         infringed, including but not limited to those identified in MGA's

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 1 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___7___
PAGE ___124___

1      Responses To Mattel, Inc.'s First Set Of Interrogatories Re Claims Of

2      Unfair Competition, Response To Interrogatory No. 2 (and any

3      Supplemental Responses to such Interrogatory), state the date that each

4      such concept, design, product, product packaging or other matter was

5      conceived, and IDENTIFY, all PERSONS with knowledge of, and all

6      DOCUMENTS that REFER OR RELATE TO, the foregoing." (*Id.*,

7      Ex. 1 at p. 7).

8      • Interrogatory No. 44: "For each concept, design, product, product

9      packaging or other matter that YOU contend MATTEL copied or

10     infringed, including but not limited to those identified in MGA's

11     Responses To Mattel, Inc.'s First Set Of Interrogatories Re Claims Of

12     Unfair Competition, Response To Interrogatory No. 2 (and any

13     Supplemental Responses to such Interrogatory), state the date that each

14     such concept, design, product, product packaging or other matter was

15     first fixed in any tangible medium of expression (if ever), and

16     IDENTIFY, all PERSONS with knowledge of, and all DOCUMENTS

17     that REFER OR RELATE TO, the foregoing." (*Id.*, Ex. 1 at pp. 7 and

18     8).

19     MGA responded to Interrogatory Nos. 43 and 44 with only objections on

20 November 15, 2007. (*Id.*, Ex. 2 at pp. 10 – 13). On November 30, 2007, MGA

21 supplemented its responses to both interrogatories. (*Id.*, Ex. 3 at pp. 12 – 19). On

22 December 20, 2007, Mattel moved to compel further responses to the

23 interrogatories. (*Id.*, Ex. 4). The MGA Parties filed their opposition to Mattel's

24 motion to compel on December 31, 2007. (*Id.*, Ex. 5). On January 7 and 28, 2008,

25 MGA served its second and third set of supplemental responses to Interrogatory

26 Nos. 43 and 44. (*Id.*, Ex. 6 at pp. 20 – 26 and Ex. 7 at pp. 28 – 33).

27     On February 4, 2008, the Court stayed all Phase 2 discovery. (Order dated

28 February 4, 2008, p. 3). On February 15, 2008, the prior discovery master granted

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT  7
PAGE  125

1    Mattel's motion to compel, finding that the "requested information is relevant to
2    Mattel's defense against the MGA [P]arties' claims that their products have been
3    copied or infringed by certain Mattel products." (Watson Decl., Ex. 8 at pp. 11 –
4    12). The prior discovery master further ruled that the supplement responses
5    provided by MGA were deficient, reasoning as follows:

6              Although the MGA [P]arties served supplemental
7              responses after filing their opposition brief, the
8              supplemental responses do not include the requested
9              information. The MGA [P]arties have [also] failed to
10             establish that the interrogatories are unduly burdensome.
11   (*Id.*, Ex. 8 at p. 12). The prior discovery master then ordered MGA to
12   supplement its responses "no later than February 26, 2008." (*Id.*, Ex. 8
13   at p. 22).

14        On March 3, 2008, seven days after the deadline specified in the prior
15   discovery master's order, MGA supplemented its responses to Interrogatory Nos.
16   43 and 44 for a fourth time, objecting that the discovery in question related to
17   Phase 2 and was therefore stayed pursuant to the stay imposed by the Court on
18   Phase 2 discovery on February 4, 2008. (*Id.*, Ex. 9 at pp. 7 – 16). On April 22,
19   2008, the prior discovery master granted the MGA Parties' motion for clarification
20   concerning his February 15, 2008 ruling, stating that "the MGA Parties' obligation
21   to supplement their responses to Interrogatory Nos. . . . 43 and 44 . . . [is] hereby
22   stayed until further order of the district court lifting the stay on Phase 2 discovery."
23   (*Id.*, Ex 10 at p. 3).

24        **B.    Supplemental Interrogatory Nos. 51 – 55 And 64**

25        On January 9, 2008, Mattel served Supplemental Interrogatory Nos. 51 – 55
26   and 64 on MGA. (*Id.*, Ex 11 at p. 12 – 14 and 16). These interrogatories seek
27   information regarding MGA's allegations that Mattel copied, infringed or diluted
28   MGA's products:

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

-3-

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___7___
PAGE ___126___

1      • Supplemental Interrogatory No. 51: "For each concept, design,

2         product, product packaging or other matter that YOU contend

3         MATTEL has copied, infringed, or diluted, including but not limited to

4         those identified in MGA's Responses to Mattel, Inc.'s First Set of

5         Interrogatories Re Claims of Unfair Competition, Response To

6         Interrogatory No. 2 (and any Supplemental Responses to such

7         Interrogatory), describe, fully and separately, each and every concept,

8         design, product, product packaging or other matter of or by MATTEL

9         that YOU contend is a copy of, infringes or dilutes YOUR alleged

10        concept(s), design(s), product(s), product packaging or other matter.

11        Your answer should describe the Mattel concept, design, product,

12        product packaging or other matter with specificity and in detail

13        (including without limitation by product name, product number, SKU,

14        or bar code number), and specify those elements or attributes of

15        YOUR claimed concept, design, product, product packaging or other

16        matter that YOU contend were copied, infringed or diluted by

17        MATTEL." (*Id.*, Ex. 11 at pp. 12 – 13).

18     • Supplemental Interrogatory No. 52: "For each trade dress that YOU

19        contend MATTEL copied, infringed, or diluted, separately IDENTIFY

20        each product sold by YOU or YOUR licensees that incorporates such

21        trade dress and, for each such product, separately state (a) the number

22        of units, by year, of each such product sold by YOU or YOUR

23        licensees; (b) revenue received by YOU from such SALES of each

24        such product; (c) all costs YOU have incurred in connection with each

25        product; including but not limited to YOUR cost of good sold, and (D)

26        YOUR gross and net worth from each such product." (*Id.*, Ex. 11 at p.

27        13).

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 4 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___7___
PAGE ___127___

1      • Supplemental Interrogatory No. 53: "For each MATTEL concept,
2        design, product, product packaging or other matter that YOU contend
3        is likely to cause confusion, to cause mistake, or to deceive as to
4        affiliation, connection, or association, or as to origin, sponsorship, or
5        approval, separately state all facts that support YOUR contention of
6        such, including but not limited to all facts that support YOUR
7        contention, if YOU so contend, that any of the SLEEKCRAFT
8        FACTORS weighs against MATTEL, and IDENTIFY all PERSONS
9        with knowledge of such facts, and all DOCUMENTS that REFER OR
10       RELATE TO such facts." (Id.).

11     • Supplemental Interrogatory No. 54: "For each concept, design,
12       product, product packaging or other matter that YOU contend
13       MATTEL copied, infringed or diluted, state all facts that support
14       YOUR contention, if YOU so contend, that such copying or
15       infringement was intentional or willful, and IDENTIFY all PERSONS
16       with knowledge of such facts, and all DOCUMENTS that REFER OR
17       RELATE TO such facts." (Id.).

18     • Supplemental Interrogatory No. 55: "State all facts which support the
19       allegation in Paragraph 120 of YOUR COMPLAINT that MATTEL
20       has "caused and continues to cause blurring and dilution of the
21       distinctive look of MGA's products and trade dress," and IDENTIFY
22       all PERSONS with knowledge of such facts, and all DOCUMENTS
23       that REFER OR RELATE TO such facts." (Id., Ex. 11 at p. 14).

24     • Supplemental Interrogatory No. 64: "To the extent YOU have not
25       previously disclosed such information in a prior interrogatory response
26       YOU provided to Mattel, state all facts which support YOUR claims
27       against Mattel in THIS ACTION, and IDENTIFY all PERSONS with
28       knowledge of such facts, and all DOCUMENTS that REFER OR

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES


EXHIBIT 7
PAGE 128

- 5 -

1    RELATE TO such facts." (*Id.*, Ex. 11 at p. 16).

2    MGA responded to Supplemental Interrogatory Nos. 51 – 55 and 64 on

3    February 8, 2008, objecting that the discovery related to Phase 2 issues and was

4    therefore stayed.  (*Id.*, Ex. 12 at pp. 15 – 19 and 34 – 35).

5    **C.    The Court Lifts The Stay On Phase 2 Discovery**

6    On January 6, 2009, the Court vacated the stay on Phase 2 discovery.

7    (Watson Decl., Ex. 13 at p. 2).  Mattel's counsel subsequently wrote to counsel for

8    MGA on January 20, 2009 to ask when MGA planned to serve the required

9    responses to Interrogatory Nos. 43 and 44, which the prior discovery master had

10   previously ordered answered. (*Id.*, Ex. 14).

11   Mattel's counsel also wrote to MGA on January 28, 2009, requesting that the

12   parties meet and confer on Supplemental Interrogatory Nos. 51 – 55 and 64.  (*Id.*,

13   Ex. 15 at pp. 2 – 3).  Counsel for the parties then spoke on February 6, 2009

14   regarding Mattel's eight trade dress interrogatories.  (*Id.*, ¶ 18 and Ex. 18 at p. 1).

15   During the conference, MGA stated, that it would provide responses to

16   Interrogatory Nos. 43 and 44, and Supplemental Interrogatory Nos. 51 – 55 and 64,

17   "not later than 30 days after the Court decides the trade dress summary judgment

18   motion which Mattel has indicated it will be bringing." (*Id.*, Ex. 18 at p. 1).

19   On February 18, 2009, the parties met and conferred regarding Mattel's

20   contemplated summary judgment motion concerning MGA's trade dress claims and

21   again discussed the responses to the eight trade dress interrogatories at issue. (*Id.*,

22   Ex. 23 at p. 1).  The next day, MGA informed Mattel that it would not agree to

23   provide further responses to the interrogatories. (*Id.*).  Rather, MGA said that it

24   planned to request a protective order to stay its obligation to respond and that it

25   would only provide responses:  (1) if their planned protective order was denied; or

26   (2) if the protective order is granted, 21 days after the Court decides Mattel's

27   summary judgment motion, to the extent any trade dress claims remain after that

28   decision. (*Id.*).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

-6-                    ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]



EXHIBIT ___7___
PAGE ___129___

1    On February 26, 2009, the MGA Parties filed the Protective Order Motion.

2    Eight days later, Mattel filed its Motion To Compel.  Mattel filed the Application

3    on March 10, 2009.

4  **II.    THE MGA PARTIES' MOTION FOR A PROTECTIVE ORDER**

5        The Discovery Master first addresses the MGA Parties' Protective Order

6    Motion.

7        **A.    The Relief Sought By The MGA Parties**

8        The MGA Parties "seek a stay to defer responding to eight specific

9    interrogatories relating to MGA's trade dress claims until 21 days after the Court

10   rules on Mattel's [contemplated] summary judgment motion."  (Motion for a

11   Protective Order, p. 5).  "The MGA Parties also seek a stay of all discovery relating

12   to MGA's trade dress claims for the same period."  (*Id.*).

13       **B.    Mattel's Opposition**

14       Mattel opposes the Protective Order Motion on five grounds.  First, Mattel

15   argues that the motion is inconsistent with the Court's January 6, 2009 order lifting

16   the stay on Phase 2 discovery.  (Opposition, pp. 12 – 13).  Second, Mattel argues

17   that any request to stay discovery is not properly directed to the Discovery Master.

18   (*Id.*, p. 13).  Third, Mattel argues that the request for a stay lacks merit, since "it is

19   commonplace for a party to bring dispositive motions prior to trial . . ."  (*Id.*, pp. 13

20   – 14).  Fourth, Mattel argues that the request for a stay is unworkable since the

21   trade dress claims "are intertwined with Mattel's Phase 2 claims."  (*Id.*, pp. 13 –

22   15).  Finally, Mattel argues that the stay would unduly prejudice it and that there is

23   no corresponding undue burden placed on the MGA Parties.  (*Id.*, pp. 16 – 20).

24       **C.    Legal Standard**

25       In general, parties may obtain discovery regarding any matter, not privileged,

26   that is relevant to the claim or defense of any party.  (Fed. Rule Civ. P. 26(b)(1)).

27   The motion brought by the MGA Parties to stay discovery is made pursuant to

28   Federal Rule of Civil Procedure 26(c), which governs motions for protective orders.

EXHIBIT ___7___
PAGE ___130___

1  Rule 26(c) provides that a protective order may be issued "for good cause" and "to

2  protect a party or person from annoyance, embarrassment, oppression, or undue

3  burden or expense." (Fed. Rule Civ. P. 26(c)).

4        A district court is afforded considerable discretion in deciding whether to

5  issue a protective order that stays discovery. (*See, e.g., Wang v. Hsu*, 919 F.2d 130,

6  130 (10th Cir. 1990). While it is within a district court's discretion to stay

7  discovery pending the outcome of a dispositive motion, (*see Monreal v. Potter*, 367

8  F.3d 1224, 1238 (10th Cir. 2004), such stays are not routinely granted, (*see, e.g.,*

9  *TSM Associates, LLC v. Tractor Supply Co.*, 2008 WL 2404818, at *1 (N.D.Okla.

10  June 11, 2008) ["Unless some compelling reason is presented, in the usual case

11  discovery is not stayed as Defendant requests."]; *Kutilek v. Gannon*, 132 F.R.D.

12  296, 297-98 (D.Kan. 1990) ["The general policy in this district is not to stay

13  discovery even though dispositive motions are pending."]).

14        The underlying principle in determining whether to grant or deny a stay is

15  that "[t]he right to proceed in court should not be denied except under the most

16  extreme circumstances." (*Commodity Futures Trading Com'n v. Chilcott Portfolio*

17  *Management, Inc.*, 713 F.2d 1477, 1484 (10th Cir. 1983). In other words, stays of

18  the normal proceedings of a court should be the exception rather than the rule.

19        Nonetheless, a stay may be appropriate if "resolution of a preliminary motion

20  may dispose of the entire action," (*Nankivil v. Lockheed Martin Corp.*, 216 F.R.D.

21  689, 692 (M.D.Fla. 2003)), "where the case is likely to be finally concluded as a

22  result of the ruling thereon; where the facts sought through uncompleted discovery

23  would not affect the resolution of the motion, or where discovery on all issues of

24  the broad complaint would be wasteful and burdensome," (*Kutilek*, 132 F.R.D. at

25  298).

26        In deciding whether to stay discovery pending the resolution of a dispositive

27  motion, federal courts in California conduct the following inquiry: (1) Is the

28  pending motion "potentially dispositive of the entire case, or at least dispositive on

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 8 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___1___
PAGE ___131___

1   the issue at which discovery is directed," and, if so (2) can the pending dispositive

2   motion be decided "absent additional discovery." (*Qwest Communications Corp. v.*

3   *Herakles, LLC*, 2007 WL 2288299, *2 (E.D.Cal. August 8, 2007)). If the court

4   answers both questions in the affirmative, it may then analyze other factors,

5   including the likelihood that the dispositive motion will be granted, (*id.*), and/or

6   "(1) plaintiff's interests in proceeding expeditiously with the civil action and the

7   potential prejudice to plaintiff of a delay; (2) the burden on the defendants; (3) the

8   convenience to the court; (4) the interests of persons not parties to the civil

9   litigation; and (5) the public interest." (*Schmaltz v. Smithkline Beecham Corp.*,

10  2008 WL 3845260, *1 (D.Colo. Aug.15, 2008)).

11       **D.    Analysis**

12       The MGA Parties' primary argument in favor of the requested stay is that, in

13  the event Mattel's contemplated motion for summary judgment is granted, "the

14  Trade Dress Interrogatories may prove unnecessary or may be substantially

15  narrowed." (Protective Order Motion, p. 13; *see also id.* at pp. 1, 2, and 11 – 15).

16  The MGA Parties reason that "[i]t is particularly appropriate to stay discovery when

17  a dispositive motion, such as a summary judgment motion, 'would obviate the need

18  for discovery.'" (*Id.*, p. 11 (citation omitted)).

19       The Discovery Master finds this rationale unpersuasive for the following

20  reasons.

21       **1.    The Discovery Master Does Not Have the Power To Issue**

22           **The Requested Stay**

23       First, the Discovery Master does not have authority to render a ruling that

24  could directly override the Court's scheduling order and delay the Phase 2 trial.

25  While the Discovery Master has been appointed to resolve "any and all . . .

26  discovery disputes in this case,"[1] and may issue orders that indirectly impact the

27  _____

28  [1] *See* Order appointing the prior discovery master dated December 6, 2006 ("Discovery Master Order) and the Order appointing the current Discovery Master dated January 6, 2009.

EXHIBIT __7__
PAGE __132__

1    scheduling order (e.g., resolving motions to compel, motions to quash, etc.),[2] there

2    is nothing in the order appointing the Discovery Master that authorizes him to

3    override the scheduling order directly.[3]   Indeed, the power to control scheduling in

4    this matter is vested with the Court, as evidenced by the scheduling order issued by

5    it on February, 11, 2009.[4]   (Order dated February 11, 2009, p. 2).  Because the

6    Court, not the Discovery Master, established the applicable discovery cut-off and

7    trial dates for Phase 2, (id.), the Discovery Master cannot issue a stay that overrides

8    that order.

9              **2.      The Court Previously Indicated That the Parties Should**

10                       **Proceed With Phase 2 Discovery.**

11            Second, the Court advised the Discovery Master on February 11, 2009 that

12    "[t]here is no stay on discovery.  Period." (Reporter's Transcript of Proceedings,

13    February 11, 2009, p. 97:15).  It further instructed the Discovery Master "in no

14    uncertain terms, that there is no stay on *any* discovery related to this case at all,"

15    (id., p. 97:9–10 [emphasis added]), and "there is nothing from this Court which is

16    precluding *any* discovery that is properly sought for the trial that is scheduled," (id.,

17    p. 101:22:24 [emphasis added]).  While these statements admittedly arose in the

18    context of the lifting of the stay on Phase 2 discovery, the Discovery Master

19    nevertheless believes that they are instructive of the Court's view that any request

20

21    [2] *See* Order dated February 4, 2008, p. 3 (stating that "[t]he fact that the Discovery Master's

22    ruling might impact upon the Court's scheduling order does not relieve the parties of following
      this procedure.")

23
      [3] That the stay requested by the MGA Parties could force the Court to alter its scheduling order is
24    clear, because the requested stay is of an indefinite duration.  Although the MGA Parties request a
      stay until 21 days after the Court rules on Mattel's contemplated summary judgment motion,
25    (Protective Order Motion, p. 5), no such motion is pending before the Court.  Nor is there a
      hearing date on the yet-to-be-filed motion, let alone an indication as to when the Court might be
26    able to issue a ruling disposing of it.

27
      [4] The Court issued its Phase 2 scheduling order more than one month after the appointment of the
28    current Discovery Master.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

                                        - 10 -                    ORDER NO. 17
                                                          [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT __7__
PAGE __133__

1 to the Discovery Master for a stay of Phase 2 discovery should be rejected absent

2 extraordinary circumstances not present here.

