# EXHIBIT 5

Patricia L. Glaser, State Bar No. 055668
Pglaser@glaserweil.com
Joel N. Klevens, State Bar No. 045446
Jklevens@glaserweil.com
GLASER, WEIL, FINK, JACOBS
 & SHAPIRO, LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, California 90067
Telephone:  310-553-3000
Facsimile:  310-556-2920

Russell J. Frackman, State Bar No. 049087
rjf@msk.com
MITCHELL, SILBERBERG & KNUPP, LLP
11377 West Olympic Boulevard
Los Angeles, California 90064
Telephone:  310-312-2000
Facsimile:  310-312-3100

Attorneys for the MGA Parties For Phase Two

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware Corporation<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | Case No. CV 04-9049 SGL (RNBx)<br><br>Consolidated with<br>Case No. 04-09059<br>Case No. 05-02727<br><br>**DISCOVERY MATTER**<br><br>**MGA ENTERTAINMENT, INC. AND ISAAC LARIAN'S OPPOSITION TO MATTEL, INC.'S 2/10/09 MOTION TO COMPEL RESPONSES TO INTERROGATORIES AND PRODUCTION OF DOCUMENTS**<br><br>[Declaration of Amman Khan; Declaration of Brian Wing; Opposition to Separate Statement filed concurrently herewith]<br><br>Date:    To be set<br>Time:    To be set<br>Place:   To be set |

EXHIBIT 5
PAGE 115

MGA PARTIES' OPPOSITION TO MATTEL, INC.'S 2/10/09 MOTION TO COMPEL

667320

TABLE OF CONTENTS

Page

Preliminary Statement.................................................................................................. 2

Argument ..................................................................................................................... 3

I.   MATTEL'S REQUESTS FOR SUPPLEMENTAL FINANCIAL INFORMATION FROM MGA AND LARIAN (RFP NOS. 4-37 AND 40-45 (SECOND SET TO MGA); AND RFP NOS. 207, 208 AND 269 (FIRST SET TO LARIAN)) MUST BE DENIED ........................................................................ 3

    A.   The Motion Violates Local Rule 37-1 Because Mattel Breached Its Own Agreement To Further Meet And Confer ................................................. 3

    B.   The Updated Financial Information Sought Is Beyond The Scope Of Phase 2 Discovery. ..................................................................................... 5

        1.   Request Nos. 4-37 and 40-45 (Second Set) Are Not Relevant To Phase 2. .......................................................................................... 5

        2.   Request Nos. 207, 208 and 269 (First Set) Are Not Relevant to Phase 2. .......................................................................................... 6

II.  MATTEL IS NOT ENTITLED TO A SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 45 (SIXTH SET)............................................................ 7

III. MATTEL IS NOT ENTITLED TO RESPONSES TO SUPPLEMENTAL INTERROGATORY NOS. 56-63 AND 67-69.......................................................... 8

    A.   The Interrogatories Presuppose Facts That Are Not True. ......................... 8

    B.   The Interrogatories Are Unduly Burdensome............................................. 9

    C.   The Interrogatories Are Impermissibly Compound.................................. 10

    D.   The Interrogatories Improperly Ask MGA to Establish A Negative Proposition ................................................................................................ 11

    E.   Interrogatory Nos. 67-69 Are Overly Broad............................................. 12

Conclusion ................................................................................................................. 14

LAW OFFICES
GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

EXHIBIT 5
PAGE 116

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*Banks v. Office of Senate Sergeant-at-Arms*,
    222 F.R.D. 7 (D.D.C. 2004) .......................................................................... 11

*Lawrence v. First Kansas Bank & Trust Co.*,
    169 F.R.D. 657 (D. Kan. 1996) .................................................................... 11

*Safeco of America v. Rawstron*,
    181 F.R.D. 441 (C.D. Cal. 1998) .................................................................. 11

*Tennison v. City & County of San Francisco*,
    226 F.R.D. 615 (N.D. Cal. 2005) .................................................................. 12

*Willingham v. Ashcroft*,
    226 F.R.D. 57 (2005) .................................................................................... 11

## STATE CASES

*Dang v. Cross*,
    2002 WL 432197 (C.D. Cal. 2002) ............................................................... 12

## STATUTES

Federal Rules of Civil Procedure
    26(b)(1) .......................................................................................................... 2
    Rule 33 ......................................................................................................... 11

LAW OFFICES
GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

EXHIBIT 5
PAGE 117

## OPPOSITION TO MATTEL, INC.'S MOTION TO COMPEL

### Preliminary Statement

Mattel, Inc.'s 2/10/09 "Motion to Compel Responses to Interrogatories and Production of Documents By MGA Entertainment, Inc., and Isaac Larian" (the "Motion"), is procedurally improper and substantively without merit.

