1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
   John B. Quinn (Bar No. 090378)
2  johnquinn@quinnemanuel.com
   Michael T. Zeller (Bar No. 196417)
3  (michaelzeller@quinnemanuel.com)
   Jon D. Corey (Bar No. 185066)
4  (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
6  Facsimile:  (213) 443-3100

7  Attorneys for Mattel, Inc.

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                   EASTERN DIVISION

11 | CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx)
12 |                Plaintiff,     | Consolidated with
   |                               | Case No. CV 04-09059
13 |        vs.                    | Case No. CV 05-02727
14 | MATTEL, INC., a Delaware      | **DISCOVERY MATTER**
   | corporation,                  |
15 |                               | **[To Be Heard By Discovery Master Robert C. O'Brien]**
   |                Defendant.     |
16 |                               | [PUBLIC REDACTED] MATTEL, INC.'S NOTICE OF MOTION AND
17 | AND CONSOLIDATED ACTIONS      | MOTION TO COMPEL FURTHER DEPOSITION OF RONALD
18 |                               | BRAWER, AND TO OVERRULE INSTRUCTIONS NOT TO ANSWER;
19 |                               | AND
20 |                               | MEMORANDUM OF POINTS AND AUTHORITIES
21 |                               |
22 |                               | [Declaration of Scott L. Watson filed concurrently herewith]
23 |                               | Hearing Date:    TBD
24 |                               | Time:            TBD
   |                               | Place:           Arent Fox, LLP
25 |                               |                  555 West Fifth Street
   |                               |                  48th Floor
26 |                               |                  LA, CA 90013
27 |                               | **Phase 2:**
   |                               | Disc. Cut-off:   December 11, 2009
28 |                               | Pre-trial Conf.: March 1, 2010
   |                               | Trial Date:      March 23, 2010

07975/3045757.1

MOTION TO COMPEL RONALD BRAWER

1  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2          PLEASE TAKE NOTICE that on a date and time to be determined by

3  Discovery Master Robert C. O'Brien, plaintiff Mattel, Inc. ("Mattel") will, and

4  hereby does, move the Court, pursuant to <u>Federal Rules of Civil Procedure</u> 26, 30

5  and 37:

6          (1)  to compel Ronald Brawer to appear for 21 additional hours of

7  deposition time; and

8          (2) to compel Mr. Brawer to answer the questions MGA's counsel

9  improperly instructed Mr. Brawer not to answer during his deposition at 145:23-

10  146:23 and to answer other questions Mr. Brawer improperly refused to answer at

11  120:11-121:15, 148:2-8, 149:2-8, 154:5-11, 154:22-155:13, 158:2-17, 169:11-17,

12  170:2-13, 175:6-18, 175:20-176:3, 180:16-21, 185:23-186:5, 186:18-24, 189:10-17,

13  204:3-23.[1]

14          This Motion is made on the grounds that Mr. Brawer is a central

15  witness for whom the mere seven hours of deposition allotted were insufficient for a

16  complete and fair examination.  Furthermore, MGA withheld documents relevant to

17  Mr. Brawer's deposition, and improperly refused to answer questions.[2]

18          This Motion is based on this Notice of Motion and Motion, the

19  accompanying Memorandum of Points and Authorities, the Declaration of Scott L.

20  Watson filed concurrently herewith, the records and files of this Court, and all other

21  matters of which the Court may take judicial notice.

22

23

24

25

26  [1]  Deposition of Ronald Brawer, Declaration of Scott L. Watson ("Watson

27  Dec.") Exh. 41.
   [2]  Deposition of Ronald Brawer, Watson Dec. Exh. 41.

28

## **Meet and Confer Compliance**

The parties met and conferred regarding Mattel's deposition of Mr. Brawer on August 6, 2009, among other times, but were unable to reach agreement regarding the issues raised in this motion.

DATED: August 7, 2009           QUINN EMANUEL URQUHART OLIVER &
                                HEDGES, LLP


                                By /s/ Michael T. Zeller
                                Michael T. Zeller
                                Attorneys for Mattel, Inc.

