1  MELINDA HAAG (State Bar No. 132612)
   mhaag@orrick.com
2  ANNETTE L. HURST (State Bar No. 148738)
   ahurst@orrick.com
3  WARRINGTON S. PARKER III (State Bar No. 148003)
   wparker@orrick.com
4  ORRICK, HERRINGTON & SUTCLIFFE LLP
   The Orrick Building
5  405 Howard Street
   San Francisco, CA 94105
6  Telephone: +1-415-773-5700
   Facsimile: +1-415-773-5759
7
   WILLIAM A. MOLINSKI (State Bar No. 145186)
8  wmolinski@orrick.com
   ORRICK, HERRINGTON & SUTCLIFFE LLP
9  777 South Figueroa Street, Suite 3200
   Los Angeles, CA 90017
10 Telephone: +1-213-629-2020
   Facsimile: +1-213-612-2499
11
   Attorneys for MGA Parties
12

13                UNITED STATES DISTRICT COURT

14               CENTRAL DISTRICT OF CALIFORNIA

15                      EASTERN DIVISION

| | |
|---|---|
| 16 CARTER BRYANT, an individual | Case No. CV 04-9049 SGL (RNBx) |
| 17              Plaintiff, | Consolidated with:<br>CV 04-9059<br>CV 05-2727 |
| 18 v. | |
| 19 MATTEL, INC., a Delaware Corporation | **DISCOVERY MATTER** |
| 20              Defendant. | **[To Be Heard By Discovery Master Robert C. O'Brien]** |
| 21 | MGA ENTERTAINMENT'S THIRD BRIEF ON CROSS-MOTIONS REGARDING PRODUCTION AND COLLECTION OF CUSTODIAL DATA |
| 22 | |
| 23 | |
| 24 | [Attached: Second Declaration of Annette L. Hurst Regarding Custodial Data Motions] |
| 25 | |
| 26 AND CONSOLIDATED ACTIONS | |
| 27 | |
| 28 | |

# INTRODUCTION

The MGA Parties hereby file this single memorandum as both a reply in support of MGA's Motions to Compel Production of Previously Collected Custodial Data and for Sanctions and an opposition to Mattel's Cross-Motion to Compel Production of Custodial Data.

Mattel did not file an opposition to MGA's Motion; instead, it filed a "Statement of Position"—whatever that means. The Statement of Position made clear that Mattel admits the relevance of the requested data and that there would be no burden to produce it. Mattel's refusal to produce its collected custodial data thus rests on the sole ground discussed in its Cross-Motion: that doing so would be unfair because MGA may not be willing or able to do the same. The premise of this argument is flat wrong, and the argument on its face violates the FRCP.

The premise of the argument is wrong because as long as Mattel has access to its own custodial data and refuses to produce that data to MGA, it enjoys an unfair advantage—whether or not MGA has any custodial data to produce. This is because Mattel can use the data to prepare its witnesses for deposition while denying MGA access to the same data for its preparation. Mattel thus should be ordered to produce its previously collected custodial data immediately and sanctions should be awarded for Mattel's refusal to produce the collected custodial data. Mattel's Cross-Motion also should be denied for failure to meet and confer in good faith (namely, that Mattel never identified the basis for its demands which would have entirely obviated the necessity of any Cross-Motion), and further should be denied to the extent that it would require MGA to produce custodial data for existing productions beyond what it has already collected. Such a requirement has been waived and would in all events be unduly burdensome—which is exactly why MGA did not request that Mattel do it.

MGA's Motion should be granted and Mattel's Cross-Motion should be denied.

