MELINDA HAAG (State Bar No. 132612)
mhaag@orrick.com
ANNETTE L. HURST (State Bar No. 148738)
ahurst@orrick.com
WARRINGTON S. PARKER III (State Bar No. 148008)
wparker@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone: +1-415-773-5700
Facsimile: +1-415-773-5759

WILLIAM A. MOLINSKI (State Bar No. 145186)
wmolinski@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017
Telephone: +1-213-629-2020
Facsimile: +1-213-612-2499

Attorneys for MGA Parties

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | Case No. CV 04-9049-SGL (RNBx)<br><br>Consolidated with: Case No. CV 04-9059 and Case No. CV 05-2727<br><br>**DISCOVERY MATTER**<br>[To Be Heard by Discovery Master Robert O'Brien Pursuant to Order of January 6, 2009]<br><br>**MGA ENTERTAINMENT, INC.'S REPLY MEMORANDUM IN SUPPORT MOTION TO COMPEL FURTHER RESPONSES TO PHASE 2 INTERROGATORIES AND REQUESTS FOR PRODUCTION**<br><br>Date: TBD<br>Time: TBD<br>Courtroom: TBD<br><br>**Phase 2**<br>Discovery Cutoff: December 11, 2009<br>Pretrial Conference: March 1, 2010<br>Trial Date: March 23, 2010 |

## I.     INTRODUCTION

Mattel needs to stop playing counting games and start answering discovery. Six months ago, Judge Larson ruled that Phase 2 discovery would begin "with a clean slate" and that each *party* (not each side) would be entitled to whatever discovery the Rules of Civil Procedure provide. Despite this unambiguous ruling and the Discovery Master's own words at the July 9 hearing,[1] Mattel has yet to answer a single Phase 2 interrogatory in this case. Mattel's procrastination is inexcusable, especially since it seeks millions in alleged damages from MGA, and MGA has no way of obtaining the discovery that supports Mattel's claims except through Mattel.

MGA's First Set of Phase 2 Interrogatories and Second Set of Phase 2 Requests For Production seek vital information about the claims and alleged damages in this case. Among other things, MGA's discovery seeks information about the allegations that Mattel has trade secrets, that MGA misappropriated those secrets, and that Mattel suffered harm as a result. Spitzer Decl., Ex. A (Interrogatory Nos. 1-3, 6). MGA's discovery also seeks information concerning Mattel's spoliation claim, Mattel's RICO claims, and the damages Mattel claims to have suffered in connection with those claims. Id., (Interrogatory Nos. 7-8, 9-11, 12-14).

For the most part, Mattel does not dispute the relevance of MGA's discovery.[2] Rather, Mattel argues that it need not answer because MGA has somehow exceeded its allotted number of Phase 2 interrogatories. This argument fails, however, because MGA's motion concerns its <u>first</u> set of Phase 2 Interrogatories (Nos. 1 through 14), and there is no way this set can exceed any limit prescribed by the Rules of Civil Procedure. Likewise, Mattel's "counting"

---

[1] Rorie Decl., Ex. A (Transcript of 7/9/09 Hearing at 17:9-18:4).
[2] Mattel did not assert relevance as a basis for the protective order it sought in connection with this same discovery.

argument cannot apply to the unanswered requests for production, as there is no numerical limit on those requests. In short, Mattel's hackneyed "counting" argument is without merit and should be rejected.

Similarly disingenuous are Mattel's objections that MGA's interrogatories and requests for production are overly broad and unduly burdensome. Mattel has placed MGA's discovery at issue by alleging, among other things, that MGA misappropriated Mattel's trade secrets, that MGA violated the Racketeer Influenced Corrupt Organizations Act, and that MGA has spoiled evidence in this case. MGA has a fundamental right to the documents and information that support these accusations, and there is no excuse for Mattel's refusal to date to respond substantively to MGA's Phase 2 interrogatories and related discovery requests.

MGA's motion to compel should be granted and Mattel should be sanctioned for failing to comply with its discovery obligations in this case.

