# Exhibit 2

Page 1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION

CARTER BRYANT, an individual,

    Plaintiff,

  vs.                     No. CV 04-9049 SGL (RNBx)
                          Consolidated with
MATTEL, INC., a Delaware     Nos. CV 04-9405 and
corporation,               05-2727

    Defendants.

_____
AND CONSOLIDATED ACTIONS.
_____

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Los Angeles, California

Thursday, August 6, 2009

Reported by:
CHERYL R. KAMALSKI
CSR No. 7113

Job No. 116947

Page 26

```
 1            MR. O'BRIEN:  Those were his orders relating to
 2   the document requests and the cutoff for the production of
 3   documents so the internal documents between counsel and
 4   their client wouldn't be produced, or was there another
 5   order --
 6            MR. ZELLER:  At least the order I had in mind was
 7   the one dealing with, for example, some of the lawyer
 8   depositions that were taken in phase 1, particularly of
 9   Patty Glaser.  There was an issue over that.  There were
10   fewer issues over transactional --
11            MR. O'BRIEN:  Was Patty's deposition taken?
12            MR. ZELLER:  It was.
13            MR. O'BRIEN:  Okay.
14            MR. ZELLER:  It was.  And there were particular
15   reasons -- as you also may be aware, when Ms. Glaser
16   became counsel again for phase 2 purposes, we raised
17   specifically with Judge Larson the issue that she is a
18   percipient witness, she's an exception.  I mean, there are
19   just particular facts because she has been MGA's and
20   Mr. Larian's long-time counsel and had involvement --
21   you'll recall, of course, specifically too --
22            MR. O'BRIEN:  Relating to the waiver issues.  I
23   understand.
24            MR. ZELLER:  Precisely.  So she is an exception.
25   But there's -- the idea that somehow -- first of all, we
```

1    already have a playing field on this issue.  Transactional
2    lawyers have been deposed, they have testified at trial,
3    both sides have asked for them to be -- to testify, and
4    there were not, we'll say, this pall over the proceedings.
5    I mean, the fact is that people who conduct --
6    sophisticated people or businesses conduct many of their
7    business affairs by using lawyers.  Those lawyers have
8    communications with third parties, they know things that
9    are completely not even arguably privileged that the
10   principal is not going to know.  The idea that somehow --
11   when we talk about Mr. Carson, for example, Mr. Carson
12   probably knows more about this transaction than anyone
13   else on earth, he had all of the communications with
14   Wachovia and a whole variety of parties, he was the person
15   doing all of this.  That's why people hire lawyers.  But
16   those third-party communications aren't even arguably
17   privileged and they, of course, have a material bearing on
18   these very transactions that are at issue.  And the same
19   is true for Mr. Mashian.  We're not -- this is not some
20   free-floating, you know, inquiry into we want to know
21   about your litigation strategy.  If that's the kind of
22   deposition that's sought, that's understandable that
23   people would have an issue with that.  And, again,
24   Judge Infante -- I can't recall exactly if he applied the
25   Shelton rule, which is the Eighth Circuit case, but he

1    certainly -- I believe he adopted something that was very
2    similar, if not identical to it -- when you're talking
3    about litigation counsel, because, again, that raises its
4    own separate host of concerns.  But I don't think there's
5    any authority -- in fact, I think the authority we've
6    cited in our brief is to the contrary, that you would
7    basically engraft that kind of standard, which has very
8    particular concerns about litigation counsel, onto
9    transactional counsel.  And that's who we're talking about
10   here with respect to Mr. Carson and with respect to
11   Mr. Mashian.  There is absolutely no showing that they did
12   anything other than this transactional work.  And, of
13   course, there's, as I was mentioning, the authority that
14   we've cited in the briefs make very clear that, number 1,
15   transactional counsel is not immune from having to produce
16   documents, nonprivileged documents, or provide
17   nonprivileged testimony.  In addition, as we've also
18   talked about in our papers, sometimes -- these decisions,
19   they make clear these are the right people to be talking
20   about it.  I mean, so far -- and I -- this may get a bit
21   into the issue of reconsideration, but, ultimately what's
22   going on here is kind of this whole shifting in arguments
23   that we have.  We were told initially that Mr. Mashian's
24   testimony, you know, wasn't relevant, because, well, these
25   transactions haven't been plead.  They raised that very

Case 2:04-cv-09049-DOC-RNB   Document 6248-3   Filed 08/11/09   Page 6 of 11   Page ID
#:206100
REPORTER'S TRANSCRIPT OF PROCEEDINGS                    08/06/09

Page 29

1   formal kind of argument, you'll recall.  And, therefore,
2   that had a bearing on the degree of relevance of this
3   discovery.  And in the main the orders reflect that, when
4   you did the balancing, say does this have minimal
5   relevance or does it have some greater degree of
6   relevance.  So that argument was completely taken into
7   account.  Now, they say that that change in the pleadings
8   is not a material fact, which just cannot be the case.
9   That's inconsistent with their own argument of why it is
10  that they urged and in many respects succeeded in putting
11  limitations on the discovery, only to particular issues,
12  as Mr. Villar even conceded, as to, say, punitive damages,
13  rather than being able to get into the substance of the
14  transactions.  And that's what we think we're entitled to
15  at this point.
16          I'll come back to the, kind of, reconsideration
17  because I think there actually is something very directly
18  on point on this, by the way.
19          But, also, this idea, and this is the standard
20  that was being, I think, advocated by both MGA and the
21  Omni parties, the language used such as "critical
22  witness," or "you can't get it anywhere else" or "it's
23  only necessary," I mean, that is just simply not that
24  standard.  In fact, the decisions that we've cited in our
25  briefs reject that very kind of heightened extra special

