1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      John B. Quinn (Bar No. 090378)
2      johnquinn@quinnemanuel.com
      Michael T. Zeller (Bar No. 196417)
3      (michaelzeller@quinnemanuel.com)
    865 South Figueroa Street, 10th Floor
4   Los Angeles, California  90017-2543
    Telephone:  (213) 443-3000
5   Facsimile:  (213) 443-3100

6   Attorneys for Mattel, Inc.

7                    UNITED STATES DISTRICT COURT

8                   CENTRAL DISTRICT OF CALIFORNIA

9                          EASTERN DIVISION

| | |
|---|---|
| 10  CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| 11         Plaintiff, | Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727 |
| 12      vs. | |
| 13  MATTEL, INC., a Delaware<br>corporation, | DISCOVERY MATTER<br>[To Be Heard by Discovery Master |
| 14      Defendant. | Robert C. O'Brien Pursuant to Order<br>of January 6, 2009] |
| 15 | |
| 16  AND CONSOLIDATED ACTIONS | [PUBLIC REDACTED] MATTEL,<br>INC.'S NOTICE OF MOTION AND |
| 17 | MOTION FOR LEAVE TO TAKE<br>ADDITIONAL DEPOSITIONS; AND |
| 18 | MEMORANDUM OF POINTS OF<br>AUTHORITIES IN SUPPORT |
| 19 | THEREOF |
| 20 | [Declaration of Scott L. Watson filed<br>concurrently] |
| 21 | |
| 22 | Hearing Date:  TBA |
| 23 | **Phase 2:**<br>Discovery Cut-off:     Dec. 11, 2009 |
| 24 | Pre-trial Conference:  March 1, 2010<br>Trial Date:              March 23, 2010 |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

MATTEL'S MOTION FOR ADDITIONAL DEPOSITIONS

1 | TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2 |       PLEASE TAKE NOTICE that on a date and at a time to be set by the Discovery

3 | Master, plaintiff Mattel, Inc. ("Mattel") will, and hereby does, move the Discovery

4 | Master, pursuant to <u>Federal Rule of Civil Procedure</u> 26(b), for an order granting Mattel

5 | leave to take additional depositions beyond and without regard to the ten provided by

6 | the <u>Federal Rules of Civil Procedure</u>.

7 |       More specifically, Mattel seeks leave to depose each of the following beyond and

8 | without regard to the ten deposition limit set forth in the <u>Rules</u>: (1) 30(b)(6) witness of

9 | Omni 808 Investors, LLC ("Omni 808"); (2) Omni 808's alleged investors and their

10 | representatives, which include Neil Kadisha, Benjamin Nazarian, Joseph Monian,

11 | Vision Capital, David Nazarian, Arsalan Gozini and Elahe Pezeshkifar; (3) Angela

12 | Larian: (4) Shirin Makabi; (5) Jahangir Makabi; (6) Peter Carson; (7) Fred Mashian; (8)

13 | Leon Neman; (9) Leon Farahnik; (10) Susan Kim; (11) Brian Wing; (12) John

14 | Woolard; (13) Tom Allison; (14) Patrick Ma; (15) 30(b)(6) witness of Bank of Ireland;

15 | (16) 30(b)(6) witness of Cerberus; (17) 30(b)(6) witness of Silverpoint; (18) 30(b)(6)

16 | witness of IGWT Group, LLC; (19) 30(b)(6) witness of IGWT 826 Investments, LLC;

17 | (20) Lexington Financial Limited; (21) Wachovia; and (22) 30(b)(6) witness of MGA

18 | Canada.

19 |       In addition, Mattel has previously been granted leave by Judge Larson to depose

20 | Pablo Vargas, Mariana Trueba, Shirin Salemnia, and Janine Bribois without regard to

21 | the deposition limits. Out of an abundance of caution, however, Mattel restates its

22 | intention to depose them here and requests that the Discovery Master rule that such

23 | leave is still effective or, if it is not, grant leave to take such depositions beyond and

24 | without regard to the ten deposition limit as well.

25 |       Mattel makes this Motion on the grounds that the breadth and complexity of

26 | Phase 2, the stakes involved and the other relevant factors considered by courts warrant

27 | more than the 10 depositions permitted by the <u>Federal Rules</u>. This Motion is based on

28 | this Notice of Motion and Motion, the accompanying Memorandum of Points and

1   Authorities, the Declaration of Scott L. Watson, the records and files of the Court, and

2   all other matters of which the Court may take judicial notice.

3   **Meet And Confer**

4        The parties met and conferred on the issues presented by this motion on July 29,

5   2009 and dates thereafter.

6

7   DATED:  August 12, 2009         QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

8

9                        By /s/ Michael T. Zeller

10                         Michael T. Zeller

                            Attorneys for Mattel, Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...........................................................................1

STATEMENT OF FACTS ................................................................................2

ARGUMENT ...................................................................................................7

I.   MATTEL IS ENTITLED TO THE REQUESTED DEPOSITIONS ..............7

A.   The Rules Contemplate Additional Discovery .......................................7

B.   Mattel Should Be Granted Additional Depositions ...............................8

C.   Leave To Depose Individuals And Entities With Direct Knowledge Relevant To This Action Is Proper And Appropriate..........9

D.   Mattel Is Entitled To Take The Depositions For Which Judge Larson Previously Granted Leave...........................................................24

E.   Mattel Meets The Requirements for Additional Discovery.................27

CONCLUSION................................................................................................28

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

### <u>Cases</u>

<u>Bromgard v. Montana</u>,
2007 WL 1101179 (D. Mont. April 11, 2007) .................................................. 8, 22

<u>Presidio Components, Inc. v. Am. Technical Ceramics Corp.</u>,
2009 WL 861733 (S.D. Cal. Mar. 25, 2009) ...................................................... 8

<u>Rx USA Wholesale, Inc. v. McKesson Corp.</u>,
2007 WL 1827335 (E.D.N.Y. June 25, 2007) ...................................................23

### <u>Statutes</u>

<u>Fed. R. Civ. P.</u> 26(b) ........................................................................................7

<u>Fed. R. Civ. P.</u> 26(b)(2).....................................................................................7

<u>Fed. R. Civ. P.</u> 26(b)(2)(C)(i) .........................................................................22

<u>Fed. R. Civ. P.</u> 26(b)(2)(C)(ii) ........................................................................23

<u>Fed. R. Civ. P.</u> 26(b)(2)(C)(iii) .......................................................................23

<u>Fed. R. Civ. P.</u> 30(a)(2)(A) ...............................................................................7

<u>Fed. R. Civ. P.</u> 30(b)(6)  ...............................................................9, 17, 19, 20

<u>Fed. R. Civ. P.</u> 33 ..............................................................................................7

<u>Fed. R. Civ. P.</u> 33(a) ..........................................................................................7

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

Mattel seeks leave to take depositions of certain individuals and entities directly relevant to Phase 2 beyond the ten depositions allowed by the <u>Federal Rules</u>. Even the limited discovery conducted to date shows that Mattel will need these depositions to secure adequate Phase 2 discovery. Mattel is entitled to depose additional individuals involved in MGA's theft of Mattel's trade secrets. Mattel is likewise entitled to depose those involved in or knowledgeable about the fraudulent transactions and RICO violations alleged in Mattel's Third Amended Answer and Counterclaims ("TAAC"). And Mattel is entitled to depose those with knowledge of MGA's claims. The reasons for taking the deposition of each of the named entities and individuals for whom Mattel seeks leave is discussed in detail below.

