# EXHIBIT 5

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES -- GENERAL

Case No. CV 04-09049 SGL(RNBx) Date: May 21, 2009

Title: MATTEL, INC. V. MGA ENTERTAINMENT, INC., et al.

PRESENT: HONORABLE STEPHEN G. LARSON, U.S. DISTRICT JUDGE

Cindy Sasse
Courtroom Deputy

None Present
Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS: None Present

ATTORNEYS PRESENT FOR DEFENDANTS: None Present

**PROCEEDINGS: ORDER DENYING MOTION TO MODIFY DISCOVERY MASTER ORDER NO. 11 (DOCKET #5185)**

**ORDER GRANTING MOTION FOR LEAVE TO FILE A THIRD AMENDED ANSWER AND COUNTERCLAIMS (DOCKET #5143)**

**ORDER DENYING EX PARTE APPLICATION FOR STAY PENDING APPEAL (DOCKET #5396)**

**ORDER DENYING EX PARTE APPLICATION RE DISCLOSURE OF 2009 PRODUCT LINE INFORMATION (DOCKET #5425)**

**ORDER RE EXPIRATION OF TEMPORARY RECEIVERSHIP AND ORDER APPOINTING MGA MONITOR**

**ORDER IMPOSING LIMITED AND TEMPORARY STAY OF PHASE 2 AND REQUIRING MANDATORY SETTLEMENT CONFERENCE**

These matters were heard on May 18, 2009.

## I. MOTION TO MODIFY DISCOVERY MASTER ORDER NO. 11

Mattel moves to overrule that portion of the Discovery Master's Order No. 11 ("Order No. 11") that concludes that witnesses Pablo Vargas San Jose ("Vargas") and Mariana Trueba ("Trueba") (collectively, "the witnesses") are not "managing agents" within the scope of Fed. R. Civ. P. 30(b)(1). The Court has reviewed Order No. 11, Mattel's Motion, the MGA parties' opposition thereto, and Mattel's reply. Applying the "clearly erroneous or contrary to law" standard of review that all parties agree is applicable here, the Court **DENIES** Mattel's Motion.

In Order No. 11, the Discovery Master acknowledged the so-called Sugarhill factors, see Sugarhill Records Ltd. v. Motown Record Corp., 105 F.R.D. 166, 170 (D.C.N.Y. 1985), which the parties agreed applied. After an ancillary discussion that concluded the witnesses were not managing agents as measured by a test similar to the Sugarhill factors, the Discovery Master either applied, or explained why his conclusion would not change if he did apply, the Sugarhill factors.[1] Those factors are:

> 1) [W]hether the individual is invested with general powers allowing him to exercise judgment and discretion in corporate matters; 2) whether the individual can be relied upon to give testimony, at his employer's request, in response to the demand of the examining party; 3) whether any person or persons are employed by the corporate employer in positions of higher authority than the individual designated in the area regarding which information is sought by the examination; 4) the general responsibilities of the individual "respecting the matters involved in the litigation," . . . and 5) whether the individual can be expected to identify with the interests of the corporation.

105 F.R.D. at 170 (internal citation omitted). The Discovery Master found that although the second and fourth factors favor designating the witnesses as managing agents, the first, third, and fifth do not.

As to the first factor, Mattel argues that the Discovery Master should have focused more on

---

[1] In the relevant portion of Order No. 11, the Discovery Master first discussed, and then rejected for reasons set forth therein, an argument advanced by Mattel that the most important Sugarhill factor was the fifth factor, the so-called "loyalty factor." He next applied an alternative test articulated by Libbey Glass, Inc. v. Oneida, Ltd., 197 F.R.D. 342, 350 (N.D. Ohio 1999), which was originally adopted by the D.C. Circuit. See id. (quoting Founding Church of Scientology of Washington, D.C., Inc. v. Webster, 802 F.2d 1448, 1452 (D.C. Cir.1986)). That test is set forth in Order No. 11 at 31, and is not repeated here. It focuses on the character of the employee's control, the convergence of interest of the employee and the corporation, and the employee's area of expertise in relation to others associated with the corporation. Libbey Glass, 197 F.R.D. at 350. This test appears to the Court to implicate, to varying degrees, all of the Sugarhill factors except the second. Because the two tests are similar, and because neither is controlling, adoption of either could not be said to be contrary to law. Notwithstanding language that may be so read, the Court does not accept the notion that Order No. 11 rejected outright the Sugarhill factors. The Court does so based on the acknowledgment that the parties agreed those factors were applicable, the similarity between the two alternative tests, and the Discovery Master's articulation regarding each Sugarhill factor. See Order No. 11 at 29-36.

whether the witnesses were managing agents as to the particular matters at issue in the lawsuit rather than their general powers and that, in any event, the relevant time period to measure managing agent status is not at the time of deposition but is rather at the time of the events giving rise to the lawsuit. Although these arguments find some support, the Discovery Master's conclusion regarding this first Sugarhill factor (and its Libbey Glass analog) is not contrary to law. The first Sugarhill factor is clearly concerned with an employee's general power; the fourth factor, which the Discovery Master found in favor of Mattel, focuses on the witnesses' responsibilities regarding matters involved in the litigation. The cases cited by Mattel support its timing argument; however, cases cited by the MGA parties establish that other cases favor a contrary position. Neither side's authority is controlling, and the Court therefore concludes the position adopted by the Discovery Master is not contrary to law.

As to the third factor, Mattel argues that it was clear error for the Discovery Master to conclude that Kuemmerle, to whom Vargas reported directly and to whom Trueba's supervisor reported, could provide substitute testimony to them is clear error. Mattel's ultimate point is that no one can testify more accurately and more on point than can the two witnesses regarding their alleged trade secret theft. Again, this is not an invalid point. Indeed, it is possible that if such theft occurred (the MGA parties deny that it did), then the witnesses did not proceed at the behest of the MGA parties and instead acted on their own accord (the MGA parties alternatively contend). The fact is that if the MGA parties' alternative contention is true, then the witnesses' testimony regarding any theft would not be on behalf of MGA at all. Who can or cannot testify about these events that may or may not have occurred on behalf of any MGA party -- let alone who can testify best -- is far from clear. This area of inquiry is fraught with uncertainty. The Discovery Master's conclusion one way or another on this issue, therefore, cannot be said to be clear error. See Wolpin v. Philip Morris Inc., 189 F.R.D. 418, 422 (C.D. Cal.1999) ("To conclude that a magistrate judge's decision is clearly erroneous, the District Court must arrive at a definite and firm conviction that a mistake has been committed.").

As to the fifth factor, it was not clearly erroneous for the Discovery Master to conclude that MGA Mexico's interests and the witnesses' interests are at odds. The witnesses are currently employed by MGA Mexico, weighing in favor of a finding of alignment, but they have also been subjected to criminal investigations regarding the allegations asserted in this lawsuit, and they have separately retained counsel to represent their interests. Additionally, the MGA parties have maintained that if any trade secret theft occurred, it occurred without their knowledge or consent. These facts support the Discovery Master's finding.

Weighing these factors, and taking into account the mixed burden of proof, as the Discovery Master did, the Court cannot find that the Discovery Master's conclusion was clearly erroneous or contrary to law, and the Court therefore **DENIES** Mattel's Motion (docket #5185).

**II. MOTION FOR LEAVE TO FILE THIRD AMENDED ANSWER AND COUNTERCLAIMS**

Mattel has filed a motion seeking leave to file its proposed Third Amended Answer and

Counterclaims ("TAAC"). In substance, the TAAC adds one additional claim and a number of additional allegations. First, Mattel asserts an additional claim pursuant to California's version of the Uniform Fraudulent Transfers Act, found at Cal. Civ. Code §§ 3439 et seq. Second, Mattel avers facts that fall into the following broad categories: (1) Allegations regarding certain 2008 financial transactions that were the subject of the Forensic Auditor's Report ("the Wachovia/Omni 808 transactions"); (2) allegations regarding acts of commercial bribery relating to three Mattel seamstresses who were employed by MGA contractor Veronica Marlow; (3) allegations regarding evidence tampering, including the alleged destruction by Isaac Larian's brother Farhad of boxes of documents relating to the development of Bratz and Farhad's deletion of emails from a USB device; (4) allegations that Isaac Larian and MGA perjured themselves during their Phase 1 testimony; and (5) allegations setting forth additional predicate acts of racketeering activities, including money laundering, concealing assets, engaging in monetary transactions involving property derived from unlawful activity, commercial bribery, destruction of evidence, and obstruction of justice.

The parties, quite understandably, disagree on whether the Fed. R. Civ. P. 15(a) liberal standard or the Rule 16(b) "good cause" standard applies to the present motion. Upon the lifting of the stay on Phase 2 discovery, the Court set new dates for Phase 2 proceedings, but neglected to set a deadline for amending the pleadings related to Phase 2, leading to the present dispute. The Court now sets that deadline for three months prior to the discovery cutoff date of December 11, 2009, or September 11, 2009. Accordingly, the present motion is governed by the standard for amendments to the pleadings that are sought prior to the deadline set in the Court's Scheduling Order, which is set forth in Rule 15(a).

Pursuant to Rule 15(a), leave to amend a pleading is granted "freely . . . when justice so requires." Id.; See Foman v. Davis, 371 U.S. 178, 182 (1962). However, leave need not be granted where the proposed amendment "(1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." AmerisourceBergen Corp. v. Dialysist West, Inc., 465 F.3d 946, 951 (9th Cir. 2006).

Allegations relating to events occurring after the filing of the Second Amended Answer and Counterclaims ("SAAC") are governed not by the Rule 15(a) standard; rather, those amendments are governed by the Rule 15(d) standard. Rule 15(d) provides:

> On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense. The court may order that the opposing party plead to the supplemental pleading within a specified time.

Id. This standard, like the Rule 15(a) standard, is liberal, and leave to file a supplemental pleading is favored. Planned Parenthood of S. Ariz. v. Neely, 130 F.3d 400, 402 (9th Cir.1997). It should not, however, be used to introduce a separate, distinct, and new cause of action. Id. The goal of

Rule 15(d) is to promote judicial efficiency, permitting "a court to award complete relief, or more nearly complete relief, in one action, and to avoid the cost, delay and waste of separate actions which must be separately tried and prosecuted." Keith v. Volpe, 858 F.2d 467, 473 (9th Cir.1988) (internal quotation marks and citation omitted).

