# EXHIBIT 23

1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                   CENTRAL DISTRICT OF CALIFORNIA
10                        EASTERN DIVISION
11

| | |
|---|---|
| 12 CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| 13          Plaintiff, | Consolidated with<br>Case No. CV 04-09059 |
| 14      vs. | Case No. CV 05-02727 |
| 15 MATTEL, INC., a Delaware<br>corporation,, | [~~PROPOSED~~] REQUEST FOR<br>JUDICIAL ASSISTANCE (LETTER |
| 16          Defendant. | OF REQUEST) BY THE UNITED<br>STATES DISTRICT COURT FOR |
| 17 | THE CENTRAL DISTRICT OF<br>CALIFORNIA |
| 18 AND CONSOLIDATED ACTIONS | |

19
20
21
22
23
24
25
26
27
28

07975/2938972.1

EXHIBIT 23
PAGE 433

## TABLE OF CONTENTS

| | | | | Page |
|---|---|---|---|---|---|
| I. | | NATURE OF PROCEEDINGS | | | 2 |
| | A. | Names and Addresses of the Parties and Their Representatives | | | 2 |
| | B. | Nature and Purpose of the Proceedings and Summary of the Alleged Facts | | | 2 |
| | | 1. | Procedural Background | | 2 |
| | | 2. | Knowledge of Person to be Examined | | 4 |
| | | | (a) | Janine Brisbois | 4 |
| | | | (b) | MGA Entertainment Canada | 6 |
| II. | | CANADIAN EVIDENCE SOUGHT | | | 6 |
| | A. | Janine Brisbois | | | 7 |
| | B. | MGA Entertainment Canada's Person Most Knowledgeable | | | 9 |
| | | 1. | Subject Matter About Which The Deponents Are To Be Examined | | 10 |
| | | 2. | Special Methods or Procedures to be Followed | | 10 |
| | | 3. | Fees and Costs | | 10 |
| | | 4. | Conclusion | | 10 |
| III. | | REQUEST FOR JUDICIAL ASSISTANCE | | | 11 |
| IV. | | RECIPROCITY | | | 14 |
| V. | | CONCLUSION | | | 14 |
| SCHEDULE A | | | | | 15 |
| SCHEDULE B | | | | | 16 |
| SCHEDULE C | | | | | 20 |
| SCHEDULE D | | | | | 21 |
| SCHEDULE E | | | | | 25 |

07975/2938972.1

-i-

EXHIBIT 23
PAGE 434

1 **TO THE ONTARIO SUPERIOR COURT OF JUSTICE:**

2      The United States District Court for the Central District of California presents

3 its compliments to the Ontario Superior Court of Justice, and requests international

4 judicial assistance to obtain the following: (1) the production of documents and oral

5 examination, under oath, from Janine Brisbois, as set forth in Schedule B and C,

6 respectively; (2) the production of documents from MGA Entertainment Canada, as

7 set forth in Schedule D; and (3) the oral examination, under oath, from MGA

8 Entertainment Canada on the topics set forth in Schedule E.

9      This request is made pursuant to 28 U.S.C. § 1781 and the Canada Evidence

10 Act, Revised Statutes of Canada, 1970, c. E-10.  This Court, the United States

11 District Court for the Central District of California, Eastern Division, is a

12 competent court of law and equity which properly has jurisdiction over this

13 proceeding, and has the power to compel the attendance of witnesses and production

14 of documents both within and outside its jurisdiction.  On information and belief,

15 Ms. Brisbois resides in Canada.  The testimony of Ms. Brisbois and the production

16 of documents by her is intended for use at trial.  Further, on information and belief,

17 the person most knowledgeable on the topics set forth in Schedule E is employed by

18 MGA Entertainment Canada and resides in Ontario, Canada.  The testimony of this

19 witness and the production of documents by MGA Canada is intended for use at

20 trial.

21      This request is made with the understanding that it will in no way require the

22 person described below to commit any offense, nor will it require the person

23 described below to undergo a broader form of inquiry than they would if the

24 litigation were conducted in Canada.  In the proper exercise of its authority, this

25 Court has determined that the testimony of Janine Brisbois on the topics set forth in

26 Schedule C and the documents described in Schedule B can not be secured except

27 by the intervention of the Ontario Superior Court of Justice.  This Court has further

28 determined that the testimony of the person most knowledgeable on the topics set

1

REQUEST FOR JUDICIAL ASSISTANCE

EXHIBIT 23
PAGE 435

1 forth in Schedule E and the documents described in Schedule D can not be secured
2 except by intervention of the Ontario Superior Court of Justice.

3 **I.     NATURE OF PROCEEDINGS**

4     **A.     Names and Addresses of the Parties and Their Representatives**

5         The evidence requested relates to the action entitled <u>Bryant v. Mattel, Inc.</u>,
6 Case No. CV 04-9049 SGL (RNBx), which consists of three actions that have been
7 consolidated before the requesting judicial authority: <u>Mattel, Inc. v. Bryant</u>, Case
8 No. CV 04-9049 SGL (RNBx) (the "Bryant Case"); <u>Bryant v. Mattel, Inc.</u>, Case
9 No. CV 04-9049 SGL (RNBx) (the "Declaratory Relief Case"), and <u>MGA v.</u>
10 <u>Mattel, Inc.</u>, Case No. CV05-2727 SGL (RNBx) (the "Unfair Competition Case").
11 The parties and their representatives are listed in Schedule A attached hereto. The
12 applicant for this letter of request is defendant and cross-plaintiff Mattel, Inc.
13 ("Mattel").

14     **B.     Nature and Purpose of the Proceedings and Summary of the**
15         **Alleged Facts**

16         **1.     Procedural Background**

17         <u>Mattel's Original Complaint.</u>  Mattel learned in November 2003 that Carter
18 Bryant, a former Mattel doll designer, had contracted to provide and provided
19 services to MGA Entertainment, Inc. while he was a Mattel employee.  Mattel
20 originally filed suit against Bryant for breach of contract, breach of fiduciary duty,
21 breach of the duty of loyalty, unjust enrichment and conversion in April 2004.  In its
22 Complaint, Mattel alleged its claim to ownership of all inventions and works created
23 by Bryant during his Mattel employment and seeks to recover all benefits obtained
24 as a result of his breach of duties.  As of January 2005, Bryant claimed he had
25 earned more than $10 million from his relationship with MGA.  MGA intervened in
26 Mattel's case against Bryant in December 2004 to defend the rights it claims in the
27 Bratz properties, which Bryant created while, Mattel alleges, he was a Mattel doll
28 designer.

07975/2938972.1

2

EXHIBIT 23
PAGE 436

1      Bryant's Counterclaims.  Bryant initially challenged the assignment
2  provisions in the Inventions Agreement between he and Mattel in four
3  Counterclaims, alleging unconscionability, mistake, duress, fraud, Labor Code
4  violations, Business and Professions Code violations, unfair competition and other
5  claims.  Bryant sought rescission of the Inventions Agreement and a declaration that
6  the Inventions Agreement is unenforceable.  The Court dismissed all of Bryant's
7  Counterclaims in an 18-page Order.  The Court rejected Bryant's arguments that the
8  Inventions Agreement is not enforceable, holding that, even construing Bryant's
9  allegations in the light most favorable to him, "Bryant cannot prove any set of facts
10  in support of the claims that would entitle him to relief."

11      In addition to his Counterclaims, Bryant sued Mattel in November 2004 for a
12  declaratory judgment that he had not infringed the copyrights in a Mattel project
13  known as "Toon Teens."  Like his Counterclaims, the Court dismissed Bryant's
14  declaratory judgment complaint on the pleadings.

15      Consolidation.  After the Court lifted a discovery stay imposed while the
16  Ninth Circuit Court of Appeal resolved an appeal regarding subject matter
17  jurisdiction issues, the Court consolidated Mattel's case against Bryant, Bryant's
18  declaratory relief case and a case that MGA had filed against Mattel alleging trade
19  dress infringement, delusion and unfair competition, among others, for all purposes.

20      Mattel's Second Amended Counterclaims.  Mattel filed its Second Amended
21  Answer and Counterclaims on July 12, 2007, asserting thirteen counterclaims
22  against six named defendants, MGA Entertainment, Inc., Isaac Larian, MGA
23  Entertainment (HK) Ltd., MGAE de Mexico S.R.L. de C.V., Carlos Gustavo
24  Machado Gomez, and Carter Bryant.  Mattel's counterclaims included claims for
25  copyright infringement, misappropriation of trade secrets, violation of and
26  conspiracy to violate the Racketeer Influenced and Corrupt Organizations ("RICO")
27  Act, breach of contract, intentional interference with contract, breach of fiduciary
28  duty, aiding and abetting breach of fiduciary duty, breach of duty of loyalty, aiding

3

EXHIBIT 23
PAGE 437

1  and abetting breach of duty of loyalty, conversion, unfair competition, and
2  declaratory relief.
3       In its Second Amended Counterclaims, Mattel alleges that MGA and other
4  defendants have engaged in the systematic theft of Mattel's trade secrets, which
5  MGA used to unfairly compete against Mattel.[1]  It is alleged that MGA hired
6  directly from Mattel at least 25 employees, ranging from the Senior Vice-President
7  level to lower level employees.[2]  Mattel further alleged that MGA specifically
8  targeted and recruited many of these employees based on the Mattel confidential and
9  proprietary information the Mattel employees could access and bring to MGA.[3]
10 Janine Brisbois was one of these Mattel employees.

11              **2.    Knowledge of Person to be Examined**
12                   **(a)    Janine Brisbois**
13      Mattel has alleged that Janine Brisbois was one of the principal actors in
14 MGA's scheme to steal and profit from Mattel's trade secrets and confidential and
15 proprietary information.  MGA recruited Janine Brisbois in 2005.  In 2005,
16 Ms. Brisbois was a Director of Sales for Mattel's Girls Division in Canada and
17 responsible for Mattel's accounts with Toys 'R Us and Wal-Mart.[4]  When
18 Ms. Brisbois joined MGA Entertainment Canada, MGA gave her responsibility for
19 those same accounts.[5]
20      · Mattel alleges that Ms. Brisbois spoke with Isaac Larian, the President and
21 CEO of MGA, prior to her departure from Mattel, and four days before she
22 resigned, copied approximately 45 Mattel documents containing Mattel proprietary
23

24 ───────────────
   [1]   The allegations set forth in this section are from Mattel's Second Amended
25 Counterclaims dated July 12, 2007.  Id. at ¶ 37.
   [2]   Id. at ¶ 77.
26   [3]   Id.
   [4]   Id. at ¶ 71.
27   [5]   Id. at ¶ 73.
28

EXHIBIT 23
PAGE 438

1  advertising, project, sales, customer and strategy information (for both Canada and
2  the United States) onto a USB drive.[6]  While Ms. Brisbois was working as a Vice
3  President of Sales at MGA Entertainment Canada, Brisbois accessed and used a
4  number of these Mattel documents.[7]  Mattel further alleges that Ms. Brisbois and
5  MGA subsequently used these stolen trade secrets to improperly benefit MGA
6  Entertainment, Inc., including its management of MGA's Toys 'R Us and Wal-Mart
7  accounts.[8]  Ms. Brisbois' testimony regarding her participation in this alleged
8  scheme with MGA and anyone acting on MGA's behalf is, therefore, both relevant
9  to and essential for Mattel's prosecution of its Counterclaims.[9]

10        Mattel's document requests also seek highly relevant documents.  Mattel
11  requests documents containing communications between Ms. Brisbois and MGA
12  prior to her resignation from Mattel.  Such documents will prove that Ms. Brisbois,
13  acting in concert with MGA, planned and subsequently stole Mattel's trade secret, or
14  otherwise confidential and propriety information.  These documents are also
15  relevant and necessary to support Mattel's Counterclaims for misappropriation of
16  trade secrets, among others.[10]  Similarly, documents regarding Mattel's proprietary
17  information received by MGA from Ms. Brisbois (either directly or indirectly) will
18  show the same and such documents are necessary in order for Mattel to adequately
19  prosecute its Counterclaims.

20        Mattel has previously sought to depose Ms. Brisbois.  Mattel noticed her
21  deposition and requested, through MGA's counsel, that she voluntarily appear for

22
23
24

25   [6]  Id. at ¶ 74.
26   [7]  Id. at ¶¶ 70-76.
     [8]  Id. at ¶ 97.
27   [9]  Id. at ¶¶ 88-97; 98-105, 106-115.
     [10] Id. at ¶¶ 88-97; 98-105, 106-115.
28

EXHIBIT 23
PAGE 439

1  deposition and produce the requested documents.  MGA's counsel, on behalf of
2  Ms. Brisbois, refused.[11]

3                    **(b)    MGA Entertainment Canada**

4         Through this Letter of Request, Mattel seeks discovery in the form of
5  deposition testimony and documents regarding how MGA Entertainment Canada
6  used Mattel's trade secrets, confidential and proprietary information to the benefit of
7  MGA Entertainment in the United States.  This discoverable information requires
8  that Mattel understand the manner in which MGA Entertainment Canada accesses,
9  stores, reproduces, disseminates, and/or reviews the documents and information
10  stolen by Ms. Brisbois from Mattel.  Accordingly, Mattel seeks the deposition of
11  MGA Entertainment Canada's person most knowledgeable on the topics set forth in
12  Schedule E.

13  **II.     CANADIAN EVIDENCE SOUGHT**

14         The evidence to be obtained consists of testimony for use in the trial of the
15  actions that have been consolidated as part of <u>Bryant v. Mattel, Inc.</u>, Case No. 04-
16  9049 SGL (RNBx) (Consolidated with Case No. 04-9059 and Case No. 05-2727).  It
17  is requested that a Canadian judicial authority compel Janine Brisbois to appear and
18  to be deposed, under oath, as to her knowledge of the topics set forth in Schedule C.
19  Additionally, Mattel requests the production of documents, as set forth in Schedule
20  B.  It is further requested that a Canadian judicial authority compel MGA
21  Entertainment Canada to identify a designee and to appear and to be deposed, under
22  oath, as to his or her knowledge of the topics set forth in Schedule E, and compel
23  MGA Entertainment Canada to produce the documents described in Schedule D.

