# EXHIBIT 27

| | |
|---|---|
| 1 | Robert C. O'Brien (SBN 154372) |
| | ARENT FOX LLP |
| 2 | 555 West Fifth Street, 48th Floor |
| | Los Angeles, CA 90013-1065 |
| 3 | Telephone: 213.629.7400 |
| | Facsimile: 213.629.7401 |
| 4 | obrien.robert@arentfox.com |

5  Discovery Master

6

7

8               UNITED STATES DISTRICT COURT

9               CENTRAL DISTRICT OF CALIFORNIA

10                    EASTERN DIVISION

11

| | |
|---|---|
| 12  CARTER BRYANT, an individual, | Case No. CV 04-09049 SGL (RNBx) |
| 13              Plaintiff, | |
| 14              v. | Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-2727 |
| 15  MATTEL, INC., a Delaware<br>corporation, | **PHASE 2 DISCOVERY MATTER** |
| 16              Defendant. | **ORDER NO. 21, REGARDING:** |
| 17 | **EX PARTE APPLICATION OF** |
| 18 | **MATTEL FOR OSC RE: OMNI** |
| 19 | **808's FAILURE TO COMPLY**<br>**WITH COURT ORDER** |
| 20 | |
| 21  CONSOLIDATED WITH | |
| 22  MATTEL, INC. v. BRYANT and | |
| | MGA ENTERTAINMENT, INC. v. | |
| 23  MATTEL, INC. | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

ORDER NO. 21
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 27
PAGE 537

1    The Discovery Master, having been notified of the Court's decision to refer

2    to the Discovery Master for initial disposition Mattel's *ex parte* application for an

3    Order to Show Cause re: the alleged failure of Omni 808 Investors, LLC ("Omni

4    808") to comply with the Discovery Master's March 10, 2009 Order (the "March

5    10 Order") or, alternatively, for an Order shortening time to hear a motion for such

6    relief (the "Application"), and having reviewed the Opposition filed by Omni 808

7    and supporting papers, hereby **ORDERS** as follows:

8        1.    Omni 808 shall produce to Mattel all documents ordered to be

9    produced pursuant to the March 10 Order no later than 5:00 p.m. on April 28, 2009

10    and shall simultaneously serve on the Discovery Master a notice confirming Omni

11    808's compliance.

12        2.    In the event Omni 808 fails to comply in any respect with the

13    provisions of Paragraph 1, above, the Discovery Master shall refer this matter to the

14    Court for further action, and reserves the right to recommend to the Court that the

15    relief requested by Mattel in the Application be granted, in whole or in part.

16        3.    By way of guidance to the parties, and to reduce the likelihood of

17    unnecessary and costly motion practice, the Discovery Master reminds the parties

18    that, until and unless a deadline or other requirement imposed by the Discovery

19    Master is expressly modified by written Order, the parties shall timely comply with

20    all Orders issued by the Discovery Master, including the deadlines by which parties

21    are required to provide supplemental responses or produce documents.

22

23    Dated:        April 23, 2009

24

25                            By:_____/s/ Robert C. O'Brien_____

26                                    ROBERT C. O'BRIEN
                                    Discovery Master

27

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 1 -                                    ORDER NO. 21
                            [Case No. CV 04-09049 SGL (RNBx)]


EXHIBIT 27
PAGE 538

# EXHIBIT 28

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 29

Bingham McCutchen LLP
TODD E. GORDINIER (SBN 82200)
todd.gordinier@bingham.com
PETER N. VILLAR (SBN 204038)
peter.villar@bingham.com
JENNIFER A. LOPEZ (SBN 232320)
jennifer.lopez@bingham.com
600 Anton Boulevard
18th Floor
Costa Mesa, CA 92626-1924
Telephone:  714.830.0600
Facsimile:  714.830.0700

Attorneys for Non-party
OMNI 808 INVESTORS, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| Carter Bryant, an individual,<br><br>    Plaintiff,<br><br>    v.<br><br>Mattel, Inc., a Delaware Corporation,<br><br>    Defendant.<br><br> | Case No. CV 04-9049 SGL (RNBx)<br><br>**OMNI 808 INVESTORS, LLC'S** *EX PARTE* **APPLICATION FOR LEAVE TO INTERVENE FOR LIMITED PURPOSE AS A MATTER OF RIGHT OR, IN THE ALTERNATIVE, FOR PERMISSIVE INTERVENTION**<br><br>Judge:  Hon. Stephen G. Larson |
| AND CONSOLIDATED ACTIONS | |

2-3-09

A/72829697.5/3009108-0000335082

EXHIBIT 29
PAGE 580

1    Omni 808 Investors, LLC ("Omni") hereby applies *ex parte* pursuant to Rule
2    24(a) or, in the alternative, Rule 24(b) of the Federal Rules of Civil Procedure and
3    Local Rule 7-19, for an order authorizing it to intervene for the limited purpose of
4    responding to Mattel, Inc.'s ("Mattel") *Ex Parte* Application for Appointment of a
5    Receiver for MGA Entertainment, Inc. ("MGA") and all other issues related to
6    Omni's status as a secured creditor of MGA.

7    Omni makes this application on the grounds that Mattel's request for the
8    appointment of a receiver at MGA may have an immediate and irreparable adverse
9    impact on Omni, MGA's largest secured creditor. Omni satisfies all of the
10   requirements to intervene as a matter of right: the application is timely; Omni has
11   a significantly protectable interest relating to the property or transaction involved
12   in the pending lawsuit; disposition of the lawsuit may adversely affect Omni's
13   interest unless intervention is allowed; and the existing parties do not adequately
14   represent Omni's interest. In the alternative, the Court should exercise its
15   discretion to grant permissive intervention because Omni has a claim that shares a
16   common question of law or fact with the main action.

17   Good cause exists to seek this relief on an *ex parte* basis because Mattel has
18   made its request for the appointment of a receiver on an *ex parte* basis. If the
19   Court appoints a receiver, Omni may suffer irreparable harm.

20   Pursuant to Local Rule 7-19, on February 2, 2009, Omni's counsel gave
21   notice of this *ex parte* application and the relief being sought to counsel for MGA,
22   Robert Herrington of Skadden, Arps, Slate, Meagher & Flom LLP (telephone: 213-
23   687-5000; address: 300 South Grand Avenue, Suite 3400, Los Angeles, California
24   90071) and counsel for Mattel, Jon Corey of Quinn Emanuel Urquhart Oliver &
25   Hedges, LLP (telephone: 213-443-3000; address: 865 South Figueroa Street, 10th
26   Floor, Los Angeles, California 90017-2543). Counsel for MGA stated that MGA
27   will not oppose this application. Counsel for Mattel stated that Mattel will oppose

28

- 1 -

EXHIBIT 29
PAGE 581

1   this application because it is Mattel's view that MGA as debtor can adequately

2   protest the interests of its largest secured creditor. Omni disagrees.

3         This application is based on this Notice of *Ex Parte* Application, the

4   accompanying Memorandum of Points and Authorities, the records and files of this

5   Court, including without limitation the Phase 1 trial record, and all other matters of

6   which the Court may take judicial notice.

7

8   DATED: February 3, 2009           Bingham McCutchen LLP

9

10

11                             By: _____

12                                 Todd E. Gordinier
                                    Attorneys for Non-party
                                    Omni 808 Investors, LLC

-2-

EXHIBIT 29
PAGE 582

## TABLE OF CONTENTS

Page

I.   INTRODUCTION ................................................................................. 1

II.  STATEMENT OF FACTS ..................................................................... 3

III. LEGAL ARGUMENT .......................................................................... 6

    A.   Omni is Entitled to Intervene as a Matter of Right for the
        Limited Purpose of Protecting Omni's Status as a Secured
        Creditor ......................................................................................... 6

        1.   Omni's Application Is Timely. ................................................ 7

        2.   Omni Has a Significantly Protectable Interest in the
               Receivership Issues Involved in the Pending Litigation. .......... 7

        3.   The Appointment of a Receiver May Impair or Impede
               Omni's Ability to Protect Its Interests. .................................... 8

        4.   The Existing Parties May Not Adequately Represent
               Omni's Interest. ..................................................................... 9

    B.   In the Alternative, This Court Should Grant Omni Permissive
        Intervention ................................................................................. 10

IV.  CONCLUSION ................................................................................... 11

-i-

EXHIBIT 29
PAGE 583

1

## TABLE OF AUTHORITIES

2

3 **FEDERAL CASES**

Page(s)

4
5 *Arakaki v. Cayetano,*
   324 F.3d 1078 (9th Cir. 2003) ........................................................................... 6, 9

6
7 *Beckman Indus. Inc. v. International Ins. Co.,*
   966 F.2d 470 (9th Cir. 1992) ............................................................................. 6

8
9 *Commerz Union Austalt v. Collectors' Guild, Ltd.,*
   792 F. Supp. 870 (S.D.N.Y. 1991) .................................................................... 8

10
11 *DeBoer Structures, Inc. v. Shaffer Tent & Awning Co.,*
   187 F. Supp. 910 (S.D. Ohio 2001) ................................................................... 9

12
13 *Donnelly v. Glickman,*
   159 F.3d 405 (9th Cir. 1998) ............................................................................. 6

14 *Engra, Inc. v. Gabel,*
   958 F.2d 643 (5th Cir. 1992) ............................................................................. 7

15
16 *Forest Conservation Council v. United States Forest Serv.,*
   66 F.3d 1489 (9th Cir. 1995) ............................................................................. 7

17
18 *Kootenai Tribe v. Veneman,*
   313 F.3d 1094 (9th Cir. 2002) ......................................................................... 10

19
20 *League of United Latin American Citizens v. Wilson,*
   131 F.3d 1297 (9th Cir. 1997) ........................................................................... 6

21
22 *Lockyer v. U.S.,*
   450 F.3d 436 (9th Cir. 2006) ............................................................................. 6

23
24 *Meyer Jewelry Co. v. Meyer Holdings, Inc.,*
   906 F. Supp. 428 (E.D. Mich. 1995) ................................................................. 9

25 *Mountain Top Condominium v. Dave Stabbert Master Builder,*
   72 F.3d 361 (3rd Cir. 1995) ............................................................................... 8

26
27 *NL Indus. v. Secretary of Interior,*
   777 F.2d 433 (9th Cir. 1985) ............................................................................. 8

28

-ii-

A/72829697.5/3009108-0000335082

EXHIBIT 29
PAGE 584

*Reich v. ABC/York-Estes Corp.,*
   64 F.3d 316 (7th Cir. 1995).................................................................................3

*Rumbaugh v. Beck,*
   491 F. Supp. 511 (E.D. Pa. 1980)........................................................................9

*Saluck v. Rosner,*
   1999 WL 46620 (E.D. Pa. Jan. 6, 1999)..............................................................9

*San Juan County v. U.S.,*
   503 F.3d 1163 (10th Cir. 2007)...........................................................................7

*SEC v. Flight Transp. Corp.,*
   699 F.2d 943 (8th Cir. 1983)...............................................................................8

*Sierra Club v. EPA,*
   995 F.2d 1478 (9th Cir. 1993).............................................................................8

*Southwest Center for Biological Diversity v. Berg,*
   268 F.3d 810 (9th Cir. 2001)............................................................................3, 7

*Stringfellow v. Concerned Neighbors in Action,*
   480 U.S. 370 (1987)............................................................................................6

*Trbovich v. United Mine Workers,*
   404 U.S. 528 (1972)............................................................................................9

*U.S. v. South Florida Water Dist.,*
   922 F.2d 704 (11th Cir. 1991).............................................................................7

*United States v. State of Washington,*
   86 F.3d 1499 (9th Cir. 1996)...............................................................................7

*Venegas v. Skaggs,*
   867 F.2d 527 (9th Cir. 1989).............................................................................11

*Yniguez v. Arizona,*
   939 F.2d 727 (9th Cir. 1991)...............................................................................8

**RULES**

Fed. R. Civ. P. 24(a)..............................................................................................6

Federal Rule of Civil Procedure 24(b)(2)...........................................................10

-iii-

EXHIBIT 29
PAGE 587

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Non-party Omni 808 Investors, LLC ("Omni") is the largest secured creditor of MGA Entertainment, Inc. ("MGA"). Omni recently was served with a sweeping subpoena from Mattel, Inc. ("Mattel") in connection with this litigation requesting the production of documents relating to Omni's formation, governance, finances, business relationships and transactions. Mattel's papers in support of its request to have the Court appoint a receiver to "oversee and control all business and financial aspects" of MGA mischaracterize Omni, its principals and the transaction Mattel purports to describe to this Court. Because the appointment of a receiver could significantly and irreparably harm Omni's interests as a senior secured creditor of MGA, Omni hereby seeks leave of Court to intervene in this action for this limited purpose.

Mattel's *ex parte* application is replete with false and misleading representations and demonstrates Mattel's profound misunderstanding, *inter alia*, of Omni and the circumstances surrounding its recent purchase of MGA's debt from non-party Wachovia. The actual background of this transaction is both straightforward and easily explained. In October 2006, Wachovia Bank, National Association and a syndicate of other financial institutions (collectively, "Wachovia") provided a senior revolving credit facility to MGA (the "Senor Bank Credit Facility"). In July 2008, Wachovia accelerated the maturity of the outstanding debt obligations owed to Wachovia by MGA (over $310 million), demanding full and immediate payment of the entire unpaid balance as it was entitled to do under the terms of its Senior Bank Credit Facility.

In response to Wachovia's accelerated loan payment demand, MGA began efforts to find someone who would purchase the Senior Bank Credit Facility from Wachovia. Neil Kadisha, the Managing Partner of a diversified investment firm, Omninet Capital, LLC, was approached and began discussions with Wachovia

- 1 -

EXHIBIT 29
PAGE 586

1   regarding a potential purchase of the Senior Bank Credit Facility. In September
2   2008, Wachovia and Omni (a special purpose entity formed by Mr. Kadisha for
3   this transaction) entered into an assignment and exchange agreement whereby
4   Omni acquired all right, title and interest in the Senior Bank Credit Facility
5   excluding approximately $21 million which was retained by Wachovia. Omni's
6   purchase of the Senior Bank Credit Facility from Wachovia was a straightforward,
7   arms-length business deal between non-parties to this action.

