MELINDA HAAG (State Bar No. 132612)
mhaag@orrick.com
ANNETTE L. HURST (State Bar No. 148738)
ahurst@orrick.com
WARRINGTON S. PARKER III (State Bar No. 148003)
wparker@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone: 415-773-5700
Facsimile: 415-773-5759

WILLIAM A. MOLINSKI (State Bar No. 145186)
wmolinski@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017
Telephone: 213-629-2020
Facsimile: 213-612-2499

Attorneys for MGA Parties

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | Case No. CV 04-9049-SGL (RNBx)<br><br>Consolidated with: Case No. CV 04-9059 and Case No. CV 05-2727<br><br>**DISCOVERY MATTER**<br><br>**[To Be Heard by Discovery Master Robert C. O'Brien]**<br><br>**[REDACTED PUBLIC VERSION] MGA PARTIES' RESPONSE AND OPPOSITION TO MATTEL'S MOTION TO COMPEL FURTHER DEPOSITION OF RONALD BRAWER AND TO OVERRULE INSTRUCTIONS NOT TO ANSWER**<br><br>Date: TBD<br>Time: TBD<br>Place: Arent Fox, LLP<br>555 West Fifth Street<br>48th Floor<br>Los Angeles, CA 90013 |

# TABLE OF CONTENTS

Page

INTRODUCTION AND SUMMARY OF ARGUMENT ........................................ 1

STATEMENT OF FACTS ........................................................................................ 4
    A.    Mr. Brawer Is The European President For MGA Entertainment ........ 4
    B.    Mr. Brawer's 2008 Deposition and Testimony ...................................... 4
    C.    Mattel's Current Motion ......................................................................... 5

ARGUMENT ............................................................................................................. 5

I.    MATTEL HAS NOT IDENTIFIED ANY SPECIFIC INFORMATION TO WHICH IT DID NOT HAVE ACCESS AT THE TIME OF MR. BRAWER'S 2008 DEPOSITION ................................ 7
    A.    Mattel Made The Strategic Choice To Proceed With Mr. Brawer's Deposition Without Making Any Effort To Review The Information It Admittedly Had In Its Possession .............. 7
    B.    Mattel Has Not Shown that Information Produced After Mr. Brawer's Deposition Warrant Twenty-One Hours of Further Examination ............................................................................................ 9
    C.    Mattel's Claim That Objections At Deposition Precluded A Full And Fair Deposition Of Mr. Brawer Is Ridiculous ............................. 12

II.    MATTEL HAS NOT MET ITS BURDEN FOR SHOWING THAT FURTHER TIME IS NECESSARY FOR A FAIR EXAMINATION OF MR. BRAWER ............................................................................................. 13

III.    COUNSEL PROPERLY INSTRUCTED MR. BRAWER NOT TO ANSWER A QUESTION ON THE BASIS OF PRIVILEGE ..................... 14

CONCLUSION ....................................................................................................... 15

# TABLE OF AUTHORITIES

**CASES**                                         **Page(s)**

*Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*,
   244 F.3d 189 (1st Cir. 2001) ............................................................................... 5

*General Electric Co. v. Indemnity Insurance Co.*,
   2006 WL. 1525970 (D. Conn. 2006) ................................................................ 14

*Greenly v. Lee*,
   2007 WL. 2221444 (E.D. Cal. 2007) ................................................................. 6

*Independence Park Ap'ts v. United States*,
   59 Fed. Cl. 765 (2004) ........................................................................................ 6

*Mattel v. Walking Mountain Productions*,
   2004 U.S. Dist. LEXIS 12469 (C.D. Cal. 2004) ................................................ 3

*Roberson v. Bair*,
   242 F.R.D. 130 (D.D.C. 2007) ........................................................................... 6

**STATUTES**

Fed. R. Civ. P.
   26(b)(2)(C) .......................................................................................................... 6
   26(b)(2) ............................................................................................................. 14
   30 ...................................................................................................................... 13
   30(a)(2)(A)(ii) ..................................................................................................... 6
   30(d)(1) ............................................................................................................... 6

