MELINDA HAAG (State Bar No. 132612)
mhaag@orrick.com
ANNETTE L. HURST (State Bar No. 148738)
ahurst@orrick.com
WARRINGTON S. PARKER III (State Bar No. 148003)
wparker@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105
Telephone: +1-415-773-5700
Facsimile: +1-415-773-5759

WILLIAM A. MOLINSKI (State Bar No. 145186)
wmolinski@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017
Telephone: +1-213-629-2020
Facsimile: +1-213-612-2499

Attorneys for MGA Parties

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware Corporation<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | Case No. CV 04-9049 SGL (RNBx)<br><br>Consolidated with:<br>CV 04-9059<br>CV 05-2727<br><br>**MGA PARTIES' OPPOSITION TO MATTEL'S MOTION TO MODIFY SCHEDULING ORDER**<br><br>Date:      Aug. 31, 2009<br>Time:      10:00 a.m.<br>Courtroom: 1<br><br>Judge: Hon. Stephen G. Larson |

[PUBLIC REDACTED VERSION]

# INTRODUCTION

On January 11, 2009, when MGA Entertainment, Inc., MGA HK Limited, MGAE de Mexico S.R.L. de C.V., and Isaac Larian (collectively, the "MGA Parties" or "MGA") sought to substitute new counsel for the Phase 2 proceedings, Mattel protested vigorously that it would countenance no delay. Docket #4673 at 4 ("[I]f the Court decides to grant any substitution, it should be only on the condition that no further delay of this case, including Phase 2 discovery, occur as a result"). When Mattel sought leave to file its Third Amended Answer and Counterclaims ("TAAC"), it represented to the Court that those claims would hardly expand the scope of the case at all. Docket # 5143 at 16. Now, Mattel requests a trial continuance of eight months on the ground that it might not finish up depositions before mid-December that the Discovery Master has not even permitted it to take. In contrast, despite its recent additional substitution of counsel for Phase 2 at the beginning of July 2009, MGA is ready, willing and able to meet the deadlines of this case and to start trial in March 2010. It is unfathomable that Mattel, who has employed the same litigation counsel since it commenced this action in 2004—and who has never stinted on litigation resources—cannot be ready as well.

Moreover, the requested continuance will be extremely prejudicial to MGA as it will substantially increase the financial and other burdens associated with this litigation at a time when MGA is trying to achieve a successful launch of a new product line in direct competition to Mattel. Mattel exacerbates the burdens of litigation as a competitive tactic. Such an approach to this particular litigation has been directed from the top of the company as reflected in ▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ for files containing documents pertaining to this case. Since the requested continuance makes no sense in light of Mattel's earlier objections and representations to the Court, the length of time the case has been pending, the vast amounts of discovery already conducted, and the relative

OPPOSITION TO MOTION TO MODIFY SCHEDULING ORDER
CV-04-0049 SGL (RNBx)

disparity of resources of the parties and experience of litigation counsel with the case, the continuance appears to be designed to advance a competitive business agenda, rather than a litigation need. This should not be permitted.

In short, Mattel wholly fails to meet the governing standard for a trial continuance and the Motion should be denied.

## STATEMENT OF FACTS

### A. Procedural Background.

Mattel initiated these consolidated cases on April 27, 2004 by filing a complaint in Los Angeles County Superior court against its former employee and creator of the BRATZ dolls concept, Carter Bryant. Case No. 2:04-cv-09059 Docket #1. On November 2, 2004, Bryant filed a separate action in this Court seeking declaratory relief against Mattel (*"Bryant v. Mattel"*) which was numbered 2:04-cv-09049. 09049 Docket #1. The same day, Bryant removed (for the second time) the pending state court action *Mattel v. Bryant*, which was numbered Case No. 2:04-cv-09059. 09059 Docket #1. On November 16, 2004, the Court transferred Case No. 09059 to Judge Manella as the judge assigned to the lower-numbered related case. 09049 Docket #7. On December 7, 2004, the Court approved MGA's stipulated intervention as a defendant in the removed *Mattel v. Bryant* action. 09059 Docket #36.

