# EXHIBIT 1

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

WRITER'S DIRECT DIAL NO.
**(213) 443-3203**

WRITER'S INTERNET ADDRESS
**scottwatson@quinnemanuel.com**

January 28, 2009

**VIA FACSIMILE AND MAIL**

Thomas Nolan, Esq.
Jason Russell, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
300 South Grand Avenue
Suite 3400
Los Angeles, CA 90071

Re:  Mattel, Inc. v. MGA Entertainment, Inc. et al.

Dear Counsel:

I write to meet and confer in advance of a motion to compel regarding MGA Entertainment, Inc.'s response to Interrogatory No. 45 of Mattel's Sixth Set of Interrogatories, and MGA's and Isaac Larian's responses to Mattel's Supplemental Interrogatories.

**MGA's Response to No. 45 of Mattel's Sixth Set of Interrogatories**

Interrogatory No. 45 asks MGA to identify each Bratz product that MGA or its licensees have sold, and to identify the profits, costs, and revenue associated with each such product.  See Mattel, Inc.'s Sixth Set of Interrogatories, dated October 23, 2007.  MGA responded in December 2007 by producing documents with Bates numbers MGA 3709872- MGA 3745687 and MGA 3745688-MGA3746620.  See MGA's Entertainment, Inc.'s Objections and Responses to Mattel, Inc.'s Sixth Set of Interrogatories, dated November 26, 2007 at 10 (MGA will "specify and produce to Mattel copies of the records from which the answer to this interrogatory may be derived or ascertained"); Letters from Timothy Miller to Scott Kidman, dated December 7, 2007 and December 12, 2007 (producing documents in response to Interrogatory No. 45).  Since that time, however, MGA has yet to supplement its response.  See Fed. R. Civ. P. 26(e)(1) ("a party who has . . . responded to an interrogatory . . . must supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or

**quinn emanuel urquhart oliver & hedges, llp**

07209/2771282 NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
TOKYO | Akasaka Twin Tower Main Building, 6th Floor, 17-22 Akasaka 2-Chome, Minato-ku, Tokyo 107-0052, Japan | TEL +81-3-5561-1711 FAX +81-3-5561-1712

EXHIBIT _____

2A

PAGE _____

January 28, 2009
Page 2

response is incomplete"). Please advise when Mattel can expect to receive MGA's supplemental response.

## MGA's Responses to Nos. 51-64, 67-69 and Larian's Responses to Nos. 56-63, 67-69 of Mattel's Supplemental Interrogatories

MGA and Larian provided only objections to many of Mattel's Supplemental Interrogatories on the grounds that Phase Two discovery was stayed until further order of the Court. See MGA's Responses to Interrogatory Nos. 51-64, 67-69 ("Pursuant to Judge Larson's February 4, 2008 Order, Phase Two discovery is stayed until further order of the Court. Accordingly, MGA will not respond to this interrogatory until the stay of Phase Two discovery is lifted by the Court"); Larian's Responses to Interrogatory Nos. 56-63, 67-69 (same).

As you know, the Court lifted the stay on Phase 2 discovery on January 6, 2009. Accordingly, please advise whether MGA and Larian will now provide responses to these interrogatories and, if so, when they will serve them.

Additionally, MGA and Larian have asserted several additional improper objections to these interrogatories. For example, MGA and Larian object to the definition of "Former Mattel Employees" on the grounds that the definition requires them to "make a conclusion as to an ultimate issue in the case" and because they cannot determine whether and which former Mattel employees violated any obligations to Mattel. See MGA's Responses to Mattel's Supplemental interrogatories at 13. Based on this objection, MGA and Larian unilaterally limit the definition to refer only to "Carlos Gustavo Machado Gomez, Mariana Trueba Almada, Pablo Vargas San Jose, Ron Brawer, Jorge Castilla, Dan Cooney, Janine Brisbois, Ron Rae, Nick Contreas and Ricardo Abundis." Id. at 14. This limitation is meritless. To the extent Interrogatory No. 45 requires a legal conclusion at all, it merely requires MGA and Larian to apply the law to the facts at hand. This is proper. Fed.R.Civ.P. 33(a)(2) ("An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to . . . the application of law to fact."). Indeed, the Discovery Master has overruled defendants' prior refusals to respond to discovery requests on these grounds before. See Order Granting Mattel's Motion to Compel MGA to Answer Requests for Admission, dated August 20, 2007 at 7 (overruling legal conclusion objection in the context of requests for admissions). Moreover, MGA and Larian are certainly in a position to determine which Mattel employees other than those specifically identified have provided them with Mattel trade secrets. Indeed, they have an obligation to investigate whether that is the case.

MGA and Larian have also improperly objected to the interrogatories regarding "Mattel Documents" on the grounds that because Mattel has designated the "Mattel Documents" as "Confidential - Attorney's Eyes Only," it is impossible for them to respond. See, e.g., MGA's and Larian's Responses to Interrogatory Nos. 56, 58-63. However, MGA and Larian know which documents they improperly obtained from Mattel and who improperly obtained them; nothing about Mattel's designations alter those facts. MGA or Larian themselves also produced

EXHIBIT ____/____

PAGE____3____

January 28, 2009
Page 3

document after document containing Mattel trade secrets and, in fact, some of these were marked as exhibits at the deposition of Mr. Machado.

Please advise when MGA and Larian will be supplementing their responses to Mattel's Supplemental Interrogatories. If MGA or Larian intends to limit their responses based on these or any other objections, please let me know when you are available to meet and confer regarding these interrogatories. If we cannot resolve this matter during the meet and confer, Mattel will move to compel.

I look forward to your response.

Very truly yours,

Scott L. Watson/wpc

Scott L. Watson

cc: Amman Khan, Esq.

07209/2777120.2

07209/2777120.2

EXHIBIT __/__

PAGE __/__

# EXHIBIT 2

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

WRITER'S DIRECT DIAL NO.
(213) 443-3203

WRITER'S INTERNET ADDRESS
scottwatson@quinnemanuel.com

February 6, 2009

VIA FACSIMILE AND MAIL

Amman Khan, Esq.
Glaser, Weil, Fink, Jacobs & Shapiro, LLP
10250 Constellation Blvd., 19th Floor
Los Angeles, CA 90067

Re: Mattel, Inc. v. MGA Entertainment, Inc. et al.

Dear Counsel:

I write further to our meet and confer of this afternoon and my January 28, 2009 letter regarding MGA Entertainment, Inc.'s response to Interrogatory No. 45 of Mattel's Sixth Set of Interrogatories, and MGA's and Isaac Larian's responses to Mattel's Supplemental Interrogatories.

MGA and Larian agreed during our call that their objection to Mattel's Interrogatories on the grounds that Phase Two discovery was stayed until further order of the Court is no longer viable.

You agreed to let me know on Monday, February 9, 2009 which interrogatories MGA and Larian will respond to and whether those responses will be limited by the remaining objections. If we cannot resolve this matter next Monday, Mattel will move for an order overruling objections and compelling a full and complete response.

Very truly yours,

Scott L. Watson

07209/2789524.1

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
SAN DIEGO | 4445 Eastgate Mall, Suite 200, San Diego, California 92121 | TEL 858-812-5100 FAX 858-812-5110

07209/2789524.1

EXHIBIT 2

PAGE 5

# EXHIBIT 3

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 4

1   Robert C. O'Brien (SBN 154372)
    ARENT FOX LLP
2   555 West Fifth Street, 48th Floor
    Los Angeles, CA 90013-1065
3   Telephone: 213.629.7400
    Facsimile: 213.629.7401
4   obrien.robert@arentfox.com

5

6   Discovery Master

7

8                   UNITED STATES DISTRICT COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10                        EASTERN DIVISION

11

12   CARTER BRYANT, an individual,,      Case No. CV 04-09049 SGL (RNBx)

13              Plaintiff,               Consolidated with
                                         Case No. CV 04-09059
14         v.                            Case No. CV 05-2727

15   MATTEL, INC., a Delaware            **PHASE 2 DISCOVERY MATTER**
     corporation,
16                                       **ORDER NO. 6, REGARDING:**
                Defendant.
17                                       **(1) MOTION OF MATTEL, INC.
                                         TO COMPEL PRODUCTION OF**
18                                       **DOCUMENTS RESPONSIVE
                                         TO ITS FIRST AND THIRD**
19                                       **SETS OF REQUESTS FOR
                                         PRODUCTION; and**
20
                                         **(2) MOTION OF MGA TO**
21                                       **COMPEL PRODUCTION OF
                                         DOCUMENTS RESPONSIVE TO**
22                                       **THE DOCUMENT REQUEST
                                         NOS. 526 AND 528**
23

24
     CONSOLIDATED WITH
25   MATTEL, INC. v. BRYANT and
     MGA ENTERTAINMENT, INC. v.
26   MATTEL, INC.

27

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

                                                    ORDER NO. 6
                                      [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___4___

PAGE ___22___

## I.   **INTRODUCTION**

This Order sets forth the Discovery Master's ruling on:  (1) the motion of Mattel, Inc. ("Mattel") to compel production of documents by MGA Entertainment, Inc. ("MGA Entertainment") responsive to Mattel's First Set of Requests for Production No. 48 and Third Set of Requests for Production Nos. 43 through 75, 87 and 88 [Docket No. 4741] (the "Mattel Motion"), and (2) the motion of MGA Entertainment, Isaac Larian, MGA Entertainment HK Limited, and MGAE De Mexico SRL De Cv (collectively "MGA") to compel Mattel to produce documents responsive to MGA's Requests for Production 526 and 528 [Docket Number 4782] (the "MGA Motion") (collectively, the "Motions").

The Motions came on regularly for hearing before the Discovery Master on March 11, 2009.  All interested parties were represented by counsel and afforded the opportunity to present oral argument on the Motions.  The Discovery Master, having considered the papers filed in support of and in opposition to the Motions, and having heard oral argument thereon, rules as set forth below.

## II.   **THE MATTEL MOTION**

Mattel seeks to compel MGA Entertainment to produce documents responsive to 36 separate document requests.  (Mattel Motion, pp. 9 – 15).  However, MGA Entertainment subsequently agreed to produce all non-privileged documents responsive to 34 of the document requests identified by Mattel.  (MGA Opposition, p. 6).  Therefore, the only document requests that remain at issue are Mattel's Third Set of Requests for Production Nos. 87 and 88.  (*Id.*, p. 7).

### A.   **The Discovery Sought**

Document Request No. 87 seeks "all personnel and vendor files for each person identified in Exhibit 664." (Mattel's Sep. Stmt., p. 3).

Document Request No. 88 seeks "all personnel and vendor files for each person who has worked as an employee of or vendor for [MGA Entertainment] and who also has been at any time an employee or vendor for Mattel." (*Id.*, p. 5).

EXHIBIT ____4____

PAGE ____23____

1    **B.    Phase 1 Ruling**

2    This is not the first time that Mattel has moved to compel responses to

3    Document Request Nos. 87 and 88.  Mattel previously moved to compel responses

4    to these requests as part of Phase 1, but its motion was denied because "Request

5    Nos. 87 and 88 (files for former Mattel employees) . . . relate[d] primarily to Phase

6    2 issues." (Disc. Master Order, Apr. 14, 2008, p. 7).  The former discovery

7    master's April 14, 2008 Order denying Mattel's original motion to compel further

8    held that "[i]n view of the stay on Phase 2 discovery . . . . [n]othing in this Order is

9    intended to authorize or preclude Mattel from seeking further production of

10   documents in response to Request Nos. 1 – 88 during Phase 2 discovery." (*Id.*, pp.7

11   - 8).

12   **C.    Objections of MGA Entertainment**

13   In its Opposition, MGA Entertainment relies on three basic grounds for

14   refusing to produce the requested documents.  First, MGA Entertainment argues

15   that Mattel failed to meet and confer.  Second, MGA Entertainment argues that the

16   requests are overbroad.  Finally, MGA Entertainment argues that California's

17   privacy laws prevent it from producing the requested documents.

18   **1.    Purported Failure To Meet And Confer**

19   As indicated above, MGA Entertainment first asserts that Mattel's Motion to

20   Compel should be denied because Mattel failed to adequately meet and confer.

21   (MGA Opposition, pp. 9 - 10).  However, MGA Entertainment admits that Mattel

22   did meet and confer regarding the two requests at issue prior to filing its original

23   motion to compel in Phase 1. (*Id.*, p. 2 ["The Renewed Motion is in fact based on

24   meet and confer discussions held over one year ago with MGA's prior lead

25   counsel."]; *see also id.*, p. 9 n.2 [Mattel "met and conferred over a year ago"].)

26   MGA further provides no legal authority, and the Discovery Master has found

27   none, supporting the proposition that a party must meet and confer again before

28   renewing a motion to compel that was denied merely because the case had been

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 2 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ____4____

PAGE ____24____

1　divided into phases and where the order denying the motion expressly noted that

2　nothing in the ruling was intended to "preclude Mattel from seeking further

3　production of documents in response" to the requests as part of Phase 2 discovery.[1]

4　(Order Apr. 14, 2008, pp: 7 - 8).

5　　　Even assuming such a requirement did exist, Mattel in fact met and conferred

6　with MGA Entertainment for a second time following the filing of its current

7　motion and resolved 34 of the 36 document requests in dispute. (MGA Opposition,

8　pp. 1, 6.) However, the parties were still unable to resolve their differences relating

9　to Document Requests Nos. 87 and 88. (*Id.*, 7–9.) It is, therefore, unclear what

10　could have been accomplished by an additional meet and confer on these issues

11　prior to the filing of the motion. Regardless, Mattel met and conferred once before

12　filing its current motion to compel and that is all that is required by the Federal

13　Rules of Civil Procedure and the discovery procedures governing this case.

14　　　　　　**2.　　Overbreadth Objection**

15　　　MGA Entertainment's second argument in opposition to Mattel's Motion is

16　that Document Requests Nos. 87 and 88 are "grossly overbroad." (MGA

17　Opposition, pp. 14 – 15). Specifically, MGA Entertainment argues that the requests

18　are improper because they are not tied "to any product(s) that Mattel alleged that

19　MGA [Entertainment] stole from Mattel." (*Id.*,14.) Without citing any legal

20　authority in support of this position, MGA Entertainment asserts that the current

21　Discovery Master should find that the requests are overbroad because the prior

22　discovery master merely compelled it to produce portions of personnel and vendor

23　files related to the Bratz products as part of Phase 1 discovery. (*Id.*; *see also* Order

24　Apr.14, 2008, pp. 7 - 8). But MGA Entertainment's argument fails to recognize

25　//

26

27

28

[1] The arguments of MGA Entertainment that (1) it has new lead counsel and (2) the case has "changed dramatically" since the initial meet and confer took place in 2008 are not supported by any legal authority, (MGA Opposition, p. 9), and do nothing to alter the fact that Mattel met and conferred on these issues previously.

