QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with Case Nos. CV 04-09059 and CV 05-02727 |
| vs. | |
| MATTEL, INC., a Delaware corporation, | **DECLARATION OF SCOTT B. KIDMAN IN SUPPORT OF MATTEL, INC.'S EX PARTE APPLICATION TO SET HEARING DATE** |
| Defendant. | |
| AND CONSOLIDATED ACTIONS | Hearing Date: TBD<br>Time: TBD<br>Place: TBD |
| | **Phase 2** |
| | Discovery Cut-off: Dec. 11, 2009<br>Pre-trial Conference: Mar. 1. 2010<br>Trial Date: Mar. 23, 2010 |

07975/3057278.1

KIDMAN DEC ISO MATTEL, INC.'S EX PARTE APPL. TO SET HEARING DATE

I, Scott B. Kidman, declare as follows:

1.      I am a member of the bar of the State of California and a partner at Quinn Emanuel Urquhart Oliver & Hedges, LLP, attorneys for Mattel, Inc. ("Mattel").  I make this declaration of personal, firsthand knowledge and, if called and sworn as a witness, I could and would testify competently thereto.

2.      Attached as Exhibit 1 is a true and correct copy of the Court's Order dated May 21, 2009.

3.      On August 17, 2009, Mattel gave notice of its *ex parte* application to set a hearing date on Mattel's motion for leave to file a fourth amended answer and counterclaims and the relief being sought to counsel for the MGA parties and counsel for Carlos Gustavo Machado Gomez.

4.      Attached as Exhibit 2 is a true and correct copy of an e-mail from me to the MGA parties' counsel, William Molinsky and Jason Russell, dated August 17, 2009.

5.      Attached as Exhibit 3 is a true and correct copy of an e-mail from me to counsel for Carlos Gustavo Machado Gomez, Mark Overland and Alexander Cote, dated August 17, 2009.

6.      Counsel for the MGA parties indicated that they will oppose Mattel's *ex parte* application.

7.      Counsel for Mr. Machado has not indicated whether they intend to oppose Mattel's *ex parte* application.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 17th day of August 2009, at Los Angeles, California.


/s/ Scott B. Kidman
Scott B. Kidman

# EXHIBIT 1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
<u>CIVIL MINUTES -- GENERAL</u>

Case No.   CV 04-09049 SGL(RNBx)                    Date: May 21, 2009
Title:     MATTEL, INC. V. MGA ENTERTAINMENT, INC., et al.
==========================================================================
PRESENT:   HONORABLE STEPHEN G. LARSON, U.S. DISTRICT JUDGE

         Cindy Sasse                          None Present
         Courtroom Deputy                     Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:     ATTORNEYS PRESENT FOR DEFENDANTS:

None Present                          None Present

PROCEEDINGS:   ORDER DENYING MOTION TO MODIFY DISCOVERY MASTER ORDER
               NO. 11 (DOCKET #5185)

               ORDER GRANTING MOTION FOR LEAVE TO FILE A THIRD AMENDED
               ANSWER AND COUNTERCLAIMS (DOCKET #5143)

               ORDER DENYING EX PARTE APPLICATION FOR STAY PENDING
               APPEAL (DOCKET #5396)

               ORDER DENYING EX PARTE APPLICATION RE DISCLOSURE OF 2009
               PRODUCT LINE INFORMATION (DOCKET #5425)

               ORDER RE EXPIRATION OF TEMPORARY RECEIVERSHIP AND ORDER
               APPOINTING MGA MONITOR

               ORDER IMPOSING LIMITED AND TEMPORARY STAY OF PHASE 2 AND
               REQUIRING MANDATORY SETTLEMENT CONFERENCE

     These matters were heard on May 18, 2009.

MINUTES FORM 90                                   Initials of Deputy Clerk __cls_____
CIVIL -- GEN                    1                 <u>Time: 03/02</u>

## I. MOTION TO MODIFY DISCOVERY MASTER ORDER NO. 11

Mattel moves to overrule that portion of the Discovery Master's Order No. 11 ("Order No. 11") that concludes that witnesses Pablo Vargas San Jose ("Vargas") and Mariana Trueba ("Trueba") (collectively, "the witnesses") are not "managing agents" within the scope of Fed. R. Civ. P. 30(b)(1). The Court has reviewed Order No. 11, Mattel's Motion, the MGA parties' opposition thereto, and Mattel's reply. Applying the "clearly erroneous or contrary to law" standard of review that all parties agree is applicable here, the Court **DENIES** Mattel's Motion.

In Order No. 11, the Discovery Master acknowledged the so-called Sugarhill factors, see Sugarhill Records Ltd. v. Motown Record Corp., 105 F.R.D. 166, 170 (D.C.N.Y. 1985), which the parties agreed applied. After an ancillary discussion that concluded the witnesses were not managing agents as measured by a test similar to the Sugarhill factors, the Discovery Master either applied, or explained why his conclusion would not change if he did apply, the Sugarhill factors.[1] Those factors are:

> 1) [W]hether the individual is invested with general powers allowing him to exercise judgment and discretion in corporate matters; 2) whether the individual can be relied upon to give testimony, at his employer's request, in response to the demand of the examining party; 3) whether any person or persons are employed by the corporate employer in positions of higher authority than the individual designated in the area regarding which information is sought by the examination; 4) the general responsibilities of the individual "respecting the matters involved in the litigation," . . . and 5) whether the individual can be expected to identify with the interests of the corporation.

105 F.R.D. at 170 (internal citation omitted). The Discovery Master found that although the second and fourth factors favor designating the witnesses as managing agents, the first, third, and fifth do not.

