1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      John B. Quinn (Bar No. 090378)
2      (johnquinn@quinnemanuel.com)
      Michael T. Zeller (Bar No. 196417)
3      (michaelzeller@quinnemanuel.com)
      Jon D. Corey (Bar No. 185066)
4      (joncorey@quinnemanuel.com)
      865 South Figueroa Street, 10th Floor
5   Los Angeles, California  90017-2543
    Telephone:  (213) 443-3000
6   Facsimile:    (213) 443-3100

7   Attorneys for Mattel, Inc.

8                     UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10                          EASTERN DIVISION

11

12   CARTER BRYANT, an individual,          CASE NO. CV 04-9049 SGL (RNBx)

13                  Plaintiff,              Consolidated with
                                            Case No. CV 04-09059
14          vs.                             Case No. CV 05-02727

15   MATTEL, INC., a Delaware corporation,  Hon. Stephen G. Larson

16                  Defendant.              [PUBLIC REDACTED] MATTEL,
     _____ INC.'S NOTICE OF MOTION AND
17   AND CONSOLIDATED ACTIONS               MOTION FOR LEAVE TO FILE
                                            FOURTH AMENDED ANSWER AND
18                                          COUNTERCLAIMS; AND

19                                          MEMORANDUM OF POINTS AND
                                            AUTHORITIES IN SUPPORT
20                                          THEREOF

21                                          [Declaration of B. Dylan Proctor filed
                                            concurrently herewith]
22
                                            [Proposed] Fourth Amended Answer
23                                          and Counterclaims lodged concurrently
                                            herewith]
24
                                            Hearing Date:  September 21, 2009
25                                          Time:  10:00 a.m.
                                            Place:  Courtroom 1
26
                                            **Phase 2**
27                                          Discovery Cut-off:  December 11, 2009
                                            Pre-trial Conference:  March 1, 2010
28                                          Trial Date:  March 23, 2010

00505.07975/3058511.1

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on September 21, 2009 at 10:00 a.m., or as soon as the matter may otherwise be heard, in the courtroom of the Honorable Stephen G. Larson, located at 3470 Twelfth Street, Riverside, California, 92501, Mattel, Inc. ("Mattel") will, and hereby does, move this Court pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, and the Scheduling Order set by this Court on May 21, 2009, for an order granting Mattel leave to file a Fourth Amended Answer and Counterclaims lodged concurrently herewith.

This Motion is made on the grounds that Mattel's investigation and discovery in this case have revealed facts showing that Mattel has a right to additional and further relief against the named counter-defendants; Mattel has also obtained additional information which supports adding certain co-conspirators and RICO enterprise members as named defendants in place of the Doe defendants; counter-defendants will not be unduly prejudiced by the amendments; Mattel has not unduly delayed seeking its requested relief; and Mattel's proposed amendment is made in good faith.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the concurrently-filed Declaration of B. Dylan Proctor, and the concurrently-lodged proposed Fourth Amended Answer and Counterclaims, the pleadings and other papers on file in this action, any matters of which this Court may take judicial notice, and such further evidence and argument as may be presented at or before the hearing on this matter.

00505.07975/3058511.1

1

### **Local Rule 7-3 Certification**

2       This motion is made following the conference of counsel in compliance with

3   Local Rule 7-3, which took place on July 28, 2009 and thereafter.

4

5   DATED:  August 17, 2009        QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

6

7                                  By
                                     Michael T. Zeller

8                                    Michael T. Zeller
                                     Attorneys for Mattel, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

00505.07975/3058511.1

# **TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................. 1

PRELIMINARY STATEMENT ................................................................. 1

STATEMENT OF FACTS ...................................................................... 2

ARGUMENT ..................................................................................... 8

I.    MATTEL SHOULD BE PERMITTED TO AMEND ITS COUNTERCLAIMS UNDER RULE 15(A) ................................................. 8

    A.    Rule 15(a) Requires the Liberal Granting of Motions for Leave to Amend Pleadings ......................................................... 8

    B.    Defendants Will Not Be Unfairly Prejudiced By Mattel's Proposed Amendments ......................................................... 9

    C.    Mattel Has Timely Sought To Amend Its Complaint .......................... 13

    D.    Mattel Seeks To Amend The Complaint In Good Faith ....................... 16

    E.    Mattel's Amendment Is Not Futile ............................................... 17

CONCLUSION ................................................................................. 18

00505.07975/3058511.1

MOTION FOR LEAVE TO FILE FOURTH AMENDED ANSWER AND COUNTERCLAIMS

**TABLE OF AUTHORITIES**

**Page**

**Cases**

Am. Society For The Prevention of Cruelty To Animals v.
 Ringling Bros. and Barnum & Bailey Circus,
 244 F.R.D. 49 (D.D.C. 2007) ..................................................................... 9

Beery v. Hitachi Home Elecs. (Am.), Inc.,
 157 F.R.D. 481 (C.D. Cal. 1994).............................................................. 8

DCD Programs, Ltd. v. Leighton,
 833 F.2d 183 (9th Cir. 1987)............................................... 8, 9, 12, 16

Dungan v. Academy at Ivy Ridge,
 2009 WL 2176278 (N.D.N.Y. July 21, 2009)....................................... 9

Eminence Capital, LLC v. Aspeon, Inc.,
 316 F.3d 1048 (9th Cir. 2003)................................................................. 8, 9

F.D.I.C. v. Jackson-Shaw Partners No. 46, Ltd.,
 1994 WL 669879 (N.D. Cal. Nov. 18, 1994)...................................... 9, 11

Foman v. Davis,
 371 U.S. 178 (1962) ................................................................................ 8, 17

Howey v. United States,
 481 F.2d 1187 (9th Cir. 1973) ............................................................... 16

Islamic Republic of Iran v. The Boeing Co.,
 771 F.2d 1279 (9th Cir. 1985) ............................................................... 16

Miller v. Rykoff-Sexton, Inc.,
 845 F.2d 209 (9th Cir. 1988) ................................................................. 17

SAES Getters, S.p.A. v. Aeronex, Inc.,
 219 F. Supp. 2d 1081 (S.D. Cal. 2002) .............................................. 16

