# EXHIBIT 32

1   Robert C. O'Brien (SBN 154372)
    ARENT FOX LLP
2   555 West Fifth Street, 48th Floor
    Los Angeles, CA 90013-1065
3   Telephone: 213.629.7400
    Facsimile: 213.629.7401
4   obrien.robert@arentfox.com

5   Discovery Master

6

7

8                   UNITED STATES DISTRICT COURT

9               CENTRAL DISTRICT OF CALIFORNIA

10                       EASTERN DIVISION

11

| | |
|---|---|
| 12   CARTER BRYANT, an individual, | Case No. CV 04-09049 SGL (RNBx) |
| 13             Plaintiff, | |
| 14             v. | Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-2727 |
| 15   MATTEL, INC., a Delaware<br>corporation, | **PHASE 2 DISCOVERY MATTER** |
| 16             Defendant. | **ORDER NO. 21, REGARDING:** |
| 17 | **EX PARTE APPLICATION OF**<br>**MATTEL FOR OSC RE: OMNI** |
| 18 | **808's FAILURE TO COMPLY**<br>**WITH COURT ORDER** |
| 19 | |
| 20 | |
| 21   CONSOLIDATED WITH<br>MATTEL, INC. v. BRYANT and | |
| 22   MGA ENTERTAINMENT, INC. v.<br>MATTEL, INC. | |
| 23 | |

24

25

26

27

28

ORDER NO. 21
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____ 32 _____

PAGE _____ 152 _____

1    The Discovery Master, having been notified of the Court's decision to refer

2  to the Discovery Master for initial disposition Mattel's *ex parte* application for an

3  Order to Show Cause re: the alleged failure of Omni 808 Investors, LLC ("Omni

4  808") to comply with the Discovery Master's March 10, 2009 Order (the "March

5  10 Order") or, alternatively, for an Order shortening time to hear a motion for such

6  relief (the "Application"), and having reviewed the Opposition filed by Omni 808

7  and supporting papers, hereby **ORDERS** as follows:

8         1.    Omni 808 shall produce to Mattel all documents ordered to be

9  produced pursuant to the March 10 Order no later than 5:00 p.m. on April 28, 2009

10  and shall simultaneously serve on the Discovery Master a notice confirming Omni

11  808's compliance.

12        2.    In the event Omni 808 fails to comply in any respect with the

13  provisions of Paragraph 1, above, the Discovery Master shall refer this matter to the

14  Court for further action, and reserves the right to recommend to the Court that the

15  relief requested by Mattel in the Application be granted, in whole or in part.

16        3.    By way of guidance to the parties, and to reduce the likelihood of

17  unnecessary and costly motion practice, the Discovery Master reminds the parties

18  that, until and unless a deadline or other requirement imposed by the Discovery

19  Master is expressly modified by written Order, the parties shall timely comply with

20  all Orders issued by the Discovery Master, including the deadlines by which parties

21  are required to provide supplemental responses or produce documents.

22

23  Dated:      April 23, 2009

24

25                              By:      /s/ Robert C. O'Brien

26                                       ROBERT C. O'BRIEN
                                         Discovery Master

27

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 1 -                          ORDER NO. 21
                              [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____ **32**

PAGE _____ **153**

# EXHIBIT 33

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 34

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 35

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 36

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 37

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 38

1   Bingham McCutchen LLP
    TODD E. GORDINIER (SBN 82200)
2   todd.gordinier@bingham.com
    PETER N. VILLAR (SBN 204038)
3   peter.villar@bingham.com
    JENNIFER A. LOPEZ (SBN 232320)
4   jennifer.lopez@bingham.com
    600 Anton Boulevard
5   18th Floor
    Costa Mesa, CA  92626-1924
6   Telephone:  714.830.0600
    Facsimile:  714.830.0700
7
8   Attorneys for Non-party
    OMNI 808 INVESTORS, LLC
9
10              UNITED STATES DISTRICT COURT
11              CENTRAL DISTRICT OF CALIFORNIA
12                    EASTERN DIVISION
13

| | |
|---|---|
| 14  Carter Bryant, an individual, | Case No. CV 04-9049 SGL (RNBx) |
| 15          Plaintiff, | **OMNI 808 INVESTORS, LLC'S *EX PARTE* APPLICATION FOR LEAVE TO INTERVENE FOR LIMITED PURPOSE AS A MATTER OF RIGHT OR, IN THE ALTERNATIVE, FOR PERMISSIVE INTERVENTION** |
| 16            v. | |
| 17  Mattel, Inc., a Delaware Corporation, | |
| 18          Defendant. | |
| 19 | Judge:  Hon. Stephen G. Larson |
| 20 | |
| 21  AND CONSOLIDATED ACTIONS | |

22
23
24
25
26
27
28

                          2-3-09

A/72829697.5/3009108-0000335082        EXHIBIT ___38___

                                       PAGE ___839___

1       Omni 808 Investors, LLC ("Omni") hereby applies *ex parte* pursuant to Rule

2   24(a) or, in the alternative, Rule 24(b) of the Federal Rules of Civil Procedure and

3   Local Rule 7-19, for an order authorizing it to intervene for the limited purpose of

4   responding to Mattel, Inc.'s ("Mattel") *Ex Parte* Application for Appointment of a

5   Receiver for MGA Entertainment, Inc. ("MGA") and all other issues related to

6   Omni's status as a secured creditor of MGA.

7       Omni makes this application on the grounds that Mattel's request for the

8   appointment of a receiver at MGA may have an immediate and irreparable adverse

9   impact on Omni, MGA's largest secured creditor.  Omni satisfies all of the

10   requirements to intervene as a matter of right:  the application is timely; Omni has

11   a significantly protectable interest relating to the property or transaction involved

12   in the pending lawsuit; disposition of the lawsuit may adversely affect Omni's

13   interest unless intervention is allowed; and the existing parties do not adequately

14   represent Omni's interest.  In the alternative, the Court should exercise its

15   discretion to grant permissive intervention because Omni has a claim that shares a

16   common question of law or fact with the main action.

17       Good cause exists to seek this relief on an *ex parte* basis because Mattel has

18   made its request for the appointment of a receiver on an *ex parte* basis.  If the

19   Court appoints a receiver, Omni may suffer irreparable harm.

20       Pursuant to Local Rule 7-19, on February 2, 2009, Omni's counsel gave

21   notice of this *ex parte* application and the relief being sought to counsel for MGA,

22   Robert Herrington of Skadden, Arps, Slate, Meagher & Flom LLP (telephone: 213-

23   687-5000; address: 300 South Grand Avenue, Suite 3400, Los Angeles, California

24   90071) and counsel for Mattel, Jon Corey of Quinn Emanuel Urquhart Oliver &

25   Hedges, LLP (telephone: 213-443-3000; address: 865 South Figueroa Street, 10th

26   Floor, Los Angeles, California 90017-2543).  Counsel for MGA stated that MGA

27   will not oppose this application.  Counsel for Mattel stated that Mattel will oppose

28

- 1 -

EXHIBIT ___**38**___

PAGE ___**840**___

1   this application because it is Mattel's view that MGA as debtor can adequately

2   protect the interests of its largest secured creditor.  Omni disagrees.

3          This application is based on this Notice of *Ex Parte* Application, the

4   accompanying Memorandum of Points and Authorities, the records and files of this

5   Court, including without limitation the Phase 1 trial record, and all other matters of

6   which the Court may take judicial notice.

7

8   DATED:  February 3, 2009          Bingham McCutchen LLP

9

10

11                                     By: _____
                                            Todd E. Gordinier
12                                          Attorneys for Non-party
                                            Omni 808 Investors, LLC

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 2 -

A/72829697.5/3009108-0000335082

EXHIBIT    *38*

PAGE    841

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ................................................................. 1

II.  STATEMENT OF FACTS ...................................................... 3

III. LEGAL ARGUMENT .......................................................... 6

   A.   Omni is Entitled to Intervene as a Matter of Right for the
        Limited Purpose of Protecting Omni's Status as a Secured
        Creditor ................................................................... 6

        1.   Omni's Application Is Timely. ............................... 7

        2.   Omni Has a Significantly Protectable Interest in the
             Receivership Issues Involved in the Pending Litigation. .......... 7

        3.   The Appointment of a Receiver May Impair or Impede
             Omni's Ability to Protect Its Interests. ....................... 8

        4.   The Existing Parties May Not Adequately Represent
             Omni's Interest. ........................................... 9

   B.   In the Alternative, This Court Should Grant Omni Permissive
        Intervention ........................................................ 10

IV.  CONCLUSION ................................................................ 11

-i-

A/72829697.5/3009108-0000335082

EXHIBIT 38

PAGE 842

# TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*Arakaki v. Cayetano,*
  324 F.3d 1078 (9th Cir. 2003)................................................................6, 9

*Beckman Indus. Inc. v. International Ins. Co.,*
  966 F.2d 470 (9th Cir. 1992).....................................................................6

*Commerz Union Austalt v. Collectors' Guild, Ltd.,*
  792 F. Supp. 870 (S.D.N.Y. 1991).............................................................8

*DeBoer Structures, Inc. v. Shaffer Tent & Awning Co.,*
  187 F. Supp. 910 (S.D. Ohio 2001)............................................................9

*Donnelly v. Glickman,*
  159 F.3d 405 (9th Cir. 1998).....................................................................6

*Engra, Inc. v. Gabel,*
  958 F.2d 643 (5th Cir. 1992).....................................................................7

*Forest Conservation Council v. United States Forest Serv.,*
  66 F.3d 1489 (9th Cir. 1995).....................................................................7

*Kootenai Tribe v. Veneman,*
  313 F.3d 1094 (9th Cir. 2002)..................................................................10

*League of United Latin American Citizens v. Wilson,*
  131 F.3d 1297 (9th Cir. 1997)....................................................................6

*Lockyer v. U.S.,*
  450 F.3d 436 (9th Cir. 2006).....................................................................6

*Meyer Jewelry Co. v. Meyer Holdings, Inc.,*
  906 F. Supp. 428 (E.D. Mich. 1995)..........................................................9

*Mountain Top Condominium v. Dave Stabbert Master Builder,*
  72 F.3d 361 (3rd Cir. 1995).......................................................................8

*NL Indus. v. Secretary of Interior,*
  777 F.2d 433 (9th Cir. 1985).....................................................................8

-ii-

EXHIBIT _____ **38**

PAGE _____ **843**

*Reich v. ABC/York-Estes Corp.,*
   64 F.3d 316 (7th Cir. 1995)................................................................................3

*Rumbaugh v. Beck,*
   491 F. Supp. 511 (E.D. Pa. 1980).......................................................................9

*Saluck v. Rosner,*
   1999 WL 46620 (E.D. Pa. Jan. 6, 1999).............................................................9

*San Juan County v. U.S.,*
   503 F.3d 1163 (10th Cir. 2007)...........................................................................7

*SEC v. Flight Transp. Corp.,*
   699 F.2d 943 (8th Cir. 1983)...............................................................................8

*Sierra Club v. EPA,*
   995 F.2d 1478 (9th Cir. 1993).............................................................................8

*Southwest Center for Biological Diversity v. Berg,*
   268 F.3d 810 (9th Cir. 2001)..........................................................................3, 7

*Stringfellow v. Concerned Neighbors in Action,*
   480 U.S. 370 (1987) ............................................................................................6

*Trbovich v. United Mine Workers,*
   404 U.S. 528 (1972) ............................................................................................9

*U.S. v. South Florida Water Dist.,*
   922 F.2d 704 (11th Cir. 1991)............................................................................7

*United States v. State of Washington,*
   86 F.3d 1499 (9th Cir. 1996)..............................................................................7

*Venegas v. Skaggs,*
   867 F.2d 527 (9th Cir. 1989)............................................................................11

*Yniguez v. Arizona,*
   939 F.2d 727 (9th Cir. 1991)..............................................................................8

RULES

Fed. R. Civ. P. 24(a) ...............................................................................................6

Federal Rule of Civil Procedure 24(b)(2)...............................................................10

-iii-

EXHIBIT ____38____

PAGE ____844____

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2  **I.    INTRODUCTION**

3         Non-party Omni 808 Investors, LLC ("Omni") is the largest secured creditor

4  of MGA Entertainment, Inc. ("MGA"). Omni recently was served with a sweeping

5  subpoena from Mattel, Inc. ("Mattel") in connection with this litigation requesting

6  the production of documents relating to Omni's formation, governance, finances,

7  business relationships and transactions. Mattel's papers in support of its request to

8  have the Court appoint a receiver to "oversee and control all business and financial

9  aspects" of MGA mischaracterize Omni, its principals and the transaction Mattel

10 purports to describe to this Court. Because the appointment of a receiver could

11 significantly and irreparably harm Omni's interests as a senior secured creditor of

12 MGA, Omni hereby seeks leave of Court to intervene in this action for this limited

13 purpose.

14        Mattel's *ex parte* application is replete with false and misleading

15 representations and demonstrates Mattel's profound misunderstanding, *inter alia*,

16 of Omni and the circumstances surrounding its recent purchase of MGA's debt

17 from non-party Wachovia. The actual background of this transaction is both

18 straightforward and easily explained. In October 2006, Wachovia Bank, National

19 Association and a syndicate of other financial institutions (collectively,

20 "Wachovia") provided a senior revolving credit facility to MGA (the "Senor Bank

21 Credit Facility"). In July 2008, Wachovia accelerated the maturity of the

22 outstanding debt obligations owed to Wachovia by MGA (over $310 million),

23 demanding full and immediate payment of the entire unpaid balance as it was

24 entitled to do under the terms of its Senior Bank Credit Facility.

25        In response to Wachovia's accelerated loan payment demand, MGA began

26 efforts to find someone who would purchase the Senior Bank Credit Facility from

27 Wachovia. Neil Kadisha, the Managing Partner of a diversified investment firm,

28 Omninet Capital, LLC, was approached and began discussions with Wachovia

- 1 -

EXHIBIT ____**38**____

PAGE ____**845**____

1    regarding a potential purchase of the Senior Bank Credit Facility.  In September
2    2008, Wachovia and Omni (a special purpose entity formed by Mr. Kadisha for
3    this transaction) entered into an assignment and exchange agreement whereby
4    Omni acquired all right, title and interest in the Senior Bank Credit Facility
5    excluding approximately $21 million which was retained by Wachovia.  Omni's
6    purchase of the Senior Bank Credit Facility from Wachovia was a straightforward,
7    arms-length business deal between non-parties to this action.
8          In support of its argument for the appointment of a receiver, Mattel
9    insinuates, without any evidence, that there was something untoward about the
10   timing and circumstances of Omni's debt purchase transaction.  Mattel falsely
11   represents to the Court that MGA received new "sudden funding" from an "off-
12   shore, non-operating" entity during the trial of this action.  Even allowing for its
13   ignorance of the actual terms of the Omni-Wachovia transaction, there is no reason
14   for such language.  If by "funding" Mattel means the loan from Wachovia, that
15   funding was provided by Wachovia to MGA under the Senior Bank Credit Facility
16   beginning in 2006 -- *long before the trial and any judgment was entered against*
17   *MGA in this action in 2008.*  If by "funding" Mattel means the Omni-Wachovia
18   transaction, the monies flowed *from Omni to Wachovia* as consideration for the
19   purchase of the debt owed by MGA.  The timing of the Omni-Wachovia
20   transaction in September 2008 was driven by a host of factors, most proximately
21   by Wachovia's decision to accelerate the outstanding debt obligation under the
22   Senior Bank Credit Facility.
23         Moreover, the source was not an "off-shore, non-operating" entity, as Mattel
24   repeatedly suggests in its application.  Wachovia (defined to include it and its
25   syndicate of bank and other institutional lenders), the original source of the
26   funding, are all substantial financial institutions; Omni, the assignee of the loan, is
27   a California limited liability company.  Mattel's paranoiac rhetoric regarding this
28   transaction and the source of the funding is unfounded.

- 2 -

1    Under federal law, a non-party is entitled to intervene *as a matter of right*
2    when it claims an interest relating to the property or transaction that is the subject
3    of the action and is so situated that disposing of the action may as a practical
4    matter impair or impede its ability to protect its interest.  A non-party may also
5    intervene, in the discretion of the court, when it has a claim that shares with the
6    main action a common question of law or fact.

7        Here, Omni has a secured interest in MGA's assets, including, *inter alia,*
8    MGA's inventory and accounts receivable, that is far greater and superior to any
9    alleged interest of unsecured creditors like Mattel.  Mattel is asking this Court for
10   an extraordinary remedy, solely to suit its own litigation and competitive interests,
11   which if granted could well cripple MGA's operations and would certainly impair
12   the security interests of Omni and other creditors.  Indeed, the proffered basis for
13   Mattel's opposition to Omni's application for leave to intervene -- that a debtor can
14   adequately represent the interests of its largest secured creditor -- speaks volumes
15   about Mattel's approach not only to this issue but also to its actual motivations in
16   making its request for a receiver.

17       For these reasons, Omni respectfully requests that the Court grant it leave to
18   intervene in this action for the purposes of challenging the appointment of a
19   receiver and related issues that could adversely affect Omni's security interests.

20

21   **II.    STATEMENT OF FACTS**[1]
22       On or about October 27, 2006, MGA entered into a Credit Agreement with
23   Wachovia Bank, National Association and a syndicate of other banks and
24

25   [1] In evaluating a motion to intervene, courts must accept as true all nonconclusory
26   allegations contained in the motion.  *Southwest Center for Biological Diversity v.*
     *Berg,* 268 F.3d 810, 819 (9th Cir. 2001); *Reich v. ABC/York-Estes Corp.,* 64 F.3d
27   316, 321 (7th Cir. 1995).
28

A/72829697.5/3009108-0000335082

EXHIBIT ___**38**___

PAGE ___**847**___

1   institutional lenders (collectively, "Wachovia"), pursuant to which Wachovia

2   provided a senior revolving credit facility to MGA in an aggregate available

3   amount for borrowing up to $400 million, secured by a senior perfected security

4   interest in, *inter alia,* all of MGA's inventory and accounts receivable (the "Senior

5   Bank Credit Facility"). On July 21, 2008, Wachovia declared the Senior Bank

6   Credit Facility to be in default and accelerated the maturity of the outstanding debt

7   obligations owed to Wachovia by MGA, demanding full and immediate payment

8   of the entire unpaid $313,496,700 balance of the loans.

9       In response to Wachovia's accelerated loan payment demand, MGA

10   approached Neil Kadisha, a highly regarded businessman and philanthropist who is

11   currently the Managing Partner of a diversified investment firm, Omninet Capital,

12   LLC.[2]  Mr. Kadisha and Omninet Capital, LLC have substantial experience

13   evaluating and investing in distressed debt and distressed companies.  Mr. Kadisha

14   immediately commenced negotiations with Wachovia regarding a potential

15   purchase of the Senior Bank Credit Facility from Wachovia.

16       On or about July 29, 2008, Omninet Capital, LLC made an offer to acquire

17   the Senior Bank Credit Facility, including the outstanding debt obligations from

18   Wachovia for $109,723,845 (representing 35% of the $313,496,700 principal

19   amount of the debt obligations outstanding as of the acceleration date).  After a

20   couple weeks of heavy negotiations, Wachovia agreed to sell and assign its interest

21   in all but $21,944,769 of the outstanding debt obligations under the Senior Bank

22   Credit Facility to Omni (the retained amount was then exchanged for unsecured

23   promissory notes issued by MGA to Wachovia).  In order to fund the acquisition of

24

25   [2] Omni is loathe to address the gratuitous ad hominem attacks concerning Mr.
     Kadisha and an ongoing civil litigation matter in the papers filed by Mattel, which
26   are inaccurate, incomplete and irrelevant, but if the Court is at all concerned by
     those matters Omni is prepared to do so.  Suffice it to say for now that the civil
27   litigation matter referred to by Mattel has not yet been finally resolved.

28

- 4 -

A/72829697.5/3009108-0000335082

EXHIBIT _____ **38**

PAGE _____ **848**

1   the Senior Bank Credit Facility, Mr. Kadisha solicited various private investors and

2   formed a special purpose entity, Omni 808 Investors, LLC, a California limited

3   liability company ("Omni")[3].  The formation of a special purpose entity is very

4   common for these types of transactions and is neither suspicious nor improper.

5        On or about September 3, 2008, Omni and Wachovia entered into a written

6   Master Assignment and Exchange Agreement whereby Omni acquired all right,

7   title and interest in the debt obligations under the Senior Bank Credit Facility,

8   other than the $21,944,769 exchanged for the unsecured promissory notes issued

9   by MGA to Wachovia Bank, National Association and the other original lenders.

10   As a result of the agreement, Omni stepped into and presently stands, as successor-

11   in-interest, in the position of Wachovia under the Senior Bank Credit Facility and

12   has a senior perfected security interest in MGA's assets, including, *inter alia*,

13   MGA's inventory and accounts receivable.  Omni's secured interest is superior to

14   that of any potential unsecured creditors, including Mattel.

15        Omni has a compelling interest in the financial health and stability of MGA

16   and its assets.  If MGA fails, MGA's ability to repay the outstanding debt

17   obligation in excess of $300 million owed to Omni will certainly be imperiled.

18   The appointment of a receiver to "oversee and control all financial and business

19   aspects" of MGA, solely to satisfy Mattel's interests, would harm MGA's ability to

20   operate independently and efficiently and would infringe upon, or potential

21   foreclose, the interests of Omni and other creditors.

22

23

24

25

---

26   [3]  Mattel erroneously refers to Omni 808 International, LLC, in its *ex parte*
     application, which further demonstrates Mattel's confusion regarding the entities
27   involved.

28

- 5 -

A/72829697.5/3009108-0000335082

EXHIBIT _____ **38**

PAGE _____ **849**

## III.   LEGAL ARGUMENT

### A.   Omni is Entitled to Intervene as a Matter of Right for the Limited Purpose of Protecting Omni's Status as a Secured Creditor

Omni is entitled to intervene as a matter of right pursuant to Fed. R. Civ. P. 24(a). Rule 24(a) provides that a court must permit a non-party to intervene who "claims an interest relating to the property or transaction that is the subject of the action and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest . . . ." *See also,* *Lockyer v. U.S.,* 450 F.3d 436, 440 (9th Cir. 2006). The Ninth Circuit construes Rule 24 liberally in favor of applicants for intervention. *Arakaki v. Cayetano,* 324 F.3d 1078, 1083 (9th Cir. 2003) (citing *Donnelly v. Glickman,* 159 F.3d 405, 409 (9th Cir. 1998)). The inquiry required under Rule 24(a)(2) is a flexible one, and a practical analysis of the facts and circumstances of each case is appropriate. *Donnelly,* 159 F.3d at 409. "In determining whether intervention is appropriate, we are guided primarily by practical and equitable considerations. We generally interpret the requirements broadly in favor of intervention." *Id.*

When a non-party claims an interest relating to the subject property or transaction of the action, courts generally require four factors: (1) a timely application; (2) the applicant has a "significantly protectable" interest relating to the property or transaction involved in the pending lawsuit; (3) the disposition of the lawsuit may adversely affect applicant's interest unless intervention is allowed; and (4) the existing parties may not adequately represent the would-be intervenor's interest. *Arakaki,* 324 F.3d at 1083; *League of United Latin American Citizens v. Wilson,* 131 F.3d 1297, 1302 (9th Cir. 1997).

Additionally, a district court has the discretion to grant a non-party limited intervention for certain issues or purposes. *See Stringfellow v. Concerned Neighbors in Action,* 480 U.S. 370, 378 (1987); *Donnelly v. Glickman,* 159 F.3d 405, 409 (9th Cir. 1998); *Beckman Indus. Inc. v. International Ins. Co.,* 966 F.2d

- 6 -

EXHIBIT ____38____

PAGE ____850____

1  470, 473 (9th Cir. 1992). "A nonparty may have a sufficient interest for some

2  issues in a case but not others, and the court may limit intervention accordingly."

3  *U.S. v. South Florida Water Dist.*, 922 F.2d 704, 707 (11th Cir. 1991); *San Juan*

4  *County v. U.S.*, 503 F.3d 1163, 1203 (10th Cir. 2007).

5              1.      Omni's Application Is Timely.

6        Courts generally consider the following factors relevant to the issue of

7  timeliness: (1) the stage of the proceedings at the time the applicant seeks to

8  intervene; (2) the prejudice to the existing parties from applicant's delay in seeking

9  leave to intervene; and (3) any reason for and the length of delay in seeking

10  intervention. *United States v. State of Washington*, 86 F.3d 1499, 1502 (9th Cir.

11  1996); *Engra, Inc. v. Gabel*, 958 F.2d 643, 644 (5th Cir. 1992).

12        Here, Omni's application is timely. On or about January 9, 2009, Mattel

13  served a subpoena on Omni requesting the production of documents relating to

14  Omni's formation, governance, finances, business relationships and transactions.

15  Omni also recently learned that Mattel filed an *ex parte* application for the

16  appointment of a receiver at MGA. The Court has yet to decide the pending

17  request for the appointment of a receiver and Omni has acted without delay.

18              2.      Omni Has a Significantly Protectable Interest in
                        the Receivership Issues Involved in the Pending
19                      Litigation.

20        "[W]hether an applicant for intervention demonstrates sufficient interest in

21  an action is a practical, threshold inquiry. No specific legal or equitable interest

22  need be established." *Southwest Center for Biological Diversity v. Berg*, 268 F.3d

23  810, 818 (9th Cir. 2001) (quoting *Greene v. United States*, 996 F.2d 973, 976 (9th

24  Cir. 1993)); *see also Forest Conservation Council v. United States Forest Serv.*, 66

25  F.3d 1489, 1493 (9th Cir. 1995). "It is generally enough that the interest [asserted]

26  is protectable under some law, and that there is a relationship between the legally

27  protected interest and the claims at issue." *Southwest Center for Biological*

28  *Diversity*, 268 F.3d at 818 (quoting *Sierra Club v. EPA*, 995 F.2d 1478, 1484 (9th

- 7 -

1  Cir. 1993)). *See, e.g., NL Indus. v. Secretary of Interior,* 777 F.2d 433, 435 (9th

2  Cir. 1985) (corporate property owner that held unpatented mining claim on

3  particular property permitted to intervene in dispute over other mining claims on

4  that property).  An intervenor's interest must be "significantly protectable such that

5  it will be directly and immediately affected by the litigation." *Werbungs und*

6  *Commerz Union Austalt v. Collectors' Guild, Ltd.,* 792 F. Supp. 870, 874

7  (S.D.N.Y. 1991) (court allows intervention by investor in one party when investor

8  had secured appeal bond and owned collateral securing letter of credit).

