# EXHIBIT 58



1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 90378)
2      (johnquinn@quinnemanuel.com)
     Michael T. Zeller (Bar No. 196417)
3      (michaelzeller@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
4  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
5  Facsimile: (213) 443-3100

6  Attorneys for Mattel, Inc.

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10  CARTER BRYANT, an individual,          CASE NO. CV 04-9049 SGL (RNBx)

11           Plaintiff,                    Consolidated With Case No. 04-9059 and
                                           Case No. 05-2727
12       v.
                                           MATTEL, INC.'S ~~THIRD~~FOURTH
13                                         AMENDED ANSWER IN CASE NO.
                                           05-2727 AND COUNTERCLAIMS FOR:
14  MATTEL, INC., a Delaware
   corporation,                            1.  COPYRIGHT INFRINGEMENT;
15           Defendant.                    2.  VIOLATION OF THE
                                               RACKETEER INFLUENCED AND
16                                             CORRUPT ORGANIZATIONS
                                               ACT;
17  ───────────────────────────           3.  CONSPIRACY TO VIOLATE THE
                                               RACKETEER INFLUENCED AND
18  AND CONSOLIDATED CASES                     CORRUPT ORGANIZATIONS
                                               ACT;
19                                         4.  MISAPPROPRIATION OF TRADE
                                               SECRETS;
20                                         5.  BREACH OF CONTRACT;
                                           6.  INTENTIONAL INTERFERENCE
21                                             WITH CONTRACT;
                                           7.  BREACH OF FIDUCIARY DUTY;
22                                         8.  AIDING AND ABETTING
                                               BREACH OF FIDUCIARY DUTY;
23                                         9.  BREACH OF DUTY OF
                                               LOYALTY;
24

25                                         **CONFIDENTIAL -- FILED UNDER
26                                         SEAL PURSUANT TO
                                           PROTECTIVE ORDER**

27                                         **Volume I**
                                         EXHIBIT 58
28                                         PAGE 12/3

~~THIRD~~FOURTH AMENDED ANSWER AND COUNTERCLAIMS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

10.  AIDING AND ABETTING
     BREACH OF DUTY OF
     LOYALTY;
11.  CONVERSION;
12.  UNFAIR COMPETITION;
13.  AVOIDANCE OF INTENTIONAL
     AND CONSTRUCTIVE
     FRAUDULENT TRANSFERS
     UNDER UNIFORM
     FRAUDULENT TRANSFER ACT;
     ~~AND~~
14.  BREACH OF CONSTRUCTIVE
     TRUST; AND
~~14.~~15.  DECLARATORY RELIEF

DEMAND FOR JURY TRIAL

EXHIBIT 58
PAGE 1214

00505.07209/2875224.10/
975/3029070.5

~~THIRD~~FOURTH AMENDED ANSWER AND COUNTERCLAIMS

1                ~~THIRD~~FOURTH AMENDED ANSWER

2        Defendant Mattel, Inc. ("Mattel") answers the Complaint of MGA

3 Entertainment, Inc. ("Complaint") as follows:

4                Preliminary Statement

5        The Complaint in this case contravenes <u>Rule</u> 8(a) of the <u>Federal Rules</u>

6 <u>of Civil Procedure</u> in multiple respects.  For example, in many places, the Complaint

7 improperly mixes factual averments with argumentative rhetoric.  The Complaint

8 also includes a selective recitation of alleged historical facts and "rumor," much of

9 which is both irrelevant and inflammatory in tone and content.  In addition, many of

10 the allegations of the Complaint are overly broad, vague or conclusory and include

11 terms which are undefined and which are susceptible to different meanings.

12 Accordingly, by way of a general response, all allegations are denied unless

13 specifically admitted, and any factual averment admitted is admitted only as to the

14 specific facts and not as to any conclusions, characterizations, implications or

15 speculations which are contained in the averment or in the Complaint as a whole.

16 These comments and objections are incorporated, to the extent appropriate, into

17 each numbered paragraph of this ~~Third~~<u>Fourth</u> Amended Answer.

18          Mattel further submits that the use of the headings throughout the

19 Complaint is improper, and therefore no response to them is required.  In the event

20 that a response is required, Mattel denies those allegations.

21          The Complaint also contains many purported photographs of various

22 items, and it uses one or more headings purporting to describe, either individually or

23 in groups, these various photographs.  The images of these photographs contained in

24 the Complaint are all relatively small and some are of less than optimal quality,

25 making it difficult to evaluate the adequacy of the photographs or their fairness and

26 accuracy in depicting what they purport to represent.  The Complaint also does not

27 describe the circumstances or time frame in which these photographs were taken,

28 and in many cases does not identify, or does not sufficiently or properly identify, the

1  item depicted in the photographs.  All of these factors, as well as the use of these

2  photographs and headings out of context, or with an insufficient context, impair the

3  ability of Mattel to fully respond to these photographs and headings, or to any

4  purported allegations involving, or relying upon, the use of such photographs and

5  accompanying headings.  By way of a general response, Mattel therefore does not

6  admit the authenticity of any photograph, or the accuracy or adequacy of any

7  heading, nor does it admit any allegation or inference that is based on, or purports to

8  be based on, any photograph or accompanying heading in the Complaint.  Mattel

9  reserves the right to challenge the authenticity of any photograph and the accuracy

10  or adequacy of any heading (either as included in the Complaint or in the context of

11  additional material not included).  Further, with reference to all photographs and

12  accompanying headings, or any averments based on the Complaint's use of such

13  photographs and headings, which might be offered into evidence, Mattel specifically

14  reserves its right to object to any use of such photographs, headings, and averments,

15  or the Complaint as a whole or in part, in evidence for any purpose whatsoever.

16      To the extent that Mattel has endeavored to answer any particular

17  allegation containing any such photographs and headings, any admission concerning

18  the item purported to be depicted in such photograph, or described in such headings,

19  shall not constitute an admission that the photograph is authentic, adequate, or

20  admissible, nor that any heading is accurate, adequate, or admissible.  All such items

21  purportedly depicted in such photographs, and described in such headings, "speak

22  for themselves."  Accordingly, to the extent that any such referenced materials are

23  deemed allegations against Mattel, they are denied.

<u>Responses</u>

25      1.      Answering paragraph 1 of the Complaint, Mattel admits that

26  plaintiff MGA Entertainment, Inc. ("plaintiff" or "MGA") is a California

27  corporation with a principal place of business in Van Nuys, California.

28

EXHIBIT  58

PAGE  1216          -2-

~~THIRD~~FOURTH AMENDED ANSWER AND COUNTERCLAIMS

1          2.      Answering paragraph 2 of the Complaint, Mattel admits that

2   Mattel is a Delaware corporation with a principal place of business in El Segundo,

3   California.

4          3.      Answering paragraph 3 of the Complaint, Mattel denies that

5   there has been wrongful conduct on its part and states that it is without knowledge

6   or information sufficient to form a belief as to the truth or falsity of the remaining

7   allegations set forth therein and, on that basis, denies them.

8          4.      Answering paragraph 4 of the Complaint, Mattel admits that

9   plaintiff purports to assert claims under the Lanham Act, 15 U.S.C. §§ 1125(a) and

10  (c), California Business and Professions Code §§ 17200 et seq., California Business

11  and Professions Code § 14330 and California common law, denies that plaintiff is

12  entitled to any relief thereunder and denies the truth of the remaining allegations set

13  forth in paragraph 4.

14         5.      Answering paragraph 5 of the Complaint, Mattel admits that it is

15  subject to personal jurisdiction in this District and denies the truth of the remaining

16  allegations set forth in paragraph 5.

17         6.      Answering paragraph 6 of the Complaint, Mattel admits that

18  venue is proper in this District and denies the truth of the remaining allegations set

19  forth in paragraph 6.

20         7.      Answering paragraph 7 of the Complaint, Mattel admits that

21  MGA has filed the instant lawsuit and denies the truth of the remaining allegations

22  set forth in paragraph 7.

23         8.      Answering paragraph 8 of the Complaint, Mattel states that it is

24  without knowledge or information sufficient to form a belief as to the truth or falsity

25  of the allegations regarding MGA's history set forth therein and, on that basis,

26  denies them, states that MGA has made conflicting representations, including in

27  sworn statements, that are at odds with the allegations of the Complaint and denies

28  the truth of the remaining allegations set forth in paragraph 8.

EXHIBIT ___58___          -3-

PAGE ___121___          THIRDFOURTH AMENDED ANSWER AND COUNTERCLAIMS

1          9.     Answering paragraph 9 of the Complaint, Mattel admits that

2  MGA filed this action, states that Mattel's web site and corporate governance

3  policies speak for themselves and denies the truth of the remaining allegations set

4  forth in paragraph 9.

5          10.    Answering paragraph 10 of the Complaint, Mattel admits that it

6  is the world's most successful toy company, states that the first doll in its BARBIE

7  line was publicly introduced in 1959 and that BARBIE-branded dolls have been the

8  world's best-selling toys, states that Mattel's sales and stock price speak for

9  themselves, and denies the truth of the remaining allegations set forth in paragraph

10  10.

11         11.    Answering paragraph 11 of the Complaint, Mattel admits that

12  Adrienne Fontanella is the former president for girls' toys at Mattel, states that it is

13  without knowledge or information sufficient to form a belief as to the truth or falsity

14  of the allegations regarding an alleged statement by Ms. Fontanella, and denies the

15  truth of the remaining allegations set forth in paragraph 11.

16         12.    Answering paragraph 12 of the Complaint, Mattel is without

17  knowledge or information sufficient to form a belief as to the truth or falsity of the

18  allegations regarding alleged statements by unidentified "analysts," states that

19  Mattel's sales and stock price speak for themselves, and denies the truth of the

20  remaining allegations set forth in paragraph 12.

21         13.    Answering paragraph 13 of the Complaint, Mattel admits that Jill

22  Barad became President and Chief Executive Officer of Mattel in January 1997, that

23  Mattel acquired Tyco Industries, Inc. ("Tyco") in March 1997, that Mattel acquired

24  Pleasant Company in 1998, Mattel acquired the Learning Company in May 1999,

25  that Mattel acquired Purple Moon in 1999, that the MATCHBOX brand was owned

26  by Tyco, that the AMERICAN GIRL line of dolls was made by Pleasant Company

27  at the time of that entity's acquisition, and denies the truth of the remaining

28  allegations set forth in paragraph 13.

14.     Answering paragraph 14 of the Complaint, Mattel states that its public announcements speak for themselves, and denies the truth of the remaining allegations set forth therein.

15.     Answering paragraph 15 of the Complaint, Mattel states that its stock price and its public announcements speak for themselves, and denies the truth of the remaining allegations set forth therein.

16.     Answering paragraph 16 of the Complaint, Mattel states that its stock price speaks for itself, states that it is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations regarding the alleged views of unnamed "analysts" and "[i]nvestors," and denies the truth of the remaining allegations set forth therein.

17.     Answering paragraph 17 of the Complaint, Mattel admits that Ms. Barad resigned in February 2000.

18.     Answering paragraph 18 of the Complaint, Mattel admits that Robert Eckert became Chairman and Chief Executive Officer of Mattel in May 2000 and that Mr. Eckert previously was employed at Kraft Foods, Inc. for 23 years, is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations regarding the views of unnamed "[i]nvestors" and others, and denies the truth of the remaining allegations set forth in paragraph 18.

19.     Answering paragraph 19 of the Complaint, Mattel admits that the *Wall Street Journal* published an article on August 10, 2000, the content of which speaks for itself, and denies the truth of the remaining allegations set forth therein.

20.     Answering paragraph 20 of the Complaint, Mattel admits that it disposed of the Learning Company in October 2000, states that its sales and revenues speak for themselves, states that the remainder of the allegations contained therein are characterizations, not factual assertions, and therefore no response is necessary under Fed. R. Civ. P. 8(b) and, to the extent any further response is required, denies the truth of any remaining allegations set forth in paragraph 20.

1    21.    Answering paragraph 21 of the Complaint, Mattel admits that
2  products in plaintiff's "Bratz" line compete with products in Mattel's BARBIE and
3  other product lines and states that the remainder of the allegation contained
4  therein—consisting of a sentence fragment—is unintelligible and on that basis
5  denies the truth of any such remaining allegation set forth therein.

6    22.    Answering paragraph 22 of the Complaint, Mattel admits that
7  products in plaintiff's "Bratz" line compete with Mattel products, states that the
8  remainder of the allegations contained therein are characterizations, not factual
9  assertions, and that therefore no response is necessary under Fed. R. Civ. P. 8(b)
10  and, to the extent any further response is required, denies the truth of any remaining
11  allegations set forth therein.

12    23.    Answering paragraph 23 of the Complaint, Mattel states that
13  MGA has made conflicting statements, including in sworn statements, that are
14  inconsistent with the allegations set forth in paragraph 23 of the Complaint and
15  states that it is therefore without knowledge or information sufficient to form a
16  belief as to the truth or falsity of the allegations set forth therein and, on that basis,
17  denies them.

18    24.    Answering paragraph 24 of the Complaint, Mattel states that the
19  "look" of the referenced dolls speak for themselves and denies the truth of the
20  remaining allegations set forth therein.  By way of further answer, Mattel states that
21  the photographs and their accompanying caption on page 7 of the Complaint are
22  false and misleading to the extent they are intended to suggest that MGA has
23  produced or used a consistent packaging shape or look or that it has protectible
24  rights in the matters depicted in the photographs.

25    25.    Answering paragraph 25 of the Complaint, Mattel admits that
26  Bratz dolls are between approximately 9.5 to 10 inches in height, states that the
27  appearances of the dolls speak for themselves, denies that "Bratz" dolls are or "were
28  intentionally shorter" than dolls in Mattel's BARBIE line, denies that the "Bratz"

EXHIBIT  55
PAGE  1220

-6-

THIRD FOURTH AMENDED ANSWER AND COUNTERCLAIMS

1  dolls "looked like no other" and denies the truth of the remaining allegations set
2  forth in paragraph 25.

3       26.    Answering paragraph 26 of the Complaint, Mattel states that the
4  use of the term "classic" is unintelligible, since Mattel has designed and sold
5  different dolls using different heads and with different fashions and themes over the
6  years, and denies the truth of any remaining allegations.  By way of further answer,
7  Mattel states that the image encaptioned "Mattel's 'Barbie'" on page 8 of the
8  Complaint is misleading in that it depicts one of the doll heads that have been used
9  as part of the BARBIE line for many years, and therefore ignores that Mattel has
10 long designed and sold an array of different BARBIE line dolls that use different
11 doll heads, including doll heads which depict different ethnicities, and that are
12 dressed in different clothing and fashion styles.

13      27.    Answering paragraph 27 of the Complaint, Mattel admits that
14 MGA has used the line "The Girls With a Passion for Fashion" in some contexts,
15 denies that MGA originated or otherwise has rights to that phrase, admits that one
16 audience for products in the "Bratz" line has been "tweens" and denies the truth of
17 the remaining allegations set forth in paragraph 27.

18      28.    Answering paragraph 28 of the Complaint, Mattel admits that
19 certain "Bratz" dolls have won certain awards, the terms of which speak for
20 themselves, states that it is without knowledge or information sufficient to form a
21 belief as to the truth or falsity of the allegations regarding the "awards" MGA claims
22 and, on that basis, denies them, denies that plaintiff has protectible rights and denies
23 the truth of any remaining allegations set forth in paragraph 28.

24      29.    Answering paragraph 29 of the Complaint, Mattel admits that
25 dolls in the "Bratz" line compete with dolls in Mattel product lines, denies that
26 Mattel has or has ever had a "stranglehold" on any market, states that the market
27 allegations contained in paragraph 29 are vague and ambiguous, including without
28 limitation in that the allegations fail to specify what products among the parties'

1 | respective lines are being referred to and what time period is being referred to, and

2 | denies the truth of any remaining allegations set forth in paragraph 29.

3 |        30.    Answering paragraph 30 of the Complaint, Mattel admits that

4 | MGA has been a licensee of Mattel, states that the market allegations are vague and

5 | ambiguous, including without limitation in that the allegations fail to specify what

6 | products are being referred to and what time periods or points in time are being

7 | referred to, and states that the remainder of the allegations contained therein are

8 | characterizations, not factual assertions, and therefore no response is necessary

9 | under <u>Fed. R. Civ. P.</u> 8(b) and, to the extent any further response is required, denies

10 | the truth of any remaining allegations set forth in paragraph 30.

11 |        31.    Answering paragraph 31 of the Complaint, Mattel states that the

12 | allegations contained therein are characterizations, not factual assertions, and

13 | therefore no response is necessary under <u>Fed. R. Civ. P.</u> 8(b) and, to the extent any

14 | further response is required, denies the truth of the allegations set forth in paragraph

15 | 31.

16 |        32.    Answering paragraph 32 of the Complaint, Mattel denies the

17 | truth of the allegations set forth therein.

18 |        33.    Answering paragraph 33 of the Complaint, Mattel denies the

19 | truth of the allegations set forth therein.

20 |        34.    Answering paragraph 34 of the Complaint, Mattel states that it

21 | has released various MY SCENE dolls, including MY SCENE dolls named

22 | "Madison", "Chelsea" and "Barbie," states that the appearance of the Bratz and MY

23 | SCENE dolls speak for themselves, denies that Mattel designed its MY SCENE

24 | dolls to "evoke" or resemble the alleged "look" of "Bratz" dolls, denies that plaintiff

25 | has protectible rights, states that MGA has made conflicting representations that are

26 | at odds with the allegations of the Complaint and that it is therefore without

27 | knowledge or information sufficient to form a belief as to the truth or falsity of the

28 | allegations regarding the "launch" of Bratz dolls set forth therein and, on that basis,

1   denies them, and denies the truth of the remaining allegations set forth therein.  By

2   way of further answer, Mattel states that the photographs and their accompanying

3   captions on page 10 of the Complaint are misleading and false to the extent they are

4   intended to suggest that a particular Mattel doll has been changed over time as

5   purportedly depicted.  Among other things, Mattel has long designed and sold an

6   array of different BARBIE line dolls using different doll heads, and the photographs

7   encaptioned "Mattel's Traditional 'Barbie'" is one of the doll heads that has been

8   used, and continues to be used, as part of the BARBIE line.  In addition, the

9   photographs encaptioned MY SCENE doll "circa 2002" is, in fact, a Mattel doll

10  character called BARBIE that continues to be sold and/or marketed with that head,

11  and the photographs encaptioned MY SCENE doll "circa 2004" depict a MY

12  SCENE doll character separate and apart from the one depicted in the "circa 2002"

13  image (and is not a revised character as plaintiff apparently attempts to imply).

14          35.     Answering paragraph 35 of the Complaint, Mattel admits that

15  Mattel released a product line called FLAVAS, states that the appearance of the

16  FLAVAS dolls speaks for themselves, states that it is without knowledge or

17  information sufficient to form a belief as to the truth or falsity of the allegations

18  regarding the  "rumor" relied upon by plaintiff and the undefined "media"

19  purportedly quoting Isaac Larian and, on that basis, denies them, denies that Mattel

20  has abandoned the FLAVAS line, and denies the truth of the remaining allegations

21  set forth in paragraph 35.

22          36.     Answering paragraph 36 of the Complaint, Mattel denies the

23  truth of the allegations set forth therein.

24          37.     Answering paragraph 37 of the Complaint, Mattel denies the

25  truth of the allegations set forth therein.  By way of further answer, Mattel states that

26  the unnumbered photographs and their accompanying captions on pages 11 through

27  16 of the Complaint -- which apparently were included to purportedly support the

28  allegation that MY SCENE dolls "became 'Bratz,'" which allegation Mattel

1  specifically denies -- are false and misleading.  Among other things, the heads

2  depicted are among an array of different doll heads that Mattel has used, and

3  continues to use, over the course of many years.  Moreover, the images purport to

4  compare different Mattel doll lines to show alleged changes in appearance even

5  though, in fact, each of the heads are currently sold and/or marketed to the public.

6  The "Blonde" series of photographs encaptioned "original" and "recent" MY

7  SCENE is further and specifically misleading in that it purports to compare two

8  differently named and outfitted dolls in the MY SCENE doll line, both of which

9  continue to be sold and/or marketed.

10       38.     Answering paragraph 38 of the Complaint, Mattel states that the

11  phrase "the 'BRATZ' eye" is unintelligible, denies that MGA has rights therein,

12  denies that MGA was the originator of or the first to use the eye shape or makeup

13  depicted as purportedly constituting "the 'BRATZ' eye," denies that Mattel has

14  copied the "the 'BRATZ' eye" and denies the truth of the remaining allegations

15  contained in paragraph 38.  By way of further answer, Mattel states that the

16  unnumbered photographs and accompanying caption on page 13 of the Complaint

17  are false and misleading.  Among other things, the purported "Original Mattel 'My

18  Scene' Eye" is one of the eye and makeup designs that Mattel has used over the

19  course of many years, and Mattel continues to sell and/or market dolls using the eye

20  and makeup design depicted therein.

21       39.     Answering paragraph 39 of the Complaint, Mattel states that the

22  phrase "the 'BRATZ' eye" is unintelligible, denies that MGA has rights therein,

23  denies that MGA was the originator of or the first to use the eye shape or makeup

24  purportedly described as constituting "the 'BRATZ' eye," denies that Mattel has

25  copied "the 'BRATZ' eye," states that the relevant dolls speak for themselves and

26  denies the truth of the remaining allegations contained in paragraph 39.  By way of

27  further answer, Mattel states that the unnumbered photographs and accompanying

28  captions on page 14 of the Complaint are false and misleading.  Among other things,

1  the purported "New Mattel 'My Scene' Eye" is one of the eye and makeup designs

2  that Mattel has used over the course of many years, and Mattel continues to sell

3  and/or market dolls using the eye and makeup design depicted on page 14 of the

4  Complaint.

5          40.    Answering paragraph 40 of the Complaint, Mattel denies the

6  truth of the allegations therein.  By way of further answer, Mattel states that the

7  unnumbered photographs and their accompanying captions on pages 15 to 16 are

8  false and misleading.  Among other things, the heads depicted are among an array of

9  different doll heads that Mattel has used, and continues to use, over the course of

10 many years.  Moreover, the photographs purport to compare different Mattel doll

11 lines to show alleged changes in appearance even though, in fact, each of the heads

12 are currently sold and/or marketed to the public.  The "Blonde" series of

13 photographs encaptioned "original" and "recent" MY SCENE is further and

14 specifically misleading in that it purports to compare two differently named and

15 outfitted dolls in the MY SCENE doll line, both of which continue to be sold and/or

16 marketed.

17         41.    Answering paragraph 41 of the Complaint, Mattel denies the

18 truth of the allegations set forth therein.

19         42.    Answering paragraph 42 of the Complaint, Mattel admits that the

20 photographs purport to depict two packages that were, among others, part of the MY

21 SCENE line, state that the packages speak for themselves and denies the truth of any

22 remaining allegations set forth therein.

23         43.    Answering paragraph 43 of the Complaint, Mattel admits that the

24 photograph purports to depict one of the packages that were, among others, part of

25 the MY SCENE line, states that the parties' packages speak for themselves, states

26 that MGA has failed to establish that it originated, or has protectible rights in, an

27 "open and transparent style" for packaging and denies the truth of the remaining

28 allegations set forth therein.

44.    Answering paragraph 44 of the Complaint, Mattel admits that one photograph purports to depict one of the packages that were, among others, part of the MY SCENE line, admits that the other photograph purports to depict one of the packages that were, among others, used as part of the Bratz line, states that the parties' packages speak for themselves, denies that MGA originated, or has protectible rights in, "the 'BRATZ' packaging" or in the packaging depicted in the Complaint and denies the truth of any remaining allegations set forth therein.

45.    Answering paragraph 45 of the Complaint, Mattel admits that one photograph purports to depict one of the packages that were, among others, part of the MY SCENE line, admits that the other photograph purports to depict one of the packages that were, among others, used as part of the Bratz line, states that the parties' packages speak for themselves, denies that MGA originated, or has protectible rights in, the packaging depicted in the Complaint and denies the truth of any remaining allegations set forth therein.

46.    Answering paragraph 46 of the Complaint, Mattel states that it has utilized a wide variety of packaging styles and shapes over the years, states that the relevant packaging speaks for itself, states that MGA lacks protectible rights in "non-rectangular shaped box" packaging or in the other elements MGA claims in paragraph 46, and denies the truth of the remaining allegations set forth therein.

47.    Answering paragraph 47 of the Complaint, Mattel denies that any alleged "theme" is "MGA's theme," denies that MGA originated or has rights to any theme and denies the truth of the remaining allegations set forth therein.

48.    Answering paragraph 48 of the Complaint, Mattel admits that it released a doll called "Chillin Out!", states that it has released such themed dolls over the course of many years, admits MGA released a "Wintertime Wonderland" themed doll, denies that MGA originated or has rights to such theme, states that the relevant products speak for themselves and denies the truth of the remaining allegations set forth therein.

1       49.    Answering paragraph 49 of the Complaint, Mattel admits that it

2 released a doll called "Night on the Town", states that it has released such themed

3 dolls over the course of many years, admits MGA released a "Formal Funk" themed

4 doll, denies that MGA originated or has rights to such theme, states that the relevant

5 products speak for themselves and denies the truth of the remaining allegations set

6 forth therein.

7       50.    Answering paragraph 50 of the Complaint, Mattel admits that it

8 released a doll called "Jammin' in Jamaica" and a playset called "Guava Gulch Tiki

9 Lounge", states that it has released such themed dolls and products over the course

10 of many years, admits that MGA released a "Sun-Kissed Summer" themed doll and

11 playset, denies that MGA originated or has rights to such theme, states that the

12 relevant products speak for themselves and denies the truth of the remaining

13 allegations set forth therein.

