1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 090378)
2    johnquinn@quinnemanuel.com
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
     865 South Figueroa Street, 10th Floor
5  Los Angeles, California  90017-2543
   Telephone:   (213) 443-3000
6  Facsimile:   (213) 443-3100

7  Attorneys for Mattel, Inc.

8

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11                  EASTERN DIVISION

| | |
|---|---|
| 12  CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx)<br>Consolidated with |
| 13            Plaintiff, | Case No. CV 04-09059<br>Case No. CV 05-02727 |
| 14       vs. | |
| 15  MATTEL, INC., a Delaware<br>corporation, | **DISCOVERY MATTER**<br><br>**[To Be Heard By Discovery Master<br>Robert O'Brien]** |
| 16            Defendant. | |
| 17 | MATTEL, INC.'S OPPOSITION TO<br>MGA ENTERTAINMENT, INC.'S |
| 18  AND CONSOLIDATED ACTIONS | MOTION TO COMPEL FURTHER<br>RESPONSES TO MGA'S FIRST SET<br>OF PHASE 2 REQUESTS FOR |
| 19 | PRODUCTION AND FOR<br>PRODUCTION OF DOCUMENTS |
| 20 | |
| 21 | [Declarations of Marshall M. Searcy III<br>and B. Dylan Proctor filed concurrently] |
| 22 | |
| 23 | Hearing Date:  Sept. 10, 2009<br>Time:              10 a.m.<br>Place:             Arent Fox LLP |
| 24 | 555 West Fifth St.<br>48th Floor |
| 25 | Los Angeles, CA  90013 |
| 26 | **Phase 2** |
| 27 | Discovery Cut-off:       Dec. 11, 2009<br>Pre-trial Conference:    Mar. 1, 2010<br>Trial Date:                 Mar. 23, 2010 |
| 28 | |

07975/3051455.2

**Preliminary Statement**

MGA's motion seeks documents that it already has or that it will receive prior to the hearing on this matter.   As Mattel made clear in both its Responses and in meet and confer, it had already produced tens of thousands of pages of documents responsive to the Requests identified by MGA.   Nonetheless, Mattel committed to review its files once again with respect to all the Requests MGA had identified as deficient to assure that all responsive documents had either been produced or noted on privilege logs.   It did so.   For each Request, there is either nothing to compel or Mattel continues to diligently search for responsive documents.   While MGA deceptively complains that Mattel has produced nothing, it struggles to describe *any* documents that Mattel has not produced.

MGA also urges that it should be allowed to access the entirety of every hard drive of every computer ever assigned to certain former Mattel employees who took trade secrets to MGA.   This overbroad discovery demand is not tied to any claim or defense in this case, and contradicts the agreement previously reached by the parties that Mattel would provide hard drives from computers that the former Mattel employees were using *at the time of their resignation,* not years before any of the events alleged in the complaint.   MGA's motion should be denied.[1]

---

[1]   Even while MGA proclaims that Mattel "ceased communicating," (Motion at 1:10-12) MGA has actually disregarded communications in an apparent effort to get some sort of motion on file.   MGA has included in this Motion twenty-two requests which it did not even identify as deficient at any meet and confer.   Compare Separate Statement at Request Nos. 1-2, 34, 37-40, 42-46, 52-60 & 64 with Letter from Caroline Mankey to Marshall Searcy, dated July 1, 2009, attached as Exhibit C to the Declaration of Caroline H. Mankey in Support of MGA Entertainment, Inc.'s Motion to Compel Further Responses to MGA's First Set of Phase 2 Requests for Production and for Production of Documents ("Mankey Dec."), dated July 31, 2009. As to those requests, Mattel was never asked to again review its files, but it has produced all responsive and relevant documents that Mattel has located to date after
(footnote continued)

## **Background**

**Mattel Responds to MGA's Requests.**   On March 27, 2009, Mattel received MGA's First Set of (Phase 2) Requests for Production of Documents and Things ("Requests").[2]   Mattel served responses on April 27, 2009, indicating that Mattel had already produced documents responsive to these Requests, or where it was withholding documents as privileged, had logged such documents on a privilege log consistent with the parties' practice.[3]

