EXHIBIT 7

1  Robert C. O'Brien (SBN 154372)
   ARENT FOX LLP
2  555 West Fifth Street, 48th Floor
   Los Angeles, CA  90013-1065
3  Telephone:  213.629.7400
   Facsimile:   213.629.7401
4  obrien.robert@arentfox.com

5  Discovery Master

6

7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                    EASTERN DIVISION

11

12  CARTER BRYANT, an individual,      Case No.  CV 04-09049 SGL (RNBx)

13              Plaintiff,

14        v.                           Consolidated with
                                       Case No. CV 04-09059
15  MATTEL, INC., a Delaware           Case No. CV 05-2727
    corporation,
16                                     **PHASE 2 DISCOVERY MATTER**
              Defendant.
17                                     **ORDER NO. 34, REGARDING:**

18                                     **MOTION TO COMPEL
                                       PRODUCTION OF HARD DRIVES
19                                     FROM COMPUTERS USED BY
                                       ISAAC LARIAN AFTER
20                                     FEBRUARY 27, 2008**

21  CONSOLIDATED WITH
    MATTEL, INC. v. BRYANT and
22  MGA ENTERTAINMENT, INC. v.
    MATTEL, INC.
23

24

25

26

27

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

                                              ORDER NO. 34
                              [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT  7  PAGE 136

1    This Order sets forth the Discovery Master's ruling on the Motion to Compel

2    Production of Hard Drives from Computers used by Isaac Larian after February 27,

3    2008, for Supplemental Inspection filed by Mattel, Inc. ("Mattel") (the "Motion")

4    [Docket No. 5267].

5        The Discovery Master, having considered the papers filed in support of and

6    in opposition to the Motion, and having determined that oral argument is not

7    necessary, rules as set forth below.

8    **I.    FACTUAL BACKGROUND**

9        The present Motion addresses whether Isaac Larian ("Larian") is required to

10   produce for inspection certain hard drives he has used since February 27, 2008.

11       **A.    Document Request No. 222**

12       On or about June 13, 2007, Mattel served its First Set of Requests for

13   Documents and Things on Larian, which included Request No. 222 (the

14   "Request"). (Declaration of Marshall M. Searcy III in Support of the Motion

15   ("Searcy Decl."), Ex. 1 at p. 54). The Request asks Larian to produce for

16   inspection "Each STORAGE DEVICE that YOU have used to create, prepare,

17   generate, transmit, receive, delete or modify any DIGITAL INFORMATION

18   RELATING TO BRATZ, ANGEL or BRYANT."[1] (*Id.*)

19       **B.    The Prior Discovery Master's December 31, 2007 Order**

20       Claiming that the Request was overbroad, unduly burdensome, duplicative

21   and violated his privilege and privacy rights, Larian refused to produce any Hard

22   Drives[2] to Mattel. (*Id.*, Ex. 17 at p. 16). Mattel then moved to compel a response

23

24   [1] Mattel also references Request No. 225 in its Motion, (Motion, p. 1 and fn. 2), which asks Larian to produce for inspection "[e]ach STORAGE DEVICE that BRYANT has used to create, prepare, receive, generate, copy, transmit, receive,

25   delete or modify any DIGITAL INFORMATION RELATING TO BRATZ, ANGEL or MGA." (Search Decl., Ex. 1 at p. 55). However, Request No. 225 is not at issue, since Mattel only seeks to compel additional inspection of

26   *Larian's* hard drives in the present Motion. (Notice of Motion, p. 1 [Mattel "move[s] for an order compelling Isaac Larian ('Larian') to produce for inspection any hard drives and other storage devices . . . within his possession,

27   custody or control that were connected to any computer used by Isaac Larian since February 27, 2008 . . ."]).

28   [2] As used herein, "Hard Drives" refers to all "STORAGE DEVICES" as that term is defined in connection with the Request.

EXHIBIT 7 PAGE 137

1   to the Request on October 11, 2007. (Searcy Decl., Ex. 2). The prior discovery
2   master denied the motion on December 31, 2007, reasoning as follows:

3          With respect to Request No. 222, Larian correctly notes
4          that Rule 34 was not intended to authorize the routine
5          production of a party's electronic devices. Mattel
6          attempts to justify Request No. 222 by pointing to various
7          instances of alleged destruction of evidence . . . However,
8          Mattel fails to explain how these alleged instances of
9          evidence destruction justify Request No. 222, other than
10         to assert that it has a right to inspect Larian's storage
11         devices to ensure that relevant information has not been
12         deleted or permanently destroyed. Mattel's stated
13         purpose suggests instead that Mattel is launching a fishing
14         expedition in pursuit of new claims, which is not
15         permitted by the Federal Rules of Civil Procedure.
16         [Citation]. Furthermore, Mattel's stated purpose for
17         inspecting Larian's storage devices does not justify the
18         breadth of Request No. 222. Among other things,
19         Request No. 222 encompasses every storage device that
20         Larian has used to copy digital information relating to
21         Bratz. Mattel does not need every CD and DVD
22         containing copies of Bratz-related video and audio
23         content, but that is what the request seeks. Request No.
24         222 is also duplicative because it requests information
25         that is sought in numerous other requests served on Larian
26         as well as MGA. Mattel has served hundreds of requests
27         for documents and communications relating to Bratz,
28         Angel, and Bryant. To comply with the requests, Larian

EXHIBIT ___7 PAGE __138

1     was required to search for documents in both hard-copy

2     and electronic form.  Under the circumstances, it is

3     unnecessary for Larian to also produce the requested

4     storage devices.

5   (*Id.*, Ex. 17 at p. 17).

6       **C.   The Court's February 27, 2008 Order**

7       Thereafter, Mattel filed a Motion Objecting to Portions of the Discovery

8   Master's December 31, 2007 Order, including challenging the ruling regarding the

9   Request.  (*Id.*, Ex. 18).  On February 27, 2008, the Court overruled the prior

10  discovery master's ruling ("February 27, 2008 Order").  (*Id.*, Ex. 19 at p. 2).

11  Specifically, the Court found that the decision was "clearly erroneous and contrary

12  to law" because "[d]estruction of evidence on hard drives is relevant to Mattel's

13  claims, including specific predicate acts alleged in Mattel's RICO counterclaims."

14  (*Id.*).  Consequently, the Court ordered Larian to produce the following:

15        All hard drives from, or that were at any time connected

16        to, any computer used by . . . Isaac Larian . . . at any time

17        from 1999 to the present and that contain or previously

18        contained any digital information referring or relating to

19        Bratz, Angel . . . or Bryant (as those terms are defined in

20        Mattel's Request[]).

21  (*Id.*).

22      **D.   Larian's Compliance With The Court's February 27, 2008 Order**

23      On or about April 22, 2008, Larian and Mattel entered into a written

24  agreement setting forth a protocol for Mattel's consultant to inspect Larian's Hard

25  Drives ("Letter Agreement").  (*Id.*, Ex. 25).  Among other things, the Letter

26  Agreement stated that Mattel's consultant would "not access the user generated

27  content of any active file that exists on the hard drive."[3]  (*Id.*, Ex. 25 at p. 3 of the

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

---

[3] An active file is one that is currently available for use on a hard drive or other storage device.

- 3 -                           ORDER NO. 34
                    [Case No. CV 04-09049 SGL (RNBx)]

**EXHIBIT 7 PAGE 139**

1    letter).

2           Approximately two months after the parties entered into the Letter

3    Agreement, Larian produced all pre-February 28, 2008 Hard Drives responsive to

4    the Request and permitted them to be inspected and forensically imaged.  (Motion,

5    p. 3).

6           **E.     Larian Refuses To Supplement His Prior Production**

7           On or about March 18, 2009, Mattel requested that Larian supplement his

8    production of Hard Drives and permit the supplemental inspection of all Hard

9    Drives he has used since February 27, 2008.  (Searcy Decl., Ex. 20 at p. 1).  Larian,

10   acting through his counsel, responded that he had "fully complied" with the Court's

11   February 27, 2008 Order and that "there is no nexus between the information

12   currently on [his] hard drives and the Phase 2 claims . . ."  (*Id.*).

13   **II.   RELIEF SOUGHT BY MATTEL**

14          In its Motion, Mattel requests that "Larian be compelled to produce all

15   unproduced hard drives within his possession, custody or control for supplemental

16   inspection by Mattel's consultant."  (Motion, p. 17).  Mattel further seeks an order

17   permitting the "inspection of all relevant, non-privileged documents and

18   information, including 'active' user generated files and documents and information

19   recovered by [its] experts."  (*Id.*).

20   **III.  LARIAN'S OPPOSITION**

21          Larian opposes Mattel's Motion on five grounds.  First, Larian argues that

22   the Motion seeks information that is not relevant to any Phase 2 issue because there

23   is no allegation in Mattel's Second Amended Answer and Counterclaims ("SAAC")

24   regarding ongoing destruction of evidence.  (Opposition, pp. 3 and 12 – 13).

25   Second, Larian argues that Mattel should not be permitted to engage in a fishing

26   expedition to uncover evidence of alleged financial fraud, since the Request does

27   not seek such information and the SAAC contains no allegations of such

28   wrongdoing.  (*Id.*, p. 15).  Third, Larian argues that he has no duty to supplement

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 4 -

ORDER NO. 34
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 7   PAGE 140

1   his response because he "fully complied with the Court's February 27, 2008

2   Order . . ." (*Id.*, pp. 3; *see also id.* at pp. 11 – 12). Fourth, Larian argues that

3   "Mattel improperly asks the Discovery Master to expand the scope of [the Court's]

4   prior Order to allow Mattel unrestricted access to the content of information on

5   [his] hard drives, including access to 'active files' on the hard drives, which have

6   no relevance to any purported allegations of evidence destruction." (*Id.*, p. 4

7   [emphasis omitted]; *see also id.* at pp. 13 – 16). Finally, Larian argues that he

8   "should not be subjected to the burden and wholesale invasion of his privilege and

9   privacy rights that would result from producing his personal computer hard drives,

10  particularly when the same information may be obtained through a simple

11  document request."[4] (*Id.*, p. 4; *see also id.* at p. 14).

