EXHIBIT 10

1  MELINDA HAAG (State Bar No. 132612)
   mhaag@orrick.com
2  ANNETTE L. HURST (State Bar No. 148738)
   ahurst@orrick.com
3  WARRINGTON S. PARKER III (State Bar No. 148003)
   wparker@orrick.com
4  ORRICK, HERRINGTON & SUTCLIFFE LLP
   The Orrick Building
5  405 Howard Street
   San Francisco, CA 94105
6  Telephone: +1-415-773-5700
   Facsimile: +1-415-773-5759
7
   WILLIAM A. MOLINSKI (State Bar No. 145186)
8  wmolinski@orrick.com
   ORRICK, HERRINGTON & SUTCLIFFE LLP
9  777 South Figueroa Street, Suite 3200
   Los Angeles, CA 90017
10 Telephone: +1-213-629-2020
   Facsimile: +1-213-612-2499
11
12 Attorneys for MGA Parties

13              UNITED STATES DISTRICT COURT

14            CENTRAL DISTRICT OF CALIFORNIA

15                    EASTERN DIVISION

| 16 | CARTER BRYANT, an Individual, | Case No.  2:04-cv-09049-SGL-RNBx |
|----|---|---|
| 17 | Plaintiff, | Consolidated with Case No. CV 04-9059 and Case No. CV 05-2727 |
| 18 | v. | |
| 19 | MATTEL, INC., a Delaware Corporation, | **MGA PARTIES' OPPOSITION TO MATTEL, INC.'S MOTION FOR PRECLUSIVE RELIEF OR, IN THE ALTERNATIVE, ACCESS TO ACTIVE FILES ON THE LARIAN HARD DRIVES** |
| 20 | Defendant. | |
| 21 | AND CONSOLIDATED ACTIONS | |
| 22 | | |
| 23 | | Date:        August 10, 2009 |
| 24 | | Time:        10:00 A.M.<br>Courtroom: 1 |
| 25 | | Judge:       Hon. Stephen J. Larson |
| 26 | | |
| 27 | | |
| 28 | | |

1

# TABLE OF CONTENTS

2

Page

3   INTRODUCTION AND SUMMARY OF ARGUMENT ........................................1

4   STATEMENT OF FACTS ...................................................................................2

5   A.   Mattel's First Request To Access to Mr. Larian's Hard Drives ....................2

6   B.   Mattel Agrees Undeleted, User-Generated Files Are Irrelevant To Its
         Assertion Of Spoliation...................................................................................3

7   C.   MGA's Expert Challenges Mattel's Findings On Spoliation ........................4

8        D.   Mattel Seeks A "Supplemental" Production.........................................6

9   ARGUMENT ........................................................................................................8
    I.   MATTEL'S MOTION FOR ISSUE SANCTIONS IS FRIVOLOUS ...........8

10       A.   No Issue Sanction Can Be Imposed Where MGA Has Fully
              Complied With The Relevant Orders ....................................................8

11

12       B.   Judicial Estoppel Supplies No Ground For Issue Sanctions
              Against MGA; If Anyone, It Is Mattel Who Is Directly Estopped
              By The Prior Court Orders ................................................................10

13            1.   The MGA Parties Are Not Subject To Judicial Estoppel.........11

14            2.   Mattel Is Directly Estopped By Its Prior Stipulation And
                   The Prior Court Orders ........................................................13

15  II.  MATTEL'S REQUEST FOR ALTERNATIVE RELIEF IS AN
         UNTIMELY AND MERITLESS OBJECTION TO THE
16       DISCOVERY MASTER'S MAY 18, 2009 ORDER ..................................14

17       A.   Mattel's Request For Alternative Relief Is Simply An Untimely
              Objection To The Discovery Master's Order .....................................14

18       B.   Even Were The Court To Consider An Untimely Challenge To
              The Discovery Master's Order, Which It Should Not, That
19            Challenge Should Be Rejected............................................................15

20            1.   The Plain Language Of The Inspection Order Limited
                   Review To Deleted Files.......................................................17

21            2.   Mattel Failed To Show How "All" Active Files Are
                   Relevant...............................................................................17

22

23            3.   Mattel Is Not Otherwise Entitled To Unrestricted Access
                   To Mr. Larian's Hard Drives.................................................18

24            4.   Unfettered Access To Active Files Will Endanger The
                   Attorney-Client Privilege And Privacy Rights ........................19

25

26

27

28

EXHIBIT 10 PAGE 181

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

## FEDERAL CASES

**Page**

*Concrete Pipe & Prods. of Cal., Inc.* v. *Constrs. Laborers Pension Trust,*
   508 U.S. 602 (1993)........................................................................16

*Disimone* v. *Browner*, 121 F.3d 1262 (9th Cir. 1997) ...........................................14

*Folb v. Motion Picture Indus. Pension & Health Plans,*
   16 F. Supp. 3d 1164, 1168 (C.D. Cal. 1998) ...................................15

*Grimes* v. *City and County of San Francisco*, 951 F.2d 236 (9th Cir. 1991) .........16

*Hamilton* v. *State Farm Fire & Cas. Co.*, 270 F.3d 778 (9th Cir. 2001)................11

*Kern River Gas Transmission Co. v. 6.17 Acres of Land, More or Less, in*
   *Salt Lake Cty, Utah*, 156 Fed. Appx. 96, 99-100 (10th Cir. 2005)....................10

*Polec* v. *Nw. Airlines (In re Air Crash Disaster)*, 86 F.3d 498 (6th Cir. 1996)......18

*Reilly* v. *NatWest Mkts. Group, Inc.*, 181 F.3d 253 (2d Cir. 1999) ........................10

*Rissetto* v. *Plumbers & Steamfitters Local 343*, 94 F.3d 597 (9th Cir. 1996) ........11

*School District 1J, Multnomah County* v. *ACandS, Inc.,*
   5 F.3d 1255 (9th Cir. 1993)........................................................15

*Simpson* v. *Lear Astronics Corp.*, 77 F.3d 1170 (9th Cir. 1996)............................15

*Smith* v. *Massachusetts*, 543 U.S. 462 (2005) .......................................................15

*Unigard Sec. Ins. Co.* v. *Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363 (9th
   Cir. 1991).........................................................................................9

*United States* v. *Bauer*, 132 F.3d 504 (9th Cir. Cal. 1997) .....................................19

*United States* v. *Hook*, 195 F.3d 299 (7th Cir. 1999).............................................11

*United States* v. *Lummi Indian Tribe*, 235 F.3d 443 (9th Cir. 2000)......................14

## DOCKETED CASES

*Davis* v. *Nevarez*, No. 3:07-CV-00427-EJL-LMB, 2009 WL 1468705
   (D. Idaho, May 22, 2009)...........................................................10

EXHIBIT 10 PAGE 182

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES
(continued)

## FEDERAL STATUTES

Page

Fed.R.Civ.P. 26.................................................................................................6

Fed.R.Civ.P. 34(a) .....................................................................................6, 7, 14

Fed. R. Civ. P. 37(b)(2)........................................................................................18

Fed.R.Civ.P. 72.......................................................................................14, 15

EXHIBIT 10 PAGE 183

# INTRODUCTION AND SUMMARY OF ARGUMENT

1
2    Despite Mattel's long, documented history of urging production only of the
3 deleted files on Mr. Larian's hard drives to support its spoliation allegations, Mattel
4 now improperly seeks to broaden the Court's prior Order related to such inspection
5 to discover *all* documents on his hard drives—in a fishing expedition to support its
6 other allegations. The Discovery Master correctly concluded that the record does
7 not and cannot support such a request: the Court's February 27, 2008 Inspection
8 Order is limited in scope to determine the extent to which files were deleted and
9 whether they can be recovered. In addition, Mattel *agreed* not to review the content
10 of active user generated files because it was unnecessary for any spoliation analysis.
11 MGA's expert criticized Mattel's expert not because he failed to examine the
12 contents of the active files, but because he failed to perform several admittedly
13 valid techniques that did *not* require access to the contents of those files. Moreover,
14 the overbreadth, invasion of privacy and burden analysis has not change in any way
15 with respect to Mr. Larian's hard drives, and neither should the Court's position.
16 Mattel should not be permitted to have access to the entire contents of Mr. Larian's
17 hard drives, and there is no unfairness to its forensic expert in the absence of such
18 access. The Motion should be denied in its entirety.
19    Mattel's request for issue sanctions lacks any merit. Insofar as its request for
20 issue sanctions is founded upon Rule 37(b), Mattel has not and cannot identify any
21 order requiring the production of all of Mr. Larian's active files. MGA and
22 Mr. Larian have complied with every order on this subject. Part I(A), *infra.*.
23 Insofar as its request for issue sanctions is founded upon judicial estoppel, Mattel
24 has not identified any inconsistent position taken by MGA or unfair disadvantage to
25 Mattel. Rather, it is Mattel who should be estopped from seeking access to
26 Mr. Larian's active files. Part I(B), *infra.*
27    Mattel's "alternative" relief must also be denied. It is an untimely objection
28 to the Discovery Master's May 19 Order. Part II(A), *infra.* Even were this

OHS West:260699129.7

EXHIBIT 10 PAGE 184

1   untimely challenge to Discovery Master O'Brien's May 19 Order considered, it

2   should be rejected for the same reasons that Mattel previously stipulated and the

3   Discovery Master ordered that access to active files was neither necessary nor

4   appropriate. The contents of Mr. Larian's active files will not assist Mattel in

5   determining whether files have been deleted, which files have been deleted, or

6   whether deleted files can be recovered. And rummaging through the contents of

7   those files would be an impermissibly overbroad and burdensome exercise. Part

8   II(B), *infra*.

9                        **STATEMENT OF FACTS**

10      **A.    Mattel's First Request To Access to Mr. Larian's Hard Drives**

11          On June 13, 2007, Mattel served its First Set of Requests for Production of

12   Documents to Isaac Larian seeking 276 categories of documents. Searcy Decl.

13   Ex. 3. Request Nos. 222 and 224 sought the production of Mr. Larian's "storage

14   device[s] used to create, prepare, generate, copy, transmit, receive, delete or modify

15   any digital information relating to Bratz, Angel or Bryant," as well as

16   documentation related to the purchase or disposition of those devices. *Id.* Ex. 3 at

17   81-82. Mr. Larian objected to the production of his hard drives on relevancy,

18   privacy and privilege grounds, among others. Declaration of Annette L. Hurst in

19   Support of MGA Parties' Opposition to Motion for Preclusive Relief ("Hurst

20   Decl."), Decl. Ex. A at 212-213.

21          On October 11, 2007, Mattel moved to compel production of Mr. Larian's

22   hard drives to find evidence "that goes to explicit allegations made in its

23   counterclaims," namely, spoliation of evidence. Docket No. 2186[1] at 25:6-7, 16-

24   20; Hurst Decl. Ex. D at 284:5-7 ("We need access to those hard drives, so we can

25   image them to seek what was destroyed"); *see generally* Searcy Decl. Ex. 4 (Mot.

