EXHIBIT 15

1   Hon. Edward A. Infante (Ret.)
    JAMS
2   Two Embarcadero Center
    Suite 1500
3   San Francisco, California  94111
    Telephone:    (415) 774-2611
4   Facsimile:    (415) 982-5287

5

6

7

8                      UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10                         EASTERN DIVISION

11

12  CARTER BRYANT, an individual,          CASE NO. CV 04-09049 SGL (RNBx)
                                           JAMS Reference No. 1100049530
13              Plaintiff,

14         v.                              Consolidated with
                                           Case No. CV 04-09059
15  MATTEL, INC., a Delaware corporation,  Case No. CV 05-2727

16              Defendant.                 **ORDER GRANTING IN PART AND
                                           DENYING IN PART MATTEL'S
17                                         MOTION TO COMPEL RESPONSES
                                           TO INTERROGATORY NOS. 27-44
18                                         AND 46-50 BY THE MGA PARTIES**

19  CONSOLIDATED WITH
20  MATTEL, INC. v. BRYANT and
    MGA ENTERTAINMENT, INC. v. MATTEL,
21  INC.

22                          I. INTRODUCTION

23         On December 20, 2007, Mattel, Inc. ("Mattel") submitted a Motion to Compel Responses

24  to Interrogatory Nos. 27-44 and 46-50 by the MGA Parties.  MGA Entertainment, Inc., MGA

25  Entertainment (HK) Limited, MGAE De Mexico, S.R.L. De C.V., and Isaac Larian (collectively

26  referred to as "MGA parties") submitted an opposition on December 31, 2007.  Mattel submitted

27  a reply on January 7, 2008.  On February 8, 2008, the MGA parties submitted their second

28

2·15·08

EXHIBIT 15 PAGE 300

1 │ supplemental responses and third supplemental responses to the interrogatories at issue.  The

2 │ matter was heard on February 11, 2008.

3 │ II. BACKGROUND

4 │     Mattel served its Revised Third Set of Interrogatories on the MGA parties on September

5 │ 21, 2007, asking each of them the same fifteen questions (Nos. 27-41).  Mattel served its Fourth

6 │ Set of Interrogatories on the MGA parties on October 12, 2007, propounding four additional

7 │ interrogatories (Nos. 42-45).  Mattel served an Amended Fourth Set on October 23, 2007,

8 │ removing No. 45, but retaining Nos. 42-44.  Mattel served its Fifth Set of Interrogatories on

9 │ October 19, 2007, which consisted of two additional questions (Nos. 46-47).  On October 23,

10 │ 2007, Mattel served its Sixth Set of Interrogatories, which consisted of Interrogatory No. 45 to

11 │ replace the previously withdrawn interrogatory.  On October 25, 2007, Mattel served its Seventh

12 │ Set of Interrogatories, which consisted of Nos. 48-50.

13 │     In November of 2007, the MGA parties served responses and objections to Mattel's

14 │ interrogatories, and in some instances supplemental responses.  For the most part, the answers of

15 │ each of the MGA parties are substantially similar.  However, in several instances where MGA

16 │ Entertainment, Inc. provides a response, either MGA Entertainment (HK), MGAE de Mexico

17 │ S.R.L. de C.V. and/or Larian do not, asserting that the interrogatory "appears directed at another

18 │ party."

19 │     The parties met and conferred on December 10 and 12, 2007 regarding the supplemental

20 │ responses.  The MGA parties offered to provide supplemental responses by January 7, 2008.

21 │ Mattel contends, however, that the scope of the MGA parties' proposed supplemental responses

22 │ was inadequate.  Therefore, Mattel filed the instant motion on December 20, 2007.[1]

23 │     Mattel contends that the interrogatories at issue seek information relevant to central issues

24 │ in the case, such as:  MGA's contentions regarding which Bratz inventions were created before,

---

[1] One of the issues raised in the motions papers --whether the interrogatories exceed the 50 interrogatory per side limit -- has been rendered moot by Judge Larson's Order Granting in Part and Denying in Part Mattel's Motion for Leave to Take Additional Discovery, dated January 7, 2008.

EXHIBIT 15 PAGE 301

1  during and after Carter Bryant's ("Bryant") employment with Mattel; the identity of electronic

2  storage devices MGA used prior to 2002 for digital information related to Bratz; the identity of

3  the sources of information from which MGA has collected documents in this litigation which

4  relate to Bratz and the time period prior to February 28, 2001; the facts allegedly supporting

5  MGA's contention that the Bratz dolls are not based on designs Bryant created while employed

6  by Mattel; MGA's contentions regarding Mattel's claims against MGA, Bryant and others,

7  including how Bryant's Inventions Agreement with Mattel and his assignment of rights to Bratz

8  inventions to MGA and services with or for MGA while employed by Mattel affect who owns the

9  rights to Bratz inventions, and the alleged basis for MGA's claims that it purportedly acted with

10  innocent intent; the identity of MGA's bank or financial accounts; the identity of former Mattel

11  employees that have been employed by MGA; non-privileged facts concerning the dispute

12  leading to the withdrawal of MGA's prior counsel that relate to MGA's handling of discovery in

13  this case; the facts supporting MGA's claims against Mattel, including MGA's contentions that

14  Mattel has copied, infringed or diluted MGA's trade dress; and the relevant dates regarding the

15  products MGA asserts MGA has copied or infringed.  Mattel's Motion at pp. 2-3.

16       Mattel contends that although it has received responses to all of the interrogatories except

17  Nos. 39, 46 and 47, all of the responses are deficient.  As an initial matter, Mattel contends that

18  the MGA parties' "boilerplate" objections – that the interrogatories are vague and ambiguous,

19  overbroad, unduly burdensome and oppressive, seek information not in the possession, custody or

20  control of MGA, seek information protected by the attorney-client privilege, work product or joint

21  defense privileges, and call for a legal conclusion – are without merit.  Mattel contends that the

22  MGA parties fail to specify how the questions are overbroad, unduly burdensome or oppressive.

23  Mattel also contends that its interrogatories do not require the disclosure of privileged information

24  or work product, but rather require the MGA parties to state their contentions about facts or the

25  application of law to facts.

