UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

---

HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

---

```
MATTEL, INC.,                  :  PAGES 5061 - 5097
                               :
          PLAINTIFF,           :
                               :
     VS.                       :  NO. ED CV04-09049-SGL
                               :  [CONSOLIDATED WITH
MGA ENTERTAINMENT, INC.,       :  CV04-9059 & CV05-2727]
ET AL.,                        :
                               :
          DEFENDANTS.          :
```

REPORTER'S TRANSCRIPT OF PROCEEDINGS

RIVERSIDE, CALIFORNIA

THURSDAY, JULY 17, 2008

JURY TRIAL - DAY 26

MARK SCHWEITZER, CSR, RPR, CRR
OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT
181-H ROYBAL FEDERAL BUILDING
255 EAST TEMPLE STREET
LOS ANGELES, CALIFORNIA 90012
(213) 663-3494

1    Appearances of Counsel:

2

3    On Behalf of Mattel:

4        Quinn, Emmanuel, Urquhart, Oliver & Hedges, LLP
         By John B. Quinn, Esq.
5            B. Dylan Proctor, Esq.
             Michael T. Zeller, Esq.
6            Harry Olivar, Esq.
             John Corey, Esq.
7            Diane Hutnyan, Esq.
             William Price, Esq.
8        855 South Figueroa Street
         10th Floor
9        Los Angeles, CA 90017
         (213) 624-7707

10

11

12   On Behalf of MGA Entertainment:

13       Skadden, Arps, Slate, Meagher & Flom LLP
         By Thomas J. Nolan, Esq.
14           Carl Alan Roth, Esq.
             Jason Russell, Esq.
15           Lauren Aguiar, Esq.
             David Hansen, Esq.
16           Matthew Sloan, Esq.
             Robert Herrington, Esq.
17       300 South Grand Avenue
         Los Angeles, CA 90071-3144
18       (213) 687-5000

19

20

21

22

23

24

25

1                        I N D E X

2

3        VERDICT......................................5077

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

22d0317b-5441-4dc0-a0b2-7019c5ed3aca

Page 5064

1          Riverside, California; Thursday, July 17, 2008

2                          10:41 A.M.

3          (HEARING HELD OUTSIDE THE PRESENCE OF THE JURY.)

4          THE CLERK:  Calling this matter outside the

5    presence of the jury in the matter of Mattel, Inc.,

6    plaintiff, versus MGA Entertainment, defendant, case number

7    CV 04-9049.

8          Counsel?

9          MR. PRICE:  Bill Price, John Quinn, and Michael

10   Zeller for Mattel.

11         MR. NOLAN:  Good morning, your Honor.  Tom Nolan

12   and Lauren Aguiar on behalf of MGA.

13         THE COURT:  Good morning, Counsel.  The Court has

14   received the following note:  "Just for clarification, if we

15   agreed on all sections of the jury verdict except for four

16   drawings, does that constitute a hung jury?"

17         "Just for clarification, if we agreed on all

18   sections of the jury verdict except for four drawings, does

19   that constitute a hung jury?"

20         That is the question.

21         MR. NOLAN:  On behalf of MGA, we would say no.

22         MR. PRICE:  We would say no as well, your Honor.

23         THE COURT:  So you're asking the Court, then, to

24   ask for the jury to return that verdict?

25         MR. NOLAN:  Yes, your Honor.

1      MR. PRICE:  Well, you might tease them to see if

2  they can actually agree on the four that are remaining.  But

3  I --

4      THE COURT:  Well, my concern is this:  There are

5  four dolls in question.  Apparently there are four drawings

6  in question.  If these are the four earliest drawings of the

7  doll in question, we may have a serious problem.

8      MR. NOLAN:  Well, I mean respectfully, your Honor,

9  MGA would take a different perspective on it.  We believe

10  that the original -- our theory of the case has always been

11  that the original concept is found in the initial drawings

12  and the master and that the characters are interchangeable,

13  the heads, Zoe, all of that.  If you're talking about color

14  drawings, that, of course, may be a different issue.

15      But on the -- let's just say on the assumption that

16  all we're doing is talking about the color version of the

17  drawing, then I think we have a legal argument that we would

18  be making to the Court.  But that's of no moment.

19      So I --

20      THE COURT:  I guess I'm thinking more about the

21  drawings done in the notebook, those four.

22      MR. NOLAN:  But I don't believe those drawings --

23  let me just check on one thing.

24      THE COURT:  I'm reluctant to press this.  This is

25  one of the few times you've both agreed.  But I just don't

Page 5066

1    want us to act hastily here.

2              MR. NOLAN:  Your Honor, MGA understands the concern

3    of the Court, and we still stand by our position.

4              THE COURT:  Very well.

5              MR. PRICE:  Even Mr. Zeller agrees with Ms. Aguiar.

6    We agree.

7              MS. AGUIAR:  Your Honor, we object to that.

8              THE COURT:  All right.  Very good.  I'll simply

9    state no.

10             MR. PRICE:  Again, your Honor, one thing I would

11   suggest is obviously, and they have been deliberating for a

12   while, but we might suggest that they spend a little time on

13   the last four.

14             THE COURT:  Well, the question is a just for a

15   clarification question.  So it's not suggesting that they are

16   done.  They just want to know if they don't reach agreement

17   on that four, is it a hung jury, and you're telling me that

18   it's not.

