Page 5625

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

---

HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

---

MATTEL, INC.,                    :  PAGES 5625 - 5642
                                 :
          PLAINTIFF,             :
                                 :
     VS.                         :  NO. ED CV04-09049-SGL
                                 :  [CONSOLIDATED WITH
MGA ENTERTAINMENT, INC.,         :  CV04-9059 & CV05-2727]
ET AL.,                          :
                                 :
          DEFENDANTS.            :


REPORTER'S TRANSCRIPT OF PROCEEDINGS

RIVERSIDE, CALIFORNIA

THURSDAY, JULY 24, 2008




MARK SCHWEITZER, CSR, RPR, CRR
OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT
181-H ROYBAL FEDERAL BUILDING
255 EAST TEMPLE STREET
LOS ANGELES, CALIFORNIA 90012
(213) 663-3494

Page 5626

1    Appearances of Counsel:

2

3    On Behalf of Mattel:

4         Quinn, Emmanuel, Urquhart, Oliver & Hedges, LLP
          By John B. Quinn, Esq.
5             B. Dylan Proctor, Esq.
              Michael T. Zeller, Esq.
6             Harry Olivar, Esq.
              John Corey, Esq.
7             Diane Hutnyan, Esq.
              William Price, Esq.
8         855 South Figueroa Street
          10th Floor
9         Los Angeles, CA 90017
          (213) 624-7707

10

11

12   On Behalf of MGA Entertainment:

13        Skadden, Arps, Slate, Meagher & Flom LLP
          By Thomas J. Nolan, Esq.
14            Carl Alan Roth, Esq.
              Jason Russell, Esq.
15            Lauren Aguiar, Esq.
              David Hansen, Esq.
16            Matthew Sloan, Esq.
              Robert Herrington, Esq.
17        300 South Grand Avenue
          Los Angeles, CA 90071-3144
18        (213) 687-5000

19   ALSO PRESENT:  Larry McFarland, Esq.

20

21

22

23

24

25

932cb039-3a58-4ea0-8365-2979bc2004dc

Page 5627

1                       I N D E X

2

3        MATTER:   Defendant MGA Entertainment's

4                  Motion to Quash Subpoena of

5                  Larry McFarland.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

932cb039-3a58-4ea0-8365-2979bc2004dc

Page 5628

1          Riverside, California; Thursday, July 24, 2008

2                          4:30 P.M.

3          THE COURT:  Good afternoon.  Okay.  The next motion

4    that we have, we're now back on the record in the courtroom,

5    no longer under seal.  The next motion the Court has before

6    it is the motion to quash Larry McFarland's subpoena.  And

7    Mr. McFarland is present as well.

8          I've read the motion and the opposition and the

9    reply.  Let me hear from Mattel on this to begin with.

10         Is the specific items that Mattel wants to have

11   introduced from the Hong Kong litigation, in light of the

12   Court's most recent ruling on what's coming in and what's not

13   coming in on that, as I understand it from reading your

14   papers, you are calling Mr. McFarland basically to be a

15   foundational witness to get that in; is that correct?

16         MR. ZELLER:  Yes, your Honor.  It is a very, from

17   our perspective, very straightforward matter.  In particular,

18   Mr. McFarland was counsel to MGA in another infringement

19   matter.  It's a matter of getting in the pleadings,

20   establishing what was accused of infringement.  They are

21   basic foundational questions.  And that's what we anticipate.

22   That's also why we don't think authority like Shelton,

23   even --

24         THE COURT:  I understand.  So it's simply a matter

25   of foundation.

932cb039-3a58-4ea0-8365-2979bc2004dc

Page 5629

1          All right.  Let me hear from MGA.  Because I'm, for

2    the reasons set forth in Shelton, I'm reluctant to have an

3    attorney ever take the stand -- I'm sorry.  Was there

4    something else?

5          MR. ZELLER:  One thing I wanted to clarify.  I

6    think the Court was saying Hong Kong.  This was actually a

7    U.S. case, the one that Mr. McFarland is counsel of record.

8          THE COURT:  Very well.  The Court's ruling applies

9    to that as well.  For the reasons set forth in Shelton and

10   cited by Judge Infante, this Court is certainly in accord of

11   the view that it's desirable to keep opposing counsel off the

12   witness stand if that can be avoided.  Unless there's some

13   necessary reason, some special reason to have counsel take

14   the witness stand.  And then only for the limited purpose of

15   nonprivileged testimony.

