Page 8042

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

---

HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

---

```
MATTEL, INC.,                  :  PAGES 8042 - 8068
                               :
          PLAINTIFF,           :
                               :
     VS.                       :  NO. ED CV04-09049-SGL
                               :  [CONSOLIDATED WITH
MGA ENTERTAINMENT, INC.,       :  CV04-9059 & CV05-2727]
ET AL.,                        :
                               :
          DEFENDANTS.          :
```

REPORTER'S TRANSCRIPT OF PROCEEDINGS

RIVERSIDE, CALIFORNIA

TUESDAY, AUGUST 19, 2008

MARK SCHWEITZER, CSR, RPR, CRR
OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT
181-H ROYBAL FEDERAL BUILDING
255 EAST TEMPLE STREET
LOS ANGELES, CALIFORNIA 90012
(213) 663-3494

1   Appearances of Counsel:

2

3   On Behalf of Mattel:

4       Quinn, Emmanuel, Urquhart, Oliver & Hedges, LLP
        By John B. Quinn, Esq.
5           B. Dylan Proctor, Esq.
            Michael T. Zeller, Esq.
6           Harry Olivar, Esq.
            John Corey, Esq.
7           Diane Hutnyan, Esq.
            William Price, Esq.
8       855 South Figueroa Street
        10th Floor
9       Los Angeles, CA 90017
        (213) 624-7707

10

11

12  On Behalf of MGA Entertainment:

13      Skadden, Arps, Slate, Meagher & Flom LLP
        By Thomas J. Nolan, Esq.
14          Carl Alan Roth, Esq.
            Jason Russell, Esq.
15          Lauren Aguiar, Esq.
            David Hansen, Esq.
16          Matthew Sloan, Esq.
            Robert Herrington, Esq.
17      300 South Grand Avenue
        Los Angeles, CA 90071-3144
18      (213) 687-5000

19

20

21

22

23

24

25

b0f255b7-a613-4c25-a9ef-22672a0f6587

1                              I N D E X

2

3          MATTER:   FURTHER JURY INSTRUCTION CONFERENCE

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

b0f255b7-a613-4c25-a9ef-22672a0f6587

Page 8045

1          Riverside, California; Tuesday, August 19, 2008

2                              4:35 P.M.

3          THE COURT:  Okay.  Calling Mattel versus MGA.

4     04-9049.  Counsel, please make your appearances.

5          MR. QUINN:  Good afternoon, your Honor.  John

6     Quinn, Mike Zeller, Bill Price for Mattel.

7          THE COURT:  Counsel.

8          MR. NOLAN:  Good afternoon, your Honor.  Tom Nolan,

9     Carl Roth, and Raul Kennedy on behalf of MGA.

10         THE COURT:  Good afternoon, Counsel.  Counsel

11    should have received by now the Court's final version of the

12    jury instructions and the verdict form.  I want to go over

13    those, and if there are any grammatical, typographical, or

14    other type errors that the parties can point out, I would

15    greatly appreciate that.

16         And if there are any objections that have not

17    already been raised and considered, the Court will consider

18    those as well.

19         Otherwise, objections previously made have been

20    considered and are preserved for the record.

21         There's a couple other issues I want to take up

22    with respect to closing arguments.  And before I forget,

23    there was an in camera, in chambers session last week

24    concerning the e-mail that the Court ultimately ruled in

25    favor of MGA and kept sealed and protected by the

1   attorney-client privilege.

2          The contents of that e-mail, however, were placed

3   on the record.  So the Court is going to order that that

4   record remain sealed.  And if it eventually needs to be

5   released for whatever purpose, it will be done so in a

6   redacted version.

7          I'm further going to order counsel who were present

8   for that -- and that, I believe, was Mr. Nolan; Ms. Aguiar,

9   who is not here, and I trust will be relayed the information;

10  Mr. Price; and Mr. Quinn -- are ordered specifically not to

11  disclose the contents of that because that is attorney-client

12  privileged information at this point.

13         The Court did discuss the contents on the record in

14  chambers, to flesh out the argument, but since ultimately it

15  decided to keep that sealed or protected by attorney-client

16  privilege, the Court expressly ordering, particularly in the

17  case of opposing counsel, that they not disclose that to

18  anybody absent further order of the Court.

19         All right.  So I just wanted that cleared up for

20  the record.

