# EXHIBIT 1

This exhibit is filed
under seal
pursuant
to
protective order

# EXHIBIT 2

This exhibit is filed
under seal
pursuant
to
protective order

# EXHIBIT 3

This exhibit is filed
under seal
pursuant
to
protective order

# EXHIBIT 4

# This exhibit is filed under seal pursuant to protective order

# EXHIBIT 5

This exhibit is filed
under seal
pursuant
to
protective order

# EXHIBIT 6

This exhibit is filed
under seal
pursuant
to
protective order

# EXHIBIT 7



QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
   John B. Quinn (Bar No. 090378)
   johnquinn@quinnemanuel.com
   Michael T. Zeller (Bar No. 196417)
   (michaelzeller@quinnemanuel.com)
   Jon D. Corey (Bar No. 185066)
   (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | Case No. CV 04-09049 SGL (RNBx) |
| Plaintiff, | |
| vs. | Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727 |
| MATTEL, INC., a Delaware corporation, | Hon. Stephen G. Larson |
| Defendant. | STIPULATION RE: THE DEPOSITION OF RON BRAWER; |
| | [[Proposed] Order filed concurrently herewith] . |
| AND CONSOLIDATED CASES | |
| | **Phase 1:**<br>Discovery Cut-off: January 28, 2008<br>Pre-trial Conference: May 5, 2008<br>Trial Date: May 27, 2008 |

1-26

STIPULATION RE: DEPOSITION OF RON BRAWER

EXHIBIT __7__
PAGE __16__

1    **STIPULATION**

2          WHEREAS, by Order dated January 7, 2008, the Court granted Mattel,

3    Inc.'s Motion for Additional Discovery, including with respect to Ron Brawer; and

4          WHEREAS, Mattel noticed the deposition of Ron Brawer on January

5    10, 2008 for January 24, 2008.

6          NOW, THEREFORE, Mr. Brawer and the parties agree as follows,

7    subject to the Court's approval:

8          1.    Ron Brawer shall appear for deposition on February 5, 2008,

9    beginning at 9:30 a.m. at 40 Front Street, Canary Wharf, London, England.

10   ///

11   ///

12

13   ///

14   ///

15   ///

16

17   ///

18   ///

19   ///

20

21   ///

22   ///

23   ///

24

25   ///

26

27

28

07209/2368554.2

-2-
STIPULATION RE: DEPOSITION OF RON BRAWER

EXHIBIT ___7___
PAGE ___17___

1    2.    A motion to compel pursuant to F.R.C.P. Rule 37(a)(2)(B) or pursuant

2  to F.R.C.P. Rules 30(a)(1) and 45 with respect to Mr. Brawer's deposition will be

3

4  considered timely even if brought after the Phase 1 discovery cut-off date and

5  notwithstanding the Court's Order of January 7, 2008.

6

7              IT IS SO STIPULATED.

8

9  DATED: January ___, 2008          SKADDEN, ARPS, SLATE, MEAGHER &
10                                     FLOM, LLP

11

12                                 By  _Jack DiCanio /tmb_____

13                                     Jack P. DiCanio
                                       Attorneys for Ron Brawer
14

15  DATED: January 24, 2008            QUINN EMANUEL URQUHART OLIVER &
16                                     HEDGES, LLP

17

18                                 By  _Dominic Surprenant_____

19                                     Dominic Surprenant
                                       Attorneys for Mattel, Inc.
20
    DATED: January ___, 2008          SKADDEN, ARPS, SLATE, MEAGHER &
21                                     FLOM, LLP

22

23                                 By  _Thomas Nolan /ls_____

24                                     Thomas Nolan
                                       Attorneys for MGA Entertainment, Inc.,
25                                     MGAE de Mexico, S.R.L. de C.V., MGA
                                       Entertainment (HK) Limited, and Isaac
26                                     Larian

27

28

07209/2368554.2

-3-

EXHIBIT __7__
PAGE __18__

1  DATED: January _5_, 2008          KEKER & VAN NEST, LLP

2

3

4                                    By _Michael Page / als_

5                                       Michael Page

6                                       Attorneys for Carter Bryant

7  DATED: January _28_ 2008          OVERLAND BORENSTEIN SCHEPER &

8                                    KIM LLP

9

10                                   By _Mark E Ou_

11                                      Mark E. Overland

12                                      Attorneys for Carlos Gustavo Machado
                                        Gomez
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07209/2368554.2                              -4-
                                                  STIPULATION RE: DEPOSITION OF RON BRAWER

EXHIBIT __7__
PAGE __19__

1
2
3
4
5
6
7
8
9

10                    UNITED STATES DISTRICT COURT

11                   CENTRAL DISTRICT OF CALIFORNIA

12                          EASTERN DIVISION

| | |
|---|---|
| 13 CARTER BRYANT, an individual, | Case No. CV 04-09049 SGL (RNBx) |
| 14        Plaintiff, | |
| 15    vs. | Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727 |
| 16 MATTEL, INC., a Delaware<br>corporation, | Hon. Stephen G. Larson |
| 17        Defendant. | [PROPOSED] ORDER ON<br>STIPULATION RE: THE<br>DEPOSITION OF RON BRAWER |
| 18 | |
| 19 AND CONSOLIDATED CASES | |
| 20 | |

21
22
23
24
25
26
27
28

07209/2368555.1

[PROPOSED] ORDER RE: DEPOSITION OF RON BRAWER

EXHIBIT __7__

PAGE __20__

1

## [PROPOSED] ORDER

2

3     The parties and Ron Brawer having so stipulated, and finding good

4 cause hereto, IT IS HEREBY ORDERED THAT:

5

6     1.     Ron Brawer shall appear for deposition on February 5, 2008,

7 beginning at 9:30 a.m. at 40 Front Street, Canary Wharf, London, England.

8     2.     A motion to compel pursuant to F.R.C.P. Rule 37(a)(2)(B) or

9 pursuant to F.R.C.P. Rules 30(a)(1) and 45 with respect to Mr. Brawer's deposition

10 will be considered timely even if brought after the Phase 1 discovery cut-off date

11 and notwithstanding the Court's Order of January 7, 2008.

12

13 DATED:_____, 2008     _____

14                                 HON. STEPHEN G. LARSON
                                    UNITED STATES DISTRICT
15                                  COURT JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28

07209/2368555.1

-1-
[PROPOSED] ORDER RE: DEPOSITION OF RON BRAWER

EXHIBIT __7__
PAGE __21__

# EXHIBIT 8

```
 1                    UNITED STATES DISTRICT COURT

 2                   CENTRAL DISTRICT OF CALIFORNIA

 3                         EASTERN DIVISION

 4                            -  -  -

 5         HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

 6                            -  -  -

 7   MATTEL, INC.,                     )
                                       )
 8                     Plaintiff,      )
                                       )
 9            vs.                      )   No. CV 04-09049
                                       )
10   MGA ENTERTAINMENT, INC., ET. Al., )
                                       )
11                     Defendants.     )   MOTIONS
                                       )
12   AND CONSOLIDATED ACTIONS,         )
                                       )
13   _____      )

14

15             REPORTER'S TRANSCRIPT OF PROCEEDINGS

16                    RIVERSIDE, CALIFORNIA

17                    MONDAY, MAY 18, 2009

18                        1:52 P.M.

19

20

21

22

23              THERESA A. LANZA, RPR, CSR
                Federal Official Court Reporter
24                 3470 12th Street, Rm. 134
                 Riverside, California  92501
25                      951-274-0844
                    www.theresalanza.com
```

EXHIBIT 8

PAGE 22

```
1    APPEARANCES:

2
     On behalf of Mattel, Inc.:
3
                           QUINN EMANUEL
4                     By:  JOHN QUINN
                           MICHAEL T. ZELLER
5                          DYLAN PROCTOR
                           SCOTT B. KIDMAN
6                          865 S. FIGUEROA STREET,
                           10th Floor
7                          Los Angeles, California  90017
                           213-624-7707
8
                           KLEE, TUCHIN, BOGDANOFF & STERN LLP
9                     BY:  DAVID M. STERN
                           1999 Avenue of the Stars
10                         Thirty-Ninth Floor
                           Los Angeles, CA  90067
11                         310-407-4025

12

13   On Behalf of MGA Entertainment/Isaac Larian:

14                         SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
                      BY:  THOMAS J. NOLAN
15                         JASON RUSSELL
                           CARL ROTH
16                         300 South Grand Avenue
                           Los Angeles, California  90071-3144
17                         213-687-5000

18                         GLASER, WEIL, FINK, JACOBS
                           HOWARD & SHAPIRO, LLP
19                    BY:  PATRICIA GLASER
                      BY:  JOEL N. KLEVENS
20                         10250 Constellation Blvd.
                           Los Angeles, CA  90067
21                         310-553-3000

22                         MITCHELL SILBERBERG & KNUPP LLP
                      BY:  RUSSELL J. FRACKMAN
23                         11377 West Olympic Blvd.
                           Los Angeles, CA  90064-1683
24                         310-312-2000

25   /  /  /
     /  /  /
```

Monday, May 18, 2009                          Mattel vs. MGA, et. Al.

EXHIBIT __8__

PAGE __23__

```
 1   APPEARANCES (cont'd):

 2
     On Behalf of MGA Entertainment/Isaac Larian:
 3
                         PACHULSKI STANG ZIEHL & JONES
 4                       BY:   JAMES I. STANG
                         BY:   RICHARD PACHULSKI
 5                       10100 Santa Monica Blvd.,
                         11th Floor
 6                       Los Angeles, CA  90067-4100
                         310-277-6910
 7

 8   On Behalf of Isaac Larian:

 9                       JEFFER MANGELS BUTLER & MARMARO LLP
                         BY:   JOSEPH A. EISENBERG
10                       1900 Avenue of the Stars
                         7th Floor
11                       Los Angeles, CA  90067-4308
                         310-203-8080
12

13   On Behalf of Defendants Omni 808:

14                       BINGHAM McCUTCHEN LLP
                         BY:   TODD E. GORDINIER
15                       BY:   PETER N. VILLAR
                         600 Anton Boulevard,
16                       18th Floor
                         Costa Mesa, CA  92626-1924
17                       714-830-0622

18
     On Behalf of Crum & Forster:
19
                         MUSICK, PEELER & GARRETT LLP
20                       BY:   JENNIFER M. KOKES
                         One Wilshire Boulevard
21                       Los Angeles, CA  90017
                         213-629-7618
22

23   ALSO PRESENT:       Patrick A. Fraioli, Jr.,
                         Ambassador Pierre Prosper
24                       Robert O'Bryan
                         Michael J. Bidart
25
```

Monday, May 18, 2009                    Mattel vs. MGA, et. Al.

EXHIBIT _8_

PAGE _24_

1                          I N D E X

2                                              <u>PAGE</u>

3    MOTIONS.....................................       5

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Monday, May 18, 2009                 Mattel vs. MGA, et. Al.

EXHIBIT ___8___
PAGE ___25___

| | |
|---|---|
| 1 | the cases we cited, the <u>Dubai Islamic Bank</u> case, where the |
| 2 | employees there, like the employees here, were accused of being |
| 3 | part of the misconduct that was at issue in the lawsuit. And |
| 4 | they were demoted. They continued to be employed, and their |
| 5 | interests were found to still be aligned with the corporation. |
| 6 | **THE COURT:** But what's not clear to the Court, |
| 7 | though, is exactly what role they play at present. |
| 8 | **MR. KIDMAN:** Well, I think what the record shows is, |
| 9 | Mr. Vargas is still responsible for sales and Ms. Trueba is |
| 10 | still responsible for marketing and public relations. But |
| 11 | there's been no evidence that their positions have changed, |
| 12 | other than characterizations of these people as being mid-level |
| 13 | employees by mere virtue of the fact that they happen to report |
| 14 | to somebody else. As we submit, that's true of everyone but |
| 15 | the CEO. |
| 16 | On the alignment of interests issue, Mr. Klevens |
| 17 | referred to the fact that these individuals are represented by |
| 18 | separate counsel in Mexico. We've been attempting to get -- |
| 19 | and I believe there's court orders requiring them to produce |
| 20 | information as to who's paying those legal fees. That |
| 21 | information hasn't been produced, despite court orders. |
| 22 | We think we know what the information will show. But |
| 23 | the point being, they have not been deposed. They have not |
| 24 | asserted the Fifth Amendment. Speculation about what they |
| 25 | might do in the future, whether MGA may toss these people aside |

02:09

02:09

02:10

02:10

02:10

Monday, May 18, 2009  EXHIBIT __8__          Mattel vs. MGA, et. Al.

PAGE __26__

1    in the future and distance themselves, whether the witnesses

2    may choose to distance themselves, is not relevant for the

3    purposes of the inquiry today:  Are their interests aligned?

4    Their continued employment is sufficient on that point.

5              As I've mentioned, the law is clear that the                02:11

6    burden -- and Mr. Klevens talked about burden -- the burden is

7    a modest one for purposes of getting the deposition, which is a

8    different issue than under Rule 32, whether that testimony will

9    ultimately bind.

10             **THE COURT:**  I understand.                               02:11

11             Very well.  Thank you, Counsel.

12             The Court next wants to take up the motion -- again,

13   this is Mattel's motion -- for leave to file a third amended

14   answer and counterclaim.

15             I'm going to start with the defense on this.                02:11

16             The Court is tentatively of the mind, based on the

17   papers, that leave should be freely given in this case for the

18   amendment.  The Court, probably on its own oversight, although

19   nobody else raised it at the time of the scheduling conference

20   on this phase of the litigation, did not set a cutoff for          02:11

21   amending or adding parties.  We probably should have set a

22   cutoff, but looking back at the scheduling conference order, we

23   didn't.  So it would seem that the Rule 15 standard applies.

24             The defense does a very good job of explaining how

25   unquestionably the addition of the claims, the parties, and       02:12



Monday, May 18, 2009                              Mattel vs. MGA, et. Al.

EXHIBIT _8_
PAGE _27_

```
 1   then, arguably, the necessary parties that would have to flow
 2   from that would exceedingly complicate an already exceedingly
 3   complicated case.
 4            I don't know if that's really relevant to the issue
 5   of whether or not amendments should be afforded.  It's a         02:12
 6   complicated case to begin with.  It will be more complicated.
 7   As much as I might like there to be, there's not a cutoff in
 8   terms of complication, where I could just say, 'This is too
 9   much; we're stopping here.'
10            So that's kind of where I am right now, Ms. Glaser.      02:12
11            I'm going to give you the first opportunity to
12   respond, given my tentative thoughts.
13            MS. GLASER:  Your Honor -- and I don't want to be
14   glib, because obviously, these are serious allegations being
15   made, which we believe 95 percent of them have no basis in fact  02:13
16   or law.
17            But, Your Honor, under your theory, if Mr. Larian
18   runs a stop sign out here in front of the courthouse tomorrow,
19   can we amend the complaint and include that as well, simply
20   because we have a Rule 15 and that rules -- the Court wishes      02:13
21   to --
22            THE COURT:  Well, no.  The Court doesn't have
23   jurisdiction over a stop sign out in front of the courthouse.
24            MS. GLASER:  My point is this -- and, again, let's
25   start with the RICO -- the predicate acts.                       02:13
```

Monday, May 18, 2009                    Mattel vs. MGA, et. Al.

EXHIBIT __8__

PAGE __28__

1           **THE COURT:**  The Court does have jurisdiction over

2  RICO.

3           **MS. GLASER:**  Thank you, Your Honor.

4           Under the rubric of a fraudulent conveyance, we have

5  a whole new theory, a whole new theory.  There is no legitimate      02:13

6  reason to add these claims to the lawsuit.  This is a separate

7  and distinct counterclaim, with 17 new individuals.  And to

8  blindly come in and tell Your Honor, in a reply brief, 'not to

9  worry, it's all alter ego anyway, so what's the problem,' is

10 offensive to everybody in this courtroom.  That is not the          02:14

11 appropriate standard.  And that is not the law.  And it's

12 certainly not the truth.

13          Again, each one of these people are entities; they

14 have to be served.  A number of them, presumably -- I don't

15 know that for a fact -- are going to object to jurisdiction.        02:14

16 There are alter-ego issues, by Mattel's own description.  At

17 least ten different entities are going to have to be litigated.

18 The 2008 financial transactions have no relationship whatsoever

19 to Mattel's other claims of predicate acts and RICO, et cetera.

20 There are no damages yet.  There is a contingent final              02:15

21 judgment, and there's an appeal.

22          It is no surprise to Your Honor that MGA doesn't

23 agree with the verdict, and we'll be appealing.

24          **THE COURT:**  I understand.

25          **MS. GLASER:**  That's contingent.                       02:15

Monday, May 18, 2009          Mattel vs. MGA, et. Al.

EXHIBIT _8_

PAGE _29_

1          **MS. GLASER:**  And we haven't had the benefit of that.

2     I think if we're paying -- at least temporarily, we at least

3     ought to see --

4          **THE COURT:**  Part of what will occur at this point is

5     a complete accounting of all money spent during the 20-day     05:05

6     temporary receivership.  You will be receiving that shortly

7     from Mr. Fraioli, which will account for all of the money

8     spent.  And on a going-forward basis, the Court will specify

9     how future payments are to be made.

10         And as I indicated before, at the end of the day,          05:05

11    everyone will have the opportunity to revisit the issue of cost

12    sharing.

13         **MS. GLASER:**  Thank you very much.

14         **THE COURT:**  Is there anything further?

15         **MR. QUINN:**  No, Your Honor.                            05:06

16         **THE COURT:**  Have a good evening.

17         (Court is adjourned.)

18                         CERTIFICATE

19

20    I hereby certify that pursuant to section 753, title 28, United
      States Code, the foregoing is a true and correct transcript of
21    the stenographically recorded proceedings held in the above-
      entitled matter and that the transcript page format is in
22    conformance with the regulations of the Judicial Conference of
      the United States.

23

24    _____          _____
      THERESA A. LANZA, CSR, RPR                    Date
25    Federal Official Court Reporter


Monday, May 18, 2009                    Mattel vs. MGA, et. Al.

EXHIBIT __8__

PAGE __30__

# EXHIBIT 9

This exhibit is filed
under seal
pursuant
to
protective order

# EXHIBIT 10

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES -- GENERAL

Case No. CV 04-09049 SGL(RNBx)                              Date: July 9, 2009
Title:     MATTEL, INC. V. MGA ENTERTAINMENT, INC., et al.
==================================================================
PRESENT:   HONORABLE STEPHEN G. LARSON, U.S. DISTRICT JUDGE

          Cindy Sasse                          None Present
          Courtroom Deputy                     Court Reporter

ATTORNEYS PRESENT FOR                ATTORNEYS PRESENT FOR
PLAINTIFFS:                          DEFENDANTS:

None Present                         None Present

PROCEEDINGS:   ORDER GRANTING EX PARTE APPLICATION RE TEMPORARY
               RECEIVERSHIP (DOCKET #5728)

               ORDER GRANTING EX PARTE APPLICATION RE COST
               SHIFTING (DOCKET #5865)

               ORDER GRANTING IN PART EX PARTE APPLICATION FOR
               RELEASE OF JUROR TRANSCRIPTS (DOCKET #5805)

               ORDER GRANTING IN PART MATTEL'S MOTION RE
               DISCOVERY MASTER ORDER NO 27 AND REMANDING
               DISCOVERY MASTER ORDER NO. 27 FOR
               RECONSIDERATION BY THE DISCOVERY MASTER IN LIGHT
               OF THE FILING OF THE TAAC (DOCKET #5561)

               ORDER DENYING MOTION TO STRIKE THE FORENSIC
               AUDITOR'S REPORTS (DOCKET #5705)

MINUTES FORM 90                                Initials of Deputy Clerk __cls_____
CIVIL -- GEN                      1

EXHIBIT _10_
PAGE _66_

## I. ORDER GRANTING EX PARTE APPLICATION
## RE TEMPORARY RECEIVERSHIP (DOCKET #5728)

Because the only opposition to the Ex Parte Application regarding the winding up of the Temporary Receivership involves the issue of cost-shifting, which is addressed separately, below, the Court **GRANTS** the Ex Parte Application. A separate order addressing this Ex Parte Application has been concurrently filed.

## II. ORDER GRANTING EX PARTE APPLICATION RE
## COST SHIFTING (DOCKET #5865)

The MGA parties' opposition to the Temporary Receiver's Ex Parte Application argued that the costs of the Temporary Receivership should be shifted to Mattel (as the party who sought appointment of a Temporary Receiver). However, the Court has previously ruled that, at some yet-to-be defined date in the future, the Court will consider whether to shift the costs of both the Temporary Receivership and the Forensic Audit. Therefore, Mattel filed an Ex Parte Application seeking either to be relieved of the responsibility to respond to the MGA parties' argument or, alternatively, for an order setting a briefing schedule on the issue. It is not the intention of the Court to address the cost-shifting issue at this time; rather, as the Court has stated previously on the record, that issue is more efficiently resolved at a later date, most likely a date after completion of Phase 2 of the trial. Accordingly, the Court **GRANTS** Mattel's Ex Parte Application re Cost Shifting. Mattel is relieved of any duty to respond to MGA's argument regarding the appropriate allocation of costs arising from the Temporary Receiver that is set forth in the MGA parties's June 26, 2009 Opposition to the Temporary Receiver's Ex Parte Application.

## III. ORDER GRANTING IN PART EX PARTE APPLICATION FOR
## RELEASE OF JUROR TRANSCRIPTS (DOCKET #5805)

The Court has received and reviewed the MGA Parties' Ex Parte Application For Partial Release of *In Camera* Juror Interview Transcripts, as well as the Opposition, the Reply, and the accompanying exhibits. The Court **GRANTS IN PART** the Ex Parte Application. Although the Court declines to award the relief sought, the Court will take steps to ensure that the transcript of the juror interviews are provided to the Ninth Circuit for its consideration of the appeal filed by the MGA parties.

The relevant *in camera* juror interviews were conducted on July 25, 2008; the findings made by the Court on the basis of those interviews are set forth in detail in the Court's Order Denying Motion for Mistrial, dated August 8, 2008. Counsel for the parties agreed that the juror interviews, which were conducted mid-trial, should be conducted *in camera*, and the MGA parties did not request that the Court grant them access to the transcripts to prepare their Motion for Mistrial. The Court indicated on the

MINUTES FORM 90
CIVIL -- GEN

2

Initials of Deputy Clerk __cls_____

EXHIBIT __10__
PAGE __67__

record around the time of the filing of the Motion for Mistrial that it was not the Court's intent to grant the parties access to the transcripts.

After the conclusion of the trial, the MGA parties did not at any time request this Court grant access to the transcripts. To the contrary, some ten months passed between the date of the Order Denying Motion for Mistrial and the MGA parties' first post-trial request for access to those transcripts. That request was made to the Ninth Circuit, not this Court, on June 10, 2009. When the Ninth Circuit denied the request in favor of the MGA's presentation of the issue to this Court in the first instance, the MGA parties thereafter filed the present Ex Parte Application in a expeditious manner.

Ostensibly, as set forth in both the Motion filed before the Ninth Circuit and the Ex Parte Application before this Court, the reason the MGA parties seek access to those transcripts is so that they may use them to challenge the Court's Order Denying Motion for Mistrial. Although the MGA parties filed its Notice of Appeal on May 4, 2009, and although that Notice clearly indicated that the Order Denying Motion for Mistrial would be implicated in the appeal, the MGA parties failed to file its Motion seeking release of the transcripts until June 10, 2009. The MGA parties' failure to seek this relief until a month after they filed their Notice of Appeal and a month before their opening brief was due, and their decision to present the issue of release of the transcripts to the appellate court (rather than this Court) in the first instance, created the very urgency that cause them to seek ex parte relief from this Court. As such, the Court declines to grant the relief sought.

Nevertheless, in the interest of due process and in order to facilitate the full consideration of the issue by the Ninth Circuit, the Court will take steps to ensure that the transcripts of the *in camera* interviews are provided to the Ninth Circuit for *in camera* filing.

## IV. ORDER GRANTING IN PART MATTEL'S MOTION RE DISCOVERY MASTER ORDER NO 27 AND REMANDING DISCOVERY MASTER ORDER NO. 27 FOR RECONSIDERATION BY THE DISCOVERY MASTER IN LIGHT OF THE FILING OF THE TAAC (DOCKET #5561)

In the challenged portion of Discovery Master Order No. 27 ("DM Order No. 27"), the Discovery Master denied Mattel's Motion to Compel discovery sought by service of a subpoena on non-party Bingham McCutchen LLP ("Bingham"), a law firm that represents Intervenor Omni 808, as well as a number of non-party entities that are familiar to those involved in this litigation: OmniNet Capital, LLC ("OmniNet"), Vision Capital, LLC ("Vision"), IGWT Group, LLC ("IGWT"), and IGWT 826 Investments, LLC ("IGWT 826"). Broadly categorized, the subpoena sought production of (1) fee agreements relating to Vision and Omni 808; (2) documents regarding the formation, control, and financing of Omni 808, Vision, and Lexington Financial Limited

MINUTES FORM 90
CIVIL -- GEN

3

Initials of Deputy Clerk __cls_____

EXHIBIT __10__
PAGE __68__

("Lexington"); (3) documents identifying stakeholders and officers of Omni 808, Vision, and Lexington; (4) all contracts relating to Omni 808, Vision Capital, and Lexington; (5) all communications relating to Omni 808, Vision Capital, and Lexington, excluding attorney-client privileged documents; and (6) Bingham's representation of MGAE and certain named individuals who have some connection with MGAE, including a number of Mr. Larian's family members.

The Discovery Master correctly recognized the essential legal standard in assessing whether a subpoena may be enforced. The information must satisfy the discovery relevance standard, i.e., it must be "'reasonably calculated to lead to the discovery of admissible evidence.'" DM Order No. 27 at 19 (quoting Fed. R. Civ. P. 26(b)(1)). The decision of whether to enforce a subpoena ultimately implicates a balancing test that pits relevance of the materials sought and need to the requesting party against hardship to the party resisting the subpoena. DM Order No. 27 at 20. Non-parties are generally required to bear lesser burdens than parties in responding to subpoenas. Exxon Shipping Co. v. United States Dept. of Interior, 34 F.3d 774, 779 (9th Cir. 1994) ("The Federal Rules also afford nonparties special protection against the time and expense of complying with subpoenas.").

