MELINDA HAAG (State Bar No. 132612)
mhaag@orrick.com
ANNETTE L. HURST (State Bar No. 148738)
ahurst@orrick.com
WARRINGTON S. PARKER III (State Bar No. 148003)
wparker@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building, 405 Howard Street
San Francisco, CA 94105
Telephone:  +1-415-773-5700
Facsimile:   +1-415-773-5759

WILLIAM A. MOLINSKI (State Bar No. 145186)
wmolinski@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA  90017
Telephone:  +1-213-629-2020
Facsimile:   +1-213-612-2499
Attorneys for MGA Parties

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware Corporation<br><br>Defendant. | Case No. CV 04-9049 SGL (RNBx)<br><br>Consolidated with:<br>CV 04-9059<br>CV 05-2727<br><br>**DISCOVERY MATTER**<br><br>**[To Be Heard By Discovery Master Robert C. O'Brien]**<br><br>MGA PARTIES' OPPOSITION TO MATTEL, INC.'S MOTION FOR LEAVE TO TAKE ADDITIONAL DEPOSITIONS;<br><br>NOTICE AND CROSS-MOTION FOR PROTECTIVE ORDER ALTERING DEPOSITION LIMITS TO SET AN OVERALL HOURS LIMIT |
| AND CONSOLIDATED ACTIONS | [Declarations of Annette L. Hurst and Yas Raouf] |
| **PUBLIC REDACTED VERSION** | |

## NOTICE OF CROSS-MOTION AND CROSS-MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT, on a date and time to be determined by the Discovery Master, Plaintiffs and Counter-defendants MGA Entertainment, Inc., MGA HK Limited, MGAE de Mexico S.R.L. de C.V., and Isaac Larian (collectively, the "MGA Parties" or "MGA") will, and hereby do, cross-move pursuant to Rule 26(b)(2)(A) for a protective order altering the deposition limit under Federal Rule of Civil Procedure 30 ("Rule 30") by setting an hours limit of seventy (70) hours per side with no witness who is not a designated 30(b)(6) witness to be deposed in excess of 7 hours absent written agreement of both sides. This Cross-Motion is made, in part, in response to Mattel's Motion for Leave to Take Additional Depositions.

The grounds for this Cross-Motion are that this lawsuit is complex and that the number of total fact witnesses, including 30(b)(6) witnesses, who reasonably may require examination by each side, likely exceeds ten. Mattel has not exhausted its ten in seeking more than thirty depositions, however, and so it almost certainly demands testimony that will be repetitive and unnecessary. Mattel's demand to take in excess of thirty depositions for seven hours each, not even including party and 30(b)(6) witnesses, is unreasonable. The assumption that each deponent must sit for an entire day of deposition makes no sense, and forcing MGA to sit through a potential of more than two hundred hours of deposition is unduly burdensome, expensive, and harassing.

Additionally, the complexity of counting discovery in this case has already resulted in considerable motion practice. By setting an hours limit, rather than a deposition limit, the Discovery Master will avoid these problems. It will not matter which party initially noticed a non-party deposition, each side will be responsible for its total number of hours. It will not matter how many witnesses are designated for 30(b)(6) topics, as again, each side will simply be responsible for

1    efficiently conducting the depositions necessary to prove their case.  Setting an

2    hours limit promotes efficiency in examination and forces the parties to focus on

3    what counts in proving their case.  It makes a great deal of sense for this case, and

4    the Discovery Master should adopt this proposal.

5           This Cross-Motion is based upon this Notice and Motion, the

6    memorandum of points and authorities following herein, the Declarations of

7    Annette L. Hurst and Yas Raouf, filed herewith, all papers and pleadings previously

8    filed with the Court in this action, and such further evidence and argument as may

9    be presented prior to or at the hearing on this Cross-Motion.

10    **CERTIFICATE OF COMPLIANCE**

11           Counsel for the MGA Parties discussed the issue of deposition limits

12    with Mattel on more than one occasion, and also corresponded regarding the topic

13    on several occasions, but reached no agreement.

14

15    Dated:    August 21, 2009        Respectfully submitted,

16                              Orrick, Herrington & Sutcliffe LLP

17

18                    By:    _/s/ Annette L. Hurst_

19                        ANNETTE L. HURST
                              Attorneys for Plaintiff

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY OF ARGUMENT ........................................1

STATEMENT OF FACTS .......................................................................................3

    A.    Procedural Summary .............................................................................3

    B.    Prior Discovery Limits on Depositions ...............................................5

    C.    Depositions Already Conducted on Phase 2 Matters ...........................6

    D.    Noticed Depositions Since February 2009 ...........................................9

    E.    Mattel's List of Additional Deposition Witnesses ............................ 11

    F.    Meet and Confer Regarding These Motions ...................................... 12

ARGUMENT ....................................................................................................... 13

II.    Mattel's Motion Should Be Denied.................................................................. 13

    A.    Mattel's Motion is Premature............................................................ 15

    B.    To The Extent It Can Be Evaluated Properly, Mattel's Motion Seeks Duplicative Discovery and Invites Abuse ............................... 15

III.    MGA Parties' Cross-Motion to Alter Limits of Rule 30 By Setting an Hours Limit Should Be Granted .................................................................... 18

CONCLUSION .................................................................................................... 19

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Archer Daniels Midland Co.* v. *Aon Risk Servs.,Inc. of Minn.*,
187 F.R.D. 578 (D. Minn. 1999) .......................................................... 14

*Authentec, Inc. v. Atrua Technologies, Inc.*
11008 WL 5120767 (N.D. Cal. 2008) ......................................... 14, 15

*Bell* v. *Fowler*,
99 F.3d 262 (8th Cir. 1996) ................................................. 14

*Mattel, Inc.* v. *Goldberger Doll Mfg. Co.*,
236 F.R.D. 175 (S.D.N.Y. 2006) ..................................... 17

