QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>**SUPPLEMENTAL DECLARATION OF MICHAEL T. ZELLER IN SUPPORT OF MATTEL, INC.'S MOTION TO MODIFY SCHEDULING ORDER**<br><br>Date:   August 31, 2009<br>Time:   1:30 p.m.<br>Place:  Courtroom One<br><br>**Phase 2:**<br>Disc. Cut-off:     Dec. 11, 2009<br>Pre-trial Con.:    Mar. 1, 2010<br>Trial Date:        Mar. 23, 2010 |

**PUBLIC REDACTED VERSION**

## DECLARATION OF MICHAEL T. ZELLER

I, Michael T. Zeller, declare as follows:

1. I am a member of the bars of the States of California, New York and Illinois and a partner at Quinn Emanuel Urquhart Oliver & Hedges, LLP, attorneys for plaintiff and counter-defendant, Mattel, Inc. ("Mattel"). I make this declaration of personal, firsthand knowledge and, if called and sworn as a witness, I could and would testify competently thereto.

2. Since Mattel filed its motion to modify the scheduling order, there have been several additional delays by defendants and their affiliates, examples of which are discussed below.

**Depositions of Neman and Kadisha:**

3. ███████████████████████████████████████████████████████████████████████████████████████. Mr. Neman also is Isaac Larian's brother-in-law and has served as an MGA director. As noted in Mattel's motion, Mattel has been attempting to depose Mr. Neman and Mr. Kadisha since February, and the Discovery Master Ordered them in May to appear for deposition. Although their time for compliance expired by the end of July 2009, neither Mr. Neman nor Mr. Kadisha appeared for deposition. Instead, only after Mattel had made repeated inquiries for deposition dates, they moved to Discovery Master to delay their depositions until September based on the existences of other discovery disputes and unspecified alleged "scheduling problems." (Motion at 19-20.)

4. Subsequently, the Discovery Master rejected their request, noting that their position was "unsupported by any legal authority," and that the forty-five days they had been granted in which to schedule the depositions "should have been more than sufficient for any scheduling conflicts to have been avoided." Mr. Kadisha and Mr. Neman were ordered again to appear for deposition by August 13, 2009. Attached hereto as Exhibit 1 is a true and correct copy of Phase 2 Discovery

Matter Order No. 43, dated July 30, 2009, in which the Discovery Master made these rulings.

5. Neverthless, Mr. Kadisha did not appear. When his request for a full month's delay was denied, counsel represented for the first time that Mr. Kadisha had left or was leaving the country for a month of vacation and could not appear until the last week of August. Counsel did not provide any indication of when Mr. Kadisha scheduled and/or left for this vacation, or whether it was planned after he had already been ordered to appear for deposition. Attached hereto as Exhibit 2 is a true and correct copy of a letter from Todd Gordinier to Discovery Master O'Brien, dated August 3, 2009, reflecting these representations.

6. Based on Mr. Kadisha's claims of unavailability, the Discovery Master ordered him for the third time to appear for deposition, this time no later than the week of August 24, 2009. Attached hereto as Exhibit 3 is a true and correct copy of Phase 2 Discovery Matter Order No. 44, dated August 4, 2009, so reflecting. In total, Mattel has been seeking Mr. Kadisha's deposition for some seven months and he has yet to appear.

7. Mr. Neman, for his part, did belatedly sit for deposition on August 14, 2009, [REDACTED]

8.    Without addressing the substance, ███████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████.

9.    Mr. Neman's counsel nevertheless did not file any motion to strike and, because he ignored Mattel's inquiries as to the status of any such motion, he forced Mattel to file a motion with the Discovery Master ███████ ████████████████████████████████.  Attached hereto as Exhibit 5 is a true and correct copy of my letter to Discovery Master O'Brien, dated August 19, 2009.

10.    The Discovery Master lifted the restrictions ███████ ██████ on August 20, 2009, one week after it was taken.  Attached hereto as Exhibit 6 is a true and correct copy of Discovery Master O'Brien's email to the parties, dated August 20, 2009.

