EXHIBIT 36

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 090378)
2    johnquinn@quinnemanuel.com
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
     865 South Figueroa Street, 10th Floor
5  Los Angeles, California  90017-2543
   Telephone:  (213) 443-3000
6  Facsimile:   (213) 443-3100

7  Attorneys for Mattel, Inc.

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                   EASTERN DIVISION

| | |
|---|---|
| 11  CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| 12 | Consolidated with |
| 13          Plaintiff, | Case No. CV 04-09039 Case No. CV 05-02727 |
| 14      vs. | **DISCOVERY MATTER** |
| 15  MATTEL, INC., a Delaware corporation, | **[To be heard by Discovery Master Robert C. O'Brien pursuant to the Court's Orders of December 6, 2006 and January 6, 2009]** |
| 16          Defendant. | |
| 17  ─────────────────────── AND CONSOLIDATED | MATTEL, INC.'S OBJECTIONS TO THE SUPPLEMENTAL DECLARATION OF WILLIAM A. MOLINSKI IN RESPONSE |
| 18  ACTIONS | TO MOTION FOR ISSUANCE OF LETTERS OF REQUEST FOR VARGAS AND TRUEBA AND REQUEST FOR |
| 19 | AMENDMENT OF LETTERS |
| 20 | |
| 21 | Date:    TBD Time:    TBD |
| 22 | Place:   Arent Fox LLP |
| 23 | **Phase 2:** Disc. Cut-off:       Dec. 11, 2009 |
| 24 | Pre-trial Con.:   Mar. 1, 2010 Trial Date:        Mar. 23, 2010 |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

07975/3058804.3

Exhibit 36
Page 700

OBJECTIONS ISO MATTEL'S MOTION FOR LETTER OF REQUEST

1        Mattel, Inc. ("Mattel") respectfully submits the following Objections to

2  the Supplemental Declaration of William A. Molinski, served on August 17, 2009 in

3  Response to Motion For Issuance of Letters of Request For Vargas and Trueba and

4  Request For Amendment of Letters.[1]

5      1.     MGA's proposed Letter of Request is improper because MGA has filed

6  no motion seeking the issuance of its proposed Letter nor otherwise complied with

7  the requirements of <u>Local Rules</u> 7-3 through 7-5.  If MGA wishes to depose its own

8  employees in Mexico pursuant to a Letter of Request, then it must follow the

9  appropriate steps to seek one.

10      2.     MGA's proposed Letter of Request was served yesterday—almost three

11  weeks after MGA's opposition was due, two weeks after Mattel's reply and only

12  after the Discovery Master's Order taking the hearing on Mattel's request off-

13  calendar and thus deeming the matter submitted.  MGA's proposed Letter of Request

14  nevertheless purports to make numerous deletions, add numerous topics and

15  interpose other modifications to Mattel's Letter of Request that were never raised in

16  MGA's Opposition or otherwise asserted prior to the due date for MGA's response.[2]

17

---

18    [1]  Because MGA does not clearly disclose, let alone explain or defend, the

19  changes its proposed Letter of Request has purported to unilaterally make to Mattel's Letter of Request, Mattel is attaching hereto a redline showing those

20  purported changes.

    [2]  More specifically, as illustrated in the redline, MGA ***deletes*** text it apparently

21  objects to.  No mention of any objections to the text of Mattel's Letter of Request

22  were made anywhere in MGA's Opposition.  Thus, for example, MGA deletes the entirety of the discussion of the jury's verdict in Phase 1.  <u>See</u> Exhibit 1 at 8.  It also

23  deletes any mention of the search of MGA Mexico's facilities, or the current

24  criminal investigation of Vargas and Trueba by Mexican authorities.  <u>Id.</u> at 10-11.

25  MGA provides no explanation for why it could not have objected to such text before, and indeed does not even give any indication it has made such changes here.

26  Furthermore, as discussed below, the provisions that MGA belatedly attempts to

27  excise were previously approved by the Discovery Master in connection with Mattel's Letters of Request to the Canadian Courts.

28

Exhibit 36
Page 701

1 | Accordingly, they are untimely and have been waived.[3]  They also constitute

2 | improper sur-reply that do not even respond to Mattel's reply.[4]

3 |       3.    MGA's proposed Letter of Request is inconsistent with prior Orders.

4 | Language MGA has purported to delete, such as descriptions of the Court's rulings

5 | on summary judgment, and other language regarding Mattel's allegations relating to

6 | Carter Bryant, have already been **approved** by the Discovery Master.  They were

7 | part of the Letter of Request issued to Canada regarding the deposition of Janine

8 | Brisbois and MGA Canada.  Compare Exhibit 1 at 6 <u>with</u> Canadian Letter of

9 | Request at 2-3, Searcy Dec., Exh. 5.  MGA's belated effort to delete them thus is not

10 | only waived, but without substantive merit.

---

[3]  <u>See, e.g.</u>, <u>Richmark Corp. v. Timber Falling Consultants</u>, 959 F.2d 1468, 1473 (9th Cir. 1992) (party waived objections it failed to make in opposition to motion to compel); <u>Calderon v. Presidio Valley Farmers Ass'n</u>, 863 F.2d 384, 389 (5th Cir. 1989) (party waived claim it failed to raise in opposition to discovery motion); <u>Diapulse Corp. of America v. Curtis Publishing Co.</u>, 374 F.2d 442, 445 (2d Cir. 1967) (same); <u>Fleet Systems, Inc. v. Federal Coach, LLC</u>, 2007 WL 2264618, *3 (D. Neb. 2007) (same); <u>City of Wichita, Ks. v. Aero Holdings, Inc.</u>, 2000 WL 1480499, *2 (D. Kan. 2000) (same); <u>Reese v. Wal-Mart Stores, Inc.</u>, 1996 WL 780558, *3 (D. Me. 1996) (same); <u>Eidukonis v. Southeastern Pennsylvania Transp. Authority</u>, 1987 WL 16321, *5 (E.D. Pa. 1987) (same).

[4]  MGA claims that the Supplemental Declaration "responds to new arguments raised in Mattel's Reply, and, thus is entirely proper." (Email from William Molinski to Discovery Master O'Brien, dated August 17, 2009.)  That representation is wrong.  MGA's response to Mattel's motion proposed to insert a single, vague topic seeking information about conduct "described in MGA's complaint against Mattel."  Mattel's statement in reply that MGA's lone proposed topic was defective—which MGA apparently now concedes—was strictly limited to issues raised by MGA's opposition.  There was no "new" argument here that would permit MGA to rewrite Mattel's proposal in any way it sees fit, especially at this late date.  Even in its opposition, MGA did not raise the topics and issues now raised in MGA's proposed Letter of Request.  Having failed to do so, MGA has waived any of the modifications it now supposedly has to Mattel's Letter of Request.

07975/3058804.3

1         4.     MGA's proposed Letter of Request includes argumentative additions.

2 Mattel's Letter of Request, the form of which was substantially approved previously

3 by the Discovery Master, makes clear that Mattel's Phase 2 claims are allegations.

4 In contrast, the modifications proposed by MGA are not even portrayed as

5 allegations. For example, as shown on page 12 of the redline, MGA purports to

6 insert the following argumentative phrase: "Mr. Vargas was also previously a

7 Mattel employee so he can testify to Mattel's acts of unfair competition through

8 intimidation, coercion and other unfair acts intended to prevent MGA from lawfully

9 competing with Mattel." Other similar, argumentative phrasing appears in MGA's

10 proposed Letter of Request.

11         5.     MGA adds topics that are similarly argumentatively phrased, as shown

12 on pages 12-13 of the redline. The added topics are also impermissibly vague, and

13 MGA fails to carry its burden to show that they are consistent with the Hague

14 Convention or Mexican law. As Mattel pointed out in its reply, and as MGA does

15 not dispute, Letters of Request must conform to the Hague Convention, and to the

16 laws of Mexico, or Mexico may object and refuse to accept them.[5] An improper

17 topic accordingly can delay approval or even result in the denial of a deposition.

18 MGA's ill-defined, argumentative topics threaten to thus delay or even prevent

19 Mattel's ability to take the depositions because they could be asserted as grounds for

20 Mexico (or the witnesses or others) to object to Mattel's Letter of Request. The

21 Discovery Master should not permit MGA's potentially unacceptable topics to

22 potentially infect Mattel's Letter of Request and imperil the depositions Mattel has

23 been attempting to take for nearly seven months.

24         6.     Mattel objects to MGA's proposed Letter of Request in that it purports

25 to require Mattel to pay for MGA's deposition of MGA's own employees. Despite

26

27     [5]   See Hague Convention on Taking of Evidence Abroad in Civil or Commercial Matters, Articles 5, 9.

28

Exhibit 36
Page 703

OBJECTIONS ISO MATTEL'S MOTION FOR LETTER OF REQUEST

1    other, belated alterations to Mattel's Letter of Request, one section MGA left

2    untouched was that which states that "[a]ny fees and costs incurred by Mr. Vargas

3    and Ms. Trueba in conjunction with their respective examinations will be paid by

4    Defendant Mattel, Inc., through its counsel of record." (Exhibit 1 at 14.)  MGA has

5    nearly doubled the number of topics for Ms. Trueba from 8 to 13.  There is no basis

6    for Mattel to pay the entirety of the costs for the depositions sought by MGA's

7    proposed Letter of Request, and MGA cites none.

8        7.    Mattel objects to MGA's proposed Letter of Request, and to MGA's

9    counsel's arguments of yesterday, on the basis that the delay sought by MGA to the

10   issuance of Mattel's Letter of Request is inappropriate and unsupported.  Mattel first

11   noticed the depositions of these witnesses in September *2007*.  It recommended

12   motion practice on their depositions promptly since the Phase 2 discovery stay was

13   lifted earlier this year.  The discovery cut-off—which MGA has refused to agree to

14   extend—expires in less than four months.  Discovery through a Letter of Request

15   can already take months.  Mattel has still not obtained the discovery sought in its

16   Letter of Request to Canada that was signed three months ago.  MGA's request for

17   further delay is essentially a request that these depositions not be taken at all.  Mattel

18   objects to any such delay.  Furthermore, contrary to MGA's unsubstantiated and

19   unexplained request of yesterday,[6] there is no legal or factual basis for delaying the

20   issuance of Mattel's Letter of Request so that MGA can seek to file its own motion

21   for its own Letter.  MGA is free to pursue its own request for the issuance of Letters,

22

23

24   [6]  In his email of yesterday to the Discovery Master, MGA's counsel explicitly
25   sought to use *MGA's* tardy proposed Letter of Request to delay yet further *Mattel's*
     long pending Letter of Request, asserting that the Discovery Master should continue
26   "the decision on Mattel's motion for the issuance of letters requests . . . until we can
27   make a formal motion to amend Mattel's requested letters to include topics, and a
     description, of MGA's claims against Mattel."
28

Exhibit 36
Page 704

1   but that is not and cannot serve as a basis for delaying or hindering the issuance of

2   Mattel's Letter of Request that Mattel has been seeking through a proper motion.

3

4   DATED:  August 18, 2009          QUINN EMANUEL URQUHART OLIVER &

5                                    HEDGES, LLP

6

7                                    By /s/ Michael T. Zeller

8                                       Michael T. Zeller
                                        Attorneys for Mattel, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07975/3058804.3

Exhibit 36
Page 705

OBJECTIONS ISO MATTEL'S MOTION FOR LETTER OF REQUEST

# Exhibit 1

Exhibit 36
Page 706

1 | MELINDA HAAG (State Bar No. 132612)
mhaag@orrick.com
2 | ANNETTE L. HURST (State Bar No. 148738)
ahurst@orrick.com
3 | WARRINGTON S. PARKER III (State Bar No. 148003)
w arker@orrick.com
4 | OWMK HERRINGTON & SUTCLIFFE LLP
The Orrick Building
5 | 405 Howard Street
San Francisco, CA 94105-2669
6 | Telephone: +1-415-773-5700
Facsimile: +1-415-773-5759
7
WILLIAM A. MOLINSKI (State Bar No. 145186)
8 | wmolinski@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
9 | 777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017
10 | Telephone: +1-213-629-2020
Facsimile: +1-213-612-2499
11
Attorneys for MGA Parties
12

13              UNITED STATES DISTRICT COURT

14              CENTRAL DISTRICT OF CALIFORNIA

15                   EASTERN DIVISION

16 | CARTER BRYANT, an individual,          ~~CASE NO.~~ Case No. CV 04-9049 -SGL (RNBx)

17 |          Plaintiff,                    Consolidated with
                                           ~~Case No.:~~ Case No. CV 04-~~09059~~
18 |                                        9059 and Case No. CV 05-~~02727~~2727
          ~~vs.~~v.
19 |                                        [PROPOSED] REQUEST FOR
   | MATTEL, INC., a Delaware               JUDICIAL ASSISTANCE (LETTER
20 | corporation~~,~~,                      OF REQUEST) BY THE UNITED
                                           STATES DISTRICT COURT FOR
21 |          Defendant.                     THE CENTRAL DISTRICT OF
                                           CALIFORNIA
22
23 | AND CONSOLIDATED ACTIONS               Date:
24 |                                         Time:
                                           Courtroom:
25 |                                         Judge:   Hon. Stephen G. Larson
26
27
28                                         Exhibit B~~Exhibit~~ 1
                                           Page 707~~Page 6~~

07975/2866400.2

REQUEST FOR JUDICIAL ASSISTANCE

# ~~TABLE OF CONTENTS~~

**Page**

~~LETTER OF REQUEST~~ ................................................................ ~~2~~

~~I.   NATURE OF PROCEEDINGS~~ ................................................ ~~3~~

~~A.   Names and Addresses of the Parties and Their Representatives (Article 3(b))~~ ................................................ ~~3~~

~~B.   Nature and Purpose of the Proceedings and Summary of the Alleged Facts (Article 3(c))~~ ................................ ~~3~~

~~1.   Nature of the Proceedings~~ ................................ ~~3~~

~~2.   Procedural Background~~ ................................ ~~4~~

~~3.   Knowledge Of Persons To Be Examined~~ .......... ~~7~~

~~II.  EVIDENCE SOUGHT (ARTICLE 3(D))~~ .............................. ~~9~~

~~A.   Pablo Vargas San Jose~~ ................................ ~~9~~

~~B.   Mariana Trueba Almada~~ ................................ ~~10~~

~~C.   Subject Matter About Which The Deponents Are To Be Examined (Article 3(f))~~ ................................ ~~10~~

~~D.   Requirement That The Evidence Be Given on Oath or Affirmation and Specific Form to Be Used (Article 3(h))~~ .......... ~~11~~

~~E.   Special Methods or Procedures to be Followed (Article 3(i) and 9)~~ ................................ ~~11~~

~~F.   Fees and Costs~~ ................................ ~~12~~

~~G.   Notification of Court and Parties (Article 7)~~ .......... ~~12~~

~~H.   Conclusion~~ ................................ ~~12~~

~~III. REQUEST FOR JUDICIAL ASSISTANCE~~ .......................... ~~13~~

~~IV.  RECIPROCITY~~ ................................................ ~~14~~

~~V.   CONCLUSION~~ ................................................ ~~15~~

~~SCHEDULE A~~ ................................................ ~~16~~

~~SCHEDULE B~~ ................................................ ~~17~~

~~SCHEDULE C~~ ................................................ ~~18~~

07975/2866400.2

Exhibit 16
Page 708   Page 7

REQUEST FOR JUDICIAL ASSISTANCE

1  TO THE SUPERIOR COURT OF JUSTICE FOR THE FEDERAL DISTRICT:

2       The United States District Court for the Central District of California presents

3  its compliments to the Superior Court of Justice for the Federal District, and

4  requests international judicial assistance to obtain the following: (1) the

5  examination, under oath, of Pablo Vargas San Jose, as set forth in Schedule B; and

6  (2) the examination, under oath, of Mariana Trueba Almada, as set forth in Schedule

7  C. The testimony of these witnesses is intended for use at trial, and will be relevant

8  to numerous claims and defenses in the case. A trial on this matter is scheduled for

9  March 23, 2010 in Riverside, California, United States of America.

10       This request is made pursuant to the Hague Convention of 18 March 1970 on

11  the Taking of Evidence Abroad in Civil or Commercial Matters, as adopted and

12  implemented at 28 U.S.C. § 1781 and the Executive Order published in the Federal

13  Official Gazette dated February 12, 1990.  This Court, the United States District

14  Court for the Central District of California, Eastern Division, is a competent court of

15  law and equity which properly has jurisdiction over this proceeding, has the power

16  to compel the attendance of witnesses within its jurisdiction, and has the authority to

17  seek the assistance of foreign governments in compelling the attendance of

18  witnesses outside its jurisdiction.

19       This request is made with the understanding that it will in no way require the

20  person described below to commit any offense, nor will it require the person

21  described below to undergo a broader form of inquiry than they would if the

22  litigation were conducted in Mexico.

23

24

25

26

27

28

Exhibit 6
Page 709 Page 8

07975/2866100.2

-3-

REQUEST FOR JUDICIAL ASSISTANCE

**Letter of Request**

1.      **Sender/Requesting Authority (Article 3(a))**

Hon. Stephen G. Larson
United States District Judge
United States District Court for the Central District of California
Room 260
3470 Twelfth Street
Riverside, CA 92501
Tel: (951) 328-4464

2.      **Authority of the Requested State (Article 3(a))**

Superior Court of Justice for the Federal District
~~Niños~~Ninos Heroes No. 132, Planta Baja, Colonia Doctores,
Delegación Cuauthemoc,~~,~~ Código Postal 06720
Mexico City, Mexico
Tel:   51 34 11 00

3.      **Person to whom the executed request is to be returned**

Michael T. Zeller
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Tel: (213) 443-3000

4.      **Persons designated to act in connection with the Letter of Request**

The parties and their representatives listed in Schedule A attached hereto

5.      **Persons designated to carry out  formalities on behalf of the requesting party:**

Jointly or individually: Hector Geronimo Calatayud - Izquierdo, Ricardo Luis Hernandez - Garfias, Victor Manuel Rivero - Montiel, Hector Leonel Rivera - ~~Muñoz~~Mufioz, Enrique Valdespino - Pastrana and/or Arturo Aguirre -Arias,

Paseo de los Tamarindos No. 400 "A", Colonia Bosques de las Lomas, Delegación Cuajimalpa, Código Postal 05120, Mexico City, Mexico

6.      **Specification of the date by which the requesting authority requires receipt of the response to the Letter of Request**

As soon as reasonably practicable consistent with the Court's calendar.

