1  MELINDA HAAG (State Bar No. 132612)
   mhaag@orrick.com
2  ANNETTE L. HURST (State Bar No. 148738)
   ahurst@orrick.com
3  WARRINGTON S. PARKER III (State Bar No. 148003)
   wparker@orrick.com
4  ORRICK, HERRINGTON & SUTCLIFFE LLP
   The Orrick Building
5  405 Howard Street
   San Francisco, CA  94105-2669
6  Telephone:  +1-415-773-5700
   Facsimile:   +1-415-773-5759
7
   WILLIAM A. MOLINSKI (State Bar No. 145186)
8  wmolinski@orrick.com
   ORRICK, HERRINGTON & SUTCLIFFE LLP
9  777 South Figueroa Street, Suite 3200
   Los Angeles, CA  90017
10 Telephone:  +1-213-629-2020
   Facsimile:   +1-213-612-2499
11
   Attorneys for MGA Parties
12
13              UNITED STATES DISTRICT COURT
14              CENTRAL DISTRICT OF CALIFORNIA
15                    EASTERN DIVISION

| | |
|---|---|
| 16  CARTER BRYANT, an individual, | Case No.  CV 04-9049-SGL (RNBx)<br>Consolidated with: Case No. CV 04-9059 |
| 17              Plaintiff, | and Case No. CV 05-2727 |
| 18       v. | **DISCOVERY MATTER**<br>[To Be Heard by Discovery Master |
| 19  MATTEL, INC., a Delaware | Robert O'Brien] |
|     corporation, | |
| 20 | **SUPPLEMENTAL DECLARATION OF** |
|              Defendant. | **CHRISTOPHER J. CHAUDOIR IN** |
| 21 | **SUPPORT OF REPLY** |
| 22  AND CONSOLIDATED ACTIONS | **MEMORANDUM  TO COMPEL**<br>**FURTHER RESPONSES TO MGA'S** |
| 23 | **FIRST SET OF PHASE 2 REQUESTS**<br>**FOR PRODUCTION AND TO** |
| 24 | **COMPEL PRODUCTION OF**<br>**DOCUMENTS** |
| 25 | Date:         Sept. 10, 2009 |
| 26 | Time:         10:00 a.m.<br>Courtroom:  Arent Fox LLP |
| 27 | **Phase 2**<br>Discovery Cutoff:    December 11, 2009 |
| 28 | Pretrial Conference: March 1, 2010<br>Trial Date:    March 23, 2010 |

OHS West:260716098.1

**SUPPLEMENTAL DECLARATION OF CHRISTOPHER J. CHAUDOIR**

I, Christopher J. Chaudoir, hereby declare as follows:

1.     I am an associate at the law firm of Orrick, Herrington & Sutcliffe LLP, attorneys of record for Plaintiff and Counter-Defendant MGA Entertainment, Inc. and Counter-Defendants MGA Entertainment HK, Ltd., MGAE de Mexico S.R.L. de C.V., and Isaac Larian ("MGA Parties"). Based on this representation, I am familiar with the events, pleadings, and discovery in this action and, if called upon as a witness, I could and would testify competently to the matters stated herein of my own personal knowledge. I make this supplemental declaration in support of MGA's Motion To Compel Further Reponses To MGA's First Set of Phase 2 Requests for Production and to Compel Production of Responsive Documents.

2.     Attached hereto as Exhibit 1 is a true and correct copy of Mattel's Reply to Mattel Inc.'s [Public Redacted] Reply In Support of Motion To Compel MGA Mexico To Produce Documents And Things In Response To Mattel's First, Second and Third Sets of Requests For Production To MGA Mexico.

3.     Attached hereto as Exhibit 2 is a true and correct copy of [Corrected] Reply In Support Of Mattel, Inc's Motion to Compel Responses To Interrogatories (Nos. 27, 28, 29, 30, 31, 32, 33, 36, 37, 38, 39, 40, 42, 45 and 47) By Carter Bryant.

4.     Attached hereto as Exhibit 3 is a true and correct copy of relevant portions of the August 13, 2009 Hearing Transcript before Discovery Master Obrien.

5.     I have reviewed Mattel, Inc.'s Opposition to the Motion and understand that Mattel has questioned whether a letter I prepared and sent

///

///

///

///

1   reminding Mattel of its obligation to produce was, in fact, sent.  I have confirmed

2   that the letter was sent by US Mail.

3         I declare under penalty of perjury under the laws of the United States the

4   foregoing is true and correct, and that this declaration was executed this 25th day of

5   August, 2009, at Los Angeles, California.

6

7                                                    _____
                                                          Christopher J. Chaudoir
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SUPP DEC OF CHRISTOPHER J. CHAUDOIR IN SUPPORT OF
MGA'S MOTION TO COMPEL FURTHER RESPONSES
CV 04-9049 SGL (RNBx)

# EXHIBIT 1

1 | QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
   John B. Quinn (Bar No. 090378)
2 | (johnquinn@quinnemanuel.com)
   Michael T. Zeller (Bar No. 196417)
3 | (michaelzeller@quinnemanuel.com)
   Jon D. Corey (Bar No. 185066)
4 | (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5 | Los Angeles, California  90017-2543
   Telephone:  (213) 443-3000
6 | Facsimile:  (213) 443-3100

7 | Attorneys for Mattel, Inc.

8 |

9 |                 UNITED STATES DISTRICT COURT

10 |               CENTRAL DISTRICT OF CALIFORNIA

11 |                      EASTERN DIVISION

| | |
|---|---|
| 12 | CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| 13 | Plaintiff, | Consolidated with Case Nos. CV 04-9059 and CV 05-02727 |
| 14 | vs. | **DISCOVERY MATTER** |
| 15 | MATTEL, INC., a Delaware corporation, | **[To Be Heard By Discovery Master Robert O'Brien]** |
| 16 | | MATTEL, INC.'S [PUBLIC REDACTED] REPLY IN SUPPORT |
| 17 | Defendant. | OF MOTION TO COMPEL MGA MEXICO TO PRODUCE |
| 18 | AND CONSOLIDATED ACTIONS | DOCUMENTS AND THINGS IN RESPONSE TO MATTEL'S FIRST, |
| 19 | | SECOND AND THIRD SETS OF REQUESTS FOR PRODUCTION TO MGA MEXICO |
| 20 | | |
| 21 | | |
| 22 | | [Declaration of Marshall M. Searcy III filed concurrently herewith] |
| 23 | | Date:   TBA |
| 24 | | Time:   TBA<br>Place:   TBA |
| 25 | | **Phase 2** |
| 26 | | Discovery Cut-off:      Dec. 11, 2009<br>Pre-trial Conference:   Mar. 1, 2010 |
| 27 | | Trial Date:               Mar. 23, 2010 |
| 28 | | |

07975/3026474.1

REPLY ISO MATTEL'S MOTION TO COMPEL MGA MEXICO TO PRODUCE DOCUMENTS

EXHIBIT 1
PAGE 3

1

## TABLE OF CONTENTS

2                                                                           **Page**

3

4   MEMORANDUM OF POINTS AND AUTHORITIES ............................................1

5   PRELIMINARY STATEMENT ...........................................................................1

6   ARGUMENT .........................................................................................................2

7   I.   THAT OTHER PARTIES HAVE PRODUCED SOME DOCUMENTS
         IS NO DEFENSE .........................................................................................2
8
         A.   MGA Mexico Has Not Produced Any Documents.............................2
9
         B.   MGA Mexico's Discovery Obligations Are Not Satisfied by
10            Other Parties' Production of Documents ...........................................4

11  II.  MGA MEXICO'S UNFULFILLED AGREEMENT TO PRODUCE
         DOCUMENTS DOES NOT MOOT AN ORDER COMPELLING
12       PRODUCTION ...........................................................................................6

13  III. THE "BURDEN" THAT MGA COMPLAINS OF IS A PRODUCT OF
         ITS OWN DISCOVERY MISCONDUCT ...................................................7
14
15  IV.  MGA MEXICO'S PROCEDURAL ARGUMENTS ARE
         UNAVAILING .............................................................................................9

16  V.   MGA MEXICO'S SPECIFIC OBJECTIONS ARE NOT WELL
         TAKEN .......................................................................................................10
17
         A.   MGA Mexico's Definitional Objections Are Frivolous and
18            Contrary to Prior Rulings ...............................................................11

19       B.   Mattel's Requests Seek Relevant And Appropriate Information..........12

20  VI.  MGA MEXICO SHOULD BE SANCTIONED FOR ITS REFUSAL
         TO PRODUCE DOCUMENTS ..................................................................15
21
22  CONCLUSION.....................................................................................................16

23

24

25

26

27

28

07975/3026474.1

-i-

EXHIBIT 1
PAGE 4

1

## TABLE OF AUTHORITIES

2                                                                                          **Page**

3                                                    <u>Cases</u>

4    <u>A. Farber and Partners, Inc. v. Garber</u>,
5        234 F.R.D. 186 (C.D. Cal. 2006)..................................................9

6    <u>Bible v. Rio Properties, Inc.</u>,
         246 F.R.D. 614 (C.D. Cal. 2007)..................................................7

7    <u>Diamond State Ins. Co. v. Rebel Oil Co., Inc.</u>,
8        157 F.R.D. 691 (D. Nev. 1994) ..................................................4

9    <u>Equal Rights Center v. Archstone-Smith Trust</u>,
         251 F.R.D. 168 (D. Md. 2008) ..................................................4
10

11   <u>Goodman v. U.S.</u>,
         369 F.2d 166 (9th Cir. 1966) ..................................................7

12
     <u>Lamoureux v. Genesis Pharmacy Services, Inc.</u>,
13       226 F.R.D. 154 (D. Conn. 2004) ..................................................7

14   <u>Maljack Prods., Inc. v. GoodTimes Home Video Corp.</u>,
15       81 F.3d 881 (9th Cir. 1996) ..................................................5

16   <u>Morgenstern v. Int'l Alliance of Theatrical Stage Empl.</u>,
         2006 WL 2385233 (N.D. Cal. 2006) ..................................................11
17

18   <u>Moses v. Halstead</u>,
         236 F.R.D. 667 (D. Kan. 2006) ..................................................10

19   <u>In re PE Corp. Securities Litigation</u>,
20       221 F.R.D. 20 (D. Conn. 2003) ..................................................5

21   <u>Snyder v. Whittaker Corp.</u>,
         839 F.2d 1085 (5th Cir. 1988) ..................................................5
22

23   <u>Sullivan v. Prudential Ins. Co. of America</u>,
         233 F.R.D. 573 (C.D. Cal. 2005)..................................................7

24   <u>Viacom Intern. Inc. v. YouTube, Inc.</u>,
         2008 WL 3876142 (N.D. Cal. Aug. 18, 2008) ..................................................4
25

26   <u>Walker v. Lakewood Condominium Owners Ass'n</u>,
         186 F.R.D. 584 (C.D. Cal. 1999)..................................................9

27

28

1

## Statutes

2    Fed. R. Civ. P. 26 ...................................................................... 7

3    Fed. R. Civ. P. 26(b)(1) .......................................................... 13

4    Fed. R. Civ. P. 34(a) ................................................................. 4

5    Fed. R. Civ. P. 34(a)(1) .......................................................... 11

6    Fed. R. Civ. P. 34(b)(2)(E) ...................................................... 4

7

8

## Miscellaneous

9    31 Federal Practice & Procedure: Evidence § 7105, at 39 ......................................... 5

10    Webster's Ninth New Collegiate Dictionary at 651 (9th Ed. 1989) ........................ 12

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07975/3026474.1

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

MGA Mexico's opposition asks the Discovery Master to reward it for its wholesale stonewalling. Mattel has had to move to compel on many requests because MGA Mexico has stiffed Mattel on every request it has received. Try as it might to disguise this fact, MGA Mexico has not produced a single document in this case. A party that wholly refuses to participate in discovery, as MGA Mexico has, naturally is going to find itself facing a broad motion to compel. But the breadth of the motion indicates the extent of obstructionism and nothing more. A party that refuses to produce any documents in response to any requests cannot complain when it then has to respond to a motion – and an order – on those requests.

