# EXHIBIT 1

EXHIBIT FILED UNDER SEAL

PURSUANT TO PROTECTIVE ORDER

# EXHIBIT 2

**From:**   Michael T Zeller

**Sent:**   Friday, August 07, 2009 12:30 PM

**To:**   'Hurst, Annette'

**Cc:**   'Molinski, William'; Dylan Proctor

**Subject:** RE: Carter Bryant v. Mattel Inc. and consolidated actions

Not on the day noticed for sure.  We will send you objections and can discuss the topics, but a number of them are improper in our view.

Michael T. Zeller
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Direct: (213) 443-3180
Main Phone: (213) 443-3000
Main Fax:  (213) 443-3100
E-mail:  michaelzeller@quinnemanuel.com
Web:  www.quinnemanuel.com

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above.  This message may be an attorney-client communication and/or work product and as such is privileged and confidential.  If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited.  If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

---

**From:** Hurst, Annette [mailto:ahurst@orrick.com]
**Sent:** Friday, August 07, 2009 12:28 PM
**To:** Michael T Zeller
**Cc:** Molinski, William; Dylan Proctor
**Subject:** RE: Carter Bryant v. Mattel Inc. and consolidated actions

Mike:  I've been in a meeting and I'm just seeing this.  Does this mean Mattel is not showing up for the deposition at all?

---

**From:** Michael T Zeller [mailto:michaelzeller@quinnemanuel.com]
**Sent:** Friday, August 07, 2009 10:01 AM
**To:** Hurst, Annette
**Cc:** Molinski, William; Dylan Proctor
**Subject:** Re: Carter Bryant v. Mattel Inc. and consolidated actions

We will be objecting to the notice in due course.

---

**From:** Hurst, Annette <ahurst@orrick.com>
**To:** Michael T Zeller

8/7/2009

EXHIBIT _2_

PAGE _16_

**Cc:** Molinski, William <wmolinski@orrick.com>; Dylan Proctor
**Sent:** Fri Aug 07 09:57:02 2009
**Subject:** Carter Bryant v. Mattel Inc. and consolidated actions

Mike:

In our 30b6 Notice set for Tuesday we requested that Mattel identify its designated witnesses for each topic 3 business days in advance. That was yesterday, but unfortunately we do not seem to have received any designation. Is Mattel willing to provide this information in advance of 30b6 deposition as reasonably requested in the Notice?

Annette



ORRICK

**ANNETTE L. HURST**
*Partner*

**ORRICK, HERRINGTON & SUTCLIFFE LLP**
SAN FRANCISCO

*tel* (415) 773-4585
*fax* (415) 773-5759
ahurst@orrick.com

www.orrick.com

"EMF <orrick.com>" made the following annotations.
----------------------------------------------------------------------------
============================================================

IRS Circular 230 disclosure:
To ensure compliance with requirements imposed by the IRS,
we inform you that any tax advice contained in this
communication, unless expressly stated otherwise, was not
intended or written to be used, and cannot be used, for
the purpose of (i) avoiding tax-related penalties under
the Internal Revenue Code or (ii) promoting, marketing or
recommending to another party any tax-related matter(s)
addressed herein.


============================================================

NOTICE TO RECIPIENT:  THIS E-MAIL IS  MEANT FOR ONLY THE
INTENDED RECIPIENT OF THE TRANSMISSION, AND MAY BE A
COMMUNICATION PRIVILEGED BY LAW.   IF YOU RECEIVED THIS E-
MAIL IN ERROR, ANY REVIEW, USE, DISSEMINATION,
DISTRIBUTION, OR COPYING OF THIS E-MAIL IS STRICTLY
PROHIBITED.   PLEASE NOTIFY US IMMEDIATELY OF THE ERROR BY
RETURN E-MAIL AND PLEASE DELETE THIS MESSAGE FROM YOUR
SYSTEM. THANK YOU IN ADVANCE FOR YOUR COOPERATION.

EXHIBIT 2
PAGE 17

For more information about Orrick, please visit
http://www.orrick.com/
============================================================
==============================================================================

EXHIBIT 2

PAGE 18

# EXHIBIT 3

EXHIBIT FILED UNDER SEAL

PURSUANT TO PROTECTIVE ORDER

# EXHIBIT 4

| | |
|---|---|
| **From:** | Michael T Zeller |
| **Sent:** | Friday, August 14, 2009 6:14 PM |
| **To:** | 'Hurst, Annette' |
| **Cc:** | 'Jason.Russell@skadden.com'; 'moverland@scheperkim.com'; 'acote@scheperkim.com'; 'todd.gordinier@bingham.com'; 'peter.villar@bingham.com'; 'Molinski, William' |
| **Subject:** | RE: Mattel v. MGA Entertainment |

Your email is incorrect, and we suggest that MGA comply with the meet and confer requirements. Your positions here also are contrary to prior rulings in this case as well as MGA's own conduct and positions.

Michael T. Zeller
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Direct: (213) 443-3180
Main Phone: (213) 443-3000
Main Fax: (213) 443-3100
E-mail: michaelzeller@quinnemanuel.com
Web: www.quinnemanuel.com

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

**From:** Hurst, Annette [mailto:ahurst@orrick.com]
**Sent:** Friday, August 14, 2009 5:20 PM
**To:** Michael T Zeller
**Cc:** Jason.Russell@skadden.com; moverland@scheperkim.com; acote@scheperkim.com; todd.gordinier@bingham.com; peter.villar@bingham.com; Molinski, William
**Subject:** RE: Mattel v. MGA Entertainment

Mike:

Last Friday I requested you to confirm that Mattel would designate its witness(es) as requested for a deposition noticed for Tuesday of this week. At that time, you informed me there would be objections. I then responded and inquired whether Mattel would produce any witness, and you responded not on the noticed dates. Later that day, Mattel served objections. Over the weekend I reviewed the objections, and sent an e-mail on Monday making clear that we still requested a witness and I requested dates for the deposition. You simply ignored that request.

Mattel was unjustified in failing to show up for the noticed deposition. If it had objections, it should have produced a witness subject to those objections or moved for protective order. It did neither. In fact, you did not even meet and confer about not showing up. The burden was on Mattel to seek relief, not on MGA. Instead, Mattel refused to designate its witnesses as requested, served last-minute objections, refused to show up without our consent to adjournment, and has refused to give dates since. No more meet and confer is required of MGA in these circumstances.

If you wish to indicate that you will provide the dates for deposition, please let me know. We do not intend to delay examination of witnesses on these issues any further.

Annette

EXHIBIT 4

PAGE 37

1

**From:** Michael T Zeller [mailto:michaelzeller@quinnemanuel.com]
**Sent:** Friday, August 14, 2009 5:09 PM
**To:** Hurst, Annette
**Cc:** 'Jason.Russell@skadden.com'; 'moverland@scheperkim.com'; 'acote@scheperkim.com';
'todd.gordinier@bingham.com'; 'peter.villar@bingham.com'; Molinski, William
**Subject:** Re: Mattel v. MGA Entertainment

Annette, you have not in fact sent a meet and confer request. Your email neither requested one nor addressed even
generally MGA's alleged grounds for a motion to compel on the topics, including the topics' purported relevance. Please
send me a request that contains sufficient information about MGA's position and authorities for us to meet and confer and
we can schedule a time to meet and confer.

---

**From:** Hurst, Annette <ahurst@orrick.com>
**To:** Hurst, Annette <ahurst@orrick.com>; Michael T Zeller
**Cc:** Russell, Jason D <Jason.Russell@skadden.com>; moverland@scheperkim.com <moverland@scheperkim.com>;
acote@scheperkim.com <acote@scheperkim.com>; Gordinier, Todd E. <todd.gordinier@bingham.com>; Villar, Peter N.
<peter.villar@bingham.com>; Molinski, William <wmolinski@orrick.com>
**Sent:** Fri Aug 14 16:06:46 2009
**Subject:** RE: Mattel v. MGA Entertainment

Mike:

It has now been a week since I initiated meet and confer on MGA's 30b6 Notice.  Is Mattel going to provide dates for
testimony or should MGA proceed with a motion to compel?

Annette

---

**From:** Hurst, Annette
**Sent:** Monday, August 10, 2009 1:57 PM
**To:** Michael T Zeller
**Cc:** 'Russell, Jason D'; 'moverland@scheperkim.com'; 'acote@scheperkim.com'; Gordinier, Todd E.; 'Villar, Peter N.';
Molinski, William
**Subject:** FW: Mattel v. MGA Entertainment

Mike:

On Friday you let me know for the first time that Mattel would not produce any witness at all tomorrow.  I suppose had I
not inquired I would be sitting there tomorrow morning waiting for you to show up.  In all events, I don't propose to litigate
these objections in advance, nor does MGA waive any position it may presently have. When will you produce the witness
or witnesses so we can ask our questions, make our record, and the move to compel on that record to the extent we
disagree with the objections once the witness has testified?

Annette

---

**From:** Andrea Hoeven [mailto:andreahoeven@quinnemanuel.com]
**Sent:** Friday, August 07, 2009 4:35 PM
**To:** Molinski, William; Hurst, Annette; tnolan@skadden.com; jrussell@skadden.com; moverland@obsklaw.com;
acote@obsklaw.com; todd.gordinier@bingham.com
**Subject:** Mattel v. MGA Entertainment

Dear Counsel,

EXHIBIT 4
PAGE 38

Please see attached Mattel, Inc.'s Objections to MGA Parties' Notice of Deposition of Mattel, Inc. and Proof of Service.

Thank you,
Andrea Hoeven
Assistant to Diane Hutnyan, Bridget Hauler and Crystal Nix-Hines
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Direct Phone: (213) 443-3316
Main Phone: (213) 443-3000
Main Fax: (213) 443-3100

Email: AndreaHoeven@quinnemanuel.com
Web: www.quinnemanuel.com

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above.  This message may be an attorney-client communication and/or work product and as such is privileged and confidential.  If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited.  If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

```
"EMF <orrick.com>" made the following annotations.
-----------------------------------------------------------------------------
============================================================
```

IRS Circular 230 disclosure:
To ensure compliance with requirements imposed by the IRS,
we inform you that any tax advice contained in this
communication, unless expressly stated otherwise, was not
intended or written to be used, and cannot be used, for
the purpose of (i) avoiding tax-related penalties under
the Internal Revenue Code or (ii) promoting, marketing or
recommending to another party any tax-related matter(s)
addressed herein.

```
============================================================
```

NOTICE TO RECIPIENT:  THIS E-MAIL IS  MEANT FOR ONLY THE
INTENDED RECIPIENT OF THE TRANSMISSION, AND MAY BE A
COMMUNICATION PRIVILEGED BY LAW.  IF YOU RECEIVED THIS E-
MAIL IN ERROR, ANY REVIEW, USE, DISSEMINATION,
DISTRIBUTION, OR COPYING OF THIS E-MAIL IS STRICTLY
PROHIBITED.  PLEASE NOTIFY US IMMEDIATELY OF THE ERROR BY
RETURN E-MAIL AND PLEASE DELETE THIS MESSAGE FROM YOUR
SYSTEM. THANK YOU IN ADVANCE FOR YOUR COOPERATION.

```
For more information about Orrick, please visit
http://www.orrick.com/
============================================================
=================================================================
```

EXHIBIT 4
PAGE 39

# EXHIBIT 5

EXHIBIT FILED UNDER SEAL

PURSUANT TO PROTECTIVE ORDER

# EXHIBIT 6

COPY

1  ROBERT F. MILLMAN, Bar No. CA 062152
   DOUGLAS A. WICKHAM, Bar No. CA 127268
2  KEITH A. JACOBY, Bar No. 150233
   LITTLER MENDELSON
3  A Professional Corporation
   2049 Century Park East, 5th Floor
4  Los Angeles, CA 90067.3107
   Telephone:   310.553.0308
5  Facsimile:   310.553.5583

6  Attorneys for Defendant and Cross-Claimant
   CARTER BRYANT
7

8              UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10

11  MATTEL, INC., a Delaware            Case No. CV 04-9059 NM (RNBx)
    Corporation,
12                                      HON. NORA M. MANELLA
               Plaintiff,
13                                      **DISCOVERY MATTER**
         v.
14                                      **DEFENDANT AND CROSS-
    CARTER BRYANT, an individual;       CLAIMANT CARTER BRYANT'S
15  and DOES 1 through 10, inclusive,   MEMORANDUM OF POINTS AND
                                        AUTHORITIES IN SUPPORT OF
16             Defendant.               HIS *EX PARTE* APPLICATION FOR
                                        AN ORDER COMPELLING THE
17                                      DEPOSITION OF LILY MARTINEZ**

18                                      [Local Rule 37-2.3]

19                                      DATE:  No Hearing Required
                                        ROOM:  540
20
                                        HON. ROBERT N. BLOCK,
21                                      U.S. MAGISTRATE JUDGE

22

23

24

25

26

27

28

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

EXHIBIT 6

PAGE 100

# I.
## INTRODUCTION

On January 18, 2005, Plaintiff and Counter-Defendant Mattel, Inc. ("Mattel") unilaterally, and without a hint of explanation, cancelled the January 26, 2005 deposition of Mattel employee Lily Martinez.  Martinez's deposition had been noticed *over two months ago*, and no prior objection, or hint of any problem whatsoever had been raised.  Why did Mattel lie in wait for almost two months before unilaterally canceling this deposition?  For one simple reason -- because Defendant and Cross-Claimant Carter Bryant ("Bryant") seeks evidence from Martinez that would further conclusively confirm that jurisdiction in this matter lies with this federal Court.  If Martinez offered such evidence at deposition on January 26, Mattel's January 31 motion to remand this action to state court would be dead on arrival.

Because Martinez is a current employee at Mattel's El Segundo facility, Mattel has no legal basis to withhold Martinez -- and it did not even bother to conjure one up. Rather, Mattel took what it apparently thought would be the path of least resistance – it simply refused to comply with discovery, in the apparent hope that the Court would remand the case to state court before the discovery dispute could be resolved, and more importantly, before Martinez' testimony could be tendered into the record to support the removal.

With the threshold issue of subject matter jurisdiction pending before the Court, Mattel must not be permitted, at its whim, to cancel the deposition of this critical witness.  By refusing to produce Martinez as noticed, Mattel is attempting to thwart Bryant's ability to obtain and introduce evidence relevant to the pending motion to remand, thereby abridging Bryant's statutory right as an out-of-state defendant to remove this case.  Bryant also cannot gather evidence relevant to both his defense and his cross claims against Mattel – something he is categorically entitled to do, and no small matter in a case where Mattel, his former employer, seeks to enjoin him from engaging in his livelihood.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310 553 0308

MEMO OF P&A'S ISO *EX PARTE* APPLICATION          1.          CASE NO. 04-9059 NM (RNBx)

EXHIBIT __6__

PAGE __101__

Mattel's motion for remand will be decided in less than two weeks, and if, as Bryant believes, Martinez has evidence directly contrary to Mattel's stated position in its remand papers, it is essential that such evidence be placed in the record now, and that the Court be given the full benefit of it prior to making its decision on jurisdiction. Only *ex parte* relief from this Court can ensure that this occurs. Bryant therefore respectfully requests that this application be granted and that Mattel be ordered to produce Martinez for her deposition as noticed.

## II.
## STATEMENT OF FACTS

### A.   Lily Martinez Would Give Testimony Damaging to Mattel's Motion for Remand, Prompting Mattel to Abruptly Cancel Her Deposition.

Lily Martinez is the creator of an abandoned Mattel toy project called "Toon Teens." A critical issue in this case is whether Bryant, an ex-Mattel employee, copied or otherwise used the "Toon Teens" drawings in connection with his creation of a toy concept that ultimately led to the manufacture of toys sold by Intervenor MGA Entertainment, Inc. ("MGA") under the trade name "Bratz." A July 2003 *Wall Street Journal* article that liberally quotes named and unnamed Mattel employees suggests Mattel believes this did, in fact, occur, and Mattel's lawsuit against Bryant for breach of contract, breach of fiduciary duty, conversion and breach of the duty of loyalty is drafted in a manner that clearly attempts to allow for such a theory to be pursued.[1]

Mattel has repeatedly **refused to disavow** this theory of liability, and instead has decided to pursue it, because it believes it can potentially use it to attempt to recover tens of millions of dollars in compensatory and punitive damages from Bryant. It also could be a possible basis to seek to revoke Bryant's assignment of his "Bratz" drawings to MGA, which Mattel could then arguably use as a basis to seek to

---

[1] This article and the other factual matters mentioned herein are on file with the Court in connection with Bryant's and MGA's papers opposing Mattel's second remand motion (including Defendants' declarations with attachments) and are incorporated herein by reference.

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

MEMO OF P&A'S ISO *EX PARTE* APPLICATION          2.                    CASE NO. 04-9059 NM (RNBx)

EXHIBIT 6

PAGE 102



1   enjoin the further sale of "Bratz" items.  To preserve its right to move forward on this
2   potentially powerful theory, Mattel has produced copies of pictures of the "Toon
3   Teens" in this litigation.  Mattel's counsel also questioned Bryant at deposition about
4   the "Toon Teens" designs at length in an apparent effort to help prove that he
5   supposedly copied them.  (*See* Declaration of Keith Jacoby in Support of Bryant's
6   Opposition to Mattel's Motion For Remand, ¶ 3)

7          In this action, Mattel has repeatedly and conveniently **refused to expressly**
8   **concede** that it is pursuing such a theory, for such an admission would conclusively
9   establish both the requisite amount in controversy for diversity jurisdiction, and the
10  existence of federal question jurisdiction.   Yet, in Mattel's Motion to Dismiss a
11  companion case, Bryant's federal declaratory relief judgment suit pending before this
12  Court, Mattel effectively **admits** that its state court Complaint against Bryant involves
13  the ownership of the "Bratz" copyright rights, and that more than $75,000 is in
14  controversy.   Through his federal declaratory relief complaint, Bryant seeks a
15  declaration that he is the "sole and true owner of all rights relating to 'Bratz.'"  In its
16  Motion to Dismiss that suit, however, Mattel argues that "[i]f the Court were to rule
17  on these issues, ... it would usurp that decision from the judge in the state court case."
18  (Mot. To Dismiss at 21).  Furthermore, Mattel asserts in that same motion that this
19  Court should refrain from ruling on the ownership of the "Bratz" rights, as requested
20  by Bryant, stating that those rights are not "in controversy" in the declaratory relief
21  case because Bryant's suit "asks this Court to resolve state law issues presented in
22  Mattel's state court case."  (*Id.* at 23 (emphasis added)).  While it is Bryant's position
23  that jurisdiction should be evident to the Court, Bryant believes the Martinez'
24  deposition will provide further proof that will establish jurisdiction beyond any doubt.
25  Mattel's apparent fear that Martinez's testimony will doom its remand motion has led
26  Mattel to engage in a jurisdictional game of hide-and-seek, which the discovery rules
27  are designed to avoid.

28  ///

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles CA 90067 3107
310 553 0308

MEMO OF P&A'S ISO *EX PARTE* APPLICATION          3.          CASE NO.  04-9059 NM (RNBx)

EXHIBIT 6
PAGE 103



**B.    Martinez' Deposition Was Properly Noticed Two Months Ago and
Then Abruptly and Unilaterally Cancelled By Mattel**

On November 24, 2004, Bryant properly noticed the deposition of Ms. Martinez for January 26, 2005. (*See* Decl. of Keith Jacoby In Support of *Ex Parte* Application For an Order Compelling the Deposition of Lily Martinez (hereinafter "Jacoby Decl.") ¶ 2, Exh. A)  This date – more than two months earlier – was provided by Mattel's counsel as a date on which Ms. Martinez was available, after claiming that she was unavailable during the entire month of December. (Jacoby Decl. ¶ 2)  **For almost two months,** Mattel did not object to the notice of deposition, nor the date or place of the deposition. (Jacoby Decl. ¶ 3)  On January 10, counsel for Bryant again confirmed in writing that the deposition would go forward on January 26. (Jacoby Decl. ¶ 4, Exh. C)  In a separate letter, counsel for Bryant also requested that Mattel bring the originals of the "Toon Teen" drawings produced earlier in this case to the Martinez deposition. (Jacoby Decl. ¶ 5, Exh. D)

Mattel informed Bryant *for the first time* on January 18 that "Ms. Martinez will not be appearing" for her deposition noticed for January 26, effectively canceling the deposition. (Jacoby Decl. ¶¶ 3, 6, Exh. E)  No reason or explanation was given for this last minute unilateral cancellation, and Mattel failed to meet and confer on this issue. (Jacoby Decl. ¶ 6, Exh. E)  Furthermore, Mattel neither moved for a protective order nor filed any motion to quash the deposition notice, presumably since no basis for doing so exists. (Jacoby Decl. ¶ 3)

### III.
### ARGUMENT

**A.    Good Cause Exists To Issue An Order Compelling Martinez'
Appearance For Deposition.**

A deposition noticed pursuant to FRCP 30(a)(1) is sufficient to compel a party or party-affiliated witness to attend his or her deposition.  Mattel's unilateral refusal to produce Ms. Martinez for her deposition is clearly improper and designed to hinder

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

MEMO OF P&A'S ISO *EX PARTE* APPLICATION            4.            CASE NO. 04-9059 NM (RNBx)

EXHIBIT __6__

PAGE __104__

1   the discovery of vital jurisdictional facts until it is too late.  This Court should issue an

2   order compelling Ms. Martinez to attend her deposition on January 26 as noticed –

3   and certainly before the remand hearing on January 31.

