1   Similarly, Mattel has attempted to obtain documents from both Ms. Brisbois and
2   MGA Canada regarding Ms. Brisbois' involvement in the allegations underlying
3   Mattel's counterclaims and MGA Canada's access to and use of Mattel's trade secrets,
4   confidential and proprietary information.[5] MGA, however, has refused to produce
5   documents that are within the possession, custody or control of its subsidiary and
6   agent.[6]

7   On January 7, 2008, the Court granted leave for Mattel to take the deposition of
8   Ms. Brisbois.[7] On January 22, 2008, and pursuant to the Court's Order, Mattel inquired
9   as to whether MGA would produce Ms. Brisbois for deposition.[8] MGA did not
10  respond. On January 28, 2008, Mattel filed a motion for letters of request seeking the

---

Scheduling dated September 16, 2007 at 9 (attached to the Corey Dec. as Exhibit E). Mattel does not agree with MGA's characterization; Brisbois in fact acted as an agent for MGA who MGA is obligated to produce.

[5] See generally Mattel, Inc.'s First Set of Requests for Documents and Things dated December 18, 2006 (attached to the Corey Dec. as Exhibit F); letter from Jon Corey to Amman Khan dated September 25, 2007 at 3 (attached to the Corey Dec. as Exhibit I); letter from Jon Corey to Amman Khan dated October 2, 2007 at 1 (attached to the Corey Dec. as Exhibit J).

[6] E.g., MGA Entertainment, Inc.'s Responses to Mattel, Inc.'s First Set of Requests for Production of Documents and Tangible Things dated April 13, 2005 at 3 ("MGA objects to each request to the extent it seeks information relating to activities in a foreign country. In each instance in which MGA has agreed to produce documents, *such production is hereby expressly limited to documents relating to domestic activities or conduct only*.") (emphasis added) (attached to the Corey Dec. as Exhibit G).

[7] See Mattel's Motion for Leave to Take Additional Discovery dated November 17, 2007 at 13 (attached to the Corey Dec. as Exhibit N); Order dated January 7, 2008 at 3 (attached to the Corey Dec. as Exhibit O).

[8] See letter from Jon Corey to Paul Eckles dated January 22, 2008 (attached to the Corey Dec. as Exhibit K); see also emails from Jon Corey to Paul Eckles dated January 22, 2008 and January 23, 2008 (attached to the Corey Dec. as Exhibits L and M, respectively); see January 8, 2009 letter from J. Corey to T. Nolan (attached to the Corey Dec. as Exhibit V).

EXHIBIT 21

07975/2768037.2

-3-   PAGE 445

MATTEL, INC.'S MOTION FOR ISSUANCE OF LETTERS OF REQUEST

depositions of Ms. Brisbois and MGA Canada, and the production of their documents.[9] On February 4, 2008, the Court stayed Phase 2 discovery.[10] In response to the stay order and this motion, on February 15, 2008, MGA filed a preliminary response stating that it would respond to the motion after the Phase 1 trial because it related to Phase 2.[11] Because the Court did not rule explicitly on this motion, it presumably was denied without prejudice in the Court's September 23, 2008 order relating to all pending motions.[12]

On January 6, 2009, the Court lifted the stay on Phase 2 discovery.[13] On January 8, 2009, Mattel again asked MGA whether they would voluntarily produce Ms. Brisbois for deposition.[14] MGA again did not respond.[15]

## Argument

### I. THE COURT HAS AUTHORITY TO ISSUE THE LETTER OF REQUEST

Under Federal Rule of Civil Procedure 28(b)(1), "[a] deposition may be taken in a foreign country . . . under a letter of request, whether or not captioned a 'letter rogatory.'" Further, Rule 28(b)(2) provides for the issuance of a Letter of Request "on appropriate terms after an application and notice of it. . . ." Because information and witnesses necessary to Mattel's prosecution of its counterclaims against MGA are located in Canada, the Court should issue the Proposed Letter of Request for

---

[9] See Mattel's Motion for Issuance of Letters of Request dated January 28, 2008 (attached to the Corey Dec. as Exhibit Q).
[10] See Order dated February 4, 2008 (attached to the Corey Dec. as Exhibit R).
[11] See MGA's Preliminary Response to Mattel's Motion for Letters of Request dated February 15, 2008 (attached to the Corey Dec. as Exhibit S).
[12] See Order dated September 23, 2008 (attached to the Corey Dec. as Exhibit T).
[13] See Order dated January 6, 2009 (attached to the Corey Dec. as Exhibit U).
[14] See January 8, 2009 letter from J. Corey to T. Nolan (attached to the Corey Dec. as Exhibit V).
[15] Corey Dec. ¶ 23.

