1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
    John B. Quinn (Bar No. 090378)
2    johnquinn@quinnemanuel.com
    Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
    Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
    865 South Figueroa Street, 10th Floor
5  Los Angeles, California 90017-2543
    Telephone: (213) 443-3000
6  Facsimile: (213) 443-3100

7  Attorneys for Mattel, Inc.

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10                          EASTERN DIVISION

11

12 | CARTER BRYANT, an individual,    | CASE NO. CV 04-9049 SGL (RNBx)

    Plaintiff,                        | Consolidated with
13                                    | Case No. CV 04-09039
    vs.                               | Case No. CV 05-02727
14
    MATTEL, INC., a Delaware          | **DISCOVERY MATTER**
15 | corporation,
                                      | **DECLARATION OF RANDA A.F.**
16       Defendant.                   | **OSMAN IN SUPPORT OF**
                                      | **MATTEL, INC.'S MOTION FOR**
17                                    | **AN ORDER: (1) REMOVING**
    AND CONSOLIDATED ACTIONS          | **"CONFIDENTIAL"**
18                                    | **DESIGNATIONS FROM**
                                      | **PORTIONS OF THE DEPOSITION**
19                                    | **TRANSCRIPT OF SUSANA**
                                      | **KUEMMERLE, AND (2) ISSUING**
20                                    | **AN APOSTILLE RE THE**
                                      | **KUEMMERLE TRANSCRIPT**
21
                                      | Date:  To be set
22                                    | Time:  To be set
                                      | Place: To be set
23
                                      | **Phase 2**
24                                    | Pre-Trial Conference:  Not Set
                                      | Trial Date:            Not Set
25

26               **PUBLIC REDACTED**

27      **EXHIBIT C FILED UNDER SEAL PURSUANT TO**

28                **PROTECTIVE ORDER**

00505.07209/3055478.1

DECLARATION OF RANDA A.F. OSMAN ISO MOT TO REMOVE DESIGNATIONS AND FOR APOSTILLE

1    I, Randa A.F. Osman, declare as follows:

2       1.   I am a member of the bar of the State of California and a member

3   of Quinn Emanuel Urquhart Oliver & Hedges, LLP, attorneys for Mattel, Inc. I

4   make this declaration of personal, firsthand knowledge, and if called and sworn as a

5   witness, I could and would testify competently thereto.

6       2.   On May 4, 2009, I wrote to Amman Khan of Glaser, Weil, Fink,

7   Jacobs, Howard & Shapiro, then counsel for MGA, and to Alexander Cote of

8   Overland Borenstein Scheper & Kim LLP, counsel for Machado, asking that they

9   stipulate to the issuance of an apostille for the Kuemmerle Deposition Transcript. A

10  true and correct copy of my May 4, 2009 letter is attached as Exhibit A.

11      3.   I also spoke with Mr. Kahn by telephone on May 11, 2009, in a

12  further attempt to meet and confer. During that conversation, Mr. Kahn told me that

13  MGA would not agree to stipulate to the issuance of an apostille for the Kummerle

14  Deposition Transcript. In addition, Mr. Cote emailed me on May 12, 2009

15  indicating that Machado did not object to issuance of an apostille. A true and

16  correct copy of the May 12, 2009 email is attached as Exhibit B.

17      4.   In a final attempt to meet and confer concerning MGA's

18  designations, on July 22, 2009, I wrote to Anne Hurst of Orrick Herrington &

19  Sutcliffe LLP, MGA's current counsel, informing her that the revised designations

20  were still deficient, and asking that MGA withdraw the improper designations and

21  agree to an apostille. A true and correct copy of my July 22, 2009 letter is attached

22  as Exhibit C.

23      5.   By letter dated July 28, 2009, William Molinski, Ms. Hurst's

24  partner, informed me that MGA would serve amended designations, and that it

25  would endeavor to do so by the following week. A true and correct copy of

26  Mr. Molinski's July 28, 2009 letter is attached as Exhibit D. MGA did not provide

27  amended designations the following week. Because I had not yet received any

28  amended designations, on August 7, 2009, I wrote to Mr. Molinski inquiring as to

1  when MGA would serve the amended designations.  A true and correct copy of my
2  August 7, 2009 letter is attached as Exhibit E.

3          6.      On August 12, 2009, Mr. Molinski wrote to me informing me
4  that MGA has amended two of its designations, and that MGA was correcting a
5  transposition error in three of MGA's designations.  MGA failed to amend or
6  withdraw the majority of its designations, however.  A true and correct copy of Mr.
7  Molinski's August 12, 2009 letter to me is attached as Exhibit F.

8          7.      On August 14, 2009, I sent an email to Mr. Molinski asking him
9  to confirm whether MGA would consent to the issuance of an apostille for the
10 portions of Ms. Kuemmerle's deposition testimony that were not confidential.
11 Attached as Exhibit G is a true and correct copy of my August 14, 2009 email to Mr.
12 Molinski.  Mr. Molinski responded by email dated August 14, 2009, and stated that
13 MGA would oppose the issuance of an apostille.  Attached as Exhibit H is a true and
14 correct copy of Mr. Molinski's August 14, 2009 email to me.

15         8.      Attached as Exhibit I are true and correct copies of the May 11,
16 2009 Apostilles issued by this Court in connection with this matter.

17         I declare under penalty of perjury under the laws of the State of
18 California that the foregoing is true and correct.

19         Executed on August 26, 2009, at Los Angeles, California.

20

21                                          /s/ Randa A.F. Osman
                                            Randa A.F. Osman
22

23

24

25

26

27

28

# EXHIBIT A

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017-2543 | TEL (213) 443-3000  FAX (213) 443-3100

WRITER'S INTERNET ADDRESS
randaosman@quinnemanuel.com

May 4, 2009

**VIA ELECTRONIC MAIL AND U.S. MAIL**

Amman A. Khan, Esq.
Glaser, Weil, Fink, Jacobs & Shapiro, LLP
10250 Constellation Blvd., 19th Floor
Los Angeles, CA 90067

Alexander H. Cote, Esq.
Overland Borenstein Scheper & Kim LLP
300 South Grand Avenue, Suite 2750
Los Angeles, CA 90071

Re:   Bryant v. Mattel

Dear Counsel:

I write pursuant to Paragraph 5 of the Discovery Master Order to request a meeting of counsel regarding Mattel's request for an order authorizing an apostille of the deposition transcript of Susana Kuemmerle.  Please let me know at your earliest convenience whether you are willing to stipulate to entry of an order issuing an issuing an apostille of Ms. Kuemmerle's deposition transcript with the portions currently designated as "Confidential" or "Confidential – Attorneys' Eyes Only."  If you are not willing to do so, then please let me know when, in the next five days, you are available to meet and confer in anticipation of a motion seeking this relief.

Very truly yours,

_____/s/_____

Randa A.F. Osman

RAO:rao
07975/2917515.1

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK  51 Madison Avenue, 22nd Floor, New York, New York  10010-1601   TEL (212) 849-7000  FAX (212) 849-7100
SAN FRANCISCO 50 California Street, 22nd Floor, San Francisco, California  94111 | TEL (415) 875-6600  FAX (415) 875-6700
SILICON VALLEY  555 Twin Dolphin Drive  Suite 560, Redwood Shores, California  94065-2139 | TEL (650) 801-5000  FAX (650) 801-5100
CHICAGO  230 South Wacker Drive  Suite 230, Chicago, Illinois  60606-6361 | TEL (312) 463-2961  FAX (312) 463-2962
LONDON | 16 Old Bailey  London EC4M 7EG, United Kingdom  TEL  44(0) 20 7653 2000  FAX  44(0) 20 7653 2100
TOKYO  Akasaka Twin Tower Main Building, 6th Floor, 17-22 Akasaka 2-Chome, Minato-ku, Tokyo 107-0052 Japan  TEL +81 3 5561-1711  FAX +81 3 5561-1712

# EXHIBIT B

## Randa Osman

| | |
|---|---|
| **From:** | Randa Osman |
| **Sent:** | Thursday, June 25, 2009 1:42 PM |
| **To:** | Randa Osman |
| **Subject:** | FW: Bryant v. Mattel |

**From:** Alexander Cote [mailto:acote@obsklaw.com]
**Sent:** Tuesday, May 12, 2009 3:02 PM
**To:** Randa Osman
**Subject:** RE: Bryant v. Mattel

Randa,

   We don't object in principle to your request. Send me a stip with the details for our review and I don't think we'll have a problem.

   Thanks,

**Alexander H. Cote**
**Overland Borenstein Scheper & Kim LLP**
**601 West Fifth Street, 12th Floor**
**Los Angeles, CA 90071-2025**
**T: 213.613.4660    F: 213.613.4656**

**From:** Randa Osman [mailto:randaosman@quinnemanuel.com]
**Sent:** Monday, May 11, 2009 7:22 PM
**To:** Alexander Cote
**Subject:** RE: Bryant v. Mattel

no problem

Randa A.F. Osman | Partner
Quinn Emanuel Urquhart Oliver & Hedges. LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Main Phone: (213) 443-3000
Main Fax:  (213) 443-3100
E-mail:  **randaosman@quinnemanuel.com**
Web:  **www.quinnemanuel.com**

**From:** Alexander Cote [mailto:acote@obsklaw.com]
**Sent:** Monday, May 11, 2009 6:32 PM

1

EXHIBIT __B__

PAGE __5__

**To:** Randa Osman
**Subject:** RE: Bryant v. Mattel

Sorry I missed your call, I had to step out for a minute. Can I call you tomorrow (Tuesday)?
Thanks,


**Alexander H. Cote**
**Overland Borenstein Scheper & Kim LLP**
**601 West Fifth Street, 12th Floor**
**Los Angeles, CA 90071-2025**
**T: 213.613.4660   F: 213.613.4656**

---

**From:** Randa Osman [mailto:randaosman@quinnemanuel.com]
**Sent:** Monday, May 11, 2009 12:56 PM
**To:** Amman Khan; Alexander Cote
**Cc:** Jon Corey
**Subject:** RE: Bryant v. Mattel

I will give you a call.  Are you available later this afternoon?


Randa A.F. Osman  l  Partner
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Main Phone: (213) 443-3000
Main Fax:  (213) 443-3100
E-mail:  **randaosman@quinnemanuel.com**
Web:  **www.quinnemanuel.com**

---

**From:** Amman Khan [mailto:akhan@glaserweil.com]
**Sent:** Monday, May 11, 2009 12:55 PM
**To:** 'Alexander Cote'; Randa Osman
**Cc:** Jon Corey
**Subject:** RE: Bryant v. Mattel

Randa, Jon, I'm not sure why you'd need an apostille in this case, wasn't the deposition taken by a California certified reporter?  Perhaps I'm not getting it. Feel free to call me anytime today.  -- Amman

---

**From:** Alexander Cote [mailto:acote@obsklaw.com]
**Sent:** Monday, May 11, 2009 12:07 PM
**To:** Randa Osman; Amman Khan
**Cc:** Jon Corey
**Subject:** RE: Bryant v. Mattel

EXHIBIT B
PAGE 6

Randa and Jon,

I am not sure what relief you are seeking. I am happy to meet and confer, although it may be unnecessary if you could explain in more detail what you are seeking.

Thanks,

**Alexander H. Cote**
**Overland Borenstein Scheper & Kim LLP**
**601 West Fifth Street, 12th Floor**
**Los Angeles, CA 90071-2025**
**T: 213.613.4660    F: 213.613.4656**

---

**From:** Randa Osman [mailto:randaosman@quinnemanuel.com]
**Sent:** Monday, May 04, 2009 7:43 PM
**To:** 'Amman A. Khan (akhan@glaserweil.com)'; Alexander Cote
**Cc:** Jon Corey
**Subject:** Bryant v. Mattel

Dear Counsel,

Please see attached correspondence.

Randa Osman

EXHIBIT B

PAGE 4

# EXHIBIT C

## CONFIDENTIAL – ATTORNEYS EYES ONLY
## FILED UNDER SEAL PURSUANT TO
## PROTECTIVE ORDER

# EXHIBIT D


ORRICK

ORRICK, HERRINGTON & SUTCLIFFE LLP
777 SOUTH FIGUEROA STREET
SUITE 3200
LOS ANGELES, CALIFORNIA 90017-5855

tel +1-213-629-2020
fax +1-213-612-2499

www.orrick.com

*VIA EMAIL AND U.S. MAIL*

William A. Molinski
(213) 612-2256
wmolinski@orrick.com

July 28, 2009

Randa A.F. Osman, Esq.
QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
865 S. Figueroa St. 10th Floor
Los Angeles, California  90017

Re:    Carter Bryant v. Mattel, Inc. and consolidated actions

Dear Ms. Osman:

I write in response to your letter addressed to Annette Hurst dated July 22, 2009, concerning the
MGA parties' revised confidentiality designations of the deposition transcript of Susana Kuemmerle.
As I understand your letter, Mattel is objecting to the confidentiality designations set forth in Mr.
Robert Herrington's letter of February 27, 2009.

We are in the process of reviewing prior confidentiality designations but would note that your letter
includes several references to portions of Ms. Kuemmerle's transcript that have not been designated
confidential—thus, any objections relating thereto are misplaced.  Nonetheless, in light of your
letter, we will thoroughly review the Kuemmerle deposition transcript and amend the prior
designations as necessary.

We will endeavor to provide you with amended designations and a substantive response to your
letter by next week.

In the interim, please feel free to contact me if you would like to discuss this issue further.

Very truly yours,

William A. Molinski

EXHIBIT ___D___

PAGE ___23___

# EXHIBIT E

WRITER'S DIRECT DIAL NO.
**(213) 443-3138**

WRITER'S INTERNET ADDRESS
**randaosman@quinnemanuel.com**

August 7, 2009

**Via Email and First Class U.S. Mail**

William A. Molinski
Orrick, Herrington & Sutcliffe LLP
777 South Figueroa Street,
Suite 3200
Los Angeles, California  90017-5855

Re:    **Bryant v. Mattel, Inc. and consolidated actions**

Dear Mr. Molinski:

I write in response to your letter dated July 28, 2009, which was written in response to my letter of July 22, 2009, concerning MGA's revised confidentiality designations for the deposition of Susana Kuemmerle.  In your letter, you stated that MGA would review Ms. Kuemmerle's deposition transcript and provide amended designations.  You indicated that MGA would endeavor to provide its amended designations by this week.  We have not received any amended designation as of yet.  Please let me know when we can expect to receive the amended designations.

Thank you for your attention to this matter.

Very truly yours,

/s/

Randa A.F. Osman

00505.07209/3044770.1

EXHIBIT _E_

PAGE _24_

# EXHIBIT F



**ORRICK**

ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street
Suite 3200
LOS ANGELES, CALIFORNIA 90017-5855

tel +1-213-629-2020
fax +1-213-612-2499

www.orrick.com

August 12, 2009

William A. Molinski
(213) 612-2256
wmolinski@orrick.com

*VIA E-MAIL AND U.S. MAIL*

Randa A. F. Osman, Esq.
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 South Figueroa St., 10th Floor
Los Angeles, CA 90017

Re:    Mattel, Inc. v. MGA Entertainment, Inc. et al.

Dear Ms. Osman:

At your request we have reviewed the testimony of Susana Kummerle. We disagree with your contention that Ms. Kummerle's testimony was not properly designated as either Attorney's Eyes Only or Confidential. Indeed, we are somewhat surprised at your position given that Mattel has insisted that even *the number of pages of its invoices from Quinn Emanuel* is competitively sensitive information that warrants Attorneys' Eyes Only designation.

Nonetheless, we are willing to re-designate the following testimony:

      108:9 – 109:25 – remove Confidential designation
      144:18 – 146:21 – change to Confidential from AEO.

In addition, as previously mentioned, the last three entries in Mr. Herrington's chart (p. 2), dated February 27, 2009, contained a transposition error. The corrected designations are as follows.

      221:14 – 225:18 – Confidential
      227:9-23 – Confidential
      228:7 – 254:25 – AEO

Finally, let me remind you that your letter to Ms. Hurst dated July 22, 2009 contains descriptions of testimony designated as Confidential and Attorneys Eyes Only. Should you attach that letter to any filing, we expect you to file it under seal.

Very truly yours,

William A. Molinski
WAM/mmn

OHS West:260709698.2

EXHIBIT _F_

PAGE _25_

# EXHIBIT G

## Randa Osman

| | |
|---|---|
| **From:** | Randa Osman |
| **Sent:** | Friday, August 14, 2009 6:20 AM |
| **To:** | 'wmolinski@orrick.com' |
| **Cc:** | Jon Corey |
| **Subject:** | Mattel/MGA |

Dear Mr. Molinski,

As you know, I wrote to Annette Hurst of your firm on July 22, 2009, in an effort to meet and confer concerning MGA's confidentiality designations for the deposition transcript of Susanna Kuemmerle, and to determine if MGA would agree to the issuance of an apostille for all portions of Ms. Kuemmerle's deposition testimony that are not properly designated CONFIDENTIAL or CONFIDENTIAL – ATTORNEYS EYES ONLY.  Although I have received two letters from your office (dated July 28, 2009 and August 12, 2009) in response to Mattel's attempts to meet and confer regarding the confidentiality designations, I have not received any response from you as to whether MGA would stipulate to the issuance of an apostille.  Please let me know if MGA intends to oppose the issuance of an apostille for all portions of the deposition transcript of Ms. Kuemmerle that is not properly designated CONFIDENTIAL or CONFIDENTIAL – ATTORNEYS EYES ONLY.

