1  MELINDA HAAG (State Bar No. 132612)
mhaag@orrick.com
2  ANNETTE L. HURST (State Bar No. 148738)
ahurst@orrick.com
3  WARRINGTON S. PARKER III (State Bar No. 148003)
wparker@orrick.com
4  ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
5  405 Howard Street
San Francisco, CA 94105-2669
6  Telephone: +1-415-773-5700
Facsimile: +1-415-773-5759
7
WILLIAM A. MOLINSKI (State Bar No. 145186)
8  wmolinski@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
9  777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017
10  Telephone: +1-213-629-2020
Facsimile: +1-213-612-2499
11
Attorneys for MGA Parties
12

13                    UNITED STATES DISTRICT COURT

14                   CENTRAL DISTRICT OF CALIFORNIA

15                          EASTERN DIVISION

16  CARTER BRYANT, an individual,      Case No. CV 04-9049-SGL (RNBx)

17           Plaintiff,                Consolidated with:
                                       No. CV 04-9059
18        v.                           No. CV 05-2727

19  MATTEL, INC., a Delaware
    corporation,                       **MGA PARTIES' SUPPLEMENTAL**
20                                      **OPPOSITION TO MATTEL, INC.'S**
             Defendant.                **MOTION FOR PRECLUSIVE**
21                                      **RELIEF OR, IN THE**
                                       **ALTERNATIVE, ACCESS TO**
22  AND CONSOLIDATED ACTIONS           **ACTIVE FILES ON THE LARIAN**
                                       **HARD DRIVES**
23

24                                     Date:      August 31, 2009
                                       Time:      10:00 A.M.
25                                     Courtroom: 1
                                       Judge:     Hon. Stephen G. Larson
26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................1

SUPPLEMENTAL STATEMENT OF FACTS ........................................................2

ARGUMENT ........................................................................................................4

       A.    Mattel's Conduct Plainly Demonstrates It Did Not Understand
           The Inspection Order To Authorize Access To Active Files ...............4

       B.    Mattel's Deceitful Conduct Is Another Reason For Denial Of
           The Motion And For An Order To Show Cause Re Sanctions ............6

CONCLUSION .....................................................................................................8

**INTRODUCTION**

1

2    In seeking preclusive sanctions premised in part upon Rule 37(b) ("Failure to

3 Comply with a Court Order"), Mattel's Motion for Preclusive Relief necessarily

4 rests upon the proposition that the Court's February 27, 2008 Order authorized

5 Mattel to have access to active files in its review of the Larian hard drives.  But

6 Mattel did not insist upon review of active files in the wake of that Order, and the

7 Discovery Master expressly found that the Order did not mean what Mattel said it

8 meant, and that Mattel knew it.  Searcy Decl. Ex. 12 (Order No. 34) at 10 & n. 6.

9 Recognizing that it had a serious problem in explaining its own prior conduct in

10 light of its new interpretation of the Court's Order, Mattel took a remarkable tack:

11 it argued that counsel for MGAE and Mr. Larian had unwittingly foisted upon it the

12 April 2008 protocol (on its own letterhead).  Mot. at 5:2-5.  While this proposition

13 was certainly an unusual one, new counsel for MGAE and Mr. Larian addressed it

14 in a straightforward manner.  Opp. at 10:3-11:12.

15    What Mattel completely failed to disclose to the Court in its Motion or Reply,

16 however, was that the April 22, 2008 letter protocol was a draft that was the product

17 of three weeks of prior negotiation between the parties, that it was rejected by

18 MGAE and Mr. Larian, heavily negotiated thereafter for a period of another three

19 weeks, and never actually governed the review of the hard drives.  Instead, there

20 was a May 12, 2008 stipulation that resulted from the parties' negotiations which

21 prohibited review of active files even more strongly than Mattel's initial April

22 proposal.  New counsel for MGAE and Mr. Larian did not discover the final

23 protocol until after the Opposition was submitted.  The failure of new counsel to

24 learn all of the details of prior meet and confer in less than a month can and should

25 be excused.  But Mattel's failure to bring the full record to the Court is

26 unconscionable.

27    Mattel has had the same counsel throughout this litigation—and the same

28 person who conducted six weeks of negotiations leading to the May 12 protocol,

1   Jon Corey, appears in the caption on the pleadings on this Motion.  Mattel's

2   assertion that it was hoodwinked into agreeing to the April 2008 protocol is

3   downright false in light of the full record of negotiations and the final stipulated

4   May 12, 2008 protocol by Mr. Corey.  Mattel's conduct in selectively disclosing

5   only some of the pertinent facts in its Motion was deceitful and should be

6   condemned by the Court in the strongest possible terms.

