MELINDA HAAG (State Bar No. 132612)
mhaag@orrick.com
ANNETTE L. HURST (State Bar No. 148738)
ahurst@orrick.com
WARRINGTON S. PARKER III (State Bar No. 148003)
wparker@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105-2669
Telephone:   +1-415-773-5700
Facsimile:   +1-415-773-5759

WILLIAM A. MOLINSKI (State Bar No. 145186)
wmolinski@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA  90017
Telephone:   +1-213-629-2020
Facsimile:   +1-213-612-2499

Attorneys for MGA Parties

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | Case No.  CV 04-9049-SGL (RNBx)<br><br>Consolidated with:<br>CV 04-9059<br>Case No. CV 05-2727<br><br>**DECLARATION OF LANCE A. ETCHEVERRY IN SUPPORT OF MGA PARTIES' SUPPLEMENTAL OPPOSITION TO MATTEL, INC.'S MOTION FOR PRECLUSIVE RELIEF OR, IN THE ALTERNATIVE, ACCESS TO ACTIVE FILES ON THE LARIAN HARD DRIVES**<br><br>Date:         August 31, 2009<br>Time:         10:00 A.M.<br>Courtroom: 1<br>Judge:        Hon. Stephen G. Larson |

I, Lance A. Etcheverry, declare as follows:

1. I am a member of the Bar of the State of California and admitted to practice before this Court. I am a partner with the law firm of Skadden, Arps, Slate, Meagher & Flom LLP. I make this declaration in support of the MGA Parties' Supplemental Opposition to Mattel's Motion for Preclusive Relief or, in the Alternative, Access to Active Files on the Larian Hard Drives. I make this declaration of my own personal knowledge and if called as a witness, unless indicated as to information and belief, I could and would testify competently to the truth of the matters set forth herein.

2. Following entry of the Court's February 27, 2008 Order authorizing the inspection of Isaac Larian's hard drive devices to uncover evidence of possibly deleted files, I engaged in numerous discussions with Mattel's counsel, Jon Corey. We met and conferred (with the assistance of the parties' forensic consultants) to craft a protocol governing the inspection of Mr. Larian's hard drives. The purpose of the protocol was to ensure that Mattel's forensic consultant would have access to those portions of the hard drive devices necessary to identify and recover any potentially relevant deleted data, but prevent access by the consultant to active, user-generated data (which could contain personal, confidential or privileged information).

3. Scott Gizer and other attorneys from the firm of Christensen, Glaser, Fink, Jacobs, Weil & Shapiro were also involved in these discussions to address the production and inspection of a USB device belonging to their client Farhad Larian.

4. After several discussions with respect to Mr. Larian's hard drives, Mr. Corey sent me a draft letter agreement on April 22, 2008. Attached hereto as **Exhibit 1** is a true and correct copy of Johanna Lopez's (Mr. Corey's assistant) April 22, 2008 2:58 P.M. email to me enclosing the draft letter agreement. The draft included a proposed protocol with respect to the inspection of both Isaac Larian's hard drive devices and Farhad Larian's USB device. We later agreed to separate

1  the protocols for the hard drive and USB devices – in part because, unlike the
2  inspection of the hard drive devices, the inspection of the USB device would
3  include active, user-created data.

4      5.    On April 29, 2008, I provided Mr. Corey with a revised draft that
5  reflected MGA's initial proposed changes to the April 22, 2008 draft protocol.
6  Attached hereto as **Exhibit 2** is a true and correct copy of my April 29, 2008 2:41
7  P.M. email to Mr. Corey, which attached the revised draft with MGA's initial
8  revisions. Also attached for the Court's convenience is a redline created by MGA's
9  present counsel, which reflects the proposed changes made by MGA to Mr. Corey's
10 initial draft protocol. Given the objective of preserving the sanctity of user-created
11 data on Mr. Larian's hard drive devices, MGA revised the protocol to require, *inter*
12 *alia*, that:

> a) MGA's forensic consultant be permitted to take steps necessary to prevent Mattel's consultant from, among other things, accessing active, user-created data;
>
> b) Mattel's consultant execute and agree to be bound by the Stipulated Protective Order in the pending litigation;
>
> c) MGA be provided an opportunity to review information recovered from the hard drive devices for responsiveness and privilege prior to production of that information to Mattel; and
>
> d) Mattel's consultant limit its inspection to (i) information relating to the manufacture date and first use of each hard drive device; (ii) available metadata and file information about recoverable deleted documents or files for which there remains an entry in the File System that refer or relate to Bratz, MGA, Isaac Larian, Angel or Carter Bryant; and (iii) data residing in unallocated space that refers or relates to Bratz, Angel or Carter Bryant.

    6.    In an attempt to limit Mattel's consultant's inspection of the hard drive devices to potentially relevant data that had allegedly been deleted, MGA proposed revisions to the protocol that required the consultant to conduct its inspection using "search terms and parameters" provided by Mattel (which were intended to target potentially deleted data that referred or related to Bratz, MGA, Isaac Larian, Angel

1  or Carter Bryant). The references to MGA and Isaac Larian were later deleted.

2      7.    On May 7, 2008, Mr. Corey informed me that, after speaking with Mattel's consultant, Mattel had some concerns about MGA's April 29th proposal. Attached hereto as **Exhibit 3** is a true and correct copy of Mr. Corey's May 7, 2008 9:07 A.M. email to me. Among other stated concerns, Mr. Corey indicated that he believed MGA's revisions to the draft hard drive protocol went "too far" because they prevented Mattel's consultant from being able to search for all possible indicia of deleted data. Mr. Corey also questioned whether it was necessary to have certain types of non-user-created data reviewed for responsiveness or privilege prior to being produced to Mattel.

    8.    Mr. Corey and I addressed these concerns and others in subsequent discussions and revisions to the protocols. After completing our discussions, and reaching agreement on the terms of the hard drive protocol, Mr. Corey sent me, on May 12, 2008, the final agreement governing the inspection of Mr. Larian's hard drive devices. Attached hereto as **Exhibit 4** is a true and correct copy of the final letter agreement, which governed the ultimate inspection that took place.

    I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge. Executed this 27th day of August 2009, at Los Angeles, California.

*/s/ Lance A. Etcheverry*
Lance A. Etcheverry

- 3 -

ETCHEVERRY DECL. ISO SUPPL. OPP. TO MOT. FOR PRECLUSIVE RELIEF
CV 04-9049 SGL (RNBx)

OHS West:260718224.1