1 | QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
    John B. Quinn (Bar No. 090378)
2 |   johnquinn@quinnemanuel.com
    Michael T. Zeller (Bar No. 196417)
3 |   (michaelzeller@quinnemanuel.com)
    Jon D. Corey (Bar No. 185066)
4 |   (joncorey@quinnemanuel.com)
    865 South Figueroa Street, 10th Floor
5 | Los Angeles, California 90017-2543
    Telephone: (213) 443-3000
6 | Facsimile: (213) 443-3100

7 | Attorneys for Mattel, Inc.

8 |

9 | UNITED STATES DISTRICT COURT

10 | CENTRAL DISTRICT OF CALIFORNIA

11 | EASTERN DIVISION

12 | CARTER BRYANT, an individual,

13 |          Plaintiff,

14 |     vs.

15 | MATTEL, INC., a Delaware
    corporation,
16 |
           Defendant.
17 |

18 | AND CONSOLIDATED ACTIONS

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

CASE NO. CV 04-9049 SGL (RNBx)

Consolidated with
Case No. CV 04-09059
Case No. CV 05-02727

[DISCOVERY MATTER]
To be heard by Discovery Master
Robert C. O'Brien

[PUBLIC REDACTED] MATTEL,
INC.'S OPPOSITION TO NEIL
KADISHA'S *EX PARTE*
APPLICATION FOR PROTECTIVE
ORDER

[Declarations of Michael T. Zeller and
Scott B. Kidman filed concurrently]

**Phase 2**
Discovery Cut-off: December 11, 2009
Pre-trial Conference: March 1, 2010
Trial Date: March 23, 2010

# **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ........................................................................1

BACKGROUND ............................................................................................4

ARGUMENT .................................................................................................5

I.      THERE IS NO BASIS FOR *EX PARTE* RELIEF ...............................5

II.     THERE IS NO BASIS FOR LIMITING KADISHA'S DEPOSITION TO THE DEBT ACQUISITION .................................................................5

      A.    The Discovery Master's Prior Orders Do Not Limit The Scope Of Kadisha's Deposition .........................................................6

      B.    The Filing of the TAAC Dramatically Expanded The Scope Of This Lawsuit .........................................................................8

III.    THE NEMAN DEPOSITION DOES NOT SUPPORT THE *EX PARTE* ......10

IV.    MATTEL IS ENTITLED TO SANCTIONS .................................................20

# TABLE OF AUTHORITIES

**Page**

## Cases

Berger v. Seyfarth Shaw, LLP,
  2008 WL 4570687 (N.D. Cal. Oct. 14, 2008) ...................................................... 19

Braley v. Campbell,
  832 F.2d 1504 (10th Cir. 1987) .......................................................................... 21

Branco v. Life Care Ctrs. of Am., Inc.,
  2006 WL 4484727 (W. D. Wash. May 4, 2006) ................................................. 5

Clarke v. American Commerce Nat'l Bank,
  974 F.2d 127 (9th Cir. 1992) ............................................................................. 18

Eastman Kodak Co. v. Camarata,
  238 F.R.D. 372 (W.D.N.Y. 2006) ....................................................................... 9

England Data Servs., Inc. v. Becher,
  829 F.2d 286 (1st Cir. 1987) ............................................................................... 9

Ford Motor Co. v. U.S.,
  84 Fed. Cl. 168 (2008) ......................................................................................... 5

Founding Church of Scientology of Washington, D.C., Inc. v. Webster,
  802 F.2d 1448 (D.C. Cir. 1986) .......................................................................... 1

In re Grand Jury Subpoenas,
  803 F.2d 493 (9th Cir. 1986) ............................................................................. 19

In re Inland Global Medical Group, Inc.,
  362 B.R. 459 (Bkrtcy. C.D. Cal. 2006) ............................................................. 12

Mattel, Inc. v. Goldberger Doll Mfg. Co.,
  236 F.R.D. 175 (S.D.N.Y. 2006) ....................................................................... 20

Mission Power Eng. Co. v. Continental Cas. Co.,
  883 F. Supp. 488 (C.D. Cal. 1995) ..................................................................... 5

Oppenheimer Fund, Inc. v. Sanders,
  437 U.S. 340 (1978) ............................................................................................. 9

Rice v. Union Central Life Ins. Co.,
  2006 WL 1128223 (D. Idaho Apr. 26, 2006) ...................................................... 5

RTC v. Dabney,
  73 F.3d 262 (10th Cir. 1995) ............................................................................. 21

SEC v. First Jersey Securities, Inc.,
　　1990 WL 209246 (N.D. Cal. Sept. 26, 1990) ....................................................19, 21

Sebago, Inc. v. Beazer East, Inc.,
　　18 F. Supp. 2d 70 (D. Mass. 1998) .......................................................................9

Shoen v. Shoen,
　　5 F.3d 1289 (9th Cir. 1993) ...............................................................................1

Topalian v. Ehrman,
　　84 F.3d 433, 1996 WL 248995 (5th Cir. 1996) ....................................................15

United States v. Blackman,
　　72 F.3d 1418 (9th Cir. 1995) ............................................................................19

