# EXHIBIT 1



QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 90378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware Corporation,<br><br>Defendant,<br><br><br>AND CONSOLIDATED CASES | CASE NO. CV 04-09049 SGL (RNBx)<br><br>Consolidated with Case Nos. CV 04-9059 and CV 05-2727<br><br>NOTICE OF DEPOSITION OF NEIL KADISHA<br><br>Date:   March 19, 2009<br>Time:   9:00 a.m.<br>Place.:  Quinn Emanuel Urquhart Oliver<br>       & Hedges<br>       865 S. Figueroa St., 10th Floor<br>       Los Angeles, CA 90017<br><br>**Phase 2:**<br>Discovery Cut-off:    Dec. 11, 2009<br>Pre-trial Conference: Mar. 1, 2010<br>Trial Date:         Mar. 23, 2010 |

**EXHIBIT** I

**PAGE** _____ 4

2-95

07975/2800453.1

NOTICE OF DEPOSITION

1　　TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2　　　　　PLEASE TAKE NOTICE that Mattel, Inc. will take the deposition of

3　Neil Kadisha on March 19, 2009 beginning at 9:00 a.m., at the offices of Quinn

4　Emanuel Urquhart Oliver & Hedges, LLP, 865 S. Figueroa St., Los Angeles, CA

5　90017.

6　　　　　PLEASE TAKE FURTHER NOTICE that the deposition will take

7　place upon oral examination before a duly authorized notary public or other officer

8　authorized to administer oaths at depositions, and will continue from day to day,

9　Sundays, Saturdays and legal holidays excepted, until completed.

10　　　　　PLEASE TAKE FURTHER NOTICE that, pursuant to Fed. R. Civ. P.

11　30(b)(2), the deposition will be videotaped. Mattel also reserves the right to use

12　Livenote or other technology for real-time transcription of the testimony.

13

14　DATED: February 25, 2009　　　　QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

15

16

17　　　　　　　　　　　　　　By /s/ Jon D. Corey
　　　　　　　　　　　　　　　　Jon D. Corey
18　　　　　　　　　　　　　　　Attorneys for Mattel, Inc.

19

20

21

22

23

24

25

26

27　EXHIBIT 1

28　PAGE 5

NOTICE OF DEPOSITION

1

2 | QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
3 |   John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
4 |   Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
5 |   Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
6 | 865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
7 | Telephone: (213) 443-3000
Facsimile: (213) 443-3100

8 Attorneys for Mattel, Inc.

9 UNITED STATES DISTRICT COURT

10 CENTRAL DISTRICT OF CALIFORNIA

11 EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
|     Plaintiff, | Consolidated with:<br>Case No. CV 04-09039<br>Case No. CV 05-02727 |
|     vs. | |
| MATTEL, INC., a Delaware corporation, | **PROOF OF SERVICE** |
|     Defendant. | |
| AND CONSOLIDATED ACTIONS | |

EXHIBIT __1__

PAGE ____6____

1
## PROOF OF SERVICE

2       I am employed in the County of Los Angeles, State of California. I am over

3   the age of eighteen years and not a party to the within action; my business address is

4   865 South Figueroa Street, 10th Floor, Los Angeles, California 90017.

5       On February 25, 2009, I served true copies of the following documents

6   described as:

7       **NOTICE OF DEPOSITION OF NEIL KADISHA**

8       **[CORRECTED] NOTICE OF SUBPOENA ISSUED TO NEIL KADISHA**

9   on the parties in this action as follows:

| | |
|---|---|
| 10 Bingham McCutchen, LLP | **Attorneys for the Omni Parties** |
| 11 Todd E. Gordinier, Esq.<br>600 Anton Boulevard 18th Floor | |
| Costa Mesa, CA 92626-1924 | |
| 12 todd.gordinier@bingham.com | Telephone: 714.830.0622<br>Facsimile: 714.830.0717 |
| 13 Skadden, Arps, Slate, Meagher &<br>Flom LLP | **Attorneys for the MGA Parties** |
| 14 Thomas J. Nolan, Esq.<br>300 South Grand Avenue, Suite 3400 | |
| 15 Los Angeles, CA 90071 | |
| tnolan@skadden.com | Telephone: 213.687.5000 |
| 16 | Facsimile: 213.687.5600 |
| Glaser, Weil, Fink, Jacobs, & Shapiro, | **Attorneys for the MGA Parties** |
| 17 LLP | |
| Patricia L. Glaser, Esq. | |
| 18 10250 Constellation Blvd 19th Floor | |
| Los Angeles, CA 90067 | Telephone: 310.553.3000 |
| 19 pglaser@glaserweil.com | Facsimile: 310.556.2920 |
| 20 Mitchell, Silberberg, & Knupp, LLP | **Attorneys for the MGA Parties** |
| 21 Russell J. Frackman, Esq.<br>11377 W. Olympic Blvd. | |
| Los Angeles, CA 90064 | |
| 22 rjf@msk.com | Telephone: 310.312.2000 |
| | Facsimile: 310.312.3100 |
| 23 | |
| Overland Borenstein Scheper & Kim | **Attorneys for Carlos Gustavo** |
| 24 LLP | **Machado Gomez** |
| Mark E. Overland, Esq. | |
| 25 Alexander H. Cote, Esq. | |
| 601 W. 5th Street, 12th Floor | |
| 26 Los Angeles, CA 90017 | (Via Mail Only) |
| moverland@obsklaw.com | |
| 27 acote@obsklaw.com | |
| Peter H. Bonis Law Offices | **Attorney for Carter Bryant** |

28

EXHIBIT ___ Case No. CV 04-9049 SGL (RNBx)
PROOF OF SERVICE

PAGE____ 7

| Peter H. Bonis<br>1990 N. California Blvd.<br>8th Floor<br>Walnut Creek, CA 94596 | (Via Mail Only) |

**BY MAIL:** I am "readily familiar" with the practices of Quinn Emanuel Urquhart Oliver & Hedges for collecting and processing correspondence for mailing with the United States Postal Service. Under that practice, it would be deposited with the United States Postal Service that same day in the ordinary course of business. I enclosed the foregoing in sealed envelope(s) addressed as shown above, and such envelope(s) were placed for collection and mailing with postage thereon fully prepaid at Los Angeles, California, on that same day following ordinary business practices.

**BY FACSIMILE:** At or before 6:00 pm, on February 25, 2009, I caused said document(s) to be transmitted by facsimile pursuant to Federal Rule of Civil Procedure 5(b)(2)(d). The telephone number of the sending facsimile machine was (213) 443-3100. The name(s) and facsimile machine telephone number(s) of the person(s) served are set forth in the service list. The document was transmitted by facsimile transmission, and the sending facsimile machine properly issued a transmission report confirming that the transmission was complete and without error.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on February 25, 2009, at Los Angeles, California.

Rebecca Ramos

07975/2804047.2

EXHIBIT 1

Case No. CV 04-9049 SGL (RNBx)
PROOF OF SERVICE

PAGE 8

°, AO88 (Rev. 12/07) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

CENTRAL          CALIFORNIA

CARTER BRYANT, an individual,

### SUBPOENA IN A CIVIL CASE

V.

MATTEL, INC., a Delaware corporation,

Case Number: $^{1}$ CV 04-9049 SGL (RNBx)
Consolidated with cases CV 04-9059
and 05-2727

TO: Neil Kadisha
9420 Wilshire Blvd. Suite 400
Beverly Hills, CA 90212

    YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  |  |
|  | DATE AND TIME |

X YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| Quinn Emanuel Urquhart Oliver & Hedges, LLP | March 19, 2009 |
| 865 S. Figueroa Street, 10th Floor, Los Angeles, CA 90017 | 9:00 a.m. |

X    YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Attachment A

| PLACE | DATE AND TIME |
|---|---|
| Quinn Emanuel Urquhart Oliver & Hedges, LLP | March 12, 2009 |
| 865 S. Figueroa Street, 10th Floor | 9:00 a.m. |
| Los Angeles, CA 90017 |  |

    YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |
|  |  |

    Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rule of Civil Procedure 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| /sh Corey /sh Attorney for Plaintiff, Mattel, Inc. | February 25, 2009 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Jon Corey, QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
865 S. Figueroa Street, 10th Floor, Los Angeles, CA 90017 (213) 443-3000

(See Federal Rule of Civil Procedure 45 (c), (d), and (e), on next page)

$^{1}$ If action is pending in district other than district of issuance, state district under case number.

AO-88

EXHIBIT 1
PAGE 9

AO88  (Rev. 12/07) Subpoena in a Civil Case (Page 2)

## PROOF OF SERVICE

| DATE | PLACE |
|------|-------|

**SERVED**

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|------------------------|-------------------|

| SERVED BY (PRINT NAME) | TITLE |
|------------------------|-------|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                    DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Federal Rule of Civil Procedure 45 (c), (d), and (e), as amended on December 1, 2007:

(c) PROTECTING A PERSON SUBJECT TO A SUBPOENA.
   (1) Avoiding Undue Burden or Expense; Sanctions. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.
   (2) Command to Produce Materials or Permit Inspection.
      (A) Appearance Not Required. A person commanded to produce documents, not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
      (B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
         (i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.
         (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.
   (3) Quashing or Modifying a Subpoena.
      (A) When Required. On timely motion, the issuing court must quash or modify a subpoena that:
         (i) fails to allow a reasonable time to comply;
         (ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;
         (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
         (iv) subjects a person to undue burden.
      (B) When Permitted. To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:
         (i) disclosing a trade secret or other confidential research, development, or commercial information;
         (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or
         (iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial
      (C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

         (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
         (ii) ensures that the subpoenaed person will be reasonably compensated.
(d) DUTIES IN RESPONDING TO A SUBPOENA.
   (1) Producing Documents or Electronically Stored Information. These procedures apply to producing documents or electronically stored information:
      (A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
      (B) Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
      (C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.
      (D) Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
   (2) Claiming Privilege or Protection.
      (A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
         (i) expressly make the claim; and
         (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
      (B) Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT.
   The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

EXHIBIT  1

PAGE _____

## ATTACHMENT A

1. All documents referring or relating to agreements, contracts or transactions between Omni 808 Investors, LLC, or any subsidiary or affiliate of Omni 808 Investors, LLC (hereinafter, collectively, "Omni 808"), and MGA Entertainment, Inc., or any subsidiary or affiliate of MGA Entertainment, Inc. (hereinafter, collectively, "MGA"), and any amendments or modifications thereto, any alleged defaults thereunder, and any communications referring or relating to any such agreements, contracts or transactions.

2. All documents referring or relating to agreements, contracts or transactions between OmniNet Capital, LLC, or any subsidiary or affiliate of OmniNet Capital, LLC (hereinafter, collectively, "OmniNet"), and MGA, and any amendments or modifications thereto, any alleged defaults thereunder and any communications referring or relating to any such agreements, contracts or transactions.

3. All documents referring or relating to agreements, contracts or transactions between Lexington Financial, LLC, or any subsidiary or affiliate of Lexington Financial, LLC (hereinafter, collectively, "Lexington Financial"), and MGA, and any amendments or modifications thereto, any alleged defaults thereunder, and any communications referring or relating to any such agreements, contracts or transactions.

4. All documents referring or relating to agreements, contracts or transactions between Vision Capital, LLC, True Vision Capital Management, LLC, or any subsidiary or affiliate of Vision Capital, LLC and/or True Vision Capital Management, LLC (hereinafter, collectively, "Vision Capital"), and MGA, and any amendments or modifications thereto, any alleged defaults thereunder, and any communications referring or relating to any such agreements, contracts or transactions.

5. All documents referring or relating to agreements, contracts or transactions between Vision Capital and Lexington Financial, and any amendments or modifications thereto, any alleged defaults thereunder, and any communications referring or relating to any such agreements, contracts or transactions.

6. All documents referring or relating to agreements, contracts or transactions between Omni 808 and Lexington Financial and/or Vision Capital, and any amendments or modifications thereto, any alleged defaults thereunder, and any communications referring or relating to any such agreements, contracts or transactions.

7. All documents referring or relating to agreements, contracts or transactions between OmniNet and Vision Capital and/or Lexington Financial, and any amendments or modifications thereto, any alleged defaults thereunder, and any communications referring or relating to any such agreements, contracts or transactions.

1

EXHIBIT 1

PAGE 11

8. All documents referring or relating to agreements, contracts or transactions between Wachovia, or any subsidiary or affiliate of Wachovia, and Omni 808, Vision Capital or Lexington Financial and any amendments or modifications thereto, any alleged defaults thereunder and any communications referring or relating to any such agreements, contracts or transactions.

9. All documents referring or relating to agreements, contracts or transactions between Wachovia, or any subsidiary or affiliate of Wachovia, and OmniNet, and any amendments or modifications thereto, any alleged defaults thereunder and any communications referring or relating to any such agreements, contracts or transactions.

10. All documents containing financial information, including but not limited to historical and prospective financial performance, provided by MGA to Omni 808, OmniNet, Lexington Financial or Vision Capital since January 1, 2007.

11. Documents sufficient to identify (a) each member, managing member, holder of any ownership interest in, shareholder, officer and director of Omni 808 and (b) the dates of such person's affiliation with Omni 808.

12. Documents sufficient to identify (a) each member, managing member, holder of any ownership interest in, shareholder, officer and director of Vision Capital and (b) the dates of such person's affiliation with Vision Capital.

13. Documents sufficient to identify (a) each member, managing member, holder of any ownership interest in, shareholder, officer and director of Lexington Financial and (b) the dates of such person's affiliation with Lexington Financial.

14. All documents referring or relating to the formation and governance of Omni 808.

15. All documents referring or relating to the formation and governance of Vision Capital, including documents identifying (a) each person involved in retaining, hiring or engaging or who otherwise communicated with Delaware Corporations LLC, and (b) any bank accounts, credit cards or other financial instruments used in connection with the activities set forth in (a).

16. All documents referring or relating to the formation and governance of Lexington Financial, including documents identifying (a) each person involved in retaining, hiring or engaging or who otherwise communicated with Trust Services (Nevis) Limited, (b) each person involved in procuring, retaining, hiring or engaging or who otherwise communicated with the office that Lexington purportedly set up at 33-35 Daws Lane in London and (c) any bank accounts, credit cards or other financial instruments used in connection with the activities set forth in (a) and/or (b).

17. All documents detailing or setting forth the relationship between Omni 808 and OmniNet, if any.

2

EXHIBIT ___1___

PAGE ___12___

18. All documents detailing or setting forth the relationship between Omni 808 and Vision Capital or Lexington Financial, if any.

19. All documents detailing or setting forth the relationship between OmniNet and Vision Capital or Lexington Financial, if any.

20. All documents detailing or setting forth the relationship between Omni 808 and MGA, if any.

21. All documents detailing or setting forth the relationship between OmniNet and MGA, if any.

22. All documents detailing or setting forth the relationship between MGA and Vision Capital or Lexington Financial, if any.

23. All documents detailing or setting forth the relationship between Lexington Financial and Vision Capital, if any.

24. All documents detailing or setting forth the relationship between Omni 808 and Isaac Larian or his family members, if any. As used in these Requests, "family members" of Isaac Larian include without limitation Farhad Larian, Angela Larian (formerly Neman), Morad Zarabi, any other member of the Larian, Neman or Zarabi families or any entities that any of the foregoing own, have an interest in or control.

25. All documents detailing or setting forth the relationship between OmniNet and Isaac Larian or his family members, if any.

26. All documents detailing or setting forth the relationship between Lexington Financial or Vision Capital and Isaac Larian or his family members, if any.

27. All documents referring or relating to the source of funding or credit for Lexington Financial or Vision Capital.

28. All documents referring or relating to the source of funding or credit for Omni 808.

29. All documents referring or relating to the source of funding or credit for MGA.

30. All documents referring or relating to all contributions, loans and any sources of funding or credit for Omni 808 during the last twelve months, including but not limited to agreements and/or contracts supporting these transactions.

3

EXHIBIT ____

PAGE ____ 13

31.    All documents showing detail of loan facilities for Omni 808 with an indication of creditor and relevant terms referring or relating to MGA, OmniNet, Omni 808, Vision Capital, Lexington Financial, Isaac Larian or his family members.

32.    All documents referring or relating to transactions involving any compensation, loans, advances, payments, fees or any other form of consideration paid by Omni 808 to Isaac Larian, his family members, or affiliates, or any other related party, including MGA.

33.    All documents referring or relating to transactions involving any compensation, loans, advances, payments, fees or any other form of consideration paid by OmniNet to Isaac Larian, his family members, or affiliates, or any other related party, including MGA.

34.    All documents referring or relating to transactions involving any compensation, loans, advances, payments, fees or any other form of consideration paid by Vision Capital to Omni 808, OmniNet, Lexington Capital, Isaac Larian, his family members, or affiliates, or any other related party, including MGA.

35.    All documents referring or relating to transactions involving any compensation, loans, advances, payments, fees or any other form of consideration paid by Lexington Financial to Vision Capital, Omni 808, OmniNet, Isaac Larian, his family members, or affiliates, or any other related party, including MGA.

36.    Any and all records that substantiate transfers of assets by Omni 808 to other entities, individuals, and/or parties, within the U.S. and outside of the U.S.

37.    Any and all records that substantiate transfers of assets by Vision Capital to other entities, individuals, and/or parties, within the U.S. and outside of the U.S.

38.    Any and all records that substantiate transfers of assets by Lexington Financial to other entities, individuals, and/or parties, within the U.S. and outside of the U.S.

39.    All communications referring or relating to Omni 808, OmniNet, Vision Capital, Lexington Financial, Mattel, MGA, Isaac Larian, any entity or business owned or controlled by Isaac Larian or his family members, Fred Mashian and/or Bratz.

40.    All documents referring or relating to any contract, transaction or relationship between, on the one hand, Omni 808, OmniNet, Vision Capital and/or Lexington Financial, and, on the other hand, Isaac Larian or his family members.

