MELINDA HAAG (State Bar No. 132612)
mhaag@orrick.com
ANNETTE L. HURST (State Bar No. 148738)
ahurst@orrick.com
WARRINGTON S. PARKER III (State Bar No. 148003)
wparker@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105
Telephone:   +1-415-773-5700
Facsimile:   +1-415-773-5759

WILLIAM A. MOLINSKI (State Bar No. 145186)
wmolinski@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA  90017
Telephone:   +1-213-629-2020
Facsimile:   +1-213-612-2499

Attorneys for MGA Parties

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware Corporation<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | Case No. CV 04-9049 SGL (RNBx)<br><br>Consolidated with:<br>CV 04-9059<br>CV 05-2727<br><br>**ISAAC LARIAN'S OBJECTIONS, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OBJECTIONS, TO DISCOVERY MASTER ORDER NO. 46 REGARDING RESPONSES TO PHASE 2 INTERROGATORIES**<br><br>Judge: Stephen G. Larson<br>Courtroom: Courtroom No. 1<br>Date: October 5, 2009<br>Time: 10:00 a.m.<br><br>[Declaration of Warrington S. Parker III, filed concurrently] |

**[ PUBLICALLY REDACTED VERSION]**

# TABLE OF CONTENTS

                                                                              **Page**

OBJECTIONS TO DISCOVERY MASTER ORDER NO. 46 .............................. 1

INTRODUCTION AND SUMMARY OF ARGUMENT ........................................ 1

STATEMENT OF FACTS ............................................................ 3

    A.    The Interrogatories At Issue ........................................ 3

    B.    Mr. Larian Objects And Meets And Confers To Limit The Scope Of The Requests ........................................ 7

    C.    Mattel Moves To Compel ........................................ 7

    D.    The Discovery Master Orders Mr. Larian To Respond ........................................ 9

ARGUMENT ........................................................................ 11

I.    INTERROGATORY NO. 1 SEEKS INFORMATION THAT IS NOT RELEVANT AND, EVEN WERE IT, IT IS OVERBROAD ........................................ 11

    A.    The Interrogatory Does Not Seek Information Relevant To This Lawsuit ........................................ 11

    B.    Interrogatory No. 1 Is Overbroad ........................................ 13

II.    INTERROGATORY NO. 2 IS EQUALLY—IF NOT MORE—FLAWED ........................................ 15

CONCLUSION ...................................................................... 18

1

# TABLE OF AUTHORITIES

2

## FEDERAL CASES

3

*Miller v. Panuccci,*
   141 F.R.D. 292 (C.D. Cal. 1992) ..................................................................13

4

*Webster Motor Car Co. v. Packard Motor Car Co.,*
   16 F.R.D. 350 (D.D.C. 1954) ......................................................................14

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## OBJECTIONS TO DISCOVERY MASTER ORDER NO. 46

Isaac Larian hereby objects to Discovery Master Order No. 46
requiring him to answer Interrogatory Nos. 1 and 2 of Mattel's First Set of
Interrogatories (Phase 2) to Isaac Larian.  These interrogatories ask Mr. Larian to
identify anything owned, since January 2005, by Mr. Larian and his wife or by any
trust in which Mr. Larian, his wife, his siblings or their spouses are trustors, trustees
or beneficiaries.  Mr. Larian objects to these interrogatories because they seek
information that is in no way relevant to this case and because of they are overbroad
and burdensome.

## INTRODUCTION AND SUMMARY OF ARGUMENT

Interrogatory Nos. 1 and 2 ask Mr. Larian to identify anything
"owned," since January 2005, by Mr. Larian and/or his wife or by any trust in
which Mr. Larian, his wife, his siblings or their spouses are trustors, trustees or
beneficiaries.  It does not matter whether the monies used came from MGA or Mr.
Larian.  It does not matter whether the monies are the result of the wrongdoing
alleged by Mattel.  Nonetheless, ███████████████████████████████
that these interrogatories were relevant to Mattel's various claims of financial
impropriety.  But other than to say that these interrogatories were relevant neither
offered an explanation as to how these interrogatories are relevant—either in terms
of temporal scope or otherwise.  For example, neither Mattel████████████████
████████ explained how a stock purchase by a trust in 2005 could bear on Mattel's
claims here. ████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████ For these reasons,
Mr. Larian objects and asks that Discovery Master Order No. 46 be overruled and
vacated.

