# Exhibit G

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 90378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>               Plaintiff,<br><br>     vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>               Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>**DISCOVERY MATTER**<br><br>**[To Be Heard By Discovery Master Robert O'Brien]**<br><br>DECLARATION OF YOUNG RA LEE IN SUPPORT OF MATTEL, INC.'S REPLY IN SUPPORT OF MOTION TO COMPEL RESPONSES TO MATTEL, INC.'S FIRST SET OF INTERROGATORIES (PHASE 2) TO ISAAC LARIAN<br><br>Hearing Date:      TBD<br>Time:              TBD<br>Place:             TBD<br><br>**Phase 2**<br><br>Discovery Cutoff:       Dec. 11, 2009<br>Pre-trial Conference: March 1, 2010<br>Trial:                  March 23, 010 |

00505.07209/2992416.2

DECLARATION OF YOUNG RA LEE ISO REPLY ISO MOTION TO COMPEL RESPONSE TO MATTEL, INC'S FIRST SET OF INTERROGATORIES (PHASE 2)

Exhibit G - Page 472

## DECLARATION OF YOUNG RA LEE

I, Young Ra Lee, declare as follows:

1.    I am a member of the bar of the State of California.  I am an attorney at Quinn Emanuel Urquhart Oliver & Hedges, LLP, counsel for Mattel, Inc. ("Mattel").  I make this declaration of personal, firsthand knowledge and, if called and sworn as a witness, I could and would testify competently thereto.

2.    Attached hereto as Exhibit 1 is a true and correct copy of the Court's Order After June 15, 2009 Hearing on Accounting Issues, dated June 18, 2009.

3.    Attached hereto as Exhibit 2 is a true and correct copy of the Court's Omnibus Order, dated April 27, 2009.

4.    Attached hereto as Exhibit 3 is a true and correct copy of MGA Entertainment, Inc.'s First Set of Phase 2 Interrogatories to Mattel, Inc., dated April 15, 2009.

5.    Tamar Buchakjian is currently out of the country and unable to respond to Larian's claims that she failed to meet and confer in good faith regarding this motion.  I was present for, and took notes during, both meet and confer teleconferences with Richard Sheldon and Daniel M. Hayes on April 21, 2009 and April 23, 2009.

6.    On April 21, 2009, Ms. Buchakjian met and conferred telephonically with Mr. Hayes and Mr. Sheldon.  Mr. Hayes and Mr. Sheldon asked Ms. Buchakjian to clarify the language of the interrogatories and the accompanying definitions.  Ms. Buchakjian asked them what, specifically, they did not understand.  Ms. Buchakjian then went through the interrogatories and their definitions line-by-line asking Mr. Hayes and Mr. Sheldon to identify what parts they did not understand.  Mr. Hayes and Mr. Sheldon said that they understood each phrase.

00505.07209/2992416.2

-2-

DECLARATION OF YOUNG RA LEE ISO REPLY ISO MOTION TO COMPEL RESPONSE TO MATTEL, INC'S FIRST SET OF INTERROGATORIES (PHASE 2)

Exhibit G - Page 473

7.    Mr. Hayes and Mr. Sheldon suggested omitting the following language from the interrogatory:  "the current or former trustees, beneficiaries, attorneys, agents, representatives, accountants, vendors, consultants or any other PERSON acting on its behalf, subject to its authority and control."  They also suggested limiting Interrogatory No. 2 so that they would not include "insignificant transactions" by limiting the transactions as of a date certain.  Ms. Buchakjian stated that Mattel would consider a proposal raising the minimum monetary amount to something above $1000, but Mr. Hayes and Mr. Sheldon did not propose an alternate minimum amount (or appear to care about the dollar amount).  As for the other discussed limitations, Ms. Buchakjian told Mr. Hayes and Mr. Sheldon that she did not believe that her client would agree to them because the scope of the interrogatories was already limited in time and subject matter, but agreed to consult with the client.

8.    On April 23, 2009, Ms. Buchakjian again met and conferred telephonically with Mr. Hayes and Mr. Sheldon.  She confirmed that Mattel already considered the Interrogatories properly limited in time and subject matter.  When Mr. Hayes asked Ms. Buchakjian for Mattel's definition of "LARIAN TRUST," again Ms. Buchakjian walked through the definition of "LARIAN TRUST" line-by-line and asked both Mr. Hayes and Mr. Sheldon to specify the parts that they did not understand.  Ms. Buchakjian offered further explanation of the definition in the same manner discussed in Mattel's reply brief here.  Mr. Hayes and Mr. Sheldon did not ask Ms. Buchakjian to clarify "LARIAN TRUST" beyond the definition, and raised no further questions or specific inquiry, which indicated that they understood every line in the definition.  Instead, they wanted Ms. Buchakjian to change what the interrogatory was actually seeking, but Ms. Buchakjian explained that Mattel believed that the information sought was appropriate.

9.    Ms. Buchakjian also explained to Mr. Hayes and Mr. Sheldon that the definition of "LARIAN TRUST" was consistent with the information that

00505.07209/2992416.2
-3-
DECLARATION OF YOUNG RA LEE ISO REPLY ISO MOTION TO COMPEL RESPONSE TO MATTEL, INC'S FIRST SET OF INTERROGATORIES (PHASE 2)

Exhibit G - Page 474

1   the Discovery Master ordered pursuant to Order Nos. 11 and 3 in regard to the

2   subpoena to IGWT -- information related to net worth, financial condition and

3   ability to pay.  Mr. Hayes and Mr. Sheldon did not dispute that the interrogatories

4   sought relevant information, but responded that the Order was narrower because it

5   was directed only to IGWT.  Ms. Buchakjian stated that Interrogatory No. 2 was

6   narrow as well because it was directed to Larian.

7           10.    Ms. Buchakjian asked Mr. Hayes and Mr. Sheldon what they

8   would be willing to respond to, and Mr. Hayes and Mr. Sheldon did not concede that

9   Larian would respond to anything.  Mr. Hayes and Mr. Sheldon indicated that

10   Larian was unwilling to withdraw any of his objections to the interrogatories and

11   was unwilling to suggest any specific limitations to the interrogatories.  Mr. Hayes

12   and Mr. Sheldon then accused Ms. Buchakjian of not meeting and conferring in

13   good faith because she would not narrow the scope of the interrogatories.

14

15           I declare under penalty of perjury under the laws of the United States

16   that the foregoing is true and correct.

17           Executed on July 1, 2009 at Los Angeles, California.

18

19                                  /s/  Young Ra Lee
                                    Young Ra Lee
20

21

22

23

24

25

26

27

28

00505.07209/2992416.2

-4-
DECLARATION OF YOUNG RA LEE ISO REPLY ISO MOTION TO COMPEL RESPONSE TO MATTEL, INC'S
FIRST SET OF INTERROGATORIES (PHASE 2)

Exhibit G - Page 475

# Exhibit 1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA  92501
<u>CIVIL MINUTES -- GENERAL</u>

Case No.   CV 04-09049 SGL(RNBx)                        Date: June 18, 2009
Title:     MATTEL, INC. V. MGA ENTERTAINMENT, INC., et al.
===============================================================
PRESENT:  HONORABLE STEPHEN G. LARSON, U.S. DISTRICT JUDGE

        Cindy Sasse                              None Present
        Courtroom Deputy                         Court Reporter

ATTORNEYS PRESENT FOR                   ATTORNEYS PRESENT FOR
PLAINTIFFS:                             DEFENDANTS:

None Present                            None Present

PROCEEDINGS:   ORDER AFTER JUNE 15, 2009, HEARING ON ACCOUNTING
               ISSUES

     The parties have briefed the issue regarding the proper scope of accounting and
escrow of profits relating to Bratz products, and the Court heard argument on June 15,
2009.  In fashioning the equitable relief of an accounting, and the resulting escrow, the
Court is guided by the proper measure of damages available to an infringement
plaintiff.[1]  It is the intent of the Court, by the issuance of this Order, to provide guidance
to the parties, the Monitor, and their accountants to arrive at an appropriate accounting.

     The following events are relevant to the Court's analysis:

06/30/08     Date of last evidence regarding profits of Bratz presented to jury.

07/17/08     Date of Phase 1A jury verdict which, along with the Court's summary

---

     [1] At issue here, as discussed more fully below, are both copyright and trademark infringement.
As the Court and the parties are aware, Mattel asserted no trademark infringement claim in this action for
reasons understood by the Court and by parties (which the Court does not belabor here).  However,
damages as measured by profits related to trademark are relevant to the present discussion because of
the Court's imposition of a constructive trust, on December 3, 2008, over the "Bratz" and "Jade" marks.

MINUTES FORM 90                                    Initials of Deputy Clerk __cls_____
CIVIL -- GEN                      1

EXHIBIT ___1___ PAGE 5

Exhibit G - Page 477

|          | judgment orders, established (1) that Carter Bryant created (alone or jointly with others) the Bratz sculpt which has been designated as TX 1136A; and (2) that Mattel owned the name "Bratz." |
|----------|----|
| 08/26/08 | Date of Phase 1B jury verdict which, in addition to awarding $10 million in copyright damages, also found no willful copyright infringement. |
| 12/03/08 | Date of issuance of permanent injunction, which expressly found hundreds of Bratz core female fashion dolls infringed Mattel's copyrights.[2]  Date of imposition of constructive trust.  All orders were stayed pending the Court's consideration of the post-trial motions. |
| 12/11/08 | MGA sought a stay pending appeal of the Court's December 3, 2008, Orders. |
| 12/30/08 | Court denied MGA's ex parte application to stay pending appeal, but allowed further briefing on a limited stay to address retailer concerns. |
| 01/07/09 | After briefing and hearing, Court modified the stay in light of retailer concerns:  "Specifically, retailers and distributors will be permitted to purchase the Spring and Fall 2009 lines of Bratz and Bratz-related products from MGA and MGA licensees, up to and including December 31, 2009.  In the event the Court awards control over the rights to the Bratz products referenced in the Court's December 3, 2008, Order, and the January 7, 2009 Stipulation and Order (regarding the Spring and Fall 2009 lines) to a Court-appointed receiver or to Mattel, Inc., that award will be subject to a requirement that retailers and distributors be permitted to purchase the Spring and Fall 2009 lines up to an including December 31, 2009."  This stay was later modified to be in effect until January 21, 2010. |
| 04/29/09 | Court decided the post-trial motions.  Court lifted the stay imposed in the |

---

[2] In doing so, the Court examined the dolls depicted in photographs and lodged with the Court and found them to be "substantially similar to Mattel's registered copyrighted drawings."  The Court described its analysis:

> Especially important to the Court's conclusion is the consistency of the particularized expression of certain anatomical features relative to others (most notably the doll lips, doll eyes, doll eyebrows, and certain other doll eye features) and de-emphasis of certain anatomical features (most notably the minimalized doll nose and thin, small doll bodies).  Also important to the Court is the particularized, synergistic compilation and expression of the human form and anatomy that quite clearly expresses a unique style and conveys a distinct look or attitude, especially as perceived by the intended consumer market (7-12 year old girls).

Court's 12/03/08 Omnibus Order.

MINUTES FORM 90
CIVIL -- GEN                              2                    Initials of Deputy Clerk __cls_____

**EXHIBIT ___/___ PAGE _6_**

Exhibit G - Page 478

December 3, 2008, Order, but preserved the limited stay set forth in the January 7, 2009, Order.

These events must be considered in connection with the relevant legal standards.

As measured by an infringement defendant's profits, damages for copyright infringement and trademark infringement are subject to the same shifting burden-of-proof scheme. A plaintiff has the burden with respect to defendant's sales, but a defendant bears the burden of proving deductions from sales to arrive at profits. 17 U.S.C. § 504(b) (copyright); 15 U.S.C. § 1117(a) (trademark). Doubts regarding calculation of costs or profits are resolved in the plaintiff's favor; a failure by the defendant to meet its burden of proof can result in an award of gross revenue. Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc., 772 F.2d 505, 514 (9th Cir. 1985) (citations omitted).

In both copyright and trademark cases, adjustments may be made to gross revenue based on apportionment, i.e., a reduction for amounts of "an infringer's profits [that] are attributable to factors in addition to use of plaintiff's work." Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc., 772 F.2d 505, 518 (9th Cir. 1985) (internal citation omitted) (copyright); accord Nintendo of America, Inc. v. Dragon Pacific Intern., 40 F.3d 1007, 1012 (9th Cir. 1994) (copyright and trademark).

In addition to apportionment, and subject to proof, direct costs, including, most significantly, cost of goods sold, are generally deducted from gross revenues to arrive at profits, even where the infringement is willful.[3] Beyond direct costs, however, case law severely limits the deductions that may be made to gross revenue in cases of willful infringement. Most significantly, where infringement is willful, a proportional share of overhead (including salaries) is not deductible, and taxes are not deductible.[4] See Kamar International, Inc. v. Russ Berrie & Co., 752 F.2d 1326, 1331 (9th Cir.1984) (overhead not deductible in case of willful copyright infringement); Three Boys Music Corp. v. Bolton, 212 F.3d 477, 487 (9th Cir. 2000) (taxes not deductible in case of willful copyright infringement but are deductible in cases of non-willful infringement); Wolfe v. National Lead Co., 272 F.2d 867 (9th Cir.1959) (salaries not deductible in case of willful

---

[3] Mattel has identified other items which it concedes are "arguably" direct costs, including production costs, royalty expense, advertisement production and media expenses, mold depreciation expense, other sales and marketing expense, and product development expense. Mattel's Memo. re Escrow of Bratz Profits at 8 n.16.

[4] Mattel contends a number of items found on the MGA parties' financial statements fall into this category, including travel and entertainment expenses, salaries and related expenses, professional fees, premises-related expenses, equipment-related expenses, supplies, postage delivery expenses, and other expenses and distribution expenses. Id.

EXHIBIT ___1___ PAGE 7

Exhibit G - Page 479

trademark infringement), overruled on other grounds by Maier Brewing Co. v. Fleischmann Distilling Corp., 359 F.2d 156 (9th Cir.1966) (en banc); L.P. Larson, Jr., Co. v. Wm. Wrigley, Jr., Co., 277 U.S. 97, 99 (1928) (taxes not deductible in case of willful trademark infringement).

In applying these principles, the Court is guided by the purpose of the provisions authorizing awards of defendants' profits to copyright and trademark infringement plaintiffs, which is to remove any economic incentive of infringement and to avoid an infringing defendant's unjust enrichment.  See Polar Bear Productions, Inc. v. Timex Corp., 384 F.3d 700, 718 (9th Cir. 2004) ("[T]he purpose of § 504(b) is to compensate fully a copyright owner for the misappropriated value of its property and to avoid unjust enrichment by defendants, who would otherwise benefit from this component of profit through their unlawful use of another's work.") (internal quotation marks and citation omitted); Polo Fashions, Inc. v. Dick Bruhn, Inc., 793 F.2d 1132, 1135 (9th Cir.1986) ("Section 1117(a)'s primary purpose is to 'take all the economic incentive out of trademark infringement.") (internal quotation marks and citation omitted).

The Court must also consider what it means to willfully infringe another's copyright or trademark.  "[T]he term 'willful' refers to conduct that occurs with knowledge that the defendant's conduct constitutes copyright infringement."  Danjaq LLC v. Sony Corp., 263 F.3d 942, 957 (9th Cir. 2001).  By the same token, "[w]illful infringement carries a connotation of deliberate intent to deceive. Courts generally apply forceful labels such as 'deliberate,' 'false,' 'misleading,' or 'fraudulent' to conduct that meets this standard."  Lindy Pen Co. v. Bic Pen Corp., 982 F.2d 1400, 1406 (9th Cir. 1993) (citations omitted).

Against this background, and in accordance with the legal standards articulated herein, the Court considers whether production of the core female fashion dolls constituted willful copyright infringement, and does so with reference to specific time periods.  Profits based on trademark infringement, also discussed below, are relevant because of the constructive trust imposed by the Court over the marks "Bratz" and "Jade."

### Prior to 07/01/08

For all periods of time prior to July 1, 2008, the jury's verdict, which found no willful copyright infringement controls.  No accounting is necessary for this period of time, as it is included in the amount awarded by the jury.

### 07/01/08 - 12/02/08

Because there was no trademark claim asserted by Mattel, and because this period of time occurred before imposition of the constructive trust over the trademark, the accounting for this period shall include only profits associated with the core Bratz

EXHIBIT ____1____ PAGE 8

Exhibit G - Page 480

Case 2:04-cv-09049-SGL-RNB    Document 5740    Filed 06/18/2009    Page 5 of 7

female fashion dolls, or profits related to other products that may infringe Mattel's copyright, and not any other Bratz product that may be subject only to the constructive trust.[5]  In the event that a dispute should arise over whether profits associated with any particular core Bratz female fashion doll should be included in the accounting, the parties, the Monitor, and their accountants shall in good faith consult the Court's July 24, 2008, Order at 2-3; December 3, 2008, Omnibus Order at 10-11; December 3, 2008, Permanent Injunction (including the exhibits attached thereto).  In any event, the accounting shall include any doll that is the embodiment of the sculpts referenced in the Permanent Injunction Order at Exhs. 1 and 2.  See December 3, 2008, Permanent Injunction at 2, ¶ 1(a)-(b) (enjoining production and sale of any doll utilizing the "core Bratz doll production sculpt" (aka TX 1136A) and the "Bratz movie sculpt").

The MGA parties have contended that the jury's finding of non-willful copyright infringement carries into this period and beyond.  The Court disagrees.  After the jury's Phase 1A verdict, the issue of the timing of the Bryant drawings was resolved in favor of Mattel, as was the issue of the ownership of the Bratz sculpt designated TX 1136A.  This adjudication changed the landscape dramatically and, absent a successful appeal, the MGA parties are not free to continue to dispute the validity of Mattel's copyright in the Bryant drawings (which it registered well in advance of the Phase 1A trial).[6]

Nonetheless, and although it is a very close call, the Court finds no willful copyright infringement during this time period.  The Court is cognizant of the well-articulated arguments advanced by counsel for the MGA parties regarding the limiting scope of the jury's verdict, likened to a small rug too inadequate to cover a large floor, no matter how it was moved about.  Although the Court ultimately rejected this argument, the Court nevertheless concludes that the MGA parties could have, in good faith, relied on their position regarding the jury's verdict, and could have reasonably believed that the Court's ultimate finding regarding the scope of infringement would have been more limited.[7]

Accordingly, although the MGA parties must account for the profits resulting from all core Bratz female fashion dolls that use the "core Bratz doll production sculpt" and the "Bratz movie sculpt," from the time period July 1, 2008, through December 2, 2008, the MGA parties may deduct, subject to proof, both direct and indirect costs, as well as the taxes, associated with the production of these dolls.

