MELINDA HAAG (State Bar No. 132612)
mhaag@orrick.com
ANNETTE L. HURST (State Bar No. 148738)
ahurst@orrick.com
WARRINGTON S. PARKER III (State Bar No. 148003)
wparker@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105
Telephone: +1-415-773-5700
Facsimile: +1-415-773-5759

WILLIAM A. MOLINSKI (State Bar No. 145186)
wmolinski@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017
Telephone: +1-213-629-2020
Facsimile: +1-213-612-2499

Attorneys for MGA Parties

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware Corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS<br><br>[PUBLICALLY REDACTED VERSION] | Case No. CV 04-9049 SGL (RNBx)<br>Consolidated with: Case No. CV 04-9059 and Case No. CV 05-2727<br><br>**DISCOVERY MATTER**<br>**[To Be Heard By Discovery Master Robert C. O'Brien]**<br>**SUPPLEMENTAL DECLARATION OF WILLIAM A. MOLINSKI IN SUPPORT OF MGA'S MOTION TO COMPEL DOCUMENTS RESPONSIVE TO REQUESTS FOR PRODUCTION NOS. 530 AND 531 OF MGA'S FIFTH SET OF REQUESTS FOR PRODUCTION**<br><br>Date: TBD<br>Time: TBD<br>Place: Arent Fox LLP<br><br>**Phase 2**<br>Discovery Cutoff: December 11, 2009<br>Pretrial Conference: March 1, 2010<br>Trial Date: March 23, 2010 |

SUPPLEMENTAL DECLARATION OF WILLIAM A. MOLINSKI
CV-04-0049 SGL (RNBx)

I, William A. Molinski, declare as follows:

1. I am an attorney at the law firm of Orrick, Herrington & Sutcliffe LLP, attorneys of record for Plaintiff and Counter-Defendant MGA Entertainment, Inc. and Counter-Defendants MGA Entertainment HK, Ltd., MGAE de Mexico S.R.L. de C.V., and Isaac Larian ("MGA Parties"). Based on this representation, I am familiar with the events, pleadings, and discovery in this action and, if called upon as a witness, I could and would testify competently to the matters stated herein of my own personal knowledge. I make this supplemental declaration in response to MGA's Motion to Compel Documents Responsive to Request Nos. 530 and 531.

2. As the Discovery Master is aware, Mattel has sought to compel the production of the fee arrangements and invoices between the law firm Bingham McCutchen LLP ("Bingham") and its clients Omni 808 and Vision Capital. *See* Mattel's Motion Objecting to Positions of Discovery Master Order No. 27 Regarding Motion to Compel Documents from Bingham McCutchen (the "Motion to Compel Bingham"). A copy of the Motion to Compel Bingham is attached hereto to Exhibit A. At the hearing on August 13, 2009 on Mattel's Motion to Compel Bingham, both Peter Villars and I pointed out that the position Mattel was taking on this issue was directly contrary to the position Mattel has taken in resisting production of fee arrangements between Quinn Emanuel and Mattel that are the subject of MGA's Motion to Compel Requests Nos. 530 and 531. I submit this declaration to highlight the inconsistencies in Mattel's position.

3. Most significantly, the distinctions Mattel tries to draw between the efforts to obtain Bingham's fee arrangements with its client and simultaneously resist production of its own fee arrangements disappear when one considers that MGA is only seeking in this Motion documents related to Mattel's payment of fees to Quinn Emanuel for its representation of third party witnesses and not Mattel's payment for services by Quinn Emanuel in representing Mattel.

4. The Discovery Master should initially look to Mattel's Motion to Compel Bingham, wherein Mattel argues:

[1] Indeed, this case is replete with rulings from the Court and the prior Discovery Master that fee and indemnity agreements are not privileged and are relevant to bias and credibility. *See* supra note 5 (Order Granting Mattel's Motion to Compel Documents, dated January 25, 2007, at 11-12; Order Granting Mattel's Motion to Compel Production of Documents and Interrogatory Responses by MGA, dated May 15, 2007, at 10; Order Granting in Part and Denying in Part Mattel's Motion to Enforce the Court's Order of January 25, 2007, to Compel Production of Documents by Carter Bryant and for Sanctions, dated June 19, 2007, at 2-4; Order Re Motions Heard on June 11, 2007, dated June 27, 2007, at 33-34).

[redacted]

Exhibit A, 9:16 – 10:15.

