1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
2    John B. Quinn (Bar No. 090378)
     johnquinn@quinnemanuel.com
3    Michael T. Zeller (Bar No. 196417)
     (michaelzeller@quinnemanuel.com)
4    Jon D. Corey (Bar No. 185066)
     (joncorey@quinnemanuel.com)
5  865 South Figueroa Street, 10th Floor
   Los Angeles, California 90017-2543
6  Telephone: (213) 443-3000
   Facsimile: (213) 443-3100

7  Attorneys for Mattel, Inc.

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                    EASTERN DIVISION

11 | CARTER BRYANT, an individual,          | CASE NO. CV 04-9049 SGL (RNBx)
   |                                        | Consolidated with
12 |              Plaintiff,                 | Case No. CV 04-09039
   |                                        | Case No. CV 05-02727
13 |         vs.                            |
14 | MATTEL, INC., a Delaware corporation,  | DISCOVERY MATTER
   |                                        | [To Be Heard by Discovery Master
15 |              Defendant.                 | Robert C. O'Brien Pursuant to Order
   |                                        | of January 6, 2009]
16 |_____|
17 | AND CONSOLIDATED ACTIONS               | [PUBLIC REDACTED] MATTEL,
   |                                        | INC.'S REPLY IN SUPPORT OF
18 |                                        | MOTION FOR LEAVE TO TAKE
   |                                        | ADDITIONAL DEPOSITIONS;
19 |                                        | AND
20 |                                        | MATTEL, INC.'S OPPOSITION TO
   |                                        | THE MGA PARTIES' CROSS-
21 |                                        | MOTION FOR PROTECTION
   |                                        | ORDER ALTERING DEPOSITION
22 |                                        | LIMITS TO SET AN OVERALL
   |                                        | HOURS LIMIT
23 |                                        |
   |                                        | Hearing Date:   TBD
24 |                                        | Time:           TBD
   |                                        | Place:          TBD
25 |                                        |
26 |                                        | **Phase 2**
   |                                        |
27 |                                        | Discovery Cutoff:     Dec. 11, 2009
   |                                        | Pre-trial Conference:  March 1, 2010
28 |                                        | Trial:                 March 23, 2010

07975/3079489.1

1

## **TABLE OF CONTENTS**

2
**Page**

3

4

PRELIMINARY STATEMENT ................................................................................ 1

5

I.    MATTEL IS ENTITLED TO THE REQUESTED ADDITIONAL

6    DEPOSITIONS ...................................................................................... 3

7        A.    Rule 30 Does Not Contain An Exhaustion Requirement ........................ 4

8        B.    Mattel's Motion Does Not Seek Duplicative Discovery ....................... 5

9        C.    Mattel Need Not Separately Justify 7 Hours Per Deponent ................. 10

10        D.    Mattel's Deposition of Witnesses Prior to the Phase 1 Trial is No
            Bar to The Depositions It Now Seeks ................................................... 12

11

12    II.    OMNI DOES NOT HAVE STANDING TO OPPOSE MATTEL'S
        MOTION, AND MATTEL HAD NO OBLIGATION TO MEET AND
        CONFER WITH OMNI ......................................................................... 13

13

14    III.    MGA'S CROSS-MOTION SHOULD BE DENIED ................................... 15

CONCLUSION .................................................................................................... 17

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>TABLE OF AUTHORITIES</u>

2
<u>Page</u>

3
<u>Cases</u>

4
In re Agent Orange Product Liability Litig.,
    104 F.R.D. 559 (D.C.N.Y. 1985) ........................................................................16

5

Am. Society For The Prevention of Cruelty To Animals v. Ringling Bros. and Barnum
6
    & Bailey Circus,
    244 F.R.D. 49 (D.D.C. 2007) ...........................................................................13

7

Archer Daniels Midland Co. v. Aon Risk Servs., Inc.,
8
    187 F.R.D. 578 (D. Minn. 1999) ......................................................................4, 5

9
Atkinson v. Goord,
    2009 WL 890682 (S.D.N.Y. Apr. 2, 2009) ...................................................10

10

11
Authentec, Inc. v. Atrua Techs., Inc.,
    2008 WL 5120767 (N.D. Cal. Dec. 4, 2008)...................................................5

12
In re Beard,
    811 F.2d 818 (4th Cir. 1987) .............................................................................13

13

14
Chicago Dist. Council of Carpenters Pension Fund v. Ortega,
    1991 WL 171379 (N.D. Ill. Aug. 30, 1991) ....................................................16

15
Commodity Futures Trading Com'n v. Commodity Inv. Group, Inc.,
    2005 WL 3030816 (S.D.N.Y. Nov. 10, 2005) ...............................................10

16

17
Cunningham v. Smithkline Beecham,
    2008 WL 1994865 (N.D. Ind. May 6, 2008) ..................................................10

18
Davidson Pipe Co. v. Laventhol & Horwath,
    120 F.R.D. 455, 464 (S.D.N.Y. 1988)..............................................................6

19

20
Del Campo v. Am. Corrective Counseling Servs., Inc.,
    2007 WL 3306496 (N.D. Cal. Nov. 6, 2007)...............................................4, 17

21
Diamond State Ins. Co. v. Rebel Oil Co.,
    157 F.R.D. 691, 697 (D. Nev. 1994) ................................................................6

22

23
DiBartolo v. City of Philadelphia,
    2001 WL 872835 (E.D. Pa. June 26, 2001).................................................3, 4

24
In re Diet Drugs Prods. Liab. Litig.,
    2004 WL 785069 (E.D. Pa. Mar. 24, 2004) ..................................................10

25

26
Dungan v. Academy at Ivy Ridge,
    2009 WL 2176278 (N.D.N.Y. 2009)................................................................13

