# EXHIBIT 1

5815



1              UNITED STATES DISTRICT COURT

2             CENTRAL DISTRICT OF CALIFORNIA

3                        - - -

4       HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

5                        - - -

6   MATTEL, INC.,                :   PAGES 5815 - 5964
                                 :
7           PLAINTIFF,           :
                                 :
8      VS.                       :   NO. ED CV04-09049-SGL
                                 :   [CONSOLIDATED WITH
9   MGA ENTERTAINMENT, INC.,     :   CV04-9059 & CV05-2727]
    ET AL.,                      :
10                               :
            DEFENDANTS.          :
11

12

13

14

15        REPORTER'S TRANSCRIPT OF PROCEEDINGS

16             RIVERSIDE, CALIFORNIA

17            TUESDAY, AUGUST 5, 2008

18             JURY TRIAL - DAY 29

19              AFTERNOON SESSION

20

21

22                          MARK SCHWEITZER, CSR, RPR, CRR
                            OFFICIAL COURT REPORTER
23                          UNITED STATES DISTRICT COURT
                            181-H ROYBAL FEDERAL BUILDING
24                          255 EAST TEMPLE STREET
                            LOS ANGELES, CALIFORNIA 90012
25                          (213) 663-3494

CERTIFIED COPY



EXHIBIT  1
PAGE       3

1   Double Grand. Do you remember that there was a case brought

2   against a company called Double Grand?

3   A.   Name's familiar.

4   Q.   Let me just see if you could perhaps help us identify --

5   if we could first take a look at Exhibit 13862. That's in

6   Volume 3.   13862.

7   A.   All right.

8   Q.   And this is another complaint filed in Hong Kong by MGA

9   against Double Grand Corporation. Do you see that? While

10  you were chief counsel, and filed by William Fan.

11  A.   I wasn't chief counsel then.

12  Q.   Were you with the company then?

13  A.   I was with the company then.

14  Q.   And William Fan was -- I think you've already indicated

15  he was MGA's Hong Kong lawyer?

16  A.   Correct.

17  Q.   This appeared to be a copy of the complaint filed

18  against Double Grand?

19  A.   It appears to be a copy of a complaint. It looks like a

20  complaint, or as they say, statement of claim, I guess.

21         MR. QUINN:   We'd offer Exhibit 13862, your Honor.

22         MR. NOLAN:   Your Honor, subject to the same

23  procedures.

24         THE COURT:   Very well.

25         (Exhibit 13862 received.)



EXHIBIT ___/___
PAGE _____ 4

1    Q.    BY MR. QUINN:    If we could publish the first page so the

2    jury can see what we're referring to here.    And on page dash

3    5 of the complaint, paragraph 4, we have the allegation that

4    the defendants are selling fashion dolls known as Trendy

5    Teenz dolls, mini Trendy Teenz dolls, RockerHeads, bobble

6    head fashion dolls, and RockerHeads fashion doll, bobble pens

7    which are reproductions of or a reproduction of a substantial

8    part of said artistic works.

9             Do you see that?

10   A.    Yes.

11   Q.    And the artistic works referred to paragraph 3, page

12   dash 2, identifies the artistic works.    And we have the same

13   list that we just looked at, the models, silicone, rubber

14   molds, et cetera?

15   A.    Absolutely.

16   Q.    I want to see if you can help us identify what these

17   products were that were the occasion for this lawsuit.    If

18   you'd take a look at -- if you could look at 13862 --

19   Exhibit 13561.

20   A.    That's Volume 1?

21   Q.    Yes.    13561.

22   A.    Okay.

23   Q.    And dash 194.    Can you identify those images there of

24   mini Trendy Teenz as being products that you were suing on

25   here, Trendy Teenz?


EXHIBIT 1
PAGE 5

1   A.   I have no recollection of these at all.

2   Q.   How about dash 208?  If you could just thumb forward a

3   few pages.

4   A.   I definitely have no recollection of this pen.  It's

5   quite amusing, but I have no recollection of that.

6   Q.   How about 210?

7   A.   Wow.  I like bobble heads.  I don't think I -- I've

8   never physically seen any bobble head like this.  Wow.  No.

9   Q.   But these are copies of the products that were included

10  in MGA's filings with the court in Hong Kong?

11  A.   I guess.  Is that what this big document is?

12  Q.   Yes.

13  A.   Wow.

14  Q.   Could you take a look at page 124 and see if that rings

15  a bell?

16  A.   No.

17  Q.   Don't recognize it?

18  A.   No, I'm sorry.  Don't recognize it.  Can I ask a quick

19  question out of curiosity?

20          THE COURT:  Let's not --

21          THE WITNESS:  I'm sorry.  I shouldn't be curious.

22  Q.   BY MR. QUINN:  You just don't remember what these

23  particular articles or dolls were that were the subject of

24  the Double Grand case.  Is that true?

25  A.   Yeah, they don't look like anything that crossed my



EXHIBIT ___/___
PAGE ___6___

5866

```
 1   desk.
 2   Q.   Okay.  Could you turn, then, to Exhibit 13784.  And
 3   that's in Volume 3.
 4   A.   Okay.
 5   Q.   And do you recognize this as being another complaint
 6   that MGA filed, this against Hung Lam Toys Company in
 7   Hong Kong in July 2003?
 8   A.   I'm not sure.
 9   Q.   Do you see on page dash 8, it's again Mr. Fan has signed
10   the complaint?  Do you see that?
11   A.   Yeah, it's dated November.  You said -- what did you
12   say?
13   Q.   It's dated November 3, 2003.  I'm sorry.  It says the
14   writ issued July 22nd --
15   A.   Okay.  That's what was getting me.  Yes, I see this.
16              MR. QUINN:  We'd offer Exhibit 13784, your Honor.
17              MR. NOLAN:  Same procedure, your Honor.
18              THE COURT:  Very well.
19              (Exhibit 13784 received.)
20   Q.   BY MR. QUINN:  And page dash 4 and paragraph 4, it
21   identifies here that the defendant is making a doll called
22   Scampz, which it says, if we can put paragraph 4 on dash 4
23   are reproductions of or a reproduction of the substantial
24   part of the artistic works.
25              Do you see that?
```



EXHIBIT _1_
PAGE _____ 7

1   A.    Yes, I see that.

2   Q.    And there are actually photos of this Scampz doll that

3   are included in the pleadings.  If you'd take a look at

4   paragraph 15.  I'm sorry.  13856.

5   A.    What paragraph do you want me to look at?

6   Q.    Look at paragraph 15.  And this is a witness statement

7   of Sanjay Vaswani that was also filed in the same case?

8   A.    Yes.

9              MR. QUINN:  We'd offer that exhibit, your Honor.

10             MR. NOLAN:  Subject to the same procedure, your

11  Honor.

12             THE COURT:  Very well.  It's admitted.

13             (Exhibit 13856 received.)

14  Q.    BY MR. QUINN:  And if you'd look at page dash 5.

15  A.    Looking at it.

16  Q.    And it identifies a catalog of Scampz dolls which are

17  the subject of the lawsuit.

18             Do you see that?

19  A.    Yes, I do.

20  Q.    And those are at pages 28 to 29.  13856, 28 to 29.  Do

21  you see those?

22  A.    Yes.

23  Q.    If we could put those up on the screen.  These are the

24  Scampz dolls that were sued on that we're looking at here,

25  page 28 and 29?


EXHIBIT  /
PAGE     8

1  Q.  Well, there was for sure a suit against Mr. Bryant.  But

2  you are aware that Mattel brought claims against MGA.  That's

3  why we're all here.  You know that.

4  A.  Yes, I do.

5  Q.  And you know that one of the claims that Mattel asserted

6  was that it owned these very drawings, because Mr. Bryant,

7  Mattel contended and the jury has now found, created those

8  drawings while he was employed by Mattel.

9  A.  Well, I don't know which design drawings are at issue

10  specifically here.  Since this just refers to 17 drawings.

11  Q.  Well, I'll represent to you that's in evidence, and we

12  just went through that.  That it's Mr. Bryant's drawings.  I

13  will just represent that to you.  So my question to you is

14  isn't it true that after MGA brought this lawsuit, Mattel

15  brought a lawsuit, a claim against MGA saying it owned these

16  very drawings; correct?

17  A.  Well, the difficulty I'm having is when you're saying

18  these very drawings, I don't know that on the face of this

19  document.

20  Q.  All right.  Let me ask it this way.  You know that

21  Mattel claimed in this lawsuit, claims in this lawsuit, and

22  the jury has now found, that Mr. Bryant's original drawings

23  are owned by Mattel because they were created while he was

24  employed by Mattel.  You know that; correct?

25  A.  I don't know that for a fact because I have not -- if

EXHIBIT ___

PAGE ___ 9

1  that's what you are representing, I have to assume that's

2  true.

3  Q.  You were the chief lawyer for MGA right up to December

4  of 2007; correct?

5  A.  November 2007, but I have not been involved in this

6  trial.

7  Q.  All right.

8  A.  Except as a witness.

9  Q.  And as general counsel, as the top lawyer for MGA, you

10  had some responsibility for supervising this lawsuit;

11  correct?

12  A.  That is correct.

13  Q.  In fact, you attended hearings in this courtroom?

14  A.  Some, yes.

15  Q.  And you know that one of Mattel's claims were that it

16  owned certain original Bratz drawings that Mr. Bryant had

17  done.  You know that?

18  A.  Yes, I do.

19  Q.  Now, after Mattel brought that lawsuit saying it owned

20  the drawings, MGA amended its complaint against Cityworld in

21  Hong Kong to say that it was -- its claim was no longer based

22  on those drawings that Mattel claimed.  True?

23  A.  I don't recall that.

24  Q.  All right.  Let's take a look at the amended statement

25  of claim, Exhibit 13706.  It's in the same volume.  And if

EXHIBIT /
PAGE     10

5908

```
 1   you look at the page, this is a copy of a re-amended
 2   statement of claim in the Cityworld case in Hong Kong?
 3   A.   Yes.
 4             MR. QUINN:   We'd offer Exhibit 13706.
 5             THE COURT:   Pursuant to the same procedure?
 6             MR. HANSEN:   Subject to the same procedure, your
 7   Honor.
 8             THE COURT:   Very well.   It's admitted.
 9             (Exhibit 13706 received.)
10   Q.   BY MR. QUINN:   Now, in this amended claim, if we could
11   turn to dash 2.   That's the first page.   If we could turn to
12   dash 2, what they do there in Hong Kong is you kind of have
13   to -- when you amend your claim, you have to kind of red line
14   it to show where the track changes are.   You've seen that in
15   Hong Kong pleadings?
16   A.   Yes, I have.
17   Q.   All right.   And that's what you did in this case when
18   you amended this claim; correct?
19   A.   Yes.
20   Q.   And this claim was amended on January 5th, 2007;
21   correct?
22   A.   I have to look at the papers.   I don't recall.
23   Q.   You can take a look at dash 12.   It's page 12, and
24   you'll see a date there.
25   A.   Yes.
```

EXHIBIT __1__

PAGE ___11___

5942

1    like to let counsel --

2              MR. QUINN:  I think I can finish in a minute and a

3    half, your Honor.

4              THE COURT:  A minute and a half?  The jury says go

5    for it.

6    Q.    BY MR. HANSEN:  Can you tell me how the Multi Toy

7    litigation ultimately ended?

8              THE COURT:  MGA prevailed.  Some of the defendants

9    entered into a consent judgment early on, that they

10   acknowledged their liability.  And MGA ultimately obtained

11   summary judgment against the remaining defendant and

12   prevailed in the litigation as a result.

13             MR. HANSEN:  I have the letter.  The document's

14   already been produced.  May I?

15             THE COURT:  You may show it to counsel.  I assume

16   that obviates the objection.

17             MR. QUINN:  It does obviate the objection, your

18   Honor.

19             THE COURT:  Very well.

20             MR. QUINN:  But it means I can't finish in a minute

21   and a half, probably.

22             THE COURT:  We'll continue with this in the

23   morning.  Thank you, Counsel.

24             I'll see the jury tomorrow morning at 9:00.

25                  (WHEREUPON THE JURY WITHDRAWS.)

EXHIBIT _____1_____

PAGE _____12_____

```
 1        THE COURT:  Counsel, I'd like a sense of how you
 2  anticipate tomorrow playing out.
 3        MR. QUINN:  If I could have one moment, your Honor.
 4        THE COURT:  Yes.
 5        MR. ZELLER:  What we intend to do is we have some
 6  what we're hoping will be brief witnesses to discuss some of
 7  these other cases in particular, the Double Grand case and
 8  three other of the Hong Kong cases.  Without sounding
 9  pejorative about it, obviously the Court has seen some of the
10  challenges we have in terms of trying to get clear, legible
11  copies, samples of the dolls that have been sued upon, and
12  really clear answers on what MGA itself did in some of this
13  litigation.
14        So what we did, because multiple roadblocks were
15  being thrown up within -- really after we had last met, we
16  contacted some of these litigants in Hong Kong and asked them
17  to come and testify briefly so that we can do things like get
18  the dolls admitted and the pleadings that we are unable to
19  get through MGA witnesses.
20        We've also subpoenaed MGA.  We have another
21  Custodian of Records subpoena, which MGA has moved to quash.
22  The topics, as far as we're concerned, are extremely
23  straightforward.  They are basically just saying bring the
24  originals of the dolls or photographs of the dolls that you
25  sued upon in these various cases that are at issue.  And so
```

EXHIBIT /
PAGE 13

1    there's still an issue outstanding on that.

2           It would be our intention to put on a combination

3    of those people to clear up really what is left in terms of

4    MGA's own litigation. Pleadings, the dolls that were sued

5·   upon or photographs, clear legible photographs of the dolls

6    that were being alleged. And that's a combination of an

7    attorney named Edmond Yeung, Y-E-U-N-G, a representative from

8    Double Grand, which was one of the litigants. And the

9    Custodian of Records who I referenced.

10          So that would be the index, to put those three

11   people on, and then Mr. Larian. Unless, of course, we can

12   have something worked out or something stipulated to in terms

13   of what products were at issue in these other cases. And I

14   understand from e-mails that MGA is in all·likelihood taking

15   the position that we can't put any of these Hong Kong people

16   on either.

17          I mean, it's really no exaggeration to say that

18   multiple roadblocks have been put up in terms of our ability

19   to put on very simple evidence about what did MGA do in this

20   prior case, in these prior cases. And I expect that's going

21   to be an additional issue that's going to have to be

22   resolved.

23          But those are the people we intend to put on. And

24   I would also say that the Court has seen now the legibility

25   problems that we have faced from some of MGA's production,

EXHIBIT __1__
PAGE ___14__.

1  they filed in courts, I think it really belies the excuses

2  that we're hearing here. We've been asking for legible

3  copies since the time we received these illegible ones. The

4  Court is aware that we have had to go to extraordinary

5  lengths simply to try and find dolls that we think are the

6  infringing ones and identify them and bring them to court.

7         MGA does not say, and I have heard no

8  representation from MGA that every single sample that they

9  have of those infringing dolls from the other cases are

10  subject to any undertaking. And, in fact, it's implausible

11  for them to say that that's the case.

12         THE COURT: I'm of two minds on this issue. With

13  respect to the dolls themselves, that was not before the

14  Court, as I understand it, in May, or when the Court

15  considered the appeal.

16         As far as -- and I agree with Ms. Aguiar there. To

17  ask for the actual dolls at this point, to the extent that

18  Dexter Lam is saying that he has them, I have no reason to

19  question Ms. Aguiar's representation that she's inquired of

20  MGA USA and they don't have them. We're not going to get

21  them.

22         Where I'm more sympathetic with Mattel's argument

23  is with respect to any pleadings, including certainly copies

24  of any exhibits, documents, photographs. I mean, we talk

25  about a pleading. We don't just talk about the complaint.

EXHIBIT /
PAGE 15

1   It's all pleadings. It was certainly my intention that, to

2   the extent that MGA had in its possession or control any

3   pleadings related to this, that they would get turned over so

4   that we could avoid this particular problem.

5           So I'm not sympathetic, Mr. Zeller, with respect to

6   the dolls themselves. I'm much more sympathetic with respect

7   to the photographs. And I'm hoping that we can work

8   something out here. Because quite frankly, I think it makes

9   MGA look terrible what's going on right here this afternoon

10  before this jury, before lawyers from MGA, general counsel

11  from MGA stand up here and not recognize what it was that

12  they were supervising.

