QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 090378)
(johnquinn@quinnemanuel.com)
Michael T. Zeller (Bar No. 196417)
(michaelzeller@quinnemanuel.com)
Jon D. Corey (Bar No. 185066)
(joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

CARTER BRYANT, an individual,

Plaintiff,

vs.

MATTEL, INC., a Delaware corporation,

Defendant.

AND CONSOLIDATED ACTIONS

**PUBLIC REDACTED VERSION**

CASE NO. CV 04-9049 SGL (RNBx)

Consolidated with
Case No. CV 04-09059
Case No. CV 05-02727

**[BEFORE THE MONITOR PER COURT ORDER]**

**MATTEL INC.'S OPENING SUBMISSION TO THE MONITOR REGARDING ACCOUNTING ISSUES**

[Declarations of Scott L. Watson and Michael J. Wagner filed concurrently]

Discovery Cut-off: December 11, 2009
Pre-trial Conference: March 1, 2010
Trial Date: March 23, 2010

# TABLE OF CONTENTS

**Page**

I. MGA'S ATTEMPT TO [REDACTED] VIOLATES THE COURT'S PRIOR ORDERS ON COST SHIFTING .......... 3

A. The Court Has Already Resolved The Issue Of Receivership Costs. .......... 3

II. MGA CANNOT [REDACTED] .......... 7

A. Allowing [REDACTED] Would Be Unfair And A Violation Of The Court's Rulings. .......... 7

B. The [REDACTED] Are Not A Direct Or Indirect Cost Associated With The Production Of Bratz Products .......... 9

C. Even If Deductible, [REDACTED] Should Be Allocated Based On A Monthly Sales Ratio .......... 11

III. APPORTIONMENT OF DAMAGES IS AN ISSUE FOR THE COURT AND CANNOT BE UNDERTAKEN BY THE MONITOR .......... 12

## TABLE OF AUTHORITIES

**Page**

**Cases**

Data Gen. Corp. v. Grumman Sys. Support Corp., 36 F.3d 1147 (1st Cir. 1994) ..... 12

Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc., 886 F.2d 1545 (9th Cir. 1989) ..... 12

John G. Danielson, Inc. v. Winchester-Conant Properties, Inc., 322 F.3d 26 (1st Cir. 2003) ..... 12

Sheldon v. Metro-Goldwyn Pictures Corp., 309 U.S. 390 (1940) ..... 12

**Preliminary Statement**

The Monitor has requested briefing on [REDACTED].

As to the first issue, [REDACTED] violates multiple rulings by the Court. On April 27, 2009, the Court ruled that the Receivership expenses would be borne by the MGA parties.[1] On May 18, 2009, the Court reiterated that ruling, stating that "with respect to the temporary receiver and Mr. Fraioli, I impose those costs on MGA"[2] and further providing that the Court would afford all parties with leave to file their various cost-shifting motions "when the dust finally settles."[3] On July 9, 2009, the Court rejected MGA's attempt to shift the Receiver costs to Mattel for a third time: "[A]s the Court has stated previously on the record, that [cost-shifting] issue is more efficiently resolved at a later date, most likely a date after completion of Phase 2 of the trial."[4] MGA cannot engage in unilateral cost-shifting by [REDACTED]. Rather, the Court has ruled it will address any cost-shifting at a later date. Moreover, the Receivership costs [REDACTED], and thus, pursuant the Court's repeated orders that accounting shall be done on a monthly accrual basis, cannot be deducted in June 2009.

---

[1] Omnibus Order, dated April 27, 2009, at 23-24. Declaration of Scott Watson, filed concurrently ("Watson Decl."), Exh. 1.

[2] May 18, 2009 Hearing Tr. at 56:2-3, Watson Decl., Exh. 2.

[3] Id. at 56:4-12.

[4] Order Granting Ex Parte Application Re Cost Shifting, dated July 9, 2009, at 2, Watson Decl., Exh. 3.



