1  MELINDA HAAG (State Bar No. 132612)
   mhaag@orrick.com
2  ANNETTE L. HURST (State Bar No. 148738)
   ahurst@orrick.com
3  WARRINGTON S. PARKER III (State Bar No. 148003)
   wparker@orrick.com
4  ORRICK, HERRINGTON & SUTCLIFFE LLP
   The Orrick Building
5  405 Howard Street
   San Francisco, CA 94105-2669
6  Telephone: +1-415-773-5700
   Facsimile: +1-415-773-5759
7
   WILLIAM A. MOLINSKI (State Bar No. 145186)
8  wmolinski@orrick.com
   ORRICK, HERRINGTON & SUTCLIFFE LLP
9  777 South Figueroa Street, Suite 3200
   Los Angeles, CA 90017
10 Telephone: +1-213-629-2020
   Facsimile: +1-213-612-2499
11
   Attorneys for MGA Parties
12

13                 UNITED STATES DISTRICT COURT

14                 CENTRAL DISTRICT OF CALIFORNIA

15                         EASTERN DIVISION

16 | CARTER BRYANT, an individual,          | Case No. CV 04-9049-SGL (RNBx)
17 |         Plaintiff,                     | Consolidated with: Case No. CV 04-9059
                                            | and Case No. CV 05-2727
18 |    v.                                  |
                                            | **DISCOVERY MATTER**
19 | MATTEL, INC., a Delaware                | [To Be Heard by Discovery Master
   | corporation,                           | Robert O'Brien]
20 |                                        |
   |         Defendant.                     | **MGA'S OPPOSITION TO MATTEL'S
21 |                                        | MOTION TO AMEND PROTECTIVE
                                            | ORDER**
22 | AND CONSOLIDATED ACTIONS               |
                                            | Date:       TBD
23 |                                        | Time:       TBD
                                            | Courtroom:  TBD
24 |                                        |
                                            | **Phase 2**
25 |                                        | Discovery Cutoff:   December 11, 2009
                                            | Pretrial Conference: March 1, 2010
26 |                                        | Trial Date:         March 23, 2010

27
28

# INTRODUCTION

Desperate to wipe the egg from its face after MGA uncovered documents detailing Mattel's improper gifts to Canadian law enforcement officials, Mattel has asked the Court to expand the universe of documents that can be designated as "Attorneys Eyes Only" so that Mattel can avoid embarrassment from public disclosure of this information. The Court should not allow this to happen.

The January 5, 2005, protective order governing discovery in this case (the "Protective Order"), expressly reserves the "Attorneys Eyes Only" designation for documents that reflect Mattel's trade secrets and other competitively sensitive information. There is no reason to alter this standard now, and Mattel has not presented sufficient reason to do so.

In particular, the Court should not allow Mattel to designate as "Attorneys Eyes Only" the files of the Mexican investigation into Mattel's trade secret claims. To the extent these files describe Mattel's alleged trade secrets, they can be protected under the existing order by designating them as "Attorneys Eyes Only." But Mattel has no standing and no right to insist that all of these files—to the extent they do not reveal Mattel's alleged trade secrets—cannot be shown to MGA or its in-house counsel. The law in Mexico does not restrict Mattel's ability to share these files with whomever Mattel chooses or is obligated to provide copies to. Consequently, as a practical and as a legal matter, Mattel cannot prevent MGA and its attorneys from receiving copies by designating them as "Attorneys Eyes Only."

As for the communications between Mattel and various law enforcement officials in the United States, Mexico, and Canada, the genesis of Mattel's motion demonstrates why these communications should not categorically be designated as "Attorneys Eyes Only." To the extent these communications do not describe Mattel's alleged trade secrets, there is no reason why MGA, its in-house counsel, or the public should not be given access to these communications. This is especially true when the communications evidence improper conduct about which the public

has a right to know—for example, sending gifts to the law enforcement officials who are supposed to be investigating Mattel's trade secret claims. Mattel cannot silence these documents by designating them as "Attorneys Eyes Only" simply because they are embarrassing or may prove incriminating. Mattel's motion to amend the Protective Order should be denied.

## BACKGROUND

### I. The Protective Order

On January 4, 2005, the Court entered a stipulated protective order (the "Protective Order") governing discovery in this case. The Protective Order sets forth a dual scheme for designating discovery material as either "Confidential" or "Confidential—Attorneys Eyes Only." Declaration of William A. Molinski in Opposition to Mattel's Motion To Amend Protective Order ("Molinski Decl."), Exhibit A.

Under the Protective Order, material designated as "Confidential" is information which "the disclosing Party or nonparty believes in good faith contains, constitutes or reveals confidential design, engineering or development information, confidential commercial information, non-public financial information, confidential or private information about current or former employees, contractors or vendors (including employee contractor and vendor personnel records), or other information of a confidential, proprietary, private or personal nature." *Id.* at ¶ 2, lines 6-13.

