QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>        Plaintiff,<br><br>   vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>        Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br>Consolidated with<br>Case No. CV 04-09039<br>Case No. CV 05-02727<br><br>DISCOVERY MATTER<br>[To Be Heard by Discovery Master Robert C. O'Brien Pursuant to Order of January 6, 2009]<br><br>**[PUBLIC REDACTED] MATTEL, INC.'S OPPOSITION TO MOTION TO QUASH AND/OR FOR PROTECTIVE ORDER RE SUBPOENA ISSUED BY MATTEL, INC. TO PETER CARSON**<br><br>[Declarations of Michael T. Zeller and Valerie A. Lozano filed concurrently herewith]<br><br>Hearing Date:    TBD<br>Time:           TBD<br>Place:          Arent Fox<br><br>**Phase 2**<br><br>Discovery Cutoff:    Dec. 11, 2009<br>Pre-trial Conference:  March 1, 2010<br>Trial:           March 23. 2010 |

07975/3083416.1

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................1

BACKGROUND ................................................................................1

ARGUMENT ....................................................................................3

I.   THE RULES ENTITLE MATTEL TO DEPOSE MR. CARSON ..................3

   A.   Mr. Carson Has Relevant, Non-Privileged Information ........................3

   B.   Mr. Carson's Deposition Is Neither Duplicative Nor Burdensome ........4

II.  MR. CARSON HAS NOT MET HIS BURDEN OF DEMONSTRATING GOOD CAUSE TO PRECLUDE HIS DEPOSITION..............................................................................9

III. SHELTON DOES NOT GOVERN THE DEPOSITION OF MR. CARSON ......................................................................11

   A.   The Shelton Case Does Not Apply ........................................11

   B.   As Transactional Counsel, Carson May Be Deposed Without Regard To Shelton............................................13

   C.   Even If Shelton Applied, The Deposition Of Mr. Carson Meets Its Test ....................................................15

IV.  ORDER NO. 33 DOES NOT FORECLOSE THE DEPOSITION OF CARSON, AND EVEN IF IT DID, THE RELEVANT PORTION HAS BEEN OVERRULED BY SUBSEQUENT ORDERS ..........................17

CONCLUSION..................................................................................19

-i-

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

## <u>Cases</u>

<u>Bible v. Rio Props., Inc.</u>,
   246 F.R.D. 614 (C.D. Cal. 2007)...................................................................7

<u>Cf. Flanagan v. Wyndham Int'l,. Inc.</u>,
   231 F.R.D. 98 (D.D.C. 2005) .........................................................................6

<u>Chase Manhattan Bank, N.A. v. T & N PLC</u>,
   156 F.R.D. 82 (S.D.N.Y. 1994) ....................................................................12

<u>Cipollone v. Liggett Group, Inc.</u>,
   785 F.2d 1108 (3d Cir. 1986) .........................................................................8

<u>Clarke v. Am. Commerce Nat'l Bank</u>,
   974 F.2d 127 (9th Cir. 1992) .....................................................................9, 10

<u>Corvello [Gail] v. New England Gas Co., Inc.</u>,
   243 F.R.D. 28 (D.R.I. 2007) .........................................................................10

<u>Davidson Pipe Co. v. Laventhol and Horwath</u>,
   120 F.R.D. 455 (S.D.N.Y. 1988) ....................................................................6

<u>Diamond State Ins. Co. v. Rebel Oil Co.</u>,
   157 F.R.D. 691 (D. Nev. 1994) ......................................................................6

<u>Ellipsis, Inc. v. Color Works, Inc.</u>,
   227 F.R.D. 496 (W.D. Tenn. 2005) ..........................................................11, 13

<u>Evans v. Atwood</u>,
   1999 WL 1032811 (D.D.C. Sept. 29, 1999)...........................................5, 11, 15

<u>Falkenberg Capital Corp. v. Dakota Cellular, Inc.</u>,
   1998 WL 552966 (D. Del. Aug. 4, 1998)........................................................8

<u>Matter of Fischel</u>,
   557 F.2d 209 (9th Cir. 1977) .........................................................................9

<u>Ford Motor Co. v. U.S.</u>,
   84 Fed. Cl. 168 (Oct. 2, 2008) .......................................................................3

<u>Founding Church of Scientology of Washington, D.C., Inc. v. Webster</u>,
   802 F.2d 1448 (D.C. Cir. 1986).....................................................................5

<u>Goodman v. U.S.</u>,
   369 F.2d 166 (9th Cir. 1966) .........................................................................7

Green v. Baca,
  219 F.R.D. 485 (C.D. Cal. 2003)................................................................9

Horsewood v. Kids "R" Us,
  1998 WL 526589 (D. Kan. Aug. 13, 1998)........................................7, 8

Hunt Int'l Resources Corp. v. Binstein,
  98 F.R.D. 689 (D.C. Ill. 1983)...................................................................3

JZ Buckingham Investments, LLC v. U.S.,
  78 Fed. Cl. 15 (Fed. Cl. 2007)....................................................................7

Jackson v. Montgomery Ward & Co., Inc.,
  173 F.R.D. 524 (D. Nev. 1997) ............................................................3, 7

Kiln Underwriting Ltd. v. Jesuit High School of New Orleans,
  2008 WL 4286491 (E.D. La. Sept. 18, 2008)...........................................5

Luster v. Schafer,
  2009 WL 2219255 (D. Colo. July 23, 2009)...........................11, 15, 16

Mill-Run Tours, Inc. v. Khashoggi,
  124 F.R.D. 547 (S.D.N.Y. 1989)...............................................................5

Musko v. McCandless,
  1995 WL 580275 (E.D. Pa. Sept. 29, 1995)............................................8

Mustang Marketing, Inc. v. Chevron Prods. Co.,
  2006 WL 5105559 (C.D. Cal. Feb. 28, 2006) .......................................12

