# EXHIBIT 1

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 2

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 3

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 4

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 5

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 6

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 7

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 8

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 9

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 10

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 11

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 12

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 13

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 14

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 15

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 16

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 17

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 18

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 19

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 20

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 21

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 22

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 23

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 24

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 25

**CERTIFIED COPY**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

CARTER BRYANT, AN INDIVIDUAL,  )
                               )
               PLAINTIFF,      )
                               )        CASE NO.
        V.                     )        CV 04-9040 SGL (RNBX)
                               )
MATTEL, INC., A DELAWARE       )        CONSOLIDATED WITH
CORPORATION,                   )        CASE NO. 04-9059
                               )
            DEFENDANTS.        )        CASE NO.  05-2727
_____)
                               )
AND CONSOLIDATED ACTION (S).   )
_____)

# C O N F I D E N T I A L

(PURSUANT TO PROTECTIVE ORDER, THIS TRANSCRIPT HAS BEEN
DESIGNATED CONFIDENTIAL FOR ATTORNEYS' EYES ONLY)

## DEPOSITION OF ANNE WANG

## JANUARY 28, 2008



REPORTED BY:
APRIL CRUZ CACULITAN
CSR NO. 12437
JOB NO. 08AE104-AC

COURT REPORTERS
515 S. Flower Street
Suite 3600
Los Angeles, California 90071
Office: (213) 955-0070
Fax: (213) 955-0077

EXHIBIT ___25___
PAGE ___149___

# EXHIBIT 26

**CERTIFIED COPY**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, AN INDIVIDUAL, ) | |
| ) | |
| PLAINTIFF, ) | |
| ) | CASE NO. |
| V. ) | CV 04-9040 SGL (RNBX) |
| ) | |
| MATTEL, INC., A DELAWARE ) | CONSOLIDATED WITH |
| CORPORATION, ) | CASE NO. 04-9059 |
| ) | |
| DEFENDANTS. ) | CASE NO.  05-2727 |
| ———————————————) | |
| ) | |
| AND CONSOLIDATED ACTION (S). ) | |
| ) | |

# C O N F I D E N T I A L

**(PURSUANT TO PROTECTIVE ORDER, THIS TRANSCRIPT HAS BEEN
DESIGNATED CONFIDENTIAL FOR ATTORNEYS' EYES ONLY)**

# DEPOSITION OF DAVID ROSENBAUM

# JANUARY 25, 2008



REPORTED BY:
APRIL CRUZ CACULITAN
CSR NO. 12437
JOB NO. 08AE094-RP

COURT REPORTERS
515 S. Flower Street
Suite 3600
Los Angeles, California 90071
Office: (213) 955-0070
Fax: (213) 955-0077

EXHIBIT 26
PAGE 150

# EXHIBIT 27

**CERTIFIED COPY**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

CARTER BRYANT, AN INDIVIDUAL, )
)
PLAINTIFF, )
) CASE NO.
V. ) CV 04-9049 SGL
) (RNBX)
MATTEL, INC., A DELAWARE ) [CONSOLIDATED WITH
CORPORATION, ) NO. 04-9059 AND CASE NO. 05-2727]
)
DEFENDANTS. )
_____ )
)
AND CONSOLIDATED ACTION (S). )
_____ )

# DEPOSITION OF LUCY ARANT

# MAY 15, 2008





515 S. Flower Street
Suite 3600
Los Angeles, California 90071
Office: (213) 955-0070
Fax: (213) 955-0077

REPORTED BY:
BETH FELIX
CSR NO. 12766
JOB NO. 08AE383-BF

EXHIBIT 27
PAGE 151

# EXHIBIT 28

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 29



1  Hon. Edward A. Infante (Ret.)
   JAMS
2  Two Embarcadero Center
   Suite 1500
3  San Francisco, California  94111
   Telephone:    (415) 774-2611
4  Facsimile:    (415) 982-5287

5

6

7

8              UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10                 EASTERN DIVISION

11

12  CARTER BRYANT, an individual,          CASE NO. CV 04-09049 SGL (RNBx)
                                           JAMS Reference No. 1100049530
13        Plaintiff,

14        v.                               Consolidated with
                                           Case No. CV 04-09059
15  MATTEL, INC., a Delaware corporation,  Case No. CV 05-2727

16        Defendant.                       ORDER RE MATTEL'S MOTIONS TO
                                           COMPEL FARHAD LARIAN, KAYE
17                                         SCHOLER AND STERN &
                                           GOLDBERG TO PRODUCE
18                                         DOCUMENTS

19
    CONSOLIDATED WITH
20  MATTEL, INC. v. BRYANT and
    MGA ENTERTAINMENT, INC. v. MATTEL,
21  INC.

22

23

24              I. INTRODUCTION

25        The following motions are pending for decision, each of which seeks discovery from non-

26  parties: Mattel, Inc.'s ("Mattel") (1) Motion to Compel Farhad Larian to Produce Documents; (2)

27  Motion to Compel Kaye Scholer to Produce Documents; and (3) Motion to Compel Stern &

28  Bryant v. Mattel, Inc.,                                                        1
    CV-04-09049 SGL (RNBx)

                                    /-25        EXHIBIT  29
                                                PAGE     179

1    Goldberg to Produce Documents. Each of the non-parties submitted oppositions.[1] In addition,

2    MGA Entertainment, Inc., Isaac Larian, MGA Entertainment (HK) Limited, and MGAE de

3    Mexico S.R.L. de C.V. (collectively "MGA") submitted oppositions to the motions. Mattel

4    submitted a consolidated reply on January 3, 2008. The motions were heard on January 16, 2008,

5    at which time Mattel agreed to hold in abeyance its Motion to Compel Stern & Goldberg to

6    Produce Documents. This Order, therefore, addresses only Mattel's motions to compel Farhad

7    Larian and Kaye Scholer to produce documents.

8         On January 22, 2008, the parties submitted a Stipulation Regarding Protective Orders to

9    facilitate production of documents responsive to the subpoenas at issue.

10                              II. BACKGROUND

11        Since the inception of MGA in 1979 until December of 2000, Isaac Larian, a defendant

12   herein and MGA's CEO, and his brother Farhad Larian, a non-party, shared ownership and

13   management of MGA. A dispute developed between the two brothers and in March of 2000,

14   Isaac Larian proposed that Farhad Larian sell his interest in MGA to him.

15        On September 28, 2000, the Larian brothers agreed to have their uncle, Morad Zarabi,

16   arbitrate their dispute and decide a fair value for MGA and also decide which brother should sell

17   his ownership interest to the other. The brothers' agreement to arbitrate was entered into ten days

18   after the alleged effective date of Carter Bryant's contract purportedly assigning rights to Bratz to

19   MGA. Isaac Larian did not tell his brother about the contract with Bryant.

20        Mr. Zarabi retained an appraiser, Ernest Dutcher, to value MGA based on "the period

21   ending December 31, 1999." By December 4, 2000, Mr. Zarabi determined that Farhad Larian

22   should sell his 45% ownership interest in MGA to Isaac Larian and the two entered into an

23   Agreement for Sale of Stock by which Farhad Larian sold his interest for $8.775 million.

24

25

26   _____

27        [1] Mattel contends that Kaye Scholer's opposition was not timely filed and therefore should not be
     considered. Although the opposition was ten days late, Kaye Scholer's brief will nevertheless be considered in the
     interest of resolving these disputes on the merits.

28
     Bryant v. Mattel, Inc.,                                                          2
     CV-04-09049 SGL (RNBx)

EXHIBIT    29
PAGE    180

1    In the summer of 2002, Farhad Larian complained to Mr. Zarabi that Isaac Larian had

2  allegedly fraudulently concealed Bratz during the negotiations that led to Farhad Larian's sale of

3  MGA stock. Mr. Zarabi oversaw another appraisal of MGA based upon information he gathered

4  in 2002. Mr. Dutcher produced an appraisal on February 13, 2003 that valued MGA as of

5  December 31, 2000 and projected a 2001 revenue growth rate of twenty-five percent (25%) based

6  upon "hot projects that came along." Mattel's Motion at p.4, Ex. 8 to Decl. of Juan Pablo Albán.

7  Other information relied upon by Mr. Dutcher suggests that MGA had expansionary plans in 2000

8  compared to the prior four years.

9    Unable to resolve his disputes through Mr. Zarabi, Farhad Larian sued Isaac Larian,

10  alleging, among other things, that (a) in late 1999 or early 2000, Isaac Larian and MGA became

11  aware of a new product line called Bratz; (b) starting in early 2000 and throughout 2000, Isaac

12  Larian and MGA devised plans to develop and distribute Bratz; and (c) Isaac Larian concealed the

13  plans for Bratz from Farhad Larian and Mr. Zarabi in order to keep the valuation of MGA

14  artificially low. Notably, MGA and Bryant claim in the instant lawsuit that they did not even

15  meet until September 2000.

16    Isaac Larian successfully moved to compel arbitration of Farhad Larian's claims. In early

17  February 2005, Mr. Zarabi declined to serve as arbitrator and the court appointed another

18  arbitrator. A few weeks later, Farhad Larian filed suit against Mr. Zarabi alleging that he

19  conspired with Isaac Larian to conceal facts.

20    The arbitration of Farhad Larian's claims started on November 16, 2005. Two days into

21  the proceedings, however, Farhad Larian dismissed his claims. Isaac Larian sought to recover his

22  attorneys' fees and won an award in excess of $1 million against his brother.

23  Mattel Subpoenas Farhad Larian to Produce Documents

24    On August 31, 2007, Mattel subpoenaed Farhad Larian to appear for deposition and to

25  produce (1) documents relating to the Larian v. Larian disputes; (2) documents related to non-

26  Bratz allegations by Mattel and MGA, primarily related to allegations of trade secret theft; (3)

27  documents relating to Farhad Larian's relationship to MGA, including his position there,

28
Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

3

EXHIBIT 29
PAGE 181

1 ownership interests, and payments from MGA or Isaac Larian to Farhad Larian; (4) Farhad
2 Larian's knowledge and possession of documents specifically from the instant lawsuit, including
3 his communications with Mattel; and (5) information about the location of responsive documents.
4 The majority of Mattel's requests seek documents in the first category described above.

5      On September 21, 2007, Farhad Larian served responses and objections in which he
6 agreed to produce documents responsive to eleven of Mattel's forty-one document requests.
7 After a brief stay of discovery, counsel for Farhad Larian and Mattel met and conferred beginning
8 on November 20, 2007. During the meet and confer process, Farhad Larian agreed to produce
9 documents responsive to some, but not all of Mattel's forty-one requests. On November 21,
10 2007, Farhad Larian produced approximately one red well of documents.

11      The parties held a second meet and confer conference call on November 27, 2007, and
12 were able to resolve their disputes regarding many more, but not all requests. In particular, the
13 parties were ultimately able to resolve their disputes regarding the requests for documents related
14 to non-Bratz allegations. At the conclusion of the second meet and confer session, it was agreed
15 that Farhad Larian would make a supplemental production of documents on December 6, 2007,
16 and provide a written supplemental response. The parties attempted to schedule another meet and
17 confer session, but could not agree upon a date. On the evening of December 6, 2007, Mattel
18 filed the instant motion. Mattel seeks an order compelling Farhad Larian to produce documents
19 responsive to every request in its subpoena; overruling each of Farhad Larian's objections; and
20 ordering him to produce a document-by-document privilege log.

21 Mattel Subpoenas Isaac Larian's Attorney –Kaye Scholer

22      On or about September 6, 2007, Mattel also subpoenaed Kaye Scholer, the firm that
23 represented Isaac Larian in the Larian v. Larian proceedings. The subpoena consisted of thirty-
24 five (35) requests seeking the same five categories of documents it subpoenaed from Farhad
25 Larian. Kaye Scholer's representation of Isaac Larian included defending him in two related
26 Superior Court actions, two arbitration proceedings and an appeal to the California Court of
27 Appeals, all of which covered a period of several years. As a result of this representation Kaye

28                                             4
Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT 29
PAGE 182

1 Scholer has accumulated approximately fifty-six (56) boxes of its client's files, including, among
2 other things, correspondence files, pleading files, discovery files, witness preparation files,
3 research files, exhibits, attorney work files, and billing files.

4      On or about September 18, 2007, Kaye Scholer served its objections, asserting, among
5 other things, that the requests are duplicative, unreasonably cumulative, harassing and oppressive.
6 The parties met and conferred on October 11 and 29, 2007. Kaye Scholer agreed to review the
7 following files for responsive documents: (1) pleading files; (2) discovery files; and (3)
8 arbitration exhibits. Kaye Scholer's rationale for limiting its search for responsive documents to
9 these three files was to avoid undue burden because most of the documents in other files would be
10 protected by the work product doctrine and/or the attorney-client privilege. Kaye Scholer also
11 agreed to produce documents responsive to the majority of Mattel's requests. However, Kaye
12 Scholer repeatedly informed Mattel that it objected to producing a document-by-document
13 privilege log because it would be unduly burdensome, expensive and inconvenient.

14      In the instant motion, Mattel seeks an order compelling Kaye Scholer to produce
15 documents responsive to every request in its subpoena and overruling Kaye Scholer's objections,
16 including privilege, or alternatively, compelling Kaye Scholer to produce a document-by-
17 document privilege log.

