1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      John B. Quinn (Bar No. 090378)
2      (johnquinn@quinnemanuel.com)
      Michael T. Zeller (Bar No. 196417)
3      (michaelzeller@quinnemanuel.com)
      Jon D. Corey (Bar No. 185066)
4      (joncorey@quinnemanuel.com)
      865 South Figueroa Street, 10th Floor
5   Los Angeles, California 90017-2543
    Telephone:   (213) 443-3000
6   Facsimile:   (213) 443-3100

7   Attorneys for Mattel, Inc.

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10                         EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with |
| vs. | Case No. CV 04-09059<br>Case No. CV 05-02727 |
| MATTEL, INC., a Delaware corporation, | **DISCOVERY MATTER** |
| Defendant. | **[To Be Heard By Discovery Master Robert O'Brien]** |
| AND CONSOLIDATED ACTIONS | [PUBLIC REDACTED] REPLY IN SUPPORT OF MATTEL, INC.'S MOTION TO AMEND PROTECTIVE ORDER |
| | Hearing Date: TBA<br>Time: TBA<br>Place: Arent Fox LLP<br>555 West Fifth St.<br>48th Floor<br>Los Angeles, CA 90013 |
| | Phase 2<br>Discovery Cut-off:   Dec. 11, 2009<br>Pre-trial Conference: March 1, 2010<br>Trial Date:          March 23, 2010 |

00505.07975/3094069.1

1

# TABLE OF CONTENTS

2

**Page**

4
PRELIMINARY STATEMENT ................................................................................ 1

5
ARGUMENT........................................................................................................... 2

6
I.    THE OPPOSITION IGNORES MATTEL'S SHOWING OF GOOD
      CAUSE TO MODIFY THE PROTECTIVE ORDER.....................................2

7
8
II.   MATTEL HAS STANDING TO SEEK A MODIFICATION TO THE
      PROTECTIVE ORDER...................................................................................5

9
III.  MGA CITES THE WRONG STANDARD FOR MODIFICATION OF
      THE PROTECTIVE ORDER ..........................................................................6

10
      A.    Mattel Needs To Show Good Cause, and Nothing More.......................6

11
      B.    Mattel Meets Even MGA's Inapplicable Standard ................................8

12
CONCLUSION....................................................................................................... 9

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page**

### Cases

Bayer AG v. Barr Laboratories, Inc.,
162 F.R.D. 456 (S.D.N.Y. 1995) .................................................................... 8, 9

Beckman Indus., Inc. v. International Ins. Co.,
966 F.2d 470 (9th Cir. 1992) .......................................................................... 7

Center for National Security Studies v. U.S. Dep't of Justice,
331 F.3d 918 (D.C. Cir. 2003) ........................................................................ 3

Citizens for Responsibility of Ethics in Washington v. Nat'l Indian
Gaming Com'n,
467 F. Supp. 2d 40 (D.D.C. 2008) ................................................................. 3

Contratto v. Ethicon, Inc.,
227 F.R.D. 304 (N.D. Cal. 2005) ................................................................... 8

DaimlerChrysler Corp. v. Cuno,
547 U.S. 332 (2006) ........................................................................................ 5

Flast v. Cohen,
392 U.S. 83 (1968) .......................................................................................... 5

Foltz v. United Policyholders,
331 F.3d 1122 (9th Cir. 2003) ..................................................................... 7, 8

Fulfillment Services, Inc. v. United Parcel Service, Inc.,
528 F.3d 614 (9th Cir. 2008) .......................................................................... 5

Humphreys v. Regents of University of California,
2006 WL 2319593 (N.D. Cal. Aug. 10, 2006) ............................................... 8

Massey v. FBI,
3 F.3d 620 (2d Cir. 1993) ............................................................................ 3, 4

Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.,
307 F.3d 1206 (9th Cir. 2002) ..................................................................... 7, 8

Pintos v. Pacific Creditors Ass'n,
565 F.3d 1106 (9th Cir. 2009) ........................................................................ 7

Rich v. Hewlett-Packard Co.,
2009 WL 2168688 (N.D. Cal. Jul. 20, 2009) ................................................. 7

