B 3 0 7a 1 H 6 HH5 SmY § 2 Y' a ¶nLI PRLPb
/ "YY"( ¶"d ; n[ ¶/
Ha a 3 WW3 0n6 J wmWSmY § 2 Y' a ¶nLA' NI ' b
Y" "* ( ¶"d ; n[ ¶/
d Hww7a 5 Wo a ms Hw9 3 w 777 SmY § 2 Y' a ¶nLA' ppI b
ZY'; §'( ¶"d ; n[ ¶/
o ww7) 9 &6 3 ww7a 5 Wo a e mJ W) 0 7443 00s
W"§ o "d ; 2 q] q .:
ApC 6 ¶ Y'] m'§§
mY..4'Y.[.q*[ ¶&) H OALpCKPRRO
W§-§Z"¶..§T g LKALCKNNI KCNpp
4Y[ *q( q-§T g LKALCKNNI KCNCO

d 70 0 7HB HnB o 0 7a m9 7 SmY § 2 Y' a ¶nLACL' Rb
/ ¶-q .*; q( ¶"d ; n[ ¶/
o ww7) 9 &6 3 ww7a 5 Wo a e mJ W) 0 7443 00s
NNNm¶ " 4q" §'¶Ym'§§ &m q § I Ppp
0¶* H..":§-§*&) H OppLN
W§-§Z"¶..§T g LKPLI KRPOKPpPp
4Y[ *q( q-§T g LKPLI KRLPKPACO

H ¶'..§ * z¶' B 5 H s Y' q§*

J a 7W3 1 mWHW3 m 1 7mWw7) W) o J wW

) 3 a WwH0 1 7mWw7) Wo 4 ) H0 74o wa 7H

3 HmW3 wa 1 7v 7m7o a

| | |
|---|---|
| ) HwW3 w 2 w: Ha W&Y..q.].q q] Y-<br><br>s -Yq . qzz&<br><br>n<br><br>B HWW3 0 &7a ) n&Y1 §-Y Y'§<br>) ¶'Z¶'Yq¶...<br><br>1 §z§..].Y..n | ) Y*§ a ¶n) v pAKOpAOm5 0 Swa 2 b<br>) ¶..*¶-q] Y §] q"T<br>) v pAKOpCO<br>) v pCKPNPN<br><br>**2 0 , GJ p J h Ng ) g 9**<br>**WJ p p N ] hg ) l oUJ p F 0 p NNNN**<br>**l k UUg p h g 9 N J J , GJ p NJ ) l**<br>**g 6 . 0 , h Ng ) l hg J ) 2**<br>**( 0( g p J ) 2 k ( g 9 Ug N hl J ) 2**<br>**J k h L g p Nh N0 l N l k UUg p h g 9**<br>**Nhl g 6 . 0 , h Ng ) l hg 2 N , g l 0 p w**<br>**( J l h 0 p g p 2 0 p ) g odi**<br>**p 0 ] J p 2 N ] p 0 l Ug ) l 0 l hg**<br>**UL J l 0 a N h 0 p p g ] J hg p N0 l b**<br>**0 x L N6 Nhl**<br><br>8 ] "§Tm§Z"§..5 n0 Y'*¶...<br>) ¶ " "¶¶/ T) ¶ ' "¶¶/ a ¶nL<br>1 Y §To [ ¶x§' C&PppO<br>Wq( §TLpTpp Yn/ n |
| Ha 1 ) o a mo 0 71 HW3 1 H) W7o a m | |

7&d Y‘q.:: ¶..ms Y; §‘&] §[–Y§ Y* z¶–¶ *T

Ln 7Y/ Y..Y ¶‘..§ Y ”§–Y zq/ ¶zo ‘‘q[; &6 §‘‘q.:: ¶..e m [–qz§ 00s & [¶ ..*§–¶z‘§[¶‘] z¶‘ ”§ B 5 H s Y q§* q..”§ Yx¶ §K[YZ q¶..§] Y[ q¶.n 7Y/ Y / §/ x§‘ q..“¶¶] * Y.].q.:: ¶z ”§ mY§ 2 Y ¶z) Y–q¶‘..qY.]. Y/ Y] / q §] ¶ Z‘Y[ q[§ x§z¶‘§ ”q* ) ¶ ‘ n 7”Y § Z§‘*¶..Y–; ..¶ –§] “§ ¶z ”§ zY[ * *§ z¶‘ ” q..”q* ] §[–Y Y q¶... ..–§** ¶ ”§‘ q*§ § Z‘§**– * Y§] &q.. ”q[” [ Y*§ q q* ¶..q z¶‘/ Yq¶...Y.]. x§–q§zn 7z [Y–§] Y* Y q..§**&7 [¶ –] Y.]. ¶ –] §* qz [¶/ Z§ §..– ¶ * [” zY[ * ..].§‘ ¶Y”n

Pn H Y[”§] ”§‘§ ¶ Y* **0** **J** Szq§] ..].§‘ *§Y–b q* Y ‘ § Y.]. [¶‘‘§[ [¶Z ¶z 1 q*[¶ §‘ B Y* §‘ o ‘] §‘ a ¶nARn

In H Y[”§] ”§‘§ ¶ Y* **0** **6** q* Y ‘ § Y.]. [¶‘‘§[ [¶Z ¶z B Y §–* B ¶ q¶...¶ ) ¶/ Z§–w§*Z¶..*§* ¶ B Y §–&7..[.n * 4q* m§ ¶z 7..§‘‘¶“Y¶‘q§* S ”Y*§ Pb ¶ 7*YY[ 0 Y qY..n

An H Y[”§] ”§‘§ ¶ Y* **0** **,** Szq§] ..].§‘ *§Y–b q* Y ‘ § Y.]. [¶‘‘§[ [¶Z ¶z ”§ 1 §[–Y Yq¶..¶z B q[”Y§–Wn- §–§‘ q.m ZZ¶‘ ¶z B Y §–&7..[. * B ¶ q¶...¶ ) ¶/ Z§–w§*Z¶..*§* ¶ B Y §–&7..[.n * 4q* m§ ¶z 7..§‘‘¶“Y¶‘q§* S ”Y*§ Pb ¶ 7*YY[ 0 Y qY...Y.]. ”§ § ”qxq * Y Y[”§] ”§‘§ ¶n

Cn H Y[”§] ”§‘§ ¶ Y* **0** **2** q* Y ‘ § Y.]. [¶‘‘§[ [¶Z ¶z 7*YY[ 0 Y qY...* o ZZ¶*q q¶...¶ B Y §–&7..[.n * B ¶ q¶...¶ ) ¶/ Z§–w§*Z¶..*§* ¶ 4q* m§ ¶z 7..§‘‘¶“Y¶‘q§* S ”Y*§ Pbn

Rn H Y[”§] Y* **0** **0** q* Y ‘ § Y.]. [¶‘‘§[ [¶Z ¶z ”§ 1 §[–Y Yq¶..¶z 1 Y.q§–B n6 Y §* q.m ZZ¶‘ ¶z 7*YY[ 0 Y qY...* o ZZ¶*q q¶...¶ B Y §–&7..[.n * B ¶ q¶... ¶ ) ¶/ Z§–w§*Z¶..*§* ¶ 4q* m§ ¶z 7..§‘‘¶“Y¶‘q§* S ”Y*§ Pb q” § ”qxq * Y Y[”§] ”§‘§ ¶n

Nn H Y[”§] Y* **0** **9** q* Y ‘ § Y.]. [¶‘‘§[ [¶Z ¶z B Y §–&7..[.n * w§Z– q.m ZZ¶‘ ¶z B ¶ q¶...¶ ) ¶/ Z§–w§*Z¶..*§* ¶ B Y §–&7..[.n * 4q* m§ ¶z 7..§‘‘¶“Y¶‘q§* S ”Y*§ Pb ¶ 7*YY[ 0 Y qY..n

’n H Y[”§] ”§‘§ ¶ Y* **0** **]** q* Y ‘ § Y.]. [¶‘‘§[ [¶Z ¶z ”§

1 §[–Y'Yq¶..¶z: ¶ ..‘: wY0§§ q.m ZZ¶‘ ¶zB Y §–&7..[. * w§Z– q.m ZZ¶‘ ¶z B ¶ q¶…¶ ) ¶/ Z§–w§*Z¶..*§* ¶ B Y §–&7..[.n * 4q* m§ ¶z 7..§‘“¶“Y¶‘q§* S§ ”Y*§ Pb ¶ 7*YY[ 0Y'qY...Y..]. ”§ § ”qxq * Y Y[”§] ”§‘§ ¶n

7] §[–Y'§ ..].§‘ Z§..Y– ¶zZ§‘$ ‘ ..].§‘ ”§ –Y * ¶z ”§ J ..q§] mY§*¶z H/ §‘q[Y ”Y ”§ z¶‘§“¶q.‘: q* ‘ § Y..]. [¶‘‘§[ n

3 §[ §] ”q* P’ ” ] Y ¶z H “ * &PppO&Y mY..4‘Y..[.q*[¶&) Y–qz¶‘..qYn

I , RRR
d Y'‘q.‘: ¶..mns Y'; §‘ 777

sHw9 3w 1 3) 0n7m B 5 H o s s nW B o Wo a Wo ) o B s 3 0
s wo 1 J ) Wo a
) v pAKOpAOm5 0 Swa 2 f b

**0**          **J**

# Confidential
# Filed Under Seal Pursuant to
# Protective Order

Case 2:04-cv-09049-DOC-RNB  Document 6626  Filed 09/10/09  Page 5 of 53   Page ID
#:218406
Case 2:04-cv-09049-SGL-RNB   Document 646   Filed 08/28/2009   Page 1 of 1

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | CASE NUMBER: |
|---|---|
| PLAINTIFF(S) | |
| V. | |
| DEFENDANT(S). | **NOTICE OF MANUAL FILING** |

PLEASE TAKE NOTICE:

The above-mentioned cause of action has been designated as an electronically filed case. In accordance with General Order 08-02 and Local Rule 5-4 the following document(s) or item(s) will be manually filed. **List Documents:**

**Document Description:**

☐    Administrative Record

☐    Exhibits

☐    Ex Parte Application for authorization of investigative, expert or other services pursuant to the Criminal Justice Act [see Local Civil Rule 79-5.4, Documents to be excluded, (h)]

☐    Other

**Reason:**

☐    Under Seal

☐    Items not conducive to e-filing (i.e., videotapes, CDROM, large graphic charts)

☐    Electronic versions are not available to filer

☐    Per Court order dated _____

☐    Manual Filing required (*reason*): _____

_____
Date

_____
Attorney Name

_____
Party Represented

Note:   File one Notice in each case, each time you manually file document(s).

0          6

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
   John B. Quinn (Bar No. 090378)
   johnquinn@quinnemanuel.com
   Michael T. Zeller (Bar No. 196417)
   (michaelzeller@quinnemanuel.com)
   Jon D. Corey (Bar No. 185066)
   (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:   (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Plaintiff Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>              Plaintiff,<br><br>        vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>              Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with Case Nos. CV 04-09059 and CV 05-02727<br><br>**DISCOVERY MATTER**<br><br>**[To Be Heard By Discovery Master Robert O'Brien]**<br><br>MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL RESPONSES TO MATTEL, INC.'S FIRST SET OF INTERROGATORIES (PHASE 2) TO ISAAC LARIAN;<br><br>AND MEMORANDUM OF POINTS AND AUTHORITIES<br><br>[Declaration of Michael T. Zeller filed concurrently herewith]<br><br>Date:    TBD<br>Time:    TBD<br>Place:   TBD<br><br>Discovery cut-off: December 11: 2009<br>Pre-trial Conference:  March 1, 2010<br>Trial Date:  March 23, 2010 |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, at a date and time to be set by Discovery Master Robert O'Brien, Mattel, Inc. ("Mattel") will, and hereby does, move the Court:

(1)    to compel Isaac Larian ("Larian") to provide full and complete responses to Mattel's First Set of Interrogatories (Phase 2) (the "Interrogatories"); and

(2)    to overrule each of Larian's objections to the Interrogatories.

This Motion is made pursuant to <u>Federal Rules of Civil Procedure</u> 33(b)(5) and 37(a) on the grounds that Mattel's requests seek discoverable information and Larian's objections lack merit.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Michael T. Zeller filed concurrently, the records and files of this Court, and all other matters of which the Court may take judicial notice.

