MELINDA HAAG (State Bar No. 132612)
mhaag@orrick.com
ANNETTE L. HURST (State Bar No. 148738)
ahurst@orrick.com
WARRINGTON S. PARKER III (State Bar No. 148003)
wparker@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105
Telephone:   +1-415-773-5700
Facsimile:   +1-415-773-5759

WILLIAM A. MOLINSKI (State Bar No. 145186)
wmolinski@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA  90017
Telephone:   +1-213-629-2020
Facsimile:   +1-213-612-2499

Attorneys for MGA Parties

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware Corporation<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS<br><br><br>[Public Redacted Version] | Case No. CV 04-9049 SGL (RNBx)<br><br>Consolidated with:<br>CV 04-9059<br>CV 05-2727<br><br>**DISCOVERY MATTER**<br><br>**[To be heard by Discovery Master Robert C. O'Brien]**<br><br>MGA ENTERTAINMENT, INC.'S EX PARTE APPLICATION FOR (1) ORDER TO SHORTEN TIME FOR RESPONSE AND PRODUCTION OF DOCUMENTS REGARDING GIFTS TO LAW ENFORCEMENT, AND (2) ORDER AUTHORIZING SERVICE OF DEPOSITION NOTICE AND COMPELLING DEPOSITION OF RICHARD DE ANDA IN ADVANCE OF COURT-ORDERED HEARING |

# EX PARTE APPLICATION

Plaintiff and Counter-Defendant MGA Entertainment, Inc. ("MGA") hereby applies ex parte for the following relief: (1) an order pursuant to Federal Rule of Civil Procedure 34(b)(2)(A) shortening time for Mattel to respond and produce documents in response to MGA's Third Set of Phase 2 Document Requests Nos. 170-173 requiring such response and production on September 14, 2009; and (2) an order pursuant to Rule 30(a)(2)(A)(ii) permitting the service of a further Notice of Deposition upon Richard de Anda and compelling his attendance at such deposition on September 16, 2009 at 1:00 p.m.  The grounds for this Application are as follows.

1.      On August 3, 2007, MGA served document requests Nos. 526 and 528 requesting all of Mattel's communications with and documents provided to law enforcement authorities regarding various persons and entities.

2.      On September 4, 2007, Mattel served responses to the requests.  In the initial set of responses, Mattel agreed to produce documents responsive to Request No. 526 seeking communications with law enforcement authorities, but objected to and refused to produce documents in response to Request No. 528.  In subsequent "corrected" responses, however, Mattel retracted its agreement to produce the documents responsive to Request No. 526.  One of the grounds upon which Mattel objected to Request No. 526 for communications with law enforcement authorities was that it was "duplicative" of prior requests.  Mattel did not make a representation, however, that the documents supposedly responsive to those prior requests that were also responsive to Request No. 526 had been produced.

3.      MGA first moved to compel production on these document requests in January 2008.  In February 2008, the stay of Phase 2 discovery was entered and the motion was thereafter ordered off calendar in light of the stay.  On February 6, 2009, after the stay was lifted, MGA renewed its motion to compel, and Mattel again opposed it.

- 1 -

4.     On March 13, 2009, in Discovery Master Order No. 6, the Discovery Master overruled Mattel's objections in their entirety and ordered compliance with document requests Nos. 526 and 528 requiring Mattel to produce documents evidencing its communications with law enforcement authorities.  The Order required that all "records of communications between Mattel and law enforcement officials shall be produced in the same format and order as they are maintained in the original files of [Mattel] as required by Federal Rule of Civil Procedure 34(b)(2)(E)(i).  Order No. 6 ¶5.  The Order further required that "the documents reflecting Mattel's communications with law enforcement officials shall include any and all enclosures, and documents transmitted as a group shall be marked in a manner that permits MGA to ascertain which pages constitute each individual transmittal." *Id.*  ¶6.

5.

6.     Mattel's production of documents pursuant to Order No. 6 did not include, however, any documents evidencing the communication of the package itself.  There was no cover letter or any other document communicating the package.  Nor was there any supplemental response to the request, or certificate of compliance with Order No. 6 by Mattel, itemizing the communication of the package from Mr. de Anda to███████and explaining that the package itself could not be provided because it had been conveyed to███████

7.     Mattel has not produced any other documents identifying the contents

1    of "the package" sent by Mr. de Anda to█████████

2         8.    Mr. de Anda was previously deposed in this action on December 19,

3    2007.  Mr. de Anda was not questioned about the e-mail from█████████or any of

4    the circumstances surrounding "the package," nor was he questioned more

5    generally about Mattel's communications with law enforcement authorities related

6    to the substance of its trade secret allegations.  M 0925946-46 had not yet been

7    produced by Mattel when Mr. de Anda was deposed.

8         9.    On July 27, 2009, MGA served a 30(b)(6) Notice regarding Mattel's

9    communications with governmental authorities, its collection and production of

10   documents responsive to Requests Nos. 526 and 528, and other topics.  Mattel

11   refused to produce a witness in response to the Notice, and MGA moved to compel

12   on August 18, 2009.  As part of that motion, MGA also moved to de-designate the

13   █████de Anda e-mail as AEO under the Protective Order.  The motions are fully

14   briefed, but the Discovery Master has not yet set a hearing date.

15        10.   On August 28, 2009, MGA served its Third Set of Phase 2 Document

16   Requests on Mattel.  A true and correct copy of those requests is attached hereto as

17   Exhibit A.  Three of the requests, Nos. 170-72, sought additional documents

18   concerning the█████de Anda e-mail, and a fourth, Request No. 173, sought

19   documents regarding any other packages sent to law enforcement authorities.

20        11.   In particular, Request No. 170 asked for "DOCUMENTS sufficient to

21   identify the entire contents of the 'package you sent' referenced in M 0925945."

22   Request No. 171 asked for "DOCUMENTS sufficient to calculate the retail value of

23   the entire contents of the 'package you sent' referenced in M0925945 at the time

24   the package was sent."  Request No. 172 asked for "All DOCUMENTS evidencing

25   or relating to the means and manner of conveyance of the 'package you sent'

26   referenced in M 0925945, including without limitation copies of forms submitted to

27   any public or private common carrier requesting the conveyance, receipts from any

28   common carrier, tracking information, customs declarations, and the like."  Request

MGA EX PARTE APP. FOR DOCS AND DEPO OF DE ANDA
CV-04-0049 SGL (RNBx)

No. 173 asked for "All DOCUMENTS relating, conveying, discussing or describing any package YOU sent to any other law enforcement authorities investigating any of the matters at issue in the TAAC."

