1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 090378)
2    johnquinn@quinnemanuel.com
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
6  Facsimile: (213) 443-3100

7  Attorneys for Mattel, Inc.

8              UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10                  EASTERN DIVISION

11 | CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx)

12 |         Plaintiff,           | Consolidated with
                                  | Case No. CV 04-09039
13 |     vs.                      | Case No. CV 05-02727

14 | MATTEL, INC., a Delaware      | **DISCOVERY MATTER**
   | corporation,                 |
15 |                             | **SUPPLEMENTAL DECLARATION
   |         Defendant.          | OF RANDA A.F. OSMAN IN
16 |                             | SUPPORT OF MATTEL, INC.'S
   |                             | REPLY IN SUPPORT OF ITS
17 | AND CONSOLIDATED ACTIONS     | MOTION FOR AN ORDER: (1)
   |                             | REMOVING "CONFIDENTIAL"
18 |                             | DESIGNATIONS FROM
   |                             | PORTIONS OF THE DEPOSITION
19 |                             | TRANSCRIPT OF SUSANA
   |                             | KUEMMERLE, AND (2) ISSUING
20 |                             | AN APOSTILLE RE THE
   |                             | KUEMMERLE TRANSCRIPT
21 |                             |
   |                             | Date:   TBA
22 |                             | Time:   TBA
   |                             | Place:  Arent Fox LLP
23 |                             |
   |                             | **Phase 2**
24 |                             | Pre-Trial Conference:  Not Set
   |                             | Trial Date:            Not Set
25

26        **PUBLIC REDACTED - EXHIBIT D FILED UNDER SEAL**

27            **PURSUANT TO PROTECTIVE ORDER**

28

07209/3094825.1

SUPPLEMENTAL OSMAN DEC. I.S.O. REPLY I.S.O. MOTION TO DE-DESIGNATE AND FOR APOSTILLE

1          I, Randa A.F. Osman, declare as follows:

2          1.    I am a member of the bar of the State of California and a member

3 of Quinn Emanuel Urquhart Oliver & Hedges, LLP, attorneys for Mattel, Inc. I

4 make this declaration of personal, firsthand knowledge, and if called and sworn as a

5 witness, I could and would testify competently thereto.

6          2.    A true and correct copy of Ms. Kuemmerle's deposition

7 transcript (without exhibits) was attached as Exhibit B to the Declaration Of Jon

8 Corey In Support Of Mattel, Inc.'s Motion For An Order: (1) Removing

9 "Confidential" Designations From Portions Of The Deposition Transcript Of Susana

10 Kuemmerle, And (2) Issuing An Apostille Re The Kuemmerle Transcript dated

11 August 26, 2009. A signature page was not included with the attached transcript

12 because Mattel did not receive Ms. Kuemmerle's signature page.

13          3.    A true and correct copy of relevant excerpts from Mattel's

14 Second Amended Answer In Case 05-2727 and Counterclaims, dated July 12, 2007,

15 is attached hereto as Exhibit A.

16          4.    A true and correct copy of relevant excerpts from Mattel's Third

17 Amended Answer In Case No. 05-2727 and Counterclaims, dated May 22, 2009, is

18 attached hereto as Exhibit B.

19          5.    A true and correct copy of Mattel, Inc.'s Notice of Motion and

20 Motion to Compel: (1) Deposition of Carlos Gustavo Machado Gomez; and (2)

21 Consent to Production of Electronic Mail Messages; and Memorandum of Points

22 and Authorities, dated November 15, 2007, is attached hereto as Exhibit C.

23          6.    A true and correct copy of relevant excerpts from MGA's

24 Response to Mattel, Inc.'s Amended Supplemental Interrogatory Regarding

25 Defendant's Affirmative Defenses, dated August 31, 2009, is attached hereto as

26 Exhibit D.

27          7.    A true and correct copy of article titled "Corporate Moment" is

28 attached hereto as Exhibit E.

-2-

1    8.    A true and correct copy of article titled "Barbie is After Bratz for
2  Plagiarism" is attached hereto as Exhibit F.

3    9.    A true and correct copy of article title "Names, Names...and
4  more Names" is attached hereto as Exhibit G.

5    10.    A true and correct copy of relevant excerpts from the Notice of
6  Motion and Motion of Mattel, Inc. for Leave to Take Additional Discovery and
7  Objections to Discovery Master Order of September 28, 2007; and Memorandum of
8  Points and Authorities is attached hereto as Exhibit H.

9    11.    Mattel was forced to prepare and submit to the Discovery Master
10  thousands of pages of declarations and supporting exhibits in response to a motion
11  to de-designate that MGA later simply withdrew.

12    I declare under penalty of perjury under the laws of the State of
13  California that the foregoing is true and correct.

14    Executed on September 10, 2009, at Los Angeles, California.

15

16    /s/ Randa A.F. Osman
     Randa A.F. Osman
17

18

19

20

21

22

23

24

25

26

27

28

07209/3094825.1

# EXHIBIT A

CONFORMED COPY

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      John B. Quinn (Bar No. 90378)
2     (johnquinn@quinnemanuel.com)
      Michael T. Zeller (Bar No. 196417)
3     (michaelzeller@quinnemanuel.com)
      Jon D. Corey (Bar No. 185066)
4     (joncorey@quinnemanuel.com)
      Duane R. Lyons (Bar No. 125091)
5     (duanelyons@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
6  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
7  Facsimile: (213) 443-3100

8  Attorneys for Mattel, Inc.

9                UNITED STATES DISTRICT COURT

10              CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 11  CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| 12              Plaintiff, | Consolidated With Case No. 04-9059 and Case No. 05-2727 |
| 13       v. | MATTEL, INC.'S SECOND AMENDED ANSWER IN CASE NO. 05-2727 AND COUNTERCLAIMS FOR: |
| 14  MATTEL, INC., a Delaware corporation, | |
| 15 | 1.  COPYRIGHT INFRINGEMENT; |
| 16              Defendant. | 2.  VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT; |
| 17 | 3.  CONSPIRACY TO VIOLATE THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT; |
| 18  MGA ENTERTAINMENT, INC. a California corporation, | |
| 19 | 4.  MISAPPROPRIATION OF TRADE SECRETS; |
| 20              Plaintiff, | 5.  BREACH OF CONTRACT; |
| 21       v. | 6.  INTENTIONAL INTERFERENCE WITH CONTRACT; |
| 22  MATTEL, INC., a Delaware corporation, and DOES 1-10, | 7.  BREACH OF FIDUCIARY DUTY; |
| 23 | 8.  AIDING AND ABETTING BREACH OF FIDUCIARY DUTY; |
| 24              Defendants. | 9.  BREACH OF DUTY OF LOYALTY; |
| 25 | |
| 26 | **PUBLIC REDACTED VERSION** |
| 27 | **Volume I** |
| 28 | |

2154363.2

EXHIBIT __A__

PAGE __4__

C7 12 C7

1  | MATTEL, INC., a Delaware
2  | corporation,
   |                          Counter-claimant,
3  |
   |      v.
4  |
5  | MGA ENTERTAINMENT, INC., a
   | California corporation; ISAAC
   | LARIAN, an individual; CARTER
6  | BRYANT, an individual; MGA
   | ENTERTAINMENT (HK) LIMITED,
7  | a Hong Kong Special Administrative
   | Region business entity; MGAE DE
8  | MÉXICO, S.R.L. DE C.V., a
   | Mexico business entity; CARLOS
9  | GUSTAVO MACHADO GOMEZ, an
   | individual; and DOES 4 through 10,
10 |
   |              Counter-defendants.
11 |
12 | AND CONSOLIDATED CASES
13 |

10. AIDING AND ABETTING BREACH OF DUTY OF LOYALTY;
11. CONVERSION;
12. UNFAIR COMPETITION; AND
13. DECLARATORY RELIEF

DEMAND FOR JURY TRIAL

EXHIBIT _A_

PAGE _5_

2154363.2

-2-
SECOND AMENDED ANSWER AND COUNTERCLAIMS

## SECOND AMENDED ANSWER

Pursuant to the Court's Orders of January 12, 2007 and June 27, 2007, Defendant Mattel, Inc. ("Mattel") answers the Complaint of MGA Entertainment, Inc. ("Complaint") as follows:

### Preliminary Statement

The Complaint in this case contravenes <u>Rule</u> 8(a) of the <u>Federal Rules of Civil Procedure</u> in multiple respects. For example, in many places, the Complaint improperly mixes factual averments with argumentative rhetoric. The Complaint also includes a selective recitation of alleged historical facts and "rumor," much of which is both irrelevant and inflammatory in tone and content. In addition, many of the allegations of the Complaint are overly broad, vague or conclusory and include terms which are undefined and which are susceptible to different meanings. Accordingly, by way of a general response, all allegations are denied unless specifically admitted, and any factual averment admitted is admitted only as to the specific facts and not as to any conclusions, characterizations, implications or speculations which are contained in the averment or in the Complaint as a whole. These comments and objections are incorporated, to the extent appropriate, into each numbered paragraph of this Second Amended Answer.

Mattel further submits that the use of the headings throughout the Complaint is improper, and therefore no response to them is required. In the event that a response is required, Mattel denies those allegations.

The Complaint also contains many purported photographs of various items, and it uses one or more headings purporting to describe, either individually or in groups, these various photographs. The images of these photographs contained in the Complaint are all relatively small and some are of less than optimal quality, making it difficult to evaluate the adequacy of the photographs or their fairness and accuracy in depicting what they purport to represent. The Complaint also does not describe the circumstances or time frame in which these photographs were taken,

EXHIBIT ____4____

-3-
SECOND AMENDED ANSWER AND COUNTERCLAIMS

PAGE ___6___

1  the agreement, including those he purportedly provided while still a Mattel
2  employee, purportedly would be considered "works for hire" of MGA; and that all
3  intellectual property rights to preexisting works by Bryant, including Bratz designs,
4  purportedly were assigned to MGA.

5  **IV. MGA STEALS MATTEL TRADE SECRETS IN MEXICO**

6            37.   On information and belief, in or about late 2003 or early 2004,
7  MGA decided to open business operations in Mexico.  Faced with the difficult task
8  of developing an overall strategy for expanding into a market in which it had only a
9  nominal presence and no operations, MGA elected to steal Mattel's plans, strategy
10  and business information for the Mexican market and materials related to Mattel's
11  worldwide business strategies.  As detailed below, MGA and Larian approached
12  three employees of Mattel's Mexican subsidiary ("Mattel Mexico"), enticed them to
13  steal Mattel's most sensitive business planning materials, and then hired them to
14  assist in establishing and running MGA's new Mexican subsidiary.

15            **A.    MGA Hires Three Senior Mattel Employees in Mexico**

16            38.   Carlos Gustavo Machado Gomez ("Machado") was the Senior
17  Marketing Manager, Boys Division, for Mattel Mexico, a position of trust and
18  confidence.  He was employed at Mattel Mexico from April 1, 1997 until April 19,
19  2004.  His duties included short, medium and long-term marketing planning,
20  generating product sales projections, and assisting in creation of the media plan.  In
21  his position, Machado had access to highly confidential and sensitive marketing
22  and product development information.  Machado had an employment agreement
23  with Mattel in which he agreed to maintain the confidentiality of Mattel's protected
24  information.  Mattel's policies also required Machado to protect Mattel's
25  proprietary information and not to disclose it to competitors.

26            39.   Mariana Trueba Almada ("Trueba") was the Senior Marketing
27  Manager, Girls Division, for Mattel Mexico, a position of trust and confidence.
28  She was employed at Mattel Mexico from November 3, 1997 until April 19, 2004.



1 Like Machado, her duties included short, medium and long-term marketing
2 planning, generating product sales projections, and assisting in creation of the
3 media plan. In her position, Trueba had access to highly confidential and sensitive
4 marketing and product development information. Trueba had an employment
5 agreement with Mattel in which she agreed to maintain the confidentiality of
6 Mattel's protected information. Mattel's policies also required Trueba to protect
7 Mattel's proprietary information and not to disclose it to competitors.

