1  MELINDA HAAG (State Bar No. 132612)
   mhaag@orrick.com
2  ANNETTE L. HURST (State Bar No. 148738)
   ahurst@orrick.com
3  WARRINGTON S. PARKER III (State Bar No. 148003)
   wparker@orrick.com
4  ORRICK, HERRINGTON & SUTCLIFFE LLP
   The Orrick Building
5  405 Howard Street
   San Francisco, CA 94105
6  Telephone: 415-773-5700
   Facsimile: 415-773-5759
7
   WILLIAM A. MOLINSKI (State Bar No. 145186)
8  wmolinski@orrick.com
   ORRICK, HERRINGTON & SUTCLIFFE LLP
9  777 South Figueroa Street, Suite 3200
   Los Angeles, CA 90017
10 Telephone: 213-629-2020
   Facsimile: 213-612-2499
11
   Attorneys for MGA Parties
12
                    UNITED STATES DISTRICT COURT
13
                   CENTRAL DISTRICT OF CALIFORNIA
14
                           EASTERN DIVISION
15

| | |
|---|---|
| CARTER BRYANT, an individual<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS<br><br>**(Public Filed Version)** | Case No. CV 04-9049 SGL (RNBx)<br><br>Consolidated with:<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>**[DISCOVERY MATTER]**<br>**To Be Heard By Discovery Master Robert C. O'Brien**<br><br>**MGA ENTERTAINMENT'S REPLY IN SUPPORT OF *EX PARTE* APPLICATION FOR (1) ORDER TO SHORTEN TIME FOR RESPONSE AND PRODUCTION OF DOCUMENTS RE GIFTS TO LAW ENFORCEMENT, AND (2) ORDER AUTHORIZING SERVICE OF DEPOSITION NOTICE AND COMPELLING DEPOSITION OF RICHARD DE ANDA IN ADVANCE OF COURT-ORDERED HEARING** |

## INTRODUCTION

Mattel claims in its opposition to MGA's application for ex parte relief it should not be required to respond on September 14, 2009 to MGA's document requests because MGA has not demonstrated "good cause" sufficient to require Mattel to produce documents in advance of the deadline set by the Rules of Civil Procedure and because Mattel contends it is burdensome to require Mattel to do so. Mattel has made various representations to the court about what it did or did not give to Canadian law enforcement officials. Mattel must know what documents it has and appears to be able to readily produce them. The document requests at issue are narrow, and Mattel has not substantiated its claims of burden. Producing these materials in advance of the September 21 hearing will facilitate the Court's investigation of Mattel's now admitted gift-giving to Canadian law enforcement. Mattel should be required to respond to MGA's Phase 2 Document Requests by September 14.

Mattel opposes MGA's request for an order permitting a deposition of Mr. De Anda on the basis that Mr. De Anda ▇▇▇ and because he has been deposed previously in this case. Mattel has never before claimed Mr. De Anda ▇▇▇ and did not advise the Court of this alleged fact when the Court inquired at the August 31, 2009 hearing about Mr. De Anda's gifts to Canadian police. In any case, Mattel confirms Mr. De Anda ▇▇▇ and makes no effort to show it cannot produce Mr. De Anda for examination. Mattel's argument that Mr. De Anda has already been deposed is frivolous. He has never been deposed on the Phase 2 issues in this case, and Mattel produced the materials revealing Mr. De Anda's and Mattel's efforts to influence Canadian government officials long after his original deposition. Mattel's arguments should be rejected, and the requested order entered by the Discovery Master.

# ARGUMENT

## I. MATTEL'S REPRESENTATIONS TO THE COURT REGARDING THE NATURE OF THE GIFTS JUSTIFIES A SEPTEMBER 14 RESPONSE TO MGA'S DOCUMENT REQUESTS.

Mr. Zeller represented to the Court on August 31 that Mr. De Anda sent a package to Canadian police that contained at least "a few toy police cars, like less than ten." It is highly unlikely that Mattel has no record of this package in light of this very specific representation. MGA's document request numbers 170 – 173 are narrowly directed to obtaining further information about these gifts and other gifts. Mattel's representation to the Court indicates it has conducted an investigation into Mr. De Anda's relationship with Canadian law enforcement officials, and Mattel has not suggested it is unable to comply with the document requests seeking further information about packages sent to law enforcement officials investigating claims on Mattel's behalf or at Mattel's request. Production of this information in advance of the September 21 hearing will facilitate the Court's further inquiry into this situation. Given the seriousness of the subject matter and the fact that the Court has ordered a hearing on the issue, good cause plainly exists to shorten time for Mattel's response and production to these requests.

## II. MATTEL SHOULD BE ORDERED TO PRODUCE MR. DE ANDA OR A CORPORATE WITNESS FULLY PREPARED TO TESTIFY ON THE TOPIC OF GIFTS TO LAW ENFORCEMENT.

Mr. De Anda is a U.S. citizen and, to our knowledge, remains a resident of the greater Los Angeles area. Mattel for the first time claims that Mr. De Anda is n█████████████████████████████████████████ ████████████████████████████████ Ms. Graham's declaration confirms, however, that Mr. De Anda █████████████████████████████████████ Graham Decl. ¶ 2. Mattel made a representation to the Court that must have been confirmed by Mr. De Anda, since he was the one who███████████████ ██████ Mattel does not suggest or substantiate that Mr. De Anda was not a Mattel

"officer, director or employee" of Mattel when he sent the now-acknowledged gifts to Canadian law enforcement officials. Mattel also does not claim that it lacks the ability to produce Mr. De Anda for deposition. Mattel undoubtedly can produce the witness if ordered to do so.