3    **3.  There Is No Dispositive Motion Pending**

4   Third, the MGA Parties have failed to demonstrate that a stay is warranted,

5 because no dispositive motion is pending before the Court.  The MGA Parties

6 concede in their moving papers and again in their Reply that Mattel has merely

7 represented that it will file a summary judgment motion at some point in the future.

8 (Protective Order Motion, p. 4; Reply, p. 4).  In the absence of a *pending*

9 dispositive motion, there is no basis for granting the requested stay.[5]

10    **4.  Mattel's Contemplated Summary Judgment Motion Will**

11       **Not Dispose Of MGA's Trade Dress Claims**

12   Even assuming a dispositive motion had been filed with the Court, the MGA

13

14 [5] The cases cited by the MGA Parties to support its request for a stay are inapposite.  In each case,
the party seeking the discovery stay was the party who had brought the pending dispositive
15 motion. (*See In re Netflix Antitrust Litig.*, 506 F.Supp.2d 308, 321 (N.D. Cal. 2007) [Defendant
who filed a motion to dismiss and requested a stay of discovery was ordered to disclose some
16 documents upon partial lifting of stay by the Ninth Circuit.]; *Orchid v. Biosciences, Inc. v. St.*
17 *Louis University*, 198 F.R.D. 670, 671 – 672 (S.D. Cal. 2001) [Defendant, who had moved to
dismiss for lack of personal jurisdiction, sought protective order denying all discovery or,
18 alternatively, limiting the discovery to jurisdictional issues]; *Landry v. Air Pilots Ass'n Intern.*
*AFL-CIO*, 901 F.2d 404, 435 – 436 (5th Cir. 1990) [Defendant, who had brought motion for
19 summary judgment, properly sought and obtained a protective order staying discovery
20 propounded on it by plaintiffs.]; *Little v. City of Seattle*, 863 F.2d 681 (9th Cir. 1988) [Stay on
discovery upheld in favor of party who raised immunity issue via a summary judgment motion];
21 *Coastal States Gas Corp. v. Dep't of Energy*, 84 F.R.D. 278, 282 (D.C.Del., 1979) [Defendant
who filed motion to dismiss for lack of ripeness sought a stay of discovery].  By comparison, the
22 MGA Parties are not arguing that a stay is appropriate due to a dispositive motion that they intend
to bring or that the contemplated motion will defeat their trade dress claims.  On the contrary, the
23 MGA Parties are arguing that a stay should be imposed until Mattel's contemplated summary
24 judgment motion, which the MGA Parties believe should be denied, is resolved.
  Further, the five cases cited by the MGA Parties all involved situations where a dispositive
25 motion had already been filed with the Court.  (*Id.*)
  Finally, most of the cases relied upon by the MGA Parties were at a relatively nascent stage.
26 Indeed, the dispositive motion was typically a motion to dismiss.  (*See, e.g., In re Netflix Litig.*,
27 506 F.Supp.2d at 321; *Orchid*, 198 F.R.D. at 671 – 672; *Coastal States Gas Corp.*, 84 F.R.D. at
282;).  In contrast, a trial has already been held in this matter and the lawsuit has been pending for
28 several years.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

            - 11 -        ORDER NO. 17
                   [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____1_____
PAGE _____134_____

1   Parties have not demonstrated that "[t]he pending motion [is] potentially dispositive

2   of the entire case, or at least dispositive on the issue at which discovery is directed."

3   (*Qwest Communications Corp.*, 2007 WL 2288299, *2). Mattel's contemplated

4   summary judgment motion will not dispose of MGA's trade dress claims because it

5   is undisputed that MGA's trade dress claims "concern products and other matters

6   that will not be the subject of Mattel's contemplated motion." (Opposition, p. 15;

7   *see also* Reply p. 11 n.6).

8        The MGA Parties nevertheless argue in their Reply that "it would make far

9   more sense for MGA to compile responsive information once the summary

10  judgment motion is decided and the full scope of the trade dress claims is settled."

11  (Reply, p. 11 n. 6). Phrased differently, the MGA Parties argue not that the

12  summary judgment motion may moot all of the requested discovery, but only that,

13  if granted, it would narrow the scope of the trade dress discovery. Because

14  discovery will inevitably be required on certain portions of MGA's trade dress

15  claims, this is not a situation where the contemplated motion is potentially

16  dispositive of the issue at which the discovery is directed. Accordingly, the stay

17  requested by the MGA Parties can be denied for that reason alone.

18              **5.    Other Factors Also Weigh Against Issuing The Requested**

19                     **Stay**

20        Finally, many, if not all, of the other factors a court may consider in deciding

21  whether a stay is appropriate pending the resolution of a dispositive motion weigh

22  in favor of denying the requested stay.

23              **a.    The Merits Of The Dispositive Motion**

24        As explained in *Qwest Communications Corp.*, 2007 WL 2288299, *2, one

25  of the additional factors a court may consider is whether the merits of the pending

26  dispositive motion make it likely that the motion will be granted. Although the

27  Discovery Master cannot perform such an analysis here (because no dispositive

28  motion is pending), I note that the MGA Parties stated in their moving papers that

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 12 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]



EXHIBIT __7__
PAGE __135__

1    Mattel's contemplated summary judgment "arguments are not well-taken . . ."

2    (Protective Order Motion, p. 13).  In light of this statement, the MGA Parties are

3    precluded from arguing that it is likely Mattel's motion will be granted in order to

4    justify their request for a stay.  Accordingly, the Discover Master finds that – based

5    on the record presented – this factor weighs against issuing the requested stay.[6]

6                    **b.       Prejudice To Mattel**

7         Imposing a stay on MGA's trade dress claims could also prejudice Mattel by

8    delaying the ultimate resolution of the matter and increasing litigation costs.  As

9    explained above, the stay requested by the MGA Parties is of an indefinite duration

10   and could delay the trial or, alternatively, force Mattel to expedite discovery efforts

11   after the stay is lifted.  Moreover, Mattel could be forced to depose the same

12   witnesses multiple times in Phase 2 (once for those issues not related to MGA's

13   trade dress claims and later with respect to those trade dress issues that remain

14   following the disposition of Mattel's contemplated summary judgment motion).

15   For these reasons, this factor weighs against staying the trade dress discovery.

16                    **c.       The MGA Parties Have Not Demonstrated They Will**

17                              **Suffer Any Undue Burden**

18        While the MGA Parties claim that it will "be extremely difficult, time-

19   consuming and costly" to respond to the eight trade dress interrogatories at issue,

20   (Protective Order Motion, p. 14), as noted above, some trade dress discovery will

21   have to be taken regardless of the outcome of Mattel's anticipated summary

22   judgment motion.  Further, while it is possible that Mattel's contemplated summary

23   judgment motion, if granted, could simplify the issues for trial and reduce the costs

24   imposed on the MGA Parties, it is also possible that the resolution of the motion

25   will not have any bearing on the scope of the discovery needed in this case.

26   Regardless, a party is always burdened with costs when it voluntarily chooses to

27   ─────────────────

28   [6] Of course, the Discovery Master is in no way deciding the merits of Mattel's contemplated summary judgment motion.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 13 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT __7__
PAGE ___136___

1    pursue a claim, whether the case ultimately is dismissed, summary judgment is

2    granted, the case is settled, or a trial occurs.  If the MGA Parties wish to avoid these

3    costs in connection with MGA's trade dress claims, MGA can always dismiss them.

4    Because any hardship that MGA might face is one of its own making, any burden

5    imposed on it in having to respond to the discovery is justified.  Accordingly, this

6    factor weighs against issuing the requested stay.

　　　　　　　　　**d.    The Interests Of The Judiciary And The General**

　　　　　　　　　　　　　**Public**

9    　　　The Court, using funds supplied by the general public, has already expended

10   a great deal of effort and resources in this matter, including conducting a lengthy

11   trial in Phase 1.  The Court further issued a scheduling order that established a

12   specific trial date and discovery cut-off for Phase 2.  Consequently, the general

13   interests of controlling the court's docket and the fair and speedy administration of

14   justice weigh heavily in favor of denying the requested stay.

15   　　**E.    Summary Of Ruling Regarding The Protective Order Motion**

16   　　　For all of the foregoing reasons, the MGA Parties have failed to meet their

17   burden of demonstrating that good cause exists for issuance of a protective order

18   staying their obligation to respond to the subject discovery.

19   **III.   MATTEL'S MOTION TO COMPEL**

20   　　　Having·denied the Protective Order Motion, the Discovery Master now turns

21   to Mattel's Motion To Compel.

22   　　**A.    Interrogatory Nos. 43 and 44**

23   　　　　**1.    Orders Issued By The Prior Discovery Master**

24   　　　As explained in Section I.A., above, this is not the first time that Mattel has

25   moved to compel responses to Interrogatory Nos. 43 and 44.  The prior discovery

26   master ordered MGA to supplement its responses to these interrogatories as part of

27   his February 15, 2008 order ("February 15, 2008 Order").  (Watson Decl., Ex. 8 at

28   pp. 11 – 12).  Seven days after the deadline specified in the February 15, 2008

- 14 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]



EXHIBIT __7__
PAGE __137__

1   Order for supplementing its responses to Interrogatory Nos. 43 and 44, MGA

2   served objections stating that the discovery in question related to Phase 2 and had

3   been stayed pursuant to a February 4, 2008 order from the Court. (*Id.*, Ex. 9 at pp.

4   7 – 16). After having been advised of the stay imposed by the Court on

5   February 4, 2008, the prior discovery master clarified his February 15, 2008 Order

6   on April 22, 2008 ("April 22, 2008 Order"), ruling that "[t]he MGA Parties

7   obligation to supplement their responses . . . [was] stayed until further order of the

8   district court lifting the stay on Phase 2 discovery." (*Id.*, Ex. 10 at p. 3).

   ## 2.   The Relief Sought By Mattel

10   Because MGA failed to supplement its response to Interrogatory Nos. 43 and

11   44 after the Court lifted the stay on Phase 2 discovery on January 6, 2009, Mattel

12   requests that the Discovery Master enforce the February 15, 2008 Order and require

13   MGA to supplement its responses. (Motion To Compel, pp. 9 – 10).

   ## 3.   MGA's Opposition

15   In its Opposition, MGA relies on two grounds for refusing to provide

16   responses to Interrogatory Nos. 43 and 44. First, MGA argues that it is not in

17   violation of the prior discovery master's February 15, 2008 Order because that

18   order was subsequently stayed by the April 22, 2008 Order, which "did not include

19   any specific date, or time period, after the Phase 2 stay was lifted within which

20   MGA had to provide supplemental responses." (Opposition, p. 10; *see also id.*, pp.

21   9 and 11). Second, MGA argues that it has not refused to answer Interrogatory

22   Nos. 43 and 44 but rather simply moved for a protective order and noted that it will

23   either provide further responses following the denial of that motion or, in the event

24   the motion is granted, after the Court decides Mattel's contemplated summary

25   judgment motion. (*Id.*, pp. 11 – 12).

26   The Discovery Master does not find either of these arguments persuasive.

   ### a.   The April 22, 2008 Order

28   While MGA is correct that the prior discovery master temporarily stayed the

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 15 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT   7
PAGE   138

1    enforcement of his February 15, 2008 Order in his April 22, 2008 Order, its

2    argument that it does not have any obligation to supplement the responses to

3    Interrogatory Nos. 43 and 44 because the April 22, 2008 Order did not specify a

4    time within which MGA had to provide responses is not supported by the record.

5        As soon as the stay on Phase 2 discovery was lifted, MGA's obligation to

6    supplement its responses to Interrogatory Nos. 43 and 44 pursuant to the

7    February 15, 2008 Order returned.  Indeed, the plain language of the prior

8    discovery master's April 22, 2008 Order states that the "MGA Parties obligation to

9    supplement their responses . . . are hereby stayed **until further order of the**

10   **district court lifting the stay on Phase 2 discovery.**"  (Watson Decl., Ex. 10 at p.

11   3 (emphasis added)).  Because the Court lifted the stay on Phase 2 discovery on

12   January 6, 2009, the April 22, 2008 Order has not been a shield to the enforcement

13   of the prior discovery master's February 15, 2008 Order since the lifting of the stay.

14       Further, MGA had, at most, eleven days following the lifting of the stay on

15   Phase 2 discovery to supplement its responses to Interrogatory Nos. 43 and 44.

16   (Watson Decl., Ex. 8 at pp. 11 – 12 and 22).  The prior discovery master's February

17   15, 2008 Order required MGA to provide its supplemental responses within eleven

18   days of the order (i.e., on February 26, 2008).  (*Id.*, Ex. 8 at p. 22).  Giving MGA

19   the benefit of the doubt and assuming that all eleven of those days remained at the

20   time the stay was lifted on January 6, 2009, MGA had until January 19, 2009 to

21   provide its responses to Mattel (i.e., 11 days under the February 15, 2008 Order,

22   plus 2 additional days because January 17, 2009 falls on a Saturday).  Because

23   more than three months have passed without a response, MGA has not complied

24   with the terms of the prior discovery master's February 15, 2008 Order.

25                   **b.     MGA's Offer To Produce The Supplemental**

26                            **Responses Following The Disposition Of The**

27                            **Protective Order Motion**

28       The contention that MGA somehow remedied its failure to supplement its

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 16 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT __7__
PAGE __139__

1   responses to Interrogatory Nos. 43 and 44 by offering to provide further responses

2   following the ruling on the Protective Order Motion is likewise unavailing.  (*Id.*,

3   pp. 11 – 12).  MGA cites no legal authority, and the Discovery Master has found

4   none, supporting the proposition that a party may refuse to respond to an

5   interrogatory after it has been ordered to do so by subsequently filing a motion for a

6   protective order.  Nor would such a rule be logical, as it would permit the party

7   ordered to respond to thereby nullify the effect of the court order.  Regardless, the

8   Discovery Master denied the Protective Order Motion and finds that it cannot be

9   used as a basis for failing to comply with the February 15, 2008 Order.

10           **4.     Conclusion**

11           For all of the foregoing reasons, MGA must promptly provide full and

12   complete responses to Interrogatory Nos. 43 and 44.

13      **B.     Mattel's Request For Sanctions Regarding Interrogatory Nos. 43**

14           **And 44**

15           In its Motion To Compel, Mattel also requests that the Discovery Master

16   sanction MGA in the amount of $4,515 for failing to comply with the prior

17   discovery master's February 15, 2008 Order.  (Motion To Compel, pp. 10 – 11).  In

18   response, MGA argues that the Motion To Compel is "entirely unnecessary," since

19   "there is no dispute about whether MGA will respond to Interrogatories 43 and 44,

20   only when, and MGA had already brought the 'when' question to the Discovery

21   Master one week before Mattel filed the instant motion to compel" as part of its

22   Protective Order Motion.  (Opposition, p. 13).  However, the fact that one party has

23   moved for a protective order does not prevent the party opposing that motion from

24   subsequently filing a motion to enforce a prior court order, particularly where the

25   latter motion requests that the Discovery Master compel MGA to provide responses

26   to the interrogatories at issue "without further delay," (Motion To Compel, p. 10),

27   while the motion for a protective order indicates that MGA will respond to the

28   interrogatories, at the earliest, "within 21 days after" the denial of the Protective

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES


EXHIBIT    1
PAGE    140

- 17 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

1    Order Motion, (Protective Order Motion, p. 10).

2        MGA next argues that sanctions should be denied because its Protective

3    Order Motion is supported by numerous cases, (Opposition, pp. 13 – 14), and that

4    "it would be a perversion of every conceivable notion of economy and efficiency,

5    not to mention fairness . . . if a motion to compel could be used to sanction a party

6    for exercising its legal right to seek a protective order." (*Id.*, p. 14).  But these

7    arguments are not persuasive for the same reasons discussed in Section II and

8    Section III.A.3.b., above, namely that the Protective Order Motion is not

9    meritorious and MGA has not cited any legal authority supporting the proposition

10   that a party may refuse to respond to an interrogatory after it has been ordered to do

11   so by subsequently filing a motion for a protective order.

12       Finally, MGA argues that it "has not appealed, challenged or otherwise

13   refused to obey" the prior discovery master's order, (*id.*), but merely requested that

14   the "Discovery Master temporarily defer the time to respond . . . based upon the

15   new, intervening circumstances that arose between the issuance of that order and

16   the lifting of the discovery stay," (*id.*, p. 15).  However, this is just another way of

17   saying that MGA refused to supplement its responses as required by the prior

18   discovery master due to its mistaken belief that the Protective Order Motion

19   obviated the need to comply with the February 15, 2008 Order.  Because that

20   argument has already been rejected, MGA has failed to show that it had substantial

21   justification for opposing the enforcement of the February 15, 2008 Order.

22   Accordingly, the Discovery Master sanctions MGA in the amount of $4,515.[7]

23       **C.    Supplemental Interrogatory Nos. 51 – 55 And 64**

24           **1.    The Relief Sought By Mattel**

25       Mattel next requests that the Discovery Master overrule MGA's objections

26   and compel it to provide full and complete responses to Supplemental Interrogatory

27   ――――――――――――――――――
     [7] Having determined that MGA lacked substantial justification for failing to comply with the
28   February 15, 2008 Order, the Discovery Master denies MGA's request for sanctions.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

                                        - 18 -                    ORDER NO. 17
                                                         [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT  7
PAGE  141

1   Nos. 51 – 55 and 64. (Motion To Compel, pp. 12 – 21).

2           **2.    MGA's Opposition**

3           In its Opposition, MGA initially argues that Mattel failed to meet and confer

4   in good faith. (Opposition, pp. 16 – 18). It further argues that even if Mattel did

5   meet and confer sufficiently, its other objections to the interrogatories (i.e., that

6   they (1) contain overbroad definitions, (2) are compound, (3) are duplicative of

7   other interrogatories, (4) improperly seek expert witness information, privileged

8   information, and information better known to Mattel, and/or (5) impose an undue

9   burden) are meritorious and should be sustained. (*Id.*, pp. 18 – 26).

10          **a.    Purported Failure To Meet And Confer**

11          Because it could dispose of the outstanding discovery issues related to

12  Supplemental Interrogatory Nos. 51 – 55 and 64, the Discovery Master first

13  addresses MGA's argument that Mattel failed to meet and confer in good faith prior

14  to filing its motion.