First, the Discovery Master should not even consider Mattel's Motion to compel MGA and Isaac Larian to provide supplemental financial information pursuant to Request Nos. 4-37 and 40-45 (Second Set to MGA), and Request Nos. 207, 208 and 269 (First Set to Larian) because Mattel ignored its own agreement to meet and confer further about this issue, and blatantly violated Local Rule 37-1 by filing its Motion the day before the parties were supposed to discuss the matter. If Mattel is permitted to flout its meet and confer obligations with impunity, there will be no stopping it from harassing the MGA Parties, and continuing to run up attorneys fees into the stratosphere, by filing discovery motions that might have been avoided.

Even if the Motion as to these discovery requests were procedurally proper (which it is not), it still should be denied as to these requests. The requests seek information related to the sales, revenues and profits of Bratz dolls. This was a Phase 1 issue. The jury has already determined damages related to the Bratz products, and Mattel is not entitled to relitigate that issue or seek double recovery. Revenues and profits derived from the Bratz products have no bearing on any Phase 2 issue. Moreover, Mattel does not even attempt to show how Mr. Larian's gross income and net worth are relevant to Phase 2.

Federal Rule of Civil Procedure 26(b)(1) limits discovery to matters relevant to a party's claim or defense or that are reasonably calculated to lead to the discovery of admissible evidence. The financial information sought by Mattel is relevant only to Phase 1, so Mattel's Motion should be denied. Also, under FRCP 26(b)(2)(C), the Court must limit discovery where the party seeking has had ample opportunity by discovery in the action to obtain the information sought. Mattel admits that it

EXHIBIT 5
PAGE 118

1 obtained all the financial information it sought relevant to Phase 1, thus there is no
2 basis for requiring Larian or MGA to provide updated financial information.

3     For the same reason (lack of relevance to Phase 2), MGA should not be
4 required to provide supplemental information identifying each Bratz product that
5 MGA or MGA's licensees have sold, or provide other Bratz related financial
6 information in response to Interrogatory No. 45 (Sixth Set). Such information relates
7 solely to Phase 1, and Judge Larson made it abundantly clear at the February 11, 2009
8 hearing that discovery on Phase 1 issues is over.

9     Finally, Mattel's supplemental interrogatories Nos. 56-63 and 67-69 to both
10 MGA and Larian are improper for a variety of reasons. First, they are worded in such
11 a way that, in order to answer them, the MGA Parties must acknowledge the existence
12 of facts that the MGA Parties flatly deny. Second, the interrogatories are
13 impermissibly compound, thereby violating the limitation on the number of
14 interrogatories Mattel is allowed to propound. Third, the interrogatories ask MGA
15 and Larian to provide facts that establish a negative proposition, thereby making the
16 interrogatories logically unanswerable and legally improper.

17     For the reasons set forth below, the MGA Parties' objections should be
18 sustained and Mattel's Motion should be denied in its entirety.

### Argument

**I. MATTEL'S REQUESTS FOR SUPPLEMENTAL FINANCIAL INFORMATION FROM MGA AND LARIAN (RFP NOS. 4-37 AND 40-45 (SECOND SET TO MGA); AND RFP NOS. 207, 208 AND 269 (FIRST SET TO LARIAN)) MUST BE DENIED**

    **A. The Motion Violates Local Rule 37-1 Because Mattel Breached Its Own Agreement To Further Meet And Confer.**

26     On February 9, 2009, Mattel sent a meet and confer letter inviting MGA to
27 further meet and confer *on February 11, 2009* concerning RFPs 4-37 and 40-45 to
28 MGA, and RFPs 207, 208 and 269 to Mr. Larian. (Declaration of Amman Khan filed

1  concurrently herewith ("Khan Decl."), Ex. H [Letter dated February 9, 2009 from Jon
2  Corey to Amman Khan].) But on February 10, 2009, the day before the proposed
3  meet and confer session, Mattel sandbagged the MGA Parties by filing the instant
4  Motion.