# **TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................ 1

PRELIMINARY STATEMENT .................................................................................. 1

STATEMENT OF FACTS ......................................................................................... 2

ARGUMENT ............................................................................................................. 8

I.   THE DISCOVERY MASTER SHOULD COMPEL THE PRODUCTION OF MR. BRAWER FOR ADDITIONAL DEPOSITION TIME ..................................................................................... 8

    A.   MGA Withheld Relevant Documents Without Justification ................. 8

    B.   Defendants Have Not Given Mattel Sufficient Time to Depose Mr. Brawer ........................................................................................... 11

    C.   MGA and Mr. Brawer's Counsel Created Delays During Mr. Brawer's Deposition ........................................................................... 12

II.   THE DISCOVERY MASTER SHOULD COMPEL MR. BRAWER TO PROVIDE ANSWERS TO QUESTIONS COUNSEL IMPROPERLY INSTRUCTED HIM NOT TO ANSWER ............................ 16

CONCLUSION ........................................................................................................ 18

1

# **TABLE OF AUTHORITIES**

2

**Page**

3

## **Cases**

4 | AMCO Ins. Co. v. Madera Quality Nut LLC,
   2006 WL 931437 (E.D. Cal. 2006) ........................................................................ 19

5

6 | Clarke v. American Commerce Nat'l Bank,
   974 F.2d 127 (9th Cir. 1992) ................................................................................. 17

7 | Dixon v. Certainteed Corp.,
   164 F.R.D. 685 (D. Kan. 1996) ............................................................................. 10

8

9 | Garcia v. City of El Centro,
   214 F.R.D. 587 (S.D. Cal. 2003) ........................................................................... 19

10 | Keck v. Union Bank of Switzerland,
    1997 WL 411931 (S.D.N.Y. 1997) ....................................................................... 10

11

12 | McKay v. C.I.R.,
    886 F.2d 1237 (9th Cir. 1989) ............................................................................... 17

13 | Nutmeg Ins. Co. v. Atwell, Vogel & Sterling A Div. of Equifax Services, Inc.,
    120 F.R.D. 504 (W.D. La. 1988) ........................................................................... 19

14

15 | Resolution Trust Corp. v. Dabney,
    73 F.3d 262 (10th Cir. 1995) ................................................................................. 19

16 | Ritchie v. U.S.,
    2004 WL 1161171 (N.D. Cal. 2004) ..................................................................... 10

17

18 | Robins v. Scholastic Book Fairs,
    928 F. Supp. 1027 (D. Or. 1996) ........................................................................... 10

19 | Hurley v. JARC Builders, Inc.,
    164 F.R.D. 39, (E.D.Pa. 1995) ...............................................................................14

20

21 | U.S. v. Munoz,
    233 F.3d 1117 (9th Cir. 2000) ............................................................................... 18

22

## **Miscellaneous**

23

8 Wright & Miller, Fed. Practice and Procedure § 2023 (1970) ............................... 19

24

25

26

27

28

MOTION TO COMPEL RONALD BRAWER

1
2

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

3      Ronald Brawer is a central witness who appears by name on nearly
4   30,000 produced documents totaling more than 200,000 pages. Mattel has alleged
5   in its claims that Mr. Brawer personally and extensively participated in MGA's trade
6   secret thefts from Mattel. Mattel also has alleged RICO violations which Mr.
7   Brawer personally participated in.

8      Indeed, he has extensive knowledge of the matters
9   underlying MGA's own claims, for which MGA has publicly stated it is seeking
10  "billions" of dollars from Mattel. Nevertheless, MGA's counsel refuses to allow
11  Mattel sufficient time to fairly and fully depose him. Mattel has deposed Mr.
12  Brawer for 7 hours — insufficient time by any measure given his extensive personal
13  knowledge of facts central to this case.

14     Furthermore, only days before Mr. Brawer's deposition, MGA
15  produced over 300,000 pages of documents. Since his deposition, MGA has
16  produced over 234,000 documents, many of which raise questions for Mr. Brawer.
17  Over 800 documents produced since Mr. Brawer's deposition mention Mr. Brawer
18  by name, and many others are relevant to issues about which Mr. Brawer has
19  knowledge. Mattel has obviously been unable to question Mr. Brawer about these
20  documents, which contain new information about the theft of Mattel's trade secrets.
21  Nor was the earlier examination adequate even as to the already-produced
22  documents. During the seven hours he was deposed, Mr. Brawer and MGA's
23  counsel also repeatedly hindered the deposition by improper instructions and
24  refusals to answer.

25     The Discovery Master should order Mr. Brawer to sit for an additional
26  21 hours of deposition and compel Mr. Brawer to provide full and complete answers
27  to the questions that he was improperly instructed not to answer.