**ARGUMENT**

**I. MATTEL'S REFUSAL TO PRODUCE PREVIOUSLY COLLECTED CUSTODIAL DATA AND FAILURE TO MEET AND CONFER IN GOOD FAITH WERE VIOLATIONS OF THE FEDERAL RULES OF CIVIL PROCEDURE THAT SHOULD NOT BE REWARDED WITH A GRANT OF THE CROSS-MOTION.**

**A. <u>The Entire "Fairness" Argument By Mattel Proceeds From An Improper Premise.</u>**

It is hard to discern exactly Mattel's position since it filed no document denominated as an opposition to MGA's Motion, but Mattel apparently refuses to produce its custodial data unless it can be assured that MGA will make a precisely equivalent production. *See* Mattel, Inc.'s Statement of Position and Cross-Motion regarding the MGA Parties' Motion to Compel Previously Collected Custodian Information for Produced Documents and to Require Future Collection and Production of Custodial Data ("Cross-Motion") at 6-9. Mattel argues that requiring it to do so would be "unfair" because MGA would somehow benefit disproportionately to Mattel. *Id.* at 9. This argument plainly violates the Federal Rules of Civil Procedure, which require Mattel to produce relevant data (particularly where there is no claim of undue burden) without regard to its own discovery requests. *See* Fed. R. Civ. P. 26(d)(2).

This argument, moreover, is flat wrong. Whether or not MGA ever produces one iota of custodial data, *Mattel has the benefit of using its own custodial data to prepare its witnesses to testify in deposition*. Because Mattel has the benefit of its own custodial data *and MGA does not* (apparently absent court-ordered production thereof), Mattel's refusal to produce its own custodial data enables it to maintain a clear advantage over MGA with respect to deposition preparation. Mattel can use the data to identify which files came from which witness, and MGA cannot, despite the fact that it is admittedly relevant and would impose no burden to produce it. When Mattel refuses to produce relevant, responsive non-privileged data to which its lawyers and witnesses have access, this creates a gross disparity in

Mattel's favor. The entire premise of Mattel's unfairness argument must therefore be rejected. If anyone is acting unfairly, it is plainly Mattel.

**B. While MGA Was And Is Willing To Produce All Custodial Data To Which It Has Access, It Should Not Be Required To Do So On This Record.**

After MGA filed its Motion, counsel for MGA continued to meet and confer by again requesting that Mattel substantiate any prior request for custodial data, and offering to produce custodial data if it would do so. *See* Second Declaration of Annette L. Hurst Regarding Custodial Data Motions ("Second Hurst Decl.") (attached below) Ex. 1. Mattel flatly refused. *Id.* Ex. 2. Instead, the only time Mattel ever identified any prior request for custodial data was in the Cross-Motion.

Mattel's refusal to identify the basis for its requested relief in order to resolve this issue is mystifying. It is hardly unreasonable for MGA to insist that it does not have to develop Mattel's arguments for it, and the requirements for meet and confer set forth in the stipulation for appointment of a discovery master required Mattel to identify the grounds for its request. *See* December 6, 2006 Stipulation for Appointment of a Discovery Master Order (D.E. 107) at 4 ("The moving party shall first identify each dispute, state the relief sought, and *identify the authority* supporting the requested relief in a meet and confer letter ….") (emphasis added). It appears that Mattel simply refuses to take "yes" for an answer. Instead, it seems that it would rather make spurious accusations of spoliation and force the expenditure of funds to oppose a motion that is in large part uncontested than to actually resolve an issue without making a motion.

This type of conduct should not be rewarded with consideration by the Discovery Master of Mattel's Cross-Motion. Instead, the Cross-Motion should be denied with instructions to Mattel to meet and confer properly by conforming to the requirement to identify fairly the grounds for its requested relief prior to filing a motion. This issue should then easily be resolved with further meet and confer.

1    Finally, Mattel's spurious accusations of spoliation are just that. All of
2 the electronic custodial metadata that was previously collected by MGA remains
3 intact. Second Hurst Decl. ¶3. MGA maintains current electronic custodial data
4 associated with each Bates number for the vast majority of its produced documents
5 (nearly 90% of produced documents). *Id.* ¶4. Other custodial data exists in
6 production logs. *Id.* ¶5. The custodial data it does not possess pertains primarily to
7 the earliest document productions by O'Melveny & Myers in 2004 and 2005 and
8 has nothing to do with Skadden's methods of production. *Id.* ¶6.