## II. MATTEL'S "COUNTING" OBJECTION IS A STALL TACTIC.

As Judge Larson ruled over six months ago, there are "***no limits, no restrictions [on Phase 2 discovery] other than what is set forth in the Rules of Civil Procedure and in Local Rule 27….***" Spitser Decl., Ex. 4 (Transcript of February 11, 2009 Hearing at 90:11-13)(emphasis added).

The Rules of Civil Procedure very clearly provide that each "party" is entitled to "no more than 25" written interrogatories. See Fed. R. Civ. P. 33(a)(1). Indeed, the words "per side" do not appear anywhere in Rule 33. See Advisory Committee Notes to Rule 33, 1993 Amendments ("Each *party* is allowed to serve 25 interrogatories upon any other party…") (emphasis added). There is no numerical limit on requests for production. See Fed. R. Civ. P. 34.

Notwithstanding this unambiguous language, Mattel claims that the number of written interrogatories in this case should be allotted on a "per side" and not "per party" basis. Opp. at 8-9. However, the authorities that Mattel cites do not support its position. In those cases, the court merely suggested that "in *some* instances"

1  "*nominally* separate parties" might be considered one party for purposes of the 25-
2  interrogatory limitation. See Vinton v. Adam Aircraft Industries, Inc., 232 F.R.D.
3  650, 664 (D. Colo. 2005); Zito v. Leasecomm Corp., 233 F.R.D. 395, 399
4  (S.D.N.Y. 2006). But those cases represent an exception to the general rule that the
5  25 interrogatory limitation is applied per party and not per side. See, e.g., St. Paul
6  Fire and Marine Ins. Co. v. Birch, Stewart, Kolasch & Birch, LLP, 217 F.R.D. 288,
7  289 (D. Mass. 2003) (permitting 25 interrogatories for each of three defendants and
8  striking down a local rule that allotted interrogatories on a "per side" basis).

9       In this case, Mattel has made no showing that any of cross-defendants it has
10  sued are "nominally separate" from one another. Nor has Mattel made any showing
11  that this case merits an exception to the general rule that written interrogatories are
12  allotted per-party, not per-side. If Mattel thinks it needs more than 25 written
13  interrogatories, it can petition the Discovery Master for additional interrogatories
14  pursuant to F.R.C.P. Rule 33(a)(1) (assuming it could not first stipulate with
15  MGA). But there is no reason to curtail the 25 interrogatory per party rule and
16  deprive certain parties of their right to take separate discovery. Mattel's binary "per
17  side" suggestion makes no sense because of the complex procedural nature of this
18  litigation. There are not just two "sides" to this litigation. Rather, there are
19  multiple cross-complainants and multiple cross-defendants representing several
20  distinct parties—each of whom are entitled to his and its own discovery.

21       Finally, Mattel spends a portion of its brief counting all of the Phase 2
22  interrogatories that MGA has served to date. As Mattel observes, MGA
23  Entertainment, Inc. has served a total of 14 Phase 2 interrogatories to date; MGA
24  Mexico has served a total of 11 Phase 2 interrogatories to date; and MGA Hong
25  Kong has served a total of 25 Phase 2 interrogatories to date. Mattel can count all it
26  wants, but no amount of counting can change the fact that Mattel has not answered
27  a single Phase 2 interrogatory to date. Moreover, no amount of counting can
28  change the fact that MGA Entertainment Inc., MGA Mexico, and MGA Hong

Kong are all within their collective 75-interrogatory limit. Under the Rules of Civil Procedure, each of these entities is entitled to their own separate discovery. Mattel must therefore answer MGA's First Set of Phase 2 Interrogatories.

### III.  MGA'S DISCOVERY IS NOT OVERBROAD.

Realizing that its "counting" objection is likely to fail, Mattel raises a number of substantive objections in its opposition papers that were not previously asserted in Mattel's motion for a protective order regarding this same discovery. As set forth below, these objections should be overruled as they are clearly a last-ditch effort to avoid having to answer Phase 2 discovery.

Mattel's first objection is that Interrogatory No. 4 and RFP No. 72, which seek documents and information concerning Mattel's intention to sell the Bratz line of dolls and products, are "overbroad" and "wholly irrelevant" to the claims at issue in this litigation. Opp. at 11-12. Mattel does not support this objection with any facts or evidence, but instead nakedly asserts that Mattel's intention to sell Bratz dolls (whether past or future) is "irrelevant" because these requests are being sought for "improper competitive reasons"—whatever those might be. Opp. at 12:10-13.