 1   standard applied to transactional lawyers.
 2            I would also submit that it's inconsistent with
 3   Judge Larson's July 9th order where he makes very clear
 4   the standard here -- and this was, again, dealing with an
 5   attorney, I mean a law firm, it was dealing with
 6   Bingham -- the Court didn't apply some extra special
 7   super-heightened protection, he said you balance relevance
 8   versus burden.  And, you know, in fact, was quite clear,
 9   this is on page 4 of the July 9th order, that -- this idea
10   that somehow you have to prove that the discovery is
11   necessary is not the standard.  And yet that is precisely
12   the standard that's being advocated here, and I would
13   submit that it's been rejected by Judge Larson.
14            Then, I think, follow-up -- if that addresses the
15   question about the concern -- I mean, there's not some
16   whole litany of lawyers that are all lined up to be
17   deposed.  I suppose I should also mention there are
18   certainly key transactional people involved in these
19   transactions.  So far we know about Mr. Carson, we know
20   about Mr. Mashian.  Those are the ones who we've, so far,
21   subpoenaed and sought to depose.  We've attempted to get
22   some documents from Bingham, but you're aware of what it
23   is that we have pursued thus far.
24            I also would submit that somehow the idea that
25   down the road other things may happen, that that means we

1   shouldn't get what is clearly relevant and, in fact, quite
2   relevant discovery is not a basis either for cutting us
3   off in discovery.  If it appears that, whether it's Mattel
4   or some other side, is abusing the discovery process by
5   harassing lawyers, you can certainly consider those
6   circumstances at the time that they arise and take
7   appropriate action.  But somehow this -- I would, frankly,
8   submit that this argument about what's going to happen in
9   the future is not only somewhat inconsistent with what's
10  already occurred, but it's just pure speculation.  I don't
11  think that's a basis for saying now Mattel doesn't get
12  discovery that it's otherwise entitled to.
13           The follow-up point I would make about the
14  reconsideration standard here -- I mean, ultimately I
15  think it's quite clear that the issue here is was the
16  filing of the third amended complaint a new fact
17  warranting reconsideration.
18           Mr. Villar certainly has not identified any
19  authority saying that it wouldn't properly be considered
20  that.  As I was mentioning, and I would submit, that their
21  own positions in the past where they treated the fact that
22  these transactions were not in our pleadings as being a
23  material fact shows that it's a material fact; that now
24  we, of course, have different pleadings; and the third
25  point I would make on that, and perhaps the most important

Page 32

1  one is, is that there is authority for it, which is on
2  page 5 of Judge Larson's July 9th order.  Mr. Villar
3  characterizes these as offhanded comments by Judge Larson
4  at a hearing.  This is a written decision by Judge Larson.
5  He says, very clearly,
6            "In the context of remanding
7        Discovery Master Order No. 27 to the
8        Discovery Master that you are to
9        reconsider it and rebalance it in
10       light of the recently filed TAAC."
11           I mean, there is no possible reading of this
12 order other than that Judge Larson recognizes the filing
13 of the third amended answer and counterclaims itself is an
14 operative fact warranting reconsideration, particularly
15 when this balancing test is at issue.  And there's no
16 question that, notwithstanding Mr. Mashian's counsel's
17 arguments, that that balancing was at the core of what the
18 Discovery Master did in previously quashing Mr. Mashian's
19 declaration.  You specifically talked about the, at that
20 point, in your view, the minimal relevance of it, and
21 balanced it, and used the word "balance," and the whole
22 issue of privilege really was the burden aspect.
23           We would submit that at this point, of course,
24 with the heightened relevance, based upon these new
25 allegations, as well as the fact that there's really no

Page 33

1   demonstrable and no proven burden in this particular case,
2   there are many questions that we would be entitled to ask
3   Mr. Mashian that would not involve invocation of the
4   privilege.  That's really never been disputed, I think.  I
5   mean, Mr. Mashian, even at the outset of this, didn't say,
6   "Every scrap of information that I ever possibly could
7   have would be privileged and, therefore, there's no
8   information, no admissible evidence that could come out of
9   my deposition."  So, I mean, we would submit that the
10  third amended answer and counterclaims are, in fact, the
11  operative fact that allow and warrant reconsideration,
12  just as Judge Larson already ruled it was, in his July 9th
13  order.
14           MR. O'BRIEN:  Thank you.  I'll take this under
15  submission, and we'll try and get an order out promptly,
16  given that it involves the scheduling of a deposition.
17           Let's now take a look at the second order, which
18  is Mattel's motion for protective order.  Who'll argue
19  that on Mattel's side?
20           MR. PROCTOR:  That's me.
21           MR. O'BRIEN:  All right, Mr. Proctor.  I'm trying
22  to stick to 10 minutes or less and --
23           MR. PROCTOR:  I think I can do the first part of
24  it in less.
25           There are really only two issues that the

Page 64

1          I, the undersigned, a Certified Shorthand
2     Reporter of the State of California, do hereby certify:
3          That the foregoing proceedings were taken
4     before me at the time and place herein set forth; that any
5     witnesses in the foregoing proceedings, prior to
6     testifying, were duly sworn; that a record of the
7     proceedings was made by me using machine shorthand
8     which was thereafter transcribed under my direction; that
9     the foregoing transcript is a true record of the testimony
10    given.
11         Further, that if the foregoing pertains to
12    the original transcript of a deposition in a Federal
13    Case, before completion of the proceedings, review of
14    the transcript [ ] was [ ] was not requested
15         I further certify I am neither financially
16    interested in the action nor a relative or employee
17    of any attorney or any party to this action.
18         IN WITNESS WHEREOF, I have this date subscribed
19    my name.
20
21    Dated: _____
22
23                           _____
                             CHERYL R. KAMALSKI
24                             CSR No. 7113
25