The ten-deposition limit is not intended to prevent appropriate discovery, and courts have broad discretion to allow additional discovery based on the complexity of the case and the stakes involved. Each of the factors considered in deciding whether to grant leave weighs heavily in favor of granting Mattel's request here. The Court has already recognized that this is an exceedingly complex case, and MGA itself has repeatedly acknowledged this as well. Not only has Mattel alleged numerous acts of trade secret theft involving massive amounts of Mattel information, but the predicate crimes alleged in Mattel's RICO claims in the TAAC cover hundreds of additional separate acts, including criminal copyright infringement, wire and mail fraud, evidence destruction, money laundering and other financial manipulations, over the course of many years. For its part, MGA claims that Mattel has infringed its purported rights in many hundreds of products. The stakes, too, are extremely high. MGA has publicly proclaimed that it is seeking "billions" of dollars from Mattel on its claims alone. The depositions Mattel seeks leave for are not duplicative of prior discovery, Mattel has not had an adequate opportunity to take discovery on these matters, and the substantial benefits of discovery on these central issues outweigh any burden.

1   Mattel respectfully requests that its motion for leave be granted.

2   **Statement of Facts**

3   ***Limits on Depositions.*** At a February 12, 2007 scheduling conference, the Court

4   set an initial limit of 24 depositions per side.[1] However, the Court also recognized at

5   the time that the parties might need more depositions.[2] After MGA refused to produce

6   several key witnesses, including those directly named as having stolen Mattel trade

7   secrets, and over MGA's vigorous opposition, the Court granted in January 2008 a

8   motion by Mattel requesting leave to take approximately 49 additional depositions in

9   excess of and without regard to the then-applicable limit.[3] At the time Mattel requested

10  leave, it had taken 18 depositions, only one of which was related to Phase 2 issues.[4] To

11  date, based on the leave granted by Judge Larson, Mattel has deposed a total of

12  approximately 70 individuals and entities, but these depositions primarily related to

13  Phase 1; only a handful primarily related to Phase 2 issues.[5]

14  ***Phase Two Discovery.*** In February 2008, the Court granted MGA's request for a

15  stay of Phase 2 discovery stay.[6] The Phase 2 stay was subsequently lifted in January

16  2009. The Court stated at a February 11, 2009 scheduling conference that the 2007

17  Scheduling Order initially limiting depositions to 24 per side only applied to Phase 1

18

19  [1]  See Feb. 12, 2007 Scheduling Order, at 1, Exhibit 1 to the Declaration of Scott L. Watson ("Watson Decl.") filed concurrently herewith.

20  [2]  See Feb. 12, 2007 Scheduling Conference Tr., at 22:12-15, Watson Decl. Exh. 56 ("I don't want to say they are soft limits [on the number of depositions], but they are limits which

21  the Court would certainly understand or would invite counsel to submit a motion to expand if there's reason to.").

22  [3]  See Jan. 7, 2008 Order, Watson Decl. Exh. 2 (granting Mattel's request for additional

23  depositions exceeding the preset limit of 24); see also Mattel's Motion for Leave to Take Additional Discovery, dated November 19, 2007, at 9-11, 13, Watson Decl. Exh. 3.

24  [4]  See Mattel's Motion for Leave to Take Additional Discovery, dated November 19,

25  2007, at 2, Watson Decl. Exh. 3.

26  [5]  The following deponents are the depositions Mattel has taken (or at least had started but not yet completed) that were primarily Phase 2 depositions:  Schuyler Bacon; Ron Brawer;

27  Nick Contreras; Dan Cooney; Susana Kuemmerle; Jorge Castilla; and Gustavo Machado.

28  [6]  See January 7, 2008 Hearing Tr., at 22:20-23:25, Watson Decl. Exh. 57.

1 | discovery.[7]  The Court also stated at that time that the <u>Federal Rules</u> would govern the
2 | limits on the remaining Phase 2 depositions,[8] which limit depositions to 10 per side
3 | absent leave of the court or agreement of the parties.  At the hearing, the Court directed
4 | that requests for leave to take depositions in excess of the limit should be made to the
5 | Discovery Master in the first instance.[9]

6 |      ***MGA's Complaint and Mattel's Third Amended Answer and Counterclaims.***
7 | MGA has asserted four claims against Mattel that are part of Phase 2, including claims
8 | for trade dress infringement and state and federal unfair competition claims.[10]
9 | According to MGA, these claims seek "billions" of dollars from Mattel[11] and alone
10 | encompass ██████████████

11 |      On May 21, 2009, the Court granted Mattel leave to amend its answer and
12 | counterclaims, and Mattel filed its TAAC on May 22, 2009.[13]  Mattel currently alleges
13 | fourteen Phase 2 counterclaims, including misappropriation of trade secrets, conspiracy
14 | to violate RICO, RICO violations, unfair competition claims, and violations of
15 | California's fraudulent transfer act, among others.  In its June 29, 2009 Amended
16 | Answer, MGA asserts 35 affirmative defenses -- thirteen of which were asserted for the
17 | first time in this most recent answer.[14]

18 |

19 |     [7]   <u>See</u> Feb. 11, 2009 Hearing Tr., at 102:13-18, Watson Decl. Exh. 58 ("The limits that
20 | were placed were limits that were placed on the earlier discovery phase. To be clear again, I have placed no limits, no restrictions, other than what is set forth in the rules of civil procedure
21 | and in local rule 37 on discovery from this point until March 23rd.").
    [8]   <u>See</u> Feb. 12, 2007 Scheduling Order, at n.4, Watson Decl. Exh. 1.
22 |     [9]   <u>See</u> Feb. 11, 2009 Hearing Tr., at 104:5-8, Watson Decl. Exh. 58.
23 |     [10]  <u>See</u> MGA's Complaint, dated April 13, 2005, Watson Decl. Exh. 4.
    [11]  <u>See</u> Nightline transcript, dated December 22, 2006, Watson Decl. Exh. 61.
24 |     [12]  <u>See</u> MGA's Supp. Response to Interrogatory No. 2 Of Mattel, Inc.'s First Set of
25 | Interrogatories Re Claims of Unfair Competition, at 5-19, Watson Decl. Exh. 24.
    [13]  <u>See</u> May 21, 2009 Order, at 6, Watson Decl. Exh. 5; <u>see also</u> Mattel's Third Amended
26 | Answer & Counterclaims, dated May 22, 2009, Watson Decl. Exh. 6.
27 |     [14]  MGA Parties' Answer and Affirmative Defenses to Mattel, Inc.'s Third Amended
Answer and Counterclaims, dated June 29, 2009, Watson Decl. Exh. 7.
28 |

As MGA has acknowledged, ███████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
███████████████████████████ In granting Mattel leave to file the TAAC, the Court explicitly observed that it was "fully aware that the … amendments will dramatically expand the scope of the present litigation" and "exceedingly complicate an already exceedingly complicated case."[17]

Mattel's RICO claim identifies multiple distinct RICO enterprises comprised of 25 named individuals and entities (as well as participants so far unknown to Mattel). Mattel's TAAC added dozens of new allegations in support of the newly pleaded predicate acts of obstruction of justice, money laundering, engaging in monetary transactions in property derived from unlawful activity, and the concealment of assets. Mattel's conspiracy to commit RICO violations claim was also greatly expanded due to these newly discovered fraudulent transfers ███████████████████████ ███. Furthermore, the TAAC added an entirely new fraudulent transfer claim. The allegations supporting this claim (as well as Mattel's RICO claims) put at issue financial transactions and other related fraudulent misconduct committed by a host of individuals and entities at the MGA Parties' direction, significant parts of which either occurred after discovery had been stayed or else where unknown to Mattel previously. As such, Mattel has not had the opportunity previously to obtain testimony on them.