The MGA parties contend the perjury allegations should not be permitted because there can be no present RICO injury (because Mattel prevailed in Phase 1) and/or no judgment has yet been entered and upheld on appeal. Additionally, they contend that perjury is not a predicate act of racketeering activity. The Court disagrees. Case law makes clear that what Mattel must show is injury as a result of the pattern of racketeering activity; Mattel need not prove that each and every predicate act itself caused harm. Corley v. Rosewood Care Center, Inc. of Peoria, 388 F.3d 990, 1004 (7th Cir. 2004) (improper for district court to hold that a RICO plaintiff be injured by every predicate act); Virden v. Graphics One, 623 F.Supp. 1417, 1425 (C.D. Cal. 1985) (a RICO plaintiff must be harmed by either a predicate act or the pattern of racketeering activity). As to the propriety of perjury as a predicate act, although perjury may not always rise to the level of a RICO predicate act, perjury in the course of a judicial proceeding, as is alleged here, is a predicate act of racketeering activity because it is obstruction of justice. See Streck v. Peters, 855 F.Supp. 1156, 1162 (D. Hawai'i,1994) (perjury during federal court proceedings is a RICO predicate act because it is indictable under the federal obstruction of justice statute).[2]

The MGA parties also that the allegations regarding the theft of trade secrets are improper because Mattel failed to allege them in the SAAC although the claims were known to them at that time. Mattel counters that, in light of the Rule 8(a) pleading standards, the Castilla allegations are already within the scope of the SAAC. See SAAC ¶¶ 79, 89-93. All that is required by Fed. R. Civ. P. 8(a) is a "a short and plain statement of the claim showing that the pleader is entitled to relief." The details are filled in by discovery, as has already occurred in this case, including Mr. Castilla's deposition. Accordingly, as the Court finds that these allegations are already within the scope of

---

[2] The MGA parties contend that this case is "unhelpful" to Mattel on this point: "The Streck court, in ***dismissing*** a RICO claim, simply noted that 'acts of perjury may, ***under the appropriate circumstances***, constitute RICO predicate acts,' but did not discuss what those circumstances might be." Opp. at 12 n.11 (emphasis in the original) (citing Streck, 855 F. Supp. at 1162). The quotation from the Streck case is correct, and the Streck court did indeed dismiss the RICO claim (or, more precisely, granted summary judgment in favor of defendants as to the RICO claim); however, the MGA parties incorrectly state that the Streck case did not discuss under what circumstances perjury might constitute the RICO predicate act of obstruction of justice. The four sentences following the quoted portion clearly do exactly what the MGA parties claim the Streck court did not: Specifically, the Streck court distinguishes between perjury occurring in state-court proceedings (which it notes is ***not*** a RICO predicate act) and perjury occurring in federal-court proceedings (which it notes ***is*** a RICO predicate act):

> [T]his Court finds that the acts of perjury which the defendants in the case at bar are alleged to have committed do not constitute RICO predicate acts. [The obstruction statute] applies only to perjury offered in federal court proceedings. Here, all of the alleged perjury took place in state court, not federal court. Thus, [the obstruction statute] is not implicated by Streck's perjury allegations.

Id. (internal citations and footnote omitted). Thus, the Streck case's relevance to the present issue is unmistakable.

the SAAC, the Court finds that the proposed amendments are not untimely; instead, they are in the nature of "clean up" amendments that succinctly state existing issues fairly stated in the SAAC when measured by the requirements of Rule 8(a).

The amendments setting forth additional copyright registrations come as a result of the jury's Phase 1 verdict. Although in most respects the issue of copyright infringement was resolved in Phase 1, allegations regarding criminal copyright infringement, cast in the form of RICO predicate acts, are relevant to Phase 2.

The MGA parties correctly point out, and the Court is fully aware, that the proposed amendments will dramatically expand the scope of the present litigation. Admittedly, the allegations set forth in the SAAC are already varied enough in nature and broad enough in scope to strain the Court's resources and to challenge a jury's powers of comprehension; nevertheless, this is not atypical of a successfully pleaded RICO claim, which the Court has already found was stated in the SAAC, and which has the tendency to draw together a multitude of seemingly unrelated acts into one litigation.[3]

In applying the relevant standards to the present motion, the Court's decision is not influenced by a lack of evidence supporting a particular allegation. Although Mattel attaches an unprecedented amount of evidence to the proposed TAAC, it is not required to do so. See Fed. R. Civ. P. 8(a). Accordingly, Mattel's failure (in the MGA parties' eyes) to provide evidentiary support for its allegations that Jorge Castilla stole its trade secrets, that Farhad Larian destroyed evidence, and that the MGA parties engaged in commercial bribery of certain Mattel employees is not relevant to the present inquiry.[4]

Accordingly, because the Court discerns no prejudice to the MGA parties, no bad faith or undue delay on Mattel's part, and no futility as to the present amendments, the Court **GRANTS** Mattel's Motion for Leave to File the Proposed Third Amended Answer and Counterclaims (docket #5143). To ensure proper filing, Mattel is directed to, within two days of the entry of this Order, provide the Courtroom Deputy Clerk for manual filing (1) an original and a copy of the public redacted version of the TAAC, and (2) an original and a copy of the under seal version of the TAAC.

---

[3] The allegations regarding the Wachovia/Omni 808 financial transactions illustrate this potential, and the Court has considered whether the amendments should be rejected based on the notion that Rule 15(d) should not be used to introduce a separate, distinct, and new cause of action. Here, however, the Wachovia/Omni 808 financial transactions are alleged as new predicate acts in an ongoing RICO conspiracy; as such, rejection of amendments as comprising a separate, distinct, and new cause of action is not warranted.

[4] Of course, in making factual allegations, all parties remain bound by their Rule 11(b)(3) obligation to ensure that "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Moreover, whether there is evidence sufficient for a reasonable jury to find in favor of the complaining party as to a particular claim is determined after discovery, pursuant to a Rule 56 motion for summary judgment.

## III. EX PARTE APPLICATION TO STAY PENDING APPEAL

The standard for granting a stay pending appeal is similar to that for a preliminary injunction. Lopez v. Heckler, 713 F.2d 1432, 1435 (9th Cir.1983). Thus, a party seeking a stay must show either (1) a likelihood of success on the merits of its appeal and the possibility of irreparable harm, or (2) that serious questions regarding the merits exist and the balance of hardships tips sharply in its favor. See Lands Council v. McNair, 494 F.3d 771, 775 (9th Cir. 2007) (noting that the alternative tests "are extremes of a single continuum in which the greater the relative hardship to the party seeking the [stay], the less probability of success must be shown.").

As the Court explained on the record, there is the potential for harm, possibly irreparable harm, to both sides, but that balance favors Mattel, for the reasons set forth in its opposition brief. See Opp. at 16-18. For reasons set forth at length in the Court's orders that are purportedly implicated by the appeal, see Notice of Appeal at 1-2 & Exs. A-R (docket #5340), the Court does not find a likelihood of success on the merits of its appeal.

Accordingly, the Court **DENIES** the MGA parties' Ex Parte Application and Motion to Stay.

The Court understands from the report of the Temporary Receiver that its previous Orders regarding a partial stay of enforcement of the Court's December 3, 2008, need clarification, as does the issue of the scope of the profits that are subject to the constructive trust imposed by the Court on December 3, 2008.[5] Accordingly, to assist the newly appointed Monitor, see *infra*, the Court provides the following guidance regarding its rulings and sets a briefing schedule as detailed below:

(1) **Older Inventory**: The MGA parties and others in the distribution chain may sell all 2009 Bratz products up through and including January 21, 2010. The older inventory of Bratz products may likewise be sold, unless the Monitor determines that those sales tend to, in his reasoned judgment, diminish the value of the Bratz brand, in which case he should so report to the Court in an expeditious manner.

(2) **Profits**: The Court's Permanent Injunction Order found that all the female fashion dolls that use the "core Bratz fashion doll production sculpt" or the "Bratz movie sculpt" were subject to the injunction; the Courts' Constructive Trust imposed a constructive trust over, inter alia, "all trademarks, service marks and domain names[,] . . . that include the terms 'Bratz' or 'Jade.'" In order to provide meaningful guidance to the parties, the Monitor, and their accountants, the parties may brief, and the Court will resolve, the issue of the scope of the profits that must be turned over by MGA and held by the Monitor pursuant to these Orders and any other Order of this Court. The parties' simultaneous opening briefs (not to exceed 25 pages) shall be filed no later than

[5] This is largely due to the fact that, in issuing its December 3, 2008, order providing injunctive relief, the Court did not foresee that it would be subsequently modified by the January 7, 2009, Order staying enforcement pending sale of the 2009 Bratz line.

Wednesday, May 27, 2009; simultaneous responsive briefs (not to exceed 25 pages) shall be filed no later than Friday, May 29, 2009, at which time the Court will take the matter under submission and issue an order as expeditiously as possible.

**IV. EX PARTE APPLICATION RE DISCLOSURE OF 2009 PRODUCT LINE INFORMATION (DOCKET #5425)**

In light of the Court's denial of the Ex Parte Application for Stay Pending Appeal, the ex parte application seeking production of the 2009 Bratz line and the new MGA products is moot, and it is **DENIED** for that reason. Nevertheless, because it is in the interest of all parties to expeditiously resolve outstanding issues regarding MGA's new "Moxie" line of dolls, counsel for Mattel and the MGA parties are directed to meet and confer in an expeditious manner regarding those dolls.

**V. ORDER RE EXPIRATION OF TEMPORARY RECEIVERSHIP AND ORDER APPOINTING MGA MONITOR**

The Court previously issued, on April 27, 2009, an Order to Show Cause re Appointment of Permanent Receiver. In response, the Temporary Receiver, the parties and the Court-appointed Forensic Auditor have filed, and the Court has reviewed, the following documents: (1) The Report and Recommendations of Patrick A. Fraioli, Jr., Temporary Receiver; (2) the Responsive Report of Court-appointed Forensic Auditor Ronald Durkin; and (3) all documents filed in support of the Appointment of a Permanent Receiver and in opposition thereto, including the Statement of Position filed by Omni 808. In consideration of these filings, and after hearing on these matters, as detailed in the following subsections, the Court declines to appoint a Permanent Receiver, confirms the expiration of the temporary receivership, orders the filing of an accounting of the temporary receivership, and appoints an MGA Monitor to effectuate the Court's prior Orders.

**A. <u>Expiration of Temporary Receivership</u>**

**IT IS ORDERED THAT:**

1. The period of the Temporary Receivership imposed by this Court on April 27, 2009 has expired;

2. The Court declines to appoint a Permanent Receiver over MGA Entertainment, Inc. or MGA Hong Kong ("MGA");

3. The Court reserves jurisdiction to appoint a Receiver in the future, as it deems appropriate;

4. The Temporary Receiver, Patrick A. Fraioli, Jr., is hereby directed to prepare and file with the Court a final report including a final accounting and application for fees and

costs, on or before May 28, 2009;

5. The Court hereby lifts the Injunction against Omni 808's enforcement of its rights as a creditor against MGA, and **ORDERS** that should Omni 808 take any action to enforce its rights as a creditor against MGA, such action shall be filed and heard in the Central District of California;

6. Based on MGA's representations to the Court that, should MGA file for bankruptcy protection under Title 11 of the United States Code, it shall do so in the Central District of California, and having previously found in its April 27, 2009, Order appointing a Temporary Receiver that MGA is domiciled in California and have their principal place of business in the Central District of California and have the majority of their assets located within the Central District of California, the Court hereby lifts the Injunction against MGA filing bankruptcy without permission of the Court, but **ORDERS** that any bankruptcy filing by MGA or any of its affiliates shall be filed in the Central District of California.