24
25
26
27  [11]   <u>See generally</u> Declaration of Jon D. Corey dated January 28, 2008 and
       Exhibits A-O attached thereto.
28

EXHIBIT 23
PAGE 440

1   **A.   <u>Janine Brisbois</u>**

2         Ms. Brisbois resides in your jurisdiction at 3130 Cole Road, RR # 2,

3   Queensville, Ontario, Canada L0GR0.  As detailed in section I.B.2, *supra*, it is

4   alleged that Ms. Brisbois was one of the principal actors engaged in MGA's scheme

5   of wrongdoing underlying Mattel's Counterclaims in that she stole and subsequently

6   assisted MGA in profiting from Mattel's trade secrets, or otherwise confidential or

7   proprietary information.  Mattel has alleged:

8             In 2005, MGA needed help in Canada.  So MGA, again

9             operating from its Southern California headquarters,

10            hired Janine Brisbois from Mattel.  At that time,

11            Ms. Brisbois was responsible for Mattel's account with

12            Toys 'R Us ("TRU") and Wal-Mart.  MGA gave her

13            responsibility for those same accounts, and she took from

14            Mattel documents containing proprietary advertising,

15            project, sales, customer and strategy information for not

16            only Canada, but for the United States.  Eliminating any

17            doubt that MGA then proceeded to use those stolen

18            materials, Brisbois subsequently accessed and modified

19            certain of those Mattel documents while employed by

20            MGA.[12]

21                        *       *       *

22            Mattel subsequently learned that on the same day that she

23            spoke with Mr. Larian and four days before she resigned,

24            Brisbois copied approximately 45 Mattel documents on

25            to a USB or "thumb" drive with the volume label

26            "BACKPACK."  On information and belief, Brisbois

27

28

EXHIBIT 23
PAGE 441

1    removed the thumb drive from Mattel Canada's office by

2    concealing it in her backpack or gym bag the last time

3    that she left that office.  These documents contained

4    Mattel trade secret and proprietary information, and

5    included:

6    •    a document containing the price, cost, sales plan

7    and quantity of every Mattel product ordered by every

8    Mattel customer in 2005 and 2006;

9    •    the BARBIE television advertising strategy and

10    information concerning sales increases generated by

11    television advertisements;

12    •    competitive analysis of Mattel vis-à-vis its

13    competitors in Canada;

14    •    an analysis of Mattel's girls business sales

15    beginning in 2003 and forecasts through 2006;

16    •    profit and loss reviews for Mattel's products being

17    sold in Wal-Mart, including margins and profit in not

18    only Canada, but in the United States and Mexico; and a

19    document containing the product launch dates and related

20    advertising for all Mattel new products between Fall

21    2005 and Spring 2006.[13]

22        *   *   *

23    After Mattel discovered that Brisbois had copied these

24    sensitive documents to a thumb drive, Mattel notified

25    Canadian law enforcement authorities.  Canadian law

26

27    [12] Id. at ¶ 4.
28    [13] Id. at ¶ 74.

07975/2938972.1

8

REQUEST FOR JUDICIAL ASSISTANCE

EXHIBIT 23
PAGE 442

1    enforcement authorities recovered from Brisbois a thumb
2    drive with the volume label "BACKPACK" containing
3    the documents that Brisbois had copied from Mattel's
4    computer system.  Mattel later learned that while she was
5    working as a Vice President of Sales at MGA, Brisbois
6    accessed and modified documents on that thumb drive.[14]

7    These allegations, and others, underlie Mattel's claims for misappropriation of
8  trade secrets and RICO violations.[15]  These allegations are also relevant to Mattel's
9  claims in that they will bear on and Mattel believes will evidence MGA's theft and
10 use of Mattel's trade secrets.  Moreover, they are relevant to MGA's unfair
11 competition claims because such information will prove that it was MGA that had
12 prior access to Mattel's business plans and strategies and that MGA was the one
13 copying Mattel—not the other way around as MGA alleges.

14     Because Ms. Brisbois has unique and personal knowledge of the matters at
15 issue in the consolidated litigation proceedings, it will further the interests of justice
16 if she is deposed, under oath, as to her knowledge of the facts which are relevant to
17 the issues of these cases and produce the documents set forth in Schedule B.

18     **B.    MGA Entertainment Canada's Person Most Knowledgeable**

19     MGA Entertainment Canada resides in your jurisdiction at 7100 Woodbine
20 Avenue, Suite #202, Markham, Ontario, Canada, L3R 5J2.  MGA Entertainment
21 Canada's designee on the topics set forth in Schedule E has unique and personal
22 knowledge regarding the manner in which MGA Entertainment Canada accessed,
23 used, reproduced, disseminated and/or transferred Mattel's trade secrets, confidential
24 and proprietary information stolen by Ms. Brisbois.  Therefore, it will further the
25 interests of justice if MGA Entertainment Canada designee is deposed, under oath,

26

27   [14]  Id. at ¶ 75.
     [15]  Id. at ¶¶ 88-115.
28


EXHIBIT 23
PAGE 443

1 │ as to his or her knowledge of the facts which are relevant to the issues of these cases
2 │ and produce the documents set forth in Schedule D.

3 │         **1.**   **Subject Matter About Which The Deponents Are To Be**
4 │             **Examined**

5 │     The subject matter about which Ms Brisbois is to be examined is set forth in
6 │ Schedule C. The subject matter about which MGA Entertainment Canada designee
7 │ is to be examined is set forth in Schedule E.

8 │         **2.**   **Special Methods or Procedures to be Followed**

9 │     The examinations shall be taken under the Federal Rules of Civil Procedure
10 │ of the United States of America, except to the extent such procedure is incompatible
11 │ with the internal laws of Canada.

12 │     The examination shall be taken before a commercial stenographer and a
13 │ verbatim transcript shall be produced. The deposition shall also be videotaped.

14 │         **3.**   **Fees and Costs**

15 │     Any fees and costs incurred by Ms. Brisbois or MGA Entertainment Canada
16 │ in conjunction with their respective depositions and production of documents will be
17 │ paid by Defendant Mattel, Inc, through its counsel of record: Jon D. Corey, Quinn
18 │ Emanuel Urquhart Oliver & Hedges, LLP, 865 South Figueroa Street, 10th Floor,
19 │ Los Angeles, CA 90017. Mattel's payment of any such fees and costs is without
20 │ prejudice to its making a subsequent request to be reimbursed for these costs by
21 │ other parties in this consolidated proceeding.

22 │         **4.**   **Conclusion**

23 │     Based on the foregoing and the Court's review of the pleadings, the
24 │ Declaration of Jon D. Corey filed concurrently with the Letter of Request, this Court
25 │ has concluded that Janine Brisbois has information, including both personal
26 │ knowledge and documents, about the transactions that are the subject of the civil
27 │ action against MGA and Carter Bryant, including but not limited to her knowledge
28 │ of the alleged theft of Mattel's propriety advertising, project, sales, customer and



EXHIBIT 23
PAGE 444

1   strategy information and her knowledge of communications with MGA, or anyone
2   acting on MGA's behalf, on or before September 27, 2005, regarding her resignation
3   from Mattel; compensation, money or anything of value paid by MGA to
4   Ms. Brisbois.

5        Further, this Court has concluded that MGA Entertainment Canada has
6   information, including both personal information and documents, about the
7   transactions which are the subject of the civil action against MGA and Carter
8   Bryant, including but not limited to the manner in which MGA Entertainment
9   Canada accessed, used, reproduced, disseminated and/or transferred Mattel's trade
10  secrets, confidential and proprietary information stolen by Ms. Brisbois.

11       Accordingly, in the interests of justice and to assure a complete record, it is
12  necessary for: (1) Janine Brisbois to produce the documents set forth in Schedule B;
13  (2) Janine Brisbois to be examined under oath on the topics set forth in Schedule C;
14  (3) MGA Entertainment Canada to produce the documents set forth in Schedule D;
15  and (4) MGA Entertainment Canada to produce a designee knowledgeable about the
16  topics set forth in Schedule E to be examined under oath.

17  **III.    REQUEST FOR JUDICIAL ASSISTANCE**

18       The evidence sought cannot be obtained other than from Janine Brisbois or
19  MGA Entertainment Canada, through deposition and document production, and
20  such evidence will be useful to this Court in determining the validity of the claims
21  and defenses in this case.  The evidence sought is necessary for trial in this matter
22  and will be adduced at trial, if admissible and appropriate.

23       Therefore, after having thoroughly reviewed the pleadings in this matter and
24  the exhibits attached to the concurrently filed Declaration of Jon D. Corey, this
25  Court requests the following as to Janine Brisbois:

26       (1)    You cause, by your proper and usual process, Janine Brisbois to be
27  summoned to appear before you or some competent office authorized by you, on a
28  date mutually agreed upon by the deponent and the parties or at a time and/or place

11

EXHIBIT 23
PAGE 445

1 │ to be determined by you, to give testimony under oath by questions and answers

2 │ upon oral deposition, such deposition to continue day to day until completion and

3 │ conducted in accordance with the <u>Federal Rules of Civil Procedure</u> or as permitted

4 │ by you. In the event that the Law of Canada does not permit the swearing of an oath

5 │ by a particular witness, the duly appointed officer shall make inquiry of such

6 │ witness to ensure that he/she understands the gravity of the procedure and affirms

7 │ that his/her statement will be true and correct in all respects.

8 │     (2)    You permit Janine Brisbois to be examined under oath by counsel for

9 │ all parties in this matter, allowing full examination and cross-examination on the

10 │ subject matter of this case, including the topics delineated in Schedule C to this

11 │ Letter of Request.

12 │     (3)    You order Janine Brisbois to produce documents at the offices of

13 │ Heenan Blaikie LLP, Attn: George Karayannides, Suite 2600, 200 Bay Street, Royal

14 │ Bank Plaza, South Tower, Toronto, Ontario M5J 2J4 in accordance with Schedule B

15 │ to this Letter of Request and not later than 5 court days prior to the date of

16 │ Ms. Brisbois' deposition.

17 │     (4)    You order Janine Brisbois to produce, at or immediately after the oral

18 │ examination, specific documents relevant to the subject matter of this case, the

19 │ existence of which becomes known during the course of the examination and which

20 │ are requested by counsel.

21 │     (5)    You cause a verbatim transcript of the testimony of the witness to be

22 │ taken and reduced to writing.  The deposition shall also be videotaped.

23 │     (6)    You order, pursuant to <u>Ontario Rule of Civil Procedure</u> 30.1, that the

24 │ oral and documentary evidence produced pursuant to your enforcement of this

25 │ Letter of Request shall not be used by anyone in any manner or proceeding other

26 │ than in this matter, <u>Bryant v. Mattel, Inc.</u>, Case No. 04-9049 SGL (RNBx)

27 │ (Consolidated with Case No. 04-9059 and Case No. 05-2727), pending in the United

28 │



EXHIBIT 23
PAGE 4/4C

1   States District Court for the Central District of California.  A Protective Order was
2   entered in this action on January 4, 2005 (Attachment A hereto).

3       This Court further requests the following as to MGA Entertainment Canada:

4       ·   (1)    You cause, by your proper and usual process, MGA Entertainment
5   Canada to produce a designee with knowledge of the topics set forth in Schedule E
6   to be summoned to appear before you or some competent office authorized by you,
7   on a date mutually agreed upon by the deponent and the parties or at a time and/or
8   place to be determined by you, to give testimony under oath by questions and
9   answers upon oral deposition, such deposition to continue day to day until
10  completion and conducted in accordance with the <u>Federal Rules of Civil Procedure</u>
11  or as permitted by you.  In the event that the Law of Canada does not permit the
12  swearing of an oath by a particular witness, the duly appointed officer shall make
13  inquiry of such witness to ensure that he/she understands the gravity of the
14  procedure and affirms that his/her statement will be true and correct in all respects.

15      (2)    You permit MGA Entertainment Canada's knowledgeable designee to
16  be examined under oath by counsel for all parties in this matter, allowing full
17  examination and cross-examination on the subject matter of this case, including the
18  topics delineated in Schedule E to this Letter of Request.

19      (3)    You order MGA Entertainment Canada to produce documents at the
20  offices of Heenan Blaikie LLP, Attn: George Karayannides, Suite 2600, 200 Bay
21  Street, Royal Bank Plaza, South Tower, Toronto, Ontario M5J 2J4 in accordance
22  with Schedule D to this Letter of Request and not later than 5 court days prior to the
23  date of MGA Entertainment Canada's person most knowledgeable deposition.

24      (4)    You order MGA Entertainment Canada to produce, at or immediately
25  after the oral examination, specific documents relevant to the subject matter of this
26  case, the existence of which becomes known during the course of the examination
27  and which are requested by counsel.

28

13

REQUEST FOR JUDICIAL ASSISTANCE

EXHIBIT 23
PAGE 447

1        (5)    You cause a verbatim transcript of the testimony of the witness to be

2    taken and reduced to writing. The deposition shall also be videotaped.

3        (6)    You order, pursuant to Ontario Rule of Civil Procedure 30.1, that the

4    oral and documentary evidence produced pursuant to your enforcement of this

5    Letter of Request shall not be used by anyone in any manner or proceeding other

6    than in this matter, Bryant v. Mattel, Inc., Case No. 04-9049 SGL (RNBx)

7    (Consolidated with Case No. 04-9059 and Case No. 05-2727), pending in the United

8    States District Court for the Central District of California. A Protective Order was

9    entered in this action on January 4, 2005 (Attachment 1 hereto).

10   **IV.   RECIPROCITY**

11       This Court expresses its sincere willingness to provide similar assistance to

12   the Ontario Superior Court of Justice if future circumstances should require.

13   **V.   CONCLUSION**

14       In the spirit of comity and reciprocity, this Court hereby requests international

15   judicial assistance in the form of this Letter of Request to compel: (1) Janine

16   Brisbois to produce the documents set forth in Schedule B; (2) Janine Brisbois to be

17   examined under oath on the topics set forth in Schedule C; (3) MGA Entertainment

18   Canada to produce the documents set forth in Schedule D; and (4) MGA

19   Entertainment Canada to produce a knowledgeable designee on the topics set forth

20   in Schedule E to be examined under oath.