8        In support of its argument for the appointment of a receiver, Mattel
9   insinuates, without any evidence, that there was something untoward about the
10  timing and circumstances of Omni's debt purchase transaction. Mattel falsely
11  represents to the Court that MGA received new "sudden funding" from an "off-
12  shore, non-operating" entity during the trial of this action. Even allowing for its
13  ignorance of the actual terms of the Omni-Wachovia transaction, there is no reason
14  for such language. If by "funding" Mattel means the loan from Wachovia, that
15  funding was provided by Wachovia to MGA under the Senior Bank Credit Facility
16  beginning in 2006 -- *long before the trial and any judgment was entered against*
17  *MGA in this action in 2008*. If by "funding" Mattel means the Omni-Wachovia
18  transaction, the monies flowed *from Omni to Wachovia* as consideration for the
19  purchase of the debt owed by MGA. The timing of the Omni-Wachovia
20  transaction in September 2008 was driven by a host of factors, most proximately
21  by Wachovia's decision to accelerate the outstanding debt obligation under the
22  Senior Bank Credit Facility.

23       Moreover, the source was not an "off-shore, non-operating" entity, as Mattel
24  repeatedly suggests in its application. Wachovia (defined to include it and its
25  syndicate of bank and other institutional lenders), the original source of the
26  funding, are all substantial financial institutions; Omni, the assignee of the loan, is
27  a California limited liability company. Mattel's paranoiac rhetoric regarding this
28  transaction and the source of the funding is unfounded.

-2-


EXHIBIT 29
PAGE 587

1    Under federal law, a non-party is entitled to intervene *as a matter of right*
2  when it claims an interest relating to the property or transaction that is the subject
3  of the action and is so situated that disposing of the action may as a practical
4  matter impair or impede its ability to protect its interest. A non-party may also
5  intervene, in the discretion of the court, when it has a claim that shares with the
6  main action a common question of law or fact.

7    Here, Omni has a secured interest in MGA's assets, including, *inter alia,*
8  MGA's inventory and accounts receivable, that is far greater and superior to any
9  alleged interest of unsecured creditors like Mattel. Mattel is asking this Court for
10  an extraordinary remedy, solely to suit its own litigation and competitive interests,
11  which if granted could well cripple MGA's operations and would certainly impair
12  the security interests of Omni and other creditors. Indeed, the proffered basis for
13  Mattel's opposition to Omni's application for leave to intervene -- that a debtor can
14  adequately represent the interests of its largest secured creditor -- speaks volumes
15  about Mattel's approach not only to this issue but also to its actual motivations in
16  making its request for a receiver.

17    For these reasons, Omni respectfully requests that the Court grant it leave to
18  intervene in this action for the purposes of challenging the appointment of a
19  receiver and related issues that could adversely affect Omni's security interests.

20

21  **II.    STATEMENT OF FACTS[1]**

22    On or about October 27, 2006, MGA entered into a Credit Agreement with
23  Wachovia Bank, National Association and a syndicate of other banks and

24

25  [1] In evaluating a motion to intervene, courts must accept as true all nonconclusory
26  allegations contained in the motion. *Southwest Center for Biological Diversity v.
Berg*, 268 F.3d 810, 819 (9th Cir. 2001); *Reich v. ABC/York-Estes Corp.*, 64 F.3d
27  316, 321 (7th Cir. 1995).

28

- 3 -

EXHIBIT 29
PAGE 588

1  institutional lenders (collectively, "Wachovia"), pursuant to which Wachovia

2  provided a senior revolving credit facility to MGA in an aggregate available

3  amount for borrowing up to $400 million, secured by a senior perfected security

4  interest in, *inter alia*, all of MGA's inventory and accounts receivable (the "Senior

5  Bank Credit Facility"). On July 21, 2008, Wachovia declared the Senior Bank

6  Credit Facility to be in default and accelerated the maturity of the outstanding debt

7  obligations owed to Wachovia by MGA, demanding full and immediate payment

8  of the entire unpaid $313,496,700 balance of the loans.

9      In response to Wachovia's accelerated loan payment demand, MGA

10  approached Neil Kadisha, a highly regarded businessman and philanthropist who is

11  currently the Managing Partner of a diversified investment firm, Omninet Capital,

12  LLC.[2] Mr. Kadisha and Omninet Capital, LLC have substantial experience

13  evaluating and investing in distressed debt and distressed companies. Mr. Kadisha

14  immediately commenced negotiations with Wachovia regarding a potential

15  purchase of the Senior Bank Credit Facility from Wachovia.

16      On or about July 29, 2008, Omninet Capital, LLC made an offer to acquire

17  the Senior Bank Credit Facility, including the outstanding debt obligations from

18  Wachovia for $109,723,845 (representing 35% of the $313,496,700 principal

19  amount of the debt obligations outstanding as of the acceleration date). After a

20  couple weeks of heavy negotiations, Wachovia agreed to sell and assign its interest

21  in all but $21,944,769 of the outstanding debt obligations under the Senior Bank

22  Credit Facility to Omni (the retained amount was then exchanged for unsecured

23  promissory notes issued by MGA to Wachovia). In order to fund the acquisition of

24

25  [2] Omni is loathe to address the gratuitous ad hominem attacks concerning Mr. Kadisha and an ongoing civil litigation matter in the papers filed by Mattel, which

26  are inaccurate, incomplete and irrelevant, but if the Court is at all concerned by those matters Omni is prepared to do so. Suffice it to say for now that the civil

27  litigation matter referred to by Mattel has not yet been finally resolved.

28

-4-

EXHIBIT 29
PAGE 589

1   the Senior Bank Credit Facility, Mr. Kadisha solicited various private investors and

2   formed a special purpose entity, Omni 808 Investors, LLC, a California limited

3   liability company ("Omni")[3]. The formation of a special purpose entity is very

4   common for these types of transactions and is neither suspicious nor improper.

5         On or about September 3, 2008, Omni and Wachovia entered into a written

6   Master Assignment and Exchange Agreement whereby Omni acquired all right,

7   title and interest in the debt obligations under the Senior Bank Credit Facility,

8   other than the $21,944,769 exchanged for the unsecured promissory notes issued

9   by MGA to Wachovia Bank, National Association and the other original lenders.

10  As a result of the agreement, Omni stepped into and presently stands, as successor-

11  in-interest, in the position of Wachovia under the Senior Bank Credit Facility and

12  has a senior perfected security interest in MGA's assets, including, *inter alia,*

13  MGA's inventory and accounts receivable. Omni's secured interest is superior to

14  that of any potential unsecured creditors, including Mattel.

15        Omni has a compelling interest in the financial health and stability of MGA

16  and its assets. If MGA fails, MGA's ability to repay the outstanding debt

17  obligation in excess of $300 million owed to Omni will certainly be imperiled.

18  The appointment of a receiver to "oversee and control all financial and business

19  aspects" of MGA, solely to satisfy Mattel's interests, would harm MGA's ability to

20  operate independently and efficiently and would infringe upon, or potential

21  foreclose, the interests of Omni and other creditors.

22

23

24

25

26  [3] Mattel erroneously refers to Omni 808 International, LLC, in its *ex parte*
27  application, which further demonstrates Mattel's confusion regarding the entities involved.

28

-5-

EXHIBIT 29
PAGE 590

1    **III.    LEGAL ARGUMENT**

2        **A.    Omni is Entitled to Intervene as a Matter of Right for the
3        Limited Purpose of Protecting Omni's Status as a Secured
         Creditor**

4        Omni is entitled to intervene as a matter of right pursuant to Fed. R. Civ. P.

5    24(a). Rule 24(a) provides that a court must permit a non-party to intervene who

6    "claims an interest relating to the property or transaction that is the subject of the

7    action and is so situated that disposing of the action may as a practical matter

8    impair or impede the movant's ability to protect its interest . . . ." *See also,*

9    *Lockyer v. U.S.*, 450 F.3d 436, 440 (9th Cir. 2006). The Ninth Circuit construes

10   Rule 24 liberally in favor of applicants for intervention. *Arakaki v. Cayetano,* 324

11   F.3d 1078, 1083 (9th Cir. 2003) (citing *Donnelly v. Glickman,* 159 F.3d 405, 409

12   (9th Cir. 1998)). The inquiry required under Rule 24(a)(2) is a flexible one, and a

13   practical analysis of the facts and circumstances of each case is appropriate.

14   *Donnelly,* 159 F.3d at 409. "In determining whether intervention is appropriate,

15   we are guided primarily by practical and equitable considerations. We generally

16   interpret the requirements broadly in favor of intervention." *Id.*

17       When a non-party claims an interest relating to the subject property or

18   transaction of the action, courts generally require four factors: (1) a timely

19   application; (2) the applicant has a "significantly protectable" interest relating to

20   the property or transaction involved in the pending lawsuit; (3) the disposition of

21   the lawsuit may adversely affect applicant's interest unless intervention is allowed;

22   and (4) the existing parties may not adequately represent the would-be intervenor's

23   interest. *Arakaki,* 324 F.3d at 1083; *League of United Latin American Citizens v.*

24   *Wilson,* 131 F.3d 1297, 1302 (9th Cir. 1997).

25       Additionally, a district court has the discretion to grant a non-party limited

26   intervention for certain issues or purposes. *See Stringfellow v. Concerned*

27   *Neighbors in Action,* 480 U.S. 370, 378 (1987); *Donnelly v. Glickman,* 159 F.3d

28   405, 409 (9th Cir. 1998); *Beckman Indus. Inc. v. International Ins. Co.,* 966 F.2d

- 6 -

EXHIBIT 29
PAGE 59

1   470, 473 (9th Cir. 1992). "A nonparty may have a sufficient interest for some

2   issues in a case but not others, and the court may limit intervention accordingly."

3   *U.S. v. South Florida Water Dist.*, 922 F.2d 704, 707 (11th Cir. 1991); *San Juan*

4   *County v. U.S.*, 503 F.3d 1163, 1203 (10th Cir. 2007).

5          1.     Omni's Application Is Timely.

6          Courts generally consider the following factors relevant to the issue of

7   timeliness: (1) the stage of the proceedings at the time the applicant seeks to

8   intervene; (2) the prejudice to the existing parties from applicant's delay in seeking

9   leave to intervene; and (3) any reason for and the length of delay in seeking

10  intervention. *United States v. State of Washington*, 86 F.3d 1499, 1502 (9th Cir.

11  1996); *Engra, Inc. v. Gabel*, 958 F.2d 643, 644 (5th Cir. 1992).

12         Here, Omni's application is timely. On or about January 9, 2009, Mattel

13  served a subpoena on Omni requesting the production of documents relating to

14  Omni's formation, governance, finances, business relationships and transactions.

15  Omni also recently learned that Mattel filed an *ex parte* application for the

16  appointment of a receiver at MGA. The Court has yet to decide the pending

17  request for the appointment of a receiver and Omni has acted without delay.

18         2.     Omni Has a Significantly Protectable Interest in
19                the Receivership Issues Involved in the Pending
                  Litigation.

20         "[W]hether an applicant for intervention demonstrates sufficient interest in

21  an action is a practical, threshold inquiry. No specific legal or equitable interest

22  need be established." *Southwest Center for Biological Diversity v. Berg*, 268 F.3d

23  810, 818 (9th Cir. 2001) (quoting *Greene v. United States*, 996 F.2d 973, 976 (9th

24  Cir. 1993)); *see also Forest Conservation Council v. United States Forest Serv.*, 66

25  F.3d 1489, 1493 (9th Cir. 1995). "It is generally enough that the interest [asserted]

26  is protectable under some law, and that there is a relationship between the legally

27  protected interest and the claims at issue." *Southwest Center for Biological*

28  *Diversity*, 268 F.3d at 818 (quoting *Sierra Club v. EPA*, 995 F.2d 1478, 1484 (9th

-7-

EXHIBIT 29
PAGE 692

1  Cir. 1993)). *See, e.g., NL Indus. v. Secretary of Interior*, 777 F.2d 433, 435 (9th

2  Cir. 1985) (corporate property owner that held unpatented mining claim on

3  particular property permitted to intervene in dispute over other mining claims on

4  that property). An intervenor's interest must be "significantly protectable such that

5  it will be directly and immediately affected by the litigation." *Werbungs und*

6  *Commerz Union Austalt v. Collectors' Guild, Ltd.*, 792 F. Supp. 870, 874

7  (S.D.N.Y. 1991) (court allows intervention by investor in one party when investor

8  had secured appeal bond and owned collateral securing letter of credit).

9      Here, Omni is the largest secured creditor of MGA, with a superior interest

10 in MGA's assets to any unsecured creditors including Mattel. Omni's interest is

11 directly related to issues raised by Mattel in its *ex parte* application for the

12 appointment of a receiver. Therefore, Mattel has a significantly protectable

13 interest relating to the property or transaction which is the subject of this action.

14
15
          3.    The Appointment of a Receiver May Impair or
                Impede Omni's Ability to Protect Its Interests.

16      In order to show that the disposition of the action may impair or impede the

17 ability to protect a non-party's interest, the non-party need only show a "practical"

18 impairment, "not whether the decision itself binds them." *Yniguez v. Arizona,* 939

19 F.2d 727, 735 (9th Cir. 1991). Courts consistently allow creditors to intervene "of

20 right" where a receiver has been appointed and taken control of a debtor's assets.

21 The rationale is that the first creditor's action may effectively foreclose the

22 interests of other creditors. *See Sierra Club v. U.S.*, 995 F.2d 1478, 1486 (9th Cir.