## INTRODUCTION AND SUMMARY OF ARGUMENT

The request by Mattel, Inc. ("Mattel") to re-depose Ronald Brawer, who has already been deposed for a full 7 hours of deposition, for yet another twenty-one hours of deposition should be denied. Indeed, this is simply another effort by Mattel to distract senior MGA management with unnecessary and duplicative questioning as part of Mattel's Litigation As A Business Strategy tactic. Moreover, this Motion, if granted, would create a dangerous precedent of allowing Mattel to re-depose any witness it deems "important, or whose name appears on documents," in violation of the Federal Rules and this Court's directives. Mattel's motion does not demonstrate the "good cause" necessary to require Mr. Brawer to sit for an additional twenty-one hours of deposition.

Mattel does not contend it was unaware at the time of Mr. Brawer's 2008 deposition of any issues it now claims provide a basis for an additional twenty-one hours of deposition. Instead, its Motion is primarily focused on the notion that an additional twenty-one hours of deposition are warranted because Mr. Brawer's "name appears" on an allegedly large number of documents produced before and after Mr. Brawer's deposition. Mattel does not point to any specific documents or any specific "new" information in those documents that was unknown to Mattel at the time of Mr. Brawer's initial deposition. ***Indeed, Mattel rejected an offer to reschedule Mr. Brawer's deposition so that Mattel could review the documents it now claims it did not have sufficient time to review before the deposition.*** Mattel made the strategic choice to reject this offer and proceed with Mr. Brawer's deposition, apparently without making any attempt to review the information it admittedly had in its possession at the time of Mr. Brawer's original deposition.

Mattel's claim that Mr. Brawer's 2008 deposition was disrupted in some manner by objections asserted by MGA's lawyer is frivolous. Review of the passages identified in the Motion reveals nothing more than routine objections and clarification requests occurring in the course of every deposition. Garden-variety

1  objections asserted in the ordinary course of deposition do not merit requiring a
2  witness to be deposed for an additional twenty-one hours.  If anything, MGA's
3  counsel was restrained in not objecting more to the repetitive and imprecise
4  questioning.

5      Mattel also asserts that it should be able to depose Mr. Brawer--again--
6  because he is "an important witness", and Mattel references the fact that he is
7  specifically accused of improper conduct in the TACC.  But what Mattel does not
8  mention is that they filed a separate complaint against Mr. Brawer in 2004 for the
9  very same alleged conduct ***but that the complaint was dismissed with prejudice***
10 ***when Mattel could not provide any evidentiary support for the claims against***
11 ***him***. When Mr Brawer was deposed in this case the first time, he spoke at length
12 about Mattel's use of litigation as a business strategy, testifying:



23 Declaration of William A. Molinski in Support of MGA Parties' Opposition to
24 Motion to Compel (Molinski Decl.) Ex. A (Brawer Deposition) at 224:1-10.  Mattel
25 is obviously bitter about the fact that a senior executive had the nerve to leave
26 Mattel and to then expose Mattel for its unfair and unethical business practices.
27 Having tried, and failed, to sue him, Mattel is now seeking to inconvenience him
28

1  and disrupt his life--and MGA's business--as much as possible by deposing him
2  again and again. These efforts should be denied.

3  Mattel finally seeks an order requiring Mr. Brawer to answer a single
4  question he was instructed not to answer on the basis of privilege. Mattel's request
5  should be rejected. To the extent the specific question Mattel identifies is in any
6  way intelligible, it was properly subject to a privilege objection. Mr. Surprenant
7  made no effort to clarify or reformulate his question in a way that did not call for
8  privileged information. Mattel had the opportunity to pursue this line of
9  questioning, but it chose not to. Mattel should not be permitted to claim now that
10 information it did not consider important enough to pursue beyond a single question
11 justifies an order requiring an answer to a vague, inartfully formed question that
12 called for privileged information.

13 Mattel's Motion appears to be the most recent example of Mattel's long-
14 recognized business strategy of attrition through litigation rather than reflecting a
15 sincere need for previously unavailable information. Courts have also taken notice
16 of this Mattel practice. *See Mattel v. Walking Mountain Productions*, 2004 U.S.
17 Dist. LEXIS 12469 (C.D. Cal. 2004) (Granting Walking Mountain's motion for
18 attorney's fees and finding Mattel's claim was "frivolous" and that Mattel "forced
19 Defendant into costly litigation to discourage him from using Barbie's image in his
20 artwork.")