On April 13, 2005, MGA filed a separate unfair competition lawsuit against Mattel ("*MGA v. Mattel*"), alleging trade dress infringement, unlawful attempts to block the marketing of rights in the BRATZ dolls, and other efforts to undermine the BRATZ product lines. 2:05-cv-02727 Docket # 1. The case was transferred to Judge Manella as a related case on April 25, 2005. 02727 Docket #7. Mattel answered and moved to dismiss on May 13, 2005. *Id.* Docket ##13, 14. After the Court denied in part the motion to dismiss, Mattel filed an amended answer on September 13, 2005. *Id.* Docket #29.

On June 19, 2006, the Court consolidated all three cases and ordered

OPPOSITION TO MOTION TO MODIFY SCHEDULING ORDER
CV-04-0049 SGL (RNBx)

1 | all subsequent filings to be made in the case with the lowest number, which was the
2 | Bryant declaratory relief action. 09049 Docket #47. On July 18, 2006, the Court
3 | dismissed that case. Docket #63.[1] Thus, since that time, the two cases filed by
4 | Mattel and MGA respectively have proceeded in the lowest-numbered action which
5 | was otherwise dismissed. MGA's Claims to be tried in Phase 2 have been pending
6 | since April 2005.

7 | On November 20, 2006, Mattel filed a Motion for Leave to File
8 | Amended Complaint, seeking leave to amend its Complaint in *Mattel v. Bryant*.
9 | Docket #89. On January 11, 2007, the Court allowed the amendment, but required
10 | Mattel to file it as a counterclaim in Case No. 2:05-cv-2727. Docket #142. Mattel
11 | then filed its Amended Answer and Counterclaims ("AAC") on January 12, 2007.
12 | Docket #143. (Because there was an earlier Amended Answer, this was actually
13 | Mattel's second amended answer). This initial set of counterclaims filed in January
14 | 2007 in the 05-2727 action included a broad set of thirteen claims adding several
15 | new counterclaim-defendants who were not previously parties in the case. The
16 | AAC added claims for: (1) copyright infringement, (2) violation of the RICO act,
17 | (3) conspiracy to violate the RICO act, (4) misappropriation of trade secrets, (5)
18 | breach of contract, (6) intentional interference with contract, (7) breach of fiduciary
19 | duty, (8) aiding and abetting breach of fiduciary duty, (9) breach of the duty of
20 | loyalty, (10) aiding and abetting breach of the duty of loyalty, (11) conversion, (12)
21 | unfair competition, and (13) declaratory relief. *Id.* The January 2007 AAC added
22 | MGA Entertainment (HK) Limited, MGA de Mexico, S.R.L. de C.V., Isaac Larian,
23 | and Carlos Gustavo Machado Gomez as new parties on these various
24 | counterclaims. *Id.*

25 | Mattel's Counterclaims that are the subject of the Phase 2 proceeding
26 | have been pending since January 2007. The Court granted a stay of Phase 2
27 | discovery on February 2, 2008 (Docket #1931 at 3), and that stay was vacated on

---

[1] All subsequent docket references are to the consolidated case docket in 04-9049.

January 6, 2009 (Docket #4640 at 2).

On April 8, 2009, Mattel filed its Motion for Leave to File Third Amended Answer and Counterclaims ("TAAC"). *Id.* Docket #5143.[2] In its Motion for Leave, Mattel argued that the filing of the new pleading would "not significantly expand the scope of the case, if at all." Docket # 5143 at 16.

The Court granted leave to file the "TAAC" on May 21, 2009 and it was deemed filed as of that date. Docket #5565. The TAAC includes one new claim not alleged in the SAAC—a claim for avoidance of intentional and constructive fraudulent transfers under the uniform fraudulent transfer act. Docket #5566 ¶¶217-222. It also includes an additional RICO racketeering enterprise not previously identified, the "IGWT Enterprise," additional predicate acts, and a host of new allegations concerning Jorge Castilla that the Court found were previously known by the parties to be implicated in the case. *Id.* ¶¶ 2, 7, 16, 77-87, 95-97, 105, 107, 112, 114; Docket #5565 (May 21, 2009 Order) at 6 ("[T]he Court finds that the proposed [Castilla] amendments are not untimely; instead, they are in the nature of 'clean up' amendments that succinctly state existing issues fairly stated in the SAAC when measured by the requirements of Rule 8(a)").

Pursuant to the Court's February 11, 2009 Minute Order, the current case deadlines are as follows:

Discovery Cut-off: December 11, 2009

Motion Hearing: February 1, 2010, at 10:00 a.m.