EXHIBIT ___4___

PAGE ___25___

1  the differences between Mattel's Phase 1 and Phase 2 claims.[2]

2       The touchstone for determining whether a particular discovery request is

3  reasonably calculated to lead to the discovery of admissible evidence in this case is

4  whether the request bears some relation to the issues to be tried in Phase 2.

5  Whereas Phase 1 of this case primarily addressed whether Mattel or MGA

6  Entertainment owned the rights to the Bratz products, Mattel's Phase 2 claims are

7  not linked to a single discrete product or even multiple products.  Instead, the issues

8  to be litigated in Phase 2 include, among other things, Mattel's claim that MGA

9  Entertainment stole "a vast array of trade secrets and other confidential information

10 that comprise Mattel's intellectual infrastructure," including, among other things,

11 stealing "Mattel's proprietary business methods, practices and information."

12 (Second Amended Answer and Counterclaims ["SAAC"], ¶ 20).  Mattel alleges in

13 its Counterclaims, which are to be litigated in Phase 2, that MGA Entertainment :

14   • "engaged in a pattern of stealing and using [Mattel's] property and trade

15     secrets," (*Id.*,    ¶ 1);

16   • "repeated—and even expanded—its pattern of theft [regarding the Bratz

17     dolls] on numerous occasions," including by hiring away three key Mattel

18     employees in Mexico who "stole virtually every category of Mattel's

19     sensitive and trade secret business plans and information for the Mexican

20     market as well as a significant quantity of sensitive and trade secrete

21     information for Mattel's U.S. and worldwide businesses," (*Id.*, ¶ 3);

22   • "stole Mattel trade secrets regarding Mattel's customers, sales, projects,

23     advertising and strategy, not only for Canada, but the United States and the

24     rest of the world," (*Id.*, ¶ 70);

25 //

26

27  [2] MGA Entertainment's claim that the document requests are overbroad is also inconsistent with its statement that it

28  would "produce all requested personnel files in their entirety (except for any medical or health related documents) if
    Mattel gave notice to the employees and obtained their consent for such disclosure."  (MGA Opposition, pp. 8 – 9).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 4 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT     4

PAGE     26

1     • "took from Mattel documents containing proprietary advertising, project,

2         sales, customer and strategy information for not only Canada, but for the

3         United States," (*Id.*, ¶ 4);

4     • "engaged in an ongoing, widespread pattern of . . . inducing Mattel

5         employees to steal Mattel's confidential information or other property and

6         take it with them to MGA [Entertainment]," (*Id.*, ¶ 5);

7     • stole "Mattel's plans, strategy and business information for the Mexican

8         market and materials related to Mattel's worldwide business strategies," (*Id.*,

9         ¶ 37);

10     • "enticed [Mattel's employees] to steal Mattel's most sensitive business

11         planning materials, and then hired them to assist in establishing and running

12         MGA's new Mexican subsidiary," (*Id.*, ¶ 37);

13     • "directed [certain Mattel employees'] to steal virtually all Mattel confidential

14         and proprietary information that they could access and bring it with them to

15         MGA," (*Id.*, ¶ 43), including "virtually every type of document a competitor

16         would need to enter the Mexican market, and to unlawfully compete with

17         Mattel in Mexico, in the United States and elsewhere," such as "global

18         internal future line lists that detailed anticipated future products; production

19         and shipping costs for Mattel products, daily sales data for Mattel products;

20         customer data; sales estimates and projections; marketing projections;

21         documents analyzing changes in sales performance from 2003 to 2004;

22         budgets for advertising and promotional expenses; strategic research

23         reflecting consumer responses to products in development; media plans;

24         consumer comments regarding existing Mattel products customer discounts

25         and terms of sale; customer inventory level data; assessments of promotional

26         campaign success; market size historical data and projections; marketing

27         plans and strategies, merchandising plans; retail pricing and marketing

28         strategies; and other similar materials," (*Id.*, ¶ 48);

EXHIBIT ___4___

PAGE ___27___

1      • "targeted certain Mattel employees who have broad access to Mattel

2      proprietary information in an effort to induce and encourage them to join

3      MGA [Entertainment] and to steal or otherwise wrongfully misappropriate

4      Mattel confidential information and trade secrets," including by "promising

5      these employees salaries 25 percent or more higher than they earn at Mattel

6      and stating to them that they should not be concerned by legal action taken

7      by Mattel to protect its trade secrets and its rights because such claims are

8      hard to prove and easy to defeat," (*Id.*, ¶ 69); and

9      • "hired directly from Mattel's United States operations at least 25 employees,

10     from Senior Vice-President level to lower level employees," and that some of

11     these individuals misappropriated "Mattel confidential and proprietary

12     information, including Mattel's strategic plans; business operations; methods

13     and systems; marketing and advertising strategies and plans; future product

14     lines; product profit margins, and customer requirements." (*Id.*, ¶ 77).

15         In light of the foregoing allegations, the documents requested by Mattel fall

16 within the purview of permissible discovery allowed by Federal Rule of Civil

17 Procedure 26. Rule 26 permits the discovery of information that is "relevant to the

18 claim or defense of any party." Fed.R.Civ.P. 26(b)(1). Accordingly, Mattel's

19 request for "all personnel and vendor files" of individuals who either (1) work at

20 MGA Entertainment and previously used to work for Mattel or (2) who are vendors

21 of MGA Entertainment and used to work with or had contact with Mattel appears to

22 be "reasonably calculated to lead to the discovery of admissible evidence." *Id.*

23         **3.    Privacy Rights Objection**

24         MGA Entertainment's final argument is that the records sought by Mattel

25 (i.e., personnel and vendor files) invade the privacy rights of non-parties and cannot

26 be produced under *California law* unless the individuals affected are given advance

27 notice of the requests and afforded an opportunity to object to the production.

28 (MGA's Opposition, pp. 10 – 14). Specifically, MGA Entertainment argues that

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____4_____

PAGE _____28_____

1    the California Constitution and California Code of Civil Procedure § 1985.3

2    together constitute a fundamental public policy in California that do not allow

3    MGA Entertainment to "place its employees privacy rights at risk." (*Id.*). But each

4    of these contentions is unavailing.

5        As an initial matter, a protective order has been entered in this case. (Mattel

6    Reply, p. 2). This fact is crucial to analyzing the privacy concerns raised by MGA

7    Entertainment, because courts within the Ninth Circuit have repeatedly held that,

8    where such an order has been (or will be) entered, state-based privacy laws do not

9    bar production of personnel files.[3] *See, e.g., Nakagawa v. Regents of Univ. of Cal.*,

10   2008 WL 1808902, *3 (N.D. Cal. April 22, 2008) (ordering production of

11   personnel files and stating "[a]ny other privacy concerns defendant may have

12   should be addressed by a protective order"); *Grinzi v. Barnes*, 2004 WL 2370639,

13   *1 (N.D. Cal. Oct. 20, 2004) ("The proper mechanism for an employer to use to

14   protect an employee's privacy interest in his personnel file is to obtain, either by

15   stipulation or motion, a properly crafted protective order under Rule 26(c)");

16   *Maldonado v. Cal. Dep't of Corr. & Rehab.*, 2007 WL 4249811, *7 (E.D. Cal. Nov.

17   30, 2007) ("The court has already analyzed these non-party privacy rights, and the

18   protective order should serve to remedy any concern in this regard."); *Walton v. K-*

19   *Mart, Inc.*, 2007 WL 4219395, *2 (N.D. Cal. November 28, 2007) ("In view of the

20   employees' privacy interests, documents shall be produced pursuant to an

21   attorneys' eyes only protective order."); *Keller-McIntrye v. Coll. Of Health &*

22   *Human Servs.*, 2006 WL 3456672, *1-*2 (N.D. Cal. November 29, 2006) (ordering

23   production of employee information, pursuant to a protective order, despite privacy

24   claims under California law).

25        Further, contrary to MGA Entertainment's assertions, the Ninth Circuit has

26   ---
     [3] In fact, some of the California authority relied on by MGA Entertainment contemplates that confidential
27   information may be appropriately disclosed if a protective order is in place. (*See, e.g., Valley Bank of Nev. v.*
     *Superior Court*, 15 Cal. 3d 652, 658 (1975) ["[T]he trial court has available certain procedural devices which may be
     useful in fashioning an appropriate order that will, so far as possible, accommodate considerations of both disclosure
28   and confidentiality."]).

- 7 -                                           ORDER NO. 6
                                    [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___4___

PAGE ___29___

1  held that "personnel files are discoverable in federal question cases . . . despite

2  claims of [state-created] privilege,"[4] (*Garrett v. San Francisco*, 818 F.2d 1515,

3  1519 n. 6 (9th Cir. 1987); *see also Kerr v. District Court*, 511 F.2d 192, 197 (9th

4  Cir. 1975)), and this includes any claim of privilege resulting from California Code

5  of Civil Procedure § 1985.3,[5] (*see Reed v. Williams*, 2007 WL 2140506, *4 (E.D.

6  Cal. July 25, 2007) [holding that the requirements of California Code of Civil

7  Procedure § 1985.3 do not apply in federal question cases because "federal law

8  applies in terms of substantive, privilege and discovery law."]). Accordingly, the

9  privacy concerns raised by MGA Entertainment have no applicability here.

10      Despite the foregoing, and notwithstanding the existence of the protective

11  order as a safeguard, the Discovery Master finds that the requested documents

12  should exclude "health care specific information," because Mattel's counsel

13  conceded that Mattel is not seeking such information in its discussions with counsel

14  for MGA Entertainment. (*See* Decl. of Amman Khan, Ex. G, 2). Counsel for

15  Mattel restated this position at the hearing.

16      The Discovery Master further orders MGA Entertainment to redact any

17  social security numbers, tax identification numbers, dates of birth, indication of

18  sexual orientation, bank account numbers, and checking account numbers that may

19  be included within the requested documents prior to production, as Mattel has not

20  made a showing at this time that such discrete personal information is reasonably

21  calculated to lead to the discovery of admissible evidence.

22      **D.    Conclusion**

23      The documents sought by Mattel's Request Nos. 87 and 88 are reasonably

24  calculated to lead to the discovery of admissible evidence regarding Mattel's Phase

---

25  [4] Mattel's SAAC includes, among other things, claims for alleged RICO violations under U.S.C. §§ 1962(c), 1962(d)
26  and 1964(c), (SAAC at ¶¶ 88 – 105) and MGA Entertainment removed this action to federal court on federal question
    grounds, (Mattel Reply, p. 5).

27  [5] The same rule may even apply in diversity cases, (see *Corser v. County of Merced*, 2006 WL 2536622, *2 (E.D.
    Cal. August 31, 2006) [holding that "the extent that Section 1985.3 may provide a California-law privilege [] the
28  privilege does not apply to this litigation"], but the Discovery Master need not resolve that issue.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 8 -                                          ORDER NO. 6
                                    [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___4___

PAGE ___30___

1   2 claims, and are not protected from disclosure on the grounds of third-party

2   privacy rights or any other ground cited by MGA Entertainment.

3   **III.    MATTEL'S REQUEST FOR SANCTIONS**

4           In its Reply, Mattel also seeks $1,460 in sanctions relating to the attorneys'

5   fees and costs it incurred in drafting the reply. (Mattel's Reply, pp. 11 – 13; *see*

6   *also* Decl. of Zachary Krug, ¶ 14). As the Discovery Master has previously stated,

7   however, he, like the Court,[6] disfavors the insertion of new arguments at the reply

8   stage that could have been raised in the moving papers.[7] This rule is routinely

9   adhered to by courts in the Ninth Circuit. *See, e.g., United States v. Boyce*, 148

10  F.Supp .2d 1069, 1085 (S.D. Cal. 2001); *Leick v. Hartford Life & Accident Ins. Co.,*

11  2007 WL 1847635, at *1, n. 1 (E.D. Cal. June 27, 2007); *Stewart v. Wachowski,*

12  2004 WL 2980783, at *11 (C.D. Cal. Sept. 28, 2004); *Hamilton v. Willms*, 2007

13  WL 2558615, at *11 (E.D. Cal.2007); *see also United States v. Cox*, 7 F.3d 1458,

14  1463 (9th Cir.1993); *United States v. Wright*, 215 F.3d 1020, 1030 n. 3 (9th

15  Cir.2000).

16          Accordingly, the Discovery Master therefore declines to award sanctions

17  against MGA Entertainment.

18  **IV.    MGA'S MOTION TO COMPEL RESPONSES TO DOCUMENT**

19          **REQUEST NOS. 526 AND 528**

20          In its motion, MGA seeks an order compelling Mattel to produce documents

21  responsive to two document requests (the "Requests") included in MGA's Fifth Set

22  of Requests for Production of Documents and Things dated August 3, 2007.

23  //

24

25  [6] In *Bryant v. Mattel, Inc.*, 573 F.Supp.2d 1254, 1273 n.7 (C.D. Cal. 2007), the Court noted that it "ordinarily would
    not consider" arguments made for the first time on reply but did so only "because [undertaking the analysis did] not
26  change [its] ultimate conclusion."

27  [7] Mattel was apparently aware of MGA Entertainment's grounds for opposing the motion before it filed its moving
    papers, since Mattel met and conferred with MGA Entertainment prior to bringing its motion. Mattel nevertheless
    failed to request a sanctions award in its moving papers, thereby depriving opposing counsel and MGA
28  Entertainment of the chance to oppose the request in the Opposition brief.

EXHIBIT ___4___

PAGE ___31___

### A.   The Discovery Sought

The Requests seek copies of Mattel's communications with law enforcement authorities (Request No. 526) and copies of any documents that it has provided to law enforcement authorities (Request No. 528).  The complete text of the Requests is as follows:

- **Request No 526**:  All DOCUMENTS that constitute COMMUNICATIONS between YOU (including YOUR agents and attorneys) and law enforcement authorities in Mexico, Canada, or the United States, including but not limited to the United States Attorney's Office, the Department of Justice and any national, regional, state or local authorities, concerning any of the allegations in YOUR COUNTERCLAIMS or any other alleged taking of confidential MATTEL information by MGA or persons currently or formerly employed by MGA.