As to the first factor, Mattel argues that the Discovery Master should have focused more on

---

[1] In the relevant portion of Order No. 11, the Discovery Master first discussed, and then rejected for reasons set forth therein, an argument advanced by Mattel that the most important Sugarhill factor was the fifth factor, the so-called "loyalty factor." He next applied an alternative test articulated by Libbey Glass, Inc. v. Oneida, Ltd., 197 F.R.D. 342, 350 (N.D. Ohio 1999), which was originally adopted by the D.C. Circuit. See id. (quoting Founding Church of Scientology of Washington, D.C., Inc. v. Webster, 802 F.2d 1448, 1452 (D.C. Cir.1986)). That test is set forth in Order No. 11 at 31, and is not repeated here. It focuses on the character of the employee's control, the convergence of interest of the employee and the corporation, and the employee's area of expertise in relation to others associated with the corporation. Libbey Glass, 197 F.R.D. at 350. This test appears to the Court to implicate, to varying degrees, all of the Sugarhill factors except the second. Because the two tests are similar, and because neither is controlling, adoption of either could not be said to be contrary to law. Notwithstanding language that may be so read, the Court does not accept the notion that Order No. 11 rejected outright the Sugarhill factors. The Court does so based on the acknowledgement that the parties agreed those factors were applicable, the similarity between the two alternative tests, and the Discovery Master's articulation regarding each Sugarhill factor. See Order No. 11 at 29-36.

whether the witnesses were managing agents as to the particular matters at issue in the lawsuit rather than their general powers and that, in any event, the relevant time period to measure managing agent status is not at the time of deposition but is rather at the time of the events giving rise to the lawsuit.  Although these arguments find some support, the Discovery Master's conclusion regarding this first Sugarhill factor (and its Libbey Glass analog) is not contrary to law. The first Sugarhill factor is clearly concerned with an employee's general power; the fourth factor, which the Discovery Master found in favor of Mattel, focuses on the witnesses' responsibilities regarding matters involved in the litigation.  The cases cited by Mattel support its timing argument; however, cases cited by the MGA parties establish that other cases favor a contrary position. Neither side's authority is controlling, and the Court therefore concludes the position adopted by the Discovery Master is not contrary to law.

As to the third factor, Mattel argues that it was clear error for the Discovery Master to conclude that Kuemmerle, to whom Vargas reported directly and to whom Trueba's supervisor reported, could provide substitute testimony to them is clear error.  Mattel's ultimate point is that no one can testify more accurately and more on point than can the two witnesses regarding their alleged trade secret theft.  Again, this is not an invalid point.  Indeed, it is possible that if such theft occurred (the MGA parties deny that it did), then the witnesses did not proceed at the behest of the MGA parties and instead acted on their own accord (the MGA parties alternatively contend).   The fact is that if the MGA parties' alternative contention is true, then the witnesses' testimony regarding any theft would not be on behalf of MGA at all.  Who can or cannot testify about these events that may or may not have occurred on behalf of any MGA party -- let alone who can testify best -- is far from clear.  This area of inquiry is fraught with uncertainty.  The Discovery Master's conclusion one way or another on this issue, therefore, cannot be said to be clear error.  See Wolpin v. Philip Morris Inc., 189 F.R.D. 418, 422 (C.D. Cal.1999) ("To conclude that a magistrate judge's decision is clearly erroneous, the District Court must arrive at a definite and firm conviction that a mistake has been committed.").

As to the fifth factor, it was not clearly erroneous for the Discovery Master to conclude that MGA Mexico's interests and the witnesses' interests are at odds.  The witnesses are currently employed by MGA Mexico, weighing in favor of a finding of alignment, but they have also been subjected to criminal investigations regarding the allegations asserted in this lawsuit, and they have separately retained counsel to represent their interests.  Additionally, the MGA parties have maintained that if any trade secret theft occurred, it occurred without their knowledge or consent. These facts support the Discovery Master's finding.

Weighing these factors, and taking into account the mixed burden of proof, as the Discovery Master did, the Court cannot find that the Discovery Master's conclusion was clearly erroneous or contrary to law, and the Court therefore **DENIES** Mattel's Motion (docket #5185).

## II. MOTION FOR LEAVE TO FILE THIRD AMENDED ANSWER AND COUNTERCLAIMS

Mattel has filed a motion seeking leave to file its proposed Third Amended Answer and

Counterclaims ("TAAC").  In substance, the TAAC adds one additional claim and a number of additional allegations.  First, Mattel asserts an additional claim pursuant to California's version of the Uniform Fraudulent Transfers Act, found at Cal. Civ. Code §§ 3439 et seq.  Second, Mattel avers facts that fall into the following broad categories:  (1) Allegations regarding certain 2008 financial transactions that were the subject of the Forensic Auditor's Report ("the Wachovia/Omni 808 transactions"); (2) allegations regarding acts of commercial bribery relating to three Mattel seamstresses who were employed by MGA contractor Veronica Marlow; (3) allegations regarding evidence tampering, including the alleged destruction by Isaac Larian's brother Farhad of boxes of documents relating to the development of Bratz and Farhad's deletion of emails from a USB device; (4) allegations that Isaac Larian and MGA perjured themselves during their Phase 1 testimony; and (5) allegations setting forth additional predicate acts of racketeering activities, including money laundering, concealing assets, engaging in monetary transactions involving property derived from unlawful activity, commercial bribery, destruction of evidence, and obstruction of justice.