Sierra Club v. Union Oil Co. of California,
 813 F.2d 1480 (9th Cir. 1987),
 rev'd on other grounds, 485 U.S. 931 (1988) ............................... 10, 16

Sorosky v. Burroughs Corp.,
 826 F.2d 794 (9th Cir. 1987) ................................................................. 16

State Farm Mut. Auto. Ins. Co. v. CPT Medical Servs., P.C.,
 246 F.R.D. 143 (E.D.N.Y. 2007).......................................................... 9

United States v. Webb,
 655 F.2d 977 (9th Cir. 1981) ................................................................. 16

Vasquez v. Summit Women's Ctr., Inc.,
    2001 WL 34150397 (D. Conn. Nov. 16, 2001)......................................................9

Washington ex rel. Raya v. Taser Int'l, Inc.,
    2007 WL 4098829 (E.D. Cal. Nov. 16, 2007) ....................................................11

### **Rules/Statutes**

Fed. R. Civ. P. Rule 15 ...........................................................................................6

Fed. R. Civ. P. Rule 15(a)..............................................................1, 8, 9, 11, 16

# MEMORANDUM OF POINTS AND AUTHORITIES

## Preliminary Statement

Since seeking leave to file its Third Amended Answer and Counterclaims (the "TAAC"), Mattel has obtained evidence that supports new allegations against MGA and Isaac Larian arising out of their deliberate failure to preserve and protect the Bratz assets held in constructive trust for Mattel. Mattel has also obtained evidence that supports naming four additional defendants -- Omni 808, Neil Kadisha and the IGWT entities, all of whom were previously mentioned by name repeatedly in the allegations of the TAAC -- in connection with its existing RICO and fraudulent transfer claims in place of Doe defendants. Mattel now seeks leave to add these new claims and allegations and name these additional parties. Mattel also seeks to clarify its existing RICO claims to add an additional enterprise.

It is well-settled that amendments to pleadings should be liberally granted. Rule 15(a), which applies here, mandates that leave to amend "shall be freely given when justice so requires." This policy of granting leave liberally to amend applies equally to amendments to add claims and to amendments to add parties.

The amendments will not cause the MGA parties undue prejudice. The transactions involving Omni 808, Kadisha and the IGWT entities are already squarely at issue in this lawsuit; each of the parties to be added is already expressly named as a member of the RICO enterprises and conspiracies alleged in the TAAC. Indeed, Omni 808 already has sought and obtained leave to intervene as a party. Each has already been served with discovery requests, already been involved in multiple discovery disputes and already been compelled -- some on multiple occasions -- to provide in discovery. Likewise, the MGA parties have been on notice of a potential claim based on the dramatic loss in the value of Bratz assets at least since they first sought a stay of the Court's injunctive orders. The questions surrounding the dramatic drop in Bratz sales have been the subject of extensive discovery requests, as well as motion practice.

1   That loss in value is already directly related to Mattel's existing claims, including

2   because it is already recoverable as damages for Mattel's existing claims.

3        Mattel has not delayed in seeking to amend, it seeks to amend in good faith, and

4   the new claims -- as well as the existing claims against the new parties -- are

5   meritorious, not futile.  Given the complete overlap in the facts at issue, the interests of

6   judicial economy also strongly favor the resolution of Mattel's claims in a single action,

7   rather than forcing Mattel to bring a separate action against MGA, Larian and the

8   proposed new defendants.  Mattel respectfully submits that it should be granted leave to

9   file its Fourth Amended Answer and Counterclaims.

10                          **<u>Statement of Facts</u>**

11       ***The Prior Pleadings.***  Mattel filed its original Complaint on April 27, 2004,

12   alleging that a former Mattel design employee, Carter Bryant, breached his duties to

13   Mattel by working with and assisting a Mattel competitor, MGA, while employed by

14   Mattel.[1]  MGA intervened in that case on December 7, 2004, asserting that its purported

15   rights with respect to Bratz were at stake.[2]  In April 2005, MGA filed an unfair

16   competition complaint against Mattel, alleging trade dress infringement and claims

17   regarding alleged Mattel business practices.[3]  The Court subsequently consolidated the

18   cases.[4]

19       On November 20, 2006, Mattel sought leave to file an amended complaint to add

20   MGA and four other defendants and nine new legal claims, including claims for

21   copyright infringement, violation of RICO, conspiracy to violate RICO,

22   misappropriation of trade secrets, unfair competition and other state law tort claims.

23

24       [1]   See Mattel's Complaint in Case No. 04-9059 SGL (RNBx), dated April 27, 2004, Proctor Decl. Exh. 1.

25       [2]   See Stipulation Permitting MGA Entertainment to Intervene in Case No. 04-9059, dated December 3, 2004, Proctor Decl. Exh. 2.

26       [3]   See MGA's Complaint in Case No. CV 05-2727, dated April 13, 2005, Proctor Decl. Exh. 3.

27       [4]   See Order Consolidating Case Nos. CV 04-9049, CV-9059 and CV 05-2727, dated

28   June 19, 2006, Proctor Decl. Exh. 4.

1  On January 12, 2007, the Court granted Mattel leave to file its proposed amendments in

2  the form of an amended answer and counterclaims in the case that MGA had filed

3  against Mattel.[5]  On July 12, 2007, following a round of pleading motions brought by

4  Bryant and the MGA parties that were largely denied, Mattel filed its Second Amended

5  Answer and Counterclaims against MGA, MGA Entertainment (HK) Limited, MGA de

6  Mexico, S.R.L. de C.V., Carter Bryant, Isaac Larian, Carlos Gustavo Machado Gomez,

7  and DOES 4 through 10 (the "SAAC").