9         Here, Omni is the largest secured creditor of MGA, with a superior interest

10  in MGA's assets to any unsecured creditors including Mattel.  Omni's interest is

11  directly related to issues raised by Mattel in its *ex parte* application for the

12  appointment of a receiver.  Therefore, Mattel has a significantly protectable

13  interest relating to the property or transaction which is the subject of this action.

14         3.    The Appointment of a Receiver May Impair or
15              Impede Omni's Ability to Protect Its Interests.

16         In order to show that the disposition of the action may impair or impede the

17  ability to protect a non-party's interest, the non-party need only show a "practical"

18  impairment, "not whether the decision itself binds them." *Yniguez v. Arizona,* 939

19  F.2d 727, 735 (9th Cir. 1991).  Courts consistently allow creditors to intervene "of

20  right" where a receiver has been appointed and taken control of a debtor's assets.

21  The rationale is that the first creditor's action may effectively foreclose the

22  interests of other creditors. *See Sierra Club v. U.S.,* 995 F.2d 1478, 1486 (9th Cir.

23  1993); *SEC v. Flight Transp. Corp.,* 699 F.2d 943, 947 (8th Cir. 1983); *Mountain*

24  *Top Condominium v. Dave Stabbert Master Builder,* 72 F.3d 361, 366-367 (3rd

25  Cir. 1995).

26         Here, the appointment of a receiver to "oversee and control all financial and

27  business aspects" of MGA, as Mattel proposes, could cripple MGA's business and

28  impair Omni's ability to protect its senior perfected security interest in its

- 8 -

EXHIBIT    38

PAGE    852

1    collateral, which includes MGA's inventory and accounts receivable and

2    ultimately in MGA's ability to repay its outstanding secured debt obligation to

3    Omni of in excess of $300 million. The financial and business affairs of MGA are

4    best handled independently by businessmen who understand its products and its

5    industry.[4]

6            4.      The Existing Parties May Not Adequately

7                    Represent Omni's Interest.

8            In order to demonstrate the inadequacy of the existing parties to protect its

9    interest, the applicant's burden is minimal and is satisfied so long as the applicant

10   shows that representation by existing parties "*may be*" inadequate. *Trbovich v.*

11   *United Mine Workers*, 404 U.S. 528, 538 n.10 (1972). The Ninth Circuit considers

12   three factors in determining the adequacy of representation: "(1) whether the

13   interest of a present party is such that it will undoubtedly make all of a proposed

14   intervenor's arguments; (2) whether the present party is capable and willing to

15   make such arguments; and (3) whether a proposed intervenor would offer any

16   necessary elements to the proceeding that other parties would neglect." *Arakaki,*

17   324 F.3d at 1086 (citing *California v. Tahoe Reg'l Planning Agency,* 792 F.2d 775,

18   778 (9th Cir. 1986)). "The most important factor in determining the adequacy of

19   representation is how the applicant's interest compares with the interest of existing

20   parties." *Id.*

21

22   _____

      [4] Courts are reluctant to appoint receivers to solvent corporations. *See, e.g.,*
23   *DeBoer Structures, Inc. v. Shaffer Tent & Awning Co.,* 187 F. Supp. 910, 925 (S.D.
      Ohio 2001) (declining to appoint receiver despite other facts in favor of doing so
24   where corporation was solvent and productive); *Meyer Jewelry Co. v. Meyer
      Holdings, Inc.,* 906 F. Supp. 428, 434 (E.D. Mich. 1995) ("The deleterious effects
25   of a receivership would result in more harm than good in this case."); *Rumbaugh v.
      Beck,* 491 F. Supp. 511, 521 (E.D. Pa. 1980) (finding that because a corporation
26   was presently operating in a successful manner, appointment of a receiver would
      "be potentially more harmful than if one were not implanted"); *Saluck v. Rosner,*
27   1999 WL 46620, at *2 (E.D. Pa. Jan. 6, 1999) ("the appointment of a receivership
      of a solvent corporation is a drastic remedy.").

28

                                            - 9 -

EXHIBIT    _38_

PAGE    _853_

1    Here, the interests of the present parties are not such that they will
2    undoubtedly make all of Omni's arguments in opposition to the appointment of a
3    receiver. Obviously Mattel's interests are directly at odds with Omni's interests.
4    Further, although MGA also opposes the appointment of a receiver, there is no
5    reason to believe that it can or will make all of Omni's arguments on its behalf.
6    Omni's primary interest is in MGA's ability to repay its secured debt obligation of
7    in excess $300 million owed to Omni. Moreover, Omni is in the best position to
8    describe the facts and circumstances surrounding its purchase of the Senior Bank
9    Credit Facility from Wachovia.
10    According to Mattel's counsel, it is Mattel's view that MGA as debtor can
11    adequately protect the interests of its largest secured creditor. Mattel's position is
12    nonsensical as the financial interests of a debtor and secured creditor are, on their
13    face, aligned differently. Therefore, the existing parties may not adequately
14    represent Omni's interest regarding the appointment of a receiver and other issues
15    relating to Omni's status as a secured creditor.

**B.    In the Alternative, This Court Should Grant Omni Permissive Intervention**

18    Even if Omni were not entitled to intervene as a matter of right, the Court
19    should exercise its discretion and permit its intervention in this matter. Under
20    Federal Rule of Civil Procedure 24(b)(2), permissive intervention should be
21    granted whenever the "applicant's claim . . . and the main action have a question of
22    law or fact in common," and when the intervention would not "unduly delay or
23    prejudice the adjudication of the rights of the original parties." Fed. R. Civ. P.
24    24(b)(2). The existence of a "common question" is liberally construed. *Kootenai*
25    *Tribe v. Veneman*, 313 F.3d 1094, 1108-1109 (9th Cir. 2002). A proposed
26    intervenor under Rule 24(b)(2) "need not demonstrate a 'significantly protectable'
27    interest relating to the property or transaction which is the subject of the action.'"
28    *Defenders of Wildlife*, 2005 WL 3260986, at *2 (citing *Kootenai Tribe of Idaho v.*

- 10 -

EXHIBIT _____ 38

PAGE _____ 854

1    *Veneman*, 313 F.3d 1094, 1108-09 (9th Cir. 2002)).  Omni meets each of these

2    requirements.

3         Here, as explained above, there are common questions of law and fact

4    between Omni's claims and the issues raised in Mattel's application to appoint a

5    receiver.  Moreover, Omni's participation will not unduly delay or prejudice the

6    adjudication of the rights of the original parties.  Omni's participation will be

7    limited to challenging Mattel's request to appoint a receiver and protecting its

8    interests as a secured creditor.  The burden is on the parties to plead and prove any

9    alleged prejudice.  *Venegas v. Skaggs*, 867 F.2d 527, 530 (9th Cir. 1989).

10

11   **IV.    CONCLUSION**

12        For the foregoing reasons, Omni respectfully requests the Court grant this

13   application and authorize it to intervene for the limited purpose of responding to

14   Mattel's request for the appointment of a receiver for MGA and all other issues

15   related to the proposed receiver or Omni's status as a secured creditor of MGA.

16

17   DATED: February 3, 2009          Bingham McCutchen LLP

18

19

20   By: _____
                 Todd E. Gordinier
21               Attorneys for Non-party
                 Omni 808 Investors, LLC
22

23

24

25

26

27

28

- 11 -

A/72829697.5/3009108-0000335082

EXHIBIT _____ 38

PAGE _____ 855

# EXHIBIT 39

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES -- GENERAL

Case No.   CV 04-09049 SGL(RNBx)                    Date: April 27, 2009
Title:     MATTEL, INC. V. MGA ENTERTAINMENT, INC., et al.
================================================================
PRESENT:   HONORABLE STEPHEN G. LARSON, U.S. DISTRICT JUDGE

      Cindy Sasse                        None Present
      Courtroom Deputy                   Court Reporter

ATTORNEYS PRESENT FOR               ATTORNEYS PRESENT FOR
PLAINTIFFS:                         DEFENDANTS:

None Present                        None Present

PROCEEDINGS:   ORDER DENYING MATTEL'S MOTION FOR JUDGMENT AS A
               MATTER OF LAW (DOCKET #4498)

               ORDER GRANTING IN PART AND DENYING IN PART MGA'S
               MOTION FOR JUDGMENT AS A MATTER OF LAW (DOCKET
               #4496)

               ORDER AMENDING IN PART ORDER RE FINDING OF
               LIABILITY PURSUANT TO CAL. BUS. & PROFS. CODE § 17200
               (DOCKET #4441);

               ORDER GRANTING IN PART AND DENYING IN PART MGA'S
               MOTION FOR REMITTITUR (DOCKET #4495, #4523)

               ORDER LIFTING STAY ON PERMANENT INJUNCTION (#4443)

               ORDER FOR ACCOUNTING OF PROFITS OF
               BRATZ PRODUCTS

               ORDER REGARDING RETRIEVAL OF PREVIOUSLY LODGED

MINUTES FORM 90                                Initials of Deputy Clerk __cls_____
CIVIL -- GEN                       1

EXHIBIT ____39____

PAGE ____856____

**LAPTOP COMPUTER WITH PHASE 1A AND 1B TRIAL
TRANSCRIPT**

**ORDER REGARDING UNSEALING OF DOCUMENTS FILED
UNDER SEAL FROM MAY 28, 2008, THROUGH FEBRUARY 11,
2009**

**ORDER RE PHASED, UNDER SEAL RELEASE OF FORENSIC
AUDITOR'S REPORT TO COUNSEL AND PARTIES**

**ORDER GRANTING IN PART AND DENYING IN PART
MOTION TO INTERVENE (DOCKET #4761)**

**ORDER APPOINTING TEMPORARY RECEIVER**

**ORDER SETTING HEARING ON APPOINTMENT OF
PERMANENT RECEIVER**

### I. MATTEL'S MOTION FOR JUDGMENT AS A MATTER OF LAW
### (DOCKET #4498)

A motion for judgment as a matter of law after trial is granted only when there is
not a "legally sufficient evidentiary basis [for a reasonable jury] to find for that party on
[an] issue." Pavao v. Pagay, 307 F.3d 915, 918 (9th Cir. 2002). Sufficient evidence is
"evidence adequate to support the jury's conclusion, even if it is also possible to draw a
contrary conclusion." Id.

Mattel, Inc. ("Mattel") moves for judgment as a matter of law on the issue of the
scope of infringement of the Bratz dolls. Specifically, Mattel argues that "[e]ach core
Bratz fashion doll sold by MGA infringes Mattel's copyrights." Motion at 4. Mattel
acknowledges that the judgment it seeks would alter neither the jury's damages award
nor the Court-awarded equitable relief; however, Mattel seeks this judgment as an
alternative basis for the relief it has already been awarded. Without ruling on the merits
of the argument, the Court declines to adopt this alternative basis because it is not
necessary to support the relief awarded to Mattel. The jury, in the Phase 1B verdict,
found that the Bratz dolls infringed Mattel's copyrights, but the scope of that
infringement was not explicitly found by the jury. Even if the Court were to grant the
relief sought by Mattel, the amount the jury awarded for copyright infringement, $10
million, would be unchanged. Moreover, the Court, sitting in equity, made an express
factual finding, set forth more fully in its December 3, 2008, Order that the core Bratz
fashion dolls infringed Mattel's copyrights. This portion of Mattel's motion is therefore
**DENIED.**

MINUTES FORM 90
CIVIL -- GEN

2

Initials of Deputy Clerk __cls_____

EXHIBIT ___*39*_____

PAGE _____*857*_____

In a similar fashion, Mattel seeks judgment as a matter of law on the issue that sculptor Margaret Leahy's contributions cannot, as a matter of law, support a claim of independent creation of the Bratz fashion doll sculpt, TX 1136A.[1] In Phase 1A of the trial, the jury found that the sculpt was "'conceived or reduced to practice' -- that is, created -- by Carter Bryant, alone or jointly with others," during his employment with Mattel. Phase 1A Verdict Form at 5. This finding, when viewed in conjunction with the Court's summary judgment order, was sufficient to place the sculpt within the assignment clause of the Inventions Agreement which, in turn, conferred the rights to the sculpt to Mattel. Therefore, as with the previous issue, this judgment is sought merely as an alternative basis for the relief Mattel has been awarded, which the Court, without deciding the merits, declines to adopt. This portion of Mattel's motion is therefore similarly **DENIED.**

Finally, Mattel seeks judgment as a matter of law that both Isaac Larian and MGA HK engaged in acts of fraudulent concealment. As to Isaac Larian, although there was evidence suggesting that he engaged in a cover-up as to *who* created Bratz (and later, as to *when* Bratz was created), he testified at trial that he did nothing to keep Carter Bryant's *role* in the creation of Bratz hidden. Even in the face of evidence to the contrary, the jury could have believed him; thus, judgment as a matter of law on this point is not appropriate. Credibility determinations are for the jury, and the jury could have made this credibility determination in favor of Isaac Larian. Winarto v. Toshiba America Electronics Components, Inc., 274 F.3d 1276, 1294 (9th Cir. 2001). As for MGA HK, Mattel did not cite any evidence that suggests that MGA HK should be found to have fraudulently concealed the basis for Mattel's claims, and therefore judgment as a matter of law is not appropriate. This portion of Mattel's motion is therefore also **DENIED.**

For the reasons set forth above, Mattel's Motion for Judgment as a Matter of Law is **DENIED** in its entirety.

## II. MGA'S MOTION FOR JUDGMENT AS A MATTER OF LAW (DOCKET #4496)

The MGA parties[2] seek judgment as a matter of law that federal copyright law

---

[1] For their part, the MGA parties seek judgment as a matter of law of the mirror image of Mattel's claim; specifically, as discussed more fully below, the MGA parties seek judgment as a matter of law that Margaret Leahy's contribution to the creation of the sculpt amounted to independent creation.

[2] The Court herein refers to all three MGA parties collectively and individually as follows: MGA Entertainment, Inc., is referred to as "MGAE." MGA Entertainment (HK) Limited (also referred to in the record as "MGA Hong Kong") is referred to herein as "MGA HK." All three defendants, Isaac Larian, MGAE, and MGA HK are collectively referred to as "the MGA parties." When necessary to distinguish them further, the subset of entity defendants, MGAE and MGA HK, are collectively referred to as "the MGA entities."

EXHIBIT ____39____

PAGE ____858____

preempts Mattel's claims for aiding and abetting breach of fiduciary duty and the duty of
loyalty. Relatedly, they also seek judgment as a matter of law that the damages
awarded as to the state-law claims are precluded as preempted because they represent
damages awarded under the theory of disgorgement, which was also awarded as part
of copyright damages. The Court has previously rejected the argument that copyright
law preempts the two aiding and abetting claims, and the Court leaves undisturbed its
previous holding on this issue. As for the related argument regarding damages, to
accept the MGA parties' argument, the Court would have to reject the current, firmly
established standard for determining if a state-law claim is preempted in favor of a new
standard that would find preemption any time the relief sought by the state-law claim is
also redressable by a copyright claim. This Court must follow the enunciated standard
for copyright law preemption, and it therefore rejects the MGA parties' argument
regarding this issue. This portion of the motion is **DENIED.**

The MGA parties seek judgment as a matter of law that Mattel's claims for aiding
and abetting breach of fiduciary duty and the duty of loyalty is preempted by the
California Uniform Trade Secrets Act. This issue was not raised in the parties' pretrial
conference order and, accordingly, was waived. See e.g., El-Hakem v. BJY Inc., 415
F.3d 1068, 1077 (9th Cir. 2005). This portion of the motion is **DENIED.**

The MGA parties seek judgment as a matter of law that Mattel failed to prove its
damages as to each of its state-law claims. Mattel proceeded on a theory of recovery
that sought disgorgement of the MGA parties' profits rather than another measure of
damages; there was ample evidence presented by both sides regarding the MGA
parties' profits. The Court has previously rejected, and does not now revisit, the MGA
parties' contention that the proper measure of damages for aiding and abetting Carter
Bryant's breaches of fiduciary duty and the duty of loyalty should be measured by
Carter Bryant's profits, rather than the MGA parties' profits. As for the conversion claim,
as set forth infra, the Court has remitted the monetary damages awarded by the jury in
favor of the equitable relief awarded by the Court in the form of return of the original
drawings.[3] This portion of the motion is **DENIED.**

The MGA parties seek judgment as a matter of law that Mattel failed to prove that
the MGA parties had actual knowledge of Carter Bryant's fiduciary duty or breach
thereof. Admittedly, there is an absence of direct evidence, such as an admission by
Isaac Larian, that any of the MGA parties had actual knowledge of Carter Bryant's
fiduciary duty or breach thereof. But the indirect evidence relevant to this issue admitted
at trial clearly supports the jury's verdict that both MGAE and Isaac Larian had
an understanding that Carter Bryant had such an obligation as well as the parameters of
such an obligation. This portion of the motion is **DENIED.**

---

[3] Those original drawings are currently in the custody of the Court as part of the Court record.

Initials of Deputy Clerk __cls_____

EXHIBIT _____*39*_____

PAGE _____*859*_____

The MGA parties seek judgment as a matter of law as to MGA HK's liability for unfair competition. The Court's summary judgment Order held that Mattel had raised a triable issue of fact as to whether the MGA parties tortiously interfered with Bryant and Mattel's contractual relationship and whether they engaged in commercial bribery. However, the tortious interference claim was not asserted against MGA HK, and there was no evidence presented at trial to support a statutory unfair competition claim against MGA HK for commercial bribery.  See Court's June 4, 2009, Final Pretrial Conference Order. Accordingly, the Court **GRANTS** the motion on this issue, and the Court **ORDERS** that the following **AMENDMENTS** be made to its Order Granting Mattel's Motion for Finding Liability and Injunctive Relief Pursuant to Cal. Bus. & Profs. Code § 17200, filed December 3, 2008 (docket #4441):

- At page 1, line 6:  Delete "GRANTS" and substitute "GRANTS IN PART AND DENIES IN PART"

- At page 3, line 7:  Delete "the MGA Defendants" and substitute "MGA and Larian"

The MGA parties seek judgment as a matter of law that Mattel is not entitled to base any claims on ownership to the name "Bratz."  To the extent that the MGA parties' argument is based on the construction of the Inventions Agreement, it was not raised in the Rule 50(a) motion for judgment as a matter of law and, therefore, may not be raised for the first time in a Rule 50(b) motion for judgment as a matter of law.[4]  The Court finds wavier.

In any event, the argument fails on its merits.  The name "Bratz," which the jury found Carter Bryant conceived of during the period of his employment with Mattel, is within the scope of the assignment clause of the Inventions Agreement.  California law allows the assignment of an idea; thus, the name "Bratz" is, by virtue of the Inventions Agreement, the Court's summary judgment order construing that Agreement, and the jury's finding regarding the origin of the name, Mattel's property (even if it was not a proper trademark at the time it was conveyed and even though it is not subject to being copyrighted).  This portion of the motion is **DENIED.**

The MGA parties seek judgment as a matter of law that copyright infringement is limited to the first-generation Bratz dolls.  Essentially, the MGA parties seek a ruling that no reasonable jury could have found that any Bratz dolls, other than the first-generation

---

[4] The Court rejects the MGA parties' contention that this issue was raised in the Rule 50(a) motion and that the Rule 50(b) motion merely expands upon the argument.  The MGA parties' point in the Rule 50(a) motion was that there was a lack of intellectual property protection for the name Bratz (because it was not a valid trademark because it had not ever been used in commerce and because it could not be copyrighted); conversely, their point here is that the name "Bratz" is not within the scope of the Inventions Agreement.

MINUTES FORM 90
CIVIL -- GEN                                         5                    Initials of Deputy Clerk __cls_____

EXHIBIT ____39____

PAGE ____860____

Bratz dolls, infringe Mattel's copyrights. The Court has already found that this is not the case; specifically, the Court has found, for the reasons set forth in its December 3, 2008, Order, that hundreds of Bratz female fashion dolls infringe Mattel's copyrights. This portion of the motion is **DENIED**.

The MGA parties seek judgment as a matter of law that Bryant was not an author of the Bratz sculpt. The Court previously observed, at trial, that this is an affirmative defense that was not asserted and was therefore waived. Moreover, this issue was not raised in the pretrial conference order; thus, it was waived for that reason as well. Furthermore, it was not raised in the MGA parties' Rule 50(a) motion, and therefore may not be raised for the first time in the Rule 50(b) motion.

In fact, this issue was not raised until *__after__* the jury's verdict in Phase 1A, in which the jury determined that Bryant created the sculpt (alone, or jointly with others). Recognizing this fact as a potential impediment to the relief they now seek, the MGA parties contend that in Phase 1A, the jury was not instructed on how to determine – and thus its express factual finding does not address – authorship as a matter of copyright law. Nevertheless, the Phase 1A verdict established the jury's finding that the sculpt was "'conceived or reduced to practice' – that is, created – by Carter Bryant, alone or jointly with others," during his employment with Mattel. Phase 1A Verdict Form at 5. This finding, when viewed in conjunction with the Court's summary judgment order, was sufficient to place the sculpt within the assignment clause of the Inventions Agreement which, in turn, conferred the rights to the sculpt to Mattel.

In any event, this argument also fails on its merits. A reasonable jury could have readily found that Carter Bryant was the author of the sculpt based on Paula Garcia's testimony that Margaret Leahy was tasked with creating the three-dimensional object equivalent of Carter Bryant's two-dimensional drawings. Trial Tr. at 800. When asked if she looked back to Carter Bryant's two-dimensional drawings during her review of the sculpt, Ms. Garcia stated that it was possible (although she had no specific recollection of doing so), "because the exercise was to create a 3D version of those 2D drawings, it was very likely that those drawings were there to then compare its 3D version with those relationships." Id.; see also Trial Tr. at 797 (Garcia's testimony as to the purpose of the sculpt, which was to determine how the "2D image" would "translate" to "3D"). This final portion of the motion is therefore **DENIED**.

As set forth herein, the Court **GRANTS** that portion of the MGA parties' Motion for Judgment as a matter of law that challenges the Court's finding of a violation of §§ 17200 et seq. on the part of MGA HK. The Court **DENIES** the remainder of the MGA parties' Motion for Judgment as a matter of law.

MINUTES FORM 90
CIVIL -- GEN                                    6                    Initials of Deputy Clerk __cls_____

EXHIBIT ___*39*___

PAGE ____861____

### III. MGA'S MOTION FOR REMITTITUR
### (DOCKET #4495, #4523)

On its face, the jury's Phase 1 verdict awards Mattel $100,031,500.00. The jury
verdict was a round $100 million (allocated among a total of four claims and three
defendants) except for $31,500, which was awarded to Mattel as damages for
conversion of the original Bratz drawings. The MGA parties seek remittitur of this
amount, arguing that, at most, Mattel should be awarded $20 million.

The Ninth Circuit enunciated its remittitur standard in 1982, when it noted that
other circuits "consistently approve remitting the judgment to the maximum amount
sustainable by the proof," before stating, "[w]e adopt this standard." D & S Redi-Mix v.
Sierra Redi-Mix and Contracting Co., 692 F.2d 1245, 1249 (9th Cir. 1982). One of the
cases cited with approval by the Redi-Mix court stated the standard in greater detail:

> The defendants' final contention is that the verdict
> was excessive, justifying a new trial or, in the alternative, a
> remittitur. Our review of this issue is limited to an
> examination of the plaintiff's injuries to determine whether
> the damage award is beyond the maximum possible award
> supported by the evidence in the record.

Keyes v. Lauga, 635 F.2d 330, 336 (5th Cir. 1981)

Since 1981, the Ninth Circuit has elaborated on this standard:

> Even a total inadequacy of proof on isolated elements
> of damages claims submitted to a jury will not undermine a
> resulting aggregated verdict which is nevertheless
> reasonable in light of the totality of the evidence. If we find
> that a jury's damages award exceeds the maximum amount
> sustainable by the probative evidence, we will not hesitate to
> order a remission of the excess by the plaintiff or, in the
> alternative, a new trial. . . . But where, as here, the jury's
> verdicts find substantial support in the record and lie within
> the range sustainable by the proof, we will not "play Monday
> morning quarterback" and supplant the jury's evaluation of
> the complex and conflicting evidence with our own.

Los Angeles Memorial Coliseum Com'n v. National Football League, 791 F.2d 1356,

MINUTES FORM 90                                          Initials of Deputy Clerk __cls_____
CIVIL -- GEN                              7

EXHIBIT ____39____
PAGE ____862____

1366 (9th Cir. 1986) (internal citations omitted).[5] Cf. In re First Alliance Mortg. Co., 471 F.3d 977, 1001 (9th Cir. 2006) (using the above-quoted standard, but noting that before the Court was "the rare case in which it is sufficiently certain that the jury award was not based on proper consideration of the evidence" but was instead "based on improperly considered evidence, directly traceable to an error that was cured too little, too late"). Generally, courts are cautioned to "undertake only limited review of jury damages awards, in order to avoid encroaching upon the jury's proper function under the Constitution." Memorial Coliseum at 1365. The standard is exceptionally deferential to the jury's findings. If the damages award is supported by the evidence, it must be upheld even if the Court would have awarded a different amount of damages.

It is through this very narrowly focused lens that the Court must consider the present motion.

The MGA parties argue that Mattel had a singular theory of recovery – disgorgement of profits – and the amounts set forth by the jury as to each of the three state-law claims are duplicative. This is not a completely unappealing argument. For each of three state law claims – intentional interference with contractual relations, aiding and abetting breach of fiduciary duty, and aiding and abetting the duty of loyalty – the jury indicated that Mattel should be awarded $20 million as to MGAE and $10 million as to Isaac Larian. Totaled, this award is $90 million. Viewed pursuant to the MGA parties' theory, it would be the same $30 million awarded three times. Relatedly, the MGA parties contend that the copyright damages of $10 million (allocated among three defendants) are also duplicative of this $30 million, even though the number is not exactly the same.[6]

However, these explanations as to what the jury intended are purely speculative. The remittitur standard is exceptionally deferential to the jury's verdict, and the Court cannot disturb its based on speculation. The fact is the evidence not only supported a verdict of $100 million, this Court could have, under the remittitur standard, easily sustained a verdict many times this amount. The jury may have meant to award only a total of $30 million, or they may have simply decided they could all agree on a round figure of $100 million and then set about allocating that $100 million among multiple claims and defendants.