14      51.    Answering paragraph 51 of the Complaint, Mattel admits that it

15 has aired television commercials for its MY SCENE line, states that such

16 commercials speak for themselves, denies the truth of the remaining allegations set

17 forth therein and specifically denies that MGA was the originator of or has rights to

18 commercials "combining live action with animated sequences" set to "pop music

19 and lyrics".

20      52.    Answering paragraph 52 of the Complaint, Mattel denies the

21 truth of the allegations set forth therein.

22      53.    Answering paragraph 53 of the Complaint, Mattel admits that it

23 released a MY SCENE "Sound Lounge", admits that MGA released a product called

24 "Runway Disco", states that the relevant products speak for themselves, denies that

25 it "imitated MGA's trapezoidal box," denies that MGA has rights thereto, and

26 denies the truth of the remaining allegations set forth therein.

27      54.    Answering paragraph 54 of the Complaint, Mattel denies the

28 truth of the allegations set forth therein.

55.     Answering paragraph 55 of the Complaint, Mattel admits that, among the styling heads it has produced and sold over the course of many years, it released a MY SCENE styling head, admits that MGA released a styling head called "Funky Fashion Makeover Head", states that the relevant products speak for themselves, denies that MGA has protectible rights and denies the truth of the remaining allegations set forth in paragraph 55.

56.     Answering paragraph 56 of the Complaint, Mattel is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth therein because plaintiff fails to identify the alleged instances of confusion, including the source of the unidentified picture titled "Hairstyle practice", and on that basis, denies them, and denies the truth of any remaining allegations set forth in paragraph 56.

57.     Answering paragraph 57 of the Complaint, Mattel admits that it has aired television commercials for its MY SCENE line, states that such commercials speak for themselves and denies the truth of the remaining allegations set forth therein.

58.     Answering paragraph 58 of the Complaint, Mattel admits that MGA has used the line "The Girls With a Passion for Fashion" in some contexts, denies that MGA originated that phrase or otherwise has rights to it, states that Mattel's web site speaks for itself and denies the truth of the remaining allegations set forth therein.

59.     Answering paragraph 59 of the Complaint, Mattel admits that, among the plush products that it has produced and sold over the course of many years, it has released plush dogs as part of its MY SCENE "Miami Getaway" themed product line, states that Mattel has for many years sold plush pets of the type used with its MY SCENE dog, admits that MGA has released various Bratz pets, states that MGA was not the originator of and has no rights to the features and other

EXHIBIT 58
PAGE 1228

-14-

THIRDFOURTH AMENDED ANSWER AND COUNTERCLAIMS

1   elements described therein, states that the relevant products speak for themselves

2   and denies the truth of the remaining allegations set forth therein.

3           60.   Answering paragraph 60 of the Complaint, Mattel admits that,

4   among the plush toys that it has released over the course of many years, its MY

5   SCENE dog has been sold in packaging depicted (in part) on page 22 of the

6   Complaint, states that Mattel has for many years sold plush pets and other plush

7   products in packaging of the type used with its MY SCENE dog, admits that MGA

8   has released a "Bratz" dog, states that MGA was not the originator of and has no

9   rights to the packaging described therein, states that the relevant packages speak for

10  themselves and denies the truth of the remaining allegations set forth therein.

11          61.   Answering paragraph 61 of the Complaint, Mattel denies that it

12  has intended to cause any consumer confusion and states that it is without

13  knowledge or information sufficient to form a belief as to the truth or falsity of the

14  allegations set forth therein concerning unnamed retailers, customers and others

15  because plaintiff fails to identify any source for the matters alleged and, on that

16  basis, denies them and denies the truth of any remaining allegations set forth therein.

17          62.   Answering paragraph 62 of the Complaint, Mattel denies that it

18  has intended to cause any confusion and states that it is without knowledge or

19  information sufficient to form a belief as to the truth or falsity of the allegations set

20  forth therein concerning alleged comments and conversations because plaintiff fails

21  to identify any source for the alleged comments and conversations and, on that

22  basis, denies them, and denies the truth of any remaining allegations set forth

23  therein.

24          63.   Answering paragraph 63 of the Complaint, Mattel denies that it

25  has intended to cause any confusion and states that it is without knowledge or

26  information sufficient to form a belief as to the truth or falsity of the allegations set

27  forth therein because plaintiff fails to identify any source for the alleged comments

28

1  and conversations and, on that basis, denies them, and denies the truth of any
2  remaining allegations set forth therein.

3           64.    Answering paragraph 64 of the Complaint, Mattel denies that it
4  has intended to cause any confusion and states that it is without knowledge or
5  information sufficient to form a belief as to the truth or falsity of the allegations set
6  forth therein because plaintiff fails to identify any source for the alleged comments
7  and conversations and, on that basis, denies them, and denies the truth of any
8  remaining allegations set forth therein.

9           65.    Answering paragraph 65 of the Complaint, Mattel denies the
10  truth of the allegations set forth therein.

11          66.    Answering paragraph 66 of the Complaint, Mattel admits that it
12  sued a competitor in the German courts for unfair competition for copying various
13  Mattel BARBIE line products, states that such claims exclusively arose under and
14  were the subject of German law, states that since that time the Federal Supreme
15  Court has rejected the contention made by MGA in paragraph 66 that
16  "systematically copying and borrowing elements" from competing dolls supports a
17  claim for unfair competition, and denies the truth of the remaining allegations set
18  forth therein.

19          67.    Answering paragraph 67 of the Complaint, Mattel denies the
20  truth of the allegations set forth therein.

21          68.    Answering paragraph 68 of the Complaint, Mattel admits that it
22  has released dolls called "Wee 3 Friends," admits that MGA has released dolls
23  called "4-Ever Best Friends," states that the relevant products speak for themselves,
24  denies that MGA's packaging is distinctive, denies that MGA has protectible rights
25  thereto and denies the truth of the remaining allegations set forth in paragraph 68.

26          69.    Answering paragraph 69 of the Complaint, Mattel admits that its
27  Fisher Price division has released, among other dolls called "Little Mommy," the
28  "Little Mommy Potty Training Baby Doll," admits that MGA has released a

EXHIBIT   65
PAGE   1230

-16-

~~THIRD~~FOURTH AMENDED ANSWER AND COUNTERCLAIMS

1    "Mommy's Little Patient" doll and denies the truth of the remaining allegations set
2    forth therein.

3                70.    Answering paragraph 70 of the Complaint, Mattel admits that it
4    has released die-cast cars and other products called "Acceleracers" as part of its
5    HOT WHEELS line, admits that MGA has released products called "AlienRacers,"
6    denies that MGA was the originator of or has rights to the elements and matters
7    described in paragraph 70, states that the relevant products speak for themselves and
8    denies the truth of the remaining allegations set forth therein.

9                71.    Answering paragraph 71 of the Complaint, Mattel admits that it
10   has aired commercials relating to "Acceleracers," states that such commercials
11   speak for themselves, denies the truth of the remaining allegations set forth therein
12   and specifically denies that MGA originated or has rights to the commercials and
13   other matters described therein.

14               72.    Answering paragraph 72 of the Complaint, Mattel states that its
15   web site speaks for itself, denies the truth of the remaining allegations contained in
16   paragraph 72 and specifically denies that Mattel intended to create confusion in the
17   marketplace.

18               73.    Answering paragraph 73 of the Complaint, Mattel denies the
19   truth of the allegations set forth therein.

20               74.    Answering paragraph 74 of the Complaint, Mattel denies the
21   truth of the allegations set forth therein.

22               75.    Answering paragraph 75 of the Complaint, Mattel admits that it
23   has reminded certain former employees who became employed by MGA by letter of
24   their contractual and fiduciary obligation to maintain the secrecy of all Mattel
25   confidential and proprietary business information, states that such letters were
26   prepared and sent to their recipients in good faith contemplation of litigation, admits
27   that it filed a complaint for declaratory relief against Ronald Brawer in Los Angeles
28   Superior Court, entitled Mattel, Inc. v. Brawer, Case No. BC323381, on October 21,

00505.07209/2875224.10/
975/3029070.5

EXHIBIT 58

PAGE 1231

-17-

~~THIRD~~FOURTH AMENDED ANSWER AND COUNTERCLAIMS

1  2004, states that pursuant to the Court's Order of August 25, 2005 it need not

2  respond to the allegations in paragraph 75 relating to that action, and denies the truth

3  of the remaining allegations set forth in paragraph 75.

4          76.     Answering paragraph 76 of the Complaint, Mattel states that

5  MGA cannot establish subject matter jurisdiction regarding extra-territorial acts,

6  including such acts that are lawful in foreign nations, and denies the truth of

7  allegations set forth therein.

8          77.     Answering paragraph 77 of the Complaint, Mattel states that

9  MGA cannot establish subject matter jurisdiction regarding extra-territorial acts,

10  including such acts that are lawful in foreign nations, and denies the truth of the

11  allegations set forth therein.

12          78.     Answering paragraph 78 of the Complaint, Mattel states that it is

13  without knowledge or information sufficient to form a belief as to the truth or falsity

14  of the allegations regarding MGA's claimed "shortage of doll hair" and, on that

15  basis, denies them and denies the truth of the remaining allegations set forth therein.

16          79.     Answering paragraph 79 of the Complaint, Mattel states that

17  MGA cannot establish subject matter jurisdiction regarding extra-territorial acts,

18  including such acts that are lawful in foreign nations, and denies the truth of

19  allegations set forth therein.

20          80.     Answering paragraph 80 of the Complaint, Mattel denies the

21  truth of the allegations set forth therein.

22          81.     Answering paragraph 81 of the Complaint, Mattel admits that

23  NPD Funworld ("NPD") supplies sales statistics in *inter alia* the toy, PC games and

24  video games industries, admits that to Mattel's knowledge NPD restricts the use of

25  its subscriber information, states that MGA was sued by NPD and states that it is

26  without knowledge or information sufficient to form a belief as to the truth or falsity

27  of the allegations regarding the need of unspecified "toy companies" for NPD

28

EXHIBIT 58
PAGE  1232

00505.07209/2875224.10
975/3029070.5

-18-

~~THIRD~~FOURTH AMENDED ANSWER AND COUNTERCLAIMS

1   statistics and, on that basis, denies them and denies the truth of any remaining

2   allegations set forth therein.

3       82.   Answering paragraph 82 of the Complaint, Mattel denies the

4   truth of the allegations set forth therein.

5       83.   Answering paragraph 83 of the Complaint, Mattel states that it is

6   without knowledge or information sufficient to form a belief as to the truth or falsity

7   of the allegations set forth therein because MGA fails to quantify its annual

8   subscription fees and, on that basis, denies them.

9       84.   Answering paragraph 84 of the Complaint, Mattel states that it is

10  without knowledge or information sufficient to form a belief as to the truth or falsity

11  of the allegations set forth therein and, on that basis, denies them.

12      85.   Answering paragraph 85 of the Complaint, Mattel states that

13  MGA was sued by NPD, states that it is without knowledge or information sufficient

14  to form a belief as to such nature and grounds for such litigation (to which Mattel

15  was not a party) and, on that basis, denies the allegations relating thereto, and denies

16  the truth of the remaining allegations set forth therein.

17      86.   Answering paragraph 86 of the Complaint, Mattel denies the

18  truth of the allegations set forth therein.

19      87.   Answering paragraph 87 of the Complaint, Mattel admits that the

20  Children's Advertising Review Unit ("CARU") is the children's arm of the

21  advertising industry's self-regulation program, states that compliance with CARU's

22  Privacy Program can provide FTC-approved Safe Harbor under the Children's

23  Online Privacy Protection Act ("COPPA"), and denies the truth of the remaining

24  allegations set forth therein.

25      88.   Answering paragraph 88 of the Complaint, Mattel admits that it

26  is one of dozens of CARU Supporters and denies the truth of the remaining

27  allegations set forth therein.

28

EXHIBIT 58
PAGE 1233

-19-

THIRDFOURTH AMENDED ANSWER AND COUNTERCLAIMS

89.     Answering paragraph 89 of the Complaint, Mattel denies the truth of the allegations set forth therein.

90.     Answering paragraph 90 of the Complaint, Mattel states that it is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations as to the consequences to MGA of MGA's violations of CARU standards and, on that basis, denies them.

91.     Answering paragraph 91 of the Complaint, Mattel states that it is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations as to the consequences to MGA of MGA's violations of CARU standards and, on that basis, denies them.

92.     Answering paragraph 92 of the Complaint, Mattel admits that the Toy Industry Association, Inc. ("TIA") is a toy industry trade association, admits that at certain times TIA has given awards called the People's Choice Toy of The Year or the Toy of The Year Award, denies that Mattel wrongfully influenced TIA and states that it is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth therein and, on that basis, denies them.

93.     Answering paragraph 93 of the Complaint, Mattel states that the allegations set forth therein are vague and ambiguous, including in that they fail to properly identify the years in which the referenced awards were given and/or the particular product which won such awards, and accordingly lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth therein and, on that basis, denies them.

94.     Answering paragraph 94 of the Complaint, Mattel admits that Neil Freidman was the chairman of TIA from approximately May 2002 to May 2004, states that Fischer Price is a division of Mattel and denies the truth of the remaining allegations set forth therein.

95.   Answering paragraph 95 of the Complaint, Mattel admits that Hokey Pokey Elmo won the Toy of the Year Award and denies the truth of the remaining allegations set forth therein.

96.   Answering paragraph 96 of the Complaint, Mattel states that it is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth therein and, on that basis, denies them.

97.   Answering paragraph 97 of the Complaint, Mattel denies the truth of the allegations set forth therein.

98.   Answering paragraph 98 of the Complaint, Mattel denies the truth of the allegations set forth therein.

99.   Answering paragraph 99 of the Complaint, Mattel denies the truth of the allegations set forth therein.

100.   Answering paragraph 100 of the Complaint, Mattel denies the truth of the allegations set forth therein.

101.   Answering paragraph 101 of the Complaint, Mattel repeats its responses contained in paragraphs 1 through 100 of this ThirdFourth Amended Answer and incorporates them by reference as though fully and completely set forth herein.

102.   Answering paragraph 102 of the Complaint, Mattel denies the truth of the allegations set forth therein and specifically denies that MGA's alleged trade dress is distinctive.

103.   Answering paragraph 103 of the Complaint, Mattel denies the truth of the allegations set forth therein and specifically denies that MGA's alleged trade dress is distinctive.

104.   Answering paragraph 104 of the Complaint, Mattel denies the truth of the allegations set forth therein.

105.   Answering paragraph 105 of the Complaint, Mattel denies the truth of the allegations set forth therein.

EXHIBIT __55__

PAGE __1235__

-21-

THIRDFOURTH AMENDED ANSWER AND COUNTERCLAIMS

1     106.   Answering paragraph 106 of the Complaint, Mattel denies the
2  truth of the allegations set forth therein.

3     107.   Answering paragraph 107 of the Complaint, Mattel denies the
4  truth of the allegations set forth therein.

5     108.   Answering paragraph 108 of the Complaint, Mattel denies the
6  truth of the allegations set forth therein and specifically denies that plaintiff is
7  entitled to injunctive relief.

8     109.   Answering paragraph 109 of the Complaint, Mattel repeats its
9  responses contained in paragraphs 1 through 108 of this ~~Third~~Fourth Amended
10 Answer and incorporates them by reference as though fully and completely set forth
11 herein.

12     110.   Answering paragraph 110 of the Complaint, Mattel denies the
13 truth of the allegations set forth therein.

14     111.   Answering paragraph 111 of the Complaint, Mattel denies the
15 truth of the allegations set forth therein.

16     112.   Answering paragraph 112 of the Complaint, Mattel denies the
17 truth of the allegations set forth therein.

18     113.   Answering paragraph 113 of the Complaint, Mattel denies the
19 truth of the allegations set forth therein.

20     114.   Answering paragraph 114 of the Complaint, Mattel denies the
21 truth of the allegations set forth therein.

22     115.   Answering paragraph 115 of the Complaint, Mattel denies the
23 truth of the allegations set forth therein.

24     116.   Answering paragraph 116 of the Complaint, Mattel denies the
25 truth of the allegations set forth therein.

26     117.   Answering paragraph 117 of the Complaint, Mattel denies the
27 truth of the allegations set forth therein and specifically denies that plaintiff is
28 entitled to injunctive relief.

1    118.   Answering paragraph 118 of the Complaint, Mattel denies the
2    truth of the allegations set forth therein.

3    119.   Answering paragraph 119 of the Complaint, Mattel repeats its
4    responses contained in paragraphs 1 through 118 of this ~~Third~~Fourth Amended
5    Answer and incorporates them by reference as though fully and completely set forth
6    herein.

7    120.   Answering paragraph 120 of the Complaint, Mattel denies the
8    truth of the allegations set forth therein.

9    121.   Answering paragraph 121 of the Complaint, Mattel denies the
10   truth of the allegations set forth therein.

11   122.   Answering paragraph 122 of the Complaint, Mattel denies the
12   truth of the allegations set forth therein.

13   123.   Answering paragraph 123 of the Complaint, Mattel denies the
14   truth of the allegations set forth therein and specifically denies that plaintiff is
15   entitled to injunctive relief.

16   124.   Answering paragraph 124 of the Complaint, Mattel repeats its
17   responses contained in paragraphs 1 through 123 of this ~~Third~~Fourth Amended
18   Answer and incorporates them by reference as though fully and completely set forth
19   herein.

20   125.   Answering paragraph 125 of the Complaint, Mattel denies the
21   truth of the allegations set forth therein.

22

23                          <u>General Denial</u>

24        Unless specifically admitted herein, Mattel denies the truth of each and
25   every allegation set forth in plaintiff's Complaint and specifically denies that
26   plaintiff is entitled to any relief against Mattel.

27

28


EXHIBIT 56
PAGE 1237

-23-

1     Affirmative Defenses

2          By alleging the Affirmative Defenses set forth below, Mattel does not

3     agree or concede that it bears the burden of proof or the burden of persuasion on any

4     of these issues, whether in whole or in part.

5

6     First Affirmative Defense

7          Plaintiff's Complaint fails to state a claim upon which relief can be

8     granted.

9

10     Second Affirmative Defense

11          Plaintiff has no valid, enforceable or protectible rights or interest in the

12     alleged trade dress or other matters asserted, including without limitation in that

13     plaintiff has failed to establish that its alleged trade dress is distinctive as to plaintiff.

14

15     Third Affirmative Defense

16          Plaintiff's claims, including without limitation plaintiff's claims based

17     upon alleged extra-territorial acts, are barred in whole or in part by lack of subject

18     matter jurisdiction.

19

20     Fourth Affirmative Defense

21          Plaintiff's claims are barred in whole or in part by plaintiff's unclean

22     hands.

23

24     Fifth Affirmative Defense

25          Plaintiff's claims are barred in whole or in part by virtue of Mattel's

26     prior-creation of the elements and other matters asserted in the Complaint.

27

28

EXHIBIT 58
PAGE 1238

00505.07209/2875224.10/
975/3029070.5

~~THIRD~~FOURTH AMENDED ANSWER AND COUNTERCLAIMS

Sixth Affirmative Defense

Plaintiff's claims are barred in whole or in part by its lack of standing.

Seventh Affirmative Defense

Plaintiff's claims are barred in whole or in part by the applicable statutes of limitation and the doctrine of laches.

Eighth Affirmative Defense

Plaintiff's claims are barred in whole or in part by the doctrines of waiver, estoppel, acquiescence, and abandonment.

Ninth Affirmative Defense

Plaintiff's claims are barred in whole or in part by Mattel's constitutional rights of free speech, petitioning and association, including without limitation by the litigation privilege as protected by and/or codified in *inter alia* Section 47(b) of the <u>California Civil Code</u>, the *Noerr-Pennington* doctrine, the common interest privilege and by other privileges.

Tenth Affirmative Defense

Plaintiff's claims are barred in whole or in part by Mattel's federal and state constitutional rights of free speech, including without limitation under the First Amendment of the United States Constitution.

Eleventh Affirmative Defense

Plaintiff's claims are barred in whole or in part by the competitor privilege.


EXHIBIT 58
PAGE 1239

00505.07209/2875224.10/
975/3029070.5

~~THIRD~~FOURTH AMENDED ANSWER AND COUNTERCLAIMS

1

Twelfth Affirmative Defense

2      Plaintiff's claims are in whole or in part preempted by the Copyright

3   Act and barred by the *Sears-Compco* doctrine.

4

5

Thirteenth Affirmative Defense

6      Plaintiff's requested relief, including plaintiff's requests for punitive

7   and/or enhanced damages, are barred in whole or in part because all of Mattel's

8   actions were in good faith.

9

10

Fourteenth Affirmative Defense

11      Plaintiff's damages, if any, were not caused by Mattel and are not

12   attributable to the acts or omissions of Mattel.

13

14

Fifteenth Affirmative Defense

15      Plaintiff has failed to mitigate its damages, if any.

16

17

Additional Defenses

18      Mattel has insufficient knowledge or information upon which to form a

19   belief as to whether additional defenses are available.  Mattel reserves the right to

20   amend this ~~Third~~Fourth Amended Answer to add, delete, or modify additional

21   defenses based on legal theories which may or will be divulged through clarification

22   of the Complaint, through discovery, through change or clarification of the

23   governing law or through further legal analysis of plaintiff's positions in this

24   litigation.

25

26

Prayer for Relief

27

28      WHEREFORE, Mattel prays for relief as follows:

1

2         1.     That the Complaint be dismissed with prejudice;

3         2.     That plaintiff take nothing by reason of the Complaint against

4  Mattel and that judgment be entered in Mattel's favor;

5         3.     That Mattel recover its costs and attorneys' fees; and

6         4.     That this Court award such other and further relief as it deems

7  just and proper.

8                        **COUNTERCLAIMS**

9         Pursuant to the Court's Orders of, inter alia, January 12, 2007, June 27,

10  2007, and May 21, 2009, and incorporating its [Proposed] Amended Complaint

11  dated November 19, 2006, Mattel, Inc. alleges as follows:

12                     **Preliminary Statement**

13         1.     For years MGA Entertainment, Inc. has engaged in a pattern of

14  stealing and using Mattel, Inc.'s property and trade secrets.  MGA's use of the stolen

15  property and trade secrets caused and continues to cause significant harm to Mattel.

16  MGA first stole "Bratz," a fashion doll, from Mattel, and then continued stealing

17  Mattel's confidential and proprietary information to fuel MGA's growth.  Even after

18  Mattel originally filed this suit, MGA, Isaac Larian and their co-conspirators

19  continued this pattern of wrongdoing, engaging in additional acts of commercial

20  bribery, destruction of evidence, evidence tampering and perjury, and in fraudulent

21  conveyances and bankruptcy fraud.  Indeed, MGA, Larian and their co-conspirators

22  carried out several of these wrongs while the Phase 1 trial was on-going and shortly

23  after it concluded, and continue to engage in further misconduct up to and beyond

24  the present, for the specific purpose of thwarting the findings of the jury in Mattel's

25  favor, obstructing the judicial process, and damaging Mattel and its rights.

26         2.     Carter Bryant conceived, created and developed Bratz designs

27  while he was employed by Mattel as a doll designer.  He concealed his Bratz work

28  from Mattel and wrongfully sold Bratz to MGA while he was a Mattel employee.

EXHIBIT ___58___      -27-

PAGE _1241_       ~~THIRD~~FOURTH AMENDED ANSWER AND COUNTERCLAIMS

1   As MGA knows, Mattel owns the Bratz designs that Bryant made.  As the rightful

2   owner of those Bratz designs, Mattel has registered copyrights for them and seeks

3   damages arising from MGA's repeated infringement of those copyrights.

4          3.     In 2008, the jury in the Phase 1 trial in this action found that

5   Carter Bryant conceived of and created Bratz, including without limitation Bratz

6   sculpts and prototypes, the Bratz name, the Bratz characters, and more than 70 Bratz

7   design drawings, while working for Mattel and that MGA and Isaac Larian

8   unlawfully aided and abetted that wrongdoing and profited from their wrongful acts.

9   Specifically, the jury found that MGA and Larian unlawfully infringed Mattel's

10  copyrights in Bratz works created by Bryant while a Mattel employee and owned by

11  Mattel, converted Bratz drawings from Mattel, tortiously interfered with Bryant's

12  contract with Mattel, aided and abetted Bryant's breach of his duty of loyalty to

13  Mattel, and aided and abetted Bryant's breach of his fiduciary duty to Mattel.  The

14  jury further found that MGA had fraudulently concealed its wrongful conduct from

15  Mattel.  Yet MGA's wrongful conduct has not ceased.  Undeterred by the jury's

16  findings, MGA continues to infringe even to this day, and threatens to infringe in the

17  future, Mattel's rights in Bratz.  Even though MGA holds Bratz in constructive trust

18  for Mattel, it has failed to preserve and protect Mattel's property, instead

19  intentionally destroying the value of the property to ensure that, if MGA cannot

20  profit therefrom, neither can Mattel.

21         4.     MGA's illegal conduct in stealing Bratz was also just the

22  beginning.  Emboldened by the success of its earlier illegal conduct, MGA has

23  repeated—and even expanded through this day—its pattern of theft, bribery,

24  evidence destruction and tampering, perjury, obstruction, financial manipulations

25  and other illegal conduct.  For example, in or about 2004, MGA decided to expand

26  into Mexico.  To do so, and operating from its Southern California offices, MGA

27  hired away three key Mattel employees in Mexico, who, on their way out, stole

28  virtually every category of Mattel's sensitive and trade secret business plans and

-28-

EXHIBIT  58
PAGE  1242

THIRD FOURTH AMENDED ANSWER AND COUNTERCLAIMS

1  information for the Mexican market, as well as a significant quantity of sensitive
2  and trade secret information for Mattel's U.S. and worldwide businesses, and took
3  them to MGA.  Armed with Mattel's confidential business plans and methods, MGA
4  claimed to have increased its market share in Mexico alone by 90% in a single year.