**MGA Identifies the Requests About Which It Wishes to Meet and Confer.**   On June 24, 2009, MGA sent Mattel a letter expressing, in general terms, dissatisfaction with Mattel's Responses and asking to meet and confer.[4]   Mattel agreed to meet and confer and asked MGA which Responses it believed to be unsatisfactory.[5]   In response, MGA sent Mattel a list of 41 Responses with which it took issue, and the parties spoke the same day, July 1, 2009.[6]

**Mattel Agrees to Produce Any Additional Responsive Documents It Can Locate and the Parties Compromise Regarding Hard Drives.**   During the parties'

---

making diligent, good faith searches.  See ¶ 3 of the Declaration of Marshal M. Searcy, III ("Searcy Dec."), dated August 18, 2009 and filed concurrently herewith.

[2]  MGA Entertainment, Inc.'s First Set of (Phase 2) Requests for Production of Documents and Things ("Requests"), March 27, 2009, attached as Exh. 1 to the Declaration of Christopher J. Chaudoir in Support of MGA Entertainment, Inc.'s Motion to Compel Further Responses to MGA's First Set of Phase 2 Requests for Production and to Compel Production of Documents ("Chaudoir Dec.").

[3]  Mattel, Inc.'s Responses and Objections to MGA Entertainment, Inc.'s First Set of (Phase 2) Requests for Production of Documents and Things ("Mattel's Responses"), Chaudoir Dec., Exh. 2 at Request Nos. 1-3, 5-13, 15-23, 26-47, 49, 51-60, 64-68.

[4]  Letter from Caroline Mankey to Jon Corey, dated June 24, 2009, Mankey Dec., Exh. A.

[5]  Letter from Marshall Searcy to Caroline Mankey, dated June 30, 2009, Mankey Dec., Exh. B.

[6]  Letter from Caroline Mankey to Marshall Searcy, dated July 1, 2009, Mankey Dec., Exh. C; Searcy Dec., ¶ 2.

1    conference, Mattel stated that, as indicated in its Responses, it believed that the
2    responsive documents in its custody, possession or control that it had located after
3    reasonable, good faith searches had already been produced in response to previous
4    requests.    Nonetheless, Mattel agreed to conduct a further search as to those
5    Requests identified by MGA as deficient,[7] including Requests where Mattel
6    believed the responsive documents to be in MGA's exclusive possession.[8]

7          Finally, as to the Requests pertaining to hard drives used by certain
8    former Mattel employees,[9] the parties agreed that Mattel would produce only drives
9    assigned to the employees at the time of their resignation.[10]   Mattel agreed to
10   provide MGA with a forensic image of each of these computers, and because MGA
11   stated that it wished to immediately negotiate a protocol, at Mattel's suggestion,
12   MGA agreed that it would draft a proposed protocol for the inspection of the
13   forensic images.[11]

14         At the parties' second meet and confer, MGA's counsel explained that
15   she would be withdrawing from the case and introduced new counsel who
16   participated in the conference.[12]

17   ────────────────

18   [7]   Request Nos. 1-2, 5-9, 13, 15-19, 23, 26-30, 34, 37-46, 51-60 and 64-68.  See
19   Letter from Caroline Mankey to Marshall Searcy, dated July 7, 2009, Mankey Dec.,
     Exh. D at 1.

20   [8]   Request Nos. 10, 12, 20-22, 32-33 and 35-35.  See Mattel's Supplemental
21   Responses to MGA's First Set of Phase 2 Requests for Production, dated August 18,
     2009, Searcy Dec., Exh. 16.

22   [9]   The Requests dealing with the hard drives and computers are Request Nos. 3-4,
23   13-14, 23-25 and 47-50.

     [10]   Letter from Caroline Mankey to Marshall Searcy, dated July 7, 2009, Mankey
24   Dec., Exh. D.