12       Larian also seeks an award of sanctions against Mattel's counsel "for

13  improperly asking the Discovery Master to revisit and expand the scope of [the

14  Court's] prior Order with respect to Request No. 222 . . ." (*Id.*, pp. 16 – 17).

15  **IV.    ANALYSIS**

16       The present Motion raises two basic questions: (1) does Larian have a duty

17  to supplement his previous production concerning the Request, and (2), in the event

18  a supplemental production is required, may active files be accessed by Mattel's

19  consultant during his or her inspection? Each of these questions is addressed

20  below.

21  //

22  //

23  //

24

25  [4] Larian also argues that Mattel has misrepresented the facts regarding whether any spoliation of evidence has
    occurred in the past and that Mattel's failure to call the consultant who conducted the inspection of Larian's Hard
26  Drives in Phase 1 to testify at trial demonstrates that no spoliation took place. (Opposition, pp. 8 – 11). The question
    before the Discovery Master, however, is whether the Request relates to a Phase 2 claim or defense, not whether
27  Larian has (or has not) engaged in spoliation of evidence as a matter of fact. Therefore, the Discovery Master does
    not accept or reject Mattel's allegations of spoliation. Nor do I accept or reject Larian's disputation of those
28  allegations.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 5 -                                    ORDER NO. 34
                                         [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT __7__ PAGE |41|

**A.  Federal Rule Of Civil Procedure 26 Requires Larian To Supplement His Prior Production**

    **1.  Hard Drives That Larian Has Used Since February 27, 2008 Relate To Phase 2 Issues**

With respect to the first question, the Court's February 27, 2008 Order found that "[d]estruction of electronic evidence on hard drives is relevant to Mattel's claims, including specific predicate acts alleged in Mattel's RICO counterclaims." (February 27, 2008 Order at p. 2).   Based on that finding, the Court ordered Larian to produce all Hard Drives used by him "from 1999 to the present." (*Id.*).  Larian construes this holding by the Court to mean that information currently contained on Hard Drives used by him after February 27, 2008 is not relevant to Mattel's Phase 2 claims since, according to him, there are no allegations that the actions alleged in Mattel's RICO claims are continuing and his only obligation with respect to the Request was to produce Hard Drives from 1999 to February 27, 2008 (i.e., the date the February 27, 2008 Order was issued by the Court).  (Opposition, p. 12).  This argument is unpersuasive for two reasons.

First, the plain language of the SAAC alleges that the conduct of each criminal RICO enterprise alleged therein is continuing.  Specifically, Paragraph 92 of the SAAC alleges that "[t]he conduct of each enterprise continues through the date of this [SAAC] and is *ongoing* . . ."  (SAAC, ¶ 92 [emphasis added]).  Similarly, Paragraph 93 of the SAAC alleges that the pattern of racketeering activity "extends, up to and *beyond* the date of this" SAAC and includes "repeated acts of . . . destroying electronic and other evidence, including by destroying evidence previously contained on . . . Isaac Larian's computer hard drives." (*Id.*, ¶ 93 [emphasis added]).

Second, Larian's argument that the SAAC does not allege ongoing destruction of evidence has already been implicitly, if not expressly, rejected by the Court.  If Larian were correct that the SAAC "only alleges prior acts of purported

EXHIBIT 7 PAGE 142

1   evidence destruction," (Opposition, p. 12), the Court would have limited any

2   production of Hard Drives to the date the SAAC was filed (i.e., July 12, 2007).

3   However, the Court held that Larian had to produce all Hard Drives he used "from

4   1999 to the present [i.e., up through and including February 27, 2008]." (February

5   27, 2008 Order at p. 2). Because the February 27, 2008 Order already required

6   Larian to produce Hard Drives that he used months after the SAAC was filed,

7   Larian's argument that the SAAC does not allege continuing destruction of

8   evidence is inconsistent with the Court's previous ruling and must be rejected.[5]

9           **2.      The Starting Point For Determining Whether Any**

10                    **Supplementation Is Required Is The Request, Not The**

11                    **Court's February 27, 2008 Order**

12          Larian next argues that he has no duty to supplement his prior production

13   because it was not incomplete or incorrect in any respect. (Opposition, p. 12).

14   Specifically, Larian contends that he fully complied with the Court's

15   February 27, 2008 Order by producing all Hard Drives that he used between 1999

16   and the date the order was issued (i.e., February 27, 2008). (*Id.*, pp. 3 and 11 – 12).

17   The problem with this argument, however, is that it ignores the starting point for

18   determining whether any supplemental production is required.

19          The issue is not whether Larian has fully complied with the *February 27,*

20   *2008 Order* but rather whether Larian is required to supplement the *discovery*

21   *response* in question (i.e., the Request). If Larian has used Hard Drives since

22   February 27, 2008 (and he does not dispute that he has done so), then there is

23   evidence in existence that renders his response to the Request incomplete.

24   Therefore, in the absence of some other valid objection, Larian must supplement his

25   production regarding the Request under Federal Rule of Civil Procedure 26. (Fed.

26

27   ───────────────
     [5] Larian also argues that the Request is not relevant to any allegation of ongoing financial fraud. (Opposition, p. 15).
28   The Discovery Master need not address this argument because the Request has been determined to be relevant to
     Mattel's RICO claims.

EXHIBIT 7 PAGE 143

1    R. Civ. P. 26(e)(1)(A) [stating that the duty to supplement or correct a response

2    arises "if the party learns that in some material respect the . . . response is

3    incomplete or incorrect"]).

4        **3.    The Court's February 27, 2008 Order Does Not Exempt**

5             **Larian From Having To Comply With Federal Rule Of Civil**

6             **Procedure 26**

7        Larian's final argument against supplementation is that the Court's

8    February 27, 2008 Order somehow displaced the obligations he had to supplement

9    incomplete discovery responses under Rule 26.  (Opposition, p. 11).  Yet there is no

10   indication anywhere in the February 27, 2008 Order that the Court intended to

11   make Larian exempt from the requirements imposed by Rule 26.  In fact, the

12   February 27, 2008 Order never mentions Rule 26 at all, let alone indicates that

13   Larian need not comply with his duty to supplement going forward.  Nor is there

14   any reason to read such a limitation into the February 27, 2008 Order, since Larian

15   has not cited any legal authority, and the Discovery Master is aware of none,

16   supporting the proposition that a party need not supplement its discovery responses

17   based upon an order that simply requires the production of data for inspection

18   without referencing Rule 26.   Therefore, contrary to Larian's assertion, the

19   February 27, 2008 Order did not remove his duty to supplement his response to the

20   Request and he must fulfill that obligation now.

21       **B.    Mattel's Consultant May Not Access Active Files**

22       Having concluded that Larian must supplement his prior production of Hard

23   Drives and permit them to be inspected pursuant to Rule 26, the Discovery Master

24   now turns to the permissible scope of Mattel's inspection.

25       As explained above, Mattel argues that it "should be allowed to inspect all

26   relevant, non-privileged documents and information, including 'active user'

27   generated files . . . recovered by [its] experts."  (Motion, pp. 4 fn. 10 and 17; Reply,

28   pp. 9 – 11).  Mattel asserts that it is entitled to such information because the

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 8 -                         ORDER NO. 34
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 7 PAGE 144

1   February 27, 2008 Order "specifically stated that Mattel's expert 'shall have the

2   right to inspect any and all information on said hard drive to determine' whether

3   there was evidence of spoliation or attempted spoliation." (Reply, p. 10). This

4   argument is unpersuasive for four reasons, each of which is sufficient by itself to

5   justify denying Mattel's request.

6         First, contrary to Mattel's assertion, the Court did not give Mattel

7   unrestricted access to the content of Larian's Hard Drives in its February 27, 2008

8   Order. On the contrary, the Court expressly limited the scope of the inspection to

9   determining whether any electronic evidence had been destroyed. Indeed, after it

10   stated that a consultant of Mattel's choosing would be allowed to make forensically

11   sound images of each Hard Drive used by Larian and would be permitted "the right

12   to inspect any and all information on said hard drive," the Court immediately

13   qualified its statement. (Searcy Decl., Ex. 19 at pp. 2 – 3). Specifically, the

14   February 27, 2008 Order declared that Mattel's forensic expert will have:

15               the right to inspect any and all information on said hard

16               drive to determine:  (a) whether, when, and by whom any

17               information was deleted, destroyed, written over, lost,

18               exported, moved, spoliated or otherwise rendered

19               inaccessible or unreadable; (b) whether, when and by

20               whom any attempts were made to delete, destroy, write

21               over, export, move, spoliate or otherwise render

22               inaccessible or unreadable any information on those hard

23               drives; (c) the current or past presence or use of any

24               hardware or software tool to accomplish any of the

25               actions identified above; (d) whether any information

26               deleted, destroyed, written over, lost, exported, moved,

27               spoliated or otherwise rendered inaccessible or unreadable

28               may be recovered; and (e) to recover any such

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

-9-

ORDER NO. 34
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 7  PAGE 145

1     information, in whole or in part.