26   ───────────────────────────
[1] Docket No. 2186, Mattel's Reply Memorandum In Support Of Mattel, Inc.'s
27   Motion Objecting To Portions Of Discovery Master's December 31, 2007 Order
     Regarding Hard Drives, was previously filed with the Court and is being lodged
28   concurrently with the MGA Parties' Opposition. It has been consecutively
     numbered pursuant to Local Rule.

EXHIBIT *10* PAGE 185

1   to Compel).  Discovery Master Edward Infante denied Mattel's motion to compel

2   production.  Searcy Decl. Ex. 5.  In seeking to overturn Judge Infante's ruling that it

3   was not entitled to inspect Mr. Larian's hard drives, Mattel argued that "[s]poliation

4   is an element of Mattel's RICO claim and would also support an evidentiary

5   inference of intent and guilty knowledge on defendants' part."  Docket No. 2186 at

6   27:8-10.  The Court overruled Judge Infante's Order, calling it "clearly erroneous

7   and contrary to law" and ordered the inspection.  Searcy Decl. Ex. 6 at 132:14-15.

8   **B.   Mattel Agrees Undeleted, User-Generated Files Are Irrelevant To**
    **Its Assertion Of Spoliation.**

9

10   The February 2008 Order required Mr. Larian to produce his computer hard

11   drives so Mattel's forensic consultant could inspect them for evidence of spoliation.

12   *Id.* Ex. 6.  In support of its motion, Mattel had argued that its requests for

13   production were narrowly tailored to discover evidence of improperly deleted files

14   and were "the antithesis of a "fishing expedition": they are intended to demonstrate

15   that the fish are gone."  Docket No. 2186 at 24:14-16.

16   At the hearing, the Court confirmed that Mattel sought production of the hard

17   drives "to prove up the allegation that documents were deleted ... and that the hard

18   drives need to be inspected by [Mattel] for that purpose."  Hurst Decl. Ex. B at

19   261:5-11.  Mattel agreed and reiterated the goal of its proposed inspection:

20          Mr. Quinn:  ... we are seeking this evidence to prove the
               predicate act of deletion of information from the hard
21          drives.

22          The Court:  As opposed to the actual documents on the
               hard drives themselves.
23
            Mr. Quinn:  Yes.  Exactly.
24

25   *Id.* at 264:15-20.  The Court then ordered the production and inspection within the

26   following parameters:

27          Mattel's consultant shall have the right to inspect any and
               all information on said hard drives to determine:
28

MGA PARTIES' OPPOSITION TO
MOTION FOR PRECLUSIVE RELIEF
CV 04-9049 SGL (RNBx)

EXHIBIT 10 PAGE 186

1        (a) whether, when and by whom any information was deleted, destroyed, written over, lost, exported, moved, spoliated or otherwise rendered inaccessible or unreadable;

(b) whether, when and by whom any attempts were made to delete, destroy, write over, export, move, spoliate or otherwise render inaccessible or unreadable any information on those hard drives;

(c) the current or past presence or use of any hardware or software tool to accomplish any of the actions identified above;

(d) whether any information deleted, destroyed, written over, lost, exported, moved, spoliated or otherwise rendered inaccessible or unreadable may be recovered; and

(e) to recover any such information, in whole or in part.

Searcy Decl. Ex. 6 (the "Inspection Order") at 133:4-17.

    *After* entry of the Inspection Order, in May 2008, Mattel drafted a stipulated protocol governing the execution of the Larian drive inspection. The protocol provides in relevant part:

> With respect to the hard drives, [Mattel's consultant] 42 Consulting, LLC, may inspect the images of the hard drives in their entirety, including … metadata for all files (allocated and unallocated) … . Notwithstanding the foregoing, 42 Consulting, LLC shall not access the user generated content of any active file that exists on the hard drives. …

*Id.* Ex. 8 at 159, ¶ 6. In May 2008, Mr. Larian turned over seven computer hard drives for inspection and analysis. Mattel's expert inspected and analyzed the media over the course of forty-three days and documented his findings in a June 2008 "Preliminary Examination Report." *Id.* Ex. 7. That initial report, authored by Christopher Pavan, concluded that the drives contained evidence of improper deletion. *Id.* at 137.

   **C.**   **MGA's Expert Challenges Mattel's Findings On Spoliation**

    In response to Pavan's report, MGA's expert opined that Pavan "could have but chose not to determine whether" deleted files were otherwise active on one of

           4

EXHIBIT *10* PAGE 187

1   Mr. Larian's seven hard drives. *Id.* Ex. 2 at 9. The methods identified that had not

2   been used included, *inter alia*, using fingerprints generated by hash algorithms that

3   compare the contents of files to determine whether they are identical. *Id.* Ex. 2 at 9;

4   Hurst Decl. Ex. C at 279:17-280:9. By running such an analysis on two files they

5   can be compared without any review of the contents. Searcy Decl. Ex. 2 at 9. Such

6   further analysis would have assisted Mattel's consultant in determining that,

7   although a file (*e.g.*, a Word document) may have been deleted on one of

8   Mr. Larian's hard drives, the same document, in fact, was active (or not deleted) on

9   one or more of his other hard drives. *Id.* Ex. 2 at 14 ("Thus, although 42 LLC's

10  analysis identified a number of deleted user-created documents on the Larian

11  Media, it chose not to determine whether those documents might be active and

12  accessible in other places on the Larian Media. Indeed, ... Mr. Pavan stated that he

13  had not searched the Larian Media for active versions of the deleted files, and that,

14  'had I found [the deleted files] ...existed somewhere else I would ... not have

15  included them'"); Hurst Decl. Ex. C at 274:14-275:20; 277:25-278:4. Mattel's

16  expert agreed that comparing hash values would have been a "very valid technique"

17  that would have matched active file "fingerprints" to their deleted counterparts.

18  Mot. at 11:16-18; Hurst Decl. Ex. C at 279:23-280:9. 42 Consulting apparently

19  cared little for the fairness of its analysis, however, since that concededly valid

20  alternative technique, which might have wholly undermined its preliminary

21  conclusion, was "not on the list of things to get done in priority order." Hurst Decl.

22  Ex. C at 279:4-14.

23      Thus, MGA criticized Mattel not for failing to review content of active files

24  but for failing to assess whether files it thought were deleted from one machine

25  were alive and well on one of the other six Larian hard drives being inspected.

26  Searcy Decl. Ex. 2 at 7, 14. Specifically, Mattel's experts could have, as noted,

27  "search[ed] hash values" of active files (Hurst Decl. Ex. C at 279:17-280:9) to find

28  matches to deleted files, compared files in the allocated (*i.e.*, active) space on the

5

EXHIBIT 10 PAGE 188

1   hard drives with those files Mattel determined had been deleted (*id.* at 274:14-

2   275:20; 279:4-16), or reviewed the metadata of active and deleted files (*id.* at

3   273:6-8; Searcy Decl. Ex. 8 at 159, ¶ 6) to ascertain any matches. Each of these

4   forensically sound methods could have been performed without opening a single

5   nondeleted file on Mr. Larian's computer. Searcy Decl. Ex. 2 at 9 ("… although

6   unable to view the content of active files on the Larian Media, 42 LLC could …

7   [listing various forensic techniques for reconciling deleted versus nondeleted

8   files]").

9       **D.   Mattel Seeks A "Supplemental" Production**

10          After its original inspection of Mr. Larian's hard drives, Mattel requested that

11   Mr. Larian "supplement" his hard drive production pursuant to Fed.R.Civ.P. 26(e).

12   *See Id.* Exs. 11, 12. This "supplementation" request included for the first time a

13   request for the active files. *Id.* Unsurprisingly, the MGA Parties resisted the

14   expanded scope of this "supplemental" production—so Mattel filed a motion to

15   compel. *Id.* Exs. 16-19. In its motion to compel, Mattel sought to gain access to

16   the contents of all nondeleted files on Mr. Larian's hard drives. *Id.* Ex. 16 at 338,

17   n10. These nondeleted, or active, files include *all e-mail*, as well as all other

18   documents created or stored by Mr. Larian using programs such Microsoft Word,

19   Excel, PowerPoint, and the like. Mattel argued that it was entitled to access the

20   entire contents of all of these active files for two reasons: first, because MGA's

21   expert had criticized Mattel for failing to do so during its earlier analysis; and

22   second, because some documents on Mr. Larian's hard drives would be relevant to

23   the pending claims. *Id.* Exs. 19 at 413:22-24; 16 at 347:6-10. Discovery Master

24   O'Brien rejected both of these contentions.

25          As to the first point, as set out above, MGA's expert in fact opined that

26   Mattel's consultant should have compared the electronic *fingerprint* of deleted and

27   nondeleted files using methods that did not require Mattel to transgress the

28   prohibition on opening "active" files to review their content. *Id.* Ex. 2 at 9