26       Mattel further contends that some of the MGA parties' responses are deficient in that they

27  merely lay out the "basic facts" (instead of "all facts") on which they intend to rely, without any

28

EXHIBIT __15__ PAGE __302__

1   details. Mattel contends that its contention interrogatories, including the purportedly "negative"

2   interrogatories asking for every fact which supports the denial of a statement or allegation, are

3   commonly used and well accepted to elucidate facts regarding a party's contentions, absent a

4   showing of undue burden. Indeed, Mattel points to decisions by the district judge which it

5   contends supports its use of the contention interrogatories at issue. Mattel also points out that it

6   provided the MGA parties with the details supporting its contentions in a one hundred-ten page

7   supplemental interrogatory response, and contends that the MGA parties ought to provide

8   comparable details to Mattel.

9        Mattel also contends that the MGA parties have unilaterally limited many of their

10  responses by disregarding Mattel's definitions of terms and phrases used in the interrogatories.

11  Further, Mattel contends that the MGA parties have failed to identify with specificity documents

12  they intend to rely upon, as requested by some of the interrogatories.

13       Mattel acknowledges that fully responding to the interrogatories will require some effort.

14  However, Mattel contends that the interrogatories are not unduly burdensome in this high stakes

15  litigation. Mattel contends that its need to discover MGA's key contentions outweighs any effort

16  the MGA parties will be required to undertake to disclose the requested information.

17  Accordingly, Mattel seeks an order overruling all of the MGA parties' objections and compelling

18  the MGA parties to provide complete responses to Interrogatory Nos. 27-44 and 46-50.

19       The MGA parties contend that their current responses comply with Rule 33 of the Federal

20  Rules of Civil Procedure and that Mattel is not entitled to any additional information for a number

21  of reasons. The MGA parties raise four main arguments in opposition to Mattel's motion. First,

22  the MGA parties contend that Mattel is not entitled to information about MGA's substitution of

23  counsel because such information is protected by the attorney-client privilege or the work product

24  doctrine. Second, the MGA parties contend that Mattel is not entitled to the sweeping financial

25  data that has been requested. Third, the MGA parties contend that Mattel's contention

26  interrogatories contain misleading and unfair definitions and are unduly burdensome in that they

27  require a recitation of all facts supporting the MGA parties' contentions. Fourth, the MGA parties

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

4

EXHIBIT 15 PAGE 303

1   contend that Rule 33 does not require a response to a contention interrogatory to set forth more

2   than the principal factual and legal bases for the response.

3                                          III. STANDARDS

4          Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain

5   discovery regarding any matter, not privileged, that is relevant to the claim or defense of any

6   party." Fed.R.Civ.P. 26(b)(1).  Fishing expeditions to discover new claims, however, are not

7   permitted.  See Fed.R.Civ.P. 26(b)(1); Rivera v. NIBCO, Inc., 364 F.3d 1057, 1072 (9th Cir.

8   2004) ("District courts need not condone the use of discovery to engage in 'fishing

9   expeditions.'"); Bernstein v. Travelers Ins. Co., 447 F.Supp.2d 1100, 1102 (N.D. Cal. 2006)

10  (citing Rule 26(b), Advisory Committee's Note to Amendments Effective December 1, 2000)

11  (Congress' changes in the language of Rule 26(c), substituting the words "claim or defense" for

12  the phrase "subject matter involved in the pending action," were intended to prevent discovery

13  that swept far beyond the claims and defenses of the parties and that seemed designed not to fairly

14  litigate the issues presented by the pleadings but to develop new claims or defenses.).

15         Further, pursuant to Rule 26(b)(2), Fed.R.Civ.P., the court shall limit the frequency or

16  extent of use of the discovery methods if the court determines that (i) the discovery sought is

17  unreasonably cumulative or duplicative, or is obtainable from some other source that is more

18  convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample

19  opportunity by discovery in the action to obtain the information sought; or (iii) the burden or

20  expense of the proposed discovery outweighs its likely benefit, taking into account the needs of

21  the case, the amount in controversy, the parties' resources, the importance of the issues at stake in

22  the litigation, and the importance of the proposed discovery in resolving the issues. Fed.R.Civ.P.

23  26(b)(2)(C).

24         Rule 33 of the Federal Rules of Civil Procedure allows a party to propound

25  interrogatories, for which the responding party is required to furnish such information as is

26  available to the party after conducting a reasonable inquiry. "Each interrogatory must, to the

27  extent it is not objected to, be answered separately and fully in writing under oath." Fed.R.Civ.P.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

5

EXHIBIT 15 PAGE 304

1   33(b)(3). "The grounds for objecting to an interrogatory must be stated with specificity."

2   Fed.R.Civ.P. 33(b)(4).

3                                    IV. DISCUSSION

4   A. Interrogatories About the Identity of Bratz Inventions (Nos. 27, 28 and 29)

5        Interrogatory Nos. 27-29 request information relating to Bratz inventions created during

6   three different time periods, namely before, during and after Bryant's employment with Mattel:

7        **Interrogatory No. 27:** IDENTIFY each and every BRATZ INVENTION YOU
         contend was CREATED, in whole or in part, prior to January 4, 1999, and for
8        each BRATZ INVENTION so identified state all FACTS that support YOUR
         contention that such BRATZ INVENTION (or aspects or portions thereof) was
9        CREATED prior to January 4, 1999, and IDENTIFY all PERSONS with
10       knowledge of such facts and all DOCUMENTS which REFER OR RELATE TO
         such facts.

11

12       **Interrogatory No. 28:** IDENTIFY each and every BRATZ INVENTION YOU
         contend was CREATED, in whole or in part, after October 19, 2000 and before
13       June 1, 2001, and for each BRATZ INVENTION so identified state all FACTS
         that support YOUR contention that such BRATZ INVENTION (or aspects or
14       portions thereof) was CREATED after October 19, 2000 and before June 1, 2001,
         and IDENTIFY all PERSONS with knowledge of such facts and all
15       DOCUMENTS which REFER OR RELATE TO such facts.

16

17       **Interrogatory No. 29:** IDENTIFY each and every BRATZ INVENTION that
         was CREATED, in whole or in part, after January 3, 1999 and before October 21,
18       2000, and for each BRATZ INVENTION so identified state all FACTS that
         REFER OR RELATE TO the timing of the creating of such BRATZ
19       INVENTION and IDENTIFY all PERSONS with knowledge of such facts and all
         DOCUMENTS which REFER OR RELATE TO such facts.