19             Very well.  Make copies of the note and send it

20   back to the jury.

21             Court is in recess.

22             (Recess taken.)

23             THE COURT:  We're back on the record.  The Court

24   has received another note.  We're outside the presence of the

25   jury.  The note reads as follows:  "The jury has reached a

Page 5067

1    unanimous verdict on items 2 through 15.  Under item No. 1,

2    we agree unanimously on all but four of the items listed.  I

3    believe this will not change.  How should we proceed?"

4              THE COURT:  It's signed by the foreperson of the

5    jury.

6              MR. NOLAN:  Your Honor, it doesn't change MGA's

7    position, your Honor.

8              THE COURT:  So you believe that I should take the

9    verdict?

10             MR. NOLAN:  Yes.

11             MR. PRICE:  I think it might help if the Court

12   encouraged them and see if there's any push-back to try to

13   get a full, you know, decision on all the drawings.  There's

14   no harm in it, and it's traditional, I think, for the Court

15   to say this is obviously a matter of importance.

16             THE COURT:  What form would you suggest the Court

17   taking it?

18             MR. PRICE:  I'm trying to remember what

19   instructions courts give.  I guess just we can try to find a

20   standard instruction that, you know, obviously the parties

21   have spent a lot of time in this, and they'd like a full

22   resolution of all the issues.  And I think we'd like to

23   attempt for some period of time to see if they can resolve

24   the remaining issues.  Something of that nature.

25             THE COURT:  Mr. Nolan?

1       MR. NOLAN:  Your Honor, I guess it would be akin to

2   an Allen instruction in a criminal chase.  This clearly is

3   one of those things where it's left to the Court's

4   discretion.  A question back whether or not they believe

5   additional time would aid them in coming to unanimous

6   decision on all of the drawings, but I suspect that the note

7   coming out, that maybe the answer will be no.  But I have no

8   objection to that if the Court were to so be inclined.

9       THE COURT:  Just thinking out loud, since the jury

10  has decided on 2 through 15 and all but four of these

11  drawings, I suppose there's no harm at this point in being up

12  front with them that there's a second phase to this trial.

13      MR. NOLAN:  Well, your Honor, I think my reaction

14  to that would be --

15      THE COURT:  I understand your position, that there

16  may not be.  We don't know what the jury verdict is, and I'm

17  not suggesting that to the contrary, but I guess -- my

18  concern is this:  I don't want there to be a complication

19  once we see this verdict, and we're not going to be able to

20  undo anything and say oh, my gosh, those four, well, now

21  we've got a problem with the copyright claim.  And that's my

22  concern.

23      I really haven't given enough thought to this to

24  know how who this helps or doesn't help.  But once we see

25  this, we can't unsee it.  We can't undo it.  And that's my

1   concern.  And I'm just trying to think is there some way that

2   I can impress upon them that, you know, we may really regret

3   not having a decision.  This jury may regret not having a

4   decision on these four issues going forward.  Because once

5   we've resolved this, they can't go back, then, and decide

6   these four issues.

7                MR. NOLAN:  Correct.

8                THE COURT:  These four items.

9                MR. NOLAN:  Your Honor, I suppose, then,

10  Mr. Price's suggestion about coming back with a note asking

11  them to decide whether or not they could come to a unanimous

12  decision.  It doesn't change the answer with respect to a

13  hung jury, but I'm concerned about suggesting to the jury one

14  way or the other about a second phase.

15               THE COURT:  All right.  Fair enough.

16               MR. NOLAN:  But I think asking them, you know, not

17  answering the four questions might have implications in the

18  case.  We would ask you to try, you know, whatever the

19  language is about try your best efforts to try to come to a

20  unanimous decision.

21               THE COURT:  I'll take a look at -- the Allen charge

22  isn't particularly helpful.  This is what I'd suggest to the

23  parties, and then I'll hear from you.  Both parties have

24  devoted substantial resources to trying this case, as each of

25  you have in listening to and deciding this case.  If

Page 5070

1   possible, it is important to both parties that you reach a

2   unanimous verdict on all of the questions that have been

3   presented to you.  Please continue to deliberate.

4            MR. PRICE:  That's fine with us, your Honor.

5            MR. NOLAN:  Your Honor, I guess my suggestion would

6   be please continue to deliberate to determine -- to see if

7   you could reach a unanimous verdict.  Continue to deliberate

8   to see if it's possible to reach a unanimous verdict.

9            THE COURT:  I'll reread it in its entirety.  I

10  think that's a good suggestion, Mr. Nolan.  Both parties have

11  devoted substantial resources to trying this case, as each of

12  you have in listening to and deciding this case.  If

13  possible, it is important to both parties that you reach a

14  unanimous verdict on all questions that have been presented

15  to you.  Please continue your deliberations to determine if

16  you can reach a unanimous verdict on all questions.

17           MR. QUINN:  Your Honor, in other circumstances, I

18  recall seeing language, and I don't have it at hand, to the

19  effect that jurors should be cautious about, you know,

20  holding to entrenched positions as deliberations go by.

21           THE COURT:  Well, the language -- I have the Allen

22  charge in front of me from the criminal instructions, and

23  there's something to that effect in here, and this may be

24  what you're thinking of.

25           "As jurors, you have a duty to discuss the case

1  with one another and to deliberate in an effort to reach a

2  unanimous verdict, if each of you can do so without violating

3  your individual judgment and conscience.  Each of you must

4  decide the case for yourself, but only after you consider the

5  evidence impartially with your fellow jurors.