16          And certainly in the discovery phase, Judge Infante

17   was 100 percent correct that Mattel could get everything they

18   needed without calling or deposing Mr. McFarland.  The one

19   justification I can see at this point is unless MGA is

20   willing to stipulate to the admission of these various

21   documents and various statements and the foundational aspects

22   here, then Mr. McFarland will be necessary to introduce those

23   statements.  These statements are coming in.  And either

24   Mr. McFarland gets up and they get in through him, or they

25   get in through stipulation.  I don't really care one way or

932cb039-3a58-4ea0-8365-2979bc2004dc

Page 5630

1    the other.

2              I would like to see Mr. McFarland not have to take

3    the stand, because I don't like to see counsel

4    cross-examining counsel.  But that is a sufficient reason in

5    my view to set aside Shelton even to the extent that Shelton

6    applies to trial subpoenas as opposed to depositions, and

7    it's not entirely clear that it fully does, but the basic

8    underlying rationale is appealing to the Court.  That's my

9    thoughts after reading all the papers.

10             MR. RUSSELL:  And if it is a question of getting in

11   the documents, Mr. McFarland, as I understand it from the

12   opposition papers, is only being asked to lay a -- to

13   authenticate, if I really read their papers right, to

14   authenticate documents that were filed within the Central

15   District of California.  Of course, your Honor has the power,

16   pursuant to a request for judicial notice, to take mandatory

17   notice of anything filed.  They are presumptively authentic.

18             Mr. McFarland certainly isn't needed to

19   authenticate documents that are in the court's docket.  And

20   so if that is what we're talking about, you don't need a

21   stipulation.  They can file their request, and we're done.

22             So I suspect that that's not what's happening here.

23   If what we're talking about is the contents of the pleadings

24   once they have been judicially noticed, if you read the

25   opposition, I thought it curious --

932cb039-3a58-4ea0-8365-2979bc2004dc

Page 5631

1              THE COURT:   I did read the opposition.

2              MR. RUSSELL:   I thought it curious that Mattel kept

3     saying Mr. McFarland alleges, Mr. McFarland alleges.  He's

4     the lawyer who takes information from his client and makes

5     allegations in the complaint.  He does haven't a factual

6     basis from his own personal knowledge.  His information, the

7     foundation, if will you, for those statements, is going to be

8     either privileged or attorney work product.

9              I mean, I think if you look at some of the

10    witnesses that Mattel wants to call, I suspect we can obviate

11    this, and maybe the right call is just to defer it.  They are

12    going to call Daphne Gronich and --

13             THE COURT:   Let me stop you there.  Because there

14    is a foundational issue.  What would be a necessary reason

15    for calling Mr. McFarland is if MGA took the position --

16    basically if MGA tried to point the finger at Mr. McFarland,

17    and says well, I don't know what was in those statements.

18    Nobody at MGA knows what our lawyer was doing.  He was just

19    off filing things.  That's not our statement, and then they

20    try to distance themselves from it.

21             So under that circumstance, since there's no

22    privilege associated with any statement that's clearly filed

23    in court or made public, then the basis for that, and

24    limited, of course, you know, where did you come up with

25    that.  Mr. McFarland, did you make that up?  Or was it

932cb039-3a58-4ea0-8365-2979bc2004dc

Page 5632

1   something your client said?  That kind of basic foundational

2   thing, that's what I see as a legitimate basis in a trial to

3   call Mr. McFarland.

4              Judge Infante was correct, and you make this point

5   in spades in your motion in your reply that at the discovery

6   stage, not necessary.  They didn't meet the showing required.

7   Here at trial, to me it's a simple foundational question.

8              MR. RUSSELL:  I couldn't agree with you more.  I

9   guess what I would say is given that we've got two in-house

10  counsel that are going to hit the stand on August 5th,

11  pursuant to the ex parte and also pursuant to an agreement,

12  perhaps if those witnesses are shown the documents, they

13  certainly can lay the foundation that they were in-house

14  counsel when these documents were filed.  And then if the

15  concern that your Honor points out, if in fact Mr. Larian

16  says I've never seen this in my life, if that happens,

17  certainly we can revisit this issue.