21         And then if there's anything else that we need to

22  take up at this point, and finally, of course, I want to make

23  sure that all of the exhibits have been agreed to, or if

24  there's any need to resolve any disputes on that, that we do

25  so.

b0f255b7-a613-4c25-a9ef-22672a0f6587

Page 8047

1        So let's begin with the jury instructions and the

2   verdict form.  Again, I'm looking for typographical or

3   grammatical errors or format errors or any objections which

4   the Court has not previously been presented with.

5        Mattel?

6        MR. ZELLER:  Thank you, your Honor.  This is

7   Instruction No. 18, page 19.

8        The first sentence refers to their respective

9   design centers.  There's no evidence that MGA has a design

10  center.  I think some other verbiage needs to be used there.

11  I mean, we obviously don't necessarily prefer the sentence at

12  all.  But the Court's already heard our pitch on that.  But

13  there's just simply no evidence they have a design center.

14       Obviously, the one that's been discussed is

15  Mattel's.  You know, we could say had those products in their

16  respective facilities or something else, but the word design

17  center is a little bit loaded in this context.

18       THE COURT:  Okay.

19       MR. ZELLER:  Next what we have is Jury Instruction

20  No. 26 on page 27.  And this is line 15.  We think that the

21  words "you find" ought to be struck there.  It suggests to

22  the jury that they will be making some finding along those

23  lines.

24       THE COURT:  I'm sorry.  I must be looking at the

25  wrong page.  Say the page number again?

Page 8048

1          MR. ZELLER:  Yes.  Page 27, line 15.  Form and

2    anatomy that you find --

3          THE COURT:  I've got a problem here.

4          MR. ROTH:  We have the same issue.

5          THE COURT:  Mr. Proctor may have it.

6          MR. ZELLER:  I guess my printout comes out

7    differently than others.  What I have, there's also --

8    Mr. Proctor's handed me a version, this is page 29.

9          THE COURT:  Very well.

10          MR. ZELLER:  I'm on Jury Instruction 26.  This is

11    the one that starts off talking about application of the

12    extrinsic and intrinsic tests.  And it's the one that -- it's

13    the paragraph that begins first, the particularized

14    synergistic compilation and then continues on.

15          The part we're concerned about are those two words,

16    "you find."  And it should just say form and anatomy that

17    expresses a unique style and conveys.  It will suggest to the

18    jury that they are making some determination along those

19    lines as opposed to the Court instructing on it as a matter

20    of law.

21          THE COURT:  All right.  I understand your argument.

22          MR. ZELLER:  Jury Instruction 42.

23          THE COURT:  42.  That's on the Court's page 46.

24          MR. ZELLER:  And it's the very last paragraph.

25          THE COURT:  Jury Instruction No. 42 beginning:

1    "You may make an award of the defendant's profits."

2           Is that the beginning of it?

3           MR. ZELLER:  Yes, it's that one, your Honor.  And

4    it's the very last paragraph of text.

5           THE COURT:  All right.  Beginning however, if the

6    copyrighted portions?

7           MR. ZELLER:  And it seems a little odd because it

8    has two howevers, and I'm not sure however is supposed to be

9    modifying anything.  It may be that however should just

10   simply be struck.

11          And then --

12          THE COURT:  I know the reason why I did that.  And

13   I'm trying to -- defendants are not required to prove the

14   percentage of profits attributable to factors other than

15   infringement so long as it's reasonable and just.  However,

16   the benefit of the doubt goes to Mattel.  And basically a

17   further however, if they are so intermingled, the entire

18   profits are to be given to the plaintiff while at the same

19   time defendants need not demonstrate that the infringing

20   products are completely free of infringing material.

21          That's why I am trying to do this in such a way, is

22   they really are all interconnected.  I see your point.  I'll

23   consider that.  Thank you, Counsel.

24          MR. ZELLER:  And then the only other things we have

25   are really the substantive issues that we've discussed

Page 8050

1   before.  One thing I would ask the Court to consider is the

2   independent creation issue.  We did raise that in our JMOL.

3   And so we would ask the Court to perhaps consider that one

4   last time before the jury is instructed on this issue

5   because, as the Court knows, we think that it's been waived,

6   and we think that the evidence would not really substantiate

7   such a theory.