However, the Discovery Master overstated the burden of proof allocated to Mattel, as the party seeking discovery. See DM Order No. 27 at 20 ("As the party moving to compel compliance with the subpoena, Mattel bears the initial burden of establishing that the information sought is relevant and necessary to the claims or defenses at issue.") This standard is both overstated and incomplete. It is overstated in that Mattel need not show that the evidence sought is "necessary to the claims or defenses." Although Mattel indeed bears the burden of establishing relevancy, that showing is not one of "necessity." Rather, Mattel must bear the burden of establishing the discovery relevancy standard -- that the materials sought are "reasonably calculated to lead to the discovery of admissible evidence" -- is met. It need not establish that the materials sought are "necessary" to its case.

This point leads to the manner in which the stated burden is incomplete. As clearly articulated by cases cited by Bingham, although Mattel bears an initial burden of establishing relevancy, the party resisting discovery thereafter has the burden of establishing that discovery should be denied. See Bryant v. Ochoa, 2009 WL 1390794 at *1 (S.D. Cal. 2009) ("The party seeking to compel discovery has the burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)(1). . . . Thereafter, the party opposing discovery has the burden of showing that the discovery should be prohibited, and the burden of clarifying, explaining or supporting its objections."); DIRECTV, Inc. v. Trone, 209 F.R.D. 455, 458 (C.D. Cal. 2002) (same); see also Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir. 1975) (reversing the district court's issuance of a protective order based on a failure of the party resisting discovery to meet its burden by asserting that the defendant's deposition would merely yield cumulative evidence).

MINUTES FORM 90
CIVIL -- GEN

4

Initials of Deputy Clerk __cls_____

EXHIBIT __10__
PAGE __69__

The effect of this subtle variation on the burden of proof from that stated by the Discovery Master is magnified by the recent filing of the TAAC, which significantly heightens the relevancy of the issue of how the MGA parties and the parties represented by Bingham may be related, the formation of certain of those entities, and other issues implicated by Mattel's requests. Because the question of relevance is featured so prominently in the quintessential balancing test to which the present discovery motion was subjected, the filing of the TAAC dramatically altered the calculus that underlies the conclusions reached in DM No. 27.

For reasons related to judicial economy and preservation of scarce judicial resources (which this case has stretched to the outer limits), the Court defers decision, in light of the changed calculus that has occurred as the result of the filing of the TAAC, of the issues presented in the challenged portions of DM No. 27 to the Discovery Master. For that reason, the Court **REMANDS** the challenged portions of DM No. 27 to the Discovery Master for his reconsideration and re-balancing in light of the recently filed TAAC. The Discovery Master may, in his discretion, set the matter for further briefing and/or hearing, he may take the matter under submission based on the existing record, or he may take other action as he deems appropriate to resolve the present issues.

Notwithstanding the remand of DM Order No. 27, one issue raised by Mattel requires further consideration by the Court. At page 25 of DM Order No. 27, the Discovery Master appears to impose a blanket prohibition on discovery of materials that are in the possession of a subpoena recipient, but that are related to a non-party over whom the Court has not been shown to have jurisdiction. The Discovery Master cites no legal authority for such a blanket prohibition, and the Court, in its own research, has found none. Such a blanket prohibition precludes the application of the balancing test that applies almost universally to discovery motions; accordingly, and because this blanket prohibition is unprecedented, the Court finds that it is contrary to law. As to this narrow issue, the Court **GRANTS** Mattel's Motion. The issue of discovery of materials relating to Lexington is **REMANDED** to the Discovery Master for reconsideration in light of this ruling and in light of the filing of the TAAC.

## V. ORDER DENYING MOTION TO STRIKE
## THE FORENSIC AUDITOR'S REPORTS (DOCKET #5705)

In an unsealed filing that has since been ordered sealed by the Court, counsel for Omni 808 Investors, LLC ("Omni 808"), Todd E. Gordinier, made unwarranted, unsubstantiated personal attacks against the Court-Appointed Forensic Auditor, Ronald L. Durkin. Mr. Gordinier's selective public disclosure of portions of the Forensic Auditor's Summary Report, coupled with the maintenance of the Summary Report, as well as the later-filed Responsive Report and Final Report, under seal in their entirety, has led to an unbalanced public presentation of the issues discussed therein. In an

Initials of Deputy Clerk __cls_____

EXHIBIT __10__
PAGE __70__

attempt to cure this deficiency, the Court has considered the possibility that it should simply unseal the relevant Reports and allow those Reports to speak for themselves.

Because the MGA entities were the primary subject of the Forensic Audit, the MGA parties have, quite understandably, objected to the proposed unsealing. Mattel, for its part, advocates quite emphatically, and not unreasonably, that the Reports should be unsealed in light of the selective disclosure. See Tr. at 31-32 ("It's the underlying analysis that refutes the selective disclosures that MGA and Omni made in a public forum to smear . . . both Mr. Durkin and Mattel.") At the other end of the spectrum, Omni 808 has moved to strike the Reports in their entirety.

In the end, although the Court does not order the unsealing of the Reports, it **DENIES** the Motion to Strike. The Court ordered the Forensic Audit to evaluate whether a receiver should be appointed; as the record bears witness, the Court eventually rejected the suggestion that it should appoint a permanent receiver, and the Court has instead appointed an MGA Monitor with more limited powers than a receiver. Nevertheless, the fact that the Reports were intended to serve a very limited purpose does not mean that there is no possibility that the Forensic Auditor's Reports will not serve any purpose henceforth.

As it currently stands, the Court **ORDERS** that no party shall cite to or rely upon the Reports for any purpose absent further Order of this Court.[1] However, the documents attached to the Reports, to the extent they are otherwise discoverable, are not insulated from discovery on the basis that they have been made part of the Reports. Conversely, documents, such as charts and interview notes, that were prepared by the Forensic Auditor are the property of the Court and are not subject to discovery or use in this or any other litigation by any party or non-party.[2]

Had it been counsel for the MGA parties who mounted the unwarranted, unsubstantiated, and public personal attacks on Mr. Durkin, the Court would find, notwithstanding the sensitive information contained therein, the unsealing of the Reports was an appropriate remedy for the selective disclosure.[3] However, here, it is

---

[1] This Order does not supersede the Court's Order permitting the Forensic Auditor to share information with the Court-Appointed Monitor.

[2] Toward that end, the Court **CLARIFIES** to the parties that the work papers, drafts, notes, detailed time records, and any other materials prepared by or at the direction of the Forensic Auditor are the property of the Court. The Court **ORDERS** the Forensic Auditor, as the custodian of those records on behalf of the Court, to retain those materials, whether maintained in electronic, hard copy, or any other medium, until further order of the Court.

[3] As it stands, counsel for MGAE, James I. Stang, wisely sought, and was granted, leave to file his more restrained, but just as unwarranted and unsubstantiated, personal attacks on Mr. Durkin under seal. See MGA Entertainment, Inc.'s Response to Final In Camera Report of Forensic Auditor Ronald L.

EXHIBIT __10__
PAGE __71__

counsel for Omni 808 who made those attacks public, and although Mattel maintains that both the MGA parties and Omni 808 are jointly responsible for the selective disclosure, see July 6, 2009, Tr. at 33, whether, or to what extent, the MGA parties act or have acted in concert is an issue to be decided in Phase 2 of this action.

Nevertheless, Mr. Gordinier's attack on Mr. Durkin cannot pass without comment by the Court. The Court's comments are directed toward Mr. Gordinier personally, which is not the Court's usual practice. Although the irony of this form of address is not lost on the Court (given the subject of this Order), it is appropriate. Mr. Gordinier signed all three filings in which the personal attacks appear, and continues to stand behind those filings. Moreover, Mr. Gordinier expressly and unabashedly claimed personal responsibility for the brief that was not filed under seal, by both stating that he gave it a lot of thought before filing it and by implicitly acknowledging that although he considered filing his brief under seal, he ultimately rejected that course of action. See May 18, 2009 Tr. at 46-47 ("My brief speaks for itself. We have nothing to hide. . . . I didn't feel it appropriate, necessary, or desirable to file my brief under seal. And I don't have a problem with the Court or anybody reading what I have to say, because I gave it a lot of thought, and I gave it at lot of consideration.").

At the July 6, 2009, hearing, the Court outlined its concerns that while the attacks on Mr. Durkin were public, the Reports are not, and that "it doesn't seem fair" to the Court to allow those allegations to stand alone without a chance to respond to them. July 6, 2009, Tr. at 25-26. In response, Mr. Gordinier contended that his comments "respond[ed] to the report," and that "[w]hat we said was that there were problems with that report." July 6, 2009, Tr. at 28. This statement is an implicit denial that any personal attacks were made; however, as set forth in great detail below, the record belies Mr. Gordinier's *post hoc* protestations.

Lest Mr. Gordinier's statement reflecting his implicit denial that he engaged in personal attacks be perceived as one being made at oral argument without ample time to reflect upon its significance, the statement is also made by Mr. Gordinier in Omni 808's Reply Memorandum, a document upon which he had ample time to reflect: "Each and all of the references in Omni's Statement of Position refer to the contents of Mr. Durkin's Reports and the shortcomings contained therein and omitted therefrom, not to his person." Id. at 2 n.1. To be sure, the criticisms leveled at Mr. Durkin are framed in

Durkin (docket #5918) at 4 (accusing Mr. Durkin of "making McCarthy-like statements of non-existent buybacks and unsupported insinuations of conflicts of interest"); id. at 9 (suggesting that Mr. Durkin's formulation of certain search terms relating to criminal acts in Farsi without a concurrent formulation of those terms in English demonstrated a "predisposition that Persian members of MGA's management and staff (and only the Persian members) might be engaged in illegal conduct"). Mr. Stang's attacks pale in comparison to those advanced by Mr. Gordinier, and they were filed under seal. Thus, although the Court's analysis and conclusions regarding the Forensic Auditor's Reports applies with equal force to Mr. Stang's statements, his are not the focus of the Court's attention at this time.

Initials of Deputy Clerk __cls_____

EXHIBIT __10__
PAGE __72__

terms of his Reports. Still other criticisms are, as counsel maintains, addressed to the
Reports themselves; those must be analyzed based on their substance. However, as
aptly demonstrated by the cited and quoted portions of Mr. Gordinier's filings that
appear below, his criticisms do not, by any measure, confine themselves to those
Reports, and instead reach out in a highly personal manner to attack the author, his
professionalism, his competence, his objectivity, and his integrity.[4]

Indeed, in a display the likes of which have not been previously witnessed by this
Court, Mr. Gordinier strayed far afield of legitimate criticism of the discussions,
analyses, and conclusions reached in the Summary Report and the Reports that
followed. To be sure, there are instances in which Mr. Gordinier addressed the
message found in those Reports; just as surely, however, as detailed below, Mr.
Gordinier attacked the messenger. Specifically, the papers filed by Mr. Gordinier on
behalf of Omni 808 call into question Mr. Durkin's professionalism and competence, as
well as his objectivity and integrity. Moreover, and alarmingly, they falsely accuse Mr.
Durkin of being influenced by an ethnocentric bias against Mr. Larian and Mr. Kadisha.
Such attacks, aimed at Mr. Durkin personally rather than the discussion, analyses, and
conclusions set forth in his Reports, appear throughout Omni 808's papers. See Omni
808 Investors, LLC's Statement of Position re Order to Show Cause re Appointment of a
Permanent Receiver (docket #5446) ("SOP"), filed May 14, 2009, at 11 (referring to Mr.
Durkin's "irresponsible" analysis); id. (noting that Mr. Durkin is "far too experienced" to
believe that he "produced . . . a balanced presentation"); id. (stating that "Mr. Durkin's
report is a polemic" and "a piece of advocacy"); id. at 12 n.9 (calling into question Mr.
Durkin's "objectivity" based on the fact that the Court ordered Mr. Durkin's fees be paid
(at least in the first instance) by Mattel); id. (suggesting that Mr. Durkin's ex parte
communications with Mattel were improper); id. at 13 n.10 (characterizing Mr. Durkin's
quotation of Mr. Larian's and Mr. Kadisha's account of how the two men were
acquainted, from "the Persian community," as "at best, unprofessional" and, "at worst,

---

[4] Adding still further to the mounting irony, in the same footnote that Mr. Gordinier disclaims
engaging in improper personal attacks, he falsely accuses counsel for Mattel of advancing their own
improper ad hominen attacks against Neil Kadisha, who has been referred to as a "common thief" in
certain unspecified Mattel filings. Mr. Kadisha is the Managing Partner of a diversified investment firm,
Omninet Capital, LLC, and an investor in Omni 808. To call someone a "common thief" is, undoubtably, by
any measure, a highly personal attack, therefore an attack addressed "to the man," or ad hominen.
However, in the same manner Mr. Gordinier accuses Mr. Durkin of failing to provide appropriate context to
the Court in his Reports, Mr. Gordinier himself fails to acknowledge that counsel for Mattel's use of the
term "common thief" in connection with Mr. Kadisha merely quotes Los Angeles County Superior Court
Judge Henry W. Shatford's conclusion regarding Mr. Kadisha, as set forth in his 191-page Statement of
Decision, dated October 24, 2006, which was issued after a 200-day trial, which is currently pending
appeal, and which conferred upon Mr. Kadisha the oft-repeated moniker of "common thief," as well as
"embezzler," and "perjurer." See Uzyel v. Kadisha, Cal. App. Nos. B196045, B203804, B198007,
B199850, B201425, 2009 WL 646096 (Mar. 4, 2009) (appellate brief). As always, context is key. The use
by counsel for Mattel of another court's findings and conclusions to advance an argument is not
inappropriate. Those findings and conclusions may, or may not, be relevant to matters presented to the
Court. Used in this manner, although undoubtably addressed "to the man" (and his credibility), it is not an
improper ad hominen attack.

8                      Initials of Deputy Clerk __cls_____

EXHIBIT __10__
PAGE __73__

evidence of improper cultural bias"); id. (in the same footnote, referring to the same quotation, stating that "[t]he tone [of the report] itself is compelling proof that Mr. Durkin had no intention of providing an 'objective' report to the Court."); id. at 23 (referring to the Summary Report as "Mr. Durkin's ill-concealed advocacy piece"); id. (noting that advocacy, rather than objectivity, "is certainly the posture [Mr. Durkin] is most comfortable with"); Omni 808 Investors, LLC's Memorandum in Support of Its Requests to Strike Summary and Responsive Reports of Ronald L. Durkin (docket #5705) ("Motion to Strike"), filed June 8, 2009, at 4 (noting Omni's "doubts that the Court or any party would benefit further by continuing this façade of Mr. Durkin's 'impartiality'"); id. at 7 (calling Mr. Durkin's explanation of his conclusion regarding the relatedness of certain parties as "not only fatuous[,] but [also] intellectually dishonest"); id. at 9 (suggesting that Mr. Durkin intentionally concealed from the Court the fact that Mr. Larian sought other funding sources before turning to Mr. Kadisha); id. at 10 (noting that "Mr. Durkin's repeated references to Mr. Larian's and Mr. Kadisha's common 'Persian' heritage can only be viewed as an attempt to draw some nefarious ethnic connection between them"); id. at 12 (calling the reference to Mr. Larian's and Mr. Kadisha's ethnicity "unprofessional symptoms of improper cultural bias [that] have no place in a supposedly objective report"); Omni 808 Investors, LLC's Reply Memorandum (docket #5809) ("Reply Memo") at 14 (suggesting that not only Mr. Durkin, but also counsel for Mattel, harbor "cultural biases" that lead them to "suggest[] that [Mr. Larian's and Mr. Kadisha's] common heritage makes [them] more likely to act contrary to their own interests); id. at 15 (stating that, according to his own interview notes, Mr. Durkin "misrepresented" to the Court in his Summary Report how Mr. Larian and Mr. Kadisha portrayed their relationship with each other).

As alluded to, Omni 808's criticisms have not been limited to personal attacks; some of the criticisms are in fact aimed at the Reports themselves. See e.g., SOP at 16 ("Mr. Durkin's conclusion that the Wachovia-Omni transaction impacted 'MGAEI's solvency and ability to continue conducting operations' is simply wrong."). Any comment by the Court regarding the substance of the discussions, analyses, and conclusions presented to the Court in the Forensic Auditor's Summary, Responsive, and Final Reports is inadvisable at this time. With the filing of the Third Amended Answer and Counterclaims, much of the subject matter of the Forensic Auditor's Reports have been incorporated into the claims at issue in this action. As such, it would be premature for the Court to comment upon the substance of issues that are yet to be adjudicated, and that are subject to a trial by jury. Nevertheless, the Court has reviewed the Forensic Auditor's Summary, Responsive, and Final Reports, and the exhibits attached thereto. The Court has also reviewed and considered the criticisms aimed at the Forensic Auditor, cited and quoted above, as well as the entirety of all the papers responding to the Forensic Auditor's Reports filed to date. After this review, the Court is firmly convinced that all the personal criticisms of Mr. Durkin are unwarranted and unsubstantiated.

At best, the criticism of Mr. Durkin's performance and presentation represents a

MINUTES FORM 90
CIVIL -- GEN

9

Initials of Deputy Clerk __cls_____

EXHIBIT __10__
PAGE __74__

different interpretation of available evidence. That such disagreements would arise between the analyses offered by a Court-Appointed Forensic Auditor and that offered by counsel for a party whose transactions have been a subject of that audit is by no means surprising. A jury considering the relevant evidence might ultimately make factual determinations that tend to agree with Mr. Durkin's assessment, it might ultimately tend to agree with Mr. Gordinier's assessment, or it may very well reject both positions in favor of another. The answer to the merits of the claims at issue in this action must await another day. Today, the Court merely notes that its examination of the Forensic Auditor's Reports reveal that Mr. Gordinier's personal attacks aimed at their author were unjustified.

Some specific attacks directed toward Mr. Durkin – relating to his background as a law enforcement officer, his communications with counsel for Mattel, and specific (but baseless) allegations of ethnocentric bias -- are worthy of more specific comment by the Court.

Stopping short of explicitly stating such, Mr. Gordinier appears to labor under the assumption that Mr. Durkin has been unable to put behind him the prosecutorial mindset under which he presumably operated during his former service to this Nation as an agent of the Federal Bureau of Investigation ("FBI"). At the outset, the Court notes that Mr. Gordinier's unstated assumptions do a disservice to the prosecutors and the law enforcement officers who work with those prosecutors, both of whom conduct their work under the clearly delineated duty to ferret out not only evidence of guilt but also "evidence favorable to the accused." See e.g., Berger v. United States, 295 U.S. 78, 88 (1935) (noting that the role of the prosecutor is not to win at all costs and observing that the prosecutor "is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done."); Brady v. Maryland, 373 U.S. 83, 87 (1963) (imposing a duty on prosecutors to provide to the defense exculpatory evidence when requested to do so).

Secondly, even if prosecutorial duties were not so defined, the Court finds no suggestion that Mr. Durkin skewed the evidence in favor of any particular viewpoint. Undoubtedly, there is a **complete absence** of any evidence that, as Mr. Gordinier has suggested, Mr. Durkin has embarked upon a campaign to purposely mislead the Court.

Mr. Gordinier also suggests that, because Mr. Durkin's bills are being paid by Mattel, Mattel has, through this payment or through other communications with Mr. Durkin, bought Mr. Durkin's loyalty. This is utter nonsense. As demonstrated by the Court's communications with him, Mr. Durkin is a Court-Appointed Officer who understands that his role is to work on behalf of the Court and not on behalf of any party. In any event, the Court's Order of January 7, 2009, which appointed Mr. Durkin, imposed the costs of the audit on Mattel "in the first instance," but expressly provided for

MINUTES FORM 90
CIVIL -- GEN

10

Initials of Deputy Clerk __cls_____

EXHIBIT __10__
PAGE __75__

the possibility that the audit expenses be shared or shifted to the MGA parties.
Moreover, to suggest, however subtly, that ex parte communications with counsel for
Mattel were improper ignores the Court's mandate to the Forensic Auditor in the
January 7, 2009, Order, which states that Mr. Durkin was provided with attorney contact
information and that he "shall direct his initial communications to counsel."  At no time
has the Court precluded the Forensic Auditor's communications with Mattel or its
counsel; in fact, because the Forensic Audit was undertaken based on evidence
gathered by and presented to the Court by Mattel, Mr. Durkin would have been remiss
in his duties if he failed to communicate with Mattel and its counsel.

       Mr. Durkin was vested with powers and discretion to complete a Court-ordered
Forensic Audit.  Pursuant to an Order of this Court, he undertook this task and
exercised those powers and that discretion, presenting his Reports in conformity with
the Court's instructions.  Despite counsel's attacks, the Court's review of the evidence
before it discerns no abuse of those powers or of that discretion.

       Particularly troubling to the Court is that counsel speculates that, because Mr.
Durkin noted in his report that Mr. Larian knew Mr. Kadisha from "the Persian
Community," Mr. Durkin could be "of the view that this common heritage makes Mr.
Kadisha more likely to act contrary to his own interests or to do something via third-
parties that he wouldn't otherwise do?" See SOP at 13-14 n.10 (appearing to pose this
thought as a rhetorical question).  There is no indication in the record, or otherwise, that
Mr. Durkin holds such a view.  To the contrary, Mr. Durkin's comment regarding the
acquaintanceship of Mr. Larian and Mr. Kadisha from "the Persian Community" (which
is noted in the report within quotation marks and is expressly attributed to a reference
made by Mr. Larian himself) is clearly predicated on interviews with these two
individuals, each of whom related independently to Mr. Durkin and his colleagues that
they knew each other from "the Persian Community."  See Durkin Summary Report, Ex.
14, at 2 ¶ 3 (Notes re March 25, 2009, interview with Mr. Larian: "He indicated that he
knew Kadisha from the Persian community.") and Ex. 14, at 15 ¶ 2 (Notes re March 26,
2009, interview with Mr. Kadisha: "Kadisha stated that he knows Larian from the
Persian community.").  The purpose for this reference is made clear in the footnote set
forth at the end of the sentence in which the reference appears; namely, the Report
discusses evidence that the relationship between Mr. Larian and Mr. Kadisha is
stronger and more personal than either man claimed it was. See Summary Report at 5
n.18; Ex. 15 (personal emails).

       In the Reply Memo, Mr. Gordinier takes issue with this explanation, this time
including not only Mr. Durkin but also counsel for Mattel as the targets for his
unsubstantiated allegations of "cultural bias."  Mr. Gordinier first mischaracterizes an
argument made by Mattel.  Mattel argued, and quite correctly, both that how well Mr.
Larian and Mr. Kadisha knew each other was relevant to a determination of whether
certain transactions between the two were arms-length transactions, and that this point
was likely not lost on either of these two very sophisticated and successful

MINUTES FORM 90                                                              Initials of Deputy Clerk __cls_____
CIVIL -- GEN                                        11

EXHIBIT __10__
PAGE __76__

businessmen.[5] As noted previously, both Mr. Larian and Mr. Kadisha stated that they knew each other from "the Persian community" which, in the Forensic Auditor's view, was intended to, or at least had the tendency to minimize the existing relationship between the two. Mr. Gordinier incorrectly characterizes this argument as Mattel's contention that Mr. Larian's and Mr. Kadisha's "Persian relationship" and "common Persian heritage" was somehow relevant to a determination of whether the Omni 808 transaction was an arms-length transaction. Mattel made no such argument. Neither counsel for Mattel nor Mr. Durkin have implied that Mr. Larian's and Mr. Kadisha's ethnicity factors into the analysis. Other than to point to Mr. Larian's and Mr. Kadisha's separate, but identical, accounts of how they knew each other which, in turn, suggests how well they know each other, neither counsel for Mattel nor Mr. Durkin have stated or implied that Mr. Larian's and Mr. Kadisha's shared ethnicity is relevant to any matter currently or potentially before the Court. Compare Opposition at 8-9 with Reply Memo at 14-15.

Moreover, Mr. Gordinier's substantive point, that Mr. Durkin "misrepresented" to the Court what Mr. Larian and Mr. Kadisha told him about the closeness of their relationship, fares no better. See Reply Memo at 15. On this point, it is important to set this stage properly. Counsel for all parties have attempted to glean far too much from two sterile paragraphs of interview notes taken by Mr. Durkin. Much can be inferred from conversations and interviews through not only what is said, but what is not said, by the interviewee's demeanor, by the tone of the speaker, by the length and placement of pauses, and by non-verbal gestures and body language. With all these variables, much of what is communicated does not find its way into notes.[6] For instance, Mr. Durkin's interview of Mr. Larian lasted over two and a half hours; however, the interview notes are a mere five and a half pages. Similarly, a one-hour and ten minute interview of Mr. Kadisha yielded only three and a half pages of interview notes. This is not to suggest that the notes should have been longer or that the interviews should have been recorded or transcribed; rather, it is to suggest that counsel's arguments based on another's notes are not particularly probative.

In contrast, Mr. Durkin's assessment, based on his interviews with both of them,

---

[5] In fact, the Court just this week issued a 30-page, single-spaced opinion resolving a 10-day bench trial conducted over the sole issue of whether a transaction between "closely related" entities reflected its fair market value, one of the more significant arguments ultimately rejected by the Court in that case being that the close relationship between the parties necessarily rendered the transaction a "sweetheart deal." See July 6, 2009, Order, Siegel v. Warner Bros. Entertainment, Inc., et al., CV 04-08400 SGL (RZ) (docket #554).

[6] Indeed, the interview notes upon which the parties rely concede as much. See Summary Report, Ex. 14 at 2, 15 ("This interview memorandum is a factual representation of the topics discussed during the interview and is not intended to be a word for word or exact transcription of the conversation."). Thus, in addition to not taking into account all non-verbal communication, the notes do not even represent everything that was said during the interview.

EXHIBIT __10__
PAGE __77__

is that Mr. Larian and Mr. Kadisha attempted to minimize their relationship because both of them understand the relevance of any friendship or other connection between them to the assessment of the arms-length nature of any transactions in which they have engaged. Mr. Durkin's assessment does not come from the gentle teasing of a strained meaning from two sterile paragraphs of brief notes taken by another person; rather, his assessment springs from his participation in the interview process, the entirety of the interviews he conducted of Mr. Larian and Mr. Kadisha, and his review of all of the evidence. As such, the Court defers to his assessment, at least insofar as how Mr. Larian and Mr. Kadisha portrayed their relationship to him.