*Mattel, Inc.* v. *Walking Mountain*,
353 F.3d 792 (9th Cir. 2003) ......................................... 17

## FEDERAL STATUTES

Fed, R. Civ. P. 26 .................................................................... 2

Fed, R. Civ. P. 26(b)(2)(a) ....................................... 1, 21

Fed. R. Civ. P. 26(b)(2) .......................................... 14, 15

Fed. R. Civ. P. 26(b)(2)(A) ............................... 18

Fed. R. Civ. P. 26(b)(2)(C) ............................ 14

Fed. R. Civ. P. 30 . ................................... 1, 5, 13, 18, 19

Fed. R. Civ. P. 30(a)(2) ....................... 13, 14, 15, 17

Fed. R. Civ. P. 30(a)(2)(A) ................... 1, 18

Fed. R. Civ. P. 30(a)(2)(i) .................... 15

Fed. R. Civ. P. 30(b) ............................ 5

Fed. R. Civ. P. 30(b)(6) ...................... *passim*

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION AND SUMMARY OF ARGUMENT

The MGA Parties hereby oppose Mattel's Motion for Leave to Take Additional Depositions ("Mattel's Motion") and cross-move for a protective order pursuant to Federal Rule of Civil Procedure 26(b)(2)(a) altering the deposition limits of Federal Rule of Civil Procedure Rule 30 ("Rule 30") by setting an hours limit of seventy (70) hours per side.

Mattel's Motion should be denied because the vast number of depositions it seeks have not been demonstrated to be necessary or appropriate. Mattel has already conducted at least seventy days of deposition concerning Phase 2 issues. Mattel has not exhausted its ten depositions afforded by the Court since the Phase 2 stay was lifted. Nor has it in any way demonstrated that it truly requires forty or more depositions (the true number it really seeks when all are counted). While this case is undoubtedly complex, spending an entire day each in that many depositions is bound to result in duplicative questioning, tremendous inefficiency and undue burden.

Additionally, as Mattel has already demonstrated, it has an inability to resolve counting issues with MGA on a fair and even-handed basis. Counting issues have already occupied far more time of the Discovery Master than is warranted. Deposition counting issues have already arisen in the context of the Vargas and Trueba Letters of Request, and will undoubtedly continue to be a concern as the parties disagree about the resumption of depositions of party witnesses who were previously deposed, how to count 30(b)(6) witnesses (Mattel has proposed that there be no limits at all), and whether expert depositions have any limits. MGA's proposal for an hours limit per side makes the most sense, and should be adopted by the Discovery Master.

Mattel has already taken an enormous number of depositions in this case, many of which included examination on Phase 2 issues even excluding the

1  role that the "Bratz Enterprise" may play in Phase 2.  Despite having proposed a 25

2  per side limit initially, Mattel then identified 32 proposed fact witnesses for

3  deposition that it refused to say were a complete list.  Instead, Mattel acknowledged

4  that its list did not include many party witnesses or any 30(b)(6) witnesses.

5  Because Mattel has failed to exhaust the ten depositions it is allotted under Rule 30,

6  Mattel has made no record that this many additional depositions is truly necessary.

7  By litigating the issue in the abstract, Mattel is seeking to prevent MGA and the

8  Discovery Master from making a proper assessment whether the discovery sought

9  is unreasonably cumulative or duplicative and from assessing whether discovery

10  can be obtained from some less burdensome source, whether Mattel has had ample

11  opportunity to obtain the information, or whether the burden of at least 32

12  additional depositions is outweighed by the likely benefits—all factors which are

13  necessary to inform the disposition of Mattel's Motion under Rule 26.  Part I(A),

14  *infra.*

15          Without a proper record, Mattel's proposal to take forty or more

16  depositions simply invites abuse.  Mattel has already shown a propensity for

17  duplicative and irrelevant questioning in Phase 1 and Phase 2 of this case.  Mattel

18  should not be permitted to abusively waste the time and money of MGA and its

19  investors in a witch-hunt to deter these sources of funds from supporting MGA any

20  further.  If granted, Mattel's Motion will reconcile perfectly with its avowed

21  strategy to "litigate MGA to death."  Since Mattel should not be permitted to use

22  the burdens of this litigation to impose ancillary competitive harm upon MGA, the

23  Discovery Master should deny Mattel's Motion.  Part I(B), *infra.*

24          Finally, imposition of a limit on hours as opposed to a limit on the

25  number of depositions will cleanly resolve ancillary discovery disputes about

26  counting issues.  Which side initially noticed a party and the number of witnesses

27  designated for 30(b)(6) issues will be irrelevant, as each side must monitor its own

28  hours.  This approach promotes focus and efficiency at arriving at the merits of this

OPPOSITION AND CROSS-MOTION REGARDING ADDITIONAL
DEPOSITIONS
CV-04-0049 SGL (RNBx)

1   case. Accordingly, the Discovery Master should issue a protective order altering
2   the deposition limits to seventy hours of factual testimony per side, with no witness
3   who is not designated as a 30(b)(6) witness required to sit for more than seven
4   hours. If one side efficiently exhausts its seventy hours and requires more, it can
5   always seek more. This number of hours corresponds to the implicit hours limit
6   under Rule 30, and makes sense to encourage efficiency and the advance resolution
7   of counting disputes. Part II, *infra*.

8                          **STATEMENT OF FACTS**
9        A.   **Procedural Summary**
10                  Mattel initiated these consolidated cases on April 27, 2004 by filing a
11   complaint in Los Angeles County Superior Court against its former employee and
12   creator of the BRATZ dolls concept, Carter Bryant. Case No. 2:04-cv-09059
13   Docket #1. On November 2, 2004, Bryant filed a separate action in this Court
14   seeking declaratory relief against Mattel ("*Bryant v. Mattel*") which was numbered
15   2:04-cv-09049. 09049 Docket #1. The same day, Bryant removed (for the second
16   time) the pending state court action *Mattel v. Bryant*, which was numbered Case
17   No. 2:04-cv-09059. 09059 Docket #1. On November 16, 2004, the Court
18   transferred Case No. 09059 to Judge Manella as the judge assigned to the lower-
19   numbered related case. 09049 Docket #7. On December 7, 2004, the Court
20   approved MGA's stipulated intervention as a defendant in the removed *Mattel v.*
21   *Bryant* action. 09059 Docket #36.