11.    As of this writing, Mr. Neman is the only witness who has been made available to Mattel for deposition in the eight months since the Phase 2 discovery stay was lifted in January 2009. ████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

█████████████████████████████████

█████████████████████████████████████

1. ████████████████████████████████████████
2. ████████████████████████████████████████
3. ████████████████████████████████████████
4. ████████████████████████████████████████
5. ████████████████████████████████████████
6. ████████████████████████████████████████
7. ████████████████████████████████████████
8. ████████████████████████████████████████
9. ████████████████████████████████████████
10. ████████████████████████████████████████
11. ███████████████████████████████████
12. █████████████████████████████████████.

**Larian Does Not Produce His Hard Drives As Ordered, And MGA Refuses To Supplement:**

12. As noted in Mattel's motion, after the Discovery Master rejected Isaac Larian's claims that he had no obligation to supplement his discovery by producing hard drives that this Court ordered him to produce, Mr. Larian was ordered to provide his hard drives for inspection by July 27, 2009. (Motion at 22-23.) He did not do so—and, almost a month after the deadline, still has yet to produce a single one of his hard drives as ordered.

13. On July 30, 2009, Mattel wrote to Mr. Larian's counsel regarding this failure to comply with the Discovery Master's Order. Attached hereto as Exhibit 7 is a true and correct copy of a letter from Marshall Searcy to Annette Hurst, dated July 30, 2009.

14. Mr. Larian's counsel responded the next day and stated that Mr. Larian would make the hard drives available for inspection no later than August 8, 2009. Attached hereto as Exhibit 8 is a true and correct copy of a letter from Theresa A. Sutton to Marshall Searcy, dated July 31, 2009.

15. Mr. Larian did not provide his hard drives by August 8, 2009. Instead, on August 6, 2009, counsel for MGA wrote to Mattel purporting to raise new conditions to its compliance with the Discovery Master's Order, such as demanding that Mattel's consultant sign an "undertaking." Counsel for Mattel responded the same day with the requested information. On August 10, 2009, counsel for MGA wrote again with additional conditions, including a demand that Mattel's consultants provide any materials they wished to copy to defendants' counsel for a privacy review. Attached hereto as Exhibit 9 is a true and correct copy of email correspondence between Marshall Searcy and Annette Hurst, dated between August 6, 2009, and August 10, 2009.

16. On August 11, 2009, Mattel replied to counsel's email, stating that while Mr. Larian's counsel could conduct a review for privilege, there was no basis for a similar "privacy" review, and agreeing to conduct the inspection at a location of Mr. Larian's choice. Mattel also asked that defendants provide the "undertaking" they insisted Mattel's consultant sign. Attached hereto as Exhibit 10 is a true and correct copy of a letter from Dylan Proctor to Annette Hurst dated August 11, 2009.

17. On August 16, 2009, MGA's counsel wrote back, this time demanding that Mattel agree to follow a different set of procedures. Counsel nevertheless insisted that "this is not a stall, the hard drives are ready to go as soon as we get this all cleared up." Mattel replied the next day, and, to prevent further delay, agreed to Larian's proposal. Mattel also asked again that defendants provide the undertaking they demanded Mattel's consultant sign. Attached hereto as Exhibit 11 is a true and correct copy of email correspondence between Annette Hurst and Dylan Proctor, dated August 16, 2009, and August 17, 2009.

18. On August 19, 2009, MGA finally provided its proposed undertaking. That undertaking, however, purported to limit Larian's obligations under the Discovery Master's Order to merely producing hard drives used by Isaac

Larian prior to May 18, 2009, rather than the continuing supplementation the Order required. Attached hereto as Exhibit 12 is a true and correct copy of that email, from Theresa Sutton to Dylan Proctor, dated August 19, 2009.

19. Mattel notified Larian of this issue on August 20, 2009. In response, counsel first offered to change the end date from May 18, 2009, to August 3, 2009. When Mattel again noted the Order had no such limitation, counsel for the MGA Parties revealed for the first time that they are refusing across the board to supplement any of their discovery, even as to discovery previously compelled by this Court and the Discovery Master. Counsel for the MGA Parties asserted that "[t]o the extent Mattel is of the view that the Order somehow requires MGA to continuously supplement, we disagree. The date of the Order was May 18, which was then the 'present.' The Order does not impose a self-executing duty to continue supplementation. . . . If you want further inspection of hard drives after this one, you will have to make a new motion." Given defendants' blanket assertion, I wrote the MGA Parties, noted that the Discovery Master had specifically rejected these arguments (as discussed further below) and asked counsel to stipulate that they have searched and will search for and produce any further responsive documents that were created after the prior production in response or that were located after such prior production. Attached hereto as Exhibit 13 is a true and correct copy of email correspondence between me, Marshall Searcy, Theresa Sutton, and Annette Hurst, dated between August 19, 2009, and August 20, 2009. Defendants have not responded to my request.