7.      **Identity and address of those to be examined (Article 3(e))**

Pablo Vargas San Jose 135 Loma de Guadalupe Alvaro Obregon Mexico D.F. 1720
Mariana Trueba Almada

Exhibit B~~6~~hibit 1
Page 710~~Page 9~~

Paseo del Pedregal 1110 Casa 10
Jardines Del Pedregal
Alvaro Obregon
Mexico, D.F. 01900

## I.    NATURE OF PROCEEDINGS

### A.    Names and Addresses of the Parties and Their Representatives (Article 3(b))

The evidence requested relates to the action entitled Bryant v. Mattel, Inc., Case No. CV 04-9049 SGL (RNBx), which consists of three actions that have been consolidated before the requesting judicial authority:  Mattel, Inc. v. Bryant, Case No. CV 04-9049 SGL (RNBx) (the "Bryant Case"); Bryant v. Mattel, Inc., Case No. CV 04-9049 SGL (RNBx) (the "Declaratory Relief Case"), and MGA Entertainment, Inc. v. Mattel, Inc., Case No. CV05-2727 SGL (RNBx) (the "Unfair Competition Case").  The parties and their representatives are listed in Schedule A attached hereto.  The applicant for this letter of request is defendant and cross-plaintiff Mattel, Inc.  ("Mattel").

### B.    Nature and Purpose of the Proceedings and Summary of the Alleged Facts (Article 3(c))

#### 1.    Nature of the Proceedings

This proceeding is a civil lawsuit alleging copyright infringement, dilution trade dress infringement, misappropriation of trade secrets, violation and conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act, breach of contract, intentional interference with contract, breach and aiding and abetting breach of fiduciary duty, breach and aiding and abetting breach of duty of loyalty, conversion, unfair competition, unjust enrichment, avoidance of intentional and constructive fraudulent transfers under the Uniform Fraudulent Transfer Act, and declaratory relief.

## 2. **Procedural Background**

**Mattel's Original Complaint.** ~~Mattel learned in November 2003 that Carter Bryant, a former Mattel doll designer, had contracted to provide and provided services to MGA Entertainment, Inc. while he was a Mattel employee.~~ Mattel originally filed suit against Bryant for breach of contract, breach of fiduciary duty, breach of the duty of loyalty, unjust enrichment and conversion in April 2004.  In its Complaint, Mattel alleged its claim to ownership of all inventions and works created by Bryant during his Mattel employment and seeks to recover all benefits obtained as a result of his breach of duties. ~~As of January 2005, Bryant claimed he had earned more than $10 million from his relationship with MGA.~~ MGA intervened in Mattel's case against Bryant in December 2004 to defend the rights it claims in the Bratz properties, ~~which Bryant created while, Mattel alleges, he was a Mattel doll designer.~~

**Bryant's Counterclaims.**  Bryant initially challenged the assignment provisions in the Inventions Agreement between he and Mattel in four Counterclaims, alleging unconscionability, mistake, duress, fraud, Labor Code violations, Business and Professions Code violations, unfair competition and other claims.  Bryant sought rescission of the Inventions Agreement and a declaration that the Inventions Agreement is unenforceable.  The Court dismissed all of Bryant's Counterclaims in an 18-page Order. ~~The Court rejected Bryant's arguments that the Inventions Agreement is not enforceable, holding that, even construing Bryant's allegations in the light most favorable to him, "Bryant cannot prove any set of facts in support of the claims that would entitle him to relief."~~

In addition to his Counterclaims, Bryant sued Mattel in November 2004 for a declaratory judgment that he had not infringed the copyrights in a Mattel project known as "Toon Teens." ~~Like his Counterclaims, the~~ The Court dismissed Bryant's declaratory judgment complaint on the pleadings.

1    <u>MGA's Complaint Against Mattel: On April 13, 2004, MGA filed a</u>

2    <u>complaint against Mattel for false designation of origin, affiliation, association or</u>

3    <u>sponsorship, unfair competition and dilution for Mattel's habitual and unfair tactics</u>

4    <u>of competition-by-intimidation and serial copycatting of MGA's products, which</u>

5    <u>MGA alleges Mattel has used in an effort to cause confusion in the marketplace and</u>

6    <u>eliminate MGA as a competitor in the toy and fashion doll market. MGA has also</u>

7    <u>alleged that Mattel has intimidated, coerced and threatened retailers, licensees,</u>

8    <u>suppliers, and others in the toy industry in order to stifle MGA's ability to compete.</u>

9    <u>Consolidation</u>.  After the Court lifted a discovery stay imposed while the

10   Ninth Circuit Court of Appeal resolved an appeal regarding subject matter

11   jurisdiction issues, the Court consolidated Mattel's case against Bryant, Bryant's

12   declaratory relief case and a<u>MGA's</u> case ~~that MGA had filed~~ against Mattel ~~alleging~~

13   ~~trade dress infringement, delusion and unfair competition, among others,~~ for all

14   purposes.

15   <u>Mattel's Second Amended Counterclaims</u>.  Mattel filed its Second Amended

16   Answer and Counterclaims on July 12, 2007, asserting thirteen counterclaims

17   against six named defendants, MGA Entertainment, Inc., Isaac Larian, MGA

18   Entertainment (HK) Ltd., MGA's Hong Kong subsidiary, MGAE de Mexico S.R.L.

19   de C.V., MGA's Mexican subsidiary, Carlos Gustavo Machado Gomez, and Carter

20   Bryant.  Mattel's counterclaims included claims for copyright infringement,

21   misappropriation of trade secrets, violation of and conspiracy to violate the

22   Racketeer Influenced and Corrupt Organizations ("RICO") Act, breach of contract,

23   intentional interference with contract, breach of fiduciary duty, aiding and abetting

24   breach of fiduciary duty, breach of duty of loyalty, aiding and abetting breach of

25   duty of loyalty, conversion, unfair competition, and declaratory relief.

26   In its Second Amended Counterclaims, Mattel alleged that MGA and other

27   defendants, including MGA's Mexican subsidiary, MGAE de Mexico, Isaac Larian,

28   MGA Entertainment, Inc.'s CEO, and former CEO of MGAE de Mexico, and

1  Carlos Gustavo Machado Gomez (collectively the "MGA Defendants"), have

2  engaged in the systematic theft of Mattel's trade secrets, which the MGA

3  Defendants used to unfairly compete against Mattel.[1]  It is alleged that the MGA

4  Defendants hired directly from Mattel numerous employees, including at least three

5  in Mexico, and including the two that Mattel seeks to examine.[2]  Mattel further

6  alleged that the MGA Defendants specifically targeted and recruited many of these

7  employees based on the Mattel confidential and proprietary information the Mattel

8  employees could access and bring to MGA.[3]  <u>Mattel alleges that</u> Mr. Vargas and Ms.

9  Trueba were two of these Mattel employees.

10      On February 21, 2007, this Court bifurcated these consolidated cases into two

11  phases.  Phase 1 focused on ownership of the works Carter Bryant created while he

12  was a Mattel employee, including Bratz, Mattel's claims of copyright infringement

13  stemming from that ownership and Bryant's work with MGA while he was a Mattel

14  employee, including the illegal payments MGA made or offered to him while he

15  was a Mattel employee.

16      During the summer of 2008, the parties tried the Phase 1 issues, resulting in

17  jury verdicts in Mattel's favor. The jury found that Bryant had created or conceived

18  of the Bratz characters, the Bratz name and virtually all of the Bratz drawings,

19  sculpts and prototypes at issue during the time he was a Mattel employee.  Such

20  Bratz-related inventions therefore were owned by Mattel, and not Bryant or MGA,

21  under Bryant's Inventions Agreement with Mattel.  The jury also found MGA, its

22  Hong Kong affiliate and its CEO, Isaac Larian, liable on Mattel's claims for

23  copyright infringement and for several intentional torts and awarded $100 million in

24  damages against these defendants.

25

26

---

[1]  See Mattel's Second Amended Counterclaims dated July 12, 2007 at ¶ 37.
[2]  <u>Id.</u> at ¶ 77.
[3]  <u>Id.</u>

Exhibit 16
Page 71 Page 13

1   <u>Mattel's Third Amended Counterclaims</u>.  On May 22, 2009, Mattel, Inc. filed
2   its Third Amended Answer and Counterclaims.  These counterclaims included the
3   claims of the Second Amended Answer and Counterclaims identified above, and
4   added an additional claim for avoidance of intentional and constructive fraudulent
5   transfers under the Uniform Fraudulent Transfer Act.  Mattel alleges that, after
6   Phase 1 trial, MGA and Larian created several shell corporations and used them to
7   divert MGA profits to Isaac Larian and his friends and family, and did so to defraud
8   Mattel.  Mattel also alleged thefts of Mattel trade secrets by additional employees,
9   and additional predicate acts to its RICO claims, including the conduct noted above,
10  perjury and obstruction of justice by Isaac Larian, destruction of evidence, and
11  commercial bribery as a result of the hiring of three additional Mattel employees to
12  work for MGA while still employed by Mattel.

13      **3.      <u>Knowledge Of Persons To Be Examined</u>**

14      Mattel has alleged that Mr. Vargas and Ms. Trueba are two principal actors in
15  the MGA Defendants' scheme to steal and profit from Mattel's trade secrets and
16  confidential and proprietary information.[4]  Ms. Trueba was the Senior Marketing
17  Manager, Girls Division, for Mattel Mexico.[5]  Mr. Vargas was a Senior Trade
18  Marketing Manager with Mattel Mexico.[6]  Mattel alleges that the MGA Defendants
19  recruited Mr. Vargas and Ms. Trueba, along with a third Mattel employee, Carlos
20  Gustavo Machado Gomez, beginning in late 2003 or early 2004.  Mattel alleges that
21  in connection with that plan to join MGA, and with the encouragement of MGA's
22  CEO, Isaac Larian, and other MGA officers operating in the United States, they
23  began accessing, copying and collecting Mattel trade secrets and confidential and
24
25

---

26  [4]   The allegations set forth in this section are from Mattel's Third Amended
27  Counterclaims, dated May 22, 2009.
     [5]   <u>Id.</u> at ¶ 46.
28  [6]   <u>Id.</u> at ¶ 47.

Exhibit 86
Page 71 Page 14

proprietary information.  On April 19, 2004, Mr. Machado, Ms. Trueba and Mr. Vargas each resigned their positions with Mattel, effective immediately.[7]

Mattel alleges that, starting on April 12, 2004, Mr. Vargas copied a host of trade secrets, confidential and proprietary materials to a portable USB storage device, including sales plans, sales projections and customer profiles.[8]  On April 16, 2004, Ms. Trueba also copied Mattel trade secrets, confidential and proprietary information to a portable USB storage device connected to her Mattel computer.[9]

In total, Mattel alleges the three employees stole virtually every type of document a competitor would need to enter the Mexican market and to unlawfully compete with Mattel in Mexico, in the United States, and elsewhere.  Mattel alleged that they stole global internal future line lists that detailed anticipated future products, production and shipping costs for Mattel products; daily sales data for Mattel products; customer data; sales estimates and projections; marketing projections; documents analyzing changes in sales performance from 2003 to 2004; budgets for advertising and promotional expenses; strategic research reflecting consumer responses to products in development; media plans; consumer comments regarding existing Mattel products customer discounts and terms of sale; customer inventory level data; assessments of promotional campaign success; market size historical data and projections; marketing plans and strategies; merchandising plans; retail pricing and marketing strategies; and other similar materials.[10]

Mattel notified Mexican authorities about the theft of its trade secret and confidential information.  On October 27, 2005, the Mexican Attorney General Office obtained a search warrant from the Mexican Federal Criminal Courts for the offices and facilities of MGAE de Mexico in Mexico City.  In that search, the

---

[7] Id. at ¶ 48.
[8] Id. at ¶ 52.
[9] Id. at ¶ 53.
[10] Id. at ¶ 55.

Exhibit 16
Page 71

Page 15

1  ~~Mexican authorities found and seized from the offices of MGAE de Mexico both~~
2  ~~electronic and paper copies of hundreds of documents containing Mattel trade~~
3  ~~secrets, including those that Mattel alleges it discovered through its forensic~~
4  ~~investigations, plus many others that Mattel had not known had been stolen.~~[11]  ~~On~~
5  ~~September 2006, Mr. Vargas and Ms. Trueba were prosecuted by the Federal~~
6  ~~Attorney General Office, and now they are subject to a criminal trial (cause~~
7  ~~130/2006) with the 10th District Court in Federal Criminal Process for the Federal~~
8  ~~District, for the crime of misappropriation of trade secrets.~~

9  ~~Mattel has previously sought to depose Mr. Vargas and Ms. Trueba.  Mattel~~
10  ~~noticed their deposition, but MGA refused to produce Mr. Vargas and Ms. Trueba~~
11  ~~for deposition in the United States or in Mexico.~~

12  MGA believes that Mr. Vargas and Ms. Trueba would also have knowledge
13  of MGA's claims against Mattel for, *inter alia*, unfair competiton and trade dress
14  infringement. Specifically, MGA believes that since these individuals were
15  previously employed by Mattel, they can and would testify to Mattel's efforts to
16  muscle MGA out of the business with intimidation and threats to retailers, licensees,
17  suppliers, employees and others in the industry. MGA believes these individuals
18  will be able to testify to Mattel's copy-catting of MGA's products, trade dress,
19  packaging and advertising.

20  ## II.   **EVIDENCE SOUGHT (ARTICLE 3(D))**

21  The evidence to be obtained consists of testimony for use in the Phase 2 trial
22  of the consolidated actions that have been captioned Bryant v. Mattel, Inc., Case No.
23  04-9049 SGL (RNBx) (Consolidated with Case No. 04-9059 and Case No. 05-
24  2727).  It is requested that a Mexican judicial authority compel Pablo Vargas San
25  Jose to appear and to be examined, under oath, as to his knowledge of the topics set
26  forth in Schedule B.  It is further requested that a Mexican judicial authority compel

27
28  ~~[11]~~  ~~Id. at ¶ 60.~~

1  Mariana Trueba Almada to appear and to be examined, under oath, as to his

2  knowledge of the topics set forth in Schedule C.

3      **A.**     **Pablo Vargas San Jose**

4      Mr. Vargas is a Mexican national and resides in your jurisdiction at 135 Loma

5  de Guadalupe, Alvaro Obregon, Mexico D.F. 1720.  As detailed above, it is alleged

6  by Mattel that Mr. Vargas was one of the principal actors engaged in the MGA

7  Defendants' scheme of wrongdoing underlying Mattel's Counterclaims in that he

8  stole and subsequently assisted the MGA Defendants in profiting from Mattel's

9  trade secrets, or otherwise confidential or proprietary information.

10      Mr. Vargas was also previously a Mattel employee so he can testify to

11  Mattel's acts of unfair competition through intimidation, coercion and other unfair

12  acts intended to prevent MGA from lawfully competing with Mattel.

13      **B.**     **Mariana Trueba Almada**

14      Ms. Trueba is a Mexican national and resides in your jurisdiction at Paseo del

15  Pedregal 1110 Casa 10, Jardines Del Pedregal, Alvaro Obregon, Mexico, D.F.

16  01900.  As detailed above, it is alleged by Mattel that Ms. Trueba was one of the

17  principal actors engaged in the MGA Defendants' scheme of wrongdoing

18  underlying Mattel's Counterclaims in that Mattel claims she stole and subsequently

19  assisted the MGA Defendants in profiting from Mattel's trade secrets, or otherwise

20  confidential or proprietary information. Ms. Trueba was also previously a Mattel

21  employee, so she can testify to Mattel's acts of unfair competition through

22  intimidation, coercion and other unfair acts intended to prevent MGA from lawfully

23  competing with Mattel.

24      These allegations, and others, underlie MGA's claims of unfair competition

25  and trade dress infringement and Mattel's claims for misappropriation of trade

26  secrets and RICO violations.[12][11]  These allegations are also relevant to Mattel's

27

28     [12][11]  Id. at ¶¶ 146-165.

REQUEST FOR JUDICIAL ASSISTANCE

Exhibit 6
Page 71  Page 17

1    claims in that ~~they will bear on and~~ Mattel believes they will evidence these

2    individuals' and the MGA Defendants' theft and use of Mattel's trade secrets.

3    Moreover, they are relevant to Mattel's defense against MGA's unfair competition

4    claims because Mattel alleges such information will prove that it was MGA that had

5    prior access to Mattel's business plans and strategies and that MGA was the one

6    copying Mattel's intellectual property and ideas—not the other way around as MGA

7    alleges. MGA expects these individuals will also have first-hand knowledge of

8    Mattel's unfair practices intended to drive MGA out of business.

9        Because Mr. Vargas and Ms. Trueba have unique and personal knowledge of

10   the matters at issue in the consolidated litigation proceedings, it will further the

11   interests of justice if they are examined, under oath, as to their knowledge of the

12   facts which are relevant to the claims and defenses of these consolidated cases.

13     **C.**     **Subject Matter About Which The Deponents Are To Be Examined**

14             **(Article 3(f))**

15        The subject matter about which Mr. Vargas is to be examined is set forth in

16   Schedule B. The subject matter about which Ms. Trueba is to be examined is set

17   forth in Schedule C.

18     **D.**     **Requirement That The Evidence Be Given on Oath or Affirmation**

19             **and Specific Form to Be Used (Article 3(h))**

20        The examinations of Mr. Vargas and Ms. Trueba shall be taken under oath

21   before the appropriate Mexican judicial authority and empowered to administer

22   oaths and take testimony.

23        This Court further requests that you require that the testimony given during

24   the examinations be given under the following oath: "I [name of deponent] swear

25   that the testimony that I am about to give is the truth, the whole truth and nothing

26   but the truth, so help me God."

27        In the event that the Law of the United Mexican States does not permit the

28   swearing of an oath by a particular witness, the duly appointed officer shall make

Exhibit 10

Page 71 Page 18

-13-

REQUEST FOR JUDICIAL ASSISTANCE

1   inquiry of such witness to ensure that he/she understands the gravity of the

2   procedure and affirms that his/her statement will be true and correct in all respects.