And here MGA Mexico has failed to produce any documents in response to even one of Mattel's requests. MGA Mexico touts how many documents the "MGA Parties" have produced, but nowhere does it even claim, let alone show, that MGA Mexico has actually produced any documents. It neither points to some set of MGA Mexico Bates-stamped documents (there is none) nor identifies MGA Bates-stamped documents that MGA Mexico purportedly produced. Mattel's motion also is not "moot" because MGA Mexico represented that it would produce some documents in response to some of Mattel's Requests. Even the documents it promised still have not been produced. Broken promises do not moot a motion to compel. Mattel is entitled to an order compelling MGA Mexico to comply with its discovery obligations by a date certain.

Since it cannot show that it has complied with its obligations, MGA Mexico claims some of Mattel's requests are duplicative and implies that other MGA parties have satisfied its discovery obligations for it by producing documents. The argument falls flat. Even while it cries duplication, MGA Mexico does not even claim, let alone prove, that all responsive documents in its possession, custody or control have been produced *by anyone,* including other MGA parties, as to even a

EXHIBIT 1
PAGE 7

1    single request. Even if MGA, for instance, had produced some documents

2    responsive to a request sent to MGA Mexico, Mattel remains entitled to the balance

3    of the responsive documents which are in MGA Mexico's possession, custody or

4    control. *Those* documents have not even allegedly been produced. Furthermore, as

5    discussed below, Mattel is entitled to production from MGA Mexico itself.

6            Finally, MGA Mexico's objections to Mattel's actual requests are half-

7    hearted at best. MGA Mexico seeks to avoid production by quibbling with

8    definitions and arguing that specified Requests could be construed to include

9    irrelevant information. These objections are unavailing. Many of them have

10    already been rejected by the Discovery Master, and the remaining are meritless and

11    provide no basis for MGA Mexico's continued, wholesale refusal to comply with its

12    discovery obligations.

13            Quite simply, MGA Mexico has shown that it will not participate in

14    discovery in this case absent an order. The Discovery Master should compel MGA

15    Mexico to produce and sanction it for its misconduct.

16                                **Argument**

17    I.    **THAT OTHER PARTIES HAVE PRODUCED SOME DOCUMENTS**

18          **IS NO DEFENSE**

19          A.    **MGA Mexico Has Not Produced Any Documents**

20            MGA Mexico--a named defendant and conspirator in this case--has not

21    produced a single document in this matter. MGA Mexico goes to great lengths to

22    obscure this fact in its Opposition. In doing so, MGA Mexico only confirms that it

23    has neither searched for nor produced documents in this litigation. MGA Mexico

24    thus attempts to lump itself in with other parties in the action to represent that

25    "[m]ore than 4.2 million pages of documents have already been produced by the

26

27

28

07975/3026474.1

-2-

REPLY ISO MATTEL'S MOTION TO COMPEL MGA MEXICO TO PRODUCE DOCUMENTS

EXHIBIT 1
PAGE 8

1   *MGA Parties*."[1]  MGA Mexico also employs the passive voice to state that

2   "documents *from* MGA Mexico [have], in fact, been previously produced,"[2] without

3   claiming either that MGA Mexico actually produced those documents or that all of

4   its responsive documents were produced by others.  MGA Mexico even suggests

5   that if Mattel runs searches for Spanish language documents it might possibly find

6   some documents that at some point were in the possession of MGA Mexico,[3]

7   apparently to imply that it has actually produced documents in this case.  But *that* is

8   a claim it nowhere makes.

9          MGA Mexico does not--and cannot--point to a single document that

10   MGA Mexico has actually produced in this case.  It does not point to any documents

11   bearing MGA Mexico Bates numbers.  It does not cite to correspondence purporting

12   to transmit MGA Mexico productions.  And it does not identify a single Bates

13   numbers that corresponds with documents purportedly produced by MGA Mexico.

14          Indeed, the only specific document that MGA Mexico cites--a letter

15   from Mattel's counsel regarding a CD containing documents seized by Mexican

16   authorities "from MGA's office in Mexico"--contradicts MGA Mexico's suggestion

17   that it produced such documents.  The very first sentence of the letter states that the

18   CD in question is a "CD produced *by MGA*, Bates numbered *MGA 3815506*."[4]  That

19   MGA produced some documents stolen from Mattel says nothing about whether

20   MGA Mexico has satisfied its discovery obligations – MGA presumably produced

21   _____

22     [1]   MGA Parties' Opposition to Motion to Compel MGA Mexico to Produce

23   Documents and Things in Response to Mattel's First, Second and Third Sets of Requests for Production to MGA Mexico ("Opposition") at 1 (emphasis provided).

24     [2]   Opposition at 3 (emphasis provided).

25     [3]   Opposition at 7.

    [4]   Declaration of William A. Molinski in Support of MGA Parties' Opposition to

26   Motion to Compel MGA Mexico to Produce Documents and Things in Response to

27   Mattel's First, Second and Third Sets of Requests for Production to MGA Mexico ("Molinski Dec."), Exh. C (emphasis provided).

28

07975/3026474.1

EXHIBIT 1
PAGE 9

1   the documents because *it* possessed them.  But, crucial here, MGA Mexico has not

2   even claimed that MGA produced these documents because *MGA Mexico* possessed

3   them; in fact, MGA Mexico *refused* to stipulate that it ever possessed these and

4   other documents when Mattel proposed that MGA Mexico so stipulate to address at

5   least some discovery issues.[5]  That this is MGA Mexico's prime example of

6   documents it has produced is telling.

7       **B.**    **MGA Mexico's Discovery Obligations Are Not Satisfied by Other**

8                 **Parties' Production of Documents**

9           Nor is MGA Mexico's wholesale refusal to produce discovery excused

10   because other defendants have produced documents. MGAE de Mexico, S.R.L. de

11   C.V. and MGA Entertainment, Inc. are separate defendants, each of which has an

12   independent obligation to respond to discovery. Fed. R. Civ. P. 34(a) ("A party may

13   serve on any other party a request…"); Fed. R. Civ. P. 34(b)(2)(E) ("A *party* must

14   produce documents…") (emphasis supplied).  MGA Mexico urges that compelling

15   discovery from it when MGA has already been compelled would be "duplicative"

16   and "unnecessary," but it cites no authority supporting its claim that it can refuse to

17   participate in discovery purportedly based on an affiliate's production.[6]  Far from

18   being improper, multiple requests are recognized as essential to developing a full

19

20

---

21       [5] Letter from Marshall Searcy to Amman Khan, dated April 23, 2009, attached as

22   Exh. 11 to the Declaration of Marshall M. Searcy III in Support of Mattel, Inc.'s
    Motion to Compel MGA Mexico to Produce Documents and Things in Response to

23   Mattel's First, Second and Third Sets of Requests for Production to MGA Mexico

24   ("Searcy Motion Dec.").

25       [6] The only case cited by MGA Mexico, Equal Rights Center v. Archstone-Smith
    Trust, 251 F.R.D. 168 (D. Md. 2008), did not involve production by an affiliate or

26   co-defendant.  Furthermore, the court in that case denied discovery because the

27   moving party "failed to identify how the information it [sought was] reasonably
    calculated to lead to the discovery of admissible evidence."  251 F.R.D. at 171.

28

-4-

EXHIBIT 1
PAGE 10

1  record.[7]  Moreover, MGA Mexico does not represent that all of *its* responsive

2  documents have been produced by MGA or anyone else as to even one Request.

3  Indeed, there is no evidence that MGA Mexico has even searched its files for

4  documents.  Unable to show that it has not withheld responsive documents, MGA

5  Mexico's "duplication" argument is misplaced.

6          MGA Mexico's attempt to justify its complete failure to produce

7  documents based on documents produced by others is also untenable because,

8  duplicative or not, MGA Mexico's possession of certain documents is directly at

9  issue.  Mattel has alleged that MGA Mexico persuaded Mattel employees to steal

10  confidential and trade secret information from Mattel, which MGA Mexico then

11  used to compete unfairly with Mattel.  MGA Mexico's possession of Mattel's

12  information is itself an operative fact.  MGA Mexico's logic leaves it free to

13  withhold from Mattel the very information Mattel needs to show that MGA Mexico

14  possessed and used confidential information stolen from Mattel.  Mattel is entitled

15  to production by MGA Mexico itself to prove which documents produced by MGA

16  were also in MGA Mexico's possession, custody or control or originally came from

17  MGA Mexico.

18          Furthermore, Mattel is entitled to the production of documents from

19  MGA Mexico because they are independently relevant to authenticity and

20  foundation.  See Maljack Prods., Inc. v. GoodTimes Home Video Corp., 81 F.3d

21  881, 889 n. 12 (9th Cir. 1996) (documents produced in discovery were deemed

22  authentic when offered by the party-opponent); Snyder v. Whittaker Corp., 839 F.2d

23  1085, 1089 (5th Cir. 1988) (same); 31 Federal Practice & Procedure: Evidence §

24

25      [7]  See, e.g., Diamond State Ins. Co. v. Rebel Oil Co., Inc., 157 F.R.D. 691, 697
26  (D. Nev. 1994) (recognizing that although the requests were "duplicative in part,"
27  they were "directed toward two separate business entities, and the documents
    "actually maintained in the files of each entity may not be identical").
28

EXHIBIT 1
PAGE 11

1   7105, at 39 ("Authentication can also be accomplished through judicial admissions

2   such as ... production of items in response to ... [a] discovery request.").  Unless

3   documents from MGA Mexico's files are produced, MGA Mexico witnesses also

4   will be free do deny that they had access to a given document or to force counsel to

5   spend hours in deposition determining which of the documents produced by others

6   are also in MGA Mexico's files and whether they are identical or different

7   documents.  Mattel will be hindered in its ability to question or impeach MGA

8   Mexico witnesses with documents from their own files or to establish that a

9   particular witness had the documents in his or her possession and therefore was on

10  notice of the contents of the documents.

11          Though MGA Mexico claims its possession of documents is of "limited

12  relevance,"[8] that is incorrect for the reason just discussed, and MGA Mexico

13  obviously does not believe its own argument.  Tellingly, even while it tries to latch

14  onto MGA's document production in opposing this Motion, it refused to stipulate

15  that any of these documents were in MGA Mexico's possession, custody or control.

16  Thus, MGA Mexico is incapable of saying it actually produced any documents and

17  unwilling to either produce them or even say that it possessed what others produced.

18  And, ironically, just on Friday, the MGA Parties filed a motion touting the

19  importance of custodial information.  MGA Mexico's positions are groundless and

20  inconsistent.

21  **II.    MGA MEXICO'S UNFULFILLED AGREEMENT TO PRODUCE**

22  **DOCUMENTS DOES NOT MOOT AN ORDER COMPELLING**

23  **PRODUCTION**

24          MGA Mexico asserts that Mattel's Motion is moot with respect to 309

25  Requests because MGA Mexico agreed in its written responses to produce

26  _____

27  [8]    Opposition at 6.

28

07975/3026474.1

-6-

EXHIBIT 1
PAGE 12

1   documents for these Requests.  The argument is without merit.  Mattel served its

2   First and Second Set of Document Requests **in 2007**.[9]  After 18 months, MGA

3   Mexico has not produced anything.  As explained in Mattel's motion, a mere

4   agreement to produce does not preclude an order compelling production.  "Either

5   information has been disclosed or it has not been disclosed.  If it has not been

6   disclosed, then, plainly, it remains to be compelled."  Lamoureux v. Genesis

7   Pharmacy Services, Inc., 226 F.R.D. 154, 159 (D. Conn. 2004); see Motion at 13.

8   MGA Mexico does not answer this point.  Mattel's Motion is hardly moot given that

9   MGA Mexico has not even produced the documents it said it would.  Indeed, MGA

10  Mexico not only broke its promise to produce, but it is all the more empty given

11  MGA Mexico's other, contradictory position that it is under no obligation to

12  respond to *any* of Mattel's Requests so long as another party has produced

13  documents.  Absent an order, MGA Mexico will continue to withhold whatever

14  documents it chooses, as it has to date.