4       **B.    Bryant Has Satisfied the Meet and Confer Requirements of LR
              37-1 and 7-19.**
5

6           In November, 2004, counsel for Bryant and counsel for Mattel met and

7   conferred regarding the scheduling of several depositions in this matter, including that

8   of Lily Martinez.  (Jacoby Decl. ¶ 2)  In response to counsel for Bryant's expressed

9   desire to depose Ms. Martinez, counsel for Mattel informed counsel for Bryant that

10  Ms. Martinez was not available during the entire month of December, and proposed

11  January for the deposition.  (Jacoby Decl. ¶ 2)  Based on that conversation, on

12  November 24, 2004, counsel for Bryant properly noticed the deposition of Ms.

13  Martinez for January 26, 2005.  (Jacoby Decl. ¶ 2, Exh. A)  On December 10, 2004,

14  MGA also properly served a notice of deposition for Ms. Martinez for the agreed upon

15  day, January 26, 2005.  (Jacoby Decl. ¶ 2, Exh. B)  As such, Mattel has had notice of

16  the deposition of Ms. Martinez for almost **two months.**  (Jacoby Decl. ¶¶ 2, 3)  On

17  January 10, 2005, counsel for Bryant confirmed in writing that the deposition would

18  go forward on January 26.  (Jacoby Decl. ¶ 4, Exh. C)  In a separate letter, counsel for

19  Bryant also requested that Mattel bring the originals of the "Toon Teen" drawings

20  produced earlier in this case to the Martinez deposition.  (Jacoby Decl. ¶ 5, Exh. D)

21          Not once during the almost **two months** that Mattel was on notice of the

22  deposition of Ms. Martinez did Mattel object to the notice of deposition, or the date or

23  location of the deposition.  (Jacoby Decl. ¶ 3)  Nor did Mattel move for a protective

24  order or motion to quash the deposition notices pursuant to FRCP 26(c).  (Jacoby

25  Decl. ¶ 3)  Instead, Mattel sat idly by for two months until about 10 days prior to the

26  hearing on the motion to remand before it unilaterally declared, "Ms. Martinez will

27  not be appearing" for her deposition on January 26.  (Jacoby Decl. ¶ 6, Exh. E)

28          On January 20, counsel for Bryant sent another letter to counsel for Mattel in a

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310 553 0308

MEMO OF P&A'S ISO *EX PARTE* APPLICATION          5.          CASE NO. 04-9059 NM (RNBx)

EXHIBIT  6

PAGE  105

1  good faith attempt to resolve the issue prior to bringing the *ex parte* motion.  (Jacoby

2  Decl. ¶ 7, Exh. F)  Counsel for Mattel did not respond.  (Jacoby Decl. ¶ 7)  As such,

3  Bryant had no choice but to bring this *ex parte* motion to compel the deposition of Ms.

4  Martinez as noticed.

5        **C.**    **Bryant's Notice of Deposition Alone Is Sufficient To Compel**

6             **Lily Martinez to Attend Her Deposition.**

7        It is well-established that pursuant to FRCP 30, a notice of deposition is

sufficient to compel a party or party-affiliated witness to attend his or her deposition.
8
FRCP 30(a)(1); *Farquhar v. Shelden*, 116 F.R.D. 70, 72 (E.D. Mich. 1987) (stating
9
that "[a] notice for the taking of a deposition is all that is necessary to require
10
attendance of parties at their depositions").  The Federal Rules of Civil Procedure
11
allow testimony to be taken "of any person, including a party, by deposition upon oral
12
examination without leave of court . . . ."  FRCP 30(a)(1).  That deposition notice is a
13
court order that requires the deponent to appear on the scheduled date.  *See In re*
14
*Honda*, 106 B.R. 209, 211 (Bankr. D. Haw. 1989) ("The notice for taking deposition
15
is sufficient to compel the attendance of a witness who is a party to the action.")
16
(*citing Farquhar, supra*; *Continental Fed. Sav. & L. Ass'n. v. Delta Corp.,* 71 F.R.D.
17
697 (W.D. Okla. 1976); *Collins v. Wayland,* 139 F.2d 677 (9th Cir. 1944)).  As the
18
*Shelden* court noted, "[a] *notice* for the taking of a deposition is *all that is necessary* to
19
require attendance of parties at their depositions."  *Shelden*, 116 F.R.D. at 72
20
(emphasis added).[2]  A party "may avoid the notice" if there is an agreement of the
21
parties to alter the date or if the party files a motion to quash or for protection under
22
Rule 26(c).  *See generally Honda*, 106 B.R. at 211 ("[w]ithout such an order [granting
23
protection], a party is compelled to honor the notice . . . .  Failure of a party to attend
24
without first obtaining a protective order will subject that party to sanctions under
25
Rule 37(d).").
26

27  [2]    *See also Continental Fed. Sav. & L. Ass'n,* 71 F.R.D. at 699 ("The notice issued by Plaintiff is all that is necessary to require attendance of parties or their officers or managing agents and a subpoena was not required in the circumstances present.") (citing Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil § 2107)).

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA  90067 3107
310 553 0308

MEMO OF P&A'S ISO *EX PARTE* APPLICATION      6.      CASE NO.  04-9059 NM (RNBx)

EXHIBIT 6

PAGE 106

1       Here, Mattel was properly served with not one, but **two,** notices of deposition

2    first served as early as two months ago setting the deposition for Martinez on January

3    26. Mattel failed to object to either notice of deposition, and it did not file a motion

4    seeking relief from the appearance. It is Bryant's position that Mattel's unilateral, last

5    minute cancellation of the deposition is not only improper, but it warrants sanctions

6    under FRCP 37. At a minimum, though, the appropriate remedy is to require

7    Martinez' deposition to proceed as noticed.

8       Because a notice of deposition alone is sufficient to compel a party or party-

9    affiliated witness to appear for his or her deposition, this Court should issue an order

10   compelling Martinez to appear on January 26.

**D.    A Court Order Compelling Lily Martinez to Attend Her Deposition
is Necessary to Avoid Irreparable Injury and Undue Prejudice to
Bryant**

13       Absent a court order compelling Martinez to appear for her deposition on

14   January 26, Bryant will suffer irreparable injury and undue prejudice. As mentioned,

15   Martinez' deposition testimony is likely to elicit facts that bear on the resolution of the

16   pending motion to remand, scheduled to be heard on January 31. If, as anticipated,

17   Martinez testifies about her "Toon Teens" design and Mattel's contention that "Bratz"

18   is a copy of "Toon Teens," Martinez' testimony would be pertinent to the pending

19   remand motion. Specifically, her testimony could confirm that Mattel's state-law

20   claims are disguised federal copyright claims subject to complete preemption. If

21   pertinent, Bryant would seek leave to tender excerpts of that deposition transcript at

22   the hearing on January 31. In addition, Martinez' testimony is likely pertinent to

23   Bryant's removal on the basis of diversity since she could shed light on the amount

24   Mattel invested in "Toon Teens."

25       As a matter of law, the Court may receive deposition testimony in connection

26   with determining whether subject matter jurisdiction exists, *i.e.*, in the context of a

27   motion for remand or a Rule 12(b)(1) motion. *See, e.g., Edwards v. Chrysler Motor*

28   *Co., Inc.*, No. Civ. A. 00-1733, 2000 WL 1285340, at *2 (E.D. La. Sept. 8, 2000)

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

MEMO OF P&A'S ISO *EX PARTE* APPLICATION      7.             CASE NO. 04-9059 NM (RNBx)

EXHIBIT 6

PAGE 107

1    ("[B]efore considering the merits of the defendant's motion to dismiss, I must first

2    determine whether this court has subject matter jurisdiction, or whether the case

3    should be remanded.  In making a jurisdictional determination, a federal court is not

4    limited to the pleadings.  I may look to any record evidence, and may receive

5    affidavits, deposition testimony or live testimony concerning the relevant facts.")

6    (citing *Coury v. Prot*, 85 F.3d 244, 249 (5th Cir.1996)); *see also Vecchione v.*

7    *Wohlgemuth*, 426 F. Supp. 1297, 1303 (E.D. Pa.) (noting that, in challenge to

8    jurisdiction, "[a] briefing schedule was established, depositions were taken, and . . . a

9    hearing on the motion was held"), *aff'd*, 558 F.2d 150 (3d Cir. 1977).  Collecting

10    essential testimony prior to a remand hearing is analogous to gathering vital discovery

11    prior to a summary judgment hearing, which is undoubtedly proper. *Conkle v. Jeong*,

12    73 F.3d 909, 914 (9th Cir.1995); *Upper Deck Authenticated, Ltd. v. CPG Direct*, 971

13    F. Supp. 1337 (S.D. Cal. 1997).

14          Bryant and MGA have already pointed out in their papers opposing Mattel's

15    remand motion that one of the two bases for federal jurisdiction in this case is

16    complete federal preemption under the Copyright Act, 17 U.S.C. § 301(a), of Mattel's

17    state-law claims for, inter alia, conversion, breach of fiduciary duty, and unjust

18    enrichment. (Bryant's Opposition to Mattel's Second Motion for Remand at 15-19;

19    MGA's Joinder in Opposition to Mattel's Second Motion for Remand at 6-11.) These

20    claims are equivalent to federal copyright claims, come within the subject matter of

21    copyright, and thus are preempted by the Act's broad preemptive force. (MGA's

22    Joinder at 9-12.) As pointed out in said oppositions, most of Mattel's state-law claims

23    seek relief for Bryant's alleged provision to MGA of "Mattel's property" and claim

24    that Bryant "used and diverted Mattel property." (*Id.* at 8 (citing Compl. ¶¶ 12, 23,

25    30, 36, 41).)

26          In discovery, as mentioned, Mattel has explicitly refused to disavow the

27    contention that Bryant's "Bratz" drawings are derived from Mattel's "Toon Teens"

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

MEMO OF P&A'S ISO *EX PARTE* APPLICATION       8.       CASE NO. 04-9059 NM (RNBx)

EXHIBIT 6

PAGE 108

1   property,[3] which Mattel registered for copyright in late November 2003.[4]   Martinez'

2   deposition could therefore be crucial in establishing when she created "Toon Teens,"

3   what she knows about Bryant's alleged access to her designs, when her design was

4   reduced to practice, whether she (as the creator of "Toon Teens") believes that "Bratz"

5   is a copy of "Toon Teens," and other matters that would tend to flesh out Mattel's

6   theory that "Bratz" infringes on the copyrighted "Toon Teens" designs, which would

7   plainly unmask Mattel's state-law claims as preempted federal copyright claims.

8        In sum, Martinez' deposition is plainly relevant to this case, both as to the

9   merits and the propriety of removal.   Mattel's stalling and unauthorized attempt to

---

[3]      In discovery, Mattel has aggressively sought evidence seeking to prove   that 1)
Bryant's "Bratz" designs are not original, 2) he copied some old Mattel designs, and 3) as
mentioned, that it is allegedly entitled to disgorgement of all "Bratz"-related revenue from
Bryant and MGA since it allegedly was copied from "Toon Teens," which Martinez
designed.

      By way of further example, on October 11, 2004, Mattel produced correspondence
and a cooperation agreement between Mattel and Cityworld, the defendants in a lawsuit in
Hong Kong filed by MGA in which MGA alleges that Cityworld's doll, called "Funky
Tweens," infringes MGA's copyrights in "Bratz."   In that litigation, Cityworld recently
contended MGA that "Bratz" originated with Mattel, not Bryant, and that therefore MGA
does not own the rights to "Bratz."   Cityworld claimed that Mattel has been providing
information to assist the infringers in that case to establish that Bryant copied "Toon Teens"
from Mattel, so that Mattel allegedly owns the rights to "Bratz."   (Jacoby Ex. 7 (filed in
connection with Bryant's Opp. to Mattel's 2d Mot. for Remand).)

      On October 13, 2004, Mattel produced further evidence that it seeks to establish that
the "Bratz" dolls derive from "Toon Teens" because Bryant allegedly saw and copied the
drawings for that project.   Specifically, Mattel produced a letter dated August 2002
addressed to Mattel CEO Robert Eckert in which the anonymous author, who could very
well be Martinez, alleges that Bryant misappropriated the "Bratz" idea from Mattel. (Jacoby
Decl. ¶ 10 & Ex. 8.)

      On October 26, 2004, Mattel refused to stipulate that it was not contending that
Bryant copied "Bratz" from "Toon Teens" and to further confirm that Mattel did not claim
that the revenue stream from the sale of other Mattel doll products was wrongfully
encroached upon by "Bratz," because "Bratz" was allegedly derivative of "Toon Teens."
(Jacoby Decl. ¶ 6.)   The obvious import of Mattel's refusal is to protect its theory that
"Bratz" infringes Mattel's "Toon Teens" design created by Martinez.

[4]      See Bryant's Compl. for Decl. Relief Ex. B.  Interestingly, the registration was filed
on November 28, 2003, at least four years after the drawings were created, but
contemporaneous with the "late November 2003" date when Mattel says it first discovered
Bryant's alleged wrongdoing. (Compl. ¶12.)   This timing is important because copyright
registration is required for an infringement action.   17 U.S.C. § 411(a).   Copyright
infringement, of course, is a federal claim that provides federal question jurisdiction.

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

MEMO OF P&A'S ISO *EX PARTE* APPLICATION          9.                    · CASE NO. 04-9059 NM (RNBx)



EXHIBIT 6

PAGE 109

1    cancel the Martinez deposition without any justification is a thinly veiled attempt to

2    manipulate the Court's jurisdiction and should not be countenanced. The Court

3    should thus order Martinez to appear for her deposition as scheduled on January 26,

4    2005.

## IV.
## CONCLUSION

For all of the foregoing reasons, Carter Bryant respectfully requests that this

Court order Mattel to produce Lily Martinez for deposition as noticed on January 26,

2005.

Dated: January 20, 2005                      Respectfully submitted,

ROBERT F. MILLMAN
DOUGLAS A. WICKHAM
KEITH A. JACOBY

_____
KEITH A. JACOBY
LITTLER MENDELSON
A Professional Corporation
Attorneys for Defendant and Cross-
Claimant CARTER BRYANT

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

MEMO OF P&A'S ISO *EX PARTE* APPLICATION                10.                CASE NO. 04-9059 NM (RNBx)

EXHIBIT 6
PAGE 110

# EXHIBIT 7

*Original*

RECEIVED

JAN 1 2005

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
JS-2/JS-3 ____
Scan Only ____

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-9050-NM (RNBx) | | Date | January 25, 2005 |
|---|---|---|---|---|
| Title | Mattel, Inc. v. Carter Bryant | | | |

Present: The Honorable  Robert N. Block, United States Magistrate Judge

| Marsha Eugene-Domingue | n/a | 724 |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Michael T. Zeller | Keith A. Jacoby |
| | Diana M. Torres |

Proceedings:          (TELEPHONIC CONFERENCE)

**Plaintiff's Ex Parte Application for an Order Compelling the Deposition of Lily Martinez**

Case called. Counsel make their appearances telephonically. After affording counsel the opportunity to be heard regarding plaintiff's ex parte application, Court rules as follows: The ex parte application is denied based on plaintiff's failure to convince the Court that Martinez' deposition testimony likely would be relevant to defendant's pending remand motion. However, the denial is without prejudice to plaintiff filing a motion to compel Martinez's deposition in accordance with Local Rules 37-1 and 37-2, if the case is not remanded.

cc:   Judge Manella

DOCKETED ON CM

JAN 2 5 2005

BY _____ 061

Initials of Preparer _____

EXHIBIT 7

PAGE 111

# EXHIBIT 8

1   DOUGLAS A. WICKHAM (S.B. #127268)
    dwickham@littler.com
2   KEITH A. JACOBY (S.B. #150233)
    kjacoby@littler.com
3   LITTLER MENDELSON
    A Professional Corporation
4   2049 Century Park East, 5th Floor
    Los Angeles, CA 90067.3107
5   Telephone: (310) 553-0308
    Facsimile:   (310) 553-5583
6
    Attorneys for Carter Bryant
7

8              UNITED STATES DISTRICT COURT
               CENTRAL DISTRICT OF CALIFORNIA
9                    EASTERN DIVISION

10  CARTER BRYANT, an individual,         Case No. CV 04-09049 SGL (RNBx)
                                          (consolidated with CV 04-9059 & 05-2727)
11
                Plaintiff,                **DISCOVERY MATTER**
12
        v.                               [To Be Heard By Discovery Master
13                                       Hon. Edward Infante (Ret.) Pursuant to
    MATTEL, INC., a Delaware             The Court's Order of December 6, 2006
14  Corporation,
                                         [PROPOSED] **ORDER GRANTING IN**
15              Defendant.               **PART CARTER BRYANT AND MGA**
                                         **ENTERTAINMENT INC'S MOTION**
16                                       **TO COMPEL THE PRODUCTION OF**
                                         **DOCUMENTS AND 30(B)(6)**
17                                       **DEPOSITIONS**

18                                       Date:  January 25, 2007
                                         Time: 9:00 a.m.
19                                       Place: Telephonic

20                                       Discovery Cut-off: None set
                                         Pre-trial Conference: None Set
21                                       Trial Date: None Set

22
    CONSOLIDATED WITH
23  MATTEL, INC. v. BRYANT and           Judge: Hon. Stephen G. Larson
    MGA ENTERTAINMENT, INC. v.
24  MATTEL, INC.                         Discovery Cut-Off: T.B.D.

25

26

27

28
    07209/2046388.17209/2045559.1                      Order

                                         EXHIBIT __8__

                                         PAGE __112__                    1-30

1       On January 25, 2006, Discovery Master Edward Infante heard oral argument

2  on Defendants' Carter Bryant ("Mr. Bryant") and MGA Entertainment, Inc.'s

3  ("MGA") motion to compel the production of documents and 30(b)(6) depositions.

4  Keith Jacoby appeared on behalf of Mr. Bryant. Jim Jenal appeared on behalf of

5  MGA. Jon Corey and Dylan Proctor appeared on behalf of Mattel, Inc. After

6  considering all of the papers filed in support of and in opposition to said motion,

7  and good cause appearing, Mr. Bryant and MGA's motion is GRANTED IN PART

8  and it is hereby ORDERED as follows:

9       1. Within two weeks of the entry of this Order, Mattel must produce all non-

10  privileged documents relating to any investigation that occurred as a result of the

11  receipt of the August 2002 "Anonymous Letter" to Mattel CEO Robert Eckert, and

12  provide a privilege log identifying all documents withheld under the attorney client

13  privilege or attorney work product doctrine. It is suggested Mattel submit

14  declarations laying out the factual basis for any work product or privilege

15  protection it intends to assert. The Discovery Master defers ruling on whether Alan

16  Kaye should be reproduced for further deposition testimony. The Discovery Master

17  further rules that it is premature to rule on any issue of waiver of any claimed

18  privilege.

19       2. Mattel shall identify and produce for deposition corporate designees

20  pursuant to Federal Rule of Civil Procedure 30(b)(6) qualified to testify regarding

21  the Topics Nos. 2, 3, 4, 5, 6, 7, 23, 49 and 50 set forth in Carter Bryant's Notice of

22  Deposition of Mattel, Inc. dated December 21, 2004, as limited by Mattel's May 16,

23  2005 letter. Mattel shall identify these witnesses with the production of the

24  //

25  //

26  //

27  //

28  //

EXHIBIT 8

PAGE 113

1  privilege log with dates they can appear for deposition, such that the depositions on

2  these topics shall be completed no later than March 31, 2007.

3          IT IS SO ORDERED.

4

5  DATE: January 30, 2007                    _Edward A. Infante_

6                                            Hon. Edward A. Infante (Ret.)
                                             Discovery Master

7  Firmwide:81960684.1 028307.1010

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07209/2046388.17209/2045559.1              2.                    **ORDER**

EXHIBIT 8

PAGE 114

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on January 30, 2007, I served the attached ORDER GRANTING IN PART CARTER BRYANT AND MGA ENTERTAINMENT INC'S MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS AND 30(B)(6) DEPOSITIONS in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| Robert Millman Esq. | Littler Mendelson | rfmillman@littler.com |
| Douglas Wickham Esq. | Littler Mendelson | dwickham@littler.com |
| Keith Jacoby Esq. | Littler Mendelson | kjacoby@littler.com |
| Dominic Messiha Esq. | Littler Mendelson | dmessiha@littler.com |
| Diba Restagar Esq. | Littler Mendelson | drastegar@littler.com |
| Michelle Park Esq. | Littler Mendelson | mpark@littler.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | jbq@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Valerie Nannery Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | valerienannery@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Morris Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgetmorris@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| Benjamin Kim Esq. | O'Melveny & Myers LLP | bjkim@omm.com |
| Hamid Jabbar Esq. | O'Melveny & Myers LLP | hjabbar@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrismill.com |



EXHIBIT 8

PAGE 115

# EXHIBIT 9

CONFORMED COPY FILED                    CALENDARED

1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      John B. Quinn (Bar No. 090378)    2007 JAN 18  PM 2: 15
2     (johnquinn@quinnemanuel.com)
      Michael T. Zeller (Bar No. 196417)
3     (michaelzeller@quinnemanuel.com)    RIVERSIDE
      Jon D. Corey (Bar No. 185066)
4     (joncorey@quinnemanuel.com)    BY
    865 South Figueroa Street, 10th Floor
5   Los Angeles, California 90017-2543
    Telephone:  (213) 443-3000
6   Facsimile:   (213) 443-3100

7   Attorneys for Plaintiff Mattel, Inc.

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10                        EASTERN DIVISION

11  | CARTER BRYANT, an individual,          | CASE NO. CV 04-9049 SGL (RNBx)
12  |                                        |
    |                 Plaintiff,             | Consolidated with
13  |                                        | Case No. CV 04-09059
    |                                        | Case No. CV 05-02727
14  |        vs.                             |
    |                                        | **DISCOVERY MATTER**
15  |                                        |
    | MATTEL, INC., a Delaware               | **[To Be Heard By Discovery Master**
16  | corporation,                           | **Hon. Edward Infante (Ret.)]**
17  |                                        | OPPOSITION OF MATTEL, INC. TO
    |                 Defendant.             | MOTION TO COMPEL
18  |                                        | PRODUCTION OF DOCUMENTS
    |                                        | AND DEPOSITION OF 30(b)(6)
19  |_____| WITNESSES
    | AND CONSOLIDATED ACTIONS               |
20  |                                        | Hearing Date: January 25, 2007
    |                                        | Time: 9:00 am
21  |                                        | Place: Telephonic
22  |                                        | Discovery cutoff:  None set
    |                                        | Final Pretrial Conf. Date:  None set
23  |                                        | Trial Date:  None set

24

25

26

27                                              EXHIBIT ___9___

28                                              PAGE __116__

                                    MATTEL'S OPPOSITION TO MOTION TO COMPEL

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

I.   THE DISCOVERY MASTER SHOULD DENY THE MOTION AND SANCTION MGA BECAUSE IT HAS NO STANDING TO BRING THE MOTION ................................................................................................... 3