EXHIBIT 21
PAGE 446

International Judicial Assistance to the Ontario Superior Court of Justice. The Proposed Letter of Request, filed concurrently herewith, would ask the Ontario Superior Court of Justice to compel: (1) Janine Brisbois to produce the documents set forth in Schedule B; (2) Janine Brisbois to be examined under oath on the topics set forth in Schedule C; (3) MGA Entertainment Canada to produce the documents set forth in Schedule D; and (4) MGA Entertainment Canada to produce a knowledgeable designee to testify on the topics set forth in Schedule E who will be examined under oath.

Specifically, the Letter of Request to the Ontario Superior Court is warranted to allow Mattel to obtain evidence necessary to prosecute its counterclaims against MGA. Janine Brisbois is featured prominently throughout Mattel's Counterclaims as one of the former Mattel employees who misappropriated Mattel's trade secrets and other Mattel confidential and proprietary information. See Mattel Counterclaims, ¶¶ 4, 71-76, 89-90, 97, 99, 107, 123. Mattel alleges:

> In 2005, MGA needed help in Canada. So MGA, again operating from its Southern California headquarters, hired Janine Brisbois from Mattel. At that time, Ms. Brisbois was responsible for Mattel's account with Toys 'R Us ("TRU") and Wal-Mart. MGA gave her responsibility for those same accounts, and she took from Mattel documents containing proprietary advertising, project, sales, customer and strategy information for not only Canada, but for the United States. Eliminating any doubt that MGA then proceeded to use those stolen materials, Brisbois subsequently accessed and

EXHIBIT 21
PAGE 447

-5-

07975/2768037.2

MATTEL, INC.'S MOTION FOR ISSUANCE OF LETTERS OF REQUEST

modified certain of those Mattel documents while employed by MGA.[16]

*   *   *

Mattel subsequently learned that on the same day that she spoke with Mr. Larian and four days before she resigned, Brisbois copied approximately 45 Mattel documents on to a USB or "thumb" drive with the volume label "BACKPACK." On information and belief, Brisbois removed the thumb drive from Mattel Canada's office by concealing it in her backpack or gym bag the last time that she left that office. These documents contained Mattel trade secret and proprietary information, and included:

- a document containing the price, cost, sales plan and quantity of every Mattel product ordered by every Mattel customer in 2005 and 2006;

- the BARBIE television advertising strategy and information concerning sales increases generated by television advertisements;

- competitive analysis of Mattel vis-à-vis its competitors in Canada;

- an analysis of Mattel's girls business sales beginning in 2003 and forecasts through 2006;

- profit and loss reviews for Mattel's products being sold in Wal-Mart, including margins and profit in not only Canada, but in the United States and Mexico; and a document containing the

---

[16] The allegations set forth in this section are from Mattel's Second Amended Counterclaims dated July 12, 2007 ("Mattel's Counterclaims"), ¶ 4 (attached to the Corey Dec. as Exhibit W).

EXHIBIT 21
PAGE 448

product launch dates and related advertising for all Mattel new products between Fall 2005 and Spring 2006.[17]

* * *

After Mattel discovered that Brisbois had copied these sensitive documents to a thumb drive, Mattel notified Canadian law enforcement authorities. Canadian law enforcement authorities recovered from Brisbois a thumb drive with the volume label "BACKPACK" containing the documents that Brisbois had copied from Mattel's computer system. Mattel later learned that while she was working as a Vice President of Sales at MGA, Brisbois accessed and modified documents on that thumb drive.[18]

Ms. Brisbois has unique, personal knowledge of the claims and defenses in these consolidated actions. It will further the interests of justice if she is deposed, under oath, as to her knowledge of the facts which are relevant to the issues of these cases.

Mattel also seeks discovery in the form of deposition testimony and documents from MGA Canada regarding how it and MGA Entertainment used Mattel's trade secrets, confidential and proprietary information in the United States. This information is plainly discoverable and, indeed, critical. Mattel cannot, for example, fairly prosecute its claims without understanding the manner in which MGA Canada accesses, stores, reproduces, disseminates, and/or reviews the documents and information stolen by Ms. Brisbois from Mattel.