Very truly yours,

Randa Osman

**Randa Osman**
*Partner,*
**Quinn Emanuel Urquhart Oliver & Hedges LLP.**

865 S. Figueroa St 10th Floor
Los Angeles, Ca 90017
213-443-3138 Direct
213.443.3000 Main Office Number
818-905-6304 FAX
randaosman@quinnemanuel.com
www.quinnemanuel.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

1

EXHIBIT __G__

PAGE __26__

# EXHIBIT H

## Randa Osman

| | |
|---|---|
| **From:** | Molinski, William [wmolinski@orrick.com] |
| **Sent:** | Friday, August 14, 2009 11:31 AM |
| **To:** | Randa Osman |
| **Cc:** | Hurst, Annette |
| **Subject:** | RE: Mattel/MGA |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Ms. Osman:

We are not willing to agree to the issuance of an apostille, particularly to one that pertains to testimony that Mattel believes was properly designated as Confidential or Attorneys Eyes Only, since we apparently disagree with how certain testimony was designated. We do intend to oppose your request for the issuance of an apostille.

Bill



O R R I C K

**BILL A. MOLINSKI**

ORRICK, HERRINGTON & SUTCLIFFE LLP
777 SOUTH FIGUEROA STREET
SUITE 3200
LOS ANGELES, CA 90017-5855

tel 213-612-2256
fax 213-612-2499
mobile 310-502-7580
wmolinski@orrick.com

www.orrick.com

---

**From:** Randa Osman [mailto:randaosman@quinnemanuel.com]
**Sent:** Friday, August 14, 2009 6:20 AM
**To:** Molinski, William
**Cc:** Jon Corey
**Subject:** Mattel/MGA

Dear Mr. Molinski,

As you know, I wrote to Annette Hurst of your firm on July 22, 2009, in an effort to meet and confer concerning MGA's confidentiality designations for the deposition transcript of Susanna Kuemmerle, and to determine if MGA would agree to the issuance of an apostille for all portions of Ms. Kuemmerle's deposition testimony that are not properly designated CONFIDENTIAL or CONFIDENTIAL – ATTORNEYS EYES ONLY. Although I have received two letters from your office (dated July 28, 2009 and August 12, 2009) in response to Mattel's attempts to meet and confer regarding the confidentiality

1

EXHIBIT H
PAGE 21

designations, I have not received any response from you as to whether MGA would stipulate to the issuance of an apostille. Please let me know if MGA intends to oppose the issuance of an apostille for all portions of the deposition transcript of Ms. Kuemmerle that is not properly designated CONFIDENTIAL or CONFIDENTIAL – ATTORNEYS EYES ONLY.

Very truly yours,

Randa Osman

**Randa Osman**
*Partner,*
Quinn Emanuel Urquhart Oliver & Hedges LLP.

865 S. Figueroa St 10th Floor
Los Angeles, Ca 90017
213-443-3138 Direct
213.443.3000 Main Office Number
818-905-6304 FAX
randaosman@quinnemanuel.com
www.quinnemanuel.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

"EMF <orrick.com>" made the following annotations.
-----------------------------------------------------------------------------
============================================================

IRS Circular 230 disclosure:
To ensure compliance with requirements imposed by the IRS,
we inform you that any tax advice contained in this
communication, unless expressly stated otherwise, was not
intended or written to be used, and cannot be used, for
the purpose of (i) avoiding tax-related penalties under
the Internal Revenue Code or (ii) promoting, marketing or
recommending to another party any tax-related matter(s)
addressed herein.


============================================================

NOTICE TO RECIPIENT:  THIS E-MAIL IS  MEANT FOR ONLY THE
INTENDED RECIPIENT OF THE TRANSMISSION, AND MAY BE A
COMMUNICATION PRIVILEGED BY LAW.   IF YOU RECEIVED THIS E-
MAIL IN ERROR, ANY REVIEW, USE, DISSEMINATION,
DISTRIBUTION, OR COPYING OF THIS E-MAIL IS STRICTLY
PROHIBITED.   PLEASE NOTIFY US IMMEDIATELY OF THE ERROR BY
RETURN E-MAIL AND PLEASE DELETE THIS MESSAGE FROM YOUR
SYSTEM. THANK YOU IN ADVANCE FOR YOUR COOPERATION.

For more information about Orrick, please visit
http://www.orrick.com/
============================================================
================================================================================

EXHIBIT H
PAGE 28

# EXHIBIT I

AO 390

# APOSTILLE

(Convention de La Haye du 5 octobre 1961)

1. Country: United States of America
   This public document

2. has been
   signed by    John Lopez

3. acting in
   the capacity of    Deputy Clerk

4. bears the seal/stamp    U. S. District Court - Central District of California

## CERTIFIED

5. at    Los Angeles, California          6.    the    U. S. District Court - CDC

7. by    Eduardo Ramirez

8. No.    DC051109-01

9. Seal/Stamp                          10.    Signature

                                            1203

AO-390 (05/81)

Apostilles certify only the authenticity of the signature of the official who signed the document, the capacity in which that official acted, and where appropriate, the identity of the seal or stamp which the document bears. An apostille does not imply that the contents of the document are correct, nor that they have the approval of the United States Courts.

                    CLERK, U.S. DISTRICT COURT

AO-393 (05/81)

EXHIBIT __I__

PAGE __29__

O

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
#### CIVIL MINUTES -- GENERAL

Case No.    CV 04-09049 SGL(RNBx)                          Date: December 3, 2008
Title:      MATTEL, INC. V. MGA ENTERTAINMENT, INC., et al.
==================================================================================
PRESENT:  HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

        James Holmes                        None Present
        Courtroom Deputy Clerk             Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:        ATTORNEYS PRESENT FOR DEFENDANTS:

None Present                             None Present

PROCEEDINGS:

**ORDER FINDING IN FAVOR OF MATTEL AS TO THE MGA PARTIES' AFFIRMATIVE DEFENSES**

**ORDER GRANTING MATTEL'S MOTION FOR DECLARATORY JUDGMENT (DOCKET #4303)**

**ORDER GRANTING MATTEL'S MOTION FOR CONSTRUCTIVE TRUST AND § 17200 INJUNCTIVE RELIEF (DOCKET #4305)**

**ORDER GRANTING MATTEL'S MOTION FOR PERMANENT INJUNCTION (DOCKET #4306)**

**ORDER DENYING AS MOOT MOTION TO STRIKE PORTIONS OF HUTNYAN DECLARATIONS AND EXHIBITS THERETO (DOCKET #4351)**

**ORDER DENYING MOTION TO STRIKE THE PROCTOR, KEISER, AND HOLLANDER DECLARATIONS (DOCKET #4352)**

**ORDER DENYING AS MOOT MOTION TO STRIKE MEYER DECLARATION (DOCKET #4377)**

**ORDER STAYING COURT'S ORDER PENDING CONSIDERATION OF THE PARTIES' POST-**

MINUTES FORM 90                                     Initials of Deputy Clerk: jh
CIVIL -- GEN                          1

EXHIBIT _I_

PAGE _30_

**TRIAL MOTIONS**

**ORDER SETTING FORTH FURTHER BRIEFING SCHEDULE**

**ORDER REGARDING DISCOVERY MASTER PROPOSALS FOR PHASE 2**

**ORDER REGARDING JOINTLY LODGED LAPTOP COMPUTER**

**ORDER REGARDING SERVICE OF PERMANENT INJUNCTION**

**FILED CONCURRENTLY HEREWITH:**

**(1) MATTEL'S PROPOSED ORDER (AS MODIFIED BY THE COURT) GRANTING
DECLARATORY JUDGMENT**

**(2) MATTEL'S PROPOSED ORDER (AS MODIFIED BY THE COURT) GRANTING MATTEL'S
MOTION FOR CONSTRUCTIVE TRUST AND FOR FINDING LIABILITY AND INJUNCTIVE
RELIEF PURSUANT TO CAL. BUS. & PROF. CODE § 17200**

**(3) MATTEL'S PROPOSED ORDER (AS MODIFIED BY THE COURT) GRANTING MATTEL'S
MOTION FOR PERMANENT INJUNCTION**

These matters were heard on November 10, 2008, after extensive briefing by the parties.
After a two-phase jury trial, the Court considers certain equitable issues (referred to as Phase 1C
of the trial) and enters the following Order. Filed concurrently herewith are: (1) Mattel's Proposed
Order (as modified by the Court) Granting Declaratory Judgment; (2) Mattel's Proposed Order (as
modified by the Court) Granting Mattel's Motion for Constructive Trust and for Finding Liability and
Injunctive Relief Pursuant to Cal. Bus. & Prof. Code § 17200; and (3) Mattel's Proposed Order (as
modified by the Court) Granting Mattel's Motion for Permanent Injunction.

In reaching the rulings set forth herein, the Court has considered the parties' briefs and
exhibits submitted during Phase 1C of the trial, the arguments of counsel, as well as the entire
record (including the evidence properly submitted in Phase 1A and Phase 1B of the trial) and its
previous Orders.

The Court refers collectively to all defendants herein, including MGA CEO Isaac Larian
("Larian"), as "the MGA parties". MGA Entertainment, Inc., is referred to as "MGAE".

The Court has carefully and deliberately considered the parties' well-presented legal and
equitable arguments, authorities, and evidence concerning the motions identified above. In its
final analysis, the Court finds, as did the jury, that the preponderance of evidence establishes that
Carter Bryant ("Bryant") created and developed the name, the concept, and, together with
Margaret Leahy, the prototypical sculpt for the hugely-successful Bratz brand of female fashion

MINUTES FORM 90                                                    Initials of Deputy Clerk: jh
CIVIL – GEN                                      2

EXHIBIT __I__

PAGE __31__

dolls while working as an employee of Mattel and while bound by the terms of an Inventions Agreement, which provided that all rights to such property, and the property itself, belong to Mattel. Moreover, the Court further finds, as did the jury, that the preponderance of the evidence establishes that Isaac Larian and MGAE intentionally interfered with Bryant's contractual relations with Mattel, aided and abetted Bryant's breach of fiduciary duty to Mattel, aided and abetted Bryant's breach of his duty of loyalty to Mattel, and unlawfully converted certain property of Mattel. Finally, the Court finds, as did the jury, that the preponderance of the evidence establishes that the MGA parties, in further developing, producing, and marketing its Bratz brand of female fashion dolls, are liable to Mattel for copyright infringement.

## I. The MGA Parties' Affirmative Defenses

Through its "Statement of Position Regarding Phase 1C Issues" (docket #4308), the MGA parties seek the Court's verdict in their favor as to their affirmative defenses of laches, estoppel, and waiver. As set forth below, the Court rules in favor of Mattel, and against the MGA parties as to these three remaining affirmative defenses.[1]

### A. Laches

Laches is an equitable defense that may bar a claim where a defendant establishes "(1) lack of diligence by the plaintiff, and (2) prejudice to the defendant." Grand Canyon Trust v. Tucson Elec. Power Co., 391 F.3d 979, 987 (9th Cir. 2004). The MGA parties establish neither element.

Because the Court has already found that all the claims asserted against the MGA parties were filed within the applicable limitations periods, the Court starts with the presumption that laches is inapplicable. Jarrow Formulas, Inc. v. Nutrition Now, Inc., 304 F.3d 829, 835 (9th Cir. 2002).

Mattel has not delayed in bringing its claims against the MGA parties. The Court has already found, based on the undisputed evidence, that Mattel had no reason to know of its claims against Bryant until November 23, 2003, and that it had no knowledge of its claims against MGA and Larian until Bryant was deposed approximately a year later on November 4, 2004. MGAE intervened in Mattel's suit against Bryant approximately one month later on December 7, 2004. See Dec. 7, 2004, Stip. & Order (04-9059 docket #36) ("MGA[] believes . . . that it has a significantly protectable interest relating to the subject matter of the action, . . . and that MGA's interest is not adequately represented by the existing parties."). Thereafter, the parties briefed Mattel's motion to remand (filed on December 1, 2004, and denied on March 4, 2005), before a stay was entered in the case on May 20, 2005, pending the Ninth Circuit's consideration of an

---

[1] By advancing only the affirmative defenses of laches, estoppel, and waiver in their Phase 1C brief, the MGA parties have implicitly waived the right to pursue any other affirmative defenses that they have not already expressly waived.

EXHIBIT  I

PAGE  32

interlocutory appeal. After MGAE's intervention and before the stay was entered, the parties, including MGAE, engaged in discovery, and the Court considered certain discovery motions, including a motion to compel the deposition of Isaac Larian filed on March 17, 2005. The stay remained in place until after the Ninth Circuit affirmed the Court's denial of the motion to remand; it was lifted on May 16, 2006. Six months later, on November 17, 2006, Mattel sought leave to file its claims against the MGA parties. On this record, the Court finds no lack of diligence by Mattel.

Nor have the MGA parties shown they suffered resulting prejudice. MGAE was permitted to intervene in the lawsuit filed by Mattel against Carter Bryant only one month after it became evident that its rights could potentially be affected, and it did so with the express purpose of protecting its own rights. The other MGA parties have not shown that they suffered any prejudice unique to them or that the intervention by MGAE was not designed to protect their rights.

Moreover, the record does not support the evidentiary prejudice claimed by the MGA parties, and the record is devoid of any expectation-based prejudice (i.e., evidence of what MGA would have done differently had the claims against them been asserted sooner). Indeed, to the contrary, the record reveals that the MGA entities have continued to promote (and profit from) the Bratz brand during the entire pendency of the current litigation.

Because of the presumption that laches will not bar timely claims, and because the Court finds that the MGA parties have failed to establish either element of laches, the Court finds in favor of Mattel as to the affirmative defense of laches.

## B.    Estoppel

For equitable estoppel to preclude Mattel's claims here, the MGA parties must establish four elements:

> (1) [T]he party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel has a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury.

Strong v. County of Santa Cruz, 15 Cal.3d 720, 725 (1975).

The MGA parties cannot establish the first element because, as noted above, the Court has already found, based on the undisputed evidence, that Mattel had no reason to know of its claims against Bryant until November 23, 2003, and that it had no knowledge of its claims against MGA and Larian until Bryant was deposed almost a year later.

The MGA parties have produced no evidence that Mattel intended them to act upon any apparent intention to refrain from asserting any claims against them. To the contrary, MGAE quickly intervened in Mattel's suit against Bryant to protect its interests.

MINUTES FORM 90                                                Initials of Deputy Clerk: jh
CIVIL -- GEN                                    4

EXHIBIT   I

PAGE   33

Moreover, the MGA parties had no basis upon which to rely on Mattel's conduct. As found by the jury, they had superior knowledge regarding Bryant's creation of the Bratz drawings (and the timing of that creation).

Because the Court finds that the MGA parties cannot establish all the elements of estoppel, the Court finds in favor of Mattel as to the affirmative defense of estoppel.

## C.   Waiver

"Waiver is the intentional relinquishment of a known right with knowledge of its existence and the intent to relinquish it." United States v. King Features Entertainment, Inc., 843 F.2d 394, 399 (1988).

Here, the MGA parties contend that Mattel's tolerance of its employees' "moonlighting" for its competitors was so widespread as to constitute such a relinquishment. Although such implied waivers may be found where a plaintiff's conduct "is so inconsistent with the intent to enforce the right in question as to induce a reasonable belief that such right has been relinquished," Medico-Dental etc. Co. v. Horton & Converse, 21 Cal.2d 411, 432 (1942), no such conduct is present here.

No evidence of record suggests that Mattel tolerated the type of conduct in which Bryant engaged. The Court has previously addressed, and will not belabor here, the distinctions to be made between the limited evidence regarding "moonlighting" in the record and the conduct in which Bryant engaged. The evidence establishes, and the jury found, that while employed by Mattel as a fashion designer, Bryant preliminarily developed designs for and pitched a line of fashion dolls to Mattel's direct competitor. There is no evidence that Mattel has ever tolerated this type of conduct. Instead, several witness testified to their belief that such conduct would result in immediate termination of the offending employees. Indeed, the record is replete with details of the steps taken by Bryant, the MGA parties, and MGA employees to conceal the extent of Bryant's involvement in the Bratz project while he was employed by Mattel.

The Court finds in favor of Mattel as to the affirmative defense of waiver.

## II.   Declaratory Relief Motion (docket #4303)

In its motion for declaratory judgment, Mattel seeks, pursuant to its thirteenth cause of action, a declaration of its rights (and the MGA parties' lack of rights) regarding the Bratz-related works, including certain drawings, sculpts, and ideas.[2]  Mattel also seeks imposition of a

[2]  The parties and the Court are all equally aware that ideas are not copyrightable. However, they are, as set forth in the Court's summary judgment order, assignable under California state law.  As noted in the Court's summary judgment order, such an assignment was made by Bryant to Mattel.