7                    **SUPPLEMENTAL STATEMENT OF FACTS**

8           On April 22, 2008, Mattel's counsel sent a letter setting forth a proposed

9   protocol for review of the Larian hard drives which was intended to govern the

10  inspection pursuant to this Court's February 27, 2008 Inspection Order.  Searcy

11  Decl. Ex. 8.  The proposed April 22 protocol prohibited review of active files.  *Id*.

12  at 159, ¶ 6.  Because that letter, which came from Mattel, expressly prohibited

13  review of active files (a proposition inconsistent with its current understanding that

14  the Inspection Order authorized access to active files), Mattel obviously felt the

15  need to address it preemptively in its Motion.  Accordingly, Mattel submitted the

16  April 22, 2008 letter and argued that it should not control the Court's understanding

17  of the Inspection Order because "MGA insisted that Mattel's expert 'not access the

18  user generated content of any active file,' a demand which Mattel opposed and

19  acceded to only because the inspection was set to occur shortly before trial."  Mot.

20  at 5:1-9 & nn. 13, 14.  Further, Mattel argued, even if the protocol contains an

21  inconsistent position by Mattel such "inconsistent positions [were not] before the

22  <u>Court</u>" and "Mattel has certainly not gained any advantage by agreeing that it

23  would not access active files in the previous inspection."  Reply at 7:14-8:4.

24          What Mattel failed to disclose, however, was that its April 22 letter was not

25  the first exchange between the parties on the issue nor was it the final governing

26  protocol for the review of the Larian hard drives.  Instead, the parties continued to

27  negotiate, with the assistance of their respective forensic experts, regarding the

28  terms of the review of the Larian hard drives.  *See* Declaration of Lance A.

1    Etcheverry in Support of MGA Parties' Supplemental Opposition ("Etcheverry

2    Decl."). Over the course of nearly six weeks starting in late March or early April,

3    the parties repeatedly met telephonically and exchanged numerous writings and

4    several draft agreements. Etcheverry Decl. ¶¶ 2-8.

5         As a result of these negotiations, on May 12, 2008, Mattel sent a new letter

6    confirming the parties' agreement to the actual protocol that would govern the

7    inspection of Mr. Larian's hard drives. Supplemental Declaration of Annette L.

8    Hurst in Support of Opposition to Motion for Preclusive Relief ("Hurst Supp.

9    Decl.") Ex. G. The agreed-upon May 12, 2008, protocol differed from the April 22,

10   2008 in several ways, including that Mattel's consultant could inspect only

11   "recoverable deleted documents or files" using specified "search terms and

12   parameters" for evidence of improper deletion. *Id*. Ex. G ¶ 5(b). Tellingly for

13   purposes of this Motion, Mattel's written confirmation of the May 12 agreement

14   condemned even more strongly the notion of any review of active files, expressly

15   providing that MGA's expert could take all steps necessary to prevent such conduct

16   by Mattel's expert:

17              Nothing herein shall limit in any way the ability of Stroz
                to take steps necessary to prevent any unauthorized
18              inspection by 42, including, among other things, any
                attempt by 42 to gain access to the user-generated content
19              on the Hard Drive Images other than as permitted herein.

20   *Id*. Ex. G ¶ 4. The May 12 protocol repeatedly confirms that Mattel was not to have

21   access to active files: "42 agrees not to access the content of any user-created data,

22   except with respect to data residing in unallocated space … ." *Id*. Ex. G ¶ 5.

23   Furthermore, Mattel's expert was permitted to inspect only "metadata and file

24   information about *recoverable deleted* documents or files for which there remains

25   an entry in the File System … ." *Id.* ¶ 5(a)(ii) (emphasis added). Only user-

26   generated content in the deleted space was to be the subject of any inspection, and

27   only after prior MGA review. *Id.* ¶¶ 5(a)(ii), 5(c).

28        The parties were also negotiating in parallel at the same time a production of

1    Farhad Larian's USB drive that *did* allow access to active files.  Etcheverry Decl.

2    ¶ 4.

3        New counsel for MGAE and Mr. Larian discovered the May 12, 2008

4    protocol in part as a result of Mattel's refusal to agree that the April 22 letter would

5    govern the supplemental inspection pursuant to Discover Master Order No. 34.

6    Hurst Supp. Decl. Ex. I.  Mystified by that refusal, MGA eventually learned about

7    the final May 12 protocol.  *Id*. ¶ 4.  After discovering the protocol, on August 16,

8    2009, counsel requested that Mattel explain why it was not disclosed to the Court in

9    connection with this Motion.  *Id*. Ex. I.  Mattel responded only to say that it hadn't

10   disclosed the protocol because "it wasn't seeking to modify it," but nonetheless

11   agreed that it did govern the prior inspection.  *Id.*  And, on August 25, Mattel's

12   expert finally signed an undertaking expressly agreeing to abide by the prior May

13   12, 2008 stipulation with respect to the supplemental inspection.  *Id*. Ex. H.  Mattel

14   still has not come to this Court to disclose the May 12 stipulated protocol.