VMP Intern. Corp. v. Yushkevich,
　　1993 WL 33463 (S.D.N.Y. Feb. 3, 1993) ......................................................15, 16

Wells Fargo & Co. v. Wells Fargo Exp. Co.,
　　556 F.2d 406 (9th Cir. 1977) ............................................................................12

**Statutes**

28 U.S.C. § 1927 ...............................................................................................15, 21

Federal Rule 30 ......................................................................................................15

**Miscellaneous**

Dennis R. Suplee and Diana S. Donaldson,
　　The Deposition Handbook § 7.02 (2005) .............................................................15

Kenneth M. Mogill, Examination of Witnesses § 6:53 (2d. ed. 2009) .....................15

42 N.J. Prac., Discovery § 4.159 ............................................................................15

**Preliminary Statement**

███████████████████████████████████████████

███████████████████████████████████████████

This was in accordance with well-settled law. "Pre-trial discovery is ordinarily 'accorded a broad and liberal treatment.' . . . This broad right of discovery is based on the general principle that . . . wide access to relevant facts serves the integrity and fairness of the judicial process by promoting the search for the truth." Shoen v. Shoen, 5 F.3d 1289, 1292 (9th Cir. 1993) (citations omitted). As courts also have explained, allowing for searching inquiry in deposition is particularly important since depositions "rank high in the hierarchy of pre-trial, truth-finding mechanisms" and "are a critical component of the tools of justice in civil litigation." Founding Church of Scientology of Washington, D.C., Inc. v. Webster, 802 F.2d 1448, 1451 (D.C. Cir. 1986).

In the face of the Discovery Master's prior instruction as well as these venerable principles, Mr. Kadisha asks for a protective order to shield himself from scrutiny and thwart fair inquiry into the facts at deposition. He claims that the Discovery Master has restricted discovery to Omni 808's purported acquisition of MGA's debt from Wachovia. As the allegations of the Third Amended Answer and Counterclaims ("TAAC") make clear, however, Mr. Kadisha's interpretation of discoverable issues is in error. He is the CEO of party-in-intervention Omni 808. Both he and Omni 808 are identified by name in the TAAC as RICO participants in criminal enterprises that range far beyond the single transaction Mr. Kadisha proclaims is relevant. Not only does Mr. Kadisha misstate the Discovery Master's Orders he selectively invokes, but other controlling Orders by Judge Larson and the Discovery Master hold the issues in discovery are not restricted to the debt

---

[1]   Transcript of Deposition of Leon Neman dated August 14, 2009 ("Neman Tr.") at 37:7-10, Declaration of Scott B. Kidman, dated August 26, 2009, filed concurrently herewith ("Kidman Decl.") Exh. 10.

1 | acquisition.  Thus, for example, in his July 9, 2009 Order, Judge Larson ruled that
2 | Mr. Kadisha's relationships, including with Isaac Larian, MGA and other RICO
3 | participants, are at issue and relevant.

4 | Even less justifiable is Mr. Kadisha's presentation of these arguments as an *ex*
5 | *parte*.  Mattel has been seeking his deposition for over six months.  The Discovery
6 | Master issued an Order over three months ago compelling him to sit for deposition
7 | and then had to issue two more Orders to enforce the original Order since Mr.
8 | Kadisha failed to appear.  Despite multiple Orders and motions over the past several
9 | months, Mr. Kadisha did not seek to limit the scope of his deposition.  Instead, he
10 | waited until two days before his deposition to assert, for the first time, that his
11 | examination should be restricted.  *Ex parte* relief is unavailable where, as here, the
12 | purported urgency is of the moving party's own creation.  His application should be
13 | denied for this reason alone.

14 | Mr. Kadisha attempts to excuse his months of delay by suggesting that the
15 | deposition of Leon Neman supports his application, but that effort is equally
16 | meritless.  He provides no explanation as to why he delayed over ten days after that
17 | deposition to bring this application.  Nor, tellingly, did the Omni parties file any
18 | motion making any complaint about the conduct of or questioning at the Neman
19 | deposition, as was required by the Discovery Master.  As review of the Neman
20 | deposition transcript and video show, Mr. Kadisha's portrayals of the deposition --

21 | ███████████████████████████████████████████████

22 | ███████████████ -- are also indefensible.[2]  Leon Neman is Isaac Larian's brother-
23 | in-law and has served as an MGA director.  He is the claimed principal of Vision
24 | Capital, a single-purpose entity created two days after the jury found that MGA had
25 | infringed Mattel's rights in Bratz and awarded $100 million in damages.  Vision

26 | _____

27 | [2]  While characterizing the deposition at length, Mr. Kadisha does not provide
the Discovery Master with the full record of it, undoubtedly because it contradicts
28 | his claims.  Mattel is providing the complete video and transcript herewith.