41.    All documents relating to the U.C.C. financing statements and amendments attached as Exhibit 1.

4

EXHIBIT 1

PAGE 14

42.     Documents sufficient to show each and every entity or business in which you have an interest or role or over which you have control and in which Isaac Larian, or his family members, have any interest or role or over which Isaac Larian, or his family members, have control.

43.     All documents referring or relating to any transfer, payment, credit, loan or indebtedness to, from or by Isaac Larian, his family members, or any entity or business which Isaac Larian or his family members own, have an interest in or control and that also involves you, or any entity or business that you own, have an interest in or control.

44.     To the extent not produced in response to any other Request, documents sufficient to show the nature, extent and timing of your relationship to or with Isaac Larian, his family members, or any entity or business owned or controlled by Isaac Larian or his family members.

5

EXHIBIT ____

PAGE ____ 15

# EXHIBIT 1

EXHIBIT 1

PAGE 16

06-7090318014

10/30/2006 16:46

FILED
CALIFORNIA
SECRETARY OF STATE

S05

102148300082   UCC 1 FILING

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**UCC FINANCING STATEMENT**

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]
Ann Jones, Paralegal (404) 881-7563

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

CT Corporation System
2295 Gateway Oaks Drive
Ste 185
Sacramento CA 95833

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| MGA Entertainment Inc. | | | | |

OR

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 16380 Roscoe Blvd, Suite 200 | Van Nuys | CA | 91406 | USA |

| 1d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| 95-3726898 | | Corporation | California | CA C1068282 | □ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| | | | | |

OR

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 2d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| | | | | | □ NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Wachovia Bank, National Association, as Agent | | | | |

OR

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| One South Broad Street, PA 4830 | Philadelphia | PA | 19107 | |

4. This FINANCING STATEMENT covers the following collateral:

All of the Debtor's right, title and interest in now owned or hereafter acquired accounts, inventory, related assets and proceeds thereof, all as more particularly described on Exhibit A attached hereto.

| 5. ALTERNATIVE DESIGNATION [if applicable]: | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|

| 6. This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) | | All Debtors | Debtor 1 | Debtor 2 |
|---|---|---|---|---|---|
| Attach Addendum [if applicable] | [ADDITIONAL FEE] [optional] | | | | |

8. OPTIONAL FILER REFERENCE DATA
File with California Secretary of State                                    MN1670FP45-3

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 07/29/98)
Gardner 19510/31543R

EXHIBIT ___

PAGE ___   17

## Exhibit A

| | |
|---|---|
| Debtor: | Secured Party: |
| MGA Entertainment Inc. | Wachovia Bank, National Association, as Agent |
| 16380 Roscoe Blvd., Suite 200 | One South Broad Street, PA 4830 |
| Van Nuys, California 91406 | Philadelphia, Pennsylvania 19107 |

All of Debtor's right, title and interest to and under all of the following property, whether now owned or hereafter acquired by Debtor or in which Debtor now has or at any time in the future may acquire any right, title or interest, and whether now existing or hereafter arising:

(i)   all Accounts;

(ii)  all Inventory;

(iii) all Documents relating to Inventory;

(iv)  all books and records pertaining to any property described in this definition;

(v)   all Supporting Obligations pertaining to any property described in this definition; and

(vi)  to the extent not otherwise included, all Proceeds.

Terms used herein without definition that are defined in the UCC have the respective meanings given them in the UCC and if defined in more than one article of the UCC, such terms shall have the meaning defined in Article 9 of the UCC.

As used herein:

"Proceeds" means all proceeds (including proceeds of proceeds) of any of the Collateral including all: (i) rights, benefits, distributions, premiums, profits, dividends, interest, cash, Instruments, Documents, Accounts, contract rights, Inventory, Equipment, General Intangibles, Payment Intangibles, Deposit Accounts, Chattel Paper, and other property from time to time received, receivable, or otherwise distributed in respect of or in exchange for, or as a replacement of or a substitution for, any of the Collateral, or proceeds thereof, (ii) "proceeds," as such term is defined in Section 9-102(a)(64) of the UCC; (iii) proceeds of any insurance, indemnity, warranty, or guaranty (including guaranties of delivery) payable from time to time with respect to any of the Collateral, or proceeds thereof; and (iv) payments (in any form whatsoever) made or due and payable to Debtor from time to time in connection with any requisition, confiscation, condemnation, seizure or forfeiture of all or any part of the Collateral, or proceeds thereof.

"UCC" means the Uniform Commercial Code as from time to time in effect in the State of New York; provided, however, to the extent that, by reason of mandatory provisions of law, any of the attachment, perfection, or priority of, or remedies with respect to, the Secured Party's security interest in any Collateral is governed by the Uniform Commercial Code as in effect in a jurisdiction other than the State of New York, the term "UCC" shall mean the Uniform Commercial Code as in effect in such other jurisdiction solely for purposes of the provisions hereof relating to such attachment, perfection, priority or remedies and for purposes of definitions related to such provisions.

A - 1

EXHIBIT ____

PAGE ____ 18

08-71714105
09/09/2008 16:03

FILED
CALIFORNIA
SECRETARY OF STATE
SOS

18335690003  UCC 1 FILING

## UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER (optional)**

**B. SEND ACKNOWLEDGMENT TO: (Name and Address)**

CL@S
accuse time 1031eAm1Qus

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE # **06-7090318014**    10/30/06    1b. This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.

2. ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☒ **ASSIGNMENT (full):** Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

5. **AMENDMENT (PARTY INFORMATION):** This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

☐ CHANGE name and/or address: Give current record name in item 6a or 6b; also give new name (if name change) in item 7a or 7b and/or new address (if address change) in item 7c.  ☐ DELETE name: Give record name to be deleted in item 6a or 6b.  ☐ ADD name: Complete item 7a or 7b, and item 7c; also complete items 7d-7g (if applicable).

6. **CURRENT RECORD INFORMATION:**

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

7. **CHANGED (NEW) OR ADDED INFORMATION:**

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR **OMNI 808 Investors LLC, as Agent** | | | |
| 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 9420 Wilshire Blvd., Suite 400 | Beverly Hills | CA | 90212 | USA |

| 7d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION Limited Liability Company | 7f. JURISDICTION OF ORGANIZATION California | 7g. ORGANIZATIONAL ID #, if any ☐ NONE |
|---|---|---|---|---|

8. **AMENDMENT (COLLATERAL CHANGE):** check only one box.
Describe collateral ☐ deleted ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

9. **NAME of SECURED PARTY of RECORD AUTHORIZING THIS AMENDMENT** (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR **Wachovia Bank, National Association, as Agent** | | | |
| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

10. **OPTIONAL FILER REFERENCE DATA**
Debtor: MGA Entertainment Inc.    CA-SOS

FILING OFFICE COPY – NATIONAL UCC FINANCING STATEMENT AMENDMENT (FORM UCC 3) (REV. 07/29/00)

N724-10923.1/J001762 0000308273

EXHIBIT **1**

PAGE _____ **19**

06-7090318135
10/30/2006 16:46

FILED
CALIFORNIA
SECRETARY OF STATE
SOS

10214848882   UCC 1 FILING

**UCC FINANCING STATEMENT**
FOLLOW INSTRUCTIONS (front and back) CAREFULLY
A. NAME & PHONE OF CONTACT AT FILER [optional]
Ann Jones, Paralegal (404) 881-7563
B. SEND ACKNOWLEDGMENT TO: (Name and Address)

CT Corporation System
2295 Gateway Oaks Drive
Ste 185
Sacramento CA 95833

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| MGA Entertainment Inc. | | | | |
| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 1c. MAILING ADDRESS 16380 Roscoe Blvd., Suite 200 | CITY Van Nuys | STATE CA | POSTAL CODE 91406 | COUNTRY USA |
| 1d. TAX ID #: SSN OR EIN 95-3726898 | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION Corporation | 1f. JURISDICTION OF ORGANIZATION California | 1g. ORGANIZATIONAL ID #, if any CA C1068282 ☐ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Wachovia Bank, National Association, as Agent | | | | |
| 3c. MAILING ADDRESS One South Broad Street, PA 4830 | CITY Philadelphia | STATE PA | POSTAL CODE 19107 | COUNTRY |

4. This FINANCING STATEMENT covers the following collateral:

All of the Debtor's right, title and interest in the following, whether now owned or hereafter acquired: (a) subject to the limitation set forth in Exhibit A attached hereto, equity interests in MGA Entertainment Sweden AB, MGA Entertainment Benelux, SPRL, MGA Entertainment Germany, GmbH, MGA Entertainment UK, Limited, MGA Entertainment Iberia, S.L., MGA Entertainment (France) SARL and MGA Entertainment (Canada) Company, (b) equity interests in MGA Entertainment Music, Inc., MGA Entertainment Productions, Inc., MGA Entertainment (Mexico) Inc. and MGA International, Inc., (c) related assets and (d) proceeds thereof, all as more particularly described on Exhibit A attached hereto.

File with California Secretary of State

MN6768PY5-5

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 07/29/98)
Gardner 19513/315438

EXHIBIT ___
PAGE ___ 20

1021484000002

## Exhibit A

Debtor:
MGA Entertainment Inc.
16380 Roscoe Blvd., Suite 200
Van Nuys, California 91406

Secured Party:
Wachovia Bank, National Association, as Agent
One South Broad Street, PA 4830
Philadelphia, Pennsylvania 19107

All of Debtor's right, title and interest in, to and under the following (collectively, the "Collateral"):

(a)   all Equity Interests now or hereafter acquired or held by Debtor in the issuers (each an "Issuer") described in Schedule 1 attached hereto;

(b)   all payments due or to become due to Debtor in respect of any of the foregoing;

(d)   all of Debtor's claims, rights, powers, privileges, authority, puts, calls, options, security interests, liens and remedies, if any, in respect of any of the foregoing;

(e)   all of Debtor's rights to exercise and enforce any and every right, power, remedy, authority, option and privilege of Debtor relating to any of the foregoing including, without limitation, any power to (i) terminate, cancel or modify any agreement, (ii) execute any instruments and to take any and all other action on behalf of and in the name of Debtor in respect of any of the foregoing and the applicable Issuer thereof, (iii) exercise voting rights or make determinations, (iv) exercise any election (including, but not limited to, election of remedies), (v) exercise any "put", right of first offer or first refusal, or other option, (vi) exercise any right of redemption or repurchase, (vii) give or receive any notice, consent, amendment, waiver or approval, (viii) demand, receive, enforce, collect or receipt for any of the foregoing, (ix) enforce or execute any checks, or other instruments or orders, and (x) file any claims and to take any action in connection with any of the foregoing;

(f)   all certificates and instruments representing or evidencing any of the foregoing;

(g)   all other rights, titles, interests, powers, privileges and preferences pertaining to any of this foregoing; and

(h)   all Proceeds of any of the foregoing.

Notwithstanding the foregoing, in the case of an Issuer that is a Foreign Subsidiary, Debtor has only granted a security interest in (x) 65% (or such greater percentage that, due to a change in an applicable law after October 27, 2006, (A) could not reasonably be expected to cause the undistributed earnings of such Foreign Subsidiary as determined for United States federal income tax purposes to be treated as a deemed dividend to such Foreign Subsidiary's United States parent and (B) could not reasonably be expected to cause any material adverse tax consequences) of the issued and outstanding Equity Interest of such Foreign Subsidiary entitled to vote (within the meaning of Treas. Reg. Section 1.956-2(c)(2)) and (y) 100% of the issued and outstanding Equity Interest of such Foreign Subsidiary not entitled to vote (within the meaning of Treas. Reg. Section 1.956-2(c)(2)).

EXHIBIT ___1___

PAGE ___21___

As used herein:

"Equity Interest" means, with respect to any Person, any share of capital stock of (or other ownership interests in) such Person, any warrant, option or other right for the purchase or other acquisition from such Person of any share of capital stock of (or other ownership interests in) such Person, any security convertible into or exchangeable for any share of capital stock of (or other ownership interests in) such Person or warrant, right or option for the purchase or other acquisition from such Person of such shares (or such other ownership interests), and any other ownership interest in such Person (including, without limitation, partnership, member or trust interests therein), whether voting or nonvoting; and whether or not such share, warrant, option, right or other interest is authorized or otherwise existing on any date of determination.

"Foreign Subsidiary" means an Issuer that is not incorporated or organized under the laws of any state of the United States or the District of Columbia.

"Person" means an individual, corporation, partnership, limited liability company, association, trust or unincorporated organization, or a government or any agency or political subdivision thereof.

"Proceeds" means all proceeds (including proceeds of proceeds) of any of the Collateral including all: (a) rights, benefits, distributions, premiums, profits, dividends, interest, cash, instruments, documents of title, accounts, contract rights, inventory, equipment, general intangibles, payment intangibles, deposit accounts, chattel paper, and other property from time to time received, receivable, or otherwise distributed in respect of or in exchange for, or as a replacement of or a substitution for, any of the Collateral, or proceeds thereof (including any cash, Equity Interests, or other instruments issued after any recapitalization, readjustment, reclassification, merger or consolidation with respect to the Issuers and any security entitlements, as defined in Section 8-102(a)(17) of the UCC, with respect thereto); (b) "proceeds," as such term is defined in Section 9-102(a)(64) of the UCC; (c) proceeds of any insurance, indemnity, warranty, or guaranty (including guaranties of delivery) payable from time to time with respect to any of the Collateral, or proceeds thereof; and (d) payments (in any form whatsoever) made or due and payable to Debtor from time to time in connection with any requisition, confiscation, condemnation, seizure or forfeiture of all or any part of the Collateral, or proceeds thereof.

EXHIBIT 1

PAGE 22

SCHEDULE 1

MGA Entertainment Inc
Pledged Equity Interests:

| Issuer | Jurisdiction of Formation | Class of Equity Interest | Certificate Number (If any) | Percentage of Ownership |
|---|---|---|---|---|
| MGA Entertainment Sweden AB | Sweden | Shares | N/A | 65% |
| MGA Entertainment Benelux, SPRL | Belgium | Shares | N/A | 65% |
| MGA Entertainment Germany, GmbH | Germany | Shares | N/A | 65% |
| MGA Entertainment UK, Limited | United Kingdom | Shares | 2 | 65% |
| MGA Entertainment Iberia, S.L. | Spain | Shares Participaciones Sociales | N/A | 65% |
| MGA Entertainment (France) SARL | France | Shares Parts Sociales | N/A | 65% |
| MGA Entertainment (Canada) Company | Canada | Shares Common Stock | 2 | 65% |
| MGA Entertainment Music, Inc. | California | Shares Common Stock | 1 | 100% |
| MGA Entertainment Productions, Inc. | California | Shares Common Stock | 1 | 100% |
| MGA Entertainment (Mexico) Inc. | California | Shares Common Stock | 1 | 100% |
| MGA International, Inc. | California | Shares Common Stock | 1 | 100% |

10214840002

EXHIBIT 1

PAGE 23

**07-71137423**

**05/14/2007 11:35**

**FILED**
CALIFORNIA
SECRETARY OF STATE
SOS

**UCC FINANCING STATEMENT AMENDMENT**

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER (optional)
Ann Jones, Paralegal (404) 881-7563

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

┌ UCC Direct Services
  1232 Q St
  Sacramento CA 95814
  Account 10010537
└ CDD

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE # | 1b. This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. |
|---|---|
| 05-7090318135 filed 10/30/06 | |

2. ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☐ **ASSIGNMENT (full or partial):** Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

5. **AMENDMENT (PARTY INFORMATION):** This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.
☐ CHANGE name and/or address: Give current record name in item 6a or 6b; also give new name (if name change) in item 7a or 7b and/or new address (if address change) in item 7c. ☐ DELETE name: Give record name to be deleted in item 6a or 6b. ☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7d-7g (if applicable).

6. **CURRENT RECORD INFORMATION:**
| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

7. **CHANGED (NEW) OR ADDED INFORMATION:**
| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 7d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any | ☐ NONE |

8. **AMENDMENT (COLLATERAL CHANGE):** check only one box.
Describe collateral ☐ deleted or ☐ added, or give entire ☒ restated collateral description, or described collateral ☐ assigned.

All of the Debtor's right, title and interest in the following, whether now owned or hereafter acquired: (a) subject to the limitation set forth in Exhibit A attached hereto, equity interests in MGA Entertainment Sweden AB, MGA Entertainment Benelux, SPRL, MGA Entertainment Germany, GmbH, MGA Entertainment UK, Limited, MGA Entertainment Iberia, S.L., MGA Entertainment (France) SARL and MGA Entertainment (Canada) Company, (b) equity interests in MGA Entertainment Music, Inc., MGA Entertainment Productions, Inc., MGA Entertainment (Mexico) Inc. and The Little Tikes Company, (c) related assets and (d) proceeds thereof, all as more particularly described on Exhibit A attached hereto,

9. **NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT** (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.
| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Wachovia Bank, National Association, as Agent | | | |
| OR 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

10. **OPTIONAL FILER REFERENCE DATA**
File with California Secretary of State; Debtor Name: MGA Entertainment Inc.   69264889 SD   JBM

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 07/29/98)
Gardere | 9513/315438

EXHIBIT _____ 24

PAGE _____

12649558084

## Exhibit A

Debtor:                                          Secured Party:
MGA Entertainment Inc.                           Wachovia Bank, National Association, as Agent
16380 Roscoe Blvd., Suite 200                    One South Broad Street, PA 4830
Van Nuys, California 91406                       Philadelphia, Pennsylvania 19107

All of Debtor's right, title and interest in, to and under the following (collectively, the "Collateral"):

(a)     all Equity Interests now or hereafter acquired or held by Debtor in the Issuers (each an "Issuer") described in Schedule 1 attached hereto;

(b)     all payments due or to become due to Debtor in respect of any of the foregoing;

(c)     all of Debtor's claims, rights, powers, privileges, authority, puts, calls, options, security interests, liens and remedies, if any, in respect of any of the foregoing;

(d)     all of Debtor's rights to exercise and enforce any and every right, power, remedy, authority, option and privilege of Debtor relating to any of the foregoing including, without limitation, any power to (i) terminate, cancel or modify any agreement, (ii) execute any instruments and to take any and all other action on behalf of and in the name of Debtor in respect of any of the foregoing and the applicable Issuer thereof, (iii) exercise voting rights or make determinations, (iv) exercise any election (including, but not limited to, election of remedies), (v) exercise any "put", right of first offer or first refusal, or other option, (vi) exercise any right of redemption or repurchase, (vii) give or receive any notice, consent, amendment, waiver or approval, (viii) demand, receive, enforce, collect or receipt for any of the foregoing, (ix) enforce or execute any checks, or other instruments or orders, and (x) file any claims and to take any action in connection with any of the foregoing;

(e)     all certificates and instruments representing or evidencing any of the foregoing;

(f)     all other rights, titles, interests, powers, privileges and preferences pertaining to any of the foregoing; and

(g)     all Proceeds of any of the foregoing.