*First*, even if what was owned could conceivably be relevant, which it

OBJ. TO DISCOVERY MASTER ORDER NO. 46
CV-04-9049 SGL (RNBX)

1    is not, these interrogatories seek information about what Mr. Larian, his wife and

2    multiple trusts have owned for the last nine years without regard to the source of

3    those funds. No matter how broadly Mattel's complaint is construed, no

4    interpretation of the complaint can establish the relevance of an investment pursued

5    with monies that came from some source having no connection with MGA or Mr.

6    Larian. ████████████████████████████████████

7    ████████████████████████████████████████████

8    ████████████████████████████████████████████

9    ████████████████████████████████████████████

10   ████████████████████████ This is true of the trusts. This is equally

11   true of Mr. Larian and his wife. Therefore, it simply is not the case that nine years

12   of investment data is relevant without regard to whether those monies came from

13   Mr. Larian or MGA. And ██████████████████ nor Mattel has provided an

14   explanation how it is. *See* Parts I.A, II, *infra*.

15          *Second*, the fact is that these interrogatories are not relevant at all.

16   Although Mattel claims relevance, ████████████████ neither

17   provided any reason how it is that the purchase of a specific stock or a specific

18   piece of property or any investment, frankly, would make Mattel's claims of

19   financial impropriety more or less true. This is true of purchases in 2008 and is

20   equally true of activity going back to 2005. ████████████████████

21   ████████████████████████████████████████

22   ████████████████████████████████████████ To

23   the extent there are encumbrances on the assets of MGA, Mattel has that

24   information in the form of MGA's financial documents. Otherwise, ████████

25   ████████████████████████████████████████

26   ████████████ not depend on whether Mr. Larian or his wife or the trusts took the

27   money and bought a home or bought stock in a company or simply placed the

28   money in a bank. *See* Parts I.A, II, *infra*.

OBJ. TO DISCOVERY MASTER ORDER NO. 46
CV-04-9049 SGL (RNBx)

1        *Third*, even were Mr. Larian incorrect as to the first two points, no

2 attempt has been made to justify asking for information back to 2005. ██████████

3 ████████████████████████████████████████ And except to simply

4 say it is relevant, Mattel provides no meaningful basis for extending the scope of

5 these requests back to 2005, as opposed to 2007. ████████████████████

6 ████████████████████████████ *See* Parts I.A, II, *infra*.

7        *Finally*, even if somehow relevant, the interrogatories are simply

8 burdensome and are not sufficiently specific to allow for a meaningful response.

9 *See* Parts I.B, *infra*. The interrogatories call for Mr. Larian to "identify" entities in

10 which he, his wife, and the trusts of family members have an ownership interest for

11 the past nine years. "Identify" includes providing a tax identification number,

12 addresses, agents of service and other information, which for an investment in a

13 public company or virtually any other entity is a matter of record so that there is no

14 reason to impose that burden on Mr. Larian. More fundamentally, the definition of

15 ownership is anything but clear. ██████████████████████████████

16 ████████████████████████████████████████████████████████

17 ████████████ However, that just simply means rounds and rounds of further

18 motions to compel at the risk of sanctions and with the certainty in this case that the

19 parties, the Discovery Master and likely this Court will be arguing the same matter

20 over again.

21        For these reasons, Order No. 46 to the extent it pertains to Mattel's

22 First Set of Interrogatories (Phase 2) should be overruled and vacated.

23                 **STATEMENT OF FACTS**

24   **A.**     **The Interrogatories At Issue.**

25        On March 4, 2009, Mattel served on Mr. Larian its first set of

26 interrogatories (Phase 2). There are two interrogatories. Interrogatory No. 1 reads

27 as follows:

28

INTERROGATORY NO. 1:

IDENTIFY each and every ENTITY in which LARIAN

has held, directly or indirectly, any OWNERSHIP

INTEREST at any time since January 1, 2005.  For

purpose of this Interrogatory, transactions involving the

purchase or acquisition of publicly traded stock in an

amount of $1,000 or less may be excluded.