---

[5] See, for example, the Court's discussion regarding the "hero shot," infra.

[6] Shortly after the Phase 1A verdict, on July 25, 2008, Mattel also registered its copyright interest in the Bratz sculpt designated TX 1136A.  Hutnyan Decl. (filed 09/29/08) Ex. 122.

[7] Significantly, the Court's finding on this point is limited to the equitable issue of the scope of an appropriate accounting, and should not be construed to any circumstances beyond the scope of an appropriate accounting.

MINUTES FORM 90
CIVIL -- GEN                              5                    Initials of Deputy Clerk __cls_____

EXHIBIT ____1____ PAGE _9_

Case 2:04-cv-09049-SGL-RNB      Document 5740      Filed 06/18/2009      Page 6 of 7

<u>12/03/08 - 01/21/2010</u>

    Immediately upon issuing its series of Orders on December 3, 2008, the Court stayed them pending its consideration of the parties' post-trial motions.  That stay was eventually modified, as set forth above, to provide certain economic stability to retailers that sell MGAE's products.  The language of the stay specifically "permitted" retailers and distributors to purchase "Bratz and Bratz-related products" through the 2009 retail season.  A necessary corollary to the granting of that permission "to purchase" products is the granting of permission to the MGA parties "to sell" them.  Admittedly, it was never the intention of the Court to grant a "license to infringe" such that the profits associated with Bratz products continue to enure to the benefit of the MGA parties.  Nevertheless, the Court finds that reliance on the Court's imposition of the stay is sufficient to negate an inference of willfulness for the duration of the stay.

    Profits for the period of December 3, 2008, through January 21, 2010, therefore, must be accounted for and escrowed; however, the MGA parties may deduct, subject to proof, both direct and indirect costs, as well as the taxes, associated with the production of these products.

    Implicit in this discussion, by reference to "Bratz-related products," is a recognition that December 3, 2008, marks the date for which the scope of the products whose profits are subject to accounting and escrow dramatically expands.  Before this date, it was limited essentially to the core Bratz female fashion dolls; after this date, in light of the Court's Constructive Trust Order, it includes any and all products that bear the "Bratz" or "Jade" trademarks.

    The Court recognizes that certain disputes regarding the accounting may remain unresolved even after the issuance of this Order.  For instance, it is unknown to the Court the extent to which the so-called "hero shot," the original version of which was registered by Mattel, appears on products other than the core Bratz female fashion dolls.  The Court has not had the occasion to consider, and thus the parties have not presented and the Court has not definitively decided, the issue of whether any such depiction constitutes copyright infringement, and whether and/or to what extent apportionment based on that depiction alone is appropriate.  The Court also recognizes that disputes may occur regarding whether and/or to what extent apportionment is appropriate, and whether and/or the MGA parties have meet their burden of proof regarding deductions of direct and indirect costs.

    In light of these anticipated disputes, and in light of the burden already placed on the judicial resources of this Court, it is the intent of this Court to assign to the Monitor the responsibility to investigate disputes that arise regarding the accounting and escrow and to file with the Court, under seal but served on all the parties and Court-appointed

MINUTES FORM 90
CIVIL -- GEN                              6                    Initials of Deputy Clerk ___cls_____

EXHIBIT ____1____ PAGE 10

Exhibit G - Page 482

Case 2:04-cv-09049-SGL-RNB      Document 5740      Filed 06/18/2009      Page 7 of 7

Officers, a Report and Recommendation regarding the resolution of such disputes, if, and only if, the Monitor is unsuccessful in informally resolving such disputes.

**IT IS SO ORDERED.**

cc:    Ronald Durkin
       Patrick Fraoli
       Robert O'Brien
       Pierre Prosper

MINUTES FORM 90
CIVIL -- GEN                        7                Initials of Deputy Clerk __cls_____

EXHIBIT ___*1*___ PAGE __*11*__

Exhibit G - Page 483

# Exhibit 2

Case 2:04-cv-09049-SGL-RNB   Document 5273   Filed 04/27/2009   Page 1 of 25

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
<u>CIVIL MINUTES -- GENERAL</u>

Case No.   CV 04-09049 SGL(RNBx)                    Date: April 27, 2009
Title:     MATTEL, INC. V. MGA ENTERTAINMENT, INC., et al.
================================================================
PRESENT:  HONORABLE STEPHEN G. LARSON, U.S. DISTRICT JUDGE

        Cindy Sasse                            None Present
        Courtroom Deputy                       Court Reporter

ATTORNEYS PRESENT FOR                 ATTORNEYS PRESENT FOR
PLAINTIFFS:                           DEFENDANTS:

None Present                          None Present

PROCEEDINGS:   ORDER DENYING MATTEL'S MOTION FOR JUDGMENT AS A
               MATTER OF LAW (DOCKET #4498)

               ORDER GRANTING IN PART AND DENYING IN PART MGA'S
               MOTION FOR JUDGMENT AS A MATTER OF LAW (DOCKET
               #4496)

               ORDER AMENDING IN PART ORDER RE FINDING OF
               LIABILITY PURSUANT TO CAL. BUS. & PROFS. CODE § 17200
               (DOCKET #4441);

               ORDER GRANTING IN PART AND DENYING IN PART MGA'S
               MOTION FOR REMITTITUR (DOCKET #4495, #4523)

               ORDER LIFTING STAY ON PERMANENT INJUNCTION (#4443)

               ORDER FOR ACCOUNTING OF PROFITS OF
               BRATZ PRODUCTS

               ORDER REGARDING RETRIEVAL OF PREVIOUSLY LODGED

MINUTES FORM 90                                  Initials of Deputy Clerk __cls_____
CIVIL -- GEN                    1

EXHIBIT __2__ PAGE _12_

Exhibit G - Page 485

LAPTOP COMPUTER WITH PHASE 1A AND 1B TRIAL TRANSCRIPT

ORDER REGARDING UNSEALING OF DOCUMENTS FILED UNDER SEAL FROM MAY 28, 2008, THROUGH FEBRUARY 11, 2009

ORDER RE PHASED, UNDER SEAL RELEASE OF FORENSIC AUDITOR'S REPORT TO COUNSEL AND PARTIES

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO INTERVENE (DOCKET #4761)

ORDER APPOINTING TEMPORARY RECEIVER

ORDER SETTING HEARING ON APPOINTMENT OF PERMANENT RECEIVER

## I. MATTEL'S MOTION FOR JUDGMENT AS A MATTER OF LAW
## (DOCKET #4498)

A motion for judgment as a matter of law after trial is granted only when there is not a "legally sufficient evidentiary basis [for a reasonable jury] to find for that party on [an] issue." Pavao v. Pagay, 307 F.3d 915, 918 (9th Cir. 2002). Sufficient evidence is "evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion." Id.

Mattel, Inc. ("Mattel") moves for judgment as a matter of law on the issue of the scope of infringement of the Bratz dolls. Specifically, Mattel argues that "[e]ach core Bratz fashion doll sold by MGA infringes Mattel's copyrights." Motion at 4. Mattel acknowledges that the judgment it seeks would alter neither the jury's damages award nor the Court-awarded equitable relief; however, Mattel seeks this judgment as an alternative basis for the relief it has already been awarded. Without ruling on the merits of the argument, the Court declines to adopt this alternative basis because it is not necessary to support the relief awarded to Mattel. The jury, in the Phase 1B verdict, found that the Bratz dolls infringed Mattel's copyrights, but the scope of infringement was not explicitly found by the jury. Even if the Court were to grant the relief sought by Mattel, the amount the jury awarded for copyright infringement, $10 million, would be unchanged. Moreover, the Court, sitting in equity, made an express factual finding, set forth more fully in its December 3, 2008, Order that the core Bratz fashion dolls infringed Mattel's copyrights. This portion of Mattel's motion is therefore DENIED.

EXHIBIT __2__ PAGE _13_

Exhibit G - Page 486

In a similar fashion, Mattel seeks judgment as a matter of law on the issue that sculptor Margaret Leahy's contributions cannot, as a matter of law, support a claim of independent creation of the Bratz fashion doll sculpt, TX 1136A.[1]  In Phase 1A of the trial, the jury found that the sculpt was "'conceived or reduced to practice' -- that is, created -- by Carter Bryant, alone or jointly with others," during his employment with Mattel.  Phase 1A Verdict Form at 5.  This finding, when viewed in conjunction with the Court's summary judgment order, was sufficient to place the sculpt within the assignment clause of the Inventions Agreement which, in turn, conferred the rights to the sculpt to Mattel.  Therefore, as with the previous issue, this judgment is sought merely as an alternative basis for the relief Mattel has been awarded, which the Court, without deciding the merits, declines to adopt.  This portion of Mattel's motion is therefore similarly **DENIED.**

Finally, Mattel seeks judgment as a matter of law that both Isaac Larian and MGA HK engaged in acts of fraudulent concealment.  As to Isaac Larian, although there was evidence suggesting that he engaged in a cover-up as to *who* created Bratz (and later, as to *when* Bratz was created), he testified at trial that he did nothing to keep Carter Bryant's *role* in the creation of Bratz hidden.  Even in the face of evidence to the contrary, the jury could have believed him; thus, judgment as a matter of law on this point is not appropriate.  Credibility determinations are for the jury, and the jury could have made this credibility determination in favor of Isaac Larian.  Winarto v. Toshiba America Electronics Components, Inc., 274 F.3d 1276, 1294 (9th Cir. 2001).  As for MGA HK, Mattel did not cite any evidence that suggests that MGA HK should be found to have fraudulently concealed the basis for Mattel's claims, and therefore judgment as a matter of law is not appropriate.  This portion of Mattel's motion is therefore also **DENIED.**

For the reasons set forth above, Mattel's Motion for Judgment as a Matter of Law is **DENIED** in its entirety.

## II. MGA'S MOTION FOR JUDGMENT AS A MATTER OF LAW (DOCKET #4496)

The MGA parties[2] seek judgment as a matter of law that federal copyright law

---

[1]  For their part, the MGA parties seek judgment as a matter of law of the mirror image of Mattel's claim; specifically, as discussed more fully below, the MGA parties seek judgment as a matter of law that Margaret Leahy's contribution to the creation of the sculpt amounted to independent creation.

[2]  The Court herein refers to all three MGA parties collectively and individually as follows:  MGA Entertainment. Inc., is referred to as "MGAE."  MGA Entertainment (HK) Limited (also referred to in the record as "MGA Hong Kong") is referred to herein as "MGA HK."  All three defendants, Isaac Larian, MGAE, and MGA HK are collectively referred to as "the MGA parties."  When necessary to distinguish them further, the subset of entity defendants, MGAE and MGA HK, are collectively referred to as "the MGA entities."

MINUTES FORM 90                                           Initials of Deputy Clerk __cls_____
CIVIL -- GEN                              3

EXHIBIT __2__ PAGE 14

Exhibit G - Page 487

preempts Mattel's claims for aiding and abetting breach of fiduciary duty and the duty of loyalty. Relatedly, they also seek judgment as a matter of law that the damages awarded as to the state-law claims are precluded as preempted because they represent damages awarded under the theory of disgorgement, which was also awarded as part of copyright damages. The Court has previously rejected the argument that copyright law preempts the two aiding and abetting claims, and the Court leaves undisturbed its previous holding on this issue. As for the related argument regarding damages, to accept the MGA parties' argument, the Court would have to reject the current, firmly established standard for determining if a state-law claim is preempted in favor of a new standard that would find preemption any time the relief sought by the state-law claim is also redressable by a copyright claim. This Court must follow the enunciated standard for copyright law preemption, and it therefore rejects the MGA parties' argument regarding this issue. This portion of the motion is DENIED.

The MGA parties seek judgment as a matter of law that Mattel's claims for aiding and abetting breach of fiduciary duty and the duty of loyalty is preempted by the California Uniform Trade Secrets Act. This issue was not raised in the parties' pretrial conference order and, accordingly, was waived. See e.g., El-Hakem v. BJY Inc., 415 F.3d 1068, 1077 (9th Cir. 2005). This portion of the motion is DENIED.

The MGA parties seek judgment as a matter of law that Mattel failed to prove its damages as to each of its state-law claims. Mattel proceeded on a theory of recovery that sought disgorgement of the MGA parties' profits rather than another measure of damages; there was ample evidence presented by both sides regarding the MGA parties' profits. The Court has previously rejected, and does not now revisit, the MGA parties' contention that the proper measure of damages for aiding and abetting Carter Bryant's breaches of fiduciary duty and the duty of loyalty should be measured by Carter Bryant's profits, rather than the MGA parties' profits. As for the conversion claim, as set forth infra, the Court has remitted the monetary damages awarded by the jury in favor of the equitable relief awarded by the Court in the form of return of the original drawings.[3] This portion of the motion is DENIED.

The MGA parties seek judgment as a matter of law that Mattel failed to prove that the MGA parties had actual knowledge of Carter Bryant's fiduciary duty or breach thereof. Admittedly, there is an absence of direct evidence, such as an admission by Isaac Larian, that any of the MGA parties had actual knowledge of Carter Bryant's fiduciary duty or breach thereof. But the indirect evidence relevant to this issue admitted at trial clearly supports the jury's verdict that both MGAE and Isaac Larian had an understanding that Carter Bryant had such an obligation as well as the parameters of such an obligation. This portion of the motion is DENIED.

---

[3] Those original drawings are currently in the custody of the Court as part of the Court record.

MINUTES FORM 90
CIVIL -- GEN

4

Initials of Deputy Clerk __cls_____

EXHIBIT __2__ PAGE _15_

Exhibit G - Page 488

The MGA parties seek judgment as a matter of law as to MGA HK's liability for unfair competition. The Court's summary judgment Order held that Mattel had raised a triable issue of fact as to whether the MGA parties tortiously interfered with Bryant and Mattel's contractual relationship and whether they engaged in commercial bribery. However, the tortious interference claim was not asserted against MGA HK, and there was no evidence presented at trial to support a statutory unfair competition claim against MGA HK for commercial bribery.  See Court's June 4, 2009, Final Pretrial Conference Order.  Accordingly, the Court **GRANTS** the motion on this issue, and the Court **ORDERS** that the following **AMENDMENTS** be made to its Order Granting Mattel's Motion for Finding Liability and Injunctive Relief Pursuant to Cal. Bus. & Profs. Code § 17200, filed December 3, 2008 (docket #4441):

- At page 1, line 6:  Delete "GRANTS" and substitute "GRANTS IN PART AND DENIES IN PART"

- At page 3, line 7:  Delete "the MGA Defendants" and substitute "MGA and Larian"

The MGA parties seek judgment as a matter of law that Mattel is not entitled to base any claims on ownership to the name "Bratz."  To the extent that the MGA parties' argument is based on the construction of the Inventions Agreement, it was not raised in the Rule 50(a) motion for judgment as a matter of law and, therefore, may not be raised for the first time in a Rule 50(b) motion for judgment as a matter of law.[4]  The Court finds wavier.

In any event, the argument fails on its merits.  The name "Bratz," which the jury found Carter Bryant conceived of during the period of his employment with Mattel, is within the scope of the assignment clause of the Inventions Agreement.  California law allows the assignment of an idea; thus, the name "Bratz" is, by virtue of the Inventions Agreement, the Court's summary judgment order construing that Agreement, and the jury's finding regarding the origin of the name, Mattel's property (even if it was not a proper trademark at the time it was conveyed and even though it is not subject to being copyrighted).  This portion of the motion is **DENIED.**

The MGA parties seek judgment as a matter of law that copyright infringement is limited to the first-generation Bratz dolls.  Essentially, the MGA parties seek a ruling that no reasonable jury could have found that any Bratz dolls, other than the first-generation

---

[4] The Court rejects the MGA parties' contention that this issue was raised in the Rule 50(a) motion and that the Rule 50(b) motion merely expands upon the argument.  The MGA parties' point in the Rule 50(a) motion was that there was a lack of intellectual property protection for the name Bratz (because it was not a valid trademark because it had not ever been used in commerce and because it could not be copyrighted); conversely, their point here is that the name "Bratz" is not within the scope of the Inventions Agreement.

MINUTES FORM 90
CIVIL -- GEN

5

Initials of Deputy Clerk __cls_____

**EXHIBIT** __2__ **PAGE** __16__

Exhibit G - Page 489

. Case 2:04-cv-09049-SGL-RNB    Document 5273    Filed 04/2//2009    Page 6 of 25

Bratz dolls, infringe Mattel's copyrights.  The Court has already found that this is not the case; specifically, the Court has found, for the reasons set forth in its December 3, 2008, Order, that hundreds of Bratz female fashion dolls infringe Mattel's copyrights. This portion of the motion is **DENIED.**

The MGA parties seek judgment as a matter of law that Bryant was not an author of the Bratz sculpt.  The Court previously observed, at trial, that this is an affirmative defense that was not asserted and was therefore waived.  Moreover, this issue was not raised in the pretrial conference order; thus, it was waived for that reason as well. Furthermore, it was not raised in the MGA parties' Rule 50(a) motion, and therefore may not be raised for the first time in the Rule 50(b) motion.

In fact, this issue was not raised until *after* the jury's verdict in Phase 1A, in which the jury determined that Bryant created the sculpt (alone, or jointly with others). Recognizing this fact as a potential impediment to the relief they now seek, the MGA parties contend that in Phase 1A, the jury was not instructed on how to determine – and thus its express factual finding does not address – authorship as a matter of copyright law.  Nevertheless, the Phase 1A verdict established the jury's finding that the sculpt was "'conceived or reduced to practice' – that is, created – by Carter Bryant, alone or jointly with others," during his employment with Mattel.  Phase 1A Verdict Form at 5. This finding, when viewed in conjunction with the Court's summary judgment order, was sufficient to place the sculpt within the assignment clause of the Inventions Agreement which, in turn, conferred the rights to the sculpt to Mattel.

In any event, this argument also fails on its merits.  A reasonable jury could have readily found that Carter Bryant was the author of the sculpt based on Paula Garcia's testimony that Margaret Leahy was tasked with creating the three-dimensional object equivalent of Carter Bryant's two-dimensional drawings.  Trial Tr. at 800.  When asked if she looked back to Carter Bryant's two-dimensional drawings during her review of the sculpt, Ms. Garcia stated that it was possible (although she had no specific recollection of doing so), "because the exercise was to create a 3D version of those 2D drawings, it was very likely that those drawings were there to then compare its 3D version with those relationships."  Id.; see also Trial Tr. at 797 (Garcia's testimony as to the purpose of the sculpt, which was to determine how the "2D image" would "translate" to "3D"). This final portion of the motion is therefore DENIED.