5. The Discovery Master should also consider the arguments Mattel made at the hearing on August 13, 2009. A copy of relevant portions of the transcript are attached hereto as Exhibit B.

6. At that hearing, Michael Zeller of Quinn Emanuel again reiterates that the fee arrangements between a law firm and its client are not privileged. Ex. B 29:10-16. He then makes the point that Mattel should not be deprived of non-privileged material because of the decisions a party made in structuring its legal relationship saying:

[2] Order at 20.

>    I mean, we didn't create that situation . . . but, certainly, it can't be used as a shield for stopping us from getting clearly, those non-privileged communications.

At 30:19-24.

This, of course, is the very same argument MGA had made that Mattel has resisted. The fact that Quinn Emanuel has combined its invoices and agreements in representing *third party witnesses* with its invoices and agreements in representing *Mattel*, can't be used as a shield for stopping MGA from obtaining those non-privileged documents to which it is entitled.

7.   Lastly, and most significantly, Mr. Zeller explains at length how the agreement by a party to pay the fees of a witness is "highly pertinent to credibility." Using the fee arrangement for Carter Bryant as an example, Mr. Zeller argues:

>    And the example that I'll give was Carter Bryant's agreements. I mean, we obviously had a fair amount of the litigation, as you've seen in the orders, over obtaining the fee agreement information between MGA and Carter Bryant. And at the end of the day, there was a term in there. And it was revealed by Keker e-mails. And, you know, of course those were found not to be privileged because they pertained to the terms of the fee agreement. And in there and in those documents it showed that MGA had the unilateral power, any time it wanted for any reason, to stop paying Carter Bryant's fees, which, of course, we thought and certainly argued was highly pertinent to credibility. I mean, here's somebody who has basically this anvil hanging over him. And, of course, if he starts saying things that MGA didn't like, that they

> were entitled to pull the plug and leave him to essentially to have to pay for the litigation.
>
> So I use that as an example because I don't want -- I don't want it to be lost that – the particular terms of any conditions, for example, on the payment of fees. I think an extreme example would be if, you know, Mr. Neman was told, "Well, your fees will only be paid so long as you say what we like," there would really be no real argument, I don't think, in saying that that isn't relevant and to bias and credibility.

At 31:20-32:22.

8. This same argument applies to Mattel's arrangements with Quinn Emanuel . MGA has alleged that Mattel has engaged in a wide-array of tortious, unfair and anti-competitive practices, including the systematic copycatting of intellectual property, intimidation and threats to retailers, licensees and suppliers, and efforts to inhibit and stifle MGA's ability to compete with Mattel. Mattel, of course, could only engage in such practices through its employees and officers. To the extent that Mattel is paying Quinn Emanuel to represent former employees, agents, officers or board members, that payment goes to the credibility of those witnesses to the same extent as MGA's payment of Bryant's fees goes to his credibility. Similarly, if Mattel is paying fees incurred in this action by retailers, licensees, industry associations or others, those arrangements are relevant to those witnesses bias and credibility.

9. So just as Mr. Zeller argued about Bingham's fee arrangements, if there is an anvil hanging over a former Mattel employee's head that allows Mattel to cease representing him if he says things they don't like, that is relevant to his credibility. If Mattel has agreed to pay legal fees for industry association witnesses who MGA has claimed were improperly influenced by Mattel, that fact is relevant

to the bias and credibility of those witnesses. That Mattel is paying Quinn Emanuel or some other firm is irrelevant to its discoverability.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct, and that this declaration was executed this 31st day of August, 2009, at Los Angeles, California.

William A. Molinski

# EXHIBIT

# A

# EXHIBIT A

## FILED UNDER SEAL
## PURSUANT TO PROTECTIVE ORDER

# EXHIBIT

# B

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION

CARTER BRYANT, an individual,

Plaintiff,

vs.

MATTEL, INC., a Delaware corporation,

Defendant.

AND CONSOLIDATED ACTIONS.

No. CV 04-9049 SGL (RNBx)
Consolidated with
Nos. 04-9059 and 05-2727

CERTIFIED
COPY

---

TRANSCRIPT OF PROCEEDINGS

Los Angeles, California

Thursday, August 13, 2009

Reported by:
THERESA TRANG MCDOUGALL
CSR No. 11952

Job No. 116948

MR. ZELLER: That's true.