27
El-Shaddai v. Wheeler,
    2009 WL 301824, at *2 (E.D. Cal. Feb. 5, 2009) ..........................................9

28

-ii-

MATTEL'S REPLY ISO MOTION FOR ADDITIONAL DEPOSITIONS AND OPP. TO CROSS- MOTION

Flanagan v. Wyndham Int'l,. Inc.,
    231 F.R.D. 98 (D.D.C. 2005) ...................................................................... 8

Foreclosure Management Co. v. Asset Management Holdings, LLC,
    2008 WL 3895474 (D. Kan. Aug. 21, 2008) ............................................... 8

Gautreaux v. Pierce,
    743 F.2d 526 (7th Cir. 1984) .................................................................... 13

Horsewood v. Kids "R" Us,
    1998 WL 526589 (D. Kan. Aug. 13, 1998) ........................................... 9, 10

Lurensky v. Wellinghoff,
    2009 WL 1675498 (D.D.C. June 16, 2009) ............................................... 16

Madrid v. Woodford,
    2004 WL 2623924 (N.D. Cal. Nov. 17, 2004) ........................................... 13

Martinez v. California,
    2008 WL 5101359 (E.D. Cal. Dec. 3, 2008) .......................................... 9, 19

Microsoft Corp. v. Hertz,
    2006 WL 1515602 (W.D. Wash. May 24, 2006) ......................................... 8

Perez v. Saks Fifth Ave., Inc.,
    2008 WL 2116600 (S.D. Fla. May 20, 2008) ............................................ 19

State Farm Mut. Auto. Ins. Co. v. CPT Medical Servs., P.C.,
    246 F.R.D. 143 (E.D.N.Y. 2007) .............................................................. 13

U.S. ex rel Fago v. M & T. Mort. Corp.,
    235 F.R.D. 11, 24 (D.D.C. 2006) ................................................................ 6

U.S. v. S. Florida Water Management Dist.,
    28 F.3d 1563 (11th Cir. 1994) ................................................................... 13

Vasquez v. Summit Women's Ctr., Inc.,
    2001 WL 34150397 (D. Conn. 2001) ........................................................ 13

Viacom Int'l Inc. v. YouTube, Inc.,
    2008 WL 3876142, at *3 (N.D. Cal. Nov. 6, 2007) .................................... 6

Visteon Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh,
    2008 WL 251985 (E.D. Mich. Jan. 30, 2008) ............................................. 3

**Statutes**

Fed. R. Civ. P. 26(b)(2) .......................................... 8, 9, 10, 15, 16, 17, 19

Fed. R. Civ. P. 26(b)(2)(C)(iii) ................................................................... 9

Fed. R. Civ. P. 30 ................................................................................ 3, 10

Fed. R. Civ. P. 30(a) ................................................................................ 15

-iii-

MATTEL'S REPLY ISO MOTION FOR ADDITIONAL DEPOSITIONS AND OPP. TO CROSS- MOTION

Fed. R. Civ. P. 30(a)(2)................................................................9, 15, 19

Fed. R. Civ. P. 30(d) ...................................................................15, 17

Fed.R.Civ.P. 30(d)(1)........................................................................17

## **Other Authorities**

Ad. Comm. Notes, Fed. R. Civ. P. 30 (1993)...........................................16

Wright & Miller, 8 Federal Practice and Procedure § 2035 (1994) ...........................16

## **Preliminary Statement**

MGA has no answer to Mattel's clear showing of good cause for taking each deposition it seeks.  In its moving papers, Mattel explained -- witness by witness -- why good cause exists to take each deposition at issue.  MGA simply ignores this showing.  MGA does not argue that the witnesses are not knowledgeable (indeed, uniquely so) or that the identified deposition topics are irrelevant (they are all clearly proper).  MGA does not contest the substance of good cause.

Instead, MGA's primary opposition is the now-familiar refrain that Mattel (facing a looming discovery deadline and a vigorous, to put it nicely, set of opponents) should be required to exhaust limited discovery that everyone knows will not be adequate (even MGA has conceded this) before seeking leave to take more.

That is wrong as a matter of law. The Federal Rules do not require exhaustion of inadequate discovery limits, and courts, including this one, have refused to impose such a requirement.  Where it is plain that the ten deposition limit cannot stand, there is no reason to wait until ten depositions have been conducted to seek more, which can only cause delay.  Mattel's inability to take more than one deposition since the stay was lifted eight months ago (another is being taken today, after three orders compelling it) is a direct result of coordinated efforts by MGA and its affiliates to obstruct discovery. Because MGA has refused to agree to any extension of the looming fact discovery cutoff, Mattel does not have the luxury of time, nor would it be required to wait longer even if it did.

MGA argues the concededly relevant discovery Mattel seeks will be duplicative and burdensome. But discovery into an issue does not become improperly "duplicative" whenever one witness is asked about it.  MGA urges, for example, that Mattel should simply "believe" Mr. Neman (the one witness who has been deposed this year) "that MGA and Isaac Larian had nothing to do with Lexington," rather than continue to pursue its "allegations" to the contrary. (Opp. at 15.) Allegations are meant to be pursued; that is the whole point of discovery.  MGA may believe, as its counsel

MATTEL'S REPLY ISO MOTION FOR ADDITIONAL DEPOSITIONS AND OPP. TO CROSS- MOTION

1 urged just yesterday to avoid deposition discovery, that, "[p]ut simply, this RICO thing

2 is a big red herring,"[1] but that cannot deprive Mattel of discovery to which it is entitled.