13          I think MGA has every incentive at this point just

14  to produce the legible copies, and let's move on off of this.

15  This is really -- I don't understand what's going on here. I

16  don't understand why MGA is not just clearing this up and

17  moving this on. I mean, they have got some -- I'm hearing in

18  the last half hour here some fairly good responses to this.

19  Let's get this resolved. I don't get what's happening here,

20  Counsel. Certainly photographs attached as exhibits to a

21  pleading is part of the pleadings.

22          MS. AGUIAR: I don't disagree. Two separate

23  things. The motion to quash was directed at original dolls

24  and original photographs.

25          THE COURT: I'm with you -- well, right.

EXHIBIT __/__
PAGE __ 16

5954

1      MS. AGUIAR: Original photographs. So let me then
2  address --

3      THE COURT: Unless and to the extent the original
4  photographs were submitted -- I don't want to mince words
5  here. What was submitted to the Court is what should have
6  been produced to Quinn Emanuel in May. Period.

7      MS. AGUIAR: I understand. And MGA in its May 22nd
8  production -- and there may have been supplements to that --
9  but I do know that there was a large production made on
10 May 22nd. We did produce the pleadings, and we didn't just
11 produce the complaint, for example. We produced attachments.
12 The photographs are not of great quality, but the photographs
13 that were up today that we kept seeing are from the
14 production that we made. These were attachments --

15     THE COURT: Let me stop you there. Are they of the
16 same quality that was submitted in the litigation in
17 Hong Kong?

18     MS. AGUIAR: I can't speak to whether the quality
19 is exactly the same. What I can say is that we will
20 undertake to figure out if there is somewhere a better
21 quality of that photograph, but we have produced what we were
22 required to produce.

23     THE COURT: And I'm not faulting you on that. Like
24 I said, I think this is quite frankly in your interests.
25 Because this, for what it's worth, I think this looks facial

EXHIBIT ___/___

PAGE ___17___

5964

1          THE COURT:  Let's be here at 8:00.  This financial

2   issue may take some time.  And I'd also like to hear what

3   success you've had with Hong Kong.  So let's see you here

4   tomorrow morning at 8:00.

5

6              (Proceedings concluded at 5:37 P.M.)

7

8                    C E R T I F I C A T E

9

10

11          I hereby certify that pursuant to Title 28,

12   Section 753 United States Code, the foregoing is a true and

13   correct transcript of the stenographically reported

14   proceedings in the above matter.

15          Certified on August 5, 2008.

16

17

18          MARK SCHWEITZER, CSR, RPR, CRR
            Official Court Reporter
19          License No. 10514

20

21

22

23

24

25

EXHIBIT ___/___
PAGE ___18___

# EXHIBIT 2

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 3

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 4

Robert C. O'Brien (SBN 154372)
ARENT FOX LLP
555 West Fifth Street, 48th Floor
Los Angeles, CA 90013-1065
Telephone: 213.629.7400
Facsimile: 213.629.7401
obrien.robert@arentfox.com

Discovery Master

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant. | Case No. CV 04-09049 SGL (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-2727<br><br>**PHASE 2 DISCOVERY MATTER**<br><br>**ORDER NO. 22, REGARDING:**<br><br>**(1) MOTION FOR ISSUANCE OF LETTERS OF REQUEST;**<br><br>**(2) MOTION TO COMPEL CONSENT TO PRODUCTION OF ELECTRONIC MAIL MESSAGES;** |
| CONSOLIDATED WITH<br>MATTEL, INC. v. BRYANT and<br>MGA ENTERTAINMENT, INC. v.<br>MATTEL, INC. | **(3) MOTION FOR RECONSIDERATION OF DECEMBER 31, 2007 ORDER; and**<br><br>**(4) MOTION OBJECTING TO PORTIONS OF FEBRUARY 15, 2008 ORDER** |

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT ⌐4
PAGE 50

This Order sets forth the Discovery Master's ruling on the following discovery matters: (1) the motion for issuance of letters of request filed by Mattel, Inc. ("Mattel") ("Letter of Request Motion") [Docket No. 4721]; (2) the motion to compel Carlos Gustavo Machado Gomez to consent to production of electronic mail messages filed by Mattel ("Motion To Compel") [Docket No. 4884]; (3) the motion for reconsideration of portions of the prior discovery master's December 31, 2007 order filed by Mattel ("Motion for Reconsideration") [Docket No. 4948]; and (4) the motion objecting to portions of the prior discovery master's February 15, 2008 order regarding Mattel's motion to compel responses to interrogatories by MGA Entertainment, Inc., MGA Entertainment (HK) Limited, MGAE De Mexico, S.R.L. De C.V. and Isaac Larian ('MGA Parties") filed by Mattel ("Objection Motion") [Docket No. 4717] (collectively, the "Motions").

The Motions came on regularly for hearing before the Discovery Master on April 27, 2009. All interested parties were represented by counsel and afforded the opportunity to present oral argument on the Motions. The Discovery Master, having considered the papers filed in support of and in opposition to the Motions, and having heard oral argument, rules as set forth below.

## I.   MATTEL'S LETTER OF REQUEST MOTION

The Discovery Master first addresses Mattel's Letter of Request Motion.

### A.   The Order Referring The Letter Of Request Motion To The Discovery Master

The Court referred Mattel's Letter of Request Motion to the Discovery Master for disposition on or about March 12, 2009. (*See* Minute Order dated March 12, 2009).

### B.   The Relief Sought By Mattel

Mattel requests that the Discovery Master issue an order recommending that the Court execute a letter of request for international judicial assistance. (*See* Proposed Order filed in Support of the Letter of Request Motion). Specifically,

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 1 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT __1__
PAGE __51__

1   Mattel seeks a letter of request "for the purpose of taking the deposition . . . of

2   Janine Brisbois ["Brisbois"] and MGA Canada." (Letter of Request Motion, p. 1).

3   "Mattel further requests [that] the Letter of Request provide for the production of

4   documents by . . . Brisbois and MGA Canada." (*Id.*).

5        **C.    The MGA Parties' Opposition**

6        The MGA Parties oppose the motion on two basic grounds. First, the MGA

7   Parties argue that Document Request Nos. 7, 9 and 10 concerning both Brisbois and

8   MGA Canada are overbroad and/or unduly burdensome. (Opposition to Letter of

9   Request Motion, pp. 2 – 5). Second, the MGA Parties argue that both of the

10  persons most knowledgeable categories directed at MGA Canada are

11  incomprehensible and inappropriate. (*Id.*, pp. 6 – 8).

12       **D.    Legal Standard**

13       Under Federal Rule of Civil Procedure 28(b)(1), a "deposition may be taken

14  in a foreign country . . . under a letter of request, whether or not captioned a 'letter

15  rogatory.'" Further, Rule 28 provides for the issuance of a letter of request "on

16  appropriate terms after an application and notice of it . . ." (Fed R. Civ. Pro.

17  28(b)(2)).

18       **E.    Analysis**

19            **1.    The MGA Parties Have Not Challenged Several Aspects Of**

20                 **Mattel's Proposed Letter Of Request**

21       As a preliminary matter, the Discovery Master notes that the MGA Parties do

22  not question the authority of the Court to issue Mattel's proposed letter of request

23  under Rule 28. Nor do the MGA Parties object to the form of the letter concerning

24  the six categories on which Mattel proposes to examine Brisbois. The MGA Parties

25  likewise do not object to Document Request Nos. 1 – 6 and 8 with respect to either

26  Brisbois or MGA Canada. Because they have not challenged the aforementioned

27  aspects of Mattel's proposed letter of request, the MGA Parties have implicitly

28  conceded that a letter of request may be issued in some form.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 2 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT    1
PAGE    52

## 2. The Document Requests Challenged By The MGA Parties

The MGA Parties object to Document Request Nos. 7, 9 and 10 directed to Brisbois. (Opposition to Letter of Request Motion, pp. 2 – 3). Because they are almost identical to the same numbered requests for Brisbois, the MGA Parties also object to Document Request Nos. 7, 9 and 10 directed to MGA Canada.

### a. Document Request No. 7 Directed To Brisbois And Document Request No. 7 Directed To MGA Canada

Document Request No. 7 directed to Brisbois and the same numbered document request directed to MGA Canada request all personnel files created or maintained by MGA Canada concerning Brisbois. Specifically, they request the following information:

- Request for Production No. 7 to Brisbois: "A copy of each personnel file maintained or created by MGA RELATING TO Brisbois." (Reply in Support of Letter of Request Motion, p. 2).

- Request for Production No. 7 to MGA Canada: "A copy of each personnel file maintained or created by YOU RELATING TO Brisbois." (Id.).

The two requests are collectively referred to below as "Document Request No. 7."

### (1) Document Request No. 7 Seeks Information Relevant To Phase 2

The MGA Parties first argue that Document Request No. 7 is overbroad because it "seek[s] private confidential information with no conceivable relevance to this case . . . ." (Opposition to Letter of Request Motion, pp. 2 and 4). However, the Discovery Master recently ruled that Mattel's request for personnel files of individuals who work at MGA Entertainment, Inc. ("MGA") and who formerly worked for Mattel were reasonably calculated to lead to the discovery of admissible evidence. (Order No. 6, pp. 3 – 6). The same reasoning supporting the Discovery

EXHIBIT __5__
PAGE __53__

1   Master's Order No. 6 applies to any personnel files MGA Canada created or

2   maintained for Brisbois.

3       The plain language of Mattel's Second Amended Answer and Counterclaims

4   ("SAAC") confirms that any personnel files MGA Canada created or maintained

5   concerning Brisbois bear some relation to the issues to be adjudicated in Phase 2.

6   Brisbois is expressly identified in the SAAC as one of the former Mattel employees

7   who allegedly misappropriated Mattel's trade secrets and other confidential

8   information. (*See, e.g.,* SAAC, ¶¶ 4, 71 – 76, 89, 90, 97, 99, 107 and 123). For

9   example, the SAAC alleges as follows:

10      • "In 2005, MGA needed help in Canada. So MGA, again operating from

11        its Southern California headquarters, hired Janine Brisbois from Mattel.

12        At that time, Ms. Brisbois was responsible for Mattel's account with Toys

13        'R Us ('TRU') and Wal-Mart. MGA gave her responsibility for those

14        same accounts, and she took from Mattel documents containing

15        proprietary advertising, project, sales, customer and strategy information

16        for not only Canada, but for the United States. Eliminating any doubt that

17        MGA then proceeded to use those stolen materials, Brisbois subsequently

18        accessed and modified certain of those documents while employed by

19        MGA." (*Id.,* ¶ 4).

20      • "Mattel subsequently learned that . . . four days before she resigned,

21        Brisbois copied approximately 45 Mattel documents on to a USB or

22        'thumb' drive with the volume label 'BACKPACK.' On information and

23        belief, Brisbois removed the thumb drive from Mattel's Canada office by

24        concealing it in her backpack or gym bag the last time that she left that

25        office. These documents contained Mattel trade secret and proprietary

26        information . . . ." (*Id.,* ¶ 74).

27      • "After Mattel discovered that Brisbois had copied these sensitive

28        documents to a thumb drive, Mattel notified Canadian law enforcement

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 4 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT __⊥__

PAGE __54__

1   authorities.  Canadian law enforcement authorities recovered from

2   Brisbois a thumb drive with the volume label 'BACKPACK' containing

3   the documents that Brisbois had copied from Mattel's computer system.

4   Mattel later learned that while she was working as a Vice President of

5   Sales at MGA, Brisbois accessed and modified documents on that thumb

6   drive."  (*Id.*, ¶ 75).

7       In light of these allegations, any personnel file created or maintained by

8   MGA Canada relating to Brisbois is relevant to Phase 2 and discoverable under

9   Federal Rule of Civil Procedure 26, subject to the limitations set forth below.

10                  **(2)     The MGA Parties' Privacy Objections Are**

11                          **Resolved By The Protective Order And Mattel's**

12                          **Limitation Of Its Requests**

13      The MGA Parties next claim Document Request No. 7 is overbroad because

14  it seeks "medical and insurance" information.  (Opposition to Letter of Request

15  Motion, pp. 2 and 4).  However, this contention is unpersuasive for two reasons.

16      First, a protective order has been entered in this case and will act as a

17  safeguard to protect any private information.  (*See, e.g., Nakagawa v. Regents of*

18  *Univ. of Cal.*, 2008 WL 1808902, *3 (N.D. Cal. April 22, 2008) [ordering

19  production of personnel files and stating "[a]ny other privacy concerns defendant

20  may have should be addressed by a protective order"]; *Grinzi v. Barnes*, 2004 WL

21  2370639, *1 (N.D. Cal. Oct. 20, 2004) ["The proper mechanism for an employer to

22  use to protect an employee's privacy interest in his personnel file is to obtain, either

23  by stipulation or motion, a properly crafted protective order under Rule 26(c)"];

24  *Maldonado v. Cal. Dep't of Corr. & Rehab.*, 2007 WL 4249811, *7 (E.D. Cal. Nov.

25  30, 2007) ["The court has already analyzed these non-party privacy rights, and the

26  protective order should serve to remedy any concern in this regard."]; *Walton v. K-*

27  *Mart, Inc.*, 2007 WL 4219395, *2 (N.D. Cal. November 28, 2007) ["In view of the

28  employees' privacy interests, documents shall be produced pursuant to an

- 5 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

**EXHIBIT** 4

**PAGE** 55

1    attorneys' eyes only protective order."]; *Keller-McIntrye v. Coll. Of Health &*
2    *Human Servs.*, 2006 WL 3456672, *1-*2 (N.D. Cal. November 29, 2006) [ordering
3    production of employee information, pursuant to a protective order, despite privacy
4    claims under California law]).

5    　　　Second, and more importantly, Mattel has revised its letter of request to
6    specifically exclude "any portions [of Brisbois' personnel file] solely related to
7    medical or healthcare information." (Reply in Support of Letter of Request Motion,
8    p. 3 and Ex. A thereto at pp. 19 and 24). By virtue of this limitation, Mattel has
9    rendered the privacy objection raised by the MGA Parties moot.

10   　　　Despite the foregoing, and notwithstanding the existence of the protective
11   order as a safeguard, the Discovery Master will further narrow Document Request
12   No. 7 to exclude any social security numbers, tax identification numbers, dates of
13   birth, indication of sexual orientation, bank account numbers, and checking account
14   numbers that may be included within the requested personnel file prior to
15   production, as Mattel has not made a showing at this time that such discrete
16   personal information is reasonably calculated to lead to the discovery of admissible
17   evidence.

18   　　　　　**b.**　　**Document Request No. 9 Directed To Brisbois And**
19   　　　　　　　　**Document Request No. 9 Directed To MGA Canada**

20   　　　The MGA Parties also object to Document Request No. 9 directed to Brisbois
21   and the same numbered document request directed to MGA Canada. (Opposition to
22   Letter of Request Motion, pp. 2 – 5). The requests seek the following information:

23   　　　• Request for Production No. 9 to Brisbois: "ALL DOCUMENTS
24   　　　　RELATING TO COMMUNICATIONS between Brisbois, on the one
25   　　　　hand, and Toys 'R US or Wal-Mart on the other, or anyone acting on
26   　　　　behalf of Toys 'R Us or Wal-Mart, between September 7, 2005, and
27   　　　　January 1, 2007, including but not limited to her COMMUNICATIONS

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 6 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

PAGE

1    with Toys 'R Us or Wal-Mart about promotions of MGA products." (*Id.*,
2    p. 2).

3    • Request for Production No. 9 to MGA Canada: "ALL DOCUMENTS
4    RELATING TO COMMUNICATIONS between YOU, on the one hand,
5    and Toys 'R US or Wal-Mart on the other, or anyone acting on behalf of
6    Toys 'R Us or Wal-Mart, between September 7, 2005, and January 1,
7    2007, regarding Ms. Brisbois or Ms. Brisbois' responsibility for the Toys
8    'R Us or Wal-Mart promotions or advertising for MGA products." (*Id.*, p.
9    4).