As to the second issue, MGA should not be permitted to [redacted].[5] Far from a "cost" associated with producing Bratz, the [redacted]. Moreover, MGA used [redacted]. Counsel for the Omni Parties has expressly stated that the loan did not involve Bratz, further confirming the impropriety of treating it as a Bratz cost. Indeed, according to MGA's own financial statements, [redacted].[6] These transactions are wholly unrelated to Bratz. At trial, even MGA's own expert did not [redacted] in calculating MGA's profits.[7]

As to the third issue, Mattel respectfully submits that it would be inappropriate for the Monitor to issue an advisory opinion concerning apportionment of profits under copyright law. That is a damages question for the trier of fact to consider and falls outside the scope of the Monitor's appointment related to accounting and escrow issues. The Court's discussion of apportionment in its June 18, 2009 Order explained that the Court had not yet undertaken any apportionment analysis, and

[5] April 27, 2009 Order at 16-17, Watson Decl., Exh. 1.

[6] Declaration of Michael Wagner, filed concurrently ("Wagner Decl."), ¶¶ 10-11.

[7] Even if some small portion of the loan proceeds could be attributed to Bratz-related costs (which MGA has never proven), the interest expenses have not accrued in June 2009, and that is the only month for which MGA may make deductions at this time.

ordered the Monitor to oversee an escrow of *all* profits related to MGA's sale of Bratz and Bratz-related products.

**Argument**

**I. MGA'S ATTEMPT TO [redacted] VIOLATES THE COURT'S PRIOR ORDERS ON COST SHIFTING**

**A. The Court Has Already Resolved The Issue Of Receivership Costs At This Juncture And Until Further Court Order.**

The Court has ruled that MGA should bear the costs of the receivership in the first instance.[8] The Court rejected MGA's repeated attempts to avoid that Order, holding that final allocation of costs will only be made once "the dust finally settles," when the Court will be in a position to "assess the equities" based on "what actually has happened," rather than allegations.[9] Indeed, *three times* the Court has ruled that MGA is to initially bear the Receivership costs—in its April 27, 2009 Order,[10] again at the May 18, 2009 hearing,[11] and once again on July 9, 2009.[12] Until further Court order on *all* cost-shifting issues, any attempt by MGA to shift these costs to Mattel by unilateral accounting efforts is a violation of the unambiguous mandate of the Court.

More specifically, in its initial order appointing the Temporary Receiver, the Court ruled that the costs of the receivership would be funded by the assets under

---

8 April 27, 2009 Order at 24, Watson Decl., Exh. 1; July 9, 2009, 2009 Order at 13, Watson Decl., Exh. 3.

9 May 18 Hearing Tr. at 56:5, 56:12, 80:16-17, Watson Decl., Exh. 3.

10 See April 27 Order at 24, ¶ 10(f) (costs of receivership provided by MGA assets under receivership), Watson Decl., Exh. 1.

11 May 18 Hearing Tr. at 80:6 (Watson Decl., Exh. 2); see also id. at 56:2-4 ("With respect to the temporary receiver and Mr. Fraioli, I impose those costs on MGA. As far as the monitor, I will probably impose those costs on Mattel."); May 21 Order at 13 (imposing monitor costs on Mattel in the first instance), Watson Decl., Exh. 4.

12 July 9, 2009 Order at 2, Watson Decl., Exh. 3.

receivership and, if necessary, additional funds provided by the MGA parties.[13] Subsequently, at the May 18, 2009 hearing, the Court reaffirmed that MGA would, in the first instance, bear the costs relating to the Temporary Receiver, and that Mattel would likely initially bear the costs of the monitorship.[14] (The Court had already ruled that Mattel would initially bear the costs of the Forensic Auditor.[15]) The Court explained that it "will be affording leave to all of the parties to file motions related to potential cost shifting for any of the costs that were incurred as a result of the court appointments, when we can kind of sit back in hindsight and assess the equities of who paid what and when."[16]

After the Court's April 27 ruling that MGA bear the costs initially, MGA's counsel specifically asked the Court that costs be "re-allocated sooner than later."[17] The Court declined, noting that such a determination would be "premature" without the "benefit of reflecting on what actually has happened, what actually has played out."[18]

---

[13] See April 27 Order at 24, ¶ 10(f) ("To the extent that the proceeds are insufficient at any point to fund the costs of the receivership, the MGA entities are ordered to provide the Temporary Receiver with such additional funds as the Temporary Receiver requires to accomplish the purposes of the receivership."), Watson Decl., Exh. 1.