Conversely, material designated as "Confidential—Attorneys Eyes Only" is limited to "trade secrets or other confidential commercial information, including without limitation non-public designs and drawings, which the disclosing Party or nonparty in good faith believes will result in competitive disadvantage or harm if disclosed to another Party to this Action without restriction upon use of further disclosure." *Id.* at ¶ 2, lines 13-18.

The persons to whom "Confidential" and "Confidential—Attorneys Eyes Only" material can be disclosed are limited by the Protective Order. While

1  "Confidential" material can be disclosed to any party or their in-house counsel,
2  "Confidential—Attorneys Eyes Only" cannot be so disclosed. In effect, parties and
3  their in-house counsel may not review "Confidential—Attorneys Eyes Only"
4  information. *Id.* at ¶¶ 5-6.
5      Also, any material designated as either "Confidential" or "Confidential—
6  Attorneys Eyes Only" must be filed under seal. These documents are not available
7  to the public. *Id.* at ¶ 15.

## II. MGA's Motion To De-Designate

    On August 18, 2009, MGA filed a motion to de-designate a document marked M 0925945 – M 0925946 that had previously been produced and designated as "Attorneys Eyes Only" by Mattel. Molinski Decl., Exhibit B, pp. 40-41. The document at issue memorializes two email communications between Mattel and law enforcement officials in Canada, who were supposedly investigating Mattel's trade secret claims in Canada. The communications reveal that Mattel had sent gifts to the Canadian law enforcement officials and that those gifts were distributed to the officers and their families. At a public hearing before Judge Larson on August 31, 2009, Mattel admitted that its head of security provided gifts to Canadian police investigating the alleged theft of Mattel's trade secrets. Molinski Decl., Exhibit C, p. 99.

## III. Mattel's Motion To Amend

    In response to MGA's motion to de-designate, Mattel filed this motion to amend the Protective Order to allow for the blanket designation of two categories of documents as "Attorneys Eyes Only." The first category consists of "non-public documents that comprise official Mexican criminal investigative files or the official records of a Mexican court proceeding, and non-public documents that discuss the contents of such official files and records." Motion at 2:6-8. The second category is "non-public documents that comprise communications with the United States Attorney's Office, the Federal Bureau of Investigation, Canadian law enforcement

1  personnel, and non-public documents that discuss the contents of such
2  communications." Motion at 2:9-12.
3     Mattel claims that its motion need only be heard if the Discovery Master
4  "disagrees" with Mattel and grants MGA's motion to de-designate. Memorandum
5  at 2:12-15. Accordingly, the Court need not consider Mattel's motion if it denies
6  MGA's motion to de-designate.

## ARGUMENT

### I. MATTEL BEARS THE BURDEN OF DEMONSTRATING GOOD CAUSE AS TO WHY THE PROTECTIVE ORDER SHOULD BE AMENDED.

A party seeking to modify an existing protective order bears the burden of demonstrating good cause as to why the order should be amended. *See E-Smart Technologies, Inc. v. Drizin*, 2008 U.S. Dist. LEXIS 35896 (N.D. Cal. 2008). Factors that bear on good cause include: (1) the nature of the existing protective order (such as whether the protective order was stipulated to and whether it is narrowly tailored); (2) the foreseeability of the requested modification; and (3) the parties' reliance on the existing protective order. *See Bayer AG v. Barr Laboratories, Inc.*, 162 F.R.D. 456 (S.D.N.Y. 1995); 6-26 Moore's Federal Practice – Civil § 26.106.

In addition, a business seeking to protect discovery material from disclosure most show that it will suffer significant harm to its competitive and financial position if disclosure is permitted. *Contratto v. Ethicon, Inc.*, 227 F.R.D 304, 307-308 (N.D. Cal. 2005). Broad, conclusory allegations of harm are not sufficient; specific examples, supported by affidavits, are required. *Humphreys v. Regents of the University of California*, 2006 WL 2319593 at * 1 (N.D. Cal. 2006).

As set forth below, Mattel has failed to carry its burden of demonstrating good cause because Mattel has not presented any evidence—specific or otherwise—that Mattel will suffer harm if the existing Protective Order remains in place. Further, Mattel does not have standing to limit MGA's access to the judicial

files of Mexico and, in any event, Mattel's communications with law enforcement officials are subject to a public right of access. The sum total of these factors weigh in favor of keeping the Protective Order as it is and denying Mattel's motion to amend.

## II. UNLESS THEY DESCRIBE MATTEL'S TRADE SECRETS, THE JUDICIAL FILES OF THE MEXICAN GOVERNMENT SHOULD NOT BE DESIGNATED AS "ATTORNEYS EYES ONLY."