Nat'l Life Ins. Co. v. Hartford Acc. and Indem. Co.,
  615 F.2d 595 (3d Cir. 1980) .......................................................................5

Pamida, Inc. v. E.S. Originals, Inc.,
  281 F.3d 726 (8th Cir. 2002) ...........................................................10, 11

Shelton v. Am. Motors Corp.,
  805 F.2d 1323 (8th Cir. 1986) .............................10, 11, 12, 13, 14, 15

Spine Solutions, Inc. v. Medtronic Sofamor Danek, Inc.,
  2008 WL 199709 (W.D. Tenn. Jan. 23, 2008)........................................9

In re Subpoena Issued to Dennis Friedman,
  350 F.3d 65 (2d Cir. 2003) .............................................................5, 10, 13

Sullivan v. Prudential Ins. Co. of America,
  233 F.R.D. 573 (C.D. Cal. 2005)..............................................................7

U.S. ex rel Fago v. M & T Mort. Corp.,
  235 F.R.D. 11 (D.D.C. 2006) .....................................................................6

07975/3083416.1

MATTEL'S OPP. TO CARSON'S MOTION TO QUASH AND/OR FOR PROTECTIVE ORDER

U.S. Fidelity & Guar. Co. v. Braspetro Oil Servs. Co.,
    2000 WL 1253262 (S.D.N.Y. Sept. 1, 2000) ...........................................12, 13, 14

U.S. v. Philip Morris Inc.,
    209 F.R.D. 13 (D.D.C. 2002) .................................................................3, 11

United Phosphorus, Ltd. v. Midland Fumigant, Inc.,
    164 F.R.D. 245 (D. Kan. 1995) .............................................................3, 14

United States v. Johnston,
    146 F.3d 785 (10th Cir. 1998) ..................................................................9

Viacom Int'l Inc. v. YouTube, Inc.,
    2008 WL 3876142 (N.D. Cal. Aug. 18, 2008) ...........................................6

Weil v. Investment/Indicators, Research and Management, Inc.,
    647 F.2d 18 (9th Cir. 1981) .......................................................................9

Younger v. Kaenon, Inc.,
    247 F.R.D. 586 (C.D. Cal. 2007)...........................................................3, 9

**Statutes**

Fed. R. Civ. P. 26(b)(1)...........................................................................3, 17

Fed. R. Civ. P. 30(a)(1)................................................................................3

1

## Preliminary Statement

2      Peter Carson, a key individual acting for Omni 808 in the Wachovia debt

3 acquisition transaction, has unique knowledge of facts that are not only relevant but

4 central to this case. ███████████ on literally thousands of pages of documents that

5 have already been produced. ██████████████████████████

6 ████████████████████████. Nor does Mr. Carson himself dispute

7 this, since he does not deny his knowledge or challenge its relevance.

8      Mr. Carson offers only one reason why he is immune from the usually liberal

9 rules of discovery that require a witness with knowledge of relevant facts to testify.

10 Mr. Carson gained his knowledge as a transactional attorney. Lawyers are not immune

11 from discovery, however, and there is much that Mr. Carson saw, heard, wrote and

12 received that was not privileged.   Indeed, given the shroud of secrecy that has

13 surrounded the Omni entities, and the inability of the witnesses who have testified to

14 date to recall important details as to their operation, Mr. Carson's testimony becomes

15 not simply important but critical.   His knowledge may well be unique.   In these

16 circumstances, even the few jurisdictions that limit litigation counsel depositions most

17 strictly (which does not include the Ninth Circuit) and that Mr. Carson bases his

18 argument on, would *still* require that Mr. Carson testify, both because he was

19 transactional counsel (not trial or litigation counsel) and because no other witness could

20 readily duplicate his testimony.

21

## Background

22      Peter Carson is a transactional attorney at Bingham McCutchen and a member of

23 its "Banking and Leveraged Finance Group" practice group.[1] He was the lead attorney

24

25

26

---

27   [1] See Exhibits 1 and 2 of the Declaration of Valerie A. Lozano ("Lozano Decl."), dated

28 September 1, 2009, and filed concurrently herewith.

representing Omni 808 in the Omni-Wachovia transaction.[2]   In Mattel's Third Amended Answer and Counterclaims ("TAAC"), Mattel has specifically put the Omni-Wachovia transaction at issue.[3]   MGA, Larian and the Omni Parties have repeatedly claimed that this was an arm's length transaction and specifically denied that MGA or Larian funded it.  The terms of the transaction and the circumstances under which it was negotiated are critical to Mattel's Phase 2 claims.  As the lead transactional attorney on the deal for Omni, Mr. Carson has unique knowledge of that transaction, including its negotiation.  Several thousand pages produced by Omni, Wachovia and IGWT ███ ████████████████████████████  ████████████████████████████ ██████████████████████████████████████████████ ██████████████████████████████████████████████ ███████████████████████████████  █████████████ ██████████████████████████████████████████████  In short, he played an integral role in the structuring and negotiating of this transaction for Omni 808 and has extensive nonprivileged knowledge relevant to the claims at issue.

---

[2] █████████████████████████████████████████████████  Exhibit 50 to the Declaration of Michael T. Zeller ("Zeller Decl."), dated September 1, 2009,and filed concurrently herewith; see also Zeller Decl. Exhs. 1-23, 33-34, 37-44, 51-52.
    [3]   See TAAC, dated May 22, 2009, at ¶¶ 107, 108-113-121, Zeller Decl. Exh. 45.
    [4]   A search of the Omni, Wachovia and IGWT document productions reveal that "Carson" appears on over 9,000 pages of documents. Lozano Decl. ¶ 6.
    [5]   Zeller Decl. Exhs. 1-23, 33, 34, 37-44, and 51-52 provide an indicative sampling of the documents produced by Omni, Wachovia and IGWT that pertain to Mr. Carson.
    [6]   Zeller Decl. Exh. 5, at OMNI0007316.
    [7]   Zeller Decl. Exhs. 2, at IGWT00134, 6, at OMNI0007057-59, 7, at OMNI0006870, 8, at OMNI0006783, 9, at OMNI0005710, 10, at OMNI0005674, 17, at OMNI0005108, 37, at OMNI0006828, 38, at OMNI0006812, 40, at IGWT103158.
    [8]   Zeller Decl. Exh. 12, at IGWT03316, 13, at OMNI0005194, 15, OMNI0005170, 18, at OMNI0005072, 21, at OMNI0004519.
    [9]   See Kadisha Depo Tr. at 89:2-3, Zeller Decl. Exh. 50; see also Zeller Decl. Exh. 3, at IGWT03315.
    [10]   See Kadisha Depo Tr. at 27:16-28:4, Zeller Decl. Exh. 50.