18 Mattel's Other Discovery Efforts

19      Mattel has attempted to obtain documents related to the Larian v. Larian proceedings from
20 MGA and Isaac Larian. As far as Mattel can ascertain, however, MGA has produced only four
21 documents relating to the Larian v. Larian proceedings and Isaac Larian has produced none.

22      Mattel also searched public filings in the Larian v. Larian and Larian v. Zarabi et al. civil
23 lawsuits. Mattel found Mr. Dutcher's declaration that included the appraisals described above,
24 however, Mattel was not able to locate any of the raw data on which Mr. Dutcher relied. Mattel
25 also served subpoenas on third parties involved in the Larian v. Larian proceedings, and met with
26 limited success.

27 //

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

5

EXHIBIT 29
PAGE 183

### III. STANDARDS

Rule 45 of the Federal Rules of Civil Procedure requires third parties to produce documents (and reasonably accessible electronically stored information) that are responsive to a subpoena that a party serves on them. Fed.R.Civ.P. 45(b), (d). If the subpoenaed documents are relevant and there is good cause for their production, the subpoena is enforced unless the documents are privileged or the subpoena is unreasonable, oppressive, annoying or embarrassing. The factors to be balanced by the trial court in determining the propriety of a subpoena are the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena. A person withholding subpoenaed information under a claim of attorney-client privilege or protected by the work product doctrine must expressly make the claim and "describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." Fed.R.Civ.P. 45(d)(2).

Rule 45(c)(1), Fed.R.Civ.P., provides that "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Furthermore, "[t]he issuing court must enforce this duty and impose an appropriate sanction--which may include lost earnings and reasonable attorney's fees-- on a party or attorney who fails to comply." Id.

### IV. DISCUSSION

A.  Documents Subpoenaed from Farhad Larian

Mattel contends that each of the categories of documents it seeks from Farhad Larian is relevant and that there is good cause for production. First, Mattel contends that the Larian v. Larian proceedings are relevant because Farhad Larian's allegations about the timing of the origins and early development of Bratz and MGA's concealment thereof parallel and provide support for the crux of Mattel's claims in the instant litigation. Second, Mattel contends that documents about Farhad Larian's relationship with MGA are relevant to his credibility. In particular, Mattel contends that payments from Isaac Larian and/or MGA to Farhad Larian are

EXHIBIT 29
PAGE 184

1   relevant to credibility and possible bias. Third, Mattel contends that documents relating to this

2   action are clearly relevant, especially in light of MGA and Isaac Larian's threat to disqualify

3   Mattel's counsel based upon purported communications between Mattel's counsel and Farhad

4   Larian. Fourth, Mattel contends that it seeks information about the location of responsive

5   documents to determine whether Farhad Larian destroyed documents or for another reason no

6   longer has them.

7           Mattel next contends that Farhad Larian has failed to carry his burden of demonstrating

8   that the requests at issue are unreasonable, oppressive, annoying or embarrassing. Further, Mattel

9   contends that the protective order in place in this lawsuit is sufficient to address Farhad Larian's

10  confidentiality or privacy concerns. Lastly, Mattel contends that Farhad Larian's privilege log is

11  inadequate because it fails to justify his claims of privilege and work product protection on a

12  document-by-document basis.

13          Farhad Larian contends that Mattel's motion should be denied because Mattel violated its

14  meet and confer obligations by filing the motion before he made his scheduled supplemental

15  production and before the parties' meet and confer discussions had concluded. According to

16  Farhad Larian, on November 27, 2007, it was agreed that he would make a supplemental

17  production of documents on December 6, 2007, and that he would provide a written supplemental

18  response. Farhad Larian complied with this agreement and, on December 6, 2007, provided a

19  written supplemental response and, as Mattel acknowledges, approximately six boxes containing

20  approximately 12,000 pages of documents. Nevertheless, Mattel filed the instant motion on

21  December 6, 2007, without reviewing the supplemental document production and written

22  supplemental response. Farhad Larian also represents that as of December 6, 2007, the day

23  Mattel filed the instant motion, the parties acknowledged the need for a further meet and confer

24  session, as reflected in the numerous e-mails and correspondence exchanged between counsel.

25  Furthermore, Farhad Larian represents that after Mattel filed the instant motion, he requested that

26  Mattel take the motion off-calendar because his supplemental responses resolved the parties'

27  disputes as to all but three requests and because there was potential for resolving the remaining

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

7

EXHIBIT  29
PAGE  185

1  requests as well, but that Mattel refused.

2       Farhad Larian contends that in light of his supplemental production, he is now in full

3  compliance with Mattel's subpoena, except for three requests. He represents that he has produced

4  over 12,000 documents, including all non-privileged documents from the Larian v. Larian matters

5  that relate to Bratz (including its origin), Carter Bryant, Mattel, a fee agreement between Farhad

6  and MGA, and all documents related to appraisals of MGA that are not privileged or otherwise

7  covered by a protective order. He also contends that the privilege log he has produced to Mattel,

8  which describes the withheld documents by category instead of document-by-document, is

9  sufficient to substantiate his claims of privilege and work product protection. As for the three

10  remaining requests, Nos. 23, 24 and 41, Farhad Larian contends that they are overbroad, harassing

11  and cumulative and invade his and his family's privacy.

12                    <u>Farhad Larian Has Substantially Complied with the Subpoena</u>

13       Farhad Larian made a substantial supplemental production and provided a supplemental

14  written response on December 6, 2007. Indeed, Mattel acknowledges that it received

15  approximately six boxes of documents from Farhad Larian, which contain approximately 12,000

16  pages of documents. Nevertheless, Mattel contends in its reply brief that there are a few

17  deficiencies in Farhad Larian's production. For example, Mattel contends that Farhad Larian has

18  not produced (1) documents bates stamped "MZ" and "ED"; (2) raw data provided to the

19  appraisers in the Larian v. Larian litigations and the 2000 financial models that Farhad Larian

20  claimed Isaac Larian prepared; (3) three boxes of documents that Farhad Larian's counsel showed

21  Mattel's counsel and upon which MGA's disqualification threats against Mattel's counsel are

22  based; (4) the Dutcher Declaration; and (5) documents responsive to Request Nos. 17-19. Mattel

23  also contends that Farhad Larian has improperly limited its production to only those documents

24  that directly reference Bratz and Carter Bryant.

25       At the hearing, counsel for Farhad Larian confirmed that all responsive documents,

26  including the documents identified in Mattel's reply brief, had been or would be produced after

27  the parties executed the Stipulation Regarding Protective Orders, which has now been

28
   Bryant v. Mattel, Inc.,
   CV-04-09049 SGL (RNBx)                                                          8



EXHIBIT 29
PAGE 186

1   accomplished.  Significantly, counsel represented that Farhad Larian did not limit his production

2   to only those documents that directly reference Bratz and Carter Bryant, and that his supplemental

3   responses make this point clear.  Counsel for Farhad Larian also represented that all privileged

4   documents have been identified on a privilege log.

5        In light of the December 6, 2007 supplementation, and based upon the representations

6   made by counsel for Farhad Larian at the hearing, Farhad Larian has substantially discharged his

7   obligation to comply with Mattel's subpoena.  Therefore, there is no need for an order compelling

8   any further production of documents.

9        <u>Farhad Larian's Objections to the Three Remaining Requests are Justified</u>

10       The only three requests to which Farhad Larian objects are Nos. 23, 24 and 41, which are

11  set forth in full below:

12       <u>Request No. 23</u>: All DOCUMENTS RELATING TO any and all payments of
         money or transfers of anything of value that ISAAC LARIAN, his FAMILY
13       MEMBERS and/or MGA have made, have offered or have proposed, promised or
         agreed to make, to or for the benefit of YOU or YOUR FAMILY MEMBERS at
14       any time from January 1, 1999 through the present.

15       <u>Request No. 24</u>: All DOCUMENTS RELATING TO any and all payments of
         money or transfers of anything of value that any PERSON has made, has offered
16       or has proposed, promised or agreed to make, to or for the benefit of YOU or
         YOUR FAMILY MEMBERS and that was related in any way to BRATZ,
17       BRYANT, MGA or this ACTION at any time from January 1, 1999 through the
         present.
18
         <u>Request No. 41</u>: DOCUMENTS sufficient to IDENTIFY since January 1, 1999
19       through the present (a) each account with any bank or financial institution that
         YOU have or have had, or that YOU have or have had any legal beneficial
20       interest in; (b) each telephone subscription service account that YOU have or have
         had, or that YOU use or have used; and (c) each email account that YOU have or
21       have had, or that YOU use or have used.

22  Farhad Larian contends that Mattel's stated justification for the requests – bias and credibility – is
23
    questionable because he is not an adverse witness to Mattel.  Farhad Larian represents that MGA
24
    has never asked him to testify on the company's behalf.  Rather, only Mattel intends to call him as
25
    a witness.  Farhad Larian asserts that there is no reason for Mattel to impeach its own witness.
26
         Furthermore, Farhad Larian contends that even if it is advantageous for Mattel to attack
27

28  Bryant v. Mattel, Inc.,                                                           9
    CV-04-09049 SGL (RNBx)

EXHIBIT   29
PAGE   187

1   his credibility, the scope of Mattel's requests go far beyond what Mattel is reasonably entitled to

2   receive through discovery. He contends that pursuant to Rule 26, Fed.R.Civ.P., he should not be

3   subjected to discovery that is burdensome, cumulative, unnecessarily costly, or insufficiently

4   probative to the issues in the litigation to warrant the expense of production. Furthermore, he

5   contends that the usual restrictions on discovery set forth in Rule 26 should be rigorously applied

6   to protect non-parties such as himself.

7           Farhad Larian contends that the three requests at issue are overbroad and harassing in

8   several respects. First, he points out that the requests seek documents from 1999, which is five

9   years before this action was filed and six years before MGA was involved in this action. Farhad

10  Larian contends that payments made to him and his family before this action was filed and before

11  MGA was a party to the case have no relevance to his credibility as a witness in this case.

12  Second, Farhad Larian contends that the requests, as phrased, would include any card that

13  accompanied a gift to anyone in the Larian family, regardless of the dollar value of the gift.

14  Farhad Larian contends that family gifts for birthdays, Chanukah, or general gifts of money

15  between family members, have nothing to do with bias and violate his and his family's privacy

16  rights. Third, Farhad Larian contends that the requests are overbroad because they would require

17  him to disclose all documents reflecting payments he received as an employee of MGA and its

18  predecessor, a company he was employed by for decades.

19          Furthermore, Farhad Larian contends that he has already produced all non-privileged

20  documents which could potentially show bias, including the amount of money he was paid for his

21  shares of MGA, his consulting agreement with MGA after he sold his shares, and his fee

22  agreement with MGA. He contends that requiring him to search for and produce additional

23  payment documents would only result in him producing cumulative information, which is not

24  only irrelevant but violates his and his family's right to privacy under the California Constitution.

25  Farhad Larian also contends that it would be far less intrusive for Mattel to question him at a

26  deposition about payments he received from Isaac Larian and MGA than for him to respond to the

27  three requests at issue.

28
    Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

10

EXHIBIT 29
PAGE 188

1    Mattel's motion is denied with respect to Request Nos. 23, 24 and 41. The requests seek

2  information that is only minimally relevant to the claims and defenses in the case. Mattel's only

3  stated justification for the discovery is that it is relevant to establish Farhad Larian's credibility

4  and bias. Although impeachment information is discoverable, Mattel is not entitled to the type of

5  unfettered discovery it is now seeking. Rather, Rule 26(b)(2), Fed.R.Civ.P., requires the court to

6  restrict or prevent discovery if (i) the discovery is unreasonably cumulative or duplicative, or is

7  obtainable from some other source that is more convenient, less burdensome, or less expensive;

8  (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the

9  information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely

10  benefit, taking into account the needs of the case, the amount in controversy, the parties'

11  resources, the importance of the issues at stake in the litigation, and the importance of the

12  proposed discovery in resolving the issues. These restrictions are particularly important to

13  consider where the discovery requests are directed at a non-party. See Moon v. SCP Pool Corp.,

14  232 F.R.D. 633, 638 (C.D. Cal. 2005) (citing Dart Indus. Co., Inc. v. Westwood Chem. Co., Inc.,

15  649 F.2d 649 (9th Cir. 1980) (discovery should be "more limited to protect third parties from

16  harassment, inconvenience, or disclosure of confidential information.").

17    Aside from asserting that the requested information is relevant to bias and credibility,

18  Mattel has made no attempt to justify the significant breadth and burden of its requests. The

19  requests are so broad as to include every payment or gift, regardless of amount, made between

20  Farhad and Isaac Larian, their family members and MGA since 1999. The number of years for

21  which Mattel seeks financial information is overbroad. Mattel is seeking documents since 1999,

22  five years before this action was filed and six years before MGA became a party to this action.