San Jose Mercury News, Inc. v. United States District Court,
187 F.3d 1096 (9th Cir. 2002) ..................................................................... 7, 8

Seattle Times Co. v. Rhinehart,
467 U.S. 20 (1984) .......................................................................................... 8

E-Smart Technologies, Inc. v. Drizin,
2008 WL 1930639 (N.D. Cal. 2008) ............................................................... 8

1

Zenith Radio Corp. v. Matsushita Elec. Indus. Co., Ltd.,
529 F. Supp. 866 (E.D. Pa. 1981)...........................................................................7

2

**Statutes**

3

5 U.S.C. § 552(b)(7) ...................................................................................................3

4

Fed. R. Civ. Pro. 26(c).............................................................................................7

5

Fed. R. Civ. Pro. 1 ...................................................................................................7

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PRELIMINARY STATEMENT**

MGA has already provided misleading information to the press about Mattel's communications with law enforcement. Through its opposition, it now seeks unbridled authority to do so, publicly detailing the steps Mattel takes to protect its trade secrets and engaging in further public smears of the law enforcement personnel that have investigated MGA and its employees. To the extent that it does not already allow for the protection of such information, the Protective Order should be modified to confirm that these types of communications are protected from such disclosures by MGA.

Mattel showed in its motion that the public disclosure of matters as sensitive as a victim's communications with law enforcement and law enforcements' investigative files would be contrary to law. MGA insists that Mattel, having obtained Mexican law enforcement files, is "free to share them with whomever Mattel chose" and that the "law in Mexico does not restrict Mattel's ability to share these files with whomever Mattel chooses." (Opp. at 1.)   MGA provides no authority for these assertions, and they are wrong. The laws of Mexico, like those of the United States and Canada, show that sensitive law enforcement files and communications are intended to remain non-public where they are disclosed at all.   The sensitive categories of documents at issue now *clearly* are entitled to protection from public dissemination. To the extent the Protective Order does not already protect them, it should be modified to do so.

MGA urges that Mattel "lacks standing" to seek to prevent further dissemination and that Mattel has not made the "particularized showing" as to each document at issue. These are red herrings and misapprehend both the substance of this motion and the legal standards applicable to protective order modifications. What Mattel seeks in this motion is to modify the Protective Order (something it obviously has "standing" to do) to enable designations of certain *categories* of documents under it. No "particularized showing" as to "each document" even theoretically could be made because only

1  *categories* of documents, not individual ones, are at issue here.  The motion should be
2  granted.

3                                    **Argument**

4  **I.    THE OPPOSITION IGNORES MATTEL'S SHOWING OF GOOD**
5         **CAUSE TO MODIFY THE PROTECTIVE ORDER**

6              Mattel has shown good cause to modify the protective order.

7              First, as Mattel explained in its motion, the categories of documents at
8  issue are prohibited from further disclosure under applicable law.  The unrebutted
9  Tiburcio declaration explains the restrictions imposed by Mexican law in detail,
10 including the fact that dissemination of criminal investigative matters is limited to
11 defendants, the victim, and their respective attorneys.[1]  Mexican law dictates that all
12 such documents "shall be kept strictly confidential," and provides that "[i]n no case
13 shall there be any reference to confidential information concerning the public details of
14 the suspect, victim or injured party, or of any witnesses, public employees, or any other
15 person associated with or mentioned in the investigation."[2]  Indeed, the Mexican
16 criminal procedure code states explicitly that information "which private individuals
17 have turned over to subjects compelled by the Law" will retain confidentiality, and
18 Article 19 states that when private individuals turn over such information, they "must
19 indicate which documents contain confidential, classified, or commercial classified
20 information . . . ."[3]

21             The laws of the United States contain similar prohibitions against
22 dissemination of investigative materials.  As Mattel showed in its motion, the Freedom
23 of Information Act protects certain categories of "records or information compiled for
24 law enforcement purposes" against *any* disclosure, let alone the widespread public

---

[1] See Declaration of Francisco J. Tiburcio ("Tiburcio Dec.") at ¶ 12 & Exhs. 8-9.
[2] See Tiburcio Dec. at Exh. 2, p. 138.
[3] Id. at Exh. 5, p. 165. "Where one of the parties involved in any judicial or administrative proceeding is required to reveal a trade secret, the authority hearing the proceeding shall take the necessary measures to prevent its disclosure to third parties having no connection with the dispute." Id. at Exh. 11, p. 436.