**<u>Certification of Meet and Confer</u>**

The parties met and conferred regarding this Motion on April 21 and April 23, 2009.

DATED:  June 19 , 2009          QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP


By /s/ Michael T. Zeller
   Michael T. Zeller
   Attorneys for Mattel, Inc.

00505.07209/2937854.6

Case No. CV 04-9049 SGL (RNBx)

MATTEL INC.'S MOTION TO COMPEL INTERROGATORY RESPONSES

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 1

PRELIMINARY STATEMENT................................................................................ 1

STATEMENT OF FACTS ...................................................................................... 1

ARGUMENT ............................................................................................................ 3

I.     THE DISCOVERY MASTER SHOULD OVERRULE LARIAN'S
       RELEVANCE OBJECTION. .......................................................................... 3

       A.     The Interrogatories Seek Relevant, Discoverable Information. ............. 3

       B.     Larian's Proposed Limitations to Mattel's Interrogatories Are
              Improper.................................................................................................. 5

II.    LARIAN'S REMAINING OBJECTIONS ARE WITHOUT MERIT
       AND SHOULD BE OVERRULED ................................................................ 7

       A.     The Interrogatories Are Not Vague and Ambiguous ............................. 8

       B.     The Interrogatories Are Not Overly Broad ............................................ 9

       C.     The Interrogatories Do Not Pose An Undue Burden ............................. 9

       D.     The Interrogatories Are Not Compound ............................................... 11

CONCLUSION ....................................................................................................... 12

# TABLE OF AUTHORITIES

**Page**

## Cases

Chapman v. California Dept. of Educ.,
    2002 WL 32854376 (N.D. Cal. February 6, 2002) ................................ 6

Jackson v. Montgomery Ward & Co., Inc.,
    173 F.R.D. 524 (D. Nev. 1997) ............................................................... 9

King v. Georgia Power Co.,
    50 F.R.D. 134 (N.D. Ga. 1970) .............................................................. 10

Nagele v. Electronic Data Systems Corp.,
    193 F.R.D. 94 (W.D.N.Y. 2000) .............................................................. 9

Pacific Lumber Co. v. National Union Fire Ins. Co. of Pittsburgh,
    2005 WL 318811 (N.D. Cal. January 5, 2005) ..................................... 11

Ramirez v. Nicholson,
    2007 WL 2990283 (S.D. Cal. 2007) ........................................................ 7

Seff v. General Outdoor Advertising Co.,
    11 F.R.D. 597 (N.D. Ohio 1951) ........................................................... 10

Swackhammer v. Sprint Corp. PCS,
    225 F.R.D. 658 (D. Kan. 2004) .............................................................. 11

## Statutes

Cal. Civ. Code § 3294' ..................................................................................... 5

Cal. Civil Code §§ 3439 et seq .................................................................... 3, 4

Fed. R. Civ. P. 26(b)(1) .................................................................................. 7

Fed. R. Civ. P. 33(b)(4) .................................................................................. 9

Fed. R. Civ. P. 33(b)(5) .................................................................................. 1

Fed. R. Civ. P. 33(d) ..................................................................................... 10

## Miscellaneous

Federal Practice & Procedure: Federal Rules of Civil Procedure § 2174 ............... 10

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **Preliminary Statement**

3    Mattel's First Set of Phase 2 interrogatories to Isaac Larian seek

4    financial information that goes to the core of the issues in Phase 2. In particular, the

5    interrogatories request information relating to Larian's and his trusts' ownership

6    interests in business entities since 2005. Such matters are directly pertinent to net

7    worth issues that the Court has repeatedly held are relevant and discoverable as well

8    as to the fraudulent transfer issues raised by Mattel's Third Amended Answer and

9    Counterclaims that the Court granted Mattel leave to file. Without basis, Larian

10   flatly refuses to provide any information in response. Instead, Larian has offered

11   boilerplate compound objections that have already been repeatedly rejected by the

12   current and former Discovery Masters. Larian's objections should be overruled, and

13   he should be ordered to fully answer Mattel's interrogatories without further delay.

14   **Statement of Facts**

15   **Mattel's First Set of Interrogatories (Phase 2) to Larian.** Mattel

16   propounded its First Set of Interrogatories (Phase 2) ("Interrogatories") to Larian on

17   March 4, 2009, asking Larian to identify each entity in which Larian or his alter ego

18   trusts have held an ownership interest since January 1, 2005.[1] The Interrogatories

19   ask, verbatim:

20   INTERROGATORY NO. 1:

21   IDENTIFY each and every ENTITY in which LARIAN has

22   held, directly or indirectly, any OWNERSHIP INTEREST at

23   any time since January 1, 2005. For purpose of this

24   Interrogatory, transactions involving the purchase or acquisition

25

26   ─────────────────

27   [1] Mattel, Inc.'s First Set of Interrogatories (Phase 2), dated March 4, 2009,
     Zeller Dec., Exh. 1.
28

of publicly traded stock in an amount of $1,000 or less may be excluded.

INTERROGATORY NO. 2:

IDENTIFY each and every ENTITY in which any LARIAN TRUST has held, directly or indirectly, any OWNERSHIP INTEREST at any time since January 1, 2005. For purpose of this Interrogatory, transactions involving the purchase or acquisition of publicly traded stock in an amount of $1,000 or less may be excluded.[2]

Larian served objections on April 3, 2009, refusing to provide any substantive answers on the grounds that the interrogatories purportedly seek private and confidential information and are irrelevant, vague and ambiguous, overly broad, unduly burdensome, and compound.[3]

**The Parties' Meet and Confer.** Mattel sent a meet and confer letter to Larian, explaining why Larian's objections to Mattel's Interrogatories are improper.[4] The parties met and conferred on April 21 and 22.[5] Counsel for Larian argued that the Interrogatories were unintelligible, overly broad, and sought irrelevant information.[6] Mattel explained during that conference and by letter[7] that the text of the Interrogatories lays out in plain English the scope of the information Mattel

---

[2] Id.
[3] Isaac Larian's Response to Mattel, Inc.'s First Set of Interrogatories (Phase Two), dated April 3, 2009, Zeller Dec., Exh. 2.
[4] Letter from Jon Corey to Amman Khan and Jean Pierre Nogues, dated April 15, 2009, Zeller Dec., Exh. 3.
[5] See Letter from Tamar Buchakjian to Richard Sheldon and Daniel Hayes, dated April 29, 2009, Zeller Dec., Exh. 4; see also letter from Daniel Hayes to Tamar Buchakjian, dated April 22, 2009, Zeller Dec., Exh. 5; Letter from Daniel Hayes to Tamar Buchakjian, dated April 23, 2009, Zeller Dec., Exh. 6.
[6] Id.
[7] See Letter from Tamar Buchakjian to Richard Sheldon and Daniel Hayes, dated April 29, 2009, Zeller Dec., Exh. 4.

seeks and explained the relevance of such information.[8]  Larian, however, refused to withdraw his boilerplate objections.[9]

## **Argument**

### I.  THE DISCOVERY MASTER SHOULD OVERRULE LARIAN'S RELEVANCE OBJECTION.

#### A.  The Interrogatories Seek Relevant, Discoverable Information.

The Interrogatories are directly relevant to Mattel's Phase 2 claims.  As Mattel alleges, MGA and Larian have engaged in a complex scheme to transfer the ill-gotten funds they have obtained by virtue of their unlawful conduct and have gone to extensive lengths to cover up and obscure such activities.[10]  They have engaged in monetary transactions with property derived from their unlawful conduct and laundered and concealed their profits.[11]  They have siphoned assets out of MGA and into other entities.[12]  Their conduct has wronged Mattel, which has rights as the owner of Bratz and as MGA's creditor.[13]  Based on their unlawful conduct, Mattel has brought claims against MGA and Larian for Avoidance of Intentional and Constructive Fraudulent Transfers ("UFTA")[14] and for RICO violations.[15]

The Interrogatories plainly go to Mattel's UFTA and RICO claims. Interrogatory Nos. 1 and 2 ask Larian to identify the entities in which Larian and his trusts have held significant ownership interests since 2005.  They seek to determine

---

[8]  Id.
[9]  See Letter from Tamar Buchakjian to Richard Sheldon and Daniel Hayes, dated April 29, 2009, Zeller Dec., Exh. 4; see also letter from Daniel Hayes to Tamar Buchakjian, dated April 22, 2009, Zeller Dec., Exh. 5; Letter from Daniel Hayes to Tamar Buchakjian, dated April 23, 2009, Zeller Dec., Exh. 6.  The only objection Larian agreed to withdraw was his privacy objection.  See Letter from Daniel Hayes to Tamar Buchakjian, dated May 1, 2009, Zeller Dec., Exh. 7.
[10]  Mattel, Inc.'s Third Amended Answer and Counterclaims at 60-68, Zeller Dec., Exh. 8.
[11]  Id. at 78-79.
[12]  Id. at 67-68.
[13]  Id. at 95-96; see also Cal. Civil Code §§ 3439 et seq.
[14]  Id. at 95-96.
[15]  Id. at 70-80.

to where MGA's assets have been fraudulently transferred;[16] to ascertain the
financial transactions in which Larian has engaged with property derived from
unlawful conduct;[17] to assess how Larian has laundered and concealed his ill-gotten
gains;[18] and to enable Mattel to track the money Larian has siphoned from MGA.[19]
The information Mattel now seeks is crucial to Mattel's development and further
investigation of its RICO and UFTA Phase 2 claims.

The information is also relevant to Mattel's unfair competition claims.
In fact, the Discovery Master has already held as much, and did so based even on
the claims in Mattel's Second Amended Answer and Counterclaims.  In Order No.
3, the Discovery Master found that Larian's ownership of entities that have received
assets from MGA is relevant to Phase 2 and discoverable because it relates "to
'fraudulent,' 'unlawful,' or 'unfair' business practice within the meaning of the Unfair
Competition Law and the scope of Mattel's Counterclaims."[20]  The Discovery
Master thus compelled two Larian vehicles, IGWT Group, LLC and IGWT 826
Investments, LLC, to produce documents relating to any ownership interest by
Larian, his spouse, his children, his siblings, or their spouses, or any entity or person
affiliated with them.[21]  Mattel's interrogatories, directed to a party, clearly are
properly tailored to ascertain Larian's interests entities such as IGWT which may
have been to transfer assets from MGA.[22]

---

[16] Id. at 60-63, 78-79, 95-96.
[17] Id.
[18] Id.
[19] Id.
[20] Order No. 3, Regarding Motion of Mattel, Inc. to Compel Production of
Documents Responsive to the Same Non-Party Subpoenas, dated March 10, 2009 at
26-27, Zeller Dec., Exh. 9.
[21] See id. at 29-30.
[22] During the meet and confer process, Larian demanded that *Mattel* identify the
"single-purpose companies" other than IGWT that purchased Bratz from MGA at an
extreme discount.  See Letter from Tamar Buchakjian to Richard Sheldon and
Daniel Hayes, dated April 29, 2009, Zeller Dec., Exh. 4.  This, however, is precisely
the type of information that Mattel *seeks to obtain* through the Interrogatories; only
Larian, not Mattel, is in a position to provide it.

Independently, the interrogatories seek relevant information about Larian's net worth. Larian's ownership interests are unquestionably a part of his net worth. The Court, the current Discovery Master and the prior Discovery Master have all held this is a proper topic for discovery.[23] Larian's relevance objections should be overruled.

## B. Larian's Proposed Limitations to Mattel's Interrogatories Are Improper.

Larian has provided no substantive information in response to the interrogatories. During meet and confer, and with little elaboration, Larian's counsel insisted that Mattel limit the scope of the interrogatories by: (1) narrowing the definition of "LARIAN TRUST," (2) limiting the temporal scope of the interrogatories to a "date certain," and (3) raising the "more than $1000" threshold.[24] None of these proposed limitations is appropriate, as each would prevent Mattel from obtaining relevant information, with little or no benefit.