12.    Mattel's date for response and production of documents in response to these requests is September 28, 2009.

13.    At the hearing on August 31, 2009, the Court inquired "what is this nonsense about the head of security of Mattel's giving gifts to the Canadian police?" 8/31/09 Hearing Tr. at 20:1-3. Mr. Zeller responded that it was "hyperbole on MGA's part that is not substantiated by the record." The Court then inquired further, stating "I don't know whether it's substantiated or not. Did it happen." Mr. Zeller then responded, "No." After saying "no," however, Mr. Zeller went on to concede that Mr. de Anda had given something to the Canadian police. Mr. Zeller represented to the Court that the contents were "a few toy police cars, like less than ten." 8/31/09 Hearing Tr. at 20:10-13. A true and correct copy of the hearing transcript is attached hereto as Exhibit B.

14.    On September 3, 2009, the Court ordered Mr. de Anda to appear on September 21, 2009 for a hearing. A true and correct copy of that order is attached hereto as Exhibit C.

15.    MGA seeks expedited production of the requested documents and a deposition of Mr. Anda in order to prepare for the Court-ordered hearing. Without production of the requested documents or an opportunity to depose Mr. de Anda regarding the documents, MGA will not be able to adequately prepare for the September 21 hearing. In particular, absent production of the requested documents (which MGA respectfully submits should have long since been produced in response to Order No. 6 anyway), MGA will not be able to prepare for cross-examination of Mr. de Anda regarding what exactly he sent to the Canadian police or whether he has given gifts to other law enforcement authorities. This information is exclusively within Mattel's control and MGA has no other means of

discovering the information without Mattel's compliance.  Additionally, with respect to Requests Nos. 170—72, they are very specific and limited, and since Mattel has already investigated this matter enough to make representations to the Court on August 31 about what was sent to the Canadian police, there can be no undue burden in producing these documents on shortened time.

16.     Additionally, absent examination of Mr. de Anda in deposition prior to the hearing, MGA will not be afforded a full and fair opportunity to ascertain the evidence in preparation for the hearing.  Mr. de Anda has never been examined regarding the package that he sent to█████████

17.     Accordingly, for the foregoing reasons, MGA respectfully submits that there is good cause for the Discovery Master to shorten time for response and production of documents in response to Phase 2 Requests Nos. 170-73 pursuant to Rule 34(b)(2)(A), and to permit service of a notice of deposition and to order the deposition of Mr. de Anda for not more than four hours in advance of the hearing pursuant to Rule 30(a)(2)(A)(ii).

18.     MGA respectfully requests that the production be ordered on September 14, and the deposition occur on the afternoon of September 16.

19.     This proposed schedule will also permit any pertinent information gleaned from the documents and deposition to be supplied to the Court in writing in advance of the September 21, hearing.

1     20.    On September 3, 2009 I sent an e-mail to counsel for Mattel asking

2   that they agree to the foregoing and informing them that MGA would seek ex parte

3   relief.  Mr. Proctor responded and declined to agree.

4   Dated: September 4, 2009        Respectfully submitted,

5                         ORRICK, HERRINGTON & SUTCLIFFE LLP

6

7                         By:

8                            Annette L. Hurst
                            Attorneys for MGA Parties

# Exhibit A

**Confidential--Attorney's Eyes Only
Filed Under Seal Pursuant to
Protective Order**

Name & Address:
JASON S. ANGELL (STATE BAR NO. 221607)
Orrick, Herrington & Sutcliffe LLP
405 Howard Street
San Francisco, California 94105
(415) 773-5700
(415) 773-5759 (Facsimile)

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

CARTER BRYANT

PLAINTIFF(S)

v.

MATTEL, INC., a Delaware Corporation

DEFENDANT(S).

CASE NUMBER:
CV 04-9049-SGL (RNBx)

## NOTICE OF MANUAL FILING

PLEASE TAKE NOTICE:

The above-mentioned cause of action has been designated as an electronically filed case. In accordance with General Order 08-02 and Local Rule 5-4 the following document(s) or item(s) will be manually filed. **List Documents:**

MGA Entertainment, Inc.'s Ex Parte Application for (1) Order to Shorten Time for Response & Production of Documents RE Gifts to Law Enforcement, and (2) Order Authorizing Service of Deposition Notice & Compeling Deposition of Richard De Anda in Advance of Court-Ordered Hearing.; and attached Exhibit A

**Document Description:**

☐ Administrative Record

☐ Exhibits

☐ Ex Parte Application for authorization of investigative, expert or other services pursuant to the Criminal Justice Act [see Local Civil Rule 79-5.4, Documents to be excluded, (h)]

☒ Other MGA Entertainment, Inc.'s Ex Parte Application for (1) Order to Shorten Time for Response & Production of Documents RE Gifts to Law Enforcement, and (2) Order Authorizing Service of Deposition Notice & Compeling Deposition of Richard De Anda in Advance of Court-Ordered Hearing.; and attached Exhibit A

**Reason:**

☒ Under Seal

☐ Items not conducive to e-filing (i.e., videotapes, CDROM, large graphic charts)

☐ Electronic versions are not available to filer

☐ Per Court order dated _____

☐ Manual Filing required (*reason*):

September 9, 2009
Date

/s/ Jason S. Angell
Attorney Name
MGA Parties
Party Represented

Note:   File one Notice in each case, each time you manually file document(s).

American LegalNet, Inc.
www.FormsWorkflow.com

EXHIBIT B

1          UNITED STATES DISTRICT COURT

2          CENTRAL DISTRICT OF CALIFORNIA

3              EASTERN DIVISION

4                 - - -

5     HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6

7   MATTEL, INC.,                    )
                                     )
8                    Plaintiff,      )
                                     )
9          vs.                       )  No. CV 04-09049
                                     )
10  MGA ENTERTAINMENT, INC., ET. AL., )
                                     )
11                   Defendants.     )
    _____ )  Motions
12

13

14              REPORTER'S TRANSCRIPT OF PROCEEDINGS

15                  Riverside, California

16                Monday, August 31, 2009

17                    2:14 P.M.

18

19

20

21

22

23            THERESA A. LANZA, RPR, CSR
              Federal Official Court Reporter
24             3470 12th Street, Rm. 134
              Riverside, California  92501
25                  951-274-0844
                WWW.THERESALANZA.COM

```
 1   APPEARANCES:

 2

     ON BEHALF OF MATTEL, INC.:
 3
                         QUINN EMANUEL
 4                       By:  JOHN QUINN
                              MICHAEL T. ZELLER
 5                            B. DYLAN PROCTOR
                         865 S. Figueroa Street,
 6                       10th Floor
                         Los Angeles, California  90017
 7                       213-624-7707

 8

 9   ON BEHALF OF MGA ENTERTAINMENT/ISAAC LARIAN:

10                       ORRICK, HERRINGTON & SUTCLIFFE, LLP
                         BY:  ANNETTE L. HURST
11                       BY:  WARRINGTON S. PARKER III
                         405 Howard Street
12                       San Francisco, California  90071-3144
                         213-687-5000
13
                         ORRICK, HERRINGTON & SUTCLIFFE, LLP
14                       BY:  WILLIAM A. MOLINSKI
                         405 777 South Figueroa Street,
15                       Suite 3200
                         Los Angeles, California  90017-5855
16                       213-612-2256

17

18   ON BEHALF OF OMNI 808:

19                       BINGHAM McCUTCHEN LLP
                         BY:  Peter N. Villar
20                       600 Anton Boulevard
                         Costa Mesa, CA  92626-1924
21                       714-830-0640

22

23

24

25
```

3

1                          I N D E X

2                                                     Page

3     Proceedings.................................    4

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1            Riverside, California; Monday, August 31, 2009; 2:14 P.M.