8     40. Pablo Vargas San Jose ("Vargas") was a Senior Trade Marketing
9 Manager with Mattel Mexico, a position of trust and confidence. He was employed
10 at Mattel Mexico from March 29, 2001 until April 19, 2004. Vargas was
11 responsible for ensuring that point-of-sale promotions were carried out, analyzing
12 the results of such promotions, negotiating promotion budgets, and generally
13 managing promotional activities. Vargas also had access to highly confidential and
14 sensitive marketing and product development information. Vargas had an
15 employment agreement with Mattel in which he agreed to maintain the
16 confidentiality of Mattel's protected information. Mattel's policies also required
17 Vargas to protect Mattel's proprietary information and not to disclose it to
18 competitors.

19     41. Beginning in late 2003 or early 2004, Machado, Trueba and
20 Vargas began planning to leave Mattel Mexico to join MGA. In connection with
21 that plan, and with the encouragement of Larian and other MGA officers operating
22 in the United States, they began accessing, copying and collecting proprietary
23 Mattel documents to take with them. On April 19, 2004, Machado, Trueba and
24 Vargas each resigned their positions with Mattel, effective immediately. They
25 stated that they had been hired by a Mattel competitor, but refused to identify that
26 competitor. In fact, they had been offered and accepted employment by MGA to
27 establish and run MGA's new operation in Mexico.

28

EXHIBIT _A_

PAGE _8_

2154363.2

-40-

**B.** **Machado, Trueba and Vargas Stole Dozens of Confidential Trade Secret Marketing and Sales Documents for MGA's Benefit**

42. Following these resignations, Mattel discovered that Machado, Trueba and Vargas had been in frequent telephonic and e-mail contact with MGA personnel, including Larian, for over three months prior to their resignations. The primary vehicle for these communications in furtherance of their "plot" was an America Online e-mail account with the address <plot04@aol.com>. On information and belief, during this time, Machado, Trueba and Vargas supplied Larian with certain Mattel confidential and proprietary information in order to prove their value to MGA and to improve their negotiating position vis-à-vis their respective employment contracts with MGA.

43. In March 2004, Machado, Trueba and Vargas were making plans to travel from Mexico to Los Angeles to meet with MGA personnel in person prior to resigning their positions at Mattel. Also, by at least March 3, 2004, Machado, Trueba and Vargas were discussing with MGA personnel, including Larian, specific details regarding setting up MGA offices in Mexico City. On information and belief, prior to their resignations, Larian and others at MGA directed Machado, Trueba and Vargas to steal virtually all Mattel confidential and proprietary information that they could access and bring it with them to MGA. This was reflected in, among things, e-mail messages that Mattel had discovered after Machado, Trueba and Vargas had resigned. For example, on March 22, 2006, approximately one month before they resigned, Machado, Trueba and Vargas wrote an e-mail message from the <plot04@aol.com> e-mail account addressed to Larian, MGA's General Manager Susan Kuemmerle and another MGA officer Thomas Park. In that e-mail message, Machado, Trueba and Vargas sought to prove their value in this endeavor to MGA by writing: "Attached you will find our analysis for future discussion. We will be available during the nights of the week after 16:30 Los Angeles time . . . ." In another e-mail message, showing that the



1  participants intentionally sought to maximize the damage to Mattel from their
2  conduct, Kuemmerle wrote to Larian and Park: "Gustavo, Mariana and Pablo want
3  to resign (all at the same time, and you can believe my smile!) next Wednesday."

4        44.   Beginning on April 12, 2004, a week before his resignation and
5  after numerous communications and meetings with Larian and other MGA
6  personnel, Machado began transferring additional Mattel confidential and
7  proprietary information to a portable USB storage device (also know as a "thumb
8  drive") that he connected to his Mattel computer. On Friday, April 16, 2004, the
9  last business day before he gave notice, Machado copied at least 70 sensitive
10  documents to the portable USB storage device.

11        45.   Starting on April 12, 2004, Vargas also copied a host of
12  confidential and proprietary materials to a portable USB storage device, including
13  sales plans, sales projections and customer profiles.

14        46.   On April 16, 2004, Trueba also copied Mattel confidential and
15  proprietary information to a portable USB storage device connected to her Mattel
16  computer.

17        47.   With full knowledge that she was going to leave Mattel for a
18  competitor, Trueba also took steps to increase further her access to Mattel's
19  confidential information shortly before her resignation. For example, just four days
20  before leaving, Trueba went out of her way to seek to attend a meeting at which
21  Mattel personnel analyzed BARBIE programs for the United States, Canada and
22  South America. Two days before her resignation, she contacted both a Mattel
23  employee located in El Segundo, California and Mattel's advertising agency to
24  request updated confidential information about advertising plans for BARBIE. On
25  information and belief, Trueba acted at the direction of MGA and Larian and did so
26  in order to obtain further information that would allow MGA to obtain unfair
27  competitive advantage over Mattel.
28

EXHIBIT ___A___

PAGE ___10___

2154363.2

-42-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

48.    Machado, Trueba and Vargas stole virtually every type of document a competitor would need to enter the Mexican market and to unlawfully compete with Mattel in Mexico, in the United States, and elsewhere.  They stole global internal future line lists that detailed anticipated future products, production and shipping costs for Mattel products; daily sales data for Mattel products; customer data; sales estimates and projections; marketing projections; documents analyzing changes in sales performance from 2003 to 2004; budgets for advertising and promotional expenses; strategic research reflecting consumer responses to products in development; media plans; consumer comments regarding existing Mattel products customer discounts and terms of sale; customer inventory level data; assessments of promotional campaign success; market size historical data and projections; marketing plans and strategies; merchandising plans; retail pricing and marketing strategies; and other similar materials.

49.    The stolen data was not limited to the Mexican market.  The information stolen would, and did, give MGA an unfair competitive advantage in the United States and around the world.  Further, the stolen information was not located exclusively in Mexico, but included confidential and proprietary information that resided on Mattel computers in Phoenix, Arizona and El Segundo, California, and/or documents which were originally created by personnel in El Segundo.  Included among these stolen documents was one of Mattel's earliest internal global line lists, which included information for BARBIE products for the upcoming year and included, for each product, the expected profit margin, advertising expenditures, expected volume and marketing strategy.  On information and belief, Machado, Trueba or Vargas delivered that internal line list to Larian or another MGA officer during their negotiations with MGA.

50.    MGA has used the information taken from Mattel to obtain an unfair advantage over Mattel, including in both the United States and Mexico.  In fact, MGA later publicized its claim that, in 2005, it had increased its Mexican



1    market share by 90 percent over the prior year.  This increase came at the expense

2    of Mattel, which lost market share during 2004 in Mexico and was forced to

3    increase its advertising and promotional spending to offset further losses.

4         51.   Machado, Trueba and Vargas attempted to conceal their

5    widespread theft of Mattel's proprietary information.  For example, Machado ran a

6    software program on his Mattel personal computer in an attempt to erase

7    information, including information that would reveal the addresses to which he had

8    sent, or from which he had received, e-mail messages.  On information and belief,

9    for the same purpose Machado also damaged the hard drive of the personal

10   computer that he used at Mattel.

11        52.   On information and belief, on April 19, 2004, immediately after

12   Machado, Trueba and Vargas simultaneously resigned, they traveled from Mexico

13   to Los Angeles to meet with MGA personnel, including Larian, in person.

14        53.   Mattel notified Mexican authorities about the theft of its trade

15   secret and confidential information.  On October 27, 2005, the Mexican Attorney

16   General Office obtained a search warrant from the Mexican Federal Criminal

17   Courts for MGA's facilities in Mexico City.  In that search, the Mexican authorities

18   found and seized from MGA's offices both electronic and paper copies of a large

19   number of documents containing Mattel trade secrets, including those that Mattel

20   discovered through its forensic investigations, plus many others that Mattel had not

21   known had been stolen.

22        54.   Based on Machado's "performance" in Mexico, Isaac Larian

23   subsequently promoted Machado and he was transferred to MGA's main office in

24   Van Nuys, California.  On information and belief, Machado currently resides in the

25   County of Los Angeles, California.

26

27

28

EXHIBIT _A_

PAGE _12_

2154363.2

-44-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

1         15.   That Mattel have such other and further relief as the Court may

2 deem just and proper.

3

4 DATED: July 12, 2007          QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

5

6                       By

7                         John B. Quinn
                        Attorneys for Defendant and Counter-
8                         claimant Mattel, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT __A__

PAGE __13__

-78-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

2154363.2

# EXHIBIT B

CONFORMED COPY

FILED

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 90378)
(johnquinn@quinnemanuel.com)
Michael T. Zeller (Bar No. 196417)
(michaelzeller@quinnemanuel.com)
Jon D. Corey (Bar No. 185066)
(joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

2009 MAY 22  PM 4: 44

CLERK. U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
RIVERSIDE

BY_____

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>              Plaintiff,<br><br>         v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>              Defendant.<br><br><br>AND CONSOLIDATED CASES | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated With Case No. 04-9059 and Case No. 05-2727<br><br>MATTEL, INC.'S THIRD AMENDED ANSWER IN CASE NO. 05-2727 AND COUNTERCLAIMS FOR:<br><br>1.  COPYRIGHT INFRINGEMENT;<br>2.  VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT;<br>3.  CONSPIRACY TO VIOLATE THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT;<br>4.  MISAPPROPRIATION OF TRADE SECRETS;<br>5.  BREACH OF CONTRACT;<br>6.  INTENTIONAL INTERFERENCE WITH CONTRACT;<br>7.  BREACH OF FIDUCIARY DUTY;<br>8.  AIDING AND ABETTING BREACH OF FIDUCIARY DUTY;<br>9.  BREACH OF DUTY OF LOYALTY;<br><br><br>**PUBLIC REDACTED**<br><br><br>**Volume II** |

THIRD AMENDED ANSWER AND COUNTERCLAIMS

EXHIBIT _B_

PAGE _14_

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

10. AIDING AND ABETTING
    BREACH OF DUTY OF
    LOYALTY;
11. CONVERSION;
12. UNFAIR COMPETITION;
13. AVOIDANCE OF INTENTIONAL
    AND CONSTRUCTIVE
    FRAUDULENT TRANSFERS
    UNDER UNIFORM
    FRAUDULENT TRANSFER ACT;
    AND
14. DECLARATORY RELIEF

DEMAND FOR JURY TRIAL

00505.07209/2875224.1

THIRD AMENDED ANSWER AND COUNTERCLAIMS

EXHIBIT __B__

PAGE __15__

**THIRD AMENDED ANSWER**

1

2        Defendant Mattel, Inc. ("Mattel") answers the Complaint of MGA

3   Entertainment, Inc. ("Complaint") as follows:

4                        Preliminary Statement

5        The Complaint in this case contravenes <u>Rule</u> 8(a) of the <u>Federal Rules</u>

6   <u>of Civil Procedure</u> in multiple respects. For example, in many places, the Complaint

7   improperly mixes factual averments with argumentative rhetoric. The Complaint

8   also includes a selective recitation of alleged historical facts and "rumor," much of

9   which is both irrelevant and inflammatory in tone and content. In addition, many of

10  the allegations of the Complaint are overly broad, vague or conclusory and include

11  terms which are undefined and which are susceptible to different meanings.

12  Accordingly, by way of a general response, all allegations are denied unless

13  specifically admitted, and any factual averment admitted is admitted only as to the

14  specific facts and not as to any conclusions, characterizations, implications or

15  speculations which are contained in the averment or in the Complaint as a whole.

16  These comments and objections are incorporated, to the extent appropriate, into

17  each numbered paragraph of this Third Amended Answer.

18        Mattel further submits that the use of the headings throughout the

19  Complaint is improper, and therefore no response to them is required. In the event

20  that a response is required, Mattel denies those allegations.

21        The Complaint also contains many purported photographs of various

22  items, and it uses one or more headings purporting to describe, either individually or

23  in groups, these various photographs. The images of these photographs contained in

24  the Complaint are all relatively small and some are of less than optimal quality,

25  making it difficult to evaluate the adequacy of the photographs or their fairness and

26  accuracy in depicting what they purport to represent. The Complaint also does not

27  describe the circumstances or time frame in which these photographs were taken,

28  and in many cases does not identify, or does not sufficiently or properly identify, the

1  the agreement, including those he purportedly provided while still a Mattel
2  employee, purportedly would be considered "works for hire" of MGA; and that all
3  intellectual property rights to preexisting works by Bryant, including Bratz designs,
4  purportedly were assigned to MGA.