Mattel's opposition brief marks the first time Mattel has ever disclosed that Mr. De Anda ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Mattel did not tell the Court on August 31, 2009 that Mr. De Anda was not a Mattel employee, and Mattel has not suggested in response to the Court's September 3 order that it would have difficulty in presenting Mr. De Anda at the September 21 hearing. Mattel's effort to shield Mr. De Anda and his actions on behalf of Mattel raises more questions than answers, and further reinforces the good cause for the four hour deposition requested in MGA's *ex parte* application.[1]

### III. MR. DE ANDA HAS NOT BEEN DEPOSED ON THE PHASE 2 ISSUES.

As MGA explained in its application, Mr. De Anda was not examined at his December 19, 2007 deposition about his exchange with Canadian law enforcement officials. MGA Application ¶ 8. Nor could he have been, as Mattel did not produce the email evidencing the transmission until April 13, 2009. Moreover, Mr. De Anda's 2007 deposition did not address the Phase 2 issues, which include Mattel's allegations of trade secret misappropriation in Canada, Mexico and the United States. Mattel's claims in this case justify a further deposition of its "head of security's" communications with foreign law enforcement officials investigating Mattel's claims. Indeed, Mattel admitted as much in meet and confer between Caroline Mankey and Jon Corey on or about February 12, 2009 of this year, at which time Mattel agreed that it would not oppose a further deposition of Mr. De Anda, but simply wished to limit the time he could be

---

[1] In all events, now that MGA has been informed that Mr. De Anda is no longer employed by Mattel, we have sent out a subpoena for service.

1  deposed.[2] At that time, the parties agreed that MGA would put over its motion to
2  compel further deposition of Mr. De Anda until after the issues addressed in Order
3  No. 6 had been resolved, and Mattel had made its production of documents.

### IV. MATTEL HAS NOT SUFFICIENTLY RESPONDED TO REQUEST NOS. 526 AND 528.

Mattel also claims it has adequately responded to the Discovery Master's Order No. 6 that required Mattel to produce documents in response to Request Nos. 526 and 528. These requests generally sought information related to Mattel's communications with law enforcement officials in the United States and abroad, including specifically Canada and Mexico. Mattel now claims it has fully responded to those requests. Opp. at 8; Watson Decl. ¶ 18. But the document production is missing the types of e-mails and correspondence from Mexico, including presentation documents, that were made to Canadian and U.S. law enforcement officers. Moreover, Mattel has refused to respond to MGA's requests to identify whose files were searched for responsive information. Mattel has also explicitly refused to confirm a search of all of Mattel's Mexican counsel's files.

The Mexican investigation cannot have sprung fully formed from the head of Zeus. It must have involved communications between Mattel and the investigators and prosecutors in Mexico. Nor should we ignore the elephant lurking in the room. There is a culture of political corruption in Mexico that has resulted, unfortunately, in the sacking or assassination of numerous Mexican law enforcement officials. In this context, Mattel's cursory declaration of compliance and its refusals to be more specific signal real reasons for concern.

Mattel should be required to explain to the Discovery Master the details of its investigation and collection of documents responsive to the requests to which it claims to have adequately responded. The cursory declaration provides no

---

[2] We are informed by Ms. Mankey of these circumstances, but Ms. Mankey is at the hospital today for a potentially serious medical condition and we are unable to obtain her declaration in time for this filing.

1 real basis upon which to make that determination, and Mattel's refusal to explain its
2 efforts casts serious doubts on the adequacy of Mattel's efforts.

### V. MATTEL'S CONTENTION THAT MGA FAILED TO MEET AND CONFER IS FRIVOLOUS.

MGA first sought on September 3 Mattel's agreement to a further deposition of Mr. De Anda on September 16. Mattel did not at that time claim that Mr. De Anda was not a Mattel employee or was otherwise beyond Mattel's control. Watson Decl. Ex. 2. Mattel's current position that Mr. De Anda ▇▇▇▇ ▇▇▇▇ demonstrates Mattel's response was hollow, and not a genuine effort to resolve the issues the Court specifically ordered a hearing to address. MGA sought a discussion, and Mattel refused. MGA is under no obligation to engage in the Kabuki exercise Mattel suggests.

### VI. MATTEL'S SUGGESTION OF ENTITLEMENT TO "EXPEDITED" DISCOVERY IS AN IRRELEVANT DISTRACTION.

Apparently operating under the "best defense is a good offense" theory, Mattel suggests in its opposition papers that if MGA is entitled to expedited discovery on the gifts it provided to Canadian law enforcement, Mattel should be entitled to expedited discovery in the form of depositions of MGA's trial counsel on unrelated issues.

This is a distraction. Mattel has made no application for the expedited discovery it claims might be appropriate. Mattel provides no authority for the notion it should be entitled to depose MGA's trial counsel, and no Court or Discovery Master order justifies such an obviously improper attempt to intrude on the attorney client privilege and work product doctrine. *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986).

/ / /
/ / /
/ / /

## CONCLUSION

For the reasons above and the reasons stated in MGA's opening papers, MGA's ex parte application should be granted.

Dated: September 10, 2009

Respectfully submitted,

ANNETTE L. HURST
Orrick, Herrington & Sutcliffe LLP

By: /s/ Annette L. Hurst
ANNETTE L. HURST
Attorneys for Plaintiff