15          MGA argues that Mattel did not meet and confer in good faith because its

16  "meet and confer letter concerning these interrogatories is utterly devoid of any

17  reference whatsoever to the putative impropriety of the objections it now challenges

18  . . ." (Opposition, p. 17). However, MGA admits that the parties did meet and

19  confer about certain issues regarding these interrogatories. (*Id.*, p. 18 ["While the

20  parties did meet and confer about the timing of MGA's response to Interrogatory

21  Nos. 51 – 55 and 64 . . ." (emphasis omitted)]). The record further reflects Mattel

22  sent a meet and confer letter and had multiple phone calls with MGA's counsel

23  about these specific interrogatories. (Watson Decl., ¶ 18 and Exs. 15, 17 and 19).[8]

24  In fact, a letter dated January 28, 2008 specifically asks MGA to let Mattel know

25  "[i]f MGA or Larian intends to limit their responses [to the Supplemental

26

27  [8] The Discovery Master overrules MGA's evidentiary objections to Paragraph 18 of the Watson
    Decl. because the statements are based on Mr. Watson's personal knowledge, are not vague and
28  ambiguous, do not constitute hearsay, and are not argumentative.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 19 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]


EXHIBIT __7__
PAGE __142__

1   Interrogatories] based on . . . any other objections . . ." (Watson Decl., Ex. 15).

2   Under such circumstances, the Discovery Master finds that Mattel satisfied Rule

3   37's "good faith" meet and confer requirement.

**b.   Definitional Objections**

5   MGA's first substantive argument in opposition to Supplemental

6   Interrogatory Nos. 51 – 55 and 64 is that Supplemental Interrogatory No. 52 is

7   ambiguous because of the manner in which the term "SALES" is defined.

8   (Opposition p. 19). MGA likewise asserts that Supplemental Interrogatory Nos. 51

9   – 55 are ambiguous because of the definition used for the term "MATTEL." (*Id.*,

10   pp. 19 – 20). However, MGA has not cited any legal authority in support of its

11   position.

12   Moreover, MGA did not set forth the grounds for its objections "with

13   specificity," at the time it objected to the interrogatories, as required by Federal

14   Rule of Civil Procedure 33(b)(4). To the contrary, it merely "incorporate[d]

15   General Objection Nos. 14 – 15 (regarding Definitions), including without

16   limitation its objection to the definition of the term 'MATTEL" for Supplemental

17   Interrogatory Nos. 51 – 55, (Separate Statement, pp. 4 – 8), as well as the term

18   "SALES" with respect to Supplemental Interrogatory No. 52 (*id.*, pp. 5 – 6). This

19   incorporation by reference of a list of general objections is insufficient to preserve

20   an objection. (*Convertino v. U.S. Dept. of Justice*, 565 F.Supp.2d 10, 12 – 13

21   (D.D.C. 2008); *ACMA USA, Inc. v. Surefil, LLC*, 2008 WL 2714422, *2 (E.D.Va.

22   July 7, 2008); *Grider v. Keystone Health Plan Central, Inc.*, 2007 WL 2874423, *5

23   - *6 (E.D.Pa. September 27, 2007); *see also* Fed. R. Civ. Proc. 33(b)(4)).

24   Regardless, the Discovery Master is not persuaded that MGA is unable to

25   understand the terms MATTEL and SALES. Accordingly, the definitional

26   objections are overruled. MGA must answer the interrogatories.[9]

27   _____

28   [9] The prior discovery master repeatedly required MGA to respond to discovery that used these definitions, including Interrogatory Nos. 43 and 44. (Watson Decl., Exs. 1 and 8).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 20 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _1_
PAGE _143_

### c. Expert Witness Objection

With respect to Supplemental Interrogatory Nos. 51 and 53, MGA asserts that it "has simply interposed an objection that preserves [its] right to rely on expert testimony." (Opposition, p. 21). Since that is the full extent of MGA's expert witness objection, the Discovery Master agrees that the objection, as limited by MGA, is valid. What MGA cannot do is assert that this objection permits it to withhold information that is now available to it. Accordingly, the objection is sustained to the extent that MGA's interrogatory response merely includes a reservation of rights to supplement the response during expert discovery.

### d. Objection That The Information Is Better Known By Mattel

Regarding Supplemental Interrogatory No. 51, MGA asserts that the request for it to identify Mattel products by stock keeping number or bar code number is objectionable because that information is better known to Mattel. (*Id.*, p. 21). However, MGA cannot withhold information on the ground that Mattel knows which people have knowledge of Mattel's purported copying of MGA's intellectual property. Mattel is entitled to discover the information MGA possesses and the factual bases of its trade dress claims.

As for MGA's claim that Supplemental Interrogatory No. 54 improperly asks it to identify all persons with knowledge of certain facts even though it does not know everyone who may possess such information, (*id.*, pp. 21 – 22), it is incumbent upon MGA to provide the information that is within its custody, possession or control. In fact, MGA concedes that it will provide "whatever information it has." (*Id.*, p. 22).

### e. Compound Objection

MGA next asserts that Supplemental Interrogatory Nos. 51 – 53 are impermissibly compound. (Opposition, pp. 22 – 23). This contention is unavailing. The questions in each interrogatory refer to one common theme and a

EXHIBIT ___7___
PAGE ___144___

1   common group, and count as a single interrogatory. (*See Swackhammer v. Sprint*

2   *Corp. PCS*, 225 F.R.D. 658, 644 (D.Kan. 2004) ["[A]n interrogatory containing

3   subparts directed at eliciting details concerning a 'common theme' should generally

4   be considered a single question"]). Accordingly, the objection is overruled.

5                **f.**   **Duplicative Objection**

6        MGA's sixth argument is that Supplemental Interrogatory Nos. 51 and 52 are

7   duplicative of other interrogatories Mattel propounded previously. (Opposition, pp.

8   23 – 24). But MGA has failed to demonstrate that this is the case. As an initial

9   matter, MGA does not explain why Supplemental Interrogatory No. 51 is

10   duplicative of other interrogatories. Rather, it simply states that Mattel "does not

11   take issue with MGA's duplication objection," (*id.*, p 23), even though Mattel

12   addressed that issue in footnote 81 of its Motion to Compel, (Motion To Compel, p.

13   19 ["MGA further objects that Interrogatory No. 51 is duplicative of Interrogatory

14   No. 6 . . . No. 49 . . . .Although Interrogatory Nos. 6 and 49 also address the facts

15   regarding MGA's trade dress claims, MGA has yet to identify each of the Mattel

16   products it contends copied, infringed, or diluted MGA's products by SKU number,

17   as requested by Interrogatory 51."]). Because it has not analyzed Interrogatory No.

18   51, MGA's objection to that interrogatory is overruled.

19        MGA's claim that Supplemental Interrogatory No. 52 is duplicative of

20   Interrogatory No. 45 is also unpersuasive. Supplemental Interrogatory No. 52 seeks

21   MGA profit, costs and revenue associated with each trade dress MGA contends

22   Mattel copied, infringed or diluted, (Separate Statement, p. 5), whereas

23   Interrogatory No. 45 asks MGA to identify each Bratz product that MGA sold and

24   to identify the profits, costs and revenue associated with each such product.

25   The questions are therefore not the same.[10] Accordingly, the objections are

26

27   [10] If the interrogatories were the same as previous interrogatories it answered, MGA should be able to respond to the latest interrogatories by cutting and pasting its responses to the prior

28   interrogatories. However, as discussed below, MGA alleges that responding to Supplemental Interrogatory Nos. 51 and 52 will be overly burdensome, thereby implying that the questions are not identical in scope. (Opposition, p. 25).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 22 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT   **7**

PAGE   **145**

1    overruled.

2              **g.    Undue Burden Objection**

3          MGA next objects that Supplemental Interrogatory Nos. 51 – 53 and 64 are

4    unduly burdensome.

5          However, MGA has not provided any evidence in connection with its Motion

6    To Compel to support its claim of burden.  (*See Jackson,* 173 F.R.D. at 528-9 ["The

7    party claiming that a discovery request is unduly burdensome must allege specific

8    facts which indicate the nature and extent of the burden, usually by affidavit or

9    other reliable evidence."]).  Further, MGA cannot complain that the interrogatories

10   are unduly burdensome when Mattel merely seeks information regarding the extent

11   of MGA's trade dress claims.  If MGA contends Mattel infringed numerous

12   products, Mattel has the right to discover the scope of the alleged claims.

13   Accordingly, the objections are overruled.

14             **h.    Privilege Objection**

15         Regarding Supplemental Interrogatory Nos. 52, 53, 55 and 64, MGA argues

16   that it asserted a privilege objection merely to "preserve [its] ability to protect,

17   privileged documents and information . . . . [and to make] clear that it was not

18   waiving the attorney-client privilege . . .." (Opposition, p. 25).   Since that is the

19   full extent of MGA's privilege objection, the Discovery Master agrees that

20   objection as so limited is valid.  Accordingly, the objection is sustained on that

21   limited ground.

22             **3.    Conclusion**

23         For all of the foregoing reasons, MGA must promptly provide full and

24   complete responses to Supplemental Interrogatory Nos. 51 – 55 and 64, except as

25   limited above.

26        **D.    Summary Of Ruling Regarding The Motion To Compel**

27         Mattel's Motion To Compel is granted, except as limited above.  Mattel's

28

EXHIBIT ___7___
PAGE ___146___

1    request for sanctions in connection with Interrogatory Nos. 43 and 44 is also

2    granted.

3    **IV.    MATTEL'S _EX PARTE_ APPLICATION**

4         Several days after Mattel filed its Motion to Compel on March 6, 2009,

5    Mattel filed its Application for issuance of an order to show cause regarding

6    contempt. The Application addresses Interrogatory Nos. 43 and 44 (the

7    "Interrogatories") and is based on the same facts summarized above with respect to

8    the Motion to Compel and Protective Order Motion. However, unlike the Motion

9    to Compel, Mattel filed its Application with the Court, arguing that the Discovery

10   Master is not authorized to issue contempt sanctions. By order dated March 12,

11   2009, the Court referred the Application to the Discovery Master, who was

12   instructed to review it in the first instance and recommend a disposition to the

13   Court. (Order dated March 12, 2009, p. 1).

14        **A.    Basis For The Application**

15             **1.    Circumstances Warranting _Ex Parte_ Relief.**

16        In the introductory section of its Application preceding the Memorandum of

17   Points and Authorities, Mattel sets forth the following grounds for _ex parte_ relief:

18             [F]or two months, MGA failed and refused to produce Phase 2

19             discovery, including such discovery that was previously ordered.

20             MGA also has a history of flouting Court Orders, but remains

21             undeterred by prior warnings and prior awards of sanctions.

22             Absent prompt intervention by this Court, MGA will continue to

23             block even ordered Phase 2 discovery. Furthermore, MGA's

24             conduct is a direct challenge to the authority of the court and the

25             Discovery Master, and additional delay would inappropriately

26             reward MGA for its refusals to comply with the [prior discovery

27             master's February 15, 2008] Order.

28   (Application, p. i).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 24 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]



EXHIBIT    7
PAGE    147

1    In its Reply, Mattel offers the following as a further justification for bringing
2    the matter on an *ex parte* basis:

3      MGA has repeatedly employed the procedural tactic of refusing
4      to comply with discovery requests and forcing Mattel to return to
5      court for multiple successive orders and sanctions compelling
6      discovery.  In so doing, MGA effectively halts the discovery
7      process and deprives Mattel of crucial information to which it is
8      entitled. … Requiring Mattel to repeat the process of filing a
9      regularly noticed motion would unduly reward MGA for its
10     refusal to comply with the [February 15, 2008] Order and
11     enhance MGA's ability to perpetually deprive Mattel of crucial
12     time in which to conduct discovery.

13   (Reply, pp. 3-4).

14      **2.** **Circumstances Warranting Issuance Of An Order To Show**
15       **Cause**

16     In its Application, Mattel argues that, although MGA has improperly refused
17   to respond to all of the discovery referenced in the Motion to Compel (including the
18   Interrogatories), that refusal is, in essence, an "aggravated offense" with respect to
19   the Interrogatories, because MGA had already been ordered to provide responses to
20   those Interrogatories pursuant to the prior discovery master's February 15, 2008
21   Order.  Mattel therefore argues that MGA's failure to provide responses to the
22   Interrogatories should be singled out for special treatment as contempt of the Court.

23      **3.** **Relief Sought**

24     MGA seeks issuance of an order to show cause that MGA is in contempt, a
25   finding of contempt, and the following monetary relief:

26      &bull; An award of coercive sanctions against MGA in the amount of $5,000
27       for each day that MGA fails to produce full and complete responses to
28       Interrogatories Nos. 43 and 44 as mandated by the Order, and, in the



EXHIBIT   7

PAGE   148

1       event that MGA does not comply within five days of the Court's

2       Order, the amount of coercive sanctions should be increased to

3       $10,000 per day (with all such per diem fine amounts being paid to the

4       Court); and

5       • An award of monetary sanctions against MGA in the amount of

6         $7,000, which represents a portion of the costs incurred by Mattel in

7         bringing the Application.

8  (Application, pp. i - ii).

9      **B.**    **Discussion**

10         **1.**    *Ex Parte* **Relief Is Not Justified**

11      As MGA notes, the Court's standing order indicates that *ex parte*

12  applications are "solely for extraordinary relief." This directive was underscored

13  by the Court's Discovery Master Order, which requires that a party applying for *ex*

14  *parte* relief must show that "good cause" exists for hearing any dispute "on

15  shortened time" and that it will "be prejudiced absent prompt resolution" of the

16  issue. (Discovery Master Order, pp. 4 – 5).

17      This standard is not satisfied here. Mattel does not adequately demonstrate

18  that it will be prejudiced if the underlying motion is heard according to regularly

19  noticed motion procedures. The discovery cut-off is still eight months in the future

20  (December 11, 2009), and trial is more than a year away. In its Reply, Mattel

21  argues that it would be unfair to require Mattel to seek relief by means of a

22  regularly noticed motion, given the relevant history:

23        Mattel *already* followed this course of action and already

24        obtained an Order that MGA produce amended interrogatory

25        responses. MGA refuses to obey that [February 15, 2008] Order.

26        Requiring Mattel to repeat the process of filing a regularly

27        noticed motion would unduly reward MGA for its refusal to

28        comply with the [February 15, 2008] Order and enhance MGA's

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 26 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]



EXHIBIT __7__
PAGE __149__

1        ability to perpetually deprive Mattel of crucial time in which to

2        conduct discovery.

3   (Reply, p. 4, emphasis in original).

4        Mattel's frustration is understandable; Mattel has already been through this

5   process twice (counting the pending motion to compel) with respect to the identical

6   interrogatories which are the subject of the Application. However, Mattel's

7   assertion that it should be allowed to dispense with a noticed motion ignores one

8   important point: the Application seeks relief which both parties acknowledge is

9   entirely different in character than an award of ordinary monetary sanctions for

10  discovery abuses. Unlike its motions to compel, the Application seeks a finding

11  that MGA has deliberately disobeyed a Court order and should be punished by an

12  award of coercive sanctions until it complies with the order. This is the first time

13  Mattel has sought such relief, and MGA has never previously been provided the

14  opportunity to oppose the requested relief in connection with a regularly noticed

15  motion. Thus, while Mattel's above quoted argument might have some application

16  if Mattel were seeking ordinary discovery sanctions on an *ex parte* basis, it does not

17  justify Mattel in seeking contempt sanctions for the first time on an *ex parte* basis.

18       Moreover, the chronology of events tends to negate the assertion that Mattel

19  is suffering immediate and irreparable prejudice from the delay occasioned by

20  MGA's failure to respond to the Interrogatories. MGA has refused to respond to

21  the Interrogatories since the Court lifted the stay on Phase 2 discovery on January 6,

22  2009. Nevertheless Mattel did not file its Application until two months later, after

23  MGA filed the Protective Order Motion and after Mattel filed its Motion to Compel

24  MGA to respond to the outstanding trade dress discovery, including providing

25  responses to the Interrogatories. The timing of these events undermines Mattel's

26  argument that expedited relief is necessary.

27       In the absence of some exigency, the Discovery Master believes that the

28  severity and punitive character of contempt sanctions warrant affording the parties

EXHIBIT __7__
PAGE __150__

1   the time and opportunity to present their arguments in the context of a regularly

2   noticed motion.  Consequently Mattel was not justified in seeking relief on an *ex*

3   *parte* basis.  Nevertheless, because Mattel could simply re-file the Application as a

4   regularly noticed motion and because the Discovery Master is not inclined to

5   recommend that the Court grant the relief Mattel seeks at this time, I address the

6   substantive issues raised by the Application below.

7                    **2.      MGA's Alleged Disobedience Of The Prior Order**

8                         **a.      Legal Standard**

9        As the Ninth Circuit has observed:

10            Courts are invested with inherent powers that are 'governed not

11            by rule or statute but by the control necessarily vested in courts to

12            manage their own affairs so as to achieve the orderly and

13            expeditious disposition of cases.'

14   (*Unigard Security Ins. Co. v. Lakewood Engineering & Manufacturing Corp.*, 982

15   F.2d 363, 368 (9th Cir. 1992) (citations omitted)).  When a party fails to comply

16   with a court order, that party commits civil contempt.  (*General Signal Corp. v.*

17   *Donallco, Inc.*, 787 F.2d 1376, 1376 (9th Cir. 1986)).  Additionally, Federal Rule of

18   Civil Procedure 37(b)(2)(A) authorizes a court to treat the failure to obey a

19   discovery order as contempt.

20        The Ninth Circuit has further observed that "courts have strictly adhered to

21   the principle that the power to punish for contempt is limited to '(t)he least possible

22   power adequate to the end proposed.'" (*In re Gustafson*, 619 F.2d 1354, 1361 (9th

23   Cir. 1980) (citations omitted)).

24        Mattel acknowledges that it must meet an exacting standard in order to

25   prevail on its Application.  Specifically, the party seeking imposition of civil

26   contempt sanctions must demonstrate "by *clear and convincing evidence* that the

27   contemnors violated a *specific and definite* order of the court." (*United States v.*

28   *Rose*, 437 F.Supp.2d 1166, 1170 (S.D. Cal. 2006) *quoting FTC v. Affordable Media*

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 28 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT   1
PAGE   161

1   *LLC*, 179, F.3d 1228, 1239 (9th Cir. 1990) (emphasis added)).  Further, any doubts

2   as to whether the requirements for civil contempt have been met in a particular case

3   must be resolved in favor of the party accused of civil contempt.  (*In re Chief*

4   *Executive Officers Clubs, Inc.*, 359 B.R. 527, 535 (S.D.N.Y. 2007)).

5        In accordance with this standard, contempt sanctions will not be imposed

6   unless the language of the order allegedly violated is clear and unambiguous.

7   (*Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc.*, 689 F.2d 885, 892 (9th Cir.

8   1982) (affirming district court's denial of applications to hold defendants in

9   contempt for violating terms of consent judgment where, among other things,

10  certain "language of the judgment was ambiguous"); *Sunbeam Corp. v. Black &*

11  *Decker (U.S.) Inc.*, 151 F.R.D. 11, 15 (D.R.I. 1993) (denying motion for contempt

12  and for sanctions where the discovery at issue was open to interpretation: "Any

13  ambiguities or uncertainties in the court order must be read in a light favorable to

14  the person charged with contempt. ... Contempt power should not be used where

15  there is uncertainty"); *Redman v. U.S.*, 77 F.2d 126, 127 (9th Cir. 1935) ("[T]he

16  power of the court to punish for contempt should be used with caution and

17  deliberation.")).