5        Local Rule 37-1 requires, in clear and unambiguous terms, that the parties fully
6  meet and confer in good faith *before* filing discovery motions. Mattel's blatant
7  violation of the meet and confer rule and rush to the Discovery Master should not be
8  condoned. If Mattel (or any party for that matter) is allowed to file motions to compel
9  while the parties are still attempting to informally resolve discovery issues, Local
10  Rule 37 will not be worth the proverbial paper on which it is written, virtually
11  assuring that every single discovery dispute will end up before the Discovery Master.

12        Mattel's strategy from the inception of this litigation has been to make it as
13  expensive as possible for its much smaller competitor, MGA, and for MGA's
14  founder, obviously hoping to cripple them financially. To this end, Mattel has
15  propounded a staggering number of discovery requests[1] and has filed motions to
16  compel with respect to almost all of them. By the time Phase 1 discovery ended, the
17  former Discovery Master not only repeatedly had found that Mattel's relentless
18  discovery barrage was "unreasonably duplicative," "cumulative," and "unduly
19  burdensome,"[2] but he also castigated Mattel for making "highly exaggerated" and

---

[1] By the end of Phase 1, Mattel had propounded *four thousand six hundred and forty-seven (4,647)* Requests for Admissions, *two thousand eight hundred and eighty-nine (2,889)* Requests for Production, and *seventy-one (71) interrogatories*; Mattel had taken 30(b)(6) Depositions covering *two hundred ninety-two (292)* topics and *over sixty (60)* non-expert depositions (some for multiple days); Mattel also had served *seventy-five (75)* Third Party Subpoenas; and the MGA Defendants produced *four million, two hundred thousand (4,200,000)* pages of documents.

[2] *See, e.g.* 4/29/08 Order Granting MGA's Motion to Quash Larry McFarland's Deposition Subpoena Or For Protective Order at 5:22, Ex. A to Khan Decl. (*"McFarland's deposition is duplicative and cumulative"*); 4/14/08 Order Denying Mattel's Motion To Compel Production Of Documents By MGA In Response To Fifth Set Of Requests For Documents And Things at 4:5-6, Ex. B to Khan Decl. (Requests 4-7 of Fifth Set were *"cumulative, duplicative and unduly burdensome because they seek documents previously requested and received by Mattel."*); 4/22/08 Order Denying Mattel's Motion To Compel Additional Deposition Testimony of Veronica Marlow, Ex. C to Khan Decl. at 2:8-14 (noting that "Mattel has already deposed Marlow for approximately

1  "largely unjustified" assertions about the MGA Parties' supposed non-compliance
2  with their discovery obligations.[3] To allow Mattel to flout with impunity its
3  obligation to meet and confer in good faith simply encourages Mattel to continue to
4  engage in its bad faith, scorched earth discovery tactics, in which the endgame is not
5  to obtain information, but to harass, burden and oppress. The Motion should be
6  denied as to Request Nos. 4-37 and 40-45 (Second Set), and Request Nos. 207, 208
7  and 269 (First Set) on this ground alone.

### B. The Updated Financial Information Sought Is Beyond The Scope Of Phase 2 Discovery.

#### 1. Request Nos. 4-37 and 40-45 (Second Set) Are Not Relevant To Phase 2.

Request Nos. 4-37 and 40-45 directed to MGA (Second Set) seek financial information related to the sales, revenues and profits related to Bratz dolls – which, as stated above, was a Phase 1 issue. Mattel admits in its Motion that MGA produced documents responsive to these Requests when it was appropriate to do so – *during Phase 1*. As Judge Larson made perfectly clear at the February 11, 2009 hearing, the only discovery that is now allowed is "the discovery related to Phase 2." (Khan Decl., Ex. F at 99:8-22 [February 11, 2009 Hearing Transcript].)