28

1

## Statement of Facts

2    **Brawer Is A Critical witness.** Mr. Brawer is a former Mattel executive
3  who left to work for MGA as its Vice President of Sales and Marketing.[3]  There is
4  no disagreement that he has personal discoverable knowledge pertinent to both
5  Mattel's claims and defenses and to MGA's claims.    Mattel's counterclaims
6  specifically allege, at length, Mr. Brawer's extensive and personal participation in
7  MGA's trade secret thefts from Mattel. He is the subject of 17 detailed paragraphs
8  in Mattel's Third Amended Answer and Counterclaims alone.[4]  He also is identified,
9  by name, in Mattel's Second Claim for Relief for MGA's violations of RICO, its
10 Third Claim for Relief for MGA's conspiracy to violate RICO and its Sixth Claim
11 for Relief for MGA's tortious interference with contract.[5]  As the prior Discovery
12 Master recognized, MGA's trade secret theft from Mattel is also relevant to Mattel's
13 defenses to MGA's claims, which MGA has asserted are worth "billions" of dollars.[6]

14  ███████████████████████████████████████████████████████

15  ███████████████████████████████████[7]  His name appears on nearly 30,000

16

---

17    [3]  Mattel, Inc.'s Third Amended Answer In Case No. 05-2727 and Counterclaims,
18 dated May 22, 2009 ("Third Amended Answer and Counterclaims"), ¶ 62 and 74,
     Watson Dec. Exh. 1; Brawer Depo. at 9:13-18, Watson Dec. Exh. 42.
19    [4]  Third Amended Answer and Counterclaims, ¶¶ 62-76, 94, 98, Watson Dec.
20 Exh. 1.
        [5]  Id., ¶¶ 62-76, 98, 172-73, Watson Dec. Exh. 1.
21    [6]  Order Granting in Part and Denying in Part Mattel's Motion to Compel
22 Responses to Interrogatory Nos. 27-44 and 46-50 by the MGA Parties, dated
     February 15, 2008, at 11-12, Watson Dec. Exh. 2; see also Nightline interview,
23 Watson Dec. Exh. 43.
24    [7]  MGA Entertainment, Inc.'s Responses to Mattel, Inc.'s First Set of
25 Interrogatories Re Claims of Unfair Competition, dated January 19, 2007, at 5-6,
     Watson Dec. Exh. 3; see also MGA Entertainment, Inc.'s Fourth Supplemental
26 Response to Interrogatory No. 1 of Mattel, Inc.'s First Set of Interrogatories Re
     Claims of Unfair Competition, dated July 21, 2007, at 6, Watson Dec. Exh. 4; MGA
27 Entertainment, Inc.'s Supplemental Disclosures and MGA Entertainment (HK)
28    (footnote continued)

1  produced documents totalling over 200,000 pages,[8]   virtually all of which were
2  compelled and therefore are relevant to this litigation.   Further confirming his
3  centrality to this litigation, in a recently published interview, Isaac Larian quoted
4  Mr. Brawer by name in attacking the rulings of the Court to date in this case.[9]

5                    Ron Brawer's Work at Mattel.

6                                                      In 2003 and 2004, he was a Senior Vice
7  President and Senior Vice President/General Manager.[11]   Brawer had access to
8  Mattel's trade secret and confidential information, including detailed information
9  related to development, manufacture, marketing, pricing, shipping, and performance
10 of Mattel's then-current and anticipated future product lines, and other confidential
11 business plans between Mattel and its most significant retail customers.[12]   Brawer's
12 responsibilities included leading a cross-functional "Customer Business Team,"[13]
13 and managing a strategic partnership with a key Mattel retailer.[14]

14                    Brawer Assists MGA While A Mattel Employee.

15

16

17 ──────────────────────

18 Limited, MGAE De Mexico S.R.L. De C.V., and Larian's Initial Disclosures Under
19 Rule 26(a)(1), dated September 21, 2007, at 2-3, Watson Dec. Exh. 5.
       [8]   Watson Dec. ¶ 40.
20     [9]   Likening Judge Larson's ruling that juror no. 8 was not a racist in the legal
21 sense was "like saying that Hitler was an anti-Semite, but not in the legal sense,"
   Mr. Larian told the Israeli newspaper Baba-Buba that "[o]ur appeal contains
22 evidence from Ron Brawer who was a senior VP in the company, stating that
23 'Lawsuits are used by Mattel as a commercial tool.'" Watson Dec. Exh. 45.
       [10]   Ron Brawer's MGA Application For Employment ("Brawer Employment
24 Application"), dated October 5, 2004, bate-stamped MGA2 0048891-4, Watson
25 Dec. Exh. 6.
       [11]   Third Amended Answer and Counterclaims, at ¶¶ 62-64, Watson Dec. Exh. 1.
26     [12]   Id. at ¶ 64.
       [13]   Id. at ¶ 67.
27     [14]   Id. at ¶ 68.
28

1   ████████████████   Mr. Brawer had further contact with MGA by April 2004.
2   Mr. Brawer did not inform anyone at Mattel of these communications.  To the
3   contrary, when asked by another Mattel executive whether he had been in contact
4   with MGA, Brawer falsely denied that he had been.[16]  Mr. Brawer continued to
5   communicate with Mr. Larian and MGA representatives from April through
6   September of 2004, when he resigned from Mattel.  ████████████████████