9    **C.    MGA Should Not Be Required To Produce Custodial Data That It Doesn't Have.**
10
11    If the Discovery Master considers Mattel's Cross-Motion despite its
12 refusal to meet and confer in good faith, then the Discovery Master should not
13 require MGA to produce custodial information that it does not already possess.
14 MGA has produced documents on numerous occasions over the span of the nearly
15 five years since the inception of this case in 2004. In those years, Mattel only once
16 moved to compel custodial information, on a very limited set of documents. *See*
17 Cross-Motion at 8. The fact that Mattel did not demand broader custodial data in
18 motions to compel prior to the investigation and collection of the documents
19 necessitates a waiver of its position. To bring the motion now as to previously
20 collected documents is untimely. *See, e.g., Autotech Tech. Ltd. Partnership v.*
21 *Automationdirect.com, Inc.*, 248 F.R.D. 556, 559 (N.D. Ill. 2008) ("[i]t seems a
22 little late to ask for metadata after documents responsive to a request have been
23 produced in both paper and electronic format") (citing *Ford Motor Co. v.*
24 *Edgewood Props.*, 2009 U.S. Dist. Lexis 42001, *20-21 (D.N.J. May 18, 2009)).[1]
25
26 [1] Indeed, Mattel itself produced documents in similar format, *i.e.* without custodial information. Since Mattel used similar language to that of MGA and produced
27 documents in similar format to that of MGA, MGA had every reason to believe that such production format was acceptable and sufficient. As Mr. Zeller recently noted
28 in the recent August 6, 2009 hearing when discussing form definitions in Mattel's interrogatories: "lots of discovery has been propounded in this case, by both sides,

This is precisely why MGA requested in its Motion only custodial data that Mattel already possesses, and requested that it be required to collect it and produce it in connection with any further productions.

With respect to the limited universe of documents for which MGA does not presently possess custodial data, many are documents for which there is no individual custodian. *See* Second Hurst Decl. ¶5. For the remainder, it would be extremely burdensome, and perhaps impossible, for MGA to determine custodial data—and particularly for documents collected nearly five years ago by O'Melveny & Myers. To require MGA to expend substantial time and money to recreate productions and evaluate custodial data for documents that were produced years ago is unduly burdensome. *See Ford Motor*, 2009 U.S. Dist. Lexis 42001 at *21 ("[A]s that ship has sailed, it is without question unduly burdensome to a party months after production to require that party to reconstitute their entire production to appease a late objection.") (emphasis omitted). Even if the Cross-Motion is considered, the request for custodial data that does not presently exist should be denied.

## II. MGA SHOULD BE AWARDED SANCTIONS IN CONNECTION WITH THESE MOTIONS.

Mattel has admitted that custodial information is relevant and responsive, and it has provided no legitimate reason why it should not comply. It moved to compel custodial information that MGA offered it was ready, willing and able to provide if MGA would simply substantiate any basis for doing so. Through its offensive litigation conduct, Mattel made these motions necessary when they should have been entirely unnecessary. Accordingly, Mattel should compensate MGA for the time and effort it spent on these unnecessary motions by an award of

---

using exactly these kinds of definitions…." *See* August 6, 2009 Hearing Tr. at 53. Mr. Zeller justified Mattel's ambiguous definitions by arguing that all sides have routinely objected to and ignored such definitions and instructions until the threat of motion practice necessitated a different approach. *See id.*

1 | sanctions in the amount of $9,675. *See* Second Hurst Decl. ¶10.

## CONCLUSION

For all of the foregoing reasons, MGA's Motion to Compel and for Sanctions should be granted, and Mattel's Cross-Motion should be denied.

Dated: August 10, 2009

Respectfully submitted,

ANNETTE L. HURST
Orrick, Herrington & Sutcliffe LLP

By: */s/ Annette L. Hurst*
ANNETTE L. HURST
Attorneys for Plaintiff

**SECOND DECLARATION OF ANNETTE L. HURST REGARDING CUSTODIAL DATA MOTIONS**

I, Annette L. Hurst, declare:

1. I am a member of the bar of the State of California, admitted to practice before this Court, and a partner with the law firm of Orrick, Herrington & Sutcliffe LLP, counsel for the MGA Parties. I make this declaration based on personal knowledge unless otherwise expressly stated, in which case, it is based on information and belief. If called and sworn as a witness, I could and would testify competently as follows.