This objection fails, however, because many of the claims that Mattel has asserted against MGA, including Mattel's RICO claims, are based on a fundamental presumption that Mattel would in fact have sold Bratz dolls in the past or at least is planning do so in the future. This is because Mattel can only recover actual and concrete harm to its operations (not MGA's profits) in connection with its RICO claims. See U.S. v. Philip Morris, 396 F.3d 1190 (D.C. Cir. 2005). Therefore, Mattel cannot recover lost profits for the sale of Bratz under its RICO claims unless Mattel in fact had an intention of selling Bratz. In this regard, Interrogatory No. 4 and RFP No. 76 are relevant and should be answered.

Mattel also argues that RFP Nos. 73-76, 80, 82, 84, 90, and 94 are overbroad. Opp. at 12-13. These requests seek documents concerning the products that Mattel claims were harmed by MGA's acts and omissions in the cross-complaint,

1  including its sale of Bratz dolls (the "Mattel Harmed Products").  Notably, Mattel
2  does dispute that the subject matter of these requests is relevant and likely to lead to
3  the discovery of admissible evidence.  Rather, Mattel primarily objects to the
4  temporal scope of this discovery.
5        Specifically, Mattel claims that RFP Nos. 73-76, 80, 82, and 90 are
6  "overbroad" because they seek documents concerning the sale and recall of the
7  Mattel Harmed Products going back to 1998, 2000, and 2001, respectively.  Opp. at
8  13:11-18.  But these timeframes are entirely justified because in order for MGA to
9  discern whether the sale of Bratz harmed any Mattel product, MGA must be able to
10 compare the sale of the Mattel Harmed Products both before and after Bratz was
11 introduced to the market.  For example, if sales of Mattel Harmed Products
12 continued to increase after Bratz was introduced to the market, that would tend to
13 suggest that Mattel did not suffer any harm vis-à-vis Bratz.  Similarly, MGA's
14 requests for documents concerning the recall of any Mattel Harmed Product since
15 2000 or 2001 will help MGA establish whether there may have been intervening
16 circumstances, unrelated to the sale of Bratz, that impacted the sale of the Mattel
17 Harmed Products.
18       Finally, Mattel complains that certain requests for production—namely, RFP
19 Nos. 73-76 and 93—are "overbroad" because they seek documents concerning lost
20 sales of Mattel Harmed Products by licensees in the United States, Mexico, and
21 Canada.  Mattel claims these documents are not relevant, but even a cursory review
22 of Mattel's cross-complaint reveals that that is not true.  In fact, the requests are
23 relevant because Mattel is claiming that it has suffered harm not just in the United
24 States, but in Mexico, Canada and throughout the world.  See, e.g., Mattel Third
25 Amended Cross-Complaint, ¶ 56 ("The stolen data was not limited to the Mexican
26 market.  The information stolen would, and did, give MGA an unfair competitive
27
28

1 advantage in the United States and around the world.")[3] Mattel also seeks damages
2 for past, present, and future harm and lost profits. See, e.g., Mattel Third Amended
3 Cross-Complaint, Prayer for Relief ¶¶ 7-10. So long as Mattel is making these
4 allegations and requesting these damages, MGA is entitled to whatever documents
5 Mattel has in its possession that support these claims. There is nothing unfair or
6 overbroad about making such requests.

### IV.  MGA'S DISCOVERY NOT UNDULY BURDENSOME.

Hoping to find any reason not to provide substantive responses, Mattel also argues that the requested discovery is "unduly burdensome" because of the size of Mattel's world-wide operations and the number of different locations in which responsive documents may be found. Opp. at 15-16. Mattel spends a significant portion of its brief quantifying the amount of data it has, the number of servers it maintains, and time and expense it would take to search for responsive documents. Opp. at 17-18. Mattel's "unduly burdensome" argument, however, is not convincing for the simple reason that Mattel has been a gorilla in they toy industry for decades. As Mattel loves to boast, it is "the world's most successful toy company" with subsidiaries and affiliates in dozens of countries, and thousands of employees worldwide. Opp. at 2:2-4. Such massive size does not relieve Mattel of its obligations to comply with the rules of civil discovery. If anything, it means that Mattel should have the resources and the know-how to produce the documents that it has placed at issue with the allegation in its cross-complaint.[4]