Mattel's allegations in Phase 2 go to Isaac Larian's and MGA's decade-long effort to take Mattel's valuable property, use it to build his business, and then lie, obstruct and conceal in order to block Mattel from ever getting back what rightly belongs to it. Not only are the allegations complex, but the concealment which is at their core requires

---

[15]   MGA Parties' Opp. to Mattel's Motion for Leave to File Third Amended Answer & Counterclaims, dated April 27, 2009, at 5, Watson Decl. Exh. 8.

[16]   Id. at 7.

[17]   May 18, 2009 Hearing Tr., at 19:24-20:3, Watson Decl. Exh. 59.

1  additional discovery precisely for that reason. ████████████████████

2  ████████████████████████████████████████████████

3  ████████████████████████████████████████████████

4  ████████████████████████████████████████████████

5  ████████████████████████████████████████████████

6  ████████████████████████████████████████████████

7  ████████████████████████████████████████████████

8  ████████████████████████████. Mattel must depose a

9  number of individuals simply to unravel the transactions, let alone prove its claims. By

10  definition, because many of these acts occurred only after Phase 2 discovery was stayed

11  in early 2008 or even during or after the Phase 1 trial, Mattel could not seek to question

12  witnesses about them or propound additional discovery directed to them until after the

13  Phase 2 stay was lifted earlier this year and Mattel began to uncover Larian's latest

14  misconduct.

15      ***Depositions Since The Phase 2 Discovery Stay Was Lifted.*** Since the Phase 2

16  discovery stay was lifted, Mattel has noticed 9 depositions. None of the witnesses has

17  been produced for deposition.

18      The deposition notices to Shirin Salemnia, Pablo Vargas, Mariana Treuba, Fred

19  Mashian, Neil Kadisha, and Leon Neman were served over six months ago.[18] MGA

20  resisted the depositions of Mr. Vargas and Ms. Trueba, and Mattel is proceeding under

21  the Hague Convention to depose these individuals, consistent with the Discovery

22

23  ────────────────

24  [18]  See Deposition Notice of Shirin Salemnia, dated September 4, 2007, Watson Decl. Exh. 9; Deposition Notice and subpoena of Pablo Vargas, dated September 13, 2007, Watson

25  Decl. Exh. 10; Deposition Notice and subpoena of Mariana Treuba, dated September 13, 2007, Watson Decl. Exh. 11; Deposition Notice and subpoena of Fred Mashian, dated January

26  23, 2009, Watson Decl. Exh. 12; Deposition Notice and subpoena of Neil Kadisha, dated January 23, 2009, Watson Decl. Exh. 13; Deposition Notice and subpoena of Leon Neman,

27  dated February 6, 2009, Watson Decl. Exh. 14.

28

1   Master's prior Order.[19]   The Discovery Master is familiar with the extensive motion

2   practice addressed to the depositions of Kadisha, Neman and Mashian, and the initial

3   delays that resulted from their counsel's misrepresentations to the Court and the

4   Discovery Master ███████████████████████████████████████

5   ███████████ Omni 808's flat refusal to comply with the Discovery Master's original

6   Order compelling it to produce documents.[20]

7   ████████████████████████████████████████████████

8   ████████████ However, Mr. Kadisha declined to appear and thus was compelled a

9   second time to sit for deposition, this time within 10 days.[22]  Mr. Kadisha has prolonged

10  even this second ordered deadline for compliance by leaving the country and thus will

11  not be deposed until the end of August.[23] ████████████████████████

12  ██████████████████████████████████████ He, too,

13  failed to comply with the deadline set by the Discovery Master and is now scheduled to

14  appear for deposition on August 14, 2009.[25]  The Discovery Master currently has under

15  submission Mattel's motion for reconsideration that seeks to compel Mr. Mashian to sit

16  for deposition.

---

[19]   See Phase 2 Discovery Matter Order No. 11, dated March 30, 2009, Watson Decl. Exh. 15.

[20]   See 2 Discovery Matter Order No. 3, dated March 10, 2009, at 28-29, Watson Decl. Exh. 26.

[21]   See Phase 2 Discovery Matter Order No. 33, May 18, 2009, Watson Decl. Exh. 52.

[22]   See Phase 2 Discovery Matter Order No. 43. dated July 30, 2009, Watson Decl. Exh. 16.

[23]   See August 3, 2009 letter from T. Gordinier to the Discovery Master, Watson Decl. Exh. 17; see also Phase 2 Discovery Matter Order No. 44, dated August 4, 2009, Watson Decl. Exh. 18 (granting an extension until August 24, 2009).

[24]   See Phase 2 Discovery Matter Order No. 33, May 18, 2009, Watson Decl. Exh. 52.

[25]   See August 3, 2009 letter from T. Gordinier to the Discovery Master, Watson Decl. Exh. 17.

1    Mattel has been trying to depose Jeanine Brisbois of MGA Canada since
2    September 2007, when it first noticed her deposition.[26]  Because MGA refused to
3    produce her, however, Mattel had to proceed through the Hague Convention and
4    requested, by motion in January 2008, that the Court issue a letter of request.  The
5    Phase 2 discovery stay requested by MGA resulted in Mattel's motion being taken off-
6    calendar, and Mattel re-filed the motion in January 2009.  On May 21, 2009, over the
7    MGA Parties' opposition, Mattel's application for Letters of Request for Ms. Brisbois
8    and MGA Canada was granted.[27]  Neither has appeared, however, and pursuant to
9    Canadian procedure, Mattel has filed a motion in Canada to enforce the Letters of
10    Request, which is currently scheduled to be heard by the Canadian court later this
11    month.[28]

12    More recently, Mattel has noticed the depositions of Patrick Ma, an MGA Hong
13    Kong executive; Susan Kim, a witness to MGA's trade secret theft; and Peter Carson,
14    an Omni 808 transactional attorney who handled central aspects of the debt acquisition
15    at issue in the TAAC.[29]

16    ### Argument

17    **I.      MATTEL IS ENTITLED TO THE REQUESTED DEPOSITIONS**

18    **A.      The Rules Contemplate Additional Discovery**

19    The <u>Federal Rules</u> initially limit each side to ten depositions.  <u>See</u> <u>Fed. R. Civ. P.</u>
20    30(a)(2)(A).  These limits are not intended to "prevent needed discovery," and courts
21    have "broad[] discretion" to allow additional discovery "based on the complexity" of

---

[26]    <u>See</u> Deposition Notice and subpoena of Janine Brisbois, dated September 14, 2007,
Watson Decl. Exh. 21.
[27]    <u>See</u> Phase 2 Discovery Matter Order No. 35, dated May 21, 2009, Watson Decl. Exh.
22; <u>see also</u> Request for Judicial Assistance issued by the Central District of California, dated
May 21, 2009, Watson Decl. Exh. 23.
[28]    <u>See</u> Notice of Application in the Ontario Superior Court of Justice, dated July 3, 2009,
Watson Decl. Exh. 53.
[29]    <u>See</u> Deposition Notice and subpoena of Patrick Ma, dated July 28, 2009, Watson Decl.
Exh. 19.

the case at hand. Notes of the Advisory Committee (1993) to <u>Fed. R. Civ. P.</u> 26(b) & 33. Indeed, the <u>Rules</u> direct that leave to take additional discovery "*shall* be granted" to the extent consistent with the principles set forth in <u>Rule</u> 26(b)(2). <u>Fed. R. Civ. P.</u> 30(a)(2)(A) & 33(a) (emphasis added). In deciding whether to permit additional depositions, courts consider whether:

> (1) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (2) the party seeking discovery has [had] ample opportunity obtain the information sought; or (3) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the party's resources, and the importance of the proposed discovery in resolving the issues.