B. <u>Appointment of MGA Monitor</u>

1. For good cause shown, pursuant to the alternative recommendation of the MGA parties, and in lieu of appointing a Permanent Receiver at this time, the Court appoints Patrick A. Fraioli, Jr., Monitor, who shall have the power to take any and all action that he deems necessary, appropriate, or advisable to effectuate the purposes of the Monitorship, including but not limited to the following:

   a. The Monitor shall maintain monitoring, supervisory, and oversight responsibilities over the Bratz Assets;[6]

---

[6] In light of the issue regarding the scope of profits that must be accounted for, see supra section III, and because the amount of access that must be given to the Monitor almost certainly extends beyond the materials that must be turned over to Mattel and may, depending on the resolution of the issue identified above, extend beyond the products for which profits must be held in constructive trust as a result of the Court's December 3, 2008, Orders, setting forth a workable definition of "Bratz Assets" that applies in all instances is challenging. Nonetheless, the Court so defines that term at this time in order to provide to the Monitor and the parties meaningful guidance on the issue of Monitor access to facilities and information. <u>The Court admonishes all counsel that this definition should not be taken out of its current context and may very well be further modified, for purposes of both turn-over and the constructive trust, following resolution of the issue identified above.</u>

Bratz Assets include all tangible or intangible assets, including, without limitation, all intellectual property necessary or materially useful for the design, manufacture, marketing, distribution and sale of any Bratz doll or other Bratz-branded product in the possession, custody or control (whether or not claimed to be encumbered by any security interest) of any of the MGA Defendants. The Bratz Assets include, without limitation:

a. All Bratz-related intellectual property rights, including, without limitation, copyrights (whether or not registered); copyright registrations; moral rights; design rights; patents (issued and pending); service marks; trademarks; tradedress; designs; slogans; characters; product packaging in any medium; product names; product

EXHIBIT 5
PAGE 93

b. The Monitor shall monitor, supervise, and oversee the exploitation of the Bratz Assets;

c. The Monitor shall have the power and authority to monitor the financial affairs and operations[7] of MGA Entertainment, Inc. and MGA Hong Kong (collectively, "MGA") as the Monitor deems appropriate in order to carry out the duties specified herein;

d. The Monitor shall monitor compliance by the parties with this Court's Injunction and other Orders as directed by the Court, specifically this Court's December 3, 2008, Order Granting Mattel, Inc.'s Motion for Permanent injunction, January 7, 2009, Order re Modification and Stay of Permanent Injunction Order, and April 27, 2009, Omnibus Order (the "Injunction Orders");

---

illustrations; product designs; product concepts; conceptual drawings; engineering drawings; engineering specifications; processes; methods; trade secrets; know-how; product ideas; prototypes; line extensions; domain names; marketing and advertising materials; commercials; style guides; theme songs; soundtracks; scripts; screenplays; computer programming; digital and internet rights; video games; theatrical, television, video and DVD rights and masters; and rights in future technologies.

b. All Bratz-related tooling for all past, current and future lines, including without limitation tools, tooling, in process tools, molds, sculptures, models, dies, and mock-ups, as well as other Bratz-related tangible items.

c. All Bratz-related marketing and sales assets for all past, current and future lines, including, without limitation, consumer lists, marketing plans, account plans, focus group studies, marketing databases, and other consumer and marketing research.

d. All Bratz-related records, including, without limitation, contracts, manufacturing records, inventory records and data, sales records and data, product testing data and records, vendor list and records, customer communications, and invoices and purchase orders.

e. All Bratz-related contracts and agreements, including, without limitation, assignments, work-for-hire agreements and licensing agreements.

f. All other Bratz-related rights, including, without limitation, distribution rights, licensing rights, exploitation rights, accounts receivable, and all choses in action relating to Bratz or the Bratz brand.

g. All Bratz-related items referenced at Paragraph 3 and Paragraph 8 (at lines 15-19) of the Court's Order granting Mattel's Motion for Permanent Injunction (Docket No. 4443).

h. "Bratz-related" as used in this definition, is a broad term, that applies to all products, property, and information that bears the "Bratz" trademark. It is expressly not limited to the Bratz female fashion dolls, and includes such products as the Bratz boy dolls, Baby Bratz, and Bratz Kidz.

[7] Toward that end, the Monitor shall have full and complete access to all Bratz assets (wherever they may be found), all MGA business premises, all MGA facilities (including manufacturing and storage facilities), all real and personal MGA property (including computers), all MGA employees, all MGA information (including financial and operational information), and all MGA books and records.

e. At the appropriate time, the Monitor shall direct the MGA turnover to Mattel of any of the Bratz Assets subject to recall, impoundment, or destruction, as set forth in this Court's Injunction Orders of December 3, 2008, and as otherwise directed by the Court;

f. The Monitor shall establish such bank accounts as the Monitor deems necessary or convenient to carry out the Monitor's duties under this Order;

g. The Monitor shall collect from MGA, on a monthly basis, the amount of net profits derived by MGA from exploitation of the Bratz Assets during the preceding month, as well as an accounting setting forth the basis for the calculation of the net profits and the supporting documentation establishing such basis. The Monitor shall retain these funds pending further order of this Court;[8]

h. The Monitor is ordered and directed to obtain from MGA, and to make available to Mattel, as set forth herein, such of the Bratz Assets, and related information about the content of the Fall, 2009 Bratz line being produced and sold by MGA pursuant to this Court's Injunction Orders, as are necessary to enable Mattel to begin preparation of its own Bratz line for the Spring, 2010 sales season;

I. The Monitor shall monitor, supervise and oversee, with authority to approve or disapprove, the following categories of financial transactions of MGA: Inter-company transfers of any amount, payments by MGA or any MGA affiliate to any related parties in excess of $50,000.00 per payment, and any payments to Omni 808;

j. The Monitor shall file monthly reports with the Court, under seal (but served on all parties), setting forth the Monitor's activities, actions and recommendations. Nothing herein shall prevent the Monitor from filing other reports, as he deems appropriate. As in the case of the Court-appointed Settlement Officer and Discovery Master (and as previously with the Court-appointed Temporary Receiver), the Monitor may report orally to Court concerning matters of procedure; however, any substantive inquiries or reports shall be submitted in the first instance to the Court in writing. The Court shall determine, whether and, if so, with what restrictions, the Monitor's reports shall be served on parties and their counsel;

---

[8] The Court recognizes that resolution of the issue identified in section III, supra, will greatly impact on the amount of profits that must be turned over by MGA (see infra ¶ 2) and retained by the Monitor; accordingly, it is the Court's intention to resolve the issue as expeditiously as possible and, in any event, prior to the first turnover of profits on June 22, 2009.

k. The Monitor may retain and/or engage the services of advisors and/or professionals, including, without limitation, accountants, attorneys, consultants and experts to assist the Monitor in carrying out his duties and responsibilities under this Order. The Monitor, without further order of this Court, is authorized to employ Ervin, Cohen & Jessup LLP, and the accounting firm of Crowe Horwath LLP, to assist him in his duties. Nothing herein shall prevent the Monitor from utilizing the same advisors and professionals as rendered services to the Temporary Receiver before the appointment of the Monitor;

l. The Monitor may hire and employ individuals and entities as necessary or advisable to carry out the Monitor's duties under this Order;

m. The Monitor, his employees and agents, as well as any and all of the professionals employed by the Monitor, are entitled to compensation for services rendered at their normal hourly rates and reimbursement for all expenses incurred by them in providing services to the Monitor. The Monitor shall submit to the Court, *in camera*, monthly requests for approval of payment. Upon Court approval, the Monitor shall serve on the Parties, but not file, Notice of Court Approval of Request for Payment of Interim Fees and Costs of Monitorship, along with a summary statement of the fees and costs;

n. The Monitor shall have the status of an officer and agent of this Court, and as such shall be vested with the same immunities as enjoyed by this Court. Neither the Monitor nor any person or entity acting at the direction of the Court or pursuant to agreements with the Monitor (whether employees, vendors, contractors or otherwise) may be held liable to any party for any acts taken in good faith in compliance with this Order, including but not limited to claims of alleged copyright infringement, trademark infringement, or other alleged causes of action;

o. Nothing herein shall alter or affect the right of Mattel to take any and all actions relating to the Bratz Assets or the Bratz brand which it otherwise lawfully could take, including, without limitation, the institution, maintenance and prosecution of legal proceedings anywhere in the world or other proceedings before any governmental or tribunal or arbitration panel;

p. The Court shall retain jurisdiction over the Monitorship for the duration of its existence.

q. No bond shall be required in connection with the appointment of the Monitor. Except for acts of gross negligence, the Monitor and his agents and employees shall not be liable for loss or damage incurred by any party to this action or their officers, agents, servants, employees, attorneys or others by virtue of any act performed or omitted to be performed by the Monitor in connection with the discharge of his duties and responsibilities.

2. Unless otherwise directed by the Court, MGA is **ORDERED** to turn over to the Monitor, on a monthly basis, the amount of net profits derived by MGA from exploitation of the Bratz Assets during that month, as well as an accounting setting forth the basis for the calculation of the net profits and the supporting documentation establishing such basis. The Monitor and his accountants shall review the accountings, and any related submissions of the Court or Monitor by Mattel, and shall report and recommend to the Court as directed on any disputes arising therefrom. MGA shall make its first turnover and accounting by June 22, 2009, which shall cover the period from the return of the jury verdict in this case through May 31, 2009, and this shall constitute compliance with section V of the Court's April 27, 2009, Order. Each month thereafter, the turnover and accounting shall be made by the 10th day of the month, for the prior month period.

3. MGA shall immediately make available to the Monitor, for transfer to Mattel, such portion of the Bratz Assets necessary to enable Mattel to begin preparation of its own Bratz line for the Spring, 2010 sales season. MGA shall also provide to the Monitor for delivery to Mattel such related information about the content of the Fall, 2009, Bratz line being produced and sold by MGA pursuant to this Court's Injunction Orders to enable Mattel to make appropriate commercial determinations about the content of its own Spring, 2010, Bratz line.

4. No action may be filed against the Monitor, or any of his agents or employees, for any actions taken in this case, without prior permission of this Court.

5. For the duration of Monitorship, Mattel is directed to pay to the Monitor, in the manner directed by the Monitor, the fees and costs of the Monitorship within five (5) days of receipt of the Notice of Court Approval of Request for Payment of Interim Fees and Costs of Monitorship. All interim fees paid shall be subject to final review and approval by this Court. This Court retains jurisdiction to award a greater or lesser amount as the full, fair, and final value of such services.

6. Any party may later apply to the Court for relief related to any profit calculations or profits turned over to the Monitor, or for relief related to the allocation of payment of the fees and costs of the Monitorship, as well as for the previously imposed Temporary Receivership.

7. All Parties and their employees, agents and attorneys are ordered to cooperate fully with the Monitor.

## VI. IMPOSING LIMITED AND TEMPORARY STAY OF PHASE 2

At the May 18, 2009, hearing, the Court heard from the Court-appointed Settlement Officer, who advised the Court that a settlement conference was scheduled for June 1, 2009. The Settlement Officer believes that settlement negotiations continue to be of value, and has recommended that the Court consider the judicial officer's participation in those settlement

EXHIBIT 5
PAGE 97

negotiations -- a proposal to which no party offered objection.

The Court heard from the parties regarding whether a stay of Phase 2 discovery should be imposed to assist in settlement efforts. Counsel for MGA advocated for a four-month stay. Counsel for Mattel cautioned against a stay, outlining for the Court the various positions taken by the MGA parties as to how the Court's previous stay limited or altered their responsibility to comply with previously set deadlines.

Mindful of the concerns expressed by Mattel, the Court nevertheless imposes a stay of Phase 2 discovery that is strictly limited in scope and duration. The parties shall, notwithstanding the stay, meet and confer regarding the Moxie issue set forth in section IV. Moreover, notwithstanding any other provision of this Order, the MGA parties are not relieved of their responsibility to produce, on or before the currently imposed deadline, their responses the Interrogatories to which counsel for Mattel referred during the hearing.

The stay of discovery, as limited, is imposed up to and including June 12, 2009. Unless otherwise extended by the Court or the Discovery Master, the deadlines for all discovery responses that have previously been ordered are extended for a period, measured by calendar days, not longer than the total number of calendar days the stay of discovery is imposed. For purposes of this date calculation, both the beginning date of the stay (May 18, 2009) and the ending date (June 12, 2009) are to be included. Similarly, the deadline for responding to discovery requests that have been propounded, but to which responses are not yet due, is extended for the same period of calendar days. If depositions are scheduled during this time period, they must be rescheduled for a date certain no later than the currently scheduled date plus the number of calendar days for which the stay of discovery is imposed.

The Court further **ORDERS** the parties to participate in a Mandatory Settlement Conference ("MSC") on or about June 1, 2009 (to be coordinated by the Court-appointed Settlement Officer). Those attending the MSC shall include the chief executive officers or equivalent of Mattel, MGA, and Omni 808; the chief financial officers or equivalent of Mattel, MGA, and Omni 808; in-house counsel of Mattel and MGA; and lead counsel of record for each party. Following the MSC, the Settlement Officer shall report to the Court on the status of settlement efforts. If the parties fail to reach a full and complete settlement, the Court shall, pursuant to the parties' agreement and waiver of any conflict issues, conduct a settlement conference beginning on June 10, 2009, at 10:00 am.