21   DATED:     5 / 21   , 2009

22

23   By_____

24       THE HONORABLE STEPHEN G. LARSON
         United States District Judge

25       SHERRI R. CARTER, Clerk of the Court
         Terry Nafisi,

26

27   By_____
         Deputy Clerk_____

28

14

REQUEST FOR JUDICIAL ASSISTANCE

EXHIBIT 23
PAGE 448

## <u>SCHEDULE A [REVISED]</u>

### <u>NAMES AND ADDRESSES OF THE PARTIES</u>

### <u>AND THEIR REPRESENTATIVES</u>

| | |
|---|---|
| Skadden, Arps, Slate, Meagher & Flom LLP<br>    Thomas J. Nolan, Esq.<br>    Jason Russell, Esq.<br>300 South Grand Avenue, Suite 3400<br>Los Angeles, CA 90071<br>    tnolan@skadden.com<br>    jrussell@skadden.com | **Attorneys for _the MGA Parties_** |
| Glaser, Weil, Fink, Jacobs, & Shapiro, LLP<br>    Patricia L. Glaser, Esq.<br>10250 Constellation Blvd 19th Floor<br>Los Angeles, CA 90067<br>    pglaser@glaserweil.com | **Attorneys for _the MGA Parties_** |
| Mitchell, Silberberg, & Knupp, LLP<br>    Russell J. Frackman, Esq.<br>11377 W. Olympic Blvd.<br>Los Angeles, CA 90064<br>    rjf@msk.com | **Attorneys for _the MGA Parties_** |
| Overland Borenstein Scheper & Kim, LLP<br>    Mark E. Overland, Esq.<br>    Alexander H. Cote, Esq.<br>601 West Fifth Street, 12th Floor<br>Los Angeles, CA 90071<br>    moverland@obsklaw.com<br>    acote@obsklaw.com | **Attorneys for _Carlos Gustavo Machado Gomez_** |
| Peter H. Bonis Law Offices<br>    Peter Bonis<br>1990 N. California Blvd.<br>8th Floor<br>Walnut Creek, CA 94596<br>    peter@bonislaw.com | **Attorney for _Carter Bryant_** |

07975/2938972.1

15

REQUEST FOR JUDICIAL ASSISTANCE



EXHIBIT 23
PAGE 449

1          **SCHEDULE B**

2          For purpose of construing the below-listed Requested Documents, the

3     following definitions and instructions apply:

4     **I.    DEFINITIONS**

5          For purposes of these Requests, the following definitions apply:

6     A.    The terms "YOU" and "YOUR" shall mean Janine Brisbois, her

7     attorneys, accountants, agents, and all persons acting under her, or by her direction

8     or control, or on her behalf.

9     B.    "MGA" means MGA Entertainment, Inc. and any individual or entity

10    acting directly or indirectly by, through, under or on behalf of MGA

11    Entertainment, Inc., including but not limited to current or former directors, officers,

12    employees, agents, contractors, attorneys, accountants, or representatives of MGA

13    Entertainment, Inc. and any corporation, partnership, association, trust, parent,

14    subsidiary, division, affiliate, predecessor-in-interest and successor-in-interest, and

15    any other PERSON acting on its behalf.

16    C.    The term "MATTEL" means Mattel, Inc. and all current or former

17    directors, officers, employees, agents, contractors, attorneys, accountants,

18    representatives, subsidiaries, divisions, affiliates, predecessors-in-interest and

19    successors-in-interest, and any other PERSON acting on its behalf, pursuant to its

20    authority or subject to its control.

21    D.    "DOCUMENT" or "DOCUMENTS" means all "writings" and

22    "recordings" as those terms are defined in Rule 1001 of the <u>Federal Rules of</u>

23    <u>Evidence</u> and Rule 34 of the <u>Federal Rules of Civil Procedure</u> and shall include all

24    writings, including but not limited to handwriting, typewriting, printing, image,

25    photograph, photocopy, digital file of any kind, transmittal by (or as an attachment

26    to) electronic mail (including instant messages and text messages) or facsimile,

27    video and audio recordings, and every other means of recording upon any tangible

28    thing, any form of communication or representation, and any record thereby created,



EXHIBIT 23
PAGE 450

1   regardless of the manner in which the record has been stored, and all non-identical
2   copies of such DOCUMENTS, in the possession, custody, or control of YOU,
3   YOUR counsel, or any other PERSON acting on YOUR behalf.

4       E.      The term "COMMUNICATION," in the plural as well as the singular,
5   means any transmittal and/or receipt of information, whether such was oral or
6   written, and whether such was by chance, prearranged, formal or informal, and
7   specifically includes, but is not limited to, conversations in person, telephone
8   conversations, electronic mail (including instant messages and text messages),
9   voicemail, letters, memoranda, statements, media releases, magazine and newspaper
10  articles, and video and audio transmissions.

11      F.      "BRATZ PRODUCT" means any product, whether two-dimensional or
12  three-dimensional, and whether in tangible, digital, electronic or other form: (i) that
13  is or has ever been distributed, marketed or sold under the name "Bratz" or as part of
14  the "Bratz" line; (ii) that depicts, incorporates, embodies, consists of or REFERS
15  OR RELATES TO BRATZ; and/or (iii) that is or has ever been distributed,
16  marketed or sold in any packaging that includes the name "Bratz" or depicts,
17  incorporates, embodies, consists of or REFERS OR RELATES TO BRATZ.

18      G.      The term "PERSON," in the plural as well as the singular, means any
19  natural person, association, partnership, corporation, joint venture, government
20  entity, organization, trust, institution, proprietorship, or any other entity recognized
21  as having an existence under the laws in United States or any other nation.

22      H.      The terms "RELATE TO" and "RELATING TO" means any and all of
23  the following terms and their synonyms: refer to, discuss, constitute, evidence,
24  pertain to, mention, support, contradict, negate, bear on, touch on, contain, embody,
25  reflect, identify, state, deal with, concern, comment on, respond to, relevant to, or
26  describe.

27

28

07975/2938972.1                                        17
                                                            REQUEST FOR JUDICIAL ASSISTANCE

EXHIBIT 23
PAGE 451

## II. REQUESTS FOR DOCUMENTS AND THINGS

**REQUEST FOR PRODUCTION NO. 1:**

All COMMUNICATIONS between MGA, Isaac Larian and Ron Brawer, on the one hand, and Janine Brisbois, on the other, ("Brisbois") prior to September 27, 2005.

**REQUEST FOR PRODUCTION NO. 2:**

All DOCUMENTS RELATING TO COMMUNICATIONS between MGA, Isaac Larian and Ron Brawer, on the one hand, and Brisbois, on the other, prior to September 27, 2005, including but not limited to all calendar entries, phone logs, phone records and notes reflecting such COMMUNICATIONS.

**REQUEST FOR PRODUCTION NO. 3:**

All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO Brisbois' resignation from Mattel.

**REQUEST FOR PRODUCTION NO. 4:**

All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO compensation, money or any other item of value paid to Brisbois, whether directly or indirectly, by MGA between January 2005 and the present.

**REQUEST FOR PRODUCTION NO. 5:**

All DOCUMENTS received by MGA, directly or indirectly, from Brisbois RELATING TO any MATTEL product or plan.

**REQUEST FOR PRODUCTION NO. 6:**

All DOCUMENTS RELATING TO MGA's receipt, access, use, reproduction, copying, storage, transmission, transfer, disclosure, retention, destruction, deletion or use of any DOCUMENTS, data and/or information, that were prepared, made, created, generated, assembled or compiled by or for MATTEL and that MGA received, directly or indirectly from Brisbois.

07975/2938972.1

18

REQUEST FOR JUDICIAL ASSISTANCE



EXHIBIT 23
PAGE 452

1  **REQUEST FOR PRODUCTION NO. 7:**

2        A copy of each personnel file maintained or created by MGA

3  RELATING TO Brisbois, excluding any portions solely related to medical or health

4  care information, and excluding social security numbers, tax identification numbers,

5  dates of birth, indications of sexual orientation, bank account numbers and checking

6  account numbers.

7  **REQUEST FOR PRODUCTION NO. 8:**

8        All DOCUMENTS taken by Brisbois from Mattel Canada, Inc.,

9  including but not limited to the 45 Mattel documents contained on a USB or

10  "thumb" drive with the volume label "BACKPACK" from Mattel's Canada, Inc.'s

11  office.

12  **REQUEST FOR PRODUCTION NO. 9:**

13        All DOCUMENTS RELATING TO COMMUNICATIONS between

14  Brisbois, on the one hand, and Toys 'R Us or Wal-Mart on the other, or anyone

15  acting on behalf of Toys 'R Us or Wal-Mart, between September 27, 2005, and

16  January 1, 2007, including but not limited to her COMMUNICATIONS with Toys

17  'R Us or Wal-Mart about promotions of MGA products.

18  **REQUEST FOR PRODUCTION NO. 10:**

19        All DOCUMENTS, including but not limited to all

20  COMMUNICATIONS with any PERSON, created by Brisbois while employed by

21  MGA RELATED TO MGA's marketing of products that compete with Mattel's

22  products, recruiting or attempting to recruit Mattel's employees, or the theft of

23  Mattel trade secrets, confidential or proprietary information.

24

25

26

27

28



EXHIBIT 23
PAGE 453

1                              **SCHEDULE C**

2        SUBJECT MATTER ABOUT WHICH MS. BRISBOIS IS TO BE EXAMINED

3    1.    Theft of Mattel documents containing proprietary advertising, project, sales,

4          customer and strategy information by anyone, including Ms. Brisbois.

5    2.    Theft by Ms. Brisbois of approximately 45 Mattel documents contained on a

6          USB or "thumb" drive with the volume label "BACKPACK" from Mattel's

7          Canada office.

8    3.    Ms. Brisbois' communications with MGA, or anyone acting on MGA's behalf,

9          on or before September 27, 2005, including but not limited to

10         communications regarding Ms. Brisbois' resignation from Mattel;

11         compensation, money or anything of value paid by MGA to Ms. Brisbois.

12   4.    Ms. Brisbois' receipt, access, use, reproduction, copying, storage,

13         transmission, transfer, disclosure, retention, destruction, deletion or use of any

14         documents, data and/or information, that were prepared, made, created,

15         generated, assembled or compiled by or for MATTEL and that MGA

16         received, directly or indirectly from Brisbois.

17   5.    Ms. Brisbois' access, use, dissemination or disclosure of Mattel's trade secrets,

18         or otherwise confidential or proprietary information, while employed by

19         MGA, including but not limited to Mattel's information regarding advertising

20         strategy and in-store promotions at retailers.

21   6.    Ms. Brisbois' communications with MGA, including but not limited to Isaac

22         Larian or Ron Brawer, relating to her decision to join MGA and other matters

23         at issue in this Action.

24

25

26

27

28

07975/2938972.1

                                     20
                                                  REQUEST FOR JUDICIAL ASSISTANCE



EXHIBIT 23
PAGE 454

## SCHEDULE D

For purpose of construing the below-listed Requested Documents, the following definitions and instructions apply:

### I. DEFINITIONS

For purposes of these Requests, the following definitions apply:

I.    The terms "YOU" and "YOUR" shall mean MGA Entertainment Canada, its attorneys, accountants, agents, and all persons acting under its direction or control, or on its behalf.

J.    "MGA" means MGA Entertainment, Inc. and any individual or entity acting directly or indirectly by, through, under or on behalf of MGA Entertainment, Inc., including but not limited to current or former directors, officers, employees, agents, contractors, attorneys, accountants, or representatives of MGA Entertainment, Inc. and any corporation, partnership, association, trust, parent, subsidiary, division, affiliate, predecessor-in-interest and successor-in-interest, and any other PERSON acting on its behalf.

K.    The term "MATTEL" means Mattel, Inc. and all current or former directors, officers, employees, agents, contractors, attorneys, accountants, representatives, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control.

L.    "DOCUMENT" or "DOCUMENTS" means all "writings" and "recordings" as those terms are defined in Rule 1001 of the Federal Rules of Evidence and Rule 34 of the Federal Rules of Civil Procedure and shall include all writings, including but not limited to handwriting, typewriting, printing, image, photograph, photocopy, digital file of any kind, transmittal by (or as an attachment to) electronic mail (including instant messages and text messages) or facsimile, video and audio recordings, and every other means of recording upon any tangible thing, any form of communication or representation, and any record thereby created,

07975/2938972.1

21



EXHIBIT 23
PAGE 455

1  regardless of the manner in which the record has been stored, and all non-identical
2  copies of such DOCUMENTS, in the possession, custody, or control of YOU,
3  YOUR counsel, or any other PERSON acting on YOUR behalf.

4      M.    The term "COMMUNICATION," in the plural as well as the singular,
5  means any transmittal and/or receipt of information, whether such was oral or
6  written, and whether such was by chance, prearranged, formal or informal, and
7  specifically includes, but is not limited to, conversations in person, telephone
8  conversations, electronic mail (including instant messages and text messages),
9  voicemail, letters, memoranda, statements, media releases, magazine and newspaper
10  articles, and video and audio transmissions.

11      N.    "BRATZ PRODUCT" means any product, whether two-dimensional or
12  three-dimensional, and whether in tangible, digital, electronic or other form: (i) that
13  is or has ever been distributed, marketed or sold under the name "Bratz" or as part of
14  the "Bratz" line; (ii) that depicts, incorporates, embodies, consists of or REFERS
15  OR RELATES TO BRATZ; and/or (iii) that is or has ever been distributed,
16  marketed or sold in any packaging that includes the name "Bratz" or depicts,
17  incorporates, embodies, consists of or REFERS OR RELATES TO BRATZ.

18      O.    The term "PERSON," in the plural as well as the singular, means any
19  natural person, association, partnership, corporation, joint venture, government
20  entity, organization, trust, institution, proprietorship, or any other entity recognized
21  as having an existence under the laws in United States or any other nation.