23 1993); *SEC v. Flight Transp. Corp.*, 699 F.2d 943, 947 (8th Cir. 1983); *Mountain*

24 *Top Condominium v. Dave Stabbert Master Builder*, 72 F.3d 361, 366-367 (3rd

25 Cir. 1995).

26      Here, the appointment of a receiver to "oversee and control all financial and

27 business aspects" of MGA, as Mattel proposes, could cripple MGA's business and

28 impair Omni's ability to protect its senior perfected security interest in its

- 8 -

EXHIBIT 29
PAGE 093

1  collateral, which includes MGA's inventory and accounts receivable and

2  ultimately in MGA's ability to repay its outstanding secured debt obligation to

3  Omni of in excess of $300 million. The financial and business affairs of MGA are

4  best handled independently by businessmen who understand its products and its

5  industry.[4]

### 4. The Existing Parties May Not Adequately Represent Omni's Interest.

8       In order to demonstrate the inadequacy of the existing parties to protect its

9  interest, the applicant's burden is minimal and is satisfied so long as the applicant

10  shows that representation by existing parties *"may be"* inadequate. *Trbovich v.*

11  *United Mine Workers*, 404 U.S. 528, 538 n.10 (1972). The Ninth Circuit considers

12  three factors in determining the adequacy of representation: "(1) whether the

13  interest of a present party is such that it will undoubtedly make all of a proposed

14  intervenor's arguments; (2) whether the present party is capable and willing to

15  make such arguments; and (3) whether a proposed intervenor would offer any

16  necessary elements to the proceeding that other parties would neglect." *Arakaki*,

17  324 F.3d at 1086 (citing *California v. Tahoe Reg'l Planning Agency*, 792 F.2d 775,

18  778 (9th Cir.1986)). "The most important factor in determining the adequacy of

19  representation is how the applicant's interest compares with the interest of existing

20  parties." *Id.*

21

22  [4] Courts are reluctant to appoint receivers to solvent corporations. *See, e.g.,*
23  *DeBoer Structures, Inc. v. Shaffer Tent & Awning Co.*, 187 F. Supp. 910, 925 (S.D.
    Ohio 2001) (declining to appoint receiver despite other facts in favor of doing so
24  where corporation was solvent and productive); *Meyer Jewelry Co. v. Meyer
    Holdings, Inc.*, 906 F. Supp. 428, 434 (E.D. Mich. 1995) ("The deleterious effects
25  of a receivership would result in more harm than good in this case."); *Rumbaugh v.
    Beck*, 491 F. Supp. 511, 521 (E.D. Pa. 1980) (finding that because a corporation
26  was presently operating in a successful manner, appointment of a receiver would
    "be potentially more harmful than if one were not implanted"); *Saluck v. Rosner,*
27  1999 WL 46620, at *2 (E.D. Pa. Jan. 6, 1999) ("the appointment of a receivership
    of a solvent corporation is a drastic remedy.").

28

-9-

EXHIBIT 29
PAGE 594

1    Here, the interests of the present parties are not such that they will
2    undoubtedly make all of Omni's arguments in opposition to the appointment of a
3    receiver. Obviously Mattel's interests are directly at odds with Omni's interests.
4    Further, although MGA also opposes the appointment of a receiver, there is no
5    reason to believe that it can or will make all of Omni's arguments on its behalf.
6    Omni's primary interest is in MGA's ability to repay its secured debt obligation of
7    in excess $300 million owed to Omni. Moreover, Omni is in the best position to
8    describe the facts and circumstances surrounding its purchase of the Senior Bank
9    Credit Facility from Wachovia.

10    According to Mattel's counsel, it is Mattel's view that MGA as debtor can
11    adequately protect the interests of its largest secured creditor. Mattel's position is
12    nonsensical as the financial interests of a debtor and secured creditor are, on their
13    face, aligned differently. Therefore, the existing parties may not adequately
14    represent Omni's interest regarding the appointment of a receiver and other issues
15    relating to Omni's status as a secured creditor.

16
**B.    In the Alternative, This Court Should Grant Omni**
17         **Permissive Intervention**

18    Even if Omni were not entitled to intervene as a matter of right, the Court
19    should exercise its discretion and permit its intervention in this matter. Under
20    Federal Rule of Civil Procedure 24(b)(2), permissive intervention should be
21    granted whenever the "applicant's claim . . . and the main action have a question of
22    law or fact in common," and when the intervention would not "unduly delay or
23    prejudice the adjudication of the rights of the original parties." Fed. R. Civ. P.
24    24(b)(2). The existence of a "common question" is liberally construed. *Kootenai*
25    *Tribe v. Veneman*, 313 F.3d 1094, 1108-1109 (9th Cir. 2002). A proposed
26    intervenor under Rule 24(b)(2) "need not demonstrate a 'significantly protectable'
27    interest relating to the property or transaction which is the subject of the action.'"
28    *Defenders of Wildlife*, 2005 WL 3260986, at *2 (citing *Kootenai Tribe of Idaho v.*

- 10 -

EXHIBIT 29
PAGE 596

1  |  *Veneman*, 313 F.3d 1094, 1108-09 (9th Cir. 2002)).  Omni meets each of these

2  |  requirements.

3  |  Here, as explained above, there are common questions of law and fact

4  |  between Omni's claims and the issues raised in Mattel's application to appoint a

5  |  receiver.  Moreover, Omni's participation will not unduly delay or prejudice the

6  |  adjudication of the rights of the original parties.  Omni's participation will be

7  |  limited to challenging Mattel's request to appoint a receiver and protecting its

8  |  interests as a secured creditor.  The burden is on the parties to plead and prove any

9  |  alleged prejudice.  *Venegas v. Skaggs*, 867 F.2d 527, 530 (9th Cir. 1989).

10 |

11 |  **IV.   CONCLUSION**

12 |  For the foregoing reasons, Omni respectfully requests the Court grant this

13 |  application and authorize it to intervene for the limited purpose of responding to

14 |  Mattel's request for the appointment of a receiver for MGA and all other issues

15 |  related to the proposed receiver or Omni's status as a secured creditor of MGA.

16 |

17 |  DATED:  February 3, 2009          Bingham McCutchen LLP

18 |

19 |

20 |                                    By: _____
                                        Todd E. Gordinier

21 |                                        Attorneys for Non-party
                                        Omni 808 Investors, LLC

22 |

23 |

24 |

25 |

26 |

27 |

28 |

- 11 -

EXHIBIT 29
PAGE 590

# EXHIBIT 30

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES -- GENERAL

Case No.   CV 04-09049 SGL(RNBx)                    Date: April 27, 2009
Title:     MATTEL, INC. V. MGA ENTERTAINMENT, INC., et al.
=================================================================
PRESENT:   HONORABLE STEPHEN G. LARSON, U.S. DISTRICT JUDGE

      Cindy Sasse                              None Present
      Courtroom Deputy                         Court Reporter

ATTORNEYS PRESENT FOR                    ATTORNEYS PRESENT FOR
PLAINTIFFS:                              DEFENDANTS:

None Present                             None Present

PROCEEDINGS:   ORDER DENYING MATTEL'S MOTION FOR JUDGMENT AS A
                MATTER OF LAW (DOCKET #4498)

                ORDER GRANTING IN PART AND DENYING IN PART MGA'S
                MOTION FOR JUDGMENT AS A MATTER OF LAW (DOCKET
                #4496)

                ORDER AMENDING IN PART ORDER RE FINDING OF
                LIABILITY PURSUANT TO CAL. BUS. & PROFS. CODE § 17200
                (DOCKET #4441);

                ORDER GRANTING IN PART AND DENYING IN PART MGA'S
                MOTION FOR REMITTITUR (DOCKET #4495, #4523)

                ORDER LIFTING STAY ON PERMANENT INJUNCTION (#4443)

                ORDER FOR ACCOUNTING OF PROFITS OF
                BRATZ PRODUCTS

                ORDER REGARDING RETRIEVAL OF PREVIOUSLY LODGED

MINUTES FORM 90                                  Initials of Deputy Clerk __cls_____
CIVIL -- GEN                          1

EXHIBIT 30
PAGE 597

LAPTOP COMPUTER WITH PHASE 1A AND 1B TRIAL
TRANSCRIPT

ORDER REGARDING UNSEALING OF DOCUMENTS FILED
UNDER SEAL FROM MAY 28, 2008, THROUGH FEBRUARY 11,
2009

ORDER RE PHASED, UNDER SEAL RELEASE OF FORENSIC
AUDITOR'S REPORT TO COUNSEL AND PARTIES

ORDER GRANTING IN PART AND DENYING IN PART
MOTION TO INTERVENE (DOCKET #4761)

ORDER APPOINTING TEMPORARY RECEIVER

ORDER SETTING HEARING ON APPOINTMENT OF
PERMANENT RECEIVER

I. MATTEL'S MOTION FOR JUDGMENT AS A MATTER OF LAW
(DOCKET #4498)

A motion for judgment as a matter of law after trial is granted only when there is
not a "legally sufficient evidentiary basis [for a reasonable jury] to find for that party on
[an] issue." Pavao v. Pagay, 307 F.3d 915, 918 (9th Cir. 2002). Sufficient evidence is
"evidence adequate to support the jury's conclusion, even if it is also possible to draw a
contrary conclusion." Id.

Mattel, Inc. ("Mattel") moves for judgment as a matter of law on the issue of the
scope of infringement of the Bratz dolls. Specifically, Mattel argues that "[e]ach core
Bratz fashion doll sold by MGA infringes Mattel's copyrights." Motion at 4. Mattel
acknowledges that the judgment it seeks would alter neither the jury's damages award
nor the Court-awarded equitable relief; however, Mattel seeks this judgment as an
alternative basis for the relief it has already been awarded. Without ruling on the merits
of the argument, the Court declines to adopt this alternative basis because it is not
necessary to support the relief awarded to Mattel. The jury, in the Phase 1B verdict,
found that the Bratz dolls infringed Mattel's copyrights, but the scope of that
infringement was not explicitly found by the jury. Even if the Court were to grant the
relief sought by Mattel, the amount the jury awarded for copyright infringement, $10
million, would be unchanged. Moreover, the Court, sitting in equity, made an express
factual finding, set forth more fully in its December 3, 2008, Order that the core Bratz
fashion dolls infringed Mattel's copyrights. This portion of Mattel's motion is therefore
DENIED.

MINUTES FORM 90
CIVIL -- GEN                          2                    Initials of Deputy Clerk __cls_____

EXHIBIT 30
PAGE 598

In a similar fashion, Mattel seeks judgment as a matter of law on the issue that sculptor Margaret Leahy's contributions cannot, as a matter of law, support a claim of independent creation of the Bratz fashion doll sculpt, TX 1136A.[1] In Phase 1A of the trial, the jury found that the sculpt was "'conceived or reduced to practice' -- that is, created -- by Carter Bryant, alone or jointly with others," during his employment with Mattel. Phase 1A Verdict Form at 5. This finding, when viewed in conjunction with the Court's summary judgment order, was sufficient to place the sculpt within the assignment clause of the Inventions Agreement which, in turn, conferred the rights to the sculpt to Mattel. Therefore, as with the previous issue, this judgment is sought merely as an alternative basis for the relief Mattel has been awarded, which the Court, without deciding the merits, declines to adopt. This portion of Mattel's motion is therefore similarly **DENIED.**

Finally, Mattel seeks judgment as a matter of law that both Isaac Larian and MGA HK engaged in acts of fraudulent concealment. As to Isaac Larian, although there was evidence suggesting that he engaged in a cover-up as to *who* created Bratz (and later, as to *when* Bratz was created), he testified at trial that he did nothing to keep Carter Bryant's *role* in the creation of Bratz hidden. Even in the face of evidence to the contrary, the jury could have believed him; thus, judgment as a matter of law on this point is not appropriate. Credibility determinations are for the jury, and the jury could have made this credibility determination in favor of Isaac Larian. Winarto v. Toshiba America Electronics Components, Inc., 274 F.3d 1276, 1294 (9th Cir. 2001). As for MGA HK, Mattel did not cite any evidence that suggests that MGA HK should be found to have fraudulently concealed the basis for Mattel's claims, and therefore judgment as a matter of law is not appropriate. This portion of Mattel's motion is therefore also **DENIED.**

For the reasons set forth above, Mattel's Motion for Judgment as a Matter of Law is **DENIED** in its entirety.

## II. MGA'S MOTION FOR JUDGMENT AS A MATTER OF LAW (DOCKET #4496)

The MGA parties[2] seek judgment as a matter of law that federal copyright law

---

[1] For their part, the MGA parties seek judgment as a matter of law of the mirror image of Mattel's claim; specifically, as discussed more fully below, the MGA parties seek judgment as a matter of law that Margaret Leahy's contribution to the creation of the sculpt amounted to independent creation.

[2] The Court herein refers to all three MGA parties collectively and individually as follows: MGA Entertainment, Inc., is referred to as "MGAE." MGA Entertainment (HK) Limited (also referred to in the record as "MGA Hong Kong") is referred to herein as "MGA HK." All three defendants, Isaac Larian, MGAE, and MGA HK are collectively referred to as "the MGA parties." When necessary to distinguish them further, the subset of entity defendants, MGAE and MGA HK, are collectively referred to as "the MGA entities."

Initials of Deputy Clerk __cls_____

EXHIBIT 30
PAGE 599

preempts Mattel's claims for aiding and abetting breach of fiduciary duty and the duty of
loyalty. Relatedly, they also seek judgment as a matter of law that the damages
awarded as to the state-law claims are precluded as preempted because they represent
damages awarded under the theory of disgorgement, which was also awarded as part
of copyright damages. The Court has previously rejected the argument that copyright
law preempts the two aiding and abetting claims, and the Court leaves undisturbed its
previous holding on this issue. As for the related argument regarding damages, to
accept the MGA parties' argument, the Court would have to reject the current, firmly
established standard for determining if a state-law claim is preempted in favor of a new
standard that would find preemption any time the relief sought by the state-law claim is
also redressable by a copyright claim. This Court must follow the enunciated standard
for copyright law preemption, and it therefore rejects the MGA parties' argument
regarding this issue. This portion of the motion is **DENIED.**

The MGA parties seek judgment as a matter of law that Mattel's claims for aiding
and abetting breach of fiduciary duty and the duty of loyalty is preempted by the
California Uniform Trade Secrets Act. This issue was not raised in the parties' pretrial
conference order and, accordingly, was waived. See e.g., El-Hakem v. BJY Inc., 415
F.3d 1068, 1077 (9th Cir. 2005). This portion of the motion is **DENIED.**

The MGA parties seek judgment as a matter of law that Mattel failed to prove its
damages as to each of its state-law claims. Mattel proceeded on a theory of recovery
that sought disgorgement of the MGA parties' profits rather than another measure of
damages; there was ample evidence presented by both sides regarding the MGA
parties' profits. The Court has previously rejected, and does not now revisit, the MGA
parties' contention that the proper measure of damages for aiding and abetting Carter
Bryant's breaches of fiduciary duty and the duty of loyalty should be measured by
Carter Bryant's profits, rather than the MGA parties' profits. As for the conversion claim,
as set forth infra, the Court has remitted the monetary damages awarded by the jury in
favor of the equitable relief awarded by the Court in the form of return of the original
drawings.[3] This portion of the motion is **DENIED.**

The MGA parties seek judgment as a matter of law that Mattel failed to prove that
the MGA parties had actual knowledge of Carter Bryant's fiduciary duty or breach
thereof. Admittedly, there is an absence of direct evidence, such as an admission by
Isaac Larian, that any of the MGA parties had actual knowledge of Carter Bryant's
fiduciary duty or breach thereof. But the indirect evidence relevant to this issue
admitted at trial clearly supports the jury's verdict that both MGAE and Isaac Larian had
an understanding that Carter Bryant had such an obligation as well as the parameters of
such an obligation. This portion of the motion is **DENIED.**

---

[3] Those original drawings are currently in the custody of the Court as part of the Court record.