21 Beyond this improper purpose, Mattel's Motion would set a dangerous
22 precedent in this case that would provide a basis for further depositions of senior
23 executives simply because their "names appear" on documents produced after their
24 original depositions. Mattel's invitation to introduce such a standard should be
25 rejected.

## STATEMENT OF FACTS

[redacted]

### B. Mr. Brawer's 2008 Deposition and Testimony

Mattel initially noticed Mr. Brawer's deposition on June 10, 2007. Declaration of Scott L. Watson in Support of Mattel's Motion to Compel (Watson Decl.) Ex. 10. Mattel withdrew that original notice on November 26, 2007. Molinski Decl. Ex. B (Corey letter). On January 10, 2008, Mattel re-noticed Mr. Brawer's deposition for January 28, 2008. *Id.* Ex. C (DiCanio letter). The deposition was delayed because Mattel initially refused to produce or reveal information about three boxes of documents apparently obtained from Mr. Brawer's apartment and car. *Id.*

On January 28, 2008, the parties agreed Mattel would depose Mr. Brawer on February 5, 2008. Watson Decl. Ex. 21. Also on January 28, 2008, MGA produced approximately 300,000 pages of documents responsive to Mattel's discovery requests. Molinski Decl. at Ex. D (Tempkin Letter).[1] MGA offered to postpone Mr. Brawer's deposition to provide Mattel additional time to review the newly produced documents. Watson Decl. Ex. 26. ***Mattel refused that offer and insisted the deposition go forward as scheduled***. *Id.* Prior to this motion, Mattel never suggested the January 2008 production was "late" or otherwise unexpected.

On February 5, 2008, Mattel deposed Mr. Brawer for seven hours. Molinski Decl. Ex. A at 245:10-12 (Brawer deposition). MGA did not impose any subject

---

[1] That production was replaced with substantively identical documents containing bates numbers the next day. Watson Decl. Ex. 22.

1  matter limitations on Mr. Brawer's examination, and Mattel's examination was
2  thorough and wide-ranging. Watson Decl. Ex. 21.
3      In two hundred and forty-six pages of transcript, Mr. Brawer's counsel
4  instructed Mr. Brawer not to answer only a single question on the basis of privilege.
5  Mr. Surprenant made no effort to reformulate his question in a way that did not call
6  for privileged information or to explore the basis for the privilege claim. Molinski
7  Decl. Ex. A at 144:21-146:13.

8      C.    **Mattel's Current Motion**
9      Mattel claims it is entitled to depose Mr. Brawer for an additional twenty-one
10 hours because:
11     • MGA "withheld relevant documents" until one week before Mr. Brawer's
12       2008 deposition;
13     • Objections asserted during Mr. Brawer's deposition consumed so much
14       time, an additional twenty-one hours of deposition is required; and
15     • Seven hours was not a sufficient amount of time to examine Mr. Brawer
16       because of his knowledge of information relevant to MGA's and Mattel's
17       claims at issue in Phase 2.
18 Motion at 8-16. As described in greater detail below, these contentions do not,
19 alone or in sum, merit an additional twenty-one hours of deposition. Indeed, Mattel
20 recently claimed only fourteen hours with Mr. Brawer would be necessary to
21 address the same issues Mattel now claims require twenty-one. Watson Decl. Ex.
22 25 (Letter from Mattel Counsel). While still unreasonable and unjustified, Mattel's
23 recent contention that fourteen hours would be sufficient evidences the insincerity
24 of Mattel's request for an additional twenty-one hours.

25                     **ARGUMENT**
26     A stipulation or court order is required to depose a witness a second time
27 (Fed. R. Civ. P. 30(a)(2)(A)(ii); *see Ameristar Jet Charter, Inc. v. Signal*
28 *Composites, Inc.*, 244 F.3d 189, 192 (1st Cir. 2001)), or in excess of seven hours.