Pretrial Conference: March 1, 2010, at 11:00 a.m.

Trial : March 23, 2010, at 9:30 a.m.

Last Date for Mandatory Settlement Conference: December 11, 2009

Pursuant to the Court's standing order, the parties' Rule 26 expert disclosures are due in mid-October, eight weeks prior to the December 11 discovery cutoff.

---

[2] The Second Amended Answer and Counterclaims were filed on July 12, 2007 ("SAAC"). *Id.* Docket #635, 636, and unnumbered entry after Docket # 640.

### B. Mattel Has Already Engaged In Copious Quantities Of Discovery Related To The Phase 2 Claims.

During the periods of time when Phase 2 discovery has not been stayed, a great deal of discovery has been conducted that bears on Phase 2 issues.

<u>Overall Phase 2 Discovery Already Conducted</u>

Since the consolidated cases were filed, Mattel has propounded 119 interrogatories, 3104 Requests for Production ("RFP's"), and 4754 Requests for Admission ("RFA's"). *Id.* ¶8. Cumulatively, MGA, Mattel, and third parties have produced approximately 5,200,000 pages of documents. *Id.* at ¶6. At least 174 deposition sessions have taken place in this matter to date—107 of them by Mattel and 70 during the period of time when the Phase 2 discovery stay was not in effect. *Id.* ¶¶2,3. Many of the party depositions taken by Mattel prior to the stay included examination of issues related to Mattel's Phase 2 Counterclaims. *Id.* ¶5. For example, Mattel questioned deponents about the alleged violation of RICO in at least 30 depositions, RICO conspiracy in at least 17 depositions; misappropriation of trade secrets in at least seven depositions; and unfair competition in at least ten depositions. *Id.* ¶5.

<u>MGA de Mexico and MGA Canada</u>

MGA de Mexico and MGA Canada have not refused to produce documents. Declaration of Annette L. Hurst in Support of Opposition to Motion to Modify Scheduling Order ("Hurst Decl.") ¶2. Documents already produced in this litigation by MGAE were collected from MGA de Mexico and MGA Canada pursuant to Mattel's broad entity definitions, and interrogatory answers including answers with information from each of those entities were also provided. *Id.* Additional documents have been collected from MGA de Mexico and are in the process of being reviewed and produced. *Id.* MGA Mexico is not obligated to re-produce the same documents over and over again simply because Mattel has now served new responses directed particularly to it.

Further, in response to voluminous requests propounded to MGA Mexico on April 19, 2009, MGA Mexico said it would produce all relevant, non-privileged documents. Docket #5971-2 Ex. 8 (Letter from Amman Khan to Marshall Searcy dated April 9, 2009). That, however, was not enough for Mattel who demanded that MGA Mexico produce all responsive documents, regardless of whether they are relevant. Docket #5971-2 Ex. 11 (Letter from Marshall Searcy to Amman Khan dated April 23, 2009). Had Mattel agreed to accept MGA Mexico's offer to produce all relevant documents, Mattel would have had those documents by now. Instead, Mattel filed an unnecessary and procedurally defective motion to compel that will be heard by the Discovery Master this month. In that motion, Mattel makes no effort to justify its blunderbuss requests or to adequately explain why it is entitled to more than what MGA Mexico already offered to produce.

Mattel has already deposed Susanna Kummerle, a manager of MGA de Mexico (Raouf Decl. ¶4), and this Court sustained MGA's contention that Vargas and Trueba could not be compelled to appear pursuant to notice because they were not managing agents. Docket # 5565 at 3 (May 21, 2009 Order). Contrary to Mattel assertions that Vargas and Trueba are "the only employees left," Vargas and Trueba were laid off in July 2009. Hurst Decl. ¶3. It was Mattel's choice to try to force them to appear through notice rather than seeking letters of request. As soon as a motion for letters of request was filed, MGA promptly filed a notice of non-opposition and agreed that their depositions should be taken. Docket # 6090 (Statement of Non-Opposition).

### Omni & IGWT Transactions

As early as March 16, 2009, Wachovia produced over 10,000 pages of documents to Mattel. Docket #5365 at 2, 14 (Discover Master Order No. 27). Those documents reflect the transactions at issue in the newest claims. Included in that production were documents from, among others, Omni 808. *See* Discovery Master Order No. 27.