- **Request No. 528**:  All DOCUMENTS that you (including YOUR agents and attorneys) provided to law enforcement authorities in Mexico, Canada [*sic*] or the United States, including but not limited to the United States Attorney's Office, the Department of Justice and any national, regional, state or local authorities concerning any of the allegations in YOUR COUNTERCLAIMS or any other alleged taking of confidential MATTEL information by MGA or persons currently or formerly employed by MGA.

### B.   Mattel's Objections

In its Opposition, Mattel relies on three basic grounds for refusing to produce the requested documents.  First, Mattel argues that the Requests are overbroad and encompass information not reasonably calculated to lead to the discovery of admissible evidence.  Second, Mattel argues that the documents are protected by the work product doctrine.  Finally, Mattel argues that the documents are

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 10 -

1   privileged.

2   ## 1.    Overbreadth Objection

3   Among the issues to be adjudicated in Phase 2 are Mattel's counterclaims for

4   RICO violations, misappropriation of trade secrets and unfair competition. Mattel's

5   SAAC alleges that "Mattel notified Mexican authorities about the [alleged] theft of

6   its trade secret and confidential information." (SAAC, ¶ 53). The SAAC further

7   details Mattel's knowledge of the Mexican authorities' activities related to MGAE

8   de Mexico and suggests that Mattel communicated with the authorities regarding

9   their seizure of certain documents from MGA's office. (*Id.*, ¶ 53). Mattel also

10  alleges that "Mattel notified Canadian law enforcement authorities" about its belief

11  that Janine Brisbois copied documents onto a thumb drive when she left Mattel.

12  (*Id.*, ¶ 75). Further, Mattel states that it communicated with Canadian authorities

13  regarding the information allegedly recovered from Brisbois' thumb drive. (*Id.*, ¶

14  75).

15  Mattel has also acknowledged that at least some of the documents responsive

16  to Request No. 526 relate to Mattel's claims by producing to MGA "the judicial file

17  in criminal proceedings in Mexico, relating to the trade secret thefts in that country,

18  *and some of those materials reflected communications between Mattel and law*

19  *enforcement.*" (Declaration of Timothy L. Alger dated January 24, 2008 ["Alger

20  Decl."], ¶ 16 (emphasis added).)

21  Given Mattel's allegations regarding the theft of its trade secrets, its

22  communications with law enforcement officials, and the overlap between the civil

23  and criminal claims Mattel is pursuing, the Discovery Master concludes that, as a

24  threshold matter, MGA has made a prima facie case that the Requests seeking the

25  documents Mattel provided to law enforcement officials, as well as Mattel's

26  communications with those officials, are reasonably calculated to lead to the

27  discovery of admissible evidence regarding the claims to be adjudicated in Phase 2.

28  Although the Requests on their face relate to Phase 2 issues, Mattel

EXHIBIT __4__

PAGE __33__

1    nonetheless argues in its Opposition that Request No. 526 is overbroad because
2    Mattel's civil claims are wholly separate and independent from any criminal relief
3    it is seeking. (Mattel Opposition, p. 4 ["The civil claims stand or fall based on
4    MGA's actions, not Mattel's subsequent communications with law enforcement."]).
5        In so arguing, Mattel misses the point. The issue is not whether Mattel's
6    communications with law enforcement officials constitute the basis of Mattel's
7    claims. Rather, the issue is whether those communications are reasonably
8    calculated to lead to the discovery of admissible evidence regarding what Mattel
9    itself characterizes as the basis of its claims, namely MGA's alleged acts of trade
10   secret misappropriation. Mattel does not dispute that its subsequent
11   communications with law enforcement involve the same conduct that is the basis of
12   the civil claims. On the contrary, Mattel has alleged in its SACC that it is
13   concurrently seeking relief through the criminal justice system and this civil action
14   based on the same documents allegedly stolen by MGA and confirmed that fact
15   during the meet and confer process. (See, e.g., Alger Decl., ¶ 16 [asserting that "the
16   judicial file in the criminal proceedings in Mexico" are among the "documents
17   *relating to Mattel's Counterclaims*."] [emphasis added].)
18       Mattel's communications with law enforcement may, among other things,
19   disclose what Mattel told the investigating authorities about what information was
20   taken, the people who have knowledge of the thefts, and any supposed criminal
21   intent on the part of MGA or the former Mattel employees who supposedly took the
22   information. Given this admitted overlap in subject matter, the communications
23   between Mattel and law enforcement agencies are discoverable. (*See, e.g., In re*
24   *Qwest Commc'ns Intl., Inc.*, 450 F.3d 1179, 1181-82, 1201 (10th Cir. 2006) [private
25   plaintiff permitted discovery of materials provided to law enforcement authorities
26   concerning the same underlying facts]).
27       With respect to Request No. 528 (seeking documents Mattel provided to law
28   enforcement agencies), Mattel argues that it has already provided to MGA tens of

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 12 -                                    ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___9___

PAGE ___34___

1   thousands of documents that pertain to the underlying facts of Mattel's

2   counterclaims. (Mattel Opposition p, 5). But, as Mattel admits, that production

3   does not satisfy Request No. 528 which, in Mattel's words "seeks something more

4   and different." (*Id.*). According to Mattel, the "different" information sought by

5   Request No. 528 is information that would enable "MGA's executives to defend

6   against actual or potential criminal charges . . ." (*Id.*). However, since those

7   possible criminal charges are based on the same conduct as Mattel's civil claims, it

8   would be inappropriate to bar MGA from obtaining that information for use in this

9   lawsuit, simply because that same information might also relate to possible future

10   criminal cases (which may or may not ever be filed). Put another way, the

11   information sought by MGA to defend the civil claims does not become

12   "irrelevant" simply because it might have the ancillary effect of facilitating MGA's

13   defense of possible criminal claims.

14       Lastly, Mattel argues that both Requests are overbroad because they are not

15   limited to misconduct expressly alleged in the SAAC but also seek "documents

16   'concerning . . . any other alleged taking of confidential MATTEL information by

17   MGA . . .'" (Mattel Opposition, pp. 5 -6). In response, MGA points out that the

18   SAAC includes a catch-all allegation stating that unidentified "additional

19   employees accessed, copied and took from Mattel confidential and proprietary

20   information." (SAAC, ¶ 77). Mattel's apparent purpose in including such an

21   allegation was to preserve its right to allege and prove other acts of

22   misappropriation besides those expressly alleged in the SAAC. Accordingly, since

23   Mattel reserves the right to seek relief regarding additional, un-alleged acts, MGA

24   should likewise be entitled to conduct discovery to identify those additional acts

25   and to determine what evidence Mattel may have to prove them.

26       **2.   Work Product Objection**

27       Next, Mattel argues that production of Mattel's communications with law

28   enforcement agencies, together with the documents Mattel chose to provide to those

EXHIBIT   4

PAGE   35

1    agencies, would violate the attorney work-product doctrine by revealing counsel's
2    strategy and mental processes. (Mattel Opposition, p. 6).

3        To qualify for work-product protection under Federal Rule Civil Procedure
4    26, documents must meet two requirements: (1) they must be "prepared in
5    anticipation of litigation or for trial," and (2) they must be prepared "by or for
6    another party or by or for that other party's representative." *In re Cal. Pub. Utils.*
7    *Comm'n*, 892 F.2d 778, 780-781 (9th Cir. 1989). In determining whether the
8    doctrine is applicable to a particular document, "the court must consider the
9    *primary purpose* of the work product doctrine, which is to 'prevent exploitation of a
10   party's efforts in *preparing for litigation.*'" *Johnson v. Finn*, 2007 WL 3232253,
11   *1 (E.D. Cal. Oct. 31, 2007) (emphasis added). The authorities Mattel cites agree
12   that the purpose of the work product doctrine is "to establish a zone of privacy for
13   *strategic litigation planning.*" (Opposition, p. 6 quoting *United States v. Adlman*,
14   68 F.3d 1495, 1501 (2d Cir. 1995) [emphasis added].)

15       Here, Mattel does not demonstrate any connection between its
16   communications with law enforcement officials, on the one hand, and its litigation
17   strategy in the present civil case, on the other hand. Rather, it appears that Mattel's
18   primary purpose in communicating with, and disclosing the disputed documents to,
19   various law enforcement officials was to instigate criminal prosecutions by
20   prosecutorial agencies, not pursue its civil claims against MGA. Thus, to the extent
21   the selection of particular documents by Mattel's counsel reveals counsel's
22   impressions and mental processes, the window into counsel's thinking relates to
23   counsel's strategy of encouraging *criminal prosecution* by the relevant authorities.
24   There is no showing that counsel's thinking regarding how best to achieve *that*
25   purpose would also reveal counsel's strategies and impressions in any matter
26   related to the current civil litigation. In short, Mattel has made an insufficient
27   showing that the communications and documents at issue constitute work product
28   in *this* litigation. Accordingly, the work-product doctrine is inapplicable.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 14 -                                    ORDER NO. 6
                                          [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____4_____

PAGE _____36_____

1      Further, even if the work-product doctrine somehow applied to Mattel's

2  communications with law enforcement agencies, Mattel waived it, in at least two

3  ways. First, Mattel admits that it has already produced some of those

4  communications to MGA. (See Alger Decl., ¶ 16.)

5      Second, to the extent Mattel's communications with law enforcement

6  officials disclose its conclusions and theories to law enforcement officials, such a

7  disclosure also constitutes a waiver. Mattel admits that the work-product doctrine

8  is waived when material is "voluntarily disclosed such that it may become readily

9  accessible to an adversary." (Mattel Opposition, pp. 6 - 7 (citing *Aronson v.*

10  *McKesson HBOC, Inc.*, 2005 WL 934331, *6 (N.D. Cal. Mar. 31, 2005)). In fact,

11  the courts have specifically held that "disclosing information to governmental

12  authorities in the hope that they will attack an adversary . . . cannot be said to be

13  done 'in the pursuit of ...trial preparation.' Thus, disclosure in such a situation

14  results in a waiver of the work product protection." *Bank of America, NA. v. Terra*

15  *Nova Insur. Co.*, 212 F.R.D. 166, 172-73 (S.D.N.Y. 2002). Therefore, when a party

16  provides information to law enforcement agencies and "harbor[s] the hope, even if

17  un-communicated, that its disclosures would encourage the Government to

18  prosecute" a third party, this disclosure constitutes waiver because it "substantially

19  increase[s] the potential that the information gained during the investigation would

20  be disclosed to [the] adversary." *Id.*

21      Given that Mattel disclosed the documents to these entities with the intention

22  of triggering criminal prosecution of MGA and its representatives, the intended

23  effect of Mattel's disclosure is to make those documents available to MGA under

24  the applicable rules of criminal procedure, which would entitle MGA to the

25  documentary evidence on which any alleged criminal liability is based. Mattel

26  itself concedes this fact when it acknowledges that MGA can request disclosure of

27  the information provided to law enforcement officials "in accordance with the

28  applicable law in the countries involved." (Mattel Opposition, p. 5). Mattel knew

EXHIBIT ___4___

PAGE ___37___

1    when it provided the documents to law enforcement agencies that such production

2    "substantially increased the opportunities for potential adversaries to obtain the

3    information." (Mattel Opposition, p. 7). Thus, Mattel cannot demonstrate a

4    reasonable expectation this material would remain protected.

5              **3.    Privilege Objections**

6         Lastly, Mattel asserts that the litigation privilege codified in Cal. Civ. Code §

7    47(b) and/or the *Noerr-Pennington* doctrine bar MGA from seeking any affirmative

8    relief from Mattel based on the latter's communications with law enforcement

9    authorities. Consequently (Mattel reasons), those communications "are not

10   properly discoverable" in this action. (Mattel Opposition, p. 8).

11        That argument is based on a premise for which there is no support in the

12   record, namely that MGA seeks the subject documents in order to assert a claim

13   against Mattel arising from Mattel's allegedly privileged communications.

14   Proceeding from this unsupported assumption, Mattel then argues that such a non-

15   existent claim would be barred.

16        However, that speculative foray is entirely non-responsive to the MGA

17   Motion. The MGA Motion asserts that the documents should be produced not

18   because MGA intends to sue Mattel for communicating with law enforcement

19   authorities, but rather because Mattel itself injected the issue of the criminal

20   proceedings *into this lawsuit* by asserting in its SAAC that Mattel has

21   communicated with criminal authorities in various countries regarding the conduct

22   of MGA upon which Mattel bases its counterclaims. *That* is the reason MGA

23   offers for seeking the subject documents.

24        Accordingly, Mattel's attempt to rely on privilege fails to address the actual

25   position taken by MGA in its Motion or the issues raised in the pleadings. Further,

26   the cases cited by Mattel demonstrate on their face that the subject privileges are

27   restricted to situations not present here. Those cases stand for the proposition that

28   parties who communicate with law enforcement officials may be immune from

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 16 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___4___

PAGE ___38___

1  *liability* under California tort law and federal anti-trust law, respectively – not that

2  such parties are immune from *discovery* in civil suits.

### a.    The Litigation Privilege

4        The California Supreme Court described the scope of the litigation privilege

5  in a case cited by Mattel, *Hagberg v. Cal. Fed. Bank FSB*, 32 Cal. 4th 350 (2004).

6  According to Mattel, *Hagberg* stands for the proposition that a communication to

7  law enforcement officials about suspected criminal activity "enjoys an unqualified

8  privilege." (Mattel's Opp'n, 8.)  However, nothing in the *Hagberg* opinion

9  addresses the issue presented here, namely whether communications and documents

10  passed from the reporting party to the law enforcement agency is discoverable in

11  litigation arising out of the same underlying, allegedly criminal, activities. Rather,

12  in *Hagberg* the question presented was "whether *tort liability* may be imposed for

13  statements made when a citizen contacts law enforcement personnel to report

14  suspected criminal activity...." 32 Cal. 4th at 355 (emphasis added).  The Court

15  answered that question in the affirmative. *Id.*

16        The other California cases cited by Mattel are in accord.  See *Jacob B. v.*

17  *County of Shasta*, 40 Cal. 4th 948, 955, 956 (2007) ("We have discussed the basic

18  principles underlying section 47(b)'s litigation privilege in many cases.... [P]ublic

19  agencies... must be permitted to provide such information without fear of being

20  harassed by *derivative lawsuits*.") (emphasis added); *Silberg v. Anderson*, 50 Cal.