The parties, quite understandably, disagree on whether the Fed. R. Civ. P. 15(a) liberal standard or the Rule 16(b) "good cause" standard applies to the present motion.  Upon the lifting of the stay on Phase 2 discovery, the Court set new dates for Phase 2 proceedings, but neglected to set a deadline for amending the pleadings related to Phase 2, leading to the present dispute.  The Court now sets that deadline for three months prior to the discovery cutoff date of December 11, 2009, or September 11, 2009.  Accordingly, the present motion is governed by the standard for amendments to the pleadings that are sought prior to the deadline set in the Court's Scheduling Order, which is set forth in Rule 15(a).

Pursuant to Rule 15(a), leave to amend a pleading is granted "freely . . . when justice so requires."  Id.; See Foman v. Davis, 371 U.S. 178, 182 (1962).  However, leave need not be granted where the proposed amendment "(1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile."  AmerisourceBergen Corp. v. Dialysist West, Inc., 465 F.3d 946, 951 (9th Cir. 2006).

Allegations relating to events occurring after the filing of the Second Amended Answer and Counterclaims ("SAAC") are governed not by the Rule 15(a) standard; rather, those amendments are governed by the Rule 15(d) standard.  Rule 15(d) provides:

> On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense. The court may order that the opposing party plead to the supplemental pleading within a specified time.

Id.  This standard, like the Rule 15(a) standard, is liberal, and leave to file a supplemental pleading is favored.  Planned Parenthood of S. Ariz. v. Neely, 130 F.3d 400, 402 (9th Cir.1997).  It should not, however, be used to introduce a separate, distinct, and new cause of action.  Id.  The goal of

Rule 15(d) is to promote judicial efficiency, permitting "a court to award complete relief, or more nearly complete relief, in one action, and to avoid the cost, delay and waste of separate actions which must be separately tried and prosecuted." Keith v. Volpe, 858 F.2d 467, 473 (9th Cir.1988) (internal quotation marks and citation omitted).

The MGA parties contend the perjury allegations should not be permitted because there can be no present RICO injury (because Mattel prevailed in Phase 1) and/or no judgment has yet been entered and upheld on appeal. Additionally, they contend that perjury is not a predicate act of racketeering activity. The Court disagrees. Case law makes clear that what Mattel must show is injury as a result of the pattern of racketeering activity; Mattel need not prove that each and every predicate act itself caused harm. Corley v. Rosewood Care Center, Inc. of Peoria, 388 F.3d 990, 1004 (7th Cir. 2004) (improper for district court to hold that a RICO plaintiff be injured by every predicate act); Virden v. Graphics One, 623 F.Supp. 1417, 1425 (C.D. Cal. 1985) (a RICO plaintiff must be harmed by either a predicate act or the pattern of racketeering activity). As to the propriety of perjury as a predicate act, although perjury may not always rise to the level of a RICO predicate act, perjury in the course of a judicial proceeding, as is alleged here, is a predicate act of racketeering activity because it is obstruction of justice. See Streck v. Peters, 855 F.Supp. 1156, 1162 (D. Hawai'i,1994) (perjury during federal court proceedings is a RICO predicate act because it is indictable under the federal obstruction of justice statute).[2]

The MGA parties also that the allegations regarding the theft of trade secrets are improper because Mattel failed to allege them in the SAAC although the claims were known to them at that time. Mattel counters that, in light of the Rule 8(a) pleading standards, the Castilla allegations are already within the scope of the SAAC. See SAAC ¶¶ 79, 89-93. All that is required by Fed. R. Civ. P. 8(a) is a "a short and plain statement of the claim showing that the pleader is entitled to relief." The details are filled in by discovery, as has already occurred in this case, including Mr. Castilla's deposition. Accordingly, as the Court finds that these allegations are already within the scope of

---

[2] The MGA parties contend that this case is "unhelpful" to Mattel on this point: "The Streck court, in *dismissing* a RICO claim, simply noted that 'acts of perjury may, *under the appropriate circumstances*, constitute RICO predicate acts,' but did not discuss what those circumstances might be." Opp. at 12 n.11 (emphasis in original) (citing Streck, 855 F. Supp. at 1162). The quotation from the Streck case is correct, and the Streck court did indeed dismiss the RICO claim (or, more precisely, granted summary judgment in favor of defendants as to the RICO claim); however, the MGA parties incorrectly state that the Streck case did not discuss under what circumstances perjury might constitute the RICO predicate act of obstruction of justice. The four sentences following the quoted portion clearly do exactly what the MGA parties claim the Streck court did not: Specifically, the Streck court distinguishes between perjury occurring in state-court proceedings (which it notes is *not* a RICO predicate act) and perjury occurring in federal-court proceedings (which it notes *is* a RICO predicate act):

> [T]his Court finds that the acts of perjury which the defendants in the case at bar are alleged to have committed do not constitute RICO predicate acts. [The obstruction statute] applies only to perjury offered in federal court proceedings. Here, all of the alleged perjury took place in state court, not federal court. Thus, [the obstruction statute] is not implicated by Streck's perjury allegations.

Id. (internal citations and footnote omitted). Thus, the Streck case's relevance to the present issue is unmistakable.

the SAAC, the Court finds that the proposed amendments are not untimely; instead, they are in the nature of "clean up" amendments that succinctly state existing issues fairly stated in the SAAC when measured by the requirements of Rule 8(a).

The amendments setting forth additional copyright registrations come as a result of the jury's Phase 1 verdict.  Although in most respects the issue of copyright infringement was resolved in Phase 1, allegations regarding criminal copyright infringement, cast in the form of RICO predicate acts, are relevant to Phase 2.