8      ***The Phase 1 Proceedings.***  On February 12, 2007, the Court bifurcated trial in

9  this matter, generally putting claims related to Bryant's theft of Bratz from Mattel, and

10  MGA's and Larian's complicity therein, in Phase 1.[6]  In Phase 1, the jury found that

11  Bryant conceived and created key Bratz inventions while he was a Mattel employee.[7]

12  As a consequence, Mattel is the owner of the copyrights in the Bratz doll designs,

13  among other properties.[8]  The jury also found MGA and Larian liable for tortious

14  interference with contract, conversion, aiding and abetting breach of fiduciary duty,

15  aiding and abetting breach of duty of loyalty and infringing Mattel's copyrights in the

16  Bratz works that Mattel owned.  The jury also found that MGA fraudulently concealed

17  the bases for Mattel's claims for intentional interference and conversion.[9]

18      On December 3, 2008, the Court issued Orders in connection with Mattel's

19  claims for equitable relief granting Mattel (1) a declaratory judgment of ownership, (2)

20  a permanent injunction enjoining MGA's further manufacture, distribution and sale of

21  infringing Bratz dolls and its further use of the "Bratz" name, and (3) a constructive

22

23

24  [5]  See January 11, 2007 Order (allowing Mattel to file an Amended Answer and Counterclaims in Case No. CV 05-2727), Proctor Decl. Exh. 5.

25  [6]  See February 12, 2007 Hearing Tr., Proctor Decl. Exh. 6.

26  [7]  See Final Verdict Form as Given, dated July 17, 2008, Proctor Decl. Exh. 7.
   [8]  See Court's Phase B Jury Instructions as Given, dated August 20, 2008, Proctor Decl. Exh. 8.

27  [9]  See Final Verdict Form as Given, dated July 17, 2008, Proctor Decl. Exh. 7; Phase B

28  Verdict Form as Given, dated August 26, 2008, Proctor Decl. Exh. 9.

1  trust over Bratz properties, including the Bratz marks.[10]  The Court stayed the orders
2  pending its consideration of the parties' post-trial motions and pending further order of
3  the Court.[11]  On January 7, 2009, the Court issued an Order modifying the stay and
4  providing that "retailers and distributors will be permitted to purchase the Spring and
5  Fall 2009 lines of Bratz and Bratz-related products from MGA and MGA licensees, up
6  to and including December 31, 2009."[12]

7        In applications to stay the injunction Orders, both before and after the Court's
8  January 7, 2009 Order, MGA repeatedly represented to this Court and to the Ninth
9  Circuit that ███████████████████████████████████████████████████
10 ██████████.[13]  It claimed that, ████████████████████████████████
11 ████████████████████████████████████[14] and its "████
12 ███████████████████████████████████."[15]  MGA
13 made similar arguments in an attempt to obtain a further stay through the Spring 2010
14 selling season.[16]

15       As early as December 2008, Mattel opposed MGA's stay applications on the
16 grounds that allowing MGA to maintain control over the Bratz assets would potentially
17 have devastating consequences for Mattel's ownership of Bratz.[17]  Again, in May 2009,

18

19   [10]   December 3, 2008 Order, at 5-6, Proctor Decl. Exh. 10.
20   [11]   Id. at 16.
     [12]   January 7, 2009 Order, at 1, Proctor Decl. Exh. 11.
21   [13]   See MGA Parties' *Ex Parte* Application and Motion for Stay Pending Appeal, dated
     Decmeber 9, 2008, at 5-6, Proctor Decl. Exh. 12; see also MGA's Emergency Motion for Stay
22   Pending Appeal [Ninth Circuit], dated December 19, 2008, at 3, 23, Proctor Decl. Exh. 13;
     MGA Parties' *Ex Parte* Application and Motion for Stay Pending Appeal, dated May 8, 2009,
23   at 18, 25, Proctor Decl. Exh. 14.
     [14]   See Declaration of Brian Wing In Support Of the MGA Parties' Request for a Stay,
24   dated December 11, 2008, at ¶¶ 6-7, Proctor Decl. Exh. 15.
     [15]   Id. at ¶ 9.
25   [16]   MGA Parties' *Ex Parte* Application and Motion for Stay Pending Appeal, dated May
26   8, 2009, at 12, 14, Proctor Decl. Exh. 14; see also Declaration of John Woolard In Support Of
     The MGA Parties' Request For Further Stay, dated May 7, 2009, at ¶ 5, Proctor Decl. Exh. 16.
27   [17]   See Mattel's Opposition to MGA's *Ex Parte* Application for Stay Pending Appeal,
     dated December 23, 2008, at 22, Proctor Decl. Exh. 17 ("████████████████████████████
28   (footnote continued)

1   Mattel opposed MGA's *ex parte* application and motion for stay pending appeal on the

2   grounds that permitting MGA to retain control over Bratz would cause it to lose

3   substantial value.[18]

4   **Mattel's Third Amended Answer and Counterclaims.**  On April 8, 2009, Mattel

5   sought leave to file its Third Amended Answer and Counterclaims ("TAAC").  Over

6   MGA's vigorous opposition, the Court granted Mattel's motion for leave to file the

7   TAAC on May 21, 2009.[19]  The TAAC added a new counterclaim for avoidance of

8   intentional and constructive fraudulent transfers, including based on MGA's and

9   Larian's transfer of tens of millions of dollars of Bratz inventory from MGA to the

10  Larian-controlled IGWT entities.[20]  In addition, the TAAC added new allegations

11  regarding the Omni and IGWT transactions in support of its existing unfair competition

12  and RICO claims, including allegations regarding additional predicate acts of money

13  laundering, concealing assets and engaging in monetary transactions involving property

14  derived from unlawful activity.[21]  The TAAC also added new allegations regarding

15  additional predicate acts of commercial bribery, destruction of evidence and obstruction

16  of justice based on, among other things, MGA's secret payments to Mattel employees

17  who worked on Bratz while employed by Mattel, Farhad Larian's destruction of

18  documents and Isaac Larian's false statements regarding the origin of Bratz.[22]  The

19  TAAC also included allegations regarding Jorge Castilla's theft of trade secrets in

20

21

22

23

24  ("); see also Mattel's Opposition to Appellant's Emergency Motion for Stay Pending Appeal [Ninth Circuit], dated December 26, 2008, at 60, Proctor Decl. Exh. 18 (same).

25  [18]   See Mattel, Inc.'s Opposition to MGA Parties' Ex Parte Application and Motion for Stay Pending Appeal dated May 14, 2009, Proctor Decl. Exh. 19.