---

[5] A number of district court cases in the Ninth Circuit have recently applied this standard. Paul v. Asbury Automotive Group, LLC 2009 WL 188592, at *2 (D. Ore. 2009); Hall v. North American Indus. Services, Inc., 2008 WL 789895, at *2 (E.D. Cal. 2008); Lucky Break Wishbone Corp. v. Sears, Roebuck and Co., 2008 WL 4742206, at *4 (W.D. Wash. 2008); Eldorado Stone, LLC v. Renaissance Stone, Inc., 2007 WL 2403572, at *1 (S.D. Cal. 2007).

[6] The MGA parties' explanation for why these damages are duplicative even though they are not exactly the same is that the jury reduced the $30 million for apportionment based on the expert testimony of Professor Joachimsthaler, who testified that MGA's branding efforts could be responsible for approximately 50% to 70% of Bratz-related profits.

MINUTES FORM 90
CIVIL -- GEN

8

Initials of Deputy Clerk __cls_____

EXHIBIT __39_____

PAGE _____863_____

In any event, the Court must return to the standard by which its conclusion is governed. Here, a district court **_must_** leave undisturbed jury's verdict that is "reasonable in light of the totality of the evidence," where the verdict does not "exceed[] the maximum amount sustainable by the probative evidence," and where the verdict "lie[s] within the range sustainable by the proof." The jury's verdict of $100 million is well within the range of possible awards based on the evidence of record, and therefore the Court must leave it undisturbed.

What the MGA parties are careful not to encroach upon, but what they in essence really seek, is an inquiry into what the jury **_meant_** by its verdict. As the Court and the parties to this case are aware, this inquiry is squarely within that which is prohibited by Fed. R. Evid. 606(b):

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith.

Id. Of course, if that inquiry were permissible in this instance, the results seem clear. Counsel for the MGA parties has not thus far denied that at least one juror, possibly more, stated to them that the jury in fact intended a $100 million award of damages.

Separately, the MGA parties contend that, of that $100 million award, the $1 million awarded as defendant MGA HK's liability for copyright infringement is duplicative because of certain consolidated financial reporting that occurs between MGAE and MGA HK. This evidence was not before the jury; the jury made its award based on the evidence before it. In any event, because the evidence presented supports the $1 million award made against MGA HK, under the Memorial Coliseum standard, it must be left undisturbed.

The MGA parties also contend that the damages against Mr. Larian for intentional interference with contractual relations is barred by the statute of limitations. The Court previously held that the intentional interference with contractual relations claim was not subject to the discovery rule, so unless Mattel was able to establish a sufficient period of fraudulent concealment, the interference claim would be time barred. June 2, 2008, Order at 3. In its Phase 1B verdict, the jury answered in the negative a specific interrogatory regarding whether a requisite period of fraudulent concealment could be attributed to Mr. Larian.[7] Therefore, a combination of the Court's June 2, 2008,

---

[7] Conversely, the jury answered the same question regarding MGAE affirmatively.

Initials of Deputy Clerk __cls_____

EXHIBIT _____39_____

PAGE _____864_____

Order and the jury's specific findings supports the MGA parties' position that the $10 million awarded as to Isaac Larian for the claim of intentional interference with contractual relations should be remitted because, in the absence of a fraudulent concealing finding by the jury, the claim is time barred.

However, at the hearing on this issue, counsel for Mattel suggested to the Court that its legal conclusion regarding the non-application of the discovery rule to tortious interference claims was in error and was, in fact, not an argument advanced by the parties in their summary judgment papers. Only very rarely will a court entertain an oral motion for reconsideration; rarer still are those occasions when such a motion is granted. However, such a result is warranted here where the Court's previous legal conclusion was simply wrong.

In their summary judgment motion, the MGA parties argued that a claim for "intentional interference with a contract accrues no later than the date of the contract's breach," implying – at least in the Court's view at the time of its review of the motion – that the discovery rule did not apply.  See MGA SJ Mot. at 21 (docket #2572).  The authority they cite supports the general rule regarding the accrual date of a tortious interference claim, but the authority does not support the Court's more specific conclusion that the discovery rule is inapplicable to claims for tortious interference.  See Knoell v. Petrovich, 76 Cal.App.4th 164, 168 (1999) (refusing to apply the discovery rule to a tortious interference claim but doing so on the basis that the plaintiff made judicial admissions that were inconsistent with the application of the rule); Trembath v. Digardi, 43 Cal.App.3d 834, 836 (1974) (refusing to hold that the accrual of a claim for tortious interference claim as to an attorney-client contingency fee contract extended beyond the date of the breach to the suggested accrual date of the client's actual recovery, but not discussing the discovery rule); Forcier v. Microsoft Corp., 123 F.Supp.2d 520, 531 (N.D. Cal. 2000) (refusing to apply the discovery rule to a tortious interference claim because the facts presented in the case did not warrant it); Charles Lowe Co. v. Xomox Corp., 1999 WL 1293362 at *9 (N.D. Cal. 1999) (defining accrual of a tortious interference claim in relation to when damages are incurred and when a plaintiff may seek a legal remedy, but not discussing the discovery rule); Menefee v. Ostawari, 228 Cal.App.3d 239, 245 (1991) (discussing neither tortious interference claims nor the discovery rule).

At best, these cases represent examples of cases in which courts refuse to apply the discovery rule because the facts of the case do not warrant it; these cases do not stand for the broader conclusion reached by the Court in its prior order that the discovery rule is inapplicable to *all* tortious interference claims, regardless of the factual circumstances related to the claim's discovery.  Cf. AmerUS Life Ins. Co. v. Bank of America, N.A., 143 Cal.App.4th 631, 639 (2006) (explicitly stating, regarding conversion claims, that "[t]o the extent our courts have recognized a 'discovery rule' exception to toll the statute, it has only been when the defendant in a conversion action fraudulently conceals the relevant facts or where the defendant fails to disclose such facts in

EXHIBIT ___39___

PAGE ___865___

violation of his or her fiduciary duty to the plaintiff."). Indeed, by examining the facts of the case and discussing the discovery rule standard before concluding the rule does not apply in that instance, rather than noting a wholesale rejection of the application of the discovery rule to tortious interference claims, these courts have implicitly held that the discovery rule may, in certain undefined instances, permit otherwise time-barred claims to proceed.[8]

The Court has previously discussed at length why the discovery rule delayed the accrual of Mattel's claims in this case. That rationale applies with equal force to the intentional interference with contractual relations claim, which was timely asserted against Mr. Larian. Thus, it becomes irrelevant that the jury failed to attribute any fraudulent concealment to Mr. Larian, and the Court **DENIES** the motion on issue of timeliness of the tortious interference claim.

Finally, the MGA parties correctly contend that the damages awarded for conversion, totaling $31,500, should be remitted because the Court's declaratory judgment orders the MGA parties to return the drawings. The Court **GRANTS** the motion on this issue. However, the drawings shall remain in the Court's custody pending completion of Phase 2, pending appeal, and/or pending further order of this Court.

## IV. LIFTING STAY, AS MODIFIED AND SUPPLEMENTED, ON PERMANENT INJUNCTION (#4443)

Subject to the modification set forth in the Court's January 7, 2009, Order (docket #4657) (relating to distributors and retailers), the Court **VACATES** the stay on enforcement of its December 3, 2008, Order Granting Mattel, Inc.'s Motion for Permanent Injunction (docket #4443) ("Permanent Injunction Order"). Specifically, the Court **VACATES** the stay set forth in its Omnibus Order of December 3, 2008 (docket #4439) at 16 (which was imposed pending resolution of the three post-trial motions upon which the Court today rules); however, the Court leaves undisturbed the more limited stay set forth in the Court's January 7, 2009, Order, which relates to the purchase of Bratz products by retailers and distributors up to and including December 31, 2009. This limited stay is supplemented as set forth below.

---

[8] Had those courts not wished to make this implication, they could have, but did not, set forth a qualification that the court was assuming without deciding that the discovery rule could be applied to a tortious interference claim. Cf. Grisham v. Philip Morris U.S.A., Inc., 40 Cal.4th 623, 634 n.7 (2007) ("We assume for purposes of this discussion that the delayed discovery rule applies to unfair competition claims. We note that this point is currently not settled under California law . . . and we do not address it.") (citations omitted).

The Permanent Injunction Order contemplates the Court's appointment of a Special Master to resolve issues and disputes relating to the enforcement of the Permanent Injunction Order. At this point, in the absence of any such disputes, the Court reserves such an appointment.

## V. ACCOUNTING OF BRATZ PROFITS SINCE AUGUST 26, 2008

In light of the Court's interpretation of what has been referred to in this litigation as the Inventions Agreement (especially the Court's April 25, 2008, summary judgment Order), in light of the two jury verdicts returned in this case on July 17, 2008, and on August 26, 2008, in light of the Court's December 3, 2008, Orders regarding the parties' equitable claims and equitable relief (especially the Court's Omnibus Order defining the parameters of the scope of copyright infringement, the Court's Order Granting Mattel's Motion for Permanent Injunction, and the Court's Order Granting Mattel's Motion for Constructive Trust), and in light of this Order rejecting in all material respects the MGA parties' post-trial challenges to the jury's findings, the Court's findings, and the Court's legal and equitable rulings, the Court **ORDERS** the MGA entities to file with the Court, and serve on all parties, no later than thirty days from the entry of this Order, a full accounting of all profits that have resulted from all sales, occurring after August 26, 2008, of all products that fall within any of the Court's December 3, 2008, Orders referenced above.

Within ten days of the filing of that accounting, the interested parties shall file a joint status report setting forth the position of all interested parties on how they wish to proceed on this issue.

## VI. ORDER RE RETRIEVAL OF JOINTLY LODGED LAPTOP COMPUTER

On September 11, 2008, for the Court's convenience and pursuant to its Order, Mattel and the MGA parties jointly lodged a laptop computer from which the Court could easily access the Phase 1A and 1B trial transcripts. Counsel are advised to contact the courtroom deputy clerk to arrange to retrieve the computer from the Court.

## VII. ORDER RE REVIEW OF UNDER SEAL FILINGS

On June 24, 2008, this Court ordered unsealed vast portions of the previously sealed record in these consolidated cases. That Order related only to documents filed on or before May 27, 2008. Certain specific documents, identified by the parties by docket number and found by the Court to have good cause to remain sealed, were not unsealed; similarly, certain Orders of this Court were not unsealed.

Counsel for all the parties are **ORDERED** to engage in a review and meet and confer process to significantly narrow, if not eliminate the under seal nature of the filings

MINUTES FORM 90
CIVIL -- GEN                              12                    Initials of Deputy Clerk __cls_____

EXHIBIT ____39_____

PAGE _____867_____

dated May 28, 2008, through the date of the lifting of the stay on Phase 2 discovery,
which occurred on February 11, 2009.  The parties are **ORDERED** to file with the Court,
no later than forty-five days from the entry of this Order, a joint report that identifies by
docket number and pinpoint citation all materials the parties agree should remain under
seal, as well as the materials any party contends should remain under seal.  In all
instances, all materials that are contemplated by any party to be maintained by the
Court under seal shall specify the reasons therefor.

      Counsel should anticipate the narrowest possible information to be maintained
under seal.  For example, if there is good cause for maintaining under seal only a small
portion of an attachment, counsel should anticipate that they may be required to e-file a
public redacted version of that document.

### VIII. ORDER RE PHASED, UNDER SEAL RELEASE OF
### FORENSIC AUDITOR'S REPORT TO COUNSEL AND PARTIES

      The Court received *in camera* on April 23, 2009, and has since reviewed, the
Forensic Auditor's Report.  Concurrently served, under seal, on each parties' counsel of
record, is a copy of the Forensic Auditor's preliminary report to the Court.  The Court
reserves at this time release of the supporting documentation that is attached to the
report.  This document is, until further Order of the Court, designated as a highly
restricted attorney-eyes-only document.  It may be reviewed, and its contents shared,
only with *counsel of record* in this case and the Court-appointed Temporary Receiver
appointed below; it may not be shared with either the parties or attorneys who are not
counsel of record, including in-house counsel for the parties.

      The parties are advised that they must file any objections on the basis of
privilege within forty-eight hours of the entry of this Order.  Failure to do may result in
waiver of that privilege.  After the expiration of this forty-eight hour period, the Court will
make further Orders regarding the scope of the release of the report, including its
attachments.

      The Court understands that certain requested information has only recently been
produced to the Forensic Auditor.  For that reason, and because he has represented to
the Court that certain analyses are ongoing, the Court continues the appointment of the
Forensic Auditor until further Order of this Court.

### IX. ORDER GRANTING IN PART AND DENYING IN PART
### MOTION TO INTERVENE  (DOCKET #4761)

      Non-party Omni 808 Investors, LCC ("Omni 808"), has filed an ex parte
application to intervene for the limited purposes of responding to Mattel's ex parte
application for a receiver for MGA and to address "all other issues related to Omni's

MINUTES FORM 90                                                    Initials of Deputy Clerk __cls_____ ,
CIVIL -- GEN                              13

EXHIBIT _____ **39**

PAGE _____ **868**

status as a secured creditor of MGA." See Ex Parte Application to Intervene (docket #4761) at 1. This motion was heard on February 11, 2009, at which time the Court expressly held the motion in abeyance, along with the Mattel's ex parte application for appointment of a receiver (docket #4540), which is addressed in the following section, to allow the preparation of an audit report by the Court-appointed Forensic Auditor.

For the reasons set forth below, the Court **GRANTS IN PART AND DENIES IN PART** the motion to intervene. The motion is granted to the extent it seeks intervention to address the potential receivership issues; the motion is **HELD IN ABEYANCE** as to the other, broader, but unspecified issues raised by Omni 808.

In the absence of a federal statute conferring a right to intervene, Rule 24(a)(2) provides as follows:

> (a) Intervention of Right. On timely motion, the court must permit anyone to intervene who: . . . (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Id. The Ninth Circuit has identified four separate elements that must be met in order to qualify for intervention under this rule; specifically, a would-be intervenor must show the following:

> (1) [I]t has a significant protectable interest relating to the property or transaction that is the subject of the action; (2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; (3) the application is timely; and (4) the existing parties may not adequately represent the applicant's interest.

United States Alisal Water Corp., 370 F.3d 915, 919 (9th Cir. 2004).

Omni 808 has met both the first and second elements. Where a party has a non-speculative economic interest that is both concrete and related to the underlying subject matter of the action, this element is met. Id. Mattel has correctly argued that, generally, the issues regarding the collectability of a party's debt does not confer an interest on the part of the creditor to justify intervention pursuant to Rule 24(a)(2). See id. (denying intervention where the interest of the would-be intervenor was "several degrees removed from the overriding public health and environmental policies that are the backbone of this litigation."). However, this particular request for intervention is not one that falls into this general category. Rather, it is an intervention for a very limited

MINUTES FORM 90
CIVIL -- GEN

14

Initials of Deputy Clerk __cls_____

EXHIBIT ___39___

PAGE ___869___

purpose – to address the issue of the appointment of a receiver – which is directly related to debt collectability. By virtue of this case, Mattel claims a significant interest in the assets of the MGA parties, including both money damages and rights to intellectual property previously held by the MGA parties. Omni 808 now claims a superior interest by virtue of a transaction that occurred after the jury returned its verdict as to ownership of certain Bratz property. This interest is directly related to this litigation.

The second element is met because the relief sought by Mattel is to take control of the Bratz assets, as that term is at length defined by its proposed order submitted with its motion for appointment of a receiver. According to the testimony the Court heard at trial, the Bratz assets are, at least historically, the most significant ones owned by the MGA parties. Resolution of the disputes over the priority to these assets may have to take into account the claimed superiority of Omni 808's interest in MGAE.

The third element is met, at least as to the receivership issue, which is the only ground upon which the Court grants the motion to intervene at this time.

The fourth element has been described as presenting a "minimal burden." Trbovich v. United Mine Workers of America, 404 U.S. 528, 538 n.10 (1972). It is sufficient that the would-be intervenor shows that the representation "may be inadequate." Id. Here, although both the MGA parties and Omni 808 may oppose in general the appointment of a receiver, their positions could differ significantly because MGAE is Omni 808's debtor. Because all that is required is a minimal showing, and because Omni 808 has represented that it is an MGAE secured creditor, the Court finds that the fourth element is met because of the vastly different roles played by MGAE and Omni 808 vis-à-vis Mattel: One is an anticipated judgment debtor and the other is a competing creditor.

Accordingly, the Court **GRANTS IN PART** the motion to intervene. Omni 808 is a party to these consolidated cases for the limited purpose of addressing the receivership issues. As such, it may file briefing in accordance with the schedule set forth below, and it may appear and argue at the hearing set as specified below.

For just cause and in order to preserve the status quo and address the allegations set forth in Mattel's application for the appointment of a receiver and in its opposition to the present motion to intervene, the Court **ORDERS** that Omni 808 and its counsel are restrained and enjoined, absent further order from this Court, from taking any action to assert or enforce any purported rights against the MGA parties, including but not limited to commencing an action against the MGA parties, taking any action to foreclose on any collateral of the MGA parties, committing any act that interferes with the Temporary Receiver's possession, control or use of the assets of the MGA entities, or commencing or participating in any involuntary bankruptcy proceedings against any MGA party pending further hearing on this matter on May 18, 2009, at 1:30 p.m. At that hearing, the Court will consider whether, as counsel for Omni 808 represented to this

EXHIBIT _____39_____

PAGE _____870_____

Court, "Omni's purchase of the Senior Bank Credit Facility from Wachovia was a
straightforward, arms-length business deal between non-parties to this action," or
whether, as counsel for Mattel contends, the purchase was by entities formed for "the
improper purpose of attempting to leapfrog over Mattel's claims and shield their assets
from creditors and other rights-holders such as Mattel." Counsel for all parties,
including the intervenors, are afforded leave to file a final position on this issue no later
than May 14, 2009.

## X. ORDER RE APPOINTMENT OF TEMPORARY RECEIVER PENDING HEARING ON APPOINTMENT OF PERMANENT RECEIVER

Mattel has filed an application for the appointment of a receiver or for alternative
relief. The Court has considered all papers submitted in support of the application and
all opposition and reply papers thereto, the arguments of counsel at the hearing on the
application, and the entire record in this action, and finds that just cause exists for the
appointment of a Temporary Receiver purusant to L.R. 66.[9] Specifically, the Court finds
as follows:

1. The MGA entities, MGAE and MGA HK, are domiciled in California, have
   their principal place of business in the Central District of California, and
   have the majority of their assets located within the Central District of
   California;

2. As the Court has previously found, the Bratz Assets (as defined below and
   in that order) are and have been the property of Mattel and not any of the
   MGA parties;

3. Good cause exists to believe that the MGA parties, defined as MGAE,
   MGA HK, and Isaac Larian, and each of them, have engaged in, are
   engaging in, or are about to engage in transactions, acts, practices and
   courses of business that constitute fraudulent transfers of assets and
   violations of Mattel's ownership and other rights in and to the Bratz Brand
   and Bratz Assets, as defined below;

4. Mattel has demonstrated the possibility of dissipation of assets and, from
   the entire record herein, it appears likely that the MGA parties, agents,

---

[9] The interim report of the Court-appointed Forensic Auditor recommends, for the reasons stated
in the report, the appointment of a Receiver. Although the report is fully consistent with the findings made
herein, the Court is not relying upon this recommendation, or the information set forth in the Forensic
Auditor's report, in making these findings because the parties have not yet had an opportunity to object or
otherwise respond to the report. The Court will consider the Forensic Auditor's report, and any objections
or responses thereto, in determining whether or not to extend the appointment of the Temporary Receiver
after the OSC hearing scheduled for May 18, 2009.

MINUTES FORM 90                                           Initials of Deputy Clerk __cls_____
CIVIL -- GEN                            16

EXHIBIT ___39___
PAGE ___871___

and related entities (as defined below) are engaged in a course of conduct with related parties designed to frustrate the Court's Orders, Findings and Injunction herein;

5. Good cause exists to believe that the MGA parties, agents, and related entities (as defined below) will continue to engage in such transactions, acts, practices, and courses of conduct and business to the immediate and irreparable loss and damage to Mattel, and contrary to the interests of justice, unless restrained and enjoined.

6. It is appropriate and in the interests of justice that, pursuant to L.R. 66, that a Temporary Receiver be appointed and that an Order to Show Cause be issued why a permanent receiver should not be appointed.

Accordingly, the Court **ORDERS** as follows:

1. Patrick A. Fraioli, Jr., is hereby appointed Temporary Receiver pursuant to L.R. 66 for the MGA entities to manage, supervise and oversee the assets of the MGA entities and the Bratz Brand and all Bratz Assets as these terms are defined herein (the "Temporary Receiver").

2. The Temporary Receiver is appointed and is hereby directed and ordered to take full and exclusive control over, and to manage, preserve, and maximize the profits of, the MGA entities and the Bratz Brand and Bratz Assets as of the date hereof, including, without limitation, by locating, taking possession and ownership of, preserving, protecting, managing, supervising and overseeing the Bratz Assets.

3. The Temporary Receiver is further directed to investigate the financial affairs of the MGA entities, and specifically investigate transfers and transactions made by the MGA entities from and after July 17, 2008.

4. The Temporary Receiver shall have the power to take any and all action which may be necessary, appropriate or advisable to effectuate the purposes of the Temporary Receivership, including, but not limited to, the power to:

   a. take custody, control and possession of the assets of the MGA entities and Bratz Assets in the possession, custody or control of the MGA entities, and/or any person or entity acting at their behest or direction or pursuant to their control, including, but not limited to, Isaac Larian and any successor-in-interest, subsidiary, corporate affiliate, agent, servant, attorney, accountant, officer, director, employee or other confederate (collectively, "the MGA parties,

MINUTES FORM 90
CIVIL -- GEN

17

Initials of Deputy Clerk __cls_____

EXHIBIT _____39_____

PAGE _____872_____

agents, and related entities") whether or not claimed to be encumbered by any security interest;

b.    preserve, hold and manage the assets of the MGA entities and the Bratz Assets and perform all acts necessary or advisable to preserve and/or enhance the value of these assets;

c.    exploit, license, distribute and sell the assets of the MGA entities and the Bratz Assets and products for profit, including, without limitation, by selling Bratz-branded dolls and other goods through appropriate channels of trade and distribution;

d.    market, promote and/or advertise the assets of the MGA entities and the Bratz Assets and/or Bratz-branded products;

e.    hire and employ individuals and entities as necessary or advisable to carry out the Temporary Receiver's mandate under this order;

f.    disburse funds as needed to satisfy and pay the reasonable and ordinary expenses incurred by the receivership, provided, however, that the Temporary Receiver shall maintain and shall not distribute, disburse or pay to anyone any receivership funds except as needed to satisfy the reasonable and ordinary expenses incurred by the receivership;

g.    open bank accounts in the name of the Temporary Receiver and transfer funds to, from and/or between those accounts;

h.    collect and maintain, and take all necessary or advisable actions to collect and maintain, monies owed by virtue of the sale, licensing, or other exploitation of the Bratz Assets;

i.    sell, compromise or assign debts for purposes of collection upon such terms and conditions as the Temporary Receiver deems necessary or advisable to carry out the Temporary Receiver's mandate under this order;

j.    enter into such agreements or contracts, and seek and enter into modifications to or amendments of such agreements and contracts, as the Temporary Receiver deems necessary or advisable to carry out the Temporary Receiver's mandate under this order;

k.    prepare, execute, acknowledge and deliver any and all deeds, assignments or other instruments necessary or advisable to carry

EXHIBIT ___*39*___

PAGE ___*873*___

out the Temporary Receiver's mandate under this Order;

l.    protect and preserve all Bratz-related intellectual property, including, without limitation, by commencing, prosecuting, and/or renewing intellectual property registrations and/or filings of any type and in any jurisdiction or forum;

m.    retain and/or engage the services of advisors and/or professionals, including, without limitation, accountants, attorneys, consultants and experts to assist the Temporary Receiver in carrying out the Temporary Receiver's mandate under this Order.  The Temporary Receiver, without further order of this Court, is authorized to employ Ervin, Cohen & Jessup LLP, Dr. Lynne Phillips and the firm of Reinventures, Inc., to assist the Temporary Receiver in carrying out the Temporary Receiver's mandate under this Order;

n.    retain and/or engage the services of vendors, suppliers, distributors and other persons and/or entities to assist the Temporary Receiver in carrying out the Temporary Receiver's mandate under this Order;

o.    record this Order in any jurisdiction;

p.    the Temporary Receiver may for any lawful purpose use any federal or state taxpayer identification number previously used by the MGA parties, agents, and related entities;

q.    take all actions the Temporary Receiver deems necessary or advisable to marshal, collect, preserve or protect the Bratz Assets, including, without limitation, the institution of inquiries and investigations into the conduct of any of the MGA parties, agents, and related entities to uncover concealed Bratz Assets and/or fraudulent conveyances and/or attempts to dispose of Bratz Assets;

r.    institute, defend, intervene in and/or substitute as, and/or otherwise become a party to any or all actions in local, state, federal or foreign courts, including, without limitation, bankruptcy court, and any other proceedings before any governmental tribunal or arbitration panels, and take any and all necessary or advisable steps and measures in such actions as necessary or advisable to carry out the Temporary Receiver's mandate under this Order; provided, however, notwithstanding the foregoing, the MGA parties have all the requisite authority to assert all rights in this ongoing litigation between Mattel and the MGA parties in this action and the Temporary Receiver shall not assert a position in such litigation,

MINUTES FORM 90
CIVIL -- GEN

19

Initials of Deputy Clerk __cls_____

EXHIBIT _____ *39* _____

PAGE _____ *874* _____

except insofar as the Court orders or invites the Temporary Receiver to do so; and,

s. perform such further and additional acts as the Temporary Receiver deems necessary or advisable to preserve the Bratz Assets, maximizing the profits derived therefrom, ensure the successful manufacture, delivery and marketing of Bratz-branded dolls and products for the spring and fall 2009 seasons and otherwise carry out the Temporary Receiver's mandate under this Order, including, without limitation, any acts which could be lawfully carried out by a corporation in the state of California.