5      5.    In 2005, MGA needed help in Canada.  So MGA, again
6  operating from its Southern California headquarters, hired Janine Brisbois from
7  Mattel.  At that time, Ms. Brisbois was responsible for Mattel's account with Toys 'R
8  Us ("TRU") and Wal-Mart.  MGA gave her responsibility for those same accounts,
9  and she took from Mattel documents containing proprietary advertising, project,
10  sales, customer and strategy information for not only Canada, but for the United
11  States.  Eliminating any doubt that MGA then proceeded to use those stolen
12  materials, Brisbois subsequently accessed and modified certain of those Mattel
13  documents while employed by MGA.

14      6.    Starting no later than 2000, and continuing until at least 2005,
15  MGA bribed Mattel employees in addition to Bryant to work on Bratz and other
16  products for MGA's benefit.  In the face of Court Orders compelling MGA to
17  disclose such evidence, MGA falsely denied under oath that there were such other
18  Mattel employees.  In December 2007, however, the truth came to light—MGA
19  agents had bribed at least three more Mattel employees over a five-year span,
20  including even during times after this suit was filed.  MGA's agents acted to conceal
21  the bribery, including by paying Mattel employees in cash and using false names
22  and false social security numbers.

23      7.    These are not the only instances of such misconduct which MGA
24  orchestrated and carried out from its headquarters in this District.  Counter-
25  defendants have engaged in an ongoing, widespread pattern of illegal acts that
26  continues to this day and that threatens to continue into the future.  Those acts
27  include, without limitation, inducing Mattel employees to steal Mattel's confidential
28  information or other property and take it with them to MGA to further MGA's

00505.07209/2875224.10/
975/3029070.5

EXHIBIT ___55___

PAGE ___1243___

-29-

THIRDFOURTH AMENDED ANSWER AND COUNTERCLAIMS

1   business interests and to harm Mattel.  They also include, without limitation,

2   continued acts of copyright infringement, evidence destruction and perjury.  They

3   also include, without limitation, Larian's and MGA's illegal transfer, transport and

4   laundering of their ill-gotten profits, including through their use of sham single-

5   purpose entities created during or immediately after the Phase 1 trial, for the purpose

6   of thwarting the jury's Phase 1 verdict against them, continuing with their acts of

7   infringement, manipulating their financial condition and defrauding Mattel.

8   ### Jurisdiction

9      8. This Court has federal question jurisdiction over this action

10   pursuant to 28 U.S.C. §§ 1331, 17 U.S.C. §§ 101 *et seq.*, and 18 U.S.C. § 1964(c).

11   This Court has supplemental jurisdiction over Mattel's state law claims pursuant to

12   28 U.S.C. § 1367.

13   ### Venue

14      9. Venue is proper in this District pursuant to 28 U.S.C.

15   §§ 1391(b)-(d), 1391(f) and 1400(a) and 18 U.S.C. § 1965.

16   ### Parties

17      10. Mattel is a corporation organized and existing under the laws of

18   the State of Delaware, with its principal place of business in El Segundo, California.

19      11. Counter-defendant MGA Entertainment, Inc. ("MGA") is a

20   corporation organized and existing under the laws of the State of California, with its

21   principal place of business in Van Nuys, California.  Mattel is informed and

22   believes, and on that basis alleges, that ABC International Traders, Inc. is a

23   predecessor corporation to MGA and that until September 16, 2002, MGA was

24   incorporated and known as ABC International Traders, Inc.  Upon the filing of the

25   Complaint, Mattel, being ignorant of the nature, extent and scope of MGA

26   Entertainment, Inc.'s involvement and complicity in the conduct alleged therein and

27   having designated MGA Entertainment, Inc. in the Complaint as Doe 1 and having

28   discovered its involvement and complicity, Mattel previously amended its

00505.07209/2875224.10
975/3029070.5

EXHIBIT __58__

PAGE __1244__

-30-

~~THIRD~~FOURTH AMENDED ANSWER AND COUNTERCLAIMS

1   Complaint by substituting MGA Entertainment, Inc. for the fictitious Doe name Doe
2   1.

3       12.   Counter-defendant Carter Bryant ("Bryant") is an individual who
4   formerly was employed by Mattel and has worked for and continues to work as a
5   contractor for MGA.  Mr. Bryant currently resides in the State of Missouri.

6       13.   Counter-defendant MGA Entertainment (HK) Limited is a
7   business entity organized and existing under the laws of the Hong Kong Special
8   Administrative Region, with its principal place of business in Hong Kong.  Upon the
9   filing of the Complaint, Mattel, being ignorant of the nature, extent and scope of
10  involvement and complicity of MGA Entertainment (HK) Limited in the conduct
11  alleged therein and having designated MGA Entertainment (HK) Limited in the
12  Complaint as Doe 2 and having discovered its involvement and complicity, Mattel
13  previously amended its Complaint by substituting MGA Entertainment (HK)
14  Limited for the fictitious Doe name Doe 2.

15      14.   Counter-defendant MGAE de Mexico, S.R.L. de C.V. ("MGA
16  de Mexico") is a business entity organized and existing under the laws of Mexico,
17  with its principal place of business in Mexico City, Mexico.

18      15.   Mattel is informed and believes, and on that basis alleges, that
19  Counter-defendant Larian is the President and CEO of MGA and an individual
20  residing in the County of Los Angeles.  -Upon the filing of the Complaint, Mattel,
21  being ignorant of the nature, extent and scope of involvement and complicity of
22  Larian in the conduct alleged therein and having designated Larian in the Complaint
23  as Doe 3 and having discovered his involvement and complicity, Mattel previously
24  amended its Complaint by substituting Larian for the fictitious Doe name Doe 3.

25      16.   Counter-defendant Omni 808 Investors, LLC ("Omni 808") is,
26  on information and belief, a limited liability company organized and existing under
27  the laws of the State of California, formed on August 12, 2008, with its principal
28  place of business in Beverly Hills, California.  Mattel, previously being ignorant of

EXHIBIT  58
PAGE  1245

-31-

THIRDFOURTH AMENDED ANSWER AND COUNTERCLAIMS

1 the nature, extent and scope of involvement and complicity of Omni 808 in the

2 conduct alleged herein and having designated Omni 808 previously in Mattel's

3 Counterclaims as Doe 4 and having discovered its involvement and complicity,

4 hereby amends its Counterclaims by substituting Omni 808 for the fictitious Doe

5 name Doe 4.

6            17.    Counter-defendant IGWT Group, LLC ("IGWT Group") is, on

7 information and belief, a limited liability company organized and existing under the

8 laws of the State of California, formed on June 26, 2008, with its principal place of

9 business in Los Angeles, California. Mattel, previously being ignorant of the nature,

10 extent and scope of involvement and complicity of IGWT Group in the conduct

11 alleged herein and having designated IGWT Group previously in Mattel's

12 Counterclaims as Doe 5 and having discovered its involvement and complicity,

13 hereby amends its Counterclaims by substituting IGWT Group for the fictitious Doe

14 name Doe 5.

15            18.    Counter-defendant IGWT 826 Investments, LLC ("IGWT 826

16 Investments") is, on information and belief, a limited liability company organized

17 and existing under the laws of the State of California, formed on August 27, 2008,

18 with its principal place of business in Beverly Hills, CA. Mattel, previously being

19 ignorant of the nature, extent and scope of involvement and complicity of IGWT

20 826 Investments in the conduct alleged herein and having designated IGWT 826

21 Investments previously in Mattel's Counterclaims as Doe 6 and having discovered

22 its involvement and complicity, hereby amends its Counterclaims by substituting

23 IGWT 826 Investments for the fictitious Doe name Doe 6.

24            19.    Counter-defendant Neil Kadisha is the Chief Operating Officer

25 of counter-defendant Omni 808 and, on information and belief, an individual

26 residing in Beverly Hills, California. Mattel, previously being ignorant of the

27 nature, extent and scope of involvement and complicity of Kadisha in the conduct

28 alleged herein and having designated Kadisha previously in Mattel's Counterclaims

EXHIBIT 58

PAGE 244

-32-

THIRDFOURTH AMENDED ANSWER AND COUNTERCLAIMS

1  <u>as Doe 7 and having discovered his involvement and complicity, hereby amends its</u>

2  <u>Counterclaims by substituting Kadisha for the fictitious Doe name Doe 7.</u>

3    ~~16.~~20. Mattel is informed and believes, and on that basis alleges, that

4  Counter-defendant Larian is directly or indirectly principal, owner, member and/or

5  controlling shareholder and alter-ego of IGWT Group~~, LLC ("IGWT Group")~~ and

6  IGWT 826 Investments~~, LLC ("IGWT 826 Investments")~~. On information and

7  belief, the financial affairs of Larian and these limited liability companies—which

8  were formed during and subsequent to the Phase 1 trial—are significantly

9  intermingled and interconnected, the companies being mere shells which Larian

10 used as conduits for his own business dealings, created and operated pursuant to an

11 unlawful scheme as alleged herein.

12    ~~17.~~21. Mattel is informed and believes, and on that basis alleges, that

13 Counter-defendant Larian is directly or indirectly trustee, principal, owner, and/or

14 controlling participant and alter-ego of several trusts devised by or on behalf of

15 Larian for the purpose of manipulating MGA's and Larian's finances, including

16 without limitation The Makabi Living Trust, The Larian Living Trust, The Angela

17 Larian Qualified Annuity Trust, The Isaac E. Larian Qualified Annuity Trust, The

18 Jahangir Eli Makabi Qualified Annuity Trust, as well as other trusts and similar

19 vehicles presently unknown to Mattel because of their concealment by Larian, MGA

20 and their co-conspirators.

21    ~~18.~~22. Mattel is informed and believes, and on that basis alleges, that

22 Counter-defendant Larian is directly or indirectly principal, owner, member and/or

23 controlling participant and alter-ego of several other sham entities devised by or on

24 behalf of Larian for the purpose of manipulating MGA's and Larian's finances,

25 including without limitation Omni 808 ~~Investors, LLC~~, Vision Capital, LLC and

26 Lexington Financial  Limited (collectively, the "Omni Parties") as well as other

27 entities currently unknown by name to Mattel because of their concealment by

28 Larian, MGA, the Omni Parties and their co-conspirators.

EXHIBIT  58

PAGE  1241

-33-

~~THIRD~~FOURTH AMENDED ANSWER AND COUNTERCLAIMS

1    ~~19.~~23. Mattel is informed and believes, and on that basis alleges, that

2    Counter-defendant Larian has employed, directly or indirectly, other co-conspirators

3    to directly and indirectly carry out his intentional wrongdoing, including in order to

4    conceal and manipulate his and MGA's finances and to conduct other fraudulent and

5    illegal conduct, including without limitation Neil Kadisha, Leon Neman, Fred

6    Mashian, Jahangir Eli Makabi, Shirin Makabi, Farhad Larian, Angela Larian,

7    <u>Benjamin Nazarian, Joseph Moinian, David Nazarian, Arsalan Gozini,</u> Veronica

8    Marlow ~~and~~, Peter Marlow, <u>Leon Farahnik, Moinian Development Group, LLC,</u>

9    <u>Omni TMG, LLC, Gold Leaf Investments, LP, the David and Angela Nazarian Trust</u>

10   <u>and the Arsalan Gozini Charitable Lead Annuity Trust</u> as well as other persons <u>and</u>

11   <u>entities</u> presently unknown to Mattel because of their concealment by Larian, MGA,

12   the Omni Parties and their co-conspirators.

13          ~~20.~~24. Mattel is informed and believes, and on that basis alleges, that at

14   all relevant times mentioned herein such individuals, trusts, Larian, the Omni

15   Parties, IGWT Group and IGWT 826 Investments, together with their employees,

16   officers, putative owners, members and principals, agents, representatives and

17   attorneys, were acting in concert and in active participation with each other in

18   committing the wrongful acts alleged herein, and were the agents of each other and

19   were acting within the scope and authority of that agency and with the knowledge,

20   consent and approval of each other.

21          ~~21.~~25. Counter-defendant Carlos Gustavo Machado Gomez is an

22   individual who is employed by Counter-defendant MGA and who resided in this

23   District at the time he was named and served as a Counter-defendant in the Second

24   Amended Answer and Counterclaims and, on information and belief, currently

25   resides in Mexico.

26          ~~22.~~26. The true names and capacities of Counter-defendants sued herein

27   as DOES 4<u>8</u> through 10, inclusive, are unknown to Mattel, which therefore sues said

28


EXHIBIT 58
PAGE 1248

-34-

~~THIRD~~FOURTH AMENDED ANSWER AND COUNTERCLAIMS

1  Counter-defendants by such fictitious names.  Mattel will amend its pleadings to

2  allege their true names and capacities when the same are ascertained.

3                              **Factual Background**

4  **I.    MATTEL**

5          23.27. Mattel manufactures and markets toys, games, dolls and other

6  consumer products.  Harold Mattson and Elliot and Ruth Handler founded Mattel in

7  1945.  The name of the company was created by incorporating the names of two of

8  its founders, "MATT-son" and "EL-liot."  Originating from the Handlers' garage in

9  Southern California, the company greatly expanded its operations following World

10 War II.  During the next several decades, Mattel became famous for producing high-

11 quality products at reasonable prices.

12          24.28. Critical to Mattel's success is its ability to design and develop

13 new products.  Mattel invests millions of dollars in product design and development

14 and introduces hundreds of new products each year.  Mattel maintains a 180,000

15 square-foot design center in El Segundo, California, that houses hundreds of

16 designers, sculptors, painters and other artists, who work exclusively to create the

17 products on which Mattel's business depends.

18          25.29. Mattel also has invested substantial amounts over many years to

19 develop its business methods and practices, including, without limitation, its

20 marketing and advertising research, plans, methods and processes; its business

21 research and forecasts; its costs, budgets, pricing, credit terms, deal terms and

22 finances; its manufacturing, distribution, and sales methods and processes; and its

23 inventory methods and processes.  These represent a material part of the intellectual

24 infrastructure of Mattel and are highly valuable.

25 **II.   MGA ENTERTAINMENT**

26          26.30. MGA is also a toy manufacturer.  MGA began as a consumer

27 electronics business, but expanded into the toy business with licenses to sell

28 handheld electronic games.  By approximately late 1999 or early 2000, MGA

1   developed a strategy to expand its business and compete directly with Mattel by

2   launching a fashion doll line, so it stole a fashion doll that was owned by Mattel—

3   "Bratz."

4           ~~27.~~31. MGA intentionally stole not just specific Mattel property, such

5   as Bratz designs, prototypes and related materials, but also a vast array of trade

6   secrets and other confidential information that comprise Mattel's intellectual

7   infrastructure.  MGA's rapid growth was not organic, but rather was based upon its

8   theft of Bratz.  As a result, MGA lacked an appropriate intellectual infrastructure for

9   a company of its size and it became increasingly difficult to manage.  To deal with

10  these problems, as detailed below, time and time again MGA simply stole Mattel's

11  proprietary business methods, practices and information.  This not only allowed

12  MGA to avoid expending the time, money and effort necessary to build a legitimate

13  business, but also allowed MGA to unfairly compete against Mattel by taking

14  Mattel's playbook.

15  **III.   MGA STEALS A NEW LINE OF FASHION DOLLS FROM MATTEL**

16          ~~28.~~32. Carter Bryant is a former Mattel employee.  Bryant joined Mattel

17  in September 1995, where he worked in Mattel's Design Center as a BARBIE

18  product designer.  In or about April 1998, Bryant resigned his position with Mattel

19  and moved to Missouri to live with his parents.  Late in 1998, Bryant applied to

20  Mattel to be rehired.  On January 4, 1999, he began working at Mattel in Mattel's

21  Design Center, again as a product designer, for Mattel's BARBIE collectibles line.

22          ~~29.~~33. Upon his return to Mattel in January 1999, Bryant executed an

23  Employee Confidential Information and Inventions Agreement (the "Employment

24  Agreement"), a true and correct copy of which is attached hereto as Exhibit A.

25          ~~30.~~34. Pursuant to his Employment Agreement and as a condition of

26  and in consideration for his employment, Bryant agreed, among other things, that he

27  held a position of trust with Mattel, that the designs and inventions he created during

28  his Mattel employment (with certain exceptions not relevant here) were owned by

1 | Mattel, and that he would be loyal to the company by agreeing not to assist or work
2 | for any competitor of Mattel while he was employed by Mattel.

3 | 31.35. On January 4, 1999, Bryant also executed Mattel's Conflict of
4 | Interest Questionnaire (the "Conflict Questionnaire"). Among other things, Bryant
5 | certified in the Conflict Questionnaire that, other than as disclosed, he had not
6 | worked for any competitor of Mattel in the prior twelve months and had not engaged
7 | in any business venture or transaction involving a Mattel competitor that could be
8 | construed as a conflict of interest. Bryant understood what the Conflict
9 | Questionnaire required because, among other things, he disclosed on it the freelance
10 | work he had performed while in Missouri for Ashton-Drake, which is unrelated to
11 | the conduct alleged herein. A true and correct copy of the Conflict Questionnaire
12 | executed by Bryant is attached hereto as Exhibit B.

13 | 32.36. Pursuant to the Conflict Questionnaire, Bryant also agreed that
14 | he would immediately notify his supervisor of any change in his situation that would
15 | cause him to change any of the foregoing certifications. Despite this obligation, at
16 | no time did Bryant disclose to Mattel that he was engaging in any business venture
17 | or transaction with MGA or any other Mattel competitor.

18 | 33.37. More specifically, while Bryant was employed by Mattel, Bryant
19 | and other Counter-defendants misappropriated and misused Mattel property and
20 | Mattel resources for the benefit of Bryant and MGA. Such acts included, but are not
21 | limited to, the following:

22 | a.    using his exposure to Mattel development programs to
23 | create the concept, design and name of Bratz;

24 | b.    using Mattel resources, and while employed by Mattel,
25 | Bryant worked by himself and with other Mattel employees and contractors to
26 | design and develop Bratz, including without limitation by creating drawings and
27 | three-dimensional models of Bratz dolls, and fashion designs for the dolls'
28 | associated clothing and accessories; and

c.    using Mattel resources, and while employed by Mattel, Bryant took steps to assist MGA to produce Bratz dolls.

34.38. During the time that he was employed by Mattel and thereafter, Bryant concealed these actions from Mattel, including by failing to notify his supervisor of the conflict of interest he created when he began working on MGA's behalf and when he began receiving payments from MGA.  Bryant additionally enlisted other Mattel employees to perform work on Bratz during the time he was employed by Mattel and, by all indications, in at least some cases led them to believe that they were performing work on a project for Mattel.

35.39. Bryant also made affirmative misrepresentations to Mattel management and employees immediately before his departure from Mattel on October 20, 2000.  For example, during his last few weeks at Mattel, Bryant told his co-workers and supervisors that he was going to leave Mattel for "non-competitive" pursuits.  Bryant's representations to his supervisors and his co-workers were false.  Bryant knew at the time that those representations were false and made those false statements to conceal from Mattel the fact that he was already working with MGA and that he had contracted with MGA to assign Bratz works to MGA and to provide design and development services to MGA, a Mattel competitor.

36.40. As a result of the efforts of Bryant and other Mattel employees working on Bratz (which were done without Mattel's knowledge), the Bratz dolls had been designed and were far along in development during the time that Bryant was employed by Mattel and prior to the time that Bryant left Mattel on October 20, 2000.  Not only did Bryant create and develop designs for the dolls as well as other aspects of the products such as their fashion accessories during the time he was employed by Mattel, but MGA showed Bratz prototypes and/or product to both focus groups and retailers by November 2000, less than three weeks after Bryant left Mattel.  Bryant, Larian and others at MGA arranged these meetings while Bryant was still employed by Mattel.

EXHIBIT ____

PAGE ____

-38-

THIRDFOURTH AMENDED ANSWER AND COUNTERCLAIMS

37.41. Bryant and MGA employees also repeatedly and continuously communicated with employees of MGA Entertainment (HK) Limited on subjects such as design and manufacturing of Bratz. On information and belief, at all material times, MGA Entertainment (HK) Limited has maintained regular and continuous contacts with persons in the County of Los Angeles; it regularly has shipped products that it manufactures, or that are manufactured for it, to the County of Los Angeles; and such products have been distributed to retailers and sold to consumers in the County of Los Angeles.

38.42. Bratz also were shown to retailers at the Hong Kong Toy Fair in January 2001. By early 2001, only a few months after Bryant resigned from Mattel, MGA began having the Bratz fashion doll line and accessories manufactured and then, shortly thereafter, began selling them at retail.

39.43. Since 2001, MGA has distributed and sold Bratz and Bratz-related products throughout the world. Mattel is informed and believes that MGA also licenses Bratz to third parties. Mattel is also informed and believes that MGA during certain time periods has derived annual revenue from its sales and licenses of Bratz in excess of $500 million. Mattel is further informed and believes that MGA and Bryant claim current ownership of Bratz, and all copyrights and copyright registrations attendant thereto. MGA continues to market, sell and license Bratz and has expressed an intention to continue to do so.

40.44. Mattel is informed and believes that MGA and Larian encouraged, aided and financed Bryant to develop Bratz, knowing full well that Bryant was still employed by Mattel at the time and that by performing such work, including design-related work, for his own benefit and/or the benefit of MGA, Bryant would be, and was, in breach of his contractual, statutory and common law duties to Mattel. Mattel is also informed and believes that MGA proceeded to aid and encourage Bryant to develop Bratz with the goal of obtaining a valuable fashion

1  doll line that would be commercially successful in the competitive, multi-billion

2  dollar market for fashion dolls.

3     41.45. Pursuant to Bryant's contract with Mattel, among other things,

4  Mattel is the true owner of Bratz designs and works, including those specifically that

5  were conceived, created or reduced to practice during Bryant's Mattel employment

6  as well as all designs and works that are or have been derived therefrom.  Counter-

7  defendants' continued use, sale, distribution and licensing of Bratz thus infringes

8  upon Mattel's rights, injures Mattel and unlawfully enriches the Counter-defendants.

9     42.46. Bryant and MGA deliberately and intentionally concealed facts

10  sufficient for Mattel to suspect or to know that it was the true owner of Bratz.  Their

11  acts of concealment include, but are not limited to, concealing the fact that Bryant

12  conceived, created, designed and developed Bratz while employed by Mattel,

13  including by tampering with, altering and defacing documents which showed that, in

14  fact, Bryant was a Mattel employee while he was working for and with MGA;

15  concealing the fact that Bryant worked with and assisted MGA during the time

16  Bryant was employed by Mattel and was compensated for that assistance;

17  concealing that Bryant was providing consulting services to MGA; concealing

18  Bryant's role in Bratz by falsely claiming that Larian and others were the creators of

19  Bratz; and concealing the fact that Mattel was the true owner of Bratz by, among

20  other things, filing fraudulent registrations and/or amendments to registrations with

21  the United States Copyright Office claiming MGA as the author of Bratz as a work

22  for hire and mis-dating or altering relevant dates on such documents to further

23  obscure the true facts of when the works were created.

24     43.47. Because of Bryant's and MGA's acts of concealment and Bryant's

25  misrepresentations to Mattel, Mattel had no reason to suspect that Bryant had

26  worked with MGA, or assisted MGA, while he still employed by Mattel until

27  approximately November 24, 2003, when Mattel received, through an unrelated

28  legal action, a copy of Bryant's agreement with MGA which showed that the date of

EXHIBIT 56

PAGE 12 54

-40-

THIRDFOURTH AMENDED ANSWER AND COUNTERCLAIMS

1    Bryant's agreement with MGA predated Bryant's departure from Mattel. It was

2    then, as a result, that Mattel learned for the first time that Bryant had secretly aided,

3    assisted and worked for and with MGA while employed at Mattel and in violation of

4    his Mattel Employment Agreement. Specifically, Bryant's agreement with MGA

5    obligated Bryant to provide product design services to MGA on a "top priority"

6    basis. Bryant's agreement with MGA also provided that Bryant would receive

7    royalties and other consideration for sales of products on which Bryant provided aid

8    or assistance; that all works and services furnished by Bryant under the agreement,

9    including those he purportedly provided while still a Mattel employee, purportedly

10   would be considered "works for hire" of MGA; and that all intellectual property

11   rights to preexisting works by Bryant, including Bratz designs, purportedly were

12   assigned to MGA.

13   **IV. MGA STEALS MATTEL TRADE SECRETS IN MEXICO**

14            44.48. On information and belief, in or about late 2003 or early 2004,

15   MGA decided to open business operations in Mexico. Faced with the difficult task

16   of developing an overall strategy for expanding into a market in which it had only a

17   nominal presence and no operations, MGA elected to steal Mattel's plans, strategy

18   and business information for the Mexican market and materials related to Mattel's

19   worldwide business strategies. As detailed below, MGA and Larian approached

20   three employees of Mattel's Mexican subsidiary ("Mattel Mexico"), enticed them to

21   steal Mattel's most sensitive business planning materials, and then hired them to

22   assist in establishing and running MGA's new Mexican subsidiary.

23       **A. MGA Hires Three Senior Mattel Employees in Mexico**

24            45.49. Carlos Gustavo Machado Gomez ("Machado") was the Senior

25   Marketing Manager, Boys Division, for Mattel Mexico, a position of trust and

26   confidence. He was employed at Mattel Mexico from April 1, 1997 until April 19,

27   2004. His duties included short, medium and long-term marketing planning,

28   generating product sales projections, and assisting in creation of the media plan. In

1  his position, Machado had access to highly confidential and sensitive marketing and

2  product development information.  Machado had an employment agreement with

3  Mattel in which he agreed to maintain the confidentiality of Mattel's protected

4  information.  Mattel's policies also required Machado to protect Mattel's proprietary

5  information and not to disclose it to competitors.