25   [11]   MGA Entertainment, Inc.'s Motion to Compel Further Responses to MGA's
     First Set of Phase 2 Requests for Production and for Production of Documents
26   ("Motion"), at 3:12-14; Letter from Christopher Chaudoir to Marshall Searcy, dated
27   July 16, 2009, Chaudoir Dec., Exh. 4.

     [12]   Searcy Dec., ¶ 2.
28

**MGA Reneges on the Prior Hard Drive Agreement and Files Its Motion.** Following the parties' conference on July 8, Mattel searched for additional responsive documents, finding none for some Requests and finding that other Requests would require further searches, which Mattel has since been diligently pursuing.[13]   Despite the parties' long-standing practice of sending written correspondence by fax and email, MGA purported to mail a letter to Mattel concerning a proposed protocol for review of the imaged hard drives of the former Mattel employees.[14]  Mattel's counsel did not receive a copy of this letter.[15]  MGA's counsel undertook no efforts to determine whether Mattel received his letter, and in fact, did not contact Mattel again until filing this motion.[16]

On July 31, Mattel received MGA's Motion, which attached MGA's proposed protocol.[17]  Mattel responded the same day, proposing a protocol for inspection of the hard drives.[18]  In its proposed protocol, Mattel agreed to allow MGA's expert to "inspect the images of the hard drives in their entirety," subject only to review of the information for privilege and appropriate designation under the Protective Order prior to disclosure of the information.[19]  On August 5, MGA's counsel wrote, without elaboration, that Mattel's proposal was "unacceptable."[20]

---

[13]   Searcy Dec., ¶¶ 2-3.
[14]   Searcy Dec., ¶ 4.
[15]   Id.
[16]   Id.
[17]   Letter from Christopher Chaudoir to Marshall Searcy, dated July 16, 2009, Chaudoir Dec., Exh. 4.
[18]   Email from Marshall Searcy to Christopher Chaudoir, dated July 31, 2009, Searcy Exh. 1.
[19]   Attachment to email from Marshall Searcy to Christopher Chaudoir, dated July 31, 2009, Searcy Exh. 1.
[20]   Email from Christopher Chaudoir to Marshall Searcy, dated August 5, 2009, Searcy Dec., Exh. 2.

1    The Parties Negotiate A Protocol.   After receiving MGA's letter,
2 Mattel promptly asked MGA for an explanation of any issues it had with Mattel's
3 proposed protocol.[21]  In response, MGA contacted Mattel on the day its opposition
4 was originally due and offered to extend the deadlines of the opposition and reply,
5 so that the parties could further discuss the protocol.[22]  Over the course of the next
6 week and a half, the parties exchanged multiple proposed protocols and were able to
7 ultimately agree to a protocol.[23]

8    Mattel Supplements Its Responses to Make it Clear that it Is Not
9 Withholding Responsive Documents.   During the parties' meet and confer, MGA
10 identified certain Requests for which Mattel had not originally agreed to produce
11 documents.  Mattel explained that it believed responsive documents would be in the
12 exclusive possession of MGA, but nonetheless agreed to search for responsive
13 documents.[24]  Though Mattel has still not located any documents responsive to these
14 Requests, it has supplemented its Responses to make clear it is not withholding
15 responsive documents.[25]  Mattel expects to conclude its searches and produce any
16 further documents it may locate prior to the hearing on this matter.

17
18
_____

19    [21]  Letter from Marshall Searcy to Christopher Chaudoir, dated August 6, 2009,
20 Searcy Dec., Exh. 3.
      [22]  Email from Marshall Searcy to Christopher Chaudoir, dated August 7, 2009,
21 attached as Exhibit 1 to the Declaration of B. Dylan Proctor ("Proctor Dec."), dated
22 August 18, 2009 and filed concurrently herewith.
      [23]  See Email correspondence between B. Dylan Proctor, Christopher Chaudoir,
23 William Molinski and Curran Walker and proposed protocols, Proctor Dec., Exhs.
24 2-14.  In order to attempt to resolve this issue without motion practice, the parties
25 agreed to mulitple extensions of the deadlines for the opposition and reply papers.
   Id.
26    [24]  Letter from Caroline Mankey to Marshall Searcy, dated July 7, 2009, Mankey
27 Dec., Exh. D.
      [25]  Mattel's Supp. Responses, Searcy Dec., Exh. 16.
28