2 (*Id.*). Because the Court expressly limited the inspection to determining whether

3 anyone had "deleted, destroyed, written over, lost, exported, moved, spoliated or

4 otherwise rendered inaccessible or unreadable" any information on the Hard Drives

5 and whether any such information was recoverable, there is no connection between

6 Mattel's claim that it is entitled to view *active files* and the inspection permitted by

7 the Court relating to *deleted files*. By definition, an active file is one that is still in

8 existence. Conversely, a file that has been destroyed is not accessible unless it can

9 somehow be recovered. Therefore, the plain language of the February 27, 2008

10 Order precludes Mattel from accessing active files on the Hard Drives, because they

11 are not within the scope of the inspection authorized by the Court.[6]

12   Second, there has been no showing by Mattel that all of the active files that it

13 seeks to access are relevant to Phase 2 issues. What Mattel is essentially requesting

14 is that it should be allowed to access any content on the Hard Drives whether or not

15 those active files have any relevance to a claim or defense in this case. In the

16 absence of a showing that all active files on the Hard Drives are reasonably

17 calculated to lead to the discovery of admissible evidence regarding a Phase 2 issue,

18 the Discovery Master concludes that Mattel's request is overbroad and improperly

19 seeks to discover irrelevant information.

20   Third, the Discovery Master finds that Mattel does not have the right to rifle

21 through Larian's electronic files looking for unspecified information. As Larian

22 persuasively argues, "Mattel has the right to ask [Larian] to produce specific [non-

23 privileged, relevant] documents; it does not have the right to go into [his] electronic

24 'drawers' to see what is there." (Opposition, p. 2). Because that is precisely the

25

26 [6] Mattel's request to inspect the active files on Larian's Hard Drives is also inconsistent with the Letter Agreement entered into by the parties on April 22, 2008. In relevant part, the Letter Agreement states that Mattel's consultant "shall not access user generated content of any active file that exists on the hard drives." (Searcy Decl., Ex 25 at p. 3 of the letter). The fact that Mattel's counsel agreed to this protocol following the issuance of the Court's February 27, 2008 Order suggests that even Mattel realizes the February 27, 2008 Order was not designed to allow it access to active files on the Hard Drives.

27

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 10 -

ORDER NO. 34
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT __7__ PAGE __146__

1  relief Mattel seeks, its request must be denied.

2         Finally, allowing Mattel unrestricted access to active files on the Hard Drives

3  would improperly permit it to discover attorney-client privileged information that

4  Larian alleges exists on those storage devices.  Indeed, if Mattel is given access to

5  all active files on the Hard Drives, the Discovery Master cannot see how Larian can

6  protect his privileged information.  This is true despite Mattel's statement that it

7  should only be "allowed to inspect all relevant, non-privileged documents and

8  information," because there is not a mechanism in place that would protect Larian's

9  privileged files from disclosure.  Even assuming it is technologically possible to

10  encrypt all active files that contain privileged information so that they may not be

11  accessed by Mattel's consultant, Larian should not be burdened with undertaking

12  such a task because there are less intrusive means by which Mattel could obtain

13  non-privileged, relevant documents, namely through document requests.

14      **C.**    **Summary Of Ruling Regarding The Motion**

15         The Discovery Master finds that Larian must supplement his prior production

16  of Hard Drives pursuant to Federal Rule of Civil Procedure 26.  However, in

17  conducting the inspection of any additional Hard Drives produced by Larian,

18  Mattel's consultant may not access any active files.

19      **D.**    **Larian's Request For Sanctions**

20         Having determined that Mattel advanced some meritorious arguments and

21  prevailed with respect to certain aspects of its Motion, the Discovery Master denies

22  Larian's request for sanctions.

23  **V.**   **DISPOSITION**

24      A.    The Motion is **GRANTED in part** and **DENIED in part,** as follows:

25         1.    Larian shall make available within forty-five (45) days of this

26  Order the following hard drives that are in his possession, custody or control:  All

27  Hard Drives from, or that were at any time connected to, any computer used by him

28  at any time from February 28, 2008 to the present and that contain or previously

EXHIBIT 7 PAGE 147

1  contained any digital information referring or relating to Bratz, Angel, or Bryant (as

2  those terms are defined in the Request).

3      2.    A consultant of Mattel's choosing, whom Mattel will identify

4  before the inspection, shall be allowed to inspect each of the Hard Drives produced

5  in connection with the preceding Paragraph. Mattel's consultant shall be allowed to

6  make a forensically sound image of each hard drive produced. The inspection may

7  take place at a location of Larian's choosing in this District, so long as the

8  minimum requirements necessary to inspect and create a forensically sound image

9  of the produced hard drives. A consultant of Larian's choosing, whom Larian will

10  identify before the inspection, shall be allowed to observe the inspection and

11  imaging of the hard drives.

12      3.    Mattel's consultant shall have the right to inspect any and all

13  information on the produced Hard Drives to determine: (a) whether, when, and by

14  whom any information was deleted, destroyed, written over, lost, exported, moved,

15  spoliated or otherwise rendered inaccessible or unreadable; (b) whether, when and

16  by whom any attempts were made to delete, destroy, write over, export, move,

17  spoliate or otherwise render inaccessible or unreadable any information on those

18  hard drives; (c) the current or past presence or use of any hardware or software tool

19  to accomplish any of the actions identified above; (d) whether any information

20  deleted, destroyed, written over, lost, exported, moved, spoliated or otherwise

21  rendered inaccessible or unreadable may be recovered; and (e) to recover any such

22  information, in whole or in part.

23      4.    In conducting the above inspection regarding deleted files,

24  Mattel's consultant shall not access the user generated content of any active file that

25  //

26  //

27  //

28  //

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 12 -

ORDER NO. 34
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 7 PAGE 148

1    exists on the Hard Drives.

2          B.      Larian's request for sanctions is **DENIED**.

3    Dated:      May 18, 2009

4

5                                        By:      /s/ Robert C. O'Brien

6                                                 ROBERT C. O'BRIEN
                                                 Discovery Master
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT 7 PAGE 149

EXHIBIT 8



1  Robert C. O'Brien (SBN 154372)
   ARENT FOX LLP
2  555 West Fifth Street, 48th Floor
   Los Angeles, CA  90013-1065
3  Telephone:  213.629.7400
   Facsimile:   213.629.7401
4  obrien.robert@arentfox.com

5  Discovery Master

6

7

8                 UNITED STATES DISTRICT COURT

9                 CENTRAL DISTRICT OF CALIFORNIA

10                        EASTERN DIVISION

11

12  CARTER BRYANT, an individual,        Case No.  CV 04-09049 SGL (RNBx)

13            Plaintiff,
                                         Consolidated with
14        v.                             Case No. CV 04-09059
                                         Case No. CV 05-2727
15  MATTEL, INC., a Delaware
    corporation,                         **PHASE 2 DISCOVERY MATTER**
16
            Defendant.                   **ORDER NO. 45, REGARDING:**
17
                                             **HEARING DATES FOR NEW**
18                                           **DISCOVERY MATTERS**

19

20
    CONSOLIDATED WITH
21  MATTEL, INC. v. BRYANT and
    MGA ENTERTAINMENT, INC. v.
22  MATTEL, INC.

23

24

25

26

27

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

                                         ORDER NO. 45
                            [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT __8__ PAGE _150_

1    The following discovery matters are set for hearing on the dates specified

2  below at the offices of Arent Fox LLP:

3  **August 19, 2009 at 10:00 a.m.**

4    1.    Motion for Issuance of Letters of Request for Vargas and Trueba filed

5  by Mattel, Inc. on or about July 22, 2009; Request for Amendment of Letters of

6  Request for Vargas and Trueba filed by MGA Entertainment, Inc. on or about July

7  29, 2009.[1]

8  **August 27, 2009 at 10:00 a.m.**

9    1.    Motion For Additional Time to Conduct the Deposition of Isaac Larian

10 filed by Mattel, Inc. on or about July 17, 2009; Cross-Motion of the MGA Parties

11 for Protective Order Limiting the Scope of Examination at Further Deposition of

12 Mr. Larian filed on or about July 24, 2009.

13   2.    The Motion to Compel Previously Collected Custodian Information of

14 Produced Documents and to Require Future Collection and Production of Custodial

15 Data filed by the MGA Parties on or about July 24, 2009; Cross-Motion of Mattel,

16 Inc. Regarding the MGA Parties' Motion to Compel Previously Collected

17 Custodian Information of Produced Documents and to Require Future Collection

18 and Production of Custodial Data filed on or about August 3, 2009.