EXHIBIT *10* PAGE 189

1    ("Effectively, then, although unable to view the content of active files on the Larian
2    Media, 42 LLC could … and chose not to [for example] determine whether deleted
3    files resided in active space across the Larian Media through file name comparison
4    and hash file analysis …"). Thus, the criticism was *not* in any way founded upon
5    the contents of the active files—rather on the failure to carry out a procedure that
6    required no access to the contents of those files. *Id.* Discovery Master O'Brien
7    confirmed this view in his findings rejecting Mattel's motion: "there is no
8    connection between Mattel's claim that it is entitled to view *active files* and the
9    inspection permitted by the Court relating to *deleted files*." *Id.* Ex. 12 at 187:5-7.
10         On the second point, Discovery Master O'Brien also rejected the overbroad
11   and burdensome request for the entire contents of Mr. Larian's hard drive. *Id.* at
12   189:23-24. This was precisely the type of "fishing expedition" that Discovery
13   Master Infante rejected when Mattel first sought production of the hard drives, as
14   well as the type of review Mattel argued it was not interested in pursuing. *Id.* Ex. 5
15   at 124:1-15; Hurst Decl. Exs. B at 264:15-20; D at 284:5-7 ("We need access to
16   those hard drives, so we can image them to seek what was destroyed"). Discovery
17   Master O'Brien thus found that a supplemental production was appropriate only
18   within the parameters of the Court's Inspection Order. Searcy Decl. Exs. 12 at
19   289:12-22; 6 at 133:4-17. That Order included the parties' agreement prohibiting
20   Mattel's consultant from opening nondeleted files to review the content (*i.e.*,
21   "access[ing] the content of user generated active files"). *Id.* Exs. 8 at 159, ¶ 6; 12 at
22   289:23-24. Discovery Master O'Brien thus denied Mattel's request insofar as it
23   ventured into review of nondeleted files for purposes beyond the scope of this
24   Court's earlier Order. *Id.* Ex. 12 at 289:23-24. As he pointed out, "[t]he fact that
25   Mattel's counsel agreed [not to access user generated content of any active file]
26   following the issuance of the Court's February 27, 2008 Order suggests that even
27   Mattel realizes the … Order was not designed to allow it access to active files on
28   the Hard Drives." *Id.* Ex. 12 at 187, n 6.

EXHIBIT _10_ PAGE _190_

1

**ARGUMENT**

2  I.  **MATTEL'S MOTION FOR ISSUE SANCTIONS IS FRIVOLOUS.**

3       Mattel's expert Pavan failed to perform an analysis on Mr. Larian's hard

4  drives that required no access to the contents of the active files, but would have

5  provided more accurate information about whether any files had been permanently

6  deleted. Mr. Pavan was rightfully criticized by MGA's expert for having failed to

7  perform that alternative analysis. Mattel now either misunderstands or

8  mischaracterizes that criticism, putting it forth as a basis for gaining access to the

9  contents of Mr. Larian's active files that is not and was never needed to perform the

10 alternative analysis. On that basis, Mattel seeks an order from this Court

11 precluding the MGA Parties from challenging Mattel's allegations of spoliation.

12 Mot. at 8. In support, Mattel offers two equally untenable legal theories: Rule

13 37(b) and the doctrine of judicial estoppel.

14      As demonstrated below, Mattel comes nowhere near to establishing the

15 requirements for such sanctions, which, in all events would be entirely

16 inappropriate on this factual record. First, Mattel has failed to establish that the

17 MGA Parties violated any prior order of this Court as required for issue sanctions—

18 to the contrary, Mattel's complaint is that MGA and Mr. Larian have complied with

19 prior orders to which it stipulated but that it now does not like. Part A, *infra*.

20 Second, judicial estoppel can serve as no substitute ground here for issue sanctions.

21 If anyone should be estopped on the issue of the scope of review of the Larian hard

22 drives, it is Mattel. Part B, *infra*.

23      A.  **No Issue Sanction Can Be Imposed Where MGA Has Fully**
24          **Complied With The Relevant Orders.**

25      A fundamental prerequisite to the grant of issue sanctions under Rule 37(b) is

26 the violation of a prior court order. Fed. R. Civ. P. 37(b)(2)(A) ("If a party or a

27 party's officer, director, or managing agent ... *fails to obey an order* to provide or

28 permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where

OHS West:260699129.7                              8                    MGA PARTIES' OPPOSITION TO
                                                                      MOTION FOR PRECLUSIVE RELIEF
                                                                      CV 04-9049 SGL (RNBx)

EXHIBIT <u>10</u> PAGE <u>191</u>

1    the action is pending may issue further just orders.") (emphasis added); *see, e.g.,*

2    *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.,* 982 F.2d 363, 367 (9th

3    Cir. 1991). Mattel has not identified any order pursuant to which any MGA party is

4    required to allow Mattel to review the contents of nondeleted files on Mr. Larian's

5    hard drives.

6         The Inspection Order was not an order requiring production of active files.

7    Rather, that Order required the production of Mr. Larian's computer hard drives to

8    allow Mattel's consultant to search for evidence of *deleted* files and, if any were

9    found, to recover them. Searcy Decl. Ex. 6 at 133:4-17. By definition, access to

10   the contents of the active files was unnecessary to perform that task. Indeed, at the

11   hearing during which it sought the Inspection Order, Mattel expressly represented

12   that it required no access to the actual documents on Mr. Larian's active files in

13   order to perform such an analysis. Hurst Decl. Ex. B at 264:15-20. Consistent with

14   its representation at the hearing, shortly after the Court entered its Order, Mattel

15   drafted a stipulated protocol governing the inspection which *expressly prohibited* its

16   consultant from "access[ing] the user generated content of any active file that exists

17   on the hard drives." Searcy Decl. Ex. 8 at 159, ¶ 6. MGA and Mr. Larian then

18   produced the hard drives pursuant to the stipulated protocol and as required by the

19   Inspection Order, and Mattel's expert, Mr. Pavan, performed the inspection and

20   analysis pursuant to the Inspection Order, and the stipulated protocol governing it.

21   *Id.* Ex. 7 at 135. Given this procedural history, as well as the overbreadth, invasion

22   of privacy, invasion of the attorney-client privilege, and extreme burden that would

23   have been imposed by permitting review of Mr. Larian's active files, it is plain that

24   the February 27 Order did not require production of the active files. Mattel's

25   assertion that the February 27 Inspection Order authorized Mattel to gain access to

26   the contents of all of Mr. Larian's active files must be rejected—as Discovery

27   Master O'Brien found.

28        It was only much later, long after the Inspection Order, that Mattel sought an

MGA PARTIES' OPPOSITION TO
MOTION FOR PRECLUSIVE RELIEF
CV 04-9049 SGL (RNBx)

EXHIBIT *10* PAGE 192

1   order expressly permitting it to review active files on Mr. Larian's hard drives. The
2   Discovery Master rejected that request. *Id.* Exs. 17-19, 12. Absent an order, Mattel
3   is not entitled to review active files, and no MGA party has been required to
4   produce them. *See id.* Exs. 6 at 133:4-17; 8 at 159, ¶ 6. MGA and Mr. Larian have
5   produced the hard drives they were required to produce and the analysis authorized
6   by the Court was performed. *See id.* Exs. 2, 7. Issue sanctions are wholly
7   inappropriate.

8         Mattel's cases support this conclusion. In each case upon which it relies
9   where issue sanctions were granted under Rule 37(b), there was a prior order with
10   which a party had failed to comply. In *Davis v. Nevarez*, No. 3:07-CV-00427-EJL-
11   LMB, 2009 WL 1468705, at *5 (D. Idaho, May 22, 2009), the court excluded
12   defendant's testimony at trial because he failed to appear for deposition despite
13   court order to do so. In *Kern River Gas Transmission Co. v. 6.17 Acres of Land,*
14   *More or Less, in Salt Lake Cty, Utah*, 156 Fed. Appx. 96, 99-100 (10th Cir. 2005),
15   the court precluded the defendant from introducing expert testimony at trial because
16   it failed to comply with court-ordered disclosure of experts. And in *Reilly v.*
17   *NatWest Mkts. Group, Inc.*, 181 F.3d 253, 269 (2d Cir. 1999), the corporation failed
18   to produce a person with sufficient knowledge in response to rule 30(b)(6)
19   deposition notice and the court excluded testimony at trial from other witnesses
20   with more knowledge on the subject because the corporation violated the court's
21   order requiring timely disclosure. No such facts exist here, and Mattel offers no
22   basis for issuing evidentiary sanctions against any MGA party. Its request for
23   sanctions must be denied.

24   **B.    Judicial Estoppel Supplies No Ground For Issue Sanctions Against
25         MGA; If Anyone, It Is Mattel Who Is Directly Estopped By The
           Prior Court Orders.**

26         Mattel next argues that the MGA Parties should be judicially estopped from
27   "using active files, or Mattel's failure to examine them" to demonstrate that
28   Mr. Larian did not improperly delete his electronic files. Mot. at 10:1-3. Again,

EXHIBIT _10_ PAGE 193

1   this contention should be soundly rejected.

2        Judicial estoppel is an equitable doctrine that precludes a party from gaining

3   an advantage by asserting one position, and then later seeking an advantage by

4   taking a clearly inconsistent position. *Rissetto v. Plumbers & Steamfitters Local*

5   *343*, 94 F.3d 597, 600-601 (9th Cir. 1996). There are three requirements for

6   application of judicial estoppel: (1) inconsistency of position; (2) judicial

7   acceptance of the earlier position; and (3) unfair disadvantage. *Hamilton v. State*

8   *Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001); *United States v. Hook*,

9   195 F.3d 299, 306 (7th Cir. 1999). Mattel cannot meet these fundamental

10  requirements here because MGA has taken no inconsistent position to Mattel's

11  disadvantage (Part 1, *infra*), and in fact Mattel is directly estopped by the prior

12  orders on this issue which are the law of this case. Part 2, *infra*.

13        1.    The MGA Parties Are Not Subject To Judicial Estoppel.

14        The MGA Parties have consistently maintained that Mattel should not be

15  given access to the content of the active files on Mr. Larian's hard drives, and that

16  no such review is necessary to determine whether materials were improperly

17  deleted from his computer. *See* Searcy Decl. Exs. 2 at 9 ("Although unable to view

18  the content of active files on the Larian Media..."); 12 at 182:2-6; 17 at Sections E,

19  F, G, H. The proper attack on Mr. Pavan's opinion was no exception to this

20  consistent position. MGA's expert, Samuel Rubin, challenged Mr. Pavan not

21  because he failed to review the *content* of any active files, but because he failed to

22  perform a valid procedure that rested in no way on access to the content of the

23  active files, and instead was a procedure that could have been performed (but was

24  not) without such access. *Id.* Ex. 2 at 9.