20

21   Mattel contends that these interrogatories seek information that is plainly relevant and

22   discoverable, and that the MGA parties do not contend otherwise. Mattel further contends that

23   the partial response given using the MGA parties' definition, not Mattel's definition, of BRATZ

24   INVENTION is inadequate. Mattel also contends that the MGA parties have failed to carry their

25   burden of showing that the interrogatories are burdensome or oppressive, particularly given the

26   importance of the information sought. Mattel emphasizes that the information sought will prove

27   liability as to a number of its claims. Moreover, Mattel contends that knowing which inventions

28

EXHIBIT _15_ PAGE _305_

1 | MGA claims were created before and just after Bryant's second period of employment at Mattel
2 | is essential so that Mattel can avoid unfair surprise at trial and impeach the defendants'
3 | chronology of Bratz design and development.

4 |     The MGA parties contend that Mattel is using misleading and unfair definitions to create
5 | jury confusion. In particular, the MGA parties object to Mattel's definition of "BRATZ
6 | INVENTION," which they contend contains separate component parts ("representation, idea,
7 | concept, work, process, procedure, plan, improvement, DESIGN or other development"), and
8 | Mattel's definition of "DESIGN," which they contend adds at least another 21 elements ("all
9 | works, designs, artwork, sketches, drawings, illustrations, representations, depictions, blueprints,
10 | schematics, diagrams, images, sculptures, prototypes, models, samples, rotocasts, reductions to
11 | practice, developments, inventions and/or improvements"). The MGA parties contend that
12 | including all of these concepts in the definition "improperly conflates distinct issues of patent law,
13 | copyright protection, trade secret law and the common law protecting original ideas, many of
14 | which have no place in the ordinary usage of the term 'invention.'" MGA Parties' Opposition at
15 | 2:11-13. The MGA parties emphasize that these distinctions are important because Mattel lays
16 | claim to Bratz under a January 4, 1999 "Employee Confidential Information and Inventions
17 | Agreement." Further, the MGA parties accuse Mattel of using the contention interrogatories to
18 | elicit a misleading "sound bite" it can read to the jury to argue that the MGA parties concede that
19 | Bryant "invented" Bratz while employed by Mattel. The MGA parties contend that they have
20 | provided adequate responses to the interrogatories using the common and ordinary meaning of the
21 | term "invention," and should not be required to provide anything further.

22 |     Next, the MGA parties contend that they have given Mattel the principal factual and legal
23 | bases for their contentions, and Rule 33 does not require them to provide anything further. The
24 | MGA parties contend that requiring a narrative response setting forth all evidence in support of
25 | their contentions would render the interrogatories unduly burdensome and "inherently improper."
26 | See e.g. Clean Earth Remediation & Constr. Servs. v. Am. Int'l Group, 245 F.R.D. 137, 141 (S.D.
27 | N.Y. 2007) ("[A] number of cases have held that interrogatories seeking identification of all facts
28 |

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

7

1   supporting a particular allegation are *inherently improper*.").

2          Mattel's motion to compel further responses to Interrogatory Nos. 27-29 is denied because

3   the interrogatories are overbroad and unduly burdensome.  The definition of "Bratz Invention" is

4   extremely broad, encompassing numerous intellectual property concepts.  Mattel has not shown

5   how each and every concept embedded in its multi-faceted definition of "Bratz Invention" is

6   relevant to interpreting the term "invention" for purposes of enforcing the "Employee

7   Confidential Information and Inventions Agreement," signed by Bryant.  The breadth and undue

8   burden of Interrogatory Nos. 27-29 are also compounded by the fact that Mattel is employing an

9   extremely broad definition of "Bratz Invention" in a contention interrogatory seeking all facts

10  supporting the MGA parties' contentions, the identities of all persons knowledgeable, and all

11  supporting documents.  Not all contention interrogatories requiring a recitation of all facts,

12  documents and witness are objectionable.  See e.g. Tatum v. Schwartz, 2007 WL 2220977 at *1

13  (E.D. Cal. Aug. 2, 2007) (noting that contention interrogatories can impose undue burdens, but

14  that "courts have otherwise approved of them when they are limited to discrete, narrow factual

15  events"); Roberts v. Heim, 130 F.R.D. 424, 427 (N.D. Cal. 1989) (recognizing a broad spectrum

16  of contention interrogatories, and noting that it is not possible to announce a hard and fast rule as

17  to the exact amount of detail a party has to supply in response to a contention interrogatory).  In

18  the instant case, however, Mattel's contention interrogatories would force the MGA parties to

19  review the nearly 4 million pages of documents produced in this action and more than 50 days of

20  deposition testimony in search of information relating to "any representation, idea, concept, work,

21  process, procedure, plan, improvement, design or other development" that refers or relates to

22  Bratz, including "all works, designs, artwork, sketches, drawings, illustrations, representations,

23  depictions, blueprints, schematics, diagrams, images, sculptures, prototypes, models, samples,

24  rotocasts, reductions to practice, developments, inventions and/or improvements" that refer or

25  relate to Bratz.  It is not the MGA parties' responsibility to re-write the interrogatories in a

26  manner that will yield Mattel the most amount of information to support Mattel's claims and

27  defenses.  On balance, the burden of responding further to Interrogatory Nos. 27-29, as written,

28

EXHIBIT 15 PAGE 307

1   outweighs the likely benefit of the interrogatories, taking into account the needs of the case, the

2   amount in controversy, the parties' resources, the importance of the issues at stake in the

3   litigation, and the importance of the proposed discovery in resolving the issues.

4         In any event, the MGA parties' responses are adequate under the circumstances.  Faced

5   with overbroad and unduly burdensome interrogatories, the MGA parties provide facts supporting

6   the contentions identified in the interrogatories, identify persons with knowledge of those facts,

7   and identify the principal documents or categories of documents that support each contention.

8   See e.g. Moses v. Halstead, 236 F.R.D. 667, 674 (D. Kan. 2006).  For example, in response to

9   Interrogatory No. 27, the MGA parties set forth their contention that the concept for a new line of

10   fashion dolls envisioned by Bryant in August and/or September of 1998 could not have been

11   patented as a utility patent because fashion dolls were in the public domain for the purposes of

12   utility patent protection.  However, the MGA parties contend that Bryant's idea of a line of

13   fashion dolls he called Bratz was sufficiently novel and original to be protected under California

14   law as a confidential novel idea under Desny v. Wilder, 46 Cal.2d 715 (1956) and its progeny.