6          "During your deliberations, you should not hesitate

7  to re-examine your own views and change your opinion if you

8  become persuaded that it is wrong; however, you should not

9  change an honest belief as to the weight or effect of the

10  evidence solely because of the opinions of your fellow jurors

11  or for the mere purpose of returning a verdict."

12          MR. QUINN:  That is what I was thinking of.  And

13  I'm wondering whether that would be helpful to say as well.

14          THE COURT:  Basically it's the Model Instruction

15  7.7 from the Criminal Jury Instructions.

16          MR. QUINN:  I would think all of that is

17  uncontroversial.

18          THE COURT:  It's drafted in the context of a

19  criminal case.  Of course, there's greater sensitivities in

20  giving an Allen charge in a criminal case, and all of the

21  cautions and the commentary are cautions about a criminal

22  case.  They really don't apply to a civil dispute between two

23  parties that are similarly situated.

24          MR. QUINN:  You would think that if that language

25  passes muster in the criminal context, that it wouldn't be a

Page 5072

1    problem in the civil context.  I think it's useful because it

2    sort of fleshes out and maybe will cause jurors to reflect on

3    what's happened and whether they should re-examine their

4    views or whether they are listening to others rather than

5    just merely telling them the parties have a lot invested in

6    this.  Please deliberate some more.

7            THE COURT:  I do think the language about both

8    parties have devoted substantial resources is appropriate in

9    this case.  And so what I'm thinking of doing is combining

10   the two, unless there's a particular objection.  I do think

11   that might be helpful as well.  And since it's rather long,

12   what I may do is just bring the jury out here and speak to

13   them directly and give them this instruction.

14           What I'm saying is this instruction would be 7.7

15   criminal Allen charge essentially combined with the language

16   about both parties have devoted a substantial amount of

17   resources in trying this case.  Please continue to deliberate

18   to determine if you can reach a unanimous verdict on all

19   questions.  I'll type this out so you can look at it before I

20   give it, but in theory, any objections here?

21           MR. QUINN:  No objection from Mattel.

22           MR. NOLAN:  No objection, your Honor.  We just want

23   to take a look at it.

24           THE COURT:  Very well.  I'll go back in chambers

25   and type this up.

Page 5073

1          MR. NOLAN:  The one comment I have about bringing

2     them out, you know, technically or typically that happens

3     once they have announced that they are at a standstill.

4          THE COURT:  You're right.

5          MR. NOLAN:  And this is -- we're not there just

6     yet.  I just wonder whether or not it's necessary to bring

7     them out to the courtroom.

8          THE COURT:  All right.  I'll give them a copy.

9     This will be Supplemental Jury Instruction No 2.

10         "Members of the jury, you have advised that you

11    have been unable to agree upon a complete verdict in this

12    case.  I have decided to suggest a few thoughts to you.  As

13    jurors, you have a duty to discuss the case with one another

14    and to deliberate in an effort to reach a unanimous verdict

15    if each of you can do so without violating your individual

16    judgment and conscience.  Each of you must decide the case

17    for yourself, but only after you have considered the evidence

18    impartially with your fellow jurors.

19         "During your deliberations, you should not hesitate

20    to re-examine your own views and change your opinion if you

21    become persuaded that it is wrong; however, you should not

22    change an honest belief as to the weight or effect of the

23    evidence solely because of the opinions of your fellow jurors

24    or for the mere purpose of returning a verdict.

25         "All of you are equally honest and conscientious

Page 5074

1    jurors who have heard the same evidence.  All of you share an

2    equal desire to arrive at a verdict.  Each of you should ask

3    yourself whether you should question the correctness of your

4    present position.  I remind you that in your deliberations,

5    you are to consider the instructions I have given you as a

6    whole.  You should not single out any part of any

7    instruction, including this one, and ignore others.  They are

8    all equally important.

9           "Both parties have devoted substantial resources to

10   trying this case, as each of you have done in listening to

11   and deciding this case.  If possible, it is important to both

12   parties that you reach a unanimous verdict on all questions

13   that have been presented to you.  Please continue your

14   deliberations to determine if you can reach a unanimous

15   verdict on all questions."

16          Any objection?  And I will just send this back to

17   them.  Counsel?

18          MR. QUINN:  No objection.

19          MR. NOLAN:  No objection on behalf of MGA.

20          THE COURT:  Very good.  All right.  Stand by.

21          (Recess taken.)

22          (The time is now 1:15 P.M.)

23          THE COURT:  We're back on the record outside the

24   presence of the jury.

25          The Court has received two notes since sending back

Page 5075

1   the instruction.  One note, the first note that came in --

2   two notes came in after the -- to Mr. Holmes after the Court

3   sent the instruction back.  The second note states as

4   follows:  "It is our consensus that there will be no change

5   in our position on the four items of disagreement regardless

6   of the amount of discussion."

7          The first note is from another juror.  And it

8   reveals to the Court the juror's decision, in violation of

9   the instruction.  The Court looks to counsel to advise how to

10  proceed.

11         My inclination is to not set forth this note on the

12  record at this point, simply ask the jury to return the

13  verdict.  But I -- I would ask for counsel's advice.

14         MR. NOLAN:  Your Honor, on behalf of MGA, we would

15  say that the Court should seal that note, under seal, not

16  disclose it, except the second note as an indication that no

17  further time would warrant a more unanimous verdict and ask

18  for the verdict to be read.