18             THE COURT:  Are you proffering, then, that those

19  witnesses, the other in-house counsel are essentially in the

20  same position as Mr. McFarland to authenticate and lay the

21  foundation and establish the basis for those documents?  I'm

22  not going to be hearing from those witnesses -- well, I don't

23  know.  Was that Mr. McFarland?

24             MR. RUSSELL:  As I stand here, I don't have every

25  document in front of me, but my understanding is yes.

932cb039-3a58-4ea0-8365-2979bc2004dc

Page 5633

1           MR. McFARLAND:  Your Honor, Daphne Gronich was

2   general counsel at the time.  And, in fact, if your Honor

3   looks at the -- we did a summary judgment motion.  And if you

4   look at the summary judgment motion, for example, they point

5   out the allegation, the Bratz dolls, the three-dimensional

6   depiction of the original Bratz drawings.  That is declared

7   by Daphne Gronich in her declaration filed in the case.

8           They point out about the Bratz characters drive

9   sales of all the Bratz-related products.  That is declared in

10  Ms. Gronich's declaration filed in support of the summary

11  judgment motion.  So I don't think there's any question here

12  that under the Shelton analysis, if you're trying to keep

13  someone -- am I trial counsel for MGA?  No.  Am I quite

14  identified in this case?  Particularly by Mattel and

15  associated with MGA?  I am counsel for MGA.

16          THE COURT:  And that does lessen the Shelton

17  analysis somewhat because Shelton was primarily concerned

18  with trial counsel calling trial counsel.

19          MR. McFARLAND:  I know that's what everyone says

20  about it, your Honor, but really in the Shelton case, the

21  attorney issue was in-house counsel.  You know, everyone says

22  trial counsel, and you're absolutely right.  That's how it's

23  been talked about.  But the truth is she was in-house counsel

24  working with litigation counsel as I have worked with

25  O'Melveny and Skadden and have represented five or six

932cb039-3a58-4ea0-8365-2979bc2004dc

Page 5634

1    independent witnesses --

2             THE COURT:  As I said, I would rather keep you off

3    the stand if it isn't necessary.  But if it is necessary,

4    you're going to have to take the stand.  Let me hear from

5    Mattel, and then I'll hear your response to this, and maybe

6    if we can get through this with Mr. Zeller, getting out all

7    of the statements that are attributable to MGA without any

8    ducking or weaving in terms of trying to point a finger at

9    Mr. McFarland or somebody else, would that satisfy,

10   Mr. Zeller?

11            MR. ZELLER:  I believe that's correct, your Honor.

12   It would.  One concern I do have is that I don't know, and

13   maybe I'm just being overly suspicious.  What I don't really

14   know and have not received is a concrete assurance that we

15   put these documents and these materials.  And something very

16   specific and important I'll get to in a second.  If we put

17   those in front of Daphne Gronich, that she will be able to

18   lay the foundation for them.  And what we're mostly concerned

19   about, and to be sure, we're concerned about the pleadings.

20   If it were certainly a matter of us filing a motion for

21   judicial notice, we would be the first to do that.  We do not

22   want to waste time with these things.  What we don't want to

23   have is a situation where we're having to basically play a

24   guessing game.  Ms. Gronich, how about all of these things.

25   You know, recognizing any of these, we could spend any amount

932cb039-3a58-4ea0-8365-2979bc2004dc

Page 5635

1   of time --

2           THE COURT:  I understand.  This is what I'll do.

3   I'm going to defer ruling on the motion to quash the trial

4   subpoena.  I am going to order Mr. McFarland to be present on

5   August 6th, assuming that there's no serious conflict you

6   have with being here on August 6th.

7           MR. McFARLAND:  You mean the 6th, Wednesday?

8           THE COURT:  August 6th, Wednesday.

9           MR. McFARLAND:  I can be here.

10          THE COURT:  Very well.  So that on August 5th,

11  based on Mr. Russell's statement that I understand you'll be

12  calling -- they are going to have in-house counsel from MGA

13  testify, and let's see if we can get it in through them, and

14  if there is any foundational problems, Mr. McFarland takes

15  the stand the next day.

16          MR. ZELLER:  Thank you, your Honor.  And the one

17  specific item I just wanted to say for the record, or items,

18  and this may actually require Mr. McFarland's participation.

19  It may not require him to testify.  But what we need are the

20  actual tangible dolls that were accused of infringement.