8              THE COURT:  Thank you, Counsel.

9              MR. NOLAN:  Your Honor, with respect to the two

10  minor points that Mr. Zeller pointed out, we don't have any

11  objection to that.  But the last comment, the use of the two

12  howevers, I think in understanding how the Court structured

13  it, it makes sense.  I don't think it's confusing to the

14  jury.  I think it sets forth the process from which they can

15  analyze the issues.

16             MR. ROTH:  Your Honor, very briefly, and this

17  requires a comparison of three instructions.  They are 37,

18  38, and 40.  I think our page numbers are all off a little

19  bit.  So I just wanted to use those.

20             THE COURT:  Hold on one second.  I'm glad we have

21  the instructions numbered.

22             MR. ROTH:  37, 38, and 40, and I would start with

23  40.

24             THE COURT:  Okay.

25             MR. ROTH:  You'll notice at line 6, it says Mattel

Page 8051

1    must prove the amount of its damages.  Simple straightforward

2    point, period.  However, it goes on to Mattel does have not

3    to prove the exact amount of damages.  That, we suggest, is

4    the appropriate formulation.  If you look at Jury Instruction

5    37 and 38, it has the second sentence, Mattel does not have

6    to prove the exact amount of damages, but it doesn't have the

7    first sentence nor the however.  And we would suggest that

8    the formulation in the instruction 40 is the appropriate

9    formulation given the fundamental burden that lies with

10   Mattel.

11            THE COURT:  Okay.  So which one do you believe is

12   the appropriate one?

13            MR. ROTH:  Jury Instruction 40, which has the --

14   starts with the simple sentence Mattel must prove the amount

15   of its damages, period.  However, comma, and flows into the

16   next sentence.

17            THE COURT:  Right.

18            MR. ROTH:  That formulation should be applied for

19   Jury Instruction No. 37 and 38.

20            THE COURT:  It should be consistent.

21            MR. ROTH:  And I would submit there isn't much

22   doubt here, but the fundamental burden is on Mattel with

23   respect to these damages.

24            THE COURT:  Okay.

25            MR. ROTH:  That's all I have, Counsel.

1            THE COURT:  Okay.

2            MR. NOLAN:  Your Honor, there's one other point

3      that we wanted to raise for you.

4            MR. ROTH:  Your Honor, Instruction 40, page 45, in

5      my version --

6            THE COURT:  One second.  Instruction 40?

7            MR. ROTH:  Yes.

8            THE COURT:  I'm there.

9            MR. ROTH:  Line 17, point 3, reasonable

10     compensation for the time and money spent by Mattel.

11           THE COURT:  Yes.

12           MR. ROTH:  You'll recall that yesterday there was

13     some evidence presented by Mattel as respects that issue.

14     Really, it's just three or four fleeting references to

15     efforts taken to investigate.  We went to Hong Kong.  I

16     talked to this person or that person.  There's no -- there's

17     no way that that evidence could give rise to any number or

18     hours.  There's just no quantification of it at all.  And so

19     we think that there really is no basis for that point in

20     Instruction 40.

21           THE COURT:  Anything further?

22           MR. ROTH:  That's it.

23           THE COURT:  Very well.  Let me hear Mattel's

24     response to that point.  I did see the evidence that was

25     submitted.

Page 8053

1          MR. ZELLER:  I assume that was part of what was

2     discussed yesterday.  Unfortunately, I couldn't make it back

3     from Judge Matz's --

4          THE COURT:  Whether Judge Matz detained you or

5     incarcerated you or something like that?

6          MR. PROCTOR:  The submission would simply be

7     there's enough evidence in the record that the jury could --

8          THE COURT:  How do we value that, though?  I mean,

9     there's evidence that work was done and time was expended,

10    but in terms of sustaining -- how do they come up?  A

11    thousand dollars, $10,000, $30,000?  How could you have a

12    verdict on that be supported?

13         MR. PROCTOR:  I understand the concern.  We did not

14    put in the price of the plane ticket to Hong Kong.  I would

15    submit that the jury could come up with a fair approximation,

16    but we don't have evidence in the record that I'm aware of of

17    the actual amount that it cost.

18         THE COURT:  Very well.  All right.  Anything

19    further on the jury instructions from either side?

20         MR. ZELLER:  No, your Honor.

21         THE COURT:  All right.  Verdict form.

22         Mattel?

23         MR. ZELLER:  I don't think we do have anything on

24    the verdict form at this juncture.