As for that scant language from which the parties glean so much meaning, the entirety of which is set forth below, it in no way supports the contention made by Mr. Gordinier that Mr. Durkin "misrepresented" to the Court what Mr. Larian and Mr. Kadisha conveyed to him about the closeness of their relationship. On this topic, the notes of Mr. Larian's interview merely state the following:

> Larian decided to contact Neil Kadisha of OmniNet as he knew his company was in the distressed loan business. He indicated that he knew Kadisha from the Persian community. Kadisha said he wouldn't do the deal alone in today's environment and wanted Larian and their other friends to invest in the deal with MGA. Larian stated that Kadisha negotiated the debt with Wachovia and got it down significantly, Larian said he is not bitter about Kadisha getting a good deal on buying the loan.

Summary Report, Ex. 14, at 2 ¶ 3 (emphasis added). This paragraph contains the word "friends," and perhaps could even be read as an implicit statement by Mr. Larian that he and Mr. Kadisha are "friends." But the language does not compel such an inference. Moreover, it does not comport with the notes of Mr. Kadisha's interview, which on this topic state only the following:

> Larian and Kadisha have never been to dinner together. Kadisha stated that he knows Larian from the Persian community and he sees him often at religious events, etc. He has no investments with Larian. Kadisha did not talk with Larian last night, this morning or in the last two days.

Summary Report, Ex. 14, at 15, ¶ 2. Mr. Durkin's assessment that Mr. Larian and Mr. Kadisha sought to minimize the extent of their relationship is not contradicted by these short passages.

The criticism that Mr. Durkin was acting pursuant to an ethnic or cultural bias is clearly baseless. The allegations are irresponsible, and they are made to capitalize on

MINUTES FORM 90                                              Initials of Deputy Clerk __cls_____
CIVIL -- GEN                        13

EXHIBIT __10__
PAGE __78__

their inherent sensational nature for counsel's own purposes of diverting attention away from the substance of the Reports. Sensationalism aside, when viewed in context, the Reports' reference to Mr. Larian and Mr. Kadisha knowing each other from "the Persian community" was plainly innocuous. The reference was a direct quotation from both Mr. Larian and Mr. Kadisha. It was used in a broader discussion regarding how (and thus, impliedly, how well) the two knew each other, which is itself relevant to the issue of whether certain transactions relevant to the present litigation were made at arms length.

This is a most unfortunate incident. The Court certainly understands, in a case as hotly contested as this one -- with such high stakes, with such complex legal issues, and with such truly extraordinary legal talent on all sides -- that lawyers, however ethical and committed to the highest standards of professionalism (as the Court presumes and has found all counsel of record here to be), make statements or commit acts in haste that they subsequently regret. All of the players to this drama, are, after all is said and done, human. As such, all of us are vulnerable to all-too-common human frailties. The Court would place itself at the very top of any list of lawyers who have spoken improvidently at one time or another in this case (and any number of others). What the Court has witnessed here, however, in both manner and substance, for the reasons noted above, goes beyond what the Court can let pass without some manner of reprobation. So let the Court be clear: Nothing excuses the attempted character assassination in which Mr. Gordinier has engaged.

**IT IS SO ORDERED.**

MINUTES FORM 90
CIVIL -- GEN

14

Initials of Deputy Clerk __cls_____

EXHIBIT __10__
PAGE __79__

# EXHIBIT 11

This exhibit is filed
under seal
pursuant
to
protective order

# EXHIBIT 12

This exhibit is filed
under seal
pursuant
to
protective order

# EXHIBIT 13

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name and Address):* | TELEPHONE NO.: | FOR COURT USE ONLY |
|---|---|---|
| PAUL HASTINGS JANOFSKY & WALKER LLP<br>Glenn D. Dassoff, Esq. (SB#96809)<br>695 Town Center Drive, 17th Floor<br>Costa Mesa, CA 92626 | 714 668-6200 | **FILED**<br>LOS ANGELES SUPERIOR COURT<br><br>SEP 2 2 2006<br><br>JOHN A. CLARKE, CLERK<br>*Cesar Aguirre*<br>BY CESAR AGUIRRE, DEPUTY |

ATTORNEY FOR *(Name):* Plaintiff, MATTEL, INC.

Insert name of court and name of judicial district and branch court, if any:
Superior Court of the State of California, County of Los Angeles
CENTRAL DISTRICT

PLAINTIFF/PETITIONER: MATTEL, INC., a Delaware corporation

DEFENDANT/RESPONDENT: RONALD BRAWER, an individual, and DOES 1-50 inclusive

| **REQUEST FOR DISMISSAL** | CASE NUMBER: |
|---|---|
| ☐ Personal Injury, Property Damage, or Wrongful Death<br>  ☐ Motor Vehicle    ☐ Other<br>☐ Family Law<br>☐ Eminent Domain<br>☒ Other *(specify):* Declaratory Relief | BC 323381 |

— A conformed copy will not be returned by the clerk unless a method of return is provided with the document. —

1. **TO THE CLERK:** Please **dismiss** this action as follows:
   a- (1) ☐ With prejudice      (2) ☒ Without prejudice

   b. (1) ☒ Complaint      (2) ☐ Petition
   (3) ☐ Cross-complaint filed by *(name):*
   (4) ☐ Cross-complaint filed by *(name):*
   (5) ☒ Entire action of all parties and all causes of action
   (6) ☐ Other *(specify):* *

Date: September 21, 2006

Glenn D. Dassoff, Esq.
(TYPE OR PRINT NAME OF ☒ ATTORNEY ☐ PARTY WITHOUT ATTORNEY)
* If dismissal requested is of specified parties only, of specified causes of action only or of specified cross-complaints so state and identify the parties, causes of action, or cross-complaints to be dismissed.

**RECEIVED**
SEP 2 2 2006
E. Torres

on *(date):*
on *(date):*

Attorney Or party without attorney for:
☒ Plaintiff/Petitioner      ☐ Defendant/Respondent
☐ Cross-complainant

2. **TO THE CLERK:** Consent to the above dismissal is hereby given. **

Date:

(TYPE OR PRINT NAME OF ☐ ATTORNEY ☐ PARTY WITHOUT ATTORNEY)
** If a cross-complaint—or Response (Family Law) seeking affirmative relief—is on file, the attorney for cross-complainant (respondent) must sign this consent if required by Code of Civil Procedure section 581(i) or (j).

Attorney Or party without attorney for:
☐ Plaintiff/Petitioner      ☐ Defendant/Respondent
☐ Cross-complainant

*(To be completed by clerk)*
3. ☒ Dismissal entered as requested on *(date):* SEP 2 2 2006
4. ☐ Dismissal entered on *(date):*                     as to only *(name):*
5. ☐ Dismissal **not entered** as requested for the following reasons *(specify):*

6. ☐ a. Attorney or party without attorney notified on *(date):*
   b. Attorney or party without attorney not notified. Filing party failed to provide
   ☐ a copy to conform      ☐ means to return conformed copy

Date: SEP 2 2 2006                     Clerk, by _____, Deputy

| Form Adopted by the<br>Judicial Council of California<br>982(a)(5) [Rev. January 1, 1997] | **REQUEST FOR DISMISSAL** | Code of Civil Procedure, § 581 et seq.<br>Cal. Rules of Court, rule 383, 1233<br>American LegalNet, Inc.<br>www.USCourtForms.com |

EXHIBIT 13
PAGE 86

## PROOF OF SERVICE

STATE OF CALIFORNIA⟩
⟩ ss:
COUNTY OF ORANGE⟩

I am employed in the City of Costa Mesa, County of Orange, State of California. I am over the age of 18, and not a party to the within action. My business address is 695 Town Center Drive, 17th Floor, Costa Mesa, CA 92626.

On September 22, 2006, I served the foregoing document(s) described as:

**REQUEST FOR DISMISSAL**

on the interested parties by placing a true and correct copy thereof in a sealed envelope(s) addressed as follows:

Douglas A. Wickham, Esq.
Littler Mendelson
2049 Century Park East, 5th Floor
Los Angeles, California 90067

☐ **VIA OVERNIGHT MAIL:**

VIA U.P.S. By delivering such document(s) to an overnight mail service or an authorized courier in a sealed envelope or package designated by the express service courier addressed to the person(s) on whom it is to be served.

☒ **VIA U.S. MAIL:**

I am readily familiar with the firm's practice of collection and processing of correspondence for mailing. Under that practice such sealed envelope(s) would be deposited with the U.S. postal service on September 22, 2006 with postage thereon fully prepaid, at Costa Mesa, California.

☐ **VIA PERSONAL DELIVERY:**

I personally delivered such sealed envelope(s) by hand to the offices of the addressee(s) pursuant to CCP § 1011.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on September 22, 2006, at Costa Mesa, California.

_____
Claudia Stokes

LA/1061638.1

EXHIBIT __13__
PAGE __87__

COST AFTER VOLUNTARY DISMISSAL IN THE AMOUNT OF $ _515. 20_ _10-11-06_

CLAIMED BY ___DEFENDANT___

ATTEST:
JOHN A. CLARKE, EXECUTIVE OFFICER/CLERK OF THE
SUPERIOR COURT OF THE STATE OF CALIFORNIA, IN AND
FOR THE COUNTY OF LOS ANGELES.

BY _____ , DEPUTY

NOV 1 4 2006

EXHIBIT _13_
PAGE _88_

# EXHIBIT 14

Received: 11/6/06 11:18   02 714 879 1921 -> JetFax M920;  Page 2
11/06, 2006 11:18 FAX 02 714 879 1921     PAUL HASTINGS               ☒002/003

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 11/01/06      DEPT. 30

HONORABLE ELIZABETH A. GRIMES    JUDGE    L. WALKER     DEPUTY CLERK

HONORABLE     JUDGE PRO TEM     ELECTRONIC RECORDING MONIT

C. AGUIRRE, C.A.    Deputy Sheriff    NONE     Reporter

9:00 am BC323381

MATTEL INC
VS
RONALD BRAWER

170.5 RECUSAL BY JUDGE E. GRIME
170.6 HIROSHIGE BY PLAINTIFF

Plaintiff Counsel

Defendant Counsel



NATURE OF PROCEEDINGS:

COURT ORDER

The Court is in receipt of various documents in
connection with a proposed form of judgment. A
request for dismissal having been filed, and dismissal
entered by the Clerk on September 22, 2006, this
matter is resolved, and the Court does not comtemplate
issuing any further orders or judgments.

CLERK'S CERTIFICATE OF MAILING/
NOTICE OF ENTRY OF ORDER

I, the below named Executive Officer/Clerk of the
above-entitled court, do hereby certify that I am not
a party to the cause herein, and that this date I
served Notice of Entry of the above minute order of
11/01/06 upon each party or counsel named below by
depositing in the United States mail at the courthouse
in Los Angeles, California, one copy of the
original entered herein in a separate sealed envelope
for each, addressed as shown below with the postage
thereon fully prepaid.

Date: November 1, 2006

Page   1 of   2    DEPT. 30

MINUTES ENTERED
11/01/06
COUNTY CLERK

EXHIBIT 14
PAGE 89

# EXHIBIT 15



1  PAUL, HASTINGS, JANOFSKY & WALKER LLP
   GLENN D. DASSOFF (SB# 96809)
2  ELENA R. BACA (SB# 160564)
   SAMANTHA J. BLACK (SB# 228829)
3  695 Town Center Drive
   Seventeenth Floor
4  Costa Mesa, CA 92626-1924
   Telephone: (714) 668-6200
5  Facsimile: (714) 979-1921

6  Attorneys for Plaintiff
   MATTEL, INC.

7

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

OCT 2 1 2004

John A. Clarke, Executive Officer/Clerk
By————————, Deputy
       J. SUNGA

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                       COUNTY OF LOS ANGELES

10

11  MATTEL, INC., a Delaware          CASE NO.    BC 323381
    corporation,
12                                    **COMPLAINT FOR DECLARATORY**
              Plaintiff,              **RELIEF**
13
         vs.
14
    RONALD BRAWER, an individual,
15  and DOES 1-50 inclusive,

16            Defendants.

17

18

19

20

21

22

23

24

25

26

27

28

                              COMPLAINT

EXHIBIT 15
PAGE 90

M 0892080

1    Plaintiff Mattel, Inc. ("Mattel") hereby alleges on knowledge as to the
2    allegations in paragraph (2), and on information and belief as to all other allegations, the
3    following:

4    I.    NATURE OF THE ACTION
5

6        1.    Mattel seeks declaratory relief against Defendant Ronald Brawer
7    ("Brawer"), a former high-level member of its management team who routinely
8    participated in highly confidential meetings and who regularly requested and received
9    confidential materials.  At the same time that Brawer was secretly making plans to join a
10   direct competitor, he took steps to maximize his exposure to Mattel's confidential
11   information.
12

13   II.   PARTIES
14

15       2.    Plaintiff Mattel is a Delaware corporation, headquartered in El
16   Segundo, California.  Mattel is authorized to do business in, and does business in, the
17   State of California.

18

19       3.    Mattel alleges that Brawer was, until October 1, 2004, an employee of
20   Mattel.  Mattel further alleges that Brawer is, and at all times relevant herein was, a
21   resident of the County of Los Angeles, State of California.

22

23       4.    Mattel is unaware of the true names or capacities of Does 1 through
24   50, inclusive, and, therefore sues these defendants by such fictitious names.  Mattel will
25   amend this Complaint to allege their true names and capacities when ascertained.  Mattel
26   alleges that each of the Doe defendants is responsible or liable in some manner to Mattel
27   for the conduct alleged in this Complaint and that Mattel's damages as herein alleged
28   were proximately caused by those Doe defendants.

-1-

EXHIBIT _15_
PAGE _91_

M 0892081

1          5.     Mattel alleges that at all times herein mentioned each of the

2 defendants was the agent, servant and/or employee of each of the other defendants and in

3 connection with the action hereinafter alleged, was acting within the scope of such agency

4 and employment, and each defendant ratified each and every act, omission and thing done

5 by each and every other defendant named herein.

6

7 III.      JURISDICTION AND VENUE

8

9          6.     This Court has personal jurisdiction over Brawer because he is a

10 resident of the State of California.

11

12          7.     This Court has original jurisdiction of this civil action because the

13 matter in controversy exceeds the jurisdictional minimum of this Court.

14

15          8.     Venue is proper in this County because the alleged acts and wrongs

16 occurred in this County.

17 IV.      FACTS COMMON TO REQUEST FOR DECLARATORY RELIEF

18        A.     MATTEL DEVELOPED PROPRIETARY INFORMATION NOT

19             DISCLOSED TO ITS BUSINESS COMPETITORS

20

21          9.     For over 45 years, Mattel has engaged in the design, manufacture, and

22 marketing of toys and family products, including Barbie®, Hot Wheels®, Matchbox®,

23 American Girl®, Fisher-Price®, Little People®, Rescue Heroes®, and Power Wheels®,

24 as well as a wide array of entertainment-inspired toy lines. To develop its products,

25 business methods, and practices, Mattel has expended substantial resources in its

26 confidential information, including, but not limited to: product research, design, and

27 development; its marketing and advertising research, plans, methods, and processes; its

28 business research and forecasts; its costs, budgets, pricing, credit terms, deal terms, and

-2-

COMPLAINT

EXHIBIT 15
PAGE 92

M 0892082

1    finances; its manufacturing, distribution, and sales methods and processes; its business

2    and legal strategies and practices; and in its intellectual property (collectively the

3    "Proprietary Information").

4

5            10.     As a result of Mattel's investment in its Proprietary Information,

6    Mattel derives independent economic value from the fact that its confidential Proprietary

7    Information is not known to competitors and others outside of Mattel. While Mattel may

8    eventually disclose some of its Proprietary Information to the public, until the time that

9    Mattel elects to make any such disclosure, its Proprietary Information remains highly

10    confidential. Mattel has made reasonable efforts to protect the confidentiality and secrecy

11    of its Proprietary Information. Accordingly, Mattel's Proprietary Information qualifies as

12    trade secrets.

13

14           B.     MATTEL PROTECTED ITS PROPRIETARY INFORMATION THROUGH ITS POLICIES, AGREEMENTS, AND OTHER PRACTICES

15

16            11.     On April 22, 1996, Defendant Brawer became an employee of Tyco

17    Toys, Inc. ("Tyco") in Mount Laurel, New Jersey. The same day, Brawer entered into an

18    Employee Invention & Trade Secret Agreement with Tyco (the "Original Confidentiality

19    Agreement").

20

21            12.     In March 1997, Tyco was merged with and into Mattel, with Mattel as

22    the surviving corporation. On April 9, 1997, Brawer became a Marketing Director for

23    Mattel in Mount Laurel, New Jersey, and remained bound by the Original Confidentiality

24    Agreement.

25

26            13.     Throughout Brawer's employment by Mattel, Mattel continued its

27    ongoing efforts to protect its Proprietary Information from unauthorized disclosure. To

28

-3-

COMPLAINT

EXHIBIT __15__
PAGE __93__

M 0892083

1  that end, in January 2003, Mattel's "Code of Conduct" was circulated to Mattel

2  employees worldwide, again stating Mattel's policy that:

3

4          "Employees and Directors have an obligation to protect the

5          confidentiality of Mattel's proprietary information. Proprietary

6          information is any information not generally known to the public that

7          is useful to Mattel, that would be useful to its competitors or other

8          third parties or that would be harmful to Mattel or its customers if

9          disclosed. Proprietary information includes trade secrets, revenue

10         and profit information and projections, new product information,

11         marketing plans, design and development efforts, manufacturing

12         processes and any information regarding potential acquisitions,

13         divestitures and investments.

14

15         We can protect the security of Mattel's proprietary information by

16         limiting access to it. Confidential information should not be

17         discussed with those who are not obligated to maintain the

18         information in confidence and in public places where the information

19         is not likely to be kept secret, such as planes, restaurants and

20         elevators. The obligation to preserve confidential information

21         continues even after employment ends."

22

23  The Code of Conduct applied to Brawer, a Mattel executive, and required that he,

24  as well as those persons reporting to him, meet their confidentiality obligations to

25  Mattel.

26

27

28
                                    -4-

                              COMPLAINT

EXHIBIT __15__
PAGE __94__

M 0892084

14. Throughout 2004, Mattel reminded and stressed to its employees the importance of protecting Mattel's confidential and proprietary materials and information. It also implemented a focused Intellectual Property Protection Program.

15. On March 5, 2004, the President of Mattel Brands, Matt Bousquette, distributed a memorandum to the employees in his Executive Group (i.e., Director or above) that enclosed a survey confirming compliance with Mattel's Code of Conduct (the "Code of Conduct Survey") and an updated Employee Confidentiality and Inventions Agreement (the "2004 Confidentiality Agreement"). Bousquette requested that these employees, which included Brawer, review and sign the two documents by March 9, 2004.

16. On March 9, 2004, Bousquette convened his Executive Group to discuss the Mattel Code of Conduct Survey, the 2004 Confidentiality Agreement, and his March 5, 2004, memorandum. Brawer was present during this meeting.

17. While other members of the Executive Group completed and returned the survey and 2004 Confidentiality Agreement, on March 18, 2004, Brawer wrote to Bousquette and said that he "applaud[ed] the company's vigorous protection of it's intellectual property," but intended to have "one section" reviewed prior to signing. Brawer stated that he anticipated returning his signed 2004 Confidentiality Agreement by March 24, 2004.

18. Thereafter, Brawer entered into negotiations with Mattel representatives regarding the language of the "one section" of the 2004 Confidentiality Agreement about which Brawer expressed concern, Section 3(b), which defines "Mattel's Proprietary Information."

-5-

COMPLAINT

EXHIBIT _15_
PAGE _95_

M 0892085

1           19.     Every one of Bousquette's direct reports except Brawer signed and

2 returned the 2004 Confidentiality Agreement. Brawer repeatedly assured Mattel

3 representatives that he would provide the Company with his proposed revisions to

4 Section 3(b) of the 2004 Confidentiality Agreement. Mattel's representatives believed,

5 based on Brawer's actions and statements, that he had a concern relating only to a single

6 provision in the 2004 Confidentiality Agreement and that this concern would be resolved.

7 Notwithstanding these assurances, as of the time of his departure on October 1, 2004,

8 Brawer still had not signed the 2004 Confidentiality Agreement.

9

10       C.    BRAWER MOVED THROUGH TRUSTED EXECUTIVE POSITIONS AT MATTEL WHILE ENGAGED IN ONGOING AND UNDISCLOSED DISCUSSIONS WITH COMPETITOR MGA

11

12           20.     By 2003, Brawer had advanced within Mattel to a Senior Vice

13 President position over customer marketing, which Mattel considered a position of trust

14 and confidence. In his executive position, Brawer directly supervised eight employees in

15 the Mattel Brands organization; in addition, and as the direct result of his senior

16 management position within Mattel, Brawer was provided access to Proprietary

17 Information, including, but not limited to, detailed information related to development,

18 manufacture, marketing, pricing, shipping, and performance of Mattel's then-current and

19 anticipated future product lines, and other confidential business plans between Mattel and

20 its most significant retail customers.

21

22           21.     On or about April 19, 2004, Mattel announced a restructuring of the

23 company's sales organization. Jerry Cleary was announced as the Executive Vice

24 President, Sales and Merchandising.

25

26           22.     Brawer initially seemed unhappy that Mattel had chosen Cleary rather

27 than him to fill the position but subsequently informed Mattel that he would accept a

28

-6-

COMPLAINT

EXHIBIT _15_
PAGE _96_

M 0892086

1  different position that Mattel had offered to him, as a Senior Vice President/General
2  Manager ("GM"). The GM position also is an executive position of trust and confidence.
3  The role of a GM is to lead a cross-functional "Customer Business Team." Each GM is
4  accountable for a strategic partnership with a key Mattel retailer, covering all aspects of
5  the business, including both traditional toy sales and retail development of licensed
6  products.

7

8      23.    In or about late May 2004, Brawer began performing GM duties,
9  working with one of Mattel's major retail customer accounts ("Large Toy Retailer").
10  Thereafter, Brawer began receiving Proprietary Information related not only to the Senior
11  Vice President, Customer Marketing position that he still formally held, but also began
12  receiving detailed information related to the GM role. Brawer appeared to have
13  enthusiastically embraced his new role and began requesting and analyzing detailed
14  information related to Mattel and its four key retail accounts.

15

16      24.    Based on his repeated representations that he would sign the 2004
17  Confidentiality Agreement and that with a minor modification he would have no objection
18  to it, Mattel believed that Brawer, who had already assumed the responsibilities for the
19  GM position, was firmly on board with his new executive position at Mattel even though
20  he and Mattel had not finalized his employment agreement for the GM position or the
21  2004 Confidentiality Agreement.

22

23      25.    MGA Entertainment ("MGA") is a corporation engaged in the design,
24  manufacture, and marketing of toys. MGA offers to the public toys and other consumer
25  goods that directly compete with Mattel's products. In the fall of 2003, Mattel had reason
26  to believe that competitor MGA was contacting its employees. When asked by Alan
27  Kaye, Mattel's Senior Vice President of Human Resources, in or around December 2003,
28  whether he was talking to MGA, Brawer denied that he had been in contact with MGA.

-7-

COMPLAINT

EXHIBIT _15_
PAGE _97_

M 0892087

1  Kaye explained that, given Brawer's high-level position at Mattel and access to Mattel's

2  proprietary information, any such contact with MGA would pose a conflict. Brawer

3  promised that he would not talk to MGA.

5  26.  However, after Brawer's resignation, a review of Mattel's telephone

6  records revealed that Brawer had ongoing contact with MGA during the summer of 2004.

7  Notably, Brawer failed to disclose these calls. As Brawer knew, if Mattel had known of

8  the existence of such a conflict, Mattel would have required Brawer, at a minimum, to

9  limit his exposure to Proprietary Information. Brawer not only failed to disclose the

10 conflict, but he also took steps to maximize his exposure to Proprietary Information.

12 27.  Mattel's records reveal that, on June 1, 2004, Brawer telephoned

13 MGA's offices. The next day, Brawer attended the line review where, for the first time,

14 Mattel presented its Spring 2005 products for review. That same day, a few hours after

15 Brawer viewed Mattel's Proprietary Information at line review, Brawer again telephoned

16 MGA's offices.

18 28.  The following month, on July 7, 2004, Brawer telephoned MGA's

19 offices again. Between Brawer's June 2, 2004, and July 7, 2004 calls to MGA, Brawer

20 participated in a variety of sensitive meetings where Mattel's Proprietary Information was

21 discussed, including, but not limited to, Barbie® products for Spring 2005, Mattel's

22 strategy and negotiations related to its relationship with the Large Toy Retailer, Mattel's

23 developing product lines, promotional plans, market strategy, and licensing opportunities.

24 In addition, during this time, Brawer specifically requested line review presentation

25 documents, drawings, information related to Mattel's market research results, sales

26 reports, advertising/media schedules, and product testing. Among the various confidential

27 reports and information provided to Brawer during this period were analyses of the sales

28 performance of Mattel products (including male action figures, Barbie® products, young

-8-

COMPLAINT

EXHIBIT _15_
PAGE __98__

M 0892088

1   and older girls products, and Matchbox® products) versus competing products, third
2   quarter and year-end financial and sales forecasts, as well as the personnel files for his
3   various team members.

4

5        29.   During July 2004, Brawer repeatedly called MGA.  For example, on
6   July 7, 2004, Brawer telephoned MGA.  Brawer's calendar reflects that, on July 7, 2004,
7   Brawer attended the Matchbox® line review where Proprietary Information related to this
8   Mattel Brand was discussed and internally disclosed.  Brawer's July 7, 2004 telephone
9   call to MGA occurred after the Matchbox® line review concluded.

10

11        30.   On July 8, 2004, the day after the Matchbox® line review, Brawer
12   twice telephoned MGA's offices.  On July 9, 2004, after receiving an analysis of Mattel's
13   Barbie® Brand, Brawer telephoned MGA's offices.  Later that day, Brawer telephoned
14   MGA's offices yet again, immediately prior to attending the Hot Wheels® product line
15   review.

16

17        31.   Brawer again telephoned MGA on August 2, 2004.  Between
18   Brawer's July 9, 2004, and August 2, 2004, MGA calls, Brawer continued participating in
19   sensitive meetings where Mattel Proprietary Information was discussed, including, but not
20   limited to, meetings regarding Mattel's historical relationships with the Large Toy
21   Retailer, the anticipated future terms of Mattel's agreements with the Large Toy Retailer,
22   forecasts for various Mattel product lines, Mattel's 2005 Fall Global Account Plan
23   (including detailed product cost, manufacturing, shipping and delivery plans for 2005),
24   and market research related to Mattel's target consumers.  During this time period, Brawer
25   also requested that he be provided monthly with a report/analysis detailing the sales of
26   Mattel's Hot Wheels® products, Barbie® products, games, young girls, and other
27   products.