22                  On April 13, 2005, MGA filed a separate unfair competition lawsuit
23   against Mattel ("*MGA v. Mattel*"), alleging trade dress infringement, unlawful
24   attempts to block the marketing of rights in the BRATZ dolls, and other efforts to
25   undermine the BRATZ product lines. 2:05-cv-02727 Docket # 1. The case was
26   transferred to Judge Manella as a related case on April 25, 2005. 02727 Docket #7.
27   Mattel answered and moved to dismiss on May 13, 2005. *Id.* Docket ##13, 14.
28   After the Court denied in part the motion to dismiss, Mattel filed an amended

1  answer on September 13, 2005.  *Id.* Docket #29.

2      On June 19, 2006, the Court consolidated all three cases and ordered

3  all subsequent filings to be made in the case with the lowest number, which was the

4  Bryant declaratory relief action.  09049 Docket #47.  On July 18, 2006, the Court

5  dismissed that case.  Docket #63.[1]  Since that time, the two cases filed by Mattel

6  and MGA respectively have proceeded in the lowest-numbered action which was

7  otherwise dismissed.  MGA's claims to be tried in Phase 2 have been pending since

8  April 2005.

9      On November 20, 2006, Mattel filed a Motion for Leave to File

10 Amended Complaint, seeking leave to amend its Complaint in *Mattel v. Bryant*.

11 Docket #89.  On January 11, 2007, the Court allowed the amendment, but required

12 Mattel to file it as a counterclaim in Case No. 2:05-cv-2727.  Docket #142.  Mattel

13 then filed its Amended Answer and Counterclaims ("AAC") on January 12, 2007.

14 Docket #143.  (Because there was an earlier Amended Answer, this was actually

15 Mattel's second amended answer).  This initial set of counterclaims filed in January

16 2007 in the 05-2727 action included a broad set of thirteen claims adding several

17 new counterclaim-defendants who were not previously parties in the case.  The

18 AAC added claims for:  (1) copyright infringement, (2) violation of the RICO act,

19 (3) conspiracy to violate the RICO act, (4) misappropriation of trade secrets, (5)

20 breach of contract, (6) intentional interference with contract, (7) breach of fiduciary

21 duty, (8) aiding and abetting breach of fiduciary duty, (9) breach of the duty of

22 loyalty, (10) aiding and abetting breach of the duty of loyalty, (11) conversion, (12)

23 unfair competition, and (13) declaratory relief.  *Id.*  The January 2007 AAC added

24 MGA Entertainment (HK) Limited, MGA de Mexico, S.R.L. de C.V., Isaac Larian,

25 and Carlos Gustavo Machado Gomez as new parties on these various

26 counterclaims.  *Id.*

27     Mattel's Counterclaims that are the subject of the Phase 2 proceeding

28 

---

[1] All subsequent docket references are to the consolidated case docket in 04-9049.

OPPOSITION AND CROSS-MOTION REGARDING ADDITIONAL
DEPOSITIONS
CV-04-0049 SGL (RNBx)

1  have been pending since January 2007.  The Court granted a stay ("Stay") of Phase

2  2 discovery on February 4, 2008 (Docket #1931 at 3), and that Stay was vacated on

3  January 6, 2009 (Docket #4640 at 2).

4          On April 8, 2009, Mattel filed its Motion for Leave to File Third

5  Amended Answer and Counterclaims ("TAAC").  *Id.* Docket #5143.[2]  In its Motion

6  for Leave, Mattel argued that the filing of the new pleading would "not

7  significantly expand the scope of the case, if at all."  Docket # 5143 at 16.

8          The Court granted leave to file the "TAAC" on May 21, 2009 and it

9  was deemed filed as of that date.  Docket #5565.  The TAAC includes one new

10  claim not alleged in the SAAC—a claim for avoidance of intentional and

11  constructive fraudulent transfers under the uniform fraudulent transfer act.  Docket

12  #5566 ¶¶217-222.  It also includes an additional RICO racketeering enterprise not

13  previously identified, the "IGWT Enterprise," additional predicate acts, and a host

14  of new allegations concerning Jorge Castilla that the Court found were previously

15  known by the parties to be implicated in the case.  *Id.* ¶¶ 2, 7, 16, 77-87, 95-97, 105,

16  107, 112, 114; Docket #5565 (May 21, 2009 Order) at 6 ("[T]he Court finds that

17  the proposed [Castilla] amendments are not untimely; instead, they are in the nature

18  of 'clean up' amendments that succinctly state existing issues fairly stated in the

19  SAAC when measured by the requirements of Rule 8(a)").

20     **B.**   <u>**Prior Discovery Limits on Depositions**</u>

21          At the February 12, 2007 scheduling conference for Phase 1, the Court

22  set an initial limit of 24 fact witness depositions per side.  Declaration of Yas Raouf

23  in Support of MGA Parties' Opposition to Mattel's Motion for Leave to Take

24  Additional Depositions and Cross-Motion ("Raouf Decl.") Ex. A at 6.  While the

25  Court increased the number of depositions permitted by Rule 30, this increase

26  ultimately functioned as a delimiting cap.  The Court imposed the limit after Mattel

27  

---

28  [2] The Second Amended Answer and Counterclaims were filed on July 12, 2007 ("SAAC").  *Id.* Docket #635, 636, and unnumbered entry after Docket #640.