20. Although the MGA Parties now appear to revealed that they have failed and are refusing to supplement any discovery and therefore will force yet more motion practice over the issue, the Discovery Master has specifically rejected the MGA Parties' arguments that they have no obligation to supplement except under narrow circumstances where new information contradicts the old. The Discovery Master's Order compelling the production of additional hard drives used

by Larian holds that Fed. R. Civ. P. 26 requires a party to supplement its responses whenever they are incomplete, and states that those duties are not limited by an Order requiring responses to a Request. Thus, the Order states that "[i]f Larian has used Hard Drives since February 27, 2008 (and he does not dispute that he has done so), then there is evidence in existence that renders his response to the Request incomplete. Therefore, in the absence of some other valid objection, Larian must supplement his production regarding the Request under Federal Rule of Civil Procedure 26." It further states that "Larian has not cited any legal authority, and the Discovery Master is aware of none, supporting the proposition that a party need not supplement its discovery responses based upon an order that simply requires the production of data for inspection without referencing Rule 26. Therefore, contrary to Larian's assertion, the February 27, 2008 Order did not remove his duty to supplement his response to the Request and he must fulfill that obligation now." See Phase 2 Discovery Matter Order No. 34, dated May 18, 2009, at 7-8, attached as Exhibit 20 to the Declaration of Michael Zeller, dated July 27, 2009. The Discovery Master likewise ruled that the MGA Parties' alleged basis for refusing to supplement discovery was erroneous in compelling them to produce updated financial information. Attached hereto as Exhibit 14 is a true and correct copy of Phase 2 Discovery Matter Amended Order No. 11, dated March 31, 2009.

21. To date, Mattel has still not received Mr. Larian's hard drives for inspection, almost four weeks after the deadline by which the Discovery Master had compelled him to produce them.

**The Omni Parties Admit Their Ordered Production Is Inadequate**

22. In its motion, Mattel noted that ███████████████████████████████████████████████████████████████████████████████████████████████████████████. (Motion at 19.) Because of these deficiencies, Mattel moved to enforce the Discovery Master's Orders. Attached hereto as Exhibit 15 is a true and correct copy of Mattel, Inc.'s

1 | Notice of Motion and Motion: (1) To Enforce Order Compelling the Omni Parties to
2 | Produce Documents, (2) to Strike Objections, and (3) For Sanctions, dated July 24,
3 | 2009.
4 |    23. At the hearing on the motion, counsel for the Omni Parties
5 | acknowledged that they have not produced to Mattel any documents reflecting loans
6 | between Vision Capital, LLC and Lexington Financial Limited, which purportedly
7 | funded Vision Capital for its contribution to the Wachovia loan acquisition, and
8 | instead asserted that they were not obligated to produce them, despite the Discovery
9 | Master's prior Orders. See Hearing Transcript dated August 6, 2009, true and
10 | correct copies of excerpts of which are attached as Exhibit 16 hereto, at 20:3-21:1
11 | ("The one issue that we – that we do dispute is that the documents coming from
12 | Lexington to Vision Capital, that loan, is not the subject of your order.").
13 |    24. In Order No. 27, the Discovery Master ███████████
14 | ████████████████████████████████████████████
15 | ████████████████████████████████████
16 | ████████████████████████. See Order No. 27 at 39-40. Attached hereto
17 | as Exhibit 17 is a true and correct copy of that Order.
18 |    25. Request No. 16 to Vision Capital that was compelled by the
19 | Discovery Master specifically requires the production of "[a]ll documents showing
20 | detail of *all* loan facilities with an indication of creditor and relevant terms referring
21 | or relating to MGA Entertainment, Inc. OmniNet Capital, LLC, Omni 808 Investors,
22 | LLC, **Lexington Financial Limited** or any subsidiary or affiliate of the foregoing, or
23 | to Isaac Larian or his family members." See Corrected Subpoena to Vision Capital,
24 | dated January 13, 2009, a true and correct copy of which is attached as Exhibit 18
25 | hereto. Request No. 13 to Vision Capital that was compelled by the Discovery
26 | Master also requires the production of "[a]ll documents referring of relating to the
27 | source of funding or credit for Omni 808 Investors, LLC." See id. at 14. Thus,
28 | Vision Capital has withheld documents relating to the purported loan "coming from