3   **E.      Special Methods or Procedures to be Followed (Article 3(i) and 9)**

4   The examinations shall be taken under the <u>Federal Rules of Civil Procedure</u>

5   of the United States of America, except to the extent such procedure is incompatible

6   with the internal laws of Mexico.

7   Considering that the parties' representatives are not fluent in Spanish, the

8   examination and cross-examination shall be taken in English, and therefore, a duly

9   authorized expert translator will be timely appointed by the requesting party

10   ("Mattel").

11   The examinations shall be taken before a commercial stenographer and a

12   verbatim transcript shall be produced.  The examinations shall also be videotaped.

13   The equipment needed to obtain the verbatim transcript and the videotape, as

14   well as the persons needed to operate such equipment, will be provided by the

15   requesting party ("Mattel").

16   **F.      Fees and Costs**

17   Any fees and costs incurred by Mr. Vargas and Ms. Trueba in conjunction

18   with their respective examinations will be paid by Defendant Mattel, Inc, through its

19   counsel of record:  Michael T. Zeller, Quinn Emanuel Urquhart Oliver & Hedges,

20   LLP, 865 South Figueroa Street, 10th Floor, Los Angeles, CA  90017.  Mattel's

21   payment of any such fees and costs is without prejudice to its making a subsequent

22   request to be reimbursed for these costs by other parties in these consolidated

23   actions.

24   **G.      Notification of Court and Parties (Article 7)**

25   Pursuant to Article 7 of the Hague Convention on the Taking of Evidence

26   Abroad, the Court requests that counsel for the parties in this action, listed in

27   Schedule A, be informed of the time when, and the place where, the proceedings

28   will take place, in order that they may be present.

Exhibit 6
Page 72 Page 19

### H.   Conclusion

Based on the foregoing and the Court's review of the pleadings, this Court has concluded that Mr. Vargas and Ms. Trueba have information about the claims and defenses that are the subject of the civil action against the MGA Defendants and Carter Bryant, ~~including but not limited to their knowledge of the alleged theft of Mattel's trade secrets; the subsequent distribution and use of those trade secrets to harm Mattel, and their knowledge of communications with MGA, or anyone acting on MGA's behalf, on or before April 19, 2004, regarding their resignation from Mattel; compensation, money or anything of value paid by the MGA Defendants to Mr. Vargas and Ms. Trueba.~~

Accordingly, in the interests of justice and to assure a complete record, it is necessary for: (1) Mr. Vargas to be examined under oath on the topics set forth in Schedule B; and (2) Ms. Trueba to be examined under oath on the topics set forth in Schedule C.

### III.   REQUEST FOR JUDICIAL ASSISTANCE

The evidence sought cannot be obtained other than from Mr. Vargas and Ms. Trueba through examination, and such evidence will be useful to this Court in determining the validity of the claims and defenses in this case.  The evidence sought is necessary for trial in this matter and will be adduced at trial, if admissible and appropriate.

Therefore, after having thoroughly reviewed the pleadings in this matter, this Court requests the following as to Mr. Vargas and Ms. Trueba:

(1)    You cause, by your proper and usual process, Mr. Vargas and Ms. Trueba to be summoned, at their addresses set forth herein, or at any other domiciles which are provided to you by the individuals authorized by the requesting party, to appear before you or some competent official authorized by you, on a date mutually agreed upon by the deponent and the parties or at a time and/or place to be determined by you, to give testimony under oath by questions and answers upon oral

Exhibit 10
Page 72, Page 20

1   examination, such examination to continue day to day until completion and

2   conducted in accordance with the <u>Federal Rules of Civil Procedure</u> or as permitted

3   by you.  Mr. Vargas and Ms. Trueba shall be summoned under official warning to

4   apply against them the most effective enforcement measures allowed by law, to

5   achieve their appearance at the hearing scheduled for them to give their testimony.

6   In the event that the Law of the United Mexican States does not permit the swearing

7   of an oath by a particular witness, the duly appointed officer shall make inquiry of

8   such witness to ensure that he/she understands the gravity of the procedure and

9   affirms that his/her statement will be true and correct in all respects.

10          (2)     You permit Mr. Vargas and Ms. Trueba to be examined under oath by

11   counsel for all parties in this matter, allowing full examination and cross-

12   examination on the subject matter of this case, including the topics delineated in

13   Schedules B and C to this Letter of Request.

14          (3)     You cause a verbatim transcript of the testimony of the witnesses to be

15   taken and reduced to writing.  The examinations shall also be videotaped.

16          (4)     You order that the oral evidence produced pursuant to your

17   enforcement of this Letter of Request shall not be used by anyone in any manner or

18   proceeding other than in this matter, Bryant v. Mattel, Inc., Case No. 04-9049 SGL

19   (RNBx) (Consolidated with Case No. 04-9059 and Case No. 05-2727), pending in

20   the United States District Court for the Central District of California.  A Protective

21   Order was entered in this action on January 4, 2005 (Attachment 1 hereto).

22          (5)     You notify counsel for the parties in this action, listed in Schedule A, of

23   the time when, and the place where, the proceedings will take place, in order that

24   they may be present.

25   **IV.    RECIPROCITY**

26          This Court expresses its sincere willingness to provide similar assistance to

27   the Central Authority of the United Mexican States if future circumstances should

28   require.

Exhibit 6
Page 72 Page 21

1    #

2    #

3    #

4    #

5    #

6    #

7    #

8    #

9    #

10   #

11   #

12   #

13   #

14   **V.    CONCLUSION**

15       In the spirit of comity and reciprocity, this Court hereby requests international

16   judicial assistance in the form of this Letter of Request to compel:

17       (1)    Mr. Vargas to be examined under oath on the topics set forth in

18   Schedule B; and

19       (2)    Ms. Trueba to be examined under oath on the topics set forth in

20   Schedule C.

21

22

23   DATED: _____,

24   2009

25

26   By: _____

27   THE HONORABLE STEPHEN G. LARSON
     United States District Judge

28   Authentication of Signature by Clerk of the Court:

Exhibit 16
Page 72Page 22

TERRY NAFISI, Clerk of the Court

By

By

Deputy
Clerk

Deputy Clerk

Court's Authentication that the Clerk of Court is the Clerk of Court:

By

By

THE HONORABLE STEPHEN G. LARSON
United States District Judge

Authentication of Signature by Clerk of the Court:

TERRY NAFISI, Clerk of the Court

By

By

Deputy
Clerk

Deputy Clerk

## SCHEDULE A

NAMES AND ADDRESSES OF THE PARTIES

AND THEIR REPRESENTATIVES

John B. Quinn, Esq.
Michael T. Zeller, Esq.
Jon D. Corey, Esq.
**QUINN EMANUEL URQUHART
OLIVER & HEDGES, LLP**
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017

*Attorneys for Mattel, Inc.*

Melinda Haag, Esq.
Annette L. Hurst, Esq.
Warrington S. Parker III, Esq.
**ORRICK, HERRINGTON &
SUTCLIFFE LLP**
The Orrick Building,
405 Howard Street
San Francisco, CA 94104

~~William A. Molinski, Esq.~~
~~**ORRICK, HERRINGTON &
SUTCLIFFE LLP**~~
~~777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017~~

~~Thomas J. Nolan, Esq.~~
~~Jason Russell, Esq.~~
~~**SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP**~~
~~300 South Grand Ave., Suite 3400
Los Angeles, CA 90071~~

~~*Attorneys for MGA Entertainment, Inc.;
MGAE de Mexico, S.R.L. de C.V.; MGA
Entertainment (HK) Limited; and Isaac
Larian*~~

William A. Molinski, Esq.
**ORRICK, HERRINGTON &
SUTCLIFFE LLP**
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017

Thomas J. Nolan, Esq.
Jason Russell, Esq.
**SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP**

Mark E. Overland, Esq.
David C. Scheper, Esq.
Alexander H. Cote, Esq.
**OVERLAND, BORENSTEIN,
SCHEPER & KIM, LLP**
300 S. Grand Avenue, Suite 2750
Los Angeles, CA 90071

*Attorneys for Carlos Gustavo
Machado Gomez*

Todd E. Gordinier, Esq.
Peter N. Villar, Esq.
Craig A. Taggart, Esq.
**BINGHAM MCCUTCHEN LLP**
600 Anton Blvd., 18th Floor
Costa Mesa, CA 92626

*Attorneys for Omni 808 Investors, LLC*

-19-

REQUEST FOR JUDICIAL ASSISTANCE

Exhibit 6
Page 72

Page 24

—

1  | 300 South Grand Ave., Suite 3400 Los
   | Angeles, CA 90071
2  | Attorneys for MGA Entertainment,
3  | Inc.; MGAE de Mexico, S.R.L. de C.
   | V.; MGA Entertainment (HK) Limited;
4  | and Isaac Larian
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Exhibit 16
Page 72

Page 25

**SCHEDULE B**

SUBJECT MATTER ABOUT WHICH MR. VARGAS IS TO BE EXAMINED

1.  Theft of documents that contain proprietary and trade secret information, physical or electronic, from Mattel, Inc., Mattel de Mexico, S.A. de C.V. or Mattel Servicios, S.A. de C.V., by anyone, including Mr. Vargas.

2.  Mr. Vargas' communications with the MGA Defendants, or anyone acting on the MGA Defendants' behalf, on or before April 19, 2004, including but not limited to communications regarding Mr. Vargas' resignation from Mattel.

3.  Compensation, money or anything of value paid by the MGA Defendants to Mr. Vargas, including bonuses.

4.  Mr. Vargas' receipt, access, use, reproduction, copying, storage, transmission, transfer, disclosure, retention, destruction, deletion or use of any documents, data and/or information, that were prepared, made, created, generated, assembled or compiled by or for Mattel and that the MGA Defendants received, directly or indirectly from Mr. Vargas.

5.  Mr. Vargas' access, use, dissemination or disclosure of Mattel's trade secrets, or otherwise confidential or proprietary information, while employed by the MGA Defendants.

6.  Mr. Vargas' communications with MGA, including but not limited to Isaac Larian, Thomas Park or Susanna Kuemmerle, relating to his decision to join MGAE de Mexico and other matters at issue in this Action.

7.  Mr. Vargas' role in establishing MGAE de Mexico, including communications related thereto.

8.  Mr. Vargas' title(s), role(s), and responsibilities at MGAE de Mexico.

Exhibit 56
Page 727 Page 26

**SCHEDULE C**

SUBJECT MATTER ABOUT WHICH MS. TRUEBA IS TO BE EXAMINED

1.  Theft of documents that contain proprietary and trade secret information, physical or electronic, from Mattel, Inc., Mattel de Mexico, S.A. de C.V. or Mattel Servicios, S.A. de C.V., by anyone, including Ms. Trueba.

2.  Ms. Trueba's communications with the MGA Defendants, or anyone acting on the MGA Defendants' behalf, on or before April 19, 2004, including but not limited to communications regarding Ms. Trueba's resignation from Mattel.

3.  Compensation, money or anything of value paid by the MGA Defendants to Ms. Trueba, including bonuses.

4.  Ms. Trueba's receipt, access, use, reproduction, copying, storage, transmission, transfer, disclosure, retention, destruction, deletion or use of any documents, data and/or information, that were prepared, made, created, generated, assembled or compiled by or for Mattel and that the MGA Defendants received, directly or indirectly from Ms. Trueba.

5.  Ms. Trueba's access, use, dissemination or disclosure of Mattel's trade secrets, or otherwise confidential or proprietary information, while employed by the MGA Defendants.

6.  Ms. Trueba's communications with MGA, including but not limited to Isaac Larian, Thomas Park or Susanna Kuemmerle, relating to her decision to join MGAE de Mexico and other matters at issue in this Action.

7.  Ms. Trueba's role in establishing MGAE de Mexico, including communications related thereto.

8.  Ms. Trueba's title(s), role(s), and responsibilities at MGAE de Mexico.

9.  Mattel's intimidation, coercion and threats of retailers, licensees, suppliers and others in the toy industry.

10.    Mattel's efforts to inhibit and stifle MGA's ability to compete with Mattel
and to prevent MGA from obtaining licensees, contracts and supplies for its
production.

11.    Mattel's intimidation of the look of MGA products, trade dress, trademarks,
themes, ideas, advertising and packaging, including for the "BRATZ" line
dolls.

12.    Mattel's intimidation and threats made to employees intended to prevent
MGA from hiring and/or retaining employees.

13.    Mattel's efforts to hinder or delay employees from seeking better employment
through one-sided and oppressive agreements and other unfair practices.

Dated:              , 2009


                         By:    /s/ William A. Molinski
                                William A. Molinski
                                Attorneys for MGA ENTERTAINMENT, INC.,
                                MGA ENTERTAINMENT HK, LTD., MGA de
                                MEXICO, S.R.L. de C.V., and ISAAC LARIAN

Document comparison by Workshare Professional on Monday, August 17, 2009 11:42:39 PM

| Input: | |
|---|---|
| Document 1 ID | interwovenSite://QELA-DMS/QuinnEmanuel/2866400/2 |
| Description | #2866400v2<QuinnEmanuel> - Proposed Letter of Request for Vargas and Trueba |
| Document 2 ID | file://C:/Documents and Settings/sonyabryant/Desktop/[revised]6305-2 from pdf.doc |
| Description | [revised]6305-2 from pdf |
| Rendering set | standard |

| Legend: |
|---|
| Insertion |
| ~~Deletion~~ |
| ~~Moved from~~ |
| Moved to |
| Style change |
| Format change |
| ~~Moved deletion~~ |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 77 |
| Deletions | 83 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 160 |

1

## **PROOF OF SERVICE**

2

I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action; my business address is 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017-2543.

3

4

On August 18, 2009, I served true copies of the following document(s) described as **MATTEL, INC.'S OBJECTIONS TO THE SUPPLEMENTAL DECLARATION OF WILLIAM A. MOLINSKI IN RESPONSE TO MOTION FOR ISSUANCE OF LETTERS OF REQUEST FOR VARGAS AND TRUEBA AND REQUEST FOR AMENDMENT OF LETTERS** on the parties in this action as follows:

5

6

7

Thomas J. Nolan, Esq.
Jason D. Russell, Esq.
Skadden Arps Slate Meagher & Flom
300 S. Grand Avenue, Suite 3400
Los Angeles, CA 90071
thomas.nolan@skadden.com
jason.russell@skadden.com

Melinda Haag
Annette L. Hurst
Warrington S. Parker III
Orrick, Herrington & Sutcliffe, LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105
mhaag@orrick.com
ahurst@orrick.com
wparker@orrick.com

8

9

10

11

12

13

William A. Molinski
Orrick, Herrington & Sutcliffe, LLP
777 South Figueroa Street
Suite 3200
Los Angeles, CA 90017
wmolinski@orrick.com

Mark E. Overland, Esq.
Alexand H. Cote, Esq.
Overland Borenstein Scheper & Kim LLP
601 West Fifth Street, 125th Floor
Los Angeles, CA 90071
moverland@scheperkim.com
acote@scheperkim.com

14

15

16

17

Todd E. Gordinier
Bingham McCutchen LLP
600 Anton Boulevard, 18th Floor
Costa Mesa, CA 92626
todd.gordinier@bingham.com

18

19

20

**BY ELECTRONIC MAIL TRANSMISSION:** By electronic mail transmission from cyrusnaim@quinnemanuel.com on August 18, 2009, by transmitting a PDF format copy of such document(s) to each such person at the e-mail address listed below their address(es).  The document(s) was/were transmitted by electronic transmission and such transmission was reported as complete and without error.

21

22

23

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

24

25

Executed on August 18, 2009, at Los Angeles, California.

26

27

/s/ Cyrus Naim
Cyrus Naim

28

Exhibit 36
Page 731

07209/2996794.1

EXHIBIT 37

## Cyrus Naim

| From: | Molinski, William [wmolinski@orrick.com] |
|---|---|
| Sent: | Monday, August 17, 2009 4:36 PM |
| To: | Michael T Zeller; O'Brien, Robert; Hansen, Drew |
| Cc: | Hurst, Annette; Russell, Jason D; Marshall Searcy; Dylan Proctor |

**Subject:** RE: Mattel adv. MGA

Mr. O'Brien:

The Supplemental declaration I provided today responds to new arguments raised in Mattel's Reply, and, thus is entirely proper. If the Discovery Master does not wish to consider this submission, however, I would request that the hearing on this matter be put back on calendar so that I may address the issues raised in Mattel's reply. Alternatively, we would request that the decision on Mattel's motion for the issuance of letters requests be continued until we can make a formal motion to amend Mattel's requested letters to include topics, and a description, of MGA's claims against Mattel. Thank you for your attention to this matter.

Respectfully submitted,
Bill Molinski



ORRICK

**BILL A. MOLINSKI**
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
777 SOUTH FIGUEROA STREET
SUITE 3200
LOS ANGELES, CA 90017-5855

*tel* 213-612-2256
*fax* 213-612-2499
*mobile* 310-502-7580
wmolinski@orrick.com

www.orrick.com

---

**From:** Michael T Zeller [mailto:michaelzeller@quinnemanuel.com]
**Sent:** Monday, August 17, 2009 4:23 PM
**To:** 'O'Brien, Robert'; 'Hansen, Drew'
**Cc:** Hurst, Annette; 'Russell, Jason D'; Searcy, Marshall; Dylan Proctor; Molinski, William
**Subject:** Mattel adv. MGA

Dear Mr. O'Brien, we have received Mr. Molinski's supplemental declaration that attaches new letters of requests in connection with Vargas and Trueba. These new letters, submitted after briefing on Mattel's motion was concluded and after the Discovery Master's Order of today took the hearing off-calendar and deemed the matter submitted, purport to unilaterally revise Mattel's already pending letters of request and to add new topics never previously mentioned by MGA. To the extent that the Discovery Master will be considering MGA's submission at all, Mattel intends to respond and object to these new letters in due course, hopefully by tomorrow afternoon at the latest. Thanks in advance for your consideration.