15  **III.   THE "BURDEN" THAT MGA COMPLAINS OF IS A PRODUCT OF**

16          **ITS OWN DISCOVERY MISCONDUCT**

17          Arguing based on numbers alone, MGA Mexico claims that Mattel's

18  574 Requests must be unduly burdensome.[10]  MGA Mexico may not merely point to

19  numbers to avoid producing documents, especially in a case of this complexity and

20  importance, and especially since counsel for MGA Mexico has propounded

21  thousands of discovery requests to Mattel as well.  Given the broad reach of

22  discovery under Rule 26, the burden to show why discovery should not be allowed

23  _____

24  [9]  Mattel, Inc.'s First Set of Requests for Documents and Things to MGAE de

25  Mexico, S.R.L. de C.V. ("First Set of Requests"), dated November 21, 2007, Searcy
    Motion Dec., Exh. 1; Mattel, Inc.'s Second Set of Requests for Documents and

26  Things to MGAE de Mexico, S.R.L. de C.V., dated December 12, 2007, Searcy

27  Motion Dec. Exh. 3.
    [10]  Opposition at 4.

28

07975/3026474.1

1   is on the party resisting discovery. Bible v. Rio Properties, Inc., 246 F.R.D. 614,

2   618 (C.D. Cal. 2007); Sullivan v. Prudential Ins. Co. of America, 233 F.R.D. 573,

3   575 (C.D. Cal. 2005). The objecting party bears the burden of proving undue

4   burden by "specific and compelling" proof. Goodman v. U.S., 369 F.2d 166, 169

5   (9th Cir. 1966). Indeed, both the Court and the Discovery Master have held that

6   undue burden must be proven with specificity.[11] Here, MGA Mexico has not come

7   forward with any evidence that it has even searched for documents, much less that

8   producing the documents sought by Mattel would impose an undue burden.

9       MGA Mexico also has no one but itself to blame for whatever burden it

10  now faces. Had MGA Mexico reasonably responded to Mattel's Requests and

11  produced its documents over the last year and a half, rather than stonewall and

12  obfuscate, it would not have to deal with this backlog of Requests. It now being

13  clear that it has failed to produce a single document, MGA Mexico cannot blame

14  Mattel for moving to compel the discovery it is due. Similarly, MGA Mexico

15  repeatedly complains about the number of Requests aimed its own "unclean hands"

16  defense.[12] However, these Requests aimed at the specific allegations in MGA

17  Mexico's pleading. If there are a large number of Requests, it is only due to the

18  wide-ranging nature of MGA Mexico's own allegations. Unlike most other

19  affirmative defenses pleaded by the parties, MGA Mexico chose to file a multi-page,

20  far-flung purported unclean hands defense. If MGA Mexico is to rely on the

21  _____

22  [11]   July 9, 2009 Order Granting in Part Mattel's Motion Re Discovery Master

23  Order No. 27, attached as Exhibit 1 to the concurrently filed Declaration of Marshall
    M. Searcy III in Support of Mattel, Inc.'s Reply in Support of Motion to Compel

24  MGA Mexico to Produce Documents and Things in Response to Mattel's First,

25  Second and Third Sets of Requests for Production to MGA Mexico ("Searcy Reply
    Dec."), at 4; Phase 2 Discover Matter Amended Order No. 11, Searcy Motion Dec.,

26  Exh. 19 at 18-19 (overruling undue burden objection because MGA did not meet its

27  burden to allege specific facts indicating the nature and extent of the burden).
    [12]   Opposition at 7.

28

EXHIBIT 1
PAGE 14

1  defense, it should produce the documents it has that pertain to its allegations.

2  Oddly, MGA Mexico seems to suggest in its opposition that it has little to produce

3  because the defense is based on Mattel's actions.[13]  If so, then MGA Mexico is not

4  under any "undue burden" at all; it should simply produce the few documents it has.

5  **IV.   MGA MEXICO'S PROCEDURAL ARGUMENTS ARE UNAVAILING**

6        MGA Mexico argues that Mattel's motion is procedurally improper

7  because it did not include a separate statement.  This argument is curious,

8  considering that MGA █████████████████████████████████████████████

9  ████████████████████████████████.[14]  Just as the Discovery

10 Master correctly found before that a separate statement is not prohibited by the

11 Discovery Master Order,[15] neither is one required under the terms of the Discovery

12 Master Order.

13       Despite its claims that its objections were "detailed" and thorough,[16]

14 MGA Mexico asserted virtually the same objections to each of Mattel's Requests.

15 Such boilerplate objections are improper and invalid.  A. Farber and Partners, Inc. v.

16 Garber, 234 F.R.D. 186, 188 (C.D. Cal. 2006) ("[G]eneral or boilerplate objections

17 such as 'overly burdensome and harassing' are improper—especially when a party

18 fails to submit any evidentiary declarations supporting such objections."); Walker v.

19 Lakewood Condominium Owners Ass'n, 186 F.R.D. 584, 587 (C.D. Cal. 1999)

20

21  [13]  Opposition at 6.

22  [14]  MGA Parties' Opposition to Mattel's Motion to Compel Production of
    Documents Responsive to Third-Party Receiver Subpoenas Issued By Mattel, dated

23  February 17, 2009, Searcy Reply Dec., Exh. 2 at 19 ("█████████████████████

24  ███████████████████████████████████████████████████████████

25  ███████████████████████████████████████████████").

26  [15]  Phase 2 Discover Matter Order No. 3, dated March 10, 2009, Searcy Reply

27  Dec., Exh. 3 at 9-10.
    [16]  Opposition at 23.

28

EXHIBIT 1
PAGE 15

1  ("Boilerplate, generalized objections are inadequate and tantamount to not making

2  any objection at all.").  A separate statement is hardly needed to meaningfully

3  discuss such generic, repetitive objections; a separate statement on this motion

4  would have, as a matter of necessity, unhelpfully repeated the same refutations of

5  the same boilerplate objections over and over again.

6          Similarly unavailing is MGA Mexico's suggestion that the parties did

7  not sufficiently meet and confer before Mattel filed its motion.  Mattel initiated the

8  meet and confer process with a 12-page, single-spaced letter which noted that

9  "MGA Mexico has not produced any documents in response to Mattel's First,

10  Second, and Third Sets of Requests."[17]  Despite continued conferences with counsel,

11  MGA Mexico could not identify a single document that it had produced, could not

12  state when it would ever produce the documents it supposedly agreed to produce

13  and refused to produce any additional documents in response to Mattel's Requests.[18]

14  Mattel complied with its meet and confer obligations.

15  **V.       MGA MEXICO'S SPECIFIC OBJECTIONS ARE NOT WELL TAKEN**

16          Abandoning most of the boilerplate objections made in its responses,

17  MGA Mexico advances a handful of objections to Mattel's Requests in its

18  Opposition.  As discussed below, the objections MGA Mexico has pursued lack

19  merit, and any objections it chose not to advance have been waived.[19]  Moses v.

20

21     [17]  April 2, 2009 letter from Marshall M. Searcy III to Amman Khan, Searcy
22  Motion Dec., Exh. 7 at 1.
       [18]  Letter from Amman Khan to Marshall Searcy, dated April 9, 2009, Searcy
23  Motion Dec., Exh. 8; Letter from Amman Khan to Marshall Searcy, dated April 14,
24  2009, Searcy Motion Dec., Exh. 10; Letter from Marshall Searcy to Amman Khan,
25  dated April 23, 2009, Searcy Motion Dec., Exh. 11.
       [19]  MGA Mexico purports to reserve challenges it has chosen not to make:
26  "[g]iven the breadth of Mattel's motion to compel, MGA Mexico will not list each
27  request that asks for irrelevant information."  Opposition at n.26.  Such a conclusory
    objection has not even been preserved, (See Phase 2 Discovery Matter Order No. 22,
28      (footnote continued)

REPLY ISO MATTEL'S MOTION TO COMPEL MGA MEXICO TO PRODUCE DOCUMENTS

07975/3026474.1

EXHIBIT 1
PAGE 16

1   Halstead, 236 F.R.D. 667, 672 n.8 (D. Kan. 2006) ("Objections initially raised but

2   not relied upon in response to the motion to compel will be deemed abandoned.");

3   Morgenstern v. Int'l Alliance of Theatrical Stage Empl., 2006 WL 2385233, *2 n.5

4   (N.D. Cal. 2006) (a party cannot resist discovery based on objections it failed to

5   raise in its motion to compel).  Indeed, the Discovery Master has so held in prior

6   rulings.[20]

7       **A.**      **MGA Mexico's Definitional Objections Are Frivolous and**

8                **Contrary to Prior Rulings**

9            MGA Mexico objects to a number of definitions in Mattel's Requests,

10  asserting that they are vague and will lead to overbroad Requests.  However, several

11  of the objections are contrary to prior rulings.  For example, the Discovery Master

12  has on multiple prior occasions compelled responses to discovery that use the term

13  "YOU," "YOUR," "MGA," "BRATZ," and "REFER OR RELATE TO" as those

14  terms are defined in these Requests.[21]

15          MGA Mexico objects to the terms "MACHADO," "VARGAS," and

16  "TRUEBA" because, it says, MGA Mexico does not have authority to demand

17  production by individuals acting on behalf of, pursuant to authority from or subject

18  to the control of Machado, Vargas or Trueba.[22]  MGA Mexico is obligated to

19  produce the documents that it has or may obtain.  Fed. R. Civ. P. 34(a)(1).  At most,

20  even if credited, MGA Mexico's objection merely means that some responsive

21  _____

22  dated April 28, 2009, Searcy Reply Dec., Exh. 4 at 45-46), let alone been shown to
    be meritorious.
23      [20]  Phase 2 Discovery Matter Order No. 22, dated April 28, 2009, Searcy Reply

24  Dec., Exh. 4 at 45-46.

25      [21]  Phase 2 Discovery Matter Amended Order No. 11, Searcy Motion Dec., Exh.
    19 at 2-3, 38; Phase 2 Discovery Matter Order No. 34, Searcy Reply Dec., Exh. 5 at
26  1, 11-12; Order Granting Mattel's Motion to Compel Production of Documents,
    dated January 26, 2007, Searcy Motion Dec., Exh. 20 at 3, 8-9.
27      [22]  Opposition at 9.

28

07975/3026474.1

-11-

1   documents may not be within its possession, custody or control.  It does not,

2   however, justify MGA Mexico's refusals and failures to produce what is in its

3   possession, custody or control and that it is otherwise legally required to produce.

4   In any case, this has nothing to do with the propriety of Mattel's Requests or

5   definitions.

6        Similarly meritless is MGA Mexico's objection to the term "FORMER

7   MATTEL EMPLOYEE."  MGA Mexico purports not to understand the word "join,"

8   as used in the term.  Merriam Webster defines "join" as "to come into the company

9   of" or "to associate oneself with,"[23] but MGA Mexico would define the word as

10  "work as a full time, salaried employee for."  This unjustifiable attempt to limit

11  MGA Mexico's obligations should be rejected.

12        MGA Mexico also attempts to impose an arbitrary limit on the term

13  "MATTEL DOCUMENTS," claiming that documents taken from Mattel, but not

14  authored by Mattel, are irrelevant.  The term as defined by Mattel, however, also

15  requires that the documents also be "in the possession of MGA or any FORMER

16  MATTER EMPLOYEE."[24]  The mere fact of MGA's possession of documents taken

17  from Mattel, regardless of authorship, is probative evidence of MGA's theft as well

18  as its intent to steal information from Mattel.  Indeed, Mattel is entitled to the

19  documents "authored" by MGA and others because their incorporation and use of

20  Mattel's information will also show the use of Mattel's information, an issue that is

21  directly relevant to Mattel's trade secret theft and RICO claims.  MGA Mexico's

22  frivolous objection should accordingly be overruled.