II.  JUDGE LARSON HAS RULED THAT THE 2002 ANONYMOUS LETTER IS IRRELEVANT TO DEFENDANTS' STATUTE OF LIMITATIONS ARGUMENTS ................................................................. 5

     A.   Statement of Facts .............................................................................. 5

          1.   The Issue ................................................................................. 5

          2.   The Parties' Meet and Confer ................................................. 5

          3.   The Parties' Agreement ........................................................... 6

          4.   Defendants' Service of This Motion ....................................... 8

     B.   Argument ........................................................................................... 10

          1.   This Issue Has Been Mooted By The Court's Recent Order Adjudicating MGA's Statute Of Limitations Defense ............... 10

          2.   MGA's Motion Was Brought In Bad Faith and Seeks Overbroad Rulings Without Any Factual Basis. ...................... 11

          3.   Mattel's Admonition Not to Waive the Privilege Was Proper. .................................................................................... 12

          4.   Mattel Has a Right to Withhold Documents Relating to the 2002 Anonymous Letter. .......................................................... 14

               (a)   Both The Attorney Work Product Doctrine and the Attorney-Client Privilege Apply. .................................. 14

               (b)   There Has Been No Waiver. .......................................... 15

III. THE DISCOVERY MASTER SHOULD DENY MGA'S MOTION TO COMPEL MATTEL TO PRODUCE A WITNESS FOR EACH OF BRYANT'S 64 RULE 30(B)(6) TOPICS .................................................. 17

     A.   Statement of Facts .............................................................................. 17

          1.   The State Court Notice ............................................................ 17

          2.   The Federal Notices ................................................................ 18

EXHIBIT _9_

PAGE _117_

MATTEL'S OPPOSITION TO MOTION TO COMPEL

07209/2037060.4

3.    The Parties Meet and Confer to Resolve Mattel's Objections ................................................................. 19

4.    Mattel Produces Witnesses To Testify Regarding a Variety of Topics ............................................................ 20

5.    To Date, MGA Has Produced No Witness In Response to Mattel's Notice .......................................................... 22

B.   MGA's Motion To Compel The Deposition Of 30(b)(6) Witnesses Is Premature And Misleading ............................ 25

1.    Mattel Has Provided and Will Provide Witnesses To Address the Topics Agreed ...................................... 25

2.    Many Of the Topics on Which Bryant Sought Testimony Are Unreasonable, Overlybroad, Irrelevant and Otherwise Objectionable ......................................................... 26

(a)    Many of the Topics Are Improper Requests for Testimony as a Substitute for a Contention Interrogatory ................................................ 26

(b)    Some Topics Seek Solely Privileged Information. ......... 29

3.    Some Topics, Including Some of the Agreed Topics Are Moot Given Judge Larsons' Dismissal of Bryant's Counterclaims and Complaint for Declaratory Relief ............... 30

IV.   THE COURT SHOULD SANCTION MGA FOR BRINGING THIS FRIVOLOUS MOTION ............................................... 31

EXHIBIT 9

PAGE 118

07209/2037060.4

-ii-

MATTEL'S OPPOSITION TO MOTION TO COMPEL

# **TABLE OF AUTHORITIES**

**Page**

### **Cases**

In re Bieter Co.,
16 F.3d 929 (8th Cir. 1994) .................................................................. 13

Braley v. Campbell,
832 F.2d 1504 (10th Cir. 1987) ............................................................. 31

Burlington Northern & Santa Fe Ry. Co. v. U.S. Dist. Ct. for the Dist. of Montana,
408 F.3d 1142 (9th Cir. 2005) ............................................................... 17

In re Grand Jury Subpoena,
357 F.3d 900 (9th Cir. 2004) ................................................................ 15

Hickman v. Taylor,
329 U.S. 295 (1947) ............................................................................ 15

Humphreys v. Regents of University of Cal.,
2006 WL. 870963 (N.D. Cal. 2006) ..................................................... 17

In re Independent Service Org's Antitrust Litigation,
168 F.R.D. 651 (D. Kan. 1996) ....................................................... 26, 28

McCormick-Morgan, Inc. v. Teledyne Indus., Inc.,
134 F.R.D. 275 (N.D. Cal. 1991), .......................................................... 29

RTC v. Dabney,
73 F.3d 262 (10th Cir. 1995) ................................................................. 31

SmithKline Beecham Corp. v. Apotex Corp.,
2000 WL. 116082 (N.D. Ill 2000) ..................................................... 28, 29

United States v. District Council of New York City and Vicinity of the United
Brotherhood of Carpenters and Joiners of America,
1992 WL. 208284 (S.D.N.Y. 1992) ....................................................... 26

### **Statutes**

28 U.S.C. § 1927 ................................................................................ 31

Fed. R. Civ. P. 5(b)(2)(D) ...................................................................... 4

Fed. R. Civ. P. 26 ................................................................................ 22

Fed. R. Civ. P. 26(b)(3) ........................................................................ 15

Fed. R. Civ. P. 26(b)(5) ........................................................................ 16

Fed. R. Civ. P. 30(b) ............................................................................ 28

EXHIBIT ___9___

MATTEL'S OPPOSITION TO MOTION TO COMPEL
PAGE ___117___

1  Fed. R. Civ. P. 30(b)(1) .................................................................................. 3

2  Fed. R. Civ. P. 37(a)(2)(B) ............................................................................ 3

3  Fed. R. Civ. P. 37(a)(4)(B) .......................................................................... 31

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

07209/2037060.4

-iv-

EXHIBIT 9

### Preliminary Statement

The motion to compel should be denied for three reasons.  First, only Bryant, and not MGA, propounded the <u>Rule</u> 30(b)(6) notice and requests that are the subject of this motion to compel.  MGA identifies no request or deposition notice that it propounded, and it lacks standing to compel on requests and notices propounded by another defendant.

Second, with respect to the 2002 anonymous letter, the parties reached an agreement on every issue raised during the meet and confer process.  The terms of that agreement were proposed by defendants.  Under defendants' proposal, which Mattel accepted, Mattel would update its privilege log and provide a list of individuals involved in Mattel's ostensible "investigation" into the 2002 anonymous letter, and defendants' requests for an updated privilege log and for further responses to questions asked at the deposition of Alan Kaye about Mattel's general investigative practices would be obviated and withdrawn.  After Mattel *accepted* defendants' proposal in writing, Bryant claimed, without explanation, that Mattel's acceptance of defendants' proposal was "unacceptable."  Mattel immediately asked for an explanation to see what the issue was, but rather than wait for a response from Bryant, MGA filed this motion.  MGA fails to inform the Discovery Master of these negotiations or Mattel's acceptance of defendants' own proposal, and indeed omits the parties' correspondence on these issues.

In any case, MGA's motion as to the anonymous letter issue is now moot.  MGA seeks documents relating to the anonymous letter because it purportedly supports a statute of limitations defense.  However, in an order entered on January 12, 2007 granting Mattel's motion for leave to file its proposed Amended Complaint (in the form of an amended answer and counterclaims), Judge Larson ruled that the 2002 anonymous letter was irrelevant for statute of limitations

EXHIBIT _9_

PAGE _121_

MATTEL'S OPPOSITION TO MOTION TO COMPEL

1  purposes because of the relation-back doctrine.[1]  The Motion should be denied on
2  that ground alone.

3       MGA's complaint about Mattel's response to Bryant's Rule 30(b)(6) notice is
4  also misleadingly incomplete.  While in state court, Bryant noticed the deposition of
5  Mattel's persons most knowledgeable and identified more than 50 topics.  Mattel
6  moved to quash.  Bryant removed before it was heard.  In federal court, Bryant
7  served two <u>Rule</u> 30(b)(6) notices with a total of 64 topics.  Mattel served written
8  objections on Bryant.

9       On March 15, 2005, the parties then met and conferred to narrow the scope of
10 those topics.  On May 18, 2005, by agreement, Mattel provided to Bryant and MGA
11 designees and dates.  Since then, Mattel has produced three witnesses for deposition
12 to testify regarding twenty-six (26) topics.  Another witness will testify the day after
13 this opposition is filed on an additional topic.  Mattel has provided proposed dates
14 for three additional designees and identified another designee who will testify once
15 deficiencies in MGA's relevant discovery are received.[2]  In contrast, MGA has not
16 produced a single witness to testify regarding any of the eight topics in Mattel's
17 <u>Rule</u> 30(b)(6) notice of MGA.  Indeed, MGA now claims the witness who can
18 testify to the bulk of the topics is, for reasons MGA refuses to disclose, not available
19 until mid-March.

20

21   [1]  Corey Dec. Exh. 1 at 13:16-14:4 and n.2.  As Judge Larson ruled, even
22 assuming Mattel was on notice of its claims in 2002 as defendants argue, Mattel's
23 claims are not barred by the statute of limitations, whether those claims are deemed
   to relate back to its original complaint or to its answer in the <u>MGA v. Mattel</u> case.
24 <u>Id</u>.

25   [2]  This additional designee is a former employee and thus a third party who is
   also a percipient witness.  MGA's initial disclosures in the unfair competition case,
26 however, are woefully incomplete, and she should not be deposed until MGA
27 complies with its obligations under the <u>Federal Rules</u>.  Mattel met and conferred
   with MGA on this issue last week.

28

EXHIBIT  9

PAGE  122

-2-

MATTEL'S OPPOSITION TO MOTION TO COMPEL

1    For these reasons, and others set forth herein, the Motion should be denied

2  and MGA should be sanctioned in an amount of $7,500, which represents a portion

3  of the costs Mattel has incurred in opposing this motion.

**Argument**

4

5  I.   **THE DISCOVERY MASTER SHOULD DENY THE MOTION AND**

6       **SANCTION MGA BECAUSE IT HAS NO STANDING TO BRING**

7       **THE MOTION**

8    A party can move to compel only discovery it sought.  No <u>Federal Rule</u>

9  permits a party to compel a response to a co-party's discovery.  Yet, that is exactly

10  what MGA attempts to do here.  The purported "joint" motion seeks an order

11  compelling Mattel to produce witnesses in response to a <u>Rule</u> 30(b)(6) deposition

12  notice.  Motion at 3:1-3.  Only a noticing party move to compel.  <u>Fed. R. Civ. P.</u>

13  30(b)(1) (providing that only a party who has given reasonable notice, in writing,

14  may take a deposition); <u>Fed. R. Civ. P</u>. 37(a)(2)(B) (providing that only the

15  "discovering party" may move to compel).  Bryant, and not MGA, is the noticing

16  party with respect to Bryant's <u>Rule</u> 30(b)(6) notice of Mattel.[3]  MGA therefore has no

17  standing to bring this motion.

18    The Motion also seeks an order compelling the identification of a couple of

19  irrelevant documents on a privilege log and overruling some deposition objections.

20  MGA, however, never requested the privileged and irrelevant documents and was

21  not the party whose question drew the objections at issue.  Bryant, and Bryant alone,

22  was.[4]  Again, MGA has no standing to bring this motion.

23    And, make no mistake, MGA, not Bryant, is the moving party.  MGA wrote

24  the motion.  MGA supported it with exclusively declarations of its counsel.  MGA

25

26

27  [3]  Zeller Dec. Exhs. 9 & 10.

28  [4]  Id.

EXHIBIT _9_

PAGE _123_

07209/2037060.4

-3-

MATTEL'S OPPOSITION TO MOTION TO COMPEL

1  served the motion,[5] including serving it upon Bryant, a purported moving party.[6]
2  Bryant's sole involvement was to fax a signature to MGA's counsel moments before
3  it was e-mailed to the Discovery Master's case administrator and to Mattel's counsel
4  (and to Bryant's counsel).[7]

5       MGA cannot complain that this is an innocent mistake.  Mattel has repeatedly
6  raised the issue with MGA that Bryant, not MGA, is the noticing party.[8]  MGA has
7  never responded.[9]  Yet, Bryant (as MGA's declarations fully demonstrate), has no
8  interest in this notice or in the topics sought.  Bryant's counsel attended only a
9  portion of the most recent deposition – MGA started without him – and he asked no
10  questions.[10]  MGA could have easily remedied this problem by serving its own <u>Rule</u>
11  30(b)(6) notice upon Mattel.  MGA's failure to do so leads Mattel to the conclusion
12  that MGA wishes to take advantage of Bryant's notice and then, to the extent that
13  the testimony is not beneficial, it will later seek to serve its own duplicative notice
14  for additional deposition testimony on the same topics, an improper second bite at
15  the apple.

16       Because MGA has no standing to bring this motion, it should be denied, and
17  MGA should be sanctioned.

18  ─────────────────────
19  [5]  As explained in a letter to defendant's counsel (see Corey Dec. Exh. 3),
     personal service of MGA's purported motion to compel was effected shortly after
20  2:00 p.m. on Saturday, January 6, 2007.  There is no agreement for or written
     consent to service of motions by e-mail, thus any prior e-mail service is ineffective.
21  <u>See</u> <u>Fed. R. Civ. P.</u> 5(b)(2)(D).  Thus, that service of the Motion was effective on
22  January 8, 2007, then next business day.
     [6]  Corey Dec. Exh. 4.
23  [7]  Compare Motion at 13 (bearing a 15:35 p.m. time in the fax header) with the
24  January 5, 2007 e-mail message to Ms. Chan and plaintiff's counsel at 2:50 pm,
     Proctor Dec. Exh. 10.  While there appears to a problem with the time on the fax
25  machine, Bryant's last minute "participation" is evident.
26  [8]  Corey Dec. Exhs. 13-16, 17, 18, 19.
     [9]  Corey Dec. ¶ 21.
27  [10]  Corey Dec. Exh. 5.
28

07209/2037060.4

-4-

EXHIBIT ___9___
PAGE ___124___

**II.    JUDGE LARSON HAS RULED THAT THE 2002 ANONYMOUS LETTER IS IRRELEVANT TO DEFENDANTS' STATUTE OF LIMITATIONS ARGUMENTS**

**A.    Statement of Facts**

**1.    The Issue**

Mattel received the so-called "anonymous letter" in 2002.  MGA faults Mattel for "refusing to produce any documents or permit any testimony related to" what it characterizes as Mattel's "investigation" into this letter.[11]  To the contrary, however, Mattel *allowed* its witness to provide non-privileged testimony about the letter and the so-called "investigation."  In fact, Alan Kaye—the only person at Mattel involved in the "investigation" whom MGA or Bryant has noticed for deposition—answered every question he was asked relating to the 2002 letter that did not call for communications with counsel.  He provided testimony relating to his understanding of the contents of the 2002 anonymous letter, his involvement with the "investigation" into the 2002 anonymous letter, and his understanding of the actions taken by Mattel in response to the letter.[12]

**2.    The Parties' Meet and Confer**

Following the December 19, 2006 telephonic scheduling conference with the Discovery Master, the parties planned to meet and confer on December 28, 2006, regarding three issues:  (1) Bryant's failure to produce documents (as to which Mattel has filed a motion), (2) Bryant's failure to produce original documents for inspection (Mattel is waiting on a response from defendants to Mattel's proposal to

---

[11]   Motion at 2:17-18.

[12]   Kaye Tr. at 14:15-17:7, 18:23-19:7, 41:7-47:15, 53:19-54:19, 56:2-64:15, 66:20-67:14, 68:6-69:21, Proctor Dec. Exh. 1.

EXHIBIT __9__

PAGE __125__

MATTEL'S OPPOSITION TO MOTION TO COMPEL

07209/2037060.4

1   resolve this motion before it files), and (3) Mattel's objections to questioning of two

2   of its witnesses, Ann Driskill and Alan Kaye.[13]

3          At the December 28, 2006 meet and confer, Mattel questioned Bryant about

4   the basis for and relevance of certain questions asked of Alan Kaye at deposition

5   about Mattel's general investigative practices -- *i.e.*, practices that, by the terms of

6   the questions, have nothing to do with the 2002 anonymous letter.[14]  Bryant

7   acknowledged that he was really interested in facts relating to any investigation into

8   the anonymous letter itself.[15]  MGA asked Mattel to supply a privilege log that

9   includes all withheld documents relating to any investigation into the anonymous

10  letter.[16]  Although this privilege log issue was not on the slate for discussion at the

11  meet and confer, Mattel committed to make inquiries.[17]

12         Neither Bryant nor MGA raised the privilege issues advanced in MGA's

13  motion at the meet and confer.[18]  Rather, the only issues discussed relating to the

14  anonymous letter and investigation regarding that letter was the production of a

15  complete privilege log, which MGA claimed it needed so that it could "test" Mattel's

16  claims of privilege.[19]

17              **3.     The Parties' Agreement**

18         Near the conclusion of the meet and confer, defendants made two proposals to

19  resolve the privilege log issue and Driskill and Kaye deposition objections.

20  According to defendants' proposal, (1) if Mattel agreed to provide an updated

21  privilege log and supply a list of names of the individuals involved in any

22

---

23  [13]  Corey Dec. Exh. 6.
24  [14]  Proctor Dec. ¶ 3.
25  [15]  *Id.*
26  [16]  *Id.*
27  [17]  *Id.*
     [18]  Proctor Dec. ¶ 4.
     [19]  *Id.*

EXHIBIT 9

PAGE 126

MATTEL'S OPPOSITION TO MOTION TO COMPEL

07209/2037060.4

1   investigation into the anonymous letter, Bryant would not pursue the questions he

2   asked Kaye at deposition about Mattel's general investigative practices, and MGA's

3   demand for an updated privilege log would be mooted; [20] and (2) Bryant would not

4   file a motion on questions he asked Driskill, and other questions he asked Kaye

5   about Mattel's contracts.[21]  When asked, defendants explicitly stated that Mattel

6   could accept either or both of these proposals to resolve the issues to which they

7   relate.[22]

8        At approximately 5:00 p.m. on January 3, 2007, defendants' counsel sent

9   Mattel an e-mail message confirming that the tentative proposals made at the meet

10  and confer were now firm.[23]  Mattel responded that night that it was considering the

11  proposals and would respond as soon as possible.[24]  The next morning, on January

12  4, 2007, defendants demanded a response by noon on Friday, January 5, 2007.[25]

13  Mattel explained that Bryant's demand for a response in that time frame was

14  unreasonable given holiday travel, especially since Mattel had not received any

15  response from Bryant to Mattel's December 29, 2006 proposal regarding Bryant's

16  production of originals,[26] but that Mattel would attempt to respond in the requested

17  time frame.[27]

18        Mattel did as it said it would.  At approximately 12:30 p.m. on Friday,

19  January 5, 2007, Mattel sent defendants an e-mail message accepting defendants'

20  first proposal (regarding the anonymous letter, privilege log and Mattel's

21  investigations) and rejecting the second proposal (which would have entailed

22

23  [20]  Proctor Dec. ¶ 5 & Exh. 2.
    [21]  *Id.*
24  [22]  Proctor Dec. ¶ 5
25  [23]  Proctor Dec. Exh. 3.
    [24]  Proctor Dec. Exh. 4.
26  [25]  Proctor Dec. Exh. 5.
    [26]  Proctor Dec. Exh. 7.
27  [27]  Proctor Dec. Exh. 6.

28

07209/2037060.4

EXHIBIT __9__

MATTEL'S OPPOSITION TO MOTION TO COMPEL

1  making Kaye and Driskill available for further questioning for four more hours

2  each).[28]  Mattel specifically stated that it was "willing to resolve this dispute in order

3  to avoid burdening Judge Infante with motion practice by (1) providing a list of

4  individuals involved in Mattel's ostensible investigation into the claims contained in

5  the 2002 anonymous letter and (2) placing withheld documents relating to it on a

6  privilege log."[29]

7          **4.    Defendants' Service of This Motion**

8          More than two hours after Mattel sent that e-mail message accepting

9  defendants' proposal, defendants responded in a terse, two-sentence email that

10 Mattel's ostensible "compromise proposal" was "unacceptable."[30]  In an apparent

11 attempt to "make a record," Bryant's counsel also demanded a response to his

12 proposal regarding the production of Bryant's originals -- an entirely separate issue

13 Mattel had already addressed in a two-page letter sent to Bryant's counsel a week

14 earlier.[31]  Mattel immediately asked what purportedly was "unacceptable" (given

15 that Mattel had simply accepted MGA's first proposal) and stated that Mattel

16 thought there was room for agreement.[32]  Mattel also pointed out that it had been

17 waiting for a week on *defendants'* responses to Mattel's proposal regarding the

18 production of Bryant's originals -- a point which Bryant later acknowledged.[33]

19 Rather than even wait for a response from Bryant to Mattel's inquiry, MGA

20 purported to serve its motion by e-mail.[34]  MGA's motion and exhibits do not

21 _____

22  [28]  Proctor Dec. Exh. 2.

23  [29]  *Id.*

    [30]  Proctor Dec. Exh. 8.

24  [31]  *Id.; see* Proctor Dec. Exh. 7.

25  [32]  Proctor Dec. Exh. 9.

    [33]  *Id.*  Mr. Jacoby "found" Mattel's letter of December 29, 2006, regarding the

26  production of originals, about an hour after this motion was e-mailed.  Proctor Dec.

27  Exh. 11.

    [34]  Proctor Dec. Exh. 10.

28

07209/2037060.4

-8-

EXHIBIT 9

PAGE 128

1  disclose any of the foregoing and do not attach Mattel's e-mail message accepting

2  defendants' proposal and agreeing to update Mattel's privilege log.[35]

3       In light of Mattel's agreement to the precise terms proposed by defendant,

4  defendants' assertions in their motion that Mattel "refuses to detail the withheld

5  documents on its privilege log" and has "refused to make any attempt to resolve

6  [this] dispute without the intervention of this Court" are flagrantly false.[36]  Counsel's

7  declaration that "[o]n Thursday, December 28, 2006, counsel for Bryant and MGA

8  met and conferred with counsel for Mattel in an attempt to obtain discovery related

9  to the 2002 Anonymous Letter investigation . . . [but] the parties were not able to

10  agree on a resolution of that issue either, and hence this motion is being filed" is

11  misleading at best.[37]  Finally, counsel's declaration that the Discovery Master "gave

12  MGA leave to file this motion on January 2, 2007" is also inaccurate.[38]  The

13  Discovery Master approved for filing *only* a motion to compel regarding Mattel's

14  Rule 30(b)(6) witnesses, not regarding the 2002 anonymous letter -- and certainly

15  not regarding MGA's new privilege arguments, which were not raised during the

16  meet and confer.[39]

17

18

19

20

21    [35]  After the motion was e-mailed, Bryant's counsel first claimed that Mattel's "compromise proposal" was "unacceptable" because Mattel was unwilling to make

22  Mr. Kaye available for further deposition questioning. Proctor Dec. Exh. 12. That,

23  however, related to MGA's *second* proposal, which Mattel had rejected, and was not a term of the *first*, which Mattel had accepted, and Mattel stated so by reply email.