Ms. Brisbois, MGA Canada's person most knowledgeable and the documents requested by Mattel in its accompanying Letter of Request are located in Ontario, Canada. Mattel requested by both deposition notice and letter addressed to MGA's

---

[17] Mattel's Counterclaims, ¶ 74 (attached to the Corey Dec. as Exhibit W).
[18] Mattel's Counterclaims, ¶ 75 (attached to the Corey Dec. as Exhibit W).

EXHIBIT 21
PAGE 449

1 counsel that they produce Ms. Brisbois for deposition.[19] MGA refused.[20] On
2 January 7, 2008, the Court granted leave for Mattel to take the deposition of
3 Ms. Brisbois.[21] On January 22, 2008, and in accordance with the Court's Order, Mattel
4 inquired as to whether MGA would produce Ms. Brisbois for deposition. MGA has not
5 responded to Mattel's inquiry. Then, after the Phase 2 discovery stay was lifted earlier
6 this month, Mattel again inquired whether MGA would produce Ms. Brisbois, but
7 MGA did not respond. Accordingly, Mattel must rely on this Court's authority to
8 request judicial assistance from the Ontario Superior Court of Justice to permit Mattel
9 to obtain the necessary evidence.

## II. MATTEL'S REQUEST FOR INFORMATION IS CONSISTENT WITH CANADIAN LAW

Both Canadian federal law and Ontario provincial law provide for the examination of parties or witnesses with information relevant to foreign lawsuits, as well as the production of documents relevant to such lawsuits.[22] The Ontario Superior

---

[19] See Notice of Deposition of Janine Brisbois dated September 14, 2007; Corrected Notice of Deposition of Janine Brisbois dated September 14, 2007; Letter from Jon Corey to MGA's counsel dated September 14, 2007 (attached to the Corey Dec. as Exhibits A, B and C, respectively).

[20] See fn.3, *supra*; see also letter from Jon Corey to Amman Khan dated September 25, 2007 (attached to the Corey Dec. as Exhibit I); letter from Jon Corey to Amman Khan dated October 2, 2007 (attached to the Corey Dec. as Exhibit J).

[21] See Mattel's Motion for Leave to Take Additional Discovery dated November 17, 2007 (attached to the Corey Dec. as Exhibit N); Order dated January 7, 2008 (attached to the Corey Dec. as Exhibit O).

[22] Section 46 of the Canada Evidence Act provides:
If, on an application for that purpose, it is made to appear to any court or judge that any court or tribunal outside Canada, before which any civil, commercial or criminal matter is pending, is desirous of obtaining the testimony in relation to that matter of a party or witness within the jurisdiction of the first mentioned court, of the court to which the judge belongs or of the judge, the court or judge may, in its or their discretion, order the examination on oath on interrogatories, or
(footnote continued)

EXHIBIT 21

1  Court, in <u>Friction Division Products Inc. v. E.I. Du Pont de Nemours & Co. (No. 2)</u>,
2  [1986] 56 O.R. (2d) 722 (H.C.J.) at 732, set out the factors to be considered by the
3  Canadian court when exercising its discretion to grant a district court's Letter of
4  Request. Those factors are:
5      (1)   The evidence is relevant;

---

otherwise, before any person or persons named in the order, of that
party or witness accordingly, and by the same or any subsequent order
may command the attendance of that party or witness for the purpose of
being examined, and for the production of any writings or other
documents mentioned in the order and of any other writings or
documents relating to the matter in question that are in the possession
or power of that party or witness.

Canada Evidence Act, R.S.C., ch. C-5, § 46 (1999) (Can.).

Similarly, Section 60(1) of the Ontario Evidence Act provides:
Where it is made to appear to the Superior Court of Justice or a judge
thereof, that a court or tribunal of competent jurisdiction in a foreign
country has duly authorized, by commission, order or other process, for
a purpose for which a letter of request could be issued under the rules
of court, the obtaining of the testimony in or in relation to an action,
suit or proceeding pending in or before such foreign court or tribunal,
of a witness out of the jurisdiction thereof and within the jurisdiction of
the court or judge so applied to, such court or judge may order the
examination of such witness before the person appointed, and in the
manner and form directed by the commission, order or other process,
and may, by the same or by a subsequent order, command the
attendance of a person named therein for the purpose of being
examined, or the production of a writing or other document or thing
mentioned in the order, and may give all such directions as to the time
and place of the examination, and all other matters connected therewith
as seem proper, and the order may be enforced, and any disobedience
thereto punished, in like manner as in the case of an order made by the
court or judge in an action pending in the court or before a judge of the
court.