MINUTES FORM 90                                                          Initials of Deputy Clerk: jh
CIVIL – GEN                                      5

EXHIBIT ___1___
PAGE___34___

constructive trust as to MGA's copyright registrations in certain Bratz drawings. As detailed in the concurrently filed Order, the Court **GRANTS** Mattel's Motion for Declaratory Judgment (docket #4303).

In opposition, the MGA parties contend that the relief sought by Mattel should not be granted because it is preempted by the Copyright Act. The Court rejects this argument. The Court's ruling regarding preemption is set forth in the Court's summary judgment order, which the Court does not here modify.

Declaratory relief is generally granted "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." Bilbrey by Bilbrey v. Brown, 738 F.2d 1462, 1470 (1984).

Here, considering this legal standard and based on the relationship among the parties, the jury's verdicts, the Court's previous Orders, and the entire record, the Court finds that the declaratory relief sought by Mattel is appropriate.[3] Concurrently herewith, the Court has entered, as modified, Mattel's proposed order for declaratory relief.

### III. Motion for Constructive Trust and § 17200 Injunctive Relief (docket #4505)

As set forth more fully in its Motion, Mattel seeks, pursuant to California state law, imposition of a constructive trust over the trademarks "Bratz" and "Jade." Mattel also seeks, pursuant to its twelfth cause of action, a finding that the MGA parties violated Cal. Bus. & Prof. Code § 17200 on the basis of the jury's findings that the MGA parties converted Mattel's property, tortiously interfered by Mattel's contractual relations, and aided and abetted Bryant's breaches of his fiduciary duty and the duty of loyalty. Pursuant to this finding, and in addition to imposition of a constructive trust as to the Bratz and Jade marks, Mattel seeks an injunction prohibiting the MGA parties from using these marks. As detailed in the concurrently filed Order, the Court **GRANTS** Mattel's Motion for Constructive Trust and § 17200 Injunctive Relief (docket #4305).

#### A.    Constructive Trust

Cal. Civ. Code § 2223 provides that "[o]ne who wrongfully detains a thing is an involuntary trustee thereof, for the benefit of the owner." Cal. Civ. Code § 2224 explicitly addresses things gained by wrongful acts: "One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he or she has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it." The parties agree on the resulting elements, which may be stated as

---

[3] The appropriateness of the constructive trust remedy is discussed below, in a separate section, but applies equally here.

Initials of Deputy Clerk: jh

EXHIBIT $\underline{\mathcal{I}}$

PAGE  35

follows: "(1) the existence of a *res* (property or some interest in property); (2) the right of a complaining party to that *res*; and (3) some wrongful acquisition or detention of the *res* by another party who is not entitled to it. Communist Party v. 522 Valencia, Inc., 35 Cal.App.4th 980, 990 (1995).

Significantly, because the purpose of a constructive trust is to prevent unjust enrichment, enhancement of value is given to the beneficiary of the constructive trust. Haskel Engineering & Supply Co. v. Hartford Acc. & Indem. Co., 78 Cal.App.3d 371, 375 (1978)

Here, the jury found that the MGA parties wrongfully acquired the idea for the name "Bratz" along with the idea and preliminary drawings for a line of fashion dolls. The same is true for the one Bratz character who retained the name given her by Carter Bryant: "Jade."[4]  In addition to wrongfully acquiring them, the MGA parties continue to wrongfully retain them. The MGA parties enhanced the value of the names by acquiring trademark rights to them. California law requires, in this instance, that a constructive trust be imposed as to these marks. Mattel is the beneficiary of the constructive trust and MGA's trademarks in "Bratz" and "Jade" inure to Mattel's benefit.

In making this conclusion, the Court has considered, and rejected, the MGA parties' argument that Mattel has disavowed an intention to seek this remedy or waited too long to seek it. Mattel has conceded that it is not asserting a trademark infringement claim. It cannot, because it has not used the relevant marks in commerce, and one must do so to acquire trademark rights. Conversive, Inc. v. Conversagent, Inc., 433 F.Supp.2d 1079, 1089 (C.D. Cal. 2006) (citing Brookfield Communications, Inc. v. West Coast Entertainment Corp., 174 F.3d 1036, 1046 (9th Cir. 1999)). However, Mattel has not disavowed its intent to seek a constructive trust over the marks that were created by Bryant, with rights thereto acquired by the MGA parties through registration and use in commerce. This remedy is well within the scope of relief that is sought in Mattel's second amended answer and counterclaims, see SAAC at 73 ¶ 9 (Prayer for Relief) (seeking "imposition of a constructive trust over Bratz, including without limitations registrations and applications for registrations relating thereto made or filed by [the MGA parties] and third parties, and all profits, monies, royalties and any other benefits derived or obtained from [the MGA parties'] exercise of ownership, use, sale, distribution and licensing of Bratz"), and the Court has rejected all timeliness challenges to Mattel's claims.

## B.  § 17200 Violation

The record reveals sufficient evidence of injury-in-fact to Mattel to confer standing upon it to assert its § 17200 claim. Specifically, as testified to by Mattel officers (and acknowledged by MGAE officers and attorneys), Mattel has suffered lost market share as a result of the sales of the Bratz dolls. Moreover, the jury was instructed that "harm" to Mattel was a necessary element of a number of state law claims. See Final Jury Instructions as Given [Phase 1A], docket #4115, at

---

[4]  Bryant's other characters were re-named before they were marketed: Zoe became the now-familiar Cloe, Hallidae became Sasha, and Lupe became Yasmin.

MINUTES FORM 90
CIVIL – GEN                                        7                    Initials of Deputy Clerk: jh

EXHIBIT  I

PAGE  36

Instruction Nos. 22, 25-27, and 29 (intentional interference with contractual relations, aiding and abetting breaches of fiduciary duty and the duty of loyalty, and conversion). The jury's finding in favor of Mattel as to those claims necessarily implies a factual finding by the jury as to the specified element of harm to Mattel and, as explained in more detail below, the Court is bound by that implicit factual finding. Los Angeles Police Protective League v. Gates, 995 F.2d 1469, 1473 (9th Cir. 1993) (finding that by awarding damages on a specific claim, the jury implicitly found that the plaintiff had proven one particular element of that claim).

As set forth in a previous Order, this claim is only partially preempted by the Copyright Act. The preempted portion of Mattel's § 17200 claim did not survive summary judgment and is not at issue here.

Based on the jury's findings that the MGA parties converted Mattel's property, tortiously interfered with its contractual relations, and aided and abetted Bryant's breaches of his fiduciary duty and the duty of loyalty, the Court finds that the MGA parties also violated Cal. Bus. & Prof. Code § 17200.

## C.      § 17200 Injunctive Relief

Where a Court finds violation of § 17200, it has broad powers to shape appropriate injunctive relief:

> Any person who . . . has engaged . . . in unfair competition may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments, . . . as may be necessary to prevent the use or employment by any person of any practice which [either] constitutes unfair competition, . . . or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition.

Cal. Bus. & Prof. § 17203.

The injunction sought by Mattel's proposed order (as modified by the Court) is necessary to restore to Mattel the property acquired as a result of the MGA parties' unfair competition.

For the reasons set forth above, concurrently herewith, the Court has entered, as modified, Mattel's proposed order for constructive trust and § 17200 injunctive relief.

## IV. Motion for Permanent Injunction (docket #4306)

### A.      Facts Supporting Injunctive Relief

The present motions, to varying degrees, implicate the question of to what extent a Court trying equitable claims is bound by a jury's factual findings related to the same underlying conduct.

MINUTES FORM 90
CIVIL -- GEN                                8                          Initials of Deputy Clerk: jh

EXHIBIT __I__

PAGE __37__

The question comes into sharpest focus in Mattel's Motion for Permanent Injunction.

"[W]here legal claims are tried by a jury and equitable claims are tried by a judge, and the claims are based on the same facts, the Seventh Amendment requires the trial judge to follow the jury's implicit or explicit factual determinations." Los Angeles Police Protective League v. Gates, 995 F.2d 1469, 1473 (9th Cir. 1993) (internal quotation marks and citation omitted). In the absence of an express finding, a court must determine whether implicit factual determinations by the jury can be inferred, and should consult the jury's verdict and the jury instructions to make this determination. Id. (finding, based on an examination of the jury instructions and the jury's verdict awarding damages as to a specific claim, that the jury implicitly found that plaintiff had proven one particular element of that claim).

The Court is certainly aware that the jury returned an award of damages that was far less than that sought by Mattel. Moreover, the Court is aware that a controversy exists as to the actual amount of the jury's verdict. See Mattel's Submission Regarding Email from Juror No. 7 and Request to Recall the Jury, docket #4288 (denied by Order dated September 3, 2008, docket #4295).

MGA has argued that the jury has found that only the so-called "first generation" Bratz dolls were infringing. The jury made no express finding on this issue; the general verdict form they were provided did not request such a detailed finding. Thus, in accordance with Gates, the Court looks to the jury instructions to determine any implicit findings.

The jury was instructed that "Mattel is entitled to recover any profits attributed to the infringement." MGA attempts to equate the $10 million figure awarded by the jury for copyright infringement to the amount of profits related to the first generation Bratz dolls. The difficulty with this "equation" is that it is woefully unbalanced. To be sure, MGA's damages expert presented evidence that the first generation Bratz dolls netted approximately $4 million in profits; had the jury awarded this amount as copyright damages, then the Court might be persuaded that the jury implicitly found that the infringement was limited to the first generation Bratz dolls. But that is not the case. The factual finding advanced by MGA cannot be inferred from the jury award.

In making this ruling, the Court is mindful of the jury's note that queried whether they could find infringement as to the first generation dolls and no other dolls. The Court, without objection from counsel, answered that question affirmatively. Although this note reveals that the jury considered limiting their finding of infringement to the first generation, it does not reveal that they ultimately chose that conclusion. Again, had the jury awarded an amount equal to the amount of profits generated by the first generation Bratz dolls, the Court would find, based on the award and the jury's note, that the jury implicitly found infringement as to the first generation Bratz dolls only.

Alternatively, counsel posited at oral argument, that the jury found that a large portion of the

EXHIBIT $\underline{\mathcal{I}}$

PAGE 38

Bratz dolls infringed Mattel's copyrights, but only in very minute ways.[5]  Counsel likened the jury's damage award to a rug that, no matter which way one moved it, simply would not cover the floor. See Nov. 10, 2008, Tr. at 100-101.  Counsel explained that the jury's findings led to one conclusion or the other and, regardless of which conclusion was chosen, the jury's finding did not support an injunction:

> The rug is too small for an injunction, regardless of how you allocate that money.  You either come up with a vanishingly small subset of infringing products, or you come up with a vanishingly small percentage of infringement by all of the products.  And the jury has put that cap for us.

Id.  Although colorful, counsel's metaphor is not helpful.  Assuming that the Court would be bound by a jury's factual finding in a case where only two possible inferences -- both of which would lead the Court to the same conclusion -- were possible, this is not that case.

Where a jury returns a monetary award based on a particular piece of evidence such as an expert report, the Court will infer the factual findings that necessarily flow from it.  But where, as here, the Court and the parties are left to hazard various guesses as to the jury's intentions, the Court can make no principled inferences and must therefore engage in its own fact-finding.[6]

The Court has carefully examined each of the exhibits attached to the proposed preliminary injunction, as well as the actual exhibits being stored in Courtroom Four of the U.S. Courthouse in Riverside, and finds that the dolls depicted in Exs. 3 and 4, and the products depicted in Exs. 5 and 6, are, pursuant to the standard set forth in the Court's Orders dated July 24, 2008, and August 15, 2008, substantially similar to Mattel's registered copyrighted drawings and are embodiments of the sculpts depicted in Exs. 1 and 2.  In doing so, the Court has first examined the specific expressive elements of the works at issue and has compared them to those found in the exhibits referenced

---

[5]  This argument was not raised in the opposition papers filed by the MGA parties, and is rejected for that reason as well.  See Opp. at 21 ("Here, the circumstances clearly show that the only reasonable conclusion to draw is that the jury's infringement finding was limited to a small universe of products, specifically the first generation Bratz dolls as clothed and packaged.") (emphasis added).

[6]  The MGA parties hazard such a guess in their opposition, wherein they attempt to explain how, in the jury's mind, $4 million in first-generation profits could equate to $10 million total copyright infringement award: "The jury's decision to award $6 million against MGA[E] (and $10 million total) rather than simply the $4 million] argued by MGA as profits for the first generation may be due to the jury believing that MGA's proffer of $4 million in profits on nearly $80 million revenue was a bit low."  Opp. at 21 n.30.  This guessing game illustrates why no factual findings can be inferred from the jury's copyright infringement award and why the Court is obligated to make its own factual findings.

Initials of Deputy Clerk: jh

EXHIBIT I
PAGE 39

above, and the Court has then further examined the overall similarity of the expression in various
works from the perspective of the ordinary observer. Although the Court recognizes that there are
differences between the works, the Court ultimately finds that those dolls and products set forth in
the above-referenced exhibits are **substantially similar** to Mattel's registered copyrighted
drawings and are embodiments of the sculpts depicted in Exs. 1 and 2. Especially important to the
Court's conclusion is the consistency of the particularized expression of the dolls' heads, lips, eyes,
eyebrows, eye features, noses, as well as the particularized expression of certain anatomical
features relative to others (most notably the doll lips, doll eyes, doll eyebrows, and certain other
doll eye features) and de-emphasis of certain anatomical features (most notably the minimalized
doll nose and thin, small doll bodies). Also important to the Court is the particularized, synergistic
compilation and expression of the human form and anatomy that quite clearly expresses a unique
style and conveys a distinct look or attitude, especially as perceived by the intended consumer
market (7-12 year old girls). The evidence on this latter point is particularly compelling, supported
by both analytical and market analysis. Together, these features clearly give each of the dolls the
particularized expression to which the Court referred in its July 24, 2008, and August 15, 2008,
Orders.

## B.    Standard for Awarding Permanent Injunctive Relief

The Supreme Court recently announced the standard for granting a permanent injunction:

> According to well-established principles of equity, a plaintiff
> seeking a permanent injunction must satisfy a four-factor test before a
> court may grant such relief. A plaintiff must demonstrate: (1) that it has
> suffered an irreparable injury; (2) that remedies available at law, such
> as monetary damages, are inadequate to compensate for that injury; (3)
> that, considering the balance of hardships between the plaintiff and
> defendant, a remedy in equity is warranted; and (4) that the public
> interest would not be disserved by a permanent injunction.

eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006).

### 1.    Irreparable Injury

The Court begins, then, by looking to whether Mattel has established that it will suffer
irreparable injury if an injunction is not granted.

Prior to the eBay decision, where a plaintiff sought a preliminary injunction, irreparable injury
was presumed in intellectual property cases; in light of the eBay decision, some doubt has been
cast on whether courts should continue to apply that presumption. See Broadcom Corp. v.
Qualcomm Inc., 543 F.3d 683, 702 (Fed. Cir. 2008) (noting that the continuing viability of the
presumption is "an open question").

Mattel has established its exclusive rights to the Bratz drawings, and the Court has found

MINUTES FORM 90                                                    Initials of Deputy Clerk: jh
CIVIL -- GEN                              11

EXHIBIT  _I_

PAGE  40

that hundreds of the MGA parties' products -- including all the currently available core female fashion dolls Mattel was able to locate in the marketplace -- infringe those rights. The MGA parties have evinced an intention to continue marketing those dolls. This represents a wholesale inability on the part of Mattel to enforce its exclusive rights under the Copyright Act, amounting to irreparable harm.  Taylor Corp. v. Four Seasons Greetings, LLC, 403 F.3d 958, 968 (8th Cir. 2005).

MGA criticizes Mattel's reliance on Taylor, citing Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd., 518 F.Supp.2d 1197, 1211 n.13 (C.D. Cal. 2007) (Wilson, J.). The Grokster case holds that, in copyright permanent injunction cases, a presumption of irreparable injury is not permitted in light of eBay. In Grokster, the court rejected the rationale of Taylor, stating:

> [T]his Court is not persuaded by the Eighth Circuit's pre-eBay conclusion in Taylor Corp. v. Four Seasons Greetings, LLC, 403 F.3d 958, 968 (8th Cir. 2005), that because "[a plaintiff] certainly has the right to control the use of its copyrighted materials, . . . irreparable harm inescapably flows from the denial of that right."  In substance, such language is nothing more than a disguised presumption, particularly with the use of the word "inescapably." After eBay, Plaintiffs cannot rely on the pure fact of infringement in order to establish irreparable harm.