15                                      **ARGUMENT**

16       Mattel's failure to disclose the six weeks of Spring 2008 negotiations and

17   final May 12, 2008 agreed-protocol while claiming that the April 22, 2008 protocol

18   was foisted upon it was deceitful conduct confirming the complete lack of any merit

19   to its Motion.  Moreover, Mattel's recent agreement to the May 12 protocol *again*

20   and its admission that it was not seeking to modify that protocol in this Motion

21   underscores the complete lack of merit to its Motion.  Mattel's deceitful conduct

22   should be a further basis for denial of the Motion and an order to show cause re

23   sanctions.

24       **A.    Mattel's Conduct Plainly Demonstrates It Did Not Understand
              The Inspection Order To Authorize Access To Active Files.**
25

26       The Inspection Order was issued in late-February 2008.  Searcy Decl. Ex. 6.

27   After several weeks of negotiations, Mattel sent what appears to be the first draft of

28   the protocol two and one-half months later, on April 22, 2008.  Etcheverry Decl.

1   ¶ 4, Ex. 1; Searcy Decl. Ex. 8.  That draft contained a prohibition on the review of

2   active files.  Searcy Decl. Ex. 8 at 159, ¶ 6.  Mattel and MGA then negotiated an

3   additional three weeks regarding the terms of the protocol.  Etcheverry Decl. ¶¶ 3-8.

4   The final agreement ultimately prohibited access to the content of user generated

5   active files in even stronger terms than Mattel's first draft.  Hurst Supp. Decl.

6   Ex. G.

7        At the same time Mattel and the MGA Parties were crafting the Larian hard

8   drive protocol, Mattel was negotiating a protocol to govern the inspection of

9   Farhad Larian's USB device.  Etcheverry Decl. ¶¶ 3, 4.  That protocol specifically

10  permits access to active files on Farhad's USB device, demonstrating that Mattel

11  knew how – if it were inclined – to negotiate a protocol (under pressure) to include

12  review of active files.  *Id*. ¶ 4.  It did not do so with respect to Isaac Larian's hard

13  drives.

14       Two conclusions are immediately apparent from this now-complete factual

15  record.  First, Mattel was not hoodwinked or forced to do anything, and its original

16  suggestion to the contrary was completely false.  *See id*. ¶¶ 2-8.  Second, Mattel

17  always understood that the Inspection Order did not authorize review of active files,

18  as that was the consistent basis of the parties' six weeks of negotiations and final

19  agreement, which was again recently confirmed when Mattel signed the same

20  stipulation for review of the hard drives in the supplemental production.  Hurst

21  Supp. Decl. Ex. H; *see also* Searcy Decl. Ex. 12 (Order No. 34) at 10 n.6

22  (concluding Mattel understood the Inspection Order was not intended to authorize

23  access to active files).

24       The fact that Mattel *again* agreed to the protocol, and its counsel "explained"

25  its conduct by saying that Mattel was not seeking to modify it in this Motion,

26  further demonstrates that Mattel never understood the Court's order to require

27  inspection of active files, that Mattel does not require access to active files, and that

28  this Motion should be denied.

1

**B.      Mattel's Deceitful Conduct Is Another Reason For Denial Of The
Motion And For An Order To Show Cause Re Sanctions.**

2

3          The suppression of a fact by one who gives information of other facts that are

4     likely to mislead in the absence of disclosure of the suppressed fact is deceit under

5     California law.  Cal. Civ. Code §1710(3).  Rule 5-200 of the California Rules of

6     Professional Conduct requires attorneys to use such means "only as are consistent

7     with truth" (Rule 5-200(A)) and to refrain from "seek[ing] to mislead the judge . . .

8     by an artifice or false statement of fact or law."  *Id.* 5-200(B); *see also Di Sabatino*

9     *v. State Bar*, 27 Cal.3d 159, 162 (1980) ("It is settled that concealment of material

10    facts is just as misleading as explicit false statements, and accordingly, is

11    misconduct calling for discipline.").  "This fundamental duty of counsel to be

12    truthful, which is also imposed by statute (Bus. & Prof.Code, § 6068, subd. (d)),

13    has been assiduously enforced by the courts." *Bryan v. Bank of America*, 86 Cal.