Capital claims that it is a member of Omni 808 and that its alleged contribution of $10 million to Omni 808 came from Lexington Financial. Despite his obvious relevance as a witness, Mr. Neman refused to appear for deposition, so the Discovery Master compelled it. Over three months after the Discovery Master's Order, Mr. Neman finally appeared. ███████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████

The federal judicial system favors resolution of disputes on the merits, and the role of discovery is to fully reveal the facts so that the Court and jury may ascertain the truth. It ultimately will be the role of the fact-finder to assess Mr. Neman's testimony and decide whether his account is truthful or whether it is, instead, another unlawful attempt to conceal Mr. Larian's roles in Vision Capital, Omni 808 and the conduct at issue in the TAAC. But, contrary to Mr. Kadisha's argument, what the deposition does not warrant is shielding Mr. Kadisha from a searching cross-examination so as to interfere with the truth-finding function of discovery. If anything, Mr. Neman's implausible testimony only serves to heighten the importance of Mattel's right to fully examine Mr. Kadisha, not diminish it.

Mr. Kadisha's meritless application should be rejected, and he should be sanctioned for bringing it.

**Background**

Mattel noticed Mr. Kadisha's deposition on February 25, 2009.[3]  On March 12, 2009, he moved to quash the subpoena.  Mr. Kadisha's motion, however, sought no limitation on the scope of any deposition that was compelled.  ███████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

Again, even though Mr. Kadisha failed to comply with this Order, he never raised the issue of limiting the deposition's scope or otherwise sought a protective order. On July 30, 2009, the Discovery Master rejected Mr. Kadisha's request for an extension of the deadline imposed by the May 18 Order and again ordered him to sit for a deposition within 10 court days of the Order.[5]  Again, in his request for an extension, Mr. Kadisha did not raise the issue of a protective order or seek any limitation on the deposition's scope.  On August 3, 2009, counsel for Mr. Kadisha informed Mattel and the Discovery Master that Mr. Kadisha was out of the country and thus needed an extension of the second-ordered deadline by another ten days.[6] The Discovery Master granted this extension, ordering Mr. Kadisha for the third time to sit for his deposition, this time by the week of August 24, 2009.[7]  Over three weeks after this third Order, and over six months after Mattel's motion, Mr. Kadisha brought this *ex parte* seeking, for the first time, to restrict the scope of his examination.

---

[3]  Deposition notice and subpoena of Neil Kadisha, dated February 25, 2009, Kidman Decl. Exh. 1.

[4]  See Order No. 33, dated May 18, 2009, at 59, Kidman Decl. Exh. 2.

[5]  See Order No. 43, dated July 30, 2009, at 2, Kidman Decl. Exh. 3.

[6]  See Order No. 44, dated August 4, 2009, Kidman Decl. Exh. 4.

[7]  Id. at 1.

<u>**Argument**</u>

**I.   <u>THERE IS NO BASIS FOR *EX PARTE* RELIEF</u>**

Mr. Kadisha has known for six months that Mattel intended to depose him. His deposition has been the subject of several motions, numerous correspondence, and three Discovery Master Orders.  Now, two days before his deposition, Mr. Kadisha requests a protective order restricting his deposition examination for the first time.  His tactical choice to defer raising this issue for six months cannot and does not justify *ex parte* relief.  To the contrary, a party seeking *ex parte* relief must show irreparable injury without such relief and "that the moving party is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect." <u>Mission Power Eng. Co. v. Continental Cas. Co.</u>, 883 F. Supp. 488, 490 (C.D. Cal. 1995).

This standard is not met here.  Kadisha had multiple opportunities over the course of many months to raise this issue, yet he chose not to.  He chose to wait until he was ordered for the third time to be deposed -- and even then he did not move immediately thereafter, but further delayed until two days before his deposition.  The purported urgency here is entirely of Mr. Kadisha's own creation due to his tactical delays, a situation for which *ex parte* relief is expressly unavailable.

**II.   <u>THERE IS NO BASIS FOR LIMITING KADISHA'S DEPOSITION TO THE DEBT ACQUISITION</u>**

Kadisha's application fails not only procedurally, but on the merits as well. Kadisha bears the burden of establishing that he is entitled to the relief he seeks. None of the arguments he makes carries that burden.  <u>See</u> <u>Branco v. Life Care Ctrs. of Am., Inc.</u>, 2006 WL 4484727, *2, 4 (W.D. Wash. May 4, 2006) (noting that "the scope of discovery in federal court is very broad" and denying motion for protective order);  <u>Rice v. Union Central Life Ins. Co.</u>, 2006 WL 1128223 (D. Idaho Apr. 26, 2006) (denying motion for protective order and allowing discovery of plaintiff's

1  financial information because the Federal Rules create a broad right to discovery
2  and because plaintiff had not met its burden of establishing good cause for why
3  discovery should not be taken);  <u>Ford Motor Co. v. U.S.</u>, 84 Fed. Cl. 168, 172
4  (2008) (noting "the truthseeking function" of discovery and denying motion for
5  protective order premised on undue burden).