Notwithstanding the foregoing, (x) in no event shall the Debtor be required to subject to the Lien of the Pledge Agreement or any other loan document more than 65% (or such greater percentage that, due to a change in an Applicable Law after October 27, 2006, (A) could not reasonably be expected to cause the undistributed earnings of such Foreign Subsidiary as determined for United States federal income tax purposes to be treated as a deemed dividend to such Foreign Subsidiary's United States parent and (B) could not reasonably be expected to cause any material adverse tax consequences) of the issued and outstanding Equity Interest of a Foreign Subsidiary entitled to vote (within the meaning of Treas. Reg. Section 1.956-2(c)(2)) determined on a collective basis, but (y) the Debtor shall be required to subject to the Lien of the Pledge Agreement 100% of the issued and outstanding Equity Interest of a Foreign Subsidiary not entitled to vote (within the meaning of Treas. Reg. Section 1.956-2(c)(2)).

EXHIBIT ____

PAGE ____ 25

As used herein:

"Equity Interest" means, with respect to any Person, any share of capital stock of (or other ownership interests in) such Person, any warrant, option or other right for the purchase or other acquisition from such Person of any share of capital stock of (or other ownership interests in) such Person, any security convertible into or exchangeable for any share of capital stock of (or other ownership interests in) such Person or warrant, right or option for the purchase or other acquisition from such Person of such shares (or such other ownership interests), and any other ownership interest in such Person (including, without limitation, partnership, member or trust interests therein), whether voting or nonvoting, and whether or not such share, warrant, option, right or other interest is authorized or otherwise existing on any date of determination.

"Foreign Subsidiary" means an Issuer that is not incorporated or organized under the laws of any state of the United States or the District of Columbia.

"Person" means an individual, corporation, partnership, limited liability company, association, trust or unincorporated organization, or a government or any agency or political subdivision thereof.

"Proceeds" means all proceeds (including proceeds of proceeds) of any of the Collateral including all: (a) rights, benefits, distributions, premiums, profits, dividends, interest, cash, instruments, documents of title, accounts, contract rights, inventory, equipment, general intangibles, payment intangibles, deposit accounts, chattel paper, and other property from time to time received, receivable, or otherwise distributed in respect of or in exchange for, or as a replacement of or a substitution for, any of the Collateral, or proceeds thereof (including any cash, Equity Interests, or other instruments issued after any recapitalization, readjustment, reclassification, merger or consolidation with respect to the Issuers and any security entitlements, as defined in Section 8-102(a)(17) of the UCC, with respect thereto); (b) "proceeds," as such term is defined in Section 9-102(a)(64) of the UCC; (c) proceeds of any insurance, indemnity, warranty, or guaranty (including guaranties of delivery) payable from time to time with respect to any of the Collateral, or proceeds thereof; and (d) payments (in any form whatsoever) made or due and payable to Debtor from time to time in connection with any requisition, confiscation, condemnation, seizure or forfeiture of all or any part of the Collateral, or proceeds thereof.

EXHIBIT 1
PAGE 26

SCHEDULE I

MGA Entertainment Inc
Pledged Equity Interests:

| Issuer | Jurisdiction of Formation | Class of Equity Interest | Certificate Number (if any) | Percentage of Ownership |
|---|---|---|---|---|
| MGA Entertainment Sweden AB | Sweden | Shares | N/A | 65% |
| MGA Entertainment Benelux, SPRL | Belgium | Shares | N/A | 65% |
| MGA Entertainment Germany, GmbH | Germany | Shares | N/A | 65% |
| MGA Entertainment UK, Limited | United Kingdom | Shares | 2 | 65% |
| MGA Entertainment Iberia, S.L. | Spain | Shares Participaciones Sociales | N/A | 65% |
| MGA Entertainment (France) SARL | France | Shares Parts Sociales | N/A | 65% |
| MGA Entertainment (Canada) Company | Canada | Shares Common Stock | N/A | 65% |
| MGA Entertainment Music, Inc. | California | Shares Common Stock | 1 | 100% |
| MGA Entertainment Productions, Inc. | California | Shares Common Stock | 1 | 100% |
| MGA Entertainment (Mexico) Inc. | California | Shares Common Stock | 1 | 100% |
| The Little Tikes Company | Ohio | Shares Common Stock | 3 | 100% |

LEGAL02/10236816v1

12649550204

EXHIBIT 1

PAGE 27

08-71714106
09/09/2008 16:03

FILED
CALIFORNIA
SECRETARY OF STATE
SOS

18335890004   UCC # FILING

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER (optional)

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

M-0000417-7

CL@S
www.clasco.com

Account Number  1036AMIRW

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE # 06-7090318135 | 10/30/08 | 1b. THIS FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. |

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☒ ASSIGNMENT (full): Give name of assignee in Item 7a or 7b and address of assignee in Item 7c and also give name of assignor in Item 9.

5. AMENDMENT (PARTY INFORMATION): This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

☐ CHANGE name and/or address: Give current record name in item 6a or 6b; also give new name (if name change) in item 7a or 7b and/or new address (if address change) in item 7c.  ☐ DELETE name: Give record name to be deleted in item 6a or 6b.  ☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7d-7g (if applicable).

6. CURRENT RECORD INFORMATION:

6a. ORGANIZATION'S NAME

OR

| 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

7. CHANGED (NEW) OR ADDED INFORMATION:

7a. ORGANIZATION'S NAME
OMNI 808 Investors LLC, as Agent

OR

| 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 9420 Wilshire Blvd., Suite 400 | Beverly Hills | CA | 90212 | USA |

| 7d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION Limited Liability Company | 7f. JURISDICTION OF ORGANIZATION California | 7g. ORGANIZATIONAL ID #, if any ☐ NONE |
|---|---|---|---|---|

8. AMENDMENT (COLLATERAL CHANGE): check only one box.

Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

9a. ORGANIZATION'S NAME
Wachovia Bank, National Association, as Agent

OR

| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

10. OPTIONAL FILER REFERENCE DATA
Debtor: MGA Entertainment Inc.                    CA-SOS

FILING OFFICE COPY – NATIONAL UCC FINANCING STATEMENT AMENDMENT (FORM UCC 3) (REV. 07/29/98)

N 77616923.1/7001762-0000308275

EXHIBIT 1
PAGE 28

**06-7090317861**

**10/30/2006** 16:46

**FILED**

S09   CALIFORNIA
SECRETARY OF STATE

10214410002

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**UCC FINANCING STATEMENT**
FOLLOW INSTRUCTIONS (front and back) CAREFULLY
A. NAME & PHONE OF CONTACT AT FILER [optional]
Ann Jones, Paralegal (404) 881-7363
B. SEND ACKNOWLEDGMENT TO: (Name and Address)

    CT Corporation System
    2295 Gateway Oaks Drive
    Ste 185
    Sacramento CA 95833

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| | | | | |
|---|---|---|---|---|
| 1a. ORGANIZATION'S NAME | | | | |
| MGA Entertainment (Mexico), Inc. | | | | |

OR

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 16360 Roscoe Blvd., Suite 200 | Van Nuys | CA | 91406 | USA |

| 1d. TAX ID #  SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| 20-0998523 | | Corporation | California | CA C2643976 | ☐ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| | | | | |
|---|---|---|---|---|
| 2a. ORGANIZATION'S NAME | | | | |
| | | | | |

OR

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 2d. TAX ID #  SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| | | | | | ☐ NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| | | | | |
|---|---|---|---|---|
| 3a. ORGANIZATION'S NAME | | | | |
| Wachovia Bank, National Association, as Agent | | | | |

OR

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| One South Broad Street, PA 4830 | Philadelphia | PA | 19107 | USA |

4. This FINANCING STATEMENT covers the following collateral:

All of the Debtor's right, title and interest in the following, whether now owned or hereafter acquired: (a) subject to the limitation set forth in Exhibit A attached hereto, equity interests in MGAE de Mexico SRL de CV, (b) related assets and (c) proceeds thereof, all as more particularly described on Exhibit A attached hereto.

| 5. ALTERNATIVE DESIGNATION [if applicable]: | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG. LIEN | ☐ NON-UCC FILING |
|---|---|---|---|---|---|---|

6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.   Attach Addendum [if applicable]   ☐ All Debtors   ☐ Debtor 1   ☐ Debtor 2

8. OPTIONAL FILER REFERENCE DATA
File with California Secretary of State          MAN07.6.80945-1

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 07/29/98)
Gardner 19513/315438

EXHIBIT ____1____
29

PAGE _____

10214810802

## Exhibit A

Debtor:
MGA Entertainment (Mexico), Inc.
16380 Roscoe Blvd., Suite 209
Van Nuys, California 91406

Secured Party:
Wachovia Bank, National Association, as Agent
One South Broad Street, PA 4830
Philadelphia, Pennsylvania 19107

All of Debtor's right, title and interest in, to and under the following (collectively, the "Collateral");

(a)     all Equity Interests now or hereafter acquired or held by Debtor in the Issuer (the "Issuer") described in Schedule 1 attached hereto;

(b)     all payments due or to become due to Debtor in respect of any of the foregoing;

(d)     all of Debtor's claims, rights, powers, privileges, authority, puts, calls, options, security interests, liens and remedies, if any, in respect of any of the foregoing;

(e)     all of Debtor's rights to exercise and enforce any and every right, power, remedy, authority, option and privilege of Debtor relating to any of the foregoing including, without limitation, any power to (i) terminate, cancel or modify any agreement, (ii) execute any instruments and to take any and all other action on behalf of and in the name of Debtor in respect of any of the foregoing and the applicable Issuer thereof, (iii) exercise voting rights or make determinations, (iv) exercise any election (including, but not limited to, election of remedies), (v) exercise any "put", right of first offer or first refusal, or other option, (vi) exercise any right of redemption or repurchase, (vii) give or receive any notice, consent, amendment, waiver or approval, (viii) demand, receive, enforce, collect or receipt for any of the foregoing, (ix) enforce or execute any checks, or other instruments or orders, and (x) file any claims and to take any action in connection with any of the foregoing;

(f)     all certificates and instruments representing or evidencing any of the foregoing;

(g)     all other rights, titles, interests, powers, privileges and preferences pertaining to any of the foregoing; and

(h)     all Proceeds of any of the foregoing.

Notwithstanding the foregoing, Debtor has only granted a security interest in (x) 65% (or such greater percentage that, due to a change in an applicable law after October 27, 2006, (A) could not reasonably be expected to cause the undistributed earnings of the Issuer as determined for United States federal income tax purposes to be treated as a deemed dividend to the Issuer's United States parent and (B) could not reasonably be expected to cause any material adverse tax consequences) of the issued and outstanding Equity Interest of the Issuer entitled to vote (within the meaning of Treas. Reg. Section 1.956-2(c)(2)) and (y) 100% of the issued and outstanding Equity Interest of the Issuer not entitled to vote (within the meaning of Treas. Reg. Section 1.956-2(c)(2)).

As used herein:

"Equity Interest" means, with respect to any Person, any share of capital stock of (or other ownership interests in) such Person, any warrant, option or other right for the purchase or other

A - 1

EXHIBIT ___

PAGE _____ 30

acquisition from such Person of any share of capital stock of (or other ownership interests in) such Person, any security convertible into or exchangeable for any share of capital stock of (or other ownership interests in) such Person or warrant, right or option for the purchase or other acquisition from such Person of such shares (or such other ownership interests), and any other ownership interest in such Person (including, without limitation, partnership, member or trust interests therein), whether voting or nonvoting, and whether or not such share, warrant, option, right or other interest is authorized or otherwise existing on any date of determination.

"Person" means an individual, corporation, partnership, limited liability company, association, trust or unincorporated organization, or a government or any agency or political subdivision thereof.

"Proceeds" means all proceeds (including proceeds of proceeds) of any of the Collateral including all: (a) rights, benefits, distributions, premiums, profits, dividends, interest, cash, instruments, documents of title, accounts, contract rights, inventory, equipment, general intangibles, payment intangibles, deposit accounts, chattel paper, and other property from time to time received, receivable, or otherwise distributed in respect of or in exchange for, or as a replacement of or a substitution for, any of the Collateral, or proceeds thereof (including any cash, Equity Interests, or other instruments issued after any recapitalization, readjustment, reclassification, merger or consolidation with respect to the Issuers and any security entitlements, as defined in Section 8-102(a)(17) of the UCC, with respect thereto); (b) "proceeds," as such term is defined in Section 9-102(a)(64) of the UCC; (c) proceeds of any insurance, indemnity, warranty, or guaranty (including guaranties of delivery) payable from time to time with respect to any of the Collateral, or proceeds thereof; and (d) payments (in any form whatsoever) made or due and payable to Debtor from time to time in connection with any requisition, confiscation, condemnation, seizure or forfeiture of all or any part of the Collateral, or proceeds thereof.

EXHIBIT ___
PAGE ___
31

SCHEDULE 1

MGA Entertainment (Mexico), Inc.
Pledged Equity Interests

| Issuer | Jurisdiction of Formation | Class of Equity Interest | Certificate Number (if any) | Percentage of Ownership |
|---|---|---|---|---|
| MGAE de Mexico SRL de CV | Mexico | Shares Parte Social | N/A | 65% |

EXHIBIT 1

32

PAGE _____

```
┌─────────────────────────────────────────────────────┐
│              FILING OFFICER STATEMENT                 │
│                                                       │
│                 INTERNAL USE ONLY                     │
├─────────────────────────────────────────────────────┤
│ 1. Identification of the Record to which this FILING OFFICER
│ STATEMENT relates.                                    │
│                                                       │
│  1a. INITIAL FINANCING STATEMENT #: 067090317861      │
│                                                       │
│  1b. RECORD TO WHICH THIS STATEMENT RELATES:          │
│                                                       │
└─────────────────────────────────────────────────────┘
```

DOCUMENT NUMBER: 10268190001
FILING NUMBER: 0670908369
FILE DATE/TIME: 11/3/2006 1:34:00 PM

THE ABOVE SPACE IS FOR THE CA FILING OFFICE USE ONLY

2. Describe the inaccuracy or mistake on the part of the file office:

☒ Debtor   ☐ Secured Party
☐ Name and Address not Indexed.
☒ Name Indexed Incorrectly
☐ Address Indexed Incorrectly

☐ File Date entered Incorrectly
☐ Wrong Action type entered
☐ Wrong Filing Type entered
☐ Filed In Error
☐ Other

3. Describe filing office administrative action taken as a result of inaccuracy or mistake (including date of each action).

☐ Added Name:
☐ Address:
☒ Corrected Name from: MGA EMTERTAINMENT (MEXICO), INC.
☒ To: MGA ENTERTAINMENT (MEXICO), INC.
☐ Corrected Address from:
☐ To:
☐ Corrected File Date from         to
☐ Re-entered the UCC3         as a
☐ Changed the Filing Type from         to
☐ Document Deleted
☐ Other:

4. Additional Explanation (if applicable):

11/03/2006 13:34

1

EXHIBIT   1

PAGE _____ 33

**UCC FINANCING STATEMENT AMENDMENT**
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]
Ann Jones, Paralegal (404) 881-7563

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

```
UCC Direct Services
1232 Q St
Sacramento CA 95814
Account 10010537
CDD
```

07-71137422
05/14/2007 11:35

FILED
CALIFORNIA
SECRETARY OF STATE
SOS

12649858083

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE #
06-7090317861 filed 10/30/06

1b. This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☐ ASSIGNMENT (full or partial): Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

5. AMENDMENT (PARTY INFORMATION): This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.
☐ CHANGE name and/or address  ☐ DELETE name  ☐ ADD name

6. CURRENT RECORD INFORMATION:
6a. ORGANIZATION'S NAME
OR 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX

7. CHANGED (NEW) OR ADDED INFORMATION:
7a. ORGANIZATION'S NAME
OR 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX

7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY

7d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any ☐ NONE

8. AMENDMENT (COLLATERAL CHANGE): check only one box.
Describe collateral ☐ deleted or ☐ added, or give entire ☒ restated collateral description, or describe collateral ☐ assigned.

All of the Debtor's right, title and interest in the following, whether now owned or hereafter acquired: (a) subject to the limitation set forth in Exhibit A attached hereto, equity interests in MGAE de Mexico SRL de CV, (b) related assets and (c) proceeds thereof, all as more particularly described on Exhibit A attached hereto.