Decl. of Warrington S. Parker III ("Parker Decl.") Ex. C at 69 (Interrogatory).[1]

Interrogatory No. 2 reads as follows:

INTERROGATORY NO. 2:

IDENTIFY each and every ENTITY in which any

LARIAN TRUST has held, directly or indirectly, any

OWNERSHIP INTEREST at any time since January 1,

2005.  For purpose of this Interrogatory, transactions

involving the purchase or acquisition of publicly traded

stock in an amount of $1,000 or less may be excluded.

Parker Decl. Ex. C at 69 (Interrogatory).

As is customary, each of the words identified in all capital letters is a defined

term.  As relevant here, there are four terms that are defined: 'LARIAN,"

"OWNERSHIP INTEREST," "LARIAN TRUST," and "IDENTIFY."

"LARIAN" means Mr. Larian and his wife, Angela Larian.  Parker Decl. Ex.

C at 66 (Interrogatory).

"OWNERSHIP INTEREST" means, among other things, "any right, title or

interest of any kind," including "future, contingent, inchoate, potential or

otherwise" that Mr. Larian or his wife or the LARIAN TRUSTS "possess or may

---

[1] For the purposes of this objection, Mr. Larian has submitted as exhibits the materials filed before the Discovery Master as well as Discovery Master Order No. 46.  The page number references are found in the lower right hand corner of the documents submitted as exhibits to the Declaration of Warrington S. Parker III filed in support of this objection.

OBJ. TO DISCOVERY MASTER ORDER NO. 46
CV-04-9049 SGL (RNBX)

1  possess directly or indirectly, from any contract, arrangement, understanding,
2  relationship or otherwise." In full, the definition is:

3       "OWNERSHIP INTEREST" means any right, title or
4       interest of any kind, whether legal, beneficial, past,
5       present, future, contingent, inchoate, potential or
6       otherwise, and includes without limitation any right, title,
7       interest or power that a PERSON possesses or may
8       possess, directly or indirectly, from any contract,
9       arrangement, understanding, relationship or otherwise, to
10      direct, control, dictate or vote on the actions or potential
11      or proposed actions of an ENTITY, and includes without
12      limitation securities, stock, shares, warrants, options,
13      membership interests, partnership interests, voting
14      interests, equity interests, simple ownership, debt or other
15      non-security obligations that may be convertible to equity
16      or other interests and any right, interest; or any right, title,
17      interest, power, title, agreement or understanding to
18      receive, directly or indirectly, distributions of value from
19      an ENTITY.

20 Parker Decl. Ex. C at 67 (Interrogatory).

21     "LARIAN TRUST" is defined to include any trust of which the Isaac Larian
22 family, whether by blood or marriage, is a beneficiary, trustee. The definition
23 included attorneys, agents, representative, accountants and vendors of these trusts,
24 requiring that Mr. Larian disclose their ownership interest as well.

25      "LARIAN TRUST" means the Isaac and Angela Larian
26      Trust, Isaac Larian Grantor Annuity Trust, Angela Larian
27      Grantor Annuity Trust, Larian Family Trust and any other
28      trust of which Isaac Larian is a trustee or of which any

1    member of Isaac Larian's family, whether by blood or

2    marriage, is a beneficiary, the current or former trustees,

3    beneficiaries, attorneys, agents, representatives,

4    accountants, vendors, consultants or any other PERSON

5    acting on its behalf, subject to its authority and control.