As set forth herein, the Court **GRANTS** that portion of the MGA parties' Motion for Judgment as a matter of law that challenges the Court's finding of a violation of §§ 17200 et seq. on the part of MGA HK.  The Court DENIES the remainder of the MGA parties' Motion for Judgment as a matter of law.

Initials of Deputy Clerk __cls_____

EXHIBIT ___2___ PAGE _17_

Exhibit G - Page 490

### III. MGA'S MOTION FOR REMITTITUR
### (DOCKET #4495, #4523)

On its face, the jury's Phase 1 verdict awards Mattel $100,031,500.00. The jury verdict was a round $100 million (allocated among a total of four claims and three defendants) except for $31,500, which was awarded to Mattel as damages for conversion of the original Bratz drawings. The MGA parties seek remittitur of this amount, arguing that, at most, Mattel should be awarded $20 million.

The Ninth Circuit enunciated its remittitur standard in 1982, when it noted that other circuits "consistently approve remitting the judgment to the maximum amount sustainable by the proof," before stating, "[w]e adopt this standard." D & S Redi-Mix v. Sierra Redi-Mix and Contracting Co., 692 F.2d 1245, 1249 (9th Cir. 1982). One of the cases cited with approval by the Redi-Mix court stated the standard in greater detail:

> The defendants' final contention is that the verdict was excessive, justifying a new trial or, in the alternative, a remittitur. Our review of this issue is limited to an examination of the plaintiff's injuries to determine whether the damage award is beyond the maximum possible award supported by the evidence in the record.

Keyes v. Lauga, 635 F.2d 330, 336 (5th Cir. 1981)

Since 1981, the Ninth Circuit has elaborated on this standard:

> Even a total inadequacy of proof on isolated elements of damages claims submitted to a jury will not undermine a resulting aggregated verdict which is nevertheless reasonable in light of the totality of the evidence. If we find that a jury's damages award exceeds the maximum amount sustainable by the probative evidence, we will not hesitate to order a remission of the excess by the plaintiff or, in the alternative, a new trial. . . . But where, as here, the jury's verdicts find substantial support in the record and lie within the range sustainable by the proof, we will not "play Monday morning quarterback" and supplant the jury's evaluation of the complex and conflicting evidence with our own.

Los Angeles Memorial Coliseum Com'n v. National Football League, 791 F.2d 1356,

EXHIBIT ___2___ PAGE _18_

Exhibit G - Page 491

1366 (9th Cir. 1986) (internal citations omitted).[5] Cf. In re First Alliance Mortg. Co., 471 F.3d 977, 1001 (9th Cir. 2006) (using the above-quoted standard, but noting that before the Court was "the rare case in which it is sufficiently certain that the jury award was not based on proper consideration of the evidence" but was instead "based on improperly considered evidence, directly traceable to an error that was cured too little, too late"). Generally, courts are cautioned to "undertake only limited review of jury damages awards, in order to avoid encroaching upon the jury's proper function under the Constitution." Memorial Coliseum at 1365. The standard is exceptionally deferential to the jury's findings. If the damages award is supported by the evidence, it must be upheld even if the Court would have awarded a different amount of damages.

It is through this very narrowly focused lens that the Court must consider the present motion.

The MGA parties argue that Mattel had a singular theory of recovery – disgorgement of profits – and the amounts set forth by the jury as to each of the three state-law claims are duplicative. This is not a completely unappealing argument. For each of three state law claims – intentional interference with contractual relations, aiding and abetting breach of fiduciary duty, and aiding and abetting the duty of loyalty – the jury indicated that Mattel should be awarded $20 million as to MGAE and $10 million as to Isaac Larian. Totaled, this award is $90 million. Viewed pursuant to the MGA parties' theory, it would be the same $30 million awarded three times. Relatedly, the MGA parties contend that the copyright damages of $10 million (allocated among three defendants) are also duplicative of this $30 million, even though the number is not exactly the same.[6]

However, these explanations as to what the jury intended are purely speculative. The remittitur standard is exceptionally deferential to the jury's verdict, and the Court cannot disturb it based on speculation. The fact is the evidence not only supported a verdict of $100 million, this Court could have, under the remittitur standard, easily sustained a verdict many times this amount. The jury may have meant to award only a total of $30 million, or they may have simply decided they could all agree on a round figure of $100 million and then set about allocating that $100 million among multiple claims and defendants.

---

[5] A number of district court cases in the Ninth Circuit have recently applied this standard. Paul v. Asbury Automotive Group, LLC 2009 WL 188592, at *2 (D. Ore. 2009); Hall v. North American Indus. Services, Inc., 2008 WL 789895, at *2 (E.D. Cal. 2008); Lucky Break Wishbone Corp. v. Sears, Roebuck and Co., 2008 WL 4742206, at *4 (W.D. Wash. 2008); Eldorado Stone, LLC v. Renaissance Stone, Inc., 2007 WL 2403572, at *1 (S.D. Cal. 2007).

[6] The MGA parties' explanation for why these damages are duplicative even though they are not exactly the same is that the jury reduced the $30 million for apportionment based on the expert testimony of Professor Joachimsthaler, who testified that MGA's branding efforts could be responsible for approximately 50% to 70% of Bratz-related profits.

MINUTES FORM 90                                        Initials of Deputy Clerk __cls_____
CIVIL -- GEN                          8

EXHIBIT ___2___ PAGE _19_

Exhibit G - Page 492

In any event, the Court must return to the standard by which its conclusion is governed. Here, a district court *must* leave undisturbed jury's verdict that is "reasonable in light of the totality of the evidence," where the verdict does not "exceed[] the maximum amount sustainable by the probative evidence," and where the verdict "lie[s] within the range sustainable by the proof." The jury's verdict of $100 million is well within the range of possible awards based on the evidence of record, and therefore the Court must leave it undisturbed.

What the MGA parties are careful not to encroach upon, but what they in essence really seek, is an inquiry into what the jury *meant* by its verdict. As the Court and the parties to this case are aware, this inquiry is squarely within that which is prohibited by Fed. R. Evid. 606(b):

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith.

Id. Of course, if that inquiry were permissible in this instance, the results seem clear. Counsel for the MGA parties has not thus far denied that at least one juror, possibly more, stated to them that the jury in fact intended a $100 million award of damages.

Separately, the MGA parties contend that, of that $100 million award, the $1 million awarded as defendant MGA HK's liability for copyright infringement is duplicative because of certain consolidated financial reporting that occurs between MGAE and MGA HK. This evidence was not before the jury; the jury made its award based on the evidence before it. In any event, because the evidence presented supports the $1 million award made against MGA HK, under the Memorial Coliseum standard, it must be left undisturbed.

The MGA parties also contend that the damages against Mr. Larian for intentional interference with contractual relations is barred by the statute of limitations. The Court previously held that the intentional interference with contractual relations claim was not subject to the discovery rule, so unless Mattel was able to establish a sufficient period of fraudulent concealment, the interference claim would be time barred. June 2, 2008, Order at 3. In its Phase 1B verdict, the jury answered in the negative a specific interrogatory regarding whether a requisite period of fraudulent concealment could be attributed to Mr. Larian.[7] Therefore, a combination of the Court's June 2, 2008,

---

[7] Conversely, the jury answered the same question regarding MGAE affirmatively.

EXHIBIT __2__ PAGE 20

Exhibit G - Page 493

Case 2:04-cv-09049-SGL-RNB   Document 5273   Filed 04/27/2009   Page 10 of 25

Order and the jury's specific findings supports the MGA parties' position that the $10 million awarded as to Isaac Larian for the claim of intentional interference with contractual relations should be remitted because, in the absence of a fraudulent concealing finding by the jury, the claim is time barred.

However, at the hearing on this issue, counsel for Mattel suggested to the Court that its legal conclusion regarding the non-application of the discovery rule to tortious interference claims was in error and was, in fact, not an argument advanced by the parties in their summary judgment papers. Only very rarely will a court entertain an oral motion for reconsideration; rarer still are those occasions when such a motion is granted. However, such a result is warranted here where the Court's previous legal conclusion was simply wrong.

In their summary judgment motion, the MGA parties argued that a claim for "intentional interference with a contract accrues no later than the date of the contract's breach," implying -- at least in the Court's view at the time of its review of the motion -- that the discovery rule did not apply. See MGA SJ Mot. at 21 (docket #2572). The authority they cite supports the general rule regarding the accrual date of a tortious interference claim, but the authority does not support the Court's more specific conclusion that the discovery rule is inapplicable to claims for tortious interference. See Knoell v. Petrovich, 76 Cal.App.4th 164, 168 (1999) (refusing to apply the discovery rule to a tortious interference claim but doing so on the basis that the plaintiff made judicial admissions that were inconsistent with the application of the rule); Trembath v. Digardi, 43 Cal.App.3d 834, 836 (1974) (refusing to hold that the accrual of a claim for tortious interference claim as to an attorney-client contingency fee contract extended beyond the date of the breach to the suggested accrual date of the client's actual recovery, but not discussing the discovery rule); Forcier v. Microsoft Corp., 123 F.Supp.2d 520, 531 (N.D. Cal. 2000) (refusing to apply the discovery rule to a tortious interference claim because the facts presented in the case did not warrant it); Charles Lowe Co. v. Xomox Corp., 1999 WL 1293362 at *9 (N.D. Cal. 1999) (defining accrual of a tortious interference claim in relation to when damages are incurred and when a plaintiff may seek a legal remedy, but not discussing the discovery rule); Menefee v. Ostawari, 228 Cal.App.3d 239, 245 (1991) (discussing neither tortious interference claims nor the discovery rule).

At best, these cases represent examples of cases in which courts refuse to apply the discovery rule because the facts of the case do not warrant it; these cases do not stand for the broader conclusion reached by the Court in its prior order that the discovery rule is inapplicable to *all* tortious interference claims, regardless of the factual circumstances related to the claim's discovery. Cf. AmerUS Life Ins. Co. v. Bank of America, N.A., 143 Cal.App.4th 631, 639 (2006) (explicitly stating, regarding conversion claims, that "[t]o the extent our courts have recognized a 'discovery rule' exception to toll the statute, it has only been when the defendant in a conversion action fraudulently conceals the relevant facts or where the defendant fails to disclose such facts in

MINUTES FORM 90
CIVIL -- GEN                                          10                    Initials of Deputy Clerk __cls_____

EXHIBIT __2__ PAGE __21__

Exhibit G - Page 494

violation of his or her fiduciary duty to the plaintiff."). Indeed, by examining the facts of the case and discussing the discovery rule standard before concluding the rule does not apply in that instance, rather than noting a wholesale rejection of the application of the discovery rule to tortious interference claims, these courts have implicitly held that the discovery rule may, in certain undefined instances, permit otherwise time-barred claims to proceed.[8]

The Court has previously discussed at length why the discovery rule delayed the accrual of Mattel's claims in this case. That rationale applies with equal force to the intentional interference with contractual relations claim, which was timely asserted against Mr. Larian. Thus, it becomes irrelevant that the jury failed to attribute any fraudulent concealment to Mr. Larian, and the Court **DENIES** the motion on issue of timeliness of the tortious interference claim.

Finally, the MGA parties correctly contend that the damages awarded for conversion, totaling $31,500, should be remitted because the Court's declaratory judgment orders the MGA parties to return the drawings. The Court **GRANTS** the motion on this issue. However, the drawings shall remain in the Court's custody pending completion of Phase 2, pending appeal, and/or pending further order of this Court.

## IV. LIFTING STAY, AS MODIFIED AND SUPPLEMENTED, ON PERMANENT INJUNCTION (#4443)

Subject to the modification set forth in the Court's January 7, 2009, Order (docket #4657) (relating to distributors and retailers), the Court **VACATES** the stay on enforcement of its December 3, 2008, Order Granting Mattel, Inc.'s Motion for Permanent Injunction (docket #4443) ("Permanent Injunction Order"). Specifically, the Court **VACATES** the stay set forth in its Omnibus Order of December 3, 2008 (docket #4439) at 16 (which was imposed pending resolution of the three post-trial motions upon which the Court today rules); however, the Court leaves undisturbed the more limited stay set forth in the Court's January 7, 2009, Order, which relates to the purchase of Bratz products by retailers and distributors up to and including December 31, 2009. This limited stay is supplemented as set forth below.

---

[8] Had those courts not wished to make this implication, they could have, but did not, set forth a qualification that the court was assuming without deciding that the discovery rule could be applied to a tortious interference claim. Cf. Grisham v. Philip Morris U.S.A., Inc., 40 Cal.4th 623, 634 n.7 (2007) ("We assume for purposes of this discussion that the delayed discovery rule applies to unfair competition claims. We note that this point is currently not settled under California law . . . and we do not address it.") (citations omitted).

EXHIBIT __2__ PAGE __22__

Exhibit G - Page 495

The Permanent Injunction Order contemplates the Court's appointment of a Special Master to resolve issues and disputes relating to the enforcement of the Permanent Injunction Order. At this point, in the absence of any such disputes, the Court reserves such an appointment.

## V. ACCOUNTING OF BRATZ PROFITS SINCE AUGUST 26, 2008

In light of the Court's interpretation of what has been referred to in this litigation as the Inventions Agreement (especially the Court's April 25, 2008, summary judgment Order), in light of the two jury verdicts returned in this case on July 17, 2008, and on August 26, 2008, in light of the Court's December 3, 2008, Orders regarding the parties' equitable claims and equitable relief (especially the Court's Omnibus Order defining the parameters of the scope of copyright infringement, the Court's Order Granting Mattel's Motion for Permanent Injunction, and the Court's Order Granting Mattel's Motion for Constructive Trust), and in light of this Order rejecting in all material respects the MGA parties' post-trial challenges to the jury's findings, the Court's findings, and the Court's legal and equitable rulings, the Court **ORDERS** the MGA entities to file with the Court, and serve on all parties, no later than thirty days from the entry of this Order, a full accounting of all profits that have resulted from all sales, occurring after August 26, 2008, of all products that fall within any of the Court's December 3, 2008, Orders referenced above.

Within ten days of the filing of that accounting, the interested parties shall file a joint status report setting forth the position of all interested parties on how they wish to proceed on this issue.

## VI. ORDER RE RETRIEVAL OF JOINTLY LODGED LAPTOP COMPUTER

On September 11, 2008, for the Court's convenience and pursuant to its Order, Mattel and the MGA parties jointly lodged a laptop computer from which the Court could easily access the Phase 1A and 1B trial transcripts. Counsel are advised to contact the courtroom deputy clerk to arrange to retrieve the computer from the Court.

## VII. ORDER RE REVIEW OF UNDER SEAL FILINGS

On June 24, 2008, this Court ordered unsealed vast portions of the previously sealed record in these consolidated cases. That Order related only to documents filed on or before May 27, 2008. Certain specific documents, identified by the parties by docket number and found by the Court to have good cause to remain sealed, were not unsealed; similarly, certain Orders of this Court were not unsealed.

Counsel for all the parties are **ORDERED** to engage in a review and meet and confer process to significantly narrow, if not eliminate the under seal nature of the filings

EXHIBIT __2__ PAGE 23

Exhibit G - Page 496

dated May 28, 2008, through the date of the lifting of the stay on Phase 2 discovery, which occurred on February 11, 2009. The parties are **ORDERED** to file with the Court, no later than forty-five days from the entry of this Order, a joint report that identifies by docket number and pinpoint citation all materials the parties agree should remain under seal, as well as the materials any party contends should remain under seal. In all instances, all materials that are contemplated by any party to be maintained by the Court under seal shall specify the reasons therefor.

Counsel should anticipate the narrowest possible information to be maintained under seal. For example, if there is good cause for maintaining under seal only a small portion of an attachment, counsel should anticipate that they may be required to e-file a public redacted version of that document.

## VIII. ORDER RE PHASED, UNDER SEAL RELEASE OF FORENSIC AUDITOR'S REPORT TO COUNSEL AND PARTIES

The Court received *in camera* on April 23, 2009, and has since reviewed, the Forensic Auditor's Report. Concurrently served, under seal, on each parties' counsel of record, is a copy of the Forensic Auditor's preliminary report to the Court. The Court reserves at this time release of the supporting documentation that is attached to the report. This document is, until further Order of the Court, designated as a highly restricted attorney-eyes-only document. It may be reviewed, and its contents shared, only with *counsel of record* in this case and the Court-appointed Temporary Receiver appointed below; it may not be shared with either the parties or attorneys who are not counsel of record, including in-house counsel for the parties.

The parties are advised that they must file any objections on the basis of privilege within forty-eight hours of the entry of this Order. Failure to do may result in waiver of that privilege. After the expiration of this forty-eight hour period, the Court will make further Orders regarding the scope of the release of the report, including its attachments.

The Court understands that certain requested information has only recently been produced to the Forensic Auditor. For that reason, and because he has represented to the Court that certain analyses are ongoing, the Court continues the appointment of the Forensic Auditor until further Order of this Court.

## IX. ORDER GRANTING IN PART AND DENYING IN PART MOTION TO INTERVENE  (DOCKET #4761)

Non-party Omni 808 Investors, LCC ("Omni 808"), has filed an ex parte application to intervene for the limited purposes of responding to Mattel's ex parte application for a receiver for MGA and to address "all other issues related to Omni's

MINUTES FORM 90
CIVIL -- GEN                                    13                    Initials of Deputy Clerk __cls_____ .

EXHIBIT __2__ PAGE 2-4

Case 2:04-cv-09049-SGL-RNB   Document 5273   Filed 04/27/2009   Page 14 of 25

status as a secured creditor of MGA." See Ex Parte Application to Intervene (docket #4761) at 1. This motion was heard on February 11, 2009, at which time the Court expressly held the motion in abeyance, along with the Mattel's ex parte application for appointment of a receiver (docket #4540), which is addressed in the following section, to allow the preparation of an audit report by the Court-appointed Forensic Auditor.

For the reasons set forth below, the Court **GRANTS IN PART AND DENIES IN PART** the motion to intervene. The motion is granted to the extent it seeks intervention to address the potential receivership issues; the motion is **HELD IN ABEYANCE** as to the other, broader, but unspecified issues raised by Omni 808.