MR. O'BRIEN: So there's a limit on this. So the idea is you don't want Mr. Gordinier's communications with Mr. Villar or anybody else regarding the hearings and representing any of the entities that are the subject of the subpoena, to the extent that they're defending those parties against the subpoenas here in this case; correct?

MR. ZELLER: That's true.

And the one caveat I would say is this -- which relates to the fee agreements, and probably the only reason I raise it is that we don't even know what these fee agreements are. I mean, they are not privileged in themselves. And the communications about them are not privileged, that is talking about the substance. So I don't if those have been amended; I don't know if people have been added; I don't know how that is. But even in the litigation context, that's at least a somewhat different situation.

MR. O'BRIEN: But, for example, you're not asking for the detailed billings that went to clients that outlined the work that was done and that sort of thing? You want to know who's paying the fees and the amount of the fees, but you're not asking for the invoices that would go from Bingham to their client;

correct?

MR. ZELLER: That's true, assuming --

MR. O'BRIEN: Assuming they are privileged --

MR. ZELLER: Right.

MR. O'BRIEN: -- and hasn't been waived.

MR. ZELLER: That they didn't go to MGA. Let me just give an example. And this is, I think, one we talked about in our papers. Clearly, if a complete copy of the bill goes to MGA, I mean, that just couldn't be privileged and it should be produced.

One thing I would emphasize, as I think about the fee agreement issue -- because it is a little bit different; I mean, obviously, yes. What we're looking for are these transactional documents. And we're not asking for privileged information.

One subset of what is not privileged, even though it does sort of bleed into this issue about litigation counsel -- which is, by the way, we're not arguing. I mean, we didn't create that situation. That was that Bingham has acted as transactional counsel and is now litigation counsel. It's a little unusual for people to do that. But, certainly, it can't be used as a shield for stopping us from getting, clearly, those nonprivileged communications.

But where it does get, I think, a little bit

more complicated deals with the fee agreements. We just don't know enough, is part of the problem. I mean, I think on that particular issue, you know, they should produce what it is that's not privileged.

And, you know, we can take it from there, because we're certainly not saying, you know -- as the example he just gave -- if the only bills that ever go to their clients, you know, we're not asking for those details. I mean, that would be -- you know, that, we believe, would be something that would, you know -- without knowing much more, but at least potentially and quite likely to be privileged, if that, I think -- I hope answers your question.

But I will say -- and I did want to give this sort of an example of what had happened in the past, because Bingham suggested at least at one point in their papers -- and I can't recall if they reiterated this in the supplement, but it's also important for us to know what the terms of these agreements are.

And the example that I'll give was Carter Bryant's agreements. I mean, we obviously had a fair amount of the litigation, as you've seen in the orders, over obtaining the fee agreement information between MGA and Carter Bryant. And at the end of the day, there was a term in there. And it was revealed

by Keker e-mails. And, you know, of course those were found not to be privileged because they pertained to the terms of the fee agreement.

And in there and in these documents it showed that MGA had the unilateral power, any time it wanted for any reason, to stop paying Carter Bryant's fees, which, of course, we thought and certainly argued was highly pertinent to credibility. I mean, here's somebody who has basically this anvil hanging over him. And, of course, if he starts saying things that MGA didn't like, that they were entitled to pull the plug and leave him to essentially to have to pay for the litigation.

So I use that as an example because I don't want -- I don't want it to be lost that -- the particular terms of any conditions, for example, on the payment of fees. I think an extreme example would be if, you know, Mr. Neman was told, "Well, your fees will only be paid so long as you say what we like," there would really be no real argument, I don't think, in saying that that isn't relevant and to bias and credibility.

MR. O'BRIEN: Thank you.

Mr. Gordinier.

MR. GORDINIER: Virtually nothing that Mr. Zeller

I, the undersigned, a Certified Shorthand Reporter of the State of California, do hereby certify:

That the foregoing proceedings were taken before me at the time and place herein set forth; that any witnesses in the foregoing proceedings, prior to testifying, were duly sworn; that a record of the proceedings was made by me using machine shorthand which was thereafter transcribed under my direction; that the foregoing transcript is a true record of the testimony given.

Further, that if the foregoing pertains to the original transcript of a deposition in a Federal Case, before completion of the proceedings, review of the transcript [ ] was [ ] was not requested.

I further certify I am neither financially interested in the action nor a relative or employee of any attorney or party to this action.

IN WITNESS WHEREOF, I have this date subscribed my name.

Dated: AUG 17 2009

THERESA TRANG McDOUGALL
CSR No. 11952