3 Mattel has alleged a complex scheme characterized by concealment. That an MGA

4 witness has denied some of Mattel's allegations, far from showing that no more

5 discovery is needed, shows why more discovery is required. Concealment, by its

6 nature, is difficult to uncover, and inconsistencies in the testimony of multiple

7 witnesses on the *same* general issue is often what proves it.[2]

8             As for MGA's claim of undue burden, MGA has not even attempted to

9 actually establish it, nor can it. MGA itself has proclaimed, including to obtain

10 discovery, that both its claims and Mattel's are worth "billions" or "multi-billion[s]".[3]

11 The ten deposition limit applies in an average case; this is no average case. That is

12 why, prior to the Phase 1 trial, Judge Larson permitted Mattel (upon making a

13 comparable showing to that made here) to take several dozen depositions. The parties

14 then called some 43 witnesses (excluding experts) at trial, and had at least dozens more

15 on their witness lists. MGA concedes that the Discovery Master "must" grant leave to

16 take more depositions where the required showing is made under the Rules. The

17 showing having been made, leave should be granted here -- particularly since much of

18 the discovery Mattel seeks by this motion was necessitated by Larian's and MGA's

19 own post-verdict "course of conduct" with related parties "designed to frustrate the

20 Court's Orders" and to injure Mattel.[4]

21

22 _____

23   [1]   August 27, 2009 Hearing Tr., at 15:13-14, Exhibit 9 to Declaration of Michael T. Zeller ("Zeller Decl.") filed concurrently herewith.

24   [2]   There are numerous examples of this from Phase 1.

25

26

27   [3]   See August 27, Hearing Tr., at 69:13-14, 71:15-16, Zeller Decl. Exh. 8.

28   [4]   April 27 Order, at 17, Watson Decl. Exh. 30.

07975/3079489.1

1    In its cross-motion, MGA proposes that the numerical limits on
2 depositions be lifted and that instead each side be allotted 70 hours of deposition time.
3 It has not established "good cause" to adopt its proposal -- the only authority MGA
4 offers is a conclusory declaration by its counsel -- and the proposal is inconsistent with
5 the Federal Rules.  A party seeking to take more than ten depositions or a deposition in
6 excess of 7 hours must show good cause as to each additional deposition sought.
7 MGA's proposal, which would enable it to engage in fishing expeditions with as many
8 witnesses as it chooses within the allotted total hours limit, violates that requirement
9 and invites abuse.  To take more than ten depositions (as it now requests), the Rules
10 require MGA to make a showing of "good cause," which Mattel has done but MGA has
11 not even attempted to do.

12    Mattel's motion should be granted, and MGA's cross-motion should be
13 denied.

14                              **Argument**

15 I.    **MATTEL IS ENTITLED TO THE REQUESTED ADDITIONAL**
16       **DEPOSITIONS**

17    In its Motion, Mattel made a particularized showing of good cause by
18 providing detailed information about each person or entity it seeks to depose and the
19 relevant, potentially unique knowledge they possess.[5]  MGA makes no effort to rebut
20 Mattel's showing.  The arguments MGA does make clearly fail.

21

22

23    [5] See Mot. at 10-26; see also January 7, 2008 Order, at 2-3, Watson Decl. Exh. 2; Visteon
24 Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 2008 WL 251985, at *2 (E.D. Mich. Jan. 30,
   2008) (finding defendant "made a particularized showing sufficient to justify an expansion of
25 the deposition limit" by explaining import of deposition); DiBartolo v. City of Philadelphia,
   2001 WL 872835, at *1-2 (E.D. Pa. June 26, 2001) (granting motion to take additional
26 depositions in part because, by listing each deponent and providing a paragraph explaining
   their knowledge and its relevance to the case, plaintiff had "adequately explain[ed] his need to
27 take several of the additional depositions" and made clear that he had "good-faith reasons" for
28 requested depositions).

1    **A.    Rule 30 Does Not Contain An Exhaustion Requirement**

2    MGA urges that "Rule 30 has an exhaustion requirement" (Opp. at 15), but

3    cites nothing in the <u>Rule</u> as support.  The <u>Rules</u> contain no such requirement: "it would

4    be prejudicial to require [parties] to choose the ten depositions to take before they know

5    whether they will be granted more." <u>Del Campo v. Am. Corrective Counseling Servs.,</u>

6    <u>Inc.,</u> 2007 WL 3306496, at *6 (N.D. Cal. Nov. 6, 2007).  Indeed, MGA's argument is

7    flatly inconsistent with Judge Larson's January 7, 2008 Order granting Mattel's motion

8    for leave to take additional depositions; even though Mattel had not "exhausted" the

9    depositions it had been allotted when that motion was made and adjudicated, the Court

10   nevertheless granted leave to take each of the specified additional depositions since

11   Mattel showed good cause.[6]

12   MGA claims it would be easier to assess the merits of Mattel's motion if

13   Mattel had taken the nine depositions it has already noticed.  It is easy enough to assess

14   the merits of the motion now.  The standards governing leave for additional depositions

15   are clear, and are clearly satisfied -- they will be no more (or less) clearly satisfied once

16   8 more depositions are taken.  Moreover, accepting MGA's assertions would reward

17   defendants for their delays and obstruction.  Consistent with its refusals to produce any

18   witnesses in Phase 1 without Court Order, MGA has not voluntarily produced a single

19   witness for deposition since the stay was lifted, all part of an evident effort to "run out

20   the clock."  Requesting leave at this point is far from premature, especially in light of

21   MGA's refusal to agree to modify the scheduling order.[7]

22

23   _____

24   [6]  <u>See</u> Mattel's Motion For Leave To take Additional Discovery, November 9, 2007, at 5,
25   Watson Decl. Exh. 3 (Mattel had taken 18 of its allotted 24 depositions); <u>see also</u> January 7,
     2008 Order at 3, Watson Decl. Exh. 2 (granting Mattel's requested additional depositions in
26   their entirety).
27   [7]  <u>See</u> DiBartolo v. City of Philadelphia, 2001 WL 872835, at *2 (E.D. Pa. June 26, 2001)
     ("Moreover, I do not agree with Defendants that DiBartolo's motion is still premature because
28   he has one more deposition he may take without leave of court. . . . Discovery is now at a
           (footnote continued)

1    MGA cites Archer Daniels Midland Co. v. Aon Risk Servs., Inc., 187
2  F.R.D. 578, 587 (D. Minn. 1999), to support its claimed exhaustion requirement.  As
3  the Del Campo court pointed out, however, "the [Archer] court found no justification
4  for additional discovery had yet been shown."  Del Campo, 2007 WL 3306496, at *6.
5  Archer simply stands for the unremarkable proposition that a party seeking additional
6  depositions must show "good cause," which Mattel has done.