10   The two requests are collectively referred to below as "Document Request
11   No. 9."

12                  **(1)    The Requests Are Not Overbroad**

13   The MGA Parties assert that Document Request No. 9 is overbroad because it
14   is not limited to products "at issue in this litigation." (*Id.*, pp. 2 and 4). But Mattel's
15   Phase 2 claims are not linked to a single discrete product or even multiple products.
16   As the Discovery Master explained in Order No. 6, the issues to be litigated in
17   Phase 2 include, among other things, Mattel's claim that MGA stole "a vast array of
18   trade secrets and other confidential information that comprise Mattel's intellectual
19   infrastructure." (SAAC, ¶ 20). Mattel further alleges in its SAAC that MGA:

20   • "engaged in a pattern of stealing and using [Mattel's] property and trade
21   secrets," (*Id.*, ¶ 1);

22   • "stole Mattel trade secrets regarding Mattel's customers, sales, projects,
23   advertising and strategy, not only for Canada, but the United States and
24   the rest of the world," (*Id.*, ¶ 70);

25   • "took from Mattel documents containing proprietary advertising, project,
26   sales, customer and strategy information for not only Canada, but for the
27   United States," (*Id.*, ¶ 4); and

28   //

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 7 -                            ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ⁴⁷
PAGE 57

- "engaged in an ongoing, widespread pattern of . . . inducing Mattel employees to steal Mattel's confidential information or other property and take it with them to MGA," (*Id.*, ¶ 5).

Because this is not a case where Mattel has alleged that the MGA Parties stole a specific product or group of products, but rather an instance where Mattel alleges that the MGA Parties engaged in a massive and pervasive theft of Mattel's proprietary information and trade secrets, Document Request No. 9 is reasonably calculated to lead to the discovery of admissible evidence.

### (2) The Protective Order Resolves Any Confidentiality Issues

The MGA Parties next assert that Document Request No. 9 seeks confidential business information and trade secrets concerning MGA's products. (Opposition to Letter of Request Motion, pp. 2 – 4). But any such concern is resolved by the protective order.

### (3) The Requests Seek Information Relevant To Phase 2

Finally, the MGA Parties argue that Document Request No. 9 is overbroad because it is "not linked to any of the legal or factual issues in this case." (*Id.*, pp. 3 and 4 [emphasis omitted]). This contention is not supported by the record. As explained above, Brisbois is identified in the SAAC as one of the principal actors engaged in MGA's alleged scheme of wrongdoing. (*See, e.g.,* SAAC, ¶¶ 4, 71 – 76, 89, 90, 97, 99, 107 and 123). In fact, the SAAC alleges that MGA lured Brisbois away from Mattel, gave her responsibility for the same accounts she was previously handling there (i.e., Toys 'R Us and Wal-Mart), and misused "Mattel documents containing proprietary advertising, project, sales, customer and strategy information for not only Canada, but for the United States," (*id.*, ¶ 4), including stealing Mattel documents that contained:

the price, cost sale plan and quantity of every Mattel product

EXHIBIT 4

PAGE 52

1  ordered by every Mattel customer in 2005 and 2006; the BARBIE

2  television advertising strategy and information concerning sales

3  increase generated by television advertisements; competitive

4  analysis of Mattel vis-à-vis its competitors in Canada; an analysis

5  of Mattel's girls' business sales beginning in 2003 and the

6  forecasts through 2006; profit and loss reviews for Mattel's

7  products being sold in Wal-Mart, including margins and profits in

8  not only Canada but the United States and Mexico; and a

9  document containing product launch dates and related advertising

10  for all Mattel new products between Fall 2005 and Spring 2006.

11  (*Id.*, ¶ 74). Therefore, Mattel's requests for Brisbois' communications with Toys

12  'R Us and Wal-Mart and the other information requested by Document Request No.

13  9 relates to Phase 2 issues and is discoverable.

               c.     **Document Request No. 10 Directed To Brisbois And**

                       **Document Request No. 10 Directed To MGA Canada**

16      The MGA Parties final set of document request objections relate to Document

17  Request No. 10 directed to Brisbois and the same numbered request directed to

18  MGA Canada. These requests seek the following information:

19      •  Request for Production No. 10 to Brisbois: "ALL DOCUMENTS,

20          including but not limited to all COMMUNICATIONS with any PERSON,

21          created by Brisbois while employed by MGA RELATED TO MGA's

22          marketing of products that compete with Mattel's products, recruiting or

23          attempting to recruit Mattel's employees, or the theft of Mattel trade

24          secrets, confidential or proprietary information." (Reply in Support of

25          Letter of Request Motion, p. 7).

26      •  Request for Production No. 10 to MGA Canada: "ALL DOCUMENTS,

27          including but not limited to all COMMUNICATIONS with any PERSON,

28          created by Brisbois while employed by MGA RELATED TO MGA's

EXHIBIT ___

1    marketing of products that compete with Mattel's products, recruiting or

2    attempting to recruit Mattel's employees, or the theft of Mattel trade

3    secrets, confidential or proprietary information." (*Id.*).

4    The two requests are collectively referred to below as "Document Request

5    No. 10."

6    **(1)    The Requests Are Not Overbroad Or Vague**

7    The MGA Parties initially contend that Document Request No. 10 is

8    overbroad and vague because it "seek[s] every document created by Brisbois

9    related to marketing" and "[n]ot every MGA product that may at some level

10   'compete' with some Mattel product is at issue in this case." (Opposition to Letter

11   of Request Motion, pp. 3 and 5). However, each of these arguments ignores a

12   critical component of the SAAC. The SAAC does not allege that MGA stole trade

13   secrets related to one specific product or even multiple products. Instead, it alleges

14   that MGA (through Brisbois and others) also stole Mattel's "proprietary business

15   methods, practices and information." (SAAC, ¶ 20). Given that the SAAC alleges

16   that the MGA Parties engaged in the wholesale theft of Mattel's trade secrets, not

17   just products, and Mattel alleges that such information was used unlawfully by

18   MGA to compete in Canada and elsewhere, (*see, e.g., id.*, ¶¶ 4 and 70), Mattel is

19   entitled to discover how MGA marketed its products through MGA Canada and the

20   methods it used to do so.

21   Document Request No. 10 is not only relevant to Phase 2 issues but

22   reasonably tailored to defeat any claim of vagueness or overbreadth, since the

23   request only seeks documents created by Brisbois when she worked for MGA

24   involving MGA's "marketing of products that compete with Mattel's products,

25   recruiting or attempting to recruit Mattel's employees, or the theft of Mattel trade

26   secrets, confidential or proprietary information." (Reply in Support of Letter of

27   Request Motion, p. 7). Because Document Request No. 10 is limited in time as

28   well as scope, and tied to a single individual, it "adequately describe[s] the

- 10 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___✓___

PAGE    60

1    requested materials." (*Boyer v. Gildea*, 2008 WL 4911267, \*7 (N.D. Ind. Nov. 5,

2    2008).

3                        **(2)     The Protective Order Resolves Any Trade**

4                                **Secret Concerns**

5           The MGA Parties next assert that Document Request No. 10 seeks

6    confidential business information and trade secrets concerning MGA's products.

7    (*See* Opposition to Letter of Request Motion, pp. 3 and 5).  Again, this objection is

8    defeated by the existence of the protective order.

9                        **(3)     Document Request No. 10 Is Not Unduly**

10                               **Burdensome**

11          The MGA Parties also argue that Document Request No. 10 is unduly

12   burdensome.  (*Id.*).  The Discovery Master finds this argument unpersuasive for

13   three reasons.

14          First, MGA cannot assert a claim of undue burden on behalf of a third party

15   (i.e., MGA Canada).  (*See, e.g., G.K. Las Vegas Ltd. Partnership v. Simon Prop.*

16   *Group, Inc.*, 2007 WL 119148, \*3 (D. Nev. Jan. 9, 2007) ["A party's objection that

17   the subpoena issued to the non-party . . . imposes an undue burden on the nonparty

18   are not grounds on which a party has standing to move to quash a subpoena issued

19   to a non-party . . ."]).

20          Second, MGA has not provided any evidence in connection with its

21   opposition to support its claim of burden.  (*See Columbia Pictures Indus., Inc. v.*

22   *Bunnell*, 2007 WL 4916964, \*5 (C.D. Cal. May 7, 2007) ["Defendant's 'unduly

23   burdensome' and harassing objection is overruled as such objection is conclusory,

24   and as defendants have provided no facts or evidence to support a finding that

25   production . . . would be unduly burdensome and/or harassing."]; *El-Shaddai v.*

26   *Wheeler*, 2009 WL 301824, \*2 (E.D. Cal. Feb. 5, 2009) ["[F]ederal courts reject

27   claims of burdensomeness which are not supported by a specific, detailed showing,

28   usually by affidavit, of why weighing the need for discovery against the burden it

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 11 -                                    ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]
EXHIBIT ____
PAGE ____ 61

1   will impose permits the conclusion that the court should not allow it."]; *Jackson v.*

2   *Montgomery Ward & Co., Inc.*, 173 F.R.D. 524, 528-9 (D.Nev. 1997) ["The party

3   claiming that a discovery request is unduly burdensome must allege specific facts

4   which indicate the nature and extent of the burden, usually by affidavit or other

5   reliable evidence."]).

6          Finally, the MGA Parties fail to acknowledge the probative value of the

7   information sought by Document Request No. 10.  (*See King v. Georgia Power

8   Co.*, 50 F.R.D. 134, 136 (N.D. Ga. 1970) ["Although preparation of a direct answer

9   will be time-consuming, and probably costly, the information is crucial to the issues

10  of this suit, and is in the exclusive custody of the defendant."]).

11                          **d.      Conclusion**

12         For all of the above reasons, the Discovery Master overrules the MGA

13  Parties' objections to the document requests directed to Brisbois and MGA Canada.

14                  **3.      The Deposition Subjects Challenged By The MGA Parties**

15         Having addressed the MGA Parties' objections to the document requests, the

16  Discovery Master now turns to the MGA Parties' objections to the proposed

17  deposition of MGA Canada.

18         Mattel seeks to depose MGA Canada's person most knowledgeable on the

19  following subjects:

20  • Category No. 1: "Knowledge of MGA Entertainment Canada's methods

21         and procedures regarding the access, use, reproduction, copying, storage,

22         transmission, transfer, disclosure, retention, destruction, deletion or use of

23         any documents, data and/or information, that were prepared, made,

24         created, generated, assembled or compiled by or for MATTEL and that

25         MGA received, directly or indirectly, from Janine Brisbois."  (Opposition

26         to Letter of Request Motion, p. 6).

27  • Category No. 2: "Knowledge of MGA Entertainment Canada's methods

28         and procedures regarding the access, use, reproduction, copying, storage,

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 12 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___4___
PAGE ___6 2___

1   transmission, transfer, disclosure, retention, destruction, deletion or use of
2   any documents, data and/or information regarding MGA Entertainment
3   Canada's advertising, project, sales, customer or strategy information
4   related to any Bratz Product regardless of whether such information was
5   received directly or indirectly from Janine Brisbois." (*Id.*).

6         **a.    Category No. 1 Relates To Mattel's Phase 2 Claims**

7        The MGA Parties first contend that Category No. 1 is not limited to trade
8   secret information but rather "sweeps in such amorphous concepts as 'information
9   . . . prepared, made[,] created, generated, assembled or compiled by or for Mattel'"
10  that MGA received from Brisbois. (*Id.*). On its face, Category No. 1 is admittedly
11  broader than trade secret information provided by Brisbois to MGA. However, the
12  category is nonetheless relevant to Phase 2 claims. The SAAC alleges that MGA
13  not only misappropriated trade secrets but stole other "confidential and proprietary
14  information" belonging to Mattel. (SAAC, ¶ 1; *see also id.* ¶¶ 5, 20 and 48). The
15  SAAC expressly alleges that Brisbois was involved in this misconduct. (*Id.*, ¶ 74).
16  Consequently, Mattel is entitled to discover any information regarding the theft of
17  that other proprietary information it claims Brisbois took "to MGA to further
18  MGA's business interests and to harm Mattel." (*Id.*, ¶ 5).

19        **b.    Category Nos. 1 And 2 Are Not Incomprehensible**

20       Finally, the MGA Parties object to Category Nos. 1 and 2 on the ground that
21  they employ "extraordinarily vague, broad, and complex" language that renders
22  them incomprehensible, namely the language "knowledge of . . . methods and
23  procedures regarding the access, use, reproduction, copying, storage, transmission,
24  transfer, disclosure, retention, destruction, deletion or use of any documents, data
25  and/or information." (Opposition to Letter of Request Motion, p. 7). The MGA
26  Parties reason that "[w]hatever it is Mattel is asking about, it appears to relate to
27  every document and piece of data that relates in any way to Bratz, no matter how
28  much or how little, and no matter how irrelevant those documents are to the issues

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 13 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___
PAGE   63

1  presented in this case." (Id.).  This argument is contradicted by the plain language

2  of the categories.

3    As the MGA Parties acknowledge in their Opposition, Category No. 2 is

4  limited to MGA Canada's person most knowledgeable "regarding MGA

5  Entertainment Canada's advertising, project, sales, customer or strategy information

6  related to the Bratz Products." (Id.).  Category No. 1 is similarly linked to

7  documents in some manner generated "for MATTEL and that MGA received,

8  directly or indirectly, from Janine Brisbois." (Id., p. 6).  Accordingly, the language

9  of each category is specifically limited to certain categories of documents related to

10  the Bratz, such as advertising, sales and customer information.  In fact, Mattel

11  concedes that it "is not seeking *every* document that *in any way* relates to Bratz."

12  (Reply in Support of Letter of Request Motion, p. 13 [emphasis in original]).

13  Therefore, it is precluded from taking such a position at the subject deposition and

14  must confine its questioning to the limited categories of documents referenced in

15  Category Nos. 1 and 2.

16       **c.**  **Conclusion**

17    For all of the foregoing reasons, the Discovery Master overrules the MGA

18  Parties' objections to the deposition categories in the proposed letter of request

19  directed to MGA Canada.

20    **F.**  **Summary Of Ruling Regarding The Letter Of Request Motion**

21    Having considered all of the arguments presented by the parties, the

22  Discovery Master concludes that a letter of request should issue subject to the

23  additional limitations discussed in Section I.D.2.a.2. above.

24  **II.**  **MATTEL'S MOTION TO COMPEL**

25    **A.**  **Factual Background**

26      **1.**  **Machado Leaves Mattel To Work For MGA**

27    Defendant Carlos Gustavo Machado Gomez ("Machado") was employed by

28  Mattel until April 19, 2004, when he resigned to go to work for MGA.  One week

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 14 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT __4__
PAGE 64

1    later, on April 27, 2004, Mattel filed this action against Carter Bryant.

2    **2.    Machado Opens The E-Mail Account**

3    In June, 2005 (i.e., after he began working for MGA but before being named

4    as a counterclaim defendant in this action), Machado opened a Yahoo! e-mail

5    account named gus_cmt@yahoo.com (the "Account"). Machado and his attorney

6    (who substituted into this case in September, 2007) have submitted declarations

7    stating that they have used the Account to engage in confidential attorney-client

8    communications.

9    **3.    Mattel Serves Document Requests On Machado, And He**

10    **Invokes The Attorney-Client Privilege And The Fifth**

11    **Amendment**

12    In or about November, 2006, Mattel amended its counterclaim to add

13    Machado and others as counter-defendants.

14    In September, 2007, Mattel served a document request on Machado

15    specifying 85 categories of documents to be produced, encompassing, among other

16    things, various categories that would also be included in Mattel's forthcoming

17    subpoena to Yahoo!. Machado timely served responses and objections on October

18    15, 2007. (Supplemental Corey Decl., Ex. 3). Among other general objections,

19    Machado objected to producing any documents protected by the attorney-client

20    privilege (General Objection No. 2) or by his Fifth Amendment right against self-

21    incrimination (General Objection No. 3). Moreover, in his objection to several of

22    the specific requests, including requests that would be included in the subpoena to

23    Yahoo! (e.g., Request No. 4 seeking e-mails sent to or from any e-mail address that

24    includes the suffix <mattel.com>), Machado repeated his objection based on the

25    Fifth Amendment. Machado produced approximately 200 pages of documents in

26    response to the document request, but no e-mails.