[14] See May 18, 2009 Hearing Tr. at 56:2-4 ("With respect to the temporary receiver and Mr. Fraioli, I impose those costs on MGA. As far as the monitor, I will probably impose those costs on Mattel."), Watson Decl., Exh. 2; see also May 21 Order at 13 (imposing monitor costs on Mattel in the first instance), Watson Decl., Exh. 4.

[15] See January 7, 2009 Order Appointing Forensic Auditor at 2 ("January 7 Order") ("The expense of the forensic auditor shall be borne, in the first instance, by Mattel. After the Court considers the Auditor's report(s), the Court will consider whether the auditor expenses should be shared with, or shifted completely to, defendants, based on the equities."), Watson Decl., Exh. 5.

[16] May 18 Hearing Tr. at 56:4-12, Watson Decl., Exh. 2.

[17] Id. at 80:6.

[18] Id. at 80:16-22; see also id. at 56:16-19 ("But at the end of the day, the Court will certainly afford leave to revisit those decisions and ensure that equity governs an appropriate allocation of those resources").

In opposing the Temporary Receiver's Final Report and Account, MGA [REDACTED].[19] The Court again rejected MGA's request to shift the costs to Mattel, reminding the parties that "the Court has previously ruled that, at some yet-to-be defined date in the future *the Court* will consider whether to shift the costs of both the Temporary Receivership and the Forensic Audit."[20] The Order makes clear – if it was not already – that MGA will bear the costs of the Temporary Receiver until such time that the Court itself takes up the cost-shifting issue.

MGA's [REDACTED] is a violation of the Court's repeated Orders that MGA, not Mattel, should bear these costs. [REDACTED], MGA is effectively forcing Mattel to bear them. MGA should not be permitted to end-run the District Court's Orders.

**B. The Receiver Costs Did Not Accrue In June 2009.**

MGA's [REDACTED] also violates the Court's repeated Orders that the accounting is to take place on a monthly accrual basis. In its May 21, 2009 Order appointing the Monitor, the Court ordered that the Monitor "collect from MGA, *on a monthly basis*, the amount of net profits derived by MGA from exploitation of the Bratz Assets *during the preceding month* . . . ."[21] MGA [REDACTED]

---

[19] MGA Parties' Memorandum of Points and Authorities in Opposition to Ex Parte Motion of Temporary Receiver for Order (1) Approving Final Accounting and Report; (2) Approving Final Compensation to Temporary Receiver and Professionals; (3) Discharging Receiver, dated June 26, 2009, Watson Decl., Exh. 6.

[20] July 9, 2009 Order at 2 (emphasis added), Watson Decl., Exh. 3.

[21] May 21, 2009 Order at 11 (emphasis added), Watson Decl., Exh. 4.



[redacted]."[22] As with the ruling on allocation of the Temporary Receiver costs, the Court re-affirmed its prior ruling, noting that "[t]he Court previously ordered accounting '*on a monthly basis*.'"[23] In addition to the Court's Orders requiring monthly accrual accounting, Generally Accepted Accounting Principles ("GAAP") require accrual of costs during the month in which the services were provided.[24]

[redacted] were incurred and paid in April and May of 2009: "[redacted].[25] From May 14, 2009, "[redacted].[26] Thus, [redacted].[27] Under the Court's clear Orders, MGA cannot deduct these costs for June or any other month in which they were not incurred.

---

22 MGA Parties' Ex Parte Application for Clarification of the Court's Order Regarding Escrow of Profits, dated July 31, 2009, at 2, Watson Decl., Exh. 7.

23 Order Regarding Monitor Reports, dated August 6, 2009, at 2 (emphasis added), Watson Decl., Exh. 8.

24 Wagner Decl., ¶ 6.

25 Ex Parte Motion of Temporary Receiver for Order (1) Approving Final Account and Report; (2) Approving Final Compensation to Temporary Receiver and Professionals; (3) Discharging Receiver; Receivers Final Account and Report; Declaration of Patrick A. Fraioli, Jr., dated June 19, 2009 ("Final Account"), at 7, Watson Decl., Exh. 9.