### A. Mattel Does Not Have Standing To Limit MGA's Access To The Official Files Of The Government Of Mexico.

Mattel spends the first half of its brief trying to convince the Court that the judicial files of Mexican law enforcement officials should be designated as "Attorneys Eyes Only." Memorandum at 3-5. Mattel makes two arguments in this regard—neither of which is convincing.

The first is that criminal investigation records and judicial files are ordinarily kept confidential under Mexican law. Mattel cites Article 16 of the Mexican Federal Criminal Procedures Code which prevents the government of Mexico from disclosing criminal investigative files except to (1) the victim of the investigation, (2) the defendant in the investigation, and (3) their respective attorneys. See Memorandum at 4:5-8. This authority has no application here, however, because the issue before the Court is not whether the *Mexican government* has the authority to release these files—indeed that release has already occurred. Rather, the issue before the Court is whether *Mattel* has the right to prevent MGA and its in-house counsel from viewing these released records by arbitrarily designating them as "Attorneys' Eyes Only."

Mattel's reliance on this Mexican authority is misplaced because there is no indication that the Mexican government marked the files it released as "Confidential" or "Attorneys' Eyes Only" or otherwise sought to limit their disclosure to MGA or its in-house counsel. To the contrary, once released, Mattel was free to share them with whomever Mattel chose or was obligated to provide

1  copies to under U.S. law. For example, Mattel has already provided copies of these
2  files to MGA's outside attorneys pursuant to a valid request for production in this
3  case.

4      The fact that Mattel was given access to these files does not mean that Mattel
5  now has the authority to stand in the shoes of the Mexican government and dictate
6  who (under Mexican law) may have access to these records and under what
7  circumstances. That authority is reserved exclusively for the government of
8  Mexico, and if there were any concern about disclosing copies of Mexican
9  investigative files to MGA or its counsel, that is the Mexican government's
10 argument to make—not Mattel's. Mattel cannot pick and chose whom to whom it
11 will disclose these files.

12     The second argument Mattel makes is that, under principles of international
13 comity, Mexico's policy of protecting its judicial files should be respected in these
14 proceedings by designating them as "Attorneys' Eyes Only." Once again, however,
15 Mattel is standing in the shoes of the Mexican government in suggesting that MGA
16 should not be given access to these documents. MGA is aware of no evidence (and
17 Mattel can point to none) to suggest that the government of Mexico somehow
18 intended to limit the disclosure of its files when it voluntarily released those records
19 to Mattel. In the absence of such evidence, Mattel cannot claim that principles of
20 international comity somehow forbid MGA and its counsel from viewing these
21 documents.

22 **B    MGA Has A Right To Review Non-Privileged Documents That Concern The Alleged Misappropriation Of Mattel Trade Secrets In Mexico.**

24     That Mattel has placed the judicial files of the Mexican investigation at issue
25 in this case cannot be disputed. Paragraphs 44 through 61 of Mattel's cross-
26 complaint describe in detail Mattel's allegations concerning the claim that MGA
27 misappropriated Mattel's alleged trade secrets in Mexico. Indeed, Paragraph 60
28 expressly references the fact that Mattel notified the Mexican authorities about the

alleged theft of its trade secrets in Mexico. In this same paragraph, Mattel avers that Mexican Attorney General obtained a warrant to search MGA's facilities in Mexico City. In this manner, the Mexican judicial files that are the subject of this motion are at the center of Mattel's trade secret claims in this case. Their relevance cannot be denied.

As a defendant against whom these trade secret allegations have been made, MGA has a right to review the non-privileged portion of these files to determine whether Mattel's claims and accusations have any merit. Review by MGA and its in-house counsel (as opposed to MGA's outside attorneys) is critically important because MGA can best determine whether any of the materials allegedly stolen by Gustavo Machado, Mariana Trueba, or Pablo Vargas were ever used by or disclosed to MGA. Mattel should not be allowed to place these files at issue, but then deprive the party best suited to evaluate Mattel's allegations with the opportunity to confirm or deny them.

### III. UNLESS THEY DESCRIBE MATTEL'S TRADE SECRETS, COMMUNICATIONS WITH LAW ENFORCEMENT PERSONNEL SHOULD NOT BE DESIGNATED AS "ATTORNEYS EYES ONLY".

In considering Mattel's motion, an important distinction must be drawn between communications between Mattel and law enforcement intended to encourage—properly or improperly—an investigation on the one hand, and documents seized by or given to authorities that constitute the alleged trade secrets at issue in this case. To the extent the authorities have possession of the allegedly secret information that Mattel claims was stolen, Mattel can and does have the authority to designate that information as "Attorneys Eyes Only." However, this does not extend to communication between Mattel and law enforcement in which the substance of any alleged trade secret is not disclosed.