1          **<u>Argument</u>**

2    **I.      <u>THE RULES ENTITLE MATTEL TO DEPOSE MR. CARSON</u>**

3          Rule 26(b)(1) permits discovery regarding any matter, not privileged, which is

4    relevant to the subject matter involved in the pending action. <u>Fed. R. Civ. P.</u> 26(b)(1).

5    Discovery is accorded broad treatment and functions as a "truth-seeking" mechanism in

6    the judicial process. <u>Jackson v. Montgomery Ward & Co., Inc.</u>, 173 F.R.D. 524, 528

7    (D. Nev. 1997) (granting motion to compel, noting that "[u]nder the Federal Rules, the

8    scope of discovery is broad and discovery should be allowed unless the information

9    sought has no conceivable bearing on the case."); <u>Ford Motor Co. v. U.S.</u>, 84 Fed. Cl.

10   168, 172 (Oct. 2, 2008) (noting "the truthseeking function" of discovery and denying

11   motion for protective order premised on undue burden).  A party may depose "any

12   person . . . by deposition . . . without leave of court." <u>Fed. R. Civ. P.</u> 30(a)(1).  The

13   <u>Rules</u> "create no special presumptions or exceptions for lawyers[.]" <u>U.S. v. Philip</u>

14   <u>Morris Inc.</u>, 209 F.R.D. 13, 19 (D.D.C. 2002).

15          **A.      <u>Mr. Carson Has Relevant, Non-Privileged Information</u>**

16          "Attorneys with discoverable facts, not protected by the attorney-client privilege

17   or work product, are not exempt from being a source for discovery by virtue of their

18   license to practice law or their employment by a party[.]" <u>United Phosphorus, Ltd. v.</u>

19   <u>Midland Fumigant, Inc.</u>, 164 F.R.D. 245, 248 (D. Kan. 1995); <u>see also</u> <u>Younger v.</u>

20   <u>Kaenon, Inc.</u>, 247 F.R.D. 586, 588 (C.D. Cal. 2007) ("the fact that the proposed

21   deponent is a lawyer does not automatically insulate him or her from a deposition or

22   automatically require prior resort to alternative discovery devices"); <u>Hunt Int'l</u>

23   <u>Resources Corp. v. Binstein</u>, 98 F.R.D. 689, 690 (D.C. Ill. 1983) ("[C]ompletely

24   preventing the taking of a deposition [of an attorney] would tend to limit or fix the

25   scope of the examination before it began and would usurp the court's role in deciding

26   whether certain questions seek privileged information.  The more appropriate method is

27

28

1    to allow the deposition to be taken and permit the attorney to claim privilege in the face

2    of certain questions, if necessary.").[11]

3    █████████████████████████████████████████████████

4    █████████████████████████████████████████████████

5    ████████████████████████████████████     ████

6    █████████████████████████████████████████████████

7    █████████████████████████████████████████████████

8    ████████████████████████   For example, the production of these

9    documents, █████████████████████████████████████

10   ████████████, makes clear that Mr. Carson has extensive nonprivileged

11   information.

12        **B.**    **Mr. Carson's Deposition Is Neither Duplicative Nor Burdensome**

13        Mr. Carson argues, without support, his testimony would be duplicative of

14   documents produced, ignoring the fact that for a large majority of them, he will be the

15   only person for Omni 808 who can authenticate these documents.[14]   Moreover,

16

---

17    [11] In this litigation, many attorneys have been deposed by both sides and testified at the

18    Phase 1 trial, including Anne Wang, David Rosenbaum, and Lucy Arant. See Cover page of

19    the Transcript of the Deposition of Anne Wang, dated January 28, 2008, Zeller Decl. Exh. 25;
Cover page of the Transcript of the Deposition of David Rosenbaum, dated Friday, January

20    25, 2008, Zeller Decl. Exh. 26; Cover page of the Transcript of Lucy Arant, dated May 15,
2008, Zeller Decl. Exh. 27. In addition, the prior Discovery Master granted Mattel's motion to

21    compel Christensen Glaser, MGA's attorney, and the current Discovery Master has compelled

22    Fred Mashian to sit for deposition. See Order Granting in Part and Denying in Part Mattel's
Motion to Compel Deposition and Production of Documents of Christensen Glaser Fink

23    Jacobs Weil & Shapiro, LLP, dated February 29, 2008, Zeller Decl. Exh. 28; Order No. 46,
dated August 14, 2009, Zeller Decl. Exh. 48. And, MGA itself continued to pursue discovery

24    from Mattel lawyers, including Mattel's outside litigation counsel. See letter from MGA's

25    counsel to Mattel's counsel, dated August 24, 2009, Zeller Decl. Exh. 46.
[12] See Kadisha Depo Tr. at 88:5-8, Zeller Decl. Exh. 50.

26    [13] ████████████████████████

27    [14] To the extent there are other individuals that could authenticate some of the documents,

28    █████████████████████████████████████████████████.