23  Mattel fails to explain how any payments MGA or Isaac Larian made to Farhad or his family

24  members before this action was filed or MGA was a party to the action have any bearing on his

25  credibility as a witness in this action. The requests are also overbroad in that they encompass

26  customary gifts between family members and Farhad Larian's routine salary payments, which

27  have only minimal relevance to Farhad Larian's credibility and bias as a witness in this case.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

11

EXHIBIT   29
PAGE   189

1    The requests are also cumulative of discovery Farhad Larian has already provided. In

2  particular, Farhad Larian represents that he has already disclosed to Mattel the amount of money

3  he was paid for his shares of MGA, his consulting agreement with MGA after he sold his shares,

4  and his fee agreement with MGA. In light of this production , it is unreasonable to require Farhad

5  Larian to search for and produce gift receipts, cards, and the breadth of other financial documents

6  responsive to Request Nos. 23, 24 and 41. Furthermore, there are other less intrusive and

7  burdensome means of obtaining discovery regarding Farhad Larian's credibility and bias. For

8  example, Mattel may question Farhad Larian about payments he received from his brother and

9  MGA during his deposition.

10    Nor has Mattel justified the intrusive and harassing nature of the requests. Personal

11  financial information is afforded protection by the California Constitution that is also recognized

12  by federal courts. Cal. Const., Art. I, §1; Valley Bank of Nevada v. Superior Court, 15 Cal.3d

13  652, 656 (1975); Kelly v. City of San Jose, 114 F.R.D. 653, 656 (N.D. Cal. 1987) (federal courts

14  should give "some weight" to privacy rights that are protected by state constitutions); Soto v. City

15  of Concord, 162 F.R.D. 603, 616 (N.D. Cal. 1995) (right to privacy in financial information has

16  been recognized by federal courts). When a privacy right is asserted as an objection to discovery,

17  the court must balance the need for the information versus the privacy right asserted. Soto, 162

18  F.R.D. at 616.

19    As discussed previously, there is little to no need for the breadth of financial information

20  sought by Mattel. Many of the documents covered by Request Nos. 23, 24, and 41 have little to

21  no relevance to Farhad Larian's credibility and bias as a witness in this case. Furthermore,

22  Farhad Larian has already produced numerous documents showing payments he received from

23  both his brother and MGA. There are also other less intrusive means for obtaining discovery

24  relating to Farhad Larian's credibility and bias. Furthermore, the scope of these three requests

25  unduly intrude into Farhad Larian's private affairs. The requests are so broad as to include gifts

26  exchanged between family members and Farhad Larian's paycheck stubs, and would require

27  Farhad Larian to disclose every account number he has at a bank or financial institution since

28

EXHIBIT   29
PAGE   190

1    1999. Thus, the balance tips sharply in favor of protecting Farhad Larian's personal financial

2    information.

3                  <u>Farhad Larian's Privilege Log is Inadequate</u>

4         Mattel challenges the sufficiency of Farhad Larian's privilege log. At issue is whether

5    Farhad Larian must describe and assert claims of privilege on a document-by-document basis, or

6    whether he may do so categorically. Farhad Larian is withholding approximately one bankers'

7    box of documents based upon claims of privilege and work product protection. Farhad Larian's

8    Opposition at p.20, n. 9.

9         Rule 45(d)(2), Fed.R.Civ.P., requires a party responding to a subpoena to provide

10    sufficient information to enable the party seeking discovery to assess the claims of privilege and

11    work product protection. The "universally accepted" means of claiming that requested documents

12    are privilege is by producing a document-by-document privilege log. <u>Gail v. New England Gas</u>

13    <u>Co., Inc.</u>, 234 F.R.D. 28, 33 (D. R.I. 2007). The advisory comments to the 1993 amendment to

14    Rule 26(b), however, state that a description of documents by category is appropriate where it

15    would be "unduly burdensome" to provide a document-by-document privilege log. Specifically,

16    the advisory comment states, "Details concerning time, persons, general subject matter, etc., may

17    be appropriate if only a few items are withheld, but may be unduly burdensome when voluminous

18    documents are claimed to be privileged or protected, particularly if the items can be described by

19    categories."

20         Farhad Larian relies upon the advisory comments and cases citing the advisory comments

21    to support his contention that as a non-party, it would be unduly burdensome to require a

22    document-by-document privilege log in this case. The cases cited by Farhad Larian, however, are

23    distinguishable from the present case. In <u>SEC v. Thrasher</u>, 1996 WL 125661 (S.D. N.Y. 1996),

24    the Commission sought production of all communications between defense counsel concerning

25    the lawsuit. The court observed that this demand, on it face, sought wholesale production of

26    documents that are ordinarily protected from disclosure. Further, the defendant represented that

27    the requested documents were extremely voluminous and that a document-by-document privilege

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

13



1 log would be a long and fairly expensive project to undertake. In <u>Fifty-Six Hope Road Music,</u>

2 <u>Ltd. v. Mayah Collections, Inc.</u>, 2007 WL 1726558 (Nev. 2007), the withheld documents

3 consisted of e-mail communications between plaintiffs and their counsel or between plaintiffs'

4 counsel. Plaintiffs represented that there were hundreds and perhaps thousands of such email

5 communications which were protected by the attorney-client privilege and work product doctrine.

6  In contrast to the volume of documents at issue in <u>Thrasher</u> and <u>Fifty-Six Hope Road</u>

7 <u>Music</u>, Farhad Larian represents that he has about one bankers' box of privileged documents.

8 Farhad has not established that to produce a privilege log on a document-by-document basis for

9 this volume of documents is unduly burdensome. Furthermore, even if it were appropriate for

10 Farhad Larian to produce a privilege log that described documents categorically, which it is not,

11 the information provided in Farhad Larian's privilege log is insufficient to enable Mattel to assess

12 the claims of privilege and work product protection as required by Rule 45, Fed.R.Civ.P. For

13 example, in some instances, Farhad Larian fails to identify the author and recipient of the

14 documents being withheld. In other instances, Farhad Larian fails to provide the date or date

15 ranges for the documents being withheld. Therefore, Farhad Larian is ordered to provide a

16 supplemental privilege log that complies with Rule 45.

17 B. Documents Subpoenaed from Kaye Scholer

18  Mattel contends that the documents it seeks from Kaye Scholer are relevant for all the

19 same reasons previously articulated in the context of Mattel's motion to compel Farhad Larian to

20 produce documents. Mattel contends that its requests are not unreasonable, oppressive, annoying

21 or embarrassing. Mattel points out that Kaye Scholer has separate case files containing all or the

22 vast majority of responsive documents, which undermines Kaye Scholer's boilerplate burden

23 objections. Mattel also points out that it offered to alleviate some of the burden to Kaye Scholer

24 by paying for Kay Scholer's copying costs and by providing a paralegal to inspect documents

25 from Kaye Scholer's files with an agreement that the inspection would not result in a waiver of

26 any privileges. Further, Mattel contends that the protective order in place in this action is

27 sufficient to address any confidentiality concerns Kaye Scholer may have.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

14

EXHIBIT 29
PAGE 192

1    Mattel next contends that the documents it seeks from Kaye Scholer are not available from

2    other sources, as evidenced by Mattel's repeated and unsuccessful attempts to seek the same

3    documents from MGA. Indeed, Mattel contends that the documents in Kaye Scholer's possession

4    are in fact documents within MGA's possession, custody and control that should have, but have

5    not yet been, produced pursuant to prior discovery orders obligating MGA and Isaac Larian to

6    produce documents from the Larian v. Larian proceedings. Mattel also points out that it has

7    searched public files and served additional subpoenas on other third parties involved in the Larian

8    v. Larian proceedings. Moreover, Mattel argues that federal law requires Kaye Scholer to comply

9    with the subpoena, even if the evidence sought is obtainable from another source. See e.g. State

10   Farm Mut. Auto. Ins. Co. v. Accurate Medical, P.C., 2007 WL 2993840 at *1 (E.D. N.Y. 2007).

11   Mattel contends that Kaye Scholer's proposal to search only certain files for responsive

12   documents is unacceptable because it would inevitably exclude relevant documents. In particular,

13   Mattel contends that Kaye Scholer's proposal would exclude relevant documents likely to be

14   found in its correspondence file, such as an August 29, 2003 letter from Isaac Larian to Mr.

15   Zarabi relating to an appraisal of MGA, and a letter from Farhad Larian's attorney to Kaye

16   Scholer detailing the evidence of Isaac Larian's alleged concealment of Bratz. Mattel contends

17   that the relevance of these documents and others that are likely to exist justifies the burden of

18   production on Kaye Scholer.

19   Further, Mattel contends that Kaye Scholer has failed to produce a privilege log in

20   violation of Rule 45(d)(2), Fed.R.Civ.P., and therefore Kaye Scholer has waived any claims of

21   privilege. In the alternative, Mattel requests an order compelling Kaye Scholer to produce a

22   document-by-document privilege log.

23   Kaye Scholer contends that the instant motion is premature, unnecessary and a waste of

24   judicial resources. Kaye Scholer represents that after meeting and conferring in good faith, it

25   agreed to produce documents responsive to thirty of the thirty-five requests, and that the

26   remainder of the requests are grossly overbroad. Further, Kaye Scholer represents that it has

27   completed its review pursuant to the agreement, and is prepared to produce responsive

28
Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

15

EXHIBIT 29
PAGE 193

1    documents. However, Kaye Scholer continues to object to producing a document-by-document

2    privilege log on the grounds that it would be unduly burdensome and expensive. Kaye Scholer

3    emphasizes that Mattel is seeking documents from a law firm, and therefore the vast majority of

4    responsive documents are protected by multiple privileges, including but not limited to the

5    attorney-client privilege and the work product doctrine. Kaye Scholer estimates that it would take

6    in excess of seventy (70) hours to create a document-by-document privilege log for this case, and

7    that the Federal Rules of Civil Procedure do not require Kaye Scholer to undertake such an

8    unreasonable burden. Furthermore, Kaye Scholer contends that the failure to produce a

9    document-by-document privilege log does not result in a per-se waiver of any privilege.

10        MGA also opposes Mattel's motion for several reasons. First, MGA contends that

11   Mattel's requests are overbroad, encompassing documents that are only marginally related, if at

12   all, to the claims and defenses in the case. Second, MGA contends that Mattel's requests are

13   completely duplicative of requests it has served on the parties in the case. In particular, MGA

14   contends that Mattel has sought the Larian v. Larian documents from both MGA Entertainment,

15   Inc. and Isaac Larian. See Mattel's Request No. 41 in Mattel's First Set of Request for

16   Production of Documents and Tangible Things to MGA, and Request Nos. 123-125 in Mattel's

17   First Set of Requests for Documents and Things to Isaac Larian. MGA and Isaac Larian are both

18   under court order to comply with the requests, although Isaac Larian is only required to produce

19   documents that refer or relate to Bratz in response to Request Nos. 123-125. Third, MGA

20   contends that Mattel's requests to Kaye Scholer are much broader than requests Mattel previously

21   served on the parties to this case. Fourth, MGA contends that there is no reason Mattel cannot

22   obtain a complete set of all relevant documents from the Larian v. Larian proceedings without this

23   third-party subpoena. Fifth, MGA contends that the vast majority of documents Mattel seeks

24   from Kaye Scholer are protected by the attorney-client privilege, the work product doctrine, or

25   other privileges, and that it is improper for Mattel to attempt to subpoena these documents and

26   then insist that Kaye Scholer produce a document-by-document privilege log. In summary, MGA

27   contends that Mattel has misused the subpoena process by serving deliberately overbroad and

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

16

EXHIBIT 29
PAGE 194

1   burdensome requests in an attempt to harass and intimidate MGA and non-parties. Accordingly,

2   MGA contends that Mattel's motion should be denied or Mattel's subpoena should be

3   substantially limited in scope.

4   <u>Mattel's Subpoena is Overbroad, Unduly Burdensome and Cumulative</u>

5       Mattel's subpoena to Kaye Scholer is overbroad and is not reasonably tailored to seek

6   documents relevant to the claims and defenses in this case. Of the thirty-five requests Mattel

7   served on Kaye Scholer, all but one begin with the phrase "all documents" or a similarly broad

8   phrase. For example, Request Nos. 1-3, which are set forth below, seek virtually all documents

9   relating to lawsuits and/or arbitrations between Isaac Larian and Farhad Larian:

10      <u>Request No. 1</u>: All DOCUMENTS, including all COMMUNICATIONS,
    RELATING TO any and all arbitration proceedings between FARHAD LARIAN
11  and ISAAC LARIAN, including without limitation all video and/or sound
    recordings, transcripts, exhibits, memoranda, witness statements, declarations,
12  affidavits and sworn testimony given by any PERSON in connection with such
    arbitration proceedings.

13
        <u>Request No. 2</u>: All DOCUMENTS including all COMMUNICATIONS,
14  RELATING TO Los Angeles Superior Court Case No. BC301371 filed by
    FARHAD LARIAN against ISAAC LARIAN and/or any related proceedings,
15  including any appeal thereof, and including without limitation all video and/or
    sound recordings, transcripts, exhibits, pleadings, briefs, memoranda, witness
16  statements, declarations, affidavits and sworn proceedings and/or any appeal
    related to such lawsuit.

17
        <u>Request No. 3</u>: All DOCUMENTS RELATING TO Los Angeles Superior Court
18  Case No. BC329501 filed by FARHAD LARIAN against ISAAC LARIAN,
    MORAD ZARABI and Kambiz Zarabi, and/or any related proceedings and/or any
19  appeal of such lawsuit, including without limitation all video and/or sound
    recordings, transcripts, exhibits, pleadings, briefs, memoranda, witness
20  statements, declarations, affidavits and sworn testimony given by any PERSON in
    connection with such suit and/or related proceedings and/or any appeal related to
21  such lawsuit.