1  disclosure MGA seeks.[4]  FOIA's limitations preempt any common law right of access.
2  See Center for National Security Studies v. U.S. Dep't of Justice, 331 F.3d 918, 936-37
3  (D.C. Cir. 2003).  Similarly, and as Mattel explained in its motion, even the "names of
4  law enforcement personnel" – let alone details of their investigative practices – "are
5  generally exempt from disclosure . . . because disclosure 'could subject them to
6  embarrassment and harassment in the conduct of their official duties and personal
7  affairs.'"  Citizens for Responsibility of Ethics in Washington v. Nat'l Indian Gaming
8  Com'n, 467 F. Supp. 2d 40, 53 (D.D.C. 2008) (citing Massey v. FBI, 3 F.3d 620, 624
9  (2d Cir. 1993); see Motion at p. 7. And Canadian law is also similar – as Priscilla Platt
10  explains in the declaration filed herewith, law enforcement investigative materials are
11  protected from disclosure under Canadian law.[5]

12        MGA's opposition – and its desire to publicly disseminate law
13  enforcement investigative information – is flatly inconsistent with the policies inherent
14  in these laws.  As to Mexico, MGA facilely states it is "aware of no evidence . . . to
15  suggest that the government of Mexico somehow intended to limit the disclosure of its
16  files when it voluntarily released [them] to Mattel."[6]  But the country's express laws

17

18  [4]  See 5 USC § 552(b)(7); see also Mattel's Motion to Amend Protective Order at p. 4.
19  The statute protects against such disclosures where the records:

20    "(A) could reasonably be expected to interfere with enforcement proceedings,
      (B) would deprive a person of a right to a fair trial or an impartial adjudication,
21    (C) could reasonably be expected to constitute an unwarranted invasion of
      personal privacy, (D) could reasonably be expected to disclose the identity of a
22    confidential source, including a State, local, or foreign agency or authority or
      any private institution which furnished information on a confidential basis, and,
      in the case of a record or information compiled by criminal law enforcement
23    authority in the course of a criminal investigation or by an agency conducting a
      lawful national security intelligence investigation, information furnished by a
24    confidential source, (E) would disclose techniques and procedures for law
      enforcement investigations or prosecutions, or would disclose guidelines for law
25    enforcement investigations or prosecutions if such disclosure could reasonably
      be expected to risk circumvention of the law, or (F) could reasonably be
26    expected to endanger the life or physical safety of any individual."

27  [5]  Declaration of Priscilla Platt in Support of Mattel's Reply In Support of Its Motion to
28  Amend Protective Order, filed concurrently hereto ("Platt Dec.") at p. 2-4.
    [6]  MGA's Opposition ("Opp.") at p. 6.

00505.07975/3094069.1                                     -3-

limiting such disclosures, discussed at length in Mattel's motion and in the Tiburcio Declaration filed therewith, provide just such "evidence." MGA finds the FOIA authorities Mattel has cited "unconvincing" merely because they are FOIA authorities (Opp. at p. 8, n. 1), but cannot dispute the policy against widespread disclosure of law enforcement investigative materials they reflect. Contrary to MGA's claims, the law *does* "restrict Mattel's ability to share these files with whomever Mattel chooses" (Opp. at 1), and – even if it didn't – it certainly reflects a policy of confidentiality. That policy is consistent with the proposed Protective Order modifications. It is, on the other hand, wholly inconsistent with MGA's desire to publicly sling mud by disclosing law enforcement investigation information.