First, "LARIAN TRUST" is defined as including "the Isaac and Angela Larian Trust, Isaac Larian Grantor Annuity Trust, Angela Larian Grantor Annuity Trust, Larian Family Trust and any other trust of which Isaac Larian is a trustee or of which any member of Isaac Larian's family, whether by blood or marriage, is a beneficiary, the current or former trustees, beneficiaries, attorneys, agents, representatives, accountants, vendors, consultants or any other PERSON acting on

---

[23] See Order No. 11, dated March 30, 2009, at 7 (Larian's net worth "relates to Phase 2 damages issues, including, among other things, damages sought against Larian in connection with Mattel's unfair competition cause of action as well as the calculation of Larian's net worth for purposes of litigating the propriety of any 'exemplary damages under Cal. Civ. Code § 3294.'"), Zeller Dec., Exh. 10; July 2, 2007 Order, at 5, Zeller Dec., Exh. 15; Order No. 3, dated March 10, 2009, Zeller Dec., Exh. 9; Order, dated September 26, 2007, at 11-12, Zeller Dec., Exh. 18; Order, dated December 31, 2007, at 15-16, Zeller Dec., Exh. 19.

[24] Letter from Tamar Buchakjian to Richard Sheldon and Daniel Hayes, dated April 29, 2009, Zeller Dec., Exh. 4.

its behalf, subject to its authority and control."[25]  This definition is consistent with information the Discovery Master has previously compelled as relevant.  See Order No. 3, Regarding Motion of Mattel, Inc. to Compel Production of Documents Responsive to the Same Non-Party Subpoenas, dated March 10, 2009 at 29-30 (compelling production of documents relating to any ownership interest by Larian, his spouse, his children, his siblings, or their spouses, or any entity or person affiliated with them in IGWT Group or IGWT 826 and the dates of such person's affiliation).  Moreover, many of the trusts have now been expressly identified in Mattel's pleading[26] and therefore are unquestionably the proper subject of discovery.[27]  They cannot be excluded.

Second, the Interrogatories are already limited in time to January 1, 2005 through the present.[28]  Although Larian demanded a limitation on the Interrogatories to transactions of a "date certain," engrafting an additional temporal limitation on the Interrogatories would be improper.  Mattel is the proponent of the Interrogatories "and is the master of its terms.  So long as the information sought is within the broad bounds of relevancy as set forth in Rule 26 and is otherwise properly discoverable, [the other party] may not unilaterally reshape or rephrase the discovery request."  Chapman v. California Dept. of Educ., 2002 WL 32854376, at *3 (N.D. Cal. February 6, 2002).  There can be no plausible dispute that Larian's on-going financial transactions are relevant here, given that Mattel's Third Amended Answer and Counterclaims expressly allege that his financial manipulations are

---

[25]  Mattel's First Set of Interrogatories (Phase 2), at 2, Zeller Dec., Exh. 1.
[26]  See, e.g., Mattel's Third Amended Answer and Counterclaims at 66-67, Zeller Dec., Exh. 8.
[27]  MGA Parties' Opposition to Mattel, Inc.'s Motion for Leave to File Third Amended Answer and Counterclaims, dated April 27, 2009, at 6, Zeller Dec., Exh. 11.
[28]  Mattel's First Set of Interrogatories (Phase 2), at 5, Zeller Dec., Exh. 1.

1  continuing.  And, of course, his current and on-going ownership interests are plainly

2  relevant to his net worth.[29]

3         Finally, the $1000 interest threshold is necessary to capture relevant

4  information about net worth.  For example, Larian has admitted that he owns shares

5  of Zapf (which is a publicly traded company) through his trusts.[30]  Mattel is entitled

6  to know of such ownership, whether accumulated in a single purchase or through

7  increments of $1000 plus transactions.    Indeed, Larian's asset-siphoning and

8  concealment is relevant at any value.    Mattel's Interrogatories seek relevant

9  information which Mattel is entitled to discover.  See Ramirez v. Nicholson, 2007

10  WL 2990283, at *2 (S.D. Cal. 2007) (quoting Fed. R. Civ. P. 26(b)(1)) ("The

11  Federal Rules allow for broad discovery in civil actions  Relevant information need

12  not be admissible at trial if the discovery appears reasonably calculated to lead to the

13  discovery of admissible evidence.").  Nevertheless, Mattel made a good-faith effort

14  to eliminate at least some burden by creating a $1,000 threshold -- a threshold that

15  Larian has merely quibbled with, but that Larian has never provided any alternative

16  to that would provide the information Mattel is entitled to.  The Discovery Master

17  should overrule Larian's erroneous relevance objections and compel Larian to

18  provide responses to the Interrogatories without further delay.

19  **II.    LARIAN'S REMAINING OBJECTIONS ARE WITHOUT MERIT**

20  **AND SHOULD BE OVERRULED**

21         Larian also has raised a number of boilerplate objections.  They, too,

22  should be overruled.[31]

23  

---

24  [29]   In addition, Larian never provided any definition to his suggestions that

25  Mattel's already temporally limited interrogatories be limited further. Letter from
Tamar Buchakjian to Richard Sheldon and Daniel Hayes, dated April 29, 2009,
Zeller Dec., Exh. 4.

26  [30]   Larian Depo. (Vol. 2), dated March 26, 2008,  at 506:16-22, Zeller Dec., Exh.

27  12. [31]   Larian initially objected that the Interrogatories seek private, confidential,
proprietary or otherwise sensitive information regarding Larian, third-party

28  (footnote continued)

## A.    The Interrogatories Are Not Vague and Ambiguous

Larian asserts that the Interrogatories are vague and ambiguous, and that it is "impossible to ascertain what information is being requested" by these Interrogatories.[32]  Not so.  Larian fails to explain why the specifically defined term "IDENTIFY" is vague or ambiguous simply because it incorporates the term "ENTITY," "type of ownership interest," "percentage ownership interest," and "title or position that YOU have had with each such ENTITY."[33]  These interrogatories simply specify, in plain and unmistakable terms, to list as to each ENTITY what identifying information Mattel is seeking.[34]  Thus, for example, the definitions ask that Larian identify in his answer: the entity's full name; the type of ownership interest that Larian holds or did hold; the date(s) on which Larian held such ownership interest; and the relevant entity's contact information.[35]  There is nothing ambiguous or unclear about the nature of the information sought, and the information is necessary and appropriate to identify the relevant entities -- including for purposes of locating additional witnesses and others with relevant information -- and Larian's stake in each.

Nor is the definition of "LARIAN TRUST" unintelligible.[36]  "LARIAN TRUST" is defined as including "the Isaac and Angela Larian Trust, Isaac Larian Grantor Annuity Trust, Angela Larian Grantor Annuity Trust, Larian Family Trust and any other trust of which Isaac Larian is a trustee or of which any member of Isaac Larian's family, whether by blood or marriage, is a beneficiary, the current or

---

relatives, and trust beneficiaries of Larian.  Isaac Larian's Response to Mattel, Inc.'s First Set of Interrogatories (Phase 2), at 6-7, Zeller Dec., Exh. 2.  However, Larian has since agreed to withdraw that objection.  Letter from Daniel Hayes to Tamar Buchakjian, dated May 1, 2009, Zeller Dec., Exh. 7.

[32]  Isaac Larian's Response to Mattel, Inc.'s First Set of Interrogatories (Phase Two), at 6-7, Zeller Dec., Exh. 2.

[33]  Id.

[34]  Mattel's First Set of Interrogatories (Phase 2), at 2-3, Zeller Dec., Exh. 1.

[35]  Id.

former trustees, beneficiaries, attorneys, agents, representatives, accountants, vendors, consultants or any other PERSON acting on its behalf, subject to its authority and control."[37]   There is nothing vague and ambiguous about this definition that prevents Larian from providing full and complete responses to these Interrogatories.

## B.   The Interrogatories Are Not Overly Broad

Larian further objects that the Interrogatories are overly broad.[38]   Yet he provides no explanation, let alone with the required particularity, as to why these interrogatories are overly broad.  This boilerplate objection is therefore improper. Order No. 17, dated April 14, 2009, at 20 (overruling objections not stated with specificity), Zeller Dec., Exh. 16; see also Fed. R. Civ. P. 33(b)(4) (grounds for objecting to an interrogatory must be stated "with specificity"); Nagele v. Electronic Data Systems Corp., 193 F.R.D. 94, 109 (W.D.N.Y. 2000) (overruling "burdensome" objections because objecting party failed to particularize basis for objection).  Nor, in any event, does the objection have merit.  As explained above, the interrogatories are designed to discover key financial information that Mattel is entitled to discover.  The Discovery Master should overrule this objection.

## C.   The Interrogatories Do Not Pose An Undue Burden

Larian objects that the Interrogatories are unduly burdensome because they "purport to require Larian to search for and provide such utterly irrelevant information as every stock market transaction over $1,000 in which he purchased stock in any publicly traded company."[39]   Larian has not demonstrated why responding to these interrogatories would present any burden.  See Jackson v.

---

[36]   Isaac Larian's Response to Mattel, Inc.'s First Set of Interrogatories (Phase 2), at 4, Zeller Dec., Exh. 2.
[37]   Mattel's First Set of Interrogatories (Phase 2), at 2, Zeller Dec., Exh. 1.
[38]   Isaac Larian's Response to Mattel, Inc.'s First Set of Interrogatories (Phase Two), at 6-7, Zeller Dec., Exh. 2.

Montgomery Ward & Co., Inc., 173 F.R.D. 524, 528-9 (D. Nev. 1997) ("The party claiming that a discovery request is unduly burdensome must allege specific facts which indicate the nature and extent of the burden, usually by affidavit or other reliable evidence.") (cited in Order No. 11 at 19, Zeller Dec., Exh. 10).  It is implausible that someone of Larian's resources and professed business acumen does not, himself or through professionals such as his accountants, maintain precise records reflecting his ownership interests, which either can be used to answer the interrogatories or, if Larian so chooses, be produced and identified pursuant to Rule 33(d).

Furthermore, as discussed above, the information Mattel seeks is highly relevant.  Any ostensible burden associated with providing it -- and none has been proven here since Larian undoubtedly has accountants who routinely keep such information -- is minimal compared to the value this information will have to Mattel in developing its claims.  See 8A Wright & Miller, Federal Practice & Procedure: Federal Rules of Civil Procedure § 2174 (to determine if an interrogatory poses an "undue burden," courts have adopted a "proportionality approach that balances the burden on the interrogated party against the benefit that having the information would provide to the party submitting the interrogatory"); see also King v. Georgia Power Co., 50 F.R.D. 134, 136 (N.D. Ga. 1970) (overruling objection that interrogatory was burdensome and oppressive, even though preparation of answer would be time-consuming and costly, because information was crucial to the issues of the suit and in exclusive custody of defendant); Seff v. General Outdoor Advertising Co., 11 F.R.D. 597, 598 (N.D. Ohio 1951) (overruling "overly burdensome" objection because value of information to plaintiff clearly outweighed any annoyance or expense involved in disclosure by defendant).

---

[39]  Isaac Larian's Response to Mattel, Inc.'s First Set of Interrogatories (Phase Two), at 6-7, Zeller Dec., Exh. 2.

Larian's burden objections are unfounded and should be rejected.

### D.   The Interrogatories Are Not Compound

Finally, Larian's objection that the Interrogatories are impermissibly compound because the definition of "IDENTIFY" allegedly creates numerous subparts is unfounded.[40]   As detailed above, Mattel has defined the term "IDENTIFY" to ensure that Larian provides a response with sufficient detail regarding his various ownership interests.[41]  This definition, however, refers to, and elicits information about, only one common theme -- the entities which Larian or the Larian Trust have held ownership interest in.  Thus, this definition does not render the Interrogatories compound.  See Swackhammer v. Sprint Corp. PCS, 225 F.R.D. 658, 664 (D. Kan. 2004) ("[A]n interrogatory containing subparts directed at eliciting details concerning a 'common theme' should generally be considered a single question."); see also Pacific Lumber Co. v. National Union Fire Ins. Co. of Pittsburgh, 2005 WL 318811, at * 7 (N.D. Cal. January 5, 2005) (interrogatory that asked the "same question regarding a common group of people" was not compound) (citing Wright & Miller, 8A Fed. Prac. & Proc. Civ. 2d § 2168.1 at 261).

Based on this same reasoning, both the current Discovery Master and the former Discovery Master have repeatedly rejected MGA's and Larian's objections on this ground as meritless.  See Order No. 11, dated March 30, 2009, at 21 ("The fact that the interrogatories ask MGA to identify witnesses, facts, and documents related to the MATTEL DOCUMENTS does not render the interrogatories compound because the questions in each interrogatory refer to one common theme"), Zeller Dec., Exh. 10; Order No. 17, dated April 14, 2009, at 21-22 (overruling compound objection and counting as one interrogatory, supplemental interrogatory which asked MGA, for each trade dress it claimed MGA copied,

---

[40]   Isaac Larian's Response to Mattel, Inc.'s First Set of Interrogatories (Phase Two), at 6-7, Zeller Dec., Exh. 2.