 2                                  -oOo-

 3            THE CLERK:  Calling calendar item 11, case number CV

 4     zero 4-9049-SGL, Mattel, Inc., versus MGA Entertainment, Inc.

 5            May we have counsel please come forward and state        02:14

 6     your appearances for the record.

 7            MS. HURST:  Good afternoon, Your Honor.

 8     Annette Hurst from Orrick for plaintiff/counter defendant MGA

 9     Entertainment and the other MGA parties.

10            MR. PARKER:  Warrington Parker of Orrick for MGA.        02:15

11            MR. MOLINSKI:  Bill Molinski, also appearing for MGA,

12     with Orrick.

13            MR. QUINN:  John Quinn, Mike Zeller, and

14     Dylan Proctor, for plaintiff Mattel.

15            THE COURT:  Good afternoon to you all.                   02:15

16            The Court has before it the three motions; I have the

17     preclusive relief related to Mr. Larian's hard drives; I have

18     the motion for clarification of the Court's order earlier this

19     summer; and a motion to amend the scheduling order.

20            I want to deal with the motion that's easiest off the    02:15

21     top, and that's the clarification.  The Court has in mind what

22     it meant, and I'll issue a clarifying order to that effect this

23     week.  I should have worded that carefully.  The footnote in

24     question certainly applied to both findings with respect to

25     willful infringement, and I did not mean to intend that it only  02:15
```

```
 1   applied to one; that is to say, that I was limiting that to the

 2   purposes of the order itself and not as a finding that would

 3   apply for all purposes.  But I'll make that clear in the

 4   Court's next order.  So I do not need to hear anything really

 5   on that.  But I do need to hear on this motion for preclusive      02:16

 6   relief and certainly the motion to amend the scheduling order,

 7   so let me begin with the motion for preclusive relief.

 8           I'll start by just giving you my sense, having read

 9   the papers.  I did receive the surreply and I did receive the

10   sur-surreply.  I read them, for what it's worth.  It is a          02:16

11   problem that these sur- and sur-surreplies are coming in

12   without leave of court, so I'm just going to ask on a going-

13   forward basis that we get leave of court to file those.  I

14   certainly understand that there are instances where there is a

15   need to file one, and this may very well be one of those          02:17

16   instances, to bring the Court's attention to the May 2008

17   protocol.  However, just go through the formality.  I certainly

18   know that everybody knows how to file in this courtroom, Lord

19   knows; so just do that on a going-forward basis.

20           So I have considered all of the papers.                   02:17

21           My sense is that on the issue of the hard drives, I

22   certainly don't believe there was anything wrong in the

23   Discovery Master's order not affording access to the hard drive

24   or the active files or the active drivers.  The problem,

25   though, does result -- a problem results when both sides'         02:17
```

6

```
 1   experts don't have access to the same information.

 2        There's got to be a level playing field here.  I'm

 3   open to any creative solution to level that playing field.  If

 4   both experts don't have access to the active hard drives, or if

 5   both do, I understand there's problems no matter which way we          02:18

 6   go.  If we get access, then there are all kinds of privilege

 7   issues, all kinds of issues related to ongoing information on

 8   there which would have to be screened.

 9        I suppose in some sense the easier approach is to

10   just exclude access to that for both sides.  But then, the MGA        02:18

11   expert has already had that access, and that's, I suppose, the

12   basis or part of their conclusion, as I understand it.  But

13   perhaps my understanding is mistaken on that.  And in the

14   interest of making sure that the jury and whoever is the

15   fact-finder has all of the truth before them, I suppose the          02:18

16   interest would be in favor of giving both sides that

17   information and then hashing it out and seeing where we are.

18        My tentative thought is that there seems to be an

19   imbalance right now which needs to be addressed somehow.

20        Those are my initial thoughts.                                  02:19

21        MS. HURST:  Thank you, your Honor.

22        Your Honor, there is a simple remedy to the problem

23   the Court has identified, which is a document request for the

24   files upon which the expert has relied.  Such a document

25   request was served and the MGA parties answered that they would      02:19
```

```
 1   produce such responsive documents; so in a sense, this is sort

 2   of a mountain out of a molehill.

 3           THE COURT:  I don't know if I see that as a solution,

 4   though.

 5           You're suggesting that they get what your experts        02:19

 6   have actually relied upon?

 7           MS. HURST:  Sure.

 8           So, for example, the whole purpose for this

 9   inspection was to determine whether there had been spoliation.

10           THE COURT:  Deletions, right.                            02:19

11           MS. HURST:  So if the information exists in another

12   file, an active file, and if our expert has relied on that --

13   and I think there is a substantial dispute about that, because

14   there's the issue of simply running the hash algorithm, which

15   is not looking at the content as opposed to looking at the     02:20

16   content -- but if our expert goes and looks at the content in

17   response to their expert's report that says "it appears to us

18   from the deleted files that this user-generated content has

19   been deleted," if our expert looks at that and then he goes and

20   finds it somewhere else, then we can simply print those files   02:20

21   out and give it to them with all of the custodial information

22   about where it was found on the drive.  And if they need to

23   inspect, for the limited purpose of confirming that it's found

24   there --

25           THE COURT:  That's where I was going to go.             02:20
```

| | |
|---|---|
| 1 | **MS. HURST:**  -- we can do that.  But you don't need to |
| 2 | give access to the whole thing in order to accomplish that. |
| 3 | **THE COURT:**  That address and what was found, might it |
| 4 | not also be important for them to know what's not there? |
| 5 | **MS. HURST:**  I would think the burden would be on us |
| 6 | to address everything they assert has been deleted. |
| 7 | **THE COURT:**  Mr. Zeller, what's your thought on this |
| 8 | solution? |
| 9 | **MR. ZELLER:**  I don't know if I would call it |
| 10 | creative, but this is along the lines of at least one proposal |
| 11 | that we had made in order to try and resolve this.  And to pick |
| 12 | up on the Court's last point, one problem in the kind of |
| 13 | limited or limitations that MGA's counsel is suggesting here is |
| 14 | that we still won't know if there's a criticism being leveled |
| 15 | against our expert for not looking. |
| 16 | Certainly, it's one thing if their expert goes so far |
| 17 | as to say, "Look, I looked in the active files, I found 90 out |
| 18 | of 100, and here they are." |
| 19 | But what it doesn't cover is something of the -- |
| 20 | whether it's exactly the same or a variation, I guess one can |
| 21 | have different opinions about what their expert has already |
| 22 | done.  But, one, he could just simply say "Mattel did not look |
| 23 | at the active files." |
| 24 | **THE COURT:**  I certainly accept your -- it would be |
| 25 | very unfair for any expert to come in here and criticize an |

02:21
02:21
02:21
02:21
02:22

Monday, August 31, 2009                      CV 04-09049-SGL      **Exhibit B**