5  **IV. MGA STEALS MATTEL TRADE SECRETS IN MEXICO**

6       44. On information and belief, in or about late 2003 or early 2004,
7  MGA decided to open business operations in Mexico. Faced with the difficult task
8  of developing an overall strategy for expanding into a market in which it had only a
9  nominal presence and no operations, MGA elected to steal Mattel's plans, strategy
10  and business information for the Mexican market and materials related to Mattel's
11  worldwide business strategies. As detailed below, MGA and Larian approached
12  three employees of Mattel's Mexican subsidiary ("Mattel Mexico"), enticed them to
13  steal Mattel's most sensitive business planning materials, and then hired them to
14  assist in establishing and running MGA's new Mexican subsidiary.

15      **A. MGA Hires Three Senior Mattel Employees in Mexico**

16       45. Carlos Gustavo Machado Gomez ("Machado") was the Senior
17  Marketing Manager, Boys Division, for Mattel Mexico, a position of trust and
18  confidence. He was employed at Mattel Mexico from April 1, 1997 until April 19,
19  2004. His duties included short, medium and long-term marketing planning,
20  generating product sales projections, and assisting in creation of the media plan. In
21  his position, Machado had access to highly confidential and sensitive marketing
22  and product development information. Machado had an employment agreement
23  with Mattel in which he agreed to maintain the confidentiality of Mattel's protected
24  information. Mattel's policies also required Machado to protect Mattel's
25  proprietary information and not to disclose it to competitors.

26       46. Mariana Trueba Almada ("Trueba") was the Senior Marketing
27  Manager, Girls Division, for Mattel Mexico, a position of trust and confidence.
28  She was employed at Mattel Mexico from November 3, 1997 until April 19, 2004.

-40-

EXHIBIT _B_

PAGE _17_

THIRD AMENDED ANSWER AND COUNTERCLAIMS

1    Like Machado, her duties included short, medium and long-term marketing
2    planning, generating product sales projections, and assisting in creation of the
3    media plan. In her position, Trueba had access to highly confidential and sensitive
4    marketing and product development information. Trueba had an employment
5    agreement with Mattel in which she agreed to maintain the confidentiality of
6    Mattel's protected information. Mattel's policies also required Trueba to protect
7    Mattel's proprietary information and not to disclose it to competitors.

8        47.    Pablo Vargas San Jose ("Vargas") was a Senior Trade Marketing
9    Manager with Mattel Mexico, a position of trust and confidence. He was employed
10   at Mattel Mexico from March 29, 2001 until April 19, 2004. Vargas was
11   responsible for ensuring that point-of-sale promotions were carried out, analyzing
12   the results of such promotions, negotiating promotion budgets, and generally
13   managing promotional activities. Vargas also had access to highly confidential and
14   sensitive marketing and product development information. Vargas had an
15   employment agreement with Mattel in which he agreed to maintain the
16   confidentiality of Mattel's protected information. Mattel's policies also required
17   Vargas to protect Mattel's proprietary information and not to disclose it to
18   competitors.

19       48.    Beginning in late 2003 or early 2004, Machado, Trueba and
20   Vargas began planning to leave Mattel Mexico to join MGA. In connection with
21   that plan, and with the encouragement of Larian and other MGA officers operating
22   in the United States, they began accessing, copying and collecting proprietary
23   Mattel documents to take with them. On April 19, 2004, Machado, Trueba and
24   Vargas each resigned their positions with Mattel, effective immediately. They
25   stated that they had been hired by a Mattel competitor, but refused to identify that
26   competitor. In fact, they had been offered and accepted employment by MGA to
27   establish and run MGA's new operation in Mexico.

28

00505.07209/2875224.1

EXHIBIT ___B___   -41-
                  THIRD AMENDED ANSWER AND COUNTERCLAIMS
PAGE ___16___

**B.  Machado, Trueba and Vargas Stole Dozens of Confidential Trade Secret Marketing and Sales Documents for MGA's Benefit**

49.    Following these resignations, Mattel discovered that Machado, Trueba and Vargas had been in frequent telephonic and e-mail contact with MGA personnel, including Larian, for over three months prior to their resignations. The primary vehicle for these communications in furtherance of their "plot" was an America Online e-mail account with the address <plot04@aol.com>. On information and belief, during this time, Machado, Trueba and Vargas supplied Larian with certain Mattel confidential and proprietary information in order to prove their value to MGA and to improve their negotiating position vis-à-vis their respective employment contracts with MGA.

50.    In March 2004, Machado, Trueba and Vargas were making plans to travel from Mexico to Los Angeles to meet with MGA personnel in person prior to resigning their positions at Mattel. Also, by at least March 3, 2004, Machado, Trueba and Vargas were discussing with MGA personnel, including Larian, specific details regarding setting up MGA offices in Mexico City. On information and belief, prior to their resignations, Larian and others at MGA directed Machado, Trueba and Vargas to steal virtually all Mattel confidential and proprietary information that they could access and bring it with them to MGA. This was reflected in, among things, e-mail messages that Mattel had discovered after Machado, Trueba and Vargas had resigned. For example, on March 22, 2006, approximately one month before they resigned, Machado, Trueba and Vargas wrote an e-mail message from the <plot04@aol.com> e-mail account addressed to Larian, MGA's General Manager Susan Kuemmerle and another MGA officer Thomas Park. In that e-mail message, Machado, Trueba and Vargas sought to prove their value in this endeavor to MGA by writing: "Attached you will find our analysis for future discussion. We will be available during the nights of the week after 16:30 Los Angeles time . . . ." In another e-mail message, showing that the

1  participants intentionally sought to maximize the damage to Mattel from their
2  conduct, Kuemmerle wrote to Larian and Park: "Gustavo, Mariana and Pablo want
3  to resign (all at the same time, and you can believe my smile!) next Wednesday."

4      51.   Beginning on April 12, 2004, a week before his resignation and
5  after numerous communications and meetings with Larian and other MGA
6  personnel, Machado began transferring additional Mattel confidential and
7  proprietary information to a portable USB storage device (also know as a "thumb
8  drive") that he connected to his Mattel computer.  On Friday, April 16, 2004, the
9  last business day before he gave notice, Machado copied at least 70 sensitive
10  documents to the portable USB storage device.

11      52.   Starting on April 12, 2004, Vargas also copied a host of
12  confidential and proprietary materials to a portable USB storage device, including
13  sales plans, sales projections and customer profiles.

14      53.   On April 16, 2004, Trueba also copied Mattel confidential and
15  proprietary information to a portable USB storage device connected to her Mattel
16  computer.

17      54.   With full knowledge that she was going to leave Mattel for a
18  competitor, Trueba also took steps to increase further her access to Mattel's
19  confidential information shortly before her resignation.  For example, just four days
20  before leaving, Trueba went out of her way to seek to attend a meeting at which
21  Mattel personnel analyzed BARBIE programs for the United States, Canada and
22  South America.  Two days before her resignation, she contacted both a Mattel
23  employee located in El Segundo, California and Mattel's advertising agency to
24  request updated confidential information about advertising plans for BARBIE.  On
25  information and belief, Trueba acted at the direction of MGA and Larian and did so
26  in order to obtain further information that would allow MGA to obtain unfair
27  competitive advantage over Mattel.

28

EXHIBIT __B__  -43-  THIRD AMENDED ANSWER AND COUNTERCLAIMS

PAGE __20__

55.  Machado, Trueba and Vargas stole virtually every type of document a competitor would need to enter the Mexican market and to unlawfully compete with Mattel in Mexico, in the United States, and elsewhere.  They stole global internal future line lists that detailed anticipated future products; production and shipping costs for Mattel products; daily sales data for Mattel products; customer data; sales estimates and projections; marketing projections; documents analyzing changes in sales performance from 2003 to 2004; budgets for advertising and promotional expenses; strategic research reflecting consumer responses to products in development; media plans; consumer comments regarding existing Mattel products; customer discounts and terms of sale; customer inventory level data; assessments of promotional campaign success; market size historical data and projections; marketing plans and strategies; merchandising plans; retail pricing and marketing strategies; and other similar materials.

56.  The stolen data was not limited to the Mexican market.  The information stolen would, and did, give MGA an unfair competitive advantage in the United States and around the world.  Further, the stolen information was not located exclusively in Mexico, but included confidential and proprietary information that resided on Mattel computers in Phoenix, Arizona and El Segundo, California, and/or documents which were originally created by personnel in El Segundo.  Included among these stolen documents was one of Mattel's earliest internal global line lists, which included information for BARBIE products for the upcoming year and included, for each product, the expected profit margin, advertising expenditures, expected volume and marketing strategy.  On information and belief, Machado, Trueba or Vargas delivered that internal line list to Larian or another MGA officer during their negotiations with MGA.

57.  MGA has used the information taken from Mattel to obtain an unfair advantage over Mattel, including in both the United States and Mexico.  In fact, MGA later publicized its claim that, in 2005, it had increased its Mexican



1   market share by 90 percent over the prior year. This increase came at the expense

2   of Mattel, which lost market share during 2004 in Mexico and was forced to

3   increase its advertising and promotional spending to offset further losses.

4          58.   Machado, Trueba and Vargas attempted to conceal their

5   widespread theft of Mattel's proprietary information. For example, Machado ran a

6   software program on his Mattel personal computer in an attempt to erase

7   information, including information that would reveal the addresses to which he had

8   sent, or from which he had received, e-mail messages. On information and belief,

9   for the same purpose Machado also damaged the hard drive of the personal

10  computer that he used at Mattel.

11         59.   On information and belief, on April 19, 2004, immediately after

12  Machado, Trueba and Vargas simultaneously resigned, they traveled from Mexico

13  to Los Angeles to meet with MGA personnel, including Larian, in person.

14         60.   Mattel notified Mexican authorities about the theft of its trade

15  secret and confidential information. On October 27, 2005, the Mexican Attorney

16  General Office obtained a search warrant from the Mexican Federal Criminal

17  Courts for MGA's facilities in Mexico City. In that search, the Mexican authorities

18  found and seized from MGA's offices both electronic and paper copies of a large

19  number of documents containing Mattel trade secrets, including those that Mattel

20  discovered through its forensic investigations, plus many others that Mattel had not

21  known had been stolen.

22         61.   Based on Machado's "performance" in Mexico, Isaac Larian

23  subsequently promoted Machado, and he was transferred to MGA's main office in

24  Van Nuys, California. When deposed in connection with this case, Machado

25  refused to answer questions about his misconduct and instead invoked the Fifth

26  Amendment over 100 times. On information and belief, Machado has resided at

27  times relevant hereto in the County of Los Angeles, California, and on information

28  and belief, currently resides in Mexico.

-45-

EXHIBIT _B_

THIRD AMENDED ANSWER AND COUNTERCLAIMS

PAGE _22_

1          17.   That Mattel have such other and further relief as the Court may

2  deem just and proper.

3

4  DATED:  May 22, 2009         QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

5

6                       By /s/ John B. Quinn

7                         John B. Quinn
Attorneys for Defendant and Counter-

8                         claimant Mattel, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

00505.07209/2875224.1

-100-
THIRD AMENDED ANSWER AND COUNTERCLAIMS

☒ AOL Mail

| | |
|---|---|
| Asunto: | RE: Mexico |
| Fecha: | Mar, 23 Mar 2004 5:24:48 PM Hora estándar de México |
| De: | Marlene Parker <MParker@mgae.com> |
| Para: | "Isaac Larian (President / CEO)" <Larian11@mgae.com>, "Plot04@aol.com" <Plot04@aol.com>, "plot04@yahoo.com.mx"<plot04@yahoo.com.mx> |
| Copiar a:: | "Susana (Argentrade)" <argentrade@aol.com>, "Tom Park (Chief Operating Officer)" <TPark@mgae.com> |

Enviado desde Internet (Detalles)

Hello Gustavo,

As Isaac has referenced below Tom is currently traveling in Canada and returns to the office this Thursday (Mar 18).
Tom has asked that I contact you to schedule a conference call with you on Thursday upon his return.  Can you please advise your availability and I will make arrangements for you and Tom to connect?  We will accommodate any timing that meets your schedule.