18                  **b.    Application To The Facts**

19       Mattel argues that MGA violated the February 15, 2008 Order, and that it

20  continued to do so for two months before the prior discovery master stayed MGA's

21  obligation to respond to the Interrogatories on April 22, 2008.  (Application, p. 13).

22  That assertion is not accurate.  In granting MGA's motion for clarification of the

23  February 15, 2008 Order, the prior discovery master in essence retroactively found

24  that MGA should not have been ordered to immediately provide supplemental

25  responses because the Interrogatories involved Phase 2 issues and were therefore

26  subject to the Court's February 4, 2008 stay order – a stay imposed 11 days before

27  the February 15, 2008 Order.

28       When the stay was lifted, on January 6, 2009, the Court did not set a new

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 29 -



EXHIBIT ___1___
PAGE ___152___

1    deadline for MGA to provide supplemental responses in compliance with the

2    February 15, 2008 Order, nor did Mattel request that either the Court or the current

3    Discovery Master do so.  However, one month after the stay was lifted, Mattel did

4    meet and confer with MGA in an attempt to obtain responses.  At that time, MGA

5    took the position that it would provide responses to the Interrogatories "not later

6    than 30 days after the Court decides the trade dress summary judgment motion

7    which Mattel has indicated it will be bringing." (Ex. 16 to Watson Decl. in support

8    of Application).  Three weeks later, MGA filed the Protective Order Motion

9    seeking a stay of its obligation to respond to the Interrogatories.

10       As set forth above, the Discovery Master finds that, in pursuing this course of

11   conduct instead of responding to the Interrogatories and other discovery that is the

12   subject of Mattel's Motion to Compel, MGA acted without substantial justification

13   and therefore grants Mattel's Motion To Compel and also awards sanctions against

14   MGA.  The question raised by the Application is whether MGA should *also* be

15   ordered to appear and show cause why it should not be held in contempt and subject

16   to further sanctions for failing to comply with the February 15, 2008 Order.

17       Since Mattel, as the moving party, has the burden of demonstrating by clear

18   and convincing evidence that MGA has committed civil contempt and should be

19   punished, Mattel must, in the first instance, identify the existence of a "specific and

20   definite" provision of the February 15, 2008 Order which MGA has violated.

21   (*Rose*, 437 F.Supp.2d at 1170).  In an attempt to meet this burden Mattel argues:

22           The Discovery Master's [February 15, 2008] Order directed

23           MGA to provide full, complete and updated responses to

24           Interrogatories Nos. 43 and 44 within eleven days.  MGA did not

25           comply with that Order and refused to do so for two months

26           before the Discovery Master stayed MGA's obligation to respond

27           while the Court's Phase 2 stay was in place.

28   (Application, p. 13).  However, as indicated above, MGA's failure to provide the

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 30 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT  1
PAGE  153

1   responses specified in the February 15, 2008 Order cannot reasonably be viewed to
2   be a violation of that order during the period of February 15, 2008 to April 22, 2008
3   because the prior discovery master himself retracted the portion of his ruling
4   requiring MGA to comply in response to MGA's motion for clarification.  In other
5   words, the prior discovery master found, in effect, that MGA had *properly* withheld
6   supplemental responses on the ground that the subject Interrogatories sought Phase
7   2 discovery, which had been stayed by the Court nearly two weeks *before* the prior
8   discovery master issued the February 15, 2008 Order.  Given the prior discovery
9   master's April 22, 2008 ruling granting MGA's motion for clarification, MGA can
10  hardly be deemed to have been in violation of the February 15, 2008 Order while
11  the Court's stay of Phase 2 discovery was in place.  A party who believes a ruling is
12  in error has the right to seek clarification or reconsideration, and doing so is not
13  equivalent to willfully disobeying the court.

14      Mattel also argues that MGA "resumed" its violation of the February 15,
15  2008 Order by failing to comply once the Court lifted the Phase 2 discovery stay on
16  January 6, 2009.  While the Discovery Master does not agree that any violation
17  resumed on January 6, 2009, as set forth above, I do agree that MGA should have
18  promptly complied with the February 15, 2008 Order once the stay was lifted by
19  serving supplemental responses within 11 days of the lifting of the stay.  *Lucero v.*
20  *Martinez*, 2006 WL 1304945 at *2 (D.N.M. Mar. 11, 2006) (party waived all
21  objections to interrogatories served before a stay was issued by failing to respond
22  within 30 days of the stay's expiration); *Donovan v. Mazzola*, 716 F.2d 1226, 1240
23  (9th Cir. 1983) ("Absent a stay, 'all orders and judgments of courts must be
24  complied with promptly.'").

25      However, today's ruling that MGA should have promptly provided responses
26  to the Interrogatories upon the stay being lifted by the Court is not equivalent to a
27  finding that MGA deliberately violated a "specific and definite" provision in the
28  February 15, 2008 Order.  That order arguably does not contemplate the situation

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 31 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]


EXHIBIT  1
PAGE  154

1  which ensued after the order was issued, namely, the prior discovery master's

2  decision to suspend MGA's obligation to respond to the Interrogatories without

3  setting a new deadline to run from the lifting of the stay.

4        While it is reasonable to conclude, as the Discovery Master has done, that the

5  same 11-day deadline imposed by the February 15, 2008 Order would apply once

6  the stay was lifted, an inference, however reasonable, is not the same thing as an

7  express obligation imposed by Court order. (*U.S. v. Saccoccia*, 433 F.3d 19, 29-30

8  (1st Cir. 2005) [government did not carry its burden on civil contempt claim of

9  proving that acceptance of attorney fees by defense attorneys, post-verdict, fell

10 within list of activities expressly forbidden by earlier protective order]; *Independent*

11 *Living Aids, Inc. v. Maxi-Aids, Inc.*, 349 F.Supp.2d 509, 516 (E.D.N.Y. 2004) [the

12 defendant's supposed "understanding," based on oral comments by the Court that

13 he was being ordered to request that search engines discontinue using infringing

14 phrase, was not the same as express provision of injunction and could not serve as

15 basis for civil contempt]).  Further, as noted above, any doubts regarding

16 disobedience of a court order are to be resolved in favor of the party charged with

17 contempt.  Accordingly, the Discovery Master declines, under the applicable case

18 law and on the record presented, to find that MGA deliberately disobeyed the

19 Court, thereby meriting sanctions for civil contempt.  The Discovery Master also

20 declines to recommend that the Court issue the requested order to show cause.

21       However, as set forth in the Disposition section below, the Discovery

22 Master's ruling today *does* contain an express deadline by which MGA must

23 respond fully and without objection to the Interrogatories (as well as the other

24 discovery that is the subject of Mattel's Motion to Compel).  If MGA fails to

25 comply with the express, definite deadline imposed by this Order, the Discovery

26 Master reserves the right to recommend that the Court impose appropriate sanctions

27 from the date of MGA's non-compliance should Mattel renew its request for an

28 order to show cause regarding contempt by filing a noticed motion.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 32 -

ORDER NO. 17
[Case No. CV 04-09049 SGL (RNBx)]



EXHIBIT __7__
PAGE __155__

1   **V.      DISPOSITION**

2          A.      MGA's Protective Order Motion is **DENIED**.

3          B.      Mattel's Motion To Compel is **GRANTED**, except as limited above.

4   MGA's responses to Interrogatory Nos. 43 and 44 shall be served within ten (10)

5   days of this Order, subject to any applicable confidentiality designations available

6   under the Protective Order.  MGA's responses to Supplemental Interrogatories Nos.

7   51 – 55 and 64 shall be served within thirty (30) days of this Order, subject to any

8   applicable confidentiality designations available under the Protective Order.

9          C.      Mattel's request for sanctions against MGA in connection with its

10  Motion To Compel is **GRANTED**.  MGA shall pay $4515 to Mattel within ten (10)

11  days of this Order.

12         D.      MGA's request for sanctions in connection with Mattel's Motion To

13  Compel is **DENIED**.

14         E.      Mattel's Application for issuance of an order to show cause regarding

15  contempt is **DENIED,** without prejudice to any noticed motion for an order to show

16  cause regarding contempt that Mattel may deem appropriate in the event that MGA

17  fails to comply with any provision of the present Order.

18  Dated: April 14, 2009

19

20                                      By:   /s/ Robert C. O'Brien

21                                            ROBERT C. O'BRIEN
                                              Discovery Master
22

23

24

25

26

27

28

EXHIBIT ___7___
PAGE ___156___

# EXHIBIT 8

Mar. 11. 2009  6:51PM   Glaser Weil                                          No. 0753   P. 1/32

LAW OFFICES
# GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067

III MERITAS LAW FIRMS WORLDWIDE

## FAX TRANSMISSION

TELEPHONE NO.: (310) 553-3000
FACSIMILE NO.:   (310) 556-2920

Number of Pages:
(including this page)

FROM:    **Amman Khan**

DATE:    **March 11, 2009**                     Client Reference No.:   3460-024

| TO: | FAX NO.: | CONFIRMATION NO: |
|---|---|---|
| Jon D. Corey, Esq.<br>Michael T. Zeller, Esq.<br>John Quinn, Esq.<br>**Quinn Emanuel Urquhart Oliver & Hedges, LLP** | **213.443.3100** | **213.443.3000** |
| Russell J. Frackman, Esq.<br>Patricia H. Benson, Esq.<br>**Mitchell, Silberberg & Knupp, LLP** | **310.312.3100** | **310.312.2000** |
| Thomas J. Nolan, Esq.<br>Raoul D. Kennedy, Esq.<br>Jason D. Russell, Esq.<br>**Skadden, Arps, Slate, Meagher & Flom LLP** | **213.687.5600** | **213.687.5000** |
| Mark E. Overland, Esq.<br>Alexander H. Cote, Esq.<br>**Overland Borenstein Scheper & Kim, LLP** | **213.613.4656** | **213.613.4655** |
| Todd E. Gordinier, Esq.<br>Peter N. Villar, Esq.<br>Jennifer A. Lopez, Esq.<br>**Bingham McCutchen LLP** | **714.380.0717** | **714.830.0622** |
| Peter Bonis, Esq.<br>**Peter H. Bonis Law Offices** | **925.287.6429** | **925.287.6428** |

Sender's Comments:

**If you have received this Transmission in error, please call: (310) 553-3000 and mail it to the above address. Thank you.**

NOTE: THE INFORMATION CONTAINED IN THIS FAX MESSAGE IS INTENDED ONLY FOR THE PERSONAL AND CONFIDENTIAL USE OF THE DESIGNATED RECIPIENTS NAMED ABOVE.  THIS MESSAGE MAY BE AN ATTORNEY-CLIENT COMMUNICATION AND, AS SUCH, IS PRIVILEGED AND CONFIDENTIAL.  IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT YOU HAVE RECEIVED THIS DOCUMENT IN ERROR, AND THAT ANY REVIEW, DISSEMINATION, DISTRIBUTION OR COPYING OF THIS MESSAGE IS STRICTLY PROHIBITED.  IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AND RETURN THE ORIGINAL MESSAGE BY MAIL. THANK YOU.



EXHIBIT _8_
PAGE _157_



1  Patricia L. Glaser, State Bar No. 055668
   Pglaser@chrisglase.com
2  Joel N. Klevens, State Bar No. 045446
   Jklevens@chrisglase.com
3  GLASER, WEIL, FINK, JACOBS
     & SHAPIRO, LLP
4  10250 Constellation Boulevard, 19th Floor
   Los Angeles, California 90067
5  Telephone:  310-553-3000
6  Facsimile:   310-556-2920

7  Russell J. Frackman, State Bar No. 049087
   rjf@msk.com
8  MITCHELL, SILBERBERG & KNUPP, LLP
   11377 West Olympic Boulevard
9  Los Angeles, California 90064
   Telephone:  310-312-2000
10 Facsimile:   310-312-3100

11 Attorneys for the MGA Parties For Phase Two

12                 UNITED STATES DISTRICT COURT

13               CENTRAL DISTRICT OF CALIFORNIA

14                       EASTERN DIVISION

15

16 CARTER BRYANT, an individual          )  Case No. CV 04-9049 SGL (RNBx)
                                          )
17                    Plaintiff,          )  Consolidated with
                                          )  Case No. 04-09059
18 v.                                     )  Case No. 05-02727
                                          )
19 MATTEL, INC., a Delaware              )  DISCOVERY MATTER
   Corporation                            )  [To Be Heard by Discovery Master
20                                        )  Robert C. O'Brien Pursuant to Order of
                     Defendant.           )  January 6, 2009]
21                                        )
                                          )  MGA PARTIES' OBJECTIONS TO
22                                        )  MATTEL, INC.'S SUBPOENA
   AND CONSOLIDATED ACTIONS              )  ISSUED TO SHIRIN SALEMNIA
23                                        )
                                          )  Phase 2
24                                        )  Discovery Cut-off:  December 11, 2009
                                          )  Pre-Trial Conference:  March 1, 2010
25                                        )  Trial Date:  March 23, 2010
26

27

28
668893

MGA PARTIES' OBJECTIONS TO SUBPOENA ISSUED TO SHIRIN SALEMNIA

EXHIBIT __8__
PAGE __158__

1  <u>MGA PARTIES' OBJECTIONS TO SUBPOENA ISSUED TO</u>

2  <u>SHIRIN SALEMNIA</u>

3  TO ALL PARTIES HEREIN AND TO THEIR ATTORNEYS OF RECORD:

4  PLEASE TAKE NOTICE that MGA Entertainment, Inc., Isaac Larian, MGA

5  Entertainment (HK) Limited, and MGAE de Mexico S.R.L. de C.V.'s (collectively,

6  the "MGA Parties"), hereby object, under Federal Rule of Civil Procedure 45, to

7  Mattel, Inc.'s ("Mattel") subpoena, deposition notice and document requests issued to

8  non-party Shirin Salemnia, based on the general objections and specific objections

9  stated below.

10  <u>GENERAL OBJECTIONS</u>

11  The MGA Parties incorporate the following general objections (the "General

12  Objections") into each and every one of the objections set forth below:

13  1.  <u>Privileged Information.</u>  The MGA Parties object generally to each

14  request for document production ("Request") to the extent that it seeks information

15  that is protected by the attorney-client privilege, the attorney work-product doctrine

16  and/or any other applicable privilege.

17  2.  <u>Trade Secret and Proprietary Information.</u>  The MGA Parties object

18  generally to the Requests to the extent that they call for the production of highly

19  confidential, proprietary or otherwise commercially sensitive information or trade

20  secrets related to the MGA Parties and/or third parties.

21  3.  <u>Relevance.</u>  The MGA Parties object generally to the Requests to the

22  extent they seek information not relevant to the claims or defenses of any party to this

23  action and not reasonably calculated to lead to the discovery of admissible evidence.

24  4.  <u>Right to Privacy.</u>  The MGA Parties object generally to the Requests to

25  the extent that they seek information regarding and/or the identification and the

26  production of documents protected by a person's right to privacy and the privileges

27  against disclosure of confidential information.

28

668898

EXHIBIT __8__

PAGE __159__

LAW OFFICES
GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

5.    Possession, Custody and Control.  The MGA Parties object generally to the Requests to the extent that they seek documents that are not in Ms. Salemnia's possession, custody, or control.

6.    Invalid Subpoena and Notice.  Pursuant to Federal Rule of Civil Procedure 45, the MGA Parties further object generally to the subpoena, the deposition notice and the Requests on the following grounds: (1) Mattel fails to attach a proof of service demonstrating that the subpoena was properly served, if at all, on the witness; and (2)  the deposition date and the date for production of the requested documents were unilaterally selected by Mattel, without prior consultation with anyone, including the witness, and are thus invalid.

## OBJECTIONS TO REQUESTS FOR DOCUMENTS

## REQUEST FOR PRODUCTION NO. 1

All documents that refer or relate to communications between you and MGA prior to February 17, 2003, including without limitation all telephone records, logs, notes, calendars, planners, diaries, letter and other documents relating thereto, and all emails and attachments sent to or received from any e-mail address that includes, in whole or in part, <mgae.com> or other an MGA domain prior to February 17, 2003. As used in these Requests, "MGA" includes any officer, director, employee, representative or agent of MGA Entertainment, Inc., including Isaac Larian, and/or any affiliate of MGA Entertainment, Inc.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 1

The MGA Parties incorporate by reference their General Objections as though fully set forth herein.  The MGA Parties further object to this Request on the grounds that the Discovery Master already has ruled on similarly phrased requests, including in an Order dated May 7, 2008, concluding that requests using phrases like "all documents," and "referring to or relating to" are overly broad, vague, unduly burdensome, and seek irrelevant information.  See May 7, 2008 Infante Order.  The MGA Parties further object on the grounds that this Request calls for the production

GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP
LAW OFFICES
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

668893

3

EXHIBIT _8_
PAGE _160_

1   of documents that are not limited to the subject matter of this action and not relevant

2   to any claim or defense in the pending litigation or reasonably calculated to lead to

3   the discovery of admissible evidence.

4       The MGA Parties further object to this Request on the ground that it is unduly

5   burdensome. Fed. R. Civ. Proc. 45(c)(2)(B). Courts have interpreted the Federal

6   Rules of Civil Procedure to afford non-parties, like Ms. Salemnia, special protections

7   against burdensome discovery. *Exxon Shipping Co. v. U.S. Dept. of Interior*, 34 F.3d

8   774, 779 (9th Cir. 1994) ("The Federal Rules also afford nonparties special protection

9   against the time and expense of complying with subpoenas"); *Katz v. Batvia Marine*

10  *and Sporting Supplies, Inc.*; 984 F. 2d 422, 424 (Fed. Cir. 1993) ("the fact of nonparty

11  status may be considered by the court in weighing the burdens imposed in the

12  circumstances"). "[T]he status of the person as a nonparty is a factor that weighs

13  against disclosure." *Beinin v. Center for Study of Popular Culture*, 2007 U.S. Dist.

14  LEXIS 22518, at *16 (N.D. Cal. March 16, 2009).

15      The MGA Parties further object to this Request on the grounds that it is

16  overbroad and seeks documents neither relevant to the subject matter of the pending

17  litigation nor reasonably calculated to lead to the discovery of admissible evidence.

18  *Mattel Inc. v. Walking Mountain Productions*, 353 F. 3d 792, 813 (9th Cir. 2003)

19  (subpoena is "way too broad" when drafted without any attempt "to try to tailor the

20  information request to the immediate needs of the case").

21      The MGA Parties further object to this Request to the extent that it seeks

22  highly private, confidential, proprietary or otherwise commercially sensitive

23  information and/or trade secrets of the MGA Parties and/or third parties.