In a disturbingly disingenuous effort to establish relevance where none exists, Mattel cites an excerpt from the May 27, 2008 *Trial* Transcript for the proposition that "[a]s the Discovery Master [sic] previously found, the compelled financial

---

seven and a half hours" and holding that *none of the arguments proffered by Mattel, "either alone or in combination, justifies the burden and expense of having Marlow appear for further examination."*); 5/7/08 Order Granting In Part And Denying In Part MGA Parties' Motion To Quash Subpoenas etc., Ex. D to Khan Decl. at 11:5-6 (*"the subpoenas are overly broad, sweeping in vast amounts of documents that have little to no relevance"*), 11:12-13 (*"Mattel's subpoenas to the non-parties are also unreasonably duplicative and cumulative of discovery Mattel has already sought and received in this case."*).

[3] 4/28/08 Order Denying Mattel's Motion To Compel Further Deposition Of Margaret Hatch-Leahy, Ex. E to Khan Decl. at 3:21-22).

1  information . . . is relevant to the damages Mattel seek[.]" (Motion at 9:4-6.)
2  However, the May 27, 2008 transcript merely reflects that Judge Larson partially
3  granted and partially denied Mattel's motion to compel Mr. Larian's response to a
4  trial subpoena, and that the Court found that documents <u>showing the revenue and
5  profits of Bratz products were relevant to Phase 1</u>. (See Ex. 27 attached to Motion at
6  13-25.) Mattel makes absolutely no effort to explain how this discovery is relevant to
7  its Phase 2 claims (and it cannot sandbag the MGA parties by adding new arguments
8  in its Reply). Thus, its motion should be denied.

     Any claim by Mattel that it needs this Bratz-related financial information in order to establish its Phase 2 damages ignores the jury's Phase 1 damages award, and must fail. Mattel sought disgorgement of all Bratz profits during Phase 1 and the jury made its award. Mattel may not relitigate this issue in Phase 2. Further, the jury expressly rejected Mattel's claim for damages based on Bratz' related future damages, so Mattel's demand for post-verdict financial information is particularly unwarranted. (Khan Decl., Ex. G at ¶ 11 [Verdict Form].)

     **2.   Request Nos. 207, 208 and 269 (First Set) Are Not Relevant to Phase 2.**

     Mattel does not even attempt to show that Isaac Larian's personal financial records, sought by RFP Nos. 207, 208 and 269 are relevant to Phase 2 issues. Contrary to Mattel's assertions, the former Discovery Master found Request No. 207 to be relevant to Phase 1, *not* Phase 2: "Request No. 207 seeks information reasonably calculated to lead to information showing the timing of payments *to Bryant and others, which in turn is relevant to the timing of the development of Bratz and issues of credibility*." (See December 31, 2007 Ruling, Exhibit 8 attached to Motion at 15:10-12, 16:2-4) (emphasis added.) Further, with respect to Request Nos. 208 and 269, Mattel simply has not made any showing that the Requests, which seek Mr. Larian's gross income and net worth, are related to Phase 2. Mattel cannot

1 sandbag MGA or Larian now by citing evidence in Reply. Accordingly, Mattel is not
2 entitled to supplemental responses to these Requests.

## II. MATTEL IS NOT ENTITLED TO A SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 45 (SIXTH SET)

Interrogatory No. 45 asks MGA to identify each Bratz product that MGA or its licensees have sold, and to identify the revenue, costs, and profits associated with each such product. Once again, Mattel's entitlement to gross and net profits from sales of Bratz products was an issue adjudicated in Phase 1, and Mattel fails to explain how this discovery is relevant to or proper in Phase 2. Mattel claims that this information might be relevant to Mattel's alleged theft of trade secret damages, but that argument is specious. Among other things, the putative "trade secrets" pertained to information about *Mattel's* pricing, sales and marketing plans and the like for *Barbie* dolls no later than *2005*, when the last of the employees who are claimed to have "stolen" such trade secrets left Mattel for MGA.[4] Mattel does not, because it cannot, explain how long-outdated "trade secrets" about Mattel's pricing and costs four to five years ago entitle it to information about Bratz sales in 2008.