7   ████████████████████████████████████████████████████
8   ████████████████████████████████████████████████████
9   ████████████████████████████████████

10          Brawer Steals Mattel Documents and Goes to Work at MGA.  Mattel
11   has alleged in the Third Amended Answer and Counterclaims that on Wednesday,
12   September 15, 2004, Brawer left work at noon for a holiday observance.[18]  As
13   Brawer left, he carried a large cardboard box with binders and other materials.[19]
14   Several hours after his departure, Brawer instructed his assistant to print Mattel's
15   2004 Sales Plan for a significant customer and to provide it to him, falsely claiming
16   he needed it for a meeting.[20]  On Friday, September 17, 2004, Brawer returned to
17   Mattel and immediately informed his supervisor that he was leaving Mattel to work
18   for MGA.[21]

19          Upon joining MGA, Brawer became its Executive Vice-President of
20   Sales and Marketing.  In that role, he has been responsible for MGA's sales
21
22

23   [15]  Deposition Ex. 4237, Watson Dec. Exh. 7; Deposition Exhibit 4238, Watson Dec. Exh. 8.
24   [16]  Third Amended Answer and Counterclaims, at ¶ 65, Watson Dec. Exh. 1.
25   [17]  MGA 140968-78, Watson Dec. Exh. 9.
     [18]  Third Amended Answer and Counterclaims, at ¶ 69, Watson Dec. Exh. 1.
26   [19]  Id. at ¶ 69, Watson Dec. Exh. 1.
27   [20]  Id. at ¶ 69.
     [21]  Id. at ¶ 70.
28

1   worldwide[22] and for MGA's accounts with the same retailers that he worked with
2   while at Mattel.[23]   Mattel alleges that Brawer took trade secrets and confidential
3   information with him that he later used on behalf of MGA, among other acts of
4   wrongdoing.[24]

5          Mattel Is Forced to Move to Compel Brawer's First Deposition.   Mattel
6   first served a Notice of Deposition for Brawer on June 4, 2007.[25]   MGA delayed
7   providing a date for his deposition through June and July.[26]   On September 4, 2007,
8   MGA offered Mr. Brawer for deposition in December, claiming that Mr. Brawer
9   was working outside the country for MGA and would not be returning to the United
10  States until late December.[27]   Ultimately, despite his unquestioned relevance as a
11  key witness, Mattel was forced to bring a motion to compel.[28]   In its opposition,
12  MGA did not dispute that Ron Brawer is a critical witness who Mattel is entitled to
13  depose.[29]

14
15
16
-----
17  [22]   Id. at ¶ 74.
18  [23]   Id. at ¶ 74.
    [24]   Id. at ¶ 75.
19  [25]   Notice of Deposition for Ron Brawer, dated June 4, 2007, Watson Dec. Exh.
20  10.
    [26]   Letter from David Hurwitz to Michael Zeller dated June 13, 2007, Watson
21  Dec. Exh. 11; Letter from Michael Zeller to Diana Torres dated June 26, 2007,
22  Watson Dec. Exh. 12; Letter from Michael Zeller to Diana Torres dated July 3,
    2007, Watson Dec. Exh. 13; Letter from Michael Zeller to James Jenal dated July
23  19, 2007, Watson Dec. Exh. 14.
24  [27]   E-mail exchange between Jon Corey and opposing counsel, dated August 28,
25  2007 to September 11, 2007, Watson Dec. Exh. 15.
    [28]   Mattel's Motion to Compel Deposition of Ron Brawer, dated September 12,
26  2007, Watson Dec. Exh. 16.
    [29]   MGA's Opposition to Mattel's Motion to Compel Deposition of Ron Brawer,
27  dated September 27, 2007, Watson Dec. Exh. 17.
28

1    In the interim, Mattel also brought a motion for leave to take additional
2 discovery.[30]  In its motion for leave, Mattel argued that it should be given leave
3 above and beyond the then-applicable 24-deposition limit to take depositions of the
4 individuals listed.  By Order dated January 7, 2008, the Court granted Mattel's
5 motion for additional discovery, including with respect to Ron Brawer.[31]  Mr.
6 Brawer finally appeared for one day of deposition on February 5, 2008.[32]

7    MGA Produced 300,000 Pages Of Documents Days Before Brawer's
8 Deposition.  On January 29, 2008, only seven days before Mr. Brawer's deposition,
9 MGA produced over 300,000 pages of documents.[33]  Mattel could not review these
10 documents in time for Mr. Brawer's deposition, and could not question Mr. Brawer
11 about them.  Since his deposition, MGA has produced over 234,000 documents.  Of
12 the documents produced after Mr. Brawer's deposition, over 800 contain Mr.
13 Brawer's name on them, and many others are relevant to issues about which Mr.
14 Brawer has knowledge.   The belatedly-produced documents contain new
15 information on the topics about which Mattel is entitled to question Mr. Brawer,
16 including the theft of Mattel's trade secrets, and the MGA Parties' RICO violations.