2. Over time, MGA's attorneys have engaged several different technology vendors and used several different platforms to collect, review, and produce documents. As part of the process of Orrick assuming the representation of the MGA Parties in this case, and working with our technical litigation support personnel and Skadden's paralegals, beginning in late June I reviewed the pertinent information regarding the contents of all of those databases in order to assess which technology platforms should be used by Orrick. In connection with that review—undertaken well before this issue arose—and in connection with Mattel's Cross-Motion, I confirmed the following facts concerning MGA's current possession of custodial data.

3. MGA's large existing collection databases, which have been used for the collection and processing of electronic material, include certain types of electronic custodial metadata. These databases contain all of the electronic custodial data that was collected and placed in them.

4. MGA's production document databases include approximately 350,000 documents with unique bates numbers. We currently possess custodial data for approximately 310,000 of those unique documents. Thus, MGA currently has electronic custodial data for nearly 90% of its previously produced data.

     5.     Additionally, in working with our technical support personnel and Skadden's paralegals, I have reviewed the document production logs and have determined that custodial data exists for several additional bates ranges in the production database which do not presently indicate custodial data. Thus, using the production logs, additional custodial data can be supplied for a number of additional documents. For many other documents, it is apparent that custodial data would not exist for a particular individual because the documents would be maintained in the files of a department or other centralized location. Additionally, many documents include deposition transcripts and other litigation material from other cases, which likewise have no custodian in the sense of an author, recipient, or the like. Taking all of these circumstances into account, the majority of documents for which we presently possess no custodial data are from O'Melveny & Myers' earliest document productions back in the 2004 and 2005 time frame.

     6.     I am informed that Skadden's proprietary database does not use exactly the same fields as the main production databases. Accordingly, when I had the meeting with Mr. Proctor and Mr. Zeller on July 8, I stated that we were in the process of confirming that Skadden's proprietary database did not present a problem with respect to the previously collected electronic data, that we believed this to be the case, and that otherwise I would not even be requesting the data of Mattel. At no time did I ever suggest or believe that any custodial data previously collected had been destroyed, and I have absolutely no reason to believe that to be true. Mattel's suggestions otherwise are pure speculation and a deliberate attempt to construe every statement as nefarious evidence for their assertions of spoliation. That, coupled with Mr. Searcy's baiting assertions that "I don't even know what MGA has" made dealing with them on this custodial data issue impossible.

7. Despite Mattel's approach, I sent an additional letter on August 1 again asking them to substantiate any prior request for custodial data, and offering to produce if they would do so. Attached hereto as Exhibit 1 is the additional letter I sent. Mr. Searcy again refused to supply the basis for Mattel's assertion, responding with his August 3 letter accusing me of "threats, insults and stonewalling." Attached hereto as Exhibit 2 is Mr. Searcy's August 3 letter.

8. If at any time Mattel had provided me with any citation to the formal document requests previously served that they believed entitled them to the previously collected custodial data, I would have responded with an agreement to produce. They did not do so, however, until they filed their Cross-Motion. The only apparent reason for this approach was to maintain a spurious claim of spoliation rather than to engage in meaningful meet and confer.

9. We are currently in the process of migrating several of the databases maintained in this action, including the MGA production databases, to a new platform. We therefore are not in a position to commit exactly when the production of previously collected custodial data can be completed. The database migration is presently underway and is expected to take several more weeks. After configuration and testing, we will then be in a position to generate and produce the custodial data.

1    10.    My billing rate is $735 per hour. I spent at least five hours on the
2    drafting of the briefs filed in connection with these cross-motions and the related
3    meet and confer process and correspondence. The billing rate of my colleague
4    Kieran Kieckhefer is $400 per hour. She has spent at least 15 hours on these cross-
5    motions. The total sum of $9,675 was thus reasonably and necessarily incurred in
6    connection with the prosecution of these motions.

7    I declare under penalty of perjury under the laws of the United States that the
8    foregoing is true and correct.

9    Executed this 10th day of August, 2009, in San Francisco, California.

*/s/ Annette L. Hurst*
Annette L. Hurst