Mattel further argues that certain interrogatories and requests for production are unduly burdensome because they ask Mattel to identify "all" facts, documents, and persons with knowledge regarding certain subject matters. For example,

---

[3] MGA does not concede that damages outside the U.S. are properly recoverable in this suit.
[4] Moreover, if size truly were an issue, Mattel would never have been able to respond to MGA's Phase 1 interrogatories or requests for production. The fact that Mattel has produced "nearly a million pages of documents to date" shows that size has nothing to do with its ability to comply with its discovery obligations and produce responsive documents in this case. Opp. at 3:16-18.

1 | Interrogatory Nos. 1-3 ask Mattel to identify "any" fact that supports its claim that
2 | it owns trade secrets, that those secrets were misappropriated by MGA, and that
3 | Mattel suffered harm as a result. Similarly, RFP No. 90 asks Mattel to produce
4 | documents that relate to "any" reports, studies, analyses, focus groups, polling or
5 | other research concerning sales of the Mattel Harmed Products.

6 | Mattel claims that this language is unduly burdensome because responsive
7 | documents "could be found anywhere on one of the [hundreds] of servers Mattel
8 | maintains worldwide or in the possession of one of Mattel's thousands of
9 | employees." Opp. at 15:10-12. However, Mattel is the proverbial pot calling the
10 | kettle black with this objection since Mattel itself has propounded numerous
11 | discovery requests that have asked MGA to identify "all" facts, documents, and
12 | persons with knowledge regarding a particular subject matter. See, e.g., Mattel's
13 | Phase 1 Interrogatory Nos. 56-63 (asking MGA to state "all" facts, identify "all"
14 | persons with knowledge, and identify "all" documents that "refer or relate" to
15 | certain subject matters).

16 | Finally, there is no reason why Mattel should be allowed to identify some of
17 | the facts and documents that support its claims, but not others. One of the reasons
18 | for civil discovery is to allow parties to discover all (not just some) of the evidence
19 | that will be presented at trial. Mattel's suggestion that it will be unduly burdened if
20 | it has to identify "all" of its evidence is simply not convincing. If anything is
21 | unduly burdensome about this situation, it is the fact that Mattel has placed
22 | documents and information at issue by seeking millions in alleged damages from
23 | MGA, but so far is refusing to answer any Phase 2 interrogatory. Mattel's position
24 | is untenable and it should be compelled to respond to MGA's requests as they are
25 | phrased.

26 | **V.    MGA'S DISCOVERY IS NOT DUPLICATIVE.**
27 | On July 31, 2009, more than eighteen months after they were first
28 | propounded, Mattel finally responded to certain Phase 1 interrogatories concerning

1  Mattel's alleged trade secret claims. It took a motion to compel and about a year
2  and a half before Mattel even attempted to identify its alleged trade secrets in a
3  discovery response. And when Mattel finally did, the responses were so ambiguous
4  and so full of irrelevant information, that MGA still has no idea what specific
5  documents constitute Mattel alleged trade secrets, or what specific documents
6  Mattel claims were misappropriated.

7  For example, Mattel's recent responses identify thousands of documents that
8  Mattel claims "refer or relate" to its trade secret claims. But these documents
9  include newspaper articles, magazine articles, copyright registrations, pleadings and
10 other publicly filed documents that cannot possibly constitute Mattel's alleged trade
11 secrets. Those discovery responses will no doubt need to be narrowed in the future,
12 but Mattel cannot claim that they obviate the need to respond to MGA's Phase 2
13 interrogatories.