<u>Presidio Components, Inc. v. Am. Technical Ceramics Corp.</u>, 2009 WL 861733, at *2 (S.D. Cal. Mar. 25, 2009) (allowing leave to depose additional individuals); <u>see also</u> <u>Bromgard v. Montana</u>, 2007 WL 1101179, at *1 -2 (D. Mont. April 11, 2007) (granting motion for leave to take additional depositions).

Here, each factor weighs in favor of granting Mattel's motion.

**B.    Mattel Should Be Granted Additional Depositions**

Mattel should be granted leave to take the depositions requested here without regard to the ten deposition limit. Phase 2 contains eighteen claims and counterclaims on diverse issues, including Mattel's trade secret, RICO and fraudulent transfer claims and MGA's infringement and unfair competition claims. Mattel cannot effectively prosecute or defend these claims without the depositions sought on this motion.

MGA has accused Mattel of trade dress infringement and dilution and unfair competition in connection with ██████████████      ████████████

---

[30]    MGA's Supp. Response to Interrogatory No. 2 Of Mattel, Inc.'s First Set of Interrogatories Re Claims of Unfair Competition, at 5-19, Watson Decl. Exh. 24.

1 ███████████████████████████████████████████ Mattel has

2 only deposed 17 ██████████████, primarily on Phase 1 issues. ████████

3 █████████, it is clear that a substantial number of depositions will be required in

4 order for Mattel to adequately defend against MGA's sweeping claims.

5      Mattel has sued the MGA Parties for misappropriating Mattel trade secrets.[32]

6 Mattel has also asserted that they and their confederate third parties have conspired to

7 and directly violated RICO by, among other things, stealing thousands of pages of

8 Mattel confidential information in the United States, Canada and Mexico.[33]  Mattel has

9 also alleged in the TAAC a broad RICO claim, with multiple distinct enterprises and

10 dozens of co-conspirators, as well as a RICO conspiracy claim.  Additionally, Mattel

11 has alleged that the MGA Parties violated California's unfair competition laws by, *inter*

12 *alia*, bribing Mattel employees.[34]  Mattel has sued MGA and Larian for violating

13 California's Fraudulent Transfer Act ██████████████████████████████

14 ████████████████████████████████████████████████████████████

15 ████████████████████████████████████████████████████████████

16 ██████   The depositions Mattel seeks by this Motion are directly connected to

17 Mattel's multi-faceted, broad Phase 2 claims.

18     **C.**    **Leave To Depose Individuals And Entities With Direct Knowledge**

19         **Relevant To This Action Is Proper And Appropriate**

20      Mattel cannot yet identify each of the witnesses it will eventually need to depose,

21 including because the MGA Parties and the Omni Parties continued to withhold

22 relevant witnesses and documents that have been compelled, sometimes repeatedly.

23

24   [31]  MGA's Fourth Supp. Resp. Unfair Comp. No. 1, dated July 31, 2007, Watson Decl.

25 Exh. 25.
  [32]  See Mattel's TAAC, at ¶¶ 156-165, Watson Decl. Exh. 6.

26   [33]  See id. at ¶¶ 133-155.

27   [34]  See id. at ¶¶ 213-216.
  [35]  See id. at ¶¶ 217-222.

28

1   However, Mattel has identified each of the individuals and entities discussed below as
2   witnesses Mattel should be entitled to depose at this point.

3               **1.    Rule 30(b)(6) Witness Of Omni 808.**

4        Omni 808 is an intervenor in this suit.[36]  It also is repeatedly identified in Mattel's
5   counterclaims as a RICO co-conspirator and one of the entities involved in MGA's and
6   Mr. Larian's fraudulent transfers.[37]   Mattel's TAAC alleges that these financial
7   transactions, including Omni 808's purported acquisition of the Wachovia debt, were
8   not arm's-length transactions, but fraudulent transfers designed to siphon assets out of
9   MGA, among other improper purposes.  The MGA Parties and the Omni Parties
10  vehemently dispute these allegations, repeatedly asserting that the transactions were at
11  arm's-length and that Omni 808 has rights superior to those of Mattel.  For Mattel to
12  prove its case and refute defendants' position, it should be permitted to depose an Omni
13  808 Rule 30(b)(6) representative in order to obtain binding testimony on, for example,
14  the details of its transactions with MGA and other Larian-related entities.  Furthermore,
15  the Discovery Master has already found that information regarding the alleged debt
16  acquisition by Omni 808 is relevant to many other Phase 2 issues, such as punitive
17  damages sought against the MGA Parties.[38]

18               **2.    Omni 808's Alleged Investors.**

19       For the same reasons, the depositions of the purported investors in Omni 808 and
20  their representatives should be permitted.  ████████████████████████

21

22

___

23  [36]  Omni 808 requested leave to intervene as a party on February 3, 2009 and was granted
    such relief on a limited basis on April 27, 2009.  See Omni's *Ex Parte* Application for Leave
24  to Intervene, dated February 3, 2009, Watson Decl. Exh. 29; see also April 27, 2009 Order, at
25  14, Watson Decl. Exh. 30 (granting request for intervention in part "to the extent it seeks
    intervention to address the potential receivership issues").
26  [37]  See id. at ¶¶ 18-19, 108-122.
27  [38]  See Phase 2 Discovery Matter Order No. 3, dated March 10, 2009, at 20, Watson Decl.
    Exh. 26.
28



10  Mattel has specifically alleged that, as part of Larian's systematic looting of

11  MGA and other financial wrongdoing, he funded the Wachovia debt acquisition,

12  including through the alleged investors in Omni 808.[39]

13

14

15

16  . Mattel is entitled to the

17  testimony of these purported investors to prove its claims and refute the MGA Parties'

18  and the Omni Parties' contrary contentions, including through testimony regarding the

19  source of these funds, their participation in the transactions and the complex web of

20  relationships between these alleged investors and the MGA Parties.  Indeed, even

21  before the TAAC, the Discovery Master had already ruled that information relating to

22  "the purchase by Omni 808 Investors, LLC of the debt obligation previously held by

23  Wachovia Bank" is relevant to Phase 2 claims, such as Mattel's claim for punitive

24

25

26

27  [39]  See TAAC at ¶¶ 107-111, 114-120, Watson Decl. Exh. 6.

28

damages.[40]   Also confirming the relevance of his testimony, the deposition of Mr. Kadisha has already been compelled, twice now.

### 3.   Larian Relatives Involved In The Funding Of The Wachovia Debt Acquisition.



And, each of them have played other material roles in MGA or IGWT.

, which as explained further below is a key actor in the conduct alleged in the TAAC.[44]

Mattel properly should be allowed to depose them.

---

[40]   Phase 2 Discovery Matter Order No. 3, dated March 10, 2009, at 20, Watson Decl. Exh. 26.

[41]   See Amended and Restated Subordinated Promissory Note, dated October 16, 2008, Watson Decl. Exh. 54; see also Operating Agreement of IGWT 826 Investments, LLC, Watson Decl. Exh. 48; Omni 808 Investors, LLC Summary of Uses and Funds, Watson Decl. Exh. 33.

[42]   See TAAC at ¶ 121, Watson Decl. Exh. 6; see also 2008 MGA loan list, Watson Decl. Exh. 64.

[43]   See Operating Agreement of IGWT 826 Investments, LLC, Watson Decl. Exh. 48; see also Wachovia Field Examination Report, Watson Decl. Exh. 66.

[44]   See Operating Agreement of IGWT 826 Investments, LLC, Watson Decl. Exh. 48; see also TAAC at ¶ 112, Watson Decl. Exh. 6; email from M. Kupietzy to J. Pisoni, dated August 22, 2008, Watson Decl. Exh. 65.