## VII. NOTICE OF INTENT TO UNSEAL FORENSIC AUDITOR REPORTS

In light of Omni 808's emphatic public criticism of the Court-ordered Forensic Auditor's April 23, 2009, Report, the contents of which were expressly ordered by this Court to be maintained by the parties under seal, and the contents of which, to the Court's knowledge, were in fact maintained under seal until the filing of The Statement of Position of Omni 808 Investors, LLC, filed on May 14, 2009, it is the Court's intention to release the April 23, 2009, Summary Report (together with its Exhibits that have been redacted for privilege), absent sustained objections

thereto by the MGA parties.[9]

At this time, the Court **ORDERS** that the May 17, 2009, Responsive Forensic Auditor Report, maintained by the Court until this time *in camera* be released under seal to the parties.[10] The May 17, 2009, Responsive Report shall, pending resolution of any objections to its disclosure by the MGA parties, remain under seal, and distribution shall be limited to parties, their attorneys (whether or not the attorneys are of record), any Court-appointed officers, and, as necessary, the parties', attorneys', and officers' staff.

Within five days of the entry of this Order, the MGA parties, including Mr. Larian, may file, under seal, specific and supported objections to the release of the Summary Report or the Responsive Report. In the same time frame and manner, any party may object to the release of specific identifying information contained in the exhibits of the report than have the tendency to reveal personal identifying information such as social security numbers, tax identification numbers, or bank account numbers. Within two days, any party may respond to these objections. No hearing will be held unless the Court orders otherwise.

**IT IS SO ORDERED.**

---

[9] Despite an express Order of this Court to maintain the Summary Report and its exhibits under seal, counsel for Omni 808 revealed the Report's contents in Omni 808's Statement of Position. Similarly, counsel for Mattel also revealed certain contents of the Receiver's Report and Recommendation regarding MGAE's liquidity and solvency, also released under seal. All counsel are reminded of their responsibilities to maintain information under seal. Unless otherwise ordered, the Court's hearings are open to the public. The Court does not close hearings unless and until requested to do so by one or more of the parties, and only then does so when and to the extent that such closure is justified when counterbalanced with important First Amendment concerns.

[10] Sua sponte, the Court has already redacted certain portions of the Forensic Auditor's Responsive Report on the basis that the emails reflect highly personal electronic conversations between Mr. Larian, Mr. Kadisha, and their spouses.

EXHIBIT 5
PAGE 99

# EXHIBIT 6

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 7

Patricia L. Glaser, State Bar No. 055668
Pglaser@glaserweil.com
Joel N. Klevens, State Bar No. 045446
Jklevens@glaserweil.com
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, California 90067
Telephone: 310-553-3000
Facsimile: 310-556-2920

Russell J. Frackman, State Bar No. 049087
rjf@msk.com
MITCHELL, SILBERBERG & KNUPP, LLP
11377 West Olympic Boulevard
Los Angeles, California 90064
Telephone: 310-312-2000
Facsimile: 310-312-3100

Attorneys for the MGA Parties for Phase 2

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

CARTER BRYANT, an individual

Plaintiff,

v.

MATTEL, INC., a Delaware Corporation

Defendant.

AND CONSOLIDATED ACTIONS

Case No. CV 04-9049 SGL (RNBx)

Consolidated with: Case No. CV 04-9059 and Case No. CV 05-2727

**Hon. Stephen J. Larson**

**MGA PARTIES' ANSWER AND AFFIRMATIVE DEFENSES TO MATTEL, INC.'S THIRD AMENDED ANSWER AND COUNTERCLAIMS**

**Phase 2**
Discovery Cut-off: December 11, 2009
Pre-Trial Conference: March 1, 2010
Trial Date: March 23, 2010

EXHIBIT 7
PAGE 203

Counter-defendants MGA Entertainment, Inc. ("MGA"), MGA Entertainment (HK) Limited, MGAE de Mexico S.R.L. de C.V. and Isaac Larian (collectively, the "MGA Parties") hereby answer the Third Amended Counterclaim of Mattel, Inc. ("Mattel") as follows:

As a preliminary matter, Mattel's use of headings throughout its counterclaims is improper, and therefore no response to Mattel's headings is required. If any response is required, the MGA Parties deny all allegations contained in Mattel's headings.

**RESPONSES**

1. The MGA Parties deny the allegations set forth in paragraph 1.

2. The MGA Parties deny the allegations set forth in paragraph 2.

3. The MGA Parties admit that the jury in the Phase 1 trial reached a verdict on July 17, 2008. The contents of that verdict speak for themselves. The MGA Parties deny the remaining allegations set forth in paragraph 3.

4. The MGA Parties admit that MGA decided to expand into Mexico in or about 2004, and deny the remaining allegations set forth in paragraph 4.

5. The MGA Parties deny the allegations set forth in paragraph 5.

6. The MGA Parties deny the allegations set forth in paragraph 6.

7. The MGA Parties deny the allegations set forth in paragraph 7.

8. The MGA Parties admit that the Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331, deny that 17 U.S.C. §§ 101 and 18 U.S.C. § 1964(c) apply to the extraterritorial conduct alleged in the Counterclaims, and deny that Mattel is entitled to any relief on its Counterclaims.

9. The MGA Parties admit that venue is proper in this District for Mattel's claims based on conduct alleged to have occurred within this District and deny that venue is proper in this District for acts alleged to have occurred in Mexico, Canada, Hong Kong, or other places outside of this District.

10. The MGA Parties admit the allegations set forth in paragraph 10.

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

EXHIBIT 7
PAGE 204

11. The MGA Parties admit the allegations set forth in the first and second sentences of paragraph 11 and deny the remaining allegations set forth in paragraph 11.

12. The MGA Parties admit that Carter Bryant ("Bryant") was formerly employed by Mattel. The MGA Parties further admit that Bryant later worked for MGA after leaving Mattel. The MGA Parties deny the remaining allegations set forth in paragraph 12.

13. The MGA Parties admit the allegations set forth in the first sentence of paragraph 13 and deny the remaining allegations set forth in paragraph 13.

14. The MGA Parties admit the allegations set forth in paragraph 14.

15. The MGA Parties admit the allegations set forth in the first sentence of paragraph 15. The MGA Parties deny the remaining allegations set forth in paragraph 15.

16. The MGA Parties deny the allegations set forth in paragraph 16.

17. The MGA Parties deny the allegations set forth in paragraph 17.

18. The MGA Parties deny the allegations set forth in paragraph 18.

19. The MGA Parties deny the allegations set forth in paragraph 19.

20. The MGA Parties deny the allegations set forth in paragraph 20.

21. The MGA Parties admit that Carlos Gustavo Machado Gomez ("Machado") resided in this District at the time he was named and served as a Counter-defendant in the Second Amended Answer and Counterclaims. The MGA Parties deny the remaining allegations in paragraph 21.

22. Paragraph 22 is a statement of Mattel's legal position, to which no response is necessary. To the extent that a response is required, the MGA Parties deny the allegations set forth in paragraph 22.

23. The MGA Parties admit the allegations set forth in the first sentence of paragraph 23. The MGA Parties are without sufficient knowledge to

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

admit or deny the remaining allegations set forth in paragraph 23, and on that basis, deny the remaining allegations set forth in paragraph 23.

24. The MGA Parties are without sufficient knowledge to admit or deny the allegations set forth in paragraph 24, and on that basis, deny the allegations set forth in paragraph 24.

25. The MGA Parties are without sufficient knowledge to admit or deny the allegations set forth in paragraph 25, and on that basis, deny the allegations set forth in paragraph 25.

26. The MGA Parties admit that MGA is a toy manufacturer, that MGA began as a consumer electronics business and expanded into the toy business with licenses to sell handheld electronic games, and later expanded its business by launching the Bratz fashion doll line, and deny the remaining allegations set forth in paragraph 26.

27. The MGA Parties deny the allegations set forth in paragraph 27.

28. The MGA Parties admit that Carter Bryant is a former employee of Mattel, and state they are without sufficient knowledge to admit or deny the remaining allegations set forth in paragraph 28, and on that basis, deny the remaining allegations set forth in paragraph 28.

29. The MGA Parties are without sufficient knowledge to admit or deny the allegations set forth in paragraph 29, and on that basis, deny the allegations set forth in paragraph 29.

30. The MGA Parties are without sufficient knowledge to admit or deny the allegations set forth in paragraph 30, and on that basis, deny the allegations set forth in paragraph 30.

31. The MGA Parties are without sufficient knowledge to admit or deny the allegations set forth in paragraph 31, and on that basis, deny the allegations set forth in paragraph 31.

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

EXHIBIT 7
PAGE 2014

32. The MGA Parties are without sufficient knowledge to admit or deny the allegations set forth in paragraph 32, and on that basis, deny the allegations set forth in paragraph 32.

33. The MGA Parties deny the allegations set forth in paragraph 33.

34. The MGA Parties deny the allegations set forth in paragraph 34.

35. The MGA Parties deny the allegations set forth in paragraph 35.

36. The MGA Parties deny the allegations set forth in paragraph 36.

37. The MGA Parties admit that after MGA made the decision to proceed with the manufacture of the Bratz dolls, MGA employees communicated with employees of MGA Entertainment (HK) Limited on subjects including the manufacturing of Bratz, and deny the remaining allegations set forth in the first sentence of paragraph 37. The MGA Parties admit the second sentence of paragraph 37.

38. The MGA Parties admit that preliminary samples of the four original Bratz dolls were shown at the Hong Kong Toy Fair in January 2001, and deny the remaining allegations set forth in paragraph 38.

39. The MGA Parties admit that MGA and its subsidiaries have distributed and sold Bratz and Bratz-related products in many countries throughout the world, that MGA and its subsidiaries have licensed Bratz to third parties, that MGA has derived substantial revenues from its sales and licenses of Bratz in excess of $500 million, that MGA and its subsidiaries continue to market, sell and license Bratz to the extent permitted by the Court's orders, and deny the remaining allegations set forth in paragraph 39.

40. The MGA Parties deny the allegations set forth in paragraph 40.

41. The MGA Parties deny the allegations set forth in paragraph 41.

42. The MGA Parties deny the allegations set forth in paragraph 42.

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

43. The MGA Parties admit that Bryant had an agreement with MGA, state that the terms of the agreement speak for themselves, and deny the remaining allegations set forth in paragraph 43.

44. The MGA Parties admit that in or about early 2004, MGA decided to form a new corporation, MGAE de Mexico, S.R.L. de C.V., to conduct business in Mexico, admit that MGAE de Mexico hired three former employees of Mattel's Mexican subsidiary, and deny the remaining allegations set forth in paragraph 44.

45. The MGA Parties admit that Carlos Gustavo Machado Gomez was a Marketing Manager, Boys Division, for Mattel Mexico, admit that Machado was employed at Mattel Mexico from April 1997 until April 19, 2004, admit that Machado had access to some nonpublic business information of Mattel Mexico, and state that they are without sufficient knowledge to admit or deny the remaining allegations set forth in paragraph 45, and on that basis, deny the remaining allegations set forth in paragraph 45.

46. The MGA Parties admit that Mariana Trueba Almada was a Marketing Manager, Girls Division, for Mattel Mexico, admit that Trueba had access to some nonpublic business information of Mattel Mexico, and state that they are without sufficient knowledge to admit or deny the remaining allegations set forth in paragraph 46, and on that basis, deny the remaining allegations set forth in paragraph 46.

47. The MGA Parties admit that Pablo Vargas San Jose was a Trade Marketing Manager for Mattel Mexico, admit that Vargas was employed at Mattel Mexico from March 2001 until April 19, 2004, admit that Vargas had access to some nonpublic business information of Mattel Mexico, and state that they are without sufficient knowledge to admit or deny the remaining allegations set forth in paragraph 47, and on that basis, deny the remaining allegations set forth in paragraph 47.