22      P.    The terms "RELATE TO" and "RELATING TO" means any and all of
23  the following terms and their synonyms: refer to, discuss, constitute, evidence,
24  pertain to, mention, support, contradict, negate, bear on, touch on, contain, embody,
25  reflect, identify, state, deal with, concern, comment on, respond to, relevant to, or
26  describe.

27
28

EXHIBIT 23
PAGE 456

## II. REQUESTS FOR DOCUMENTS AND THINGS

**REQUEST FOR PRODUCTION NO. 1:**

All COMMUNICATIONS between YOU and Janine Brisbois ("Brisbois") prior to September 27, 2005.

**REQUEST FOR PRODUCTION NO. 2:**

All DOCUMENTS RELATING TO COMMUNICATIONS between YOU and Brisbois prior to September 27, 2005, including but not limited to all calendar entries, phone logs, phone records and notes reflecting such COMMUNICATIONS.

**REQUEST FOR PRODUCTION NO. 3:**

All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO Brisbois' resignation from Mattel.

**REQUEST FOR PRODUCTION NO. 4:**

All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO compensation, money or any other item of value paid to Brisbois, whether directly or indirectly, by MGA between January 2005 and the present.

**REQUEST FOR PRODUCTION NO. 5:**

All DOCUMENTS received by YOU, directly or indirectly, from Brisbois RELATING TO any MATTEL product or plan.

**REQUEST FOR PRODUCTION NO. 6:**

All DOCUMENTS RELATING TO YOUR receipt, access, use, reproduction, copying, storage, transmission, transfer, disclosure, retention, destruction, deletion or use of any DOCUMENTS, data and/or information, that were prepared, made, created, generated, assembled or compiled by or for MATTEL and that MGA received, directly or indirectly from Brisbois.


EXHIBIT 23
PAGE 457

**REQUEST FOR PRODUCTION NO. 7:**

A copy of each personnel file maintained or created by YOU RELATING TO Brisbois, excluding any portions solely related to medical or health care information, and excluding social security numbers, tax identification numbers, dates of birth, indications of sexual orientation, bank account numbers and checking account numbers.

**REQUEST FOR PRODUCTION NO. 8:**

All DOCUMENTS taken by Brisbois from Mattel Canada, Inc., including but not limited to the 45 Mattel documents contained on a USB or "thumb" drive with the volume label "BACKPACK" from Mattel's Canada, Inc.'s office.

**REQUEST FOR PRODUCTION NO. 9:**

All DOCUMENTS RELATING TO COMMUNICATIONS between YOU, on the one hand, and Toys 'R Us or Wal-Mart on the other, or anyone acting on behalf of Toys 'R Us or Wal-Mart, between September 27, 2005 and January 1, 2007, regarding Ms. Brisbois or Ms. Brisbois' responsibility for the Toys 'R Us and Wal-Mart accounts with MGA, and COMMUNICATIONS with Toys 'R Us or Wal-Mart about promotions or advertising for MGA products.

**REQUEST FOR PRODUCTION NO. 10:**

All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, created by Brisbois while employed by MGA RELATED TO MGA's marketing of products that compete with Mattel's products, recruitment or attempted recruitment of Mattel's employees, or the theft of Mattel trade secrets or confidential or proprietary information.



EXHIBIT 23
PAGE 458

**SCHEDULE E**

SUBJECT MATTER ABOUT WHICH PERSON MOST
KNOWLEDGEABLE IS TO BE EXAMINED

1. Knowledge of MGA Entertainment Canada's methods and procedures
regarding the access, use, reproduction, copying, storage, transmission,
transfer, disclosure, retention, destruction, deletion or use of any documents,
data and/or information, that were prepared, made, created, generated,
assembled or compiled by or for MATTEL and that MGA received, directly
or indirectly from Janine Brisbois.

2. Knowledge of MGA Entertainment Canada's methods and procedures
regarding the access, use, reproduction, copying, storage, transmission,
transfer, disclosure, retention, destruction, deletion or use of any documents,
data and/or information regarding MGA Entertainment Canada's advertising,
project, sales, customer and strategy information related to any Bratz Product,
regardless of whether such information was received directly or indirectly
from Janine Brisbois.

07975/2938972.1

25

REQUEST FOR JUDICIAL ASSISTANCE



EXHIBIT 23
PAGE 459

# EXHIBIT 24

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 25

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 26

1  Robert C. O'Brien (SBN 154372)
   ARENT FOX LLP
2  555 West Fifth Street, 48th Floor
   Los Angeles, CA 90013-1065
3  Telephone: 213.629.7400
   Facsimile: 213.629.7401
4  obrien.robert@arentfox.com

5  Discovery Master

6

7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                    EASTERN DIVISION

11

12  CARTER BRYANT, an individual,        Case No. CV 04-09049 SGL (RNBx)

13              Plaintiff,               **Consolidated with**
                                         **Case No. CV 04-09059**
14        v.                             **Case No. CV 05-2727**

15  MATTEL, INC., a Delaware             **PHASE II DISCOVERY MATTER**
    corporation,
16                                       **ORDER NO. 3, REGARDING:**
              Defendant.
17                                          **(1)  MOTION OF MGA**
                                            **ENTERNTAINMENT, INC.,**
18                                          **ISAAC LARIAN AND MGA**
                                            **ENTERTAINMENT (HK)**
19                                          **LIMITED TO QUASH**
                                            **NON-PARTY SUBPOENAS; and**
20
                                            **(2)  MOTION OF MATTEL, INC.**
21                                          **TO COMPEL PRODUCTION OF**
                                            **DOCUMENTS RESPONSIVE TO**
22                                          **THE SAME NON-PARTY**
                                            **SUBPOENAS**
23

24  ┌─────────────────────────────────┐
25  │ CONSOLIDATED WITH               │
    │ MATTEL, INC. v. BRYANT and      │
26  │ MGZ ENTERTAINMENT, INC. v.      │
    │ MATTEL, INC.                    │
27  └─────────────────────────────────┘

28  ─────────────────────────────────────────────

ARENT FOX LLP                    1                    ORDER NO. 3
ATTORNEYS AT LAW                          [Case No. CV 04-09049 SGL (RNBx)]
LOS ANGELES

EXHIBIT 20
PAGE 506

1    This Order sets forth the Discovery Master's ruling on: (1) the motion of

2    MGA Entertainment, Inc., Isaac Larian, and MGA Entertainment (HK) Limited

3    (collectively "MGA") to quash certain non-party subpoenas [Docket Number 4779]

4    and (2) the corresponding motion of Mattel, Inc. ("Mattel") to compel production of

5    documents responsive to the same non-party subpoenas [Docket Numbers 4769 and

6    4788] (collectively, the "Motions").

7    The Motions came on regularly for hearing before the Discovery Master on

8    March 4, 2009. All interested parties were represented by counsel and afforded the

9    opportunity to present oral argument on the Motions. The Discovery Master,

10    having considered the papers filed in support of and in opposition to the Motions,

11    and having heard oral argument thereon, rules as set forth below.

12    **I.    INTRODUCTION**

13

14    **A.    The Court's February 11, 2009 Ruling**

15    On February 11, 2009, the Court heard oral argument on various motions

16    filed by the parties. During the proceedings, counsel took the opportunity to orally

17    request clarification by the Court regarding whether the parties' respective motions

18    relating to the subpoenas served by Mattel on various entities allegedly related to

19    MGA (the "Subpoenas") are in any way stayed or precluded by any of the Court's

20    prior orders.

21    In response, the Court stated: "I will instruct the Discovery Master this

22    afternoon, in no uncertain terms, that there is no stay on any discovery related to

23    this case at all." (Reporter's Transcript of Proceedings, February 11, 2009 ["Tr."],

24    99:8 – 10). Counsel for MGA then referred to the fact that the Court had

25    previously declined to allow Mattel to serve certain discovery accompanying

26    Mattel's motion for a receiver and characterized the third-party subpoenas as an

27    attempt to circumvent the Court's ruling. (Tr., 101:12 – 17). In response, the Court

28    stated:

EXHIBIT 24
PAGE 507

1

2    Then the question becomes – and this is a question for the
     Discovery Master, not for this Court – whether or not the
3    discovery is related to Phase 2. If it is, it is. I'm not going to
4    pass any judgment whatsoever. I'm going to leave that
     completely up to the Discovery Master. ... The question for the
5    [D]iscovery [M]aster will be whether or not the disputed
6    discovery request is related or relevant to the trial that has now
     been scheduled for March [2010] or not.
7
(Tr., 101:18 – 22; 103:1 – 3).
8
9        The Discovery Master understands the Court's ruling as indicating that, in

10   deciding the motions relating to the Subpoenas, the Discovery Master should

11   consider whether there is a nexus between the information sought by the

12   Subpoenas, on the one hand, and the Phase 2 claims and counterclaims set for trial

13   in March 2010, on the other hand. If the information sought by the Subpoenas is, to

14   use the Court's words, "related to Phase 2" or "related or relevant to the [Phase 2]

15   trial," then that information could potentially be the subject of appropriate

16   discovery requests by Mattel.[1]

17       **B.    Information Sought By The Subpoenas**

18       The information sought by Mattel's Subpoenas falls into two broad

19   categories. First, Mattel seeks documents from third parties Omni 808 Investors,

20   LLC, OmniNet Capital, LLC and Vision Capital, LLC (collectively, the "Financing

21   Entities") involving, among other things, their internal ownership and operations

22   and their role in providing financing to MGA during the summer of 2008 (the

23   ───────────────
     [1] Even prior to the Court's February 11, 2009 ruling, Mattel acknowledged that it had the burden of demonstrating a
24   nexus between the information sought by the Subpoenas and the Phase 2 issues, as demonstrated by Mattel's
     inclusion of a section in its Motion to Compel summarizing the claims to be adjudicated in Phase 2, (Motion, pp. 5 –
25   8), and a section arguing that the information sought by the third-party subpoenas is relevant to Mattel's Phase 2
     claims, (Id., pp. 18 - 24 and 24.– 25). However, Mattel also argued that the information sought might be appropriate
     regardless of any nexus to Phase 2. (See id., pp. 14 – 17 [arguing that MGA's prior statements regarding its finances
26   in Phase 1 "opened the door" to discovery on this issue] and id., p. 23 [arguing that the information sought is relevant
     to MGA's credibility]). Based on the Court's subsequent ruling on February 11, 2009, as well as the Discovery
27   Master's own independent evaluation of those arguments, the Discovery Master concludes, as discussed more fully
     below, that these arguments are insufficient, standing alone, to justify the non-party discovery Mattel seeks. Rather,
28   Mattel must demonstrate some link between the information sought and the issues to be adjudicated by the Court at
     the Phase 2 trial.


EXHIBIT 2 6
PAGE 508

1   "Financing Discovery"). Based on the information presented at the February 11,

2   2009 hearing and in connection with the pending motions, it does not appear that

3   either MGA Entertainment, Inc., MGA Entertainment (HK) Limited, or Larian have

4   an ownership interest in the Financing Entities.[2] (See Tr., 70:22 – 72:5; 78:9 -25).

5       Second, Mattel seeks documents from third parties IGWT Group, LLC and

6   IGWT 826 Investments, LLC (collectively, the "Transferee Entities") regarding

7   MGA's sale to them of infringing MGA inventory, namely Bratz dolls (the

8   "Transferee Discovery"). MGA does not dispute that the Transferee Entities are

9   owned and/or controlled by Larian. (See, e.g., MGA's Reply in support of its

10  Motion to Quash, at p. 5, fn. 6, where MGA refers to the purchase of Bratz

11  inventory by the Transferee Entities as "Larian's purchase of those . . .

12  products . . . .").[3]

13  **II.    MGA's Motion To Quash**

14      Because it could dispose of all outstanding discovery issues related to the

15  Subpoenas, the Discovery Master first addresses MGA's Motion to Quash filed on

16  February 3, 2009.

17      **A.    Legal Standard**

18      As the party moving to quash the Subpoenas, MGA bears the burden of

19  satisfying the standard set forth in Rule 45(b), which provides that the court may

20  "quash or modify the subpoena if it is unreasonable and oppressive." (Fed. R. Civ.

21  P. 45(b); see also Wiwa v. Royal Dutch Petroleum Co., 392 F.3d 812, 818 (5th Cir.

22  2004) ["The moving party has the burden of proof to demonstrate that compliance

23

24  ---

[2] Of course, this is one of the facts Mattel seeks to investigate through the Subpoenas to the Financing Entities. The

25  Discovery Master's ruling denying Mattel's Motion to Compel the Financing Parties to comply with the Subpoenas does not address – and should not be construed as deciding – whether Mattel could, upon establishing a nexus to a

26  legitimate Phase 2 issue, seek to obtain this information from MGA.

[3] Moreover, MGA does not dispute the assertions made by Mattel in its Motion to Compel at pp. 11– 12, including

27  that Larian created IGWT Group during the Phase 1 trial and registered its place of business as his home address, and that Larian created IGWT 826 Investments the day after the Phase 1 trial ended and registered it at the home address

28  of his sister.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 4 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 26
PAGE 509

1   with the subpoena would be unreasonable and oppressive" (internal quotations

2   omitted)]; *Linder v. Department of Defense*, 133 F.3d 17, 24 (D.C. Cir. 1998) [The

3   burden of proving that a subpoena is oppressive is on the party moving to quash];

4   *Washington v. Thurgood Marshall Academy*, 230 F.R.D. 18, 21 (D.D.C. 2005) [the

5   burden is on the movant to establish that a subpoena duces tecum should be

6   quashed]). "The burden is particularly heavy to support a 'motion to quash as

7   contrasted to some more limited protection.'" (*Westinghouse Electric Corp. v. City

8   of Burlington*, 351 F.2d 762, 766 (D.C.Cir.1965) [denying a motion to quash

9   supported by two affidavits]).

10      **B.      Arguments Made By MGA In Support Of Its Motion To Quash**

11          The sole argument set forth in MGA's Motion to Quash is that the Court's

12   January 7, 2009 order appointing a forensic auditor bars Mattel from seeking the

13   information sought by the Subpoenas. (*See* MGA's Motion to Quash, pp. 1 - 6).