Initials of Deputy Clerk __cls_____

EXHIBIT _30_
PAGE _600_

The MGA parties seek judgment as a matter of law as to MGA HK's liability for unfair competition. The Court's summary judgment Order held that Mattel had raised a triable issue of fact as to whether the MGA parties tortiously interfered with Bryant and Mattel's contractual relationship and whether they engaged in commercial bribery. However, the tortious interference claim was not asserted against MGA HK, and there was no evidence presented at trial to support a statutory unfair competition claim against MGA HK for commercial bribery. See Court's June 4, 2009, Final Pretrial Conference Order. Accordingly, the Court **GRANTS** the motion on this issue, and the Court **ORDERS** that the following **AMENDMENTS** be made to its Order Granting Mattel's Motion for Finding Liability and Injunctive Relief Pursuant to Cal. Bus. & Profs. Code § 17200, filed December 3, 2008 (docket #4441):

- At page 1, line 6: Delete "GRANTS" and substitute "GRANTS IN PART AND DENIES IN PART"

- At page 3, line 7: Delete "the MGA Defendants" and substitute "MGA and Larian"

The MGA parties seek judgment as a matter of law that Mattel is not entitled to base any claims on ownership to the name "Bratz." To the extent that the MGA parties' argument is based on the construction of the Inventions Agreement, it was not raised in the Rule 50(a) motion for judgment as a matter of law and, therefore, may not be raised for the first time in a Rule 50(b) motion for judgment as a matter of law.[4] The Court finds wavier.

In any event, the argument fails on its merits. The name "Bratz," which the jury found Carter Bryant conceived of during the period of his employment with Mattel, is within the scope of the assignment clause of the Inventions Agreement. California law allows the assignment of an idea; thus, the name "Bratz" is, by virtue of the Inventions Agreement, the Court's summary judgment order construing that Agreement, and the jury's finding regarding the origin of the name, Mattel's property (even if it was not a proper trademark at the time it was conveyed and even though it is not subject to being copyrighted). This portion of the motion is **DENIED**.

The MGA parties seek judgment as a matter of law that copyright infringement is limited to the first-generation Bratz dolls. Essentially, the MGA parties seek a ruling that no reasonable jury could have found that any Bratz dolls, other than the first-generation

---

[4] The Court rejects the MGA parties' contention that this issue was raised in the Rule 50(a) motion and that the Rule 50(b) motion merely expands upon the argument. The MGA parties' point in the Rule 50(a) motion was that there was a lack of intellectual property protection for the name Bratz (because it was not a valid trademark because it had not ever been used in commerce and because it could not be copyrighted); conversely, their point here is that the name "Bratz" is not within the scope of the Inventions Agreement.

Initials of Deputy Clerk __cls_____

EXHIBIT _30_
PAGE _001_

Bratz dolls, infringe Mattel's copyrights. The Court has already found that this is not the case; specifically, the Court has found, for the reasons set forth in its December 3, 2008, Order, that hundreds of Bratz female fashion dolls infringe Mattel's copyrights. This portion of the motion is **DENIED.**

The MGA parties seek judgment as a matter of law that Bryant was not an author of the Bratz sculpt. The Court previously observed, at trial, that this is an affirmative defense that was not asserted and was therefore waived. Moreover, this issue was not raised in the pretrial conference order; thus, it was waived for that reason as well. Furthermore, it was not raised in the MGA parties' Rule 50(a) motion, and therefore may not be raised for the first time in the Rule 50(b) motion.

In fact, this issue was not raised until ***after*** the jury's verdict in Phase 1A, in which the jury determined that Bryant created the sculpt (alone, or jointly with others). Recognizing this fact as a potential impediment to the relief they now seek, the MGA parties contend that in Phase 1A, the jury was not instructed on how to determine – and thus its express factual finding does not address – authorship as a matter of copyright law. Nevertheless, the Phase 1A verdict established the jury's finding that the sculpt was "'conceived or reduced to practice' – that is, created – by Carter Bryant, alone or jointly with others," during his employment with Mattel. Phase 1A Verdict Form at 5. This finding, when viewed in conjunction with the Court's summary judgment order, was sufficient to place the sculpt within the assignment clause of the Inventions Agreement which, in turn, conferred the rights to the sculpt to Mattel.

In any event, this argument also fails on its merits. A reasonable jury could have readily found that Carter Bryant was the author of the sculpt based on Paula Garcia's testimony that Margaret Leahy was tasked with creating the three-dimensional object equivalent of Carter Bryant's two-dimensional drawings. Trial Tr. at 800. When asked if she looked back to Carter Bryant's two-dimensional drawings during her review of the sculpt, Ms. Garcia stated that it was possible (although she had no specific recollection of doing so), "because the exercise was to create a 3D version of those 2D drawings, it was very likely that those drawings were there to then compare its 3D version with those relationships." Id.; see also Trial Tr. at 797 (Garcia's testimony as to the purpose of the sculpt, which was to determine how the "2D image" would "translate" to "3D"). This final portion of the motion is therefore **DENIED.**

As set forth herein, the Court **GRANTS** that portion of the MGA parties' Motion for Judgment as a matter of law that challenges the Court's finding of a violation of §§ 17200 et seq. on the part of MGA HK. The Court **DENIES** the remainder of the MGA parties' Motion for Judgment as a matter of law.

MINUTES FORM 90
CIVIL -- GEN

6

Initials of Deputy Clerk __cls_____

EXHIBIT  30
PAGE   402

### III. MGA'S MOTION FOR REMITTITUR
### (DOCKET #4495, #4523)

On its face, the jury's Phase 1 verdict awards Mattel $100,031,500.00. The jury verdict was a round $100 million (allocated among a total of four claims and three defendants) except for $31,500, which was awarded to Mattel as damages for conversion of the original Bratz drawings. The.MGA parties seek remittitur of this amount, arguing that, at most, Mattel should be awarded $20 million.

The Ninth Circuit enunciated its remittitur standard in 1982, when it noted that other circuits "consistently approve remitting the judgment to the maximum amount sustainable by the proof," before stating, "[w]e adopt this standard." D & S Redi-Mix v. Sierra Redi-Mix and Contracting Co., 692 F.2d 1245, 1249 (9th Cir. 1982). One of the cases cited with approval by the Redi-Mix court stated the standard in greater detail:

> The defendants' final contention is that the verdict was excessive, justifying a new trial or, in the alternative, a remittitur. Our review of this issue is limited to an examination of the plaintiff's injuries to determine whether the damage award is beyond the maximum possible award supported by the evidence in the record.

Keyes v. Lauga, 635 F.2d 330, 336 (5th Cir. 1981)

Since 1981, the Ninth Circuit has elaborated on this standard:

> Even a total inadequacy of proof on isolated elements of damages claims submitted to a jury will not undermine a resulting aggregated verdict which is nevertheless reasonable in light of the totality of the evidence. If we find that a jury's damages award exceeds the maximum amount sustainable by the probative evidence, we will not hesitate to order a remission of the excess by the plaintiff or, in the alternative, a new trial. . . . But where, as here, the jury's verdicts find substantial support in the record and lie within the range sustainable by the proof, we will not "play Monday morning quarterback" and supplant the jury's evaluation of the complex and conflicting evidence with our own.

Los Angeles Memorial Coliseum Com'n v. National Football League, 791 F.2d 1356,

Initials of Deputy Clerk __cls_____

EXHIBIT 30
PAGE 603

1366 (9th Cir. 1986) (internal citations omitted).[5] Cf. In re First Alliance Mortg. Co., 471 F.3d 977, 1001 (9th Cir. 2006) (using the above-quoted standard, but noting that before the Court was "the rare case in which it is sufficiently certain that the jury award was not based on proper consideration of the evidence" but was instead "based on improperly considered evidence, directly traceable to an error that was cured too little, too late"). Generally, courts are cautioned to "undertake only limited review of jury damages awards, in order to avoid encroaching upon the jury's proper function under the Constitution." Memorial Coliseum at 1365. The standard is exceptionally deferential to the jury's findings. If the damages award is supported by the evidence, it must be upheld even if the Court would have awarded a different amount of damages.

It is through this very narrowly focused lens that the Court must consider the present motion.

The MGA parties argue that Mattel had a singular theory of recovery – disgorgement of profits – and the amounts set forth by the jury as to each of the three state-law claims are duplicative. This is not a completely unappealing argument. For each of three state law claims – intentional interference with contractual relations, aiding and abetting breach of fiduciary duty, and aiding and abetting the duty of loyalty – the jury indicated that Mattel should be awarded $20 million as to MGAE and $10 million as to Isaac Larian. Totaled, this award is $90 million. Viewed pursuant to the MGA parties' theory, it would be the same $30 million awarded three times. Relatedly, the MGA parties contend that the copyright damages of $10 million (allocated among three defendants) are also duplicative of this $30 million, even though the number is not exactly the same.[6]

However, these explanations as to what the jury intended are purely speculative. The remittitur standard is exceptionally deferential to the jury's verdict, and the Court cannot disturb it based on speculation. The fact is the evidence not only supported a verdict of $100 million, this Court could have, under the remittitur standard, easily sustained a verdict many times this amount. The jury may have meant to award only a total of $30 million, or they may have simply decided they could all agree on a round figure of $100 million and then set about allocating that $100 million among multiple claims and defendants.

---

[5] A number of district court cases in the Ninth Circuit have recently applied this standard. Paul v. Asbury Automotive Group, LLC 2009 WL 188592, at *2 (D. Ore. 2009); Hall v. North American Indus. Services, Inc., 2008 WL 789895, at *2 (E.D. Cal. 2008); Lucky Break Wishbone Corp. v. Sears, Roebuck and Co., 2008 WL 4742206, at *4 (W.D. Wash. 2008); Eldorado Stone, LLC v. Renaissance Stone, Inc., 2007 WL 2403572, at *1 (S.D. Cal. 2007).

[6] The MGA parties' explanation for why these damages are duplicative even though they are not exactly the same is that the jury reduced the $30 million for apportionment based on the expert testimony of Professor Joachimsthaler, who testified that MGA's branding efforts could be responsible for approximately 50% to 70% of Bratz-related profits.

MINUTES FORM 90                                                    Initials of Deputy Clerk __cls_____
CIVIL -- GEN                          8

EXHIBIT 30
PAGE 404

In any event, the Court must return to the standard by which its conclusion is governed. Here, a district court **_must_** leave undisturbed jury's verdict that is "reasonable in light of the totality of the evidence," where the verdict does not "exceed[] the maximum amount sustainable by the probative evidence," and where the verdict "lie[s] within the range sustainable by the proof." The jury's verdict of $100 million is well within the range of possible awards based on the evidence of record, and therefore the Court must leave it undisturbed.

What the MGA parties are careful not to encroach upon, but what they in essence really seek, is an inquiry into what the jury **_meant_** by its verdict. As the Court and the parties to this case are aware, this inquiry is squarely within that which is prohibited by Fed. R. Evid. 606(b):

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith.

Id. Of course, if that inquiry were permissible in this instance, the results seem clear. Counsel for the MGA parties has not thus far denied that at least one juror, possibly more, stated to them that the jury in fact intended a $100 million award of damages.

Separately, the MGA parties contend that, of that $100 million award, the $1 million awarded as defendant MGA HK's liability for copyright infringement is duplicative because of certain consolidated financial reporting that occurs between MGAE and MGA HK. This evidence was not before the jury; the jury made its award based on the evidence before it. In any event, because the evidence presented supports the $1 million award made against MGA HK, under the Memorial Coliseum standard, it must be left undisturbed.

The MGA parties also contend that the damages against Mr. Larian for intentional interference with contractual relations is barred by the statute of limitations. The Court previously held that the intentional interference with contractual relations claim was not subject to the discovery rule, so unless Mattel was able to establish a sufficient period of fraudulent concealment, the interference claim would be time barred. June 2, 2008, Order at 3. In its Phase 1B verdict, the jury answered in the negative a specific interrogatory regarding whether a requisite period of fraudulent concealment could be attributed to Mr. Larian.[7] Therefore, a combination of the Court's June 2, 2008,

---

[7] Conversely, the jury answered the same question regarding MGAE affirmatively.

9

Initials of Deputy Clerk __cls_____

EXHIBIT _30_
PAGE _605_

Order and the jury's specific findings supports the MGA parties' position that the $10 million awarded as to Isaac Larian for the claim of intentional interference with contractual relations should be remitted because, in the absence of a fraudulent concealing finding by the jury, the claim is time barred.

However, at the hearing on this issue, counsel for Mattel suggested to the Court that its legal conclusion regarding the non-application of the discovery rule to tortious interference claims was in error and was, in fact, not an argument advanced by the parties in their summary judgment papers. Only very rarely will a court entertain an oral motion for reconsideration; rarer still are those occasions when such a motion is granted. However, such a result is warranted here where the Court's previous legal conclusion was simply wrong.