1  Fed. R. Civ. P. 30(d)(1).  No extension should be permitted unless (1) necessary for
2  a fair examination, or (2) the examination was improperly impeded or delayed.
3  Fed. R. Civ. P. 30(d)(1).  The court must limit discovery whenever (i) the discovery
4  sought is unreasonably cumulative or duplicative or can be obtained from some
5  other sources that is more convenient, less burdensome, or less expensive, (ii) the
6  party seeking the discovery has had ample opportunity to obtain the information, or
7  (iii) the burden outweighs the likely benefits.  Fed. R. Civ. P. 26(b)(2)(C).

8      Rule 30 places the burden of proof on the party seeking the extended
9  examination to demonstrate good cause as to why it is necessary.  *See Greenly v.*
10 *Lee*, 2007 WL 2221444 (E.D. Cal. 2007) ("'The party seeking a court order to
11 extend the examination . . . is expected to show good cause to justify such an
12 order'") (quoting Advisory Committee Notes to 2000 Amendments to Federal Rule
13 of Civil Procedure 30); *Independence Park Ap'ts v. United States*, 59 Fed. Cl. 765,
14 769 (2004); *Roberson v. Bair*, 242 F.R.D. 130, 138 (D.D.C. 2007) ("[T]he court
15 should begin with the presumption that the seven-hour limit was carefully chosen
16 and that extensions of that limit should be the exception, not the rule.")

17     Mattel cannot meet its burden by generically claiming it did not have time to
18 review the materials in its possession or that MGA produced relevant documents
19 after Mr. Brawer's deposition.  Mattel needs to make a specific showing by
20 pointing to specific information previously unavailable to it in order to demonstrate
21 the good cause necessary to support an order for more deposition time with
22 Mr. Brawer.

23     Mattel cannot demonstrate the "good cause" necessary to justify *any*
24 additional time, let alone quadruple the time normally allowed under the Federal
25 Rules (7+21 = 28) (28/7 = 4).  Mattel has failed to show its examination of
26 Mr. Brawer was compromised in any meaningful way by lack of access to any
27 specific information contained in materials produced at any time, and the notion
28 that Mr. Brawer's deposition was unfairly disrupted by ordinary objections is

OPPOSITION TO MOTION TO COMPEL FURTHER DEPOSITION
OF RONALD BRAWER
CV 04-9049 SGL (RNBx)

specious. The single question Mr. Brawer did not answer on the basis of a privilege claim was not a proper question, and Mattel made no effort at deposition to obtain the information to which it claims entitlement by asking a single follow-up question.

## I. MATTEL HAS NOT IDENTIFIED ANY SPECIFIC INFORMATION TO WHICH IT DID NOT HAVE ACCESS AT THE TIME OF MR. BRAWER'S 2008 DEPOSITION

Mattel claims it requires twenty-one additional hours of deposition because (a) "seven days before Mr. Brawer's deposition, MGA produced over 300,000 pages of documents" and "Mattel could not review these documents prior to Mr. Brawer's deposition and was unable to question Mr. Brawer on them" and (b) "MGA has produced over 234,000 documents" since Mr. Brawer's deposition that "contain critical new information that Mattel is entitled to question Mr. Brawer about." Motion at 8-9.

### A. Mattel Made The Strategic Choice To Proceed With Mr. Brawer's Deposition Without Making Any Effort To Review The Information It Admittedly Had In Its Possession

Mattel complains it did not have time to adequately review in advance of Mr. Brawer's prior deposition the information produced on or about January 28, 2008. While Mattel now characterizes this production as "late," it was produced at a time consistent with the discovery deadline and, until now, Mattel has never suggested the January 28, 2008 production was "late." In fact, Mattel's counsel commented at Mr. Brawer's deposition that MGA's production was not in any way improper and did not suggest it was late. Molinski Decl. Ex. A at 245:13-19.