As of April 8, 2009, Mattel had sufficient information to represent to the Court in its motion for leave to file its TAAC, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Docket # 5143 (Motion for Leave to File Third Amended Answer and Counterclaims) at 5. Likewise, at the same time it filed its Motion for Leave to Amend, Mattel received documents ▬▬▬▬▬▬▬▬. Indeed, as of April 2009, Mattel received ▬▬▬▬▬▬▬ approximately 100,000 pages of documents. Hurst Decl. ¶4 & Ex. 1.

In April and June 2009, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ produced over 10,000 pages of documents to Mattel. *Id.* ¶5 & Ex. 2. That production likewise related to ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. *See* Hurst Decl. Ex 2. Despite Mattel's characterization that these productions "remain woefully incomplete" (Mot. at 19), Mattel does not claim, nor can it, that Omni 808 has not fully complied with its discovery obligations. It just asserts that "it is not possible" that additional documents do not exist. Mot. at 19. The one set of documents it says have not been produced – "documents revealing any wire transfers" (Mot. at 19) – have been produced. In July 2009, in response to ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. *Id.*

Mattel's motion to compel documents from MGA on its overbroad requests related to the Omni and IGWT transactions is pending. Since Mattel already has every piece of paper documenting those transactions, it is hard to understand exactly what more it thinks might be found. Still, once the Discovery Master determines the scope of what should be produced, it will be.

After necessary scheduling adjustments, the deposition of Mr. Neman took place on August 14, 2009, and the Kadisha deposition is set for August 28,

- 8 -

OPPOSITION TO MOTION TO MODIFY SCHEDULING ORDER
CV-04-0049 SGL (RNBx)

2009, and will have been completed by the time of hearing on this Motion.

### Other Issues Raised By Mattel

The Larian supplemental hard drive inspection was tendered in the first week of August. Hurst Decl. ¶6. Mattel's refusal to confirm that the previously stipulated protocol would apply is the only thing that delayed the inspection. *Id.* ¶6. The trade dress interrogatories were answered in June. *Id.* ¶7. The issue of payments by MGA to former Mattel employees, and the related issue of payments by Mattel to witnesses and others, have all been fully briefed and will be argued before the Discovery Master in the first week of September. *Id.* ¶8.

### C. The Substitution Of Counsel Has Resulted In No Delay.

MGA's recent substitution of counsel has resulted in no material delay in *any* case event. *Id.* ¶9. Since Orrick became counsel of record, MGA has opposed or filed without extension dozens of discovery motions, filed its Ninth Circuit brief on the date due, has responded to or initiated meet and confer on hundreds of discovery requests and numerous other discovery issues, has served discovery and answered discovery, produced documents, and conducted an entire re-review of numerous privileged documents in order to narrow what was necessary for *in camera* inspection. *Id.* ¶9. Although this latter act necessitated a one-week extension of the deadline for the *in camera* review, it in fact *speeded* the case because it reduced the overall burden on Discovery Master O'Brien in conducting the review. *Id.* ¶9.

The only event for which Orrick has sought a material amount of time since coming into the case is to seasonably supplement an interrogatory response requiring that all facts be detailed in support of MGA's thirteen new affirmative defenses—and that extension was necessary because Mattel had not yet served its interrogatory answer setting forth the complete basis for all of its counterclaims (an interrogatory which Mattel had not previously answered prior to the Phase 2 discovery stay). *Id.* ¶10. MGA's response will be served exactly one month after

OPPOSITION TO MOTION TO MODIFY SCHEDULING ORDER
CV-04-0049 SGL (RNBx)