21  3d 205, 213, 214 (1990) (the "*litigation* privilege" provided by section 47(2)

22  "afford[s] litigants and witnesses... the utmost freedom of access to the courts

23  without fear of being harassed subsequently by *derivative tort actions*") (emphasis

24  added); *Williams v. Taylor*, 129 Cal, App. 3d 745 (1982) (affirming summary

25  judgment against plaintiff's claims for slander and malicious prosecution based on

26  Section 47(b)).

### b.    The *Noerr-Pennington* Doctrine

28        "The Noerr-Pennington doctrine *immunizes from the antitrust laws* anti-

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 17 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT  4

39

PAGE

1   competitive conduct undertaken to influence or petition government bodies, or to

2   utilize judicial or quasi-judicial mechanisms." (*Forro Precisions, Inc. v. Intl Bus.*

3   *Mach.* 673 F.2d 1045, 1059 (1982) [emphasis added]). In *Forro*, the plaintiff

4   brought suit against IBM for assisting a police search of his business premises.

5   Based in part on the *Noerr-Pennington* doctrine, the court held that the plaintiff's

6   antitrust claim could not be based on IBM's solicitation of aid from the police

7   department that resulted in the police investigation and search of his premises, or on

8   IBM's assistance in these activities. (*Id.* at 1053 ["IBM's actions in assisting the

9   police...were privileged and could not serve as a basis for *civil liability*."] [emphasis

10  added]) . In short, the "privilege" at issue in *Forro* dealt with freedom from

11  antitrust liability, not freedom from discovery.[8]

12                          **c.      Application To The Present Case**

13         Here, MGA has not yet asserted any affirmative claim against Mattel arising

14  out of Mattel's communication with law enforcement officials. If and when MGA

15  attempts to do so, it may well be appropriate for Mattel to assert the privileges

16  discussed above in an attempt to defeat any such claims on the merits. In the

17  meantime, MGA is simply defending Mattel's civil claims in the present action, and

18  no privilege cited by counsel prevents MGA from conducting discovery regarding

19  the basis for those claims.

20         **C.     Conclusion**

21         The documents sought by MGA's Request Nos. 526 and 528 are reasonably

22  calculated to lead to the discovery of admissible evidence regarding Mattel's Phase

23  2 claims, and are not protected from disclosure under any of the privileges or

24  doctrines cited by Mattel.

25  //

26  _____

27  [8] Mattel cites only one case in which the Court actually held that a party was protected from the production of
    communications made to government agencies regarding suspected criminal activity. However, in that case (which
    arose under the Annunzio-Wylie Act) the communications were sought to prove a defamation claim based on those
28  communications. *See Whitney Nat'l Bank v. Karam*, 306 F. Supp. 2d 678, 682 (S.D. Tex. 2004).

EXHIBIT _____4_____

PAGE _____40_____

## V.   **DISPOSITION**

1.     The Mattel Motion is **GRANTED**, with the exception of health care specific information, social security numbers, tax identification numbers, dates of birth, bank account numbers, and checking account numbers.

2.     Mattel's request for sanctions is **DENIED**.

3.     The MGA Motion is **GRANTED**.

4.     All non-privileged documents shall be produced within 30 days of this Order, subject to any applicable confidentiality designations available under the Protective Order.

5.     All documents to be produced pursuant to this Order, including employee personnel files and records of communications between Mattel and law enforcement officials, shall be produced in the same format and order as they are maintained in the original files of the parties as required by Federal Rule of Civil Procedure 34(b)(2)(E)(i).

6.     The documents reflecting Mattel's communications with law enforcement officials shall include any and all enclosures, and documents transmitted as a group shall be marked in a manner that permits MGA to ascertain which pages constitute each individual transmittal.

7.     All personnel or vendor documents redacted by MGA in accordance with this Order shall, whenever applicable, retain any letterhead, title, or other header that permits Mattel to ascertain the general nature and source of the document redacted and shall be marked in a manner that permits Mattel to ascertain which pages comprise a single document.

Dated:       March 13, 2009

By:       /s/ Robert C. O'Brien
          ROBERT C. O'BRIEN
          Discovery Master

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 19 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___4___

PAGE ___4/1___

# EXHIBIT 5

CONFORMED COPY                          FILED

Hon. Edward A. Infante (Ret.)
JAMS
Two Embarcadero Center
Suite 1500
San Francisco, CA 94111
415-774-2611
415-982-5287 (fax)

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant. | CASE NO. C 04-09049 SGL (RNBx)<br>JAMS Reference No. 1100049530<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-2727<br><br>**ORDER GRANTING MATTEL'S<br>MOTION TO COMPEL PRODUCTION<br>OF DOCUMENTS** |
| CONSOLIDATED WITH<br>MATTEL, INC. v. BRYANT and<br>MGA ENTERTAINMENT, INC. v. MATTEL,<br>INC. | |

## I. INTRODUCTION

On January 3, 2007, Mattel, Inc. ("Mattel") submitted its Motion to Compel Production of

Documents to the undersigned Discovery Master for disposition.[1]  On January 11, 2007, Carter

Bryant ("Bryant") submitted his opposition brief, and on January 18, 2007, Mattel submitted a

reply brief.  The matter was heard via telephonic conference call on January 24, 2007.  Having

---

[1] Pursuant to a stipulation and order filed December 6, 2006, the undersigned was designated Discovery Master in
accordance with Rule 53 of the Federal Rules of Civil Procedure.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

1

EXHIBIT _____5_____

PAGE _____42_____

1-26

considered the motion papers and comments of counsel at the hearing, Mattel's Motion to Compel

Production of Documents is GRANTED.

## II. BACKGROUND

At the heart of this lawsuit is a dispute over the rights to the "Bratz" dolls. This highly

lucrative line of dolls was first conceived by Bryant, a former Mattel employee, and made

commercially available by MGA Entertainment, Inc. ("MGA") in the summer of 2001. Sales of

Bratz dolls now rival Mattel's Barbie doll.

A. Mattel's Original Complaint

On April 27, 2004, Mattel, the world's largest manufacturer and marketer of toys, filed

suit against its former employee Bryant in state court asserting claims for breach of contract,

breach of fiduciary duty, breach of duty of loyalty, unjust enrichment, and conversion. Mattel

employed Bryant as a product designer from September 1995 through April 1998, and from

January 1999 through October 2000. Upon starting his second term, Bryant signed an Employee

Confidential Information and Inventions Agreement which required him not to engage in any

employment or business other than for Mattel, or invest or assist in any manner any business

competitive with the business or future business plans of Mattel. Bryant also assigned to Mattel

all rights, title, and interest in the "inventions" he conceived of, or reduced to practice, during his

employment.

In addition, Bryant completed Mattel's Conflict of Interest Questionnaire, certifying that

he had not worked for any of Mattel's competitors in the prior twelve months and had not

engaged in any business dealings creating a conflict of interest. Bryant agreed to notify Mattel of

any future events raising a conflict of interest.

Mattel alleges that during his employment, Bryant secretly aided, assisted and worked for

a Mattel competitor (later identified as MGA). Bryant entered into an agreement with MGA to

EXHIBIT ____5____

PAGE____43____

1   provide product design services on a "top priority" basis.[2]  The agreement further provided that

2   Bryant would receive royalties and other consideration for sales of products on which he provided

3   aid or assistance; that all work and services furnished by Bryant to MGA under the agreement

4   would be considered "works for hire"; and that all intellectual property rights to preexisting work

5
6   by Bryant purportedly would be assigned to MGA.  Mattel further alleges that Bryant converted,

7   misappropriated and misused Mattel property and resources while he was employed at Mattel.  In

8   the complaint, Mattel claims ownership of all inventions and works created by Bryant during his

9   Mattel employment and seeks to recover all benefits obtained as a result of his alleged breach of

10  duties.

11
12      In May of 2004, Bryant removed the state court action to the U.S. District Court, asserting

13  subject matter jurisdiction under both 28 U.S.C. §1331 (federal question jurisdiction) and 28

14  U.S.C. §1332 (diversity jurisdiction).  Mattel filed a motion to remand and submitted a copy of

15  Bryant's agreement with Mattel's competitor, namely MGA.  The agreement was dated

16
17  September 18, 2000 – a time when Bryant was still employed by Mattel — and required Bryant to

18  provide MGA with design services for the Bratz dolls.  In return, MGA agreed to compensate

19  Bryant at a monthly rate for a period of time and to pay Bryant a 3% royalty on sales of Bratz

20  dolls.  In August of 2004, the district court remanded the action.

21
22      B.  Bryant's Cross-complaint

23      In September of 2004, after the case was returned to state court, Bryant filed a cross-

24  complaint against Mattel to challenge the legality of Mattel's Employee Confidential Information

25  and Inventions Agreement.  Bryant's cross-complaint included claims for unfair competition,

26  rescission, declaratory relief, and fraud.

27
28  //

29  ---
[2]  Bryant has already produced his agreement with MGA.  Therefore, the existence of the agreement does not appear to be in dispute.

EXHIBIT ___5___

PAGE ___44___

C. Bryant's Second Notice of Removal (CV 04-9059)

In November of 2004, Bryant filed a second notice of removal, once again invoking federal question and diversity jurisdiction. Bryant asserted that Mattel's complaint presented a federal question because events occurring since the first removal and remand demonstrated that Mattel's conversion claim involved the rights to the Bratz dolls, and therefore was preempted by the Copyright Act. Bryant also contended that there was diversity jurisdiction because he and Mattel were citizens of different states and the amount in controversy exceeded the $75,000 jurisdictional limit because the rights to the Bratz dolls were at stake. After the second notice of removal, MGA intervened as a defendant pursuant to a stipulation and order.

D. Bryant's Declaratory Relief Action Against Mattel (CV 04-9049)

On the same day that Bryant filed his second notice of removal, he also filed a complaint in federal court seeking a declaratory judgment that the Bratz dolls do not infringe Mattel's copyrights in a project known as "Toon Teens."

E. MGA's Complaint Against Mattel (CV 05-2727)

In April of 2005, MGA filed suit against Mattel alleging essentially unfair competition claims. MGA alleged that Mattel engaged in "serial copycatting" of Bratz dolls, Bratz "pets" and other Bratz products, Bratz television commercials, and Bratz packaging.

F. Mattel's Second Motion to Remand its Complaint against Bryant

Mattel filed another motion to remand its suit against Bryant. In March of 2005, the district court issued an order denying the motion to remand and certifying the order for interlocutory review. Mattel filed an appeal, and the district court stayed discovery in May of 2005. Discovery did not resume until May 2006, when the Ninth Circuit affirmed the district court ruling. After the stay was lifted the district court consolidated all three actions for all purposes. There is no scheduling order currently in place.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

4

EXHIBIT _____5_____

PAGE _____45_____

G. Court Dismisses Bryant's Cross-claims and Declaratory Relief Action

In July of 2006, the district court dismissed Bryant's cross-claims pursuant to Rule 12(b)(6), Fed.R.Civ.P., for failure to state a claim upon which relief may be granted. The district court also dismissed Bryant's declaratory relief action, finding there existed no reasonable apprehension of an imminent copyright infringement claim against him by Mattel based upon Mattel's Toon Teen intellectual property.

H. Mattel's Counterclaims against MGA

Mattel sought leave to file an amended complaint in case no. CV 05-9059 to add five defendants and nine new legal claims alleging a wide range of commercial disputes. For example, Mattel's proposed amended complaint contains RICO claims, a trade secret misappropriation claim, and aiding and abetting claims predicated on allegations that MGA cherry-picked certain high ranking Mattel executives or designers and then enticed them to steal Mattel's trade and proprietary secrets and deliver them to MGA before beginning work with MGA. Mattel also sought leave to add a copyright infringement claim. Mattel has recently filed copyright registrations with the U.S. Copyright Office claiming ownership in various Bratz doll designs created by Bryant.

On January 11, 2007, the district court granted Mattel leave to file its proposed amendments, but only insofar as they are pled in the form of an amended answer and counterclaim in the case MGA filed against Mattel, CV 05-2727. The next day, Mattel filed its amendments as ordered in case no. CV 05-2727.

I. Mattel's Requests for Production of Documents

Mattel served the requests for production of documents at issue in this motion on June 14, 2004. Bryant served objections and responses on July 16, 2004. The parties met and conferred, but ultimately Mattel moved to compel production in January of 2005. That motion, however,

was not heard before the district court stayed all discovery pending resolution of Mattel's appeal to the Ninth Circuit on subject matter jurisdiction issues.

After the stay of discovery was lifted, the parties met and conferred on June 20, 2006, at the courthouse, and were able to achieve apparent agreement on the bulk of the present motion to compel. The parties informed the court that they would submit a stipulation and order. See Minutes dated June 20, 2006, Zeller Dec. Ex. 6 ("With respect to Mattel's Motion to Compel Production of Documents, counsel will be submitting a stipulation and order which will be dispositive of all the issues in dispute.").

Over the next several months, the parties exchanged draft stipulations and orders to memorialize the parties' meet and confer session, but were unable to reach final agreement because Bryant insisted upon including the following sentence in the stipulation: "The stipulation resolves all issues raised in Mattel's motion to compel, which is hereby withdrawn." Bryant's Opposition at 1:18-20. By including this sentence, Bryant intended to prevent further law and motion regarding the requests at issue in Mattel's original motion to compel. Id. at 1:21-23. From Mattel's perspective, however, the proposed sentence amounted to a demand that Mattel waive its right to all further discovery in connection with its requests. Mattel proposed the following provision as an alternative:

> Except as, and only as set forth in the terms of Paragraph One above, nothing in this Stipulation shall preclude or limit Mattel from seeking further discovery on any matter, including as to matter on which the parties could not reach complete agreement, or preclude or limit any right of Bryant to object or resist to such discovery.

Bryant's Opposition at 7:5-11. Apparently Mattel's alternative language was unacceptable to Bryant. At the direction of the Discovery Master, the parties met and conferred again in late December 2006, but to no avail.

Despite the parties' inability to reach final agreement, Bryant produced approximately



EXHIBIT ___5___

PAGE ___47___

1,600 pages of documents to date. Mattel contends, however, that the production is inadequate and consistent with a pattern of stonewalling.[3] Accordingly, Mattel filed the instant motion to compel responsive documents, which includes a request for sanctions in the amount of $7,805.

    J.  Mattel's Motion to Compel Production of Documents

    Mattel's motion has three parts. First, Mattel seeks an order compelling Bryant to produce the following categories of requested documents: (a) documents relating to Bratz designs created by Bryant while employed by Mattel; (b) doll prototypes created by Bryant while working for Mattel; (c) documents that refer to the conception, creating or development of Bratz; (d) Mattel-related documents that Bryant disclosed to MGA; (e) communications between Bryant and MGA that relate to Mattel or Mattel employees; and (f) documents showing what dolls Bryant was exposed to while working at Mattel. Mattel's Motion at 6. Mattel asserts that these categories of documents are relevant to establish Bryant's liability and would reveal works rightfully owned by Mattel.