The MGA parties correctly point out, and the Court is fully aware, that the proposed amendments will dramatically expand the scope of the present litigation.  Admittedly, the allegations set forth in the SAAC are already varied enough in nature and broad enough in scope to strain the Court's resources and to challenge a jury's powers of comprehension; nevertheless, this is not atypical of a successfully pleaded RICO claim, which the Court has already found was stated in the SAAC, and which has the tendency to draw together a multitude of seemingly unrelated acts into one litigation.[3]

In applying the relevant standards to the present motion, the Court's decision is not influenced by a lack of evidence supporting a particular allegation.  Although Mattel attaches an unprecedented amount of evidence to the proposed TAAC, it is not required to do so.  See Fed. R. Civ. P. 8(a).  Accordingly, Mattel's failure (in the MGA parties' eyes) to provide evidentiary support for its allegations that Jorge Castilla stole its trade secrets, that Farhad Larian destroyed evidence, and that the MGA parties engaged in commercial bribery of certain Mattel employees is not relevant to the present inquiry.[4]

Accordingly, because the Court discerns no prejudice to the MGA parties, no bad faith or undue delay on Mattel's part, and no futility as to the present amendments, the Court **GRANTS** Mattel's Motion for Leave to File the Proposed Third Amended Answer and Counterclaims (docket #5143).  To ensure proper filing, Mattel is directed to, within two days of the entry of this Order, provide the Courtroom Deputy Clerk for manual filing (1) an original and a copy of the public redacted version of the TAAC, and (2) an original and a copy of the under seal version of the TAAC.

_____

[3] The allegations regarding the Wachovia/Omni 808 financial transactions illustrate this potential, and the Court has considered whether the amendments should be rejected based on the notion that Rule 15(d) should not be used to introduce a separate, distinct, and new cause of action.  Here, however, the Wachovia/Omni 808 financial transactions are alleged as new predicate acts in an ongoing RICO conspiracy; as such, rejection of amendments as comprising a separate, distinct, and new cause of action is not warranted.

[4] Of course, in making factual allegations, all parties remain bound by their Rule 11(b)(3) obligation to  ensure that "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."  Moreover, whether there is evidence sufficient for a reasonable jury to find in favor of the complaining party as to a particular claim is determined after discovery, pursuant to a Rule 56 motion for summary judgment.

MINUTES FORM 90                                                    Initials of Deputy Clerk __cls_____
CIVIL -- GEN                              6                        Time: 03/02

## III. EX PARTE APPLICATION TO STAY PENDING APPEAL

The standard for granting a stay pending appeal is similar to that for a preliminary injunction. Lopez v. Heckler, 713 F.2d 1432, 1435 (9th Cir.1983). Thus, a party seeking a stay must show either (1) a likelihood of success on the merits of its appeal and the possibility of irreparable harm, or (2) that serious questions regarding the merits exist and the balance of hardships tips sharply in its favor. See Lands Council v. McNair, 494 F.3d 771, 775 (9th Cir. 2007) (noting that the alternative tests "are extremes of a single continuum in which the greater the relative hardship to the party seeking the [stay], the less probability of success must be shown.").

As the Court explained on the record, there is the potential for harm, possibly irreparable harm, to both sides, but that balance favors Mattel, for the reasons set forth in its opposition brief. See Opp. at 16-18.  For reasons set forth at length in the Court's orders that are purportedly implicated by the appeal, see Notice of Appeal at 1-2 & Exs. A-R (docket #5340), the Court does not find a likelihood of success on the merits of its appeal.

Accordingly, the Court **DENIES** the MGA parties' Ex Parte Application and Motion to Stay.

The Court understands from the report of the Temporary Receiver that its previous Orders regarding a partial stay of enforcement of the Court's December 3, 2008, need clarification, as does the issue of the scope of the profits that are subject to the constructive trust imposed by the Court on December 3, 2008.[5]  Accordingly, to assist the newly appointed Monitor, see infra, the Court provides the following guidance regarding its rulings and sets a briefing schedule as detailed below:

(1) **Older Inventory**:  The MGA parties and others in the distribution chain may sell all 2009 Bratz products up through and including January 21, 2010.  The older inventory of Bratz products may likewise be sold, unless the Monitor determines that those sales tend to, in his reasoned judgment, diminish the value of the Bratz brand, in which case he should so report to the Court in an expeditious manner.

(2) **Profits**:  The Court's Permanent Injunction Order found that all the female fashion dolls that use the "core Bratz fashion doll production sculpt" or the "Bratz movie sculpt" were subject to the injunction; the Courts' Constructive Trust imposed a constructive trust over, inter alia, "all trademarks, service marks and domain names[,] . . . that include the terms 'Bratz' or 'Jade.'"  In order to provide meaningful guidance to the parties, the Monitor, and their accountants, the parties may brief, and the Court will resolve, the issue of the scope of the profits that must be turned over by MGA and held by the Monitor pursuant to these Orders and any other Order of this Court.  The parties' simultaneous opening briefs (not to exceed 25 pages) shall be filed no later than

---

[5] This is largely due to the fact that, in issuing its December 3, 2008, order providing injunctive relief, the Court did not foresee that it would be subsequently modified by the January 7, 2009, Order staying enforcement pending sale of the 2009 Bratz line.

Wednesday, May 27, 2009; simultaneous responsive briefs (not to exceed 25 pages) shall be filed no later than Friday, May 29, 2009, at which time the Court will take the matter under submission and issue an order as expeditiously as possible.

## IV.  EX PARTE APPLICATION RE DISCLOSURE OF
### 2009 PRODUCT LINE INFORMATION (DOCKET #5425)

In light of the Court's denial of the Ex Parte Application for Stay Pending Appeal, the ex parte application seeking production of the 2009 Bratz line and the new MGA products is moot, and it is **DENIED** for that reason.  Nevertheless, because it is in the interest of all parties to expeditiously resolve outstanding issues regarding MGA's new "Moxie" line of dolls, counsel for Mattel and the MGA parties are directed to meet and confer in an expeditious manner regarding those dolls.