26  [19]   See May 21, 2009 Order, Proctor Dec. Exh. 20.  In that same order, the Court set

27  September 11, 2009 as the cut-off date for amending pleadings in Phase 2. Id. at 4.

    [20]   TAAC at ¶¶ 217-222, Proctor Decl. Exh. 21.

28  [21]   Id. at ¶¶ 108-126, 138, 141.

00505.07975/3058511.1

MOTION FOR LEAVE TO FILE FOURTH AMENDED ANSWER AND COUNTERCLAIMS

1 support of its existing trade secret theft, RICO, unfair competition and conversion

2 claims.[23] The Court recognized that Mattel's amendments would "dramatically expand

3 the scope of the present litigation" but, finding <u>Rule</u> 15 to be satisfied, granted Mattel

4 leave as to all of its proposed amendments.[24]

5   ***New Information Mattel Has Discovered Since Seeking Leave To File The***

6 ***TAAC.*** Since the filing of its motion for leave to file the TAAC, Mattel has discovered

7 new evidence which shows that the MGA parties have engaged in conduct designed to

8 decrease and destroy the value the Bratz assets they hold in constructive trust for Mattel

9 and have sought to conceal such conduct from Mattel and the Court. Among other

10 things, contrary to the repeated representations to this Court and the Ninth Circuit ███

11 ███████████████████████████████████████████████████████

12 █████████████, Mattel has obtained evidence confirming that MGA in fact has not

13 been meaningfully marketing and selling a 2009 Bratz line.

14   For example, on May 26, 2009 -- after Mattel filed the TAAC -- MGA produced

15 its "█████████," which confirms that MGA was not investing in a viable 2009

16 Bratz line and that a 2009 Bratz line barely exists.[25] MGA represented that ███

17 ███████████████████████████,[26]███████████████

18 ██████████████████████████████████████████.[27] In

19 contrast, the 2007 line consisted of at least 139 SKU's and the 2008 line had at least 60

20

21

22

23 [22] <u>Id.</u> at ¶¶ 98, 103-104, 137, 141.

  [23] <u>Id.</u> at ¶¶ 77-87.

24 [24] May 21, 2009 Order, at 6, Proctor Decl. Exh. 20.

  [25] <u>See</u> May 26, 2009 letter from J. Russell to M. Zeller, Proctor Decl. Exh. 22; <u>see also</u>

25 2009 Price List, Proctor Decl. Exh. 23.

  [26] <u>See</u> MGA's Reply In Support Of Their Emergency Motion For Stay Pending Appeal,

26 June 4, 2009, at 3, Proctor Decl. Exh. 24.

  [27] <u>See</u> 2009 Price List, Proctor Decl. Exh. 23; <u>see also</u> Supplemental Declaration of

27 Michael T. Zeller In Support Of Mattel's Objections and Response to Submission of Letter

28 from Sears Holding, dated June 8, 2009, at ¶¶ 5-8, Proctor Decl. Exh. 25.

1   SKUs for the Spring season alone.[28] 

2

3

4

5   [29]

6       Since filing its motion for leave to file the TAAC, Mattel has also received -- but

7   only after multiple motions to compel, multiple Orders from the Discovery Master and,

8   in some instances, motions to enforce compliance with the Discovery Master's Orders --

9   discovery from Omni 808 and the IGWT entities.[30]   Though far from complete, the

10  discovery produced by Omni 808 and the IGWT entities has confirmed the central role

11  played by Neil Kadisha, the purported CEO of Omni 808, and of Omni 808 and the

12  IGWT entities in the financial manipulations at the heart of many of the new claims and

13  allegations in the TAAC.[31]

14      ***Mattel's Proposed Fourth Amended Answer and Counterclaims.***  Mattel seeks

15  to amend its pleading, including based on new information learned since its last motion

16  for leave, to add a breach of constructive trust claim to hold the MGA Parties'

17  accountable for their failure to preserve and protect the Bratz assets held in constructive

18  trust for Mattel.  Mattel also seeks to add four new defendants -- Omni 808, Neil

19

20

21  [28]   See Supplemental Declaration of Michael T. Zeller In Support Of Mattel's Objections and Response to Submission of Letter from Sears Holding, dated June 8, 2009, at ¶¶ 5-8, Proctor Decl. Exh. 25; see also MGA Spring 2007 Price List, Proctor Decl. Exh. 26; MGA Fall 2007 Price List, Proctor Decl. Exh. 27; MGA Spring 2008 Price List, Proctor Decl. Exh. 28.

23  [29]   See MGA's 2009 P&L Forecast, Proctor Decl. Exh. 29; see also email correspondence, Bates numbered IGWT93137-39, Proctor Decl. Exh. 30 (indicating MGA's repurchase of obsolete inventory from IGWT to sell to Wal-Mart in 2009).

25  [30]   See, e.g., Phase 2 Discovery Matter Order No. 3, dated March 10, 2009, Proctor Decl. Exh. 31; Phase 2 Discovery Matter Order No. 21, dated April 23, 2009, Proctor Decl. Exh. 32; Phase 2 Discovery Matter Order No. 27, dated May 6, 2009, Proctor Decl. Exh. 33; see also Proctor Decl. at ¶ 60.

27  [31]   See, e.g. ███████████████████ Proctor Decl. Exh. 34; ████████████████ Proctor Decl. Exh. 35; ████████████████████, Bates numbered OMNI0007355,

28  (footnote continued)

1  Kadisha, IGWT Group and IGWT 826 Investments -- in place of  current Doe

2  defendants in connection with the RICO and fraudulent transfer claims set forth in the

3  TAAC.  Mattel also seeks to clarify its existing RICO claims and the relationship

4  among the RICO enterprises by identifying by name an additional RICO enterprise that

5  subsumes three previously alleged RICO enterprises.  In the TAAC, the three alleged

6  enterprises are alleged to share a common purpose; this amendment will make clear that

7  they also, collectively, comprise a criminal enterprise.