5.　　　　The Temporary Receiver, the Temporary Receiver's employees and agents as well as any and all of the professionals employed by the Temporary Receiver, are entitled to compensation for services rendered at their normal hourly rates and reimbursement for all expenses incurred by them on behalf of the receivership estate. The Temporary Receiver shall serve written notice upon counsel of record for the parties of the amount to be paid to each payee, with an itemization of the services rendered or expenses incurred. Upon service of said notice, the itemized fees and expenses may be paid by the Temporary Receiver on an interim basis. In the event that extraordinary services are performed by the Temporary Receiver, he shall be entitled to extraordinary compensation according to proof and approval of this Court. All interim fees paid shall be subject to final review and approval by this Court. This Court retains jurisdiction to award a greater or lesser amount as the full, fair and final value of such services. In the event there are insufficient funds in the receivership estate to fully compensate the Temporary Receiver and his professionals, the Court retains jurisdiction to allocate the costs and expenses of this receivership against Mattel, as the party who sought the appointment of the Temporary Receiver, and/or Isaac Larian, as the principal owner and beneficiary of the MGA entities.

6.　　　　Upon service of a copy of this Order, all banks, broker-dealers, savings and loans, escrow agents, title companies, commodity trading companies, or other financial institutions shall cooperate with all reasonable requests of the Temporary Receiver regarding implementation of this Order, including transferring funds at his direction and producing records related to the assets of the MGA entities.

7.　　　　The Bratz Assets include all tangible or intangible assets, including,

MINUTES FORM 90
CIVIL -- GEN

20

Initials of Deputy Clerk __cls_____

EXHIBIT ___39_____

PAGE _____875_____

without limitation, all intellectual property necessary or materially useful for the design, manufacture, marketing, distribution and sale of any Bratz doll or other Bratz-branded product in the possession, custody or control (whether or not claimed to be encumbered by any security interest) of any of the MGA parties, agents, and related entities.  The Bratz Assets include, without limitation:

a.   All Bratz-related intellectual property rights, including, without limitation, copyrights (whether or not registered); copyright registrations; moral rights; design rights; patents (issued and pending); service marks; trademarks; trade dress; designs; slogans; characters; product packaging in any medium; product names; product illustrations; product designs; product concepts; conceptual drawings; engineering drawings; engineering specifications; processes; methods; trade secrets; know-how; product ideas; prototypes; line extensions; domain names; marketing and advertising materials; commercials; style guides; theme songs; soundtracks; scripts; screenplays; computer programming; digital and internet rights; video games; theatrical, television, video and DVD rights and masters; and rights in future technologies.

b.   All Bratz-related tooling for all past, current and future lines, including without limitation tools, tooling, in process tools, molds, sculptures, models, dies, and mock-ups, as well as other Bratz-related tangible items.

c.   All Bratz-related marketing and sales assets for all past, current and future lines, including, without limitation, consumer lists, marketing plans, account plans, focus group studies, marketing databases, and other consumer and marketing research.

d.   All Bratz-related records, including, without limitation, contracts, manufacturing records, inventory records and data, sales records and data, product testing data and records, vendor list and records, customer communications, and invoices and purchase orders.

e.   All Bratz-related contracts and agreements, including, without limitation, assignments, work-for-hire agreements and licensing agreements.

f.   All other Bratz-related rights, including, without limitation, distribution rights, licensing rights, exploitation rights, accounts receivable, and all choses in action relating to Bratz or the Bratz

MINUTES FORM 90
CIVIL -- GEN                                    21                    Initials of Deputy Clerk __cls_____

EXHIBIT _____39_____

PAGE _____876_____

brand.

g.   All Bratz-related items referenced at Paragraph 3 and Paragraph 8 (at lines 15-19) of the Court's Order granting Mattel's Motion for Permanent Injunction (docket #4443).

8.   The Temporary Receiver shall hereby be vested with, and is authorized, directed and empowered to exercise, all of the rights, powers or authorizations of the MGA entities, their officers, directors, general partners or persons who exercise similar powers and perform similar duties, including without limitation the sole authority and power to file or cause to be filed any suit or action in any court or arbitration tribunal other than this court, and filing, or causing to be filed, a petition for relief under the United States Bankruptcy Code, 11 U.S.C. § 101 et seq. for the MGA entities, their officers, agents, employees, representatives, directors, successors-in-interest, attorneys in fact and all persons acting in concert or participating with them are hereby divested of, restrained, enjoined, and barred from exercising, any of the rights, powers or authorities vested herein in the Temporary Receiver, including but not limited to filing, or causing to be filed, any suit or action in any court or arbitration tribunal other than this court, and/or filing, or causing to be filed, a petition for relief under the United States Bankruptcy Code, 11 U.S.C. § 101 et seq. for the MGA entities, except as otherwise specified herein or by further order of this Court.

9.   As set forth above, the Court leaves undisturbed the stay set forth in the Court's January 7, 2009, Order.  Moreover, the stay is hereby supplemented (a) to enable the Temporary Receiver to take the actions specified herein, and (b) to permit retailers who receive Bratz products pursuant to the authority of the Temporary Receiver, and who pay the Temporary Receiver monies due and owing for such Bratz products, to not remove such products from the shelves until January 10, 2010, at which time the mandatory provisions of Paragraphs 4, 6 and 7 of the Court's December 3, 2008, Order granting Mattel's Motion for Permanent Injunction (docket #4443) shall become effective as to such retailers.  The supplemental stay provisions shall not eliminate, alter or amend the obligations of any retailer, distributor, seller or other person or entity, including, without limitation, the MGA parties, who do not meet the foregoing requirements, to earlier recall or earlier obtain the recall of Bratz products as required by the mandatory provisions of Paragraphs 4, 6 and 7 the Court's Order granting Mattel's Motion for Permanent Injunction (docket #4443).  The supplemental stay provisions shall not apply to permit, enable or authorize enjoined conduct by any enjoined party, except as to actions taken by the Temporary Receiver and/or any

EXHIBIT _____ **39** _____

PAGE _____ **877** _____

authorized agents working for and under the auspices of the Temporary
Receiver pursuant to the terms of this Order.

10.   Additional Provisions.

    a.    In the event that any person or entity or fails to refuses to deliver or
transfer any of the assets of the MGA entities or Bratz Assets or
otherwise fails to comply with any provision of this Order, the
Temporary Receiver is instructed to file ex parte an affidavit setting
forth the failures.  Upon the filing of such affidavit, the Court may
authorize repossession or sequestration or other equitable relief as
requested by Temporary Receiver.

    b.    The Temporary Receiver shall maintain and shall not disburse,
distribute or pay anyone any receivership funds or proceeds earned
from exploitation of Bratz-branded dolls and products except as
needed to satisfy the reasonable and ordinary cost and expenses
incurred by the receivership.

    c.    The Temporary Receiver shall have the status of officers and
agents of this Court, and as such shall be vested with the same
immunities as vested with this Court.  Neither the Temporary
Receiver nor any person or entity acting at the direction of the
Court or pursuant to agreements with the Temporary Receiver
(whether employees, vendors, contractors or otherwise) may be
held liable to the MGA parties whether for claims of alleged
copyright infringement, trademark infringement, or other alleged
causes of action for any acts taken in good faith in compliance with
this Order.

    d.    During the course of the receivership, and pending further order of
the Court, the MGA parties shall not have any right, title, or interest
and/or power as to the Bratz Assets or Bratz brand.  All ownership
of all Bratz Assets, Bratz Brands and Bratz-related copyrights and
other intellectual property are hereby vested in the Temporary
Receiver and the MGA parties are divested of all such ownership.
Nothing herein shall alter or affect the right of Mattel to take any
and all actions relating to the Bratz Assets or the Bratz brand which
it otherwise lawfully could take, including, without limitation, the
institution, maintenance and prosecution of legal proceedings
anywhere in the world or other proceedings before any
governmental or tribunal or arbitration panel.

    e.    Effective as of the date of this Order, the MGA parties, agents, and

MINUTES FORM 90
CIVIL -- GEN

            23

Initials of Deputy Clerk __cls_____

EXHIBIT _____*39*_____

PAGE _____*878*_____

related entities shall turn over to the Temporary Receiver any and all revenues they receive or obtain relating to the MGA entities and Bratz in any manner and for any reason, including, without limitation, in connection with any sale, distribution and/or licensing thereof. These revenues shall not be released pending further order of the Court. The MGA entities shall account for all such revenues and interest paid thereon, and shall present to the Court, the Temporary Receiver and Mattel reports reflecting such accounting every ten days, commencing ten days from the date of this Order.

f.  To the extent that the proceeds are insufficient at any point to fund the cost of the receivership, the MGA entities are ordered to provide the Temporary Receiver with such additional funds as the Temporary Receiver requires to accomplish the purposes of the receivership.

g.  The Court shall retain jurisdiction over the receivership for the duration of its existence.

h.  No bond shall be required in connection with the appointment of the Temporary Receiver. Except for acts of gross negligence, the Temporary Receiver, and his agents and employees shall not be liable for loss or damage incurred by the MGA entities, its officers, agents, servants, employees, attorneys or others by virtue of any act performed or omitted to be performed by the Temporary Receiver in connection with the discharge of his duties and responsibilities.

i.  It is further ordered that no officer, director, agent, servant, employee or attorney of the MGA entities shall take any action in the name of or on behalf of the MGA entities before any court of any jurisdiction without the prior written consent of the Temporary Receiver or Order of the Court. However, notwithstanding the foregoing, nothing herein shall be deemed to deny the MGA parties the right to appeal from the Order Granting Preliminary Injunction or this Order. Moreover, this provision is subject to the right of the MGA parties with respect to the current litigation, as set forth in ¶ 4.r.

j.  In light of the appointment of a Temporary Receiver, the MGA entities, their officers, directors, agents, employees and attorneys are hereby prohibited from filing, or causing to be filed, a petition for relief under the United States Bankruptcy Code, 11 U.S.C. §§ 101

MINUTES FORM 90
CIVIL -- GEN

24

Initials of Deputy Clerk __cls_____

EXHIBIT _____ *39*

PAGE_____ 879

et seq. for the MGA entities without prior permission of this Court.

k.  The MGA entities are ordered to cooperate fully with the Temporary Receiver, including without limitation providing all   financial and other documentation requested by the Temporary Receiver.

l.  The Temporary Receiver is authorized to contact the Court-appointed Forensic Auditor, Ronald Durkin, and may utilize the findings and conclusions reached by Mr. Durkin as the Temporary Receiver deems appropriate.

m.  The Temporary Receiver is hereby ordered and directed to prepare and provide to this court a report setting forth preliminary conclusions, findings and recommendations in accordance with the schedule set forth below.

11.  Order to Show Cause. All interested parties, and any interested creditor, shall appear before this Court on Monday, May 18, 2009, at 2:00 p.m. to show cause, if there be any, why a permanent receiver should not be appointed in the same scope and manner as the Court's appointment of the Temporary Receiver. Any declarations, affidavits, points and authorities or other submissions in support of, or in opposition to, the appointment of a Permanent Receiver shall be filed with the Court and served on all parties no later than May 14, 2009.

12.  Pursuant to L.R. 66-4, Mattel is **ORDERED** to cause this Order to be served on all known creditors of the MGA entities within three days of the date of this Order.

13.  The Temporary Receiver shall file a report and recommendation concerning all actions taken as well as recommendations for further action no later than Monday, May 11, 2009. This report shall be filed with the Court and served on all parties.

IT IS SO ORDERED THIS 27th DAY OF APRIL, 2009

STEPHEN G. LARSON
UNITED STATES DISTRICT JUDGE

MINUTES FORM 90
CIVIL -- GEN

25

Initials of Deputy Clerk __cls_____

EXHIBIT _____39_____

PAGE _____880_____

Tiffany Garcia

| | |
|---|---|
| From: | Cyrus Naim |
| Sent: | Monday, April 27, 2009 4:37 PM |
| To: | MGA / Bryant Team |
| Subject: | FW: Activity in Case 2:04-cv-09049-SGL-RNB Carter Bryant v. Mattel Inc Order on Motion for Judgment as a Matter of Law |
| Attachments: | Final Order.pdf |

Final order on Phase 1 issues. We have a temporary receiver.

From: cacd_ecfmail@cacd.uscourts.gov [cacd_ecfmail@cacd.uscourts.gov]
Sent: Monday, April 27, 2009 4:12 PM
To: ecfnef@cacd.uscourts.gov
Subject: Activity in Case 2:04-cv-09049-SGL-RNB Carter Bryant v. Mattel Inc Order on Motion for Judgment as a Matter of Law

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.
***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

Notice of Electronic Filing

The following transaction was entered on 4/27/2009 at 4:12 PM PDT and filed on 4/27/2009
Case Name:      Carter Bryant v. Mattel Inc
Case Number:    2:04-cv-9049
Filer:
Document Number: 5273
Docket Text:
MINUTES (IN CHAMBERS): ORDER DENYING MATTELS MOTION FOR JUDGMENT AS A MATTER OF LAW (DOCKET #4498); ORDER GRANTING IN PART AND DENYING IN PART MGASMOTION FOR JUDGMENT AS A MATTER OF LAW (DOCKET #4496); ORDER AMENDING IN PART ORDER RE FINDING OF LIABILITY PURSUANT TO CAL. BUS. & PROFS. CODE § 17200(DOCKET #4441); ORDER GRANTING IN PART AND DENYING IN PART MGAS MOTION FOR REMITTITUR (DOCKET #4495, #4523); ORDER LIFTING STAY ON PERMANENT INJUNCTION (DOCKET #4443); ORDER FOR ACCOUNTING OF PROFITS OF BRATZ PRODUCTS ORDER REGARDING RETRIEVAL OF PREVIOUSLY LODGED by Judge Stephen G. Larson: [4496][4498][4523]. Patrick A. Fraioli, Jr., is hereby appointed Temporary Receiver pursuant toL.R. 66 for the MGA entities to manage, supervise and oversee the assetsof the MGA entities and the Bratz Brand and all Bratz Assets (as theseterms are defined herein (the "Temporary Receiver"). All interested parties, and any interested creditor, shall appear before this Court on Monday, May 18, 2009, at 2:00 p.m. to show cause, if there be any, why a permanent receiver should not be appointed in the same scope and manner as the Courts appointment of the Temporary Receiver. The Temporary Receiver shall file a report and recommendation concerning all actions taken as well as recommendations for further action no later than Monday, May 11, 2009. This report shall be filed with the Court and served on all parties. (am)

2:04-cv-9049 Notice has been electronically mailed to:

Joel N Klevens    jklevens@glaserweil.com

Patricia L Glaser    pglaser@glaserweil.com

John B Quinn    johnquinn@quinnemanuel.com

Russell J Frackman    rjf@msk.com;krs@msk.com,rbs@msk.com,mcm@msk.com,phb@msk.com,jpn@msk.com

Jeffrey B Valle    jvalle@valleassociates.com

Jerome B Falk    jfalk@howardrice.com

Todd E Gordinier
todd.gordinier@bingham.com,julie.valenzuela@bingham.com,craig.taggart@bingham.com,michael.mortenson@bingham.com,lan.ly@bingham.com,karina.ward@bingham.c

Randa A F Osman    randaosman@quinnemanuel.com

Patricia H Benson    phb@msk.com,mxb@msk.com

David C Scheper    dscheper@obsklaw.com,feseroma@obsklaw.com_sumry

Alisa Morgenthaler Lever    amorgenthaler@chrisglase.com

Larry W McFarland    lmcfarland@kmwlaw.com

Robert C O'Brien    obrien.robert@arentfox.com

Raoul D Kennedy    rkennedy@skadden.com

Mark E Overland    moverland@obsklaw.com

Thomas J Nolan    tnolan@skadden.com,carl.roth@skadden.com,marcus.mumford@skadden.com

Emil W Herich    eherich@kmwlaw.com

Jason D Russell    jrussell@skadden.com,allison.velkes@skadden.com_sumry

Jean P Nogues    jpn@msk.com

EXHIBIT _____ **39**

PAGE _____ **881**

4/27/2009

Sandra L Tholen    tholen@caldwell-leslie.com,mejia@caldwell-leslie.com,wilson@caldwell-leslie.com

Nicole S Pelletier    npelletier@glaserweil.com

Jon D Corey    joncorey@quinnemanuel.com

Caroline H Mankey    cmankey@glaserweil.com

Douglas Andrew Winthrop    dwinthrop@howardrice.com

Michael T Zeller    michaelzeller@quinnemanuel.com

Linda M Burrow    burrow@caldwell-leslie.com,wilson@caldwell-leslie.com,popescu@caldwell-leslie.com_sumry

Amman A Khan    akhan@glaserweil.com

Peter N Villar    peter.villar@bingham.com,paul.mcconnell@bingham.com

Diane C Hutnyan    dianehutnyan@quinnemanuel.com,andreshoeven@quinnemanuel.com

Kenneth A Plevan    kenneth.plevan@skadden.com,drogosa@skadden.com,sumclaup@skadden.com

Alexander H Cote    scote@obsklaw.com,feseroma@obsklaw.com

Marina Vladimir Bogorad    marina.bogorad@skadden.com

Brett Dylan Proctor    dylanproctor@quinnemanuel.com,westonreid@quinnemanuel.com

Sophia S Lau    slau@glaserweil.com

Stan Karas    stankaras@quinnemanuel.com,gayleduran@quinnemanuel.com,westonreid@quinnemanuel.com

Richard Giles Stoll    rstoll@glaserweil.com

Scott E Gizer    sgizer@glaserweil.com

David W Hansen    dhansen@skadden.com

Robyn Aronson    robynaronson@dwt.com,frankromero@dwt.com

Oleg Stolyar    alexstolyar@quinnemanuel.com,rlorch@bwgfirm.com

Jennifer A Lopez    jennifer.lopez@bingham.com

Christian C Dowell    cdowell@kmwlaw.com

Cyrus S Naim    cyrusnaim@quinnemanuel.com

Leah Chava Gershon    leah@spertuslaw.com

Adil M Khan    amkhan@glaserweil.com

Michael P Kelly    mikelly@skadden.com

David W Foster    david.foster@skadden.com

Sanford I Weisburst    sandyweisburst@quinnemanuel.com

Ilan Wisnia    iwisnia@valleassociates.com

**2:04-cv-9049 Notice has been delivered by First Class U. S. Mail or by fax to: :**
Kien C Tiet
Stern and Goldberg
6345 Balboa Boulevard, Suite 200
Encino CA 91316

Cheryl Plambeck
Davis & Gilbert LLP
1740 Broadway
New York NY 10019
US

Amy R Sabrin
Skadden Arps Slate Meagher & Flom LLP
1440 New York Avenue NW
Washington DC 20005-2111
US

Peter H Bonis
Peter H. Bonis Law Offices
1990 N. California Blvd, 8th Floor
Walnut Creek CA 94596
US

4/27/2009

EXHIBIT _____39_____

PAGE _____882_____

EXHIBIT _____ 39

PAGE _____ 883

4/27/2009

# EXHIBIT 40

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 41

1   Robert C. O'Brien (SBN 154372)
    ARENT FOX LLP
2   555 West Fifth Street, 48th Floor
    Los Angeles, CA  90013-1065
3   Telephone:  213.629.7400
    Facsimile:   213.629.7401
4   obrien.robert@arentfox.com

5   Discovery Master

6

7

8                 UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                     EASTERN DIVISION

11

12   CARTER BRYANT, an individual,    Case No.  CV 04-09049 SGL (RNBx)

13                 Plaintiff,
                                      Consolidated with
14          v.                        Case No. CV 04-09059
                                      Case No. CV 05-2727
15   MATTEL, INC., a Delaware
     corporation,                     **PHASE 2 DISCOVERY MATTER**
16
                   Defendant.         **ORDER NO. 11, REGARDING:**
17
                                         **(1)  MOTION OF MATTEL, INC.
18                                       TO COMPEL RESPONSES TO
                                         INTERROGATORIES AND
19                                       PRODUCTION OF DOCUMENTS
                                         BY MGA ENTERTAINMENT, INC.
20                                       AND ISAAC LARIAN; and**

21                                       **(2)  MOTION OF MATTEL, INC.
                                         TO COMPEL THE DEPOSITIONS
22                                       OF PABLO VARGAS AND
                                         MARIANA TRUEBA**
23

24   CONSOLIDATED WITH
     MATTEL, INC. v. BRYANT and
25   MGA ENTERTAINMENT, INC. v.
     MATTEL, INC.
26

27

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES                                          ORDER NO. 11
                                          [Case No. CV 04-09049 SGL (RNBx)]

                         EXHIBIT ____41____

                         PAGE ____914____

1      This Order sets forth the Discovery Master's ruling on two motions filed by

2  Mattel, Inc. ("Mattel"): (1) a motion to compel responses to interrogatories and

3  production of documents by MGA Entertainment, Inc. ("MGA") and Isaac Larian

4  ("Larian") [Docket No. 4817] (the "Written Discovery Motion"), and (2) a motion

5  to compel the depositions of Pablo Vargas and Mariana Trueba [Docket No. 4799]

6  (the "Deposition Motion") (collectively, the "Motions").

7      The Motions came on regularly for hearing before the Discovery Master on

8  March 19, 2009.  All interested parties were represented by counsel and afforded

9  the opportunity to present oral argument on the Motions.  The Discovery Master,

10  having considered the papers filed in support of and in opposition to the Motions,

11  and having heard oral argument, rules as set forth below.

12  **I.**    **MATTEL'S WRITTEN DISCOVERY MOTION**

13      In its Written Discovery Motion, Mattel seeks to compel MGA to produce

14  documents responsive to 40 separate document requests[1] and provide answers to 12

15  different interrogatories.  (Separate Statement in Support of the Written Discovery

16  Motion, pp. 1 – 41 and 45 – 102).  Mattel further seeks to compel Larian to produce

17  documents responsive to 3 separate document requests and provide answers to 11

18  different interrogatories.[2]  (*Id.*, pp. 41 – 43 and 49 – 102).

19     **A.**   **Document Requests**

20          **1.**    **Document Requests Propounded On MGA**

21      Document Request Nos. 4 through 37 seek financial information from MGA

22

23  [1] Although Mattel purports to compel responses from MGA to Document Request Nos. 4 – 37 and 40 – 45 in its Written Discovery Motion, its Separate Statement does not reference Request for Production No. 42, mislabels

24  Document Request Nos. 43, 44 and 45 (as requests numbered 42, 43 and 44, respectively) and includes Document Request No. 46 (incorrectly numbered as request 45).  (*Compare* Separate Statement in Support of the Written

25  Discovery Motion at pp. 37 – 40 with the Declaration of Scott L. Watson in Support of the Written Discovery Motion ("Watson Decl."), Ex. 1 at pp. 13 and 14).  Because Mattel has in reality moved to compel responses to Document

26  Requests Nos. 4 – 37, 40, 41, and 43 – 46, the Discovery Master's ruling addresses only those requests – not Document Request No. 42.  Moreover, any reference to a document request relating to MGA in this Order shall refer

27  to the actual number of the document request as set forth in Mattel's Second Set of Requests for Production of Documents and Things to MGA dated June 6, 2007 (attached to the Watson Decl. as Exhibit 1).

28  [2] The 11 interrogatories propounded on Larian are the same as 11 of the 12 interrogatories at issue regarding MGA.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 1 -         ORDER NO. 11
             [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____41_____

PAGE _____915_____

1   related to sales, revenues, costs, profits, customer returns, customer rebates and

2   customer credits regarding the Bratz Dolls or Bratz Product,[3] as well as documents

3   sufficient to identify customers who purchased any Bratz Product from MGA or its

4   licensees. (Watson Decl., Ex. 1 at pp. 7 – 12).

5       Document Request Nos. 43, 44 and 46 similarly seek financial information

6   from MGA related to the Bratz product line:

7       • Document Request No. 43 (erroneously numbered in Mattel's Separate

8         Statement as request number 42): "All sales, profit and cash flow

9         projections or forecasts for BRATZ DOLLS, BRATZ PRODUCTS,

10        BRATZ MOVIES, and BRATZ TELEVISION SHOWS." (Id., p. 13).

11      • Document Request No. 44 (erroneously numbered in Mattel's Separate

12        Statement as request number 43): "All DOCUMENTS that REFER

13        OR RELATE TO the value of the Bratz brand." (Id.).

14      • Document Request No. 46 (erroneously numbered in Mattel's Separate

15        Statement as request number 45): "All DOCUMENTS that evidence,

16        reflect, REFER OR RELATE TO the BRATZ DOLL's share of the

17        fashion doll market, including, without limitation, the extent to which

18        Bratz has been or is gaining or losing market share in the fashion doll

19        market." (Id., p. 14).

20      Document Request Nos. 40, 41 and 45, on the other hand, seek financial

21   information from MGA as a whole, not just financial data limited to the Bratz Dolls

22   or Bratz Product:

23      • Document Request No. 40: "All DOCUMENTS that describe YOUR

---

[3] Mattel defines the term "Bratz Product" as follows:
     'Bratz Product' means any product whether two-dimensional or three-dimensional,
     and whether in tangible, digital or electronic or other form: (i) that is or has ever
     been distributed, marketed or sold under the name 'Bratz' or as part of the 'Bratz'
     line; (ii) that depicts, incorporates, embodies consists of or REFERS OR RELATES
     TO BRATZ; and/or (iii) that is or has ever been distributed, marketed or sold in any
     packaging that includes the name 'Bratz' or depicts, incorporates, embodies, consists
     of or REFERS OR RELATES TO BRATZ.
(Watson Decl., Ex. 1 at p. 3; see also id., Ex. 4 at p. 7).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 2 -

ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ____41____

PAGE ____916____

1    cost allocation procedures." (*Id.*, p. 13).

2    • Document Request No. 41: "YOUR general ledgers from January 1,
3       1995 through the present." (*Id.*).

4    • Document Request No. 45 (erroneously numbered in Mattel's Separate
5       Statement as request number 44): "DOCUMENTS sufficient to
6       calculate YOUR net worth on a yearly basis for each year from 1999
7       to the present." (*Id.*).

8       **2.    Document Requests Propounded On Larian**

9       The three document requests propounded on Larian (i.e., Documents Request
10   Nos. 207, 208 and 269) seek information regarding all of Larian's earnings and
11   bank accounts:

12   • Document Request No. 207: "DOCUMENTS sufficient to IDENTIFY
13      each account with any bank or financial institution that YOU have or
14      have had, or that YOU have or have had any legal or beneficial interest
15      in, since January 1, 1999." (Watson Decl., Ex. 4 p. 51).

16   • Document Request No. 208: "Documents sufficient to establish
17      YOUR gross income, and the sources of that gross income, for the
18      years 1999 through the present, inclusive." (*Id.*, p. 52).

19   • Document Request No. 269: "DOCUMENTS sufficient to calculate
20      YOUR net worth on a yearly basis for each year from 1999 to the
21      present." (*Id.*, p. 63).