6     46.50.Mariana Trueba Almada ("Trueba") was the Senior Marketing

7  Manager, Girls Division, for Mattel Mexico, a position of trust and confidence.  She

8  was employed at Mattel Mexico from November 3, 1997 until April 19, 2004.  Like

9  Machado, her duties included short, medium and long-term marketing planning,

10  generating product sales projections, and assisting in creation of the media plan.  In

11  her position, Trueba had access to highly confidential and sensitive marketing and

12  product development information.  Trueba had an employment agreement with

13  Mattel in which she agreed to maintain the confidentiality of Mattel's protected

14  information.  Mattel's policies also required Trueba to protect Mattel's proprietary

15  information and not to disclose it to competitors.

16     47.51.Pablo Vargas San Jose ("Vargas") was a Senior Trade Marketing

17  Manager with Mattel Mexico, a position of trust and confidence.  He was employed

18  at Mattel Mexico from March 29, 2001 until April 19, 2004.  Vargas was

19  responsible for ensuring that point-of-sale promotions were carried out, analyzing

20  the results of such promotions, negotiating promotion budgets, and generally

21  managing promotional activities.  Vargas also had access to highly confidential and

22  sensitive marketing and product development information.  Vargas had an

23  employment agreement with Mattel in which he agreed to maintain the

24  confidentiality of Mattel's protected information.  Mattel's policies also required

25  Vargas to protect Mattel's proprietary information and not to disclose it to

26  competitors.

27     48.52.Beginning in late 2003 or early 2004, Machado, Trueba and

28  Vargas began planning to leave Mattel Mexico to join MGA.  In connection with

EXHIBIT ___58___

PAGE ___1354___

-42-

~~THIRD~~FOURTH AMENDED ANSWER AND COUNTERCLAIMS

1   that plan, and with the encouragement of Larian and other MGA officers operating

2   in the United States, they began accessing, copying and collecting proprietary

3   Mattel documents to take with them.  On April 19, 2004, Machado, Trueba and

4   Vargas each resigned their positions with Mattel, effective immediately.  They

5   stated that they had been hired by a Mattel competitor, but refused to identify that

6   competitor.  In fact, they had been offered and accepted employment by MGA to

7   establish and run MGA's new operation in Mexico.

8        **B.**     **Machado, Trueba and Vargas Stole Dozens of Confidential Trade**

9              **Secret Marketing and Sales Documents for MGA's Benefit**

10        49.~~53.~~ Following these resignations, Mattel discovered that Machado,

11   Trueba and Vargas had been in frequent telephonic and e-mail contact with MGA

12   personnel, including Larian, for over three months prior to their resignations.  The

13   primary vehicle for these communications in furtherance of their "plot" was an

14   America Online e-mail account with the address <plot04@aol.com>.  On

15   information and belief, during this time, Machado, Trueba and Vargas supplied

16   Larian with certain Mattel confidential and proprietary information in order to prove

17   their value to MGA and to improve their negotiating position vis-à-vis their

18   respective employment contracts with MGA.

19        ~~50.~~54. In March 2004, Machado, Trueba and Vargas were making plans

20   to travel from Mexico to Los Angeles to meet with MGA personnel in person prior

21   to resigning their positions at Mattel.  Also, by at least March 3, 2004, Machado,

22   Trueba and Vargas were discussing with MGA personnel, including Larian, specific

23   details regarding setting up MGA offices in Mexico City.  On information and

24   belief, prior to their resignations, Larian and others at MGA directed Machado,

25   Trueba and Vargas to steal virtually all Mattel confidential and proprietary

26   information that they could access and bring it with them to MGA.  This was

27   reflected in, among things, e-mail messages that Mattel had discovered after

28   Machado, Trueba and Vargas had resigned.  For example, on March 22, 2006,

1   approximately one month before they resigned, Machado, Trueba and Vargas wrote

2   an e-mail message from the <plot04@aol.com> e-mail account addressed to Larian,

3   MGA's General Manager Susan Kuemmerle and another MGA officer Thomas

4   Park.  In that e-mail message, Machado, Trueba and Vargas sought to prove their

5   value in this endeavor to MGA by writing:  "Attached you will find our analysis for

6   future discussion.  We will be available during the nights of the week after 16:30

7   Los Angeles time . . . ."  In another e-mail message, showing that the participants

8   intentionally sought to maximize the damage to Mattel from their conduct,

9   Kuemmerle wrote to Larian and Park:  "Gustavo, Mariana and Pablo want to resign

10  (all at the same time, and you can believe my smile!) next Wednesday."

11          51.55. Beginning on April 12, 2004, a week before his resignation and

12  after numerous communications and meetings with Larian and other MGA

13  personnel, Machado began transferring additional Mattel confidential and

14  proprietary information to a portable USB storage device (also know as a "thumb

15  drive") that he connected to his Mattel computer.  On Friday, April 16, 2004, the last

16  business day before he gave notice, Machado copied at least 70 sensitive documents

17  to the portable USB storage device.

18          52.56. Starting on April 12, 2004, Vargas also copied a host of

19  confidential and proprietary materials to a portable USB storage device, including

20  sales plans, sales projections and customer profiles.

21          53.57. On April 16, 2004, Trueba also copied Mattel confidential and

22  proprietary information to a portable USB storage device connected to her Mattel

23  computer.

24          54.58. With full knowledge that she was going to leave Mattel for a

25  competitor, Trueba also took steps to increase further her access to Mattel's

26  confidential information shortly before her resignation.  For example, just four days

27  before leaving, Trueba went out of her way to seek to attend a meeting at which

28  Mattel personnel analyzed BARBIE programs for the United States, Canada and

1   South America.  Two days before her resignation, she contacted both a Mattel

2   employee located in El Segundo, California and Mattel's advertising agency to

3   request updated confidential information about advertising plans for BARBIE.  On

4   information and belief, Trueba acted at the direction of MGA and Larian and did so

5   in order to obtain further information that would allow MGA to obtain unfair

6   competitive advantage over Mattel.

7         55.59.Machado, Trueba and Vargas stole virtually every type of

8   document a competitor would need to enter the Mexican market and to unlawfully

9   compete with Mattel in Mexico, in the United States, and elsewhere.  They stole

10   global internal future line lists that detailed anticipated future products; production

11   and shipping costs for Mattel products; daily sales data for Mattel products;

12   customer data; sales estimates and projections; marketing projections; documents

13   analyzing changes in sales performance from 2003 to 2004; budgets for advertising

14   and promotional expenses; strategic research reflecting consumer responses to

15   products in development; media plans; consumer comments regarding existing

16   Mattel products; customer discounts and terms of sale; customer inventory level

17   data; assessments of promotional campaign success; market size historical data and

18   projections; marketing plans and strategies; merchandising plans; retail pricing and

19   marketing strategies; and other similar materials.

20         56.60.The stolen data was not limited to the Mexican market.  The

21   information stolen would, and did, give MGA an unfair competitive advantage in

22   the United States and around the world.  Further, the stolen information was not

23   located exclusively in Mexico, but included confidential and proprietary information

24   that resided on Mattel computers in Phoenix, Arizona and El Segundo, California,

25   and/or documents which were originally created by personnel in El Segundo.

26   Included among these stolen documents was one of Mattel's earliest internal global

27   line lists, which included information for BARBIE products for the upcoming year

28   and included, for each product, the expected profit margin, advertising expenditures,

EXHIBIT   58

PAGE   1259

-45-

THIRDFOURTH AMENDED ANSWER AND COUNTERCLAIMS

1   expected volume and marketing strategy.  On information and belief, Machado,
2   Trueba or Vargas delivered that internal line list to Larian or another MGA officer
3   during their negotiations with MGA.

4   57.61. MGA has used the information taken from Mattel to obtain an
5   unfair advantage over Mattel, including in both the United States and Mexico.  In
6   fact, MGA later publicized its claim that, in 2005, it had increased its Mexican
7   market share by 90 percent over the prior year.  This increase came at the expense of
8   Mattel, which lost market share during 2004 in Mexico and was forced to increase
9   its advertising and promotional spending to offset further losses.

10   58.62. Machado, Trueba and Vargas attempted to conceal their
11   widespread theft of Mattel's proprietary information.  For example, Machado ran a
12   software program on his Mattel personal computer in an attempt to erase
13   information, including information that would reveal the addresses to which he had
14   sent, or from which he had received, e-mail messages.  On information and belief,
15   for the same purpose Machado also damaged the hard drive of the personal
16   computer that he used at Mattel.

17   59.63. On information and belief, on April 19, 2004, immediately after
18   Machado, Trueba and Vargas simultaneously resigned, they traveled from Mexico
19   to Los Angeles to meet with MGA personnel, including Larian, in person.

20   60.64. Mattel notified Mexican authorities about the theft of its trade
21   secret and confidential information.  On October 27, 2005, the Mexican Attorney
22   General Office obtained a search warrant from the Mexican Federal Criminal Courts
23   for MGA's facilities in Mexico City.  In that search, the Mexican authorities found
24   and seized from MGA's offices both electronic and paper copies of a large number
25   of documents containing Mattel trade secrets, including those that Mattel discovered
26   through its forensic investigations, plus many others that Mattel had not known had
27   been stolen.

28

EXHIBIT   58
PAGE   1346

-46-

THIRD FOURTH AMENDED ANSWER AND COUNTERCLAIMS

1    61.65. Based on Machado's "performance" in Mexico, Isaac Larian

2    subsequently promoted Machado, and he was transferred to MGA's main office in

3    Van Nuys, California.  When deposed in connection with this case, Machado

4    refused to answer questions about his misconduct and instead invoked the Fifth

5    Amendment over 100 times.  On information and belief, Machado has resided at

6    times relevant hereto in the County of Los Angeles, California, and on information

7    and belief, currently resides in Mexico.

8    **V.    MGA HIRES MATTEL'S SENIOR VICE PRESIDENT AND**

9    **GENERAL MANAGER TO FACILITATE ITS THEFT AND USE OF**

10   **MATTEL'S HIGHLY VALUABLE BUSINESS METHODS AND**

11   **PRACTICES**

12   62.66. On October 1, 2004, Mattel's Senior Vice President and General

13   Manager, Ron Brawer, left Mattel and joined MGA.  Tyco Toys, Inc. ("Tyco"), a

14   predecessor to Mattel, had hired Brawer on April 22, 1996.  The same day, Brawer

15   entered into an Employee Invention & Trade Secret Agreement with Tyco.  On

16   April 9, 1997, Brawer became a Marketing Director for Mattel in Mount Laurel,

17   New Jersey, and remained bound by his Employee Invention & Trade Secret

18   Agreement.

19   63.67. In January 2003, while Brawer held a position of trust and

20   confidence at Mattel, Mattel's "Code of Conduct" was circulated to all Mattel

21   employees worldwide.  Included in the Code of Conduct were statements that:

22   Employees and Directors have an obligation to protect the

23   confidentiality of Mattel's proprietary information.  Proprietary

24   information is any information not generally known to the public

25   that is useful to Mattel, that would be useful to its competitors or

26   other third parties or that would be harmful to Mattel or its

27   customers if disclosed.  Proprietary information includes trade

28   secrets, revenue and profit information and projections, new

1    product information, marketing plans, design and development

2    efforts, manufacturing processes and any information regarding

3    potential acquisitions, divestitures and investments.

4    We can protect the security of Mattel's proprietary information

5    by limiting access to it.  Confidential information should not be

6    discussed with those who are not obligated to maintain the

7    information in confidence and in public places where the

8    information is not likely to be kept secret, such as planes,

9    restaurants and elevators.  The obligation to preserve confidential

10   information continues even after employment ends.

11   The Code of Conduct applied to Brawer and required that he meet his obligations

12   under the Code of Conduct.

13       64.68. By 2003, Brawer had advanced within Mattel to a Senior Vice

14   President position over customer marketing, a position of trust and confidence.  In

15   his executive position, Brawer was provided access to information that was both

16   sensitive and confidential, including, but not limited to, detailed information related

17   to development, manufacture, marketing, pricing, shipping, and performance of

18   Mattel's then-current and anticipated future product lines, and other confidential

19   business plans between Mattel and its most significant retail customers.

20       65.69. In December 2003, Alan Kaye, Mattel's Senior Vice President of

21   Human Resources, asked Brawer whether he was discussing potential employment

22   with MGA.  Brawer denied that he had been in contact with MGA and represented

23   that he would not talk to MGA.  Throughout 2004, Mattel reminded and stressed to

24   its employees, including Brawer, the importance of protecting Mattel's confidential

25   and proprietary materials and information.

26       66.70. On March 18, 2004, in response to a survey from the President of

27   Mattel Brands, Matt Bousquette, confirming compliance with Mattel's Code of

28   Conduct, Brawer wrote back that he "applaud[ed] the company's vigorous

1   protection of it's [sic] intellectual property," reflecting Brawer's clear understanding

2   that Mattel required its proprietary information to be kept confidential.

3           67.71. In April 2004, Mattel promoted Brawer to Senior Vice

4   President/General Manager.  The General Manager position also is an executive

5   position of trust and confidence.  The role of a General Manager is to lead a cross-

6   functional "Customer Business Team."  Each General Manager is accountable for a

7   strategic partnership with a key Mattel retailer, covering all aspects of the business,

8   including both traditional toy sales and retail development of licensed products.

9           68.72. In or about late May 2004, Brawer began performing General

10  Manager duties, working with one of Mattel's major retail customer accounts.

11  Thereafter, Brawer began receiving information related not only to the Senior Vice

12  President, Customer Marketing position that he still formally held, but also began

13  receiving detailed information related to his role as General Manager.  Brawer

14  began requesting and analyzing detailed information related to Mattel and its four

15  key retail accounts.

16          69.73. On September 15, 2004, Brawer left work at noon for observance

17  of Rosh Hashanah.  As Brawer left, he carried a large cardboard box with binders

18  and other materials.  Several hours after his departure, Brawer instructed his

19  assistant to print Mattel's 2004 Sales Plan for one of Mattel's significant customers

20  and to provide it to him, falsely claiming he needed it for a meeting

21          70.74. On September 17, 2004, Brawer returned to Mattel and

22  immediately informed his supervisor that he was leaving Mattel, effective October

23  1, 2004, to work for competitor MGA.

24          71.75. On September 20, 2004, Mattel hand-delivered a letter to Brawer

25  reminding him of his continuing obligation to preserve the confidentiality of

26  Mattel's proprietary information and trade secrets not only through October 1, 2004,

27  but continuing beyond the termination of his employment.

28

1    72.76. At his exit interview on September 29, 2004, Mattel reminded

2    Brawer that he had ongoing duties of confidentiality to Mattel, even after the

3    termination of his employment.  Brawer was given a copy of his Original

4    Confidentiality Agreement, which he had signed on April 22, 1996, and another

5    copy of the Code of Conduct.  During the exit interview, however, Brawer noted

6    that he had not signed the Code of Conduct, which he intended and Mattel

7    understood to mean that Brawer believed he was not bound by Mattel's policy

8    because he had not signed it.  Brawer was unwilling to complete or sign the form

9    that sought to confirm that Brawer understood his ongoing obligations under the

10   Code of Conduct, which included the obligation to preserve the confidentiality of

11   Mattel's proprietary and trade secret information.

12   73.77. On October 1, 2004, Brawer's final day of employment with

13   Mattel, Mattel hand-delivered to Brawer a letter that, among other things, reminded

14   Brawer of his confidentiality obligations to Mattel under the Code of Conduct.

15   74.78. Upon joining MGA, Brawer became its Executive Vice-

16   President of Sales and Marketing.  In that role he was responsible for MGA's sales

17   worldwide.  As part of those responsibilities, Brawer had and continues to have

18   responsibility for MGA's accounts with the same retailers that he worked with while

19   at Mattel.

20   75.79. Brawer represented during his Mattel exit interview that he had

21   returned all proprietary information to Mattel.  That representation was false.  On

22   information and belief, Brawer removed proprietary and trade secret information

23   from Mattel that he did not return.  Mattel is informed and believes that Brawer did

24   not return to Mattel, for example, the information contained in his contacts file.  The

25   contacts file included contact information for Mattel customers, most notably TRU,

26   and extensive contact information for Mattel employees, including titles, e-mail

27   addresses and telephone numbers.

28

00505.07209/2875224.10
975/3029070.5

EXHIBIT 58
PAGE 1264

-50-

THIRD FOURTH AMENDED ANSWER AND COUNTERCLAIMS

76. 80. Brawer has used that contact information on a regular basis. Since leaving Mattel, Brawer has had contacts with Mattel employees, both by telephone and by electronic mail. Based on his knowledge of Mattel's operations and the roles of certain Mattel employees, he has targeted certain Mattel employees who have broad access to Mattel proprietary information in an effort to induce and encourage them to join MGA and to steal or otherwise wrongfully misappropriate Mattel confidential information and trade secrets. Brawer has done so by promising these Mattel employees salaries 25 percent or more higher than they earn at Mattel and stating to them that they should not be concerned by legal action taken by Mattel to protect its trade secrets and its rights because such claims are hard to prove and easy to defeat.

## VI.  MGA HIRES OTHER KEY PERSONNEL FROM MATTEL IN ORDER TO OBTAIN TRADE SECRET AND HIGHLY CONFIDENTIAL INFORMATION REGARDING MATTEL'S FORECASTING & INVENTORY MANAGEMENT SYSTEMS

77. 81. On March 13, 2006, MGA recruited Jorge Castilla, Mattel's Planning Specialist for Operations, Planning & Finance. Before he left Mattel, Castilla stole on behalf of counter-defendants significant Mattel trade secrets and proprietary information.

78. 82. Castilla joined Mattel in November 1999 and, in positions both in Europe and the U.S., played a role in Mattel's development of highly proprietary processes and systems for forecasting and inventory management in which Mattel invested heavily. In Mattel's European operations, Mr. Castilla was involved in Mattel's development of a pilot program to improve sales forecasting in the United Kingdom, and later, with the potential application of the pilot program to Mattel's world-wide sales forecasting.

79. 83. In late 2004, Castilla worked with the International Planning group at Mattel's headquarters in El Segundo, California, where he was responsible

1  for establishing Mattel's Electronic Data Warehouse system, a proprietary database

2  containing highly confidential business information, such as sales, future/pending

3  orders, product availability and sales forecasts at the stock keeping unit level.

4  Additionally, he was responsible for implementing Mattel's customized sales

5  forecasting system and preparing information for senior financial officers regarding

6  inventory levels, sales demands and related topics.

7          80.84. Throughout his tenure at Mattel, Castilla became privy to some

8  of Mattel's most confidential and valuable information.  Castilla acknowledged his

9  position of trust confidence and agreed that he would preserve and would not

10  disclose or misuse Mattel's proprietary or confidential information on numerous

11  occasions.  For example, in Castilla's Employee Confidential Information and

12  Inventions Agreement, which he signed on October 29, 1999, he acknowledged that

13  he would develop and have access to Mattel proprietary information.  Castilla

14  further agreed not to "disclose or use at any time either during or after my

15  employment with [Mattel], any Proprietary Information," and to "cooperate with the

16  Company and use [his] best efforts to prevent the unauthorized disclosure, use or

17  reproduction of all Proprietary Information."  He also agreed that when he left

18  Mattel's employ, he would deliver to Mattel "all tangible, written, graphical,

19  machine readable and other materials (including all copies in [his] possession or

20  under [his] control containing or disclosing Proprietary Information."

21          81.85. Castilla had agreed to the terms in Mattel's Code of Conduct to

22  preserve Mattel's confidential and proprietary information and was specifically

23  warned that "the unauthorized use or disclosure of [Mattel's] confidential,

24  proprietary or trade secret information" may result in the termination of his

25  employment.  He further agreed:

26          Employees have an obligation to protect the Company's

27          confidential and proprietary information.  Confidential and

28          proprietary information is any information which is not

1   generally known to the public that is useful to the

2   Company and that would either be useful to the

3   Company's competitors or third parties or harmful to the

4   Company or its customers, if disclosed.  Confidential and

5   proprietary information includes, but is not limited to,

6   trade secrets, revenue and profit information and

7   projections, new product information, sales and marketing

8   plans, design and development plans, manufacturing

9   processes, confidential personnel information and

10   information regarding potential acquisitions, divestitures

11   and/or investments.

12   82.86. On Monday, March 13, 2006, Castilla informed Mattel that he

13   was resigning to take a position with MGA, as a Manager of Global Sales Planning,

14   with responsibilities that substantially paralleled those that he had at Mattel.

15   83.87. During Castilla's exit interview on March 13, 2006, he was

16   provided with a document reminding him of his obligations to preserve Mattel's

17   confidential and proprietary information, including his obligations under Mattel's

18   Employee Confidential Information and Inventions Agreement, including but not

19   limited to "inventions, marketing plans, product plans, business strategies, forecasts

20   and personnel information."  Further, Castilla filled out an exit interview checkout

21   form, in which he acknowledged receiving not only the reminder, but also the

22   Mattel Code of Conduct.  Castilla also acknowledged that, during the course of his

23   employment at Mattel, he had received materials containing confidential and

24   proprietary information, and affirmed that he did not copy or disclose any of the

25   listed documents or the information that they contained to anyone outside of Mattel,

26   and denied having possession of any of the listed documents.  He also affirmed that

27   he returned to Mattel all of its confidential and proprietary documents by

28

1  representing that he "brought them in on March 12, 2006, filed them and put
2  together a summary of ongoing projects for supervisor, Brenda [Ray-Martin]."

3          84.88. Despite his affirmations to the contrary, as of Friday, March 10,
4  2006, Castilla had created a folder on his Mattel network share drive that he labeled
5  "To Take."  The folder contained approximately 56 megabytes of information.  The
6  bulk of that information was made up of documents containing Mattel trade secrets
7  and confidential information, including documents related to inventory management
8  and forecasting for Mattel, as well as a highly confidential document prepared by
9  Mattel's senior executives that laid out Mattel's future international business
10  strategies and marketing priorities not only up to today, but also for the coming
11  years.

12          85.89. Just prior to his resignation, Castilla entered Mattel's
13  headquarters building at approximately 9:30 a.m. on Sunday, March 12, 2006 and
14  departed at approximately 2:00 p.m.  By Monday, March 13, 2006, Castilla had
15  deleted the "To Take" folder and its contents from his network share drive.  Castilla
16  had transferred the information in the "To Take" folder and potentially the folder
17  itself to an e-mail account <hoclau04@gmail.com>, <hoclau04@yahoo.com>
18  and/or to a personal digital assistant device.

19          86.90. When he was later interviewed by the FBI about his theft, on
20  information and belief Castilla turned over to the FBI agents the storage media from
21  his personal digital device which contained Mattel trade secrets.  When deposed in
22  connection with this case, Castilla refused to answer questions about his misconduct
23  and instead invoked the Fifth Amendment nearly 500 times.

24          87.91. Much of the Mattel trade secrets and confidential information
25  that Castilla took from Mattel related to the successful processes for efficient and
26  cost-effective management of inventory and the use of sophisticated forecasting
27  techniques that Mattel, through significant investment, developed to obtain a
28  competitive advantage in the toy industry with its unique order, manufacture and

1  delivery cycles.  The former Mattel employees working at MGA recognized the

2  value of Castilla's knowledge.  MGA was in dire need of improved inventory

3  management and forecasting, and to remedy this problem MGA targeted Castilla—

4  and the Mattel-specific knowledge that he possessed—and lured him to MGA.  With

5  the benefit of the information that he brought with him, on information and belief,

6  MGA, including through Castilla, has used that proprietary and confidential

7  information to improve MGA's sales forecasting and inventory planning, thus saving

8  MGA many millions of dollars, and providing it with other advantages.

9  **VII. MGA STEALS MATTEL TRADE SECRETS IN CANADA**

10  88.92. In an effort to increase its market share and sales in Canada and

11  elsewhere, MGA stole Mattel trade secrets regarding Mattel's customers, sales,

12  projects, advertising and strategy, not only for Canada, but the United States and the

13  rest of the world.

14  89.93. Janine Brisbois was a Director of Sales for the Girls Division in

15  Canada.  Mattel hired her as a National Account Manager in August 1999.  When

16  she was hired as a Mattel employee, Brisbois agreed that she would preserve and

17  would not disclose Mattel's proprietary or confidential information.  For example,

18  Brisbois agreed:

19  You must keep Mattel's Proprietary Information confidential,

20  and you may only use or disclose such information as necessary

21  to perform your job responsibilities in accordance with Mattel

22  policies.  Your obligation to keep Mattel's Proprietary

23  Information confidential will continue even after any termination

24  of your employment with your employer.

25  . . .

26  Mattel takes steps to maintain the secrecy and confidential nature

27  of Mattel's Proprietary Information and, if a competitor

EXHIBIT  58

PAGE  1269

28

THIRD FOURTH AMENDED ANSWER AND COUNTERCLAIMS

1    discovered Mattel's Proprietary Information, it could

2    significantly damage Mattel and your Employer.

3        90.94. While with Mattel, Brisbois had responsibility for Mattel's

4    account with TRU and later had responsibility for Mattel's Wal-Mart account.  In

5    her capacity as Sales Director-Wal-Mart/CTC/Girls Team, Brisbois had access to

6    Mattel confidential and proprietary information regarding Mattel's future product

7    lines, advertising and promotional campaigns and product profitability.

8        91.95. On September 26, 2005, Brisbois resigned from Mattel to take a

9    position as Vice President of Sales at MGA.  Mattel is informed and believes that in

10   that position Brisbois has responsibility for MGA's accounts with both TRU and

11   Wal-Mart.  During Brisbois' exit interview she was specifically asked whether she

12   was "taking anything."  Brisbois responded, "No."  Both during and after her exit

13   interview, Brisbois was advised by Mattel of her obligations to preserve Mattel's

14   confidential and proprietary information.