## Argument

### I.  MATTEL HAS ALREADY PRODUCED THE DOCUMENTS IN ITS CUSTODY OR CONTROL AS TO ALL OF THE REQUESTS MGA IDENTIFIED AS DEFICIENT

As provided in Mattel's Responses and Supplemental Responses, and as Mattel informed MGA during the meet and confer process, Mattel has received nearly identical requests in the past, and has searched repeatedly in good faith and produced all responsive documents in its custody, possession or control. Nonetheless, as to each of the Requests that MGA identified as deficient in the meet and confer, Mattel committed to search yet again to determine whether it had any responsive documents that had not yet been either produced or noted on privilege logs, consistent with the parties' practice.  It did so.  Mattel has searched again, in good faith.

For all of MGA's Requests, there is either nothing to compel or Mattel is conducting additional follow up and will produce responsive documents, if any, prior to the hearing on this matter.[26]  Moreover, Mattel has supplemented its Reponses to make it clear that it is not withholding responsive documents.[27]

MGA  seeks to analogize Mattel's responses to those of MGA Mexico, arguing that Mattel, like MGA Mexico, has failed to produce any documents in response to plainly relevant and material requests.  But as MGA knows full well, Mattel has produced tens of thousands of pages of documents in response to nearly identical requests addressed to the support for its Phase 2 contentions.  MGA Mexico, by contrast, has produced nothing at all in response to any requests.

---

[26]  For Request Nos. 66-68 which prematurely seek materials that would be the subject of expert discovery Mattel will produce the appropriate documents at the time called for by the Federal Rules.

[27]  Supp. Responses, Searcy Dec., Exh. 16.

1    Indeed, other than complaining that Mattel has produced nothing, MGA
2  literally cannot point to a single document or category of document which it has
3  reason to believe Mattel is wrongly withholding.  Mattel did, as promised, review its
4  records as to each of the requests MGA identified as deficient.  To date, it has not
5  located any additional responsive documents.  Additionally, Mattel has been
6  conducting further searches for some of MGA's Requests, and Mattel will produce
7  any documents it finds as a result of these searches prior to the hearing on this
8  matter.  If MGA did not know this, it might have simply asked Mattel, rather than
9  assume that Mattel had failed to do what it pledged it would.

10

11  **II.    MGA'S MOTION DIRECTLY CONTRADICTS THE PARTIES'**
12        **AGREEMENT WITH RESPECT TO COMPUTER HARD DRIVES.**

13    With respect to the remaining 11 Requests, all of which relate to
14  computers used by former Mattel employees Vargas, Trueba, Machado, Brisbois
15  and Castilla, the parties' agreed during the meet and confer that Mattel would
16  produce computers assigned to these individuals at the time of their respective
17  resignations from Mattel.[28]   As confirmed in MGA's own letter,  "Mattel has agreed
18  to produce documents sufficient to identify the personal computers assigned to
19  Trueba, Vargas, Machado, Brisbois and Castilla at the time they resigned from
20  Mattel."[29]  MGA additionally stated that "Mattel agrees to produce mirrored images
21  of the hard drives contained in the computers assigned to Trueba, Vargas, Machado,

22

23

24

25    [28]  Letter from Caroline Mankey to Marshall Searcy, dated July 7, 2009, Mankey
26  Dec., Exh. D at 1, 2.
27    [29]  Letter from Caroline Mankey to Marshall Searcy, dated July 7, 2009, Mankey
    Dec., Exh. D at 1.
28

1    Bribois and Castilla at the time of their resignation from Mattel in response to
2    Request Nos. 4, 14, 24, 25 and 48…."[30]

3         MGA now asserts for the first time in its Motion that, with Request
4    Nos. 4, 14, 24-25, and 48, it is seeking a forensic image of *every* computer ever
5    assigned by Mattel to the former Mattel employees named in those Requests.[31]
6    MGA did not indicate during the parties' conferences that it intended to move for
7    such broad discovery.  Under the <u>Federal Rules,</u> MGA has a duty to meet and confer
8    in "good faith", and under the Discovery Master Order, MGA is required to identify
9    for Mattel "each dispute" prior to moving to compel discovery.  <u>Fed. R. Civ. P.</u>
10   37(a); December 6, 2006 Discovery Master Order, Searcy Dec., Exh. 4 at 4.