19   3.    Motion to Enforce Prior Court Orders and to Compel Responses to

20 Interrogatory Nos. 68 and 69 and RFPs 75, 85, 105 and 115 of Mattel's 1st Set of

21 Requests for Production filed by Mattel, Inc. on or about July 22, 2009.

22   4.    Motion to Compel Further Responses to MGA's First Set of Phase 2

23 Interrogatories and Second Set of Phase 2 Requests for Production filed by MGA

24 Entertainment, Inc. on or about July 24, 2009.

25 **September 10, 2009 at 10:00 a.m.**

26   1.    Motion to Compel MGA Entertainment, Inc. and Isaac Larian to

27

28 [1] The two motions previously scheduled for hearing on August 19, 2009 remain on calendar.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 1 -

ORDER NO. 45
[Case No. CV 04-09049 SGL (RNBx)]

**EXHIBIT** _8_ **PAGE** _191_

1    Produce Documents Responsive to Mattel's First Sets of Requests for Documents
2    (Phase 2) filed by Mattel, Inc. on or about July 22, 2009.
3         2.    Motion To Enforce Order Compelling The Omni Parties to Produce
4    Documents filed by Mattel, Inc. on or about July 24, 2009.
5         3.    Motion to Compel Documents Responsive to Requests for Production
6    Nos. 530 and 531 of MGA'S Fifth Set of Requests for Production filed by MGA
7    Entertainment, Inc. on or about July 29, 2009.
8         4.    Motion to Compel Further Responses to MGA's First Set of Phase 2
9    Requests For Production and For Production of Documents filed by MGA
10   Entertainment, Inc. on or about July 31, 2009.
11   Dated:        August 5, 2009
12
13                              By:      /s/ Robert C. O'Brien
14                                    ROBERT C. O'BRIEN
                                      Discovery Master
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

-2-          ORDER NO. 45
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT __8__ PAGE _152_

EXHIBIT 9



Patricia L. Glaser, State Bar No. 055668
Pglaser@glaserweil.com
Joel N. Klevens, State Bar No. 045446
Jklevens@glaserweil.com
GLASER, WEIL, FINK, JACOBS,
  HOWARD & SHAPIRO, LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, California 90067
Telephone:  310-553-3000
Facsimile:  310-556-2920

Russell J. Frackman, State Bar No. 049087
rjf@msk.com
MITCHELL, SILBERBERG & KNUPP, LLP
11377 West Olympic Boulevard
Los Angeles, California 90064
Telephone:  310-312-2000
Facsimile:  310-312-3100

Attorneys for the MGA Parties For Phase 2

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware Corporation<br><br>Defendant.<br><br>_____<br><br>AND CONSOLIDATED ACTIONS<br><br>**PUBLIC REDACTED** | Case No. CV 04-9049 SGL (RNBx)<br>Consolidated with: Case No. CV 04-9059 and Case No. CV 05-2727<br><br>**DISCOVERY MATTER**<br>**[To Be Heard by Discovery Master Robert C. O'Brien]**<br><br>**[PUBLIC REDACTED] MGA PARTIES' OPPOSITION TO MATTEL, INC.'S MOTION TO COMPEL PRODUCTION OF HARD DRIVES FROM COMPUTERS USED BY ISAAC LARIAN AFTER FEBRUARY 27, 2008**<br><br>[Declarations of Joel N. Klevens, Samuel S. Rubin and Mark Karnick filed and served concurrently herewith]<br><br>Hearing Date:  TBA<br>Time:  TBA<br>Place:  Arent Fox, LLP<br><br>**Phase 2**<br>Discovery Cut-off:  December 11, 2009<br>Pre-Trial Conference:  March 1, 2010<br>Trial Date:  March 23, 2010 |

675730

EXHIBIT 9  PAGE 153

# TABLE OF CONTENTS

**Page**

I.   Preliminary Statement .................................................................. 1

II.  Statement of Facts ........................................................................ 4

III. Argument ...................................................................................... 10

    A.   Mattel Misrepresents the Facts Here – There Is No Evidence of Spoliation, Much Less "Continuous" Spoliation. .................... 10

    B.   Mr. Larian Has Fully Complied With the February 27, 2008 Order. ...... 11

    C.   Mr. Larian Has No Duty to Supplement Because His Prior Production is Not Incomplete or Incorrect In Any Respect. .......................... 12

    D.   Information Currently Contained on Mr. Larian's Hard Drives is Not Relevant to Mattel's Phase 2 Claims. ..................................... 12

    E.   Mattel Seeks Information Which the Order Expressly Disallowed ........ 13

    F.   Mr. Larian Should Not Be Subjected to The Burden and Invasion of His Privilege and Privacy Rights When The Same Information May Be Obtained Through Less Intrusive Means. ........................ 14

    G.   Mattel's Fishing Expedition To Discover Information For New, Proposed Claims Should Not Be Permitted. ............................ 15

    H.   Mattel's Request to Inspect All "Active" Files on Mr. Larian's Current Hard Drives Is Improper. ................................................ 15

    I.   Mattel's Counsel Should be Sanctioned For Improperly Using a Discovery Motion To Request the Discovery Master to Expand the Court's Order ...... 16

IV.  Conclusion .................................................................................... 17

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

675730

i

EXHIBIT 9 PAGE 154

# TABLE OF AUTHORITIES

**Page**

## CASES

*In re Akros Installations, Inc.,*
    834 F.2d 1526 (9th Cir. 1987) .................................................................... 17

*Rivera v. NIBCO, Inc.,*
    364 F.3d 1057 (9th Cir. 2004) ................................................................... 15

*United States v. Bauer,*
    132 F.3d 504 (9th Cir. 1997) ..................................................................... 14

## STATUTES

28 U.S.C. § 1927 ............................................................................................. 17

Fed. R. Civ. P. 26(e)(1)(A) ...................................................................... 12, 15

675730

[PUBLIC REDACTED] MGA PARTIES' OPPOSITION TO MATTEL'S 4/23/09 MOTION TO COMPEL
LARIAN'S HARD DRIVES

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

EXHIBIT 9 PAGE 155

## MGA PARTIES' OPPOSITION TO MATTEL'S MOTION TO COMPEL ADDITIONAL PRODUCTION OF LARIAN'S HARD DRIVES

**I.    Preliminary Statement**

Buried in a footnote in its Motion to Compel Production of Hard Drives from Computers Used by Isaac Larian After February 27, 2008 (the "Motion"), Mattel disingenuously asks the Discovery Master to compel inspection of information to which it is not entitled, that Judge Larson's February 27, 2008 Order expressly disallowed, and that Mattel agreed in writing not to inspect.  Specifically, Mattel demands that *it* be allowed to inspect "███████████████████████████████████████████████████████████████████████████████████████████████████." (Motion, p. 4, fn. 10.)  But the February 27, 2008 Order did not allow Mattel to inspect "documents," the content of documents, or "active user files."  The inspection expressly was limited to a review by Mattel's alleged *expert* of pre-February 2008 *data* on mirrored hard drives solely to determine whether and when anyone had deleted, lost, or spoliated evidence, or attempted to do so, and whether any deleted, lost or spoliated evidence was recoverable.  By definition, such a review does *not* involve inspection of "active user files," because active user files are still in existence, and Mattel executed a written inspection protocol to that effect.  Nor did the review allow the expert to review the *content* of documents – the expert was allowed to examine only deletion activity and other digital artifacts to identify evidence of potential data destruction.  Mattel's contention that the inspection protocol to which it agreed (in writing) "████████████████████████████████ ████████" was thoroughly debunked by MGA's expert, and Mattel's expert admitted as much at his deposition.[1]

Allowing Mattel unrestricted access to documents and active user files on Mr. Larian's current hard drives is tantamount to permitting Mattel to rifle through his office and bedside drawers.  What Mattel really seeks is a search warrant, something

---

[1]    Declaration of Samuel S. Rubin ("Rubin Decl."), ¶ 2, Exh. A, p. 4.

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
LOS ANGELES, CALIFORNIA 90067
310/553-3000



1   they are not entitled to under the Order or the Federal Rules of Civil Procedure.

2   Mattel has the right to ask MGA to produce specific documents; it does not have the

3   right to go into Mr. Larian's electronic "drawers" to see what is there.

4          Further, Mattel steps very close to, if not over, the Rule 11 line when it asserts

5   that its expert "███████████████████████████████████████████████████

6   ███████████████████████████████████." (Motion, p. 4).  Mattel's expert's

7   report was entirely discredited by MGA's expert, ████████████████████

8   ██████████████████████████████████████████████████████████

9   ██████████████████████████████████████████████████████████

10  ███████████████████████████████████████████████████████

11  ██████████████████████████.[2]  Mattel also fails to point

12  out that its expert's report originally claimed ██████████████████████████

13  ██████████████████████████████████████████████████████████

14  ██████████████████████████████████████████████████████████

15  ██████████████████████████████████████████████████████

16  █████████████████████████████████████████████████

17  ████████████████████████████████ (Motion, p. 4:9) – █████

18  ████████████████████████████████████. (Rubin Decl., ¶ 2,

19  Exh. A, p. 5-9.)  Indeed, MGA's expert so discredited Mattel's expert's report that

20  Mattel did not call its expert at trial, even though document destruction and "cover

21  up" was a theme it played loud and clear in every other way that it could.[3]

[2]      Rubin Decl., ¶ 2, Exh. A, p. 4 ██████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████ '" (Declaration of Joel N. Klevens ("Klevens Decl."), ¶ 4, Exh.

A, p. 116:13-16.)

[3]      For example, Mattel introduced evidence of Carter Bryant's use of an

application called "Evidence Eliminator" to remove information from his computer.

It also interrogated Mr. Larian's estranged brother, Farhad ("Fred"), about Fred's

675730

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000

1    The fact that Mattel did not call at trial an expert, who had spent over ███ hours

2    (at a cost of $██████)[4] to try and find evidence of intentional destruction of evidence

3    by Mr. Larian, speaks volumes about the reliability of that expert's conclusions.

4         Mattel's Motion should be denied in its entirety for at least the following

5    reasons.

6         First, the document request itself – seeking production of hard drives – is not

7    relevant to the Phase 2 issues. The fact that the hard drives "███████████████████

8    ██████████████████████████" misses the point. (Motion, p. 9 (emphasis

9    added).)  Mattel has the right to request that Larian produce relevant **documents**.