25        Mattel argues that, in an effort to prevent production of the contents of

26  Mr. Larian's seven hard drives, the MGA Parties asserted that "active user

27  generated files have nothing to do with any purported spoliation because such files

28  have not been deleted." Mot. at 9:5-6. Correct. And, Mattel agreed with this

EXHIBIT 10 PAGE 194

1   position, arguing that it was not looking to review "the actual documents on the
2   hard drives themselves," because it only sought evidence of deletion. Hurst Decl.
3   Ex. B at 264:15-20. The problem is that Mattel's expert Pavan then apparently
4   failed to conduct a complete analysis, or at least did not disclose the completion of
5   such analysis in his report. Whether the analysis was in fact completed and the
6   results discarded because they were unfavorable; whether the expert avoided,
7   ignored, or his inquiry was directed away from, such exculpatory evidence; or
8   whether he was simply inadequate to the task, in no event was this MGA's fault nor
9   the product of any inconsistent position taken by MGA or its proffered witnesses.
10         Mattel contends that, in an effort to prevent the "supplemental production" of
11   Mr. Larian's hard drives in April 2009, the MGA Parties argued that Mattel's
12   expert "should have considered the contents of active files" when assessing whether
13   evidence was spoliated. Mot. at 9:3-4. Remarkably, Mattel offers no support for
14   this assertion. *Id.* No MGA party has ever taken this position. Instead, the MGA
15   Parties have consistently argued that the *content* of user-generated active files is
16   irrelevant to Mattel's assessment of whether Mr. Larian improperly deleted
17   electronic files from his hard drives. Searcy Decl. Ex. 2 at 7, Ex. 17 at Sections E,
18   F, G, H. The MGA Parties have not wavered from this position, and Mattel cannot
19   point to any facts that suggest otherwise. Thus, the fundamental requirement for
20   application of judicial estoppel, that a party take inconsistent positions, is not met
21   here.
22         Unsurprisingly, since the MGA Parties took no inconsistent position, they
23   also have not been the beneficiary of any unfair advantage. As discussed at length
24   above, the attack on the inadequacy of Mattel's expert analysis was carried out in a
25   fashion entirely consistent with the MGA Parties' contention that no review of the
26   content of active files should or need occur to assess the spoliation issue—as Mattel
27   has repeatedly admitted and this Court has previously found.
28

MGA PARTIES' OPPOSITION TO
MOTION FOR PRECLUSIVE RELIEF
CV 04-9049 SGL (RNBx)

EXHIBIT *10* PAGE 195

1      2.   **Mattel Is Directly Estopped By Its Prior Stipulation And The Prior Court Orders.**

2

3          In obtaining the Orders of this Court providing it limited access to

4   Mr. Larian's hard drives, Mattel repeatedly urged the Court that this would not be

5   intrusive because it need not review the contents of active files. Hurst Decl. Ex. B

6   at 264:17-20 ("Mr. Quinn: … We are seeking this evidence to prove the predicate

7   act of deletion of information from the hard drives. The Court: As opposed to the

8   actual documents on the hard drives themselves. Mr. Quinn: Yes. Exactly.");

9   Docket No. 2186 at 27:6-7 ("Mattel is seeking to discover evidence of spoliation by

10  an analysis of what is not on the drives, when the information was deleted, and

11  how."). Mattel then drafted a stipulation governing the protocol for inspection of

12  Mr. Larian's computers, whereby its own expert was expressly prohibited from

13  "access[ing] the user generated content of any active file that exists on the hard

14  drives." Searcy Decl. Ex. 8 at 159, ¶ 6. Mattel now complains that MGA

15  unilaterally imposed that condition, but the agreement is on Mattel's counsel's

16  letterhead, and frankly, this contention is ridiculous. Mot. at 5:11-12. This would

17  mean that Mattel's counsel signed a stipulation without reading it. Or agreed to

18  something accidentally. Certainly there is no basis to believe that the MGA Parties

19  have ever unilaterally imposed anything on Mattel in this action. When Mattel has

20  a problem, it never hesitates to bring it to the Court's attention. If the stipulation

21  were not its own, we would have heard about it long before now.

22          Rather, Mattel faced the prospect of denial of its motion for full access to the

23  hard drives. Such access is highly intrusive, plainly is vastly overbroad in that it

24  encompasses numerous materials that have nothing to do with this lawsuit, and

25  furthermore creates an extreme burden in connection with the protection of the

26  attorney-client privilege. Searcy Decl. Ex. 17 at Sections D, F, G, & H. Given the

27  fashion in which Mattel previously urged its position, and obtained the right to a

28  limited review of the hard drives, it is Mattel who is estopped from taking a

EXHIBIT _10_ PAGE _196_

1    contrary position—both by concepts of unfair advantage and by direct estoppel, or

2    law of the case. "No litigant deserves an opportunity to go over the same ground

3    twice, hoping that the passage of time or changes in the composition of the court

4    will provide a more favorable result the second time." *Disimone v. Browner*, 121

5    F.3d 1262, 1266 (9th Cir. 1997); *see also id.* at 1266-67 (noting that "where

6    litigants have once battled for the court's decision, they should neither be required,

7    nor without good reason permitted, to battle for it again." (citations omitted));

8    *United States v. Lummi Indian Tribe*, 235 F.3d 443, 452 (9th Cir. 2000) (noting that

9    a court should generally refrain from "reconsidering an issue previously decided by

10    the same court, or a higher court in the identical case.").

11    　　Mattel is the party estopped from asserting full access to Mr. Larian's hard

12    drives for the purpose of a spoliation analysis.

13    **II.    MATTEL'S REQUEST FOR ALTERNATIVE RELIEF IS AN**
14    **UNTIMELY AND MERITLESS OBJECTION TO THE DISCOVERY**
     **MASTER'S MAY 18, 2009 ORDER.**

15    　　Approximately one year after first analyzing Mr. Larian's hard drives, Mattel

16    sought a supplemental production pursuant to Fed.R.Civ.P. 26(e). The Discovery

17    Master granted Mattel's request for supplementation, but denied the remainder of

18    its motion insofar as it requested access to all active files on Mr. Larian's hard

19    drives. Mattel now seeks improperly to overturn the latter portion of Mr. O'Brien's

20    order. Such a challenge is both untimely (Part A, *infra*), and meritless. Part B,

21    *infra*.

22    **A.    Mattel's Request For Alternative Relief Is Simply An Untimely**
     **Objection To The Discovery Master's Order.**
23

24    　　As set out in detail herein, the thrust of the Motion is that if MGA is not

25    precluded from presenting evidence contrary to Mattel's spoliation theory, then

26    Discovery Master O'Brien's Order No. 34 should be overruled as "clearly

27    erroneous." Mot. at 10:23-14:15. Mattel's alternative motion is, in essence, a Rule

28    72(a) objection to Discovery Master O'Brien's May 18, 2009 Order No. 34. But

1    that objection is untimely. Rule 72 provides that "[a] party may serve and file

2    objections to the order *within 10 days* after being served with a copy. A party may

3    not assign as error a defect in the order not timely objected to." Fed.R.Civ.P. 72(a)

4    (emphasis added); *see also* Civ.L.R. 72-2.1 ("Such motion shall be filed within ...

5    ten (10) days of service of a written ruling"). The Discovery Master's rulings are

6    treated like those of a magistrate judge and thus Rule 72 governs. Searcy Decl. Ex.

7    14, ¶ 6. The ten day period for filing objections to Order No. 34 expired nearly a

8    month before this Motion was brought. Mattel's "alternative" requested relief must

9    therefore be denied as an untimely objection to that Order. *See Simpson v. Lear*

10   *Astronics Corp.*, 77 F.3d 1170, 1174-75 (9th Cir. 1996) (noting that failure to

11   timely object forfeits the right to appeal magistrates decision because, among other

12   things, it deprives the district court of the ability to review the decision); *see also,*

13   *e.g., Folb v. Motion Picture Indus. Pension & Health Plans*, 16 F. Supp. 3d 1164,

14   1168 (C.D. Cal. 1998) ("A party who fails to file timely objections to a magistrate

15   judge's ruling on a nondispositive motion within ten days forfeits the right to

16   challenge the ruling.").[2]

17   **B.   Even Were The Court To Consider An Untimely Challenge To**
18        **The Discovery Master's Order, Which It Should Not, That**
        **Challenge Should Be Rejected.**

19        Having been granted access to Mr. Larian's hard drives a second time, Mattel

20   now seeks to expand the Court's Inspection Order and rescind the parties'

21   _____
     [2] Mattel's footnote requesting even further alternative relief in the form of
22   reconsideration also must be rejected. Mot. at 11, fn 33. Mattel relies on *Smith v.*
     *Massachusetts*, 543 U.S. 462, 475 (2005), for the proposition that the Court may
23   "reconsider" the Discovery Master's ruling. *Smith* is inapposite. The Federal Rules
     provide a mechanism for a District Judge to review and correct, if necessary, a
24   Magistrate Judge's (or Discovery Master's) ruling when it is clearly erroneous or
     contrary to law. Fed.R.Civ.P. 72(a). A motion for reconsideration, however, is
25   only appropriate in circumstances where a District Court is asked to review its own
     orders after it (1) is presented with newly discovered evidence; (2) has committed
26   clear error or the initial decision was manifestly unjust; or (3) is presented with an
     intervening change in controlling law. *School District 1J, Multnomah County v.*
27   *ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir.1993), cert. denied, 512 U.S. 1236, 114
     S.Ct. 2742, 129 L.Ed.2d 861 (1994). Otherwise, Rule 72's limitations would be
28   meaningless. Mattel makes no effort to demonstrate it meets any one of these
     requirements.

EXHIBIT *10* PAGE *194*

1   agreement limiting the scope of its expert's review. In so doing, Mattel challenges

2   the Discovery Master's findings that "Mattel does not have the right to rifle through

3   Larian's electronic files looking for unspecified information." Mot. at 13:6-11.

4   Mattel argues that none of the reasons relied upon by Mr. O'Brien in reaching this

5   conclusion "is implicated by access to active files for the purpose of analyzing and

6   recovering deleted files." *Id.* at 13:12-14. At least with this argument Mattel

7   admits that it is mounting an untimely direct challenge to Discovery Master

8   O'Brien's Order. But Mattel utterly fails to meet the clearly erroneous standard of

9   review governing these findings. Indeed, Mattel does not even cite the pertinent

10   authorities delimiting the appropriate scope of review of a special master's orders.