15         The MGA parties' supplemental responses to Interrogatory No. 27 also include the MGA

16   parties' contention that Bryant's pre-1999 drawings were never reduced to practice; that design

17   patents are not available for drawings or two-dimensional flat art of the sort that Bryant sketched

18   in 1998; that Bryant was not a sculptor and any effort to translate his pre-1999 two-dimensional

19   flat art into a three-dimensional form for use as a fashion doll sculpt would have produced shapes

20   that were different from the actual shape of the final three-dimensional Bratz sculpt used in

21   manufacturing the first generation of Bratz dolls released on the market by MGA in or about June

22   2001; that the final physical shape of the first generation of Bratz dolls released on the market by

23   MGA in or about June 2001 was conceived by Margaret Leahy; and that Bryant's drawings used

24   standard fashion model poses, and thus were not novel or original.  Further, the MGA parties'

25   supplemental responses to Interrogatory No. 27 include the MGA parties' contention that the

26   drawings Bryant completed in August and September of 1998 contained original expression

27   covered by copyright, but that subsequent modifications and versions of the drawings made by

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

9

EXHIBIT 15 PAGE 308

1  Bryant in 1999 and 2000 did not contain original expression. The MGA parties also identify

2  numerous individuals having knowledge of the facts supporting their contentions, and identify

3  documents that are relevant to the MGA parties' contentions.

4  B. Interrogatory About the Identity of Former Mattel Employees Hired by MGA (No. 41)

5       Interrogatory No. 41 asks the MGA parties to "IDENTIFY" all former Mattel employees

6  "who are now or have been employed" by MGA since January 1, 1999. More specifically,

7  Interrogatory No. 41 asks the MGA parties to:

8       IDENTIFY all PERSONS who at any time have been employed by or under
     contract with MATTEL who are now or have been employed by or under contract

9       with YOU since January 1, 1999, and, for each such PERSON, state his or her
     name, date of hire or effective date of contract, the date on which YOU first had

10       contact with such PERSON regarding potential employment or contracting, the
     date(s) on which such PERSON was interviewed for possible employment or

11       contracting, each title (if any) such PERSON has held while employed by or
     under contract with YOU, and the date of termination (if applicable).

12

13  In their supplemental response, the MGA parties assert numerous objections, but also provide a

14  list of well over a hundred individuals with their position title and employment dates.

15       Mattel contends that the MGA parties' response is incomplete because it does not contain

16  the date of first contact regarding potential employment or contracting, as well as the interview

17  date for potential employment or contracting.

18       The MGA parties contend that during the meet and confer process, they agreed to

19  investigate whether the additional requested information was reasonably available. The MGA

20  parties represent that they are in the process of looking for the requested information, and that

21  they will supplement their response if the information is reasonably available without undue

22  burden.

23       Mattel's motion to compel a further response to Interrogatory No. 41 is granted in part.

24  The requested information is clearly relevant to Mattel's claims, and the MGA parties do not

25  contend otherwise. In particular, the date of first contact, interview date, start date and end date

26  for Bryant's employment are highly relevant, but are conspicuously absent from the MGA

27  parties' response. The MGA parties shall provide the missing information for Bryant. In

28

EXHIBIT 15 PAGE 309

1   addition, the MGA parties shall provide the interview dates for each of the individuals identified

2   in their supplemental responses.  The interview dates are potentially relevant to Mattel's claim

3   that the MGA parties induced former Mattel employees to abscond with Mattel's trade secrets.

4   However, the MGA parties are not required to provide the date of first contact for each individual

5   because the burden of producing such information outweighs its likely benefit, taking into

6   account the factors set forth in Rule 26(b)(2)(C), Fed.R.Civ.P.

7   C. Interrogatories re Allegedly Copied or Infringed Products (Nos. 43-44)

8          Interrogatory Nos. 43 and 44 request dates on which each "concept, design, product,

9   product packaging or other matter that YOU contend Mattel copied or infringed" was (1)

10  "conceived" and (2) "first fixed in any tangible medium of expression," and the identity of

11  persons with knowledge and documents that refer or relate to the foregoing.  In the responses, the

12  MGA parties state numerous objections, but also refer Mattel to MGA's response to Interrogatory

13  No. 3 of Mattel's First Set of Interrogatories re Claims of Unfair Competition.  The MGA parties

14  also respond that, in general, at MGA, product development is completed 7-8 months before the

15  first invoice date, although that time period could be reduced in certain situations to 5-6 months.

16         Mattel contends that the information it seeks is relevant to its defense against MGA's

17  claims that Mattel copied or infringed MGA's products.  One of Mattel's defenses is that "Mattel

18  was the one who came up with relevant matters first – before MGA – and that MGA was the one

19  who copied or stole from Mattel."  Mattel's Motion at p.23.  Mattel contends that the MGA

20  parties' responses to Interrogatory Nos. 43 and 44 are inadequate because the referenced

21  Interrogatory No. 3 requested different information, namely the dates on which the products were

22  first "disclosed to any PERSON not employed by MGA" and first "made available for sale."

23         In response to the instant motion to compel, the MGA parties represent that they are

24  assessing whether they can provide more specific information without undue hardship, and will

25  supplement their responses if such information is available.  MGA's Opposition at p.29.

26         Mattel's motion to compel further responses to Interrogatory Nos. 43 and 44 is granted.

27  The requested information is relevant to Mattel's defense against the MGA parties' claims that

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

11

EXHIBIT 15  PAGE 310

1   their products have been copied or infringed by certain Mattel products.  Although the MGA

2   parties served supplemental responses after filing their opposition brief, the supplemental

3   responses do not include the requested information.  The MGA parties have failed to establish

4   that the interrogatories are unduly burdensome.

5   D. Interrogatories About the Trade Dress MGA Claims Mattel Products Infringe (Nos. 48-50)

6          Interrogatory Nos. 48-50 are directed to the MGA parties' trade dress claims:

7          **Interrogatory No. 48:**  Separately IDENTIFY each trade dress that YOU
       contend MATTEL has copied, infringed or diluted or that is otherwise the
8          subject of YOUR claims, defenses or allegations in THIS ACTION.