19         MR. QUINN:  In principle, we agree with what

20  Mr. Nolan has said, your Honor.  One caveat or question I

21  guess we have is does the juror say something about why this

22  is being revealed?

23         THE COURT:  No.  The juror discloses to the Court

24  that she is the person -- he, she, is the person that is the

25  hold-up on the four drawings, which is fine, but then he/she

22d0317b-5441-4dc0-a0b2-7019c5ed3aca

Page 5076

1    goes on to tell the Court which side she is in line with.

2           MR. QUINN:  Okay.  Well, we agree with Mr. Nolan,

3    your Honor.

4           THE COURT:  It is of no moment, I don't think,

5    because ultimately taken together with the second note, it is

6    clear that because of this one juror, there is a deadlock on

7    these four drawings.  And that is what is conveyed, and

8    that's what the Court takes.  I think the appropriate

9    response at this point is to simply call for the verdict,

10   which is what both sides have requested previously, and

11   that's what the Court intends to do.

12          Agreed?

13          MR. NOLAN:  Agreed.

14          MR. QUINN:  Agreed.

15          THE COURT:  Very well.  I'm simply going to

16   respond, then, to the second note that I received.  Please

17   submit the verdict to Mr. Holmes.

18          Take a brief recess.

19          (Recess taken.)

20          (WHEREUPON THE JURY ENTERS.)

21          THE COURT:  We're back on the record in the

22   presence of the jury.  I understand the jury has completed

23   their verdict at this time; is that correct?  Foreperson?

24          THE FOREPERSON:  You did receive our last message?

25          THE COURT:  With the exception of the four

Page 5077

1  drawings.

2           THE FOREPERSON:  Yes, sir, with that exception.

3           THE COURT:  You've otherwise reached unanimous

4  verdict?

5           THE FOREPERSON:  Yes, we have.

6           THE COURT:  Would you please hand the verdict to

7  Mr. Holmes.

8           THE CLERK:  Thank you, sir.

9           THE COURT:  Thank you.

10          Mr. Holmes, would you please read the verdict.

11          THE CLERK:  Yes, your Honor.

12          Final verdict.  Verdict form, page 1, we answer the

13  questions submitted to us as follows:

14          Timing of tangible items, No. 1.  For each of the

15  items listed below, has Mattel proven by a preponderance of

16  the evidence that the item was conceived or reduced to

17  practice, that is, created by, Carter Bryant alone or jointly

18  with others, during the period in which he was employed by

19  Mattel, January 4, 1999, to October 19, 2000.

20          Beginning at line 13 on page 1, the answer checked

21  is yes regarding Exhibit TX 5-52 through Exhibit 10033-4.

22          Next, the jury checks yes regarding

23  Exhibits TX 5-88 through and including Exhibit 10153-4.

24          Next, the jury checked yes regarding Exhibits

25  TX 5-35 and 757.

Page 5078

1          Next, the jury checked yes regarding Exhibits

2     TX 5-36701 and 702.

3          Next, the jury checked yes regarding Exhibit

4     TX 5-37 and Exhibit 703.

5          Next, the jury checked yes regarding Exhibit

6     TX 5-38 and 762.

7          The jury did not check any answer regarding the

8     following exhibits.

9          First, TX 5-39, 523, and 752.

10         Same answer for TX 5-40, 753, 754, and 13583.

11         No answer was checked for Exhibits TX 751-2, 751-3,

12    5-41, and 755.

13         No answer was checked regarding Exhibit TX 5-42 and

14    756.

15         The jury checked yes regarding Exhibits TX 5-43 and

16    709.

17         The jury checked yes regarding Exhibit TX 5-46 and

18    710.

19         The jury checked yes regarding Exhibits TX 5-49 and

20    704.

21         The jury checked yes regarding Exhibit TX 5-50 and

22    705.

23         Page 2.  The jury checked yes regarding Exhibits

24    TX 5-53 through Exhibit 15175.

25         The jury checked yes regarding Exhibits TX 5-54

Page 5079

1     through Exhibit 775.

2               The jury checked yes regarding Exhibits TX 5-55

3     through Exhibit 1152-9.

4               The jury checked yes regarding Exhibits TX 5-56,

5     764, and 15176.

6               The jury checked yes regarding Exhibits TX 5-57,

7     776, and 777.

8               The jury checked yes regarding Exhibits TX 5-58,

9     765, and 15177.

10              The jury checked yes regarding Exhibit TX 5-59,

11    739, and 740.

12              The jury checked yes regarding Exhibits TX 5-60 and

13    761.

14              The jury checked yes regarding Exhibits TX 5-61

15    through Exhibit 1748.

16              The jury checked yes regarding Exhibits TX 5-62

17    through Exhibit 1752-1.

18              The jury checked yes regarding Exhibits --

19              MR. QUINN:  Excuse me.  Is there another drawing

20    there on that line, 769?

21              THE CLERK:  What line number, Mr. Quinn?

22              MR. QUINN:  Line 11.  5-62, and what the clerk read

23    was 1752-1.  Is there another?

24              THE COURT:  Yes, there is.  There is actually one,

25    two, three, four, five, six, seven, eight, nine exhibits on

Page 5080

1    that line.

2            THE CLERK:  I'm reading the first and last of each

3    line unless the Court desires I read each one.  Here at line

4    11.