21  That's one thing we have been asking for and have been asking

22  for from Mr. McFarland.  Now, whether we get those from MGA

23  or whether we get them from Mr. McFarland, we don't care.

24          THE COURT:  What about the physical items?

25          MR. McFARLAND:  With respect to the subpoena, I do

932cb039-3a58-4ea0-8365-2979bc2004dc

Page 5636

1    not have the dolls.  They are not in my possession.  We've

2    searched.  We don't have any.  That would be with No. 2.

3    Request No. 4, we don't have any of those.  Item No. 1, all

4    original photographs of the dolls, Musical Trendy Teenies,

5    Angel Doll, and Fashion Doll, my understanding, there are no

6    original photographs.  I.e., we've looked in our files, and

7    there were no what you would think of as a photograph.

8              Everything we have is a digital file.  I'd be glad

9    to give additional copies.  A lot of those or most of those

10   digital files were attached as exhibits to various pleadings

11   which, of course, were produced by MGA in this case.  If they

12   wanted me to print out color, better versions, I'd be happy

13   to do.  But the word original, they are not really --

14             THE COURT:  I think that would go a long way

15   towards resolving.

16             MR. McFARLAND:  I'd be glad to do that.  And item

17   No. 3 is objectionable, which would be the catchall.  All

18   documents referring or relating to the lawsuit, period.  With

19   no restrictions.  I think that's abusive and way beyond -- as

20   you know, your Honor, this was all, and I'm not privy to all

21   of it, but all subject to a very large discovery dispute --

22             THE COURT:  Mr. Zeller, what are we looking for

23   beyond those?

24             MR. ZELLER:  I will confess that, you know, No. 3 I

25   won't -- I won't agree it's abusive, but I was unaware that

Page 5637

1    was in there.  I would have certainly said something that was

2    more narrowly tailored.  What we're really interested in,

3    your Honor, is the -- are the tangible items, legible copies

4    of the photographs, when they are in original form or, you

5    know, that's not -- what we have been --

6              THE COURT:  It sounds like Mr. McFarland can

7    produce color copies.

8              MR. McFARLAND:  I will do so.

9              MR. ZELLER:  Okay.  And also basically the summary

10   judgment papers.  I understand that we do not have those

11   papers or at least in their entirety.  I understand that MGA

12   moved for summary judgment in that case.  And the Court

13   granted it.  I believe we have the Court's order, but we

14   don't have a complete set of the summary judgment papers

15   along with legible copies of what the items and everything

16   that really shows what was at issue, what was being sued on

17   and exactly how it was being sued.

18             THE COURT:  They weren't in the court file?

19             MR. ZELLER:  There are some.  We did go through and

20   try and find everything we could out of that court file.

21   There were some complications.  Number one, some things

22   apparently were not available.  The other thing is that --

23   and obviously some things are intangible that you can't get

24   out of the court file.

25             Then on Pacer, the Court is probably aware,

932cb039-3a58-4ea0-8365-2979bc2004dc

Page 5638

1    probably for storage reasons, often the photographs and

2    copies of things are not ideal.  And, in fact, we had a

3    number of illegible -- we had a number of legibility

4    problems.  So that was a large part of our concern.  What we

5    were really looking for in connection with Mr. McFarland.

6                THE COURT:  Very good.  Well, those sound

7    reasonable.  And you can provide them to the extent that you

8    have them.

9                Very good.  And if you'd get those sometime next

10   week in advance of -- sometime next week.  We're going to be

11   dark next week.  I do want to keep Mr. McFarland off the

12   stand, if possible, but basically MGA controls that.

13               All right.  That takes care of that motion.  I'll

14   defer ruling on it in its entirety because I'm not going to

15   quash the subpoena until we finish the day on August 6th and

16   everything is in order.  But that's certainly my intention to

17   do that, assuming everything plays out the way that people

18   are representing.

19               MR. NOLAN:  Your Honor, on that last point, I

20   assume, and I think this is obvious, that if we get through

21   with it on the 5th and there's no issue, then Mr. McFarland

22   would not have to be here on the 6th?

23               THE COURT:  If we get through on the 5th and

24   there's no issue, my intention is to grant the motion to

25   quash, and we'll be done with it.