25         THE COURT:  MGA?

1          MR. NOLAN:  Your Honor, we stand on all the

2    previous objections, plus now that we see it stated in more

3    of a general verdict format, we object.  We don't believe

4    that in this type of case, given the amount of intellectual

5    property issues at issue in this case, and the underlying

6    issues with respect to what is substantially similar and

7    sufficiency of the evidence, we don't believe this leads to a

8    general verdict type of format in this case.  And I think

9    we've made that point.  I just want to make absolutely clear

10   today.

11          THE COURT:  It's absolutely clear, Counsel.

12          MR. NOLAN:  The emphasis on absolutely was probably

13   too heavy.  I didn't want to make that --

14          I want to pick up on the last point, continuing to

15   make the objection to further emphasize the difficulty in the

16   general verdict is to harken back to the last comment that we

17   had with respect to the amount of compensation.

18          THE COURT:  It's been stricken, Counsel.

19          MR. NOLAN:  Oh, I didn't know we won that point.

20   Thank you.

21          THE COURT:  Anything further?

22          MR. ZELLER:  Not on the jury instructions or

23   verdict form.  We do have at least one closing issue that I

24   believe is brewing.

25          THE COURT:  Please.

1          MR. ZELLER:  I understand from some discussions

2     today between Skadden and Quinn Emanuel that there may not be

3     agreement on precisely what can be introduced from the

4     Hong Kong pleadings.  My understanding is that MGA's taken

5     the more narrow approach, which is basically if it's a

6     sentence or a paragraph specifically that was discussed by a

7     witness, that's all that comes in.  The Court will recall the

8     way it was left, and I can provide the Court with transcript

9     references, but Court's basic guidance was for the parties to

10    talk and try and come up with a workable stipulation and come

11    up with a solution.

12          The Court will recall that in many instances what

13    was shown was the page of the relevant pleading, particular

14    portions were called out.  Witnesses were asked about it, or

15    the portions of it were read aloud or showed up on the screen

16    as well.

17          THE COURT:  Without going any further, and just

18    I'll make it clear what my intention was, is the portions

19    that were testified to by either side are what comes in.

20    Along with obviously enough indicia to identify the document

21    if there's a caption or a date.  If there's some cover sheet

22    or something like that.  Like we did, for example, with

23    Exhibit 1-A that we've seen so many times, The Wall Street

24    Journal article.  There is The Wall Street Journal.  There's

25    the date.  There's the page number, and then there's those

Page 8056

1   portions that were testified to.

2           So an analogous approach with a piece of

3   litigation, the litigation caption, the cover sheet, the

4   title of the litigation, the parties, the date, and then

5   whatever portions are testified to.

6           MR. ZELLER:  And that was our concern, was that

7   some of this would be so stripped of context that they

8   wouldn't even know what it was.

9           THE COURT:  What I don't want coming in is anything

10  substantive beyond what was testified to.  The particular

11  concern is any legal opinions, legal judgments, or the rest

12  that we're just having enough so the jury knows what they are

13  looking at coupled with any factual averments that were made

14  in the course of the litigation by MGA.

15          MR. ZELLER:  And I assume, number one, there were

16  instances where there were things that -- rather, it was

17  referenced in front of the jury or was shown.  I mean, I know

18  that there were instances at least of that.

19          In addition, part of what we have in this concern

20  is that, you know, the Court is already instructing the jury

21  to disregard anything that's a legal statement from these

22  pleadings.  So I mean obviously, part of that is so that

23  we're not so redacting particular sentences or paragraphs or

24  whatever, that it becomes incomprehensible.  And we're --

25          THE COURT:  I was also concerned that to the extent

1   something slipped in during the trial, I thought it was an

2   appropriate prophylactic.  But yes, there needs to be some --

3   if there's some dispute here that I can quickly resolve, just

4   give me the two different versions, and then using guidelines

5   that I just set forth, that's how I'm going to decide it.  I

6   want enough context there so that people know what they are

7   looking at.  I don't want anything substantive in there that

8   goes beyond factual averments.  And perhaps that guidance

9   doesn't necessarily resolve every instance.

10          MR. ZELLER:  Appreciate that, your Honor.  Thank

11   you.