28

-9-

COMPLAINT

EXHIBIT __15__
PAGE __99__

M 0892089

32.    Throughout August and early September 2004, Brawer continued to participate in meetings where he learned additional Proprietary Information, even though some were meetings Brawer had not attended in months.  Examples include, but are not limited to, the Fall 2005 Barbie® line review, Fall 2004 My Scene® meeting, Fall 2005 Radio Control meeting, Internal line review, Big Idea Campaign, Global Line Review, a licensing summit with Mattel's present and potential licensors, the initial Long Range Planning meetings, and Advertising/Media meetings.  In addition, between August 23 and 25, 2004, Brawer attended the "Global Line Review."  At the Global Line Review, Mattel internally presented detailed information related to its entire product line over a several-day period.

33.    Throughout August and early September 2004, Brawer regularly received Proprietary Information, including, but not limited to, weekly reports related to sales of Mattel products, consumption reports, point of sale information, present and potential Mattel licensees and licensors, advertising/media reports and schedules, shipping reports, financial analyses, test market reports, and clearance survey reports.  Brawer also participated in Mattel's Long Range Planning meetings, in which Mattel's business plans, sales by brand, financial forecasting, and other long-term business planning for 2005 through 2008 were being formulated and discussed.

D.    BRAWER FINALLY ANNOUNCED TO MATTEL MANAGEMENT THAT HE HAD DEFECTED TO COMPETITOR MGA

34.    On September 15, 2004, Brawer left work at noon to begin a two-day religious holiday.  As Brawer left, he carried a large cardboard box with binders and other materials.  Though Brawer had supposedly left for the holiday, several hours after his departure, Brawer instructed his assistant to print Mattel's 2004 sales plan for the Large Toy Retailer for him, claiming he needed it for a meeting.

-10-

COMPLAINT



EXHIBIT __15__
PAGE __100__

M 0892090

35. On September 17, 2004, the day Brawer was scheduled to return to work after the holiday, at or about 7:30 a.m., Brawer informed his supervisor, Jerry Cleary, that he was leaving Mattel, effective October 1, 2004, to work for competitor MGA. Cleary asked Brawer to leave Mattel's premises, but indicated that Mattel would be in contact with Brawer regarding an exit interview. Finally, Cleary instructed Brawer not to disclose his resignation until a joint communication could be distributed. Brawer agreed to this, but then immediately began contacting Mattel employees, telling them that he had left to go to MGA, and providing them with his contact information.

36. On September 20, 2004, Mattel hand-delivered a letter to Brawer reminding him of his continuing confidentiality obligations, not only through October 1, 2004, but continuing beyond the termination of his employment.

E. BRAWER REFUSED TO ACKNOWLEDGE HIS OBLIGATION TO KEEP CONFIDENTIAL MATTEL'S PROPRIETARY INFORMATION

37. At his Exit Interview, on September 29, 2004, Brawer was unwilling to complete or sign the form that sought to: confirm what Proprietary Information Brawer had received in writing or during meetings; determine whether Brawer had returned all copies of Proprietary Information in his possession; confirm that all Proprietary Information had not been copied, retained or disclosed; and confirm that Brawer understood his ongoing obligation to maintain the confidentiality of Mattel's Proprietary Information.

38. During his Exit Interview, Mattel reminded Brawer that he had ongoing duties of confidentiality to Mattel, even after the termination of his employment. Brawer was given a copy of his Original Confidentiality Agreement, which he had signed on April 22, 1996, and another copy of the Code of Conduct. During his Exit Interview, Brawer noted that he had not signed the Code of Conduct, apparently suggesting he was

-11-

COMPLAINT

EXHIBIT __15__
PAGE __101__

M 0892091

1   not bound by Mattel's policy because he had not signed it. Mattel's representative

2   explained to him that it was Mattel's policy and, as a general matter, he was bound by the

3   policy whether or not he signed it. Mattel provided Brawer with a revised 2004

4   Confidentiality Agreement, which included the revisions to Section 3(b) Mattel last

5   offered to Brawer. Brawer refused to sign the revised 2004 Confidentiality Agreement,

6   disclosing for the first time that: (i) his objections were not limited to Section 3(b); (ii) he

7   disagreed with everything in the 2004 Confidentiality Agreement; and (iii) he never

8   intended to sign it.

10        39.  During his Exit Interview, Brawer confirmed he had accepted the

11   position of Executive Vice President of Sales & Marketing of MGA and intended to

12   formally begin work on October 5, 2004. Brawer refused to state whether he already had

13   a written agreement or written job offer from MGA.

15        40.  On October 1, 2004, Brawer's final day of employment with Mattel,

16   Mattel hand-delivered to Brawer a letter that identified with reasonable particularity the

17   nature of Mattel's proprietary information, reminded Brawer of his confidentiality

18   obligations to Mattel, and further requested that Brawer acknowledge and agree that he

19   would maintain the confidentiality of Mattel's proprietary information (as identified in the

20   letter) by signing and returning a copy of the letter to Mattel. As of the date of filing of

21   this Complaint, Brawer has not responded to this letter.

-12-

COMPLAINT

EXHIBIT 15
PAGE 102

M 0892092

# FIRST CAUSE OF ACTION

(Declaratory Relief Against Brawer)

41.   Mattel repeats and realleges the allegations in paragraphs 1 through 40, inclusive, and by reference incorporates the same as though set forth herein.

42.   Mattel, through extensive research and the considerable expenditure of time, effort, and money has developed commercially valuable information concerning the design, manufacture, and marketing of toys and other family products.  Such information includes, but is not limited to, confidential information regarding:  (i) personnel; (ii) product research, design, development and performance; (iii) marketing and advertising research, plans, methods and processes; (iv) business research and forecasts; (v) costs, budgets, pricing, credit terms, deal terms, and finances; (vi) manufacturing, distribution, and sales methods and processes; (vii) potential acquisitions or investments; and (viii) business and legal strategies and practices.

43.   The above-described information constitutes the trade secrets of Mattel in that such information derives independent economic value, both actual and potential, from not being generally known to the public or to other persons who could obtain economic value from its disclosure or use.

44.   Mattel has taken reasonable steps to maintain the secrecy of its trade secrets and its confidential, Proprietary Information.

45.   Mattel entrusted Brawer with its trade secret information for use solely in performing his duties as an officer and/or director of Mattel.

-13-

COMPLAINT

EXHIBIT __15__
PAGE __103__

M 0892093

46.     While Brawer was employed by Mattel, and immediately after he resigned his employment, Mattel repeatedly attempted to confirm with Brawer his understanding and acceptance of Mattel's definition of trade secrets and his obligation to maintain the confidentiality of these secrets.  Brawer has rebuffed these efforts.

47.     There now exists an actual and present controversy between Mattel and Brawer regarding the confidential nature of Mattel's Proprietary Information, including, but not limited to, Mattel's: Global Line Review; Spring 2005 line review; Fall 2005 line review; line reviews for specific Mattel brands; 2005 Fall Global Action Plan (including detailed product cost, manufacturing, shipping and delivery plans for 2005); strategy and negotiations related to Mattel's relationship with the Large Toy Retailer; developing product lines; promotional plans; market strategy; licensing strategy, relationships, and opportunities; confidential personnel information related to Mattel employees; advertising and media plans; product testing reports; sales information of Mattel products; shipping capabilities and reports; and the Long Range Plan 2005-2008.

48.     In addition, an actual and present controversy between Mattel and Brawer exists regarding the extent to which Mattel is entitled to protection of its Proprietary Information on the one hand, and Brawer's ability, on the other hand, to undertake the responsibilities inherent in his new position with MGA without disclosing or using the confidential Proprietary Information that Brawer learned while employed by Mattel.  Such conflict may occur in situations including, but not limited to, situations in which Brawer may be asked to evaluate competitive marketing, product, or pricing plans, or situations where Brawer may be asked to propose or consider changes in MGA's media, advertising, or shipping plans.

-14-

COMPLAINT



EXHIBIT _15_
PAGE _104_

M 0892094

1      49.     Mattel is informed and believes, and on that basis alleges, that if

2   Brawer were to disclose Mattel's trade secrets, Mattel would be caused great and

3   irreparable harm.

4

5          WHEREFORE, Mattel prays for relief and judgment as follows:

6

7      1.     That Mattel be granted declaratory relief and such injunctive relief as

8   may be necessary and appropriate; and

9

10      2.     That Mattel have such other and further relief as this Court deems

11   just and equitable.

12

13   DATED:  October 21, 2004          PAUL, HASTINGS, JANOFSKY & WALKER LLP
                                       GLENN D. DASSOFF
14                                     ELENA R. BACA
                                       SAMANTHA J. BLACK
15

16                                     By: _____
17                                              GLENN D. DASSOFF

18                                     Attorneys for Plaintiff
                                       MATTEL, INC.
19

20   LA/1057759.2

21

22

23

24

25

26

27

28
                                       -15-
                                     COMPLAINT

EXHIBIT _15_
PAGE _105_

M 0892095

# EXHIBIT 16

1  DOUGLAS A. WICKHAM, Bar No. 127268
   MATTHEW B. HAYES, Bar No. 220639
2  LITTLER MENDELSON
   A Professional Corporation
3  2049 Century Park East, 5th Floor
   Los Angeles, CA 90067.3107
4  Telephone:    310.553.0308
   Fax No.:      310.553.5583
5
   Attorneys for Defendant
6  RONALD BRAWER

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                      COUNTY OF LOS ANGELES

10  | MATTEL, INC., a Delaware corporation, | Case No. BC323381 |
    |---|---|
11  | Plaintiff, | ASSIGNED FOR ALL PURPOSES TO JUDGE ELIZABETH GRIMES, DEPT. 30 |
12  | v. | DATE ACTION FILED: OCTOBER 21, 2004 |
13  | RONALD BRAWER, an individual, and DOES 1-50, inclusive, | DEFENDANT RONALD BRAWER'S RESPONSES TO PLAINTIFF'S SPECIAL INTERROGATORIES – SET ONE |
14  | Defendants. | |
15  | | |

16

17       PROPOUNDING PARTY:   PLAINTIFF MATTEL, INC.

18       RESPONDING PARTY:    DEFENDANT RONALD BRAWER

19       SET NO:              One (1)

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310.553 0308

cm 12/

EXHIBIT  16
PAGE  106

M 0892146

1         Pursuant to California Code of Civil Procedure section 2030, Defendant Ronald Brawer

2   ("Defendant") responds to Plaintiff Mattel, Inc.'s ("Plaintiff") Special Interrogatories (Set One) as

3   follows:

4                            **GENERAL RESPONSES AND OBJECTIONS**

5       1.     The following responses and objections are made solely for the purpose of this action

6   and are based on information presently known and available to Defendant.  Discovery is still

7   ongoing and Defendant reserves the right to supplement these responses with subsequently

8   discovered information and/or to introduce such information at the time of trial.

9       2.     Defendant objects to these interrogatories on the ground that this court lacks subject

10  matter jurisdiction over this action because no case or controversy has been alleged by Plaintiff and

11  because this action is not ripe for adjudication.

12      3.     Defendant objects to these interrogatories to the extent that Plaintiff has failed to

13  comply with California Code of Civil Procedure section 2019(d), which is a prerequisite to

14  Plaintiff's entitlement to take discovery in the instant action.  Despite the fact that Plaintiff's action

15  is styled as one seeking declaratory relief, Plaintiff in effect is attempting to prosecute a trade secrets

16  claim against Defendant and third party MGA Entertainment, Inc.  Because, however, Plaintiff failed

17  to identify its trade secrets with reasonable particularity as required by California Code of Civil

18  Procedure section 2019(d), Plaintiff is not permitted to conduct discovery pertaining to any such

19  alleged trade secrets and/or any alleged misappropriations.

20      4.     Defendant objects to these interrogatories to the extent they call for information

21  protected by the attorney-client privilege, the work product doctrine, the spousal privilege or any

22  other privilege, or are violative of the Defendant's right to privacy or call for the disclosure of

23  confidential and/or proprietary information or information otherwise protected as a trade secret.

24  These responses shall not constitute a waiver of any privilege or any other ground for objecting to

25  discovery with respect to such response, nor shall inadvertent disclosure waive the right of the

26  Defendant to object to the use of such information during any subsequent proceeding.

27      5.     Defendant does not waive: (1) any objection as to the admissibility of evidence,

28  competency of, relevancy of, materiality of, or privilege attaching to any such response; or (2) the

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
213 553 0308

EXHIBIT __16__
PAGE __107__

M 0892147

1 | right to object to other interrogatories or undertakings involving or reflecting the subject matter of
2 | the information requested herein. No response to these interrogatories constitutes or should be
3 | construed as an admission respecting relevancy or admissibility of the disclosed information, or the
4 | truth or accuracy of any statement, characterization or other fact contained in any response to these
5 | interrogatories. Defendant expressly does not concede the relevancy or materiality of any of these
6 | interrogatories or the subject matter to which they refer.

7 |     6.    The fact that Defendant has responded to or objected to any interrogatory or part
8 | thereof may not be taken as an admission about the existence or non-existence of any fact, or that
9 | such response constitutes relevant evidence. The fact that Defendant has responded to part or all of
10 | any interrogatory shall not be construed to be a waiver of any objection to part or all of any other
11 | interrogatory.

12 |     7.    Defendant objects to these interrogatories to the extent they seek information, the
13 | disclosure of which would violate any third parties' privacy rights and right to confidentiality.

14 | **RESPONSES TO INDIVIDUAL INTERROGATORIES**

15 | **SPECIAL INTERROGATORY NO. 1:**

16 |     Identify all COMMUNICATIONS with MATTEL concerning any negotiations related to
17 | MATTEL'S GENERAL MANAGER position.

18 | **RESPONSE TO SPECIAL INTERROGATORY NO. 1:**

19 |     Defendant incorporates by reference each of its General Responses and Objections.
20 | Defendant further objects to this interrogatory on the ground that the term "negotiations" is vague
21 | and ambiguous. Defendant additionally objects that the interrogatory is not full and complete in and
22 | of itself in violation of Code of Civil Procedure section 2030(c)(5). Defendant also objects to this
23 | interrogatory on the ground that it is unduly burdensome, oppressive and harassing because it seeks
24 | information equally available to and, in fact, actually possessed by Plaintiff. Defendant additionally
25 | objects to this interrogatory on the ground that the information sought is neither relevant to the
26 | subject matter of this action nor reasonably calculated to lead to the discovery of admissible
27 | evidence.

28 |

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2048 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

2.

DEFENDANT'S RESPONSES TO SPECIAL INTERROGATORIES – SET ONE

EXHIBIT __16__

PAGE ___108___

**M 0892148**

1  **SPECIAL INTERROGATORY NO. 2:**

2      Identify all COMMUNICATIONS with any person or entity other than MATTEL concerning

3  the negotiations related to MATTEL'S GENERAL MANAGER position.

4  **RESPONSE TO SPECIAL INTERROGATORY NO. 2:**

5      Defendant incorporates by reference each of its General Responses and Objections.

6  Defendant further objects to this interrogatory on the ground that the terms "entity" and

7  "negotiations" are vague and ambiguous. Defendant additionally objects that the interrogatory is not

8  full and complete in and of itself in violation of Code of Civil Procedure section 2030(c)(5).

9  Defendant also objects to this interrogatory on the ground that the information sought is neither

10  relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of

11  admissible evidence. Defendant additionally objects to this interrogatory on the ground that

12  disclosure of the information sought would violate the privacy rights of third parties to this litigation

13  under the Constitutions of the United States and the State of California and under common law

14  privacy principles. Defendant further objects to this interrogatory to the extent that the information

15  sought is protected from disclosure by the spousal privilege. Defendant also objects to this

16  interrogatory on the ground that it is unduly burdensome, oppressive and harassing to the extent that

17  it seeks information equally available to and, in fact, actually possessed by Plaintiff. Finally,

18  Defendant objects to this interrogatory to the extent that the information sought is protected from

19  disclosure by the attorney-client privilege and/or the attorney work-product doctrine.

20  **SPECIAL INTERROGATORY NO. 3:**

21      Identify all COMMUNICATIONS with MATTEL concerning any negotiations related to the

22  Employee Confidentiality and Inventions Agreement presented to you on March 9, 2004 and/or any

23  and all subsequent versions thereof.

24  **RESPONSE TO SPECIAL INTERROGATORY NO. 3:**

25      Defendant incorporates by reference each of its General Responses and Objections.

26  Defendant further objects to this interrogatory on the ground that the term "negotiations" is vague

27  and ambiguous. Defendant additionally objects that the interrogatory is not full and complete in and

28  of itself in violation of Code of Civil Procedure section 2030(c)(5). Defendant also objects to this

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310.553.0308

3.

EXHIBIT _16_
PAGE _109_

M 0892149

1   interrogatory on the ground that it is unduly burdensome, oppressive and harassing because it seeks

2   information equally available to and, in fact, actually possessed by Plaintiff.

3   **SPECIAL INTERROGATORY NO. 4:**

4        Identify all COMMUNICATIONS with any person or entity other than MATTEL concerning

5   the negotiations related to the Employee Confidentiality and Inventions Agreement presented to you

6   on March 9, 2004 and/or any and all subsequent versions thereof.

7   **RESPONSE TO SPECIAL INTERROGATORY NO. 4:**

8        Defendant incorporates by reference each of its General Responses and Objections.

9   Defendant further objects to this interrogatory on the ground that the terms "entity" and

10   "negotiations" are vague and ambiguous. Defendant additionally objects that the interrogatory is not

11   full and complete in and of itself in violation of Code of Civil Procedure section 2030(c)(5).

12   Defendant also objects to this interrogatory on the ground that disclosure of the information sought

13   would violate the privacy rights of third parties to this litigation under the Constitutions of the

14   United States and the State of California and under common law privacy principles. Defendant

15   additionally objects to this interrogatory to the extent that the information sought is protected from

16   disclosure by the attorney-client privilege and/or the attorney work-product doctrine. Defendant

17   further objects to this interrogatory to the extent that the information sought is protected from

18   disclosure by the spousal privilege.

19   **SPECIAL INTERROGATORY NO. 5:**

20        Identify all COMMUNICATIONS with MATTEL concerning whether YOU should or

21   should not execute the Employee Confidentiality and Inventions Agreement presented to you on

22   March 9, 2004 and/or any and all subsequent versions thereof.

23   **RESPONSE TO SPECIAL INTERROGATORY NO. 5:**

24        Defendant incorporates by reference each of its General Responses and Objections.

25   Defendant further objects to this interrogatory on the ground that the phrase "should or should not

26   execute" is vague and ambiguous. Defendant additionally objects that the interrogatory is not full

27   and complete in and of itself in violation of Code of Civil Procedure section 2030(c)(5). Defendant

28   also objects to this interrogatory on the ground that it is unduly burdensome and oppressive because

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles CA 90067 3107
310 553 0308

4.

DEFENDANT'S RESPONSES TO SPECIAL INTERROGATORIES – SET ONE



EXHIBIT __16__
PAGE __110__

M 0892150

1  it seeks information equally available to and, in fact, actually possessed by Plaintiff.

2  **SPECIAL INTERROGATORY NO. 6:**

3  Identify all COMMUNICATIONS with any person or entity other than MATTEL concerning
4  whether YOU should or should not execute the Employee Confidentiality and Inventions Agreement
5  presented to you on March 9, 2004 and/or any and all subsequent versions thereof.

6  **RESPONSE TO SPECIAL INTERROGATORY NO. 6:**

7  Defendant incorporates by reference each of its General Responses and Objections.
8  Defendant further objects to this interrogatory on the ground that the phrase "should or should not
9  execute" is vague and ambiguous. Defendant additionally objects that the interrogatory is not full
10  and complete in and of itself in violation of Code of Civil Procedure section 2030(c)(5). Defendant
11  also objects to this interrogatory on the ground that disclosure of the information sought would
12  violate the privacy rights of third parties to this litigation under the Constitutions of the United States
13  and the State of California and under common law privacy principles. Defendant additionally
14  objects to this interrogatory to the extent that the information sought is protected from disclosure by
15  the attorney-client privilege and/or the attorney work-product doctrine. Defendant further objects to
16  this interrogatory to the extent that the information sought is protected from disclosure by the
17  spousal privilege.

18  **SPECIAL INTERROGATORY NO. 7:**

19  Identify all COMMUNICATIONS, occurring while YOU were employed by MATTEL,
20  between YOU and any entity other than MATTEL that was or that you understood planned to be in
21  the business of designing, manufacturing and/or marketing toys, concerning employment
22  opportunities for YOU.

23  **RESPONSE TO SPECIAL INTERROGATORY NO. 7:**

24  Defendant incorporates by reference each of its General Responses and Objections.
25  Defendant further objects to this interrogatory on the ground that the phrase "that was or that you
26  understood planned to be in the business of" is vague and ambiguous. Defendant additionally
27  objects that the interrogatory is not full and complete in and of itself in violation of Code of Civil
28  Procedure section 2030(c)(5). Defendant also objects to this request on the ground that disclosure of

LITTLER MENDELSON
7 Penn Center, Corporatimo
2049 Century Park East
5th Floor
Los Angeles, CA 90067 2167
310 553 0308

5.

EXHIBIT __16__
PAGE ___111___

M 0892151

1   the information sought would violate Defendant's right to privacy.  Defendant also objects to this

2   interrogatory to the extent that the information sought is protected from disclosure by the attorney-

3   client privilege and/or the attorney work-product doctrine.    Defendant also objects to this

4   interrogatory on the ground that it is unduly burdensome, oppressive and harassing to the extent that

5   it seeks information equally available to and, in fact, actually possessed by Plaintiff.  Defendant

6   further objects to this interrogatory on the ground that it is overly broad.  Defendant additionally

7   objects to this interrogatory on the ground that it infringes upon the California public policy in favor

8   of employee mobility.

9   **SPECIAL INTERROGATORY NO. 8:**

10      Identify every person with whom you communicated regarding YOUR dissatisfaction with

11  YOUR employment with MATTEL from April 1, 2004 through October 1, 2004.

12  **RESPONSE TO SPECIAL INTERROGATORY NO. 8:**

13      Defendant incorporates by reference each of its General Responses and Objections.

14  Defendant further objects to this interrogatory on the ground that the term "dissatisfaction" is vague

15  and ambiguous.  Defendant additionally objects that the interrogatory is not full and complete in and

16  of itself in violation of Code of Civil Procedure section 2030(c)(5).  Defendant also objects to this

17  interrogatory on the ground that disclosure of the information sought would violate Defendant's

18  privacy rights as well as the privacy rights of third parties to this litigation under the Constitutions of

19  the United States and the State of California and under common law privacy principles.  Defendant

20  additionally objects to this interrogatory on the ground that it is overly broad and seeks information

21  neither relevant to the subject matter of this action nor reasonably calculated to lead to the discovery

22  of admissible evidence.  Defendant also objects to this interrogatory on the ground that it is unduly

23  burdensome, oppressive and harassing to the extent that it seeks information equally available to

24  and, in fact, actually possessed by Plaintiff.  Defendant also objects to this interrogatory to the extent

25  that the information sought is protected from disclosure by the attorney-client privilege and/or the

26  attorney work-product doctrine.  Defendant further objects to this interrogatory to the extent that the

27  information sought is protected from disclosure by the spousal privilege.

28

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA  90067 3107
310.553.0308

6.



EXHIBIT __16__

PAGE __12__

M 0892152

1  SPECIAL INTERROGATORY NO. 9:

2      Identify every meeting that YOU attended from June 1, 2004 through October 1, 2004 where

3  MATTEL'S PROPRIETARY INFORMATION was disclosed and/or discussed.

4  RESPONSE TO SPECIAL INTERROGATORY NO. 9:

5      Defendant incorporates by reference each of its General Responses and Objections.

6  Defendant further objects to this interrogatory on the ground that the term "meeting" is vague and

7  ambiguous. Defendant additionally objects that the interrogatory is not full and complete in and of

8  itself in violation of Code of Civil Procedure section 2030(c)(5). Defendant also objects to this

9  interrogatory on the ground that the term "PROPRIETARY INFORMATION" assumes facts that

10 have not been established in this litigation – specifically, that the items defined as "PROPRIETARY

11 INFORMATION" constitute confidential information. Defendant also objects to this interrogatory

12 on the ground that it is unduly burdensome, oppressive and harassing because it seeks information

13 equally available to and, in fact, actually possessed by Plaintiff.

14     Subject to and without waiving the foregoing general and specific objections, Defendant

15 responds as follows: Other than meetings Defendant attended in connection with his Mattel

16 employment, he has not engaged in any non-privileged communication or meetings during which

17 Mattel's "Proprietary Information" was discussed or disclosed.

18 SPECIAL INTERROGATORY NO. 10:

19     Describe, with specificity, every DOCUMENT that YOU received and/or created from June

20 1, 2004 through October 1, 2004 that discussed and/or disclosed MATTEL'S PROPRIETARY

21 INFORMATION.

22 RESPONSE TO SPECIAL INTERROGATORY NO. 10:

23     Defendant incorporates by reference each of its General Responses and Objections.

24 Defendant additionally objects that the interrogatory is not full and complete in and of itself in

25 violation of Code of Civil Procedure section 2030(c)(5). Defendant further objects to this

26 interrogatory on the ground that the term "PROPRIETARY INFORMATION" assumes facts that

27 have not been established in this litigation – specifically, that the items defined as "PROPRIETARY

28 INFORMATION" constitute confidential information. Defendant also objects to this interrogatory

7.

EXHIBIT 16
PAGE 113

M 0892153

1    on the ground that it is unduly burdensome, oppressive and harassing because it seeks information
2    equally available to and, in fact, actually possessed by Plaintiff.

3        Subject to and without waiving the foregoing general and specific objections, Defendant
4    responds as follows: Defendant has conducted a diligent search and a reasonable inquiry in an effort
5    to respond to this interrogatory and, to his best knowledge, information and belief, Defendant has no
6    responsive documents in his possession, custody or control.

7    **SPECIAL INTERROGATORY NO. 11:**

8        Identify all COMMUNICATIONS between YOU and any person not employed by
9    MATTEL regarding MATTEL'S licenses, licensors, and licensees from April 1, 2004 through the
10   present.