OPPOSITION AND CROSS-MOTION REGARDING ADDITIONAL DEPOSITIONS
CV-04-0049 SGL (RNBx)

1   asked for "40 nonexpert depositions with no limit on the number of 30(b)

2   witnesses" and "no limit on the number of expert witnesses."  The Court found this

3   request "disconcerting" and decided that—even in the face of claims coverings

4   what Mattel characterized as "a very, very broad scope of activity"— it would limit

5   the number of depositions because an outer limit of "infinity just doesn't work."  *Id.*

6   at 5.  Despite Judge Larson's express rejection of Mattel's proposal for an infinite

7   number of 30(b)(6) depositions in Phase 1, Mattel again made that proposal in

8   Phase 2.

9       C.    **Depositions Already Conducted on Phase 2 Matters**

10           At the February 11, 2009 scheduling conference, the Court made

11   explicit that it "placed no limits [on depositions], no restrictions, other than what is

12   set forth in the rules of civil procedure" until trial in March 2010."  Raouf Decl. Ex.

13   B at 9.  By the time of this conference, Mattel had already conducted fact witness

14   depositions comprising seventy volumes in this case.  Raouf Decl. ¶4.  Mattel

15   concedes that seven of those depositions related primarily to Phase 2 issues, in

16   particular the depositions of MGA recruiter Schuyler Bacon on September 9, 2007;

17   MGA President of Global Sales and Marketing Ron Brawer[3] on February 5, 2008;

18   MGA Vice President of Customer Marketing Nick Contreas on January 28, 2008;

19   MGA Vice President of Sales Dan Cooney on January 28, 2008; MGAE de Mexico

20   Rule 30(b)(6) witness Susana Kuemmerle on January 28, 2009; former Mattel

21   employee Jorge Castilla[4] on October 22, 2008; and MGAE de Mexico Marketing

22   Direcotr Gustavo Gomez on October 14, 2008.  Mot. at 2, n.5.

23           But a review of the transcripts from the 70 deposition sessions also

24   reveals that Mattel addressed Phase 2 matters with at least 20 other deponents

25

26   [3] Mattel conducted what it describes as a "primarily Phase 2 deposition" of Mr.
Brawer on January 5, 2008—one day after imposition of the Phase 2 discovery

27   stay.  Mattel Mot. at 2, n.5.
[4] The depositions of Messrs. Castilla and Gomez were taken as court-ordered

28   exceptions to the February 4, 2008 stay on Phase 2 discovery.  09049 Docket #4293
(May 4, 2008 Order).

OPPOSITION AND CROSS-MOTION REGARDING ADDITIONAL
DEPOSITIONS
CV-04-0049 SGL (RNBx)

before the Phase 2 scheduling conference—and to a significant degree in some instances.

| DEPONENT | DEPOSITION DATE | PHASE 2 MATTERS |
|---|---|---|
| Nana Ashong | 01/28/08 | Misappropriation of trade secrets ("Misappropriation") |
| Matt Bousquette | 05/17/08 | Misappropriation; RICO & Conspiracy |
| Kerri Brode | 08/15/07 | RICO |
| Ana Cabrera | 05/08/08 | RICO; Conspiracy |
| Nick Contreras | 01/28/08 | Conversion; RICO; Unfair Competition |
| Paula Garcia | 05/24/07 | RICO; Conspiracy; Unfair Competition |
| Paula Garcia | 05/25/07 | Conversion; RICO; Conspiracy; Unfair Competition |
| Kami Bryant-Gillmore | 05/08/08 | RICO; Conspiracy |
| Daphne Gronich | 05/02/08 | Misappropriation; RICO; Conspiracy |
| Rachel Harris | 02/26/08 | RICO; Conspiracy |
| Samir Khare | 09/20/07 | Conversion; RICO; Conspiracy; Unfair Competition |
| Samir Khare | 01/23/08 | Conversion; RICO; Conspiracy; Unfair Competition |
| Samir Khare | 05/14/08 | RICO; Conspiracy |
| Mitchell Kamarck | 01/28/08 | RICO; Conspiracy |
| Fred Kawashima | 06/19/07 | Conversion; Unfair Competition |
| Isaac Larian | 07/18/06 | RICO; Conspiracy; Unfair Competition |
| Farhad Larian | 05/06/08 | RICO; Conspiracy |
| David Laughton | 06/11/08 | RICO |
| Kenneth Lockhart | 06/14/07 | RICO |
| Peter Marlow | 05/02/08 | RICO; Conspiracy; Unfair Competition |
| Peter Marlow | 06/16/08 | RICO; Conspiracy; Unfair Competition |
| Veronica Marlow | 12/28/07 | RICO; Conspiracy; Unfair Competition |
| Beatriz Morales | 04/29/08 | Misappropriation; RICO; Conspiracy; Unfair Competition |
| David Rosenbaum | 01/25/08 | RICO |
| Joe Tiongco | 05/09/08 | RICO |
| Lisa Tonnu | 07/19/07 | RICO |

- 7 -

| Lisa Tonnu | 09/24/07 | RICO |
| Lisa Tonnu | 09/25/07 | RICO |
| Lisa Tonnu | 01/17/08 | RICO |
| Lisa Tonnu | 01/24/08 | RICO |
| Anne Wang | 01/28/08 | RICO |

Raouf Decl. ¶5.