Lexington to Vision Capital," even though such documents plainly were ordered produced months ago. See August 6, 2009 Hearing Tr. at 20:3-6, attached hereto as Exhibit 16.

26. At the August 6 hearing, counsel for the Omni Parties also acknowledged that the Omni Parties have withheld documents regarding the source of the funds Omni 808's purported equity investors used to contribute to the Wachovia debt acquisition. See August 6, 2009 Hearing Tr. at 20:10-21:1, attached hereto as Exhibit 16 ("Our position is that is – that the funding sources for Omni, in other words, every equity investor, every debt investor into Omni, that's all within the confines of your order. But where all those investors may have gotten their money is – obviously, you could go forever with respect to that.").

27. However, in Order No. 27, the Discovery Master had compelled Omni 808 to produce documents responsive to Mattel's Request Nos. 13 and 14 to Omni 808. Order No. 27 at 39-40, Exhibit 17. Request No. 13 to Omni 808 seeks "all documents referring or relating to **all contributions, loans, and any sources of funding for Omni 808 Investors, LLC** during the last twelve months, **including but not limited to agreements and/or contracts supporting these transactions**." Attached hereto as Exhibit 19 is a true and correct copy of the Subpoena to Omni 808, dated January 9, 2009. Request No. 14 to Omni 808 seeks "all documents showing detail of all loan facilities with an indication of creditor and relevant terms." Id.

28. [REDACTED]. Order No. 27 at 39-40, Exhibit 17; Subpoena to OmniNet, dated January 9, 2009, a true and correct copy of which is attached as Exhibit 20 hereto. [REDACTED].

29.   Furthermore, counsel for the Omni Parties represented to the Discovery Master at the August 6 hearing, and defendants have alleged here (see Opp. at 8:19-21), that the Omni Parties have produced to Mattel "wire transfer confirmations from *each* of the equity investors indicating the – corroborating what [they]'ve said about where the source of the funds are coming from." Hearing Tr. at 19:18-23, attached hereto as Exhibit 16 (emphasis added).

30.   These representation were not and are not accurate. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. See Omni 808 Investors, LLC's, Vision Capital, LLC's and Omninet Capital, LLC's Memorandum in Opposition to Mattel, Inc.'s Motion: (1) To Enforce Order Compelling Omni Parties To Produce Documents, (2) To Strike Objections, and (3) For Sanctions; and Cross-Request for Sanctions, dated July 31, 2009, at 4, a true and correct copy of which is attached as Exhibit 21 hereto.

31.   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Attached as Exhibit 22 is a true and correct copy of the only productions in which Omni provided wire transfers, dated July 30, 2009. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

32.   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

33. In sum, basic loan and financial documents relating to the debt acquisition that is the subject of Mattel's claims in the TAAC have not been produced.

**MGA Delays Review of its Privilege Logs for More Than Six Months**

34. Mattel has been asking MGA to adequately substantiate its claims of privilege since December of 2007. As the Court will recall, during Phase 1, MGA effectively ran out the clock on Mattel by serially producing revised logs (none of which were more adequate than the prior iterations), and the Court was left to consider, on the eve of trial, several substantial privilege log-related discovery motions that had been long-pending before the prior Discovery Master but on which no decision had been issued. The bulk of those issues were then put over to Phase 2.

35. After the Phase 2 discovery stay was lifted, Mattel promptly again sought to engage MGA in a meet and confer regarding the serious deficiencies in its privilege logs. Attached as Exhibit 23 is a true and correct copy of a February 8, 2009 letter from Jon Corey, my colleague, to Patricia Glaser outlining the problems in MGA's logs.