Michael T. Zeller
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor

Exhibit 37
Page 732

Los Angeles, CA 90017
Direct: (213) 443-3180
Main Phone: (213) 443-3000
Main Fax: (213) 443-3100
E-mail:  michaelzeller@quinnemanuel.com
Web:  www.quinnemanuel.com

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above.  This message may be an attorney-client communication and/or work product and as such is privileged and confidential.  If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited.  If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

"EMF <orrick.com>" made the following annotations.
-----------------------------------------------------------------------
=============================================================

IRS Circular 230 disclosure:
To ensure compliance with requirements imposed by the IRS,
we inform you that any tax advice contained in this
communication, unless expressly stated otherwise, was not
intended or written to be used, and cannot be used, for
the purpose of (i) avoiding tax-related penalties under
the Internal Revenue Code or (ii) promoting, marketing or
recommending to another party any tax-related matter(s)
addressed herein.

=============================================================

NOTICE TO RECIPIENT:  THIS E-MAIL IS  MEANT FOR ONLY THE
INTENDED RECIPIENT OF THE TRANSMISSION, AND MAY BE A
COMMUNICATION PRIVILEGED BY LAW.  IF YOU RECEIVED THIS E-
MAIL IN ERROR, ANY REVIEW, USE, DISSEMINATION,
DISTRIBUTION, OR COPYING OF THIS E-MAIL IS STRICTLY
PROHIBITED.  PLEASE NOTIFY US IMMEDIATELY OF THE ERROR BY
RETURN E-MAIL AND PLEASE DELETE THIS MESSAGE FROM YOUR
SYSTEM. THANK YOU IN ADVANCE FOR YOUR COOPERATION.

For more information about Orrick, please visit
http://www.orrick.com/
=============================================================
=============================================================

Exhibit 37
Page 733

EXHIBIT 38

July 29, 2009

**BY EMAIL AND U.S. MAIL**

Jeffrey B. Valle, Esq.
Valle & Associates
1911 San Vicente Blvd., Suite 324
Los Angeles, California 90049

Re:     Mattel, Inc. v. MGA Entertainment, Inc. et al.

Dear Counsel:

I am writing, pursuant to section 5 of the Discovery Master Stipulation, to request a meet and
confer in advance of a contemplated motion to compel IGWT Group and IGWT 826
(collectively, "IGWT") to produce documents responsive to the Requests of the subpoenas as to
which documents were not previously compelled and to modify limitations that were previously
placed on the Requests that were compelled.

As you know, Judge Larson has found that Mattel's Third Amended Complaint "significantly
heightens the relevancy of the issue of how the MGA parties and the parties represented by
Bingham may be related, the formation of certain of those entities, and other issues implicated by
Mattel's requests." 7/9/09 Order at 5.  In that same Order, Judge Larson also explained that the
relationship between the MGA parties and the Omni parties is relevant to whether or not their
business dealings are arm's-length. Id. at 11-12.

As this makes clear, Mattel is entitled to the remaining information sought by the subpoenas to
IGWT.  For example, the Requests asking for ownership information that were either not
previously compelled or were limited so as to exclude information seek relevant information, as
Judge Larson has now confirmed.  See, e.g., IGWT Group, LLC subpoena, Request Nos. 3-4.
Likewise, the Requests seeking information about the sources of funding and the transfer of

Exhibit 38
Page 734

assets is now directly relevant in light of the TAAC.  See, e.g., IGWT Group, LLC subpoena, Request No. 6; IGWT 826 Investments, LLC subpoena, Request No. 6.

Therefore, in the event that the matter cannot be resolved through the meet and confer process, Mattel intends to bring a motion for an order compelling IGWT to produce documents that were not previously compelled and to modify limitations that were previously placed on the Requests which were previously compelled.

Please let us know when you are available to meet and confer within the time required.

Very truly yours,

Michael T. Zeller

07975/2896587.1

cc:     Jason Russell, Esq.
        Amman Khan, Esq.
        Peter Villar, Esq.

07975/3030663.1

07975/3030663.1                              2                              Exhibit 38
                                                                            Page 735

EXHIBIT 39

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

July 30, 2009

**VIA EMAIL, FACSIMILE AND U.S. MAIL**

Jeffrey Valle, Esq.
Valle & Associates
1911 San Vincente Blvd., Suite 324
Los Angeles, CA 90049

Re:   Mattel, Inc. v. MGA Entertainment, Inc. et al.

Dear Jeffrey:

I write pursuant to Section 5 of the Discovery Master Stipulation to request a meet and confer regarding IGWT Group, LLC's and IGWT 826, LLC's Privilege Log, produced on May 6, 2009 ("IGWT Privilege Log").

IGWT's privilege log raises several issues that require clarification or further detail to so that Mattel can adequately assess IGWT's claims of privilege.

*Communications Between Distinct Entities & Claims of Common Interest*

Many of the entries on IGWT's privilege log involve communications between MGA business personnel and/or MGA attorneys, on the one hand, and IGWT personnel or other third parties on the other; some do not appear to involve any IGWT personnel at all.[1]

For example, IGWT Log No. 7023007 is an email from Barbara Leitner, an administrator in MGA's sales department, to David Oakes, a licensing attorney at MGA, cc'ing Brad Schneider, an IGWT employee, described as an "[e]mail chain requesting and rendering legal advice regarding vendor agreement." Similarly, IGWT Log No. 7014393 is an email from Lisa Tonnu, MGA's Vice-President of Taxation, to Mary Vanzo, who appears to be an employee of Omninet Capital, cc'ing Shirin Makabi and described as "[e]mail chain reflecting legal advice regarding corporate finances and corporate formation."

---

[1]   The entries falling under this category include virtually every document listed by IGWT on its log.

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

Exhibit 39
Page 736

IGWT's claims of privilege as to these communications are not well founded.  While these communications are described as attorney-client communications, it would appear that the only attorneys and clients involved are MGA's counsel and MGA, not IGWT or IGWT's counsel. Indeed some of the entries on the log—which presumably purports to assert IGWT's privilege claims—do not even involve *any* IGWT employees.  For example, IGWT Log No. 7014304 is an email from Yoko Iwamura, MGA's tax manager, to Jeanine Pisoni, MGA's general counsel, cc'ing Lisa Tonnu, described as "[e]mail requesting legal advice regarding tax issues."  Given that these communications, at least those involving both IGWT and MGA or Omni personnel, appear to be communications between purportedly distinct entities and/or communications that were transmitted to purportedly distinct entities, any claim of privilege has been waived.

For the majority of these entries, IGWT purports to assert a claim of "common interest" privilege.  As you know, this so-called privilege is a "limited exception" to the general rule of waiver, and allows privileged communications to be made with third-parties under certain narrow circumstances without resulting in waiver.  See Shamis v. Ambassador Factors Corp., 34 F. Supp. 2d 879, 893 (S.D.N.Y. 1999).  In order to satisfy its burden as to the doctrine's applicability, IGWT must "place the communications in context so that an informed determination can be made with respect to each document drafted or received by persons affiliated with multiple companies or firms."  In re Priceline.com, Inc. Sec. Litig., 233 F.R.D. 92, 94 (D. Conn. 2005).

IGWT has not met this burden.  IGWT's current log provides far too little detail as to the various parties or entities involved to even begin to assess whether the "common interest" doctrine could apply.  Notably, it is impossible to determine which entities—MGA, IGWT Group, LLC, IGWT 826, LLC, the Omni entities or any others—are involved in these communications, which attorneys represent which entities and which entities' alleged privilege is being asserted.

Accordingly, please be prepared to articulate IGWT's position as to the applicability of the "common interest" doctrine and (1 ) identify all entities to which you claim this exception applies, (2) which entity is asserting the attorney-client, work product and/or common interest privilege, (3) which attorneys represent which entity and (4) and the nature of the common legal interest to which these communications relate.

### *Communications Between Non-Legal Personnel & Widely Distributed Communications*

IGWT's privilege log contains a number of entries that do not appear to involve counsel.[2]  While communications between non-lawyers may, in some circumstances, fall within the scope of

---

[2]   See IGWT Log Nos. 7014374, 7017552, 7019224, 7019202, 7014157, 7014156, 7014176, 7023758, 7022830, 7022828, 7020301, 7014166, 7014165, 7014160, 7014159, 7013383, 7013264, 7013269, 7013256, 7014299, 7014301, 7024426, 7013652, 7020384, 7014188, 7014192, 7014174, 7023125, 7018556, 7020066, 7020067, 7022831, 7012642, 701644, 7068002.

Exhibit 39
Page 737

privilege, IGWT bears the burden of substantiating its claims. Here, IGWT's vague descriptions that these communications "relate" to or "reflect" legal issues regarding subjects such as "corporate formation" "corporate financing" and "tax issues" are inadequate. Simply because these issues might involve legal issues does not make communications between non-lawyers on those subjects privileged.

Moreover, to the extent that these "email chains" may forward or discuss an attorney's legal advice, IGWT must identify the specific source of any legal advice contained within these non-lawyer communications. See U.S. v. Exxon Corp., 87 F.R.D. 624, 637 (D.D.C. 1980) (noting that privilege log "should reveal the source of the information, whether the communication occurred in confidence, and whether the source was a lawyer"); see also Southeastern Penn. Transp. Authority v. Caremarkpcs Health, L.P., 254 F.R.D. 253, 259 (E.D. Pa. 2008) ("It is important for the party seeking to assert the privilege to 'identify [a] specific attorney with whom a confidential communication was made" in order to satisfy this burden") (citation omitted); SmithKline Beecham Corp. v. Apotex Corp., 232 F.R.D. 467, 477 (E.D. Pa. 2005) (holding that where a party's privilege log descriptions for communications between non-lawyers "do[] not identify any specific attorney with whom a confidential communication was made," party failed to substantiate claim). Here, IGWT's logs do not do so, without which it is impossible to assess whether these communications have been properly withheld.

Although these communications do not appear, based on the log's descriptions, to involve counsel, Mattel's review has been hampered by the fact that IGWT's privilege log does not indicate which individuals on its log are attorneys. Accordingly, please identify the following individuals listed on IGWT's privilege log and whether they are attorneys: Odelynne Mendoza, Khong Phua, Mary Vanzo and Christine Zacho.

Additionally, a few entries show very wide distribution of allegedly privileged communications.[3] While the recipients of these communications include a few attorneys, the presence of employees from MGA's accounting or logistics departments undermines the claim that these communications "reflect[] litigation strategy." Please let us know whether, on further review, IGWT will continue to withhold these documents as privileged.

### Non-Privileged Attachments

A number of entries suggest that factual information that may not be privileged has nevertheless been withheld because it was transmitted to an attorney. Specifically, IGWT's log lists several withheld "spreadsheet[s] regarding corporate finances" that were attached to communications that have been separately withheld.[4] Similarly, the log lists a number of withheld attachments

---

[3] See IGWT Log Nos. 7014485, 7017653, 7019475, 7023756, 7024308.

[4] See IGWT Log Nos. 7013262, 7024427, 7014410, 7022832, 7012643, 7013645, 7014411, 7014478, 7014476, 7014469, 7014465, 7013274, 7020302, 7022829.

Exhibit 39
Page 738

such as "financial documents" and "financial statements," "[p]owerpoint [presentations] reflecting corporate formation," or "letters."[5]

Many of the underlying communications do not even appear to involve attorneys, and for the few that do, it is well-settled the mere transmission of non-privileged information to an attorney does not render the information privileged. See United States v. Osborn, 561 F.2d 1334, 1338 (9th Cir. 1977) (documents given to attorney for the purpose of seeking legal advice did not become privileged). While the underlying communications may be privileged, the factual information contained in these "financial statements" or "financial documents" is not privileged and should be produced. See City of Philadelphia, Pa. v. Westinghouse Elec. Corp., 205 F. Supp. 830-31 (E.D. Pa. 1962) ("[T]he protection of the privilege extends only to *communications* and not to facts.") (emphasis in original). Likewise, these financial documents and summaries would not appear to be work product. See Matter of Fischel, 557 F.2d 209, 212 (9th Cir. 1977) (attorney's summaries of client's financial transactions with third parties were not protected work product because such summaries were not prepared in anticipation of litigation)

If IGWT contends that these attachments themselves are privileged, it must indentify the author of these attachments, the date of their creation, and provide sufficient detail of their subject-matter or purpose to substantiate such claims privilege. See, e.g., Baxter Healthcare Corp. v. Fresenius Med. Care Holding, Inc., 2008 WL 5214330, at *1 (N.D. Cal. 2008) (ordering production of powerpoint presentations and other documents where privilege log failed to identify author or attorneys involved).

### *Fax Cover Sheets*

IGWT's privilege log indicates that several of the withheld documents are "[f]ax cover sheets" that are attached to separately logged documents or communications.[6] Such documents are not generally privileged, in and of themselves, because correspondence that "merely transmit[s] documents to or from an attorney, even at the attorney's request for purposes of rendering legal advice to a client, are neither privileged nor attorney work-product." American Med. Sys., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Inc., 1999 WL 970341, at *5 (E.D. La. Oct. 22, 1999) (ordering production of fax cover sheets). Thus, while the underlying communications may be privileged, the attached fax cover sheets are not unless they also transmit confidential information.

Please be prepared to discuss whether, after further review, IGWT will continue to assert claims of privilege with regard to these "fax cover sheets."

---

[5] See IGWT Log Nos. 7013655, 7013654, 7013653, 7014473, 7014191, 7014190, 7014189, 7014195, 7014194, 7014193, 7014474, 7014475, 7014416, 7014452, 7013265.

[6] See IGWT Log Nos. 7019476, 7023757, 7023759, 7024309, 7017251, 7014486.

Exhibit 39
Page 739

### *Communications Regarding Legal Fees*

A number of the withheld communications on IGWT's privilege log are described as related to "legal fees."[7]  As the Court and the Discovery Master have ruled in this case previously, fee agreement information is generally not protected by the attorney client or the work product doctrine.  Here, IGWT's vague descriptions of these communications "regarding legal fees" makes any assessment of IGWT's claims impossible.  Accordingly, please be prepared to discuss the nature of these communications in greater detail and whether any non-privileged information may be produced in redacted form.

Please let me know when you are available to discuss these concerns.  I look forward to hearing from you promptly.

Best regards,

B. Dylan Proctor/zbk

B. Dylan Proctor
07975/3031744.1

---

[7]  <u>See</u> IGWT Log Nos. 7013481, 701466, 7014165, 7014161, 7014160, 7014159.

Exhibit 39
Page 740

**Tiffany Garcia**

| | |
|---|---|
| **From:** | Dylan Proctor |
| **Sent:** | Thursday, July 30, 2009 2:50 PM |
| **To:** | MGA / Bryant Team |
| **Subject:** | FW: Mattel v. MGA |
| **Attachments:** | July 30, 2009 Letter to J. Valle re IGWT Privilege Logs.pdf |

B. Dylan Proctor
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Direct: (213) 443-3112
Main Phone: (213) 443-3000
Main Fax: (213) 443-3100
E-mail: dylanproctor@quinnemanuel.com
Web: www.quinnemanuel.com

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

**From:** Zachary Krug
**Sent:** Thursday, July 30, 2009 2:49 PM
**To:** jvalle@valleassociates.com
**Cc:** Dylan Proctor
**Subject:** Mattel v. MGA

Dear Mr. Valle.

Please find attached a letter regarding IGWT's privilege log. In light of your assertions that your firm no longer represents the IGWT entities, we would appreciate it if you would advise the IGWT entities of their obligations to respond within 5 court days.

Best regards,

Zachary Krug

Exhibit 39
Page 741

EXHIBIT 40

# Heenan Blaikie

**Of Counsel**
The Right Honourable Pierre Elliott Trudeau, P.C., C.C., C.H., Q.C., FRSC (1984-2000)
The Right Honourable Jean Chrétien, P.C., Q.C.
The Honourable Donald J. Johnston, P.C., Q.C.
Pierre Marc Johnson, FRSC
The Honourable Michel Bastarache
The Honourable John W. Morden
Peter M. Blaikie, Q.C.
André Bureau, O.C.

**VIA EMAIL**

August 11, 2009

Luisa J. Ritacca
Stockwoods LLP
Barristers
Suite 2512 -150 King St. West
Toronto, ON.
M5H 1J9

Ms. Naomi Loewith
Lenczner Slaght Royce Smith Griffin LLP
Barristers
Suite # 2600
130 Adelaide Street West

**Re:  Mattel v. MGA Entertainment (Canada) Company & Janine Brisbois
Our Reference:  026363.0003**

Dear Madams:

Bonnie Roberts Jones

T 416 360.3567
F 1 866 781.1350
brobertsjones@heenan.ca

Bay Adelaide Centre
333 Bay Street, Suite 2900
PO Box 2900
Toronto, Ontario
Canada  M5H 2T4

www.heenanblaikie.com

I write further to your previous correspondence seeking an adjournment of the above-noted application (currently scheduled for August 26, 2009) and our subsequent telephone conversations.

I confirm that my client will consent to a brief adjournment of this matter and that all counsel are available to argue the application on September 10, 2009.  As such, I will take the necessary steps today to adjourn the application to that date.

Yours truly,

Bonnie Roberts Jones

BRJ

Exhibit 40
Page 742

EXHIBIT 41

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

EXHIBIT 42

THIS EXHIBIT IS FILED UNDER SEAL

PURSUANT TO PROTECTIVE ORDER

EXHIBIT 43

**CONFORMED COPY**
LODGED                    FILED

2007 MAY 16  PM 1:59   2007 MAY 16  PM 2:00

CLERK U.S. DISTRICT COURT   CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.   CENTRAL DIST. OF CALIF.
RIVERSIDE                 RIVERSIDE

BY _____   BY _____

1  Hon. Edward A. Infante (Ret.)
   JAMS
2  Two Embarcadero Center
   Suite 1500
3  San Francisco, California  94111
   Telephone:    (415) 774-2611
4  Facsimile:    (415) 982-5287

5

6

7                UNITED STATES DISTRICT COURT

8              CENTRAL DISTRICT OF CALIFORNIA

9                     EASTERN DIVISION

10

11 | CARTER BRYANT, an individual,        | CASE NO. C 04-09049 SGL (RNBx)
   |                                       | JAMS Reference No. 1100049530
12 |          Plaintiff,                   |
   |                                       |
13 |     v.                                | Consolidated with
   |                                       | Case No. CV 04-09059
14 | MATTEL, INC., a Delaware corporation, | Case No. CV 05-2727
   |                                       |
15 |          Defendant.                   | **ORDER GRANTING MATTEL'S**
   |                                       | **MOTION TO COMPEL PRODUCTION**
16 |                                       | **OF DOCUMENTS AND**
   |                                       | **INTERROGATORY RESPONSES BY**
17 | CONSOLIDATED WITH                     | **MGA**
18 | MATTEL, INC. v. BRYANT and
   | MGA ENTERTAINMENT, INC. v. MATTEL,
19 | INC.