23   **B.    Mattel's Requests Seek Relevant And Appropriate Information**

24        MGA Mexico objects to a few specific Requests as purportedly

25  irrelevant and/or overbroad.  None of its examples is well-taken.  All are infected by

26

27  [23] Webster's Ninth New Collegiate Dictionary at 651 (9th Ed. 1989).

28  [24] First Set of Requests, Searcy Motion Dec., Exh. 1 at 5.

07975/3026474.1

1    MGA Mexico's mistaken belief that the "propriety of a request is not judged by

2    whether the request relates to a relevant topic, but whether the request, as worded,

3    *seeks only relevant information*" and "is necessary."[25]  That simply is not the legal

4    standard, as Judge Larson has ruled.[26]  Under the correct standards, Mattel's

5    Requests are proper, and MGA Mexico does not even attempt to show otherwise.

6             As explained in Mattel's Motion, Request No. 52 from Mattel's Second

7    Set of Requests[27] seeks information to refute MGA's own allegation that Mattel

8    attempted "to interfere with MGA's acquisition of or investment in [ZAPF]."[28]

9    MGA Mexico complains that the Request might encompass any communication

10   with a governmental agency about something outside the scope of MGA Mexico's

11   claims.  But MGA Mexico does not indicate that it even has such documents, and its

12   unsubstantiated speculation is no basis to withhold documents that clearly relate to

13   MGA Mexico's own allegations.

14            Request Nos. 1-6 from Mattel's Third Set of Requests seek information

15   relating to the location of MGA Mexico information are pertinent to the scope of

16   MGA Mexico's search of documents, which is discoverable under <u>Fed. R. Civ. P.</u>

17   <u>26(b)(1)</u>.[29]  MGA Mexico argues that the request is overbroad because the time

18   frame of the Requests begins prior to the existence of MGA Mexico.  But given that

19   MGA Mexico has yet to even search for documents, this argument is speculative

20   and misplaced.  Moreover, if it ultimately turns out to be true that MGA Mexico

21

22

23   _____

         [25]  Opposition at 6 (emphasis added).

24   [26]  July 9, 2009 Order Granting in Part Mattel's Motion Re Discovery Master
     Order No. 27, Searcy Reply Dec., Exh. 1 at 4 ("Mattel need not show that the

25   evidence sought is 'necessary to the claims or defenses.'").

26   [27]  Incorrectly cited in Opposition at n.28 as Third Set of Requests, No. 52.
     [28]  Motion at 25.

27   [29]  Motion at 30.

28

EXHIBIT 1
PAGE 19

1   does not have documents from this time period, then it has nothing to produce and is

2   not under any burden.

3          MGA Mexico takes issue with Request No. 13 from Mattel's First Set,

4   which seeks "[a]ll DOCUMENTS given, sent, or transmitted from or shared by

5   YOU to any FORMER MATTER EMPLOYEE prior to April 20, 2004."[30]

6   According to MGA Mexico, this Request might include "birthday cards."[31]  As

7   explained in Mattel's Third Amended Answer and Counterclaims ("TAAC"),

8   Machado, Vargas and Trueba conspired with MGA, Larian and others before

9   resigning their positions with Mattel on April 19, 2004.[32]  Their communications

10  with these defendants while still employed by Mattel are plainly highly relevant.

11  Given that Mattel has alleged that defendants induced these former Mattel

12  employees to steal Mattel's trade secrets and then work for MGA Mexico, *any*

13  communications between these individuals and MGA Mexico prior to their sudden

14  departure from Mattel--even a birthday card--are probative.  That MGA Mexico

15  communicated with Machado, Vargas, and Trueba prior to their sudden and

16  coordinated departure to work for MGA Mexico is itself an operative fact that may

17  tend to show the timing, length and extent of the wrongdoing and disloyalty.  The

18  timing and nature of these individuals' relationships--personal, professional or

19  familial--to those at MGA are relevant to a host of relevant issues, including the

20  extent and nature of their associations and the circumstances leading up to the trade

21  secret thefts and their departures from Mattel.  Indeed, these individuals' <u>failures</u> to

22  disclose such matters to Mattel while they were Mattel employees would constitute

23  breach of contract and breach of duty of loyalty as alleged in Mattel's TAAC

24

25      [30]   Opposition at 14-15.

26      [31]   Opposition at 15.
        [32]   Mattel's Third Amended Answer and Counterclaims ("TAAC"), dated May
27  22, 2009, Searcy Motion Dec., Exh. 16 at ¶ 48.

28

07975/3026474.1

EXHIBIT 1
PAGE 20

1   because ████████████████████████████████████████

2   ████████████████████████████████████████████

3   ████████████.[33]

4           Request Nos. 72-75 from Mattel's First Set, which MGA Mexico also

5   points to as examples of purportedly overbroad requests, are also appropriate in

6   scope.  These Requests seek "[a]ll DOCUMENTS that REFER OR RELATE TO

7   YOUR product or product line offerings, or contemplated or proposed product or

8   product line offerings…and all DOCUMENTS that REFER OR RELATE TO

9   changes or amendments…thereto" beginning in 2004.  As Mattel alleges in its

10  TAAC, MGA Mexico used trade secret information stolen from Mattel to unfairly

11  compete with Mattel during the time period in these Requests.[34]  Mattel has also

12  specifically alleged that among the documents stolen by Machado, Vargas and

13  Trueba were global internal future Mattel product line lists that detailed anticipated

14  future Mattel products.[35]  Documents relating to MGA Mexico's product or product

15  line offerings, and particularly to any changes in product or product line offerings,

16  are probative of MGA Mexico's use of Mattel's trade secrets.  These Requests are

17  not overly broad, but seek information highly relevant to Mattel's case.

18  **VI.    MGA MEXICO SHOULD BE SANCTIONED FOR ITS REFUSAL TO**

19          **PRODUCE DOCUMENTS**

20          MGA Mexico, a named defendant and central figure in Mattel's

21  counterclaims, has yet to produce a single document in this litigation.  Far from

22  justifying its total failure to respond to discovery, MGA Mexico has only delayed

23  and attempted to obscure the fact that it has not produced documents.  And MGA

24

25  [33]   E.g., Conflict of Interest Questionnaire dated January 2, 2001, Bates Nos.

26  M0128330-M0128336, Searcy Reply Dec., Exh. 6.

27  [34]   TAAC, Searcy Motion Dec., Exh. 16 at ¶ 57.

    [35]   Id. at ¶ 55.

28

    07975/3026474 1

                                      -15-

1 | Mexico's Opposition brief demonstrates that it will continue to employ the same
2 | tactics for as long as it can.  Mattel respectfully requests that MGA Mexico be
3 | sanctioned in the amount of $5000, both as partial reimbursement for the fees and
4 | costs Mattel has incurred in bringing this motion and as a much needed deterrent.

### Conclusion

6 |       For the foregoing reasons, Mattel respectfully requests that its motion
7 | be granted in its entirety.

9 | DATED:  July 27, 2009       QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

11 |       By /s/ Marshall M. Searcy III
12 |         Marshall M. Searcy III
        Attorneys for Mattel, Inc.

07975/3026474.1

-16-
REPLY ISO MATTEL'S MOTION TO COMPEL MGA MEXICO TO PRODUCE DOCUMENTS

EXHIBIT 1
PAGE 22

# EXHIBIT 2

Case 2:04-cv-09049-SGL-RNB     Document 1414     Filed 12/31/2007     Page 1 of 24

1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      John B. Quinn (Bar No. 090378)
2     (johnquinn@quinnemanuel.com)
      Michael T. Zeller (Bar No. 196417)
3     (michaelzeller@quinnemanuel.com)
      Jon D. Corey (Bar No. 185066)
4     (joncorey@quinnemanuel.com)
    865 South Figueroa Street, 10th Floor
5   Los Angeles, California  90017-2543
    Telephone:  (213) 443-3000
6   Facsimile:   (213) 443-3100

7   Attorneys for Mattel, Inc.

8

9                   UNITED STATES DISTRICT COURT

10                 CENTRAL DISTRICT OF CALIFORNIA

11                          EASTERN DIVISION

12  CARTER BRYANT, an individual,        CASE NO. CV 04-9049 SGL (RNBx)
                                         Consolidated with
13            Plaintiff,                 Case No. CV 04-09059
                                         Case No. CV 05-02727
14       vs.
                                         **DISCOVERY MATTER**
15  MATTEL, INC., a Delaware
    corporation,                         **[To Be Heard By Discovery Master
16                                       Hon. Edward Infante (Ret.) Pursuant
              Defendant.                 To The Court's Order of December 6,
17                                       2006]**

18  AND CONSOLIDATED ACTIONS             [CORRECTED] REPLY IN SUPPORT
                                         OF MATTEL, INC.'S MOTION TO
19                                       COMPEL RESPONSES TO
                                         INTERROGATORIES (NOS. 27, 28,
20                                       29, 30, 31, 32, 33, 36, 37, 38, 39, 40, 42,
                                         45 AND 47) BY CARTER BRYANT

21                                       Date:   January 3, 2008
22                                       Time:   1:30 p.m.
                                         Place:  JAMS
23                                               Two Embarcadero Center
                                                 Suite 1500
24                                               San Francisco, California

25                                       Phase 1:
                                         Discovery Cut-off:  January 28, 2008
26                                       Pre-trial Conference:  May 5, 2008
                                         Trial Date:  May 27, 2008
27

28

07209/2336922.1

                                         REPLY IN SUPPORT OF MOTION TO COMPEL

EXHIBIT 2
PAGE 23

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT ......................................................................................................... 3

I.   MATTEL'S MOTION WAS PROPERLY FILED AND IS NOT MOOT. ............................................................................................. 3

   A.   Bryant Did Not Serve His Supplemental Responses When Promised, And It Was Only After Bryant's Promised Deadline Had Lapsed That Mattel Filed This Motion. ...................................... 3

   B.   Mattel's Motion is Not Moot; Bryant Advised Mattel That Even When His Supplemental Responses Finally Arrived, They Were Going to Be Incomplete, and They Remain Incomplete As of Today. ............................................................................................ 4

II.   BRYANT'S SPECIFIC OBJECTIONS ARE WITHOUT MERIT ................. 8

   A.   The "50 Interrogatory Limit" Objection is Meritless, and Bryant Has Waived It In Any Event. ............................................................. 8

   B.   Bryant's Specific Objections To Mattel's Interrogatories Are Meritless. .......................................................................................... 9

      1.   Mattel's Contention Interrogatories Seeking "All Facts" Are Proper. ............................................................................ 9

      2.   Mattel Does Not Seek Information Outside Of Bryant's Possession, Custody Or Control. ................................................ 10

      3.   Bryant's Claim That Interrogatory No. 32 Poses An Improper Hypothetical Is Without Merit. ..................................... 10

      4.   Mattel's Interrogatories Are Not Vague, Overbroad or Unduly Burdensome. ............................................................... 11

      5.   Limiting Mattel to Discovery Regarding Tangible Drawings As Opposed to Intangible Property Does Not Provide a Sufficient Response. ........................................... 13

      6.   Mattel Did Not Agree That Bryant Could Withhold Responsive Information Regarding Computer Drives To Which He Had Access. ............................................................... 14

      7.   Bryant's Objections To Mattel's Interrogatory About The Identity of Bryant's Bank Accounts Are Improper. ................. 15

      8.   Bryant's Response to Interrogatory No. 45 Is Neither Credible Nor Complete. .......................................................... 16

07209/2336922.1

-i-

REPLY IN SUPPORT OF MOTION TO COMPEL

EXHIBIT 2
PAGE 24

III.    MONETARY SANCTIONS SHOULD BE IMPOSED AGAINST
        BRYANT........................................................................................... 18

CONCLUSION........................................................................................... 19

07209/2336922.1

-ii-

EXHIBIT 2
PAGE 25

1

## **TABLE OF AUTHORITIES**

2                                                                                              **Page**

3
                                                          Cases
4
A. Farber and Partners, Inc. v. Garber,
5        234 F.R.D. 186 (C.D. Cal. 2006) ...................................................... 16