24  Proctor Dec. Exh. 15. MGA never disputed anything in that email or any of the

25  others sent by Mattel on these issues.  Proctor Dec. ¶ 15.
  [36]  Motion at 2:18-20, 5:27-28.

26    [37]  Jenal Dec. ¶ 15.

27    [38]  Jenal Dec. ¶ 13.
  [39]  Corey Dec. ¶ 8; Proctor Dec. ¶ 4.

28

EXHIBIT 9
PAGE 129

MATTEL'S OPPOSITION TO MOTION TO COMPEL

**B.      Argument**

      **1.      This Issue Has Been Mooted By The Court's Recent Order Adjudicating MGA's Statute Of Limitations Defense**

      MGA contends that the anonymous letter presents "the core of MGA and Bryant's statute of limitations and laches defenses."[40]  In opposing Mattel's motion for leave to amend, MGA and Bryant recently presented the same arguments to Judge Larson, arguing that Mattel's copyright infringement and tortious interference claims relating to Bryant were stale and time-barred because Mattel allegedly was on notice of those claims by virtue of the 2002 anonymous letter but supposedly did not file within the required limitations period.  On Friday, January 12, 2007, in an Order granting Mattel leave, Judge Larson rejected those contentions and ruled that, because of the relation back doctrine, Mattel's copyright and other claims could not be not time-barred even if Mattel were deemed on notice of those claims as a result of the 2002 anonymous letter.[41]  In fact, the Court specifically rejected MGA's assertion that "the receipt of the anonymous letter to Mattel's CEO that Bryant had stolen the idea for BRATZ while working at Mattel" somehow "render[ed] Mattel's current copyright claim stale."[42]  In light of that ruling, the 2002 letter and Mattel's so-called "investigation" into it are simply irrelevant.  As the Court has ruled, Mattel's claims are timely whether they accrued in 2002, upon

---

[40]    Motion at 2:9-11.

[41]    Corey Dec. Exh. 1 at 13:8-15:2.  The Court noted that this was true regardless of whether Mattel's claims related back to Mattel's original complaint or to MGA's subsequent complaint.

[42]    *Id.*

EXHIBIT __9__

PAGE __130__

MATTEL'S OPPOSITION TO MOTION TO COMPEL

1  receipt of the letter, or not. MGA's arguments here about the supposed relevance of

2  Mattel's investigation is unavailing.[43]

3      **2.**    **MGA's Motion Was Brought In Bad Faith and Seeks**

4          **Overbroad Rulings Without Any Factual Basis.**

5        Contrary to MGA's representations that Mattel has "refused to make any

6  attempt to resolve" this dispute without judicial intervention and refuses to update

7  its privilege log,[44] Mattel accepted defendants' own proposal to resolve the issues

8  they raised at the parties' meet and confer regarding the anonymous letter and

9  "investigation," including by providing an updated privilege log and proffering a list

10  of individuals who participated in the ostensible investigation into the anonymous

11  letter. There is no legitimate reason why this motion was filed.

12        MGA filed this motion, and cast aside defendants' own proposal, as a gambit

13  for overbroad relief on the basis of an inadequate record. At the meet and confer,

14  MGA claimed it wanted a privilege log so that it could "test" Mattel's claims of

15  privilege regarding the 2002 letter and did not dispute the validity of Mattel's

16  admonitions not to reveal the substance of privileged communications.[45] Now,

17  without reference or citation to a single specific document or instruction not to

18  answer, MGA ask for orders that Mattel "has no basis for claiming privilege" and

19  should be required to "identify the basis for its instructions not to answer."[46] The

20  Court should not even attempt to adjudicate privilege issues in the abstract, without

21  reference to specific discovery requests, as MGA requests -- the fact that the most

22

---

23     [43]   Nonetheless, and notwithstanding MGA's refusal to honor its own proposal,

24  Mattel intends to serve an amended privilege log that lists all withheld documents

25  relating to the anonymous letter "investigation" expeditiously as a showing of good faith.

26     [44]   Motion at 5:27-28; *see* Jenal Dec. at ¶ 15.

27     [45]   Proctor Dec. ¶ 4.

   [46]   Motion at 9:10-12, 11:19-20.

28

EXHIBIT 9

PAGE 131

07209/2037060.4

-11-

MATTEL'S OPPOSITION TO MOTION TO COMPEL

1   MGA can say is that Mattel's ostensible investigation "*does not appear* to be
2   protected by either the attorney client privilege or the work product doctrine" is
3   telling.[47]  Rather, at the most the Court should order the production of the privilege
4   log Mattel previously agreed to provide, which will allow MGA to "test" Mattel's
5   claims of privilege in the ordinary course.  MGA's other demands in its motion are,
6   at best, premature.

7           **3.     Mattel's Admonition Not to Waive the Privilege Was Proper.**

8           MGA asserts that Mattel has refused to "permit any testimony related to [the
9   anonymous letter] investigation" and insists that Mattel "be required to state the
10  specific basis for instructing its witnesses not to provide testimony that it claims,
11  vaguely, is 'privileged.'"[48]  MGA does not, however, cite a single such instruction
12  not to answer or reference any witness other than Mr. Kaye.  Instead, it attaches nine
13  pages from the Kaye deposition.

14          A review of those nine pages, not to mention the balance of the Kaye
15  deposition, reveals that MGA's assertion that Mattel "refused to permit" any
16  testimony related to the anonymous letter and investigation is false.  In truth, Kaye
17  answered every question he was asked about that "investigation" and told MGA
18  everything he knew except, as discussed below, the substance of attorney-client
19  communications.[49]  As Kaye explained, after the anonymous letter was received by
20  the office of Mattel's CEO, Kaye passed the letter on to Richard de Anda with a note
21  suggesting that de Anda start with Ivy Ross, Bryant's former supervisor at Mattel, to
22  "see if this makes any sense."[50]  Mr. de Anda later reported back to Kaye.[51]

23

24      [47]  Motion at 10:20-22 (italics added).
25      [48]  Motion at 2:16-18, 11:26-28.
        [49]  Kaye Tr. at 14:15-17:7, 18:23-19:7, 41:7-47:15, 53:19-54:19, 56:2-64:15,
26  66:20-67:14, 68:6-69:21, Proctor Dec. Exh. 1.
        [50]  Kaye Tr. at 16:12-15. 20:13-21:8, 23:22-24:15, Proctor Dec. Exh. 1.
27      [51]  *Id.* at 24:25-25:2.

28                                                              EXHIBIT __9__

1   Mattel assumes, from a review of the nine pages MGA attaches to its motion,

2   that the purported "instructions not to answer" to which MGA objects are the

3   following two admonitions, made in response to questions asking about what Mr. de

4   Anda said to Mr. Kaye when he reported back:

5         At this point I'm going to caution the witness to exclude from your

6         answer the substance of any attorney communications that may have

7         been revealed during your communications with Mr. de Anda.

8         . . .

9         If your understanding derives solely based upon the communications

10        with counsel that Richard passed on, you should so state and not

11        answer the question.[52]

12   Thus, as Bryant characterized it during the deposition, Kaye was only instructed not

13   to answer questions "*to the extent* that it [the question] calls for communications that

14   Richard [de Anda] had with [Mattel's] attorneys."[53]

15        Such an admonition is plainly proper.  The communications between

16   Mr. de Anda and Mattel's counsel are obviously protected from compelled

17   disclosure by the attorney-client privilege.  The mere fact that some of those

18   communications may have later been disclosed by Mr. de Anda to Mr. Kaye, both

19   employees of Mattel, did not effect a waiver.  See, e.g., In re Bieter Co., 16 F.3d

20   929, 935-36 (8th Cir. 1994) ("A client has a privilege to refuse to disclose and to

21   prevent any other person from disclosing confidential communications made for the

22   purpose of facilitating the rendition of legal services to the client . . . *between*

23   *representatives of the client* and between the client and a representative," and an

24   employee qualifies as a "representative of the client") (italics added).  Indeed, even

25   in its motion, MGA acknowledges the propriety of these admonitions, recognizing

26   ───────────────────────

27   [52]  Kaye Tr. at 25:5-8, 27:3-6, Torres Dec. Exh. B.

28   [53]  Kaye Tr. at 31:3-10 (italics added), Proctor Dec. Exh. 1.

EXHIBIT __9__

PAGE __133__

MATTEL'S OPPOSITION TO MOTION TO COMPEL

07209/2037060.4

1  that Mattel may withhold testimony that "reflect[s] legal advice."[54]  That is all that

2  was withheld here.  Admonitions that ensure that privileged communications are not

3  inadvertently disclosed are wholly proper.  Moreover, Bryant's counsel gave a

4  related admonition himself at the start of the deposition, advising Mr. Kaye that

5  "[y]ou can assume for purposes of my questions that all questions call for

6  information from sources other than counsel alone," and did not dispute the

7  propriety of these admonitions at the meet and confer.[55]

8         For whatever reason, MGA has not noticed the deposition of Mr. de

9  Anda.  Assuming it can get over the hurdle of Judge Larson's rejection of

10  defendants' arguments about the 2002 letter, and if MGA chooses to notice that

11  deposition, it can ask questions designed to elicit non-privileged information about

12  Mr. de Anda's activities after he received the anonymous letter from Mr. Kaye.

13  MGA cannot, however, learn the substance of privileged communications between

14  Mr. de Anda and counsel merely because aspects of those communications may

15  have been disclosed to Mr. Kaye.

### 4.  Mattel Has a Right to Withhold Documents Relating to the 2002 Anonymous Letter.

#### (a)  Both The Attorney Work Product Doctrine and the Attorney-Client Privilege Apply.

20       MGA apparently seeks a ruling that each document relating to the anonymous

21  letter or investigation into that letter is non-privileged because the investigation

22  "does not appear to be protected by either the attorney client privilege or the work

23  product doctrine."[56]  That overbroad request obviously lacks merit.  As Mr. Kaye

---

[54]  Motion at 12:5-6.
[55]  Kaye Tr. at 8:17-20, Proctor Dec. Exh. 1.
[56]  Motion at 10:21-22.

EXHIBIT __9__

PAGE __134__

07209/2037060.4

-14-

1    explained at deposition, attorneys were indeed involved.[57]  Mr. Kaye himself

2    communicated with Mattel's attorneys about the investigation.[58]  There is no factual

3    basis for MGA's premature assertion that the documents relating to the investigation

4    neither contain privileged information nor are protected as work product.  To the

5    contrary, and as MGA would know if it honored its own proposal and reviewed the

6    privilege log that Mattel agreed to provide, every withheld document either contains

7    or constitutes privileged communications or was created at the direction of counsel,

8    in anticipation of litigation.[59]

9                    **(b)    There Has Been No Waiver.**

10           MGA asserts that Mattel's "refusal to produce a privilege log"

11   constitutes a waiver of the privilege.[60]  While a party must log responsive

12   documents withheld on privilege grounds, Mattel has repeatedly explained to

13   defendants that it has not produced the 2002 "investigation" documents because *they*

14   *are not relevant* -- a position upheld by the Court in its Order last week because

15   Mattel's claims are timely even if they had accrued in 2002[61] -- and are not within

16   the scope of what Mattel agreed to produce.[62]  Documents withheld on relevance or

17   _____

18   [57]  Kaye Tr. at 25:12-15, 26:11-13, Proctor Dec. Exh. 1.
       [58]  *Id.* at 34:3-6.
19     [59]  *See Fed. R. Civ. P.* 26(b)(3); *Hickman v. Taylor*, 329 U.S. 295, 510 (1947); *In*
20   *re Grand Jury Subpoena*, 357 F.3d 900, 910 (9th Cir. 2004) (all materials prepared
     at the direction of counsel that would not have been generated but for the prospect
21   of litigation are protected from disclosure as work product).
       [60]  Motion at 11:9-17.
22     [61]  Corey Dec. Exh. 1.
23     [62]  On this point, MGA says only that the documents are responsive to a handful
24   of requests propounded by Bryant. Motion at 9 n.3. A review of the requests listed
     by MGA shows, however, that the withheld documents are obviously not responsive
25   to most of the requests even as phrased. *See, e.g.*, Request Nos. 3, 5, 15, 18, 28, 35,
26   36, Jenal Dec. Ex. Q. Further, MGA does not attach Mattel's responses, which
27   make clear that Mattel did not agree to produce all requested documents. *See, e.g.*,
     Mattel's Response to Request Nos. 3, 5, 15, 17, 28, 31, Zeller Dec. Exh. 22.
28        (footnote continued)

EXHIBIT _1_
PAGE _135_

MATTEL'S OPPOSITION TO MOTION TO COMPEL

07209/2037060.4

1   responsiveness grounds need not be included on a privilege log.  See Fed. R. Civ. P.

2   26(b)(5) ("When a party withholds information *otherwise discoverable* under these

3   rules *by claiming that it is privileged or subject to protection as trial-preparation*

4   *material*, the party shall make the claim expressly and shall describe the nature of

5   the documents, communications, or things not produced or disclosed in a manner

6   that, without revealing information itself privileged or protected, will enable other

7   parties to assess the applicability of the privilege or protection." (italics added)).

8            Further, there has been no "refusal to produce a privilege log" here at

9   all.  To the contrary, Mattel expressly *agreed,* in writing, to add documents relating

10  to the anonymous letter on its privilege log (without conceding the relevance of the

11  documents) upon defendants' request at the meet and confer and as part of a larger

12  compromise agreement.[63]  Mattel is aware of no court that has found a waiver (and

13  MGA cites none) in circumstances such as here, where upon request at a meet and

14  confer the party explicitly and unequivocally agrees to provide the requested

15  privilege log, only to then be sandbagged by claims of waiver that were never even

16  raised at a meet and confer.  Nor is there any *per se* waiver rule in the Ninth Circuit

17  as defendants apparently believe. *Burlington Northern & Santa Fe Ry. Co. v. U.S.*

18  _____

19    MGA also studiously avoids mentioning Mattel's discovery responses that make
    it clear that Mattel did *not* agree to produce documents relating to the anonymous
20  letter investigation. *See* MGA's Request for Production No. 252 & Mattel's
    Response, Zeller Dec. Exhs. 21 & 22 (Mattel expressly refusing to produce
21  documents relating to the anonymous letter); Bryant's Request for Production No.
22  33 & Mattel's Response, Jenal Dec. Exh. Q & Zeller Dec. Exh. 23 (Mattel refusing
    to produce, as requested, all documents relating to Mattel's "discovery or awareness
23  that Bryant created designs . . . related to . . . 'Bratz,'" and instead agreeing to
24  produce only documents "relating to [Mattel's] first discovery of defendant's role in
    designing, manufacturing, marketing and/or sale of Bratz dolls.").  Mattel did not
25  discover Bryant's role in designing, manufacturing, marketing or selling Bratz dolls
26  in 2002. Accordingly, the documents relating to the anonymous letter
    "investigation" are not within the scope of what Mattel agreed to produce.
27    [63]   Proctor Dec. Exh. 2.

28

07209/2037060.4

-16-

EXHIBIT __7__

PAGE __136__

MATTEL'S OPPOSITION TO MOTION TO COMPEL

*Dist. Ct. for the Dist. of Montana*, 408 F.3d 1142, 1146-49 (9th Cir. 2005). In fact, courts often decline to find a waiver even when the party has *not* agreed to provide a privilege log when a motion to compel is heard. *See, e.g., Humphreys v. Regents of University of Cal.*, 2006 WL 870963, *2 (N.D. Cal. 2006) (ordering production of privilege log but rejecting assertion that delayed production of log effected a waiver even though defendant lacked any justification for its delay).[64]

## III.   THE DISCOVERY MASTER SHOULD DENY MGA'S MOTION TO COMPEL MATTEL TO PRODUCE A WITNESS FOR EACH OF BRYANT'S 64 RULE 30(B)(6) TOPICS

MGA's Motion is premised on contentions that Mattel failed to object to Bryant's Notice and has refused to produce any witness to testify regarding any of Bryant's 64 topics. Both assertions are false.

### A.   Statement of Facts

MGA has never noticed Mattel's deposition. Bryant has, although he has made no recent effort to take Mattel's deposition.

#### 1.   The State Court Notice

On August 20, 2004, while Mattel's case against Bryant was pending in state court, he served three separate notices seeking Mattel's deposition, two on September 17, 2004 and an amended notice on October 5, 2004.[65] These notices contained more than 50 topics on which Bryant sought testimony. In response, Bryant and Mattel met and conferred at length and exchanged letters in an effort to

---

[64]   Of course, defendants should be careful what they wish for. As discussed in Mattel's now-pending motion to compel Bryant to produce documents, Bryant includes only 4 documents on his privilege log. Proctor Dec. Exh. 14. Unlike Mattel, Bryant has steadfastly *refused* to update or complete this log, including at the parties' December 28, 2006 meet and confer. Proctor Dec. ¶ 3. If, as defendants themselves argue, Bryant's "refusal to produce a privilege log" constitutes a waiver, Motion 11:9-11, that applies all the more to defendants.

[65]   Zeller Dec. Exhs 1, 2 & 4.

EXHIBIT 9

PAGE 137

-17-

MATTEL'S OPPOSITION TO MOTION TO COMPEL

1  come to an agreement to narrow the scope of these topics.[66]  When Bryant and

2  Mattel they were unable to come to agreement on all of the topics, Mattel filed a

3  motion to quash the notice that was to be heard on November 23, 2004.[67]  Bryant

4  was fully aware of this motion, as he responded on October 8, 2004.[68]  Before the

5  motion was heard, however, Bryant removed the case to federal court.[69]

6          ## 2.    The Federal Notices

7          After the case was removed, Bryant served two <u>Rule</u> 30(b)(6) notices of

8  deposition of Mattel on December 21, 2004.[70]  Between these two notices, Bryant

9  sought testimony of Mattel designees on 64 different topics.[71]  These notices did not

10  embody any of the agreements that Bryant and Mattel had discussed at length and

11  reached to limit the scope of the PMK topics in state court.  On December 29, 2004,

12  Mattel objected to Bryant's notices.[72]

13          Without any additional efforts to meet and confer on the <u>Rule</u> 30(b)(6)

14  notices, on January 25, 2005, Mr. Jacoby sent Mr. Zeller demanding that Mattel

15  produce witnesses to testify regarding the 64 topics.[73]  Mr. Zeller responded by

16  informing Bryant's counsel that he had failed to meet and confer with respect to

17  those notices.[74]  Without any further discussion, Bryant served his portion of a draft

18  Joint Stipulation on a motion to compel, which Mattel provided its portions in

19  response to.  On March 4, 2005, Bryant served upon Mattel the document containing

20  both sides' portions of the Joint Stipulation, but did not file it with the Court.

21  _____

22  [66]  Zeller Dec. ¶¶ 5-7, 9-10 and Exhs. 5 & 6.

23  [67]  Zeller Dec. Exhs. 6 & 7.

24  [68]  Zeller Dec. Exh. 8.

25  [69]  Zeller Dec. Exhs. 9 and 10.

26  [70]  Zeller Dec. Exhs. 11 and 12.

    [71]  Id.

26  [72]  Zeller Dec. Exh. 13.

27  [73]  Zeller Dec. Exh. 14.

28  [74]  Zeller Dec. Exh. 25.

EXHIBIT 9

PAGE 138

MATTEL'S OPPOSITION TO MOTION TO COMPEL

3.    **The Parties Meet and Confer to Resolve Mattel's Objections**

In March 2005, the parties were actively engaged in the meet and confer process to resolve a variety of discovery disputes.[75]  One of the disputes under discussion was Bryant's notices of Mattel's deposition.  Over the course of two days on March 14-15, 2005, the parties engaged in a meeting of counsel at the offices of Bryant's counsel in Century City.  As a result of this meeting of counsel, the parties agreed to significantly narrow Bryant's 64 topics to the following:

- Topics 1, 49-51:  The agreements that Bryant signed with Mattel, with no discussion of interpretation of those agreements.

- Topics 2-6, 7, 22-23:  The factual basis for Bryant's contractual and non-contractual obligations to Mattel and Bryant's breach of those obligations, including identification of what was disclosed, converted or misappropriated.

- Topics 9, 38-40, 42-45:  Toon Teens, including development, decision not to commercialize, current status, and the origination and creation of M0012567-71, M0012572-78, M0012579-86 and M0012587.

- Topics 13, 24:  The factual basis for Mattel's contention, if any, that Bratz originated from or is substantially similar to a Mattel property or work created by Bryant while employed by Mattel.

- Topics 15-20:  When Mattel learned (a) that Bryant was working for MGA while employed by Mattel, and (b) of Bryant's involvement in the creation of Bratz.

- Topics 27-36, 47, 53:  Electronic information topics, including operation of electronic mail system (1998-2000), Zeus (1998-2000), P-2 System/Data (1998-2000), retention policy for e-mail servers from '98 to present TO THE EXTENT THEY EXISTED, document management system (for Designers) (1998-present TO THE EXTENT THEY EXISTED) and phone logs (1999-2000).

---

[75]  Zeller Dec. ¶ 23.

EXHIBIT 9

PAGE 139

MATTEL'S OPPOSITION TO MOTION TO COMPEL

07209/2037060.4

- Topic 41: Mattel's lack of knowledge of who made the statements (other than those made by Matt Bousquette) quoted in a 2003 *Wall Street Journal* article.

- Topics 54-56: Bryant's exit interview and misrepresentations that he made, including M0011667-68 and M001654.[76]

Thereafter, the parties agreed to exchange letters in which each would identify designees and provide dates for each of the designees on the agreed topics.[77] The parties stipulated that they would identify witnesses to address the agreed topics.