R.S.O. 1990, c. E.23, s. 60 (1); 2000, c. 26, Sched. A, s. 7 (2).

EXHIBIT  *21*
PAGE  *451*

1  (2)  The evidence sought is necessary for trial and will be adduced at trial, if admissible;

3  (3)  The evidence is not otherwise obtainable;

4  (4)  The order sought is not contrary to public policy;

5  (5)  The documents sought are identified with reasonable specificity; and

6  (6)  The order sought is not unduly burdensome.

Here, Mattel has met its burden with respect to each of these factors.

### A. The Topics Of Testimony And Categories Of Documents Sought From Ms. Brisbois And MGA Canada Are Both Relevant And Necessary To Mattel's Prosecution Of Its Counterclaims At Trial

As detailed in Section I, *supra*, Ms. Brisbois is an actor central to the events alleged throughout Mattel's Second Amended Counterclaims and plainly a relevant witness. Mattel alleges that MGA and other defendants have engaged in the systematic theft of Mattel's trade secrets, much of which helped MGA unfairly compete against Mattel.[23] Specifically, in the past few years, MGA has hired directly from Mattel at least 70 employees, ranging from the Senior Vice-President level to lower level employees.[24] Many of these employees were specifically targeted and recruited by MGA based on the Mattel confidential and proprietary information the Mattel employees could access.[25] Ms. Brisbois was one of these employees.

MGA targeted Ms. Brisbois at least as early as 2005. Mattel has alleged that Ms. Brisbois, while employed by Mattel, was responsible for Mattel's accounts at Toys 'R Us and Wal-Mart.[26] Ms. Brisbois had access to and subsequently stole Mattel's

---

[23] Mattel's Counterclaims, ¶ 37 (attached to the Corey Dec. as Exhibit W).
[24] Mattel's Counterclaims, ¶ 77 (attached to the Corey Dec. as Exhibit W); see also Trial Exhibit 1932 (attached to the Corey Dec. as Exhibit X).
[25] Id.
[26] Mattel's Counterclaims, ¶ 72 (attached to the Corey Dec. as Exhibit W).

trade secret, confidential and propriety information and furnished it to MGA.[27] Ms. Brisbois also stole and provided to MGA approximately 45 Mattel documents ranging from Mattel's BARBIE television advertising strategy to product launch dates for new Mattel products.[28] Ms. Brisbois and MGA subsequently used this information to MGA's benefit, including MGA's management of its Toys 'R Us and Wal-Mart accounts.[29] Ms. Brisbois' testimony regarding her participation in this scheme with MGA and others acting on MGA's behalf is, therefore, both relevant and necessary to Mattel's prosecution of its Counterclaims for RICO, conspiracy to violate the RICO Act, theft and misappropriation of trade secrets, and unfair competition, among others.[30]

Further, MGA Canada's person most knowledgeable on the topics set forth in Schedule E to the concurrently filed Letter of Request has unique and personal knowledge regarding the manner in which MGA Canada accessed, used, reproduced, disseminated and/or transferred Mattel's trade secrets, confidential and proprietary information stolen by Ms. Brisbois. Therefore, it will further the interests of justice if MGA Canada's person most knowledgeable on these topics is deposed, under oath, as to his or her knowledge of the facts which are relevant to the issues of these cases.

Similarly, in its request for the production of documents, Mattel seeks highly relevant information. Mattel requests documents containing communications between Ms. Brisbois and MGA (including Larian) prior to her resignation from Mattel. Such documents constitute evidence that Ms. Brisbois, acting in concert with MGA, planned and subsequently stole Mattel's trade secret or otherwise confidential and propriety information, including information relating to Bratz dolls. These documents are relevant and necessary to Mattel's Counterclaims for RICO, conspiracy, and

---

[27] Mattel's Counterclaims, ¶¶ 72, 74 (attached to the Corey Dec. as Exhibit W).
[28] Mattel's Counterclaims, ¶ 74 (attached to the Corey Dec. as Exhibit W).
[29] Mattel's Counterclaims, ¶ 97 (attached to the Corey Dec. as Exhibit W).