Grokster, 518 F. Supp.2d at 1211 n.13. Judge Wilson's point is well-taken. Although the Taylor court did not purport to apply a presumption of irreparable harm, its use of the word "inescapably" in this phrase certainly could indicate that it was merely presuming irreparable harm. However, a review of the Taylor case makes clear that the Eighth Circuit considered the implications of allowing an infringer to continue to infringe: "[I]n copyright infringement actions, the denial of a request for injunctive relief could otherwise "amount to a forced license to use the creative work of another." Taylor Corp., 403 F.3d at 967-68. This rationale removes Taylor further from the application of a "disguised presumption" of irreparable harm and closer to an actual finding of irreparable harm.

At least one district court within the Ninth Circuit is in accord with the Court's decision today, as it has decided, post-eBay, that a plaintiff who establishes past infringement and the threat of future infringement amounts to irreparable harm. Designer Skin, LLC v. S & L Vitamins, Inc., 2008 WL 4174882 at *5 (D. Ariz. 2008) (Teilborg, J.). Judge Teilborg's rationale is well articulated:

> Whatever else might be said about the propriety of a rule that holds that past infringement plus the threat of future infringement equals irreparable harm, it seems clear to this Court that such a rule would not run afoul of eBay's directives. First of all, the eBay Court did not address the showing necessary to establish "irreparable harm." It merely held that the plaintiff has the burden of proving it. Second, this two-part test does not resurrect the presumption of irreparable harm impliedly laid to rest by the eBay court. It simply recognizes that a

EXHIBIT  _I_
PAGE  _41_

> plaintiff meets the burden of proving irreparable harm by making this two-part showing. And finally, the two-part test does not represent a rule [prohibited by eBay] that an injunction automatically follows a determination that a copyright has been infringed. . . . In exercising their equitable discretion, courts would still have the freedom to deny injunctive relief when the public interest or the balance of hardships weighs against such relief.

Designer Skin, 2008 WL 4174882 at *5 (citation omitted).

Indeed, this is not so complex an issue as applied to the facts of this particular case. The statutory directive to the Court is clear: "Any court having jurisdiction of a civil action arising under this title may, . . . grant temporary and final injunctions on such terms as it may deem reasonable *to prevent or restrain infringement of a copyright*." 17 U.S.C. § 502 (emphasis added). The Court can envision no case more appropriate to a finding of irreparable harm. Here, as the record shows and as the jury found, an employee bound by contract and fiduciary duty to communicate to his employer (and keep confidential from all others) all copyrightable works he creates during the term of his employment, not only fails to so communicate but actually secretly purports to convey the rights thereto to a direct competitor of his employer. The rights to those works are actively concealed from their true owner (by both the employee and the competitor) for years while the competitor exploits the works, reaping profits therefrom totaling hundreds of millions of dollars. After millions of pages of discovery are produced, thousands of filings are submitted, scores and scores of motions are decided by the Court, and after months of trial and two jury verdicts in favor of the plaintiff, defendants remain steadfast in their intention to continue to produce their infringing products. Viewed in this light, Mattel has established irreparable injury on the basis of the MGA parties' past infringement and the high probability of continued acts of infringement.

## 2.      Inadequate Legal Remedies

Unless MGA is enjoined, Mattel would be forced to sue each retailer and distributor to stop the sale and distribution of the infringing dolls; therefore, the legal remedies are inadequate. See Continental Airlines, Inc. v. Intra Brokers, Inc., 24 F.3d 1099, 1105 (9th Cir. 1994).

## 3.      Balance of Equities

Factually, the hardship on MGA weighs very heavily upon the Court. The Court has expressed its concerns in this regard on the record. The evidence at trial showed that, at least historically, Bratz is the brand that has made MGA profitable. And the proposed injunction addresses the core of that brand -- most notably, the female fashion dolls.

However, where, as here, the only hardship that will be suffered is lost profits from the cessation of its infringing activities, the Court, in the final analysis, must afford this very little -- if any -- weight. Triad Systems Corp. v. Southeastern Exp. Co., 64 F.3d 1330, 1338 (9th Cir. 1995) ("Where the only hardship that the defendant will suffer is lost profits from an activity which has

EXHIBIT ____

PAGE ____

been shown likely to be infringing, such an argument in defense merits little equitable consideration
. . . .") (internal quotation marks and citations omitted), accord, Cadence Design Systems, Inc. v.
Avant! Corp., 125 F.3d 824, 829-30 (9th Cir. 1997) (collecting cases).  The balance of equities
favor Mattel.

### 4.    Public Interest

There is a strong economic interest, especially in these troubled economic times, in
maintaining a profitable enterprise as a going concern.  However, there is also a strong public
interest in enforcing copyright laws in a uniform manner.  Indeed, nothing is more essential to long-
term economic prosperity than the stability provided by the rule of law.  Although the MGA parties
raise excellent points in their opposition, in the end, the public interest is served by precluding
defendants from engaging in copyright infringement.  The injunction issued by the Court does no
more than that.

### C.    Scope of Injunction

The scope of the permanent injunction is set forth in a separate order.  Four issues raised in
the parties' papers warrant the brief discussion that follows.

### 1.    Impoundment and Destruction

As set forth more fully in its motion, Mattel seeks impoundment of Bratz dolls and
destruction of the specialized plates, molds, and matrices used to make them.  Impoundment of
existing infringing products and the destruction of the means to make those products are clearly
remedies contemplated by the Copyright Act.  See 17 U.S.C. § 503(a).  The MGA parties argue
that these remedies are inappropriate because there is no ongoing infringement or, at the very
least, its products infringe very little.  In its findings supporting the issuance of a permanent
injunction, the Court has rejected this premise, and the Court finds that the requested
impoundment and destruction is an appropriate remedy.[7]

### 2.    Recall

In light of the scope of infringement found by the Court, and in light of the fact that the
injunction addresses products that directly compete with Mattel's products, the Court has ordered
the recall of infringing products from retailers.  See CyberMedia, Inc. v. Symantec Corp., 19
F.Supp.2d 1070, 1079 (N.D. Cal.1998); Patry on Copyright, § 22:81.

---

[7]  No party shall destroy any of the implements used to make the Bratz dolls that are the
subject of the permanent injunction absent a specific order of this Court authorizing such
destruction.

EXHIBIT  I
PAGE  43

### 3. Royalty

The MGA parties argue that the more appropriate remedy to be imposed here is for the Court to order a royalty instead of an injunction. The difficulty in this proposal is that it is premised on the idea that the ongoing infringement, if any, is minute. See Opp. at 29-32 (suggesting a royalty of .3% would be appropriate). As noted above, the Court has rejected this premise. Moreover, although the Court has been hopeful that an out-of-court resolution involving such a remedy may have been obtained, and has gone to great lengths to encourage both sides to pursue such a resolution in good faith, their failure so far to do so underscores the Court's present view, which is based on the evidence and argument of record, that the hostility between these parties is such that this form of remedy is unworkable.

### 4. Appointment of a Special Master

Mattel suggests that the Court appoint a special master to "monitor implementation of the relief granted by the Court." Motion at 28. The MGA parties have not indicated their position on this issue. The appointment of a special master to monitor implementation of the permanent injunction is warranted; this task could easily overwhelm the Court's resources. Subject to the Court's consideration of any in camera objections submitted to the Court by the parties, the Court will select a Special Master from the list submitted below.

### V. Motion to Strike Portions of Hutnyan Declarations and Exhibits Thereto (docket #4351)

The MGA parties move to strike certain evidence offered by Mattel on the issue of harm suffered by Mattel, contending the evidence is inadmissible. This motion is **DENIED AS MOOT.** Although Mattel has offered additional evidence of harm, the Court has found the evidence of harm to Mattel offered during Phases 1A and 1B sufficient to resolve the issues presented in the current motions.

### VI. Motion to Strike the Proctor, Keiser, and Hollander Declarations (docket #4352)

The motion is **DENIED** as to the Proctor declaration. The declaration is a helpful presentation of appropriate argument and/or observations of counsel for the Court's consideration.

The motion is **DENIED** as to the Keiser declaration. The Keiser declaration authenticates two-dimensional depictions of three-dimensional models he scanned using a sophisticated scanning machine.

The motion is **DENIED** as to the Hollander declaration. This declaration was the subject of extensive briefing in MGA's motion in limine 8, which the Court has reviewed. Hollander's declaration, which presents survey evidence of the target market, is relevant to application of the

MINUTES FORM 90
CIVIL -- GEN

15

Initials of Deputy Clerk: jh

EXHIBIT _1_

PAGE _44_

intrinsic test. The Court, in fact, instructed the jury to consider how girls 7 to 12 would view the Bratz dolls. Hollander's survey attempts to determine just that. The Court has considered the methodological flaws pointed out by MGA in weighing the evidence Hollander presents.

### VII. Motion to Strike Meyer Declaration (docket #4377)

Mattel moves to strike the Meyer declaration. This motion is **DENIED AS MOOT.** This declaration sets forth a calculation justifying the proposed .3% royalty. The Court has rejected the proposal that a royalty be imposed.

### VIII. Stay of this Order

This Order, and the three concurrently filed orders, are stayed pending the Court's consideration of the parties' post-trial motions. This stay shall remain in place until lifted by further Order of this Court.

### IX. Briefing Schedule for Post-Trial Motions

Notwithstanding the Court's earlier order, the motions referred to in ¶ 3 of the Court's September 2, 2008, Order may be filed no later than December 22, 2008. Response briefs may be filed no later than January 12, 2009. Replies may be filed no later than January 19, 2009. A hearing on this matter is set for Wednesday, February 11, 2009, at 10:00 a.m., in Courtroom One of the above-referenced Court.

### X. Discovery Master Proposals for Phase 2

The Court previously stated that it would submit for counsel's consideration the names of potential Discovery Masters for Phase 2 that possess both the resources to handle the scope of the anticipated discovery disputes as well as the personal confidence of this Court. The Discovery Master would serve pursuant to the same terms and conditions of the Phase 1 Discovery Master. In addition, as noted above, the Court also intends to appoint a Special Master to oversee implementation of the permanent injunction. The Court provides for counsels' consideration the following individuals who meet the Court's requirements, and have indicated to the Court a willingness and an ability to serve in one or both of these roles. Counsel are directed to file any objections to any or all of the proposed Masters on or before December 22, 2008. Any such objections are to be submitted *in camera* and under seal with the Court. After considering any objections, as well as any preferences expressed by the parties, the Court will make an appointment at the appropriate time.

EXHIBIT  I
PAGE  45

Patrick A. Fraioli, Jr.
Moldo Davidson et al LLP
2029 Century Park East, 21st Fl.
Los Angeles, CA 90067
310-551-3100
pfraioli@mdfslaw.com

Jan L. Handzlik
Howrey LLP
550 S. Hope Street, Suite 1100
Los Angeles, CA 90071
213-892-1802
handzlikj@howrey.com

Kendall H. MacVey
Best Best & Krieger LLP
P.O. Box 1028
Riverside, CA 92502-1028
951-686-1450

David G. Moore
Reid & Hellyer
P.O. Box 1300
Riverside, CA 92502
951-682-1771
dmoore@rhlaw.com

Robert C. O' Brien
Arent Fox LLP
555 W. 5th Street, 48th fl.
Los Angeles, CA 90013
213-629-7400
obrien.robert@arentfox.com

C. Michael Zweiback
Alston & Bird LLP
333 S. Hope Street, 16th Fl.
Los Angeles, CA 90071
213-576-1000
michael.zweiback@alston.com

## XI. Jointly Lodged Laptop Computer

The Court is in possession of a jointly lodged laptop computer used to access the Phases 1A and 1B trial transcripts maintained by the parties. The Court will retain possession of the laptop computer until after its ruling on the motions referred to in section IX, above, and the parties are directed to follow the procedure outlined in the Court's September 9, 2008, Order regarding the e-filing of excerpts of transcripts cited in their anticipated motions.

## XII. Service of Permanent Injunction

The service of Mattel's proposed permanent injunction by the Clerk presents challenges given the limited resources of the Court. The permanent injunction, for reasons explained by Mattel on the record, attaches to it approximately 900 color copies. Accordingly, although the Court directs the Clerk to serve on all parties a copy of the permanent injunction, the Court directs Mattel, no later than ten days after the entry of this Order, to serve a copy of the permanent injunction, together with the color exhibits, on all parties.

**IT IS SO ORDERED.**



I hereby attest and certify on
that the foregoing document is a
in and correct copy of the original
my office and in my legal custody.
**Initials of Deputy Clerk jh**
CLERK, U.S. DISTRICT COURT

EXHIBIT _I_

PAGE _46_




I hereby attest and certify on 5/11/09
that the foregoing document is a full, true
and correct copy of the original on file in
my office, and in my legal custody.

CLERK U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

DEPUTY CLERK

1208

EXHIBIT I
PAGE 407

AO 390

## APOSTILLE

(Convention de La Haye du 5 octobre 1961)

1.  Country: United States of America
    This public document

2.  has been
    signed by    John Lopez

3.  acting in
    the capacity of    Deputy Clerk

4.  bears the seal/stamp    U. S. District Court  -  Central District of California

CERTIFIED

5.  at    Los Angeles, California        6.    the    U. S. District Court - CDC

7.  by    Eduardo Ramírez

8.  No.    DC051109-04

9.  Seal/Stamp

1203

AO-390 (05/81)

Apostilles certify only the authenticity of the signature of the official who signed the document, the capacity in which that official acted, and where appropriate, the identity of the seal or stamp which the document bears. An apostille does not imply that the contents of the document are correct, nor that they have the approval of the United States Courts.

CLERK, U.S. DISTRICT COURT

AO-393 (05/81)

EXHIBIT  I

PAGE  48

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES -- GENERAL

Case No.   CV 04-09049 SGL(RNBx)                    Date: April 27, 2009
Title:     MATTEL, INC. V. MGA ENTERTAINMENT, INC., et al.
================================================================
PRESENT:   HONORABLE STEPHEN G. LARSON, U.S. DISTRICT JUDGE

    Cindy Sasse                             None Present
    Courtroom Deputy                        Court Reporter

ATTORNEYS PRESENT FOR                   ATTORNEYS PRESENT FOR
PLAINTIFFS:                             DEFENDANTS:

None Present                            None Present

**PROCEEDINGS:   ORDER DENYING MATTEL'S MOTION FOR JUDGMENT AS A
MATTER OF LAW (DOCKET #4498)**

**ORDER GRANTING IN PART AND DENYING IN PART MGA'S
MOTION FOR JUDGMENT AS A MATTER OF LAW (DOCKET
#4496)**

**ORDER AMENDING IN PART ORDER RE FINDING OF
LIABILITY PURSUANT TO CAL. BUS. & PROFS. CODE § 17200
(DOCKET #4441);**

**ORDER GRANTING IN PART AND DENYING IN PART MGA'S
MOTION FOR REMITTITUR (DOCKET #4495, #4523)**

**ORDER LIFTING STAY ON PERMANENT INJUNCTION (#4443)**

**ORDER FOR ACCOUNTING OF PROFITS OF
BRATZ PRODUCTS**

**ORDER REGARDING RETRIEVAL OF PREVIOUSLY LODGED**

MINUTES FORM 90                         Initials of Deputy Clerk __cls_____
CIVIL -- GEN                  1

EXHIBIT  I
PAGE  49

**LAPTOP COMPUTER WITH PHASE 1A AND 1B TRIAL
TRANSCRIPT**

**ORDER REGARDING UNSEALING OF DOCUMENTS FILED
UNDER SEAL FROM MAY 28, 2008, THROUGH FEBRUARY 11,
2009**

**ORDER RE PHASED, UNDER SEAL RELEASE OF FORENSIC
AUDITOR'S REPORT TO COUNSEL AND PARTIES**

**ORDER GRANTING IN PART AND DENYING IN PART
MOTION TO INTERVENE (DOCKET #4761)**

**ORDER APPOINTING TEMPORARY RECEIVER**

**ORDER SETTING HEARING ON APPOINTMENT OF
PERMANENT RECEIVER**

## I. MATTEL'S MOTION FOR JUDGMENT AS A MATTER OF LAW
(DOCKET #4498)

A motion for judgment as a matter of law after trial is granted only when there is
not a "legally sufficient evidentiary basis [for a reasonable jury] to find for that party on
[an] issue." Pavao v. Pagay, 307 F.3d 915, 918 (9th Cir. 2002). Sufficient evidence is
"evidence adequate to support the jury's conclusion, even if it is also possible to draw a
contrary conclusion." Id.