14    App. 4th 185, 193 (2001) (citing, *e.g.*, *Eschwig v. State Bar*, 1 Cal.3d 8, 17 (1969)

15    ("Petitioner then not only failed to disclose the transaction to the probate court, but

16    filed documents leading the court to believe that the property remained as an asset

17    of the probate estate.  Under the circumstances, he clearly misled a judge in

18    violation of [Bus. & Prof. Code § 6068(d)].")).  Misrepresentations to a court are

19    not justified by the duty of vigorous advocacy. *Lebbos v. State Bar*, 53 Cal.3d 37,

20    45 (1991).

21          *Di Sabatino* is instructive.  In that case, the petitioner sought a bail reduction

22    for his clients from two courts.  Both requests were denied. Petitioner then

23    approached yet a third court seeking the same relief.  Though the petitioner

24    informed the Commissioner that he had appeared in court with his clients earlier

25    that day, he failed to apprise the court of the two previously denied bail reduction

26    requests.  The Commissioner granted the bail reductions.  The Disciplinary Board

27    concluded that the petitioner's failure to disclose the two prior requests "constituted

28    a concealment of information which misled the commissioner." *Di Sabatino*, 27

1   Cal.3d at 162.  "Petitioner clearly had an affirmative duty to inform Commissioner

2   Ziskrout fully and completely as to all relevant facts and circumstances regarding

3   his request for bail reduction." *Id*.  His failure to do so was grounds for discipline.

4         Like *Di Sabatino*, having spoken on the issue, Mattel then had a duty to fully

5   inform the Court of all relevant facts and circumstances related to its request for

6   relief here, but failed to do so.  Mattel contends that it was not obligated to disclose

7   the May 12 protocol, because it was not seeking to modify it.  Hurst Supp. Decl.

8   Ex. I.  But Mattel's motion is based in part on the notion that it had no choice but to

9   "accede" to MGA's demands (which were memorialized in the protocol) because

10  trial was imminent. Mot. at 5:2-5.  The now-complete history of the protocol

11  demonstrates, however, that Mattel had ample opportunity to negotiate access to

12  active files (if, in fact, that is what it was after), but it agreed instead that its

13  consultant was prohibited from reviewing such content.  This agreement evidences

14  Mattel's understanding that it never was entitled to such access.  Furthermore, as in

15  *Di Sabatino*, Mattel tells only part of the story, because the full story completely

16  undermines – and threatens the success of – its motion.

17        Failure to bring the May 12 protocol to the Court's attention while arguing

18  that the April 22 letter was foisted upon Mattel and did not accurately reflect its

19  understanding of the Inspection Order was deceitful conduct.  The six-week course

20  of negotiations; the fact that the final protocol even more strongly condemned

21  review of active files while a similar, contemporaneous protocol permitted such

22  inspection; and Mattel's repeatedly expressed urgency to inspect Farhad Larian's

23  device in light of his then-pending deposition, and concomitant lack of such

24  comments regarding the trial, are facts completely inconsistent with the position

25  taken by Mattel in its Motion.  Indeed, Mattel's eleventh-hour execution of yet

26  *another* agreement to be bound by the May 12 protocol to govern the supplemental

27  inspection evidences Mattel's understanding that it was not entitled to review active

28  files.  The delay in signing the undertaking or even acknowledging that the May 12

1   protocol governed the initial inspection further demonstrates that Mattel recognized

2   its lack of candor to this Court.  In failing to disclose to the Court the May 12

3   protocol, Mattel plainly abrogated its duty to employ means only as are consistent

4   with the truth and to refrain from using an artifice (here, a material omission of fact

5   necessary to fairly understand the facts that were disclosed) seeking to mislead.

6   *Di Sabatino*, 27 Cal.3d at 162.

7          Jon Corey signed the May 12 protocol, his name appears in the caption on the

8   Motion at issue, and he continues to work on this case.  When Mattel was asked to

9   explain its conduct, Mattel offered no reasonable explanation.  And there is none.

10  Mattel should not be rewarded for its deceit, and the Motion should be denied on

11  this ground as well.  Further, the Court should issue an order to show cause why

12  Mattel should not be sanctioned in connection with this Motion.

13                              **CONCLUSION**

14         For the foregoing reasons, and those set forth in the MGA Parties'

15  Opposition, Mattel's Motion for Preclusive Relief or, in the Alternative, Access to

16  Active Files on the Larian Hard Drives should be denied, and the Court should

17  issue an order to show cause to Mattel to explain its conduct and why it should not

18  be sanctioned.

19
     Dated: August 27, 2009              ORRICK, HERRINGTON & SUTCLIFFE LLP
20

21

22                                        By:    ____/s/ Annette L. Hurst_____
                                                      Annette L. Hurst
23                                                Attorneys for MGA Parties

24

25

26

27

28

OHS West:260714958.5                      - 8 -          SUPP. OPP. TO MOT. FOR PRECLUSIVE RELIEF
                                                                  CV 04-9049 SGL (RNBx)