6   **A.   <u>The Discovery Master's Prior Orders Do Not Limit The Scope Of</u>**
7        **<u>Kadisha's Deposition</u>**

8   ██████████████████████████████████████████████████
9   ██████████████████████████████████████████████████
10  ██████████████████████████████████████████████████
11  ██████████████████████████████████████████████████
12  ██████████████████████████████████████████████████
13  ██████████████████████████████████████████████████
14  ██████████████████████████████████████████████████
15  ██████████████████████████████████████████████████
16  ██████████████████████████████████████████████████
17  ████████████████████████████

18         Kadisha's reliance on other Discovery Master Orders to limit the scope of his
19  deposition to the "Debt Acquisition" fares no better.  (<u>See</u> Application at 3.)  First,
20  none of the Orders he points to--Order Nos. 3, ████████ had anything to do with
21  Kadisha's deposition.  Moreover, Order No. 3's limitation on Omni 808's obligation
22  to produce documents was primarily predicated on the Omni parties' counsel's

23
24

---

25  [8]  Order No. 33, dated May 18, 2009, at 31, Kidman Decl. Exh. 2.
26  [9]  <u>Id</u>. at 33-34 (emphasis added).
27  [10]  Likewise, Order No. 33 did not limit the scope of the deposition of Leon
    Neman and thus Mattel did not "flatly disregard" any "express limitation" on the
28  scope of the Neman deposition as Kadisha falsely asserts. (<u>See</u> Application at 8.)

1  representation to the Court that Larian had not funded any of the debt acquisition.[11]

2  However, after Order No. 3 was issued, Wachovia produced documents

3  demonstrating that this representation was false, and Mattel thus sought

4  reconsideration of Order No. 3. ████████████████████████████████

5  ████████████████████████████████████████████████████████████

6  ████████████████████████████████████████████████████████████

7  ████████████████████████████████████████████████████████████

8  ████████████████████████████████████████████████████████████

9  ████████████████████████████████████████████████████████████

10 ████████████████████████████████████████████████████████████

11 ████████████████████████████████████████████████████████████

12 ████████████████████████████████████████████████████████████

13 ████████████████████████████████████████████████████████████

14 ████████████████████████████████████████████████████████████

15 ████████████████████████████████████████████████████████████

16 ████████████████████████████████████████████████████████████

17 ████████████████████████████████████████████████████████████

18 ████████████████████████████████████████████████████████████

19 ████████████████████████████████████████████████████████████

20 ████████████████████████████████████████████████████████████

21 ████████████████████████████████

22

23  [11] See Order No. 3, dated March 10, 2009, at 3-4, Kidman Decl. Exh. 5.

24  [12] ██████████████████████████████████████████████████

25  [13] Id. at 10 (citing the April 27, 2009 Order, at 16-17).

26  [14] Order No. 3, dated March 10, 2009, at 25, Kidman Decl. Exh. 5.

27  [15] ████████████████████████████████████████

28  [16] Id. at 10-11.

**B.    The Filing of the TAAC Dramatically Expanded The Scope Of This Lawsuit**

Furthermore, the Orders cited by Kadisha--other than Order No. 46--were made prior to Mattel's filing of the TAAC on May 22, 2009.  As the Court found in its July 9, 2009 Order, the filing of the TAAC "significantly heightens the relevancy of the issue of how the MGA parties and the parties represented by Bingham" -- including Mr. Kadisha -- "may be related, the formation of certain of those entities, and other issues implicated by Mattel's requests."[17]   The Court further ruled that "the filing of the TAAC dramatically altered the calculus that underlies the conclusions reached in DM No. 27."[18]  Thus, even to the extent any of the Orders cited could be read to somehow limit the topics of Mr. Kadisha's deposition--which they clearly do not--the Court has made clear that the analysis has changed in light of the allegations in the TAAC. ████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████

The allegations in the TAAC, too, extend far beyond the "Debt Acquisition." The TAAC alleges that Larian, Kadisha, Neman, Omni 808, Lexington, Vision Capital and others were all participants in criminal enterprises designed to, among other things, manipulate MGA's net worth, engage in additional acts of copyright infringement and money laundering, and mask Larian's attempts to establish priority

---

[17]  July 9, 2009 Order at 5, Kidman Decl. Exh. 8.
[18]  Id.
[19]  Order No. 46, dated August 14, 2009, at 5, Kidman Decl. Exh. 7.

1   creditor status over Mattel.[20]  Furthermore, the TAAC alleges that Larian and MGA

2   have sought to conceal their involvement with these participants.[21]

3          As the District Court thus ruled in its July 9, 2009 Order, the formation and

4   governance of these entities, the relationships among the RICO participants and

5   other, as-yet-unidentified participants, and their funding are highly relevant to

6   Mattel's claims ████████████████████████████████████████████████████████

7   ████████████████████████████████████████████

8          ████████████████████████████████████████████████████████

9          ████████████████████████████████████████████████████████

10         ████████████████████████████████████████████████████████

11         ████████████████████████████████████████████████████████

12         ████████████████████████████████████████████████████████

13         ████████████████████████████████████████████████████████

14         █████████████████████

15  ████████████████████████████████████████████████████████████████

16  ████████████████████████████████████████████████████████████████

17  ████████████████████████████████████████████████████████████████

18  █████████████████████████████████

19         Because the TAAC alleges complex RICO claims, involving Larian, Kadisha,

20  Neman, Omni, Lexington, Vision Capital and others, the scope of relevant discovery

21  is quite broad and extends even beyond the particulars alleged in the TAAC.