9. NAME of SECURED PARTY of RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.
9a. ORGANIZATION'S NAME
Wachovia Bank, National Association, as Agent
OR 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX

10. OPTIONAL FILER REFERENCE DATA
File with California Secretary of State; Debtor Name: MGA Entertainment (Mexico), Inc.

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 07/29/98)
Contact 19513/615438

EXHIBIT 1
PAGE 34

12649650003

## Exhibit A

| | |
|---|---|
| Debtor: | Secured Party: |
| MGA Entertainment (Mexico), Inc. | Wachovia Bank, National Association, as Agent |
| 16380 Roscoe Blvd., Suite 200 | One South Broad Street, PA 4830 |
| Van Nuys, California 91406 | Philadelphia, Pennsylvania 19107 |

All of Debtor's right, title and interest in, to and under the following (collectively, the "Collateral"):

(a)     all Equity Interests now or hereafter acquired or held by Debtor in Issuer (the "Issuer") described in Schedule 1 attached hereto;

(b)     all payments due or to become due to Debtor in respect of any of the foregoing;

(c)     all of Debtor's claims, rights, powers, privileges, authority, puts, calls, options, security interests, liens and remedies, if any, in respect of any of the foregoing;

(d)     all of Debtor's rights to exercise and enforce any and every right, power, remedy, authority, option and privilege of Debtor relating to any of the foregoing including, without limitation, any power to (i) terminate, cancel or modify any agreement, (ii) execute any instruments and to take any and all other action on behalf of and in the name of Debtor in respect of any of the foregoing and the applicable Issuer thereof, (iii) exercise voting rights or make determinations, (iv) exercise any election (including, but not limited to, election of remedies), (v) exercise any "put", right of first offer or first refusal, or other option, (vi) exercise any right of redemption or repurchase, (vii) give or receive any notice, consent, amendment, waiver or approval, (viii) demand, receive, enforce, collect or receipt for any of the foregoing, (ix) enforce or execute any checks, or other instruments or orders, and (x) file any claims and to take any action in connection with any of the foregoing;

(e)     all certificates and instruments representing or evidencing any of the foregoing;

(f)     all other rights, titles, interests, powers, privileges and preferences pertaining to any of the foregoing; and

(g)     all Proceeds of any of the foregoing.

Notwithstanding the foregoing, (x) in no event shall the Debtor be required to subject to the Lien of the Pledge Agreement or any other loan document more than 65% (or such greater percentage that, due to a change in an Applicable Law after October 27, 2006, (A) could not reasonably be expected to cause the undistributed earnings of such Foreign Subsidiary as determined for United States federal income tax purposes to be treated as a deemed dividend to such Foreign Subsidiary's United States parent and (B) could not reasonably be expected to cause any material adverse tax consequences) of the issued and outstanding Equity Interest of a Foreign Subsidiary entitled to vote (within the meaning of Treas. Reg. Section 1.956-2(c)(2)) determined on a collective basis, but (y) the Debtor shall be required to subject to the Lien of the Pledge Agreement 100% of the issued and outstanding Equity Interest of a Foreign Subsidiary not entitled to vote (within the meaning of Treas. Reg. Section 1.956-2(c)(2)).



EXHIBIT ___1___

PAGE ___35___

12649650003

As used herein:

"Equity Interest" means, with respect to any Person, any share of capital stock of (or other ownership interests in) such Person, any warrant, option or other right for the purchase or other acquisition from such Person of any share of capital stock of (or other ownership interests in) such Person, any security convertible into or exchangeable for any share of capital stock of (or other ownership interests in) such Person or warrant, right or option for the purchase or other acquisition from such Person of such shares (or such other ownership interests), and any other ownership interest in such Person (including, without limitation, partnership, member or trust interests therein), whether voting or nonvoting, and whether or not such share, warrant, option, right or other interest is authorized or otherwise existing on any date of determination.

"Person" means an individual, corporation, partnership, limited liability company, association, trust or unincorporated organization, or a government or any agency or political subdivision thereof.

"Proceeds" means all proceeds (including proceeds of proceeds) of any of the Collateral including all: (a) rights, benefits, distributions, premiums, profits, dividends, interest, cash, instruments, documents of title, accounts, contract rights, inventory, equipment, general intangibles, payment intangibles, deposit accounts, chattel paper, and other property from time to time received, receivable, or otherwise distributed in respect of or in exchange for, or as a replacement of or a substitution for, any of the Collateral, or proceeds thereof (including any cash, Equity Interests, or other instruments issued after any recapitalization, readjustment, reclassification, merger or consolidation with respect to the Issuers and any security entitlements, as defined in Section 8-102(a)(17) of the UCC, with respect thereto); (b) "proceeds," as such term is defined in Section 9-102(a)(64) of the UCC; (c) proceeds of any insurance, indemnity, warranty, or guaranty (including guaranties of delivery) payable from time to time with respect to any of the Collateral, or proceeds thereof; and (d) payments (in any form whatsoever) made or due and payable to Debtor from time to time in connection with any requisition, confiscation, condemnation, seizure or forfeiture of all or any part of the Collateral, or proceeds thereof.

A-2

LEGAL02/30237046v2



EXHIBIT 1

PAGE 36

SCHEDULE J

MGA Entertainment (Mexico), Inc.
Pledged Equity Interests

| Issuer | Jurisdiction of Formation | Class of Equity Interest | Certificate Number (if any) | Percentage of Ownership |
|--------|--------------------------|-------------------------|----------------------------|------------------------|
| MGAE de Mexico SRL de CV | Mexico | Shares Parte Social | N/A | 100% |

LEGAL02/30337046v2

EXHIBIT 1

PAGE 37

**08-71714107**
**09/09/2008 16:03**

FILED
CALIFORNIA
SECRETARY OF STATE
SOS

**UCC FINANCING STATEMENT AMENDMENT**
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

18335690005   UCC 3 FILING

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE #   06-7090317861

10/30/06

1b. This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☒ ASSIGNMENT (full): Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

5. AMENDMENT (PARTY INFORMATION): This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.
☐ CHANGE name and/or address: Give current record name in item 6a or 6b; also give new name (if name change) in item 7a or 7b and/or new address (if address change) in item 7c.
☐ DELETE name: Give record name to be deleted in item 6a or 6b.
☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7d-7g (if applicable).

6. CURRENT RECORD INFORMATION:

| | 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| | | | | |

7. CHANGED (NEW) OR ADDED INFORMATION:

| | 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | OMNI 808 Investors LLC, as Agent | | | |
| | 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 9420 Wilshire Blvd., Suite 400 | Beverly Hills | CA | 90212 | USA |

| 7d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION Limited Liability Company | 7f. JURISDICTION OF ORGANIZATION California | 7g. ORGANIZATIONAL ID #, if any ☐ NONE |
|---|---|---|---|---|

8. AMENDMENT (COLLATERAL CHANGE): check only one box.
Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

9. NAME of SECURED PARTY of RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

| | 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | Wachovia Bank, National Association, as Agent | | | |
| | 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA
Debtor: MGA Entertainment (Mexico), Inc.                    CA-SOS

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT AMENDMENT (FORM UCC 3) (REV. 07/29/98)

EXHIBIT ___1___
38

PAGE _____

# EXHIBIT 2

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 3



1   Robert C. O'Brien (SBN 154372)
    ARENT FOX LLP
2   555 West Fifth Street, 48th Floor
    Los Angeles, CA 90013-1065
3   Telephone: 213.629.7400
    Facsimile: 213.629.7401
4   obrien.robert@arentfox.com

5   Discovery Master

6

7

8                   UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10                        EASTERN DIVISION

11

12   CARTER BRYANT, an individual,       Case No. CV 04-09049 SGL (RNBx)

13              Plaintiff,
                                         Consolidated with
14          v.                           Case No. CV 04-09059
                                         Case No. CV 05-2727
15   MATTEL, INC., a Delaware
     corporation,                        **PHASE 2 DISCOVERY MATTER**

16              Defendant.               **ORDER NO. 43, REGARDING:**

17
                                         **DEPOSITIONS OF NEIL
18                                       KADISHA AND LEON NEMAN**

19

20   CONSOLIDATED WITH
     MATTEL, INC. v. BRYANT and
21   MGA ENTERTAINMENT, INC. v.
     MATTEL, INC.
22

23

24

25

26

27

28
                                                           ORDER NO. 43
ARENT FOX LLP                             [Case No. CV 04-09049 SGL (RNBx)]
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT 3

PAGE 99

1      As part of Order No. 33, the Discovery Master ordered Neil Kadisha and

2  Leon Neman to sit for their depositions "before the end of July." (Letter from Peter

3  Villar to Robert C. O'Brien dated July 24, 2009, p. 1).  Prior to the expiration of

4  this deadline, Messrs. Kadisha and Neman requested that the Discovery Master

5  extend it to September, 2009. (*Id.*, p. 2; Letter from Todd Gordinier to Robert C.

6  O'Brien dated July 29, 2009, p. 1). They claim a continuance of their depositions is

7  justified for two reasons.

8      First, they assert that "efficiency, judicial economy and fundamental

9  fairness" warrant an extension because they may have to be re-deposed again in the

10  future. (Letter from Peter Villar to Robert C. O'Brien dated July 24, 2009, p. 1).

11  Put another way, they argue that other pending discovery disputes and the

12  possibility that Mattel, Inc. ("Mattel") may seek leave to file a Fourth Amended

13  Answer and Counterclaim "have the potential to require the production of

14  additional information or documents or otherwise alter the scope of the

15  depositions." (*Id.*; Letter from Todd Gordinier to Robert C. O'Brien dated July 29,

16  2009, p. 1). These arguments are unsupported by any legal authority.  Federal Rule

17  of Civil Procedure 26(d)(2) makes clear that "methods of discovery may be used in

18  any sequence" by a party, including Mattel. Therefore, Mattel may proceed with

19  the depositions at a time of its choosing, not when Messrs. Kadisha and Neman

20  believe that all pending discovery matters have been resolved to their satisfaction.

21  A rule to the contrary would create discovery gridlock. The Discovery Master and

22  Court in this action will not allow multiple depositions of the same individual

23  without good cause, so if Mattel seeks to re-depose these witnesses at some future

24  point, the witnesses are free to seek a protective order.

25      Second, Messrs. Kadisha and Neman argue that "there are a number of . . .

26  scheduling problems that unfortunately require flexibility on the part of all parties

27  in scheduling these depositions," including Mr. Neman's unavailability due to an

28  unspecified medical issue involving his mother and scheduling conflicts in July and

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 1 -

ORDER NO. 43
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 3

PAGE _____ 100



1   August for Mr. Kadisha, Todd Gordinier and MGA's counsel. (Letter from Peter
2   Villar to Robert C. O'Brien dated July 24, 2009, p. 1). While the Discovery Master
3   is sympathetic to any legitimate medical issue involving Mr. Neman's mother, the
4   mere assertion of a "serious medical condition" without specifying what days her
5   situation would render Mr. Neman unavailable is insufficient to allow proper
6   evaluation of the issue and set a date for his deposition. Further, with respect to
7   Mr. Kadisha's schedule as well as that of his counsel, the Discovery Master ordered
8   his deposition to proceed on May 18, 2009 and granted him forty-five days in
9   which to appear. This amount of time should have been more than sufficient for
10   any scheduling conflicts to have been avoided. Of course, counsel on both sides are
11   requested to work together in good faith to avoid undue burdens to each others' and
12   the witnesses' schedules.

13       Accordingly, the Discovery Master **ORDERS** as follows:

14     1.    Neil Kadisha shall sit for his deposition within ten (10) court days of
15   this Order and comply with Order No. 33 in all other respects. Counsel for Neil
16   Kadisha shall immediately meet and confer with Mattel's counsel to determine a
17   mutually agreeable date within the foregoing period for Mr. Kadisha's deposition.
18   If no such agreement can be reached, Mattel may seek *ex parte* relief from the
19   Discovery Master, who will then set a date for the deposition.

20     2.    Counsel for Leon Neman shall immediately meet and confer with
21   Mattel's counsel to determine a mutually agreeable date for Mr. Neman's
22   deposition. If no such agreement can be reached, Mattel may seek *ex parte* relief
23   from the Discovery Master, who will then set a date for the deposition.

24   Dated:    July 30, 2009

25

26                    By:      /s/ Robert C. O'Brien
27                              ROBERT C. O'BRIEN
28                              Discovery Master

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 2 -                ORDER NO. 43
                        [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT **3**

101

PAGE _____

## Tiffany Garcia

| | |
|---|---|
| **From:** | Curran Walker |
| **Sent:** | Thursday, July 30, 2009 9:32 AM |
| **To:** | Michael T Zeller; MGA / Bryant Team; Mattel-MGA Paralegals |
| **Subject:** | RE: Activity in Case 2:04-cv-09049-SGL-RNB Carter Bryant v. Mattel Inc Miscellaneous Document |

**Attachments:** Phase 2 Discover Master Order No. 43.pdf

**From:** Michael T Zeller
**Sent:** Thursday, July 30, 2009 9:30 AM
**To:** MGA / Bryant Team; Mattel-MGA Paralegals
**Subject:** Fw: Activity in Case 2:04-cv-09049-SGL-RNB Carter Bryant v. Mattel Inc Miscellaneous Document

Please circulate pdf

**From:** cacd_ecfmail@cacd.uscourts.gov <cacd_ecfmail@cacd.uscourts.gov>
**To:** ecfnef@cacd.uscourts.gov <ecfnef@cacd.uscourts.gov>
**Sent:** Thu Jul 30 09:28:06 2009
**Subject:** Activity in Case 2:04-cv-09049-SGL-RNB Carter Bryant v. Mattel Inc Miscellaneous Document

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.
***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

### UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

### Notice of Electronic Filing

The following transaction was entered by Hansen, Drew on 7/30/2009 at 9:28 AM PDT and filed on 7/30/2009
**Case Name:** Carter Bryant v. Mattel Inc
**Case Number:** 2:04-cv-9049
**Filer:** Robert C O'Brien
**Document Number:** 6103

**Docket Text:**
**PHASE 2 DISCOVERY MASTER - ORDER NO. 43 Re Depositions of Neil Kadisha and Leon Neman filed by Special Master Robert C O'Brien (Hansen, Drew)**

EXHIBIT **3**

PAGE _____ **102**

7/30/2009

**2:04-cv-9049 Notice has been electronically mailed to:**

Alexander H Cote    acote@scheperkim.com, feseroma@scheperkim.com

Alisa M Morgenthaler    amorgenthaler@glaserweil.com

Annette L Hurst    ahurst@orrick.com

Brett Dylan Proctor    dylanproctor@quinnemanuel.com, westonreid@quinnemanuel.com

Byron Z Moldo    bmoldo@ecjlaw.com

Christian C Dowell    cdowell@kmwlaw.com

Craig A Taggart    craig.taggart@bingham.com, lan.ly@bingham.com

Cyrus S Naim    cyrusnaim@quinnemanuel.com

David C Scheper    dscheper@scheperkim.com, feseroma@scheperkim.com

David M Stern    dstern@ktbslaw.com

David W Foster    david.foster@skadden.com

David W Hansen    dhansen@skadden.com

Diane C Hutnyan    dianehutnyan@quinnemanuel.com, andreahoeven@quinnemanuel.com

Douglas Andrew Winthrop    dwinthrop@howardrice.com

Frank D Rorie , Jr    frorie@orrick.com

Ilan Wisnia    iwisnia@valleassociates.com

James I Stang    jstang@pszjlaw.com

Jason D Russell    jrussell@skadden.com, allison.velkes@skadden.com

Jeffrey B Valle    jvalle@valleassociates.com

Jennifer A Lopez    jennifer.lopez@bingham.com

John B Quinn    johnquinn@quinnemanuel.com

Jon D Corey    joncorey@quinnemanuel.com

Joseph C Sarles    josephsarles@quinnemanuel.com

Kenneth A Plevan    kenneth.plevan@skadden.com, drogosa@skadden.com, sumclaug@skadden.com

EXHIBIT 3

PAGE    103

Kevin E Deenihan     kdeenihan@ktbslaw.com

L Kieran Kieckhefer     kkieckhefer@orrick.com

Larry W McFarland     lmcfarland@kmwlaw.com

Leah Chava Gershon     leah@spertuslaw.com

Linda M Burrow     burrow@caldwell-leslie.com, popescu@caldwell-leslie.com, wilson@caldwell-leslie.com

Marina Vladimir Bogorad     marina.bogorad@skadden.com

Mark E Overland     moverland@scheperkim.com, jhibino@scheperkim.com

Matthew C Bousquette     caldwell@caldwell-leslie.com

Matthew C Heyn     mheyn@ktbslaw.com

Melinda L Haag     mhaag@orrick.com

Michael P Kelly     mikelly@skadden.com

Michael T Zeller     michaelzeller@quinnemanuel.com

Nicole S Pelletier     npelletier@glaserweil.com

Patrick A Fraioli , Jr     pfraioli@ecjlaw.com

Patrick J. Fraioli, Jr.     pdavidson@ecjlaw.com

Peter A Davidson     pdavidson@ecjlaw.com

Peter N Villar     peter.villar@bingham.com, paul.mcconnell@bingham.com

Randa A F Osman     randaosman@quinnemanuel.com

Richard M Pachulski     jstang@pszjlaw.com

Robert C O'Brien     obrien.robert@arentfox.com

Robyn Aronson     robynaronson@dwt.com, frankromero@dwt.com

Rory S Miller     rorymiller@quinnemanuel.com, shawnaallison@quinnemanuel.com, westonreid@quinnemanuel.com

Sandra L Tholen     tholen@caldwell-leslie.com, mejia@caldwell-leslie.com, wilson@caldwell-leslie.com

Sanford I Weisburst     sandyweisburst@quinnemanuel.com

7/30/2009

EXHIBIT 3

PAGE     104

Stan Karas    stankaras@quinnemanuel.com, westonreid@quinnemanuel.com

Thomas J Nolan    tnolan@skadden.com, carl.roth@skadden.com, marcus.mumford@skadden.com

Thomas P Lambert    tpl@msk.com

Todd E Gordinier    todd.gordinier@bingham.com, craig.taggart@bingham.com,
julie.valenzuela@bingham.com, karina.ward@bingham.com, lan.ly@bingham.com,
michael.mortenson@bingham.com

William A Molinski    wmolinski@orrick.com, mm7@orrick.com

Yas Raouf    yraouf@orrick.com

**2:04-cv-9049 Notice has been delivered by First Class U. S. Mail or by fax to: :**

Cheryl Plambeck
Davis & Gilbert LLP
1740 Broadway
New York, NY 10019

Kien C Tiet
Stern and Goldberg
6345 Balboa Boulevard, Suite 200
Encino, CA 91316

Peter H Bonis
Peter H. Bonis Law Offices
1990 N. California Blvd, 8th Floor
Walnut Creek, CA 94596

Warrington S Parker , III
Orrick, Herrington & Sutcliffe LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**C:\Documents and Settings\westg\Desktop\Order 43.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=7/30/2009] [FileNumber=8193364-0]
[b73e7d9ebd6f4df7ee279c21937bdd22371bccb9d8e83c03d245f1dfb51ffcf0a649
924093de9f9622226ebdb326c755e90d5329b97674893ff4cc486bd4477d]]



EXHIBIT 3
105
PAGE _____

# EXHIBIT 4



1 | Robert C. O'Brien (SBN 154372)
ARENT FOX LLP
2 | 555 West Fifth Street, 48th Floor
Los Angeles, CA 90013-1065
3 | Telephone: 213.629.7400
Facsimile: 213.629.7401
4 | obrien.robert@arentfox.com

5 | Discovery Master

6

7

8 | UNITED STATES DISTRICT COURT

9 | CENTRAL DISTRICT OF CALIFORNIA

10 | EASTERN DIVISION

11

12 | CARTER BRYANT, an individual,

13 | Plaintiff,

14 | v.