6 Parker Decl. Ex. C at 66 (Interrogatory).

7       Finally, "IDENTIFY" requires Mr. Larian to set forth, with respect to any

8 ENTITY in which he, his wife or a trust has an "OWNERSHIP INTEREST,"

9 among other things: the tax identification number of the entity, its current or last

10 known address, its agent of service or "the name, current address and current

11 telephone number of each officer, director, managing agent and general agent.  In

12 full, the definition reads as follows:

13    "IDENTIFY" or "IDENTITY" means to state, fully and

14    separately as to each ENTITY, such ENTITY's full name;

15    taxpayer identification number or other governmental

16    identifying number of the ENTITY is not registered in the

17    United States; state or country of creation, incorporation

18    or organization or registration; the date of incorporation,

19    organization, creation and/or registration; the type of

20    ownership interest that YOU hold or did hold; the

21    percentage of YOUR ownership in each ENTITY; the

22    date(s) on which YOU held such ownership interest; each

23    title or position that YOU have had with each such

24    ENTITY, if any, and the date(s) on which YOU held such

25    title or position; the current address of each entity; the

26    present or last known telephone number of each entity;

27    and the name and current address of each such ENTITY's

28    agent(s) for service of process or, if no such agent has

OBJ. TO DISCOVERY MASTER ORDER NO. 46
CV-04-9049 SGL (RNBx)

1   been designated, then the name, current address and

2   current telephone number of each officer, director,

3   managing agent and general agent of such ENTITY.

4   Parker Decl. Ex. C at 66-67 (Interrogatory).

**B.   Mr. Larian Objects And Meets And Confers To Limit The Scope Of The Requests.**

Mr. Larian objected to the interrogatories on the grounds of relevance, vagueness, burden and overbreadth.  Parker Decl. Ex. C at 73-82 (Mr. Larian's Response).  In the meet and confers that followed, Mattel initially justified these requests as going to Mr. Larian's net worth, financial condition and ability to pay although, as Mr. Larian noted, Mattel has been provided discovery concerning net worth, financial condition and ability to pay.  Parker Decl. Ex. E at 433 (Mattel's Meet and Confer Letter).  Mattel further claimed that it learned that Mr. Larian had created an entity into which he was transferring Bratz products.  Mattel identified this entity as IGWT.  Parker Decl. Ex. E at 449 (Mattel's Meet and Confer Letter).

Mr. Larian explained that it was not clear what information Mattel sought by way of its definition of ONWERSHIP INTEREST or the definition of LARIAN TRUST.  Mr. Larian explained that Mattel had information relating to Mr. Larian's net worth.  And finally, Mr. Larian noted that these requests were broader than any claim in the complaint.  Parker Decl. Ex. E at 438, 440-41, 443-44 (Mr. Larian's Meet and Confer Letters); *see also* Ex. E at 404-06 ¶¶ 7-14 (Decl. of Daniel M. Hayes).

Mattel refused to modify or limit the interrogatories.

**C.   Mattel Moves To Compel.**

Mattel moved to compel responses to the interrogatories.  In its Motion to Compel, Mattel backed away from its assertion that the interrogatories were necessary to show Mr. Larian's net worth.  Instead, Mattel claimed that Mr. Larian and MGA have siphoned money out of MGA into other entities.  Parker Decl. Ex.

- 7 -

B at 51-52 (Mattel's Motion).  Mattel asserted, "[t]he Interrogatories plainly go to Mattel's [Constructive Fraudulent Transfers] and RICO claims."  Parker Decl. Ex. B at 51.  According to Mattel, a response to these interrogatories will show it where MGA assets have been transferred, the financial transaction that Mr. Larian has engaged in, and it will allow Mattel to assess how money has been laundered. Parker Decl. Ex. B at 51-52.

Furthermore, Mattel claimed that the Discovery Master had already found that Mr. Larian's ownership interest was relevant.  Specifically, Mattel pointed to Discovery Master Order No. 3, which required identification of Mr. Larian's ownership interest in entities alleged involved in the alleged transfer of inventory—specifically, IGWT and IGWT 826.  Parker Decl. Ex. B at 52.

Mr. Larian opposed the Motion to Compel.  Mr. Larian noted that the interrogatories had no relevance to the allegations set forth in Mattel's complaint both in terms of the temporal scope of the interrogatories and in terms of the information sought.  Pointing to Mattel's claim that this information was relevant to its RICO claims and claims of money laundering and fraudulent transfers, Mr. Larian noted that Mattel does not explain *how* these specific interrogatories would allow Mattel to prove or disprove these claims or *how* what Mr. Larian and the "LARIAN TRUSTS" owned since 2005 was relevant to establishing RICO, money laundering or fraudulent conveyances. *See, e.g.*, Parker Decl. Ex. D at 396 (Mr. Larian's Opp.).   In this regard, and as an example, Mr. Larian noted that the interrogatories did not even limit themselves to interests purchased with monies that came from either MGA or Mr. Larian.  Parker Decl. Ex. D at 397.