In the absence of a federal statute conferring a right to intervene, Rule 24(a)(2) provides as follows:

> (a) Intervention of Right. On timely motion, the court must permit anyone to intervene who: . . . (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Id. The Ninth Circuit has identified four separate elements that must be met in order to qualify for intervention under this rule; specifically, a would-be intervenor must show the following:

> (1) [I]t has a significant protectable interest relating to the property or transaction that is the subject of the action; (2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; (3) the application is timely; and (4) the existing parties may not adequately represent the applicant's interest.

United States Alisal Water Corp., 370 F.3d 915, 919 (9th Cir. 2004).

Omni 808 has met both the first and second elements. Where a party has a non-speculative economic interest that is both concrete and related to the underlying subject matter of the action, this element is met. Id. Mattel has correctly argued that, generally, the issues regarding the collectability of a party's debt does not confer an interest on the part of the creditor to justify intervention pursuant to Rule 24(a)(2). See id. (denying intervention where the interest of the would-be intervenor was "several degrees removed from the overriding public health and environmental policies that are the backbone of this litigation."). However, this particular request for intervention is not one that falls into this general category. Rather, it is an intervention for a very limited

MINUTES FORM 90
CIVIL -- GEN

14

Initials of Deputy Clerk __cls_____

EXHIBIT _2___ PAGE _25_

Exhibit G - Page 498

purpose – to address the issue of the appointment of a receiver – which is directly related to debt collectability.  By virtue of this case, Mattel claims a significant interest in the assets of the MGA parties, including both money damages and rights to intellectual property previously held by the MGA parties.  Omni 808 now claims a superior interest by virtue of a transaction that occurred after the jury returned its verdict as to ownership of certain Bratz property.  This interest is directly related to this litigation.

The second element is met because the relief sought by Mattel is to take control of the Bratz assets, as that term is at length defined by its proposed order submitted with its motion for appointment of a receiver.  According to the testimony the Court heard at trial, the Bratz assets are, at least historically, the most significant ones owned by the MGA parties.  Resolution of the disputes over the priority to these assets may have to take into account the claimed superiority of Omni 808's interest in MGAE.

The third element is met, at least as to the receivership issue, which is the only ground upon which the Court grants the motion to intervene at this time.

The fourth element has been described as presenting a "minimal burden." Trbovich v. United Mine Workers of America, 404 U.S. 528, 538 n.10 (1972).  It is sufficient that the would-be intervenor shows that the representation "may be inadequate."  Id.  Here, although both the MGA parties and Omni 808 may oppose in general the appointment of a receiver, their positions could differ significantly because MGAE is Omni 808's debtor.  Because all that is required is a minimal showing, and because Omni 808 has represented that it is an MGAE secured creditor, the Court finds that the fourth element is met because of the vastly different roles played by MGAE and Omni 808 vis-à-vis Mattel:  One is an anticipated judgment debtor and the other is a competing creditor.

Accordingly, the Court **GRANTS IN PART** the motion to intervene.  Omni 808 is a party to these consolidated cases for the limited purpose of addressing the receivership issues.  As such, it may file briefing in accordance with the schedule set forth below, and it may appear and argue at the hearing set as specified below.

For just cause and in order to preserve the status quo and address the allegations set forth in Mattel's application for the appointment of a receiver and in its opposition to the present motion to intervene, the Court **ORDERS** that Omni 808 and its counsel are restrained and enjoined, absent further order from this Court, from taking any action to assert or enforce any purported rights against the MGA parties, including but not limited to commencing an action against the MGA parties, taking any action to foreclose on any collateral of the MGA parties, committing any act that interferes with the Temporary Receiver's possession, control or use of the assets of the MGA entities, or commencing or participating in any involuntary bankruptcy proceedings against any MGA party pending further hearing on this matter on May 18, 2009, at 1:30 p.m.  At that hearing, the Court will consider whether, as counsel for Omni 808 represented to this

MINUTES FORM 90
CIVIL -- GEN                                15                    Initials of Deputy Clerk __cls_____

EXHIBIT __2___ PAGE 26

Exhibit G - Page 499

Court, "Omni's purchase of the Senior Bank Credit Facility from Wachovia was a straightforward, arms-length business deal between non-parties to this action," or whether, as counsel for Mattel contends, the purchase was by entities formed for "the improper purpose of attempting to leapfrog over Mattel's claims and shield their assets from creditors and other rights-holders such as Mattel." Counsel for all parties, including the intervenors, are afforded leave to file a final position on this issue no later than May 14, 2009.

## X. ORDER RE APPOINTMENT OF TEMPORARY RECEIVER PENDING HEARING ON APPOINTMENT OF PERMANENT RECEIVER

Mattel has filed an application for the appointment of a receiver or for alternative relief. The Court has considered all papers submitted in support of the application and all opposition and reply papers thereto, the arguments of counsel at the hearing on the application, and the entire record in this action, and finds that just cause exists for the appointment of a Temporary Receiver purusant to L.R. 66.[9] Specifically, the Court finds as follows:

1.  The MGA entities, MGAE and MGA HK, are domiciled in California, have their principal place of business in the Central District of California, and have the majority of their assets located within the Central District of California;

2.  As the Court has previously found, the Bratz Assets (as defined below and in that order) are and have been the property of Mattel and not any of the MGA parties;

3.  Good cause exists to believe that the MGA parties, defined as MGAE, MGA HK, and Isaac Larian, and each of them, have engaged in, are engaging in, or are about to engage in transactions, acts, practices and courses of business that constitute fraudulent transfers of assets and violations of Mattel's ownership and other rights in and to the Bratz Brand and Bratz Assets, as defined below;

4.  Mattel has demonstrated the possibility of dissipation of assets and, from the entire record herein, it appears likely that the MGA parties, agents,

---

[9] The interim report of the Court-appointed Forensic Auditor recommends, for the reasons stated in the report, the appointment of a Receiver. Although the report is fully consistent with the findings made herein, the Court is not relying upon this recommendation, or the information set forth in the Forensic Auditor's report, in making these findings because the parties have not yet had an opportunity to object or otherwise respond to the report. The Court will consider the Forensic Auditor's report, and any objections or responses thereto, in determining whether or not to extend the appointment of the Temporary Receiver after the OSC hearing scheduled for May 18, 2009.

EXHIBIT __2__ PAGE 2-7

Exhibit G - Page 500

and related entities (as defined below) are engaged in a course of conduct with related parties designed to frustrate the Court's Orders, Findings and Injunction herein;

5.   Good cause exists to believe that the MGA parties, agents, and related entities (as defined below) will continue to engage in such transactions, acts, practices, and courses of conduct and business to the immediate and irreparable loss and damage to Mattel, and contrary to the interests of justice, unless restrained and enjoined.

6.   It is appropriate and in the interests of justice that, pursuant to L.R. 66, that a Temporary Receiver be appointed and that an Order to Show Cause be issued why a permanent receiver should not be appointed.

Accordingly, the Court **ORDERS** as follows:

1.   Patrick A. Fraioli, Jr., is hereby appointed Temporary Receiver pursuant to L.R. 66 for the MGA entities to manage, supervise and oversee the assets of the MGA entities and the Bratz Brand and all Bratz Assets as these terms are defined herein (the "Temporary Receiver").

2.   The Temporary Receiver is appointed and is hereby directed and ordered to take full and exclusive control over, and to manage, preserve, and maximize the profits of, the MGA entities and the Bratz Brand and Bratz Assets as of the date hereof, including, without limitation, by locating, taking possession and ownership of, preserving, protecting, managing, supervising and overseeing the Bratz Assets.

3.   The Temporary Receiver is further directed to investigate the financial affairs of the MGA entities, and specifically investigate transfers and transactions made by the MGA entities from and after July 17, 2008.

4.   The Temporary Receiver shall have the power to take any and all action which may be necessary, appropriate or advisable to effectuate the purposes of the Temporary Receivership, including, but not limited to, the power to:

   a.   take custody, control and possession of the assets of the MGA entities and Bratz Assets in the possession, custody or control of the MGA entities, and/or any person or entity acting at their behest or direction or pursuant to their control, including, but not limited to, Isaac Larian and any successor-in-interest, subsidiary, corporate affiliate, agent, servant, attorney, accountant, officer, director, employee or other confederate (collectively, "the MGA parties,

MINUTES FORM 90
CIVIL -- GEN

17

Initials of Deputy Clerk __cls_____

**EXHIBIT** _2_ **PAGE** _28_

Exhibit G - Page 501

Case 2:04-cv-09049-SGL-RNB   Document 5273   Filed 04/27/2009   Page 18 of 25

agents, and related entities") whether or not claimed to be encumbered by any security interest;

b.  preserve, hold and manage the assets of the MGA entities and the Bratz Assets and perform all acts necessary or advisable to preserve and/or enhance the value of these assets;

c.  exploit, license, distribute and sell the assets of the MGA entities and the Bratz Assets and products for profit, including, without limitation, by selling Bratz-branded dolls and other goods through appropriate channels of trade and distribution;

d.  market, promote and/or advertise the assets of the MGA entities and the Bratz Assets and/or Bratz-branded products;

e.  hire and employ individuals and entities as necessary or advisable to carry out the Temporary Receiver's mandate under this order;

f.  disburse funds as needed to satisfy and pay the reasonable and ordinary expenses incurred by the receivership, provided, however, that the Temporary Receiver shall maintain and shall not distribute, disburse or pay to anyone any receivership funds except as needed to satisfy the reasonable and ordinary expenses incurred by the receivership;

g.  open bank accounts in the name of the Temporary Receiver and transfer funds to, from and/or between those accounts;

h.  collect and maintain, and take all necessary or advisable actions to collect and maintain, monies owed by virtue of the sale, licensing, or other exploitation of the Bratz Assets;

i.  sell, compromise or assign debts for purposes of collection upon such terms and conditions as the Temporary Receiver deems necessary or advisable to carry out the Temporary Receiver's mandate under this order;

j.  enter into such agreements or contracts, and seek and enter into modifications to or amendments of such agreements and contracts, as the Temporary Receiver deems necessary or advisable to carry out the Temporary Receiver's mandate under this order;

k.  prepare, execute, acknowledge and deliver any and all deeds, assignments or other instruments necessary or advisable to carry

MINUTES FORM 90
CIVIL -- GEN

18

Initials of Deputy Clerk __cls_____

EXHIBIT __2__ PAGE 29

Exhibit G - Page 502

Case 2:04-cv-09049-SGL-RNB    Document 5273    Filed 04/27/2009    Page 19 of 25

out the Temporary Receiver's mandate under this Order;

l.    protect and preserve all Bratz-related intellectual property, including, without limitation, by commencing, prosecuting, and/or renewing intellectual property registrations and/or filings of any type and in any jurisdiction or forum;

m.    retain and/or engage the services of advisors and/or professionals, including, without limitation, accountants, attorneys, consultants and experts to assist the Temporary Receiver in carrying out the Temporary Receiver's mandate under this Order. The Temporary Receiver, without further order of this Court, is authorized to employ Ervin, Cohen & Jessup LLP, Dr. Lynne Phillips and the firm of Reinventures, Inc., to assist the Temporary Receiver in carrying out the Temporary Receiver's mandate under this Order;

n.    retain and/or engage the services of vendors, suppliers, distributors and other persons and/or entities to assist the Temporary Receiver in carrying out the Temporary Receiver's mandate under this Order;

o.    record this Order in any jurisdiction;

p.    the Temporary Receiver may for any lawful purpose use any federal or state taxpayer identification number previously used by the MGA parties, agents, and related entities;

q.    take all actions the Temporary Receiver deems necessary or advisable to marshal, collect, preserve or protect the Bratz Assets, including, without limitation, the institution of inquiries and investigations into the conduct of any of the MGA parties, agents, and related entities to uncover concealed Bratz Assets and/or fraudulent conveyances and/or attempts to dispose of Bratz Assets;

r.    institute, defend, intervene in and/or substitute as, and/or otherwise become a party to any or all actions in local, state, federal or foreign courts, including, without limitation, bankruptcy court, and any other proceedings before any governmental tribunal or arbitration panels, and take any and all necessary or advisable steps and measures in such actions as necessary or advisable to carry out the Temporary Receiver's mandate under this Order; provided, however, notwithstanding the foregoing, the MGA parties have all the requisite authority to assert all rights in this ongoing litigation between Mattel and the MGA parties in this action and the Temporary Receiver shall not assert a position in such litigation,

EXHIBIT __2__ PAGE 30

Exhibit G - Page 503

except insofar as the Court orders or invites the Temporary Receiver to do so; and,

s.   perform such further and additional acts as the Temporary Receiver deems necessary or advisable to preserve the Bratz Assets, maximizing the profits derived therefrom, ensure the successful manufacture, delivery and marketing of Bratz-branded dolls and products for the spring and fall 2009 seasons and otherwise carry out the Temporary Receiver's mandate under this Order, including, without limitation, any acts which could be lawfully carried out by a corporation in the state of California.

5.   The Temporary Receiver, the Temporary Receiver's employees and agents as well as any and all of the professionals employed by the Temporary Receiver, are entitled to compensation for services rendered at their normal hourly rates and reimbursement for all expenses incurred by them on behalf of the receivership estate. The Temporary Receiver shall serve written notice upon counsel of record for the parties of the amount to be paid to each payee, with an itemization of the services rendered or expenses incurred. Upon service of said notice, the itemized fees and expenses may be paid by the Temporary Receiver on an interim basis. In the event that extraordinary services are performed by the Temporary Receiver, he shall be entitled to extraordinary compensation according to proof and approval of this Court. All interim fees paid shall be subject to final review and approval by this Court. This Court retains jurisdiction to award a greater or lesser amount as the full, fair and final value of such services. In the event there are insufficient funds in the receivership estate to fully compensate the Temporary Receiver and his professionals, the Court retains jurisdiction to allocate the costs and expenses of this receivership against Mattel, as the party who sought the appointment of the Temporary Receiver, and/or Isaac Larian, as the principal owner and beneficiary of the MGA entities.

6.   Upon service of a copy of this Order, all banks, broker-dealers, savings and loans, escrow agents, title companies, commodity trading companies, or other financial institutions shall cooperate with all reasonable requests of the Temporary Receiver regarding implementation of this Order, including transferring funds at his direction and producing records related to the assets of the MGA entities.

7.   The Bratz Assets include all tangible or intangible assets, including,

Initials of Deputy Clerk __cls_____

EXHIBIT __2__ PAGE __31__

Exhibit G - Page 504

Case 2:04-cv-09049-SGL-RNB   Document 5273   Filed 04/27/2009   Page 21 of 25

without limitation, all intellectual property necessary or materially useful for the design, manufacture, marketing, distribution and sale of any Bratz doll or other Bratz-branded product in the possession, custody or control (whether or not claimed to be encumbered by any security interest) of any of the MGA parties, agents, and related entities.  The Bratz Assets include, without limitation:

a.    All Bratz-related intellectual property rights, including, without limitation, copyrights (whether or not registered); copyright registrations; moral rights; design rights; patents (issued and pending); service marks; trademarks; trade dress; designs; slogans; characters; product packaging in any medium; product names; product illustrations; product designs; product concepts; conceptual drawings; engineering drawings; engineering specifications; processes; methods; trade secrets; know-how; product ideas; prototypes; line extensions; domain names; marketing and advertising materials; commercials; style guides; theme songs; soundtracks; scripts; screenplays; computer programming; digital and internet rights; video games; theatrical, television, video and DVD rights and masters; and rights in future technologies.

b.    All Bratz-related tooling for all past, current and future lines, including without limitation tools, tooling, in process tools, molds, sculptures, models, dies, and mock-ups, as well as other Bratz-related tangible items.

c.    All Bratz-related marketing and sales assets for all past, current and future lines, including, without limitation, consumer lists, marketing plans, account plans, focus group studies, marketing databases, and other consumer and marketing research.

d.    All Bratz-related records, including, without limitation, contracts, manufacturing records, inventory records and data, sales records and data, product testing data and records, vendor list and records, customer communications, and invoices and purchase orders.

e.    All Bratz-related contracts and agreements, including, without limitation, assignments, work-for-hire agreements and licensing agreements.

f.    All other Bratz-related rights, including, without limitation, distribution rights, licensing rights, exploitation rights, accounts receivable, and all choses in action relating to Bratz or the Bratz

MINUTES FORM 90
CIVIL -- GEN                                    21                    Initials of Deputy Clerk __cls_____

EXHIBIT _2___ PAGE 32_

Exhibit G - Page 505

Case 2:04-cv-09049-SGL-RNB   Document 5273   Filed 04/27/2009   Page 22 of 25

brand.

g.  All Bratz-related items referenced at Paragraph 3 and Paragraph 8 (at lines 15-19) of the Court's Order granting Mattel's Motion for Permanent Injunction (docket #4443).

8.  The Temporary Receiver shall hereby be vested with, and is authorized, directed and empowered to exercise, all of the rights, powers or authorizations of the MGA entities, their officers, directors, general partners or persons who exercise similar powers and perform similar duties, including without limitation the sole authority and power to file or cause to be filed any suit or action in any court or arbitration tribunal other than this court, and filing, or causing to be filed, a petition for relief under the United States Bankruptcy Code, 11 U.S.C. § 101 et seq. for the MGA entities, their officers, agents, employees, representatives, directors, successors-in-interest, attorneys in fact and all persons acting in concert or participating with them are hereby divested of, restrained, enjoined, and barred from exercising, any of the rights, powers or authorities vested herein in the Temporary Receiver, including but not limited to filing, or causing to be filed, any suit or action in any court or arbitration tribunal other than this court, and/or filing, or causing to be filed, a petition for relief under the United States Bankruptcy Code, 11 U.S.C. § 101 et seq. for the MGA entities, except as otherwise specified herein or by further order of this Court.

9.  As set forth above, the Court leaves undisturbed the stay set forth in the Court's January 7, 2009, Order.  Moreover, the stay is hereby supplemented (a) to enable the Temporary Receiver to take the actions specified herein, and (b) to permit retailers who receive Bratz products pursuant to the authority of the Temporary Receiver, and who pay the Temporary Receiver monies due and owing for such Bratz products, to not remove such products from the shelves until January 10, 2010, at which time the mandatory provisions of Paragraphs 4, 6 and 7 of the Court's December 3, 2008, Order granting Mattel's Motion for Permanent Injunction (docket #4443) shall become effective as to such retailers.  The supplemental stay provisions shall not eliminate, alter or amend the obligations of any retailer, distributor, seller or other person or entity, including, without limitation, the MGA parties, who do not meet the foregoing requirements, to earlier recall or earlier obtain the recall of Bratz products as required by the mandatory provisions of Paragraphs 4, 6 and 7 the Court's Order granting Mattel's Motion for Permanent Injunction (docket #4443)  The supplemental stay provisions shall not apply to permit, enable or authorize enjoined conduct by any enjoined party, except as to actions taken by the Temporary Receiver and/or any

EXHIBIT   2   PAGE 33

Exhibit G - Page 506

authorized agents working for and under the auspices of the Temporary Receiver pursuant to the terms of this Order.