7    Authentec, Inc. v. Atrua Techs., Inc., 2008 WL 5120767 (N.D. Cal. Dec.
8  4, 2008), also relied upon by MGA, stands for the same proposition.  The court there
9  rejected leave because the movant "failed to make a particularized showing in its
10  opening papers as to why additional depositions are necessary" and because the case
11  was not complex but "run-of-the-mill," id. at *2, factors which clearly are inapposite
12  here.  That the movant had "not taken a single deposition to date" was just further
13  evidence that the movant did not know "what information it needs but cannot obtain
14  from its 10 permitted depositions."  Id. at *2.  Neither this case nor any other cited by
15  MGA suggests that where, as here, good cause to take additional depositions has been
16  shown, leave should nevertheless be denied pending "exhaustion."

17    **B.    Mattel's Motion Does Not Seek Duplicative Discovery**

18    MGA insists that Mattel seeks "duplicative" testimony.  That is not
19  accurate; all the individuals and entities Mattel seeks to depose have unique
20  information.  Moreover, under the law, Mattel is entitled to take the depositions it seeks
21  even to the extent there is some overlap in the topics at issue.

22    MGA appears to contend that once one witness is questioned on a topic, all
23  other witnesses cannot be; the first should simply be "believed."  (Opp. at 15.)  The
24  truth is revealed by questioning different witnesses on similar topics; each witness
25  identified by Mattel is likely to have its own unique knowledge based on its own unique

26

27  _____

28  stage in which DiBartolo can reasonably know whether additional depositions are required, and he has convinced the Court that these three are.").

MATTEL'S REPLY ISO MOTION FOR ADDITIONAL DEPOSITIONS AND OPP. TO CROSS- MOTION

1  role,[8] and lies are ferreted out by obtaining testimony from multiple actors.  Rejecting

2  MGA's argument, numerous courts have recognized that depositions are not

3  impermissibly duplicative merely because multiple witnesses are questioned on the

4  same topics.  See, e.g., Davidson Pipe Co. v. Laventhol and Horwath, 120 F.R.D. 455,

5  464 (S.D.N.Y. 1988) (noting "there is no guarantee that the information available to or

6  recalled by that one witness is coextensive with the potential testimony of other

7  witnesses" and rejecting argument that "further discovery would be duplicative because

8  one witness has already testified fully" on the topic); U.S. ex rel Fago v. M & T Mort.

9  Corp., 235 F.R.D. 11, 24 (D.D.C. 2006) (finding that "[a]dditional corporate testimony .

10 . . would not be duplicative of previous discovery" because "a document can be given

11 differing significance and meaning by different witnesses"); Diamond State Ins. Co. v.

12 Rebel Oil Co., 157 F.R.D. 691, 697 (D. Nev. 1994) (recognizing that although the

13 requests were "duplicative in part," there were "directed toward two separate business

14 entities, and the documents "actually maintained in the files of each entities may not be

15 identical"); Viacom Int'l Inc. v. YouTube, Inc., 2008 WL 3876142, at *3 (N.D. Cal.

16 Aug. 18, 2008) (requiring third party to produce documents "likely to be in the

17 possession of defendants" because defendants' "poor initial record keeping raise[d]

18 questions about the completeness of the files").

19        MGA argues that the depositions "appear likely to be duplicative or

20 cumulative" because "[n]early all of them concern the Omni transaction funding MGA,

21 and all of them appear designed to simply establish the same facts over and over

22 regarding that transaction." (MGA's Opp. at 15.)  Mattel did not file its TAAC until

23 May 2009; every new allegation contained therein has not been the subject of any

24 deposition testimony except as covered in the deposition of Mr. Neman on August 14,

25 2009.  The individuals and entities Mattel now seeks leave to depose regarding the

26 Omni-Wachovia transaction all have unique knowledge about their own activities.  For

27

28    [8]  See Mot. at 10-26.

1  example, Mr. Carson, the attorney who represented Omni in the negotiations and
2  execution of this transaction, has different knowledge regarding this transaction than
3  the person most knowledgeable at Wachovia (who is also necessary to authenticate the
4  documents produced by Wachovia).  Witnesses from the Bank of Ireland, Cerebus, and
5  Silverpoint are necessary to rebut MGA's claim that the Omni-Wachovia transaction
6  was arm's-length because it allegedly approached each of them regarding the purchase
7  of the Wachovia debt prior to Omni; they can provide unique, first-hand information
8  that the Omni investors, for example, cannot.  And, the relationship between each Omni
9  investor and Mr. Larian, the circumstances under which each was approached to invest,
10  the source of funds each used to make the investment and other circumstances
11  surrounding the investment are all relevant to Mattel's contention that these investors
12  were fronts for Mr. Larian.

13       The one deposition Mattel has obtained this year, of Mr. Neman, is
14  illustrative.  ██████████████████████████████████████████████████
15  ████████████████████████████████  This is precisely the kind of
16  testimony the jury should be able to consider -- as to each investor -- in determining
17  whether the Omni transaction is the sham that Mattel has alleged.  ████████████
18  ████████████████████████████████████████████████████████████████
19  ████████████████████████████████████████████████████████████████
20  ████████████████████████████  MGA cites no authority to justify denying Mattel
21  relevant discovery merely because Larian used a web of entities and confederates to
22  conduct his RICO enterprise and has gone to tremendous lengths to conceal his
23  wrongdoing.[10]
24
25  ─────────────────
      [9]  See Mattel's Opposition to Neil Kadisha's *Ex Parte* Application For Protective Order,
26  Zeller Decl. Exh. 2.
      [10]  ████████████████████████████████████████████████████████
27  ████████████████████████████████████████████████████████████████
28  (footnote continued)