27    **4.    Mattel Serves The Subpoena On Yahoo!**

28    On October 29, 2007, Mattel served a subpoena on Yahoo! (the "Subpoena")

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 15 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ____

PAGE ____

seeking documents relating to the Account.  (Supplemental Corey Decl., Ex. 2). The Subpoena contains 22 document requests, which fall into the following seven categories:

- <u>Category No. 1</u>:  Documents relating to the registration and ownership of the Account (Document Request Nos. 1 – 2);

- <u>Category No. 2</u>:  E-mail messages sent to or from, or mentioning, Mattel (Document Request Nos. 3 – 6);

- <u>Category No. 3</u>:  E-mail messages pre-dating April 20, 2004 or October 2, 2004, i.e., before Machado opened the Account (Document Request Nos. 7, 11 – 14, and 16);

- <u>Category No. 4</u>:  E-mail messages referring to Larian and other MGA personnel (Document Request Nos. 8 – 10 and 16 – 17);

- <u>Category No. 5</u>:  E-mail messages relating to the search by Mexican authorities of MGA's offices in Mexico (Document Request No. 15);

- <u>Category No. 6</u>:  Documents reflecting any other e-mail accounts used by Machado (Document Request Nos. 18 – 19); and

- <u>Category No. 7</u>:  Documents reflecting Yahoo! policies and procedures (Document Request Nos. 20 – 22).[1]

On the same day that Mattel served the Subpoena on Yahoo!, Mattel sent Machado a letter informing him that the Subpoena had been served and requesting his consent to the release of his e-mails pursuant to the Shared Electronic Communications Act.  The letter enclosed a form for Machado to sign indicating his consent.  On November 1, 2007, Machado's counsel responded.  Among other things, he asserted that the Subpoena was overbroad and *duplicative* of Mattel's document request propounded on Machado.  Counsel also inaccurately asserted that

---

[1] According to Machado, "Yahoo[!] has informed counsel for Mr. Machado that it would produce non-content documents in response to Mattel's subpoena." (Cote Decl. in Support of Opposition to Motion to Compel, ¶ 4.). Machado asserts that "these non-content documents presumably satisfy Requests 1, 2 and 18 – 22 of Mattel's subpoena." (Opposition to Motion to Compel, p. 3, fn. 2).



EXHIBIT 4
PAGE 66

1   Machado had already produced e-mails from the Account (but, in fact, no such e-
2   mails were among the documents Machado had produced). Machado's counsel
3   further informed Mattel that Machado would not sign the consent form authorizing
4   Yahoo! to produce e-mails responsive to the Subpoena.

5          Having prevented Yahoo! from complying with the Subpoena by refusing to
6   sign the consent form and having previously objected to the duplicative document
7   requests served on him directly, Machado apparently did not deem it necessary to
8   serve separate objections to the Subpoena. Mattel contends that this omission
9   constitutes a waiver, as discussed more fully below.

10         **5.    Mattel Seeks To Compel Machado's Consent**

11         Mattel then filed a motion to compel in November 2007 seeking to force
12   Machado to consent to the release of the e-mails requested by the Subpoena.
13   Machado filed his initial Opposition on November 26, 2007 and a Supplemental
14   Opposition on January 14, 2008. In the latter pleading, Machado asserted, for the
15   first time in connection with the Subpoena, that communications responsive to the
16   Subpoena were privileged. However, he did not provide a privilege log identifying
17   those communications. Mattel's motion was still pending at the time the Court
18   imposed a stay on Phase 2 discovery on February 4, 2008.

19         Now that the stay has been lifted, Mattel renews its motion for an order
20   compelling Machado to give his consent to the release of the e-mails sought by the
21   Subpoena.

22         **B.    Relief Sought By Mattel**

23         The only item of relief sought by Mattel is an order directing Machado "to
24   provide his consent to the disclosure of relevant electronic mail messages" from the
25   //
26   //
27   //
28   //

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 17 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___4___

1   Account.[2]  Because of the manner in which Mattel has framed its request for relief,

2   the Discovery Master is presented with the choice of giving Mattel "all or nothing."

3   Based on the record before him, the Discovery Master concludes that such relief is

4   not appropriate.  For the reasons explained below, the Discovery Master concludes

5   that the Subpoena seeks both discoverable and non-discoverable items, including

6   items which are potentially protected from disclosure by the attorney-client

7   privilege and Machado's right of privacy.  The Discovery Master cannot sever the

8   objectionable categories of documents from the permissible ones, requiring

9   Machado to consent only to the latter.

10   Accordingly, the "all or nothing" relief requested by Mattel would force the

11   Discovery Master to either (1) compel Machado to sign the release, in which case

12   Yahoo! would produce all requested e-mails, including confidential attorney-

13   communications or, alternately (2) deny Mattel's request to compel Machado's

14   consent, in which case Yahoo! would not have to produce any responsive e-mails,

15   including items which are potentially probative of Mattel's Phase 2 claims.

16   The Discovery Master does not believe that either alternative is in the

17   interests of justice.  Accordingly, as set forth below, the Discovery Master will

18   exercise his discretion to fashion relief that enforces Mattel's legitimate right to

19   discovery of Phase 2 evidence, on the one hand, while protecting Machado from the

20   disclosure of privileged communications with his attorney, on the other hand.

21   **C.   Analysis**

22   Machado relies on essentially three substantive arguments in his Opposition

23   //

24

25   [2] Mattel's Notice of Motion states that Mattel seeks an order compelling Machado to provide his consent to the disclosure of relevant e-mail messages "from his internet service providers" in general, and, in the Memorandum of Points and Authorities references one other account, plot04@aol.com. However, Mattel does not reference any

26   subpoena to AOL in its motion or supporting declarations, and consequently the Discovery Master understands that the present motion is limited to the Yahoo! account.  Mattel also asserts in its Memorandum of Points and

27   Authorities (but not in its Notice of Motion) that Machado should be compelled to identify each e-mail account he has used in the past five years. (Motion to Compel, p. 6:15 – 17).  Given the fact that there is no pending motion by

28   Mattel to enforce any such interrogatory to Machado, that issue has not been properly raised and is not addressed by this Order.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 18 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT
PAGE
68

1  to the motion.[3]  First, he asserts that some of the e-mails sought by the Subpoena

2  contain communications protected by the attorney-client privilege and/or attorney

3  work product doctrine.  Second, he asserts that the Subpoena is overbroad because

4  it supposedly seeks every e-mail Machado has ever sent or received that concerns

5  MGA or certain employees at MGA, thereby violating his right of privacy.  Third,

6  Machado argues that requiring him to consent to the disclosure of the subject e-

7  mails violates his Fifth Amendment privilege against self-incrimination, since the

8  e-mails sought might be used by Mattel to prove its claims that Machado engaged

9  in criminal acts, including the criminal theft of Mattel's trade secrets.  Each of these

10  arguments is addressed in turn below.

11              **1.     Attorney-Client Privilege/Attorney Work Product**

12                      **Protection**

13         Mattel does not dispute the evidence submitted by Machado and his counsel

14  that some, if not all, of the e-mail communications made using the Account are

15  confidential attorney-client communications.  Instead, Mattel argues that Machado

16  has waived any protections attaching to those communications by failing to provide

17  a privilege log.

18         In response, Machado, citing a ruling by the prior discovery master,[4] argues

19  that no privilege log is required for communications occurring after the

20  commencement of the litigation in 2004.  However, as Mattel points out, Machado

21  did not become a party to the lawsuit until approximately the end of 2006 and

22  therefore should not be able to avoid logging allegedly privileged e-mails occurring

23  before that date.  The Discovery Master agrees that this later date is the appropriate

24

25  ---

[3] In addition to these substantive arguments, Machado also asserts that Mattel failed to sufficiently meet and confer
26  regarding the waiver issue. However, there is no indication that, given Machado's refusal to execute the release
form, it would have made any difference for Mattel to initiate discussions with Machado on Mattel's contention that
27  Machado had waived his objections to the Subpoena.

28  [4] *See* May 6, 2008 Order Denying Mattel's Motion for Protective Order Limiting the Temporal Scope of its Privilege
Log, attached as Exhibit A to the Declaration of Alexander H. Cote in Support of Opposition to the Motion to
Compel.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

                                                                    - 19 -                    ORDER NO. 22
                                                              [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT __
PAGE 69

1    cut-off for requiring a privilege log from Machado.[5]  The issue before the

2    Discovery Master therefore is whether any attorney-client communications

3    Machado may have had with counsel between the time he opened the Account in

4    June, 2005, on the one hand, and his entry into the lawsuit in November, 2006, on

5    the other hand, should be deemed to have been waived as a result of Machado's

6    failure to provide a privilege log identifying those communications.

7           As explained above, Machado learned of the Subpoena by means of the letter

8    Mattel sent him on October 29, 2007.  He asserted the attorney client privilege for

9    the first time in connection with the Subpoena in his Supplemental Opposition to

10   Mattel's Motion to Compel on January 14, 2008 – about 10 weeks later.  However,

11   he did not – and to this date has not – provided any privilege log.

12                           **a.    Legal Standard**

13          A party asserting privilege must promptly identify privileged documents.

14   The Ninth Circuit has ruled that, under certain circumstances, the failure to timely

15   identify privileged communications may be deemed a waiver of the privilege.

16   (*Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court*, 408 F.3d 1142 (9th Cir.

17   2005) [finding a waiver under the particular circumstances of that case but rejecting

18   a *per se* waiver rule that deems a privilege waived if a log is not produced within 30

19   days of service of a document request]).  The Advisory Committee notes to

20   Rule 26(b)(5) specifically anticipate waiver of privilege as a remedy for the failure

21   of a party to timely produce a privilege log.  (*See* Federal Rule Civil Procedure

22   26(b)(5) advisory committee's note (1993 Amendments) ["To withhold materials

23   without such notice is contrary to the rule, subjects the party to sanctions under

24   Rule 37(b)(2), and may be viewed as a waiver of the privilege or protection."]).

25          In determining whether a waiver has occurred, the Ninth Circuit has adopted

26

27   ---
     [5] According to Mattel, the cut-off for requiring a privilege log should begin on the date Mattel filed its motion to amend to add Machado as a party (i.e., November 20, 2006) rather than the date the Court granted the motion.

28   (Reply in Support of Motion to Compel, p. 11).  The Discovery Master accepts Mattel's use of this date and finds that any e-mails between Machado and his counsel subsequent to November 20, 2006 are protected by the attorney-client privilege without the necessity of producing a detailed privilege log.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 20 -                                            ORDER NO. 22
                                         [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ____

PAGE ____

1     "a holistic reasonableness analysis, intended to forestall needless waste of time and

2     resources, as well as tactical manipulation of the rules and the discovery process."

3     (*Burlington*, 408 F.3d at 1149). Pursuant to this approach, district courts are to

4     conduct a case-by-case determination of whether the privilege was waived, taking

5     into account the following four factors: (1) the degree to which the objection or

6     assertion of privilege enables the litigant seeking discovery and the court to

7     evaluate whether each of the withheld documents is privileged; (2) the timeliness of

8     the objection and accompanying information about the withheld documents; (3) the

9     magnitude of the document production; and (4) other particular circumstances of

10     the litigation that make responding to the discovery unusually easy or unusually

11     hard. (*Id.*).

12                   **b.    Application**

13         Here, the first *Burlington* factor weighs in favor of a finding of waiver,

14     because Machado has failed to provide any information that would enable Mattel or

15     the Discovery Master to determine whether any particular e-mail is in fact protected

16     by the privilege.

17         With respect to the second factor (timeliness of the objection), Machado first

18     asserted the objection in connection with the Subpoena in his supplemental

19     Opposition to Mattel's motion to compel instead of serving timely objections to

20     Mattel's subpoena pursuant to Federal Rule of Civil Procedure 45(c)(2)(B) (stating

21     that objections must be served before the earlier of the time specified for

22     compliance in the subpoena or 14 days after the subpoena is served). Still, although

23     untimely, the objection was asserted during the briefing of Mattel's motion, giving

24     Mattel an opportunity to address the objection. Moreover, the relatively brief delay

25     in Machado's assertion of the privilege does not appear to have resulted in any

26     prejudice to Mattel, especially in light of the Court's decision shortly thereafter to

27     stay all Phase 2 discovery for nearly one year. Finally, the Discovery Master notes

28     that Machado also raised an attorney-client privilege objection to the document

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 21 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___
PAGE ___

1   requests that were propounded directly on him and which contained similar requests

2   as the Subpoena. For all of these reasons, the Discovery Master concludes that this

3   factor weighs against a finding of waiver.

4         Turning to the third factor referenced in *Burlington*, there is no evidence in

5   the record regarding the number of e-mails in the Account. However, Machado has

6   not asserted that the universe of privileged e-mails is voluminous or that it would be

7   unduly burdensome for him to provide a log identifying those e-mails. Therefore,

8   this factor is either neutral or weighs in favor of a finding of waiver.

9         The fourth and final factor identified in *Burlington* likewise weighs in favor

10   of finding a waiver. The discovery at issue involves only a single e-mail account.

11   Machado apparently can readily review past e-mails in that Account, as

12   demonstrated by his declaration, in which he states that he first sent an e-mail from

13   the account on July 13, 2005  (Declaration of Carlos Gustavo Machado Gomez

14   dated February 27, 2009 in Support of Opposition to Motion to Compel ("Machado

15   Decl."), ¶ 4). Moreover, the fact that Machado was not named as a party to this

16   action until November, 2006 – nearly one and a half years after he opened the

17   Account – suggests that there would be few, if any privileged e-mails, at least with

18   respect to this case (although there may be privileged e-mails between Machado

19   and any attorney he may have retained in connection with his defense of criminal

20   proceedings in Mexico or elsewhere).

21         Although the four factors enumerated above on balance tend to weigh in

22   favor of finding a waiver, in *Burlington* the Ninth Circuit expressly cautioned

23   district courts against applying these factors mechanically, instead emphasizing that

24   the overriding consideration should be one of reasonableness within the context of

25   all the circumstances. (*Burlington*, 408 F.3d at 1149). Following this admonition,

26   the Discovery Master concludes that the harsh penalty of waiver is not warranted at

27   this time, and that, as set forth below, Machado should be accorded a short period

28   in which to provide a log of the e-mails allegedly protected by the attorney-client

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 22 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ____4____
PAGE      72

1  privilege sent to and received from the Account that are responsive to any of the

2  categories set forth in the Subpoena.  Such a log will enable Mattel to request that

3  the Discovery Master review the e-mails *in camera* for the purpose of ascertaining

4  whether production of those e-mails should be compelled.

5          **2.**     **Overbreadth**

6       As his second argument in opposition to Mattel's motion to compel,

7  Machado asserts that the Subpoena is overbroad:

8             because it seeks every email Mr. Machado has ever sent

9             or received that concerns Mattel, MGA, or certain

10             employees at MGA. [citation omitted].   Mattel is Mr.

11             Machado's former employer, and MGA is his current

12             employer.  Clearly emails that merely mention one of

13             these companies or individuals will not be necessarily

14             relevant to this matter.  Because Mattel's motion makes

15             no effort to justify this overbroad subpoena, the motion

16             should be denied.

17  (Opposition to Motion to Compel, p. 4).  This argument applies to fewer than half

18  of the 22 document requests set forth in the Subpoena, namely Document Request

19  Nos. 3 – 6 (e-mail messages sent to or from, or mentioning, Mattel) and Document

20  Request Nos. 8 – 10 and 16 – 17 (e-mail messages referring to Larian and other

21  MGA personnel).[6]

22       In response, Mattel argues that Machado waived his overbreadth objection

23  (as he did his other objections) by failing to timely assert it.  As noted above, it is

24  undisputed that Machado did not timely serve any objections to the Subpoena.

25  While the Discovery Master finds that this omission should not, under the

26  applicable case law and the circumstances presented here, be deemed a waiver of

27

28

---

[6] Although Mattel also seeks to discover e-mail communications made to certain other MGA employees, six of those requests are limited to the period before Machado claims to have opened the Account in 2005 and therefore do not request information that exists unless Machado actually opened the account prior to the stated time.

- 23 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___

PAGE ___ 73

1  *privileged* communications, the Discovery Master finds that it is appropriate to

2  deem this omission to be a waiver of other objections relating to *non-privileged*

3  documents, including Machado's overbreadth objection..