26 Id. at 7-8.

27 [redacted]



## II. MGA CANNOT [redacted]

[redacted]. First, the Omni 808 transaction is a sham that is the subject of pending Mattel claims, and [redacted] would violate the cost-shifting rulings of the Court. Indeed, it is clear that [redacted]. To Mattel's knowledge, [redacted]. Second, it is clear from the record that [redacted]. Rather, the loan proceeds – and thus the interest paid on the loan – were for [redacted]. Such payments are not properly deductible under the Court's accounting Orders. Third, MGA's purported allocation method is inappropriate as a matter of accounting principles.

### A. Allowing [redacted] Would Be Unfair And A Violation Of The Court's Rulings.

MGA should not be permitted to [redacted]. Far from a "cost" associated with producing Bratz, the [redacted].[28] Indeed, due to concerns over the transaction, during the Temporary Receivership, [redacted]

[28] See Mattel Inc.'s Third Amended Answer and Counter-Claims, dated May 22, 2009, at ¶¶ 105-121, Watson Decl., Exh. 11.



[redacted]."[29] One of the very reasons the Court has delayed cost shifting issues to a later date is that many of the issues in Phase 2 have yet to be adjudicated, including Mattel's allegations and showings that [redacted]. Thus, the payments are not a "cost" at all, but are rather [redacted], and allowing their deduction now violates the rationale of the Court's cost-shifting rulings as discussed above. Indeed, to Mattel's current knowledge, MGA did not seek the approval of the Monitor for these payments as required by the Court's order requiring Monitor approval of related-party payments greater than $50,000.[30] The Omni Parties originally represented to the Court and the Discovery Master – without correction by the MGA's Parties – that Larian had not funded any of the $109 million paid to acquire the debt.[31] In fact, as is now known, this was false. [redacted].[32] Furthermore, [redacted]

---

[29] Final Account, at 3, Watson Decl, Exh. 9. The Receiver did authorize an interest payment in the amount of $94,000 to Wachovia Bank. Id.

[30] Mattel also was not afforded an opportunity to object to any payment being made to Omni 808 and of course does object to any such payments by MGA.

[31] See February 11, 2009 Hearing Transcript, at 71:16-72:5 (representing to Judge Larson that the "money" for the debt acquisition came from neither MGA nor Larian), Watson Decl., Exh. 12; March 4, 2009 Discovery Master Hearing Transcript at 51:3-8 (MR. GORDINIER: What documents do we have that show that either Mr. Larian or MGA paid money into this to purchase this debt? ***I can tell you there are none.*** This is a ready, fire, aim situation. The allegations that were made and were made publicly are unconscionable and can't be undone.") (emphasis added), Watson Decl., Exh. 13.

[32] See Memorandum of Points & Authorities in Opposition to Order to Show Cause Re: Appointment of Permanent Receiver and Preliminary Objections to Report of Forensic Auditor and Temporary Receiver, dated May 14, 2009, at 10 ("Trusts controlled by Mr. Larian loaned money to Omni 808 . . . ."), Watson Decl., Exh. 14.

[redacted].[33] Because of Larian's and IGWT's involvement, as even now belatedly conceded by defendants, [redacted]. They therefore could not be made without prior approval by the Monitor, which as far as Mattel knows, MGA never sought.

**B. [redacted] Are Not A Direct Or Indirect Cost Associated With The Production Of Bratz Products**

In any event, [redacted] cannot be deducted because those costs are not "direct or indirect" costs "associated with the production" of any Bratz Assets.[34] Tellingly, at trial even MGA's expert, Mr. Meyer, did not [redacted]. Specifically [redacted].

MGA's financial records also make clear [redacted] and therefore they cannot be deducted under the accounting Orders. Specifically, [redacted]

---

[33] Senior Promissory Note, dated September 3, 2008, at section 9(b), Watson Decl., Exh. 15.

[34] See Court's Order After June 15, 2009 Hearing on Accounting Issues, dated June 18, 2009, at 6, Watson Decl., Exh. 10.

[35] Wagner Decl., ¶ 14.

[36] Id.

[37] Id.

[redacted].[42]

During 2007, [redacted].[48]

Nor were the loan draws used [redacted]. As discussed above, [redacted]. Rather, the funds used to

---

[38] Wagner Decl., ¶ 10 (citing MGA December 31, 2006 Consolidated Statements of Cash Flows).