A. **Communications With Law Enforcement Personnel Are Generally Discoverable.**

Mattel's opposition papers present no evidence, and MGA is aware of none, to suggest that voluntary communications with law enforcement, which do not betray trade secret or other commercially sensitive information, are categorically protected from public disclosure under the laws of the United States—or any other country for that matter.

Mattel notes that Federal Rule of Criminal Procedure 6(e) protects the secrecy of grand jury proceedings, but Mattel also admits that is not aware of any grand jury being convened in this case. Memorandum at fn. 7. Further, even if Rule 6(e) did somehow apply, it only prohibits the government and persons involved with the grand jury proceedings from disclosing what has transpired before the grand jury. The rule would afford no protection to Mattel—who is obviously not the government and has not been involved in any grand jury proceeding—from responding to discovery in this case.[1]

As for the communications between Mattel and Canadian law enforcement, Mattel's request to silence these communication is curious, since the Canadian investigation into Mattel's trade secrets appears to have concluded. Indeed, Mattel points to no evidence (and MGA is aware of none) to suggest that this investigation is active or ongoing. Therefore, the disclosure of these communications would likely not compromise any ongoing investigation.

---

[1] Similarly unconvincing are Mattel's citations to the authorities concerning protection for "name and contact information" for investigative authorities. These authorities arise in the context of Freedom of Information requests, which do not apply here. Further, if there is any concern about releasing name and email information for the Canadian officers identified in Mattel's email, that specific information can be redacted without having to cloak the entire document as "Attorneys' Eyes Only."

### B. The Public Has A Right To Know Whether Mattel Unfairly Influenced Law Enforcement Personnel With Gifts.

The law in the Ninth Circuit is clear that the public has a right to access judicial documents, including pre-trial discovery, unless there is "good cause" under Rule 26(c) as to why a protective order should issue. *See Phillips v. General Motors Corp.*, 307 F.3d 1206, 1210 (9th Cir. 2002); *San Jose Mercury News, Inc. v. United States Dist. Ct.*, 187 F.3d 1096, 1103 (9th Cir. 1999)("the fruits of pretrial discovery are, in the absence of a court order to the contrary, presumptively public").

For good cause to exist under Rule 26(c), the party opposing public disclosure must show that it will suffer specific prejudice or harm if no protective order is issued. *Beckman Indus., Inc. v. International Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992)("broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test"). That the party seeking protection may be exposed to some annoyance, embarrassment, or further litigation is not sufficient. *Foltz v. United Policyholders*, 331 F.3d 1122, 1136 (9th Cir. 2003). Rather, the Court must balance the public's right to information against the desire for secrecy to see if a protective is truly necessary (once a particularized showing of harm is first made). *Phillips* at 1211.

Here, Mattel has not made any showing of any particularized harm that will occur if its non-privileged communications with law enforcement authorities are not afforded "Attorneys Eyes' Only" protection.. In its moving papers, Mattel does not cite, refer, or discuss any particular instances or examples of harm. Instead, Mattel makes general, conclusory allegations that it will be harmed, but that is not enough establish good cause. *See San Jose Mercury News*, 187 F.3d at 1102 (particularized showing of good cause must be made with respect to each individual document).

1  Indeed, as to the communications between Mattel and Canadian law
2  enforcement (that are the subject of MGA's motion to designate), Mattel cannot
3  make the required showing because the communications at issue do not contain any
4  trade secret or otherwise competitively sensitive information. Instead, the
5  document merely contains two emails—one from Mattel to Canadian law
6  enforcement to the other from Canadian law enforcement to Mattel—which
7  generally discuss the status of the Canadian investigation. There is nothing
8  confidential about this information, and the disclosure of this information would not
9  cause the kind of prejudice or harm that Mattel is required to show to justify
10 "Attorneys Eyes Only" protection.
11 In fact, the only reason why Mattel wants to keep these document out of the
12 public spotlight is because it shows that Mattel was improperly influencing
13 Canadian law enforcement officials. While certainly embarrassing, this is not the
14 type of "particularized" harm that Rule 26(c) orders are intended to protect. And
15 even if it did, there is an enormous public interest in knowing that Mattel has been
16 sending gifts to the law enforcement officials who are supposed to be investigating
17 Mattel's trade secrets. Such interest would surely outweigh any particularized harm
18 that Mattel might conjure up as to why this document should be kept out of the
19 public record.

## CONCLUSION

21 Since Mattel has failed to demonstrate good cause as to why the Protective
22 Order should be amended, Mattel's motion should be denied.

24 Dated:   September 2, 2009          ORRICK, HERRINGTON & SUTCLIFFE LLP

26                                     By:    /s/ William A. Molinski
27                                           William A. Molinski
                                              Attorneys for MGA Parties