1   document production is not a substitute for live testimony.  <u>See, e.g.</u>, <u>Founding Church</u>
2   <u>of Scientology of Washington, D.C., Inc. v. Webster</u>, 802 F.2d 1448, 1451 (D.C. Cir.
3   1986) (depositions "rank high in the hierarchy of pre-trial, truth-finding mechanisms"
4   and "are a critical component of the tools of justice in civil litigation"); <u>Mill-Run Tours,</u>
5   <u>Inc. v. Khashoggi</u>, 124 F.R.D. 547, 549-50 (S.D.N.Y. 1989) (providing "several reasons
6   why oral depositions should not be routinely replaced by written questions"); <u>Nat'l Life</u>
7   <u>Ins. Co. v. Hartford Acc. and Indem. Co.</u>, 615 F.2d 595, 599-600 n.5 (3d Cir. 1980)
8   (Rules "specifically give a party the right to question a witness by oral deposition" and
9   "there are strong reasons why a party will select to proceed by oral deposition rather
10  than alternate means, most significantly the spontaneity of the responses"); <u>In re</u>
11  <u>Subpoena Issued to Dennis Friedman</u>, 350 F.3d 65, 69 (2d Cir. 2003) ("District courts
12  have also typically treated oral depositions as a means of obtaining discoverable
13  information that is preferable to written interrogatories."); <u>Kiln Underwriting Ltd. v.</u>
14  <u>Jesuit High School of New Orleans</u>, 2008 WL 4286491, at *2 (E.D. La. Sept. 18, 2008)
15  ("Depositions play a vital role in the preparation for trial.") (citation and internal
16  quotation omitted).

17       In <u>Evans v. Atwood</u>, 1999 WL 1032811 (D.D.C. Sept. 29, 1999), the court
18  affirmed the magistrate's ruling that permitted the deposition of an attorney involved in
19  issues being litigated, but who was not counsel of record.  The court agreed with the
20  magistrate's finding that the documents produced indicated the attorney's "familiarity
21  with the details of the case" and affirmed his ruling that his testimony was "quite
22  important" and "would not *all* be available from other sources."  <u>Id.</u> at *4-5 (emphasis
23  added) (noting that "the same documentation which provides examples of [attorney's]
24  invovlement in the structuring" of the policy at issue "also suggests that [attorney's]

25
26
27
28

1    extensive knowledge of the way the [policy] was developed may not all be available
2    elsewhere").[15]

3         Mr. Carson also argues that his deposition testimony would be duplicative of
4    information received from other sources, including the depositions of Mr. Neman and
5    Mr. Kadisha, the only two that have taken place since the Phase 2 stay was lifted.  (See
6    Mot. at 10.)  Mr. Carson's unsupported argument is wrong on the law and the facts.  As
7    a matter of law, asking different witnesses questions on the same topics is not improper
8    duplication.  See, e.g., Davidson Pipe Co. v. Laventhol and Horwath, 120 F.R.D. 455,
9    464 (S.D.N.Y. 1988) (noting "there is no guarantee that the information available to or
10   recalled by that one witness is coextensive with the potential testimony of other
11   witnesses" and rejecting argument that "further discovery would be duplicative because
12   one witness has already testified fully" on the topic); U.S. ex rel Fago v. M & T Mort.
13   Corp., 235 F.R.D. 11, 24 (D.D.C. 2006) (finding that "[a]dditional corporate testimony .
14   . . would not be duplicative of previous discovery" because "a document can be given
15   differing significance and meaning by different witnesses"); Diamond State Ins. Co. v.
16   Rebel Oil Co., 157 F.R.D. 691, 697 (D. Nev. 1994) (recognizing that although the
17   requests were "duplicative in part," there were "directed toward two separate business
18   entities, and the documents "actually maintained in the files of each entities may not be
19   identical"); Viacom Int'l Inc. v. YouTube, Inc., 2008 WL 3876142, at *3 (N.D. Cal.
20   Aug. 18, 2008) (requiring third party to produce documents "likely to be in the
21   possession of defendants" because defendants' "poor initial record keeping raise[d]
22   questions about the completeness of its files").

23        In fact, both Mr. Kadisha's and Mr. Nemen's depositions underscored Mr.
24   Carson's central role and raised questions only Mr. Carson can answer.  ████████

25   _____

26   [15]  Cf. Flanagan v. Wyndham Int'l,. Inc., 231 F.R.D. 98, 104 (D.D.C. 2005) (written
27   discovery, unlike the live testimony provided by depositions, "eschews the opportunity for
     opposing counsel to probe the veracity and contours of the statements and denie[s] the
28   opportunity to ask probative follow-up questions") (citation omitted).

1 ████████████████████████████████████████████████████████

2 ███████████████████████████████████████████████ Further,

3 the TAAC explicitly alleges that the members of the RICO conspiracy attempted to

4 encumber rights in Bratz after the jury had found in Mattel's favor and for the purpose

5 of thwarting the jury's verdict and the Court's rulings that Mattel was the rightful owner

6 of Bratz.[18]  The TAAC also alleges the purchase of MGA inventory by IGWT as a basis

7 for the fraudulent transfer and RICO claims.[19]  Documents produced in this litigation,

8 ████████████████████████████████████████████████████████

9 ████████████████████████████████ ███████████████████████

10 ████████████████████████████████████████████████████████

11 ████████████████████████████████████████████████████████

12 ████████████████████████████████████████████████████████

13 ██████████████████████████ █████████████████████████████

14 ████████████████████████████████████████████████████████

15 ████████████████████████████████████████████████████████

16 ████████████████████████████████████████████████████████

17 █████████████████████████████ ██████████████████████████

18 ████████████████████████████████████████████████████████

19 ████████████████████████████████████████████████████████

20 █████████████████████ As these examples demonstrate, Mr. Carson is a key

21 _____

22 [16]  <u>See</u> Kadisha Tr. at 88:5-8, Zeller Decl. Exh. 50.

23 [17]  <u>See id.</u> at 94:14-95:11 (if Mr. Carson says he a "lawyer on behalf of Omninet, that means he is accounting as a lawyer of Omninet").