22
    Mattel has not limited the subject matter of these requests (and others) in any way to exclude
23
    irrelevant information. To the contrary, Request Nos. 1-3 are drafted in the broadest possible
24
    language, encompassing documents that are only marginally related, if at all, to this case. As
25
    such, Mattel's requests are also unduly burdensome.
26
        Furthermore, Mattel's requests are clearly duplicative of other requests propounded to the
27

28

    17

    EXHIBIT __29__
    PAGE __195__

1    parties in this action. In particular, the requests relating to the <u>Larian v. Larian</u> proceedings are

2    duplicative of Mattel's Request No. 41 to MGA and Request Nos. 123-125 to Isaac Larian.

3    During the hearing, counsel for MGA acknowledged that Isaac Larian is required to comply with

4    Request Nos. 123-125, and is prepared to review Kaye Scholer's files for responsive documents

5    to fulfill his responsibility. Also during the hearing, Kaye Scholer agreed to make its

6    correspondence file available to MGA's counsel for review.

7         In light of Mattel's failure to take reasonable steps to avoid unduly burdening Kaye

8    Scholer and in light of MGA's and Kaye Scholer's representations during the hearing as outlined

9    above, Mattel's motion to compel Kaye Scholer to comply with the full scope of the subpoena is

10   denied.

11               <u>Kaye Scholer's Compromise is Reasonable Under the Circumstances</u>

12        As an alternative to complying with the full scope of the subpoena, Kaye Scholer agreed

13   to review the following files for documents responsive to every one of Mattel's requests except

14   Nos. 1-3, 6 and 10: (1) pleading files; (2) discovery files; and (3) arbitration exhibits. Kaye

15   Scholer's Opposition at p.5. Kaye Scholer's compromise is reasonable under the circumstances.

16   Narrowing the scope of Kaye Scholer's search in this manner will significantly minimize the

17   burden, expense, and inconvenience imposed by the subpoena because, unlike Kaye Scholer's

18   other files, most of the documents in the three files it agreed to search are not likely to be covered

19   by the attorney-client privilege or work product doctrine. Further, narrowing Kaye Scholer's

20   search in this manner will not significantly deprive Mattel of relevant discovery to which it is

21   entitled because, as stated previously, MGA's counsel represented during the hearing that Isaac

22   Larian is prepared to review Kaye Scholer's documents, including the correspondence file, to

23   comply with Request Nos. 123-125.

24        Accordingly, to the extent it has not already done so, Kaye Scholer shall conduct the

25   agreed upon search of its three files and produce documents responsive to all of Mattel's requests,

26   except Nos. 1-3, 6 and 10.

27   //

28
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

                                                                                          18

EXHIBIT 29

PAGE 196

1          Kaye Scholer Must Produce a Privilege Log in Compliance with Rule 45

2          Mattel contends that Kaye Scholer has waived its claims of privilege by failing to produce

3    any privilege log. The law is clear, however, that the failure to produce a document-by-document

4    privilege log does not result in a per-se waiver of any privilege. See Burlington Northern & Santa

5    Fe Ry. Co. v. U.S. Dist. Court for Dist. Of Mont., 408 F.3d 1142, 1147 (9th Cir. 2005). In this

6    case, Kaye Scholer raised a legitimate objection to producing a document-by-document privilege

7    log on the grounds that it would impose an undue burden. Under these circumstances, a finding

8    of waiver is unjustified.

9          Nevertheless, Kaye Scholer's claim of undue burden is unpersuasive. Kaye Scholer has

10   acknowledged that most of the documents in the three files it has agreed to search are not likely to

11   be covered by the attorney-client privilege or work product doctrine. Kaye Scholer Opposition at

12   pp. 5 and 9. Indeed Kaye Scholer agreed to search these files precisely because they were not

13   likely to contain privileged documents. Therefore, requiring Kaye Scholer to produce a

14   document-by-document privilege log for documents withheld from these three files should not

15   impose an undue burden. Accordingly, Kaye Scholer is ordered to produce a document-by-

16   document privilege log for documents withheld from the three files it agreed to search.

17                                      V. CONCLUSION

18         For the reasons set forth above, it is ordered as follows:

19         1. Farhad Larian is in substantial compliance with Mattel's subpoena with respect to all of

20   the requests, except Nos. 23, 24 and 41. Request Nos. 23, 24 and 41 are overbroad, unduly

21   burdensome, cumulative, harassing and invade the right of privacy of Farhad Larian and his

22   family. Therefore, Mattel's motion to compel Farhad Larian to produce documents in response to

23   the subpoena is denied.

24         2. Farhad Larian shall produce a document-by-document privilege log to Mattel no later

25   than January 30, 2008.

26         3. Farhad Larian's request for sanctions against Mattel is denied.

27         4. Mattel's subpoena to Kaye Scholer is overbroad, unduly burdensome and cumulative.

28
     Bryant v. Mattel, Inc.,                                                          19
     CV-04-09049 SGL (RNBx)

EXHIBIT  29
197

1   Therefore, Mattel's motion to compel Kaye Scholer to produce documents responsive to the

2   subpoena is denied.  Instead, Kaye Scholer is ordered to abide by its agreement to review its

3   pleading files, discovery files, and arbitration exhibits for documents responsive to all of Mattel's

4   requests, except Request Nos. 1-3, 6 and 10.  Kaye Scholer shall produce responsive documents

5   no later than January 30, 2008.

6       5. Kaye Scholer shall also produce a document-by-document privilege log identifying all

7   documents withheld from its pleading files, discovery files, and arbitration exhibits, no later than

8   January 30, 2008.

9       6. Mattel shall abide by its agreement to reimburse Farhad Larian and Kaye Scholer for

10   their copying costs.

11       7. Isaac Larian is granted an extension of time to comply with Request Nos. 123-125.

12   Isaac Larian shall deliver documents responsive to these requests to Mattel no later than 12:00

13   p.m. on January 25, 2008.

14       8. Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

15   Master, Mattel shall file this Order with the Clerk of Court forthwith.

16

17   Dated: January 25, 2008                    /s/Edward A. Infante

18                                  HON. EDWARD A. INFANTE (Ret.)
                                        Discovery Master

19

20

21

22

23

24

25

26

27

28   Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

                                                                        20

EXHIBIT 29
PAGE 198

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on January 25, 2008, I served

the attached ORDER RE MATTEL'S MOTIONS TO COMPEL FARHAD LARIAN, KAYE SHOLER

AND STERN & GOLDBERG TO PRODUCE DOCUMENTS in the within action by email addressed

as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| Matthew M. Werdegar, Esq. | Keker & Van Nest | mwerdegar@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| Audrey Walton-Hadlock, Esq. | Keker & Van Nest | awalton-hadlock@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Thomas J. Nolan, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tnolan@skadden.com |
| Raoul D. Kennedy, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | rkennedy@skadden.com |
| Amy S. Park, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | apark@skadden.com |
| Harriet S. Posner, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | hposner@skadden.com |
| Carl Alan Roth, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | croth@skadden.com |
| Timothy A. Miller, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tmiller@skadden.com |
| Marcus R. Mumford, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Mmumford@skadden.com |
| Patricia Glaser, Esq. | Christensen, Glaser, Fink, et al. | pglaser@chrisglase.com |
| Scott E. Glzer, Esq. | Christensen, Glaser, Fink, et al. | sglzer@chrisglase.com |
| Alisa Morgenthaler-Lever, Esq. | Christensen, Glaser, Fink, et al. | amorgentaler@chrisglase.com |
| Alan N. Goldberg, Esq. | Stern & Goldberg | agoldberg@sgattys.com |
| Mark Overland, Esq. | Overland, Borenstein, et al. | moverland@obsklaw.com |
| Alexander Cote, Esq. | Overland, Borenstein, et al. | acote@obsklaw.com |
| Bryant S. Delgadillo, Esq. | Kaye Scholer | bdelgadi@kayscholer.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above

is true and correct.

Executed on January 25, 2008, at San Francisco, California.

_Sandra Chan_

EXHIBIT __29__
PAGE __199__

# Miscellaneous Filings (Other Documents)

2:04-cv-09049-SGL-RNB Carter Bryant v. Mattel Inc

(RNBx), AO279, DISCOVERY, PROTORD, RELATED-G


## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

**Notice of Electronic Filing**

The following transaction was entered by Alban, Juan on 1/28/2008 at 12:54 PM PST and filed on 1/28/2008

**Case Name:**       Carter Bryant v. Mattel Inc
**Case Number:**     2:04-cv-9049
**Filer:**           Mattel Inc
**Document Number:** 1699

**Docket Text:**
Order re Mattel's Motions to Compel Farhad Larian, Kaye Scholer and Stern & Goldberg to Produce Documents filed by Defendant Mattel Inc (Alban, Juan)


**2:04-cv-9049 Notice has been electronically mailed to:**

Juan Pablo Alban    juanpabloalban@quinnemanuel.com

Timothy L Alger    timalger@quinnemanuel.com

Christa M Anderson    canderson@kvn.com

Michelle M Campana    michelle.campana@skadden.com

Jon D Corey    joncorey@quinnemanuel.com

Alexander H Cote    acote@obsklaw.com

Leah Chava Gershon    leah@spertuslaw.com

Alan Neil Goldberg    agoldberg@sgattys.com

Emil W Herich    eherich@kmwlaw.com

John W Keker    jkeker@kvn.com, DRoberts@kvn.com, efiling@kvn.com

Raoul D Kennedy    rkennedy@skadden.com

Alisa Morgenthaler Lever    amorgenthaler@chrisglase.com

Nathan Meyer    nmeyer@kayescholer.com, dclow@kayescholer.com


EXHIBIT  29
                                                                PAGE  200              1/28/2008

CM/ECF - California Central District                                                    Page 2 of 2

Cyrus S Naim      cyrusnaim@quinnemanuel.com

Thomas J Nolan    tnolan@skadden.com, carl.roth@skadden.com, marcus.mumford@skadden.com

Mark E Overland   moverland@obsklaw.com

Michael H Page    mhp@kvn.com

Kenneth A Plevan    kenneth.plevan@skadden.com, drogosa@skadden.com, sumclaug@skadden.com

Brett Dylan Proctor    dylanproctor@quinnemanuel.com

John B Quinn    johnquinn@quinnemanuel.com

David C Scheper    dscheper@obsklaw.com, feseroma@obsklaw.com

Oleg Stolyar    alexstolyar@quinnemanuel.com

Kien C Tiet    ktiet@sgattys.com

John Elliot Trinidad    jtrinidad@kvn.com, efiling@kvn.com, yjayasuriya@kvn.com

Audrey Walton-Hadlock    awaltonhadlock@kvn.com

Matthew M Werdegar    mmw@kvn.com

Michael T Zeller    michaelzeller@quinnemanuel.com

**2:04-cv-9049 Notice has been delivered by First Class U. S. Mail or by fax to: :**

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** C:\Documents and Settings\lorrainerobles\Desktop\MATTEL\Order re Mattel's Motions to Compel.PDF
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=1/28/2008] [FileNumber=5265683-0]
[b90e9037e8c528f2d567bc85114c4aaa1713c671077be21a773ae6519e5f91c70a37
3be159128f53671daae8ab9cc894a0d7711b23710d92b5162f8da4167739]]

EXHIBIT 29
PAGE 201

# EXHIBIT 30

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 31

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 32

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 33

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 34

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 35

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 36

**EXHIBIT F**

**TABLE OF COMMUNICATIONS**

| Number | Date | Type of Communication | Bates Reference |
|---|---|---|---|
| 1 | 8/28/2008 | Email from Shirin Makabi to David Witek, et al. | IGWT 0007465 - IGWT 0007466 |
| 2 | 8/28/2008 | Email from David Witek to Jessica Bulen, et al. | IGWT 0001224 |
| 3 | 9/2/2008 | Email from Shirin Makabi to David Witek, et al. | IGWT 0002686 - IGWT 0002689 |
| 4 | 9/22/2008 | Email from Jeanine Pisoni to Moshe Kupietzky; Email from Jeanine Pisoni to David Witek and Moshe Kupietzky. | IGWT 0003290 - IGWT 0003291 |
| 5 | 9/30/2008 | Email from Michelle Darringer to Moshe Kupietzky. | IGWT 0002725 |
| 6 | 10/17/2008 | Email from Lisa Tonnu to Moshe Kupietzky, et al.; Email from Lisa Tonnu to Moshe Kupietzky, et al. | IGWT 0003239 - IGWT 0003241 |
| 7 | 10/17/2008 | Email from Lisa Tonnu to David Witek, et al. | IGWT 0003244 - IGWT 0003245 |
| 8 | 10/17/2008 | Email from Lisa Tonnu to Tiffanie Baker, et al. | OMNI 0004064 - OMNI 0004066 |
| 9 | 10/17/2008 | Email from Lisa Tonnu to Tiffanie Baker, et al. | IGWT 0000024 - IGWT 0000026 |
| 10 | 10/17/2008 | Email from Lisa Tonnu to Angela Larian, Shirin Makabi and Moshe Kupietzky; Email from Lisa Tonnu to Moshe Kupietzky, et al. | IGWT 0003249 - IGWT 0003251 |
| 11 | 10/21/2008 | Email from Lisa Tonnu to Tiffanie Baker, et al. | IGWT 0000138 - IGWT 0000141 |
| 12 | 10/21/2008 | Email from Shirin Makabi to Tiffanie Baker, et al.; Email from Lisa Tonnu to Tiffanie Baker, et al. | IGWT 0000012 - IGWT 0000015 |
| 13 | 10/21/2008 | Email from Lisa Tonnu to David Witek, Tiffanie Baker, et al.; Email from Lisa Tonnu to Tiffanie Baker, et al. | IGWT 0000132 - IGWT 0000137 |
| 14 | 10/21/2008 - 10/22/2008 | Email from Lisa Tonnu to Tiffanie Baker; Email from Lisa Tonnu to Tiffanie Baker; Email from Lisa Tonnu to Tiffanie Baker, et al. | IGWT 0000150 - IGWT 0000155 |