The proposed modification is also consistent with the Discovery Master's own prior rulings, which MGA itself procured. Previously, when Mattel sought to de-designate portions of the Declaration of Susan Kuemmerle, the Discovery Master ruled that " ███████████████████████████ " MGA employees ███████████████████████████████ ."[7] The Discovery Master found that " ██████████████████████████████████████████ ███████████████████████████████████████████ ███████████████████████████████████████████ ███████████████████████████████████████████ ███████████████████████████████████████████ ██ ."[8] This ruling was based on MGA's own prior contention that documents that " ████████████████████████████████ " were properly deemed "CONFIDENTIAL."[9] The modification Mattel seeks would merely codify in the Protective Order that these types of documents properly may be designated under it;

[7] See Discover Matter Order No. 33, Docket No. 5514.
[8] Id.
[9] See MGA Parties' Opposition to Mattel's 4/17/09 Motion to De-Designate at p. 5, attached as Exhibit 24 to the Declaration of Michael T. Zeller in Support of Mattel's Opposition to MGA's Motion Re 30(b)(6) Deposition, filed August 27, 2009, and lodged hereto.

1  given its own positions, MGA has no explanation for its new-found resistance to the
2  modification.

3        The Protective Order should be modified to reflect that law enforcement
4  investigative files and communications properly may be designated under it, to the
5  extent they cannot be so designated presently.[10]

6  **II.    MATTEL HAS STANDING TO SEEK A MODIFICATION TO THE**
7        **PROTECTIVE ORDER**

8        MGA urges that Mattel lacks standing to seek the relief it now seeks, but
9  provides no authority in support.[11]  Mattel seeks to modify the Protective Order.  Of
10 course, it has standing to seek that relief.  "Standing" is a limitation on federal courts'
11 Article III powers to hear "cases and controversies;" it is a limitation on claims, not
12 arguments. DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 342 (2006); Flast v. Cohen,
13 392 U.S. 83, 99 (1968) ("The fundamental aspect of standing is that it focuses on the
14 party seeking to get his complaint before a federal court and not on the issues he wishes
15 to have adjudicated."); Fulfillment Services, Inc. v. United Parcel Service, Inc., 528
16 F.3d 614, 618 (9th Cir. 2008) ("The question of Article III standing is 'related only to
17 whether the dispute sought to be adjudicated will be presented in an adversary context
18 and in a form historically viewed as capable of judicial resolution.'") (quoting Ass'n of
19 Data Processing Serv. Orgs. v. Camp., 39 U.S. 150, 151-52 (1970)). Where, as here, a
20 court has been prompted to take an action that may violate or impinge on the laws of
21 another country, the parties may – and should – bring that potential violation to light.
22 Principles of international comity counsel in favor of maintaining the confidentiality of

23 ──────────────
   [10] MGA suggests that Mattel's motion "need only be heard" if the Court denies MGA's
24 motion to de-designate an email ▒▒▒▒▒▒▒. See MGA's Opp. at p. 4. That is
   not correct. There are two categories of documents at issue. For each, Mattel has asked the
25 Discovery Master to either (1) hold that documents in the category are already covered by the
   Protective Order, or (2) modify the Protective Order such that the category of documents is
26 now expressly covered. A denial of MGA's motion to de-designate the ▒▒▒▒ email on the
   basis that one category of documents is already covered by the Stipulated Protective Order
27 might obviate the need to amend the Protective Order as to that category of documents, but it
   would not affect Mattel's motion as to the other group of documents.
28   [11] See Opp. at p. 5-6.

00505.07975/3094069.1

1   foreign investigative files and records.  There certainly is no doctrine of standing that
2   prevents Mattel from raising those principles.

3          Conflating the issues, MGA suggests that Mattel lacks standing because it
4   has turned over the documents at issue now to MGA's counsel in discovery.[12]  Mattel
5   provided these documents in compliance with its discovery obligations and *after*
6   designating them as Confidential -- Attorneys' Eyes Only – the very designation that
7   the parties now dispute.  That Mattel provided MGA's counsel with confidential
8   documents marked as such does nothing to dispute those documents' confidentiality.[13]

9   **III.   MGA CITES THE WRONG STANDARD FOR MODIFICATION OF THE**
10         **PROTECTIVE ORDER**

11        **A.   Mattel Needs To Show Good Cause, and Nothing More**

12          MGA argues that Mattel must make a particularized showing for each
13   document to be encompassed within the Protective Order.[14]  That is nonsensical.
14   Mattel is seeking to modify the Protective Order to clarify that additional *categories* of
15   documents are protectible.  Even assuming all parties (including MGA) have already
16   produced all documents falling under the categories (such that a "particularized
17   showing" as to each document theoretically could be made), there is no requirement
18   that Mattel identify each document in each category and show, for each one, why the
19   document is confidential.