00505.07209/2937854.6

infringe or diluted, to "separately IDENTIFY each product sold by YOU or YOUR licensees that incorporates such trade dress and, for each such product, separately state (a) the number of units, by year, of each such product sold by YOU or YOUR licensees; (b) revenue received by YOU from such SALES of each such product; (c) all costs YOU have incurred in connection with each product, including but not limited to YOUR cost of good sold, and (d) YOUR gross and net profits from each such product"), Zeller Dec., Exh. 16; Order, dated September 5, 2007, at 5-7 (interrogatories with "subparts seeking facts supporting a contention, the identity of persons with knowledge, and documents are not counted separately for the purposes of applying the . . . interrogatory limit."), Zeller Dec., Exh. 17.  The Discovery Master should do so again here and overrule Larian's baseless objection.

## Conclusion

For the foregoing reasons, Mattel respectfully requests that the Discovery Master: (1) compel Larian to provide full and complete answers to Mattel, Inc.'s First Set of Interrogatories (Phase 2), and (2) to overrule all of Larian's objections to the Interrogatories.

DATED:  June 19, 2009

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP


By/s/ Michael T. Zeller
Michael T. Zeller
Attorneys for Mattel, Inc.

---

[41]  Mattel's First Set of Interrogatories (Phase 2), at 2-3, Zeller Dec., Exh. 1.

-12-

Case No. CV 04-9049 SGL (RNBx)

# Exhibit C

## Confidential
## Filed Under Seal Pursuant to
## Protective Order

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

|  | CASE NUMBER: |
|---|---|
| PLAINTIFF(S) | |
| v. | **NOTICE OF MANUAL FILING** |
| DEFENDANT(S). | |

PLEASE TAKE NOTICE:

      The above-mentioned cause of action has been designated as an electronically filed case. In accordance with General Order 08-02 and Local Rule 5-4 the following document(s) or item(s) will be manually filed. **List Documents:**

**Document Description:**

☐    Administrative Record

☐    Exhibits

☐    Ex Parte Application for authorization of investigative, expert or other services pursuant to the Criminal Justice Act [see Local Civil Rule 79-5.4, Documents to be excluded, (h)]

☐    Other

**Reason:**

☐    Under Seal

☐    Items not conducive to e-filing (i.e., videotapes, CDROM, large graphic charts)

☐    Electronic versions are not available to filer

☐    Per Court order dated _____

☐    Manual Filing required (*reason*):

_____
Date

_____
Attorney Name

_____
Party Represented

Note:  File one Notice in each case, each time you manually file document(s).

0           2

Case 2:04-cv-09049-DOC-RNB Document 6625   Filed 09/10/09   Page 26 of 53   Page ID
#:218427
Case 2:04-cv-09049-SGL-RNB   Document 5775   Filed 06/26/2009   Page 1 of 28

1   PATRICIA L. GLASER (Bar No. 055668)
    pglaser@glaserweil.com
2   GLASER WEIL FINK JACOBS & SHAPIRO
    10250 Constellation Blvd., 19th Floor
3   Los Angeles, California  90067
    Telephone:  (310) 553-3000
4   Facsimile:  (310) 557-9815

5   RUSSELL J. FRACKMAN (Bar No. 49087)
    rjf@msk.com
6   PATRICIA H. BENSON (Bar No. 60565)
    phb@msk.com
7   MITCHELL SILBERBERG & KNUPP LLP
    11377 West Olympic Boulevard
8   Los Angeles, California 90064-1683
    Telephone: (310) 312-2000
9   Facsimile: (310) 312-3100

10  Attorneys for The MGA Parties

11

12              UNITED STATES DISTRICT COURT

13            CENTRAL DISTRICT OF CALIFORNIA

                     EASTERN DIVISION
14

| CARTER BRYANT, an individual, | CASE NO.  CV 04-9049 SGL (RNBx) |
|---|---|
| Plaintiff, | Consolidated with<br>Case No.  CV 04-09059<br>Case No.  CV 05-02727 |
| v. | |
| MATTEL, INC., a Delaware<br>corporation, | **DISCOVERY MATTER**<br>**[To Be Heard By Discovery Master**<br>**Robert O'Brien Pursuant To Order Of**<br>**January 6, 2009]** |
| Defendant. | |
| AND CONSOLIDATED CASES | **ISAAC LARIAN'S OPPOSITION TO**<br>**MATTEL, INC.'S MOTION TO**<br>**COMPEL RESPONSES TO FIRST**<br>**SET OF INTERROGATORIES**<br>**(PHASE 2)** |
| | [DECLARATION OF DANIEL M.<br>HAYES FILED CONCURRENTLY] |
| | Date:   TBD<br>Time:   TBD<br>Place:   TBD<br>Phase 2<br>Discovery Cutoff:   December 11, 2009<br>Pretrial Conference:  March 1, 2010<br>Trial Date:   March 23, 2010 |

Mitchell
Silberberg &
Knupp LLP

2281006.4

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................... 1

II.   THE INTERROGATORIES AND DEFINITIONS ....................................5

III.  MATTEL'S MOTION TO COMPEL SHOULD BE DENIED ................. 10

     A.    Standards For A Motion To Compel Discovery ............................. 10

     B.    Counsel For Mattel Failed To Meet And Confer In Good Faith ............................................................................................. 11

     C.    The Interrogatories Are Vague, Ambiguous, And Unintelligible .................................................................................. 15

     D.    The Interrogatories Are Overbroad And Seek Information That Is Not Relevant To Any Party's Claims Or Defenses .................................................................................... 16

          1.    The Interrogatories Seek Information That Is Not Relevant To Establishing Larian's Net Worth, And To The Extent That They Arguably Do, They Are Cumulative And Improper ................................................ 16

          2.    The Interrogatories Seek Information That Is Not Relevant To Mattel's New Fraudulent Transfer And Money Laundering Claims ......................................... 18

          3.    The Interrogatories Seek Information That Is Not Relevant To Mattel's Unfair Competition Claim ................... 20

     E.    The Interrogatories Are Unduly Burdensome, Oppressive, And Harassing ................................................................ 21

     F.    The Interrogatories Are Compound ................................................ 22

IV.  CONCLUSION ................................................................................... 24

Mitchell Silberberg & Knupp LLP

2281006.4

ISAAC LARIAN'S OPPOSITION TO MATTEL, INC.'S MOTION TO COMPEL RESPONSES TO FIRST SET OF INTERROGATORIES (PHASE 2)

Exhibit D - Page 376

Case 2:04-cv-09049-DOC-RNB Document 6626 Filed 09/10/09 Page 28 of 53 Page ID
Case 2:04-cv-09049-SGL-RNB Document 5775 Filed 06/26/2009 Page 3 of 28
#:218429

1    **<u>TABLE OF AUTHORITIES</u>**

2                                                                   <u>Page(s)</u>

3                         **<u>CASES</u>**

4    *Collaboration Properties, Inc. v. Polycom, Inc.*,
5        224 F.R.D. 473 (N.D. Cal. 2004) ............................................................. 23

6    *Cytodyne Technologies, Inc. v. Biogenic Technologies, Inc.*,
7        216 F.R.D. 533 (M.D. Fla. 2003) ............................................................ 11

8    *Denny v. Barber*,
9        73 F.R.D. 6 (S.D.N.Y 1977) ................................................................... 20

10   *Finkelstein v. Guardian Life Insurance Co.*,
11       2008 WL 2095786 (N.D. Cal. 2008) ....................................................... 15

12   *In re Sharp International Corp.*,
         403 F. 3d 43 (2d Cir. 2005) .................................................................... 19

13   *Industrial Electric Engineering and Testing Company v. Dynalectric*
14       *Company*,
15       1990 WL 80411 (D. Kan. 1990) .............................................................. 17

16   *McFarland v. Memorex Corp.*,
17       493 F. Supp. 631 (N.D. Cal. 1980) .................................................... 19, 20

18   *Mid-America Facilities, Inc. v. Argonaut Ins. Co.*,
19       78 F.R.D. 497 (E.D. Wisc. 1978) ............................................................ 17

20   *Pacific Lumber Co. v. National Union Fire Ins. Co. of Pittsburg*,
         2005 WL 318811 (N.D. Cal. January 5, 2005) .......................................... 24

21   *Robin Singh Educational Services, Inc. v. Excel Test Prep*,
22       2004 WL 2554454 (N.D. Cal. 2004) ........................................................ 15

23   *Safeco of America v. Rawsrton*,
24       181 F.R.D. 441 (C.D. Cal. 1998) ............................................................ 22

25   *Swackhammer v. Sprint Corp. PCS*,
26       225 F.R.D. 658 (D. Kan. 2004) .......................................................... 23, 24

27   *Webster Motor Car Company v. Packard Motor Car Company*,
28       16 F.R.D. 350 (D.D.C. 1954) ................................................................. 15

Mitchell
Silberberg &
Knupp LLP

2281006.4

Exhibit D - Page 377

Case 2:04-cv-09049-DOC-RNB Document 6626 Filed 09/10/09 Page 29 of 53 Page ID
Case 2:04-cv-09049-SGL-RNB Document 5775 Filed 06/26/2009 Page 4 of 28
#:218430

## <u>TABLE OF AUTHORITIES</u>
### <u>(continued)</u>

**Page(s)**

*Wing v. Challenge Machinery Company*,
    23 F.R.D. 669 (S.D. Ill. 1959) ............................................................ 21, 22


## <u>OTHER AUTHORITIES</u>

7 *Moore's Federal Practice*, § 33.30[2] (Matthew Bender 3d ed.) ...................... 22

Fed. R. Civ. Proc.
    9(b)...................................................................................................... 19

Fed. R. Civ. Proc. 26(b)(2)(C)(i) ........................................................................ 17

Fed. R. Civ. Proc. 26(b)(2)(C)(iii) ................................................................. 17, 22

Fed. R. Civ. Proc. 33(a)(1)............................................................................. 22, 24

Fed. R. Civ. Proc. 37(a) ....................................................................................... 10

Fed. R. Civ. Proc. 37(a) ......................................................................................... 3

Mitchell
Silberberg &
Knupp LLP

2281006.4

iii

ISAAC LARIAN'S OPPOSITION TO MATTEL, INC.'S MOTION TO COMPEL RESPONSES TO FIRST SET
OF INTERROGATORIES (PHASE 2)

Exhibit D - Page 378

Case 2:04-cv-09049-DOC-RNB Document 6625 Filed 09/10/09 Page 30 of 53 Page ID
Case 2:04-cv-09049-SGL-RNB Document 5775 Filed 06/26/2009 Page 5 of 28
#:218431

## I.  INTRODUCTION

Mattel egregiously mischaracterizes Interrogatory Nos. 1 and 2 of its First Set of Phase 2 Interrogatories to Isaac Larian (the "Interrogatories").  It does so by divorcing the Interrogatories from the lengthy, convoluted, and in many respects unintelligible definitions that accompany them.  Using this sleight of hand, Mattel claims that the Interrogatories seek only "information relating to Larian's and **his** trusts' ownership interests in business entities since 2005," Motion at 1:4-6 (emphasis added) and the identity of "the entities in which Larian and **his** trusts have held **significant** ownership interests since 2005."  Motion at 3:18-19 (emphasis added).  Not so.