```
 1    opposing party for not looking at something that the parties
 2    successfully precluded them from looking at.
 3              You would agree with that.
 4         MS. HURST:  Yes, certainly, your Honor.  And I would
 5    think a motion in limine would be the remedy for that.        02:22
 6         THE COURT:  Right.  That's something that we
 7    understand that here and now that that's not going to happen.
 8              So putting that issue aside then, Mr. Zeller, what
 9    about this proposal dealing with the rest of your --
10         MR. ZELLER:  I think that is substantially along the    02:22
11    lines of what we had been proposing.
12              We've never said that we want to see every single
13    active file on those drivers; that has never been our position.
14         THE COURT:  What I like about this solution is that
15    it doesn't go down that road of getting into all of the active 02:22
16    files and all of the potential privilege and the quagmire that
17    I can see erupting if that was all turned over.  So this sounds
18    good.
19         MR. ZELLER:  I think so.  And obviously, subject
20    to -- ultimately, once we get information in hard copy printout 02:23
21    form, then if we need access to actually look at the data or
22    whatever it is that's actually associated with those particular
23    files, that is also along the lines of what we were
24    contemplating, just so that that's clear.
25         THE COURT:  Okay.                                        02:23
```

1          Anything further?

2          **MS. HURST:**  No thank you, your Honor.

3          **THE COURT:**  Very good.  That takes care of that

4    motion.

5          So the motion is basically resolved by the                    02:23

6    stipulation of the parties, and the record here reflects that

7    agreement.  If there's any concern about what that entails, the

8    Court will take that up, but I trust that we can go forward,

9    then, with this understanding in mind.

10         As far as the motion to amend the scheduling order,           02:23

11   the Court has given a lot of thought to this; it has a lot of

12   concern about this.

13         The biggest initial concern I have is that I know

14   that there is harboring over the case a fourth amended answer

15   and cross claim, and my concern is what impact that might have    02:24

16   on the case if the Court were to grant that motion to amend.

17         I guess I'm concerned about even discussing a

18   scheduling order now, or modifications to the scheduling

19   order -- you have to excuse me, I've got a terrible head cold

20   right now -- the Court is concerned about modifying that          02:24

21   schedule now, only to be facing potentially a much different or

22   expanded or larger case.  And frankly, my concern is

23   underscored by my recollection that Mattel was quite emphatic

24   that the third amended answer and cross claim would not expand

25   this case dramatically, and now here we are seeking an 8-month    02:25

1    continuation of discovery, which, frankly, I'm really not

2    inclined to grant, certainly at this point.  But this kind of

3    plays into the fourth amended answer.

4            I mean, this case has got to come to a head at some

5    point in time.                                              02:25

6            Part of the concern I have is that we seem to be --

7    I'm going to be oversimplistic here in trying to describe

8    this -- but the RICO claim, the phase two, while it was

9    certainly not just related to Bratz, my understanding that the

10   gravamen of the allegation there was that in addition to the   02:25

11   copyright infringement alleged in phase one, that MGA, as a

12   company and through its other affiliates, was engaged in acts

13   that were designed to compromise Mattel's integrity, either by

14   stealing ideas or stealing employees or what have you; that it

15   was all related to this notion of theft, of commercial theft.  02:26

16   Those were the allegations, and it was brought together in a

17   RICO claim.

18           Now we seem to have added these perjury counts, or

19   perjury claims, that stem from the trial, and now this whole

20   Wachovia debt transaction, which is a post-trial act, seems to  02:26

21   be getting us farther afield from what was the core of that

22   second phase.  And while I'm certainly reluctant to suggest

23   that we somehow sever that out into a third phase -- something

24   about the myth of hydra comes to mind -- but I really want to

25   make sure that we get a handle on what it is that we're        02:26

```
 1    supposed to be trying now, as opposed to -- I don't want to

 2    call it a moving target, because I don't want to suggest that

 3    the claims that have been brought as a matter of law are not

 4    properly brought.  It's just that from a case management

 5    perspective, I'm developing some concerns about where this all      02:27

 6    is going.

 7              So that's where I'm at on that.

 8              I'll hear from counsel in response to some of those

 9    thoughts.

10         MR. QUINN:  Good afternoon, your Honor.                        02:27

11         THE COURT:  Good afternoon, Mr. Quinn.

12         MR. QUINN:  I understand the Court's concern.  Phase

13    two has transmuted, to some degree.

14         THE COURT:  Yes.

15         MR. QUINN:  I think, though, that that's in response          02:27

16    to subsequent events, from things that happened last year and

17    from things that we've come to learn as time has gone by.

18              In terms of the fourth amended complaint, that will

19    add some additional parties, but it's all within the scope of

20    the existing allegations.                                          02:27

21         THE COURT:  As I understand it -- I really have not

22    focused on it a whole lot, but as I understand it, that largely

23    relates to the Wachovia debt transaction and the spillout, the

24    aftermath of that.  Is that correct?

25         MR. QUINN:  Yes; that's correct, your Honor.                  02:28
```

```
 1            If the Court's preference is to address this issue

 2   about whether the present schedule should be modified, to defer

 3   that until the pleadings are settled on that, we would not have

 4   any objection to that.

 5            My burden is to demonstrate to the Court that based      02:28

 6   on the existing complaint, but notwithstanding the fact that

 7   we've been diligent, we cannot, for reasons which are not our

 8   fault, be fairly expected to be ready to try the case under the

 9   existing schedule.  And demonstrating that to the Court

10   requires that I engage in kind of a tedious process of talking    02:28

11   to the Court about specific things we've been trying to do and

12   the difficulties we've faced in trying to do that.

13            If the Court would bear with me, I'm prepared to do

14   that.

15            THE COURT:  I have certainly read your papers, and       02:29

16   I've gone through the long list of concerns.  I've also been

17   following along as the Discovery Master has been dealing with a

18   number of these issues that have come up, and reading his

19   orders; so I know that it should be of no surprise to anybody

20   that this has been, on both sides, a protracted litigation.       02:29

21            MR. QUINN:  It's protracted, Your Honor, and --

22            THE COURT:  You certainly did not expect, when we

23   agreed to the times set on this, that somehow this was going to

24   be smooth sailing.

25            MR. QUINN:  Smooth sailing?  No.  But there have been    02:29
```

```
 1   some, I would say, kind of unique events that have happened.