Kind regards,

Marlene
Marlene Parker
Executive Assistant to Chief Operating Officer
MGA Entertainment
Office: (818) 894-2525 x504
Fax:    (818) 894-7865
Mobile: (818) 207-0560

www.mgae.com

Meet the girls with a Passion for Fashion
www.BRATZpack.com

        ——Original Message——
        From: Isaac Larian (President / CEO)
        Sent: Monday, March 22, 2004 10:22 PM.
        To: 'Plot04@aol.com'; plot04@yahoo.com.mx
        Cc: Susana (Argentrade); Tom Park (Chief Operating Officer)
        Subject: RE: Mexico

        Gustavo,


        Thanks.

☒  Responder

☒  Reenviar

☒  Responder a Todos

☒  Agregar Direcciones

☑

EXHIBIT __C__ PAGE _584_   M 0059790

EXHIBIT __D__
PAGE __24__

Congratulations to Mariana. She better STOP smoking!

The package we offered you give all of you the same or MORE than what you asked for. It just has a performance clause ( bonuses) based on performance.

As a company policy, we do not give anyone signing bonus.

Tom is traveling to Canada and be back Thursday and will explain the offer.

Isaac Larian
CEO
Please note my new e mail address below
MGA ENTERTAINMENT
*A Consumer Entertainment Product Company*
16730 Schoenborn Street
North Hills, California, 91343-6122
Tel: 818-894-3150
Fax:818-894-1267
Larian11@MGAE.COM
www.MGAE.COM
Meet the girls with Passion for Fashion
www.Bratzpack.com

-----Original Message-----
From: Plot04@aol.com [mailto:Plot04@aol.com]
Sent: Monday, March 22, 2004 6:36 PM
To: Larian11@mgae.com; plot04@yahoo.com.mx
Cc: Argentrade@aol.com; TPark@mgae.com
Subject: Re: Mexico

EXHIBIT _____ C _____ PAGE 585       M 0059791

EXHIBIT B
PAGE 25

Dear Isaac & Tom,

Please find attached our analisys, for our further discussion. We will be available weeknights after 16:30 LA time, please confirm.

Regards.

Guardar Como | Rw | Imp      F₄   2 de 7   F₄

☐ Incluir el texto original en respuesta.

EXHIBIT _C_ PAGE _580_      M 0059792

EXHIBIT _B_
PAGE _26_

# EXHIBIT C

ORIGINAL

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 090378)
2    (johnquinn@quinnemanuel.com)
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
6  Facsimile: (213) 443-3100

7  Attorneys for Mattel, Inc.

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10                        EASTERN DIVISION

11

12 CARTER BRYANT, an individual,       CASE NO. CV 04-9049 SGL (RNBx)
                                        Consolidated with
13            Plaintiff,                Case No. CV 04-09059
                                        Case No. CV 05-02727
14      vs.
                                        **DISCOVERY MATTER**
15 MATTEL, INC., a Delaware
   corporation,                         **[To Be Heard By Discovery Master
16                                      Hon. Edward Infante (Ret.) Pursuant To
              Defendant.                The Court's Order Of December 6, 2006]**
17
                                        MATTEL, INC.'S NOTICE OF MOTION
   AND CONSOLIDATED ACTIONS            AND MOTION TO COMPEL:
18
                                        (1) DEPOSITION OF CARLOS
19                                      GUSTAVO MACHADO GOMEZ;

20                                      (2) CONSENT TO PRODUCTION OF
                                        ELECTRONIC MAIL MESSAGES; AND
21
                                        MEMORANDUM OF POINTS AND
22                                      AUTHORITIES

23                                      [Declaration of Jon D. Corey filed
                                        concurrently]
24
                                        Hearing Date:     TBA
25                                      Time:             TBA
                                        Place:            Telephonic Hearing
26
                                        Discovery Cut-off:      January 28, 2007
27                                      Pre-trial Conference:   May 5, 2008
                                        Trial Date:             May 27, 2008
28

07209/2296350.1

EXHIBIT ____C____

PAGE ___27___

MATTEL, INC.'S MOTION TO COMPEL RE MACHADO

1 | TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2 |      PLEASE TAKE NOTICE that, at a time and place of hearing to be set by

3 | Discovery Master Hon. Edward Infante (Ret.), Mattel, Inc. will, and hereby does,

4 | move the Discovery Master, pursuant to Federal Rules of Civil Procedure 30 and 37,

5 | for an order (a) compelling the deposition of defendant Carlos Gustavo Machado

6 | Gomez in Los Angeles, California or Mexico City, Mexico, on or before December

7 | 30, 2007; and (b) compelling Machado to provide his consent to the disclosure of

8 | relevant electronic mail messages from his internet service providers.

9 |      This Motion is made on the ground that, despite repeated requests by Mattel

10 | and a prior agreement that Machado's deposition would take place on October 26,

11 | 2007, counsel for Machado now refuses to produce Machado, a party-defendant in

12 | this case, for deposition or even to offer dates for his deposition.  This Motion is

13 | made on the further ground that Machado has used electronic mail services from

14 | third-party internet service providers for communications in connection with his

15 | trade secret theft and disloyalty, but has refused to produce electronic mail messages

16 | or to consent to their production from third-parties.

17 |      This Motion is based on this Notice of Motion and Motion, the accompanying

18 | Memorandum of Points and Authorities, the Declaration of Jon D. Corey, the

19 | records and files of this Court, and all other matters of which the Discovery Master

20 | may take judicial notice.

21

22

23

24

25

26

27

28

EXHIBIT __C__

PAGE __29__

07209/2296350.1

ii

## Statement of Local Rule 37-1 Compliance

The parties met and conferred regarding this motion on October 18, 2007 and times thereafter.

DATED:  November 15, 2007            QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP


By _____
    Jon D. Corey
    Attorneys for Mattel, Inc.

EXHIBIT __C__

PAGE __29__

iii

07209/2296350.1

1

# **TABLE OF CONTENTS**

2

**Page**

3

4 PRELIMINARY STATEMENT ............................................................................... 1

5 STATEMENT OF FACTS ..................................................................................... 2

6 ARGUMENT ........................................................................................................ 8

7 I.     THE COURT SHOULD COMPEL MACHADO'S DEPOSITION ................ 8

8       A.     Machado Cannot Avoid Deposition Because He Is In Mexico ............ 8

9       B.     Machado Cannot Avoid Deposition Because He May Invoke the
              Fifth Amendment to Certain Questions .................................................. 9

10 II.    THE COURT SHOULD COMPEL MACHADO TO DISCLOSE
11       RELEVANT EMAILS ................................................................................ 11

12 CONCLUSION .................................................................................................... 12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

EXHIBIT _C_

PAGE _30_

28

1

## TABLE OF AUTHORITIES

2

**Page**

3

### Cases

4

Bear Stearns & Co. v. Wyler,
    182 F. Supp. 2d 679 (N.D. Ill. 2002)...................................................................10

Camelot Group, Ltd. V. W. A. Krueger Co.,
    486 F. Supp. 1221 (D.C.N.Y. 1980)..................................................................11

Federal Savings and Loan Ins. Corp. v. Molinaro,
    889 F.2d 899 (9th Cir. 1989) ...........................................................................11

International Business Machines Corp. v. Brown,
    857 F. Supp. 1384 (C.D. Cal. 1994)..................................................................11

O'Grady v. Superior Court,
    139 Cal. App. 4th 1423 (2006) .........................................................................11

United States v. Balsys,
    524 U.S. 666 (1998)..........................................................................................10

United States v. Hansen,
    233 F.R.D. 665 (S.D. Cal. 2005) .......................................................................9

United States v. Pierce,
    561 F.2d 735 (9th Cir. 1977) .............................................................................9

### Statutes

Fed. R. Civ. P. 26(d) .............................................................................................8

Fed. R. Civ. P. 30(a) .............................................................................................8

### Miscellaneous

2A Wright & Miller, Federal Practice and Procedure: Criminal § 407 at 51 (3d ed.
    2000) ..................................................................................................................10

8 Wright & Miller, Federal Practice and Procedure § 2018 (2d ed. 1994) .................9

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT ___C___

PAGE ___31___

07209/2296350.1

-v-

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

Carlos Gustavo Machado Gomez ("Machado") is a current MGA executive and is named as a party-defendant in this case for his trade secret theft and other misconduct. When Machado was at Mattel Mexico, MGA recruited him and two co-workers to leave Mattel. On their way out of Mattel (and evidently even before then), Machado and the others downloaded and took thousands of pages containing Mattel trade secrets. Mattel informed Mexico law enforcement, who executed a search warrant on MGA's offices in Mexico City, where they discovered trade secrets stolen from Mattel.

Mattel first sought Machado's deposition on July 23, 2007. All parties agreed with Machado's prior counsel, James Spertus, that Machado's deposition would occur on October 26, 2007. The case was then stayed at MGA's request based on its substitution of counsel, so the deposition was postponed. Now, Machado's new counsel flatly refuses either to produce Machado or provide dates for his deposition. As one of his most recent excuses for his stonewalling, Machado claims that because he is being criminally prosecuted in Mexico for trade secret theft, he is immunized on a wholesale basis from appearing for deposition and from producing any other discovery. That is not even arguably the law and constitutes no legitimate basis for Machado's obstructionism.

Further thwarting basic discovery, Machado refuses to consent to the release of emails from accounts used to facilitate the trade secret thefts and other unlawful acts. Discovery of the emails is plainly proper, including because they are reasonably calculated to lead to the discovery of admissible evidence concerning his and MGA's trade secret thefts and to the predicate acts underlying Mattel's RICO claims. His justification for refusing is that the emails from the accounts had supposedly been produced. In fact, Machado has not produced them.

EXHIBIT __C__

PAGE __32__

1      Mattel respectfully requests an order compelling Machado to sit for deposition,
2 in Los Angeles or Mexico, no later than December 30, 2007.  It also respectfully
3 requests that Machado be compelled to provide his consent to provide his consent to the
4 disclosure of emails from his internet service providers

5 **Statement of Facts**

6     <u>Machado Stole Mattel Trade Secrets</u>.  In April 2004, Machado and two other
7 executives left Mattel Mexico to work for MGA.  Isaac Larian, MGA's CEO, Thomas
8 Park, MGA's then COO, and Susanna Kuemmerle, head of MGA's Mexican operations,
9 were each heavily involved in "recruiting" Machado and his co-workers to MGA.
10 Machado admits, that in the months prior to their resignations, he and his two
11 colleagues "discussed with MGA personnel, including Larian, employment at MGAE
12 de Mexico" and used an AOL e-mail account with the address <plot04@aol.com> in
13 order to do so.[1]  Larian too admits these communications took place.[2]

14     While MGA was recruiting them, Machado and the other then-Mattel employees
15 prepared an "analysis" to justify their worth to MGA.[3]  As a result of this analysis and
16 other information, MGA offered to pay each of them, to do the same jobs for a smaller
17 company, far more than they were earning at Mattel -- with potentially hefty bonuses
18 based on MGA's revenue growth -- and, apparently, to offered to give them all cars.[4]

19

20 [1]   Second Amended Answer and Counterclaims, ¶¶ 37-44, Corey Dec., Exh. 1.;
21 Machado's Amended Answer and Affirmative Defenses, ¶ 43, dated Sep. 24, 2007, Corey Dec., Exh. 2.

22 [2]   Isaac Larian's Answer and Affirmative Defenses, dated August 13, 2007, ¶¶
23 42-43, Corey Dec., Exh. 3.

24 [3]   Email from <plot04@aol.com> email address to Isaac Larian, dated March 22,
25 2004, Corey Dec., Exh. 4.

26 [4]   <u>Id.</u>; Email from Tom Park, MGA's Chief Operating Officer, to the
<plot04@aol.com> email address and copying Isaac Larian, dated March 30, 2004,
27 Corey Dec., Exh. 5; Email from Isaac Larian to the <plot04@aol.com> email
address dated March 23, 2004, 2007, Corey Dec., Exh. 6.