24  **REQUEST FOR PRODUCTION NO. 2**

25      All documents or tangible things that you or any other person took, removed,

26  sent or transferred from Mattel or removed, deleted, copied, reproduced or transferred

27  from any Mattel computer or electronic storage device during any time period that

28  you worked for Mattel and/or MGA. As used in these requests, "Mattel" includes any

668893

GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP
LAW OFFICES
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

EXHIBIT __8__
PAGE __161__

1   officer, director, employee, representative or agent of Mattel, Inc. and/or any affiliate

2   of Mattel, Inc.

3   **RESPONSE TO REQUEST FOR PRODUCTION NO. 2**

4         In addition to the General Objections, which are incorporated herein by

5   reference, the MGA Parties object to this Request on the ground that it is unduly

6   burdensome. Fed. R. Civ. Proc. 45(c)(2)(B). Courts have interpreted the Federal

7   Rules of Civil Procedure to afford non-parties, like Ms. Salemnia, special protections

8   against burdensome discovery. *Exxon Shipping Co. v. U.S. Dept. of Interior*, 34 F.3d

9   774, 779 (9th Cir. 1994) ("The Federal Rules also afford nonparties special protection

10  against the time and expense of complying with subpoenas"); *Katz v. Batvia Marine*

11  *and Sporting Supplies, Inc.*, 984 F. 2d 422, 424 (Fed. Cir. 1993) ("the fact of nonparty

12  status may be considered by the court in weighing the burdens imposed in the

13  circumstances"). "[T]he status of the person as a nonparty is a factor that weighs

14  against disclosure." *Beinin v. Center for Study of Popular Culture*, 2007 U.S. Dist.

15  LEXIS 22518, at *16 (N.D. Cal. March 16, 2009).

16        The MGA Parties further object to this Request on the grounds that the

17  Discovery Master already has ruled on similarly phrased requests, including in an

18  Order dated May 7, 2008, concluding that requests using phrases like "all

19  documents," and "referring to or relating to" are overly broad, vague, unduly

20  burdensome, and seek irrelevant information. See May 7, 2008 Infante Order.

21        The MGA Parties further object to this Request on the grounds that it is

22  overbroad and seeks documents neither relevant to the subject matter of the pending

23  litigation nor reasonably calculated to lead to the discovery of admissible evidence.

24  *Mattel Inc. v. Walking Mountain Productions*, 353 F. 3d 792, 813 (9th Cir. 2003)

25  (subpoena is "way too broad" when drafted without any attempt "to try to tailor the

26  information request to the immediate needs of the case").

27  ///

28  ///

668893

MGA PARTIES' OBJECTIONS TO SUBPOENA ISSUED TO SHIRIN SALEMNIA

EXHIBIT _8_
PAGE _162_

LAW OFFICES
GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

1   **REQUEST FOR PRODUCTION NO. 3**

2        All e-mail messages, including attachments, sent by you to any e-mail address

3   that includes <mattel.com> , or sent to you from any e-mail address that includes

4   <mattel.com> after February 17, 2003.

5   **RESPONSE TO REQUEST FOR PRODUCTION NO. 3**

6        The MGA Parties incorporate by reference their General Objections as though

7   fully set forth herein.  The MGA Parties further object to this Request on the grounds

8   that the Discovery Master already has ruled on similarly phrased requests, including

9   in an Order dated May 7, 2008, concluding that requests using phrases like "all

10   documents," and "referring to or relating to" are overly broad, vague, unduly

11   burdensome, and seek irrelevant information.  See May 7, 2008 Infante Order.

12        The MGA Parties further object to this Request on the ground that it is unduly

13   burdensome.  Fed. R. Civ. Proc. 45(c)(2)(B).  Courts have interpreted the Federal

14   Rules of Civil Procedure to afford non-parties, like Ms. Salemnia, special protections

15   against burdensome discovery. *Exxon Shipping Co. v. U.S. Dept. of Interior*, 34 F.3d

16   774, 779 (9th Cir. 1994) ("The Federal Rules also afford nonparties special protection

17   against the time and expense of complying with subpoenas"); *Katz v. Batvia Marine*

18   *and Sporting Supplies, Inc.*, 984 F. 2d 422, 424 (Fed. Cir. 1993) ("the fact of nonparty

19   status may be considered by the court in weighing the burdens imposed in the

20   circumstances").  "[T]he status of the person as a nonparty is a factor that weighs

21   against disclosure." *Beinin v. Center for Study of Popular Culture*, 2007 U.S. Dist.

22   LEXIS 22518, at *16 (N.D. Cal. March 16, 2009).

23        The MGA Parties further object to this Request on the grounds that it is

24   overbroad and seeks documents neither relevant to the subject matter of the pending

25   litigation nor reasonably calculated to lead to the discovery of admissible evidence.

26   *Mattel Inc. v. Walking Mountain Productions*, 353 F. 3d 792, 813 (9th Cir. 2003)

27   (subpoena is "way too broad" when drafted without any attempt "to try to tailor the

28   information request to the immediate needs of the case").

668893

GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP
LAW OFFICES
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

MGA PARTIES' OBJECTIONS TO SUBPOENA ISSUED TO SHIRIN SALEMNIA

EXHIBIT _*8*_

PAGE _*163*_

LAW OFFICES
GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

**REQUEST FOR PRODUCTION NO. 4**

All documents authored by, or sent, received, taken or removed from, Mattel that you or any other person delivered or provided to or shared with MGA or that was referenced or used by you or any other person at MGA.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4**

The MGA Parties incorporate by reference their General Objections as though fully set forth herein. The MGA Parties further object to this Request on the grounds that the Discovery Master already has ruled on similarly phrased requests, including in an Order dated May 7, 2008, concluding that requests using phrases like "all documents," and "referring to or relating to" are overly broad, vague, unduly burdensome, and seek irrelevant information. See May 7, 2008 Infante Order.

The MGA Parties further object to this Request on the ground that it is unduly burdensome. Fed. R. Civ. Proc. 45(c)(2)(B). Courts have interpreted the Federal Rules of Civil Procedure to afford non-parties, like Ms. Salemnia, special protections against burdensome discovery. *Exxon Shipping Co. v. U.S. Dept. of Interior*, 34 F.3d 774, 779 (9th Cir. 1994) ("The Federal Rules also afford nonparties special protection against the time and expense of complying with subpoenas"); *Katz v. Batvia Marine and Sporting Supplies, Inc.*, 984 F. 2d 422, 424 (Fed. Cir. 1993) ("the fact of nonparty status may be considered by the court in weighing the burdens imposed in the circumstances"). "[T]he status of the person as a nonparty is a factor that weighs against disclosure." *Beinin v. Center for Study of Popular Culture*, 2007 U.S. Dist. LEXIS 22518, at *16 (N.D. Cal. March 16, 2009).

The MGA Parties further object to this Request on the grounds that it is overbroad and seeks documents neither relevant to the subject matter of the pending litigation nor reasonably calculated to lead to the discovery of admissible evidence. *Mattel Inc. v. Walking Mountain Productions*, 353 F. 3d 792, 813 (9th Cir. 2003) (subpoena is "way too broad" when drafted without any attempt "to try to tailor the information request to the immediate needs of the case").

668893

7

EXHIBIT __8__
PAGE __164__

1 | **REQUEST FOR PRODUCTION NO. 5**

2 | All documents that refer or relate to any money, payment, benefit or item of

3 | value made, offered, or promised to you by MGA prior to February 17, 2003.

4 | **RESPONSE TO REQUEST FOR PRODUCTION NO. 5**

5 | The MGA Parties incorporate by reference their General Objections as though

6 | fully set forth herein. The MGA Parties further object to this Request on the grounds

7 | that the Discovery Master already has ruled on similarly phrased requests, including

8 | in an Order dated May 7, 2008, concluding that requests using phrases like "all

9 | documents," and "referring to or relating to" are overly broad, vague, unduly

10 | burdensome, and seek irrelevant information. See May 7, 2008 Infante Order.

11 | The MGA Parties further object to this Request on the ground that it is unduly

12 | burdensome. Fed. R. Civ. Proc. 45(c)(2)(B). Courts have interpreted the Federal

13 | Rules of Civil Procedure to afford non-parties, like Ms. Salemnia, special protections

14 | against burdensome discovery. *Exxon Shipping Co. v. U.S. Dept. of Interior*, 34 F.3d

15 | 774, 779 (9th Cir. 1994) ("The Federal Rules also afford nonparties special protection

16 | against the time and expense of complying with subpoenas"); *Katz v. Batvia Marine*

17 | *and Sporting Supplies, Inc.*, 984 F. 2d 422, 424 (Fed. Cir. 1993) ("the fact of nonparty

18 | status may be considered by the court in weighing the burdens imposed in the

19 | circumstances"). "[T]he status of the person as a nonparty is a factor that weighs

20 | against disclosure." *Beinin v. Center for Study of Popular Culture*, 2007 U.S. Dist.

21 | LEXIS 22518, at *16 (N.D. Cal. March 16, 2009).

22 | The MGA Parties further object to this Request on the grounds that it is

23 | overbroad and seeks documents neither relevant to the subject matter of the pending

24 | litigation nor reasonably calculated to lead to the discovery of admissible evidence.

25 | *Mattel Inc. v. Walking Mountain Productions*, 353 F. 3d 792, 813 (9th Cir. 2003)

26 | (subpoena is "way too broad" when drafted without any attempt "to try to tailor the

27 | information request to the immediate needs of the case").

28 |
668893

MGA PARTIES' OBJECTIONS TO SUBPOENA ISSUED TO SHIRIN SALEMNIA

EXHIBIT   _8_
PAGE   _165_

1    The MGA Parties further object to this Request on the grounds that it is vague

2  and ambiguous in its use of the phrase "item of value."

3    The MGA Parties further object to this Request to the extent that it seeks

4  highly private, confidential, proprietary or otherwise commercially sensitive

5  information and/or trade secrets of the MGA Parties and/or third parties.

6    The MGA Parties further object to this Request to the extent that it seeks

7  information that is protected by the right to privacy.  Federal courts recognize a

8  constitutionally based right of privacy that can be raised in response to discovery

9  requests. *Elena Del Campo v. American Corrective Counseling Services, Inc.*, 2008

10  WL 3978079 (N.D. Cal. Aug. 26, 2008) (denying motion to compel production of

11  documents based on party's right to privacy).  Private financial records are entitled to

12  such privacy protections. *Ryan v. Editions Ltd. West, Inc.*, 2007 WL 2348724, *3

13  (N.D. Cal. Aug. 14, 2007) ("federal courts generally treat financial information as

14  private").

15  **REQUEST FOR PRODUCTION NO. 6**

16    All documents that relating [sic] to any Mattel product, plan or business

17  information, including without limitation "Flavas" and "My Scene" products,

18  including communications relating thereto.

19  **RESPONSE TO REQUEST FOR PRODUCTION NO. 6**

20    The MGA Parties incorporate by reference their General Objections as though

21  fully set forth herein.  The MGA Parties further object to this Request on the grounds

22  that the Discovery Master already has ruled on similarly phrased requests, including

23  in an Order dated May 7, 2008, concluding that requests using phrases like "all

24  documents," and "referring to or relating to" are overly broad, vague, unduly

25  burdensome, and seek irrelevant information.  See May 7, 2008 Infante Order.

26    The MGA Parties further object to this Request on the ground that it is unduly

27  burdensome.  Fed. R. Civ. Proc. 45(c)(2)(B).  Courts have interpreted the Federal

28  Rules of Civil Procedure to afford non-parties, like Ms. Salemnia, special protections

GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP
LAW OFFICES
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

666693

9

EXHIBIT __8__

PAGE __166__

1  against burdensome discovery. *Exxon Shipping Co. v. U.S. Dept. of Interior*, 34 F.3d

2  774, 779 (9th Cir. 1994) ("The Federal Rules also afford nonparties special protection

3  against the time and expense of complying with subpoenas"); *Katz v. Batvia Marine*

4  *and Sporting Supplies, Inc.*, 984 F. 2d 422, 424 (Fed. Cir. 1993) ("the fact of nonparty

5  status may be considered by the court in weighing the burdens imposed in the

6  circumstances"). "[T]he status of the person as a nonparty is a factor that weighs

7  against disclosure." *Beinin v. Center for Study of Popular Culture*, 2007 U.S. Dist.

8  LEXIS 22518, at *16 (N.D. Cal. March 16, 2009).

9       The MGA Parties further object to this Request on the grounds that it is

10  overbroad and seeks documents neither relevant to the subject matter of the pending

11  litigation nor reasonably calculated to lead to the discovery of admissible evidence.

12  *Mattel Inc. v. Walking Mountain Productions*, 353 F. 3d 792, 813 (9th Cir. 2003)

13  (subpoena is "way too broad" when drafted without any attempt "to try to tailor the

14  information request to the immediate needs of the case").

15  **REQUEST FOR PRODUCTION NO. 7**

16       All communications between you and any representative or employee of MGA

17  including without limitation Isaac Larian, that refer or relate to Mattel or any Mattel

18  product or project.

19  **RESPONSE TO REQUEST FOR PRODUCTION NO. 7**

20       In addition to the General Objections, which are incorporated herein by

21  reference, the MGA Parties object to this Request on the ground that it is unduly

22  burdensome. Fed. R. Civ. Proc. 45(c)(2)(B). Courts have interpreted the Federal

23  Rules of Civil Procedure to afford non-parties, like Ms. Salemnia, special protections

24  against burdensome discovery. *Exxon Shipping Co. v. U.S. Dept. of Interior*, 34 F.3d

25  774, 779 (9th Cir. 1994) ("The Federal Rules also afford nonparties special protection

26  against the time and expense of complying with subpoenas"); *Katz v. Batvia Marine*

27  *and Sporting Supplies, Inc.*, 984 F. 2d 422, 424 (Fed. Cir. 1993) ("the fact of nonparty

28  status may be considered by the court in weighing the burdens imposed in the

GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP
LAW OFFICES
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

668893

10

EXHIBIT ___8___

PAGE ___167___

1  circumstances"). "[T]he status of the person as a nonparty is a factor that weighs

2  against disclosure." *Beinin v. Center for Study of Popular Culture*, 2007 U.S. Dist.

3  LEXIS 22518, at *16 (N.D. Cal. March 16, 2009).

4       The MGA Parties further object to this Request on the grounds that the

5  Discovery Master already has ruled on similarly phrased requests, including in an

6  Order dated May 7, 2008, concluding that requests using phrases like "all

7  documents," and "referring to or relating to" are overly broad, vague, unduly

8  burdensome, and seek irrelevant information. See May 7, 2008 Infante Order.

9       The MGA Parties further object to this Request on the grounds that it is

10 overbroad and seeks documents neither relevant to the subject matter of the pending

11 litigation nor reasonably calculated to lead to the discovery of admissible evidence.

12 *Mattel Inc. v. Walking Mountain Productions*, 353 F. 3d 792, 813 (9th Cir. 2003)

13 (subpoena is "way too broad" when drafted without any attempt "to try to tailor the

14 information request to the immediate needs of the case").

15      The MGA Parties further object to this Request to the extent that it seeks

16 highly private, confidential, proprietary or otherwise commercially sensitive

17 information and/or trade secrets of the MGA Parties and/or third parties.

18 **REQUEST FOR PRODUCTION NO. 8**

19      All documents that you prepared or that were prepared on your behalf at any

20 time prior to February 17, 2003 either for the benefit of MGA or Isaac Larian, or that

21 were provided to or shared with MGA or Isaac Larian.

22 **RESPONSE TO REQUEST FOR PRODUCTION NO. 8**

23      In addition to the General Objections, which are incorporated herein by

24 reference, the MGA Parties object to this Request on the ground that it is unduly

25 burdensome. Fed. R. Civ. Proc. 45(c)(2)(B). Courts have interpreted the Federal

26 Rules of Civil Procedure to afford non-parties, like Ms. Salemnia, special protections

27 against burdensome discovery. *Exxon Shipping Co. v. U.S. Dept. of Interior*, 34 F.3d

28 774, 779 (9th Cir. 1994) ("The Federal Rules also afford nonparties special protection

668893

GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP
LAW OFFICES
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
Los Angeles, California 90067
310-553-3000

11

EXHIBIT __8__

PAGE __168__

1  against the time and expense of complying with subpoenas"); *Katz v. Batvia Marine*

2  *and Sporting Supplies, Inc.*, 984 F. 2d 422, 424 (Fed. Cir. 1993) ("the fact of nonparty

3  status may be considered by the court in weighing the burdens imposed in the

4  circumstances"). "[T]he status of the person as a nonparty is a factor that weighs

5  against disclosure." *Beinin v. Center for Study of Popular Culture*, 2007 U.S. Dist.

6  LEXIS 22518, at *16 (N.D. Cal. March 16, 2009).

7        The MGA Parties further object to this Request on the grounds that the

8  Discovery Master already has ruled on similarly phrased requests, including in an

9  Order dated May 7, 2008, concluding that requests using phrases like "all

10  documents," and "referring to or relating to" are overly broad, vague, unduly

11  burdensome, and seek irrelevant information. See May 7, 2008 Infante Order.

12        The MGA Parties further object to this Request on the grounds that it is

13  overbroad and seeks documents neither relevant to the subject matter of the pending

14  litigation nor reasonably calculated to lead to the discovery of admissible evidence.

15  *Mattel Inc. v. Walking Mountain Productions*, 353 F. 3d 792, 813 (9th Cir. 2003)

16  (subpoena is "way too broad" when drafted without any attempt "to try to tailor the

17  information request to the immediate needs of the case").

18        The MGA Parties further object to this Request to the extent that it seeks

19  highly private, confidential, proprietary or otherwise commercially sensitive

20  information and/or trade secrets of the MGA Parties and/or third parties.

21        The MGA Parties further object to this Request on the grounds that it is vague

22  and ambiguous in its use of the phrase "for the benefit of MGA or Isaac Larian."

23  **REQUEST FOR PRODUCTION NO. 9**

24        All documents authored by a Mattel employee or for Mattel's benefit.

25  **RESPONSE TO REQUEST FOR PRODUCTION NO. 9**

26        In addition to the General Objections, which are incorporated herein by

27  reference, the MGA Parties object to this Request on the ground that it is unduly

28  burdensome. Fed. R. Civ. Proc. 45(c)(2)(B).  Courts have interpreted the Federal

668893

MGA PARTIES' OBJECTIONS TO SUBPOENA ISSUED TO SHIRIN SALEMNIA

EXHIBIT 8

PAGE 169

1    Rules of Civil Procedure to afford non-parties, like Ms. Salemnia, special protections

2    against burdensome discovery. *Exxon Shipping Co. v. U.S. Dept. of Interior*, 34 F.3d

3    774, 779 (9th Cir. 1994) ("The Federal Rules also afford nonparties special protection

4    against the time and expense of complying with subpoenas"); *Katz v. Batvia Marine*

5    *and Sporting Supplies, Inc.*, 984 F. 2d 422, 424 (Fed. Cir. 1993) ("the fact of nonparty

6    status may be considered by the court in weighing the burdens imposed in the

7    circumstances"). "[T]he status of the person as a nonparty is a factor that weighs

8    against disclosure." *Beinin v. Center for Study of Popular Culture*, 2007 U.S. Dist.