Further, MGA has already provided information that is current through the second fiscal quarter of 2008. As Mattel acknowledges in its Motion, MGA produced *over 36,000 pages of documents* (and identified them as responsive to Interrogatory No. 45) in December 2007. (Motion at 5:11-13.) Because MGA does not calculate or keep records of a product-by-product profit breakdown in the normal course of business, providing this information entailed considerable expense and consumption of time on MGA's behalf. Indeed it would take approximately 320 worker hours to provide this supplemental information. (See Declaration of Brian Wing filed concurrently herewith at ¶¶ 3-4.) To force the MGA parties to expend such a great amount of effort and resources *again*, for information covering such a truncated

---

[4] According to Mattel's Second Amended Answer and Counterclaims, the three former employees of Mattel Mexico left in April 2004, former Mattel Senior Vice President Ron Brawer left in October 2004, and Mattel's Canadian Director of Sales for the Girls Division, Janine Brisbois, left in September 2005. (SAAC at 40:23-27, 45:5-6, 50:3-4.)

7

EXHIBIT 5 PAGE 123

1  period (*i.e.*, two fiscal quarters), would be overly burdensome and costly to MGA
2  when weighed against any possible benefit to Mattel.

### III. MATTEL IS NOT ENTITLED TO RESPONSES TO SUPPLEMENTAL INTERROGATORY NOS. 56-63 AND 67-69

These Interrogatories incorporate Mattel's definition of "MATTEL DOCUMENTS" which have been defined as "all DOCUMENTS stolen, obtained or taken from MATTEL by any PERSON, including but not limited to the documents identified as Bates Numbers . . . ." (Ex. 13 to Mattel's Motion at 7:3-5.) This list of specific documents identified by Bates Number is 2 ½ pages long and has the appearance of a data printout. Indeed, Mattel admits in its Motion that these allegedly "stolen" documents consist of "at least 8 banker boxes of documents." (Motion at 25:6.)

As discussed below, the interrogatories are objectionable because they (1) ask MGA to establish a negative proposition, (2) require MGA and Larian to admit facts they deny, as the interrogatories presuppose documents were stolen or taken by former Mattel employees and given to MGA, and (3) are overly broad and unduly burdensome as the definition is compound and contains multiple subparts.

#### A. The Interrogatories Presuppose Facts That Are Not True.

Interrogatory Nos. 60, 61 and 63 are each improper because they cannot be answered unless MGA accepts a definition that assumes it is in possession of documents stolen or taken from Mattel by former Mattel employees – a fact that MGA denies.[5]

---

[5] For example, Interrogatory No. 60 asks MGA to:
State all facts which support YOUR contention, if YOU so contend, that any information in the MATTEL DOCUMENTS was known to the public or to PERSONS who can obtain economic value from its disclosure or use, and IDENTIFY all PERSONS with knowledge of the foregoing and all DOCUMENTS that REFER OR RELATE TO the foregoing.

### B. The Interrogatories Are Unduly Burdensome.

Moreover, when read in conjunction with the definition of "MATTEL DOCUMENTS," the burden imposed by these interrogatories is evident. As discussed above, "MATTEL DOCUMENTS" is defined to include **at least 8 boxes of documents.** Requiring MGA to state all facts, identify all documents and identify all witnesses relating to those facts, supporting contentions for over 8 boxes of documents is patently unduly burdensome, harassing and oppressive.

Mattel improperly justifies its use of the defined term "MATTEL DOCUMENTS" based on three unfounded assertions. Mattel first asserts "MGA/Larian know which documents they improperly obtained from Mattel and who improperly obtained them." (Mattel Motion p. 17:19-20). Mattel asserts second, "Defendants have produced document after document containing Mattel trade secrets and, in fact, some of these were marked as exhibits at the deposition of Mr. Machado." (Mattel Motion p. 18:2-4.). Mattel asserts third, "MGA/Larian are certainly in a position to determine which Mattel employees other than those specifically identified have provided them with Mattel trade secrets. (Mattel Motion p.19:8-10.) Mattel fails to cite any document, testimony or declaration to support these allegations in its moving papers. Mattel cannot sandbag MGA or Larian now by citing evidence in Reply. Even worse, each of the interrogatories using the term "MATTEL DOCUMENTS" requires MGA to assume these unfounded assertions are true, which makes the interrogatories unanswerable and incomprehensible. Since Mattel's arguments are not supported by evidence, Mattel's Motion must be denied.