23   [30]  Motion for Leave to Take Additional Discovery, dated November 19, 2007,
24 Watson Dec. Exh. 19.
25   [31]  Order, dated January 7, 2008, Watson Dec. Exh. 20.
     [32]  Stipulation Re: The Deposition of Ron Brawer, dated January 28, 2008,
26 Watson Dec. Exh. 21.
27   [33]  See Letter to Scott B. Kidman from Andrew C. Temkin, dated January 29,
2008, Watson Dec. Exh. 22.

28

07975/3045757.1

MOTION TO COMPEL RONALD BRAWER

1

2

3

4

5

6

7

8

9

10       **Brawer's Deposition.** At his deposition, Mr. Brawer regularly asked for

11 questions to be repeated or rephrased, often on cue from his counsel.[37]  Counsel

12 hindered the examination by wasting time, interjecting speaking objections and

13 improperly coaching Mr. Brawer.[38]  Counsel also instructed Mr. Brawer not to

14 answer questions that did not seek privileged information.[39]  At the end of the

15 deposition, counsel for Mattel stated on the record that he had been unable to

16 complete his examination, including due to the belated production by MGA as well

17 as the repeated interruptions.[40]

18

19

20   [34]  Mattel's First Supplemental Objections and Responses to Interrogatory Nos.

21 20-23 and 28 in MGA Entertainment Inc.'s Second Set of Interrogatories, dated July

22 31, 2009 ("Mattel's First Supplemental Objections and Responses"), at 113, 253, Watson Dec. Exh. 23.

23   [35]  MGA2 0048906, Watson Dec. Exh. 24; Mattel's First Supplemental Objections and Responses, at 113, 253; Watson Dec. Exh. 23.

24   [36]  Third Amended Answer and Counterclaims, at ¶¶ 103-104, Watson Dec. Exh.

25 1.

  [37]  See infra notes 63, Watson Dec. Exh. 41.

26   [38]  See infra notes 64-66, Watson Dec. Exh. 41.

27   [39]  Brawer Depo at 145:23-146:23, Watson Dec. Exh. 41.

  [40]  Brawer Depo. at 245:23-246:4, Watson Dec. Exh. 41.

28

MOTION TO COMPEL RONALD BRAWER

1         The Parties' Meet And Confer Regarding Brawer's Continued

2   Deposition. After the Phase 1 discovery stay was lifted, Mattel requested that MGA

3   schedule additional dates to continue Mr. Brawer's deposition and that Mr. Brawer

4   provide full and complete answers to the questions he was instructed not to answer

5   when his deposition resumed.[41]  However, counsel represented that he would not

6   agree to additional testimony.[42]  The parties were also unable to reach agreement

7   regarding counsel's instructions not to answer certain questions during Mr. Brawer's

8   deposition or his refusals to answer questions.[43]  As a courtesy to new counsel,

9   Mattel met and conferred again on August 6, 2009 to see if the matter of Mr.

10  Brawer's deposition could be resolved, but the parties still were unable to reach

11  agreement regarding the issues raised in this motion.[44]

12

13                    **Argument**

14  **I.**    **THE DISCOVERY MASTER SHOULD COMPEL THE**

15        **PRODUCTION OF MR. BRAWER FOR ADDITIONAL DEPOSITION**

16        **TIME**

17        **A.**    **MGA Withheld Relevant Documents Without Justification**

18        On January 29, 2008, seven days before Mr. Brawer's deposition, MGA

19  produced over 300,000 pages of documents.[45]  Mattel could not review these

20

---

21     [41]   Letter from Michael Zeller to Thomas Nolan, Jason Russell, Carl Roth, and

22  Patricia Glaser, dated January 29, 2009, Watson Dec. Exh. 25.

   [42]   Letter from Amman Khan to Jon Corey, dated February 10, 2009, Watson

23  Dec. Exh. 26.

24     [43]   Id.

   [44]   Letter from Michael Zeller to Annette Hurst, dated July 31, 2009, Watson

25  Dec. Exh. 27; Letter from William Molinski to Michael Zeller, dated August 4,

26  2009, Watson Dec. Exh. 28.