14 The recently served discovery responses concern Phase 1 Interrogatory Nos.
15 20, 21, 22, 23 and 28. Earlier this year, Mattel voluntarily agreed to answer those
16 interrogatories after MGA reminded Mattel of its promise (in Phase 1) to do so.
17 Subsequently, Mattel welched on this promise and MGA was forced to file a
18 motion to compel. That motion was heard on July 9, 2009, at which point Mattel
19 was ordered to provide responses to those Phase 1 interrogatories, and the
20 Discovery Master specifically tabled the issue of whether Mattel's answers to those
21 interrogatories would count toward the number of Phase 2 interrogatories that
22 MGA was allowed to propound. See Rorie Decl., Ex. A (Transcript of 7/9/09
23 Hearing at 17:9-18:4)("[J]ust so everyone knows what the ruling is going to be, the
24 interrogatories need to be answered. If there is another set of interrogatories that
25 puts – that you believe puts MGA over the limit, then the remedy is for that is to
26 file a motion for protective order on the additional interrogatories.") There is
27 simply no way that Mattel can argue that its compliance with the Discovery
28 Master's ruling regarding certain Phase 1 interrogatories somehow obviates the

1 | need for Mattel to answer the MGA's first set of Phase 2 interrogatories.

2 | Moreover, there are significant differences between the Phase 1 interrogatories that Mattel recently answered and the Phase 2 interrogatories that are currently at issue in this motion. For example, MGA's Phase 2 Interrogatory Nos. 9-11 seek information concerning Mattel's spoliation claims, while MGA's Phase 2 Interrogatory Nos. 12-14 seek information concerning Mattel's RICO claims. These two subjects were not addressed in the Phase 1 interrogatories that Mattel recently answered and Mattel needs to answer them now.

## VI. MGA'S DISCOVERY IS NOT PREMATURE.

The discovery cut-off for Phase 2 discovery is December 11, 2009. In other words, MGA has only a few short months to take and complete its Phase 2 discovery. There is nothing premature about asking Mattel to respond to interrogatories that were propounded months ago and that have still not been answered. With the Phase 2 discovery clock ticking, MGA is entitled to whatever documents and information Mattel currently has in its possession regarding this case. This is so, even if the requested discovery may also be the subject of subsequent expert discovery. Mattel "premature" argument is hollow and should be rejected.

## VII. MATTEL CANNOT BLAME MGA FOR MATTEL'S FAILURE TO RESPOND.

At the end of its opposition papers, Mattel asserts that it cannot answer MGA's Phase 2 Interrogatories or Requests For Production because MGA allegedly has not responded to certain of Mattel's discovery requests in this case. Opp. at 24-27. Mattel's finger-pointing should be seen for what it is: an obvious attempt to avoid providing discovery in this case. Mattel's discovery to MGA has absolutely nothing to do with MGA's discovery to Mattel and, even if it did, that coincidence would not justify Mattel's dilatory conduct. Mattel's discovery responses are consistently clear that they are subject to information that is currently available to

Mattel, and that Mattel reserves its rights to supplement based on subsequently acquired information. Accordingly, Mattel has no excuse for failing to respond to MGA's discovery based on information that is currently in its possession, custody or control.

## VIII. SANCTIONS ARE WARRANTED AGAINST MATTEL.

Mattel's incessant reliance on its "counting" objection to avoid answering discovery merits an award of monetary sanctions under Rule 37(a)(5). That section provides that the Court "must" require the party whose conduct necessitates a motion to compel to pay for the movant's reasonable expenses incurred in making the motion, including attorney's fees. Mattel argues that sanctions are not warranted because it "promptly brought a motion for a protective order" regarding the "threshold numbering issue". Opp. at 33:13-15. However, Mattel ignores the fact that it continued to assert this objection even *after* the July 9 hearing in which the Discovery Master expressly ordered Mattel to start answering discovery. See Rorie Decl., Ex. A (Transcript of 7/9/09 Hearing at 17:9-18:4). Mattel has been asserting this same hackneyed objection for months, and continued to do so even after the Discovery Master ruled that it was premature and did not provide a basis for refusing to answer discovery. Mattel should be sanctioned for insisting on motion practice to resolve a moot issue.

## IX. CONCLUSION

For the foregoing reasons, MGA's motion to compel and request for sanctions should be granted.

Dated: August 11, 2009　　　ORRICK, HERRINGTON & SUTCLIFFE LLP

By: /s/ William A. Molinski  
 William A. Molinski  
Attorneys for MGA ENTERTAINMENT, INC., MGA ENTERTAINMENT HK, LTD., MGA de MEXICO, S.R.L. de C.V., and ISAAC LARIAN