[45]   See, e.g., Operating Agreement of IGWT 826 Investments, LLC, at IGWT-5258, Watson Decl. Exh. 48; 2008 MGA loan list, Watson Decl. Exh. 64.

1

### 4.   **Peter Carson.**

2      Mr. Carson is a transactional attorney who represented Omni 808 in the debt

3 acquisition at issue in the TAAC.   Mr. Carson has extensive, and unique, non-

4 privileged knowledge of relevant facts about the transaction.   Indeed, because he was a

5 hub between various participants in the transaction, ███████████████████

6 ████████████████████   At a minimum, his testimony will lay the foundation

7 for the admissibility of these documents, illuminate their meaning and identify salient

8 witnesses.   ███████████████████████████████████████████

9 ████████████████████████████████████████████████████

10 ████████████████████████████████████

11

### 5.   **Fred Mashian.**

12      Mr. Mashian is specifically named in the TAAC as a co-conspirator involved in

13 MGA's and Mr. Larian's fraudulent transfers.[48]   Mr. Mashian filed a UCC financing

14 statement in California on behalf of Lexington Financial.[49]   Lexington is a shell entity

15 used by Mr. Larian and incorporated in Nevis.   Because of the secrecy laws in Nevis,

16 Mattel has been unable to obtain any documents from Lexington, and MGA and Mr.

17 Larian have refused to provide a single page of documents on this subject.   ██████████

18 ████████████████████████████████████████████████████

19 ████████████████████████████████████████████████████

20 ████████████████████████████████████████████████████

21

22

---

23      [46]   See, e.g., email from P. Carson to M. Kupietzky, et. al, dated August 28, 2008, Watson

24 Decl. Exh. 31.
       [47]   Id.; see also e-mail from P. Carson to T. Baker, N. Kadisha and others, dated October

25 20, 2008, Watson Decl. Exh. 44; email from L. Tonnu to T. Baker and others, dated October

26 23, 2008, Watson Decl. Exh. 67.
       [48]   See TAAC at ¶¶ 18-19, Watson Decl. Exh. 6.

27      [49]   See August 29, 2008 UCC statement, Watson Decl. Exh. 32.
       [50]   Id.

28

1 ████████████████████████████████████████████████

2 ████████████████████████████████████████████████

3 ████████████████████████████████████████████████

4 ████████████████████████████████████████████████

5 ████████████████████████████████████████████████

6 ████████████████████████████ Information regarding

7 Lexington (as well as Mr. Mashian's ties to other Larian-related entities) is directly

8 relevant to Mattel's RICO and fraudulent transfer claims, which allege, that the Omni

9 transactions, among others, were fraudulent and done to defraud Mattel of the assets it

10 rightfully owns under the Court's Orders and the jury's Phase 1 verdict.

11       **6.     Leon Neman.**

12       Mr. Neman is Mr. Larian's brother-in-law and has served as an MGA director.

13 He also is a principal of Vision Capital, one of the purported Omni 808 investors, a

14 shell entity Mr. Larian created during the Phase 1 trial to fraudulently transfer assets[53]

15 and a co-conspirator identified in these fraudulent transfers.[54] ████████████████

16 ████████████████████████████████████████████████

17 ████████████████████████████████████████████████

18 ████████████████████ Mr. Neman is directly named in Mattel's TAAC as a participant

19 in the RICO violations and the fraudulent transfers.  Confirming the relevance of his

20

21

22       [51]  Id.; see also Omni 808 Investors LLC Summary of Uses and Funds, Watson Decl. Exh.
23 33 ██████████████████████████
          [52]  See Declaration of Michael T. Zeller, dated February 5, 2009, at ¶¶ 10-12, Watson
24 Decl. Exh. 35.
          [53]  See Vision Capital, LLC, Certificate of Formation, dated August 19, 2008, Watson
25 Decl. Exh. 34.
          [54]  See TAAC at ¶¶ 19, 116, Watson Decl. Exh. 6.
26       [55]  See February 5, 2009 Zeller Decl., at ¶ 7, Watson Decl. Exh. 35.
          [56]  See August 29, 2008 UCC Financing Stmt, Watson Decl. Exh. 32; see also February 5,
27 2009 Zeller Decl., at ¶¶ 5, 6, Watson Decl. Exh. 35.

28

1  testimony, the Discovery Master has already ordered that Mr. Neman sit for a

2  deposition.[57]

3          **7.**      **<u>Leon Farahnik.</u>**

4  ███████████████████████████████████████████

5  ███████████████████████████████████████████

6  ███████████████████████████████████████████

7  ███████████████████████████████████████████

8  ███████████████████████████████████████████

9  ███████████████████████████████████████████

10 ███████████████████████████████████████████

11 ███████████████████████████████████████████

12 ████████████  Because the Omni 808 transactions are directly implicated in Mattel's

13 RICO and fraudulent transfer claims, Mr. Farahnik's knowledge of the transactions'

14 terms as well as ████████████████████████████████

15 ██████████ is highly relevant to Mattel's Phase 2 claims and necessary for Mattel to

16 prove its case.  As noted, even before this TAAC, the Discovery Master previously

17 recognized that information regarding the Omni transaction is relevant to other Phase 2

18 issues, including Mattel's claim for punitive damages.[58]

19      Furthermore, Mr. Farahnik has knowledge relevant to Mattel's trade secret and

20 unfair competition claims.  ██████████████  ██████████████

21 ██████████████████████████████████. Mr. Brawer, including

22 his unlawful assistance to MGA while still employed by Mattel, is expressly identified

23 ──────────────────

24 [57]  <u>See</u> Phase 2 Discovery Matter Order No. 43, dated July 30, 2009, at 2, Watson Decl. Exh. 16.

25 [58]  <u>See</u> Phase 2 Discovery Matter Order No. 3, dated March 10, 2009, at 20, Watson Decl. Exh. 26;

26 ████████████████████████████████████████████

27 [59]  <u>See</u> e-mail from I. Larian to R. Gerevas and L. Farahnik, dated July 23, 2003, Watson Decl. Exh. 36.

28

1   in Mattel's trade secret, breach of duty and other claims;[60] ███████

2   ████████████████████████████ directly relevant and serve as additional

3   reasons why Mattel should be granted leave as to his deposition.

        **8.**   **Susan Kim.**

5      Ms. Kim is a former Mattel employee who has knowledge of MGA's theft of

6   Mattel's trade secrets.[61] ████████████

11   ████████████████ As Ms. Kim has direct

12   knowledge relating to Mr. Contreras thefts for MGA, her deposition testimony is

13   critical to Mattel's ability to prove its RICO, trade secret and unfair competition claims.

        **9.**   **Brian Wing.**

15      Mr. Wing is MGA's Executive Vice-President of Corporate Development with

16   knowledge of MGA business operations that are directly relevant to Mattel's Phase 2

17   claims. ████████████████

---

[60] See TAAC at ¶¶ 62-76, Watson Decl. Exh. 6.
[61] See Declaration of Susan Kim, dated June 30, 2009, Watson Decl. Exh. 62.
[62] Id.; see also Mattel's Inc.'s First Supp. Objections and Responses to Interrogatory Nos. 20-23 and 28 In MGA's Second Set of Interrogatories at Second Supp. Response To Interrogatory No. 22, dated at July 31, 2009, at 117:26-118:23, Watson Decl. Exh. 51.
[63] Id.
[64] See, e.g., Declaration of Brian Wing In Support Of the MGA Parties' Request for a Stay, dated December 11, 2008, Watson Decl. Exh. 37.
[65] See Declaration of Brian Wing In Support Of the MGA Parties' Request for a Stay, dated December 11, 2008, at ¶¶ 6, 15, Watson Decl. Exh. 37.