48. The MGA Parties admit that in or about early 2004, Machado, Trueba and Vargas discussed leaving Mattel Mexico, admit that Machado, Trueba

LAW OFFICES GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP 10250 CONSTELLATION BOULEVARD NINETEENTH FLOOR LOS ANGELES, CALIFORNIA 90067 310-553-3000

and Vargas resigned from Mattel Mexico on April 19, 2004, admit that they did not identify their new employer to Mattel Mexico, admit that Machado, Trueba and Vargas were offered and accepted employment with MGAE de Mexico, and deny the remaining allegations set forth in paragraph 48.

49. The MGA Parties admit that MGA personnel communicated by telephone with Machado and Vargas prior to their Mattel resignations, admit that MGA personnel, including Larian, communicated by e-mail with Machado and Vargas concerning terms of potential employment with MGA through an America Online e-mail account with the address <plot04@aol.com>, and deny the remaining allegations set forth in paragraph 49.

50. The MGA Parties admit that in or about March 2004, Machado, Trueba, and Vargas made plans to travel from Mexico to Los Angeles in April 2004, admit that in or about March 2004, Machado, Trueba, and Vargas discussed with MGA personnel, including Larian, employment at MGAE de Mexico, state that the e-mails speak for themselves, and deny the remaining allegations set forth in paragraph 50.

51. The MGA Parties are without sufficient knowledge to admit or deny the allegations set forth in paragraph 51, and on that basis, deny the allegations set forth in paragraph 51.

52. The MGA Parties are without sufficient knowledge to admit or deny the allegations set forth in paragraph 52, and on that basis, deny the allegations set forth in paragraph 52.

53. The MGA Parties are without sufficient knowledge to admit or deny the allegations set forth in paragraph 53, and on that basis, deny the allegations set forth in paragraph 53.

54. The MGA Parties are without sufficient knowledge to admit or deny the allegations set forth in the third sentence of paragraph 54, and on that basis, deny these allegations, and deny the remaining allegations set forth in paragraph 54.

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

55. The MGA Parties deny the allegations set forth in paragraph 55.

56. The MGA Parties deny the allegations set forth in paragraph 56.

57. The MGA Parties are without sufficient knowledge to admit or deny the allegation that MGA publicized a claim that, in 2005, it had increased its Mexican market share by 90% over the prior year, and on that basis, deny this allegation, and deny the remaining allegations set forth in paragraph 57.

58. The MGA Parties deny the allegations set forth in paragraph 58.

59. The MGA Parties deny the allegations set forth in paragraph 59.

60. The MGA Parties admit that on October 27, 2005, at Mattel's behest, Mexican authorities searched MGAE de Mexico and seized certain documents, and state that they are without sufficient knowledge to admit or deny the remaining allegations set forth in paragraph 60, and on that basis, deny the remaining allegations set forth in paragraph 60.

61. To the extent that paragraph 61 purports to characterize Machado's deposition, the MGA Parties state that Machado's deposition transcript speaks for itself. The MGA Parties admit that Machado was transferred from MGAE de Mexico to MGA's office in Van Nuys, California, admit that Machado has resided in the County of Los Angeles, and deny the remaining allegations set forth in paragraph 61.

62. The MGA Parties admit the allegations set forth in the first sentence of paragraph 62. The MGA Parties admit that Tyco Toys hired Brawer on April 22, 1996, and state that they are without sufficient knowledge to admit or deny the remaining allegations set forth in the second sentence of paragraph 62, and on that basis, deny the remaining allegations set forth in the second sentence of paragraph 62. The MGA Parties admit that on April 9, 1997, Brawer became a Marketing Director for Mattel in Mount Laurel, New Jersey, and state that the remaining allegations in the fourth sentence of paragraph 62 are a statement of Mattel's legal position, to

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

which no response is necessary. To the extent a response is required, the MGA Parties deny the remaining allegations set forth in paragraph 62.

63. The MGA Parties are without sufficient knowledge to admit or deny the allegations set forth in paragraph 63, and on that basis, deny the allegations set forth in paragraph 63. The last sentence of paragraph 63 is a statement of Mattel's legal position, to which no response is necessary. To the extent a response is required, the MGA Parties deny the remaining allegations set forth in last sentence of paragraph 63.

64. The MGA Parties admit that by 2003, Brawer had advanced within Mattel to a Senior Vice President position over customer marketing, and state that the remaining allegations in the first sentence of paragraph 64 are a statement of Mattel's legal position, to which no response is necessary. To the extent a response is required, the MGA Parties deny the remaining allegations set forth in the first sentence of paragraph 64. The MGA Parties admit that in his executive position, Brawer was provided access to certain nonpublic Mattel information, and deny the remaining allegations set forth in the second sentence of Paragraph 64.

65. The MGA Parties admit the allegations set forth in the first sentence of paragraph 65. The MGA Parties deny the allegations set forth in the second sentence of paragraph 65. The MGA Parties are without sufficient knowledge to admit or deny the remaining allegations set forth in paragraph 65, and on that basis, deny the remaining allegations set forth in paragraph 65.

66. The MGA Parties are without sufficient knowledge to admit or deny the allegations set forth in paragraph 66, and on that basis, deny the allegations set forth in paragraph 66.

67. The MGA Parties admit that in April 2004, Mattel made Brawer a Senior Vice President/General Manager, and state that they are without sufficient knowledge to admit or deny the remaining allegations set forth in paragraph 67, and on that basis, deny the allegations set forth in paragraph 67.

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

EXHIBIT 7
PAGE 2[illegible]

68. The MGA Parties admit that in May 2004, Brawer began performing General Manager duties, working with one of Mattel's major retail customer accounts, and state that they are without sufficient knowledge to admit or deny the remaining allegations set forth in paragraph 68, and on that basis, deny the allegations set forth in paragraph 68.

69. The MGA Parties admit the allegations set forth in the first sentence of paragraph 69. The MGA Parties admit that as Brawer left, he carried a large cardboard box, and deny the remaining allegations set forth in the second sentence of paragraph 69. The MGA Parties state that they are without sufficient knowledge to admit or deny the remaining allegations set forth in paragraph 69, and on that basis, deny the remaining allegations set forth in paragraph 69.

70. The MGA Parties admit the allegations set forth in paragraph 70.

71. The MGA Parties admit that on September 20, 2004, Mattel hand-delivered a letter to Brawer, state that the contents of the letter speak for themselves, and deny the remaining allegations set forth in paragraph 71.

72. The MGA Parties admit that at his exit interview on September 29, 2004, Brawer was given a copy of an agreement with Tyco that he had signed on April 22, 1996, and a copy of Mattel's Code of Conduct, admit that Brawer stated that he had not signed the Code of Conduct, and deny the remaining allegations set forth in paragraph 72.

73. The MGA Parties admit that on October 1, 2004, Brawer's last day of employment with Mattel, Mattel delivered a letter to Brawer, state that the contents of the letter speak for themselves, and deny the remaining allegations set forth in paragraph 73.

74. The MGA Parties admit that Brawer became MGA's Executive Vice President of Sales and Marketing, admit that Brawer was responsible for sales worldwide, admit that Brawer had and continues to have responsibility for MGA's

LAW OFFICES GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP 10250 CONSTELLATION BOULEVARD NINETEENTH FLOOR LOS ANGELES, CALIFORNIA 90067 310-553-3000

EXHIBIT 7
PAGE 212

accounts with some of the same retailers that Brawer worked with while at Mattel, and deny the remaining allegations set forth in paragraph 74.

75. The MGA Parties admit that Brawer stated during his exit interview that he had returned all confidential proprietary information to Mattel, state that he did not provide copies of information from his personal contacts file, and deny the remaining allegations set forth in paragraph 75.

76. The MGA Parties admit that since leaving Mattel, Brawer has had contacts with certain Mattel employees, both by telephone and electronic mail, and deny the remaining allegations set forth in paragraph 76.

77. The MGA Parties admit that MGA Entertainment, Inc., hired Jorge Castilla ("Castilla") on or around March 13, 2006 and admit that Castilla was previously employed by Mattel. The MGA Parties deny that MGA "recruited" Castilla. The MGA Parties are without sufficient knowledge to admit or deny the remaining allegations set forth in paragraph 77, and on that basis, deny the remaining allegations set forth in paragraph 77.

78. The MGA Parties admit that Castilla was previously employed by Mattel. The MGA Parties are without sufficient knowledge to admit or deny the remaining allegations set forth in paragraph 78, and on that basis, deny the remaining allegations set forth in paragraph 78.

79. The MGA Parties admit that Castilla was previously employed by Mattel. The MGA Parties are without sufficient knowledge to admit or deny the remaining allegations set forth in paragraph 79, and on that basis, deny the remaining allegations set forth in paragraph 79.

80. The MGA Parties are without sufficient knowledge to admit or deny the allegations set forth in paragraph 80, and on that basis, deny the allegations set forth in paragraph 80.

///

///

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

81. The MGA Parties are without sufficient knowledge to admit or deny the allegations set forth in paragraph 81, and on that basis, deny the allegations set forth in paragraph 81.

82. The MGA Parties are without sufficient knowledge to admit or deny the allegations set forth in paragraph 82, and on that basis, deny the allegations set forth in paragraph 82.

83. The MGA Parties are without sufficient knowledge to admit or deny the allegations set forth in paragraph 83, and on that basis, deny the allegations set forth in paragraph 83.

84. The MGA Parties are without sufficient knowledge to admit or deny the allegations set forth in paragraph 84, and on that basis, deny the allegations set forth in paragraph 84.

85. The MGA Parties are without sufficient knowledge to admit or deny the allegations set forth in paragraph 85, and on that basis, deny the allegations set forth in paragraph 85.

86. To the extent that paragraph 86 purports to characterize Castilla's deposition, the MGA Parties state that Castilla's deposition transcript speaks for itself. The MGA Parties admit that Castilla, before he was employed by MGA, turned over to FBI agents a storage media from his personal digital device. The MGA Parties deny the remaining allegations set forth in paragraph 86.

87. The MGA Parties deny the allegations set forth in paragraph 87.

88. The MGA Parties deny the allegations set forth in paragraph 88.

89. The MGA Parties are without sufficient knowledge to admit or deny the allegations set forth in paragraph 89, and on that basis, deny the allegations set forth in paragraph 89.

90. The MGA Parties are without sufficient knowledge to admit or deny the allegations set forth in paragraph 90, and on that basis, deny the allegations set forth in paragraph 90.

LAW OFFICES GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP 10250 CONSTELLATION BOULEVARD NINETEENTH FLOOR LOS ANGELES, CALIFORNIA 90067 310-553-3000

91. The MGA Parties admit that on September 26, 2005, Janine Brisbois ("Brisbois") resigned from Mattel Canada, state that she took a position as Vice President of National Accounts at MGAE Canada, and deny the remaining allegations set forth in the first sentence of paragraph 91. The MGA Parties are without sufficient knowledge to admit or deny the remaining allegations set forth in paragraph 91, and on that basis, deny the remaining allegations set forth in paragraph 91.

92. The MGA Parties admit that Brisbois spoke with Larian by telephone on or about the evening of September 22, 2005, deny that Brisbois copied approximately 45 Mattel documents onto a USB or thumb drive on that same date, deny that Brisbois concealed the thumb drive the last time she left Mattel Canada's office, and state that they are without sufficient knowledge to admit or deny the remaining allegations set forth in paragraph 92, and on that basis, deny the remaining allegations set forth in paragraph 92.

93. The MGA Parties deny the allegations set forth in paragraph 93.

94. The MGA Parties admit that Brisbois traveled several times to MGA's offices in Van Nuys, California, and met with Larian and Brawer, that MGA issued a press release, state that the press release speaks for itself, and deny the remaining allegations set forth in paragraph 94.

95. The MGA Parties state that Veronica Marlow's deposition transcript speaks for itself. The MGA Parties deny the allegations set forth in paragraph 95.