14   But that argument fails for the reasons set forth above. The Court made it clear at

15   the hearing on February 11, 2009 that:

16          There is no stay on discovery. Period. . . . . [The forensic auditor
17          appointed by the Court] is acting at the Court's discretion to
            inform the Court of information. . . . That's an entirely separate
18          matter. And I have not stayed any discovery and there should be
19          no reliance on that. If that was misunderstood, it's clarified now.

20   (Tr., 97:15, 98:8 - 9, and 98:13 - 15).

21          Recognizing that its only argument has been rejected by the Court, MGA

22   argues for the first time in its Reply that its Motion to Quash should be granted

23   because the Subpoenas are not relevant to any of Mattel's Phase 2 claims. (*See*

24   MGA's Reply Brief in Support of the Motion to Quash, pp. 1 and 5 - 12).

25   However, MGA did not make this argument in its opening brief. It instead declared

26   in its moving papers that whether the Subpoenas are related to any "Phase 2 issues

27   is beside the point." (*Id.*, p. 5). Because MGA did not address the relevance of the

28   subject discovery until the filing of its Reply, the Discovery Master declines to

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 5 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 2*0*
PAGE *570*

1   consider the argument in connection with the Motion to Quash.

2          The Discovery Master, like the Court,[4] disfavors the insertion of new

3   arguments at the reply stage that could have been raised in the moving papers.  A

4   party filing a motion is required to raise all of its arguments in its opening brief to

5   prevent "sandbagging" of the non-moving party and to provide opposing counsel

6   the chance to respond.  This rule is routinely adhered to by courts in the Ninth

7   Circuit.  (*See, e.g., United States v. Boyce*, 148 F.Supp .2d 1069, 1085

8   (S.D.Cal.2001); *Leick v. Hartford Life and Acc. Ins. Co.,* 2007 WL 1847635 at *1,

9   n. 1 (E.D.Cal. 2007); *Stewart v. Wachowski,* 2004 WL 2980783, at *11 (C.D.Cal.

10  Sept. 28, 2004); *Hamilton v. Willms,* 2007 WL 2558615, *11 (E.D.Cal.2007); *see*

11  *also United States v. Cox*, 7 F.3d 1458, 1463 (9th Cir.1993); *United States v.*

12  *Wright,* 215 F.3d 1020, 1030 n. 3 (9th Cir.2000)).

13         Furthermore, MGA will not suffer any prejudice from this decision because

14  the issue it raised in its Reply (i.e., are the Subpoenas seeking information related to

15  any Phase 2 claims) has been fully briefed by the parties and is ruled upon by the

16  Discovery Master in connection with Mattel's Motion to Compel.[5]  (*See* Section III

17  below).

18         Accordingly, MGA's Motion to Quash is **DENIED.**

19  //

20  //

21  //

22  //

23

24  [4] In *Bryant v. Mattel, Inc.*, 573 F.Supp.2d 1254, 1273 n.7 (C.D. Cal. 2007), the Court noted that it "ordinarily would
    not consider" arguments made for the first time on reply but did so only "because [undertaking the analysis did] not
25  change [its] ultimate conclusion."

26  [5] That the arguments raised in the Reply are the same as those in MGA's Opposition to the Motion to Compel is
    conceded by Mattel. Indeed, Mattel admitted in its Request to Consolidate MGA's Motion to Quash and Motion to
27  Compel (which was denied as untimely by the Discovery Master at the hearing on March 4, 2009) that the "MGA
    Parties' Opposition to Mattel's Motion to Compel Production of Documents Responsive to Third Party Subpoenas
    .. makes the same arguments as the MGA Parties' Reply in support of their Motion to Quash."   (Mattel's Request to
28  Consolidate MGA's Motion to Quash and Mattel's Motion to Compel, p. 2).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

ORDER NO. 3
                                                              [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 26
PAGE 571

1    **III.    Mattel's Motions To Compel**

2           **A.    The Purported Procedural Defects Barring Mattel's Motions To**

3                  **Compel**

4           MGA, the Financing Entities, and the Transferee Entities all argue that that

5    Mattel's Motion to Compel should be denied on several different procedural

6    grounds.

7                  **1.    The Court's January 7, 2009 Order**

8           As an initial matter, the Transferee Entities and the Financing Entities repeat

9    the argument made by MGA in its Motion to Quash that the Court's January 7,

10   2009 Order appointing a forensic auditor barred Mattel from seeking the discovery

11   sought by the Subpoenas.  (Financing Entities' Opposition to Mattel's Motion to

12   Compel at p. 3; Transferee Entities' Opposition to Mattel's Motion to Compel at

13   pp. 5 - 7).  But that argument fares no better here than it did with respect to MGA's

14   Motion to Quash and is rejected for the reasons discussed in Section II above.

15                 **2.    Local Rule 37**

16          The Financing Entities and the Transferee Entities also argue that Mattel's

17   Motion to Compel should be denied because Mattel failed to comply with Local

18   Rule 37 by, among other things, failing to meet and confer and failing to file a joint

19   stipulation.  (Financing Entities' Opposition to Mattel's Motion to Compel, pp. 1

20   and 7 - 10; Transferee Entities' Opposition to Mattel's Motion to Compel, p. 2

21   [referencing Local Rule 37 in passing]).  However, Local Rule 37 (as distinguished

22   from Federal Rule 37, which is discussed in subsection 7a, below) does not apply to

23   discovery disputes in this case.  Rather, the applicable procedure is the one adopted

24   by the Court in its order appointing a discovery master dated December 6, 2006

25   ("Discovery Master Order").[6]  Because the Discovery Master Order provides that

26

27   ───────────────
     [6] The Discovery Master Order is incorporated by reference into the Court's January 6, 2009 Order appointing a
     discovery master for Phase 2 of this litigation.  (*See* Court's Order dated January 6, 2009, p. 2 ["The Discovery
28   Master will serve under the terms and conditions of the Stipulation and Order dated December 6, 2006"]).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

                                          - 7 -                    ORDER NO. 3
                                                        [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT  20
PAGE  512

1  "all third parties subject to discovery requests . . . in this litigation shall be bound

2  by the terms of this Stipulation and Order," (Discovery Master Order, p. 6), that

3  order applies to the Financing Entities as well as the Transferee Entities, and its

4  procedures replace those set forth in Local Rule 37. (*Id.*, p. 4).

5               **3.    Local Rule 11-6 And Paragraph 4(b) Of The Court's**

6                      **Standing Order**

7         The Financing Entities and MGA further argue that Mattel's Motion to

8  Compel should be denied because it exceeds the page limitations set forth in Local

9  Rule 11-6 and Paragraph 4(b) of the Court's Standing Order. (*See* Financing

10 Entities' Opposition to Mattel's Motion to Compel, p. 9; MGA's Opposition to

11 Mattel's Motion to Compel, pp. 18 - 19). Each of these contentions is unavailing.

12 The Discovery Master Order (not the Local Rules or the Court's Standing Order)

13 governs discovery disputes in this case, and it does not impose any page limit on

14 such motions.[7] In fact, the Discovery Master Order dispenses with the formatting

15 requirements of the Local Rules in certain ways, such as allowing letter briefs, and

16 even permits the parties to agree to alternative procedures, including, presumably,

17 filing briefs that are more than 25 pages in length. (*See* Discovery Master Order, p.

18 4). Thus, while the Discovery Master encourages the parties to be as efficient as

19 possible in their briefing, he recognizes that briefs in excess of 25 pages are either

20 directly permitted under the Discovery Master Order (since no page limitation was

21 imposed by the Court) or implicitly allowed (since the parties may agree to

22 alternate procedures). He further recognizes that the complex nature of this case

23 may periodically necessitate the filing of briefs that exceed 25 pages.[8] For all of

24

25  [7] Even assuming the 25 page limitation for briefs did apply, Mattel had the option of filing separate motions to
26  compel for each of the subpoenas at issue and could have easily extended the page limitation well beyond the 30 pages it filed in connection with its combined motion that addressed multiple subpoenas propounded on the Transferee Entities and the Financing Entities.

27  [8] In fact, the parties to this lawsuit have filed multiple discovery motions in this case that contained more than 25 pages. (*See* Supplemental Declaration of Jon D. Corey in Support of Mattel, Inc.'s Reply in Response to The MGA
28  Parties' Opposition to Motion to Compel, ¶ 7).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 8 -

EXHIBIT 20
PAGE 5/3

1   these reasons, filings in excess of 25 pages are permitted.[9]

2           **4.      Local Rule 6-1**

3           The Financing Entities argue in passing that Mattel's motion to compel

4   should be denied because it violates Local Rule 6-1. (Financing Entities'

5   Opposition to Mattel's Motion to Compel, p. 6).   However, the Discovery Master

6   Order adopts a completely different set of deadlines than the Local Rules for the

7   filing of motions, oppositions and replies, and a different schedule for noticing

8   hearing dates. (Discovery Master Order, p. 4). Therefore, Local Rule 6-1 has no

9   applicability here.

10          **5.      Failure To Name MGA In The Motion To Compel**

11          MGA next argues that Mattel's motion to compel is procedurally improper

12  because MGA was not named in the Motion to Compel and Mattel should not be

13  allowed to respond to MGA's objections.   (MGA's Opposition to Mattel's Motion

14  to Compel, p. 18).  But MGA has cited no legal authority, and the Discovery

15  Master has found none, standing for the proposition that a party must name in its

16  motion to compel all parties who have objected to an underlying subpoena even if

17  they are not actually the target of the subpoena.  In fact, the contention that Mattel's

18  Motion to Compel should have been brought against MGA makes no sense given

19  that it could not possibly comply with any order compelling a response to the

20  Subpoenas.

21          **6.      Mattel's Separate Statement**

22          MGA also contends that Mattel's Motion to Compel should be denied

23  because its' separate statement "is another classic example of . . . inefficiency."

24  (*Id.*, p. 19).  Once again, nothing in the Discovery Master Order prevents a party

25  from filing a separate statement that first identifies the request in dispute and then

26

27  _____

28  [9] In the event the length of briefs ever becomes excessive, the Discovery Master will issue an order setting a specific
    page limitation.

EXHIBIT 2 C
PAGE 514

1    sets forth the various contentions of the parties, even if the information regarding

2    the various requests happens to be repetitive. Regardless, MGA has not cited any

3    legal authority in support of its position and the Discovery Master finds no reason

4    to dispose of Mattel's Motion to Compel merely because it filed a separate

5    statement that contains duplicative arguments.[10]

6              **7.    Meeting And Conferring**

7         As their final procedural argument in opposition to the Motion to Compel,

8    the Transferee Entities and the Financing Entities assert that the motion should be

9    denied because Mattel failed to adequately meet and confer prior to filing the

10   motion. (Financing Entities' Opposition to Mattel's Motion to Compel, pp. 7 - 8;

11   Transferee Entities' Opposition to Mattel's Motion to Compel, pp. 2 - 5).

12              **a.    Applicable Procedure**

13        Prior to filing its motion to compel, Mattel had an obligation to comply with

14   both the Federal Rules of Civil Procedure and the Discovery Master Order. Federal

15   Rule of Civil Procedure 37(a) expressly requires that a party filing a motion to

16   compel discovery first meet and confer in "good faith." (Fed. R. Civ. Proc. 37(a)).

17   Similarly, the Discovery Master Order states that unless an "alternative procedure"

18   is agreed upon or otherwise ordered by the Discovery Master, the

19          moving party shall first identify each dispute, state the relief
           sought, and identify the authority supporting the requested relief
20         in a meet and confer letter that shall be served on all parties by
           facsimile or electronic mail. The parties shall have five court
21         days from the date of service of that letter to conduct an in-person
           conference to attempt to resolve the dispute. If the dispute has
22         not been resolved within five court days after such service, the
           moving party may seek relief from the Discovery Master by
23         formal motion or letter brief . . .

24   (Discovery Master Order, p. 4).

25   //

26

27   ───────────────────────
     [10] The Discovery Master notes that where there are numerous discovery requests in dispute he would prefer for a
28   separate statement to be submitted by the moving party.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

ORDER NO. 3
                                        [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___2_6___
PAGE ___5/5___



1
2

      **b.**    **Mattel's Meet And Confer Regarding The Financing Entities**

3      In challenging Mattel's meet and confer effort, the Financing Entities first

4  claim that Mattel violated the Discovery Master Order because no "in-person

5  meeting occurred." (Financing Entities' Opposition to Mattel's Motion to Compel,

6  p. 8). But that argument is without merit, since Mattel and the Financing Entities

7  agreed to an alternative procedure that disposed of the in-person meet and confer

8  requirement.[11] Indeed, MGA's counsel sent counsel for Mattel, counsel for the

9  Transferee Entities and counsel for the *Financing Entities* a letter on January 23,

10  2009 memorializing the parties' agreement and establishing a schedule whereby the

11  parties would "meet and confer on January 29 and 30 . . ." (Mattel's Reply in

12  Support of its Motion to Compel filed on February 13, 2009, pp. 9 - 10;

13  Supplemental Declaration of Jon D. Corey in Support of Mattel's Reply to the

14  Motion to Compel filed on February 13, 2009, ¶ 4 and Ex. 2). That the Financing

15  Entities' counsel received this letter and acted in accordance with its terms is

16  evidenced by, among other things, the fact that they served objections to the

17  Subpoenas on January 28, 2009 (which was the deadline specified in the January 23

18  letter) and started meeting and conferring with Mattel's counsel telephonically on

19  January 30. (Financing Entities' Opposition to Mattel's Motion to Compel, pp. 3

20  and 4). Accordingly, Mattel did not have any obligation to meet with the Financing

21  Entities in person since the parties had agreed to waive that obligation.

22      Nevertheless, Mattel still had an obligation to meet and confer with the

23  Financing Entities in good faith. Good faith cannot be shown merely through

24  perfunctory efforts; rather Federal Rule of Civil Procedure 37 mandates a genuine

25  attempt to resolve the discovery dispute through non-judicial means. (Fed. R. Civ.