In their summary judgment motion, the MGA parties argued that a claim for "intentional interference with a contract accrues no later than the date of the contract's breach," implying – at least in the Court's view at the time of its review of the motion – that the discovery rule did not apply. See MGA SJ Mot. at 21 (docket #2572). The authority they cite supports the general rule regarding the accrual date of a tortious interference claim, but the authority does not support the Court's more specific conclusion that the discovery rule is inapplicable to claims for tortious interference. See Knoell v. Petrovich, 76 Cal.App.4th 164, 168 (1999) (refusing to apply the discovery rule to a tortious interference claim but doing so on the basis that the plaintiff made judicial admissions that were inconsistent with the application of the rule); Trembath v. Digardi, 43 Cal.App.3d 834, 836 (1974) (refusing to hold that the accrual of a claim for tortious interference claim as to an attorney-client contingency fee contract extended beyond the date of the breach to the suggested accrual date of the client's actual recovery, but not discussing the discovery rule); Forcier v. Microsoft Corp., 123 F.Supp.2d 520, 531 (N.D. Cal. 2000) (refusing to apply the discovery rule to a tortious interference claim because the facts presented in the case did not warrant it); Charles Lowe Co. v. Xomox Corp., 1999 WL 1293362 at *9 (N.D. Cal. 1999) (defining accrual of a tortious interference claim in relation to when damages are incurred and when a plaintiff may seek a legal remedy, but not discussing the discovery rule); Menefee v. Ostawari, 228 Cal.App.3d 239, 245 (1991) (discussing neither tortious interference claims nor the discovery rule).

At best, these cases represent examples of cases in which courts refuse to apply the discovery rule because the facts of the case do not warrant it; these cases do not stand for the broader conclusion reached by the Court in its prior order that the discovery rule is inapplicable to **all** tortious interference claims, regardless of the factual circumstances related to the claim's discovery. Cf. AmerUS Life Ins. Co. v. Bank of America, N.A., 143 Cal.App.4th 631, 639 (2006) (explicitly stating, regarding conversion claims, that "[t]o the extent our courts have recognized a 'discovery rule' exception to toll the statute, it has only been when the defendant in a conversion action fraudulently conceals the relevant facts or where the defendant fails to disclose such facts in

EXHIBIT 30
PAGE 1006

violation of his or her fiduciary duty to the plaintiff."). Indeed, by examining the facts of the case and discussing the discovery rule standard before concluding the rule does not apply in that instance, rather than noting a wholesale rejection of the application of the discovery rule to tortious interference claims, these courts have implicitly held that the discovery rule may, in certain undefined instances, permit otherwise time-barred claims to proceed.[8]

The Court has previously discussed at length why the discovery rule delayed the accrual of Mattel's claims in this case. That rationale applies with equal force to the intentional interference with contractual relations claim, which was timely asserted against Mr. Larian. Thus, it becomes irrelevant that the jury failed to attribute any fraudulent concealment to Mr. Larian, and the Court **DENIES** the motion on issue of timeliness of the tortious interference claim.

Finally, the MGA parties correctly contend that the damages awarded for conversion, totaling $31,500, should be remitted because the Court's declaratory judgment orders the MGA parties to return the drawings. The Court **GRANTS** the motion on this issue. However, the drawings shall remain in the Court's custody pending completion of Phase 2, pending appeal, and/or pending further order of this Court.

### IV. LIFTING STAY, AS MODIFIED AND SUPPLEMENTED, ON PERMANENT INJUNCTION (#4443)

Subject to the modification set forth in the Court's January 7, 2009, Order (docket #4657) (relating to distributors and retailers), the Court **VACATES** the stay on enforcement of its December 3, 2008, Order Granting Mattel, Inc.'s Motion for Permanent Injunction (docket #4443) ("Permanent Injunction Order"). Specifically, the Court **VACATES** the stay set forth in its Omnibus Order of December 3, 2008 (docket #4439) at 16 (which was imposed pending resolution of the three post-trial motions upon which the Court today rules); however, the Court leaves undisturbed the more limited stay set forth in the Court's January 7, 2009, Order, which relates to the purchase of Bratz products by retailers and distributors up to and including December 31, 2009. This limited stay is supplemented as set forth below.

---

[8] Had those courts not wished to make this implication, they could have, but did not, set forth a qualification that the court was assuming without deciding that the discovery rule could be applied to a tortious interference claim. Cf. Grisham v. Philip Morris U.S.A., Inc., 40 Cal.4th 623, 634 n.7 (2007) ("We assume for purposes of this discussion that the delayed discovery rule applies to unfair competition claims. We note that this point is currently not settled under California law . . . and we do not address it.") (citations omitted).

Initials of Deputy Clerk __cls_____

EXHIBIT 30
PAGE 407

The Permanent Injunction Order contemplates the Court's appointment of a
Special Master to resolve issues and disputes relating to the enforcement of the
Permanent Injunction Order.  At this point, in the absence of any such disputes, the
Court reserves such an appointment.

## V. ACCOUNTING OF BRATZ PROFITS SINCE AUGUST 26, 2008

In light of the Court's interpretation of what has been referred to in this litigation
as the Inventions Agreement (especially the Court's April 25, 2008, summary judgment
Order), in light of the two jury verdicts returned in this case on July 17, 2008, and on
August 26, 2008, in light of the Court's December 3, 2008, Orders regarding the parties'
equitable claims and equitable relief (especially the Court's Omnibus Order defining the
parameters of the scope of copyright infringement, the Court's Order Granting Mattel's
Motion for Permanent Injunction, and the Court's Order Granting Mattel's Motion for
Constructive Trust), and in light of this Order rejecting in all material respects the MGA
parties' post-trial challenges to the jury's findings, the Court's findings, and the Court's
legal and equitable rulings, the Court **ORDERS** the MGA entities to file with the Court,
and serve on all parties, no later than thirty days from the entry of this Order, a full
accounting of all profits that have resulted from all sales, occurring after August 26,
2008, of all products that fall within any of the Court's December 3, 2008, Orders
referenced above.

Within ten days of the filing of that accounting, the interested parties shall file a
joint status report setting forth the position of all interested parties on how they wish to
proceed on this issue.

## VI. ORDER RE RETRIEVAL OF JOINTLY LODGED LAPTOP COMPUTER

On September 11, 2008, for the Court's convenience and pursuant to its Order,
Mattel and the MGA parties jointly lodged a laptop computer from which the Court could
easily access the Phase 1A and 1B trial transcripts.  Counsel are advised to contact the
courtroom deputy clerk to arrange to retrieve the computer from the Court.

## VII. ORDER RE REVIEW OF UNDER SEAL FILINGS

On June 24, 2008, this Court ordered unsealed vast portions of the previously
sealed record in these consolidated cases.  That Order related only to documents filed
on or before May 27, 2008.  Certain specific documents, identified by the parties by
docket number and found by the Court to have good cause to remain sealed, were not
unsealed; similarly, certain Orders of this Court were not unsealed.

Counsel for all the parties are **ORDERED** to engage in a review and meet and
confer process to significantly narrow, if not eliminate the under seal nature of the filings

MINUTES FORM 90                                          Initials of Deputy Clerk __cls_____
CIVIL -- GEN                            12

EXHIBIT _30_
PAGE _608_

dated May 28, 2008, through the date of the lifting of the stay on Phase 2 discovery, which occurred on February 11, 2009. The parties are **ORDERED** to file with the Court, no later than forty-five days from the entry of this Order, a joint report that identifies by docket number and pinpoint citation all materials the parties agree should remain under seal, as well as the materials any party contends should remain under seal. In all instances, all materials that are contemplated by any party to be maintained by the Court under seal shall specify the reasons therefor.

Counsel should anticipate the narrowest possible information to be maintained under seal. For example, if there is good cause for maintaining under seal only a small portion of an attachment, counsel should anticipate that they may be required to e-file a public redacted version of that document.

## VIII. ORDER RE PHASED, UNDER SEAL RELEASE OF FORENSIC AUDITOR'S REPORT TO COUNSEL AND PARTIES

The Court received *in càmera* on April 23, 2009, and has since reviewed, the Forensic Auditor's Report. Concurrently served, under seal, on each parties' counsel of record, is a copy of the Forensic Auditor's preliminary report to the Court. The Court reserves at this time release of the supporting documentation that is attached to the report. This document is, until further Order of the Court, designated as a highly restricted attorney-eyes-only document. It may be reviewed, and its contents shared, only with *counsel of record* in this case and the Court-appointed Temporary Receiver appointed below; it may not be shared with either the parties or attorneys who are not counsel of record, including in-house counsel for the parties.

The parties are advised that they must file any objections on the basis of privilege within forty-eight hours of the entry of this Order. Failure to do may result in waiver of that privilege. After the expiration of this forty-eight hour period, the Court will make further Orders regarding the scope of the release of the report, including its attachments.

The Court understands that certain requested information has only recently been produced to the Forensic Auditor. For that reason, and because he has represented to the Court that certain analyses are ongoing, the Court continues the appointment of the Forensic Auditor until further Order of this Court.

## IX. ORDER GRANTING IN PART AND DENYING IN PART MOTION TO INTERVENE (DOCKET #4761)

Non-party Omni 808 Investors, LCC ("Omni 808"), has filed an ex parte application to intervene for the limited purposes of responding to Mattel's ex parte application for a receiver for MGA and to address "all other issues related to Omni's

MINUTES FORM 90
CIVIL -- GEN                                          13                    Initials of Deputy Clerk __cls_____ .

EXHIBIT 30
PAGE 609

status as a secured creditor of MGA." See Ex Parte Application to Intervene (docket
#4761) at 1. This motion was heard on February 11, 2009, at which time the Court
expressly held the motion in abeyance, along with the Mattel's ex parte application for
appointment of a receiver (docket #4540), which is addressed in the following section,
to allow the preparation of an audit report by the Court-appointed Forensic Auditor.

For the reasons set forth below, the Court **GRANTS IN PART AND DENIES IN
PART** the motion to intervene. The motion is granted to the extent it seeks intervention
to address the potential receivership issues; the motion is **HELD IN ABEYANCE** as to
the other, broader, but unspecified issues raised by Omni 808.

In the absence of a federal statute conferring a right to intervene, Rule 24(a)(2)
provides as follows:

> (a) Intervention of Right. On timely motion, the court
> must permit anyone to intervene who: . . . (2) claims an
> interest relating to the property or transaction that is the
> subject of the action, and is so situated that disposing of the
> action may as a practical matter impair or impede the
> movant's ability to protect its interest, unless existing parties
> adequately represent that interest.

Id. The Ninth Circuit has identified four separate elements that must be met in order to
qualify for intervention under this rule; specifically, a would-be intervenor must show the
following:

> (1) [I]t has a significant protectable interest relating to the
> property or transaction that is the subject of the action;
> (2) the disposition of the action may, as a practical matter,
> impair or impede the applicant's ability to protect its interest;
> (3) the application is timely; and (4) the existing parties may
> not adequately represent the applicant's interest.

United States Alisal Water Corp., 370 F.3d 915, 919 (9th Cir. 2004).

Omni 808 has met both the first and second elements. Where a party has a non-
speculative economic interest that is both concrete and related to the underlying subject
matter of the action, this element is met. Id. Mattel has correctly argued that, generally,
the issues regarding the collectability of a party's debt does not confer an interest on the
part of the creditor to justify intervention pursuant to Rule 24(a)(2). See id. (denying
intervention where the interest of the would-be intervenor was "several degrees
removed from the overriding public health and environmental policies that are the
backbone of this litigation."). However, this particular request for intervention is not one
that falls into this general category. Rather, it is an intervention for a very limited

Initials of Deputy Clerk __cls_____

EXHIBIT 30
PAGE 610

purpose -- to address the issue of the appointment of a receiver -- which is directly
related to debt collectability. By virtue of this case, Mattel claims a significant interest in
the assets of the MGA parties, including both money damages and rights to intellectual
property previously held by the MGA parties. Omni 808 now claims a superior interest
by virtue of a transaction that occurred after the jury returned its verdict as to ownership
of certain Bratz property. This interest is directly related to this litigation.

The second element is met because the relief sought by Mattel is to take control
of the Bratz assets, as that term is at length defined by its proposed order submitted
with its motion for appointment of a receiver. According to the testimony the Court
heard at trial, the Bratz assets are, at least historically, the most significant ones owned
by the MGA parties. Resolution of the disputes over the priority to these assets may
have to take into account the claimed superiority of Omni 808's interest in MGAE.

The third element is met, at least as to the receivership issue, which is the only
ground upon which the Court grants the motion to intervene at this time.

The fourth element has been described as presenting a "minimal burden."
Trbovich v. United Mine Workers of America, 404 U.S. 528, 538 n.10 (1972). It is
sufficient that the would-be intervenor shows that the representation "may be
inadequate." Id. Here, although both the MGA parties and Omni 808 may oppose in
general the appointment of a receiver, their positions could differ significantly because
MGAE is Omni 808's debtor. Because all that is required is a minimal showing, and
because Omni 808 has represented that it is an MGAE secured creditor, the Court finds
that the fourth element is met because of the vastly different roles played by MGAE and
Omni 808 vis-à-vis Mattel: One is an anticipated judgment debtor and the other is a
competing creditor.

Accordingly, the Court **GRANTS IN PART** the motion to intervene. Omni 808 is
a party to these consolidated cases for the limited purpose of addressing the
receivership issues. As such, it may file briefing in accordance with the schedule set
forth below, and it may appear and argue at the hearing set as specified below.

For just cause and in order to preserve the status quo and address the
allegations set forth in Mattel's application for the appointment of a receiver and in its
opposition to the present motion to intervene, the Court **ORDERS** that Omni 808 and its
counsel are restrained and enjoined, absent further order from this Court, from taking
any action to assert or enforce any purported rights against the MGA parties, including
but not limited to commencing an action against the MGA parties, taking any action to
foreclose on any collateral of the MGA parties, committing any act that interferes with
the Temporary Receiver's possession, control or use of the assets of the MGA entities,
or commencing or participating in any involuntary bankruptcy proceedings against any
MGA party pending further hearing on this matter on May 18, 2009, at 1:30 p.m. At that
hearing, the Court will consider whether, as counsel for Omni 808 represented to this

MINUTES FORM 90                                              Initials of Deputy Clerk __cls_____
CIVIL -- GEN                              15

EXHIBIT __30__
PAGE ____4ll____

Court, "Omni's purchase of the Senior Bank Credit Facility from Wachovia was a straightforward, arms-length business deal between non-parties to this action," or whether, as counsel for Mattel contends, the purchase was by entities formed for "the improper purpose of attempting to leapfrog over Mattel's claims and shield their assets from creditors and other rights-holders such as Mattel." Counsel for all parties, including the intervenors, are afforded leave to file a final position on this issue no later than May 14, 2009.