Beyond the timeliness issue, Mattel's suggestion that it could not have reviewed the materials in its possession for more than a week before Mr. Brawer's deposition is difficult to credit. Eleven lawyers from the Quinn Emanuel firm currently appear on the ECF notices alone, and it is reasonable to believe Mattel has numerous other attorneys working on this matter that could have helped searching the electronic production for information relevant to the Brawer deposition in

advance, had Mattel's lawyers truly thought it important to do so. There is no suggestion any such effort was made. Mattel offers only the vague excuse that, notwithstanding the numerous lawyers available to Mattel, it could not get the work done in the eight days preceding Mr. Brawer's deposition.

If Mattel had any genuine concern its ability to thoroughly depose Mr. Brawer might be compromised because it had not had adequate opportunity to review the produced material, Mattel could have requested to reschedule the deposition. In fact, MGA offered to postpone Mr. Brawer's deposition to allow Mattel additional time to review these documents. Watson Decl. Ex. 26. Mattel refused, making the strategic choice to proceed with the deposition of a witness it claims is "critical," without regard to the discovery limits imposed by the Federal Rules, or Mr. Brawer's personal circumstances and professional responsibilities overseas. *Id.* Mattel should not be permitted to use its own tactical choices to avoid the limits imposed by the Rules and disrupt the personal and professional lives of MGA executives by deposing them for four times the amount of time permitted under the Rules. As Magistrate Block warned Mattel in this very case, Mattel is responsible for its tactical decisions to take depositions before document production is complete. *See* Molinski Decl. Ex. E at 2 (Civil Minutes).

More important than Mattel's apparent lack of an attempt to review the information in its possession prior to Mr. Brawer's deposition, nowhere in Mattel's motion does Mattel point to a single document produced among the "300,000 pages of documents" on January 28, 2008 that is relevant to any of Mattel's or MGA's claims or defenses. As best as MGA can understand from Mattel's Motion, the closest Mattel comes to saying anything specific about the materials Mattel

allegedly could not review in time for Mr. Brawer's deposition is that Mr. Brawer's "name appears" on some unspecified number of these materials. *See, e.g.*, Motion at 2-3, 6. Mr. Brawer's "name appearing" on documents in Mattel's possession, but that Mattel chose not to make an effort to review prior to Mr. Brawer's deposition or try to explain the relevance of in any meaningful way now, does not demonstrate the "good cause" necessary to support an order requiring Mr. Brawer to sit for an additional twenty-one hours of deposition.

### B. Mattel Has Not Shown that Information Produced After Mr. Brawer's Deposition Warrant Twenty-One Hours of Further Examination

Mattel also claims that after Mr. Brawer's 2008 deposition, MGA produced "over 234,000 documents" that contain "critical new information" justifying twenty-one further hours of deposition.[3] Mattel again offers no specifics about any of the alleged "234,000 documents," and largely cites its own discovery responses in support of the contention that the MGA documents entitle Mattel to the opportunity to depose Mr. Brawer for an additional twenty-one hours.

For example, the first "critical issue" Mattel identifies is ████████ ████████████████████████████████████████████████████ ██████████ Motion at 9. In fact, Mattel examined Mr. Brawer on the "data wiping" issue in his 2008 deposition. Molinski Decl. Ex. A at 137:12-141:4. Mattel's motion does not identify a single MGA document relevant to this "topic." Instead, Mattel cites two pages of its own interrogatory responses. Motion at 9 n.46. Neither of the cited pages identifies any documents MGA produced at any time that appear relevant to this topic, let alone among the "234,000 documents" Mattel claims MGA produced after Mr. Brawer's deposition.

---

[3] It is not clear from Mattel's Motion whether Mattel is using the words "documents" and "pages" interchangeably, but it appears so to MGA. Beyond this ambiguity, MGA does not understand why Mattel repeatedly refers to materials as being "late produced." Motion at 9. Mattel points to no deadlines that were missed, and discovery is ongoing. MGA finds it unfortunate that Mattel feels compelled to rely on such unsupported rhetoric, but misused labels cannot establish the "good cause" necessary to grant Mattel's motion.

The MGA production numbers listed on the first of the two cited pages purports to be ███████████████████████████████████████████ ███████████████████████████████████████ Watson Dec. Ex. 23 (Mattel's First Supplemental Objections and Responses to Interrogatory 20-23 and 28) at 113. The cited document does not have anything to do with ███ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████████████ In any case, there is no basis on which this single document can constitute the "good cause" necessary for twenty-one additional hours of deposition.