1   Mattel's, which Mattel had refused to provide until ordered to do so at the July 8,
2   2009 hearing (written order issued by the Discovery Master in Order No. 42 at 27
3   ¶5).
4   　　　　Mattel has avoided answering numerous other interrogatories on the
5   basis of a counting objection, which the Discovery Master again overruled on
6   August 14. Order No. 46. Mattel has sought at least as many extensions as a
7   matter of courtesy as has MGA during the period of time since Orrick came into the
8   case. Hurst Decl. ¶11. And, it is only Mattel who has refused to supply dates for
9   deposition in response to MGA's 30(b)(6) Notice. *Id.* ¶12. For the two witnesses
10  whose deposition have been noticed by Mattel since Orrick's substitution, Edmund
11  Lee and Patrick Ma, MGA agreed to bring them from Hong Kong and to produce
12  them after the first week of September. *Id.* ¶12.
13  　　　　MGA has done all of this while at the same time responding to
14  numerous requests for voluminous information by the Monitor related to his
15  ongoing supervision of MGA under the Court's orders.
16  　　**D.　Meet And Confer Regarding This Motion.**
17  　　　　When Mattel first raised the issue of an extension in the case with
18  MGA's new counsel, it requested a six or seven month extension of all dates. Hurst
19  Decl. ¶13. After considering the request, MGA indicated that it was unwilling to
20  agree to any trial continuance unless the Phase 2 proceedings were stayed pending
21  the outcome of the appeal presently pending before the Ninth Circuit. *Id.* ¶13.
22  MGA did not, however, refuse to modify the schedule at all in the absence of a
23  motion. Rather, in meet and confer conversations, MGA expressed its willingness
24  to consider extending the discovery cutoff for a short period of time—if it became
25  clear as the parties approached the deadline that diligent efforts were insufficient to
26  meet the December 11 cutoff. *Id.* ¶13. This reasonable approach was rejected by
27  Mattel, which then moved for an *eight* month continuance (more than it had
28  requested in meet and confer) of "all case deadlines."

## ARGUMENT

### I. MATTEL HAS FAILED TO SATISFY ITS BURDEN TO OBTAIN A TRIAL CONTINUANCE.

Because Mattel is seeking an extension of *all* deadlines—including trial—good cause under Rule 16(b)(4) is not the only consideration. Rather, four factors must be considered by the Court in its exercise of discretion on a trial continuance motion: diligence, usefulness, inconvenience and prejudice. *United States v. 2.61 Acres of Land*, 791 F.2d 666, 671 (9th Cir. 1986). Denial of a trial or motion continuance in order to conduct additional discovery will be reversed only upon a clear showing of actual and substantial prejudice. *Martel v. County of Los Angeles*, 56 F.3d 993, 995 (9th Cir. 1995) (en banc). Because the four-factor standard strongly favors MGA's position that no extension should be granted, a trial continuance should be denied.

***Diligence***. Mattel avers that it has been not only diligent, but tenacious. It places all the blame upon MGA for a lack of diligence—including, ironically, blaming new counsel for a few short discovery extensions. Usually it is new counsel come begging for a continuance, but not here. MGA has engaged in an extraordinary amount of discovery activity pertaining to the Phase 2 claims, and is prepared to continue to do so in its diligent preparation to meet the deadlines set by the Court.

Meanwhile, Mattel has refused to produce witnesses for deposition, refused to answer interrogatories, and refused to produce documents without court orders requiring it to do so. While refusing to provide discovery to MGA, it routinely files discovery motions extolling the great body of evidence it already has in support of its claims as a basis for seeking even more for itself, including twenty-one hours of additional deposition of Mr. Larian, fourteen additional hours of deposition of Mr. Brawer, and approximately thirty-odd other witnesses whom it seeks to depose in connection with the Omni transactions ▬▬▬▬▬

1 ███████████████████████████████████████████
2 ████████████████████████
3       MGA has been diligent. Mattel is using tactics to exacerbate the
4 burdens of litigation as an improper anti-competitive weapon. Mattel has no
5 judgment and is not a creditor of MGA. Mattel has made no motion for contempt
6 of the Court's constructive trust order demonstrating that the IP rights subject to
7 that order have been impaired in any fashion. Mattel has made all of its allegations
8 in the TAAC about the sources of funds supplied to MGA upon information and
9 belief. Mattel has demonstrated absolutely no legally cognizable harm to it in
10 connection with those funds, as *the debt involved no security interest in the IP
11 assets*. Mattel has not been, and never could have been, harmed by the terms upon
12 which these funds were supplied to MGA. Mattel's only harm was that MGA was
13 able to continue defending itself in this litigation—and it is wholly improper to seek
14 to use the financial and psychological burdens of this litigation as an ancillary
15 weapon to try to prevent MGA from continuing to defend itself. The primary focus
16 of Mattel's recent discovery has been MGA's insurance policies and its other recent
17 sources of funds. Mattel is trying to choke the life out of MGA with this litigation.
18       MGA is the most successful competitor to Mattel in the fashion dolls
19 business in decades. Mattel uses the burdens of litigation as a business strategy to
20 squelch competition; it cultivates a reputation as an abusively aggressive litigant.
21 *See Mattel, Inc. v. Walking Mountain*, 353 F.3d 792, 816 (9th Cir. 2003) (affirming
22 sanctions against Mattel for abuse of discovery and reversing denial of attorneys'
23 fees award to defendant); *Mattel, Inc. v. Goldberger Doll Mfg. Co.*, 236 F.R.D. 175,
24 177 (S.D.N.Y. 2006) (refusing to vacate judgment of noninfringement pursuant to
25 settlement "because—precisely because of Mattel's aggressiveness-there is a public
26 interest in knowing, as the Court's prior findings and judgment establish, that not
27 every female doll is a Barbie knock-off"). As Mr. Brawer, a former Mattel
28 executive, testified in his deposition:



1
2
3
4
5
6
7
8
9
10
11
12  Hurst Decl. Ex. 3 at 187. Other former Mattel employees have testified
13  consistently in other actions. *See Mattel, Inc. v. Luce, Forward, Hamilton &*
14  *Scripps*, 2001 WL 1589175, *9 (Jan. 8, 2002) (finding "substantially true" the
15  statement that "Mattel's former employee testified that Mattel aggressively defends
16  against any entries in the fashion doll business and anyone who makes an 11 1/2
17  inch fashion doll paints a target on their back"). That Mattel intends to maximize
18  the use of ancillary burdens associated with this litigation as a competitive weapon
19  is further demonstrated by the fact
20
21  No Holds Barred is an idiomatic expression derived from
22  the sport of wrestling (where the participants use "holds"), meaning that there are
23  no rules to be followed.
24
25
26  Mattel's self-described "tenacity" is in fact abuse. That Mattel will
27  stop at virtually nothing also is amply demonstrated by the fact that
28

1    ▓▓▓▓▓▓▓  Hurst Decl. ¶16 & Ex. 5.  We can only speculate at this point what
2    MGA will find when it investigates Mattel's communications with the Mexican
3    investigators, since Mattel has not produced any of its informal communications
4    with them.  Hurst Decl. ¶17 & Ex. 6.

5    By seeking to depose every person who ever had anything to do with
6    supplying funds to MGA on the basis of its "information and belief" allegations,
7    Mattel seeks to deter any further investment in MGA.  Mattel seeks to establish a
8    clear understanding in the minds of those providing funds to MGA that if they do
9    so in the future, they can expect to turn over their business records in response to
10   broad subpoenas, and sit for duplicative, lengthy and often abusive depositions.

11   Mattel seeks to drive MGA into the ground.  But even with all of
12   Mattel's overbearing, inefficient, unreasonable and oppressive demands designed to
13   drive MGA out of business with the costs and burdens of litigation, *it has still failed*
14   *to demonstrate a single task that cannot be accomplished by the December 11*
15   *cutoff.*  Mattel has never hesitated to expend the necessary resources for the matter
16   at hand, and has at least a dozen lawyers working on this case.  The deadlines can
17   be met in the exercise of *reasonable diligence.*

18   ***Usefulness.***  A continuance of the trial date would not be at all useful
19   at this point in time.  Mattel has not even come close to exhausting its efforts to
20   meet the current schedule, and we are still four months away from the discovery
21   cutoff.  A trial continuance now would just provide an excuse for Mattel to run the
22   case at the same level of volume for a longer period of time.  As the Federal Rules
23   of Civil Procedure Advisory Committee found:
24       the fixing of time limits serves 'to stimulate litigants to
25       narrow the areas of inquiry and advocacy to only those
26       they believe are truly relevant and material.  Time limits
27       not only compress the amount of time for litigation, they
28       should also reduce the amount of resources invested in

| | |
|---|---|
|1| litigation. Litigants are forced to establish discovery |
|2| priorities and thus to do the most important work first.' |
|3|Advisory Committee's Note to 1983 Amendment to Rule 16 (citation omitted).|
|4|Such stimulation is exactly what is needed in this case.|

*Inconvenience.* Mattel has identified no inconvenience from maintaining the current schedule. It makes only a generalized claim that it requires more time to conduct discovery.

*Prejudice.* On this factor, the balance plainly favors MGA by a wide margin. A trial continuance of eight months would be disastrous for MGA. First, MGA is prejudiced every day by having this lawsuit hanging over its head. It is a distraction to its business executives. The claims of racketeering, money laundering and perjury brand it the company as a criminal enterprise. MGA is entitled to get to trial as quickly as possible in order to clear its name.