    Second, as to other categories of documents which Bryant has agreed to produce, Mattel contends that Bryant has imposed unjustified limitations. According to Mattel, Bryant will not produce any responsive documents that were created after the suit was filed; Bryant will not produce any communications with MGA "created" after the end of his Mattel employment; Bryant is limiting production of Bratz-related documents to designs that, in Bryant's view, "resulted in" the first line of Bratz dolls released in June 2001; Bryant has not produced known contracts between him and MGA and refuses to produce non-privileged communications relating to those contracts; and Bryant has withheld all but one category of financial documents relating to

---

[3]   According to Mattel, Bryant evaded a deposition until Mattel obtained a court order compelling him to appear. Similarly, MGA allegedly refused to permit its CEO, Isaac Larian, from being deposed. Mattel again obtained a court order compelling the deposition and sanctions. To date, only Bryant and Larian have been deposed.

EXHIBIT ___5___

PAGE ___48___

his earnings from his work for MGA. Mattel's Motion at 7. Mattel seeks full production of responsive documents without any of the limitations described above.

Third, Mattel contends that the documents Bryant has produced are inadequate for a number of reasons: the financial documents are so heavily redacted they are useless; faxed documents are missing fax header information, including the sending and receiving parties[4]; e-mails and other electronic documents that are known to exist have not been produced; Bryant refuses to inspect, and refuses to permit Mattel to inspect, the hard drive of a computer he used during the relevant period; and Bryant's privilege log is facially incomplete and lists only four documents.

## K. Bryant's Opposition to Mattel's Motion to Compel

Bryant opposes Mattel's motion to compel. He views the motion as nothing more than Mattel's unwillingness to allow closure on any discovery matter after a lengthy meet and confer process which began back in 2004. Bryant emphasizes that the document requests at issue were first propounded at a time when Mattel was attempting to remand the case, making the claim that it did not know whether $75,000 was in controversy and insisting that it was asserting solely state law claims. Bryant explains that given Mattel's view of the case in 2004, he took the position that discovery should be limited to what occurred in his last days at Mattel and shortly thereafter. See Bryant's Opposition at 4-5 ("Bryant's activities and earnings in connection with Bratz in later years could have no conceivable relevance to the case because if those activities and earnings were at stake, the case was worth millions, not pennies."). Accordingly, in the summer and fall of 2004, he produced the following categories of documents: documents evidencing the artwork used to create the "First Generation" of Bratz dolls – the first dolls sold to the public in the summer of 2001; hundreds of pieces of artwork he was permitted to retain from his employment

---

[4] There is evidence that MGA's CEO instructed an employee to obliterate the fax header on a fax Bryant sent to MGA from Mattel's Design Center. MGA denies the accusation.

EXHIBIT 5

PAGE 49

1  at Mattel; MGA statements revealing his earnings connected with the sale of the First Generation

2  Bratz dolls and his 2000 contract with MGA; personal phone records and bank records; and

3  hundreds of three dimensional doll parts and toy accessories that came into his possession over

4  the years, including a prototype of the First Generation "Jade" doll.

5

6      Bryant generally agrees with Mattel's description of the meet and confer session held at

7  the courthouse on June 20, 2006 and the parties' exchange of draft stipulations. According to

8  Bryant, all the requests addressed in Mattel's original motion to compel and the instant motion led

9  to agreement on the following points: (a) Bryant would produce all agreements for work he

10  performed with or on behalf of MGA prior to June 30, 2001 (the approximate date the First

11

12  Generation Bratz dolls were released to the public); (b) Bryant would waive the attorney-client

13  privilege with respect to communications with the attorney who assisted him in negotiating his

14  contract with MGA, so long as that waiver would be limited and in no way waive the privilege

15  with respect to litigation counsel; (c) Bryant would produce any documents relating to any

16

17  payments he received from MGA while employed at Mattel, irrespective of the date of creation;

18  (d) Bryant agreed to make a diligent search for all computers referenced in his deposition and

19  search them for responsive documents; (e) Bryant agreed to produce all documents and tangible

20  things obtained from Mattel during the course of his employment at Mattel; (f) Bryant agreed to

21

22  conduct a search and produce any patent, trademark or copyright applications, registrations and

23  other non-privileged documents in his possession in connection with his work with MGA prior to

24  June 2001; (g) Bryant agreed to identify documents responsive to particular requests if Mattel

25  could demonstrate that the requests asked for such identification of documents; (h) Bryant agreed

26  to sign a verification that none of the information redacted from his phone records related to Bratz

27  or his work for MGA prior to June 30, 2001; (i) Bryant agreed to supplement his privilege log;

28

29  and (j) the parties agreed that the stipulation modified Bryant's prior response to the discovery

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

9



EXHIBIT ___5___

PAGE ___50___

1  requests and that the stipulation controlled to the extent they were inconsistent. Bryant's
2  Opposition at 5:22-6:21.

3      Bryant emphasizes that the parties have engaged in an extensive meet and confer process
4  and asks the Discovery Master to order the disposition of this motion in a manner consistent with
5
6  the parties' draft stipulation. If the draft stipulation is not adopted, Bryant fears the parties will
7  have no incentive to compromise in the future. Bryant's Opposition at 1:24-2:3. Bryant also asks
8  the Discovery Master to order Mattel not to revisit any of the requests that were the subject of
9  Mattel's original motion to compel or the instant motion to compel. Id. at 2:11-13 and 10:9-10.
10
11      Furthermore, Bryant asserts that Mattel's requests are overbroad in numerous respects. In
12  particular, Bryant asserts that Mattel is not entitled to all communications with MGA relating to
13  Mattel employees. Bryant also asserts that Mattel is not entitled to unredacted personal phone
14  records and financial information because these records are protected by privacy rights. Lastly,
15  Bryant asserts that Mattel is not entitled to all Bratz related documents created after the lawsuit
16
17  was filed.

18                               III. DISCUSSION

19      A. The Parties Did Not Reach a Stipulation to Resolve the Instant Motion

20      The parties' extensive submissions make it clear that the parties did not resolve the issues
21
22  raised in the instant motion. The parties met and conferred extensively and in good faith,
23  reaching compromises on virtually all categories of documents in dispute. Despite their efforts,
24  however, the parties were ultimately unable to execute a binding stipulation because they were
25  unable to agree on any provision to govern Mattel's future right to pursue additional discovery
26
27  from Bryant. It is clear that the parties deemed it necessary to include such a provision in the
28  draft stipulation in order to protect their respective positions. Because the parties did not execute
29  a binding stipulation, there is no legal basis to enforce the terms contained in the draft stipulation.

EXHIBIT _____5_____

PAGE _____5/_____

Therefore, Mattel's right to the discovery it seeks in the instant motion to compel is governed by the familiar guidelines set forth in Rule 26 of the Federal Rules of Civil Procedure.

Furthermore, because the parties met and conferred in good faith and because they had a legitimate dispute over language governing Mattel's future right to pursue additional discovery from Bryant, the Discovery Master denies Mattel's request for sanctions.

B. Rule 26 of the Federal Rules of Civil Procedure

Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed.R.Civ.P. 26(b)(1). "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id. Discovery shall, however, be limited by the court if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P. 26(b)(2).

C. Mattel's Requests for Production

Request Nos. 2, 13, 48:  Documents Relating to Bryant's Agreements with MGA

Mattel seeks documents relating to Bryant's agreements with MGA, including doll-related agreements. Bryant is withholding responsive documents, including (a) documents relating to his Bratz agreements with MGA other than final signed agreements, including communications exchanged by the parties and drafts of the agreements, (b) documents relating to doll-related

EXHIBIT ____5____

PAGE ____52____

agreements discussed or negotiated by Bryant and third parties while he was employed by Mattel
other than signed agreements that were "reached" while Bryant was employed by Mattel, and (c)
documents relating to Bryant's fee agreements with MGA or other indemnity agreements relating
to this action.

The Discovery Master finds that the withheld documents are relevant to Mattel's claims.
Among other things, the withheld documents could establish the timing, nature and scope of
Bryant's work for MGA (or others), ongoing acts of copyright infringement, and damages. In
addition, the withheld documents could be used for impeachment purposes. Further, documents
relating to fee or indemnity agreements between MGA and Bryant are relevant to demonstrate
bias and lack of credibility. Bryant has failed to establish that the requested discovery is barred
by Rule 26(b)(2), Fed.R.Civ.P. Accordingly, Bryant is ordered to produce all non-privileged
documents responsive to Request Nos. 2, 13, and 48.

Request Nos. 11, 12, 19, 37, 40, 41, 42, 43, 53, 54, 55:  Documents Relating to Bratz's
Development and Other Projects that Bryant Worked on for MGA

Mattel seeks documents relating to the Bratz project and any other projects Bryant worked
on for MGA. Bryant produced documents relating only to the First Generation Bratz dolls.
Bryant is prepared to produce additional documents relating to work he performed for MGA prior
to June 30, 2001, acknowledging that those documents are relevant to Mattel's claim that Bryant
breached his employee agreement by allegedly performing services for Mattel and MGA at the
same time. Bryant objects to the requests to the extent they seek any additional documents on
relevancy and overbreadth grounds.

The Discovery Master finds that Mattel's requests seek relevant information and are not
overbroad. The lawsuit is much broader than the First Generation Bratz dolls issued in June 30,
2001. For example, Mattel alleges that it is entitled all works created by Bryant during his Mattel

EXHIBIT ____5____

PAGE ____53____

employment, regardless of whether they resulted in a Bratz doll released in June of 2001. Mattel also alleges that Bryant has breached his ongoing contractual duties not to use any of Mattel's confidential and proprietary information, not just information relating to the Bratz dolls released in June of 2001. Mattel also alleges that Bryant has infringed Mattel's alleged copyrights in Bratz works – works that are allegedly owned by Mattel because they were created while Bryant was employed by Mattel -- through his ongoing conduct of reproducing and creating derivative works. Accordingly, Bryant is ordered to produce all non-privileged documents responsive to Request Nos. 11, 12, 19, 37, 40, 41, 42, 43, 53, 54, and 55.

Request Nos. 29, 30, 31, 32, 33, 34, 35, 36, 45, 46: Documents Relating to Bryant's Payments from MGA

Mattel seeks documents relating to Bryant's payments from MGA. Bryant acknowledges that Mattel is entitled to know how much money Bryant has earned from MGA, and represents that he has produced, in redacted form, all royalty statements he has received related to the First Generation Bratz dolls and his 2000 contract with MGA. Bryant asserts that his redactions are justified as a means to avoid disclosing the breakdown of MGA's revenue by particular product, which information Bryant believes constitutes MGA's trade secret information. Bryant also objects to producing tax returns, asserting that Mattel cannot show a "compelling need" for the returns. Bryant's Opposition at 29:21-27.

The Discovery Master finds that documents relating to MGA's payments to Bryant, including royalty statements and other payment information, are relevant to several Mattel claims. First, Mattel's claims against Bryant include breach of contract, breach of fiduciary duty, breach of duty of loyalty, unjust enrichment, and conversion. Mattel seeks to recover all benefits Bryant received as a result of his alleged violations of duties to Mattel. Payments to Bryant from MGA and others might be traceable to work Bryant performed while employed by Mattel, regardless of

EXHIBIT 5
PAGE 54

when the payments were actually made. Such payments might also lead to evidence to support

Mattel's allegation that Bryant converted, misappropriated, or misused Mattel information.

Second, the payments are relevant to Mattel's recently added claim for copyright

infringement. Mattel alleges that Bryant, MGA, and others have infringed Mattel's rights in the

Bratz drawings and works by copying and preparing derivative works from those works. Under

the Copyright Act, a plaintiff is entitled to recover profits from infringement as well as actual

damages. 17 U.S.C. §504(b). The works that potentially infringe Mattel's copyrights, therefore,

include all Bratz doll products that MGA released to the market. For this reason, and for reasons

already discussed in the previous subsection, Bryant's limited production of documents relating to

only the First Generation of Bratz dolls is inadequate.

Third, payments to Bryant are relevant to Mattel's recently added claims for trade secret

misappropriation. Payments could show when and what trade secret information Bryant and

other defendants allegedly misappropriated from Mattel. Any proof of trade secret theft is also

relevant to Mattel's defense against MGA's unfair competition claims.

Lastly, the breakdown of gross royalty payments may be required to prove actual

causation of damages.

The protective order filed on January 4, 2005, is sufficient to address any confidentiality

concerns raised by Bryant. Among other things, the protective order provides protection for

confidential trade secret information. It has two tiers of protection, allowing a party to designate

documents as either "Confidential" or "Confidential – Attorney's Eyes Only." The protective

order also requires the parties to use information produced in discovery only for purposes of this

litigation and not for any other purpose.

Accordingly, Bryant is ordered to produce, without redactions, all non-privileged

documents responsive to Request Nos. 29, 30, 31, 32, 33, 34, 35, 36, 45, and 46. Bryant,

14

EXHIBIT ____5____

PAGE ____55____

1   however, is not required to produce tax returns, provided that he otherwise fully complies with

2   these requests as ordered.

3       Request Nos. 20, 23, 27, 28: Communications Between Bryant and MGA

4       Mattel seeks production of Bratz-related communications and communications with

5

6   MGA. More specifically, Mattel seeks production of four categories of documents Bryant has

7   refused to produce: (1) communications between Bryant and MGA or third parties that explicitly

8   relate to designs Bryant created while employed by Mattel; (2) communications between Bryant

9   and MGA that relate to Mattel employees; (3) communications between Bryant and MGA relating

10

11  to Bryant's Mattel employment or work Bryant performed for Mattel, except those

12  communications "created" prior to the close of Bryant's Mattel employment; and (4)

13  communications between Bryant and MGA that post-date Bryant's Mattel employment.  Bryant

14  contends that the discovery requests for communications between Bryant and MGA are

15  overbroad. Bryant asserts that there are many former Mattel employees and friends of his who

16

17  have privacy rights that would be impinged upon if he were to disclose his communications.

18  Bryant also asserts that he has his own confidentiality interest regarding any information that he

19  shared with MGA. In particular, he objects to Mattel's discovery requests to the extent they

20  would require him to reveal the identity of current Mattel employees seeking employment with

21

22  MGA or Bryant.

23      The Discovery Master finds that Mattel's requests for all communications between Bryant

24  and MGA unquestionably seek information relevant to Mattel's claims:  they will reveal what

25  Mattel information Bryant shared with MGA, if any, and when. The protective order is sufficient

26  to address Bryant's confidentiality concerns.  It allows parties to designate as "Confidential"

27  private information about current or former employees, contractors or vendors (including

28  employee, contractor and personnel records). Therefore, Bryant is ordered to produce all non-

29

Bryant v. Mattel, Inc.,                                                           15
CV-04-09049 SGL (RNBx)

EXHIBIT ____5____

PAGE ____56____

privileged documents responsive to Request Nos. 20, 23, 27, and 28. However, Bryant may

continue to redact his telephone records, and shall provide a signed verification that none of the

telephone calls that were redacted relate or refer in any way to MGA, Bratz, or any other project

that Bryant worked on, with, for, or on behalf of MGA. Telephone calls that do not relate or refer

in any way to MGA or Bratz are irrelevant.