## V. ORDER RE EXPIRATION OF TEMPORARY RECEIVERSHIP
### AND ORDER APPOINTING MGA MONITOR

The Court previously issued, on April 27, 2009, an Order to Show Cause re Appointment of Permanent Receiver.  In response, the Temporary Receiver, the parties and the Court-appointed Forensic Auditor have filed, and the Court has reviewed, the following documents:  (1) The Report and Recommendations of Patrick A. Fraioli, Jr., Temporary Receiver; (2) the Responsive Report of Court-appointed Forensic Auditor Ronald Durkin; and (3) all documents filed in support of the Appointment of a Permanent Receiver and in opposition thereto, including the Statement of Position filed by Omni 808.  In consideration of these filings, and after hearing on these matters, as detailed in the following subsections, the Court declines to appoint a Permanent Receiver, confirms the expiration of the temporary receivership, orders the filing of an accounting of the temporary receivership, and appoints an MGA Monitor to effectuate the Court's prior Orders.

A.      **Expiration of Temporary Receivership**

**IT IS ORDERED THAT:**

1.      The period of the Temporary Receivership imposed by this Court on April 27, 2009 has expired;

2.      The Court declines to appoint a Permanent Receiver over MGA Entertainment, Inc. or MGA Hong Kong ("MGA");

3.      The Court reserves jurisdiction to appoint a Receiver in the future, as it deems appropriate;

4.      The Temporary Receiver, Patrick A. Fraioli, Jr., is hereby directed to prepare and file with the Court a final report including a final accounting and application for fees and

costs, on or before May 28, 2009;

5.    The Court hereby lifts the Injunction against Omni 808's enforcement of its rights as a creditor against MGA, and **ORDERS** that should Omni 808 take any action to enforce its rights as a creditor against MGA, such action shall be filed and heard in the Central District of California;

6.    Based on MGA's representations to the Court that, should MGA file for bankruptcy protection under Title 11 of the United States Code, it shall do so in the Central District of California, and having previously found in its April 27, 2009, Order appointing a Temporary Receiver that MGA is domiciled in California and have their principal place of business in the Central District of California and have the majority of their assets located within the Central District of California, the Court hereby lifts the Injunction against MGA filing bankruptcy without permission of the Court, but **ORDERS** that any bankruptcy filing by MGA or any of its affiliates shall be filed in the Central District of California.

**B.**    **Appointment of MGA Monitor**

1.    For good cause shown, pursuant to the alternative recommendation of the MGA parties, and in lieu of appointing a Permanent Receiver at this time, the Court appoints Patrick A. Fraioli, Jr., Monitor, who shall have the power to take any and all action that he deems necessary, appropriate, or advisable to effectuate the purposes of the Monitorship, including but not limited to the following:

a.    The Monitor shall maintain monitoring, supervisory, and oversight responsibilities over the Bratz Assets;[6]

---

[6] In light of the issue regarding the scope of profits that must be accounted for, see supra section III, and because the amount of access that must be given to the Monitor almost certainly extends beyond the materials that must be turned over to Mattel and may, depending on the resolution of the issue identified above, extend beyond the products for which profits must be held in constructive trust as a result of the Court's December 3, 2008, Orders, setting forth a workable definition of "Bratz Assets" that applies in all instances is challenging. Nonetheless, the Court so defines that term at this time in order to provide to the Monitor and the parties meaningful guidance on the issue of Monitor access to facilities and information. The Court admonishes all counsel that this definition should not be taken out of its current context and may very well be further modified, for purposes of both turn-over and the constructive trust, following resolution of the issue identified above.

Bratz Assets include all tangible or intangible assets, including, without limitation, all intellectual property necessary or materially useful for the design, manufacture, marketing, distribution and sale of any Bratz doll or other Bratz-branded product in the possession, custody or control (whether or not claimed to be encumbered by any security interest) of any of the MGA Defendants. The Bratz Assets include, without limitation:

a. All Bratz-related intellectual property rights, including, without limitation, copyrights (whether or not registered); copyright registrations; moral rights; design rights; patents (issued and pending); service marks; trademarks; tradedress; designs; slogans; characters; product packaging in any medium; product names; product

MINUTES FORM 90  
CIVIL -- GEN          9                   Initials of Deputy Clerk __cls_____  
                                             Time: 03/02

b.    The Monitor shall monitor, supervise, and oversee the exploitation of the Bratz Assets;

c.    The Monitor shall have the power and authority to monitor the financial affairs and operations[7] of MGA Entertainment, Inc. and MGA Hong Kong (collectively, "MGA") as the Monitor deems appropriate in order to carry out the duties specified herein;

d.    The Monitor shall monitor compliance by the parties with this Court's Injunction and other Orders as directed by the Court, specifically this Court's December 3, 2008, Order Granting Mattel, Inc.'s Motion for Permanent injunction, January 7, 2009, Order re Modification and Stay of Permanent Injunction Order, and April 27, 2009, Omnibus Order (the "Injunction Orders");

---

illustrations; product designs; product concepts; conceptual drawings; engineering drawings; engineering specifications; processes; methods; trade secrets; know-how; product ideas; prototypes; line extensions; domain names; marketing and advertising materials; commercials; style guides; theme songs; soundtracks; scripts; screenplays; computer programming; digital and internet rights; video games; theatrical, television, video and DVD rights and masters; and rights in future technologies.