8                                              **Argument**

9  I.      **MATTEL   SHOULD   BE   PERMITTED   TO   AMEND   ITS**

10        **COUNTERCLAIMS UNDER RULE 15(A)**

11        A.    **Rule 15(a) Requires the Liberal Granting of Motions for Leave to**

12              **Amend Pleadings**

13        Rule 15(a) of the Federal Rules of Civil Procedure mandates that leave to amend

14  "shall be freely given when justice so requires" and "its policy of favoring amendments

15  to pleadings should be applied with extreme liberality."  DCD Programs, Ltd. v.

16  Leighton, 833 F.2d 183, 186 (9th Cir. 1987) (citation and internal quotation omitted);

17  see also Beery v. Hitachi Home Elecs. (Am.), Inc., 157 F.R.D. 481, 482 (C.D. Cal.

18  1994) ("Federal policy strongly favors determination of cases on their merits.");

19  Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003) (same).

20  "This liberality in granting leave to amend is not dependent on whether the amendment

21  will add causes of action or parties."  DCD Programs, 833 F.2d at 186.

22        "Four factors are commonly used to determine the propriety of a motion for leave

23  to amend.  These are: bad faith, undue delay, prejudice to the opposing party, and

24  futility of amendment."  Id.; see also Foman v. Davis, 371 U.S. 178, 182 (1962).  These

25  factors, however, do not carry equal weight.  DCD Programs, 833 F.2d at 186.  Delay

26

27  —————————————————

28  Proctor Decl. Exh. 36; email correspondence between Larian, Kadisha, A. Stern, and B. Wing, dated February 13, 2009, Bates numbered OMNI0002515, Proctor Decl. Exh. 37.

1  alone is "insufficient to justify denial of leave to amend." <u>Id.</u>, at 186; <u>see also</u>

2  <u>Eminence Capital</u>, 316 F.3d at 1052.  The absence of unfair prejudice is a strong factor

3  supporting amendment and the party opposing the amendment bears the burden of

4  showing prejudice. <u>DCD Programs</u>, 833 F.2d at 187; <u>see also</u> <u>Eminence Capital</u>, 316

5  F.3d at 1052 (absent prejudice or strong showing of other factors "there exists a

6  *presumption* under <u>Rule</u> 15(a) in favor of granting leave to amend") (emphasis in

7  original).   Here, no unfair prejudice can be shown, and the remaining factors also

8  support amendment.

9      **B.**   **<u>Defendants Will Not Be Unfairly Prejudiced By Mattel's Proposed</u>**

10         **<u>Amendments</u>**

11      Prejudice is the "touchstone" of the amendment analysis. <u>Eminence Capital</u>, 316

12  F.3d at 1052.   Absent a showing of prejudice, there is a presumption in favor of

13  granting leave to amend. <u>DCD Programs</u>, 833 F.2d at 187 ("The party opposing the

14  amendment bears the burden of showing prejudice."); <u>see also</u> <u>F.D.I.C. v. Jackson-</u>

15  <u>Shaw Partners No. 46, Ltd.</u>, 1994 WL 669879, at *6 (N.D. Cal. Nov. 18, 1994) (in the

16  absence of prejudice, "leave to amend should be freely given").

17      The MGA parties cannot credibly claim unfair prejudice arising from the

18  amendment to add Omni 808, Kadisha and the IGWT entities as defendants in this

19  lawsuit.   The claims and allegations against them are already squarely at issue in the

20  TAAC, each of them is already specifically identified in the TAAC as a key participant

21  in connection with those claims and allegations.[32]   In fact, each is already expressly

22  named as a member of the RICO enterprises and conspiracies at issue in this case, and

23  Omni 808 itself already chose to intervene in this litigation to oppose receivership.[33]

24

25

---

26    [32]   <u>See</u> TAAC at ¶¶ 108-118, 124-126, 136, 138, 222, Proctor Decl. Exh. 21.

27    [33]   <u>Id.</u> at ¶¶ 136, 138; <u>see also</u> Omni 808's *Ex Parte* Application For Leave to Intervene, dated February 3, 2009, Proctor Decl. Exh. 38; <u>see also</u> April 27, 2009 Order, at 13-15,

28  Proctor Decl. Exh. 39.

MOTION FOR LEAVE TO FILE FOURTH AMENDED ANSWER AND COUNTERCLAIMS

The IGWT entities are also already alleged to be alter egos of Larian, an existing party to the case.[34]

Even before the filing of the TAAC, the MGA parties were on notice of the underlying financial transactions at issue and the four new defendants' role in them. See Sierra Club v. Union Oil Co. of California, 813 F.2d 1480, 1493 (9th Cir. 1987), rev'd on other grounds, 485 U.S. 931 (1988) ("[W]here a defendant is on notice of the facts contained in an amendment to a complaint, there is no serious prejudice to defendant in allowing the amendment."). As set forth in Mattel's motion for leave to file the TAAC, Mattel raised the transactions involving the Omni parties and the IGWT entities as soon as it learned about them through its own investigation in December 2008, despite MGA and Larian's concealment of them.[35]  And, even before Mattel raised these transactions, MGA and Larian were fully aware of them.[36]  Indeed, as the Discovery Master has already found, the IGWT entities are "single purpose entities

---

[34]  See TACC at ¶¶ 112, 117. The new defendants themselves also have no right to oppose this motion, not yet being parties to the case either at all or, in the case of Omni 808, only for a limited purpose that is not applicable here. See, e.g., State Farm Mut. Auto. Ins. Co. v. CPT Medical Servs., P.C., 246 F.R.D. 143, 146 n.1 (E.D.N.Y. 2007) (proposed new defendants who joined in defendants' opposition to motion for leave to amend "do not have standing to oppose the motion for leave to amend because they are not yet named parties to this action"); Am. Society For The Prevention of Cruelty To Animals v. Ringling Bros. and Barnum & Bailey Circus, 244 F.R.D. 49, 53-54 (D.D.C. 2007) (granting plaintiff's motion to strike non-party's response to motion for leave to amend due to lack of standing because non-party "is not a party to this case nor has it sought leave to intervene and the Court therefore did not consider its response"); Dungan v. Academy at Ivy Ridge, 2009 WL 2176278, at *2 (N.D.N.Y. July 21, 2009) (same); Vasquez v. Summit Women's Ctr., Inc., 2001 WL 34150397, at *1 n.1 (D. Conn. Nov. 16, 2001) (same).