22      **3.    Phase 1 Rulings**

23      This is not the first time that Mattel has moved to compel responses to the

24   document requests at issue.  Mattel previously filed two motions to compel that

25   asked the former discovery master to compel MGA and Larian (collectively, the

26   "MGA Parties") to, among other things, respond to the same 43 document requests

27   in dispute here. (Watson Decl., Exs. 2 and 7).  The prior discovery master granted

28   both motions (at least as they relate to the document requests that are the subject of

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 3 -

ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___41___
PAGE ___917___

1   the present dispute). (*Id.*, Ex. 3 at pp. 1 – 3; *Id.*, Ex. 8 at pp. 15 and 16).

2         Because the prior discovery master compelled MGA to produce information

3   responsive to Document Request Nos. 4 – 37, 40, 41 and 43 – 46, and directed

4   Larian to produce information responsive to Document Request Nos. 207, 208 and

5   269, Mattel argues (1) that the MGA Parties have a duty under Federal Rule of

6   Civil Procedure 26 to supplement their prior productions, and (2) that the

7   information the MGA Parties "are withholding is relevant to the damages Mattel

8   seeks," (Written Discovery Motion, pp. 8 – 9).

9         **4.     Objections Of MGA**

10        In their Opposition, the MGA Parties rely on two grounds for refusing to

11   supplement their prior document productions regarding Document Request Nos. 4 –

12   37, 40, 41, 43 – 46, 207, 208 and 269.  First, the MGA Parties argue that Mattel

13   failed to meet and confer in good faith. (Opposition, pp. 3 – 5). Second, the MGA

14   Parties argue that the requested information is not relevant to the claims and

15   defenses at issue in Phase 2. (*Id.*, 5 – 7).

16        **a.     Purported Failure To Meet And Confer**

17        Because it could dispose of the outstanding discovery issues related to the

18   document requests that are the subject of the present dispute, the Discovery Master

19   first addresses the MGA Parties' argument that Mattel failed to meet and confer

20   properly prior to filing its Written Discovery Motion.

21        The MGA Parties argue that Mattel's motion to compel should be denied

22   because Mattel failed to comply with the meet and confer requirements of Local

23   Rule 37-1. (*Id.*, pp. 3 – 5). As the Discovery Master has previously ruled,

24   however, Local Rule 37 (as distinguished from Federal Rule 37) does not apply to

25   discovery disputes in this case.  The applicable meet and confer procedures are set

26   forth in the Court's order appointing a discovery master dated December 6, 2006

27   ("Discovery Master Order") and in the Federal Rules of Civil Procedure, (Fed. R.

28   Civ. Proc. 37(a); Discovery Master Order, p. 4), the latter of which expressly

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 4 -

ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____41_____

PAGE _____918_____

1  requires that, before filing a motion to compel, the moving party must meet and

2  confer in "good faith." (Fed. R. Civ. Proc. 37(a)).

3       Because Rule 37 and the Discovery Master Order govern the meet and confer

4  process in this case, the Discovery Master construes the MGA Parties' meet and

5  confer argument in light of the good faith requirement embedded in Rule 37. The

6  MGA Parties claim that Mattel did not meet and confer in good faith because its

7  counsel sent them "a meet and confer letter inviting [them] to further meet and

8  confer on February 11, 2009" and then filed a motion to compel one "day before

9  the proposed meet and confer session" was scheduled to occur (i.e., on February 10,

10 2009). (Opposition, pp. 3 – 5; *see also* Declaration of Amman Khan, Ex. H at p. 2

11 [wherein Mattel's counsel asked counsel for the MGA Parties to "be in a position to

12 provide us with MGA and Larian's position by Wednesday, February 11, 2009."]).

13 However, the record available to the Discovery Master demonstrates that Mattel

14 made several prior attempts to meet and confer with the MGA Parties, including

15 engaging in the following:

16       • On January 6, 2009, Mattel's counsel sent a letter demanding that the

17         MGA Parties supplement their production concerning the document

18         requests by February 1, 2009, (Watson Decl., Ex. 17);

19       • Counsel for the MGA Parties never responded to Mattel's January 6,

20         2009 letter, (Written Discovery Motion, p. 6);

21       • Counsel for Mattel sent counsel for the MGA Parties a second copy of

22         the January 6, 2009 letter on February 5, 2009, (Watson Decl., Ex. 30);

23       • Counsel for Mattel and counsel for the MGA Parties then spoke on

24         February 6, 2009, and were supposed to discuss, among other things,

25         the document requests at issue, but counsel for the MGA Parties was

26         not prepared to discuss the requests at the appointed time, (Watson

27         Decl., ¶ 22); and

28       • Counsel for Mattel and the MGA Parties then spoke *again* on February

EXHIBIT ____41____

PAGE ____919____

1        9, 2009 to discuss the document requests but counsel for the MGA

2              Parties was still not prepared to discuss the issues, (*Id*.).

3        In light of foregoing facts (which are not disputed by the MGA Parties), it is

4   clear that Mattel satisfied Rule 37's "good faith" meet and confer requirement.  The

5   plain language of Federal Rule of Civil Procedure 37(a)(1) permits a party to "move

6   for an order compelling . . . discovery . . . [if] the movant has in good faith

7   conferred or *attempted to confer* with the" the non-moving party." (Fed. R. Civ. P.

8   37(a) [emphasis added]).  Because it attempted to meet and confer with counsel for

9   the MGA Parties on at least two occasions (but was unable to do so because the

10  MGA Parties were not prepared to meet and confer during either of the agreed upon

11  times), Mattel satisfied its meet and confer obligations under Rule 37.[4]

12              **b.    Relevance Of The Document Requests To Phase 2**

13       The MGA Parties also oppose Mattel's demand for a supplemental

14  production on the ground that none of the document requests as issue seek

15  information reasonably calculated to lead to the discovery of admissible evidence.

16  (Opposition, pp. 5 – 7).

17              **(1)    Document Request Nos. 207, 208 And 269**

18       With respect to the three document requests directed to Larian (i.e.,

19  Document Request Nos. 207, 208 and 269), the Opposition contends that they are

20  not relevant to any Phase 2 claims.  (Opposition, p. 6).

21       Each of the requests seeks information related to Larian's financial condition,

22  Mattel's damages, and/or whether the facts alleged in Mattel's Second Amended

23  Answer and Counterclaim ("SAAC") are true.  For example, Document Request

---

[4] The Discovery Master's ruling is also supported by the fact that the MGA Parties refused to produce any of the requested information following the filing of the Written Discovery Motion.  It is, therefore, unclear what could have been accomplished by an additional meet and confer on these issues.  Moreover, Mattel's counsel stated at oral argument that they met with MGA's counsel again on February 11, 2009 regarding the document requests and they still "had no answer to this question." (Transcript of March 19, 2009 hearing before the Discovery Master ("Tr.") p. 68:7-9).  Regardless, Mattel attempted to meet and confer twice before filing its current motion to compel (i.e., on February 6 and 9, 2009) and that is all that is required by the Federal Rules of Civil Procedure and the discovery procedures governing this case.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 6 -                                    ORDER NO. 11
                                [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___41___

PAGE ___920___

1  Nos. 208 and 269 seek documents sufficient to identify Larian's net worth (Request

2  No. 269) and gross income (Request No. 208).  Such information relates to Phase 2

3  damages issues, including, among other things, damages sought against Larian in

4  connection with Mattel's unfair competition cause of action as well as the

5  calculation of Larian's net worth for purposes of litigating the propriety of any

6  "exemplary damages under Cal. Civ. Code § 3294."[5]  (SAAC, ¶¶ 163 – 166).  It is

7  therefore discoverable.

8      In its SAAC, Mattel also alleges that MGA, Larian and others hired former

9  Mattel's employees for the express purpose of misappropriating Mattel's

10 confidential and proprietary information, and that the MGA Parties promised such

11 individuals increased salaries at MGA. (*See, e.g.,* SAAC, ¶¶ 69 and 77). Mattel's

12 request for documents sufficient to identify Larian's bank accounts (i.e., Request

13 No. 207) is, therefore, reasonably calculated to lead to the discovery of admissible

14 evidence regarding the source of any payments that may have been made by Larian

15 to former Mattel employees.[6]

16                (2)    **Document Request Nos. 4 – 37, 40, 41 And 43 –**

17                        **46**

18     Regarding the requests directed to MGA (i.e., Document Request Nos. 4 –

19 37, 40, 41 and 43 – 46), MGA argues that they are improper because they seek

20 financial information "related to Bratz dolls, which was a Phase 1 issue,"

21 (Opposition, p. 5).  Specifically, the MGA parties argue that:

22         [a]ny claim by Mattel that it needs [supplemental] Bratz-

23 ─────────────────────────────────────────

24 [5] While the Discovery Master agrees that Document Request Nos. 208 and 269 are relevant to Phase 2 issues, he
   concludes that Larian should not be required to provide updated information concerning his net worth and gross

25 income every few months.  Yet, Mattel is entitled to obtain this financial information at least once prior to the Phase
   2 trial so that it can assess the veracity of the information provided by Larian through the discovery process, question

26 deponents about the figures provided, and give the data to its experts.  Further, acquiring updated financial
   information from Larian is appropriate because his net worth and gross income could, in theory, have been altered by

27 the verdict rendered in Phase 1 or recent economic conditions.

   [6] Any imposition resulting from Document Request No. 207 should be minimal because Larian was ordered to

28 produce documents identifying his bank accounts as part of Phase 1.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

                                          - 7 -                    ORDER NO. 11
                                                          [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____41_____

PAGE _____921_____

1           related financial information in order to establish its Phase

2           2 damages ignores the jury's Phase 1 damages award . . . .

3           Mattel sought disgorgement of all Bratz profits during

4           Phase 1 and the jury made its award.  Mattel may not

5           relitigate this issue in Phase 2.

6   (*Id.*, p. 6).

7      However, Document Request Nos. 40, 41 and 45[7] make no mention of

8   financial information related to the Bratz Dolls or Bratz Product.  They instead seek

9   (1) "All DOCUMENTS that describe [MGA's] cost allocation procedures,"

10   (Watson Decl., Ex. 1 at p. 13), (2) MGA's "general ledgers from January 1, 1995

11   through the present," (*id.*), and (3) "DOCUMENTS sufficient to calculate [MGA's]

12   net worth on a yearly basis for each year from 1999 to the present," (*id.*).

13   Therefore, MGA's argument does not apply to these document requests.

14      Document Request Nos. 40, 41 and 45 (erroneously numbered in Mattel's

15   Separate Statement as request number 44) are further reasonably calculated to lead

16   to the discovery of admissible evidence.  As the Discovery Master previously ruled,

17   the touchstone for determining whether a particular discovery request is reasonably

18   calculated to lead to the discovery of admissible evidence in this case is whether the

19   request bears some relation to the issues to be tried in Phase 2.  That standard is met

20   here, since MGA's general ledgers, net worth, and cost allocation procedures all

21   bear on Mattel's Phase 2 damages claims, including Mattel's claim for punitive

22   damages.

23      As for the remainder of the document requests directed to MGA (i.e.,

24   Document Request Nos. 4 – 37, 43,[8] 44,[9] and 46),[10] they are admittedly linked to

25      [7]  Document Request No. 45 is erroneously numbered in Mattel's Separate Statement as request number 44.

26      [8]  Document Request No. 43 is erroneously numbered in Mattel's Separate Statement as request number 42.

27      [9]  Document Request No. 44 is erroneously numbered in Mattel's Separate Statement as request number 43.

28      [10]  Document Request No. 46 is erroneously numbered in Mattel's Separate Statement as request number 45.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 8 -

ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT    **41**

PAGE    **922**

1    financial information related to the Bratz Dolls/Bratz Product.  While the Discovery

2    Master recognizes that many, if not all, of the issues related to the theft of the Bratz

3    Dolls as well as any damages that may be recoverable by Mattel relating to such

4    misconduct were litigated and resolved in Phase 1 that does not necessarily mean

5    the information sought by Mattel is irrelevant.

6            As an initial matter, the Court's December 3, 2008 order imposes a

7    constructive trust on the proceeds of MGA's sale of Bratz dolls.  Continued sale of

8    any such inventory is thus relevant to the Court's injunction and presumably must

9    be made available to Mattel on that basis alone.[11]

10           Document Request Nos. 4 – 37, 43 (erroneously numbered in Mattel's

11   Separate Statement as request number 42), 44 (erroneously numbered in Mattel's

12   Separate Statement as request number 43), and 46 (erroneously numbered in

13   Mattel's Separate Statement as request number 45) also relate to Mattel's Phase 2

14   claims.  The counterclaims to be litigated in Phase 2 (e.g., Mattel's RICO causes of

15   action, misappropriation of trade secrets claim, and unfair competition cause of

16   action) all incorporate by reference the allegation that "MGA first stole 'Bratz,' a

17   fashion doll, from Mattel, and then continued stealing Mattel's confidential and

18   proprietary information to fuel MGA's growth." (SAAC, ¶¶ 1, 88, 98, 106, and

19   163).  The SAAC later alleges that "[b]y engaging in the foregoing conduct, [MGA

20   has, among other things,] . . . engaged in unlawful, unfair or fraudulent business

21   act[s] or practice[s]" in violation of California Business and Professions Code

22   section 17200 *et seq.*  (SAAC, ¶ 165).  Therefore, in addition to the alleged

23   misappropriation of other trade secrets, Mattel's Phase 2 counterclaims at least

24   arguably include evidence relating to the purported theft of the Bratz Dolls as well.

25           Mattel's two RICO claims also both refer explicitly to a "Bratz Criminal

26

27   [11] MGA also has a continuing duty to supplement its production under the Federal Rules of Civil Procedure. (*See*
     Fed. R. Civ. P. 26(e)(1) ["A party who has . . . responded to . . . [a] request for production . . . must supplement or
28   correct its disclosure or response . . . in a timely manner").

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

                                            - 9 -                    ORDER NO. 11
                                                          [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___41___

PAGE ___923___

1   Enterprise." (SAAC, ¶¶ 89 and 100). The SAAC further expressly alleges that one
2   of the purported racketeering activities was the "altering [of] numerous original
3   Bratz drawings created by Bryant . . ." (SAAC, ¶ 93(c)(ii)). These allegations are
4   sufficient to render Document Request Nos. 4 – 37, 43, 44 and 46 reasonably
5   calculated to lead to the discovery of admissible evidence in Phase 2.

6       The Discovery Master cannot predict whether the Court will ultimately
7   construe Mattel's Phase 2 claims as broad enough to encompass MGA's alleged
8   misappropriation of the Bratz Dolls, or whether Mattel will be barred from
9   presenting any evidence that it has been damaged by such misconduct at the Phase
10  2 trial on the ground that the issue was previously litigated and resolved in Phase 1.
11  Given that the discovery here need only appear reasonably calculated to lead to the
12  discovery of admissible evidence concerning the Phase 2 claims, the Discovery
13  Master finds that the aforementioned document requests are sufficiently related to
14  Mattel's Phase 2 claims to be discoverable at this time.

15      **5.    Conclusion**
16      For all of the foregoing reasons, Mattel's motion to compel responses to
17  Document Request Nos. 4 – 37, 40, 41, 43 – 46 (erroneously numbered in Mattel's
18  Separate Statement as requests numbered 42 – 45), 207, 208 and 269 is granted.

19      **B.     Interrogatories Propounded On MGA And Larian**
20      The second part of Mattel's Written Discovery Motion addresses various
21  interrogatories propounded on the MGA Parties.

22          **1.     Interrogatory No. 45 Propounded On MGA**
23      Interrogatory No. 45 asks MGA[12] to:
24          IDENTIFY each BRATZ PRODUCT that has been
25          SOLD by [MGA] or [its] licensees and, for each such

26
27  _____
    [12] Although Interrogatory No. 45 was propounded on Larian as well, (*see* Watson Decl., Ex. 9), Mattel's Written
    Discovery Motion seeks an order compelling just "MGA TO SUPPLEMENT ITS RESPONSES TO
28  INTERROGATORY NO. 45." (Written Discovery Motion, p. 9:8-9 [emphasis omitted]).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 10 -                                    ORDER NO. 11
                                 [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ____**41**____

PAGE ____**924**____

1       BRATZ PRODUCT, state . . . (a) the number of units of

2       each such BRATZ PRODUCT SOLD by [MGA] or [its]

3       licensees, (b) the gross and net revenue received by

4       [MGA] from such SALES of each such BRATZ

5       PRODUCT, (c) all costs [MGA] incurred in connection

6       with each such BRATZ PRODUCT, including but not

7       limited to [MGA's] costs of goods sold, and (d) [MGA's]

8       gross and net profits from each such BRATZ PRODUCT.

9    (Separate Statement in Support of the Written Discovery Motion, p. 45; *see also*

10   Written Discovery Motion, p. 9).

11              **a.    Phase 1 Rulings**

12         As with the document requests discussed above, Mattel concedes that "MGA

13   identified and produced documents responsive to [Interrogatory No. 45] in

14   December 2007, and later supplemented th[at] production mid-trial . . ." (Written

15   Discovery Motion, p. 9). Nonetheless, Mattel argues that "MGA now . . . refuses to

16   supplement its response" without justification. (*Id.*)

17              **b.    Objections Of MGA**

18         In its Opposition, MGA argues that it does not have to provide the

19   information requested by Interrogatory No. 45 for two reasons. First, it claims that,

20   like the document requests propounded on MGA, "Mattel's entitlement to gross and

21   net profits from sales of Bratz products was an issue adjudicated in Phase 1, and

22   Mattel fails to explain how this discovery is relevant to or proper in Phase 2."

23   (Opposition, p. 7). The information sought by Interrogatory No. 45 is virtually

24   identical to the documents sought by Document Request Nos. 21 (requesting

25   "DOCUMENTS sufficient to show the number of units of each BRATZ

26   PRODUCT sold by [MGA] or [its] licensees"), 22 (requesting "DOCUMENTS

27   sufficient to show the revenue received by [MGA] from the sale of each BRATZ

28   PRODUCT sold by [MGA] or [its] licensees"), 23 (requesting "DOCUMENTS

EXHIBIT _____41_____

PAGE _____925_____

1   sufficient to show [MGA's] cost of goods sold, unit cost and other cost for each

2   BRATZ PRODUCT sold by [MGA] or [its] licensees"), and 24 (requesting

3   "DOCUMENTS that evidence, reflect or REFER OR RELATE TO [MGA's]

4   profits from the sale of each BRATZ PRODUCT sold by [MGA] or [its]

5   licensees"), discussed above. Accordingly, MGA's relevancy argument regarding

6   Interrogatory No. 45 is not persuasive for the same reasons discussed in Section

7   I.A.4.b.2 above, namely that the information is relevant to the constructive trust

8   imposed by the Court on the proceeds of MGA's sale of Bratz dolls and is also

9   arguably relevant to Mattel's Phase 2 claims.[13]

10          MGA also argues that it should not be required to provide the information

11   requested by Interrogatory No. 45 because it "has already provided information that

12   is current through the second fiscal quarter of 2008" and it would be unduly

13   burdensome to gather the documents necessary to update that information.

14   (Opposition, pp. 7 – 8). MGA did not argue, however, in its Opposition that it

15   would be unduly burdensome to respond to Document Request Nos. 21, 22, 23 and

16   24 discussed above in Section I.A.4.b.2. Therefore, MGA can gather the

17   documents responsive to those requests and refer Mattel to those materials. (*See*

18   Fed. R. Civ. P. 33(d) [If the answer to an interrogatory may be determined by

19   examining . . . a party's business records . . . the responding party may answer by

20   specifying the records that must be reviewed . . ."]).

21          The MGA Parties' argument that it is overly burdensome to require MGA to

22   spend 320 hours to inform Mattel of the most recent sales figures concerning the

23   Bratz products, (Opposition, p. 7), is also unpersuasive, given the importance of the

24

---

25   [13] Again, the Discovery Master cannot predict whether the Court will ultimately deem Mattel's Phase 2 claims broad
26   enough to encompass MGA's alleged misappropriation of the Bratz dolls or whether Mattel will be barred from
     presenting any evidence that it has been damaged by such misconduct at the Phase 2 trial on the ground that the issue
27   was previously litigated and resolved in Phase 1. Nevertheless, in light of the fact that the discovery need only
     appear reasonably calculated to lead to the discovery of admissible evidence concerning the Phase 2 claims, the
28   Discovery Master finds that Interrogatory No. 45 is sufficiently related to Mattel's Phase 2 claims to be discoverable
     at this time.

EXHIBIT ___41___

PAGE ___926___

1   information requested and the wide-ranging extent of the discovery to date.  As

2   explained above, the information sought is relevant to the constructive trust

3   imposed by the Court's December 3, 2008 ruling and relevant to Mattel's Phase 2

4   claims.  Also, while 320 hours may be unduly burdensome in certain

5   circumstances, it is not unreasonable on its face here given that the MGA Parties

6   have already produced more than 4 million documents.[14]  (*See Cappacchione v.*

7   *Charlotte-Mecklenburg Schools*, 182 F.R.D. 486, 491 (W.D.N.C. 1998)

8   ["Requiring a responding party to perform extensive research or to compile

9   substantial amounts of data and information does not automatically constitute an

10   undue burden . . . Imposing such a burden is particularly proper where, as here, the

11   information sought is crucial to the ultimate determination of a crucial issue and

12   where the location of the documents is best known by the responding party."]).

13          **c.**   **Conclusion**

14       For all of the foregoing reasons, Interrogatory No. 45 is reasonably

15   calculated to lead to the discovery of admissible evidence regarding Mattel's

16   Phase 2 claims and must be answered by MGA.

17       **2.**   **Interrogatory Nos. 56 – 63 Propounded On MGA And**

18           **Larian**

19       Mattel propounded Interrogatory Nos. 56 – 63 on both MGA and Larian.

20   These interrogatories ask the MGA Parties to provide information regarding their

21   alleged theft of certain Mattel documents:

22       •   Interrogatory No. 56: "IDENTIFY all MATTEL DOCUMENTS that

23         MGA has obtained, received, reviewed, copied, reproduced,

24         transmitted, requested, or used at any time since January 1, 1999, and

25         IDENTIFY all PERSONS with knowledge of such facts and all

26         DOCUMENTS that REFER OR RELATE TO such MATTEL

27

28

---

[14] *See* Opposition at p. 4 n. 1 [stating that "the MGA Defendants [have] produced four million, two hundred thousand (4,200,000) pages of documents"].

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 13 -

ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___41___

PAGE ___927___

1   DOCUMENTS." (Separate Statement in Support of Written
2   Discovery Motion, p. 49).
3   • Interrogatory No. 57: "IDENTIFY all DOCUMENTS that REFER
4   OR RELATE TO any MATTEL product or plan that any of the
5   FORMER MATTEL EMPLOYEES provided, transmitted or disclosed
6   to, shared with or used on behalf of MGA at any time since January 1,
7   1999, and IDENTIFY all PERSONS with knowledge of such facts."
8   (*Id.*, p. 52).
9   • Interrogatory No. 58: "State all facts which support YOUR
10   contention, if YOU so contend, that YOU and/or MGA did not obtain
11   any MATTEL DOCUMENTS through improper means, and
12   IDENTIFY all PERSONS with knowledge of such facts and all
13   DOCUMENTS that REFER OR RELATE TO such facts." (*Id.*, p.
14   54).
15   • Interrogatory No. 59: "State all facts which support YOUR
16   contention, if YOU so contend, that any information in the MATTEL
17   DOCUMENTS does not and/or did not derive independent economic
18   value from not being generally known to the public or other
19   PERSONS who can obtain economic value from its disclosure or use,
20   and IDENTIFY all PERSONS with knowledge of such facts and all
21   DOCUMENTS that REFER OR RELATE TO such facts." (*Id.*, p.
22   57).
23   • Interrogatory No. 60: "State all facts which support YOUR
24   contention, if YOU so contend, that any information in the MATTEL
25   DOCUMENTS was known to the public or to PERSONS who can
26   obtain economic value from its disclosure or use, and IDENTIFY all
27   PERSONS with knowledge of the foregoing and All DOCUMENTS
28   that REFER OR RELATE TO the foregoing." (*Id.*, p. 61).

EXHIBIT **41**
PAGE **928**

1        •  Interrogatory No. 61: "State all facts which support YOUR

2           contention, if YOU so contend, that YOU and/or MGA independently

3           developed, or did not otherwise use or disclose, any information in the

4           MATTEL DOCUMENTS, and IDENTIFY all PERSONS with

5           knowledge of such facts and all DOCUMENTS that REFER OR

6           RELATE TO such facts." (*Id.*, pp. 64 – 65).

7        •  Interrogatory No. 62: "State all facts which support YOUR contention

8           that YOUR use or disclosure of information in the MATTEL

9           DOCUMENTS neither benefited YOU nor harmed MATTEL, and

10          IDENTIFY all PERSONS with knowledge of such facts and all

11          DOCUMENTS that REFER OR RELATE TO such facts." (*Id.*, p.

12          69).

13        •  Interrogatory No. 63: "State all facts which support YOUR

14           contention, if YOU so contend, that YOU and/or MGA had, has or

15          have any right to copy, possess, use or disclose any MATTEL

16          DOCUMENT, and IDENTIFY all PERSONS with knowledge of such

17          facts and all DOCUMENTS that REFER OR RELATE TO such

18          facts." (*Id.*, p. 73).

19              **a.**    **Objections Of MGA And Larian**

20          In their Opposition, the MGA Parties rely on four basic grounds for refusing

21  to provide responses to Interrogatory Nos. 56 – 63. First, the MGA Parties argue

22  that Interrogatory Nos. 56 and 58 – 63 are unduly burdensome. (Opposition, pp. 9

23  – 10). Second, the MGA Parties argue that the interrogatories presuppose facts

24  that are not true. (*Id.*, p. 8). Third, the MGA Parties argue that all 8 interrogatories

25  are impermissibly compound and exceed the number of allotted interrogatories.

26  (*Id.*, pp. 10 – 11). Finally, the MGA Parties argue that Interrogatory Nos. 58, 59

27  and 62 improperly ask them to establish a negative proposition. (*Id.*, pp. 11 – 12).