15       92.96. Mattel is informed and believes that Brisbois spoke with Isaac

16   Larian, MGA's CEO, on September 22, 2005 at approximately 8:30 p.m., when he

17   called Ms. Brisbois at her home.  Mattel subsequently learned that on the same day

18   that she spoke with Mr. Larian and four days before she resigned, Brisbois copied

19   approximately 45 Mattel documents on to a USB or "thumb" drive with the volume

20   label "BACKPACK."  On information and belief, Brisbois removed the thumb drive

21   from Mattel Canada's office by concealing it in her backpack or gym bag the last

22   time that she left that office.  These documents contained Mattel trade secret and

23   proprietary information, and included:

24   • a document containing the price, cost, sales plan and quantity of every

25        Mattel product ordered by every Mattel customer in 2005 and 2006;

26   • the BARBIE television advertising strategy and information concerning

27        sales increases generated by television advertisements;

28   • competitive analysis of Mattel vis-à-vis its competitors in Canada;

1      •  an analysis of Mattel's girls business sales beginning in 2003 and

2         forecasts through 2006;

3      •  profit and loss reviews for Mattel's products being sold in Wal-Mart,

4         including margins and profit in not only Canada, but in the United

5         States and Mexico; and

6      •  a document containing the product launch dates and related advertising

7         for all Mattel new products between Fall 2005 and Spring 2006.

8        93.97. After Mattel discovered that Brisbois had copied these sensitive

9 documents to a thumb drive, Mattel notified Canadian law enforcement authorities.

10 Canadian law enforcement authorities recovered from Brisbois a thumb drive with

11 the volume label "BACKPACK" containing the documents that Brisbois had copied

12 from Mattel's computer system.  Mattel later learned that while she was working as

13 a Vice President of Sales at MGA, Brisbois accessed and modified documents on

14 that thumb drive.

15        94.98. After joining MGA, Brisbois repeatedly traveled to MGA's

16 offices in Van Nuys, California and met with Larian and Brawer.  In February,

17 2006, knowing that Mattel trade secrets had been seized from MGA's Mexico City

18 offices and that at least three MGA employees were under criminal investigation,

19 MGA nonetheless issued a press release trumpeting its 2005 performance, with

20 Larian himself concluding, "Our international teams in Mexico and Canada have

21 done a fantastic job."

## VIII. AT MGA'S DIRECTION, MATTEL EMPLOYEES IN ADDITION TO BRYANT SECRETLY WORK ON BRATZ FOR YEARS

24        95.99. MGA also knowingly bribed and secretly used Mattel employees

25 in addition to Bryant to work on MGA products such as Bratz while they were

26 Mattel employees and, furthermore, fraudulently concealed such activity.  On

27 December 28, 2007, MGA vendor and agent Veronica Marlow revealed at her

28 deposition that, beginning in 2000 and continuing over a time period spanning at

EXHIBIT ___58___

PAGE ___127___

-57-

THIRDFOURTH AMENDED ANSWER AND COUNTERCLAIMS

1   least five years, at least three Mattel employees in addition to Bryant worked on

2   Bratz while employed by Mattel:  Ana Isabel Cabrera, Beatriz Morales and Maria

3   Elena Salazar.  Like Bryant, these Mattel employees all signed agreements assigning

4   Mattel all rights to intellectual property they created while employed by Mattel.

5   Each of the three Mattel employees worked for MGA through Marlow, to whom

6   MGA and Bryant have paid millions of dollars since 2000.

7           96.100.      Following Marlow's December 2007 deposition, Ms.

8   Cabrera and Ms. Morales, who were still Mattel employees, admitted to being paid

9   for and working on Bratz while Mattel employees and to knowing that such conduct

10  was wrong.  Both specifically acknowledged that they continued to work on Bratz

11  even after Mattel had made them aware of this litigation involving Bryant's secret,

12  illegal work with MGA and had reiterated the need to protect Mattel's intellectual

13  property.  Both admitted that they tried to conceal their work for MGA.

14          97.101.      MGA and Larian knew that their bribery and use of Mattel

15  employees was wrongful and took steps to conceal that misconduct.  Among other

16  things:  (a) MGA and Larian, by and through their agents Peter Marlow and

17  Veronica Marlow, used devices such as paying the Mattel employees in cash and

18  using false names and false social security numbers in tax and other business

19  records; (b) MGA and Larian continued their acts of bribery and other misconduct

20  after this litigation was filed; (c) MGA and Larian failed to disclose their payments

21  to these Mattel employees despite Court Orders compelling them to disclose any

22  such instances; and (d) MGA and Larian hired Maria Elena Salazar after she left

23  Mattel, even though she specifically touted in her employment application to MGA

24  that she worked on the "first patterns for [the] Bratz doll and release;" and (e) in an

25  email from Peter Marlow to Larian and Paula Garcia of MGA dated June 20, 2005,

26  Marlow informed MGA that the pattern and sample makers "have secure day jobs

27  with an outlook of many more years of stability," they "moonlight" to work on

28

EXHIBIT 58
PAGE 1272

-58-

THIRDFOURTH AMENDED ANSWER AND COUNTERCLAIMS

1 Bratz and "[t]hey have more than 100 years total of doll-making experience between

2 them."

3 **IX. MGA PERSUADES OTHER EMPLOYEES LEAVING MATTEL TO**

4 **JOIN MGA TO MISAPPROPRIATE MATTEL TRADE SECRETS**

5 **FOR THE BENEFIT OF MGA**

6 ~~98.~~102.      In the past few years, MGA has hired directly over 100

7 Mattel employees, ranging from Senior Vice-President level to lower level

8 employees. On information and belief, many of these employees were specifically

9 targeted and recruited by MGA, including by Larian and Brawer, based on the

10 Mattel confidential and proprietary information they could access. Many of these

11 employees had access to proprietary and confidential Mattel information. Mattel

12 believes that some of those former Mattel employees may be observing their

13 obligations not to misappropriate, disclose or use Mattel's confidential and

14 proprietary information. Mattel is informed and believes, however, that certain

15 additional employees accessed, copied and took from Mattel confidential and

16 proprietary information, including Mattel's strategic plans; business operations,

17 methods and systems; marketing and advertising strategies and plans; future product

18 lines; product profit margins; and customer requirements. The misappropriated

19 confidential and proprietary information included information that these Mattel

20 employees were not authorized to access. On information and belief, the

21 misappropriated confidential and proprietary information taken from Mattel is being

22 disclosed to and used by MGA for the benefit of MGA and to the detriment of

23 Mattel.

24 **X. LARIAN MAKES MISREPRESENTATIONS TO RETAILERS ABOUT**

25 **MATTEL'S PRODUCTS**

26 ~~99.~~103.      Counter-defendants have engaged in other illegal practices

27 in their efforts to compete unfairly with Mattel. Larian has a practice of sending e-

28 mail messages to a "Bratz News" distribution list that Larian created or that was

1 created for him. Mattel is informed and believes that the recipients of e-mail
2 messages sent to the "Bratz News" distribution list include members of the media as
3 well as representatives of many of Mattel's most significant customers.

4        100.104.   On May 12, 2006, Larian sent an e-mail message to the
5 "Bratz News" distribution list that included a reference to Mattel's updated MY
6 SCENE MY BLING BLING product with real gems. Mattel had not publicly
7 announced this product at the time that Larian sent his May 12, 2006 e-mail. In fact,
8 Mattel had guarded the identification of this particular product.

9        101.105.   Shortly thereafter, Larian engaged in a campaign of calling
10 Mattel's most significant customers, including but not limited to Target and TRU,
11 regarding the MY SCENE MY BLING BLING product with real gems. In an effort
12 to dissuade these retailers from purchasing Mattel's MY SCENE MY BLING
13 BLING product with real gems, Larian knowingly made false factual statements
14 about that product to each retailer. As of the writing of this ThirdFourth Amended
15 Answer and Counterclaims, Mattel is aware that Larian represented to each retailer
16 that each was the only retailer to purchase the product and that Mattel would not be
17 supporting the product with television advertising. At the time that Larian made
18 these statements, he knew them to be false. As a result of Larian's
19 misrepresentations, at least one retailer cancelled its order for 75,000 units of the
20 MY SCENE MY BLING BLING product with real gems. Only after Mattel learned
21 of Larian's misrepresentations and was able to correct them was Mattel able to
22 assure the retailer that Larian's representations were false and to persuade the retailer
23 to reinstate the order.

24        102.106.   Such conduct is not an isolated incident. MGA and
25 Larian, in an effort to gain an unfair competitive advantage, repeatedly issued false
26 and misleading press releases and spread false rumors in the marketplace. In these
27 press releases and in their other statements made in marketplace, MGA and Larian
28 have deliberately misrepresented Bratz's sales, Bratz's market share, Bratz's position

1    vis-à-vis Mattel's BARBIE products, sales of Mattel's BARBIE products and the

2    market share of Mattel's BARBIE products.

3    **XI.   LARIAN AND MGA DESTROY DOCUMENTS, ENGAGE IN**

4    **PERJURY, CONSPIRACY TO COMMIT PERJURY AND**

5    **OBSTRUCTION OF JUSTICE**

6            ~~103.~~107.    On information and belief, Larian and MGA have

7    themselves, and through their agents and co-conspirators, destroyed, altered,

8    fabricated and back-dated documents and engaged in other acts of spoliation to

9    conceal the existence, nature and breadth of their wrongful conduct.  For example,

10   and without limitation, Farhad Larian, a former MGA executive and director and

11   Isaac Larian's brother, deliberately destroyed several boxes of documents relevant

12   to Mattel's claims against Bryant and MGA to keep them from Mattel.  Farhad

13   Larian did so while still on MGA's payroll.

14           ~~104.~~108.    On information and belief, Larian and MGA have also

15   conspired to commit perjury and engaged in acts of perjury and other acts of

16   obstruction in connection with MGA's theft of Mattel's property and Mattel's

17   claims relating thereto.  These actions include, among others, MGA's submission of

18   false information in sworn applications to the U.S. Copyright Office; Larian's

19   repeated sworn testimony during Phase 1 that Bryant told him, and that Larian

20   believed, that Bryant had not created Bratz while employed by Mattel; MGA's and

21   Larian's submission of false statements regarding MGA's ability to receive outside

22   funding in court pleadings and false statements regarding its financial condition in

23   this action.

24   **XII.  MGA AND LARIAN LAUNDER MONEY, ENGAGE IN**

25   **FRAUDULENT TRANSFERS AND ATTEMPT TO OBTAIN SHAM**

26   **PRIORITY OVER MATTEL'S CLAIMS**

27           ~~105.~~109.    MGA and Larian, on information and belief, have

28   engaged in and continue to engage in a complex scheme to transfer, launder or

EXHIBIT _58_

PAGE _1275_                         -61-

~~THIRD~~FOURTH AMENDED ANSWER AND COUNTERCLAIMS

1  otherwise hide the ill-gotten funds they have obtained by virtue of their unlawful

2  conduct and have gone to extensive lengths to cover up and obscure such activities.

3  On information and belief, this scheme was orchestrated and/or commenced no later

4  than 2007, but accelerated during the pendency of trial, especially after the Jury's

5  Phase 1A verdict in Mattel's favor.  This scheme continues to and beyond this day

6  and threatens to continue into the future.

7          ~~106.~~ On information and belief, in concert with various co-

8  conspirators and shell companies controlled by them, acting on their behalf or in

9  which they have an interest, MGA and Larian have transferred or transported, or

10  caused to be transferred or transported, funds obtained through their unlawful

11  conduct in interstate commerce, including without limitation out of the United

12  States.  At least some of these funds, on information and belief, were later returned

13  to the United States through shell entities that attempt to disguise not only the true

14  owners of the companies, but the origin and source of the funds as well.

15          ~~107.~~110.    These entities have, on information and belief, funded

16  further wrongdoing by MGA and Larian, including the purported purchase, at a

17  substantial discount, of notes held by MGA's then-largest creditor, Wachovia, and

18  other members of a bank syndicate.  By this scheme, Larian and his co-conspirators

19  sought to disguise their identities and to obtain purported priority as an alleged

20  secure creditor (rather than as a shareholder) over Mattel's claims against MGA and

21  MGA's assets, including without limitation Bratz assets.  On information and belief,

22  MGA and Larian conducted and participated in this scheme with the purpose of

23  concealing and manipulating their assets and liabilities and the appearance of their

24  financial condition in anticipation of their liability to Mattel, and for the purpose of

25  minimizing any exposure due to that liability.  The scheme has directly assisted

26  MGA and Larian in committing the other wrongs against Mattel identified herein.

27          111.  ~~Larian and MGA Create~~MGA, acting at the behest of Larian, has

28  also distributed throughout the course of this lawsuit vast quantities of ill-gotten

1    funds obtained by virtue of the unlawful conduct alleged herein.  On information

2    and belief, these distributions, made largely to Larian and his family members and

3    their associated trusts, had the actual and intended effect of draining MGA of assets,

4    including assets that rightfully belong to Mattel, and placing them instead in the

5    possession and/or control of Larian and his conspirators.  On information and belief,

6    these distributions also had the effect of limiting the assets available to MGA to

7    maintain and promote Bratz – Mattel's property -- in clear violation of MGA's duty

8    to preserve and protect that property.

9        **A.**    **<u>Larian and MGA Employ</u> Various Shell and Off-Shore Entities**

10           ~~108.~~112.    On information and belief, Larian and MGA, and those

11   acting in concert with them, have created, affiliated with, employed or purchased

12   one or more shell entities to either transfer or assist in the transfer of proceeds

13   generated by their unlawful conduct and the criminal enterprises.  These include, but

14   are not limited to, the following entities and transactions:

15       •  Lexington Financial Limited ("Lexington"), a company purportedly

16         based in the Caribbean island nation of Nevis that is notorious for its

17         secrecy laws.  Lexington, whose purported London business address

18         listed in filings with the State of California is nothing more than a

19         virtual office provided by a London company for a few dollars a month,

20         appears to be a non-operating shell corporation.  Lexington was

21         registered on March 3, 2006 by persons who, on information and belief,

22         were acting on behalf of or in concert with Larian, and Larian and his

23         co-conspirators used and continue to use Lexington to conceal, receive,

24         hold and transfer funds generated by the wrongful conduct alleged

25         herein.

26       •  Vision Capital, LLC, a Delaware limited liability company ("Vision

27         Capital"), which, on information and belief, was created by persons at

28         the direction or on behalf of Larian on August 19, 2008, just after the

Phase 1A jury verdict in Mattel's favor.  On information and belief, Larian and his co-conspirators used and continue to use Vision Capital to conceal, receive, hold and transfer funds generated by their wrongful conduct alleged herein.

- ~~Omni 808 Investors, LLC, a California limited liability corporation ("Omni 808"),~~Omni 808, which, on information and belief, was created at the direction or on behalf of Larian on August 12, 2008, just after the Phase 1A jury verdict in Mattel's favor.  On information and belief, Larian and his co-conspirators used and continue to use Omni 808 to conceal, receive, hold and transfer funds generated by their wrongful conduct alleged herein.  In 2006, Neil Kadisha, the alleged CEO of Omni 808 ~~and,~~ a Larian co-conspirator and a defendant herein, was found by a court after trial to be "no more than a common thief" and was held liable for stealing millions of dollars as part of a decade-long pattern of fraudulent conduct that included perjury, subornation of perjury, fabrication of financial records, sham transactions, preparation of back-dated documents, fraudulent accountings, acts of looting, embezzlement and other misappropriations of funds, breaches of fiduciary duty, conflicts of interest and illegal self-dealing.

~~109.~~113.      Lexington claims a purported security interest in the assets of Vision Capital.  Vision Capital claims a purported security interest in the assets of Omni 808.

~~110.~~114.      MGA and Larian, and their co-conspirators, have, on information and belief, used these entities to transfer their ill-gotten funds from the United States and/or to move laundered funds back into the United States, including without limitation in an attempt to obtain purported priority as an alleged secured creditor over Mattel's claims and to deprive Mattel of assets to which it has a legitimate claim.

1    ~~111.~~115.    On information and belief, Lexington, Vision Capital and

2    Omni 808 are alter-egos of each other, the companies being mere shells created and

3    operated pursuant to a fraudulent scheme as alleged herein, and with their financial

4    affairs being significantly intermingled and interconnected.

5    ~~112.~~116.    On information and belief, Larian, either alone or with

6    other co-conspirators, formed or caused to be formed the alter-ego entity IGWT

7    Group on June 26, 2008—during the Phase 1 trial—and registered its place of

8    business as Larian's home address.  On information and belief, Larian, either alone

9    or with other co-conspirators, also formed or caused to be formed an affiliate alter-

10   ego entity called IGWT 826 Investments on August 27, 2008—the day after the

11   Phase 1 trial ended.  IGWT 826 Investments is registered at the home address of

12   Shirin Makabi and Jahangir Eli Makabi.  Shirin Makabi is Isaac Larian's sister,

13   Jahangir Eli Makabi is Isaac Larian's brother-in-law, and both are shareholders or

14   beneficial shareholders of MGA through various trusts.

15       **B.       The Purported Acquisition of the Wachovia Debt**

16   ~~113.~~117.    After the Phase 1A verdict, MGA and Larian represented

17   on multiple occasions to both this Court and the Ninth Circuit that MGA was in dire

18   financial straits and might file imminently for bankruptcy.  MGA and Larian

19   represented to the Court that MGA had not obtained and could not obtain funding (a

20   representation that MGA later was forced to retract as false).  At the same time

21   MGA's largest lender, Wachovia, accelerated over $313 million dollars worth of

22   debt that MGA owed it and triggered the lock-box provision of its loan agreements

23   with MGA, which required the transfer to Wachovia of all, or substantially all, of

24   the revenue that MGA received.

25   ~~114.~~118.    On information and belief, Larian and MGA, and their co-

26   conspirators, in order to maintain control over MGA's revenue and to frustrate the

27   jury's verdicts in Mattel's favor, determined to purchase the Wachovia note through

28   various entities affiliated with Larian or with MGA.  On information and belief,

EXHIBIT  58

PAGE  1279

-65-

~~THIRD~~FOURTH AMENDED ANSWER AND COUNTERCLAIMS

1   Larian intended to use Lexington, Vision Capital, Omni 808, the IGWT entities and
2   other vehicles currently unknown to Mattel (because of the efforts by MGA, Larian,
3   Omni 808 and their co-conspirators to conceal them) to distance himself from the
4   transaction and thereby conceal the true source of the funds used to purportedly
5   purchase the Wachovia note and to conceal that Larian in fact participated in or
6   controlled the acquisition of the debt, directly or indirectly.  On information and
7   belief, at Larian's urging and acting in concert with Larian, Omni 808 purportedly
8   acquired the bulk of that debt at a massive discount.

9   ~~115.~~119.    Omni 808 has represented to the Court that its claimed
10   acquisition of the Wachovia note was an arms-length business deal.  Omni 808 has
11   also represented to the Court that the funds used for the purported acquisition did
12   not originate from MGA or Larian.  Wachovia and others, however, recently
13   produced documents that undermine these claims and representations.  For example,
14   a July 29, 2008 offer letter to Wachovia states that Larian would have a non-voting
15   limited interest in the loan acquisition.  As another example, a Senior Promissory
16   Note between MGA and Wachovia, dated September 3, 2008, specifically identifies
17   Omni 808 as an affiliate of MGA.

18   ~~116.~~120.    Moreover, Vision Capital, which claims it holds a
19   purported security interest in Omni 808, is also affiliated with MGA.  Vision Capital
20   has listed its address as 1525 South Broadway, Los Angeles, California.  Mattel has
21   not been able to identify an active business named Vision Capital located there.
22   Mattel did identify this as the location of Neman Brothers & Associates, a business
23   owned by Leon Neman, Larian's brother-in-law who has served as an MGA
24   director.  After Mattel uncovered these facts, Mr. Neman claimed to be an alleged
25   principal of Vision Capital.

26   ~~117.~~121.    On information and belief, the funds Omni 808 used to
27   purportedly purchase the Wachovia note were, in whole or in part, generated by
28   Larian's and MGA's wrongful conduct directed towards Mattel.  On information

1  and belief, Larian has used, at least in part, IGWT Group, IGWT 826 Investments,

2  Lexington, Vision Capital and other shell and alter-ego companies as conduits to

3  transfer funds to Omni 808 and others and to conceal the source of such funds.

4      ~~118.~~122.    MGA and Larian have now also admitted that Omni 808

5  provided additional funds to MGA beyond the Wachovia debt purchase, though

6  MGA first denied that was the case.  MGA and Omni 808 entered into a Secured

7  Delayed Draw Demand Note on October 16, 2008.  Pursuant to the terms of that

8  Note, Omni 808 would make available up to $40 million of additional purported

9  credit to MGA.  Pursuant to a written request submitted by MGA on October 17,

10  2008, Omni 808 loaned MGA an additional $6 million under that Note.  On

11  information and belief, those funds also were, in whole or in part, generated by

12  Larian's and MGA's wrongful conduct towards Mattel and transferred through

13  Larian-controlled conduits to conceal the true source of the funds.  In fact, the

14  Secured Delayed Draw Demand Note between MGA and Omni 808 states that

15  Omni 808's funding came, at least in part, from IGWT 826 Investments.

16      ~~119.~~123.    On information and belief, Omni 808's claimed

17  acquisition of the Wachovia note was not an "arms-length" transaction by an

18  independent investor or investors.  Instead it was, on information and belief, an

19  insider transaction facilitated by Larian and MGA through the use of nominally

20  independent but affiliated entities, for wrongful purposes that include without

21  limitation maintaining substantial control over MGA's revenues in the near term,

22  continuing with their wrongful activities despite the jury's verdict against them and

23  establishing purported priority as a secured creditor over Mattel's claims in any

24  eventual bankruptcy.  On information and belief, Larian participated and was

25  involved in the purported acquisition of MGA's debt, though the claimed acquisition

26  was structured to conceal it from Mattel.

27      ~~120.~~124.    While the precise mechanisms by which Larian transferred

28  funds and manipulated MGA's and Larian's finances through these conduits is not

1  yet known to Mattel because such information is in the exclusive possession and

2  control of MGA, Larian and their co-conspirators, and they have refused to disclose

3  or misrepresented even basic information such as the alleged owners of the entities,

4  on information and belief Larian and his affiliates have created shell entities for the

5  purpose of obscuring and concealing the true ownership of assets held and origin of

6  funds transferred, while Larian and his family members and affiliates further have

7  made massive distributions and other payments totaling hundreds of millions of

8  dollars from MGA to themselves and engaged in a series of related-party

9  transactions as part of a scheme to convert at least tens of millions of dollars in

10  MGA equity into debt.

11          ~~121.~~125.    For example, according to an MGA Lender Update dated

12  November 1, 2007, in approximately August 2007, MGA made purported loans in

13  the amount of 2.5 million euros for investments in another toy company, called

14  Zapf, purportedly on behalf of Larian and his family.  Another 12 million euros

15  were due in November 2007, for which MGA was liable if Larian did not contribute.

16  As shown in a Master Assignment and Exchange Agreement between Omni 808,

17  MGA, and MGA de Mexico and Wachovia and dated September 3, 2008, soon after

18  the Phase 1A verdict and during the Phase 1B trial Larian and his family members

19  (including, without limitation, Jahangir Eli Makabi and Shirin Larian Makabi as Co-

20  Trustees of the Makabi Living Trust, Isaac Larian and Angela Larian as Trustees of

21  the Larian Living Trust, the Angela Larian Qualified Annuity Trust, the Isaac E.

22  Larian Qualified Annuity Trust, the Jahangir Eli Makabi Qualified Annuity Trust,

23  Jahangir Eli Makabi, and the Shirin Larian Makabi Qualified Annuity Trust)

24  executed a series of twenty-two separate transactions (on August 4, 5, 8, 19, 25,

25  2008) which purported to transfer as loans by shareholders over $13.3 million from

26  U.S. based trust accounts to MGA Entertainment (HK) Limited.  Another series of

27  twenty-two transfers (also on August 4, 5, 8, 19, 25, 2008) show that Larian and

28

EXHIBIT 58
PAGE 1282

-68-

~~THIRD~~FOURTH AMENDED ANSWER AND COUNTERCLAIMS

1   these same family members, MGA shareholders, have also purported to loan nearly

2   $6 million in funds to MGA.

3       **C.**    **Larian Loots MGA's Assets by Selling MGA Inventory to Himself**

4              **at Fire Sale Prices**

5       122.126.   On information and belief, Larian and MGA have

6   transferred and are continuing to transfer assets from MGA by coordinating the sale

7   of significant MGA inventory, at substantial discounts, to companies affiliated with

8   Larian.  These transactions have had the effect of denuding MGA of its most

9   valuable inventory, sold to Larian's own companies for pennies on the dollar, while

10   permitting Larian to substantially benefit by reselling MGA's inventory, and while

11   further infringing Mattel's intellectual property.

12       123.127.   On information and belief, Larian, through the Larian-

13   controlled IGWT entities, is purchasing Bratz products that infringe Mattel's rights

14   and other MGA products for steep discounts and reselling, distributing and offering

15   for sale such products.  MGA has admitted that it sold tens of millions of dollars in

16   Bratz inventory to IGWT entities at a "substantial discount."  Documents show that

17   the discount on this self-dealing transaction was in fact massive.

18       124.128.   In May of 2008, when MGA was undergoing cash-flow

19   problems for reasons that included Larian's on-going de facto liquidation of MGA

20   assets, Larian arranged to have MGA purportedly sell vast amounts of MGA

21   inventory, including infringing Bratz products, to himself through the IGWT Group.

22   As shown by an Inventory Purchase Agreement between MGA and IGWT Group,

23   dated July 7, 2008, MGA purportedly agreed to sell hundreds of thousands of

24   inventory items to Larian's IGWT Group.  This agreement was signed by Larian on

25   behalf of both MGA and IGWT Group.  Through this transaction, MGA sold

26   inventory with a retail value of more than $65 million for just $5.3 million.