11        In this context, the Meet and Confer requirement is far more than a
12   formality.  Apparently, MGA's new counsel was dissatisfied with the agreement
13   reached by prior counsel with Mattel.  Such undisclosed dissatisfaction with a
14   compromise does not excuse MGA's meet and confer obligations under either the
15   <u>Federal Rules</u> or the Discovery Master Order.  A motion that not only was never the
16   subject of a meet and confer, but stands in direct contravention of the agreement
17   reached by the parties during their conference, violates both the letter and the spirit
18   of these requirements.  <u>See, e.g.</u>, <u>Robinson v. Potter</u>, 453 F.3d 990, 995 (8th Cir.
19   2006) (affirming denial of motion to compel where movant failed to show the
20   parties met and conferred in good faith); <u>Naviant Marketing Solutions, Inc. v. Larry</u>
21   <u>Tucker, Inc.</u>, 339 F.3d 180, 186-87 (3d Cir. 2003) (motion to compel was properly
22   denied where movant's counsel "failed to make a good faith effort to resolve
23   discovery disputes prior to invoking court intervention.").  MGA's motion should be
24   denied.

25   _____

26   [30]  Letter from Caroline Mankey to Marshall Searcy, dated July 7, 2009, Mankey
27   Dec., Exh. D at 2.
     [31]  Motion at 4.
28

07975/3051455.2

In any event, MGA's motion fails on the merits.  As the Court has held, the party seeking to compel discovery bears the initial burden of establishing that the discovery meets the relevance requirements of <u>Rule</u> 26(b)(1).[32]   <u>Bryant v. Ochoa</u>, 2009 WL 1390794 at *1 (S.D. Cal. 2009) ("The party seeking to compel discovery has the burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)(1)…."]).  But MGA offers little to support its new contention that Mattel is obligated to produce *every* computer ever assigned to former Mattel employees Trueba, Vargas, Machado, Brisbois and Castilla.  Nor could it.  Vargas began working for Mattel in March 2001; all the others began in the 1990's, years before any of the allegations related to their conduct.[33]  Mattel's counterclaims allege that Trueba, Vargas, Machado, Brisbois and Castilla misappropriated Mattel trade secrets in the months prior to their respective resignations from Mattel in 2004.  Nowhere does MGA cite any allegation in its complaint or in Mattel's counterclaims to support the proposition that their hard drives from the prior years they worked at Mattel have any relevance.

Even now, rather than explaining how access to every computer that these employees used over the many years they worked at Mattel could "appear reasonably calculated to lead to the discovery of admissible evidence," MGA offers three explanations that underscore the overbreadth of these requests.  First, MGA

---

[32]  <u>See</u> July 9, 2009 Order Granting in Part Mattel's Motion re Discovery Master Order No. 27, Searcy Dec., Exh. 5 at 4 (as the moving party, "Mattel bears an initial burden of establishing relevancy") (citing <u>Bryant v. Ochoa</u>, 2009 WL 1390794 at *1 (S.D. Cal. 2009).

[33]  Trueba worked for Mattel from November 1997 to April 2004.  Mattel, Inc.'s Third Amended Answer and Counterclaims, dated May 22, 2009, Searcy Dec., Exh. 6 at ¶ 46.  Vargas worked for Mattel from March 2001 to April 2004.  <u>Id.</u> at ¶ 47.  Machado worked for Mattel from April 1997 to April 2004.  <u>Id.</u> at ¶ 45.  Brisbois worked for Mattel from August 1999 to September 2005.  <u>Id.</u> at ¶¶ 89, 91.  Castilla worked for Mattel from November 1999 to March 2006.  <u>Id.</u> at ¶¶ 78-79.