10   What it does not have the right to demand is the media on which those documents

11   reside. Nor does the fact that Mattel's Second Amended Complaint and

12   Counterclaims ("SAAC") alleges predicate acts of document destruction alter the

13   analysis. The SAAC expressly alleges that the counterclaim defendants "████

14   ████████████████████████████████████" It does not, as

15   Mattel suggests, allege "██████████████████."

16        Second, the MGA Parties fully complied with the Court's February 27, 2008

17   Order by making Mr. Larian's hard drives available for inspection and copying in

18   June 2008, to see if there was any evidence of document destruction. Mattel came up

19   empty handed. Mattel's demand for additional inspection of Mr. Larian's current

20   hard drives is unsupported by the Order, which makes clear that Mr. Larian has no

21   ongoing duty to produce his computer hard drives again and again. The prior

22   production of Mr. Larian's hard drives was complete because Mr. Larian produced all

23   the information he was required to produce pursuant to that Order. As a matter of

24   law, there is no duty to supplement because the production of Mr. Larian's hard

25

26

27   destruction of certain records, and tried unsuccessfully to link that destruction to Mr.
     Larian.
28   [4]   Rubin Decl., ¶ 2, Exh. A, p. 3.

675730                                              3

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000

1   drives in June 2008 was neither incomplete nor incorrect in any respect, much less

2   any material respect.

3       Third, even if there were grounds to order another inspection of Mr. Larian's

4   hard drives (which there are not), Mattel improperly asks the Discovery Master to

5   expand the scope of Judge Larson's prior Order to allow Mattel unrestricted access to

6   the *content* of information on Mr. Larian's hard drives, including access to "active

7   files" on the hard drives, which have no relevance to any purported allegations of

8   evidence destruction.  If Mr. Larian is required to "supplement" his prior response by

9   again producing hard drives, then Mattel must abide by the same inspection protocol

10  that governed the initial response.[5]

11      Fourth, Mr. Larian should not be subjected to the burden and wholesale

12  invasion of his privilege and privacy rights that would result from producing his

13  personal computer hard drives, particularly when the same information may be

14  obtained through a simple document request.

15      For the foregoing reasons, and for those set forth below, Mattel's Motion

16  should be denied in its entirety.  In addition, the MGA Parties respectfully request that

17  the Court impose sanctions on Mattel for making a motion that is without

18  justification, because Mattel is improperly using a motion to compel a supplemental

19  response as a vehicle to obtain information it never sought and is not entitled to.

20  **II.   Statement of Facts**

21      In June 2007, Mattel requested production of each "storage device" used by

22  Mr. Larian "to create, prepare, generate, copy, transmit, receive, delete or modify any

23  digital information relating to Bratz, Angel,[6] or Bryant."  (Klevens Decl., ¶ 6, Exh. C

---

24  [5]    Attached hereto as Exhibit A (the "Letter of Agreement"); Klevens Decl., ¶ 5,
25  Exh. B.
26  [6]    As defined in Mattel's First Set of Document Requests to Isaac Larian,
    "ANGEL" refers to those projects, products, dolls or DESIGNS or any portion
27  thereof, sometimes called "Angel Faces" and/or "Prayer Angels," that MGA has
    claimed are the subject of MGA000706-08, MGA000710-12, MGA000714-16,
28  MGA000718-20, MGA000724-28 and MGA000734, including without limitation all

675730

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

1   (Request No. 222).)[7] Mr. Larian refused to produce his then-existing hard drives

2   because Mattel's request was overbroad, unduly burdensome, duplicative, and wholly

3   invaded his privilege and privacy rights. (Klevens Decl., ¶ 7, Exh. D, at p. 16:19-20.)

4   Indeed, Mr. Larian uses his computers for matters relating to all aspects of his life,

5   including to communicate with his litigation counsel and in-house counsel via email.

6   (Klevens Decl., ¶ 2.)

7        Mattel then moved to compel production of Mr. Larian's hard drives. On

8   December 31, 2007, Judge Infante, among other things, denied Mattel's motion to

9   compel production of documents responsive to Request No. 222. (Klevens Decl., ¶ 7,

10  Exh. D, at p. 16-17.) In that Order, Judge Infante noted that Mattel's "attempts to

11  justify Request No. 222 by pointing to various instances of alleged destruction of

12  evidence" suggest that Mattel is "launching a fishing expedition in pursuit of new

13  claims, which is not permitted by the Federal Rules of Civil Procedure." (*Id.* at p.

14  17:2-12.) Judge Infante reasoned that Mattel's stated purpose for inspecting Mr.

15  Larian's hard drives "does not justify the breadth of Request No. 222" because

16

17  prototypes, models, samples and versions thereof. As used herein, "products, dolls or

18  DESIGNS or any portion thereof" also includes without limitation any names,
    fashions, accessories, artwork, packaging or any other works, materials, matters or

19  items included or associated therewith. Without limiting the generality of the
    foregoing, "ANGEL" includes any such project, product, doll or DESIGN, regardless

20  of what any such project, product, doll or DESIGN has in fact been called, and

21  regardless of what any such project, product, doll or DESIGN is or has been also,
    previously or subsequently called. Also without limiting the generality of the

22  foregoing, and contrary to MGA's recent assertions in connection with other Mattel

23  discovery requests, the term "ANGEL" does not require that there be a doll existing at

24  the time of the event, incident or occurrence that is the subject of, or otherwise
    relevant or responsive to, the Requests herein." (Klevens Decl., ¶ 6, Exh. C.)

25  [7]  Mattel also references its Request No. 225 to Carter Bryant throughout its

26  Motion in an attempt to obfuscate the issues here. Request No. 225 – a broader
    request that looks to storage devices used in connection with digital information

27  "relating to Bratz, Angel, or *MGA*" (emphasis added) is not at issue here. Mattel only

28  seeks to compel additional inspection of Mr. Larian's – and not Mr. Bryant's – hard
    drives in the instant Motion. (*Id.*)

675730                                                      5

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310.553.3000

EXHIBIT 9  PAGE 160

1  Mattel's request "encompasses every storage device that Larian has used to copy

2  digital information relating to Bratz. Mattel does not need every CD and DVD

3  containing copies of Bratz-related video and audio content, but that is what the

4  request seeks." (*Id.* at 17:12-16.) Judge Infante also noted that Request No. 222 was

5  duplicative because it requested information that is sought in numerous other requests

6  served on Mr. Larian and MGA. Given the fact that Mr. Larian had complied with

7  Mattel's requests for documents and communications relating to Bratz, Angel and

8  Bryant, which required Mr. Larian to search for documents in both hard-copy and

9  electronic form, Judge Infante determined that "it is unnecessary for Larian to also

10  produce the requested storage devices." (*Id.* at 17:16-21.)

11      On January 16, 2008, Mattel filed its Motion Objecting to Portions of the

12  Discovery Master's December 31, 2007 Order. (Klevens Decl., ¶ 8, Exh. E.) In

13  particular, Mattel argued that its RICO claim is based on alleged destruction of

14  evidence "████████████████████████████████." (Klevens

15  Decl., ¶ 8, Exh. E at p. 9:6-10 (emphasis added).)

16      On February 27, 2008 (the "Order"), Judge Larson granted Mattel's January

17  16, 2008 Motion and overruled, in part, the Discovery Master's December 31, 2007

18  Order regarding Request No. 222. (Klevens Decl., ¶ 9, Exh. F.)  Judge Larson found

19  that "[d]estruction of evidence is relevant to Mattel's claims, including specific

20  predicate acts alleged in Mattel's RICO counterclaims." (Klevens Decl., ¶ 9, Exh. F

21  at 2:12-14.)  However, in that Order, Judge Larson expressly limited the scope of

22  Request No. 222, ordering Mr. Larian only to produce:

23          All hard drives from, or that were at any time connected to,

24          any computer used by either Isaac Larian or Carter Bryant at

25          any time from 1999 to present [February 27, 2008] and that

26

27

28

675730

[PUBLIC REDACTED] MGA PARTIES' OPPOSITION TO MATTEL'S 4/23/09 MOTION TO COMPEL
LARIAN'S HARD DRIVES

EXHIBIT 9 PAGE 181

1   contain or previously contained any digital information

2   referring or relating to Bratz, Angel, MGA or Bryant.[8]

3   (Klevens Decl., ¶ 9, Exh. F at 2:19-23.)

4        Judge Larson further limited Mattel's inspection of Mr. Larian's hard drives

5   solely to determine the following:

6        (a)   whether, when and by whom any information was deleted,

7   destroyed, written over, lost, exported, moved, spoliated or otherwise

8   rendered inaccessible or unreadable;

9        (b)   whether, when and by whom any attempts were made to delete,

10   destroy, write over, export, move, spoliate or otherwise render

11   inaccessible or unreadable any information on those hard drives;

12        (c)   the current or past presence or use of any hardware or software

13   tool to accomplish any of the actions identified above;

14        (d)   whether any information deleted, destroyed, written over, lost,

15   exported, moved, spoliated or otherwise rendered inaccessible or

16   unreadable may be recovered; and

17        (e)   to recover any such information, in whole or in part.

18   (Klevens Decl., ¶ 9, Exh. F at p. 3:4-17.)

19        On April 22, 2008, Skadden, Arps, Slate, Meagher & Flom, LLP (Phase 1

20   counsel for the MGA Parties) and Mattel's counsel entered into a written agreement

21   setting forth a protocol for Mattel's expert's inspection of Mr. Larian's hard drives

22   (the "Letter of Agreement").[9]  In the Letter of Agreement, Mattel expressly agreed

23   _____

24   [8]   Mattel's Request No. 222 only seeks "digital information relating to Bratz,

25   Angel or Bryant" – and not information relating to MGA.  In ordering Mr. Larian to produce "digital information referring or relating to Bratz, Angel, MGA or Bryant,"

26   Judge Larson mistakenly conflated Request No. 222 to Mr. Larian and Request No. 225 to Carter Bryant, which seeks "digital information referring or relating Bratz,

27   Angel, and MGA."

28   [9]   Attached hereto as Klevens Decl., ¶ 5, Exh. B.