11         Mattel's motion for supplementation included a request for an order

12   permitting it to review active files because "documents on Larian hard drives ... are

13   relevant to numerous claims, including Mattel's copyright infringement, theft of

14   trade secret and unfair competition claims and MGA's trade dress and unfair

15   competition claims." Searcy Decl. Ex. 16 at 347:6-10. This new request was

16   inconsistent with Mattel's original request for production, sought to expand the

17   Court's Inspection Order, and seeks to rescind the parties' protocol governing the

18   inspection. Mr. O'Brien rejected Mattel's request for four reasons, each of which

19   was found sufficient to deny Mattel's request altogether. *Id.* Ex. 12 at 9-11.

20         Mattel contends Order No. 34, insofar as it denies access to active files, is

21   clearly erroneous. "A non-dispositive order entered by a magistrate must be

22   deferred to unless it is 'clearly erroneous or contrary to law.'" *Grimes v. City and*

23   *County of San Francisco*, 951 F.2d 236, 241 (9th Cir. 1991). "Under this standard,

24   the district court should overturn the magistrate judge's ruling only when the

25   district court is 'left with the definite and firm conviction that a mistake has been

26   committed.'" *Concrete Pipe & Prods. of Cal., Inc. v. Constrs. Laborers Pension*

27   *Trust*, 508 U.S. 602, 622 (1993). Mr. O'Brien's Order is not clearly erroneous but

28   is, instead in all respects correct and fully supported by the factual record and

OHS West:260699129.7                                16                    MGA PARTIES' OPPOSITION TO
                                                                      MOTION FOR PRECLUSIVE RELIEF
                                                                         CV 04-9049 SGL (RNBx)

EXHIBIT 10 PAGE 199

1  pertinent authorities; thus, were the Court to consider this improper motion

2  presenting an untimely objection to that Order, the Order should nonetheless be

3  affirmed.

### 1.   The Plain Language Of The Inspection Order Limited Review To Deleted Files.

6  The Discovery Master's first basis for rejecting Mattel's request was that the

7  plain language of the Inspection Order limited the scope of the inspection, and that

8  scope does not include "active user generated files." Searcy Decl. Ex. 12 at 9-10;

9  *see also* Ex. 17 at 371:12-14 ("The Order expressly limited Mattel's inspection of

10  Mr. Larian's hard drives solely to an expert's examination for the purpose of

11  determining whether electronic evidence had been destroyed.").

12  In urging the Court to permit the inspection, Mattel argued that it sought

13  evidence "of what is *not* on the drives, when the information was deleted, and

14  how." Docket No. 2186 at 27:6-7. At the February 25, 2008, hearing on this issue,

15  the Court confirmed that Mattel was not interested in "the actual documents," to

16  which Mattel answered "Yes. Exactly." Hurst Decl. Ex. B at 264:15-20. The Court

17  then issued the Inspection Order, which is "expressly limited ... to determining

18  whether anyone had 'deleted, destroyed, written over, lost, exported, moved,

19  spoliated or otherwise rendered inaccessible or unreadable' any information on the

20  Hard Drives." Searcy Decl. Ex. 12 at 187:2-4. Mr. O'Brien also did not lose sight

21  of the fact that Mattel *agreed* not to access user generated content, thereby

22  suggesting that Mattel realized the Court's Order "was not designed to allow it

23  access to active files." *Id.* Ex. 12 at 187, fn 6; Ex. 8 at 159, ¶ 6.

24  On these facts, the Discovery Master was correct in concluding that the

25  Inspection Order is limited in scope to reviewing deleted files.

### 2.   Mattel Failed To Show How "All" Active Files Are Relevant.

27  Mr. O'Brien also found that Mattel failed to show that "all active files on the

28  Hard Drives are reasonably calculated to lead to the discovery of admissible

EXHIBIT *10* PAGE *200*

1   evidence regarding a Phase 2 issue" and, thus, the request is overbroad and

2   "improperly seeks to discover irrelevant information." *Id.* Ex. 12 at 187:15-19.

3   Mr. O'Brien specifically recognized that "[w]hat Mattel is essentially requesting is

4   that it should be allowed to access any content on the Hard Drives whether or not

5   those active files have any relevance to a claim or defense in this case." *Id.* at

6   187:13-15. He also correctly noted that the issue is "whether Larian is required to

7   supplement the *discovery response* in question ..." (*id.* Ex. 12 at 184:19-21) and,

8   thus, unrestricted access to all information on Mr. Larian's hard drives is beyond

9   the scope of the Inspection Order and any reasonable discovery requests. *Polec v.*

10  *Nw. Airlines (In re Air Crash Disaster)*, 86 F.3d 498, 539 (6th Cir. 1996) ("Rule

11  26(e)(2) requires that a party supplement a discovery response in certain

12  circumstances. It does not require that a party volunteer information not fairly

13  encompassed by the earlier request").

14         If Mattel seeks discovery into issues unrelated to deletion, it should propound

15  discovery requests. Its first road to discovery should not be to open up every

16  electronic file on Mr. Larian's hard drives. Mr. O'Brien was correct to conclude

17  that wholesale access to Mr. Larian's hard drives is inappropriate because those

18  drives contain many documents and much information wholly irrelevant to this

19  action.

20         **3.     Mattel Is Not Otherwise Entitled To Unrestricted Access To Mr. Larian's Hard Drives.**

21

22         The Discovery Master also denied Mattel's request to review active files on

23  the ground that Mattel does not have the right to unrestricted access to every file on

24  Mr. Larian's hard drives. Searcy Decl. Ex. 12 at 187:12-24. As the MGA Parties

25  noted "having a right to *documents* does not give Mattel a right to the *media* on

26  which those documents reside." *Id.* Ex. 17 at 371:4-6. *See* Fed.R.Civ.P. 34(a)(1)

27  Adv. Comm. Notes (Amendment of Rule 34 relating to "electronically stored

28  information is not meant to create a routine right of direct access to a party's

18                    MGA PARTIES' OPPOSITION TO
MOTION FOR PRECLUSIVE RELIEF
CV 04-9049 SGL (RNBx)

EXHIBIT *10* PAGE 201

1   electronic information system, although such access might be justified in some

2   circumstances. Courts should guard against undue intrusiveness resulting from

3   inspecting or testing such systems."). "Mattel has the right to ask [Mr. Larian] to

4   produce specific [non-privileged, relevant] documents; it does not have the right to

5   go into [his] electronic 'drawers' to see what is there."  Searcy Decl. Ex. 12 at

6   187:22-24.  Finding that this unfettered look-see approach "is precisely the relief

7   Mattel seeks," Mr. O'Brien correctly denied the request. *Id.* Ex. 12 at 187:24-11:1.

8         4.    **Unfettered Access To Active Files Will Endanger The**
              **Attorney-Client Privilege And Privacy Rights.**
9

10        Mr. O'Brien's fourth basis for denying Mattel's request is that unfettered

11   access to Mr. Larian's active files would unnecessarily endanger his privacy

12   interests, as well as the attorney-client privilege. *Id.* Ex. 12 at 188:2-13.  As

13   Mr. O'Brien pointed out "if Mattel is given access to all active files on the Hard

14   Drives, the Discovery Master cannot see how Larian can protect his privileged

15   information." *Id.* Ex. 12 at 188:5-6.  Indeed, the MGA Parties urged the Discovery

16   Master to deny Mattel's request for this very reason. *Id.* Ex. 17 at 372:16-27.

17        Mattel suggests a protocol for protecting these interests, but because Mattel

18   has no legitimate purpose for accessing the active user generated files, such a

19   protocol is unwarranted.  Moreover, the protocol would in essence require the

20   MGA Parties' counsel to spend countless hours reviewing each and every document

21   on the drives, an unreasonable and atrociously expensive burden.  Indeed, in

22   recognition of this burden, the parties have long had an agreement that privileged

23   materials created after the commencement of the litigation need not be logged.

24   Now, Mattel not only seeks to contravene its own prior stipulation, but that

25   agreement as well.  As the Discovery Master found, "Larian should not be burdened

26   with" unnecessary undertakings "because there are less intrusive means by which

27   Mattel could obtain non-privileged, relevant documents, namely through document

28   requests." *Id.* Ex. 12 at 188:2-13.  *See United States v. Bauer*, 132 F.3d 504, 510

EXHIBIT *10* PAGE 202

1 | (the attorney-client privilege is "the most sacred of all legally recognized privileges,

2 | and its preservation is essential to the just and orderly operation of our legal

3 | system").

4 |     Based on the facts of this case, the Discovery Master properly denied

5 | Mattel's request for access to active files.

6 | **CONCLUSION**

7 |     For all of the foregoing reasons, Mattel's motion should be denied in its

8 | entirety.

9 |

10 | Dated:   July 27, 2009          Respectfully submitted,

11 |

12 |                ORRICK, HERRINGTON & SUTCLIFFE LLP

13 |

14 |                By: /s/ Annette Hurst /s/

15 |                Annette Hurst
               Attorneys for MGA Parties

EXHIBIT 10 PAGE 203

EXHIBIT 11

1  Hon. Edward A. Infante (Ret.)
   JAMS
2  Two Embarcadero Center
   Suite 1500
3  San Francisco, California 94111
   Telephone:    (415) 774-2611
4  Facsimile:    (415) 982-5287

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10                         EASTERN DIVISION

11

| | |
|---|---|
| 12  CARTER BRYANT, an individual, | CASE NO. CV 04-09049 SGL (RNBx)<br>JAMS Reference No. 1100049530 |
| 13 | |
| 14       Plaintiff, | Consolidated with<br>Case No. CV 04-09059 |
| 15       v. | Case No. CV 05-2727 |
| 16  MATTEL, INC., a Delaware corporation, | **ORDER DENYING MATTEL'S** |
| 17       Defendant. | **MOTION FOR PROTECTIVE ORDER<br>LIMITING THE TEMPORAL SCOPE<br>OF ITS PRIVILEGE LOG** |
| 18 | |
| 19  CONSOLIDATED WITH<br>MATTEL, INC. v. BRYANT and | |
| 20  MGA ENTERTAINMENT, INC. v. MATTEL,<br>INC. | |
| 21 | |

22        On April 14, 2008, Mattel, Inc. ("Mattel") submitted a "Motion for Protective Order

23  Limiting the Temporal Scope of Its Privilege Log."  Specifically, Mattel seeks a protective order

24  limiting the temporal scope of its privilege log to documents created before November 24, 2003,

25  which is the date Mattel allegedly obtained a copy of Carter Bryant's contract with MGA

26  Entertainment, Inc.  If the Court denies Mattel's motion for a protective order and instead requires

27

28                                                                                                  1

EXHIBIT _11_ PAGE _204_

1   Mattel to log documents created up to the date Mattel filed suit against Carter Bryant (April 27,

2   2004), Mattel seeks, in the alternative, an order (a) requiring Carter Bryant to log all documents

3   withheld on claims of privilege that were created up to November 2, 2004, when Bryant filed his

4   complaint for declaratory relief, and (b) requiring MGA to log all documents withheld on claims

5   of privilege that were created up to April 13, 2005, when MGA filed its complaint.