9          **Interrogatory No. 49:**  For each trade dress identified in response to
       Interrogatory No. 48, separately and fully IDENTIFY each and every MATTEL
10         product, packaging or other matter that YOU contend copies, infringes or dilutes
       such trade dress, including without limitation by describing fully and separately,
11         for each such MATTEL product, packaging or other matter, each and every
       element of the claimed trade dress that YOU contend MATTEL has copied,
12         infringed or diluted.

13         **Interrogatory No. 50:**  For each trade dress identified in response to
       Interrogatory No. 48, separately and completely IDENTIFY all facts that support
14         YOUR contention that such trade dress is protectible, all DOCUMENTS that
       REFER OR RELATE to the foregoing and all PERSONS with knowledge of the
15         foregoing.

16         Mattel contends that these interrogatories seek core contentions underlying the MGA

17   parties' trade dress infringement claims and that the partial responses provided are inadequate

18   because they set forth only the "basic facts" without identifying a single product that MGA

19   alleges was infringed or any other details.  Mattel also contends that the responses are improper

20   insofar as the MGA parties state that their responses "may be incomplete" as the subject matter of

21   this interrogatory will be the source of expert testimony and an expert may identify additional

22   facts that support MGA's contentions.  Mattel contends that such a limitation would allow MGA

23   to sandbag Mattel by introducing new products into the litigation after fact discovery has closed.

24         As a preliminary matter, the MGA parties contend that Interrogatory Nos. 48-50 are

25   directed to a Phase 2 issue, and therefore, they reserve their right to supplement the responses in

26   Phase 2.  Nevertheless, the MGA parties contend that their responses provide Mattel with the

27   principal facts supporting their contentions in compliance with Rule 33.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

12

EXHIBIT 15 PAGE 311

1    Mattel's motion to compel further responses to Interrogatory Nos. 48-50 is denied.  The
2    MGA parties are in substantial compliance with Rule 33, having identified numerous elements of
3    trade dress they contend Mattel has infringed.  More specifically, the MGA parties' responses
4    identify Mattel's "My Scene" fashion dolls and pet dolls as the Mattel products that infringe their
5    trade dress.  The MGA parties also set forth the principal facts supporting their contention that
6    their trade dress is protectible under the applicable trade dress legal principles, including that the
7    trade dress is aesthetic and non-functional, inherently distinctive, and has acquired secondary
8    meaning.  That the interrogatory responses include a reservation of rights to supplement during
9    expert discovery does not render the responses inherently improper or inadequate.  Mattel does
10   not contest that the identification of the elements and products subject to trade dress infringement
11   will be a subject of expert testimony.

12   E. Interrogatory About the Identity of MGA's Bank Accounts (No. 39)

13   Interrogatory No. 39 asks MGA to "IDENTIFY each and every bank or financial
14   institution account that REFERS OR RELATES TO YOU, including accounts in YOUR name or
15   for YOUR benefit, since January 1, 1999."  The MGA parties objected to this interrogatory as
16   seeking information "not relevant to the claims or defenses of any party to the action and not
17   reasonably calculated to lead to the discovery of admissible evidence.

18   Mattel contends that the information sought is discoverable because it may lead to direct
19   evidence of liability regarding Mattel's allegations of commercial bribery against MGA and
20   Larian.  More specifically, Mattel contends that the timing and amounts of payments made to
21   Bryant and to other then-Mattel employees from MGA's bank accounts would establish
22   commercial bribery and other tortious conduct.  Mattel also contends that the timing of such
23   payments would also be indicative of the timing of Bryant's first involvement with MGA.
24   Further, Mattel contends that the requested information is relevant to establish net worth for
25   purposes of calculating punitive damages.  Mattel also contends that the MGA parties' objection
26   based upon Rule 69(a), Fed.R.Civ.P., is without merit because the requested information is
27   independently relevant to many issues in the liability phase of trial, and is not just directed at

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT 15 PAGE 312

1    seeking discovery in aid of a judgment or execution.

2         The MGA parties contend that Mattel is not entitled to the sweeping financial data sought

3    in Interrogatory No. 39.  The MGA parties are particularly concerned that Mattel will use the

4    information it obtains pursuant to Interrogatory No. 39 to launch abusive third-party discovery for

5    even more private financial information.  Further, the MGA parties contend that Mattel has

6    already received substantial financial information from MGA Entertainment, Inc. directly, and

7    has not shown how that information is insufficient.  More specifically, the MGA parties point out

8    that Mattel already has audited and unaudited quarterly and annual profit and loss statements;

9    audited and unaudited quarterly and annual statements; annual reports; various MGA financial

10   reports; various financial documents relating to Veronica Marlow; documents showing royalty

11   payments to Bryant; documents showing MGA's sales, returns and costs of good sold for each

12   month, by SKU, since 2001; documents showing MGA's promotional advertising and media

13   expenditures, including MGA's internal allocation of those expenditures by brand and/or product;

14   documents showing MGA's amortization and depreciation of certain capital assets and

15   expenditures; documents showing MGA's monthly general ledger entries aggregated by account,

16   including income and expense accounts, reserves and liabilities; and documents sufficient to

17   explain MGA's various accounts as presently and historically maintained in MGA's books and

18   records, as well as various nomenclature assigned to items, products, brands, sub-brands, and

19   profit centers.  MGA's Opposition at pp. 10-11.  Further, the MGA parties contend that MGA's

20   witness, Lisa Tonnu, has testified regarding payments to Mr. Bryant.

21        Mattel's motion to compel a further response to Interrogatory No. 39 is denied on the

22   grounds that the financial information sought is cumulative of other discovery already sought and

23   obtained by Mattel, as outlined above by the MGA parties.  Mattel has also sought and obtained

24   documents sufficient to identify each of Mr. Larian's bank accounts or financial institutions and

25   other banking relationships since January 1, 1999.  See Order Granting in Part and Denying in

26   Part Mattel's Motion to Compel Production of Documents by Isaac Larian; Denying Request for

27   Sanctions (Document Request No. 207).  Further, as Mattel acknowledges, Mattel has sought and

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

14

EXHIBIT 15 PAGE 313

1   obtained deposition testimony regarding payments to Mr. Larian, including the account to which

2   such payments were made.  See Order Granting in Part and Denying in Part Mattel's Motion to

3   Compel MGA to Produce Witnesses Pursuant to Third Notice of Deposition Under Rule 30(b)(6).

4   In light of the financial information discovery Mattel has already obtained, Interrogatory No. 39 is

5   unjustified, taking into consideration all of the factors set forth in Rule 26(b)(2)(C), Fed.R.Civ.P.