5            THE COURT:  You're fine.

6            THE CLERK:  Very good.

7            THE COURT:  Proceed, Mr. Holmes.

8            THE CLERK:  Thank you, your Honor.

9            The jury checked yes regarding Exhibits TX 5-63

10   through Exhibit 760.

11           The jury checked yes regarding Exhibits TX 5-464

12   through Exhibit 1750.

13           The jury checked yes regarding Exhibits TX 5-65

14   through 11789.

15           The jury checked yes regarding Exhibits TX 5-66,

16   794, and 1152-13.

17           The jury checked yes regarding Exhibits TX 5-67

18   through Exhibit 10535.

19           The jury checked yes regarding Exhibits TX 5-68

20   through 1751-4.

21           The jury checked yes regarding Exhibits TX 5-69

22   through Exhibit 783.

23           The jury checked yes regarding Exhibits TX 5-72

24   through Exhibit 15179.

25           The jury checked yes regarding Exhibits TX 5-73,

Page 5081

1    741, and 742.

2            The jury checked yes regarding Exhibits TX 5-76 and

3    706.

4            The jury checked yes regarding Exhibits TX 5-77 and

5    707.

6            The jury checked yes regarding Exhibits TX 5-58,

7    10539 --

8            THE COURT:  You mean 5-78.

9            THE CLERK:  I'll read again, your Honor.

10           THE COURT:  Thank you.

11           THE CLERK:  At line 22, the jury checked yes

12   regarding TX 5-78 and Exhibit 10539 and 18501.

13           The jury checked yes regarding Exhibits TX 5-136

14   and -- strike that.  I'll do it again -- TX 5-136 and

15   Exhibit 711.

16           The jury checked yes regarding Exhibits TX 10579

17   and 18281.

18           The jury checked yes regarding Exhibit TX 15172.

19           Page 3.  Number 2.

20           For each of the items listed below, has Mattel

21   proven by a preponderance of the evidence that item -- that

22   the item was conceived or reduced to practice, that is,

23   created by Carter Bryant, alone or jointly with others,

24   during the period in which he was employed by Mattel, January

25   4, 1999, to October 19, 2000.

Page 5082

1           Beginning at line 7, the jury answered yes

2    regarding Exhibits TX 3-1 through Exhibit 778.

3           The jury checked yes regarding Exhibit TX 3-2

4    through Exhibit 2-5.

5           The jury checked yes regarding Exhibits TX 3-3

6    through Exhibit 10544.

7           The jury checked yes regarding Exhibits TX 5-5,

8    791, 1-8, and 2-2.

9           THE COURT:  You mean TX 3-5 for the first one.

10   Repeat that line.

11          THE CLERK:  Very well.

12          At line 10, the jury checked yes regarding

13   Exhibits TX 3-5 through Exhibit 2-2.

14          The jury checked yes regarding Exhibits TX 3-6

15   through Exhibit 10547.

16          The jury checked yes regarding Exhibits 3-8 through

17   Exhibit 10546.

18          The jury checked yes regarding Exhibits TX 3-9

19   through Exhibit 10543.

20          The jury checked yes regarding Exhibits TX 3-10,

21   735, and 736.

22          The jury checked yes regarding Exhibits TX 3-12

23   through Exhibit 10542.

24          The jury checked yes regarding Exhibits TX 3-13

25   through Exhibit 10-3.

Page 5083

1          The jury checked yes regarding Exhibits TX 5-79

2     through Exhibit 5-105.

3          The jury checked yes regarding Exhibit TX 1-2.

4          The jury checked yes regarding Exhibit TX 3-11.

5          The jury checked yes regarding Exhibits TX 5-26 and

6     712.

7          The jury checked yes regarding Exhibits TX 5-27 and

8     713.

9          The jury checked yes regarding Exhibits TX 5-81 and

10    720.

11         The jury checked yes regarding Exhibits TX 5-82 and

12    715.

13         The jury checked yes regarding Exhibits TX 5-83 and

14    723.

15         The jury checked yes regarding Exhibits TX 3-4

16    through Exhibit 717.

17         The jury checked yes regarding Exhibits TX 3-7

18    through Exhibits 63-1.

19         The jury checked yes regarding Exhibits TX 5-80

20    through Exhibit 5-86.

21         The jury checked yes regarding Exhibits TX 5-87

22    through Exhibit 725.

23         The jury checked yes regarding Exhibit TX 5-34.

24         Page 4, No 3.

25         For each of the items listed below, has Mattel

Page 5084

1   proven by a preponderance of the evidence that the item was

2   conceived or reduced to practice, that is, created by Carter

3   Bryant, alone or jointly with others, during the period in

4   which he was employed by Mattel, January 4, 1999, to October

5   19, 2000.

6           Beginning at line 7, the jury checked yes regarding

7   Exhibits TX 5-89 through Exhibit 323-33.

8           The jury checked yes regarding Exhibits TX 1107 and

9   10638.

10          The jury checked yes regarding Exhibit TX 1108 and

11  10639.

12          The jury checked yes regarding Exhibits TX 1109 and

13  771.

14          The jury checked yes regarding Exhibits TX 1110 and

15  773.

16          The jury checked yes regarding Exhibits TX 5-14 and

17  10515.

18          The jury checked yes regarding Exhibits TX 5-18 and

19  10518.