932cb039-3a58-4ea0-8365-2979bc2004dc

Page 5639

1           MR. ZELLER:  At that point, your Honor, we'd

2    probably just withdraw the motion.  Once everything is

3    satisfied, as I've been saying, we don't -- as long as we get

4    the information in, that's our only agenda.

5           THE COURT:  I'm mindful of that.  I'm going to hold

6    it in abeyance until that's satisfied.  I think that's a

7    reasonable position.  I think that's it.  I'm going to take

8    counsel upstairs and kind of walk through how we're going to

9    do this with the jury tomorrow.  I understand we have quite a

10   toy fair up in the courtroom.

11          MR. RUSSELL:  Mattel filed an ex parte application

12   with you sometime this morning.  I don't know if your Honor's

13   seen it, but to the extent -- most of it has been mooted by

14   today because it seeks to compel Mr. McFarland to testify.

15   It compels Daphne Gronich to appear on a certain date.  But

16   there's one issue that I wanted to raise.  It asks for the

17   Court to conditionally admit some 70 exhibits tomorrow so

18   that they can use them with Mr. Larian.  Is that -- I

19   apologize.

20          MR. ZELLER:  If I may interrupt.  We did file an

21   ex parte, your Honor.  It sought essentially what Mr. Russell

22   is saying.  I think the issues have been at least tentatively

23   resolved.  I don't think there's any reason for the Court to

24   address it at this moment.  I think it sought to make sure

25   that Mr. McFarland was going to appear and also these other

Page 5640

1    two witnesses, Ms. Gronich and Mr. Kamarck.  Because we were

2    having some issues, we are being told they would show up and

3    not, and so we wanted to have a very clear record to make

4    sure that they really were going to appear on the 5th.  If I

5    understand the current representations, they are going to be

6    here.  So the Court need not worry about that or address it.

7              The other component of what we were asking for was

8    the conditional admissibility of really a number of these

9    tangible things which are products, dolls that MGA had

10   accused of infringement in other lawsuits.  And part of the

11   reason had to do with Mr. Larian was our -- he's going to be

12   on the stand tomorrow, and we didn't want to be hamstrung.

13             We wanted to be able to ask him about some of these

14   items.  But because of the fact that those three witnesses

15   were not going to be on the stand tomorrow, we didn't want to

16   have that foreclosed.  My perspective is that where we are

17   right now, given what will happen with Mr. Larian tomorrow,

18   there's probably no need to resolve the conditional

19   admissibility issue right now.

20             MR. PRICE:  What I foresee is that we will use the

21   time that we spoke of with Mr. Larian tomorrow.  When we come

22   back the next week, that then these third party witnesses can

23   take the stand to get in this evidence, knock on wood, and

24   then they will be available for Mr. Larian's resumed

25   examination.

932cb039-3a58-4ea0-8365-2979bc2004dc

Page 5641

1          THE COURT:   Sounds like it makes sense to me.

2          MR. NOLAN:   Your Honor, I'll reaffirm that I

3    believe there's e-mail traffic to this effect that Ms. Aguiar

4    confirmed that both Ms. Gronich and Mr. Kamarck are

5    available, will be here on Tuesday, and maybe we can work

6    something out during the next week that even obviates their

7    need to have to testify.   But we'll work on that during the

8    dark week, your Honor.

9          THE COURT:   Very good.

10          MR. NOLAN:   And that might even help speed things

11   up.   I just don't know.   We'll take a look at that.

12          MR. ZELLER:   So the punch line, your Honor, is I

13   suggest that the Court hold this in abeyance.   If things

14   resolve, we'll withdraw the motion and not trouble the Court

15   with it.

16          THE COURT:   Very well.   I'll meet everybody up in

17   courtroom 4 in about five minutes.

18

19               (Proceedings concluded at 4:50 P.M.)

20

21

22

23

24

25

932cb039-3a58-4ea0-8365-2979bc2004dc

Page 5642

1

2

3

4

5

6

7                         C E R T I F I C A T E

8

9

10          I hereby certify that pursuant to Title 28,

11    Section 753 United States Code, the foregoing is a true and

12    correct transcript of the stenographically reported

13    proceedings in the above matter.

14          Certified on July 24, 2008.

15

16

17                         _____
                           MARK SCHWEITZER, CSR, RPR, CRR
                           Official Court Reporter
18                         License No. 10514

19

20

21

22

23

24

25

932cb039-3a58-4ea0-8365-2979bc2004dc