12          THE COURT:  Okay.

13          MR. NOLAN:  Your Honor, we appreciate that.  And if

14   we can't each an agreement, because I think the Court

15   articulated today consistent with how he did it on August

16   5th, that -- and it's interesting you use The Wall Street

17   Journal article as an example.  The context is Wall Street

18   Journal, the date, and then what the sentence was.  I mean,

19   some of the documents the jury has seen is they are wondering

20   what in the world has been redacted.  But in the Hong Kong

21   pleadings, where I think it's even more dangerous, what we

22   believe is that the context of the name of the pleadings, the

23   name of the case, and the particular passage that was

24   referred to.

25          Where I think the dispute is, and we'll try to work

Page 8058

1    it out tonight, is they want where maybe there's a sentence

2    or two referred to in the paragraph, and that's all that's

3    being testified, they want the entire page in where there's

4    other paragraphs that might contain some of the things that

5    we were so very careful about monitoring.  But with the

6    Court's comments tonight, we'll go back and try to work it

7    out.  And tomorrow we'll be happy to submit it --

8              THE COURT:  Let's not fight over things that are

9    truly harmless.  To the extent that it's meaningless

10   gibberish.

11             MR. NOLAN:  Your Honor, I'm not doing it, but I can

12   assure you that I don't believe it's gibberish.

13             THE COURT:  Fair enough.  Anything else?  Any other

14   concerns about closing that the parties want to raise?

15             MR. NOLAN:  Your Honor, I'm sorry.  I was reminded

16   of one thing.  With respect to the Hong Kong documents, you

17   know, the rules of how we were going to handle these

18   documents, apparently in 1-A, the dispute in 1-A is that one

19   of the exhibits came in, and although it was specifically

20   limited with respect to testimony, the whole document came in

21   in an unredacted format, even though the whole document was

22   not published.  And the rules were further explored later on.

23             So I think that's going to be an issue for us

24   because Mattel has taken the point -- position that the whole

25   document came in.  And we think that it should not have come

Page 8059

1    in in the format the way it was used.  The Court was dealing

2    with the Hong Kong issue, and we are filing briefs on the

3    issue.  And I think the Court will recall that we filed

4    another brief mid-trial on it, and that's where the lines

5    became very, very clear.  And so importing or exporting or

6    importing into this case a document from 1-A that might

7    contain more information than was guided by the Court, once

8    the Court gave us further guidance after we filed the

9    additional 403 motion.

10          And that in particular, and we can submit this to

11   the Court if we can't work this out with Mattel, I think is

12   Exhibit No. 12 that was referenced in the first phase.  And

13   the sentence that I think that they want us to agree to is a

14   sentence that talks about -- says the complaint made by MGA

15   is that the three-dimensional Funky Tweens dolls have

16   infringed the two-dimensional drawings which are artistic

17   works and which copyright subsists.  And that's the exact

18   legal discussion I thought and legal arguments that after we

19   filed, that the Court was guiding us as to how to cut that

20   out.

21          What infringed and what the copyright consists of

22   and subsists of under Hong Kong law is not relevant here, and

23   the Court consistently kept all of those references out.

24          Immediate reference before that does not contain

25   the legal conclusion that's set forth in that sentence.

Page 8060

1          THE COURT:  Mr. Zeller.

2          MR. ZELLER:  This seems to be a very different

3    issue.  I mean, this is a document that is already in

4    evidence, already was published to the jury, already went

5    back with the jury as part of 1-A deliberations.  So, I mean,

6    to alter the document at this point doesn't seem right or

7    fair.  I mean, that's in evidence.

8          Also the Court will recall that even during 1-B,

9    both sides, including -- I think it was specifically

10   Mr. Hansen during his examination -- specifically asked about

11   using the word infringement.  I mean that's just some of what

12   came in.  The Court is giving an instruction on what the

13   Court -- on what the jury can consider and what it can't

14   consider.  It seems like to basically cut out evidence that

15   was already submitted to the jury just seems -- it doesn't

16   seem appropriate.

17         MR. NOLAN:  Your Honor, my last point would be that

18   in 1-A, the issue was a totally different issue and was

19   timing and ownership of the drawings.  The 1-B issues dealing

20   with infringement, copyright issues were reserved for 1-B.