11   **RESPONSE TO SPECIAL INTERROGATORY NO. 11:**

12       Defendant incorporates by reference each of its General Responses and Objections.
13   Defendant also objects to this interrogatory on the ground that it is unduly burdensome, oppressive
14   and harassing because it seeks information equally available to and, in fact, actually possessed by
15   Plaintiff. Defendant additionally objects that the interrogatory is not full and complete in and of
16   itself in violation of Code of Civil Procedure section 2030(c)(5). Defendant also objects to this
17   interrogatory on the ground that it is unduly burdensome, oppressive and harassing to the extent that
18   it seeks information equally available to and, in fact, actually possessed by Plaintiff. Defendant also
19   objects to this interrogatory to the extent that the information sought is protected from disclosure by
20   the attorney-client privilege and/or the attorney work-product doctrine.

21   **SPECIAL INTERROGATORY NO. 12:**

22       Identify all COMMUNICATIONS between YOU and MGA, occurring while YOU were
23   employed by MATTEL, including, without limitation, emails, telephone calls, and face to face
24   meetings.

25   **RESPONSE TO SPECIAL INTERROGATORY NO. 12:**

26       Defendant incorporates by reference each of its General Responses and Objections.
27   Defendant also objects to this interrogatory on the ground that it calls for the disclosure of trade
28   secrets and/or other proprietary and highly confidential business information of third party MGA.

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310.553.0308

8.



EXHIBIT _16_
PAGE _114_

M 0892154

1  Defendant additionally objects that the interrogatory is not full and complete in and of itself in
2  violation of Code of Civil Procedure section 2030(c)(5). Defendant additionally objects to this
3  interrogatory on the ground that it is overly broad, unduly burdensome and oppressive. Defendant
4  also objects to this request on the ground that disclosure of the information sought would violate
5  Defendant's right to privacy. Defendant also objects to this interrogatory on the ground that the
6  information sought is neither relevant to the subject matter of this action nor reasonably calculated to
7  lead to the discovery of admissible evidence. Defendant also objects to this interrogatory to the
8  extent that the information sought is protected from disclosure by the attorney-client privilege and/or
9  the attorney work-product doctrine.

10  Subject to and without waiving the foregoing general and specific objections, Defendant
11  responds as follows: At no time has Defendant disclosed to MGA Plaintiff's proprietary,
12  confidential or trade secret information during any meetings, communications or otherwise that
13  occurred before or after Defendant's employment with Mattel ended.

14  **SPECIAL INTERROGATORY NO. 13:**

15  For each communication identified in Interrogatory No. 12, identify each person who sent,
16  received, or was present at each communication.

17  **RESPONSE TO SPECIAL INTERROGATORY NO. 13:**

18  Defendant incorporates by reference each of its General Responses and Objections.
19  Defendant also objects to this interrogatory on the ground that the information sought is neither
20  relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of
21  admissible evidence. Defendant additionally objects to this interrogatory on the ground that it is
22  overly broad, unduly burdensome and oppressive. Defendant also objects to this request on the
23  ground that disclosure of the information sought would violate Defendant's right to privacy.
24  Defendant also objects to this interrogatory to the extent that the information sought is protected
25  from disclosure by the attorney-client privilege and/or the attorney work-product doctrine.
26  Defendant further objects to this interrogatory to the extent that the information sought is protected
27  from disclosure by the spousal privilege.

28

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

9.

EXHIBIT _16_
PAGE _115_

M 0892155

1   **SPECIAL INTERROGATORY NO. 14:**

2        For each communication identified in Interrogatory No. 12, identify the location you were at

3   when each communication took place.

4   **RESPONSE TO SPECIAL INTERROGATORY NO. 14:**

5        Defendant incorporates by reference each of its General Responses and Objections.

6   Defendant further objects to this interrogatory on the ground that the information sought is neither

7   relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of

8   admissible evidence. Defendant also objects to this interrogatory on the ground that it is overly

9   broad, unduly burdensome and oppressive. Defendant also objects to this request on the ground that

10   disclosure of the information sought would violate Defendant's right to privacy. Defendant also

11   objects to this interrogatory to the extent that the information sought is protected from disclosure by

12   the attorney-client privilege and/or the attorney work-product doctrine. Defendant further objects to

13   this interrogatory to the extent that the information sought is protected from disclosure by the

14   spousal privilege

15   **SPECIAL INTERROGATORY NO. 15:**

16        For each communication identified in Interrogatory No. 12, describe, with specificity, the

17   contents of the communication, including, without limitation, all of the topics discussed.

18   **RESPONSE TO SPECIAL INTERROGATORY NO. 15:**

19        Defendant incorporates by reference each of its General Responses and Objections.

20   Defendant also objects to this interrogatory on the ground that it calls for the disclosure of trade

21   secrets and/or other proprietary and highly confidential business information of third party MGA.

22   Defendant additionally objects to this interrogatory on the ground that it is overly broad, unduly

23   burdensome and oppressive. Defendant also objects to this request on the ground that disclosure of

24   the information sought would violate Defendant's right to privacy. Defendant also objects to this

25   interrogatory on the ground that the information sought is neither relevant to the subject matter of

26   this action nor reasonably calculated to lead to the discovery of admissible evidence. Defendant also

27   objects to this interrogatory to the extent that the information sought is protected from disclosure by

28   the attorney-client privilege and/or the attorney work-product doctrine. Defendant further objects to

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310 553 0308

10.



EXHIBIT __16__

PAGE __116__

M 0892156

1  this interrogatory to the extent that the information sought is protected from disclosure by the
2  spousal privilege.

3  SPECIAL INTERROGATORY NO. 16:

4  For each communication identified in Interrogatory No. 12, identify any and all
5  DOCUMENTS reviewed or discussed in the communication.

6  RESPONSE TO SPECIAL INTERROGATORY NO. 16:

7  Defendant incorporates by reference each of its General Responses and Objections.
8  Defendant also objects to this interrogatory on the ground that it calls for the disclosure of trade
9  secrets and/or other proprietary and highly confidential business information of third party MGA.
10  Defendant additionally objects that the interrogatory is not full and complete in and of itself in
11  violation of Code of Civil Procedure section 2030(c)(5). Defendant additionally objects to this
12  interrogatory on the ground that it is overly broad, unduly burdensome and oppressive. Defendant
13  also objects to this request on the ground that disclosure of the information sought would violate
14  Defendant's right to privacy. Defendant also objects to this interrogatory on the ground that the
15  information sought is neither relevant to the subject matter of this action nor reasonably calculated to
16  lead to the discovery of admissible evidence. Defendant also objects to this interrogatory to the
17  extent that the information sought is protected from disclosure by the attorney-client privilege and/or
18  the attorney work-product doctrine. Defendant further objects to this interrogatory to the extent that
19  the information sought is protected from disclosure by the spousal privilege.

20  SPECIAL INTERROGATORY NO. 17:

21  Identify the person who was YOUR primary contact at MGA regarding your potential
22  employment with MGA.

23  RESPONSE TO SPECIAL INTERROGATORY NO. 17:

24  Defendant incorporates by reference each of its General Responses and Objections.
25  Defendant further objects to this interrogatory on the ground that the term "primary contact" is
26  vague and ambiguous. Defendant additionally objects that the interrogatory is not full and complete
27  in and of itself in violation of Code of Civil Procedure section 2030(c)(5). Defendant additionally
28  objects to this interrogatory on the ground that the information sought is neither relevant to the

11.

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

EXHIBIT __16__
PAGE __117__

M 0892157

1    subject matter of this action nor reasonably calculated to lead to the discovery of admissible
2    evidence. Defendant also objects to this request on the ground that disclosure of the information
3    sought would violate Defendant's privacy rights as well as the privacy rights of third parties to this
4    litigation under the Constitutions of the United States and the State of California and under common
5    law privacy principles. Defendant also objects to this interrogatory on the ground that the
6    information sought is neither relevant to the subject matter of this action nor reasonably calculated to
7    lead to the discovery of admissible evidence. Defendant also objects to this interrogatory to the
8    extent that the information sought is protected from disclosure by the attorney-client privilege and/or
9    the attorney work-product doctrine.

10   **SPECIAL INTERROGATORY NO. 18:**

11       Identify all DOCUMENTS concerning or containing MATTEL'S PROPRIETARY
12   INFORMATION that YOU retained after September 17, 2004, including, without limitation, contact
13   lists, address books, rolodexes, agendas, calendars, appointment books, telephone logs, message
14   books, meeting notes, and electronic documents.

15   **RESPONSE TO SPECIAL INTERROGATORY NO. 18:**

16       Defendant incorporates by reference each of its General Responses and Objections.
17   Defendant additionally objects that the interrogatory is not full and complete in and of itself in
18   violation of Code of Civil Procedure section 2030(c)(5). Defendant further objects to this
19   interrogatory on the ground that the term "PROPRIETARY INFORMATION" assumes facts that
20   have not been established in this litigation – specifically, that the items defined as "PROPRIETARY
21   INFORMATION" constitute confidential information. Defendant also objects to this interrogatory
22   on the ground that it is unduly burdensome, oppressive and harassing to the extent that it seeks
23   information equally available to and, in fact, actually possessed by Plaintiff.

24       Subject to and without waiving the foregoing general and specific objections, Defendant
25   responds as follows: Defendant has conducted a diligent search and a reasonable inquiry in an effort
26   to respond to this interrogatory and, to his best knowledge, information and belief, Defendant has no
27   responsive documents in his possession, custody or control.

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310.553.0308

12.

EXHIBIT _16_
PAGE _118_

M 0892158

1 **SPECIAL INTERROGATORY NO. 19:**

2     For all DOCUMENTS identified in response to Interrogatory No. 18, state whether copies or

3 duplicates of any of the DOCUMENTS have been made.

4 **RESPONSE TO SPECIAL INTERROGATORY NO. 19:**

5     This interrogatory is not applicable because no documents were identified in response to

6 Interrogatory No. 18.

7 **SPECIAL INTERROGATORY NO. 20:**

8     For all DOCUMENTS identified in response to Interrogatory No. 18, state the location of

9 each DOCUMENT and all copies from September 17, 2004 through the present.

10 **RESPONSE TO SPECIAL INTERROGATORY NO. 20:**

11     This interrogatory is not applicable because no documents were identified in response to

12 Interrogatory No. 18.

13 **SPECIAL INTERROGATORY NO. 21:**

14     For all DOCUMENTS identified in response to Interrogatory No. 18, state whether, how, and

15 by whom each or any of the DOCUMENTS has been used from September 17,2004 to the present.

16 **RESPONSE TO SPECIAL INTERROGATORY NO. 21:**

17     This interrogatory is not applicable because no documents were identified in response to

18 Interrogatory No. 18.

19 **SPECIAL INTERROGATORY NO. 22:**

20     Identify all employment contracts or agreements between YOU and MGA, including,

21 without limitation, letters and/or memoranda of understanding, any agreements concerning

22 indemnification or provision of counsel to YOU, and any duties of confidentiality, non-competition,

23 or non-solicitation that YOU have been requested to assume toward MGA.

24 **RESPONSE TO SPECIAL INTERROGATORY NO. 22:**

25     Defendant incorporates by reference each of its General Responses and Objections.

26 Defendant additionally objects that the interrogatory is not full and complete in and of itself in

27 violation of Code of Civil Procedure section 2030(c)(5). Defendant also objects to this interrogatory

28 on the ground that it calls for the disclosure of trade secrets and/or other proprietary and highly

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA  90067 3107
310 553 0308

13.

DEFENDANT'S RESPONSES TO SPECIAL INTERROGATORIES – SET ONE

EXHIBIT 16
PAGE 119

M 0892159

1  confidential business information of third party MGA. Defendant additionally objects to this
2  interrogatory on the ground that the information sought is neither relevant to the subject matter of
3  this action nor reasonably calculated to lead to the discovery of admissible evidence. Defendant also
4  objects to this request on the ground that disclosure of the information sought would violate
5  Defendant's right to privacy. Defendant additionally objects to this interrogatory to the extent that
6  the information sought is protected from disclosure by the attorney-client privilege and/or the
7  attorney work-product doctrine.

8  **SPECIAL INTERROGATORY NO. 23:**

9  For each employment contract or agreement identified in Interrogatory No. 22, provide the
10  date that the contract or agreement was entered into.

11  **RESPONSE TO SPECIAL INTERROGATORY NO. 23:**

12  Defendant incorporates by reference each of its General Responses and Objections.
13  Defendant also objects to this interrogatory on the ground that the information sought is neither
14  relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of
15  admissible evidence. Defendant also objects to this request on the ground that disclosure of the
16  information sought would violate Defendant's right to privacy.

17  **SPECIAL INTERROGATORY NO. 24:**

18  Describe YOUR job duties and responsibilities during YOUR employment with MGA,
19  including, without limitation, identifying the projects which YOU are assigned, the employees that
20  YOU supervise, and the product lines that YOU support.

21  **RESPONSE TO SPECIAL INTERROGATORY NO. 24:**

22  Defendant incorporates by reference each of its General Responses and Objections.
23  Defendant additionally objects that the interrogatory is not full and complete in and of itself in
24  violation of Code of Civil Procedure section 2030(c)(5). Defendant further objects to this
25  interrogatory on the ground that it calls for the disclosure of trade secrets and/or other proprietary
26  and highly confidential business information of third party MGA. Defendant additionally objects to
27  this interrogatory on the ground that it is overly broad and seeks information that is neither relevant
28  to the subject matter of this action nor reasonably calculated to lead to the discovery of admissible

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310.553.0308

14.

DEFENDANT'S RESPONSES TO SPECIAL INTERROGATORIES – SET ONE



EXHIBIT _16_
PAGE _120_

M 0892160

1   evidence. Defendant also objects to this request on the ground that disclosure of the information

2   sought would violate Defendant's right to privacy. Defendant also objects to this interrogatory on

3   the ground that it is unduly burdensome, oppressive and harassing.

4   **SPECIAL INTERROGATORY NO. 25:**

5        Identify YOUR compensation or method of compensation at MGA, including salary,

6   incentives, bonuses, equity, stock options, loans, or other things of value.

7   **RESPONSE TO SPECIAL INTERROGATORY NO. 25:**

8        Defendant incorporates by reference each of its General Responses and Objections.

9   Defendant further objects to this interrogatory on the ground that the phrase "method of

10   compensation" is vague and ambiguous. Defendant additionally objects that the interrogatory is not

11   full and complete in and of itself in violation of Code of Civil Procedure section 2030(c)(5).

12   Defendant also objects to this interrogatory on the ground that it calls for the disclosure of trade

13   secrets and/or other proprietary and highly confidential business information of third party MGA.

14   Defendant additionally objects to this interrogatory on the ground that the information sought is

15   neither relevant to the subject matter of this action nor reasonably calculated to lead to the discovery

16   of admissible evidence. Defendant also objects to this request on the ground that disclosure of the

17   information sought would violate Defendant's right to privacy. Defendant also objects to this

18   interrogatory on the ground that it is unduly burdensome, oppressive and harassing.

19   **SPECIAL INTERROGATORY NO. 26:**

20        Describe with particularity all business plans YOU have created or participated in creating on

21   MGA's behalf.

22   **RESPONSE TO SPECIAL INTERROGATORY NO. 26:**

23        Defendant incorporates by reference each of its General Responses and Objections.

24   Defendant further objects to this interrogatory on the ground that the term "business plans" is vague

25   and ambiguous. Defendant additionally objects that the interrogatory is not full and complete in and

26   of itself in violation of Code of Civil Procedure section 2030(c)(5). Defendant also objects to this

27   interrogatory on the ground that it calls for the disclosure of trade secrets and/or other proprietary

28   and highly confidential business information of third party MGA. Defendant additionally objects to

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310.553.0308

15.

DEFENDANT'S RESPONSES TO SPECIAL INTERROGATORIES – SET ONE



EXHIBIT 16
PAGE 121

M 0892161

1  this interrogatory on the ground that the information sought is neither relevant to the subject matter

2  of this action nor reasonably calculated to lead to the discovery of admissible evidence.

3  **SPECIAL INTERROGATORY NO. 27:**

4      Describe with particularity all sales plans YOU have created or participated in creating on

5  MGA's behalf.

6  **RESPONSE TO SPECIAL INTERROGATORY NO. 27:**

7      Defendant incorporates by reference each of its General Responses and Objections.

8  Defendant additionally objects that the interrogatory is not full and complete in and of itself in

9  violation of Code of Civil Procedure section 2030(c)(5).  Defendant further objects to this

10  interrogatory on the ground that the term "sales plans" is vague and ambiguous.  Defendant also

11  objects to this interrogatory on the ground that it calls for the disclosure of trade secrets and/or other

12  proprietary and highly confidential business information of third party MGA.  Defendant

13  additionally objects to this interrogatory on the ground that the information sought is neither relevant

14  to the subject matter of this action nor reasonably calculated to lead to the discovery of admissible

15  evidence.

16  **SPECIAL INTERROGATORY NO. 28:**

17      Describe with particularity all marketing plans YOU have created or participated in creating

18  on MGA's behalf.

19  **RESPONSE TO SPECIAL INTERROGATORY NO. 28:**

20      Defendant incorporates by reference each of its General Responses and Objections.

21  Defendant incorporates by reference each of its General Responses and Objections.  Defendant

22  additionally objects that the interrogatory is not full and complete in and of itself in violation of

23  Code of Civil Procedure section 2030(c)(5).  Defendant further objects to this interrogatory on the

24  ground that the term "marketing plans" is vague and ambiguous.  Defendant also objects to this

25  interrogatory on the ground that it calls for the disclosure of trade secrets and/or other proprietary

26  and highly confidential business information of third party MGA.  Defendant additionally objects to

27  this interrogatory on the ground that the information sought is neither relevant to the subject matter

28  of this action nor reasonably calculated to lead to the discovery of admissible evidence.

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles CA 90067-3107
310 553 0308
16.

DEFENDANT'S RESPONSES TO SPECIAL INTERROGATORIES – SET ONE

EXHIBIT _16_
PAGE _122_

M 0892162

1   **SPECIAL INTERROGATORY NO. 29:**

2   Identify all persons that received an announcement from YOU or MGA concerning YOUR

3   employment with MGA.

4   **RESPONSE TO SPECIAL INTERROGATORY NO. 29:**

5   Defendant incorporates by reference each of its General Responses and Objections.

6   Defendant further objects to this interrogatory on the ground that the term "announcement" is vague

7   and ambiguous. Defendant additionally objects that the interrogatory is not full and complete in and

8   of itself in violation of Code of Civil Procedure section 2030(c)(5). Defendant also objects to this

9   interrogatory on the ground that it calls for the disclosure of trade secrets and/or other proprietary

10  and highly confidential business information of third party MGA. Defendant additionally objects to

11  this interrogatory on the ground that the information sought is neither relevant to the subject matter

12  of this action nor reasonably calculated to lead to the discovery of admissible evidence. Defendant

13  also objects to this request on the ground that disclosure of the information sought would violate

14  Defendant's right to privacy.

15  **SPECIAL INTERROGATORY NO. 30:**

16  Identify all of MATTEL'S current or past employees YOU have contacted or assisted others

17  in contacting, directly or indirectly, about possible employment with MGA.

18  **RESPONSE TO SPECIAL INTERROGATORY NO. 30:**

19  Defendant incorporates by reference each of its General Responses and Objections.

20  Defendant further objects to this interrogatory on the ground that the information sought is neither

21  relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of

22  admissible evidence. Defendant additionally objects that the interrogatory is not full and complete

23  in and of itself in violation of Code of Civil Procedure section 2030(c)(5). Defendant also objects to

24  this interrogatory on the ground that it is unduly burdensome, oppressive and harassing to the extent

25  that it seeks information equally available to and, in fact, actually possessed by Plaintiff. Defendant

26  also objects to this interrogatory to the extent that it seeks information concerning Mattel's past

27  employees on the ground that disclosure of the information sought would violate the privacy rights

28  of third parties to this litigation under the Constitutions of the United States and the State of

LITTLER MENDELSON
A Professional Corporation
2048 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310 553 0308

17.



EXHIBIT _16_
PAGE _123_

M 0892163

1   California and under common law privacy principles.

2   **SPECIAL INTERROGATORY NO. 31:**

3   Describe, with specificity, what precautions YOU have taken to protect MATTEL'S
4   PROPRIETARY INFORMATION from being used by or disclosed to MGA.

5   **RESPONSE TO SPECIAL INTERROGATORY NO. 31:**

6   Defendant incorporates by reference each of its General Responses and Objections.
7   Defendant additionally objects that the interrogatory is not full and complete in and of itself in
8   violation of Code of Civil Procedure section 2030(c)(5). Defendant further objects to this
9   interrogatory on the ground that the term "precautions" is vague and ambiguous. Defendant also
10  objects to this interrogatory on the ground that the term "PROPRIETARY INFORMATION"
11  assumes facts that have not been established in this litigation – specifically, that the items defined as
12  "PROPRIETARY INFORMATION" constitute confidential information.

13  Subject to and without waiving the foregoing general and specific objections, Defendant
14  responds as follows: Cognizant of any potential duty or obligation relating to his employment with
15  Mattel and as an express condition of his employment with MGA, Defendant agreed that he would
16  not disclose or use the confidential, trade secret or proprietary information of Plaintiff in connection
17  with him employment with MGA or otherwise, and Defendant has and continues to refrain from
18  disclosing or using such information.

19  **SPECIAL INTERROGATORY NO. 32:**

20  Describe, with specificity, any precautions that MGA has implemented, that you are aware
21  of, to ensure that MGA does not receive or use, including inadvertently, any of MATTEL'S
22  PROPRIETARY INFORMATION.

23  **RESPONSE TO SPECIAL INTERROGATORY NO. 32:**

24  Defendant incorporates by reference each of its General Responses and Objections.
25  Defendant additionally objects that the interrogatory is not full and complete in and of itself in
26  violation of Code of Civil Procedure section 2030(c)(5). Defendant further objects to this
27  interrogatory on the ground that the terms "precautions" and "implemented" are vague and
28  ambiguous. Defendant also objects to this interrogatory on the ground that the term

18.

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

EXHIBIT _16_
PAGE _124_

M 0892164

1    "PROPRIETARY INFORMATION" assumes facts that have not been established in this litigation –

2    specifically, that the items defined as "PROPRIETARY INFORMATION" constitute confidential

3    information.

4        Subject to and without waiving the foregoing general and specific objections, Defendant

5    responds as follows: Cognizant of any potential duty or obligation relating to his employment with

6    Mattel and as an express condition of his employment with MGA, MGA insisted and Defendant

7    agreed that he would not disclose or use the confidential, trade secret or proprietary information of

8    Plaintiff in connection with him employment with MGA or otherwise, and Defendant has and

9    continues to refrain from disclosing or using such information.

10    **SPECIAL INTERROGATORY NO. 33:**

11        Identify any documents or information that YOU have provided to any third parties,

12    including MGA, concerning MATTEL'S PROPRIETARY INFORMATION.

13    **RESPONSE TO SPECIAL INTERROGATORY NO. 33:**

14        Defendant incorporates by reference each of its General Responses and Objections.

15    Defendant additionally objects that the interrogatory is not full and complete in and of itself in

16    violation of Code of Civil Procedure section 2030(c)(5). Defendant further objects to this

17    interrogatory on the ground that the term "PROPRIETARY INFORMATION" assumes facts that

18    have not been established in this litigation – specifically, that the items defined as "PROPRIETARY

19    INFORMATION" constitute confidential information. Defendant also objects to this interrogatory

20    to the extent that the information sought is protected from disclosure by the attorney-client privilege

21    and/or the attorney work-product doctrine.

22        Subject to and without waiving the foregoing general and specific objections, Defendant

23    responds as follows: None.

24    **SPECIAL INTERROGATORY NO. 34:**

25        Identify every person who has had any COMMUNICATION with or relating to YOU about

26    any of the matters raised in this litigation, including whether YOU should or will comply with

27    YOUR legal and contractual obligations to MATTEL.

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310 553.0308

19.

DEFENDANT'S RESPONSES TO SPECIAL INTERROGATORIES – SET ONE



EXHIBIT __16__
PAGE __125__

M 0892165

**RESPONSE TO SPECIAL INTERROGATORY NO. 34:**

Defendant incorporates by reference each of its General Responses and Objections. Defendant additionally objects that the interrogatory is not full and complete in and of itself in violation of Code of Civil Procedure section 2030(c)(5). Defendant further objects to this interrogatory on the ground that the phrase "legal and contractual obligations" is vague and ambiguous. Defendant also objects to this interrogatory on the ground that it assumes facts that have not been established in this action – specifically, that Defendant has contractual obligations to Plaintiff. Defendant additionally objects to this interrogatory to the extent that the information sought is protected from disclosure by the attorney-client privilege and/or the attorney work-product doctrine. Defendant further objects to this interrogatory to the extent that the information sought is protected from disclosure by the spousal privilege.

Dated: December 1, 2004

_/s/ C. Wickham_

DOUGLAS A. WICKHAM
LITTLER MENDELSON
A Professional Corporation

Attorneys for Defendant
RONALD BRAWER

Los_Angeles:383188.1 028307.1015

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310.553.0308

20.

EXHIBIT _16_
PAGE _126_

M 0892166

1   <u>VERIFICATION</u>

2   I have read the foregoing DEFENDANT RONALD BRAWER'S RESPONSE TO

3   PLAINTIFF'S SPECIAL INTERROGATORIES – SET ONE and know its contents.

4   ☒   I am a party to this action. The matters stated in it are true of my own knowledge
5   except as to those matters which are stated on information and belief, and as to
    those matters I believe them to be true.

6

7   ☐   I am the _____, a party to this action, and am
    authorized to make this verification for and on its behalf, and I make this
8   verification for that reason. I have read the foregoing documents. I am informed
    and believe and on that ground allege that the matters stated in them are true.

9

10   ☐   I am one of the attorneys of record for _____, a
    party to this action. Such party is absent from the county in which I have my
11   office, and I make this verification for and on behalf of that party for that reason. I
    have read the foregoing document(s). I am informed and believe and on that
12   ground allege that the matters stated in it are true.

13   Executed at Los Angeles, California on this _9_ day of December, 2004.

14   I declare under penalty of perjury under the laws of the State of California that the

15   foregoing is true and correct.