Since the Stay was not imposed until February 4, 2008, all of the witnesses taken prior to that date were fair game for Phase 2 issues, and many were deposed thereon. For example, during its second, post-Stay deposition of Isaac Larian on March 26, 2008, Mr. Zeller touched on every topic in the counterclaims of the SAAC—including misappropriation of trade secret, RICO, RICO conspiracy, and unfair competition claims—as well as topics bearing no seeming relevance to this case. Mr. Zeller examined Mr. Larian about every single one of the employees who purportedly misappropriated trade secrets, including Mr. Castilla (Raouf Decl. Ex. C at 46-48), Messrs. Machado and Vargas and Ms. Trueba (*id*. at 29, 33-38, 39-41, 45-46), Mr. Brawer (*id*. at 82) and Ms. Brisbois. *Id*. at 79-81. Mr. Zeller examined the witness concerning MGA's claims of unfair competition, dwelling at length, for example, on MGA's contention that Mattel's MY SCENE BARBIE was a knockoff. *Id*. at 17-19. Mr. Zeller explored at length the witness's conception of what constituted fair vs. unfair, or ethical vs. unethical, business practices. *Id*. at 15-22. He asked about insurance policies potentially implicated by the suit. *Id*. at 65. Mr. Zeller examined the witness regarding the Larian family trusts, Mr. Larian's net worth, and other assets. *Id*. at 86-89. Finally, Mr. Zeller examined Mr. Larian regarding the three seamstresses and the duty of loyalty. *Id*. at 89-92. In short, Mr. Zeller examined the witness on every topic then in the case about which he could have reasonably been expected to have knowledge.

In addition to this comprehensive examination of Mr. Larian on topics of relevance, however, Mattel also demonstrated a propensity to waste time on irrelevancies. For example, Mr. Zeller questioned the witness regarding

- 8 -

1  Funimation and Dragon Ball Z.  Raouf Decl. Ex. C at 25-28.  He examined at

2  length on the relationship between two-dimensional and three-dimensional works

3  under Hong Kong copyright law, again questioning (as had Mr. Quinn) about

4  documents submitted in litigation there.  *Id.* at 398-99, 57-63.  He again asked Mr.

5  Larian about business disputes and legal proceedings with his brother, Farhad

6  Larian, as had Mr. Quinn in the first deposition.  *Id.* at 69-78.  That pattern repeated

7  itself with the recent deposition of Leon Neman, who was also asked a variety of

8  irrelevant and time-wasting questions.  Indeed, Mattel's counsel asked asking for

9  the street name for an apartment rented by Mr. Neman some 18 years go (Raouf

10  Decl. Ex. D at 95-96 ); the physical description of someone from Lexington

11  Financial who Mr. Neman met five or six years ago (*id.* at 96); whether a particular

12  cousin was from his mother's or father's side of the family (*id.* at 97); and asking

13  questions about Lexington Financial for which Mr. Neman would have no

14  foundation to answer (*id.* at 98).

15      **D.    Noticed Depositions Since February 2009**

16          Mattel claims it has noticed nine post-Stay depositions and that

17  "[n]one . . . has been produced."  Mattel Mot. at 5.  This claim is inaccurate and

18  misleadingly incomplete:

19          Shirin Salemnia

20          Ms. Salemnia is a third-party not represented by MGA's counsel.

21          Pablo Vargas & Mariana Trueba

22          Mattel initially noticed the depositions of Vargas and Trueba in

23  January 24, 2008.  Docket # 5088 at 26.  Because neither Vargas nor Trueba were

24  managing agents of MGAE de Mexico, MGA pointed out that Mattel could not

25  compel their attendance simply by notice.  *Id.*  Mattel's motion to compel was

26  stayed along with other Phase 2 discovery and finally denied without prejudice on

27  September 23, 2008.  *Id.*  Mattel again noticed Vargas on January 27, 2009 and

28  Trueba on January 28, 2009.  MGA renewed its former objection, and Mattel again

- 9 -

1    moved to compel. *Id.* The Discovery Master rejected the claim that the witnesses

2    were managing agents, and directed Mattel to prepare letters of request. *Id.* Upon

3    filing of those letters, MGA *immediately agreed* that the depositions should

4    proceed, seeking only to depose them as well on topics of significance to its claims

5    and defenses. 09049 Docket #6090 at 1-2. Mattel then objected to MGA's

6    proposed topics, and complained that the depositions should count against MGA as

7    well as against Mattel, and that Mattel's time with the witnesses should not be

8    limited by MGA's examination. 09049 Docket #6161 at 2. Had Mattel pursued the

9    appropriate procedural vehicle for these depositions from the outset, they could

10   have been taken long ago.

11        Fred Mashian

12        He is not represented by MGA's counsel and MGA is unaware

13   whether any further scheduling discussions have occurred regarding his deposition

14   Hurst Decl. ¶6.

15        Neil Kadisha

16        The deposition of non-party Neil Kadisha if set for August 28, 2009.

17   Raouf Decl. ¶9.

18        Leon Neman

19        Non-party Mr. Neman was deposed on August 14, 2009. Raouf Decl.

20   ¶8.

21        Patrick Ma & Edmund Lee

22        Mattel noticed Mr. Ma and Mr. Lee for deposition in Hong Kong on

23   two weeks' notice. Hurst Decl. Exs. B, C. Since Mr. Lee had already been

24   deposed for three days during Phase 1, the Notice to him was served in violation of

25   Rule 30(d)(1). MGA indicated it was prepared to file a motion for protective order,

26   but also offered to bring Mr. Ma to Los Angeles for deposition at a mutually

27   convenient time. After additional consideration of the issue, MGA also offered to

28   bring Mr. Lee to Los Angeles for one additional day of deposition, even though he

OPPOSITION AND CROSS-MOTION REGARDING ADDITIONAL
DEPOSITIONS
CV-04-0049 SGL (RNBx)

1   had already been deposed for three days, provided that both depositions counted

2   against the ten deposition limit.  *Id.*  Mattel agreed, and the parties have exchanged

3   scheduling information with a view to scheduling the depositions towards the end

4   of September.  Hurst Decl. ¶4.

5                    Susan Kim

6                    Susan Kim is a former Mattel employee who submitted a declaration

7   for Mattel.  She was recently subpoenaed by Mattel despite having voluntary

8   provided Mattel with testimony.

9                    Peter Carson

10                   Non-party Peter Carson was subpoenaed for deposition on August 25,

11   2009.  He is not represented by MGA's counsel and MGA is unaware whether any

12   further scheduling discussions have occurred regarding his deposition.  Hurst Decl.

13   5.