36. Initially, MGA did not respond to Mattel's request. Attached as Exhibit 24 is a true and correct copy of a February 17, 2009 letter from Jon Corey to Patricia Glaser reminding MGA of its obligation to meet and confer in a timely manner.

37. At the subsequent conferences in late February, MGA did not meaningfully dispute had an obligation to substantiate its claims or that its privilege logs had failed to do so. In fact, MGA agreed to review its assertions and provide revised privilege logs in the following weeks. Attached as Exhibit 25 is a true and correct copy of a March 3, 2009 letter from Dylan Proctor to Caroline Mankey, MGA's prior counsel, summarizing MGA's agreement to revise its privilege logs.

38. Shortly after, MGA began a series of delays that would ultimately span over six months. Attached as Exhibit 26 is a true and correct copy

of a March 10, 2009 letter Caroline Mankey sent to Dylan Proctor acknowledging MGA's agreement to revise its logs and requesting additional time, until the end of March, to complete this task.

39.  MGA did not complete its review (as promised) by the end of March, however. Instead, it provided only partially complete logs and then intermittently provided further "revised" (but still incomplete) logs throughout the month of April and early May. For example, some of its "revised" logs were missing hundreds of pages and thousands of entries, while for others, MGA had reviewed the wrong log or failed to provide any revised log altogether. Attached as Exhibit 27 is a true and correct copy of a June 16, 2009 letter from Dylan Proctor to Caroline Mankey discussing these missing gaps in MGA's logs, as well as the inadequacies of its revisions. Ultimately, Mattel did not receive complete versions of MGA's revised logs until June 22, 2009—nearly five months after Mattel initiated its meet and confer. And, even still (another month and half later), Mattel has not received any revisions whatsoever for at least two of MGA's logs.

40.  MGA's "revisions" for the vast number of entries also failed to remedy the fundamental problems identified by Mattel (which had been the very purpose of this endeavor and many month delay). Accordingly, in mid-June, Mattel requested (again) that MGA substantiate its withholdings (as is its burden), which it had already promised but failed to do. MGA again indicated that it would "resume" its review, but its subsequent change of counsel resulted in still further delay and prevented any substantive discussion or resolution.

41.  On July 17, 2009, Mattel again raised these long-pending issues with MGA's new counsel at the Orrick firm. Attached as Exhibit 28 is a true and correct copy of a July 17, 2009 letter from Dylan Proctor to Cynthia Lock, MGA's new counsel, regarding these issues. Despite Mattel's request for a prompt response, MGA did not respond to Mattel's letter until the end of the month. On July 30, 2009, Mattel and MGA's new counsel met to discuss both MGA's failure to

1  substantiate its claims as to the entries at issue here, as well MGA's outstanding
2  obligation to provide documents withheld on alleged privilege grounds to the
3  Discovery Master for *in camera* review pursuant to Order No. 33.

4        42.    At that conference, MGA's new counsel stated that it was in the
5  process of re-reviewing the entries at issue (which purportedly had just been re-
6  reviewed by MGA's prior counsel). Based on this initial results of this new review,
7  MGA's counsel believed a substantial portion—*approximately forty percent*—of
8  these entries were not, in fact, properly withheld and should be produced either in
9  whole or in redacted form. This was despite the fact that MGA's trial counsel had
10 stated to this Court just prior to Phase 1 trial that they had reviewed every one of
11 these documents and represented that all of them were privileged. See Transcript of
12 the Hearing dated June 2, 2008, at 27:10-29:1; 35:21-36:12, true and correct copies
13 of excerpts of which are attached as Exhibit 29 hereto.

14       43.    Although MGA stated that this process of re-review would take
15 at least an additional full month, MGA did not indicate what that re-review would
16 entail or whether it continued to stand by its prior (albeit already breached)
17 commitment to remedy the inadequacies identified by Mattel. Thus, now more than
18 six months after Mattel first began to meet and confer with MGA on this issue—
19 throughout which, MGA made the same promise that it would review its logs and
20 substantiate its claims—MGA's delays effectively stalled any movement on these
21 issues.