20

21                     I. INTRODUCTION

22      On February 2, 2007, Mattel, Inc. ("Mattel") submitted its Motion To Compel Production

23 of Documents and Interrogatory Answers by MGA Entertainment, Inc. ("MGA").  On February

24 20, 2007, MGA submitted its opposition brief, and on February 26, 2007, Mattel submitted a

25 reply brief.  The matter was heard on March 5, 2007.  Thereafter the motion was taken under

26 submission pending the parties' submission of a proposed protective order, which was received

27

28 Bryant v. Mattel, Inc.,
   CV-04-09049 SGL (RNBx)

1  on April 23, 2007.  Having considered the motion papers and comments of counsel at the hearing,

2  Mattel's motion to compel is granted.

3  ## II. BACKGROUND

4  A. Requests for Documents

5  In June of 2004, two months after Mattel filed suit against Bryant, and before MGA

6  became a party to the action, Mattel served MGA with an eight-page subpoena for twenty-one

7  categories of documents, to be produced in ten days.  MGA filed a motion to quash, which the

8  court granted because of the short amount of time provided for compliance with the subpoena.

9  The parties met and conferred in July of 2004, and reached an agreement to limit the scope of

10 some of Mattel's requests.  In particular, the parties agreed to limit production to the "first

11 generation" Bratz dolls.  On August 12, 2004, MGA produced documents.

12 In 2005, the parties stipulated to supplementing their document productions on May 16,

13 2005.  Mattel agreed to continue limiting its discovery requests to "first generation" Bratz dolls.

14 In September of 2006, MGA made a supplemental production of documents.  On February

15 5, 2007, MGA produced about 2,300 pages of documents to replace earlier produced documents

16 with legibility problems.  On February 20, 2007, MGA produced an additional 224 pages of

17 documents to replace earlier produced documents with legibility problems.

18 Mattel now moves to compel MGA to produce documents responsive to its requests.  As a

19 preliminary matter, Mattel contends that MGA's production is deficient because it contains

20 redactions and cut-off text.  Further, Mattel contends that MGA's production is incomplete with

21 respect to essentially five categories of documents.  First, Mattel contends that MGA is

22 withholding documents relating to the origins of Bratz and Bryant's work for MGA.  Mattel

23 believes that MGA's production is incomplete based upon its review of documents that have been

24 produced by third party Steven Linker.  According to Mattel, Linker's documents from October

25 of 2000 show that Bratz was much farther along before Bryant left Mattel than MGA or Bryant

26 previously represented.  Mattel also contends that MGA's responses to the document requests

27

28

1    contain inappropriate limitations, such as MGA's statement that it will produce "relevant and

2    responsive non-objectionable documents" or only that it will produce documents "sufficient" to

3    show when certain dates relating to Bratz occurred. Mattel contends that these "carve outs

4    purport to allow MGA to cherry-pick what it will and will not produce to Mattel." Mattel's

5    Separate Statement at 17:11-13. Mattel also contends that the carve-outs fail to provide notice of

6    what is or is not being withheld. Mattel also contends that MGA's objections based upon its

7    confidentiality concerns or the privacy rights of third parties are unwarranted in light of the

8    protective order in place. In addition, Mattel contends that MGA's objection to producing

9    documents relating to activities or conduct in foreign countries is wholly improper because those

10   documents may contain information relevant to Mattel's claims.

11          Second, Mattel seeks documents relating to the origins of Bratz, regardless of whether

12   such documents relate to the "first generation" Bratz dolls. Mattel argues that whether the work

13   ultimately resulted in Bratz dolls that were released at a particular time does not matter for

14   discovery purposes. Mattel contends that the works created by Bryant during his Mattel

15   employment are highly relevant because Mattel owns them, regardless of whether they resulted in

16   a Bratz doll released at a particular time.[1]

17          Mattel next contends that MGA is improperly withholding documents about designs

18   Bryant created on Bratz dolls that were released after June 2001, even though such designs may

19   be derivative of work he did when employed by Mattel. Mattel contends that it is entitled to

20   explore whether such works and the profits from Bratz dolls other than the "first generation"

21   Bratz dolls were derived from works owned by Mattel both for purposes of establishing liability

22   and damages. Furthermore, Mattel asserts that the "first generation" limitation on discovery is

23   improper in light of Bryant's continuing duty not to use Mattel's confidential and proprietary

24   information as well as MGA's unfair competition claims.

25   _____

26          [1]  Mattel also reiterates many of the arguments it made previously in connection with its earlier filed motion
     to compel Bryant to produce documents.

27

28   Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)                                                                                3

Exhibit 43
Page 793

1    Mattel also asserts that MGA is improperly withholding documents relating to products,
2    services and matters other than those relating to "dolls." According to Mattel, it has evidence that
3    Bryant conceived of marketing and advertising ideas for the Bratz line while he was employed by
4    Mattel. Mattel contends that any such ideas or contributions may belong to it pursuant to the
5    Inventions Agreement.
6         Third, Mattel seeks documents relating to all of MGA's payments to Bryant, and not just
7    payments for the "first generation" Bratz dolls. Mattel asserts that such information is relevant
8    because (1) Mattel seeks all benefits Bryant received as a result of violating his duties to Mattel;
9    (2) under the Copyright Act, Mattel is entitled to all profits from infringement as well as actual
10   damages; and (3) payments may show when and what trade secret information Bryant and other
11   defendants allegedly misappropriated from Mattel.
12        Fourth, Mattel seeks documents relating to MGA's agreements with Bryant. Mattel
13   contends that all agreements between Bryant and MGA are relevant, not just the original
14   September 18, 2000 agreement. In particular, Mattel contends that it is entitled to discover all
15   documents relating to MGA and Bryant's alleged joint defense agreement because such
16   information would be relevant to demonstrate bias and lack of credibility.
17        Fifth, Mattel seeks production of all declarations, affidavits and other sworn written
18   statements from other cases that refer or relate to Bratz or Angel. Mattel contends that such
19   information may reveal relevant information about the date of creation of Bryant's Bratz
20   drawings.
21        In response, MGA denies withholding responsive documents and asserts that it has
22   produced volumes of documents responsive to Mattel's requests. In particular, MGA represents
23   that it has produced all responsive and relevant documents that it was able to locate in response to
24   request nos. 6, 7, 9, 26, 27, 32, 33, 34, 35, 36, 55, 69, and 70. Further, MGA asserts that even
25   before the motion was filed, it had agreed to address the vast majority of the issues raised in this
26   motion. In particular, MGA represents that it is diligently working to produce documents related
27
28
Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

4

Exhibit 43
Page 794

1   to Bratz other than "first generation" Bratz in response to request nos. 1, 2, 8, 10, 11, 43, 45, 46,

2   49, 50, 51, 53, 57, 59, 61, 63, 64, 66, 96, 97, 98, 99 and 100.  MGA represents that it informed

3   Mattel that it would produce documents pertaining to subsequent generations of Bratz dolls that

4   have been released on the market.  In addition, MGA represents that it has agreed to produce

5   documents relevant to Bratz or Prayer Angels that it received from Union Bank.  More

6   specifically, MGA represents that it agreed to review and produce documents provided to it by

7   Union Bank for the years 1999 – 2001 concerning payments that it could identify as being for

8   Bratz or Prayer Angels.  MGA also represents that it has agreed to produce royalty statements.

9   Therefore, MGA views the motion as unnecessary.

10         MGA next contends that Mattel's motion should be denied for the following additional

11   reasons.  First, MGA contends that Mattel is not entitled to MGA's product design documents for

12   unreleased products.  MGA asserts that its product design documents for its unreleased toy

13   concepts are among its most highly valuable trade secrets.  Furthermore, MGA contends that

14   designs and drawings for products currently under development, over six years after Bryant first

15   created his original Bratz drawings, have no relevance to any of Mattel's claims.  In the event that

16   documents relating to unreleased products are ordered produced, MGA requests a protective order

17   under Rule 26(c), Fed.R.Civ.P., that limits the dissemination of its documents more drastically

18   than the current protective order provides.  In the alternative, MGA requests that any order

19   compelling production of documents relating to unreleased products should essentially be stayed

20   until after MGA's products are publicly released.

21         Second, MGA contends that Mattel is not entitled to information concerning Bryant's

22   attorneys' fees because the information is privileged.  Furthermore, MGA contends that the

23   information is not relevant to demonstrate bias because "there is no dispute that Bryant's interests

24

25

26

27

28

1  in this case are aligned with those of MGA, and that Bryant is 'biased' in that sense." MGA's

2  Opposition at 24:9-12.[2]

3          Third, MGA asserts that Mattel is not entitled to review all non-public witness statements

4  and litigation documents concerning Bratz for a variety of reasons, including because Mattel has

5  refused to produce similar types of documents. More significantly, MGA contends that Mattel's

6  requests for non-public witness statements are "a blatant attempt to avoid the discovery

7  limitations imposed by both the Federal Rules of Civil Procedure and those additional limitations

8  imposed by this Court." MGA's Opposition at 25:6-7. MGA explains its position as follows.

9  MGA is involved in litigation against a number of counterfeiters and infringers in Asia. In 2003,

10  Mattel allegedly began feeding documents concerning "Toon Teens" to those defendants in an

11  attempt to prove that Bryant created Bratz while working at Mattel, even though Mattel

12  abandoned its claims based upon "Toon Teens" in this court. Thereafter, those defendants took

13  the position that MGA did not own, and therefore could not enforce, the rights to Bratz. MGA

14  was thus forced to litigate the issue of ownership. MGA contends that "[i]n effect, by prompting

15  foreign counterfeiters to espouse a theory that Mattel now admits has no merit, Mattel has created

16  a situation in which MGA has been forced to give testimony and provide evidence related to

17  issues in this case that Mattel now seeks to obtain wholesale." MGA's Opposition at 25:5-24.

18          Fourth, MGA contends that Mattel is not entitled to documents concerning a family

19  dispute between MGA's chief executive officer and his brother because such documents are in no

20  way relevant to this lawsuit. MGA explains that the brothers were involved in an arbitration

21  proceeding relating to MGA's CEO's purchase of his brother's interest in MGA. Moreover,

22  MGA contends that the brothers were bound by a protective order prohibiting the use of any

23  documents or testimony for any purpose other than the arbitration.

24

25  _____

26     [2]  Nevertheless, MGA represents that it has produced the only non-privileged document responsive to the
    request.

27

28  Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)                                                                6

Exhibit 43
Page 796

1   Fifth, MGA contends that Mattel is not entitled to its chief executive officer's personnel

2   files because they contain confidential information and are not relevant to the lawsuit. Sixth,

3   MGA contends that Mattel is not entitled to obtain documents from MGA that belong to, and are

4   in the possession, custody and control of, its indirect foreign subsidiary, MGA HK Ltd. Lastly,

5   MGA objects to producing documents relating to any testing performed to determine the date that

6   Bratz documents were created. MGA contends that such discovery is premature and should not

7   proceed until experts are designated.

8   B. Interrogatories

9   On April 28, 2005, Mattel served its Second Set of Interrogatories. On May 20, 2005,

10   however, the district court stayed the action. On May 17, 2006, the district court lifted the stay.

11   On May 30, 2006, MGA responded to the interrogatories.

12   Mattel contends that MGA's responses to the interrogatories were untimely. Further,

13   Mattel contends that the interrogatory responses to numbers five through eleven are deficient

14   because they lack substantive information and consist almost entirely of objections. MGA

15   responds that the motion is moot because it is prepared to provide supplemental responses to its

16   interrogatories. MGA does not otherwise assert any additional grounds for opposing Mattel's

17   motion to compel responses to interrogatories.

18   III. DISCUSSION

19   A. Rule 26 of the Federal Rules of Civil Procedure

20   Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain

21   discovery regarding any matter, not privileged, that is relevant to the claim or defense of any

22   party." Fed.R.Civ.P. 26(b)(1). "Relevant information need not be admissible at trial if the

23   discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id.

24   Discovery shall, however, be limited by the court if it determines that: "(i) the discovery sought is

25   unreasonably cumulative or duplicative, or is obtainable from some other source that is more

26   convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

7

1   opportunity by discovery in the action to obtain the information sought; or (iii) the burden or

2   expense of the proposed discovery outweighs its likely benefit, taking into account the needs of

3   the case, the amount in controversy, the parties' resources, the importance of the issues at stake in

4   the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P.

5   26(b)(2).

6         B.  <u>Document Requests</u>

7              1.  <u>Requests re Origins of Bratz and Bryant's Work for MGA (Nos. 6, 26, 27, 32, 33,</u>

8                 <u>34, 35, 51, 53, 55, 64, 69, 96, 97, 98, 99, 100</u>

9         The requests above seek discoverable information regarding the origins of Bratz and

10  Bryant's work for MGA.  MGA represents that it has produced all responsive documents in

11  response to request nos. 6, 26, 27, 32, 33, 34, 35, and  69 (MGA's Opposition at 13:4-5), and is

12  "diligently working to produce documents in response to" request nos. 51, 53, 64, 96, 97, 98, 99,

13  and 100, including documents related to Bratz other than "first generation" (MGA's Opposition at

14  14:1-4 and note 39).  MGA does, however, object to producing design documents for unreleased

15  products and documents from MGA Hong Kong.

16        As a threshold matter, MGA's responses are inadequate to the extent MGA has restricted

17  its production to "relevant and responsive non-objectionable documents" or documents

18  "sufficient" to show when events relating to Bratz occurred.  These restrictions suggest that MGA

19  might be excluding documents that are responsive to the request based upon its unilateral

20  determination of what is "relevant" or "sufficient."  Mattel shall provide the responses to

21  document requests ordered herein without these restrictions.

22  <div align="center"><u>Design Documents for Unreleased Products</u></div>

23        MGA's design documents for unreleased products are relevant to Mattel's claims and

24  defenses and must be produced.  <u>See</u> Order Modifying Protective Order.  On April 23, 2007, the

25  parties submitted a stipulation to modify the existing protective order to limit the disclosure of

26  design documents for unreleased products that constitute trade secret information.  <u>See</u> Stipulation

27

28  Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

            8

1  to Modify Protective Order; And Proposed Order Thereon ("stipulation").  The parties' stipulation

2  has been approved and entered as an order of the court.  MGA is ordered to produce design

3  documents for unreleased products that are responsive to Mattel's document requests in

4  accordance with the terms of the stipulation and order.

5  <div align="center">Documents from MGA Hong Kong</div>

6       Documents relating to activities or conduct in foreign countries are relevant and

7  discoverable because Mattel has evidence indicating that MGA Hong Kong was involved with

8  Bratz.  Nevertheless, MGA objects to producing documents from Hong Kong unless Mattel

9  provides reciprocal discovery from its subsidiaries.

10       Whether MGA is entitled to discovery from Mattel's subsidiaries has not been briefed in

11  the context of this motion, and therefore is not addressed herein.  MGA is ordered to produce

12  documents from MGA Hong Kong.

13       Mattel's motion is granted with respect to request nos. 6, 26, 27, 32, 33, 34, 35, 51, 53, 55,

14  64, 69, 96, 97, 98, 99, 100.

15       2. <u>Additional Requests re Origins of Bratz (Nos. 7, 8, 9, 10, 11, 12, 13, 36, 46, 57, 59,</u>

16       <u>61, 63, 66, 67, 70, 88, 90, 91</u>

17       Mattel contends that MGA is improperly limiting its document production to the "first

18  generation" Bratz dolls.  MGA represents, however, that it has agreed to produce subsequent

19  generations of Bratz products (MGA's Opposition at 9:20-25, 13:6-14:1), except design

20  documents for yet unreleased products.

21       As stated previously, design documents for yet unreleased products are relevant and

22  discoverable.  <u>See</u> Order Modifying Protective Order.  Accordingly, MGA is ordered to produce

23  all non-privileged documents that are responsive to request nos. 7, 8, 9, 10, 11, 12, 13, 36, 46, 57,

24  59, 61, 63, 66, 67, 70, 88, 90, and 91.

25      //

26      //

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

9

Exhibit 43
Page 799

### 3. MGA's Payments to Bryant (Nos. 43, 45)

MGA represents that it has already agreed to produce documents related to Bratz, without limiting its production to "first generation" Bratz. MGA's motion at 13:7-14:3. Nevertheless, Mattel is entitled to an order compelling production of such documents by a date certain. Mattel's motion is granted with respect to request nos. 43 and 45.

### 4. MGA's Agreements with Bryant (Nos. 1, 2, 49, 50)

MGA represents that it has already agreed to produce non-privileged documents responsive to request nos. 1, 2, 49, and 50, even though it believes that such documents are not relevant (MGA's motion at 13:7-14:3). These requests seek documents relating to fee or indemnity agreements between MGA and Bryant .

Fee or indemnity agreements are relevant to demonstrate bias and lack of credibility. Accordingly, Mattel's motion is granted with respect to request nos. 1, 2, 49, and 50. Any responsive documents withheld on the basis of a privilege must be properly identified in a privilege log.

### 5. Declarations, Affidavits & Other Sworn Written Statements (Nos. 37, 38, 39, 40, 41,

In request nos. 37, 38, 390, 40, and 41, Mattel seeks production of declarations, affidavits, and other sworn written statements from cases that refer or relate to Bratz or Angel. Mattel anticipates that these documents could provide evidence relating to the conception date for Bratz.

Request nos. 37, 38, 39, 40, and 41 seek relevant information regarding the conception date for Bratz. MGA admits in its opposition brief that this issue was litigated in its suits against alleged counterfeiters and infringers.[3] The issue also appears to have been raised in the arbitration proceedings between MGA's chief executive officer, Isaac Larian, and his brother Farhad Larian. In those proceedings, Farhad Larian alleged that Isaac Larian concealed from him

---

[3] Although MGA questions the propriety of Mattel providing assistance to the alleged counterfeiters and infringers in raising ownership of Bratz as a defense against MGA's claims, MGA has not cited to any legal authority that prohibits Mattel's conduct.