6    Auto Meter Prods., Inc. v. Maxima Technologies & Sys., LLC,
7        2006 WL 3253636, at *2-5 (N.D. Ill. 2006) ...................................... 10

8    CEH, Inc. v. FV "Seafarer",
         153 F.R.D. 491 (D.R.I. 1994) ............................................................ 16
9
     Doe v. Karadzic,
10       1997 WL 45515, at *6 (S.D.N.Y. 1997) .............................................. 7

11   E.E.O.C. v. V & J Foods, Inc.,
12       2006 WL 2947474, at *1 (E.D. Wis. 2006) ........................................ 8

13   G.D. v. Monarch Plastic Surgery,
         2007 WL 201150, at *9 (D. Kan. 2007) ............................................ 10
14
     Geico Casualty Co. v. Beauford,
15       2007 WL 1192446, at *2 (M.D. Fla. 2007) ........................................ 8

16   In re Heritage Bond Litigation,
17       2004 WL 1970058, *5 n.12 (C.D. Cal. July 23, 2004) ...................... 16

18   Ippolito v. Goord,
         2007 WL 2769503, at *1-2 (W.D.N.Y. 2007) .................................... 8
19
     Keith H. v. Long Beach Unified School,
20       228 F.R.D. 652 (C.D. Cal. 2005) ...................................................... 16

21   Kendrick v. Sullivan
22       125 F.R.D. 1 (D.D.C. 1989) .............................................................. 12

23   King v. Georgia Power Co.,
         50 F.R.D. 134 (N.D. Ga. 1970) ........................................................ 13
24
     Krawczyz v. City of Dallas,
25       2004 WL 614842, at *3 (N.D. Tex. 2004) .................................. 13, 15

26   Miller v. National School of Health Technology,
27       73 F.R.D. 628 (D. Pa. 1977) .............................................................. 7

28

07209/2336884.1

EXHIBIT 2
PAGE 26

1
2      Rhea v. Uhry,
           2007 WL 926908, at *2 (D. Conn. 2007) .................................................... 8
3      Samuels v. Huff,
           2007 WL 1237961, at *1 (W.D. La. 2007) ................................................. 8
4
5      Seff v. General Outdoor Advertising Co.,
           11 F.R.D. 597 (N.D. Ohio 1951) ............................................................... 13
6      Sloan v. Oakland Police Dept.,
           2006 WL 753013, at *3 (N.D. Cal. 2006) ................................................. 7
7
8      Sommers v. West,
           1997 WL 772783, *1 (S.D.N.Y. 1997) ..................................................... 17
9
10     Sotelo-Camacho,
           2006 WL 3709613, at *1 (N.D. Ga. 2006) ................................................ 8
11     Trane Co. v. Klutznick,
           87 F.R.D. 473 (D. Wis. 1980) .................................................................... 7
12
13     Zanowic v. Reno,
           2000 WL 1376251, at *3, n.1 (S.D.N.Y. 2000) ........................................ 7
14
15                                            Statutes
16     Federal Rule of Civil Procedure 69 ......................................................................... 17
17
18
19
20
21
22
23
24
25
26
27
28

07209/2336834.1

EXHIBIT 2
PAGE 27

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

Defendants' discovery strategy in this case is to stonewall, delay, and retreat. Early in the litigation, that strategy simply increased the financial burden for all parties. But at this late stage, in the face of a January 28, 2008 discovery cutoff date, Mattel has neither an obligation nor a willingness to see every one of defendants' stall strategies through to its conclusion. So Mattel filed the instant motion before defendants had finished their retreat.

The interrogatories at issue here were served on defendants no later than October 2007 (though most date back to June 2007). Mattel's counsel timely met and conferred as required. Bryant's counsel promised to serve supplemental responses on December 11, 2007, but carefully hedged their promise by indicating that the information in those supplemental responses would continue to be limited by the objections set forth therein. When December 11 arrived and no supplemental responses were served, Mattel was left with no choice but to file the instant motion. Not only were the promised supplemental responses inevitably going to be incomplete, they did not even show up when promised.

Now that the promised supplemental responses have been served, Bryant contends that this motion is moot. Not true. The service of Bryant's supplemental responses only cured one of the two problems. Bryant's responses are still incomplete because nowhere do the supplemental responses indicate that all responsive information has been provided. Nor does Bryant's opposition claim this as to even a single response. In fact, the responses make clear the opposite is true -- that they are indeed still limited by his spurious objections. Accordingly, in order for Mattel to have full and complete discovery responses that it can rely upon to prepare for trial and at trial, this Court must actually overrule Bryant's meritless objections and require him to supplement his responses — even if only to affirm (although this is hardly even

07209/2336922.1

-1-

REPLY IN SUPPORT OF MOTION TO COMPEL

EXHIBIT 2
PAGE 28

1   plausible) that no responsive information has been withheld on the basis of one or more

2   of his overruled objections.

3            With these interrogatories, Mattel is not asking Mr. Bryant to identify what

4   his preschool classmates had for lunch in 1973.  In most, Mattel is asking Mr. Bryant to

5   identify the facts, witnesses and documents—yes, *all* the facts, witnesses and

6   documents—that support his key contentions — things like the key contentions Bryant

7   chose to reveal (because it suited his purposes) in his and MGA's joint Motion to

8   Overrule Mattel's Relevance Objection and Compel Discovery Relevant to Mattel's

9   Employee Agreements, dated December 19, 2007, which do *not* appear anywhere in his

10  supplemental responses, dated December 17, 2007.  This is a high-stakes litigation

11  involving years of conduct and millions upon millions of dollars.  Mr. Bryant's

12  attorneys are some of the smartest and highest-priced lawyers in the world.  Their

13  careful, deliberate litigation tactics are what necessitated the filing of this motion.

14  When Mattel uses an undefined term in discovery, they object it is vague.  When Mattel

15  defines the term, they object to the definition and refuse to apply it.  It's a game of

16  "heads we win and tails you lose," played with the *Federal Rules of Civil Procedure.*

17  Mattel should not be required to wait until trial to find out exactly what information

18  defendants have failed to produce in response to Mattel's proper discovery requests -- to

19  find out just how Defendants are planning to sandbag Mattel at trial.

20           This motion—and Mattel's request for monetary sanctions—should be

21  granted.  When Mr. Bryant's lawyers stand up to address the jury, they will not stand

22  mute.  What they say will contain more information than the few paragraphs contained

23  in the Supplemental Responses they served.  Mattel is entitled to full and complete

24  discovery responses to avoid surprise at trial; if Mattel had not filed the instant motion,

25  it would be certain to hear at least one of Mr. Bryant's lawyers argue later that  "if

26  Mattel wanted this information before, it could have moved to compel."  The Court

27  should grant the instant motion and preclude such an argument later.

28

-2-

REPLY IN SUPPORT OF MOTION TO COMPEL

EXHIBIT 2
PAGE 29

## Argument

**I.    MATTEL'S MOTION WAS PROPERLY FILED AND IS NOT MOOT.**

In the first half of his opposition, Bryant makes two primary arguments: (1) that Mattel's motion to compel responses to interrogatories was premature in light of Bryant's promise to supplement his answers, and (2) that because Bryant served supplemental responses to Mattel's Interrogatories on December 17, 2007, Mattel's motion is now moot. Both arguments are without merit. Bryant reasserts his improper objections in his supplemental responses, and, as Bryant does not dispute, his supplemental responses continue to be limited by these objections.

**A.    Bryant Did Not Serve His Supplemental Responses When Promised, And It Was Only After Bryant's Promised Deadline Had Lapsed That Mattel Filed This Motion.**

As a result of the meet and confer discussions held on November 27, December 4 and December 5, Bryant's counsel agreed to provide partial supplemental responses on or before December 11, 2007. He did not do so. Instead, he wrote to Mattel's counsel on the day they were due and advised that he would need more time.   In light of the fact that Mattel had engaged in three separate meet and confer discussions, had already suffered through months of delay, and is facing a January, 2008 discovery cutoff date, Mattel did not agree to wait and see if Bryant's counsel could make his second promised deadline. So on December 13, 2007, Mattel filed the instant motion.

As it turned out, Bryant's counsel did not meet his second promised deadline either. On December 14, he again wrote a letter indicating that he would need more time—and not just for some of the responses, but for *all* of the responses.

07209/2336922.1

-3-

REPLY IN SUPPORT OF MOTION TO COMPEL

EXHIBIT 2
PAGE 30

1  Were it not for the filing of the motion, Mattel might *still* be waiting for the

2  promised supplemental responses.   The motion was not premature.[1]

3       **B.**    **Mattel's Motion is Not Moot; Bryant Advised Mattel That Even**

4              **When His Supplemental Responses Finally Arrived, They Were**

5              **Going to Be Incomplete, and They Remain Incomplete As of**

6              **Today.**

7       Bryant served Responses and Objections to Mattel's Revised Third and

8  Amended Fourth Sets of Interrogatories on November 15, 2007.[2] He served

9  Responses and Objections to Mattel's Fifth Set of Interrogatories on November 21,

10  2007, and Responses and Objections to Mattel's Sixth Set on November 26, 2007.[3]

11  As set forth in Mattel's Motion, Bryant's responses were inadequate.   His answers

12  consisted of *43* pages of objections and *3* pages of responses.   He stiffed Mattel by

13  providing no response at all to most interrogatories, including Nos. 27, 28, 29, 30,

14  32, 39, 42 and 47.   And while Bryant provided a partial response to a few

15  interrogatories, those responses were not complete, as his attorneys made clear

16

17

18

19     [1]  Bryant tells the Court that he initially "stated that he would serve these

20  supplemental responses on Friday, December 14, 2007." Opp. at 5.  As shown by

21  the correspondence between the parties, that is false.  See Letter from B. Dylan
   Proctor to Matthew Werdegar, dated December 6, 2007, Proctor Dec., Exh. 11;

22  letter from Matthew Werdegar to B. Dylan Proctor, dated December 11, 2007,

23  Proctor Dec., Exh. 12.
       [2]  Bryant's Responses and Objections to Mattel's Revised Third Set of

24  Interrogatories, dated November 15, 2007, Proctor Dec., Exh. 5; Bryant's Responses

25  and Objections to Mattel's Amended Fourth Set of Interrogatories, dated
   November 15, 2007, Proctor Dec., Exh. 6.

26      [3]  Bryant's Responses and Objections to Mattel's Fifth Set of Interrogatories,

27  dated November 21, 2007, Proctor Dec., Exh. 7; Bryant's Responses and Objections
   to Mattel's Sixth Set of Interrogatories, dated November 26, 2007, Proctor Dec.,

28  Exh. 8.

07209/2336922.1

-4-

**REPLY IN SUPPORT OF MOTION TO COMPEL**

EXHIBIT 2
PAGE 31

1  during the parties' meet and confers that all responsive information was not provided

2  as to nearly all of the interrogatories.[4]

3         Most of the Supplemental Responses (except No. 39, addressed

4  separately below) do now provide at least some textual responses, but still are

5  completely inadequate.   For example, Interrogatory No. 27 asks Bryant to identify

6  the Bratz inventions he claims he created prior to January 4, 1999, state the facts

7  that support his claim, and identify the relevant witnesses and documents.   Bryant's

8  original response was a stone wall consisting of two pages of meritless objections

9  (compound, vague, overbroad, burdensome, information not within Bryant's control,

10  over the 50 interrogatory limit, etc.) followed by the statement that "Bryant is

11  willing to meet and confer with Mattel regarding this interrogatory."

12         Bryant's supplemental response to Interrogatory No. 27 restates all of

13  these meritless objections *in their entirety*.  He then goes on to say, in substance,

14  that he is not making "any affirmative contentions" (whatever that means) as to

15  whether he invented anything, but if he did, it was before January, 1999 or after

16  October 20, 2000, and does not "fall within the scope of the term "inventions" as

17  used in [his contract with Mattel" (but does not say why not).   He then refers Mattel

18  to excerpts from his deposition testimony (though he again expressly hedges and

19  says that his response is not "limited to" the testimony appearing in the selected

20  excerpts).  Next, he identifies his mother, father, and three other people as having

21  "knowledge" (though, again, his response is limited and does not rule out the

22  possibility of other people having relevant knowledge), and lists a number of

23  documents that "may be relevant" (here again, he expressly does not limit the

24  universe of responsive documents to those identified).