On May 16, 2005, Mattel sent its letter identifying those designees who would testify regarding the agreed topics.[78]  Mattel's letter also identified the dates on which those individuals would testify.[79]  On that date, MGA also sent to Mattel a letter identifying two designees who would testify regarding the topics set forth in Mattel's notice of MGA.[80]

## 4.    Mattel Produces Witnesses To Testify Regarding a Variety of Topics

On May 20, 2005, Mattel produced Lily Martinez for deposition.  Ms. Martinez was both an individual percipient and designated on topics 9, 38-40, and 42-45 in Bryant's notice.[81]  MGA and Bryant took and concluded her deposition on that day.[82]  Shortly thereafter, Judge Manella stayed discovery because the Ninth Circuit had agreed to review a jurisdictional issue on interlocutory appeal.[83]  After

---

[76]  Zeller Dec. Exh.  116.
[77]  Zeller Dec. ¶ 25.
[78]  Corey Dec. Exh. 7.
[79]  *Id.*
[80]  Corey Dec. Exh. 8.
[81]  *Id.*
[82]  Corey Dec. Exh. 9.
[83]  Corey Dec. Exh. 10.

1   the stay was lifted on June 19, 2006,[84] MGA requested, and Mattel produced, a

2   witness to testify regarding Mattel's P2/TRACS system.[85]  Mattel also produced a

3   witness to testify regarding its Zeus storage system (over two days).[86]  Mattel has

4   further agreed to provide a witness to testify regarding Mattel's e-mail system

5   between 1998 and 2000 on January 17, 2007.[87]

6          In correspondence, on December 26, 2006, Mattel further agreed to provide

7   witnesses to address additional topics agreed to by the parties.[88]  On Monday,

8   January 8, 2007, to comply with its commitment even though MGA had filed a

9   motion to compel, Mattel wrote to Bryant and provided additional dates for three

10  more deponents to testify regarding additional topics.[89]  In a separate letter sent on

11  January 19, 2007, Mattel also addressed the depositions of two additional

12  deponents—one of whom will be a designee—who will be made available as soon

13  as MGA makes initial disclosures in accordance with <u>Federal Rule of Civil

14  Procedure</u> 26.[90]  And, on January 16, 2007, Mattel provided dates for an additional

15  designee.  All told, these witnesses have testified or will testify regarding the vast

16

17  ────────────

18      [84]  Corey Dec. Exh. 11.
        [85]  Corey Dec. Exh. 12.
19      [86]  Corey Dec. Exh. 5.
        [87]  Corey Dec. Exh. 7.  MGA's suggestion that Mattel is to blame for not
20
    agreeing to a discovery master and using that as a pretext for delaying the deposition
21  that will take place on January 17, 2007 is wrong.  As set forth in Mattel's
    November 14, 2006 letter, Mattel agreed to two of the discovery masters that
22  MGA/Bryant had proposed, but in one instance MGA/Bryant rescinded after Mattel
23  accepted their candidate, and in another instance, the agreed candidate was not
    accepting discovery master positions.  It was MGA and Bryant's refusal to even
24  respond to Mattel's discovery master inquiries that prompted Mattel's letter, not
25  Mattel's refusal to agree to a discovery master.  Corey Dec. Exh. 29.
        [88]  Corey Dec. Exh. 13.
26      [89]  Corey Dec. Exh. 14.
27      [90]  Corey Dec. Exh. 15.

28                                                      EXHIBIT  9
                                                        PAGE  141

1   majority of the narrowed topics as set forth above (subsequent decisions by Judge

2   Larson have rendered others moot, as discussed in Part III.B., below).

3        **5.**    **To Date, MGA Has Produced No Witness In Response to**

4        **Mattel's Notice**

5        In stark contrast, MGA has yet to produce any Rule 30(b)(6) witness and now

6   claims that the witness who will testify in response is not available at all (for

7   unidentified reasons) until after mid-March.  On February 16, 2005, Mattel served a

8   Notice of Deposition of MGA with a deposition date of March 1, 2005.[91]  Mattel

9   sought testimony on eight topics.  On February 24, 2005, MGA served objections to

10  Mattel's notice.[92]  On March 10, 2005, Mattel sent to MGA a seven-page letter

11  responding to its objections and asking MGA to meet and confer.[93]  The parties meet

12  and conferred on March 15, 2005.  On May 16, 2005, MGA named Paula Garcia

13  and Charnayne Brooks as witnesses who would testify regarding the eight topics

14  identified in Mattel's notice.[94]

15       Since the stay was lifted, Mattel repeatedly sought dates for the two

16  deponents to testify.  Mr. Jenal's, counsel for MGA, sole response was to agree to

17  discuss dates only after Mattel produced additional Rule 30(b)(6) witnesses to

18  testify regarding topics in Bryant's notice.[95]  In light of MGA's conditioning of any

19  dates for its witnesses on Mattel's production of more witnesses pursuant to Bryant's

20  deposition, Mattel send a letter to Mr. Jenal on December 11, 2006, asking him to

21  meet and confer within the five days required by the Discovery Master Order.[96]

22  Then, in a December 13, 2006 letter to MGA's counsel, Diana Torres, Mattel again

23

24  [91]  Zeller Dec. Exh. 17.

25  [92]  Zeller Dec. Exh.  18.

    [93]  Zeller Dec. Exh. 19.

26  [94]  Zeller Dec. Exh. 20.

27  [95]  Corey Dec. Exh. 24.

    [96]  Corey Dec. Exh. 17; Corey Dec. Exh. 25.

28

EXHIBIT 9

PAGE 142

-22-

MATTEL'S OPPOSITION TO MOTION TO COMPEL

1   asked counsel for MGA when they were available to meet and confer.  Neither Mr.

2   Jenal nor Ms. Torres responded, much less met and conferred.[97]

3         At the December 19, 2006 scheduling conference before the Discovery

4   Master, Dale Cendali, counsel for MGA, represented that MGA would provide

5   Mattel dates for the deposition of witnesses to testify regarding topics in Mattel's

6   Rule 30(b)(6) Notice.[98]  On December 26, 2006, Mattel wrote to Ms. Cendali

7   thanking her for her commitment and asking when Mattel could expect dates.[99]  Ms.

8   Cendali did not respond.

9         On January 2, 2007, Mr. Jenal sent an e-mail message saying that the

10  designees would be Paula Garcia and Charnanyne Brooks.  Contrary to Ms.

11  Cendali's representation, however, he did not provide any dates for their respective

12  depositions.[100]  That same day Mattel responded, informing MGA that although it

13  had prepared a motion to compel, it would hold that motion in abeyance if MGA

14  would provide dates for its deponents by the close of business on January 5, 2007.[101]

15  Similarly, Mattel committed to provide dates for its deponents promptly with the

16  understanding that MGA would not move to compel.

17        Contrary to its commitment during the call with the Discovery Master, MGA

18  again conditioned its provision of dates on Mattel first providing dates for more of

19  its witnesses.  On January 3, 2007, Mr. Jenal wrote that MGA expected to receive

20  dates for Mattel's witnesses to testify regarding Bryant's topics by noon on Friday,

21  then (presumably if those dates were acceptable to MGA) MGA said that it would

22  agree to provide dates for its witnesses to Mattel.[102]  The next day Mr. Jenal

23

24  [97]  Corey Dec.  Exh. 18.
25  [98]  Corey Dec. ¶ 15.
    [99]  Corey Dec. Exh. 13.
26  [100]  Corey Dec. Exh. 26.
    [101]  Corey Dec. Exh. 27.
27  [102]  Corey Dec. Exh. 28.
28

07209/2037060.4

EXHIBIT 9

PAGE 143

-23-

MATTEL'S OPPOSITION TO MOTION TO COMPEL

1   confirmed that Mattel's understanding of MGA's "proposal" was correct.[103]  On

2   Friday, January 5, 2007, Jon Corey, counsel for Mattel, wrote to Mr. Jenal that

3   MGA's demand was unreasonable because Bryant, not MGA, noticed Mattel's

4   deposition and MGA had no basis to demand Mattel's compliance with that Notice,

5   much less condition its compliance with Mattel's Notice on Mattel's obeisance to the

6   notice of another party.[104]  While rejecting MGA's unfounded demand, Mattel

7   committed to provide Bryant with dates for Mattel's designees by the close of

8   business on Monday, January 8, 2007.  MGA nevertheless filed this motion for an

9   order compelling Mattel comply with Bryant's notice of deposition.

10          Only after MGA filed its improper motion did it engage in any pretense

11   of providing deposition dates.  On January 5, 2007, MGA provided a date for a

12   previously unidentified designee, Kerri Brode.[105]  As to the other designee, MGA

13   said she would not be available for more than two months.[106]

14          This is typical.  Liliana Martinez, Arnoldo Artavia and Julia Marine have all

15   testified for Mattel pursuant to Bryant's notice, addressing many of the agreed

16   topics.  Fred Kawashima will also testify regarding another topic the day after this

17   opposition is filed.  Further, Mattel has produced Alan Kaye, Ann Driskill, Cassidy

18   Park and Liliana Martinez to testify regarding their percipient knowledge, as have

19   four third-party witnesses.[107]  In contrast, MGA has produced only one percipient

20   witness for deposition, Isaac Larian, and then only after two Court Orders were

21   issued with sanctions imposed for defiance of the first Order.[108]  And, as noted,

22

23   _____

24   [103]  Corey Dec. Exh. 31.
25   [104]  Corey Dec. Exh. 22.
     [105]  Corey Dec. Exh. 21.
26   [106]  Id.
27   [107]  Corey Dec. Exh. 7.
     [108]  Corey Dec. Exh. 20.
28

EXHIBIT 9

PAGE 144

07209/2037060.4

-24-

MATTEL'S OPPOSITION TO MOTION TO COMPEL

1   MGA has yet to produce a single 30(b)(6) witness and the person who MGA has

2   designated to address most of Mattel's topics is supposedly not available for months.

3   **B.     MGA's Motion To Compel The Deposition Of 30(b)(6) Witnesses Is**

4   **Premature And Misleading**

5   Mattel has provided defendants with witnesses and deposition dates

6   responsive to Bryant's 30(b)(6) notice.[109] To be sure, Mattel has not produced a

7   witness to testify regarding each of the sixty-four topics noticed by Bryant, but this

8   is because the parties agreed to narrow the scope of the requests, as is expected

9   during the meet and confer process. That MGA (not Bryant) elects not to abide by

10  those agreements reached does not justify this motion, or an order granting it.

11  **1.     Mattel Has Provided and Will Provide Witnesses To Address**

12  **the Topics Agreed**

13  MGA's first complaint is that Mattel has not produced witnesses to testify

14  regarding the topics in Bryant's notice. As explained at length above, this is false.

15  Mattel has produced three witnesses over four days on many of the agreed topics,

16  including the computer/electronic topics first sought after the stay was lifted.

17  Another witness will have testified on the Mattel's e-mail system between 1998 and

18  2000 by the time the Discovery Master reads this. Further, Mattel has provided

19  dates for additional designees to address additional topics. MGA has yet to produce

20  a witness on any of Mattel's more narrow topics. This aspect of MGA's motion,

21  therefore, should be denied in its entirety (even setting aside that it has no standing

22  to bring it).

23

24

25

26

27  [109]  Corey Dec. Exh. 14.

28

07209/2037060.4

EXHIBIT _9_

PAGE _145_

-25-

2.   **Many Of the Topics on Which Bryant Sought Testimony Are Unreasonable, Overlybroad, Irrelevant and Otherwise Objectionable**

Of the topics that Bryant and Mattel agreed were proper, MGA has failed to identify a single agreed topic as to which Mattel has not produced or agreed to produce a witness. The motion in that respect should be denied.

Separately, MGA has failed to identify a single topic in Bryant's <u>Rule</u> 30(b)(6) notices as to which MGA believes Mattel should be compelled to produce a witness, as to which the agreement between Bryant and Mattel should be abrogated, or as to which Mattel's objections should be overruled. To be sure, many of these topics are improper.

(a)   **Many of the Topics Are Improper Requests for Testimony as a Substitute for a Contention Interrogatory**

It is well settled that a party cannot use a <u>Rule</u> 30(b)(6) deposition as a substitute for a contention interrogatory. "Even under the present day liberal discovery rules, [a party] is not required to have counsel 'marshal all of its factual proof' and prepare a witness to be able to testify on a given defense or counterclaim." *In re Independent Service Org's Antitrust Litigation*, 168 F.R.D. 651, 654 (D. Kan. 1996) (quoting *United States v. District Council of New York City and Vicinity of the United Brotherhood of Carpenters and Joiners of America*, 1992 WL 208284, *15 (S.D.N.Y. 1992)   Yet, this is exactly what Bryant attempts to do with most of his topics of inquiry. Courts sustain objections to such topics of inquiry because it is inefficient and burdensome for a party to prepare a witness to testify to all factual proof upon which a party may rely. For example, in *District Council of New York City*, 1992 WL 208284, *15-16, the defendants sought all factual information supporting a claim from <u>Rule</u> 30(b)(6) witness. The court sustained objections to that topic on grounds that it constituted work product and

-26-

EXHIBIT 9
MATTEL'S OPPOSITION TO MOTION TO COMPEL
PAGE 146

07209/2037060.4

1  because complying with the request would "in effect require the Government to
2  marshal all of its factual proof and then provide it to Agent Worsham so that she
3  could respond to what are essentially a form of contention interrogatories . . . . this
4  would be highly inefficient and burdensome, rather than the most direct manner of
5  securing relevant information . . . ." *Id.* Here, Bryant asks Mattel to prepare a
6  witness to testify regarding the same type of objectionable topics:

8.  All acts, omissions, circumstances and/or evidence showing, or tending
to show, that any and all products of MGA, including but not limited
to, any and all products sold under the trade name "Bratz," originated
from, were derived from, are based upon, are copied or incorporated
from, or are substantially or confusingly similar to, any design, research
and developmental work, work in progress, or product owned at any
time by Mattel or created by any Mattel employee, including but not
limited to Bryant, or by any independent contractor during the time that
such Person was working for Mattel.

10.  All facts and circumstances showing the conception, origination,
creation, development and/or reduction to practice of "My Scene
Barbie" and each of the other "My Scene" characters or dolls.

11.  All facts and circumstances showing the conception, origination,
creation, development and/or reduction to practice of "Diva Starz."

12.  Al facts and circumstances showing the conception, origination,
creation, development and/or reduction to practice of "Mini Diva
Starz."

14.  All acts, omissions, circumstances and/or evidence showing, or tending
to show, that Mattel has been damaged or suffered any financial or
other loss by any act or omission of Bryant.

EXHIBIT _9_

PAGE _147_

MATTEL'S OPPOSITION TO MOTION TO COMPEL

07209/2037060.4

21.   All Communications regarding Bryant's involvement in the conception, creation, design and/or reduction to practice of Bratz from 1998 until the date of the filing of the Complaint.[110]

25.   All measures taken by Mattel including, without limitation, any legal action brought or threatened to be brought (including in demand letters or other notices), from 1998 to the present to achieve, or attempt to achieve, compliance with or adherence to any or all of the terms and conditions of Mattel's "Employee Confidential Information and Inventions Agreement" (including all forms or versions of that agreement) from 1998 to the present, and/or Mattel's "Conflict of Interest Questionnaire" (including all forms or versions of that agreement) from 1998 to the present.

Separately and independently, objections to such improper topics of inquiry are sustained because the selection of information regarding such contentions, even if solely factual, run the significant risk of disclosing attorney work product. *See id.* at *5-15; *In re Independent Service Org's Antitrust Litigation*, 168 F.R.D at 654; *SmithKline Beecham Corp. v. Apotex Corp.*, 2000 WL 116082 *9 (N.D. Ill 2000) (holding that the proposed areas of inquiry "improperly trespasses into areas of work product and attorney-client privilege").

---

[110]   Separately and independently, Topic No. 21 is not described with reasonable particularity, but overbroad. A request for all "communications," defined to be any oral or written transmittal or receipt of words or information, by whatever manner or means," (Zeller Dec. Exh. 21) is not a topic described with reasonable particularity as <u>Rule</u> 30 requires. *See Fed. R. Civ. P.* 30(b)(b). Mattel should not be required to prepare a witness to address every conceivable communication related to Bryant's work on Bratz. Further, it seeks testimony that Mattel cannot provide, *i.e.,* Bryant's communications with anyone related to his work on Bratz from the time he left Mattel in October 2000.

EXHIBIT 9
PAGE 148

-28-

MATTEL'S OPPOSITION TO MOTION TO COMPEL

07209/2037060.4

1    Finally, many courts sustain objections to these contention topics on burden

2    and privilege grounds where there has been no showing that the discovery sought is

3    not available in a less oppressive manner, such as a contention interrogatory.

4    *SmithKline Beecham Corp. v. Apotex Corp.*, 2000 WL 116082 *10 (N.D. Ill 2000)

5    (sustaining objections because the information sought "cannot be discovered

6    through a less invasive method"); *McCormick-Morgan, Inc. v. Teledyne Indus., Inc.*,

7    134 F.R.D. 275, 286-87 (N.D. Cal. 1991), overruled on other grounds by

8    *McCormick-Morgan, Inc. v. Teledyne Indus., Inc.*, 765 F. Supp. 611 (N.D. Cal.

9    1991) (granting a motion for protective order from a Rule 30(b)(6) deposition notice

10    seeking a party's contentions because the "far more reliable and complete discovery

11    vehicle for setting for the basis for a party's contentions and positions would be a set

12    of [interrogatory] responses, written after the close of virtually all discovery").

13    Bryant has made no such showing.

**(b)    Some Topics Seek Solely Privileged Information.**

14

15    Topics 26 and 48 seek solely privileged information.  They read as follows:

16    26.    Communications, discussion, meetings, analyses and the decision-

17            making process regarding measures taken or contemplated by Mattel

18            including, without limitation, any legal action brought or threatened to

19            be brought (including demand letters or other notices) against Bryant

20            including, without limitation, the filing of the Complaint.

21    48.    All board of director's meeting minutes that evidence, relate or refer to

22            Bryant from January 1998 to the present.[111]

23    Any inquiry into Mattel's decision to bring a legal action against Bryant and

24    discussion of that decision with the Board are privileged communications and

25    attorney work product.  While Mattel recognizes that it may be premature to pass on

26

27    _____

28    [111]   Zeller Dec. Exh. 21.

07209/2037060.4

EXHIBIT 9

PAGE 149

-29-

MATTEL'S OPPOSITION TO MOTION TO COMPEL

1   any objection of privilege given that no deposition questions have been asked, at a
2   minimum, Bryant should be forced to articulate what information, if any, he
3   believes he can elicit that is not privileged before a witness is called to testify upon
4   these topics.  He has not done so.

5           3.       **Some Topics, Including Some of the Agreed Topics Are Moot**
6                    **Given Judge Larsons' Dismissal of Bryant's Counterclaims**
7                    **and Complaint for Declaratory Relief**

8           In addition to the foregoing topics as to which Mattel should not be required
9   to produce a witness, even some of the agreed topics are now moot.  For example,
10  Topics Nos. 49 and 50 read:

11          49.     All versions of the "Employee Confidential Information and
12  Inventions Agreement" used by Mattel since January 1, 1995 including,
13  without limitation, the "Employee Confidential Information and
14  Inventions Agreement" produced by Mattel as Document Control Nos.
15  M0001638-39 and the "Employee Confidential Information and
16  Inventions Agreement" attached to the Complaint as Exhibit "A."

17          50.     All versions of the "Conflict of Interest Agreement" used by
18  Mattel since January 1, 1995 including without limitation, the "Conflict
19  of Interest Agreement" produced by Mattel as Document Control Nos.
20  M0001636-37 and the "Conflict of Interest Agreement" attached to the
21  Complaint as Exhibit "B."

22  Similarly, Topic 52 reads as follows:

23          52.     All forms or other documents which Mattel has requested prospective
24                  and actual employees to sign since January 1, 1995.

EXHIBIT 9
PAGE 152

MATTEL'S OPPOSITION TO MOTION TO COMPEL

07209/2037060.4

1   Because Judge Larson dismissed Bryant's claims seeking to void all Mattel's

2   agreements with its employees, what forms or versions of such agreements Mattel

3   may or may not have used, is beyond the scope of proper discovery.[112]

4   For these reasons, MGA's Motion to enforce Bryant's deposition notice of

5   Mattel is not only wholly improper and contrary to the parties' agreements (which

6   MGA fails to mention), but lacks merit and should be denied in its entirety.

7   **IV.   THE COURT SHOULD SANCTION MGA FOR BRINGING THIS**

8   **FRIVOLOUS MOTION**

9   Under the <u>Federal Rules</u>, a party who brings a frivolous or meritless motion to

10   compel may be required to "pay to the party or deponent who opposed the motion

11   the reasonable expenses incurred in opposing the motion, including attorney's fees."

12   *Fed. R. Civ. P.* 37(a)(4)(B).

13   Independently, sanctions may be imposed under 28 U.S.C. § 1927, which

14   provides that "[a]ny attorney . . . who so multiplies the proceedings in any case

15   unreasonably and vexatiously may be required by the court to satisfy personally the

16   excess costs, expenses, and attorneys' fees reasonably incurred because of such

17   conduct." Sanctions under this section are appropriate "for conduct that, viewed

18   objectively, manifests either intentional or reckless disregard of the attorney's duties

19   to the court." <u>RTC v. Dabney</u>, 73 F.3d 262, 265 (10th Cir. 1995), citing <u>Braley v.</u>

20   <u>Campbell</u>, 832 F.2d 1504, 1512 (10th Cir. 1987).

21   Sanctions are called for here. There is no justification for this motion to

22   compel. On the same day that the 2002 anonymous letter issue was resolved by

23   Mattel's agreement to defendants' proposal and only hours away from receiving

24   dates for yet more of Mattel's 30(b)(6) designees, MGA inexplicably, and in bad

25   faith, filed this motion to compel. As things currently stand, MGA's motion seeks

26

27   [112]   Corey Dec. Exh. 1.

28

07209/2037060.4

-31-

EXHIBIT 9

PAGE 151

MATTEL'S OPPOSITION TO MOTION TO COMPEL

1  to compel production of documents that have either already been resolved or that are

2  privileged, and to compel witnesses that have already been provided.  The motion is,

3  in a word, meritless.  It is well within the Discovery Master's discretion to sanction

4  MGA's unconscionable conduct.

### Conclusion

6      For the foregoing reasons, the Court should deny MGA's motion to compel in

7  its entirety and sanction MGA in the amount of $7,500, which represents a portions

8  of the costs incurred by Mattel in opposing this motion.