EXHIBIT 21
PAGE 453

1 misappropriation of trade secrets, among others.[31] Similarly, documents regarding Mattel's propriety information received and utilized by MGA or MGA Canada from Ms. Brisbois (either directly or indirectly) will establish the same and such documents are necessary in order for Mattel to adequately prosecute its Counterclaims.

**B. Mattel Has Unsuccessfully Attempted To Obtain The Testimony And Documentary Evidence To Prosecute Its Counterclaims**

Mattel has previously sought to depose Ms. Brisbois. Mattel noticed her deposition and also requested through MGA's counsel that she appear for deposition and produce the requested documents.[32] MGA's counsel, on behalf of Ms. Brisbois, refused.[33] Furthermore, MGA has stated that its production of documents "is hereby expressly limited to documents relating to domestic activities or conduct only."[34] Where, as here, Mattel has requested the discovery but has been met with refusals has no other means of obtaining the requested discovery, then it is appropriate for this Court to make the requested order. See Ontario Public Service Employees Union Pension Trust Fund v. Clark, (2006), 270 D.L.R. (4th) 429 (C.A.); see also Campbell

---

[30] See Mattel's Counterclaims, ¶¶ 88-97; 98-105, 106-115, 163-170.
[31] See Mattel's Counterclaims, ¶¶ 88-97; 98-105, 106-115.
[32] See Notice of Deposition of Janine Brisbois dated September 14, 2007; Corrected Notice of Deposition of Janine Brisbois dated September 14, 2007; Letter from Jon Corey to MGA's counsel dated September 14, 2007 (attached to the Corey Dec. as Exhibits A, B and C, respectively).
[33] See Letter from Scott E. Gizer to the Honorable Edward Infante dated September 16, 2007; see also MGA Entertainment, Inc's Objection to Mattel Inc.'s Submission Regarding Deposition Scheduling dated September 16, 2007 at 9 (attached to the Corey Dec. as Exhibits D and E, respectively); letter from J. Corey to Paul Eckles dated January 22, 2008 (attached to the Corey Dec. as Exhibit K); emails from J. Corey to Paul Eckles dated January 22, 2008 and January 23, 2008 (attached to the Corey Dec. as Exhibits L and M, respectively); January 8, 2009 letter from J. Corey to T. Nolan (attached to the Corey Dec. as Exhibit V).
[34] See MGA Entertainment, Inc.'s Responses to Mattel, Inc.'s First Set of Requests for Production of Documents and Tangible Things dated April 13, 2005 at 3 (attached to the Corey Dec. as Exhibit G).

EXHIBIT 21
PAGE 454

1  Estate, [1995] B.C.J. No. 2304, at ¶ 15 ("Where, as here, the respondents initially
2  declined co-operation and the foreign court, with that knowledge, requested co-
3  operation by issuing the Letters Rogatory, this court may make the order sought.").

    C.    **The District Court's Order Granting Mattel's Letter Of Request Is Not Contrary To Canadian Public Policy Or Sovereignty**

6      MGA would be hard pressed to plausibly argue that Canadian public policy or
7  sovereignty would be undermined by Ms. Brisbois' deposition, the deposition of MGA
8  Canada's person most knowledgeable, or the requested production of documents. The
9  Supreme Court of Canada has recognized that international comity requires that Letters
10 of Request issued by foreign courts be "given full force and effect unless it be contrary
11 to public policy of the jurisdiction to which the request is directed . . . or otherwise
12 prejudicial to the sovereignty of the citizens of the latter jurisdiction." Zingre v. The
13 Queen et al., 1981 CanLII 32 at 401 (S.C.C.). The Canadian Supreme Court in Zingre
14 also stated that "the court of one jurisdiction will give effect to the laws and judicial
15 decisions of another jurisdiction, not as a matter of obligation, but out of mutual
16 deference and respect." Id.