Mattel, Inc. ("Mattel") moves for judgment as a matter of law on the issue of the
scope of infringement of the Bratz dolls. Specifically, Mattel argues that "[e]ach core
Bratz fashion doll sold by MGA infringes Mattel's copyrights." Motion at 4. Mattel
acknowledges that the judgment it seeks would alter neither the jury's damages award
nor the Court-awarded equitable relief; however, Mattel seeks this judgment as an
alternative basis for the relief it has already been awarded. Without ruling on the merits
of the argument, the Court declines to adopt this alternative basis because it is not
necessary to support the relief awarded to Mattel. The jury, in the Phase 1B verdict,
found that the Bratz dolls infringed Mattel's copyrights, but the scope of that
infringement was not explicitly found by the jury. Even if the Court were to grant the
relief sought by Mattel, the amount the jury awarded for copyright infringement, $10
million, would be unchanged. Moreover, the Court, sitting in equity, made an express
factual finding, set forth more fully in its December 3, 2008, Order that the core Bratz
fashion dolls infringed Mattel's copyrights. This portion of Mattel's motion is therefore
**DENIED.**

MINUTES FORM 90                                    Initials of Deputy Clerk __cls_____
CIVIL -- GEN                          2

EXHIBIT __I__

PAGE __50__

In a similar fashion, Mattel seeks judgment as a matter of law on the issue that
sculptor Margaret Leahy's contributions cannot, as a matter of law, support a claim of
independent creation of the Bratz fashion doll sculpt, TX 1136A.[1]  In Phase 1A of the
trial, the jury found that the sculpt was "'conceived or reduced to practice' -- that is,
created -- by Carter Bryant, alone or jointly with others," during his employment with
Mattel.  Phase 1A Verdict Form at 5.  This finding, when viewed in conjunction with the
Court's summary judgment order, was sufficient to place the sculpt within the
assignment clause of the Inventions Agreement which, in turn, conferred the rights to
the sculpt to Mattel.  Therefore, as with the previous issue, this judgment is sought
merely as an alternative basis for the relief Mattel has been awarded, which the Court,
without deciding the merits, declines to adopt.  This portion of Mattel's motion is
therefore similarly **DENIED.**

Finally, Mattel seeks judgment as a matter of law that both Isaac Larian and
MGA HK engaged in acts of fraudulent concealment.  As to Isaac Larian, although there
was evidence suggesting that he engaged in a cover-up as to *who* created Bratz (and
later, as to *when* Bratz was created), he testified at trial that he did nothing to keep
Carter Bryant's *role* in the creation of Bratz hidden.  Even in the face of evidence to the
contrary, the jury could have believed him; thus, judgment as a matter of law on this
point is not appropriate.  Credibility determinations are for the jury, and the jury could
have made this credibility determination in favor of Isaac Larian.  Winarto v. Toshiba
America Electronics Components, Inc., 274 F.3d 1276, 1294 (9th Cir. 2001).  As for
MGA HK, Mattel did not cite any evidence that suggests that MGA HK should be found
to have fraudulently concealed the basis for Mattel's claims, and therefore judgment as
a matter of law is not appropriate.  This portion of Mattel's motion is therefore also
**DENIED.**

For the reasons set forth above, Mattel's Motion for Judgment as a Matter of Law
is **DENIED** in its entirety.

### II. MGA'S MOTION FOR JUDGMENT AS A MATTER OF LAW (DOCKET #4496)

The MGA parties[2] seek judgment as a matter of law that federal copyright law

---

[1] For their part, the MGA parties seek judgment as a matter of law of the mirror image of Mattel's
claim; specifically, as discussed more fully below, the MGA parties seek judgment as a matter of law that
Margaret Leahy's contribution to the creation of the sculpt amounted to independent creation.

[2] The Court herein refers to all three MGA parties collectively and individually as follows:  MGA
Entertainment, Inc., is referred to as "MGAE."  MGA Entertainment (HK) Limited (also referred to in the
record as "MGA Hong Kong") is referred to herein as "MGA HK."  All three defendants, Isaac Larian,
MGAE, and MGA HK are collectively referred to as "the MGA parties."  When necessary to distinguish
them further, the subset of entity defendants, MGAE and MGA HK, are collectively referred to as "the
MGA entities."

Initials of Deputy Clerk __cls_____

EXHIBIT __I__

PAGE __51__

preempts Mattel's claims for aiding and abetting breach of fiduciary duty and the duty of
loyalty. Relatedly, they also seek judgment as a matter of law that the damages
awarded as to the state-law claims are precluded as preempted because they represent
damages awarded under the theory of disgorgement, which was also awarded as part
of copyright damages. The Court has previously rejected the argument that copyright
law preempts the two aiding and abetting claims, and the Court leaves undisturbed its
previous holding on this issue. As for the related argument regarding damages, to
accept the MGA parties' argument, the Court would have to reject the current, firmly
established standard for determining if a state-law claim is preempted in favor of a new
standard that would find preemption any time the relief sought by the state-law claim is
also redressable by a copyright claim. This Court must follow the enunciated standard
for copyright law preemption, and it therefore rejects the MGA parties' argument
regarding this issue. This portion of the motion is **DENIED**.

The MGA parties seek judgment as a matter of law that Mattel's claims for aiding
and abetting breach of fiduciary duty and the duty of loyalty is preempted by the
California Uniform Trade Secrets Act. This issue was not raised in the parties' pretrial
conference order and, accordingly, was waived. See e.g., El-Hakem v. BJY Inc., 415
F.3d 1068, 1077 (9th Cir. 2005). This portion of the motion is **DENIED**.

The MGA parties seek judgment as a matter of law that Mattel failed to prove its
damages as to each of its state-law claims. Mattel proceeded on a theory of recovery
that sought disgorgement of the MGA parties' profits rather than another measure of
damages; there was ample evidence presented by both sides regarding the MGA
parties' profits. The Court has previously rejected, and does not now revisit, the MGA
parties' contention that the proper measure of damages for aiding and abetting Carter
Bryant's breaches of fiduciary duty and the duty of loyalty should be measured by
Carter Bryant's profits, rather than the MGA parties' profits. As for the conversion claim,
as set forth infra, the Court has remitted the monetary damages awarded by the jury in
favor of the equitable relief awarded by the Court in the form of return of the original
drawings.[3] This portion of the motion is **DENIED**.

The MGA parties seek judgment as a matter of law that Mattel failed to prove that
the MGA parties had actual knowledge of Carter Bryant's fiduciary duty or breach
thereof. Admittedly, there is an absence of direct evidence, such as an admission by
Isaac Larian, that any of the MGA parties had actual knowledge of Carter Bryant's
fiduciary duty or breach thereof. But the indirect evidence relevant to this issue
admitted at trial clearly supports the jury's verdict that both MGAE and Isaac Larian had
an understanding that Carter Bryant had such an obligation as well as the parameters of
such an obligation. This portion of the motion is **DENIED**.

---

[3] Those original drawings are currently in the custody of the Court as part of the Court record.

MINUTES FORM 90                                    Initials of Deputy Clerk __cls_____
CIVIL -- GEN                          4

EXHIBIT __I__

PAGE _52_

The MGA parties seek judgment as a matter of law as to MGA HK's liability for unfair competition. The Court's summary judgment Order held that Mattel had raised a triable issue of fact as to whether the MGA parties tortiously interfered with Bryant and Mattel's contractual relationship and whether they engaged in commercial bribery. However, the tortious interference claim was not asserted against MGA HK, and there was no evidence presented at trial to support a statutory unfair competition claim against MGA HK for commercial bribery. See Court's June 4, 2009, Final Pretrial Conference Order. Accordingly, the Court **GRANTS** the motion on this issue, and the Court **ORDERS** that the following **AMENDMENTS** be made to its Order Granting Mattel's Motion for Finding Liability and Injunctive Relief Pursuant to Cal. Bus. & Profs. Code § 17200, filed December 3, 2008 (docket #4441):

- At page 1, line 6: Delete "GRANTS" and substitute "GRANTS IN PART AND DENIES IN PART"

- At page 3, line 7: Delete "the MGA Defendants" and substitute "MGA and Larian"

The MGA parties seek judgment as a matter of law that Mattel is not entitled to base any claims on ownership to the name "Bratz." To the extent that the MGA parties' argument is based on the construction of the Inventions Agreement, it was not raised in the Rule 50(a) motion for judgment as a matter of law and, therefore, may not be raised for the first time in a Rule 50(b) motion for judgment as a matter of law.[4] The Court finds wavier.

In any event, the argument fails on its merits. The name "Bratz," which the jury found Carter Bryant conceived of during the period of his employment with Mattel, is within the scope of the assignment clause of the Inventions Agreement. California law allows the assignment of an idea; thus, the name "Bratz" is, by virtue of the Inventions Agreement, the Court's summary judgment order construing that Agreement, and the jury's finding regarding the origin of the name, Mattel's property (even if it was not a proper trademark at the time it was conveyed and even though it is not subject to being copyrighted). This portion of the motion is **DENIED**.

The MGA parties seek judgment as a matter of law that copyright infringement is limited to the first-generation Bratz dolls. Essentially, the MGA parties seek a ruling that no reasonable jury could have found that any Bratz dolls, other than the first-generation

---

[4] The Court rejects the MGA parties' contention that this issue was raised in the Rule 50(a) motion and that the Rule 50(b) motion merely expands upon the argument. The MGA parties' point in the Rule 50(a) motion was that there was a lack of intellectual property protection for the name Bratz (because it was not a valid trademark because it had not ever been used in commerce and because it could not be copyrighted); conversely, their point here is that the name "Bratz" is not within the scope of the Inventions Agreement.

Initials of Deputy Clerk __cls_____

EXHIBIT  I
PAGE  53

Bratz dolls, infringe Mattel's copyrights. The Court has already found that this is not the case; specifically, the Court has found, for the reasons set forth in its December 3, 2008, Order, that hundreds of Bratz female fashion dolls infringe Mattel's copyrights. This portion of the motion is **DENIED**.

The MGA parties seek judgment as a matter of law that Bryant was not an author of the Bratz sculpt. The Court previously observed, at trial, that this is an affirmative defense that was not asserted and was therefore waived. Moreover, this issue was not raised in the pretrial conference order; thus, it was waived for that reason as well. Furthermore, it was not raised in the MGA parties' Rule 50(a) motion, and therefore may not be raised for the first time in the Rule 50(b) motion.

In fact, this issue was not raised until *after* the jury's verdict in Phase 1A, in which the jury determined that Bryant created the sculpt (alone, or jointly with others). Recognizing this fact as a potential impediment to the relief they now seek, the MGA parties contend that in Phase 1A, the jury was not instructed on how to determine – and thus its express factual finding does not address – authorship as a matter of copyright law. Nevertheless, the Phase 1A verdict established the jury's finding that the sculpt was "'conceived or reduced to practice' – that is, created – by Carter Bryant, alone or jointly with others," during his employment with Mattel. Phase 1A Verdict Form at 5. This finding, when viewed in conjunction with the Court's summary judgment order, was sufficient to place the sculpt within the assignment clause of the Inventions Agreement which, in turn, conferred the rights to the sculpt to Mattel.

In any event, this argument also fails on its merits. A reasonable jury could have readily found that Carter Bryant was the author of the sculpt based on Paula Garcia's testimony that Margaret Leahy was tasked with creating the three-dimensional object equivalent of Carter Bryant's two-dimensional drawings. Trial Tr. at 800. When asked if she looked back to Carter Bryant's two-dimensional drawings during her review of the sculpt, Ms. Garcia stated that it was possible (although she had no specific recollection of doing so), "because the exercise was to create a 3D version of those 2D drawings, it was very likely that those drawings were there to then compare its 3D version with those relationships." Id.; see also Trial Tr. at 797 (Garcia's testimony as to the purpose of the sculpt, which was to determine how the "2D image" would "translate" to "3D"). This final portion of the motion is therefore **DENIED**.

As set forth herein, the Court **GRANTS** that portion of the MGA parties' Motion for Judgment as a matter of law that challenges the Court's finding of a violation of §§ 17200 et seq. on the part of MGA HK. The Court **DENIES** the remainder of the MGA parties' Motion for Judgment as a matter of law.

Initials of Deputy Clerk __cls_____

EXHIBIT ___I___

PAGE ___54___

## III. MGA'S MOTION FOR REMITTITUR
## (DOCKET #4495, #4523)

On its face, the jury's Phase 1 verdict awards Mattel $100,031,500.00. The jury verdict was a round $100 million (allocated among a total of four claims and three defendants) except for $31,500, which was awarded to Mattel as damages for conversion of the original Bratz drawings. The MGA parties seek remittitur of this amount, arguing that, at most, Mattel should be awarded $20 million.

The Ninth Circuit enunciated its remittitur standard in 1982, when it noted that other circuits "consistently approve remitting the judgment to the maximum amount sustainable by the proof," before stating, "[w]e adopt this standard." D & S Redi-Mix v. Sierra Redi-Mix and Contracting Co., 692 F.2d 1245, 1249 (9th Cir. 1982). One of the cases cited with approval by the Redi-Mix court stated the standard in greater detail:

> The defendants' final contention is that the verdict
> was excessive, justifying a new trial or, in the alternative, a
> remittitur.  Our review of this issue is limited to an
> examination of the plaintiff's injuries to determine whether
> the damage award is beyond the maximum possible award
> supported by the evidence in the record.

Keyes v. Lauga, 635 F.2d 330, 336 (5th Cir. 1981)

Since 1981, the Ninth Circuit has elaborated on this standard:

> Even a total inadequacy of proof on isolated elements
> of damages claims submitted to a jury will not undermine a
> resulting aggregated verdict which is nevertheless
> reasonable in light of the totality of the evidence.  If we find
> that a jury's damages award exceeds the maximum amount
> sustainable by the probative evidence, we will not hesitate to
> order a remission of the excess by the plaintiff or, in the
> alternative, a new trial. . . .  But where, as here, the jury's
> verdicts find substantial support in the record and lie within
> the range sustainable by the proof, we will not "play Monday
> morning quarterback" and supplant the jury's evaluation of
> the complex and conflicting evidence with our own.

Los Angeles Memorial Coliseum Com'n v. National Football League, 791 F.2d 1356,

EXHIBIT __I__
PAGE __55__

1366 (9th Cir. 1986) (internal citations omitted).[5]  Cf. In re First Alliance Mortg. Co., 471
F.3d 977, 1001 (9th Cir. 2006) (using the above-quoted standard, but noting that before
the Court was "the rare case in which it is sufficiently certain that the jury award was not
based on proper consideration of the evidence" but was instead "based on improperly
considered evidence, directly traceable to an error that was cured too little, too late").
Generally, courts are cautioned to "undertake only limited review of jury damages
awards, in order to avoid encroaching upon the jury's proper function under the
Constitution." Memorial Coliseum at 1365. The standard is exceptionally deferential to
the jury's findings. If the damages award is supported by the evidence, it must be
upheld even if the Court would have awarded a different amount of damages.

It is through this very narrowly focused lens that the Court must consider the
present motion.

The MGA parties argue that Mattel had a singular theory of recovery –
disgorgement of profits – and the amounts set forth by the jury as to each of the three
state-law claims are duplicative. This is not a completely unappealing argument. For
each of three state law claims – intentional interference with contractual relations, aiding
and abetting breach of fiduciary duty, and aiding and abetting the duty of loyalty – the
jury indicated that Mattel should be awarded $20 million as to MGAE and $10 million as
to Isaac Larian. Totaled, this award is $90 million.  Viewed pursuant to the MGA
parties' theory, it would be the same $30 million awarded three times. Relatedly, the
MGA parties contend that the copyright damages of $10 million (allocated among three
defendants) are also duplicative of this $30 million, even though the number is not
exactly the same.[6]

However, these explanations as to what the jury intended are purely speculative.
The remittitur standard is exceptionally deferential to the jury's verdict, and the Court
cannot disturb it based on speculation. The fact is the evidence not only supported a
verdict of $100 million, this Court could have, under the remittitur standard, easily
sustained a verdict many times this amount.  The jury may have meant to award only a
total of $30 million, or they may have simply decided they could all agree on a round
figure of $100 million and then set about allocating that $100 million among multiple
claims and defendants.

---

[5] A number of district court cases in the Ninth Circuit have recently applied this standard.  Paul v.
Asbury Automotive Group, LLC 2009 WL 188592, at *2 (D. Ore. 2009); Hall v. North American Indus.
Services, Inc., 2008 WL 789895, at *2 (E.D. Cal. 2008); Lucky Break Wishbone Corp. v. Sears, Roebuck
and Co., 2008 WL 4742206, at *4 (W.D. Wash. 2008); Eldorado Stone, LLC v. Renaissance Stone, Inc.,
2007 WL 2403572, at *1 (S.D. Cal. 2007).

[6] The MGA parties' explanation for why these damages are duplicative even though they are not
exactly the same is that the jury reduced the $30 million for apportionment based on the expert testimony
of Professor Joachimsthaler, who testified that MGA's branding efforts could be responsible for
approximately 50% to 70% of Bratz-related profits.

Initials of Deputy Clerk __cls_____

EXHIBIT ___I___

PAGE ___56___

In any event, the Court must return to the standard by which its conclusion is governed. Here, a district court **_must_** leave undisturbed jury's verdict that is "reasonable in light of the totality of the evidence," where the verdict does not "exceed[] the maximum amount sustainable by the probative evidence," and where the verdict "lie[s] within the range sustainable by the proof." The jury's verdict of $100 million is well within the range of possible awards based on the evidence of record, and therefore the Court must leave it undisturbed.

What the MGA parties are careful not to encroach upon, but what they in essence really seek, is an inquiry into what the jury **_meant_** by its verdict. As the Court and the parties to this case are aware, this inquiry is squarely within that which is prohibited by Fed. R. Evid. 606(b):

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith.