22  Relevance with respect to RICO claims "encompass[es] any matter that bears on, or

23  that reasonably could lead to other matter that could bear on, any issue that is or

---

24

25   [20]   See TAAC at ¶¶ 105-126, 133-135.

     [21]   Id. at ¶¶ 107, 114, 119.

26   [22]   See Discovery Matter Order No. 46, dated August 14, 2009, at 5-6, Kidman

27   Decl. Exh. 7.

     [23]   Id. at 5.

28   [24]   Id. at 6.

1  may be in the case." Eastman Kodak Co. v. Camarata, 238 F.R.D. 372, 374
2  (W.D.N.Y. 2006) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351
3  (1978)).  Discovery in RICO cases thus includes all matters related to the alleged
4  pattern of criminal activity, including pattern evidence, as well as unpled predicate
5  acts and the identities and connections among the participants in the enterprise (of
6  which Mattel has alleged three separate ones).  See England Data Servs., Inc. v.
7  Becher, 829 F.2d 286, 291-92 (1st Cir. 1987) (holding that lower court abused its
8  discretion in denying request for further discovery as to specific predicate acts when
9  plaintiff had "provided an outline of the general scheme to defraud and established
10 an inference that the mails or wires was used to transact this scheme"); see also
11 Sebago, Inc. v. Beazer East, Inc., 18 F. Supp. 2d 70, 80 (D. Mass. 1998)
12 (acknowledging that further discovery "may provide additional instances" of alleged
13 RICO violations, therefore it is relevant to establishing predicate acts, relatedness
14 and continuity).[25]

15 **III.   THE NEMAN DEPOSITION DOES NOT SUPPORT THE _EX PARTE_**

16       As justification for seeking unwarranted restrictions he seeks to impose on the
17 scope of his deposition, Kadisha also argues that Mattel spent "nearly one full day"[26]
18 examining Leon Neman about "areas of his personal and professional life that are
19 not even remotely related to any Phase 2 issue." (Application at 4.)  That allegation
20 -- ███████████████████████████████████████████████
21 ███████████████████████████████████████████████ --
22 is false.

---

25   Mattel also has currently pending a motion for leave to file a Fourth
Amended Answer and Counterclaims that adds, _inter alia_, Mr. Kadisha and Omni
808 as named defendants.
26   In fact, Mr. Neman's deposition consisted of approximately four hours of
questioning.  Zeller Decl. Exh. 1.

1

2

3

4

5

6

7

8  Neman never filed any such motion.  Nor did he have any grounds to, as

9 he has necessarily conceded by his failure to bring the motion.  Indeed, the record

10 demonstrates that the questioning of Mr. Neman was entirely proper.  Because the

11 Omni parties' counsel fails to, Mattel is providing a video of the Neman deposition.

12 A review of it alone shows that their charges about Mattel's conduct at the

13 deposition -- made both at the deposition and in this *ex parte* -- are baseless.[28]

14 Mr. Kadisha claims that Mattel asked numerous questions regarding the

15 details of "Mr. Neman's past business deals, none of which involved Vision Capital,

16 Isaac Larian or MGA."  (Application at 4.)

17 Mr.

18 Neman and Lexington Financial are identified throughout the TAAC, including as

19

20 _____

21 [27] Neman Tr. at 45:19-48:6, Kidman Decl. Exh. 10.

[28]

22

23 despite Judge Larson's prior rebuke of similar

24 attacks on the professionalism of the Court-appointed forensic auditor, Mr. Durkin.

25 See July 9, 2009 Order, at 6-14, Kidman Decl. Exh. 8.  Mattel has submitted herewith the video tape of the Neman deposition in its entirety.  A review of the

26 video and the transcript

27

28 [29] Neman Tr. at 51:12-65:19, Kidman Decl. Exh. 10.

1 RICO co-conspirators.[30]   These ostensible loan transactions are clearly relevant to

2 the relationship between Lexington, Mr. Neman and other participants in the RICO

3 enterprise.   As Judge Larson held in his July 9 Order, such matters are directly

4 relevant.[31] ███████████████████████████████████████████████████

5 ████████████████████████████████████████████████████████████████████

6 ████████████████████████████████████████████████████████████████████

7 ████████████████████████████████████████████████████████████████████

8 ████████████████████████████████████████████████████████████████████

9 ████████████████████████████████████████████████████████████████████

10 ████████████████████████████████████████████████████████████████████

11 ████████████████████████████████████████████████████████████████████

12 ████████████████████████████████████████████████████████████████████

13 ████████████████████████████████████████████████████████████████████

14 ████████████████████████████████████   Evidence regarding

15 whether a debt and its payment are ordinary in relation to past practices or a prior

16 course of dealing between a debtor and creditor is relevant in determining whether it

17 is a bona fide debtor-creditor relationship.   See, e.g., In re Inland Global Medical

18 Group, Inc., 362 B.R. 459, 464 (Bkrtcy. C.D. Cal. 2006). ██████████████████

19 ████████████████████████████████████████████████████████████████████

20 ██████████████████████████████████████████████████.   See Wells

21 Fargo & Co. v. Wells Fargo Exp. Co., 556 F.2d 406, 430 n.24 (9th Cir. 1977) ("And

22 it is clear that a court may allow discovery to aid in determining whether it has in

23 personam or subject matter jurisdiction.").