15 | MATTEL, INC., a Delaware corporation,

16

17 | Defendant.

18

19

20

21

22

23

24

25 | CONSOLIDATED WITH
MATTEL, INC. v. BRYANT and
26 | MGA ENTERTAINMENT, INC. v.
MATTEL, INC.
27

28

Case No. CV 04-09049 SGL (RNBx)

Consolidated with
Case No. CV 04-09059
Case No. CV 05-2727

**PHASE 2 DISCOVERY MATTER**

**ORDER NO. 44, REGARDING:**

**(1) DEPOSITION OF NEIL KADISHA; and**

**(2) EXTENSION OF TIME FOR MATTEL, INC. TO FILE ITS OPPOSITION TO MGA'S MOTION TO COMPEL FURTHER RESPONSES TO MGA'S FIRST SET OF PHASE 2 INTERROGATORIES AND SECOND SET OF PHASE 2 REQUESTS FOR PRODUCTION**

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

ORDER NO. 44
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 4

PAGE 106

## I.   THE DEPOSITION OF NEIL KADISHA

As part of Order No. 43, the Discovery Master ordered Neil Kadisha to sit for deposition within ten court days of July 30, 2009. Because he is out of the country until Saturday, August 22, 2009, Mr. Kadisha requests an extension of this deadline by approximately ten days. (Letter from Todd Gordinier to Robert C. O'Brien dated August 3, 2009, pp. 1 and 2).

Mattel, Inc. ("Mattel") opposes this request on the grounds that (1) Mr. Kadisha has been compelled to sit for his deposition on two prior occasions, (2) Mattel has sought Mr. Kadisha's deposition for several months, (3) Mr. Kadisha has been aware that he must be deposed for a substantial period of time, (4) Mr. Kadisha had ample time to resolve any scheduling issues, (5) any hardship imposed on Mr. Kadisha is one of his own making and (6) Mattel will be prejudiced by any additional delay. (Letter from Michael Zeller to Robert C. O'Brien dated August 3, 2009, pp. 1 – 3). Mattel further requests that the Discovery Master issue an Order to Show Cause why coercive sanctions should not be imposed and why Mr. Kadisha should not be sanctioned in the amount of $10,000 for each day he fails to appear beyond the current deadline of August 13, 2009. (*Id.*, pp. 3 and 4).

The Discovery Master finds that good cause exists to extend Mr. Kadisha's deadline to sit for his deposition to the week of August 24, 2009 and that Mattel will not suffer any irreparable harm by this short delay. Counsel for Neil Kadisha shall immediately meet and confer with Mattel's counsel to determine a mutually agreeable date within the week of August 24, 2009 for Mr. Kadisha's deposition. If no such agreement can be reached, Mattel may select a date between August 24, 2009 and August 28, 2009 on which it wishes to proceed with the deposition. Absent extraordinary circumstances, Mr. Kadisha will be sanctioned if he fails to appear for his deposition as required by this Order. In addition, Mr. Kadisha is ordered to review his deposition testimony and make any changes thereto within ten court days of receiving the deposition transcript.

EXHIBIT __4__

PAGE ____107

1   **II.   EXTENSION OF TIME FOR MATTEL TO OPPOSE MGA'S**
2   **MOTION TO COMPEL**

3   On August 3, 2009, Mattel requested an extension of three court days in
4   which to file its opposition to MGA Entertainment, Inc.'s ("MGA") Motion to
5   Compel Further Responses to MGA's First Set of Phase 2 Interrogatories and
6   Second Set of Requests for Production ("Opposition"). (Letter from Michael Zeller
7   to Robert C. O'Brien dated August 3, 2009, pp. 1 and 3). Mattel admits that the
8   deadline to file its Opposition has passed but claims that a calendaring error
9   accounts for the mistake. (*Id.*, p. 1). It further argues that an extension is warranted
10  because it needs the time to obtain declarations supporting its Opposition. (*Id.*).

11  MGA opposes the request for an extension because, among other things,
12  (1) it was made after the Opposition was due, (2) it is difficult to fathom that a
13  calendaring error occurred, (3) MGA needs the information sought by the motion to
14  compel, and (4) Mattel has refused to grant extensions to MGA when desperately
15  needed, including with respect to some documents that must be produced for *in*
16  *camera* review today (i.e., August 4). (Letter from Annette Hurst to Robert C.
17  O'Brien dated August 3, 2009, pp. 1 – 3).

18  The Discovery Master finds that good cause exists to extend Mattel's
19  deadline to file the Opposition to August 5, 2009 and that MGA will not suffer any
20  irreparable harm by this short delay.  The Discovery Master also reminds MGA
21  that if additional time is warranted for it to comply with any discovery issues or
22  discovery orders, including with respect to producing documents for *in camera*
23  review today (i.e., August 4), it may seek relief from the Discovery Master.

24  Dated:      August 4, 2009

25

26                                    By:      /s/ Robert C. O'Brien
27                                             ROBERT C. O'BRIEN
                                               Discovery Master
28

- 2 -                              ORDER NO. 44
                                  [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 4

PAGE          108

# EXHIBIT 5



1   Robert C. O'Brien (SBN 154372)
    ARENT FOX LLP
2   555 West Fifth Street, 48th Floor
    Los Angeles, CA 90013-1065
3   Telephone: 213.629.7400
    Facsimile: 213.629.7401
4   obrien.robert@arentfox.com

5   Discovery Master

6

7

8               UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                    EASTERN DIVISION

11

12  CARTER BRYANT, an individual,      Case No. CV 04-09049 SGL (RNBx)

13              Plaintiff,

14        v.                           Consolidated with
                                       Case No. CV 04-09059
15  MATTEL, INC., a Delaware           Case No. CV 05-2727
    corporation,
16                                     PHASE II DISCOVERY MATTER
                Defendant.
17                                     ORDER NO. 3, REGARDING:

18                                     (1) MOTION OF MGA
                                       ENTERRNTAINMENT, INC.,
19                                     ISAAC LARIAN AND MGA
                                       ENTERTAINMENT (HK)
20                                     LIMITED TO QUASH
                                       NON-PARTY SUBPOENAS; and

21                                     (2) MOTION OF MATTEL, INC.
                                       TO COMPEL PRODUCTION OF
22                                     DOCUMENTS RESPONSIVE TO
                                       THE SAME NON-PARTY
23                                     SUBPOENAS

24

25  CONSOLIDATED WITH
    MATTEL, INC. v. BRYANT and
26  MGZ ENTERTAINMENT, INC. v.
    MATTEL, INC.
27

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

                                 1                         ORDER NO. 3
                                              [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 5

PAGE _____ 109

1    This Order sets forth the Discovery Master's ruling on: (1) the motion of

2    MGA Entertainment, Inc., Isaac Larian, and MGA Entertainment (HK) Limited

3    (collectively "MGA") to quash certain non-party subpoenas [Docket Number 4779]

4    and (2) the corresponding motion of Mattel, Inc. ("Mattel") to compel production of

5    documents responsive to the same non-party subpoenas [Docket Numbers 4769 and

6    4788] (collectively, the "Motions").

7    The Motions came on regularly for hearing before the Discovery Master on

8    March 4, 2009. All interested parties were represented by counsel and afforded the

9    opportunity to present oral argument on the Motions. The Discovery Master,

10   having considered the papers filed in support of and in opposition to the Motions,

11   and having heard oral argument thereon, rules as set forth below.

12   **I.    INTRODUCTION**

13

14       **A.    The Court's February 11, 2009 Ruling**

15   On February 11, 2009, the Court heard oral argument on various motions

16   filed by the parties. During the proceedings, counsel took the opportunity to orally

17   request clarification by the Court regarding whether the parties' respective motions

18   relating to the subpoenas served by Mattel on various entities allegedly related to

19   MGA (the "Subpoenas") are in any way stayed or precluded by any of the Court's

20   prior orders.

21   In response, the Court stated: "I will instruct the Discovery Master this

22   afternoon, in no uncertain terms, that there is no stay on any discovery related to

23   this case at all." (Reporter's Transcript of Proceedings, February 11, 2009 ["Tr."],

24   99:8 – 10). Counsel for MGA then referred to the fact that the Court had

25   previously declined to allow Mattel to serve certain discovery accompanying

26   Mattel's motion for a receiver and characterized the third-party subpoenas as an

27   attempt to circumvent the Court's ruling. (Tr., 101:12 – 17). In response, the Court

28   stated:

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

-2-                                          ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 5

PAGE    110

> Then the question becomes – and this is a question for the Discovery Master, not for this Court – whether or not the discovery is related to Phase 2. If it is, it is. I'm not going to pass any judgment whatsoever. I'm going to leave that completely up to the Discovery Master. ... The question for the [D]iscovery [M]aster will be whether or not the disputed discovery request is related or relevant to the trial that has now been scheduled for March [2010] or not.

(Tr., 101:18 – 22; 103:1 – 3).

The Discovery Master understands the Court's ruling as indicating that, in deciding the motions relating to the Subpoenas, the Discovery Master should consider whether there is a nexus between the information sought by the Subpoenas, on the one hand, and the Phase 2 claims and counterclaims set for trial in March 2010, on the other hand. If the information sought by the Subpoenas is, to use the Court's words, "related to Phase 2" or "related or relevant to the [Phase 2] trial," then that information could potentially be the subject of appropriate discovery requests by Mattel.[1]

### B. Information Sought By The Subpoenas

The information sought by Mattel's Subpoenas falls into two broad categories. First, Mattel seeks documents from third parties Omni 808 Investors, LLC, OmniNet Capital, LLC and Vision Capital, LLC (collectively, the "Financing Entities") involving, among other things, their internal ownership and operations and their role in providing financing to MGA during the summer of 2008 (the

---

[1] Even prior to the Court's February 11, 2009 ruling, Mattel acknowledged that it had the burden of demonstrating a nexus between the information sought by the Subpoenas and the Phase 2 issues, as demonstrated by Mattel's inclusion of a section in its Motion to Compel summarizing the claims to be adjudicated in Phase 2, (Motion, pp. 5 – 8), and a section arguing that the information sought by the third-party subpoenas is relevant to Mattel's Phase 2 claims, (*Id.*, pp. 18 - 24 and 24 – 25). However, Mattel also argued that the information sought might be appropriate regardless of any nexus to Phase 2. (*See id.*, pp. 14 – 17 [arguing that MGA's prior statements regarding its finances in Phase 1 "opened the door" to discovery on this issue] and *id.*, p. 23 [arguing that the information sought is relevant to MGA's credibility]). Based on the Court's subsequent ruling on February 11, 2009, as well as the Discovery Master's own independent evaluation of those arguments, the Discovery Master concludes, as discussed more fully below, that these arguments are insufficient, standing alone, to justify the non-party discovery Mattel seeks. Rather, Mattel must demonstrate some link between the information sought and the issues to be adjudicated by the Court at the Phase 2 trial.

EXHIBIT 5

PAGE 111

1  "Financing Discovery"). Based on the information presented at the February 11,

2  2009 hearing and in connection with the pending motions, it does not appear that

3  either MGA Entertainment, Inc., MGA Entertainment (HK) Limited, or Larian have

4  an ownership interest in the Financing Entities.[2] (*See* Tr., 70:22 – 72:5; 78:9 -25).

5      Second, Mattel seeks documents from third parties IGWT Group, LLC and

6  IGWT 826 Investments, LLC (collectively, the "Transferee Entities") regarding

7  MGA's sale to them of infringing MGA inventory, namely Bratz dolls (the

8  "Transferee Discovery"). MGA does not dispute that the Transferee Entities are

9  owned and/or controlled by Larian. (*See, e.g.,* MGA's Reply in support of its

10  Motion to Quash, at p. 5, fn. 6, where MGA refers to the purchase of Bratz

11  inventory by the Transferee Entities as "Larian's purchase of those . . .

12  products . . . .").[3]

13  **II.    MGA's Motion To Quash**

14      Because it could dispose of all outstanding discovery issues related to the

15  Subpoenas, the Discovery Master first addresses MGA's Motion to Quash filed on

16  February 3, 2009.

17  **A.    Legal Standard**

18      As the party moving to quash the Subpoenas, MGA bears the burden of

19  satisfying the standard set forth in Rule 45(b), which provides that the court may

20  "quash or modify the subpoena if it is unreasonable and oppressive." (Fed. R. Civ.

21  P. 45(b); *see also Wiwa v. Royal Dutch Petroleum Co.,* 392 F.3d 812, 818 (5th Cir.

22  2004) ["The moving party has the burden of proof to demonstrate that compliance

23

24  [2] Of course, this is one of the facts Mattel seeks to investigate through the Subpoenas to the Financing Entities. The

25  Discovery Master's ruling denying Mattel's Motion to Compel the Financing Parties to comply with the Subpoenas does not address -- and should not be construed as deciding -- whether Mattel could, upon establishing a nexus to a

26  legitimate Phase 2 issue, seek to obtain this information from MGA.

   [3] Moreover, MGA does not dispute the assertions made by Mattel in its Motion to Compel at pp. 11- 12, including

27  that Larian created IGWT Group during the Phase 1 trial and registered its place of business as his home address, and that Larian created IGWT 826 Investments the day after the Phase 1 trial ended and registered it at the home address

28  of his sister.



EXHIBIT 5

PAGE 112

1   with the subpoena would be unreasonable and oppressive" (internal quotations

2   omitted)]; *Linder v. Department of Defense*, 133 F.3d 17, 24 (D.C. Cir. 1998) [The

3   burden of proving that a subpoena is oppressive is on the party moving to quash];

4   *Washington v. Thurgood Marshall Academy*, 230 F.R.D. 18, 21 (D.D.C. 2005) [the

5   burden is on the movant to establish that a subpoena duces tecum should be

6   quashed]). "The burden is particularly heavy to support a 'motion to quash as

7   contrasted to some more limited protection.'" (*Westinghouse Electric Corp. v. City

8   of Burlington*, 351 F.2d 762, 766 (D.C.Cir.1965) [denying a motion to quash

9   supported by two affidavits]).

10   **B.     Arguments Made By MGA In Support Of Its Motion To Quash**

11   The sole argument set forth in MGA's Motion to Quash is that the Court's

12   January 7, 2009 order appointing a forensic auditor bars Mattel from seeking the

13   information sought by the Subpoenas. (*See* MGA's Motion to Quash, pp. 1 - 6).

14   But that argument fails for the reasons set forth above. The Court made it clear at

15   the hearing on February 11, 2009 that:

16       There is no stay on discovery. Period. . . . . [The forensic auditor
17       appointed by the Court] is acting at the Court's discretion to
    inform the Court of information. . . . That's an entirely separate
18       matter. And I have not stayed any discovery and there should be
19       no reliance on that. If that was misunderstood, it's clarified now.

20   (Tr., 97:15, 98:8 - 9, and 98:13 - 15).

21   Recognizing that its only argument has been rejected by the Court, MGA

22   argues for the first time in its Reply that its Motion to Quash should be granted

23   because the Subpoenas are not relevant to any of Mattel's Phase 2 claims. (*See*

24   MGA's Reply Brief in Support of the Motion to Quash, pp. 1 and 5 - 12).

25   However, MGA did not make this argument in its opening brief. It instead declared

26   in its moving papers that whether the Subpoenas are related to any "Phase 2 issues

27   is beside the point." (*Id.*, p. 5). Because MGA did not address the relevance of the

28   subject discovery until the filing of its Reply, the Discovery Master declines to

EXHIBIT 5

PAGE 113


1   consider the argument in connection with the Motion to Quash.

2       The Discovery Master, like the Court,[4] disfavors the insertion of new

3   arguments at the reply stage that could have been raised in the moving papers. A

4   party filing a motion is required to raise all of its arguments in its opening brief to

5   prevent "sandbagging" of the non-moving party and to provide opposing counsel

6   the chance to respond. This rule is routinely adhered to by courts in the Ninth

7   Circuit. (*See, e.g., United States v. Boyce*, 148 F.Supp .2d 1069, 1085

8   (S.D.Cal.2001); *Leick v. Hartford Life and Acc. Ins. Co.*, 2007 WL 1847635 at *1,

9   n. 1 (E.D.Cal. 2007); *Stewart v. Wachowski*, 2004 WL 2980783, at *11 (C.D.Cal.