In addition, Mr. Larian pointed to the fact that the definitions were so broad as to be unintelligible.  For example, the definition of OWNERSHIP INTEREST was so vague as to be meaningless requiring Mr. Larian to identify interests that he "may possess," and interests that he may possess "indirectly." Furthemore, "LARIAN TRUSTS," as defined required production of the ownership

OBJ. TO DISCOVERY MASTER ORDER NO. 46
CV-04-9049 SGL (RNBx)

1    information of all trusts by any family member of Mr. Larian—however far

2    removed—whether or not there was a relationship to Mr. Larian.  And it required

3    ownership information for the trusts' attorneys, accountants and others having no

4    bearing on this case.  Parker Decl. Ex. D at 393, 399-400.

5         **D.    The Discovery Master Orders Mr. Larian To Respond.**

6    ████████████████████████████████████████████████████████

7    ██████████████████████ But otherwise, he ordered Mr. Larian to respond to the

8    interrogatories.

9    ████████████████████████████████████████████████████

10   ███████████████████████████████████████████████████████████████

11   ████████████████████████████████████████████████

12   ████████████████████████████████████████████████

13   ████████████████████████████████████████████████

14   ████████████████████████████████████████████

15   ███████████████████████████ Parker Ex. A at 32-33 (Order No. 46) (citing Third

16   Amended Complaint ("TAAC") ¶¶ 19, 136, 138, 149-50.

17   ████████████████████████████████████████████████████

18   ██████████████████████████████████████████████

19   ███████████████████████████████████████████████

20   ████████████████████████████████████████████████████

21   ████████████████████████████████████████████████

22   ████████████████████████████████████████████████████████ Parker

23   Decl. Ex. A at 42 n. 24; *see also* Parker Decl. Ex. C at 162-63, 165-66 (Order No.

24   3).

25         As for Mattel's request that information be produced since 2005,████

26   ████████████████████████████████████████████

27   ███████████████████████████████████████████████████████

28   ███████████████ Parker Decl. Ex. A at 35. ███████████████████

- 9 -

1   *Id.* ████████████████████████████████████████

2   ████████████████████████████████████████████████████

3   ████████████████████████████████████████████████████

4   ████ *See* TAAC ¶¶ 108, 112.

5           ████████████████████████████████████

6   ████████████████████████████████████████████████████

7   ████████████████████████████████████████████████

8   ████████████████████████

9           ████████████████████████████

10          ██████████████████████████

11          ███████████████████████████

12          ████████████████████████████

13          █████████████████████████

14   Parker Decl. Ex. A at 36.

15      ███████████████████████████████████████

16   ████████████████████████████████████████

17   ████████████████████████████████████████████

18   ████████████████████████████████████████████

19   ████████████████ Parker Decl. Ex. A at 41. ███████████

20   ████████████████████████████████████████████

21   ████████████████████████████████████████

22   ███████████████████████████████████ *Id.*

23      ████████████████████████████████████████

24   █████████████████████████████████████████████████

25   ████████████████████████████████████████

26   ████████████ Parker Decl. Ex. A at 42.

27

28

## ARGUMENT

**I.    INTERROGATORY NO. 1 SEEKS INFORMATION THAT IS NOT RELEVANT AND, EVEN WERE IT, IT IS OVERBROAD**

**A.    The Interrogatory Does Not Seek Information Relevant To This Lawsuit.**

Interrogatory No. 1 seeks from Mr. Larian and his wife a list every "entity" in which they have had an "ownership interest" in since January 2005. Leaving aside for the moment the definition of "ownership interest," which as noted *infra* is so broad as to have no meaning, this would mean that Mr. Larian and his wife must list every stock purchased and virtually any other financial activity they have undertaken separate or apart for the last nine years.  It would mean that Mr. Larian and his wife must list these items even if they used monies having no conceivable relationship to this case, e.g., monies obtained from investments in say 2001 or monies obtained from some source other than MGA.  Nonetheless, Mattel claims, ████████████████████ that Interrogatory No. 1 sought information relevant to Mattel's claims.  Parker Decl. Ex. A at 31.