10.   Additional Provisions.

   a.   In the event that any person or entity or fails to refuses to deliver or transfer any of the assets of the MGA entities or Bratz Assets or otherwise fails to comply with any provision of this Order, the Temporary Receiver is instructed to file ex parte an affidavit setting forth the failures.  Upon the filing of such affidavit, the Court may authorize repossession or sequestration or other equitable relief as requested by Temporary Receiver.

   b.   The Temporary Receiver shall maintain and shall not disburse, distribute or pay anyone any receivership funds or proceeds earned from exploitation of Bratz-branded dolls and products except as needed to satisfy the reasonable and ordinary cost and expenses incurred by the receivership.

   c.   The Temporary Receiver shall have the status of officers and agents of this Court, and as such shall be vested with the same immunities as vested with this Court.  Neither the Temporary Receiver nor any person or entity acting at the direction of the Court or pursuant to agreements with the Temporary Receiver (whether employees, vendors, contractors or otherwise) may be held liable to the MGA parties whether for claims of alleged copyright infringement, trademark infringement, or other alleged causes of action for any acts taken in good faith in compliance with this Order.

   d.   During the course of the receivership, and pending further order of the Court, the MGA parties shall not have any right, title, or interest and/or power as to the Bratz Assets or Bratz brand.  All ownership of all Bratz Assets, Bratz Brands and Bratz-related copyrights and other intellectual property are hereby vested in the Temporary Receiver and the MGA parties are divested of all such ownership. Nothing herein shall alter or affect the right of Mattel to take any and all actions relating to the Bratz Assets or the Bratz brand which it otherwise lawfully could take, including, without limitation, the institution, maintenance and prosecution of legal proceedings anywhere in the world or other proceedings before any governmental or tribunal or arbitration panel.

   e.   Effective as of the date of this Order, the MGA parties, agents, and

EXHIBIT __2__ PAGE 3 4

related entities shall turn over to the Temporary Receiver any and all revenues they receive or obtain relating to the MGA entities and Bratz in any manner and for any reason, including, without limitation, in connection with any sale, distribution and/or licensing thereof. These revenues shall not be released pending further order of the Court. The MGA entities shall account for all such revenues and interest paid thereon, and shall present to the Court, the Temporary Receiver and Mattel reports reflecting such accounting every ten days, commencing ten days from the date of this Order.

f.    To the extent that the proceeds are insufficient at any point to fund the cost of the receivership, the MGA entities are ordered to provide the Temporary Receiver with such additional funds as the Temporary Receiver requires to accomplish the purposes of the receivership.

g.    The Court shall retain jurisdiction over the receivership for the duration of its existence.

h.    No bond shall be required in connection with the appointment of the Temporary Receiver. Except for acts of gross negligence, the Temporary Receiver, and his agents and employees shall not be liable for loss or damage incurred by the MGA entities, its officers, agents, servants, employees, attorneys or others by virtue of any act performed or omitted to be performed by the Temporary Receiver in connection with the discharge of his duties and responsibilities.

i.    It is further ordered that no officer, director, agent, servant, employee or attorney of the MGA entities shall take any action in the name of or on behalf of the MGA entities before any court of any jurisdiction without the prior written consent of the Temporary Receiver or Order of the Court. However, notwithstanding the foregoing, nothing herein shall be deemed to deny the MGA parties the right to appeal from the Order Granting Preliminary Injunction or this Order. Moreover, this provision is subject to the right of the MGA parties with respect to the current litigation, as set forth in ¶ 4.r.

j.    In light of the appointment of a Temporary Receiver, the MGA entities, their officers, directors, agents, employees and attorneys are hereby prohibited from filing, or causing to be filed, a petition for relief under the United States Bankruptcy Code, 11 U.S.C. §§ 101

EXHIBIT __2__ PAGE _35_

Exhibit G - Page 508

Case 2:04-cv-09049-SGL-RNB    Document 5273    Filed 04/27/2009    Page 25 of 25

et seq. for the MGA entities without prior permission of this Court.

    k.    The MGA entities are ordered to cooperate fully with the Temporary Receiver, including without limitation providing all   financial and other documentation requested by the Temporary Receiver.

    l.    The Temporary Receiver is authorized to contact the Court-appointed Forensic Auditor, Ronald Durkin, and may utilize the findings and conclusions reached by Mr. Durkin as the Temporary Receiver deems appropriate.

    m.    The Temporary Receiver is hereby ordered and directed to prepare and provide to this court a report setting forth preliminary conclusions, findings and recommendations in accordance with the schedule set forth below.

11.    Order to Show Cause.  All interested parties, and any interested creditor, shall appear before this Court on Monday, May 18, 2009, at 2:00 p.m. to show cause, if there be any, why a permanent receiver should not be appointed in the same scope and manner as the Court's appointment of the Temporary Receiver.  Any declarations, affidavits, points and authorities or other submissions in support of, or in opposition to, the appointment of a Permanent Receiver shall be filed with the Court and served on all parties no later than May 14, 2009.

12.    Pursuant to L.R. 66-4, Mattel is **ORDERED** to cause this Order to be served on all known creditors of the MGA entities within three days of the date of this Order.

13.    The Temporary Receiver shall file a report and recommendation concerning all actions taken as well as recommendations for further action no later than Monday, May 11, 2009.  This report shall be filed with the Court and served on all parties.

IT IS SO ORDERED THIS 27th DAY OF APRIL, 2009

*[signature]*

STEPHEN G. LARSON
UNITED STATES DISTRICT JUDGE

MINUTES FORM 90
CIVIL -- GEN                  25              Initials of Deputy Clerk __cls_____

EXHIBIT __2__ PAGE 36

Exhibit G - Page 509

From: cacd_ecfmail@cacd.uscourts.gov [cacd_ecfmail@cacd.uscourts.gov]
Sent: Monday, April 27, 2009 4:12 PM
To: ecfnef@cacd.uscourts.gov
Subject: Activity in Case 2:04-cv-09049-SGL-RNB Carter Bryant v. Mattel Inc Order on Motion for Judgment as Matter of Law

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.
***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

Notice of Electronic Filing

The following transaction was entered on 4/27/2009 at 4:12 PM PDT and filed on 4/27/2009
Case Name:      Carter Bryant v. Mattel Inc
Case Number:    2:04-cv-9049
Filer:
Document Number: 5273

Docket Text:
MINUTES (IN CHAMBERS): ORDER DENYING MATTELS MOTION FOR JUDGMENT AS A MATTER OF LAW (DOCKET #4498); ORDER GRANTING IN PART AND DENYING IN PART MGASMOTION FOR JUDGMENT AS A MATTER OF LAW (DOCKET #4496); ORDER AMENDING IN PART ORDER RE FINDING OF LIABILITY PURSUANT TO CAL. BUS. & PROFS. CODE § 17200(DOCKET #4441); ORDER GRANTING IN PART AND DENYING IN PART MGAS MOTION FOR REMITTITUR (DOCKET #4495, #4523); ORDER LIFTING STAY ON PERMANENT INJUNCTION (#4443); ORDER FOR ACCOUNTING OF PROFITS OF BRATZ PRODUCTS ORDER REGARDING RETRIEVAL OF PREVIOUSLY LODGED by Judge Stephen G. Larson: [4496][4498][4523[. Patrick A. Fraioli, Jr., is hereby appointed Temporary Receiver pursuant toL.R. 66 for the MGA entities to manage, supervise and oversee the assetsof the MGA entities and the Bratz Brand and all Bratz Assets as theseterms are defined herein (the "Temporary Receiver"). All interested parties, and any interested creditor, shall appear before this Court on Monday, May 18, 2009, at 2:00 p.m. to show cause, if there be any, why a permanent receiver should not be appointed in the same scope and manner as the Courts appointment of the Temporary Receiver. The Temporary Receiver shall file a report and recommendation concerning all actions taken as well as recommendations for further action no later than Monday, May 11, 2009. This report shall be filed with the Court and served on all parties. (am)

2:04-cv-9049 Notice has been electronically mailed to:

Joel N Klevens      jklevens@glaserweil.com

Patricia L Glaser   pglaser@glaserweil.com

John B Quinn        johnquinn@quinnemanuel.com

Russell J Frackman  rjf@msk.com,krs@msk.com,rbs@msk.com,mcm@msk.com,phh@msk.com,jpn@msk.com

Jeffrey B Valle     jvalle@valleassociates.com

Jerome B Falk       jfalk@howardrice.com

Todd E Gordinier
todd.gordinier@bingham.com,julie.valenzuela@bingham.com,craig.taggart@bingham.com,michael.mortenson@bingham.com,ian ly@bingham.com,karina ward@bingham.c

Randa A F Osman     randaosman@quinnemanuel.com

Patricia H Benson   phb@msk.com,mxb@msk.com

David C Scheper     dscheper@obsklaw.com,feseroma@obsklaw.com_sumry

Alisa Morgenthaler Lever  amorgenthaler@chrisglase.com

Larry W McFarland   lmcfarland@kmwlaw.com

Robert C O'Brien    obrien.robert@arentfox.com

Raoul D Kennedy     rkennedy@skadden.com

Mark E Overland     moverland@obsklaw.com

Thomas J Nolan      tnolan@skadden.com,carl.roth@skadden.com,marcus.mumford@skadden.com

Emil W Herich       eherich@kmwlaw.com

Jason D Russell     jrussell@skadden.com,allison.velkes@skadden.com_sumry

Jean P Nogues       jpn@msk.com

4/27/2009

EXHIBIT ___2___ PAGE 37

Sandra L Tholen    tholen@caldwell-leslie.com,mejia@caldwell-leslie.com,wilson@caldwell-leslie.com

Nicole S Pelletier    npelletier@glaserweil.com

Jon D Corey    joncorey@quinnemanuel.com

Caroline H Mankey    cmankey@glaserweil.com

Douglas Andrew Winthrop    dwinthrop@howardrice.com

Michael T Zeller    michaelzeller@quinnemanuel.com

Linda M Burrow    burrow@caldwell-leslie.com,wilson@caldwell-leslie.com,popescu@caldwell-leslie.com_sumry

Amman A Khan    akhan@glaserweil.com

Peter N Villar    peter.villar@bingham.com,paul.mcconnell@bingham.com

Diane C Hutnyan    dianehutnyan@quinnemanuel.com,andreahoeven@quinnemanuel.com

Kenneth A Plevan    kenneth.plevan@skadden.com,drogosa@skadden.com,sumelaug@skadden.com

Alexander H Cote    acote@obsklaw.com,feseroma@obsklaw.com

Marina Vladimir Bogorad    marina.bogorad@skadden.com

Brett Dylan Proctor    dylanproctor@quinnemanuel.com,westonreid@quinnemanuel.com

Sophia S Lau    slau@glaserweil.com

Stan Karas    stankaras@quinnemanuel.com,gayleduran@quinnemanuel.com,westonreid@quinnemanuel.com

Richard Giles Stoll    rstoll@glaserweil.com

Scott E Gizer    sgizer@glaserweil.com

David W Hansen    dhansen@skadden.com

Robyn Aronson    robynaronson@dwt.com,frankromero@dwt.com

Oleg Stolyar    alexstolyar@quinnemanuel.com,rlorch@bwgfirm.com

Jennifer A Lopez    jennifer.lopez@bingham.com

Christian C Dowell    cdowell@kmwlaw.com

Cyrus S Naim    cyrusnaim@quinnemanuel.com

Leah Chava Gershon    leah@spertuslaw.com

Adil M Khan    amkhan@glaserweil.com

Michael P Kelly    mikelly@skadden.com

David W Foster    david.foster@skadden.com

Sanford I Weisburst    sandyweisburst@quinnemanuel.com

Ilan Wisnia    iwisnia@vallecassociates.com

2:04-cv-9049 Notice has been delivered by First Class U. S. Mail or by fax to: :
Kien C Tiet
Stern and Goldberg
6345 Balboa Boulevard, Suite 200
Encino CA 91316

Cheryl Plambeck
Davis & Gilbert LLP
1740 Broadway
New York NY 10019
US

Amy R Sabrin
Skadden Arps Slate Meagher & Flom LLP
1440 New York Avenue NW
Washington DC 20005-2111
US

Peter H Bonis
Peter H. Bonis Law Offices
1990 N. California Blvd, 8th Floor
Walnut Creek CA 94596
US

4/27/2009

EXHIBIT ___2___ PAGE 38

# Exhibit 3

CALENDARED

APR 1 5 2009

1   PATRICIA L. GLASER (Bar No. 055668)
    pglaser@glaserweil.com
2   GLASER WEIL FINK JACOBS & SHAPIRO
    10250 Constellation Blvd., 19th Floor
3   Los Angeles, California  90067
    Telephone:  (310) 553-3000
4   Facsimile:  (310) 557-9815

5   RUSSELL J. FRACKMAN (Bar No. 49087)
    rjf@msk.com
6   PATRICIA H. BENSON (Bar No. 60565)
    phb@msk.com
7   JEAN P. NOGUES (Bar No. 84445)
    jpn@msk.com
8   MITCHELL SILBERBERG & KNUPP LLP
    11377 West Olympic Boulevard
9   Los Angeles, California 90064-1683
    Telephone: (310) 312-2000
10  Facsimile: (310) 312-3100

11  Attorneys for Plaintiffs
    MGA Entertainment, Inc., MGA Entertainment HK,
12  Ltd., MGAE De Mexico S.R.L. De C.V and Isaac
    Larian

13

14              UNITED STATES DISTRICT COURT

15             CENTRAL DISTRICT OF CALIFORNIA

16                    EASTERN DIVISION

17  CARTER BRYANT, an individual,,      CASE NO.   CV 04-9049 SGL (RNBx)

18           Plaintiff,                 Consolidated with
                                        Case No.  CV 04-09059
19       v.                             Case No.  CV 05-02727

20  MATTEL, INC., a Delaware corporation,,   MGA ENTERTAINMENT, INC.'S
                                        FIRST SET OF PHASE 2
21           Defendant.                 INTERROGATORIES TO MATTEL,
                                        INC.
22
    ─────────────────────────────
23  AND CONSOLIDATED CASES

24

25  PROPOUNDING PARTY:  MGA Entertainment, Inc.

26  RESPONDING PARTY:    Mattel, Inc.

27  SET NO.              One (Phase Two) [Nos. 1-14]

28
                              4-14
    Mitchell
    Silberberg &
    Knupp LLP
    2189397.1       MGA'S FIRST SET OF INTERROGATORIES (PHASE 2)

EXHIBIT __3__ PAGE __39__

Exhibit G - Page 513

1    Pursuant to Federal Rule of Civil Procedure 33 and Local Rule 33-1, *et seq.*,

2   plaintiff MGA Entertainment, Inc. hereby requests that defendant Mattel, Inc.

3   individually answer the following Interrogatories separately and fully, in writing and under

4   oath, within 30 days after service hereof. Mattel, Inc. shall be obligated to supplement its

5   responses to the Interrogatories at such times and to the extent required by the Federal

6   Rules of Civil Procedure.

7

8                              **DEFINITIONS**

9

10        1.    "AFFILIATES" means any and all corporations, proprietorships,

11   d/b/a's, partnerships, joint ventures and business entities of any kind that, directly or

12   indirectly, in whole or in part, own or control, are under common ownership or control with,

13   or are owned or controlled by a PERSON, party or entity, including without limitation

14   each parent, subsidiary and joint venture of such PERSON, party or entity.

15        2.    "ANY" as used in these interrogatories includes the word "all," and

16   the word "all" as used in these interrogatories includes the word "any."

17        3.    "DOCUMENT" or "DOCUMENTS" means all "writings" and

18   "recordings" as those terms are defined in Rule 34 of the Federal Rules of Civil

19   Procedure and Rule 1001 of the Federal Rules of Evidence, including, but not limited to,

20   all writings and records of every type and description including, but not limited to,

21   contracts, agreements, correspondence, memoranda, letters, facsimiles, electronic mail

22   ("e-mail"), records of telephone conversations, handwritten and typewritten notes of any

23   kind, statements, reports, minutes, recordings, transcripts and summaries of meetings,

24   voice recordings, pictures, photographs, drawings, electronically stored information,

25   computer cards, tapes, discs, printouts and records of all types, studies, instruction

26   manuals, policy manuals and statements, books, pamphlets, invoices, canceled checks

27   and every other device or medium by which or through which information of any type is

28   transmitted, recorded or preserved. Without any limitation on the foregoing, the term

Mitchell
Silberberg &
Knupp LLP

2189397.1

2

MGA'S FIRST SET OF INTERROGATORIES (PHASE 2)

EXHIBIT ___3___ PAGE _40_

Exhibit G - Page 514

1  "DOCUMENT" shall include all copies that differ in any respect from the original or

2  other versions of the DOCUMENT, including, but not limited to, all drafts and all copies

3  of such drafts or originals containing initials, comments, notations, insertions,

4  corrections, marginal notes, amendments or any other variation of any kind.

5      4.     "MATTEL DOCUMENTS" means the DOCUMENTS identified by

6  Bates Number in Definition No. 25, at 7:3-9:9, of Mattel, Inc.'s Supplemental

7  Interrogatories served on MGA on or about January 9, 2008, a copy of which is attached

8  hereto as Exhibit 1, and ANY other DOCUMENT MATTEL alleges that MGA stole,

9  wrongfully obtained or took, or otherwise obtained by IMPROPER MEANS from

10  MATTEL, regardless of whether MATTEL contends ANY such DOCUMENT

11  constitutes or contains a TRADE SECRET.

12      5.     "IDENTIFY" means the following:

13          (a)     with reference to an individual or individuals, means to state,

14  fully and separately as to each, such individual's full name, any known business title,

15  current or last known business affiliation, current or last known residential address,

16  current or last known business address, current or last known relationship to MATTEL,

17  and current or last known telephone number.

18          (b)     with reference to an entity or entities, means to state, fully

19  and separately as to each, such entity's full name, state (or country) of incorporation or

20  organization, present or last known address, and present or last known telephone number.