MATTEL'S REPLY ISO MOTION FOR ADDITIONAL DEPOSITIONS AND OPP. TO CROSS- MOTION

1   Further, many people in Mattel's proposed list have knowledge of Phase 2
2   issues other than the Omni-Wachovia transaction,[11] and MGA offers no argument that
3   they are not proper deponents.  For example, the Court has already granted Mattel leave
4   to depose Pablo Vargas, Mariana Trueba, Janine Brisbois, and Shirin Salemnia.[12]
5   Susan Kim, as explained, has direct knowledge of Mr. Contrera's trade secret theft,
6   which is unique and has not been obtained from any other witness.  MGA Canada, an
7   MGA subsidiary directly implicated in Mattel's trade secret claims from whom Mattel
8   has not received a single document nor from whom Mattel has deposed a single
9   witness, is also obviously a proper deponent.[13]

10
11
12
13
14
15
16
17
18
19

20   [11]   See Motion at 16-18, 19-21, 23-26 (explaining the relevance of Susan Kim, Brian
     Wing, John Woolard, IGWT Group, IGWT 826 Investments, Patrick Ma, MGA Canada,
21   Pablo Vargas, Mariana Trueba, Janine Brisbois, and Shirin Salemnia).
22   [12]   See January 7, 2008 Order at 3, Watson Decl. Exh. 2; see also Mattel's Motion For
     Leave To take Additional Discovery, November 9, 2007, at 5, Watson Decl. Exh. 3.
23   [13]   MGA asserts that Mattel's proposed list contains duplication because a handful of the
     proposed deponents are "associated with the same entities" (Opp. at 15), but that is immaterial
24   -- witnesses have repeatedly been deposed in this case both as individuals and entity
     representatives.  For example, Paula Garcia, Kerri Brode, Richard De Anda, and Liliana
25   Martinez, were all deposed in both capacities. Indeed, Judge Larson granted Mattel leave to
     depose over 40 additional fact witnesses regarding Phase 1 issues, many of which were
26   "associated with the same entities" who also were deposed because Mattel had "shown good
     cause" and met the requisite standard of Rule 26(b)(2). January 7, 2008 Order, at 2-3, Watson
27   Decl. Exh. 2 (including Sarah Halpern, Margaret Leahy, Jesse Ramirez, and Sandra Bilotto).
28

07975/3079489.1

1    Nor are the depositions sought duplicative of written discovery provided,
2  in no small part because MGA continues to defy Orders and evade Phase 2 discovery.
3  In any case, courts recognize that written discovery is no substitute for depositions.  See
4  Flanagan v. Wyndham Int'l,. Inc., 231 F.R.D. 98, 104 (D.D.C. 2005) (written
5  discovery, unlike the live testimony provided by depositions "eschews the opportunity
6  for opposing counsel to probe the veracity and contours of the statements and denie[s]
7  the opportunity to ask probative follow-up questions") (citation omitted). "Deposition
8  testimony permits examination and cross-examination of a live witness by counsel,
9  where there is no opportunity to reflect and carefully shape the information given." Id.
10    As Mattel has explained, leave must be granted under the Rules where
11  consistent with Rule 26(b)(2).  Mot. at 8; see, e.g., Foreclosure Management Co. v.
12  Asset Management Holdings, LLC, 2008 WL 3895474, *3 (D. Kan. Aug. 21, 2008).
13  There is no per se rule that discovery that is "redundant" is therefore, necessarily,
14  "impermissible."  Microsoft Corp. v. Hertz, 2006 WL 1515602, at *2 (W.D. Wash.
15  May 24, 2006).  Instead, the familiar factors (importance of the issues, amount in
16  controversy, etc.) must all be assessed while being "careful not to deprive a party of
17  discovery that is reasonably necessary to afford a fair opportunity to develop and
18  prepare the case" and with an eye towards "balancing the benefit of the proposed
19  discovery with its likely burdens." Foreclosure Management, 2008 WL 3895474, *3.
20    Here, given the stakes of the case, the importance of the issues and the
21  remaining factors, the benefits of the depositions sought clearly outweigh their burdens.
22  MGA states that the depositions Mattel seeks are "plainly unreasonable," but it does not
23  explain how so, excepting a conclusory claim that they will "unreasonably cost MGA
24  time, money and investors." (Opp. at 17.)  If MGA seeks to show that the "burden or
25  expense of the proposed discovery outweighs its likely benefit, considering the needs of
26  the case, the amount in controversy, the parties' resources, the importance of the issues
27
28

MATTEL'S REPLY ISO MOTION FOR ADDITIONAL DEPOSITIONS AND OPP. TO CROSS- MOTION

1    at stake in the action, and the importance of the discovery in resolving the issue[,]"[14] it

2    must provide some "evidence with its opposition to support its claim of burden."[15]  As

3    the Discovery Master has stated, "federal courts reject claims of burdensomeness which

4    are not supported by a specific, detailed showing".[16]  Judge Larson's July 9, 2009 Order

5    so holds as well.  "Mere assertions by plaintiff of harassment and intimidation provide

6    no evidence of undue burden."  Horsewood, 1998 WL 526589 at *4.  Especially here,

7    where MGA has itself asserted that its claims are worth "billions" and that Mattel's are

8    worth "multi-billions," MGA's burden to establish undue burden is not met.[17]

9              **C.    Mattel Need Not Separately Justify 7 Hours Per Deponent**

10             Mattel has not sought leave to depose an infinite number of witnesses

11   without a further showing of good cause, as MGA has.  Rather, Mattel seeks leave to