4         **3.     Fifth Amendment Protection Against Self-Incrimination**

5         As his final argument, Machado argues that consenting to the release of the

6  subject e-mails would, to the extent any incriminating information is contained in

7  those e-mails, constitute a violation of his Constitutional right against self-

8  incrimination:

9               As made clear in its motion, Mattel alleges that Mr.

10              Machado and others used the plot04@aol.com account, as

11              well as other unspecified accounts, in furtherance of

12              criminal acts, including the criminal theft of Mattel's

13              trade secrets.  [citation omitted]  And Mattel has

14              instigated criminal prosecutions in Mexico against Mr.

15              Machado for his alleged criminal use of his email

16              accounts, and he is at risk of prosecution in the United

17              States for the same alleged criminal conduct.

18  (Opposition to Motion to Compel, p. 9).

19         In response, Mattel argues that compelling Machado to sign the consent form

20  does not infringe Machado's Fifth Amendment rights because:  (1) Machado

21  waived his right to assert it; and (2) the Fifth Amendment does not apply in the

22  present circumstances.

23         At the outset, the Discovery Master notes that, in their briefs, the parties

24  appear to be arguing different applications of the Fifth Amendment privilege.

25  Mattel argues that compelling Machado to sign the release form, and the attendant

26  production of responsive e-mails, would not violate Machado's Fifth Amendment

27  rights. (Motion to Compel, p. 6).  By contrast, Machado appears to argue only that

28  the Fifth Amendment precludes the Discovery Master from ordering him to *identify*

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 24 -                                ORDER NO. 22
                              [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ____
PAGE      74

1   the e-mail accounts he has used for the past five years. (Opposition to Motion to

2   Compel, p. 9). At the April 27, 2009 telephonic hearing on the Motion to Compel,

3   counsel for Machado further stated that Machado was not asserting his Fifth

4   Amendment rights as to the Account. Nevertheless, given the parties' differing

5   understanding of the scope of relief sought by Mattel, the Discovery Master will

6   proceed to analyze the applicability of the Fifth Amendment to the production of e-

7   mails from the Account.

8                  a.      Waiver

9        As set forth above, Machado failed to assert his Fifth Amendment rights in

10   response to the Subpoena Mattel served on Yahoo!. However, he did assert his

11   Fifth Amendment rights in connection with Mattel's document request which

12   Mattel served on him two months prior to the Subpoena (and which, as Mattel

13   admits, seeks many of the same e-mails sought by the Subpoena). Accordingly,

14   Mattel was on notice that Machado objected to the production of those e-mails on

15   the ground that producing them (or allowing a third party to produce them) could

16   incriminate him.

17                 b.      Applicability Of The Fifth Amendment

18       The Fifth Amendment provides individuals with a privilege against self-

19   incrimination. A violation of that privilege occurs when "the accused is compelled

20   to make a Testimonial Communication that is incriminating." (*Fisher v. United

21   States*, 425 U.S. 391, 408 (1976); *see also United States v. Authement*, 607 F.2d

22   1129, 1131 (5th Cir.1979) (articulating the three factor test of (1) compulsion,

23   (2) testimonial communication, and (3) incrimination)).

24       Generally, "a person inculpated by materials sought by a subpoena issued to

25   a third party cannot seek shelter in the Self-Incrimination Clause of the Fifth

26   Amendment." (*S.E.C. v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 742 (1984) ("*Jerry T.

27   O'Brien*")). The Ninth Circuit has applied *Jerry T. O'Brien* to overrule the

28   assertion of the Fifth Amendment privilege in situations where the documents

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 25 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT       4
PAGE         75

1  sought are in the possession and custody of a third party. (*In re Grand Jury*

2  *Subpoena (Maltby)*, 800 F.2d 981, 983 (9th Cir. 1986)). There, the Ninth Circuit

3  upheld enforcement of a subpoena seeking records from a police department over

4  the objections of the person to whom the records pertained, noting that "[a] party is

5  privileged from producing the evidence [himself] but not from its production." (*Id.*

6  [internal citation omitted]).

7        In this case, there is, however, one element that was not present in the above-

8  referenced cases: unlike the aforementioned cases, the production of documents by

9  the third party here apparently cannot be effected without the consent of the

10  individual asserting the Fifth Amendment privilege (i.e., Machado). Therefore, the

11  documents are effectively in Machado's exclusive control. So long as he refuses to

12  consent to their release, the only way to obtain them – according to Mattel – is by

13  compelling Machado to consent to their release. Thus, the question becomes

14  whether ordering Machado to consent to the production of the subject e-mails can

15  be deemed "self-incrimination."

16        In *United States v. Doe*, 465 U.S. 605, 610 (1984) ("*Doe*"), the Supreme

17  Court barred enforcement of a subpoena issued to a small business owner in

18  connection with a grand jury investigation into corruption in the awarding of county

19  and municipal contracts. The court drew a distinction between the contents of the

20  underlying documents sought by a subpoena and the act of compelling the person

21  controlling the documents to produce them, stating, "[a]lthough the contents of a

22  document may not be privileged, the act of producing the document may be." (*Id.*,

23  at 612). Applying that distinction, the court found that the underlying business

24  records sought by the subpoena were not protected by the Fifth Amendment

25  because they were not prepared involuntarily or under compulsion. However, the

26  court also found that the act of producing the records was privileged because such

27  an act would constitute a tacit admission by the subpoenaed party that the

28  documents exist and are responsive to the categories set forth in the subpoena and

1   would further obviate the need for the government to authenticate the documents.

2   (*Id.*).  Accordingly, the court held that the Fifth Amendment shielded the subpoena

3   recipient from responding to the subpoena, on the grounds that such a response

4   would constitute a compelled testimonial act of self incrimination.

5          Here, as in *Doe*, the contents of the documents sought by the Subpoena are

6   clearly not protected by the Fifth Amendment, since there is no showing that

7   Machado wrote the subject e-mails involuntarily.  The only question is whether the

8   act of signing a consent form authorizing the production of the e-mails by Yahoo!

9   would constitute compelled testimonial self-incrimination.  For the reasons set forth

10  below, the Discovery Master concludes that it would not.  Machado's compelled

11  execution of the consent form would not have the same effect as the "tacit

12  admission" in *Doe*, because the documents would not be produced by Machado but

13  rather by Yahoo!.  Accordingly, Machado's conduct would not give rise to any

14  inference that the documents actually produced by Yahoo! are authentic or

15  responsive to the Subpoena.  (*Id.*, at 613).  In other words, Machado's consent,

16  while compelled, would not be testimonial in nature.

17         This conclusion is confirmed by *United States v. Browne*, 624 F.Supp. 245

18  (N.D.N.Y. 1985) and *United States v. Ghidoni*, 732 F.2d 814 (11th Cir. 1984)

19  ("*Ghidoni*"), cases in which the court enforced orders compelling a defendant to

20  execute a consent directive releasing subpoenaed documents.  In answering the

21  question of whether the signing of a consent form required to permit a bank to

22  release account information constitutes a compelled testimonial self-incrimination,

23  the *Ghidoni* Court, in language directly applicable here, distinguished *Doe* as

24  follows:

25                The subpoena duces tecum in *Doe* required the taxpayer,

26                a sole proprietor, to produce certain records in his

27                possession, thereby establishing existence, possession or

28                control, and authenticity, and removing the taxpayer's

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 27 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT __77__
PAGE

1      ability to present arguments to the contrary.  Conversely,
2      Ghidoni has to produce only a directive, which contains
3      no testimony regarding the existence of bank accounts or
4      his control of them.  The account records, if they exist, are
5      held by the bank and any testimony on the existence,
6      control, or authentication elements of the records would
7      have to come from the records themselves and the bank
8      officials.  After executing the directive, Ghidoni can still
9      maintain that the records do not exist, that he does not
10     control them, and that they are not authentic.  These
11     factors demonstrate the nontestimonial nature of the
12     consent directive.

13  (*Ghidoni*, 732 F.2d at 819).  Accordingly, the court in *Ghidoni* held that the order

14  requiring the respondent to sign the bank consent form was not testimonial, but

15  merely required him "to waive a barrier to permit [a third party] to produce

16  documents."  (*Id.* at 819 fn.12).  That same reasoning applies here, defeating

17  Machado's claim that an order compelling him to sign the requested consent form

18  would constitute compelled *testimonial* self-incrimination.

19       Moreover, even if Machado could somehow demonstrate that signing the

20  consent form would constitute a compelled, testimonial act, he would still not be

21  able to satisfy the third prong of the test required to successfully invoke the Fifth

22  Amendment, namely showing that the compelled, testimonial act constitutes self-

23  incrimination.  A claim of Fifth Amendment privilege may be asserted only if there

24  are "'substantial hazards of self-incrimination that are real and appreciable, not

25  merely imaginary and unsubstantial,' that information sought" could be used as

26  evidence of criminal liability.  (*U.S. v. Drollinger*, 80 F.3d 389, 392 (9th Cir. 1996)

27  (quoting *United States v. Rendahl*, 746 F.2d 553, 555 (9th Cir.1984)); *see also*

28  *United States v. Neff*, 615 F.2d 1235, 1239 (9th Cir.1980)).  In order to successfully

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 28 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___
PAGE ___   78

1  defeat a request for information, the party asserting the privilege "must have

2  'reasonable cause to apprehend [such] danger from a direct answer' to questions

3  posed to him." (*Id.* [internal citation omitted]). Moreover, in order for a trial court

4  to determine whether the Fifth Amendment protection applies to a given request, it

5  must determine "whether a real and appreciable danger of incrimination exists" by

6  "examin[ing] 'the questions, their setting, and the peculiarities of the case.'" (*Id.*

7  [quoting *Neff*, 615 F.2d at 1240]).

8          Here, Machado asserts that, because Mattel has instigated criminal

9  proceedings against him in Mexico and is attempting to persuade law enforcement

10  officials in the United States to prosecute him, Mattel would likely use any relevant

11  e-mails to establish his criminal liability. (Opposition to Motion to Compel, p. 9).

12  Machado reasons that, given this factual background, "the identification of

13  [Machado's] e-mail accounts is a direct link to potentially incriminating evidence."

14  (*Id.*). Although Machado does not expressly so argue, the same reasoning would

15  presumably apply to individual e-mails contained in the Account that is the subject

16  of this motion.

17          Even conceding that point, Machado does not take the necessary next step of

18  making an offer of proof identifying specific e-mails that might be deemed

19  incriminating so that the Discovery Master could test the claim.[7] Machado appears

20  to assume – incorrectly – that merely raising the general, abstract possibility that

21  *some* of the e-mails might be incriminating is sufficient to carry his burden of

22  establishing that the Fifth Amendment applies to bar production of *any and all* of

23  the e-mails. Such an assumption is contrary to the law in this Circuit. As Mattel

24  correctly points out:

25              [Machado's objection] on Fifth Amendment grounds . . .

26

27  ───────────────
[7] *See United States v. Bodwell*, 66 F.3d 1000, 1002 (9th Cir. 1995) ["In this case … [the respondent] presented his Fifth Amendment claim and made an offer of proof in the district court contempt proceedings."]; *United States v.*

28  *Argomaniz*, 925 F.2d 1349, 1355 (11th Cir. 1991) [remanding case to district court for *in camera* proceeding to determine, on a question-by-question basis, whether the respondent could properly invoke the Fifth Amendment]).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 29 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 4
PAGE 79



1        [is] an improper blanket assertion of the privilege

2        preventing Mattel from even testing whether particular

3        documents are or are not subject to the privilege.  See

4        *United States v. Pierce*, 561 F.2d 735, 741 (9th Cir. 1977)

5        (Party cannot invoke a blanket Fifth Amendment claim).

6        Rather, ... any Fifth Amendment claim must be tested on

7        a document-by-document basis.

8  (Reply in Support of Motion to Compel, pp. 4 – 5).

9      Applying this standard here, Machado has failed to sufficiently identify any

10  potentially incriminating evidence contained in the subject e-mails.  In the absence

11  of such a showing, the Discovery Master cannot make the required determination of

12  "whether a real and appreciable danger of incrimination exists" (*Drollinger*, 80

13  F.3d at 392) such that the Fifth Amendment protection applies.

14      **D.**    **Machado's Request For Sanctions**

15      Machado contends that "Mattel's motion was wholly baseless and based on

16  misrepresentations and bad faith omissions designed to mislead the special master,"

17  and, on that basis requests sanctions of $3,000.  (Opposition to Motion to Compel,

18  p. 10).  After a careful review of the record, the Discovery Master finds that the

19  alleged "misrepresentations and omissions" alleged by Machado are illusory.

20  Taken as a whole, the Motion to Compel fairly and accurately reflects the record.

21  Instead of only attaching the Subpoena and relevant correspondence, Mattel has

22  provided the Discovery Master with additional documents necessary to allow him

23  to evaluate the circumstances and context surrounding the service of the Subpoena,

24  including Mattel's prior document requests to Machado and Machado's responses

25  and objections to the same.  These latter documents benefitted Machado by

26  enabling the Discovery Master to rule in Machado's favor on the issue of waiver of

27  the attorney-client privilege, and to otherwise provide a complete and balanced

28  evaluation of the parties' contentions.  Accordingly, there is no basis for Machado's

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT  4

80

1   claim that Mattel engaged in any conduct warranting sanctions.

2   **E.    Summary Of Ruling Regarding The Motion To Compel**

3   While Mattel requests that the Discovery Master compel Machado to sign a

4   consent form permitting Yahoo! to release all documents responsive to the

5   Subpoena, including e-mails protected by the attorney-client privilege and attorney

6   work-product doctrine, the Discovery Master finds that it is not reasonable or

7   equitable, under the facts and circumstances presented here, to deem Machado to

8   have waived those protections.

9   On the other hand, the Discovery Master does not believe that, simply

10   because there may be some privileged communications among the e-mails

11   responsive to the Subpoena, Machado should be able to shield *other* unprivileged e-

12   mails that are potentially probative of Mattel's Phase 2 claims from discovery.

13   Moreover, it is neither fair nor reasonable to require Mattel to accept Machado's

14   unsubstantiated, unilateral determination that no unprivileged, responsive e-mails

15   exist.

16   Accordingly, the Discovery Master will order Machado to sign a consent

17   form permitting that Yahoo! produce directly to the Discovery Master the

18   documents requested in the Subpoena.  The Discovery Master will direct his staff to

19   Bates number the documents produced by Yahoo! and will then forward them to

20   counsel for Machado.  Upon receipt of those documents, Machado shall prepare a

21   log and identify by bates range only all e-mails exchanged with his attorneys after

22   November 20, 2006.  Machado shall further prepare a log:  (1) identifying by date,

23   sender, recipient and subject matter, each and every e-mail in the Account that was

24   created prior to November 20, 2006 and claimed to be protected by the attorney

25   client privilege or attorney work product doctrine; and (2) setting forth a brief

26   explanation of the facts supporting that assertion.  Machado shall submit that log to

27   the Discovery Master and Mattel's counsel and shall simultaneously produce all

28   documents not identified in the log to Mattel.  As to those documents identified in

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 31 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ____
PAGE   81

1    the log as privileged, Mattel may request that the Discovery Master conduct an *in*

2    *camera* review of those documents to determine whether any further production is

3    warranted.

### III.    MATTEL'S MOTION FOR RECONSIDERATION

#### A.    Factual Background

##### 1.    Mattel Serves The Subject Document Request

On June 13, 2007, Mattel propounded its First Set of Requests for Production

of Documents and Things to Isaac Larian ("Larian"). That set of document

requests included Document Request No. 198, which requests "All

COMMUNICATIONS between YOU and any individual while the individual was

employed by MATTEL." Document Request No. 198 is hereinafter referred to as

the "Request." Larian objected to the Request and did not produce any responsive

documents. On October 11, 2007, Mattel moved to compel the production of

documents responsive to the Request (together with other requests in the same set

of requests for production). Neither party proposed or briefed any temporal limit

on the request for Larian's communications with Mattel employees.

##### 2.    The Prior Discovery Master's December 31, 2007 Order

The prior discovery master ruled on Mattel's motion in an order dated

December 31, 2007 (the "Prior Order"). With respect to the Request, the prior

discovery master found that the Request "is reasonably tailored to the specific and

numerous allegations in the case regarding alleged trade secret theft." At the same

time, however, he *sua sponte* limited the request to the time period of 1999 through

2005 based on his understanding that this was the only time period during which

Mattel had alleged trade secret theft by MGA:

> Nevertheless, an additional temporal limitation is appropriate to
> tailor the request to Mattel's allegations of trade secret theft. The
> alleged trade secret theft began with Bryant's conduct in 1999
> and continued to 2005. Accordingly, Larian shall produce

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 32 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT
PAGE 82

1       documents responsive to Request No. 198 that are limited to the

2       time frame 1999 to 2005.