[39] Id.

[40] Id.

[41] Id.

[42] Hearing Tr., dated May 18, 2009, at 44:21-45:20 (Mr. Gordinier: "The short answer, your Honor, is, it doesn't implicate the IP at all . . . Omni stepped into the shoes of Wachovia. It got nothing more and nothing less. And that did not include the IP; that did not include the intellectual property."), Watson Decl., Exh. 2.

[43] Wagner Decl., ¶ 11.

[44] Id.

[45] Id.

[46] Id.

[47] Id.

[48] Id.



[redacted].[50]

MGA should not be permitted to reduce Bratz profits by [redacted].

C. **<u>Even If Deductible, [redacted] Should Be Allocated Based On A Monthly Sales Ratio</u>**

Because Bratz did not receive [redacted]. However, even assuming Bratz had received [redacted] should be calculated based on the current monthly sales ratio of worldwide sales of Bratz products to total, worldwide consolidated sales.[51]

MGA's purported allocation is improper in several respects. Initially, MGA has apparently based its allocation on the ratio of worldwide sales of Bratz products to overall *U.S.* consolidated sales.[52] If this is true, on its face it appears to understate the denominator, i.e., overall consolidated U.S. sales and therefore, overstate the direct and indirect costs allocated to Bratz.[53]

Moreover, MGA's use of the last three years of Bratz sales compared to overall consolidated U.S. sales is improper, because Bratz clearly did not receive [redacted] during the last three years.[54] It is also inconsistent with the method that Mr. Meyer used to allocate costs to Bratz from 2001 through June 2008 at trial and inconsistent with the method Mr. Wagner used in allocating costs during the

---

49 <u>Id.</u>, ¶ 13.
50 <u>Id.</u>
51 <u>Id.</u>, ¶ 15.
52 <u>Id.</u>, ¶¶ 16-17.
53 <u>Id.</u>
54 <u>Id.</u>

same period as U.S. and foreign sales were included in total consolidated sales.[55] Because the Court has ordered accounting on a monthly basis, it would be most appropriate to use a monthly calculation for [REDACTED].[56]

## III. APPORTIONMENT OF DAMAGES IS AN ISSUE FOR THE COURT AND CANNOT BE UNDERTAKEN BY THE MONITOR

As with the Temporary Receiver costs and the monthly accrual accounting method, the Court has already ruled on the issue of whether MGA may apportion any profits in the first instance. In its Order appointing the Monitor, and again in its Order regarding the escrow of profits, the Court specifically ordered MGA to account for, and the Monitor to collect and escrow, ***all*** profits MGA receives from exploiting Bratz-related products.[57]

Even if the Court had not already decided the issue, apportionment of profits is a question that only the Court or a jury can address in the context of the equities to be balanced. Sheldon v. Metro-Goldwyn Pictures Corp., 309 U.S. 390, 402 (1940) ("Both the Copyright Act and our decisions leave the matter to the appropriate exercise of the equity jurisdiction upon an accounting to determine the profits which the infringer shall have made from such infringement.") (internal quotation omitted). Indeed, "[a]pportionment is 'ultimately a delicate exercise informed by considerations of fairness and public policy, as well as fact.'" John G. Danielson, Inc. v. Winchester-Conant Properties, Inc., 322 F.3d 26, 50 (1st Cir. 2003) (quoting Data Gen. Corp. v. Grumman Sys. Support Corp., 36 F.3d 1147, 1176 (1st Cir. 1994)). The apportionment analysis necessarily requires consideration of complex infringement issues as well. Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc., 886 F.2d 1545, 1548-49 (9th Cir.

---

[55] Id.

[56] Id.

[57] May 21, 2009 Order, at 11, Watson Decl., Exh. 4; June 18, 2009 Order, at 6, Watson Decl., Exh. 10.

1989) (noting that apportionment cannot be based "exclusively on a quantitative comparison" but rather must consider the works at issue).

In sum, the Courthas already ordered that *all* Bratz profits are to be placed in escrow, and Mattel respectfully submits that this is not the time or the forum for altering that Order.

DATED: August 31, 2009

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By /s/
Michael T. Zeller
Attorneys for Mattel, Inc.