24 [18]  <u>See</u> TAAC at ¶¶ 105-126, 136, 138, Zeller Decl. Exh. 45.

25 [19]  <u>See id.</u> at ¶¶ 122-126, 138, 219.

[20]  <u>See</u> emails, Zeller Decl. Exhs. 51, 52.

26 [21]  Kadisha Depo. Tr. at 210:14-211:20, 213:16-24, 214:10-18, 219:7-220:1, 225:21-226:4, 232:21-234:3.

27 [22]  <u>Id.</u> at 241:19-242:12

28 [23]  243:4-244:25, <u>see also</u> Zeller Decl. Exh. 52.

-7-

MATTEL'S OPP. TO CARSON'S MOTION TO QUASH AND/OR FOR PROTECTIVE ORDER

1   participant for Omni 808 who is needed to full explain these transactions as well as the

2   prior statements by Mr. Larian and others as to the purpose and intent of the

3   transactions and, more specifically, the liens that were attempted and that are squarely

4   at issue in the TAAC. ████████████████████████████████████████

5   ████████████████████████████████████████   Indeed, Mr.

6   Carson's conclusory claims as to duplication with Mr. Neman's deposition are puzzling

7   and in any event are unsupported, which is fatal to his argument.  Mr. Carson has not

8   shown that his deposition would be duplicative of neither deponent's testimony.

9        Mr. Carson has made no showing of any burden, other than the claim that he is

10   an attorney.  A party seeking to establish undue burden must support its claim with

11   specific and compelling proof."  JZ Buckingham Investments, LLC v. U.S., 78 Fed. Cl.

12   15, 25 (Fed. Cl. 2007) (refusing to quash subpoena and stating that the objecting party

13   must prove by "specific and compelling proof that the burden is undue.");see also

14   Horsewood v. Kids "R" Us, 1998 WL 526589, at *4 (D. Kan. Aug. 13, 1998) ("Mere

15   assertions by plaintiff of harassment and intimidation provide no evidence of undue

16   burden."); Bible v. Rio Props., Inc., 246 F.R.D. 614, 618 (C.D. Cal. 2007) ("Contrary to

17   defendant's assertion, the party who resists discovery has the burden to show discovery

18   should not be allowed, and has the burden of clarifying, explaining, and supporting its

19   objections."); Sullivan v. Prudential Ins. Co. of America, 233 F.R.D. 573, 575 (C.D.

20   Cal. 2005) (same).[25]  Accordingly, this cannot form the basis for barring Mr. Carson's

21   deposition either.

22

23   _____

24   [24]   See generally Neman Tr., Zeller Decl. Exh. 24; see also Mattel's Opposition to
      Kadisha's Ex Parte Application For a Protective Order, dated August 26, 2009, Zeller Decl.

25   Exh. 32.
      [25]   See also Court's July 9, 2009 Order, at 4, Zeller Decl. Exh. 47 ("[T]he party resisting

26   discovery thereafter has the burden of establishing that discovery should be denied.")
      (citations omitted); Discovery Master Order No. 46, dated August 14, 2009, at 33, Zeller Decl.

27   Exh. 48 (citing Jackson v. Montgomery Ward & Co., Inc., 173 F.R.D. 524, 528-29 (D. Nev.

28   1997) ("[T]he party claiming that a discovery request is unduly burdensome must allege
      (footnote continued)

## II.   MR. CARSON HAS NOT MET HIS BURDEN OF DEMONSTRATING GOOD CAUSE TO PRECLUDE HIS DEPOSITION

Mr. Carson seeks a protective order "forbidding the deposition from going forward." As the party seeking a protective order, Mr. Carson bears the burden under Rule 26(c) . . . of demonstrating good cause to preclude or limit the testimony. See Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1121 (3d Cir. 1986); see also Goodman v. U.S., 369 F.2d 166, 169 (9th Cir. 1966) (noting that the "burden of showing that a subpoena is unreasonable and oppressive is upon the party to whom it is directed," and overruling order quashing subpoena as "clearly erroneous").[26]   Mr. Carson has made no such showing other than repeated assertions that because he is an attorney he should not have to participate in the discovery process. This is not good cause. See Musko v. McCandless, 1995 WL 580275, at *1 (E.D. Pa. Sept. 29, 1995) ("protective orders prohibiting depositions are rarely issued" and fact that "defendant has served a deposition notice upon plaintiff's counsel, as opposed to a party or non-party witness, does not itself justify issuance of a protective order"); see also Falkenberg Capital Corp. v. Dakota Cellular, Inc., 1998 WL 552966, at *4 (D. Del. Aug. 4, 1998) (explaining that "good cause . . . must be shown with specificity" and that "[t]he question of whether an attorney deposition should be permitted is analyzed under the same standards as any other protective order motion").

Mr. Carson asserts that the information he "obtained relating to the transaction and this litigation was obtained in his capacity as an attorney and is thus privileged." (Mot. at 3.) The privilege does not attach to all the information a lawyer learns "in his capacity as an attorney." See, e.g., United States v. Johnston, 146 F.3d 785, 794 (10th

---

specific facts which indicate the nature and extent of the burden, usually by affidavit or other reliable evidence.")); Discovery Matter Order No. 51, August 26, 2009, at 8 (same).

[26]   Protective orders seeking the total prohibition of a deposition are rarely granted, "unless extraordinary circumstances are present." Horsewood, 1998 WL 526589, at *5 (noting that it "has characterized such a prohibition as a 'drastic action'") (citations omitted).

Cir. 1998) ("However, 'the mere fact that an attorney was involved in a communication does not automatically render the communication subject to the attorney-client privilege.'") (citation omitted).