EXHIBIT __36__
PAGE ____283____

| Number | Date | Type of Communication | Bates Reference |
|---|---|---|---|
| 15 | 10/22/2008 | Email from Isaac Larian to Moshe Kupietzky, et al.; Email from Shirin Makabi to Moshe Kupietzky, et al.; Email from Shirin Makabi to David Witek, et al. | IGWT 0014598 – IGWT 0014600 |
| 16 | 10/27/2008 | Email from Angela Larian to David Witek. | IGWT 0009432 – IGWT 0009433 |
| 17 | 10/27/2008 | Email from Lisa Tonnu to David Witek. | IGWT 0016872 |
| 18 | 9/11/2008 | Email from Lisa Tonnu to David Witek. | IGWT 0016969 – IGWT 0016970 |
| 19 | 7/09/2008 | Email from Brad Schneider to Erica Gately. | IGWT 0013397 – IGWT 0013398 |
| 20 | 7/18/2008 – 7/25/2008 | Email from Michelle Darringer to Moshe Kupietzky, et al.; Email from Moshe Kupietzky to Michelle Darringer, et al.; Email from Michelle Darringer to Moshe Kupietzky, et al.; Email from Michelle Darringer to Moshe Kupietzky. | IGWT 0002722 – IGWT 0002724 |
| 21 | 8/08/2008 | Email from Brad Schneider to Larry Falcon. | IGWT 0052194 – IGWT 0052195 |
| 22 | 8/09/2008 | Email from Brad Schneider to Shirin Makabi. | IGWT 0052557 – IGWT 0052558 |
| 23 | 8/13/2008 | Email from Brad Schneider to Phil U. Walper. | IGWT 0052913 – IGWT 0052915 |
| 24 | 8/25/2008 | Email from Barbara Leitner to Phil Walper. | IGWT 0013509 – IGWT 0013510 |
| 25 | 8/29/2008 | Email from Brad Schneider to Jeremy Winburn. | IGWT 0013624 |
| 26 | 9/03/2008 | Email from Barbara Leitner to Margo Lackore, et al. | IGWT 0016326 – IGWT 0016328 |
| 27 | 9/04/2008 | Email from Brad Schneider to Jason Arbeiter, et al. | IGWT 0052440 – IGWT 0052441 |
| 28 | 9/09/2009 | Email from Barbara Leitner to Jason Arbeiter, et al. | IGWT 0016349 – IGWT 0016350 |

EXHIBIT 36
PAGE 284

| Number | Date | Type of Communication | Bates Reference |
|---|---|---|---|
| 29 | 10/07/2008 - 10/09/2008 | Email from Barbara Leitner to Jimmy Tawil, et al.;  Email from Brad Schneider to Jimmy Tawil, et al.; Email from Brad Schneider to Jimmy Tawil; Email from Brad Schneider to Jimmy Tawil. | IGWT 0018942 - IGWT 0018943 |
| 30 | 10/08/2008 - 10/09/2009 | Email from Odelynne Mendoza to Candy Barney, et al.; Email from Odelynne Mendoza to Candy Barney, et al. | IGWT 0016149 - IGWT 0016152 |
| 31 | 10/06/2008 - 10/14/2008 | Email from Mark Teitelman  to Jason Arbeiter and Annie, et al.; Email from Mark Teitelman to Jason Arbeiter, et al.;  Email from Brad Schneider  to Ruby@jrctoys.com, et al.; Email from Mark Teitelman to Ruby@jrctoys.com, et al.; Email from Odelynne Mendoza to Ruby@jrctoys.com, et al.; Email from Brad Schneider to Ruby@jrctoys.com, et al. | IGWT 0016386 - IGWT 0016388 |
| 32 | 10/17/2008 | Email from Brad Schneider to Isaac Larian, et al. | IGWT 0052547 - IGWT 0052548 |
| 33 | 10/22/2008 - 10/23/2008 | Email from Mark Teitelman to Jason Arbeiter; Email from Mark Teitelman to Jason Arbeiter, Annie, Melissa, et al.; Email from Mark Teitelman to Jason Arbeiter, et al.; Email from Mark Teitelman to Jason Arbeiter, et al.; Email from Mark Teitelman to Jason Arbeiter, et al. | IGWT 0016428 - IGWT 0016431 |
| 34 | 10/23/2008 | Email from Mark Teitelman to Jason Arbeiter, et al. | IGWT 0016436 - IGWT 0016437 |
| 35 | 11/10/2008 - 11/13/2008 | Email from Robert Nora to Jimmy Tawil, et al.; Email from Robert Nora to Jimmy Tawil, et al.; Email from Robert Nora to Jimmy Tawil; Email from Brad Schneider to Jimmy Tawil, et al.; Email from Brad Schneider to Jimmy Tawil; Email from Brad Schneider to Jimmy Tawil, et al.; Email from John Baker to Jimmy Tawil, et al.; Email from Barbara Leitner to Jimmy Tawil, et al.; Email from Brad Schneider to Jimmy Tawil, et al. | IGWT 0078410 - IGWT 0078416 |
| 36 | 9/23/2008 - 11/17/2008 | Email from Brad Schneider to Mary Jane Lunetta, et al.; Email from Brad Schneider to Mary Jane Lunetta, et al. | IGWT 0016109 - IGWT 0016110 |
| 37 | 11/06/2008, 12/03/2008 | Email from Mark Teitelman to Jason Arbeiter, et al.; Email from Mark Teitelman to Jason Arbeiter, et al. | IGWT 0016478 - IGWT 0016480 |

EXHIBIT __36__
PAGE __285__

| Number | Date | Type of Communication | Bates Reference |
|---|---|---|---|
| 38 | 12/04/2008 | Email from Mark Teitelman to Jason Arbeiter, et al. | IGWT 0016481 - IGWT 0016483 |
| 39 | 12/01/2008 - 12/05/2008 | Email from Odelynne Mendoza to Sheryl Kotzer, et al.; Email from Armineh Hacopian to Sheryl Kotzer, et al.; Email from Armineh Hacopian to Sheryl Kotzer, et al.; Email from Barbara Leitner to Mike Kotzer, Howie Kotzer, et al. | IGWT 0013766 - IGWT 0013768 |
| 40 | 10/06/2008, 12/31/2008 1/05/2009 | Email from Mark Teitelman to Vanlora Allen et al.; Email from Mark Teitelman to Vanlora Allen, et al.; Forwarded email from Barbara Leitner to Vanlora Allen. | IGWT 0016323 - IGWT 0016325 |
| 41 | 1/07/2009 - 1/08/2009 | Email from Mark Teitelman to Frank Rainville, et al.; Email from Mark Teitelman to Frank Rainville, et al. | IGWT 0016038 - IGWT 0016039 |
| 42 | 1/08/2009 - 1/12/2009 | Email from Mark Teitelman to Mary Kisling, et al.; Email from Mark Teitelman to Mary Kisling, et al; Email from Mark Teitelman to Mary Kisling, et al.; Email from Mark Teitelman to Mary Kisling; Email from Mark Teitelman to Mary Kisling. | IGWT 0016125 - IGWT 0016127 |
| 43 | 8/1/2008 | Email from Koren Kordes on behalf of Neil Kadisha to Tom Cambern. | OMNI0007311 - OMNI0007312 |
| 44 | 8/19/2008 | Facsimile from Neil Kadisha to Bank Leumi. | OMNI0010383 |
| 45 | 8/29/2008 | Email from Neil Kadisha to Moshe Kupietzky. | IGWT 0003314 - IGWT 0003315 |
| 46 | 9/3/2008 | Facsimile from Neil Kadisha to US Bank. | IGWT 0003769 |
| 47 | 9/3/2008 | Email from Neil Kadisha to Joseph Moinian, et al. | OMNI0004492 - OMNI0004493 |
| 48 | 7/29/2008 | Letter emailed from Michael Daniel to Tom Cambern. | WACHOVIA 0005575 - WACHOVIA 0005579 |
| 49 | 7/29/2008 | Email from Michael Daniel to Barry Dastin, et al.; Email from Michael Daniel to Barry Dastin, et al.; Email from Michael Daniel to Tom Cambern, et al. | OMNI 0007327 - OMNI 0007328 |

EXHIBIT 36
PAGE 286

| Number | Date | Type of Communication | Bates Reference |
|---|---|---|---|
| 50 | 7/29/2008 | Email from Peter Carson to John Fouhey, et al.; Email from Peter Carson to John Fouhey, et al.; Email from Michael Daniel to Tom Cambern, et al. | OMNI 0007316 - OMNI 0007317 |
| 51 | 8/7/2008 | Email from Mark Spitzer to Hugh McCullough, Tom Cambern, et al. | OMNI 0007276 |
| 52 | 8/18/2008 | Email from Steve Miller to Hugh McCullough; Email from Steve Miller to Hugh McCullough. | OMNI 0007141 |
| 53 | 8/26/2008 | Email from Peter Carson to Hugh McCullough; Email from Peter Carson to Hugh McCullough; Email from Peter Carson to Hugh McCullough, et al. | OMNI 0007057 - OMNI 0007059 |
| 54 | 8/21/2008, 8/26/2008 | Email from Peter Carson to David Witek, Hugh McCullough, et al.; Email from Steve Miller to Moshe Kupietzky, et al. | OMNI 0006870 - OMNI 0006873 |
| 55 | 8/27/2008 | Email from Peter Carson to Moshe Kupietzky, et al. | OMNI 0006783 - OMNI 0006784 |
| 56 | 8/28/2008 | Email from Peter Carson to David Witek, et al. | OMNI 0005710 - OMNI 0005712 |
| 57 | 8/28/2008 | Email from Peter Carson to Moshe Kupietzky, et al.; Email from Peter Carson to David Witek, et al. | OMNI 0005674 - OMNI 0005677 |
| 58 | 8/28/2008 | Email from Kevin Tanna to Moshe Kupietzky, et al.; Email from Peter Carson to David Witek, et al. | IGWT 0003323 - IGWT 0003325 |
| 59 | 8/29/2008 | Email from Aaron Borden to Hugh McCullough, et al. | OMNI 0005489 |
| 60 | 8/29/2008 | Email from Peter Carson to Moshe Kupietzky, et al. | IGWT 0003316 - IGWT 0003317 |
| 61 | 9/2/2008 | Email from Peter Carson to Hugh McCullough, Moshe Kupietzky, et al. | OMNI 0005194 - OMNI 0005195 |
| 62 | 9/2/2008 | Email from Peter Carson to David Witek, Hugh McCullough, et al.; Email from Peter Carson to Hugh McCullough, Moshe Kupietzky, et al.; Email from Peter Carson to Moshe Kupietzky, Hugh McCullough, et al. | OMNI 0005170 - OMNI 0005174 |
| 63 | 9/2/2008 | Email from Peter Carson to Moshe Kupietzky, John Fouhey, et al. | OMNI 0005158 - OMNI 0005160 |

EXHIBIT __36__
PAGE __287__

| Number | Date | Type of Communication | Bates Reference |
|---|---|---|---|
| 64 | 9/2/2008 | Email from Peter Carson to Hugh McCullough, et al. | OMNI 0005108 - OMNI 0005109 |
| 65 | 9/2/2008 | Email from Peter Carson to Moshe Kupietzky, Hugh McCullough, et al.; Email from Peter Carson to Moshe Kupietzky, Hugh McCullough, et al. | OMNI 0005070 - OMNI 0005073 |
| 66 | 9/3/2008 | Email from Peter Carson to Hugh McCullough, David Witek, et al. | OMNI 0004857 |
| 67 | 9/3/2008 | Email from Peter Carson to Hugh McCullough, et al.; Email from Peter Carson to Hugh McCullough, et al. | OMNI 0004505 - OMNI 0004506 |
| 68 | 9/3/2008 | Email from Peter Carson to David Witek, Hugh McCullough, et al.; Email from Peter Carson to David Witek, Hugh McCullough, et al.; Email from Peter Carson to Hugh McCullough, David Witek, et al. | OMNI 0004517 - OMNI 0004523 |
| 69 | 9/3/2008 | Email from Peter Carson to Hugh McCullough, Moshe Kupietzky, et al. | OMNI 0004501 |
| 70 | 9/3/2008 | Email from Kevin Tanna to Hugh McCullough, Moshe Kupietzky, et al.; Email from Peter Carson to Hugh McCullough, Moshe Kupietzky, et al. | OMNI 0004499 - OMNI 0004500 |
| 71 | 10/20/2008 - 10/23/2008 | Email from Peter Carson to Tiffanie Baker, et al.; Email from Peter Carson to Tiffanie Baker, et al.; Email from Peter Carson to Tiffanie Baker, et al.; Email from Peter Carson to Tiffanie Baker, et al,; Email from Peter Carson to Tiffanie Baker, et al.; Email from Peter Carson to Tiffanie Baker, et al. | IGWT 0000964 - IGWT 0000973 |

EXHIBIT   36
PAGE   288

# EXHIBIT 37

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 38

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 39

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 40

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 41

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 42

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 43

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 44

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 45

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 46



ORRICK

ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 MARSH ROAD
MENLO PARK, CA 94025
tel 650-614-7400
fax 650-614-7401
WWW.ORRICK.COM

August 24, 2009

Diana M. Rutowski
(650) 614-7685
drutowski@orrick.com

*VIA E-MAIL*

Michael T. Zeller
Jon D. Corey
Dylan B. Proctor
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 South Figueroa St., 10th Floor
Los Angeles, CA 90017

Re:     *Carter Bryant v. Mattel, Inc.*, and consolidated cases

Dear Messrs. Zeller, Corey and Proctor:

I write to inform you that MGA intends to seek the Discovery Master's recommendation that the Court grant an application for a Letter of Request for Judicial Assistance to the appropriate authority in Hong Kong, pursuant to Federal Rule of Civil Procedure 28. The assistance that MGA intends to request is an order compelling discovery from Danny K. H. Yu, his current and former firms, Kimie Burke, Bird & Bird, and Rianna Chugani relating generally to communications and documents concerning MGA, BRATZ, Carter Bryant, and any dispute between Cityworld Limited and MGA. Please let us know if Mattel will oppose MGA's request, and, if so, when within five court days of this letter you are available to meet and confer.