20          Instead, where a party seeks a protective order (or to modify such an
21   order), "[t]he relevant standard . . . is whether 'good cause exists to protect th[e]
22   information from being disclosed to the public by balancing the needs for discovery
23   against the need for confidentiality.'" Pintos v. Pacific Creditors Ass'n, 565 F.3d 1106,

24
_____
   [12]   Opp. at 6 (Section II A: "Mattel Does Not Have Standing To Limit MGA's Access To
25   The Official Files Of The Government Of Mexico").
   [13]   MGA notes that Mattel has put "the judicial files of the Mexican files at issue in this
26   case" and that "[t]heir relevance cannot be denied."  MGA's Opposition at p. 7.  That the
   documents may be relevant does not imply that they should not be protected from public
27   disclosure. Indeed, were that the case, almost by definition any document (including MGA's)
   that has been compelled by the Court would be rendered ineligible for protection.
28   [14]   See MGA's Opposition at p. 9.

1  1115 (9th Cir. 2009) (quoting <u>Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.</u>, 307
2  F.3d 1206, 1213 (9th Cir. 2002); <u>see also</u> <u>Rich v. Hewlett-Packard Co.</u>, 2009 WL
3  2168688 at *1 (N.D. Cal. Jul. 20, 2009) ("[T]o preserve the secrecy of sealed discovery
4  material attached to non-dispositive motions, a 'good cause' showing will suffice.").
5  Indeed, one of the very purposes of a Protective Order is to implement a structure that
6  allows for certain *categories* of information to be designated so as to avoid burdening
7  the courts with a document-by-document review of voluminous discovery materials
8  before they are produced.  As one of the seminal cases analyzing the use of protective
9  orders in civil cases explained:  "Grouping huge amounts of cumbersome data into
10  manageable categories for the purpose of supporting a Rule 26(c) order is desirable
11  from the standpoint of case management and is consistent with the instruction of Rule 1
12  that the Rules of Civil Procedure shall be construed to secure the 'just, speedy, and
13  inexpensive determination of every action.'" <u>Zenith Radio Corp. v. Matsushita Elec.</u>
14  <u>Indus. Co., Ltd.</u>, 529 F. Supp. 866, 892 (E.D. Pa. 1981)  (quoting Fed. R. Civ. Pro.
15  26(c)).  The court further noted that it was "satisfied that by describing the harm which
16  would result from the disclosure of *categories of information* defendants have shown
17  good cause."  <u>Id.</u> (emphasis added).  Mattel has shown good cause to allow for
18  investigative and non-public judicial files to be designated under the Protective Order.
19          MGA's authorities are off point.  Those cases generally concern third
20  parties' attempts to intervene in order to de-designate specific materials, often on First
21  Amendment grounds, and not the propriety of categories that may be designated under
22  protective orders.  <u>See</u> <u>San Jose Mercury News, Inc. v. United States District Court</u>,
23  187 F.3d 1096, 1102 (9th Cir. 2002) (involving third-party intervenor's claimed First
24  Amendment rights to publicize judicial documents); <u>Beckman Indus., Inc. v.</u>
25  <u>International Ins. Co.</u>, 966 F.2d 470, 473-74 (9th Cir. 1992) (analyzing whether
26  intervenor could obtain confidential documents); <u>Foltz v. United Policyholders</u>, 331
27  F.3d 1122, 1136 (9th Cir. 2003) (same).  Such cases are clearly inapt, both given their
28

1    procedural postures and substantively.[15]  Other cases MGA cites either do not address

2    the applicable standards at all or are addressed to particular documents, not categories

3    of documents as here.[16]

4         Where a party seeks to publicize a document that a court has previously

5    sealed, of course that party must make a particularized showing in favor of amendment.

6    But where, as here, a categorical modification to a Protective Order is at issue, "good

7    cause" is the standard that controls.  That has been met here.  Mattel has produced a

8    large number of documents that are properly designated confidential.  There is no

9    reason why the Discovery Master cannot amend the Protective Order to cover those

10    documents as a category.