In actuality, these sweeping, confusing, and downright harassing discovery requests are not limited to "significant ownership interests," nor are they limited to Mr. Larian and "his" trusts (whatever that means).  Instead, they demand information about **every** "ownership interest" held at any time since 2005, whether actual or "contingent, inchoate, potential or otherwise," in every conceivable form of business enterprise, including every purchase of a publicly traded stock in excess of $1,000, and regardless of whether or when that stock (or other "ownership interest") has since been sold.  Moreover, the Interrogatories seek such information not just for Isaac Larian and "his" trusts, but also for **at least** the following other persons and entities: (1) Mr. Larian's wife, (2) a trust established by Mr. Larian's wife; and (3) every trust of which **any** of Mr. Larian's relatives by blood or marriage is a beneficiary – no matter how distant the relative, and irrespective of whether that relative ever had any involvement with MGA or whether Mr. Larian ever had any interest in such trust.  But the Interrogatories do not stop there.  **In addition** to asking about actual, potential, contingent, inchoate and other "ownership interests" held by any of the foregoing persons and entities at any time during the past 4 1/2 years, the Interrogatories also demand the same

Mitchell
Silberberg &
Knupp LLP

2281006.4

1

ISAAC LARIAN'S OPPOSITION TO MATTEL, INC.'S MOTION TO COMPEL RESPONSES TO FIRST SET
OF INTERROGATORIES (PHASE 2)

Exhibit D - Page 379

information about "ownership interests" held *either* by (1) every beneficiary, trustee, attorney, agent, representative, accountant, vendor, consultant, or "PERSON"[1] "acting on behalf of" or "subject to the authority" of (a) four specifically identified trusts, (b) any trust of which Mr. Larian is a trustee, and (c) any trust of which any member of Mr. Larian's family by blood or marriage – no matter how distant – is a beneficiary, *or* by (2) every trust of which any member of Mr. Larian's family by blood or marriage – again, no matter how distant – ever was, or now is, a trustee, beneficiary, attorney, agent, representative, accountant, vendor, consultant, or PERSON acting on behalf or subject to such trust's authority and control. Since Mattel's counsel have flatly refused to clarify any of Mattel's incomprehensible definitions, it is impossible for Larian to know which of the aforementioned alternatives is the intended one. In either event however, the Interrogatories sweep far broader than the issues in this case even arguably warrant, yet Mattel's counsel have adamantly refused to narrow the Interrogatories in any way.

Mattel's Motion should be denied for at least the following reasons.

First, the Interrogatories are not properly tailored to seek relevant information. Mattel's relevance arguments are simply conclusory assertions that do not withstand scrutiny. Mattel contends that "Larian's ownership interests are unquestionably a part of his net worth" (Motion at 5:2-3), but it fails to explain how the "ownership interests" of a trust of which some distant cousin-by-marriage is a beneficiary, or the "ownership interests" of a vendor to a trust of which

---

[1] "PERSON" is defined as "all natural persons, partnerships, corporations, joint ventures and any kind of business, legal or public entity or organization, as well as its, his or her agents, representatives, employees, officers and directors and any one else acting on its, his or her behalf, pursuant to its, his or her authority or subject to its, his or her control.

1   Mr. Larian is a trustee, is in any way probative of Mr. Larian's net worth.[2]

2   Seemingly recognizing that its net worth argument is reed-thin at best, Mattel

3   claims – for the first time in the Motion – that the Interrogatories are relevant to its

4   newly minted Fraudulent Transfer and money laundering allegations – allegations

5   made in a pleading (the Third Amended Counterclaims ("TAC")) that was not

6   even on file when Mattel propounded the Interrogatories or when Larian responded

7   to them, and that Mattel never raised when it was going through its charade of

8   meeting and conferring with Larian's counsel.  As with its net worth arguments,

9   however, Mattel simply *says* that the Interrogatories are relevant to these claims,

10   but does not explain why.  That is hardly surprising.  The Interrogatories do not ask

11   about "ownership interests" acquired with MGA assets, which is the *sine qua non*

12   of Mattel's money laundering theory.  The Interrogatories are not limited to

13   "trusts" that used or received MGA assets, or even to "trusts" in which Larian

14   himself has or had an interest.  Indeed, it strains creative lawyering past the

15   breaking point for Mattel to contend that a purchase by Larian of $2,000 worth of

16   publicly traded stock in 2005 – two years before Mattel had even sued him or

17   MGA – is probative of a "complex scheme to transfer the ill-gotten funds … and

18   … cover up and obscure such activities."  Motion at 3:8-10.

19        Mattel's Motion also should be denied because Mattel's counsel failed to

20   meet and confer in good faith, in flagrant violation of Rule 37(a) of the Federal

21   Rules of Civil Procedure and the Discovery Master Order in this case.  The

22   Discovery Master thus far has refused to deny any of Mattel's torrent of discovery

23   motions on this ground, thereby cementing Mattel's belief that it need only give a

24

---

25  [2] Apparently in the belief that its mere *ipse dixit* is an acceptable substitute for logic, Mattel makes the remarkable statement that "the $1,000 interest threshold

26  [for publicly traded stock] is necessary to capture relevant information about net worth."  Motion at 7:3-4.  But Mattel does not, because it cannot, explain why a

27  $2,000 purchase and sale of a publicly traded stock in 2005 sheds light on Mr. Larian's net worth 4 1/2 years later.

28

Mitchell
Silberberg &
Knupp LLP

2281006.4

ISAAC LARIAN'S OPPOSITION TO MATTEL, INC.'S MOTION TO COMPEL RESPONSES TO FIRST SET OF INTERROGATORIES (PHASE 2)

Exhibit D - Page 381

1   perfunctory nod to the meet and confer process.  Enough is enough.  If Mattel and

2   its counsel are allowed to continue to flout their obligation to meet and confer in

3   good faith, then the Discovery Master might as well eliminate the meet and confer

4   requirement altogether, as its only purpose is to add the additional attorneys fees

5   attendant to meaningless communications on top of the already enormous fees the

6   MGA Parties are forced to incur in opposing Mattel's motions and paying half of

7   the Discovery Master's fees in connection therewith.

8           Here, counsel for Larian attempted in good faith to obtain clarification about

9   what the Interrogatories were seeking, and to discuss reasonable limitations on the

10  Interrogatories.  Those efforts were completely rejected.  Mattel's counsel flatly

11  refused to clarify the Interrogatories, simply reading back *verbatim* the

12  incomprehensible definitions that Larian's counsel had said they did not

13  understand.  Mattel's counsel were equally adamant in refusing to narrow the

14  Interrogatories in any way whatsoever, even though they were unable to explain,

15  for example, how Larian's $2,000 purchase of a publicly traded stock in 2005, and

16  his sale of that stock one week later, was relevant to any issue in this case.  *See*

17  Declaration of Daniel M. Hayes ("Hayes Decl.") ¶ 9.  If the Discovery Master does

18  not deny Mattel's Motion outright for ignoring the good faith component of its

19  duty to meet and confer, then Mattel's Motion must stand or fall based on its

20  position that the Interrogatories, as drafted, are entirely proper.  It is not the role of

21  the Discovery Master, nor should it be, to rewrite the Interrogatories by parsing

22  through the definitions and teasing out some combination of information included

23  therein that might arguably be relevant to some issue in the case.

24          Finally, Mattel's request that Larian's objections be overruled is utterly

25  without merit, and should be denied.  As discussed in more detail below, Mattel's

26  confusing, overlapping and compound definitions render the Interrogatories

27  virtually incomprehensible, and thus the objection on the grounds of vagueness and

Mitchell
Silberberg &
Knupp LLP

2281006.4

28

4

ISAAC LARIAN'S OPPOSITION TO MATTEL, INC.'S MOTION TO COMPEL RESPONSES TO FIRST SET
OF INTERROGATORIES (PHASE 2)                    Exhibit D - Page 382

1   ambiguity is more than well-taken.  All of the other objections that Mattel

2   challenges – that the Interrogatories are overbroad, unduly burdensome, and

3   impermissibly compound – are equally valid and should be sustained.

4   **II.     THE INTERROGATORIES AND DEFINITIONS**

5          On March 4, 2009, Mattel served its first set of interrogatories to Isaac

6   Larian (Phase 2).  <u>INTERROGATORY NO. 1</u> reads as follows:

7              IDENTIFY each and every ENTITY in which LARIAN[3]

8              has held, directly or indirectly, any OWNERSHIP

9              INTEREST at any time since January 1, 2005.  For

10             purpose of this Interrogatory, transactions involving the

11             purchase or acquisition of publicly traded stock in an

12             amount of $1,000 or less may be excluded.

13  Hayes Decl. ¶ 3, Ex. 2.

14         <u>INTERROGATORY NO. 2</u> reads as follows:

15             IDENTIFY each and every ENTITY in which any

16             LARIAN TRUST has held, directly or indirectly, any

17             OWNERSHIP INTEREST at any time since January 1,

18             2005.  For purpose of this Interrogatory, transactions

19             involving the purchase or acquisition of publicly traded

20             stock in an amount of $1,000 or less may be excluded.

21  *Id*.

22         Although these Interrogatories, read in a vacuum, appear simple, one must

23  follow a trail of lengthy, complicated, overlapping, ambiguous, and in some

24  respects unintelligible definitions in order to grasp what they actually request.

25

26  [3] "LARIAN" is defined to mean ***both*** Isaac Larian and his wife Angela Larian.  *See*
    Hayes Decl. ¶ 3, Ex. 2.  Angela Larian is not a party to this action.  Nowhere in its
27  Motion does Mattel even try to explain why it should be permitted to gather
    information about Angela Larian's separate investments.

28

Mitchell
Silberberg &
Knupp LLP

2281006.4

ISAAC LARIAN'S OPPOSITION TO MATTEL, INC.'S MOTION TO COMPEL RESPONSES TO FIRST SET
OF INTERROGATORIES (PHASE 2)

Exhibit D - Page 383

1   With one exception, Mattel's Memorandum of Points and Authorities conveniently

2   omits the Definitions, and the single Definition it does quote ("LARIAN TRUST")

3   is incomplete, because it fails to set forth the definition of another term

4   ("PERSON") that is included within the definition of "LARIAN TRUST." *See*

5   Motion at 8-9.

6       The Interrogatories define "LARIAN TRUST" as follows:

7           "LARIAN TRUST" means the Isaac and Angela Larian

8           Trust, Isaac Larian Grantor Annuity Trust, Angela Larian

9           Grantor Annuity Trust, Larian Family Trust and any

10          other trust of which Isaac Larian is a trustee or of which

11          any member of Isaac Larian's family, whether by blood

12          or marriage, is a beneficiary, the current or former

13          trustees, beneficiaries, attorneys, agents, representatives,

14          accountants, vendors, consultants or any other PERSON

15          acting on its behalf, [sic] subject to its authority and

16          control.

17  Hayes Decl. ¶3, Ex. 2.  It is unclear from this definition whether the portion that

18  begins "the current or former trustees, beneficiaries…" and ends with

19  "consultants" is intended to modify "any member of Isaac Larian's family," or is

20  intended to modify the various trusts described.  It is also impossible to determine

21  what is meant by the phrase "or any other PERSON acting on its behalf, subject to

22  its authority and control," because the word "it" has no antecedent, and use of the

23  word "it" in the definition is grammatically and logically unintelligible.

24      Further, to interpret the meaning of "LARIAN TRUST," one also must look

25  to the definition of "PERSON," since "PERSON" is part of the definition of

26  "LARIAN TRUST."

27      The Interrogatories define "PERSON" as follows:

28

Mitchell
Silberberg &
Knupp LLP
2281006.4

6

ISAAC LARIAN'S OPPOSITION TO MATTEL, INC.'S MOTION TO COMPEL RESPONSES TO FIRST SET
OF INTERROGATORIES (PHASE 2)                    Exhibit D - Page 384

"PERSON" or "PERSONS" means all natural persons,
partnerships, corporations, joint ventures and any kind of
business, legal or public entity or organization, as well as
its, his or her agents, representatives, employees, officers
and directors and any one else acting on its, his or her
behalf, pursuant to its, his or her authority or subject to
its, his or her control.

*Id*. Thus, for example, if the words "the current or former trustees, attorneys, agents, representatives, accountants, vendors, consultants or any other PERSON acting on its behalf," are intended to modify the various types of trusts described, then the definition of "LARIAN TRUST" includes (among *many* others) employees, attorneys, accountants, consultants and vendors of any trusts of which any relative of Mr. Larian by blood or marriage is a beneficiary – no matter how distant the relationship between Mr. Larian and the relative, and regardless of whether such distant relative ever had any involvement with MGA or Bratz – *as well as* every agent, or person acting on behalf of the employees, attorneys, accountants, consultants and vendors of the distant-relative-beneficiary's trust. "LARIAN TRUST" also conceivably includes, for example, a paralegal working on trust matters in the office of an attorney for a trust of which a distant relative by marriage of Mr. Larian's is a beneficiary, because if the word "it" refers to such a trust, the clause "PERSON acting on its behalf" would sweep such a paralegal within the definition of "LARIAN TRUST." Examples of such absurdities abound, yet Mattel and its counsel refused to clarify the definition of "LARIAN TRUST" or limit it in any way.