 2          If I could call the Court's attention, just by way of

 3   example, to one specific document.

 4          THE COURT:  Yes.

 5          MR. QUINN:  This is Exhibit 2 to Mr. Proctor's                02:29

 6   declaration.

 7          THE COURT:  I have it here.

 8          MR. QUINN:  It is Page 12.  The Court will see that

 9   it says "Anderson, Diane" at the top.

10          THE COURT:  Yes.                                              02:30

11          MR. QUINN:  This is a document that we received ten

12   days ago, on August 21st.  This was a document that was

13   identified in a privilege log which Mattel has been trying to

14   get for 23 months.  The only thing that was produced was

15   everything below the "FYI" that the Court can see there.          02:30

16   What's up there at the top, the e-mail between Mr. Larian and

17   Victoria O'Connor, was withheld on the grounds of privilege.

18          We had to get two orders, and ultimately there was an

19   order that was entered that it would be produced to the

20   Discovery Master for his in-camera review.  A deadline was set   02:30

21   for doing that.  They got an extension on that deadline.  The

22   deadline came and went, two or three weeks went by, and then

23   finally they said "the Discovery Master does not have to review

24   this; we'll simply produce the document."

25          Your Honor, on the face of this, I don't see any           02:31
```

1    arguments that this was ever a privileged document.  This is a

2    very damaging document.

3         There are another 400 documents that the Discovery

4    Master has on his plate right now to review in camera.  This is

5    the result, we finally got this after 23 months, and they          02:31

6    coughed it up.  They did not want the Discovery Master to see

7    it and to focus on whether or not it's privileged.

8         Your Honor, there are other motions similar.

9         Just talking now about privileged logs, the Discovery

10   Master has entered an order requiring that documents relating      02:31

11   to the alleged crime fraud -- which I think the Court will

12   recall that issue -- be produced to the Discovery Master for

13   his in-camera review.  They have moved for reconsideration and

14   they have said that no matter what, the Discovery Master -- if

15   the Discovery Master doesn't go their way on reconsideration,      02:31

16   they are going to appeal that to Your Honor, and they have also

17   announced that they will take it mandamus to the Ninth Circuit,

18   which is their right to seek all these things.

19        The point is, Your Honor, there have been a total of

20   over 40 -- over 50 discovery motions since January.                02:32

21        Now, that in itself doesn't tell the Court anything

22   in terms of the merits of the position being taken.  I can tell

23   the Court that of those motions, Mattel thus far has won 32 of

24   them; has lost 18 of them; and there's 18 of them pending.

25        We did not get a single deposition until -- since            02:32

```
 1   this motion was filed, there have now been two depositions,

 2   phase two; that's it.  Not withstanding our motion practice,

 3   our efforts at diligence.

 4         It took two orders to get Mr. Kadisha to finally

 5   appear.  Similarly, with respect to the other witness,        02:32

 6   Mr. Neman, we still have no documents.  No documents,

 7   Your Honor, from MGA Mexico.  Notwithstanding we've been

 8   seeking them for a couple of years.  They say in their

 9   opposition that, "Well, we produced MGA Mexico documents in the

10   MGA production.  The Discovery Master found" -- and I'm using   02:33

11   the Discovery Master's words in his order -- "that was not

12   credible."  He's ordered them to produce those documents.

13   There are some 200 RFP's directed to MGA Mexico that they are

14   now under Discovery Master order to produce.

15         The trust that provided some of this financing for        02:33

16   OMNI 808, they have not identified to us, notwithstanding the

17   Discovery Master's order, any information about those trusts;

18   who the beneficiaries are; who the grantors are; who the

19   trustees are.  We've been blocked in getting that kind of most

20   basic information.                                              02:33

21         The answers to contention interrogatories addressed

22   in their affirmative defenses, we still do not have them.

23   Maybe we will get them today.  We were promised them by the end

24   of the month, but we haven't gotten any of that.