EXHIBIT _C_

PAGE _33_

28

-2-
MATTEL, INC.'S MOTION TO COMPEL RE MACHADO

1    Before they left Mattel, Machado and the others stole virtually every type of
2  document that a competitor would need to enter into the market in Mexico and to
3  compete with Mattel worldwide.  These included global internal future line lists that
4  detailed anticipated future products, production and shipping costs for Mattel products;
5  daily sales data for Mattel products; customer data; sales estimates and projections;
6  marketing projections; documents analyzing changes in sales performance from 2003 to
7  2004; budgets for advertising and promotional expenses; strategic research reflecting
8  consumer responses to products in development; media plans; consumer comments
9  regarding existing Mattel products customer discounts and terms of sale; customer
10 inventory level data; assessments of promotional campaign success; market size
11 historical data and projections; marketing plans and strategies; merchandising plans;
12 retail pricing and marketing strategies; and other similar materials.[5]

13    Machado and his co-conspirators ultimately resigned from Mattel on the same
14 day, April 19, 2004, but refused to say where they were going.[6]  And, Machado's Mattel
15 computer mysteriously would not function.  With its suspicions raised, Mattel began to
16 investigate.  It discovered that Machado and the others had downloaded and taken
17 thousands of pages containing Mattel trade secrets when they left.[7]  When Mattel
18 discovered this, it informed law enforcement officials in Mexico, who subsequently
19 obtained and executed a search warrant on MGA's Mexico City offices.[8]  They
20 discovered in those offices not only the information Mattel thought had been stolen, but
21
22
23  [5]  Second Amended Answer and Counterclaims, ¶ 48, Corey Dec. Exh. 1.

24  [6]  Second Amended Answer and Counterclaims, ¶¶ 44-46, Corey Dec., Exh. 1.;
    Machado's Amended Answer and Affirmative Defenses, ¶¶ 44-46, dated Sep. 24,
25  2007, Corey Dec., Exh. 2; Isaac Larian's Answer and Affirmative Defenses, dated
    August 13, 2007, ¶ 41, Corey Dec., Exh. 3.
26
    [7]  Second Amended Answer and Counterclaims, ¶ 53, Corey Dec., Exh. 1.
27
    [8]  Id.
28

EXHIBIT __C__

PAGE __34__

1  thousands of other pages that Mattel did not know they had taken.[9]  Even after this,

2  MGA promoted Machado and transferred him to Los Angeles.[10]  Machado and his co-

3  workers have been indicted in Mexico for criminal trade secret theft.

4      Mattel and Machado Agree That His Deposition Would Occur on October 26.

5  Mattel began seeking deposition dates from Machado on June 4, 2007.  On September

6  3, 2007, James Spertus, counsel for Machado, confirmed that October 26, 2007 was an

7  "acceptable date" for Machado's deposition.[11]  The next day Mattel served a deposition

8  notice that confirmed the parties' agreement.[12]  Counsel for MGA and Bryant also

9  agreed to the October 26, 2007 deposition.[13]

10      Machado's New Counsel Refuses To Produce Machado for Deposition.  On

11  October 2, 2007, Mr. Spertus withdrew as counsel for Machado.[14]  On October 4, 2007,

12  Machado's new counsel, Alexander Cote, contacted Mattel to discuss, among other

13  things, Machado's pending deposition.[15]  He confirmed that Machado would be made

14

15

16  [9]  Id.

17  [10]  Id. ¶ 54.

18  [11]  See Letter from Spertus to Corey, dated September 3, 2007, Corey Dec., Exh. 11.

19  [12]  See Corey Dec., ¶ 14; see also Notice of Deposition of Carlos Gustavo
20  Machado, dated September 4, 2007, Corey Dec., Exh. 12; Email from Corey to
21  Michael Page, Amman Khan and Diana Torres attaching document that listed
   Machado under a heading of "Witnesses Whose Dates Have Been Agreed Upon
22  And Set After Meet and Confers Requested By Mattel," and stating that Machado's
23  deposition was set for October 26, 2007, Corey Dec., Exh. 13.

24  [13]  See Letter from Corey to Khan, dated September 25, 2007, Corey Dec., Exh. 14.

25  [14]  See Order On Request for Approval of Substitution of Attorney, dated
26  October 2, 2007, Corey Dec., Exh. 15.

27  [15]  See e-mail message from Alexander Cote to Corey, dated October 5, 2007,
   Corey Dec., Exh. 16.

28

EXHIBIT __C__

PAGE __35__

-4-

MATTEL, INC.'S MOTION TO COMPEL RE MACHADO

1  available for deposition, but said that he would need to "update [Mattel] on Machado's
2  availability for his deposition as [counsel] get[s] more information."[16]

3    Mattel then met with Machado's counsel to discuss, among other things,
4  Machado's deposition.[17] Mr. Cote told Mattel that the deposition could not take place
5  on October 26, 2007 because of restrictions on Machado's mobility to and from Mexico
6  resulting from the criminal indictment in Mexico, but he assured Mattel that alternate
7  deposition dates would be forthcoming.[18] Mr. Cote also began asserting that because of
8  the criminal charges pending against him in Mexico, Machado would be invoking the
9  Fifth Amendment for *some* questions at his deposition.[19] He asked Mattel to consider a
10  stipulation that Machado will assert his Fifth Amendment Privilege to avoid the need
11  for a deposition entirely.[20] Mattel declined because Machado would not and could not
12  agree that he will invoke for all questions and again asked for deposition dates.[21]

13    Mr. Cote did not respond.  Mattel sent another letter  requesting "dates in
14  November [] when Machado will be available for deposition."[22] By telephone, Mr.
15  Cote told Mattel that Machado was restricted from leaving Mexico due to criminal
16  proceedings against him there as a result of the his theft of Mattel's trade secrets and
17  did not provide any replacement dates for Machado's cancelled deposition.[23] Mattel
18  reiterated its offer to take Machado's deposition in Mexico and requested dates  when

19  ────────────────────
20    [16]  See id.

21    [17]  See Letter from B. Dylan Proctor to Cote, dated October 18, 2007, Corey
       Dec., Exh. 19.

22    [18]  See id.

23    [19]  See id.

24    [20]  See id.

25    [21]  See id.

26    [22]  See Letter from Stephen Hauss to Cote, dated October 24, 2007, Corey Dec.,
       Exh. 20.

27    [23]  See Letter from Hauss to Cote, dated October 25, 2007, Corey Dec., Exh. 21.

28

EXHIBIT    C

PAGE    36

-5-

1  he would be available in Mexico.[24]  Mr. Cote did not respond, so Mattel sent another
2  letter that reiterated the need to schedule Machado's deposition.[25]

3      Mr. Cote responded in a November 1, 2007 letter. He stated that Machado "may
4  be available for deposition at the end of November in the United States,"[26] but
5  suggested that a deposition "[would] not be fruitful" because Machado would assert his
6  Fifth Amendment right to most of Mattel's questions. [27] Mattel explained in response
7  that any Fifth Amendment right could not allow him to avoid his deposition entirely.
8  Mattel offered to take Machado's deposition in Mexico to accommodate his travel
9  restrictions due to his prosecution in Mexico.[28] Mattel again requested deposition dates
10 in the location of counsel's choice in Los Angeles or in Mexico.[29]

11     Mr. Cote responded on November 5, 2007. He provided no dates for Machado's
12 deposition.  Instead, he reiterated that this deposition "[would] not be productive"
13 because it is "no secret that [Mattel] plans to ask Machado questions concerning
14 [Mattel's] allegations" to which Machado will invoke the Fifth Amendment.[30] Despite
15 Mattel's earlier offer to hold the deposition in a location of counsel's choice, and
16 rejecting Mattel's efforts to resolve any issue over the location of Machado's deposition,
17 counsel claimed that Mattel had provided no "justification" for "forcing counsel to
18

19  _____
    [24]  See id.

20  [25]  See Letter from Zeller to Nolan, dated October 29, 2007, Corey Dec., Exh.
21  23.

22  [26]  See Letter from Cote to Zeller, Corey, Proctor and Hauss, dated November 1,
    2007, Corey Dec., Exh. 24.
23  [27]  See id.

24  [28]  See Letter from Zeller to Cote, dated November 3, 2007, Corey Dec., Exh.
25  25.

26  [29]  See id.

27  [30]  See Letter from Cote to Zeller, dated November 5, 2007, Corey Dec., Exh.
    26.
28

EXHIBIT ___C___

PAGE ___37___

1  incur the expense of traveling to Mexico" for this deposition.  Mr. Cote then invited
2  Mattel to move to compel.[31]

3        <u>Machado Has Failed to Produce Emails to Which Mattel Is Entitled.</u>  Mattel
4  served Machado with Requests for Production on September 11, 2007 requesting,
5  among other things, relevant emails sent to and from him, including from the
6  <plot04@aol.com> account.[32]  Machado has produced no such e-mails to Mattel with
7  these documents.  Mattel also served a subpoena on Yahoo! on October 29, 2007
8  requesting the production of emails from Machado's <gus_cmt@yahoo.com> account.[33]
9  On that same day, Mattel sent a letter to Machado informing him that a subpoena had
10 been served on Yahoo! requesting documents identical to those requested in Mattel's
11 Requests for Production served on Machado on September 11, 2007 and requesting his
12 consent to the release of his emails from Yahoo! under the Stored Electronic
13 Communications Act.[34]  The letter attached a form for Machado to sign indicating his
14 consent.[35]  On November 1, 2007, Mr. Cote responded.  He wrote that "Mr. Machado
15 has already produced documents from his Yahoo! e-mail account."[36]  In reality,
16 Mr. Machado has produced only 124 pages of documents, none of which are emails
17
18
19
20    [31]  <u>Id.</u> at 2.

21    [32]  Mattel's First Set of Requests for Documents and Things to Machado, dated
22  September 11, 2007, Corey Dec., Exh. 30.

23    [33]  Notice of Subpoena Issued to Yahoo!, dated October 29, 2007, Corey Dec., Exh. 31.

24    [34]  Letter from Corey to Machado, care of Cote, dated October 29, 2007, at 1-2,
25  Corey Dec., Exh. 32.

26    [35]  <u>Id.</u>

27    [36]  Letter from Cote to Zeller, et al., dated November, 2007, at 2, Corey Dec.,
28  Exh. 25.

EXHIBIT ___C___

PAGE __38__

1 from the Yahoo! or any other account.[37] Nonetheless, Mr. Machado refused to consent
2 to the release of e-mail messages from that, or any other, email account.[38]

3 **Argument**

4 I. **THE COURT SHOULD COMPEL MACHADO'S DEPOSITION**

5   Machado stole Mattel trade secrets. In fact, he was the ring-leader of the theft in
6 Mexico. He is a party-defendant. Mattel has the absolute right to depose him. Fed. R.
7 Civ. P. 30(a) ("A party may take the deposition of any person, *including a party*, by
8 deposition upon oral examination without leave of court . . . .") (emphasis added).

9   A. **Machado Cannot Avoid Deposition Because He Is In Mexico**

10   After previously agreeing to attend a deposition, Machado now flatly refuses to
11 sit for deposition. Machado claimed that the criminal prosecution against him in
12 Mexico prevents him from leaving Mexico. This makes no sense given that days
13 before to refusing to provide Machado for deposition, his counsel said he could be
14 available in Los Angeles in late November.[39] And, in any event, to accommodate the
15 witness and to avoid any such issue, Mattel offered to depose him in Mexico on a date
16 of his choosing (so long as the date is soon). Machado has rejected that offer without
17 any plausible basis. Machado also has suggested that because his deposition relates to
18 Phase 2, Mattel should spend its time elsewhere. Machado may not, however, dictate
19 the manner in which Mattel conducts discovery. See Fed. R. Civ. P. 26(d) ("[M]ethods
20 of discovery may be used in any sequence."); see also October 31 Stay Order, Corey
21 Dec., Exh. 19, at 2 ("[T]he Court denies MGA's request to delay or otherwise bifurcate
22 discovery regarding Phase 2 issues."). Machado has not made and cannot make the

---

24 [37] Machado's Initial Disclosures Pursuant to Rule 26(a)(1), dated September 24,
25 2007, Corey Dec. Exh. 29.

26 [38] Letter from Cote to Zeller, et al., dated November 1, 2007, at 2, Corey Dec.,
  Exh. 24, at 2.
27 [39] See id.
28

EXHIBIT ___C___

PAGE ___39___

1   showing required to prevent Machado's deposition from going forward, as it must,
2   under Rule 30.

3       **B.    Machado Cannot Avoid Deposition Because He May Invoke the**
4       **Fifth Amendment to Certain Questions**

5       As his other excuse, Machado claims he is immune from deposition because he is
6   under criminal indictment in Mexico and will invoke his Fifth Amendment right to
7   avoid answering some questions.[40] His position is unavailing.