9    LEXIS 22518, at *16 (N.D. Cal. March 16, 2009).

10        The MGA Parties further object to this Request on the grounds that the

11   Discovery Master already has ruled on similarly phrased requests, including in an

12   Order dated May 7, 2008, concluding that requests using phrases like "all

13   documents," and "referring to or relating to" are overly broad, vague, unduly

14   burdensome, and seek irrelevant information.  *See* May 7, 2008 Infante Order.

15        The MGA Parties further object to this Request on the grounds that it is

16   overbroad and seeks documents neither relevant to the subject matter of the pending

17   litigation nor reasonably calculated to lead to the discovery of admissible evidence.

18   *Mattel Inc. v. Walking Mountain Productions*, 353 F. 3d 792, 813 (9th Cir. 2003)

19   (subpoena is "way too broad" when drafted without any attempt "to try to tailor the

20   information request to the immediate needs of the case").

21        The MGA Parties further object to this Request on the grounds that it is vague

22   and ambiguous in its use of the phrase "for Mattel's benefit."

23   **REQUEST FOR PRODUCTION NO. 10**

24        All documents that refer or relate to any Mattel line list or any other Mattel

25   forecasting or planning document.

26   **RESPONSE TO REQUEST FOR PRODUCTION NO. 10**

27        In addition to the General Objections, which are incorporated herein by

28   reference, the MGA Parties object to this Request on the ground that it is unduly

668893

EXHIBIT ___8___

PAGE ___170___

1  burdensome. Fed. R. Civ. Proc. 45(c)(2)(B). Courts have interpreted the Federal

2  Rules of Civil Procedure to afford non-parties, like Ms. Salemnia, special protections

3  against burdensome discovery. *Exxon Shipping Co. v. U.S. Dept. of Interior*, 34 F.3d

4  774, 779 (9th Cir. 1994) ("The Federal Rules also afford nonparties special protection

5  against the time and expense of complying with subpoenas"); *Katz v. Batvia Marine*

6  *and Sporting Supplies, Inc.*, 984 F. 2d 422, 424 (Fed. Cir. 1993) ("the fact of nonparty

7  status may be considered by the court in weighing the burdens imposed in the

8  circumstances"). "[T]he status of the person as a nonparty is a factor that weighs

9  against disclosure." *Beinin v. Center for Study of Popular Culture*, 2007 U.S. Dist.

10  LEXIS 22518, at *16 (N.D. Cal. March 16, 2009).

11      The MGA Parties further object to this Request on the grounds that the

12  Discovery Master already has ruled on similarly phrased requests, including in an

13  Order dated May 7, 2008, concluding that requests using phrases like "all

14  documents," and "referring to or relating to" are overly broad, vague, unduly

15  burdensome, and seek irrelevant information. See May 7, 2008 Infante Order.

16  The MGA Parties further object to this Request on the grounds that it is overbroad

17  and seeks documents neither relevant to the subject matter of the pending litigation

18  nor reasonably calculated to lead to the discovery of admissible evidence. *Mattel Inc.*

19  *v. Walking Mountain Productions*, 353 F. 3d 792, 813 (9th Cir. 2003) (subpoena is

20  "way too broad" when drafted without any attempt "to try to tailor the information

21  request to the immediate needs of the case").

22  **REQUEST FOR PRODUCTION NO. 11**

23      All documents that refer or relate to your work for Mattel including without

24  limitation all documents that refer or relate to your departure therefrom and to your

25  agreements with Mattel.

26  **RESPONSE TO REQUEST FOR PRODUCTION NO. 11**

27      In addition to the General Objections, which are incorporated herein by

28  reference, the MGA Parties object to this Request on the ground that it is unduly

688883

1   burdensome.  Fed. R. Civ. Proc. 45(c)(2)(B).  Courts have interpreted the Federal

2   Rules of Civil Procedure to afford non-parties, like Ms. Salemnia, special protections

3   against burdensome discovery.  *Exxon Shipping Co. v. U.S. Dept. of Interior*, 34 F.3d

4   774, 779 (9th Cir. 1994) ("The Federal Rules also afford nonparties special protection

5   against the time and expense of complying with subpoenas"); *Katz v. Batvia Marine*

6   *and Sporting Supplies, Inc.*, 984 F. 2d 422, 424 (Fed. Cir. 1993) ("the fact of nonparty

7   status may be considered by the court in weighing the burdens imposed in the

8   circumstances").  "[T]he status of the person as a nonparty is a factor that weighs

9   against disclosure."  *Beinin v. Center for Study of Popular Culture*, 2007 U.S. Dist.

10  LEXIS 22518, at *16 (N.D. Cal. March 16, 2009).

11       The MGA Parties further object to this Request on the grounds that the

12  Discovery Master already has ruled on similarly phrased requests, including in an

13  Order dated May 7, 2008, concluding that requests using phrases like "all

14  documents," and "referring to or relating to" are overly broad, vague, unduly

15  burdensome, and seek irrelevant information.  See May 7, 2008 Infante Order.

16       The MGA Parties further object to this Request on the grounds that it is

17  overbroad and seeks documents neither relevant to the subject matter of the pending

18  litigation nor reasonably calculated to lead to the discovery of admissible evidence.

19  *Mattel Inc. v. Walking Mountain Productions*, 353 F. 3d 792, 813 (9th Cir. 2003)

20  (subpoena is "way too broad" when drafted without any attempt "to try to tailor the

21  information request to the immediate needs of the case").

22       The MGA Parties further object to the Request to the extent it violates the

23  privacy rights of third parties to their private, confidential, proprietary or trade secret

24  information.

25  **REQUEST FOR PRODUCTION NO. 12**

26       All documents prior to February 17, 2003 that refer or relate to your work or

27  potential work for, or employment or potential employment with, MGA.

28

668893

LAW OFFICES
GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

EXHIBIT ___8___

PAGE ___172___

1  **RESPONSE TO REQUEST FOR PRODUCTION NO. 12**

2       In addition to the General Objections, which are incorporated herein by

3  reference, the MGA Parties object to this Request on the ground that it is unduly

4  burdensome. Fed. R. Civ. Proc. 45(c)(2)(B). Courts have interpreted the Federal

5  Rules of Civil Procedure to afford non-parties, like Ms. Salemnia, special protections

6  against burdensome discovery. *Exxon Shipping Co. v. U.S. Dept. of Interior*, 34 F.3d

7  774, 779 (9th Cir. 1994) ("The Federal Rules also afford nonparties special protection

8  against the time and expense of complying with subpoenas"); *Katz v. Batvia Marine*

9  *and Sporting Supplies, Inc.*, 984 F. 2d 422, 424 (Fed. Cir. 1993) ("the fact of nonparty

10  status may be considered by the court in weighing the burdens imposed in the

11  circumstances"). "[T]he status of the person as a nonparty is a factor that weighs

12  against disclosure." *Beinin v. Center for Study of Popular Culture*, 2007 U.S. Dist.

13  LEXIS 22518, at *16 (N.D. Cal. March 16, 2009).

14       The MGA Parties further object to this Request on the grounds that the

15  Discovery Master already has ruled on similarly phrased requests, including in an

16  Order dated May 7, 2008, concluding that requests using phrases like "all

17  documents," and "referring to or relating to" are overly broad, vague, unduly

18  burdensome, and seek irrelevant information. See May 7, 2008 Infante Order.

19       The MGA Parties further object to this Request on the grounds that it is

20  overbroad and seeks documents neither relevant to the subject matter of the pending

21  litigation nor reasonably calculated to lead to the discovery of admissible evidence.

22  *Mattel Inc. v. Walking Mountain Productions*, 353 F. 3d 792, 813 (9th Cir. 2003)

23  (subpoena is "way too broad" when drafted without any attempt "to try to tailor the

24  information request to the immediate needs of the case").

25       The MGA Parties further object to this Request to the extent that it seeks

26  highly private, confidential, proprietary or otherwise commercially sensitive

27  information and/or trade secrets of the MGA Parties and/or third parties.

28

868893

LAW OFFICES
GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

MGA PARTIES' OBJECTIONS TO SUBPOENA ISSUED TO SHIRIN SALEMNIA

EXHIBIT __8__

PAGE __173__

1  ## REQUEST FOR PRODUCTION NO. 13

2      All documents that refer or relate to any document or information given by you

3  to MGA prior to February 17, 2003 or received by you from MGA prior to February

4  17, 2003.

5  ## RESPONSE TO REQUEST FOR PRODUCTION NO. 13

6      In addition to the General Objections, which are incorporated herein by

7  reference, the MGA Parties object to this Request on the ground that it is unduly

8  burdensome. Fed. R. Civ. Proc. 45(c)(2)(B). Courts have interpreted the Federal

9  Rules of Civil Procedure to afford non-parties, like Ms. Salemnia, special protections

10 against burdensome discovery. *Exxon Shipping Co. v. U.S. Dept. of Interior*, 34 F.3d

11 774, 779 (9th Cir. 1994) ("The Federal Rules also afford nonparties special protection

12 against the time and expense of complying with subpoenas"); *Katz v. Batvia Marine*

13 *and Sporting Supplies, Inc.*, 984 F. 2d 422, 424 (Fed. Cir. 1993) ("the fact of nonparty

14 status may be considered by the court in weighing the burdens imposed in the

15 circumstances"). "[T]he status of the person as a nonparty is a factor that weighs

16 against disclosure." *Beinin v. Center for Study of Popular Culture*, 2007 U.S. Dist.

17 LEXIS 22518, at *16 (N.D. Cal. March 16, 2009).

18      The MGA Parties further object to this Request on the grounds that the

19 Discovery Master already has ruled on similarly phrased requests, including in an

20 Order dated May 7, 2008, concluding that requests using phrases like "all

21 documents," and "referring to or relating to" are overly broad, vague, unduly

22 burdensome, and seek irrelevant information. See May 7, 2008 Infante Order.

23      The MGA Parties further object to this Request on the grounds that it is

24 overbroad and seeks documents neither relevant to the subject matter of the pending

25 litigation nor reasonably calculated to lead to the discovery of admissible evidence.

26 *Mattel Inc. v. Walking Mountain Productions*, 353 F. 3d 792, 813 (9th Cir. 2003)

27 (subpoena is "way too broad" when drafted without any attempt "to try to tailor the

28 information request to the immediate needs of the case").

668893

LAW OFFICES
GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP
10250 Constellation Boulevard
Nineteenth Floor
Los Angeles, California 90067
310-553-3000

17

EXHIBIT ___8___

PAGE ___174___

1   The MGA Parties further object to this Request to the extent that it seeks

2 highly private, confidential, proprietary or otherwise commercially sensitive

3 information and/or trade secrets of the MGA Parties and/or third parties.

4 **REQUEST FOR PRODUCTION NO. 14**

5   All documents that refer or relate to any agreements or contracts between you

6 and MGA, including all drafts thereof.

7 **RESPONSE TO REQUEST FOR PRODUCTION NO. 14**

8   In addition to the General Objections, which are incorporated herein by

9 reference, the MGA Parties object to this Request on the ground that it is unduly

10 burdensome. Fed. R. Civ. Proc. 45(c)(2)(B). Courts have interpreted the Federal

11 Rules of Civil Procedure to afford non-parties, like Ms. Salemnia, special protections

12 against burdensome discovery. *Exxon Shipping Co. v. U.S. Dept. of Interior*, 34 F.3d

13 774, 779 (9th Cir. 1994) ("The Federal Rules also afford nonparties special protection

14 against the time and expense of complying with subpoenas"); *Katz v. Batvia Marine*

15 *and Sporting Supplies, Inc.*, 984 F. 2d 422, 424 (Fed. Cir. 1993) ("the fact of nonparty

16 status may be considered by the court in weighing the burdens imposed in the

17 circumstances"). "[T]he status of the person as a nonparty is a factor that weighs

18 against disclosure." *Beinin v. Center for Study of Popular Culture*, 2007 U.S. Dist.

19 LEXIS 22518, at *16 (N.D. Cal. March 16, 2009).

20   The MGA Parties further object to this Request on the grounds that the

21 Discovery Master already has ruled on similarly phrased requests, including in an

22 Order dated May 7, 2008, concluding that requests using phrases like "all

23 documents," and "referring to or relating to" are overly broad, vague, unduly

24 burdensome, and seek irrelevant information. See May 7, 2008 Infante Order.

25   The MGA Parties further object to this Request on the grounds that it is

26 overbroad and seeks documents neither relevant to the subject matter of the pending

27 litigation nor reasonably calculated to lead to the discovery of admissible evidence.

28 *Mattel Inc. v. Walking Mountain Productions*, 353 F. 3d 792, 813 (9th Cir. 2003)

668893

LAW OFFICES
GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

18

EXHIBIT __8__
PAGE __175__

1  (subpoena is "way too broad" when drafted without any attempt "to try to tailor the

2  information request to the immediate needs of the case").

3       The MGA Parties further object to this Request to the extent that it seeks

4  highly private, confidential, proprietary or otherwise commercially sensitive

5  information and/or trade secrets of the MGA Parties and/or third parties.

6  **REQUEST FOR PRODUCTION NO. 15**

7       Documents sufficient to show each of your job titles and job duties in each

8  position you have held while working for or employed by MGA.

9  **RESPONSE TO REQUEST FOR PRODUCTION NO. 15**

10      In addition to the General Objections, which are incorporated herein by

11  reference, the MGA Parties object to this Request on the ground that it is unduly

12  burdensome. Fed. R. Civ. Proc. 45(c)(2)(B). Courts have interpreted the Federal

13  Rules of Civil Procedure to afford non-parties, like Ms. Salemnia, special protections

14  against burdensome discovery. *Exxon Shipping Co. v. U.S. Dept. of Interior*, 34 F.3d

15  774, 779 (9th Cir. 1994) ("The Federal Rules also afford nonparties special protection

16  against the time and expense of complying with subpoenas"); *Katz v. Batvia Marine*

17  *and Sporting Supplies, Inc.*, 984 F. 2d 422, 424 (Fed. Cir. 1993) ("the fact of nonparty

18  status may be considered by the court in weighing the burdens imposed in the

19  circumstances"). "[T]he status of the person as a nonparty is a factor that weighs

20  against disclosure." *Beinin v. Center for Study of Popular Culture*, 2007 U.S. Dist.

21  LEXIS 22518, at *16 (N.D. Cal. March 16, 2009).

22      The MGA Parties further object to this Request on the grounds that it is

23  overbroad and seeks documents neither relevant to the subject matter of the pending

24  litigation nor reasonably calculated to lead to the discovery of admissible evidence.

25  *Mattel Inc. v. Walking Mountain Productions*, 353 F. 3d 792, 813 (9th Cir. 2003)

26  (subpoena is "way too broad" when drafted without any attempt "to try to tailor the

27  information request to the immediate needs of the case").

28

668893

EXHIBIT  8
PAGE  176

1    The MGA Parties further object to this Request to the extent that it seeks

2  highly private, confidential, proprietary or otherwise commercially sensitive

3  information and/or trade secrets of the MGA Parties and/or third parties.

4  **REQUEST FOR PRODUCTION NO. 16**

5    All documents that refer or relate to your departure, termination or resignation

6  from MGA, including without limitation all documents that refer or relate to any

7  severance, money or other item(s) of value you have received from, or have been

8  offered or promised by, MGA upon or after your termination of employment with

9  MGA.

10  **RESPONSE TO REQUEST FOR PRODUCTION NO. 16**

11    In addition to the General Objections, which are incorporated herein by

12  reference, the MGA Parties object to this Request on the ground that it is unduly

13  burdensome. Fed. R. Civ. Proc. 45(c)(2)(B). Courts have interpreted the Federal

14  Rules of Civil Procedure to afford non-parties, like Ms. Salemnia, special protections

15  against burdensome discovery. *Exxon Shipping Co. v. U.S. Dept. of Interior*, 34 F.3d

16  774, 779 (9th Cir. 1994) ("The Federal Rules also afford nonparties special protection

17  against the time and expense of complying with subpoenas"); *Katz v. Batvia Marine*

18  *and Sporting Supplies, Inc.*, 984 F. 2d 422, 424 (Fed. Cir. 1993) ("the fact of nonparty

19  status may be considered by the court in weighing the burdens imposed in the

20  circumstances"). "[T]he status of the person as a nonparty is a factor that weighs

21  against disclosure." *Beinin v. Center for Study of Popular Culture*, 2007 U.S. Dist.

22  LEXIS 22518, at *16 (N.D. Cal. March 16, 2009).

23    The MGA Parties further object to this Request on the grounds that the

24  Discovery Master already has ruled on similarly phrased requests, including in an

25  Order dated May 7, 2008, concluding that requests using phrases like "all

26  documents," and "referring to or relating to" are overly broad, vague, unduly

27  burdensome, and seek irrelevant information. *See* May 7, 2008 Infante Order.

28

668893

LAW OFFICES
GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

MGA PARTIES' OBJECTIONS TO SUBPOENA ISSUED TO SHIRIN SALEMNIA

EXHIBIT  8

PAGE  177

1    The MGA Parties further object to this Request on the grounds that it is

2  overbroad and seeks documents neither relevant to the subject matter of the pending

3  litigation nor reasonably calculated to lead to the discovery of admissible evidence.

4  *Mattel Inc. v. Walking Mountain Productions*, 353 F. 3d 792, 813 (9th Cir. 2003)

5  (subpoena is "way too broad" when drafted without any attempt "to try to tailor the

6  information request to the immediate needs of the case").

7    The MGA Parties further object to this Request to the extent that it seeks

8  highly private, confidential, proprietary or otherwise commercially sensitive

9  information and/or trade secrets of the MGA Parties and/or third parties.

10    The MGA Parties further object to this Request to the extent that it seeks

11  information that is protected by the right to privacy. Federal courts recognize a·

12  constitutionally based right of privacy that can be raised in response to discovery

13  requests. *Elena Del Campo v. American Corrective Counseling Services, Inc.*, 2008

14  WL 3978079 (N.D. Cal. Aug. 26, 2008) (denying motion to compel production of

15· documents based on party's right to privacy). Private financial records are entitled to

16  such privacy protections. *Ryan v. Editions Ltd. West, Inc.*, 2007 WL 2348724, *3

17  (N.D. Cal. Aug. 14, 2007) ("federal courts generally treat financial information as·

18  private").

19  **REQUEST FOR PRODUCTION NO. 17**

20    All documents that refer or relate to your or MGA's recruitment of any Mattel

21  employee or any Mattel employee's employment or potential employment with.