Furthermore, Mattel seeks verified answers to the questions it did not ask. Specifically, Mattel insists that Interrogatory No. 56 asks MGA/Larian to "identify the Mattel documents MGA has obtained since January 1, 1999, identify persons with knowledge of MGA obtaining Mattel documents, and identify documents that refer relate to <u>obtaining Mattel documents</u>. (Mattel Motion, p. 11: 14-17.) This was not

EXHIBIT 5 PAGE 124

the question Mattel asked. Mattel asked a incomprehensible jumble of a question that states as follows:

> IDENTIFY all MATTEL DOCUMENTS that MGA has obtained, received, reviewed, copied, reproduced, transmitted, requested or used at any time since January 1, 1999, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such MATTEL DOCUMENTS.

(Ex. 13 attached to Mattel's Motion at 14.)

This interrogatory, however, does not ask for documents that refer or relate to obtaining Mattel Documents, it asks for all documents that refer or relate to any one of the thousands upon thousands of documents contained in the *eight banker's boxes of documents* that Mattel included in its definition of "MATTEL DOCUMENTS." This is harassing, unduly burdensome and oppressive.

### C.     The Interrogatories Are Impermissibly Compound.

The Interrogatories are also improper because they are compound and contain impermissible sub-parts. Interrogatory Nos. 56-63 contain innumerable sub-parts because they contain the term "MATTEL DOCUMENTS" which requires MGA to gather facts, and identify witnesses as well as documents concerning each and every one of the thousands of documents included in the eight banker's boxes of documents included in the definition. Similarly, Interrogatory Nos. 67-69 contain innumerable sub-parts because they ask MGA to identify payments, agreements, and anything of value given to hundreds of MGA employees, vendors and former employees identified in the parties' initial disclosures, among others.

Likewise, Interrogatory No. 56 asks MGA to "IDENTIFY all MATTEL DOCUMENTS that MGA has *obtained, received, reviewed, copied, reproduced, transmitted, requested or used* at anytime since January 1, 1999, and IDENTIFY all

1  PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR
2  RELATE TO such MATTEL DOCUMENTS."[6]

3  This is improper. Under Rule 33, "a party may serve on any other party no
4  more than 25 written interrogatories, including all discrete subparts." Fed. R. Civ.
5  Proc. 33; see also Willingham v. Ashcroft, 226 F.R.D. 57 (2005) (interrogatory
6  subpart that introduces a new line of inquiry is considered a separate interrogatory
7  under Rule 33; responding party not obligated to answer more than 25 interrogatories,
8  including subparts); Banks v. Office of Senate Sergeant-at-Arms, 222 F.R.D. 7
9  (D.D.C. 2004) (number of interrogatories, including subparts, exceeded Rule 33
10 numerical restriction).

11 **D.  The Interrogatories Improperly Ask MGA to Establish A Negative**
12 **Proposition.**

13 Interrogatory Nos. 58, 59, and 62 concern MGA's contention that it did not
14 obtain any Mattel documents through improper means and the potential value these
15 documents might have in being kept private. These Interrogatories effectively ask
16 MGA to establish a negative proposition, and thus are unduly burdensome and
17 oppressive. For example, Interrogatory No. 58 asks for MGA to identify all facts that
18 MGA *did not obtain any MATTEL DOCUMENTS through improper means*, and to
19 identify any individuals with knowledge of, or documents referring to, the negative
20 proposition that it did not obtain Mattel documents. This is tantamount to asking the
21 MGA parties for witnesses to and documentary evidence of something that did not
22 occur. Courts have consistently recognized that such requests are unanswerable and
23 improper. See Safeco of America v. Rawstron, 181 F.R.D. 441, 447-48 (C.D. Cal.
24 1998) (citing Lawrence v. First Kansas Bank & Trust Co., 169 F.R.D. 657, 662-63

---

[6] Likewise, Interrogatory No. 58 asks MGA to "state all facts . . . that *YOU and/or MGA* did not obtain any MATTEL DOCUMENTS through improper means, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such facts." (See Ex. 13 at p. 14, attached to Motion [Supp. Interrogatories]) (emphasis added.)