   [45]   Letter to Scott Kidman from Andrew Temkin, dated January 29, 2008,

27  Watson Dec. Exh. 22.

28

documents prior to Mr. Brawer's deposition and was unable to question Mr. Brawer on them. Since his deposition, MGA has produced over 234,000 documents. These late-produced documents contain critical new information that Mattel is entitled to question Mr. Brawer about, including for example:



It is well established that a party can be compelled to testify regarding new evidence that comes to light following his initial deposition. "[A] second deposition is often permitted, where new information comes to light triggering questions that the discovering party would not have thought to ask at the first deposition." <u>Keck v. Union Bank of Switzerland</u>, 1997 WL 411931, at *1

---

[46]   Mattel's First Supplemental Objections and Responses, at 113, 253, Watson Dec. Exh. 23.
[47]   <u>See</u> MGA 3862416, Watson Dec. Exh. 29.
[48]   Mattel's First Supplemental Objections and Responses, at 113, 253, Watson Dec. Exh. 23.
[49]   <u>See, e.g.</u>, IGWT 75786-75811 at IGWT 75807-75809, Watson Dec. Exh. 42.
[50]   IGWT 79682-85, Watson Dec. Exh. 31.

1 (S.D.N.Y. 1997) (permitting plaintiff to reopen depositions of two witnesses
2 because "the request to reopen the questioning is based on new information"); see
3 also Ritchie v. U.S., 2004 WL 1161171, at *3 (N.D. Cal. 2004) ("when further
4 evidence linking [witness to the project in dispute] subsequently came to light this
5 court permitted plaintiff to depose [the witness] a second time"); Robins v.
6 Scholastic Book Fairs, 928 F. Supp. 1027, 1036 (D. Or. 1996) (finding "that the
7 second set of depositions of these individuals was necessary because they had to be
8 questioned about additional documents that Defendant produced after the first set of
9 depositions"); Dixon v. Certainteed Corp., 164 F.R.D. 685, 692 (D. Kan. 1996)
10 (production of document containing statement by witness after first deposition
11 warranted second deposition); Hurley v. JARC Builders, Inc., 164 F.R.D. 39,
12 (E.D.Pa. 1995) (reopening of deposition to explore corporate relationships of which
13 party was unaware at first deposition).

14      In fact, the prior Discovery Master granted Mattel leave to depose
15 Paula Garcia for an additional 14 hours -- for a total of more than 28 hours --
16 because Ms. Garcia was a central Phase 1 witness, and because "two days prior to
17 her scheduled deposition, MGA produced approximately 7,600 pages of
18 documents."[51] In granting Mattel an additional 14 hours to depose Ms. Garcia, the
19 prior Discovery Master held "[r]egardless of where the fault lies for the belated
20 document production, Mattel is entitled to a fair examination of the deponent
21 regarding these 7,600 pages of documents."[52] The Court also held that the
22 production of "more than 100,000 documents after Ms. Garcia's deposition,"
23 provided "additional justification for resuming Ms. Garcia's deposition."[53]

24
25

26   [51] Order at 4, 9, 11-12 and 16, Watson Dec. Exh. 40.
27   [52] Order at 12, Watson Dec. Exh. 40.
     [53] Id.
28

-10-

1   The same is true here. As a result of the late-production of relevant
2   documents, Mattel was not able to depose Mr. Brawer on relevant topics, including
3   the theft of Mattel's trade secrets and MGA's claims for unfair competition. Mattel
4   is entitled to question him on these documents.

5   **B.   Defendants Have Not Given Mattel Sufficient Time to Depose Mr.**
6   **Brawer**

7   Even without the late productions and other impediments to a full and
8   fair examination that MGA created, more time to question Mr. Brawer would be
9   appropriate. He is a key witness with critical information regarding MGA's theft of
10  Mattel's trade secrets and RICO violations.[54]

11  [55]

12  Mr. Brawer's name appears on nearly 30,000 produced documents, totalling over
13  200,000 pages,[56] relating to Phase 2 issues.

14  Defendants nevertheless only allowed Mattel to depose Mr. Brawer for
15  seven hours and have refused to make him available for more time.[57] This is simply
16  not enough time for Mattel to cover his extensive personal knowledge of the issues
17  in Phase 2. As a Mattel employee, Mr. Brawer was privy to Mattel's trade secrets
18  and confidential and propriety information.

19

20  He also took Mattel's trade secrets and confidential

21  ───────────────

22  [54]   Third Amended Answer and Counterclaims ¶¶ 133-137, 146-165, 205-212,
23  Watson Dec. Exh. 1.
      [55] MGA Entertainment, Inc.'s Supplemental Disclosures and MGA Entertainment
24  (HK) Limited, MGAE De Mexico S.R.L. De C.V., and Larian's Initial Disclosures
      Under Rule 26(a)(1), at 2-3, Watson Dec. Exh. 5.
25    [56]   Watson Dec. ¶ 40.
26    [57]   Watson Dec. Exh. 27 & 28 & ¶ 28.
      [58]   Deposition Exhibits 4237, 4238, 4239, 4243, 4245, 4246, 4248, 4249,
27  Watson Dec. Exhs. 7, 8, 32-37.
28

and proprietary information and has knowledge of their use at MGA.[59]   These facts are central to Mattel's phase 2 claims, and Mattel should be granted more deposition time so that it can conduct a full and fair examination on them.