1

2

3

4 ███████████, and Mattel is entitled to question Mr. Wing regarding his

5 statements so that it can effectively present its claims and damages theories.

6 Furthermore, as the Discovery Master has previously found, MGA's financial condition

7 is directly relevant to punitive damages, among other Phase 2 issues.[67] ████████

8 ████████████████████████████████████████████████

9 ████████████[68]  In this declaration, ███████████████████

10 ███████████████████████████.[69]  Because these financial

11 matters are directly alleged in its TAAC, Mattel is entitled to depose the individuals

12 with knowledge of these transactions.  Mr. Wing himself chose to provide a declaration

13 precisely on the issue, and Mattel is entitled to question him on the statements he made.

14 **10. John Woolard.**

15 Mr. Woolard is an accountant who claims to have knowledge of MGA's

16 financials and ████████████████████████████████████████

17 ███████████████████████████ As noted, Mattel's Phase 2

18 claims include allegations that MGA and Mr. Larian purposefully diminished the value

19 of Bratz in order to preclude Mattel from benefiting from the Bratz assets.  In order to

20 prove such matters, and the damages incurred by Mattel because of them, Mattel is

21

22 [66] See First Supp. Responses to Interrogatories at Second Supp. Response to Interrogatory No.28 at 251:1-252:14, Watson Decl. Exh. 51.

23 [67] See Phase 2 Discovery Matter Order No. 3, dated March 10, 2009, at 20, Watson Decl. Exh. 26; ████████████████████████████████████

24 ██████████

25 [68] See Declaration of Brian Wing In Support Of MGA's Correction to the Opposition to Mattel's *Ex Parte* Application for Receiver, dated December 31, 2008, Watson Decl. Exh. 38.

26 [69] Id.

27 [70] See Declaration of John Woolard In Support of the MGA Parties' Request for Further Stay, dated May 7, 2009, Watson Decl. Exh. 39.

28

07975/3049896.1

1    entitled to information regarding MGA's 2009 Bratz line and its changed financial

2    condition. And, as noted, even before the TAAC, the Discovery Master has ruled that

3    MGA's financials are relevant to punitive damages and other issues.[71]  Mr. Woolard

4    has this information and Mattel is entitled to depose him in order to prove its own

5    claims as well as refute claims made by MGA.

6          Mr. Woolard has also provided a declaration ███████████

7    ████████████████████████████████████████████████

8    ██████████████████████████████ is expressly pled in Mattel's TAAC as one of

9    the fraudulent transfers supporting its fraudulent transfer and RICO claims, and the

10   Discovery Master also has found it to be a relevant topic for discovery.[73]  Because this

11   transaction is highly relevant to Mattel's Phase 2 claims, ████████████████

12   █████████████████████████████, Mattel is entitled to question him

13   regarding his under oath statements and his underlying knowledge of these transactions.

14         **11.   Tom Allison.**

15         Mr. Allison is a Mesirow Financial consultant who participated in the alleged

16   debt acquisition. According to Omni 808, ██████████████████████

17   ████████████████████████████████████████████████

18   ████████████████████  Because MGA continues to assert that the Omni 808

19   transaction was arm's-length, and Mattel's TAAC alleges otherwise, it is crucial that

20   Mattel be able to depose the individual who purportedly ████████████████

---

[71] See Phase 2 Discovery Matter Order No. 3, dated March 10, 2009, at 20, Watson Decl. Exh. 26; ██████████

[72] See Declaration of John Woolard In Support of the MGA Parties' Opposition to Mattel's *Ex Parte* Application for a Receiver, dated December 29, 2008, Watson Decl. Exh. 40.

[73] See TAAC at ¶¶ 123, 126, 141, 222, Watson Decl. Exh. 6; see also Phase 2 Discovery Matter Order No. 3, dated March 10, 2009, at 27, Watson Decl. Exh. 26.

[74] Omni 808's Memorandum In Support Of Its Request To Strike Summary and Responsive Reports of Ronald L. Durkin, dated June 8, 2009, at 9, Watson Decl. Exh. 41.

1  ███████████████   as MGA relies on assertions such as this to support its

2  contention that its transactions and relationship with the Omni Parties was arm's-length

3  and legitimate.

### 12.   Rule 30(b)(6) Witnesses Of Relevant Financial Institutions MGA Claims To Have Approached.

6  In support of its assertion that the Omni 808 transaction was arm's-length, ████

7  ████████████████████████████████████████████████████

8  ████████████████████████████████████████████████████

9  ████████████████████████████████████████████████████

10  █████████[75]   Mattel is entitled to test the veracity of these assertions for the reasons

11  just discussed with respect to Mr. Allison.   Furthermore, MGA undoubtedly made

12  representations about its financial condition to each of these institutions, which would

13  constitute party-admissions as to a plainly relevant issue in Phase 2.

### 13.   Rule 30(b)(6) Witness Of IGWT Group, LLC.

15  IGWT is identified by name in Mattel's counterclaims as a RICO co-conspirator

16  and a Larian-related shell entity used in Larian's fraudulent transfers.[76]  ████████

17  ████████████████████████████████████████████████████

18  ████████████████████████████████████████████████████

19  ████████████████████████████████████████████████████

20  ████████████████████████████████████████████████████

21

---

[75]  Id.
[76]  See TAAC at ¶¶ 18-19, 108-111, Watson Decl. Exh. 6.
[77]  See IGWT Group's Secretary of State Registration, filed June 26, 2008, Watson Decl. Exh. 55; ████████████████████████████████████████████████████ ████████████████
[78]  See e-mail from I. Larian to S. Makabi and others, dated October 10, 2008, Watson Decl. Exh. 42; see also e-mail from I. Larian to S. Makabi and others, dated September 27, 2008, Watson Decl. Exh. 43.
[79]  See December 29, 2008 Woolard Decl., at ¶ 6, Exh. B, Watson Decl. Exh. 40.

1    ██████████████████████████████████████████████████████ This

2    transfer is explicitly alleged as one of the fraudulent transfers of which Mattel's

3    fraudulent transfer claim is based.[81]   Moreover, the Discovery Master has already

4    concluded that information regarding this topic is relevant to Phase 2 issues.[82]

5    ████████████████████████████████████████████████████████████████

6    ████████████████████████████████████████████████████████████████

7    IGWT is directly implicated in Mattel's Phase 2 RICO and fraudulent transfer claims,

8    and in light of the fact that it did not exist until the Phase 1 trial was already underway,

9    Mattel has not had a chance to depose anyone regarding these transactions.  Because

10   Mattel's claims allege, among other things, that this transaction was fraudulent and

11   structured to siphon assets belonging to Mattel out of MGA, and MGA and Mr. Larian

12   vehemently assert otherwise, Mattel properly should be allowed to obtain the binding

13   testimony of IGWT to uncover the details and prove its claims.

###    14.    Rule 30(b)(6) Witness Of IGWT 826 Investments, LLC.

15        IGWT 826 is identified in Mattel's counterclaims as a RICO co-conspirator and a

16   Larian-related shell entity used in Larian's fraudulent transfers.[84]  ███████████

17   ████████████████████████████████████████████████████████████████

18

19

20

---

21   [80]  See e-mail from I. Larian to J. Pisoni, dated February 20, 2009, Watson Decl. Exh. 49;

22   see also e-mail from I. Larian to J. Hurst and others, dated January 21, 2009, Watson Decl. Exh. 50.

23   [81]  See TAAC at ¶ 222, Watson Decl. Exh. 6.

     [82]  See Phase 2 Discovery Matter Order No. 3, dated March 10, 2009, at 27, Watson Decl.