96. The MGA Parties are without sufficient knowledge to admit or deny the allegations set forth in paragraph 96, and on that basis, deny the allegations set forth in paragraph 96.

97. To the extent that paragraph 97 purports to characterize or quote e-mails, the MGA Parties state that those e-mails speak for themselves. The MGA

LAW OFFICES GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP 10250 CONSTELLATION BOULEVARD NINETEENTH FLOOR LOS ANGELES, CALIFORNIA 90067 310-553-3000

680227

12

MGA PARTIES' ANSWER AND AFFIRMATIVE DEFENSES TO MATTEL, INC.'S THIRD AMENDED ANSWER AND COUNTERCLAIMS

EXHIBIT 7
PAGE 315

Parties admit that they hired Maria Elena Salazar. The MGA Parties deny the remaining allegations set forth in paragraph 97.

98. The MGA Parties deny the allegations set forth in paragraph 98.

99. The MGA Parties deny the allegations set forth in the first sentence of paragraph 99. The MGA Parties admit that Larian has sent e-mail messages to a "Bratz News" distribution list, admit that the recipients of e-mail messages sent to the "Bratz News" distribution list includes members of the media as well as representatives of customers of both MGA and Mattel, and deny the remaining allegations set forth in paragraph 99.

100. The MGA Parties admit that on May 12, 2006, Larian sent an e-mail message to the "Bratz News" distribution list that included a reference to the new My Scene product with real gems, and state that they are without sufficient knowledge to admit or deny the remaining allegations set forth in paragraph 100, and on that basis, deny the remaining allegations set forth in paragraph 100.

101. The MGA Parties admit that Larian told one retailer that such retailer was the only retailer with plans to purchase MY SCENE BLING BLING with real gems, at a time when Larian had a good faith belief that such retailer was the only retailer with plans to purchase MY SCENE BLING BLING with real gems, and deny the remaining allegations set forth in paragraph 101.

102. The MGA Parties deny the allegations set forth in paragraph 102.

103. The MGA Parties deny the allegations set forth in paragraph 103.

104. The MGA Parties admit that Larian offered sworn testimony during Phase 1 that Bryant told him, and that Larian believed, that Bryant had not created Bratz while employed by Mattel. The MGA Parties deny the remaining allegations set forth in paragraph 104.

105. The MGA Parties deny the allegations set forth in paragraph 105.

106. The MGA Parties deny the allegations set forth in paragraph 106.

107. The MGA Parties deny the allegations set forth in paragraph 107.

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

EXHIBIT 7
PAGE 314

108. The MGA Parties deny the allegations set forth in paragraph 108.

109. The MGA Parties are without sufficient knowledge to admit or deny the allegations set forth in paragraph 109, and on that basis, deny the allegations set forth in paragraph 109.

110. The MGA Parties deny the allegations set forth in paragraph 110.

111. The MGA Parties deny the allegations set forth in paragraph 111.

112. The MGA Parties admit that Shirin Makabi is Isaac Larian's sister and that Jahangir Eli Makabi is Isaac Larian's brother-in-law, and that both are shareholders of MGA. The MGA Parties deny the remaining allegations set forth in paragraph 112.

113. The MGA Parties admit that on or around July 21, 2008, Wachovia accelerated the maturity of MGA's outstanding debt obligations, amounting to $313 million, owed to Wachovia, and deny the remaining allegations set forth in paragraph 113.

114. The MGA Parties deny the allegations set forth in paragraph 114.

115. The MGA Parties admit that Omni 808 has represented to the Court that its acquisition of the Wachovia note was an arms-length transaction and that the funds used for the acquisition did not originate from the MGA Parties, and deny the remaining allegations set forth in paragraph 115. To the extent that paragraph 115 purports to characterize certain documents, the MGA Parties state that those documents speak for themselves.

116. The MGA Parties admit that Leon Neman is Larian's brother-in-law. The MGA Parties deny that Vision Capital is affiliated with MGA. The MGA Parties are without sufficient knowledge to admit or deny the remaining allegations set forth in paragraph 116, and on that basis, deny the remaining allegations set forth in paragraph 116.

117. The MGA Parties deny the allegations set forth in paragraph 117.

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

118. To the extent that paragraph 118 purports to characterize or quote documents, the MGA Parties state that those documents speak for themselves. The MGA Parties deny the allegations set forth in paragraph 118.

119. The MGA Parties deny the allegations set forth in paragraph 119.

120. The MGA Parties deny the allegations set forth in paragraph 120.

121. To the extent that paragraph 121 purports to characterize certain documents, the MGA Parties state that those documents speak for themselves. The MGA Parties admit that MGA shareholders have loaned the amounts alleged in paragraph 121 to MGA. Except as otherwise admitted, the MGA Parties deny the remaining allegations set forth in paragraph 121.

122. The MGA Parties deny the allegations set forth in paragraph 122.

123. The MGA Parties deny the allegations set forth in paragraph 123.

124. To the extent that paragraph 124 purports to characterize or quote documents, the MGA Parties state that those documents speak for themselves. The MGA Parties deny the allegations set forth in paragraph 124.

125. To the extent that paragraph 125 purports to characterize or quote documents, the MGA Parties state that those documents speak for themselves. The MGA Parties deny the allegations set forth in paragraph 125.

126. The MGA Parties deny the allegations set forth in paragraph 126.

127. The MGA Parties repeat their responses contained in paragraphs 1 through 126 of this Answer and incorporate them by reference as though fully and completely set forth herein.

128. The MGA Parties deny the allegations set forth in paragraph 128.

129. The MGA Parties deny the allegations set forth in paragraph 129.

130. The MGA Parties deny the allegations set forth in paragraph 130.

131. The MGA Parties deny the allegations set forth in paragraph 131.

132. The MGA Parties deny the allegations set forth in paragraph 132.

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

133. The MGA Parties repeat their responses contained in paragraphs 1 through 132 of this Answer and incorporate them by reference as though fully and completely set forth herein.

134. The MGA Parties deny the allegations set forth in paragraph 134.

135. The MGA Parties deny the allegations set forth in paragraph 135.

136. The MGA Parties deny the allegations set forth in paragraph 136.

137. The MGA Parties deny the allegations set forth in paragraph 137.

138. The MGA Parties deny the allegations set forth in paragraph 138.

139. The MGA Parties deny the allegations set forth in paragraph 139.

140. The MGA Parties deny the allegations set forth in paragraph 140.

141. The MGA Parties deny the allegations set forth in paragraph 141.

142. The MGA Parties deny the allegations set forth in paragraph 142.

143. The MGA Parties deny the allegations set forth in paragraph 143.

144. The MGA Parties deny the allegations set forth in paragraph 144.

145. The MGA Parties deny the allegations set forth in paragraph 145.

146. The MGA Parties repeat their responses contained in paragraphs 1 through 145 of this Answer and incorporate them by reference as though fully and completely set forth herein.

147. The MGA Parties deny the allegations set forth in paragraph 147.

148. The MGA Parties deny the allegations set forth in paragraph 148.

149. The MGA Parties deny the allegations set forth in paragraph 149.

150. The MGA Parties deny the allegations set forth in paragraph 150.

151. The MGA Parties deny the allegations set forth in paragraph 151.

152. The MGA Parties deny the allegations set forth in paragraph 152.

153. The MGA Parties deny the allegations set forth in paragraph 153.

154. The MGA Parties deny the allegations set forth in paragraph 154.

155. The MGA Parties deny the allegations set forth in paragraph 155.

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

156. The MGA Parties repeat their responses contained in paragraphs 1 through 155 of this Answer and incorporate them by reference as though fully and completely set forth herein.

157. The MGA Parties deny the allegations set forth in paragraph 157.

158. The MGA Parties deny the allegations set forth in paragraph 158.

159. The MGA Parties deny the allegations set forth in paragraph 159.

160. The MGA Parties deny the allegations set forth in paragraph 160.

161. The MGA Parties deny the allegations set forth in paragraph 161.

162. The MGA Parties deny the allegations set forth in paragraph 162.

163. The MGA Parties deny the allegations set forth in paragraph 163.

164. The MGA Parties deny the allegations set forth in paragraph 164.

165. The MGA Parties deny the allegations set forth in paragraph 165.

166. The MGA Parties repeat their responses contained in paragraphs 1 through 165 of this Answer and incorporate them by reference as though fully and completely set forth herein.

167. The MGA Parties deny the allegations set forth in paragraph 167.

168. The MGA Parties deny the allegations set forth in paragraph 168.

169. The MGA Parties deny the allegations set forth in paragraph 169.

170. The MGA Parties deny the allegations set forth in paragraph 170.

171. The MGA Parties deny the allegations set forth in paragraph 171.

172. The MGA Parties repeat their responses contained in paragraphs 1 through 171 of this Answer and incorporate them by reference as though fully and completely set forth herein.

173. The MGA Parties deny the allegations set forth in paragraph 173.

174. The MGA Parties deny the allegations set forth in paragraph 174.

175. The MGA Parties deny the allegations set forth in paragraph 175.

176. The MGA Parties deny the allegations set forth in paragraph 176.

177. The MGA Parties deny the allegations set forth in paragraph 177.

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

178. The MGA Parties deny the allegations set forth in paragraph 178.

179. The MGA Parties repeat their responses contained in paragraphs 1 through 178 of this Answer and incorporate them by reference as though fully and completely set forth herein.

180. The MGA Parties deny the allegations set forth in paragraph 180.

181. The MGA Parties deny the allegations set forth in paragraph 181.

182. The MGA Parties deny the allegations set forth in paragraph 182.

183. The MGA Parties deny the allegations set forth in paragraph 183.

184. The MGA Parties deny the allegations set forth in paragraph 184.

185. The MGA Parties deny the allegations set forth in paragraph 185.

186. The MGA Parties repeat their responses contained in paragraphs 1 through 185 of this Answer and incorporate them by reference as though fully and completely set forth herein.

187. The MGA Parties deny the allegations set forth in paragraph 187.

188. The MGA Parties deny the allegations set forth in paragraph 188.

189. The MGA Parties deny the allegations set forth in paragraph 189.

190. The MGA Parties deny the allegations set forth in paragraph 190.

191. The MGA Parties deny the allegations set forth in paragraph 191.

192. The MGA Parties repeat their responses contained in paragraphs 1 through 191 of this Answer and incorporate them by reference as though fully and completely set forth herein.

193. The MGA Parties deny the allegations set forth in paragraph 193.

194. The MGA Parties deny the allegations set forth in paragraph 194.

195. The MGA Parties deny the allegations set forth in paragraph 195.

196. The MGA Parties deny the allegations set forth in paragraph 196.

197. The MGA Parties deny the allegations set forth in paragraph 197.

198. The MGA Parties deny the allegations set forth in paragraph 198.

LAW OFFICES GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP 10250 CONSTELLATION BOULEVARD NINETEENTH FLOOR LOS ANGELES, CALIFORNIA 90067 310-553-3000

EXHIBIT 7
PAGE 221

199. The MGA Parties repeat their responses contained in paragraphs 1 through 198 of this Answer and incorporate them by reference as though fully and completely set forth herein.

200. The MGA Parties deny the allegations set forth in paragraph 200.

201. The MGA Parties deny the allegations set forth in paragraph 201.

202. The MGA Parties deny the allegations set forth in paragraph 202.

203. The MGA Parties deny the allegations set forth in paragraph 203.

204. The MGA Parties deny the allegations set forth in paragraph 204.

205. The MGA Parties repeat their responses contained in paragraphs 1 through 204 of this Answer and incorporate them by reference as though fully and completely set forth herein.

206. The MGA Parties deny the allegations set forth in paragraph 206.

207. The MGA Parties deny the allegations set forth in paragraph 207.

208. The MGA Parties deny the allegations set forth in paragraph 208.

209. The MGA Parties deny the allegations set forth in paragraph 209.

210. The MGA Parties deny the allegations set forth in paragraph 210.

211. The MGA Parties deny the allegations set forth in paragraph 211.

212. The MGA Parties deny the allegations set forth in paragraph 212.

213. The MGA Parties repeat their responses contained in paragraphs 1 through 212 of this Answer and incorporate them by reference as though fully and completely set forth herein.