26
27
28

---

[11] To promote efficiency and minimize the necessity for counsel to travel between their respective offices, the Discovery Master shall deem Paragraph 5 of the Discovery Master Order (mandating that the parties have an in person conference to attempt to resolve discovery disputes) to be sufficiently satisfied if the parties and non-parties involved in a discovery dispute meet and confer telephonically or by video conference. However, the Discovery Master emphasizes that this accommodation in no way lessens the parties' obligation to meet and confer in good faith.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 26
PAGE 516

1    Proc. 37(a)(1)).

2           Because the evidence and declarations submitted by Mattel and the Financing

3    Entities are in conflict regarding what transpired during their respective meet and

4    confer communications, (*Cf.* Financing Entities' Opposition to Mattel's Motion to

5    Compel, pp. 3 – 5; Mattel's Reply Brief in Support of its Motion to Compel filed on

6    February 13, 2009, pp. 9-10), the Discovery Master gives Mattel the benefit of the

7    doubt and concludes that it adequately met and conferred with respect to Omni 808

8    Investors, LLC and Vision Capital, LLC.

9           By contrast, Mattel arguably did not even begin the meet and confer process

10   with OmniNet Capital, LLC prior to filing its motion to compel, because counsel

11   for the Financing Entities informed Mattel that they did not receive that Subpoena

12   until the afternoon of February 2, 2009 and filed objections to the Subpoena on that

13   date. (Financing Entities' Opposition to Mattel's Motion to Compel at p. 5). No

14   "good faith" meeting could therefore have taken place.

15          Although the meet and confer with respect to OmniNet Capital, LLC was

16   inadequate, the Discovery Master will nonetheless address the merits of Mattel's

17   Motion to Compel in all respects, including concerning the Subpoena served on

18   OmniNet Capital, LLC. The Discovery Master does so for purposes of efficiency

19   (i.e., the issues to be decided regarding the subpoena served on OmniNet Capital,

20   LLC are essentially identical to those that must be addressed in connection with the

21   subpoenas served on Omni 808 Investors, LLC and Vision Capital, LLC) and

22   because addressing the merits of the motion does not alter the outcome.[12]

23                         c.      **Mattel's Efforts To Meet And Confer Regarding The**

24                                 **Transferee Entities**

25          Like the Financing Entities, the Transferee Entities contend that Mattel's

26   motion to compel should be denied because it did not meet and confer in good faith.

27

28   [12] As noted above, the parties are admonished to abide by the provisions of the Discovery Master Order requiring a
     good faith attempt to meet and confer regarding discovery disputes prior to the filing of any discovery motion.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES                                          - 12 -                        ORDER NO. 3
                                                                         [Case No. CV 04-09049 SGL (RNBx)]


EXHIBIT 26
PAGE 517

1    (Transferee Entities' Opposition to Mattel's Motion to Compel, pp. 2 - 5). Yet, the

2    Transferee Entities concede that their counsel engaged in multiple meet and confer

3    teleconferences.  (*Id.* at pp. 3 - 4).  Several emails and letters were also exchanged

4    between the parties as part of the meet and confer process.  (*Id.*).  In light of these

5    interactions, the Discovery Master again gives Mattel the benefit of the doubt in

6    favor of resolving the issues on the merits and concludes that it adequately met and

7    conferred with the Transferee Entities.

8         **B.     Legal Standard Governing Enforcement Of The Subpoenas**

9         Federal Rule of Civil Procedure 26(b)(1) provides for discovery in civil

10   actions of "any matter, not privileged, which is relevant to the subject matter

11   involved . . .. The information sought need not be admissible at the trial if the

12   information sought appears reasonably calculated to lead to the discovery of

13   admissible evidence." Rule 26(b) is liberally interpreted to permit wide-ranging

14   discovery of all information reasonably calculated to lead to discovery

15   of admissible evidence; but the discoverable information need not be admissible at

16   the trial. (*Jones v. Commander, Kansas Army Ammunitions Plant*, 147 F.R.D. 248,

17   250 (D.Kan.1993)).

18        The broad scope of discovery described in subsection (b)(1) is tempered by

19   provisions protecting the responding party from undue burden.  Rule 26(b)(2)

20   provides that the frequency or extent of discovery otherwise allowed by the Rules

21   must be limited if the court determines that "(i) the discovery sought is

22   unreasonably cumulative or duplicative, or is obtainable from some other source

23   that is more convenient, less burdensome, or less expensive; (ii) the party seeking

24   discovery has had ample opportunity by discovery in the action to obtain the

25   information sought; or (iii) the burden or expense of the proposed discovery

26   outweighs its likely benefit, taking into account the needs of the case, the amount in

27   controversy, the parties' resources, the importance of the issues at stake in the

28   litigation, and the importance of the proposed discovery in resolving the issues."

EXHIBIT 2 C
PAGE 518

1    Moreover, the Federal Rules distinguish between discovery from non-parties
2    to a lawsuit (governed under Rule 45) and discovery from parties (governed
3    generally by Rule 26), based in part on the recognition that the former is inherently
4    more burdensome and less convenient than the latter. (*See, e.g., Solarex v. Arco
5    Solar, Inc.*, 121 F.R.D. 163, 179 (E.D.N.Y. 1988) [The status of a non-party is
6    significant when determining whether compliance with a discovery demand would
7    constitute an undue burden]; *Katz v. Batvia Marine and Sporting Supplies, Inc.*, 984
8    F.2d 422, 424 (Fed. Cir. 1993) [The fact that discovery is sought from a non-party
9    is one factor that the Court may weigh in determining whether the discovery
10   requested is necessary, relevant, or burdensome]. Courts applying Rules 26 and 45
11   have interpreted these rules to afford non-parties special heightened protection
12   against burdensome discovery. (*See, e.g., Exxon Shipping Co. v. U.S. Dept of
13   Interior*, 34 F.3d 774, 779 (9th Cir. 1994)).

14   Accordingly, requests for documents that pertain to a party and that can be
15   more easily and inexpensively obtained from that party also impose an undue
16   burden. (*Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 638 (C.D. Cal. 2005)).
17   Further, if the documents sought are neither relevant nor calculated to lead to the
18   discovery of admissible evidence, "then any burden whatsoever imposed upon the
19   non-party would be by definition undue." (*Compaq Computer Corp. v. Packard
20   Bell Electronics, Inc.*, 163 F.R.D. 329, 335-336 (N.D.Cal. 1995)).

21   Each of the moving parties bears the burden of establishing the basis for the
22   relief it seeks. As the party moving to compel compliance with the Subpoenas,
23   Mattel bears the burden of "establishing that the information sought is relevant and
24   necessary to its lawsuit." (*Cytodyne Technologies, Inc. v. Biogenic Technologies,
25   Inc.*, 216 F.R.D. 533, 534 (M.D.Fla. 2003)).

26   Finally, in deciding whether to enforce a subpoena, the Discovery Master
27   must balance "the relevance of the discovery sought, the requesting party's need,
28   and the potential hardship to the party subject to the subpoena." (*Heat & Control,*

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 14 -
ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 2 4
PAGE 579

1  *Inc. v. Hester Industries, Inc.*, 785 F.2d 1017, 1024 (Fed.Cir.1986) citing

2  *Deitchman v. E.R. Squibb & Sons, Inc.*, 740 F.2d 556, 560, 564 (7th Cir.1984)).

3      **C.    Mattel's Contention That MGA Has Placed Its Finances At Issue**

4      As its first ground for moving to compel production of the documents sought

5  by the Subpoenas, Mattel argues that MGA has misrepresented its finances, thereby

6  making it necessary and appropriate for Mattel "to obtain an accurate understanding

7  of MGA's and Larian's finances." (Motion to Compel, p. 14). According to

8  Mattel, MGA's supposed misrepresentations have placed its financial condition at

9  issue, and have opened the door to discovery of any information bearing on MGA's

10  finances.  (*Id.* ["Discovery on MGA's financials is amply warranted by MGA's

11  own statements *alone.*"] (emphasis added)).

12      However, after Mattel filed its Motion, the Court made it clear that the

13  validity of the Subpoenas must be evaluated with reference to whether they relate to

14  the matters to be adjudicated in Phase 2.  As the Discovery Master understands the

15  Court's ruling, the Subpoenas cannot be justified merely because they seek

16  information regarding some contention made during Phase 1, without regard to

17  Phase 2. In other words, putting a fact at issue in Phase 1, cannot, standing alone,

18  suffice to render that fact the proper subject of discovery in Phase 2.

19      Thus, to the extent Mattel's first argument asserts that MGA's statements,

20  standing alone, warrant discovery from the Subpoena recipients, that argument is

21  rejected.  Rather, the Discovery Master will evaluate whether discovery of MGA's

22  finances is warranted in light of the issues to be adjudicated in Phase 2.

23      Further, even if Mattel were not required to demonstrate some nexus between

24  the Subpoenas and the issues to be adjudicated in Phase 2, the argument that the

25  Subpoenas are justified because MGA placed its financial condition at issue would

26  still fail for the simple reason that Mattel is not seeking discovery from MGA but

27  rather *non- parties.*  Mattel does not cite any statements or conduct by the

28  //

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 15 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 20
PAGE 520

1    Financing Entities putting their financial affairs at issue in this litigation.[13]

2    Rather, Mattel argues that the statements and conduct of *MGA* should be attributed

3    to the Financing Entities and construed as their consent to discovery of their

4    internal financial affairs. Such an assumption is unwarranted.

5       **D.    Mattel's Contention That The Subject Discovery Is Relevant To**

6          **Phase 2**

7          **1.    Subpoenas To The Financing Entities**

8    Mattel next argues that the Subpoenas to the Financing Entities seek

9    information relevant to a variety of Phase 2 issues.[14]

10          **a.    Mattel's RICO Counterclaim**

11    Mattel first asserts in its Motion to Compel that the discovery it seeks is

12    relevant to its RICO counterclaim because "Mattel alleges that the counter-

13    defendants have operated a widespread criminal enterprise that has engaged in

14    numerous acts of mail and wire fraud and other predicate acts in violation of the

15    RICO statute" and that "MGA's mid-trial transactions with Omni 808 and the other

16    non-operating entities" is "a continuation of that pattern of racketeering activity."

17    (Motion, p. 18).

18

---

19    [13] In its Reply to the Financing Entities' Opposition to its Motion to Compel, Mattel argues that the Financing
20    Entities (referred to by Mattel as the "Omni Parties") have injected themselves into the litigation because one of
      them, Omni 808 Investors, LLC, applied to intervene. (Reply, p. 8). However, a decision on that application has
21    been deferred by the Court, (Tr., 80:15 – 17), and therefore Omni 808 Investors, LLC and the other Financing
      Entities remain outsiders to the litigation entitled to the heightened protection from discovery normally afforded non-
      parties.

22    [14] Mattel argues in one of its reply briefs filed on February 25, 2009 that the Discovery Master should strike MGA's
23    Opposition to the Motion to Compel because: (1) MGA indicated that it would not be filing an Opposition and
      (2) the Opposition was filed a week late. (*See* Mattel's Reply in Response to MGA's Opposition to the Motion to
24    Compel, p. 4). The Discovery Master declines that request. The assertion that MGA would not file an Opposition is
      based on an alleged oral conversation which counsel for Mattel apparently did not confirm in writing. (*See*
25    Supplemental Declaration of Jon D. Corey in Support of Mattel's Reply in Response to MGA's Opposition to the
      Motion to Compel, ¶ 4). Even assuming such a statement had been made, MGA was entitled to change its mind. As
26    for Mattel's argument that the Opposition was untimely, the Discovery Master notes that he was only recently
      appointed. This fact combined with the backlog of discovery motions may have resulted in some confusion as to
27    when various briefs were due to be filed. The Discovery Master prefers to address issues on the merits and declines
      to strike the Opposition as untimely. Notwithstanding the foregoing, the Discovery Master urges the parties to
28    strictly comply with the briefing schedule set forth under the Discover Master Order for all future discovery motions
      unless an alternative procedure is agreed upon by the parties and approved by the Discovery Master or the Court.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 16 -                    ORDER NO. 3
                    [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 20
PAGE 521

1    But Mattel's allegations in support of its RICO counterclaim turn on

2    misappropriation of trade secrets and confidential information, and make no

3    mention of improper transfers of funds or any other predicate act similar to MGA's

4    purported business transactions with any of the Financing Entities.[15]   Accordingly,

5    these financial transactions are not a "continuation" of the "pattern" of conduct

6    Mattel alleges in very precise detail in its RICO counterclaim.  (*Asdourian v.*

7    *Konstantin*, 77 F. Supp. 2d 349, 358 (E.D.N.Y. 1999) [cited by Mattel and stating

8    RICO claimant must show "[a]n interrelationship between acts, suggesting the

9    existence of a pattern, [which] may be established...[by] proof of their temporal

10   proximity, or common goals, or similarity of methods, or repetitions' (citation

11   omitted)]; *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 238-39 (1989) [RICO claims

12   must be supported by a "pattern" of activity and "the mere fact that there are a

13   number of predicates is no guarantee that they fall into any arrangement or order.

14   A pattern is not formed by sporadic activity ... Instead, the term 'pattern' itself

15   requires the showing of a relationship between the predicates" (quotations and

16   internal citations omitted)]).

17       At this stage, Mattel has failed to demonstrate a relationship between the

18   predicate acts alleged by Mattel in its Counterclaims – which were bound together

19   by a purported scheme to misappropriate Mattel's trade secrets – and the

20   //

21   //

22   //

23   ─────────────────────────────

     [15] *See* Mattel's Second Amended Answer and Counterclaims ("Counterclaims"), p. 55-62, ¶ 90 [alleging the MGA
24   Parties and other counter-defendants "for the purpose of executing and attempting to execute the scheme to
     improperly defraud Mattel and steal its trade secret or otherwise confidential and proprietary information" committed
25   various predicate acts], ¶ 91 [alleging the MGA Parties and other counter-defendants "shared the common purpose of
     enabling MGA to obtain confidential, proprietary and otherwise valuable Mattel property through improper means in
26   order to assist MGA in illegally competing with Mattel"], ¶ 92 [alleging the enterprises are continuing enterprises
     because they are "designed to and did unlawfully acquire the confidential business information and property of
27   Mattel and incorporated this information and property into MGA's ongoing business, marketing strategies and
     business methods, practices, and processes"], ¶ 93(a) [alleging mail fraud committed in furtherance of scheme to
28   "defraud Mattel of its confidential trade secret information and property"], ¶ 93(b) [alleging wire fraud "defraud
     Mattel of its confidential and trade secret information and property"], and ¶ 102 [the MGA Parties and other counter-
     defendants "schemed to defraud Mattel and steal its property and trade secret information"].