## X. ORDER RE APPOINTMENT OF TEMPORARY RECEIVER PENDING HEARING ON APPOINTMENT OF PERMANENT RECEIVER

Mattel has filed an application for the appointment of a receiver or for alternative relief. The Court has considered all papers submitted in support of the application and all opposition and reply papers thereto, the arguments of counsel at the hearing on the application, and the entire record in this action, and finds that just cause exists for the appointment of a Temporary Receiver purusant to L.R. 66.[9] Specifically, the Court finds as follows:

1.  The MGA entities, MGAE and MGA HK, are domiciled in California, have their principal place of business in the Central District of California, and have the majority of their assets located within the Central District of California;

2.  As the Court has previously found, the Bratz Assets (as defined below and in that order) are and have been the property of Mattel and not any of the MGA parties;

3.  Good cause exists to believe that the MGA parties, defined as MGAE, MGA HK, and Isaac Larian, and each of them, have engaged in, are engaging in, or are about to engage in transactions, acts, practices and courses of business that constitute fraudulent transfers of assets and violations of Mattel's ownership and other rights in and to the Bratz Brand and Bratz Assets, as defined below;

4.  Mattel has demonstrated the possibility of dissipation of assets and, from the entire record herein, it appears likely that the MGA parties, agents,

---

[9] The interim report of the Court-appointed Forensic Auditor recommends, for the reasons stated in the report, the appointment of a Receiver. Although the report is fully consistent with the findings made herein, the Court is not relying upon this recommendation, or the information set forth in the Forensic Auditor's report, in making these findings because the parties have not yet had an opportunity to object or otherwise respond to the report. The Court will consider the Forensic Auditor's report, and any objections or responses thereto, in determining whether or not to extend the appointment of the Temporary Receiver after the OSC hearing scheduled for May 18, 2009.

Initials of Deputy Clerk __cls_____

EXHIBIT 30
PAGE 412

and related entities (as defined below) are engaged in a course of conduct
with related parties designed to frustrate the Court's Orders, Findings and
Injunction herein;

5.    Good cause exists to believe that the MGA parties, agents, and related
      entities (as defined below) will continue to engage in such transactions,
      acts, practices, and courses of conduct and business to the immediate
      and irreparable loss and damage to Mattel, and contrary to the interests of
      justice, unless restrained and enjoined.

6.    It is appropriate and in the interests of justice that, pursuant to L.R. 66,
      that a Temporary Receiver be appointed and that an Order to Show
      Cause be issued why a permanent receiver should not be appointed.

Accordingly, the Court **ORDERS** as follows:

1.    Patrick A. Fraioli, Jr., is hereby appointed Temporary Receiver pursuant to
      L.R. 66 for the MGA entities to manage, supervise and oversee the assets
      of the MGA entities and the Bratz Brand and all Bratz Assets as these
      terms are defined herein (the "Temporary Receiver").

2.    The Temporary Receiver is appointed and is hereby directed and ordered
      to take full and exclusive control over, and to manage, preserve, and
      maximize the profits of, the MGA entities and the Bratz Brand and Bratz
      Assets as of the date hereof, including, without limitation, by locating,
      taking possession and ownership of, preserving, protecting, managing,
      supervising and overseeing the Bratz Assets.

3.    The Temporary Receiver is further directed to investigate the financial
      affairs of the MGA entities, and specifically investigate transfers and
      transactions made by the MGA entities from and after July 17, 2008.

4.    The Temporary Receiver shall have the power to take any and all action
      which may be necessary, appropriate or advisable to effectuate the
      purposes of the Temporary Receivership, including, but not limited to, the
      power to:

      a.    take custody, control and possession of the assets of the MGA
            entities and Bratz Assets in the possession, custody or control of
            the MGA entities, and/or any person or entity acting at their behest
            or direction or pursuant to their control, including, but not limited to,
            Isaac Larian and any successor-in-interest, subsidiary, corporate
            affiliate, agent, servant, attorney, accountant, officer, director,
            employee or other confederate (collectively, "the MGA parties,

EXHIBIT _30_
PAGE _l_l_3_

agents, and related entities") whether or not claimed to be encumbered by any security interest;

b.  preserve, hold and manage the assets of the MGA entities and the Bratz Assets and perform all acts necessary or advisable to preserve and/or enhance the value of these assets;

c.  exploit, license, distribute and sell the assets of the MGA entities and the Bratz Assets and products for profit, including, without limitation, by selling Bratz-branded dolls and other goods through appropriate channels of trade and distribution;

d.  market, promote and/or advertise the assets of the MGA entities and the Bratz Assets and/or Bratz-branded products;

e.  hire and employ individuals and entities as necessary or advisable to carry out the Temporary Receiver's mandate under this order;

f.  disburse funds as needed to satisfy and pay the reasonable and ordinary expenses incurred by the receivership, provided, however, that the Temporary Receiver shall maintain and shall not distribute, disburse or pay to anyone any receivership funds except as needed to satisfy the reasonable and ordinary expenses incurred by the receivership;

g.  open bank accounts in the name of the Temporary Receiver and transfer funds to, from and/or between those accounts;

h.  collect and maintain, and take all necessary or advisable actions to collect and maintain, monies owed by virtue of the sale, licensing, or other exploitation of the Bratz Assets;

i.  sell, compromise or assign debts for purposes of collection upon such terms and conditions as the Temporary Receiver deems necessary or advisable to carry out the Temporary Receiver's mandate under this order;

j.  enter into such agreements or contracts, and seek and enter into modifications to or amendments of such agreements and contracts, as the Temporary Receiver deems necessary or advisable to carry out the Temporary Receiver's mandate under this order;

k.  prepare, execute, acknowledge and deliver any and all deeds, assignments or other instruments necessary or advisable to carry

MINUTES FORM 90
CIVIL -- GEN

18

Initials of Deputy Clerk __cls_____

EXHIBIT 30
PAGE 414

out the Temporary Receiver's mandate under this Order;

l.     protect and preserve all Bratz-related intellectual property, including, without limitation, by commencing, prosecuting, and/or renewing intellectual property registrations and/or filings of any type and in any jurisdiction or forum;

m.    retain and/or engage the services of advisors and/or professionals, including, without limitation, accountants, attorneys, consultants and experts to assist the Temporary Receiver in carrying out the Temporary Receiver's mandate under this Order. The Temporary Receiver, without further order of this Court, is authorized to employ Ervin, Cohen & Jessup LLP, Dr. Lynne Phillips and the firm of Reinventures, Inc., to assist the Temporary Receiver in carrying out the Temporary Receiver's mandate under this Order;

n.    retain and/or engage the services of vendors, suppliers, distributors and other persons and/or entities to assist the Temporary Receiver in carrying out the Temporary Receiver's mandate under this Order;

o.    record this Order in any jurisdiction;

p.    the Temporary Receiver may for any lawful purpose use any federal or state taxpayer identification number previously used by the MGA parties, agents, and related entities;

q.    take all actions the Temporary Receiver deems necessary or advisable to marshal, collect, preserve or protect the Bratz Assets, including, without limitation, the institution of inquiries and investigations into the conduct of any of the MGA parties, agents, and related entities to uncover concealed Bratz Assets and/or fraudulent conveyances and/or attempts to dispose of Bratz Assets;

r.    institute, defend, intervene in and/or substitute as, and/or otherwise become a party to any or all actions in local, state, federal or foreign courts, including, without limitation, bankruptcy court, and any other proceedings before any governmental tribunal or arbitration panels, and take any and all necessary or advisable steps and measures in such actions as necessary or advisable to carry out the Temporary Receiver's mandate under this Order; provided, however, notwithstanding the foregoing, the MGA parties have all the requisite authority to assert all rights in this ongoing litigation between Mattel and the MGA parties in this action and the Temporary Receiver shall not assert a position in such litigation,

Initials of Deputy Clerk __cls_____

EXHIBIT 30
PAGE 615

except insofar as the Court orders or invites the Temporary
Receiver to do so; and,

s.     perform such further and additional acts as the Temporary Receiver
deems necessary or advisable to preserve the Bratz Assets,
maximizing the profits derived therefrom, ensure the successful
manufacture, delivery and marketing of Bratz-branded dolls and
products for the spring and fall 2009 seasons and otherwise carry
out the Temporary Receiver's mandate under this Order, including,
without limitation, any acts which could be lawfully carried out by a
corporation in the state of California.

5.     The Temporary Receiver, the Temporary Receiver's employees
and agents as well as any and all of the professionals employed by
the Temporary Receiver, are entitled to compensation for services
rendered at their normal hourly rates and reimbursement for all
expenses incurred by them on behalf of the receivership estate.
The Temporary Receiver shall serve written notice upon counsel of
record for the parties of the amount to be paid to each payee, with
an itemization of the services rendered or expenses incurred.
Upon service of said notice, the itemized fees and expenses may
be paid by the Temporary Receiver on an interim basis. In the
event that extraordinary services are performed by the Temporary
Receiver, he shall be entitled to extraordinary compensation
according to proof and approval of this Court. All interim fees paid
shall be subject to final review and approval by this Court. This
Court retains jurisdiction to award a greater or lesser amount as the
full, fair and final value of such services. In the event there are
insufficient funds in the receivership estate to fully compensate the
Temporary Receiver and his professionals, the Court retains
jurisdiction to allocate the costs and expenses of this receivership
against Mattel, as the party who sought the appointment of the
Temporary Receiver, and/or Isaac Larian, as the principal owner
and beneficiary of the MGA entities.

6.     Upon service of a copy of this Order, all banks, broker-dealers,
savings and loans, escrow agents, title companies, commodity
trading companies, or other financial institutions shall cooperate
with all reasonable requests of the Temporary Receiver regarding
implementation of this Order, including transferring funds at his
direction and producing records related to the assets of the MGA
entities.

7.     The Bratz Assets include all tangible or intangible assets, including,

MINUTES FORM 90                                    Initials of Deputy Clerk __cls_____
CIVIL -- GEN                          20

EXHIBIT  30
PAGE  416

without limitation, all intellectual property necessary or materially useful for the design, manufacture, marketing, distribution and sale of any Bratz doll or other Bratz-branded product in the possession, custody or control (whether or not claimed to be encumbered by any security interest) of any of the MGA parties, agents, and related entities. The Bratz Assets include, without limitation:

a.   All Bratz-related intellectual property rights, including, without limitation, copyrights (whether or not registered); copyright registrations; moral rights; design rights; patents (issued and pending); service marks; trademarks; trade dress; designs; slogans; characters; product packaging in any medium; product names; product illustrations; product designs; product concepts; conceptual drawings; engineering drawings; engineering specifications; processes; methods; trade secrets; know-how; product ideas; prototypes; line extensions; domain names; marketing and advertising materials; commercials; style guides; theme songs; soundtracks; scripts; screenplays; computer programming; digital and internet rights; video games; theatrical, television, video and DVD rights and masters; and rights in future technologies.

b.   All Bratz-related tooling for all past, current and future lines, including without limitation tools, tooling, in process tools, molds, sculptures, models, dies, and mock-ups, as well as other Bratz-related tangible items.

c.   All Bratz-related marketing and sales assets for all past, current and future lines, including, without limitation, consumer lists, marketing plans, account plans, focus group studies, marketing databases, and other consumer and marketing research.

d.   All Bratz-related records, including, without limitation, contracts, manufacturing records, inventory records and data, sales records and data, product testing data and records, vendor list and records, customer communications, and invoices and purchase orders.

e.   All Bratz-related contracts and agreements, including, without limitation, assignments, work-for-hire agreements and licensing agreements.

f.   All other Bratz-related rights, including, without limitation, distribution rights, licensing rights, exploitation rights, accounts receivable, and all choses in action relating to Bratz or the Bratz

MINUTES FORM 90
CIVIL -- GEN

21

Initials of Deputy Clerk __cls_____

EXHIBIT 30
PAGE 617

brand.

g.   All Bratz-related items referenced at Paragraph 3 and Paragraph 8
     (at lines 15-19) of the Court's Order granting Mattel's Motion for
     Permanent Injunction (docket #4443).

8.   The Temporary Receiver shall hereby be vested with, and is authorized,
     directed and empowered to exercise, all of the rights, powers or
     authorizations of the MGA entities, their officers, directors, general
     partners or persons who exercise similar powers and perform similar
     duties, including without limitation the sole authority and power to file or
     cause to be filed any suit or action in any court or arbitration tribunal other
     than this court, and filing, or causing to be filed, a petition for relief under
     the United States Bankruptcy Code, 11 U.S.C. § 101 et seq. for the MGA
     entities, their officers, agents, employees, representatives, directors,
     successors-in-interest, attorneys in fact and all persons acting in concert
     or participating with them are hereby divested of, restrained, enjoined, and
     barred from exercising, any of the rights, powers or authorities vested
     herein in the Temporary Receiver, including but not limited to filing, or
     causing to be filed, any suit or action in any court or arbitration tribunal
     other than this court, and/or filing, or causing to be filed, a petition for relief
     under the United States Bankruptcy Code, 11 U.S.C. § 101 et seq. for the
     MGA entities, except as otherwise specified herein or by further order of
     this Court.