The second identified page of the Mattel interrogatory responses makes no reference to any MGA documents. Watson Dec. Ex. 23 (Mattel's First Supplemental Objections and Responses to Interrogatory 20-23 and 28) at 113.

The second topic Mattel identifies as illuminated by the "234,000 documents" is ████████████████████████████████████████ ██████ Motion at 9 n.47. The single MGA document Mattel identifies as relevant to this topic is ██████████████████████████████████ ████████████████████████████████████████████████████ Watson Dec. Ex. 29 (MGA 3862416). This cursory document does not appear to contain any information relevant to ████████████████████████████ ██████████████████████████ Mattel makes no attempt to explain how this document is relevant to the topic Mattel describes, and if the document contains any confidential "Mattel internal information," Mattel has not explained what it is.

The third topic Mattel identifies to which the "234,000 documents" are allegedly relevant is ████████████████████████████████████ ████████ Motion at 9. Mattel again references the same two pages of its interrogatory responses discussed above. *Id.* n.48. The alleged presentation

- 10 -

identified on the first cited interrogatory response page does not appear to have any relevance to Mr. Brawer's alleged "concealment of his communications with MGA." If Mattel is trying to say the cited document is itself a "concealed" document, that does not make it relevant to Mr. Brawer's "concealment" of a communication Mattel has in its possession. Whatever Mattel's theory of relevance of this single document, Mattel has not explained it in a manner that provides "good cause" to require Mr. Brawer to submit to an additional twenty-one hours of deposition. As previously discussed, the second page of the interrogatory responses Mattel cites makes no reference to any documents at all.

Finally, Mattel claims ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Motion at 9. Mattel first cites an email chain of 37 emails. Mr. Brawer is copied on two of the early emails in the chain, which appear to simply be ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Watson Decl. Ex. 42. These two emails are not specifically directed to Mr. Brawer and no response from Mr. Brawer appears in any of the communications. Moreover, Mr. Brawer's name does not "appear on" any of the other communications in the chain.

Mattel next cites an email chain that appears to be discussing ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* Ex. 31. Neither of these emails mention Toys R' Us or IGWT, and neither appears relevant to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ nor do they ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

In sum, Mattel has failed to demonstrate that any documents MGA produced before or after Mr. Brawer's deposition support the onerous request for twenty-one additional hours of deposition.[4]

### C. Mattel's Claim That Objections At Deposition Precluded A Full And Fair Deposition Of Mr. Brawer Is Ridiculous

Mattel claims additional deposition time with Mr. Brawer is warranted because at his deposition "Mr. Brawer repeatedly asked for even simple questions to be rephrased whenever MGA's counsel objected" and because Mr. Brawer's lawyer "interrupted Mattel's questioning of Mr. Brawer by interjecting improper colloquy and improper coaching the witness." Mattel cites various portions of the Brawer deposition transcript in support of its contentions, and appears to take the position that objections interposed in a seven hour deposition somehow warrant a new deposition three times as long as the first.

This is nonsense. Examination of the cited transcript pages reveals nothing more than an ordinary deposition with ordinary objections and ordinary efforts by the examining lawyer to reformulate questions into a more proper form. The attorney representing Mr. Brawer – or any witness – is of course entitled to protect the interests of the witnesses by ensuring that clear and proper questions are asked and that confidential attorney client privileged information and attorney work product known to the witness are not disclosed. It is the responsibility of the examining attorney to ask clear questions that the witness understands. Mr. Surprenant explained this to Mr. Brawer at the beginning of the deposition to ensure Mr. Brawer understood that the questions should be clear in his mind before answering them:

/ / /

---

[4] This is in sharp contrast to the Garcia Order Mattel cites, where the Discovery Master determined that the "bulk" of 7,600 documents, produced only *two* days before Ms. Garcia's deposition, were directly relevant to her testimony. Watson Decl. Ex. 40 at 11.

1
2
3
4
5

6 | Molinski Decl. Ex. A at 11:1-6.