Second, a continuance of all deadlines for eight months is sure to cost MGA ███████████████████████████████████████ Hurst Decl. ¶18. As the Court is aware, this is money MGA can ill afford to spend on litigation rather than on running its business. Coupled with the distraction to its employees of an additional eight months of litigation and the negative association in the marketplace created by Mattel's claims, the extension is certain to cause MGA material competitive harm. This should not be permitted.

## II. MATTEL HAS NOT DEMONSTRATED GOOD CAUSE TO MODIFY THE OTHER DEADLINES OF THE SCHEDULING ORDER.

Good cause is not present to extend the other deadlines, either. Mattel has not identified a single act that cannot be accomplished in accordance with the existing deadlines. As set out in detail above, an enormous amount of discovery has already been done on the Phase 2 claims. Both parties have had their discovery disputes, and Mattel can be accused of delay and obstruction as much or more as MGA. Still, after Mattel obtained leave to file its TAAC, MGA did not delay with

further pleading motion practice, but instead promptly filed its answer to the new counterclaims and proceeded in discovery with every intention of meeting the Court's deadlines. The parties have engaged in constant activity, and are proceeding apace with every form of discovery including depositions. Mattel simply cannot predict with any accuracy an inability to meet the current discovery cutoff of December 11. Even if Mattel is permitted to exceed the limits and take the more than thirty depositions it apparently wishes to take (a request presently pending before the Discovery Master as of this filing and to which MGA will heartily object), Mattel can still get the work done in four months if it remains as "tenacious" as it has been in the past—and adds a much-needed dose of efficiency.

Moreover, if a few minor adjustments in scheduling are necessary to get everything done, then the parties undoubtedly will be motivated to agree with one another that particular discovery tasks noticed in compliance with the cutoff may be continued for a short time thereafter. In this fashion the parties can be expected to complete all of their work by the end of the year, file summary judgment motions and proceed to trial. Allowing a blanket extension this far in advance of the deadline is simply an invitation to waste time and resources. Mattel should be required to fully exhaust its efforts before it comes to the Court seeking an extension.

### III. IF THE COURT IS GOING TO GRANT A LENGTHY EXTENSION, THEN IT SHOULD ALSO STAY THE PHASE 2 PROCEEDINGS PENDING RESOLUTION OF THE APPEAL.

As detailed herein, the parties are fully capable of meeting the current schedule, a trial continuance would be extremely prejudicial to MGA, and the Motion should be denied in its entirety.

But, if for some reason the Court nonetheless determines that it should grant a lengthy extension as requested by Mattel, then rather than simply allowing the continued litigation of many potentially unnecessary matters, the Court should instead stay the Phase 2 proceedings pending a ruling from the Ninth Circuit on

MGA's appeal.[3] MGA fully understands and respects that the Court disagrees with MGA's views as to the merits of the appeal. But if MGA turns out to be correct in any material respect, then the scope of this case may change dramatically once again if any Phase 1 claims require retrial. There is substantial overlap between the copyright issues from Phase 1 and the criminal copyright infringement predicate act, perjury predicate act, mail and wire fraud predicate acts, and many of the remaining state law claims involve the same legal elements that are being challenged on appeal. Were the injunction orders to be completely or even partially reversed, the legal basis for many of Mattel's counterclaims could either change substantially or simply go away.

If the Court is going to countenance a substantial delay, then it would be more sensible for the parties to await the outcome of the appeal and litigate the remainder of the case in light of whatever orders are made by the Ninth Circuit. This will also make the possibility of a settlement obviating all of the remaining Phase 2 activity much more likely.

---

[3] This is not a request to stay further enforcement of the Phase 1 injunctive orders, but simply a request to stop Phase 2 until completion of Phase 1 review.

## CONCLUSION

For all of the foregoing reasons, Mattel's Motion to Modify Scheduling Order should be denied in its entirety, but if the Court is inclined to grant any material extension, then it should instead stay the Phase 2 proceedings pending the outcome of MGA's appeal to the Ninth Circuit.

Dated:   August 17, 2009

Respectfully submitted,

ANNETTE L. HURST
Orrick, Herrington & Sutcliffe LLP

By: *[signature]*
ANNETTE L. HURST
Attorneys for Plaintiff