Request Nos. 49, 51: Mattel-Related Documents

Mattel seeks production of Mattel-related documents, and Bryant agrees to produce them.

Accordingly, Bryant is ordered to produce all documents responsive to Request Nos. 49 and 51.

Request No. 9: Documents re Registrations and Applications for Registrations

Lastly, in Request No. 9 Mattel seeks production of documents registrations and

registrations and applications for registration. Bryant deems the motion moot with respect to

Request No. 9 because he agrees to produce any patent, copyright and trademark applications,

registrations or other non-privileged documents in his possession, custody or control that

constitute or relate to such applications and registrations obtained or applied in connection with

(1) work on Bratz prior to January 1, 2001; (2) work related to the release of the First Generation

Bratz dolls; and (3) work related to any work Bryant performed with, for or on behalf of MGA

during the term of Bryant's employment with Mattel.

As discussed previously, the Discovery Master finds that the First Generation Bratz

limitation is improper. Therefore, Bryant is ordered to produce all non-privileged documents

responsive to Request No. 9.

## IV. CONCLUSION

For the reasons set forth above, the Discovery Master orders as follows:

1. Mattel's motion to compel production of documents responsive to its First Set of

Requests for Production, Request Nos. 2, 9, 11, 12, 13, 19, 20, 23, 27, 28, 29, 30, 31, 32, 33, 34,

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

16

EXHIBIT 5

PAGE 57

35, 36, 37, 40, 41, 42. 43. 45, 46, 48, 49, 51, 53, 54, and 55, is GRANTED. However, Bryant need not produce his tax returns, on the condition that he complies fully with Request Nos. 29, 30, 31, 32, 33, 34, 35, 36, 45, and 46.

2. Bryant shall produce all redacted documents in un-redacted form, except for redactions that are justified by the attorney-client privilege or work product doctrine or his telephone records pursuant to the terms of this Order.

3. Bryant shall serve a complete privilege log in conformity with Rule 26(b)(5), Fed.R.Civ.P.

4. Pursuant to Rule 34, Fed.R.Civ.P., Bryant shall produce the hard drives of his computers for forensic imaging.

5. Bryant shall complete his production by producing missing attachments, fax cover pages and all other missing responsive documents.

6. Mattel's request for an award of sanctions in the amount of $7,805 is DENIED.

7. Bryant shall comply with this Order no later than February 23, 2007.

Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery Master, Mattel shall file this Order with the Clerk of Court forthwith.

IT IS SO ORDERED.

Dated: January 25, 2007

HON. EDWARD A. INFANTE (Ret.)
Discovery Master

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

17

EXHIBIT _____ 5

PAGE _____ 58

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on January 25,

2007, I served the attached ORDER GRANTING MATTEL'S MOTION TO COMPEL

PRODUCTION OF DOCUMENTS in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| Robert Millman Esq. | Littler Mendelson | rfmillman@littler.com |
| Douglas Wickham Esq. | Littler Mendelson | dwickham@littler.com |
| Keith Jacoby Esq. | Littler Mendelson | kjacoby@littler.com |
| Dominic Messiha Esq | Littler Mendelson | dmessiha@littler.com |
| Diba Restagar Esq. | Littler Mendelson | drestagar@littler.com |
| Michelle Park Esq. | Littler Mendelson | mpark@littler.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | jbq@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Valerie Nannery Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | valerienannery@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Morris Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgetmorris@quinnemanuel.com |
| Tamar Buchjakian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchjakjian@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| Benjamin Kim Esq. | O'Melveny & Myers LLP | bjkim@omm.com |
| Hamid Jabbar Esq. | O'Melveny & Myers LLP | hjabbar@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Well & Shapiro, LLP | pglaser@chrismill.com |

EXHIBIT _____ 5

PAGE _____ 59

# EXHIBIT 6

CONFORMED COPY
LODGED
FILED

2007 MAY 16  PM 1:59   2007 MAY 16  PM 2:00

CLERK U.S. DISTRICT COURT   CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.   CENTRAL DIST. OF CALIF.
RIVERSIDE   RIVERSIDE
BY_____   BY_____

1  Hon. Edward A. Infante (Ret.)
   JAMS
2  Two Embarcadero Center
   Suite 1500
3  San Francisco, California  94111
   Telephone:   (415) 774-2611
4  Facsimile:   (415) 982-5287

5

6

7                    UNITED STATES DISTRICT COURT

8                    CENTRAL DISTRICT OF CALIFORNIA

9                          EASTERN DIVISION

10

11  CARTER BRYANT, an individual,          CASE NO. C 04-09049 SGL (RNBx)
                                            JAMS Reference No. 1100049530
12          Plaintiff,

13      v.                                  Consolidated with
                                            Case No. CV 04-09059
14  MATTEL, INC., a Delaware corporation,   Case No. CV 05-2727

15          Defendant.                      ORDER GRANTING MATTEL'S
                                            MOTION TO COMPEL PRODUCTION
16                                          OF DOCUMENTS AND
                                            INTERROGATORY RESPONSES BY
17  CONSOLIDATED WITH                       MGA
    MATTEL, INC. v. BRYANT and
18  MGA ENTERTAINMENT, INC. v. MATTEL,
    INC.
19

20                          I.  INTRODUCTION

21          On February 2, 2007, Mattel, Inc. ("Mattel") submitted its Motion To Compel Production

22  of Documents and Interrogatory Answers by MGA Entertainment, Inc. ("MGA").  On February

23  20, 2007, MGA submitted its opposition brief, and on February 26, 2007, Mattel submitted a

24  reply brief.  The matter was heard on March 5, 2007.  Thereafter the motion was taken under

25  submission pending the parties' submission of a proposed protective order, which was received

26

27

28  Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)                                              1

EXHIBIT ____6____

PAGE ____60____

1 │ on April 23, 2007. Having considered the motion papers and comments of counsel at the hearing,

2 │ Mattel's motion to compel is granted.

3 │ II. BACKGROUND

4 │    A. Requests for Documents

5 │      In June of 2004, two months after Mattel filed suit against Bryant, and before MGA

6 │ became a party to the action, Mattel served MGA with an eight-page subpoena for twenty-one

7 │ categories of documents, to be produced in ten days. MGA filed a motion to quash, which the

8 │ court granted because of the short amount of time provided for compliance with the subpoena.

9 │ The parties met and conferred in July of 2004, and reached an agreement to limit the scope of

10 │ some of Mattel's requests. In particular, the parties agreed to limit production to the "first

11 │ generation" Bratz dolls. On August 12, 2004, MGA produced documents.

12 │      In 2005, the parties stipulated to supplementing their document productions on May 16,

13 │ 2005. Mattel agreed to continue limiting its discovery requests to "first generation" Bratz dolls.

14 │      In September of 2006, MGA made a supplemental production of documents. On February

15 │ 5, 2007, MGA produced about 2,300 pages of documents to replace earlier produced documents

16 │ with legibility problems. On February 20, 2007, MGA produced an additional 224 pages of

17 │ documents to replace earlier produced documents with legibility problems.

18 │      Mattel now moves to compel MGA to produce documents responsive to its requests. As a

19 │ preliminary matter, Mattel contends that MGA's production is deficient because it contains

20 │ redactions and cut-off text. Further, Mattel contends that MGA's production is incomplete with

21 │ respect to essentially five categories of documents. First, Mattel contends that MGA is

22 │ withholding documents relating to the origins of Bratz and Bryant's work for MGA. Mattel

23 │ believes that MGA's production is incomplete based upon its review of documents that have been

24 │ produced by third party Steven Linker. According to Mattel, Linker's documents from October

25 │ of 2000 show that Bratz was much farther along before Bryant left Mattel than MGA or Bryant

26 │ previously represented. Mattel also contends that MGA's responses to the document requests

27

28 │ Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

2

EXHIBIT     6

PAGE     61

1  contain inappropriate limitations, such as MGA's statement that it will produce "relevant and

2  responsive non-objectionable documents" or only that it will produce documents "sufficient" to

3  show when certain dates relating to Bratz occurred. Mattel contends that these "carve outs

4  purport to allow MGA to cherry-pick what it will and will not produce to Mattel." Mattel's

5  Separate Statement at 17:11-13. Mattel also contends that the carve-outs fail to provide notice of

6  what is or is not being withheld. Mattel also contends that MGA's objections based upon its

7  confidentiality concerns or the privacy rights of third parties are unwarranted in light of the

8  protective order in place. In addition, Mattel contends that MGA's objection to producing

9  documents relating to activities or conduct in foreign countries is wholly improper because those

10  documents may contain information relevant to Mattel's claims.

11       Second, Mattel seeks documents relating to the origins of Bratz, regardless of whether

12  such documents relate to the "first generation" Bratz dolls. Mattel argues that whether the work

13  ultimately resulted in Bratz dolls that were released at a particular time does not matter for

14  discovery purposes. Mattel contends that the works created by Bryant during his Mattel

15  employment are highly relevant because Mattel owns them, regardless of whether they resulted in

16  a Bratz doll released at a particular time.[1]

17       Mattel next contends that MGA is improperly withholding documents about designs

18  Bryant created on Bratz dolls that were released after June 2001, even though such designs may

19  be derivative of work he did when employed by Mattel. Mattel contends that it is entitled to

20  explore whether such works and the profits from Bratz dolls other than the "first generation"

21  Bratz dolls were derived from works owned by Mattel both for purposes of establishing liability

22  and damages. Furthermore, Mattel asserts that the "first generation" limitation on discovery is

23  improper in light of Bryant's continuing duty not to use Mattel's confidential and proprietary

24  information as well as MGA's unfair competition claims.

25  _____

26       [1]  Mattel also reiterates many of the arguments it made previously in connection with its earlier filed motion
to compel Bryant to produce documents.

27

28  Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

                                                                          3

EXHIBIT _____ 6 _____

PAGE _____ 62 _____

1    Mattel also asserts that MGA is improperly withholding documents relating to products,

2    services and matters other than those relating to "dolls." According to Mattel, it has evidence that

3    Bryant conceived of marketing and advertising ideas for the Bratz line while he was employed by

4    Mattel. Mattel contends that any such ideas or contributions may belong to it pursuant to the

5    Inventions Agreement.

6    Third, Mattel seeks documents relating to all of MGA's payments to Bryant, and not just

7    payments for the "first generation" Bratz dolls. Mattel asserts that such information is relevant

8    because (1) Mattel seeks all benefits Bryant received as a result of violating his duties to Mattel;

9    (2) under the Copyright Act, Mattel is entitled to all profits from infringement as well as actual

10   damages; and (3) payments may show when and what trade secret information Bryant and other

11   defendants allegedly misappropriated from Mattel.

12   Fourth, Mattel seeks documents relating to MGA's agreements with Bryant. Mattel

13   contends that all agreements between Bryant and MGA are relevant, not just the original

14   September 18, 2000 agreement. In particular, Mattel contends that it is entitled to discover all

15   documents relating to MGA and Bryant's alleged joint defense agreement because such

16   information would be relevant to demonstrate bias and lack of credibility.

17   Fifth, Mattel seeks production of all declarations, affidavits and other sworn written

18   statements from other cases that refer or relate to Bratz or Angel. Mattel contends that such

19   information may reveal relevant information about the date of creation of Bryant's Bratz

20   drawings.

21   In response, MGA denies withholding responsive documents and asserts that it has

22   produced volumes of documents responsive to Mattel's requests. In particular, MGA represents

23   that it has produced all responsive and relevant documents that it was able to locate in response to

24   request nos. 6, 7, 9, 26, 27, 32, 33, 34, 35, 36, 55, 69, and 70. Further, MGA asserts that even

25   before the motion was filed, it had agreed to address the vast majority of the issues raised in this

26   motion. In particular, MGA represents that it is diligently working to produce documents related

27

28
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)                                                                    4

EXHIBIT ____6____

PAGE ____63____

1   to Bratz other than "first generation" Bratz in response to request nos. 1, 2, 8, 10, 11, 43, 45, 46,

2   49, 50, 51, 53, 57, 59, 61, 63, 64, 66, 96, 97, 98, 99 and 100. MGA represents that it informed

3   Mattel that it would produce documents pertaining to subsequent generations of Bratz dolls that

4   have been released on the market. In addition, MGA represents that it has agreed to produce

5   documents relevant to Bratz or Prayer Angels that it received from Union Bank. More

6   specifically, MGA represents that it agreed to review and produce documents provided to it by

7   Union Bank for the years 1999 – 2001 concerning payments that it could identify as being for

8   Bratz or Prayer Angels. MGA also represents that it has agreed to produce royalty statements.

9   Therefore, MGA views the motion as unnecessary.

10       MGA next contends that Mattel's motion should be denied for the following additional

11   reasons. First, MGA contends that Mattel is not entitled to MGA's product design documents for

12   unreleased products. MGA asserts that its product design documents for its unreleased toy

13   concepts are among its most highly valuable trade secrets. Furthermore, MGA contends that

14   designs and drawings for products currently under development, over six years after Bryant first

15   created his original Bratz drawings, have no relevance to any of Mattel's claims. In the event that

16   documents relating to unreleased products are ordered produced, MGA requests a protective order

17   under Rule 26(c), Fed.R.Civ.P., that limits the dissemination of its documents more drastically

18   than the current protective order provides. In the alternative, MGA requests that any order

19   compelling production of documents relating to unreleased products should essentially be stayed

20   until after MGA's products are publicly released.

21       Second, MGA contends that Mattel is not entitled to information concerning Bryant's

22   attorneys' fees because the information is privileged. Furthermore, MGA contends that the

23   information is not relevant to demonstrate bias because "there is no dispute that Bryant's interests

24

25

26

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

5

EXHIBIT _____ 6 _____

PAGE _____ 64 _____

1 | in this case are aligned with those of MGA, and that Bryant is 'biased' in that sense." MGA's

2 | Opposition at 24:9-12.[2]

3 |       Third, MGA asserts that Mattel is not entitled to review all non-public witness statements

4 | and litigation documents concerning Bratz for a variety of reasons, including because Mattel has

5 | refused to produce similar types of documents. More significantly, MGA contends that Mattel's

6 | requests for non-public witness statements are "a blatant attempt to avoid the discovery

7 | limitations imposed by both the Federal Rules of Civil Procedure and those additional limitations

8 | imposed by this Court." MGA's Opposition at 25:6-7. MGA explains its position as follows.