b.  All Bratz-related tooling for all past, current and future lines, including without limitation tools, tooling, in process tools, molds, sculptures, models, dies, and mock-ups, as well as other Bratz-related tangible items.

c.  All Bratz-related marketing and sales assets for all past, current and future lines, including, without limitation, consumer lists, marketing plans, account plans, focus group studies, marketing databases, and other consumer and marketing research.

d.  All Bratz-related records, including, without limitation, contracts, manufacturing records, inventory records and data, sales records and data, product testing data and records, vendor list and records, customer communications, and invoices and purchase orders.

e.  All Bratz-related contracts and agreements, including, without limitation, assignments, work-for-hire agreements and licensing agreements.

f.  All other Bratz-related rights, including, without limitation, distribution rights, licensing rights, exploitation rights, accounts receivable, and all choses in action relating to Bratz or the Bratz brand.

g.  All Bratz-related items referenced at Paragraph 3 and Paragraph 8 (at lines 15-19) of the Court's Order granting Mattel's Motion for Permanent Injunction (Docket No. 4443).

h.  "Bratz-related" as used in this definition, is a broad term, that applies to all products, property, and information that bears the "Bratz" trademark.  It is expressly not limited to the Bratz female fashion dolls, and includes such products as the Bratz boy dolls, Baby Bratz, and Bratz Kidz.

[7] Toward that end, the Monitor shall have full and complete access to all Bratz assets (wherever they may be found), all MGA business premises, all MGA facilities (including manufacturing and storage facilities), all real and personal MGA property (including computers), all MGA employees, all MGA information (including financial and operational information), and all MGA books and records.

e.    At the appropriate time, the Monitor shall direct the MGA turnover to Mattel of any of the Bratz Assets subject to recall, impoundment, or destruction, as set forth in this Court's Injunction Orders of December 3, 2008, and as otherwise directed by the Court;

f.    The Monitor shall establish such bank accounts as the Monitor deems necessary or convenient to carry out the Monitor's duties under this Order;

g.    The Monitor shall collect from MGA, on a monthly basis, the amount of net profits derived by MGA from exploitation of the Bratz Assets during the preceding month, as well as an accounting setting forth the basis for the calculation of the net profits and the supporting documentation establishing such basis.  The Monitor shall retain these funds pending further order of this Court;[8]

h.    The Monitor is ordered and directed to obtain from MGA, and to make available to Mattel, as set forth herein, such of the Bratz Assets, and related information about the content of the Fall, 2009 Bratz line being produced and sold by MGA pursuant to this Court's Injunction Orders, as are necessary to enable Mattel to begin preparation of its own Bratz line for the Spring, 2010 sales season;

i.    The Monitor shall monitor, supervise and oversee, with authority to approve or disapprove, the following categories of financial transactions of MGA: Inter-company transfers of any amount, payments by MGA or any MGA affiliate to any related parties in excess of $50,000.00 per payment, and any payments to Omni 808;

j.    The Monitor shall file monthly reports with the Court, under seal (but served on all parties), setting forth the Monitor's activities, actions and recommendations. Nothing herein shall prevent the Monitor from filing other reports, as he deems appropriate.  As in the case of the Court-appointed Settlement Officer and Discovery Master (and as previously with the Court-appointed Temporary Receiver), the Monitor may report orally to Court concerning matters of procedure; however, any substantive inquiries or reports shall be submitted in the first instance to the Court in writing.  The Court shall determine, whether and, if so, with what restrictions, the Monitor's reports shall be served on parties and their counsel;

---

[8] The Court recognizes that resolution of the issue identified in section III, supra, will greatly impact on the amount of profits that must be turned over by MGA (see infra ¶ 2) and retained by the Monitor; accordingly, it is the Court's intention to resolve the issue as expeditiously as possible and, in any event, prior to the first turnover of profits on June 22, 2009.

MINUTES FORM 90                                    Initials of Deputy Clerk __cls_____
CIVIL -- GEN                          11           Time: 03/02

k.      The Monitor may retain and/or engage the services of advisors and/or professionals, including, without limitation, accountants, consultants and experts to assist the Monitor in carrying out his duties and responsibilities under this Order. The Monitor, without further order of this Court, is authorized to employ Ervin, Cohen & Jessup LLP, and the accounting firm of Crowe Horwath LLP, to assist him in his duties. Nothing herein shall prevent the Monitor from utilizing the same advisors and professionals as rendered services to the Temporary Receiver before the appointment of the Monitor;

l.      The Monitor may hire and employ individuals and entities as necessary or advisable to carry out the Monitor's duties under this Order;

m.      The Monitor, his employees and agents, as well as any and all of the professionals employed by the Monitor, are entitled to compensation for services rendered at their normal hourly rates and reimbursement for all expenses incurred by them in providing services to the Monitor. The Monitor shall submit to the Court, *in camera*, monthly requests for approval of payment. Upon Court approval, the Monitor shall serve on the Parties, but not file, Notice of Court Approval of Request for Payment of Interim Fees and Costs of Monitorship, along with a summary statement of the fees and costs;

n.      The Monitor shall have the status of an officer and agent of this Court, and as such shall be vested with the same immunities as enjoyed by this Court. Neither the Monitor nor any person or entity acting at the direction of the Court or pursuant to agreements with the Monitor (whether employees, vendors, contractors or otherwise) may be held liable to any party for any acts taken in good faith in compliance with this Order, including but not limited to claims of alleged copyright infringement, trademark infringement, or other alleged causes of action;

o.      Nothing herein shall alter or affect the right of Mattel to take any and all actions relating to the Bratz Assets or the Bratz brand which it otherwise lawfully could take, including, without limitation, the institution, maintenance and prosecution of legal proceedings anywhere in the world or other proceedings before any governmental or tribunal or arbitration panel;

p.      The Court shall retain jurisdiction over the Monitorship for the duration of its existence.

q.      No bond shall be required in connection with the appointment of the Monitor. Except for acts of gross negligence, the Monitor and his agents and employees shall not be liable for loss or damage incurred by any party to this action or their officers, agents, servants, employees, attorneys or others by virtue of any act performed or omitted to be performed by the Monitor in connection with the discharge of his duties and responsibilities.