[35]  See Mattel, Inc.'s Notice of Motion and Motion for Leave to File Third Amended Answer and Counterclaims, dated April 8, 2009, Proctor Decl. Exh. 40.

[36]  In Sierra Club, 813 F.2d at 1492-93, the Ninth Circuit found that there could be no prejudice because the defendants had been put on notice by "their own records" of the events in question.  The plaintiff in that case sought leave to amend to add new claims that it had learned of through its discovery efforts, despite the defendant's concealment. Id. at 1485-86. As in Sierra Club, MGA's and Larian's own involvement in and records regarding the financial transactions at issue have provided them with ample notice regarding the transactions involving the Omni parties, including Kadisha, and the IGWT entities long ago. Accordingly, even if Mattel had not repeatedly brought its new findings to the attention of MGA, MGA could not demonstrate prejudice.

MOTION FOR LEAVE TO FILE FOURTH AMENDED ANSWER AND COUNTERCLAIMS

1 created and controlled by Larian."[37]  That single purpose was to carry out transactions

2 now at issue.  Likewise, Omni 808 is a single purpose entity created during the Phase 1

3 trial that Larian and co-conspirators have used to carry out one of those same

4 transactions -- the purported acquisition of a substantial portion of the more than $300

5 million in secured debt MGA owed to Wachovia Bank at a significant discount.[38]

6      Nor are the proposed new defendants strangers to this litigation.  Omni 808

7 moved *ex parte* for leave to intervene to oppose receivership on February 3, 2009,[39] and

8 the Court granted its application in part on April 27, 2009.[40]  Mattel sought to take

9 discovery from each of them as soon as the Phase 2 discovery stay was lifted.  Each has

10 been served with various discovery requests, each is the has been involved in multiple

11 discovery disputes and each has been ordered, repeatedly, to produce discovery.[41]  Most

12 recently, Kadisha was ordered -- for a second time -- to sit for deposition.[42]  Omni 808,

13 Kadisha and the IGWT entities will continue to be players in this lawsuit whether or not

14 they are named as defendants.

15      Courts routinely allow parties to be added pursuant to a Rule 15(a) motion.  See,

16 e.g., Washington ex rel. Raya v. Taser Int'l, Inc., 2007 WL 4098829, at *1 (E.D. Cal.

17

18

---

19   [37]  Phase 2 Discovery Matter Order No. 11, dated March 10, 2009, at 26, Proctor Decl. Exh. 41; see also Phase 2 Discovery Matter Order No. 27, dated May 6, 2009, at 7, Proctor

20 Decl. Exh. 33 (recognizing that IGWT 826 was used by Larian as a vehicle to fund Omni 808's acquisition of the Wachovia debt).  Indeed, IGWT Group's registered place of business

21 is Larian's home address and IGWT 826's is registered at the home of Larian's sister, Shirin Makabi.  See IGWT Group registration information, Proctor Decl. Exh. 42; see also IGWT

22 826 Investments, LLC, registration information, Proctor Decl. Exh. 43.

  [38]  See Omni 808 Investors, LLC's Certificate of Status and Articles of Organization,

23 Proctor Decl. Exh. 44; see also TAAC at ¶¶113-121, Proctor Decl. Exh. 21.

  [39]  See Omni 808's *Ex Parte* Application For Leave to Intervene, dated February 3, 2009,

24 Proctor Decl. Exh. 38; see also April 27, 2009 Order, at 13-15, Proctor Decl. Exh. 39.

  [40]  Id. at 14 (granting intervention to the extent it seeks to intervention to address the

25 potential receivership issues").

  [41]  See, e.g., Phase 2 Discovery Matter Order No. 3, dated March 10, 2009, Proctor Decl.

26 Exh. 31; Phase 2 Discovery Matter Order No. 21, dated April 23, 2009, Proctor Decl. Exh. 32;

27 Phase 2 Discovery Matter Order No. 27, dated May 6, 2009, Proctor Decl. Exh. 33; Phase 2 Discovery Matter Order No. 33, dated May 18, 2009, Proctor Decl. Exh. 45; Phase 2

28 Discovery Matter Order No. 43, dated July 30, 2009, Proctor Decl. Exh. 46.

1   Nov. 16, 2007) (granting motion for leave to amend complaint to add "five new

2   defendants and several new causes of action against these defendants"); F.D.I.C. v.

3   Jackson-Shaw Partners No.46, Ltd., 1994 WL 669879, at *5-6 (N.D. Cal. Nov. 18,

4   1994) (granting motion to add as a defendant opposing party's corporate parent, which

5   movant alleged was an "alter ego" of non-movant); DCD Programs, 833 F.2d 183

6   (granting motion to add defendant).  Mattel should be permitted to add Omni 808,

7   Kadisha and the IGWT entities as defendants here.

8       Nor can the MGA parties show prejudice from the amendment to add a specific

9   claim based on their failure to preserve and protect the Bratz assets they hold in

10  constructive trust for Mattel.  The recent and substantial decreases in Bratz sales, and

11  MGA's failure to develop a full 2009 Bratz line notwithstanding its representations to

12  the Court, as well as Mattel's position that leaving Bratz in MGA's hands is causing the

13  brand to be destroyed, have all been at issue at least since MGA first sought a stay of

14  the Court's injunctive orders in December 2008.  In May 2009, Mattel sought discovery

15  from MGA regarding its 2009 Bratz line, stating that it had "███████████████

16  ████████████████████████████████████████████████████████████

17  ████████████████"[43]  After Mattel finally received evidence to confirm what it

18  suspected, it made sure to put MGA on notice.[44]

19      Moreover, MGA's destruction of Bratz is already a part of this case.  Mattel is

20  entitled to damages on its RICO claims, among others.  One way that Mattel has been

21  damaged by MGA's and Larian's misconduct is by their wrongful acts which had the

22

23

24  [42]  See Phase 2 Discovery Matter Order No. 33, dated May 18, 2009, at 59, Proctor Decl.
    Exh. 45; see also Phase 2 Discovery Matter Order No. 43, dated July 30, 2009, Proctor Decl.
25  Exh. 46.
    [43]  Mattel, Inc.'s Corrected Ex Parte Application for Disclosure of MGA 2009 Product
26  Line Information in Advance of May 18, 2009 Hearing on MGA's Ex Parte Application for
    Stay, dated May 11, 2009, Proctor Decl. Exh. 47.
27  [44]  See Mattel's Inc.'s First Supplemental Objections and Responses to Interrogatory Nos.
    20-23 and 28 In MGA's Second Set of Interrogatories at Second Supplemental Response To
28  Interrogatory No. 22, dated at July 31, 2009, Proctor Decl. Exh. 48.