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____41_____

PAGE _____929_____

### (1)    Unduly Burdensome Objection

The MGA Parties' primary argument in opposition to Interrogatory Nos. 56 –
63 is that each of the seven interrogatories that references the term "MATTEL
DOCUMENTS" (i.e., Interrogatories Nos. 56 and 58 – 63) is unduly burdensome.
(Opposition, p. 9 – 10).  While the MGA Parties do concede that the interrogatories
"relate to Phase 2" issues, (Tr., p. 57:13), they object to the interrogatories because
they claim that the interrogatories require them "to state all facts, identify all
documents and identify all witnesses, supporting contentions for over 8 boxes of
documents . . ." (Opposition, pp. 9 – 10).  Whether an undue burden exists,
however, depends on, among other things, the value of the information sought
versus the burden alleged by the responding party.  (*See King v. Georgia Power
Co.*, 50 F.R.D. 134, 136 (N.D. Ga. 1970) ["Although preparation of a direct answer
will be time-consuming, and probably costly, the information is crucial to the issues
of this suit, and is in the exclusive custody of the defendant."]).

Applying this test here, the Discovery Master finds that Interrogatory Nos.
56 and 58 – 63, at least as he understands them, go to the core of Mattel's Phase 2
trade secret claims. (Tr., 37:9-12 ["We're not asking for something of marginal
importance.  We're asking for . . . their core contentions related to the trade secret
claims."]).  As the Discovery Master has previously explained, the issues to be
litigated in Phase 2 include, among other things, Mattel's claim that the MGA
Parties stole "a vast array of trade secrets and other confidential information that
comprise Mattel's intellectual infrastructure," including, among other things,
stealing "Mattel's proprietary business methods, practices and information."
(SAAC, ¶ 20).  Indeed, Mattel alleges in its SAAC that the MGA Parties:

- "engaged in an ongoing, widespread pattern of . . . inducing Mattel
employees to steal Mattel's confidential information or other property
and take it with them to MGA," (*Id.*, ¶ 5);

//

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT ___ 41
PAGE 930

- 16 -

ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1   • stole "Mattel's plans, strategy and business information for the

2   Mexican market and materials related to Mattel's worldwide business

3   strategies," (*Id.*, ¶ 37);

4   • "directed [certain Mattel employees'] to steal virtually all Mattel

5   confidential and proprietary information that they could access and

6   bring it with them to MGA," (*Id.*, ¶ 43), including "virtually every

7   type of document a competitor would need to enter the Mexican

8   market, and to unlawfully compete with Mattel in Mexico, in the

9   United States and elsewhere . . ." (*Id.*, ¶ 48);

10  • "targeted certain Mattel employees who have broad access to Mattel

11  proprietary information in an effort to induce and encourage them to

12  join MGA and to steal or otherwise wrongfully misappropriate Mattel

13  confidential information and trade secrets," including by "promising

14  these employees salaries 25 percent or more higher than they earn at

15  Mattel and stating to them that they should not be concerned by legal

16  action taken by Mattel to protect its trade secrets and its rights because

17  such claims are hard to prove and easy to defeat," (*Id.*, ¶ 69); and

18  • "hired directly from Mattel's United States operations at least 25

19  employees, from Senior Vice-President level to lower level

20  employees," and that some of these individuals misappropriated

21  "Mattel confidential and proprietary information, including Mattel's

22  strategic plans; business operations; methods and systems; marketing

23  and advertising strategies and plans; future product lines; product

24  profit margins, and customer requirements." (*Id.*, ¶ 77).

25  Therefore, this is not a situation where Mattel has alleged that the MGA

26  Parties stole a handful of documents.  The SAAC instead alleges that the MGA

27  Parties engaged in the wholesale theft of Mattel's trade secrets, including stealing

28  "virtually every type of document a competitor would need to enter the Mexican

EXHIBIT    41

PAGE    931

1   market, and to unlawfully compete with Mattel in Mexico, in the United States and

2   elsewhere . . ." (*Id.*, ¶ 48). Because Mattel alleges that its claims against the MGA

3   Parties relate to "a massive and pervasive theft of Mattel information," (Tr., 33:18-

4   19), including all of the documents that have been identified as the MATTEL

5   DOCUMENTS, Mattel is entitled to ask what the MGA Parties' contentions are

6   regarding whether or not those documents constitute trade secrets, particularly

7   given that such information is exclusively within the control of the MGA Parties.

8   As Mattel's counsel expressed at oral argument, Mattel is "going to go to trial

9   accusing MGA and the other defendants of stealing all of these documents . . . and

10  [the MGA Parties are] going to have to articulate what their contentions are with

11  respect to whether or not these are trade secrets . . ." (Tr., 36:24-37:3; *see also id.*

12  81:9-10 [wherein Mattel's counsel states that these documents "are the ones that

13  Mattel is going to be proceeding to trial on."]).

14      Also, the MGA Parties' claim of undue burden does not take into account the

15  vast scope of this litigation to date. (*Cf.* Opposition at p. 4 n. 1 [stating that Mattel

16  propounded 4,647 requests for admission, 2,889 requests for production, and 71

17  interrogatories in Phase 1]). The MGA Parties do not provide any supporting

18  declaration or specific evidence to support their assertion of burden beyond their

19  statement that the term "MATTEL DOCUMENTS" refers to 8 boxes of documents.

20  For example, the MGA Parties have not provided the Discovery Master with details

21  regarding: (1) a time estimate as to how long it would take to respond to the

22  Interrogatories; (2) the anticipated costs of responding to the Interrogatories; (3) the

23  extent to which any facts that must be set forth in answering the Interrogatories are

24  voluminous; or (4) an estimate of the number of documents and/or persons that may

25  have knowledge of such responsive facts. Therefore, the Discovery Master finds

26  that the MGA Parties have not met their burden of demonstrating that answering

27  //

28  //

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 18 -

ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ____41____

PAGE ____932____

1    the requested interrogatories is overly burdensome.[15]  (*See Jackson v. Montgomery*

2    *Ward & Co., Inc.*, 173 F.R.D. 524, 528-9 (D.Nev. 1997) ["The party claiming that a

3    discovery request is unduly burdensome must allege specific facts which indicate

4    the nature and extent of the burden, usually by affidavit or other reliable

5    evidence."]).

6        While there is no specific evidence in the record demonstrating that the MGA

7    Parties will inevitably suffer an undue burden in responding to Interrogatory Nos.

8    56 and 58 – 63, the Discovery Master is nonetheless cognizant of the fact that a

9    demand for "all facts" relating to what could be thousands of different documents

10   could be construed by Mattel in a manner that could place an unreasonable burden

11   on the MGA Parties, particularly when that information is requested via a written

12   interrogatory.  The Discovery Master, thus, limits six of the interrogatories at

13   issue[16] and requires that the MGA Parties identify all facts, documents and

14   witnesses that they currently intend to rely on at summary judgment or trial to

15   demonstrate (i) they did not obtain any MATTEL DOCUMENTS through improper

16   means (i.e., Interrogatory No. 58), (ii) that the information in the MATTEL

17   documents did not derive independent economic value (i.e., Interrogatory No. 59),

18   (iii) any information in the MATTEL DOCUMENTS was known to the public,

19   (i.e., Interrogatory No. 60), (iv) the MGA Parties independently developed, or did

20   not otherwise use or disclose, any information in the MATTEL DOCUMENTS

21   (i.e., Interrogatory No. 61), (v) that the MGA Parties have not benefited by their use

22   of the information in the MATTEL DOCUMENTS nor harmed Mattel

23   (Interrogatory No. 62), and (vi) the MGA Parties had or have a right to copy,

24   possess, use or disclose any MATTEL DOCUMENT (Interrogatory No. 63).

25       The Discovery Master finds that this limitation is appropriate because Mattel

26

27   [15] The Discovery Master also notes that the MGA Parties did not provide any legal authority in support of their
     position on this issue. (Opposition, pp. 9 – 10).

28   [16] Interrogatory Nos. 56 and 57 must be answered as phrased.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 19 -

ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___**41**___

PAGE ___**933**___

1  conceded in its Reply that it was not asking the MGA Parties "to provide

2  facts they have no knowledge of," [17] (Reply, p. 17), but rather wanted to assess the

3  "specific contentions Defendants may make regarding the [allegedly] stolen

4  documents," (*id.*, p. 17).  Mattel's counsel reiterated this position again at oral

5  argument, wherein he declared that Mattel was not necessarily interested in "a

6  parsing document by document," (Tr., 34:14-15), but instead "what [the MGA

7  Parties'] trial positions are going to be, before the jury is seated," (*id.*, p. 81:14-15).

8               **(2)     Purported Presuppositions Regarding**

9                      **Interrogatory Nos. 56 and 58 – 63.**

10        The MGA Parties next assert that Interrogatory Nos. 60, 61 and 63 are

11  objectionable because they require the MGA Parties to presuppose that they are "in

12  possession of documents stolen or taken from Mattel by former employees – a fact

13  that MGA denies."  (Opposition, p. 8).  The MGA Parties further assert that "each

14  of the interrogatories using the term 'MATTEL DOCUMENTS' [which includes

15  Interrogatory Nos. 56 and 58 – 63] requires MGA to assume . . . unfounded

16  assertions . . . which make the interrogatories unanswerable and incomprehensible."

17  (*Id.*, p. 9).  However, the MGA Parties cite no legal authority, and the Discovery

18  Master has found none, standing for the proposition that a party may refuse to

19  respond to an interrogatory merely because the interrogatory assumes a fact the

20  responding party disputes.

21               **(3)     Compound And Excessive Objections**

22        The MGA Parties next assert that Interrogatory Nos. 56 – 63 are

23  impermissibly compound and exceed the allotted number of interrogatories.

24  (Opposition, pp. 10 and 11).  Each of these contentions is unavailing.

25        As an initial matter, the MGA Parties did not object to Interrogatory Nos. 56

26  _____

[17] Of course, if the MGA Parties subsequently wish to present other facts, witnesses or documents at summary

27  judgment or trial, they must supplement their response to these interrogatories accordingly and include the additional information. (*See* Fed. R. Civ. P. 26(e)(1) ["A party who has . . . responded to an interrogatory . . . must supplement

28  its . . . response[] in a timely manner if the party learns that in some material respect the . . . response is incomplete . . ."]).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 20 -                                   ORDER NO. 11
                                        [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____41_____

PAGE _____934_____

1   and 58 – 60 on the ground that they are compound.  Nor did they object to any of

2   the interrogatories as exceeding the allotted limit, except for Interrogatory No. 63.

3   Therefore, the MGA Parities waived any such objections to those interrogatories.

4   (*See, e.g., Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th

5   Cir. 1992) [stating that "failure to object to discovery requests within the time

6   period required constitutes a waiver of any objection."]).

7         As for the interrogatories where the objections were asserted, the MGA

8   Parties have not demonstrated that the interrogatories are compound or exceed the

9   allotted limit.  The fact that the interrogatories ask MGA to identify witnesses, facts

10   and documents related to the MATTEL DOCUMENTS does not render the

11   interrogatories compound because the questions in each interrogatory refer to one

12   common theme and count as a single interrogatory.  (*See Swackhammer v. Sprint

13   Corp. PCS*, 225 F.R.D. 658, 644 (D. Kan. 2004) ["[A]n interrogatory containing

14   subparts directed at eliciting details concerning a 'common theme' should generally

15   be considered a single question"]).  The prior discovery master applied this precise

16   rule in Phase 1, concluding that interrogatories "with subparts seeking facts

17   supporting a contention, the identity of persons with knowledge, and documents are

18   not counted separately for the purposes of applying the . . . interrogatory limit."

19   (Prior Discover Master Order dated September 15, 2007, pp. 5 – 7).

20                    **(4)    Establishing A Negative Proposition Objection**

21         As their final argument in opposing Interrogatory Nos. 56 – 63, the MGA

22   Parties assert that three of the interrogatories improperly ask them to establish a

23   negative proposition (i.e., Interrogatory Nos. 58, 59 and 62).  (Opposition, pp. 11 –

24   12).  The relevant question, however, is not whether an interrogatory may require a

25   party to prove a negative.  Rather, all of the cases cited by the parties concerning

26   this issue examine whether the interrogatory in question imposes an unreasonable

27   //

28   //

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

                                    - 21 -              ORDER NO. 11
                                              [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___41___

PAGE ___935___

1   burden on the responding party.[18] For the reasons explained above, there has been

2   no showing by the MGA Parties that an undue burden exists here. (*See* Opposition,

3   pp. 11 – 12).

### b.   Conclusion

5   For all of the foregoing reasons, the objections to Interrogatory Nos. 56 – 63

6   are overruled and Mattel's motion to compel responses to the interrogatories is

7   granted, subject to the limitations discussed above.

### 3.   Interrogatory Nos. 67 – 69 Propounded On MGA And Larian

10   Mattel also propounded Interrogatory Nos. 67 – 69 on both MGA and Larian.

11   These interrogatories ask the MGA Parties to provide information regarding any

12   payments they may have made to former Mattel employees and any persons

13   identified in the parties' initial disclosures:

14   • Interrogatory No. 67: "IDENTIFY fully and separately each and every

15       payment of money or other item of value that YOU have made or

16       given, or any promise, agreement, proposal [o]r offer by YOU to pay

17       money or given any item of value, to or on behalf of any PERSON

18       identified in any of the parties' initial disclosures in this ACTION at

19       any time when such person was not an employee of MGA, including

20       without limitation with respect to legal fees incurred by or on behalf of

21       such PERSON." (Separate Statement in Support of Written Discovery

22       Motion, p. 88).

23   • Interrogatory No. 68: "To the extent not disclosed in prior

---

[18] The two cases cited by MGA in support of its argument (*Safeco of America v. Rawstron*, 181 F.R.D. 441, 447 - 448 (C.D.Cal.1998) and *Lawrence v. First Kansas Bank & Trust Co.*, 169 F.R.D. 657, 662-663 (D.Kan.1996)), both address the question of whether interrogatories are overly burdensome. The same analysis is applied in the cases cited by Mattel. (*See Dang v. Cross*, 2002 WL 432197, *4 (C.D. Cal. 2002) [affirming magistrate judge's holding that interrogatories request "all facts" in support of a denial of a statement were not unduly burdensome]); *Tennison v. San Francisco*, 226 F.R.D. 615, 618 (N.D. Cal. 2005) [concluding an interrogatory requiring plaintiff to provide all facts supporting the denial of an allegation was not unduly burdensome]; *Chapman v. California Dep't of Education*, 2002 WL 32854376, *2 (N.D. Cal. 2002) [same]).

- 22 -

ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT     41

PAGE     936

1    Interrogatories, IDENTIFY fully and separately each and every

2    payment of money or other item of value that MGA has made, or any

3    promise, agreement, proposal or offer by MGA to pay money or given

4    any item of value, to or on behalf of any of the FORMER MATTEL

5    EMPLOYEES, including without limitation with respect to legal fees

6    incurred by or on behalf of any of the FORMER MATTEL

7    EMPLOYEES." (*Id.*, p. 91).

8    • Interrogatory No. 69: "To the extent not disclosed in prior

9    Interrogatories, IDENTIFY fully and separately each and every

10   payment of money or other item of value that YOU have made, or any

11   promise, agreement, proposal or offer by YOU to pay money or given

12   any item of value, since January 1, 1998 to or on behalf of any

13   PERSON who has been employed by MATTEL (excluding ordinary

14   salary and benefits paid to such PERSON while an MGA employee),

15   including without limitation with respect to legal fees incurred by or

16   on behalf of such PERSON and bonuses paid to such PERSON." (*Id.*,

17   p. 92).

18           **a.     Objections Of MGA And Larian**

19       In their Opposition, the MGA Parties rely on two basic grounds for refusing

20   to provide responses to these three interrogatories. First, the MGA Parties argue

21   that the interrogatories are impermissibly compound and exceed the number of

22   allotted interrogatories. (*Id.*, pp. 10 – 11). Second, the MGA Parties argue that

23   interrogatories are overly broad. (*Id.*, pp. 12 – 14).

24               **(1)     Compound And Excessive Objections**

25       Like their objections to Interrogatory Nos. 56 – 63, the MGA Parties contend

26   that Interrogatory Nos. 67 – 69 are impermissibly compound and exceed the

27   allotted number of interrogatories. (Opposition, pp. 10 and 11). But those

28   arguments are not persuasive for reasons discussed in Section I.B.2.a.3 above.

EXHIBIT   41

PAGE   937

### (2)   Overly Broad Objection

The MGA Parties' second argument regarding Interrogatory Nos. 67 – 69 is that they are overly broad. The MGA Parties complain that Interrogatory No. 67 is overbroad because it seeks information regarding payments by MGA to any persons identified in the initial disclosures, not just former Mattel employees. (Opposition, pp. 12 – 13).

While a payment to a potential witness could be relevant to the issue of bias and, therefore, discoverable, (*See Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 283 (C.D. Cal. 1998) ["Rule 26 further permits the discovery of information which may simply relate to the credibility of a witness or other evidence in the case."]), the SAAC merely alleges that the MGA Parties bribed former Mattel employees — not every single witness in this case. In the absence of an allegation suggesting that other witnesses may have been bribed, Interrogatory No. 67 is overly broad and not relevant at this time.[19] Accordingly, Mattel's motion to compel a response to Interrogatory No. 67 is denied at this stage.

As for Interrogatory Nos. 68 and 69, the MGA Parties first argue that the "burden and expense of determining whether each individual contemplated by these interrogatories was ever paid by MGA . . . far outweighs the interrogatories' likely benefit." (*Id.*, pp. 13 and 14). Once again, however, the MGA Parties provide no evidence to support such a claim. (*See Jackson,* 173 F.R.D. at 528-9 ["The party claiming that a discovery request is unduly burdensome must allege specific facts which indicate the nature and extent of the burden, usually by affidavit or other reliable evidence."]).

The MGA Parties only remaining complaint is that Interrogatory No. 69 seeks information regarding payments to "or on behalf of" any person who has been

---

[19] Mattel's request for information regarding payments by the MGA Parties to all individuals identified in the parties' initial disclosures presumably extends to all former Mattel employees identified therein as well. To the extent Interrogatory No. 67 seeks such information, it is plainly relevant to Mattel's Phase 2 claims. Nevertheless, the Discovery Master denies Mattel's motion to compel a response to Interrogatory No. 67 in its entirety because any payments by the MGA Parties to former Mattel employees is duplicative of Interrogatory Nos. 68 and/or 69.

EXHIBIT _____ 41 _____

PAGE _____ 938 _____

1   employed by Mattel and that Interrogatory No. 68 defines FORMER MATTEL

2   EMPLOYEES as including specific individuals as well as each such person's

3   "current or former employees, agents, representatives, attorneys, accountants,

4   vendors, consultants, independent contractors, predecessors-in-interest and

5   successors-in-interest, and any other Person acting on [his or her] behalf, pursuant

6   to [his or her] authority or subject to [his or her] control." (Opposition, p. 13).

7   While they assert these definitional objections, counsel for the MGA Parties

8   nevertheless conceded at oral argument that to the extent "MGA paid . . . former

9   Mattel employees, for other than their salary as MGA employees, I think that is a

10   fair inquiry." (Tr., 63:17-20; *id.*, 61:21 - 64:4).

11       Therefore, the Discovery Master orders the MGA Parties to identify fully and

12   separately each and every payment of money or other item of value that they have

13   made or offered to pay to or on behalf of any "former employee of Mattel" since

14   January 1, 1998 but limits the definition of former Mattel employees to "all

15   individuals that the MGA Parties are aware of that worked for Mattel and who

16   received any payment (excluding ordinary salary and benefits paid to such person

17   while an MGA employee) from the MGA Parties."[20]

18                   **b.    Conclusion**

19       For all of the foregoing reasons, Mattel's motion to compel is denied with

20   respect to Interrogatory No. 67. Regarding Interrogatory Nos. 68 and 69, Mattel's

21   motion to compel responses to the interrogatories is granted, subject to the

22   limitations discussed above.

23           **C.    Summary Of Ruling Regarding The Written Discovery Motion**

24       Mattel's Written Discovery Motion is **DENIED in part** and **GRANTED in**

25   **part.**

26   _____

27   [20] While Interrogatory Nos. 68 and 69 both seek information regarding payments made by the MGA Parties to former
     Mattel employees for "legal fees," the MGA Parties did not argue in their Opposition or at oral argument that such a
28   request is improper for that specific reason, but instead merely relied on the definitional argument discussed above.
     Accordingly, the Discovery Master does not need to resolve that particular issue.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 25 -                    ORDER NO. 11
                          [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____ 41 _____

PAGE _____ 939 _____

## II.    MATTEL'S DEPOSITION MOTION

### A.    Introduction

As indicated above, the Deposition Motion addresses the motion of Mattel to compel the depositions of Pablo Vargas San Jose ("Vargas") and Mariana Trueba Almada ("Trueba") (collectively, the "Witnesses").

### 1.    Background

The Witnesses are former employees of Mattel in Mexico[21] who, along with another former Mattel manager and named defendant, Carlos Gustavo Machado Gomez ("Machado") left Mattel to establish and run MGA's newly formed Mexico operation, defendant MGA De Mexico ("MGA Mex"), in 2004. Mattel alleges that Machado and the Witnesses stole Mattel trade secrets.

The Witnesses are Mexican nationals who reside in Mexico, where MGA Mex has its principal place of business. Vargas currently serves as the Director of Sales for MGA Mex. In that capacity, he supervises approximately 8 or 9 employees and reports to Susan Kuemmerle ("Kuemmerle"), the Vice President of MGA Mex. Trueba currently serves as the Marketing Manager of Special Projects for MGA Mex. She does not manage or supervise any employees of MGA Mex. Trueba reports directly to Machado, who is MGA Mex's Director of Marketing. Machado, in turn, reports to Kuemmerle.

### 2.    Procedural History

On January 10, 2008, Mattel served deposition notices pursuant to Federal Rule of Civil Procedure 30(b)(1) setting the depositions of Vargas and Trueba for January 24, 2008 in Los Angeles. In response, MGA and its affiliated parties to this action (the "MGA Defendants") asserted that neither of the Witnesses is a "managing agent," and therefore Mattel must subpoena the Witnesses. On January 28, 2008, Mattel filed an *ex parte* application to compel the depositions of

---

[21] Vargas was the Senior Marketing Manager, Boys Division, for Mattel Mexico and Trueba was the Senior Marketing Manager, Girls Division, for Mattel Mexico.

EXHIBIT ____41____

PAGE ____940____

1    the Witnesses (as well as others). Mattel's application was stayed with other Phase

2    2 discovery and then denied without prejudice on September 23, 2008. After the

3    Court lifted the stay on Phase 2 discovery on January 6, 2009, Mattel noticed the

4    depositions of Vargas on January 27, 2009 and of Trueba on January 28, 2009.

5    Once again, the MGA Defendants objected on the ground that neither of the

6    Witnesses is an officer, director or managing agent of MGA Mex. After the parties

7    were unable to resolve their dispute, Mattel filed the Deposition Motion.

8    **B.    Discussion**

9        Mattel argues that (1) the Witnesses are directors and/or managing agents of

10   MGA Mex, and (2) that MGA Mex must produce them for deposition in Los

11   Angeles. Mattel also seeks sanctions on the ground that the MGA Defendants are

12   acting in bad faith and without justification to frustrate Mattel's legitimate

13   discovery rights. In response, the MGA Defendants argue that (1) the Witnesses

14   are merely mid-level employees who cannot be deemed to act for MGA Mex, and

15   (2) even if the Witnesses could be deposed pursuant to Federal Rule of Civil

16   Procedure 30(b) ("Rule 30(b)"), the depositions must be conducted in Mexico. The

17   MGA Defendants seek sanctions against Mattel, contending that Mattel failed to

18   adequately meet and confer with one of the attorneys for MGA Mex, Amman Khan

19   ("Khan") and then served a redacted version of the Deposition Motion on a

20   different attorney for the MGA Defendants, Patricia Glaser ("Glaser") while she

21   was out of town.[22] According to MGA Mex, Mattel only served a complete,

22   unredacted copy of the Deposition Motion on counsel for the MGA Defendants two

23   days before the deadline for the Opposition.

24       **1.    Legal Standard**

25       If a corporation is a party to an action, any other party may take the

26   deposition of that corporation by identifying a specific officer, director, or

27   
28   

[22] Both Khan and Glaser are partners at Glaser Weil, Phase 2 attorneys of record for the MGA Defendants, including MGA Mex.

EXHIBIT____41____

PAGE____941____

1   managing agent to be deposed and noticing that person's deposition under Rule

2   30(b)(1). Notice alone is enough to compel the managing agent to attend the

3   deposition. (*JSC Foreign Econ. Ass'n Technostroyexport v. International Dev. &*

4   *Trade Services, Inc.*, 220 F.R.D. 235, 237 (S.D.N.Y. 2004)). For purposes of

5   compelling a corporate officer's deposition, courts do not recognize a distinction

6   between an "apex" official or director and other high corporate officials. (*Resort*

7   *Properties of America v. El-Ad Properties N.Y. LLC*, 2008 WL 2741131 at *2 (D.

8   Nev. July, 10 2008) citing Fed. R. Civ. Proc. 37(d) advisory committee's notes

9   ["There is slight warrant for the present distinction between officers and managing

10  agents on the one hand and directors on the other."]).

11      The case law provides somewhat ambiguous guidance with respect to the

12  burden of proof for demonstrating managing agent status. Generally, the burden is

13  on the discovering party to establish the status of the witness. (See *Sugarhill*

14  *Records Ltd. v. Motown Record Corp.*, 105 F.R.D. 166, 170 (S.D.N.Y. 1985);

15  *Proseus v. Anchor Line, Ltd.*, 26 F.R.D. 165, 167 (S.D.N.Y.1960)). At the same

16  time, however (and as Mattel points out in its papers), courts resolve doubts in

17  favor of the examining party, at least during the discovery phase. (See *Sugarhill*,

18  105 F.R.D. at 171; *Tomingas v. Douglas Aircraft Co.*, 45 F.R.D. 94, 97

19  (S.D.N.Y.1968)). "Thus, it appears that the examining party has the burden of

20  providing enough evidence to show that it is at least a close question whether the

21  proposed deponent is a managing agent." (*United States of America v. Afram Lines*

22  *(USA) Ltd.*, 159 F.R.D. 408, 413 (S.D.N.Y. 1994)).

23      The identification of a managing agent in any given case is fact-sensitive.

24  "[B]ecause of the vast variety of factual circumstances to which the concept must

25  be applied, the standard . . . remains a functional one to be determined largely on a

26  case-by-case basis." (*Founding Church of Scientology of Washington, D.C., Inc. v.*

27  *Webster*, 802 F.2d 1448, 1452 (D.C.Cir. 1986) (citation omitted)). "Thus, 'the

28  question of whether a particular person is a 'managing agent' is to be answered

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 28 -

ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____41_____

PAGE _____142_____

1    pragmatically on an ad hoc basis . . . .'" (*Afram Lines*, 159 F.R.D. at 413 quoting 8
2    C. Wright & A. Miller, *Federal Practice and Procedure* § 2103, at 376 (1970) and
3    citing 4A *Moore's Federal Practice* ¶ 30.51, at 30-47 to 30-48 (1994)). Whether a
4    proposed deponent falls into a particular category of employee or agent is therefore
5    less relevant than the individual's specific functions and authority.