27       125.129.   MGA and Larian have claimed that the arrangement was

28   to MGA's benefit because the deal involved obsolete and overstock inventory.

EXHIBIT 58

PAGE 12-83

THIRDFOURTH AMENDED ANSWER AND COUNTERCLAIMS

1 However, as the Bill of Sale accompanying the agreement (which shows the SKUs
2 of the products IGWT Group purchased) shows, inventory MGA sold to IGWT
3 Group included current inventory, including current Bratz products.

4       126.130.    The full extent of this and other transactions by which
5 Larian has arranged the substantially discounted sale of MGA assets to IGWT
6 Group or other Larian-controlled entities or affiliates is not yet known to Mattel
7 because such information is in the exclusive possession and control of MGA,
8 Larian, the IGWT entities and their co-conspirators, and they have refused to
9 disclose information to Mattel.  On information and belief, by arranging this type of
10 transaction with IGWT Group and other similar insider transactions yet unknown to
11 Mattel, Larian has siphoned significant MGA assets for his own personal benefit.
12 On information and belief, the purported transaction with IGWT Group is only the
13 most recent in a series of insider arrangement facilitated by Larian, which, by May
14 16, 2008, led Wachovia to conclude that Larian had engaged in a de-facto
15 liquidation of MGA's assets over the course of 2008 and other times.

16 **CLAIMS FOR RELIEF**

17 **First Counterclaim**

18 **Copyright Infringement**

19 **(Against MGA, MGA Entertainment (HK) Limited,**

20 **Larian, Bryant, IGWT Group, IGWT 826 Investments and Does 48 through 10)**

22       127.131.    Mattel repeats and realleges each and every allegation set
23 forth in paragraphs 1 through 126, above, as though fully set forth at length.

24       128.132.    Mattel is the owner of copyrights in works that are fixed in
25 tangible media of expression and that are the subject of valid, and subsisting,
26 copyright registrations owned by Mattel.  These include, without limitation, the
27 works that are the subject of Registrations VA 1-378-648, VA 1-378-649, VA 1-
28 378-650, VA 1-378-651, VA 1-378-652, VA 1-378-653, VA 1-378-654, VA 1-378-

655, VA 1-378-656, VA 1-378-657, VA 1-378-658, VA 1-378-659, VA 1-378-660, VAu 715-270, VAu 715-271 and VAu 715-273.  These also include, without limitation, the works that are the subject of Registrations VAu 960-439, VAu 964-304, VAu 964-306, VAu 964-308, VAu 964-309, VAu 964-310, VAu 964-311, VAu 964-315, VAu 964-318, VAu 964-319, VAu 964-320 and VAu 964-321.

129.133.    Counter-defendants have reproduced, created derivative works from and otherwise infringed upon the exclusive rights of Mattel in its protected works without Mattel's authorization.  Counter-defendants' acts violate Mattel's exclusive rights under the Copyright Act, including without limitation Mattel's exclusive rights to reproduce its copyrighted works and to create derivative works from its copyrighted works, as set forth in 17 U.S.C. §§ 106 and 501.

130.134.    Counter-defendants' infringement (and substantial contributions to the infringement) of Mattel's copyrighted works is and has been knowingly made without Mattel's consent and for commercial purposes and the direct financial benefit of Counter-defendants.  Counter-defendants, moreover, have deliberately failed to exercise their right and ability to supervise the infringing activities of others within their control to refrain from infringing Mattel's copyrighted works and have failed to do so in order to deliberately further their significant financial interest in the infringement of Mattel's copyrighted works. Accordingly, Counter-defendants have engaged in direct, contributory and vicarious infringement of Mattel's copyrighted works.

131.135.    By virtue of Counter-defendants' infringing acts, Mattel is entitled to recover Mattel's actual damages plus Counter-defendants' profits, Mattel's costs of suit and attorneys' fees, and all other relief permitted under the Copyright Act.

132.136.    Counter-defendants' actions described above have caused and will continue to cause irreparable damage to Mattel, for which Mattel has no remedy at law.  Unless Counter-defendants are restrained by this Court from

EXHIBIT ___56___

PAGE ___1280___

-71-

THIRDFOURTH AMENDED ANSWER AND COUNTERCLAIMS

1   continuing their infringement of Mattel's copyrights, these injuries will continue to

2   occur in the future.  Mattel is accordingly entitled to injunctive relief restraining

3   Counter-defendants from further infringement.

4   **<u>Second Counterclaim</u>**

5   **Violation of the Racketeer Influenced and Corrupt Organizations Act**

6   **18 U.S.C. §§ 1962(c) and 1964(c)**

7   **(Against All Counter-defendants)**

8           ~~133.~~137.    Mattel repeats and realleges each and every allegation set

9   forth in paragraphs 1 through ~~132~~136, above, as though fully set forth at length.

10          ~~134.~~138.    Beginning at various times from approximately 1999

11  through the filing of this ~~Third~~Fourth Amended Answer and Counterclaims, in the

12  Central District of California and elsewhere, Counter-defendants MGA, MGA

13  Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado, Does 4<u>8</u>

14  through 10, and Brawer, Trueba, Vargas, Castilla and Brisbois were employed by

15  and associated-in-fact with an enterprise engaging in, and the activities of which

16  affect, interstate and foreign commerce (the "MGA Criminal Enterprise").  The

17  MGA Criminal Enterprise is made up of the MGA Group (MGA, MGA

18  Entertainment (HK) Limited, MGA de Mexico, Larian, certain of the Doe Counter-

19  defendants and Brawer), the Bryant Group (Bryant and certain of the Doe Counter-

20  defendants), the Mexican Group (Machado, Trueba and Vargas) and the Canadian

21  Group (Brisbois).

22          ~~135.~~139.    In addition, beginning at various times from

23  approximately 1999 through the filing of this ~~Third~~Fourth Amended Answer and

24  Counterclaims, in the Central District of California and elsewhere, Counter-

25  defendants MGA, MGA Entertainment (HK) Limited, Larian and Bryant, and

26  certain of the Doe Counter-defendants, were employed by and associated-in-fact

27  with a second enterprise engaging in, and the activities of which affect, interstate

28  and foreign commerce (the "Bratz Criminal Enterprise").

00505.07209/2875224.10/
975/3029070.5

EXHIBIT ___

PAGE _____

-72-

~~THIRD~~FOURTH AMENDED ANSWER AND COUNTERCLAIMS

1    ~~136.~~140.    Further, beginning at least as early 2007, and through the

2    filing of this ~~Third~~Fourth Amended Answer and Counterclaims, in the Central

3    District of California and elsewhere, Counter-defendants MGA, MGA

4    Entertainment (HK) Limited ~~and~~, Larian, ~~as well as~~Kadisha, IGWT Group, IGWT

5    826 Investments, and Omni 808, as well as Lexington, ~~Omni 808,~~Vision Capital,

6    Leon Neman, Fred Mashian, ~~Neil Kadisha~~Leon Farahnik, Jahangir Eli Makabi,

7    Shirin Larian Makabi, Angela Larian, The Makabi Living Trust, The Larian Living

8    Trust, The Angela Larian Qualified Annuity Trust, The Isaac E. Larian Qualified

9    Annuity Trust, The Jahangir Eli Makabi Qualified Annuity Trust, The Shirin Larian

10   Makabi Qualified Annuity Trust, Benjamin Nazarian, Joseph Moinian, David

11   Nazarian, Arsalan Gozini, Moinian Development Group, LLC, Omni TMG, LLC,

12   Gold Leaf Investments, LP, the David and Angela Nazarian Family Trust and the

13   Arsalan Gozini Charitable Lead Annuity Trust and certain of the Doe Counter-

14   defendants, and others acting in concert with or on behalf of the foregoing, were

15   employed by and associated-in-fact with another enterprise engaging in, and the

16   activities of which affect, interstate and foreign commerce (the "IGWT Criminal

17   Enterprise").

18         141.   Beginning at various times from approximately 1999 through the

19   filing of this Fourth Amended Answer and Counterclaims, in the Central District of

20   California and elsewhere, all of the foregoing, including without limitation Counter-

21   defendants MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian,

22   Bryant, Machado, Kadisha, Omni 808, IGWT Group, and IGWT 826 Investments,

23   as well as Brawer, Trueba, Vargas, Castilla, Brisbois, Lexington, Vision Capital,

24   Leon Neman, Fred Mashian, Leon Farahnik, Jahangir Eli Makabi, Shirin Larian

25   Makabi, Angela Larian, The Makabi Living Trust, The Larian Living Trust, The

26   Angela Larian Qualified Annuity Trust, The Isaac E. Larian Qualified Annuity

27   Trust, The Jahangir Eli Makabi Qualified Annuity Trust, The Shirin Larian Makabi

28   Qualified Annuity Trust, Benjamin Nazarian, Joseph Moinian, David Nazarian,

EXHIBIT 58

PAGE 87

1 Arsalan Gozini, Moinian Development Group, LLC, Omni TMG LLC, Gold Leaf

2 Investments, LP, the David and Angela Nazarian Family Trust and the Arsalan

3 Gozini Charitable Lead Annuity Trust and certain of the Doe Counter-defendants,

4 and others acting in concert with or on behalf of the foregoing, were employed by

5 and associated-in-fact with another enterprise engaging in, and the activities of

6 which affect, interstate and foreign commerce (the "Larian Criminal Enterprise").

7          137.142.     MGA, MGA Entertainment (HK) Limited, MGA de

8 Mexico, Larian, Bryant, Machado, Does 4 8 through 10, and Brawer, Trueba,

9 Vargas, Brisbois, Castilla and the Other Former Employees, and each of them, for

10 the purpose of executing and attempting to execute the scheme to improperly

11 defraud Mattel and steal its trade secret or otherwise confidential and proprietary

12 information and infringe and destroy the value of Mattel's rights and property, and

13 conceal such misconduct, by means of tortious, fraudulent and criminal conduct, did

14 and do unlawfully, willfully and knowingly conduct and participate, directly and

15 indirectly, in the conduct of the MGA Criminal Enterprise's affairs and, in the case

16 of MGA, MGA Entertainment (HK) Limited, Larian, Bryant, and certain of the Doe

17 Counter-defendants, the Bratz Criminal Enterprise's affairs, through a pattern of

18 racketeering activity.  Their actions include multiple, related acts in violation of:  18

19 U.S.C. § 1341 (mail fraud), 18 U.S.C. § 1343 (wire fraud), 18 U.S.C. § 1503

20 (influencing or injuring officer or juror generally), 18 U.S.C. § 1512 (tampering

21 with a witness victim, or informant), 18 U.S.C. § 1952 (interstate and foreign travel

22 to aid racketeering), and 18 U.S.C. § 2319(a) and 17 U.S.C. § 506(a)(1)(A)

23 (criminal copyright infringement).

24          138.143.     In addition, MGA, MGA Entertainment (HK) Limited,

25 Larian, Kadisha, IGWT Group, IGWT 826 Investments, and Omni 808, as well as

26 Lexington, Omni 808, Vision Capital, Leon Neman, Fred Mashian, Neil

27 KadishaLeon Farahnik, Jahangir Eli Makabi, Shirin Larian Makabi, Angela Larian,

28 The Makabi Living Trust, The Larian Living Trust, The Angela Larian Qualified

1    Annuity Trust, The Isaac E. Larian Qualified Annuity Trust, The Jahangir Eli

2    Makabi Qualified Annuity Trust, The Shirin Larian Makabi Qualified Annuity Trust

3    ~~and Does 4 through 10~~, Benjamin Nazarian, Joseph Moinian, David Nazarian,

4    Arsalan Gozini, Moinian Development Group, LLC, Omni TMG LLC, Gold Leaf

5    Investments, LP, the David and Angela Nazarian Family Trust and the Arsalan

6    Gozini Charitable Lead Annuity Trust and certain of the Doe Counter-defendants,

7    and each of them, for the purpose of executing and attempting to execute the scheme

8    to infringe Mattel's rights and transfer, transport or launder the ill-gotten gains from

9    their infringements and the MGA and Bratz Criminal Enterprises' thefts and

10   infringements, and secret MGA assets and purportedly obtain priority over Mattel,

11   by means of tortious, fraudulent, and criminal conduct, did and do unlawfully,

12   willfully, and knowingly conduct and participate, directly and indirectly, in the

13   conduct of the IGWT Criminal Enterprise's affairs through a pattern of racketeering

14   activity.  Their actions include multiple, related acts in violation of:  18 U.S.C.

15   § 1341 (mail fraud), 18 U.S.C. § 1343 (wire fraud), 18 U.S.C. § 1952 (interstate and

16   foreign travel to aid racketeering), 18 U.S.C. § 152(7) (concealment of assets), 18

17   U.S.C. § 1956 (money laundering) and 18 U.S.C. § 1957 (use of unlawful funds)

18   and 18 U.S.C. § 2319(a) and 17 U.S.C. § 506(a)(1)(A) (criminal copyright

19   infringement).

20           ~~139.~~144.    All of the foregoing, including without limitation MGA,

21   MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado,

22   ~~Does 4 through 10,~~Kadisha, Omni 808, IGWT Group, IGWT 826 Investments,

23   Brawer, Trueba, Vargas, Castilla, Brisbois, Lexington, Vision Capital, Leon Neman,

24   Fred Mashian, Leon Farahnik, Jahangir Eli Makabi, Shirin Larian Makabi, Angela

25   Larian, The Makabi Living Trust, The Larian Living Trust, The Angela Larian

26   Qualified Annuity Trust, The Isaac E. Larian Qualified Annuity Trust, The Jahangir

27   Eli Makabi Qualified Annuity Trust, The Shirin Larian Makabi Qualified Annuity

28   Trust, Benjamin Nazarian, Joseph Moinian, David Nazarian, Arsalan Gozini,

1  Moinian Development Group, LLC, Omni TMG LLC, Gold Leaf Investments, LP,
2  the David and ~~the other members of the MGA Criminal Enterprise, Bratz Criminal~~
3  ~~Enterprise~~Angela Nazarian Family Trust and ~~IGWT Criminal Enterprise~~the Arsalan
4  Gozini Charitable Lead Annuity Trust and certain of the Doe Counter-defendants,
5  and each of them, ~~shared~~for the ~~common~~ purpose of enabling MGA to defraud
6  Mattel and infringe ~~its rights~~and destroy the value of its property, and obtain
7  confidential, proprietary and otherwise valuable Mattel property through improper
8  means, and conceal and transfer, transport or launder the ill-gotten gains from such
9  misconduct, and secret MGA assets and purportedly obtain priority over Mattel, in
10 order to assist MGA in illegally competing with Mattel domestically and throughout
11 the world~~.~~, did and do unlawfully, willfully and knowingly conduct and participate,
12 directly and indirectly, in the conduct of the Larian Criminal Enterprise's affairs
13 through a pattern of racketeering activity.  Their actions include multiple, related
14 acts in violation of:  18 U.S.C. § 1341 (mail fraud), 18 U.S.C. § 1343 (wire fraud),
15 18 U.S.C. § 1503 (influencing or injuring officer or juror generally), 18 U.S.C.
16 § 1512 (tampering with a witness victim, or informant), 18 U.S.C. § 1952 (interstate
17 and foreign travel to aid racketeering), 18 U.S.C. § 2319(a) and 17 U.S.C. §
18 506(a)(1)(A) (criminal copyright infringement), 18 U.S.C. § 152(7) (concealment of
19 assets), 18 U.S.C. § 1956 (money laundering), 18 U.S.C. § 1957 (use of unlawful
20 funds) and 18 U.S.C. § 2319(a).

21      145.   MGA, MGA Entertainment (HK) Limited, MGA de Mexico,
22 Larian, Bryant, Machado, Kadisha, Omni 808, IGWT Group, IGWT 826
23 Investments, certain of the Doe Counter-defendants, and the other members of the
24 MGA Criminal Enterprise, Bratz Criminal Enterprise, IGWT Criminal Enterprise
25 and Larian Criminal Enterprise, and each of them, shared the common purpose of
26 enabling MGA to defraud Mattel and infringe its rights and destroy the value of its
27 property, and obtain confidential, proprietary and otherwise valuable Mattel
28 property through improper means, and conceal and transfer, transport or launder the

EXHIBIT __58__

PAGE __1290__

-76-

~~THIRD~~FOURTH AMENDED ANSWER AND COUNTERCLAIMS

1   ill-gotten gains from such misconduct, and secret MGA assets and purportedly

2   obtain priority over Mattel, in order to assist MGA in illegally competing with

3   Mattel domestically and throughout the world.

4          140.146.     The MGA Criminal Enterprise, Bratz Criminal Enterprise,

5   IGWT Criminal Enterprise and IGWTLarian Criminal Enterprise as described

6   herein are and have been at all relevant times continuing enterprises.  The conduct

7   of each enterprise continues through the date of this ThirdFourth Amended Answer

8   and Counterclaims and is ongoing, including by virtue of MGA's continuing use and

9   infringement ofand failure to preserve and protect Mattel's information, property and

10  rights, and its use of ill-gotten gains from such thefts, all to the detriment of Mattel.

11  Said enterprises furthermore threaten to continue such conduct into the future, to the

12  detriment of Mattel.

13         141.147.     The pattern of racketeering activity, as defined by 18

14  U.S.C. §§ 1961(1) and (5), presents both a history of criminal conduct and a distinct

15  threat of continuing criminal activity.  This activity consists of multiple acts of

16  racketeering by each member of the MGA Criminal Enterprise, Bratz Criminal

17  Enterprise, IGWT Criminal Enterprise and IGWTLarian Criminal Enterprise, is

18  interrelated, not isolated and is perpetrated for the same or similar purposes by the

19  same persons.  This activity extends over a substantial period of time, up to and

20  beyond the date of this ThirdFourth Amended Answer and Counterclaims.  These

21  activities occurred after the effective date of 18 U.S.C. §§ 1961 *et seq.,* and the last

22  such act occurred within 10 years after the commission of a prior act of racketeering

23  activity.  These racketeering activities included repeated acts of:

24         (a)   Mail Fraud:  Counter-defendants MGA, MGA Entertainment

25              (HK) Limited, MGA de Mexico, Larian, Bryant, Machado,

26              Kadisha, Omni 808, IGWT Group, IGWT 826 Investments, and

27              Does 4 through 10certain of the Doe Counter-defendants , as well

28              as some or all other members of the MGA, Bratz, IGWT and

00505.07209/2875224.10
975/3029070.5

EXHIBIT 5 X

PAGE 12 9 1

-77-

THIRDFOURTH AMENDED ANSWER AND COUNTERCLAIMS

1   ~~IGWT~~Larian Criminal Enterprises, aided and abetted by each

2   other, having devised a scheme or artifice to defraud Mattel of its

3   confidential trade secret information and property by conversion,

4   false representations, concealment and breaches of fiduciary duty,

5   and transfer, transport or launder the ill-gotten gains from such

6   thefts, and secret MGA assets and purportedly obtain priority

7   over Mattel, did for the purpose of furthering and executing such

8   a scheme or artifice to defraud, deposited or caused to be

9   deposited matters or things to be sent or delivered by the Postal

10   Service, or any private or commercial interstate carrier, or took or

11   received matters or things therefrom, or knowingly caused

12   matters or things to be delivered by mail or such carrier according

13   to the direction thereon, or at the place at which it is directed to

14   be delivered by the person to whom it is addressed, in violation of

15   18 U.S.C. § 1341 and 18 U.S.C. § 2, as alleged with greater

16   particularity in the foregoing paragraphs and as evidenced by,

17   among other acts of mail fraud, the true and correct copies of

18   communications and other evidence included in Exhibit C, D, E,

19   and ~~E;~~F;

20   (b)   <u>Wire Fraud</u>:  Counter-defendants MGA, MGA Entertainment

21   (HK) Limited, MGA de Mexico, Larian, Bryant, Machado,

22   Kadisha, Omni 808, IGWT Group, IGWT 826 Investments, and

23   ~~Does 4 through 10~~certain of the Doe Counter-defendants, as well

24   some or all other members of the MGA, Bratz, IGWT and

25   ~~IGWT~~Larian Criminal Enterprises, aided and abetted by each

26   other, having devised a scheme or artifice to defraud Mattel of its

27   confidential and trade secret information and property by

28   conversion, false representations, concealment and breaches of

EXHIBIT 58
PAGE 1292

THIRDFOURTH AMENDED ANSWER AND COUNTERCLAIMS

fiduciary duty, and transfer, transport or launder the ill-gotten gains from such thefts, and secret MGA assets and purportedly obtain priority over Mattel, did for the purpose of furthering and executing such a scheme or artifice to defraud, transmit and cause to be transmitted by means of wire communications in interstate or foreign commerce, writing, signs, signals, pictures or sound, in violation of 18 U.S.C. § 1343 and 18 U.S.C. § 2, as alleged with greater particularity in the foregoing paragraphs and as evidenced by, among other acts of wire fraud, the true and correct copies of communications and other evidence included in Exhibit C, D, E and E, F;

(c)   <u>Tampering With a Witness, Victim or Informant</u>:  Counter-defendants MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado, and <s>Does 4 through 10, aided and abetted by each other and</s><u>certain of the Doe Counter-defendants, as well as</u> some or all of the remaining members of the MGA<u>, Bratz, IGWT and Larian</u> Criminal <s>Enterprise</s><u>Enterprises, aided and abetted by each other</u>, did corruptly alter, destroy, mutilate, or conceal more than one record, document, or other object, or attempted to do so, with the intent to impair the object's integrity or availability for use in an official proceeding, including this action, including without limitation by:

      i.      altering Bryant's contract with MGA relating to Bratz to conceal evidence that Bryant faxed the contract from the BARBIE COLLECTIBLES department of Mattel, using a fax machine owned by Mattel and while Bryant was employed by Mattel;

EXHIBIT 58

PAGE 1293

-79-

00505.07209/2875224.107
975/3029070.5

<s>THIRD</s>FOURTH AMENDED ANSWER AND COUNTERCLAIMS

1          ii.     altering numerous original Bratz drawings created

2  by Bryant by adding false and misleading date notations of

3  "8/1998" and "© 8/1998" to the drawings even though the

4  drawings were not created in August 1998; and

5          iii.    destroying electronic and other evidence, including

6  by destroying evidence previously contained on Carter Bryant's

7  and Isaac Larian's computer hard drives, and destroying or

8  causing to be destroyed evidence in possession of Farhad Larian;

9          iv.    altering tax records and other business documents,

10  including by use of false names and false social security numbers,

11  to conceal the bribery of Mattel employees;

12          Such actions are in violation of 18 U.S.C. § 1512 and 18

13  U.S.C. § 2, as alleged with greater particularity in the foregoing

14  paragraphs;

15      (d)    <u>Influencing or Injuring Officer or Juror Generally</u>:  Counter-

16  defendants MGA, MGA Entertainment (HK) Limited, MGA de

17  Mexico, Larian, Bryant, Machado and ~~Does 4 through 10~~<u>certain</u>

18  <u>of the Doe Counter-defendants</u>, as well as some or all of the

19  remaining members of the MGA<u>, Bratz, IGWT and Larian</u>

20  Criminal ~~Enterprise~~<u>Enterprises</u>, aided and abetted by each other,

21  did seek to corruptly impede, obstruct or influence the due

22  administration of justice, including without limitation by:

23          i.     Larian's and MGA's submission of false

24  information in sworn applications to the U.S. Copyright Office

25  and the U.S. Patent Office;

26          ii.    Larian repeatedly giving false testimony during the

27  Phase 1 trial that Bryant told him (and that Larian believed) that

28  Bryant had not created Bratz while employed by Mattel;

EXHIBIT 5S
PAGE 1294

iii.    Larian's and MGA's submission of false statements regarding MGA's ability to receive outside funding and numerous false statements regarding its financial condition in this action;

    Such actions are in violation of 18 U.S.C. § 1503 and 18 U.S.C. § 2, as alleged with greater particularity in the foregoing paragraphs;

(e)   <u>Interstate and Foreign Travel in Aid of Racketeering Enterprises</u>: Counter-defendants MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado and ~~Does 4 through 10~~<u>certain of the Doe Counter-defendants</u>, as well as some or all of the remaining members of the MGA<u>, Bratz, IGWT and Larian</u> Criminal ~~Enterprise and IGWT Criminal Enterprise~~<u>Enterprises</u>, aided and abetted by each other, traveled in interstate and foreign commerce, or used the mail or any facility in interstate or foreign commerce, with the intent to promote, manage, establish, carry on and facilitate the promotion, management, establishment and carrying on of unlawful activity, *i.e.* bribery, in violation of the laws of the State of California, *Cal. Penal Code* § 641.3, all in violation of 18 U.S.C. § 1952 and 18 U.S.C. § 2, as alleged with greater particularity in the foregoing and following paragraphs; money laundering in violation of 18 U.S.C. § 1956(a), as alleged with greater particularity in the foregoing and following paragraphs; and engaging in monetary transactions involving property derived from unlawful activities in violation of 18 U.S.C. § 1957(a), as alleged with greater particularity in the foregoing and following paragraphs;


EXHIBIT 58
PAGE 1296

-81-

~~THIRD~~FOURTH AMENDED ANSWER AND COUNTERCLAIMS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

(f)  <u>Money Laundering</u>:  Counter-defendants MGA, MGA Entertainment (HK) Limited ~~and~~, Larian ~~and Does 4 through 10,~~ <u>Kadisha, Omni 808, IGWT Group, IGWT 826 Investments and certain of the Doe Counter-defendants</u>, as well as some or all of the remaining members of the MGA<u>, Bratz, IGWT</u> and ~~IGWT~~<u>Larian</u> Criminal Enterprises, aided and abetted by each other, willfully engaged in financial transactions which were intended to conceal or disguise the nature, the location, the source, the ownership, or the control of the ill-gotten proceeds of their criminal activities or were intended to further promote the carrying on of their criminal activities, all in violation of 18 U.S.C. § 1956(a), as alleged with greater particularity in the foregoing paragraphs;

(g)  <u>Engaging in Monetary Transactions in Property Derived from Unlawful Activity</u>:  Counter-defendants MGA, MGA Entertainment (HK) Limited, Larian, and Does 4<u>8</u> through 10, as well as some or all of the remaining members of the MGA and IGWT Criminal Enterprises, aided and abetted by each other, willfully engaged in monetary transactions in criminally derived property of a value greater than $10,000 derived from their unlawful criminal activities, all in violation of 18 U.S.C. § 1957(a), as alleged with greater particularity in the foregoing paragraphs;

(h)  <u>Concealment of Assets</u>:  Counter-defendants MGA, MGA Entertainment (HK) Limited, Larian, <u>Kadisha, Omni 808, IGWT Group, IGWT 826 Investments</u> and ~~Does 4 through 10~~<u>certain of the Doe Counter-defendants</u>, as well as some or all of the remaining members of the MGA<u>, Bratz, IGWT</u> and ~~IGWT~~<u>Larian</u>

EXHIBIT _____
PAGE 1294

00505.07209/2875224.10/
975/3029070.5

-82-

~~THIRD~~<u>FOURTH</u> AMENDED ANSWER AND COUNTERCLAIMS

Criminal Enterprises, aided and abetted by each other, willfully sought to transfer or conceal property, and/or concealed, destroyed, mutilated, falsified or made false entries in recorded information relating to such property, in contemplation of a bankruptcy proceeding, all in violation of 18 U.S.C. § 152(7) & (8), as alleged with greater particularity in the foregoing paragraphs;

(i)   Criminal Copyright Infringement: Counter-defendants MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado, IGWT 826 Investments, IGWT Group and Does 4 through 10certain of the Doe Counter-defendants, as well as some or all otherof the remaining members of the MGA, Bratz, IGWT and IGWTLarian Criminal Enterprises, aided and abetted by each other, willfully infringed and continue to willfully infringe Mattel's copyrights, including without limitation with respect to documents containing Mattel trade secret and confidential information and Bratz works created by Bryant and others while Mattel employees, for purposes of commercial advantage and private financial gain, all in violation of 18 U.S.C. § 2319(a) and 17 U.S.C. § 506(a)(1)(A), as alleged with greater particularity in the foregoing paragraphs.