claims that the computers will "evidence the nature and extent of Mattel's trade secrets...."[34]  Next, MGA claims the computers "may...provide evidence disproving that the claimed trade secrets were, in fact, legally protectable...."[35]  Finally, MGA claims that the computers "may reveal that Mattel has used or benefited from the use of trade secret information taken from other companies...."[36]  Aside from such vague, conclusory speculation, MGA offers no explanation of relevance other than a brisk, two-sentence pronouncement that "[a]ll of the Requests seek information directly related to Mattel's trade secret misappropriation claims.  The information sought by these interrogatories [sic] is essential to MGA's defense of Mattel's claims."[37]  MGA fails to show how information on every drive used during the years prior to the employees' departures relates to these broad subjects, and no amount of guesswork on MGA's part can justify rifling Mattel's electronic drawers.  As the previous Discovery Master has held, a party may not propound document requests as part of a fishing expedition or to discover new claims.[38]  Rivera v. NIBCO, Inc., 364 F.3d 1057, 1072 (9th Cir. 2004) ("District courts need not condone the use of discovery to engage in 'fishing expeditions.'").  As MGA has itself successfully argued, it should be required to submit discovery requests targeted at these categories of information, not requests seeking to search the entirety of every single hard drive.[39]

---

[34]  Motion at 4:18-19.
[35]  Motion at 4:20-21.
[36]  Motion at 4:24-25.
[37]  Motion at 10:1-3.
[38]  See Order Granting In Part and Denying In Part Mattel's Motion for Protective Order re Polly Pocket, dated April 19, 2007, at 5:10-18, Proctor Dec., Exh. 18.
[39]  Phase 2 Discovery Matter Order No. 34, Searcy Dec., Exh. 7 at 9-11.

1
2

## III.   MGA SEEKS TO COMPEL PRODUCTION FOR 22 REQUESTS IT NEVER EVEN IDENTIFIED AS DEFICIENT

3
4
5
6
7
8
9
10
11

In its Separate Statement, MGA includes within the 63 Requests it identifies as the subject of its Motion[40] twenty-two requests that it identifies as deficient for the first time in its moving papers.  Specifically, Request Nos. 1-2, 34, 37-40, 42-46, 52-60 and 64 were neither identified in MGA's letter listing purportedly unsatisfactory Requests, discussed during either of the parties' conferences, nor identified in MGA's letter to Mattel confirming the results of the parties' first conference.[41]  In the Notice of Motion itself, MGA  includes not only these twenty-two requests, but six more as well, which are not even mentioned in the Separate Statement.[42]

12
13
14
15
16
17
18
19
20

Under Fed. R. Civ. P. 37(a), MGA was required to meet and confer with Mattel in "good faith" regarding these Requests prior to filing a motion to compel.  Likewise, the December 6, 2006 Discovery Master Order entered in this case requires that, before filing a motion to compel, a "party shall first identify *each dispute*, state the relief sought, and identify the authority supporting the requested relief in a meet and confer letter…."[43]  MGA satisfied none of these requirements before filing its motion.  MGA fail to identify "each dispute[d]" Request, much less make clear why it thought Mattel's response to be deficient.  Had MGA complied with its meet and confer obligations, Mattel would have informed MGA that Mattel

21

---

22
23

[40]  Separate Statement in Support of MGA Entertainment, Inc.'s Motion to Compel Further Responses to MGA's First Set of Phase 2 Requests for Production and for Production of Documents ("Separate Statement"), at 1:11-14.

24
25

[41]  Letter from Caroline Mankey to Marshall Searcy, dated July 1, 2009, Mankey Dec., Exh. C passim; Letter from Caroline Mankey to Marshall Searcy, dated July 7, 2009, Mankey Dec., Exh. D passim.

26

[42]  See Notice of Motion at 1:9-12.

27

[43]  Stipulation and Order dated December 6, 2006 ("Discovery Master Order"), Searcy Dec., Exh. 4.