675730                                         7

EXHIBIT 9 PAGE 112

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067



1  that its consultant would "not access the user generated content of any active file that

2  exists on the hard drives." (*Id.*, ¶ 6.)  As its name suggests, a so-called "active" file is

3  one that is currently available for use on a computer or computer network.

4  (Declaration of Mark Karnick ("Karnick Decl."), ¶ 2.)  An "active" file is not one that

5  has been deleted or destroyed.  (*Id.*)  Indeed, this term in the Letter of Agreement was

6  agreed upon because the Order expressly limited Mattel's inspection of Mr. Larian's

7  hard drives solely to determine if documents had been ***destroyed*** and did not permit

8  inspection of actual documents that had been created, received or sent by Mr. Larian.

9  Pursuant to the terms of the Order and the Letter of Agreement, Mattel's expert

10  reviewed Mr. Larian's hard drives in June 2008.  Following its review, Mattel's

11  expert released its examination reports, dated June 9, 2008 and June 24, 2008,

12  detailing its forensic findings, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

13  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (collectively, the "June Reports").  (Rubin

14  Decl., ¶ 2, Exh. A.)

15       In a subsequent forensic report, dated July 1, 2008, the findings in Mattel's

16  June Reports were found ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (the

17  "July Report").  (Rubin Decl., ¶ 2, Exh. A.)  Based on an independent review of

18  Mattel's June Reports and Mr. Larian's hard drives, MGA's forensic expert

19  concluded that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

20  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

21  ▇▇▇▇▇▇ (*Id.* at 2 (emphasis added).)  Among other things, the July Report

22  explained:

23  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

24  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

25  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

26  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

27  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

28  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310.553.3000

675730

**8**



In sum, the July Report found

. (*Id.*) As a result, Mattel

9

675730

EXHIBIT __9__ PAGE __164__

1  did not even tender at the Phase 1 trial the testimony of its alleged expert or the

2  discredited report upon which it now relies so heavily. (Klevens Decl., ¶ 3.)

3       Almost a year later, on March 18, 2009, Mattel's counsel sent a letter

4  demanding additional inspection of Mr. Larian's hard drives. (Klevens Decl., ¶ 11,

5  Exh. H.) On March 25, 2009, counsel for the MGA Parties responded, explaining

6  that Mr. Larian had fully complied with Judge Larson's Order by making information

7  contained on Mr. Larian's hard drives, up to and including the date of that Order

8  (February 27, 2008), available for inspection and copying. (Klevens Decl., ¶ 12, Exh.

9  I.) Counsel for the MGA Parties further explained that Mr. Larian was under no duty

10  to supplement the prior production of Mr. Larian's hard drives in June 2008 because

11  such production was neither incomplete nor incorrect in any respect, let alone in a

12  material respect. (Klevens Decl., ¶ 12, Exh. I.)

13       On March 27, 2009, counsel for the Parties met and conferred via telephone

14  regarding Mattel's demand for additional inspection of Mr. Larian's current hard

15  drives. The MGA Parties sent Mattel's counsel a letter dated March 31, 2009,

16  memorializing that phone conversation. (Klevens Decl., ¶ 13, Exh. J.) Nothing

17  further was heard from Mattel's counsel on this issue until Mattel filed the instant

18  Motion on April 23, 2009.

19  **III.   Argument**

20       **A.   Mattel Misrepresents the Facts Here – There Is No Evidence of**

21            **Spoliation, Much Less "Continuous" Spoliation.**

22       As a preliminary matter, Mattel has no evidence of spoliation other than its

23  own indefensible expert reports (the "June Reports"), which were discredited in a

24  subsequent forensic expert report, dated July 1, 2008. (Rubin Decl., ¶ 2, Exh. A.)

25  Based on an independent review of Mattel's June Reports and Mr. Larian's hard

26  drives, MGA's forensic expert concluded that ████████████████████████

27  ██████████████████████████████████████████████████████████

28  ████████████████" (*Id.* at 2 (emphasis added).) In fact, each of

675730

10

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
LOS ANGELES, CALIFORNIA 90067
310.553.3000

EXHIBIT 9 PAGE 105

1  the three specifically identified files that Mattel now trumpets as having been

2  "█████████████████████████████" (Motion, p. 4) was found by

3  MGA's expert to have been █████████████████████████

4  ████████. (Klevens Decl., ¶ 10, Exh. G, Deposition of Samuel S. Rubin, Exh.

5  6035, p. 1.) Mattel's expert █████████████████████████████

6  ██████████████████████████████████████████████

7  █████████████████████████████████████████████

8  ████████████████████ (Klevens Decl., ¶ 4, Exh. A.)[10]

9      Obviously recognizing that its expert's report about ███████████

10  █████████████████████ was completely indefensible and unsupported by the

11  forensic evidence, Mattel did not even call its forensic expert to testify at trial.

12  (Klevens Decl., ¶ 3.)

13      Mattel's disingenuous argument that there has been █████████████

14  ████████████████████████████████████████████████

15  ██████████████ (Motion, p. 12 (emphasis in original).)

16      **B.**   <u>**Mr. Larian Has Fully Complied With the February 27, 2008 Order.**</u>

17      Mattel's reliance on the February 27, 2008 Order to compel additional

18  inspection of Mr. Larian's hard drives is entirely misplaced. The Court expressly

19  limited Mattel's inspection of Mr. Larian's hard drives to any computer used by him

20  from "1999 to present." (Klevens Decl., ¶ 9, Exh. F.) By its express terms, the Order

21  only required Mr. Larian to produce for inspection his hard drives up to and including

22  the date of that Order, February 27, 2008. Mattel does not dispute that Mr. Larian has

23  already made such information available to Mattel. Accordingly, Mr. Larian has fully

24  complied with the Order.

25      Mattel now argues that the Order somehow allows Mattel to inspect Mr.

26  Larian's hard drives up to and including today, and ostensibly, without any limitation

27  as to time whatsoever. The Order was not intended to allow Mattel an ongoing right

28

10  Klevens Decl., ¶ 4, Exh. A, p. 116:13-20.

675730

EXHIBIT ___ PAGE ___

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310.553.3000

1   to inspect and copy Mr. Larian's hard drives any time it pleases. Notably absent from

2   the Order is any language allowing Mattel such unlimited access to Mr. Larian's

3   current hard drives. Moreover, as set forth below, information placed on Mr. Larian's

4   hard drives since June 2008 is not relevant to Mattel's Phase 2 claims, including its

5   allegations of past evidence destruction – all of which relate to prior (and not

6   ongoing) acts.

7        **C.     Mr. Larian Has No Duty to Supplement Because His Prior**

8             **Production is Not Incomplete or Incorrect In Any Respect.**

9        The duty to supplement or correct prior disclosures or discovery responses

10   arises only "if the party learns that in some *material respect* the disclosure or

11   response is *incomplete or incorrect*." Fed. R. Civ. P. 26(e)(1)(A) (emphasis added).

12   As set forth above, Mr. Larian has fully complied with the Order, and there is no duty

13   to supplement the information previously produced because that production was

14   neither incomplete nor incorrect in any respect, much less any material respect.

15        **D.     Information Currently Contained on Mr. Larian's Hard Drives is**

16             **Not Relevant to Mattel's Phase 2 Claims.**

17        Mattel misrepresents its own Counterclaims by asserting that "ongoing" acts of

18   tampering with evidence are relevant to Mattel's RICO claims. (Motion, p. 8:18-9:1;

19   11:6.) In fact, Mattel's Counterclaims make no mention whatsoever of "ongoing"

20   destruction of evidence by Mr. Larian or anyone else. To the contrary, Mattel only

21   alleges that



675730

[PUBLIC REDACTED] MGA PARTIES' OPPOSITION TO MATTEL'S 4/23/09 MOTION TO COMPEL
LARIAN'S HARD DRIVES

EXHIBIT 9 PAGE 117

1   (Klevens Decl., ¶ 14, Exh. K (SAAC) at ¶ 93(c)(iii)(emphasis added).)  Mattel mixes

2   apples with oranges by arguing that the hard drives might contain ████████

3   ████████████████████████████████  (Motion, p. 13:15-17.)

4   Indeed, Mattel can ask for those documents, and has done so.  But having a right to

5   *documents* does not give Mattel a right to the *media* on which those documents

6   reside.  To hold otherwise would be tantamount to saying that a party in the "paper

7   world" does not need to ask for relevant documents, but instead gets the drawers with

8   the documents in them.  Mattel cites no authority to support such a proposition

9   because there is none.

10          E.      **Mattel Seeks Information Which the Order Expressly Disallowed.**

11          The Court's February 27, 2008 Order did not give Mattel the right to review

12   documents on Mr. Larian's hard drives.  The Order expressly limited Mattel's

13   inspection of Mr. Larian's hard drives solely to an expert's examination for the

14   purpose of determining whether electronic evidence had been destroyed.  (Klevens

15   Decl., ¶ 9, Exh. F at p. 2:12-13.)  Pursuant to the Order, Mattel's expert was only

16   allowed to inspect digital data on Mr. Larian's hard drives to determine the following:

17          (a)     whether, when and by whom any information was *deleted,*

18   *destroyed, written over, lost, exported, moved, spoliated* or otherwise

19   *rendered inaccessible* or *unreadable;*

20          (b)     whether, when and by whom any attempts were made to *delete,*

21   *destroy, write over, export, move, spoliate* or otherwise render

22   *inaccessible* or *unreadable* any information on those hard drives;

23          (c)     the current or past presence or use of any hardware or software

24   tool to accomplish any of the actions identified above;

25          (d)     whether any information *deleted, destroyed, written over, lost,*

26   *exported, moved, spoliated* or otherwise rendered *inaccessible* or

27   *unreadable* may be recovered; and

28          (e)     to recover any such information, in whole or in part.