6         On April 22, 2008, MGA Entertainment, Inc., Isaac Larian, MGA Entertainment (HK)

7   Limited, and MGAE de Mexico S.R.L. de C.V. ("MGA") submitted an opposition, and on April

8   29, 2008, Mattel submitted a reply.  Pursuant to Paragraph 5 of the Stipulation and Order for

9   Appointment of a Discovery Master, the Discovery Master finds it appropriate to take the motion

10  under submission for decision without oral argument.

11        Mattel contends that privileged materials created after November 24, 2003 are not relevant

12  to the claims and defenses in this case, and any burden associated with logging these documents is

13  unjustified, particularly when there are only a few weeks remaining before trial.  Mattel also

14  objects to producing a detailed, document-by-document privilege log because, in its view, the log

15  would provide MGA with an unfair insight into Mattel's litigation strategy on the eve of trial.

16  Mattel also contends that Defendants have known since the summer of 2006 that Mattel was not

17  logging privileged documents that were created in the period leading up to Mattel filing suit, and

18  that MGA should not be heard, at this late date, to complain about the scope of Mattel's privilege

19  log.

20        MGA opposes the motion, contending that Mattel's motion is, in effect, an improper

21  motion for reconsideration of the March 10, 2008 Order compelling Mattel to produce, or to

22  identify on a privilege log, Mattel's "NHB" documents.  MGA also contends that Mattel's motion

23  should be denied because (1) throughout the litigation, the parties' agreement was and remains

24  that all privileged documents would be logged except for documents created after this action was

25  filed on April 27, 2004; (2) there is no evidence that the parties agreed to exclude from their

26

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

2

1  privilege logs documents that pre-date this action; and (3) the burden of logging only five month's

2  worth of privileged documents does not justify the relief Mattel seeks.

3       Rule 26(b)(5), Fed.R.Civ.P., provides that "[w]hen a party withholds information

4  otherwise discoverable by claiming that the information is privileged or subject to protection as

5  trial-preparation material, the party must:  (i) expressly make the claim; and  (ii) describe the

6  nature of the documents, communications, or tangible things not produced or disclosed--and do so

7  in a manner that, without revealing information itself privileged or protected, will enable other

8  parties to assess the claim."

9       Parties typically comply with Rule 26(b)(5), Fed.R.Civ.P., by producing a document-by-

10  document privilege log that identifies the author, recipient, date and general nature of the

11  document.  See e.g. United States v. Construction Products Research, Inc., 73 F.3d 464, 473 (2d

12  Cir. 1996).  Rule 26(b)(5), however, does not mandate a privilege log.  Instead, the Advisory

13  Committee Notes provide as follows:

14       The rule does not attempt to define for each case what information must
be provided when a party asserts a claim of privilege or work product protection.

15  Details concerning time, persons, general subject matter, etc., may be appropriate
if only a few items are withheld, but may be unduly burdensome when

16  voluminous documents are claimed to be privileged or protected, particularly if
the items can be described by categories. A party can seek relief through a

17  protective order under subdivision (c) if compliance with the requirement for
providing this information would be an unreasonable burden. In rare

18  circumstances some of the pertinent information affecting applicability of the
claim, such as the identity of the client, may itself be privileged; the rule provides

19  that such information need not be disclosed.

20  Advisory Committee Notes to the 1993 Amendments to Rule 26.  Subdivision (c) to Rule 26

21  provides that "[t]he court may, for good cause, issue an order to protect a party or person from

22  annoyance, embarrassment, oppression, or undue burden or expense," including, inter alia,

23  forbidding the disclosure or discovery, forbidding inquiry into certain matters, or limiting the

24  scope of disclosure or discovery to certain matters. Fed.R.Civ.P. 26(c).

25       In the instant case, Mattel has failed to establish the requisite good cause for a protective

26  order limiting the temporal scope of its privilege log to documents created before November 24,

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

3

EXHIBIT  11  PAGE  206

1  2003. Mattel bears the burden of establishing its privilege claims for each document, and the

2  generally accepted way to do this – in the absence of a court order or agreement between the

3  parties to the contrary – is a document-by-document privilege log. It is also standard practice to

4  use the date the lawsuit was filed as the cut-off for logging items on a privilege log.

5       Mattel's assertions of undue burden are unpersuasive. Mattel's argument rests upon the

6  declaration of counsel, Timothy L. Alger, which consists of nothing more than generalizations

7  about the burden associated with creating a privilege log:

8         5. Mattel's in-house and outside lawyers generated a substantial quantity
    of privileged materials from November 24, 2003 to April 27, 2004 (the "disputed

9      period"). To prepare a detailed privilege log covering the disputed period, Mattel
    would have to review a large quantity of paper and electronic documents in the

10      files of the Mattel Law Department and outside counsel, compare them with prior
    productions and Mattel's privilege log, and add the appropriate documents to a

11      supplemental log. Even under normal circumstances, such an effort would
    require substantial attorney time and expense. At this point, such a burden would

12      disrupt the operations of the Mattel Law Department during the time leading up to
    trial, and divert significant – and precious – attorney and paralegal resources from

13      trial preparation.

14         6. I am familiar with the materials in question. All of the documents that
    Mattel would have to place on a supplemental log for the disputed period were

15      prepared to assist in anticipated or pending litigation or contain information
    reflecting confidential communications between counsel or counsel's

16      representatives and the client or the client's representatives, for the purpose of
    facilitating the rendition of legal services to the client. The authors and recipients

17      of those documents are Mattel employees, members of Mattel's Law Department,
    and outside counsel for Mattel (including Quinn Emanuel).

18

19  Alger Decl., ¶¶5-6. Nowhere does Mattel offer any estimates of how many privileged documents

20  are involved, or attempt to quantify the cost or time associated with producing a privilege log.[1]

21       Lastly, Mattel contends that production of a document-by-document privilege log would

22  reveal aspects of Mattel's litigation strategy on the eve of trial. Mattel's vague and theoretical

23

24        [1] Mattel's claim of burden because of the proximity of trial is also unpersuasive. As the

25  party seeking to withhold privileged materials, the burden was squarely on Mattel, not MGA, to
seek relief from its obligation to produce a privilege log. There is no reason why Mattel could not

26  have filed the instant motion earlier in the litigation. The circumstances Mattel now faces are of
its own making.

27

28                                              4

EXHIBIT 11 PAGE 201

1    concern over revealing litigation strategy is not a sufficient reason to excuse Mattel from

2    producing a privilege log.

3         Accordingly, Mattel's motion for a protective order limiting the scope of its privilege log

4    is denied.  No later than May 19, 2008, Mattel shall produce a complete privilege log, including

5    all documents for which Mattel claims privilege up to the April 27, 2004 filing date.  Mattel's

6    alternative motion for an order compelling MGA and Carter Bryant to log documents created

7    after this action was filed is also denied.

8         Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

9    Master, MGA shall file this Order with the Clerk of Court forthwith.

10

11   Dated: May 6, 2008                    _____/S/_____

12                                         HON. EDWARD A. INFANTE (Ret.)
                                                 Discovery Master

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                                                              5

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT _11_ PAGE _208_

## PROOF OF SERVICE BY E-MAIL

I, Anthony Sales, not a party to the within action, hereby declare that on May 7, 2008, I served the
attached ORDER DENYING MATTEL'S MOTION FOR PROTECTIVE ORDER LIMITING THE
TEMPORAL SCOPE OF ITS PRIVILEGE LOG in the within action by email addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| Matthew M. Werdegar, Esq. | Keker & Van Nest | mwerdegar@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| Audrey Walton-Hadlock, Esq. | Keker & Van Nest | awalton-hadlock@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| John Gordon, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johngordon@quinnemanuel.com |
| Diane Hutnyan, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dianehutnyan@quinnemanuel.com |
| Thomas J. Nolan, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tnolan@skadden.com |
| Raoul D. Kennedy, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | rkennedy@skadden.com |
| Amy S. Park, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | apark@skadden.com |
| Harriet S. Posner, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | hposner@skadden.com |
| Carl Alan Roth, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | croth@skadden.com |
| Timothy A. Miller, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tmiller@skadden.com |
| Marcus R. Mumford, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Mmumford@skadden.com |
| Paul M. Eckles, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Paul.eckles@skadden.com |
| Lance A. Etcheverry, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Lance.etcheverry@skadden.com |
| Robert J. Herrington, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Robert.herrington@skadden.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true
and correct.

Executed on  May 7, 2008, at San Francisco, California.

Anthony Sales

EXHIBIT  11  PAGE  209

EXHIBIT 12

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION


CARTER BRYANT, an
individual,

          Plaintiff,

          vs.                              No. CV 04-9049 SGL
                                           (RNBx)

MATTEL, INC., a Delaware
corporation,                               **CERTIFIED**

          Defendants.                      **COPY**

_____

Consolidated with MATTEL, INC. v.
BRYANT and MGA ENTERTAINMENT, INC.
v. MATTEL, INC.