6   F. Contention Interrogatories (Nos. 30-38 and 42)

7        Mattel served several contention interrogatories on several additional topics.  The

8   remaining contention interrogatories at issue are set forth below.

9
10
11
12
      **Interrogatory No. 30:** State all facts that support YOUR contention, if YOU so contend, that, assuming BRYANT assigned rights in any BRATZ INVENTION to MATTEL pursuant to the INVENTIONS AGREEMENT, MGA is entitled to priority over and/or has superior rights to MATTEL as to such BRATZ INVENTION, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

13
14
      **Interrogatory No. 31:** State all facts that support YOUR contention, if YOU so contend, that the INVENTIONS AGREEMENT is not valid and enforceable, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

15
16
17
18
      **Interrogatory No. 32:** State all facts that support YOUR contention, if YOU so contend, that MATTEL is not or would not be entitled to injunctive relief as requested in its COMPLAINT and/or COUNTERCLAIMS if it is not ultimately determined that MATTEL owns one or more BRATZ INVENTIONS, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

19
20
      **Interrogatory No. 33:** State all facts that support YOUR contention, if YOU so contend, that MATTEL is not entitled to an award of punitive or exemplary damages against YOU, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

21
22
23
      **Interrogatory No. 34:** State all facts that support YOUR contention, if YOU so contend, that YOU did not intentionally interfere with the INVENTIONS AGREEMENT when BRYANT purported to TRANSFER and MGA purported to ACQUIRE rights to BRATZ, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

24
25
26
27
      **Interrogatory No. 35:** State all facts that support YOUR contention, if YOU so contend, that YOU did not aid or abet any breach of fiduciary duty or duty of loyalty owed by BRYANT to MATTEL when BRYANT performed work or services with or for MGA while BRYANT was employed by MATTEL, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

28      **Interrogatory No. 36:** State all facts that support YOUR contention, if YOU so

EXHIBIT 5 PAGE 314

1    contend, that YOU acted with an innocent state of mind or reasonably believed
     that MATTEL did not own any rights in any BRATZ INVENTION when Bryant
2    purported to TRANSFER and MGA purported to ACQUIRE rights to BRATZ,
     and IDENTIFY all PERSONS with knowledge of such facts and all
3    DOCUMENTS that REFER OR RELATE TO such facts.

4    **Interrogatory No. 37:** State all facts that support YOUR contention, if YOU so
     contend, that BRYANT did not breach the INVENTIONS AGREEMENT when
5    BRYANT purported to TRANSFER right to BRATZ to MGA, and IDENTIFY
     all PERSONS with knowledge of such facts and all DOCUMENTS that REFER
6    OR RELATE TO such facts.

7    **Interrogatory No. 38:** State all facts that support YOUR contention, if YOU so
     contend, that BRYANT did not breach BRYANT's duty of loyalty or fiduciary
8    duties to MATTEL when BRYANT performed work or services with or for
     MGA while BRYANT was employed by MATTEL, and IDENTIFY all
9    PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR
     RELATE TO such facts.

10

11   **Interrogatory No. 42:** State all facts that support YOUR contention, if YOU so
     contend, that any BRATZ DOLLS are not BASED ON BRATZ DESIGNS
12   created by BRYANT on or before October 19, 2000, and IDENTIFY all
     PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR
13   RELATE TO such facts.

14

15   Mattel contends that each of these interrogatories seeks facts relating to key issues in this case,

16   including MGA's contentions, if any, regarding the priority of Mattel's rights in Bratz vis-à-vis

17   MGA; how Bryant's Inventions Agreement with Mattel, Bryant's assignment of rights to Bratz

18   inventions to MGA, and Bryant's services with or for MGA while employed by Mattel affect who

19   owns the rights to Bratz inventions; Mattel's alleged entitlement to punitive damages and other

20   relief; MGA's purported innocent state of mind; MGA's alleged intentional interference with the

21   Inventions Agreement; MGA's alleged aiding and abetting of Bryant's breach of fiduciary duty

22   and duty of loyalty to Mattel; why the Bratz dolls purportedly are not based on designs Bryant

23   created during his Mattel employment; and why the trade dress MGA contends Mattel infringed is

24   protectible.  Mattel contends that the MGA parties cannot show burden sufficient to outweigh

25   Mattel's need for the information sought.

26        In addition to the objections discussed in connection with Interrogatory Nos. 27-29, the

27   MGA parties contend that they have given sufficient responses to Interrogatory Nos. 30 and 42.

28

Bryant v. Mattel, Inc.,                                                                16
CV-04-09049 SGL (RNBx)

EXHIBIT __16__ PAGE __319__

1 | As for Interrogatory Nos. 31-38, the MGA parties contend that the interrogatories improperly
2 | assume that Mattel owns Bryant's original idea for Bratz and ask the MGA parties to explain why
3 | they should not be punished for developing Bryant's ideas. Nevertheless, the MGA parties
4 | represent that they responded to the interrogatories in good faith by providing the principal facts
5 | supporting their contentions, and therefore are in compliance with Rule 33.
6 |       Mattel's motion to compel a further response to Interrogatory No. 30 is denied. Like
7 | Interrogatory Nos. 27-29, the definition of "Bratz Invention" in No. 30, combined with the
8 | request for all facts, the identity of all persons and all supporting documents, render the
9 | interrogatory overbroad and unduly burdensome. In any event, the MGA parties have provided a
10 | reasonably sufficient response. The MGA parties' supplemental response includes their
11 | contention that the "Inventions Agreement" did not apply to design patent rights. Further, the
12 | MGA parties contend that (a) the pre-October 21, 2000 drawings of characters that Bryant named
13 | Bratz were never reduced to practice; (b) under 35 U.S.C. §171, design patents are available for
14 | three-dimensional objections, not drawings or two-dimensional flat art of the sort that Bryant
15 | sketched in 1998; (c) Bryant was not a sculptor, and any direct translation of his pre-October 21,
16 | 2000 two-dimensional flat art into a three-dimensional form for use as a fashion doll sculpt would
17 | have produced shapes that were different from the actual shape of the final three-dimensional
18 | Bratz sculpt used in manufacturing the first generation of Bratz dolls released on the market by
19 | MGA in or about June 2001; (d) the final physical shape of the first generation of Bratz dolls,
20 | released on the market by MGA in or about June 2001 was "conceived of" and "reduced to
21 | practice" by Margaret Leahy, working on behalf of MGA, after October 20, 2000 and before June
22 | 1, 2001, along with other MGA agents and employees; (e) Bryant's drawings used standard
23 | fashion model poses, and thus were not novel or original; and (f) the "dummy" brought by Bryant
24 | to his meeting with MGA on September 1, 2000, was merely an assemblage of random pre-
25 | existing doll parts that was never intended to, and did not, provide an accurate representation of
26 | what became the Bratz sculpt. Based on the foregoing, the MGA parties contend that, assuming
27 | arguendo that both Bryant assigned his 1998 drawings to Mattel and that such drawings were the
28 |