20          The jury checked yes regarding Exhibits TX 5-19 and

21  10519.

22          The jury checked yes regarding Exhibit TX 5-28 and

23  10526.

24          The jury checked yes regarding Exhibit TX 5-3.

25          And at line 16, the jury checked yes regarding

22d0317b-5441-4dc0-a0b2-7019c5ed3aca

Page 5085

1    Exhibit TX 5-95.

2            The jury checked yes regarding Exhibit TX 5-96.

3            The jury checked yes regarding Exhibit TX 5-99.

4            The jury checked yes regarding Exhibit TX 323-18.

5            The jury checked yes regarding Exhibit TX 323-19.

6            The jury checked yes regarding Exhibit TX 323-26.

7            Page 5, No 4.

8            For each of the items listed below, has Mattel

9    proven by a preponderance of the evidence that the item was

10   conceived or reduced to practice, that is, created by Carter

11   Bryant, alone or jointly with others, during the period in

12   which he was employed by Mattel, January 4, 1999, to October

13   19, 2000.

14           Trial Exhibit No. The Three-Dimensional Item

15   Presented at Pitch Meeting.

16           The answer is yes.

17           As to Trial Exhibit 1136, the answer is yes.

18           Timing of ideas, No 5.  Has Mattel proven by a

19   preponderance of the evidence that Carter Bryant conceived

20   the Bratz characters while employed by Mattel?

21           The jury answered yes.

22           Number 6.  Has Mattel proven by a preponderance of

23   the evidence that Carter Bryant conceived the name Bratz

24   while employed by Mattel?

25           The answer is yes.

Page 5086

1           Page 6, intentional interference with contractual

2     relations.

3           Number 7, is MGA Entertainment, Inc., MGA, liable

4     to Mattel for intentional interference with contractual

5     relations?

6           The jury checked yes.

7           Number 8, is Isaac Larian liable to Mattel for

8     intentional interference with contractual relations?

9           The answer is yes.

10          Number 9, aiding and abetting breach of fiduciary

11    duty.  Is MGA liable to Mattel for aiding and abetting breach

12    of fiduciary duty?

13          The answer checked is yes.

14          Number 10, is Isaac Larian liable to Mattel for

15    aiding and abetting breach of fiduciary duty?

16          The jury checked yes.

17          Aiding and abetting breach of the duty of loyalty.

18          Number 11.  Is MGA liable to Mattel for aiding and

19    abetting breach of the duty of loyalty?

20          The answer was checked yes.

21          Page 7, No 12.  Is Isaac Larian liable to Mattel

22    for aiding and abetting breach of the duty of loyalty?  The

23    answer checked is yes.

24          Conversion, No 13.  Is MGA liable to Mattel for

25    conversion?

Page 5087

1          The jury checked the answer yes.

2          Number 14.  Is Isaac Larian liable to Mattel for

3     conversion?

4          The answer checked is yes.

5          Number 15.  Is MGA Entertainment HK, Limited,

6     liable to Mattel for conversion?

7          The answer checked by the jury is yes.

8          Dated July 17, 2008, signed by the presiding juror

9     of the jury.

10         Ladies and gentlemen of the jury, is the verdict,

11    as presented and read on the record the verdict of each of

12    you, so say you one, so say you all?

13         THE JURY:  Yes.

14         THE CLERK:  Thank you.  Your Honor.

15         THE COURT:  Is there a request to poll the jury?

16         MR. NOLAN:  No, your Honor.

17         MR. QUINN:  No, your Honor.

18         THE COURT:  Okay.  At this time, members of the

19    jury, I'm going to ask you to return to the jury room.

20    You'll be contacted shortly.

21         (WHEREUPON THE JURY WITHDRAWS.)

22         THE COURT:  As I indicated to counsel off the

23    record during the lunch hour, the Court intends to resume

24    with the trial, Phase 1-B, on Wednesday of next week,

25    Wednesday being the 23rd of July.  I think the jury needs

1    some time to rest.  I know counsel will probably benefit from

2    some time as well.

3              There's a matter the Court wants to take up in

4    camera with counsel related to this last note.  Is there

5    anything else counsel wishes to address with the Court before

6    I bring the jury back in and inform them that we will resume

7    on Wednesday, the 23rd of July?

8              MR. QUINN:  From Mattel, no, your Honor.

9              MR. NOLAN:  On behalf of MGA, no, your Honor.

10             THE COURT:  Very well.  The Court is going to be in

11   recess.  Counsel, be prepared to come back in chambers.

12             (Recess taken.)

13             IN CHAMBERS CONFERENCE HELD AND PLACED

14             UNDER SEAL IS NOT TRANSCRIBED HEREIN.

15             (WHEREUPON THE JURY ENTERS.)

16             THE COURT:  We're back on the record now in the

17   presence of the jury.  Members of the jury, the Court has now

18   received, and of course, we've returned the verdict that you

19   have made with respect to liability on the various tort

20   claims related to fiduciary duty, duty of loyalty,

21   interference with contractual relations, and conversion.

22             You've also made findings with respect to a number

23   of the drawings and items at issue.

24             A second phase of the trial must now begin in which

25   you determine the damages, if any, on the various claims in

22d0317b-5441-4dc0-a0b2-7019c5ed3aca

Page 5089

1   which you have found liability as well as make some findings

2   with respect to copyright issues of ownership and, if

3   necessary, damage issues with respect to that, some questions

4   regarding certain defenses and other matters that will be put

5   before you.