21   That document was --

22         THE COURT:  Well, that's true, Counsel.  But I

23   thought -- I've been operating under the assumption that all

24   the evidence that was admitted in 1-A is automatically

25   admitted in 1-B.

b0f255b7-a613-4c25-a9ef-22672a0f6587

Page 8061

1          MR. NOLAN:  Correct.

2          THE COURT:  Okay.

3          MR. NOLAN:  But I think the potential here, your

4     Honor, now, for legal purposes, now we're going to copyright,

5     is a legal argument contained in a document which was not the

6     focus of that discussion.  In other words, when that exhibit

7     was published, it was not on the basis of the claim of

8     infringement under Hong Kong law.  It had to do with Carter

9     Bryant's --

10          THE COURT:  Well, what I didn't want to get into is

11     the whole differences between Hong Kong law and California

12     law.  The primary difference, as I understand it, is over the

13     extrinsic, intrinsic test.  They drop the extrinsic test.

14          MR. NOLAN:  I understand that.

15          THE COURT:  You're still doing the 2D, 3D

16     comparison.  I understand it's different, but I don't how

17     it's different in terms of escaping the estoppel argument

18     that Mattel is making.  I certainly didn't want to get into

19     this in detail, but I don't -- do you want me to go back and

20     redact a document that has already come in in its entirety?

21          MR. NOLAN:  No.  Well, it's already been redacted

22     for other purposes in the production of the case.

23          THE COURT:  You want a further redaction?

24          MR. NOLAN:  Yes, your Honor.  In light of the

25     Court's additional 403 arguments during the course of 1-B.

Page 8062

1        THE COURT:  I'll think about that.

2        MR. ZELLER:  Let me just make one last point, then,

3   your Honor, on this, which is when it came into evidence, I

4   mean this objection, of course, was not raised.  It was

5   waived.  So there may have been subsequent objections to

6   other documents.  That's fair enough.  The Court's ruled on

7   those.  But MGA did not raise that argument at the time that

8   it came in.  And we, too, were working under the assumption

9   that evidence that was admitted in 1-A, went to the jury, is

10  also evidence in 1-B.  And I don't see any reason here to

11  depart from that rule and understanding.

12        THE COURT:  I'll think about that.

13        Anything else from either side?

14        All right.  Let me raise my concern.  As far as

15  closing arguments are concerned, I'm giving both sides two

16  hours, and I'm allowing you to divide that up whatever way

17  you have.  I've already got my clock here set at 10:00.  When

18  it hits midnight, you're done.  I'll thank you.  You'll sit

19  down, and that will be it.  There's not going to be any grace

20  period.  So let's stick to that two hours.  Divide it up as

21  you see fit.

22        I understand the stakes are very high.  And I

23  understand that everyone has very strong feelings about what

24  should or should not be made.  There's divergent views in

25  terms of what the evidence shows and how the instructions are

b0f255b7-a613-4c25-a9ef-22672a0f6587

Page 8063

1    to be interpreted and the like.  And I'm very concerned about

2    objections during closing arguments.

3            The jury has certainly been instructed several

4    times, will be instructed again tomorrow morning, that it's

5    up to them to determine what the facts are.  The lawyers'

6    characterization of the facts are simply that, the lawyer's

7    characterization of the facts.  I suspect they know you all

8    quite well now and have a good sense of, you know, what the

9    evidence is and whether your characterizations are correct or

10   not.

11           So I'm really reluctant to get into sidebars during

12   closing argument over whether or not one side or the other is

13   properly characterizing the evidence.

14           Now, I don't want that to be an invitation to

15   simply go willy-nilly and characterize the evidence as you

16   see fit.  So I guess I'm just -- I wanted to address all of

17   the counsel who are making the closing arguments tomorrow to

18   exercise the professional judgment that I would expect you

19   will exercise not only in terms of your arguments, but in

20   terms of your objections.

21           You know, the same thing with respect to

22   mischaracterizations or alleged mischaracterizations of the

23   legal standards or whatever.  The jury will be well

24   instructed.  They will have a copy of the instructions.  And

25   to a large extent, the punishment for mischaracterizing

1   either the facts or the law is built in.  The jury will know

2   that you are mischaracterizing the facts or the law.

3          So I'm just concerned about this.  So I really, as

4   I did with the opening statements, whether I'm dealing with

5   the caliber of attorney that I'm dealing with in this trial,

6   I really don't want to have to interrupt either side.  I want

7   Mr. Nolan and Mr. Kennedy to be able to make their closing

8   arguments without interruptions, and I want Mr. Quinn and

9   Mr. Price to be able to make their closing arguments without

10  interruptions, if possible.

11         Now, I'm not saying you can't make objections and

12  I'm not saying that I won't sustain objections.  But let's

13  have some confidence in the jury to follow both the law and

14  understand the evidence as it really is.