16

17                                           _____
                                              Ronald Brawer

18   Los_Angeles:385741.1 028307.1015

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON

VERIFICATION

EXHIBIT _16_
PAGE _127_

M 0892167

1  ## PROOF OF SERVICE BY OVERNIGHT DELIVERY

2  I am employed in Los Angeles County, California. I am over the age of eighteen

3  years and not a party to the within-entitled action. My business address is 2049 Century Park East,

4  5th Floor, Los Angeles, California 90067.3107. On December 1, 2004, I deposited with Federal

5  Express, a true and correct copy of the within documents:

6  **DEFENDANT RONALD BRAWER'S RESPONSE TO**
   **PLAINTIFF'S SPECIAL INTERROGATORIES – SET ONE**

7

8  in a sealed envelope, addressed as follows:

9  Glenn D. Dassoff, Esq.
   Elena R. Baca, Esq.
10 Samantha J. Black, Esq.
11 PAUL, HASTINGS, JANOFSKY & WALKER LLP
   695 Town Center Drive
12 Seventeenth Floor
   Costa Mesa, CA 92626.1924
13

14 Following ordinary business practices, the envelope was sealed and placed for

15 collection by Federal Express on this date, and would, in the ordinary course of business, be

16 retrieved by Federal Express for overnight delivery on this date.

17 I declare under penalty of perjury under the laws of the State of California that the

18 above is true and correct.

19 Executed on December 1, 2004, at Los Angeles, California.

20

21

22 D. Sebi-Ra Keller

23

24

25

26

27

28

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310.553.0308

Los_Angeles:385976.1 028307.1015

PROOF OF SERVICE

EXHIBIT __16__
PAGE __128__

M 0892168

# EXHIBIT 17

This exhibit is filed
under seal
pursuant
to
protective order

# EXHIBIT 18

This exhibit is filed
under seal
pursuant
to
protective order

# EXHIBIT 19

**From:** DiCanio, Jack P [mailto:Jack.DiCanio@skadden.com]
**Sent:** Thursday, January 24, 2008 8:07 PM
**To:** Dominic Surprenant
**Cc:** Diane Hutnyan
**Subject:** RE: Brawer deposition

Dominick,

We look forward to the production of the documents, and I have left a message for Mr. Brawer to see if he is available for his deposition in the UK on the 6th. Because of the time difference, I don't expect to hear from him until tomorrow. It is my understanding that the parties have been bearing their own costs for the production of responsive documents. Please explain why you believe it is appropriate to treat this production differently.

I disagree with your assertion that Ms. Hutnyan's letter answered our questions regarding the manner in which Mattel came into possession of the documents. Ms. Hutnyan has vaguely told us in the past that the documents were "from Mr. Brawer" and in her most recent letter she indicated that QE "received" the documents from Paul Hastings, who I believe was Mattel's counsel in its litigation against Mr. Brawer.

If the documents were "from Mr. Brawer," I do not understand how information relating to the circumstances of that purported production could constitute attorney work product. The circumstances of the purported production must be addressed because we have learned that Mattel may have conducted an improper search of Mr. Brawer's New York apartment, and the documents at issue may have been obtained from that improper search. Please give me a call tomorrow and let's see if we can come to an acceptable resolution of this last remaining issue. Thanks, J.

**Jack DiCanio**
**Skadden, Arps, Slate, Meagher & Flom LLP**
300 South Grand Ave. | Suite 3400 | Los Angeles, CA | 90071
T: (213) 687-5430 | F: (213) 621-5430 | E: jdicanio@skadden.com

**Theresa Ben-Tov, Assistant to Jack DiCanio**
T: (213) 687-5417 | E: tbentov@skadden.com

**From:** Dominic Surprenant [mailto:dominicsurprenant@quinnemanuel.com]

1/25/2008

EXHIBIT _19_
PAGE _165_

**Sent:** Thursday, January 24, 2008 3:07 PM
**To:** DiCanio, Jack P (LAC)
**Cc:** Diane Hutnyan
**Subject:** RE: Brawer deposition

Jack,

Subject to check, we can make the documents available to you, or provide a copy of them at your expense, by Monday.

We want a signed stipulation by 1/28 that you will produce Mr. Brawer for deposition on or before 2/6 or we will file an ex parte application with Judge Larsen to compel Mr. Brawer's appearance. (Wednesday, Feb. 6th is our preferred date if you insist on going forward in London; we can do it earlier in LA.)We believe that the court has already ordered Mr. Brawer to appear for deposition, and that MGA agreed to produce him for deposition, knowing everything about the documents about which you now complain.

With respect to your questions, Diane has provided you the information that you are entitled to, and we will not provide you any additional information. The information you seek is protected by the attorney work product doctrine.

Please let me know your position at your earliest convenience, so we can respond accordingly.

Thanks.

Dominic

---

**From:** DiCanio, Jack P [mailto:Jack.DiCanio@skadden.com]
**Sent:** Wednesday, January 23, 2008 8:30 AM
**To:** Dominic Surprenant
**Subject:** RE: Brawer deposition

Dominick,
Thank you for your email. However, we must, respectfully, decline your proposal. Your proposal does not allow us to prepare adequately for the deposition and there is no way to measure the degree to which your examination will be informed by your firm's review of the documents. Your proposal also includes the potential that Mr. Brawer will be deposed on two separate occasions, which is not fair to the witness and not acceptable. As stated in my letter, there is no legal basis for your refusal to produce the documents at issue or to respond to our questions concerning the documents. Provide us with the documents and the requested information and we will promptly schedule Mr. Brawer's deposition. For example, if you provide us with the documents and requested information by the end of this week, we will make Mr. Brawer available for his deposition in the UK on Friday, February 1. Thanks, J.

**Jack DiCanio**
**Skadden, Arps, Slate, Meagher & Flom LLP**
300 South Grand Ave. | Suite 3400 | Los Angeles, CA | 90071
T: (213) 687-5430 | F: (213) 621-5430 | E: jdicanio@skadden.com

**Theresa Ben-Tov, Assistant to Jack DiCanio**
T: (213) 687-5417 | E: tbantov@skadden.com

1/25/2008

EXHIBIT _19_
PAGE _166_

**From:** Dominic Surprenant [mailto:dominicsurprenant@quinnemanuel.com]
**Sent:** Tuesday, January 22, 2008 6:12 PM
**To:** DiCanio, Jack P (LAC)
**Subject:** RE: Brawer deposition

Jack,

I have your letter. We remain perplexed. MGA and Skadden knew about those documents weeks if not months ago. Skadden examined them *prior* to offering Mr. Brawer for deposition in London on 1/28/08. Our understanding of Judge Larson's order is that MGA is obligated to produce Mr. Brawer for deposition prior to the end of January. So we think that MGA remains obligated to produce Mr. Brawer as MGA and Skadden offered and as we agreed.

What we are willing to do (subject to client approval, as to which I should have an answer tomorrow) is agree that we will not examine Mr. Brawer next Monday about the contents of those boxes. We will reserve our right to seek to re-open the deposition to examine him about that topic once the documents have been produced to you; obviously, you will reserve the right to oppose our efforts to re-open the deposition.

No final decision has been made, but if you do not accept our proposal, we may seek ex parte relief from Judge Larson to enforce the Court's order that Mr. Brawer be made available on 1/28/08.

Please let me know at your earliest convenience how you wish to proceed.

Dominic

**From:** Longnecker, Norma [mailto:Norma.Longnecker@skadden.com]
**Sent:** Tuesday, January 22, 2008 5:29 PM
**To:** Dominic Surprenant
**Cc:** DiCanio, Jack P (LAC)
**Subject:**

Per Jack DiCanio's request, please see attached.

Norma Longnecker
Skadden, Arps, Slate, Meagher & Flom LLP
Legal Secretary to Daniel M. Rygorsky,
Marcus R. Mumford, Jeremy L. Ross &
Kim Brener
Los Angeles - (213) 687-5408
Email: nlongnec@skadden.com

---
******************************************************** This email and any attachments

EXHIBIT 19
PAGE 167

thereto, is intended only for use by the addressee(s) named herein and may contain legally privileged
and/or confidential information. If you are not the intended recipient of this email, you are hereby
notified any dissemination, distribution or copying of this email, and any attachments thereto, is strictly
prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and
permanently delete the original copy and any copy of any email, and any printout thereof. Further
information about the firm, a list of the Partners and their professional qualifications will be provided
upon request. ****************************************************

--------------------------------------------------------------------------------
**************************************************** To ensure compliance with Treasury
Department regulations, we advise you that, unless otherwise expressly indicated, any federal tax advice
contained in this message was not intended or written to be used, and cannot be used, for the purpose of
(i) avoiding tax-related penalties under the Internal Revenue Code or applicable state or local tax law
provisions or (ii) promoting, marketing or recommending to another party any tax-related matters
addressed herein. ****************************************************
**************************************************** This email and any attachments
thereto, is intended only for use by the addressee(s) named herein and may contain legally privileged
and/or confidential information. If you are not the intended recipient of this email, you are hereby
notified any dissemination, distribution or copying of this email, and any attachments thereto, is strictly
prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and
permanently delete the original copy and any copy of any email, and any printout thereof. Further
information about the firm, a list of the Partners and their professional qualifications will be provided
upon request. ****************************************************

--------------------------------------------------------------------------------
**************************************************** To ensure compliance with Treasury
Department regulations, we advise you that, unless otherwise expressly indicated, any federal tax advice
contained in this message was not intended or written to be used, and cannot be used, for the purpose of
(i) avoiding tax-related penalties under the Internal Revenue Code or applicable state or local tax law
provisions or (ii) promoting, marketing or recommending to another party any tax-related matters
addressed herein. ****************************************************
**************************************************** This email and any attachments
thereto, is intended only for use by the addressee(s) named herein and may contain legally privileged
and/or confidential information. If you are not the intended recipient of this email, you are hereby
notified any dissemination, distribution or copying of this email, and any attachments thereto, is strictly
prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and
permanently delete the original copy and any copy of any email, and any printout thereof. Further
information about the firm, a list of the Partners and their professional qualifications will be provided
upon request. ****************************************************

1/25/2008

EXHIBIT _19_
PAGE _168_

# EXHIBIT 20

# SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3144

TELEPHONE No.: (213) 687-5000
FACSIMILE No.: (213) 687-5600

EMAIL: JDICANIO@skadden.com

## FACSIMILE TRANSMITTAL SHEET

FROM: Jack DiCanio      DATE: January 22, 2008

DIRECT DIAL: (213) 687-5430      FLOOR/OFFICE No.: 35

DIRECT FACSIMILE: (213) 621-5430

THIS FACSIMILE IS INTENDED ONLY FOR USE OF THE ADDRESSEE(S) NAMED HEREIN AND MAY CONTAIN LEGALLY PRIVILEGED AND/OR CONFIDENTIAL INFORMATION. IF YOU ARE NOT THE INTENDED RECIPIENT OF THIS FACSIMILE, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS FACSIMILE IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS FACSIMILE IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE AND RETURN THE ORIGINAL FACSIMILE TO US AT THE ADDRESS ABOVE VIA THE LOCAL POSTAL SERVICE. WE WILL REIMBURSE ANY COSTS YOU INCUR IN NOTIFYING US AND RETURNING THE FACSIMILE TO US.

IF THIS TRANSMISSION IS UNCLEAR OR INCOMPLETE, PLEASE CONTACT THE FACSIMILE DEPARTMENT AT (213) 687-5443.
WHEN TRANSMITTING TO OUR MACHINES, PLEASE INCLUDE YOUR COVER SHEET AND NUMBER ALL PAGES CONSECUTIVELY.

TOTAL NUMBER OF PAGES INCLUDING COVER(S):   3

PLEASE DELIVER THE FOLLOWING PAGE(S) TO:

1. NAME: Dominic Surprenant, Esq.      FIRM: Quinn Emanuel Urquhart, etc.

CITY: Los Angeles      TELEPHONE No.: (213) 443-3000

FACSIMILE No.: (213) 443-3100

MESSAGE: Please see attached letter.


EXHIBIT 20
PAGE 169

# SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

300 SOUTH GRAND AVENUE

LOS ANGELES, CALIFORNIA 90071-3144

TEL: (213) 687-5000
FAX: (213) 687-5600
www.skadden.com

DIRECT DIAL
(213) 687-5430
DIRECT FAX
(213) 621-5430
EMAIL ADDRESS
JDICANIO@SKADDEN.COM

FIRM/AFFILIATE OFFICES
BOSTON
CHICAGO
HOUSTON
NEW YORK
PALO ALTO
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

January 22, 2008

## VIA FACSIMILE & E-MAIL

Dominic Surprenant, Esq.
Quinn, Emanuel, Urquhart, Oliver & Hedges, LLP
865 South Figueroa St., 10th Floor
Los Angeles, CA 90017

RE:  *Mattel v. Bryant*

Dear Dominic:

I am writing with respect to the deposition of Ron Brawer that Mattel has
noticed for January 28, 2008. As you are aware, Mattel withdrew its deposition
notice over a month ago, by letter dated November 26, 2007, from Jon Corey, and
only re-noticed his deposition on January 10, 2008, following Judge Larson's
January 7, 2008 Order.

In the time between the withdrawal and re-notice of Mr. Brawer's deposition,
Mattel notified us that it was in possession of a "box," which we later learned was
three boxes, of documents that were purportedly "returned by Mr. Brawer." (1/5/08
Ltr. from Diane Hutnyan.) We were allowed to inspect these documents on January
14-15, 2008, in boxes labeled "Brawer – NY Apartment," "Brawer – From Car Bin –
1 of 2 Boxes," and "Brawer – From Car Bin – 2 of 2 Boxes," but were precluded
from making any copies or scans.[1]

Moreover, Mattel has refused our reasonable inquiries into where these
documents came from and what tests it proposes to run on them. I understand that
Mattel has not responded to our letter last week raising some of these issues.
(1/18/08 Ltr. from Marcus Mumford.) Accordingly, Mattel has documents in its
possession relating to Mr. Brawer that we have been prevented from obtaining in

---

[1]  Ms. Hutnyan's letters of January 5 and 12, 2008, set forth restrictive measures
for our review and precluded any copying or scanning. In fact, I understand that
Quinn attorneys observed and video-recorded our inspection of those materials.

EXHIBIT  20
PAGE  170

Dominic Surprenant, Esq.
January 22, 2008
Page 2

advance of Mr. Brawer's deposition, and we have been denied an opportunity to review these documents with him. We also have substantial concerns about the authenticity of these documents which have not been addressed.

We cannot proceed with the deposition under these circumstances. We therefore ask that you immediately produce the above-referenced documents, and provide substantive responses to our letter dated January 18, 2008 to Diane Hutnyan. Once we have received the documents and the above-requested responses, we will promptly schedule Mr. Brawer's deposition.

Respectfully,

Jack DiCanio

EXHIBIT 20
PAGE 171

The attached fax was received from +2136877808 on 1/22/2008 at 5:13:24 PM

JobID: 079981

EXHIBIT __20__
PAGE __172__

# EXHIBIT 21

1   Robert C. O'Brien (SBN 154372)
    ARENT FOX LLP
2   555 West Fifth Street, 48th Floor
    Los Angeles, CA 90013-1065
3   Telephone: 213.629.7400
    Facsimile: 213.629.7401
4   obrien.robert@arentfox.com

5   Discovery Master

6

7

8                   UNITED STATES DISTRICT COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10                         EASTERN DIVISION

11

12   CARTER BRYANT, an individual,        Case No. CV 04-09049 SGL (RNBx)

13              Plaintiff,
                                          **Consolidated with**
14        v.                              **Case No. CV 04-09059**
                                          **Case No. CV 05-2727**
15   MATTEL, INC., a Delaware
     corporation,                         **PHASE II DISCOVERY MATTER**
16
                Defendant.                **ORDER NO. 3, REGARDING:**
17
                                              **(1) MOTION OF MGA**
18                                        **ENTERNTAINMENT, INC.,**
                                          **ISAAC LARIAN AND MGA**
19                                        **ENTERTAINMENT (HK)**
                                          **LIMITED TO QUASH**
20                                        **NON-PARTY SUBPOENAS; and**

21                                            **(2) MOTION OF MATTEL, INC.**
                                          **TO COMPEL PRODUCTION OF**
22                                        **DOCUMENTS RESPONSIVE TO**
                                          **THE SAME NON-PARTY**
23                                        **SUBPOENAS**

24
     CONSOLIDATED WITH
25   MATTEL, INC. v. BRYANT and
     MGZ ENTERTAINMENT, INC. v.
26   MATTEL, INC.

27

28
─────────────────────────────────────────────────────
ARENT FOX LLP                          1          ORDER NO. 3
ATTORNEYS AT LAW                             [Case No. CV 04-09049 SGL (RNBx)]
LOS ANGELES

EXHIBIT 21
PAGE 173

1   This Order sets forth the Discovery Master's ruling on: (1) the motion of

2   MGA Entertainment, Inc., Isaac Larian, and MGA Entertainment (HK) Limited

3   (collectively "MGA") to quash certain non-party subpoenas [Docket Number 4779]

4   and (2) the corresponding motion of Mattel, Inc. ("Mattel") to compel production of

5   documents responsive to the same non-party subpoenas [Docket Numbers 4769 and

6   4788] (collectively, the "Motions").

7       The Motions came on regularly for hearing before the Discovery Master on

8   March 4, 2009. All interested parties were represented by counsel and afforded the

9   opportunity to present oral argument on the Motions. The Discovery Master,

10  having considered the papers filed in support of and in opposition to the Motions,

11  and having heard oral argument thereon, rules as set forth below.

12  **I.    INTRODUCTION**

13

14      **A.    The Court's February 11, 2009 Ruling**

15      On February 11, 2009, the Court heard oral argument on various motions

16  filed by the parties. During the proceedings, counsel took the opportunity to orally

17  request clarification by the Court regarding whether the parties' respective motions

18  relating to the subpoenas served by Mattel on various entities allegedly related to

19  MGA (the "Subpoenas") are in any way stayed or precluded by any of the Court's

20  prior orders.

21      In response, the Court stated: "I will instruct the Discovery Master this

22  afternoon, in no uncertain terms, that there is no stay on any discovery related to

23  this case at all." (Reporter's Transcript of Proceedings, February 11, 2009 ["Tr."],

24  99:8 – 10). Counsel for MGA then referred to the fact that the Court had

25  previously declined to allow Mattel to serve certain discovery accompanying

26  Mattel's motion for a receiver and characterized the third-party subpoenas as an

27  attempt to circumvent the Court's ruling. (Tr., 101:12 – 17). In response, the Court

28  stated:

EXHIBIT __2)__
PAGE __174__

> Then the question becomes – and this is a question for the Discovery Master, not for this Court – whether or not the discovery is related to Phase 2. If it is, it is. I'm not going to pass any judgment whatsoever. I'm going to leave that completely up to the Discovery Master. ... The question for the [D]iscovery [M]aster will be whether or not the disputed discovery request is related or relevant to the trial that has now been scheduled for March [2010] or not.

(Tr., 101:18 – 22; 103:1 – 3).

The Discovery Master understands the Court's ruling as indicating that, in deciding the motions relating to the Subpoenas, the Discovery Master should consider whether there is a nexus between the information sought by the Subpoenas, on the one hand, and the Phase 2 claims and counterclaims set for trial in March 2010, on the other hand. If the information sought by the Subpoenas is, to use the Court's words, "related to Phase 2" or "related or relevant to the [Phase 2] trial," then that information could potentially be the subject of appropriate discovery requests by Mattel.[1]

## B.    Information Sought By The Subpoenas

The information sought by Mattel's Subpoenas falls into two broad categories. First, Mattel seeks documents from third parties Omni 808 Investors, LLC, OmniNet Capital, LLC and Vision Capital, LLC (collectively, the "Financing Entities") involving, among other things, their internal ownership and operations and their role in providing financing to MGA during the summer of 2008 (the

---

[1] Even prior to the Court's February 11, 2009 ruling, Mattel acknowledged that it had the burden of demonstrating a nexus between the information sought by the Subpoenas and the Phase 2 issues, as demonstrated by Mattel's inclusion of a section in its Motion to Compel summarizing the claims to be adjudicated in Phase 2, (Motion, pp. 5 – 8), and a section arguing that the information sought by the third-party subpoenas is relevant to Mattel's Phase 2 claims, (Id., pp. 18 - 24 and 24 – 25). However, Mattel also argued that the information sought might be appropriate regardless of any nexus to Phase 2. (See id., pp. 14 – 17 [arguing that MGA's prior statements regarding its finances in Phase 1 "opened the door" to discovery on this issue] and id., p. 23 [arguing that the information sought is relevant to MGA's credibility]). Based on the Court's subsequent ruling on February 11, 2009, as well as the Discovery Master's own independent evaluation of those arguments, the Discovery Master concludes, as discussed more fully below, that these arguments are insufficient, standing alone, to justify the non-party discovery Mattel seeks. Rather, Mattel must demonstrate some link between the information sought and the issues to be adjudicated by the Court at the Phase 2 trial.

EXHIBIT 21
PAGE 175

1   "Financing Discovery"). Based on the information presented at the February 11,

2   2009 hearing and in connection with the pending motions, it does not appear that

3   either MGA Entertainment, Inc., MGA Entertainment (HK) Limited, or Larian have

4   an ownership interest in the Financing Entities.[2] (*See* Tr., 70:22 – 72:5; 78:9 -25).

5         Second, Mattel seeks documents from third parties IGWT Group, LLC and

6   IGWT 826 Investments, LLC (collectively, the "Transferee Entities") regarding

7   MGA's sale to them of infringing MGA inventory, namely Bratz dolls (the

8   "Transferee Discovery"). MGA does not dispute that the Transferee Entities are

9   owned and/or controlled by Larian. (*See, e.g.*, MGA's Reply in support of its

10   Motion to Quash, at p. 5, fn. 6, where MGA refers to the purchase of Bratz

11   inventory by the Transferee Entities as "Larian's purchase of those . . .

12   products . . . .").[3]

### II.   MGA's Motion To Quash

14         Because it could dispose of all outstanding discovery issues related to the

15   Subpoenas, the Discovery Master first addresses MGA's Motion to Quash filed on

16   February 3, 2009.

#### A.   Legal Standard

18         As the party moving to quash the Subpoenas, MGA bears the burden of

19   satisfying the standard set forth in Rule 45(b), which provides that the court may

20   "quash or modify the subpoena if it is unreasonable and oppressive." (Fed. R. Civ.

21   P. 45(b); *see also Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir.

22   2004) ["The moving party has the burden of proof to demonstrate that compliance

---

[2] Of course, this is one of the facts Mattel seeks to investigate through the Subpoenas to the Financing Entities. The Discovery Master's ruling denying Mattel's Motion to Compel the Financing Parties to comply with the Subpoenas does not address – and should not be construed as deciding – whether Mattel could, upon establishing a nexus to a legitimate Phase 2 issue, seek to obtain this information from MGA.

[3] Moreover, MGA does not dispute the assertions made by Mattel in its Motion to Compel at pp. 11– 12, including that Larian created IGWT Group during the Phase 1 trial and registered its place of business as his home address, and that Larian created IGWT 826 Investments the day after the Phase 1 trial ended and registered it at the home address of his sister.



EXHIBIT _21_

PAGE _176_

1   with the subpoena would be unreasonable and oppressive" (internal quotations

2   omitted)]; *Linder v. Department of Defense*, 133 F.3d 17, 24 (D.C. Cir. 1998) [The

3   burden of proving that a subpoena is oppressive is on the party moving to quash];

4   *Washington v. Thurgood Marshall Academy*, 230 F.R.D. 18, 21 (D.D.C. 2005) [the

5   burden is on the movant to establish that a subpoena duces tecum should be

6   quashed]). "The burden is particularly heavy to support a 'motion to quash as

7   contrasted to some more limited protection.'" (*Westinghouse Electric Corp. v. City

8   of Burlington*, 351 F.2d 762, 766 (D.C.Cir.1965) [denying a motion to quash

9   supported by two affidavits]).

10          **B.      Arguments Made By MGA In Support Of Its Motion To Quash**

11          The sole argument set forth in MGA's Motion to Quash is that the Court's

12  January 7, 2009 order appointing a forensic auditor bars Mattel from seeking the

13  information sought by the Subpoenas. (*See* MGA's Motion to Quash, pp. 1 - 6).

14  But that argument fails for the reasons set forth above.  The Court made it clear at

15  the hearing on February 11, 2009 that:

16              There is no stay on discovery.  Period. . . . . [The forensic auditor
17              appointed by the Court] is acting at the Court's discretion to
                inform the Court of information. . . . That's an entirely separate
18              matter.  And I have not stayed any discovery and there should be
19              no reliance on that.  If that was misunderstood, it's clarified now.

20  (Tr., 97:15, 98:8 - 9, and 98:13 - 15).

21          Recognizing that its only argument has been rejected by the Court, MGA

22  argues for the first time in its Reply that its Motion to Quash should be granted

23  because the Subpoenas are not relevant to any of Mattel's Phase 2 claims. (*See*

24  MGA's Reply Brief in Support of the Motion to Quash, pp. 1 and 5 - 12).

25  However, MGA did not make this argument in its opening brief.  It instead declared

26  in its moving papers that whether the Subpoenas are related to any "Phase 2 issues

27  is beside the point." (*Id.*, p. 5).  Because MGA did not address the relevance of the

28  subject discovery until the filing of its Reply, the Discovery Master declines to

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 5 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT __21__
PAGE __177__

1    consider the argument in connection with the Motion to Quash.

2        The Discovery Master, like the Court,[4] disfavors the insertion of new

3    arguments at the reply stage that could have been raised in the moving papers. A

4    party filing a motion is required to raise all of its arguments in its opening brief to

5    prevent "sandbagging" of the non-moving party and to provide opposing counsel

6    the chance to respond. This rule is routinely adhered to by courts in the Ninth

7    Circuit. (*See, e.g., United States v. Boyce*, 148 F.Supp .2d 1069, 1085

8    (S.D.Cal.2001); *Leick v. Hartford Life and Acc. Ins. Co.*, 2007 WL 1847635 at *1,

9    n. 1 (E.D.Cal. 2007); *Stewart v. Wachowski*, 2004 WL 2980783, at *11 (C.D.Cal.

10   Sept. 28, 2004); *Hamilton v. Willms*, 2007 WL 2558615, *11 (E.D.Cal.2007); *see*

11   *also United States v. Cox*, 7 F.3d 1458, 1463 (9th Cir.1993); *United States v.*

12   *Wright*, 215 F.3d 1020, 1030 n. 3 (9th Cir.2000)).