14   **E.      Mattel's List of Additional Deposition Witnesses**

15                   Despite having represented to the Court that its last amendment would

16   hardly change the case, and despite having already taken more than seventy

17   volumes of deposition many of which concerned Phase 2 issues, Mattel now argues

18   that the discovery ground it must cover is very broad.  Mot. at 8-9.  Initially, Mattel

19   sought a deposition limit of 25 per side with unlimited 30(b)(6) depositions.  After

20   discussion, however, Mattel increased its demand even further, offering a long list

21   of proposed deponents, including: 1) Omni 808 Rule 30(b)(6) witness ("PMK"), 2)

22   Neil Kadisha, 3) Benjamin Nazarian, 4) Joseph Monian, 5)Vision Capital, 6) David

23   Nazarian, 7) Arsalan Gozini, 8) Elahe Pezeshkifar, 9) Angela Larian, 10) Shirin

24   Makabi, 11) Jahangir Eli Makabi, 12) Peter Carson, 13) Fred Mashian, 14) Leon

25   Neman, 15) Leon Farahnik, 16) Susan Kim, 17) Brian Wing, 18) John Woolard, 19)

26   Tom Allison, 20) PMK for Bank of Ireland, 21) PMK for Cerberus, 22) PMK for

27   Silverpoint, 23)  PMK for IGWT Group, LLC, 24) PMK for IGWT 826

28   Investments, LLC, 24) PMK for Lexington, 25) PMK for Wachovia, 26) Patrick

- 11 -

1   Ma, 28) PMK for MGA Canada, 29) Pablo Vargas, 30) Mariana Trueba, 31) Janine

2   Brisbois, and 32) Shirin Salmenia. *Id.* at 10-27.  With no proposed restriction on

3   how many hours it may spend with each witness, Mattel's articulated deposition list

4   equates to 224 (32 x 7 = 224) hours of deposition.

5             This list, however, is incomplete: Mattel qualifies its Motion, stating

6   that it "cannot yet identify each of the witnesses it will eventually need to depose"

7   and that 32 identified individuals and entities are merely those it is entitled to

8   depose "at this point." Mattel Mot. at 9-10.  This list also fails to include those

9   witnesses Mattel has already deposed and purports to require additional time with,

10  *e.g.*, Isaac Larian, Ronald Brawer, and Edmund Lee. Declaration of Scott L.

11  Watson in Support of Mattel's Motion for Leave to Take Additional Depositions

12  ("Watson Decl.'). Ex 70 at 880.  The list does not include Counter-Defendant

13  Machado, or a number of other persons implicated by its trade secret claims.  The

14  list does not include its proposed endless examination of Counter-Defendants as

15  30(b)(6) deponents.  Mattel's Motion contemplates limitless examination.

16  **F.**    **Meet and Confer Regarding These Motions**

17            On July 15, 2009, Mr. Proctor first contacted MGA's counsel to

18  discuss the possibility of stipulation to depositions beyond the Rule 30 limit of ten,

19  proposing an increased limit of 25 fact witnesses per side and an unlimited number

20  of 30(b)(6) topics and days of examination. Hurst Decl. ¶2.  MGA's counsel

21  agreed that depositions in excess of ten were likely to be necessary, but indicated

22  that not enough information was available to make a reasonable estimate and that

23  the 30(b)(6) proposal was quite troubling. *Id.*  After further consideration, MGA

24  expressed its view that it was too soon to agree to any number and that it would be

25  best to proceed by exchanging lists of deponents for scheduling purposes.  MGA

26  offered to engage in reasonable cooperation. *Id.*  Mattel apparently took the request

27  to exchange lists for scheduling as an invitation to provide a list of witnesses to

28  alter the limit. Hurst Decl. ¶3.  Counsel for MGA forwarded the list to client

OPPOSITION AND CROSS-MOTION REGARDING ADDITIONAL
DEPOSITIONS
CV-04-0049 SGL (RNBx)

1   representatives for discussion and consideration, but before a response could be
2   made, Mattel filed this Motion. *Id.*

3          Still, MGA sought to continue the dialogue on deposition limits. On
4   August 14, MGA's counsel called Mattel's counsel to propose altering the Rule 30
5   deposition limit by imposing an hours-based restriction per side rather than a pure
6   deposition limit. Hurst Decl. ¶7. The proposal was that each side would be allotted
7   110 hours of deposition time to use with all fact witnesses of its choice, including
8   30(b)(6) witnesses. *Id.* MGA explained that this proposal would also avoid a lot of
9   counting disputes that had already arisen by setting a clear benchmark.

10         Mattel responded that it did not think "either party should have the
11  ability, or has need, to depose an indefinite number of people without any showing
12  of cause or justification as [MGA's] proposal invites." Hurst Decl. Ex D at 2. This
13  response was quite surprising, since that is precisely what Mattel had already
14  sought to do with its Motion. In fact, as MGA pointed out in response, Mattel was
15  seeking far in excess of 110 hours of deposition since it sought to depose 32 fact
16  witnesses and an unlimited number of 30b6 witnesses as well as some number of
17  other unspecified party witnesses, without any time limit as to each deposition.
18  Mattel's implicit hours calculation thus far exceeded what MGA had proposed, and
19  was at least more than 210 hours (32 x 7 = 224). *Id.* MGA also pointed out that an
20  hours limit encouraged efficiency through prioritization and avoidance of
21  duplication, and eliminated the need for counting disputes. *Id.* Still, in order to
22  address Mattel's stated concern, MGA revised its proposal and offered that each
23  side simply abide by the 70 hours limit implicit in Rule 30. *Id.* Mattel made no
24  further response, and this Cross-Motion followed.