22 **MGA Has Not Produced Documents for *In Camera* Review Pending Motion for**
23 **Reconsideration:**

24       44.    On July 29, 2009, the Discovery Master issued an Order
25 ████████████████████████████████████████████████████████████
26 ████████████████████████████████████████████████████████████
27 ████████████████████████████████████████████████████████████
28 ████████████████████████████████████. Attached hereto as Exhibit

1 | 30 is a true and correct copy of Phase 2 Discovery Matter Order No. 42, dated July
2 | 29, 2009. ███████████████████████████████████
3 | ███████████████████████. See id. at 26-27.
4 |          45.   ███████████████████████████████
5 | ████████████████████████████████████████. Attached
6 | hereto as Exhibit 31 is a true and correct copy of defendants' Ex Parte Application
7 | For Stay Of Order No. 42 Pending A Final Decision Adjudicating The Privilege
8 | Issues Raised In The Order, dated August 13, 2009.
9 |          46.   On August 14, 2009, the Discovery Master granted defendants'
10 | application, stating that "[t]he MGA Parties have no obligation to produce the
11 | documents required to be submitted for in camera review pursuant to Order No. 42
12 | until their recently filed Motion for Reconsideration is resolved by the Discovery
13 | Master." Attached hereto as Exhibit 32 is a true and correct copy of the Discovery
14 | Master's Phase 2 Discovery Matter Order No. 48, dated August 14, 2009.

**MGA Attempts to Delay Issuance of Letter of Request for Vargas and Trueba**

16 |          47.   As noted in Mattel's motion, Mattel moved for the issuance of a
17 | Letter of Request for the depositions of MGA Mexico employees Pablo Vargas and
18 | Mariana Trueba. (See Motion at 17.)
19 |          48.   In response, the MGA Parties submitted what they styled as a
20 | "non-opposition" but that, in fact, tried to add their own defective topic for
21 | deposition of MGA Mexico's own employees to Mattel's Letter, risking its rejection
22 | by Mexico. Attached hereto as Exhibit 33 is a true and correct copy of the MGA
23 | Parties' Non-Opposition to Mattel's Motion for Issuance of Letters of Request for
24 | Vargas and Trueba and Request for Amendment of Letters, dated July 29, 2009.
25 |          49.   Mattel noted the deficiencies with MGA's proposed topic in its
26 | Reply in Support of Mattel, Inc.'s Motion for Issuance of Letters of Request for
27 | Vargas and Trueba, dated August 31, 2009, a true and correct copy of which is
28 | attached as Exhibit 34 hereto.

50. Two weeks after Mattel had filed its Reply, MGA filed a "supplemental declaration" providing its own proposed letter of request, without any explanation of the changes it made, or its reason for making them. Attached hereto as Exhibit 35 is a true and correct copy of the Supplemental Declaration of William Molinski in Response to Motion for Issuance of Letters of Request for Vargas and Trueba and Request for Amendment of Letters, dated August 17, 2009.

51. These changes included deletions of text Mattel had submitted and that defendants had not objected to, and even of text that had been previously approved by the Discovery Master and the Court in connection with the Letter of Request issued to Canada. Attached hereto as Exhibit 36 is a true and correct copy of Mattel, Inc.'s Objections to the Supplemental Declaration of William Molinski in Response to Motion for Issuance of Letters of Request for Vargas and Trueba and Request for Amendment of Letters, dated August 18, 2009.

52. Defendants also used their own filing to argue that ruling on Mattel's Letter should "be continued until we can make a formal motion to amend Mattel's requested letters to include topics, and a description, of MGA's claims against Mattel." Attached hereto as Exhibit 37 is a true and correct copy of an email from William Molinski to the Discovery Master, dated August 17, 2009. Mattel's Letter of Request remains pending.

**IGWT Retains New Counsel, Who Claims It Needs Weeks To Get Up To Speed**

53. IGWT, a Larian shell used to transfer Bratz inventory and funding discussed in the TAAC, has retained new counsel, who have represented that they need at least some three weeks to respond to outstanding discovery issues relating to IGWT. More specifically, on July 29, 2009, Mattel sent IGWT's counsel a meet and confer letter seeking the production of documents in response to subpoena requests that were newly relevant in light of Mattel's Third Amended Answer and Counterclaims. Attached hereto as Exhibit 38 is a true and correct copy of a letter I sent to Jeffrey Valle, dated July 29, 2009.