1   that MGA was developing Bratz by early 2000.  Nevertheless, MGA objects to producing

2   documents from the Larians' arbitration on the grounds that the arbitration was governed by a

3   protective order that prohibits the use of any documents or testimony for any purpose other than

4   the arbitration.  MGA, however, has not provided any evidence of the protective order.

5   Accordingly, Mattel's motion to compel is granted as to request nos. 37, 38, 39, 40 and 41.[4]

6           6. Documents Regarding Date-Testing (Request No. 92)

7       Mattel's request no. 92 seeks documents that refer or relate to "any testing of or sampling

8   from any documents that refer or relate to Bratz or Bryant, including without limitation any such

9   testing or sampling in connection with ink, paper or chemical analysis to date any such documents

10  and including without limitation all results and reports relating thereto."  MGA contends that the

11  request is premature, and should proceed in the course of expert discovery.

12      The request calls for relevant discovery and there is no basis for delaying production of

13  responsive documents, other than expert reports.  The timing of expert reports is governed by

14  Rule 26(a)(2)(C), Fed.R.Civ.P.  Accordingly, Mattel's motion is granted as to request no. 92.

15          C. Interrogatories

16      Mattel contends that MGA's responses to interrogatories were untimely, and therefore

17  MGA has waived its objections to the interrogatories.  Pursuant to Rule 33(b)(3), Fed.R.Civ.P.,

18  responses to interrogatories are due thirty days after service.  In this case, Mattel served its

19  interrogatories on April 28, 2005, and responses were initially due May 31, 2005.  The district

20  court, however, issued a stay on May 20, 2005, twenty-two days after the interrogatories were

21  served.  The district court lifted the stay on May 17, 2006.

22

23

24

25

26  [4]  In its discussion of the arbitration proceedings, MGA raises an objection to producing Isaac Larian's personnel file based upon privacy grounds.  The personnel file may have documents relevant to Bratz, and therefore should be produced.  The protective order is sufficient to alleviate Mr. Isaac Larian's privacy concerns.

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

11

Exhibit 43
Page 801

1       Neither party has cited to any caselaw governing the calculation of the 30-day period

2 when there is an intervening stay in discovery.  In the absence of any caselaw, MGA's responses

3 will be treated as timely in order to preserve any valid objections MGA may have asserted.

4       Interrogatory No. 5 seeks the identity of each and every person who was involved in the

5 conception, origin, creation, design, development, sculpting, engineering, reduction to practice,

6 tooling or painting of, or who otherwise produced or contributed to any embodiment of Bratz

7 before December 31, 2001, including a description of each person's role and the start and end

8 dates of each person's involvement.  In response, MGA asserted numerous objections, but did

9 provide the names of five individuals.

10       The interrogatory clearly seeks information relevant to the claims at issue.  MGA's

11 objections are without merit.  The interrogatory is not vague, ambiguous, compound or overbroad.

12 Nor has MGA carried its burden of establishing that the interrogatory is unduly burdensome, calls

13 for confidential, proprietary or commercially sensitive information, or seeks information

14 protected by the attorney-client privilege.  Furthermore, MGA's response is incomplete insofar as

15 it fails to provide the description of each person's role and the start and end dates of each person's

16 involvement.  Accordingly, MGA is ordered to provide a complete response to Interrogatory No.

17 5 and identify documents in compliance with Rule 33(d), Fed.R.Civ.P.

18       Interrogatory No. 6 seeks the same information as Interrogatory No. 5 with respect to any

19 embodiment of Angel.  MGA is ordered to provide a complete response to Interrogatory No. 6 for

20 the reasons previously discussed in connection with Interrogatory No. 5.

21       Interrogatory No. 7 asks MGA to identify each and every embodiment of Bratz prior to

22 December 31, 2001.  In response, MGA asserted numerous objections and did not provide any

23 substantive information.

24       MGA's objections are without merit.  The interrogatory clearly seeks information relevant

25 to establishing when Bryant first conceived Bratz.  The interrogatory is not vague, ambiguous,

26 compound or overbroad.  Nor has MGA carried its burden of establishing that the interrogatory is

27

28
Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

Exhibit 43
Page 802

1  unduly burdensome, calls for confidential, proprietary or commercially sensitive information, or

2  seeks information protected by the attorney-client privilege. Accordingly, MG is ordered to

3  provide a complete response to Interrogatory No. 7.

4      Interrogatory No.8 asks MGA to identify each and every embodiment of Angel. MGA is

5  ordered to provide a complete response to Interrogatory No. 8 for the reasons previously

6  discussed in connection with Interrogatory No. 7.

7      Interrogatory No. 9 requires MGA to identify each and every sworn statement that refers

8  or relates to the conception, origin, creation, design, development, sculpting, engineering, tooling

9  or painting of Bratz. In response, MGA asserted numerous objections and did not provide any

10  substantive information.

11      The interrogatory seeks information relevant to establishing when Bryant first conceived

12  Bratz. Furthermore, MGA's boiler-plate objections are unsubstantiated. Accordingly, MGA is

13  ordered to provide a complete response to Interrogatory No. 9.

14      Interrogatory No. 10 requires MGA to identify each and every instance in which Bratz

15  was shown, displayed, or exhibited prior to June 1, 2001, including by stating the date(s) on

16  which each such instance occurred, the location of each show or exhibit, and the identity of

17  persons with knowledge of the shows or exhibits. In response, MGA asserted numerous

18  objections and provided the following information: Hong Kong Toy Fair in Hong Kong in or

19  about January 2001 and New York Toy Fair, New York, in or about February 2001.

20      Once again, MGA's boiler-plate objections are unsubstantiated. The information is

21  potentially relevant to establish when Bryant conceived Bratz. Further, the response is

22  incomplete insofar as it fails to identify any persons with knowledge. Therefore, MGA is ordered

23  to provide a complete response to Interrogatory No. 10.

24      Interrogatory No. 11 requires MGA to state the "number for each and every telephone,

25  including without limitation each office, home and cell phone number, in the name of, for the

26  benefit of or for the account of Isaac Larian and any other telephone that Isaac Larian used from

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

13

Exhibit 43
Page 803

1    January 1, 1998 through the present, and IDENTIFY each and every carrier (including without

2    limitation any long-distance carrier) for each such number. In response, MGA asserted numerous

3    boiler-plate objections.

4        Once again, MGA has failed to substantiate any of its objections with supporting

5    declarations or legal authorities. Accordingly, all objections are overruled and MGA is ordered to

6    provide a full response to Interrogatory No. 11.

7                         IV. CONCLUSION

8        For the reasons set forth above, Mattel's motion to compel production of documents is

9    granted. MGA shall produce all non-privileged documents that are responsive to the requests

10    identified in this Order. Further, MGA shall produce all documents in un-redacted form, except

11    for redactions that are justified by the attorney-client privilege or work product doctrine. Mattel's

12    motion to compel interrogatory answers is also granted. MGA shall produce documents and

13    provide responses to interrogatories consistent with this Order, and produce a privilege log in

14    compliance with Rule 26(b)(5), Fed.R.Civ.P., no later than May 31, 2007. Mattel's request for

15    sanctions is denied.

16        Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

17    Master, Mattel shall file this Order with the Clerk of Court forthwith.

21    Dated: May /5, 2007

                                     HON. EDWARD A. INFANTE (Ret.)
                                     Discovery Master

## PROOF OF SERVICE BY E-MAIL

I, Anthony Sales, not a party to the within action, hereby declare that on May 15, 2007, I served the attached ORDER GRANTING MATTEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND INTERROGATORY RESPONSES BY MGA in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| Robert Millman Esq. | Littler Mendelson | rfmillman@littler.com |
| Douglas Wickham Esq. | Littler Mendelson | dwickham@littler.com |
| Keith Jacoby Esq. | Littler Mendelson | kjacoby@littler.com |
| Dominic Messiha Esq | Littler Mendelson | dmessiha@littler.com |
| Diba Rastegar Esq. | Littler Mendelson | drastegar@littler.com |
| Michelle Park Esq. | Littler Mendelson | mpark@littler.com |
| Alaya B. Meyers, Esq. | Littler Mendelson | ameyers@littler.com |
| Brady Mitchell, Esq. | Littler Mendelson | bmitchell@littler.com |
| Carol Miller, Esq. | Littler Mendelson | cmiller@littler.com |
| Ryan P. Eskin, Esq. | Littler Mendelson | reskin@littler.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | jbq@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Morris Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgetmorris@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on May 15, 2007, at San Francisco, California.

Anthony Sales

Exhibit 43
Page 805

EXHIBIT 44

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

EXHIBIT 45

THIS EXHIBIT IS FILED UNDER SEAL

PURSUANT TO PROTECTIVE ORDER

EXHIBIT 46

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

EXHIBIT 47

1

1        UNITED STATES DISTRICT COURT

2       CENTRAL DISTRICT OF CALIFORNIA

3            EASTERN DIVISION

4                 - - -

5   HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6                 - - -

7   CARTER BRYANT, INDIV,                )
                                         )
8                      PLAINTIFF,        )
                                         )
9             VS.                        )   NO. ED CV 04-09049
                                         )   (LEAD LOW NUMBER)
10   MATTEL, INC.,                       )
                                         )
11                     DEFENDANTS.       )
    _____   )
12   AND RELATED ACTIONS,               )
    _____   )
13

**CERTIFIED COPY**

14

15        REPORTER'S TRANSCRIPT OF PROCEEDINGS

16            RIVERSIDE, CALIFORNIA

17           MONDAY, JANUARY 8, 2007

18                10:26 A.M.

19

20

21

22

23          THERESA A. LANZA, RPR, CSR
        FEDERAL OFFICIAL COURT REPORTER
24          3470 12TH STREET, RM. 134
         RIVERSIDE, CALIFORNIA  92501
25             (951) 274-0844
          CSR11457@SBCGLOBAL.NET

Exhibit 47
Page 877

2

1    APPEARANCES:

2

3    ON BEHALF OF PLAINTIFF/COUNTER DEFENDANT MATTEL, INC.:

4

5                    QUINN EMANUEL
                     BY:  JOHN B. QUINN
                     BY:  MICHAEL T. ZELLER
6                    865 S. FIGUEROA STREET,
                     10TH FLOOR
7                    LOS ANGELES, CALIFORNIA  90017
                     (213) 624-7707
8

9

10   ON BEHALF OF PLAINTIFF/COUNTER COMPLAINANT/DEFENDANT,
     CARTER BRYANT:

11
                     LITTLER MENDELSON
12                   BY:  KEITH A. JACOBY
                     2049 CENTURY PARK EAST,
13                   FIFTH FLOOR
                     LOS ANGELES, CALIFORNIA  90067
14                   (310) 553-0308

15

16   ON BEHALF OF MGA ENTERTAINMENT:

17                   O'MELVENY & MYERS LLP
                     BY:  DALE CENDALI
18                   BY:  DIANA M. TORRES
                     400 SOUTH HOPE STREET
19                   LOS ANGELES, CALIFORNIA  90071-2899
                     (213) 430-6000

20

21

22

23

24

25

Exhibit 47
Page 878

3

1    RIVERSIDE, CALIFORNIA; MONDAY, JANUARY 8, 2007; 10:26 A.M.

2                           -oOo-

3         THE CLERK:  CALLING CALENDAR ITEM NUMBER 6, IN THE

4    MATTER OF PLAINTIFF CARTER BRYANT VERSUS DEFENDANT MATTEL,

5    INC., CASE NUMBER 04-9049.                                      10:25

6         MAY WE HAVE COUNSEL PLEASE STATE YOUR APPEARANCES.

7         MR. QUINN:  GOOD MORNING, YOUR HONOR.

8         JOHN QUINN AND MIKE ZELLER APPEARING FOR PLAINTIFF

9    MATTEL.

10        THE COURT:  MR. QUINN, GOOD MORNING.                       10:26

11        MS. CENDALI:  GOOD MORNING, YOUR HONOR.

12        DALE CENDALI FROM O'MELVENY & MYERS REPRESENTING MGA

13   AND ISAAC LARIAN.  WITH ME IS MY COLLEAGUE DIANA TORRES.

14        THE COURT:  GOOD MORNING.

15        MR. JACOBY:  GOOD MORNING, YOUR HONOR.                     10:26

16        KEITH JACOBY REPRESENTING CARTER BRYANT.

17        THE COURT:  GOOD MORNING.

18        WE'RE ON CALENDAR FOR MATTEL'S MOTION FOR LEAVE TO

19   AMEND THE COMPLAINT IN THE -9059 MATTER, WHICH WAS THE FIRST OF

20   THE TWO MATTERS FILED HERE.                                     10:26

21        THE COURT HAS REVIEWED ALL OF THE PAPERS AND

22   SUBMISSIONS.

23        MR. QUINN, I GUESS THE PRIMARY ISSUE I'D LIKE TO

24   ADDRESS IS THE ISSUE THAT YOU RAISE ABOUT THE FACT THAT WE

25   DON'T HAVE A SCHEDULING ORDER IN THIS CASE.  AND THAT NEEDS TO  10:26

Exhibit 47
Page 879

7

1    THAT.

2          BUT HE CREATED THESE DRAWINGS.  HE HAD A CONTRACT

3    THAT SAID THAT ANY SUCH DESIGNS YOU CREATE, WE OWN.  YOUR

4    HONOR, OUR POSITION IS THAT THE BRATZ DRAWINGS, THE

5    THREE-DIMENSIONAL BRATZ PRODUCT, IS A WORK THAT IS DERIVATIVE      10:3:

6    OF THOSE DRAWINGS WHICH WE OWN.

7          THE COURT:  SO IT'S ALSO INTERTWINED WITH THIS ISSUE

8    OF THE OWNERSHIP OF BRATZ?

9          MR. QUINN:  IT'S PART OF THE OWNERSHIP OF BRATZ, TO

10   BE SURE.                                                          10:3.

11         BUT ALSO WHAT WE FOUND -- AND A LOT OF THIS RELATES

12   TO EVENTS --

13         THE COURT:  AND WOULDN'T, THEN, IF THE FIRST PHASE,

14   AS I DESCRIBE IT, AS A BIFURCATED TRIAL, ESTABLISHED OWNERSHIP

15   OF BRATZ IN MGA, WOULDN'T THAT UNDERMINE OR RESOLVE THE           10:3

16   COPYRIGHT ISSUES AS WELL?

17         MR. QUINN:  IF THE COURT FOUND THAT THEY WERE -- IF

18   IT WERE DETERMINED THAT HE DID NOT CREATE THESE DRAWINGS WHILE

19   HE WORKED AT MATTEL, THAT MATTEL HAD NO CLAIM TO OWNERSHIP OF

20   THE DRAWINGS, THEN IT WOULD BE HARD FOR ME TO SEE HOW A           10:3

21   COPYRIGHT CLAIM COULD BE PURSUED.

22         THE COURT:  AND CONVERSELY, IF THE COURT WERE TO

23   FIND -- IF WE ULTIMATELY FOUND THAT THEY WERE MATTEL'S, THAT

24   WOULD -- IF NOT RESOLVE, IT WOULD GO A LONG WAY IN RESOLVING

25   THE COPYRIGHT CLAIM AS WELL.                                      10:3

Exhibit 47
Page 880

8

1          MR. QUINN:  I THINK IT WOULD.  THAT WOULD OBVIOUSLY

2   BE A KEY ELEMENT OF THE COPYRIGHT CLAIM.

3          THE COURT:  AGAIN, DOESN'T THIS SUGGEST HOLDING OFF

4   ON THE COPYRIGHT AND PUTTING THAT IN THAT -2727 CASE?

5          MR. QUINN:  I THINK THAT WOULD BE VERY DIFFICULT TO          10:32

6   DO, YOUR HONOR.

7          THE COURT:  WHY IS THAT?

8          MR. QUINN:  BECAUSE IT RELATES TO ISSUES THAT ARE

9   ISSUES IN THE CASE -- I MEAN, THE OWNERSHIP OF BRATZ HAS GOT TO

10  BE DETERMINED; WHEN HE CREATED THAT; WHETHER IT'S A DERIVATIVE          10:32

11  WORK.  THOSE ARE COPYRIGHTS.  THOSE WILL BE GOVERNED BY ISSUES

12  OF COPYRIGHT LAW.  AND IN THE ABSTRACT, DECIDING WHO OWNS

13  BRATZ, FIRST YOU HAVE TO DECIDE, WELL, WHAT'S BRATZ?  ARE WE

14  TALKING ABOUT THESE DRAWINGS, OR ARE WE TALKING ABOUT THE LATER

15  THREE-DIMENSIONAL EMBODIMENT WHICH IS ULTIMATELY SOLD TO THE          10:33

16  PUBLIC AS THE DOLL?

17          I DON'T SEE HOW THAT ISSUE CAN BE BIFURCATED.

18          BUT I GUESS ANOTHER ISSUE, AND PERHAPS A MORE

19  IMPORTANT ISSUE, YOUR HONOR, IS THAT SINCE THE ORIGINAL

20  COMPLAINT WAS FILED, WE HAVE FOUND -- AND THERE HAVE BEEN A          10:33

21  SERIES OF EVENTS THAT ARE SET FORTH IN THE COMPLAINT -- THAT

22  THE WHOLE EPISODE WITH RESPECT TO MR. BRYANT AND THE ORIGINAL

23  CREATION OF BRATZ WAS JUST ONE OF A SERIES OF EVENTS WHICH HAVE

24  HAPPENED.  THE ALLEGATIONS RELATING TO THE EVENTS IN MEXICO,

25  WHERE THERE WAS A WHOLESALE THEFT OF VIRTUALLY ALL OF MATTEL'S          10:34

Exhibit 47
Page 881

1-8-07          ED CV 04-09049

1  INTELLECTUAL PROPERTY THAT WAS THERE, AND THE INFORMATION COMES
2  BACK TO THE UNITED STATES; THE SITUATION IN CANADA, WHERE AN
3  EMPLOYEE LEFT AND TOOK A THUMB DRIVE AND HAD ALL OF THAT
4  INFORMATION WITH HER; THE SITUATION OF MR. BRAUR, WHO TOOK WITH
5  HIM ALL OF -- VARIOUS TRADE SECRET INFORMATION, CERTAIN CONTACT
6  -- SENSITIVE CONTACT INFORMATION RELATING TO CUSTOMERS.  ALL OF
7  THAT, YOUR HONOR, IS A PATTERN OF RACKETEERING ACTIVITY.  IT'S
8  A RICO CLAIM.  AND THAT HAS TO BE ADDRESSED IN ONE PROCEEDING.
9          THERE'S A SUGGESTION IN THE OPPOSITION TO THE MOTION
10  BY MR. BRYANT THAT REALLY THIS IS UNFAIR TO HIM, FOR HIS CASE
11  TO BE PRESENTED AS PART OF THIS LARGER PATTERN OF EVENTS.
12          I THINK THE ANSWER TO THAT IS, IF THERE IS A RICO
13  CLAIM, IF THERE IS A PATTERN OF RACKETEERING ACTIVITY, IT'S NOT
14  AN ANSWER FOR ANY ONE PARTICIPANT IN THE ENTERPRISE TO SAY, I'M
15  PREJUDICED FOR THIS CASE AND MY CASE TO BE PRESENTED AS PART OF
16  THIS LARGER ENTERPRISE.  THAT'S SORT OF IN THE NATURE OF A RICO
17  CLAIM.  YOU CAN'T BIFURCATE IT.
18          THE COURT:  I UNDERSTAND.  AND I UNDERSTAND THAT
19  THESE ISSUES NEED TO BE PRESENTED AND LITIGATED.  I GUESS I'M
20  TRYING TO -- WHAT I WANT TO SEGUE INTO ULTIMATELY IS A SENSIBLE
21  SCHEDULING OF THESE MATTERS.  I DON'T WANT THESE CASES --
22  THEY'VE GONE ON FOR QUITE SOME TIME NOW, AND I KNOW THE COURT
23  HAS APPROVED A SPECIAL MASTER FOR DISCOVERY.  I HAVE A REAL
24  FEAR THAT THIS CASE IS GOING TO DRAG ON LONGER THAN IT SHOULD,
25  AND I'M TRYING TO PUT A CAP ON IT WHILE, AT THE SAME TIME,