25         As a result of all of the objections, doubletalk, and qualification, Mattel

26  has a response that is so completely hedged as to be useless.   It provides no

27

28  [4]   Letter from B. Dylan Proctor to Matthew Werdegar, dated December 6, 2007, (footnote continued)

-5-

REPLY IN SUPPORT OF MOTION TO COMPEL

EXHIBIT 2
PAGE 32

1  identification of *any*, let alone all, relevant Bratz inventions, essentially no

2  supporting facts (let alone all facts) supporting his contentions as to when he created

3  his inventions, no assurance whatsoever that all knowledgeable persons have been

4  identified, and no assurance whatsoever that all supporting documents have been

5  identified.  It is a complete waste.

6           Mattel is entitled to answers.  Firm, specific, complete answers,

7  verified under penalty of perjury, without qualification, objection, doubletalk, or

8  hedging, and on a date certain.  See, e.g., See Trane Co. v. Klutznick, 87 F.R.D.

9  473, 476 (D. Wis. 1980) (responding party must give "full and complete" answers to

10  interrogatories); see also Miller v. National School of Health Technology, 73 F.R.D.

11  628, 632 (D. Pa. 1977) ("Answers must be complete, explicit and responsive.").  See

12  also Sloan v. Oakland Police Dept., 2006 WL 753013, at *3 (N.D. Cal. 2006)

13  (where party provides evasive or incomplete responses to interrogatories,

14  propounding party may seek order to compel).   Interrogatories are not the same as

15  depositions; answering "I'm not sure" in a deposition can be acceptable; the same

16  answer may not be acceptable as an interrogatory response.  See, e.g., Zanowic v.

17  Reno, 2000 WL 1376251, at *3, n.1 (S.D.N.Y. 2000) (responding party is "under a

18  duty to make a reasonable inquiry" concerning the information sought in

19  interrogatories); Doe v. Karadzic, 1997 WL 45515, at *6 (S.D.N.Y. 1997) (same).

20  Mattel has repeatedly requested that Bryant indicate whether all responsive

21  information has been provided as part of the meet and confer process.  Bryant has

22  refused every single time, and continues to refuse as of this date — as of now, he has

23  not confirmed that his response to a single interrogatory at issue in this motion is not

24  limited by his objections.  Even a glance at his supplemental responses shows he is

25  continuing to withhold key information.

26

27

28  Proctor Dec., Exh. 11.

072D9/2336922.1                                -6-

EXHIBIT 2
PAGE 33

1           The mere service of supplemental responses does not render a motion

2  to compel moot if the responses still do not provide all responsive information.

3  Bryant's citations to authority for the contrary proposition are misplaced; none of the

4  cited cases addresses a situation where the supplemental interrogatory responses are

5  expressly limited by objections.  See, e.g., Ippolito v. Goord, 2007 WL 2769503, at

6  *1-2 (W.D.N.Y. 2007) (no indication that the supplemental interrogatory responses

7  continued to be limited by objections; to the contrary, defendants' supplemental

8  document production requests which contained objections did *not* moot the motion

9  to compel); Samuels v. Huff, 2007 WL 1237961, at *1 (W.D. La. 2007)  (motion to

10  compel was mooted where it was filed before defendants' deadline to respond had

11  passed, and no indication responses were incomplete); Geico Casualty Co. v.

12  Beauford, 2007 WL 1192446, at *2 (M.D. Fla. 2007) (motion addressed Rule 26

13  disclosures, not interrogatory responses limited by objections); Rhea v. Uhry, 2007

14  WL 926908, at *2 (D. Conn. 2007) (no indications responses incomplete); Sotelo-

15  Camacho, 2006 WL 3709613, at *1 (N.D. Ga. 2006) (same);  E.E.O.C. v. V & J

16  Foods, Inc., 2006 WL 2947474, at *1 (E.D. Wis. 2006) (same).

17           Mattel's motion is not moot.  In his recently-filed Motion to Overrule

18  Mattel's Relevance Objection and Compel Discovery Relevant to Mattel's Employee

19  Agreements, for example, Bryant argues for the first time that Bryant was not

20  required to disclose to Mattel any copyrighted materials he had developed on his

21  own, on the basis that such a disclosure requirement was omitted from Bryant's

22  agreements, but included in prior and subsequent agreements used by Mattel, which

23  he identifies with specificity.[5]  This is precisely the type of factual information

24  regarding Bryant's contentions that Mattel seeks, and that Bryant improperly refuses

25  to disclose.  Mattel needs real answers from Bryant about the foundation of his

26

27     [5]  See MGA's and Carter Bryant's Joint Motion to Overrule Mattel's Relevance Objection and Compel Discovery Relevant to Mattel's Employee Agreements, dated

28  December 19, 2007, at 3, Supp. Proctor Dec., Exh. 1.

-7-

EXHIBIT 2
PAGE 34

1   contentions, without objection, without qualification, without hedging, and without

2   doubletalk.  Mattel is entitled to responses it can rely upon at the trial of this matter.

3   **II.    BRYANT'S SPECIFIC OBJECTIONS ARE WITHOUT MERIT**

4           If there were any question as to whether Mattel's motion was moot after

5   reading the first half of Bryant's Opposition, Bryant puts that question to rest in the

6   second half, where he argues that his objections to Mattel's Interrogatories have

7   merit.  By arguing the merits of such objections, Bryant effectively demonstrates

8   the need to have those objections ruled upon in order to ensure that his responses are

9   full and complete.  Clearly, Mattel needs the Discovery Master to overrule Bryant's

10  objections and compel Bryant to provide complete answers, not limited by the

11  objections, if Mattel is to be able to rely on Bryant's responses at trial.

12  **A.    The "50 Interrogatory Limit" Objection is Meritless, and Bryant**

13         **Has Waived It In Any Event.**

14          Bryant claims in his responses that Mattel has purportedly exceeded the

15  fifty interrogatory limit set by the Court.  This objection is directly contravened by

16  the Discovery Master's September 5, 2007 Order, which provided that an

17  interrogatory that asks a defendant to "state all facts," "identify all persons with

18  knowledge of such facts," and "identify all documents" counts as a single

19  interrogatory.[6]

20          In any event, during the meet and confer process, counsel for Bryant

21  represented to Mattel that Bryant was *not* refusing to respond to any of Mattel's

22  interrogatories based on this objection.  Additionally, as Bryant has provided some

23  answer (albeit incomplete) for every interrogatory with the exception of No. 39, it is

24  clear that Bryant has waived any objection on this basis.

---

[6]  Order Granting Joint Motion for Protective Order, dated September 5, 2007, at 5-7, Proctor Dec., Exh. 13.

07209/2336922.1

-8-

EXHIBIT 2
PAGE 35

1      **B.**     **Bryant's Specific Objections To Mattel's Interrogatories Are**

2           **Meritless**

3           **1.**    **Mattel's Contention Interrogatories Seeking "All Facts" Are**

4                 **Proper.**

5          Interrogatories seeking the factual basis for a party's contentions have

6    been held proper time and time again.  <u>See, e.g.</u>, <u>G.D. v. Monarch Plastic Surgery</u>,

7    2007 WL 201150, at *9 (D. Kan. 2007) (noting that the <u>Federal Rules</u> expressly

8    authorize interrogatories seeking facts a party contends support its case); <u>Auto</u>

9    <u>Meter Prods., Inc. v. Maxima Technologies & Sys., LLC</u>, 2006 WL 3253636, at *2-

10   5 (N.D. Ill. 2006) (compelling defendant to answer interrogatories requesting "all

11   supporting facts, documents, exhibits, testimony and/or expert opinions" in support

12   of contentions).  Indeed, it is difficult to believe that Bryant is acting in good faith in

13   taking a contrary position.   What is being sought by Mattel with these

14   interrogatories has repeatedly been held proper.[7]

15          Bryant contends that Judge Larson altered the language of one of

16   Mattel's prior interrogatories in Order to make it "significantly narrowed" in scope.

17   <u>See</u> Opp. 15:23-28 ("Judge Larson changed the wording of the supplemental

18   interrogatory from the open-ended 'state all facts which support YOUR affirmative

19   defenses' language requested by Mattel to the much more limited 'state all facts upon

20   *which YOU intend to rely at trial* to support YOUR affirmative defenses'")

21   (emphasis in original).   There is no material difference in those two statements.  If

22   Bryant plans to introduce a fact at trial, Mattel needs to know what that fact is going

23   to be.  That is the very purpose of a contention interrogatory.  That is what Mattel is

24

_____

25     [7]  Bryant asserts that Mattel has objected to the use of the term "all facts" in
contention interrogatories.  While that is true, Mattel also provided 463 pages of

26   textual responses (not objections) to 14 interrogatories propounded by Bryant,

27   notwithstanding its objections to Bryant's discovery requests.  Bryant has done the
opposite here, providing only 33 total pages of responses to the 24 interrogatories of

28   Mattel set forth in the sets at issue here.  <u>See</u> Supp Proctor Dec., ¶ 4.

-9-

REPLY IN SUPPORT OF MOTION TO COMPEL

EXHIBIT 2
PAGE 36

1   seeking, nothing more.   At issue here is exactly the same type of request to which

2   Judge Larson previously compelled defendants to respond.   Judge Larson has not

3   "implicitly" rejected Mattel's requests, he has *explicitly* ordered defendants to

4   respond to them, "without objection."[8]

5        **2.**   **Mattel Does Not Seek Information Outside Of Bryant's**

6             **Possession, Custody Or Control.**

7           Bryant contends that Mattel's interrogatories seek information beyond

8   his possession, custody or control.[9]   This objection also is meritless.   Mattel

9   expressly confirmed during the pre-filing conference of counsel that it *only* seeks

10   information within Bryant's possession, custody or control.[10]   His continued

11   assertion of this objection as a basis for withholding information that *is* within his

12   possession, custody or control is thus improper, and should be overruled.

13        **3.**   **Bryant's Claim That Interrogatory No. 32 Poses An**

14             **Improper Hypothetical Is Without Merit.**

15           Interrogatory No. 32 asks whether Bryant contends that Mattel should

16   be denied injunctive relief if it prevails on its ownership claim.   This is not, as

17   Bryant suggests, an off-topic, "hypothetical" scenario that involves gross

18   speculation about facts or events outside of this litigation.   It seeks Bryant's current

19   position on a claim for relief within this litigation.   The Kendrick case, cited by

20   Bryant as contrary authority, is completely inapposite.   In that case, the court

21   concluded that the interrogatories at issue were improper because discovery had just

22   begun, and there were thus "few if any facts to which the plaintiffs' contentions or

23   legal theories may be applied." Kendrick, 125 F.R.D. 1, 3 (D.D.C. 1989).   The court

24   expressly noted that its "decision is based not so much upon the *thrust* of

25   [defendant's] questions as it is upon the present state of the record," and indicated

26   

27       [8]   Court's Order, dated December 3, 2007, Proctor Dec., Exh. 20.

    [9]   Opp. at 16.

28       [10]   Supp. Proctor Dec., ¶ 3.

EXHIBIT 2
PAGE 37

1 | that it was without prejudice to defendant's ability to resubmit those interrogatories

2 | "once discovery has generated an adequate record." Id. at 4 (emphasis in original).

3 | Not so in this litigation. The close of discovery is fast approaching and Bryant

4 | surely knows at this late date the facts upon which his contentions are grounded.

5 | The time has come for Bryant to disclose this information to Mattel. Interrogatory

6 | No. 32 is proper, and is not precluded by any authorities cited by Bryant.