9

10  DATED: January 16, 2007          QUINN EMANUEL URQUHART OLIVER &
                                     HEDGES, LLP
11

12                              By_____

13                                   Jon D. Corey
                                     Attorneys for MATTEL, INC.
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT  9

# EXHIBIT 10

RightFAX                    8/30/2007 2:34   PAGE 002/006   Fax Server

CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
Priority ___   Send ___
Entered ___    Closed ___
JS-5/JS-6 ___  JS-2/JS-3 ___
Scan Only ___  Docketed on CM ___
____ THIS CONSTITUTES NOTICE OF
     ENTRY AS REQUIRED BY FRCP 77(d)

8/29/07

EASTERN DIVISION
BY ___ DEPUTY

# PRIORITY SEND
## & ENTERED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
<u>CIVIL MINUTES -- GENERAL</u>

Case No.   CV 04-09049 SGL (RNBx)                    Date:  August 27, 2007

Title:     CARTER BRYANT -v- MATTEL, INC.
           AND CONSOLIDATED ACTIONS
======================================================================
PRESENT:  HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

           Gina L. Guzman                         Theresa Lanza
           Courtroom Deputy Clerk                 Court Reporter

ATTORNEYS PRESENT FOR CARTER            ATTORNEYS PRESENT FOR MATTEL:
BRYANT:

John W. Keker, Esq.                     John B. Quinn, Esq.
(morning session only)                  Michael T. Zeller, Esq.
                                        Jon D. Corey, Esq.

ATTORNEYS PRESENT FOR MGA:

Patricia Glaser, Esq.
Diana M. Torres, Esq.

PROCEEDINGS:    **ORDER DENYING MOTION FOR TERMINATING SANCTIONS;
                ORDER DENYING REQUEST FOR INTERLOCUTORY
                APPEAL; ORDER REQUIRING FILING OF AFFIDAVITS RE
                EVIDENCE PRESERVATION**

     This matter is before the Court on MGA's and Carter Bryant's Motion for Terminating
Sanctions, filed on July 24, 2007 (docket #689).  This matter was heard on August 27, 2007, at
which time it was taken under submission.  The Court has considered the moving, opposition, and
reply briefs, as well as the many declarations and other evidence presented by the parties.  The

MINUTES FORM 90                                  Initials of Deputy Clerk _ glg
CIVIL -- GEN                                     Time: 02/52
                           1                     **Docket No. 895**

EXHIBIT 10

PAGE 153

Court has also considered the arguments presented at the August 27 hearing and the sworn testimony given by Michael C. Moore, in-house counsel for Mattel. Although at the hearing the Court indicated it would defer ruling on the present motion pending further filings by all parties regarding their efforts to preserve evidence, upon further reflection the Court sees no reason to delay ruling on the current motion.[1]  As set forth below, the Court **DENIES** the motion.

Based on their inherent power to sanction for "abusive litigation practices," district courts may impose sanctions against a party who destroys evidence, including the ultimate sanction of dismissal.  Leon v. IDX Systems Corp., 464 F.3d 951, 958 (9th Cir. 2006).  Dismissal is a harsh sanction, which may nonetheless be imposed upon those parties who have "engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings." Anheuser-Busch, Inc. v. Natural Beverage Distributors, 69 F.3d 337, 348 (9th Cir. 1995).  However, before imposing the ultimate sanction of dismissal, district courts should consider five factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions."  Id.  Nevertheless, district courts need not make explicit findings regarding each of these factors and, in any event, "a finding of willfulness, fault, or bad faith is required for dismissal to be proper."  Leon, 464 F.3d 951, 958 (9th Cir. 2006) (internal quotation marks and citation omitted).

"A party's destruction of evidence qualifies as willful spoliation if the party has 'some notice that the documents were potentially relevant to the litigation before they were destroyed.'"  Id. at 959 (quoting United States v. Kitsap Physicians Serv., 314 F.3d 995, 1001 (9th Cir. 2002) (finding no willful spoliation where documents were destroyed in the routine course of business)).  Neither Leon nor Kitsap elaborate on when a party has the "notice" necessary to trigger the duty to preserve evidence.  However, in In re Napster, Inc. Copyright Litigation, 462 F.Supp.2d 1060, 1068 (N.D. Cal. 2006), the district court presented a persuasive discussion of the standard, first rejecting an argument that the duty to preserve evidence arises only when litigation is "imminent," and then setting forth a lesser standard.  Specifically, the Napster court noted that the duty arose "when a party should have known that the evidence may be relevant to future litigation," and that any such "future litigation" must be "probable," and not merely "possibl[e]." (internal quotation marks and citation omitted).

Keeping in mind these standards, the Court turns to the categories of evidence MGA and Bryant allege that Mattel has despoiled.  As articulated by the Court at the hearing on this matter, those categories are (1) Mattel employees' emails, (2) documents maintained on the Zeus document storage system, (3) the delay in producing certain Rule 30(b)(6) witnesses, (4) Carter

---

[1]  By the same token, upon further reflection, the Court sees no reason to delay ruling on MGA's request for interlocutory appeal of the present order.  See 28 U.S.C. § 1292(b) (stating that certifications for interlocutory appeal should be set forth in the order to be appealed).  The Court's ruling on that matter appears infra.

MINUTES FORM 90
CIVIL -- GEN

2

EXHIBIT  10

PAGE  154

Bryant's missing phone records, and (5) Carter Bryant's missing time records.

In considering the arguments of the parties regarding when Mattel's duty to begin to preserve evidence arose, the Court determines that November 24, 2003, marks the date when litigation between Mattel and Bryant became more than merely speculative and in fact became probable. On this date, in-house counsel for Mattel received in discovery in an unrelated action a copy of a contract between MGA and Bryant that pre-dated Bryant's resignation from Mattel. This contract appeared to Mattel to violate certain employment agreements executed by Bryant and Mattel, thus giving rise to one of the current consolidated actions. Although prior to this date an internal investigation may have raised a suspicion on Mattel's part that litigation might arise, there was no evidence presented to the Court that Mattel should have known it had a viable claim against Bryant before November 2003. Cf. Fed. R. Civ. P. 11(b)(3) ("By presenting to the court . . . a pleading . . . , an attorney . . . is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, . . . the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .").

The Court heard testimony from Michael C. Moore, in-house counsel for Mattel, regarding the efforts to preserve email communications and other evidence. Counsel for MGA and Bryant cross-examined Mr. Moore at the hearing on this matter. The Court credits his testimony. The efforts Mr. Moore described regarding the preservation of emails is reasonable, and certainly does not amount to spoliation. Moore described communications with specific individuals identified by Mattel as those most likely to have information relevant to the litigation and efforts made to preserve any evidence those individuals had in their custody or control. Emails not otherwise archived from the relevant time period – mostly September and October, 2000 – had already been deleted from Mattel's email servers in accordance with its email retention policies. Mattel cannot be faulted for deleting these emails in the regular course of business before it had notice of its claims against Bryant.

In April, 2005, the current litigation took a dramatic turn, when MGA filed suit against Mattel. At that time, all Mattel employees were instructed to maintain any evidence potentially relevant to the litigation. When that suit was filed, Mattel took action to preserve all of its emails, capturing emails that date back to December, 2004. They retain these backup tapes to this day. MGA and Bryant make much of Mattel's failure to suspend its 90-day auto-delete policy regarding emails, but fail to address two key points: First, Mattel altered only the storage mechanism for its emails, it did not actually delete any emails; and second, Mattel, a number of years ago, informed MGA that it was not planning on suspending its 90-day auto-delete policy, and MGA did not at that time object.

As for the Zeus tapes, there is simply no evidence of spoliation. First and foremost, as the system has been described to the Court, the system is a cumulative file system that continues to accumulate. The system is still in operation, does not have an auto-delete function, and

MINUTES FORM 90
CIVIL -- GEN

3

Initials of Deputy Clerk __glg_____
Time: 02/52
Docket No. 895

EXHIBIT _10_

PAGE _155_

information dating back to all relevant time period in this case may be accessed from it. Additionally, Mattel's in-house counsel testified as to the existence of several backup tapes that it can make available to MGA and Bryant. Finally, outside of pure speculation, there is no evidence that anyone has deleted anything from the Zeus system. Although production issues may still remain with respect to these data, preservation of this data, in the Court's view, is simply not an issue based on the record before the Court.

The delay in producing certain Rule 30(b)(6) witnesses is not a proper basis for terminating sanctions in this case. No motions to compel were brought to compel these witnesses's depositions at earlier times, and MGA and Bryant's accusations that the delay in producing them for deposition is part of a cover-up of the destruction of evidence is mere unfounded speculation. Moreover, the Court is mindful that MGA has been found by the discovery master to be guilty of the very same unexcused delay of which it accuses Mattel. See August 14, 2007, J. Infante Order, at 8 and 9 (attached to the Supplemental Proctor Decl. as Ex. 1).

Although Mattel is at a loss to explain the missing phone records from the critical month of October, 2000, there is no evidence that the records were destroyed. Moreover, other evidence presented by Mattel, especially phone records produced by Bryant that show he was in contact with MGA during that time period, suggest that the missing records would not assist Bryant.

The "missing" time records were either never created or were deleted. There is no evidence that the latter occurred. In fact, the only evidence on this point, from Mattel's Rule 30(b)(6) witness, is that although deletion of time records is possible, he was unaware of any instances of that occurring. Artavia Depo. 116, 170-71.

In sum, MGA and Bryant have failed to present any evidence regarding the "willfulness, fault, or bad faith" required to justify the imposition of terminating sanctions. Leon, 464 F.3d at 958. Many of MGA and Bryant's allegations, especially those raised in connection with Mattel's failure to suspend its auto-delete policy (portrayed as a wholesale failure to preserve emails less than 90-days old) and the availability of data from the Zeus system, are nothing more than rhetoric laced with hyperbole. Other allegations, such as Mattel's motive for delaying certain Rule 30(b)(6) depositions, and the destruction of Bryant's October, 2000, phone records and time records, are nothing more than sheer speculation, unsupported by evidence. Although counsel impressed upon the Court MGA's conviction of the righteousness of its cause, such overzealous conviction as witnessed by the Court at the hearing is no substitute for proof.

Accordingly, the Court **DENIES** MGA's and Bryant's Motion for Terminating Sanctions.

At the hearing, counsel for MGA and Bryant requested the Court certify the present order for interlocutory appeal. That request is **DENIED**. Permissive interlocutory appeals are governed by 28 U.S.C. § 1292(b):

When a district judge, in making in a civil action an order not otherwise

MINUTES FORM 90
CIVIL – GEN

                                    4

Initials of Deputy Clerk __gjg_____
Time: 02/52
**Docket No. 895**

EXHIBIT 10
PAGE 152

appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

Id. Here, there is no "controlling question of law" in controversy.  The law is quite settled. Accordingly, certification for interlocutory appeal of the present order is unwarranted.

As stated at the hearing, the Court **ORDERS** all parties to set forth, in affidavit form, their preservation efforts and policies with respect to the present litigation on or before September 10, 2007.

**IT IS SO ORDERED.**

MINUTES FORM 90
CIVIL – GEN

5

Initials of Deputy Clerk __glg_____
Time: 02/52
**Docket No. 895**

EXHIBIT _10_

PAGE _157_

RightFAX                    8/30/2007 2:34     PAGE 001/006     Fax Server

**From:**    Name:         United States District Court
                           312 North Spring Street
                           Los Angeles, CA 90012
             Voice Phone:  (213) 894-5474


**To:**      Name:         Michael Zeller
             Company:

                           865 S Figueroa St, 10th Floor,
             City/State:   Los Angeles, CA 90017-2543
             Fax Number:   213-443-3100



**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

## Automated Document Delivery Service
*Notice pursuant to Rule 77(d) FRCiv.P*
*The attached copy is hereby served upon you pursuant to Federal Rule of Civil Procedure 77(d).*

Fax Notes:

Case 2:04-CV-09049 : CARTER BRYANT V. MATTEL INC

*Pursuant to General Order 06-07, Section F, the following documents shall be submitted in the traditional manner: Pen Registers, Search
Warrants, Seizure Warrants, Wire Taps, Bond Related Documents, Under Seal and In-Camera Documents, and All Charging Documents
(Complaints, Informations, Indictments, and Superseding Charging Documents). All other documents filed in cases unassigned to a
judge shall be filed electronically with a copy e-mailed to the criminal intake mailbox for the appropriate division. The proper e-mail
address for each division is as follows:*

*Western Division: CrimIntakeCourtDocs-LA@cacd.uscourts.gov
Southern Division: CrimIntakeCourtDocs-SA@cacd.uscourts.gov
Eastern Division: CrimIntakeCourtDocs-RS@cacd.uscourts.gov*

*For additional information and assistance, please refer to the CM/ECF page on the Court website at www.cacd.uscourts.gov.*

**Switch to e-mail delivery and get these documents sooner!**
**To switch, complete and submit**
**Optical Scanning Enrollment / Update form G-76.**
**Call 213-894-5474 for help and free technical support.**

*If you received this document in error because the attorney with whom this document is directed is no longer the attorney on the case,
a Notice of Change of Attorney Information, form G-6, must be filed. If there are other cases which you've received documents for
which you are no longer the attorney, separate notices must be filed for each case. Failure to do so will result in the continued sending
of documents to you. Form G-6 is available on the court's website at www.cacd.uscourts.gov or at the Clerk's Office.*

Date and time of transmission:           Thursday, August 30, 2007 2:34:04 PM
Number of pages including this cover sheet:  06

EXHIBIT _10_

PAGE _158_

# EXHIBIT 11

1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
    John B. Quinn (Bar No. 90378)
2   Michael T. Zeller (Bar No. 196417)
    Jon D. Corey (Bar No. 185066)
3   Shane H. McKenzie (Bar No. 228978)
    865 South Figueroa Street, 10th Floor
4   Los Angeles, California 90017-2543
    Tel.: (213) 443-3000
5   Fax: (213) 443-3100

6   Attorneys for Plaintiff and Counter-Defendant
    Mattel, Inc.

7

8                    UNITED STATES DISTRICT COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10

11  MATTEL, INC., a Delaware          )   Case No. CV 04-09059 NM (RNBx)
    corporation,                      )
12                                    )   NOTICE OF DEPOSITION OF
                      Plaintiff,      )   ISAAC LARIAN
13                                    )
           v.                         )   Date:      January 4, 2005
14                                    )   Time:      9:30 a.m.
    CARTER BRYANT, an individual, and )   Location:  865 S. Figueroa Street
15  DOES 1 through 10, inclusive,     )              10th Floor
                                      )              Los Angeles, CA 90017
16                    Defendants.     )
                                      )
17  ─────────────────────────────────)
    CARTER BRYANT, on behalf of       )
18  himself, all present and former   )
    employees of Mattel, Inc., and the)
19  general public,                   )
                                      )
20                 Cross-Complainant, )
                                      )
21         v.                         )
                                      )
22  MATTEL, INC., a Delaware          )
    corporation,                      )
23                                    )
                   Cross-Defendant.   )
24                                    )

25

26

27
                                          EXHIBIT 11
28
                                          PAGE 159

07209/616304.1
                              NOTICE OF DEPOSITION OF ISAAC LARIAN

1  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2       PLEASE TAKE NOTICE that on January 4, 2005, beginning at 9:30

3  a.m., plaintiff and counter-defendant Mattel, Inc. ("Mattel") will take the

4  deposition upon oral examination of Isaac Larian at the office of Quinn Emanuel

5  Urquhart Oliver & Hedges LLP, 865 S. Figueroa Street, 10th Floor, Los Angeles,

6  CA 90017.

7       PLEASE TAKE FURTHER NOTICE that the deposition will take

8  place before a duly authorized notary public or other officer authorized to

9  administer oaths at depositions, and will continue from day to day, Sundays,

10  Saturdays and legal holidays excepted, until completed.

11       PLEASE TAKE FURTHER NOTICE that, pursuant to Fed. R. Civ.

12  P. 30(b)(2), the deposition will be videotaped.

13

14  DATED: December 15, 2004

15            QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

16

17

18            By    Shane McKenzie

19            Shane H. McKenzie
             Attorneys for Plaintiff and Counter-Defendant
20            Mattel, Inc.

21

22

23

24

25

26

27

28                            EXHIBIT 11

                             PAGE 160

07209/616304.1              -2-

                  NOTICE OF DEPOSITION OF ISAAC LARIAN

1

**PROOF OF SERVICE**

1013A(3) CCP Revised 5/1/88

2   STATE OF CALIFORNIA        )
                              ) SS
3   COUNTY OF LOS ANGELES     )

4        I am employed in the county of Los Angeles State of California. I am over the age of 18
and not a party to the within action; my business address is: 865 South Figueroa Street, 10th Floor,
5   Los Angeles, California 90017.

6        On December 15, 2004, I served the foregoing document described as **NOTICE OF**
**DEPOSITION OF ISAAC LARIAN** on all interested parties in this action.

7
                              **Douglas A. Wickham, Esq.**
8                             **Keith A. Jacoby, Esq.**
                              **Dominic Messiha, Esq.**
                              **Littler Mendelson**
9                             **A Professional Corporation**
                              2049 Century Park East, 5th Floor
10                            Los Angeles, California 90067-3107
                              **FAX: 310-553-5583**
11

12  [   ]   By placing [ ] the original [ ] true copies thereof enclosed in sealed envelopes addressed as
follows:

13  [   ]   **BY MAIL:**   I deposited such envelope in the mail at Los Angeles, California. The
envelope was mailed with postage thereon fully prepaid. As follows: I am "readily familiar"
14  with the firm's practice of collection and processing correspondence for mailing. Under that
practice it would be deposited with U.S. postal service on that same day with postage thereon
15  fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that
on motion of the party served, service is presumed invalid if postal cancellation date or
16  postage meter date is more than one day after date of deposit for mailing in affidavit.

17  [ X ]   **BY TELECOPIER** By transmitting the above listed document(s) to the fax number(s)
set forth above on this date.
18

19  Executed on December 15, 2004, at Los Angeles, California.

20  [   ]   (State) I declare under penalty of perjury under the laws of the State of California that the
above is true and correct.

21  [ X ]   (Federal) I declare that I am employed in the office of a member of the bar of this court at
whose direction the service was made.
22

23

24  Rebecca A. Ramos_____        _____
        Print Name                        Signature
25

26

27

28

EXHIBIT  _11_

PAGE  _16_

## PROOF OF SERVICE
1013A(3) CCP Revised 5/1/88

STATE OF CALIFORNIA     )
COUNTY OF LOS ANGELES )

     I am employed in the county of Los Angeles State of California.  I am over the age of 18 and not a party to the within action; my business address is: 1055 West Seventh Street, Los Angeles, CA 90017.

     On **December 15, 2004**, I caused to be served by personal service the foregoing document(s) described as **Notice of Deposition of Isaac Larian** on all interested parties in this action.

[ X ]   By placing [   ] the original [ X ] true copies thereof enclosed in sealed envelopes addressed as follows:

> **Diana M. Torres, Esq.**
> **O'Melveny & Meyers**
> 400 So. Hope Street
> Los Angeles, CA 90071
> (213) 430-6407

[ X ]   **BY PERSONAL DELIVERY** I delivered such envelope by hand to the office of the addressee.

Executed on **December 15, 2004**, at Los Angeles, California.

[   ]   (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

[ X ]   (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

     Leandro Dimonriva

_____
Type or Print Name

_____
Signature

EXHIBIT __11__
PAGE __162__

# EXHIBIT 12

Priority ✓
Send ✓
Enter
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES--GENERAL

Case No.  **CV 04-9059-NM (RNBx)**                     Date: **March 23, 2005**

Title: **Mattel, Inc. v. Carter Bryant, et al.**

## DOCKET ENTRY

PRESENT:
      **HON. ROBERT N. BLOCK, UNITED STATES MAGISTRATE JUDGE**

| Marsha Eugene | n/a |
|---|---|
| Deputy Clerk | Court Reporter |

ATTORNEYS PRESENT FOR PLAINTIFFS:    ATTORNEYS PRESENT FOR DEFENDANTS:
   None present                         None present

DOCKETED ON CM
MAR 25 2005
BY _____ 061

**PROCEEDINGS:  (IN CHAMBERS)**

    Having reviewed Judge Manella's ruling on the remand motion and conferred with Judge Manella, the Court has concluded that Judge Manella's ruling sufficiently changes the posture of this case to warrant the Court requiring counsel to meet and confer further with respect to the following pending discovery motions:

    1.    **Mattel's Motion to Compel Production of Documents**

    2.    **MGA's Motion to Compel the Declassification of Certain Documents Produced by Mattel as "Confidential-Attorneys' Eyes Only"**

    3.    **Mattel's Motion to Compel Inspection of Original Documents and Tangible Things**

    4.    **Bryant's Motion to Compel Further Deposition Testimony from Ann Driskill and Alan Kaye and for the Appointment of a Special Master**

    Further, the Court has concluded that it cannot rely on counsel to meet and confer in good faith with respect to the foregoing motions on their own.  Accordingly, **lead counsel of record for Mattel, Bryant and MGA** are ORDERED to appear before the Court in person on April 26, 2005 at 9:30 a.m. in Courtroom 540 of the Roybal Building, for the purpose of meeting and conferring under the Court's auspices.  If and

MINUTES FORM 11
CIVIL-GEN

Initials of Deputy Clerk _____ for ME

EXHIBIT _12_

PAGE _163_

(195)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES--GENERAL**

Case No.:    **CV 04-9059-NM (RNBx)**                                    **March 23, 2005**
            <u>**Mattel, Inc. v. Carter Bryant, et al.**</u>                              **Page 2**

-----------------------------------------------------------------------------------------------

when the Court is satisfied that counsel indeed have made a good faith effort to
eliminate the necessity for hearing these Motions and/or to eliminate as many of the
disputes as possible, the Court will determine whether to (a) allow counsel to orally
supplement their written submissions, and then rule on the Motions, or (b) require
counsel to submit further briefing.

    With respect to Mattel's just-filed **Motion to Compel Deposition of Isaac**
**Larian**, the Court has concluded after reviewing the parties' respective contentions in
the Joint Stipulation and their respective Supplemental Memoranda that oral argument
will not be of material assistance in determining the Motion. Accordingly, the hearing
currently set for April 5, 2005 is ORDERED off calendar (<u>see</u> Local Rule 7-15), and the
Court now rules as follows.