17     This policy objective of international comity and ensuring that Mattel may
18 properly prepare its case for trial overrides the non-existent public policy concerns that
19 may be asserted by MGA in this case. There has been no intimation by MGA that this
20 Court's issuance of the Proposed Letter of Request, nor the Ontario Superior Court of
21 Justice's granting Mattel's Letter of Request, would infringe upon Canadian
22 sovereignty. Similarly, there has been no indication that the requested discovery would
23 frustrate any Canadian public policy or that the Canadian government would find the
24 requested discovery objectionable. The Letter of Request is not in any way contrary to
25 public policy.

### D. The Documents Sought Are Specified With Reasonable Particularity And No Undue Burden Will Result

In its Proposed Letter of Request, Mattel requests the testimony of Ms. Brisbois regarding the following highly material issues:

(A) Knowledge of the theft of Mattel documents containing proprietary advertising, project, sales, customer and strategy information by anyone, including Ms. Brisbois (including the 45 documents taken by Ms. Brisbois from Mattel); and

(B) Knowledge of Ms. Brisbois' communications with MGA, Larian and anyone else acting on MGA's behalf, on or before September 27, 2005, including but not limited to communications regarding Ms. Brisbois' resignation from Mattel and compensation, money or anything of value paid by MGA to Ms. Brisbois. Mattel also seeks to depose MGA Canada on its methods and procedures regarding its access and use of Mattel's trade secret, confidential and proprietary information. Not only are these topics precise and narrow with respect to the testimony that Mattel seeks to elicit from Ms. Brisbois and MGA Canada, but the information regarding these topics is appropriate given Mattel's allegations.

In addition, as to Ms. Brisbois, Mattel requests the production of documents regarding: (1) Ms. Brisbois' communications with MGA prior to her resignation from Mattel; and (2) documents received by MGA, whether directly or indirectly from Ms. Brisbois, that relate to any Mattel product or plan. These limited document requests are narrowly focused to obtain the evidence sought by Mattel without imposing an undue burden upon Ms. Brisbois.

Mattel seeks similar documents from MGA Canada, limiting those requests generally to (1) MGA Canada's efforts, and communications relating thereto, to recruit Ms. Brisbois from Mattel; (2) documents received directly or indirectly from Ms. Brisbois that contain Mattel trade secret, proprietary or confidential information; (3) MGA Canada's access and use of Mattel's trade secret, proprietary or confidential

EXHIBIT 21

PAGE 456

07975/2768037.2

-14-

MATTEL, INC.'S MOTION FOR ISSUANCE OF LETTERS OF REQUEST

1  information; and (4) Ms. Brisbois responsibility for the Toys 'R Us and Wal-Mart
2  accounts at MGA.
3     Similar requests have been enforced by Canadian courts. <u>See, e.g.,</u>
4  <u>Advance/Newhouse Partnership and Bright House Networks, LLC v.</u>
5  <u>Brighthoulse, Inc.</u>, 2005 CarswellOnt 1371 (S.C.J.) (allowing depositions of third-party
6  witness pursuant to letters rogatory issued by district court); <u>Ontario Public Service</u>
7  <u>Employees Union Pension Trust Fund v. Clark</u>, (2006) 270 D.L.R. (4th) 429 (C.A.)
8  (allowing deposition with production of documents pursuant to district court's letters
9  rogatory). Given the precise nature of Mattel's discovery requests, MGA cannot be
10 heard to complain of undue burden.[35]

## Conclusion

12    The testimony and documentary evidence that Mattel seeks through depositions
13 of Janine Brisbois and MGA Canada and the accompanying production of documents
14 are relevant, narrowly tailored, necessary to afford Mattel an adequate opportunity to
15 present its case, not contrary to Canadian public policy or sovereignty, and Mattel has
16 no other method of securing this evidence. Mattel therefore respectfully requests that
17 the Court issue the concurrently filed Letter of Request for Foreign Judicial Assistance.

19 DATED: January 26, 2009          QUINN EMANUEL URQUHART OLIVER &
                                    HEDGES, LLP

                                    By /s/ Jon Corey
                                    Jon Corey
                                    Attorneys for Mattel, Inc.

---

[35] Further, to the extent that MGA can demonstrate any burden exists, Mattel will pay the costs associated with the requested document productions, Ms. Brisbois' deposition, and the deposition of MGA Canada's person most knowledgeable.

EXHIBIT 21
PAGE 457

-15-
MATTEL, INC.'S MOTION FOR ISSUANCE OF LETTERS OF REQUEST

07975/2768037.2