Id. Of course, if that inquiry were permissible in this instance, the results seem clear. Counsel for the MGA parties has not thus far denied that at least one juror, possibly more, stated to them that the jury in fact intended a $100 million award of damages.

Separately, the MGA parties contend that, of that $100 million award, the $1 million awarded as defendant MGA HK's liability for copyright infringement is duplicative because of certain consolidated financial reporting that occurs between MGAE and MGA HK. This evidence was not before the jury; the jury made its award based on the evidence before it. In any event, because the evidence presented supports the $1 million award made against MGA HK, under the Memorial Coliseum standard, it must be left undisturbed.

The MGA parties also contend that the damages against Mr. Larian for intentional interference with contractual relations is barred by the statute of limitations. The Court previously held that the intentional interference with contractual relations claim was not subject to the discovery rule, so unless Mattel was able to establish a sufficient period of fraudulent concealment, the interference claim would be time barred. June 2, 2008, Order at 3. In its Phase 1B verdict, the jury answered in the negative a specific interrogatory regarding whether a requisite period of fraudulent concealment could be attributed to Mr. Larian.[7] Therefore, a combination of the Court's June 2, 2008,

---

[7] Conversely, the jury answered the same question regarding MGAE affirmatively.

Initials of Deputy Clerk __cls_____

EXHIBIT _I_

PAGE _57_

Order and the jury's specific findings supports the MGA parties' position that the $10
million awarded as to Isaac Larian for the claim of intentional interference with
contractual relations should be remitted because, in the absence of a fraudulent
concealing finding by the jury, the claim is time barred.

However, at the hearing on this issue, counsel for Mattel suggested to the Court
that its legal conclusion regarding the non-application of the discovery rule to tortious
interference claims was in error and was, in fact, not an argument advanced by the
parties in their summary judgment papers. Only very rarely will a court entertain an oral
motion for reconsideration; rarer still are those occasions when such a motion is
granted. However, such a result is warranted here where the Court's previous legal
conclusion was simply wrong.

In their summary judgment motion, the MGA parties argued that a claim for
"intentional interference with a contract accrues no later than the date of the contract's
breach," implying – at least in the Court's view at the time of its review of the motion –
that the discovery rule did not apply. See MGA SJ Mot. at 21 (docket #2572). The
authority they cite supports the general rule regarding the accrual date of a tortious
interference claim, but the authority does not support the Court's more specific
conclusion that the discovery rule is inapplicable to claims for tortious interference. See
Knoell v. Petrovich, 76 Cal.App.4th 164, 168 (1999) (refusing to apply the discovery rule
to a tortious interference claim but doing so on the basis that the plaintiff made judicial
admissions that were inconsistent with the application of the rule); Trembath v. Digardi,
43 Cal.App.3d 834, 836 (1974) (refusing to hold that the accrual of a claim for tortious
interference claim as to an attorney-client contingency fee contract extended beyond
the date of the breach to the suggested accrual date of the client's actual recovery, but
not discussing the discovery rule); Forcier v. Microsoft Corp., 123 F.Supp.2d 520, 531
(N.D. Cal. 2000) (refusing to apply the discovery rule to a tortious interference claim
because the facts presented in the case did not warrant it); Charles Lowe Co. v. Xomox
Corp., 1999 WL 1293362 at *9 (N.D. Cal. 1999) (defining accrual of a tortious
interference claim in relation to when damages are incurred and when a plaintiff may
seek a legal remedy, but not discussing the discovery rule); Menefee v. Ostawari, 228
Cal.App.3d 239, 245 (1991) (discussing neither tortious interference claims nor the
discovery rule).

At best, these cases represent examples of cases in which courts refuse to apply
the discovery rule because the facts of the case do not warrant it; these cases do not
stand for the broader conclusion reached by the Court in its prior order that the
discovery rule is inapplicable to **all** tortious interference claims, regardless of the factual
circumstances related to the claim's discovery. Cf. AmerUS Life Ins. Co. v. Bank of
America, N.A., 143 Cal.App.4th 631, 639 (2006) (explicitly stating, regarding conversion
claims, that "[t]o the extent our courts have recognized a 'discovery rule' exception to
toll the statute, it has only been when the defendant in a conversion action fraudulently
conceals the relevant facts or where the defendant fails to disclose such facts in

Initials of Deputy Clerk __cls_____

EXHIBIT __I__

PAGE __56__

violation of his or her fiduciary duty to the plaintiff."). Indeed, by examining the facts of
the case and discussing the discovery rule standard before concluding the rule does not
apply in that instance, rather than noting a wholesale rejection of the application of the
discovery rule to tortious interference claims, these courts have implicitly held that the
discovery rule may, in certain undefined instances, permit otherwise time-barred claims
to proceed.[8]

The Court has previously discussed at length why the discovery rule delayed the
accrual of Mattel's claims in this case. That rationale applies with equal force to the
intentional interference with contractual relations claim, which was timely asserted
against Mr. Larian. Thus, it becomes irrelevant that the jury failed to attribute any
fraudulent concealment to Mr. Larian, and the Court **DENIES** the motion on issue of
timeliness of the tortious interference claim.

Finally, the MGA parties correctly contend that the damages awarded for
conversion, totaling $31,500, should be remitted because the Court's declaratory
judgment orders the MGA parties to return the drawings. The Court **GRANTS** the
motion on this issue. However, the drawings shall remain in the Court's custody
pending completion of Phase 2, pending appeal, and/or pending further order of this
Court.

## IV. LIFTING STAY, AS MODIFIED AND SUPPLEMENTED, ON PERMANENT INJUNCTION (#4443)

Subject to the modification set forth in the Court's January 7, 2009, Order (docket
#4657) (relating to distributors and retailers), the Court **VACATES** the stay on
enforcement of its December 3, 2008, Order Granting Mattel, Inc.'s Motion for
Permanent Injunction (docket #4443) ("Permanent Injunction Order"). Specifically, the
Court **VACATES** the stay set forth in its Omnibus Order of December 3, 2008 (docket
#4439) at 16 (which was imposed pending resolution of the three post-trial motions
upon which the Court today rules); however, the Court leaves undisturbed the more
limited stay set forth in the Court's January 7, 2009, Order, which relates to the
purchase of Bratz products by retailers and distributors up to and including December
31, 2009. This limited stay is supplemented as set forth below.

---

[8] Had those courts not wished to make this implication, they could have, but did not, set forth a
qualification that the court was assuming without deciding that the discovery rule could be applied to a
tortious interference claim. Cf. Grisham v. Philip Morris U.S.A., Inc., 40 Cal.4th 623, 634 n.7 (2007) ("We
assume for purposes of this discussion that the delayed discovery rule applies to unfair competition
claims. We note that this point is currently not settled under California law . . . and we do not address it.")
(citations omitted).

Initials of Deputy Clerk __cls_____

EXHIBIT __ I __

PAGE __ 59 __

The Permanent Injunction Order contemplates the Court's appointment of a Special Master to resolve issues and disputes relating to the enforcement of the Permanent Injunction Order. At this point, in the absence of any such disputes, the Court reserves such an appointment.

## V. ACCOUNTING OF BRATZ PROFITS SINCE AUGUST 26, 2008

In light of the Court's interpretation of what has been referred to in this litigation as the Inventions Agreement (especially the Court's April 25, 2008, summary judgment Order), in light of the two jury verdicts returned in this case on July 17, 2008, and on August 26, 2008, in light of the Court's December 3, 2008, Orders regarding the parties' equitable claims and equitable relief (especially the Court's Omnibus Order defining the parameters of the scope of copyright infringement, the Court's Order Granting Mattel's Motion for Permanent Injunction, and the Court's Order Granting Mattel's Motion for Constructive Trust), and in light of this Order rejecting in all material respects the MGA parties' post-trial challenges to the jury's findings, the Court's findings, and the Court's legal and equitable rulings, the Court **ORDERS** the MGA entities to file with the Court, and serve on all parties, no later than thirty days from the entry of this Order, a full accounting of all profits that have resulted from all sales, occurring after August 26, 2008, of all products that fall within any of the Court's December 3, 2008, Orders referenced above.

Within ten days of the filing of that accounting, the interested parties shall file a joint status report setting forth the position of all interested parties on how they wish to proceed on this issue.

## VI. ORDER RE RETRIEVAL OF JOINTLY LODGED LAPTOP COMPUTER

On September 11, 2008, for the Court's convenience and pursuant to its Order, Mattel and the MGA parties jointly lodged a laptop computer from which the Court could easily access the Phase 1A and 1B trial transcripts. Counsel are advised to contact the courtroom deputy clerk to arrange to retrieve the computer from the Court.

## VII. ORDER RE REVIEW OF UNDER SEAL FILINGS

On June 24, 2008, this Court ordered unsealed vast portions of the previously sealed record in these consolidated cases. That Order related only to documents filed on or before May 27, 2008. Certain specific documents, identified by the parties by docket number and found by the Court to have good cause to remain sealed, were not unsealed; similarly, certain Orders of this Court were not unsealed.

Counsel for all the parties are **ORDERED** to engage in a review and meet and confer process to significantly narrow, if not eliminate the under seal nature of the filings

Initials of Deputy Clerk __cls_____

EXHIBIT ___I___

PAGE ___60___

dated May 28, 2008, through the date of the lifting of the stay on Phase 2 discovery, which occurred on February 11, 2009. The parties are **ORDERED** to file with the Court, no later than forty-five days from the entry of this Order, a joint report that identifies by docket number and pinpoint citation all materials the parties agree should remain under seal, as well as the materials any party contends should remain under seal. In all instances, all materials that are contemplated by any party to be maintained by the Court under seal shall specify the reasons therefor.

Counsel should anticipate the narrowest possible information to be maintained under seal. For example, if there is good cause for maintaining under seal only a small portion of an attachment, counsel should anticipate that they may be required to e-file a public redacted version of that document.

## VIII. ORDER RE PHASED, UNDER SEAL RELEASE OF FORENSIC AUDITOR'S REPORT TO COUNSEL AND PARTIES

The Court received *in camera* on April 23, 2009, and has since reviewed, the Forensic Auditor's Report. Concurrently served, under seal, on each parties' counsel of record, is a copy of the Forensic Auditor's preliminary report to the Court. The Court reserves at this time release of the supporting documentation that is attached to the report. This document is, until further Order of the Court, designated as a highly restricted attorney-eyes-only document. It may be reviewed, and its contents shared, only with *counsel of record* in this case and the Court-appointed Temporary Receiver appointed below; it may not be shared with either the parties or attorneys who are not counsel of record, including in-house counsel for the parties.

The parties are advised that they must file any objections on the basis of privilege within forty-eight hours of the entry of this Order. Failure to do so may result in waiver of that privilege. After the expiration of this forty-eight hour period, the Court will make further Orders regarding the scope of the release of the report, including its attachments.

The Court understands that certain requested information has only recently been produced to the Forensic Auditor. For that reason, and because he has represented to the Court that certain analyses are ongoing, the Court continues the appointment of the Forensic Auditor until further Order of this Court.

## IX. ORDER GRANTING IN PART AND DENYING IN PART MOTION TO INTERVENE (DOCKET #4761)

Non-party Omni 808 Investors, LCC ("Omni 808"), has filed an ex parte application to intervene for the limited purposes of responding to Mattel's ex parte application for a receiver for MGA and to address "all other issues related to Omni's

Initials of Deputy Clerk __cls_____

EXHIBIT _I_
PAGE _61_

status as a secured creditor of MGA." See Ex Parte Application to Intervene (docket #4761) at 1. This motion was heard on February 11, 2009, at which time the Court expressly held the motion in abeyance, along with the Mattel's ex parte application for appointment of a receiver (docket #4540), which is addressed in the following section, to allow the preparation of an audit report by the Court-appointed Forensic Auditor.

For the reasons set forth below, the Court **GRANTS IN PART AND DENIES IN PART** the motion to intervene. The motion is granted to the extent it seeks intervention to address the potential receivership issues; the motion is **HELD IN ABEYANCE** as to the other, broader, but unspecified issues raised by Omni 808.

In the absence of a federal statute conferring a right to intervene, Rule 24(a)(2) provides as follows:

> (a) Intervention of Right. On timely motion, the court must permit anyone to intervene who: . . . (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Id. The Ninth Circuit has identified four separate elements that must be met in order to qualify for intervention under this rule; specifically, a would-be intervenor must show the following:

> (1) [I]t has a significant protectable interest relating to the property or transaction that is the subject of the action; (2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; (3) the application is timely; and (4) the existing parties may not adequately represent the applicant's interest.

United States Alisal Water Corp., 370 F.3d 915, 919 (9th Cir. 2004).

Omni 808 has met both the first and second elements. Where a party has a non-speculative economic interest that is both concrete and related to the underlying subject matter of the action, this element is met. Id. Mattel has correctly argued that, generally, the issues regarding the collectability of a party's debt does not confer an interest on the part of the creditor to justify intervention pursuant to Rule 24(a)(2). See id. (denying intervention where the interest of the would-be intervenor was "several degrees removed from the overriding public health and environmental policies that are the backbone of this litigation."). However, this particular request for intervention is not one that falls into this general category. Rather, it is an intervention for a very limited

MINUTES FORM 90
CIVIL -- GEN                                    14                    Initials of Deputy Clerk __cls_____

EXHIBIT $\mathcal{I}$
PAGE 62

purpose – to address the issue of the appointment of a receiver – which is directly related to debt collectability. By virtue of this case, Mattel claims a significant interest in the assets of the MGA parties, including both money damages and rights to intellectual property previously held by the MGA parties. Omni 808 now claims a superior interest by virtue of a transaction that occurred after the jury returned its verdict as to ownership of certain Bratz property. This interest is directly related to this litigation.

The second element is met because the relief sought by Mattel is to take control of the Bratz assets, as that term is at length defined by its proposed order submitted with its motion for appointment of a receiver. According to the testimony the Court heard at trial, the Bratz assets are, at least historically, the most significant ones owned by the MGA parties. Resolution of the disputes over the priority to these assets may have to take into account the claimed superiority of Omni 808's interest in MGAE.

The third element is met, at least as to the receivership issue, which is the only ground upon which the Court grants the motion to intervene at this time.

The fourth element has been described as presenting a "minimal burden." Trbovich v. United Mine Workers of America, 404 U.S. 528, 538 n.10 (1972). It is sufficient that the would-be intervenor shows that the representation "may be inadequate." Id. Here, although both the MGA parties and Omni 808 may oppose in general the appointment of a receiver, their positions could differ significantly because MGAE is Omni 808's debtor. Because all that is required is a minimal showing, and because Omni 808 has represented that it is an MGAE secured creditor, the Court finds that the fourth element is met because of the vastly different roles played by MGAE and Omni 808 vis-à-vis Mattel: One is an anticipated judgment debtor and the other is a competing creditor.

Accordingly, the Court **GRANTS IN PART** the motion to intervene. Omni 808 is a party to these consolidated cases for the limited purpose of addressing the receivership issues. As such, it may file briefing in accordance with the schedule set forth below, and it may appear and argue at the hearing set as specified below.

For just cause and in order to preserve the status quo and address the allegations set forth in Mattel's application for the appointment of a receiver and in its opposition to the present motion to intervene, the Court **ORDERS** that Omni 808 and its counsel are restrained and enjoined, absent further order from this Court, from taking any action to assert or enforce any purported rights against the MGA parties, including but not limited to commencing an action against the MGA parties, taking any action to foreclose on any collateral of the MGA parties, committing any act that interferes with the Temporary Receiver's possession, control or use of the assets of the MGA entities, or commencing or participating in any involuntary bankruptcy proceedings against any MGA party pending further hearing on this matter on May 18, 2009, at 1:30 p.m. At that hearing, the Court will consider whether, as counsel for Omni 808 represented to this

MINUTES FORM 90
CIVIL -- GEN                                    15                    Initials of Deputy Clerk __cls_____

EXHIBIT _I_

PAGE _63_

Court, "Omni's purchase of the Senior Bank Credit Facility from Wachovia was a straightforward, arms-length business deal between non-parties to this action," or whether, as counsel for Mattel contends, the purchase was by entities formed for "the improper purpose of attempting to leapfrog over Mattel's claims and shield their assets from creditors and other rights-holders such as Mattel." Counsel for all parties, including the intervenors, are afforded leave to file a final position on this issue no later than May 14, 2009.