24 _____

25 [30] See TAAC at ¶¶ 18, 108-117, 136.
   [31] July 9, 2009 Order, at 5, Kidman Decl. Exh. 8.

26 [32] See Neman Tr. at 158:14-159:10, Kidman Decl. Exh. 10.

27 [33] Id. at 171:10-173:24.
   [34] Id. at 56:3-58:19, 63:21-65:6, 151:2-12, 152:25-153:6.

28 [35] Id. at 51:16-52:15.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27 [36] See id. at 31:5-7.

28 [37] See id. at 24:18-25:8.

[38] See id. at 151:2-15, 152:25-153:6.



1  
2  
3  
4  
5  
6  
7  
8  
9  
10  
11  
12  Mr. Kadisha misstates the record.  
13  
14  Mr. Mashian is referenced throughout the TAAC, including as a RICO  
15  conspirator,  
16  Although Mr. Mashian has denied under oath that he is  
17  related to Isaac Larian,[42] Mr. Mashian's wife's maiden name is *Neman*.   If Mr.  
18  Mashian is related to Mr. Neman through his wife, then he is also related to Mr.

---

[39]  See id. at 153:16-20; 154:15-24.

[40]

See id. at 155:7-156:17.

[41]  See Order No. 46, dated August 14, 2009, Kidman Decl. Exh. 7.

[42]  See Declaration of Fred Mashian In Opposition To Mattel's *Ex Parte* Appl. For Order Deeming Lexington Served, dated March 8, 2009, at ¶ 7, Kidman Decl. Exh. 28.

1   Larian.   Mattel is entitled to explore the relationships between the RICO

2   conspirators identified in the TAAC, including Mr. Neman, Mr. Mashian and Isaac

3   Larian.[43]   There is nothing improper in such questions, and Mr. Kadisha cites no

4   authority for his conclusory rhetoric otherwise.   To the contrary, as the July 9 Order

5   and the authorities cited above make clear, Mattel is entitled to fully explore the

6   relationships -- familial, business and otherwise -- among the RICO participants.

7   ██████████████████████████████████████████████████

8   ██████████████████████████████████████████████████

9   ████████████   There is nothing improper about this and other general background

10   questions.   Courts and commentators have repeatedly confirmed the obvious

11   proposition that witnesses background questions are commonplace and proper under

12   liberal federal discovery standards.   Topalian v. Ehrman, 84 F.3d 433, 1996 WL

13   248995, at *3 (5th Cir. 1996) (affirming district court's imposition of sanctions for

14   "failing to cooperate in the deposition process by encouraging or permitting

15   Plaintiffs to refuse to answer such questions as their address, educational

16   background, driver's license number, as well as substantive questions, in violation of

17   § 1927 and Rule 30"); Kenneth M. Mogill, Examination of Witnesses § 6:53 (2d. ed.

18   2009) ("In most cases" deposition will seek information about witness's "identity

19   and background").[45]   Such information obviously includes a witness's residence and

20

21   [43] ████████████████████████████████████████

22   ████████████████████████████████████████████████

23   ████████████████████████████████████████████████

24   ████████████████████████████ See Neman Tr. at 161:1-25, Kidman Decl. Exh.

25   10.

      [44]   See id. at 10:7-11:12.

26   [45]   Accord Dennis R. Suplee and Diana S. Donaldson, The Deposition Handbook

27   § 7.02 (2005) ("The great majority of depositions begin with questions about the

      deponent's personal background (age, residence, and, if relevant, marital status,

28   number of children and their ages, etc.), followed by questions about her education

      (footnote continued)

1  historical information.   Indeed, in <u>VMP Intern. Corp. v. Yushkevich</u>, 1993 WL

2  33463, at *1 (S.D.N.Y. 1993), the court rejected as "frivolous" arguments that

3  deposition questions about a witness's "prior residence" and phone number for it

4  were "irrelevant" and "intrusive," held that "an instruction not to answer under this

5  circumstance also does not comport with" the <u>Federal Rules</u> and imposed sanctions.

6       Further demonstrating the frivolousness of Mr. Kadisha's arguments, the types

7  of questions that he proclaims -- without authority -- were improper have in fact

8  been repeatedly asked by MGA, including of non-party witnesses, and often far

9  more extensively and in far more detail than the questions asked of Mr. Neman.

10  Indeed, in those depositions, MGA counsel elicited lengthy background testimony,

11  including about prior residences, that often went back decades.  Thus, for example:



20  and employment history, including her current duties and responsibilities. . . . [A]t

21  some point in the deposition the interrogator should elicit certain background

22  information.  For example, the deponent's education and employment experience

     may be highly relevant both to the claims asserted and to the weight to be given to

23  her testimony.  It is also wise to ask a nonparty deponent to give her home and

     business addresses and telephone numbers and to inquire whether she has plans to

24  move.  As the case approaches trial, this information can be very valuable in

25  locating this witness to serve her with a subpoena.").