10  Sept. 28, 2004); *Hamilton v. Willms*, 2007 WL 2558615, *11 (E.D.Cal.2007); *see

11  also United States v. Cox*, 7 F.3d 1458, 1463 (9th Cir.1993); *United States v.

12  Wright*, 215 F.3d 1020, 1030 n. 3 (9th Cir.2000)).

13      Furthermore, MGA will not suffer any prejudice from this decision because

14  the issue it raised in its Reply (i.e., are the Subpoenas seeking information related to

15  any Phase 2 claims) has been fully briefed by the parties and is ruled upon by the

16  Discovery Master in connection with Mattel's Motion to Compel.[5] (*See* Section III

17  below).

18      Accordingly, MGA's Motion to Quash is **DENIED.**

19  //

20  //

21  //

22  //

23

24  [4] In *Bryant v. Mattel, Inc.*, 573 F.Supp.2d 1254, 1273 n.7 (C.D. Cal. 2007), the Court noted that it "ordinarily would
    not consider" arguments made for the first time on reply but did so only "because [undertaking the analysis did] not
25  change [its] ultimate conclusion."

26  [5] That the arguments raised in the Reply are the same as those in MGA's Opposition to the Motion to Compel is
    conceded by Mattel. Indeed, Mattel admitted in its Request to Consolidate MGA's Motion to Quash and Motion to
27  Compel (which was denied as untimely by the Discovery Master at the hearing on March 4, 2009) that the "MGA
    Parties' Opposition to Mattel's Motion to Compel Production of Documents Responsive to Third Party Subpoenas
    . . makes the same arguments as the MGA Parties' Reply in support of their Motion to Quash." (Mattel's Request to
28  Consolidate MGA's Motion to Quash and Mattel's Motion to Compel, p. 2).

                                    ORDER NO. 3
                        - 6 -        [Case No. CV 04-09049 SGL (RNBx)]
                                    EXHIBIT 5

                                    PAGE    114

1    **III.   Mattel's Motions To Compel**

2         **A.    The Purported Procedural Defects Barring Mattel's Motions To**

3              **Compel**

4         MGA, the Financing Entities, and the Transferee Entities all argue that that

5    Mattel's Motion to Compel should be denied on several different procedural

6    grounds.

7              **1.    The Court's January 7, 2009 Order**

8         As an initial matter, the Transferee Entities and the Financing Entities repeat

9    the argument made by MGA in its Motion to Quash that the Court's January 7,

10   2009 Order appointing a forensic auditor barred Mattel from seeking the discovery

11   sought by the Subpoenas. (Financing Entities' Opposition to Mattel's Motion to

12   Compel at p. 3; Transferee Entities' Opposition to Mattel's Motion to Compel at

13   pp. 5 - 7). But that argument fares no better here than it did with respect to MGA's

14   Motion to Quash and is rejected for the reasons discussed in Section II above.

15             **2.    Local Rule 37**

16        The Financing Entities and the Transferee Entities also argue that Mattel's

17   Motion to Compel should be denied because Mattel failed to comply with Local

18   Rule 37 by, among other things, failing to meet and confer and failing to file a joint

19   stipulation. (Financing Entities' Opposition to Mattel's Motion to Compel, pp. 1

20   and 7 - 10; Transferee Entities' Opposition to Mattel's Motion to Compel, p. 2

21   [referencing Local Rule 37 in passing]). However, Local Rule 37 (as distinguished

22   from Federal Rule 37, which is discussed in subsection 7a, below) does not apply to

23   discovery disputes in this case. Rather, the applicable procedure is the one adopted

24   by the Court in its order appointing a discovery master dated December 6, 2006

25   ("Discovery Master Order").[6] Because the Discovery Master Order provides that

26

27   ───────────────
     [6] The Discovery Master Order is incorporated by reference into the Court's January 6, 2009 Order appointing a
     discovery master for Phase 2 of this litigation. (*See* Court's Order dated January 6, 2009, p. 2 ["The Discovery
28   Master will serve under the terms and conditions of the Stipulation and Order dated December 6, 2006"]).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES
                                        - 7 -                    ORDER NO. 3
                                                        [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT **5**

PAGE ___**115**

1  "all third parties subject to discovery requests . . . in this litigation shall be bound

2  by the terms of this Stipulation and Order," (Discovery Master Order, p. 6), that

3  order applies to the Financing Entities as well as the Transferee Entities, and its

4  procedures replace those set forth in Local Rule 37. (*Id.*, p. 4).

### 3.    Local Rule 11-6 And Paragraph 4(b) Of The Court's Standing Order

7  The Financing Entities and MGA further argue that Mattel's Motion to

8  Compel should be denied because it exceeds the page limitations set forth in Local

9  Rule 11-6 and Paragraph 4(b) of the Court's Standing Order. (*See* Financing

10  Entities' Opposition to Mattel's Motion to Compel, p. 9; MGA's Opposition to

11  Mattel's Motion to Compel, pp. 18 - 19). Each of these contentions is unavailing.

12  The Discovery Master Order (not the Local Rules or the Court's Standing Order)

13  governs discovery disputes in this case, and it does not impose any page limit on

14  such motions.[7] In fact, the Discovery Master Order dispenses with the formatting

15  requirements of the Local Rules in certain ways, such as allowing letter briefs, and

16  even permits the parties to agree to alternative procedures, including, presumably,

17  filing briefs that are more than 25 pages in length. (*See* Discovery Master Order, p.

18  4). Thus, while the Discovery Master encourages the parties to be as efficient as

19  possible in their briefing, he recognizes that briefs in excess of 25 pages are either

20  directly permitted under the Discovery Master Order (since no page limitation was

21  imposed by the Court) or implicitly allowed (since the parties may agree to

22  alternate procedures). He further recognizes that the complex nature of this case

23  may periodically necessitate the filing of briefs that exceed 25 pages.[8] For all of

---

[7] Even assuming the 25 page limitation for briefs did apply, Mattel had the option of filing separate motions to compel for each of the subpoenas at issue and could have easily extended the page limitation well beyond the 30 pages it filed in connection with its combined motion that addressed multiple subpoenas propounded on the Transferee Entities and the Financing Entities.

[8] In fact, the parties to this lawsuit have filed multiple discovery motions in this case that contained more than 25 pages. (*See* Supplemental Declaration of Jon D. Corey in Support of Mattel, Inc.'s Reply in Response to The MGA Parties' Opposition to Motion to Compel, ¶ 7).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

-8-

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 5

PAGE 116

1   these reasons, filings in excess of 25 pages are permitted.[9]

2            **4.**    **Local Rule 6-1**

3       The Financing Entities argue in passing that Mattel's motion to compel

4   should be denied because it violates Local Rule 6-1. (Financing Entities'

5   Opposition to Mattel's Motion to Compel, p. 6). However, the Discovery Master

6   Order adopts a completely different set of deadlines than the Local Rules for the

7   filing of motions, oppositions and replies, and a different schedule for noticing

8   hearing dates. (Discovery Master Order, p. 4). Therefore, Local Rule 6-1 has no

9   applicability here.

10           **5.**    **Failure To Name MGA In The Motion To Compel**

11       MGA next argues that Mattel's motion to compel is procedurally improper

12   because MGA was not named in the Motion to Compel and Mattel should not be

13   allowed to respond to MGA's objections. (MGA's Opposition to Mattel's Motion

14   to Compel, p. 18). But MGA has cited no legal authority, and the Discovery

15   Master has found none, standing for the proposition that a party must name in its

16   motion to compel all parties who have objected to an underlying subpoena even if

17   they are not actually the target of the subpoena. In fact, the contention that Mattel's

18   Motion to Compel should have been brought against MGA makes no sense given

19   that it could not possibly comply with any order compelling a response to the

20   Subpoenas.

21           **6.**    **Mattel's Separate Statement**

22       MGA also contends that Mattel's Motion to Compel should be denied

23   because its' separate statement "is another classic example of . . . inefficiency."

24   (*Id.*, p. 19). Once again, nothing in the Discovery Master Order prevents a party

25   from filing a separate statement that first identifies the request in dispute and then

26

27   [9] In the event the length of briefs ever becomes excessive, the Discovery Master will issue an order setting a specific

28   page limitation.

EXHIBIT 5

PAGE 117

1    sets forth the various contentions of the parties, even if the information regarding

2    the various requests happens to be repetitive. Regardless, MGA has not cited any

3    legal authority in support of its position and the Discovery Master finds no reason

4    to dispose of Mattel's Motion to Compel merely because it filed a separate

5    statement that contains duplicative arguments.[10]

6          **7.    Meeting And Conferring**

7       As their final procedural argument in opposition to the Motion to Compel,

8    the Transferee Entities and the Financing Entities assert that the motion should be

9    denied because Mattel failed to adequately meet and confer prior to filing the

10    motion. (Financing Entities' Opposition to Mattel's Motion to Compel, pp. 7 - 8;

11    Transferee Entities' Opposition to Mattel's Motion to Compel, pp. 2 - 5).

12          **a.    Applicable Procedure**

13       Prior to filing its motion to compel, Mattel had an obligation to comply with

14    both the Federal Rules of Civil Procedure and the Discovery Master Order. Federal

15    Rule of Civil Procedure 37(a) expressly requires that a party filing a motion to

16    compel discovery first meet and confer in "good faith." (Fed. R. Civ. Proc. 37(a)).

17    Similarly, the Discovery Master Order states that unless an "alternative procedure"

18    is agreed upon or otherwise ordered by the Discovery Master, the

19           moving party shall first identify each dispute, state the relief
20           sought, and identify the authority supporting the requested relief
              in a meet and confer letter that shall be served on all parties by
21           facsimile or electronic mail. The parties shall have five court
              days from the date of service of that letter to conduct an in-person
22           conference to attempt to resolve the dispute. If the dispute has
              not been resolved within five court days after such service, the
23           moving party may seek relief from the Discovery Master by
              formal motion or letter brief . . .

24    (Discovery Master Order, p. 4).

25    //

26

27    ─────────────────────
     [10] The Discovery Master notes that where there are numerous discovery requests in dispute he would prefer for a
28    separate statement to be submitted by the moving party.

EXHIBIT 5

PAGE 118

b.   **Mattel's Meet And Confer Regarding The Financing Entities**

In challenging Mattel's meet and confer effort, the Financing Entities first claim that Mattel violated the Discovery Master Order because no "in-person meeting occurred." (Financing Entities' Opposition to Mattel's Motion to Compel, p. 8). But that argument is without merit, since Mattel and the Financing Entities agreed to an alternative procedure that disposed of the in-person meet and confer requirement.[11] Indeed, MGA's counsel sent counsel for Mattel, counsel for the Transferee Entities and counsel for the *Financing Entities* a letter on January 23, 2009 memorializing the parties' agreement and establishing a schedule whereby the parties would "meet and confer on January 29 and 30 . . ." (Mattel's Reply in Support of its Motion to Compel filed on February 13, 2009, pp. 9 - 10; Supplemental Declaration of Jon D. Corey in Support of Mattel's Reply to the Motion to Compel filed on February 13, 2009, ¶ 4 and Ex. 2). That the Financing Entities' counsel received this letter and acted in accordance with its terms is evidenced by, among other things, the fact that they served objections to the Subpoenas on January 28, 2009 (which was the deadline specified in the January 23 letter) and started meeting and conferring with Mattel's counsel telephonically on January 30. (Financing Entities' Opposition to Mattel's Motion to Compel, pp. 3 and 4). Accordingly, Mattel did not have any obligation to meet with the Financing Entities in person since the parties had agreed to waive that obligation.

Nevertheless, Mattel still had an obligation to meet and confer with the Financing Entities in good faith. Good faith cannot be shown merely through perfunctory efforts; rather Federal Rule of Civil Procedure 37 mandates a genuine attempt to resolve the discovery dispute through non-judicial means. (Fed. R. Civ.

---

[11] To promote efficiency and minimize the necessity for counsel to travel between their respective offices, the Discovery Master shall deem Paragraph 5 of the Discovery Master Order (mandating that the parties have an in person conference to attempt to resolve discovery disputes) to be sufficiently satisfied if the parties and non-parties involved in a discovery dispute meet and confer telephonically or by video conference. However, the Discovery Master emphasizes that this accommodation in no way lessens the parties' obligation to meet and confer in good faith.

EXHIBIT  **5**

PAGE  **119**

1   Proc. 37(a)(1)).

2       Because the evidence and declarations submitted by Mattel and the Financing
3   Entities are in conflict regarding what transpired during their respective meet and
4   confer communications, (*Cf.* Financing Entities' Opposition to Mattel's Motion to
5   Compel, pp. 3 – 5; Mattel's Reply Brief in Support of its Motion to Compel filed on
6   February 13, 2009, pp. 9-10), the Discovery Master gives Mattel the benefit of the
7   doubt and concludes that it adequately met and conferred with respect to Omni 808
8   Investors, LLC and Vision Capital, LLC.

9       By contrast, Mattel arguably did not even begin the meet and confer process
10  with OmniNet Capital, LLC prior to filing its motion to compel, because counsel
11  for the Financing Entities informed Mattel that they did not receive that Subpoena
12  until the afternoon of February 2, 2009 and filed objections to the Subpoena on that
13  date. (Financing Entities' Opposition to Mattel's Motion to Compel at p. 5). No
14  "good faith" meeting could therefore have taken place.

15      Although the meet and confer with respect to OmniNet Capital, LLC was
16  inadequate, the Discovery Master will nonetheless address the merits of Mattel's
17  Motion to Compel in all respects, including concerning the Subpoena served on
18  OmniNet Capital, LLC. The Discovery Master does so for purposes of efficiency
19  (i.e., the issues to be decided regarding the subpoena served on OmniNet Capital,
20  LLC are essentially identical to those that must be addressed in connection with the
21  subpoenas served on Omni 808 Investors, LLC and Vision Capital, LLC) and
22  because addressing the merits of the motion does not alter the outcome.[12]

23                    c.   **Mattel's Efforts To Meet And Confer Regarding The**
24                         **Transferee Entities**

25      Like the Financing Entities, the Transferee Entities contend that Mattel's
26  motion to compel should be denied because it did not meet and confer in good faith.

27

28  [12] As noted above, the parties are admonished to abide by the provisions of the Discovery Master Order requiring a
    good faith attempt to meet and confer regarding discovery disputes prior to the filing of any discovery motion.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES
                                    - 12 -                    ORDER NO. 3
                                              [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 5

PAGE 120



1   (Transferee Entities' Opposition to Mattel's Motion to Compel, pp. 2 - 5). Yet, the

2   Transferee Entities concede that their counsel engaged in multiple meet and confer

3   teleconferences. (*Id.* at pp. 3 - 4). Several emails and letters were also exchanged

4   between the parties as part of the meet and confer process. (*Id.*). In light of these

5   interactions, the Discovery Master again gives Mattel the benefit of the doubt in

6   favor of resolving the issues on the merits and concludes that it adequately met and

7   conferred with the Transferee Entities.

8       **B.   Legal Standard Governing Enforcement Of The Subpoenas**

9       Federal Rule of Civil Procedure 26(b)(1) provides for discovery in civil

10   actions of "any matter, not privileged, which is relevant to the subject matter

11   involved . . . . The information sought need not be admissible at the trial if the

12   information sought appears reasonably calculated to lead to the discovery of

13   admissible evidence." Rule 26(b) is liberally interpreted to permit wide-ranging

14   discovery of all information reasonably calculated to lead to discovery

15   of admissible evidence; but the discoverable information need not be admissible at

16   the trial. (*Jones v. Commander, Kansas Army Ammunitions Plant*, 147 F.R.D. 248,

17   250 (D.Kan.1993)).

18       The broad scope of discovery described in subsection (b)(1) is tempered by

19   provisions protecting the responding party from undue burden. Rule 26(b)(2)

20   provides that the frequency or extent of discovery otherwise allowed by the Rules

21   must be limited if the court determines that "(i) the discovery sought is

22   unreasonably cumulative or duplicative, or is obtainable from some other source

23   that is more convenient, less burdensome, or less expensive; (ii) the party seeking

24   discovery has had ample opportunity by discovery in the action to obtain the

25   information sought; or (iii) the burden or expense of the proposed discovery

26   outweighs its likely benefit, taking into account the needs of the case, the amount in

27   controversy, the parties' resources, the importance of the issues at stake in the

28   litigation, and the importance of the proposed discovery in resolving the issues."

EXHIBIT **5**

PAGE **121**

1       Moreover, the Federal Rules distinguish between discovery from non-parties

2  to a lawsuit (governed under Rule 45) and discovery from parties (governed

3  generally by Rule 26), based in part on the recognition that the former is inherently

4  more burdensome and less convenient than the latter. (*See, e.g., Solarex v. Arco*

5  *Solar, Inc.*, 121 F.R.D. 163, 179 (E.D.N.Y. 1988) [The status of a non-party is

6  significant when determining whether compliance with a discovery demand would

7  constitute an undue burden]; *Katz v. Batvia Marine and Sporting Supplies, Inc.*, 984

8  F.2d 422, 424 (Fed. Cir. 1993) [The fact that discovery is sought from a non-party

9  is one factor that the Court may weigh in determining whether the discovery

10  requested is necessary, relevant, or burdensome]. Courts applying Rules 26 and 45

11  have interpreted these rules to afford non-parties special heightened protection

12  against burdensome discovery. (*See, e.g., Exxon Shipping Co. v. U.S. Dept of*

13  *Interior*, 34 F.3d 774, 779 (9th Cir. 1994)).

14       Accordingly, requests for documents that pertain to a party and that can be

15  more easily and inexpensively obtained from that party also impose an undue

16  burden. (*Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 638 (C.D. Cal. 2005)).