In so concluding, both Mattel ████████████████ have left unanswered the question of how this information is relevant.   However broadly one wishes to interpret Mattel's allegations, what is absolutely clear in this: every single one of ████████████████████████████████ ████████████████████████████████ If Mr. Larian or his wife received monies from other sources—from investments made in 2001, for example—and used that money to purchase stock or entities in 2007, there can be no claim that this investment or the monies obtained is wrongful or part of any scheme alleged by Mattel.  Nonetheless, Interrogatory No. 1 would require Mr. Larian to provide that information because the interrogatory makes no distinction about the about the source of the funds used to obtain an "ownership interest."

Moreover, even broadly construed, Mattel's claims ████████████ ████████████ do not turn on what MGA or Mr. Larian did with the monies that

- 11 -

1   Mattel claims ███████████████████████ Mattel's allegations turn, not on

2   what Mr. Larian or his wife *owned* or purchased.  Mattel will not back away from

3   its claims whether or not Mr. Larian or the trusts show that the monies were taken

4   and used to invest in a tomato farm, a football team or the stocks of AT&T.  And

5   none of Mattel's claims are made or less true by establishing that Mr. Larian or his

6   wife purchased $1,000 in McDonald's stock in March 2005 or invested in a real

7   estate venture in January 2007.

8          Instead ███████████████████████████████████████████████

9   ████████████████████████████████████████████████████████

10  ██████████████████████████  To the extent anything is relevant to these allegations,

11  (and this is in the most general terms) it is this: Mr. Larian and MGA obtained

12  monies that they should not have and those monies are no longer in MGA or in the

13  possession of Mr. Larian.  Mattel has that information.  Mattel has MGA's financial

14  information showing monies flowing in and monies flowing out of MGA, including

15  W-2 forms identifying where money went.  They know what encumbrances exist.

16  They also have Mr. Larian's financial information  Dkt. No. 6067 at 6-7, 10-11

17  (Opp. To Motion to Compel); Dkt. No. 6072 (Parker Decl. and Exhibits filed in

18  Opp. to Motion to Compel).

19         In addition, and now turning to the specific allegations made by

20  Mattel ██████████████████████████████████████████

21  ██████████████████████████████████████████████████

22  ███████████████████████████████████████████

23  ████████████████████████████████████████████████

24  ██████████████████████████████████████████████████

25  ███████████████████████████████████████████

26  ██████████████████████████████████████████████████

27  ██████████████████████████████████████████████

28  ██████████████████████████████████████████████████

OBJ. TO DISCOVERY MASTER ORDER NO. 46
CV-04-9049 SGL (RNBx)

1  ████████████████████████████████████████████

2  ██████

3          ████████████████████████████████████████

4  ███████████████████████████████████████████

5  ███████████████████████████████████████████

6  Parker Decl. Ex. A at 35. ████████████████████████

7  ██████████████████████████████████████

8  ████████████████████████████████████████████████

9  ████████████████████████████████████████████

10  ████████████████████████████████

11        Yet, even were the complaint susceptible of this interpretation, there is

12  no analysis—by Mattel or the Discovery Master—how information concerning

13  what Mr. Larian and his wife owned in, say, 2005 or 2006 (or even later) will show

14  anything pertaining████████████████ Going back to the example of the purchase

15  of McDonald's stock, establishing that Mr. Larian or his wife purchased such stock

16  makes it no more or less likely that they were involved████████████████

17        For these reasons, Interrogatory No. 1 is not proper.  Even with liberal

18  discovery standards, there still must be some tie between the allegations of the

19  complaint and the discovery sought. *See, e.g.*, *Miller v. Panuccci*, 141 F.R.D. 292,

20  296 (C.D. Cal. 1992) (noting the liberal discovery standards but refusing discovery

21  on items not alleged in the complaint).