21          (c)     with reference to any alleged TRADE SECRET, means to

22  describe and state, in detail and fully and separately as to each, the information, formula,

23  pattern, compilation, program, device, method, technique, or process claimed by

24  MATTEL to be a TRADE SECRET, and with sufficient specificity to differentiate each

25  such TRADE SECRET from public and/or non-proprietary information.

26          (d)     with reference to any other DOCUMENT or DOCUMENTS,

27  means to describe each DOCUMENT by Bates number.  In the event that a

28  DOCUMENT does not have a Bates number, IDENTIFY means, with respect to each

Mitchell
Silberberg &
Knupp LLP

2189397 1

3

MGA'S FIRST SET OF INTERROGATORIES (PHASE 2)

EXHIBIT __3__ PAGE 41

Exhibit G - Page 515

1    such DOCUMENT, to provide a complete description of it such that it may be the subject

2    of a request for the production of documents, including by stating the date, identity of the

3    author, addressee(s), signatories, parties, or other PERSONS identified therein, its present

4    location or custodian and a description of its contents.

5              (e)    with reference to any MATTEL PRODUCT, means to

6    IDENTIFY the specific MATTEL PRODUCT by name, model or product number, and

7    SKU number if different from the model or product number, and

8              (f)    with reference to any alleged damage, state the amount of

9    such damage and describe completely and in detail how YOU calculate the amount of

10   damage YOU contend YOU have suffered; and

11             (g)    with reference to any alleged act or omission, state: (a) the act

12   or omission; (b) the PERSONS who committed or were involved with the act or omission

13   as a principal; (c) the PERSONS who committed or were involved with the act or

14   omission as an aider or abettor; (d) the date of the act or omission; (e) the place of the act

15   or omission; (f) the PERSONS harmed by the act or omission; (g) PERSONS who have

16   knowledge of the act or omission; (h) the federal statute listed in 18 U.S.C. § 1961(1)

17   which YOU allege was violated by the act or omission; and (i) the nature of the harm that

18   resulted from the act or omission..

19        6.    "IMPROPER MEANS" shall have the definition given such term in

20   California Civil Code §3426.1(a), as follows: "'Improper means' includes theft, bribery,

21   misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or

22   espionage through electronic or other means. Reverse engineering or independent

23   derivation alone shall not be considered improper means."

24        7.    "MATTEL," "YOU," or "YOUR" means defendant Mattel, Inc. and

25   ANY of its past or present officers, directors, employees, parents, subsidiaries, divisions,

26   AFFILIATES, predecessors-in-interest, successors-in-interest, and joint venture partners.

27        8.    "MATTEL PRODUCTS" means any toys, dolls, games, or other

28   products sold, marketed, or distributed by MATTEL from January 1; to the present.

Mitchell
Silberberg &
Knupp LLP
2189397.1

4

MGA'S FIRST SET OF INTERROGATORIES (PHASE 2)

EXHIBIT __3__ PAGE 42

Exhibit G - Page 516

1    9.    "MGA" means plaintiff MGA Entertainment, Inc. and ANY of its

2  past or present officers, directors, employees, parents, subsidiaries, divisions,

3  AFFILIATES, predecessors-in-interest, successors-in-interest, and joint venture partners.

4  Without limiting the foregoing, "MGA" includes MGA Entertainment (HK) Limited,

5  MGAE de Mexico, S.R.L. de C.V., and Isaac Larian.

6    10.    "MISAPPROPRIATION" or "MISAPPROPRIATED" shall have

7  the definition given the term "Misappropriation" in California Civil Code §3426.1(b), as

8  follows: "'Misappropriation' means:

9    (1)    Acquisition of a TRADE SECRET of another by a person who

10  knows or has reason to know that the TRADE SECRET was acquired by IMPROPER

11  MEANS; or

12    (2)    Disclosure or use of a TRADE SECRET of another without express

13  or implied consent by a person who:

14    (A)    Used IMPROPER MEANS to acquire knowledge of the

15  TRADE SECRET; or

16    (B)    At the time of disclosure or use, knew or had reason to know

17  that his or her knowledge of the TRADE SECRET was:

18    (i)    Derived from or through a person who had utilized

19  IMPROPER MEANS to acquire it;

20    (ii)    Acquired under circumstances giving rise to a duty to

21  maintain its secrecy or limit its use; or

22    (iii)    Derived from or through a person who owed a duty to

23  the person seeking relief to maintain its secrecy or limit its use; or

24    (C)    Before a material change of his or her position, knew or had

25  reason to know that it was a TRADE SECRET and that knowledge of it had been

26  acquired by accident or mistake."

27    11.    "PERSON" or "PERSONS" means all natural persons, partnerships,

28  corporations, joint ventures and any kind of business, legal or public entity or

Mitchell
Silberberg &
Knupp LLP
2189397.1

5

MGA'S FIRST SET OF INTERROGATORIES (PHASE 2)

EXHIBIT __3__ PAGE _44_

Exhibit G - Page 517

1   organization, as well as its, his or her agents, representatives, employees, officers and

2   directors and any one else acting on its, his or her behalf, pursuant to its, his or her

3   authority or subject to its, his or her control.

4          12.    "REFER OR RELATE TO" a given subject matter means relate to,

5   refer to, constitute, contain, embody, depict, incorporate, reflect, evidence, identify, state,

6   deal with, comment on, respond to, describe, analyze, support, refute, contradict, or in

7   any way pertain to that subject matter, either directly or indirectly.

8          13.    "THIS ACTION" refers to *Mattel, Inc. v. Bryant*, Case No. CV 04-

9   9059 SGL (RNBx), filed by MATTEL on April 27, 2004, and the cases consolidated

10  therewith.

11         14.    "TRADE SECRET" or "TRADE SECRETS" shall have the

12  definition given such term in California Civil Code Section 3426.1(d), as follows:

13  "'Trade Secret' means information, including a formula, pattern, compilation, program,

14  device, method, technique, or process, that:

15         (1)    Derives independent economic value, actual or potential, from not

16  being generally known to the public or to other persons who can obtain economic value

17  from its disclosure or use; and

18         (2)    Is the subject of efforts that are reasonable under the circumstances

19  to maintain its secrecy."

20         15.    "RFA" means the specific request for admission identified from

21  among those requests being served concurrently with these Interrogatories, and entitled

22  *MGA's First Set of Phase 2 Requests for Admission to Mattel.*

23         16.    "OPERATIVE COUNTERCLAIMS" means the pleading entitled

24  *Mattel's Second Amended Answer in Case No. 05-2727 and Counterclaims For (1)*

25  *Copyright Infringement; (2) Violation of The Racketeer Influenced and Corrupt*

26  *Organizations Act; (3) Conspiracy to Violate The Racketeer Influenced and Corrupt*

27  *Organizations Act; (4) Misappropriation of Trade Secrets; (5) Breach of Contract; (6)*

28  *Intentional Interference With Contract; (7) Breach of Fiduciary Duty; (8) Aiding and*

Mitchell
Silberberg &
Knupp LLP

2189397.1

6

MGA'S FIRST SET OF INTERROGATORIES (PHASE 2)

EXHIBIT ___3___ PAGE _45_

Exhibit G - Page 518

1   *Abetting Breach of Fiduciary Duty; (9) Breach of Duty of Loyalty; (10) Aiding and*

2   *Abetting Breach of Duty of Loyalty; (11) Conversion; (12) Unfair Competition; and (13)*

3   *Declaratory Relief*, unless that pleading has been superseded as of the time YOU respond

4   to these Interrogatories, in which event OPERATIVE COUNTERCLAIMS shall mean

5   the pleading that has superseded the Second Amended Answer and Counterclaims.

6         17.     The singular form of a noun or pronoun includes within its meaning

7   the plural form of the noun or pronoun so used, and vice versa; the use of the masculine form

8   of a pronoun also includes within its meaning the feminine form of the pronoun so used,

9   and vice versa; the use of any tense of any verb includes also within its meaning all other

10  tenses of the verb so used, whenever such construction results in a broader request for

11  information; and "and" includes "or" and vice versa, whenever such construction results

12  in a broader disclosure of documents or information.

13

14                               **INSTRUCTIONS**

15

16        A.      When an interrogatory requests disclosure of a COMMUNICATION or

17  other information as to which YOU claim any privilege or protection as a ground for

18  nondisclosure, identify each PERSON who participated in or had knowledge of the

19  COMMUNICATION or other information and provide the following:

20             (i)      the privilege or protection that YOU claim precludes disclosure;

21             (ii)     the subject matter of the COMMUNICATION or information

22  (without revealing the content as to which the privilege is claimed); and

23             (iii)    any additional facts or grounds on which YOU base YOUR claim of

24  privilege or protection.

25        B.      When an interrogatory requests that YOU provide information, YOU are

26  required to supply all information known by or available to YOU or YOUR employees,

27  officers, directors, agents, representatives, attorneys and experts. If YOU cannot

28  completely answer the interrogatory after making diligent efforts to do so, please so state.

Mitchell
Silberberg &
Knupp LLP

2189397.1

7

MGA'S FIRST SET OF INTERROGATORIES (PHASE 2)

EXHIBIT __3__ PAGE _46_

Exhibit G - Page 519

1    Then describe in detail all efforts made to answer the interrogatory; identify every

2    PERSON involved in such efforts; and state the additional information YOU need, if any,

3    to respond completely to the interrogatory.

4

5                              **INTERROGATORIES**

6

7    **INTERROGATORY NO. 1**

8        If your response to RFA No. 1 is anything other than an unqualified admission,

9    state for each MATTEL DOCUMENT that is a basis for such response ANY facts that

10   SUPPORT your response to RFA No. 1, IDENTIFY ANY PERSONS with knowledge of

11   such facts, and ANY DOCUMENTS that REFER OR RELATE to such facts.

12

13   **INTERROGATORY NO. 2**

14       If YOUR answer to RFA No. 2 is anything other than an unqualified admission,

15   state for each MATTEL DOCUMENT that is a basis for such response ANY facts that

16   SUPPORT your response to RFA No. 2, IDENTIFY ANY PERSONS with knowledge of

17   such facts, and IDENTIFY ANY DOCUMENTS that REFER OR RELATE to such facts.

18

19   **INTERROGATORY NO. 3**

20       If your answer to RFA No. 3 is anything other than an unqualified admission, state

21   for each MATTEL DOCUMENT that is a basis for such response ANY facts that

22   SUPPORT your response to RFA No. 3, IDENTIFY ANY PERSONS with knowledge of

23   such facts, and ANY DOCUMENTS that REFER OR RELATE to such facts.

24

25   **INTERROGATORY NO. 4**

26       If your answer to RFA No. 4 is anything other than an unqualified admission, state

27   all facts that SUPPORT your response to RFA No. 4 and IDENTIFY all PERSONS with

28   knowledge of such facts and all DOCUMENTS that REFER OR RELATE to such facts.

Mitchell
Silberberg &
Knupp LLP
2189397.1

8

MGA'S FIRST SET OF INTERROGATORIES (PHASE 2)

EXHIBIT __3__ PAGE 47

Exhibit G - Page 520

1  **INTERROGATORY NO. 5**

2      IDENTIFY ANY damages YOU contend YOU have suffered as a result of the

3  violation of the Racketeer Influenced and Corrupt Organization Act alleged by YOU in

4  the Second Counterclaim of YOUR OPERATIVE COUNTERCLAIMS in THIS

5  ACTION.

6

7  **INTERROGATORY NO. 6**

8      IDENTIFY ANY damages YOU contend YOU have suffered as a result of the

9  alleged MISAPPROPRIATION of trade secrets alleged by YOU in the Fourth

10  Counterclaim of YOUR OPERATIVE COUNTERCLAIMS in THIS ACTION.

11

12  **INTERROGATORY NO. 7**

13      IDENTIFY every MATTEL PRODUCT whose sales YOU contend were harmed

14  by MGA's sale of the Bratz line of dolls and products.

15

16  **INTERROGATORY NO. 8**

17      IDENTIFY every MATTEL PRODUCT whose sales YOU contend were harmed

18  by ANY act or omission of MGA alleged in YOU OPERATIVE COUNTERCLAIMS.

19

20  **INTERROGATORY NO. 9**

21      IDENTIFY ANY evidence that YOU contend was destroyed or otherwise

22  spoiliated by or on behalf of MGA.

23

24  **INTERROGATORY NO. 10**

25      For each specific piece of evidence that YOU INDENTIFIED in response to

26  Interrogatory No. 9, IDENTIFY the PERSON(S) that YOU contend destroyed or spoiled

27  such specific piece of evidence.

28

Mitchell
Silberberg &
Knupp LLP
2189397.1

9
MGA'S FIRST SET OF INTERROGATORIES (PHASE 2)

EXHIBIT __3__ PAGE 48

Exhibit G - Page 521

**INTERROGATORY NO. 11**

For each piece of evidence YOU IDENTIFIED in response to Interrogatory No. 9, state ANY facts that support YOUR contention and IDENTIFY ANY PERSONS with knowledge of such facts and ANY DOCUMENTS that REFER OR RELATE to such facts.

**INTERROGATORY NO. 12**

IDENTIFY each act or omission by Isaac Larian that YOU contend constitutes "racketeering activity" as defined by 18 U.S.C. § 1961(1), IDENTIFY ANY PERSONS with knowledge of each alleged act or omission, and IDENTIFY ANY DOCUMENTS that REFER OR RELATE to each alleged act or omission.

**INTERROGATORY NO. 13**

IDENTIFY each act or omission by MGA that YOU contend constitutes "racketeering activity" as defined by 18 U.S.C. § 1961 (1) state ANY facts that support YOUR contention and IDENTIFY ANY PERSONS with knowledge of each alleged act or omission and ANY DOCUMENTS that REFER OR RELATE to each alleged act or omission.

**INTERROGATORY NO. 14**

For each act or omission by MGA that YOU contend constitutes "racketeering activity" as defined by 18 U.S.C. § 1961(1), state ANY facts which support YOUR contention, if YOU so contend, that Isaac Larian participated in or directed ANY such acts.

Mitchell
Silberberg &
Knupp LLP
2189397.1

10

MGA'S FIRST SET OF INTERROGATORIES (PHASE 2)

EXHIBIT __3__ PAGE _49_

Exhibit G - Page 522

1   DATED: April 14, 2009

RUSSELL J. FRACKMAN
PATRICIA H. BENSON
JEAN PIERRE NOGUES
RICHARD B. SHELDON
MITCHELL SILBERBERG & KNUPP LLP

By: _____
Richard B. Sheldon

Attorneys for Defendants
MGA Entertainment, Inc., MGA
Entertainment HK, Ltd., MGAE De Mexico
S.R.L. De C.V, and Isaac Larian

Mitchell
Silberberg &
Knupp LLP

2189397.1

11

MGA'S FIRST SET OF INTERROGATORIES (PHASE 2)

EXHIBIT ___3___ PAGE 50

Exhibit G - Page 523

**EXHIBIT 1**

EXHIBIT __3__ PAGE __51__

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
    John B. Quinn (Bar No. 090378)
2    johnquinn@quinnemanuel.com
    Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
    Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
    Timothy L. Alger (Bar No. 160303)
5    (timalger@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
6  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
7  Facsimile: (213) 443-3100

8  Attorneys for Mattel, Inc.

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11                  EASTERN DIVISION

12  CARTER BRYANT, an individual,      CASE NO. CV 04-09049 SGL (RNBx)

13       Plaintiff,                     Consolidated with Case Nos. CV 04-
                                        9059 and CV 05-2727
14       vs.
                                        MATTEL, INC.'S SUPPLEMENTAL
15  MATTEL, INC., a Delaware           INTERROGATORIES
    corporation,
16
         Defendant.
17

18  AND CONSOLIDATED ACTIONS

19

20

21
    PROPOUNDING PARTY:     Mattel, Inc.
22
    RESPONDING PARTIES:    MGA Entertainment, Inc., Isaac Larian, Carter
23
                           Bryant, MGA Entertainment (HK) Limited, MGAE
24
                           de Mexico S.R.L. de C.V., and Carlos Gustavo
25
                           Machado Gomez
26
    SET NO.:               SUPPLEMENTAL
27

28

07209/2239571.2

                          MATTEL'S SUPPLEMENTAL INTERROGATORIES

EXHIBIT __3__ PAGE 52

Exhibit G - Page 525

1         Pursuant to Federal Rule of Civil Procedure 33, plaintiff Mattel, Inc.

2 ("Mattel") hereby requests that MGA Entertainment, Inc., Isaac Larian, Carter

3 Bryant, MGA Entertainment (HK) Limited, MGAE de Mexico S.R.L. de C.V., and

4 Carlos Gustavo Machado Gomez (collectively, "the Responding Parties")

5 individually answer the following Interrogatories separately and fully, in writing and

6 under oath, within 30 days after service hereof. The Responding Parties shall be

7 obligated to supplement their responses to the Interrogatories at such times and to

8 the extent required by the Federal Rules of Civil Procedure.

9

10                     **Definitions**

11     1.     "YOU" and "YOUR" mean each of the Responding Parties.

12     2.     "MGA" means MGA Entertainment, Inc., any of its current or

13 former employees, officers, directors, agents, representatives, attorneys, experts,

14 divisions, AFFILIATES, predecessors-in-interest and successors-in-interest, and any

15 other PERSON acting on its behalf, pursuant to its authority or subject to its control.

16 Without limiting the foregoing, "MGA" includes the entities known as ABC

17 International Traders or ABC International Traders, Inc. For purposes of the these

18 Interrogatories, "MGA" does not include BRYANT.

19     3.     "MATTEL" means Mattel, Inc., its current employees, officers,

20 directors, agents, representatives, attorneys, parents, subsidiaries, divisions,

21 AFFILIATES, predecessors-in-interest and successors-in-interest, and any other

22 PERSON acting on its behalf, pursuant to its authority or subject to its control.

23     4.     "AFFILIATES" means any and all corporations, proprietorships,

24 d/b/a's, partnerships, joint ventures and business entities of any kind that, directly or

25 indirectly, in whole or in part, own or control, are under common ownership or control

26 with, or are owned or controlled by a PERSON, party or entity, including without

27 limitation each parent, subsidiary and joint venture of such PERSON, party or entity.

28

-2-

MATTEL'S SUPPLEMENTAL INTERROGATORIES

**EXHIBIT _3_ PAGE 53**

Exhibit G - Page 526

1        5.    "PERSON" or "PERSONS" means all natural persons, partnerships,

2    corporations, joint ventures and any kind of business, legal or public entity or

3    organization, as well as its, his or her agents, representatives, employees, officers and

4    directors and any one else acting on its, his or her behalf, pursuant to its, his or her

5    authority or subject to its, his or her control.