12

13       [14]   Fed. R. Civ. P. 26(b)(2)(C)(iii).
         [15]   Phase 2 Discovery Matter Order No. 22, dated April 28, 2009, at 11, Zeller Decl. 4.
14   Exh. (evaluating burden claim in opposing discovery).
         [16]   Id. (citing El-Shaddai v. Wheeler, 2009 WL 301824, at *2 (E.D. Cal. Feb. 5, 2009).
15       [17]   See Nightline transcript, Watson Decl. Exh. 61; see also August 27, 2009 Hearing Tr.
16   at 69:13-14, 71:15-16, Zeller Decl. Exh. 8.  MGA's past conduct demonstrates why additional
     depositions are needed.  In Phase 1, Mattel sought to introduce complaints filed by MGA in
17   Hong Kong alleging infringement of the Bratz dolls.  MGA's in-house counsel refused to
18   authenticate these complaints, requiring Mattel to fly in Hong Kong residents sued by MGA
     for the sole purpose of authenticating these pleadings in order to be properly introduced into
19   evidence. See August 5, 2008 Trial Tr. at 5866:5-8, Exhibit 1 to the Declaration of Michael T.
20   Zeller ("Zeller Decl.") filed concurrently herewith; see also id. at 5864:23-5865:1; id. at
     5907:19-23; August 5, 2008 Trial Tr. at 5943:14-19.   The Court acknowledged the
21   impropriety of MGA's conduct.  See id. at 5953:8-12 (the Court) (" Because quite frankly, I
22   think it makes MGA look terrible what's going on right here this afternoon before this jury,
     before lawyers from MGA, general counsel from MGA stand up here and not recognize what
23   it was that they were supervising").  An entire day of trial was spent examining these two
24   individuals.  Precisely because of MGA's past conduct, there is all the more reason to allow
     Mattel to take additional depositions, eliminating unnecessary delay and expense at trial
25   authenticating relevant documents.  See Martinez v. California, 2008 WL 5101359, at *1-2
26   (E.D. Cal. Dec. 3, 2008) (granting leave to depose 20 additional witnesses due in part because
     granting leave "will prevent delays at both the dispositive motion stage and trial"); see also
27   Perez v. Saks Fifth Ave., Inc., 2008 WL 2116600, at *2 (S.D. Fla. May 20, 2008) (granting
28   leave to take additional depositions "for the purpose of authenticating documents relevant to
     these proceedings").

07975/3079489.1

1  depose the people it currently has good cause to depose.  That leave must be granted.

2  <u>See</u> <u>Rule</u> 30(a)(2) ("[T]he court must grant leave to the extent consistent with Rule

3  26(b)(2).").

4          MGA argues that Mattel has not "established good cause as to why it must

5  conduct full day depositions of each of its proposed deponents." (Opp. at 16.)  MGA

6  cites no authority for such a requirement; in fact, there is extensive authority that Mattel

7  is *not* required to make such a showing.  <u>See, e.g.</u>, <u>Martinez v. California</u>, 2008 WL

8  5101359, at *3 (E.D. Cal. Dec. 3, 2008) (granting motion for leave to take additional

9  depositions without any discussion of a requirement to show good cause as to the

10 duration of the depositions); <u>Atkinson v. Goord</u>, 2009 WL 890682, at *4 (S.D.N.Y.

11 Apr. 2, 2009) (same); <u>Cunningham v. Smithkline Beecham</u>, 2008 WL 1994865, at *2

12 (N.D. Ind. May 6, 2008) (same); <u>Commodity Futures Trading Com'n v. Commodity</u>

13 <u>Inv. Group, Inc.</u>, 2005 WL 3030816, at *2 (S.D.N.Y. Nov. 10, 2005) (same).

14 Requesting leave for additional depositions does not implicate the seven hour default

15 contained in the <u>Rules</u>; these two limits are distinct.[18]  Indeed, in granting Mattel leave

16 previously, Judge Larson did not require Mattel to justify the length of depositions.[19]

17 Under the law, *MGA* bears the burden of proving why a deposition should be limited to

18 less than seven hours -- a burden it has not even attempted to meet.  <u>Horsewood v. Kids</u>

19 <u>"R" Us</u>, 1998 WL 526589, 4 (D. Kan. Aug. 13, 1998) (denying request to limit

20 deposition to six hours because movant "offers no evidence, by affidavit, transcript, or

21 otherwise, to substantiate these assertions" and "provides no details as to the

22 harassment or intimidation she would face").

23 _____

24 [18] <u>See, e.g.</u>, <u>In re Diet Drugs Prods. Liab. Litig.</u>, 2004 WL 785069, 6 (E.D. Pa. Mar. 24,

25 2004) ("Pursuant to Federal Rule of Civil Procedure 30, absent a written stipulation of the parties, a party must obtain leave of Court, which shall be granted to the extent consistent with

26 the principles stated in Rule 26(b)(2): (1) to notice more than ten (10) fact depositions; (2) to extend a deposition beyond one day of seven (7) hours; *or* (3) to examine a person who

27 already has been deposed in the case.") (emphasis added).

28 [19] <u>See</u> January 7, 2008 Order at 2-3, Watson Decl. Exh 2.

-11-

1

2

**D.**   **Mattel's Deposition of Witnesses Prior to the Phase 1 Trial is No Bar to The Depositions It Now Seeks**

3   Last, MGA claims that Mattel's prior depositions prevent the ones Mattel

4   now seeks. This is simply wrong. First, none of these depositions could or did address

5   much of the conduct alleged by Mattel in the TAAC, which conduct had not yet

6   occurred; for example, Larian created many of the entities used to fraudulently transfer

7   assets in August 2008, after the prior depositions were taken. Second, to the extent

8   some witnesses may previously have been deposed about some Phase 2 issues (which is

9   all MGA's page-long chart purports to demonstrate), that is immaterial -- these were,

10  except where noted by Mattel previously, Phase 1 depositions of Phase 1 witnesses;

11  indeed, all but one individual listed in MGA's chart was on the Joint Phase One

12  Witness List, demonstrating their Phase 1 relevance.[20]

13  MGA also argues that Judge Larson imposed a "delimiting cap" at the

14  February 2007 scheduling conference, suggesting the Discovery Master should do the

15  same. While it is true that Judge Larson initially limited fact depositions to 24 per

16  side,[21] the Court also "invite[d] counsel to submit a motion to expand" should

17  additional depositions become necessary[22] and later *granted* Mattel's request for

18  additional depositions in its entirety.[23] This supports, not refutes, Mattel's motion.