3       Mattel argues that, in so ruling, the prior discovery master misconstrued the

4    scope of Mattel's counterclaims.  Mattel points out that, in connection with its

5    RICO claims, Mattel alleged that the MGA Parties, including Larian, are engaged

6    in an ongoing, open-ended conspiracy that includes the theft of Mattel's trade

7    secrets.  (SAAC, ¶¶ 89 – 93 and 99 – 102).  In addition to the RICO allegations,

8    Mattel also argues that the SAAC alleges that in recent years MGA and Larian have

9    engaged in a pattern of targeting and recruiting Mattel employees with access to

10   Mattel's trade secret, confidential and proprietary information and that certain of

11   these employees copied and took Mattel information and disclosed it to MGA.  (*Id.*,

12   ¶ 77).

13      Mattel further emphasizes that it has obtained evidence of various post-2005

14   instances of MGA's wrongdoing through the discovery process, including MGA's

15   alleged solicitation of Mattel employees to copy and disclose Mattel trade secrets to

16   MGA.  (Motion for Reconsideration, pp. 4 – 5).

17          **3.    Mattel Seeks Reconsideration Of The Prior Order**

18      On January 16, 2008, Mattel filed a motion for reconsideration seeking to

19   amend the Prior Order to include Larian's post-2005 communications with Mattel

20   employees.  The motion was stayed with other Phase 2 discovery, then denied

21   without prejudice by a September 23, 2008 order in which the Court denied all

22   pending motions without prejudice for reasons of administrative convenience.

23      The Court lifted the stay on Phase 2 discovery on January 6, 2009.  Three

24   weeks later, on January 28, 2009, Mattel sent a letter to Larian's counsel requesting

25   a further meet and confer before filing this renewed motion for reconsideration.  On

26   February 11, 2009, Larian agreed to produce his post-2005 communications with

27   Mattel employees.  Larian subsequently served Mattel with a verified supplemental

28   response to the Request stating that no responsive post-2005 documents exist.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 33 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT
PAGE        83

1   However, Larian declined Mattel's demand that he stipulate to amend the Court's

2   prior order excusing him from producing such communications.  Mattel then filed

3   the present Motion for Reconsideration.

**B.     Relief Sought By Mattel**

5   Mattel requests that the Discovery Master amend the Prior Order to require

6   Larian to produce his post-2005 communications with Mattel employees.

**C.     Analysis**

8   MGA advances two arguments in opposition to the Motion.  First, MGA

9   argues that Larian's post-2005 communications with Mattel employees are not

10  relevant to Mattel's RICO claims:

> Mattel's RICO allegations are based entirely on trade
> secret misappropriation by former Mattel employees
> Machado, Trueba, Vargas, Brawer, and Brisbois,
> allegations that are limited to pre-2006 conduct.  (SAAC
> ¶¶ 91 – 92).  In addition, Mattel's SAAC does not allege
> that there are any post-2006 instances of trade secret theft
> by former Mattel employees, only that there has been an
> alleged 'continuing use' of the previously 'stolen' trade
> secrets by MGA post-2006 which constitutes an on-going
> conspiracy.  (SAAC ¶¶ 91 – 92).

21  (Opposition to Motion for Reconsideration, pp. 3 – 4).

22  MGA's reading of the SAAC is too narrow.  Paragraph 92 of the SAAC

23  alleges as follows:

> The MGA Criminal Enterprise and Bratz Criminal
> Enterprise as described herein are … continuing
> enterprises because, among other reasons, each is
> designed to … unlawfully acquire the confidential
> business information and property of Mattel . . . .The



EXHIBIT ___
PAGE 84

1                conduct of each enterprise continues through the date of

2                this Second Amended Answer and Counterclaims and is

3                ongoing by virtue of MGA's continuing use of Mattel's

4                information and property . . .

5 (SAAC, ¶ 92). Contrary to MGA's assertion, Mattel does not allege that the *only*

6 reason the alleged criminal enterprise is "ongoing" is because MGA continues to

7 use Mattel's information and property. Additionally, Mattel alleges that the

8 purpose of the alleged criminal enterprises is to "*acquire* the confidential business

9 information and property of Mattel," and that this conduct "continues through the

10 date of [the SAAC (i.e., July 12, 2007)]."

11       Second, MGA argues that the Motion for Reconsideration is moot because

12 Larian has agreed to produce any responsive post-2005 documents and has served a

13 supplemental response stating that he has been unable to locate any such

14 documents. Mattel rejects that contention, arguing that the supplemental response

15 improperly seeks to "resurrect numerous general and specific objections that were

16 previously rejected by [the prior discovery master] in his December 31, 2007

17 Order." (Reply in support of Motion for Reconsideration, p. 3). According to

18 Mattel, this "litany of objections and limitations that render illusory any suggestion

19 by MGA that it is actually agreeing to produce the documents Mattel seeks." (*Id.*,

20 pp. 3 – 4).

21       Because of these allegedly improper qualifications and objections, Mattel

22 contends that Larian's supplemental response is unreliable. Mattel further argues

23 that "only an order can modify an order," (*id.*, p. 1), and suggests that MGA's

24 refusal to submit to court-ordered compliance is to "enable MGA to withhold

25 documents based on spurious or hidden limitations or caveats." (*Id.*)

26       The Discovery Master finds these arguments persuasive. Given the

27 allegations of the SAAC, Larian's compliance with the Request should not have

28 been limited to documents pertaining to communications before 2006.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 35 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ⌐|
PAGE Ω 5

**D.     Summary Of Ruling Regarding The Motion For Reconsideration**

For all of the above reasons, the Discovery Master grants the relief requested by Mattel and amends the Prior Order to remove the temporal restriction imposed by the prior discovery master.

## IV.    MATTEL'S OBJECTION MOTION

Mattel's Objection Motion involves three interrogatories related to MGA's trade dress claims.

**A.     Interrogatory Nos. 48 – 50**

On October 25, 2007, Mattel served its Seventh Set of Interrogatories on the MGA Parties, including Interrogatory Nos. 48, 49 and 50 (the "Interrogatories"). (Declaration of Jon Corey in Support of Mattel's Supplemental Memorandum concerning the Objection Motion ("Corey Decl."), Ex. 1 at p. 7). The Interrogatories ask the MGA Parties to identify (1) each trade dress that has been infringed by Mattel, (2) the allegedly infringing Mattel products, and (3) all facts supporting MGA's contention that the trade dress is protectable:

- Interrogatory No. 48: "Separately IDENTIFY each trade dress that YOU contend MATTEL has copied, infringed or dilute or that is otherwise the subject of YOUR claims, defenses or allegations in this action." (*Id.*)

- Interrogatory No. 49: "For each trade dress identified in response to Interrogatory No. 48, separately and fully IDENTIFY each and every MATTEL product packaging or other matter that YOU contend copies, infringes or dilutes such trade dress, including without limitation by describing fully and separately, for each such MATTEL product, packing or other matter, each and every element of the claimed trade dress that YOU contend MATTEL has copied, infringed or diluted." (*Id.*).

- Interrogatory No. 50: "For each trade dress identified in response to Interrogatory No. 48, separately and completely IDENTIFY all facts that support YOUR contention that such trade dress is protectable, all

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 36 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___
PAGE ___

1      DOCUMENTS that REFER OR RELATE to the foregoing and all

2      PERSONS with knowledge of the foregoing." (*Id.*).

3      **B.   The MGA Parties' Responses To The Interrogatories**

4      The MGA Parties initially responded to the Interrogatories with only

5   objections. (*Id.*, Ex. 3 at pp. 6 – 8, 12 – 14 and 17 – 19). On November 30, 2007,

6   the MGA Parties supplemented their responses to the Interrogatories. (*Id.*, Ex. 3 at

7   pp. 8 – 11, 14 – 16 and 19 – 22). The substantive portion of the responses stated as

8   follows:

9      • Supplemental Response to Interrogatory No. 48: ". . . Subject to and

10       without waiving the foregoing objections, MGA provides the following

11       supplemental response: The unique and distinctive trade dress of MGA's

12       'Bratz' line of dolls that Mattel has copied, infringed, and diluted is

13       comprised of the following elements: the unique, unusual geometric-

14       shaped packaging, with increased transparency including transparent open

15       sides, and with a 'flying banner' style slogan; the proportions and special

16       arrangements of the eyes, noses, and mouths and hairlines; the shape of

17       the eyes, faces, heads and lips; the unique face paint, design, and color

18       scheme depicting facial features; the disproportionately oversized heads;

19       the oversized shoes; and the trendy, hip clothing and hair styles. The

20       unique and distinctive trade dress of MGA's 'Bratz Petz' line of dolls that

21       Mattel has copied, infringed, and diluted is comprised of the following

22       elements: the open box packaging with no top cover and with partial side

23       panels that slope from a narrow front panel to a higher back panel; the

24       large, humanlike, artfully made-up eyes with long eyelashes that sweep

25       out and away from the outer corner of the eye; the disproportionately

26       oversized heads; and the trendy human clothing." (*Id.*, Ex. 3 at pp. 10 –

27       11).

28   //

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 37 -                     ORDER NO. 22
                    [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 4
87

- <u>Supplemental Response to Interrogatory No. 49</u>: ". . . Subject to and without waiving the foregoing objections, MGA provides the following supplemental response:  Each of Matte's 'My Scene' fashion dolls copied, infringed and diluted:  the unique, unusual geometric-shaped packaging, with increased transparency including transparent open sides, and with a 'flying banner' style slogan; the proportions and special arrangements of the eyes, noses, and mouths and hairlines; the shape of the eyes, faces, heads and lips; the unique face paint, design, and color scheme depicting facial features; the disproportionately oversized heads; the oversized shoes; and the trendy, hip clothing and hair styles.  Each of Mattel's 'My Scene' pet dolls copied, infringed, and diluted:  the large, humanlike, artfully made-up eyes with long eyelashes that sweep out and away from the outer corner of the eye; the disproportionately oversized heads; the trendy human clothing; and the open box packaging with no top cover and with partial side panels that slope from a narrow front panel to a higher back panel." (*Id.*, Ex. 3 at p. 16).

- <u>Supplemental Response to Interrogatory No. 50</u>: ". . . Subject to and without waiving the foregoing objections, MGA provides the following supplemental response:  That the elements of MGA's trade dress in its 'Bratz' and 'Bratz Petz' lines are aesthetic and non-functional is apparent from an examination of the Bratz products and packaging, compared to other leading fashion dolls.  That MGA's packaging was and is inherently distinctive is apparent from a comparison of said packaging to the state of fashion doll packaging when Bratz was introduced in 2001, the fact that following the Bratz introduction competitors have copied significant, innovative elements of the Bratz packaging, and the fact that the packaging has won industry awards.  MGA's trade dress has also acquired secondary meaning as a source indicator for 'Bratz' as a result of the

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ____
PAGE ____ 88

1   enormous success of the Bratz dolls in the market, and the marketing and

2   promotional efforts employed by MGA to support Bratz.  Documents

3   evidencing the market strength of the Bratz trade dress features include

4   documents evidencing (i) sales totals; (ii) package awards; (iii) package

5   related designs patents; (iv) publicity given to the Bratz dolls and their

6   success; and (v) documents evidencing industry awards given to MGA on

7   account of the success of the Bratz dolls and/or their innovative

8   packaging, and the fact that said packaging has been copied and

9   mimicked by competitors.  Persons with knowledge of the packaging

10   issues include Steffen Smith (Director of Structural Engineering/Creative

11   Package Development), Leon Djiguerian (in Product Development),

12   Samir Khare, and Aileen Storer (Creative Director of Bratz & Dolls).

13   Such issues also fall within the scope of expert discovery.  Many

14   individuals are knowledgeable of the striking similarities between the

15   protected trade dress of Bratz and features of My Scene Barbie dolls and

16   packaging.  These include Carter Bryant and Paula Garcia.  That the

17   unique aspects of the Bratz dolls heads/facial features have acquired

18   secondary meaning falls within the scope of expert testimony." (*Id.*, Ex. 3

19   at pp. 20 – 21).

20   **C.    Mattel's Motion To The Prior Discovery Master**

21   Unsatisfied with the MGA Parties' supplemental responses, Mattel moved to

22   compel further responses to the Interrogatories on December 20, 2007.

23   (Declaration of Jon Corey in Support of Mattel's Supplemental Reply concerning

24   the Objection Motion ("Supplemental Corey Decl."), Ex. 7 at p. 39).  Mattel

25   argued, among other things, that with respect to Interrogatory Nos. 48 and 49 the

26   MGA Parties "merely provided what [they] claim[] are the 'basic facts,' without

27   any details." (*Id.*, Ex. 7 at p. 24).  Mattel further asserted that the MGA Parties

28   have "no basis for failing to provide full and complete responses to Interrogatory


EXHIBIT  L
PAGE  89

1 | Nos. 48 and 49." (*Id.*, Ex. 7 at p. 25).

2 | Mattel similarly argued that the MGA Parties' response to Interrogatory No.

3 | 50 contained only basic facts without any specific detail. (*Id.*, Ex. 7 at p. 29).

4 | Mattel further argued that the response to Interrogatory No. 50 was artificially

5 | limited by the MGA Parties' interpretation of Mattel's defined terms and

6 | objections, and did not identify specific documents as required. (*Id.*, Ex. 7 at pp. 29

7 | – 30 and 32). Finally, Mattel argued that the "Court should overrule MGA's

8 | objections" and compel a complete response to Interrogatory No. 50. (*Id.*, Ex. 7 at

9 | p. 32).

**D.    The Opposition The MGA Parties Filed With The Prior Discovery Master**

The MGA Parties filed their opposition to Mattel's motion to compel on December 31, 2007. (*Id.*, Ex. 5, p. 33). The MGA Parties' opposition was based entirely on three arguments. First, MGA argued that the Interrogatories related to a Phase 2 issue. (*Id.*, Ex. 5 at p. 30). Second, they argued that the substantive responses they had provided to Mattel gave Mattel "the principal facts supporting [their] contentions regarding Mattel's trade dress infringement, in compliance with [their] Rule 33 obligations." (*Id.*) Finally, the MGA Parties argued that they were permitted to reserve the right to supplement the Interrogatories during expert discovery. (*Id.*, Ex. 5 at pp. 30 – 31). The MGA Parties did not argue that the Interrogatories were objectionable on any other ground. (*Id.*).

**E.    The Reply Mattel Filed With The Prior Discovery Master**

On January 7, 2008, Mattel filed its reply in support of its motion to compel and responded to each of the arguments raised by the MGA Parties in their opposition. (*Id.*, Ex. 8 at pp. 27 – 28 and 37).

**F.    The Prior Discovery Master's February 15, 2008 Order**

On February 15, 2008, the prior discovery master denied Mattel's motion to compel concerning the Interrogatories ("February 15, 2008 Order"), finding as

EXHIBIT ___

PAGE ___ 90

1  follows:

2         The MGA parties are in substantial compliance with Rule

3         33, having identified numerous elements of the trade

4         dress they contend Mattel has infringed.  More

5         specifically, the MGA parties' responses identify Mattel's

6         'My Scene' fashion and pet dolls as the Mattel products

7         that infringe their trade dress.  The MGA parties also set

8         forth the principal facts supporting their contention that

9         their trade dress is protectible [sic] under the applicable

10        trade dress legal principles, including that the trade dress

11        is aesthetic and non-functional, inherently distinctive, and

12        has acquired a secondary meaning.  That the interrogatory

13        responses include a reservation of rights to supplement

14        during expert discovery does not render the responses

15        inherently improper or inadequate.  Mattel does not

16        contest that the identification of the elements and products

17        subject to trade dress infringement will be a subject of

18        expert discovery.

19  (Corey Decl., Ex. 5 at p. 13.

20     **G.    Mattel Appeals The Prior Discovery Master's February 15, 2008**

21            **Order**

22         On March 3, 2008, Mattel appealed the February 15, 2008 Order to the Court

23  ("Appeal").  (Corey Decl., Exh. 6, p. 25).  Although it affirmed the February 15,

24  2008 Order in most respects, the Court declined to rule on the Interrogatories

25  because they were directed at Phase 2 issues and such discovery had been stayed.