A witness seeking to prevent the taking of a deposition on privilege grounds bears the burden of proving "that all the information plaintiff seeks. . . is protected by the attorney-client privilege or work product doctrine." <u>Younger Mfg. Co. v. Kaenon, Inc.</u>, 247 F.R.D. 586, 588 (C.D. Cal. 2007) (denying motion for protective order because movant had not met its burden); <u>Weil v. Investment/Indicators, Research and Management, Inc.</u>, 647 F.2d 18, 25 (9th Cir. 1981) ("As with all evidentiary privileges, the burden of proving that the attorney-client privilege applies rests not with the party contesting the privilege, but with the party asserting it."). While Mr. Carson relies heaviliy on blanket assertions of privilege (<u>see</u> Mot. at 3, 11), "[m]ere, conclusory statements that the privilege applies is not sufficient to meet [his] burden." <u>Spine Solutions, Inc. v. Medtronic Sofamor Danek, Inc.</u>, 2008 WL 199709, *3 (W.D. Tenn. Jan. 23, 2008) (granting motion to compel attorney's deposition); <u>see also</u> <u>Green v. Baca</u>, 219 F.R.D. 485, 491 (C.D. Cal. 2003) ("A party may not make a blanket assertion of privilege in response to a discovery request") (collecting numerous cases).

Rather than wholesale privilege objections, the law requires that privilege objections must be done on an individualized basis. <u>See, e.g.</u>, <u>Clarke v. Am. Commerce Nat'l Bank</u>, 974 F.2d 127, 129 (9th Cir. 1992) ("[B]lanket assertions of the privilege are 'extremely disfavored.' The privilege must ordinarily be raised as to each record sought to allow the court to rule with specificity."). Indeed, this Court has previously rejected blanket privilege assertions as well, noting that <u>Rule</u> 45(d)(2) "requires a party responding to a subpoena to provide sufficient information to enable the party seeking discovery to assess the claims of privilege and work product

1   protection."[27]  An attorney cannot hide behind the attorney-client privilege in order to

2   "create a cloak of secrecy around all the incidents" of a transaction.  Matter of Fischel,

3   557 F.2d 209, 212 (9th Cir. 1977).  Mr. Carson's motion seeking precisely that should

4   be rejected.

5   **III.   SHELTON DOES NOT GOVERN THE DEPOSITION OF MR. CARSON**

6   **A.   The Shelton Case Does Not Apply**

7   Mr. Carson asserts that Shelton v. Am. Motors Corp., 805 F.2d 1323 (8th Cir.

8   1986), governs.  It does not.  Shelton is an Eighth Circuit case that has never been

9   accepted (or even cited) by the Ninth Circuit.  As the Second Circuit observed in

10  rejecting "the rigid Shelton rule[,]" only one other Circuit (the Sixth Circuit) has

11  adopted Shelton.  In re Friedman, 350 F.3d at 67 (holding that the "rigid Shelton rule . .

12  . improperly guided the District Court's exercise of discretion in quashing the

13  subpoena").  The Discovery Master should not apply Shelton in the absence of Ninth

14  Circuit authority adopting that rule.

15  Even more basically, Shelton does not support Mr. Carson's motion.  The

16  Shelton test "was intended to protect against the ills of deposing opposing counsel in a

17  pending case which could potentially lead to the disclosure of the attorney's litigation

18  strategy" and was erected as "a barrier to protect *trial attorneys* from these

19  depositions."  Pamida, Inc. v. E.S. Originals, Inc., 281 F.3d 726, 730 (8th Cir. 2002)

20  (emphasis added).  Because requiring litigation counsel to be deposed on the topics

21  requested "would [have] require[d] her to reveal her mental selective process" and "in

22  essence reveal the attorney's litigation strategy[,]" the Shelton court held that the

23  information sought "was protected by the work product privilege."  Pamida, 281 F.3d at

24  730 (emphasizing narrowness of Shelton's holding); see also In re Friedman, 350 F.3d

25

26

27  —————————————

28  [27]   January 25, 2008 Order at 13, Zeller Decl. Exh. 29.

1   at 71 (noting that the Eighth Circuit "limited the Shelton rule's reach in Pamida").[28]

2   The Pamida opinion, among others, "makes clear that the three Shelton criteria apply to

3   limit deposition questions of attorneys in only two instances" -- "(1) when trial and/or

4   litigation counsel are being deposed, and (2) when such questioning would expose

5   litigation strategy in the pending case." Philip Morris, 209 F.R.D. at 17 (finding no

6   precedent to support the view that the "Shelton criteria apply to all attorney

7   depositions").[29]

8          Shelton applies only to litigation counsel.  If Shelton applied "whenever the

9   propriety of any attorney deposition was in issue, the presumption of discoverability in

10  the Federal Rules would be turned upside down" and parties would be allowed "to

11  avoid discovery on subject matter that would otherwise be discoverable under the

12  Federal Rules[.]"  Philip Morris, 209 F.R.D. at 18-19 (noting that "unlike Shelton, the

13  proposed deponents here are not litigation or trial counsel," other courts relying on

14  Shelton "have never embraced Defendants' view that the Shelton criteria apply to all

15  attorney depositions");  Ellipsis, 227 F.R.D. at 497 (requiring attorney to appear for

16  deposition and explaining that because attorney is not the "trial or litigation counsel of

17

18  _____

19  [28]   In Philip Morris, the court also rejected the defendants "sweeping" interpretation of
    Shelton, explaining that the defendants' contention that the Shelton criteria "apply to any

20  attempt to depose an attorney, without regard to the subject matter of the deposition or the
    attorney's role in the pending litigation" was "not only a misinterpretation of the holding in

21  Shelton and the subsequent case law re-affirming that holding, but is contrary to the language
    and philosophy of the Federal Rules[.]"  Philip Morris, 209 F.R.D. at 16.  The court went on to

22  note that Shelton "did not state that depositions of all opposing counsel were presumptively

23  barred, nor even that trial counsel's deposition should not have been taken."  209 F.R.D at 16
    (emphasis in original).  Rather, it merely held that "because responses to the particular

24  questions asked would provide a road map of trial counsel's litigation strategy[,]" the work
    product doctrine protected the attorney's answers.  209 F.R.D. at 16.