Very truly yours,

/s/ Diana M. Rutowski

Diana M. Rutowski

DMR/ek

EXHIBIT 40
PAGE 325

# EXHIBIT 47

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES -- GENERAL

Case No. CV 04-09049 SGL(RNBx)                    Date: July 9, 2009
Title:      MATTEL, INC. V. MGA ENTERTAINMENT, INC., et al.
=====================================================================
PRESENT:  HONORABLE STEPHEN G. LARSON, U.S. DISTRICT JUDGE

        Cindy Sasse                        None Present
        Courtroom Deputy                   Court Reporter

ATTORNEYS PRESENT FOR               ATTORNEYS PRESENT FOR
PLAINTIFFS:                         DEFENDANTS:

None Present                        None Present

PROCEEDINGS:    **ORDER GRANTING EX PARTE APPLICATION RE TEMPORARY
                RECEIVERSHIP (DOCKET #5728)**

                **ORDER GRANTING EX PARTE APPLICATION RE COST
                SHIFTING (DOCKET #5865)**

                **ORDER GRANTING IN PART EX PARTE APPLICATION FOR
                RELEASE OF JUROR TRANSCRIPTS (DOCKET #5805)**

                **ORDER GRANTING IN PART MATTEL'S MOTION RE
                DISCOVERY MASTER ORDER NO 27 AND REMANDING
                DISCOVERY MASTER ORDER NO. 27 FOR
                RECONSIDERATION BY THE DISCOVERY MASTER IN LIGHT
                OF THE FILING OF THE TAAC (DOCKET #5561)**

                **ORDER DENYING MOTION TO STRIKE THE FORENSIC
                AUDITOR'S REPORTS (DOCKET #5705)**

MINUTES FORM 90                              Initials of Deputy Clerk __cls_____
CIVIL -- GEN
                        1

EXHIBIT 47
PAGE 324

## I. ORDER GRANTING EX PARTE APPLICATION
## RE TEMPORARY RECEIVERSHIP (DOCKET #5728)

Because the only opposition to the Ex Parte Application regarding the winding up of the Temporary Receivership involves the issue of cost-shifting, which is addressed separately, below, the Court **GRANTS** the Ex Parte Application. A separate order addressing this Ex Parte Application has been concurrently filed.

## II. ORDER GRANTING EX PARTE APPLICATION RE
## COST SHIFTING (DOCKET #5865)

The MGA parties' opposition to the Temporary Receiver's Ex Parte Application argued that the costs of the Temporary Receivership should be shifted to Mattel (as the party who sought appointment of a Temporary Receiver). However, the Court has previously ruled that, at some yet-to-be defined date in the future, the Court will consider whether to shift the costs of both the Temporary Receivership and the Forensic Audit. Therefore, Mattel filed an Ex Parte Application seeking either to be relieved of the responsibility to respond to the MGA parties' argument or, alternatively, for an order setting a briefing schedule on the issue. It is not the intention of the Court to address the cost-shifting issue at this time; rather, as the Court has stated previously on the record, that issue is more efficiently resolved at a later date, most likely a date after completion of Phase 2 of the trial. Accordingly, the Court **GRANTS** Mattel's Ex Parte Application re Cost Shifting. Mattel is relieved of any duty to respond to MGA's argument regarding the appropriate allocation of costs arising from the Temporary Receiver that is set forth in the MGA parties's June 26, 2009 Opposition to the Temporary Receiver's Ex Parte Application.

## III. ORDER GRANTING IN PART EX PARTE APPLICATION FOR
## RELEASE OF JUROR TRANSCRIPTS (DOCKET #5805)

The Court has received and reviewed the MGA Parties' Ex Parte Application For Partial Release of *In Camera* Juror Interview Transcripts, as well as the Opposition, the Reply, and the accompanying exhibits. The Court **GRANTS IN PART** the Ex Parte Application. Although the Court declines to award the relief sought, the Court will take steps to ensure that the transcript of the juror interviews are provided to the Ninth Circuit for its consideration of the appeal filed by the MGA parties.

The relevant *in camera* juror interviews were conducted on July 25, 2008; the findings made by the Court on the basis of those interviews are set forth in detail in the Court's Order Denying Motion for Mistrial, dated August 8, 2008. Counsel for the parties agreed that the juror interviews, which were conducted mid-trial, should be conducted *in camera*, and the MGA parties did not request that the Court grant them access to the transcripts to prepare their Motion for Mistrial. The Court indicated on the

MINUTES FORM 90
CIVIL -- GEN

2

Initials of Deputy Clerk __cls_____



EXHIBIT 47

PAGE 327

record around the time of the filing of the Motion for Mistrial that it was not the Court's intent to grant the parties access to the transcripts.

After the conclusion of the trial, the MGA parties did not at any time request this Court grant access to the transcripts. To the contrary, some ten months passed between the date of the Order Denying Motion for Mistrial and the MGA parties' first post-trial request for access to those transcripts. That request was made to the Ninth Circuit, not this Court, on June 10, 2009. When the Ninth Circuit denied the request in favor of the MGA's presentation of the issue to this Court in the first instance, the MGA parties thereafter filed the present Ex Parte Application in a expeditious manner.

Ostensibly, as set forth in both the Motion filed before the Ninth Circuit and the Ex Parte Application before this Court, the reason the MGA parties seek access to those transcripts is so that they may use them to challenge the Court's Order Denying Motion for Mistrial. Although the MGA parties filed its Notice of Appeal on May 4, 2009, and although that Notice clearly indicated that the Order Denying Motion for Mistrial would be implicated in the appeal, the MGA parties failed to file its Motion seeking release of the transcripts until June 10, 2009. The MGA parties' failure to seek this relief until a month after they filed their Notice of Appeal and a month before their opening brief was due, and their decision to present the issue of release of the transcripts to the appellate court (rather than this Court) in the first instance, created the very urgency that cause them to seek ex parte relief from this Court. As such, the Court declines to grant the relief sought.

Nevertheless, in the interest of due process and in order to facilitate the full consideration of the issue by the Ninth Circuit, the Court will take steps to ensure that the transcripts of the *in camera* interviews are provided to the Ninth Circuit for *in camera* filing.

**IV. ORDER GRANTING IN PART MATTEL'S MOTION RE DISCOVERY MASTER ORDER NO 27 AND REMANDING DISCOVERY MASTER ORDER NO. 27 FOR RECONSIDERATION BY THE DISCOVERY MASTER IN LIGHT OF THE FILING OF THE TAAC (DOCKET #5561)**

In the challenged portion of Discovery Master Order No. 27 ("DM Order No. 27"), the Discovery Master denied Mattel's Motion to Compel discovery sought by service of a subpoena on non-party Bingham McCutchen LLP ("Bingham"), a law firm that represents Intervenor Omni 808, as well as a number of non-party entities that are familiar to those involved in this litigation: OmniNet Capital, LLC ("OmniNet"), Vision Capital, LLC ("Vision"), IGWT Group, LLC ("IGWT"), and IGWT 826 Investments, LLC ("IGWT 826"). Broadly categorized, the subpoena sought production of (1) fee agreements relating to Vision and Omni 808; (2) documents regarding the formation, control, and financing of Omni 808, Vision, and Lexington Financial Limited

("Lexington"); (3) documents identifying stakeholders and officers of Omni 808, Vision,
and Lexington; (4) all contracts relating to Omni 808, Vision Capital, and Lexington; (5)
all communications relating to Omni 808, Vision Capital, and Lexington, excluding
attorney-client privileged documents; and (6) Bingham's representation of MGAE and
certain named individuals who have some connection with MGAE, including a number
of Mr. Larian's family members.

The Discovery Master correctly recognized the essential legal standard in
assessing whether a subpoena may be enforced. The information must satisfy the
discovery relevance standard, i.e., it must be "'reasonably calculated to lead to the
discovery of admissible evidence.'" DM Order No. 27 at 19 (quoting Fed. R. Civ. P.
26(b)(1)). The decision of whether to enforce a subpoena ultimately implicates a
balancing test that pits relevance of the materials sought and need to the requesting
party against hardship to the party resisting the subpoena. DM Order No. 27 at 20.
Non-parties are generally required to bear lesser burdens than parties in responding to
subpoenas. Exxon Shipping Co. v. United States Dept. of Interior, 34 F.3d 774, 779
(9th Cir. 1994) ("The Federal Rules also afford nonparties special protection against the
time and expense of complying with subpoenas.").

However, the Discovery Master overstated the burden of proof allocated to
Mattel, as the party seeking discovery. See DM Order No. 27 at 20 ("As the party
moving to compel compliance with the subpoena, Mattel bears the initial burden of
establishing that the information sought is relevant and necessary to the claims or
defenses at issue.") This standard is both overstated and incomplete. It is overstated in
that Mattel need not show that the evidence sought is "necessary to the claims or
defenses." Although Mattel indeed bears the burden of establishing relevancy, that
showing is not one of "necessity." Rather, Mattel must bear the burden of establishing
the discovery relevancy standard -- that the materials sought are "reasonably calculated
to lead to the discovery of admissible evidence" -- is met. It need not establish that the
materials sought are "necessary" to its case.

This point leads to the manner in which the stated burden is incomplete. As
clearly articulated by cases cited by Bingham, although Mattel bears an initial burden of
establishing relevancy, the party resisting discovery thereafter has the burden of
establishing that discovery should be denied. See Bryant v. Ochoa, 2009 WL 1390794
at *1 (S.D. Cal. 2009) ("The party seeking to compel discovery has the burden of
establishing that its request satisfies the relevancy requirements of Rule 26(b)(1). . . .
Thereafter, the party opposing discovery has the burden of showing that the discovery
should be prohibited, and the burden of clarifying, explaining or supporting its
objections."); DIRECTV, Inc. v. Trone, 209 F.R.D. 455, 458 (C.D. Cal. 2002) (same);
see also Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir. 1975) (reversing the
district court's issuance of a protective order based on a failure of the party resisting
discovery to meet its burden by asserting that the defendant's deposition would merely
yield cumulative evidence).

MINUTES FORM 90                                         Initials of Deputy Clerk __cls_____
CIVIL -- GEN                          4

EXHIBIT 47
PAGE 329

The effect of this subtle variation on the burden of proof from that stated by the Discovery Master is magnified by the recent filing of the TAAC, which significantly heightens the relevancy of the issue of how the MGA parties and the parties represented by Bingham may be related, the formation of certain of those entities, and other issues implicated by Mattel's requests. Because the question of relevance is featured so prominently in the quintessential balancing test to which the present discovery motion was subjected, the filing of the TAAC dramatically altered the calculus that underlies the conclusions reached in DM No. 27.

For reasons related to judicial economy and preservation of scarce judicial resources (which this case has stretched to the outer limits), the Court defers decision, in light of the changed calculus that has occurred as the result of the filing of the TAAC, of the issues presented in the challenged portions of DM No. 27 to the Discovery Master. For that reason, the Court **REMANDS** the challenged portions of DM No. 27 to the Discovery Master for his reconsideration and re-balancing in light of the recently filed TAAC. The Discovery Master may, in his discretion, set the matter for further briefing and/or hearing, he may take the matter under submission based on the existing record, or he may take other action as he deems appropriate to resolve the present issues.

Notwithstanding the remand of DM Order No. 27, one issue raised by Mattel requires further consideration by the Court. At page 25 of DM Order No. 27, the Discovery Master appears to impose a blanket prohibition on discovery of materials that are in the possession of a subpoena recipient, but that are related to a non-party over whom the Court has not been shown to have jurisdiction. The Discovery Master cites no legal authority for such a blanket prohibition, and the Court, in its own research, has found none. Such a blanket prohibition precludes the application of the balancing test that applies almost universally to discovery motions; accordingly, and because this blanket prohibition is unprecedented, the Court finds that it is contrary to law. As to this narrow issue, the Court **GRANTS** Mattel's Motion. The issue of discovery of materials relating to Lexington is **REMANDED** to the Discovery Master for reconsideration in light of this ruling and in light of the filing of the TAAC.