11        **B.**    **Mattel Meets Even MGA's Inapplicable Standard**

12        In any event, Mattel meets the standard proposed by MGA, which

13    considers "(1) the nature of the existing protective order (such as whether the protective

14    order was stipulated to and whether it is narrowly tailored); (2) the foreseeability of the

15    requested modification; and (3) the parties' reliance on the existing protective order."

16    (Opp. at p. 4) (citing Bayer AG v. Barr Laboratories, Inc., 162 F.R.D. 456, 467

17

18      [15]   For example, the San Jose Mercury News court did not rule substantively on de-

19   designation, 187 F.3d at 1102, and in any case the Supreme Court has held that the claimed right at issue in San Jose Mercury News does not apply to pretrial discovery. Seattle Times

20   Co. v. Rhinehart, 467 U.S. 20, 33 (1984) ("[R]estraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information.").

21   While Phillips v. General Motors Corp., 307 F.3d 1206, 1210 (9th Cir. 2002), at least

22   addressed whether a protective order should issue, the court in fact vacated the district court's decision *not* to issue the order, noting that "[t]he law . . . gives district courts broad latitude to

23   grant protective orders to prevent disclosure of materials" and that "courts have consistently granted protective orders that prevent disclosure of many types of information." Id. (internal

24   quotations omitted).
     [16]   See E-Smart Technologies, Inc. v. Drizin, 2008 WL 1930639 at *4 (N.D. Cal. 2008)

25   (the court did not state a particularized standard); Contratto v. Ethicon, Inc., 227 F.R.D. 304, 307-08 (N.D. Cal. 2005) (the court required a particularized "good cause" showing only after

26   the party seeking de-designation had specifically identified the documents at issue); Humphreys v. Regents of University of California, 2006 WL 2319593 at *1 (N.D. Cal. Aug.

27   10, 2006) (the court required a particularized showing only after finding that one of the defendants had designated as confidential items such as newspaper articles and other patently

28   public information).

-8-

1  (S.D.N.Y. 1995)).[17]

2        As to the first factor, the court in <u>Bayer AG</u> held that where a party has
3  agreed to a "blanket" protective order, it should not be permitted to circumvent the
4  order by subsequently moving to de-designate. <u>Id.</u> at 465-66. To the extent this applies
5  here at all, this factor favors Mattel: it cannot be reasonably disputed that both parties
6  once agreed that investigative documents were covered by the Stipulated Protective
7  Order. In fact, as noted in the moving papers, Mattel previously withdrew a motion to
8  amend based on this understanding.

9        As to the second factor, the court considered "whether the need for the
10  modification was foreseeable." <u>Id.</u> at 466. The purpose of the "foreseeability" inquiry
11  is to determine whether the ultimate result of the modification – in this case, the
12  designation of the documents – was foreseeable. From prior practices, it was entirely
13  foreseeable that investigative and foreign judicial records would be marked "Attorneys
14  Eyes Only—Confidential."

15        The final factor is "the extent to which a party resisting modification relied
16  on the protective order in affording access to discovered materials." <u>Id.</u> at 467 (internal
17  quotations omitted). Here it is not MGA, but Mattel, who relied on the Protective
18  Order by producing documents, knowing that full public disclosure was barred by
19  foreign law, and that the policies of U.S. law disfavor the wide-spread, unfettered
20  dissemination of law enforcement information that MGA seeks to undertake. Thus, this
21  factor also weighs in favor of Mattel.

22                    **Conclusion**

23        For the foregoing reasons, Mattel respectfully requests that its motion be granted
24  in its entirety.

25

26

27  [17]   As noted, the Discovery Master need not apply this test. <u>Bayer AG</u> held that these
28  factors must be analyzed in determining whether to *de-designate* specific documents, not
    whether to designate categories of documents. <u>Id.</u>

1   DATED:  September 9, 2009      QUINN EMANUEL URQUHART OLIVER &
                                    HEDGES. LLP

2

3                            By /s/ James J. Webster

4                             James J. Webster
                             Attorneys for Mattel. Inc.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28