Assuming Larian can identify who or what falls within the definition of "LARIAN TRUST," he is then required to "IDENTIFY" every "ENTITY" in which each such "who or what" has an "OWNERSHIP INTEREST." This, in turn,

Mitchell
Silberberg &
Knupp LLP

2281006.4

7

ISAAC LARIAN'S OPPOSITION TO MATTEL, INC.'S MOTION TO COMPEL RESPONSES TO FIRST SET OF INTERROGATORIES (PHASE 2)

Exhibit D - Page 385

1  requires reference to three additional definitions, one of which ("OWNERSHIP

2  INTEREST") requires reference back to the defined terms "ENTITY" and

3  "PERSON."

4      The Interrogatories define "OWNERSHIP INTEREST" as follows:

5          "OWNERSHIP INTEREST" means any right, title or

6          interest of any kind, whether legal, beneficial, past,

7          present, future, contingent, inchoate, potential or

8          otherwise, and includes without limitation any right, title,

9          interest or power that a PERSON possesses or may

10         possess, directly or indirectly, from any contract,

11         arrangement, understanding, relationship or otherwise, to

12         direct, control, dictate or vote on the actions or potential

13         or proposed actions of an ENTITY, and includes without

14         limitation securities, stock, shares, warrants, options,

15         membership interests, partnership interests, voting

16         interests, equity interests, simple ownership, debt or other

17         non-security obligations that may be convertible to equity

18         or other interests and any right, interest; [sic] or any

19         right, title, interest, power, title, agreement or

20         understanding to receive, directly or indirectly,

21         distributions of value from an ENTITY.

22  *Id.* Among other problems with this convoluted and seemingly open-ended

23  ("without limitation") definition is the language "may possess," which creates the

24  unanswerable question of how one is to distinguish between a right, title, interest

25  or power that a person "possesses," and a right, title, interest or power that a person

26  "may" possess.

27      The Interrogatories define "ENTITY" as follows:

Mitchell
Silberberg &
Knupp LLP

2281006.4

28

ISAAC LARIAN'S OPPOSITION TO MATTEL, INC.'S MOTION TO COMPEL RESPONSES TO FIRST SET
OF INTERROGATORIES (PHASE 2)

1         "ENTITY" means any and all business enterprises of any

2         kind, including without limitation any and all

3         partnerships, corporations, companies and joint ventures,

4         trusts, associations, limited liability companies or sole

5         proprietorships.

6 *Id.* Finally, the Interrogatories define "IDENTIFY" as follows:

7         "IDENTIFY" or "IDENTITY" [sic] means to state, fully

8         and separately as to each ENTITY, such ENTITY's full

9         name; taxpayer identification number or other

10         governmental identifying number of [sic] the ENTITY is

11         not registered in the United States; state or country of

12         creation, incorporation or organization or registration; the

13         date of incorporation, organization, creation and/or

14         registration; the type of ownership interest that YOU

15         hold or did hold; the percentage of YOUR ownership in

16         each ENTITY; the date(s) on which YOU held such

17         ownership interest; each title or position that YOU have

18         had with each such ENTITY, if any, and the date(s) on

19         which YOU held such title or position; the current

20         address of each entity; the present or last known

21         telephone number of each entity; and the name and

22         current address of each such ENTITY's agent(s) for

23         service of process or, if not such agent has been

24         designated, the then name, current address and current

25         telephone number of each officer, director, managing

26         agent and general agent of such ENTITY.

27

28

Mitchell
Silberberg &
Knupp LLP

2281006.4

9

ISAAC LARIAN'S OPPOSITION TO MATTEL, INC.'S MOTION TO COMPEL RESPONSES TO FIRST SET OF INTERROGATORIES (PHASE 2)

Exhibit D - Page 387

1  *Id.*  Although the definition of "IDENTIFY" includes the capitalized term

2  "YOUR," there is no definition of "YOUR."  Necessarily, therefore, "YOUR"

3  must be a reference to Mr. Larian himself, since the Interrogatories are directed to

4  him.  This leads to the following result, by way of example:  If a distant relative by

5  marriage of Mr. Larian's is a beneficiary of a trust in which Mr. Larian has and had

6  no involvement whatsoever, and that trust purchased $10,000 of General Electric

7  Stock in 2005, Mr. Larian must state whether he, individually, ***ever*** owned stock in

8  General Electric, what percentage of that enormous public company his

9  stockholdings represented, the name, address and telephone number of every

10  General Electric officer and director, and the like.  Obviously, such information is

11  not even arguably relevant to any issue in this case, yet Mattel rejected Mr.

12  Larian's request that it consider limiting the vast sweep of these Interrogatories or

13  in some way clarifying them.

14  **III.  MATTEL'S MOTION TO COMPEL SHOULD BE DENIED**

15      **A.  <u>Standards For A Motion To Compel Discovery</u>**

16      To prevail on its Motion to Compel, Mattel must satisfy both procedural and

17  substantive burdens.  It has satisfied neither.

18      First, a party filing a motion to compel discovery must "meet and confer" ***in***

19  ***good faith***.  Fed. R. Civ. Proc. 37(a) (emphasis added).  As discussed hereafter,

20  Mattel not only failed to meet and confer in good faith, but it is now moving to

21  compel based on arguments its counsel never raised with Mr. Larian's counsel as

22  support for its position, and that are based on a pleading that was not even on file

23  when Mattel propounded the Interrogatories – or when Mr. Larian served his

24  responses.  It thus appears that the TAC was filed to justify the discovery sought,

25  not that the Interrogatories were propounded in aid of the TAC.

26      Second, as a substantive matter, Mattel, as the moving party, bears the

27  burden of "establishing that the information sought is relevant and necessary to its

Mitchell
Silberberg &
Knupp LLP
2281006.4

28

1  lawsuit." *Cytodyne Technologies, Inc. v. Biogenic Technologies, Inc.*, 216 F.R.D.

2  533, 534 (M.D. Fla. 2003); *see also* Ex. 9 to Zeller Decl.: Order No. 3 at 14:21-25

3  (*quoting Cytodyne Technologies, Inc.*).  Mattel's conclusory arguments about the

4  putative relevance of the Interrogatories are not sufficient to meet its burden.

5  **B.  Counsel For Mattel Failed To Meet And Confer In Good Faith**

6  Preliminarily, Mattel has failed to comply with the procedural prerequisite to

7  its Motion, i.e. a good faith attempt to resolve the matter informally.  Mattel's

8  Motion to Compel was a foregone conclusion.  Throughout its perfunctory meet

9  and confer communications, Mattel refused to limit or even explain either

10  Interrogatory.  Instead, as it has done in its Motion, Mattel simply pronounced, in

11  conclusory fashion, that the information sought by the Interrogatories is relevant,

12  and that the definitions are clear.  Hayes Decl. ¶¶ 9, 12.  The details of the parties'

13  communication are set forth in the accompanying declaration of Daniel M. Hayes.

14  Briefly:

15  On April 15, 2009, Jon Corey of Quinn Emanuel Urquhart Oliver & Hedges,

16  LLP ("Quinn Emanuel"), one of Mattel's lawyers, requested a meet and confer

17  conference concerning the objections to Mattel's Interrogatories that Larian had

18  timely served 12 days earlier.  Hayes Decl. ¶ 4, Ex. 3; ¶ 5, Ex. 4.

19  On April 17, 2009, Daniel M. Hayes of MSK, wrote to accept Mr. Corey's

20  invitation to meet and confer, noting that "[w]e are willing to provide information

21  consistent with the Discovery Master Orders, but the Interrogatories (to the extent

22  we understand them) are not confined to such matters."  Hayes Decl. ¶ 6, Ex. 5.

23  (Mattel carefully omits this letter from the exhibits in support of its Motion.)

24  Mr. Hayes also observed that Mr. Corey had claimed in his April 15 letter "that

25  Mattel 'recently discovered that Larian has been transferring assets from MGA by

26  using single-purpose companies' to purchase Bratz products," and he asked Mr.

27  Corey to "[p]lease identify these 'single-purpose companies' before our call next

Mitchell Silberberg & Knupp LLP
2281006.4

28

11

ISAAC LARIAN'S OPPOSITION TO MATTEL, INC.'S MOTION TO COMPEL RESPONSES TO FIRST SET OF INTERROGATORIES (PHASE 2)

Exhibit D - Page 389

1    week, since we cannot have a meaningful discussion unless we know what

2    companies you are referring to." *Id*. Despite having claimed to have made this

3    "recent discovery," neither Mr. Corey nor anyone else on behalf of Mattel ever

4    responded to Mr. Hayes' inquiry, nor is there any mention of this putative

5    discovery in Mattel's Motion.[4]

6          On April 21, 2009, Mr. Hayes and Richard Sheldon of MSK had a telephone

7    conference with Tamar Buchakjian of Quinn Emanuel regarding the

8    Interrogatories. Hayes Decl. ¶ 7. When Mr. Hayes asked Ms. Buchakjian to state

9    in clear, plain terms what information Mattel was seeking in the Interrogatories, so

10   that both parties could at least agree on that, her only response was to read back the

11   definitions, *verbatim*. *Id*. When Mr. Hayes asked Ms. Buchakjian to clarify

12   Mattel's definition of "LARIAN TRUST," Ms. Buchakjian replied that she could

13   not clarify it beyond what was in the definition. *Id*. Parroting back language one

14   has just been told is confusing, with no effort to further explain it, is not meeting

15   and conferring at all, let alone in good faith.

16         When Mr. Hayes asked why the vast amount of information apparently

17   sought by the Interrogatories was relevant, Ms. Buchakjian replied that the

18   Interrogatories sought information relevant to determining Larian's net worth.

19   Hayes Decl. ¶ 8. Mr. Hayes then asked Ms. Buchakjian whether she thought that a

20

21   [4] Showing a remarkable talent for misstating the facts, Mattel asserts in a footnote
     that "[d]uring the meet and confer process, Larian demanded that *Mattel* identify
22   the 'single purpose companies' other than IGWT that purchased Bratz from MGA
     at an extreme discount. This, however, is precisely the type of information that
23   Mattel seeks to obtain through the Interrogatories; only Larian, not Mattel can
     provide it." Motion at 4, fn. 22. What Mattel fails to disclose, however, is that it
24   was *Mattel*, not Larian (emphasis in original), that claimed to have knowledge of
     some single purpose entities other than IGWT that supposedly were being used to
25   transfer MGA assets. Larian had (and has) no knowledge of any such conduct, and
     his counsel therefore asked Mr. Corey to explain what he was talking about. The
26   fact that Mattel's counsel never responded to that question strongly suggests that
     the assertion in Mr. Corey's April 15 letter was pure fabrication – just like the
27   "information and belief" allegations of financial impropriety that Mattel alleges in
     its TAC.

28

Mitchell
Silberberg &
Knupp LLP

2281006.4

2005 transaction in which Larian bought $2000 worth of publicly traded stock and sold it a week later needed to be identified in response to Interrogatory No. 1. Hayes Decl. ¶ 9. Ms. Buchakjian said yes. *Id*. But despite Mr. Hayes' prodding, Ms. Buchakjian did not (presumably, because she could not) explain how such information would shed light on Mr. Larian's net worth at trial. *Id*.

During the April 21 conversation, Mr. Sheldon and Mr. Hayes proposed that the parties consider limiting the definition of "LARIAN TRUST" and the temporal scope of both Interrogatories, and raising the "more than $1000" threshold in each Interrogatory. Hayes Decl. ¶ 10. The parties agreed to consult with their respective clients about such limitations and to speak further in another call.

That second call took place on April 23, 2009. Mr. Hayes again asked Ms. Buchakjian whether she would provide a more intelligible definition of "LARIAN TRUST" and a plain English statement of what information was covered by the Interrogatories. Hayes Decl. ¶ 12. Ms. Buchakjian refused to do so. *Id*. In an effort to demonstrate how confusing the definition of "LARIAN TRUST" is, Mr. Hayes asked Ms. Buchakjian to explain who would be a person subject to the control of any trust of which one of Larian's relatives by blood or marriage was a "vendor." Hayes Decl. ¶ 13. Ms. Buchakjian could not provide an answer. *Id*. She also stated that her client was not willing to narrow the scope of the Interrogatories in any way. Hayes Decl. ¶ 14.