25         After this schedule was set, the Court will remember,     02:34
```

1    there have been stays; there was a one-month stay that the

2    Court entered while settlement discussions took place in the

3    May/June time frame.  There were also stays that MGA took as a

4    matter of self-help.  The Court may recall that in January,

5    they took the position that because the Court had appointed a          02:34

6    forensic auditor to look at MGA's books and records, that we

7    were barred from ever taking any discovery.  The Court may

8    recall that.  And it came up at the appropriate time, and the

9    Court made it clear, that was not the Court's intention.  That

10   blocked us for a month.  That was the second month in this             02:34

11   discovery period that the Court set aside where we did not get

12   any discovery.

13            For four months, four months, Your Honor, we did not

14   get any discovery on their claims against Mattel.  They said we

15   were not entitled to any discovery because we had indicated we          02:35

16   intended to move for summary judgment.  Their position was,

17   "Well, there's no disputed -- apparently you believe there's no

18   issue of disputed fact.  Therefore, you don't need any

19   discovery; you should bring your motion."  That was their

20   position.                                                              02:35

21            Ultimately we had to go to the Discovery Master on

22   that.  Ultimately they were sanctioned for taking that

23   position.  But for four months we did not get any discovery on

24   their claims.

25            I could go on, Your Honor.                                     02:35

1        I don't take any pleasure in going through this 'who

2    did what to whom,' but again, as I started out, it's my

3    obligation to prove that notwithstanding our due diligence,

4    we're not going to be in a position to try the case on the

5    existing schedule.  And I think the record clearly shows we've    02:35

6    been diligent.  Everything requires a motion, oftentimes

7    multiple motions, because of the aggressive positions that are

8    taken on very many of these issues and aspects of this case,

9    perhaps most of them.

10        I'm sorry to report to the Court, we're at the very    02:36

11    beginning of discovery now.

12        THE COURT:  How many more depositions are you

13    planning to take?

14        MR. QUINN:  I think there was some information in our

15    papers on that.  If I could defer to Mr. Zeller, Your Honor.    02:36

16        THE COURT:  Mr. Zeller.

17        MR. ZELLER:  I can get the Court the exact number

18    that we currently understand.  But we have made a motion to the

19    Discovery Master for additional depositions.  It's in the

20    multiples of tens; it's certainly less than 100; but I know    02:36

21    there's a particular number on it.

22        THE COURT:  You've taken three; correct?

23        MR. ZELLER:  We've taken two.  And we have also asked

24    for leave beyond the limit of ten that the Court will recall --

25    the Court said that for this phase we should go to the    02:37

1    Discovery Master to make a showing for excess depositions.

2           There is at least another one that I'm recalling

3    offhand that has been ordered, which is that of Mr. Mashian.

4           **THE COURT:**  Mr. Zeller, of the whatever number, the

5    multiple of ten --                                                02:37

6           **MR. ZELLER:**  I apologize, Your Honor.  It's 30.

7           **THE COURT:**  Of the 30 depositions, how many of those

8    depositions would you say are related to what the Court has

9    termed the Wachovia debt transaction?

10          **MR. ZELLER:**  I would estimate that about a dozen of     02:37

11   those are related to the Wachovia debt acquisition.  Then there

12   also, of course, are some such as Mr. Larian's, for example,

13   where we are certainly seeking that deposition; and that would,

14   of course, relate to a whole host of issues beyond that.

15          **THE COURT:**  So there's 24, then, or 18.                 02:37

16          **MR. ZELLER:**  I mean, this is rough justice,

17   Your Honor.  To be perfectly accurate, I'd have to go and add

18   them up, but that's my best estimate standing here.  I think

19   that's about right.

20          We have, for example, ones that are clearly related        02:38

21   to what we'll call the "old phase two issues."  Say, for

22   example, the trade secret misappropriation.  We have MGA Canada

23   that's still outstanding; Jeanine Brisbois, who's associated

24   with MGA Canada, still outstanding; those were the subject of

25   those letters of request a few months ago.                        02:38

 1          **THE COURT:**  Speaking of MGA Canada, just while it's

 2    fresh in my mind, what is this nonsense about the head of

 3    security of Mattel's giving gifts to the Canadian Police?

 4          **MR. ZELLER:**  I would say that is a fair amount of

 5    hyperbole on MGA's part that is not substantiated by the

 6    record.

 7          **THE COURT:**  I don't know whether it's substantiated

 8    or not.  Did it happen?

 9          **MR. ZELLER:**  No.

10          What happened, Your Honor, is that Mr. Deanda spoke

11    to the police.  They gave him a token of a pen and perhaps a

12    coffee mug.  He gave them in return a few toy police cars, like

13    less than ten.  That's what this is.

14          **THE COURT:**  He must be mindful of that.

15          I trust you'll have a talk with him about that on a

16    going-forward basis.

17          Yes?

18          **MR. ZELLER:**  Yes, your Honor, absolutely.

19          I was nodding in agreement.

20          **THE COURT:**  All right.  Back to the bigger issue of

21    this.

22          If you have these 30 depositions to take and you've

23    only taken two, when do you plan on taking these other

24    depositions?

25          **MR. ZELLER:**  As soon as these individuals are

1    produced.

2          Right now, we have had to go to the Discovery Master

3    to get leave.

4          **THE COURT:**  Have you proposed dates for these 28

5    depositions that you want?                                    02:39

6          **MR. ZELLER:**  No, your Honor.

7          **THE COURT:**  You have not even proposed dates yet?

8          **MR. ZELLER:**  When we talk about all 28, that's kind

9    of a big category.

10         Some of them, we have certainly asked dates for; say,  02:40

11   MGA Canada; Jeanine Brisbois; Vargas in Mexico.  There are

12   others clearly related to phase two, we've asked for those

13   dates for literally months and years; so as to those people,

14   yes.

15         There are others who, no, we have not asked for dates  02:40

16   because we don't know whether we have leave to take them.  And

17   also -- and the courts have been very clear about this -- we

18   are entitled to know, before we use up our remaining eight or

19   seven depositions, whatever the case will be after Mr. Mashian,

20   as to whether or not we're going to have leave for those other 02:40

21   ones.  Because if we end up being constrained to some smaller

22   number, we're entitled to know that before making those final

23   choices.

24         So in terms of where we are in the stream of our

25   efforts to get those depositions, we've asked for them; we've 02:40

```
 1   made a motion for leave; it is in the process of being briefed;

 2   the briefing may actually already be done or substantially

 3   done.  But that is the first step.

 4           We have an instance here, Your Honor, where MGA did

 5   not agree to a single one of those additional depositions.          02:41

 6   Justified or not, but that is a fact that it is going to

 7   require time to work those issues through.

 8           THE COURT:  How many depositions of your people have

 9   they taken?

10           MR. ZELLER:  Throughout the case?                           02:41

11           THE COURT:  Not throughout the case.

12           MR. ZELLER:  Right now?

13           THE COURT:  Yes.

14           MR. ZELLER:  There have been none taken.  The only

15   two depositions that have been taken were by us so far since        02:41

16   the beginning of the year.  They have taken none.

17           THE COURT:  Thank you, Mr. Zeller.

18           MR. ZELLER:  Thank you.

19           THE COURT:  Counsel.

20           MS. HURST:  Not for lack of trying, Your Honor.             02:41

21           THE COURT:  So you have sought to take depositions?

22           MS. HURST:  We have, Your Honor, and they did not

23   show up.  We noticed a 30(b)(6) on communications with

24   governmental authorities pertaining specifically to this

25   document, in part where they sent gifts to the Canadian police,     02:42
```

1    and about two days before the deposition, I got an e-mail

2    saying "We're not going to show up."  We had to file a motion

3    to compel on that; so that's the one deposition that we've

4    noticed that we've not been able to take.

5          But, I frankly think, Your Honor, the way to approach       02:42

6    this motion is not with some litany of past transgressions.

7    The focus should be on the future.  We have three months until

8    the discovery cutoff in this case, and what I have not heard

9    either Mr. Quinn or Mr. Zeller say is what can't be done in

10   three months.                                                     02:42

11        THE COURT:  Tell me, what do you think, do you think

12   this -- you have a sense, now, and I know you're still new to

13   the case and all, but you've done a fabulous job of getting up

14   to speed; that is reflected in your papers.

15          What is your sense of the possibility of this being        02:42

16   completed, given what you know about just the status of the

17   case right now?  Without the fourth amended, just based on the

18   third amended, do you believe this can be done in the next

19   three months?

20        MS. HURST:  I believe it can, Your Honor, if it's            02:43

21   done with focus and efficiency, which has been lacking,

22   frankly; and on both sides, Your Honor.  I don't mean to just

23   say on Mattel.

24        THE COURT:  I appreciate that.

25        MS. HURST:  And let me say why.  Because the vast            02:43

majority of those 32 depositions related to the Wachovia debt

transaction, it's more like 22, 24 of the 32 depositions.  And,

Your Honor, not just the people who actually participated in

that transaction, but the companies to whom MGA went to try to

get them to buy out the Wachovia debt who didn't take part in

the transaction.  That's the long list.  They don't just want

Mr. Neman; they also want the person most knowledgeable of

Vision Capital.  They don't just want Mr. Kadisha; they want

also the person most knowledgeable of OMNI 808.

        Mr. Villar is here; he sent them an e-mail before

they took those depositions, saying "these witnesses will be

our 30(b)(6) witnesses.  Please give us the chance to prepare

them on whatever topics you might want to propound before you

take their depositions, and let's do it all at once."

        Mr. Zeller said no.

        That's the lack of focus and efficiency.  And

frankly, Your Honor, if the Court forces the parties to do

this, we will get it done.

        We did not refuse to agree to any deposition in

excess of ten.  We said it's crazy to take more than 30

depositions at seven hours a pop.

        And to be clear, Your Honor, the 32 they have asked

for does not include a number of party depositions that they

have told us are coming.  It does not include Mr. Larian; it

doesn't include Mr. Brewer; it doesn't include what Mr. Proctor

1   proposed, that this Court rejected during phase one as an

2   endless number of hours of 30(b)(6) depositions.

3        So what we proposed in response was an hour's limit.

4   We said "Let's set an hour's limit; that will force, just like

5   trial, force everybody to be efficient, to go get what they   02:45

6   really need.  Let's do it that way instead."

7        So that's the issue that is presently pending before

8   Discovery Master O'Brien.

9     **THE COURT:**  What about my thoughts concerning

10  separating out the remainder of this case?  What's your initial  02:45

11  reaction?

12       And I know that puts you on the spot, but what's your

13  initial reaction?

14     **MS. HURST:**  As the Court knows, we did suggest a stay

15  of the case pending resolution by the Ninth Circuit.  We   02:45

16  obviously did not include within that a request for stay of the

17  Court's injunctive relief, or anything like that.  That's been

18  addressed repeatedly before.  We're not going there,

19  Your Honor.

20       The problem is now these RICO claims are kind of a  02:45

21  house of cards.  And if you take away the Wachovia debt

22  transaction, which was characterized in their reply brief on

23  this motion as a "scheme whose essence is deception"; that's

24  the quote on this motion.  In the clarification reply brief,

25  Your Honor, they called it "an attempted encumbrance of the  02:46