8       It is well settled that a Fifth Amendment claim can only "be raised in response to
9   *specific questions* propounded by the investigating party." United States v. Pierce, 561
10  F. 2d 735, 741 (9th Cir. 1977) (emphasis added).  Machado thus may not rely on a
11  blanket assertion of the Fifth Amendment to avoid being deposed entirely.  United
12  States v. Hansen, 233 F.R.D. 665, 668 (S.D. Cal. 2005) (holding that deponent could
13  not refuse to attend deposition under a blanket claim of privilege against self
14  incrimination) (citing cases). "The proper procedure is for the deponent to attend the
15  deposition, to be sworn under oath, and to answer those questions he or she can answer
16  without running a risk of incrimination. In this way a record can be made and the court
17  can determine whether particular questions asked did entitle the deponent to claim the
18  privilege." 8 Wright & Miller, Federal Practice and Procedure § 2018 (2d ed. 1994) at
19  273-74.

20      In fact, Judge Larson affirmed the Discovery Master's May 16, 2007 Order that
21  had rejected similar efforts by MGA to assert a blanket privilege claim to evade
22  deposition.  MGA asked the Court to sustain its blanket work-product objection to
23  providing any testimony in response to a Rule 30(b)(6) deposition topic regarding ink,
24  paper and chemical analysis conducted by an alleged MGA expert, Erich Speckin. The

25

26

---

27  [40]  See Letter from Cote to Corey, dated November 5, 2007, Corey Dec., Exh.
28  26.

EXHIBIT ___C___

PAGE  40

1  Discovery Master rejected that argument,[41] and MGA appealed. Judge Larson affirmed
2  the Discovery Master's ruling and explained: "To the extent that such a deposition has
3  the potential to encroach upon information protected by the work-product privilege,
4  then that objection must be made on a question-by-question basis. *MGA may not make*
5  *a blanket objection and justify its refusal to produce a Rule 30(b)(6) designee on this*
6  *topic based on that blanket objection.*"[42] That reasoning applies here with equal force.

7       Indeed, at a minimum, Mattel is entitled to depose Machado to determine
8  whether the he can even invoke the Fifth Amendment at all. For example, Mattel
9  believes that Mr. Machado is a Mexican national, not a U.S. citizen. Mattel is entitled
10 to inquire to determine Machado's residency status. While he formerly resided in the
11 United States, at least according to his counsel, he now resides in Mexico. This is
12 significant. In a civil case, a non-resident alien cannot invoke the Fifth Amendment
13 even if he or she learns the testimony may be incriminating. See, e.g., Bear Stearns &
14 Co. v. Wyler, 182 F. Supp. 2d 679, 683 (N.D. Ill. 2002) ("We fail to find it self-evident
15 that the Fifth Amendment's privilege against self-incrimination is available to non-
16 resident aliens. Wyler's failure to demonstrate the privilege's availability would be
17 reason enough to grant plaintiff's motion to compel, were there not a further deficiency
18 in Wyler's position."). Further, the current criminal prosecution against Machado is in
19 Mexico by Mexican prosecutors. The Fifth Amendment does not provide a privilege
20 against self-incrimination for foreign prosecutions. United States v. Balsys, 524 U.S.
21 666, 669 (1998); 2A Wright & Miller, Federal Practice and Procedure: Criminal § 407
22 at 51 (3d ed. 2000) (Fifth Amendment "does not protect a witness from giving evidence
23 that could be used against the witness in a prosecution in a foreign country"). Mattel is

24
25
26  [41]  May 16, 2007 Order Granting Mattel, Inc.'s Motion to Compel MGA to
    Produce Witnesses for Deposition Pursuant to Rule 30(B)(6), Corey Dec., Exh. 27.
27  [42]  July 5, 2007 Minute Order at 4, Corey Dec., Exh. 28.        EXHIBIT ___C___
28

1 || entitled to inquire about the basis for Machado's fear, if any, of prosecution in the
2 || United States before he may properly invoke the Fifth Amendment.

3         Finally, Machado has already admitted certain incriminating conduct in his
4 || Amended Answer and has invoked twelve separate defenses to his theft, which are
5 || discussed in his initial disclosures.[43]   The admitted conduct and defenses are not
6 || privileged and Mattel can inquire about them.  Indeed, the articulation of the defenses
7 || should constitute a waiver of any Fifth Amendment rights Machado may possess.
8 || Federal Savings and Loan Ins. Corp. v. Molinaro, 889 F. 2d 899, 903 (9th Cir. 1989)
9 || (holding that where defendant already has given partial deposition testimony on the
10 || substantive issues of the case, the Fifth Amendment privilege is "negligible");
11 || International Business Machines Corp. v. Brown, 857 F. Supp. 1384, 1389-90 (C.D.
12 || Cal. 1994) (holding that because defendants had already testified at deposition, there
13 || was no remaining Fifth Amendment privilege to assert); Camelot Group, Ltd. V. W. A.
14 || Krueger Co., 486 F. Supp. 1221, 1230 (C.D.N.Y. 1980) ("A witness or defendant in a
15 || civil case who has already testified to matters which tend to incriminate him has waived
16 || the privilege insofar as further questions seek the details of the matters to which he did
17 || testify.").  It would be patently unfair, and contrary to law, to allow Machado to
18 || purportedly defend himself with impunity, but to refuse to provide the most basic of
19 || discovery regarding the conduct he purports to defend.

20 || II.     **THE COURT SHOULD COMPEL MACHADO TO DISCLOSE**
21 ||         **RELEVANT EMAILS**

22         As a party to this action, Machado is obligated to direct his agents to produce
23 || documents within their possession.  Machado should be compelled to consent to the
24 || disclosure of e-mail communications by Yahoo!  If Machado continues to fail to give

25

26 || ――――――――――
   [43]   Amended Answer and Affirmative Defenses at 6:13-7:26, 18:21-22:19,
27 || Corey Dec., Exh. 2; Machado's Initial Disclosures Pursuant to Rule 26(a)(1), dated
   || September 24, 2007, Corey Dec. Exh. 29.          EXHIBIT ____ C
28

                                                        PAGE ___42___

1   his consent to the release of these documents, he should be sanctioned.  See O'Grady v.

2   Superior Court, 139 Cal. App. 4th 1423, 1446 (2006) (stating that where a party to an

3   email communication being sought is also a party to the litigation it is within the court's

4   power to require the party's consent to disclosure of the communication on pain of

5   discovery sanctions).  Machado's only excuse here -- that he himself has supposedly

6   already produced the emails--is demonstrably false.  In reality, Mr. Machado has

7   produced only 124 pages of documents, none of which are emails from the Yahoo!, or

8   any other, account.[44]

9        Mattel respectfully requests that the Discovery Master order Machado to provide

10  written consent to the production of relevant e-mails from any e-mail account (and to

11  identify each e-mail account) he has used in the past five years.

12                              **Conclusion**

13       For the foregoing reasons, the Discovery Master should grant Mattel's motion.

14

15  DATED:  November 15, 2007          QUINN EMANUEL URQUHART OLIVER &
                                       HEDGES, LLP
16

17                                 By
18                                    Jon D. Corey
                                      Attorney for Mattel, Inc.
19

20

21

22

23

24

25

26

27  [44]   Machado's Initial Disclosures Pursuant to Rule 26(a)(1), dated September 24,
28  2007, Corey Dec. Exh. 29.

EXHIBIT ___C___

PAGE __43__

07209/2296350.1

-12-

MATTEL, INC.'S MOTION TO COMPEL RE MACHADO

# Discovery Motions

2:04-cv-09049-SGL-RNB Carter Bryant v. Mattel Inc

(RNBx), AO279, DISCOVERY, RELATED-G

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

### Notice of Electronic Filing

The following transaction was entered by Corey, Jon on 11/16/2007 at 2:03 PM PST and filed on 11/16/2007

**Case Name:** Carter Bryant v. Mattel Inc
**Case Number:** 2:04-cv-9049
**Filer:** Mattel Inc
**Document Number:** 1122

**Docket Text:**
NOTICE OF MOTION AND MOTION to Compel Deposition of Carlos Gustavo Machado Gomez *; and (2) Consent to Production of Electronic Mail Messages* filed by plaintiff Mattel Inc. (Attachments: # (1) Declaration Declaration of Jon D. Corey)(Corey, Jon)

### 2:04-cv-9049 Notice has been electronically mailed to:

Christa M Anderson    canderson@kvn.com

Dale M Cendali    dcendali@omm.com

Jon D Corey    joncorey@quinnemanuel.com

Alexander H Cote    acote@obsklaw.com

Leah Chava Gershon    leah@spertuslaw.com

Patricia L Glaser    pglaser@chrisglase.com

James Paul Jenal    jjenal@omm.com

Thomas J Nolan    tnolan@skadden.com

Mark E Overland    moverland@obsklaw.com

Michael H Page    mhp@kvn.com

Brett Dylan Proctor    dylanproctor@quinnemanuel.com

David C Scheper    dscheper@obsklaw.com, feseroma@obsklaw.com

Diana M Torres    dtorres@omm.com

John Elliot Trinidad    jtrinidad@kvn.com, yjayasuriya@kvn.com

EXHIBIT ___C___

PAGE ___44___

Audrey Walton-Hadlock    awaltonhadlock@kvn.com

Matthew M Werdegar    mwerdegar@kvn.com

**2:04-cv-9049 Notice has been delivered by First Class U. S. Mail or by fax to: :**

Melanie Bradley
O'Melveny & Myers
7 Times Square
New York, NY 10036

Kendall Burr
O'Melveny and Myers
7 Times Square
New York, NY 10036

Michael C Keats
O'Melveny & Myers
7 Times Square
New York, NY 10036

John W Keker
Keker & Van Nest
710 Sansome St
San Francisco, CA 94111-1704

Kenneth A Plevan
Skadden Arps Slate Meagher & Flom
4 Times Sq
New York, NY 10036-6522

John B Quinn
Quinn Emanuel Urquhart Oliver & Hedges
865 S Figueroa St, 10th Fl
Los Angeles, CA 90017-2543

Johanna Schmitt
O'Melveny and Myers
7 Times Squire
New York, NY 10036

Michael T Zeller
Quinn Emanuel Urquhart Oliver & Hedges
865 S Figueroa St, 10th Fl
Los Angeles, CA 90017-2543

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**C:\Documents and Settings\markmurray\Desktop\Machado E-Filing\MotiontoCompelDepositionOfMachado.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=11/16/2007] [FileNumber=4964733-0
] [62afa855639cb41734ddb0d441c9a8791a8023f30d79c72b9f258c4586c10e555f8

EXHIBIT C
PAGE 45

a914f807053228c5b8071e9bfc982cf863ᵤ₅366ed51cff9c57c0115e8be8]]

**Document description:**Declaration Declaration of Jon D. Corey

**Original filename:**C:\Documents and Settings\markmurray\Desktop\Machado E-Filing\CoreyDeclaration.PDF

**Electronic document Stamp:**

[STAMP cacdStamp_ID=1020290914 [Date=11/16/2007] [FileNumber=4964733-1
] [6433bf19d512860596c2018cb9c2195da158e2da0bd087514c1c727c02e01702d4c
a9b4132d4b78496f11cee88b4501b231b7f27b7305062a974ea86cd89f11e]]

EXHIBIT _____ C

PAGE _____ 46

# EXHIBIT D
## FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

# EXHIBIT E

El Universal.com.mx – Printable version                Page 1 of 2

/logo EL UNIVERSAL
.com.mx/                          Printable format sponsored by /logo hp invent/


**Corporate Moment**
Alberto Aguilar
El Universal

Monday, November 27, 2006

### TV Azteca solves its finances

The TV station's strategy in terms of restructuring liabilities has advanced favorably by issuing instruments with better conditions and longer timeframes

One of the most relevant aspects in the recent TV Azteca operation is the strategy to go on restructuring its liabilities.

First, Ricardo Salinas Pliego's company sought alternatives in order to transfer part of its debt from dollars to pesos before the lowest domestic interest rates and now it is focusing on changing its liabilities into local currency for less burdensome alternatives with greater timeframes.

The company was recently given the task of distributing stock market certificates for 4 billion pesos as part of worldwide program of up to 6 billion pesos, under a modality that had already been used in 1994 that meant the securitization of part of its advertisers' contracts through a Trust that guarantees the payment of interests and principal to the document holders.