22  MGA.

23  **RESPONSE TO REQUEST FOR PRODUCTION NO. 17**

24    In addition to the General Objections, which are incorporated herein by

25  reference, the MGA Parties object to this Request on the ground that it is unduly

26  burdensome. Fed. R. Civ. Proc. 45(c)(2)(B). Courts have interpreted the Federal

27  Rules of Civil Procedure to afford non-parties, like Ms. Salemnia, special protections

28  against burdensome discovery. *Exxon Shipping Co. v. U.S. Dept. of Interior*, 34 F.3d

668693

LAW OFFICES
GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

21

EXHIBIT __8__

PAGE __178__

1   774, 779 (9th Cir. 1994) ("The Federal Rules also afford nonparties special protection

2   against the time and expense of complying with subpoenas"); *Katz v. Batvia Marine*

3   *and Sporting Supplies, Inc.*, 984 F. 2d 422, 424 (Fed. Cir. 1993) ("the fact of nonparty

4   status may be considered by the court in weighing the burdens imposed in the

5   circumstances"). "[T]he status of the person as a nonparty is a factor that weighs

6   against disclosure." *Beinin v. Center for Study of Popular Culture*, 2007 U.S. Dist.

7   LEXIS 22518, at *16 (N.D. Cal. March 16, 2009).

8           The MGA Parties further object to this Request on the grounds that the

9   Discovery Master already has ruled on similarly phrased requests, including in an

10   Order dated May 7, 2008, concluding that requests using phrases like "all

11   documents," and "referring to or relating to" are overly broad, vague, unduly

12   burdensome, and seek irrelevant information. See May 7, 2008 Infante Order.

13          The MGA Parties further object to this Request on the grounds that it is

14   overbroad and seeks documents neither relevant to the subject matter of the pending

15   litigation nor reasonably calculated to lead to the discovery of admissible evidence.

16   *Mattel Inc. v. Walking Mountain Productions*, 353 F. 3d 792, 813 (9th Cir. 2003)

17   (subpoena is "way too broad" when drafted without any attempt to try to tailor the

18   information request to the immediate needs of the case").

19          The MGA Parties further object to this Request to the extent that it seeks

20   highly private, confidential, proprietary or otherwise commercially sensitive

21   information and/or trade secrets of the MGA Parties and/or third parties.

22   **REQUEST FOR PRODUCTION NO. 18**

23          Documents sufficient to show your relationship to Isaac Larian or any family

24   member of Isaac Larian prior to February 17, 2003. As used in these Requests,

25   "family members" of Isaac Larian include without limitation Farhad Larian, Angela

26   Larian (formerly Neman), Leon Neman, or any other member of the Larian or Neman

27   families or any entities or businesses that any of the foregoing own, have an interest

28   in or control.

668893

GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP
LAW OFFICES
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

EXHIBIT __8__
PAGE __179__

1    **RESPONSE TO REQUEST FOR PRODUCTION NO. 18**

2       In addition to the General Objections, which are incorporated herein by

3   reference, the MGA Parties object to this Request on the ground that it is unduly

4   burdensome. Fed. R. Civ. Proc. 45(c)(2)(B). Courts have interpreted the Federal

5   Rules of Civil Procedure to afford non-parties, like Ms. Salemnia, special protections

6   against burdensome discovery. *Exxon Shipping Co. v. U.S. Dept. of Interior*, 34 F.3d

7   774, 779 (9th Cir. 1994) ("The Federal Rules also afford nonparties special protection

8   against the time and expense of complying with subpoenas"); *Katz v. Batvia Marine*

9   *and Sporting Supplies, Inc.*, 984 F. 2d 422, 424 (Fed. Cir. 1993) ("the fact of nonparty

10  status may be considered by the court in weighing the burdens imposed in the

11  circumstances"). "[T]he status of the person as a nonparty is a factor that weighs

12  against disclosure." *Beinin v. Center for Study of Popular Culture*, 2007 U.S. Dist.

13  LEXIS 22518, at *16 (N.D. Cal. March 16, 2009).

14      The MGA Parties further object to this Request on the grounds that it is

15  overbroad and seeks documents neither relevant to the subject matter of the pending

16  litigation nor reasonably calculated to lead to the discovery of admissible evidence.

17  *Mattel Inc. v. Walking Mountain Productions*, 353 F. 3d 792, 813 (9th Cir. 2003)

18  (subpoena is "way too broad" when drafted without any attempt "to try to tailor the

19  information request to the immediate needs of the case").

20      The MGA Parties further object to the Request to the extent it violates the

21  privacy rights of third parties to their private, confidential, proprietary or trade secret

22  information.

23  **REQUEST FOR PRODUCTION NO. 19**

24      All communications that refer or relate to the retention, destruction, alteration

25  or concealment of documents or digital information between February 17, 2003 and

26  the present.

27  ///

28  ///

668893

LAW OFFICES
GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

MGA PARTIES' OBJECTIONS TO SUBPOENA ISSUED TO SHIRIN SALEMNIA

EXHIBIT __8__

PAGE __180__

1   **RESPONSE TO REQUEST FOR PRODUCTION NO. 19**

2        In addition to the General Objections, which are incorporated herein by

3   reference, the MGA Parties object to this Request on the ground that it is unduly

4   burdensome. Fed. R. Civ. Proc. 45(c)(2)(B). Courts have interpreted the Federal

5   Rules of Civil Procedure to afford non-parties, like Ms. Salemnia, special protections

6   against burdensome discovery. *Exxon Shipping Co. v. U.S. Dept. of Interior*, 34 F.3d

7   774, 779 (9th Cir. 1994) ("The Federal Rules also afford nonparties special protection

8   against the time and expense of complying with subpoenas"); *Katz v. Batvia Marine*

9   *and Sporting Supplies, Inc.*, 984 F. 2d 422, 424 (Fed. Cir. 1993) ("the fact of nonparty

10  status may be considered by the court in weighing the burdens imposed in the

11  circumstances"). "[T]he status of the person as a nonparty is a factor that weighs

12  against disclosure." *Beinin v. Center for Study of Popular Culture*, 2007 U.S. Dist.

13  LEXIS 22518, at *16 (N.D. Cal. March 16, 2009).

14        The MGA Parties further object to this Request on the grounds that the

15  Discovery Master already has ruled on similarly phrased requests, including in an

16  Order dated May 7, 2008, concluding that requests using phrases like "all

17  documents," and "referring to or relating to" are overly broad, vague, unduly

18  burdensome, and seek irrelevant information. See May 7, 2008 Infante Order.

19        The MGA Parties further object to this Request on the grounds that it is

20  overbroad and seeks documents neither relevant to the subject matter of the pending

21  litigation nor reasonably calculated to lead to the discovery of admissible evidence.

22  *Mattel Inc. v. Walking Mountain Productions*, 353 F. 3d 792, 813 (9th Cir. 2003)

23  (subpoena is "way too broad" when drafted without any attempt "to try to tailor the

24  information request to the immediate needs of the case").

25        The MGA Parties further object to this Request to the extent that it seeks

26  highly private, confidential, proprietary or otherwise commercially sensitive

27  information and/or trade secrets of the MGA Parties and/or third parties.

28

668893

EXHIBIT   8
PAGE   181

1 **REQUEST FOR PRODUCTION NO. 20**

2       An electronic copy of each document, including with its metadata, that you

3 have produced in this action, or that is responsive to these Requests, that is or was

4 created, prepared, generated, maintained or transmitted in digital form.

5 **RESPONSE TO REQUEST FOR REQUEST NO. 20**

6       In addition to the General Objections, which are incorporated herein by

7 reference, the MGA Parties object to this Request on the ground that it is unduly

8 burdensome.  Fed. R. Civ. Proc. 45(c)(2)(B).  Courts have interpreted the Federal

9 Rules of Civil Procedure to afford non-parties, like Ms. Salemnia, special protections

10 against burdensome discovery. *Exxon Shipping Co. v. U.S. Dept. of Interior*, 34 F.3d

11 774, 779 (9th Cir. 1994) ("The Federal Rules also afford nonparties special protection

12 against the time and expense of complying with subpoenas"); *Katz v. Batvia Marine*

13 *and Sporting Supplies, Inc.*, 984 F. 2d 422, 424 (Fed. Cir. 1993) ("the fact of nonparty

14 status may be considered by the court in weighing the burdens imposed in the

15 circumstances").  "[T]he status of the person as a nonparty is a factor that weighs

16 against disclosure." *Beinin v. Center for Study of Popular Culture*, 2007 U.S. Dist.

17 LEXIS 22518, at *16 (N.D. Cal. March 16, 2009).

18       The MGA Parties further object to this Request on the grounds that it is

19 overbroad and seeks documents neither relevant to the subject matter of the pending

20 litigation nor reasonably calculated to lead to the discovery of admissible evidence.

21 *Mattel Inc. v. Walking Mountain Productions*, 353 F. 3d 792, 813 (9th Cir. 2003)

22 (subpoena is "way too broad" when drafted without any attempt "to try to tailor the

23 information request to the immediate needs of the case").

24       The MGA Parties further object to this Request to the extent that it seeks

25 highly private, confidential, proprietary or otherwise commercially sensitive

26 information and/or trade secrets of the MGA Parties and/or third parties.

27 ///

28 ///

668893

25

MGA PARTIES' OBJECTIONS TO SUBPOENA ISSUED TO SHIRIN SALEMNIA

EXHIBIT 8
PAGE 182

1   **REQUEST FOR PRODUCTION NO. 21**

2       All documents that refer or relate to litigation between Mattel and MGA,

3   including without limitation any communications between you and MGA relating

4   thereto since your departure from MGA.

5   **RESPONSE TO REQUEST FOR PRODUCTION NO. 21**

6       In addition to the General Objections, which are incorporated herein by

7   reference, the MGA Parties object to this Request on the ground that it is unduly

8   burdensome. Fed. R. Civ. Proc. 45(c)(2)(B). Courts have interpreted the Federal

9   Rules of Civil Procedure to afford non-parties, like Ms. Salemnia, special protections

10  against burdensome discovery. *Exxon Shipping Co. v. U.S. Dept. of Interior*, 34 F.3d

11  774, 779 (9th Cir. 1994) ("The Federal Rules also afford nonparties special protection

12  against the time and expense of complying with subpoenas"); *Katz v. Batvia Marine*

13  *and Sporting Supplies, Inc.*, 984 F. 2d 422, 424 (Fed. Cir. 1993) ("the fact of nonparty

14  status may be considered by the court in weighing the burdens imposed in the

15  circumstances"). "[T]he status of the person as a nonparty is a factor that weighs

16  against disclosure." *Beinin v. Center for Study of Popular Culture*, 2007 U.S. Dist.

17  LEXIS 22518, at *16 (N.D. Cal. March 16, 2009).

18      The MGA Parties further object to this Request on the grounds that the

19  Discovery Master already has ruled on similarly phrased requests, including in an

20  Order dated May 7, 2008, concluding that requests using phrases like "all

21  documents," and "referring to or relating to" are overly broad, vague, unduly

22  burdensome, and seek irrelevant information. See May 7, 2008 Infante Order.

23      The MGA Parties further object to this Request on the grounds that it is

24  overbroad and seeks documents neither relevant to the subject matter of the pending

25  litigation nor reasonably calculated to lead to the discovery of admissible evidence.

26  *Mattel Inc. v. Walking Mountain Productions*, 353 F. 3d 792, 813 (9th Cir. 2003)

27  (subpoena is "way too broad" when drafted without any attempt "to try to tailor the

28  information request to the immediate needs of the case").

668893

MGA PARTIES' OBJECTIONS TO SUBPOENA ISSUED TO SHIRIN SALEMNIA

EXHIBIT __8__

PAGE __183__

1    The MGA Parties further object to this Request to the extent that it seeks

2  highly private, confidential, proprietary or otherwise commercially sensitive

3  information and/or trade secrets of the MGA Parties and/or third parties.

4  **REQUEST FOR PRODUCTION NO. 22**

5    All documents that refer to relate to legal fees paid, or promised or agreed to be

6  paid, by MGA or any other person on your behalf or for your benefit at any time since

7  February 17, 2003.

8  **RESPONSE TO REQUEST FOR PRODUCTION NO. 22**

9    In addition to the General Objections, which are incorporated herein by

10 reference, the MGA Parties object to this Request on the ground that it is unduly

11 burdensome. Fed. R. Civ. Proc. 45(c)(2)(B). Courts have interpreted the Federal

12 Rules of Civil Procedure to afford non-parties, like Ms. Salemnia, special protections

13 against burdensome discovery. *Exxon Shipping Co. v. U.S. Dept. of Interior*, 34 F.3d

14 774, 779 (9th Cir. 1994) ("The Federal Rules also afford nonparties special protection

15 against the time and expense of complying with subpoenas"); *Katz v. Batvia Marine*

16 *and Sporting Supplies, Inc.*, 984 F. 2d 422, 424 (Fed. Cir. 1993) ("the fact of nonparty

17 status may be considered by the court in weighing the burdens imposed in the

18 circumstances"). "[T]he status of the person as a nonparty is a factor that weighs

19 against disclosure." *Beinin v. Center for Study of Popular Culture*, 2007 U.S. Dist.

20 LEXIS 22518, at *16 (N.D. Cal. March 16, 2009).

21    The MGA Parties further object to this Request on the grounds that the

22 Discovery Master already has ruled on similarly phrased requests, including in an

23 Order dated May 7, 2008, concluding that requests using phrases like "all

24 documents," and "referring to or relating to" are overly broad, vague, unduly

25 burdensome, and seek irrelevant information. See May 7, 2008 Infante Order.

26    The MGA Parties further object to this Request on the grounds that it is

27 overbroad and seeks documents neither relevant to the subject matter of the pending

28 litigation nor reasonably calculated to lead to the discovery of admissible evidence.

688893

MGA PARTIES' OBJECTIONS TO SUBPOENA ISSUED TO SHIRIN SALEMNIA

EXHIBIT __8__

PAGE __184__

1 | *Mattel Inc. v. Walking Mountain Productions*, 353 F. 3d 792, 813 (9th Cir. 2003)

2 | (subpoena is "way too broad" when drafted without any attempt "to try to tailor the

3 | information request to the immediate needs of the case").

4 |     The MGA Parties further object to this Request to the extent that it seeks

5 | highly private, confidential, proprietary or otherwise commercially sensitive

6 | information and/or trade secrets of the MGA Parties and/or third parties.

7 |     The MGA Parties further object to this Request to the extent that it seeks

8 | information that is protected by the right to privacy. Federal courts recognize a

9 | constitutionally based right of privacy that can be raised in response to discovery

10 | requests. *Elena Del Campo v. American Corrective Counseling Services, Inc.*, 2008

11 | WL 3978079 (N.D. Cal. Aug. 26, 2008) (denying motion to compel production of

12 | documents based on party's right to privacy). Private financial records are entitled to

13 | such privacy protections. *Ryan v. Editions Ltd. West, Inc.*, 2007 WL 2348724, *3

14 | (N.D. Cal. Aug. 14, 2007) ("federal courts generally treat financial information as

15 | private").

16 |

17 |

18 | Dated: March 11, 2009           Patricia L. Glaser
                              Joel N. Kievens

19 |                               GLASER, WEIL, FINK, JACOBS
                                & SHAPIRO, LLP

20 |

21 |                               Russell J. Frackman
                              MITCHELL, SILBERBERG & KNUPP, LLP

22 |

23 |

24 |                           By:    /s/ Amman A. Khan
                                  Amman A. Khan

25 |                           Attorneys for Defendants, MGA
                          ENTERTAINMENT, INC., ISAAC LARIAN,

26 |                           MGA ENTERTAINMENT (HK) LIMITED,
                          and MGAE de MEXICO S.R.L. de C.V.

27 |

28 |

668893

MGA PARTIES' OBJECTIONS TO SUBPOENA ISSUED TO SHIRIN SALEMNIA

EXHIBIT ___8___

PAGE ___185___

LAW OFFICES
GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

1      **PROOF OF SERVICE**

2    STATE OF CALIFORNIA

3    COUNTY OF LOS ANGELES

4          I am employed in the County of Los Angeles, State of California; I am over the
     age of 18 and not a party to the within action; my business address is 10250
5    Constellation Boulevard, Nineteenth Floor, Los Angeles, California 90067.

6          On March 11, 2009, I served the foregoing document described as:

7    **MGA PARTIES' OBJECTIONS TO MATTEL, INC.'S SUBPOENA ISSUED
     TO SHIRIN SALEMNIA**

8
     on the interested parties to this action by placing a copy thereof enclosed in a sealed
9    envelope addressed as follows:

10              **PLEASE SEE ATTACHED SERVICE LIST**

11   ☐       (BY MAIL)  I am readily familiar with the business practice for
             collection and processing of correspondence for mailing with the
12           United States Postal Service. This correspondence shall be deposited
             with the United States Postal Service this same day in the ordinary
13           course of business at our Firm's office address in Los Angeles,
             California.  Service made pursuant to this paragraph, upon motion of
14           a party served, shall be presumed invalid if the postal cancellation
             date or postage meter date on the envelope is more than one day after
15           the date of deposit for mailing contained in this affidavit.

16   ☐       (BY OVERNIGHT DELIVERY SERVICE)  I served the foregoing
             document by Federal Express, an express service carrier which
17           provides overnight delivery, as follows.  I placed true copies of the
             foregoing document in sealed envelopes or packages designated by
18           the express service carrier, addressed to each interested party as set
             forth above, with fees for overnight delivery paid or provided for.
19
     ☐       (BY PERSONAL SERVICE)  I caused such envelope to be delivered
20           by hand to the offices of the above named addressee.

21   ☒       (BY EMAIL)  I caused such documents to be delivered via email to
             the addressee(s).
22
     ☒       (BY FACSIMILE)  I caused such documents to be delivered via
23           facsimile to the offices of the addressee(s) listed on the attached
             service list.
24
           Executed this 11th day of March, 2009, at Los Angeles, California.
25
           I declare under penalty of perjury under the laws of the State of California that
26   the above is true and correct.