1  (D. Kan. 1996) (holding that interrogatories asking for facts in support of a negative
2  proposition were unduly burdensome and oppressive)).
3        The cases cited by Mattel in its Motion are inapposite. Mattel's reliance on
4  Dang v. Cross, 2002 WL 432197 (C.D. Cal. 2002) is misplaced and misleading. In
5  Dang, plaintiff brought an action against the City of Compton and police officers who
6  allegedly used excessive force to arrest him. Id. at *1. However, Dang was a case
7  that had an exponentially smaller universe of facts, allegations, and discovery than the
8  ongoing complex litigation between MGA and Mattel, a fact recognized by the court
9  when it explicitly limited its ruling to the facts of the case. Id. at *4. Mattel now
10 improperly seeks to extend this inapposite ruling to the case at hand.
11       Mattel's reliance on Tennison v. City & County of San Francisco, 226 F.R.D.
12 615 (N.D. Cal. 2005), is equally inapplicable. In Tennison, the plaintiff was asked to
13 state all facts supporting his previous denials. Importantly, the interrogatory at issue
14 in Tennison was found by the court to be not burdensome because ***the plaintiff there***
15 ***had already told the defendant that he had easy access to documents*** containing
16 responsive facts. That is certainly not the case here.
17     **E.**    **Interrogatory Nos. 67-69 Are Overly Broad**
18       Mattel insists it is only trying to get at information to support its claims that
19 MGA "poached" Mattel employees for the purposes of stealing its trade secrets.
20 Mattel states that "knowing when MGA paid employees and how much will yield
21 evidence showing MGA's access to Mattel's internal information and additionally
22 bear on critical issues of timing which company was developing which product or
23 product element at issue first." (Mattel Motion 13:12-15.) But Mattel did not ask
24 these questions or limit its questions to current of former Mattel employees. Instead it
25 asked for personal, financial information concerning hundreds of people.
26 Specifically, Interrogatory No. 67 asks MGA to:
27         IDENTIFY fully and separately each and every payment of
28         money or other item of value that YOU have made or given, or

EXHIBIT 5 PAGE 126

    any promise, agreement, proposal or offer by YOU to pay money or give any item of value, to or on behalf of any PERSON identified in any of the parties' initial disclosures in this ACTION at any time when such PERSON was not an employee of MGA, including without limitation with respect to legal fees incurred by or on behalf of such PERSON.

(Ex. 13 to Mattel's Motion at pp. 16-17.)

  Further, this interrogatory is overbroad to the extent it requires MGA to tabulate all payments ever made to *"any **PERSON** identified in any of the parties' initial disclosures in this **ACTION** at any time,"* and to produce a report after determining whether any of these individuals ever worked for Mattel in the past.

  Interrogatory No. 69 seeks the same information, but with respect *"to or on behalf of any **PERSON** who has been employed by **MATTEL**."* Both interrogatories are overbroad. The burden and expense of determining whether each individual contemplated by these interrogatories was ever paid by MGA, somehow determining whether they ever worked for Mattel in the past, and then generating reports of every payment for each individual far outweighs the interrogatories' likely benefit.

  The definition of "FORMER MATTEL EMPLOYEES" incorporated in RFP No. 68 is also overly broad, to the extent it identifies ten specific individuals, as well as each individual's "current or former employees, agents, representatives, attorneys accountants, vendors, consultants, independent contractors, predecessors-in-interest and successors-in-interest, and any other Person acting on [his or her] behalf, pursuant to [his or her] authority or subject to [his or her] control." It is impossible for MGA to know whether a particular person or entity comes within these overly broad definitions. This definition is further overbroad as it encompasses "any other former Mattel employee or contractor who misappropriated Mattel trade secrets or violated

EXHIBIT 5
PAGE 29

13
MGA PARTIES' OPPOSITION TO MATTEL, INC.'S 2/10/09 MOTION TO COMPEL

667320

1  his or her obligations to maintain the confidentiality of Mattel's trade secrets." (See
2  Ex. 13 attached to Mattel's Motion at p. 6.)
3      Interrogatory No. 68 asks MGA to identify each and every payment of money
4  MGA made to "FORMER MATTEL EMPLOYEES." Because of the overbreadth of
5  this definition, it would be unduly burdensome for MGA to comply given the
6  enormous number of potential individuals implicated.

### Conclusion

8      Based on the foregoing, the MGA Parties respectfully request that Mattel's
9  February 10, 2009 Motion be denied in its entirety.