Mattel also did not have time to question Mr. Brawer about his agreements with MGA, ███████████████████████████ ████████████████ or many issues involving MGA's thefts from Mattel, such as the Bratz "Head Gamez,"[61] or about his misrepresentations about market share to retailers,[62] among other things.

**C.   MGA and Mr. Brawer's Counsel Created Delays During Mr. Brawer's Deposition**

At his deposition, Mr. Brawer repeatedly asked for even simple questions to be rephrased whenever MGA's counsel objected.[63]   Counsel too interrupted Mattel's questioning of Mr. Brawer by interjecting improper colloquy[64] and improperly coaching the witness.[65]   Throughout the deposition, Mr. Brawer's counsel engaged in suggestive objections to signal the right answer or warn him of a

---

[59]   Mattel's Third Amended Answer and Counterclaims ¶¶ 75-76, Watson Dec. Exh. 1.

[60]   MGA 0140968-78, Watson Dec. Exh. 9.

[61]   See MGA 3862416, Watson Dec. Exh. 29.

[62]   Mattel's Third Amended Answer and Counterclaims ¶ 102, Watson Dec. Exh. 1.

[63]   Brawer Depo at 24:8-17, 28:22-29:2, 53:13-23, 67:6-11, 71:15-24, 155:15-20, 177:3-6, Watson Dec., Exh. 41.

[64]   Brawer Depo at 23:1-24:6, 34:1-35:1, 58:10-59:3, 86:25-87:5, 93:6-16, Watson Dec., Exh. 41.

[65]   See id. 185:23-186:5, 24:8-17, 28:22-29:2, 34:1-35:1, 67:6-11, 67:6-11, 69:19-25, 67:20-68:11, 71:15-24, 73:22-24, 83:18-84:5, 86:25-87:5, 87:17-22, 93:6-16, 98:10-16, 103:5-9, 120:11-121:15, 148:2-8, 155:15-20, 160:18-23, 173:20-174:1, 177:3-6, 212:2-14, Watson Dec., Exh. 41.

1   potential pitfall. [66]   Mr. Brawer then repeated his counsel's suggestions virtually

2   verbatim.

3           On numerous occasions, counsel interjected a "legal conclusion"

4   objection, which resulted in Mr. Brawer's improper refusal to answer the question.[67]

5   ███████████████████████████████████████████████

6   ████████████████████████████ on every single occasion when

7   counsel for MGA objected on "legal conclusion" grounds.[68]   Mr. Brawer's state of

8   mind as to each element, including confidentiality, is highly relevant to Mattel's

9   trade secret claims.

10           Examples of the witness's insistence on the rephrasing of simple

11   questions that wasted time or counsel's coaching picked up by the witness are

12   reflected in the following:



13
14
15
16
17
18
19
20

21   [66]   Brawer Depo. at 185:23-186:5, 23:1-24:6, 24:8-17, 28:22-29:2, 34:1-35:1,

22   67:6-11, 71:15-24, 73:22-24, 75:19-24, 83:18-84:5, 86:25-87:5, 87:17-22, 93:6-16,

23   98:10-16, 103:5-9, 120:11-121:15, 148:2-8, 160:18-23, 173:20-174:1, 177:3-6, 180:7-11, Watson Dec. Exh. 41.

24   [67]   Brawer Depo. at 120:11-121:15, 148:2-8, 149:2-8, 158:2-17, 169:11-17,

25   170:2-13, 175:6-18, 175:20-176:3, 180:16-21, 185:23-186:5, 186:18-24, 189:10-17, 204:3-23, Watson Dec. Exh. 41.

26   [68]   Brawer Depo. at 154:5-11, 154:22-155:13, 158:2-17, 169:11-17, 170:2-13,

27   175:6-18, 175:20-176:3, 180:16-21, 185:23-186:5, 186:18-24, 189:10-17, Watson Dec. Exh. 41.

28

                                          MOTION TO COMPEL RONALD BRAWER





1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25 _____

26  [72]  Id. at 67:20-68:7, Watson Dec. Exh. 41.

27  [73]  Id. at 87:17-22, Watson Dec. Exh. 41.

28  [74]  Id. at 154:5-11, Watson Dec. Exh. 41.