24   Exh. 26.

25   [83]  See email from P. Carson, dated October 20, 2008, Watson Decl. Exh. 44; see also

     email from L. Tonnu, dated Oct. 16, 2008, Watson Decl. Exh. 45 ████████████

26   ████████████████; email from L. Tonnu dated Oct. 17, 2008, Watson Decl. Exh. 46

27   ████████████████████████████████████████████████████████████████

     [84]  See TAAC at ¶¶ 18-19, 108-111, Watson Decl. Exh. 6.

28

1 ████████████████████████████████████████████████████

2 ████████████████████████████████████████████████████

3 ██████████  These transactions are among those alleged in Mattel's RICO and

4 fraudulent transfer claims, and because MGA asserts that all of these transactions were

5 legitimate, Mattel should be permitted to depose the participants in order to prove its

6 case and rebut MGA's claims.  Indeed, even before the TAAC, the Discovery Master

7 had ruled that information regarding ████████████████████████████████

8 ████████████████████████████████████████████████████

9 **15.   Rule 30(b)(6) Witness Of Lexington.**

10 Lexington is identified in Mattel's Phase 2 claims as a co-conspirator and an

11 entity behind MGA's and Larian's fraudulent transfers.[88] ████████████████████

12 ████████████████████████████████████████████████████

13 ████████████████████████████████████████████████████

14 ████████████████████████████████████████████████████

15 ████████████████████████████████████████████████████

16 ████████████████████████████████████████████████████

17 ██████████████████████████████████████████  Because

18 the Omni 808 transaction, as well as the allegations that MGA and Mr. Larian

19

---

20 [85]  See October 16, 2008 Secured Delayed Draw Demand Note; Watson Decl. Exh. 47; see also Omni 808 Investors LLC Summary of Uses of Funds, Watson Decl. Exh. 33; Operating

21 Agreement of IGWT 826 Investments, LLC Exh. A, Watson Decl. Exh. 48.

22 [86]  See e-mail from P. Carson to Tiffanie Baker, Neil Kadisha and others, dated October 20, 2008, Watson Decl. Exh. 44; see also L. Tonnu to Moshe Kupietzky and others, dated

23 October 16, 2008, Watson Decl. Exh. 45; e-mail from L. Tonnu to Angela Larian, Shirin Makabi and Moshe Kupietzky, dated October 17, 2008, Watson Decl. Exh. 46.

24 [87]  See Phase 2 Discovery Matter Order No. 3, dated March 10, 2009, at 25-26, Watson

25 Decl. Exh. 26; █████████████████████████████████████████████████████

26 [88]  See TAAC at 32-33, 62-67, Watson Decl. Exh. 6.
    [89]  Id.
27  [90]  Id.

28

specifically created shell entities to transfer money out of MGA and frustrate the Court's Orders, are the bases of Mattel's RICO and fraudulent transfer claims, testimony from Lexington about its involvement in these transfers and its relationship to Larian and other participants in the conspiracy is directly relevant to Mattel's Phase 2 claims.

### 16.   Rule 30(b)(6) Witness Of Wachovia.

Wachovia has detailed knowledge of the Omni 808 transaction directly at issue in Mattel's TAAC.  In fact, because of the MGA Parties' and the Omni Parties' complete stonewalling, the only reason Mattel even became aware of many of the key facts surrounding the fraudulent transfers alleged in the TAAC was due to the documents produced by Wachovia.  MGA's main rebuttal to Mattel's allegations regarding these transfers, including Omni 808's purported acquisition of the Wachovia debt, is that the transactions were not fraudulent but arm's-length.  In order to disprove these assertions, and thereby prove its claims, Mattel should be allowed to obtain testimony about these transactions from the participants.  Wachovia, as the seller, has knowledge relevant to Mattel's RICO and fraudulent transfer claims.  It also can provide testimony to authenticate key documents for Mattel's claims that came from Wachovia's files.[91]

Testimony from Wachovia will thus be relevant to these issues and the authenticity, admissibility and meaning of these documents.

---

[91]   See Wachovia production letter, dated March 13, 2009, Watson Decl. Exh. 68.

[92]   See, e.g., November 8, 2007 letter and attachment from Wachovia to MGA, Watson Decl. Exh. 72; Wachovia Memorandum re August 2007 Amendment, Watson Decl. Exh. 73.

17.     **Patrick Ma.**

Mr. Ma is the Vice President of Finance and Accounting for MGA HK who has knowledge regarding MGA HK's operations and finances relevant to Mattel's Phase 2 claims. Mattel's TAAC alleges that MGA HK was a co-conspirator and participant in the RICO enterprises. Mattel also believes that MGA HK was involved in, or at a minimum has knowledge of, the fraudulent transactions alleged as part of Mattel's RICO and fraudulent transfer claims. ███████████████████████ ███████████████████████████████████████████████ ████████████ MGA HK is also a defendant against which Mattel seeks punitive damages.[94] Mr. Ma unquestionably will have information such as MGA HK's financial status relevant to that topic.

18.     **Rule 30(b)(6) Witness of MGA Canada.**

MGA Canada is a subsidiary of MGA Entertainment. Mattel's TAAC alleges that Ms. Brisbois, an MGA manager and a former Mattel employee, stole Mattel trade secrets and other proprietary information and provided them to MGA Canada and the MGA Parties.[95] In order to prove its claims, Mattel is entitled to the testimony of MGA Canada regarding how it disseminated and used information stolen by Ms. Brisbois at the direction of MGA and Larian. The Discovery Master has already confirmed the relevance of such testimony, granting Mattel's request for the issuance of a Letter of Request for judicial assistance to obtain the deposition of a <u>Rule</u> 30(b)(6) witness of MGA Canada and rejecting the MGA Parties' claims otherwise.[96]

---

[93]   <u>See</u> MGA loan list, Watson Decl. Exh. 64.

[94]   <u>See</u> TAAC at ¶¶ 13, 216, Watson Decl. Exh. 6.

[95]   <u>See</u> TAAC at ¶¶ 88-94, Watson Decl. Exh. 6.

[96]   <u>See</u> Discovery Matter Order No. 35, dated May 21, 2009, at 1, Watson Decl. Exh. 22; <u>see also</u> Request for Judicial Assistance issued by the Central District of California, dated May 21, 2009, Watson Decl. Exh. 23.

D.   **Mattel Is Entitled To Take The Depositions For Which Judge Larson Previously Granted Leave**

Additionally, Mattel intends to depose four witnesses who Judge Larson previously granted Mattel leave to depose.[97]   Although leave was granted as to these individuals even before the Phase 1 trial, Mattel has not been able to depose them as of yet because MGA refused to produce them, forcing Mattel to go through the Hague Convention as to three of them.   Out of an abundance of caution, therefore, Mattel requests that the Discovery Master confirm that Judge Larson's Order previously granting Mattel leave to take these depositions without regard to the deposition limit is still effective or, in the alternative, also grant leave as to them.[98]

1.   **Pablo Vargas.**

Mr. Vargas is a former Mattel employee who is specifically identified in the TAAC as a participant in the MGA Parties' thefts of Mattel trade secrets. Mr. Vargas was a Senior Trade Marketing Manager for Mattel Mexico for approximately three years. Months before he left Mattel in April 2004, Mr. Vargas began conspiring with other Mattel Mexico employees (Mr. Machado and Ms. Trueba) to join MGA in opening MGA Mexico, using stolen Mattel trade secrets to do so.   Prior to his resignation from Mattel, Mr. Vargas was already in discussions with MGA and Larian in which Larian instructed him to steal trade secrets and other proprietary information from Mattel.[99]   Mr. Vargas has knowledge directly related to Mattel's trade secret, unfair competition, and RICO claims.   Furthermore, as the Discovery Master is aware, the MGA Parties have denied that he has had authority to act for them.   Mr. Vargas plainly is uniquely situated to provide relevant testimony on that subject, including as

---

[97]   See Jan. 7, 2008 Order, at 2-3, Watson Decl. Exh. 2.