214. Paragraph 214 is a statement of Mattel's legal position, to which no response is necessary. In the event a response is necessary, the MGA Parties deny the allegations set forth in paragraph 214.

215. The MGA Parties deny the allegations set forth in paragraph 215.

216. The MGA Parties deny the allegations set forth in paragraph 216.

///

///

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

217. The MGA Parties repeat their responses contained in paragraphs 1 through 216 of this Answer and incorporate them by reference as though fully and completely set forth herein.

218. The MGA Parties deny the allegations set forth in paragraph 218.

219. The MGA Parties deny the allegations set forth in paragraph 219.

220. The MGA Parties deny the allegations set forth in paragraph 220.

221. The MGA Parties deny the allegations set forth in paragraph 221.

222. The MGA Parties deny the allegations set forth in paragraph 222.

223. The MGA Parties repeat their responses contained in paragraphs 1 through 222 of this Answer and incorporate them by reference as though fully and completely set forth herein.

224. The MGA Parties deny the allegations set forth in paragraph 224.

225. Paragraph 225 is a statement of Mattel's legal position, to which no response is necessary. To the extent that a response is required, the MGA Parties deny the allegations set forth in paragraph 225.

226. Paragraph 226 is a statement of Mattel's legal position, to which no response is necessary. To the extent that a response is required, the MGA Parties deny the allegations set forth in paragraph 226.

## AFFIRMATIVE DEFENSES

Without admitting any wrongful conduct on the part of the MGA Parties or any Counter-Defendant, and without admitting that Mattel suffered any loss, damage, or injury, the MGA Parties allege the following affirmative defenses to the Counterclaims. By designating the following as affirmative defenses, the MGA Parties do not in any way waive or limit any defenses which are or may be raised by their denials, allegations, and averments set forth herein. The MGA Parties also do not, by alleging any affirmative defense, admit that Mattel does not have the burden of proof for any or all facts underlying any of those defenses. These defenses are pled in the alternative, and are raised to preserve the rights of the MGA Parties to assert

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

such defenses, and are raised without prejudice to their ability to raise other and further defenses.

**FIRST AFFIRMATIVE DEFENSE**

(Failure to State a Claim)

Mattel's counterclaims fail to state a claim against the MGA Parties upon which relief can be granted.

**SECOND AFFIRMATIVE DEFENSE**

(Unclean Hands)

Mattel's counterclaims are barred in whole or in part by Mattel's unclean hands and wrongful acts. This affirmative defense is based, in part, on Mattel's efforts to undermine MGA's business and to "kill" Bratz at any cost which include, but are not limited to, Mattel's efforts to infringe and dilute MGA's trade dress, copy MGA's products, packaging, themes, and advertising (including for Mattel products My Scene, Diva Starz, Wee 3 Friends, Acceleracers, Polly Pocket, and Little Mommy, to name a few), and engage in other acts of unfair competition against MGA as alleged in MGA's complaint against Mattel; Mattel's efforts to create negative publicity or press about MGA, MGA products, Carter Bryant, Isaac Larian, or MGA employees; Mattel's efforts to fund or commission market research or studies that portray Bratz or MGA products negatively; Mattel's misuse of statistics published by NPD Funworld and efforts to pressure NPD Funworld into terminating MGA's subscription to its publications; Mattel's efforts to induce the Children's Advertising Review Unit ("CARU") to place onerous restrictions on MGA advertisements; Mattel's efforts to interfere with MGA's acquisition of or investment in Zapf Creation AG; Mattel's efforts to include negative references to MGA or Bratz on Mattel's "We Believe in Girls" website; Mattel's efforts or intent to interfere with business dealings or contractual relations between MGA and Smoby Group; Mattel's influencing Nickelodeon to reject MGA advertisements or to limit time slots for advertisements; assisting parties in lawsuits against MGA; Mattel's monitoring, "spying on," or

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000



EXHIBIT 7
PAGE 224

gaining knowledge of MGA's trade secrets, non-public information, non-public activities, unreleased products, and product development; gaining access, or attempts to gain access, to MGA showrooms, Plan-o-Grams, merchandising displays, or Toy Fair displays on false pretenses; Mattel's wrongfully obtaining MGA's costs and sales information through Mattel-employed category managers at retailers; Mattel's inducing non-party customers to breach confidentiality agreements with MGA and divulge non-public information about MGA's unreleased products; Mattel's covertly investigating MGA, its officers and employees, and their family members; Mattel's contacting persons under false pretense in order to interrogate them about Bratz and this litigation; Mattel's coercing its employees to accept restrictive covenants (right before a massive layoff) and non-compete clauses and other efforts to prevent prospective MGA employees from accepting offers of employment; Mattel's admitted use of this litigation as a "business strategy" or weapon to drain MGA resources from competing in the marketplace; Mattel's threatening and attempting to intimidate employees into going to work for MGA; Mattel's hiring of a former MGA employee, Tina Patel (MGA's brand manager for Bratz), and attempting to gain confidential information about MGA from this former employee; Mattel's delay in suing Carter Bryant because, *inter alia*, Mattel wanted Bryant to testify in an unrelated Mattel case; Mattel's falsely inflating its Barbie sales figures in an effort to mislead the public and retailers; and Mattel's taking all measures to conceal its bad acts, including the willful non-retention and destruction of documents. Additionally, Mattel believed from the time that Carter Bryant left Mattel's employ that he was going to perform work for a Mattel competitor. Mattel began investigating Bryant and MGA, including Bryant's role in the creation and development of Bratz, at least as early as March 2002. Nonetheless, Mattel waited years to bring suit, all the while allowing MGA to spend years developing its business and allowing MGA to invest tens of millions of dollars developing the Bratz products and building the Bratz brand. These averments

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

are made on information and belief except where the MGA Parties have knowledge thereof.

**THIRD AFFIRMATIVE DEFENSE**

(Laches)

Mattel's counterclaims are barred by the equitable doctrine of laches because, among other things, Mattel believed from the time that Carter Bryant left Mattel's employ that he was going to perform work for a Mattel competitor. Mattel began investigating Bryant and MGA, including Bryant's role in the creation and development of Bratz, at least as early as March 2002 and thereafter continued its investigation into Bryant's role in the creation and development of Bratz, as well as his work with MGA, in August 2002 after Mattel's CEO, Robert Eckert, received an "anonymous letter" that claimed that Bryant stole the idea for Bratz from Mattel and sold it to MGA. Nonetheless, Mattel waited years to bring suit, all the while allowing MGA to spend years developing its business and allowing MGA to invest tens of millions of dollars developing the Bratz products and building the Bratz brand.

**FOURTH AFFIRMATIVE DEFENSE**

(Statute of Limitations)

Mattel's counterclaims are barred by the applicable statutes of limitations, including but not limited to, 18 U.S.C. § 1961 *et seq*., 17 U.S.C. § 507(b), and Code of Civil Procedure §§ 337, 339, 343 and 338(c).

**FIFTH AFFIRMATIVE DEFENSE**

(*Bona Fide* Purchaser for Value)

Mattel cannot maintain its counterclaims against the MGA Parties because MGA paid valuable consideration for Bryant's assignment of his rights in the original Bratz drawings to MGA, and Isaac Larian acted with a good faith belief that Bryant owned the rights to his original Bratz drawings and that his assignment of such rights to MGA was valid and permissible.

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

**SIXTH AFFIRMATIVE DEFENSE**

(17 U.S.C. § 205(d))

Mattel cannot maintain its counterclaims against the MGA Parties because, among other things, Isaac Larian acted with a good faith belief that Bryant owned the rights to his original Bratz drawings and that his assignment of such rights to MGA was valid and permissible.

**SEVENTH AFFIRMATIVE DEFENSE**

(Information Readily Ascertainable)

The MGA Parties cannot be liable, either on their own account or by association with other defendants, for misappropriation of information that was readily ascertainable by proper means at the time of the alleged acquisition or use. Such information includes, but is not limited to, the identity of suppliers, manufacturers, distributors and retailers, contact information for the same, and sales, marketing and media data.

**EIGHTH AFFIRMATIVE DEFENSE**

(Acts or Omissions of Others)

Mattel's damages, if any, were not caused by the MGA Parties and are not attributable to any acts or omissions of the MGA Parties.

**NINTH AFFIRMATIVE DEFENSE**

(Estoppel)

Mattel's counterclaims are barred in whole or in part by the equitable doctrine of estoppel because, among other things, Mattel believed from the time that Carter Bryant left Mattel's employ that he was going to perform work for a Mattel competitor. Mattel began investigating Bryant and MGA, including Bryant's role in the creation and development of Bratz, at least as early as March 2002. Nonetheless, Mattel waited years to bring suit, all the while allowing MGA to spend years developing its business and allowing MGA to invest tens of millions of dollars developing the Bratz products and building the Bratz brand.

EXHIBIT 7
PAGE 227

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

**TENTH AFFIRMATIVE DEFENSE**

(Acquiescence)

Mattel's counterclaims are barred in whole or in part by acquiescence because, among other things, Mattel believed from the time that Carter Bryant left Mattel's employ that he was going to perform work for a Mattel competitor. Mattel began investigating Bryant and MGA, including Bryant's role in the creation and development of Bratz, at least as early as March 2002. Nonetheless, Mattel waited years to bring suit, all the while allowing MGA to spend years developing its business and allowing MGA to invest tens of millions of dollars developing the Bratz products and building the Bratz brand. Additionally, Mattel tolerated and condoned conduct by other employees similar to the alleged conduct by Bryant and others on which Mattel bases its claims.

**ELEVENTH AFFIRMATIVE DEFENSE**

(Failure to Mitigate)

The MGA Parties deny that Mattel suffered any damages, but even if it did, Mattel failed to take reasonable steps to mitigate those purported damages.

**TWELFTH AFFIRMATIVE DEFENSE**

(Comparative Fault)

The MGA Parties deny that Mattel suffered any damages, but even if it did, any recovery by Mattel is barred or must be reduced as a result of Mattel's comparative fault.

**THIRTEENTH AFFIRMATIVE DEFENSE**

(Good Faith Improver/Set off)

The MGA Parties deny that Mattel suffered any damages, but even if it did, the MGA Parties are good faith improvers and/or are entitled to a set-off or credit for their improvements to any idea or property conveyed to Mattel pursuant to constructive trust as well as any judgment, settlement, profits or other proceeds paid

or owed to Mattel by the MGA Parties or any other person in connection with the allegations set forth in Mattel's counterclaims.

**FOURTEENTH AFFIRMATIVE DEFENSE**

(Bar On Damages and Relief)

The MGA Parties deny that Mattel suffered any damages, but even if it did, Mattel is barred from recovering damages and further relief to the extent it has already obtained an award of damages and relief in connection with the allegations set forth in Mattel's counterclaims.

**FIFTEENTH AFFIRMATIVE DEFENSE**

(No Statutory Damages or Attorneys' Fees)

Mattel is barred from recovering statutory damages and/or attorneys' fees because it failed to register the copyrights that are purportedly at issue within the time required by 17 U.S.C. § 412. Mattel is also barred from recovering attorneys' fees under Cal. Civil Code § 3426 because the MGA Parties did not engage in any willful or malicious misappropriation of trade secrets.

**SIXTEENTH AFFIRMATIVE DEFENSE**

(Waiver)

Mattel's counterclaims are barred in whole or in part by waiver because, among other things, Mattel believed from the time that Carter Bryant left Mattel's employ that he was going to perform work for a Mattel competitor. Mattel began investigating Bryant and MGA, including Bryant's role in the creation and development of Bratz, at least as early as March 2002. Nonetheless, Mattel waited years to bring suit, all the while allowing MGA to spend years developing its business and allowing MGA to invest tens of millions of dollars developing the Bratz products and building the Bratz brand.