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 17 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]


EXHIBIT 26
PAGE 522

1  transactions Mattel seeks to investigate here.[16]

2      Also, the RICO counterclaim (like the other counterclaims to be adjudicated

3  in Phase 2) was asserted in July, 2007 – more than a year before either Omni 808

4  Investors, LLC or Vision Capital, LLC came into existence – and therefore

5  apparently did not encompass the activities of those entities or the transactions

6  which are the subject of the Financing Discovery.  While that fact might be

7  overcome by a showing that the Financing Entities were created or used to further a

8  scheme to carry on misconduct that is the subject of Phase 2, Mattel did not

9  demonstrate that such is the case in its briefs and supporting evidence.

10      In sum, absent some argument or evidence demonstrating a nexus between

11  the predicate activities alleged in the RICO counterclaim, on the one hand, and the

12  transactions and other matters which are the subject of the Financing Discovery, on

13  the other hand, there has been no showing by Mattel that the Subpoenas to the

14  Financing Entities are reasonably calculated to lead to the discovery of admissible

15  evidence regarding the RICO counterclaim.

16                      **b.     Mattel's Disgorgement Remedy**

17      Next, Mattel asserts that the Subpoenas to the Financing Entities seek

18  information relevant to its remedy of disgorgement, which is an available remedy

19  for Mattel's Phase 2 counterclaim for misappropriation of trade secrets.  Mattel

20  argues:

21

22  _____

22  [16] This conclusion is consistent with the case cited by Mattel – *Eastman Kodak Co. v. Camarata*, 238 F.R.D. 372

23  (W.D.N.Y. 2006).  There, the plaintiffs "asserted broad civil RICO claims against the Nicolo defendants predicated, among other violations, upon alleged money laundering violations.  Specifically, the Complaint alleges that the

24  Nicolo defendants and the other named defendants constituted an enterprise as defined in the RICO statute that was engaged in a pattern of racketeering activity, including mail and wire fraud and, more importantly for purposes of

25  this motion, money laundering." (*Id.*, at 375).  "The alleged money laundering consisted of repeated deposits into various financial institutions in order both to promote and carry on the unlawful activity – that is, by paying and

26  depositing kickbacks to certain members of the enterprise – and to conceal and attempt to conceal the proceeds, their nature, source and location – that is, by transferring funds between defendants and between various accounts

27  maintained by those defendants." (*Id.* [emphasis added]).  Thus, inquiry into the defendants' finances was appropriate as it was likely to reveal activity related to the alleged predicate acts.  Here, on the other hand, Mattel has

28  not alleged any sort of financial scheme which would support inquiry into the MGA Parties' financial transactions with third parties.

EXHIBIT 20
PAGE 523



> For purposes of establishing disgorgement, Mattel must take into account money transferred from MGA and Isaac Larian, regardless of the manner in which it was transferred. Mattel is entitled to discovery that shows all assets siphoned from MGA or Isaac Larian . . . . By these subpoenas, Mattel seeks evidence to prove the amount the defendants must disgorge. Money that properly belonged to Mattel was transferred from MGA or Isaac Larian to an entity controlled by them.

(Motion, pp. 20:1 – 4, 21:12 – 14).

While the foregoing statements may be true as a general proposition, none of the Financing Entities is alleged to have "received money that properly belonged to Mattel." To the contrary, Mattel asserts that the Financing Entities are creditors of MGA. Therefore, Mattel has not demonstrated how any of the categories of documents sought from the Financing Entities would aid it in ascertaining the amount defendants must disgorge.

### c.    Phase 2 Damages

Mattel's third argument in favor of enforcement of the Subpoenas is that they "seek documents relevant to MGA's financial condition" and other "factors relevant to an award of punitive damages." (Motion to Compel, p. 21:19 – 22). Depending on the particular scope of the document request, such discovery from Omni 808 Investors, LLC may be appropriate in connection with Phase 2 because any information evidencing MGA's indebtedness to Omni 808 Investors, LLC from the purchase of the alleged Wachovia debt or direct loans to MGA is relevant to MGA's net worth (and hence punitive damages).[17] As the Court noted in its February 11, 2009 ruling:

> I can see tremendous overlap between, for example, discovery on

---

[17] The Discovery Master's analysis is fundamentally different for OmniNet Capital, LLC and Vision Capital, LLC because neither entity is alleged by Mattel to be a creditor of MGA Entertainment, Inc. (Motion to Compel, pp. 9 and 10). To the contrary, Mattel concedes that "OmniNet [Capital, LLC] is not the secured party, and thus presumably not the actual debt purchase/lender. Rather, the company holding the security interest is Omni 808 [Investors, LLC] . . . [which] appears to be owned funded by a company called Vision Capital, LLC." (Id.) Because it admits that OmniNet Capital, LLC and Vision Capital, LLC are not creditors of MGA, Mattel has failed to show that the information sought from those entities has any bearing on MGA's financial condition.



EXHIBIT 26
PAGE 524

1    financial condition of the company as it relates to damages in the
2    Phase 2 and also issues that the receiver is looking at. And
     without making a ruling on any of this, I would not suggest for a
     moment that these are mutually exclusive categories.
3
     (Tr., 101:3 - 8)
4
5        Mattel argues that the necessary connection between the Financing

6    Discovery and Phase 2 damages exists because the Financing Entities have acquired

     a security interest in MGA's assets, which, in turn, affects MGA's financial
7
     condition. Specifically, Mattel argues that Omni 808 Investors, LLC is:
8
9        directly involved in providing funding to MGA in exchange for a
         security interest. Such funding, and security interests, are in and
10       of themselves directly relevant to the financial condition of the
         MGA Parties, including the amount of the security interests, the
11       terms and conditions of the funding, and the rate of funding. . . .

12   (Motion to Compel, p. 22: 13 – 17).

13       The Discovery Master agrees that such limited information, as it relates to

14   the purchase by Omni 808 Investors, LLC of the debt obligation previously held by

15   Wachovia Bank, is reasonably calculated to lead to the discovery of admissible

16   evidence concerning Phase 2 issues, including the calculation of MGA's net worth

17   for purposes of calculating punitive damages.[18]  Accordingly, Mattel's motion to

18   compel responses from Omni 808 Investors, LLC is granted with respect to

19   documents relating to (1) the existence of any debt owed by MGA Entertainment,

20   Inc. to Omni 808 Investors, LLC and (2) any communications between Omni 808

21   Investors, LLC and the MGA parties regarding any such indebtedness.

22       The problem, however, is the vast majority of the document requests set forth

23   in the Subpoena propounded on Omni 808 Investors, LLC are not narrowly tailored

24   to obtain information demonstrating the amount and nature of MGA's indebtedness

25   (and hence net worth) or communications regarding any such debt,[19] but instead

26   _____
     [18] During oral argument, counsel for MGA represented (and counsel for Mattel seemed to agree) that the Court
27   deferred discovery regarding the Wachovia debt until the middle of the Phase 1 trial. (Reporter's Transcript of
     Proceedings, March 4, 2009, pp. 72, 85 and 86). The extent to which that damages information was obtained directly
28   from Wachovia, as opposed to MGA, is not clear from the record provided to the Discovery Master.

     [19] Nor did Mattel move to compel MGA to produce this information in the first instance.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES                                  - 20 -        ORDER NO. 3
                                                           [Case No. CV 04-09049 SGL (RNBx)]


EXHIBIT 26
PAGE 525

1   would require the Financing Entities to produce virtually every document in their

2   possession regarding their formation, operations, and history of transactions.

3   Among other things, the Subpoenas to the Financing Entities seek:

4   •   All records that "substantiate transfers of assets" by the Financing

5       Entities "to other entities, individuals, and/or parties, within the U.S.

6       and outside of the U.S." (Exhibits 27-29 to Supplemental Declaration

7       of Jon D. Corey In Support Of Mattel, Inc.'s Reply In Support Of

8       Motion To Compel Production of Documents Responsive to Third-

9       Party Subpoenas, Attachment A, ¶ 16);

10  •   All documents "detailing or setting forth the relationship" between

11      each of the Financing Entities and other non-parties (*Id.* at ¶¶ 6-10);

12  •   All documents referring or relating to the "all contributions, loans and

13      any sources of funding" for the Financing Entities (*Id.* at ¶ 13);

14  •   All documents referring or relating to the "source of funding" of other

15      non-parties (*Id.* at ¶ 16);

16  •   All documents showing detail of "all loan facilities" referring or

17      relating to the Financing Entities and other non-parties (*Id.* at ¶ 14);

18  •   All documents referring or relating to "transactions involving any

19      compensation, loans, advances, payments, fees or any other form of

20      consideration" paid to other non-parties (*Id.* at ¶ 15);

21  •   All "communications" referring or relating to the Financing Entities

22      and other non-parties (*Id.* at ¶ 17).

23  Accordingly, the Discovery Master concludes that most of the categories of

24  documents in the Subpoenas are overbroad and not reasonably calculated to lead to

25  the discovery of admissible evidence with respect to Phase 2 issues, as detailed in

26  Section IV below (entitled "Disposition").

27  //

28



EXHIBIT 26
PAGE 526

1              **d.     Credibility Of MGA Witnesses**

2              Mattel's fourth argument consists of a single, conclusory paragraph asserting

3     that it is entitled to its discovery in order to determine the credibility of MGA's

4     witnesses. To support this argument, Mattel first states that information is

5     discoverable "if it relates to 'the credibility of any witness.'" (Motion to Compel,

6     p. 23 (citing *Cable & Computer Tech., Inc. v. Lockheed Sanders, Inc.*, 175 F.R.D.

7     646, 650 (C.D. Cal. 1997)).[20] Next, Mattel asserts that "MGA and Larian made

8     statements under oath about their financial condition as well as about the role of

9     Omni 808 and the other non-operating entities in providing MGA with additional

10    funding." (*Id.*) But that is the full extent of Mattel's argument. Mattel does not

11    attempt to show that the specific discovery that it has propounded is reasonably

12    calculated to lead to the discovery of the evidence that it contends would be

13    admissible.

14             Discoverable information generally includes evidence relevant to the

15    credibility of a party or a key witness. (See *Paulsen v. Case Corp.*, 168 F.R.D. 285,

16    287-288 (C.D. Cal. 1996); see also *Ragge v. MCA/Universal Studios*, 165 F.R.D.

17    601, 603-604 (C.D. Cal. 1995); *U.S. v. City of Torrance*, 164 F.R.D. 493, 495 (C.D.

18    Cal. 1995)). If Mattel's discovery were reasonably calculated to lead to the

19    discovery of such information, then it might be permissible. (*Id.* ["Rule 26 is

20    liberally interpreted to permit wide ranging discovery of all information reasonably

21    calculated to lead to discovery of admissible evidence."]) But Mattel has not taken

22    any steps to connect its discovery to such evidence. As discussed above, Mattel

23    bears the burden of demonstrating that its discovery is reasonably calculated to lead

24    to the discovery of admissible evidence. Here, Mattel has only stated that

25    credibility evidence can be admissible and that credibility is at issue in this case –

26    without referring at all to specific categories of documents in the Subpoenas or

27

28    _____
      [20] The Discovery Master notes that the case cited by Mattel does not actually discuss or apply this proposition.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

                                        - 22 -                ORDER NO. 3
                                                    [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 26
PAGE 527

1    linking those categories of documents to prior or anticipated testimony of MGA's

2    witnesses. Simply stating that credibility evidence is discoverable does nothing

3    toward meeting Mattel's burden to demonstrate that the particular discovery at issue

4    here is reasonably calculated to lead to the discovery of such evidence.

5                          e.    **MGA's Unclean Hands**

6           Mattel next argues in its Motion to Compel that MGA has asserted an

7    unclean hands defense in response to Mattel's Phase 2 claims, and consequently

8    Mattel is entitled to discover whether the MGA Parties are currently "engaging in

9    sham and fraudulent financial transactions such as concealing profits" to preclude

10   MGA "from invoking the unclean hands defense themselves." (Motion, pp. 23 -

11   24.) But this argument does not apply to the Financing Entities because, as

12   discussed above, Mattel does not claim that the Financing Entities have "received

13   money that properly belonged to Mattel" or otherwise used those entities to conceal

14   profits. To the contrary, Mattel asserts that the Financing Entities are creditors of

15   MGA.

16          Regardless, Mattel's theory is that, even if Mattel has unclean hands, MGA

17   may not assert that defense unless MGA itself is blameless. (*Id.*, at 24 [a "party

18   asserting an equitable defense, however, must itself have 'clean hands.'"]).

19   Mattel's statement of the law is correct as far as it goes. But, as the Ninth Circuit

20   has stated, "'unclean hands does not constitute 'misconduct in the abstract,

21   unrelated to the claim to which it is asserted as a defense.'" (*Jarrow Formulas, Inc.

22   v. Nutrition Now, Inc.*, 304 F.3d 829, 841 (9th Cir. 2002)). "It is fundamental to

23   [the] operation of the doctrine that the alleged misconduct . . . relate directly to the

24   transaction concerning which the complaint is made." (*Dollar Sys., Inc. v. Avcar

25   Leasing Sys., Inc.* 13 F.2d 165, 173 (9th Cir. 1989)). Accordingly, courts will not

26   allow discovery based on an unclean hands defense where the "allegations of

27   misconduct do not relate to the transactions... forming the basis for the

28   []complaint." '(*Gen-Probe, Inc. v. Amoco Corp.*, 926 F. Supp. 948, 952 (S.D.Cal.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES
                                      - 23 -                    ORDER NO. 3
                                                        [Case No. CV 04-09049 SGL (RNBx)]


EXHIBIT 26
PAGE 528

1    1996)).