9.   As set forth above, the Court leaves undisturbed the stay set forth in the
     Court's January 7, 2009, Order.  Moreover, the stay is hereby
     supplemented (a) to enable the Temporary Receiver to take the actions
     specified herein, and (b) to permit retailers who receive Bratz products
     pursuant to the authority of the Temporary Receiver, and who pay the
     Temporary Receiver monies due and owing for such Bratz products, to not
     remove such products from the shelves until January 10, 2010, at which
     time the mandatory provisions of Paragraphs 4, 6 and 7 of the Court's
     December 3, 2008, Order granting Mattel's Motion for Permanent
     Injunction (docket #4443) shall become effective as to such retailers.  The
     supplemental stay provisions shall not eliminate, alter or amend the
     obligations of any retailer, distributor, seller or other person or entity,
     including, without limitation, the MGA parties, who do not meet the
     foregoing requirements, to earlier recall or earlier obtain the recall of Bratz
     products as required by the mandatory provisions of Paragraphs 4, 6 and
     7 the Court's Order granting Mattel's Motion for Permanent Injunction
     (docket #4443).  The supplemental stay provisions shall not apply to
     permit, enable or authorize enjoined conduct by any enjoined party,
     except as to actions taken by the Temporary Receiver and/or any

MINUTES FORM 90                                              Initials of Deputy Clerk __cls_____
CIVIL -- GEN                          22

EXHIBIT   30
PAGE    418

authorized agents working for and under the auspices of the Temporary
Receiver pursuant to the terms of this Order.

10.    Additional Provisions.

    a.    In the event that any person or entity or fails to refuses to deliver or
          transfer any of the assets of the MGA entities or Bratz Assets or
          otherwise fails to comply with any provision of this Order, the
          Temporary Receiver is instructed to file ex parte an affidavit setting
          forth the failures.  Upon the filing of such affidavit, the Court may
          authorize repossession or sequestration or other equitable relief as
          requested by Temporary Receiver.

    b.    The Temporary Receiver shall maintain and shall not disburse,
          distribute or pay anyone any receivership funds or proceeds earned
          from exploitation of Bratz-branded dolls and products except as
          needed to satisfy the reasonable and ordinary cost and expenses
          incurred by the receivership.

    c.    The Temporary Receiver shall have the status of officers and
          agents of this Court, and as such shall be vested with the same
          immunities as vested with this Court.  Neither the Temporary
          Receiver nor any person or entity acting at the direction of the
          Court or pursuant to agreements with the Temporary Receiver
          (whether employees, vendors, contractors or otherwise) may be
          held liable to the MGA parties whether for claims of alleged
          copyright infringement, trademark infringement, or other alleged
          causes of action for any acts taken in good faith in compliance with
          this Order.

    d.    During the course of the receivership, and pending further order of
          the Court, the MGA parties shall not have any right, title, or interest
          and/or power as to the Bratz Assets or Bratz brand.  All ownership
          of all Bratz Assets, Bratz Brands and Bratz-related copyrights and
          other intellectual property are hereby vested in the Temporary
          Receiver and the MGA parties are divested of all such ownership.
          Nothing herein shall alter or affect the right of Mattel to take any
          and all actions relating to the Bratz Assets or the Bratz brand which
          it otherwise lawfully could take, including, without limitation, the
          institution, maintenance and prosecution of legal proceedings
          anywhere in the world or other proceedings before any
          governmental or tribunal or arbitration panel.

    e.    Effective as of the date of this Order, the MGA parties, agents, and

MINUTES FORM 90                                        Initials of Deputy Clerk __cls_____
CIVIL -- GEN                          23

EXHIBIT 30
PAGE 419

related entities shall turn over to the Temporary Receiver any and all revenues they receive or obtain relating to the MGA entities and Bratz in any manner and for any reason, including, without limitation, in connection with any sale, distribution and/or licensing thereof. These revenues shall not be released pending further order of the Court. The MGA entities shall account for all such revenues and interest paid thereon, and shall present to the Court, the Temporary Receiver and Mattel reports reflecting such accounting every ten days, commencing ten days from the date of this Order.

f.     To the extent that the proceeds are insufficient at any point to fund the cost of the receivership, the MGA entities are ordered to provide the Temporary Receiver with such additional funds as the Temporary Receiver requires to accomplish the purposes of the receivership.

g.     The Court shall retain jurisdiction over the receivership for the duration of its existence.

h.     No bond shall be required in connection with the appointment of the Temporary Receiver. Except for acts of gross negligence, the Temporary Receiver, and his agents and employees shall not be liable for loss or damage incurred by the MGA entities, its officers, agents, servants, employees, attorneys or others by virtue of any act performed or omitted to be performed by the Temporary Receiver in connection with the discharge of his duties and responsibilities.

i.     It is further ordered that no officer, director, agent, servant, employee or attorney of the MGA entities shall take any action in the name of or on behalf of the MGA entities before any court of any jurisdiction without the prior written consent of the Temporary Receiver or Order of the Court. However, notwithstanding the foregoing, nothing herein shall be deemed to deny the MGA parties the right to appeal from the Order Granting Preliminary Injunction or this Order. Moreover, this provision is subject to the right of the MGA parties with respect to the current litigation, as set forth in ¶ 4.r.

j.     In light of the appointment of a Temporary Receiver, the MGA entities, their officers, directors, agents, employees and attorneys are hereby prohibited from filing, or causing to be filed, a petition for relief under the United States Bankruptcy Code, 11 U.S.C. §§ 101

MINUTES FORM 90                                      Initials of Deputy Clerk __cls_____
CIVIL -- GEN                          24

EXHIBIT 30
PAGE 420

et seq. for the MGA entities without prior permission of this Court.

k.    The MGA entities are ordered to cooperate fully with the Temporary
Receiver, including without limitation providing all   financial and
other documentation requested by the Temporary Receiver.

l.    . The Temporary Receiver is authorized to contact the
Court-appointed Forensic Auditor, Ronald Durkin, and may utilize
the findings and conclusions reached by Mr. Durkin as the
Temporary Receiver deems appropriate.

m.    The Temporary Receiver is hereby ordered and directed to prepare
and provide to this court a report setting forth preliminary
conclusions, findings and recommendations in accordance with the
schedule set forth below.

11.    Order to Show Cause. All interested parties, and any interested creditor,
shall appear before this Court on Monday, May 18, 2009, at 2:00 p.m. to
show cause, if there be any, why a permanent receiver should not be
appointed in the same scope and manner as the Court's appointment of
the Temporary Receiver. Any declarations, affidavits, points and
authorities or other submissions in support of, or in opposition to, the
appointment of a Permanent Receiver shall be filed with the Court and
served on all parties no later than May 14, 2009.

12.    Pursuant to L.R. 66-4, Mattel is **ORDERED** to cause this Order to be
served on all known creditors of the MGA entities within three days of the
date of this Order.

13.    The Temporary Receiver shall file a report and recommendation
concerning all actions taken as well as recommendations for further action
no later than Monday, May 11, 2009. This report shall be filed with the
Court and served on all parties.

**IT IS SO ORDERED THIS 27th DAY OF APRIL, 2009**

**STEPHEN G. LARSON
UNITED STATES DISTRICT JUDGE**

EXHIBIT 30
PAGE 421

# EXHIBIT 31

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 32

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 33

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 34

# Delaware

PAGE 1

### The First State

I, HARRIET SMITH WINDSOR, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED ARE TRUE AND CORRECT COPIES OF ALL DOCUMENTS ON FILE OF "VISION CAPITAL, LLC" AS RECEIVED AND FILED IN THIS OFFICE.

THE FOLLOWING DOCUMENTS HAVE BEEN CERTIFIED:

CERTIFICATE OF FORMATION, FILED THE NINETEENTH DAY OF AUGUST, A.D. 2008, AT 12:36 O'CLOCK P.M.

AND I DO HEREBY FURTHER CERTIFY THAT THE AFORESAID CERTIFICATES ARE THE ONLY CERTIFICATES ON RECORD OF THE AFORESAID LIMITED LIABILITY COMPANY, "VISION CAPITAL, LLC".

4589295  8100H

081207227

You may verify this certificate online
at corp.delaware.gov/authver.shtml

*Harriet Smith Windsor*
Harriet Smith Windsor, Secretary of State

AUTHENTICATION: 7032931

DATE: 12-17-08

Exhibit 32
Page 718

EXHIBIT 34
PAGE 628

*State of Delaware*
*Secretary of State*
*Division of Corporations*
*Delivered 12:41 PM 08/19/2008*
*FILED 12:36 PM 08/19/2008*
*SRV 080883130 ~ 4589295 FILE*

## CERTIFICATE OF FORMATION

### OF

### VISION CAPITAL, LLC

This Certificate of Formation of VISION CAPITAL, LLC the ("Company"), is being executed by the undersigned for the purpose of forming a limited liability company pursuant to the Delaware Limited Liability Company Act.

1. The name of the Company is VISION CAPITAL, LLC.

2. The address of the registered office of the Company in Delaware is 800 Delaware Avenue, City of Wilmington, New Castle County, 19801. The Company's registered agent at that address is Delaware Corporations LLC.

IN WITNESS WHEREOF, the undersigned, an authorized person, has caused this Certificate of Formation to be duly executed as of the 19th day of August, 2008.

DELAWARE CORPORATIONS LLC,
Authorized Person

By: _____

Robin G. Brooks, Vice President

Exhibit 32
Page 719

EXHIBIT 34
PAGE 429

# EXHIBIT 35

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 36

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 37

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 38

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 39

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 40

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 41

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 42

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 43

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 44

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 45

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 46

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 47

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 48

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 49

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 50

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 51

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 52

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 53

CV-09-095272-00

Court File No.

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
In the Matter of an Application under Part II
Of the *Canada Evidence Act,* R.S.C. 1985 c.C-5
and Section 60 of the *Evidence Act,* R.S.O. 1990, c.E-23
and Rule 14.05 of the *Rules of Civil Procedure*

B E T W E E N :

**MATTEL, INC.**

Applicant

- and -

**MGA ENTERTAINMENT (CANADA) COMPANY and
JANINE BRISBOIS**

Respondents

**NOTICE OF APPLICATION**

TO THE RESPONDENTS:

A LEGAL PROCEEDING HAS BEEN COMMENCED by the applicant. The claim
made by the applicant appears on the following page.

THIS APPLICATION will come on for a hearing on Wednesday, August 26, 2009 at

10:00 a.m., at 50 Eagle Street West, Newmarket, Ontario, L3Y 6B1.

IF YOU WISH TO OPPOSE THIS APPLICATION, to receive notice of any step in
the application or to be served with any documents in the application, you or an Ontario
lawyer acting for you must forthwith prepare a notice of appearance in Form 38A prescribed
by the Rules of Civil Procedure, serve it on the applicant's lawyer or, where the applicant does
not have a lawyer, serve it on the applicant, and file it, with proof of service, in this court
office, and you or your lawyer must appear at the hearing.

IF YOU WISH TO PRESENT AFFIDAVIT OR OTHER DOCUMENTARY
EVIDENCE TO THE COURT OR TO EXAMINE OR CROSS-EXAMINE WITNESSES
ON THE APPLICATION, you or your lawyer must, in addition to serving your notice of
appearance, serve a copy of the evidence on the applicant's lawyer or, where the applicant
does not have a lawyer, serve it on the applicant, and file it, with proof of service, in the court
office where the application is to be heard as soon as possible, but at least two days before the
hearing.

**EXHIBIT** 53
**PAGE** 742

- 2 -

IF YOU FAIL TO APPEAR AT THE HEARING, JUDGMENT MAY BE GIVEN IN YOUR ABSENCE AND WITHOUT FURTHER NOTICE TO YOU.  IF YOU WISH TO OPPOSE THIS APPLICATION BUT ARE UNABLE TO PAY LEGAL FEES, LEGAL AID MAY BE AVAILABLE TO YOU BY CONTACTING A LOCAL LEGAL AID OFFICE.

Date          July 3, 2009                    Issued by _____
                                                              Local registrar

                                           Address of   50 Eagle Street West
                                           court office  Newmarket, Ontario
                                                         L3Y 6B1

.TO:        MGA ENTERTAINMENT (CANADA) COMPANY
            7030 Woodbine Avenue
            Suite 205
            Markham, Ontario
            L3R 6G2

AND TO: JANINE BRISBOIS
            3130 Cole Road
            R.R. #2
            Queensville, Ontario
            L0G 1R0

EXHIBIT 53
PAGE 763

- 3 -

## APPLICATION

1.    The applicant makes application for an order:

(a)    giving effect to the Letters Rogatory issued by the United States District Court, Central District of California, Eastern Division (the "California Court"), by the Honourable Stephen G. Larson, United States District Judge on May 21, 2009 (the "Letter of Request"), seeking from this Honourable Court an order to obtain the production of documents and oral examination, under oath, from MGA Entertainment (Canada) Company ("MGA Canada") and Janine Brisbois, in respect of an action before the court entitled:

CARTER BRYANT, an individual,
Plaintiff

-   and —

MATTEL, INC., a Delaware corporation,
Defendant

Case No. CV 04-9049 SGL (RNBx) (the "California Action") and in particular:

(i)    requiring MGA Canada to produce documents at the offices of Heenan Blaikie LLP, Bay Adelaide Centre, 333 Bay Street, Suite 2900, Toronto, Ontario, M5H 2T4 in accordance with the Letter of Request within 30 days of the date of this Order.

(ii)    requiring that MGA Canada be summoned upon service of a Notice of Examination to appear before the appropriate official examiner in Ontario on a date mutually agreed upon by the parties or at a time and place to be set by you, to give testimony under oath of the matters set forth in the Letter of Request by questions and answers upon oral deposition, such deposition to continue from day to day until completion and to be conducted in accordance with the California Rules of Civil Procedure and California Rules of Evidence, or as permitted by you;



EXHIBIT 53
PAGE 264

- 4 -

    (iii)    requiring that Janine Brisbois be summoned upon service of a Notice of Examination to appear before the appropriate official examiner in Ontario on a date mutually agreed upon by the parties or at a time and place to be set by you, to give testimony under oath of the matters set forth in the Letter of Request by questions and answers upon oral deposition, such deposition to continue from day to day until completion and to be conducted in accordance with the California Rules of Civil Procedure and California Rules of Evidence, or as permitted by you;

    (iv)    requiring MGA Canada to produce at or immediately after the oral examination specific documents relevant to the subject matter of this case, the existence of which becomes known during the course of the examination and which are requested by counsel;

    (v)    requiring Janine Brisbois to produce at or immediately after the oral examination specific documents relevant to the subject matter of this case, the existence of which becomes known during the course of the examination and which are requested by counsel;

    (vi)    requiring that verbatim transcripts of the testimony of the respondents be taken and reduced to writing;

(b)    if necessary, an order abridging the time for service of this Notice of Application; and

(c)    such further and other relief as this Honourable Court may permit.