7 |     Of course, Mattel did not complain during or after the deposition that the
8 | deposition was impeded in such a way that substantial additional deposition time
9 | would be required. Mr. Brawer answered hundreds of questions at his deposition.
10 | Not surprisingly, Mattel makes no effort to quantify any alleged delay caused by
11 | counsel's objections, or point to any case law that would support this aspect of
12 | Mattel's request. Mattel's argument that its experienced lawyers were prohibited
13 | from conducting a thorough examination of Mr. Brawer because of routine
14 | objections or requests to clarify certain questions should be rejected.

15 | **II. MATTEL HAS NOT MET ITS BURDEN FOR SHOWING THAT FURTHER TIME IS NECESSARY FOR A FAIR EXAMINATION OF MR. BRAWER**
16 |

17 |     Mattel devotes less than a page of argument to support its contention that the
18 | seven hours provided by Rule 30 was insufficient to fairly examine Mr. Brawer due
19 | to his importance in this case. Most of Mattel's argument consists of conclusory
20 | statements alleging Mr. Brawer's importance, but Mattel does not explain why it
21 | could not have addressed these issues at Mr. Brawer's first deposition. Motion at
22 | 11:7-12:3. Mattel spends only five lines summarily listing four areas Mattel
23 | supposedly "did not have time to question Mr. Brawer about." *Id.* at 12:4-8.
24 |     First, Mattel claims it could not "question Mr. Brawer about his agreements
25 | with MGA." This is simply false. Mattel's questions to Mr. Brawer about his
26 | MGA agreements continue for more than 20 pages. Molinski Decl. Ex. A at 44:24-
27 | 67:5. Mattel also claims it lacked sufficient time to ask about Mr. Brawer's
28

- 13 -

1     █████████████████████████████████████████████ Motion at

2 12:5-8. Mattel provides no analysis whatsoever as to why these topics are

3 important, how much time each of them would require, or why Mattel was unable

4 to explore these areas within its allotted seven hours.

5     Moreover, Mattel's claim that he is a significant witness because he allegedly

6 took Mattel secrets is belied by the fact that Mattel dismissed a separate lawsuit

7 against Mr. Brawer due to lack of evidence. Given how litigious Mattel has been,

8 there is no doubt that had Mattel had any evidence of wrongdoing by Mr. Brawer,

9 that lawsuit would not have been dismissed.

10     Because Mattel has failed to "present the court with information specific to

11 the deposition sought to be extended which would allow the court to undertake a

12 Rule 26(b)(2) analysis," Mattel has not met its burden. *General Electric Co. v.*

13 *Indemnity Insurance Co.*, 2006 WL 1525970 at *3 (D. Conn. 2006).

14 **III. COUNSEL PROPERLY INSTRUCTED MR. BRAWER NOT TO ANSWER A QUESTION ON THE BASIS OF PRIVILEGE**

15

16     In 246 pages of deposition transcript, only once did counsel instruct

17 Mr. Brawer not to answer a question posed by Mattel. In a portion of the testimony

18 omitted from Mattel's brief at pages 16 and 17, when Mr. Surprenant asked

19 Mr. Brawer whether he believed he was bound by the Mattel Code of Conduct,

20 Mr. Brawer responded that his belief as to his obligations would have been entirely

21 based on what he learned from his attorneys. Molinski Decl. Ex. A at 145:4-22.



27 Mattel chose not to attempt to gather any further

28 information to which it thought it was entitled, and did not reformulate its question

in a manner that did not call for privileged information. For example, Mr. Surprenant could have limited his question in time in a way that might have helped obtain information he was seeking, but he did not. As phrased, the question to which Mattel now seeks a compelled answer unquestionably calls for privileged information. Mattel's request should be rejected.

## CONCLUSION

For the foregoing reasons, Mattel's motion should be denied.

Dated: August 14, 2009

Respectfully submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: _____/s/_____
William A. Molinski
Attorneys for MGA ENTERTAINMENT, INC., MGA ENTERTAINMENT HK, LTD., MGA de MEXICO, S.R.L. de C.V., and ISAAC LARIAN