9 | MGA is involved in litigation against a number of counterfeiters and infringers in Asia. In 2003,

10 | Mattel allegedly began feeding documents concerning "Toon Teens" to those defendants in an

11 | attempt to prove that Bryant created Bratz while working at Mattel, even though Mattel

12 | abandoned its claims based upon "Toon Teens" in this court. Thereafter, those defendants took

13 | the position that MGA did not own, and therefore could not enforce, the rights to Bratz. MGA

14 | was thus forced to litigate the issue of ownership. MGA contends that "[i]n effect, by prompting

15 | foreign counterfeiters to espouse a theory that Mattel now admits has no merit, Mattel has created

16 | a situation in which MGA has been forced to give testimony and provide evidence related to

17 | issues in this case that Mattel now seeks to obtain wholesale." MGA's Opposition at 25:5-24.

18 |       Fourth, MGA contends that Mattel is not entitled to documents concerning a family

19 | dispute between MGA's chief executive officer and his brother because such documents are in no

20 | way relevant to this lawsuit. MGA explains that the brothers were involved in an arbitration

21 | proceeding relating to MGA's CEO's purchase of his brother's interest in MGA. Moreover,

22 | MGA contends that the brothers were bound by a protective order prohibiting the use of any

23 | documents or testimony for any purpose other than the arbitration.

24 |

25 |

26 |     [2] Nevertheless, MGA represents that it has produced the only non-privileged document responsive to the request.

27 |

28 | Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

6

EXHIBIT   6

PAGE   65

1    Fifth, MGA contends that Mattel is not entitled to its chief executive officer's personnel
2    files because they contain confidential information and are not relevant to the lawsuit. Sixth,
3    MGA contends that Mattel is not entitled to obtain documents from MGA that belong to, and are
4    in the possession, custody and control of, its indirect foreign subsidiary, MGA HK Ltd. Lastly,
5    MGA objects to producing documents relating to any testing performed to determine the date that
6    Bratz documents were created. MGA contends that such discovery is premature and should not
7    proceed until experts are designated.

8    B. Interrogatories

9    On April 28, 2005, Mattel served its Second Set of Interrogatories. On May 20, 2005,
10   however, the district court stayed the action. On May 17, 2006, the district court lifted the stay.
11   On May 30, 2006, MGA responded to the interrogatories.

12   Mattel contends that MGA's responses to the interrogatories were untimely. Further,
13   Mattel contends that the interrogatory responses to numbers five through eleven are deficient
14   because they lack substantive information and consist almost entirely of objections. MGA
15   responds that the motion is moot because it is prepared to provide supplemental responses to its
16   interrogatories. MGA does not otherwise assert any additional grounds for opposing Mattel's
17   motion to compel responses to interrogatories.

18                           III. DISCUSSION

19   A. Rule 26 of the Federal Rules of Civil Procedure

20   Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain
21   discovery regarding any matter, not privileged, that is relevant to the claim or defense of any
22   party." Fed.R.Civ.P. 26(b)(1). "Relevant information need not be admissible at trial if the
23   discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id.
24   Discovery shall, however, be limited by the court if it determines that: "(i) the discovery sought is
25   unreasonably cumulative or duplicative, or is obtainable from some other source that is more
26   convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample

27

28   Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)                                                        7

EXHIBIT    6

PAGE    66

1   opportunity by discovery in the action to obtain the information sought; or (iii) the burden or

2   expense of the proposed discovery outweighs its likely benefit, taking into account the needs of

3   the case, the amount in controversy, the parties' resources, the importance of the issues at stake in

4   the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P.

5   26(b)(2).

6       B.  Document Requests

7          1.  Requests re Origins of Bratz and Bryant's Work for MGA (Nos. 6, 26, 27, 32, 33,

8              34, 35, 51, 53, 55, 64, 69, 96, 97, 98, 99, 100

9       The requests above seek discoverable information regarding the origins of Bratz and

10   Bryant's work for MGA.  MGA represents that it has produced all responsive documents in

11   response to request nos. 6, 26, 27, 32, 33, 34, 35, 55,and  69 (MGA's Opposition at 13:4-5), and is

12   "diligently working to produce documents in response to" request nos. 51, 53, 64, 96, 97, 98, 99,

13   and 100, including documents related to Bratz other than "first generation" (MGA's Opposition at

14   14:1-4 and note 39).  MGA does, however, object to producing design documents for unreleased

15   products and documents from MGA Hong Kong.

16       As a threshold matter, MGA's responses are inadequate to the extent MGA has restricted

17   its production to "relevant and responsive non-objectionable documents" or documents

18   "sufficient" to show when events relating to Bratz occurred.  These restrictions suggest that MGA

19   might be excluding documents that are responsive to the request based upon its unilateral

20   determination of what is "relevant" or "sufficient."  Mattel shall provide the responses to

21   document requests ordered herein without these restrictions.

22                    Design Documents for Unreleased Products

23       MGA's design documents for unreleased products are relevant to Mattel's claims and

24   defenses and must be produced.  See Order Modifying Protective Order.  On April 23, 2007, the

25   parties submitted a stipulation to modify the existing protective order to limit the disclosure of

26   design documents for unreleased products that constitute trade secret information.  See Stipulation

27

28

1  to Modify Protective Order; And Proposed Order Thereon ("stipulation").  The parties' stipulation

2  has been approved and entered as an order of the court.  MGA is ordered to produce design

3  documents for unreleased products that are responsive to Mattel's document requests in

4  accordance with the terms of the stipulation and order.

5                           Documents from MGA Hong Kong

6         Documents relating to activities or conduct in foreign countries are relevant and

7  discoverable because Mattel has evidence indicating that MGA Hong Kong was involved with

8  Bratz.  Nevertheless, MGA objects to producing documents from Hong Kong unless Mattel

9  provides reciprocal discovery from its subsidiaries.

10        Whether MGA is entitled to discovery from Mattel's subsidiaries has not been briefed in

11  the context of this motion, and therefore is not addressed herein.  MGA is ordered to produce

12  documents from MGA Hong Kong.

13        Mattel's motion is granted with respect to request nos. 6, 26, 27, 32, 33, 34, 35, 51, 53, 55,

14  64, 69, 96, 97, 98, 99, 100.

15              2. Additional Requests re Origins of Bratz (Nos. 7, 8, 9, 10, 11, 12, 13, 36, 46, 57, 59,

16                 61, 63, 66, 67, 70, 88, 90, 91

17        Mattel contends that MGA is improperly limiting its document production to the "first

18  generation" Bratz dolls.  MGA represents, however, that it has agreed to produce subsequent

19  generations of Bratz products (MGA's Opposition at 9:20-25, 13:6-14:1), except design

20  documents for yet unreleased products.

21        As stated previously, design documents for yet unreleased products are relevant and

22  discoverable.  See Order Modifying Protective Order.  Accordingly, MGA is ordered to produce

23  all non-privileged documents that are responsive to request nos. 7, 8, 9, 10, 11, 12, 13, 36, 46, 57,

24  59, 61, 63, 66, 67, 70, 88, 90, and 91.

25        //

26        //

27

28
   Bryant v. Mattel, Inc.,                                                                    9
   CV-04-09049 SGL (RNBx)

                              EXHIBIT _____ 6 _____

                              PAGE _____ 68 _____

3. MGA's Payments to Bryant (Nos.43, 45)

MGA represents that it has already agreed to produce documents related to Bratz, without limiting its production to "first generation" Bratz. MGA's motion at 13:7-14:3. Nevertheless, Mattel is entitled to an order compelling production of such documents by a date certain. Mattel's motion is granted with respect to request nos. 43 and 45.

4. MGA's Agreements with Bryant (Nos. 1, 2, 49, 50)

MGA represents that it has already agreed to produce non-privileged documents responsive to request nos. 1, 2, 49, and 50, even though it believes that such documents are not relevant (MGA's motion at 13:7-14:3). These requests seek documents relating to fee or indemnity agreements between MGA and Bryant .

Fee or indemnity agreements are relevant to demonstrate bias and lack of credibility. Accordingly, Mattel's motion is granted with respect to request nos. 1, 2, 49, and 50. Any responsive documents withheld on the basis of a privilege must be properly identified in a privilege log.

5. Declarations, Affidavits & Other Sworn Written Statements (Nos. 37, 38, 39, 40, 41.

In request nos. 37, 38, 390, 40, and 41, Mattel seeks production of declarations, affidavits, and other sworn written statements from cases that refer or relate to Bratz or Angel. Mattel anticipates that these documents could provide evidence relating to the conception date for Bratz.

Request nos. 37, 38, 39, 40, and 41 seek relevant information regarding the conception date for Bratz. MGA admits in its opposition brief that this issue was litigated in its suits against alleged counterfeiters and infringers.[3] The issue also appears to have been raised in the arbitration proceedings between MGA's chief executive officer, Isaac Larian, and his brother Farhad Larian. In those proceedings, Farhad Larian alleged that Isaac Larian concealed from him

---

[3] Although MGA questions the propriety of Mattel providing assistance to the alleged counterfeiters and infringers in raising ownership of Bratz as a defense against MGA's claims, MGA has not cited to any legal authority that prohibits Mattel's conduct.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

10

EXHIBIT _____ 6

PAGE _____ 69

1   that MGA was developing Bratz by early 2000. Nevertheless, MGA objects to producing

2   documents from the Larians' arbitration on the grounds that the arbitration was governed by a

3   protective order that prohibits the use of any documents or testimony for any purpose other than

4   the arbitration. MGA, however, has not provided any evidence of the protective order.

5   Accordingly, Mattel's motion to compel is granted as to request nos. 37, 38, 39, 40 and 41.[4]

6           6. Documents Regarding Date-Testing (Request No. 92)

7           Mattel's request no. 92 seeks documents that refer or relate to "any testing of or sampling

8   from any documents that refer or relate to Bratz or Bryant, including without limitation any such

9   testing or sampling in connection with ink, paper or chemical analysis to date any such documents

10  and including without limitation all results and reports relating thereto." MGA contends that the

11  request is premature, and should proceed in the course of expert discovery.

12          The request calls for relevant discovery and there is no basis for delaying production of

13  responsive documents, other than expert reports. The timing of expert reports is governed by

14  Rule 26(a)(2)(C), Fed.R.Civ.P. Accordingly, Mattel's motion is granted as to request no. 92.

15          C. Interrogatories

16          Mattel contends that MGA's responses to interrogatories were untimely, and therefore

17  MGA has waived its objections to the interrogatories. Pursuant to Rule 33(b)(3), Fed.R.Civ.P.,

18  responses to interrogatories are due thirty days after service. In this case, Mattel served its

19  interrogatories on April 28, 2005, and responses were initially due May 31, 2005. The district

20  court, however, issued a stay on May 20, 2005, twenty-two days after the interrogatories were

21  served. The district court lifted the stay on May 17, 2006.

22

23

24

25          [4] In its discussion of the arbitration proceedings, MGA raises an objection to producing Isaac Larian's

26  personnel file based upon privacy grounds. The personnel file may have documents relevant to Bratz, and therefore
    should be produced. The protective order is sufficient to alleviate Mr. Isaac Larian's privacy concerns.

27

28  Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)                                                                    11

EXHIBIT _____6_____

PAGE _____70_____

1    Neither party has cited to any caselaw governing the calculation of the 30-day period
2    when there is an intervening stay in discovery. In the absence of any caselaw, MGA's responses
3    will be treated as timely in order to preserve any valid objections MGA may have asserted.

4    Interrogatory No. 5 seeks the identity of each and every person who was involved in the
5    conception, origin, creation, design, development, sculpting, engineering, reduction to practice,
6    tooling or painting of, or who otherwise produced or contributed to any embodiment of Bratz
7    before December 31, 2001, including a description of each person's role and the start and end
8    dates of each person's involvement. In response, MGA asserted numerous objections, but did
9    provide the names of five individuals.

10    The interrogatory clearly seeks information relevant to the claims at issue. MGA's
11    objections are without merit. The interrogatory is not vague, ambiguous, compound or overbroad.
12    Nor has MGA carried its burden of establishing that the interrogatory is unduly burdensome, calls
13    for confidential, proprietary or commercially sensitive information, or seeks information
14    protected by the attorney-client privilege. Furthermore, MGA's response is incomplete insofar as
15    it fails to provide the description of each person's role and the start and end dates of each person's
16    involvement. Accordingly, MGA is ordered to provide a complete response to Interrogatory No.
17    5 and identify documents in compliance with Rule 33(d), Fed.R.Civ.P.

18    Interrogatory No. 6 seeks the same information as Interrogatory No. 5 with respect to any
19    embodiment of Angel. MGA is ordered to provide a complete response to Interrogatory No. 6 for
20    the reasons previously discussed in connection with Interrogatory No. 5.

21    Interrogatory No. 7 asks MGA to identify each and every embodiment of Bratz prior to
22    December 31, 2001. In response, MGA asserted numerous objections and did not provide any
23    substantive information.

24    MGA's objections are without merit. The interrogatory clearly seeks information relevant
25    to establishing when Bryant first conceived Bratz. The interrogatory is not vague, ambiguous,
26    compound or overbroad. Nor has MGA carried its burden of establishing that the interrogatory is

27

28
Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                                    12

EXHIBIT _____ 6

PAGE _____ 71

1   unduly burdensome, calls for confidential, proprietary or commercially sensitive information, or

2   seeks information protected by the attorney-client privilege. Accordingly, MG is ordered to

3   provide a complete response to Interrogatory No. 7.

4       Interrogatory No.8 asks MGA to identify each and every embodiment of Angel. MGA is

5   ordered to provide a complete response to Interrogatory No. 8 for the reasons previously

6   discussed in connection with Interrogatory No. 7.

7       Interrogatory No. 9 requires MGA to identify each and every sworn statement that refers

8   or relates to the conception, origin, creation, design, development, sculpting, engineering, tooling

9   or painting of Bratz. In response, MGA asserted numerous objections and did not provide any

10   substantive information.

11       The interrogatory seeks information relevant to establishing when Bryant first conceived

12   Bratz. Furthermore, MGA's boiler-plate objections are unsubstantiated. Accordingly, MGA is

13   ordered to provide a complete response to Interrogatory No. 9.