2.   Unless otherwise directed by the Court, MGA is **ORDERED** to turn over to the Monitor, on a monthly basis, the amount of net profits derived by MGA from exploitation of the Bratz Assets during that month, as well as an accounting setting forth the basis for the calculation of the net profits and the supporting documentation establishing such basis. The Monitor and his accountants shall review the accountings, and any related submissions of the Court or Monitor by Mattel, and shall report and recommend to the Court as directed on any disputes arising therefrom. MGA shall make its first turnover and accounting by June 22, 2009, which shall cover the period from the return of the jury verdict in this case through May 31, 2009, and this shall constitute compliance with section V of the Court's April 27, 2009, Order. Each month thereafter, the turnover and accounting shall be made by the 10th day of the month, for the prior month period.

3.   MGA shall immediately make available to the Monitor, for transfer to Mattel, such portion of the Bratz Assets necessary to enable Mattel to begin preparation of its own Bratz line for the Spring, 2010 sales season.  MGA shall also provide to the Monitor for delivery to Mattel such related information about the content of the Fall, 2009, Bratz line being produced and sold by MGA pursuant to this Court's Injunction Orders to enable Mattel to make appropriate commercial determinations about the content of its own Spring, 2010, Bratz line.

4.   No action may be filed against the Monitor, or any of his agents or employees, for any actions taken in this case, without prior permission of this Court.

5.   For the duration of Monitorship, Mattel is directed to pay to the Monitor, in the manner directed by the Monitor, the fees and costs of the Monitorship within five (5) days of receipt of the Notice of Court Approval of Request for Payment of Interim Fees and Costs of Monitorship. All interim fees paid shall be subject to final review and approval by this Court.  This Court retains jurisdiction to award a greater or lesser amount as the full, fair, and final value of such services.

6.   Any party may later apply to the Court for relief related to any profit calculations or profits turned over to the Monitor, or for relief related to the allocation of payment of the fees and costs of the Monitorship, as well as for the previously imposed Temporary Receivership.

7.   All Parties and their employees, agents and attorneys are ordered to cooperate fully with the Monitor.

## VI.  IMPOSING LIMITED AND TEMPORARY STAY OF PHASE 2

At the May 18, 2009, hearing, the Court heard from the Court-appointed Settlement Officer, who advised the Court that a settlement conference was scheduled for June 1, 2009.  The Settlement Officer believes that settlement negotiations continue to be of value, and has recommended that the Court consider the judicial officer's participation in those settlement

negotiations -- a proposal to which no party offered objection.

The Court heard from the parties regarding whether a stay of Phase 2 discovery should be imposed to assist in settlement efforts. Counsel for MGA advocated for a four-month stay. Counsel for Mattel cautioned against a stay, outlining for the Court the various positions taken by the MGA parties as to how the Court's previous stay limited or altered their responsibility to comply with previously set deadlines.

Mindful of the concerns expressed by Mattel, the Court nevertheless imposes a stay of Phase 2 discovery that is strictly limited in scope and duration. The parties shall, notwithstanding the stay, meet and confer regarding the Moxie issue set forth in section IV. Moreover, notwithstanding any other provision of this Order, the MGA parties are not relieved of their responsibility to produce, on or before the currently imposed deadline, their responses the Interrogatories to which counsel for Mattel referred during the hearing.

The stay of discovery, as limited, is imposed up to and including June 12, 2009. Unless otherwise extended by the Court or the Discovery Master, the deadlines for all discovery responses that have previously been ordered are extended for a period, measured by calendar days, not longer than the total number of calendar days the stay of discovery is imposed. For purposes of this date calculation, both the beginning date of the stay (May 18, 2009) and the ending date (June 12, 2009) are to be included. Similarly, the deadline for responding to discovery requests that have been propounded, but to which responses are not yet due, is extended for the same period of calendar days. If depositions are scheduled during this time period, they must be rescheduled for a date certain no later than the currently scheduled date plus the number of calendar days for which the stay of discovery is imposed.

The Court further **ORDERS** the parties to participate in a Mandatory Settlement Conference ("MSC") on or about June 1, 2009 (to be coordinated by the Court-appointed Settlement Officer). Those attending the MSC shall include the chief executive officers or equivalent of Mattel, MGA, and Omni 808; the chief financial officers or equivalent of Mattel, MGA, and Omni 808; in-house counsel of Mattel and MGA; and lead counsel of record for each party. Following the MSC, the Settlement Officer shall report to the Court on the status of settlement efforts. If the parties fail to reach a full and complete settlement, the Court shall, pursuant to the parties' agreement and waiver of any conflict issues, conduct a settlement conference beginning on June 10, 2009, at 10:00 am.