1 purpose and effect of ensuring that if MGA could not continue to profit from Mattel's

2 property, then the property would have no value by the time they returned it to Mattel.

3 Existing contention interrogatory responses make clear that defendants' failure to

4 preserve and protect Bratz is very much at issue already.[45]

5      Finally, Mattel's amendment to clarify the relationship of the RICO enterprises

6 and to name additional conspirators will have no practical effect on the scope or nature

7 of the litigation.  Mattel's RICO claims are already broad, as MGA has repeatedly

8 pointed out;[46] the amendments are intended to clarify the roles and relationships among

9 the enterprises and enterprise members as discovery provides such detail.  Naming

10 additional conspirators who have already been identified by name and clarifying the

11 relationship between the enterprises will cause the MGA parties no prejudice.

12     **C.   Mattel Has Timely Sought To Amend Its Complaint**

13      The MGA parties cannot credibly complain that Mattel unduly delayed in

14 seeking to add Omni 808, Kadisha and the IGWT entities as defendants.  As the Court

15 knows, the MGA parties sought to conceal the existence and true nature of the Omni

16 and IGWT transactions from the start.  For example, in connection with applications for

17 a stay of the December 3, 2008 injunctive Orders, MGA represented to this Court and

18 to the Ninth Circuit that, as a result of this case, it had been unable to obtain credit.[47]

19 After Mattel brought the Omni 808 transaction to the Court's attention (the MGA

20 parties never disclosed it), and contrary to MGA's earlier, sworn representations, ▮▮▮▮

21 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[48] Additional

22 evidence uncovered by Mattel showed that MGA's transactions with Omni 808 and

23

24

---

25    [45]  <u>Id.</u>

26    [46]  <u>See</u> MGA's Opposition to Mattel's Motion for Leave to File TAAC, dated April 27, 2009, at 1, 7, Proctor Decl. Exh. 49; <u>see also</u> May 18 Hearing Tr. at 21:25-22:18, Proctor Decl. Exh. 50.

27    [47]  <u>See</u> Declaration of Brian Wing in Support of the MGA Parties' Request for a Stay, dated December 11, 2008, at ¶ 13, Proctor Decl. Exh. 15.

28

1  other transactions involving Vision Capital, LLC and Lexington Financial Limited

2  appeared to be related-party transactions structured to conceal the ultimate source of the

3  funds.  Despite this evidence, the Omni parties' counsel flatly represented to the Court

4  and to the Discovery Master -- without contradiction or correction by counsel for MGA

5  and Larian -- that the Omni Parties' purported acquisition of MGA's debt was an "arm's

6  length transaction" for which Larian and MGA provided <u>no</u> funding and in which they

7  had no interest.[49]

8        Two days after the Phase 2 stay was lifted, Mattel propounded Requests to both

9  MGA and Larian seeking information related to the financial transactions.[50]  MGA and

10  Larian objected to each and every Request, and refused to produce any documents in

11  response.[51]  When Mattel sought to obtain discovery from the Omni parties, MGA and

12  Larian repeatedly represented to the Discovery Master that Mattel could get all the

13  documents relating to the financial transactions from them instead.[52]  Despite those

14  representations, MGA and Larian still have not produced a single page of such

15  documents to date.  Ultimately, Mattel was forced to file a motion to compel, which is

16  pending.[53]

17

18

---

19  [48]  MGA Parties' Corrections to the Opposition to Mattel, Inc.'s *Ex Parte* Application for Appointment of a Receiver or for Alternative Relief, dated December 31, 2008, at 1-2, Proctor

20  Decl. Exh. 51.
    [49]  February 11, 2009 Hearing Tr. at 78:15-25, Proctor Decl. Exh. 52; March 4, 2009

21  Discovery Master Hearing Tr. 51:3-8, Proctor Decl. Exh. 53.
    [50]  See Mattel, Inc.'s First Set of Requests for Document and Things to Isaac Larian

22  (Phase 2), dated January 7, 2009, Proctor Decl. Exh. 54; Mattel, Inc.'s First Set of Requests for Document and Things to MGA Entertainment, Inc. (Phase 2), dated January 7, 2009, Proctor

23  Decl. Exh. 55.
    [51]  See, e.g., Responses to Requests for Documents and Things to MGA Entertainment,

24  Inc. (Phase 2), dated February 6, 2009, at Request Nos. 17 (documents relating to any transfer of items of value to IGWT Group, LLC); 27 (documents relating to agreements between MGA

25  and Vision Capital); 28-30 (documents sufficient to identify owners of IGWT Parties and Omni), Proctor Decl. Exh. 56.

26  [52]  March 4, 2009 Hearing Tr. at 84:6-7, Proctor Decl. Exh. 53.
    [53]  See Mattel, Inc.'s Motion to Compel MGA Entertainment Inc. and Isaac Larian to

27  Produce Documents Responsive to Mattel's First Sets of Requests for Documents (Phase 2), dated July 23, 2009, Proctor Decl. Exh. 57.