6         As both parties acknowledge, federal courts have formulated a set of factors
7    to assist in determining whether person is a party's "managing agent," and therefore
8    subject to deposition under Rule 30(b)(1):

9         1)    whether the individual is invested with general powers allowing him to
10               exercise judgment and discretion in corporate matters;
11        2)    whether the individual can be relied upon to give testimony, at his
12               employer's request, in response to the demands of the examining
13               party;
14        3)    whether any person or persons are employed by the corporate
15               employer in positions of higher authority than the individual
16               designated in the area regarding which the information is sought by the
17               examination;
18        4)    the general responsibilities of the individual "respecting the matters
19               involved in the litigation;" and
20        5)    whether the individual can be expected to identify with the interests of
21               the corporation.

22    (*Sugarhill*, 105 F.R.D. at 170).

23        According to Mattel, the most important of these factors is "whether the
24    witness can be expected to identify with the employer corporation's interest as
25    opposed to an adversary's." (Deposition Motion, p. 12, quoting *In re Honda
26    American Motor Co.*, 168 F.R.D. 535, 541 (D. Md. 1996)). Applying that test,
27    Mattel argues that the Witnesses are presumptively loyal to MGA Mex, given that
28    they helped to found the company and part of the "tight" group that manages its

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

                                         - 29 -        ORDER NO. 11
                                                  [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____ 41 _____

PAGE _____ 943 _____

1    day-to-day operations. (Deposition Motion, p. 13). Accordingly (Mattel reasons),

2    the Witnesses are managing agents of MGA Mex.

3        Mattel's emphasis on the employee's loyalty as the main test for determining

4    his or her status is unwarranted. Federal courts have effectively challenged the

5    notion that the employee's loyalty to the employer is entitled to special weight.

6    (*Libbey Glass, Inc. v. Oneida, Ltd.*, 197 F.R.D. 342, 350 (N.D.Oh. 1999)). As the

7    *Libbey Glass* court explained, that view "overstates the role of the deponent's . . .

8    apparent fidelity to the principal's interests, because it would apply to many agents

9    and employees who do not function with the degree of authority over a company's

10   affairs connoted by the term 'managing' agent." (*Id.,* at 350). Moreover, the

11   *Libbey Glass* court demonstrated that the approach followed in *Honda* is based on a

12   rationale that no longer applies. Specifically, the court traced the rule to *Newark*

13   *Ins. Co. v. Sartain*, 20 F.R.D. 583, 586 (N.D. Cal. 1957), which sets forth the

14   analytical underpinning of the "loyalty" factor.

15       In that case, the court was concerned with the evidentiary problem facing a

16   litigant seeking to obtain and use the testimony of an adversary corporation's most

17   senior employees. Under the then-existing rule, a litigant could not call such an

18   employee to testify at trial in his or her individual capacity without waiving the

19   right to impeach the witness. This presented a problem for the party seeking to

20   elicit the testimony, because, as the court reasoned, a corporation's ranking

21   employee having possession of pertinent information will always "give his

22   testimony in the light most favorable to the principal," but would, at the same time,

23   be immune from impeachment at trial. (*Id.*) On that basis, the court concluded that

24   an adversary should be able to obtain such testimony from the employee in his or

25   her capacity as the representative of the corporation (who could, therefore, be

26   subject to impeachment).

27       However, as the court in *Libbey Glass* noted, the concerns expressed in

28   *Newark Ins.* were rendered moot by the enactment of Federal Rule of Evidence 607

EXHIBIT ___41___

PAGE ___944___

1   ("Rule 607").[23]  Under that rule, a party may take the deposition of a senior

2   employee of an adversary corporation in his individual capacity and may

3   nonetheless still seek to impeach that testimony.  In other words, characterizing a

4   particular witness as a "managing agent" no longer provides any substantive

5   advantage to the deposing party, only procedural advantages (i.e., the ability to take

6   the deposition without a subpoena).

7        Having discarded the notion that the witness' loyalty to his employer is the

8   main factor to be considered in ascertaining his status as a managing agent, the

9   court in *Libbey Glass* instead focused on "the nature of the deponent's activities on

10  behalf of the corporation, rather than his loyalty to its interests." (*Libbey Glass,*

11  197 F.R.D. at 350).  The court reasoned:

12            For the purpose of determining whether an individual is a

13            'managing agent' within the meaning of the discovery rules, the

14            alter ego theory provides a useful analogy.  As in the arena of

15            corporate liability, the focus begins with the character of the

16            individual's control.  In addition, we can profitably examine both

17            the degree to which the interests of the individual and the

18            corporation converge, and how helpful the individual will be in

19            fact finding on the matter at issue, in comparison to others

20            associated with the corporation.  As in all matters appertaining to

21            discovery, it is the ends of justice that are to be served.

22  (*Id.,* quoting *Founding Church of Scientology of Washington, D.C., Inc. v. Webster,*

23  802 F.2d 1448, 1453 (D.C. Cir. 1986)).  The Discovery Master finds that the

24  analysis set forth in *Libbey Glass* and the authorities cited therein to be the most

25  practical and well-reasoned test for determining whether the Witnesses are

26  managing agents of MGA Mex, and applies that test below.

27  _____

28  [23] Rule 607 provides "The credibility of a witness may be attacked by any party, including the party calling the witness."

EXHIBIT ___41___

PAGE ___945___

2.   **Analysis Of The Witnesses' Job Functions And Managerial Authority**

    a.   **The Nature Of The Witnesses' Activities On Behalf Of, And Control Over, MGA Mex.**

In accordance with the approach outlined in *Libbey Glass*, the Discovery Master begins his analysis by examining the Witnesses' activities on behalf of, and managerial control over the operations of, MGA Mex.

Mattel relies heavily on documentary evidence regarding the role of Machado and the Witnesses in establishing MGA Mex in 2004, but the Discovery Master finds that this evidence, which is limited to events that occurred five years ago, to be only minimally probative of the *current scope* of the Witnesses' activities and authority.[24] The only evidence presented by the parties concerning the Witnesses' current role in the company is the testimony of Kuemmerle. That testimony derives from three sources: (1) her declaration filed on February 27, 2007 ("First Kuemmerle Decl.") (attached as Exh. 12 to Zeller Decl.); (2) her deposition testimony on January 28, 2008 ("Kuemmerle Tr.") (attached as Exh. 9 to Zeller Decl.); and (3) her declaration filed on February 12, 2009 in support of the Opposition to the Deposition Motion ("Second Kuemmerle Decl.").

The relevant portion of Kuemmerle's first declaration is Paragraph 6, which states in its entirety:

> All of the day to day operations of MGA Mexico are managed
> locally in Mexico.  For example, MGA Mexico's Finance
> Director, Sales Director and Marketing Director are all based in
> Mexico and all of the marketing and finance functions are
> handled in Mexico.

(First Kuemmerle Decl., ¶ 6).

---

[24] As counsel for the MGA Defendants noted at oral argument, the critical question is "when do we look at this question as to whether these [Witnesses] are managing agents?  And the answer, of course, is now." (Tr., 21:14-16).

EXHIBIT _____41_____

PAGE _____946_____

1        There are two main excerpts from Kuemmerle's deposition transcript cited

2   by Mattel in support of its Deposition Motion. In the first, Kuemmerle testifies that

3   pricing for the products sold by MGA Mex is set by means of a "combined team

4   effort" among a group that counsel refers to as "the four of you." (Kuemmerle Tr.,

5   p. 91:8 – 14, [Exh. 9 to Zeller Decl., p. 154]).[25] Kuemmerle testifies that these

6   individuals (which apparently include the Witnesses) continue to set the pricing of

7   MGA Mex products in the same manner to this day. (Id.).

8        Second, Mattel relies on a passage of Kuemmerle's deposition in which she

9   testified that, at the time the Witnesses joined MGA Mex in 2004, "we were so

10  tight of a group, not enough employees, that we were all forced to multitask."

11  (Kuemmerle Tr., p. 135:24 - 136:1, [Exh. 9 to Zeller Decl., pp. 169 - 170]).

12       In her second declaration, Kuemmerle testifies regarding the chain of

13  command at MGA Mex. Specifically, she testifies that Vargas reports directly to

14  her and that Trueba reports to Machado, who in turn reports to Kuemmerle.

15  (Second Kuemmerle Decl., ¶¶ 3 – 4). Kuemmerle is entirely silent regarding the

16  functions performed by, or general authority exercised by, either of the Witnesses.

17  Instead, she simply states that Ms. Trueba "does not manage or supervise anyone at

18  all at MGA De Mexico." (Id., ¶ 4). Kuemmerle does not state whether Vargas

19  supervises anyone. (Id., ¶ 3).

20       In the absence of any evidence directly addressing the Witnesses' current

21  role in MGA Mex, Mattel asks the Discovery Master to infer that the Witnesses are

22  managing agents based on the Witnesses' job titles and past participation in the

23  "tight group" that made operational decisions for the fledgling company several

24  years ago. However, such an inference is not supported by the scant evidence

25  before the Discovery Master. For instance, the Discovery Master cannot attribute

26

27  [25] None of the prior passages of the deposition transcript provided by Mattel reflect the individuals to whom counsel
     is referring. However, later, counsel asks Kuemmerle a question beginning with "When you and Mr. Machado and

28  Mr. Vargas and Ms. Trueba were determining the prices for MGA products . . . " (Kuemmerle Tr., p. 93:2 – 6 [Exh. 9
     to Zeller Decl., p. 156]).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

                      - 33 -              ORDER NO. 11
                                      [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____41_____

PAGE _____947_____

1   such status to Trueba, who supervises no employees, and whose scope of

2   responsibility is circumscribed to public relations.[26]

3          Likewise, although Mattel emphasizes that Vargas supervises approximately

4   8 or 9 MGA Mex employees (Kuemmerle Tr., p. 97:5 – 11, [Exh. 9 to Zeller Decl.,

5   p. 159]), that fact, alone, is ambiguous at best, because Mattel does not provide the

6   necessary context by identifying the number of total MGA Mex employees. If, for

7   instance, MGA Mex employs 100 persons, then Vargas' oversight of 8 or 9

8   employees would tend to indicate he does not have such authority.[27] Because the

9   necessary contextual information is not provided, the Discovery Master is unable to

10  assess the significance (if any) of the evidence that is provided regarding Vargas'

11  current role at MGA Mex.

12         In sum, the evidence currently before the Discovery Master is insufficient to

13  allow him to determine that the Witnesses' functions on behalf of, and control over,

14  MGA Mex is such that they can be deemed its "managing agents."

15                    **b.    Other Factors**

16         Since there is virtually no evidence addressing the critical factor governing

17  whether the Witnesses are managing agents of their employer (see Section II.B.2.a,

18  above), the five factors enumerated by the *Sugarhill* Court have marginal relevance,

19  at best. Even if all those factors were satisfied – which they are not – the record

20  would still be insufficient to enforce the deposition notices at issue here. However,

21  in order to create a complete record and to address the arguments made by the

22  parties, the Discovery Master nonetheless briefly discusses those factors below.

23         As set forth above, the first factor identified by the *Sugarhill* Court bearing

---

[26] Mattel also argues that the Discovery Master should infer that Ms. Trueba is a managing agent because she submitted a declaration on behalf of MGA Mex two years ago (April 11, 2007) in connection with its motion to dismiss for lack of personal jurisdiction in which she identified her job title as "Director of Marketing." (Deposition Motion, p. 4 fn. 4 and Exh. A to Suppl. Zeller Decl.).

[27] At oral argument, Mattel's counsel asserted that MGA Mex presently employs 34 or 35 individuals, (Tr., pp. 15 – 16), but there is no admissible evidence before the Discovery Master to support such an assertion. Further, such a contention (if true) merely demonstrates that Vargas supervises, at most, approximately 25 percent of the employees at MGA Mex, and is insufficient to show that he can be deemed its "managing agent."

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 34 -

ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____ **41**
PAGE _____ **948**

1    on the issue of whether an employee is a managing agent is whether he or she "is

2    invested with *general* powers allowing him to exercise judgment and discretion in

3    corporate matters." (*Sugarhill*, 105 F.R.D. at 170 [emphasis added]). Here, the

4    current scope of Trueba's authority appears to be the opposite of "general:" she is

5    responsible for handling media and public relations. (Kuemmerle Tr., p. 97:14 – 15

6    attached as Exh. 9 to Kahn Decl.). Likewise, Vargas' authority, although somewhat

7    broader than that of Trueba, appears to be confined primarily to sales. (Second

8    Kuemmerle Decl., ¶ 3). There is no evidence that either of the Witnesses has any

9    authority over such things as internal administrative functions, budgeting, contracts

10   with vendors, and various other aspects of running a business.

11        The second *Sugarhill* factor (whether the individual can be relied upon to

12   give testimony at the employer's request) is satisfied, since the Witnesses are

13   current employees of MGA Mex who will presumably cooperate in their

14   employer's defense of Mattel's counterclaims by providing testimony at a

15   deposition.

16        Turning to the third *Sugarhill* factor (whether there are other MGA Mex

17   employees in positions of higher authority than the Witnesses in the area regarding

18   which the information is sought), the Discovery Master finds that the undisputed

19   testimony of Kuemmerle demonstrates that there are such MGA Mex employees:

20   Kuemmerle supervises Vargas and (through Machado) Trueba. (Second

21   Kuemmerle Decl., ¶¶ 3 and 4). Accordingly, this factor weighs against finding that

22   the Witnesses are "managing agents."

23        With respect to fourth factor (the general responsibilities of the Witnesses

24   respecting the matters involved in the litigation), Mattel's papers demonstrate that

25   the Witnesses do oversee aspects of MGA Mex which are directly addressed by

26   Mattel's Phase 2 counterclaims, namely sales and public relations (which, Mattel

27   contends, MGA Mex conducts using stolen Mattel trade secrets). (Deposition

28   Motion, pp. 4 – 7). Accordingly, this factor weighs in favor of deeming the

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 35 -                                ORDER NO. 11
                                      [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___41___

PAGE ___949___

1   Witnesses to be managing agents.

2          The last factor is the "loyalty" inquiry discussed above, namely whether the

3   Witnesses can be expected to identify with the interests of MGA Mex.  Because

4   they are being subjected to investigation in Mexico, have their own lawyers and the

5   MGA Defendants may take the position that if any Mattel documents were taken,

6   the Witnesses did it on their own, Vargas and Trueba's interests do not necessarily

7   align with the MGA Defendants in this matter.  It is unclear on this record whether

8   this factor weighs in favor of or against deeming the Witnesses to be managing

9   agents.

10      **C.      Summary Of The Discovery Master's Findings In Connection**

11              **With The Deposition Motion**

12          At this stage, Mattel has not met its initial burden to demonstrate that the

13   Witnesses are managing agents of MGA Mex.  The presumption in favor of the

14   party seeking discovery only applies (as Mattel itself acknowledges) in *close* cases.

15   (*Honda*, 168 F.R.D. at 540).  Given the current state of the evidence presented, this

16   is not such a case.[28]

17          Nevertheless, it is clear to the Discovery Master that the Witnesses have

18   information relating to several Phase 2 issues and that Mattel is entitled to take their

19   depositions.[29]  Accordingly, Mattel may promptly prepare letters rogatory and

20   submit them to the Discovery Master, who will see that the letters rogatory are

21   expeditiously issued by the Court.

22      **D.      Sanctions**

23              **1.      Mattel's Request For Sanctions**

24          Having found that the MGA Defendants have articulated a meritorious legal

---

[28] In light of the Discovery Master's finding that the Witnesses are not managing agents of MGA Mex, it is unnecessary for him to reach the question of where the depositions may be taken.

[29] The Discovery Master would not hesitate to enforce subpoenas propounded on the Witnesses if they resided in the United States and were being deposed in their individual capacities.  However, since they are foreign nationals who are not managing agents of MGA Mex (at least on the evidence presented), the Discovery Master does not have authority to compel the depositions under Rule 30(b)(1).

EXHIBIT ____41____

PAGE ____950____

1   and factual basis for their objections to the subject deposition notices, the Discovery

2   Master concludes that the refusal of the MGA Defendants to produce the Witnesses

3   was justified.  Accordingly, Mattel's request for sanctions is **DENIED**.

4         **2.**    **The MGA Defendants' Request For Sanctions**

5        The MGA Defendants request an award of sanctions against Mattel for

6   conduct related to Mattel's service of the Deposition Motion.  First, the MGA

7   Defendants contend that Mattel should have served the Deposition Motion on

8   Amman A. Kahn ("Kahn"), the main attorney at Glaser Weil with whom Mattel's

9   counsel had been communicating regarding the subject depositions.  The MGA

10   Defendants complain that, instead of doing so, Mattel served the Deposition Motion

11   on Kahn's colleague, Glaser, while the latter was out of town.  However, the MGA

12   Defendants do not explain why other attorneys in their office who were assigned to

13   the matter were not notified of the delivery of the Deposition Motion given Ms.

14   Glaser's absence.  Further, Mattel has submitted the declaration of its counsel,

15   Michael T. Zeller ("Zeller") attaching a proof of service reflecting that Mattel

16   served the Deposition Motion on all three law firms representing the MGA

17   Defendants at the same time (February 6, 2009) that the motion was filed.  (See

18   Suppl. Zeller Decl., Exh. E).

19        Second, the MGA Defendants argue that Mattel only served a redacted

20   version of the Deposition Motion on them at some later point, leaving them only

21   two days to draft and file opposing papers, and refused Kahn's request for a

22   reasonable extension of time.  (Kahn Decl., ¶¶ 3 - 4).  However, the Kahn Decl. is

23   vague regarding the date and manner in which Mattel is alleged to have belatedly

24   served the unredacted version of the Deposition Motion, (*id.*), and so the Discovery

25   Master is unable to ascertain whether Kahn's belated receipt of the motion was

26   caused by some conduct of Mattel, or instead, caused by internal delays within

27   Glaser Weil in routing the papers to the appropriate attorney.

28        Accordingly, the MGA Defendants' request for sanctions is **DENIED**.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 37 -

ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____41_____

PAGE _____951_____

## III.   DISPOSITION

1      A.      Mattel's Written Discovery Motion is **DENIED in part** and

**GRANTED in part**, as follows:

1.      Document Request Nos. 207, 208 and 269 directed to Larian:

The Motion is **GRANTED**.

2.      Document Request Nos. 4 – 37, 40, 41, 43 (erroneously

numbered in Mattel's Separate Statement as request number 42), 44 (erroneously

numbered in Mattel's Separate Statement as request number 43), 45 (erroneously

numbered in Mattel's Separate Statement as request number 44), and 46

(erroneously numbered in Mattel's Separate Statement as request number 45)

directed to MGA: The Motion is **GRANTED**.

3.      Interrogatory No. 45 directed to MGA:  The Motion is

**GRANTED**.

4.      Interrogatory Nos. 56 – 63 directed to MGA and Larian:

a.      The Motion is **GRANTED** with respect to Interrogatory

Nos. 56 and 57.

b.      Regarding Interrogatory Nos. 58 – 63, the Motion is

**GRANTED** subject to the following limitations:  The Discovery Master orders the

MGA Parties to identify all facts, documents or witnesses that they currently intend

to rely on at summary judgment or trial to demonstrate (i) they did not obtain any

MATTEL DOCUMENTS through improper means (i.e., Interrogatory No. 58),

(ii) that the information in the MATTEL documents did not derive independent

economic value (i.e., Interrogatory No. 59), (iii) any information in the MATTEL

DOCUMENTS was known to the public, (i.e., Interrogatory No. 60), (iv) the MGA

Parties independently developed, or did not otherwise use or disclose, any

information in the MATTEL DOCUMENTS (i.e., Interrogatory No. 61), (v) that

the MGA Parties have not benefited by their use of the information in the MATTEL

DOCUMENTS nor harmed Mattel (Interrogatory No. 62), and (vi) the MGA

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 38 -

ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____ 41

PAGE _____ 952

1   Parties had or have a right to copy, possess, use or disclose any MATTEL

2   DOCUMENT (Interrogatory No. 63).

3           5.      Interrogatory No. 67 directed to MGA and Larian:  The Motion

4   is **DENIED**.

5           6.      Regarding Interrogatory Nos. 68 and 69 directed to MGA and

6   Larian, the Motion is **GRANTED** subject to the following limitations:  The MGA

7   Parties are ordered to identify fully and separately each and every payment of

8   money or other item of value that they have made or offered to pay to or on behalf

9   of any former employee of Mattel since January 1, 1998, with the definition of

10  former Mattel employees re-defined as "all individuals that the MGA Parties are

11  aware of that worked for Mattel and who received any payment (excluding ordinary

12  salary and benefits paid to such person while an MGA employee) from the MGA

13  Parties."

14      **B.**     Mattel's Deposition Motion:

15          1.      Mattel's Deposition Motion is **DENIED**.

16          2.      Mattel's request for sanctions is **DENIED**.

17          3.      The MGA Defendants' request for sanctions is **DENIED**.

18

19  Dated:  March 30, 2009

20

21                              By:    /s/ Robert C. O'Brien
                                       ROBERT C. O'BRIEN
22                                     Discovery Master

23

24

25

26

27

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES
                                        - 39 -            ORDER NO. 11
                                               [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____ 41 _____

PAGE _____ 953 _____

# EXHIBIT 42

California Business Search

# California Business Portal

**Secretary of State DEBRA BOWEN**

DISCLAIMER: The information displayed here is current as of Dec 26, 2008 and is updated weekly. It is not a complete or certified record of the Limited Partnership or Limited Liability Company.

| LP/LLC | | |
|---|---|---|
| IGWT GROUP, LLC | | |
| Number: 200817910004 | Date Filed: 6/26/2008 | Status: active |
| Jurisdiction: CALIFORNIA | | |
| Address | | |
| 237 NORTH CAROLWOOD DRIVE | | |
| LOS ANGELES, CA 90077 | | |
| Agent for Service of Process | | |
| NATIONAL CORPORATE RESEARCH, LTD. (C2003899) | | |

Blank fields indicate the information is not contained in the computer file.

If the agent for service of process is a corporation, the address of the agent may be requested by ordering a status report. Fees and instructions for ordering a status report are included on the Business Entities Records Order Form.

EXHIBIT ___42___

PAGE ___954___

# EXHIBIT 43

California Business Search                                    Page 1 of 1



**Secretary of State DEBRA BOWEN**

**DISCLAIMER:** The information displayed here is current as of Jan 30, 2009 and is updated weekly. It is not a complete or certified record of the Limited Partnership or Limited Liability Company.

| LP/LLC | | |
|---|---|---|
| IGWT 826 INVESTMENTS, LLC | | |
| **Number:** 200824110196 | **Date Filed:** 8/27/2008 | **Status:** active |
| **Jurisdiction:** CALIFORNIA | | |
| **Address** | | |
| 156 COPLEY PL | | |
| BEVERLY HILLS, CA 90210 | | |
| **Agent for Service of Process** | | |
| NATIONAL CORPORATE RESEARCH, LTD. (C2003899) | | |

Blank fields indicate the information is not contained in the computer file.

If the agent for service of process is a corporation, the address of the agent may be requested by ordering a status report. Fees and instructions for ordering a status report are included on the Business Entities Records Order Form.

EXHIBIT ___43___

PAGE ___955___

# EXHIBIT 44

# State of California
## Secretary of State

### CERTIFICATE OF STATUS

**ENTITY NAME:**   OMNI 808 INVESTORS LLC

**FILE NUMBER:**          200822610026
**FORMATION DATE:**       08/12/2008
**TYPE:**                 DOMESTIC LIMITED LIABILITY COMPANY
**JURISDICTION:**         CALIFORNIA
**STATUS:**               ACTIVE (GOOD STANDING)

I, DEBRA BOWEN, Secretary of State of the State of California, hereby certify:

The records of this office indicate the entity is authorized to exercise all of its powers, rights and privileges in the State of California.

No information is available from this office regarding the financial condition, business activities or practices of the entity.



IN WITNESS WHEREOF, I execute this certificate and affix the Great Seal of the State of California this day of December 13, 2008.

**DEBRA BOWEN**
**Secretary of State**

NP-25 (REV 1/2007)

MMS
OSP 09 91731

EXHIBIT ____44____

PAGE ____956____



## State of California
### Secretary of State

I, DEBRA BOWEN, Secretary of State of the State of California, hereby certify:

That the attached transcript of ___1___ page(s) was prepared by and In this office from the record on file, of which it purports to be a copy, and that it is full, true and correct.



IN WITNESS WHEREOF, I execute this certificate and affix the Great Seal of the State of California this day of

DEC 1 3 2008

**DEBRA BOWEN**
Secretary of State

Sec/State Form CE 108 (REV 1/2007)                    GSP 09 99733

EXHIBIT ___44___

PAGE ___957___

2 0 0 8 2 2 6 1 0 0 2 6

| | |
|---|---|
| LLC-1 | File # |

**State of California**
**Secretary of State**

**FILED**
In the office of the Secretary of State
of the State of California

AUG 1 2 2008

**LIMITED LIABILITY COMPANY**
**ARTICLES OF ORGANIZATION**

A $70.00 filing fee must accompany this form.
**IMPORTANT – Read instructions before completing this form.**

This Space For Filing Use Only

**ENTITY NAME** (End the name with the words "Limited Liability Company," or the abbreviations "LLC" or "L.L.C." The words "Limited" and "Company" may be abbreviated to "Ltd." and "Co.," respectively.)

1. NAME OF LIMITED LIABILITY COMPANY

   OMNI 808 Investors LLC

**PURPOSE** (The following statement is required by statute and should not be altered.)

2. THE PURPOSE OF THE LIMITED LIABILITY COMPANY IS TO ENGAGE IN ANY LAWFUL ACT OR ACTIVITY FOR WHICH A LIMITED LIABILITY COMPANY MAY BE ORGANIZED UNDER THE BEVERLY-KILLEA LIMITED LIABILITY COMPANY ACT.

**INITIAL AGENT FOR SERVICE OF PROCESS** (If the agent is an individual, the agent must reside in California and both items 3 and 4 must be completed. If the agent is a corporation, the agent must have on file with the California Secretary of State a certificate pursuant to Corporations Code section 1505 and item 3 must be completed (leave item 4 blank).