142.148.   The persons alleged herein to have violated 18 U.S.C. § 1962(c) are separate from, though employed by or associated with, MGA, the MGA Group, the Bryant Group, the Mexican Group and the Canadian Group.

143.149.   MGA had a role in the racketeering activity that was distinct from the undertaking of those acting on its behalf. MGA also attempted to benefit, and did benefit, from the activity of its employees and agents alleged herein, and thus was not a passive victim of racketeering activity, but an active perpetrator.

EXHIBIT 58

PAGE 1247

-83-

THIRDFOURTH AMENDED ANSWER AND COUNTERCLAIMS

1    ~~144.~~150.____ Mattel has been injured in its business or property as a

2    direct and proximate result of the Counter-defendants' and the other enterprise

3    members' violations of 18 U.S.C. § 1962(c), including injury by reason of the

4    predicate acts constituting the pattern of racketeering activity.

5        ~~145.~~151.____ As a result of the violations of 18 U.S.C. § 1962(c), by

6    MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant,

7    Machado, ~~Does 4 through 10, Brawer, Trueba, Vargas, Brisbois, Castilla and the~~

8    ~~Other Former Employees, and~~ Kadisha, Omni 808, IGWT Group, IGWT 826

9    Investments, Brawer, Trueba, Vargas, Castilla, Brisbois, Lexington, ~~Omni 808,~~

10   Vision Capital, Leon Neman, Fred Mashian, ~~Neil Kadisha~~Leon Farahnik, Jahangir

11   Eli Makabi, Shirin Larian Makabi, Angela Larian, The Makabi Living Trust, The

12   Larian Living Trust, The Angela Larian Qualified Annuity Trust, The Isaac E.

13   Larian Qualified Annuity Trust, The Jahangir Eli Makabi Qualified Annuity Trust

14   ~~and~~, The Shirin Larian Makabi Qualified Annuity Trust, Benjamin Nazarian,

15   Joseph Moinian, David Nazarian, Arsalan Gozini, Moinian Development Group,

16   LLC, Omni TMG LLC, Gold Leaf Investments, LP, the David and Angela Nazarian

17   Family Trust and the Arsalan Gozini Charitable Lead Annuity Trust and certain of

18   the Doe Counter-defendants, Mattel has suffered substantial damages, in an amount

19   to be proved at trial.  Pursuant to 18 U.S.C. § 1964(c), Mattel is entitled to recover

20   treble its general and special compensatory damages, plus interest, costs and

21   attorneys, fees, incurred by reason of Counter-defendants' violations of 18 U.S.C.

22   § 1962(c).

23

24

25

26

27

28

00505.07209/2875224.10/
975/3029070.5

EXHIBIT 58
PAGE 1298

-84-

~~THIRD~~FOURTH AMENDED ANSWER AND COUNTERCLAIMS

**Third Counterclaim**

**Conspiracy To Violate the Racketeer**

**Influenced And Corrupt Organizations Act**

**(18 U.S.C. §§ 1962(d) and 1964(c))**

**(Against All Counter-defendants)**

146.152.    Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 145151, above, as though fully set forth at length.

147.153.    Beginning at various times from approximately 1999 through the filing of this ThirdFourth Amended Answer and Counterclaims, in the Central District of California and elsewhere, Counter-defendants MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado, Does 48 through 10, and Brawer, Trueba, Vargas, Brisbois, Castilla and the Other Former Employees, willfully, knowingly and unlawfully, did conspire, combine, confederate and agree together to violate 18 U.S.C. § 1962(c).

148.154.    These conspirators were employed by and associated-in-fact with the MGA Criminal Enterprise engaging in, and the activities of which affect, interstate and foreign commerce.  Specifically, the MGA Group, the Bryant Group, the Mexican Group and the Canadian Group, constituting a group of individuals associated-in-fact, did unlawfully, willfully, and knowingly participate in and conduct, directly and indirectly, the MGA Criminal Enterprise's affairs through a pattern of racketeering activity.  In addition, MGA, MGA Entertainment (HK) Limited, Larian and Bryant, and certain of the Doe Counter-defendants, constituting a group of individuals associated-in-fact, did unlawfully, willfully, and knowingly participate in and conduct, directly and indirectly, the Bratz Criminal Enterprise's affairs through a pattern of racketeering activity.

149.155.    Beginning at least as early as 2007 through the filing of this Third Amended Answer and Counterclaims, in the Central District of California and elsewhere, Counter-defendants MGA, MGA Entertainment (HK) Limited,

1   ~~MGA de Mexico,~~ Larian, ~~and Does 4 through 10, and~~ Kadisha, IGWT Group,

2   IGWT 826 Investments, <u>and Omni 808, as well as</u> Lexington, ~~Omni 808,~~ Vision

3   Capital, Leon Neman, Fred Mashian, ~~Neil Kadisha, Angela Larian,~~ <u>Leon Farahnik,</u>

4   Jahangir Eli Makabi, Shirin Larian Makabi, <u>Angela Larian,</u> The Makabi Living

5   Trust, The Larian Living Trust, The Angela Larian Qualified Annuity Trust, The

6   Isaac E. Larian Qualified Annuity Trust, The Jahangir Eli Makabi Qualified Annuity

7   Trust ~~and~~, The Shirin Larian Makabi Qualified Annuity Trust<u>, Benjamin Nazarian,</u>

8   <u>Joseph Moinian, David Nazarian, Arsalan Gozini, Moinian Development Group,</u>

9   <u>LLC, Omni TMG LLC, Gold Leaf Investments, LP, the David and Angela Nazarian</u>

10  <u>Family Trust and the Arsalan Gozini Charitable Lead Trust and certain of the Doe</u>

11  <u>Counter-defendants,</u> willfully, knowingly and unlawfully, did conspire, combine,

12  confederate and agree together to violate 18 U.S.C. §-1962(c).

13          ~~150.~~<u>156.</u>    These conspirators were employed by and associated-in-

14  fact with the IGWT Criminal Enterprise engaging in, and the activities of which

15  affect, interstate and foreign commerce.  Specifically, <u>Counter-defendants</u> MGA,

16  <u>MGA Entertainment (HK) Limited,</u> Larian, ~~and~~ Kadisha, IGWT Group, IGWT 826

17  Investments, <u>and Omni 808, as well as</u> Lexington, ~~Omni 808,~~ Vision Capital, Leon

18  Neman, Fred Mashian, ~~Neil Kadisha~~<u>Leon Farahnik</u>, Jahangir Eli Makabi, Shirin

19  Larian Makabi, Angela Larian, The Makabi Living Trust, The Larian Living Trust,

20  The Angela Larian Qualified Annuity Trust, The Isaac E. Larian Qualified Annuity

21  Trust, The Jahangir Eli Makabi Qualified Annuity Trust, The Shirin Larian Makabi

22  Qualified Annuity Trust<u>, Benjamin Nazarian, Joseph Moinian, David Nazarian,</u>

23  <u>Arsalan Gozini, Moinian Development Group, LLC, Omni TMG LLC, Gold Leaf</u>

24  <u>Investments, LP, the David and Angela Nazarian Family Trust and the Arsalan</u>

25  <u>Gozini Charitable Lead Trust</u> and certain of the Doe Counter-defendants,

26  constituting a group of individuals associated-in-fact, did unlawfully, willfully, and

27  knowingly participate in and conduct, directly and indirectly, the IGWT Criminal

28  Enterprise's affairs through a pattern of racketeering activity.

1    157.   Beginning at various times from approximately 1999 through the
2    filing of this Fourth Amended Answer and Counterclaims, in the Central District of
3    California and elsewhere, all of the foregoing, including without limitation MGA,
4    MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado,
5    Kadisha, Omni 808, IGWT Group, IGWT 826 Investments, Brawer, Trueba,
6    Vargas, Castilla, Brisbois, Lexington, Vision Capital, Leon Neman, Fred Mashian,
7    Leon Farahnik, Jahangir Eli Makabi, Shirin Larian Makabi, Angela Larian, The
8    Makabi Living Trust, The Larian Living Trust, The Angela Larian Qualified
9    Annuity Trust, The Isaac E. Larian Qualified Annuity Trust, The Jahangir Eli
10   Makabi Qualified Annuity Trust, The Shirin Larian Makabi Qualified Annuity
11   Trust, Benjamin Nazarian, Joseph Moinian, David Nazarian, Arsalan Gozini,
12   Moinian Development Group, LLC, Omni TMG, LLC, Gold Leaf Investments, LP,
13   the David and Angela Nazarian Family Trust and the Arsalan Gozini Charitable
14   Lead Annuity Trust and certain of the Doe Counter-defendants, willfully, knowingly
15   and unlawfully, did conspire, combine, confederate and agree together to violate 18
16   U.S.C. § 1962(c).

17          158.   These conspirators were employed by and associated-in-fact with
18   the Larian Criminal Enterprise engaging in, and the activities of which affect,
19   interstate and foreign commerce.  Specifically, MGA, MGA Entertainment (HK)
20   Limited, MGA de Mexico, Larian, Bryant, Machado, Kadisha, Omni 808, IGWT
21   Group, IGWT 826 Investments, Brawer, Trueba, Vargas, Castilla, Brisbois,
22   Lexington, Vision Capital, Leon Neman, Fred Mashian, Leon Farahnik, Jahangir Eli
23   Makabi, Shirin Larian Makabi, Angela Larian, The Makabi Living Trust, The
24   Larian Living Trust, The Angela Larian Qualified Annuity Trust, The Isaac E.
25   Larian Qualified Annuity Trust, The Jahangir Eli Makabi Qualified Annuity Trust,
26   The Shirin Larian Makabi Qualified Annuity Trust, Benjamin Nazarian, Joseph
27   Moinian, David Nazarian, Arsalan Gozini, Moinian Development Group, LLC,
28   Omni TMG, LLC, Gold Leaf Investments, LP, the David and Angela Nazarian

1  Family Trust and the Arsalan Gozini Charitable Lead Annuity Trust and certain of

2  the Doe Counter-defendants, constituting a group of individuals associated-in-fact,

3  did unlawfully, willfully, and knowingly participate in and conduct, directly and

4  indirectly, the Larian Criminal Enterprise's affairs through a pattern of racketeering

5  activity.

6  151.159.   The pattern of racketeering activity, as defined by 18

7  U.S.C. §§ 1961(1) and (5), includes acts of mail fraud in violation of 18 U.S.C.

8  § 1341 and 18 U.S.C. § 2; acts of wire fraud in violation of 18 U.S.C. § 1343 and 18

9  U.S.C. § 2; conspiracy to commit perjury and acts of influencing or injuring officer

10  or juror generally in violation of 18 U.S.C. § 1503 and 18 U.S.C. § 2; acts of

11  tampering with witnesses, victims or informants in violation of 18 U.S.C. § 1512

12  and 18 U.S.C. § 2; acts of interstate and foreign travel in aid of racketeering

13  enterprises in violation of 18 U.S.C. § 1952 and 18 U.S.C. § 2; acts of unlawful

14  concealment of assets in violation of 18 U.S.C. § 152(7) & (8); acts of money

15  laundering in violation of 18 U.S.C. § 1956; acts of engaging in monetary

16  transactions in property derived from unlawful activities in violation of 18 U.S.C.

17  § 1957; and acts of criminal copyright infringement in violation of 18 U.S.C.

18  § 2319(a) and 17 U.S.C. § 506(a)(1)(A).

19  152.160.   Counter-defendants and the other members of the MGA

20  Criminal Enterprise and Bratz Criminal Enterprise schemed to improperly defraud

21  Mattel and steal its trade secret or otherwise confidential and proprietary

22  information and infringe and destroy and fail to protect the value of Mattel's rights

23  and property and conceal such misconduct, as more fully set forth in the foregoing

24  paragraphs.  Further, counter-defendants and the other members of the IGWT

25  Criminal Enterprise schemed to infringe Mattel's rights and transfer, transport or

26  launder the ill-gotten gains from their infringements and the MGA and Bratz

27  Criminal Enterprises' thefts and infringements, and secret MGA assets and

28  purportedly obtain priority over Mattel, as more fully set forth in the foregoing

paragraphs.  Counter-defendants and the other members of the Larian Criminal Enterprise schemed to enable MGA to defraud Mattel and infringe and deprive Mattel of its rights and property, and obtain confidential, proprietary and otherwise valuable Mattel property through improper means, and conceal and transfer, transport or launder the ill-gotten gains from such misconduct, and secret MGA assets and purportedly obtain priority over Mattel, in order to assist MGA in illegally competing with Mattel domestically and throughout the world.

153.161.    In furtherance of this unlawful conspiracy, and to effect its objectives, Counter-defendants and various co-conspirators committed numerous overt acts, including but not limited to those set forth in the foregoing paragraphs.

154.162.    Mattel has been injured in its business or property as a direct and proximate result of the Counter-defendants' and the other enterprise members' violations of 18 U.S.C. § 1962(d), including injury by reason of the predicate acts constituting the pattern of racketeering activity.

155.163.    As a result of the conspiracies between and among all Counter-defendants and the other conspirators to violate 18 U.S.C. § 1962(c), Mattel has suffered substantial damages, in an amount to be proved at trial.  Pursuant to 18 U.S.C. § 1964(c), Mattel is entitled to recover treble its general and special compensatory damages, plus interest, costs and attorneys, fees, incurred by reason of Counter-defendants' violations of 18 U.S.C. § 1962(d).

### Fourth Counterclaim

### Misappropriation of Trade Secrets

### (*Cal. Civ. Code* § 3426 *et seq.*)

### (Against Counter-defendants MGA, MGA de Mexico,

### Larian, Machado and Does 48 through 10)

156.164.    Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 155163, above, as though fully set forth at length.

EXHIBIT  58
PAGE  1303

-89-

THIRDFOURTH AMENDED ANSWER AND COUNTERCLAIMS

1    ~~157.~~165.    As used herein, "Trade Secret Material" shall mean the

2  documents, materials and information stolen by Machado, Trueba, Vargas, Brisbois,

3  Castilla, the Other Former Employees, and other persons acting for, on behalf of or

4  at the direction of MGA and/or Larian.  Prior to their theft by Counter-defendants,

5  the Trade Secret Materials gave Mattel a significant competitive advantage over its

6  existing and would-be competitors, including MGA.  This advantage, as to MGA,

7  has now been compromised as a result of Counter-defendants' unlawful activities.

8    ~~158.~~166.    Mattel made reasonable efforts under the circumstances to

9  maintain the confidentiality of the Trade Secret Materials, including by having

10  employees and consultants who may have access the Trade Secret Materials sign

11  confidentiality agreements that oblige them not to disclose the Trade Secret

12  Materials or characteristics of the Trade Secret Materials; by limiting the circulation

13  of said materials within Mattel; by protecting and limiting access to computers with

14  log-in identifications and passwords; by limiting each employee's access to

15  electronic files to those that the particular employee needs to access; by educating

16  employees on the nature of Mattel's information that is confidential and proprietary;

17  and by reminding employees on a regular and periodic basis of their obligation to

18  protect and maintain Mattel's confidential and proprietary information.

19    ~~159.~~167.    Mattel's Trade Secret Materials derive independent

20  economic value from not being generally known to the public or to other persons

21  who can obtain economic benefit from their disclosure.

22    ~~160.~~168.    Counter-defendants have illegally obtained the trade secret

23  materials, as set forth above, and through other means of which Mattel is presently

24  unaware.

25    ~~161.~~169.    Counter-defendants have used and disclosed Mattel's

26  Trade Secret Materials without Mattel's consent and without regard to Mattel's

27  rights, and without compensation, permission, or licenses for the benefit of

28  themselves and others.

1      162.170.  Counter-defendants' conduct was, is, and remains willful
2 and wanton, and was taken with blatant disregard for Mattel's valid and enforceable
3 rights.

4      163.171.  Counter-defendants' wrongful conduct has caused and,
5 unless enjoined by this Court, will continue in the future to cause irreparable injury
6 to Mattel.  Mattel has no adequate remedy at law for such wrongs and injuries.
7 Mattel is therefore entitled to a permanent injunction restraining and enjoining
8 Counter-defendants, and each of them, as well as their agents, servants, and
9 employees, and all persons acting thereunder, in concert with, or on their behalf,
10 from further using in any manner Mattel's trade secrets.

11      164.172.  In addition, as a proximate result of Counter-defendants'
12 misconduct, Mattel has suffered actual damages, and Counter-defendants have been
13 unjustly enriched.

14      165.173.  The aforementioned acts of the Counter-defendants were
15 willful and malicious, including in that Counter-defendants misappropriated Mattel's
16 trade secrets with the deliberate intent to injure Mattel's business and improve their
17 own.  Mattel is therefore entitled to enhanced damages.  Mattel is also entitled to
18 reasonable attorney's fees.

**Fifth Counterclaim**

**Breach of Contract**

**(Against Bryant)**

22      166.174.  Mattel repeats and realleges each and every allegation set
23 forth in paragraphs 1 through 165173, above, as though fully set forth at length.
24      167.175.  Pursuant to his Employment Agreement, Bryant agreed
25 that he would not, without Mattel's express written consent, engage in any
26 employment or business other than for Mattel or assist in any manner any business
27 competitive with the business or future business plans of Mattel during his
28 employment with Mattel.  Pursuant to his Mattel Employment Agreement, Bryant

1   further assigned to Mattel all right, title and interest in "inventions," including

2   without limitation "designs" and other works that he conceived, created or reduced

3   to practice during his employment by Mattel.  In addition, pursuant to the Conflict

4   Questionnaire, Bryant certified that, other than as disclosed, he had not worked for

5   any competitor of Mattel and had not engaged in any business venture or transaction

6   involving a Mattel competitor that could be construed as a conflict of interest.

7   Bryant further promised that he would notify his supervisor immediately of any

8   change in his situation that would cause him to change any of the foregoing

9   certifications or representations.

10          ~~168.~~176.   The Employment Agreement and the Conflict

11   Questionnaire are valid, enforceable contracts, and Mattel has performed each and

12   every term and condition of the Employment Agreement and Conflict Questionnaire

13   required to be performed by Mattel.

14          ~~169.~~177.   Bryant materially breached the foregoing contracts with

15   Mattel, in that, among other things, he secretly aided, assisted and worked for a

16   Mattel competitor during his employment with Mattel without the express written

17   consent of Mattel.

18          ~~170.~~178.   As a consequence of Bryant's breach, Mattel has suffered

19   and will, in the future, continue to suffer damages in an amount to be proven at trial.

20   Such damages include, without limitation, the amounts paid by the competitor to

21   Bryant during his Mattel employment; the amounts paid by MGA to Bryant during

22   his Mattel employment; the amount that Mattel paid Bryant during the time he

23   wrongfully worked with MGA; the value of information and intellectual property

24   owned by Mattel which Bryant provided to MGA; the value of the benefits that

25   MGA obtained from Bryant during the time he was employed by Mattel; and the

26   value of the benefits that MGA obtained from Bryant as a result of the work he

27   performed for or with MGA during his Mattel employment.

28

EXHIBIT 58
PAGE 1304

~~THIRD~~FOURTH AMENDED ANSWER AND COUNTERCLAIMS

1    ~~171.~~179.    Bryant's conduct has caused, and unless enjoined will

2    continue to cause, irreparable injury to Mattel that cannot be adequately

3    compensated by money damages and for which Mattel has no adequate remedy at

4    law.  Bryant specifically acknowledged in his Employment Agreement that his

5    breach of the Agreement "likely will cause irreparable harm" to Mattel and that

6    Mattel "will be entitled to injunctive relief to enforce this Agreement, in addition to

7    damages and other available remedies."  Accordingly, Mattel is entitled to orders

8    mandating Bryant's specific performance of his contracts with Mattel and

9    restraining Bryant from further breach.

10                          **Sixth Counterclaim**

11                  **Intentional Interference with Contract**

12              **(Against MGA, Larian and Does ~~4 through 10~~)**

13    ~~172.~~180.    Mattel repeats and realleges each and every allegation set

14    forth in paragraphs 1 through ~~171~~179, above, as though fully set forth at length.

15    ~~173.~~181.    Valid agreements existed between Mattel and the Mattel

16    employees who MGA induced to steal or was complicit in stealing Mattel trade

17    secrets and other proprietary and confidential information and who MGA bribed or

18    induced to work for or assist MGA while Mattel employees (collectively, the

19    "Mattel Employees"), including without limitation Bryant, Brawer, Machado,

20    Trueba, Vargas, Brisbois, Castilla, Cabrera, Morales, Salazar, and the Other Former

21    Employees.

22    ~~174.~~182.    At all times herein mentioned, MGA, Larian and Does 4<u>8</u>

23    through 10 knew that the Mattel Employees had a duty under their agreements not to

24    work for or assist any competitor of Mattel, such as MGA.  In addition, at all times

25    mentioned herein, MGA, Larian and Does 4<u>8</u> through 10 knew that Bryant had

26    assigned to Mattel, and was obligated to disclose to Mattel all inventions, including

27    designs and other works, created, conceived or reduced to practice during their

28    employment with Mattel.

1    ~~175.~~183.   Despite such knowledge, Counter-defendants MGA,

2    Larian and Does 4~~8~~ through 10 intentionally and without justification solicited,

3    induced and encouraged the Mattel Employees to breach their contracts with Mattel.

4    ~~176.~~184.   As a direct and proximate result of Counter-defendants'

5    efforts and inducements, the Mattel Employees did breach their contracts with

6    Mattel.

7    ~~177.~~185.   As a result of said breaches, Mattel has suffered damages

8    and will imminently suffer further damages, including the loss of its competitive

9    position and lost profits, in an amount to be proven at trial.

10   ~~178.~~186.   Counter-defendants performed the aforementioned

11   conduct with malice, fraud and oppression, and in conscious disregard of Mattel's

12   rights.  Accordingly, Mattel is entitled to recover exemplary damages from Counter-

13   defendants in an amount to be determined at trial.

14                   **Seventh Counterclaim**

15                   **Breach of Fiduciary Duty**

16                 **(Against Bryant and Machado)**

17   ~~179.~~187.   Mattel repeats and realleges each and every allegation set

18   forth in paragraphs 1 through ~~178~~186, above, as though fully set forth at length.

19   ~~180.~~188.   Bryant and Machado held positions of trust and

20   confidence with Mattel.  In their positions, Bryant and Machado had access to and

21   were entrusted with Mattel's proprietary and confidential information, supervised

22   the work of others, exercised discretion and worked independently in many of their

23   job assignments and duties.  In their positions, Bryant and Machado also represented

24   Mattel in its dealings with third parties and, in actions in the course and scope of

25   their employment with Mattel, were agents of Mattel.  They confirmed their

26   relationship of trust with Mattel in respective employee agreements.  Bryant and

27   Machado thus owed Mattel a fiduciary duty that included, but was not limited to, an

28   obligation not to take any action that would be contrary to Mattel's best interests or

1 that would deprive Mattel of any opportunities, profit or advantage which Bryant or
2 Machado might bring to Mattel.

3     ~~181.~~189.   Bryant breached his fiduciary duty to Mattel in that, while
4 employed by Mattel, he secretly aided and assisted a competitor of Mattel, including
5 without limitation by entering into an agreement with a Mattel competitor.  As
6 alleged above, Bryant also breached the aforementioned duty by using Mattel
7 property and resources for the benefit of, and to aid and assist, himself personally
8 and MGA.