28

has conducted a good faith search for responsive documents and has found no documents responsive to these requests that have not either been produced already or properly logged on a privilege log.[44]  The current motion is not only improper, but totally unnecessary.

## IV.  MATTEL IS NOT REQUIRED TO LOG COMMUNICATIONS AFTER APRIL 27, 2004

Without citing any authority, MGA claims that Mattel's privilege objection is waived by Mattel's supposed failure to produce a privilege log. Pursuant to the parties' agreement, privileged communications post-dating the lawsuit generally need not be put on the privilege log.[45]  In fact, MGA itself represented that that was the parties' agreement in previous motion practice before the Discovery Master,[46] and the former Discovery Master noted that it is "standard practice to use the date the lawsuit was filed as the cut-off for logging items on a privilege log."[47]  The reason for this agreement is that the number of privileged communications that post-date the lawsuit is quite large, likely running into the tens or hundreds of thousands.[48]  Logging such communications would be incredibly burdensome[49] for both parties, and is not required under the Federal Rules.  Fifty-Six Hope Road Music, Ltd. v. Mayah Collections, Inc., 2007 WL 1726558, *8 (D. Nev. 2007) ("If, as Plaintiffs claim, emails regarding such communications are in

---

[44]  See Mattel's Responses, Chaudoir Dec., Exh. 2 at Request Nos. 1-2, 34, 37-40, 42-46, 52-60 and 64.

[45]  See Order Denying Mattel's Motion for Protective Order Limiting the Temporal Scope of its Privilege Log, dated May 6, 2008, at 2:20-3:2, Searcy Dec., Exh. 11.

[46]  Id.

[47]  Id. at 4:3-4.

[48]  Searcy Dec., ¶ 5.

[49]  Id.

the hundreds or thousands, requiring Plaintiffs to provide a privilege log for each privileged email communication would be unduly burdensome and not serve the legitimate purposes of discovery under <u>Fed. R. Civ. P.</u> 26."); <u>In re Imperial Corp. of America</u>, 174 F.R.D. 475, 479 (S.D. Cal. 1997) ("[W]hen the legislature enacted <u>Fed. R. Civ. P.</u> 26(b)(5), it expressly recognized that there are circumstances in which a document-by-document privilege log would be unduly burdensome and inappropriate."); <u>Fed. R. Civ. P.</u> 26(b)(5) advisory committee note, 1993 Amendments ("[<u>Rule 26</u>] does not attempt to define for each case what information must be provided when a party asserts a claim of privilege or work produce protection. Details concerning time, persons, general subject matter, etc. may be appropriate if only a few items are withheld, *but may be unduly burdensome when voluminous documents are claimed to be privileged or protected*….") (emphasis added).

Mattel filed its initial complaint on April 27, 2004.[50]   Thus, communications post-dating April 27, 2004 need not be logged. MGA's claim that Mattel's privilege objections were waived by its failure to produce a privilege for communications post-dating April 27, 2004 is without merit. With respect to any responsive communications pre-dating the lawsuit, Mattel has served a privilege log.[51]

## V.   <u>MATTEL PROPERLY RESERVED ITS RIGHT TO SUPPLEMENT ITS RESPONSES</u>

MGA argues that "Mattel's expert disclosure objection is without support,"[52] but Mattel has properly reserved its right to supplement its responses

---

[50]  <u>Id.</u> at 2:1.
[51]  <u>See</u> Mattel's Privilege Log, dated March 7, 2008, Searcy Dec., Exh. 14.
[52]  Motion at 11:8.

based on expert discovery.  New Haven Temple SDA Church v. Consolidated Edison Corp., 1995 WL 358788, at *5 (S.D.N.Y. June 13, 1995) (sustaining objections to interrogatory because "[t]o the extent that the theories of damages applicable to these claims may be related to the damages sought by plaintiff's fourth claim, the interrogatory is premature"); Ziemack v. Centel Corp., 1995 WL 729295, at *2-3 (N.D. Ill. Dec. 7, 1995) (granting motion to compel interrogatory responses but noting that "this Court does not expect Plaintiffs to address the issues that will be more appropriately dealt with by experts, at a later date" and "since experts have not been either retained or deposed, much of the remaining discovery is also premature.").  Indeed, the Discovery Master so ruled previously in connection with virtually identical objections asserted by MGA.[53]