675730                                          13

EXHIBIT 9 PAGE 118

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

1  (Klevens Decl., ¶ 9, Exh. F at p. 3:4-17 (emphasis added).)

2      As the Court's prior Order (and the Parties' agreed upon inspection protocol)

3  make clear, Mattel is not entitled to inspect Mr. Larian's hard drives for any purpose

4  other than to determine if evidence prior to February 2008 has been deleted, destroyed

5  or spoliated.

6      **F.**   **Mr. Larian Should Not Be Subjected to The Burden and Invasion of**

7          **His Privilege and Privacy Rights When The Same Information May**

8          **Be Obtained Through Less Intrusive Means.**

9      Mattel's Motion entirely ignores the fact that less intrusive means are available

10  to obtain relevant, non-privileged documents relating to Mattel's Phase 2 claims.

11  Indeed, Mattel's requests for production require Mr. Larian to search for documents

12  in both hard-copy *and electronic form.* Mattel's argument that it is should be

13  permitted to inspect Mr. Larian's current hard drives simply because information

14  relating to its Phase 2 claims *may* exist on those hard drives should therefore be

15  rejected. If Mattel wants such documents, then it should be required to specifically

16  request them. There is no reason to allow Mattel to wholly invade Mr. Larian's

17  privilege and privacy interests in the information contained on his computer hard

18  drives to obtain information that is otherwise available to Mattel through less

19  intrusive or burdensome means. Indeed, Mr. Larian's personal computer hard drives

20  contain privileged email communications with his litigation and in-house counsel.

21  (Klevens Decl., ¶ 2); *see United States v. Bauer*, 132 F.3d 504, 510 (9th Cir. 1997)

22  (recognizing that the attorney-client privilege is "the most sacred of all legally

23  recognized privileges, and its preservation is essential to the just and orderly

24  operation of our legal system"). Mr. Larian should not be subjected to the burden and

25  wholesale invasion of his privilege and privacy rights that would result from

26  producing his personal computer hard drives, particularly when the same information

27  may be obtained through a simple document request.

28

14

EXHIBIT 9 PAGE 169

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

1      **G.**   <u>**Mattel's Fishing Expedition To Discover Information For New,**</u>

2             <u>**Proposed Claims Should Not Be Permitted.**</u>

3      Mattel improperly claims that information on Mr. Larian's current hard drives

4 is relevant to Mattel's allegations of " ███████████████ ." (Motion, p. 15:6-8.)

5 However, Mattel entirely ignores the fact that Request No. 222 does not even seek

6 information relating to any purported " ████████ ." (Klevens Decl., ¶ 6, Exh. C.)

7 Indeed, Request No. 222 only seeks "information relating to Bratz, Angel, or Bryant."

8 (*Id.*) Thus, in its Motion, Mattel improperly seeks to compel information that is not

9 even responsive to Request No. 222.

10      Moreover, Mattel's Counterclaims contain no allegations of " █████████ ."

11 Mattel's Motion for Leave to File Third Amended Answer and Counterclaims, dated

12 April 8, 2009, has not been granted by the Court. As a matter of law, Mattel's

13 contention that information contained on Mr. Larian's present hard drives is somehow

14 relevant to claims that it has merely proposed to the Court is without merit. The plain

15 language of Rule 26 limits discovery to any non-privileged matter, "that is relevant to

16 the claim or defense of any party." Fed. R. Civ. P. 26(b)(1). Fishing expeditions to

17 discover new claims are not permitted by the Federal Rules. *See id.*; *Rivera v.*

18 *NIBCO, Inc.* 364 F.3d 1057, 172 (9th Cir. 2004) ("District courts need not condone

19 the use of discovery to engage in 'fishing expeditions.'"). Thus, Mattel's Motion

20 should be seen for what it really is – an attempt to launch a "fishing expedition" to

21 develop its new claims.

22      Further, even if " ████████ " was relevant here (which it is not), that would

23 merely give Mattel the right to request documents relating to such allegations, not to

24 inspect hard drives.

25      **H.**   <u>**Mattel's Request to Inspect All "Active" Files on Mr. Larian's**</u>

26             <u>**Current Hard Drives Is Improper.**</u>

27      Not only does Mattel erroneously rely on the February 27, 2008 Order in

28 support of its demand for additional inspection of Mr. Larian's current hard drives,

**15**

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310.553.3000

EXHIBIT 9 PAGE 170

1   Mattel also seeks to unduly expand the scope of that Order and to violate the terms of

2   the Parties' prior inspection protocol.

3        On April 22, 2008, the Parties entered into a written agreement, whereby

4   Mattel expressly agreed that its consultant "*shall not access user generated content*

5   *of any 'active' file that exists on the hard drives*."[11]  Despite that agreed upon

6   protocol and the Order expressly limiting Mattel's inspection of Mr. Larian's prior

7   hard drives, Mattel improperly asks the Discovery Master to allow inspection of

8   ████████████████████████████████████████████████

9   ████  (Motion, p. 4, fn. 10).  Mattel disingenuously claims that the prior

10   ████████████████████████████████████████████████

11   ██████████████████████  (*Id.*)  However, Mr. Larian's "active" user

12   generated files have nothing to do with any purported spoliation because such files

13   have not been deleted.  (Karnick Decl., ¶ 2.)  Mattel's request for unrestricted access

14   to Mr. Larian's hard drives should be denied because such unfettered access is

15   unsupported by the Order, seeks information that is wholly irrelevant to Mattel's

16   purported spoliation of evidence allegations, and is in breach of Mattel's express

17   agreement to the contrary.

18   I.    **Mattel's Counsel Should be Sanctioned For Improperly Using a**

19         **Discovery Motion To Request the Discovery Master to Expand the**

20         **Court's Order.**

21        Mattel's counsel should be sanctioned for improperly asking the Discovery

22   Master to revisit and expand the scope of Judge Larson's prior Order with respect to

23   Request No. 222, which expressly limited Mattel's inspection of Mr. Larian's then-

24   existing hard drives to determine if documents had been destroyed.  Mattel now asks

25   the Discovery Master to effectively override the Court's limitations on Mattel's

26   inspection (and Mattel's written agreement to limit its inspection) and permit Mattel

27   to conduct a wholesale invasion of Mr. Larian's current hard drives.  Such

28

11     (Klevens Decl., ¶ 5, Exh. B) (emphasis added).

675730

[PUBLIC REDACTED] MGA PARTIES' OPPOSITION TO MATTEL'S 4/23/09 MOTION TO COMPEL LARIAN'S HARD DRIVES

LAW OFFICES

GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP

10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310.553.3000

EXHIBIT _9_ PAGE _17_

1  misconduct should not be permitted and sanctions against Mattel's counsel are

2  entirely appropriate. *See* 28 U.S.C. § 1927 ("[a]ny attorney…who so multiplies the

3  proceedings in any case unreasonably and vexatiously may be required by the court to

4  satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred

5  because of such conduct"); *see also In re Akros Installations, Inc.*, 834 F.2d 1526,

6  1531 (9th Cir. 1987) (district court may impose sanctions on counsel based upon "the

7  inherent power of the judiciary, or upon the authority conferred by 28 U.S.C. §

8  1927") (overruled on unrelated grounds).  Thus, Mattel should be sanctioned in the

9  sum of $4,500 for misrepresenting the scope of Judge Larson's Order improperly

10  seeking to expand it. (Klevens Decl., ¶ 18.)

**IV.    Conclusion**

12       Based on the foregoing, the MGA Parties respectfully request that Mattel's

13  Motion to Compel Production of Hard Drives from Computers Used by Isaac Larian

14  After February 27, 2008 be denied in its entirety.  The MGA Parties also respectfully

15  request that the Court impose sanctions of $4,500 on Mattel.

16

17  Dated: May 1, 2009                Patricia L. Glaser
                                     Joel N. Klevens
18                                   GLASER, WEIL, FINK, JACOBS
                                       HOWARD & SHAPIRO, LLP
19
                                     Russell J. Frackman
20                                   MITCHELL, SILBERBERG & KNUPP, LLP

21                                   By:  _____/s/ Amman A. Khan_____
22                                        Amman A. Khan
                                         Attorneys for the MGA Parties
                                         for Phase Two
23

24

25

26

27

28

675730

17

EXHIBIT 9 PAGE 172

# EXHIBIT A

EXHIBIT __A__
PAGE __18__

EXHIBIT 9 PAGE 173

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

**NEW YORK**
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile: (212) 849-7100

**LOS ANGELES**
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

**SAN FRANCISCO**
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

**TOKYO**
Akasaka Twin Tower Main Building, 6th Floor
17-22 Akasaka 2-Chome
Minato-ku, Tokyo 107-0052, Japan
+81 3 5561-1711
Facsimile: +81 3 5561-1712

**SILICON VALLEY**
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

## LOS ANGELES OFFICE
## FACSIMILE TRANSMISSION

DATE:     April 22, 2008          NUMBER OF PAGES, INCLUDING COVER: 4

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| Lance A. Etcheverry<br>Skadden, Arps, Slate, Meagher & Flom LLP<br>300 South Grand Avenue<br>Los Angeles, California 90071-3144 | 213.687.5432 | 213.621.5432 |

FROM:     Jon D. Corey

RE:       Mattel, Inc.