_____


HEARING BEFORE THE HONORABLE EDWARD A. INFANTE

San Francisco, California

Friday, December 14, 2007




Reported by:
DANA M. FREED
CSR No. 10602

JOB No. 76864

EXHIBIT 12 PAGE 210

```
 1               UNITED STATES DISTRICT COURT
                CENTRAL DISTRICT OF CALIFORNIA
 2                    EASTERN DIVISION

 3

 4    CARTER BRYANT, an
      individual,
 5
                Plaintiff,
 6
           vs.                        No. CV 04-9049 SGL
 7                                       (RNBx)
      MATTEL, INC., a Delaware
 8    corporation,

 9                Defendants.

10    _____

      Consolidated with MATTEL, INC. v.
11    BRYANT and MGA ENTERTAINMENT, INC.
      v. MATTEL, INC.
12    _____

13

14            Hearing before the Honorable Edward A. Infante,

15    at JAMS, Two Embarcadero Center, Suite 1500, San Francisco,

16    California, beginning at 10:49 a.m. and ending at

17    12:43 p.m. on Friday, December 14, 2007, before

18    DANA M. FREED, Certified Shorthand Reporter No. 10602.

19

20

21

22

23

24

25
```

2

EXHIBIT 12 PAGE 211

```
 1   APPEARANCES:

 2

 3   For the Plaintiff CARTER BRYANT, an individual:

 4         KEKER & VAN NEST LLP
           BY:    MICHAEL H. PAGE
 5                JOHN TRINIDAD
                  CHRISTA MARTINE ANDERSON
 6         Attorneys at Law
           710 Sansome Street
 7         San Francisco, California 94111-1704
           415.391.5400
 8

 9   For the Defendant MATTEL, INC., a Delaware
     corporation:

10         QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
           BY:    JOHN B. QUINN
11                JON COREY
                  SCOTT B. KIDMAN
12                B. DYLAN PROCTOR
           Attorneys at Law
13         865 Figueroa Street, 10th Floor
           Los Angeles, California 90017
14         213.443.3000

15   For the Defendants MGA Entertainment, Inc., MGA
     Entertainment (HK) Limited, and Isaac Larian:
16
           SKADDEN ARPS SLATE MEAGHER & FLOM LLP
17         BY:    RAOUL D. KENNEDY
                  THOMAS J. NOLAN
18                AMY S. PARK
           Attorneys at Law
19         Four Embarcadero Center, 38th Floor
           San Francisco, California 94111-5974
20         415.984.6400

21   Also Present:

22         CRAIG HOLDEN, MGA Entertainment

23

24

25
```

3

EXHIBIT _12_ PAGE _212_

1            MR. QUINN:  I think it's September 5th.

2    I missed -- I gave Your Honor the wrong date.

3            JUDGE INFANTE:  Thank you.

4            MR. QUINN:  And it's 2,868 entries on that

5    supplemental log.  September 5th.

6            JUDGE INFANTE:  Okay.  That will clarify the

7    record.

8            MR. NOLAN:  Then approximately, Your Honor --

9    this is Mr. Nolan -- 3,800, 4,000 additional on

10   November --

11           MS. PARK:  15th.

12           MR. NOLAN:  15th.

13           JUDGE INFANTE:  Okay.  Thank you.

14           Mr. Quinn, any reply?

15           Oh, I suppose I should -- before I give you

16   a reply, I should ask Mr. Kennedy whether or not you

17   wish to speak to the countermotion submitted by your

18   prior counsel in which you countermove to produce

19   documents withheld as privileged from Mattel that was

20   contained in the original opposition papers?  Do you

21   wish to speak to that?

22           MR. KENNEDY:  We'll withdraw that motion,

23   Your Honor.

24           JUDGE INFANTE:  Thank you.  You may proceed.

25           MR. QUINN:  There were no privilege logs

EXHIBIT 12 PAGE 213

1    provided until after we filed this motion, and then

2    they started to drill the Lau, and it was mostly

3    back-end loaded.  Within the next -- November was the

4    largest logging, within 60 days of the discovery

5    cutoff here.

6              This is not a gotcha situation.  If

7    Your Honor takes a look at our moving papers at page 5

8    and the citations to Mr. Proctor's declaration, we

9    discussed in the meet and confer that took place on

10   August 2nd, the fact that they were in default of

11   this, Your Honor's order requiring the privilege log.

12   This was no surprise.

13             And we confirmed that in a letter that we

14   were objecting to that, to their failure to comply.

15   I wouldn't think it should be necessary to continue to

16   object and object and object to the fact that your

17   adversary is not in compliance with an order.  This

18   was not a gotcha situation.  This was something that

19   was specifically raised and discussed.

20             I mean, this is a case that -- where there

21   has been, as the Burlington court said, Your Honor,

22   a manipulation of the -- and a failure to comply with

23   the discovery rules which has disrupted the discovery

24   process.  And the Court said in that case that in

25   those circumstances it's appropriate to find a waiver

EXHIBIT 12 PAGE 214

1    of privilege.  And I think that this is a, if there

2    ever was a case where such a waiver should be found

3    where there's been just defiance of an order being

4    told, notwithstanding the fact that there's an order

5    saying you must produce the log by the end of May,

6    being told in August we are not going to do it until

7    the middle of September at the earliest, with no

8    justification provided, the only appropriate response

9    to that, the only corrective measure, the only

10   meaningful sanction is not a couple thousand dollars

11   in attorney's fees at this point, it's waiver of the

12   privilege as to these documents.

13            JUDGE INFANTE:   Okay.  Thank you very much.

14            I have read everything on this, including the

15   case law cited, and in particular the Burlington case

16   with respect to the ad hoc approach and the balancing

17   of factors cited in that case.

18            I believe that Judge Larson's order, which

19   was a result of review of my prior order, in which he

20   postulated a new date for production of July 31st,

21   impliedly authorized that the privilege logs be

22   completed by that date as opposed to the date

23   I originally imposed which was May 31st.

24            So I believe that the privilege logs

25   submitted by MGA are untimely, but they're untimely

27

EXHIBIT 12 PAGE 215

1    only as to, as of July 31st, '07, instead of

2    May 31st, '07.  Given the number of documents

3    involved, the magnitude of the document production,

4    other circumstances involved in this litigation, and

5    all of the factors taught by the Burlington case, I

6    find that a wholesale waiver of the attorney/client

7    privilege as to all documents requested by Mattel is

8    inappropriate.

9          Waiver is a serious matter.  It should be

10   dealt with cautiously.  Although I am not satisfied,

11   and indeed I'm disappointed, in the way discovery has

12   been produced, I think it would be too harsh to

13   declare a wholesale waiver of the scope that Mattel

14   hereby requests.

15         While I feel your motion was justified,

16   I decline to grant a waiver, to grant your motion and

17   find a waiver.  Motion is denied.

18         MR. QUINN:  May I -- I do not believe in our

19   moving papers we requested any other sanctions.

20         JUDGE INFANTE:  You did not.  You did not.

21   And for that reason, I'm not imposing any sanctions.

22         Mr. Kennedy, I would ask you to prepare an

23   order consistent with my comments on the record and my

24   citation of Burlington.

25         MR. KENNEDY:  Yes, Your Honor.

EXHIBIT 12 PAGE 216

1          JUDGE INFANTE:  And let the record also

2    reflect that MGA withdrew its countermotion.

3          Let's move on to the next motion.  How would

4    Mattel like to proceed?

5          MR. QUINN:  The next one, Your Honor, would

6    be the motion relating to the production of documents

7    bearing on indemnity issues and agreements with

8    witnesses or with Mr. Bryant in particular.  In terms

9    of the timeline, this overlaps the motion that we just

10   discussed.

11         JUDGE INFANTE:  Yes.

12         MR. QUINN:  It arises out of the May 15th

13   order where Your Honor ordered MGA to either produce

14   such documents, ruled they were relevant, or log them

15   as privileged.

16         JUDGE INFANTE:  Yes.  This is just, so we can

17   clarify the record, this is Mattel's Motion to Enforce

18   the Court's Order of May 15, 2007 and to Compel MGA to

19   Produce Compelled Documents Including Fee and/or

20   Indemnity Agreements Between MGA and Bryant and Order

21   That Any Privilege Objections Have Been Waived and

22   Impose Sanctions.

23         You may proceed.

24         MR. QUINN:  That was then the subject of

25   a proceeding before Judge Larson where there was

EXHIBIT _12_ PAGE _217_

1    a motion for reconsideration before Judge Larson.

2    Judge Larson extended the deadline for compliance,

3    I believe, to July 31, for that aspect of the order.

4         Again, MGA did not comply with that deadline,

5    the July 31st deadline.  There was a subsequent

6    meet-and-confer session where MGA admitted that they

7    didn't know whether their response, whether there were

8    responsive documents, or if so, you know, how many

9    there were because they had not yet looked.  They

10   represented that they would do so by August 24th and

11   produce or log the documents.  They did not do that.

12   No documents responsive to that aspect of the order

13   were produced, no such documents were logged by

14   August 21st.

15        Since then, the -- some documents have been

16   produced, some documents have been logged as recently,

17   the last batch were produced by MGA two weeks ago with

18   a privilege log.  I think it's two weeks ago.  It's

19   November 23.  And we are told that those are all the

20   documents.

21        We had previously been told that Bryant had

22   produced all of his documents that would fall within

23   these categories, so we did not include that in this

24   motion.  MGA, at the time we filed the motion, was

25   saying indeed there are such documents, or we don't

EXHIBIT 12 PAGE 218

1          I, the undersigned, a Certified Shorthand

2     Reporter of the State of California, do hereby certify:

3          That the foregoing proceedings were taken

4     before me at the time and place herein set forth; that

5     any witnesses in the foregoing proceedings, prior to

6     testifying, were duly sworn; that a record of the

7     proceedings was made by me using machine shorthand

8     which was thereafter transcribed under my direction;

9     that the foregoing transcript is a true record of the

10    testimony given.

11         Further, that if the foregoing pertains to

12    the original transcript of a deposition in a Federal

13    Case, before completion of the proceedings, review of

14    the transcript [  ] was [  ] was not requested.

15         I further certify I am neither financially

16    interested in the action nor a relative or employee

17    of any attorney or party to this action.

18         IN WITNESS WHEREOF, I have this date

19    subscribed my name.