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

17

EXHIBIT 15 PAGE 316

1  conception of what could have been developed into a tangible item that would have qualified for

2  protection under a design patent, such conception would not have covered the shape of the final

3  Bratz sculpt utilized in the first generation of Bratz dolls released to market in or about June 2001,

4  nor any subsequent three-dimensional Bratz shape.  The MGA parties' supplemental responses to

5  Interrogatory No. 30 also address copyright protection and trademark protection, and identify

6  persons with knowledge and documents relevant to the MGA parties' contentions.

7       Mattel's motion to compel further responses to Interrogatory Nos. 31-37 and 42 is denied.

8  The MGA parties are in substantial compliance with Rule 33, having set forth sufficient facts,

9  identified persons with knowledge, and identified documents to support their contentions.  To

10  require any further information would be unduly burdensome, taking into consideration all of the

11  factors set forth in Rule 26(b)(2)(C), Fed.R.Civ.P.

12       Mattel's motion to compel a further response to Interrogatory No. 38 is granted, however,

13  because the supplemental response does not identify supporting documents.

14  G. Interrogatories About MGA's Searches for Documents (40 and 47)

15       Mattel has propounded two interrogatories to the MGA parties about their searches for

16  documents and storage devices containing evidence of early work on Bratz:

17       **Interrogatory No. 40:**  IDENTIFY each and every STORAGE DEVICE that
         YOU have used for any purpose which contains or contained DIGITAL
18       INFORMATION that REFERS OR RELATES TO BRATZ and/or ANGEL prior
         to January 1, 2002.

19       **Interrogatory No. 47:**  IDENTIFY each and every SOURCE OF
20       INFORMATION from which YOU have COLLECTED DOCUMENTS in THIS
         ACTION that REFER OR RELATE TO BRATZ and that also REFER OR
21       RELATE TO the time period prior to February 28, 2001 (regardless of when such
         DOCUMENT was, in whole or part, created, drafted, generated, sent, received or
22       transmitted).

23  In response to Interrogatory No. 40, the MGA parties described the computer systems that existed

24  worldwide at MGA prior to January 1, 2002.  The MGA parties did not provide any substantive

25  response to No. 47.

26       Mattel contends that the interrogatories are designed to test MGA's productions in this

27  litigation and obtain additional responsive documents and information.  Further, Mattel contends

28

EXHIBIT 15 PAGE 317

1  that there is legal precedent allowing access to a party's information storage systems where the

2  party is shown to have improperly withheld relevant documents or information.  Mattel contends

3  that Interrogatory No. 40 seeks legitimate discovery regarding the identification of MGA's

4  storage devices because Mattel may have a right to access such storage devices.  In particular,

5  Mattel contends that it is entitled to, but the MGA parties have failed to provide, an identification

6  of specific storage devices, the individuals who have used them, the persons who currently

7  possess them, and the dates on which they were destroyed or copied, if any.  Mattel contends that

8  the information requested in Interrogatory No. 40 is necessary to determine whether MGA has

9  withheld responsive documents and to enable Mattel to obtain such documents.

10        Similarly, Mattel contends that Interrogatory No. 47 seeks relevant information regarding

11  the sources of information – i.e. the media – from which the MGA parties have collected

12  documents relating to Bratz and the period prior to February 28, 2001.  Mattel contends that the

13  information it seeks will enable it to determine what sources the MGA parties have examined and

14  have not examined to produce documents in the case.

15        During the meet and confer process, the MGA parties proposed that the parties exchange

16  "source logs" regarding the entirety of their productions in lieu of MGA's responses to Nos. 40

17  and 47.  The "source logs" would provide each document's Bates number, the identity of the

18  individual associated with or who maintained the document and the location where the document

19  was found.  Mattel contends that the "source log" proposal is unnecessary because Mattel is only

20  seeking information about key early Bratz documents, not every document produced in the case.

21  Mattel also contends that the "source log" proposal is unacceptable because the "source log,"

22  would not reveal sources that contain early Bratz documents that MGA has not produced

23  documents from, or where MGA looked for documents, as well as where MGA failed to look.

24        The MGA parties contend that the interrogatories assume, without any factual support,

25  that the MGA parties are aware of the existence of Bratz documents on their computer systems

26  that relate to the time period prior to January 1, 2002, and have not produced those documents.

27  The MGA parties contend that Mattel's speculation is not a basis to compel further responses to

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

19

EXHIBIT 15  PAGE 318

1   Interrogatory Nos. 40 and 47.  The MGA parties emphasize that they have already produced more

2   than 3.7 million pages of documents, whereas Mattel has only produced a few hundred thousand

3   pages of documents.  Furthermore, the MGA parties contend that these interrogatories are

4   cumulative of deposition testimony Mattel has previously sought and obtained regarding the

5   collection of documents produced in this action.  The MGA parties also represent that they have

6   agreed to provide additional testimony on this topic.

7        Mattel's motion to compel further responses to Interrogatory Nos. 40 and 47 is granted.

8   The interrogatories seek relevant information about the identity of each storage device that

9   contains or contained information referring or relating to Bratz prior to January 1, 2002, and other

10   sources of information from which the MGA parties collected documents in this action that refer

11   or relate to Bratz and the time period prior to February 28, 2001.  The "source log" information is

12   not a reasonable substitute for the information requested in the interrogatories because it would

13   not necessarily identify all storage devices used by the MGA parties during the relevant period.

14   The interrogatories are narrowly tailored to a key subject, namely early Bratz documents and

15   other information.  The MGA parties have failed to establish that the interrogatories are unduly

16   burdensome.  Nor are the interrogatories cumulative of other discovery propounded by Mattel.