6              As I've indicated to you, the Court has placed the

7   parties in this case on a strict timetable.  A total amount

8   of time that has been allocated for them for both phases of

9   the trial, the phase that has been completed now and the

10  phase that will begin.

11             Assuming that both sides use all of their time for

12  this remaining phase and counting a day for opening

13  statements and a day for closing arguments and instruction,

14  we have eight court days left.

15             The Court is planning to begin the second phase on

16  Wednesday, Wednesday next.  The Court, counsel, probably

17  yourselves need a little bit of time between these phases.

18  There's some preliminary legal matters that we need to take

19  up as we prepare for this phase.  The Court has some other

20  matters that it must address.  The trial then, or the second

21  phase will begin next Wednesday.  Those eight trial days,

22  even though that normally would be two weeks, if run

23  consecutively, are going to be spread over three weeks.  We

24  will have trial next Wednesday, Thursday, and Friday, the

25  23rd, 24th, and 25th.

Page 5090

1            Wholly unrelated to this, there's a matter the

2    Court must attend to out of state associated with the

3    Ninth Circuit Court of Appeals from the week of July 28th.

4    We will then resume with this trial August 5th, 6th, and then

5    if necessary, 7th and 8th.  And the Court anticipates that

6    based on the number of hours that are remaining, we will wrap

7    up that week or the first day of the following week.

8            So within three weeks of starting next Wednesday,

9    the trial will be completely finished in terms of presenting

10   evidence and statements and argument.

11           This has been a tremendous burden on all of you,

12   and I recognize that.  And we still have work to do.  And I

13   just will certainly revisit this issue in greater detail when

14   all of our work is done, but it's just at this point I want

15   to thank you for your tremendous service.  This case is, of

16   course, very important to all the parties, and it's -- your

17   work in this matter has been exemplary.  You have paid

18   careful attention, and the -- and have been attentive during

19   the testimony, and I know we still have a few weeks to go.  I

20   trust you'll continue to pay careful attention and continue

21   with your sworn duty.

22           But at this time I'm going to excuse you.  We will

23   reconvene at 9:00 A.M. on Wednesday, July 23rd.

24           You are no longer in deliberations.  So you are no

25   longer to discuss the case among yourselves.  The admonition

Page 5091

1    not to discuss this with anybody else remains in place.   The

2    admonition not to read anything about this case remains in

3    place, notwithstanding the fact that your verdict today or

4    your decision today is public.   You are to avoid any reading

5    about the decision or any reaction to your decision.   And

6    it's really important that you remember and keep in mind all

7    those various admonitions that the Court has given you

8    throughout this trial.

9            We'll resume on Wednesday, the 23rd, at 9:00 A.M.

10   And I will look forward to seeing you then.

11           Until then, you are excused.

12           Good afternoon.

13           (WHEREUPON THE JURY WITHDRAWS.)

14           THE COURT:  Please be seated.  Is there anything

15   further that we need to take up at this time?

16           MR. QUINN:  Not from Mattel, your Honor.  Oh, I'm

17   sorry.

18           MR. ZELLER:  We do, your Honor.  A couple of quick

19   issues.  Number one, I think I generally understand what the

20   Court is looking for in advance of tomorrow's hearing.  One

21   set of issues that have not been resolved, and the Court has

22   deferred that, relate to 1-B are the various Daubert issues

23   that may come up.

24           Is the Court interested in seeing those as part of

25   this tomorrow morning along with the argument, or is the same

Page 5092

1    general ruling that we'll take it up during the course of the

2    actual 1-B trial?

3              THE COURT:  What I'm hoping to have tomorrow at

4    noon, when we meet, is for you to be able to identify those

5    witnesses that you do intend to call.  To the extent that any

6    of those witnesses -- and I say this to both sides

7    simultaneously -- to the extent that any of those witnesses

8    are the subject of already filed motions to exclude or

9    preclude, please identify those.  I may or may not conduct

10   the hearing tomorrow, but I at least want to have that before

11   me, and I may be in a position to make that ruling.

12             I may defer until the morning of the witness being

13   called, as we did in Phase 1-A.  We'll have to see how that

14   plays out.

15             But those should be identified for me.  I really am

16   going to insist, as I indicated in chambers, though, that we

17   have identified the witnesses for this next phase, and to the

18   extent that any of them have been previously the subject of a

19   motion to preclude, have that included in the binder that

20   you'll provide for the Court at 10:00 A.M.

21             MR. ZELLER:  Understood.  The second issue is, your

22   Honor, is we would ask leave to file a short motion that

23   would ask for leave to serve a rebuttal to a survey that MGA

24   has put forth in expert reports.

25             THE COURT:  A rebuttal to a --

22d0317b-5441-4dc0-a0b2-7019c5ed3aca

Page 5093

1          MR. ZELLER:  A survey.

2          THE COURT:  A survey.

3          MR. ZELLER:  Just generally speaking, your Honor,

4    the issue is that we at one point commissioned a study,

5    basically testing the reaction of younger girls as to, you

6    know, those Bratz drawings that are at issue and whether they

7    recognize them as Bratz.  I believe that there is -- there

8    will be issues about admissibility of that report as to

9    whether or not it's something that would be suitable for a

10   jury, and we'll be prepared to, of course, argue those.