15         Are there any questions on that point?

16         MR. QUINN:  No, your Honor.

17         MR. NOLAN:  No, your Honor.

18         THE COURT:  Very well.  Okay.  Well, you did ask me

19  a couple days ago, Mr. Zeller, to look at the JMOL issue on

20  independent creation.  And I have not done that.  I will do

21  that again.  I've considered it in the context of the jury

22  instruction.  I think the safer course to do is to instruct

23  as the Court is instructing, but I will take another look at

24  it.  But at this point I'm not inclined to alter the jury

25  instructions.  I think that the more prudent course is to

Page 8065

1    leave that instruction in.

2          And I'll consider this redaction issue.  We

3    probably should meet tomorrow morning in advance enough just

4    in case there are any outstanding disputes in terms of what

5    evidence is in or out.  I'd like to have that squared away

6    before the closing arguments are made.

7          And then the procedure after closing arguments,

8    same as last time.  I'll expect counsel to be within 10

9    minutes for any notes.  And the jury is going to be

10   deliberating upstairs.  So there's going to be a little bit

11   more effort made bringing them back and forth.

12         I assume courtroom 4 is fully set up with all of

13   the exhibits?

14         MR. NOLAN:  The answer, I believe, is yes.

15         THE COURT:  All right.  Very good.  And so that

16   will be basically the exhibit room.

17         And then we'll make sure that the jury has carts

18   and the ability to bring stuff back and forth if they want to

19   bring something directly into the jury room or what have you.

20         MR. ZELLER:  Just so people know where they are

21   supposed to be, will the Court be addressing questions in

22   this courtroom?

23         THE COURT:  Yes.  I will be in trial.  So they will

24   have to be during breaks in that criminal trial.  But I'll be

25   explaining that to the criminal jury, that there's going to

b0f255b7-a613-4c25-a9ef-22672a0f6587

1    be a need for breaks from time to time.  But all of my stuff

2    is here.  So I'll be dealing with the notes and the verdict

3    in this courtroom.

4              MR. NOLAN:  Your Honor, does the Court anticipate

5    that the jury will be following the same schedule that they

6    followed during 1-A?

7              THE COURT:  I would anticipate that, but I'm going

8    to make it clear to them that it's up to them to come up with

9    their own schedule.

10             MR. NOLAN:  Your Honor, on that point, I just

11   wanted to alert the Court, and I realize that sometimes

12   Mr. Price was here and sometimes Mr. Quinn was here.  On

13   Friday of this week and Monday of next week, I have the

14   distinct privilege of moving my daughter into college.

15   Mr. Kennedy and Ms. Aguiar and Carl Roth will be here.

16   Mr. Larian is aware of that.  I just wanted to let the Court

17   know if I'm gone on Friday or Monday, it's not for

18   disinterest.

19             THE COURT:  Where is your daughter attending?

20             MR. NOLAN:  George Washington University.

21             THE COURT:  A very good school.  That's exciting.

22   So the case will be in very good hands.

23             All right.

24             MR. QUINN:  Your Honor, I'm actually -- if the jury

25   doesn't come back, I have a medical procedure on Friday.  So

Page 8067

1    I won't be here on Friday.

2              THE COURT:  All right.  Well, that would be ironic.

3    That would be ironic.  We'll see what happens.  I suspect

4    that the jury -- Friday is probably a pretty safe day.  I

5    would be surprised if the verdict would come back, but then

6    again, I've been surprised by juries.  So who knows.

7              All right.  Very good.  I will see you at 8:30 then

8    on Thursday morning.  I mean tomorrow morning.  Wednesday

9    morning.  And good luck with your preparation for your

10   closing argument.

11             MR. QUINN:  Thank you, your Honor.

12             MR. NOLAN:  Thank you, your Honor.

13

14             (Proceedings concluded at 5:08 P.M.)

15

16

17

18

19

20

21

22

23

24

25

Page 8068

C E R T I F I C A T E

    I hereby certify that pursuant to Title 28, Section 753 United States Code, the foregoing is a true and correct transcript of the stenographically reported proceedings in the above matter.

    Certified on August 19, 2008.

_____
MARK SCHWEITZER, CSR, RPR, CRR
Official Court Reporter
License No. 10514

b0f255b7-a613-4c25-a9ef-22672a0f6587