13       Furthermore, MGA will not suffer any prejudice from this decision because

14   the issue it raised in its Reply (i.e., are the Subpoenas seeking information related to

15   any Phase 2 claims) has been fully briefed by the parties and is ruled upon by the

16   Discovery Master in connection with Mattel's Motion to Compel.[5] (*See* Section III

17   below).

18       Accordingly, MGA's Motion to Quash is **DENIED**.

19   //

20   //

21   //

22   //

23

---

24   [4] In *Bryant v. Mattel, Inc.*, 573 F.Supp.2d 1254, 1273 n.7 (C.D. Cal. 2007), the Court noted that it "ordinarily would not consider" arguments made for the first time on reply but did so only "because [undertaking the analysis did] not change [its] ultimate conclusion."

25

26   [5] That the arguments raised in the Reply are the same as those in MGA's Opposition to the Motion to Compel is conceded by Mattel. Indeed, Mattel admitted in its Request to Consolidate MGA's Motion to Quash and Motion to Compel (which was denied as untimely by the Discovery Master at the hearing on March 4, 2009) that the "MGA Parties' Opposition to Mattel's Motion to Compel Production of Documents Responsive to Third Party Subpoenas . . . makes the same arguments as the MGA Parties' Reply in support of their Motion to Quash." (Mattel's Request to Consolidate MGA's Motion to Quash and Mattel's Motion to Compel, p. 2).

27

28

EXHIBIT   21
PAGE      178

1   **III.    Mattel's Motions To Compel**

2       **A.     The Purported Procedural Defects Barring Mattel's Motions To**

3           **Compel**

4       MGA, the Financing Entities, and the Transferee Entities all argue that that

5   Mattel's Motion to Compel should be denied on several different procedural

6   grounds.

7           **1.    The Court's January 7, 2009 Order**

8       As an initial matter, the Transferee Entities and the Financing Entities repeat

9   the argument made by MGA in its Motion to Quash that the Court's January 7,

10   2009 Order appointing a forensic auditor barred Mattel from seeking the discovery

11   sought by the Subpoenas. (Financing Entities' Opposition to Mattel's Motion to

12   Compel at p. 3; Transferee Entities' Opposition to Mattel's Motion to Compel at

13   pp. 5 - 7). But that argument fares no better here than it did with respect to MGA's

14   Motion to Quash and is rejected for the reasons discussed in Section II above.

15           **2.    Local Rule 37**

16       The Financing Entities and the Transferee Entities also argue that Mattel's

17   Motion to Compel should be denied because Mattel failed to comply with Local

18   Rule 37 by, among other things, failing to meet and confer and failing to file a joint

19   stipulation. (Financing Entities' Opposition to Mattel's Motion to Compel, pp. 1

20   and 7 - 10; Transferee Entities' Opposition to Mattel's Motion to Compel, p. 2

21   [referencing Local Rule 37 in passing]).  However, Local Rule 37 (as distinguished

22   from Federal Rule 37, which is discussed in subsection 7a, below) does not apply to

23   discovery disputes in this case.  Rather, the applicable procedure is the one adopted

24   by the Court in its order appointing a discovery master dated December 6, 2006

25   ("Discovery Master Order").[6]  Because the Discovery Master Order provides that

26

27      [6] The Discovery Master Order is incorporated by reference into the Court's January 6, 2009 Order appointing a
     discovery master for Phase 2 of this litigation. (*See* Court's Order dated January 6, 2009, p. 2 ["The Discovery

28        Master will serve under the terms and conditions of the Stipulation and Order dated December 6, 2006"]).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

                                  - 7 -     ORDER NO. 3
                                      [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT **21**

PAGE **179**

1   "all third parties subject to discovery requests . . . in this litigation shall be bound
2   by the terms of this Stipulation and Order," (Discovery Master Order, p. 6), that
3   order applies to the Financing Entities as well as the Transferee Entities, and its
4   procedures replace those set forth in Local Rule 37. (*Id.*, p. 4).

### 3.   Local Rule 11-6 And Paragraph 4(b) Of The Court's Standing Order

7        The Financing Entities and MGA further argue that Mattel's Motion to
8   Compel should be denied because it exceeds the page limitations set forth in Local
9   Rule 11-6 and Paragraph 4(b) of the Court's Standing Order. (*See* Financing
10  Entities' Opposition to Mattel's Motion to Compel, p. 9; MGA's Opposition to
11  Mattel's Motion to Compel, pp. 18 - 19). Each of these contentions is unavailing.
12  The Discovery Master Order (not the Local Rules or the Court's Standing Order)
13  governs discovery disputes in this case, and it does not impose any page limit on
14  such motions.[7] In fact, the Discovery Master Order dispenses with the formatting
15  requirements of the Local Rules in certain ways, such as allowing letter briefs, and
16  even permits the parties to agree to alternative procedures, including, presumably,
17  filing briefs that are more than 25 pages in length. (*See* Discovery Master Order, p.
18  4). Thus, while the Discovery Master encourages the parties to be as efficient as
19  possible in their briefing, he recognizes that briefs in excess of 25 pages are either
20  directly permitted under the Discovery Master Order (since no page limitation was
21  imposed by the Court) or implicitly allowed (since the parties may agree to
22  alternate procedures). He further recognizes that the complex nature of this case
23  may periodically necessitate the filing of briefs that exceed 25 pages.[8] For all of

---

[7] Even assuming the 25 page limitation for briefs did apply, Mattel had the option of filing separate motions to compel for each of the subpoenas at issue and could have easily extended the page limitation well beyond the 30 pages it filed in connection with its combined motion that addressed multiple subpoenas propounded on the Transferee Entities and the Financing Entities.

[8] In fact, the parties to this lawsuit have filed multiple discovery motions in this case that contained more than 25 pages. (*See* Supplemental Declaration of Jon D. Corey in Support of Mattel, Inc.'s Reply in Response to The MGA Parties' Opposition to Motion to Compel, ¶ 7).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 8 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _2I_
PAGE _180_

1   these reasons, filings in excess of 25 pages are permitted.[9]

2               **4.    Local Rule 6-1**

3       The Financing Entities argue in passing that Mattel's motion to compel

4   should be denied because it violates Local Rule 6-1. (Financing Entities'

5   Opposition to Mattel's Motion to Compel, p. 6).    However, the Discovery Master

6   Order adopts a completely different set of deadlines than the Local Rules for the

7   filing of motions, oppositions and replies, and a different schedule for noticing

8   hearing dates. (Discovery Master Order, p. 4). Therefore, Local Rule 6-1 has no

9   applicability here.

10              **5.    Failure To Name MGA In The Motion To Compel**

11      MGA next argues that Mattel's motion to compel is procedurally improper

12  because MGA was not named in the Motion to Compel and Mattel should not be

13  allowed to respond to MGA's objections.   (MGA's Opposition to Mattel's Motion

14  to Compel, p. 18). But MGA has cited no legal authority, and the Discovery

15  Master has found none, standing for the proposition that a party must name in its

16  motion to compel all parties who have objected to an underlying subpoena even if

17  they are not actually the target of the subpoena. In fact, the contention that Mattel's

18  Motion to Compel should have been brought against MGA makes no sense given

19  that it could not possibly comply with any order compelling a response to the

20  Subpoenas.

21              **6.    Mattel's Separate Statement**

22      MGA also contends that Mattel's Motion to Compel should be denied

23  because its' separate statement "is another classic example of . . . inefficiency."

24  (*Id.*, p. 19). Once again, nothing in the Discovery Master Order prevents a party

25  from filing a separate statement that first identifies the request in dispute and then

26

27  _____
    [9] In the event the length of briefs ever becomes excessive, the Discovery Master will issue an order setting a specific
28  page limitation.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES
                                                                                    ORDER NO. 3
                                        - 9 -                    [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___2 1___
PAGE ___181___

1    sets forth the various contentions of the parties, even if the information regarding

2    the various requests happens to be repetitive.  Regardless, MGA has not cited any

3    legal authority in support of its position and the Discovery Master finds no reason

4    to dispose of Mattel's Motion to Compel merely because it filed a separate

5    statement that contains duplicative arguments.[10]

6              **7.    Meeting And Conferring**

7        As their final procedural argument in opposition to the Motion to Compel,

8    the Transferee Entities and the Financing Entities assert that the motion should be

9    denied because Mattel failed to adequately meet and confer prior to filing the

10   motion. (Financing Entities' Opposition to Mattel's Motion to Compel, pp. 7 - 8;

11   Transferee Entities' Opposition to Mattel's Motion to Compel, pp. 2 - 5).

12            **a.    Applicable Procedure**

13       Prior to filing its motion to compel, Mattel had an obligation to comply with

14   both the Federal Rules of Civil Procedure and the Discovery Master Order.  Federal

15   Rule of Civil Procedure 37(a) expressly requires that a party filing a motion to

16   compel discovery first meet and confer in "good faith."  (Fed. R. Civ. Proc. 37(a)).

17   Similarly, the Discovery Master Order states that unless an "alternative procedure"

18   is agreed upon or otherwise ordered by the Discovery Master, the

19             moving party shall first identify each dispute, state the relief
             sought, and identify the authority supporting the requested relief
20           in a meet and confer letter that shall be served on all parties by
             facsimile or electronic mail.  The parties shall have five court
21           days from the date of service of that letter to conduct an in-person
             conference to attempt to resolve the dispute.  If the dispute has
22           not been resolved within five court days after such service, the
             moving party may seek relief from the Discovery Master by
23           formal motion or letter brief . . .

24   (Discovery Master Order, p. 4).

25   //

26

27   _____
     [10] The Discovery Master notes that where there are numerous discovery requests in dispute he would prefer for a
28   separate statement to be submitted by the moving party.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES
                                            - 10 -                          ORDER NO. 3
                                                            [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _21_
PAGE _182_

1

           **b.**    **Mattel's Meet And Confer Regarding The Financing**

2

                       **Entities**

3        In challenging Mattel's meet and confer effort, the Financing Entities first

4    claim that Mattel violated the Discovery Master Order because no "in-person

5    meeting occurred." (Financing Entities' Opposition to Mattel's Motion to Compel,

6    p. 8). But that argument is without merit, since Mattel and the Financing Entities

7    agreed to an alternative procedure that disposed of the in-person meet and confer

8    requirement.[11] Indeed, MGA's counsel sent counsel for Mattel, counsel for the

9    Transferee Entities and counsel for the *Financing Entities* a letter on January 23,

10    2009 memorializing the parties' agreement and establishing a schedule whereby the

11    parties would "meet and confer on January 29 and 30 . . ." (Mattel's Reply in

12    Support of its Motion to Compel filed on February 13, 2009, pp. 9 - 10;

13    Supplemental Declaration of Jon D. Corey in Support of Mattel's Reply to the

14    Motion to Compel filed on February 13, 2009, ¶ 4 and Ex. 2). That the Financing

15    Entities' counsel received this letter and acted in accordance with its terms is

16    evidenced by, among other things, the fact that they served objections to the

17    Subpoenas on January 28, 2009 (which was the deadline specified in the January 23

18    letter) and started meeting and conferring with Mattel's counsel telephonically on

19    January 30. (Financing Entities' Opposition to Mattel's Motion to Compel, pp. 3

20    and 4). Accordingly, Mattel did not have any obligation to meet with the Financing

21    Entities in person since the parties had agreed to waive that obligation.

22        Nevertheless, Mattel still had an obligation to meet and confer with the

23    Financing Entities in good faith. Good faith cannot be shown merely through

24    perfunctory efforts; rather Federal Rule of Civil Procedure 37 mandates a genuine

25    attempt to resolve the discovery dispute through non-judicial means. (Fed. R. Civ.

26

27

28

[11] To promote efficiency and minimize the necessity for counsel to travel between their respective offices, the Discovery Master shall deem Paragraph 5 of the Discovery Master Order (mandating that the parties have an in person conference to attempt to resolve discovery disputes) to be sufficiently satisfied if the parties and non-parties involved in a discovery dispute meet and confer telephonically or by video conference. However, the Discovery Master emphasizes that this accommodation in no way lessens the parties' obligation to meet and confer in good faith.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

                     - 11 -          ORDER NO. 3
                                     [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT __21__
PAGE __183__

1     Proc. 37(a)(1)).

2        Because the evidence and declarations submitted by Mattel and the Financing

3     Entities are in conflict regarding what transpired during their respective meet and

4     confer communications, (*Cf.* Financing Entities' Opposition to Mattel's Motion to

5     Compel, pp. 3 – 5; Mattel's Reply Brief in Support of its Motion to Compel filed on

6     February 13, 2009, pp. 9-10), the Discovery Master gives Mattel the benefit of the

7     doubt and concludes that it adequately met and conferred with respect to Omni 808

8     Investors, LLC and Vision Capital, LLC.

9        By contrast, Mattel arguably did not even begin the meet and confer process

10    with OmniNet Capital, LLC prior to filing its motion to compel, because counsel

11    for the Financing Entities informed Mattel that they did not receive that Subpoena

12    until the afternoon of February 2, 2009 and filed objections to the Subpoena on that

13    date. (Financing Entities' Opposition to Mattel's Motion to Compel at p. 5). No

14    "good faith" meeting could therefore have taken place.

15        Although the meet and confer with respect to OmniNet Capital, LLC was

16    inadequate, the Discovery Master will nonetheless address the merits of Mattel's

17    Motion to Compel in all respects, including concerning the Subpoena served on

18    OmniNet Capital, LLC. The Discovery Master does so for purposes of efficiency

19    (i.e., the issues to be decided regarding the subpoena served on OmniNet Capital,

20    LLC are essentially identical to those that must be addressed in connection with the

21    subpoenas served on Omni 808 Investors, LLC and Vision Capital, LLC) and

22    because addressing the merits of the motion does not alter the outcome.[12]

23            **c.**     **Mattel's Efforts To Meet And Confer Regarding The**

24                  **Transferee Entities**

25        Like the Financing Entities, the Transferee Entities contend that Mattel's

26    motion to compel should be denied because it did not meet and confer in good faith.

27

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

---

[12] As noted above, the parties are admonished to abide by the provisions of the Discovery Master Order requiring a good faith attempt to meet and confer regarding discovery disputes prior to the filing of any discovery motion.

ORDER NO. 3

- 12 -      [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 21

PAGE 184

1   (Transferee Entities' Opposition to Mattel's Motion to Compel, pp. 2 - 5). Yet, the

2   Transferee Entities concede that their counsel engaged in multiple meet and confer

3   teleconferences. (*Id.* at pp. 3 - 4). Several emails and letters were also exchanged

4   between the parties as part of the meet and confer process. (*Id.*). In light of these

5   interactions, the Discovery Master again gives Mattel the benefit of the doubt in

6   favor of resolving the issues on the merits and concludes that it adequately met and

7   conferred with the Transferee Entities.

8        **B.**    **Legal Standard Governing Enforcement Of The Subpoenas**

9       Federal Rule of Civil Procedure 26(b)(1) provides for discovery in civil

10   actions of "any matter, not privileged, which is relevant to the subject matter

11   involved . . .. The information sought need not be admissible at the trial if the

12   information sought appears reasonably calculated to lead to the discovery of

13   admissible evidence." Rule 26(b) is liberally interpreted to permit wide-ranging

14   discovery of all information reasonably calculated to lead to discovery

15   of admissible evidence; but the discoverable information need not be admissible at

16   the trial. (*Jones v. Commander, Kansas Army Ammunitions Plant*, 147 F.R.D. 248,

17   250 (D.Kan.1993)).

18       The broad scope of discovery described in subsection (b)(1) is tempered by

19   provisions protecting the responding party from undue burden. Rule 26(b)(2)

20   provides that the frequency or extent of discovery otherwise allowed by the Rules

21   must be limited if the court determines that "(i) the discovery sought is

22   unreasonably cumulative or duplicative, or is obtainable from some other source

23   that is more convenient, less burdensome, or less expensive; (ii) the party seeking

24   discovery has had ample opportunity by discovery in the action to obtain the

25   information sought; or (iii) the burden or expense of the proposed discovery

26   outweighs its likely benefit, taking into account the needs of the case, the amount in

27   controversy, the parties' resources, the importance of the issues at stake in the

28   litigation, and the importance of the proposed discovery in resolving the issues."

EXHIBIT _21_
PAGE _185_

1       Moreover, the Federal Rules distinguish between discovery from non-parties

2  to a lawsuit (governed under Rule 45) and discovery from parties (governed

3  generally by Rule 26), based in part on the recognition that the former is inherently

4  more burdensome and less convenient than the latter. (*See, e.g., Solarex v. Arco*

5  *Solar, Inc.*, 121 F.R.D. 163, 179 (E.D.N.Y. 1988) [The status of a non-party is

6  significant when determining whether compliance with a discovery demand would

7  constitute an undue burden]; *Katz v. Batvia Marine and Sporting Supplies, Inc.*, 984

8  F.2d 422, 424 (Fed. Cir. 1993) [The fact that discovery is sought from a non-party

9  is one factor that the Court may weigh in determining whether the discovery

10  requested is necessary, relevant, or burdensome]. Courts applying Rules 26 and 45

11  have interpreted these rules to afford non-parties special heightened protection

12  against burdensome discovery. (*See, e.g., Exxon Shipping Co. v. U.S. Dept of*

13  *Interior*, 34 F.3d 774, 779 (9th Cir. 1994)).

14       Accordingly, requests for documents that pertain to a party and that can be

15  more easily and inexpensively obtained from that party also impose an undue

16  burden. (*Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 638 (C.D. Cal. 2005)).

17  Further, if the documents sought are neither relevant nor calculated to lead to the

18  discovery of admissible evidence, "then any burden whatsoever imposed upon the

19  non-party would be by definition undue." (*Compaq Computer Corp. v. Packard*

20  *Bell Electronics, Inc.*, 163 F.R.D. 329, 335-336 (N.D.Cal. 1995)).

21       Each of the moving parties bears the burden of establishing the basis for the

22  relief it seeks. As the party moving to compel compliance with the Subpoenas,

23  Mattel bears the burden of "establishing that the information sought is relevant and

24  necessary to its lawsuit." (*Cytodyne Technologies, Inc. v. Biogenic Technologies,*

25  *Inc.*, 216 F.R.D. 533, 534 (M.D.Fla. 2003)).

26       Finally, in deciding whether to enforce a subpoena, the Discovery Master

27  must balance "the relevance of the discovery sought, the requesting party's need,

28  and the potential hardship to the party subject to the subpoena." (*Heat & Control,*

EXHIBIT __21__

PAGE __186__

1   *Inc. v. Hester Industries, Inc.*, 785 F.2d 1017, 1024 (Fed.Cir.1986) citing

2   *Deitchman v. E.R. Squibb & Sons, Inc.*, 740 F.2d 556, 560, 564 (7th Cir.1984)).

3        **C.**    **Mattel's Contention That MGA Has Placed Its Finances At Issue**

4        As its first ground for moving to compel production of the documents sought

5   by the Subpoenas, Mattel argues that MGA has misrepresented its finances, thereby

6   making it necessary and appropriate for Mattel "to obtain an accurate understanding

7   of MGA's and Larian's finances." (Motion to Compel, p. 14). According to

8   Mattel, MGA's supposed misrepresentations have placed its financial condition at

9   issue, and have opened the door to discovery of any information bearing on MGA's

10   finances.  (*Id.* ["Discovery on MGA's financials is amply warranted by MGA's

11   own statements *alone.*"] (emphasis added)).

12        However, after Mattel filed its Motion, the Court made it clear that the

13   validity of the Subpoenas must be evaluated with reference to whether they relate to

14   the matters to be adjudicated in Phase 2.  As the Discovery Master understands the

15   Court's ruling, the Subpoenas cannot be justified merely because they seek

16   information regarding some contention made during Phase 1, without regard to

17   Phase 2.  In other words, putting a fact at issue in Phase 1, cannot, standing alone,

18   suffice to render that fact the proper subject of discovery in Phase 2.

19        Thus, to the extent Mattel's first argument asserts that MGA's statements,

20   standing alone, warrant discovery from the Subpoena recipients, that argument is

21   rejected.  Rather, the Discovery Master will evaluate whether discovery of MGA's

22   finances is warranted in light of the issues to be adjudicated in Phase 2.

23        Further, even if Mattel were not required to demonstrate some nexus between

24   the Subpoenas and the issues to be adjudicated in Phase 2, the argument that the

25   Subpoenas are justified because MGA placed its financial condition at issue would

26   still fail for the simple reason that Mattel is not seeking discovery from MGA but

27   rather *non- parties.* Mattel does not cite any statements or conduct by the

28   //

EXHIBIT _2)_

PAGE ___187___

1    Financing Entities putting their financial affairs at issue in this litigation.[13]

2    Rather, Mattel argues that the statements and conduct of *MGA* should be attributed

3    to the Financing Entities and construed as their consent to discovery of their

4    internal financial affairs.  Such an assumption is unwarranted.

5        **D.    Mattel's Contention That The Subject Discovery Is Relevant To**

6             **Phase 2**

7             **1.    Subpoenas To The Financing Entities**

8    Mattel next argues that the Subpoenas to the Financing Entities seek

9    information relevant to a variety of Phase 2 issues.[14]

10            **a.    Mattel's RICO Counterclaim**

11   Mattel first asserts in its Motion to Compel that the discovery it seeks is

12   relevant to its RICO counterclaim because "Mattel alleges that the counter-

13   defendants have operated a widespread criminal enterprise that has engaged in

14   numerous acts of mail and wire fraud and other predicate acts in violation of the

15   RICO statute" and that "MGA's mid-trial transactions with Omni 808 and the other

16   non-operating entities" is "a continuation of that pattern of racketeering activity."

17   (Motion, p. 18).

18

19   _____

[13] In its Reply to the Financing Entities' Opposition to its Motion to Compel, Mattel argues that the Financing
20   Entities (referred to by Mattel as the "Omni Parties") have injected themselves into the litigation because one of
them, Omni 808 Investors, LLC, applied to intervene. (Reply, p. 8). However, a decision on that application has
been deferred by the Court, (Tr., 80:15 – 17), and therefore Omni 808 Investors, LLC and the other Financing
21   Entities remain outsiders to the litigation entitled to the heightened protection from discovery normally afforded non-
parties.

22   [14] Mattel argues in one of its reply briefs filed on February 25, 2009 that the Discovery Master should strike MGA's
23   Opposition to the Motion to Compel because: (1) MGA indicated that it would not be filing an Opposition and
(2) the Opposition was filed a week late. (*See* Mattel's Reply in Response to MGA's Opposition to the Motion to
24   Compel, p. 4). The Discovery Master declines that request. The assertion that MGA would not file an Opposition is
based on an alleged oral conversation which counsel for Mattel apparently did not confirm in writing. (*See*
25   Supplemental Declaration of Jon D. Corey in Support of Mattel's Reply in Response to MGA's Opposition to the
Motion to Compel, ¶ 4). Even assuming such a statement had been made, MGA was entitled to change its mind. As
for Mattel's argument that the Opposition was untimely, the Discovery Master notes that he was only recently
26   appointed. This fact combined with the backlog of discovery motions may have resulted in some confusion as to
when various briefs were due to be filed. The Discovery Master prefers to address issues on the merits and declines
27   to strike the Opposition as untimely. Notwithstanding the foregoing, the Discovery Master urges the parties to
strictly comply with the briefing schedule set forth under the Discover Master Order for all future discovery motions
28   unless an alternative procedure is agreed upon by the parties and approved by the Discovery Master or the Court.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 16 -
ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___21___
PAGE ___188___

1       But Mattel's allegations in support of its RICO counterclaim turn on

2   misappropriation of trade secrets and confidential information, and make no

3   mention of improper transfers of funds or any other predicate act similar to MGA's

4   purported business transactions with any of the Financing Entities.[15] Accordingly,

5   these financial transactions are not a "continuation" of the "pattern" of conduct

6   Mattel alleges in very precise detail in its RICO counterclaim. (*Asdourian v.*

7   *Konstantin*, 77 F. Supp. 2d 349, 358 (E.D.N.Y. 1999) [cited by Mattel and stating

8   RICO claimant must show "[a]n interrelationship between acts, suggesting the

9   existence of a pattern, [which] may be established...[by] proof of their temporal

10  proximity, or common goals, or similarity of methods, or repetitions' (citation

11  omitted)]; *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 238-39 (1989) [RICO claims

12  must be supported by a "pattern" of activity and "the mere fact that there are a

13  number of predicates is no guarantee that they fall into any arrangement or order.

14  A pattern is not formed by sporadic activity ... Instead, the term 'pattern' itself

15  requires the showing of a relationship between the predicates" (quotations and

16  internal citations omitted)]).

17       At this stage, Mattel has failed to demonstrate a relationship between the

18  predicate acts alleged by Mattel in its Counterclaims – which were bound together

19  by a purported scheme to misappropriate Mattel's trade secrets – and the

20  //

21  //

22  //

23  [15] *See* Mattel's Second Amended Answer and Counterclaims ("Counterclaims"), p. 55-62, ¶ 90 [alleging the MGA

24 Parties and other counter-defendants "for the purpose of executing and attempting to execute the scheme to improperly defraud Mattel and steal its trade secret or otherwise confidential and proprietary information" committed

25 various predicate acts], ¶ 91 [alleging the MGA Parties and other counter-defendants "shared the common purpose of enabling MGA to obtain confidential, proprietary and otherwise valuable Mattel property through improper means in order to assist MGA in illegally competing with Mattel"], ¶ 92 [alleging the enterprises are continuing enterprises

26 because they are "designed to and did unlawfully acquire the confidential business information and property of Mattel and incorporated this information and property into MGA's ongoing business, marketing strategies and

27 business methods, practices, and processes"], ¶ 93(a) [alleging mail fraud committed in furtherance of scheme to "defraud Mattel of its confidential trade secret information and property"], ¶ 93(b) [alleging wire fraud "defraud

28 Mattel of its confidential and trade secret information and property"], and ¶ 102 [the MGA Parties and other counter-defendants "schemed to defraud Mattel and steal its property and trade secret information"].

Arent Fox LLP
Attorneys At Law
Los Angeles

ORDER NO. 3
- 17 -   [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 21
PAGE 189

1    transactions Mattel seeks to investigate here.[16]

2    　　Also, the RICO counterclaim (like the other counterclaims to be adjudicated

3    in Phase 2) was asserted in July, 2007 – more than a year before either Omni 808

4    Investors, LLC or Vision Capital, LLC came into existence – and therefore

5    apparently did not encompass the activities of those entities or the transactions

6    which are the subject of the Financing Discovery.  While that fact might be

7    overcome by a showing that the Financing Entities were created or used to further a

8    scheme to carry on misconduct that is the subject of Phase 2, Mattel did not

9    demonstrate that such is the case in its briefs and supporting evidence.