25                     **ARGUMENT**
26  **II.    MATTEL'S MOTION SHOULD BE DENIED.**
27         Federal Rule of Civil Procedure 30(a)(2) presumptively limits the
28  number of depositions each side may take. One of the aims of Rule 30(a)(2) is to

1    "emphasize that counsel have a professional obligation to develop a mutual cost-
2    effective plan for discovery in the case. Advisory Comm. Notes to Rule 30(a)(2).
3    "A party must obtain leave of court, and the court must grant leave to the extent
4    consistent with Rule 26(b)(2) . . . if the parties have not stipulated to the deposition
5    and . . . the deposition would result in more than 10 depositions being taken." Fed.
6    R. Civ. P. 30(a)(2).

7           Rule 26(b)(2) requires that Mattel undertake a benefit-burden
8    balancing analysis in order to exceed the limit impose by Rule 30. Under Rule 30,
9    the burden is on "the party seeking to exceed the presumptive number of
10   depositions [to] make a particularized showing of the need for the additional
11   discovery." *Authentec, Inc. v. Atrua Technologies, Inc.*, 2008 WL 5120767 at *1
12   (N.D. Cal. 2008); *see also Bell v. Fowler*, 99 F.3d 262, 271 (8th Cir. 1996) (where
13   plaintiff "presented no good reason why additional depositions were necessary . . .
14   [t]he district court committed no abuse of discretion" in denying leave to do so);
15   *Archer Daniels Midland Co. v. Aon Risk Servs., Inc. of Minn.*, 187 F.R.D. 578, 586
16   (D. Minn. 1999) ("In practical terms, a party seeking leave to take more depositions
17   . . . than are contemplated by the Federal Rule or by the Court's Scheduling Order,
18   must make a particularized showing of why the discovery is necessary.").

19          Even with a showing of particularized need, in assessing the motion for
20   leave to take additional depositions, the Discovery Master must consider (i)
21   whether the discovery sought is unreasonably cumulative or duplicative or can be
22   obtained from some other source that is more convenient, less burdensome or less
23   expensive, (ii) whether the party seeking discovery has had ample opportunity to
24   obtain the information, or (iii) whether the burden outweighs the likely benefits.
25   Fed. R. Civ. P. 26(b)(2)(C). If any of these three factors is met, the discovery must
26   be limited. *Id.*

27   **A.     Mattel's Motion is Premature**
28          Without a record of depositions to evaluate—and Mattel has not

1   provided that record—it is difficult to conclude that the factors of Rule 26(b)(2) are

2   satisfied by the Motion.  The list of witnesses contains a great deal of duplication—

3   30b6 witnesses as well as numerous fact witnesses associated with the same

4   entities.  To address this problem, Rule 30 has an exhaustion requirement.  By its

5   terms, Rule 30 requires a court order when the notice to be served would result in

6   more than ten depositions being taken.  Fed. R. Civ. P. 30(a)(2)(A)(i).  As Mattel

7   has taken only one deposition since the Court issued its February 2009 Order, that

8   threshold has not yet been met.

9            Thus, Rule 30(a)(2) requires a party to "appropriately exhaust its

10  current quota of depositions, in order to make an informed request for an

11  opportunity to depose more witnesses, before seeking leave to depose a legion of

12  others."  *Authentec, Inc. v. Atrua Technologies, Inc.*, 2008 WL 5120767 at *1 (N.D.

13  Cal. 2008) (order denying leave to take 14 extra depositions).  This exhaustion

14  requirement makes sense; without it, the court cannot conduct a full 26(b)(2)

15  analysis regarding cumulative or duplicative discovery or the party's prior

16  opportunity to obtain information, either in the same or other forms

17  **B.    To The Extent It Can Be Evaluated Properly, Mattel's Motion
18        Seeks Duplicative Discovery and Invites Abuse**

19            Many of the 32 depositions sought by Mattel appear likely to be

20  duplicative or cumulative.  Nearly all of them concern the Omni transaction funding

21  MGA, and all of them appear designed to simply establish the same facts over and

22  over regarding that transaction.

23            For example, ███████████████████████████████

24  ██████████████; still, Mattel desires to continue to pursue discovery

25  of Lexington because it will not believe him.  Mattel wants to take all of these

26  depositions because it speculates (with allegations on unspecified "information and

27  belief") that Mr. Larian was somehow the source of every tranche of money in the

28  Omni funding transaction which has already been disclosed.  Every time Mattel

1   gets information contrary to its theory, it simply redoubles its efforts by wasting a

2   day with the next witness obtaining the same testimony.

3          The list is duplicative on its face, because it includes multiple 30(b)(6)

4   requests of entities such as Omni, Vision Capital and other founders, while at the

5   same time seeking the depositions of one or more individuals associated with each.

6   Indeed, Mattel proceeded with the deposition of Mr. Neman, and will proceed with

7   the deposition of Mr. Kadisha, despite having been informed that each would also

8   be the 30(b)(6) witness of the respective entity with which he is associated.  Rather

9   than serve the 30(b)(6) notice so that each could testify simultaneously as an

10   individual and representative witness, Mattel simply barged ahead.  If it serves the

11   30b6 notices nonetheless as it states it wishes to do in this Motion, then this will be

12   the definition of unreasonably cumulative or duplicative discovery.

13          Mattel also has not established good cause as to why it must conduct

14   full day depositions of each of its proposed deponents.  Allowing Mattel to conduct

15   full seven-hour depositions of so many witnesses is an invitation to abuse. Under its

16   proposal, Mattel could simply keep asking questions until the allotted time runs out,

17   irrespective of whether it is an efficient use of resources.  And MGA has reason to

18   suspect that Mattel will take advantage of just such an opportunity to waste time.

19          Mattel has already demonstrated a lack of discipline in focusing on

20   topics relevant to Phase 2.  At its August 14, 2008 deposition of Leon Neman—the

21   first of its post-Stay depositions—for example, Mattel strayed from Phase 2 issues

22   repeatedly, asking for the street name for an apartment rented by Mr. Neman some

23   18 years go (Raouf Decl. Ex. D at 95 ); and asking whether a particular cousin was

24   from his mother's or father's side of the family (*id*. at 162).