54. In response, Mr. Valle informed Mattel that he no longer represented IGWT. Similarly, on July 30, 2009, Mattel sent counsel for IGWT a letter regarding entries on its privilege log which did not appear to show privileged communications. Attached hereto as Exhibit 39 is a true and correct copy of a letter from Dylan Proctor to Jeffrey B. Valle dated July 30, 2009.

55. On August 7, 2009, Mattel received a letter from Mr. Mark Romeo of Crowing & Moring, LLP. In that letter, Mr. Romeo stated that his firm was in the process of being retained by IGWT and that, because "there are thousands of pages of documents and other background information produced as part of this litigation that we will have to review to be in a position to competently respond to Mattel's meet and confer letters," it would be unable to respond to any issues until August 29, 2009. To date, Mattel has not received any substantive response to the discovery issues discussed above that it had raised almost a month ago.

**MGA Moves Hearing Date for Canadian Letter of Request**

56. Although Mattel's Letter of Request for documents and deposition testimony from MGA Canada and Janine Brisbois issued some three months ago, neither MGA Canada nor Ms. Brisbois have produced any discovery in response. Mattel noted in its motion that there was a hearing in Canada scheduled on August 26, 2009, regarding Mattel's motion to enforce the Letter of Request issued as to MGA Canada and Ms. Brisbois. At defendants' request, the hearing has been further delayed, to September 10, 2009. Attached hereto as Exhibit 40 is a true and correct copy of a letter from Bonnie Roberts Jones to Luisa J. Ritacca and Naomi Loewith, dated August 11, 2009, reflecting that change.

57. Attached hereto as Exhibit 41 is a true and correct copy of Mattel, Inc.'s Notice of Motion and Motion for Leave to File Fourth Amended Answer and Counterclaims, dated August 17, 2009.

1         58.     Attached hereto as Exhibit 42 is a true and correct copy of Omni 808 Investor, LLC's Memorandum in Support of Its Request to Strike Summary and Responsive Reports of Ronald L. Durkin, dated June 15, 2009.

          59.     Attached hereto as Exhibit 43 is a true and correct copy of the Discovery Master's Order Granting Mattel's Motion to Compel Production of Documents and Interrogatory Responses By MGA, dated May 15, 2007.

          60.     Attached hereto as Exhibit 44 is a true and correct copy of excerpts of the MGA Parties' Opposition to Mattel, Inc.'s Motion to Enforce Prior Court Orders and to Compel Re: Interrogatory Nos. 68 and 69 and RFPs 75, 85, 95, 105, and 115 of Mattel's First Set of Requests Re Unfair Competition, dated July 29, 2009.

          61.     Attached hereto as Exhibit 45 is a true and correct copy of Mattel, Inc.'s Notice of Motion and Motion to Compel Further Deposition of Ronald Brawer, and to Overrule Instructions Not to Answer, dated August 7, 2009.

          62.     Attached hereto as Exhibit 46 is a true and correct copy of Mattel, Inc.'s Notice of Motion and Motion for Additional Time to Conduct the Deposition of Isaac Larian, dated July 17, 2009.

          63.     Attached hereto as Exhibit 47 is a true and correct copy of excerpts of the hearing transcript dated January 8, 2007.

          64.     Attached hereto as Exhibit 48 is a true and correct copy of the Memorandum of Mattel, Inc. Regarding Entry of Judgment Pursuant to Rule 54(b) and Phase 1, dated February 13, 2009.

          65.     Attached hereto as Exhibit 49 is a true and correct copy of the Declaration of Annette L. Hurst ISO MGA Parties' Opposition to Mattel, Inc.'s Motion for Leave to Take Additional Depositions and Cross-Motion for Protective Order Altering Deposition Limits to Set an Overall Hours Limit, dated August 21, 2009.

66.     Attached hereto as Exhibit 50 is a true and correct copy of the Ninth Circuit's Order dated June 10, 2009.

67.     Attached hereto as Exhibit 51 is a true and correct copy of Mattel, Inc.'s Notice of Motion and Motion for Leave to Take Additional Depositions, dated August 11, 2009.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 24, 2009, at Los Angeles, California.

                                /s/ Michael T. Zeller
                                Michael T. Zeller