Exhibit 47
Page 882

10

```
 1   CERTAINLY GIVE YOU AN OPPORTUNITY TO LITIGATE ANY ISSUES THAT
 2   YOU NEED TO LITIGATE.
 3            SO YOU SUGGEST THAT WE BRING THE COPYRIGHT CLAIM IN
 4   THE FIRST?
 5            MR. QUINN:  IT'S VERY HARD FOR ME TO SEE HOW THAT          10:3
 6   GETS BIFURCATED OUT.
 7            THE COURT:  HOW DO YOU PROPOSE, THEN -- EXPLAIN TO ME
 8   YOUR THEORY OF HOW THESE TWO CASES SHOULD BE LITIGATED.
 9            MR. QUINN:  LITIGATED OR TRIED?
10            THE COURT:  TRIED.                                        10:3
11            MR. QUINN:  BECAUSE WE DISCUSSED THIS ISSUE A LITTLE
12   BIT EARLIER --
13            THE COURT:  RIGHT.
14            MR. QUINN:  -- AND THE COURT SUGGESTED WE CAN DEFER
15   THAT TO ANOTHER DAY.                                              10:3
16            THE COURT:  AND MAYBE THAT DAY HAS ARRIVED.
17            MR. QUINN:  YOUR HONOR, ONE THING I'LL SAY IN
18   RESPONSE IS, THE COURT KNOWS THIS CASE WAS STAYED FOR A LITTLE
19   OVER A YEAR WHILE IT WAS UP IN THE NINTH CIRCUIT, AND IT'S BEEN
20   BACK AND DISCOVERY HAS BEEN PROCEEDING, IN SOMEWHAT FITS AND      10:3
21   STARTS.  THERE HAVE BEEN SOME PROBLEMS.
22            JUST, FOR EXAMPLE, THIS LAST WEEKEND, WE GOT INITIAL
23   DISCLOSURES, RULE 26 INITIAL DISCLOSURES, FROM MGA, AND WE
24   EXCHANGED THOSE DISCLOSURES.  SO IN SOME WAYS, IT'S AT AN EARLY
25   STAGE.                                                            10:3
```

Exhibit 47
Page 883

30

1

2

3                                CERTIFICATE

4

5    I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED
     STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF
6    THE STENOGRAPHICALLY RECORDED PROCEEDINGS HELD IN THE
     ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN
7    CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF
     THE UNITED STATES.

8

9

10   THERESA A. LANZA, RPR, CSR                    7-9-07
     OFFICIAL COURT REPORTER                        DATE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Exhibit 47
Page 884

EXHIBIT 48

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 090378)
2    (johnquinn@quinnemanuel.com)
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
6  Facsimile: (213) 443-3100

7  Attorneys for Mattel, Inc.

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                   EASTERN DIVISION

| | |
|---|---|
| 11  CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| 12            Plaintiff, | Consolidated with Case Nos. CV 04-09059 & CV 05-2727 |
| 13        vs. | Hon. Stephen G. Larson |
| 14  MATTEL, INC., a Delaware corporation, | MEMORANDUM OF MATTEL, INC. REGARDING ENTRY OF JUDGMENT PURSUANT TO RULE 54(B) AND PHASE 1 |
| 15            Defendant. | |
| 16 | |
| 17  AND CONSOLIDATED ACTIONS | [Declaration of Scott B. Kidman filed concurrently] |
| 18 | Hearing Date:     TBD |
| 19 | Time:     TBD<br>Place:     TBD |
| 20 | Phase 2: |
| 21 | Discovery Cut-off:     Not set<br>Pre-trial Conference:     Not set |
| 22 | Trial Date:     Not set |

23

24

25

26

27

28

1         At the February 11, 2009 hearing, the Court requested the parties to
2 submit their respective positions on: (1) whether the Court should enter judgment
3 under <u>Rule</u> 54(b); and (2) whether the Court's injunctive orders, as finalized after
4 decision of pending motions, could be considered "final" for purposes of appeal, and
5 enforceable, subject to any appropriate stay or modification, in the absence of a
6 <u>Rule</u> 54(b) judgment.[1]  Accordingly, Mattel submits the following memorandum.
7 As stated at argument, Mattel believes that it would not be appropriate for the Court
8 to enter <u>Rule</u> 54(b) judgment because of the substantial overlap between the issues
9 and claims in Phase 1 and Phase 2.  Controlling authority also leaves no doubt that
10 the Court's injunctive orders, once finalized upon resolution of the pending motions,
11 are appealable and enforceable without regard to whether judgment is entered under
12 Rule 54(b).

13                    **<u>Discussion</u>**

14         Certification under <u>Rule</u> 54(b) is an extraordinary measure that is not to
15 be granted as a matter of course.  <u>Curtiss-Wright Corp. v. General Electric Co.</u>, 446
16 U.S. 1, 5 (1980).  "Judgments under Rule 54(b) must be reserved for the unusual
17 case in which the costs and risks of multiplying the number of proceedings and of
18 overcrowding the appellate docket are outbalanced by pressing needs of the litigants
19 for an early and separate judgment as to some claims or parties."  <u>Morrison-</u>
20 <u>Knudsen Co., Inc. v. J.D. Archer</u>, 655 F.2d 962, 965 (9th Cir. 1981).  "A similarity
21 of legal or factual issues will weigh heavily against entry of judgment, and in such
22 cases a Rule 54(b) order will be proper only where necessary to avoid a harsh and
23 unjust result[.]"  <u>Id.</u>  In this case, there is a clear factual and legal overlap between
24 the adjudicated and pending claims, and any pressing need of the litigants for

---

[1]  February 11, 2009 Hearing Tr. at 89:6-12, attached as Exhibit 1 to the concurrently filed Declaration of Scott B. Kidman ("Kidman Dec.").

Exhibit 48
Page 886

07209/2794519.2

MATTEL, INC.'S SUBMISSION RE RULE 54(B)

Case 2:04-cv-09049-DOC-RNB  Document 6410-7  Filed 08/24/09  Page 87 of 106  Page ID
#:213884
Case 2:04-cv-09049-SGL-RNB     Document 4835     Filed 02/13/2009     Page 3 of 10

1  resolution is fully met by the appealability and enforceability of the Court's

2  injunctive orders, once they are finalized.

3  **I.     RULE 54(b) JUDGMENT IS NOT APPROPRIATE BECAUSE OF THE**

4  **OVERLAP BETWEEN PHASE 1 AND PHASE 2**

5          Rule 54(b) authorizes the Court to "direct entry of a final judgment as

6  to one or more but fewer than all of the claims or parties" where the adjudicated

7  claims are fully resolved and failure to enter judgment would cause an unjust result.

8  See Fed.R.Civ.P. 54(b).  Specifically, Rule 54(b) provides that:

9          When an action presents more than one claim for relief . . .
          or when multiple parties are involved, the court may direct
10         entry of a final judgment as to one or more, but fewer than
          all, claims or parties only if the court expressly determines
11         that there is no just reason for delay.  Otherwise, any order
          or other decision...that adjudicates fewer than all the
12         claims or the rights and liabilities of fewer than all the
          parties does not end the action as to any of the claims or
13         parties and may be revised at any time before the entry of
14         a judgment adjudicating all the claims and all the parties'
          rights and liabilities.
15

16

17          Where adjudicated and pending claims are "logically related, both

18  from a factual and legal standpoint . . . it is not proper to direct entry of a separate

19  judgment pursuant to Rule 54(b)." Morrison-Knudsen Co., Inc. v. Archer, 655 F.2d

20  at 965.   See Wood v. GCC Bend, LLC, 422 F.3d 873, 878 n.2 (9th Cir. 2005)

21  (standard for judgment under Rule 54(b) includes "whether the claims finally

22  adjudicated were separate, distinct, and independent of any other claims"); see also

23  Curtis-Wright Corp. v. General Elec. Co, 446 U.S. at 8 (Rule 54(b) factors include

24  "whether the claims under review were separable from the others remaining to be

25  adjudicated and whether the nature of the claims already determined was such that

26  no appellate court would have to decide the same issues more than once even if

27  there were subsequent appeals."); In re Real Estate Associates Ltd. Partnership

28  Litigation, 2002 WL 31995687, at *2 (C.D. Cal. Dec. 6, 2002) (judgment under

Exhibit 48
Page 887

-2-

1    <u>Rule</u> 54(b) not proper because "the facts and circumstances of th[e] case are

2    exceedingly complex[,]" and "[t]o separate the litigation into pieces and send each

3    one separately to the Ninth Circuit would result in a waste of judicial resources").

4        **A.**    **<u>Rule 54(b) Judgment Is Impermissible Because There Is</u>**

5            **<u>Substantial Overlap Between Phase 1 and Phase 2</u>**

6        As Mattel's has stated from the outset, there is overlap between Phase 1

7    and Phase 2. Indeed, it was for this reason that Mattel had opposed bifurcation.[2]

8    The overlap between Phase 1 and Phase 2 is particularly clear with respect to

9    Mattel's RICO claims, as several of the alleged predicate acts are based on the

10    wrongdoing at issue in Phase 1. For example, Mattel alleges that:

11        •    MGA, Larian and Bryant engaged in witness/evidence tampering,

12            including:

13            -   "[A]ltering Bryant's contract with MGA relating to Bratz to

14               conceal evidence that Bryant faxed the contract from the

15               BARBIE COLLECTIBLES department of Mattel, using a fax

16               machine owned by Mattel and while Bryant was employed by

           Mattel,"

17            -   "[A]ltering numerous original Bratz drawings created by Bryant

18               by adding false and misleading date notations of '8/1998' and

19               '©8/1998' to the drawings even though the drawings were not

           created in August 1998"; and

20

21

22

---

23       [2]   Transcript of January 8, 2007 Hearing Re Mattel's Motion for Leave to

24    Amend Complaint ("1/8/07 Hr. Tr.") at 8:18-9:17 (Counsel for Mattel argued that

25    Mattel's claims regarding MGA's and Bryant's theft of Bratz from Mattel should not

be bifurcated from its claims regarding MGA's theft of other Mattel trade secrets,

26    including the theft in Mexico and Canada, because each of these acts evidences a

27    pattern of racketeering activity and thus relate to Mattel's RICO claims), Kidman

Dec., Exh. 2.

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- "[D]estroying electronic and other evidence, including by destroying evidence previously contained on Carter Bryant's and Isaac Larian's computer hard drives;"[3] and

• MGA, Larian and Bryant willfully infringed Mattel's copyrights for purposes of commercial advantage and financial gain.[4]

Furthermore, while the jury found in Phase 1B that MGA's infringement was not willful up to that point in time and based on the evidence it had before it, Mattel has the right and intends to assert in Phase 2 that MGA's ongoing post-verdict infringement -- even after the jury found it liable for copyright infringement -- shows willfulness and are among its RICO predicate acts of criminal copyright infringement.

Moreover, one RICO enterprise explicitly alleged in Mattel's operative pleadings is denominated the "Bryant Group," some of the conduct of which was at issue in Phase 1.[5] Mattel specifically invoked the link between Bryant/Bratz and its RICO claims during the proceedings on phasing:

> Mattel alleges that all counter-defendants, including Bryant, engaged in and continue to engage in a pattern of predicate acts, including mail and wire fraud, witness tampering, travel act violations and criminal copyright infringement in violation of the RICO statute. Alleged misconduct includes fraudulent communications in furtherance of a scheme to defraud Mattel of its rightful property that includes not only Bratz, but other misappropriated trade secrets and proprietary information, of Bryant's illegal acceptance of payments from MGA, a Mattel competitor while a Mattel employee, and engaging

---

[3]   Mattel, Inc.'s Second Amended Answer in Case No. 05-2727 Counterclaims, dated July 12, 2007 at ¶¶ 93(c)(i)-(iii), Kidman Dec., Exh. 3.

[4]   Id. at ¶ 93(e).

[5]   See id. ¶¶ 99-100.

Exhibit 48
Page 889

1     in criminal copyright infringement of Bratz and
2     misappropriated trade secret and proprietary information.[6]

3          Overlap also exists with respect to Mattel's misappropriation of trade

4 secrets claim.   Mattel is pursuing in Phase 2 a misappropriation of trade secrets

5 claim against MGA based in part on the theft of the Bratz designs.   This clearly

6 overlaps with Phase 1 issues.   Indeed, the Court itself recognized the overlap in

7 granting Mattel leave to amend.[7]

8          Conversely, there is overlap between Mattel's Phase 1 claims and

9 MGA's pending Phase 2 claims.   In particular, MGA alleges Phase 2 claims based

10 on its alleged trade dress and other rights to Bratz.   Phase 1 determinations that

11 Mattel, and not MGA, owns the rights to Bratz obviate those Phase 2 claims.   As the

12 Court also recognized on Mattel's motion for leave to amend, Phase 1 and Phase 2

13 overlap in these respects as well.[8]

14          In cases involving similar overlap, courts have declined to enter

15 judgment under Rule 54(b), even in the face of requests by a party claiming

16

17    [6] Mattel's Motion to Try Claims Related to Bratz Ownership in Phase One, dated
18 May 8, 2007, at 19:1-9, Kidman Dec., Exh. 4.

19    [7] See Order Regarding Mattel's Motion for Leave to Amend, dated January 11,
2007 at 21:12-16, Kidman Dec., Exh. 5 ("[I]f Mattel does not own rights to Bratz,
20 then some of the defenses and counterclaims set forth as independent claims…may
become moot, including…portions of [Mattel's] remaining RICO [and]
21 misappropriation…claims."); see also id. at 21:22-26 (noting that "upon further
22 questioning by the Court, counsel for Mattel acknowledged that much of [Mattel's
copyright and RICO] claims were, like the claims at issue in [Case No.] 05-2727,
23 dependent upon resolution of the ownership issue.").

24    [8] Id. at 3:7-13 ("[E]ven though the allegations in 05-2727 concern Mattel's
25 alleged efforts at defeating the marketing of BRATZ dolls, resolution of who owned
the rights to the BRATZ dolls could serve to moot many of those allegations.   It is
26 hard to imagine how it is unlawful for a company to thwart or otherwise undermine
the marketing of a product it owns.   Thus, if Mattel owned the rights to BRATZ
27 dolls, many of the allegations in the 05-2727 complaint would become moot.").

28

Exhibit 48
Page 890

1   hardship in the absence of such an order.  See, e.g., Bruce v. Martin, 702 F. Supp.

2   66, 69 (S.D.N.Y. 1988) (entry of judgment for plaintiff's RICO claim under Rule

3   54(b) not proper because the RICO claim and remaining securities claims are

4   "closely related and based upon the same facts and transactions"); Albright v.

5   Attorney's Title Ins. Fund, 2008 WL 376251, at *2 (D. Utah Feb. 11, 2008)

6   (declining to certify judgment pursuant to Rule 54(b) because the remaining

7   "contract, statutory and tort claims" are based on "the same facts that gave rise to the

8   predicate acts of the now dismissed RICO ... claims").  In Albright, the court found

9   that the claims were "inseparable" because plaintiffs would "essentially have to

10  prove the same set of facts."  Id.  While Mattel's RICO claims are broader than just

11  the Bryant- and Bratz-related facts and issues, those facts and issues are nonetheless

12  an integral part of the RICO claims.  Entry of Rule 54(b) judgment would therefore

13  be impermissible.