7 |       **4.**    **Mattel's Interrogatories Are Not Vague, Overbroad or**

8 |           **Unduly Burdensome.**

9 |       Mattel's interrogatories contain terms that are specifically defined for

10 | Bryant in order to avoid misunderstanding.   For example, Mattel defines the term

11 | "BRATZ INVENTION" as "any representation, idea, concept, work, process,

12 | procedure, plan, improvement, design or other development, whether fixed in

13 | tangible form or not, that [refers or relates to Bratz]." See, e.g., Third Set of

14 | Interrogatories at 3:5-8.   This definition could not be more specific or precise.

15 | Bryant nevertheless objects to it as "vague and ambiguous." See, e.g.,

16 | Supplemental Response to Interrogatory No. 27 at 9:24-27. Bryant is simply being

17 | disingenuous with this boilerplate response, as he is when he answers the subject

18 | interrogatories using a completely different definition of his own creation. See, e.g.,

19 | id. at 10:16-20.  Bryant is simply feigning confusion about the term "invention" in

20 | order to avoid responding to an interrogatory that he does not want to answer.

21 |       Actually, if Mattel did *not* define its terms so specifically, Bryant might

22 | have an argument that Mattel's terms are vague and ambiguous.   But that would

23 | take away the flipside of the "specificity" argument, namely, that Mattel's specific

24 | and precise term definitions contain multiple words or components and therefore are

25 | "compound" -- another of Bryant's objections.  So, in Bryant's world, not only are

26 | Mattel's terms "vague and ambiguous" *despite* their specificity, but also

27 | "compound," "overbroad" and "unduly burdensome" *because* of their specificity.

28 | See, e.g., Supplemental Response to Interrogatory No. 27 at 9:24-27.   This is a

-11-

REPLY IN SUPPORT OF MOTION TO COMPEL

EXHIBIT 2
PAGE 38

1  whipsaw argument that, if accepted, offers Mattel no possible means to obtain

2  useable discovery responses.   Mattel's terms are clear.  Mattel's terms are not

3  compound.   Where there are multiple pieces of information sought in a single

4  interrogatory, all pieces of information are closely related, and therefore are of a

5  type that courts, including this one, have repeatedly found to be proper

6  subcategories of questions.  See, e.g., Order Granting Joint Motion for Protective

7  Order, dated September 5, 2007, at 5-7, Proctor Dec., Exh. 13.; see also, Krawczyz

8  v. City of Dallas, 2004 WL 614842, at *3 (N.D. Tex. 2004) (interrogatory asking

9  party to identify state facts and identify person with knowledge of such facts counts

10  as one interrogatory).

11            Mattel's Interrogatories also are not *unduly* burdensome.  Mattel

12  concedes that its interrogatories are burdensome.  All interrogatories are

13  burdensome to some degree because they require work to answer.  See, e.g.,

14  King v. Georgia Power Co., 50 F.R.D. 134, 136 (N.D. Ga. 1970) (overruling

15  defendant's objection that interrogatory was burdensome and oppressive, even

16  though preparation of answer would be time-consuming and costly, because

17  information was crucial to the issues of the suit and in exclusive custody of

18  defendant); Seff v. General Outdoor Advertising Co., 11 F.R.D. 597, 598 (N.D.

19  Ohio 1951) (overruling "overly burdensome" objection because value of

20  information to plaintiff clearly outweighed any annoyance or expense involved in

21  disclosure by defendant).  But this is no ordinary litigation involving narrow issues

22  and limited amounts in controversy.  This is a high-stakes, multi-party litigation

23  involving many years of conduct, numerous inventions, sophisticated litigants and

24  millions of dollars.  Mattel's interrogatories are targeted and directly relevant to the

25  claims at issue in this lawsuit, and each merits a full and complete response in order

26  for Mattel to fully and properly prepare for trial.  If there is any "balancing" to be

27  performed here (benefits vs. burden of responding), the scale clearly tips in favor of

28  granting Mattel discovery.  Mattel has not wasted any of its 50 interrogatories on

07209/2336922.1

-12-

REPLY IN SUPPORT OF MOTION TO COMPEL

EXHIBIT 2
PAGE 39

1  collateral or unimportant issues.  Mattel's interrogatories ask Bryant to identify the

2  factual underpinnings of his core contentions.  They could not be more directly

3  relevant or important.

4         Relatedly, Bryant's issue with Mattel's use of the defined term

5  "IDENTIFY" (which term is specifically and separately defined for each type of

6  usage in order to ensure absolute clarity) is that it presents an "insurmountable"

7  burden.  See Opp. at 19:1-2.  But again, specificity and comprehension in scope are

8  desirable qualities in an interrogatory, not undesirable ones.  Mattel's specific and

9  comprehensive interrogatories are admittedly burdensome, but they are not *unduly*

10  burdensome in the context of this sophisticated commercial litigation.   In any event,

11  Mattel's use of the term "IDENTIFY" in the instant interrogatories is identical to

12  Mattel's use of the term that was previously before the Court.[11]  Obviously then, the

13  Court has no problem with the burdens posed by such a term, else it would have

14  modified it appropriately.

15         5.    Limiting Mattel to Discovery Regarding Tangible Drawings

16              As Opposed to Intangible Property Does Not Provide a

17              Sufficient Response.

18         Bryant makes much of his offer to provide Mattel with interrogatory

19  responses limited to "tangible" drawings, if Mattel would agree not to seek

20  information relating to any "intangible" works of Bryant's.   See Opp. at 19:9-13.

21  This offer was unacceptable for three reasons.  First, intangible intellectual property

22  is properly the subject of discovery requests and indeed is the subject of Mattel's

23  claims.[12]  Aside from positing that Mattel "cannot be seriously contending" that it

24

25  [11]  Compare Mattel's Third Set of Interrogatories, dated June 7, 2007, at 5-7,
    Proctor Dec., Exh. 14 with Mattel's Revised Third Set of Interrogatories, dated
26  September 21, 2007, at 6-8, Proctor Dec, Exh. 1.

27  [12]  See Employee Confidential Information and Inventions Agreement between
    Mattel, Inc. and Carter Bryant, dated January 4, 1999 (defining "inventions" to
28  include "all discoveries, improvements, processes, developments, designs, know-
    (footnote continued)

07209/2336972.1

-13-

REPLY IN SUPPORT OF MOTION TO COMPEL

EXHIBIT 2
PAGE 40

1  owns Bryant's ideas (Mattel is so claiming), Bryant says nothing to refute this.

2  Second, the creation date of an intangible work may not coincide with the creation

3  date of a tangible related or derivative property -- both are relevant.  Accordingly,

4  Bryant's offer would confine Mattel's discovery to a narrower scope of issues than is

5  truly at issue in this case, and would potentially expose Mattel to surprise at the time

6  of trial.  No such limitation therefore should be permitted.  And in any case,

7  Bryant's supplemental responses notably do not even provide the information

8  regarding Bryant's "tangible" creations that he originally promised.[13]

9       **6.  Mattel Did Not Agree That Bryant Could Withhold**

10       **Responsive Information Regarding Computer Drives To**

11       **Which He Had Access.**

12       Bryant contends that Mattel's use of the term "IDENTIFY" in

13  connection with computer drives that he has had access to during the relevant time

14  period (Interrogatory Nos. 40 and 47) creates an improper multi-part interrogatory

15  that is unduly burdensome.  See Opp. at 22:11-21.  This objection is meritless.

16       As previously set forth, where the subparts of an interrogatory are all

17  related, courts have held that they do not require separate numbering.  See, e.g.,

18  Krawczyz, 2004 WL 614842 at *3.

19       Bryant further contends that Mattel agreed as part of the meet and

20  confer process that Bryant could provide an incomplete response to these

21  interrogatories.  See Opp. at 22:22-27.  No such agreement appears in the

22  confirming correspondence generated by either side, and the meet and confer letters

23  specifically address Bryant's responses to Interrogatory Nos. 40 and 47.  Nor would

24  Mattel have any reason to so agree.

25

26  how, data computer programs and formulae, whether patentable or unpatentable"),

27  Proctor Dec., Exh. 21.

28  [13]  See Bryant's Responses and Objections to Mattel's Revised Third Set of
Interrogatories, dated November 15, 2007, at 5-11, Proctor Dec., Exh. 5.

-14-

7.    **Bryant's Objections To Mattel's Interrogatory About The Identity of Bryant's Bank Accounts Are Improper.**

Interrogatory No. 39 requests that Bryant identify the financial institutions and accounts where any money relating to the Bratz properties would have been deposited.   Bryant objects on the basis of privacy.   This objection is meritless.

First, it is well-settled that a protective order precludes any further objection based upon the disclosure of information that otherwise might have privacy protection, at least in the context of the information at issue here.   See, e.g., A. Farber and Partners, Inc. v. Garber, 234 F.R.D. 186, 191 (C.D. Cal. 2006) ("Resolution of a privacy objection . . . requires a balancing of the need for the information sought against the privacy right asserted . . . *Here, plaintiff's need for defendant Garber's financial documents outweighs defendant Garber's claim of privacy, especially when the 'impact' of the disclosure of the information can be protected by a 'carefully drafted' protective order*.") (citing In re Heritage Bond Litigation, 2004 WL 1970058, *5 n.12 (C.D. Cal. July 23, 2004) ("Any privacy concerns Kasirer defendants have in their bank records and related financial statements are adequately protected by the protective order, and are not sufficient to prevent production in this matter"); CEH, Inc. v. FV "Seafarer", 153 F.R.D. 491, 499 (D.R.I. 1994) ("While a party does have an interest in nondisclosure and confidentiality of its financial records, this interest can be adequately protected by a protective order.")) (other citations omitted) (emphasis added); Keith H. v. Long Beach Unified School, 228 F.R.D. 652, 657 (C.D. Cal. 2005) ("Resolution of a privacy objection . . . requires a balancing of the need for the information sought against the privacy right asserted . . . 'a carefully drafted protective order [can] minimize the impact of this disclosure.'") (citations omitted) (emphasis added).   There is a Protective Order on file in this case that prevents use of any such information outside of this litigation.   That is adequate.

07209/2336922.1

-15-

EXHIBIT 2
PAGE 42

1    Second, Mattel is not asking that Bryant identify or produce a vast

2  quantity of sensitive financial records.  It is asking only that he identify the

3  institutions and accounts.  Bryant has absolutely no basis for withholding even that

4  identifying information.

5    Third, Bryant's purported authorities preventing pre-judgment

6  discovery of financial records are completely inapposite.  The <u>California Code of</u>

7  <u>Civil Procedure</u> has no application to this proceeding in Federal Court.  On its face,

8  <u>Federal Rule of Civil Procedure</u> 69 has no application to this stage of the litigation

9  because Mattel is not at this point attempting to execute on judgment, and nothing in

10  Rule 69 otherwise precludes prejudgment financial discovery of all kinds.  Further,

11  Bryant's reliance on <u>Sommers v. West</u>, 1997 WL 772783, *1 (S.D.N.Y. 1997), is

12  completely misplaced.  Bryant cites this case for the proposition that information

13  regarding a defendant's assets is generally irrelevant prior to the entry of a

14  judgment.[14]  He omits, however, that the court in <u>Sommers</u> stated that such

15  information is generally not relevant where "only compensatory damages are

16  sought."  <u>Id.</u>  In this case, by contrast, Mattel seeks punitive damages against Bryant.

17  And the information sought here is directly relevant to the merits of the claims

18  between Bryant and Mattel; it is not being sought to determine whether Bryant is

19  solvent.  This discovery is directly relevant and permissible in light of the issues in

20  this case.

21    **8.    <u>Bryant's Response to Interrogatory No. 45 Is Neither</u>**

22    **<u>Credible Nor Complete.</u>**

23    Interrogatory No. 45 asks that Bryant identify each Bratz product that

24  has been sold by him or his licensees, and for each product, identify the number of

25  sales, gross and net revenues, costs and net profits.  Given that one of the primary

26  issues in this case involves accounting for sales of products purportedly owned by

27

28  ———————————
   [14]  Opp. at 23.