    The Court does not find the authorities cited by MGA to be particularly
persuasive. Further, MGA's purported concern about the possibility of Mr. Larian being
subjected to multiple and repeated depositions is a complete red herring. Federal Rule
30(d)(2) limits the deposition to one day of seven hours, unless otherwise authorized by
the Court or stipulated to by the parties. If Mattel later seeks to redepose Mr. Larian on
the basis of additional information developed in subsequent discovery, the Court will
take into account the fact that Mattel persisted in going forward with Mr. Larian's
deposition at the outset of discovery. The Motion therefore is GRANTED, and MGA
is ORDERED to produce Mr. Larian for a deposition on a date mutually convenient to
the parties within 20 days of the date of this ruling.

    MGA's request that the Court impose in advance "strict limits on the length and
scope of the deposition" is DENIED without prejudice to MGA availing itself of the
procedures specified in Federal Rule 30(d)(4) if MGA truly believes that the deposition
is being conducted in bad faith or in such manner as unreasonably to annoy, embarrass,
or oppress the deponent or party. Of course, if MGA does suspend the deposition for
the purpose of seeking protective relief, and the Court then finds that MGA's position
was not well taken, Mr. Larian will end up being subjected to another deposition
session.

    With respect to the sanctions issue, the Court has concluded that notwithstanding

MINUTES FORM 11                                    Initials of Deputy Clerk _NW for ME_
CIVIL-GEN
                                                   EXHIBIT _12_
                                                   PAGE _16d_

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES--GENERAL**

Case No.: **CV 04-9059-NM (RNBx)**                         March 23, 2005
**Mattel, Inc. v. Carter Bryant, et al.**                      Page 3

-----------------------------------------------------------------------------------------------------

MGA's failure to convince the Court of the merits of its position, MGA's objection to the taking of the Larian deposition at the outset of discovery was substantially justified and/or that the totality of the circumstances here make an award of expenses to Mattel unjust. Accordingly, each side is ORDERED to bear its own expenses incurred in connection with this Motion.

Finally, as to the issue raised by MGA concerning Mattel's alleged practice of serving its portion of the Joint Stipulations with citations to declarations that are not served concurrently but rather are merely referenced with blank spaces for the paragraph citations, the Court concurs with MGA that the "better practice" is for the moving party to serve its portion(s) of the Joint Stipulation with all citations filled in and to serve concurrently with its portion(s) of the Joint Stipulation all referenced declarations and exhibits. The Court will expect all the parties to conform with this "better practice" henceforth.


cc:    Judge Manella

Initials of Deputy Clerk _____ for ME

EXHIBIT _12_

PAGE _165_

# EXHIBIT 13

Case 2:04-cv-09059-SGL-RNB   Document 230   Filed 06/16/2006   Page 1 of 3

I hereby certify that this document was faxed to all counsel (or parties) at their respective, most recent fax number of record, in this action, on this date.

DATED: 6-16-06

J. DeRose

DEPUTY CLERK

Priority ___
Send ___
Enter ___
Closed ___
JS-5/JS-6 ___
JS-3 ✓
Scan Only ✓

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES—GENERAL

Case No. CV 04-9059-SGL (RNBx)          Date: **June 16, 2006**

Title: <u>Mattel, Inc. v. Carter Bryant, et al.</u>

DOCKETED ON CM

JUN 1 9 2006

BY _____ 024

**DOCKET ENTRY**

PRESENT:

### HON. <u>ROBERT N. BLOCK</u>, UNITED STATES MAGISTRATE JUDGE

|  <u>Trina DeBose</u> | <u>n/a</u> |
|---|---|
| Deputy Clerk | Court Reporter |

ATTORNEYS PRESENT FOR PLAINTIFFS:          ATTORNEYS PRESENT FOR DEFENDANTS:
None present                              None present

PROCEEDINGS:  (IN CHAMBERS)

### <u>Mattel's Motion to Enforce the Court's Order of March 23, 2005 and for Sanctions</u>

After reviewing the parties' respective contentions in the Joint Stipulation, the Court has concluded that neither further briefing nor oral argument will be of material assistance in determining this Motion. Accordingly, the hearing currently set for July 11, 2006 is ORDERED off calendar (<u>see</u> Local Rule 7-15), and the Court now rules as follows.

The consequence of Mattel not insisting on the Larian deposition going forward within 20 days of the Court's March 23, 2005 ruling is that the Court's order that MGA produce Mr. Larian for a deposition on a date mutually convenient to the parties within 20 days of the date of the ruling became subject to Judge Manella's May 20, 2005 order staying all discovery.

However, once the stay was lifted by Judge Larson on May 16, 2006, and Mattel's counsel sent his May 24, 2006 letter expressing Mattel's desire to proceed with the deposition in accordance with the terms of the Court's March 23, 2005 ruling, it again became incumbent on MGA to comply with that ruling. While it would not have been unreasonable for MGA's counsel to respond with alternative proposed dates within the 20-day time frame from receipt of Mattel's counsel's May 24, 2006 letter, insisting that Mr. Larian would not be available until July 25-26 (and not even committing to those dates as firm dates) was neither reasonable nor in compliance with the Court's original

MINUTES FORM 11
CIVIL-GEN

Initials of Deputy Clerk ____

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES--GENERAL

Case No.:    CV 04-9059-SGL (RNBx)                                    **June 16, 2006**
<u>Mattel, Inc. v. Carter Bryant, et al.</u>                                             **Page 2**

---

ruling.  Accordingly, Mattel's Motion is GRANTED as follows.  MGA is ORDERED to produce Mr. Larian for a deposition either (a) on a mutually convenient date agreed upon by the parties, or (b) if the parties are unable to agree on a mutually convenient deposition date, then on any date noticed by Mattel provided that 10 days' notice is given.  MGA and Mr. Larian are forewarned in advance that the Court will not tolerate any further delaying tactics.

With respect to the sanctions issue, the Court finds that Mattel did make a good faith effort to obtain the discovery sought without court action.  Moreover, the Court declines to find that MGA's opposition to the motion was substantially justified or that other circumstances here make an award of Mattel's reasonable expenses unjust.  The Court also notes that, contrary to MGA's contention, there is no requirement under Fed. R. Civ. P. 37(a)(4) that the prevailing party in a discovery motion show prejudice before sanctions can be imposed on the party whose conduct necessitated the motion, the attorney advising such conduct, or both of them.  Accordingly, the Court finds pursuant to Fed. R. Civ. P. 37(a)(4)(A) that Mattel is entitled to an award of its reasonable expenses incurred in making this Motion.  However, the $3,800 in expenses sought by Mattel appears to the Court to be unreasonable and excessive.  In the Court's view, it should not have taken more than 3 hours of associate time and 1 hour of partner time to prepare this relatively straightforward motion, in compliance with Local Rule 37-2.  It therefore is ORDERED that, within 10 days of this ruling, MGA's counsel pay Mattel the sum of **$1,360**, which the Court finds to be Mattel's reasonable expenses incurred in making this Motion.

The clerk is directed to fax courtesy copies of this Minute Order to counsel, and to confirm telephonically their receipt of it.


cc:    Judge Larson


EXHIBIT _13_

PAGE _167_

Initials of Deputy Clerk _RU_

# EXHIBIT 14

**CONFORMED COPY**

1   Hon. Edward A. Infante (Ret.)
    JAMS
2   Two Embarcadero Center
    Suite 1500
3   San Francisco, California 94111
    Telephone:    (415) 774-2611
4   Facsimile:    (415) 982-5287

5

6

7                   UNITED STATES DISTRICT COURT

8                   CENTRAL DISTRICT OF CALIFORNIA

9                         EASTERN DIVISION

10

11   CARTER BRYANT, an individual,          CASE NO. C 04-09049 SGL (RNBx)
                                            JAMS Reference No. 1100049530
12              Plaintiff,

13         v.                               Consolidated with
                                            Case No. CV 04-09059
14   MATTEL, INC., a Delaware corporation,  Case No. CV 05-2727

15              Defendant.                  **ORDER MODIFYING PROTECTIVE
                                            ORDER**
16

17   CONSOLIDATED WITH
     MATTEL, INC. v. BRYANT and
18   MGA ENTERTAINMENT, INC. v. MATTEL,
     INC.
19

20                        I. INTRODUCTION

21         Presently pending for decision is MGA Entertainment, Inc.'s ("MGA") and Carter

22   Bryant's ("Bryant") "Motion for Clarification Of The Discovery Master's January 25, 2007 Order

23   Or For Protective Order Pursuant to Rule 26(c)." At issue is whether the January 25, 2007 Order

24

25

26

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT  14

PAGE  168

1   ("Order") requires Bryant to produce drawings and designs in his possession that he created in

2   2006 or later[1] for products currently under development and not yet released to the public.

3   MGA and Bryant filed their motion on February 23, 2007; Mattel submitted an opposition brief

4   on March 2, 2007; and MGA and Bryant submitted a reply brief on March 7, 2007. The matter

5   was heard via telephonic conference on March 19, 2007, and taken under submission pending the

6   parties' submission of a stipulated protective order, which was received on April 23, 2007.

7       Having considered the motion papers and comments of counsel at the hearing, and for the

8   reasons set forth below, the motion for clarification of the Order is denied. There is good cause,

9   however, to modify the current protective order to further limit the disclosure of drawings and

10  designs for MGA products currently under development and not yet released to the public.

11                          II. BACKGROUND

12      The Order that is the subject of this motion granted Mattel's motion to compel Bryant to

13  produce documents responsive to numerous document requests relating to the development of

14  Bratz and other projects that Bryant worked on for MGA. In ruling on Mattel's motion, the

15  Discovery Master rejected Bryant's relevancy and overbreadth objections to producing

16  documents relating to work that Bryant performed for MGA after the release of the First

17  Generation Bratz dolls on June 30, 2001.

18      Neither party specifically addressed whether Mattel was entitled to drawings and designs

19  for MGA products on which Bryant worked and that are currently under development and not yet

20  released to the public. Mattel has taken the position that the Order requires production of such

21  documents.

22      During the meet and confer process, MGA and Bryant requested that Mattel "agree to a

23  limitation on the disclosure of product drawings and designs for products in development until

24  after that product has been made available for public sale." Torres Decl., Ex. A. Mattel rejected

25

26  _____

[1]   MGA and Bryant's Reply Brief at 4:28-5:28, n. 4.

27

28
    Bryant v. Mattel, Inc.,                                                            2
    CV-04-09049 SGL (RNBx)

EXHIBIT 14

PAGE 169

1   the proposal, asserting that the proposal "would allow Bryant and/or MGA to unilaterally deem

2   something to be 'in development' and thus not produce it, including for designs Bryant previously

3   created and to which Mattel may have rights." Torres Decl., Ex. A. The parties had further

4   discussions regarding the disclosure of drawings and designs for products in development but

5   were unable to reach an agreement.

6           MGA and Bryant now request "a clarification that the Order does not require the

7   production of drawings or designs for products that have not yet been released." MGA and

8   Bryant's Motion at 2:13-15. In the alternative, MGA and Bryant move for a protective order

9   pursuant to Rule 26(c), Fed.R.Civ.P., providing that drawings or designs for products that have

10  not yet been released (1) need not be produced, or (2) shall be produced only after the products

11  have been released to the public, or (3) shall be produced under other very restrictive conditions

12  to protect their confidentiality. MGA and Bryant contend that "[e]ven if some of the 'Bratz'

13  drawings that Bryant created for MGA after June 30, 2001, may be relevant to claims at issue in

14  this action, drawings for unreleased products are not." MGA and Bryant's Motion at 4:28-5:2.

15  Further, they contend that such drawings are highly valuable trade secret documents whose

16  disclosure could severely jeopardize MGA's business.

17          Mattel opposes the motion on numerous grounds. First, it contends that the motion for

18  clarification is, in effect, an improper motion for reconsideration that does not satisfy the

19  standards for reconsideration, and is another attempt to withhold highly probative evidence that

20  bears directly on Mattel's claims and defenses. Mattel contends that the Order clearly requires

21  Bryant to produce his drawings, and that MGA and Bryant are now precluded from withholding

22  documents relating to unreleased products because they failed to raise the issue earlier. Second,

23  Mattel asserts that drawings and designs for unreleased products are relevant to its claims for

24  breach of contract, breach of fiduciary duty, breach of the duty of loyalty, copyright infringement,

25  and misappropriation of trade secrets. Third, Mattel contends that the protective order currently

26  in place, which addresses trade secret information in particular, is adequate to protect MGA and

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

3

EXHIBIT _14_

PAGE _170_

1   Bryant's interests.  Fourth, Mattel contends that the additional protections MGA and Bryant seek

2   under Rule 26(c), Fed.R.Civ.P., would hamstring its ability to investigate and prosecute its claims

3   and defend against MGA's claims.

### III. DISCUSSION

A. The Order Requires Production of Drawings and Designs for Products Not Yet Released

6          The Order clearly requires Bryant to produce all documents in his possession, custody or

7   control relating to Bratz and other products that Bryant has worked on with or for MGA.  Among

8   other things, the Order requires Bryant to produce documents responsive to Mattel's Request Nos.

9   12, 19, 40, 41, and 54.  Request No. 12 seeks production of all documents that refer or relate to

10  work or services that Bryant performed for or on behalf of MGA after October 20, 2000.  See

11  Zeller Decl., Ex. 4.  Request No. 19 seeks production of all documents that refer or relate to

12  designs that Bryant created, authored, produced, conceived of or reduced to practice after October

13  20, 2000 as purported "works-made-for-hire," whether in whole or in part for or on behalf of

14  MGA.  Id.  Request No. 40 seeks production of documents that refer or relate to Bryant's

15  participation in the conception, creation, design, development, sculpting, tooling, production or

16  manufacture of Bratz.  Id.  Request No. 41 seeks production of all documents that refer or relate

17  to designs for Bratz.  Id.  Request No. 54 seeks production of all prototypes, models, samples and

18  tangible items that refer or relate to Bratz.  Id.  Each of these requests covers drawings and

19  designs for Bratz products, regardless of when the drawings and designs were created or whether

20  the products to which they relate have been released.

21          Nowhere does the Order exempt, or even arguably exempt, from production responsive

22  documents relating to products that have not been released.  To the contrary, the Order rejects

23  Bryant's objections based upon relevancy and overbreadth.  In particular, the Order rejects

24  Bryant's "First Generation Bratz" limitation, which sought to limit discovery to only those

25  documents relating to the first dolls sold to the public in the summer of 2001.  Thus, under the

26

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

4

EXHIBIT __14__

PAGE __171__

1  Order, Bryant is required to produce drawings and designs in his possession for products currently

2  under development and not yet released to the public.

3      Because the terms of the Order are clear, MGA's and Bryant's request for clarification of

4  the Order is denied.

5  B. There is Good Cause to Modify the Protective Order as to Drawings and Designs for Products

6  Not Yet Released

7      In the event that designs and drawings for unreleased products under development are

8  found relevant and within the scope of the Order, MGA and Bryant move in the alternative for a

9  protective order pursuant to Rule 26(c), Fed.R.Civ.P., that would provide additional protections

10 not available under the protective order currently in place.  More specifically, MGA and Bryant

11 seek either (1) an order that the designs and drawings for MGA's unreleased products not be

12 revealed at all; (2) an order delaying production of designs and drawings for MGA's unreleased

13 products until the products are released; (3) an order requiring the designs and drawings to be

14 placed in an escrow for an expert to review and prohibiting the expert from removing or copying

15 the documents; or (4) an order providing that the drawings and designs for unreleased products be

16 produced for inspection by only an independent expert at the offices of MGA's counsel, with no

17 copying, photographing or sketching permitted.  Because there is already a protective order in

18 place, MGA and Bryant's motion is construed as one for modification of the existing protective

19 order.[2]

20              1. Rule 26 Standards

21      Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain

22 discovery regarding any matter, not privileged, that is relevant to the claim or defense of any

23

24      _____

25      [2] Mattel's contention that the present motion is an improper motion for reconsideration is without merit. To
    the extent MGA and Bryant seek protection under Rule 26(c), Fed.R.Civ.P., their motion raises issues that were not

26  within the scope of Mattel's motion to compel production of documents from Bryant.  Furthermore, paragraph 19 of
    the protective order currently in place provides that a party may, at any time, apply to the Court for a modification of

27  its terms.

28
   Bryant v. Mattel, Inc.,                                                                     5
   CV-04-09049 SGL (RNBx)

EXHIBIT _14_

PAGE _172_

1    party." Fed.R.Civ.P. 26(b)(1). "Relevant information need not be admissible at trial if the

2    discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id.

3    Even when discovery is permissible under Rule 26(b)(1), however, discovery may be limited

4    pursuant to Rule 26(c), Fed.R.Civ.P., which provides for the issuance of a protective order upon

5    motion by a party that has conferred in good faith in an effort to resolve the dispute without court

6    action, and for good cause shown. Rule 26(c) provides for "any order which justice requires to

7    protect a party or person from annoyance, embarrassment, oppression or undue burden or

8    expense," including, among other things, "(1) that the disclosure or discovery not be had; (2) that

9    the discovery may be had only on specified terms and conditions, including a designation of the

10    time or place . . . (5) that the discovery be conducted with no one present except persons

11    designated by the court" and "(7) that a trade secret or other confidential research, development,

12    or commercial information not be revealed or revealed only in a designated way." In general, in

13    determining whether a protective order should issue for trade secrets, the Ninth Circuit requires

14    that a court balance the risk to the disclosing party of inadvertent disclosure of trade secrets to

15    competitors against the risk to the moving party that protection of the trade secret would impair

16    the prosecution of its claims. Brown Bag Software v. Symantec Corp., 960 F.2d 1465, 1470 (9th

17    Cir. 1992) (upholding protective order granting access to source code and other trade secret

18    materials to only an independent consultant).

19                          2. The Documents At Issue Are Relevant

20          In support of its motion for a protective order, MGA and Bryant contend that drawings

21    and designs for products not yet released to the public are not relevant to any of Mattel's claims.

22    As an initial matter, MGA and Bryant contend that Mattel cannot possibly have suffered a

23    cognizable injury relating to MGA's products that have not yet been released, and that Mattel has

24    never taken the position that such products are relevant. MGA and Bryant next contend that the

25    drawings and designs for unreleased products are not relevant to Mattel's counterclaim for

26    copyright infringement because that claim is premised on an allegation that Bryant created the

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

                                                          6

EXHIBIT 14

PAGE 122

1   original Bratz drawings while still employed at Mattel. MGA and Bryant similarly contend that

2   drawings and designs for products not yet released to the public are not relevant to Mattel's

3   original claim that Bryant breached his confidentiality obligations while still employed by Mattel.

4   Because Mattel's claims are based upon events occurring while Bryant was still employed by

5   Mattel, MGA and Bryant believe that drawings and designs for products currently under

6   development -- over six years after the termination of Bryant's employment at Mattel -- have no

7   relevance. MGA and Bryant further contend that the drawings and designs for products currently

8   under development are not relevant to Mattel's counterclaim for trade secret misappropriation.

9   MGA and Bryant reason that the trade secret claim is based on the alleged theft of business

10  information, not drawings and designs for products.

11          Consistent with the analysis previously set forth in the Order, the Discovery Master finds

12  that drawings and designs for unreleased products are relevant to Mattel's claims against Bryant.

13  Mattel claims that it owns works created by Bryant during his Mattel employment, regardless of

14  whether the works resulted in a Bratz doll released at a particular time. Further, Mattel's

15  complaint alleges that Bryant breached his confidentiality obligations while employed by Mattel.

16  As Mattel points out, Bryant has a continuing obligation not to use Mattel's confidential and

17  proprietary information.

18          Drawings and designs for unreleased products are also relevant to Mattel's copyright

19  infringement claim. It is true, as MGA and Bryant point out, that Mattel claims it owns

20  copyrights in Bratz works created by Bryant while still employed by Mattel. Mattel, however,

21  also asserts that Bryant has infringed Mattel's alleged copyrights in Bratz works through his

22  ongoing conduct of reproducing and creating derivative works.

23          Drawings and designs for unreleased products are also relevant to Mattel's counterclaim

24  for trade secret misappropriation. Among other things, Mattel alleges that MGA stole its future

25  line lists that detail the Barbie products that Mattel anticipated producing in 2004. Drawings of

26  unreleased MGA products that resemble unreleased products on Mattel's line lists may support

27

28  Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)                                                                    7

EXHIBIT 14
PAGE 174

1   Mattel's allegation of trade secret misappropriation, even if the line list might potentially be

2   outdated. Further, proof of trade secret theft is also relevant to Mattel's defense against MGA's

3   unfair competition claims.[3]

### 3. The Drawings and Designs Are Entitled to Heightened Protection

5       MGA and Bryant contend that drawings and designs for unreleased products fall squarely

6   within the category of trade secret information and should not be revealed at all, or in the

7   alternative, should not be revealed prior to release of the products. They contend that there is

8   good cause for heightened protection for drawings and designs for unreleased products because

9   any relevance of such drawings and designs is marginal at best, and the potential damage to MGA

10  of any disclosure is substantial. According to MGA and Bryant, there are thirteen lawyers at

11  Mattel's retained law firm who have recently been named in or on briefs submitted by Mattel. In

12  addition, MGA and Bryant estimate that there are numerous other staff members and outside

13  vendors – such as copy services, couriers, court reporters, experts and their respective staffs—

14  who also handle documents in this case on a regular basis. MGA and Bryant contend that the

15  current protective order allows disclosure to each of these groups of people, even for documents

16  restricted as "Confidential – Attorneys' Eyes Only." Moreover, MGA and Bryant contend that

17  Mattel has a practice of summarizing or paraphrasing contents of confidential documents or

18  testimony in briefs and other papers filed with the Court. MGA and Bryant suspect that Mattel

19  may follow this practice with respect to drawings and designs of unreleased products, and thereby

20  release MGA's trade secret information to the public.