## X. ORDER RE APPOINTMENT OF TEMPORARY RECEIVER PENDING HEARING ON APPOINTMENT OF PERMANENT RECEIVER

Mattel has filed an application for the appointment of a receiver or for alternative relief. The Court has considered all papers submitted in support of the application and all opposition and reply papers thereto, the arguments of counsel at the hearing on the application, and the entire record in this action, and finds that just cause exists for the appointment of a Temporary Receiver purusant to L.R. 66.[9] Specifically, the Court finds as follows:

1.     The MGA entities, MGAE and MGA HK, are domiciled in California, have their principal place of business in the Central District of California, and have the majority of their assets located within the Central District of California;

2.     As the Court has previously found, the Bratz Assets (as defined below and in that order) are and have been the property of Mattel and not any of the MGA parties;

3.     Good cause exists to believe that the MGA parties, defined as MGAE, MGA HK, and Isaac Larian, and each of them, have engaged in, are engaging in, or are about to engage in transactions, acts, practices and courses of business that constitute fraudulent transfers of assets and violations of Mattel's ownership and other rights in and to the Bratz Brand and Bratz Assets, as defined below;

4.     Mattel has demonstrated the possibility of dissipation of assets and, from the entire record herein, it appears likely that the MGA parties, agents,

---

[9] The interim report of the Court-appointed Forensic Auditor recommends, for the reasons stated in the report, the appointment of a Receiver. Although the report is fully consistent with the findings made herein, the Court is not relying upon this recommendation, or the information set forth in the Forensic Auditor's report, in making these findings because the parties have not yet had an opportunity to object or otherwise respond to the report. The Court will consider the Forensic Auditor's report, and any objections or responses thereto, in determining whether or not to extend the appointment of the Temporary Receiver after the OSC hearing scheduled for May 18, 2009.

MINUTES FORM 90                                     Initials of Deputy Clerk __cls_____
CIVIL -- GEN                              16

and related entities (as defined below) are engaged in a course of conduct
with related parties designed to frustrate the Court's Orders, Findings and
injunction herein;

5.    Good cause exists to believe that the MGA parties, agents, and related
entities (as defined below) will continue to engage in such transactions,
acts, practices, and courses of conduct and business to the immediate
and irreparable loss and damage to Mattel, and contrary to the interests of
justice, unless restrained and enjoined.

6.    It is appropriate and in the interests of justice that, pursuant to L.R. 66,
that a Temporary Receiver be appointed and that an Order to Show
Cause be issued why a permanent receiver should not be appointed.

Accordingly, the Court **ORDERS** as follows:

1.    Patrick A. Fraioli, Jr., is hereby appointed Temporary Receiver pursuant to
L.R. 66 for the MGA entities to manage, supervise and oversee the assets
of the MGA entities and the Bratz Brand and all Bratz Assets as these
terms are defined herein (the "Temporary Receiver").

2.    The Temporary Receiver is appointed and is hereby directed and ordered
to take full and exclusive control over, and to manage, preserve, and
maximize the profits of, the MGA entities and the Bratz Brand and Bratz
Assets as of the date hereof, including, without limitation, by locating,
taking possession and ownership of, preserving, protecting, managing,
supervising and overseeing the Bratz Assets.

3.    The Temporary Receiver is further directed to investigate the financial
affairs of the MGA entities, and specifically investigate transfers and
transactions made by the MGA entities from and after July 17, 2008.

4.    The Temporary Receiver shall have the power to take any and all action
which may be necessary, appropriate or advisable to effectuate the
purposes of the Temporary Receivership, including, but not limited to, the
power to:

a.    take custody, control and possession of the assets of the MGA
entities and Bratz Assets in the possession, custody or control of
the MGA entities, and/or any person or entity acting at their behest
or direction or pursuant to their control, including, but not limited to,
Isaac Larian and any successor-in-interest, subsidiary, corporate
affiliate, agent, servant, attorney, accountant, officer, director,
employee or other confederate (collectively, "the MGA parties,

MINUTES FORM 90
CIVIL -- GEN

17

Initials of Deputy Clerk __ cls_____

EXHIBIT __I__

PAGE __65__

agents, and related entities") whether or not claimed to be encumbered by any security interest;

b.  preserve, hold and manage the assets of the MGA entities and the Bratz Assets and perform all acts necessary or advisable to preserve and/or enhance the value of these assets;

c.  exploit, license, distribute and sell the assets of the MGA entities and the Bratz Assets and products for profit, including, without limitation, by selling Bratz-branded dolls and other goods through appropriate channels of trade and distribution;

d.  market, promote and/or advertise the assets of the MGA entities and the Bratz Assets and/or Bratz-branded products;

e.  hire and employ individuals and entities as necessary or advisable to carry out the Temporary Receiver's mandate under this order;

f.  disburse funds as needed to satisfy and pay the reasonable and ordinary expenses incurred by the receivership, provided, however, that the Temporary Receiver shall maintain and shall not distribute, disburse or pay to anyone any receivership funds except as needed to satisfy the reasonable and ordinary expenses incurred by the receivership;

g.  open bank accounts in the name of the Temporary Receiver and transfer funds to, from and/or between those accounts;

h.  collect and maintain, and take all necessary or advisable actions to collect and maintain, monies owed by virtue of the sale, licensing, or other exploitation of the Bratz Assets;

i.  sell, compromise or assign debts for purposes of collection upon such terms and conditions as the Temporary Receiver deems necessary or advisable to carry out the Temporary Receiver's mandate under this order;

j.  enter into such agreements or contracts, and seek and enter into modifications to or amendments of such agreements and contracts, as the Temporary Receiver deems necessary or advisable to carry out the Temporary Receiver's mandate under this order;

k.  prepare, execute, acknowledge and deliver any and all deeds, assignments or other instruments necessary or advisable to carry

MINUTES FORM 90
CIVIL -- GEN

18

Initials of Deputy Clerk __cls_____

EXHIBIT    I
PAGE   66

out the Temporary Receiver's mandate under this Order;

l.  protect and preserve all Bratz-related intellectual property,
including, without limitation, by commencing, prosecuting, and/or
renewing intellectual property registrations and/or filings of any type
and in any jurisdiction or forum;

m.  retain and/or engage the services of advisors and/or professionals,
including, without limitation, accountants, attorneys, consultants
and experts to assist the Temporary Receiver in carrying out the
Temporary Receiver's mandate under this Order.  The Temporary
Receiver, without further order of this Court, is authorized to employ
Ervin, Cohen & Jessup LLP, Dr. Lynne Phillips and the firm of
Reinventures, Inc., to assist the Temporary Receiver in carrying out
the Temporary Receiver's mandate under this Order;

n.  retain and/or engage the services of vendors, suppliers, distributors
and other persons and/or entities to assist the Temporary Receiver
in carrying out the Temporary Receiver's mandate under this Order;

o.  record this Order in any jurisdiction;

p.  the Temporary Receiver may for any lawful purpose use any
federal or state taxpayer identification number previously used by
the MGA parties, agents, and related entities;

q.  take all actions the Temporary Receiver deems necessary or
advisable to marshal, collect, preserve or protect the Bratz Assets,
including, without limitation, the institution of inquiries and
investigations into the conduct of any of the MGA parties, agents,
and related entities to uncover concealed Bratz Assets and/or
fraudulent conveyances and/or attempts to dispose of Bratz Assets;

r.  institute, defend, intervene in and/or substitute as, and/or otherwise
become a party to any or all actions in local, state, federal or
foreign courts, including, without limitation, bankruptcy court, and
any other proceedings before any governmental tribunal or
arbitration panels, and take any and all necessary or advisable
steps and measures in such actions as necessary or advisable to
carry out the Temporary Receiver's mandate under this Order;
provided, however, notwithstanding the foregoing, the MGA parties
have all the requisite authority to assert all rights in this ongoing
litigation between Mattel and the MGA parties in this action and the
Temporary Receiver shall not assert a position in such litigation,

Initials of Deputy Clerk __cls_____

except insofar as the Court orders or invites the Temporary
Receiver to do so; and,

s.     perform such further and additional acts as the Temporary Receiver
deems necessary or advisable to preserve the Bratz Assets,
maximizing the profits derived therefrom, ensure the successful
manufacture, delivery and marketing of Bratz-branded dolls and
products for the spring and fall 2009 seasons and otherwise carry
out the Temporary Receiver's mandate under this Order, including,
without limitation, any acts which could be lawfully carried out by a
corporation in the state of California.

5.     The Temporary Receiver, the Temporary Receiver's employees
and agents as well as any and all of the professionals employed by
the Temporary Receiver, are entitled to compensation for services
rendered at their normal hourly rates and reimbursement for all
expenses incurred by them on behalf of the receivership estate.
The Temporary Receiver shall serve written notice upon counsel of
record for the parties of the amount to be paid to each payee, with
an itemization of the services rendered or expenses incurred.
Upon service of said notice, the itemized fees and expenses may
be paid by the Temporary Receiver on an interim basis. In the
event that extraordinary services are performed by the Temporary
Receiver, he shall be entitled to extraordinary compensation
according to proof and approval of this Court. All interim fees paid
shall be subject to final review and approval by this Court. This
Court retains jurisdiction to award a greater or lesser amount as the
full, fair and final value of such services. In the event there are
insufficient funds in the receivership estate to fully compensate the
Temporary Receiver and his professionals, the Court retains
jurisdiction to allocate the costs and expenses of this receivership
against Mattel, as the party who sought the appointment of the
Temporary Receiver, and/or Isaac Larian, as the principal owner
and beneficiary of the MGA entities.

6.     Upon service of a copy of this Order, all banks, broker-dealers,
savings and loans, escrow agents, title companies, commodity
trading companies, or other financial institutions shall cooperate
with all reasonable requests of the Temporary Receiver regarding
implementation of this Order, including transferring funds at his
direction and producing records related to the assets of the MGA
entities.

7.     The Bratz Assets include all tangible or intangible assets, including,

MINUTES FORM 90                                    Initials of Deputy Clerk __cls_____
CIVIL -- GEN                          20

EXHIBIT _I_
PAGE _68_

without limitation, all intellectual property necessary or materially useful for the design, manufacture, marketing, distribution and sale of any Bratz doll or other Bratz-branded product in the possession, custody or control (whether or not claimed to be encumbered by any security interest) of any of the MGA parties, agents, and related entities. The Bratz Assets include, without limitation:

a.    All Bratz-related intellectual property rights, including, without limitation, copyrights (whether or not registered); copyright registrations; moral rights; design rights; patents (issued and pending); service marks; trademarks; trade dress; designs; slogans; characters; product packaging in any medium; product names; product illustrations; product designs; product concepts; conceptual drawings; engineering drawings; engineering specifications; processes; methods; trade secrets; know-how; product ideas; prototypes; line extensions; domain names; marketing and advertising materials; commercials; style guides; theme songs; soundtracks; scripts; screenplays; computer programming; digital and internet rights; video games; theatrical, television, video and DVD rights and masters; and rights in future technologies.

b.    All Bratz-related tooling for all past, current and future lines, including without limitation tools, tooling, in process tools, molds, sculptures, models, dies, and mock-ups, as well as other Bratz-related tangible items.

c.    All Bratz-related marketing and sales assets for all past, current and future lines, including, without limitation, consumer lists, marketing plans, account plans, focus group studies, marketing databases, and other consumer and marketing research.

d.    All Bratz-related records, including, without limitation, contracts, manufacturing records, inventory records and data, sales records and data, product testing data and records, vendor list and records, customer communications, and invoices and purchase orders.

e.    All Bratz-related contracts and agreements, including, without limitation, assignments, work-for-hire agreements and licensing agreements.

f.    All other Bratz-related rights, including, without limitation, distribution rights, licensing rights, exploitation rights, accounts receivable, and all choses in action relating to Bratz or the Bratz

EXHIBIT __I__
PAGE __69__

brand.

g.     All Bratz-related items referenced at Paragraph 3 and Paragraph 8 (at lines 15-19) of the Court's Order granting Mattel's Motion for Permanent Injunction (docket #4443).

8.     The Temporary Receiver shall hereby be vested with, and is authorized, directed and empowered to exercise, all of the rights, powers or authorizations of the MGA entities, their officers, directors, general partners or persons who exercise similar powers and perform similar duties, including without limitation the sole authority and power to file or cause to be filed any suit or action in any court or arbitration tribunal other than this court, and filing, or causing to be filed, a petition for relief under the United States Bankruptcy Code, 11 U.S.C. § 101 et seq. for the MGA entities, their officers, agents, employees, representatives, directors, successors-in-interest, attorneys in fact and all persons acting in concert or participating with them are hereby divested of, restrained, enjoined, and barred from exercising, any of the rights, powers or authorities vested herein in the Temporary Receiver, including but not limited to filing, or causing to be filed, any suit or action in any court or arbitration tribunal other than this court, and/or filing, or causing to be filed, a petition for relief under the United States Bankruptcy Code, 11 U.S.C. § 101 et seq. for the MGA entities, except as otherwise specified herein or by further order of this Court.

9.     As set forth above, the Court leaves undisturbed the stay set forth in the Court's January 7, 2009, Order. Moreover, the stay is hereby supplemented (a) to enable the Temporary Receiver to take the actions specified herein, and (b) to permit retailers who receive Bratz products pursuant to the authority of the Temporary Receiver, and who pay the Temporary Receiver monies due and owing for such Bratz products, to not remove such products from the shelves until January 10, 2010, at which time the mandatory provisions of Paragraphs 4, 6 and 7 of the Court's December 3, 2008, Order granting Mattel's Motion for Permanent Injunction (docket #4443) shall become effective as to such retailers. The supplemental stay provisions shall not eliminate, alter or amend the obligations of any retailer, distributor, seller or other person or entity, including, without limitation, the MGA parties, who do not meet the foregoing requirements, to earlier recall or earlier obtain the recall of Bratz products as required by the mandatory provisions of Paragraphs 4, 6 and 7 the Court's Order granting Mattel's Motion for Permanent Injunction (docket #4443). The supplemental stay provisions shall not apply to permit, enable or authorize enjoined conduct by any enjoined party, except as to actions taken by the Temporary Receiver and/or any

MINUTES FORM 90                                              Initials of Deputy Clerk __cls_____
CIVIL -- GEN                                    22

EXHIBIT __I__

PAGE __70__

authorized agents working for and under the auspices of the Temporary Receiver pursuant to the terms of this Order.

10.    Additional Provisions.

a.    In the event that any person or entity or fails to refuses to deliver or transfer any of the assets of the MGA entities or Bratz Assets or otherwise fails to comply with any provision of this Order, the Temporary Receiver is instructed to file ex parte an affidavit setting forth the failures. Upon the filing of such affidavit, the Court may authorize repossession or sequestration or other equitable relief as requested by Temporary Receiver.

b.    The Temporary Receiver shall maintain and shall not disburse, distribute or pay anyone any receivership funds or proceeds earned from exploitation of Bratz-branded dolls and products except as needed to satisfy the reasonable and ordinary cost and expenses incurred by the receivership.

c.    The Temporary Receiver shall have the status of officers and agents of this Court, and as such shall be vested with the same immunities as vested with this Court. Neither the Temporary Receiver nor any person or entity acting at the direction of the Court or pursuant to agreements with the Temporary Receiver (whether employees, vendors, contractors or otherwise) may be held liable to the MGA parties whether for claims of alleged copyright infringement, trademark infringement, or other alleged causes of action for any acts taken in good faith in compliance with this Order.

d.    During the course of the receivership, and pending further order of the Court, the MGA parties shall not have any right, title, or interest and/or power as to the Bratz Assets or Bratz brand. All ownership of all Bratz Assets, Bratz Brands and Bratz-related copyrights and other intellectual property are hereby vested in the Temporary Receiver and the MGA parties are divested of all such ownership. Nothing herein shall alter or affect the right of Mattel to take any and all actions relating to the Bratz Assets or the Bratz brand which it otherwise lawfully could take, including, without limitation, the institution, maintenance and prosecution of legal proceedings anywhere in the world or other proceedings before any governmental or tribunal or arbitration panel.

e.    Effective as of the date of this Order, the MGA parties, agents, and

MINUTES FORM 90
CIVIL -- GEN

23

Initials of Deputy Clerk __cls_____

Case 2:04-cv-09049-DOC-RNB   Document 6442-3   Filed 08/26/09   Page 66 of 80   Page ID #:214793.

Case 2:04-cv-09049-SGL-RNB     Document 5273     Filed 04/27/2009     Page 24 of 25

related entities shall turn over to the Temporary Receiver any and all revenues they receive or obtain relating to the MGA entities and Bratz in any manner and for any reason, including, without limitation, in connection with any sale, distribution·and/or licensing thereof. These revenues shall not be released pending further order of the Court. The MGA entities shall account for all such revenues and interest paid thereon, and shall present to the Court, the Temporary Receiver and Mattel reports reflecting such accounting every ten days, commencing ten days from the date of this Order.

f.    To the extent that the proceeds are insufficient at any point to fund the cost of the receivership, the MGA entities are ordered to provide the Temporary Receiver with such additional funds as the Temporary Receiver requires to accomplish the purposes of the receivership.

g.    The Court shall retain jurisdiction over the receivership for the duration of its existence.

h.    No bond shall be required in connection with the appointment of the Temporary Receiver. Except for acts of gross negligence, the Temporary Receiver, and his agents and employees shall not be liable for loss or damage incurred by the MGA entities, its officers, agents, servants, employees, attorneys or others by virtue of any act performed or omitted to be performed by the Temporary Receiver in connection with the discharge of his duties and responsibilities.

i.    It is further ordered that no officer, director, agent, servant, employee or attorney of the MGA entities shall take any action in the name of or on behalf of the MGA entities before any court of any jurisdiction without the prior written consent of the Temporary Receiver or Order of the Court. However, notwithstanding the foregoing, nothing herein shall be deemed to deny the MGA parties the right to appeal from the Order Granting Preliminary Injunction or this Order. Moreover, this provision is subject to the right of the MGA parties with respect to the current litigation, as set forth in ¶ 4.r.

j.    In light of the appointment of a Temporary Receiver, the MGA entities, their officers, directors, agents, employees and attorneys are hereby prohibited from filing, or causing to be filed, a petition for relief under the United States Bankruptcy Code, 11 U.S.C. §§ 101

MINUTES FORM 90
CIVIL -- GEN

Initials of Deputy Clerk __cls_____

EXHIBIT __I__
PAGE __72__

et seq. for the MGA entities without prior permission of this Court.

k.    The MGA entities are ordered to cooperate fully with the Temporary Receiver, including without limitation providing all  financial and other documentation requested by the Temporary Receiver.

l.    The Temporary Receiver is authorized to contact the Court-appointed Forensic Auditor, Ronald Durkin, and may utilize the findings and conclusions reached by Mr. Durkin as the Temporary Receiver deems appropriate.

m.    The Temporary Receiver is hereby ordered and directed to prepare and provide to this court a report setting forth preliminary conclusions, findings and recommendations in accordance with the schedule set forth below.