26  [46]  Deposition Transcript of Adrienne Fontanella, dated January 16, 2008, at 28-29, Kidman Decl. Exh. 11.

27  [47]  <u>Id.</u> at 6-11.

28  [48]  Deposition Transcript of Jean Gomez, dated January 24, 2008, at 26-27, Kidman Decl. Exh. 12.



- At the deposition of Lloyd Cunningham, an expert, MGA asked questions about his background stretching back to 1957.[53]

---

[49] Deposition Transcript of Hoi Hoffman-Briggs, dated January 21, 2008, at 11-20, 100-101, 147-150, Kidman Decl. Exh. 13.

[50] Deposition Transcript of Robert Simoneau, dated January 28, 2008, at 16-23, Kidman Decl. Exh. 14.

[51] Deposition Transcript of Robert Hudnut, dated July 13, 2007 at 9-41, Kidman Decl. Exh. 15.

[52] Deposition Transcript of Julia Marine, September 21, 2006, at 12-23, Kidman Decl. Exh. 16.

[53] Deposition Transcript of Lloyd Cunningham, dated March 31, 2008, at 9, Kidman Decl. Exh. 17.

1 • ████████████████████████████████████████████

2 ████████████████████████████████████████████

3 ████████████████████████████████████

4 • At the deposition of Liliana Martinez, a Mattel designer, MGA asked

5 for her date and place of birth and the date of her marriage, along with

6 questions about her salary.[55]

7 • At the deposition of Fred Kawashima, a Mattel employee, MGA asked

8 him questions about his background going back to the 1980 time period.[56]

9 • ████████████████████████████████

10 ████████████████████████████████████████████

11 ████████████████████████████████████████

12 ████████████████████████████████████

13 ████████████████████████████████████

14 ████████████████████████████████████████████

15 ████████████████████████████████

16    Plainly, if such questioning was not abusive, overly intrusive, harassing or

17 otherwise improper, the far briefer, far less invasive questioning of Mr. Neman

18 could not be either. To the contrary, MGA's own questioning of witnesses reflects

19 that a broad array of background information about a witness is appropriately

20 discoverable, especially since attorneys cannot know the answer to such questions

---

[54]   Deposition Transcript of Tina Varu, dated April 8, 2008, at 13-19, Kidman Decl. Exh. 29.

[55]   Deposition Transcript of Liliana Martinez, dated May 20, 2005, at 14, 17-18, 224, Kidman Decl. Exh. 18.

[56]   Deposition Transcript of Fred Kawashima, dated January 17, 2007, at 44:13-45:4, Kidman Decl. Exh. 19.

[57]   Deposition Transcript of Timothy Kilpin, dated January 25, 2008, at 15-26, 106-107, Kidman Decl. Exh. 20.

[58]   Deposition Transcript of Joni Pratte, dated June 1, 2007, at 114-124, Kidman Decl. Exh. 21.

1  until they are asked and cannot necessarily know how the information will relate to

2  the case overall until the information is provided and the entire course of discovery

3  in the case is completed.

4         In sum, Mr. Kadisha's arguments -- and the Omni parties' counsel's

5  representations to the Discovery Master during the telephonic conference -- about

6  the Neman deposition are factually and legally frivolous.[59]   Indeed, they are

7  sanctionably so.

8

_____

9    [59]   Mr. Neman also was improperly instructed not to answer questions regarding

10  the payment of fees in connection with this case and the transactions at issue on

    purported privilege grounds.  Such information is clearly not privileged.  See United

11  States v. Blackman, 72 F.3d 1418, 1424 (9th Cir. 1995) ("client identity and the

12  nature of the fee arrangement between attorney and client are not protected from

    disclosure by the attorney-client privilege"); Clarke v. American Commerce Nat'l

13  Bank, 974 F.2d 127, 130 (9th Cir. 1992) ("Our decisions have recognized that the

14  identity of the client, the amount of the fee, the identification of payment by case

    file name, and the general purpose of the work performed are usually not protected

15  from disclosure by the attorney-client privilege."); In re Grand Jury Subpoenas, 803

16  F.2d 493, 499 (9th Cir. 1986) (reversing order quashing a subpoena and requiring

    attorneys to identify third parties paying their fees).  This is true regardless of

17  whether the client in question is a party to the lawsuit.  See, e.g., Blackman, 72 F.3d

18  at 1426 (holding that fee arrangements of non-party clients were not protected by

    the attorney-client privilege); Berger v. Seyfarth Shaw, LLP, 2008 WL 4570687, at

19  *1 (N.D. Cal. Oct. 14, 2008) (reversing and remanding Magistrate Judge's order

20  denying discovery of non-party's fee arrangement, because "consistent with federal

    privilege law, fee-payment arrangements are relevant to credibility and bias, and

21  discoverable"); SEC v. First Jersey Secs., Inc., 1990 WL 209246, at *2 (N.D. Cal.