17  Further, if the documents sought are neither relevant nor calculated to lead to the

18  discovery of admissible evidence, "then any burden whatsoever imposed upon the

19  non-party would be by definition undue." (*Compaq Computer Corp. v. Packard*

20  *Bell Electronics, Inc.*, 163 F.R.D. 329, 335-336 (N.D.Cal. 1995)).

21       Each of the moving parties bears the burden of establishing the basis for the

22  relief it seeks. As the party moving to compel compliance with the Subpoenas,

23  Mattel bears the burden of "establishing that the information sought is relevant and

24  necessary to its lawsuit." (*Cytodyne Technologies, Inc. v. Biogenic Technologies,*

25  *Inc.*, 216 F.R.D. 533, 534 (M.D.Fla. 2003)).

26       Finally, in deciding whether to enforce a subpoena, the Discovery Master

27  must balance "the relevance of the discovery sought, the requesting party's need,

28  and the potential hardship to the party subject to the subpoena." (*Heat & Control,*

EXHIBIT 5

PAGE 122

1 *Inc. v. Hester Industries, Inc.*, 785 F.2d 1017, 1024 (Fed.Cir.1986) citing

2 *Deitchman v. E.R. Squibb & Sons, Inc.*, 740 F.2d 556, 560, 564 (7th Cir.1984)).

3     **C.**    **Mattel's Contention That MGA Has Placed Its Finances At Issue**

4     As its first ground for moving to compel production of the documents sought

5 by the Subpoenas, Mattel argues that MGA has misrepresented its finances, thereby

6 making it necessary and appropriate for Mattel "to obtain an accurate understanding

7 of MGA's and Larian's finances." (Motion to Compel, p. 14). According to

8 Mattel, MGA's supposed misrepresentations have placed its financial condition at

9 issue, and have opened the door to discovery of any information bearing on MGA's

10 finances. (*Id.* ["Discovery on MGA's financials is amply warranted by MGA's

11 own statements *alone*."] (emphasis added)).

12     However, after Mattel filed its Motion, the Court made it clear that the

13 validity of the Subpoenas must be evaluated with reference to whether they relate to

14 the matters to be adjudicated in Phase 2. As the Discovery Master understands the

15 Court's ruling, the Subpoenas cannot be justified merely because they seek

16 information regarding some contention made during Phase 1, without regard to

17 Phase 2. In other words, putting a fact at issue in Phase 1, cannot, standing alone,

18 suffice to render that fact the proper subject of discovery in Phase 2.

19     Thus, to the extent Mattel's first argument asserts that MGA's statements,

20 standing alone, warrant discovery from the Subpoena recipients, that argument is

21 rejected. Rather, the Discovery Master will evaluate whether discovery of MGA's

22 finances is warranted in light of the issues to be adjudicated in Phase 2.

23     Further, even if Mattel were not required to demonstrate some nexus between

24 the Subpoenas and the issues to be adjudicated in Phase 2, the argument that the

25 Subpoenas are justified because MGA placed its financial condition at issue would

26 still fail for the simple reason that Mattel is not seeking discovery from MGA but

27 rather *non- parties*. Mattel does not cite any statements or conduct by the

28 //

EXHIBIT **5**

123

PAGE _____



1    Financing Entities putting their financial affairs at issue in this litigation.[13]

2    Rather, Mattel argues that the statements and conduct of *MGA* should be attributed

3    to the Financing Entities and construed as their consent to discovery of their

4    internal financial affairs.  Such an assumption is unwarranted.

5    **D.    Mattel's Contention That The Subject Discovery Is Relevant To**

6    **Phase 2**

7    **1.    Subpoenas To The Financing Entities**

8    Mattel next argues that the Subpoenas to the Financing Entities seek

9    information relevant to a variety of Phase 2 issues.[14]

10    **a.    Mattel's RICO Counterclaim**

11    Mattel first asserts in its Motion to Compel that the discovery it seeks is

12    relevant to its RICO counterclaim because "Mattel alleges that the counter-

13    defendants have operated a widespread criminal enterprise that has engaged in

14    numerous acts of mail and wire fraud and other predicate acts in violation of the

15    RICO statute" and that "MGA's mid-trial transactions with Omni 808 and the other

16    non-operating entities" is "a continuation of that pattern of racketeering activity."

17    (Motion, p. 18).

18

19    [13] In its Reply to the Financing Entities' Opposition to its Motion to Compel, Mattel argues that the Financing
20    Entities (referred to by Mattel as the "Omni Parties") have injected themselves into the litigation because one of
      them, Omni 808 Investors, LLC, applied to intervene. (Reply, p. 8). However, a decision on that application has
21    been deferred by the Court, (Tr., 80:15 – 17), and therefore Omni 808 Investors, LLC and the other Financing
      Entities remain outsiders to the litigation entitled to the heightened protection from discovery normally afforded non-
      parties.

22    [14] Mattel argues in one of its reply briefs filed on February 25, 2009 that the Discovery Master should strike MGA's
23    Opposition to the Motion to Compel because: (1) MGA indicated that it would not be filing an Opposition and
      (2) the Opposition was filed a week late. (See Mattel's Reply in Response to MGA's Opposition to the Motion to
24    Compel, p. 4). The Discovery Master declines that request. The assertion that MGA would not file an Opposition is
      based on an alleged oral conversation which counsel for Mattel apparently did not confirm in writing. (See
25    Supplemental Declaration of Jon D. Corey in Support of Mattel's Reply in Response to MGA's Opposition to the
      Motion to Compel, ¶ 4). Even assuming such a statement had been made, MGA was entitled to change its mind. As
26    for Mattel's argument that the Opposition was untimely, the Discovery Master notes that he was only recently
      appointed. This fact combined with the backlog of discovery motions may have resulted in some confusion as to
27    when various briefs were due to be filed. The Discovery Master prefers to address issues on the merits and declines
      to strike the Opposition as untimely. Notwithstanding the foregoing, the Discovery Master urges the parties to
28    strictly comply with the briefing schedule set forth under the Discover Master Order for all future discovery motions
      unless an alternative procedure is agreed upon by the parties and approved by the Discovery Master or the Court.



EXHIBIT 6

PAGE 124

1   But Mattel's allegations in support of its RICO counterclaim turn on

2   misappropriation of trade secrets and confidential information, and make no

3   mention of improper transfers of funds or any other predicate act similar to MGA's

4   purported business transactions with any of the Financing Entities.[15] Accordingly,

5   these financial transactions are not a "continuation" of the "pattern" of conduct

6   Mattel alleges in very precise detail in its RICO counterclaim. (*Asdourian v.*

7   *Konstantin*, 77 F. Supp. 2d 349, 358 (E.D.N.Y. 1999) [cited by Mattel and stating

8   RICO claimant must show "[a]n interrelationship between acts, suggesting the

9   existence of a pattern, [which] may be established...[by] proof of their temporal

10  proximity, or common goals, or similarity of methods, or repetitions' (citation

11  omitted)]; *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 238-39 (1989) [RICO claims

12  must be supported by a "pattern" of activity and "the mere fact that there are a

13  number of predicates is no guarantee that they fall into any arrangement or order.

14  A pattern is not formed by sporadic activity ... Instead, the term 'pattern' itself

15  requires the showing of a relationship between the predicates" (quotations and

16  internal citations omitted)]).

17  At this stage, Mattel has failed to demonstrate a relationship between the

18  predicate acts alleged by Mattel in its Counterclaims – which were bound together

19  by a purported scheme to misappropriate Mattel's trade secrets – and the

20  //

21  //

22  //

23  [15] *See* Mattel's Second Amended Answer and Counterclaims ("Counterclaims"), p. 55-62, ¶ 90 [alleging the MGA
24  Parties and other counter-defendants "for the purpose of executing and attempting to execute the scheme to
    improperly defraud Mattel and steal its trade secret or otherwise confidential and proprietary information" committed
25  various predicate acts], ¶ 91 [alleging the MGA Parties and other counter-defendants "shared the common purpose of
    enabling MGA to obtain confidential, proprietary and otherwise valuable Mattel property through improper means in
26  order to assist MGA in illegally competing with Mattel"], ¶ 92 [alleging the enterprises are continuing enterprises
    because they are "designed to and did unlawfully acquire the confidential business information and property of
27  Mattel and incorporated this information and property into MGA's ongoing business, marketing strategies and
    business methods, practices, and processes"], ¶ 93(a) [alleging mail fraud committed in furtherance of scheme to
28  "defraud Mattel of its confidential trade secret information and property"], ¶ 93(b) [alleging wire fraud "defraud
    Mattel of its confidential and trade secret information and property"], and ¶ 102 [the MGA Parties and other counter-
    defendants "schemed to defraud Mattel and steal its property and trade secret information"].

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 17 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]



EXHIBIT 5

125

PAGE _____

1    transactions Mattel seeks to investigate here.[16]

2        Also, the RICO counterclaim (like the other counterclaims to be adjudicated

3    in Phase 2) was asserted in July, 2007 – more than a year before either Omni 808

4    Investors, LLC or Vision Capital, LLC came into existence – and therefore

5    apparently did not encompass the activities of those entities or the transactions

6    which are the subject of the Financing Discovery.  While that fact might be

7    overcome by a showing that the Financing Entities were created or used to further a

8    scheme to carry on misconduct that is the subject of Phase 2, Mattel did not

9    demonstrate that such is the case in its briefs and supporting evidence.

10        In sum, absent some argument or evidence demonstrating a nexus between

11    the predicate activities alleged in the RICO counterclaim, on the one hand, and the

12    transactions and other matters which are the subject of the Financing Discovery, on

13    the other hand, there has been no showing by Mattel that the Subpoenas to the

14    Financing Entities are reasonably calculated to lead to the discovery of admissible

15    evidence regarding the RICO counterclaim.

16                  **b.**    **Mattel's Disgorgement Remedy**

17        Next, Mattel asserts that the Subpoenas to the Financing Entities seek

18    information relevant to its remedy of disgorgement, which is an available remedy

19    for Mattel's Phase 2 counterclaim for misappropriation of trade secrets.  Mattel

20    argues:

21

22    [16] This conclusion is consistent with the case cited by Mattel – *Eastman Kodak Co. v. Camarata*, 238 F.R.D. 372

23    (W.D.N.Y. 2006).  There, the plaintiffs "asserted broad civil RICO claims against the Nicolo defendants predicated, among other violations, upon alleged money laundering violations.  Specifically, the Complaint alleges that the

24    Nicolo defendants and the other named defendants constituted an enterprise as defined in the RICO statute that was engaged in a pattern of racketeering activity, including mail and wire fraud and, more importantly for purposes of

25    this motion, money laundering." (*Id.*, at 375).  "The alleged money laundering consisted of repeated deposits into various financial institutions in order both to promote and carry on the unlawful activity – that is, by paying and

26    depositing kickbacks to certain members of the enterprise – and to conceal and attempt to conceal the proceeds, their nature, source and location – that is, by transferring funds between defendants and between various accounts

27    maintained by those defendants." (*Id.* [emphasis added]).  Thus, inquiry into the defendants' finances was appropriate as it was likely to reveal activity related to the alleged predicate acts.  Here, on the other hand, Mattel has

28    not alleged any sort of financial scheme which would support inquiry into the MGA Parties' financial transactions with third parties.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 18 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 5

PAGE 126

1        For purposes of establishing disgorgement, Mattel must take into
account money transferred from MGA and Isaac Larian,
regardless of the manner in which it was transferred.  Mattel is
entitled to discovery that shows all assets siphoned from MGA or
Isaac Larian . . . . By these subpoenas, Mattel seeks evidence to
prove the amount the defendants must disgorge.  Money that
properly belonged to Mattel was transferred from MGA or Isaac
Larian to an entity controlled by them.

(Motion, pp. 20:1 – 4, 21:12 – 14).

While the foregoing statements may be true as a general proposition, none of
the Financing Entities is alleged to have "received money that properly belonged to
Mattel."  To the contrary, Mattel asserts that the Financing Entities are creditors of
MGA.  Therefore, Mattel has not demonstrated how any of the categories of
documents sought from the Financing Entities would aid it in ascertaining the
amount defendants must disgorge.

### c.     Phase 2 Damages

Mattel's third argument in favor of enforcement of the Subpoenas is that they
"seek documents relevant to MGA's financial condition" and other "factors
relevant to an award of punitive damages." (Motion to Compel, p. 21:19 – 22).
Depending on the particular scope of the document request, such discovery from
Omni 808 Investors, LLC may be appropriate in connection with Phase 2 because
any information evidencing MGA's indebtedness to Omni 808 Investors, LLC from
the purchase of the alleged Wachovia debt or direct loans to MGA is relevant to
MGA's net worth (and hence punitive damages).[17]  As the Court noted in its
February 11, 2009 ruling:

I can see tremendous overlap between, for example, discovery on

---

[17] The Discovery Master's analysis is fundamentally different for OmniNet Capital, LLC and Vision Capital, LLC
because neither entity is alleged by Mattel to be a creditor of MGA Entertainment, Inc.  (Motion to Compel, pp. 9
and 10).  To the contrary, Mattel concedes that "OmniNet [Capital, LLC] is not the secured party, and thus
presumably not the actual debt purchaser/lender.  Rather, the company holding the security interest is Omni 808
[Investors, LLC] . . . [which] appears to be owned funded by a company called Vision Capital, LLC." (Id.)  Because
it admits that OmniNet Capital, LLC and Vision Capital, LLC are not creditors of MGA, Mattel has failed to show
that the information sought from those entities has any bearing on MGA's financial condition.

EXHIBIT 5
PAGE 127

1        financial condition of the company as it relates to damages in the
   Phase 2 and also issues that the receiver is looking at. And
2        without making a ruling on any of this, I would not suggest for a
   moment that these are mutually exclusive categories.
3
   (Tr., 101:3 - 8)
4
       Mattel argues that the necessary connection between the Financing
5
   Discovery and Phase 2 damages exists because the Financing Entities have acquired
6
   a security interest in MGA's assets, which, in turn, affects MGA's financial
7
   condition. Specifically, Mattel argues that Omni 808 Investors, LLC is:
8
9        directly involved in providing funding to MGA in exchange for a
   security interest. Such funding, and security interests, are in and
   of themselves directly relevant to the financial condition of the
10       MGA Parties, including the amount of the security interests, the
   terms and conditions of the funding, and the rate of funding. . . .
11
   (Motion to Compel, p. 22: 13 – 17).
12
13     The Discovery Master agrees that such limited information, as it relates to
14 the purchase by Omni 808 Investors, LLC of the debt obligation previously held by
15 Wachovia Bank, is reasonably calculated to lead to the discovery of admissible
16 evidence concerning Phase 2 issues, including the calculation of MGA's net worth
17 for purposes of calculating punitive damages.[18] Accordingly, Mattel's motion to
18 compel responses from Omni 808 Investors, LLC is granted with respect to
19 documents relating to (1) the existence of any debt owed by MGA Entertainment,
20 Inc. to Omni 808 Investors, LLC and (2) any communications between Omni 808
21 Investors, LLC and the MGA parties regarding any such indebtedness.
22     The problem, however, is the vast majority of the document requests set forth
23 in the Subpoena propounded on Omni 808 Investors, LLC are not narrowly tailored
24 to obtain information demonstrating the amount and nature of MGA's indebtedness
25 (and hence net worth) or communications regarding any such debt,[19] but instead

26 ─────────────────
   [18] During oral argument, counsel for MGA represented (and counsel for Mattel seemed to agree) that the Court
27 deferred discovery regarding the Wachovia debt until the middle of the Phase I trial. (Reporter's Transcript of
   Proceedings, March 4, 2009, pp. 72, 85 and 86). The extent to which that damages information was obtained directly
28 from Wachovia, as opposed to MGA, is not clear from the record provided to the Discovery Master.

   [19] Nor did Mattel move to compel MGA to produce this information in the first instance.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 20 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 5
PAGE 128

1 would require the Financing Entities to produce virtually every document in their
2 possession regarding their formation, operations, and history of transactions.
3 Among other things, the Subpoenas to the Financing Entities seek:

4     • All records that "substantiate transfers of assets" by the Financing
5         Entities "to other entities, individuals, and/or parties, within the U.S.
6         and outside of the U.S." (Exhibits 27-29 to Supplemental Declaration
7         of Jon D. Corey In Support Of Mattel, Inc.'s Reply In Support Of
8         Motion To Compel Production of Documents Responsive to Third-
9         Party Subpoenas, Attachment A, ¶ 16);

10     • All documents "detailing or setting forth the relationship" between
11         each of the Financing Entities and other non-parties (*Id.* at ¶¶ 6-10);

12     • All documents referring or relating to the "all contributions, loans and
13         any sources of funding" for the Financing Entities (*Id.* at ¶ 13);

14     • All documents referring or relating to the "source of funding" of other
15         non-parties (*Id.* at ¶ 16);

16     • All documents showing detail of "all loan facilities" referring or
17         relating to the Financing Entities and other non-parties (*Id.* at ¶ 14);

18     • All documents referring or relating to "transactions involving any
19         compensation, loans, advances, payments, fees or any other form of
20         consideration" paid to other non-parties (*Id.* at ¶ 15);

21     • All "communications" referring or relating to the Financing Entities
22         and other non-parties (*Id.* at ¶ 17).

23     Accordingly, the Discovery Master concludes that most of the categories of
24 documents in the Subpoenas are overbroad and not reasonably calculated to lead to
25 the discovery of admissible evidence with respect to Phase 2 issues, as detailed in
26 Section IV below (entitled "Disposition").
27 //
28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 21 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 5   129

PAGE _____

1          **d.      Credibility Of MGA Witnesses**

2          Mattel's fourth argument consists of a single, conclusory paragraph asserting

3     that it is entitled to its discovery in order to determine the credibility of MGA's

4     witnesses.  To support this argument, Mattel first states that information is

5     discoverable "if it relates to 'the credibility of any witness.'"  (Motion to Compel,

6     p. 23 (citing *Cable & Computer Tech., Inc. v. Lockheed Sanders, Inc.,* 175 F.R.D.