22  **B.    Interrogatory No. 1 Is Overbroad.**

23        Even were the information sought by Interrogatory No. 1 somehow

24  relevant, Interrogatory No. 1 is not tailored to obtain that relevant information.  For

25  example, as noted, it seeks ownership information regardless of the source of the

26  funds and regardless of when those funds were obtained.   Neither████████████

27  ████████nor Mattel explained how this has bearing on the case.

28        Interrogatory No. 1 also seeks information from January 2005 and for

1    the nine years after.  No attempt was made to explain how this could conceivably
2    have bearing on this case.

3           And given the scope of the interrogatory, as reflected in the
4    definitions, the burden of the interrogatory is truly astounding.  For starters,
5    "IDENTIFY" requires Mr. Larian to provide, among other things, information
6    concerning the tax identification number, the date of incorporation, address of any
7    entity owned, the agent for service of process or "the name, current address and
8    current telephone number of each officer, director, managing agent and general
9    agent of each "ENTITY."  Why Mattel would need information concerning the tax
10   identification number, for example, of a publicly traded company, or the names and
11   addresses of officers or directors is no where answered, not even by a passing
12   attempt to make it relevant.

13          Mattel's definition of ownership is separately befuddling.  It means,
14   according to the interrogatory, "any right, title or interest of any kind," including
15   "future, contingent, inchoate, potential or otherwise" that Mr. Larian or his wife
16   "possess or may possess directly or indirectly, from any contract, arrangement,
17   understanding, relationship or otherwise."  Parker Decl. Ex. C at 67 (Interrogatory).

18          What is meant by this is in no way clear.  Apparently, Mr. Larian must
19   look to not merely those items on which his name appears as owner, but he must
20   look for "inchoate" or "potential" or "future" ownership interests, and not merely
21   those he actually possesses.  According to the interrogatory, he must identify
22   "inchoate" interests he "may possess" even if "indirectly."  And so a $10
23   investment in a REIT that in turn owns a security in land might fall within the
24   parameters of this interrogatory.  It is not because Mr. Larian actually owns the land
25   directly or could exercise any authority over it.  It is because, through some tangle
26   of contracts and agreements, Mr. Larian could possibly gain some rights.

27          This guess-work is not the stuff of a proper interrogatory.  *See Webster*
28   *Motor Car Co. v. Packard Motor Car Co.*, 16 F.R.D. 350, 351 (D.D.C. 1954).

- 14 -

1    Nor has Mattel or the ███████████████ helped to clarify

2    matters.  As set forth in full in the MGA Parties' opposition to Mattel's motion to

3    compel a response to this interrogatory, Mattel made no attempt to limit or clarify

4    the information it sought.  Parker Decl. Ex. E at 438, 440-41, 443-44 (Mr. Larian's

5    Meet and Confer Letters); *see also* Ex. E at 404-06 ¶¶ 7-14 (Decl. of Daniel M.

6    Hayes); Ex. D at 389-93 (Larian Opp. To Motion To Compel).

7    ████████████████████████████████████████

8    ████████████████████████████████████████████████

9    ████████████████████████████████████████████████

10   ███████████████████████████████ Parker Decl. Ex. A at

11   36.  But this approach adopts the ambiguity and issues of Mattel's definition.  We

12   are back again to having to determine whether a $10 REIT investment may create

13   an ownership interest because Mr. Larian might have "power" over something.  In

14   addition, leaving this to "common sense" does not solve any of the problems

15   identified.  Predictably, the parties will be back wrangling over what Mr. Larian

16   defines as ownership versus what Mattel defines as ownership.  And because Mr.

17   Larian now must apply a "common sense" notion of what that may mean, there is

18   no identifiable basis for agreement between the parties. ████████████████

19   ████████████████████████████████ but has and left the

20   parties with a definition that still has no real limiting meaning.

21        For these reasons, the Discovery Master's order should be overruled.

22   **II.    INTERROGATORY NO. 2 IS EQUALLY—IF NOT MORE—**

23        **FLAWED**

24        What goes for Interrogatory No. 1 also goes for Interrogatory No. 2,

25   but more so.[2] ████████████████████████████████████

26   ████████████████████████████████████████

27   ████████████████████████████████████████████

28   ────────────────────
[2] For example, the definition of "OWNERSHIP INTEREST" applies to this
interrogatory as well.