6        6.    "DESIGN" or "DESIGNS" means any and all representations,

7    whether two-dimensional or three-dimensional, and whether in tangible, digital,

8    electronic or other form, including but not limited to all works, designs, artwork,

9    sketches, drawings, illustrations, representations, depictions, blueprints, schematics,

10    diagrams, images, sculptures, prototypes, models, samples, rotocasts, reductions to

11    practice, developments, inventions and/or improvements, as well as all other items,

12    things and DOCUMENTS in which any of the foregoing are or have been expressed,

13    embodied, contained, fixed or reflected in any manner, whether in whole or in part.

14        7.    "BRATZ" means any project, product, doll or DESIGN ever known

15    by that name (whether in whole or in part and regardless of what such project, product

16    or doll is or has been also, previously or subsequently called) and any product, doll or

17    DESIGN or any portion thereof that is now or has ever been known as, or sold or

18    marketed under, the name or term "Bratz" (whether in whole or in part and regardless

19    of what such product, doll or DESIGN or portion thereof is or has been also, previously

20    or subsequently called) or that is now or has ever been sold or marketed as part of the

21    "Bratz" line, and each version or iteration of such product, doll or DESIGN or any

22    portion thereof. As used herein, "product, doll or DESIGN or any portion thereof" also

23    includes without limitation any names, fashions, accessories, artwork, packaging or any

24    other works, materials, matters or items included or associated therewith.  Without

25    limiting the generality of the foregoing, the term "BRATZ" does not and shall not

26    require that there be a doll existing at the time of the event, incident or occurrence that

27    is the subject of, or otherwise relevant or responsive to, the Interrogatories.

28

0720972239571.2

-3-

MATTEL'S SUPPLEMENTAL INTERROGATORIES

**EXHIBIT __3__ PAGE 54**

Exhibit G - Page 527

8.    "SOLD," "SELL" or "SALE" means to distribute, market, license, sell, offer to sell, or convey or transfer in any way for compensation.

9.    "DOCUMENT" or "DOCUMENTS" means all "writings" and "recordings" as those terms are defined in Rule 34 of the Federal Rules of Civil Procedure and Rule 1001 of the Federal Rules of Evidence, including, but not limited to, all writings and records of every type and description including, but not limited to, contracts, agreements, correspondence, memoranda, letters, facsimiles, electronic mail ("e-mail"), records of telephone conversations, handwritten and typewritten notes of any kind, statements, reports, minutes, recordings, transcripts and summaries of meetings, voice recordings, pictures, photographs, drawings, computer cards, tapes, discs, printouts and records of all types, studies, instruction manuals, policy manuals and statements, books, pamphlets, invoices, canceled checks and every other device or medium by which or through which information of any type is transmitted, recorded or preserved.  Without any limitation on the foregoing, the term "DOCUMENT" shall include all copies that differ in any respect from the original or other versions of the DOCUMENT, including, but not limited to, all drafts and all copies of such drafts or originals containing initials, comments, notations, insertions, corrections, marginal notes, amendments or any other variation of any kind.

10.    "COMMUNICATION" or "COMMUNICATIONS" means and includes any disclosure, transfer or exchange of information between two or more PERSONS, whether orally or in writing, including without limitation, any conversation or discussion by means of meeting, letter, telephone, note, memorandum, telegraph, telex, telecopier, electronic mail, or any other electronic or other medium, including without limitation in written, audio or video form.

11.    "MACHADO" means Carlos Gustavo Machado Gomez, and all of his current or former employees, agents, representatives, attorneys, accountants, vendors, consultants, independent contractors, predecessors-in-interest and successors-

07209/2239571.2

-4-

EXHIBIT __3__ PAGE 55

Exhibit G - Page 528

1  in-interest, and any other PERSON acting on his behalf, pursuant to his authority or

2  subject to his control.

3          12.   "TRUEBA" means Mariana Trueba Almada, and all of her current

4  or former employees, agents, representatives, attorneys, accountants, vendors,

5  consultants, independent contractors, predecessors-in-interest and successors-in-

6  interest, and any other PERSON acting on her behalf, pursuant to her authority or

7  subject to her control.

8          13.   "VARGAS" means Pablo Vargas San Jose, and all of his current or

9  former employees, agents, representatives, attorneys, accountants, vendors, consultants,

10  independent contractors, predecessors-in-interest and successors-in-interest, and any

11  other PERSON acting on his behalf, pursuant to his authority or subject to his control.

12          14.   "BRAWER" means Ron Brawer, and all of his current or former

13  employees, agents, representatives, attorneys, accountants, vendors, consultants,

14  independent contractors, predecessors-in-interest and successors-in-interest, and any

15  other PERSON acting on his behalf, pursuant to his authority or subject to his control.

16          15.   "CASTILLA" means Jorge Castilla, and all of his current or former

17  employees, agents, representatives, attorneys, accountants, vendors, consultants,

18  independent contractors, predecessors-in-interest and successors-in-interest, and any

19  other PERSON acting on his behalf, pursuant to his authority or subject to his control.

20          16.   "COONEY" means Dan Cooney, and all of his current or former

21  employees, agents, representatives, attorneys, accountants, vendors, consultants,

22  independent contractors, predecessors-in-interest and successors-in-interest, and any

23  other PERSON acting on his behalf, pursuant to his authority or subject to his control.

24          17.   "BRISBOIS" means Janine Brisbois, and all of her current or former

25  employees, agents, representatives, attorneys, accountants, vendors, consultants,

26  independent contractors, predecessors-in-interest and successors-in-interest, and any

27  other PERSON acting on her behalf, pursuant to her authority or subject to her control.

28

-5-

MATTEL'S SUPPLEMENTAL INTERROGATORIES

EXHIBIT __3__ PAGE 56

Exhibit G - Page 529

1    18.    "RAE" means Ron Rae, and all of his current or former employees,
2 agents, representatives, attorneys, accountants, vendors, consultants, independent
3 contractors, predecessors-in-interest and successors-in-interest, and any other PERSON
4 acting on her behalf, pursuant to her authority or subject to his control.

5    19.    "CONTRERAS" means Nick Contreras, and all of his current or
6 former employees, agents, representatives, attorneys, accountants, vendors, consultants,
7 independent contractors, predecessors-in-interest and successors-in-interest, and any
8 other PERSON acting on her behalf, pursuant to her authority or subject to his control.

9    20.    "ABUNDIS" means Ricardo Abundis, and all of his current or
10 former employees, agents, representatives, attorneys, accountants, vendors, consultants,
11 independent contractors, predecessors-in-interest and successors-in-interest, and any
12 other PERSON acting on her behalf, pursuant to her authority or subject to his control.

13    21.    The "FORMER MATTEL EMPLOYEES" means MACHADO,
14 TRUEBA, VARGAS, BRAWER, CASTILLA, COONEY, BRISBOIS, CONTRERAS,
15 RAE, ABUNDIS, and any other former Mattel employee or contractor who
16 misappropriated Mattel trade secrets or violated his or her obligations to maintain the
17 confidentiality of Mattel's trade secrets.

18    22.    "REFER OR RELATE TO" a given subject matter means relate to,
19 refer to, constitute, contain, embody, depict, incorporate, reflect, evidence, identify,
20 state, deal with, comment on, respond to, describe, analyze, support, refute, contradict,
21 or in any way pertain to that subject matter, either directly or indirectly.

22    23.    "THIS ACTION" refers to *Mattel, Inc. v. Bryant*, Case No. CV 04-
23 9059 SGL (RNBx), filed by Mattel on April 27, 2004, and the cases consolidated
24 therewith.

25    24.    "SLEEKCRAFT FACTORS" means those factors enumerated in
26 AMF Inc. v. Sleekcraft Boats, 599 F.2d 341 (9th Cir. 1979), and includes specifically:
27 (1) strength of the mark; (2) similarity of the marks; (3) relatedness of the goods; (4)
28 marketing channels; (5) type of goods and purchaser's likely degree of care; (6)

07209/2239571.2

-6-

MATTEL'S SUPPLEMENTAL INTERROGATORIES

EXHIBIT   3   PAGE 57

Exhibit G - Page 530

1   evidence of actual confusion; (7) likelihood of expansion of the product lines; and (8)

2   defendant's intent in selecting the mark.

3        25.   "MATTEL DOCUMENTS" means any and all DOCUMENTS

4   stolen, obtained or taken from MATTEL by any PERSON, including but not limited to

5   the DOCUMENTS identified as Bates Numbers M 0019162-M 0019365, M 0019375-

6   M 0019491, M 0019492-M 0019586, M 0030576, M 0019587-M 0022008, M

7   0022009-M 0026076, M 0026077-M 0029024, M 0029025-M 0029042, M 0029043-M

8   0029044, M 0029045-M 0029050, M 0029051-M 0029053, M 0031471-M 0031473, M

9   0029054-M 0029255, M 0031474-M 0031485, M 0029226-M 0030163, M 0030164-M

10   0030173, M 0030174-M 0030183, M0030261-M 0030268, M 0030269-M 0030278, M

11   0030440-M 0030441, M 0030505-M 0030575, M 0030577-M 0030608, M 0019366-M

12   0019374, M 0030184-M 0030240, M 0030254-M 0030260, M 0030279-M 0030439, M

13   0030442-M 0030470, M 0030471-M 0030501, M 0030609, M 0030610-M 0030625, M

14   0030626-M 0030674, M 0030241-M 0030253, M 0030502-M 0030504, M 0030675-M

15   0030754, M 0030755-M 0030756, M 0030770-M 0030782, M 0030757-M 0030769, M

16   0030783-M 0030788, M 0030789-M 0030799, M 0030800-M 0030834, M 0030835, M

17   0030836-M 0030838, M 0030839-M 0030841, M 0030842-M 0030845, M 0030846-M

18   0030850, M 0030851- M 0030959, M 0030960-M 0030972, M 0030973-M 0031141,

19   M 0031142-M 0031153, M 0031154-M 0031162, M 0031163-M 0031172, M 0031173,

20   M 0031174-M 0031206, M 0031207-M 0031223, M 0031224-M 0031229, M

21   0031230-M 0031247, M 0031248-M 0031258, M 0031259-M 0031262, M 0031263-M

22   0031264, M 0031265, M 0031266, M 0031267, M 0031268, M 0031269, M 0031270-

23   M 0031278, M 0031279-M 0031280, M 0031281-M 0031282, M 0031283-M 0031291,

24   M 0031292-M 0031470, M 0032318, M 0031486-M 0031503, M 0031504-M 0031612,

25   M 0031613-M 0031860, M 0031863-M 0031864, M 0031865-M 0031919, M

26   0031861-M 0031862, M 0031925-M 0032000, M 0031920-M 0031924, M 0032001-M

27   0032009, M 0032010-M 0032057, M 0032058, M 0032059-M 0032070, M 0032071-M

28   0032288, M 0032289, M 0032290-M 0032317, M 0059836-M 0059837, M 0075253-M

EXHIBIT  3   PAGE 58

Exhibit G - Page 531

1  0075260, M 0075261-M 0075277, M 0075278-M 0075289, M 0075290-M 0075307, M
2  0075308-M 0075309, M 0075310-M 0075315, M 0075316-M 0075317, M 0075318-M
3  0075322, M 0075323-M 0075324, M 0075325, M 0075326-M 0075328, M 0075329-M
4  0075333, M 0075334-M 0075375, M 0075376-M 0075378, M 0075379-M 0075380, M
5  0075381-M 0075384, M 0075385, M 0075386-M 0075388, M 0075389, M 0075390,
6  M 0075391, M 0075392-M 0075398, M 0075399-M 0075400, M 0075401-M 0075407,
7  M 0075408, M 0075409-M 0075416, M 0075417-M 0075420, M 0075421, M
8  0075422-M 0075469, M 0075470-M 0075490, M 0075491-M 0075494, M 0075495-M
9  0075515, M 0075516-M 0075531, M 0075532-M 0075552, M 0075553-M 0075572, M
10 0075573, M 0075574-M 0075594, M 0075595-M 0075616, M 0075617, M 0075618-M
11 0075619, M 0075620-M 0075635, M 0075636-M 0075654, M 0075655-M 0075661, M
12 0075662-M 0075699, M 0075700-M 0075709, M 0075710-M 0075713, M 0075714-M
13 0075775, M 0075776-M 0075780, M 0075781-M 0075798, M 0075799-M 0075842, M
14 0075843-M 0075906, M 0075907-M 0075949, M 0075950-M 0076018, M 0076019, M
15 0076020-M 0076132, M 0076133-M 0076143, M 0076144-M 0076145, M 0076146-M
16 0076148, M 0076149-M 0076155, M 0076156-M 0076169, M 0076170-M 0076171, M
17 0076172-M 0076196, M 0076197-M 0076215, M 0076216-M 0076250, M 0076251-M
18 0076264, M 0076265-M 0076279, M 0076280, M 0076281-M 0076311, M 0076312-M
19 0076362, M 0076363-M 0076370, M 0076371, M 0076372-M 0076425, M 0076426-M
20 0076427, M 0076428-M 0076431, M 0076432-M 0076442, M 0076443-M 0076446,
21 M 0100646-M 0100653, M 0098687-M 0098688, M 0098689-M 0098697, M
22 0098698-M 0098723, M 0098724-M 0098771, M 0098772-M 0098832, M 0098833-M
23 0098846, M 0098847-M 0098865, M 0098866-M 0098879, M 0098880-M 0098883, M
24 0098884-M 0098933, M 0098934-M 0098936, M 0098937-M 0098971, M 0098972-M
25 0099436, M 0099437-M 0099439, M 0099440-M 0099448, M 0099449-M 0099461, M
26 0099462-M 0099471, M 0099472-M 0099476, M 0099477-M 0099493, M 0099494-M
27 0099529, M 0099530-M 0099594, M 0099595-M 0099597, M 0099598-M 0099601, M
28 0099602-M 0099618, M 0099619-M 0099628, M 0099629-M 0099656, M 0099657-M

EXHIBIT __3__ PAGE __59__

Exhibit G - Page 532

1  0099665, M 0099666-M 0099725, M 0099726-M 0100622, M 0100623-M 0100645, M

2  0100646-M 0100653, M 0100654-M 0100695, M 0100696-M 0100698, M 0100699-M

3  0100700, M 0100701-M 0100735, M 0100736-M 0100741, M 0100742-M 0100774, M

4  0100775-M 0100778, M 0100779-M 0100780, M 0100781, M 0100782, M 0100783-M

5  0100789, M 0100790-M 0100795, M 0100796-M 0100858, M 0100859-M 0100868, M

6  0100869-M 0100878, M 0100879-M 0100891, M 0100892-M 0100905, M 0100906-M

7  0100918, M 0100919-M 0100932, M 0100933-M 0100941, M 0100942-M 0100952, M

8  0100953, M 0100954-M 0100955, M 0100956-M 0100983, M 0100984-M 0101013, M

9  0101014-M 0101064, M 0101065 and M 0101069-M 0101128.

10      26.    "DIGITAL INFORMATION" means any information created or

11  stored digitally, including but not limited to electronically, magnetically or optically.

12      27.    "STORAGE DEVICE" means any computer hard drive, memory,

13  USB device, tape, storage array or any other device or medium that allows a user,

14  whether permanently, temporarily or otherwise, to create, generate, transmit, copy,

15  retain, store or maintain DIGITAL INFORMATION.

16      28.    "SOURCE OF INFORMATION" means any medium containing

17  DOCUMENTS or other information, whether in paper, electronic or other form,

18  including but not limited to any STORAGE DEVICE, file, file cabinet or other any

19  other source of information or DOCUMENTS.

20      29.    "COLLECT," "COLLECTED" or "COLLECTION," with reference

21  to DOCUMENTS, means to collect, review, produce, request, seek, look for, search for,

22  analyze or in any other way collect or review or attempt to collect or review such

23  DOCUMENTS in connection with YOUR search for, review of and/or production of

24  DOCUMENTS in this ACTION.

25      30.    "IDENTIFY" or "IDENTITY" means the following:

26          (a)    with reference to an individual or individuals, means to state,

27  fully and separately as to each, such individual's full name, any known business title,

28  current or last known business affiliation, current or last known residential address,

07209/2239571.2

-9-

MATTEL'S SUPPLEMENTAL INTERROGATORIES

**EXHIBIT   3   PAGE 60**

Exhibit G - Page 533

1  current or last known business address, current or last known relationship to MGA, and

2  current or last known telephone number.

3        (b)   with reference to an entity or entities, means to state, fully and

4  separately as to each, such entity's full name, state (or country) of incorporation or

5  organization, present or last known address, and present or last known telephone

6  number.

7        (c)   with reference to a SOURCE OF INFORMATION, means

8  to describe and state, fully and separately as to each, the SOURCE OF

9  INFORMATION so as to distinctly identify each such SOURCE OF INFORMATION

10 and differentiate each such SOURCE OF INFORMATION from all other SOURCES

11 OF INFORMATION, including without limitation by stating its nature (e.g., USB

12 drive, computer hard drive, file cabinet, etc.), and any unique identifier information

13 (such as hard drive serial number); the physical location(s), including full address

14 information and full identifying computer network drive information if applicable, of

15 each such SOURCE OF INFORMATION (as of the time of YOUR COLLECTION of

16 DOCUMENTS from the SOURCE OF INFORMATION, regardless of whether such

17 DOCUMENTS were thereafter moved elsewhere for the purpose of YOUR review); the

18 IDENTITY of each natural person or individual who is, was or has been associated

19 with each such SOURCE OF INFORMATION; the date(s) on which YOU

20 COLLECTED DOCUMENTS from each such SOURCE OF INFORMATION in

21 connection with this ACTION; and the IDENTITY of any DOCUMENTS, by Bates

22 number, that YOU have produced from each such SOURCE OF INFORMATION to

23 Mattel in this ACTION.

24        (d)   with reference to any other DOCUMENT or DOCUMENTS,

25 means to describe each DOCUMENT by Bates number.  In the event that a

26 DOCUMENT does not have a Bates number, IDENTIFY means, with respect to each

27 such DOCUMENT, to provide a complete description of it such that it may be the

28 subject of a request for the production of documents, including by stating the date,

07209/2239571.2

-10-

MATTEL'S SUPPLEMENTAL INTERROGATORIES

EXHIBIT __3__ PAGE 6/

1   identity of the author, addressee(s), signatories, parties, or other PERSONS identified
2   therein, its present location or custodian and a description of its contents.