19

20

21

22

_____

23  [20]   See Joint Phase One Witness List, Zeller Decl. Exh. 5. Many of these witnesses also

24  disavowed knowledge of Phase 2 issues and, in any event, they are not the witnesses for

25  whom leave is sought here.

[21]   See February 12, 2007 Scheduling Conf. Hearing Tr., at 22:12-15, 24:5-7, Watson

26  Decl. Exh. 56.

[22]   Id.

27  [23]   See January 7, 2008 Order at 3, Watson Decl. Exh. 2 (granting Mattel's motion to

28  depose approximately 49 additional witnesses).

## II. OMNI DOES NOT HAVE STANDING TO OPPOSE MATTEL'S MOTION, AND MATTEL HAD NO OBLIGATION TO MEET AND CONFER WITH OMNI

On February 3, 2009, Omni applied *ex parte* for leave to intervene for a "limited purpose."[24]  Omni's motion highlighted that it only intended to intervene for the limited purpose of "challenging the appointment of a receiver[.]"[25]  Omni urged in its papers that Mattel's opposition relied upon "inapplicable cases wherein a potential creditor is seeking to intervene in a lawsuit *for all purposes,*" while Omni was "seeking to intervene for a *limited purpose* in connection with Mattel's request for the appointment of a receiver so it can protect its position as MGA's largest secured creditor."[26]  The Court granted Omni's motion only in part, only "to the extent it seeks intervention to address the potential receivership issues[.]"[27]

Mattel's Motion for leave to take depositions in excess of the ten allotted by the Federal Rules is unrelated to the receivership.  Thus, Omni lacks standing to oppose it.  See Madrid v. Woodford, 2004 WL 2623924, at *12 n.9 (N.D. Cal. Nov. 17, 2004) ("The very limited intervention contemplated by the Court, however, would not permit the CCPOA to be a party to the general, ongoing remedial process in this case."); U.S. v. S. Florida Water Management Dist., 28 F.3d 1563, 1567 n.1 (11th Cir. 1994) ("The Intervenors lack standing to raise these issues because they are outside of

---

[24]  Omni's *Ex Parte* Application for Leave to Intervene For Limited Purpose, dated Feb 3, 2009, Watson Decl. Exh. 29.

[25]  Omni's *Ex Parte* Application for Leave to Intervene For Limited Purpose, dated Feb 3, 2009, at 3, Watson Decl. Exh. 29 ("Omni respectfully requests that the Court grant it leave to intervene in this action for the purposes of challenging the appointment of a receiver and related issues that could adversely affect Omni's security interests."); see also id. at 1 ("Because the appointment of a receiver could significantly and irreparably harm Omni's interests as a senior secured creditor of MGA, Omni hereby seeks leave of Court to intervene in this action for this limited purpose.").

[26]  Omni's Reply In Support Of *Ex Parte* Application For Leave to Intervene, dated February 9, 2009, at 2, 7 (emphasis in original), Zeller Decl. Exh. 6.

[27]  April 27, Order at 14, Watson Decl. Exh. 30.

1   the limited scope of the intervention that was permitted by this Court."); In re Beard,

2   811 F.2d 818, 829 (4th Cir. 1987) ("Petitioners complain because they were not advised

3   of this conversation with counsel. Once again," petitioners cannot complain about such

4   a conversation because they had intervened in the [] litigation for a very limited

5   purpose"); Gautreaux v. Pierce, 743 F.2d 526, 530 (7th Cir. 1984) ("The district court

6   was correct in denying the Intervenors' motion on the basis that it was beyond the scope

7   of the original limited intervention.").[28]

8        Mattel is asking for leave to take more than ten depositions regarding

9   Phase 2 of this litigation.  The presently-named defendants are the only people with

10  standing to oppose this request.[29]

11

12

13   _____

14   [28]   Mattel has requested leave to amend its answer to name Omni 808 as a defendant, but
      this motion has not yet been granted.  Notably, Omni lacks standing to oppose even that
15   motion.  See, e.g., State Farm Mut. Auto. Ins. Co. v. CPT Medical Servs., P.C., 246 F.R.D.
      143, 146 n.1(E.D.N.Y. 2007) (proposed new defendants who joined in defendants' opposition
16   to motion for leave to amend "do not have standing to oppose the motion for leave to amend
      because they are not yet named parties to this action"); Am. Society For The Prevention of
17   Cruelty To Animals v. Ringling Bros. and Barnum & Bailey Circus, 244 F.R.D. 49, 53-
18   54 (D.D.C. 2007) (granting plaintiff's motion to strike non-party's response to motion for
      leave to amend due to lack of standing); Dungan v. Academy at Ivy Ridge, 2009 WL
19   2176278, at *2 (N.D.N.Y. 2009) ("As non-parties, [they] do not have standing to oppose the
      motion for leave to amend.  Accordingly, their papers in opposition to the motion have been
20   disregarded."); Vasquez v. Summit Women's Ctr., Inc., 2001 WL 34150397, at *1 n.1 (D.
21   Conn. 2001) (same).
      [29]   The Discovery Master Order, which Omni mischaracterizes to suggest it requires
22   Mattel to meet and confer with Omni on all issues simply because the Order also binds third
      parties, requires no such thing by its plain terms.  Nor, of course, does the Discovery Master's
23   authority include granting or denying parties leave to intervene in this litigation or alter Judge
24   Larson's Order allowing Omni leave to intervene for a limited purpose wholly unrelated to this
      motion.  Notably, MGA, in its certificate of compliance and the meet and confer sections of its
25   Cross-Motion, makes no reference to meeting and conferring with Omni.  And MGA's
26   counsel has taken the position that it has no obligation to do so in correspondence. ████████

27   ████████████████████████████████████████████████████████████████

28   ███████████████████████████

1    Omni also ignores that meeting and conferring with it could not have

2  avoided this motion or had any impact on it.  MGA made clear that it would not agree

3  to a single one of the depositions for which leave is sought here. Resort to the

4  Discovery Master would have been necessary regardless of Omni's position on the

5  subject.[30]

6  **III.    MGA'S CROSS-MOTION SHOULD BE DENIED**

7    MGA urges that a total hours-based deposition limit will be efficient and

8  fair.  It would be neither.  The proposal would permit harassment of innumerable

9  witnesses without any showing of good cause. The Rules limit depositions by number,

10  and require a showing of cause to exceed that number, to avoid precisely the abuses and

11  fishing expeditions MGA's proposal invites.