26  (Corey Decl., Ex. 6 at p. 3).  Nevertheless, the Court made it clear that Mattel could

27  "raise the issue again" once the stay on Phase 2 discovery was lifted.  (*Id.*)

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

-41-                                    ORDER NO. 22
                                [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___
PAGE ___    91

**H.    The Court Lifts The Stay On Phase 2 Discovery**

On January 6, 2009, the Court vacated the stay on Phase 2 discovery.  (Order dated January 6, 2009).  Mattel then renewed its Appeal by filing the Objection Motion on January 20, 2009.  (Corey Decl., Ex. 8).  The Objection Motion indicated that Mattel would "lodge copies of the relevant portions of papers filed in connection with" the Appeal.  (Objection Motion, p. 4).

**I.    Order Referring Mattel's Objection Motion To The Discovery Master**

On March 12, 2009, the Court referred Mattel's Objection Motion to the Discovery Master.  (*See* Order dated March 12, 2009 attached to the Corey Decl. as Ex. 9).  The Court instructed the Discovery Master to "consider the issues presented by the motion for review as if presented to him in the first instance . . ." (*Id.*).

**J.    The Relief Sought By Mattel's Objection Motion**

In its Objection Motion, Mattel requests that the Discovery Master overrule all of the MGA Parties' objections to the Interrogatories.  (*See* Supplemental Memorandum in Support of Objection Motion, p. 16).  Mattel also seeks an order requiring the MGA Parties "to provide complete responses to" the Interrogatories.  (*Id.*).  However, this latter request was narrowed by Mattel in other parts of its pleadings, at least with respect to Interrogatory Nos. 48 and 49.  Specifically, Mattel indicated in its Supplemental Reply that, assuming the objections are overruled, Mattel merely seeks a supplemental response by the MGA Parties that "*confirm*[s] that [they have] provided a full and complete response to" Interrogatory No. 48.  (*See* Supplemental Reply, p. 9 [emphasis added]; *see also* Supplemental Memorandum, p. 5).  Mattel further stated that the response to Interrogatory No. 49 is only inadequate because "it is unclear what information [the] MGA [Parties are] holding back [due to their] meritless objections." (Supplemental Reply, p. 10).

**K.    The MGA Parties' Opposition To The Objection Motion**

The MGA Parties oppose the Objection Motion on three grounds.  (*See*

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 42 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 21
PAGE 92

1   MGA's Supplemental Opposition, pp. 9 – 23).  First, the MGA Parties argue that

2   Mattel waived its right to challenge the validity of their objections to the

3   Interrogatories.  (*Id.*, pp. 16 – 18).  Second, the MGA Parties argue that all of their

4   objections to the Interrogatories are meritorious.  (*Id.*, pp. 18 – 24).  Finally, the

5   MGA Parties argue that the substantive responses they provided are adequate.  (*Id.*,

6   pp. 9 – 16).

7         **L.**    **Analysis**

8               **1.**    **The MGA Parties Abandoned The Vast Majority Of Their**

9                    **Objections**

10       Both the MGA Parties and Mattel devote a significant portion of their briefs

11  to the topic of waiver.  The MGA Parties initially raised the issue in their

12  Supplemental Opposition, claiming that Mattel waived any right to have the

13  objections they asserted to the Interrogatories overruled by not making such an

14  argument in its original Appeal of the February 15, 2008 Order.  (*Id.*, pp. 16 – 18).

15  In response, Mattel argues that it not only preserved its right to challenge the

16  objections but that the MGA Parties waived their right to argue the majority of the

17  objections should be enforced by failing to assert them in their opposition to

18  Mattel's original motion to compel submitted to the prior discovery master.

19  (Supplemental Reply, p. 13 – 15).

20       The Discovery Master finds that Mattel has the more persuasive argument.

21  While the MGA Parties claim that "Mattel did not address any of MGA's

22  objections to Interrogatories 48 through 50 in its original Appeal" to the Court,

23  (Supplemental Opposition, p. 17), the sequence of events leading up to the Appeal

24  establish that Mattel did not need to make any such argument as part of the

25  Objection Motion.

26       In its motion submitted to the prior discovery master, Mattel argued that "the

27  Court should overrule MGA's objections and compel [a] complete response[] to

28  Interrogatory No[.] . . . 50."  It further argued that "MGA had *no basis* for failing to

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 43 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___
93

1    provide complete and full responses to Interrogatory Nos. 48 and 49."

2    (Supplemental Corey Decl., Exh. 7, pp. 24 -25 [emphasis added]).  By directly

3    challenging the MGA Parties' objections to Interrogatory No. 50 and by stating that

4    they had "no basis" for refusing to provide more complete responses to

5    Interrogatories Nos. 48 and 49, Mattel placed the burden on the MGA Parties to

6    justify any objections that they wished to rely on to resist the discovery in their

7    opposition.  (*Marshall v. Rain*, 2008 WL 2186184, *1 (S.D. Cal. May 23, 2008)

8    ["the burden of resisting discovery is on the party opposing discovery"]; *El-*

9    *Shaddai v. Wheeler*, 2009 WL 301824, *2 (E.D. Cal. February 5, 2009) ["The party

10   opposing discovery has the burden of showing that discovery should not be

11   allowed, and of clarifying, explaining and supporting its objections"]).

12        As explained in one of the cases cited by the MGA Parties (i.e., *Moses v.*

13   *Halstead*), "[w]hen ruling on a motion to compel, the Court will consider only

14   those objections that have been (1) timely asserted, *and* (2) *relied upon in response*

15   *to the* motion to compel." (236 F.R.D. 667, 672 n. 8 (D. Kan. 2006) [emphasis

16   added]; *see also Cardenas v. Dorel Juvenile Group, Inc.*, 232 F.R.D. 377, 380 n. 15

17   (D.Kan.2005)). "Objections initially raised but not relied upon in response to the

18   motion to compel will be deemed abandoned." (*Moses*, 236 F.R.D. 672 n. 8). Put

19   another way, a party who fails to assert its objections in its opposition to a motion

20   to compel cannot later invoke the objections to resist the discovery. (*Morgenstern*

21   *v. Int'l Alliance of Theatrical Stage Empl.*, 2006 WL 2385233, *2 n. 5 (N.D. Cal.

22   August 17, 2006) ["When originally responding to plaintiff's requests, defendant

23   apparently raised several objections based on third person privacy and freedom of

24   association. These objections, however, are not raised in defendant's opposition to

25   plaintiff's current motion and are therefore waived."]; *Fleet Systems, Inc. v. Federal*

26   *Coach, LLC*, 2007 WL 2264618, *3 n. 2 (D.Neb. August 6, 2007) ["To the extent

27   the defendant made other objections in its response, the defendant did not argue

28   such objections continued to be applicable in its brief in opposition to the motion to

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 44 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___

PAGE ___

compel.  Accordingly, such objections are deemed waived."]; *Eidukonis v. SE Pennsylvania Transp. Auth.*, 1987 WL 16321, *5 (E.D. Pa. August 27, 1987) [finding that plaintiff had waived all arguments and objections not made in opposition to earlier discovery motion]; *see also Diapluse Corp. of America v. Curtis Publishing Co.*, 374 F.2d 442, 445 (2d Cir. 1967) ["Any other 'conditions' [not requested by plaintiff in opposition to defendant's motion to require production of documents for discovery] are clearly afterthoughts which were waived by plaintiffs failure to request them in opposition to defendant's motion"]).

Here, the MGA Parties did not assert the vast majority of their objections in the opposition they submitted to the prior discovery master. (*See* Supplemental Corey Decl., Ex. 5 at pp. 29 – 31).  Specifically, they did not invoke any privilege objection, compound objection, or unduly burdensome objection,[8] or claim that the requested information has already been produced or is more readily accessible to Mattel. (*Id.*).  The only objection the MGA Parties raised in their opposition to the prior discovery master regarding the Interrogatories was their ability to supplement their responses "during expert discovery."[9] (*Id.*, p. 30).  Accordingly, the MGA Parties abandoned every other objection by failing to raise them in their original

---

[8] In the opposition it submitted to the prior discovery master, the MGA Parties admittedly did assert an unduly burdensome objection to some of "Mattel's contention interrogatories." (Supplemental Corey Decl., Ex. 5 at pp. 19 – 21). However, that objection was never directly linked to any of the Interrogatories at issue. (*Id.*, Ex. 5 at pp. 19 – 21 and 29 – 31).  Even assuming such a connection had been made, the MGA Parties failed to provide any evidence to support their claim of burden regarding the Interrogatories, meaning any such objection could have been overruled on that ground. (*See Columbia Pictures Indus.*, 2007 WL 4916964, *5 ["Defendant' 'unduly burdensome' and harassing objection is overruled as such objection is conclusory, and as defendants have provided no facts or evidence to support a finding that production . . . would be unduly burdensome and/or harassing."]; *El-Shaddai*, 2009 WL 301824, *2 ["[F]ederal courts reject claims of burdensomeness which are not supported by a specific, detailed showing, usually by affidavit, of why weighing the need for discovery against the burden it will impose permits the conclusion that the court should not allow it."]; *Jackson*, 173 F.R.D. at 528-9 ["The party claiming that a discovery request is unduly burdensome must allege specific facts which indicate the nature and extent of the burden, usually by affidavit or other reliable evidence."]).

[9] Notably, the sole objection that the prior discovery master addressed regarding the Interrogatories in his February 15, 2008 Order was the MGA Parties claim that they had the right to supplement their responses following expert discovery. (Corey Decl., Ex. 5 at pp. 12 – 13 ["That the interrogatory responses include a reservation of rights to supplement during expert discovery does not render the responses inherently improper or inadequate. Mattel does not contest that the identification of the elements and products subject to trade dress infringement will be a subject of expert discovery."]).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 45 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____

PAGE

1    opposition.

2         Because the MGA Parties abandoned their privilege, compound and unduly

3    burdensome objections to the Interrogatories, as well as any claim that the

4    requested information had already been produced or is more readily accessible to

5    Mattel, *before* Mattel filed the Appeal of the February 15, 2008 Order, Mattel had

6    no affirmative obligation to challenge those objections in its Appeal or as part of its

7    renewed application comprising the Objection Motion. Nor are the objections

8    revived by Mattel's superfluous decision requesting that the Discovery Master

9    overrule them in connection with the Objection Motion, since the obligation to

10   preserve the objections rested with the MGA Parties and they did not raise them in

11   connection with their opposition to Mattel's initial motion.

12        The decision to consider the objections abandoned is supported by the MGA

13   Parties' understanding of the Court's order referring the Objection Motion to the

14   Discovery Master. As the MGA Parties state, "[w]hile the Court directed the

15   Discovery Master to consider [the Objection Motion] as if presented to him in the

16   first instance . . . it did not give Mattel [and by implication the MGA Parties] free

17   reign to make objections to the February 15, 2008 Order that were not made or

18   preserved when Mattel filed its original Appeal in 2008."[10] (Supplemental

19   Opposition, p. 17). Because the MGA Parties did not properly preserve the vast

20   majority of their objections to the Interrogatories, they cannot rely on the objections

21   now.[11]

22        **2.     The MGA Parties' Expert Discovery Objection Is Valid**

23        Having concluded that the MGA Parties abandoned most of their objections

24

25   [10] The Court's March 12, 2009 Order referring the Objection Motion to the Discovery Master further states that "[t]his procedure – in which the Phase 2 Discovery Master may review prior discovery orders – shall apply only to

26   motions seeking review of discovery orders issued previously by the Phase 1 Discovery Master to which timely objections were made prior to the imposition of the stay as to Phase 2 discovery." (Order dated March 12, 2009

27   [emphasis in original]).

28   [11] For the reasons set forth in Section IV.L.3.a below, the MGA Parties may continue to assert their privilege objection in connection with Interrogatory No. 50.

EXHIBIT    
PAGE     96

to the Interrogatories, the Discovery Master turns to the lone objection that they did preserve (i.e., the expert discovery objection). The MGA Parties claim in their Supplemental Opposition that they "simply noted that 'MGA's trade dress and other legal concepts that may be relevant) will be the subject of expert testimony at trial," and interposed an objection that preserves their right to supplements their responses to include information from their experts. (Supplemental Opposition, pp. 22 – 23). Since that is the full extent of the expert discovery objection, the Discovery Master agrees that the objection is valid.[12] Consequently, the Discovery Master finds that the fact that the "responses include a reservation of rights to supplement during expert discovery does not render the responses inherently improper or inadequate." (Corey Decl., Ex. 5 at p. 13).

### 3. The MGA Parties' Supplemental Responses Are Inadequate

The Discovery Master next addresses the MGA Parties' substantive responses to the Interrogatories.

### a. The MGA Parties' Responses Include Abandoned Objections

As a preliminary matter, the Discovery Master notes that the MGA Parties' supplemental responses are inadequate because they include objections that have been abandoned (e.g., privilege objections, compound objections, undue burden objections, and any claim that the information sought is equally or more readily available to Mattel). Accordingly, the Discovery Master orders the MGA Parties to withdraw all objections to the Interrogatories except for the expert discovery objection.

The MGA Parties may also continue to assert their attorney-client privilege/attorney work product objection to Interrogatory No. 50, because that interrogatory asks them to identify all documents that "REFER OR RELATE TO"

---

[12] What the MGA Parties cannot do (and have not done) is assert that this objection permits them to withhold information that is currently known to them.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 47 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ____
PAGE            97

1   certain facts and the Discovery Master finds that the waiver of this objection is too

2   severe of a penalty to the extent privileged documents are (or could subsequently

3   be) requested by Mattel as a result of the objection being abandoned.  The analysis

4   is necessarily different with respect to Interrogatory Nos. 48 and 49, because those

5   interrogatories do not ask about documents and the Discovery Master finds that

6   they do not request any privileged information.

7        No other objections may be interposed by the MGA Parties in connection

8   with the Interrogatories.

9                    **b.    Interrogatory No. 48**

10       The Discovery Master has already addressed Mattel's demand that "MGA's

11  meritless objections" to Interrogatory No. 48 be overruled.  (Supplemental

12  Memorandum, p. 5).  In light of the Discovery Master's ruling on those issues and

13  given the statements made by Mattel in its pleadings, the Discovery Master

14  understands that Mattel merely wants the MGA Parties to "*confirm* that [they have]

15  provided a full and complete response to" Interrogatory No. 48.  (*See* Supplemental

16  Reply, p. 9 [emphasis added]; *see also* Supplemental Memorandum, p. 5 ["MGA's

17  meritless objections should be overruled, and MGA should confirm that it has

18  provided a full and complete response to this interrogatory."]).  Since that is the

19  extent of the remaining relief requested by Mattel concerning Interrogatory No. 48,

20  the Discovery Master finds the request is justified.

21       MGA's trade dress claims have been pending for several years and it is

22  reasonable to require MGA to identify the trade dress at issue, subject to the expert

23  discovery objection discussed above.  In fact, requiring the MGA Parties to state

24  that their response is full and complete is consistent with their statement that they

25  have described "particular and itemized common elements of [the] 'Bratz' and

26  'Bratz Petz' lines of dolls and packaging [MGA] contends Mattel copied."

27  (Supplemental Opposition, p. 9; *see also id.* at p. 13 ["MGA has identified in its

28  Response to Interrogatory No. 48 the common elements of all Bratz dolls which *it*

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 48 -

1  *claims are its protectable trade dress that Mattel, copied, infringed or diluted.*"]

2  (emphasis added)).  If the MGA Parties have already set forth the trade dress

3  elements they "contend[] Mattel copied," they can easily supplement their response

4  to include a statement that the trade dress identified constitutes the full scope of

5  MGA's claims against Mattel, subject to their right to supplement the response in

6  connection with expert discovery.[13]

7  c.   **Interrogatory No. 49**

8  Regarding Interrogatory No. 49, Mattel first argued in its pleadings that

9  "MGA only generally identified Mattel MY SCENE dolls (which is an entire line

10  consisting of dozens of dolls) and refused to specifically identify any particular

11  Mattel product that allegedly infringes its purported trade dress."[14]  (Supplemental

12  Memorandum, p. 5).  In its Supplemental Opposition, the MGA Parties countered

13  that Mattel's

14      assertion misses the point.  MGA's contentions are not

15      limited to 'single' products:  MGA contends that the trade

16      dress elements common to **all** Bratz and Bratz pets dolls

17      and packaging were copied and are infringed by **all** of

18      Mattel's 'My Scene' dolls and 'My Scene' pet dolls and

19      packaging.  That is what MGA said in its responses, and

20      that is more than adequate to answer the questions asked.