25  [29]   See also Luster v. Schafer, 2009 WL 2219255, at *2 (D. Colo. July 23, 2009) (Shelton

26  criteria "only apply to depositions of trial counsel - or counsel directly representing the party
    in the pending case - and then only if the deposition would reveal litigation strategy in the

27  pending case"); Ellipsis, Inc. v. Color Works, Inc., 227 F.R.D. 496, 497 (W.D. Tenn. 2005)

28  (same).

1  record" and questions will not expose "trial strategy . . . the <u>Shelton</u> test does not
2  apply"); <u>Evans</u>, 1999 WL 1032811, at *3 (considerations behind the <u>Shelton</u> court's
3  "reluctance to allow parties to depose opposing counsel" not present because the
4  attorney was not "counsel of record").

5     **B.     <u>As Transactional Counsel, Carson May Be Deposed Without Regard</u>
6              <u>To Shelton</u>**

7     It is commonplace for transactional counsel to provide testimony of
8  nonprivileged facts known to them where, as here, the transaction is at issue in
9  litigation. <u>U.S. Fidelity & Guar. Co. v. Braspetro Oil Servs. Co.</u>, 2000 WL 1253262, at
10 *2 (S.D.N.Y. Sept. 1, 2000) (compelling depositions of "transactional lawyers who
11 represented their clients with respect to the legal issues which arose prior to the
12 commencement of these actions" because "taking the depositions of these attorneys will
13 not be disruptive of the litigation, or raise significant privilege issues, as would be more
14 likely if they were acting as trial counsel"); <u>see also</u> <u>Chase Manhattan Bank, N.A. v. T</u>
15 <u>& N PLC</u>, 156 F.R.D. 82, 84 (S.D.N.Y. 1994) (authorizing deposition of corporate
16 counsel, rather than trial counsel, who may have exercised business as well as legal
17 authority); <u>Mustang Marketing, Inc. v. Chevron Prods. Co.</u>, 2006 WL 5105559, at *4
18 (C.D. Cal. Feb. 28, 2006) (permitting the plaintiff to call one of the defendants' in-
19 house counsel to testify at trial concerning the negotiation and drafting of one of the
20 agreements at issue); Phase 2 Discovery Matter Order No. 46 (compelling Mr. Mashian
21 to sit for deposition).[30]

22    Mr. Carson is a transactional attorney. While he claims he has been "intricately
23 involved in the litigation" and "taken an active role in assisting Omni's litigation
24 counsel" (Mot. at 7), Mr. Carson provides no evidence or explanation to support this
25 assertion. Mr. Carson's attorney biography page shows that he is part of Bingham's
26 "Banking and Leveraged Finance Group," a group described on Bingham's website as

27 _____

28    [30]  Zeller Decl. Exh. 48.

one that "structure[s], negotiate[s] and close[s] *transactions*, from straightforward deals to the most complex."[31]  Mr. Carson is not a litigator, and is most certainly not counsel of record in the present litigation.  He has neither filed any notice of appearance or appeared at a single hearing or deposition as litigation counsel in this case.[32]  Indeed, there is no evidence that Mr. Carson is even admitted in the Central District of California[33] or any district for that matter.[34]  The Shelton test is inapplicable here.

Mr. Carson argues that the deposition subpoena "is particularly disconcerting because he and his law firm are involved in representing clients in this litigation." (Mot. at 7.)  But Mr. Carson's membership in Bingham McCutchen does not change the analysis.  See In re Friedman, 350 F.3d at 66-67 (court improperly quashed subpoena directed to transactional attorney at same firm as litigation counsel); see also Ellipsis, 227 F.R.D. at 497 (denying motion to quash subpoena of corporate attorney who *was* member of trial counsel firm as Shelton did not apply to him and deposing him would not reveal trial strategy); Braspetro, 2000 WL 1253262, at *2 n.3 (noting that although attorneys seeking to quash deposition subpoenas are "partners at law firms which are serving as trial counsel . . .and they appear to be providing some assistance to trial counsel, they are not themselves trial counsel").  Were the rule otherwise, clients could hide otherwise discoverable information held by their transactional counsel by the mere expedient of hiring the same firm or counsel for litigation.  No authority supports Mr. Carson's contention otherwise.

---

[31]  Lozano Decl. ¶¶ 2, 3, Exhs. 1, 2 (emphasis added).
[32]  See Central District of California attorney page for Case No. 04-9049, Lozano Decl. ¶ 5, Exh. 4.
[33]  Lozano Decl. ¶ 4, Exh. 3.
[34]  Lozano Decl. Exh. 1.

MATTEL'S OPP. TO CARSON'S MOTION TO QUASH AND/OR FOR PROTECTIVE ORDER

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**C.      Even If Shelton Applied, The Deposition Of Mr. Carson Meets Its Test**

The <u>Shelton</u> test provides three criteria that should be met before opposing litigation counsel is deposed: (1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case. <u>Shelton</u>, 805 F.2d at 1327. All three factors are met here; thus even if somehow appliable, <u>Shelton</u> would require Mr. Carson to sit for his deposition.[35]

First, as Mattel explained above, Mr. Carson is the person necessary to authenticate many of documents produced in this litigation. ████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ █████████████████████████████████████████ <u>See</u> <u>Braspetro</u>, 2000 WL 1253262, at *4 (movant's contention that information sought can be obtained through other knowledgable people "ignores the fact" that certain witnesses are unavailable or "have no recollection or knowledge" of the topics the party wishes to explore in attorney's deposition). ████████████████████████ ████████████████████████████████████████████████████ ████████ And, as lead deal counsel for Omni 808, he is the only individual for Omni 808 with knowledge of the communications with other deal participants, including

---

[35]   <u>See</u> <u>United Phosphorus</u>, 164 F.R.D. at 250 (declining to apply the Shelton test to the attorney deposition at issue, but noting that if it did "the result would be the same" as "evidence of specific instances in which [attorney] participated in events underlying the claims" was presented, an "adequate showing that [attorney] possesses relevant, nonprivileged information crucial to the preparation of the case " was made, and "[n]o other satisfactory means exist for obtaining facts known to [attorney] than his deposition).