## V. ORDER DENYING MOTION TO STRIKE
## THE FORENSIC AUDITOR'S REPORTS (DOCKET #5705)

In an unsealed filing that has since been ordered sealed by the Court, counsel for Omni 808 Investors, LLC ("Omni 808"), Todd E. Gordinier, made unwarranted, unsubstantiated personal attacks against the Court-Appointed Forensic Auditor, Ronald L. Durkin. Mr. Gordinier's selective public disclosure of portions of the Forensic Auditor's Summary Report, coupled with the maintenance of the Summary Report, as well as the later-filed Responsive Report and Final Report, under seal in their entirety, has led to an unbalanced public presentation of the issues discussed therein. In an

MINUTES FORM 90
CIVIL -- GEN

5

Initials of Deputy Clerk __cls_____

EXHIBIT $\underline{47}$

PAGE $\underline{330}$

attempt to cure this deficiency, the Court has considered the possibility that it should simply unseal the relevant Reports and allow those Reports to speak for themselves.

Because the MGA entities were the primary subject of the Forensic Audit, the MGA parties have, quite understandably, objected to the proposed unsealing. Mattel, for its part, advocates quite emphatically, and not unreasonably, that the Reports should be unsealed in light of the selective disclosure. See Tr. at 31-32 ("It's the underlying analysis that refutes the selective disclosures that MGA and Omni made in a public forum to smear . . . both Mr. Durkin and Mattel.") At the other end of the spectrum, Omni 808 has moved to strike the Reports in their entirety.

In the end, although the Court does not order the unsealing of the Reports, it **DENIES** the Motion to Strike. The Court ordered the Forensic Audit to evaluate whether a receiver should be appointed; as the record bears witness, the Court eventually rejected the suggestion that it should appoint a permanent receiver, and the Court has instead appointed an MGA Monitor with more limited powers than a receiver. Nevertheless, the fact that the Reports were intended to serve a very limited purpose does not mean that there is no possibility that the Forensic Auditor's Reports will not serve any purpose henceforth.

As it currently stands, the Court **ORDERS** that no party shall cite to or rely upon the Reports for any purpose absent further Order of this Court.[1] However, the documents attached to the Reports, to the extent they are otherwise discoverable, are not insulated from discovery on the basis that they have been made part of the Reports. Conversely, documents, such as charts and interview notes, that were prepared by the Forensic Auditor are the property of the Court and are not subject to discovery or use in this or any other litigation by any party or non-party.[2]

Had it been counsel for the MGA parties who mounted the unwarranted, unsubstantiated, and public personal attacks on Mr. Durkin, the Court would find, notwithstanding the sensitive information contained therein, the unsealing of the Reports was an appropriate remedy for the selective disclosure.[3] However, here, it is

---

[1] This Order does not supersede the Court's Order permitting the Forensic Auditor to share information with the Court-Appointed Monitor.

[2] Toward that end, the Court **CLARIFIES** to the parties that the work papers, drafts, notes, detailed time records, and any other materials prepared by or at the direction of the Forensic Auditor are the property of the Court. The Court **ORDERS** the Forensic Auditor, as the custodian of those records on behalf of the Court, to retain those materials, whether maintained in electronic, hard copy, or any other medium, until further order of the Court.

[3] As it stands, counsel for MGAE, James I. Stang, wisely sought, and was granted, leave to file his more restrained, but just as unwarranted and unsubstantiated, personal attacks on Mr. Durkin under seal. See MGA Entertainment, Inc.'s Response to Final In Camera Report of Forensic Auditor Ronald L.

6

Initials of Deputy Clerk __cls_____

EXHIBIT 47
PAGE 231

counsel for Omni 808 who made those attacks public, and although Mattel maintains that both the MGA parties and Omni 808 are jointly responsible for the selective disclosure, see July 6, 2009, Tr. at 33, whether, or to what extent, the MGA parties act or have acted in concert is an issue to be decided in Phase 2 of this action.

Nevertheless, Mr. Gordinier's attack on Mr. Durkin cannot pass without comment by the Court. The Court's comments are directed toward Mr. Gordinier personally, which is not the Court's usual practice. Although the irony of this form of address is not lost on the Court (given the subject of this Order), it is appropriate. Mr. Gordinier signed all three filings in which the personal attacks appear, and continues to stand behind those filings. Moreover, Mr. Gordinier expressly and unabashedly claimed personal responsibility for the brief that was not filed under seal, by both stating that he gave it a lot of thought before filing it and by implicitly acknowledging that although he considered filing his brief under seal, he ultimately rejected that course of action. See May 18, 2009 Tr. at 46-47 ("My brief speaks for itself. We have nothing to hide. . . . I didn't feel it appropriate, necessary, or desirable to file my brief under seal. And I don't have a problem with the Court or anybody reading what I have to say, because I gave it a lot of thought, and I gave it at lot of consideration.").

At the July 6, 2009, hearing, the Court outlined its concerns that while the attacks on Mr. Durkin were public, the Reports are not, and that "it doesn't seem fair" to the Court to allow those allegations to stand alone without a chance to respond to them. July 6, 2009, Tr. at 25-26. In response, Mr. Gordinier contended that his comments "respond[ed] to the report," and that "[w]hat we said was that there were problems with that report." July 6, 2009, Tr. at 28. This statement is an implicit denial that any personal attacks were made; however, as set forth in great detail below, the record belies Mr. Gordinier's *post hoc* protestations.

Lest Mr. Gordinier's statement reflecting his implicit denial that he engaged in personal attacks be perceived as one being made at oral argument without ample time to reflect upon its significance, the statement is also made by Mr. Gordinier in Omni 808's Reply Memorandum, a document upon which he had ample time to reflect: "Each and all of the references in Omni's Statement of Position refer to the contents of Mr. Durkin's Reports and the shortcomings contained therein and omitted therefrom, not to his person." Id. at 2 n.1. To be sure, the criticisms leveled at Mr. Durkin are framed in

Durkin (docket #5918) at 4 (accusing Mr. Durkin of "making McCarthy-like statements of non-existent buybacks and unsupported insinuations of conflicts of interest"); id. at 9 (suggesting that Mr. Durkin's formulation of certain search terms relating to criminal acts in Farsi without a concurrent formulation of those terms in English demonstrated a "predisposition that Persian members of MGA's management and staff (and only the Persian members) might be engaged in illegal conduct"). Mr. Stang's attacks pale in comparison to those advanced by Mr. Gordinier, and they were filed under seal. Thus, although the Court's analysis and conclusions regarding the Forensic Auditor's Reports applies with equal force to Mr. Stang's statements, his are not the focus of the Court's attention at this time.

Initials of Deputy Clerk __cls_____

EXHIBIT 47
PAGE 332

terms of his Reports. Still other criticisms are, as counsel maintains, addressed to the Reports themselves; those must be analyzed based on their substance. However, as aptly demonstrated by the cited and quoted portions of Mr. Gordinier's filings that appear below, his criticisms do not, by any measure, confine themselves to those Reports, and instead reach out in a highly personal manner to attack the author, his professionalism, his competence, his objectivity, and his integrity.[4]

Indeed, in a display the likes of which have not been previously witnessed by this Court, Mr. Gordinier strayed far afield of legitimate criticism of the discussions, analyses, and conclusions reached in the Summary Report and the Reports that followed. To be sure, there are instances in which Mr. Gordinier addressed the message found in those Reports; just as surely, however, as detailed below, Mr. Gordinier attacked the messenger. Specifically, the papers filed by Mr. Gordinier on behalf of Omni 808 call into question Mr. Durkin's professionalism and competence, as well as his objectivity and integrity. Moreover, and alarmingly, they falsely accuse Mr. Durkin of being influenced by an ethnocentric bias against Mr. Larian and Mr. Kadisha. Such attacks, aimed at Mr. Durkin personally rather than the discussion, analyses, and conclusions set forth in his Reports, appear throughout Omni 808's papers. See Omni 808 Investors, LLC's Statement of Position re Order to Show Cause re Appointment of a Permanent Receiver (docket #5446) ("SOP"), filed May 14, 2009, at 11 (referring to Mr. Durkin's "irresponsible" analysis); id. (noting that Mr. Durkin is "far too experienced" to believe that he "produced . . . a balanced presentation"); id. (stating that "Mr. Durkin's report is a polemic" and "a piece of advocacy"); id. at 12 n.9 (calling into question Mr. Durkin's "objectivity" based on the fact that the Court ordered Mr. Durkin's fees be paid (at least in the first instance) by Mattel); id. (suggesting that Mr. Durkin's ex parte communications with Mattel were improper); id. at 13 n.10 (characterizing Mr. Durkin's quotation of Mr. Larian's and Mr. Kadisha's account of how the two men were acquainted, from "the Persian community," as "at best, unprofessional" and, "at worst,

---

[4] Adding still further to the mounting irony, in the same footnote that Mr. Gordinier disclaims engaging in improper personal attacks, he falsely accuses counsel for Mattel of advancing their own improper *ad hominen* attacks against Neil Kadisha, who has been referred to as a "common thief" in certain unspecified Mattel filings. Mr. Kadisha is the Managing Partner of a diversified investment firm, Omninet Capital, LLC, and an investor in Omni 808. To call someone a "common thief" is, undoubtably, by any measure, a highly personal attack, therefore an attack addressed "to the man," or *ad hominen*. However, in the same manner Mr. Gordinier accuses Mr. Durkin of failing to provide appropriate context to the Court in his Reports, Mr. Gordinier himself fails to acknowledge that counsel for Mattel's use of the term "common thief" in connection with Mr. Kadisha merely quotes Los Angeles County Superior Court Judge Henry W. Shatford's conclusion regarding Mr. Kadisha, as set forth in his 191-page Statement of Decision, dated October 24, 2006, which was issued after a 200-day trial, which is currently pending appeal, and which conferred upon Mr. Kadisha the oft-repeated moniker of "common thief," as well as "embezzler," and "perjurer." See Uzyel v. Kadisha, Cal. App. Nos. B196045, B203804, B198007, B199850, B201425, 2009 WL 646096 (Mar. 4, 2009) (appellate brief). As always, context is key. The use by counsel for Mattel of another court's findings and conclusions to advance an argument is not inappropriate. Those findings and conclusions may, or may not, be relevant to matters presented to the Court. Used in this manner, although undoubtably addressed "to the man" (and his credibility), it is not an improper *ad hominen* attack.

8

Initials of Deputy Clerk __cls_____

EXHIBIT 47

PAGE 333

evidence of improper cultural bias"); id. (in the same footnote, referring to the same quotation, stating that "[t]he tone [of the report] itself is compelling proof that Mr. Durkin had no intention of providing an 'objective' report to the Court."); id. at 23 (referring to the Summary Report as "Mr. Durkin's ill-concealed advocacy piece"); id. (noting that advocacy, rather than objectivity, "is certainly the posture [Mr. Durkin] is most comfortable with"); Omni 808 Investors, LLC's Memorandum in Support of Its Requests to Strike Summary and Responsive Reports of Ronald L. Durkin (docket #5705) ("Motion to Strike"), filed June 8, 2009, at 4 (noting Omni's "doubts that the Court or any party would benefit further by continuing this façade of Mr. Durkin's 'impartiality'"); id. at 7 (calling Mr. Durkin's explanation of his conclusion regarding the relatedness of certain parties as "not only fatuous[,] but [also] intellectually dishonest"); id. at 9 (suggesting that Mr. Durkin intentionally concealed from the Court the fact that Mr. Larian sought other funding sources before turning to Mr. Kadisha); id. at 10 (noting that "Mr. Durkin's repeated references to Mr. Larian's and Mr. Kadisha's common 'Persian' heritage can only be viewed as an attempt to draw some nefarious ethnic connection between them"); id. at 12 (calling the reference to Mr. Larian's and Mr. Kadisha's ethnicity "unprofessional symptoms of improper cultural bias [that] have no place in a supposedly objective report"); Omni 808 Investors, LLC's Reply Memorandum (docket #5809) ("Reply Memo") at 14 (suggesting that not only Mr. Durkin, but also counsel for Mattel, harbor "cultural biases" that lead them to "suggest[] that [Mr. Larian's and Mr. Kadisha's] common heritage makes [them] more likely to act contrary to their own interests); id. at 15 (stating that, according to his own interview notes, Mr. Durkin "misrepresented" to the Court in his Summary Report how Mr. Larian and Mr. Kadisha portrayed their relationship with each other).

As alluded to, Omni 808's criticisms have not been limited to personal attacks; some of the criticisms are in fact aimed at the Reports themselves. See e.g., SOP at 16 ("Mr. Durkin's conclusion that the Wachovia-Omni transaction impacted 'MGAEI's solvency and ability to continue conducting operations' is simply wrong."). Any comment by the Court regarding the substance of the discussions, analyses, and conclusions presented to the Court in the Forensic Auditor's Summary, Responsive, and Final Reports is inadvisable at this time. With the filing of the Third Amended Answer and Counterclaims, much of the subject matter of the Forensic Auditor's Reports have been incorporated into the claims at issue in this action. As such, it would be premature for the Court to comment upon the substance of issues that are yet to be adjudicated, and that are subject to a trial by jury. Nevertheless, the Court has reviewed the Forensic Auditor's Summary, Responsive, and Final Reports, and the exhibits attached thereto. The Court has also reviewed and considered the criticisms aimed at the Forensic Auditor, cited and quoted above, as well as the entirety of all the papers responding to the Forensic Auditor's Reports filed to date. After this review, the Court is firmly convinced that all the personal criticisms of Mr. Durkin are unwarranted and unsubstantiated.