On April 23, 2009, in a letter following the call, Mr. Hayes made his fourth request that Ms. Buchakjian "(1) clarify the interrogatories as I requested in my April 22 letter to you, and (2) engage in meaningful, good faith efforts to narrow your client's interrogatories." Hayes Decl. ¶ 15, Ex. 7. Ms. Buchakjian did not respond.

On April 29, 2009, Ms. Buchakjian wrote to Mr. Sheldon that "Mattel has no alternative but to move to compel." Hayes Decl. ¶ 16, Ex. 8. On May 1, 2009,

Case 2:04-cv-09049-DOC-RNB Document 6675 Filed 09/10/09 Page 43 of 53 Page ID
Case 2:04-cv-09049-SGL-RNB Document 5975 Filed 06/26/2009 Page 18 of 28
#:218444

1  Mr. Hayes reiterated to Ms. Buchakjian that Mr. Larian was "willing to respond

2  substantively to interrogatories that are appropriately limited in terms of scope and

3  subject matter," and asked Ms. Buchakjian to let him know if she was prepared to

4  "discuss limiting the interrogatories." Hayes Decl. ¶ 17, Ex. 9. Mr. Hayes did not

5  receive a response to his May 1, 2009 letter. On Friday, June 19, 2009, Mattel

6  filed its Motion without any further meet and confer efforts. Hayes Decl. ¶ 18.

7      It is not meeting and conferring at all, let alone with the requisite good faith,

8  to flatly refuse to explain language an opposing counsel has said he does not

9  understand, to flatly refuse to place any limitations whatsoever on discovery

10  requests that are so sweeping as to encompass clearly irrelevant matter, or to file

11  motions to compel based on arguments never raised or discussed with opposing

12  counsel. Too many lawyers, from too many firms, have expressed under oath their

13  frustration at the perfunctory nature of Mattel's supposed "meeting and

14  conferring." Meeting and conferring in good faith means more than just having a

15  phone call and saying "no," unless there is some legitimate reason for that "no."

16  There is no legitimate reason here. At a minimum, Mattel could have, and should

17  have, made *some* attempt to clarify the definitions that govern the Interrogatories.

18  Likewise, Mattel could have, and should have, at least agreed to limit the

19  Interrogatories so as to exclude some of the more obviously irrelevant information

20  (*e.g.,* defining a "Larian Trust" as either a "lawyer or vendor," or as a trust to

21  which a distant relative by marriage is a lawyer or vendor, depending on how the

22  ambiguous language of "LARIAN TRUST" is interpreted. *See* discussion in

23  Section II, *supra*).

24      At some point, the Discovery Master must require Mattel to do more than

25  give lip service to its meet and confer obligation. The only way to do so is to deny

26  this Motion unless and until Mattel engages in a meaningful attempt to resolve this

27

28

Mitchell
Silberberg &
Knupp LLP

2281006.4

ISAAC LARIAN'S OPPOSITION TO MATTEL, INC.'S MOTION TO COMPEL RESPONSES TO FIRST SET
OF INTERROGATORIES (PHASE 2)

Exhibit D - Page 392

1   discovery dispute through the meet and confer process.  Otherwise, there is no

2   reason to have a meet and confer requirement.

3   **C.   The Interrogatories Are Vague, Ambiguous, And Unintelligible**

4   Mattel refused to clarify what information it seeks in the Interrogatories,

5   instead simply parroting back the convoluted definitions, *verbatim*, without further

6   explanation.  Mattel does not do any better in the Motion.  For instance, Mattel

7   simply quotes the definition of "LARIAN TRUST," and then pronounces, "[t]here

8   is nothing vague and ambiguous about this definition[.]"  Motion to Compel at

9   8:17-9:5.  But saying this does not make it true.

10   Indeed, the proverbial proof is in the pudding.  Mattel's own counsel could

11   not explain what entities would be covered by "LARIAN TRUST."  Hayes Decl.

12   ¶ 13.  Nor could she explain what was meant by the language that defines

13   "OWNERSHIP INTEREST" as including "any right, title, interest or power that a

14   PERSON possesses *or may possess*, directly *or indirectly*, from any contract,

15   arrangement, understanding, relationship *or otherwise*."  Hayes Decl. ¶ 17, Ex. 9

16   (emphasis added).  Larian is not required to guess what the Interrogatories mean.

17   *See Webster Motor Car Company v. Packard Motor Car Company*, 16 F.R.D. 350,

18   351 (D.D.C. 1954) ("an interrogatory must be specific in order that it need not be

19   necessary for the party that is being examined to exercise discretion or judgment in

20   determining what is intended to be covered by the interrogatory").

21   It is not the Court's (or Discovery Master's) duty to rewrite interrogatories.

22   *See Finkelstein v. Guardian Life Insurance Co.*, 2008 WL 2095786, *2 (N.D. Cal.

23   2008) (court would "not rewrite plaintiff's overbroad discovery request," stating

24   that "Rule 26 does not require the Court to rewrite discovery requests for the

25   parties.") (*quoting Robin Singh Educational Services, Inc. v. Excel Test Prep*, 2004

26   WL 2554454, *1 (N.D. Cal. 2004).  Since Mattel's Interrogatories are ambiguous

27

28

Mitchell
Silberberg &
Knupp LLP

2281006.4

ISAAC LARIAN'S OPPOSITION TO MATTEL, INC.'S MOTION TO COMPEL RESPONSES TO FIRST SET
OF INTERROGATORIES (PHASE 2)              Exhibit D - Page 393

1  at best, and since Mattel has refused to revise them in any way, Mattel's Motion
2  must be denied.

**D.      The Interrogatories Are Overbroad And Seek Information That Is Not Relevant To Any Party's Claims Or Defenses**

5      Mattel contends that the Interrogatories are relevant to the newly alleged
6  Fraudulent Transfer and money laundering claims in its TAC, and to the issue of
7  Mr. Larian's net worth.  But none of Mattel's conclusory arguments explains why
8  this is so.  The absence of explanation is telling.

**1.      The Interrogatories Seek Information That Is Not Relevant To Establishing Larian's Net Worth, And To The Extent That They Arguably Do, They Are Cumulative And Improper**

13     Mattel makes the bald pronouncement that "Larian's ownership interests are
14  unquestionably a part of his net worth."  Motion at 5:2-3.  While that statement
15  may be partially true, the Interrogatories are not limited to Larian's ownership
16  interests, let alone to interests that he currently holds.

17     Mattel fails to explain how it is probative of Mr. Larian's net worth to know,
18  for example, (1) the "ownership interests" of a trust of which a distant relative is a
19  beneficiary, but in which Mr. Larian has no interest whatsoever, (2) the "ownership
20  interests" of an attorney who works for, or a vendor who sells to, a trust in which
21  Mr. Larian does or does not have an interest, or (3) Mr. Larian's purchase of
22  $2,000 worth of publicly traded stock in 2005, which he sold one week later.  But
23  this is precisely the type of information the Interrogatories demand.  For Mattel to
24  argue that these interrogatories are "properly tailored to ascertain Larian's
25  interests" (Motion at 4:18) is ludicrous.

26     Further, even assuming "net worth" is a proper topic for discovery
27  propounded more than a year before the scheduled trial date, the Interrogatories are

Mitchell
Silberberg &
Knupp LLP
2281006.4

28

ISAAC LARIAN'S OPPOSITION TO MATTEL, INC.'S MOTION TO COMPEL RESPONSES TO FIRST SET OF INTERROGATORIES (PHASE 2)          Exhibit D - Page 394

Case 2:04-cv-09049-DOC-RNB Document 6626-5 Filed 09/10/09 Page 46 of 53 Page ID
#:218447
Case 2:04-cv-09049-SGL-RNB Document 5975 Filed 06/26/2009 Page 2 of 28

1    not limited to current "ownership interests."  Courts consistently refuse to order

2    years worth of financial discovery, where the purpose of the discovery is to

3    establish net worth.  *See, e.g., Mid-America Facilities, Inc. v. Argonaut Ins. Co.*, 78

4    F.R.D. 497, 498-99 (E.D. Wisc. 1978) (objection to requests for documents

5    involving defendant's financial status for a seven-year period was sustained when

6    plaintiff needed to know only defendant's current financial status for purposes of

7    its punitive damages claim); *Industrial Electric Engineering and Testing Company*

8    *v. Dynalectric Company*, 1990 WL 80411, *1 (D. Kan. 1990) (denying discovery

9    request for several years of financial discovery, stating request is "excessively

10   broad, and calls for much material that does not appear to the court to be relevant

11   to the punitive damages sought to be recovered").  Answering Mattel's sweeping

12   Interrogatories would impose the significant burden of searching for and

13   identifying utterly irrelevant transactions that would not shed any light at all on

14   Larian's net worth today.  The Motion must therefore be denied.  *See* Fed. R. Civ.

15   Proc. 26(b)(2)(C)(iii).

16        Moreover, even assuming (without conceding) that some information

17   relevant to Larian's current net worth is buried among the mountain of minutae

18   sought by these Interrogatories, "the court must limit the frequency or extent of

19   discovery otherwise allowed…if it determines that [] the discovery sought is

20   unreasonably cumulative or duplicative[.]"  Fed. R. Civ. Proc. 26(b)(2)(C)(i).  In

21   Order No. 11, the Discovery Master allowed discovery of documents sufficient to

22   identify Larian's net worth, reasoning that such information relates to Phase 2

23   damages issues.[5]  However, the Discovery Master specifically stated that ***"Larian***

24   ***should not be required to provide updated information concerning his net worth***

25   ***and gross income every few months***."  Ex. 10 to Zeller Decl.: Amended Order

---

[5] Larian objected to such "net worth" discovery then, and maintains that all such
discovery is inappropriate.  However, the Interrogatories go well beyond even what
was permitted in Order No. 11.

Mitchell
Silberberg &
Knupp LLP

2281006.4

17

ISAAC LARIAN'S OPPOSITION TO MATTEL, INC.'S MOTION TO COMPEL RESPONSES TO FIRST SET
OF INTERROGATORIES (PHASE 2)

Exhibit D - Page 395

No. 11 at n.6 (emphasis added). Pursuant to Order No. 11, Larian was required to supplement his 2008 responses to discovery about his net worth, and to produce documents "sufficient to calculate [his] net worth," documents sufficient to identify every account at any bank or financial institution that he (broadly defined) had ever had, or in which he ever had an interest, and documents sufficient to establish his gross income and the sources of same. *See* Ex. 10 to Zeller Decl.: Amended Order No. 11 at 3:7. Less than three months after having obtained Order No. 11, the insatiable Mattel is back at the well. Further discovery focused on Larian's net worth is cumulative of the discovery already allowed by Order No. 11, and contravenes the Discovery Master's admonition that Larian should not be forced to provide net worth discovery every few months.

### 2. The Interrogatories Seek Information That Is Not Relevant To Mattel's New Fraudulent Transfer And Money Laundering Claims

In conclusory terms (again), Mattel argues that the Interrogatories are relevant to its new fraudulent transfer and money laundering allegations (Motion at 3:17-4:4) because the Interrogatories supposedly seek "to determine to [sic] where MGA assets have been fraudulently transferred; to ascertain the financial transactions in which Larian has engaged with property derived from unlawful conduct; to assess how Larian has laundered and concealed his ill-gotten gains; and to enable Mattel to track the money Larian has siphoned from MGA." Motion at 3:19-4:4. But Mattel does not even attempt to explain *how* the information requested by the Interrogatories will enable such "determinations" and "assessments." The Interrogatories do *not* tie the information requested to any use or receipt of MGA assets, nor are they limited to information about Mr. Larian or trusts he controls. Instead, the Interrogatories demand the identification of every stock market transaction or other "ownership interest" in any public or private

1  entity since 2005 on the part of a host of persons and entities **other than** Larian,

2  regardless of whether those persons or entities had anything whatsoever to do with

3  MGA or any assets of MGA.  Likewise, the Interrogatories demand information

4  about Mr. Larian's "ownership interests" regardless of the source of funds used to

5  acquire those interests, and regardless of the time of acquisition.[6]  In short, these

6  Interrogatories are **not** designed to elicit information about "fraudulent transfers of

7  MGA assets" or about the use of proceeds from some unspecified "unlawful

8  conduct."[7]  They are designed to enable Mattel to aim its discovery artillery at any

9  person, firm or entity that may have had some tenuous connection to Isaac Larian.

10       In considering the propriety of these Interrogatories, it also is important to

11  remember that allegations of fraudulent transfer must be pleaded with specificity

12  under Rule 9(b) of the Federal Rules of Civil Procedure.  *See, e.g., In re Sharp*

13  *International Corp.*, 403 F. 3d 43, 56 (2d Cir. 2005).  This specificity requirement

14  is "designed to discourage this 'sue first, ask questions later' philosophy."

15  *McFarland v. Memorex Corp.*, 493 F. Supp. 631, 639 (N.D. Cal. 1980) (internal

16  citations and quotations omitted).  But "sue first ask questions later" is exactly

17  what Mattel is attempting to do here.  In its new fraudulent transfer claim, Mattel

18  has not specifically alleged any fraudulent transfer other than the alleged transfer

19  of Bratz inventory to the IGWT Group.  The Interrogatories have nothing to do

20  with the alleged transfer of Bratz inventory from MGA to the IGWT Group.

21

22

23  _____

[6] As discussed above, the use of the term YOU in the definition of IDENTIFY,
24  coupled with the definition of LARIAN TRUST, removes any time limit for
certain information required to be provided.

25  [7] It is simply preposterous for Mattel to contend that information about a $2,000
stock market purchase by a vendor to a trust of which some distant relative of
26  Mr. Larian's is a beneficiary, and in which Mr. Larian has no involvement or
interest, will shed light on Mr. Larian's financial transactions **at all**, let alone his
27  supposed transactions involving property "derived" from some unidentified
"unlawful conduct."

Mitchell
Silberberg &
Knupp LLP
2281006.4      28

1    "Complaints should not be conceived merely as tokens, guaranteeing access
2    to a world of discovery."  *Denny v. Barber*, 73 F.R.D. 6, 10 (S.D.N.Y 1977).  *See*
3    *also McFarland*, 493 F. Supp. at 636-37 (in a case where allegations based on
4    "information and belief," noting that the "'detail following discovery' rationale has
5    been firmly rejected by the courts").  Indeed, Mattel's objective in filing its TAC
6    seems to have been to manufacture a basis for its harassing discovery.  In Order
7    No. 3, the Discovery Master denied Mattel's motion to compel certain financial
8    discovery because "Mattel's allegations in support of its RICO counterclaim turn
9    on misappropriation of trade secrets and confidential information, and make no
10   mention of improper transfers of funds or any other predicate act similar to MGA's
11   purported business transactions with any of the Financing Entities….Mattel has not
12   alleged any sort of financial scheme which would support inquiry into the MGA
13   Parties' financial transactions with third parties."   Ex. 9 to Zeller Decl.: Order No.
14   3 at 17:1-4; n.16.  Presumably in response to this defeat, Mattel simply included in
15   the TAC, on "information and belief," new allegations about improper transfers of
16   funds, that it now relies on those "information and belief" allegations as support
17   for its argument that it should have unfettered access to the sweeping discovery it
18   now seeks.

19           **3.      The Interrogatories Seek Information That Is Not Relevant**
20                   **To Mattel's Unfair Competition Claim**

21           Mattel contends that the Interrogatories are relevant to its unfair competition
22   claim, citing Discovery Master Order No. 3.  Motion at 4:7-19.  Order No. 3 does
23   not justify the blunderbuss discovery requests here at issue.
24           Preliminarily, in Order No. 3, the Discovery Master appears to have
25   misunderstood the timing of certain events and the content of the Court's
26   Constructive Trust Order.  The Discovery Master allowed certain discovery
27   pertaining to two specific entities ("IGWT") that had purchased Bratz inventory

Mitchell
Silberg &
Knupp LLP
28

2281006.4

ISAAC LARIAN'S OPPOSITION TO MATTEL, INC.'S MOTION TO COMPEL RESPONSES TO FIRST SET
OF INTERROGATORIES (PHASE 2)             Exhibit D - Page 398

1  from MGA, reasoning that the December 3, 2008 Constructive Trust Order

2  "imposes a constructive trust on the proceeds of MGA's sale of the subject

3  inventory [of Bratz products], and therefore MGA's sale of that inventory to Larian

4  "would constitute an unlawful attempt to circumvent the Court's order and

5  arguably render the transaction …an anti-competitive business practice…" *See*

6  Ex. 9 to Zeller Decl.: Order No. 3 at 27:14-19.  There are at least two flaws in this

7  analysis, of which Mattel is fully aware, but about which its Motion remains silent.

8  First, the sale of Bratz inventory to IGWT took place in July 2008, some 5 months

9  *before* the Court issued its December 3, 2008 Constructive Trust Order.  Second,

10  the Court's Constructive Trust Order did *not* impose a constructive trust over the

11  proceeds of the sale of Bratz products; it imposed a constructive trust only over

12  trade marks, service marks and domain names.  *See* Hayes Decl. ¶ 2, Ex. 1.

13  In any event, however, Order No. 3 authorized discovery only of the

14  ownership interests, if any, held by a specific and limited group of people in two

15  specific entities that had purchased Bratz inventory in supposed violation of a

16  Court order.  The discovery compelled by Order No. 3 in no way is analogous to a

17  demand for every "ownership interest" in any publicly or privately owned entity,

18  held by any host of persons and entities, during a 4 1/2 year period, irrespective of

19  whether the holder ever received or used MGA assets to acquire such an

20  "ownership interest," and regardless of whether the holder of the interest had or

21  has any relationship whatsoever with MGA or Bratz.

22  **E.      The Interrogatories Are Unduly Burdensome, Oppressive, And**

23  **Harassing**

24  Where, as here, interrogatories are so ambiguous that they become

25  burdensome, an objection on that basis should be sustained.  *See Wing v.*

26  *Challenge Machinery Company*, 23 F.R.D. 669, 673 (S.D. Ill. 1959) (sustaining

27  objection where interrogatories "are of such broad nature, so ambiguous and so

28

Mitchell
Silberberg &
Knupp LLP

2281006.4

21

ISAAC LARIAN'S OPPOSITION TO MATTEL, INC.'S MOTION TO COMPEL RESPONSES TO FIRST SET
OF INTERROGATORIES (PHASE 2)                    Exhibit D - Page 399

1  wanting in specificity that the same are burdensome and oppressive").  The

2  Interrogatories here at issue fall squarely within that category.  Hence, Larian's

3  objection is entirely proper.

4       Further, "the court must limit the frequency or extent of discovery otherwise

5  allowed by these rules or by local rule if it determines that [] the burden or expense

6  of the proposed discovery outweighs its likely benefit, considering the needs of the

7  case, the amount in controversy, the parties' resources, the importance of the issues

8  at stake in the action, and the importance of the discovery in resolving the issues."

9  Fed. R. Civ. Proc. 26(b)(2)(C)(iii).  In this case, the burden clearly outweighs the

10  virtually nonexistent benefit to be gained by the Interrogatories.  As discussed

11  above, the Interrogatories are grossly overbroad, and seek information that is not

12  relevant.  The vague and incomprehensible nature of the Interrogatories only

13  increases the burden.  *See Wing*, 23 F.R.D. at 673, *supra*.  Mattel's Motion to

14  overrule Larian's objection should be denied for this additional reason.

15      **F.**    **The Interrogatories Are Compound**

16       A party may not serve more than 25 written interrogatories, "including all

17  discrete subparts."  Fed. R. Civ. Proc. 33(a)(1).  "When a subpart introduces a line

18  of inquiry that is separate and distinct from the inquiry made by the portion of the

19  interrogatory that precedes it, the subpart must be considered a separate

20  interrogatory no matter how it is designated."  7 *Moore's Federal Practice*,

21  § 33.30[2] (Matthew Bender 3d ed.).  By seeking the separate stock exchange

22  purchases and other "ownership interests" of Larian, his wife, attorneys, vendors,

23  accountants, consultants, and an indeterminate number of other persons and trusts

24  that might fall within the convoluted definition for "LARIAN TRUST," Mattel has

25  crammed innumerable discrete questions into two interrogatories.  *See Safeco of*

26  *America v. Rawsrton*, 181 F.R.D. 441, 446 (C.D. Cal. 1998) (denying motion to

27  compel in part and ruling that interrogatories that asked for the basis for a denial of

Mitchell
Silberberg &
Knupp LLP

28

2281006.4

22

ISAAC LARIAN'S OPPOSITION TO MATTEL, INC.'S MOTION TO COMPEL RESPONSES TO FIRST SET
OF INTERROGATORIES (PHASE 2)

Exhibit D - Page 400

1   each request for admission comprising a set of requests for admissions contained a

2   separate subpart for each request for admission); *Collaboration Properties, Inc. v.*

3   *Polycom, Inc.*, 224 F.R.D. 473, 475 (N.D. Cal. 2004) (denying motion to compel

4   and ruling that interrogatories asking for information about 26 different products

5   contained 26 different discrete subparts). The compound nature of the

6   Interrogatories created by the definitions of LARIAN and LARIAN TRUST is

7   further exacerbated by the independently compound definition of "IDENTIFY,"

8   which requires numerous and discrete categories of information about **both** the

9   ENTITY in which an interest has been acquired (*e.g.* name, taxpayer information,

10   place and date of creation, address, telephone number, agent for service of process,

11   addresses and telephone numbers of every officer, director and managing agent)

12   **and** about the details of any interest Larian may ever have had in such entity (*e.g.*

13   type of ownership interest he did or does hold, dates on which he held such an

14   interest, any title or position he ever had, percentage of ownership interest).

15       The cases cited by Mattel do not support its position that the Interrogatories

16   are not compound. In *Swackhammer v. Sprint Corp. PCS*, 225 F.R.D. 658 (D.

17   Kan. 2004), the Court considered an interrogatory which asked the responding

18   party to identify executives who had been disciplined but not terminated for certain

19   separately listed actions. *Swackhammer*, 225 F.R.D. at 663. After reciting the

20   standard that "an interrogatory containing subparts directed at eliciting details

21   concerning a 'common theme' should generally be considered a single question[,]"

22   but that "an interrogatory which contains subparts that inquire into discrete areas

23   should, in most cases, be counted as more than one interrogatory," the Court went

24   on to rule that the subparts in the interrogatory at issue **should be counted as**

25   **separate interrogatories**: "Turning to the disputed Fourth Interrogatory No. 8, the

26   Court finds that it contains five subparts that are not related to a common theme,

27

28 Mitchell Silberberg & Knupp LLP
2281006.4

1  and that it should therefore be counted as five separate interrogatories."

2  *Swackhammer*, 225 F.R.D. at 665.

3      In *Pacific Lumber Co. v. National Union Fire Ins. Co. of Pittsburg*, 2005

4  WL 318811 (N.D. Cal. January 5, 2005), an unreported decision, the Court found a

5  compound objection was not well-taken where the interrogatory at issue asked "the

6  same question regarding a ***common group of people***." *Pacific Lumber Co.*, 2005

7  WL 318811 at *7 (emphasis added). The "common group of people" consisted of

8  plaintiffs in a lawsuit. *Id.* Distinct remote trusts and each of their respective

9  "current or former trustees, beneficiaries, attorneys, agents, representatives,

10  accountants, vendors, consultants or any other PERSON acting on its behalf,

11  subject to its authority and control," (including natural persons and other entities),

12  to the extent they can be ascertained at all, do not constitute a "common group of

13  people."

14      To allow Mattel to jam numerous, discrete, and unrelated persons and

15  entities into a single, sweeping definition and then call that definition a "common

16  theme," violates the letter and the spirit of Rule 33(a)(1). Larian's objection to the

17  Interrogatories is proper, and Mattel's Motion to overrule it must be denied.

18  **IV.  CONCLUSION**

19      For all of the foregoing reasons, Larian respectfully requests that the

20  Discovery Master deny Mattel's Motion in its entirety.

21

22  DATED: June 26, 2009       RUSSELL J. FRACKMAN
                            PATRICIA H. BENSON

23                              MITCHELL SILBERBERG & KNUPP LLP

24

25                           By: /s/ Patricia H. Benson

26                              Patricia H. Benson
                            Attorneys for The MGA Parties

27

28

Mitchell
Silberberg &
Knupp LLP

2281006.4

ISAAC LARIAN'S OPPOSITION TO MATTEL, INC.'S MOTION TO COMPEL RESPONSES TO FIRST SET OF INTERROGATORIES (PHASE 2)

Exhibit D - Page 402