```
 1   Bratz intellectual property."

 2          I think the people writing those two briefs need to

 3   meet each other over there at the Quinn law firm.

 4          This is crazy.  It's crazy out of control on this

 5   Wachovia debt transaction thing.                              02:46

 6          On Friday when Mr. Kadisha testified, Your Honor, he

 7   said he's known Bob Eckert, the CEO for Mattel, for years

 8   through their participation in the Young President's

 9   Organization and the World President's Organization, and that

10   when he, in leading the OMNI 808 buyout of the Wachovia debt   02:46

11   transaction, when he did that, he called Mr. Eckert to tell him

12   that he was going to engage or had just engaged in that

13   transaction.

14          Your Honor, that means that Mr. Kadisha's testimony

15   turns out to be accurate with his recollection, and everything 02:47

16   else, that Mattel has come in here in the last ten months with

17   emergency applications for receivers, forensic auditors,

18   permanent receivers, monitors, you name it, every act they have

19   taken to put the Court's close supervision of MGA's daily

20   business activity was founded on a false premise that somehow   02:47

21   MGA had tried to conceal this transaction, to which,

22   Your Honor, it wasn't even a party.  All of that was done after

23   Mr. Kadisha called Bob Eckert and told him about this

24   transaction.

25          THE COURT:  Getting back to the Court's question...     02:47
```

1          **MS. HURST:**  Apologies, your Honor.

2          It can be done, Your Honor.

3          **THE COURT:**  Your sense is that it should stay

4    unified.

5          **MS. HURST:**  Well, my sense is that there should not                    02:48

6    be an amendment permitted, Your Honor.  Not for this case.

7    Adding defendants, Your Honor, I don't think in fairness I

8    could say anything other than that adding defendants would

9    force a continuance of the trial.  I mean, of course they would

10   want to have adequate time to prepare themselves.                              02:48

11         **THE COURT:**  But we've already had this one amendment

12   that has brought in, at least in part, the Wachovia debt

13   transaction.  I use that phrase, and I'm trying to be as

14   neutral as I can in terms of my characterization, because I do

15   know that you both characterize this transaction vastly                        02:48

16   differently, and I'm trying to go to great lengths to make sure

17   it's understood that nothing has been established, at least in

18   this courtroom.

19         **MS. HURST:**  Thank you, Your Honor.

20         **THE COURT:**  But the thought would be is there some                   02:48

21   value in taking that out for the time being?  Let's get through

22   what I think Mr. Quinn referred to as the older RICO claims,

23   getting that done and behind us, and then focus just on this

24   Wachovia debt transaction.

25         Perhaps not.  If it is the house of cards, as you're                     02:49

```
 1   suggesting, perhaps it is so inextricably intertwined that it

 2   would not be prudent to separate them.  I'm just trying to come

 3   up with the best way to go forward at this point, given where

 4   we're at.

 5         MS. HURST:  Your Honor, I appreciate the Court's      02:49

 6   inquiry.  I think the problem is that it's a terrible catch-22

 7   for MGA.  The burden and expense of this litigation is so

 8   enormous that when MGA makes its motion for summary judgment on

 9   the RICO claims, we'd like to dispose of them entirely,

10   Your Honor.                                                 02:49

11         THE COURT:  Okay.

12         MS. HURST:  I think that's probably a fair answer to

13   your question.

14         THE COURT:  Fair enough.

15         I would be remiss if I did not raise the issue of     02:49

16   settlement.  I know there was a lot of talk about this over the

17   course of the summer.  I have not heard anything about that

18   since.  I know that Ambassador Prosper made some efforts;

19   Judge Tevrizian has been involved; the Court had a brief

20   conversation with both principal CEOs.                      02:50

21         Is there any sense of trying to resolve this case at

22   this point?  Is there anything that can be done along those

23   lines?  Is there anything that the Court can do to help

24   facilitate that?

25         MS. HURST:  Yes.  And, Your Honor, that is --         02:50
```

1      **MR. ZELLER:**  I'm sorry, but if we're going to talk

2    about this, I would prefer to do it at side-bar or off the

3    record.  Because once we get into it, there's a little bit in

4    terms of some personal scheduling for people, and that kind of

5    thing, which I think is better not said in open court.                           02:50

6      **THE COURT:**  Fair enough.  When it comes to

7    settlement, I'm willing to be -- I want to be comfortable in

8    what we are doing.

9      **MS. HURST:**  I was not going to get into any details,

10   other than to say that part of MGA's frustration is that the                      02:50

11   ball was in Mattel's court.

12     **THE COURT:**  That's precisely the type of public

13   statement that I think Mr. Zeller was asking for you not to

14   make.  We need to be respectful of that when we go down this

15   road.                                                                             02:51

16     **MS. HURST:**  Thank you, your Honor.

17     **THE COURT:**  I'm going to strike that last statement

18   from the record.  Let's not do that.  We've had trouble with

19   that before; people just making statements that they --

20     **MS. HURST:**  I'm happy to approach for side-bar,                             02:51

21   Your Honor.  I did not understand that was the focus of

22   Mr. Zeller's comments.

23     **THE COURT:**  I don't know for sure if it was or it was

24   not.

25     **MR. ZELLER:**  It absolutely was, because I knew this                         02:51

```
 1   exact accusation was --

 2              THE COURT:  This is not constructive, so let's stop

 3   this.

 4              Is there anything further on this motion, on the

 5   motion to amend the scheduling order, from MGA's perspective?      02:51

 6              MS. HURST:  No.  Thank you, your Honor.  We would

 7   submit.

 8              THE COURT:  Is there anything further from Mattel?

 9              MR. QUINN:  Your Honor, in terms of carving out the

10   Wachovia part of the case, it sounds like that's something they   02:51

11   would prefer not to do.

12              It could be done, I think.  We would face some of the

13   same issues that we've now faced in carving out the present

14   phase one and phase two; I mean, some overlap; some witnesses

15   being asked to appear a second time.  I think it probably could   02:52

16   be done.  It's something that frankly we have not thought of

17   before the Court raised it.

18              If it's something that the Court would like to see a

19   proposal on, what that might look like, I'm sure we could meet

20   and confer, if the other side is interested, and try to put       02:52

21   something forward.

22              It would require some disentangling, and I think we

23   would have to confront the fact going in that potentially there

24   would be duplicate testimony, because they do overlap to some

25   degree, particularly in the RICO claims.                          02:52
```

1      **THE COURT:**  We had some of those problems when we

2   first tried to distance phase one and phase two.  If it doesn't

3   make sense, it doesn't make sense.  But both of you should

4   think about that between now and our next hearing.

5      Our next hearing is October -- when did I say it was?   02:53

6      **MR. ZELLER:**  I believe it was October 1st,

7   Your Honor.

8      **THE COURT:**  So the 1st of October.  And we set that

9   for a Thursday, keeping it away from a Monday, because I assume

10  everyone will have lots to say on October 1st.   02:53

11     **MR. QUINN:**  To get back to the motion to amend the

12  schedule, Your Honor.  Even if nothing else is done with the

13  case, even if the existing complaint is not amended at all, I

14  do come back to the predicament we find ourselves in.

15     The Court had set a schedule.  We had actually asked   02:53

16  for more time when the Court set the schedule originally.  We

17  sort of bit our lips and said "We're going to have to do what

18  we have to do to meet these deadlines."  And we've encountered

19  what we've encountered:  The stays; the requirement that we

20  make these motions.  And we find ourselves where we are now, at   02:53

21  a very preliminary stage.

22     There's an obligation to disclose expert witnesses, I

23  think, on October 16th, and we're just -- given where we are,

24  that frankly is not realistic, Your Honor, even on the existing

25  complaint.   02:54

1          THE COURT:  Okay.

2          Thank you, counsel.

3          MS. HURST:  There's just one thing that I wanted to

4     add.

5          We are trying to keep this within the current scope          02:54

6     of the claims, but if the Court were to permit amendment and to

7     vacate dates, then MGA also would likely have supplementation

8     and/or amendment of its claims, Your Honor.

9          THE COURT:  It would be very helpful to have that --

10    it would be nice to consider that all at once.          02:54

11         Would you be in a position to --

12         MS. HURST:  I think we can get it on file for the

13    October 1st hearing date.

14         THE COURT:  That would make a lot of sense to have --

15    if there are going to be more claims being brought in against          02:54

16    Mattel, to have those considered all at once.

17         MS. HURST:  All right, Your Honor.  Thank you.

18         THE COURT:  Very good.

19         I am going to deny at this point the motion to amend

20    the scheduling order.  Neither side should take too much solace          02:55

21    in that.  Mattel needs to understand that they cannot bank on a

22    continuance, and MGA has to understand that I really take you

23    at your word that any inefficiencies -- you referred to the

24    inefficiencies -- any inefficiencies in the past will be set

25    aside.  You really hold the ability to keep this thing under          02:55

```
 1   control in your hands by getting the discovery that Mattel is

 2   entitled to.  And, of course, vice versa.

 3          I just don't think right now is the time to amend the

 4   scheduling order.

 5          I will look forward to seeing you on October 1st.            02:55

 6          I do want to speak to you briefly at side-bar about

 7   the settlement issue; so Mr. Zeller or Mr. Quinn, and whoever

 8   would like to come forward.

 9          Is there anything else we need to take up at this

10   time?                                                               02:56

11          MS. HURST:  No, your Honor.

12          MR. QUINN:  No, your Honor.

13          THE COURT:  Very well.

14          We'll go off the record.  I'll speak briefly with

15   counsel off the record at side-bar.                                 02:56

16          (Off the record discussion.)

17          (Proceedings are concluded.)

18                          CERTIFICATE

19

20   I hereby certify that pursuant to section 753, title 28, United
     States Code, the foregoing is a true and correct transcript of
21   the stenographically recorded proceedings held in the above-
     entitled matter and that the transcript page format is in
22   conformance with the regulations of the Judicial Conference of
     the United States.

23

24   _____        _____
     THERESA A. LANZA, CSR, RPR                      Date
25   Federal Official Court Reporter
```

EXHIBIT C

Case 2:04-cv-09049-DOC-RNB Document 6628-5 Filed 09/10/09 Page 45 of 45 Page ID
#:218678
Case 2:04-cv-09049-SGL-RNB Document 8564 Filed 09/03/2009 Page 1 of 1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
<u>CIVIL MINUTES -- GENERAL</u>

Case No.    CV 04-09049 SGL(RNBx)                    Date: September 3, 2009
Title:      MATTEL, INC. V. MGA ENTERTAINMENT, INC., et al.
========================================================================
PRESENT:  HONORABLE STEPHEN G. LARSON, U.S. DISTRICT JUDGE

            Cindy Sasse                          None Present
            Courtroom Deputy                     Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:        ATTORNEYS PRESENT FOR DEFENDANTS:

None Present                             None Present

**PROCEEDINGS:    ORDER REGARDING APPEARANCE AT SEPTEMBER 21, 2009, HEARING
                  BY MATTEL OFFICER RICHARD DE ANDA**

        With the opposition to the Motion to Modify the Scheduling Order, counsel for the MGA
parties filed a copy of an email communication between Mattel's head of security, Richard De
Anda, and Canadian law enforcement officials, which references a package sent to those officials.
Based on this email communication, the MGA parties contend that "Mattel sent gifts to Canadian
police in an obviously improper attempt to curry favor in their investigation." Opp. at 14.

        At the August 31, 2009, hearing, counsel for Mattel represented to the Court that the
package contained less than a dozen toy cars and was given by Mr. De Anda upon being
presented by Canadian officials with the token gift of mugs and pens.

        This email has led to concern by the MGA parties that other gifts have been given to law
enforcement officials by Mattel.

        To address this concern, the Court **ORDERS** Mattel to assure the appearance of Mr. De
Anda at the hearing set for September 21, 2009, at 1:30 p.m., in Courtroom One of the above-
referenced Court.

        **IT IS SO ORDERED.**


MINUTES FORM 90                                  Initials of Deputy Clerk __cls_____
CIVIL -- GEN                     1

                                                                        Exhibit C