The stock certificates expire in 2020 with a grace period of five years to liquidate the principal, in addition to having the option of gradual repayment starting in 2011. The instruments will pay a TUE rate, plus 149 base points.

The funds that come from the distribution that Invex was in charge of will be used to make a short-term debt payment in advance; it mostly included stock market certificates that were issued under the same modality in 2004 and that to the date, total 3.139 billion pesos and the rest are for liquidating financial institution credits.

Fitch Ratings has granted the AA rating to the TV Azteca debt program as being one of the highest and most stable.

This firm highlighted that the stock market certificates have a protection mechanism against an eventual increase in the interest rate when limiting it to 15% during the first four years of the program.

### Bratz, bone of contention

When the toy manufacturer MGA decided to expand its Mexico operations in 2004, it hired three executives who had worked at Mattel, one of its main competitors.

Before Carlos Gustavo Machado Gomez, Mariana Trueba Almada and Pablo Vargas San Jose left Mattel, they decided to take more than just a keepsake.

It turns out that these executives had direct access to all the commercial projects and confidential information of all the company's categories, the same that they applied once they reached MGA.

http://www.mexiconews.com.mx/columnas/vi_62056.html          9/8/2009

EXHIBIT  $E$

PAGE  $51$

El Universal.com.mx – Printable version                     Page 2 of 2

One of the executives' first successes was to launch the Bratz doll, allowing their new company to increase their Mexican market participation to 90% in just one year.

Evidently, when Mattel noticed the plagiarism, it presented a lawsuit in the United States and turned the investigation over to the Office of the Attorney General of the Republic for crimes of theft, illegal use of the Bratz doll copyright, as well as other industrial secrets owned by Mattel in the United States. The damages to Mattel in terms of sales and market participation will be determined by the authorities themselves.

It is estimated that the Bratz commercialization and license concession alone, whose designs and brand have a copyright on behalf of Mattel in the United States and worldwide, MGA receives an annual income that surpasses 500 million dollars.

The investigation reveals that on April 19, 2004, Machado, Trueba and Vargas resigned their posts; although they said they had been hired by a Mattel competitor, they denied providing the name of their new company.

Four days before resigning, Trueba attended a meeting in which the Mattel personnel analyzed the Barbie programs for the US, Canada and South America, and obtained confidential information on advertising plans for Barbie that she later gave MGA.

As a result of the criminal lawsuit that Mattel presented before federal Mexican authorities, last October a judicial order was obtained to search the MGA facilities; electronic as well as paper copies were confiscated along with a large amount of documents that contained Mattel's commercial secrets.

Although the investigations continued, there are several questions about on the situation, especially anything related to the possible signing of letters where the executives agree to not reveal confidential information when they decide to be hired in a new company, particularly when it is a competitor.

**Cablevision, of high definition**

Discovery Networks and the Televisa Group subsidiary have signed an agreement to broadcast high-definition content, a technology that Cablevision has been offering for months to more than 475,000 customers. There are several documentaries from the Discovery Atlas series that were premiered worldwide last month.

The Mexican company's intent is to go on expanding the availability of high-definition productions, a factor that gives them an advantage when compared to other restricted TV companies.

Cablevision's third quarter sales grew 33% this year as a result of increased subscriptions and a 6% rise in its services fee. There were also greater profits due to World Cup advertising. On the other hand, sales costs increased 23% and operations rose 7%, results that partially affected the operation's profit, having reported a 147% growth when compared to the same period of the previous year.

raguilar@eluniversal.com.mx

© 2006 Copyright El Universal-El Universal Online

EXHIBIT __E__

PAGE __52__



**TRANSPERFECT**

ALBANY
AMSTERDAM
ATLANTA
AUSTIN
BARCELONA
BERLIN
BOSTON
BRUSSELS
CHARLOTTE
CHICAGO
DALLAS
DENVER
DUBAI
DUBLIN
FRANKFURT
GENEVA
HONG KONG
HOUSTON
IRVINE
LONDON
LOS ANGELES
MIAMI
MILAN
MINNEAPOLIS
MONTREAL
MUNICH
NEW YORK
PARIS
PHILADELPHIA
PHOENIX
PORTLAND
PRAGUE
RESEARCH
TRIANGLE PARK
SAN DIEGO
SAN FRANCISCO
SAN JOSE
SEATTLE
SINGAPORE
STOCKHOLM
STUTTGART
SYDNEY
TOKYO
TORONTO
VANCOUVER
WASHINGTON, DC

City of New York, State of New York, County of New York

I, Sara Hutchison, hereby certify that the document "Momento corporativo" is, to the best of my knowledge and belief, within the given parameters, a true and accurate translation from Spanish to English.

Sara Hutchison

Sworn to before me this
September 10, 2009

Signature, Notary Public

Katharine   Derekslis
Notary Public, State   New York
No. 01PE6?????
Qualified in QUEENS County
Commission Expires   Jan 29  2011

Stamp, Notary Public

EXHIBIT _E_

PAGE _53_

# EXHIBIT F

9/10/07 Palabra (Mex.) 2
2007 WLNR 17662044

Palabra (Mexico)
Copyright 2007 Grupo Reforma. All rights reserved

September 10, 2007

Volume 10: Issue 3570

Section: National

## Barbie is after Bratz for plagiarism

Abel Barajas

MEXICO. – The doll war taking place in the United States by the Mattel and MGA Entertainment companies reaches Mexico.

A federal court ordered the arrest warrants of three former Mattel executives that were hired by MGA, since the PGR (Attorney General of the Republic) holds them responsible for stealing industrial secrets from the company that manufactures the Barbie dolls and providing them to those who sell the Bratz dolls.

According to judicial sources, the First Unitary Court of the Federal District ordered the arrests of Mariana Trueba Almada, Pablo Vargas San Jose and Carlos Gustavo Machado Gomez, alleging that there is proof that they took 24 international commercial strategy documents from Mattel.

According to the regular judge Fermin Rivera Quintana, they had access to official documents, therefore their arrests were ordered for violating Article 223, Section 5, of the Federal Law of Industrial Property.

This section stipulates 2 to 6 years in prison and a fine of up to 10,000 salary days for anyone who seizes an industrial secret and provides it to a third party.

The indicted were able to obtain a suspension at the Fifth Unitary Court to avoid arrest, but Mariana Trueba was ordered to pay a bail of 5 million pesos.

Mattel and MGA have been at war for the US market, where the former has been displaced, having been number one in sales.

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

EXHIBIT _F_

PAGE _54_

But this dispute has reached the courts, where the doll manufacturers have made accusations of unfair competition and plagiarism.

The three indicted individuals in Mexico resigned Mattel in April 2004 and were hired by the competition.

Mattel accuses them of having stolen 24 documents, some of them being electronic, as well as their ISIS database, plans and the 2003 and 2004 sales projections, the press releases and seasonal orders for Wal Mart and Bodega Aurrera.

The Attorney General of the Republic investigated the case and performed an October 26, 2006 search on the MGA premises, in which a CD "with information considered an industrial secret owned by Mattel" was found.

The defendants have denied the charges. Mariana Trueba declared to a federal judge that she resigned on April 19, 2004 and did not attend the last week of the "Subsidiary Meetings Spring 2005" organized by Mattel in California.

It is estimated that the pecuniary losses caused to Mattel for the alleged theft of an industrial secret is calculated at 27,589,160 pesos.

---- INDEX REFERENCES ----

Language: Spanish

OTHER INDEXING: (United Mexican States)

KEYWORDS: First page

EDITION: Newspaper

Word Count:  498
9/10/07 PALABRA 2
END OF DOCUMENT

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

EXHIBIT  F

PAGE  55



**TRANSPERFECT**

ALBANY
AMSTERDAM
ATLANTA
AUSTIN
BARCELONA
BERLIN
BOSTON
BRUSSELS
CHARLOTTE
CHICAGO
DALLAS
DENVER
DUBAI
DUBLIN
FRANKFURT
GENEVA
HONG KONG
HOUSTON
IRVINE
LONDON
LOS ANGELES
MIAMI
MILAN
MINNEAPOLIS
MONTREAL
MUNICH
NEW YORK
PARIS
PHILADELPHIA
PHOENIX
PORTLAND
PRAGUE
RESEARCH
TRIANGLE PARK
SAN DIEGO
SAN FRANCISCO
SAN JOSE
SEATTLE
SINGAPORE
STOCKHOLM
STUTTGART
SYDNEY
TOKYO
TORONTO
VANCOUVER
WASHINGTON DC

City of New York, State of New York, County of New York

I, Sara Hutchison, hereby certify that the document "Va Barbie tras Bratz por plagio" is, to the best of my knowledge and belief, within the given parameters, a true and accurate translation from Spanish to English.

Sara Hutchison

Sworn to before me this
September 10, 2009

Signature, Notary Public

Katharine L Perekslis
Notary Public, State of New York
No. 01PE6181423
Qualified in QUEENS County
Commission Expires Jan 26, 2010
Stamp, Notary Public

EXHIBIT F

PAGE 56

# EXHIBIT G

/logo EL UNIVERSAL
.com.mx/                 Printable format sponsored by /logo hp invent/

**Names, names… and more names**
Alberto Aguilar
El Universal

Monday, April 6, 2009

* Along with Bancomer's IRS debacle, for not withholding ISR (income tax) in the Grand Cayman, and that of Banamex for expense reimbursement, as well as the RCentro radio station in LA and a purchase option of 110 million dollars, Banco DeUno continues to grow despite the crisis; Codusa to make bidding official.

LAST WEEK the director of toy maker MGA Entertainment, Susana Kuemmerle, did not appear to testify before the Tenth Federal Penal Procedure Court in the Federal District as part of the proceedings that the company also faces in Mexico with its rival Mattel.

A similar situation occurred with the parties charged in this matter; in this case, Mariana Trueba, Gustavo Machado and Pablo Vargas, who Mattel, the Barbie manufacturer, accuses of having taken confidential information from that company when they were employed there, and before joining MGA, owner of Bratz.

It is believed that the absence of the parties implicated by MGA is part of a strategy, in order to subsequently allege procedural violations, which would extend this matter, dating back to 2005 when Mattel first filed the charges, even longer.

The point would be to take the case to the SCJN, since MGA accuses the presiding judge, Veronica Judith Sanchez, of irregularities.

She was told that MGA is convinced that its opponents cannot prove industrial theft, given the irregularities that took place during the handling of the hard disk in the defendants' computers.

Furthermore, from the searches that Mattel conducted at the MGA facilities, no concrete information was found that would prove industrial theft, in accordance to Article 82 of the Industrial Protection Law.

However, Mattel, which is led by Roberto Isaias, considers that since the matter has advanced, this point has already been established. Furthermore, there are arrest warrants and formal indictments that have been issued against the defendants, who have been released on bail.

The executives resigned from Mattel in April 2004 to work with MGA, and the charges were filed approximately a year later.

Mattel claims that the price lists were not the only items taken, but also 70 files that the Federal Attorney General's Office (PGR in Spanish) found during the MGA offices search.

These are documents that describe Mattel's market strategies, future product plans, sales projections, details of negotiation and margins with customers, as well as advertising matters and client promotion.

As far as how the hard disks were handled, the "forensic computing procedure" was approved by the PGR.

EXHIBIT _G_

PAGE _57_

El Universal.com.mex – Printable version          Page 2 of 2

There is no doubt that the hard disks belonged to the defendants, given that e-mails were found that were sent to MGA's US offices, which are headed by Isaac Larian, negotiating the terms of their job contract with the company before resigning from Mattel.

Experts have confirmed the industrial secrets crimes; among the defendants is Teresa Romero, former director of Copyrights, and who formerly cooperated with the Federal Attorney General.

Mattel maintains that according to law MGA should have suspended the employment relationship with the defendants until the proceedings had ended; instead, however, the managers were promoted here, as well as in the USA.

In this context, Mattel is certain that due to its magnitude, the dispute with MGA is the biggest industrial theft case in the history of Mexico.

AS I WAS RECENTLY DESCRIBING, there are several debacles that are taking place at SAT, which is headed by Alfredo Gutierrez Ortiz Mena, with BBVA Bancomer as well as with Banamex. In the case of Bancomer, which is directed by Ingnacio Deschamps, it carried out several financial transactions resulting from debts (interest rate coverage's) with several foreign institutions through its agency in the Cayman Islands. SAT discovered the omission of ISR withholdings for the fiscal years 2004 to 2008. As far as Banamex, headed by Enrique Zorrilla, the matter is related to the application for a tax reimbursement from the ISR, which the bank filed for in the amount of 330 million pesos in 2007. This was a result of the foreign pro-rated expenses for several Citibank affiliates in the U.S., among these Banamex. SAT is convinced that the reimbursement does not apply in terms of Article 32 of the ISR Law.

ON FRIDAY, Radio Centro Group (RCentro), presided over by Francisco Aguirre, announced the closing of negotiations to purchase a radio station in LA; a market that represents 219 million dollars, and an amount that surpasses that of Mexico City. That metropolis has 15 million inhabitants, and is made of up of 44.3% Hispanics and 95% Mexicans. It is KMVN FM, 93.9 that was part of the group Emmis Communication, headed by Jeff Smulyan. RCentro director Carlos Aguirre was in charge of the negotiation, along with financial director Pedro Beltran. This is a commercialization and programming contract that will produce an annual profit of 7 million dollars. The first two years have already been pre-paid with a loan that was specifically requested for that purpose. The most interesting aspect is that in 7 years, or before that, if desired, the purchase option may be used. Since there are restrictions against foreigner control of radio stations in the USA, RCentro can acquire 20% directly and 25% through a holding. In addition, the group would have the power to choose who would be the major shareholder. The purchase was agreed at a favorable sum of 100 million dollars, given that several transactions were carried out there before the crisis, the highest being for 400 million dollars. The commercial brand to be used is being currently evaluated, and RCentro will take over next April 15th.

NEVERTHELESS, and together with Banco DeUno, led by Javier de la Calle, which is part of IXE, headed by Enrique Castillo, and which has the same partners base, this bank also targets another market segment that just began in October 2008, and already has 13 offices, 6 in Guadalajara and 7 in Mexico, as well as 3,000 customers, and assets of 34,500 million pesos. It has grown 1 billion pesos per month. This year, due to the crisis, it will only open 3 or 4 more offices and wait for better times. Banco DeUno just launched a new card with a fixed annual rate of 20%, and with the lowest fee for cash advance in the market, by just two percent.

AT APPROXIMATELY 3 Cadusa, of Miguel Rincon Arredondo, shall submit the    restructure agreement before the First District Court in Durango, presided by Carloina Alcala, to order its execution. It will be submitted by the mediator, Rebeca Castaño. The most important point was the agreement between bond holders for 509 million dollars. Basically there will be a change in a period of 7 years, with lower rates, when shares will be issued, and another portion will be paid in cash.

THIS COLUMN WILL BE printed again next Tuesday, April 14.

© 2009 Copyright El Universal-El Universal Online

EXHIBIT __G__

PAGE __58__



**TRANSPERFECT**

ALBANY
AMSTERDAM
ATLANTA
AUSTIN
BARCELONA
BERLIN
BOSTON
BRUSSELS
CHARLOTTE
CHICAGO
DALLAS
DENVER
DUBAI
DUBLIN
FRANKFURT
GENEVA
HONG KONG
HOUSTON
IRVINE
LONDON
LOS ANGELES
MIAMI
MILAN
MINNEAPOLIS
MONTREAL
MUNICH
NEW YORK
PARIS
PHILADELPHIA
PHOENIX
PORTLAND
PRAGUE
RESEARCH
TRIANGLE PARK
SAN DIEGO
SAN FRANCISCO
SAN JOSE
SEATTLE
SINGAPORE
STOCKHOLM
STUTTGART
SYDNEY
TOKYO
TORONTO
VANCOUVER
WASHINGTON, DC

City of New York, State of New York, County of New York

I, Sara Hutchison, hereby certify that the document "Nombres, nombres...y nombres" is, to the best of my knowledge and belief, within the given parameters, a true and accurate translation from Spanish to English.

Sara Hutchison

Sworn to before me this
September 10, 2009

Signature, Notary Public

Katharine L. Perakelis
Notary Public, State of New York
No. 01PE6181427
Qualified in QUEENS County
Commission Expires Jan 28, 2012

Stamp, Notary Public

EXHIBIT 6

PAGE 51

THREE PARK AVENUE, 39TH FLOOR, NEW YORK, NY 10016   T 212.689.5555   F 212.689.1059   WWW.TRANSPERFECT.COM

# EXHIBIT H

**CONFORMED**

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
   John B. Quinn (Bar No. 090378)
2  johnquinn@quinnemanuel.com
   Michael T. Zeller (Bar No. 196417)
3  (michaelzeller@quinnemanuel.com)
   Jon D. Corey (Bar No. 185066)
4  (joncorey@quinnemanuel.com)
   Timothy L. Alger (Bar No. 160303)
5  (timalger@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
6  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
7  Facsimile: (213) 443-3100

8  Attorneys for Mattel, Inc.

9            UNITED STATES DISTRICT COURT

10          CENTRAL DISTRICT OF CALIFORNIA

11                 EASTERN DIVISION

| | |
|---|---|
| 12  CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| 13  Plaintiff, | Consolidated with |
| 14  vs. | Case No. CV 04-09059<br>Case No. CV 05-02727 |
| 15  MATTEL, INC., a Delaware<br>corporation, | Hon. Stephen G. Larson |
| 16  Defendant. | NOTICE OF MOTION AND MOTION<br>OF MATTEL, INC. FOR LEAVE TO |
| 17  | TAKE ADDITIONAL DISCOVERY<br>AND OBJECTIONS TO DISCOVERY |
| 18  AND CONSOLIDATED ACTIONS | MASTER ORDER OF SEPTEMBER<br>28, 2007; AND |
| 19  | MEMORANDUM OF POINTS AND<br>AUTHORITIES |
| 20  | |
| 21  | [Declaration of B. Dylan Proctor filed<br>concurrently] |
| 22  | Hearing Date: January 7, 2008 |
| 23  | Time: 10:00 a.m.<br>Courtroom: 1 |
| 24  | **Phase 1:** |
| 25  | Discovery Cut-off: January 28, 2008<br>Pre-trial Conference: May 5, 2008 |
| 26  | Trial Date: May 27, 2008 |

27

28

07209/2299353.1

11-19

-i-

1  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2       PLEASE TAKE NOTICE that on January 7, 2008, at 10:00 a.m., or as soon
3  thereafter as the matter may be heard, in the courtroom of Honorable Stephen G.
4  Larson, located at 3470 Twelfth Street, Riverside, California, 92501, Mattel, Inc. will,
5  and hereby does, move the Court, pursuant to <u>Federal Rule of Civil Procedure</u> 26(b)
6  and the Court's February 12, 2007 Scheduling Order, for an order granting Mattel leave
7  to take additional depositions, including <u>Rule</u> 30(b)(6) depositions of defendants MGA
8  Entertainment, Inc., and MGAE de Mexico S.R.L. de C.V., beyond the current limit set
9  by the Court and to serve additional interrogatories on defendants. Pursuant to 28
10  U.S.C. § 636(b)(1), Mattel also seeks an additional 12 hours to depose Carter Bryant, in
11  addition to the seven hours already permitted by Discovery Master Infante.

12       Mattel makes this Motion on the grounds that the breadth and complexity of this
13  case warrant more than the 24 depositions and 50 interrogatories permitted by the
14  Court's Scheduling Order. Mattel further makes this Motion on the grounds that, given
15  Bryant's central role in the hundreds of products that MGA has sued upon in this case,
16  and because both the parties and third-parties have produced many millions of pages of
17  documents since Mr. Bryant's deposition in 2005, seven hours is not enough time to
18  fully depose Mr. Bryant.

19       This Motion is based on this Notice of Motion and Motion, the accompanying
20  Memorandum of Points and Authorities, the Declaration of B. Dylan Proctor filed
21  concurrently herewith, the records and files of this Court, and all other matters of which
22  the Court may take judicial notice.

23

24

25

26

27

28

-ii-

EXHIBIT __H__

PAGE __61__

1

<u>Conclusion</u>

2    For the foregoing reasons, Mattel respectfully requests that the Court grant

3    Mattel's motion for leave.

4    DATED:  November 19, 2007        QUINN EMANUEL URQUHART OLIVER &
                                       HEDGES, LLP
5

6
                                       By Jon Corey /s/
7                                         Jon Corey
                                          Attorneys for Mattel, Inc.
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07209/2299353.1

-25-

EXHIBIT ___ H

PAGE ___ 62

1

2

## **EXHIBIT A**

3        1.    "YOU," "YOUR" or "MGA" means MGAE de Mexico, S.R.L.

4 de C.V., any of its current or former employees (including but not limited to

5 MACHADO, TRUEBA and VARGAS) , officers, directors, agents, representatives,

6 attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-interest and

7 successors-in-interest, and any other PERSON acting on its behalf, pursuant to its

8 authority or subject to its control.

9        2.    "MATTEL" means Mattel, Inc. and all current or former

10 directors, officers, employees, agents, contractors, attorneys, accountants,

11 representatives, subsidiaries, divisions, affiliates, predecessors-in-interest and

12 successors-in-interest, and any other PERSON acting on its behalf, pursuant to its

13 authority or subject to its control.

14        3.    "BRATZ" means any project, product, doll or DESIGN ever

15 known by that name (whether in whole or in part and regardless of what such

16 project, product or doll is or has been also, previously or subsequently called) and

17 any product, doll or DESIGN or any portion thereof that is now or has ever been

18 known as, or sold or marketed under, the name or term "Bratz" (whether in whole or

19 in part and regardless of what such product, doll or DESIGN or portion thereof is or

20 has been also, previously or subsequently called) or that is now or has ever been

21 sold or marketed as part of the "Bratz" line, and each version or iteration of such

22 product, doll or DESIGN or any portion thereof. As used herein, "product, doll or

23 DESIGNS or any portion thereof" also includes without limitation any names,

24 fashions, accessories, artwork, packaging or any other works, materials, matters or

25 items included or associated therewith. Without limiting the generality of the

26 foregoing, the term "BRATZ" does not and shall not require that there be a doll

27 existing at the time of the event, incident or occurrence that is the subject of, or

28 otherwise relevant or responsive to, the Topics of Examination herein.

EXHIBIT H

PAGE 63

1   14. The content, meaning and authenticity of e-mail messages,

2 including attachments and metadata, sent from or received at the e-mail address

3 <argentrade@aol.com> to or from the e-mail address <plot04@aol.com>.

4   15. The content, meaning and authenticity of e-mail messages,

5 including attachments and metadata, sent from or received at the e-mail address

6 <argentrade@aol.com> to or from any of the FORMER MATTEL EMPLOYEES.

7   16. COMMUNICATIONS RELATING TO YOUR market planning

8 and product development RELATING TO the toy market in Mexico prepared,

9 created, sent or transmitted, whether in whole or in part, by MACHADO, TRUEBA

10 and/or VARGAS at any time prior to April 30, 2005.

11   17. COMMUNICATIONS between YOU and any PERSON

12 RELATING TO the departure or resignation from MATTEL of any current or

13 FORMER MATTEL EMPLOYEE or MATTEL contractor.

14   18. The job responsibilities of each FORMER MATTEL

15 EMPLOYEE in the first six months after each joined MGA.

16   19. The content, meaning and authenticity of each personnel file

17 maintained or created by YOU RELATING TO any FORMER MATTEL

18 EMPLOYEE.

19   20. Any and all agreements between YOU and any of the FORMER

20 MATTEL EMPLOYEES, including all drafts of such agreements and

21 COMMUNICATIONS related thereto.

22   21. Compensation, money or any other item of value paid by YOU

23 to any FORMER MATTEL EMPLOYEE, whether directly or indirectly, or paid to

24 any PERSON for the benefit of or RELATING TO any FORMER MATTEL

25 EMPLOYEE.

26   22. Any promotions, raises, bonuses, monetary incentives, payments,

27 awards, transfers, warnings, admonishment, discipline, reprimands, demotions or

28

07975/2280277.2

-9-

NOTICE OF 30(B)(6) DEPOSITION OF MGAE DE MEXICO, S.R.L. DE C.V.

EXHIBIT __H__

PAGE __64__