27

28           Lora Anderson

668893

29
**MGA PARTIES' OBJECTIONS TO SUBPOENA ISSUED TO SHIRIN SALEMNIA**

GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP
LAW OFFICES
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

EXHIBIT ___8___
PAGE ___186___

**SERVICE LIST**

1

2

3  Jon D. Corey, Esq.
   (joncorey@quinnemanuel.com)
4  Michael T. Zeller, Esq.
   (michaelzeller@quinnemanuel.com)
5  John Quinn, Esq.
   (johnquinn@quinnemanuel.com)
6  Quinn Emanuel Urquhart Oliver & Hedges, LLP
   865 South Figueroa Street, 10th Floor
   Los Angeles, CA 90017-2543
7  213.443-3000
   213.443-3100 fax
8  **Attorneys for Mattel, Inc.**

9  Russell J. Frackman, Esq.
   (rjf@msk.com)
10 Patricia H. Benson, Esq.
   (phb@msk.com)
11 Mitchell, Silberberg & Knupp, LLP
   11377 W. Olympic Blvd.
12 Los Angeles, CA 90067
   310.312.2000
13 310.312.3100 fax
   **Attorneys for MGA Parties**
14
15 Thomas J. Nolan, Esq.
   (tnolan@skadden.com)
16 Raoul D. Kennedy, Esq.
   (rkennedy@skadden.com)
16 Jason D. Russell, Esq.
17 (Jason.russell@skadden.com)
   Skadden, Arps, Slate, Meagher & Flom LLP
18 300 South Grand Avenue, Suite 3400
   Los Angeles, CA 90071-3144
19 213.687.5000
   213.687.5600 fax
20 **Attorneys for MGA Parties**

21 Mark E. Overland, Esq.
   (moverland@obsklaw.com)
22 Alexander H. Cote, Esq.
   (acote@obsklaw.com)
23 Overland Borenstein Scheper & Kim, LLP
   601 W. 5th Street, 12th Floor
24 Los Angeles, CA 90017
   213.6613.4655
25 213.613.4656 fax
   **Attorneys for Carlos Gustavo, Machado Gomez**

26

27

28

668893

GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP
LAW OFFICES
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

30

EXHIBIT __8__
PAGE __187__

1

## SERVICE LIST

2

3    Todd E. Gordinier, Esq.
     (todd.gordinier@bingham.com)
4    Peter N. Villar, Esq.
5    (peter.villar@bingham.com)
     Jennifer A. Lopez, Esq.
6    (Jennifer.lopez@bingham.com)
7    Bingham McCutchen LLP
     Plaza Tower
8    600 Anton Boulevard, 18th Floor
9    Costa Mesa, CA 92626-1924
     714.830.0622
10   714.380.0717 fax
11   **Attorneys for OMNI 808 Investors, LLC, Vision Capital, LLC**
     **and Omninet Capital, LLC**

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

668893

MGA PARTIES' OBJECTIONS TO SUBPOENA ISSUED TO SHIRIN SALEMNIA

EXHIBIT  8
PAGE  188

# EXHIBIT 9

Mar. 11. 2009  5:37PM    Glaser Weil                                    No. 0754   P. 1/7

LAW OFFICES
GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
〒 MERITAS LAW FIRMS WORLDWIDE

**FAX TRANSMISSION**

TELEPHONE NO.: (310) 553-3000
FACSIMILE NO.:   (310) 556-2920

Number of Pages: 7
(including this page)

FROM:   **Amman Khan**

DATE:   **March 11, 2009**

Client Reference No.:  3460-024

TO:                                      FAX NO.:                    CONFIRMATION NO:

Jon D. Corey, Esq.                       **213.443.3100**            **213.443.3000**

**Quinn Emanuel Urquhart Oliver & Hedges, LLP**

**Sender's Comments:**

**If you have received this Transmission in error, please call:  (310) 553-3000 and mail it to the above address.  Thank you.**

NOTE: THE INFORMATION CONTAINED IN THIS FAX MESSAGE IS INTENDED ONLY FOR THE PERSONAL AND CONFIDENTIAL USE OF THE DESIGNATED RECIPIENTS NAMED ABOVE.  THIS MESSAGE MAY BE AN ATTORNEY-CLIENT COMMUNICATION AND, AS SUCH, IS PRIVILEGED AND CONFIDENTIAL.  IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT YOU HAVE RECEIVED THIS DOCUMENT IN ERROR, AND THAT ANY REVIEW, DISSEMINATION, DISTRIBUTION OR COPYING OF THIS MESSAGE IS STRICTLY PROHIBITED.  IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AND RETURN THE ORIGINAL MESSAGE BY MAIL.  THANK YOU.

EXHIBIT ___9___
PAGE ___189___

LAW OFFICES

## GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP

10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000
FAX (310) 556-2920

DIRECT DIAL NUMBER                    March 11, 2009                    ℍℍ MERITAS LAW FIRMS WORLDWIDE
(310) 556-7866
EMAIL: AKHAN@GLASERWEIL.COM

**VIA E-MAIL AND FACSIMILE**

Jon D. Corey, Esq.
Quinn, Emanuel, Urquhart,
    Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543

      Re:    *Bryant v. Mattel, Inc. and Consolidated Actions*
           U.S.D.C. Eastern Division, Case No. CV04-09049 SJL (RNBx)

Dear Jon:

      This responds to your March 4, 2009 letter concerning MGA's and Isaac Larian's Responses to Mattel's irrelevant and redundant Requests for Documents and Things (Phase 2) Set One [*sic*] (collectively, the "Requests").

      The Requests seek the same information that was the subject of the March 10, 2009 Order regarding Mattel's Motion to Compel Production of Documents Responsive to the subpoenas directed to non-parties at Omni 808 Investors, LLC, Omni Net Capital, LLC, Vision Capital, LLC, IGWT Group, LLC and IGWT 826 Investments, LLC. (*See* Requests 17-36; 39-49.) In that Order, the Discovery Master concluded that "most of the categories of documents in the Subpoenas are overbroad and not reasonably calculated to lead to the discovery of admissible evidence with respect to Phase 2 issues." (3/10/09 Order at 21:23-26.) The Discovery Master also emphasized that Mattel must show "a sufficient nexus between the particular discovery requests and legitimate Phase 2 issues." (3/10/09 Order at 30:26-27.) As set forth below, Mattel has failed to meet its burden set by the Discovery Master and MGA's and Larian's general and specific objections to the Requests are entirely proper.

      In addition, Mattel failed to satisfy its "meet and confer" obligations under both the Federal Rules of Civil Procedure and the Discovery Master Order. (3/10/09 Order at 10:13-14.) In particular, the "moving party shall first identify each dispute, state the relief sought, and identify the authority supporting the requested relief in a meet and confer letter that shall be served on all parties by facsimile or electronic mail." (3/10/09 Order at 10:19-21, citing Discovery Master Order, p. 4.) Indeed, your "meet and confer" letter is premature in light of the March 10, 2009 Order, which relates to and resolves many of the issues set forth in your letter. Your attempt to "meet on confer" on those issues is, at the very least, deficient because your letter fails to identify how Mattel's position with respect to each of the disputed Requests is supported, if at all, by the recent March 10, 2009 Order.

669628

EXHIBIT   **9**
PAGE   **190**

Jon D. Corey, Esq.
March 11, 2009
Page 2


### A.   Mattel's Requests Seek Irrelevant Information

Mattel seeks information that is not relevant to the Phase Two claims or defenses and is thus non-discoverable. Indeed, the Court made clear in its January 7, 2009 Order that Mattel's requested financial discovery *must be related to its Phase 2 claims*. (3/11/09 Order at 15:12-14 ("the Court made clear that the validity of the Subpoenas must be evaluated with reference to whether they relate to the matters to be adjudicated in Phase 2."); *see also* February 11, 2009 Hearing Tr. at 101:1-3 ("The question for the discovery master will be whether or not the disputed discovery request is related or relevant to the trial that has now been scheduled for March or not").) Mattel's Phase 2 claims focus on purported misappropriation of trade secrets by former Mattel employees for the MGA Parties' benefit. (Mattel's Second Amended Answer & Counterclaims, ¶ 20 (summarizing claims), ¶¶ 37-77 (alleging misappropriation of trade secrets and confidential information by former Mattel employees who joined MGA), ¶¶ 78-81 (alleging misrepresentations by MGA to retailers about Mattel). As Mattel must now concede, the discovery Mattel seeks has absolutely no relation to those claims.

In the March 10, 2009 Order, the Discovery Master determined that the financial discovery sought by Mattel is irrelevant to the issues to be adjudicated in Phase 2. With respect to third parties Omni 808 Investors, LLC, OmniNet Capital, LLC and Vision Capital, LLC (collectively referred to as the "Financing Entities" in the March 10, 2009 Order), the Discovery Master found that Mattel has failed to articulate the necessary connection between the discovery sought from the Financing Entities and the Phase 2 issues. (3/10/09 Order at 25:4-11.) Because the information sought by Mattel in connection with OmniNet Capital, LLC and Vision Capital, LLC is not relevant to any of the Phase 2 issues, such information is not discoverable.

With respect to Omni 808 Investors, LLC, the Discovery Master found that "the vast majority of document requests … propounded on Omni 808 Investors, LLC are not narrowly tailored" and would "require the Financing Entities to produce virtually every document in their possession regarding their formation, operations, and history of transactions." (3/10/09 Order at 20:22-21:2.) Mattel's Requests to MGA and Larian in connection with Omni 808 Investors, LLC are similarly objectionable because they are overly broad and not limited to the Phase 2 issues. (*See e.g.*, Request No. 24 ("All documents referring or relating to agreements, contracts or transactions between MGA and Omni 808 Investors, LLC, and any amendments or modifications thereto, and any communications referring or relating to any such agreements, contracts or transactions.").)

With respect to the documents sought from third parties IGWT Group, LLC and IGWT 826 Investments, LLC (collectively referred to as the "Transferee Entities" in the March 10, 2009 Order), the Discovery Master also substantially limited the scope of discoverable information concerning those entities. (3/10/09 Order at 29:15-30:20.) In your "meet and confer" letter, Mattel fails to show that the discovery sought from MGA and Larian regarding those entities is narrowly tailored in any way to the Phase 2 issues. Indeed, Mattel's Requests would require MGA and Larian to produce nearly every document in their possession regarding IGWT Group, LLC's and IGWT 826 Investments, LLC's formation, operations, and history of transactions, without any limitation as to time or subject matter. (*See e.g.*, Requests 17-21, 28-

EXHIBIT ___9___
PAGE __191__

Jon D. Corey, Esq.
March 11, 2009
Page 3

29, 35-36.) Such overly broad and unduly burdensome requests were expressly rejected by the
Discovery Master. (*See* 3/10/09 Order at 20:22-21:2.) Accordingly, Mattel's document requests
must be properly limited to comply with the March 10, 2009 Order.

The Discovery Master also roundly rejected Mattel's arguments that the information
sought is relevant to Mattel's unsubstantiated claims that MGA was "fraudulently transferring
assets," that MGA "put its finances at issue," or that the information was relevant to MGA's
"credibility," "unfair competition" or "unclean hands" (*See* 3/10/09 Order at 20-24). The
Discovery Master found that these arguments did not cure Mattel's failure to draw a sufficient
nexus between the information sought and its Phase 2 claims and your March 4, 2009 letter
suffers the same defects.

Mattel then baselessly argues that the requested documents are relevant to "predicate acts
of criminal copyright infringement." However, criminal copyright infringement requires willful
infringement and the Phase I jury has already ruled that neither MGA, MGA HK, nor Larian
willfully infringed Mattel's copyrights. (17 U.S.C. § 506(a)(1).) Accordingly, this predicate act
is not available in Phase 2 and may not serve as a basis for Mattel's discovery requests.

**B.    The MGA Parties' General Objections to Mattel's Requests Are Entirely Proper**

    **1.    Mattel's Requests Are Overbroad and Unduly Burdensome:**

Mattel contends that MGA's and Larian's objections based on Judge Infante's May 7,
2008 Order are without merit. Mattel is wrong. First, the third-party subpoenas at issue in the
May 7, 2008 Order sought information that is similar to the discovery Mattel now seeks. In
particular, Judge Infante found that Mattel's subpoenas were overly broad in seeking "financial
documents regarding numerous non-parties, including everyone who has ever worked for or
represented MGA or Isaac Larian, and every relative of Isaac Larian." (5/7/08 Order at 11:2-4.)
The discovery at issue here is just as sweeping. For example, Request No. 1 seeks financial
information from not only MGA, but from "any person acting directly or indirectly by, through,
under or on behalf of MGA." This request would include any one who has ever worked for
MGA or acted on its behalf, without any limitation as to time. Moreover, Request No. 15 seeks
"all W-2s referring or relating to any Isaac Larian family member since January 1, 2007."

As Judge Infante previously ruled in connection with similarly broad and burdensome
requests, "the probative value of the information Mattel seeks is substantially outweighed by the
burden of production, especially in light of the privacy interests of the many non-parties who
would be affected." (5/7/08 Order at 11:15-17 (emphasis added).) For those same reasons,
Mattel's Requests here are overly broad and sweeping in vast amounts of documents that have
little to no relevance to the Phase 2 issues. Accordingly, the MGA Parties' overbroad and
burdensome objections are entirely proper. *O'Brien v. Maui County*, 2002 U.S. App. LEXIS
10835, at *273 (9th Cir. May 6, 2002) (holding that district court did not abuse its discretion in
denying motion to compel because document requests were "irrelevant, overbroad and unduly
burdensome"); *Davis v. C/O Kissinger*, 2009 U.S. Dist. LEXIS 2828, at *10 (E.D. Cal. Jan. 8,
2009) (denying motion to compel because defendant properly objected to document requests as

EXHIBIT __9__
PAGE __192__

Jon D. Corey, Esq.
March 11, 2009
Page 4

being overbroad, burdensome and not reasonably calculated to lead to the discovery of admissible evidence).

## 2.   The MGA Parties' Privacy and Confidentiality Objections Are Proper:

The MGA Parties properly object to the Requests to the extent that they violate the privacy rights of third parties to their private, confidential, proprietary or trade secret information. Many of the Requests seek information concerning the non-party entities themselves and not their involvement with the MGA Parties. For example, Mattel asks for "documents sufficient to identify each member, managing member, holder of any ownership interest in, shareholder, officer and director of [the non-party entities]." (See Requests 28-32, 35-36.) Moreover, many of Mattel's Requests are not limited to the MGA Parties and seek "documents referring or relating to agreements, contracts or transactions between [the non-party entities] and MGA *or any other Person*." (See Requests 26-27 (emphasis added).) It is well-established that non-parties are afforded special protections against burdensome discovery. *Exxon Shipping Co. v. U.S. Dept. of Interior*, 34 F.3d 774, 779 (9th Cir. 1994); *Katz v. Batvia Marine and Sporting Supplies, Inc.*, 984 F. 2d 422, 424 (Fed. Cir. 1993) ("the fact of nonparty status may be considered by the court in weighing the burdens imposed in the circumstances"). "[T]he status of the person as a nonparty is a factor that weighs against disclosure." *Beinin v. Center for Study of Popular Culture*, 2007 U.S. Dist. LEXIS 22518, at *16 (N.D. Cal. March 16, 2009).

Moreover, disclosure of the requested documents would constitute an invasion of the third-parties' rights to financial privacy. Federal courts recognize a constitutionally based right of privacy that can be raised in response to discovery requests. *Elena Del Campo v. American Corrective Counseling Services, Inc.*, U.S. Dist. LEXIS 81880 (N.D. Cal. Aug. 26, 2008) (denying motion to compel production of documents based on party's right to privacy). Private financial records are entitled to such privacy protections. *Ryan v. Editions Ltd. West, Inc.*, 2007 U.S. Dist. LEXIS 62725, *8 (N.D. Cal. Aug. 14, 2007) ("federal courts generally treat financial information as private").

Additionally, federal courts have recognized that "a protective order may not always protect a party" from the disclosure of confidential and/or private information. *See Mid Continent Cabinetry, Inc., v. George Koch Sons, Inc.*, 130 F.R.D. 149, 152 (D. Kan. 1990) ("For example, if a plaintiff and defendant were business competitors, disclosure of defendant's financial records to the plaintiff, even with a protective order, could cause the defendant great harm."); *CEH, Inc. v. FV Seafarer*, 153 F.R.D. 491, 499 (D. R.I. 1994) (same). In any event, the disclosure would still be to Mattel's attorneys who have a close and wide-ranging relationship with the company.

For the foregoing reasons, the MGA Parties' objections to the Requests to the extent that they violate the privacy rights of third parties to their private, confidential, proprietary or trade secret information are entirely proper.

EXHIBIT ___9___
PAGE __193__

Jon D. Corey, Esq.
March 11, 2009
Page 5

**3.    MGA and Larian are Only Required to Produce Documents in Their
       Possession, Custody or Control:**

As a matter of law, MGA and Larian are only required to produce records which are in
their "possession, custody or control." Fed. R. Civ. P. 34(a). Many of the documents that Mattel
seeks concern third-parties to this action and are not in MGA or Larian's possession, custody or
control. Mattel has failed to meet its burden to show otherwise. *See United States v.
International Union of Petroleum & Industrial Workers*, 870 F.2d 1450, 1452 (9th Cir. Cal.
1989) ("the party seeking production of the documents ... bears the burden of proving that the
opposing party has such control").

**4.    The MGA Parties' Vague and Ambiguous Objections are Proper:**

The MGA Parties' vague and ambiguous objections are also proper. For example,
Request No. 18 seeks: "All documents referring or relating to the alleged transfer of product
from MGA to IGWT Group, LLC pursuant to the Inventory Purchase Agreement dated July 7,
2008, including without limitation all audits or other valuations performed in connection with
such product, any opinions relating to the fairness or unfairness of such transfer, all MGA
corporate or director resolutions or approvals of such transfer, all bids received or solicited in
connection with the purported sale or offering for sale of such product, the terms of such bids
and any other and all communications relating to any of the foregoing." Mattel, however,
provides no definition whatsoever of the terms "purported sale or offering for sale," "financial
information" or "historical and prospective financial performance." Without clarification of
those terms, and other similarly vague and ambiguous terms identified in the responses, the
MGA Parties will not withdraw their objections to Mattel's Requests.

**5.    The MGA Parties Have Fully Complied with Rule 34**

In their responses, MGA and Larian specifically identify which definition, document or
thing they are objecting to and the reasons for those objections. For example, as noted in your
"meet and confer" letter, MGA and Larian object to Mattel's definition of "Bratz" as "vague,
ambiguous, overly broad and unduly burdensome, and designed to mislead and confuse the trier
of fact" specifically because that definition would include "things that do not fairly represent the
Bratz line of dolls, accessories and related products that are the subject of this case." (General
Objection No. 7.) Accordingly, MGA's and Larian's objections fully comply with Rule 34.

**6.    Mattel is Only Entitled to a Privilege Log (if Necessary) Once the MGA
       Parties' Objections Are Resolved**

To the extent that Mattel's Requests call for the production of relevant information that is
protected by the attorney-client privilege, work-product doctrine or other privilege, and to the
extent that responsive documents exist, the MGA Parties will provide a privilege log of those
documents only after any remaining issues concerning MGA's and Larian's responses have been
resolved and, if necessary, the Discovery Master has ruled on the MGA Parties' objections. *See
United States v. Phillip Morris*, 347 F.3d 951, 954 (D.C. Cir. 2003) ("if a party's pending

EXHIBIT __9__
PAGE __194__

Jon D. Corey, Esq.
March 11, 2009
Page 6

objections apply to allegedly privileged documents, the party need not log the document until the court rules on its objections").

Very truly yours,

Amman Khan
of GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP

AK:la

EXHIBIT 9
PAGE 195