12  Dated: February 18, 2009

Patricia L. Glaser
Joel N. Klevens
GLASER, WEIL, FINK, JACOBS
  & SHAPIRO, LLP

Russell J. Frackman
MITCHELL, SILBERBERG & KNUPP, LLP

By: _____
Amman Khan
Attorneys for the MGA Parties
for Phase Two

EXHIBIT 5
PAGE 130

# PROOF OF SERVICE

STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California; I am over the age of 18 and not a party to the within action; my business address is 10250 Constellation Boulevard, Nineteenth Floor, Los Angeles, California 90067.

On February 18, 2009, I served the foregoing document described as:

**MGA ENTERTAINMENT, INC. AND ISAAC LARIAN'S OPPOSITION TO MATTEL, INC.'S 2/10/09 MOTION TO COMPEL RESPONSES TO INTERROGATORIES AND PRODUCTION OF DOCUMENTS**

on the interested parties to this action by placing a copy thereof enclosed in a sealed envelope addressed as follows:

**PLEASE SEE ATTACHED SERVICE LIST**

☐ (BY MAIL) I am readily familiar with the business practice for collection and processing of correspondence for mailing with the United States Postal Service. This correspondence shall be deposited with the United States Postal Service this same day in the ordinary course of business at our Firm's office address in Los Angeles, California. Service made pursuant to this paragraph, upon motion of a party served, shall be presumed invalid if the postal cancellation date of postage meter date on the envelope is more than one day after the date of deposit for mailing contained in this affidavit.

☐ (BY OVERNIGHT DELIVERY SERVICE) I served the foregoing document by Federal Express, an express service carrier which provides overnight delivery, as follows. I placed true copies of the foregoing document in sealed envelopes or packages designated by the express service carrier, addressed to each interested party as set forth above, with fees for overnight delivery paid or provided for.

☐ (BY PERSONAL SERVICE) I caused such envelope to be delivered by hand to the offices of the above named addressee.

☒ (BY EMAIL) I caused such documents to be delivered via email to the addressee(s).

☐ (BY FACSIMILE) I caused such documents to be delivered via facsimile to the offices of the addressee(s) at the following facsimile number:

Executed this 18th day of February, 2009, at Los Angeles, California.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

_/s/ Yumi Chung_
YUMI CHUNG

EXHIBIT 6
PAGE 3

# SERVICE LIST

| | |
|---|---|
| 2 | Robert C. O'Brien<br>Discovery Master |
| 3 | Arent Fox LLP<br>555 West 5th St., Suite 4800 |
| 4 | Los Angeles, CA 90013<br>**[By Personal Service]** |
| 5 | |
| 6 | John Quinn, Esq.<br>(johnquinn@quinnemanuel.com) |
| 7 | Jon D. Corey, Esq.<br>(joncorey@quinnemanuel.com) |
| 8 | Michael T. Zeller, Esq.<br>(michaelzeller@quinnemanuel.com) |
| 9 | Quinn Emanuel Urquhart Oliver & Hedges, LLP<br>865 South Figueroa Street, 10th Floor |
| | Los Angeles, CA 90017-2543 |
| 10 | **[By Email Service]** |
| 11 | Russell J. Frackman, Esq.<br>(rjf@msk.com) |
| 12 | Patricia H. Benson, Esq.<br>(phb@msk.com) |
| 13 | Mitchell, Silberberg & Knupp, LLP<br>11377 W. Olympic Blvd. |
| 14 | Los Angeles, CA 90067<br>(310) 312-2000 |
| 15 | **[By Email Service]** |
| 16 | Thomas J. Nolan, Esq.<br>(tnolan@skadden.com) |
| 17 | Raoul D. Kennedy, Esq.<br>(rkennedy@skadden.com) |
| 18 | Jason D. Russell, Esq.<br>(Jason.russell@skadden.com) |
| 19 | Skadden, Arps, Slate, Meagher & Flom LLP<br>300 South Grand Avenue, Suite 3400 |
| 20 | Los Angeles, CA 90071-3144<br>(213) 687-5000 |
| 21 | **[By Email Service]** |

EXHIBIT 5
PAGE 132

16

MGA PARTIES' OPPOSITION TO MATTEL, INC.'S 2/10/09 MOTION TO COMPEL

667320