MOTION TO COMPEL RONALD BRAWER



MGA's counsel interfered with the deposition whenever Mr. Brawer's testimony appeared to be potentially damaging, and Mr. Brawer himself impeded the examination through verbal jousting.  This prevented a fair examination and wasted valuable time that further justifies additional deposition time.

## II.   THE DISCOVERY MASTER SHOULD COMPEL MR. BRAWER TO PROVIDE ANSWERS TO QUESTIONS COUNSEL IMPROPERLY INSTRUCTED HIM NOT TO ANSWER

The attorney-client privilege protects from discovery only the substance of "confidential communications" between a client and his attorney. Clarke v. American Commerce Nat'l Bank, 974 F.2d 127, 129 (9th Cir. 1992); McKay v. C.I.R., 886 F.2d 1237, 1238 (9th Cir. 1989).  Mr. Brawer's counsel instructed him not to answer questions that did not call for the substance of attorney-client communications.  Instead, they merely called for disclosure of facts and information known to Brawer.  The following excerpt is illustrative:

---

[75]   Id. at 169:11-17, Watson Dec. Exh. 41.



MGA bears the burden of supporting its privilege assertions. <u>U.S. v. Munoz</u>, 233 F.3d 1117, 1128 (9th Cir. 2000). It cannot do so here. To the contrary, the prior Discovery Master rejected exactly the type of instruction interposed here and ruled that a witness's understanding of facts, events and information are discoverable, even if they were conveyed by a lawyer.[77] "[I]t is only the communications that are subject to attorney-client privilege, and not the

---

[76] Brawer Depo. at 145:23-146:23, Watson Dec. Exh. 41.

[77] May 4, 2007 Order Granting in Part Bryant's Motion to Overrule Instructions Not to Answer During the Deposition of Alan Kaye, ¶ 1, Watson Dec. Exh. 39; <u>see also</u> Order Granting Mattel's Motion for an Extension of Time to Depose Paula Garcia in Her Individual Capacity and as a 30(b)(6) Designee, dated August 14, 2007, Watson Dec. Exh. 40, at 12:20-22 (holding that the attorney-client privilege protection "does not extend to the facts underlying privileged communications.").

1  foundational facts concerning the communication, or the underlying, independent

2  facts." AMCO Ins. Co. v. Madera Quality Nut LLC, 2006 WL 931437, at *18 (E.D.

3  Cal. 2006).[78] ███████████████████████████████

4  ████████████████████████████████████████████

5  ████████████████████ do not invade the attorney-client privilege and

6  are not protected by the work-product doctrine. Such facts are not privileged. The

7  instructions to Mr. Brawer should be overruled and Mr. Brawer further should be

8  ordered to answer the other questions he unilaterally refused to answer.[80]

9  ### Conclusion

10  For the foregoing reasons, the Court should allow Mattel an additional

11  21 hours of deposition time with Mr. Brawer. The Court should also compel Mr.

12

13

14

15

16

17

---

18  [78]  See also Resolution Trust Corp. v. Dabney, 73 F.3d 262, 266 (10th Cir. 1995)
19  ("Because the work product doctrine is intended only to guard against divulging the
    attorney's strategies and legal impressions, it does not protect facts concerning the
20  creation of work product or facts contained within work product"); Garcia v. City of
    El Centro, 214 F.R.D. 587, 591 (S.D. Cal. 2003) (same); Nutmeg Ins. Co. v. Atwell,
21  Vogel & Sterling A Div. of Equifax Services, Inc., 120 F.R.D. 504, 509 (W.D. La.
22  1988) ("The courts have consistently held that the work-product concept furnishes
    no shield against discovery, by interrogatories or by deposition, of the facts that the
23  adverse party's lawyer has learned, or the persons from whom he has learned such
24  facts. . .") (citing 8 Wright & Miller, Fed. Practice and Procedure § 2023 (1970)
    (emphasis in the original)).
25  [79]  Brawer Depo at 144:21- 146:13, Watson Dec. Exh. 41.
26  [80]  See e.g., Brawer Depo. at 120:11-121:15, 148:2-8, 149:2-8, 154:5-11,
27  154:22-155:13, 158:2-17, 169:11-17, 170:2-13, 175:6-18, 175:20-176:3, 180:16-21,
    185:23-186:5, 186:18-24, 189:10-17, 204:3-23, Watson Dec. Exh. 41.
28

1

2   Brawer to answer those questions counsel improperly instructed him not to answer

3   and the questions Mr. Brawer improperly refused to answer when his deposition

4   resumes.

5   DATED:  August 7, 2009            QUINN EMANUEL URQUHART OLIVER &
                                      HEDGES, LLP
6

7                                     By /s/ Michael T. Zeller
8                                        Michael T. Zeller
                                         Attorneys for Mattel, Inc.
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28