[98]   Mattel also intends to further depose on Phase 2 issues certain entities and individuals previously deposed prior to the Phase 1 trial, including MGA Entertainment, Inc., MGA Entertainment (HK) Ltd., Isaac Larian and Ron Brawer.

[99]   See TAAC at ¶¶ 44-61, Watson Decl. Exh. 6.

1   to the nature and scope of his conduct for the MGA Parties.  Judge Larson previously

2   ruled that Mattel had made a sufficient showing to warrant taking his deposition

3   without regard to the deposition limits, and the Discovery Master has already ruled that

4   Mr. Vargas has "information relating to several Phase 2 issues and that Mattel is

5   entitled to take [his] deposition."[100]

6          **2.   Mariana Trueba.**

7          Ms. Trueba is also a former Mattel employee who stole Mattel trade secrets. Ms.

8   Trueba was the Senior Marketing Manager for Mattel Mexico for seven years.  In late

9   2003/early 2004, she began conspiring with other Mattel Mexico employees (Mr.

10  Machado and Mr. Vargas) to leave Mattel and join MGA in opening MGA Mexico,

11  using stolen Mattel trade secrets to do so.  Prior to her resignation from Mattel, Larian

12  instructed her to steal trade secrets and other proprietary information from Mattel.[101]

13  Ms. Trueba has knowledge directly related to Mattel's trade secret, unfair competition,

14  and RICO claims and is also named in Mattel's TAAC.  Furthermore, as with Mr.

15  Vargas, the MGA Parties have disputed that she has had authority to act for them.  Ms.

16  Trueba is uniquely situated to provide relevant testimony on that subject, including as

17  to the nature and scope of her conduct for the MGA Parties.  Judge Larson already

18  granted Mattel leave as to Ms. Trueba, and the Discovery Master has already ruled that

19  Ms. Trueba has "information relating to several Phase 2 issues and that Mattel is

20  entitled to take [her] deposition."[102]

21         **3.   Janine Brisbois.**

22         Ms. Brisbois is another MGA manager who stole Mattel trade secrets.  Ms.

23  Brisbois was hired by Mattel in 1999 to be a National Account Manager, handling

24

25  [100]  See Discovery Matter Order No. 11, dated March 30, 2009, at 36, Watson Decl. Exh. 15.

26  [101]  See TAAC at ¶¶ 44-61, Watson Decl. Exh. 6.

27  [102]  See Discovery Matter Order No. 11, dated March 30, 2009, at 36, Watson Decl. Exh. 15.

28

Mattel's Toys 'R'Us ("TRU") and Wal-Mart accounts.   In September 2005, she resigned from Mattel and took a position as Vice-President of Sales at MGA.  Ms. Brisbois stole approximately 45 documents before leaving Mattel, at the direction of Mr. Larian.[103]  The Discovery Master has already ruled that Mattel is entitled to take Ms. Brisbois' deposition, recommending to the Court that it issue Mattel's Letter of Request for Judicial Assistance to Canada.[104]  Judge Larson previously found that Mattel had made the appropriate showing to allow Ms. Brisbois' deposition to be taken without regard to the deposition limits.

### 4.   Shirin Salmenia.

Ms. Salemnia is believed to have knowledge of MGA's theft of Mattel's trade secrets.  She is a former Mattel employee who left Mattel to work at MGA.  Originally, MGA's counsel represented her as well, undoubtedly due to her direct involvement in the conduct alleged by Mattel.  Because MGA's counsel originally represented Ms. Salemnia, they accepted the renewed notice of deposition Mattel served once the Phase 2 stay was lifted.[105]  However, they later claimed that Ms. Salemnia no longer worked for MGA and that she was no longer represented by MGA's counsel; thus, Mattel would have to subpoena her.  ██████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████   Judge Larson previously granted Mattel leave to take her deposition without regard to the limits, and Mattel is entitled to depose her.

---

[103]   See TAAC at ¶¶ 5, 88-94, Watson Decl. Exh. 6.
[104]   See Discovery Matter Order No. 35, dated May 21, 2009, at 1, Watson Decl. Exh. 22; see also Request for Judicial Assistance issued by the Central District of California, dated May 21, 2009, Watson Decl. Exh. 23.
[105]   See Notice of Deposition of Shirin Salemnia, dated January 7, 2009, Watson Decl. Exh. 69.
[106]   See Declaration of Michael T. Zeller In Support Of Mattel's Motion to Modify Scheduling Order, dated July 27, 2009, Docket No. 6050.

### E.   **Mattel Meets The Requirements for Additional Discovery**

Each of the relevant factors clearly favors granting leave here as to the requested witnesses.

First, the discovery that Mattel seeks is, far from being merely cumulative or duplicative, directly relevant and critical to key Phase 2 issues.  <u>Fed. R. Civ. P.</u> 26(b)(2)(C)(i) (court may limit discovery when it is "unreasonably cumulative or duplicative").  The limit on depositions is designed to prevent duplicative discovery. <u>See, e.g.</u>, <u>Bromgard v. Montana</u>, 2007 WL 1101179, at *2 (D. Mont. April 11, 2007). Mattel seeks to depose individuals and entities who participated in the relevant conduct and thus have specific, unique knowledge of the underlying events.

Second, Mattel has not had ample opportunity to obtain the information it seeks through these depositions.  <u>Fed. R. Civ. P.</u> 26(b)(2)(C)(ii) (court may limit discovery where party seeking discovery has had "ample opportunity to obtain the information"). Many Phase 2 issues are newly arising and have not been the subject of  deposition examination at all (and Mattel has obtained little by other methods, even after multiple orders compelling documents).  Even as to preexisting Phase 2 issues, Mattel has not obtained the information known to the individuals and entities it now seeks to depose, not having previously deposed them.  There are no adequate substitutes for these depositions.

Last, the burden or expense of the proposed discovery clearly does *not* outweigh its likely benefit, taking into account the needs of the case, the significant amounts in controversy, the parties' resources and the importance of the proposed discovery in resolving the issues.  <u>Fed. R. Civ. P.</u> 26(b)(2)(C)(iii) (court may limit discovery if "burden or expense of the proposed discovery outweighs its likely benefit").  This case -- and Phase 2 of it alone -- is substantial and complex by any measure.  It involves eighteen claims and counterclaims, many hundreds of products (if not more), thefts occurring over many years in numerous countries, complex financial transactions that defendants have deliberately sought to obscure and conceal and widespread, concerted

1  efforts to frustrate prior Court rulings and frustrate Mattel's rights through a pattern of
2  concealment.  Ten depositions is the limit for a typical case; it clearly cannot apply in
3  this case.  Without additional depositions, Mattel simply cannot discover, let alone
4  prove, the full extent of defendants' wrongdoing nor adequately prepare to defend
5  against MGA's claims. Leave should be granted. <u>See, e.g.</u>, <u>Rx USA Wholesale, Inc. v.</u>
6  <u>McKesson Corp.</u>, 2007 WL 1827335, at *2-3 (E.D.N.Y. June 25, 2007) (additional
7  depositions warranted in a dispute between large corporations, given the complexity of
8  the issues and the parties' resources).

9  **Conclusion**

10      For the foregoing reasons, Mattel respectfully requests that the Court grant
11  Mattel's motion and provide leave to conduct the depositions sought herein without
12  regard to the deposition limits.

14  DATED:  August 12, 2009          QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

16                                   By /s/ Michael T. Zeller
17                                      Michael T. Zeller
                                        Attorneys for Mattel, Inc.