///

///

///

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

EXHIBIT 7
PAGE 229

**SEVENTEENTH AFFIRMATIVE DEFENSE**

(Abandonment)

Mattel has abandoned any interest it may have had in the alleged copyrighted works.

**EIGHTEENTH AFFIRMATIVE DEFENSE**

(*De Minimus* Use)

The MGA Parties deny that Mattel owns any copyright interest in the alleged works, but even if Mattel could craft a claim that the Bratz dolls incorporate an aspect of a Mattel copyrighted work, such use would be *de minimus* and non-infringing.

**NINETEENTH AFFIRMATIVE DEFENSE**

(Joint Authorship)

The MGA Parties deny that Mattel owns any copyright interest in the alleged works, but even if it did, any liability would be eliminated or greatly diminished by the doctrine of joint authorship.

**TWENTIETH AFFIRMATIVE DEFENSE**

(Competition Privilege/Justification)

Mattel's counterclaims are barred in whole or in part on the grounds that the acts of the MGA Parties were lawful competition or justified. MGA was privileged to respond to the acts of long-time fashion doll toy monopolist Mattel in Mattel's efforts to destroy its business and to "kill" Bratz, which included, but are not limited to, Mattel's efforts to infringe and dilute MGA's trade dress, copy MGA's products, packaging, themes, and advertising (including for Mattel products My Scene, Diva Starz, Wee 3 Friends, Acceleracers, Polly Pocket, and Little Mommy, to name a few), and engage in other acts of unfair competition against MGA as alleged in MGA's complaint against Mattel; Mattel's efforts to create negative publicity or press about MGA, MGA products, Carter Bryant, Isaac Larian, or MGA employees; Mattel's efforts to fund or commission market research or studies that portray Bratz or MGA products negatively; Mattel's misuse of statistics published by NPD Funworld and

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

efforts to pressure NPD Funworld into terminating MGA's subscription to its publications; Mattel's efforts to induce the Children's Advertising Review Unit ("CARU") to place onerous restrictions on MGA advertisements; Mattel's efforts to interfere with MGA's acquisition of or investment in Zapf Creation AG; Mattel's efforts to include negative references to MGA or Bratz on Mattel's "We Believe in Girls" website; Mattel's efforts or intent to interfere with business dealings or contractual relations between MGA and Smoby Group; Mattel's influencing Nickelodeon to reject MGA advertisements or to limit time slots for advertisements; assisting parties in lawsuits against MGA; Mattel's monitoring, "spying on," or gaining knowledge of MGA's trade secrets, non-public information, non-public activities, unreleased products, and product development; gaining access, or attempts to gain access, to MGA showrooms, Plan-o-Grams, merchandising displays, or Toy Fair displays on false pretenses; Mattel's wrongfully obtaining MGA's costs and sales information through Mattel-employed category managers at retailers; Mattel's inducing non-party customers to breach confidentiality agreements with MGA and divulge non-public information about MGA's unreleased products; Mattel's covertly investigating MGA, its officers and employees, and their family members; Mattel's contacting persons under false pretense in order to interrogate them about Bratz and this litigation; Mattel's coercing its employees to accept restrictive covenants (right before a massive layoff) and non-compete clauses and other efforts to prevent prospective MGA employees from accepting offers of employment; Mattel's admitted use of this litigation as a "business strategy" or weapon to drain MGA resources from competing in the marketplace; Mattel's threatening and attempting to intimidate employees into going to work for MGA; Mattel's hiring of a former MGA employee, Tina Patel (MGA's brand manager for Bratz), and attempting to gain confidential information about MGA from this former employee; Mattel's delay in suing Carter Bryant because, *inter alia*, Mattel wanted Bryant to testify in an unrelated Mattel case; Mattel's falsely inflating its Barbie sales figures in an effort to mislead the

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

public and retailers; and Mattel's taking all measures to conceal its bad acts, including the willful non-retention and destruction of documents. Additionally, Mattel believed from the time that Bryant left Mattel's employ that he was going to perform work for a Mattel competitor. Mattel began investigating Bryant and MGA, including Bryant's role in the creation and development of Bratz, at least as early as March 2002. Nonetheless, Mattel waited years to bring suit, all the while allowing MGA to spend years developing its business and allowing MGA to invest tens of millions of dollars developing the Bratz products and building the Bratz brand. Particularly in light of the foregoing allegations (which are made upon information and belief except to those matters within the personal knowledge of the MGA Parties), Mattel's effort to preclude effective competition by MGA violates established California law and public policy. Mattel is attempting to preclude MGA from engaging in free and fair competition, which is privileged conduct and immune from tort liability. California law has long recognized that a competitor may solicit and hire the employees of the competition and may solicit business from its competitors through lawful means. Mattel nonetheless, afraid of such fair competition, particularly from a more nimble, innovative and successful competitor like MGA seeks to prevent MGA from doing what the law otherwise allows—and indeed, encourages. Mattel's claims are inconsistent with its own conduct in the marketplace and the competitive privilege held by the MGA Parties; accordingly, the MGA Parties cannot be held liable for this conduct.

**TWENTY-FIRST AFFIRMATIVE DEFENSE**

(Employee Right Of Mobility)

In violation of California law and public policy, as reflected, e.g., in California Business & Professions Code section 16600, Mattel is seeking, through its claims and its interpretations of employee contracts to restrain employee mobility. Under California law, employees' interest in their own mobility and betterment are of paramount importance and an employer's agreements restricting that mobility are

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

deemed void. Here, Mattel seeks to prevent its employees from seeking better and more productive employment with a more innovative and dynamic competitor and to use lawsuits, such as this one, and onerous, one-sided employment agreements, to instill fear in its employees and to discourage lawful mobility. Mattel's claims conflict with California's long-respected public policy of employee mobility and the right to engage in a competitive business, and MGA's conduct in furtherance of that public policy cannot result in liability.

**TWENTY-SECOND AFFIRMATIVE DEFENSE**

(Mattel's Bad Faith Claim Of Misappropriation)

Mattel's claims of misappropriation of trade secrets are objectively spurious and have been brought and maintained in bad faith. Mattel's motivation in bringing suit is not to protect any legally cognizable trade secrets but to thwart and discourage lawful competition by MGA. Facing declining sales and the loss of employees to a more innovative and successful competitor, Mattel has orchestrated its trade secrets claims to slow competitive pressures on it, discourage employee departures, and preclude MGA from fairly competing with Mattel. Under section 3426.4 of the California Uniform Trade Secrets Act ("CUTSA"), Mattel's claims should be found to have been made in bad faith and the MGA Parties should be awarded their reasonable attorney's fees and costs.

**TWENTY-THIRD AFFIRMATIVE DEFENSE**

(Good Faith)

Mattel's counterclaims are barred in whole or in part because the MGA Parties acted in good faith.

**TWENTY-FOURTH AFFIRMATIVE DEFENSE**

(Lack of Authority)

Mattel's counterclaims are barred in whole or in part on the grounds that to the extent any person committed an unlawful or tortious act, the person lacked authority to commit such act on behalf of the MGA Parties.

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
LAW OFFICES
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

**TWENTY-FIFTH AFFIRMATIVE DEFENSE**

(Lack of Standing)

Mattel's counterclaims are barred in whole or in part by its lack of standing.

**TWENTY-SIXTH AFFIRMATIVE DEFENSE**

(Joinder in Defenses of Co-Defendants)

The MGA Parties hereby adopt and incorporate by reference any and all other affirmative defenses that have been or will be asserted by any other defendant (including Bryant) in this litigation to the extent that defendants may share in such affirmative defenses.

**TWENTY-SEVENTH AFFIRMATIVE DEFENSE**

(Preemption by California Uniform Trade Secrets Act)

Mattel's state law counterclaims are preempted by the California Uniform Trade Secrets Act ("CUTSA"), Cal. Civ. Code § 3426 *et seq.*, because they are based on the same nucleus of facts as Mattel's Fourth Counterclaim for Misappropriation of Trade Secrets under the CUTSA.

**TWENTY-EIGHTH AFFIRMATIVE DEFENSE**

(Preemption by Copyright Act)

Some or all of Mattel's claims are preempted by the Copyright Act, 17 U.S.C. §§ 101 *et seq.*

**TWENTY-NINTH AFFIRMATIVE DEFENSE**

(*Res Judicata* and Collateral Estoppel (Fed. R. Civ. Proc. 8(c)(1))

Mattel's Phase 2 counterclaims are barred in whole or in part by the doctrines of *res judicata* and collateral estoppel as a result of the Phase 1 proceedings.

**THIRTIETH AFFIRMATIVE DEFENSE**

(Law of the Case, Direct Estoppel and Reexamination Clause)

To the extent the jury and/or this Court has decided certain issues during and following the Phase 1 trial, Mattel's counterclaims are barred in whole or in part by

EXHIBIT 2
PAGE 234

the "law of the case" doctrine, by direct estoppel and by the Seventh Amendment Reexamination Clause.

**THIRTY-FIRST AFFIRMATIVE DEFENSE**

(No Injury Sustained by Alleged Creditor)

As to Mattel's claims for fraudulent conveyance, none of the alleged transactions caused any injury to Mattel, who is in no worse a position as a purported creditor of the MGA Parties.

**THIRTY-SECOND AFFIRMATIVE DEFENSE**

(Lack of Jurisdiction)

Mattel's claims, including without limitation its claims based upon alleged extra-territorial acts, are barred in whole or in part by lack of subject matter jurisdiction.

**THIRTY-THIRD AFFIRMATIVE DEFENSE**

(Illegal Conduct/Fraud)

Mattel's claims are barred in whole or in part by Mattel's own illegal conduct and/or fraud. The MGA Parties allege, upon information and belief, that: (1) Mattel has attempted to influence government officials in Mexico, through illegal means, to prosecute three former Mattel employees; (2) Mattel has attempted to suborn perjury by offering settlement terms to the three former Mattel employees that were premised upon them offering false testimony against MGA and/or Isaac Larian; (3) Mattel falsely imprisoned seamstresses and intimidated and harassed them into making statements; and (4) Mattel and/or its counsel has altered evidence that would reveal when Mattel first learned of the facts putting it on notice regarding its copyrights, thereby triggering the statute of limitations.

**THIRTY-FOURTH AFFIRMATIVE DEFENSE**

(Spoliation of Evidence)

Mattel's claims are barred in whole or in part by Mattel's spoliation of evidence. Mattel has continuously failed to stop its automatic destruction of relevant

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

documents, preserve relevant documents, institute a proper litigation hold, and search for and produce relevant electronic evidence.

## THIRTY-FIFTH AFFIRMATIVE DEFENSE

(Undiscovered Defenses)

The MGA Parties have insufficient knowledge or information upon which to form a belief as to whether additional defenses are available. The MGA Parties reserve the right to assert any further or additional defenses upon receiving more complete information regarding the matters alleged in the Counterclaims, through discovery or otherwise.

WHEREFORE, the MGA Parties pray for relief as follows:

a. that Mattel, Inc.'s Counterclaims be dismissed with prejudice;

b. that judgment be entered in favor of the MGA Parties and against counterclaimant Mattel, Inc. and that Mattel, Inc. take nothing by way of its Third Amended Counterclaim;

c. that the MGA Parties recover their costs and attorneys' fees; and

d. that the Court award such other and further relief as is just and proper.

Dated: June 29, 2009

Patricia L. Glaser
Joel N. Klevens
GLASER, WEIL, FINK, JACOBS HOWARD & SHAPIRO, LLP

Russell J. Frackman
MITCHELL, SILBERBERG & KNUPP, LLP

By: [signature]
Joel N. Klevens
Attorneys for the MGA Parties for Phase 2

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000