2      Here, Mattel does not link any of the categories of documents referenced in

3 the Subpoenas (which involve the creation and operation of the Financing Entities

4 beginning with their formation in the summer of 2008) to any of the conduct at

5 issue in Phase 2 (which involves such matters as the alleged theft of trade secrets in

6 Mexico in 2004 and other conduct unrelated to the relationship between the

7 Financing Entities and MGA). Accordingly, the Financing Discovery is not

8 reasonably calculated to lead to the discovery of admissible evidence regarding

9 MGA's alleged unclean hands in connection with the matters to be adjudicated in

10 Phase 2.

11           **f.**     **Mattel's Unfair Competition Counterclaim**

12      As Mattel acknowledges, California's Unfair Competition Law, Business &

13 Professions Code §§ 17200 et seq. (the "Unfair Competition Law") encompasses

14 "'anti–competitive business practices as well as injuries to consumers, and has as a

15 major purpose the preservation of fair business competition.'" (Opp. at 24:25 –

16 25:2, quoting *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone*

17 *Co.* (1999) 20 Cal.4th 163, 180)). However, Mattel's papers do not sufficiently

18 demonstrate that the documents sought from the Financing Entities involve "anti-

19 competitive business practices," "injuries to consumers," or anything affecting

20 consumers or the public at all. Instead, Mattel simply asserts, without any

21 supporting analysis, that MGA has violated the Unfair Competition Law by

22 "manipulating the sources of [its own] funding" (presumably the Financing

23 Entities). That allegation, even if true, does not appear to involve the "unlawful,

24 unfair or fraudulent" marketing or sale of anything and therefore does not fall

25 within the ambit of the Unfair Competition Law.

26    //

27    //

28    //

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 26
PAGE 520

      **g.**    **Summary Of The Discovery Master's Findings With Respect To The Subpoenas Directed To The Financing Entities**

For the foregoing reasons, the Discovery Master finds that, based on the record before him, Mattel has failed to sufficiently articulate the necessary connection between most of the Financing Discovery and any Phase 2 issue. Moreover, while there is a connection between the Financing Discovery and some of the Phase 2 issues referenced (i.e., MGA's financial condition and its bearing on Mattel's claim for punitive damages), Mattel has failed to demonstrate that the Subpoenas meet the standard set forth in Rule 26(b)(2) and that all of the requested discovery is permissible in light of the case law interpreting Rules 26 and 45.

Accordingly, Mattel's motion to compel the Financing Entities to comply with the Subpoenas is **GRANTED** in part and **DENIED** in part.

      **2.**    **Subpoenas To The Transferee Entities**

In their briefs regarding the enforceability of the Subpoenas, Mattel and MGA do not, as a general rule, make a distinction between the Financing Entities and the Transferee Entities, but rather direct the same arguments to both groups collectively. However, there are important distinctions between the two groups, including, without limitation, that: (1) the Transferee Entities appear to be affiliated with – if not wholly owned by – Larian; (2) the Transferee Discovery involves the sale of MGA assets (i.e., Bratz products) in which Mattel has an ownership interest pursuant to the Court's December 3, 2008 ruling; and (3) the Subpoenas seek some documents relevant to Phase 2 issues which presumably cannot be obtained from MGA, namely the Transferee Entities' contracts with, and records of sales to, third parties purchasing the Bratz products. Accordingly, in ruling on the Subpoenas directed to the Transferee Entities, the Discovery Master's analysis of certain of the parties' above-referenced arguments differs, as follows.

//

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 25 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 26
PAGE 530

1              **a.      Non-Party Considerations**

2          To begin with, the distinction between a party and non-party here is less

3    compelling given the MGA parties' apparent admission that the Transferee Entities

4    are single purpose entities created and controlled by Larian (who is, of course,

5    himself a party) to dispose of inventory that is the subject of this litigation.  Further,

6    the MGA parties presumably do not have custody of the sales contracts whereby

7    IGWT Group LLC sold Bratz products to third parties.  The Discovery Master also

8    notes that counsel for the Transferee Entities has submitted a declaration stating

9    that there are "hundreds of sales contracts at issue, and as such, thousands of

10   documents responsive to Mattel's requests." (Declaration of Jeffrey B. Valle dated

11   February 17, 2009 ["Valle Decl."], ¶ 7).  The unavailability of these relevant

12   documents from any other source weighs heavily in favor of enforcing the

13   Subpoena to IGWT Group LLC.

14              **b.      Relevance To Phase 2 Issues**

15                   **1.      Phase 2 Damages**

16         As mentioned above, Mattel argues that the Subpoenas "seek documents

17   relevant to MGA and Larian's financial condition, net worth, and ability to pay" on

18   the ground that such information is relevant to Mattel's Phase 2 damages claims,

19   including Mattel's claim for punitive damages.

20   For the reasons previously discussed, the Discovery Master finds that, with respect

21   to the Financing Entities, the discovery requests were, for the most part overbroad,

22   and/or not sufficiently linked to Phase 2 issues.  However, the Discovery Master's

23   analysis is necessarily different with respect to entities which were created and

24   apparently wholly owned and/or controlled by Larian (a defendant in Phase 2), and

25   which are admittedly selling inventory which generate revenues in which Mattel

26   has an interest.  Specifically, Mattel contends that Larian has caused MGA to sell

27   the inventory at a deep (80%) discount to the Transferee Entities.  This practice, if

28   true, limits MGA's profits (which go to MGA's balance sheet, and ultimately



EXHIBIT 26
PAGE 531

1   affects MGA's net worth) while at the same time allowing Larian to capture

2   additional profits which otherwise would have been realized by MGA and reflected

3   on MGA's balance sheet).  Accordingly, the Discovery Master finds that most of

4   the documents Mattel seeks to subpoena from the Transferee Entities properly

5   relate to Phase 2 issues, as specified in Section IV below.[21]

6                    **2.       Mattel's Unfair Competition Counterclaim**

7         Given MGA's admissions regarding Larian's ownership/control of the

8   Transferee Entities, coupled with their sale of inventory purchased from MGA, the

9   Discovery Master finds that many of the documents requested from the Transferee

10  Entities are also arguably related to a "fraudulent," "unlawful," or "unfair" business

11  practice within the meaning of the Unfair Competition Law and the scope of

12  Mattel's Counterclaims.  Among other things, the Court's December 3, 2008 order

13  imposes a constructive trust on the proceeds of MGA's sale of the subject

14  inventory.  If, as Mattel argues, MGA's sale of that inventory to the Transferee

15  Entities constitutes a scheme on the part of Larian to enrich himself by depriving

16  Mattel of the true profits to be paid to Mattel pursuant to the Court's order, then

17  such conduct would constitute an unlawful attempt to circumvent the Court's order

18  and arguably render the transaction between MGA and the Transferee Entities an

19  anti-competitive business practice that is unlawful, unfair or fraudulent to other toy

20  manufacturers, including Mattel.  Therefore, such alleged misconduct, if proven,

21  could violate the Unfair Competition Law.

22        Moreover, although Mattel asserted its counterclaim for violation of the

23  Unfair Competition Law prior to the alleged misconduct (and long before the

24  Transferee Entities came into existence), Mattel phrased its allegations broadly

25  ────────────────

26  [21] The Discovery Master notes that IGWT 826 Investments is registered at the home address of Larian's sister and
    brother-in-law, indicating that some of Larian's relatives may be involved in the ownership or operation of the
27  Transferee Entities.  Accordingly, the Discovery Master has specified in some instances that the production of
    documents shall include those referencing not only Larian, but also his spouse, his children, his siblings, or their
    spouses, or any entity or person affiliated with them. However, the Discovery Master has stopped short of ordering
28  the production of documents relating to any other entities, individuals "within the U.S. and outside the U.S.," as
    requested in Category 6 of each of the Subpoenas directed to the Transferee Entities.

EXHIBIT 26
PAGE 532

1    enough to potentially encompass subsequent acts of unfair competition which
2    perpetuate or extend the misconduct alleged in the Counterclaims. Unlike Mattel's
3    RICO counterclaim, Mattel's Twelfth Counterclaim for Unfair Competition does
4    not purport to rest on a list of enumerated, factually detailed and carefully defined
5    acts, but rather is phrased broadly to cover "unlawful, unfair and/or fraudulent acts
6    of unfair competition" which include, "without limitation" certain illustrative
7    examples. (Counterclaims, p. 74, ¶ 165).

8         Of course, the Discovery Master cannot predict whether the Court will
9    ultimately deem Mattel's unfair competition counterclaim to be sufficiently elastic
10   to encompass MGA's alleged misuse of the Transferee Entities or whether Mattel
11   will seek (and the Court permit) amendment of the counterclaim to expressly
12   reference such alleged misconduct. Nevertheless, in light of the fact that the
13   discovery need only appear reasonably calculated to lead to the discovery of
14   admissible evidence, the Discovery Master finds that certain aspects of the
15   Subpoenas are sufficiently related to Mattel's Phase 2 unfair competition claim.

16                    c.    **Summary Of The Discovery Master's Findings With**
17                          **Respect To The Subpoenas Directed To The**
18                          **Transferee Entities**

19        As set forth above, the Discovery Master finds that Mattel has sufficiently
20   articulated a connection between some of the Transferee Discovery and its Phase 2
21   claims. Accordingly, Mattel's motion to compel the Transferee Entities to comply
22   with the Subpoenas is **GRANTED** in part and **DENIED** in part.

23   **IV.    Disposition**

24        1.    The Motion to Quash filed by MGA is **DENIED**.

25        2.    Mattel's Motion to Compel the Financing Entities to produce
26   documents responsive to the Subpoenas is **DENIED** with respect to OmniNet
27   Capital, LLC and Vision Capital, LLC.

28        3.    Mattel's Motion to Compel Omni 808 Investors, LLC to produce

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 28 -                    ORDER NO. 3
                    [Case No. CV 04-09049 SGL (RNBx)]


EXHIBIT 26
PAGE 533

1   documents responsive to the Subpoena propounded on it is **GRANTED** in part and

2   **DENIED** in part, as follows:

3          a.    Requests 1 through 3, 13, 15, and 17:  The Motion is granted

4   with respect to documents relating to (1) the existence of any debt owed by MGA

5   Entertainment, Inc. to Omni 808 Investors, LLC, including any debt purchased

6   from Wachovia Bank, and (2) any communications between Omni 808 Investors,

7   LLC and the MGA parties regarding any such indebtedness.  The motion is denied

8   regarding any other documents sought by these requests.

9          b.    Requests 4 through 12, 14 and 18:  The Motion is denied.

10      4.    Mattel's Motion to Compel the Transferee Entities to produce

11   documents responsive to the Subpoenas is **DENIED** as to Request 6 propounded to

12   IGWT Group LLC and Request 6 propounded to IGWT 826 Investments, LLC.

13      5.    Mattel's Motion to Compel the Transferee Entities to produce

14   documents responsive to the Subpoenas is **GRANTED,** as follows:

15                 **Subpoena To IGWT Group LLC**

16          a.    Request 1:  The Motion is granted with respect to documents

17   relating to the purchase by, or transfer to, IGWT Group LLC of any items of value,

18   including Bratz products, from MGA, Larian, his spouse, his children, his siblings,

19   or their spouses, or any entity or person affiliated with them.

20          b.    Request 2:  The Motion is granted

21          c.    Request 3:  The Motion is granted with respect to documents

22   relating to any ownership interest by Larian, his spouse, his children, his siblings,

23   or their spouses, or any entity or person affiliated with them.

24          d.    Request 4:  The Motion is granted with respect to documents

25   relating to any sources of funding by Larian, his spouse, his children, his siblings,

26   or their spouses, or any entity or person affiliated with them.

27          e.    Request 5:  The Motion is granted with respect to documents

28   relating to any compensation, loans, advances, payments, fees or any other form of

EXHIBIT _26_
PAGE _534_

1 | consideration paid by IGWT Group LLC to Larian, his spouse, his children, his

2 | siblings, or their spouses, or any entity or person affiliated with them.

3 |       f.    Request 7: The Motion is granted.

4 |         **Subpoena To IGWT 826 Investments LLC**

5 |       a.    Request 1: The Motion is granted with respect to documents

6 | relating to the purchase by, or transfer to, IGWT 826 Investments LLC of any items

7 | of value, including Bratz products, from MGA, Larian, his spouse, his children, his

8 | siblings, or their spouses, or any entity or person affiliated with them.

9 |       b.    Request 2: The Motion is granted

10 |       c.    Request 3: The Motion is granted with respect to documents

11 | relating to any ownership interest by Larian, his spouse, his children, his siblings,

12 | or their spouses, or any entity or person affiliated with them.

13 |       d.    Request 4: The Motion is granted with respect to documents

14 | relating to any sources of funding by Larian, his spouse, his children, his siblings,

15 | or their spouses, or any entity or person affiliated with them.

16 |       e.    Request 5: The Motion is granted with respect to documents

17 | relating to any compensation, loans, advances, payments, fees or any other form of

18 | consideration paid by IGWT 826 Investments LLC to Larian, his spouse, his

19 | children, his siblings, or their spouses, or any entity or person affiliated with them.

20 |       f.    Request 7: The Motion is granted.

21 |     5.    All non-privileged documents referenced in Paragraphs 3 and 5, above,

22 | shall be produced within 30 days of this Order, subject to any applicable

23 | confidentiality designations available under the Protective Order.

24 |     6.    Nothing in this Order should be deemed to prevent Mattel from

25 | seeking discovery from the MGA parties of documents encompassed by the

26 | Subpoenas upon the showing of a sufficient nexus between the particular discovery

27 | requests and legitimate Phase 2 issues, and subject to any applicable objections.

28 | //

EXHIBIT 26
PAGE 535

1    Dated: March 10, 2009

2

3

4                                          By:        /s/ Robert C. O'Brien

5                                                     ROBERT C. O'BRIEN
                                                     Discovery Master
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT _2_
PAGE _536_