2.    The grounds for the application are:



EXHIBIT 53
PAGE 765

- 5 -

(a)     the Honourable Stephen G. Larson, Justice of the United States District Court, Central District of California Eastern Division, pursuant to the appropriate proceedings in that Court, properly issued the Letter of Request;

(b)     the evidence of the respondents is required so that justice may be done between the parties in the California, and it would be unfair if the applicant was forced to proceed to trial without the benefit of that evidence;

(c)     the applicant is unable to obtain the evidence from other sources or by other means;

(d)     it would not be contrary to public policy to grant the order requested;

(e)     Part II of the *Canada Evidence Act,* R.S.C. 1985, c.C-5;

(f)     Section 60 of the *Evidence Act*, R.S.O. 1990, c.E-23;

(g)     Rules 3, 14.05(3)(d), 14.05(3)(h) and 38.05 of the *Rules of Civil Procedure;* and

(h)     such further and other grounds as counsel may advise and this Honourable Court may permit.

3.     The following documentary evidence will be used at the hearing of the application:

(a)     The Letter of Request;

(b)     The Affidavit of Jon D. Corey and exhibits thereto;

(c)     Such further and other materials as counsel may advise and that this Honourable Court may permit.



EXHIBIT 53
PAGE 744

- 6 -

July 3, 2009

**Heenan Blaikie LLP**
Lawyers
P.O. Box 185, Suite 2600
200 Bay Street, South Tower, Royal Bank Plaza
Toronto, Ontario  M5J 2J4

**Bonnie Roberts Jones**  LSUC#: 41256L
Tel: 416-360-3567
Fax: 1-866-781-1350

Lawyers for the Applicant

EXHIBIT 53
PAGE 767

| | | |
|---|---|---|
| **MATTEL, INC.**<br>**Applicant** | **and** | **MGA ENTERTAINMENT (CANADA)**<br>**COMPANY, et al.**<br>**Respondents** |

Court File No:

*CV09-095272-00*

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**

Proceeding commenced at Newmarket

---

**NOTICE OF APPLICATION**

---

**Heenan Blaikie LLP**
Lawyers
P.O. Box 185, Suite 2600
200 Bay Street, South Tower, Royal Bank Plaza
Toronto, Ontario  M5J 2J4

**Bonnie Roberts Jones**  LSUC#: 41256L
Tel: 416-360-3567
Fax: 1-866-781-1350

Lawyers for the Applicant

EXHIBIT 53
PAGE 268

HBdocs - 6364353v1

# EXHIBIT 54

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 55

California Secretary of State - California Business Search - Limited Partnership / Limited ...  Page 1 of 1

# California Business Portal

**Secretary of State DEBRA BOWEN**

SECRETARY OF STATE | ELECTIONS & VOTER INFO | POLITICAL REFORM | **CA BUSINESS PORTAL** | ARCHIVES & MUSEUM | OTHER SERVICES

**Business Search LP/LLC**

- **Printer Friendly Page**
- **New Search**
- **Search Tips**
- **Field Definitions**
- **Status Definitions**
- **LLC Name Availability**
- **LP Name Availability**
- **Business Entities Records Order Form**
  - **Certificates**
  - **Copies**
  - **Status Reports**
- **LLC FAQS**
- **LP FAQS**
- **LLC Main Page**
- **LP Main Page**
- **Site Search**

Limited Partnerships/Limited Liability Companies  **LP/LLC**

The information displayed here is current as of "May 8, 2009" and is updated weekly. It is not a complete or certified record of the Limited Partnership or Limited Liability Company.

| LP/LLC | | |
|---|---|---|
| IGWT GROUP, LLC | | |
| Number: 200817910004 | Date Filed: 6/26/2008 | Status: active |
| Jurisdiction: CALIFORNIA | | |
| **Address** | | |
| 237 NORTH CAROLWOOD DRIVE | | |
| LOS ANGELES, CA 90077 | | |
| **Agent for Service of Process** | | |
| NATIONAL CORPORATE RESEARCH, LTD. (C2003899) | | |

[ Printer Friendly ]

**New Search**

- Fees and instructions for requesting certification of limited partnership and/or limited liability company records are included on the **Business Entities Records Order Form**.
- Blank fields indicate the information is not contained in the computer file.
- If the agent for service of process is a corporation, the address of the agent may be requested by ordering a status report. Fees and instructions for ordering a status report are included on the **Business Entities Records Order Form**.

Copyright ©2001 California Secretary of State. **Privacy Statement**.

EXHIBIT __28__
PAGE __419__



EXHIBIT __55__
PAGE __280__

# EXHIBIT 56

1

1          UNITED STATES DISTRICT COURT

2          CENTRAL DISTRICT OF CALIFORNIA

3               EASTERN DIVISION

4                  - - -

5    HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6                  - - -

7   CARTER BRYANT,                    )
                                      )
8                   PLAINTIFF,        )
                                      )
9          VS.                        )   NO. ED CV 04-09049
                                      )   (LEAD LOW NUMBER)
10   MATTEL, INC.,                    )
                                      )
11                  DEFENDANTS.       )   STATUS/SCHEDULING
     _____  )        CONFERENCE
12   AND RELATED ACTIONS,            )
     _____  )

13

14

15          REPORTER'S TRANSCRIPT OF PROCEEDINGS

16              RIVERSIDE, CALIFORNIA

17             MONDAY, FEBRUARY 12, 2007

18                  1:49 P.M.

19

**CERTIFIED**

20

**COPY**

21

22

23          THERESA A. LANZA, RPR, CSR
            FEDERAL OFFICIAL COURT REPORTER
24          3470 12TH STREET, RM. 134
            RIVERSIDE, CALIFORNIA  92501
25             (951) 274-0844
            CSR11457@SBCGLOBAL.NET

2-12-07                    CV 04-09049      EXHIBIT 50
                                           PAGE 281

21

```
 1          MR. QUINN, I WILL ENTERTAIN A MOTION FROM THE

 2   PLAINTIFFS IN -9059 FROM MATTEL THAT SOME OF THOSE LIMITED

 3   CLAIMS, AS YOU JUST IDENTIFIED, ARE MORE APPROPRIATELY

 4   CONSIDERED IN THAT FIRST CASE.  AND THEN OF COURSE THE DEFENSE

 5   MAY OPPOSE THAT.                                              02:17

 6          I CAN SEE HOW ONE OR MORE OF THOSE CLAIMS MIGHT BE,

 7   BUT THEY MIGHT NOT BE AS WELL.  I'M NOT GOING TO DECIDE THAT

 8   TODAY.  I'LL GIVE YOU LEAVE TO BRING THAT MOTION ON THAT NARROW

 9   ISSUE IF THERE SHOULD BE CERTAIN CLAIMS THAT WE SHOULD DO IN

10   THIS FIRST PHASE AS OPPOSED TO THE SECOND PHASE.  BUT ABSENT AN  02:17

11   ORDER FROM THE COURT, THE ONLY CLAIMS THAT WE ARE GOING TO SET

12   IN THE FIRST TRIAL ARE THOSE SET FORTH IN 04-9059, AND THE ONLY

13   CLAIMS IN THE SECOND ARE GOING TO BE THE CLAIMS AND

14   COUNTERCLAIMS IN 05-2727.  I WILL GIVE YOU THAT OPPORTUNITY.

15          I'M GOING TO SET A JURY TRIAL DATE FOR FEBRUARY 12,     02:17

16   2008, ONE YEAR FROM TODAY, AT 9:30 A.M. IN 04-9049.  A HEARING

17   ON ANY MOTIONS IN LIMINE WILL BE SCHEDULED FOR FEBRUARY 4,

18   2008, 10:00 A.M., AND A FINAL PRE-TRIAL CONFERENCE WILL BE

19   CONDUCTED JANUARY 14, 2008, AT 11:00 A.M.

20          LAST DATE TO CONDUCT A SETTLEMENT CONFERENCE IN THAT    02:18

21   CASE WILL BE DECEMBER 3, 2007; THE LAST DATE FOR HEARING ANY

22   DISPOSITIVE MOTIONS WILL BE NOVEMBER 19, 2007 AT 10:00 A.M.;

23   THE COMPLETE DISCOVERY CUTOFF ON THE FIRST CASE WILL BE

24   OCTOBER 22ND, 2007.

25          I'LL SPEAK IN A FEW MOMENTS ABOUT LIMITS IN TERMS OF    02:18
```

EXHIBIT 50
PAGE 282

22

1   WITNESSES AND INTERROGATORIES AND THE LIKE.

2           AS FAR AS 05-2727, THE JURY TRIAL DATE WILL BE

3   JULY 1, 2008; THE HEARING ON ANY MOTIONS IN LIMINE WILL BE

4   JUNE 23, 2008, 10:00 A.M.; THE FINAL PRE-TRIAL CONFERENCE WILL

5   BE JUNE 2, 2008, 11:00 A.M.; THE LAST DATE TO CONDUCT A                    02:18

6   SETTLEMENT CONFERENCE IN THAT CASE WILL BE APRIL 21, 2008; THE

7   LAST DATE FOR HEARING DISPOSITIVE MOTIONS IN THAT CASE WILL BE

8   APRIL 7, 2008, 10:00 A.M.; DISCOVERY CUTOFF WILL BE MARCH 3,

9   2008.

10          ANY FURTHER AMENDMENTS OR THE ADDITION OF PARTIES IN         02:19

11  EITHER OF THESE CASES IS GOING TO REQUIRE LEAVE OF COURT.

12          THESE ARE THE LIMITS I'M GOING TO PUT ON EXPERT

13  DEPOSITIONS AND INTERROGATORIES.  NOW, THESE LIMITS ARE -- I

14  DON'T WANT TO SAY THEY ARE SOFT LIMITS, BUT THEY ARE LIMITS

15  WHICH THE COURT WOULD CERTAINLY UNDERSTAND OR WOULD INVITE           02:20

16  COUNSEL TO SUBMIT A MOTION TO EXPAND, IF THERE'S REASON TO.

17  BUT I JUST WANT TO HAVE SOME PARAMETERS PLACED ON THIS AT THE

18  OUTSET.

19          AS FAR AS NONEXPERT DEPOSITIONS, I'M GOING TO LIMIT

20  EACH SIDE TO 24; SO THAT WILL BE A TOTAL OF 48 BETWEEN THE TWO       02:20

21  SIDES, WHICH WOULD HOPEFULLY CAPTURE MOST OF THE INDIVIDUALS

22  WHO HAVE SOME INFORMATION TO PROVIDE IN THIS CASE.  I'M GOING

23  TO LIMIT THE NUMBER OF EXPERT WITNESSES TO 20 ON EACH SIDE, AND

24  THEN THE TOTAL NUMBER OF INTERROGATORIES TO A TOTAL NUMBER OF

25  50 TO EACH SIDE.                                                     02:20

EXHIBIT 50
PAGE 783

```
 1          AGAIN, IF YOU GET TO THE POINT WHERE YOU NEED 21
 2    EXPERT WITNESSES FOR SOME REASON, OR YOU NEED 25 FACT
 3    WITNESSES, YOU CAN MAKE APPLICATION TO THIS COURT AND THE COURT
 4    WILL CONSIDER THAT AFTER YOU, OF COURSE, HAVE MET AND CONFERRED
 5    AND TRIED TO WORK THAT OUT ON YOUR OWN.  BUT WE HAVE TO HAVE        02:20
 6    SOME PARAMETERS ON THIS.
 7          ARE THERE ANY QUESTIONS?
 8          THE COURT WILL BE ISSUING ITS SCHEMATIC WHICH WILL
 9    HAVE ALL THESE DATES AND THE COURT'S SCHEDULING ORDERS AND
10    CALCULATIONS, BUT ARE THERE ANY GENERAL QUESTIONS ABOUT WHAT       02:21
11    THE COURT IS TRYING TO ACCOMPLISH HERE?
12          MS. TORRES:  YOUR HONOR, YOU JUST SAID 50
13    INTERROGATORIES EACH SIDE.  THE FEDERAL RULES ORDINARILY
14    PROVIDE FOR INTERROGATORIES TO PARTIES, AND THERE ARE A NUMBER
15    OF PARTIES THAT THEY ARE TRYING TO SERVE, WHO THEY MAY HAVE        02:21
16    ALREADY SERVED, I DON'T KNOW.
17          ARE THOSE PARTIES INCLUDED IN THAT 50 LIMIT?
18          THE COURT:  THERE'S ONE PARTY, ESSENTIALLY, ON THE
19    OTHER SIDE, AND YOU HAVE TWO PARTIES.
20          MS. TORRES:  WELL, THEY HAVE ALSO NAMED -- ACTUALLY          02:21
21    WE HAVE THREE PARTIES NOW; THEY SUED OUR CEO ISAAC LARIAN AND
22    THEY HAVE NAMED ANOTHER EMPLOYEE AND TWO INDIRECT SUBSIDIARIES.
23          THE COURT:  WELL, MR. JACOBY, YOU'RE HERE ON BEHALF
24    OF MR. BRYANT.  WOULD YOU REALLY NEED ANOTHER 50
25    INTERROGATORIES BEYOND WHAT MGA WOULD BE SUBMITTING ON THESE       02:22
```

EXHIBIT 56
PAGE 789

25

1    AND THE RESOURCES THAT QUINN EMANUEL AND O'MELVENY & MYERS AND

2    LITTLER ARE ALL DEVOTING TO THIS, THESE DATES ARE PRETTY FIRM;

3    SO PLAN ACCORDINGLY.

4              MR. JACOBY:  THANK YOU, YOUR HONOR.

5              MR. QUINN:  THANK YOU, YOUR HONOR.                          02:23

6              THE COURT:  ALL RIGHT.  GOOD LUCK.

7

8

9

10

11

12

13

14

15

16

17                              CERTIFICATE

18

19   I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED
     STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF
20   THE STENOGRAPHICALLY RECORDED PROCEEDINGS HELD IN THE ABOVE-
     ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN
21   CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF
     THE UNITED STATES.

22

23   _____          2-22-07
     THERESA A. LANZA, CSR, RPR                DATE
24   FEDERAL OFFICIAL COURT REPORTER

25

         2-12-07                    CV 04-09049           EXHIBIT  51
                                                          PAGE  788