14       Interrogatory No. 10 requires MGA to identify each and every instance in which Bratz

15   was shown, displayed, or exhibited prior to June 1, 2001, including by stating the date(s) on

16   which each such instance occurred, the location of each show or exhibit, and the identity of

17   persons with knowledge of the shows or exhibits. In response, MGA asserted numerous

18   objections and provided the following information: Hong Kong Toy Fair in Hong Kong in or

19   about January 2001 and New York Toy Fair, New York, in or about February 2001.

20       Once again, MGA's boiler-plate objections are unsubstantiated. The information is

21   potentially relevant to establish when Bryant conceived Bratz. Further, the response is

22   incomplete insofar as it fails to identify any persons with knowledge. Therefore, MGA is ordered

23   to provide a complete response to Interrogatory No. 10.

24       Interrogatory No. 11 requires MGA to state the "number for each and every telephone,

25   including without limitation each office, home and cell phone number, in the name of, for the

26   benefit of or for the account of Isaac Larian and any other telephone that Isaac Larian used from

27

28   Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

                 13

EXHIBIT _____ 6 _____

PAGE _____ 72 _____

1   January 1, 1998 through the present, and IDENTIFY each and every carrier (including without

2   limitation any long-distance carrier) for each such number.  In response, MGA asserted numerous

3   boiler-plate objections.

4        Once again, MGA has failed to substantiate any of its objections with supporting

5   declarations or legal authorities.  Accordingly, all objections are overruled and MGA is ordered to

6   provide a full response to Interrogatory No. 11.

7                                    IV. CONCLUSION

8        For the reasons set forth above, Mattel's motion to compel production of documents is

9   granted.  MGA shall produce all non-privileged documents that are responsive to the requests

10  identified in this Order.  Further, MGA shall produce all documents in un-redacted form, except

11  for redactions that are justified by the attorney-client privilege or work product doctrine.  Mattel's

12  motion to compel interrogatory answers is also granted.  MGA shall produce documents and

13  provide responses to interrogatories consistent with this Order, and produce a privilege log in

14  compliance with Rule 26(b)(5), Fed.R.Civ.P., no later than May 31, 2007.  Mattel's request for

15  sanctions is denied.

16       Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

17  Master, Mattel shall file this Order with the Clerk of Court forthwith.

18

19

20

21  Dated: May /5, 2007

                                    HON. EDWARD A. INFANTE (Ret.)
22                                      Discovery Master

23

24

25

26

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                              14

EXHIBIT ____6____

PAGE ____73____

## PROOF OF SERVICE BY E-MAIL

I, Anthony Sales, not a party to the within action, hereby declare that on May 15, 2007, I served the attached ORDER GRANTING MATTEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND INTERROGATORY RESPONSES BY MGA in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| Robert Millman Esq. | Littler Mendelson | rfmillman@littler.com |
| Douglas Wickham Esq. | Littler Mendelson | dwickham@littler.com |
| Keith Jacoby Esq. | Littler Mendelson | kjacoby@littler.com |
| Dominic Messiha Esq | Littler Mendelson | dmessiha@littler.com |
| Diba Rastegar Esq. | Littler Mendelson | drastegar@littler.com |
| Michelle Park Esq. | Littler Mendelson | mpark@littler.com |
| Alaya B. Meyers, Esq. | Littler Mendelson | ameyers@littler.com |
| Brady Mitchell, Esq. | Littler Mendelson | bmitchell@littler.com |
| Carol Miller, Esq. | Littler Mendelson | cmiller@littler.com |
| Ryan P. Eskin, Esq. | Littler Mendelson | reskin@littler.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | jbq@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Morris Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgetmorris@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on May 15, 2007, at San Francisco, California.

Anthony Sales

EXHIBIT _____ 6 _____

PAGE _____ 74 _____

# EXHIBIT 7

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(D).

**PRIORITY SEND**
& ENTERED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
<u>CIVIL MINUTES – GENERAL</u>

Case No.    CV 04-09049 SGL(RNBx)                    Date: July 2, 2007

Title:    CARTER BRYANT -v- MATTEL, INC.
          AND CONSOLIDATED ACTIONS

==================================================================

PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

Jim Holmes                                  Theresa Lanza
Courtroom Deputy Clerk                      Court Reporter

ATTORNEYS PRESENT FOR CARTER          ATTORNEYS PRESENT FOR MATTEL:
BRYANT:

John W. Keker                          John B. Quinn
                                       Brett Dylan Proctor
                                       Michael T. Zeller

ATTORNEYS PRESENT FOR MGA:

Dale M. Cendali
Patricia Glaser



ENTERED
CLERK, U.S. DISTRICT COURT

JUL - 5 2007

CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION    BY DEPUTY

DOCKETED ON CM

JUL - 5 2007

BY _____ 164

PROCEEDINGS:    MINUTE ORDER

As set forth more fully herein, the Court hereby makes the following ruling regarding matters heard on July 2, 2007:

(1)    The Court **GRANTS** Mattel's Motion re Trial Structure (docket #462);

(2)    The Court **GRANTS IN PART AND DENIES IN PART** MGA's Motion re Discovery Master's May 15, 2007, Order (docket #505);

(3)    The Court **GRANTS IN PART AND DENIES IN PART** MGA's Ex Parte Application

MINUTES FORM 90                                    Initials of Deputy Clerk _jh_
CIVIL – GEN                        1                Time: 01/15

EXHIBIT ___7___        (608)

PAGE ___75___                        07/02/07

regarding date of production of documents (docket #545); and

(4)     The Court **DENIES** MGA's Motion re Discovery Master's May 16, 2007, Order (docket #508).

(5)     The Court **DENIES** the parties' oral request for modification of pretrial and trial dates.

(1)     Motion re Trial Structure (docket #462)

        Previous orders of the Court specified that the claims and counterclaims brought in this action will be tried in two phases. The parties have agreed, in large part, to a refinement of the Court's mandate that all issues regarding the ownership of Bratz shall be tried in Phase 1. Where the parties differ is upon a proposal by Mattel that the Phase 1 be bifurcated into two sub-phases, with Mattel's copyright infringement claim (its first counterclaim in the 05-02727 case) and all Phase 1 damages being tried after all the other issues. Phase 1(a) would be limited to issues surrounding Carter Bryant's employment with Mattel, and how those issues impact the ownership of certain original Bratz drawings, while Phase 1(b) would address approximately two-hundred Bratz products that are potentially derivative of the original drawings. This approach has the appeal of limiting Phase 1(a) to discrete issue of the ownership of the original Bratz drawings. A finding that Bryant owns these original drawings in Phase 1(a) has the potential to eliminate the need for Phase 1(b).

        Accordingly, **THE COURT ADOPTS MATTEL'S MODIFICATION OF DEFENDANTS' PROPOSAL,** as set forth at 8-9 of its Memorandum Regarding Trial Structure, filed June 20, 2007. Phase 1(a) and Phase 1(b) (if necessary) will be tried to the same jury.

(2)     MGA's Motion re Discovery Master's May 15, 2007, Order (docket #505), and
(3)     MGA's Ex Parte Application regarding date of production of documents (docket #545).

        The Discovery Master's May 15, 2007, Order compels production of documents regarding ink, paper, and chemical analysis and documents relating to unreleased MGA products. The order required that documents be produced no later than the end of May.

        The Court reviews the Discovery Master's orders under the "clearly erroneous" or "contrary to law" standard set forth in Fed. R. Civ. P. 72(a).

        The Discovery Master's order compels the production of only non-privileged documents. Therefore, MGA's arguments that the Discovery Master's order requires production of documents in violation of the attorney-client privilege are misplaced. If the only responsive documents are privileged, then MGA need not produce them, but must produce a privilege log.

        MGA acknowledges that it has raised an argument before the Court that was not raised

Initials of Deputy Clerk __jh_____
Time: 01/15

EXHIBIT ____7____

PAGE ____76____

before the Discovery Master, namely, that Mattel has failed to establish that there are "exceptional circumstances" that allow Mattel to "discover facts known or opinions held by an expert . . . who is not expected to be called as a witness at trial." Fed. R. Civ. P. 26(b)(4)(B). MGA contends that the Discovery Master's order is contrary to law based on this standard, and that it was incumbent upon Mattel to raise it below. The Court disagrees. Mattel would be required to establish that exceptional circumstances existed if MGA objected to production on that grounds. A party seeking production cannot be expected to rebut all arguments that could possibly be raised by a party resisting production. MGA has not convinced the Court that the Discovery Master's failure to require Mattel to rebut an argument that was not raised by MGA is contrary to law.

MGA contends that the Discovery Master's order compelling production of documents regarding unreleased products is contrary to law. Relevant to that determination is a balancing test required to be applied by the Ninth Circuit when trade secrets are requested by a competitor in discovery. See Brown Bag Software v. Symantec Corp., 960 F.2d 1465, 1470 (9th Cir. 1992) ("Specifically, in this case we must balance the risk to [defendant] of inadvertent disclosure of trade secrets to competitors against the risk to [plaintiff] that protection of [defendant's] trade secrets [will] impair[] prosecution of [plaintiff's] claims.").

Here, the documents sought are of a particularly sensitive nature. They represent some of the most secretive documents maintained by MGA, and they are being ordered to be produced to MGA's fierce competitor. The Discovery Master recognized the sensitive nature of the documents and entered a strict protective order that severely limits access to those documents and that goes well beyond the normal "attorney eyes only" designation.

MGA argues that unreleased products are irrelevant to the issue of who owns the original Bratz drawings. That is clear. However, MGA's argument attempts to limit the discovery to issues involved in Phase 1 of the trial. There has been no bifurcation of discovery.

Mattel correctly points out that these documents are relevant to a number of its other claims. Specifically, if they show unreleased products that are similar to Mattel's unreleased products, the documents would be highly probative of Mattel's misappropriation of trade secrets claim. Moreover, these documents could be relevant to Mattel's RICO claims based on alleged acts of criminal copyright infringement.

Balancing tests are inherently subjective and particularly susceptible to varying interpretation by individual judicial officers. This Court, upon considering this issue from the outset, may very well have weighed the evidence differently and reached a contrary result. However, this Court is bound by the standard of review, and MGA's motion falls far short of convincing the Court that the Discovery Master's order is contrary to law.

The parties have a long history regarding the production of documents ordered in the May 15, 2007, Order, which is set forth in their papers and which need not be repeated here. Counsel for MGA represented that the remaining documents could be produced no later than July 31, 2007, with the exception of the documents from MGA Hong Kong, which could be produced no

EXHIBIT 7
PAGE 77

later than two weeks after that date. Accordingly, the Court **ORDERS** that MGA complete the document production set forth in the Discovery Master's May 15, 2007, order no later than July 31, 2007, with the exception of the documents from MGA Hong Kong, which shall be produced no later than August 14, 2007.

Accordingly, the Court **GRANTS** in part MGA's motion re the Discovery Master's May 15, 2007, Order, extending the document production date as set forth above. The Motion is **DENIED** in all other respects.

Likewise, the Court **GRANTS** in part MGA's ex parte application re date of production of documents, extending the document production date as set forth above. The application is **DENIED** in all other respects.

(4)     MGA's Motion re Discovery Master's May 16, 2007, Order (docket #508)

The Discovery Master's May 16, 2007, Order compelled the Rule 30(b)(6) depositions of witnesses on the topics of MGA's net worth, prior sworn statements, and ink, paper, and chemical analysis performed by MGA.

> A party may in the party's notice and in a subpoena name as the deponent a public or private corporation or a partnership or association or governmental agency and describe with reasonable particularity the matters on which examination is requested. In that event, the organization so named shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. . . . The persons so designated shall testify as to matters *known or reasonably available* to the organization.

Fed. R. Civ. P. 30(b)(6) (emphasis added). "The purpose behind Rule 30(b)(6) is to create testimony that will bind the corporation." Sanders v. Circle K Corp., 137 F.R.D. 292, 294 (D. Ariz. 1991) (internal citation omitted). Another purpose of Rule 30(b)(6) is aptly described by the District Court for the District of Columbia:

> [The purpose of Rule 30(b)(6) is to] prevent[] serial depositions of various witnesses without knowledge within an organization and eliminating 'bandying', which is the name given to the practice in which people are deposed in turn but each disclaims knowledge of facts that are clearly known to persons in the organization and thereby to the organization itself.

Alexander v. F.B.I., 186 F.R.D. 148, 152 (D.D.C. 1999) (citing the 1970 Advisory Committee Notes to Rule 30(b)(6)).

The Discovery Master's order compelling Rule 30(b)(6) depositions in the specified

MINUTES FORM 90
CIVIL – GEN

4

Initials of Deputy Clerk __jh_____
Time: 01/15

EXHIBIT _____7_____

PAGE _____78_____

categories serve both these purposes and is not contrary to law.

Although MGA's net worth may not be known to it, MGA does not contend that the information is not readily available. That net worth is generally the subject of expert testimony at trial -- a proposition disputed by neither Mattel nor the Court -- does not render it an improper subject for a Rule 30(b)(6). Therefore, the Discovery Master's ruling on this issue is not contrary to law.

MGA likewise does not contend that information regarding prior sworn statements are not readily available to it. Although contending that this is not an appropriate subject for a Rule 30(b)(6) deposition, MGA fails to cite authority in support of that contention. Therefore, the Discovery Master's ruling on this issue is not contrary to law.

The ink, paper, and chemical analysis topic is likewise a proper subject of a Rule 30(b)(6) deposition. To the extent that such a deposition has the potential to encroach upon information protected by the work-product privilege, then that objection must be made on a question-by-question basis. MGA may not make a blanket objection and justify its refusal to produce a Rule 30(b)(6) designee on this topic based on that blanket objection. Therefore, the Discovery Master's ruling on this issue is not contrary to law.

Accordingly, the Court **DENIES** MGA's motion re the Discovery Master's May 16, 2007, Order.

(5)    Oral Request for Modification of pretrial and trial dates.

Although no motion or ex parte application on the subject was pending before the Court, the parties made an oral request at the hearing to continue certain pretrial and trial dates. A discussion ensued and it became apparent that no final agreement was reached by the parties regarding extending these dates. Accordingly, the Court **DENIES** the parties' oral request for modification of pretrial and trial dates. The Court will consider counsels' stipulation regarding extensions of those dates only where all counsel unqualifiedly stipulate to those dates. Until the scheduling order is modified by the Court, the dates previously set by the Court remain in effect. In addition, the Court is unlikely to entertain a continuance of the Phase 1 trial past April, 2008.

IT IS SO ORDERED.

Initials of Deputy Clerk __jh_____
Time: 01/15

EXHIBIT ____7_____
PAGE ____79____