## VII. NOTICE OF INTENT TO UNSEAL FORENSIC AUDITOR REPORTS

In light of Omni 808's emphatic public criticism of the Court-ordered Forensic Auditor's April 23, 2009, Report, the contents of which were expressly ordered by this Court to be maintained by the parties under seal, and the contents of which, to the Court's knowledge, were in fact maintained under seal until the filing of The Statement of Position of Omni 808 Investors, LLC, filed on May 14, 2009, it is the Court's intention to release the April 23, 2009, Summary Report (together with its Exhibits that have been redacted for privilege), absent sustained objections

thereto by the MGA parties.[9]

At this time, the Court **ORDERS** that the May 17, 2009, Responsive Forensic Auditor Report, maintained by the Court until this time *in camera* be released under seal to the parties.[10] The May 17, 2009, Responsive Report shall, pending resolution of any objections to its disclosure by the MGA parties, remain under seal, and distribution shall be limited to parties, their attorneys (whether or not the attorneys are of record), any Court-appointed officers, and, as necessary, the parties', attorneys', and officers' staff.

Within five days of the entry of this Order, the MGA parties, including Mr. Larian, may file, under seal, specific and supported objections to the release of the Summary Report or the Responsive Report.  In the same time frame and manner, any party may object to the release of specific identifying information contained in the exhibits of the report than have the tendency to reveal personal identifying information such as social security numbers, tax identification numbers, or bank account numbers.  Within two days, any party may respond to these objections.  No hearing will be held unless the Court orders otherwise.

**IT IS SO ORDERED.**

---

[9] Despite an express Order of this Court to maintain the Summary Report and its exhibits under seal, counsel for Omni 808 revealed the Report's contents in Omni 808's Statement of Position.  Similarly, counsel for Mattel also revealed certain contents of the Receiver's Report and Recommendation regarding MGAE's liquidity and solvency, also released under seal.  All counsel are reminded of their responsibilities to maintain information under seal.  Unless otherwise ordered, the Court's hearings are open to the public.  The Court does not close hearings unless and until requested to do so by one or more of the parties, and only then does so when and to the extent that such closure is justified when counterbalanced with important First Amendment concerns.

[10] Sua sponte, the Court has already redacted certain portions of the Forensic Auditor's Responsive Report on the basis that the emails reflect highly personal electronic conversations between Mr. Larian, Mr. Kadisha, and their spouses.

# EXHIBIT 2

Page 1 of 1

## Valerie Lozano

| | |
|---|---|
| **From:** | Scott Kidman |
| **Sent:** | Monday, August 17, 2009 10:25 AM |
| **To:** | wmolinski@orrick.com; jason.russell@skadden.com |
| **Cc:** | Michael T Zeller; Dylan Proctor; Valerie Lozano |
| **Subject:** | Carter Bryant v. Mattel Inc. and consolidated actions |

Dear Counsel:

Mattel intends to file later today its motion for leave to file its fourth amended answer and counterclaims. Mattel also intends to file an ex parte application to set the hearing date for the motion. The basis for the ex parte application is that in its Order dated May 21, 2009, the Court set September 11, 2009 as the deadline for amending pleadings related to Phase 2. However, it is unclear from the Court's Order whether September 11, 2009 is the deadline for filing the motion for leave to amend or the deadline by which the motion for leave to amend is to be heard. Mattel is filing its motion today, more than 21 days before September 11, 2009. However, the next available hearing date on the Court's calendar that provides the MGA parties the standard 21-days' notice is September 21, 2009. To avoid any dispute, Mattel seeks to have the motion for leave to amend heard as soon as practicable after September 7, 2009 (21-days from today's date) but in any event by a date that comports with the September 11, 2009 deadline for amending pleadings related to Phase 2, to the extent the motion must be heard by that date.

Please let me know as soon as possible whether the MGA parties intend to oppose this ex parte application.

Thank you.

**Scott B. Kidman**
*Partner,*
**Quinn Emanuel Urquhart Oliver & Hedges LLP.**

865 S. Figueroa St 10th Floor
Los Angeles, Ca 90017
213-443-3162 Direct
213.443.3000 Main Office Number
213.443.3100 FAX
scottkidman@quinnemanuel.com
www.quinnemanuel.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

# EXHIBIT 3

## Valerie Lozano

**From:**      Scott Kidman

**Sent:**      Monday, August 17, 2009 12:07 PM

**To:**        moverland@scheperkim.com; acote@scheperkim.com

**Cc:**        Michael T Zeller; Dylan Proctor; Valerie Lozano; wmolinski@orrick.com; jason.russell@skadden.com; ahurst@orrick.com

**Subject:** Carter Bryant v. Mattel Inc. and consolidated actions

Dear Counsel:

Mattel intends to file later today its motion for leave to file its fourth amended answer and counterclaims.  Mattel also intends to file an ex parte application to set the hearing date for the motion.  The basis for the ex parte application is that in its Order dated May 21, 2009, the Court set September 11, 2009 as the deadline for amending pleadings related to Phase 2.  However, it is unclear from the Court's Order whether September 11, 2009 is the deadline for filing the motion for leave to amend or the deadline by which the motion for leave to amend is to be heard.  Mattel is filing its motion today, more than 21 days before September 11, 2009.  However, the next available hearing date on the Court's calendar that provides the standard 21-days' notice is September 21, 2009.  To avoid any dispute, Mattel seeks to have the motion for leave to amend heard as soon as practicable after September 7, 2009 (21-days from today's date) but in any event by a date that comports with the September 11, 2009 deadline for amending pleadings related to Phase 2, to the extent the motion must be heard by that date.

Please let me know as soon as possible whether you intend to oppose this ex parte application.

Thank you.

**Scott B. Kidman**
*Partner,*
**Quinn Emanuel Urquhart Oliver & Hedges LLP.**

865 S. Figueroa St 10th Floor
Los Angeles, Ca 90017
213-443-3162 Direct
213.443.3000 Main Office Number
213.443.3100 FAX
scottkidman@quinnemanuel.com

8/17/2009