28

1         The Larian-controlled Omni parties and IGWT entities have also resisted
2  discovery at every turn.  The Discovery Master initially denied Mattel's motion to
3  compel any meaningful discovery from the Omni parties based primarily on the
4  misrepresentation that the acquisition of the Wachovia debt was arm's length and that
5  Larian had provided no funding at all for that transaction.[54]  When Mattel presented
6  evidence produced by Wachovia (not MGA, Larian or Omni, who all refused
7  discovery) showing that the transaction was not arm's length, the Discovery Master
8  ordered additional discovery.[55]  But even when ordered to produced discovery, the
9  Omni parties have not complied.  It took an application for an order to show cause and
10  a second Order compelling production before they produced a single document in
11  response to Mattel's discovery requests.[56]  Indeed, the Omni parties and the IGWT
12  entities did not produce any discovery to Mattel until **after** Mattel filed its motion for
13  leave to file the TAAC.[57]  Even to this day, the Omni parties and the IGWT entities
14  have not provided all of the discovery to which Mattel is entitled.  Kadisha still has not
15  sat for deposition despite two orders compelling him to do so and other discovery
16  disputes are still pending.[58]

17         Mattel did not unduly delay in seeking leave to file the TAAC to include claims
18  and allegations based on the Omni and IGWT transactions.  It has been less than three
19  months since Mattel filed the TAAC.  There is nothing that amounts to undue delay in
20  seeking to add Omni 808, Kadisha and the IGWT entities as defendants in connection
21  with those claims and allegations when they themselves resisted and avoided providing

22

23  [54] See Phase 2 Discovery Matter Order No. 3, dated March 10, 2009, Proctor Decl. Exh.
24  31.
   [55] See Phase 2 Discovery Matter Order No. 27, dated May 6, 2009, Proctor Decl. Exh. 33.
25  [56] See Phase 2 Discovery Matter Order No. 21, dated April 23, 2009, Proctor Decl. Exh.
26  32.
   [57] See Proctor Decl. at ¶ 60.
27  [58] See Phase 2 Discovery Matter Order No. 33, dated May 18, 2009, Proctor Decl. Exh.
   45; see also Phase 2 Discovery Matter Order No. 43, dated July 30, 2009, Proctor Decl. Exh.
28  46.

1  any discovery until after Mattel filed its motion for leave to file the TAAC and the
2  MGA parties still have not produced any discovery regarding the transactions at issue.

3      Likewise, the MGA parties have sought to conceal their efforts to destroy the
4  value of the Bratz assets by, among other things, ███████████████████████
5  ████████████████████████████████████████████████████████████
6  ████████████████████████████████████████████████████████████
7  ██; after it filed the TAAC less than three months ago, Mattel obtained evidence
8  showing that MGA in fact was not attempting meaningfully market and sell a
9  successful 2009 Bratz line.[59] There has been no undue delay.

10     In any case, even where (unlike here) undue delay exists, "delay, by itself, is
11  insufficient to justify denial of leave to amend." DCD Programs, 833 F.2d at 186
12  (citing U.S. v. Webb, 655 F.2d 977, 980 (9th Cir. 1981) ("[D]elay alone no matter how
13  lengthy is an insufficient ground for denial of leave to amend."); Islamic Republic of
14  Iran v. The Boeing Co., 771 F.2d 1279, 1287 (9th Cir. 1985) (two year delay between
15  discovery of the counterclaims and moving to amend did not, by itself, necessitate
16  denial of leave to amend); Howey v. United States, 481 F.2d 1187, 1191 (9th Cir. 1973)
17  ("Only where prejudice is shown or the movant acts in bad faith are courts protecting
18  the judicial system or other litigants when they deny leave to amend a pleading.").

19     **D.     Mattel Seeks To Amend The Complaint In Good Faith**

20     The "bad faith" that courts consider when evaluating Rule 15(a) motions is
21  "understood to mean such tactics as, for example, seeking to add a defendant merely to
22  destroy diversity jurisdiction." SAES Getters, S.p.A. v. Aeronex, Inc., 219 F. Supp. 2d
23  1081, 1086 (S.D. Cal. 2002). Here, there is no question that Mattel's motion is not in
24  bad faith. The proposed Fourth Amended Answer and Counterclaims will not alter the
25  Court's jurisdiction, and there is no basis for any assertion that Mattel's motive is
26  anything other than to obtain the relief to which it believes it is entitled. If Mattel is not

27

28

1   permitted to amend the pleadings to add the new claims and parties, it will be forced to
2   commence a new proceeding.  That would entail needless duplication of effort, would
3   be wasteful of judicial and party resources and could give rise to potentially conflicting
4   judgments.  All of this weighs in favor of granting leave to amend.[60]

5   **E.   Mattel's Amendment Is Not Futile**

6       The standard for denying a motion for leave to amend based upon futility is
7   exceedingly high.  Ninth Circuit law dictates that "a proposed amendment is futile only
8   if *no* set of facts can be proved under the amendment to the pleadings that would
9   constitute a valid and sufficient claim or defense."  Miller v. Rykoff-Sexton, Inc., 845
10  F.2d 209, 214 (9th Cir. 1988) (reversing denial of leave to amend answer) (emphasis
11  added).   As the Supreme Court stated in Foman, "[i]f the underlying facts or
12  circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to
13  be afforded an opportunity to test his claims on the merits."   371 U.S. at 182.
14  Defendants cannot demonstrate that Mattel's proposed amendment is futile as a matter
15  of law.  There is no basis to deny leave to amend.

16
17
18
19
20
21
22
23

[59]   See May 26, 2009 letter from J. Russell to M. Zeller, Proctor Decl. Exh. 22; see also 2009 Price List, Proctor Decl. Exh. 23.
[60]   Judicial economy considerations also justify allowing the proposed amendments. See January 11, 2007 Order, at 19 (citing Sierra Club, 813 F.2d 1480, 1493 ("General considerations of judicial economy also justify allowing the amendments.  The violations included in the proposed amendment relate to the same subject matter as the original complaint.  Allowing the amendment will further the federal policy of wrapping in one bundle all matters concerning the same subject matter.")).

1

## Conclusion

2     For the reasons set forth above, Mattel respectfully requests that the Court grant

3  it leave to file its Fourth Amended Answer and Counterclaims.

4

5  DATED:  August 17, 2009          QUINN EMANUEL URQUHART OLIVER &
                                    HEDGES, LLP
6

7                                   By  *Michael T. Zeller* VAL
                                    _____
8                                       Michael T. Zeller
                                        Attorneys for Mattel, Inc.
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28