3. NAME OF INITIAL AGENT FOR SERVICE OF PROCESS

   Corporation Service Company which will do business in California as CSC-Lawyers Incorporating Service

| 4. IF AN INDIVIDUAL, ADDRESS OF INITIAL AGENT FOR SERVICE OF PROCESS IN CALIFORNIA | CITY | STATE | ZIP CODE |
|---|---|---|---|
| | | CA | |

**MANAGEMENT** (Check only one)

5. THE LIMITED LIABILITY COMPANY WILL BE MANAGED BY:

   ☐ ONE MANAGER

   ☑ MORE THAN ONE MANAGER

   ☐ ALL LIMITED LIABILITY COMPANY MEMBER(S)

**ADDITIONAL INFORMATION**

6. ADDITIONAL INFORMATION SET FORTH ON THE ATTACHED PAGES, IF ANY, IS INCORPORATED HEREIN BY THIS REFERENCE AND MADE A PART OF THIS CERTIFICATE.

**EXECUTION**

7. I DECLARE I AM THE PERSON WHO EXECUTED THIS INSTRUMENT, WHICH EXECUTION IS MY ACT AND DEED.

August 12, 2008
DATE

_(signature)_
SIGNATURE OF ORGANIZER

Tricia A. Church
TYPE OR PRINT NAME OF ORGANIZER

LLC-1 (REV 04/2007)                                   APPROVED BY SECRETARY OF STATE

EXHIBIT _____ 44 _____

PAGE _____ 958 _____

# EXHIBIT 45

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 46

Robert C. O'Brien (SBN 154372)
ARENT FOX LLP
555 West Fifth Street, 48th Floor
Los Angeles, CA  90013-1065
Telephone:  213.629.7400
Facsimile:   213.629.7401
obrien.robert@arentfox.com

Discovery Master

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>                    Plaintiff,<br><br>          v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>                    Defendant. | Case No.  CV 04-09049 SGL (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-2727<br><br>**PHASE 2 DISCOVERY MATTER**<br><br>**ORDER NO. 43, REGARDING:**<br><br>   **DEPOSITIONS OF NEIL KADISHA AND LEON NEMAN** |
| CONSOLIDATED WITH<br>MATTEL, INC. v. BRYANT and<br>MGA ENTERTAINMENT, INC. v.<br>MATTEL, INC. | |

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

ORDER NO. 43
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___46___

PAGE ___1020___

1       As part of Order No. 33, the Discovery Master ordered Neil Kadisha and

2   Leon Neman to sit for their depositions "before the end of July." (Letter from Peter

3   Villar to Robert C. O'Brien dated July 24, 2009, p. 1).   Prior to the expiration of

4   this deadline, Messrs. Kadisha and Neman requested that the Discovery Master

5   extend it to September, 2009.  (*Id.*, p. 2; Letter from Todd Gordinier to Robert C.

6   O'Brien dated July 29, 2009, p. 1).  They claim a continuance of their depositions is

7   justified for two reasons.

8       First, they assert that "efficiency, judicial economy and fundamental

9   fairness" warrant an extension because they may have to be re-deposed again in the

10   future.  (Letter from Peter Villar to Robert C. O'Brien dated July 24, 2009, p. 1).

11   Put another way, they argue that other pending discovery disputes and the

12   possibility that Mattel, Inc. ("Mattel") may seek leave to file a Fourth Amended

13   Answer and Counterclaim "have the potential to require the production of

14   additional information or documents or otherwise alter the scope of the

15   depositions." (*Id.*; Letter from Todd Gordinier to Robert C. O'Brien dated July 29,

16   2009, p. 1).  These arguments are unsupported by any legal authority.  Federal Rule

17   of Civil Procedure 26(d)(2) makes clear that "methods of discovery may be used in

18   any sequence" by a party, including Mattel.  Therefore, Mattel may proceed with

19   the depositions at a time of its choosing, not when Messrs. Kadisha and Neman

20   believe that all pending discovery matters have been resolved to their satisfaction.

21   A rule to the contrary would create discovery gridlock.  The Discovery Master and

22   Court in this action will not allow multiple depositions of the same individual

23   without good cause, so if Mattel seeks to re-depose these witnesses at some future

24   point, the witnesses are free to seek a protective order.

25       Second, Messrs. Kadisha and Neman argue that "there are a number of . . .

26   scheduling problems that unfortunately require flexibility on the part of all parties

27   in scheduling these depositions," including Mr. Neman's unavailability due to an

28   unspecified medical issue involving his mother and scheduling conflicts in July and

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT ___**46**___      - 1 -      ORDER NO. 43
[Case No. CV 04-09049 SGL (RNBx)]

PAGE ___**1021**___

1   August for Mr. Kadisha, Todd Gordinier and MGA's counsel. (Letter from Peter

2   Villar to Robert C. O'Brien dated July 24, 2009, p. 1). While the Discovery Master

3   is sympathetic to any legitimate medical issue involving Mr. Neman's mother, the

4   mere assertion of a "serious medical condition" without specifying what days her

5   situation would render Mr. Neman unavailable is insufficient to allow proper

6   evaluation of the issue and set a date for his deposition. Further, with respect to

7   Mr. Kadisha's schedule as well as that of his counsel, the Discovery Master ordered

8   his deposition to proceed on May 18, 2009 and granted him forty-five days in

9   which to appear. This amount of time should have been more than sufficient for

10  any scheduling conflicts to have been avoided. Of course, counsel on both sides are

11  requested to work together in good faith to avoid undue burdens to each others' and

12  the witnesses' schedules.

13       Accordingly, the Discovery Master **ORDERS** as follows:

14       1.    Neil Kadisha shall sit for his deposition within ten (10) court days of

15  this Order and comply with Order No. 33 in all other respects.  Counsel for Neil

16  Kadisha shall immediately meet and confer with Mattel's counsel to determine a

17  mutually agreeable date within the foregoing period for Mr. Kadisha's deposition.

18  If no such agreement can be reached, Mattel may seek *ex parte* relief from the

19  Discovery Master, who will then set a date for the deposition.

20       2.    Counsel for Leon Neman shall immediately meet and confer with

21  Mattel's counsel to determine a mutually agreeable date for Mr. Neman's

22  deposition.  If no such agreement can be reached, Mattel may seek *ex parte* relief

23  from the Discovery Master, who will then set a date for the deposition.

24  Dated:      July 30, 2009

25

26                              By:     /s/ Robert C. O'Brien
27                                      ROBERT C. O'BRIEN
                                        Discovery Master
28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

                                        - 2 -                    ORDER NO. 43
                                                        [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____ 46

PAGE _____ 1022

**Tiffany Garcia**

| | |
|---|---|
| **From:** | Curran Walker |
| **Sent:** | Thursday, July 30, 2009 9:32 AM |
| **To:** | Michael T Zeller; MGA / Bryant Team; Mattel-MGA Paralegals |
| **Subject:** | RE: Activity in Case 2:04-cv-09049-SGL-RNB Carter Bryant v. Mattel Inc Miscellaneous Document |

**Attachments:** Phase 2 Discover Master Order No. 43.pdf

**From:** Michael T Zeller
**Sent:** Thursday, July 30, 2009 9:30 AM
**To:** MGA / Bryant Team; Mattel-MGA Paralegals
**Subject:** Fw: Activity in Case 2:04-cv-09049-SGL-RNB Carter Bryant v. Mattel Inc Miscellaneous Document

Please circulate pdf

**From:** cacd_ecfmail@cacd.uscourts.gov <cacd_ecfmail@cacd.uscourts.gov>
**To:** ecfnef@cacd.uscourts.gov <ecfnef@cacd.uscourts.gov>
**Sent:** Thu Jul 30 09:28:06 2009
**Subject:** Activity in Case 2:04-cv-09049-SGL-RNB Carter Bryant v. Mattel Inc Miscellaneous Document

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.
***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

**Notice of Electronic Filing**

The following transaction was entered by Hansen, Drew on 7/30/2009 at 9:28 AM PDT and filed on 7/30/2009
**Case Name:**        Carter Bryant v. Mattel Inc
**Case Number:**     2:04-cv-9049
**Filer:**                  Robert C O'Brien
**Document Number:** 6103

**Docket Text:**
PHASE 2 DISCOVERY MASTER - ORDER NO. 43 Re Depositions of Neil Kadisha and Leon Neman filed by Special Master Robert C O'Brien (Hansen, Drew)

EXHIBIT ____ **46**

7/30/2009

PAGE ____ **1023**

**2:04-cv-9049 Notice has been electronically mailed to:**

Alexander H Cote    acote@scheperkim.com, feseroma@scheperkim.com

Alisa M Morgenthaler    amorgenthaler@glaserweil.com

Annette L Hurst    ahurst@orrick.com

Brett Dylan Proctor    dylanproctor@quinnemanuel.com, westonreid@quinnemanuel.com

Byron Z Moldo    bmoldo@ecjlaw.com

Christian C Dowell    cdowell@kmwlaw.com

Craig A Taggart    craig.taggart@bingham.com, lan.ly@bingham.com

Cyrus S Naim    cyrusnaim@quinnemanuel.com

David C Scheper    dscheper@scheperkim.com, feseroma@scheperkim.com

David M Stern    dstern@ktbslaw.com

David W Foster    david.foster@skadden.com

David W Hansen    dhansen@skadden.com

Diane C Hutnyan    dianehutnyan@quinnemanuel.com, andreahoeven@quinnemanuel.com

Douglas Andrew Winthrop    dwinthrop@howardrice.com

Frank D Rorie , Jr    frorie@orrick.com

Ilan Wisnia    iwisnia@valleassociates.com

James I Stang    jstang@pszjlaw.com

Jason D Russell    jrussell@skadden.com, allison.velkes@skadden.com

Jeffrey B Valle    jvalle@valleassociates.com

Jennifer A Lopez    jennifer.lopez@bingham.com

John B Quinn    johnquinn@quinnemanuel.com

Jon D Corey    joncorey@quinnemanuel.com

Joseph C Sarles    josephsarles@quinnemanuel.com

Kenneth A Plevan    kenneth.plevan@skadden.com, drogosa@skadden.com, sumclaug@skadden.com

EXHIBIT ___**46**___

PAGE ___**1024**___

Kevin E Deenihan     kdeenihan@ktbslaw.com

L Kieran Kieckhefer     kkieckhefer@orrick.com

Larry W McFarland     lmcfarland@kmwlaw.com

Leah Chava Gershon     leah@spertuslaw.com

Linda M Burrow     burrow@caldwell-leslie.com, popescu@caldwell-leslie.com, wilson@caldwell-leslie.com

Marina Vladimir Bogorad     marina.bogorad@skadden.com

Mark E Overland     moverland@scheperkim.com, jhibino@scheperkim.com

Matthew C Bousquette     caldwell@caldwell-leslie.com

Matthew C Heyn     mheyn@ktbslaw.com

Melinda L Haag     mhaag@orrick.com

Michael P Kelly     mikelly@skadden.com

Michael T Zeller     michaelzeller@quinnemanuel.com

Nicole S Pelletier     npelletier@glaserweil.com

Patrick A Fraioli , Jr     pfraioli@ecjlaw.com

Patrick J. Fraioli, Jr.     pdavidson@ecjlaw.com

Peter A Davidson     pdavidson@ecjlaw.com

Peter N Villar     peter.villar@bingham.com, paul.mcconnell@bingham.com

Randa A F Osman     randaosman@quinnemanuel.com

Richard M Pachulski     jstang@pszjlaw.com

Robert C O'Brien     obrien.robert@arentfox.com

Robyn Aronson     robynaronson@dwt.com, frankromero@dwt.com

Rory S Miller     rorymiller@quinnemanuel.com, shawnaallison@quinnemanuel.com, westonreid@quinnemanuel.com

Sandra L Tholen     tholen@caldwell-leslie.com, mejia@caldwell-leslie.com, wilson@caldwell-leslie.com

Sanford I Weisburst     sandyweisburst@quinnemanuel.com

EXHIBIT _____ **46**

PAGE _____ **1025**

Stan Karas    stankaras@quinnemanuel.com, westonreid@quinnemanuel.com

Thomas J Nolan    tnolan@skadden.com, carl.roth@skadden.com, marcus.mumford@skadden.com

Thomas P Lambert    tpl@msk.com

Todd E Gordinier    todd.gordinier@bingham.com, craig.taggart@bingham.com,
julie.valenzuela@bingham.com, karina.ward@bingham.com, lan.ly@bingham.com,
michael.mortenson@bingham.com

William A Molinski    wmolinski@orrick.com, mm7@orrick.com

Yas Raouf    yraouf@orrick.com

**2:04-cv-9049 Notice has been delivered by First Class U. S. Mail or by fax to: :**

Cheryl Plambeck
Davis & Gilbert LLP
1740 Broadway
New York, NY 10019

Kien C Tiet
Stern and Goldberg
6345 Balboa Boulevard, Suite 200
Encino, CA 91316

Peter H Bonis
Peter H. Bonis Law Offices
1990 N. California Blvd, 8th Floor
Walnut Creek, CA 94596

Warrington S Parker , III
Orrick, Herrington & Sutcliffe LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**C:\Documents and Settings\westg\Desktop\Order 43.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=7/30/2009] [FileNumber=8193364-0]
[b73e7d9ebd6f4df7ee279c21937bdd22371bccb9d8e83c03d245f1dfb51ffcf0a649
924093de9f9622226ebdb326c755e90d5329b97674893ff4cc486bd4477d]]

EXHIBIT ___46___

7/30/2009                     PAGE ___1026___

# EXHIBIT 47

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 48

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 49

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 50

1

1          UNITED STATES DISTRICT COURT

2          CENTRAL DISTRICT OF CALIFORNIA

3                EASTERN DIVISION

4                  -  -  -

5      HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6                  -  -  -

7   MATTEL, INC.,                    )
                                     )
8                     Plaintiff,     )
                                     )
9             vs.                    )  No. CV 04-09049
                                     )
10  MGA ENTERTAINMENT, INC., ET. Al.,)
                                     )
11                    Defendants.    )  MOTIONS
                                     )
12  AND CONSOLIDATED ACTIONS,        )
                                     )

13

14

15          REPORTER'S TRANSCRIPT OF PROCEEDINGS

16                RIVERSIDE, CALIFORNIA

17               MONDAY, MAY 18, 2009

18                   1:52 P.M.

19

20

21

22

23              THERESA A. LANZA, RPR, CSR
                Federal Official Court Reporter
24              3470 12th Street, Rm. 134
                Riverside, California  92501
25                   951-274-0844
                   www.theresalanza.com

Monday, May 18, 2009   EXHIBIT ____ 50 ____ Mattel vs. MGA, et. Al.

PAGE ____ 1074

2

```
 1   APPEARANCES:

 2
     On behalf of Mattel, Inc.:
 3
                         QUINN EMANUEL
 4                       By:  JOHN QUINN
                              MICHAEL T. ZELLER
 5                            DYLAN PROCTOR
                              SCOTT B. KIDMAN
 6                       865 S. FIGUEROA STREET,
                         10th Floor
 7                       Los Angeles, California  90017
                         213-624-7707
 8
                         KLEE, TUCHIN, BOGDANOFF & STERN LLP
 9                       BY:  DAVID M. STERN
                         1999 Avenue of the Stars
10                       Thirty-Ninth Floor
                         Los Angeles, CA  90067
11                       310-407-4025

12

13   On Behalf of MGA Entertainment/Isaac Larian:

14                       SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
                         BY:  THOMAS J. NOLAN
15                            JASON RUSSELL
                              CARL ROTH
16                       300 South Grand Avenue
                         Los Angeles, California  90071-3144
17                       213-687-5000

18                       GLASER, WEIL, FINK, JACOBS
                          HOWARD & SHAPIRO, LLP
19                       BY:  PATRICIA GLASER
                         BY:  JOEL N. KLEVENS
20                       10250 Constellation Blvd.
                         Los Angeles, CA  90067
21                       310-553-3000

22                       MITCHELL SILBERBERG & KNUPP LLP
                         BY:  RUSSELL J. FRACKMAN
23                       11377 West Olympic Blvd.
                         Los Angeles, CA  90064-1683
24                       310-312-2000

25   /  /  /
     /  /  /
```

Monday, May 18, 2009   EXHIBIT ___50___   Mattel vs. MGA, et. Al.

PAGE ___1075___

3

```
 1   APPEARANCES (cont'd):

 2
     On Behalf of MGA Entertainment/Isaac Larian:
 3
                          PACHULSKI STANG ZIEHL & JONES
 4                        BY:  JAMES I. STANG
                          BY:  RICHARD PACHULSKI
 5                        10100 Santa Monica Blvd.,
                          11th Floor
 6                        Los Angeles, CA  90067-4100
                          310-277-6910
 7

 8   On Behalf of Isaac Larian:

 9                        JEFFER MANGELS BUTLER & MARMARO LLP
                          BY:  JOSEPH A. EISENBERG
10                        1900 Avenue of the Stars
                          7th Floor
11                        Los Angeles, CA  90067-4308
                          310-203-8080
12

13   On Behalf of Defendants Omni 808:

14                        BINGHAM McCUTCHEN LLP
                          BY:  TODD E. GORDINIER
15                        BY:  PETER N. VILLAR
                          600 Anton Boulevard,
16                        18th Floor
                          Costa Mesa, CA  92626-1924
17                        714-830-0622

18
     On Behalf of Crum & Forster:
19
                          MUSICK, PEELER & GARRETT LLP
20                        BY:  JENNIFER M. KOKES
                          One Wilshire Boulevard
21                        Los Angeles, CA  90017
                          213-629-7618
22

23   ALSO PRESENT:        Patrick A. Fraioli, Jr.,
                          Ambassador Pierre Prosper
24                        Robert O'Bryan
                          Michael J. Bidart
25
```

Monday, May 18, 2009   EXHIBIT ____50____   Mattel vs. MGA, et. Al.

PAGE ____1076____

4

1              I N D E X

2                                              PAGE

3    MOTIONS.....................................     5

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Monday, May 18, 2009    EXHIBIT ___ **50**    Mattel vs. MGA, et. Al.

PAGE ___ **1677**

5

```
 1          Riverside, California; Monday, May 18, 2009; 1:52 P.M.

 2                              -oOo-

 3          THE CLERK:  Calling calendar item number 18,

 4     Case Number CV 04-09049-SGL, Mattel, Inc., v. MGA

 5     Entertainment, Inc., et al.                                01:52

 6          Counsel, please state your appearances for the

 7     record.

 8          MR. QUINN:  John Quinn, Mike Zeller, Dylan Proctor

 9     for Mattel.

10          MS. GLASER:  Patricia Glaser for MGA.              01:52

11          MR. KLEVENS:  Joel Klevens for MGA.

12          MR. FRACKMAN:  Russell Frackman for MGA and

13     Mr. Larian.

14          MR. EISENBERG:  Joseph Eisenberg appearing on behalf

15     of Mr. Larian.                                          01:52

16          MR. NOLAN:  Tom Nolan on behalf of MGA and

17     Isaac Larian.

18          MR. STANG:  James Stang and Richard Pachulski

19     appearing for MGA.

20          MR. GORDINIER:  Todd Gordinier appearing for       01:53

21     Omni 8 Oasis, with my partner Peter Villar.

22          THE COURT:  Good afternoon to you all.

23          We have several matters on calendar this afternoon

24     that the Court wants to get through.

25          The first matter that I'd like to take up is Mattel's  01:53
```

Monday, May 18, 2009      EXHIBIT ____50____  Mattel vs. MGA, et. Al.

                          PAGE ____1678____

1  then, arguably, the necessary parties that would have to flow
2  from that would exceedingly complicate an already exceedingly
3  complicated case.

4        I don't know if that's really relevant to the issue
5  of whether or not amendments should be afforded.  It's a                02:12
6  complicated case to begin with.  It will be more complicated.
7  As much as I might like there to be, there's not a cutoff in
8  terms of complication, where I could just say, 'This is too
9  much; we're stopping here.'

10       So that's kind of where I am right now, Ms. Glaser.            02:12
11       I'm going to give you the first opportunity to
12  respond, given my tentative thoughts.

13       MS. GLASER:  Your Honor -- and I don't want to be
14  glib, because obviously, these are serious allegations being
15  made, which we believe 95 percent of them have no basis in fact   02:13
16  or law.

17       But, Your Honor, under your theory, if Mr. Larian
18  runs a stop sign out here in front of the courthouse tomorrow,
19  can we amend the complaint and include that as well, simply
20  because we have a Rule 15 and that rules -- the Court wishes      02:13
21  to --

22       THE COURT:  Well, no.  The Court doesn't have
23  jurisdiction over a stop sign out in front of the courthouse.

24       MS. GLASER:  My point is this -- and, again, let's
25  start with the RICO -- the predicate acts.                        02:13

Monday, May 18, 2009   EXHIBIT ____50____ Mattel vs. MGA, et. Al.

PAGE ____1079____

1          **THE COURT:**   The Court does have jurisdiction over

2    RICO.

3          **MS. GLASER:**   Thank you, Your Honor.

4          Under the rubric of a fraudulent conveyance, we have

5    a whole new theory, a whole new theory.   There is no legitimate          02:13

6    reason to add these claims to the lawsuit.   This is a separate

7    and distinct counterclaim, with 17 new individuals.   And to

8    blindly come in and tell Your Honor, in a reply brief, 'not to

9    worry, it's all alter ego anyway, so what's the problem,' is

10   offensive to everybody in this courtroom.   That is not the          02:14

11   appropriate standard.   And that is not the law.   And it's

12   certainly not the truth.

13         Again, each one of these people are entities; they

14   have to be served.   A number of them, presumably -- I don't

15   know that for a fact -- are going to object to jurisdiction.          02:14

16   There are alter-ego issues, by Mattel's own description.   At

17   least ten different entities are going to have to be litigated.

18   The 2008 financial transactions have no relationship whatsoever

19   to Mattel's other claims of predicate acts and RICO, et cetera.

20   There are no damages yet.   There is a contingent final          02:15

21   judgment, and there's an appeal.

22         It is no surprise to Your Honor that MGA doesn't

23   agree with the verdict, and we'll be appealing.

24         **THE COURT:**   I understand.

25         **MS. GLASER:**   That's contingent.          02:15

Monday, May 18, 2009   EXHIBIT ___*50*___   Mattel vs. MGA, et. Al.

PAGE ___1080___

1         Our view -- and I don't say this lightly; I'm

2    certainly not addressing this to the Court -- we think the

3    purpose of this, quote, big new conspiracy, this big new RICO,

4    is to throw around foreign-sounding names and character

5    assassinations when there is no basis, in fact, for this.          02:15

6         You're going to hear from Omni's counsel.  Before we

7    even get -- I've given you eight reasons; I've tried to give

8    you eight reasons -- before you even get to the merits of the

9    claim -- Omni's counsel is going to address that part of it --

10   but these, Your Honor, if I'm understanding the claims being        02:15

11   made in, I guess, new proposed Paragraph 136, there is no

12   basis, in fact, for the Omni claims.  And Omni will address

13   that separately.

14        With respect to the IGWT, the buying back of

15   merchandise, that's been addressed.  There's no nefarious thing     02:16

16   going on here.  Our papers address that.  We haven't heard

17   anything on the merits that would justify expanding the case

18   geometrically.

19        **THE COURT:**  But is this the time to address that,

20   Counsel?  I understand in the context of the receivership          02:16

21   issue -- and the Court certainly wants to take up those

22   allegations -- but putting that aside, in terms of where we

23   are, applying the standard -- and you haven't addressed the

24   standard, and I really wish you would, because I do want to

25   make sure that I'm correct in that.                                 02:16

Monday, May 18, 2009   EXHIBIT ___50___   Mattel vs. MGA, et. Al.

PAGE ___1081___

1          **MS. GLASER:**  You're talking about the Rule 15

2     standard?

3          **THE COURT:**  Right.  Right.

4          And given the law of this Circuit, in terms of how

5     the Court is to treat amendments under that standard; that's          02:16

6     point one.  And then point two, you may be 100 percent correct

7     that we're going to add all of these alter-ego issues, a number

8     of the service problems.  There's all kinds of -- these are the

9     complications that I'm referring to.

10         There's the part of me that would just love to see          02:17

11    that go away, because I know that's a tremendous amount of work

12    and a tremendous amount of paper and a tremendous amount of

13    trees.  But putting that aside, I don't know how, under the

14    law, that figures into the Rule 15 analysis.

15         **MS. GLASER:**  And I want to address that in two          02:17

16    respects.

17         **THE COURT:**  We're not at 12(b)6; we're not at summary

18    judgment.  We're simply at a pleading stage.

19         **MS. GLASER:**  Well into this litigation.

20         **THE COURT:**  That's true.  And I have particular          02:17

21    concerns about one of the allegations that could have been

22    brought in the second amended answer and counterclaim.  But

23    putting that one aside, all of these others are ones that have

24    emerged since the filing of that particular answer.

25         **MS. GLASER:**  Your Honor, your scheduling order of          02:17

Monday, May 18, 2009  EXHIBIT____**50**____ Mattel vs. MGA, et. Al.

PAGE____**1082**____

125

1      **MS. GLASER:**  And we haven't had the benefit of that.

2  I think if we're paying -- at least temporarily, we at least

3  ought to see --

4      **THE COURT:**  Part of what will occur at this point is

5  a complete accounting of all money spent during the 20-day          05:05

6  temporary receivership.  You will be receiving that shortly

7  from Mr. Fraioli, which will account for all of the money

8  spent.  And on a going-forward basis, the Court will specify

9  how future payments are to be made.

10      And as I indicated before, at the end of the day,           05:05

11  everyone will have the opportunity to revisit the issue of cost

12  sharing.

13      **MS. GLASER:**  Thank you very much.

14      **THE COURT:**  Is there anything further?

15      **MR. QUINN:**  No, Your Honor.                             05:06

16      **THE COURT:**  Have a good evening.

17      (Court is adjourned.)

18                      CERTIFICATE

19

20  I hereby certify that pursuant to section 753, title 28, United
    States Code, the foregoing is a true and correct transcript of
21  the stenographically recorded proceedings held in the above-
    entitled matter and that the transcript page format is in
22  conformance with the regulations of the Judicial Conference of
    the United States.

23

24  _____        _May 29, 2009_
    THERESA A. LANZA, CSR, RPR                     Date
25  Federal Official Court Reporter

Monday, May 18, 2009                    Mattel vs. MGA, et. Al.

EXHIBIT _____50_____

PAGE _____1083_____