9     ~~182.~~190.   Machado breached his fiduciary duty to Mattel, in that
10 while employed by Mattel, he secretly aided and assisted a competitor of Mattel by,
11 among other things, misappropriating Mattel trade secret and proprietary
12 information and providing said information to officers of MGA.  Machado also
13 breached the aforementioned duty by using Mattel property and resources for the
14 benefit of, and to aid and assist, himself personally and MGA.

15     ~~183.~~191.   As a direct and proximate result of Counter-defendants'
16 wrongful conduct, Mattel has incurred damages in an amount to be determined at
17 trial.

18     ~~184.~~192.   Counter-defendants acted with malice, fraud and
19 oppression, and in conscious disregard of Mattel's rights.  Accordingly, Mattel is
20 entitled to an award of exemplary damages against Counter-defendants in an amount
21 to be determined at trial.

22     ~~185.~~193.   Furthermore, Counter-defendants' conduct has caused, and
23 unless enjoined will continue to cause, irreparable injury to Mattel that cannot be
24 adequately compensated by money damages and for which Mattel has no adequate
25 remedy at law.  Accordingly, Mattel is entitled to an order restraining further breach
26 of Bryant's fiduciary duty to Mattel and/or restraining Counter-defendants from
27 continuing to benefit from such breach.

28

EXHIBIT 58
PAGE 1309

-95-

~~THIRD~~FOURTH AMENDED ANSWER AND COUNTERCLAIMS

1

### Eighth Counterclaim

2

### Aiding and Abetting Breach of Fiduciary Duty

3

### (Against MGA, Larian and Does ~~4 through 10~~)

4      ~~186.~~194.    Mattel repeats and realleges each and every allegation set

5   forth in paragraphs 1 through ~~185~~193, above, as though fully set forth at length.

6      ~~187.~~195.    At all times herein mentioned, MGA, Larian and Does 4<u>8</u>

7   through 10 knew that Bryant held a position of trust and confidence at Mattel.  At all

8   times herein mentioned, MGA, Larian and ~~Does 4 through 10~~<u>certain of the Doe</u>

9   <u>Counter-defendants</u> knew that Bryant owed a fiduciary duty to Mattel not to take

10  any action that would be contrary to Mattel's best interests, including but not limited

11  to secretly developing and designing Bratz while employed by Mattel and by

12  secretly assisting Larian and MGA .

13      ~~188.~~196.    At all times herein mentioned, MGA, Larian and Does 4<u>8</u>

14  through 10 knew that the Mattel Employees (excluding Bryant) held positions of

15  trust and confidence at Mattel.  At all times herein mentioned, MGA, Larian and

16  Does 4<u>8</u> through 10 knew that the Mattel Employees (excluding Bryant) owed a

17  fiduciary duty to Mattel not to take any action that would be contrary to Mattel's

18  best interests, including but not limited to taking confidential trade secret

19  information from Mattel's premises and providing that information to a competitor.

20      ~~189.~~197.    Despite such knowledge, Counter-defendants MGA,

21  Larian and Does 4<u>8</u> through 10 intentionally and without justification solicited,

22  encouraged, aided and abetted and gave substantial assistance to the Mattel

23  Employees to breach their fiduciary duties to Mattel, knowing that their conduct

24  would constitute breaches of their fiduciary duties to Mattel.

25      ~~190.~~198.    As a direct and proximate result of Counter-defendants'

26  efforts, the Mattel Employees did breach their fiduciary duties to Mattel and Mattel

27  has incurred damages in an amount to be proven at trial.  Mattel, therefore, is

28  entitled to recover compensatory damages in an amount to be determined at trial.

EXHIBIT 58
PAGE 1310

1      ~~191.~~199.      In taking the aforesaid actions, MGA, Larian and Does 4<u>8</u>

2   through 10 acted with malice, fraud and oppression, and in conscious disregard of

3   Mattel's rights.  Accordingly, Mattel is entitled to recover exemplary damages from

4   Counter-defendants in an amount to be determined at trial.

**Ninth Counterclaim**

**Breach of Duty of Loyalty**

**(Against Bryant and Machado)**

8      ~~192.~~200.      Mattel repeats and realleges each and every allegation set

9   forth in paragraphs 1 through ~~191~~199, above, as though fully set forth at length.

10      ~~193.~~201.      As employees of Mattel, Bryant and Machado owed a duty

11   of undivided loyalty to Mattel.  Pursuant to this duty, Bryant and Machado could not

12   compete with Mattel or assist a competitor of Mattel during their employment with

13   Mattel.  Pursuant to this duty, Bryant and Machado were required to always give

14   preference to Mattel's business over their own, similar interests during the course of

15   their employment with Mattel.

16      ~~194.~~202.      Bryant and Machado breached their duty of loyalty to

17   Mattel in that, while employed by Mattel, they secretly aided, assisted and worked

18   for a competitor of Mattel, including without limitation by entering into agreements

19   with a Mattel competitor.  As alleged above, they also breached the aforementioned

20   duty by using Mattel property and resources for the benefit of, and to aid and assist,

21   themselves personally and the competitor of Mattel.

22      ~~195.~~203.      As a direct and proximate result of Counter-defendants'

23   wrongful conduct, Mattel has incurred damages in an amount to be determined at

24   trial.

25      ~~196.~~204.      Counter-defendants acted with malice, fraud and

26   oppression, and in conscious disregard of Mattel's rights.  Accordingly, Mattel is

27   entitled to an award of punitive damages against Counter-defendants in an amount

28   to be determined at trial.

00505.07209/2875224.10/
975/3029070.5

EXHIBIT 58

PAGE 1311

-97-

~~THIRD~~FOURTH AMENDED ANSWER AND COUNTERCLAIMS

1    ~~197.~~205.    Furthermore, Counter-defendants' conduct has caused, and
2  unless enjoined will continue to cause, irreparable injury to Mattel that cannot be
3  adequately compensated by money damages and for which Mattel has no adequate
4  remedy at law.  Accordingly, Mattel is entitled to an order restraining further breach
5  of Counter-defendants' duty of loyalty to Mattel and/or restraining Counter-
6  defendants from continuing to benefit from such breach.

7    ~~198.~~206.    In breaching their duty of loyalty to Mattel, Bryant and
8  Machado acted with malice, fraud and oppression, and in conscious disregard of
9  Mattel's rights.  Accordingly, Mattel is entitled to recover exemplary damages from
10  Counter-defendants in an amount to be determined at trial.

11                        **Tenth Counterclaim**
12            **Aiding and Abetting Breach of Duty of Loyalty**
13        **(Against MGA, Larian and Does ~~4 through 10~~)**

14    ~~199.~~207.    Mattel repeats and realleges each and every allegation set
15  forth in paragraphs 1 through ~~198~~206, above, as though fully set forth at length.

16    ~~200.~~208.    MGA, Larian and Does 4~~8~~ through 10 knew that Bryant,
17  as an employee of Mattel, owed a duty of loyalty to his employer.  MGA, Larian
18  and Does 4~~8~~ through 10 knew that this duty included an obligation on the part of
19  Bryant not to compete with Mattel or assist a competitor of Mattel during the term
20  of his employment with Mattel.  MGA, Larian and ~~Does 4 through 10~~certain of the
21  Doe Counter-defendants also knew that Bryant was required to give preference to
22  Mattel's business over his own, similar interests or those of Mattel's competitors
23  during the course of his employment with Mattel.

24    ~~201.~~209.    MGA, Larian and ~~Does 4 through 10~~certain of the Doe
25  Counter-defendants knew that the Mattel Employees (excluding Bryant) were
26  employed by Mattel, and, as employees of Mattel, that they owed duties of loyalty
27  to Mattel.  MGA, Larian and ~~Does 4 through 10~~certain of the Doe Counter-
28  defendants knew that these duties included an obligation on the part of the Mattel

EXHIBIT  58
PAGE  132

1 | Employees (excluding Bryant) not to compete with Mattel or assist a competitor of
2 | Mattel during their Mattel employment.

3 | ~~202.~~210.   Despite such knowledge, Counter-defendants MGA,
4 | Larian and Does 4̲8̲ through 10 intentionally and without justification solicited,
5 | encouraged, aided and abetted and gave substantial assistance to the Mattel
6 | Employees to breach their duties of loyalty to Mattel, knowing that their conduct
7 | would constitute breaches of their duties of loyalty to Mattel.

8 | ~~203.~~211.   As a further consequence of Counter-defendants' efforts,
9 | Mattel has suffered injury and is entitled to compensatory damages in an amount to
10 | be proven at trial.

11 | ~~204.~~212.   In taking the aforesaid actions, MGA, Larian and Does 4̲8̲
12 | through 10 acted with malice, fraud and oppression, and in conscious disregard of
13 | Mattel's rights.  Accordingly, Mattel is entitled to recover exemplary damages from
14 | Counter-defendants in an amount to be determined at trial.

15 | **Eleventh Counterclaim**
16 | **Conversion**
17 | **(Against All Counter-defendants)**

18 | ~~205.~~213.   Mattel repeats and realleges each and every allegation set
19 | forth in paragraphs 1 through ~~204~~212, above, as though fully set forth at length.

20 | ~~206.~~214.   Counter-defendants wrongfully converted Mattel property
21 | and resources by appropriating and using them for their own benefit and gain and
22 | for the benefit and gain of others, without the permission of Mattel.

23 | ~~207.~~215.   Mattel was entitled to, among other things, the exclusive
24 | right and enjoyment in property and tangible materials owned by Mattel, including
25 | without limitation such proper and materials that were created by Bryant while he
26 | was a Mattel product designer.  Such property was taken by Bryant from Mattel to
27 | further his own interests and, in at least some instances, provided by Bryant to
28 | Larian and MGA in furtherance of the interests of Bryant, Larian and MGA.

208.216.    In addition, Counter-defendants wrongfully converted Mattel's property by removing the Trade Secret Materials in electronic and paper form from Mattel's offices.  Counter-defendants did so without Mattel's permission and continue to possess them.

217.   In addition, Counter-defendants have converted and continue to covert other tangible property, including without limitation Bratz inventory, and transferred, sold, alienated or otherwise purported to encumber that property, despite Mattel's rights therein.

209.218.    As a direct and proximate result of Counter-defendants' wrongful conversion of Mattel property, including those relating to Bratz and Mattel's Trade Secret Materials, Mattel has incurred damages.  Mattel, therefore, is entitled to recover compensatory damages in an amount to be determined at trial.

210.219.    As a result of Counter-defendants' acts of conversion, Mattel is entitled to damages in an amount sufficient to indemnify Mattel for the loss suffered, which is not measured by the value of the property misappropriated,including but includesnot limited to the lost profits that Mattel suffered as a result of the conversion or, alternatively,and the profits generated by the Counter-defendants that would not have been generated but for the conversion. Only such a measure of damages would fully and fairly compensate Mattel for the injury it suffered due to Counter-defendants' acts of conversion.

211.220.    Counter-defendants performed the aforementioned conduct with malice, fraud and oppression, and in conscious disregard of Mattel's rights.  Accordingly, Mattel is entitled to recover exemplary damages from Counter-defendants in an amount to be determined at trial.

212.221.    Furthermore, Counter-defendants' conduct has caused, and unless enjoined will continue to cause, irreparable injury to Mattel that cannot be adequately compensated by money damages and for which Mattel has no adequate remedy at law.  Accordingly, Mattel is entitled to an order restraining Counter-

00505.07209/2875224.10/
975/3029070.5

EXHIBIT 58
PAGE 13/4

-100-

THIRDFOURTH AMENDED ANSWER AND COUNTERCLAIMS

1  defendants from further conversion of Mattel property and resources and/or

2  restraining Counter-defendants from continuing to benefit from such conversion.

3  **Twelfth Counterclaim**

4  **Unfair Competition**

5  **(Common Law and *Cal. Bus. & Prof. Code* § 17200)**

6  **(Against All Counter-defendants)**

7       ~~213.~~222.    Mattel repeats and realleges each and every allegation set

8  forth in paragraphs 1 through ~~212~~221, above, as though fully set forth at length.

9       ~~214.~~223.    Section 17200 of the California Business and Professions

10  Code prohibits unfair competition, including "any unlawful, unfair or fraudulent

11  business act or practice . . . ."

12       ~~215.~~224.    By engaging in the foregoing conduct, Counter-defendants

13  have, individually and in combination, engaged in unlawful, unfair and/or fraudulent

14  acts of unfair competition in violation of both the common law of the state of

15  California and *Cal. Bus. & Prof. Code* § 17200 *et seq*.  Such conduct included,

16  without limitation, MGA's commercial bribery of Bryant in violation of *Cal. Penal*

17  *Code* § 641.3 and misappropriation of trade secrets in violation of 18 U.S.C. §

18  1832(a).  Such conduct also included, without limitation, MGA's and Larian's

19  disparagement of Mattel's products and misrepresentations as alleged above.

20       ~~216.~~225.    As a result of the aforementioned conduct, Mattel has

21  suffered damages and will imminently suffer further damages, including but not

22  limited to lost profits in an amount to be proven at trial.  No adequate remedy at law

23  exists for the wrongs and injuries Mattel has suffered and will continue to suffer,

24  and Mattel is entitled to an injunction enjoining Counter-defendants' continued

25  wrongful acts.  Mattel is also entitled to recover compensatory and exemplary

26  damages pursuant to the doctrine of common law unfair competition and *Cal. Civ.*

27  *Code* § 3294.

28

EXHIBIT 58

PAGE 13/5

-101-

~~THIRD~~FOURTH AMENDED ANSWER AND COUNTERCLAIMS

### Thirteenth Counterclaim

**Avoidance of Intentional and Constructive Fraudulent Transfers Under**

**Uniform Fraudulent Transfer Act**

**(~~Common Law and~~ Cal. Civil Code §§ 3439 et seq.)**

**(Against MGA ~~and Larian~~, Larian, IGWT Group, IGWT 826 Investments, Omni 808 Kadisha and Does)**

~~217.~~226.___Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through ~~216~~225, above, as though fully set forth at length.

~~218.~~227.___Mattel is a creditor of MGA and Larian, and his alter-egos, because Mattel has substantial claims against MGA and Larian, including but not limited to claims that have already resulted in a jury verdict in this action in Mattel's favor. *Cal. Civil Code* § 3439.01(b), (c).

~~219.~~228.___After Mattel's claims had been asserted and continuing until the Phase 1A jury verdict and dates thereafter, MGA and Larian engaged in fraudulent transfers, *Cal. Civ. Code* § 3439.01(i), 3439.04, 3439.05, including, without limitation, by transferring tens of millions of dollars of Bratz inventory from MGA to the Larian-controlled IGWT Group. These transfers were at massive discounts, and on information and belief MGA did not receive reasonably equivalent value for the Bratz inventory that it transferred.

~~220.~~229.___On information and belief, and based on the foregoing, these fraudulent transfers were made with actual intent to hinder, delay, and/or defraud MGA's and Larian's creditor, Mattel.

~~221.~~230.___MGA has represented that it was on the verge of filing bankruptcy. If true, on information and belief at the time of the transfers MGA was unable to pay its debts as they became due and was engaged in a transaction, or was about to engage in a business, for which its remaining assets were unreasonably small, and MGA was insolvent. On information and belief, MGA intended to incur,

EXHIBIT 58
PAGE 13/6

-102-

~~THIRD~~FOURTH AMENDED ANSWER AND COUNTERCLAIMS

1    or believed or reasonably should have believed it would incur, debts beyond its
2    ability to pay as they became due.

3          231.   Mattel does not know, at this time, the full scope of the unlawful
4    transfers MGA and Larian have made and continue to make because such facts are
5    exclusively in the possession of and known by Counter-defendants, who have
6    concealed them, and discovery into this misconduct is at an early stage.  On
7    information and belief, MGA's and Larian's unlawful transfers are ongoing, and
8    unless stopped by the Court will continue to occur and be made in the future.

9          232.   Mattel has no adequate or complete remedy at law, including
10   based on the foregoing.

11         ~~222.~~233.    By virtue of the foregoing, MGA's and Larian's fraudulent
12   transfers, including without limitation the transfers of Bratz inventory to the IGWT
13   Group, should be avoided, the transferred assets and their proceeds, including
14   without limitation the Bratz inventory and/or and the proceeds of the sales of any
15   Bratz inventory by IGWT Group, should be restored to MGA and attached, and
16   injunctions should issue against any further fraudulent transfers and against any
17   disposition of the transferred assets and/or their proceeds, pursuant to *Cal. Civil*
18   *Code* § 3439.07.

19         234.   In addition, MGA and Larian should be required to account to
20   the Court and Mattel for their transfers and distributions and provide and produce an
21   accounting thereof, including by disclosing the dates and amounts of and
22   participants to the transfers, and any alleged bases therefor – facts which are in
23   Counter-defendants' exclusive possession, and which to date they have concealed.

24
25
26
27
28

EXHIBIT 58
PAGE 137

-103-

THIRDFOURTH AMENDED ANSWER AND COUNTERCLAIMS

**Fourteenth Counterclaim**

**Breach of Constructive Trust**

**(Against Larian, MGA and Does)**

235.   Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 234, above, as though fully set forth at length.

236.   MGA, Larian, and Does 8 through 10, by virtue of their wrongful acquisition of Mattel's valuable property, including Bratz, held that property in constructive trust for Mattel.

237.   As constructive trustees, they were required to preserve that property, and to protect it against destruction or loss in value.  Instead of satisfying those duties, MGA, Larian, and certain of the Doe Counter-defendants wrongfully permitted and intentionally caused Bratz to lose value.  They failed to act as faithful trustees.

238.   In fact, after using Mattel's employees, confidential information, and trade secrets to build Bratz, on information and belief MGA, Larian, and certain of the Doe Counter-defendants set about to liquidate and devalue Bratz for their own benefit, including through a series of financial transactions that had the actual and intended effect of draining MGA of assets, including assets that were critical to maintaining the value of Bratz and promoting it.

239.   Through their intentional and negligent misconduct, rather than preserve and protect Mattel's valuable property, MGA, Larian, and certain of the Doe Counter-defendants wrongfully and intentionally destroyed the value of that property to deprive Mattel of the ability to benefit from it.

240.   As a result of this misconduct, Mattel has suffered injury and is entitled to compensatory damages in an amount to be proven at trial.

241.   In addition, in taking the aforesaid actions, MGA, Larian, and Does 8 through 10 acted with malice, fraud and oppression, and in conscious

EXHIBIT 58

PAGE 1318

00505.07209/2875224.10
975/3029070.5

~~THIRD~~FOURTH AMENDED ANSWER AND COUNTERCLAIMS

1  | disregard of Mattel's rights.  Accordingly, Mattel is entitled to recover exemplary
2  | damages from them in an amount to be determined at trial.

3  | ### ~~Fourteenth Counterclaim~~Fifteenth Counterclaim

4  | ### Declaratory Relief

5  | ### (Against ~~All Counter-defendants~~MGA, Larian, MGA Mexico, MGA Hong
6  | ### Kong, Bryant and Does)

7  | ~~223.~~242.    Mattel repeats and realleges each and every allegation set
8  | forth in paragraphs 1 through ~~222~~241, above, as though fully set forth at length.

9  | ~~224.~~243.    As shown in the foregoing paragraphs above, an actual
10 | controversy exists between Mattel and Counter-defendants regarding Counter-
11 | defendants' lack of ownership interests in Bratz and Mattel's rights in the same.

12 | ~~225.~~244.    Accordingly, Mattel seeks a declaration of the Court that
13 | Counter-defendants have no valid or protectable ownership rights or interests in
14 | Bratz, and that Mattel is the true owner of the same, and further seeks an accounting
15 | and imposition of a constructive trust over Bratz, including without limitation
16 | registrations and applications for registrations relating thereto made or filed by
17 | Counter-defendants and third parties, and over all revenues and other monies or
18 | benefits derived or obtained from MGA's and Bryant's purported ownership, use,
19 | sale, distribution and licensing of Bratz.

20 | ~~226.~~245.    Mattel seeks a declaration of the Court that any and all
21 | agreements between Bryant and/or any other individuals then-employed by Mattel,
22 | on the one hand, and MGA, on the other hand, in which Bryant or any of them
23 | purport to assign to MGA any right, title or interests in any work or properties that
24 | they conceived, created or reduced to practice while Mattel employees, including
25 | but not limited to the Bratz designs, is void and of no effect, including without
26 | limitation because Bryant and/or any other such individuals had previously assigned
27 | said right, title or interest to Mattel and because Mattel was otherwise the owner of
28 | said right, title or interest.

00505.07209/2875224.107
975/3029070.5

EXHIBIT 58
PAGE 1319

-105-

~~THIRD~~FOURTH AMENDED ANSWER AND COUNTERCLAIMS

**Prayer for Relief**

WHEREFORE, Mattel respectfully requests judgment:

1.    For a declaration that Counter-defendants have no valid or protectable ownership interests or rights in Bratz designs, works or properties conceived, made, created or reduced to practice by Bryant during the term of his Mattel employment and/or by any others then-employed by Mattel, as well as in all derivatives prepared therefrom, and that Mattel is the true owner of the foregoing;

2.    For a declaration that any agreement between Bryant and/or by any others then-employed by Mattel, on the one hand, and MGA or any person or entity, on the other hand, in which Bryant or such others then-employed by Mattel purported to assign any right, title or interests in any work or properties that they conceived, made, created or reduced to practice while employed by Mattel, including but not limited to the Bratz designs, is void and of no effect;

3.    For an Order enjoining and restraining Counter-defendants, their agents, servants and employees, and all persons in active concert or participation with them, from further wrongful conduct, including without limitation from imitating, copying, distributing, importing, displaying, preparing derivatives from and otherwise infringing Mattel's copyright-protected works;

4.    For an Order, pursuant to 17 U.S.C. § 503(a) and other applicable law, impounding all of Counter-defendants' products and materials that infringe Mattel's copyrights, as well as all plates, molds, matrices and other articles by which copies of the works embodied in Mattel's copyrights may be reproduced or otherwise infringed;

5.    For an Order mandating that Counter-defendants return to Mattel all tangible items, documents, designs, diagrams, sketches or any other memorialization of inventions conceived, created, made or reduced to practice during Bryant's employment with Mattel as well as all Mattel property converted by Counter-defendants;

EXHIBIT 58

PAGE 1320

-106-

~~THIRD~~ FOURTH AMENDED ANSWER AND COUNTERCLAIMS

6.    For an Order mandating specific performance by Bryant to comply with and satisfy Bryant's contractual obligations to Mattel;

7.    That Mattel be awarded, and Counter-defendants be ordered to disgorge, all payments, revenues, profits, monies and royalties and any other benefits derived or obtained as a result of the conduct alleged herein, including without limitation of all revenues and profits attributable to Counter-defendants' infringement of Mattel's copyrights under 17 U.S.C. § 504;

8.    For an accounting of all profits, monies and/or royalties from the exercise of ownership, use, distribution, sales and licensing of Bratz;

9.    For the imposition of a constructive trust over Bratz, including without limitation all rights and benefits relating thereto and registrations and applications for registrations relating thereto made or filed by Counter-defendants and third parties, and all profits, monies, royalties and any other benefits derived or obtained from Counter-defendant's exercise of ownership, use, sale, distribution and licensing of Bratz;

10.    That Mattel recover its actual damages and lost profits;

11.    That Counter-defendants be ordered to pay exemplary damages in a sum sufficient to punish and to make an example of them, and deter them and others from similar wrongdoing;

12.    That Counter-defendants be ordered to pay treble its general and special damages, plus interest, costs and attorney's fees incurred by reason of Counter-defendants' violations of 18 U.S.C. §§ 1962(c)-(d).

13.    That Counter-defendants be ordered to pay double damages due to their willful and malicious misappropriation of Mattel's trade secrets with deliberate intent to injure Mattel's business and improve its own;

14.    That Counter-defendants pay to Mattel the full cost of this action and Mattel's attorneys' and investigators' fees;

EXHIBIT 58
PAGE 1321

-107-

THIRDFOURTH AMENDED ANSWER AND COUNTERCLAIMS

1    15.   For an Order that Larian is liable for all wrongs of his agents,
2  alter-egos or others committed on his behalf;

3    ~~1.~~16.   That Counter-defendants' fraudulent transfers, including <u>without</u>
4  <u>limitation</u> their transfers of Bratz inventory, be avoided and set aside; <u>that</u> the
5  transferred assets and their proceeds be restored to MGA and attached and/or
6  subjected to a constructive trust for Mattel's benefit; ~~and~~<u>that Counter-defendants be</u>
7  <u>required to account for their past and future fraudulent transfers; and that</u> Counter-
8  defendants be enjoined against any further fraudulent transfers and any disposition
9  of the transferred assets and/or their proceeds; and

10  #
11  #
12  #
13  #

14    ~~2.~~17.   That Mattel have such other and further relief as the Court may
15  deem just and proper.

16

17  DATED:  ~~May 22,~~_____,   QUINN EMANUEL URQUHART OLIVER &
18  2009                                                    HEDGES, LLP

19

20                                        By /s/ John B. Quinn_____
                                                John B. Quinn
21                                            Attorneys for Defendant and Counter-
                                                claimant Mattel, Inc.
22

23

24

25

26

27

28

EXHIBIT 58
PAGE 1322                              -108-

~~THIRD~~FOURTH AMENDED ANSWER AND COUNTERCLAIMS

1

## DEMAND FOR JURY TRIAL

2

3          Mattel, Inc. respectfully requests a jury trial on all issues triable

4    thereby.

5

6    DATED: ~~May 22,~~ _____,   QUINN EMANUEL URQUHART OLIVER &
     2009                                HEDGES. LLP
7

8                                        By /s/ John B. Quinn
9                                          John B. Quinn
                                           Attorneys for Defendant and Counter-
10                                         claimant Mattel. Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT 58
PAGE 1323

00505.07209/2875224.10
975/3029070.5

-109-

~~THIRD~~FOURTH AMENDED ANSWER AND COUNTERCLAIMS