Request Nos. 66-68 go to Mattel's damages theory.  Specifically, they seek the following:

**Request No. 66:**  All DOCUMENTS REFLECTING any damage, loss or injury caused to MATTEL by reason of any alleged misappropriation by MGA of any of MATTEL'S alleged trade secrets, except for any BRATZ INJUNCTION EXHIBITS, that YOU allege in YOUR COUNTERCLAIMS.

**Request No. 67:**  All DOCUMENTS REFLECTING any damage, loss or injury caused to MATTEL by reason of any violation of the Racketeer Influenced and Corrupt Organization Act that YOU allege in the Second Counterclaim of YOUR COUNTERCLAIMS.

---

[53] See Order Granting in Part and Denying in Part Mattel's Motion to Compel Responses To Interrogatory Nos. 27-44 and 46-50 By The MGA Parties, dated February 15, 2008, Searcy Dec., Exh. 15 at 13:8-9 ("That the interrogatory responses include a reservation of rights to supplement during expert discovery does not render the responses inherently improper or inadequate.").

1  **Request No. 68:**   All DOCUMENTS REFLECTING any other

2  damage, loss or injury caused to MATTEL by reason of any act or

3  omission alleged in those of MATTEL'S COUNTERCLAIMS being

4  tried in PHASE 2.

5  A causation analysis is required to respond to requests such as these,

6  and causation is an area suited for expert analysis.  See <u>American Booksellers Ass'n,

7  Inc. v. Barnes & Noble, Inc.</u>, 135 F.Supp.2d 1031, 1042 (N.D. Cal. 2001) ("only

8  expert testimony can demonstrate that any injury to plaintiffs was caused by

9  defendants' unlawful conduct"); <u>see also</u> <u>Cabrera v. Cordis Corp.</u>, 134 F.3d 1418,

10  1423 (9th Cir. 1998) (affirming grant of summary judgment in product liability

11  action because without expert testimony, plaintiff "could not prove causation or

12  liability"); <u>Claar v. Burlington Northern R. Co.</u>, 29 F.3d 499, 504 (9th Cir. 1994)

13  (expert testimony necessary to establish causation required by FELA); <u>Sanderson v.

14  International Flavors and Fragrances, Inc.</u>, 950 F.Supp. 981, 985 (C.D. Cal. 1996)

15  (expert testimony required to establish causation in personal injury action).  Because

16  expert analyses are not yet due,  Mattel has properly reserved its right to supplement

17  its responses.

18

19  **VI.    THE IMPOSITION OF SANCTIONS AGAINST MATTEL IS**

20  **UNWARRANTED**

21  MGA cursorily states, without citing any legal authority, that Mattel

22  should be sanctioned for supposedly broken promises and unfulfilled discovery

23  obligations.  Sanctions against Mattel are not justified under any standard.  <u>See Fed.

24  R. Civ. P.</u> 37(a)(5) (monetary sanctions are appropriate only if (1) the movant has

25  made a good faith effort to obtain the disclosure or discovery without court action;

26  (2) the losing party was not substantially justified in making or opposing the motion;

27  (3) other circumstances do not make an award of expenses unjust).  At no point did

28  Mattel unreasonably refuse to produce documents.  Rather, as memorialized in

07975/3051455.2

-15-

MGA's own letters, Mattel agreed to search yet further for responsive documents, which Mattel did.  MGA's motion was thus not substantially justified.  If MGA had merely inquired as to the results of Mattel's searches before filing its motion, Mattel would have informed MGA that it has already produced the responsive documents in its custody, possession or control.

## **Conclusion**

For the reasons set forth above, and in Mattel's Opposition to MGA's Separate Statement, MGA's Motion should be denied.

DATED: August 18, 2009            QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP


By/s/ Marshall M. Searcy III
Marshall M. Searcy, III
Attorneys for Mattel, Inc.