MESSAGE:



---

| CLIENT # | 7209 | ROUTE/<br>RETURN TO: | Johanna Lopez<br>(1 extra copy) | ☐ CONFIRM FAX<br>☐ INCLUDE CONF. REPORT |
|---|---|---|---|---|
| OPERATOR: | PRISCILLA | | CONFIRMED? | ☐ NO ☐ YES: |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received the facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3000 AS SOON AS POSSIBLE

EXHIBIT __A__
PAGE __19__

EXHIBIT __9__ PAGE __174__

```
04/22 2008 14:21 FAX 12134433100        QECOH-LA0-2                    ✏️001
```

```
                              *************************
                              ***   TX REPORT   ***
                              *************************

         TRANSMISSION OK

         TX/RX NO              0891
         RECIPIENT ADDRESS     76706#7209#12138215432
         DESTINATION ID
         ST. TIME              04/22 14:19
         TIME USE              01'29
         PAGES SENT            5
         RESULT                OK
```

## QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

NEW YORK
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile: (212) 849-7100

LOS ANGELES
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

SAN FRANCISCO
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

TOKYO
Akasaka Twin Tower Main Building, 6th Floor
17-22 Akasaka 2-Chome
Minato-ku, Tokyo 107-0052, Japan
+81 3 5561-1711
Facsimile: +81 3 5561-1712

SILICON VALLEY
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

### LOS ANGELES OFFICE
## FACSIMILE TRANSMISSION

DATE:     April 22, 2008                    NUMBER OF PAGES, INCLUDING COVER: 4

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| Lance A. Etcheverry<br>Skadden, Arps, Slate, Meagher & Flom LLP<br>300 South Grand Avenue<br>Los Angeles, California 90071-3144 | 213.687.5432 | 213.621.5432 |

FROM:     Jon D. Corey

RE:       Mattel, Inc.

MESSAGE:

EXHIBIT __A__

PAGE _20_

EXHIBIT _9_ PAGE _175_

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

April 22, 2008

VIA FASCIMILE AND U.S. MAIL

Lance A. Etcheverry
Skadden, Arps, Slate, Meagher & Flom LLP
300 South Grand Avenue
Los Angeles, California 90071-3144

Re:   Bryant vs. Mattel, Inc.

Dear Lance:

I write regarding Mr. Isaac Larian's hard drives and Mr. Farhad Larian's USB drive. I have set
forth below what I believe to be the agreement that we reached.

1.      On a mutually agreeable date no later than April 25, 2008, Skadden Arps Slate Meagher
& Flom, LLP ("Skadden") will make available at its facilities those hard drives responsive to the
Court's Order compelling production of Isaac Larian's hard drives and Christensen, Glaser, Fink,
Jacobs, Weil & Shapiro, LLP ("Christensen") will make available the USB device ("Device")
about which Mr. Farhad Larian testified during his February 4, 2008 deposition.

2.      The hard drives and the USB device will be made available at the location of
_____, which is a consultant identified by Skadden.

3.      Skadden's consultant shall make EnCase images of the hard drives and the USB device in
the presences of Mattel's consultant, 42 Consulting, LLC. The EnCase images shall remain in
the possession of Skadden's consultant. Skadden's consultant, however, shall make those hard
drives and USB devices available for inspection at a time convenient to 42 Consulting, LLC so
that it may perform the analysis necessary. Skadden's consultant shall also provide essentials for
the analysis to occur, such as electrical power, lighting, reasonable work space, internet access,
etc.

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

07209/2463006.1

EXHIBIT ___A___
PAGE ___∂1___

EXHIBIT _9_ PAGE _176_

4.   Skadden's consultant shall be allowed to observe the inspection of the hard drives and the USB device. At no time shall Skadden's consultant interfere with or otherwise hinder the inspection and, if at any time, 42 Consulting, LLC representatives are not present and a search or inspection is being run (such as overnight), then Skadden's consultant shall not take any steps to interfere with, affect, inspect, access or use the hardware or software running any search.

5.   With respect to the USB Device, 42 Consulting, LLC may inspect the image of the Device for any and all agreed-upon information (the "Information").

(a)   The "Information" shall mean:

(i)   information relating to the manufacture date and first use of the Device;

(ii)   documents or files, whether previously deleted or currently on the Device, that refer or relate to Bratz, MGA, Isaac Larian, Angel or Bryant, including without limitation the documents that Farhad Larian testified he downloaded from MGA's computer system as part of his efforts to obtain evidence for the Larian v. Larian proceedings; and

(iii)   all available metadata and file information about the documents described in paragraph (ii), including without limitation:

(A)   whether, when and by whom any such information was deleted, destroyed, written over, lost, exported, moved, or otherwise rendered inaccessible or unreadable;

(B)   whether, when and by whom any attempts were made to delete, destroy, write over, export, move or otherwise render inaccessible or unreadable any such information on the Device;

(C)   the current or past presence or use of any hardware or software tool to accomplish any of the actions identified above;

(D)   whether any information deleted, destroyed, written over, lost, exported, moved or otherwise rendered inaccessible or unreadable may be recovered; and

(E)   to recover any such information, in whole or in part.

(b)   42 Consulting, LLC shall inspect the entire Image of the USB device for Information using search terms and parameters that Mattel will provide him or her.

(c)   42 Consulting, LLC shall then provide to Christensen print outs of all recovered files containing user-generated content, such as Microsoft Word documents, Microsoft Excel spreadsheets, or e-mails, so that it may identify privileged documents, if any, and to prepare a privilege log.

(d)   42 Consulting, LLC need not provide to Skadden, prior to delivery to Mattel, any technical information about the hard drives or files or information that do not contain user-generated content.

07209/2463006.1                                      2

EXHIBIT  A
PAGE  22

EXHIBIT  9  PAGE  177

(e)     Within seven (7) days of the time that Mr. Larian receives print-outs of the Information, 42 Consulting, LLC will provide Mattel with all such Information, including native files, except for any such Information for which privilege is asserted. Mr. Larian will serve Mattel and the 42 Consulting, LLC Expert a privilege log identifying the Information, if any, to be withheld on privilege grounds within five (5) Court days of his receipt of the Information from the 42 Consulting, LLC.

6.     With respect to the hard drives, 42 Consulting, LLC may inspect the Images of the hard drives in their entirety, including but not limited to link files, registry files, system volume information, logs and log files, recycle bin info2 records, application files, file listing and metadata for all files (allocated and unallocated), page/swap files, deleted/unallocated data, all files and folders, file system, e-mail trash or deleted files, unallocated space (volume slack, unused disk space, unallocated clusters), file slack, recycle bin/recycler. Notwithstanding the foregoing, 42 Consulting, LLC shall not access the user generated content of any active file that exists on the hard drives. 42 Consulting, LLC shall not be deemed to have accessed user generated content by loading any Outlook archive files or any other archive file that may contain information relating to deleted items.

(a)     Information available for inspection shall also include:

(i)     information relating to the manufacture date and first use of each hard drive;

(ii)     documents or files previously deleted, attempted to be deleted, or otherwise rendered inaccessible that refer or relate to Bratz, MGA, Isaac Larian, Angel or Bryant; and

(iii)     all available metadata and file information about the documents described in paragraph (ii), including without limitation:

(A)     whether, when and by whom any such information was deleted, destroyed, written over, lost, exported, moved, or otherwise rendered inaccessible or unreadable;

(B)     whether, when and by whom any attempts were made to delete, destroy, write over, export, move or otherwise render inaccessible or unreadable any such information on the Device;

(C)     the current or past presence or use of any hardware or software tool to accomplish any of the actions identified above;

(D)     whether any information deleted, destroyed, written over, lost, exported, moved or otherwise rendered inaccessible or unreadable may be recovered; and

(E)     to recover any such information, in whole or in part.

EXHIBIT A
PAGE 23

EXHIBIT 9 PAGE 178

(b)    42 Consulting, LLC shall inspect the unallocated space on any hard drive or any other location in which deleted files or documents may otherwise reside or where information related to such deleted files or documents may resided.

(c)    42 Consulting, LLC shall then provide to Skadden print outs of all recovered files containing user-generated content, such as Microsoft Word documents, Microsoft Excel spreadsheets, or e-mails, so that it may identify privileged documents, if any, and to prepare a privilege log.

(d)    42 Consulting, LLC need not provide to Skadden, prior to delivery to Mattel, any technical information about the hard drives or files or information that do not contain user-generated content.

(e)    Within seven (7) days of the time that Mr. Larian receives print-outs of the Information, 42 Consulting, LLC will provide Mattel with all such Information, including native files, except for any such Information for which privilege is asserted. Mr. Larian will serve Mattel and the 42 Consulting, LLC a privilege log identifying the Information, if any, to be withheld on privilege grounds within five (5) Court days of his receipt of the Information from the 42 Consulting, LLC.

7.    If there is any issue or question regarding the authenticity, correctness, integrity or completeness of the Information, then nothing here shall preclude Mattel from seeking production and inspection of the original hard drives or USB device. Mattel also reserves the right to seek additional information of both the USB device and the hard drives.

8.    The Parties agree that the actions described herein shall not constitute a waiver of any claim of attorney-client privilege or work product privilege with respect to (a) the information on any hard drive, (b) the information on the USB device, or (c) the conduct, notes, searches, search terms, communications or any other act performed by any consultant or attorney in connection with these hard drives or USB devices.

Should you have any questions regarding the foregoing, please do not hesitate to call.

Sincerely,

*Jon Corey*

Jon Corey

07209/2463006.1                                        4

EXHIBIT A
PAGE 24

EXHIBIT 9 PAGE 179