20

21    Dated:   DEC 1 7 2007

22

23                    _____
                      DANA M. FREED
24                    CSR No. 10602

25

EXHIBIT 12 PAGE 279

EXHIBIT 13

1          UNITED STATES DISTRICT COURT

2        CENTRAL DISTRICT OF CALIFORNIA

3             EASTERN DIVISION

4

5    ------------------------------          **Certified Copy**

6    CARTER BRYANT, an individual,  )

7                  Plaintiff,        )

8           vs.                      )  No. CV 04-09049

9    MATTEL, INC., a Delaware        )     SGL (RNBx)

10   corporation,                    )  Consolidated with

11                 Defendant.        )  CV 04-9059 & 05-2727

12   ------------------------------)

13   AND RELATED CROSS-ACTION.       )

14   ------------------------------

15

16

17        Transcript of Proceedings before

18        the Honorable Edward A. Infante,

19        via conference call, commencing at

20        9:04 A.M., Thursday, January 25, 2007,

21        before Cathryn L. Baker, CSR No. 7695.

22

23

24

25   PAGES 1 - 32

                                                    1

EXHIBIT 13 PAGE 200

```
 1    APPEARANCES OF COUNSEL:

 2

 3        FOR MATTEL, INC:

 4

 5            QUINN EMANUEL UPQUHART OLIVER & HEDGES

 6            BY:  JOHN COREY, ESQ.

 7                 DYLAN PROCTOR, ESQ.

 8            865 South Figueroa Street

 9            10th Floor

10            Los Angeles, California 90017

11            (213) 443-3000

12

13        FOR MGA ENTERTAINMENT, INC.:

14

15            O'MELVENY & MYERS LLP

16            BY:  JAMES P. JENAL, ESQ.

17            400 South Hope Street

18            Los Angeles, California 90071

19            (213) 430-6000

20

21

22

23

24

25
                                             2
```

EXHIBIT /3 PAGE 221

```
1    APPEARANCES OF COUNSEL (CONTINUED)

2

3       FOR CARTER BRYANT

4

5          LITTLER MENDELSON

6          BY:  KEITH A. JACOBY, ESQ.

7          2049 Century Park East

8          5th Floor

9          Los Angeles, California 90067

10          (310) 553-0308

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
                                                    3
```

EXHIBIT 13 PAGE 222

```
 1    after the anonymous letter that was produced, that we
 2    need judicial intervention to get the full scope of
 3    discovery that we're entitled to on this subject.  I
 4    don't have anything further, unless you have any
 5    questions.
 6             MR. JENAL:   Your Honor, just so it's clear,
 7    Mr. Jacoby and I are splitting argument.  I will be
 8    discussing the joint moving party, the questions about
 9    the 30(b)(6) witnesses.  And we can go into that now if
10    you'd like, or if you want to hear argument from the
11    other side from this point, whichever is your
12    preference.
13             JUDGE INFANTE:   I will wait -- I'd like to
14    hear from Mattel on this issue first, and then we'll
15    deal with the 30(b)(6) deposition issue later.  I also
16    will permit you to argue it, even though you technically
17    lack standing under Rule 37(a) to bring a motion.  You
18    are operating under a joint defense agreement, and one
19    party who is bringing the motion has standing under Rule
20    37 to bring the motion.  So I'll permit you to be heard
21    when we get to that issue.  But now I'll give Mattel the
22    opportunity to respond to this issue that Mr. Jacoby has
23    just argued.
24             MR. COREY:   Thank you, your Honor.  This is
25    John Corey and I appreciate the Rule 37 clarification.
```

9

EXHIBIT /3 PAGE 223

1    But I think I can short circuit this.  My understanding

2    of the relief that Mr. Jacoby seeks, as he's articulated

3    it, is the relief that we had offered to provide in

4    connection with the recent meet and confer, which is to

5    provide a privilege log logging all of those documents

6    that Mattel contends are privileged with respect to the

7    investigation and to produce those non-privileged

8    documents.

9            JUDGE INFANTE:  The first issue you've raised

10   is it's all irrelevant.

11           MR. COREY:    That's correct.  And we do

12   believe that it is irrelevant.  We believe that a proper

13   reading of Judge Larson's order resolves this issue, and

14   that they're going to be hard pressed if in fact they

15   try to raise the issue with Judge Larson again.  He was

16   making a determination based on facts that were

17   presented before him, he wasn't limiting himself to the

18   pleadings.  But that being said, if that's the relief

19   that's being sought, I think we can short circuit this.

20   We've offered to do that and we're more than willing to

21   do that.  And we can do that promptly.

22           JUDGE INFANTE:  I understand your arguments.

23   And I've read Judge Larson's order.  It's a very

24   thorough order, and I read it, and particularly the

25   portion dealing with the futility argument on statute of

                                                          10

EXHIBIT *13* PAGE *224*

1    limitations defense.  I'm afraid that the motion to file

2    an amended complaint doesn't fully resolve the issue as

3    to whether or not the statute of limitations defense, or

4    for that matter the laches defense, ought to be in the

5    case or not.

6            Although Judge Larson was outspoken with

7    respect to the relation-back doctrine, I don't feel that

8    I, as a discovery judge, can at this time say that those

9    defenses are out of the case.  They're not, and

10   therefore under Rule 26 I can't really rule them

11   irrelevant.  I can't really rule the discovery, as to

12   when you learned and what you knew back in 2002 or 2003,

13   is irrelevant.  I understand what might occur with

14   respect to those defenses but I -- I'm not going to turn

15   this discovery motion into a case dispositive motion

16   regarding defenses which are still pled and still in the

17   case.  So I'm going to reject your relevancy argument,

18   although I fully understand it.  So you may proceed to

19   your next point.

20           MR. COREY:  With the decision to overrule the

21   relevancy objection, it then, as I understand it,

22   becomes incumbent on us to prepare a privilege log so

23   that the Court is not asked to do what it's been asked

24   to do in this motion, that is to rule on privilege in

25   the abstract.

11

EXHIBIT 13 PAGE 205

1          JUDGE INFANTE:  Yes.  Let me just add one

2     thing I forget to say.  I also feel, regardless of the

3     statute of limitations, relation-back doctrine, in the

4     issue of relevance, on that defense, there is still pled

5     in the case a laches defense, an equitable defense,

6     which also gives Carter Bryant and MGA an independent

7     platform for relevancy.  So I just wanted to complete my

8     remarks on that point.  And, again, for that reason, I

9     overrule your irrelevancy objections.  I'm sorry I left

10    that out.  Okay.

11          Okay.  So now back to the privilege log.  Yes,

12    it is incumbent for you to now comply with Rule 26(b)(5)

13    if you contend that you're withholding documents

14    requested for on the grounds of privilege.  What do you

15    propose in that regard?

16          MR. COREY:  What I understand is that the

17    court permitted Bryant to have 30 days to produce its

18    documents yesterday.  I think it would be reasonable,

19    given that we're dealing with a much smaller universe of

20    documents, to provide a privilege log, and to produce

21    any non-privileged documents within two weeks from

22    today.

23          JUDGE INFANTE:  That seems reasonable.  Let me

24    make a couple of comments on it so that we can be

25    efficient.  I agree with you, Mattel's counsel, that the

                                                          12

EXHIBIT _13_ PAGE _276_

```
 1    issue of ruling on privilege is premature, that I have

 2    no basis for knowing whether or not any withheld

 3    documents are protected by the attorney-client privilege

 4    or work product, the whole work product immunity at this

 5    time.  So we have to take this one step at a time.  You

 6    need to follow Rule 26(b)(5) and do the privilege log.

 7    You may also serve with that privilege log any

 8    declarations which lay a foundation for the assertion of

 9    privilege.  Indeed I think you have to because the

10    holder of the privilege is a corporation and a

11    corporation acts for many, many people and agents and

12    employees.  And it's not clear whether or not you can

13    carry your burden in asserting the attorney-client

14    privilege without identifying who the declarants were,

15    who the participants to a communication were, why the

16    communication happened.  I mean, just keep your eye on

17    Upjohn, the Upjohn case, when you file your privilege

18    log.  And take the opportunity in carrying your burden

19    to supplement the privilege log with declarations.

20    That's my advice.  That's nothing I'm ordering, just

21    giving you some advice.  So if you can do that within

22    two weeks, that will be fine.

23          MR. COREY:  Mattel will do that, your Honor.

24          JUDGE INFANTE:  Good.  Okay.  The only other

25    issue related to this question is whether
```

EXHIBIT _13_ PAGE _207_

1    Mr. Anderson -- is it Mr. -- the HRVP, what's his name?

2              MR. COREY:  Mr. Kaye.

3              JUDGE INFANTE:  Mr. Kaye, should be called

4    back to deposition.  And if so, when?  Do you have any

5    comment on that?

6              MR. JACOBY:  Well, your Honor, we were going

7    to raise that issue -- that was part of Mr. Proctor's

8    and mine meet and confer.  If in light of the Court's

9    ruling, they're simply willing to do that, that would

10   dispose of Mr. Bryant's request that Mr. Kaye be

11   reproduced.  Obviously, once we have the non-privileged

12   documents and the privilege log, the scope of the need

13   to reproduce Mr. Kaye may be more focused.

14             JUDGE INFANTE:  Exactly.  You may decide to

15   call him or not, and you certainly don't want to go

16   through that until you have production of documents and

17   a sense of the privilege log.

18             MR. JACOBY:  Well, Mr. Bryant would be willing

19   to defer any ruling on that issue until Mattel makes its

20   production.

21             JUDGE INFANTE:  I think we should.  I think we

22   should defer ruling on the resumption of his deposition,

23   and the parties should again meet and confer on that

24   sole issue after production and serving of a privilege

25   log.  Very good.

                                                        14

EXHIBIT 13 PAGE 228

```
 1    STATE OF CALIFORNIA      )    ss

 2    COUNTY OF LOS ANGELES   )

 3

 4         I, CATHRYN L. BAKER, CSR No. 7695, do

 5    hereby certify

 6         That the foregoing transcript of proceedings

 7    was taken before me at the time and place therein set

 8    forth;

 9         That the hearing was recorded stenographically

10    by me, was thereafter transcribed under my direction and

11    supervision and that the foregoing is a true record of

12    same.

13         I further certify that I am neither counsel

14    for nor related to any party to said action, nor in

15    any way interested in the outcome thereof.

16         IN WITNESS WHEREOF, I have subscribed my

17    name this 29th day of January, 2007.

18

19

20

21    _____

22    CATHRYN BAKER, CSR No. 7695

23

24

25
```

                                                            32

EXHIBIT _13_ PAGE _289_