17   Interrogatory Nos. 40 and 47 have the potential of imparting more detailed information than a

18   witness might be able to recall in the course of a deposition.  Furthermore, the information sought

19   in Interrogatory Nos. 40 and 47 will enable Mattel to question MGA's witnesses more effectively.

20   H. Interrogatory Regarding MGA's Substitution of Counsel (No. 46)

21        Interrogatory No. 46 seeks facts regarding MGA's substitution of counsel as follows:

22   **Interrogatory No. 46:**  Without disclosing the content of communications which
     are protected by the attorney-client privilege, state fully and in detail all facts
23   which REFER OR RELATE TO any dispute regarding THIS ACTION between,
     on the one hand, MGA, LARIAN, BRYANT and/or MACHADO and, on the
24   other hand, O'MELVENY and/or CHRISTENSEN, including but not limited to
     any and all disputes which were or have been asserted as a basis for, or which
25   underlie, contributed to or were a factor in, the withdrawal, termination and/or
     substitution of O'MELVENY and/or CHRISTENSEN as counsel of record in this
26   ACTION, and IDENTIFY all PERSONS with knowledge of such facts and all
     DOCUMENTS that REFER OR RELATE TO such facts.

27

28

EXHIBIT 15  PAGE 319

1    Mattel contends that the interrogatory is limited to facts, and does not require the disclosure of

2    information protected by either the attorney-client privilege or the work product doctrine.

3    Further, Mattel contends that the requested facts are relevant and discoverable. Mattel reasons

4    that O'Melveny cited to California Rule of Professional Conduct 3-700(c) as the basis for its

5    motion to withdraw, and that Rule 3-700(c) sets forth several grounds for withdrawal that could

6    be relevant to the case. For example, Mattel contends that O'Melveny may have withdrawn

7    because MGA sought to provide false testimony, or was seeking "to pursue an illegal course of

8    conduct" or "insist[ed] that counsel pursue a course of conduct that is illegal or prohibited under

9    the State Bar Act." Mattel's Motion at p. 38.

10           The MGA parties contend that Interrogatory No. 46 is predicated upon an imagined

11    "dispute" with former counsel, and moreover, that the information sought is protected by the

12    work product doctrine and/or attorney-client privilege. The MGA parties reason that even if

13    Mattel is correct that there was some sort of dispute, either (1) the dispute does not relate to the

14    claims and defenses in this action, and therefore the requested information is irrelevant and

15    outside the proper scope of discovery, or (2) the dispute does relate to the claims or defenses in

16    this action, such that revelation of the substance of the dispute would necessarily reveal the

17    thought processes of trial counsel and the communication of those thought processes to the MGA

18    parties.

19           Mattel's motion to compel is denied as to Request No. 46. The interrogatory is not

20    tethered to any particular claim or defense. Nor is the interrogatory directed at uncovering the

21    factual events giving rise to any claim or defense. Instead, the interrogatory assumes that there

22    was a "dispute" with former counsel involving false testimony, illegal conduct, or attorney

23    misconduct; that this "dispute" led to the withdrawal, termination and/or substitution of counsel;

24    and that this "dispute" potentially relates to a claim or defense in this suit. There is no evidence,

25    however, to substantiate such a series of assumptions. Although the publicly available

26    information suggests that there was a breakdown of the attorney-client relationship, this evidence,

27    without more, is insufficient to justify Interrogatory No. 46 because the burden or expense of the

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

21

EXHIBIT 15 PAGE 320

1 | proposed discovery outweighs its likely benefit under Rule 26(b)(2)(C), Fed.R.Civ.P.

2 | Furthermore, the interrogatory is grossly overbroad in seeking information about "any and all

3 | disputes" with former counsel, regardless of whether such disputes relate to a claim or defense in

4 | the case.

5 |       The interrogatory is also objectionable because it intrudes upon MGA's relationship with

6 | former counsel, and thus necessarily intrudes upon the protections afforded by the attorney-client

7 | privilege and work product doctrine.  Mattel's rank speculation that there were attorney-client

8 | discussions of wrongdoing is insufficient to vitiate the attorney-client privilege.  See e.g. In re

9 | Napster, Inc. Copyright Litig., 479 F.3d 1078, 1090 (9th Cir. 2007).  Nor have the MGA parties

10 | waived the attorney-client privilege.  Although the MGA parties discussed the reasons for their

11 | substitution of counsel with the press, there has been no showing that the information they

12 | disclosed revealed the substance of an attorney-client privileged communication.

13 | ### V. CONCLUSION

14 |       For the reasons set forth above, it is hereby ordered as follows:

15 |       1.  Mattel's motion to compel is granted as to Interrogatory Nos. 38, 40, 41 (as narrowed),

16 | 43-44 and 47.  The MGA parties shall serve supplemental responses to said interrogatories no

17 | later than February 26, 2008.

18 |       2.  Mattel's motion to compel is denied as to Interrogatory Nos. 27-37, 39, 42, 46 and 48-

19 | 50.

20 | Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery Master,

21 | Mattel shall file this Order with the Clerk of Court forthwith.

22 |

23 | Dated: February 15, 2008

24 |                 HON. EDWARD A. INFANTE (Ret.)

                         Discovery Master

25 |

26 |

27 |

28 |

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

22

EXHIBIT 15 PAGE 321

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on February 15, 2008, I served the attached ORDER GRANTING IN PART AND DENYING IN PART MATTEL'S MOTION TO COMPEL RESPONSES TO INTERROGATORY NOS. 27-44 AND 46-50 BY THE MGA PARTIES in the within action by email addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| Matthew M. Werdegar, Esq. | Keker & Van Nest | mwerdegar@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| Audrey Walton-Hadlock, Esq. | Keker & Van Nest | awalton-hadlock@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Thomas J. Nolan, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tnolan@skadden.com |
| Raoul D. Kennedy, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | rkennedy@skadden.com |
| Amy S. Park, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | apark@skadden.com |
| Harriet S. Posner, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | hposner@skadden.com |
| Carl Alan Roth, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | croth@skadden.com |
| Timothy A. Miller, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tmiller@skadden.com |
| Marcus R. Mumford, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Mmumford@skadden.com |
| Paul M. Eckles, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Paul.eckles@skadden.com |
| Robert J. Herrington, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Robert.herrington@skadden.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on February 15, 2008, at San Francisco, California.

_Sandra Chan_
Sandra Chan

EXHIBIT 15 PAGE 322