11          I also understand that there has been a

12   countersurvey that's been done, and what we're asking to do

13   is submit an additional expert report that I believe has some

14   additional study findings in it and response.

15          THE COURT:  I will give you leave to raise this as

16   a motion orally tomorrow.  I will indicate whether or not I

17   need briefing on this at that time.

18          MR. ZELLER:  Thank you.

19          THE COURT:  I might be able to resolve this just

20   based on both of your positions.  But I'm going to start the

21   hearing at noon tomorrow by getting, just so I don't have a

22   moving target, an exhaustive list of the issues.  So please

23   be prepared to identify at noon that which you think needs to

24   be addressed before we start the trial at 9:00 A.M. on

25   Wednesday.  I know it's a lot of work to do between now and

Page 5094

1   tomorrow morning.  But we need to get this done.

2             MR. ZELLER:  Understood.

3             MR. NOLAN:  Your Honor, I understand that the

4   hearing will start at noon.  I also understand that you wish

5   to have a submission by ten o'clock in the morning.

6             THE COURT:  That's correct.

7             MR. NOLAN:  That will set forth a proposed agenda

8   of the items.

9             THE COURT:  What I specifically want in the binder

10  are the briefs that relate, to help the Court refresh its own

11  recollection.  Some of these briefs I have not read for two

12  or more months.  And what I'd like to do is have those set

13  before me so I can refresh my own recollection in advance of

14  the hearing.  There may be additional items up until noon

15  that you may think of.

16            But what I'm going to be asking for at noon is for

17  somebody from each side or multiple people from each side to

18  set forth what it is that you think needs to be resolved, and

19  then we'll go down through those.  And I may give leave on

20  one or more of those everybody uses for further briefing.  I

21  may defer some of those issues.  I may rule on them then.

22  But I want to have a full, full, full list.

23            And what I do -- what I am insisting on, though, is

24  a complete witness list, and at least a complete universe of

25  exhibits that counsel intends to rely on for the second phase

22d0317b-5441-4dc0-a0b2-7019c5ed3aca

Page 5095

1    provided to each other.

2              And the Court does intend to hold to you that.  So

3    choose your witnesses carefully.

4              MR. NOLAN:  Right.  Thank you for the

5    clarification.

6              MR. ZELLER:  And that reminds me.  Just to flag it

7    for the Court, that there may be a couple of issues in terms

8    of what would necessarily go on the exhibit list for 1-B.

9    The Court will recall that, of course, back in those days

10   when we had issues concerning the number of exhibits that

11   were on the exhibit list, and the Court provided a number.

12   It was 4- or 5,000.

13             THE COURT:  I do recall related to the financial

14   records there was a -- an issue in terms of summaries versus

15   having to bring in individual records.  I trust that's been

16   addressed by the parties since then?

17             MR. ZELLER:  I don't know the actual answer to

18   that.

19             THE COURT:  I trust it will be addressed between

20   now and noon tomorrow, Counsel.  Thank you.

21             MR. ZELLER:  And we have a similar issue concerning

22   products.  I understand that, of course, what may be at issue

23   in terms of infringement would be, you know, literally

24   potentially hundreds of products.  I know the parties have

25   been working on a stipulation for that.

1            But what I was assuming was at least between now

2    and tomorrow that with respect to, say, a list of all those

3    various products, that those would not go on the exhibit

4    list, and the parties would attempt to work that out.  And I

5    just don't know that that would be done by noon tomorrow.

6            But we have been actually in active discussions to

7    try and get that stipulation done.

8            THE COURT:  All right.  Be prepared to discuss that

9    tomorrow, Counsel.

10            I did receive a note from Juror No. 5 indicating

11    that -- it's of a personal nature.  She has a medical issue

12    to address on Thursday, July 24th.  So -- and she's not going

13    to be able to appear on that date.  That's Juror No. 5.  So

14    it looks like what we'll be doing next week is Wednesday and

15    Friday.  There won't be court on Thursday, because I will

16    want to honor that, accommodate the juror.

17            Is there anything else, Ms. Aguiar?

18            MS. AGUIAR:  Just a housekeeping matter, your

19    Honor.  So that we can be fully prepared to address whatever

20    issues need to be addressed tomorrow at noon, and

21    anticipating that we may run into an issue of when we need to

22    alert each other, the parties need to alert each other of

23    that, I assume you were hoping that that would happen before

24    10:00 A.M. tomorrow.

25            Can we at least have an agreement that the parties

Page 5097

1    would exchange with each other the list of what they think

2    will be put to you before noon?  Because certainly we

3    wouldn't be able to properly prepare for argument between

4    10:00 and noon tomorrow.

5              MR. ZELLER:  That was our assumption, your Honor,

6    is that the parties could see what could be worked out.

7              THE COURT:  Very good.  Sounds like we all have

8    work to do.

9              Court is in recess.  See you at noon tomorrow.

10

11             (Proceedings concluded at 3:05 P.M.)

12

13                  C E R T I F I C A T E

14

15

16        I hereby certify that pursuant to Title 28,

17   Section 753 United States Code, the foregoing is a true and

18   correct transcript of the stenographically reported

19   proceedings in the above matter.

20             Certified on July 17, 2008.

21

22
                    _____

23                  MARK SCHWEITZER, CSR, RPR, CRR
                    Official Court Reporter
24                  License No. 10514

25

22d0317b-5441-4dc0-a0b2-7019c5ed3aca