10   　　In sum, absent some argument or evidence demonstrating a nexus between

11   the predicate activities alleged in the RICO counterclaim, on the one hand, and the

12   transactions and other matters which are the subject of the Financing Discovery, on

13   the other hand, there has been no showing by Mattel that the Subpoenas to the

14   Financing Entities are reasonably calculated to lead to the discovery of admissible

15   evidence regarding the RICO counterclaim.

16   　　　　　　**b.    Mattel's Disgorgement Remedy**

17   　　Next, Mattel asserts that the Subpoenas to the Financing Entities seek

18   information relevant to its remedy of disgorgement, which is an available remedy

19   for Mattel's Phase 2 counterclaim for misappropriation of trade secrets.  Mattel

20   argues:

21

22   [16] This conclusion is consistent with the case cited by Mattel – *Eastman Kodak Co. v. Camarata*, 238 F.R.D. 372
23   (W.D.N.Y. 2006).  There, the plaintiffs "asserted broad civil RICO claims against the Nicolo defendants predicated,
     among other violations, upon alleged money laundering violations.  Specifically, the Complaint alleges that the
     Nicolo defendants and the other named defendants constituted an enterprise as defined in the RICO statute that was
24   engaged in a pattern of racketeering activity, including mail and wire fraud and, more importantly for purposes of
     this motion, money laundering." (*Id.*, at 375).  "The alleged money laundering consisted of repeated deposits into
25   various financial institutions in order both to promote and carry on the unlawful activity – that is, by paying and
     depositing kickbacks to certain members of the enterprise – and to conceal and attempt to conceal the proceeds, their
26   nature, source and location – that is, by transferring funds between defendants and between various accounts
     maintained by those defendants." (*Id.* [emphasis added]).  Thus, inquiry into the defendants' finances was
27   appropriate as it was likely to reveal activity related to the alleged predicate acts.  Here, on the other hand, Mattel has
     not alleged any sort of financial scheme which would support inquiry into the MGA Parties' financial transactions
28   with third parties.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 18 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ＿21＿
PAGE ＿190＿

1    For purposes of establishing disgorgement, Mattel must take into
2    account money transferred from MGA and Isaac Larian,
     regardless of the manner in which it was transferred. Mattel is
3    entitled to discovery that shows all assets siphoned from MGA or
4    Isaac Larian . . . . By these subpoenas, Mattel seeks evidence to
     prove the amount the defendants must disgorge. Money that
5    properly belonged to Mattel was transferred from MGA or Isaac
6    Larian to an entity controlled by them.

7    (Motion, pp. 20:1 – 4, 21:12 – 14).

8        While the foregoing statements may be true as a general proposition, none of

9    the Financing Entities is alleged to have "received money that properly belonged to

10   Mattel." To the contrary, Mattel asserts that the Financing Entities are creditors of

11   MGA. Therefore, Mattel has not demonstrated how any of the categories of

12   documents sought from the Financing Entities would aid it in ascertaining the

13   amount defendants must disgorge.

14                    c.    **Phase 2 Damages**

15       Mattel's third argument in favor of enforcement of the Subpoenas is that they

16   "seek documents relevant to MGA's financial condition" and other "factors

17   relevant to an award of punitive damages." (Motion to Compel, p. 21:19 – 22).

18   Depending on the particular scope of the document request, such discovery from

19   Omni 808 Investors, LLC may be appropriate in connection with Phase 2 because

20   any information evidencing MGA's indebtedness to Omni 808 Investors, LLC from

21   the purchase of the alleged Wachovia debt or direct loans to MGA is relevant to

22   MGA's net worth (and hence punitive damages).[17] As the Court noted in its

23   February 11, 2009 ruling:

24       I can see tremendous overlap between, for example, discovery on

25   ---
     [17] The Discovery Master's analysis is fundamentally different for OmniNet Capital, LLC and Vision Capital, LLC
26   because neither entity is alleged by Mattel to be a creditor of MGA Entertainment, Inc. (Motion to Compel, pp. 9
     and 10). To the contrary, Mattel concedes that "OmniNet [Capital, LLC] is not the secured party, and thus
27   presumably not the actual debt purchase/lender. Rather, the company holding the security interest is Omni 808
     [Investors, LLC] . . . [which] appears to be owned funded by a company called Vision Capital, LLC." (Id.) Because
28   it admits that OmniNet Capital, LLC and Vision Capital, LLC are not creditors of MGA, Mattel has failed to show
     that the information sought from those entities has any bearing on MGA's financial condition.

EXHIBIT __21__
PAGE __191__

1
2
3

> financial condition of the company as it relates to damages in the Phase 2 and also issues that the receiver is looking at. And without making a ruling on any of this, I would not suggest for a moment that these are mutually exclusive categories.

(Tr., 101:3 - 8)

4
5
6
7
8

Mattel argues that the necessary connection between the Financing Discovery and Phase 2 damages exists because the Financing Entities have acquired a security interest in MGA's assets, which, in turn, affects MGA's financial condition. Specifically, Mattel argues that Omni 808 Investors, LLC is:

9
10
11

> directly involved in providing funding to MGA in exchange for a security interest. Such funding, and security interests, are in and of themselves directly relevant to the financial condition of the MGA Parties, including the amount of the security interests, the terms and conditions of the funding, and the rate of funding. . . .

12

(Motion to Compel, p. 22: 13 – 17).

13

The Discovery Master agrees that such limited information, as it relates to

14

the purchase by Omni 808 Investors, LLC of the debt obligation previously held by

15

Wachovia Bank, is reasonably calculated to lead to the discovery of admissible

16

evidence concerning Phase 2 issues, including the calculation of MGA's net worth

17

for purposes of calculating punitive damages.[18] Accordingly, Mattel's motion to

18

compel responses from Omni 808 Investors, LLC is granted with respect to

19

documents relating to (1) the existence of any debt owed by MGA Entertainment,

20

Inc. to Omni 808 Investors, LLC and (2) any communications between Omni 808

21

Investors, LLC and the MGA parties regarding any such indebtedness.

22

The problem, however, is the vast majority of the document requests set forth

23

in the Subpoena propounded on Omni 808 Investors, LLC are not narrowly tailored

24

to obtain information demonstrating the amount and nature of MGA's indebtedness

25

(and hence net worth) or communications regarding any such debt,[19] but instead

26
27
28

[18] During oral argument, counsel for MGA represented (and counsel for Mattel seemed to agree) that the Court deferred discovery regarding the Wachovia debt until the middle of the Phase I trial. (Reporter's Transcript of Proceedings, March 4, 2009, pp. 72, 85 and 86). The extent to which that damages information was obtained directly from Wachovia, as opposed to MGA, is not clear from the record provided to the Discovery Master.

[19] Nor did Mattel move to compel MGA to produce this information in the first instance.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 20 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 21
PAGE 192

1    would require the Financing Entities to produce virtually every document in their

2    possession regarding their formation, operations, and history of transactions.

3    Among other things, the Subpoenas to the Financing Entities seek:

4       •    All records that "substantiate transfers of assets" by the Financing

5            Entities "to other entities, individuals, and/or parties, within the U.S.

6            and outside of the U.S." (Exhibits 27-29 to Supplemental Declaration

7            of Jon D. Corey In Support Of Mattel, Inc.'s Reply In Support Of

8            Motion To Compel Production of Documents Responsive to Third-

9            Party Subpoenas, Attachment A, ¶ 16);

10      •    All documents "detailing or setting forth the relationship" between

11           each of the Financing Entities and other non-parties (*Id.* at ¶¶ 6-10);

12      •    All documents referring or relating to the "all contributions, loans and

13           any sources of funding" for the Financing Entities (*Id.* at ¶ 13);

14      •    All documents referring or relating to the "source of funding" of other

15           non-parties (*Id.* at ¶ 16);

16      •    All documents showing detail of "all loan facilities" referring or

17           relating to the Financing Entities and other non-parties (*Id.* at ¶ 14);

18      •    All documents referring or relating to "transactions involving any

19           compensation, loans, advances, payments, fees or any other form of

20           consideration" paid to other non-parties (*Id.* at ¶ 15);

21      •    All "communications" referring or relating to the Financing Entities

22           and other non-parties (*Id.* at ¶ 17).

23      Accordingly, the Discovery Master concludes that most of the categories of

24   documents in the Subpoenas are overbroad and not reasonably calculated to lead to

25   the discovery of admissible evidence with respect to Phase 2 issues, as detailed in

26   Section IV below (entitled "Disposition").

27   //

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 21 -                                   ORDER NO. 3
                                [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT __21__
PAGE ____193____

#### d.    Credibility Of MGA Witnesses

Mattel's fourth argument consists of a single, conclusory paragraph asserting that it is entitled to its discovery in order to determine the credibility of MGA's witnesses. To support this argument, Mattel first states that information is discoverable "if it relates to 'the credibility of any witness.'" (Motion to Compel, p. 23 (citing *Cable & Computer Tech., Inc. v. Lockheed Sanders, Inc.,* 175 F.R.D. 646, 650 (C.D. Cal. 1997)).[20] Next, Mattel asserts that "MGA and Larian made statements under oath about their financial condition as well as about the role of Omni 808 and the other non-operating entities in providing MGA with additional funding." (*Id.*) But that is the full extent of Mattel's argument. Mattel does not attempt to show that the specific discovery that it has propounded is reasonably calculated to lead to the discovery of the evidence that it contends would be admissible.

Discoverable information generally includes evidence relevant to the credibility of a party or a key witness. (See *Paulsen v. Case Corp.*, 168 F.R.D. 285, 287-288 (C.D. Cal. 1996); see also *Ragge v. MCA/Universal Studios*, 165 F.R.D. 601, 603-604 (C.D. Cal. 1995); *U.S. v. City of Torrance*, 164 F.R.D. 493, 495 (C.D. Cal. 1995)). If Mattel's discovery were reasonably calculated to lead to the discovery of such information, then it might be permissible. (*Id.* ["Rule 26 is liberally interpreted to permit wide ranging discovery of all information reasonably calculated to lead to discovery of admissible evidence."]) But Mattel has not taken any steps to connect its discovery to such evidence. As discussed above, Mattel bears the burden of demonstrating that its discovery is reasonably calculated to lead to the discovery of admissible evidence. Here, Mattel has only stated that credibility evidence can be admissible and that credibility is at issue in this case – without referring at all to specific categories of documents in the Subpoenas or

---

[20] The Discovery Master notes that the case cited by Mattel does not actually discuss or apply this proposition.

EXHIBIT   21
PAGE   194

1    linking those categories of documents to prior or anticipated testimony of MGA's

2    witnesses. Simply stating that credibility evidence is discoverable does nothing

3    toward meeting Mattel's burden to demonstrate that the particular discovery at issue

4    here is reasonably calculated to lead to the discovery of such evidence.

###    e.    MGA's Unclean Hands

6        Mattel next argues in its Motion to Compel that MGA has asserted an

7    unclean hands defense in response to Mattel's Phase 2 claims, and consequently

8    Mattel is entitled to discover whether the MGA Parties are currently "engaging in

9    sham and fraudulent financial transactions such as concealing profits" to preclude

10   MGA "from invoking the unclean hands defense themselves." (Motion, pp. 23 -

11   24.) But this argument does not apply to the Financing Entities because, as

12   discussed above, Mattel does not claim that the Financing Entities have "received

13   money that properly belonged to Mattel" or otherwise used those entities to conceal

14   profits. To the contrary, Mattel asserts that the Financing Entities are creditors of

15   MGA.

16       Regardless, Mattel's theory is that, even if Mattel has unclean hands, MGA

17   may not assert that defense unless MGA itself is blameless. (*Id.*, at 24 [a "party

18   asserting an equitable defense, however, must itself have 'clean hands.'"]).

19   Mattel's statement of the law is correct as far as it goes. But, as the Ninth Circuit

20   has stated, "'unclean hands does not constitute 'misconduct in the abstract,

21   unrelated to the claim to which it is asserted as a defense.'" (*Jarrow Formulas, Inc.*

22   *v. Nutrition Now, Inc.*, 304 F.3d 829, 841 (9th Cir. 2002)). "It is fundamental to

23   [the] operation of the doctrine that the alleged misconduct . . . relate directly to the

24   transaction concerning which the complaint is made." (*Dollar Sys., Inc. v. Avcar*

25   *Leasing Sys., Inc.* 13 F.2d 165, 173 (9th Cir. 1989)). Accordingly, courts will not

26   allow discovery based on an unclean hands defense where the "allegations of

27   misconduct do not relate to the transactions... forming the basis for the

28   []complaint." (*Gen-Probe, Inc. v. Amoco Corp.*, 926 F. Supp. 948, 952 (S.D.Cal.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 23 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 21
PAGE 195

1    1996)).

2        Here, Mattel does not link any of the categories of documents referenced in

3    the Subpoenas (which involve the creation and operation of the Financing Entities

4    beginning with their formation in the summer of 2008) to any of the conduct at

5    issue in Phase 2 (which involves such matters as the alleged theft of trade secrets in

6    Mexico in 2004 and other conduct unrelated to the relationship between the

7    Financing Entities and MGA).  Accordingly, the Financing Discovery is not

8    reasonably calculated to lead to the discovery of admissible evidence regarding

9    MGA's alleged unclean hands in connection with the matters to be adjudicated in

10    Phase 2.

11                    **f.    Mattel's Unfair Competition Counterclaim**

12        As Mattel acknowledges, California's Unfair Competition Law, Business &

13    Professions Code §§ 17200 et seq. (the "Unfair Competition Law") encompasses

14    "'anti–competitive business practices as well as injuries to consumers, and has as a

15    major purpose the preservation of fair business competition.'"  (Opp. at 24:25 –

16    25:2, quoting *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone

17    Co.* (1999) 20 Cal.4th 163, 180)).  However, Mattel's papers do not sufficiently

18    demonstrate that the documents sought from the Financing Entities involve "anti-

19    competitive business practices," "injuries to consumers," or anything affecting

20    consumers or the public at all.  Instead, Mattel simply asserts, without any

21    supporting analysis, that MGA has violated the Unfair Competition Law by

22    "manipulating the sources of [its own] funding" (presumably the Financing

23    Entities).  That allegation, even if true, does not appear to involve the "unlawful,

24    unfair or fraudulent" marketing or sale of anything and therefore does not fall

25    within the ambit of the Unfair Competition Law.

26    //

27    //

28    //

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 24 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT __21__
PAGE ____196____

1               **g.    Summary Of The Discovery Master's Findings With**

2                      **Respect To The Subpoenas Directed To The Financing**

3                      **Entities**

4       For the foregoing reasons, the Discovery Master finds that, based on the

5   record before him, Mattel has failed to sufficiently articulate the necessary

6   connection between most of the Financing Discovery and any Phase 2 issue.

7   Moreover, while there is a connection between the Financing Discovery and some

8   of the Phase 2 issues referenced (i.e., MGA's financial condition and its bearing on

9   Mattel's claim for punitive damages), Mattel has failed to demonstrate that the

10   Subpoenas meet the standard set forth in Rule 26(b)(2) and that all of the requested

11   discovery is permissible in light of the case law interpreting Rules 26 and 45.

12       Accordingly, Mattel's motion to compel the Financing Entities to comply

13   with the Subpoenas is **GRANTED** in part and **DENIED** in part.

14              **2.    Subpoenas To The Transferee Entities**

15       In their briefs regarding the enforceability of the Subpoenas, Mattel and

16   MGA do not, as a general rule, make a distinction between the Financing Entities

17   and the Transferee Entities, but rather direct the same arguments to both groups

18   collectively. However, there are important distinctions between the two groups,

19   including, without limitation, that: (1) the Transferee Entities appear to be affiliated

20   with – if not wholly owned by – Larian; (2) the Transferee Discovery involves the

21   sale of MGA assets (i.e., Bratz products) in which Mattel has an ownership interest

22   pursuant to the Court's December 3, 2008 ruling; and (3) the Subpoenas seek some

23   documents relevant to Phase 2 issues which presumably cannot be obtained from

24   MGA, namely the Transferee Entities' contracts with, and records of sales to, third

25   parties purchasing the Bratz products. Accordingly, in ruling on the Subpoenas

26   directed to the Transferee Entities, the Discovery Master's analysis of certain of the

27   parties' above-referenced arguments differs, as follows.

28   //

EXHIBIT __21__
PAGE __197__

### a.   Non-Party Considerations

To begin with, the distinction between a party and non-party here is less compelling given the MGA parties' apparent admission that the Transferee Entities are single purpose entities created and controlled by Larian (who is, of course, himself a party) to dispose of inventory that is the subject of this litigation. Further, the MGA parties presumably do not have custody of the sales contracts whereby IGWT Group LLC sold Bratz products to third parties. The Discovery Master also notes that counsel for the Transferee Entities has submitted a declaration stating that there are "hundreds of sales contracts at issue, and as such, thousands of documents responsive to Mattel's requests." (Declaration of Jeffrey B. Valle dated February 17, 2009 ["Valle Decl."], ¶ 7). The unavailability of these relevant documents from any other source weighs heavily in favor of enforcing the Subpoena to IGWT Group LLC.

### b.   Relevance To Phase 2 Issues

#### 1.   Phase 2 Damages

As mentioned above, Mattel argues that the Subpoenas "seek documents relevant to MGA and Larian's financial condition, net worth, and ability to pay" on the ground that such information is relevant to Mattel's Phase 2 damages claims, including Mattel's claim for punitive damages.

For the reasons previously discussed, the Discovery Master finds that, with respect to the Financing Entities, the discovery requests were, for the most part overbroad, and/or not sufficiently linked to Phase 2 issues. However, the Discovery Master's analysis is necessarily different with respect to entities which were created and apparently wholly owned and/or controlled by Larian (a defendant in Phase 2), and which are admittedly selling inventory which generate revenues in which Mattel has an interest. Specifically, Mattel contends that Larian has caused MGA to sell the inventory at a deep (80%) discount to the Transferee Entities. This practice, if true, limits MGA's profits (which go to MGA's balance sheet, and ultimately

EXHIBIT 21
PAGE 198

1   affects MGA's net worth) while at the same time allowing Larian to capture

2   additional profits which otherwise would have been realized by MGA and reflected

3   on MGA's balance sheet). Accordingly, the Discovery Master finds that most of

4   the documents Mattel seeks to subpoena from the Transferee Entities properly

5   relate to Phase 2 issues, as specified in Section IV below.[21]

**2.    Mattel's Unfair Competition Counterclaim**

7   Given MGA's admissions regarding Larian's ownership/control of the

8   Transferee Entities, coupled with their sale of inventory purchased from MGA, the

9   Discovery Master finds that many of the documents requested from the Transferee

10  Entities are also arguably related to a "fraudulent," "unlawful," or "unfair" business

11  practice within the meaning of the Unfair Competition Law and the scope of

12  Mattel's Counterclaims.  Among other things, the Court's December 3, 2008 order

13  imposes a constructive trust on the proceeds of MGA's sale of the subject

14  inventory.  If, as Mattel argues, MGA's sale of that inventory to the Transferee

15  Entities constitutes a scheme on the part of Larian to enrich himself by depriving

16  Mattel of the true profits to be paid to Mattel pursuant to the Court's order, then

17  such conduct would constitute an unlawful attempt to circumvent the Court's order

18  and arguably render the transaction between MGA and the Transferee Entities an

19  anti-competitive business practice that is unlawful, unfair or fraudulent to other toy

20  manufacturers, including Mattel.  Therefore, such alleged misconduct, if proven,

21  could violate the Unfair Competition Law.

22  Moreover, although Mattel asserted its counterclaim for violation of the

23  Unfair Competition Law prior to the alleged misconduct (and long before the

24  Transferee Entities came into existence), Mattel phrased its allegations broadly

25

---

26  [21] The Discovery Master notes that IGWT 826 Investments is registered at the home address of Larian's sister and
brother-in-law, indicating that some of Larian's relatives may be involved in the ownership or operation of the

27  Transferee Entities.  Accordingly, the Discovery Master has specified in some instances that the production of
documents shall include those referencing not only Larian, but also his spouse, his children, his siblings, or their

28  spouses, or any entity or person affiliated with them.  However, the Discovery Master has stopped short of ordering
the production of documents relating to any other entities, individuals "within the U.S. and outside the U.S.," as
requested in Category 6 of each of the Subpoenas directed to the Transferee Entities.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 27 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT __21__
PAGE ___199___

1    enough to potentially encompass subsequent acts of unfair competition which

2    perpetuate or extend the misconduct alleged in the Counterclaims.  Unlike Mattel's

3    RICO counterclaim, Mattel's Twelfth Counterclaim for Unfair Competition does

4    not purport to rest on a list of enumerated, factually detailed and carefully defined

5    acts, but rather is phrased broadly to cover "unlawful, unfair and/or fraudulent acts

6    of unfair competition" which include, "without limitation" certain illustrative

7    examples.  (Counterclaims, p. 74, ¶ 165).

8         Of course, the Discovery Master cannot predict whether the Court will

9    ultimately deem Mattel's unfair competition counterclaim to be sufficiently elastic

10   to encompass MGA's alleged misuse of the Transferee Entities or whether Mattel

11   will seek (and the Court permit) amendment of the counterclaim to expressly

12   reference such alleged misconduct.  Nevertheless, in light of the fact that the

13   discovery need only appear reasonably calculated to lead to the discovery of

14   admissible evidence, the Discovery Master finds that certain aspects of the

15   Subpoenas are sufficiently related to Mattel's Phase 2 unfair competition claim.

16              c.      **Summary Of The Discovery Master's Findings With**

17                      **Respect To The Subpoenas Directed To The**

18                      **Transferee Entities**

19        As set forth above, the Discovery Master finds that Mattel has sufficiently

20   articulated a connection between some of the Transferee Discovery and its Phase 2

21   claims.  Accordingly, Mattel's motion to compel the Transferee Entities to comply

22   with the Subpoenas is **GRANTED** in part and **DENIED** in part.

23   **IV.    Disposition**

24        1.      The Motion to Quash filed by MGA is **DENIED.**

25        2.      Mattel's Motion to Compel the Financing Entities to produce

26   documents responsive to the Subpoenas is **DENIED** with respect to OmniNet

27   Capital, LLC and Vision Capital, LLC.

28        3.      Mattel's Motion to Compel Omni 808 Investors, LLC to produce

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 28 -                    ORDER NO. 3
                         [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT __21__
PAGE __200__

1  documents responsive to the Subpoena propounded on it is **GRANTED** in part and

2  **DENIED** in part, as follows:

3      a.      Requests 1 through 3, 13, 15, and 17:  The Motion is granted

4  with respect to documents relating to (1) the existence of any debt owed by MGA

5  Entertainment, Inc. to Omni 808 Investors, LLC, including any debt purchased

6  from Wachovia Bank, and (2) any communications between Omni 808 Investors,

7  LLC and the MGA parties regarding any such indebtedness.  The motion is denied

8  regarding any other documents sought by these requests.

9      b.      Requests 4 through 12, 14 and 18:  The Motion is denied.

10  4.      Mattel's Motion to Compel the Transferee Entities to produce

11  documents responsive to the Subpoenas is **DENIED** as to Request 6 propounded to

12  IGWT Group LLC and Request 6 propounded to IGWT 826 Investments, LLC.

13  5.      Mattel's Motion to Compel the Transferee Entities to produce

14  documents responsive to the Subpoenas is **GRANTED,** as follows:

15              **Subpoena To IGWT Group LLC**

16      a.      Request 1:  The Motion is granted with respect to documents

17  relating to the purchase by, or transfer to, IGWT Group LLC of any items of value,

18  including Bratz products, from MGA, Larian, his spouse, his children, his siblings,

19  or their spouses, or any entity or person affiliated with them.

20      b.      Request 2:  The Motion is granted

21      c.      Request 3:  The Motion is granted with respect to documents

22  relating to any ownership interest by Larian, his spouse, his children, his siblings,

23  or their spouses, or any entity or person affiliated with them.

24      d.      Request 4:  The Motion is granted with respect to documents

25  relating to any sources of funding by Larian, his spouse, his children, his siblings,

26  or their spouses, or any entity or person affiliated with them.

27      e.      Request 5:  The Motion is granted with respect to documents

28  relating to any compensation, loans, advances, payments, fees or any other form of

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 29 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT __21__
PAGE ___201___

1   consideration paid by IGWT Group LLC to Larian, his spouse, his children, his

2   siblings, or their spouses, or any entity or person affiliated with them.

3           f.   Request 7: The Motion is granted.

4   **Subpoena To IGWT 826 Investments LLC**

5           a.   Request 1: The Motion is granted with respect to documents

6   relating to the purchase by, or transfer to, IGWT 826 Investments LLC of any items

7   of value, including Bratz products, from MGA, Larian, his spouse, his children, his

8   siblings, or their spouses, or any entity or person affiliated with them.

9           b.   Request 2: The Motion is granted

10           c.   Request 3: The Motion is granted with respect to documents

11   relating to any ownership interest by Larian, his spouse, his children, his siblings,

12   or their spouses, or any entity or person affiliated with them.

13           d.   Request 4: The Motion is granted with respect to documents

14   relating to any sources of funding by Larian, his spouse, his children, his siblings,

15   or their spouses, or any entity or person affiliated with them.

16           e.   Request 5: The Motion is granted with respect to documents

17   relating to any compensation, loans, advances, payments, fees or any other form of

18   consideration paid by IGWT 826 Investments LLC to Larian, his spouse, his

19   children, his siblings, or their spouses, or any entity or person affiliated with them.

20           f.   Request 7: The Motion is granted.

21       5.   All non-privileged documents referenced in Paragraphs 3 and 5, above,

22   shall be produced within 30 days of this Order, subject to any applicable

23   confidentiality designations available under the Protective Order.

24       6.   Nothing in this Order should be deemed to prevent Mattel from

25   seeking discovery from the MGA parties of documents encompassed by the

26   Subpoenas upon the showing of a sufficient nexus between the particular discovery

27   requests and legitimate Phase 2 issues, and subject to any applicable objections.

28   //

EXHIBIT __21__
PAGE __202__

1  Dated:  March 10, 2009

2

3

4                                          By:        /s/ Robert C. O'Brien

5                                                     ROBERT C. O'BRIEN
                                                      Discovery Master
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT   21
PAGE      203