25          These parties are competitors, and Mattel uses the psychological and

26   financial burdens of litigation as ancillary distractions designed to extinguish its

27   competition. *See Mattel, Inc. v. Walking Mountain*, 353 F.3d 792, 816 (9th Cir.

28   2003) (affirming sanctions against Mattel for abuse of discovery and reversing

1   denial of attorneys' fees award to defendant); *Mattel, Inc. v. Goldberger Doll Mfg.*

2   *Co.*, 236 F.R.D. 175, 177 (S.D.N.Y. 2006) (refusing to vacate judgment of

3   noninfringement pursuant to settlement "because—precisely because of Mattel's

4   aggressiveness-there is a public interest in knowing, as the Court's prior findings

5   and judgment establish, that not every female doll is a Barbie knock-off"). As Mr.

6   Brawer, a former Mattel executive, testified in his deposition:



18   Raouf Decl. Ex. E at 102.

19          Mattel seeks a floor of 224 hours of deposition, which is plainly

20   unreasonable on the current record. Such a result will unreasonably cost MGA

21   time, money, and investors—a tack consistent with its strategy to "litigate MGA to

22   death" and diametrically opposition to Rule 30(a)(2)'s aim of encouraging cost-

23   effective discovery. Neither an outer limit "of infinity" on the number of

24   depositions, nor an outer limit of seven hours on each of a minimum of 32

25   depositions will work. Even Mr. Proctor cedes that "[n]either party should have the

26   ability, or has the need, to depose an indefinite number of people without any

27   showing of cause or justification." Hurst Decl. Ex D. at 2.

28          Mattel's Motion should be denied without prejudice to Mattel returning

1    to explain that it used its deposition time allotment under Rule 30 wisely to

2    examine witnesses on new topics and exactly what it could not accomplish.

3    **III.   MGA PARTIES' CROSS-MOTION TO ALTER LIMITS OF RULE 30 BY SETTING AN HOURS LIMIT SHOULD BE GRANTED**

4

5          MGA agrees with Mattel to this extent:  considering the counting

6    challenges that have already been faced, the need for 30(b)(6) testimony and to

7    perpetuate trial testimony of third party witnesses outside of the reach of a trial

8    subpoena, and the breadth and complexity of the Phase 2 proceedings, it is likely

9    that both sides will require more than ten depositions counting strictly by the

10   number of persons deposed.  MGA, however, believes the challenges of counting

11   disagreements and complexity can be met with an even-handed approach that

12   emphasizes prioritization, focus and efficiency.  Accordingly, MGA offers its cross-

13   motion for a protective order altering the limits of Rule 30 to provide for an overall

14   hours limit per side.  This is a strategy often used in complex intellectual property

15   litigation.  *See* Hurst Decl. ¶8.

16         Rule 26(b)(2)(A) permits exactly such an alteration.  Under that rule,

17   "the court may alter the limits in these rules on the number of depositions . . . or the

18   length of depositions under Rule 30."  Fed. R. Civ. P. 26(b)(2)(A).  *See also* Hurst

19   Decl. Exs. E, F.  Accordingly, MGA respectfully submits that the Discovery Master

20   should alter the limits of Rule 30 by limiting each side to 70 hours of deposition

21   time to be used on all fact witnesses, while maintaining the rule of no more than

22   seven hours of deposition per witness other than Rule 30(b)(6) witnesses.[5]  These

23   types of hours limits are also routinely used by courts in managing the length,

24   complexity and burdens of trials.

25         In addition to providing an even-handed approach that emphasizes

26

27   [5] MGA's Cross-Motion does not change its position with respect to the depositions of Isaac Larian and Ronald Brawer.  MGA still contends that Mattel needs no more than four additional hours with Mr. Larian, and that Mattel should not be permitted to depose Mr. Brawer at all.

28

- 18 -

1   efficiency, this hours-based approach will resolve several other disputed counting

2   issues now so that all parties have a level playing field in advance of commencing

3   substantial investments in deposition taking.  An hours limit resolves the counting

4   of 30(b)(6) witnesses (which is not expressly deal with in Rule 30), and will also

5   solve the problem of allocating non-party witnesses against each side's count when

6   both parties examine those witnesses..

7            An hours limit makes good, common sense if the parties are trying to

8   avoid unreasonable duplication and burden.  Mattel's only objection to it, that it

9   would permit an indefinite number of depositions, is not a genuine objection since

10   that is exactly what Mattel seeks anyway—indeed, Mattel has straightforwardly and

11   expressly sought (twice now) to have no limit at all on 30(b)(6) depositions.  It is

12   Mattel who wishes to be essentially unbound in its deposition taking both as to

13   number and time.  Nor is it even accurate that an hours limit will permit an

14   unlimited number of depositions, because prioritization will require both sides to

15   focus on the witnesses who matter most in order to stay under their limits.

16            Mattel's real complaint is not that MGA's hours limit allows too much,

17   but that it would require efficiency and prevent the unreasonable duplication and

18   expense which appears to be precisely Mattel's goal.  Mattel has no legitimate

19   objection to an hours-based approach, and it should be adopted by the Discovery

20   Master.

21

22

23

24

25

26

27

28

OPPOSITION AND CROSS-MOTION REGARDING ADDITIONAL
DEPOSITIONS
CV-04-0049 SGL (RNBx)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CONCLUSION

For all of the foregoing reasons, Mattel's Motion for Leave to Take Additional Depositions should be denied, and the MGA Parties' Cross-Motion for Protective Order Altering Rule 30 Deposition Limits by Setting An Hours Limit should be granted.

Dated:     August 21, 2009                    Respectfully submitted,

ANNETTE L. HURST
Orrick, Herrington & Sutcliffe LLP


By:     */s/ Annette L. Hurst*
ANNETTE L. HURST
Attorneys for Plaintiff

OPPOSITION AND CROSS-MOTION REGARDING ADDITIONAL
DEPOSITIONS
CV-04-0049 SGL (RNBx)