14       **B.    The MGA Parties Will Not Face A Harsh Or Unjust Result Absent**

15            **A Rule 54(b) Judgment**

16            In this case, there has been no showing, by either party, of the sort of

17  "pressing needs" for an early and separate judgment necessary to support an

18  exception from the usual rules as to finality.  The failure of either party to seek such

19  certification is itself powerful evidence that neither would face a "harsh and unjust

20  result" in its absence.  See Cherokee Nation of Oklahoma v. U.S., 23 Cl. Ct. 735,

21  739 (Cl. Ct. 1991) (plaintiff failed to make requisite showing of "no just reason for

22  delay" because it filed its Rule 54(b) motion over eight months after the court made

23  its decision for which plaintiff seeks final judgment, demonstrating that there was no

24  urgent need for immediate appeal of adjudicated claims); Schaefer v. First National

25  Bank of Lincolnwood, 465 F.2d 234, 235-36 (7th Cir. 1972) (finding that "the lack

26  of diligence on the part of the plaintiffs in seeking the Rule 54(b) order ... is

27  sufficient, without more, to warrant our dismissal of the present appeal[,]" where

28  plaintiffs waited nearly three months to seek Rule 54(b) certification).  In fact, as

1  both parties clearly have recognized, the Court's injunctive orders, once finalized
2  upon decision of the pending motions, are separately appealable and enforceable,
3  thus obviating any "pressing need" for piecemeal appellate review of the case as a
4  whole through a <u>Rule</u> 54(b) judgment.[9]

5  **II.    THE COURT'S FINAL INJUNCTION ORDERS WILL BE**
6  **APPEALABLE AND ENFORCEABLE WITHOUT A RULE 54(b)**
7  **JUDGMENT**

8              An appeal from the Court's final injunction orders does not require
9  entry of a judgment under <u>Rule</u> 54(b).  <u>See</u> <u>Hoonah Indian Ass'n v. Morrison</u>, 170
10  F.3d 1223, 1225 (9th Cir. 1999) (court had jurisdiction to review interlocutory
11  appeal of denial of permanent injunction under 28 U.S.C. § 1292(a)(1) absent <u>Rule</u>
12  54(b) certification); <u>Simmons v. Block</u>, 782 F.2d 1545, 1549 (11th Cir. 1986)
13  (appeal could be taken under § 1292(b)(1) from entry of permanent injunction
14  although other claims remained pending and final judgment had not been entered
15  under <u>Rule</u> 54(b) because "[t]he appealability of an injunction under 28 U.S.C. §
16  1292(a)(1) is not affected by Fed. R. Civ. P. 54(b)"); <u>Gray Line Motor Tours, Inc. v.</u>
17  <u>City of New Orleans</u>, 498 F.2d 293, 295 (5th Cir. 1974) ("appellant need not obtain
18  a certification under 54(b) if the order entered by the district court falls under
19  section 1292(a)(1)" because injunctive orders "are considered to be outside the
20  scope of Rule 54(b)"); <u>Ransburg Electro-Coating Corp. v. Lansdale Finishers, Inc.</u>,
21  484 F.2d 1037, 1038 (3rd. Cir. 1973) (appeal of injunction proper even though there
22  was no final judgment as to all parties because <u>Rule</u> 54(b) "does not affect" the
23  appealability of orders granting injunctions under Section 1292(a)(1)); 16 Wright

24

25     [9]   Indeed, MGA erroneously attempted to appeal those orders even before they
26  were final.  <u>See</u> Notice of Appeal to the United States Court of Appeals for the
   Ninth Circuit, dated December 11, 2008 (Docket No. 4459), Kidman Dec., Exh. 6;
27     (footnote continued)

28

1   and Miller, <u>Federal Practice and Procedure</u>, § 3921 (2nd ed. 1996) ("The provisions

2   of Rule 54(b), governing the finality of orders that finally dispose of less than all the

3   claims as to all of the parties in multiclaim or multiparty litigation, do not limit

4   appeals under § 1292(a)(1), even as to orders granting or denying permanent

5   injunctions.").

6         <u>U.S. v. Humboldt County</u>, 615 F.2d 1260, 1261 (9th Cir. 1980), is

7   directly on point.  There, the plaintiff sought to enjoin Humboldt County from

8   enforcing certain provisions of its zoning and building codes.  The County filed a

9   counterclaim seeking to enforce the zoning and building code provisions and two

10  additional ordinances.  The trial court entered a "judgment" enjoining the County

11  from enforcing the zoning and building code provisions but did not rule on its right

12  to enforce the two additional ordinances at issue in the counterclaim.  The County

13  appealed the injunction and the plaintiff argued that the Ninth Circuit lacked

14  jurisdiction because the trial court's "judgment" disposed of fewer than all the claims

15  and the court did not make the determination provided for in <u>Rule</u> 54(b).  The Ninth

16  Circuit rejected this argument, noting that it "[o]verlooked . . . the fact that the

17  judgment is an injunction, and is thus appealable under 28 U.S.C.  § 1292(a)(1)."

18  <u>Id.</u>[10]

19  ————————————————

20  Ninth Circuit Order, dated January 12, 2009, Kidman Dec., Exh. 7 (dismissing the
    MGA Parties' appeal for lack of jurisdiction).
21
    [10]   The court used the term injunction "judgment" though it was clear there was
22  no final judgment within the meaning of <u>Rule</u> 54(b).  "The terminology can be
    confusing because a judgment may be appealable at once even though not 'final'
23  within the meaning of Rule 54(b).  <u>See, e.g.</u>, 28 U.S.C. § 1292(a)(1) (injunctions).
24  Yet because such situations are exceptions, it is commonplace to use the phrase
    'final judgment' as a synonym for 'appealable judgment,' even though the concepts
25  are not identical."  <u>Harris v. Rivera Cruz</u>, 20 F.3d 507, 511 n.4 (1st Cir. 1994)
26  (Boudin, J.); <u>see also</u> <u>Balla v. Idaho State Board of Corrections</u>, 869 F.2d 461 466
    (9th Cir. 1988) (The word "judgment" as used in the <u>Federal Rules of Civil</u>
27  <u>Procedure</u> "encompasses final judgments and appealable interlocutory orders").

28                                              Exhibit 48
                                                Page 893

1    Likewise, a <u>Rule 54(b)</u> judgment is not required in order for the final

2    injunction orders to be enforceable.  Enforceability is the hallmark of an appealable

3    injunction.  <u>See</u> 19 James W. Moore et al., <u>Moore's Federal Practice</u> § 203.10[2][c]

4    at 203-16 to 203-17 (3d ed. 2008) ("an injunction that is not enforceable is by its

5    terms is not appealable"); <u>Zucker v. Maxicare Health Plans, Inc.</u>, 14 F.3d 477, 483

6    (9th Cir. 1994) (injunction does not qualify as an appealable injunction under

7    Section 1292(a)(1) unless it is "an enforceable injunction"); <u>Original Great Am.</u>

8    <u>Chocolate Chip Cookie Co. v. River Valley Cookies, Ltd.</u>, 970 F.2d 273, 276 (7th

9    Cir. 1992) ("An injunction that has no binding force at all simply cannot be

10    appealed.").  Indeed, if final injunction orders were not enforceable, there would

11    have been no reason for Congress to carve out an exception to the final judgment

12    rule by authorizing interlocutory appeals of such orders under Section 1292(a)(1).[11]

13    <center>**Conclusion**</center>

14    For the foregoing reasons, Mattel respectfully submits that a <u>Rule</u> 54(b)

15    judgment is neither appropriate nor required for the Court's injunction orders, once

16    finalized, to be enforceable or appealable.

17

18    DATED:  February 13, 2009        QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

19

20                                    By /s/ Michael T. Zeller

21                                       Michael T. Zeller
                                         Attorneys for Mattel, Inc.
22

23

24    _____

25    [11]   Of course, parties are not required to file an interlocutory appeal of a final injunction order.  "Interlocutory appeal of a permanent injunction is not mandatory,

26    as the order remains part of the case and merges with the final judgment, from

27    which an appeal can then be taken."  <u>Chicago Board of Education v. Substance, Inc.</u>, 354 F.3d 624, 626 (7th Cir. 2003) (citation omitted).

28

Exhibit 48
Page 894

MATTEL, INC.'S SUBMISSION RE RULE 54(B)

EXHIBIT 49

1   MELINDA HAAG (State Bar No. 132612)
    mhaag@orrick.com
2   ANNETTE L. HURST (State Bar No. 148738)
    ahurst@orrick.com
3   WARRINGTON S. PARKER III (State Bar No. 148003)
    wparker@orrick.com
4   ORRICK, HERRINGTON & SUTCLIFFE LLP
    The Orrick Building
5   405 Howard Street
    San Francisco, CA 94105
6   Telephone:  +1-415-773-5700
    Facsimile:   +1-415-773-5759
7
    WILLIAM A. MOLINSKI (State Bar No. 145186)
8   wmolinski@orrick.com
    ORRICK, HERRINGTON & SUTCLIFFE LLP
9   777 South Figueroa Street, Suite 3200
    Los Angeles, CA  90017
10  Telephone:  +1-213-629-2020
    Facsimile:   +1-213-612-2499
11
    Attorneys for MGA Parties
12

13                   UNITED STATES DISTRICT COURT

14                  CENTRAL DISTRICT OF CALIFORNIA

15                        EASTERN DIVISION

16  | CARTER BRYANT, an individual | Case No. CV 04-9049 SGL (RNBx) |

17                Plaintiff,          Consolidated with:
                                      CV 04-9059
18  v.                                CV 05-2727

19  MATTEL, INC., a Delaware          **DISCOVERY MATTER**
20  Corporation
                                      **[To Be Heard By Discovery Master
21              Defendant.            Robert C. O'Brien]**

22                                    DECLARATION OF ANNETTE L.
                                      HURST ISO MGA PARTIES'
23  AND CONSOLIDATED ACTIONS          OPPOSITION TO MATTEL, INC.'S
                                      MOTION FOR LEAVE TO TAKE
24                                    ADDITIONAL DEPOSITIONS AND
                                      CROSS-MOTION FOR PROTECTIVE
25                                    ORDER ALTERING DEPOSITION
                                      LIMITS TO SET AN OVERALL
26                                    HOURS LIMIT

27

28

I, Annette L. Hurst, declare:

1. I am a member of the Bar of the State of California and admitted to practice before this Court, and a partner with the law firm of Orrick, Herrington & Sutcliffe LLP, lead counsel for Phase 2 to MGA Entertainment, Inc. ("MGAE"), MGA Entertainment HK, Ltd. ("MGA HK"), MGAE De Mexico, S.R.L. De C.V. ("MGAE Mexico"), and Isaac Larian (collectively, the "MGA parties"). I make this declaration in support of the MGA Parties' Opposition to Mattel's Motion to for Leave to Take Additional Declarations and in support of the MGA Parties' Cross-Motion for a Protective Order Altering Deposition Limits To Set An Overall Hours Limit. I have personal knowledge of the facts set forth in this Declaration unless stated as to information and belief, in which case I am informed and believe it to be true. If called as a witness, I could and would testify competently to such facts under oath.

2. On July 15, 2009, I had a telephone conference with Dylan Proctor regarding numerous outstanding discovery issues raised by both sides. During that telephone conference, one of the subjects that we discussed was discovery limits, including limits on interrogatories and limits on depositions. During the telephone conference, Mr. Proctor proposed that each side have a limit of twenty-five, rather than ten depositions. When I inquired as to how Mattel proposed that 30(b)(6) witnesses would count against this limit, Mr. Proctor stated that Mattel proposed that there be no limit on 30(b)(6) witnesses—that any number of designees on any number of topics set forth in any number of notices would all count as a single deposition. I explained that I agreed that more than ten persons per side were likely necessary to be deposed, but the concept of an unlimited number of 30(b)(6) depositions struck me as problematic. Additionally, I did not see any basis at that point for picking the number 25, as there was no way to know whether that was a reasonable or necessary number until the parties actually identified witnesses and began taking depositions to see what information could be efficiently learned.

Exhibit 49
Page 896

3.    After further consideration, I communicated to Mr. Proctor that I felt it was too soon to agree to any specific number of depositions and that it would be best to proceed by exchanging lists of deponents for scheduling purposes. Attached hereto as **Exhibit A** is a true and correct copy of my e-mail to that effect. I offered to engage in reasonable cooperation as to deposition limits. Mattel apparently took the request to exchange lists for scheduling as an invitation to provide a list of witnesses to alter the limit. Although that was not my intention, I nonetheless forwarded the list to client representatives for discussion and consideration to see whether some agreement could be reached. Before I was ready to make a response, Mattel filed this Motion.

4.    On July 8 28, 2009, Mattel served Notices of Deposition for Edmund Lee and Patrick Ma. True and correct copies of those Notices are attached hereto as **Exhibits B** and **C**. The Notices requested their depositions in Hong Kong on two weeks' notice. Since Mr. Lee had already been deposed for three days during Phase 1, the Notice to him was served in violation of Rule 30(d)(1). MGA indicated it was prepared to file a motion for protective order regarding both witnesses, but also offered to bring Mr. Ma to Los Angeles for deposition at a mutually convenient time. After additional consideration of the issue, MGA also offered to bring Mr. Lee to Los Angeles for one additional day of deposition, even though he had already been deposed for three days, provided that both depositions counted against the deposition limit. MGA offered a time frame for deposition in light of these proposals, and Mattel responded with its availability. Thus, the parties have exchanged scheduling information with a view to scheduling the depositions towards the end of September.

5.    Non-party Peter Carson was subpoenaed for deposition on August 25, 2009. He is not represented by MGA's counsel and MGA is unaware whether any further scheduling discussions have occurred regarding his deposition.

6.      Non-party Fred Mashian is not represented by MGA's counsel.  I am informed by Mr. Villar that his counsel have offered dates for deposition and Mattel has not yet responded.

7.      On August 14, after Mattel filed its Motion, I called Mr. Proctor with a view to further meeting and conferring to try to resolve the deposition limits issue. I proposed to alter Rule 30 to provide an hours-based limit for depositions, with each side entitled to the same number of hours.  I proposed 110 hours per side, more than would be necessary to take ten depositions under the existing limits, in an effort to take into account Mattel's request for more than ten depositions.  I also explained to Mr. Proctor that I believed this proposal would obviate further counting disputes such as the one that Mattel raised with regard to the letters of request for witnesses Vargas and Trueba.  On August 15, 2009, Mr. Proctor responded by e-mail that Mattel had considered my proposal and would reject it, primarily on the grounds that it would allow MGA to take an indefinite number of depositions.  I responded by e-mail pointing out that an indefinite number of depositions was what Mattel had already proposed, but that this assertion was nonetheless inaccurate and that the hours limit would solve a lot of problems.  I offered to lower the limit to 70 hours per side in light of Mattel's stated concern.  A true and correct copy of that e-mail exchange is attached hereto as **Exhibit D**. Mattel made no further response.

8.      An hours-based limit is a tool that has been used in cases in which I have been involved both for efficiently managing trials and for efficiently managing depositions.  Based upon my discussions with opposing counsel in other cases, my colleagues and other practitioners, I believe an hours-based limit is also a tool regularly used in complex intellectual property litigation.  There appear to be no published case on the subject (as one would expect since scheduling orders rarely provoke published opinions), but using Stanford's Lexmachina database of intellectual property cases for a short period of time (approximately 20 minutes)

Exhibit 49
Page 898

1  this morning, I was able to find two examples of hours-based limits used in

2  seemingly complex cases from another jurisdiction.  Attached hereto as **Exhibits E**

3  and **F** are minute orders reflecting those two examples.  I believe there are likely a

4  number of other examples of such orders entered by courts around the country, but

5  have not yet had time to search further for them by the time of this filing.

6       I declare under penalty of perjury under the laws of the United States that the

7  foregoing is true and correct.

8       Executed this 21st day of August, 2009, in Los Angeles, California.

9

10            Annette L. Hurst

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit 49

HURST DECL. ISO MGA PARTIES OPPOSITION AND CROSS-
MOTION RE PRETRIAL Page 899CE ORDER
CV-04-9049 SGL (RNBx)

EXHIBIT 50

**FILED**

## UNITED STATES COURT OF APPEALS

JUN 10 2009

### FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| MATTEL, INC., a Delaware corporation,<br><br>    Defendant-counter-claimant - Appellee<br>v.<br><br>MGA ENTERTAINMENT, INC.; et al.,<br><br>    Counter-defendants - Appellants,<br><br>CARTER BRYANT, an individual,<br><br>    Plaintiff-counter-defendant,<br><br>CARLOS GUSTAVO MACHADO<br>GOMEZ, an individual; et al.,<br><br>    Counter-defendants,<br><br>ANNE WANG,<br><br>    Third-party-defendant,<br><br>OMNI 808 INVESTORS LLC,<br><br>    Movant. | No. 09-55673<br><br>D.C. No. 2:04-cv-09049-SGL<br>Central District of California,<br>Los Angeles |

KW/MOATT

Exhibit 50
Page 900

CARTER BRYANT, an individual,

   Plaintiff-counter-defendant - Appellee and

MGA ENTERTAINMENT, INC.; et al.,

        Counter-defendants - Appellees

  v.

MATTEL, INC., a Delaware corporation,

   Defendant-counter-claimant - Appellant,

CARLOS GUSTAVO MACHADO GOMEZ, an individual; et al.,

     Counter-defendants.

No. 09-55812

D.C. No. 2:04-cv-09049-SGL
Central District of California,
Los Angeles

ORDER

Before: KOZINSKI, Chief Judge, PAEZ and TALLMAN, Circuit Judges.

The parties' motions to exceed page limitations are granted.

The parties' motions to seal documents are granted with one exception. The motion to seal the "Declaration of Isaac Larian in Support of Appellants' Reply" ("Larian Declaration") and "Exhibit A" thereto is denied. The parties agree that the Larian Declaration and its exhibit no longer need to be filed under seal.

Mattel's objections to Exhibit A to the Larian Declaration, a letter from Sears Holdings, are overruled. The court has also considered the response by Mattel and supporting Supplemental Declaration of Michael T. Zeller.

KW/MOATT                          2                          09-55673

Exhibit 50
Page 901

MGA Entertainment, Inc., MGA Entertainment HK Ltd. and Isaac Larian's ("MGA's") motion for a stay pending appeal is denied. MGA has not met the prevailing standard to show a substantial likelihood of ultimate success on the merits. *See Hilton v. Braunskill*, 481 U.S. 770, 776 (1987).

MGA's unopposed motion to expedite the briefing and hearing is granted. The following briefing schedule governs these cross-appeals: MGA's principal brief is due July 10, 2009; Mattel's principal/response brief is due August 10, 2009; MGA's response/reply brief is due September 9, 2009; and Mattel's optional reply brief is due within 14 days after service of the response/reply brief. The briefs and all courtesy copies must be received by the court on or before the dates that the briefs are due. These cross-appeals will be calendared before the first available panel following the completion of briefing. The provisions of Ninth Circuit Rule 31-2.2(a) shall not apply to these cross-appeals. Any motions to extend time to file the briefs will be strongly disfavored.

Any pending motions not addressed by this order are referred to the panel that will hear the merits.

Exhibit 50
Page 902

EXHIBIT 51

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**