-16-

EXHIBIT 2
PAGE 43

1  Bryant and/or MGA, one might expect a straightforward response on this topic.  Not

2  so.  Instead, Bryant has chosen to quibble with Mattel's definition of "Bratz product"

3  in order to avoid providing an answer.

4  　　　　"Bratz Product" is defined by Mattel in the Interrogatories as "any

5  product, whether two-dimensional or three-dimensional, and whether in tangible,

6  digital, electronic or other form, that is or has ever been sold that, in whole or in

7  part, that [refers or relates to Bratz]," including, but not limited to, any Bratz doll,

8  movie, TV show, or any other product that is or has ever been sold in any packaging

9  that includes the name Bratz.  See Mattel's Sixth Set of Interrogatories at 4:1-7.

10  Again, this definition could not be more specific or precise.  But, rather than

11  respond using Mattel's definition, Bryant argues that "a 'product' . . . is not ordinarily

12  understood to mean a unique, abstract idea, such as Bryant's Bratz idea," and so his

13  response it that "he has not sold any BRATZ PRODUCT."  See Opp. at 20:1-25.

14  　　　　Toy store shelves are filled with Bratz products.  Bryant is getting

15  substantial royalty checks from MGA for Bratz products.  So *somebody* clearly is

16  selling Bratz products, and Bryant is profiting from those sales.  And indeed, Bryant

17  is profiting from his sale to MGA of not only his claimed "Bratz idea," but also his

18  own Bratz products -- the Bratz works he created and purported to sell to MGA.[15]

19  Thus, Bryant's response is predicated upon not only a creative re-write of Mattel's

20  interrogatory, but also a creative re-write of his agreement with MGA.

21

22  　[15]  See, e.g., Agreement between Bryant and MGA dated as of September 18,

23  2000, at 3(b) (purporting to assign to MGA, for compensation, Bryant's rights to

24  "any inventions, and any documentation related thereto, and any other material,
whether written or oral, created by or for Bryant relating to the MGA Products,"

25  which are defined as "a line of dolls presently known as Bratz" in Paragraph 1),
Supp. Proctor Dec. Ex. 2; Modification and Clarification of the 2000 Agreement, at

26  3.2 (Bryant and MGA agreement purporting to confirm Bryant's assignment to

27  MGA of "all work done by Bryant prior to September 18, 2000, which became
known as the Bratz Property," including "drawings," "models," "prototypes" and

28  other products), Supp. Proctor Dec. Ex. 3.

07209/2336922.1

-17-

REPLY IN SUPPORT OF MOTION TO COMPEL

EXHIBIT 2
PAGE 44

1    The Court should again compel and full and complete response.  As
2  Mattel advised Bryant during the meet and confer process, Mattel has no objection
3  to Bryant pointing to royalty statements (as he does in his supplemental response) if
4  those statements provide all responsive information (and are produced to Mattel).
5  But to date, Bryant has never confirmed that they do.

6  **III.   MONETARY SANCTIONS SHOULD BE IMPOSED AGAINST**
7      **BRYANT**

8        Contrary to Bryant's assertions, Mattel did in fact meet and confer in
9  good faith on this motion.  The parties meet and conferred on three separate
10  occasions prior to the filing of Mattel's Motion.  During those conferences of
11  counsel, the parties discussed Bryant's objections to Mattel's interrogatories at
12  length, for hours.  Bryant confirmed his responses were limited by those objections
13  and said that his supplemental responses would be so limited as well.[16]  He then
14  served supplemental responses, albeit belatedly, which as advertised continue to
15  assert these baseless objections and limit his supplemental responses.

16        Although the parties had previously discussed Bryant's objections,
17  Mattel nonetheless wrote to Bryant following receipt of his supplemental responses
18  on December 19th and 20th (Bryant for some reason chose not to include one of
19  those letters in his opposition), again inviting him to state whether his responses
20  were complete.[17]  Bryant's attorneys were unwilling to confer absent the withdrawal
21  of Mattel's Motion.  Because Mattel's Motion was not mooted by service of Bryant's
22  incomplete supplemental responses, there was no basis for such a withdrawal.

23

24

---

25  [16]   See Letter from B. Dylan Proctor to Matthew Werdegar, dated December 6,
26  2007, Proctor Dec., Exh. 11.
27  [17]   See Letter from B. Dylan Proctor to Matthew Werdegar, dated December 19,
   2007, attached to Werdegar Dec., Exh. 2.  See letter from B. Dylan Proctor to
28  Matthew Werdegar, dated December 20, 2007, attached to Supp. Proctor Dec, Exh.
   4.

07209/2336922.1

-18-

REPLY IN SUPPORT OF MOTION TO COMPEL

EXHIBIT 2
PAGE 45

1    The information sought in these interrogatories is not only properly
2  discoverable, it goes to key issues at the heart of this case.  Bryant does not contend
3  otherwise.  Yet, as of this date, nowhere does Bryant state that even a single
4  interrogatory response is full and complete in the sense that all responsive
5  information has been provided -- not in his Opposition, nor in any of the meet and
6  confer letters, nor in any of the discovery responses themselves.  This motion was
7  necessitated by Bryant's stonewall and delay tactics, and sanctions therefore are
8  appropriate (and, for the same reasons, Bryant's unsupported request for
9  countersanctions is inappropriate and unwarranted).

10                                          **Conclusion**
11    For the foregoing reasons, the Discovery Master should (1) compel Carter
12  Bryant to answer completely Interrogatory Nos. 27, 28, 29, 30, 31, 32, 33, 36, 37, 38,
13  39, 40, 42, 45 and 47 in Mattel's Revised Third, Amended Fourth, Fifth and Sixth Sets
14  of Interrogatories, (2) overrule all of Bryant's objections, and (3) award sanctions in the
15  amount of $3,000.

16

17  DATED:  December 27, 2007          QUINN EMANUEL URQUHART OLIVER &
18                                     HEDGES, LLP

19                                     By  *B. Dylan Proctor /sa*
20                                         B. Dylan Proctor
                                           Attorneys for Plaintiff
21                                         Mattel, Inc.

22

23

24

25

26

27

28

07209/2336922.1

                                        -19-

EXHIBIT 2
PAGE 46

# EXHIBIT 3

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION

CARTER BRYANT, an
individual,

       Plaintiff,

  vs.

MATTEL, INC., a Delaware
corporation,

       Defendant.

AND CONSOLIDATED ACTIONS.

No. CV 04-9049 SGL (RNBx)
Consolidated with
Nos. 04-9059 and 05-2727

**CERTIFIED COPY**

TRANSCRIPT OF PROCEEDINGS

Los Angeles, California

Thursday, August 13, 2009

Reported by:
THERESA TRANG MCDOUGALL
CSR No. 11952

Job No. 116948

EXHIBIT 3
PAGE 47

1    I frankly didn't even contemplate having to try to

2    justify producing the privilege log within the time

3    frame that we did under these circumstances.

4         MR. O'BRIEN:  Let me explain what concerns me

5    here -- given the relatively tight time schedule that

6    we're trying to move forward on discovery -- is in

7    your letters you didn't give them a date certain on

8    when the privilege log would be produced; two, the

9    privilege log was produced within one day of them

10   filing the motion.

11        So the logical conclusion -- if you're

12   looking from the outside, it may be coincidence -- is

13   that to get the privilege log, they have to file the

14   motion.  And I don't want a situation where we have

15   to -- there are enough discovery motions on calendar

16   that one party or another party has to file a motion

17   to get something that they're entitled to -- you know,

18   whatever is going on in the meet-and-confer process,

19   and the fact that the motion was filed and the

20   privilege log came to within 24 hours -- suggests that

21   to get something, that could have been readily

22   prepared in a short period of time, you have to file a

23   motion.

24        Because what that does, that increases the

25   cost for your clients or for MGA, for Mattel, and

13

EXHIBIT 3
PAGE 48

1   we've got a -- you know, more substantive matters to

2   deal with, both on the discovery front but also on the

3   merits of the case.

4          And then the last thing is if you need more

5   time, we've been -- I think this applies to the

6   Court -- the District Court and certainly with respect

7   to the rulings that I've made -- is that whenever

8   either party has asked for more time and it's been

9   reasonable, I've tried to grant all of those requests,

10  even when they were opposed by one party or the other.

11  We try to give both parties additional time when they

12  needed it.

13         So if you need additional time and -- for

14  whatever reason the other party is not being

15  cooperative, I know we've had some e-mails and some

16  letters and that sort of thing, and I've tried to be

17  responsive.  So I'm going to deny the motion without

18  prejudice.  I'm not going to find that there was a

19  waiver here.  And I'm not going to assess sanctions.

20         But I am going to order that you meet and

21  confer within the next five days with Mattel to deal

22  with the sufficiency of the privilege log and get it

23  updated.  And, again, if there are issues in the

24  future that you need more time for production, you

25  need to bring it to my attention or the Court's

14

EXHIBIT 3
PAGE 49

1    MR. QUINN:  Then could I be heard on the -- on the

2  sanctions issue?

3    MR. O'BRIEN:  You really want to be heard on that?

4    MR. QUINN:  Well, I mean, the chronology that was

5  recited is not accurate, if that makes any difference.

6    MR. O'BRIEN:  I'm familiar with the chronology.  I

7  went through all the letters and --

8    MR. QUINN:  Okay.

9    MR. O'BRIEN:  -- and, you know, as I stated, I'm

10  very concerned about the fact that the privilege log

11  was produced 24 hours after Mattel had to file a

12  motion.  And that's why I'm denying -- with respect to

13  the sanctions, I'm denying it without prejudice, so

14  that if the meet-and-confer process isn't successful

15  and you don't feel like you got a privilege log that

16  was proper, you can bring a motion and request for

17  sanctions at that time.

18        Hopefully, everybody will agree that we've

19  got a fair -- a good privilege log.  And if there are

20  individual items on the privilege log that need to be

21  tested, a motion needs to be brought, then we can deal

22  with those separately.  But I'm not going to issue

23  sanctions today.

24        But I do encourage both sides, especially in

25  this case, that you've got to get the documents

18

1    produced and these things without having to file

2    unnecessary motions.  And I don't need -- no one else

3    needs to say anything else on it and it will be set

4    forth in the written order.  And I understand your

5    concerns.  It's something that we'll certainly keep in

6    mind for future motions.

7              All right.  Let's go to this issue of the

8    reconsideration of Order No. 27.

9              And Mr. Quinn, is that -- are you arguing

10   that --

11        MR. QUINN:  I think Mr. Zeller is going to argue

12   that.

13        MR. O'BRIEN:  Okay.

14        MR. ZELLER:  This has obviously been rather

15   extensively discussed in the briefing.  We didn't have

16   a reply, of course, on the supplemental briefing.

17   However, I think it's fair to say that we had

18   anticipated most of what was argued.  Of course, if

19   you have particular questions in terms of the issues

20   they raise.

21              But I think it is fair to say that the bulk

22   of the supplemental arguments that are now being

23   made -- or at least in the supplemental brief, I

24   should say -- are inconsistent with the July 9thth

25   order.  The Court quite clearly rejected the necessity

19

EXHIBIT 3
PAGE 51

1           I, the undersigned, a Certified Shorthand

2   Reporter of the State of California, do hereby certify:

3           That the foregoing proceedings were taken

4   before me at the time and place herein set forth; that

5   any witnesses in the foregoing proceedings, prior to

6   testifying, were duly sworn; that a record of the

7   proceedings was made by me using machine shorthand

8   which was thereafter transcribed under my direction;

9   that the foregoing transcript is a true record of the

10   testimony given.

11           Further, that if the foregoing pertains to

12   the original transcript of a deposition in a Federal

13   Case, before completion of the proceedings, review of

14   the transcript [   ] was [   ] was not requested.

15           I further certify I am neither financially

16   interested in the action nor a relative or employee

17   of any attorney or party to this action.

18           IN WITNESS WHEREOF, I have this date

19   subscribed my name.

20

21   Dated:     AUG 1 7 2009 _____

22

23          _____

24          THERESA TRANG McDOUGALL
               CSR No. 11952

25

EXHIBIT 3
PAGE 52