21      Mattel opposes any modification of the existing protective order, asserting that the parties

22  contemplated exchanging trade secret information, including "non-public information relating to

---

24      [3] MGA and Bryant's contention that discovery of drawings and designs for unreleased products is barred
    unless and until Mattel complies with California Code of Civil Procedure section 2019.210 is without merit.
25  Drawings and designs for unreleased products are relevant to claims other than the trade secret misappropriation
    claim, such as Mattel's claim for copyright infringement. Furthermore, the case relied upon by MGA and Bryant,
26  Advanced Modular Sputtering, Inc. v. Superior Court, 132 Cal.App.4th 826 (2nd Dist. 2005), is distinguishable from
    the present case in that not all of Mattel's claims are "factually dependent" on the trade secret claim.

EXHIBIT 14
PAGE 175

1   product development and design,"[4] and agreed to certain safeguards for trade secret information.

2   Mattel contends that there is little to no risk of unwarranted disclosure of MGA's trade secrets

3   because Mattel's in-house counsel and employees are not permitted to inspect or know the

4   contents of documents designated as "Confidential--Attorneys' Eyes Only." Mattel also denies

5   disclosing MGA's confidential information in briefs filed with the court.

6       Mattel's argument that MGA is limited to the terms of the current protective order is

7   without merit. The current protective order was negotiated by the parties at the inception of the

8   case, well before all of the claims and defenses were established. At that time, the parties did not

9   fully understand or foresee what documents and trade secrets would be relevant and discoverable

10   under Rule 26, Fed.R.Civ.P. Moreover, paragraph 19 of the protective order provides that a party

11   may, at any time, apply to the court for a modification of its terms.

12       On balance, there is good cause for heightened protection for drawings and designs for

13   unreleased products. MGA and Mattel are direct competitors. MGA has submitted the

14   declaration of Paula Garcia to support its claim of trade secrets. Ms. Garcia is the Vice President

15   of Product Design and Development and is responsible for the design and development of Bratz

16   products. She states that "[w]ithout question, a toy manufacturer's unreleased toy concepts . . .

17   are among its most highly valuable trade secrets." Garcia Decl. at ¶4. She states that "[a]lthough

18   such drawings and designs are valuable even after the product's public release, their value is

19   enormous prior to their public release because it is the new ideas and designs that are most likely

20   to generate new sales." Id. She further states that MGA protects its product designs and drawings

21   by using confidentiality agreements, computer passwords, and security guards. She also states

22   that vendors, manufacturers, suppliers and other third parties who may see a product design late in

23   the development process are required to sign strict confidentiality agreements. Ms. Garcia states

24   that "MGA's drawings for some of its yet-unreleased 'Bratz' products are even more closely

25

26   _____

     [4] Protective Order at 2-3.

27

28   Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)                                       9

EXHIBIT 14
PAGE 176

1   protected." Id. at ¶6. More specifically, she declares that when MGA begins to develop a new

2   Bratz line, only a very limited number of people know about it. Further, Ms. Garcia asserts, "[i]n

3   fact, with respect to some 'Bratz' products, Carter Bryant and I are the only people who know

4   what the concept is and who see the early product drawings. Even after I approve and we have

5   finalized the concept, only a small number of people on the 'Bratz' development team have

6   exposure to the drawings." Id. Thus, drawings and designs for MGA products not yet released to

7   the public are unquestionably valuable trade secret information.

8          Although the protective order currently in place provides for two tiers of protection, MGA

9   points out that even under the higher "Confidential – Attorneys' Eyes Only" tier, MGA's

10  drawings and designs for unreleased products could be disclosed to at least thirteen of Mattel's

11  lawyers, as well as staff members, and also outside vendors such as copy services, court reporters,

12  experts and their staff. Given the number of people involved in the case, MGA is justifiably

13  concerned about the possibility of inadvertent disclosures of trade secrets that could lead to

14  substantial economic injury.

15         In comparison to the potential risk of harm to MGA, Mattel's need for drawings and

16  designs for unreleased products is relatively small. Mattel's claims and defenses are centered

17  upon Bryant's conduct during his employment at Mattel, which ended in October of 2000, and

18  events leading up to the release of the First Generation of Bratz dolls in the summer of 2001.

19  Although the lawsuit is much broader than the First Generation of Bratz dolls, events occurring

20  after the summer of 2001 become less relevant as more time passes. Approximately six years

21  have passed since the launch of the First Generation Bratz dolls. Furthermore, for purposes of

22  determining damages, drawings and designs for released products are far more relevant than

23  drawings and designs for yet unreleased products. Indeed, as MGA and Bryant point out, it is

24  unlikely that Mattel could have suffered any cognizable injury from MGA products that have not

25  yet been released.

26

27

28

Bryant v Mattel, Inc.,
CV-04-09049 SGL (RNBx)

10

EXHIBIT 14

PAGE 177

1      In summary, the potential for inadvertent disclosure under the terms of the existing

2   protective order outweighs Mattel's need for drawings and designs for unreleased products.

3   Accordingly, MGA and Bryant are entitled to additional protective measures to prevent

4   inadvertent disclosure of drawings and designs for unreleased products.

5                          4. Delaying Production of Drawings and Designs Until

6             Products Are Released Would Impair Mattel's Ability To Prosecute Its Claims

7      MGA and Bryant seek a protective order delaying production of drawings and designs for

8   products under development until the products are actually released.  MGA and Bryant anticipate

9   releasing products in the fall of 2007 and the spring of 2008.  MGA and Bryant's Reply at 4:26-

10  28.  MGA and Bryant contend that production of drawings and designs for products under

11  development prior to their release date would impose an unwarranted burden for two reasons.

12  First, MGA and Bryant assert that Mattel's requests are broad.  Second, they contend that

13  requiring production of drawings and designs would be disruptive to the product development

14  process.  They explain that the creative process is fluid, constant, and extremely rapid.  They

15  explain that for some Bratz products, Bryant may create and develop scores of drawings that are

16  modified and improved throughout the development cycle.  Further, MGA often goes back to, or

17  builds on, prior drawings.  MGA and Bryant contend that "to be forced to turn over these

18  drawings throughout the development process before the product line is finalized, particularly as

19  MGA is operating under such short development cycles, would not only substantially compromise

20  the strict confidentiality measures that MGA has in place but would be extremely disruptive to its

21  ability to do business and therefore significantly impact its ability to compete." MGA and

22  Bryant's Motion at 11:16-22.

23      MGA and Bryant's proposal to delay production until products are released is unworkable.

24  Although MGA anticipates releasing products in the fall of 2007 and the spring of 2008, there is

25  no guarantee that MGA will meet those release dates.  If there are delays in the release dates,

26  Mattel might not have sufficient time to review the drawings and designs and conduct follow up

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

11

EXHIBIT _1_

PAGE _178_

1   discovery under the current schedule.  Trial on Mattel's original claims is scheduled for February

2   of 2008, and trial on MGA's claims and Mattel's counterclaims is scheduled for July of 2008.

3   In light of the trial schedule, any delay beyond June 29, 2007 would unduly prejudice Mattel's

4   ability to prepare for trial.

5                               5. Additional Procedures

6          At the hearing, the parties represented that they would submit a stipulation and proposed

7   order with additional terms governing the production of drawings and designs for MGA's

8   products that are under development.  On April 23, 2007, the parties submitted a stipulation and

9   proposed order.  The parties stipulated to define "Subject Documents" as "documents (defined to

10  include both tangible items and electronic data) created after January 1, 2006 that pertain to

11  products which are currently unreleased and scheduled for public release in 2007 or 2008 and

12  that constitute highly sensitive trade secrets of the producing Party." Stipulation and Proposed

13  Order at ¶1.  The main terms of the stipulation are as follows:

14         1. That "Subject Documents" may be withheld from production to the other parties until

15  June 29, 2007.  Id. at ¶2.

16         2. That "Subject Documents" may be designated as "Highly Confidential – Restricted

17  Attorneys' Eyes Only," and that documents so designated "shall not be disclosed in any way to,

18  nor their contents summarized or discussed in substance with, any person other than:  (i) up to

19  three attorneys at the receiving Party's outside law firm; (ii) such independent, outside expert(s)

20  for the receiving Party who outside counsel deems necessary to show such documents for

21  purposes of providing expert opinion or expert testimony; (iii) one assistant or paralegal for each

22  Party . . . (iv) the Court, including the Discovery Master and other personnel identified in

23  paragraphs 6(g) and 7 of the Protective Order; (v) the authors, senders, addressees and

24  designated copy recipients of any document designated 'Highly Confidential – Restricted

25  Attorneys' Eyes Only'; and (vi) such other persons as may be consented to in writing or on the

26

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

12

EXHIBIT  14

PAGE  179

1  record by the Party designating such documents 'Highly Confidential – Restricted Attorneys' 

2  Eyes Only.'" Id. at ¶3(b).

3      3. That "[d]ocuments designated as 'Highly Confidential – Restricted Attorneys' Eyes 

4  Only' shall not be copied except to create one archival file copy, one working copy for the 

5  designated attorneys and/or any designated expert, or for use as exhibits at deposition or trial or 

6  in filings with the Court, including the Discovery Master." Id. at ¶3(d).

7      4. That "[e]ach receiving Party's original copy set and all copies of Subject Documents, 

8  including any copies for use as exhibits or in motion practice, shall be maintained in a secure, 

9  locked file at all times when not physically being used by the receiving party's counsel or 

10  expert." Id. at ¶3(e); and

11      5. That the producing Party "shall re-designate or de-designate Subject Documents 

12  relating to a product within fourteen (14) days of the following events, whichever occurs earlier: 

13  (a) the production is first shipped, or (b) the product is first disclosed to a third party without an 

14  express confidentiality agreement." Id. at ¶4

15      Good cause appearing, the stipulation is hereby approved and shall be entered as a 

16  separate order of the court.

17                    V. CONCLUSION

18      For the reasons set forth above, MGA and Bryant's motion for clarification of the Order is 

19  denied. MGA and Bryant's alternative motion for a protective order pursuant to Rule 26(c), 

20  Fed.R.Civ.P., is granted. The parties shall abide by the terms of the stipulation and order to 

21  modify the protective order.

22      Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery 

23  Master, MGA shall file this Order with the Clerk of Court forthwith.

24  Dated: May 15, 2007

25                               HON. EDWARD A. INFANTE (Ret.)

                               Discovery Master

26

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

              13

EXHIBIT 14
PAGE 180

## PROOF OF SERVICE BY E-MAIL

I, Anthony Sales, not a party to the within action, hereby declare that on May 15, 2007, I served the attached ORDER MODIFYING PROTECTIVE ORDER in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| Robert Millman Esq. | Littler Mendelson | rfmillman@littler.com |
| Douglas Wickham Esq. | Littler Mendelson | dwickham@littler.com |
| Keith Jacoby Esq. | Littler Mendelson | kjacoby@littler.com |
| Dominic Messiha Esq | Littler Mendelson | dmessiha@littler.com |
| Diba Rastegar Esq. | Littler Mendelson | drastegar@littler.com |
| Michelle Park Esq. | Littler Mendelson | mpark@littler.com |
| Alaya B. Meyers, Esq. | Littler Mendelson | ameyers@littler.com |
| Brady Mitchell, Esq. | Littler Mendelson | bmitchell@littler.com |
| Carol Miller, Esq. | Littler Mendelson | cmiller@littler.com |
| Ryan P. Eskin, Esq. | Littler Mendelson | reskin@littler.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | jbq@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Morris Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgetmorris@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on May 15, 2007, at San Francisco, California.

Anthony Sales

EXHIBIT 14
PAGE 181

# EXHIBIT 15

THIS CONSTITUTES NOTICE OF ENTRY AS REQUIRED BY FRCP, RULE 77(D).

**PRIORITY SEND**
& ENTERED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA  92501
<u>CIVIL MINUTES – GENERAL</u>

Case No.    CV 04-09049 SGL(RNBx)                    Date:  July 2, 2007

Title:    CARTER BRYANT -v- MATTEL, INC.
            AND CONSOLIDATED ACTIONS
====================================================================

PRESENT:  HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

Jim Holmes                                    Theresa Lanza
Courtroom Deputy Clerk                         Court Reporter

ATTORNEYS PRESENT FOR CARTER          ATTORNEYS PRESENT FOR MATTEL:
BRYANT:

John W. Keker                        John B. Quinn
                                     Brett Dylan Proctor
                                     Michael T. Zeller

ATTORNEYS PRESENT FOR MGA:

Dale M. Cendali
Patricia Glaser



ENTERED
CLERK, U.S. DISTRICT COURT

JUL - 5 2007

CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION      BY DEPUTY

DOCKETED ON CM

JUL - 5 2007

BY _____ 164

PROCEEDINGS:   MINUTE ORDER

        As set forth more fully herein, the Court hereby makes the following ruling regarding matters heard on July 2, 2007:

(1)    The Court **GRANTS** Mattel's Motion re Trial Structure (docket #462);

(2)    The Court **GRANTS IN PART AND DENIES IN PART** MGA's Motion re Discovery Master's May 15, 2007, Order (docket #505);

(3)    The Court **GRANTS IN PART AND DENIES IN PART** MGA's Ex Parte Application

MINUTES FORM 90                                    Initials of Deputy Clerk  Jh
CIVIL – GEN                          1              Time: 01/15

EXHIBIT  15
PAGE  187

regarding date of production of documents (docket #545); and

(4)     The Court **DENIES** MGA's Motion re Discovery Master's May 16, 2007, Order (docket #508).

(5)     The Court **DENIES** the parties' oral request for modification of pretrial and trial dates.

(1)     Motion re Trial Structure (docket #462)

        Previous orders of the Court specified that the claims and counterclaims brought in this action will be tried in two phases. The parties have agreed, in large part, to a refinement of the Court's mandate that all issues regarding the ownership of Bratz shall be tried in Phase 1. Where the parties differ is upon a proposal by Mattel that the Phase 1 be bifurcated into two sub-phases, with Mattel's copyright infringement claim (its first counterclaim in the 05-02727 case) and all Phase 1 damages being tried after all the other issues. Phase 1(a) would be limited to issues surrounding Carter Bryant's employment with Mattel, and how those issues impact the ownership of certain original Bratz drawings, while Phase 1(b) would address approximately two-hundred Bratz products that are potentially derivative of the original drawings. This approach has the appeal of limiting Phase 1(a) to discrete issue of the ownership of the original Bratz drawings. A finding that Bryant owns these original drawings in Phase 1(a) has the potential to eliminate the need for Phase 1(b).

        Accordingly, **THE COURT ADOPTS MATTEL'S MODIFICATION OF DEFENDANTS' PROPOSAL,** as set forth at 8-9 of its Memorandum Regarding Trial Structure, filed June 20, 2007. Phase 1(a) and Phase 1(b) (if necessary) will be tried to the same jury.

(2)     MGA's Motion re Discovery Master's May 15, 2007, Order (docket #505), and
(3)     MGA's Ex Parte Application regarding date of production of documents (docket #545).

        The Discovery Master's May 15, 2007, Order compels production of documents regarding ink, paper, and chemical analysis and documents relating to unreleased MGA products. The order required that documents be produced no later than the end of May.

        The Court reviews the Discovery Master's orders under the "clearly erroneous" or "contrary to law" standard set forth in Fed. R. Civ. P. 72(a).

        The Discovery Master's order compels the production of only non-privileged documents. Therefore, MGA's arguments that the Discovery Master's order requires production of documents in violation of the attorney-client privilege are misplaced. If the only responsive documents are privileged, then MGA need not produce them, but must produce a privilege log.

        MGA acknowledges that it has raised an argument before the Court that was not raised

MINUTES FORM 90
CIVIL – GEN

2

Initials of Deputy Clerk __jh_____
Time: 01/15

EXHIBIT _15_

PAGE _183_

before the Discovery Master, namely, that Mattel has failed to establish that there are "exceptional circumstances" that allow Mattel to "discover facts known or opinions held by an expert . . . who is not expected to be called as a witness at trial." Fed. R. Civ. P. 26(b)(4)(B). MGA contends that the Discovery Master's order is contrary to law based on this standard, and that it was incumbent upon Mattel to raise it below. The Court disagrees. Mattel would be required to establish that exceptional circumstances existed if MGA objected to production on that grounds. A party seeking production cannot be expected to rebut all arguments that could possibly be raised by a party resisting production. MGA has not convinced the Court that the Discovery Master's failure to require Mattel to rebut an argument that was not raised by MGA is contrary to law.

MGA contends that the Discovery Master's order compelling production of documents regarding unreleased products is contrary to law. Relevant to that determination is a balancing test required to be applied by the Ninth Circuit when trade secrets are requested by a competitor in discovery. See Brown Bag Software v. Symantec Corp., 960 F.2d 1465, 1470 (9th Cir. 1992) ("Specifically, in this case we must balance the risk to [defendant] of inadvertent disclosure of trade secrets to competitors against the risk to [plaintiff] that protection of [defendant's] trade secrets [will] impair[] prosecution of [plaintiff's] claims.").

Here, the documents sought are of a particularly sensitive nature. They represent some of the most secretive documents maintained by MGA, and they are being ordered to be produced to MGA's fierce competitor. The Discovery Master recognized the sensitive nature of the documents and entered a strict protective order that severely limits access to those documents and that goes well beyond the normal "attorney eyes only" designation.

MGA argues that unreleased products are irrelevant to the issue of who owns the original Bratz drawings. That is clear. However, MGA's argument attempts to limit the discovery to issues involved in Phase 1 of the trial. There has been no bifurcation of discovery.

Mattel correctly points out that these documents are relevant to a number of its other claims. Specifically, if they show unreleased products that are similar to Mattel's unreleased products, the documents would be highly probative of Mattel's misappropriation of trade secrets claim. Moreover, these documents could be relevant to Mattel's RICO claims based on alleged acts of criminal copyright infringement.

Balancing tests are inherently subjective and particularly susceptible to varying interpretation by individual judicial officers. This Court, upon considering this issue from the outset, may very well have weighed the evidence differently and reached a contrary result. However, this Court is bound by the standard of review, and MGA's motion falls far short of convincing the Court that the Discovery Master's order is contrary to law.

The parties have a long history regarding the production of documents ordered in the May 15, 2007, Order, which is set forth in their papers and which need not be repeated here. Counsel for MGA represented that the remaining documents could be produced no later than July 31, 2007, with the exception of the documents from MGA Hong Kong, which could be produced no

MINUTES FORM 90
CIVIL -- GEN

3

Initials of Deputy Clerk __jh_____
Time: 01/15

EXHIBIT _15_
PAGE _184_

later than two weeks after that date.  Accordingly, the Court **ORDERS** that MGA complete the document production set forth in the Discovery Master's May 15, 2007, order no later than July 31, 2007, with the exception of the documents from MGA Hong Kong, which shall be produced no later than August 14, 2007.

Accordingly, the Court **GRANTS** in part MGA's motion re the Discovery Master's May 15, 2007, Order, extending the document production date as set forth above.  The Motion is **DENIED** in all other respects.

Likewise, the Court **GRANTS** in part MGA's ex parte application re date of production of documents, extending the document production date as set forth above.  The application is **DENIED** in all other respects.

(4)     MGA's Motion re Discovery Master's May 16, 2007, Order (docket #508)

The Discovery Master's May 16, 2007, Order compelled the Rule 30(b)(6) depositions of witnesses on the topics of MGA's net worth, prior sworn statements, and ink, paper, and chemical analysis performed by MGA.

> A party may in the party's notice and in a subpoena name as the deponent a public or private corporation or a partnership or association or governmental agency and describe with reasonable particularity the matters on which examination is requested. In that event, the organization so named shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. . . . The persons so designated shall testify as to matters *known or reasonably available* to the organization.

Fed. R. Civ. P. 30(b)(6) (emphasis added).  "The purpose behind Rule 30(b)(6) is to create testimony that will bind the corporation."  Sanders v. Circle K Corp., 137 F.R.D. 292, 294 (D. Ariz. 1991) (internal citation omitted).  Another purpose of Rule 30(b)(6) is aptly described by the District Court for the District of Columbia:

> [The purpose of Rule 30(b)(6) is to] prevent[] serial depositions of various witnesses without knowledge within an organization and eliminating 'bandying', which is the name given to the practice in which people are deposed in turn but each disclaims knowledge of facts that are clearly known to persons in the organization and thereby to the organization itself.

Alexander v. F.B.I., 186 F.R.D. 148, 152 (D.D.C. 1999) (citing the 1970 Advisory Committee Notes to Rule 30(b)(6)).

The Discovery Master's order compelling Rule 30(b)(6) depositions in the specified

Initials of Deputy Clerk __jh_____
Time: 01/15

EXHIBIT _15_
PAGE _185_

categories serve both these purposes and is not contrary to law.

Although MGA's net worth may not be known to it, MGA does not contend that the information is not readily available. That net worth is generally the subject of expert testimony at trial -- a proposition disputed by neither Mattel nor the Court -- does not render it an improper subject for a Rule 30(b)(6). Therefore, the Discovery Master's ruling on this issue is not contrary to law.

MGA likewise does not contend that information regarding prior sworn statements are not readily available to it. Although contending that this is not an appropriate subject for a Rule 30(b)(6) deposition, MGA fails to cite authority in support of that contention. Therefore, the Discovery Master's ruling on this issue is not contrary to law.

The ink, paper, and chemical analysis topic is likewise a proper subject of a Rule 30(b)(6) deposition. To the extent that such a deposition has the potential to encroach upon information protected by the work-product privilege, then that objection must be made on a question-by-question basis. MGA may not make a blanket objection and justify its refusal to produce a Rule 30(b)(6) designee on this topic based on that blanket objection. Therefore, the Discovery Master's ruling on this issue is not contrary to law.

Accordingly, the Court **DENIES** MGA's motion re the Discovery Master's May 16, 2007, Order.

(5)    Oral Request for Modification of pretrial and trial dates.

Although no motion or ex parte application on the subject was pending before the Court, the parties made an oral request at the hearing to continue certain pretrial and trial dates. A discussion ensued and it became apparent that no final agreement was reached by the parties regarding extending these dates. Accordingly, the Court **DENIES** the parties' oral request for modification of pretrial and trial dates. The Court will consider counsels' stipulation regarding extensions of those dates only where all counsel unqualifiedly stipulate to those dates. Until the scheduling order is modified by the Court, the dates previously set by the Court remain in effect. In addition, the Court is unlikely to entertain a continuance of the Phase 1 trial past April, 2008.

IT IS SO ORDERED.

Initials of Deputy Clerk __jh_____
Time: 01/15

EXHIBIT 15

PAGE 186