11.    Order to Show Cause.  All interested parties, and any interested creditor, shall appear before this Court on Monday, May 18, 2009, at 2:00 p.m. to show cause, if there be any, why a permanent receiver should not be appointed in the same scope and manner as the Court's appointment of the Temporary Receiver.  Any declarations, affidavits, points and authorities or other submissions in support of, or in opposition to, the appointment of a Permanent Receiver shall be filed with the Court and served on all parties no later than May 14, 2009.

12.    Pursuant to L.R. 66-4, Mattel is **ORDERED** to cause this Order to be served on all known creditors of the MGA entities within three days of the date of this Order.

13.    The Temporary Receiver shall file a report and recommendation concerning all actions taken as well as recommendations for further action no later than Monday, May 11, 2009.  This report shall be filed with the Court and served on all parties.

**IT IS SO ORDERED THIS 27th DAY OF APRIL, 2009**

**STEPHEN G. LARSON**
**UNITED STATES DISTRICT JUDGE**



I hereby attest and certify on 5/11/09
that the foregoing document is a full, true
and correct copy of the original on file in
my office, and in my legal custody.

CLERK U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

DEPUTY CLERK

1208

EXHIBIT I

PAGE 74

AO 390

## APOSTILLE

(Convention de La Haye du 5 octobre 1961)

1. Country: United States of America
   This public document

2. has been
   signed by      John Lopez

3. acting in
   the capacity of      Deputy Clerk

4. bears the seal/stamp      U. S. District Court - Central District of California

### CERTIFIED

5. at      Los Angeles, California          6.      the      U. S. District Court - CDC

7. by      Eduardo Ramírez

8. No.      DC051109-03

9. Seal/Stamp

1203

AO-390 (05/81)

Apostilles certify only the authenticity of the signature of the official who signed the document, the capacity in which that official acted, and where appropriate, the identity of the seal or stamp which the document bears. An apostille does not imply that the contents of the document are correct, nor that they have the approval of the United States Courts.

CLERK, U.S. DISTRICT COURT

AO-393 (05/81)

EXHIBIT I
PAGE 75

Case 2:04-cv-09049-SGL-RNB     Document 4442     Filed 12/03/2008     Page 1 of 5

O

1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10                        EASTERN DIVISION

11  CARTER BRYANT, an individual,        CASE NO. CV 04-09049 SGL (RNBx)
                                         Consolidated with
12          Plaintiff,                   Case Nos. CV 04-09059 & CV 05-2727

13      vs.

14  MATTEL, INC., a Delaware             ORDER GRANTING DECLARATORY
    corporation,                         JUDGMENT
15
            Defendant.
16
17  AND CONSOLIDATED ACTIONS
18
19
20
21
22
23
24
25
26
27
28

07209/2641997.3

[PROPOSED] ORDER

PAGE __ 76

1

## ORDER

2

3    1.    The Court hereby DECLARES that Mattel owns all right, title and

4  interest, including any and all copyright rights, in and to the Bratz-related works,

5  ideas, and concepts that Carter Bryant conceived or created while employed by

6  Mattel, as found by the jury in this case, including the idea for the name "Bratz" and

7  the idea for the "Bratz" characters, which are protectible property interests as a

8  matter of California state law, and the following works (identified by Trial Exhibit

9  (TX) numbers):

| |
|---|
| TX 5-52, 62-1, 624, 5-74, 62-11, 10537, 15180, 5-75, 62-12, 10538, 15181, 5-111, 708, 5-112, 62-13, 5-113, 5-114, 62-14, 62-15, 1152-1, 1152-2, 10613, 1328, 10033-3, 10033-4 |
| TX 5-88, 35-1, 35-3, 5-101, 1327, 10153-3, 10153-4 |
| TX 5-35, 757 |
| TX 5-36, 701, 702 |
| TX 5-37, 703 |
| TX 5-38, 762 |
| TX 5-43, 709 |
| TX 5-46, 710 |
| TX 5-49, 704 |
| TX 5-50, 705 |
| TX 5-53, 1152-5, 1152-6, 10534, 15175 |
| TX 5-54, 62-2, 620, 774, 775 |
| TX 5-55, 62-3, 785, 1152-9 |
| TX 5-56, 764, 15176 |
| TX 5-57, 776, 777 |
| TX 5-58, 765, 15177 |
| TX 5-59, 739, 740 |
| TX 5-60, 761 |
| TX 5-61, 62-4, 782, 796-1, 1748 |

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

[PROPOSED] ORDER

EXHIBIT $\mathcal{I}$

PAGE 77

| |
|---|
| TX 5-62, 62-5, 621, 767, 768, 5-71, 62-10, 770, 1752-1 |
| TX 5-63, 758, 759, 760 |
| TX 5-64, 62-6, 795, 1152-14, 1750 |
| TX 5-65, 1152-7, 1152-8, 11789 |
| TX 5-66, 794, 1152-13 |
| TX 5-67, 62-7, 784, 1152-11, 1152-12, 10535 |
| TX 5-68, 62-8, 781, 786, 790, 1751-4 |
| TX 5-69, 11788, 5-70, 62-9, 623, 783 |
| TX 5-72, 1152-15, 1152-16, 10536, 15179 |
| TX 5-73, 741, 742 |
| TX 5-76, 706 |
| TX 5-77, 707 |
| TX 5-78, 10539, 18501 |
| TX 5-136, 711 |
| TX 10579, 18281 |
| TX 15172 |
| TX 3-1, 779, 780, 1-1, 2-1, 778 |
| TX 3-2, 726, 727, 728, 1-4, 2-5 |
| TX 3-3, 1152-19, 1152-20, 11838, 15182, 1-6, 2-10, 5-104, 10544 |
| TX 3-5, 791, 1-8, 2-2 |
| TX 3-6, 11837, 15184, 1-7, 2-8, 743, 744, 5-107, 1152-17, 1152-18, 10547 |
| TX 3-8, 789, 1-11, 2-9, 734, 5-106, 10546 |
| TX 3-9, 788, 1-10, 2-6, 746, 5-103, 10543 |
| TX 3-10, 735, 736 |
| TX 3-12, 792, 1-3, 2-7, 5-102, 10542 |
| TX 3-13, 793, 1-5, 2-3, 10-3 |
| TX 5-79, 1-9, 2-4, 737, 10545, 5-105 |
| TX 1-2 |
| TX 3-11, |

07209/2641997.3

[PROPOSED] ORDER

EXHIBIT   $\mathcal{I}$

PAGE   78

| | |
|---|---|
| 1 | TX 5-26, 712 |
| 2 | TX 5-27, 713 |
| 3 | TX 5-81, 720 |
| 4 | TX 5-82, 715 |
| 5 | TX 5-83, 723 |
| 6 | TX 3-4, 5-84, 716, 717 |
| 7 | TX 3-7, 5-85, 718, 719, 10-2, 63-1 |
| 8 | TX 5-80, 721, 722, 5-86 |
| 9 | TX 5-87, 5-108, 724, 725 |
| 10 | TX 5-34 |
| 11 | TX 5-89, 35-2, 323-32, 323-33 |
| 12 | TX 1107, 10638 |
| 13 | TX 1108, 10639 |
| 14 | TX 1109, 771 |
| 15 | TX 1110, 773 |
| 16 | TX 5-14, 10515 |
| 17 | TX 5-18, 10518 |
| 18 | TX 5-19, 10519 |
| 19 | TX 5-28, 10526 |
| 20 | TX 5-30 |
| 21 | TX 5-95 |
| 22 | TX 5-96 |
| 23 | TX 5-99 |
| 24 | TX 323-18 |
| 25 | TX 323-19 |
| 26 | TX 323-26 |
| 27 | TX 1136 |
| 28 | The Three Dimensional Item Presented at the Meeting where Mr. Bryant Pitched Bratz to MGA Entertainment, Inc. |

07209/2641997.3

-4-

[PROPOSED] ORDER

1    2.    The Court further hereby DECLARES that MGA Entertainment Inc.

2  ("MGA"), MGA Entertainment (HK) Ltd. ("MGA Hong Kong") and Isaac Larian do

3  not have any right, title or interest in or to the works, ideas and/or concepts listed

4  above. Any purported assignment from Carter Bryant to MGA of the rights to the

5  works, ideas or concepts listed above, including any purported assignment of such

6  rights in the agreement between MGA and Mr. Bryant dated "as of" September 18,

7  2000, was invalid, ineffectual and void ab initio.

8    3.    In addition, the Court hereby ORDERS that all copyright registrations

9  MGA has obtained in and for the Bratz works listed above, including Registration

10 Nos. VA 1-218-487 (Trial Exhibit 505), VA 1-218-488 (Trial Exhibit 507), VA 1-

11 218-489 (Trial Exhibit 513), VA 1-218-490 (Trial Exhibit 509), VA 1-218-491

12 (Trial Exhibit 511), are subject to a constructive trust in favor of Mattel and have

13 been held by MGA for Mattel's benefit. Mattel is the beneficial owner of such

14 registrations.

15    4.    The Court further hereby ORDERS that all Bratz-related works listed

16 in Paragraph 1 above are subject to a constructive trust in favor of Mattel and that

17 Defendants shall deliver the originals of such works to Mattel forthwith.

18         IT IS SO ORDERED.

19

20

21 DATED:  December 3, 2008

22                                        Hon. Stephen G. Larson
                                          United States District Judge
23

24

25

26

27

28

[PROPOSED] ORDER

EXHIBIT
PAGE



I hereby attest and certify on 5/11/09
that the foregoing document is a full, true
and correct copy of the original on file in
my office, and in my legal custody.

CLERK U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

DEPUTY CLERK

1208

EXHIBIT I
PAGE 81

AO 390

## APOSTILLE

(Convention de La Haye du 5 octobre 1961)

1.  Country: United States of America
    This public document

2.  has been
    signed by      John Lopez
    ................................................................................................

3.  acting in
    the capacity of      Deputy Clerk
    ................................................................................................

4.  bears the seal/stamp      U. S. District Court  –  Central District of California
    ................................................................................................

### CERTIFIED

5.  at      Los Angeles, California          6.    the    U. S. District Court - CDC
    ..............................................          ..............................................

7.  by      Eduardo Ramirez
    ..............................................

8.  No.    DC051109-02
    ..............................................

9.  Seal/Stamp

1203

AO-390 (05/81) _____

Apostilles certify only the authenticity of the signature of the official who signed the
document, the capacity in which that official acted, and where appropriate, the identity of the
seal or stamp which the document bears. An apostille does not imply that the contents of the
document are correct, nor that they have the approval of the United States Courts.

CLERK, U.S. DISTRICT COURT

AO-393 (05/81)

EXHIBIT  I
PAGE  82

O

1

2

3

4

5

6

7

8        UNITED STATES DISTRICT COURT

9        CENTRAL DISTRICT OF CALIFORNIA

10        EASTERN DIVISION

11   CARTER BRYANT, an individual,          CASE NO. CV 04-09049 SGL (RNBx)
                                            Consolidated with
12            Plaintiff,                    Case Nos. CV 04-09059 & CV 05-2727

13        vs.

14   MATTEL, INC., a Delaware              **ORDER GRANTING MATTEL'S**
     corporation,                          **MOTION FOR CONSTRUCTIVE**
15                                         **TRUST AND FOR FINDING**
             Defendant.                    **LIABILITY AND INJUNCTIVE**
16                                         **RELIEF PURSUANT TO CAL. BUS. &**
                                           **PROF CODE § 17200**
17   AND CONSOLIDATED ACTIONS

18

19

20

21

22

23

24

25

26

27

28

07209/2649025.3

ORDER GRANTING MATTEL'S MOTION FOR CONSTRUCTIVE TRUST AND PERMANENT INJUNCTION

EXHIBIT _____ I

PAGE _____ 83

1

2    **ORDER**

3          Having considered Mattel, Inc.'s ("Mattel") Motion for Constructive

4    Trust and for a Finding of Liability and Injunctive Relief Pursuant to <u>California</u>

5    <u>Business & Professional Code</u> § 17200, and all other papers and arguments

6    submitted in connection therewith, as well as the evidence admitted at trial and the

7    jury's verdicts in the Phase 1 trial, the Court hereby GRANTS the Motion against

8    MGA Entertainment Inc. ("MGA"), MGA Entertainment (HK) Ltd. ("MGA Hong

9    Kong"), and Isaac Larian ("Larian") (collectively the "MGA Defendants"):

10         1.     A constructive trust in favor of Mattel on all rights to trademarks,

11   service marks and domain names held by MGA or Larian, or any person or entity

12   acting on their behalf or for their benefit, anywhere in the world that include the

13   terms "Bratz" or "Jade," including all such trademark registrations and trademark

14   applications (including, without limitation, United States Trademark Registrations

15   identified by Registration Nos. 3206114, 3327385, 3150045, 3087710, 3055465,

16   3072141, 3127890, 3024713, 2989052, 2911097, 3080450, 2921772, 3071614,

17   2803235, 2848386, 2795675, 2776558, 2848281, 2751890, 2671473, 2787942,

18   2789216 and 2836780 and United States Trademark Applications identified by

19   Serial Nos. 78530196, 78571028, 78706504, 78706502, 78819868, 78857100,

20   78490324, 77443372 and 77575881), and the good will inhering therein, as well as

21   all such domain name registrations, is HEREBY ORDERED and all rights therein

22   are ORDERED transferred to Mattel.

23         2.     MGA and Larian are HEREBY ORDERED to (a) identify all

24   trademark registrations and applications held by them, or any person or entity acting

25   on their behalf or for their benefit, anywhere in the world that include the terms

26   "Bratz" or "Jade," (b) identify all marks that include the terms "Bratz" or "Jade" in

27   which they, or any person or entity acting on their behalf or for their benefit, claim

28   to own trademark rights, whether or not such marks are subject to existing

     trademark registrations or pending trademark applications, (c) identify all domain

EXHIBIT ___*I*___

PAGE ___*84*___

1  names and domain name registrations held by them, or any person or entity acting
2  on their behalf or for their benefit, anywhere in the world that include the terms
3  "Bratz" or "Jade," and (d) execute any and all documents necessary to effect the
4  transfer and/or assignment of such marks and domain names and associated
5  applications and registrations to Mattel.  MGA shall fully comply with (a), (b) and
6  (c) of this paragraph within fourteen (14) calendar days of the date of this Order.

7        3.    The Court HEREBY FINDS that the MGA Defendants violated
8  <u>California Business and Professions Code</u> § 17200 and are liable to Mattel on its
9  twelfth claim for relief for unfair competition.

10        4.    The MGA Defendants, along with their respective officers,
11  directors, principals, agents, representatives, servants, employees, affiliates,
12  successors or assigns, and any person or entity acting on their behalf or in concert or
13  participation with them, are HEREBY PERMANENTLY ENJOINED from (a)
14  using the terms "Bratz" or "Jade," either alone or in combination and whether as a
15  trademark, domain name or otherwise, in connection with the manufacture,
16  promotion, advertising, distribution, offering for sale or sale of any goods or
17  services anywhere in the world and (b) taking any action to preclude Mattel from
18  using the terms "Bratz" or "Jade" in any such manner, including without limitation
19  as a mark in connection with goods and services.

20        **IT IS SO ORDERED.**

21

22  DATED:  December 3, 2008

23                            Hon. Stephen G. Larson
                          United States District Judge

24

25

26

27

28

07209/2649025.3

                              -3-
ORDER GRANTING MATTEL'S MOTION FOR CONSTRUCTIVE TRUST AND PERMANENT INJUNCTION

EXHIBIT I

PAGE 95

I hereby attest and certify on 5/11/09
that the foregoing document is a full, true
and correct copy of the original on file in
my office, and in my legal custody.
CLERK U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

DEPUTY CLERK

1208

EXHIBIT 7
PAGE 86