22  Sept. 26, 1990) (holding that non-party's argument that his fee agreements with non-

23  party lawyer are subject to the attorney-client privilege "is flatly contradicted by the

    established Ninth Circuit rule").”  Indeed, the Court and the prior Discovery Master

24  also have held information regarding fee and indemnity agreements are not

25  privileged and discoverable because they are relevant to bias and credibility.  See

    Order Granting Mattel's Motion to Compel Documents, dated January 25, 2007, at

26  11-12, Kidman Decl. Exh. 23; Order Granting Mattel's Motion to Compel

27  Production of Documents and Interrogatory Responses by MGA, dated May 15,

    2007, at 10, Kidman Decl. Exh. 24; Order Granting in Part and Denying in Part

28  Mattel's Motion to Enforce the Court's Order of January 25, 2007, to Compel
         (footnote continued)

IV.    **MATTEL IS ENTITLED TO SANCTIONS**

There is no basis for Mr. Kadisha's *ex parte* application, either procedurally or substantively.  Mr. Kadisha has manufactured at the last minute the alleged urgency for his application -- filing it two days before a deposition that was noticed six months ago and that the Discovery Master has ordered three times since May -- in an effort to hinder Mattel's ability to fully respond or, at a minimum, further delay the deposition Mattel has been long seeking and was long ago compelled.  The application misstates the Discovery Master's prior Orders, fails to acknowledge and contradicts controlling authority in the form of the Court's and the Discovery Master's Orders regarding the expanded scope of the litigation in light of the filing of the TAAC, misrepresents the record from the Neman deposition and is contrary to precedent.

Other features of the application lack any legitimate factual basis.  Repeating a recent MGA brief, ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

_____

Production of Documents by Carter Bryant and for Sanctions, dated June 19, 2007, at 2-4, Kidman Decl. Exh. 25; Order Re Motions Heard on June 11, 2007, dated June 27, 2007, at 33-34, Kidman Decl. Exh. 26.  Mattel has initiated meet and confer discussions with Neman's counsel regarding these improper instructions not to answer.  See Letter from Scott B. Kidman to Todd E. Gordinier dated August 25, 2009, Kidman Decl. Exh. 27.  Absent an informal resolution, these improper instructions will be the subject of future motion practice.

1 ██████ Indeed, as both MGA and Mr. Kadisha fail to mention, ████████

2 █████████████████████████████████████████████

3    Further warranting sanctions is the fact that the Omni parties' counsel remains

4 undeterred in their campaign of groundless *ad hominem* attacks.  For example, not

5 only does he make false representations about "NHB" to smear Mattel, but Mr.

6 Kadisha again invokes <u>Walking Mountain</u>, even though it plainly has nothing to do

7 with depositions in this case.[61]  In fact, months ago, the Discovery Master counseled

8 against the Omni parties' baseless resort to this case, reminding them that "we're not

9 litigating that case" and of the impropriety of *ad hominem* statements.[62]  And, of

10 course, since that time, Judge Larson rebuked the Omni parties' counsel and MGA's

11 counsel for their "baseless" *ad hominem* attacks on a Court officer and Mattel.[63]

12 Because the Omni parties nevertheless have continued with this tactic in the face of

13 these clear warnings -- including in their misrepresentations to the Discovery Master

14 at the Neman deposition -- it is evident that monetary sanctions are now necessary to

15 deter such misconduct.

16    Sanctions may be imposed for filing a discovery motion that lacks substantial

17 justification and for improper resort to *ex parte* procedure.  <u>See</u> <u>Fed. R. Civ. P.</u> 37.

18 They also may be imposed under 28 U.S.C. §1927, which provides that "[a]ny

19 attorney . . . who so multiplies the proceedings in any case unreasonably and

20 vexatiously may be required by the court to satisfy personally the excess costs,

21 expenses, and attorneys' fees reasonably incurred because of such conduct."

22

---

23 [60]   <u>See</u> MGA's Motion Objecting to Discovery Master's March 17, 2008 Order,

24 dated March 31, 2008, at 6, Kidman Decl. Exh. 30.

25 [61]   Kadisha also miscites <u>Mattel, Inc. v. Goldberger Doll Mfg. Co.</u>, 236 F.R.D.

25 175 (S.D.N.Y. 2006).  He offers no cogent explanation of its application here ,

26 undoubtedly because it is irrelevant.

27 [62]   <u>See</u> March 4, 2009 Discovery Master Hearing Tr., at 56:20-58:4, Kidman

27 Decl. Exh. 22.

28 [63]   July 9, 2009 Order, at 10, Kidman Decl. Exh. 8.

Sanctions under this section are appropriate "for conduct that, viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court." <u>RTC v. Dabney</u>, 73 F.3d 262, 265 (10th Cir. 1995) (citing <u>Braley v. Campbell</u>, 832 F.2d 1504, 1512 (10th Cir. 1987)).  Mattel accordingly requests that Mr. Kadisha be ordered to pay $6,000 as partial reimbursement for the fees and costs that Mattel has incurred in bringing this motion.

### Conclusion

For the foregoing reasons, Mr. Kadisha's *ex parte* application should be denied in its entirety and Mattel should be awarded sanctions in the amount of $6,000.

DATED: August 26, 2009          QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By /s/ Michael T. Zeller
   Michael T. Zeller
   Attorneys for Mattel, Inc.

07975/3075591.1                          -22-