7     646, 650 (C.D. Cal. 1997)).[20]  Next, Mattel asserts that "MGA and Larian made

8     statements under oath about their financial condition as well as about the role of

9     Omni 808 and the other non-operating entities in providing MGA with additional

10    funding."  (*Id.*)  But that is the full extent of Mattel's argument.  Mattel does not

11    attempt to show that the specific discovery that it has propounded is reasonably

12    calculated to lead to the discovery of the evidence that it contends would be

13    admissible.

14          Discoverable information generally includes evidence relevant to the

15    credibility of a party or a key witness.  (See *Paulsen v. Case Corp.,* 168 F.R.D. 285,

16    287-288 (C.D. Cal. 1996); see also *Ragge v. MCA/Universal Studios,* 165 F.R.D.

17    601, 603-604 (C.D. Cal. 1995); *U.S. v. City of Torrance,* 164 F.R.D. 493, 495 (C.D.

18    Cal. 1995)).  If Mattel's discovery were reasonably calculated to lead to the

19    discovery of such information, then it might be permissible.  (*Id.* ["Rule 26 is

20    liberally interpreted to permit wide ranging discovery of all information reasonably

21    calculated to lead to discovery of admissible evidence."])  But Mattel has not taken

22    any steps to connect its discovery to such evidence.  As discussed above, Mattel

23    bears the burden of demonstrating that its discovery is reasonably calculated to lead

24    to the discovery of admissible evidence.  Here, Mattel has only stated that

25    credibility evidence can be admissible and that credibility is at issue in this case –

26    without referring at all to specific categories of documents in the Subpoenas or

27

28    [20] The Discovery Master notes that the case cited by Mattel does not actually discuss or apply this proposition.



EXHIBIT 3

130

PAGE _____

1  linking those categories of documents to prior or anticipated testimony of MGA's

2  witnesses. Simply stating that credibility evidence is discoverable does nothing

3  toward meeting Mattel's burden to demonstrate that the particular discovery at issue

4  here is reasonably calculated to lead to the discovery of such evidence.

5              e.     MGA's Unclean Hands

6         Mattel next argues in its Motion to Compel that MGA has asserted an

7  unclean hands defense in response to Mattel's Phase 2 claims, and consequently

8  Mattel is entitled to discover whether the MGA Parties are currently "engaging in

9  sham and fraudulent financial transactions such as concealing profits" to preclude

10  MGA "from invoking the unclean hands defense themselves." (Motion, pp. 23 -

11  24.) But this argument does not apply to the Financing Entities because, as

12  discussed above, Mattel does not claim that the Financing Entities have "received

13  money that properly belonged to Mattel" or otherwise used those entities to conceal

14  profits. To the contrary, Mattel asserts that the Financing Entities are creditors of

15  MGA.

16         Regardless, Mattel's theory is that, even if Mattel has unclean hands, MGA

17  may not assert that defense unless MGA itself is blameless. (*Id.*, at 24 [a "party

18  asserting an equitable defense, however, must itself have 'clean hands.'"]).

19  Mattel's statement of the law is correct as far as it goes. But, as the Ninth Circuit

20  has stated, "'unclean hands does not constitute 'misconduct in the abstract,

21  unrelated to the claim to which it is asserted as a defense.'" (*Jarrow Formulas, Inc.*

22  *v. Nutrition Now, Inc.*, 304 F.3d 829, 841 (9th Cir. 2002)). "It is fundamental to

23  [the] operation of the doctrine that the alleged misconduct . . . relate directly to the

24  transaction concerning which the complaint is made." (*Dollar Sys., Inc. v. Avcar*

25  *Leasing Sys., Inc.* 13 F.2d 165, 173 (9th Cir. 1989)). Accordingly, courts will not

26  allow discovery based on an unclean hands defense where the "allegations of

27  misconduct do not relate to the transactions... forming the basis for the

28  []complaint." (*Gen-Probe, Inc. v. Amoco Corp.*, 926 F. Supp. 948, 952 (S.D.Cal.

AKENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

                                           - 23 -                            ORDER NO. 3
                                               [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 5
131
PAGE _____

1   1996)).

2   Here, Mattel does not link any of the categories of documents referenced in

3   the Subpoenas (which involve the creation and operation of the Financing Entities

4   beginning with their formation in the summer of 2008) to any of the conduct at

5   issue in Phase 2 (which involves such matters as the alleged theft of trade secrets in

6   Mexico in 2004 and other conduct unrelated to the relationship between the

7   Financing Entities and MGA). Accordingly, the Financing Discovery is not

8   reasonably calculated to lead to the discovery of admissible evidence regarding

9   MGA's alleged unclean hands in connection with the matters to be adjudicated in

10   Phase 2.

11                    **f.      Mattel's Unfair Competition Counterclaim**

12   As Mattel acknowledges, California's Unfair Competition Law, Business &

13   Professions Code §§ 17200 et seq. (the "Unfair Competition Law") encompasses

14   "'anti–competitive business practices as well as injuries to consumers, and has as a

15   major purpose the preservation of fair business competition.'" (Opp. at 24:25 –

16   25:2, quoting *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone*

17   *Co.* (1999) 20 Cal.4th 163, 180)). However, Mattel's papers do not sufficiently

18   demonstrate that the documents sought from the Financing Entities involve "anti-

19   competitive business practices," "injuries to consumers," or anything affecting

20   consumers or the public at all. Instead, Mattel simply asserts, without any

21   supporting analysis, that MGA has violated the Unfair Competition Law by

22   "manipulating the sources of [its own] funding" (presumably the Financing

23   Entities). That allegation, even if true, does not appear to involve the "unlawful,

24   unfair or fraudulent" marketing or sale of anything and therefore does not fall

25   within the ambit of the Unfair Competition Law.

26   //

27   //

28   //



EXHIBIT 5
132
PAGE _____

1        **g.    Summary Of The Discovery Master's Findings With**

2        **Respect To The Subpoenas Directed To The Financing**

3        **Entities**

4        For the foregoing reasons, the Discovery Master finds that, based on the

5  record before him, Mattel has failed to sufficiently articulate the necessary

6  connection between most of the Financing Discovery and any Phase 2 issue.

7  Moreover, while there is a connection between the Financing Discovery and some

8  of the Phase 2 issues referenced (i.e., MGA's financial condition and its bearing on

9  Mattel's claim for punitive damages), Mattel has failed to demonstrate that the

10  Subpoenas meet the standard set forth in Rule 26(b)(2) and that all of the requested

11  discovery is permissible in light of the case law interpreting Rules 26 and 45.

12        Accordingly, Mattel's motion to compel the Financing Entities to comply

13  with the Subpoenas is **GRANTED** in part and **DENIED** in part.

14        **2.    Subpoenas To The Transferee Entities**

15        In their briefs regarding the enforceability of the Subpoerias, Mattel and

16  MGA do not, as a general rule, make a distinction between the Financing Entities

17  and the Transferee Entities, but rather direct the same arguments to both groups

18  collectively.  However, there are important distinctions between the two groups,

19  including, without limitation, that: (1) the Transferee Entities appear to be affiliated

20  with – if not wholly owned by – Larian; (2) the Transferee Discovery involves the

21  sale of MGA assets (i.e., Bratz products) in which Mattel has an ownership interest

22  pursuant to the Court's December 3, 2008 ruling; and (3) the Subpoenas seek some

23  documents relevant to Phase 2 issues which presumably cannot be obtained from

24  MGA, namely the Transferee Entities' contracts with, and records of sales to, third

25  parties purchasing the Bratz products.  Accordingly, in ruling on the Subpoenas

26  directed to the Transferee Entities, the Discovery Master's analysis of certain of the

27  parties' above-referenced arguments differs, as follows.

28  //

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 25 -

EXHIBIT **5**
133

### a.   Non-Party Considerations

To begin with, the distinction between a party and non-party here is less compelling given the MGA parties' apparent admission that the Transferee Entities are single purpose entities created and controlled by Larian (who is, of course, himself a party) to dispose of inventory that is the subject of this litigation. Further, the MGA parties presumably do not have custody of the sales contracts whereby IGWT Group LLC sold Bratz products to third parties. The Discovery Master also notes that counsel for the Transferee Entities has submitted a declaration stating that there are "hundreds of sales contracts at issue, and as such, thousands of documents responsive to Mattel's requests." (Declaration of Jeffrey B. Valle dated February 17, 2009 ["Valle Decl."], ¶ 7). The unavailability of these relevant documents from any other source weighs heavily in favor of enforcing the Subpoena to IGWT Group LLC.

### b.   Relevance To Phase 2 Issues

#### 1.   Phase 2 Damages

As mentioned above, Mattel argues that the Subpoenas "seek documents relevant to MGA and Larian's financial condition, net worth, and ability to pay" on the ground that such information is relevant to Mattel's Phase 2 damages claims, including Mattel's claim for punitive damages.

For the reasons previously discussed, the Discovery Master finds that, with respect to the Financing Entities, the discovery requests were, for the most part overbroad, and/or not sufficiently linked to Phase 2 issues. However, the Discovery Master's analysis is necessarily different with respect to entities which were created and apparently wholly owned and/or controlled by Larian (a defendant in Phase 2), and which are admittedly selling inventory which generate revenues in which Mattel has an interest. Specifically, Mattel contends that Larian has caused MGA to sell the inventory at a deep (80%) discount to the Transferee Entities. This practice, if true, limits MGA's profits (which go to MGA's balance sheet, and ultimately

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 26 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 5

PAGE 134

1   affects MGA's net worth) while at the same time allowing Larian to capture

2   additional profits which otherwise would have been realized by MGA and reflected

3   on MGA's balance sheet).  Accordingly, the Discovery Master finds that most of

4   the documents Mattel seeks to subpoena from the Transferee Entities properly

5   relate to Phase 2 issues, as specified in Section IV below.[21]

6   **2.   Mattel's Unfair Competition Counterclaim**

7   Given MGA's admissions regarding Larian's ownership/control of the

8   Transferee Entities, coupled with their sale of inventory purchased from MGA, the

9   Discovery Master finds that many of the documents requested from the Transferee

10   Entities are also arguably related to a "fraudulent," "unlawful," or "unfair" business

11   practice within the meaning of the Unfair Competition Law and the scope of

12   Mattel's Counterclaims.  Among other things, the Court's December 3, 2008 order

13   imposes a constructive trust on the proceeds of MGA's sale of the subject

14   inventory.  If, as Mattel argues, MGA's sale of that inventory to the Transferee

15   Entities constitutes a scheme on the part of Larian to enrich himself by depriving

16   Mattel of the true profits to be paid to Mattel pursuant to the Court's order, then

17   such conduct would constitute an unlawful attempt to circumvent the Court's order

18   and arguably render the transaction between MGA and the Transferee Entities an

19   anti-competitive business practice that is unlawful, unfair or fraudulent to other toy

20   manufacturers, including Mattel.  Therefore, such alleged misconduct, if proven,

21   could violate the Unfair Competition Law.

22   Moreover, although Mattel asserted its counterclaim for violation of the

23   Unfair Competition Law prior to the alleged misconduct (and long before the

24   Transferee Entities came into existence), Mattel phrased its allegations broadly

25

26   [21] The Discovery Master notes that IGWT 826 Investments is registered at the home address of Larian's sister and
brother-in-law, indicating that some of Larian's relatives may be involved in the ownership or operation of the

27   Transferee Entities.  Accordingly, the Discovery Master has specified in some instances that the production of
documents shall include those referencing not only Larian, but also his spouse, his children, his siblings, or their

28   spouses, or any entity or person affiliated with them.  However, the Discovery Master has stopped short of ordering
the production of documents relating to any other entities, individuals "within the U.S. and outside the U.S.," as
requested in Category 6 of each of the Subpoenas directed to the Transferee Entities.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 27 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 5   135

PAGE _____

1  enough to potentially encompass subsequent acts of unfair competition which

2  perpetuate or extend the misconduct alleged in the Counterclaims. Unlike Mattel's

3  RICO counterclaim, Mattel's Twelfth Counterclaim for Unfair Competition does

4  not purport to rest on a list of enumerated, factually detailed and carefully defined

5  acts, but rather is phrased broadly to cover "unlawful, unfair and/or fraudulent acts

6  of unfair competition" which include, "without limitation" certain illustrative

7  examples. (Counterclaims, p. 74, ¶ 165).

8      Of course, the Discovery Master cannot predict whether the Court will

9  ultimately deem Mattel's unfair competition counterclaim to be sufficiently elastic

10  to encompass MGA's alleged misuse of the Transferee Entities or whether Mattel

11  will seek (and the Court permit) amendment of the counterclaim to expressly

12  reference such alleged misconduct. Nevertheless, in light of the fact that the

13  discovery need only appear reasonably calculated to lead to the discovery of

14  admissible evidence, the Discovery Master finds that certain aspects of the

15  Subpoenas are sufficiently related to Mattel's Phase 2 unfair competition claim.

16          **c.**   **Summary Of The Discovery Master's Findings With**

17               **Respect To The Subpoenas Directed To The**

18               **Transferee Entities**

19      As set forth above, the Discovery Master finds that Mattel has sufficiently

20  articulated a connection between some of the Transferee Discovery and its Phase 2

21  claims. Accordingly, Mattel's motion to compel the Transferee Entities to comply

22  with the Subpoenas is **GRANTED** in part and **DENIED** in part.

23  **IV.**  **Disposition**

24      1.    The Motion to Quash filed by MGA is **DENIED.**

25      2.    Mattel's Motion to Compel the Financing Entities to produce

26  documents responsive to the Subpoenas is **DENIED** with respect to OmniNet

27  Capital, LLC and Vision Capital, LLC.

28      3.    Mattel's Motion to Compel Omni 808 Investors, LLC to produce

EXHIBIT __5__

__136__

PAGE _____

1   documents responsive to the Subpoena propounded on it is **GRANTED** in part and
2   **DENIED** in part, as follows:

3         a.    Requests 1 through 3, 13, 15, and 17: The Motion is granted
4   with respect to documents relating to (1) the existence of any debt owed by MGA
5   Entertainment, Inc. to Omni 808 Investors, LLC, including any debt purchased
6   from Wachovia Bank, and (2) any communications between Omni 808 Investors,
7   LLC and the MGA parties regarding any such indebtedness. The motion is denied
8   regarding any other documents sought by these requests.

9         b.    Requests 4 through 12, 14 and 18: The Motion is denied.

10       4.    Mattel's Motion to Compel the Transferee Entities to produce
11   documents responsive to the Subpoenas is **DENIED** as to Request 6 propounded to
12   IGWT Group LLC and Request 6 propounded to IGWT 826 Investments, LLC.

13       5.    Mattel's Motion to Compel the Transferee Entities to produce
14   documents responsive to the Subpoenas is **GRANTED,** as follows:

15                               **Subpoena To IGWT Group LLC**

16         a.    Request 1: The Motion is granted with respect to documents
17   relating to the purchase by, or transfer to, IGWT Group LLC of any items of value,
18   including Bratz products, from MGA, Larian, his spouse, his children, his siblings,
19   or their spouses, or any entity or person affiliated with them.

20         b.    . Request 2: The Motion is granted

21         c.    Request 3: The Motion is granted with respect to documents
22   relating to any ownership interest by Larian, his spouse, his children, his siblings,
23   or their spouses, or any entity or person affiliated with them.

24         d.    Request 4: The Motion is granted with respect to documents
25   relating to any sources of funding by Larian, his spouse, his children, his siblings,
26   or their spouses, or any entity or person affiliated with them.

27         e.    Request 5: The Motion is granted with respect to documents
28   relating to any compensation, loans, advances, payments, fees or any other form of

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 29 -

EXHIBIT 5
PAGE 137

1   consideration paid by IGWT Group LLC to Larian, his spouse, his children, his

2   siblings, or their spouses, or any entity or person affiliated with them.

3           f.    Request 7: The Motion is granted.

4                  **Subpoena To IGWT 826 Investments LLC**

5           a.    Request 1: The Motion is granted with respect to documents

6   relating to the purchase by, or transfer to, IGWT 826 Investments LLC of any items

7   of value, including Bratz products, from MGA, Larian, his spouse, his children, his

8   siblings, or their spouses, or any entity or person affiliated with them.

9           b.    Request 2: The Motion is granted

10          c.    Request 3: The Motion is granted with respect to documents

11   relating to any ownership interest by Larian, his spouse, his children, his siblings,

12   or their spouses, or any entity or person affiliated with them.

13          d.    Request 4: The Motion is granted with respect to documents

14   relating to any sources of funding by Larian, his spouse, his children, his siblings,

15   or their spouses, or any entity or person affiliated with them.

16          e.    Request 5: The Motion is granted with respect to documents

17   relating to any compensation, loans, advances, payments, fees or any other form of

18   consideration paid by IGWT 826 Investments LLC to Larian, his spouse, his

19   children, his siblings, or their spouses, or any entity or person affiliated with them.

20          f.    . Request 7: The Motion is granted.

21       5.    All non-privileged documents referenced in Paragraphs 3 and 5, above,

22   shall be produced within 30 days of this Order, subject to any applicable

23   confidentiality designations available under the Protective Order.

24       6.    Nothing in this Order should be deemed to prevent Mattel from

25   seeking discovery from the MGA parties of documents encompassed by the

26   Subpoenas upon the showing of a sufficient nexus between the particular discovery

27   requests and legitimate Phase 2 issues, and subject to any applicable objections.

28   //

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 30 -                  ORDER NO. 3
                          [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 5
138
PAGE _____



1    Dated:  March 10, 2009

2

3

4                                          By:      /s/ Robert C. O'Brien
                                                    ROBERT C. O'BRIEN
5                                                   Discovery Master

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES
                                    - 31 -              ORDER NO. 3
                                              [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 5
139
PAGE ____