OBJ. TO DISCOVERY MASTER ORDER NO. 46
CV-04-9049 SGL (RNBx)

1 ██████████████████████████████████████████████

2 ███████████████████████████████████████████████

3 ████████████████████████ Parker Decl. Ex. A at 41. ████████

4 ████████████████████████████████████████████████

5 ████████████████████████████████████████████

6 ████████████████████████████████████ *Id.* ████████

7 ███████████████████████████████████████████████

8 ████████████████████████████████████████████████

9 ████████████████████████████████████████

10 ████████████████████████ Parker Decl. Ex. A at 42.

11    This limitation removes the comical aspect of the interrogatory, but it

12 does not solve the relevance or scope problem.  This interrogatory reaches trusts

13 even if they received no money from MGA or Mr. Larian.  It seeks information

14 regarding activities even if no MGA or Larian monies are involved.  And it reaches

15 trusts that have no connection to Mr. Larian ███████████████████████

16 ████████████████████████████████████████████████

17 ██████████████████████████ Indeed, under this interrogatory, were it the case

18 that a spouse of a sibling happened to be the beneficiary of a trust established by a

19 distant cousin, everything that trust has "owned" would be subject to disclosure.

20 Nothing in the complaint makes this information relevant and justifies the burden of

21 providing information to Mattel of every virtually every transaction of a trust from

22 2005 to the present.

23        ██████████████████████████████████

24 ████████████████████████████████████████████████

25 particularly when the source of the funds is not MGA or monies that Mr. Larian

26 received from MGA.  First, if the monies did not come from MGA or Mr. Larian,

27 there is no claim that the finances of the trusts could be relevant.  Second, as with

28 Interrogatory No. 1, Mattel's claims of ██████████████████ do not turn on whether

OBJ. TO DISCOVERY MASTER ORDER NO. 46
CV-04-9049 SGL (RNBx)

1    the monies obtained by the trusts were used to purchase a ranch in Montana or

2    simply placed into a trust bank account. ████████████████████████

3    ████████████████████████████████████████

4    ████████████████████████████████████████

5    What these trusts own, what they have owned since 2005, is completely irrelevant

6    to this action.

7    ████████████████████████████████████████

8    ████████████████████████████████████████

9    ████████████████████████████████████ Parker

10   Decl. Ex. A at 42 n.24.  However, that prior order—Discovery Master Order No.

11   3—sought disclosure of the ownership interest of certain Larian family members in

12   IGWT 826 and IGWT ███████████████████████████

13   ███████████ Parker Decl. Ex. C at 162-63, 165-66 (Order No. 3).  Disclosure of

14   that information—even if the MGA Parties do not agree with it—has both a limited

15   scope and can arguably be said to be relevant to Mattel's claims—although

16   untrue—████████████████████████████████████

17   ████████████████████

18          That is a far cry from what we have here.  At least with respect to the

19   ownership of IGWT and IGWT 826, Mattel could argue that the relevance was that

20   Mr. Larian created these entities and his ownership was relevant to establish his

21   involvement.  Here, there is not even that claim made or attempted.  And rightly so.

22   It is inconceivable how a trust's purchase of stock in 2005 from monies not

23   obtained from MGA or Mr. Larian could have any impact at all on Mattel.  Equally,

24   there is no argument made by Mattel that the purchase of stock (as opposed to

25   taking the money and placing it in a bank account or burning the money or burying

26   it) by a trust could harm it even if that stock purchase took place in 2008.

27          For these reasons, Discovery Master Order No. 46 should be

28   overruled.

- 17 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CONCLUSION

For all of the foregoing reasons, Order No. 46 should be overruled and vacated to the extent it orders Mr. Larian to respond to Interrogatory Nos. 1 and 2 of Mattel's First Set of Interrogatories (Phase 2).

Dated:    August 28, 2009                    Respectfully submitted,

                                             WARRINGTON S. PARKER III
                                             Orrick, Herrington & Sutcliffe LLP


                                             By: _____
                                                 WARRINGTON S. PARKER III
                                                 Attorneys for Plaintiff

- 18 -