3          (e)    with reference to the payment of money or other item of
4   value, or any promise, agreement, proposal or offer to pay money or any item of value,
5   means to state the amount of the payment or the value of the item, the IDENTITY of
6   the payor, the IDENTITY of the payee, the IDENTITY of the PERSON on whose
7   behalf it is being made, the IDENTITY of the PERSON on whose behalf it is being
8   received, the date(s) on which such payment or item of value was paid, promised,
9   agreed to be paid, proposed or offered, the nature of the method of payment (e.g., cash,
10  check) and any identifying information accompanying such payment (e.g., check
11  number), and the IDENTITY of each bank or financial institution involved therein.

12          31.    "Any" as used in these interrogatories includes the word "all," and
13  the word "all" as used in these interrogatories includes the word "any."

14          32.    The singular form of a noun or pronoun includes within its meaning
15  the plural form of the noun or pronoun so used, and vice versa; the use of the masculine
16  form of a pronoun also includes within its meaning the feminine form of the pronoun so
17  used, and vice versa; the use of any tense of any verb includes also within its meaning
18  all other tenses of the verb so used, whenever such construction results in a broader
19  request for information; and "and" includes "or" and vice versa, whenever such
20  construction results in a broader disclosure of documents or information.

21

22                              <u>Instructions</u>

23          A.    When    an    interrogatory    requests    disclosure    of    a
24  COMMUNICATION or other information as to which YOU claim any privilege or
25  protection as a ground for nondisclosure, identify each PERSON who participated in or
26  had knowledge of the COMMUNICATION or other information and provide the
27  following:

28          (i)    the privilege or protection that YOU claim precludes disclosure;

0720922395712                          -11-
                              MATTEL'S SUPPLEMENTAL INTERROGATORIES

EXHIBIT ___3___ PAGE 62

Exhibit G - Page 535

1        (ii)   the subject matter of the COMMUNICATION or information

2              (without revealing the content as to which the privilege is claimed);

3              and

4       (iii)   any additional facts or grounds on which YOU base YOUR claim

5              of privilege or protection.

6        B.     When an interrogatory requests that YOU provide information,

7 YOU are required to supply all information known by or available to YOU or YOUR

8 employees, officers, directors, agents, representatives, attorneys and experts. If YOU

9 cannot completely answer the interrogatory after making diligent efforts to do so,

10 please so state. Then describe in detail all efforts made to answer the interrogatory;

11 identify every PERSON involved in such efforts; and state the additional information

12 YOU need, if any, to respond completely to the interrogatory.

13

14                      **Interrogatories**

15

16 INTERROGATORY NO. 51:

17         For each concept, design, product, product packaging or other matter that

18 YOU contend MATTEL has copied, infringed or diluted, including but not limited to

19 those identified in MGA's Responses to Mattel, Inc.'s First Set of Interrogatories Re

20 Claims of Unfair Competition, Response to Interrogatory No. 2 (and any Supplemental

21 Responses to such Interrogatory), describe, fully and separately, each and every

22 concept, design, product, product packaging or other matter of or by MATTEL that

23 YOU contend is a copy of, infringes or dilutes YOUR alleged concept(s), design(s),

24 product(s), product packaging or other matter. Your answer should describe the Mattel

25 concept, design, product, product packaging or other matter with specificity and in

26 detail (including without limitation by product name, product number, SKU, or bar

27 code number), and specify those elements or attributes of YOUR claimed concept,

28

07209/2239571.2

-12-

MATTEL'S SUPPLEMENTAL INTERROGATORIES

EXHIBIT ___3___ PAGE 63

Exhibit G - Page 536

1   design, product, product packaging or other matter that YOU contend were copied,
2   infringed or diluted by MATTEL.

3

4   **INTERROGATORY NO. 52:**

5        For each trade dress that YOU contend MATTEL copied, infringed or
6   diluted, separately IDENTIFY each product sold by YOU or YOUR licensees that
7   incorporates such trade dress and, for each such product, separately state (a) the number
8   of units, by year, of each such product sold by YOU or YOUR licensees; (b) revenue
9   received by YOU from such SALES of each such product; (c) all costs YOU have
10  incurred in connection with each product, including but not limited to YOUR cost of
11  good sold, and (d) YOUR gross and net profits from each such product.

12

13  **INTERROGATORY NO. 53:**

14        For each MATTEL concept, design, product, product packaging or other
15  matter that YOU contend is likely to cause confusion, to cause mistake, or to deceive as
16  to affiliation, connection, or association, or as to origin, sponsorship, or approval,
17  separately state all facts that support YOUR contention of such, including but not
18  limited to all facts that support YOUR contention, if YOU so contend, that any of the
19  SLEEKCRAFT FACTORS weighs against MATTEL, and IDENTIFY all PERSONS
20  with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO
21  such facts.

22

23  **INTERROGATORY NO. 54:**

24        For each concept, design, product, product packaging or other matter that
25  YOU contend MATTEL copied, infringed or diluted, state all facts that support
26  contention, if YOU so contend, that such copying or infringement was intentional or
27  willful, and IDENTIFY all PERSONS with knowledge of such facts and all
28  DOCUMENTS that REFER OR RELATE TO such facts.

07209/2239571.2

-13-
MATTEL'S SUPPLEMENTAL INTERROGATORIES

EXHIBIT __3__ PAGE 64

1

2  INTERROGATORY NO. 55:

3        State all facts which support the allegation in Paragraph 120 of YOUR

4  COMPLAINT that MATTEL has "caused and continues to cause blurring and dilution

5  of the distinctive look of MGA's products and trade dress," and IDENTIFY all

6  PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR

7  RELATE TO such facts.

8

9  INTERROGATORY NO. 56:

10        IDENTIFY all MATTEL DOCUMENTS that MGA has obtained,

11  received, reviewed, copied, reproduced, transmitted, requested or used at any time since

12  January 1, 1999, and IDENTIFY all PERSONS with knowledge of such facts and all

13  DOCUMENTS that REFER OR RELATE TO such MATTEL DOCUMENTS.

14

15  INTERROGATORY NO. 57:

16        IDENTIFY all DOCUMENTS that REFER OR RELATE TO any

17  MATTEL product or plan that any of the FORMER MATTEL EMPLOYEES

18  provided, transmitted or disclosed to, shared with or used on behalf of MGA at any

19  time since January 1, 1999, and IDENTIFY all PERSONS with knowledge of such

20  facts.

21

22  INTERROGATORY NO. 58:

23        State all facts which support YOUR contention, if YOU so contend, that

24  YOU and/or MGA did not obtain any MATTEL DOCUMENTS through improper

25  means, and IDENTIFY all PERSONS with knowledge of such facts and all

26  DOCUMENTS that REFER OR RELATE TO such facts.

27

28

0720972239571.2

-14-

MATTEL'S SUPPLEMENTAL INTERROGATORIES

EXHIBIT __3__ PAGE 65

Exhibit G - Page 538

INTERROGATORY NO. 59:

State all facts which support YOUR contention, if YOU so contend, that any information in the MATTEL DOCUMENTS does not and/or did not derive independent economic value from not being generally known to the public or other PERSONS who can obtain economic value from its disclosure or use, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

INTERROGATORY NO. 60:

State all facts which support YOUR contention, if YOU so contend, that any information in the MATTEL DOCUMENTS was known to the public or to PERSONS who can obtain economic value from its disclosure or use, and IDENTIFY all PERSONS with knowledge of the foregoing and all DOCUMENTS that REFER OR RELATE TO the foregoing.

INTERROGATORY NO. 61:

State all facts which support YOUR contention, if YOU so contend, that YOU and/or MGA independently developed, or did not otherwise use or disclose, any information in the MATTEL DOCUMENTS, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

INTERROGATORY NO. 62:

State all facts which support YOUR contention that YOUR use or disclosure of information in the MATTEL DOCUMENTS neither benefited YOU nor MGA nor harmed MATTEL, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

EXHIBIT __3__ PAGE _66_

Exhibit G - Page 539

1  INTERROGATORY NO. 63:

2          State all facts which support YOUR contention, if YOU so contend, that

3  YOU and/or MGA had, has or have any right to copy, possess, use or disclose any

4  MATTEL DOCUMENT, and IDENTIFY all PERSONS with knowledge of such facts

5  and all DOCUMENTS that REFER OR RELATE TO such facts.

6

7  INTERROGATORY NO. 64:

8          To the extent YOU have not previously disclosed such information in a

9  prior interrogatory response YOU provided to Mattel, state all facts which support

10  YOUR claims against Mattel in THIS ACTION, and IDENTIFY all PERSONS with

11  knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such

12  facts.

13

14  INTERROGATORY NO. 65:

15          Describe in detail each and every action YOU have taken, or directed be

16  taken, to locate, maintain or preserve evidence which is, might be or could be relevant

17  or potentially relevant to THIS ACTION.

18

19  INTERROGATORY NO. 66:

20          IDENTIFY each and every SOURCE OF INFORMATION from which

21  YOU have COLLECTED DOCUMENTS for responsiveness and potential production

22  in THIS ACTION.

23

24  INTERROGATORY NO. 67:

25          IDENTIFY fully and separately each and every payment of money or

26  other item of value that YOU have made or given, or any promise, agreement, proposal

27  or offer by YOU to pay money or give any item of value, to or on behalf of any

28  PERSON identified in any of the parties' initial disclosures in this ACTION at any time

07209/2239571.2

-16-

MATTEL'S SUPPLEMENTAL INTERROGATORIES

EXHIBIT   3   PAGE 6 7

Exhibit G - Page 540

1   when such PERSON was not an employee of MGA, including without limitation with
2   respect to legal fees incurred by or on behalf of such PERSON.

3

4   INTERROGATORY NO. 68:

5        To the extent not disclosed in response to prior Interrogatories, IDENTIFY
6   fully and separately each and every payment of money or other item of value that MGA
7   has made, or any promise, agreement, proposal or offer by MGA to pay money or give
8   any item of value, to or on behalf of any of the FORMER MATTEL EMPLOYEES,
9   including without limitation with respect to legal fees incurred by or on behalf of any of
10  the FORMER MATTEL EMPLOYEES.

11

12  INTERROGATORY NO. 69:

13       To the extent not disclosed in response to prior Interrogatories, IDENTIFY fully
14  and separately each and every payment of money or other item of value that YOU have
15  made, or any promise, agreement, proposal or offer by YOU to pay money or give any
16  item of value, since January 1, 1998 to or on behalf of any PERSON who has been
17  employed by MATTEL (excluding ordinary salary and benefits paid to such PERSON
18  while an MGA employee), including without limitation with respect to legal fees
19  incurred by or on behalf of such PERSON and bonuses paid to such PERSON.

20

21

22  DATED: January 7, 2008         QUINN EMANUEL URQUHART OLIVER &
23                                 HEDGES, LLP

24                          By _____
25                             Michael T. Zeller
                               Attorneys for Mattel, Inc.
26

27

28

07209/2239571.2

-17-

MATTEL'S SUPPLEMENTAL INTERROGATORIES

EXHIBIT __3__ PAGE 68

Exhibit G - Page 541

<u>PROOF OF SERVICE</u>

1

2        I am employed in the County of Los Angeles, State of California.  I am over

3   the age of eighteen years and not a party to the within action; my business address is

4   NOW Messenger Service, 1301 West Second Street, Suite 206, Los Angeles,

5   California 90026.

6        On January 9, 2008, I served true copies of the following documents

7   described as:

8        MATTEL, INC.'S SUPPLEMENTAL INTERROGATORIES

9   on the parties in this action as follows:

| | |
|---|---|
| 10  Skadden, Arps, Slate, Meagher & Flom LLP<br>11    Thomas J. Nolan, Esq.<br>    300 South Grand Avenue, Suite 3400<br>12  Los Angeles, CA 90071<br>    Telephone: 213.687.5000<br>13  Facsimile: 213.687.5600 | Attorneys for *MGA Entertainment, Inc., MGA Entertainment (HK) Ltd., Isaac Larian and MGAE de Mexico, S.R.L. de C.V.* |
| 14  Overland Borenstein Scheper & Kim, LLP<br>15    Mark E. Overland, Esq.<br>    David C. Scheper, Esq.<br>16    Alexander H. Cote, Esq.<br>    300 South Grand Avenue, Suite 2750<br>17  Los Angeles, CA 90071<br>    Telephone: 213.613.4655<br>18  Facsimile: 213.613.4656 | Attorneys for *Carlos Gustavo Machado Gomez* |
| 19  Keker & Van Nest, LLP<br>    John W. Keker, Esq.<br>20    Michael H. Page, Esq.<br>    Christa M. Anderson, Esq.<br>21  710 Sansome Street<br>    San Francisco, CA 94111<br>22  Telephone: 415.391.5400<br>    Facsimile: 415.397.7188 | Attorneys for *Carter Bryant* |

23

24     [√]   [PERSONAL] by personally delivering the document listed above to

25   the person(s) at the address(es) set forth above.

26

27

28

07209/2347614.1

Case No. CV 04-9049 SGL (RNBx)
PROOF OF SERVICE

EXHIBIT ___3___ PAGE 69

Exhibit G - Page 542

1     I declare that I am employed in the office of a member of the bar of this court

2  at whose direction the service was made

3     Executed on January 9, 2008, at Los Angeles, California.

4

5

6                                                         David Quintana

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07209/2347614.1

Case No. CV 04-9049 SGL (RNBx)
PROOF OF SERVICE

EXHIBIT   3   PAGE 70

Exhibit G - Page 543

CALENDARED

APR 1 6 2009

1   PATRICIA L. GLASER (Bar No. 055668)
    pglaser@glaserweil.com
2   GLASER WEIL FINK JACOBS & SHAPIRO
    10250 Constellation Blvd., 19th Floor
3   Los Angeles, California 90067
    Telephone: (310) 553-3000
4   Facsimile: (310) 557-9815

5   RUSSELL J. FRACKMAN (Bar No. 49087)
    rjf@msk.com
6   PATRICIA H. BENSON (Bar No. 60565)
    phb@msk.com
7   JEAN P. NOGUES (Bar No. 84445)
    jpn@msk.com
8   MITCHELL SILBERBERG & KNUPP LLP
    11377 West Olympic Boulevard
9   Los Angeles, California 90064-1683
    Telephone: (310) 312-2000
10  Facsimile: (310) 312-3100

11  Attorneys for Plaintiffs
    MGA Entertainment, Inc., MGA Entertainment HK,
12  Ltd., MGAE De Mexico S.R.L. De C.V and Isaac
    Larian

13

14                  UNITED STATES DISTRICT COURT

15                 CENTRAL DISTRICT OF CALIFORNIA

16                        EASTERN DIVISION

17  CARTER BRYANT, an individual,,        CASE NO.   CV 04-9049 SGL (RNBx)

18           Plaintiff,                   Consolidated with
                                          Case No.  CV 04-09059
19        v.                              Case No.  CV 05-02727

20  MATTEL, INC., a Delaware corporation,,   **PROOF OF SERVICE**

21           Defendant.

22
    ┌─────────────────────────────────
23  AND CONSOLIDATED CASES

24

25

26

27

28

PROOF OF SERVICE

EXHIBIT __3__ PAGE _21_

Exhibit G - Page 544

Mitchell Silberberg & Knupp LLP

1
## PROOF OF SERVICE

2  STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

3      I am employed in the county of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Mitchell
4  Silberberg & Knupp LLP, 11377 West Olympic Boulevard, Los Angeles, California 90064-1683.

5  On April 14, 2009, I served a copy of the foregoing document(s) described as

6

7  1.    MGA ENTERTAINMENT, INC.'S SECOND SET OF PHASE 2 REQUESTS

8        FOR PRODUCTION OF DOCUMENTS AND OTHER TANGIBLE THINGS

9        TO MATTEL

10 2.    MGA ENTERTAINMENT, INC.'S FIRST SET OF PHASE 2 REQUESTS

11       FOR ADMISSION TO MATTEL

12 3.    MGA ENTERTAINMENT, INC.'S FIRST SET OF PHASE 2

13       INTERROGATORIES TO MATTEL

14  on the interested parties in this action at their last known address as set forth below by taking the action described below:

15      SEE ATTACHED SERVICE LIST

16

17 ☒ BY PLACING FOR COLLECTION AND MAILING: I placed the above-
     mentioned document(s) in sealed envelope(s) addressed as set forth above, and
18   placed the envelope(s) for collection and mailing following ordinary business
     practices. I am readily familiar with the firm's practice for collection and
19   processing of correspondence for mailing with the United States Postal Service.
     Under that practice it would be deposited with the U.S. Postal Service on that
20   same day with postage thereon fully prepaid at 11377 West Olympic Boulevard,
     Los Angeles, California 90064-1683 in the ordinary course of business.I declare
21  under penalty of perjury under the laws of the State of California that the above is
    true and correct.

22      Executed on April 14, 2009, at Los Angeles, California.

23

24                                    _____

25                                         Anita Abd

26

27

28

Mitchell
Silberberg &
Knupp LLP
197139.1

1

EXHIBIT ___3___ PAGE _72_

## SERVICE LIST

1

2 John Quinn, Esq.                                    Thomas J. Nolan, Esq.

3 Jon D. Corey, Esq.                                  Raoul D. Kennedy, Esq.

   Michael T. Zeller, Esq.                            Jason D. Russell, Esq.

4 Quinn Emanuel Urquhart Oliver &                     Skadden, Arps, Slate, Meagher &

5 Hedges, LLP                                         Flom LLP

   865 Figueroa Street                                300 South Grand Avenue

6 10th Floor                                          Suite 3400

7 Los Angeles, CA 90017-2543                          Los Angeles, CA 90071-3144

   *[VIA U.S. MAIL]*                                  *[VIA U.S. MAIL]*

8

9 Mark E. Overland, Esq.                              Patricia L. Glaser, Esq.

   Overland Borenstein Scheper & Kim                  Joel N. Klevens, Esq.

10 LLP                                                Glaser, Weil, Fink, Jacobs &

11 One Bunker Hill                                    Shapiro, LLP

   601 W. 5th Street                                  10250 Constellation Boulevard

12 12th Floor                                         19th Floor

13 Los Angeles, CA  90071                             Los Angeles, CA 90067

   *[VIA U.S. MAIL]*                                  *[VIA EMAIL ONLY]*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Mitchell
Silberberg &
Knupp LLP
197139.1

2

EXHIBIT __3__ PAGE 7b

Exhibit G - Page 546