12    The Federal Rules contain two default limits with respect to depositions:

13  ten fact witnesses and seven-hour depositions.  See Rule 30(a), (d).  To depart from

14  either of these defaults, a party must meet the requirements of Rule 26(b)(2) and show

15  good cause.  See Rule 30(a).  To obtain the relief it seeks, MGA was required to make a

16  particularized showing of good cause as to why (1) it should be allowed to depose an

17  indefinite amount of unknown individuals and (2) Mattel's requested depositions

18  should be limited in time.  It has done neither.

19    First, MGA simply ignores the problems inherent in its proposal.  Were it

20  adopted, MGA could choose to depose 70 witnesses for one hour, 60 depositions

21  beyond those allowed by the Rules, without *any* particularized showing or justification

22  of the propriety of such depositions.  MGA spends pages making *ad hominem* attacks

23  against Mattel and its purported propensity for discovery abuses (attacks that were

24  rejected in Phase 1), yet its own proposal would permit MGA to engage in unrestrained

25  _____

26  [30]    Omni offers no substantive response to Mattel's Motion, but asserts that it has

27  "multiple other issues with Mattel's motion" and it is "premature and unnecessary to raise
these issues at this time[.]"  (Omni's Opp. at 1.)  Having failed to even assert its objections,

28  Omni has waived them even if it had standing to object.

1    harassment.  Mattel has justified every single person it seeks to depose, as required.

2    MGA seeks a blank check to depose as many unknown people as MGA can squeeze

3    into 70 hours without any showing of cause.[31]  The <u>Rules</u> were amended "to assure

4    judicial review under the standards stated in Rule 26(b)(2) before any side will be

5    allowed to take more than ten depositions in a case without agreement of the other

6    parties."  Ad. Comm. Notes, <u>Fed. R. Civ. P.</u> 30 (1993).  MGA's proposal to do the

7    opposite is impermissible.

8           As to the requested protective order limiting Mattel's per-deposition time,

9    MGA has not remotely met the requirements.  "It is axiomatic that a protective order

10   may only be issued or maintained upon a showing of 'good cause.'"  <u>In re Agent</u>

11   <u>Orange Product Liability Litig.</u>, 104 F.R.D. 559, 571 (D.C.N.Y. 1985) (citing

12   Fed.R.Civ.P. 26(c)).  As the moving party, MGA bears the burden of showing good

13   cause.  <u>See</u> <u>Lurensky v. Wellinghoff</u>, 2009 WL 1675498, at *2 (D.D.C. June 16, 2009)

14   (denying motion for protective order limiting discovery because motion "contains no

15   specific facts" showing why protective order was necessary); <u>Chicago Dist. Council of</u>

16   <u>Carpenters Pension Fund v. Ortega</u>, 1991 WL 171379, at *2 (N.D. Ill. Aug. 30, 1991)

17   ("Relief from otherwise relevant discovery is granted only upon a showing of 'good

18   cause' for such relief" and such showing "may not be met by bare allegations of

19   irrelevance or unnecessary burden."); Wright & Miller, 8 <u>Federal Practice and</u>

20   <u>Procedure</u> § 2035 (1994) ("The courts have insisted on a particular and specific

21   demonstration of fact, as distinguished from stereotyped and conclusory allegations.").

22   MGA has provided nothing remotely approaching good cause.

23          The only authority for MGA's proposal is an inadmissible paragraph in

24   Ms. Hurst's declaration stating she "believe[s] an hours-based limit is also a tool

25

26

27   [31]   MGA has made clear it will be taking more than ten depositions.  <u>See</u> MGA's Opp. at

28   18 ("it is likely both sides will require more than ten depositions").

1  regularly used in complex intellectual property litigation." (Hurst Decl. ¶ 8.)[32]  Ms.

2  Hurst's declaration also states that there "appear to be no published case on the subject."

3  (Id.)  Mattel has located a case on the subject.  There, an identical proposal was made

4  *and rejected*.  See Del Campo v. Am. Corrective Counseling Servs., Inc., 2007 WL

5  3306496, at *6 (N.D. Cal. Nov. 6, 2007) (rejecting proposal limiting depositions to 70

6  hours).  It should be rejected here as well.

7                                         **Conclusion**

8            For the foregoing reasons, Mattel respectfully requests that the Court grant

9  Mattel's Motion for Leave to Take Additional Depositions and Deny MGA's Cross-

10  Motion.

11

12  DATED:  August 28, 2009            QUINN EMANUEL URQUHART OLIVER &
                                       HEDGES, LLP
13

14
                                       By /s/ Michael T. Zeller
15                                         Michael T. Zeller
                                           Attorneys for Mattel, Inc.
16

17

18

19

20

21

22

23

24  _____

25  [32]    Far from showing such a limitation is "routinely used," Ms. Hurst's Declaration
    attaches two minute orders (Exhs. D, E) in support of MGA's cross-motion.  One of these
26  orders  provides more than double the amount of time that MGA's proposes -- 160 hours -- in
    a case undoubtedly less complex than this one, and expressly notes that the court will entertain
27  motions to modify the limit for good cause.  See Exh. E.  The other order was agreed to by the
    parties.  See Exh. D.
28