21  (Supplemental Opposition, p. 10 [emphasis in original]).

22  Mattel responded to this contention by stating in its Supplemental Reply that,

23  while "MGA claims that it has fully answered [Interrogatory No. 49] because *all* of

24  Mattel's 'My Scene' dolls and 'My Scene' pet dolls, as well as their packaging,

25

26  [13] Mattel is not entitled to any broader statement because, as the prior discovery master found, it "does not contest
27  that the identification of the elements and products subject to trade dress infringement will be a subject of expert
   discovery." (Corey Decl., Ex. 5 at p. 13).

28  [14] Mattel also claimed that the MGA Parties did not "identify the elements of trade dress that any specific product
   allegedly infringed." (Supplemental Memorandum, p. 5).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 49 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___

PAGE    99

1   purportedly infringe *all* of the 'common' elements of MGA's products that are

2   listed in [Interrogatory No. 48]," it is nonetheless "unclear what information MGA

3   is holding back because it continues to assert meritless objections" to Interrogatory

4   No. 49. (Supplemental Reply, p. 10 [emphasis in original]). But any such issue is

5   remedied by the Discovery Master's above ruling requiring the MGA Parties to

6   withdraw all of their objections to Interrogatory No. 49 except for the expert

7   discovery objection.[15]

8        Mattel's argument that "if there are any elements of MGA's claimed trade

9   dress that are infringed by only some Mattel products or packaging, MGA should

10  specifically identify the particular products and the trade dress that they allegedly

11  infringe, (Supplemental Reply, p. 10), is also unpersuasive. The MGA Parties have

12  expressly stated that their "contentions are not limited to 'single' products" but

13  rather that "the trade dress elements common to all Bratz and Bratz pets dolls and

14  packaging were copied and are infringed by all of Mattel's 'My Scene' dolls and

15  'My Scene' pet dolls and packaging." (Supplemental Opposition, p. 10 [emphasis

16  omitted]). Therefore, the Discovery Master orders the MGA Parties to supplement

17  their response to indicate that it is full and complete, subject to its right to

18  supplement during expert discovery.[16]

19          **d.    Interrogatory No. 50**

20       Mattel claims that the response to Interrogatory No. 50 is inadequate because

21  it "is conclusory" and constitutes a "circular pronouncement[] that the trade dress

22  that MGA seeks to assert is protectable . . ." (Supplemental Memorandum, p. 6).

23  Mattel further contends that such a response provides it no guidance and explains

24

---

25  [15] Mattel is not entitled to have the expert discovery objection stricken because it "does not contest that the
26  identification of the elements and products subject to trade dress infringement will be a subject of expert discovery."
    (Corey Decl., Ex. 5 at p. 13).

27  [16] Once again, it should be easy for the MGA Parties to confirm the full scope of the allegedly infringing items since
    they alleges in their pleadings "that Mattel's 'My Scene' dolls and 'My Scene' pet dolls and their packaging are *the*
28  *products and items* which improperly copy MGA's trade dress . . ." (Supplemental Opposition, p. 9 [emphasis
    added]).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 50 -

[Case No. CV 04-09049 SGL (RNBx)]
ORDER NO. 22

EXHIBIT
PAGE    100

1    why the MGA Parties represented to the prior discovery master that they would

2    supplement their responses to the Interrogatories in the course of Phase 2

3    Discovery." (*Id.*)

4         However, Mattel takes the MGA Parties' statement to the prior discovery

5    master out of context.  While the record reflects that the MGA Parties informed the

6    prior discovery master that they would "supplement these responses in the course of

7    Phase 2 discovery," (Corey Decl., Ex. 4 at p. 30), that statement came *after* Mattel

8    had argued in its moving papers that the MGA Parties were not entitled to reserve

9    their right to supplement the response during expert discovery in Phase 2.

10   (Supplemental Corey Decl., Ex. 7 at p. 25).  Further, when it made the statement,

11   the MGA Parties stated on the very same page that:

12              Mattel contends that it is improper to reserve the right to

13              supplement this interrogatory during expert discovery.

14              Mattel is wrong.  Indeed, Mattel has stated in many of its

15              interrogatory responses that the response may be

16              supplemented in the course of expert discovery.  Mattel

17              does not contest that the identification of the elements and

18              products subject to trade dress infringement will be a

19              subject of expert testimony. . . . If, in the course of their

20              analysis, MGA's experts identify other MGA products or

21              elements of MGA products that have been infringed by

22              Mattel, MGA will supplement its interrogatory responses

23              to identify those products or elements.

24   (Corey Decl., Ex. 4 at pp. 30 – 31).  In light of the foregoing facts, the Discovery

25   Master finds that the statement made by the MGA Parties was linked to their expert

26   discovery objection and not a promise that they would supplement their responses

27   immediately upon the lifting of the stay on Phase 2 discovery due to deficiencies in

28   //

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 51 -

EXHIBIT 27
PAGE 101

1    the responses.[17]  Regardless, Mattel has not cited any authority, and the Discovery

2    Master has found none, supporting the proposition that a promise to supplement a

3    response is sufficient to justify a motion to compel if the existing response is

4    adequate.

5            As support for its claim that the MGA Parties' response to Interrogatory No.

6    50 is inadequate, Mattel next alleges that the MGA Parties should be required to do

7    three things:  (1) to state more facts concerning why MGA's trade dress is

8    protectable, (2) to identify every person with knowledge of those facts, and (3) to

9    identify all documents that refer or relate to those facts.

10           Like the prior discovery master, I find that the MGA Parties have complied

11   with Federal Rule of Civil Procedure 33 by identifying the facts supporting MGA's

12   contention that its "trade dress is protectable under the applicable trade dress legal

13   principles, including that the trade dress is aesthetic and non-functional, inherently

14   distinctive, and has acquired a secondary meaning." (Corey Decl., Ex. 5 at p. 13).

15   The relevant language of the MGA Parties' substantive response states as follows:

16                   That the elements of MGA's trade dress in its 'Bratz' and

17                   'Bratz Petz' lines are aesthetic and non-functional is

18                   apparent from an examination of the Bratz products and

19                   packaging, compared to other leading fashion dolls.  That

20                   MGA's packaging was and is inherently distinctive is

21                   apparent from a comparison of said packaging to the state

22                   of fashion doll packaging when Bratz was introduced in

23                   2001, the fact that following the Bratz introduction

24                   competitors have copied significant, innovative elements

25                   of the Bratz packaging, and the fact that the packaging

26                   has won industry awards.  MGA's trade dress has also

27

28   ───────────────
[17] This finding also applies to Mattel's claim that the MGA Parties promised to supplement their responses to
Interrogatory Nos. 48 and 49.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

                                                            - 52 -                        ORDER NO. 22
                                                                          [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____4_____
PAGE     102

1                      acquired secondary meaning as a source indicator for

2                      'Bratz' as a result of the enormous success of the Bratz

3                      dolls in the market, and the marketing and promotional

4                      efforts employed by MGA to support Bratz.

5    (*Id.*, Ex. 4 at pp. 20 – 21).

6        This language is sufficient to apprise Mattel of the principal and material

7    facts supporting MGA's trade dress claim. (*See, e.g., Moses*, 236 F.RD. at 674;

8    *Hiskett v. Wal-Mart Stores*, Inc., 180 F.R.D. 403, 404-05 (D.Kan. 1998)

9    ["Interrogatories . . . may properly ask for the principal or material facts which

10   support an allegation or defense."]; *Grynberg v. Total, S.A.*, 2006 WL 1186836, *5

11   (D. Colo. May 3, 2006 ["It is proper, of course, to inquire about the material facts

12   supporting specific factual matters raised in the pleadings."]; *IBP, Inc. v.*

13   *Mercantile Bank of Topeka*, 179 F.R.D. 316, 321 (D.Kan. 1998) ["An interrogatory

14   may reasonably ask for the material or principal facts which support a

15   contention"]); *see also Clean Earth Remediation & Constr. Servs. V. American*

16   *Intern. Group, Inc.*, 245 F.R.D. 137, 141 (S.D.N.Y. 2007) ("[A] number of cases

17   have held that interrogatories seeking identification of all facts supporting a

18   particular allegation are inherently improper."). Nothing more is required from the

19   MGA Parties. There is always a greater degree of specificity that could be provided

20   by an interrogatory response. If Mattel wishes to obtain the details behind each and

21   every fact specified in the response to Interrogatory No. 50, Mattel may depose

22   MGA's person most knowledgeable regarding these issues under Federal Rule of

23   Civil Procedure 30(b)(6).

24        Although the MGA Parties' response regarding the trade dress "facts"

25   requested by Interrogatory No. 50 is adequate, their identification of witnesses with

26   knowledge of those facts and supporting documents is not. For example, the

27   response initially states that "[*m*]*any* individuals are knowledgeable of the striking

28   similarities between the protected trade dress of Bratz and features of My Scene

                               - 53 -
                                       ORDER NO. 22
                           [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT    4

PAGE     103

1   Barbie dolls and packaging," and then proceeds to identify just two individuals (i.e.,

2   Carter Bryant and Paula Garcia). (Corey Decl., Ex. 3 at p. 21 [emphasis added]).

3   This is insufficient. The MGA Parties must identify each and every person that

4   they are aware of who have knowledge of the facts they have set forth in response

5   to Interrogatory No. 50.

6   　　　Likewise, in identifying documents that refer or relate to such facts, the

7   MGA Parties have only described general categories. (Corey Decl., Ex. 3 at p. 21

8   ["Documents evidencing the market strength of the Bratz trade dress features

9   include documents evidencing (i) sales totals; (ii) package awards; (iii) package

10   related designs patents; (iv) publicity given to the Bratz dolls and their success; and

11   (v) documents evidencing industry awards given to MGA on account of the success

12   of the Bratz dolls and/or their innovative packaging, and the fact that said

13   packaging has been copied and mimicked by competitors."]). Again, this is

14   inadequate, since documents identified in response to an interrogatory must be

15   identified with specificity. (See, e.g., Gaeta v. Perrigo Pharmaceuticals Co., 2007

16   WL 3343043, *6 (N.D. Cal. November 9, 2007) ["To the extent plaintiff finds that

17   references to specific documents are responsive to interrogatory no. 3, plaintiff shall

18   set forth with specificity the relevant documents, records and literature."]; see also

19   Fed. R. Civ. P. 33(d) [stating that if records are used to answer an interrogatory

20   they must be set forth "in sufficient detail to enable the interrogating party to locate

21   and identify them as readily as the responding party could"]).

22   　　　Accordingly, the MGA Parties must supplement their response to

23   Interrogatory No. 50 to identify (1) everyone they are currently aware of who has

24   knowledge of why MGA's trade dress is protectable and (2) all documents that

25   refer or relate to those facts with specificity.[18]

26   　　　**M.   Summary Of Ruling Regarding The Objection Motion**

27   　　　The Discovery Master concludes the MGA Parties must supplement their

28

---

[18] Again, the MGA Parties need not identify any privileged documents when responding to Interrogatory No. 50.

EXHIBIT __4__

1     answers to the Interrogatories in the manner specified above.

2     **V.**    **DISPOSITION**

3         **A.**     Mattel's Letter of Request Motion is **GRANTED**. Within fifteen (15)

4 days of this Order, Mattel shall submit a revised letter of request reflecting the

5 additional limitations requested by the Discovery Master concerning Document

6 Request No. 7, namely to exclude any social security numbers, tax identification

7 numbers, dates of birth, indication of sexual orientation, bank account numbers, and

8 checking account numbers that may be included within the requested personnel

9 files prior to production. Upon submission of the revised letter of request, the

10 Discovery Master will promptly issue an order recommending that the Court

11 execute the revised letter of request on behalf of Mattel.

12         **B.**     Mattel's Motion to Compel Machado to sign the consent form

13 permitting Yahoo! to comply with the Subpoena is **GRANTED,** provided that

14 Mattel serve an amended Subpoena on Yahoo! requiring that production of

15 responsive documents be made directly to the Discovery Master.

16            1.     Upon receiving the documents produced by Yahoo! pursuant to

17 the Subpoena, the Discovery Master will have them Bates numbered and then

18 forward them to counsel for Machado. Upon receipt of the documents Bates-

19 numbered by the Discovery Master, Machado is **ORDERED**, within thirty (30)

20 days, to prepare and submit to the Discovery Master and counsel for Mattel a log:

21 (1) identifying by Bates number, date, sender, recipient and subject matter, each

22 and every e-mail in the Account that was created prior to November 20, 2006 and

23 claimed to be protected by the attorney-client privilege or attorney work product

24 doctrine; and (2) setting forth a brief explanation of the facts supporting that

25 assertion (the "Log"). The Log shall also identify, by Bates number only, all e-

26 mails after November 20, 2006 which are claimed to be protected by the attorney-

27 client privilege or attorney work product doctrine.

28            2.     Machado's failure to timely provide the Log in a form that

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 55 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____

PAGE _____ 105

1    satisfies all of the requirements set forth in Paragraph 1 above shall be deemed a

2    waiver by him of any applicable privileges.

3          3.      Simultaneously with his submission of the Log to the Discovery

4    Master and counsel for Mattel, Machado is **ORDERED** to produce to Mattel all

5    documents not identified in the Log.

6          4.      In the event Mattel wishes the Discovery Master to conduct an

7    *in camera* review of any documents identified in the Log to determine the

8    applicability of the attorney-client privilege or attorney work product doctrine,

9    Mattel shall provide a notice to the Discovery Master, with a copy to Machado,

10   identifying those documents to be reviewed.  The Discovery Master shall then

11   conduct the requested review and, if warranted, order Machado to produce

12   additional documents identified in the Log.

13         5.      Machado's request for sanctions in connection with the Motion

14   to Compel is **DENIED**.

15   **C.**     Mattel's Motion for Reconsideration is **GRANTED**.

16         1.      The Prior Order shall be, and hereby is, amended with respect to

17   Document Request No. 198 as follows:

18              ~~Nevertheless, an additional temporal limitation is~~

19              ~~appropriate to tailor the request to Mattel's allegations of~~

20              ~~trade secret theft~~.  The alleged trade secret theft began

21              with Bryant's conduct in 1999 ~~and continued to 2005~~.

22              Accordingly, Larian shall produce documents responsive

23              to Request No. 198 that are limited to the time frame 1999

24              to ~~2005~~ *the present*.

25         2.      In accordance with the foregoing amendment, Larian shall,

26   within thirty (30) days of this Order and without objection or limitation, produce

27   any documents not already produced by him responsive to Request No. 198.

28   **D.**     Mattel's Objection Motion is **GRANTED**.  The MGA Parties must

EXHIBIT
PAGE          106

1  supplement their answers to the Interrogatories within fifteen (15) days of this

2  Order.  Specifically, they must:

3         1.  Withdraw all of the objections they abandoned (except for the

4  privilege objection to Interrogatory No. 50);

5         2.  Confirm that each supplemental response to the Interrogatories

6  is full and complete except for their reservation of its rights to supplement during

7  expert discovery;

8         3.  Identify all persons they are currently aware of who possess

9  knowledge of the facts set forth in Interrogatory No. 50; and

10         4.  Identify all documents that refer or relate to the facts set forth in

11  Interrogatory No. 50 with specificity.

12

13  Dated:      April 28, 2009

14

15                        By:     /s/ Robert C. O'Brien

16                               ROBERT C. O'BRIEN
                             Discovery Master

17

18

19

20

21

22

23

24

25

26

27

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 57 -

ORDER NO. 22
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT  4

PAGE  107

# EXHIBIT 5



QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
  Timothy L. Alger (Bar No. 160303)
  (timalger@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:  (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>              Plaintiff,<br><br>    vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>              Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br>Consolidated with<br>Case Nos. CV 04-09059 & CV 05-2727<br><br>Hon. Stephen G. Larson<br><br>JOINT PHASE ONE WITNESS LIST<br><br>**Phase 1:**<br>Discovery Cut-Off:      January 28, 2008<br>Pre-Trial Conference: May 19, 2008<br>Trial Date:                  May 27, 2008 |