[36]   <u>See</u> Kadisha Depo. Tr. at 90:3-91:8, 93:19-94:13, 118:10-15, 147:25-148:12, Zeller Decl. Exh. 50.

1   Larian and others, and circumstances under which the deal was negotiated, information

2   not fully obtainable from documents produced.

3        The second factor asks if the information sought is relevant and nonprivileged.

4   As Mattel has made clear above, it is both.  Mr. Carson asserts that that Mattel "cannot

5   satisfy its burden of establishing that the information sought is non-privileged."  (Mot.

6   at 11.)  In fact, because Mattel has shown relevance, it is Mr. Carson's, not Mattel's,

7   burden under the standards set forth under Judge Larson's July 9, 2009 Order.  In any

8   event, the thousands of pages ███████████████████ produced to Mattel

9   establish that he has non-privileged information.  Mr. Carson's conclusory assertions

10  that because "he is an attorney," the privilege is "inherently implicate[d]" provides fails

11  to rebut the large quantity of nonprivileged information of which Mr. Carson clearly

12  possesses.  Mr. Carson does not attempt to dispute the relevance of his testimony, but

13  merely asserts everything he knows is privileged.  As this is clearly not the case, Mattel

14  has met the second factor of the <u>Shelton</u> test.

15       The third factor asks whether the information is crucial to the case.  The

16  information sought from Mr. Carson, for the reasons explained above, is crucial to the

17  case.  Mr. Carson, as evidenced by documents produced and Mr. Kadisha's testimony,

18  played an important role in the structuring of a central transaction at issue in Phase 2.

19  His extensive knowledge of the Omi-Wachovia transaction is crucial to issues in Phase

20  2.  <u>See</u> <u>Evans</u>, 1999 WL 1032811, at *4-5 (attorney played "important role . . . to

21  structure the RIF," the challenged policy and conclusion that he was necesary to case

22  rested in large part on attorney's "familiarity with the details of the case and the

23  documents exchanged by the parties thus far"); <u>see also</u> <u>Luster</u>, 2009 WL 2219255, at

24  *4 (information held only by attorney "clearly crucial to plantiff's ability to present

25  evidence in support of her claims").

26

27

28

IV. **THE DISCOVERY MASTER'S ORDERS DO NOT FORECLOSE THE CARSON DEPOSITION**

Mr. Carson repeatedly relies on Order No. 33. To the extent he recognizes that Order No. 46 overruled the portion of Order No. 33 on which he relies, he maintains that this was solely because Mr. Mashian was named in the TAAC. Not so. Discovery is not limited by the Federal Rules to those specifically identified by named in the pleadings.

---

[37] Order No. 46, dated August 14, 2009 at 3, Zeller Decl. Exh. 30.
[38] Id. at 4 (citing July 9, 2009 Order at 5).
[39] Id.
[40] Id. (quoting Order No. 33).
[41] Id. at 5.
[42] See Order No. 54, dated August 27, 2009, Zeller Decl. Exh. 31.

-17-

1 ████████████████████████████████████████████████

2 ██████████████████████████████████

3          Mr. Carson also argues that his subpoena differs from Mr. Mashian's because Mr.

4 Carson "is not named in the TAAC at all, and he is not alleged to be a RICO co-

5 conspirator."[44]  In fact, he is.  Not only are attorneys of the named co-conspirators pled

6 as actors in the RICO enterprises,[45] but ████████████████████████████

7 ███████  Mr. Carson is also mistaken on the law.  The rule he advocates without

8 support -- that parties may only depose those named in the complaint -- is contrary to

9 the liberal notice pleading regime employed by federal courts.  See Fed. R. Civ. P. 8(a).

10 Rule 26 also clearly rejects Mr. Carson's position, defining the scope of discovery to

11 include evidence that "appears calculated to *lead to* the discovery of admissible

12 evidence."  Rule 26(b)(1) (emphasis added).  If Mr. Carson were correct, this often

13 cited language of Rule 26 would be rendered meaningless.

14 ██████████████████████████████████████████████████

15 ██████████████████████████████████████████████████

16 ██████████████████████████████████████████████████

17 ████████  ██████████████████████████████████████

18 ██████████████████████████████████  Under the Federal Rules ████████,

19 Mr. Mashian is named in the TAAC because he is relevant; he is not relevant because

20 he is named.  Regardless of whether Mr. Carson is specifically named in the TAAC,

21 there can be no dispute that his testimony is relevant, and Mattel is entitled to depose

22 him.

---

[43]  Id. at 2.

[44]  Mot. at 13 (emphasis omitted).

[45]  See TAAC at ¶ 136, Zeller Decl. Exh. 45.

[46]  See Exhibit E, at 695, 754, 763, Zeller Decl. Exh. 35. Moreover, Mr. Carson is mentioned in over 20 exhibits to the proposed FAAC, almost all of which are emails in which he is the sender or recipient.  See Zeller Decl. Exh. 36.

[47]  Order No. 46 at 4, Zeller Decl. Exh. 30 (emphasis added).

MATTEL'S OPP. TO CARSON'S MOTION TO QUASH AND/OR FOR PROTECTIVE ORDER

1

## Conclusion

2    For the foregoing reasons, Mattel respectfully requests that Mr. Carson's Motion

3  be denied in its entirety.

4

5  DATED:  September 1, 2009      QUINN EMANUEL URQUHART OLIVER &
                          HEDGES. LLP

6

7                      By /s/ Michael T. Zeller

8                        Michael T. Zeller
                        Attorneys for Mattel. Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07975/3083416.1

MATTEL'S OPP. TO CARSON'S MOTION TO QUASH AND/OR FOR PROTECTIVE ORDER