At best, the criticism of Mr. Durkin's performance and presentation represents a



EXHIBIT 47
PAGE 334

different interpretation of available evidence. That such disagreements would arise
between the analyses offered by a Court-Appointed Forensic Auditor and that offered by
counsel for a party whose transactions have been a subject of that audit is by no means
surprising. A jury considering the relevant evidence might ultimately make factual
determinations that tend to agree with Mr. Durkin's assessment, it might ultimately tend
to agree with Mr. Gordinier's assessment, or it may very well reject both positions in
favor of another. The answer to the merits of the claims at issue in this action must
await another day. Today, the Court merely notes that its examination of the Forensic
Auditor's Reports reveal that Mr. Gordinier's personal attacks aimed at their author were
unjustified.

Some specific attacks directed toward Mr. Durkin – relating to his background as
a law enforcement officer, his communications with counsel for Mattel, and specific (but
baseless) allegations of ethnocentric bias -- are worthy of more specific comment by the
Court.

Stopping short of explicitly stating such, Mr. Gordinier appears to labor under the
assumption that Mr. Durkin has been unable to put behind him the prosecutorial
mindset under which he presumably operated during his former service to this Nation as
an agent of the Federal Bureau of Investigation ("FBI"). At the outset, the Court notes
that Mr. Gordinier's unstated assumptions do a disservice to the prosecutors and the
law enforcement officers who work with those prosecutors, both of whom conduct their
work under the clearly delineated duty to ferret out not only evidence of guilt but also
"evidence favorable to the accused." See e.g., Berger v. United States, 295 U.S. 78, 88
(1935) (noting that the role of the prosecutor is not to win at all costs and observing that
the prosecutor "is the representative not of an ordinary party to a controversy, but of a
sovereignty whose obligation to govern impartially is as compelling as its obligation to
govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall
win a case, but that justice shall be done."); Brady v. Maryland, 373 U.S. 83, 87 (1963)
(imposing a duty on prosecutors to provide to the defense exculpatory evidence when
requested to do so).

Secondly, even if prosecutorial duties were not so defined, the Court finds no
suggestion that Mr. Durkin skewed the evidence in favor of any particular viewpoint.
Undoubtedly, there is a **complete absence** of any evidence that, as Mr. Gordinier has
suggested, Mr. Durkin has embarked upon a campaign to purposely mislead the Court.

Mr. Gordinier also suggests that, because Mr. Durkin's bills are being paid by
Mattel, Mattel has, through this payment or through other communications with Mr.
Durkin, bought Mr. Durkin's loyalty. This is utter nonsense. As demonstrated by the
Court's communications with him, Mr. Durkin is a Court-Appointed Officer who
understands that his role is to work on behalf of the Court and not on behalf of any
party. In any event, the Court's Order of January 7, 2009, which appointed Mr. Durkin,
imposed the costs of the audit on Mattel "in the first instance," but expressly provided for

Initials of Deputy Clerk __cls_____

10

EXHIBIT **47**
PAGE **335**

the possibility that the audit expenses be shared or shifted to the MGA parties.
Moreover, to suggest, however subtly, that ex parte communications with counsel for
Mattel were improper ignores the Court's mandate to the Forensic Auditor in the
January 7, 2009, Order, which states that Mr. Durkin was provided with attorney contact
information and that he "shall direct his initial communications to counsel." At no time
has the Court precluded the Forensic Auditor's communications with Mattel or its
counsel; in fact, because the Forensic Audit was undertaken based on evidence
gathered by and presented to the Court by Mattel, Mr. Durkin would have been remiss
in his duties if he failed to communicate with Mattel and its counsel.

        Mr. Durkin was vested with powers and discretion to complete a Court-ordered
Forensic Audit. Pursuant to an Order of this Court, he undertook this task and
exercised those powers and that discretion, presenting his Reports in conformity with
the Court's instructions. Despite counsel's attacks, the Court's review of the evidence
before it discerns no abuse of those powers or of that discretion.

        Particularly troubling to the Court is that counsel speculates that, because Mr.
Durkin noted in his report that Mr. Larian knew Mr. Kadisha from "the Persian
Community," Mr. Durkin could be "of the view that this common heritage makes Mr.
Kadisha more likely to act contrary to his own interests or to do something via third-
parties that he wouldn't otherwise do?" See SOP at 13-14 n.10 (appearing to pose this
thought as a rhetorical question). There is no indication in the record, or otherwise, that
Mr. Durkin holds such a view. To the contrary, Mr. Durkin's comment regarding the
acquaintanceship of Mr. Larian and Mr. Kadisha from "the Persian Community" (which
is noted in the report within quotation marks and is expressly attributed to a reference
made by Mr. Larian himself) is clearly predicated on interviews with these two
individuals, each of whom related independently to Mr. Durkin and his colleagues that
they knew each other from "the Persian Community." See Durkin Summary Report, Ex.
14, at 2 ¶ 3 (Notes re March 25, 2009, interview with Mr. Larian:  "He indicated that he
knew Kadisha from the Persian community.") and Ex. 14, at 15 ¶ 2 (Notes re March 26,
2009, interview with Mr. Kadisha:  "Kadisha stated that he knows Larian from the
Persian community."). The purpose for this reference is made clear in the footnote set
forth at the end of the sentence in which the reference appears; namely, the Report
discusses evidence that the relationship between Mr. Larian and Mr. Kadisha is
stronger and more personal than either man claimed it was. See Summary Report at 5
n.18; Ex. 15 (personal emails).

        In the Reply Memo, Mr. Gordinier takes issue with this explanation, this time
including not only Mr. Durkin but also counsel for Mattel as the targets for his
unsubstantiated allegations of "cultural bias." Mr. Gordinier first mischaracterizes an
argument made by Mattel. Mattel argued, and quite correctly, both that how well Mr.
Larian and Mr. Kadisha knew each other was relevant to a determination of whether
certain transactions between the two were arms-length transactions, and that this point
was likely not lost on either of these two very sophisticated and successful

MINUTES FORM 90                                                    Initials of Deputy Clerk __cls_____
CIVIL – GEN                              11

EXHIBIT 47
PAGE 334

businessmen.[5] As noted previously, both Mr. Larian and Mr. Kadisha stated that they knew each other from "the Persian community" which, in the Forensic Auditor's view, was intended to, or at least had the tendency to minimize the existing relationship between the two.  Mr. Gordinier incorrectly characterizes this argument as Mattel's contention that Mr. Larian's and Mr. Kadisha's "Persian relationship" and "common Persian heritage" was somehow relevant to a determination of whether the Omni 808 transaction was an arms-length transaction.  Mattel made no such argument.  Neither counsel for Mattel nor Mr. Durkin have implied that Mr. Larian's and Mr. Kadisha's ethnicity factors into the analysis.  Other than to point to Mr. Larian's and Mr. Kadisha's separate, but identical, accounts of how they knew each other which, in turn, suggests how well they know each other, neither counsel for Mattel nor Mr. Durkin have stated or implied that Mr. Larian's and Mr. Kadisha's shared ethnicity is relevant to any matter currently or potentially before the Court.  Compare Opposition at 8-9 with Reply Memo at 14-15.

Moreover, Mr. Gordinier's substantive point, that Mr. Durkin "misrepresented" to the Court what Mr. Larian and Mr. Kadisha told him about the closeness of their relationship, fares no better.  See Reply Memo at 15.  On this point, it is important to set this stage properly.  Counsel for all parties have attempted to glean far too much from two sterile paragraphs of interview notes taken by Mr. Durkin.  Much can be inferred from conversations and interviews through not only what is said, but what is not said, by the interviewee's demeanor, by the tone of the speaker, by the length and placement of pauses, and by non-verbal gestures and body language.  With all these variables, much of what is communicated does not find its way into notes.[6]  For instance, Mr. Durkin's interview of Mr. Larian lasted over two and a half hours; however, the interview notes are a mere five and a half pages.  Similarly, a one-hour and ten minute interview of Mr. Kadisha yielded only three and a half pages of interview notes.  This is not to suggest that the notes should have been longer or that the interviews should have been recorded or transcribed; rather, it is to suggest that counsel's arguments based on another's notes are not particularly probative.

In contrast, Mr. Durkin's assessment, based on his interviews with both of them,

---

[5] In fact, the Court just this week issued a 30-page, single-spaced opinion resolving a 10-day bench trial conducted over the sole issue of whether a transaction between "closely related" entities reflected its fair market value, one of the more significant arguments ultimately rejected by the Court in that case being that the close relationship between the parties necessarily rendered the transaction a "sweetheart deal."  See July 6, 2009, Order, Siegel v. Warner Bros. Entertainment, Inc., et al., CV 04-08400 SGL (RZ) (docket #554).

[6] Indeed, the interview notes upon which the parties rely concede as much.  See Summary Report, Ex. 14 at 2, 15 ("This interview memorandum is a factual representation of the topics discussed during the interview and is not intended to be a word for word or exact transcription of the conversation.").  Thus, in addition to not taking into account all non-verbal communication, the notes do not even represent everything that was said during the interview.

Initials of Deputy Clerk __cls_____

EXHIBIT **47**
PAGE **337**

is that Mr. Larian and Mr. Kadisha attempted to minimize their relationship because both of them understand the relevance of any friendship or other connection between them to the assessment of the arms-length nature of any transactions in which they have engaged. Mr. Durkin's assessment does not come from the gentle teasing of a strained meaning from two sterile paragraphs of brief notes taken by another person; rather, his assessment springs from his participation in the interview process, the entirety of the interviews he conducted of Mr. Larian and Mr. Kadisha, and his review of all of the evidence. As such, the Court defers to his assessment, at least insofar as how Mr. Larian and Mr. Kadisha portrayed their relationship to him.

As for that scant language from which the parties glean so much meaning, the entirety of which is set forth below, it in no way supports the contention made by Mr. Gordinier that Mr. Durkin "misrepresented" to the Court what Mr. Larian and Mr. Kadisha conveyed to him about the closeness of their relationship. On this topic, the notes of Mr. Larian's interview merely state the following:

> Larian decided to contact Neil Kadisha of OmniNet as he knew his company was in the distressed loan business. He indicated that he knew Kadisha from the Persian community. Kadisha said he wouldn't do the deal alone in today's environment and wanted Larian and their other friends to invest in the deal with MGA. Larian stated that Kadisha negotiated the debt with Wachovia and got it down significantly, Larian said he is not bitter about Kadisha getting a good deal on buying the loan.

Summary Report, Ex. 14, at 2 ¶ 3 (emphasis added). This paragraph contains the word "friends," and perhaps could even be read as an implicit statement by Mr. Larian that he and Mr. Kadisha are "friends." But the language does not compel such an inference. Moreover, it does not comport with the notes of Mr. Kadisha's interview, which on this topic state only the following:

> Larian and Kadisha have never been to dinner together. Kadisha stated that he knows Larian from the Persian community and he sees him often at religious events, etc. He has no investments with Larian. Kadisha did not talk with Larian last night, this morning or in the last two days.

Summary Report, Ex. 14, at 15, ¶ 2. Mr. Durkin's assessment that Mr. Larian and Mr. Kadisha sought to minimize the extent of their relationship is not contradicted by these short passages.

The criticism that Mr. Durkin was acting pursuant to an ethnic or cultural bias is clearly baseless. The allegations are irresponsible, and they are made to capitalize on

MINUTES FORM 90
CIVIL -- GEN                                    13                    Initials of Deputy Clerk __cls_____

EXHIBIT __47__
PAGE __338__

their inherent sensational nature for counsel's own purposes of diverting attention away
from the substance of the Reports. Sensationalism aside, when viewed in context, the
Reports' reference to Mr. Larian and Mr. Kadisha knowing each other from "the Persian
community" was plainly innocuous. The reference was a direct quotation from both Mr.
Larian and Mr. Kadisha. It was used in a broader discussion regarding how (and thus,
impliedly, how well) the two knew each other, which is itself relevant to the issue of
whether certain transactions relevant to the present litigation were made at arms length.

This is a most unfortunate incident. The Court certainly understands, in a case
as hotly contested as this one -- with such high stakes, with such complex legal issues,
and with such truly extraordinary legal talent on all sides -- that lawyers, however ethical
and committed to the highest standards of professionalism (as the Court presumes and
has found all counsel of record here to be), make statements or commit acts in haste
that they subsequently regret. All of the players to this drama, are, after all is said and
done, human. As such, all of us are vulnerable to all-too-common human frailties. The
Court would place itself at the very top of any list of lawyers who have spoken
improvidently at one time or another in this case (and any number of others). What the
Court has witnessed here, however, in both manner and substance, for the reasons
noted above, goes beyond what the Court can let pass without some manner of
reprobation. So let the Court be clear: Nothing excuses the attempted character
assassination in which Mr. Gordinier has engaged.

**IT IS SO ORDERED.**

EXHIBIT **47**
PAGE **339**

# EXHIBIT 48

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 49

# REDACTED


# SUBJECT TO


# PROTECTIVE ORDER

# EXHIBIT 50

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 51

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 52

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER