# EXHIBIT 1

Case 2:04-cv-09049-DOC-RNB  Document 6651-3  Filed 09/11/09  Page 2 of 78  Page ID
#:219052
Case 2:04-cv-09049-SGL-RNB    Document 6544    Filed 08/31/2009    Page 1 of 4

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA  92501
CIVIL MINUTES - GENERAL

Case No.    CV 04-09049-SGL(RNBx)                          Date: August 31, 2009

Title:      CARTER BRYANT -v- MATTEL, INC.
===========================================================================
PRESENT:  HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

Cindy Sasse                               Theresa Lanza
Courtroom Deputy Clerk                    Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:         ATTORNEYS PRESENT FOR DEFENDANTS:

John Quinn                                Annette L. Hurst
Michael T. Zeller                         Warrington S. Parker, III
B. Dylan Proctor                          William A. Molinski


PROCEEDINGS:   MOTIONS HEARING

               1.    **Mattel Inc.'s Motion for Order for Preclusive Relief or, in the
                     Alternative, Access to Active Files on the Larian Hard Drives, No.
                     5760, 5769;**

               2.    **Mattel, Inc.'s Motion for Clarification of 6/18/09 Order,
                     No. 5783;**

               3.    **Mattel Inc.'s Motion to Modify Scheduling Order,
                     No. 6050**

               4.    **Order to Show Cause**

        The Court addressed the issue the filings of sur-replies; all counsel are directed to follow
Local Rule 7-10 regarding the filing of replies.  The Court further heard oral argument and makes
the following rulings:

        First, in light of the parties' stipulation, as set forth on the record, the Court **DENIES AS**

MINUTES FORM 90                                        Initials of Deputy Clerk: cls
CIVIL -- GEN              Page 1                              Time: 00/41

EXHIBIT _____ \
PAGE _____ 4

**MOOT** Mattel Inc.'s Motion for Order for Preclusive Relief or, in the Alternative, Access to Active Files on the Larian Hard Drives.

Second, the Court **GRANTS** Mattel, Inc.'s Motion for Clarification. The Court's June 18, 2009, Order is **CLARIFIED** in the following manner: The Court's June 18, 2009, Order, including its discussion of willfulness, was intended to be and is limited to the equitable issue of the scope of an appropriate accounting, and shall not be construed to apply to any circumstances beyond the scope of an appropriate accounting.

Third, the Court **DENIES WITHOUT PREJUDICE** Mattel, Inc.'s Motion to Amend the Scheduling Order as premature. The Court will re-visit the issue of the case scheduling order when it takes up Mattel, Inc.'s motion for leave to file a Fourth Amended Answer and Counterclaims on October 1, 2009. In addition, the Court sets a status conference at which all lead counsel of record shall appear on September 21, 2009, at 1:30 p.m. On or before September 18, 2009, the parties are **ORDERED** to file with the Court a report, not to exceed 10 pages, of the status of discovery for Phase 2 – what has been completed and what must still be completed prior to trial. Counsel shall also advise the Court of the parties' positions with respect to (1) any further bifurcation of Phase 2 trial and (2) a stay of the trial of Phase 2 pending the Ninth Circuit's ruling on the appeal of Phase 1.

Finally, the Court addresses an issue of concern that arose in the papers submitted in advance of this hearing. Specifically, Exhibit 2 to the Second Supplemental Declaration of Dylan Proctor in support of Mattel's Motion for Clarification, dated August 26, 2009, appears relevant to the issue of whether certain acts of copyright infringement were willful acts of infringement. Upon consideration of the evidence in Phase 1, the jury found that the infringement was not willful. However, this document, Bates Nos. MGA2 0070266-0070270, was not offered as evidence in Phase 1, as it was withheld by counsel for the MGA parties on a claim of attorney client privilege. It was finally produced in its current, more complete form on August 21, 2009, well after the conclusion of Phase 1 of the trial, and only upon the eve of an impending *in camera* review of the document by the Discovery Master pursuant to his Order.[1]

The more complete version shows MGA employee Victoria O'Connor was concerned with Mr. Larian's representations to a media source regarding the timing of the creation of Bratz, the central issue tried in Phase 1. Ms. O'Connor stated: "[D]on't you think we should say Bratz was born in October when a certain person was no longer with their company?" Mr. Larian responded: "[G]ood point. Thanks."

---

[1] The document was produced earlier to Mattel in an incomplete form, but the produced version eliminates the communications most relevant to the issue of willfulness. The document takes the form of an email string, a printed version of electronic communications now familiar to most individuals (and certainly to all litigation attorneys), with the most recent communication appearing first. The incomplete document ends with Isaac Larian forwarding the communication, on Wednesday, October 23, 2002, at 1:35 a.m., to other individuals as an "FYI." The more complete version continues with a response from Victoria O'Connor, at 8:38 a.m., and Mr. Larian's reply one minute later.

EXHIBIT ___1___

PAGE ___5___

This document has clear relevance to the claims and defenses at issue in the Phase 1 trial. The withholding of this document under a claim of privilege concerns the Court, as it implicates the duty of the Court to oversee the conduct of the lawyers who appear before it, and who are largely responsible for maintaining the integrity of the adversarial process.

Toward that end, the Court **ORDERS** counsel for the MGA parties to **APPEAR AND SHOW CAUSE** on September 21, 2009, at 1:30 p.m., why sanctions should not be imposed for their repeated failure to produce this document at an earlier date.

With respect to the email communications referenced in this Order, the Court **ORDERS** counsel for the MGA parties to file a report with the Court (served on all parties and Court-Appointed Officers) that, at a minimum, provides to and/or reports to the Court:

(1)     Copies of all versions of all privilege logs, whether or not provided to Mattel, the Discovery Master, the Court-Appointed Forensic Auditor, the Temporary Receiver, or the Monitor, upon which the document referred to above appears, including any version of this email exchange among the senders and recipients (including those "cc'd" or "bcc'd") that contains communications not set forth in the incomplete version of the document that was produced in discovery.

(2)     A description of the process whereby the document referred to above (or any version of it) came to appear on any privilege log. That description shall include, with respect to the document that bears Bates Nos. MGA2 0070266-0070270, the identity of any attorney responsible for the designation of the document as privileged, the identity of any attorney responsible for reviewing that designation, and the identity of any attorney who, upon discovery of the non-privileged nature of the document, continued to withhold the document from production. Each of those attorneys,[2] whether or not current or past counsel of record, shall file a declaration regarding what actions he or she took (or refrained from taking) with respect to this document.

(3)     Any other information known to any current or past counsel of record relevant to a determination of why this unprivileged, relevant document was withheld pursuant to a claim of privilege.

(4)     If any of the information referenced in (1)-(3) above is itself subject to a claim of either attorney-client or work-product privilege, that information may not be withheld from the Court, but need not be served on any party or Court-Appointed Officer (unless the Court orders otherwise) and shall instead be delivered to the Courtroom

---

[2] Each current and past counsel of record is **ORDERED** to disseminate a copy of this Order to every attorney (whether or not currently associated with any law firm that is or was counsel of record) whom is known to have been, or who is not known to have been but who is likely to have been, involved in the designation of maintenance of this document as privileged.

MINUTES FORM 90                                         Initials of Deputy Clerk: cls
CIVIL -- GEN                        Page 3                      Time: 00/41

EXHIBIT _____ \
_____ ~ʊ~   6
PAGE _____

Deputy Clerk, Cindy Sasse, in a separate, *in camera* filing.

Counsel for the MGA parties shall file their written report(s) no later than September 14, 2009. Any party may respond no later than September 18, 2009.

The Court recognizes that the Court's current inquiry may overlap to a certain extent with Orders or issues or proceedings before the Discovery Master. The focus of the Court's inquiry is on attorney conduct; the focus of the Discovery Master is on discovery of evidence. Therefore, the Court's actions here should not be construed to impact in any way upon the Discovery Master's proceedings and Orders. More specifically, but not exclusively, this OSC shall not be construed to limit the Discovery Master's ability to continue to hear and resolve discovery disputes on the schedule he sees fit to set, nor shall it be construed to extend any deadline or briefing schedule set by the Discovery Master, and nor shall it be construed to effectuate any delay on the Discovery Master's anticipated *in camera* inspection of certain documents identified as privileged, which may proceed (or be delayed) as the Discovery Master deems appropriate.

**IT IS SO ORDERED.**

EXHIBIT ____ 1 ____

PAGE ____ 7 ____

# EXHIBIT 2

**From:** Dylan Proctor
**Sent:** Thursday, September 03, 2009 4:50 PM
**To:** MGA / Bryant Team
**Subject:** FW: MGA/Mattel

**From:** Dylan Proctor
**Sent:** Thursday, September 03, 2009 4:50 PM
**To:** 'Hurst, Annette'; Michael T Zeller
**Cc:** Molinski, William; Parker, Warrington; Marshall Searcy; Jon Corey
**Subject:** RE: MGA/Mattel

Annette,

As you know, you served these requests for production just a few days ago.  I can tell you that we are in the process of conducting searches, but we are not yet in a position to respond substantively.  Of course, the statutory time period for our responses has not yet arrived.  If you have authority justifying expedited treatment of these requests for production, please let us know and we will consider it.

As to the deposition request, as you know Mr. de Anda has already been deposed in this case at length, so leave of court is required before he may be deposed again (and we are not certain as to his schedule).  We will be happy to meet and confer with you regarding whether Mr. de Anda may be deposed further – if you would like to do so, please contact Marshall Searcy to arrange such a conference.

**From:** Hurst, Annette [mailto:ahurst@orrick.com]
**Sent:** Thursday, September 03, 2009 11:58 AM
**To:** Michael T Zeller; Dylan Proctor
**Cc:** Molinski, William; Parker, Warrington
**Subject:** MGA/Mattel

Mike & Dylan:

In light of the Court's order today requiring Mr. de Anda to appear at the September 21, 2009 hearing, I request that Mattel produce documents by September 14 in response to the following requests served last Friday as part of MGA's Third Set of Phase 2 RFPs:  170, 171, 172, 173.  I also request that you produce Mr. de Anda for deposition on this issue on the afternoon of September 16.

MGA is prepared to seek ex parte relief to shorten time for production in response to these requests in light of the Court's order.  Given the circumstances, I request that you respond by COB today.

Sincerely,
Annette Hurst



EXHIBIT _____ 2

PAGE _____ 8

1

# EXHIBIT 3

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL: (213) 443-3000 FAX: (213) 443-3100

September 4, 2009

**VIA E-MAIL**

William Molinski, Esq.
Orrick, Herrington & Sutcliffe LLP
777 South Figueroa Street
Suite 3200
Los Angeles, CA 90017

Re:    Mattel v. MGA

Dear Bill:

I write to confirm the results of our meetings on September 3 and 4, 2009, which were conducted pursuant to Phase 2 Discover Matter Order No. 52.  The following sets out our understanding of MGA Mexico' position with respect to the requests for which Order No. 52 required the parties to further meet and confer.  If our understanding is incorrect on any of the following, please let us know.

**Mattel, Inc.'s First Set of Requests for Documents and Things to MGAE de Mexico, S.R.L. de C.V.**

REQ. NO. 1.          MGA Mexico objects to this Request on the grounds that it seeks irrelevant information and information that MGA Entertainment, Inc. has already produced.

REQ. NO. 2.-3.       MGA Mexico is willing to produce documents responsive to these Requests only if "FORMER MATTEL EMPLOYEES" is limited to mean Vargas, Trueba and Machado.  MGA Mexico is not willing to produce documents relating to any other FORMER MATTEL EMPLOYEES.

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, NY 10010 | TEL (212) 849-7000 FAX (212) 849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, CA 94111 | TEL (415) 875-6600 FAX (415) 875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, CA 94065 | TEL (650) 801-5000 FAX (650) 801-5100
CHICAGO | 250 South Wacker Drive, Suite 230, Chicago, IL 60606 | TEL (312) 463-2961 FAX (312) 463-2962
LONDON | 16 Old Bailey, London EC4M 7EG United Kingdom | TEL +44(0) 20 7653 2000 FAX +44(0) 20 7653 2100
TOKYO | Akasaka Twin Tower Main Bldg., 6th Fl., 17-22 Akasaka 2-Chome, Minato-ku, Tokyo 107-0052 Japan | TEL +81 3 5561-1711 FAX +81 3 5561-1712

07975/3088872.1

EXHIBIT _____3_____

PAGE _____9_____

| | |
|---|---|
| REQ. NO. 4. | MGA Mexico objects to this Request as overbroad because it is not limited in time to 2004. |
| REQ. NO. 5. | MGA Mexico objects to this Request as overbroad. |
| REQ. NO. 6. | MGA Mexico agrees to produce documents responsive to this Request to the extent such documents are in MGA Mexico's custody, possession or control. |
| REQ. NO. 7.-9. | MGA Mexico objects to these Requests on the grounds that "REFER OR RELATE TO" is overbroad.  MGA Mexico agrees to produce documents with "REFER OR RELATE TO" meaning "discusses or communicates regarding." |
| REQ. NO. 10. | MGA Mexico agrees to produce all responsive documents to the extent not already produced. |
| REQ. NO. 11. | MGA Mexico agrees to produce documents showing who registered, set up or established the email account <plot04@aol.com>.  MGA Mexico objects to producing documents relating to use of the email account after 2004 on the grounds that such documents are irrelevant and might contain personal communications. |
| REQ. NO. 12. | MGA Mexico is willing to produce documents responsive to this Request only if "FORMER MATTEL EMPLOYEES" is limited to mean Vargas, Trueba and Machado.  MGA Mexico is not willing to produce documents relating to any other FORMER MATTEL EMPLOYEES. |
| REQ. NO. 13.-15. | MGA Mexico agrees to produce documents responsive to these Requests with "YOU" defined as "MGA Mexico and those acting on its behalf." MGA Mexico agrees to produce documents responsive to this Request for all FORMER MATTEL EMPLOYEES. |
| REQ. NO. 16.-17. | MGA Mexico agrees to produce documents only if "REFER OR RELATE TO their employment" is limited to "REFER OR RELATE TO hiring or potentially hiring them" and only if FORMER MATTEL EMPLOYEES is limited to Vargas, Trueba and Machado. |
| REQ. NO. 18. | MGA Mexico agrees to produce documents that "relate to the 'analysis,'" but not documents that "REFER OR RELATE TO the 'analysis.'" |
| REQ. NO. 19. | MGA Mexico indicates it will need further time to consider this Request, but tentatively agrees to produce documents that refer or relate to the reasons for Machado's transfer to the MGA office in Van Nuys, California. |
| REQ. NO. 20. | MGA Mexico agrees to produce responsive documents. |

2

EXHIBIT ___3___

PAGE _____10_____

| REQ. NO. 21. | MGA Mexico agrees to produce responsive documents with "YOU" meaning "MGA Mexico and those acting on its behalf." |
| --- | --- |
| REQ. NO. 22. | MGA Mexico objects to this Request as overbroad based on the use of the terms REFER OR RELATE TO and FORMER MATTEL EMPLOYEES. |
| REQ. NO. 23. | MGA Mexico objects to this Request on the grounds that it seeks irrelevant information. |
| REQ. NO. 24.-25. | MGA Mexico objects to these Requests as overbroad. |
| REQ. NO. 26. | MGA Mexico agrees to produce responsive documents. |
| REQ. NO. 27.-28. | MGA Mexico agrees to produce responsive documents with "YOU" meaning "MGA Mexico and those acting on its behalf." |
| REQ. NO. 29.-30. | MGA Mexico agrees to produce responsive documents. |
| REQ. NO. 31. | MGA Mexico is willing to produce documents responsive to this Request only if "FORMER MATTEL EMPLOYEES" is limited to mean Vargas, Trueba and Machado.  MGA Mexico is not willing to produce documents relating to any other FORMER MATTEL EMPLOYEES. |
| REQ. NO. 32.-34. | MGA Mexico objects to this Request as overbroad, especially with respect to the term FORMER MATTEL EMPLOYEES. |
| REQ. NO. 35. | MGA Mexico objects to this Request as overbroad. |
| REQ. NO. 36.-37. | MGA Mexico is willing to produce documents responsive to these Requests only if the following language is stricken from the Request: "...or that REFER OR RELATE TO MATTEL, or any MATTEL product, plan, client, customer, current or former MATTEL employee, sales advertising, marketing, analysis, tool or procedure." |
| REQ. NO. 38.-39. | MGA Mexico objects to these Requests as overbroad and also as vague with respect to "directly or indirectly."  MGA Mexico is willing to produce documents responsive to these Requests only if FORMER MATTEL EMPLOYEES is limited to mean Vargas, Trueba and Machado.  MGA Mexico is not willing to produce documents relating to any other FORMER MATTEL EMPLOYEES. |
| REQ. NO. 40. | MGA Mexico agrees to produce responsive documents. |
| REQ. NO. 41. | MGA Mexico objects based on privacy concerns.  Additionally, MGA Mexico is willing to produce documents responsive to this Request only if "FORMER MATTEL EMPLOYEES" is limited to mean Vargas, Trueba and Machado.  MGA Mexico is not willing to produce documents relating to any other FORMER MATTEL EMPLOYEES. |

EXHIBIT _____3_____

PAGE _____11_____

REQ. NO. 42.   MGA Mexico is willing to produce documents responsive to this Request with "FORMER MATTEL EMPLOYEES" limited to mean Vargas, Trueba and Machado.  MGA Mexico requires additional time to determine whether it will produce documents relating to other FORMER MATTEL EMPLOYEES.

REQ. NO. 43.-45.   MGA Mexico objects to these Requests on the grounds that they seek irrelevant information.

REQ. NO. 46.   MGA Mexico is willing to produce documents responsive to this Request only if FORMER MATTEL EMPLOYEES is limited to Vargas, Trueba and Machado, and only documents relating to promotions, bonuses and monetary incentives.  MGA Mexico is not willing to produce documents relating to any other FORMER MATTEL EMPLOYEES or to "payments, increases in benefits or pay, awards, transfers, warnings, admonishments, discipline, reprimands, demotions or terminations...."

REQ. NO. 47.-49.   MGA Mexico objects to these Requests on the grounds that they seek irrelevant information.

REQ. NO. 50.   MGA Mexico is willing to produce documents responsive to this Request only if "FORMER MATTEL EMPLOYEES" is limited to mean Vargas, Trueba and Machado.  MGA Mexico is not willing to produce documents relating to any other FORMER MATTEL EMPLOYEES.

REQ. NO. 51.   MGA Mexico objects to this Request on the grounds that the term MATTEL DOCUMENTS is overbroad.  MGA Mexico will agree to produce documents only if MATTEL DOCUMENTS is limited to "documents people took with them from Mattel."

REQ. NO. 52.   MGA Mexico agrees to produce documents responsive to this Request.

REQ. NO. 53.-54.   MGA Mexico agrees to produce documents responsive to this Request with MATTEL DOCUMENTS meaning "any document taken from Mattel and shared with you by former Mattel employees."

REQ. NO. 55.-58.   MGA Mexico is willing to produce documents responsive to these Requests, with the understanding that it will produce the documents on which it "*currently* intends to rely" and will supplement this production as warranted under the <u>Federal Rules</u>.

REQ. NO. 59.-60.   MGA Mexico objects to this Request as overbroad and vague.

REQ. NO. 61.   MGA Mexico is willing to produce documents responsive to this Request, with the understanding that it will produce the documents on which it "*currently* intends to rely" and will supplement this production as warranted under the <u>Federal Rules</u>.

EXHIBIT ___3___

PAGE ___12___

REQ. NO. 62.          MGA Mexico objects to this Request as overbroad and as vague with respect to "access."

REQ. NO. 63.          MGA Mexico agrees to produce documents responsive to this Request with "MATTEL DOCUMENTS" meaning "documents taken from Mattel."

REQ. NO. 64.          MGA Mexico objects to this Request as vague with respect to "non-use." MGA Mexico agrees to produce documents "that REFER OR RELATE TO instructions not to use or disclose information in documents from MATTEL." Further, MGA Mexico is willing to produce documents responsive to this Request only if "FORMER MATTEL EMPLOYEES" is limited to mean Vargas, Trueba and Machado. At this time, MGA Mexico is not willing to produce documents relating to any other FORMER MATTEL EMPLOYEES in response to this Request.

REQ. NO. 65.-69.      MGA Mexico agrees to produce documents responsive to these Requests with "MATTEL DOCUMENTS" meaning "documents taken from MATTEL."

REQ. NO. 70.-71.      MGA Mexico is willing to produce documents responsive to these Requests, with the understanding that it will produce the documents on which it "*currently* intends to rely" and will supplement this production as warranted under the <u>Federal Rules</u>.

REQ. NO. 72.-75.      MGA Mexico objects to these Requests on the grounds that they seek irrelevant information and that Mattel has not identified its trade secrets.

REQ. NO. 76.          MGA Mexico is willing to produce documents responsive to this Request only from 2004 and before. MGA Mexico objects to producing any documents post-dating 2004 on the grounds that such documents are irrelevant.

REQ. NO. 77.          MGA Mexico is willing to produce documents responsive to this Request only if "FORMER MATTEL EMPLOYEES" is limited to mean Vargas, Trueba and Machado, and only if "any agreement or contract" is limited to "employment agreements." MGA Mexico is not willing to produce documents relating to any other FORMER MATTEL EMPLOYEES or any other "agreement or contract" in response to this Request.

REQ. NO. 78.          MGA Mexico indicates that it will require further time to consider this Request, but tentatively agrees to produce responsive documents.

REQ. NO. 79.-125.     MGA Mexico objects to these Requests on the grounds that they are overbroad and seek irrelevant information. MGA Mexico agrees to determine and inform Mattel whether MGA Entertainment, Inc. plans to seek damages from Mattel based on harm to MGA Mexico and, if so, to reconsider its position with respect to these Requests.

EXHIBIT ___3___

PAGE ___13___

REQ. NO. 126.        MGA Mexico indicates that it will require further time to consider this Request.

REQ. NO. 127.        MGA Mexico objects to this Request as overbroad and as vague with respect to "contractors." MGA Mexico is willing to produce documents responsive to this Request only if "FORMER MATTEL EMPLOYEES" is limited to mean Vargas, Trueba and Machado. MGA Mexico is not willing to produce documents relating to any other FORMER MATTEL EMPLOYEES in response to this Request.

REQ. NO. 128.        MGA Mexico objects to this Request as vague. MGA Mexico agrees to produce responsive documents to the extent MGA Mexico can determine, after a reasonably diligent investigation, that the DOCUMENTS or DIGITAL INFORMATION referred to in the Request were "prepared, made, created, generated, assembled or compiled by or for MATTEL" and were "not publicly available" at the time they were received by MGA Mexico or by those acting on its behalf.

REQ. NO. 129.-130.   MGA Mexico objects to these Requests on the grounds that they seek irrelevant information.

REQ. NO. 131.-132.   MGA Mexico objects to these Requests as vague and overbroad because they are not limited in time and because they are not limited to the allegations in the complaint.

REQ. NO. 133.        MGA Mexico indicates that it requires further time to consider this Request, but tentatively agrees to produce its documents retention policies.

REQ. NO. 134.        MGA Mexico objects to this Request on privilege grounds, but agrees to abide by any prior agreement of the MGA Parties' relating to whether documents of the sort implicated by this Request are discoverable.

REQ. NO. 135.        MGA Mexico is willing to produce documents responsive to this Request only if "FORMER MATTEL EMPLOYEES" is limited to mean Vargas, Trueba and Machado, and only documents relating to destruction of Mattel materials. MGA Mexico is not willing to produce documents relating to any other FORMER MATTEL EMPLOYEES or to preservation in response to this Request.

REQ. NO. 136.-137.   MGA Mexico indicates that requires further time to consider this request, but agrees to produce any responsive documents relating to other MGA entities.

REQ. NO. 138.-139.   MGA Mexico objects to these Requests as overbroad.

REQ. NO. 140.-141.   MGA Mexico objects to these Requests as overbroad but agrees to produce responsive documents, with the understanding that it will produce

EXHIBIT _____3_____

PAGE _____14_____

the documents on which it "*currently* intends to rely" and will supplement
this production as warranted under the <u>Federal Rules</u>.

REQ. NO. 142.-143.   MGA Mexico agrees to produce documents responsive to these Requests,
with the understanding that it will produce the documents on which it
"*currently* intends to rely" and will supplement this production as
warranted under the <u>Federal Rules</u>.

REQ. NO. 144.-145.   MGA Mexico objects to these Requests on privacy and relevance grounds.

REQ. NO. 146.-148.   MGA Mexico objects to these Requests and will not produce responsive
documents.

## <u>Mattel, Inc.'s Second Set of Requests for Documents and Things To MGAE de Mexico, S.R.L. de C.V.</u>

First, with respect to certain Request Nos. 46-63, 97-111, 115-116 and 149-176, each of which
relates either to Zapf, Smoby or Nickelodeon, MGA Mexico indicates that it does not have
responsive documents in its custody, possession or control.  MGA Mexico agrees to confirm that
it does not have documents responsive to these Requests in its custody, possession or control.

Second, MGA Mexico refuses to produce documents responsive to Requests that seek
information regarding instances in which MGA Mexico engaged in the types of conduct MGA
accuses Mattel of in its "Unclean Hands" affirmative defense.  MGA Mexico therefore refuses to
produce documents responsive to Request Nos. 9-12, 23-24, 36-41, 66-70, 86-88, 11-114, 148,
180, 200, 223-226, 249-250, 251-252, 276, 300-301, 320-328, 343, 386, 398, 418-420.

We understand MGA Mexico's position with respect to the remaining Requests to be as follows:

REQ. NO. 64-65       MGA Mexico objects to these Requests on the grounds that it seeks
                     irrelevant information and is overbroad.

REQ. NO. 193         MGA Mexico objects to this Request on the grounds that it seeks
                     irrelevant information.

REQ. NO. 269-275     MGA Mexico objects to these Requests on the grounds that they seek
                     irrelevant information.

REQ. NO. 317-319     MGA Mexico objects to these Requests on the grounds that they seek
                     irrelevant information, but MGA Mexico agrees to determine and inform
                     Mattel whether it possesses responsive documents.

REQ. NO. 344         MGA Mexico objects to this Request on the grounds that it is overbroad
                     and seeks information not relevant to Phase 2.  MGA Mexico agrees to
                     consider producing responsive documents if the Request is rephrased to
                     seek "all DOCUMENTS that reflect, record or refer to any interview or
                     conversation MGA Mexico, or those acting on its behalf, had or attempted
                     to have with Anna Rhee regarding the issues in this case."

EXHIBIT ___3___
                    15
PAGE _____

REQ. NO. 399      MGA Mexico agrees to produce responsive documents with "YOU" defined as "MGA Mexico and those acting on its behalf."

REQ. NO. 411      MGA Mexico objects to this Requests on the grounds that it seeks irrelevant information.

### Mattel, Inc.'s Third Set of Requests for Documents and Things to MGAE de Mexico, S.R.L. de C.V.

With respect to all six Requests in this set, MGA Mexico objects to the Requests as overbroad and unduly burdensome. MGA Mexico agrees to produce documents sufficient to identify the names of the facilities where documents it has produced were kept.

### Mattel, Inc.'s First Set of Requests for Documents and Things to MGAE de Mexico, S.R.L. de C.V. (Phase 2)

With respect to Request Nos. 1-41, 43-47, 51-56, 58-60, 62, 64, 66-68, 70-76 and 79-83, MGA Mexico objects to the Requests as overbroad to the extent they seek information beyond the 2004 time frame.

We understand MGA Mexico's position with respect to the remaining requests to be as follows:

REQ. NO. 42       MGA Mexico objects to this request as overbroad.

REQ. NO. 48-49    MGA Mexico will produce documents responsive to these Requests only to the extent they relate (1) to declarations or (2) to deposition transcripts and other sworn written statement that relate to this action.

REQ. NO. 50       MGA Mexico objects to this Request on the grounds that it seeks personal information.

REQ. NO. 57       MGA Mexico objects to this Request as overbroad as to time.

REQ. NO. 61       MGA Mexico objects that this Request is better served as an interrogatory.

REQ. NO. 63       MGA Mexico objects to this Request as overbroad.

REQ. NO. 65       MGA Mexico objects to this Request as overbroad and vague.

REQ. NO. 69       MGA Mexico agrees to produce documents responsive to this Request with YOU defined as "MGA Mexico and those acting on its behalf."

REQ. NO. 77-78    MGA Mexico only agrees to produce documents responsive to these Requests from the 2004 time frame.

EXHIBIT _____ 3 _____

PAGE _____ 16 _____

With respect to the requests for which you were going to get back to us, please let us know when Mattel can expect a conclusive answer from MGA Mexico.  Also, for the requests for which MGA Mexico has now agreed to produce documents, please let us know when we may expect to receive them.

I look forward to hearing from you.

Very truly yours,

/s/ Marshall M. Searcy III

Marshall M. Searcy III

07975/3088873.1

07975/3088873.1

9

EXHIBIT _____3_____

PAGE _____17_____

# EXHIBIT 4

**From:**     Marshall Searcy
**Sent:**     Tuesday, September 01, 2009 4:51 PM
**To:**       MGA / Bryant Team
**Subject:**  FW: Mattel adv. MGA

**From:** Marshall Searcy
**Sent:** Tuesday, September 01, 2009 4:42 PM
**To:** 'Hurst, Annette'; 'Molinski, William'
**Cc:** Dylan Proctor; Michael T Zeller; Susan R. Estrich
**Subject:** RE: Mattel adv. MGA

Dear Annette and Tom,

I am available on Thursday to meet and confer on Mattel's discovery to MGA Mexico, as well as Mattel's responses to interrogatories improperly propounded by MGAE de Mexico S.R.L. de C.V. ("MGAM") and MGA Entertainment (HK) Limited ("MGAHK").  In addition, please be advised that Mattel intends to seek a protective order relating to the MGAM and MGAHK interrogatories, and this motion should also be part of Thursday's discussions.

**From:** Hurst, Annette [mailto:ahurst@orrick.com]
**Sent:** Tuesday, September 01, 2009 11:37 AM
**To:** Molinski, William; Marshall Searcy
**Cc:** Dylan Proctor; Michael T Zeller; Susan R. Estrich
**Subject:** RE: Mattel adv. MGA

Marshall:

You'll recall that I also asked that someone be present on behalf of Mattel with the complete authority to compromise regarding its objections to those interrogatories and since Order No. 52 has a similar requirement it makes sense to us that we do this all at once (especially since the deadline for conducting the meet and confer in response to my letter is Friday).

Annette

**From:** Molinski, William
**Sent:** Tuesday, September 01, 2009 11:33 AM
**To:** 'Curran Walker'
**Cc:** Searcy, Marshall; Hurst, Annette
**Subject:** RE: Mattel adv. MGA

Marshall:

I cannot meet on Wednesday morning, but could meet on Thursday, after the hearings before the Discovery Master. How about 2 pm at your office? Also, Annette has sent a letter asking for a meet and confer in person over the most recent interrogatories served by MGA Mexico and MGA HK. I would suggest we address the meet and confer on those interrogatories at that same meeting. Please confirm that works for you.

EXHIBIT _____ 4

1

PAGE _____ 18

Bill



ORRICK

**BILL A. MOLINSKI**

**ORRICK, HERRINGTON & SUTCLIFFE LLP**
777 SOUTH FIGUEROA STREET
SUITE 3200
LOS ANGELES, CA 90017-5855

*tel* 213-612-2256
*fax* 213-612-2499
*mobile* 310-502-7580
wmolinski@orrick.com

**www.orrick.com**

---

**From:** Curran Walker [mailto:curranwalker@quinnemanuel.com]
**Sent:** Monday, August 31, 2009 11:14 AM
**To:** Molinski, William
**Cc:** Searcy, Marshall
**Subject:** Mattel adv. MGA

Dear Bill,

Please see the attached letter from Marshall Searcy.

Best regards,

**Curran M. Walker | Quinn Emanuel Urquhart Oliver & Hedges, LLP** | 865 S. Figueroa Street, 10th Floor, Los Angeles, CA 90017
Direct: +1.213.443.3702 | Main Phone: +1.213.443.3000 | Main Fax: +1.213.443.3100 | E-mail:
curranwalker@quinnemanuel.com

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

```
"EMF <orrick.com>" made the following annotations.
-----------------------------------------------------------------
=================================================================
```

IRS Circular 230 disclosure:
To ensure compliance with requirements imposed by the IRS,
we inform you that any tax advice contained in this
communication, unless expressly stated otherwise, was not
intended or written to be used, and cannot be used, for

EXHIBIT _____ 4 _____

PAGE _____ 19 _____

the purpose of (i) avoiding tax-related penalties under
the Internal Revenue Code or (ii) promoting, marketing or
recommending to another party any tax-related matter(s)
addressed herein.


=============================================================

NOTICE TO RECIPIENT:  THIS E-MAIL IS  MEANT FOR ONLY THE
INTENDED RECIPIENT OF THE TRANSMISSION, AND MAY BE A
COMMUNICATION PRIVILEGED BY LAW.  IF YOU RECEIVED THIS E-
MAIL IN ERROR, ANY REVIEW, USE, DISSEMINATION,
DISTRIBUTION, OR COPYING OF THIS E-MAIL IS STRICTLY
PROHIBITED.  PLEASE NOTIFY US IMMEDIATELY OF THE ERROR BY
RETURN E-MAIL AND PLEASE DELETE THIS MESSAGE FROM YOUR
SYSTEM. THANK YOU IN ADVANCE FOR YOUR COOPERATION.

For more information about Orrick, please visit
http://www.orrick.com/
=============================================================
===============================================================================

3

EXHIBIT _____ 4 _____

PAGE _____ 20 _____

# EXHIBIT 5

| | |
|---|---|
| **From:** | Scott Watson |
| **Sent:** | Sunday, September 06, 2009 9:59 AM |
| **To:** | MGA / Bryant Team |
| **Subject:** | Fw: Mattel v. MGA |

**From:** Scott Watson
**To:** 'O'Brien, Robert' <obrien.robert@arentfox.com>; 'Hansen, Drew' <hansen.drew@arentfox.com>
**Cc:** 'AHurst@orrick.com' <AHurst@orrick.com>; 'wmolinski@orrick.com' <wmolinski@orrick.com>; Michael T Zeller
**Sent:** Sun Sep 06 09:55:03 2009
**Subject:** Mattel v. MGA

Dear Mr. O'Brien,

On Friday at 4:30 p.m. MGA served on Mattel an ex parte application seeking certain discovery on an expedited basis. Given the holiday weekend, I wrote Ms. Hurst an email (attached below), asking MGA to agree to short extension of time for Mattel to respond to the application and extending that time from Tuesday to Wednesday at 1:00 p.m. When I had not heard back from Ms. Hurst by yesterday evening I sent her a second email (also below) and cc'd Mr. Molinski, seeking a response. I have not heard back from either Ms. Hurst or Mr. Molinski.

Accordingly, Mattel respectfully requests that the Discovery Master grant the requested extension of time to oppose MGA's ex parte application and order that Mattel's opposition be filed no later than Wednesday at 1:00 p.m. I apologize for interrupting your holiday weekend, and thank you for your continuing attention to this matter.

Best,

Scott L. Watson

**From:** Scott Watson
**Sent:** Saturday, September 05, 2009 5:12 PM
**To:** 'AHurst@orrick.com'
**Cc:** Michael T Zeller; 'wmolinski@orrick.com'
**Subject:** FW: Mattel v. MGA

Annette,

I have not heard back from you regarding my request that MGA agree that Mattel's ex parte opposition be due by Wednesday at 1:00 pm. I would appreciate the courtesy of a response so that I and my colleagues can determine our plans for the holiday weekend.

Best,

Scott

**From:** Scott Watson
**Sent:** Friday, September 04, 2009 5:27 PM
**To:** 'ahurst@orrick.com'
**Cc:** Michael T Zeller
**Subject:** Mattel v. MGA

Dear Annette,

EXHIBIT _____5_____

PAGE _____2 1_____

1

We have received MGA's ex parte application, served this afternoon at 4:30.  Given that it is Friday afternoon of a holiday weekend, we propose that Mattel's opposition be due by 1:00 p.m. on Wednesday.  Please let us know if you will agree to this schedule.

Best,

Scott

EXHIBIT _____5_____

PAGE ____22____

# EXHIBIT 6

Robert C. O'Brien (SBN 154372)
ARENT FOX LLP
555 West Fifth Street, 48th Floor
Los Angeles, CA 90013-1065
Telephone: 213.629.7400
Facsimile: 213.629.7401
obrien.robert@arentfox.com

Discovery Master

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>CONSOLIDATED WITH MATTEL, INC. v. BRYANT and MGA ENTERTAINMENT, INC. v. MATTEL, INC. | Case No. CV 04-09049 SGL (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-2727<br><br>**PHASE 2 DISCOVERY MATTER**<br><br>**AMENDED[1] ORDER NO. 11, REGARDING:**<br><br>**(1) MOTION OF MATTEL, INC. TO COMPEL RESPONSES TO INTERROGATORIES AND PRODUCTION OF DOCUMENTS BY MGA ENTERTAINMENT, INC. AND ISAAC LARIAN; and**<br><br>**(2) MOTION OF MATTEL, INC. TO COMPEL THE DEPOSITIONS OF PABLO VARGAS AND MARIANA TRUEBA** |

[1] The only difference between this Amended Order No. 11 and the original order is the language in Section III requiring MGA Entertainment, Inc. and Isaac Larian to produce responsive documents and information within 30 days of the original order.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 6

PAGE 23

1      This Order sets forth the Discovery Master's ruling on two motions filed by

2  Mattel, Inc. ("Mattel"):  (1) a motion to compel responses to interrogatories and

3  production of documents by MGA Entertainment, Inc. ("MGA") and Isaac Larian

4  ("Larian") [Docket No. 4817] (the "Written Discovery Motion"), and (2) a motion

5  to compel the depositions of Pablo Vargas and Mariana Trueba [Docket No. 4799]

6  (the "Deposition Motion") (collectively, the "Motions").

7      The Motions came on regularly for hearing before the Discovery Master on

8  March 19, 2009.  All interested parties were represented by counsel and afforded

9  the opportunity to present oral argument on the Motions.  The Discovery Master,

10  having considered the papers filed in support of and in opposition to the Motions,

11  and having heard oral argument, rules as set forth below.

12  **I.**    **MATTEL'S WRITTEN DISCOVERY MOTION**

13      In its Written Discovery Motion, Mattel seeks to compel MGA to produce

14  documents responsive to 40 separate document requests[2] and provide answers to 12

15  different interrogatories.  (Separate Statement in Support of the Written Discovery

16  Motion, pp. 1 – 41 and 45 – 102).  Mattel further seeks to compel Larian to produce

17  documents responsive to 3 separate document requests and provide answers to 11

18  different interrogatories.[3]  (*Id.*, pp. 41 – 43 and 49 – 102).

19      **A.**    **Document Requests**

20          **1.**    **Document Requests Propounded On MGA**

21      Document Request Nos. 4 through 37 seek financial information from MGA

22

23  [2] Although Mattel purports to compel responses from MGA to Document Request Nos. 4 – 37 and 40 – 45 in its Written Discovery Motion, its Separate Statement does not reference Request for Production No. 42, mislabels

24  Document Request Nos. 43, 44 and 45 (as requests numbered 42, 43 and 44, respectively) and includes Document Request No. 46 (incorrectly numbered as request 45).  (*Compare* Separate Statement in Support of the Written

25  Discovery Motion at pp. 37 – 40 with the Declaration of Scott L. Watson in Support of the Written Discovery Motion ("Watson Decl."), Ex. 1 at pp. 13 and 14).  Because Mattel has in reality moved to compel responses to Document

26  Requests Nos. 4 – 37, 40, 41, and 43 – 46, the Discovery Master's ruling addresses only those requests – not Document Request No. 42.  Moreover, any reference to a document request relating to MGA in this Order shall refer

27  to the actual number of the document request as set forth in Mattel's Second Set of Requests for Production of Documents and Things to MGA dated June 6, 2007 (attached to the Watson Decl. as Exhibit 1).

28  [3] The 11 interrogatories propounded on Larian are the same as 11 of the 12 interrogatories at issue regarding MGA.

- 1 -    AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT    6

PAGE     24

1   related to sales, revenues, costs, profits, customer returns, customer rebates and

2   customer credits regarding the Bratz Dolls or Bratz Product,[4] as well as documents

3   sufficient to identify customers who purchased any Bratz Product from MGA or its

4   licensees. (Watson Decl., Ex. 1 at pp. 7 – 12).

5       Document Request Nos. 43, 44 and 46 similarly seek financial information

6   from MGA related to the Bratz product line:

7       • Document Request No. 43 (erroneously numbered in Mattel's Separate

8         Statement as request number 42): "All sales, profit and cash flow

9         projections or forecasts for BRATZ DOLLS, BRATZ PRODUCTS,

10        BRATZ MOVIES, and BRATZ TELEVISION SHOWS." (*Id.*, p. 13).

11      • Document Request No. 44 (erroneously numbered in Mattel's Separate

12        Statement as request number 43): "All DOCUMENTS that REFER

13        OR RELATE TO the value of the Bratz brand." (*Id.*).

14      • Document Request No. 46 (erroneously numbered in Mattel's Separate

15        Statement as request number 45): "All DOCUMENTS that evidence,

16        reflect, REFER OR RELATE TO the BRATZ DOLL's share of the

17        fashion doll market, including, without limitation, the extent to which

18        Bratz has been or is gaining or losing market share in the fashion doll

19        market." (*Id.*, p. 14).

20      Document Request Nos. 40, 41 and 45, on the other hand, seek financial

21   information from MGA as a whole, not just financial data limited to the Bratz Dolls

22   or Bratz Product:

23      • Document Request No. 40: "All DOCUMENTS that describe YOUR

---

[4] Mattel defines the term "Bratz Product" as follows:
'Bratz Product' means any product whether two-dimensional or three-dimensional, and whether in tangible, digital or electronic or other form: (i) that is or has ever been distributed, marketed or sold under the name 'Bratz' or as part of the 'Bratz' line; (ii) that depicts, incorporates, embodies consists of or REFERS OR RELATES TO BRATZ; and/or (iii) that is or has ever been distributed, marketed or sold in any packaging that includes the name 'Bratz' or depicts, incorporates, embodies, consists of or REFERS OR RELATES TO BRATZ.
(Watson Decl., Ex. 1 at p. 3; *see also id.*, Ex. 4 at p. 7).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 2 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____ 6

PAGE _____ 25

1   cost allocation procedures." (*Id.*, p. 13).

2   • Document Request No. 41: "YOUR general ledgers from January 1,
3   1995 through the present." (*Id.*).

4   • Document Request No. 45 (erroneously numbered in Mattel's Separate
5   Statement as request number 44): "DOCUMENTS sufficient to
6   calculate YOUR net worth on a yearly basis for each year from 1999
7   to the present." (*Id.*).

8   **2.   Document Requests Propounded On Larian**

9   The three document requests propounded on Larian (i.e., Documents Request

10   Nos. 207, 208 and 269) seek information regarding all of Larian's earnings and

11   bank accounts:

12   • Document Request No. 207: "DOCUMENTS sufficient to IDENTIFY
13   each account with any bank or financial institution that YOU have or
14   have had, or that YOU have or have had any legal or beneficial interest
15   in, since January 1, 1999." (Watson Decl., Ex. 4 p. 51).

16   • Document Request No. 208: "Documents sufficient to establish
17   YOUR gross income, and the sources of that gross income, for the
18   years 1999 through the present, inclusive." (*Id.*, p. 52).

19   • Document Request No. 269: "DOCUMENTS sufficient to calculate
20   YOUR net worth on a yearly basis for each year from 1999 to the
21   present." (*Id.*, p. 63).

22   **3.   Phase 1 Rulings**

23   This is not the first time that Mattel has moved to compel responses to the

24   document requests at issue. Mattel previously filed two motions to compel that

25   asked the former discovery master to compel MGA and Larian (collectively, the

26   "MGA Parties") to, among other things, respond to the same 43 document requests

27   in dispute here. (Watson Decl., Exs. 2 and 7). The prior discovery master granted

28   both motions (at least as they relate to the document requests that are the subject of

EXHIBIT ___6___
26
PAGE ___

1 the present dispute). (*Id.*, Ex. 3 at pp. 1 – 3; *Id.*, Ex. 8 at pp. 15 and 16).

2   Because the prior discovery master compelled MGA to produce information

3 responsive to Document Request Nos. 4 – 37, 40, 41 and 43 – 46, and directed

4 Larian to produce information responsive to Document Request Nos. 207, 208 and

5 269, Mattel argues (1) that the MGA Parties have a duty under Federal Rule of

6 Civil Procedure 26 to supplement their prior productions, and (2) that the

7 information the MGA Parties "are withholding is relevant to the damages Mattel

8 seeks," (Written Discovery Motion, pp. 8 – 9).

9    **4. Objections Of MGA**

10   In their Opposition, the MGA Parties rely on two grounds for refusing to

11 supplement their prior document productions regarding Document Request Nos. 4 –

12 37, 40, 41, 43 – 46, 207, 208 and 269.  First, the MGA Parties argue that Mattel

13 failed to meet and confer in good faith.  (Opposition, pp. 3 – 5).  Second, the MGA

14 Parties argue that the requested information is not relevant to the claims and

15 defenses at issue in Phase 2.  (*Id.*, 5 – 7).

16    **a. Purported Failure To Meet And Confer**

17   Because it could dispose of the outstanding discovery issues related to the

18 document requests that are the subject of the present dispute, the Discovery Master

19 first addresses the MGA Parties' argument that Mattel failed to meet and confer

20 properly prior to filing its Written Discovery Motion.

21   The MGA Parties argue that Mattel's motion to compel should be denied

22 because Mattel failed to comply with the meet and confer requirements of Local

23 Rule 37-1.  (*Id.*, pp. 3 – 5).  As the Discovery Master has previously ruled,

24 however, Local Rule 37 (as distinguished from Federal Rule 37) does not apply to

25 discovery disputes in this case.  The applicable meet and confer procedures are set

26 forth in the Court's order appointing a discovery master dated December 6, 2006

27 ("Discovery Master Order") and in the Federal Rules of Civil Procedure, (Fed. R.

28 Civ. Proc. 37(a); Discovery Master Order, p. 4), the latter of which expressly

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT   6

PAGE    27

1    requires that, before filing a motion to compel, the moving party must meet and

2    confer in "good faith." (Fed. R. Civ. Proc. 37(a)).

3       Because Rule 37 and the Discovery Master Order govern the meet and confer

4    process in this case, the Discovery Master construes the MGA Parties' meet and

5    confer argument in light of the good faith requirement embedded in Rule 37.  The

6    MGA Parties claim that Mattel did not meet and confer in good faith because its

7    counsel sent them "a meet and confer letter inviting [them] to further meet and

8    confer on February 11, 2009" and then filed a motion to compel one "day before

9    the proposed meet and confer session" was scheduled to occur (i.e., on February 10,

10   2009). (Opposition, pp. 3 – 5; *see also* Declaration of Amman Khan, Ex. H at p. 2

11   [wherein Mattel's counsel asked counsel for the MGA Parties to "be in a position to

12   provide us with MGA and Larian's position by Wednesday, February 11, 2009."]).

13   However, the record available to the Discovery Master demonstrates that Mattel

14   made several prior attempts to meet and confer with the MGA Parties, including

15   engaging in the following:

16       •   On January 6, 2009, Mattel's counsel sent a letter demanding that the

17            MGA Parties supplement their production concerning the document

18            requests by February 1, 2009, (Watson Decl., Ex. 17);

19       •   Counsel for the MGA Parties never responded to Mattel's January 6,

20            2009 letter, (Written Discovery Motion, p. 6);

21       •   Counsel for Mattel sent counsel for the MGA Parties a second copy of

22            the January 6, 2009 letter on February 5, 2009, (Watson Decl., Ex. 30);

23       •   Counsel for Mattel and counsel for the MGA Parties then spoke on

24            February 6, 2009, and were supposed to discuss, among other things,

25            the document requests at issue, but counsel for the MGA Parties was

26            not prepared to discuss the requests at the appointed time, (Watson

27            Decl., ¶ 22); and

28       •   Counsel for Mattel and the MGA Parties then spoke *again* on February

EXHIBIT    **6**

**28**

PAGE

1        9, 2009 to discuss the document requests but counsel for the MGA

2        Parties was still not prepared to discuss the issues, (*Id.*).

3    In light of foregoing facts (which are not disputed by the MGA Parties), it is

4    clear that Mattel satisfied Rule 37's "good faith" meet and confer requirement.  The

5    plain language of Federal Rule of Civil Procedure 37(a)(1) permits a party to "move

6    for an order compelling . . . discovery . . . [if] the movant has in good faith

7    conferred or *attempted to confer* with the" the non-moving party." (Fed. R. Civ. P.

8    37(a) [emphasis added]).  Because it attempted to meet and confer with counsel for

9    the MGA Parties on at least two occasions (but was unable to do so because the

10   MGA Parties were not prepared to meet and confer during either of the agreed upon

11   times), Mattel satisfied its meet and confer obligations under Rule 37.[5]

12            **b.      Relevance Of The Document Requests To Phase 2**

13       The MGA Parties also oppose Mattel's demand for a supplemental

14   production on the ground that none of the document requests as issue seek

15   information reasonably calculated to lead to the discovery of admissible evidence.

16   (Opposition, pp. 5 – 7).

17            **(1)      Document Request Nos. 207, 208 And 269**

18       With respect to the three document requests directed to Larian (i.e.,

19   Document Request Nos. 207, 208 and 269), the Opposition contends that they are

20   not relevant to any Phase 2 claims.  (Opposition, p. 6).

21       Each of the requests seeks information related to Larian's financial condition,

22   Mattel's damages, and/or whether the facts alleged in Mattel's Second Amended

23   Answer and Counterclaim ("SAAC") are true.  For example, Document Request

---

[5] The Discovery Master's ruling is also supported by the fact that the MGA Parties refused to produce any of the requested information following the filing of the Written Discovery Motion.  It is, therefore, unclear what could have been accomplished by an additional meet and confer on these issues.  Moreover, Mattel's counsel stated at oral argument that they met with MGA's counsel again on February 11, 2009 regarding the document requests and they still "had no answer to this question." (Transcript of March 19, 2009 hearing before the Discovery Master ("Tr.") p. 68:7-9).  Regardless, Mattel attempted to meet and confer twice before filing its current motion to compel (i.e., on February 6 and 9, 2009) and that is all that is required by the Federal Rules of Civil Procedure and the discovery procedures governing this case.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 6 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____ 4 _____

PAGE _____ 29 _____

1   Nos. 208 and 269 seek documents sufficient to identify Larian's net worth (Request

2   No. 269) and gross income (Request No. 208). Such information relates to Phase 2

3   damages issues, including, among other things, damages sought against Larian in

4   connection with Mattel's unfair competition cause of action as well as the

5   calculation of Larian's net worth for purposes of litigating the propriety of any

6   "exemplary damages under Cal. Civ. Code § 3294."[6] (SAAC, ¶¶ 163 – 166). It is

7   therefore discoverable.

8       In its SAAC, Mattel also alleges that MGA, Larian and others hired former

9   Mattel's employees for the express purpose of misappropriating Mattel's

10   confidential and proprietary information, and that the MGA Parties promised such

11   individuals increased salaries at MGA. (*See, e.g.,* SAAC, ¶¶ 69 and 77). Mattel's

12   request for documents sufficient to identify Larian's bank accounts (i.e., Request

13   No. 207) is, therefore, reasonably calculated to lead to the discovery of admissible

14   evidence regarding the source of any payments that may have been made by Larian

15   to former Mattel employees.[7]

16              **(2)    Document Request Nos. 4 – 37, 40, 41 And 43 –**

17                     **46**

18       Regarding the requests directed to MGA (i.e., Document Request Nos. 4 –

19   37, 40, 41 and 43 – 46), MGA argues that they are improper because they seek

20   financial information "related to Bratz dolls, which was a Phase 1 issue,"

21   (Opposition, p. 5). Specifically, the MGA parties argue that:

22          [a]ny claim by Mattel that it needs [supplemental] Bratz-

23

---

24  [6] While the Discovery Master agrees that Document Request Nos. 208 and 269 are relevant to Phase 2 issues, he concludes that Larian should not be required to provide updated information concerning his net worth and gross income every few months. Yet, Mattel is entitled to obtain this financial information at least once prior to the Phase 2 trial so that it can assess the veracity of the information provided by Larian through the discovery process, question deponents about the figures provided, and give the data to its experts. Further, acquiring updated financial information from Larian is appropriate because his net worth and gross income could, in theory, have been altered by the verdict rendered in Phase 1 or recent economic conditions.

[7] Any imposition resulting from Document Request No. 207 should be minimal because Larian was ordered to produce documents identifying his bank accounts as part of Phase 1.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

     AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT    **6**

PAGE    **30**

1    related financial information in order to establish its Phase

2    2 damages ignores the jury's Phase 1 damages award . . . .

3    Mattel sought disgorgement of all Bratz profits during

4    Phase 1 and the jury made its award. Mattel may not

5    relitigate this issue in Phase 2.

6   (*Id.*, p. 6).

7        However, Document Request Nos. 40, 41 and 45[8] make no mention of

8   financial information related to the Bratz Dolls or Bratz Product. They instead seek

9   (1) "All DOCUMENTS that describe [MGA's] cost allocation procedures,"

10  (Watson Decl., Ex. 1 at p. 13), (2) MGA's "general ledgers from January 1, 1995

11  through the present," (*id.*), and (3) "DOCUMENTS sufficient to calculate [MGA's]

12  net worth on a yearly basis for each year from 1999 to the present," (*id.*).

13  Therefore, MGA's argument does not apply to these document requests.

14       Document Request Nos. 40, 41 and 45 (erroneously numbered in Mattel's

15  Separate Statement as request number 44) are further reasonably calculated to lead

16  to the discovery of admissible evidence. As the Discovery Master previously ruled,

17  the touchstone for determining whether a particular discovery request is reasonably

18  calculated to lead to the discovery of admissible evidence in this case is whether the

19  request bears some relation to the issues to be tried in Phase 2. That standard is met

20  here, since MGA's general ledgers, net worth, and cost allocation procedures all

21  bear on Mattel's Phase 2 damages claims, including Mattel's claim for punitive

22  damages.

23       As for the remainder of the document requests directed to MGA (i.e.,

24  Document Request Nos. 4 – 37, 43,[9] 44,[10] and 46),[11] they are admittedly linked to

25  _____

[8] Document Request No. 45 is erroneously numbered in Mattel's Separate Statement as request number 44.

26  [9] Document Request No. 43 is erroneously numbered in Mattel's Separate Statement as request number 42.

27  [10] Document Request No. 44 is erroneously numbered in Mattel's Separate Statement as request number 43.

28  [11] Document Request No. 46 is erroneously numbered in Mattel's Separate Statement as request number 45.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 8 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____ 6 _____

PAGE _____ 31 _____

1   financial information related to the Bratz Dolls/Bratz Product. While the Discovery

2   Master recognizes that many, if not all, of the issues related to the theft of the Bratz

3   Dolls as well as any damages that may be recoverable by Mattel relating to such

4   misconduct were litigated and resolved in Phase 1 that does not necessarily mean

5   the information sought by Mattel is irrelevant.

6       As an initial matter, the Court's December 3, 2008 order imposes a

7   constructive trust on the proceeds of MGA's sale of Bratz dolls. Continued sale of

8   any such inventory is thus relevant to the Court's injunction and presumably must

9   be made available to Mattel on that basis alone.[12]

10      Document Request Nos. 4 – 37, 43 (erroneously numbered in Mattel's

11   Separate Statement as request number 42), 44 (erroneously numbered in Mattel's

12   Separate Statement as request number 43), and 46 (erroneously numbered in

13   Mattel's Separate Statement as request number 45) also relate to Mattel's Phase 2

14   claims. The counterclaims to be litigated in Phase 2 (e.g., Mattel's RICO causes of

15   action, misappropriation of trade secrets claim, and unfair competition cause of

16   action) all incorporate by reference the allegation that "MGA first stole 'Bratz,' a

17   fashion doll, from Mattel, and then continued stealing Mattel's confidential and

18   proprietary information to fuel MGA's growth." (SAAC, ¶¶ 1, 88, 98, 106, and

19   163). The SAAC later alleges that "[b]y engaging in the foregoing conduct, [MGA

20   has, among other things,] . . . engaged in unlawful, unfair or fraudulent business

21   act[s] or practice[s]" in violation of California Business and Professions Code

22   section 17200 *et seq.* (SAAC, ¶ 165). Therefore, in addition to the alleged

23   misappropriation of other trade secrets, Mattel's Phase 2 counterclaims at least

24   arguably include evidence relating to the purported theft of the Bratz Dolls as well.

25      Mattel's two RICO claims also both refer explicitly to a "Bratz Criminal

26

27   [12] MGA also has a continuing duty to supplement its production under the Federal Rules of Civil Procedure. (*See*

28   Fed. R. Civ. P. 26(e)(1) ["A party who has . . . responded to . . . [a] request for production . . . must supplement or correct its disclosure or response . . . in a timely manner").

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 9 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___**b**___

PAGE ___32___

1   Enterprise." (SAAC, ¶¶ 89 and 100). The SAAC further expressly alleges that one

2   of the purported racketeering activities was the "altering [of] numerous original

3   Bratz drawings created by Bryant . . ." (SAAC, ¶ 93(c)(ii)). These allegations are

4   sufficient to render Document Request Nos. 4 – 37, 43, 44 and 46 reasonably

5   calculated to lead to the discovery of admissible evidence in Phase 2.

6        The Discovery Master cannot predict whether the Court will ultimately

7   construe Mattel's Phase 2 claims as broad enough to encompass MGA's alleged

8   misappropriation of the Bratz Dolls, or whether Mattel will be barred from

9   presenting any evidence that it has been damaged by such misconduct at the Phase

10  2 trial on the ground that the issue was previously litigated and resolved in Phase 1.

11  Given that the discovery here need only appear reasonably calculated to lead to the

12  discovery of admissible evidence concerning the Phase 2 claims, the Discovery

13  Master finds that the aforementioned document requests are sufficiently related to

14  Mattel's Phase 2 claims to be discoverable at this time.

15        **5.   Conclusion**

16        For all of the foregoing reasons, Mattel's motion to compel responses to

17  Document Request Nos. 4 – 37, 40, 41, 43 – 46 (erroneously numbered in Mattel's

18  Separate Statement as requests numbered 42 – 45), 207, 208 and 269 is granted.

19        **B.   Interrogatories Propounded On MGA And Larian**

20        The second part of Mattel's Written Discovery Motion addresses various

21  interrogatories propounded on the MGA Parties.

22        **1.   Interrogatory No. 45 Propounded On MGA**

23  Interrogatory No. 45 asks MGA[13] to:

24        IDENTIFY each BRATZ PRODUCT that has been

25        SOLD by [MGA] or [its] licensees and, for each such

26

27  _____
   [13] Although Interrogatory No. 45 was propounded on Larian as well, (see Watson Decl., Ex. 9), Mattel's Written
28  Discovery Motion seeks an order compelling just "MGA TO SUPPLEMENT ITS RESPONSES TO
   INTERROGATORY NO. 45." (Written Discovery Motion, p. 9:8-9 [emphasis omitted]).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 10 -                    AMENDED ORDER NO. 11
                    [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___6___

PAGE ___33___

1                   BRATZ PRODUCT, state . . . (a) the number of units of

2                   each such BRATZ PRODUCT SOLD by [MGA] or [its]

3                   licensees, (b) the gross and net revenue received by

4                   [MGA] from such SALES of each such BRATZ

5                   PRODUCT, (c) all costs [MGA] incurred in connection

6                   with each such BRATZ PRODUCT, including but not

7                   limited to [MGA's] costs of goods sold, and (d) [MGA's]

8                   gross and net profits from each such BRATZ PRODUCT.

9    (Separate Statement in Support of the Written Discovery Motion, p. 45; *see also*

10   Written Discovery Motion, p. 9).

11                       **a.    Phase 1 Rulings**

12        As with the document requests discussed above, Mattel concedes that "MGA

13   identified and produced documents responsive to [Interrogatory No. 45] in

14   December 2007, and later supplemented th[at] production mid-trial . . ." (Written

15   Discovery Motion, p. 9).  Nonetheless, Mattel argues that "MGA now . . . refuses to

16   supplement its response" without justification.  (*Id.*)

17                       **b.    Objections Of MGA**

18        In its Opposition, MGA argues that it does not have to provide the

19   information requested by Interrogatory No. 45 for two reasons.  First, it claims that,

20   like the document requests propounded on MGA, "Mattel's entitlement to gross and

21   net profits from sales of Bratz products was an issue adjudicated in Phase 1, and

22   Mattel fails to explain how this discovery is relevant to or proper in Phase 2."

23   (Opposition, p. 7).  The information sought by Interrogatory No. 45 is virtually

24   identical to the documents sought by Document Request Nos. 21 (requesting

25   "DOCUMENTS sufficient to show the number of units of each BRATZ

26   PRODUCT sold by [MGA] or [its] licensees"), 22 (requesting "DOCUMENTS

27   sufficient to show the revenue received by [MGA] from the sale of each BRATZ

28   PRODUCT sold by [MGA] or [its] licensees"), 23 (requesting "DOCUMENTS

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 11 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1   sufficient to show [MGA's] cost of goods sold, unit cost and other cost for each

2   BRATZ PRODUCT sold by [MGA] or [its] licensees"), and 24 (requesting

3   "DOCUMENTS that evidence, reflect or REFER OR RELATE TO [MGA's]

4   profits from the sale of each BRATZ PRODUCT sold by [MGA] or [its]

5   licensees"), discussed above.  Accordingly, MGA's relevancy argument regarding

6   Interrogatory No. 45 is not persuasive for the same reasons discussed in Section

7   I.A.4.b.2 above, namely that the information is relevant to the constructive trust

8   imposed by the Court on the proceeds of MGA's sale of Bratz dolls and is also

9   arguably relevant to Mattel's Phase 2 claims.[14]

10      MGA also argues that it should not be required to provide the information

11  requested by Interrogatory No. 45 because it "has already provided information that

12  is current through the second fiscal quarter of 2008" and it would be unduly

13  burdensome to gather the documents necessary to update that information.

14  (Opposition, pp. 7 – 8).   MGA did not argue, however, in its Opposition that it

15  would be unduly burdensome to respond to Document Request Nos. 21, 22, 23 and

16  24 discussed above in Section I.A.4.b.2.  Therefore, MGA can gather the

17  documents responsive to those requests and refer Mattel to those materials.  (See

18  Fed. R. Civ. P. 33(d) [If the answer to an interrogatory may be determined by

19  examining . . . a party's business records . . . the responding party may answer by

20  specifying the records that must be reviewed . . ."]).

21      The MGA Parties' argument that it is overly burdensome to require MGA to

22  spend 320 hours to inform Mattel of the most recent sales figures concerning the

23  Bratz products, (Opposition, p. 7), is also unpersuasive, given the importance of the

24

25  [14] Again, the Discovery Master cannot predict whether the Court will ultimately deem Mattel's Phase 2 claims broad

26  enough to encompass MGA's alleged misappropriation of the Bratz dolls or whether Mattel will be barred from presenting any evidence that it has been damaged by such misconduct at the Phase 2 trial on the ground that the issue was previously litigated and resolved in Phase 1. Nevertheless, in light of the fact that the discovery need only

27  appear reasonably calculated to lead to the discovery of admissible evidence concerning the Phase 2 claims, the Discovery Master finds that Interrogatory No. 45 is sufficiently related to Mattel's Phase 2 claims to be discoverable

28  at this time.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 12 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____ 6 _____

PAGE _____ 35 _____

1   information requested and the wide-ranging extent of the discovery to date. As

2   explained above, the information sought is relevant to the constructive trust

3   imposed by the Court's December 3, 2008 ruling and relevant to Mattel's Phase 2

4   claims. Also, while 320 hours may be unduly burdensome in certain

5   circumstances, it is not unreasonable on its face here given that the MGA Parties

6   have already produced more than 4 million documents.[15] (See *Cappacchione v.*

7   *Charlotte-Mecklenburg Schools*, 182 F.R.D. 486, 491 (W.D.N.C. 1998)

8   ["Requiring a responding party to perform extensive research or to compile

9   substantial amounts of data and information does not automatically constitute an

10  undue burden . . . Imposing such a burden is particularly proper where, as here, the

11  information sought is crucial to the ultimate determination of a crucial issue and

12  where the location of the documents is best known by the responding party."]).

13                      **c.      Conclusion**

14         For all of the foregoing reasons, Interrogatory No. 45 is reasonably

15  calculated to lead to the discovery of admissible evidence regarding Mattel's

16  Phase 2 claims and must be answered by MGA.

17         **2.      Interrogatory Nos. 56 – 63 Propounded On MGA And**

18                 **Larian**

19         Mattel propounded Interrogatory Nos. 56 – 63 on both MGA and Larian.

20  These interrogatories ask the MGA Parties to provide information regarding their

21  alleged theft of certain Mattel documents:

22         • Interrogatory No. 56: "IDENTIFY all MATTEL DOCUMENTS that

23                 MGA has obtained, received, reviewed, copied, reproduced,

24                 transmitted, requested, or used at any time since January 1, 1999, and

25                 IDENTIFY all PERSONS with knowledge of such facts and all

26                 DOCUMENTS that REFER OR RELATE TO such MATTEL

27  ─────────────────────────
[15] *See* Opposition at p. 4 n. 1 [stating that "the MGA Defendants [have] produced four million, two hundred thousand
28  (4,200,000) pages of documents"].

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

                                    - 13 -        AMENDED ORDER NO. 11
                                                  [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____ 6

36

PAGE _____

1    DOCUMENTS." (Separate Statement in Support of Written

2    Discovery Motion, p. 49).

3    • Interrogatory No. 57: "IDENTIFY all DOCUMENTS that REFER

4    OR RELATE TO any MATTEL product or plan that any of the

5    FORMER MATTEL EMPLOYEES provided, transmitted or disclosed

6    to, shared with or used on behalf of MGA at any time since January 1,

7    1999, and IDENTIFY all PERSONS with knowledge of such facts."

8    (*Id.*, p. 52).

9    • Interrogatory No. 58: "State all facts which support YOUR

10   contention, if YOU so contend, that YOU and/or MGA did not obtain

11   any MATTEL DOCUMENTS through improper means, and

12   IDENTIFY all PERSONS with knowledge of such facts and all

13   DOCUMENTS that REFER OR RELATE TO such facts." (*Id.*, p.

14   54).

15   • Interrogatory No. 59: "State all facts which support YOUR

16   contention, if YOU so contend, that any information in the MATTEL

17   DOCUMENTS does not and/or did not derive independent economic

18   value from not being generally known to the public or other

19   PERSONS who can obtain economic value from its disclosure or use,

20   and IDENTIFY all PERSONS with knowledge of such facts and all

21   DOCUMENTS that REFER OR RELATE TO such facts." (*Id.*, p.

22   57).

23   • Interrogatory No. 60: "State all facts which support YOUR

24   contention, if YOU so contend, that any information in the MATTEL

25   DOCUMENTS was known to the public or to PERSONS who can

26   obtain economic value from its disclosure or use, and IDENTIFY all

27   PERSONS with knowledge of the foregoing and All DOCUMENTS

28   that REFER OR RELATE TO the foregoing." (*Id.*, p. 61).

EXHIBIT _____ 6

PAGE _____ 37

1      • Interrogatory No. 61: "State all facts which support YOUR

2         contention, if YOU so contend, that YOU and/or MGA independently

3         developed, or did not otherwise use or disclose, any information in the

4         MATTEL DOCUMENTS, and IDENTIFY all PERSONS with

5         knowledge of such facts and all DOCUMENTS that REFER OR

6         RELATE TO such facts." (*Id.*, pp. 64 – 65).

7      • Interrogatory No. 62: "State all facts which support YOUR contention

8         that YOUR use or disclosure of information in the MATTEL

9         DOCUMENTS neither benefited YOU nor harmed MATTEL, and

10        IDENTIFY all PERSONS with knowledge of such facts and all

11        DOCUMENTS that REFER OR RELATE TO such facts." (*Id.*, p.

12        69).

13      • Interrogatory No. 63: "State all facts which support YOUR

14        contention, if YOU so contend, that YOU and/or MGA had, has or

15        have any right to copy, possess, use or disclose any MATTEL

16        DOCUMENT, and IDENTIFY all PERSONS with knowledge of such

17        facts and all DOCUMENTS that REFER OR RELATE TO such

18        facts." (*Id.*, p. 73).

19            **a.**    **Objections Of MGA And Larian**

20        In their Opposition, the MGA Parties rely on four basic grounds for refusing

21 to provide responses to Interrogatory Nos. 56 – 63.  First, the MGA Parties argue

22 that Interrogatory Nos. 56 and 58 – 63 are unduly burdensome.  (Opposition, pp. 9

23 – 10).  Second, the MGA Parties argue that the interrogatories presuppose facts

24 that are not true.  (*Id.*, p. 8).  Third, the MGA Parties argue that all 8 interrogatories

25 are impermissibly compound and exceed the number of allotted interrogatories.

26 (*Id.*, pp. 10 – 11).  Finally, the MGA Parties argue that Interrogatory Nos. 58, 59

27 and 62 improperly ask them to establish a negative proposition.  (*Id.*, pp. 11 – 12).

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____ 6

PAGE _____ 38

**(1)   Unduly Burdensome Objection**

The MGA Parties' primary argument in opposition to Interrogatory Nos. 56 – 63 is that each of the seven interrogatories that references the term "MATTEL DOCUMENTS" (i.e., Interrogatories Nos. 56 and 58 – 63) is unduly burdensome. (Opposition, p. 9 – 10). While the MGA Parties do concede that the interrogatories "relate to Phase 2" issues, (Tr., p. 57:13), they object to the interrogatories because they claim that the interrogatories require them "to state all facts, identify all documents and identify all witnesses, supporting contentions for over 8 boxes of documents . . ." (Opposition, pp. 9 – 10). Whether an undue burden exists, however, depends on, among other things, the value of the information sought versus the burden alleged by the responding party. (*See King v. Georgia Power Co.*, 50 F.R.D. 134, 136 (N.D. Ga. 1970) ["Although preparation of a direct answer will be time-consuming, and probably costly, the information is crucial to the issues of this suit, and is in the exclusive custody of the defendant."]).

Applying this test here, the Discovery Master finds that Interrogatory Nos. 56 and 58 – 63, at least as he understands them, go to the core of Mattel's Phase 2 trade secret claims. (Tr., 37:9-12 ["We're not asking for something of marginal importance. We're asking for . . . their core contentions related to the trade secret claims."]). As the Discovery Master has previously explained, the issues to be litigated in Phase 2 include, among other things, Mattel's claim that the MGA Parties stole "a vast array of trade secrets and other confidential information that comprise Mattel's intellectual infrastructure," including, among other things, stealing "Mattel's proprietary business methods, practices and information." (SAAC, ¶ 20). Indeed, Mattel alleges in its SAAC that the MGA Parties:

- "engaged in an ongoing, widespread pattern of . . . inducing Mattel employees to steal Mattel's confidential information or other property and take it with them to MGA," (*Id.*, ¶ 5);

//

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 16 -

1    • stole "Mattel's plans, strategy and business information for the

2    Mexican market and materials related to Mattel's worldwide business

3    strategies," (*Id.*, ¶ 37);

4    • "directed [certain Mattel employees'] to steal virtually all Mattel

5    confidential and proprietary information that they could access and

6    bring it with them to MGA," (*Id.*, ¶ 43), including "virtually every

7    type of document a competitor would need to enter the Mexican

8    market, and to unlawfully compete with Mattel in Mexico, in the

9    United States and elsewhere . . ." (*Id.*, ¶ 48);

10   • "targeted certain Mattel employees who have broad access to Mattel

11   proprietary information in an effort to induce and encourage them to

12   join MGA and to steal or otherwise wrongfully misappropriate Mattel

13   confidential information and trade secrets," including by "promising

14   these employees salaries 25 percent or more higher than they earn at

15   Mattel and stating to them that they should not be concerned by legal

16   action taken by Mattel to protect its trade secrets and its rights because

17   such claims are hard to prove and easy to defeat," (*Id.*, ¶ 69); and

18   • "hired directly from Mattel's United States operations at least 25

19   employees, from Senior Vice-President level to lower level

20   employees," and that some of these individuals misappropriated

21   "Mattel confidential and proprietary information, including Mattel's

22   strategic plans; business operations; methods and systems; marketing

23   and advertising strategies and plans; future product lines; product

24   profit margins, and customer requirements." (*Id.*, ¶ 77).

25       Therefore, this is not a situation where Mattel has alleged that the MGA

26   Parties stole a handful of documents.  The SAAC instead alleges that the MGA

27   Parties engaged in the wholesale theft of Mattel's trade secrets, including stealing

28   "virtually every type of document a competitor would need to enter the Mexican

EXHIBIT _____ 6

PAGE _____ 40

1    market, and to unlawfully compete with Mattel in Mexico, in the United States and

2    elsewhere . . ." (*Id.*, ¶ 48). Because Mattel alleges that its claims against the MGA

3    Parties relate to "a massive and pervasive theft of Mattel information," (Tr., 33:18-

4    19), including all of the documents that have been identified as the MATTEL

5    DOCUMENTS, Mattel is entitled to ask what the MGA Parties' contentions are

6    regarding whether or not those documents constitute trade secrets, particularly

7    given that such information is exclusively within the control of the MGA Parties.

8    As Mattel's counsel expressed at oral argument, Mattel is "going to go to trial

9    accusing MGA and the other defendants of stealing all of these documents . . . and

10   [the MGA Parties are] going to have to articulate what their contentions are with

11   respect to whether or not these are trade secrets . . ." (Tr., 36:24-37:3; *see also id.*

12   81:9-10 [wherein Mattel's counsel states that these documents "are the ones that

13   Mattel is going to be proceeding to trial on."]).

14        Also, the MGA Parties' claim of undue burden does not take into account the

15   vast scope of this litigation to date. (*Cf.* Opposition at p. 4 n. 1 [stating that Mattel

16   propounded 4,647 requests for admission, 2,889 requests for production, and 71

17   interrogatories in Phase 1]). The MGA Parties do not provide any supporting

18   declaration or specific evidence to support their assertion of burden beyond their

19   statement that the term "MATTEL DOCUMENTS" refers to 8 boxes of documents.

20   For example, the MGA Parties have not provided the Discovery Master with details

21   regarding: (1) a time estimate as to how long it would take to respond to the

22   Interrogatories; (2) the anticipated costs of responding to the Interrogatories; (3) the

23   extent to which any facts that must be set forth in answering the Interrogatories are

24   voluminous; or (4) an estimate of the number of documents and/or persons that may

25   have knowledge of such responsive facts. Therefore, the Discovery Master finds

26   that the MGA Parties have not met their burden of demonstrating that answering

27   //

28   //

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 18 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ____ 6

PAGE ____ 4 1

1  the requested interrogatories is overly burdensome.[16]  (*See Jackson v. Montgomery*

2  *Ward & Co., Inc.*, 173 F.R.D. 524, 528-9 (D.Nev. 1997) ["The party claiming that a

3  discovery request is unduly burdensome must allege specific facts which indicate

4  the nature and extent of the burden, usually by affidavit or other reliable

5  evidence."]).

6      While there is no specific evidence in the record demonstrating that the MGA

7  Parties will inevitably suffer an undue burden in responding to Interrogatory Nos.

8  56 and 58 – 63, the Discovery Master is nonetheless cognizant of the fact that a

9  demand for "all facts" relating to what could be thousands of different documents

10  could be construed by Mattel in a manner that could place an unreasonable burden

11  on the MGA Parties, particularly when that information is requested via a written

12  interrogatory.  The Discovery Master, thus, limits six of the interrogatories at

13  issue[17] and requires that the MGA Parties identify all facts, documents and

14  witnesses that they currently intend to rely on at summary judgment or trial to

15  demonstrate (i) they did not obtain any MATTEL DOCUMENTS through improper

16  means (i.e., Interrogatory No. 58), (ii) that the information in the MATTEL

17  documents did not derive independent economic value (i.e., Interrogatory No. 59),

18  (iii) any information in the MATTEL DOCUMENTS was known to the public,

19  (i.e., Interrogatory No. 60), (iv) the MGA Parties independently developed, or did

20  not otherwise use or disclose, any information in the MATTEL DOCUMENTS

21  (i.e., Interrogatory No. 61), (v) that the MGA Parties have not benefited by their use

22  of the information in the MATTEL DOCUMENTS nor harmed Mattel

23  (Interrogatory No. 62), and (vi) the MGA Parties had or have a right to copy,

24  possess, use or disclose any MATTEL DOCUMENT (Interrogatory No. 63).

25      The Discovery Master finds that this limitation is appropriate because Mattel

26

27  [16] The Discovery Master also notes that the MGA Parties did not provide any legal authority in support of their position on this issue. (Opposition, pp. 9 – 10).

28  [17] Interrogatory Nos. 56 and 57 must be answered as phrased.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 19 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____ **b**

PAGE _____ **42**

1    conceded in its Reply that it was not asking the MGA Parties "to provide

2    facts they have no knowledge of," [18] (Reply, p. 17), but rather wanted to assess the

3    "specific contentions Defendants may make regarding the [allegedly] stolen

4    documents," (*id.*, p. 17).  Mattel's counsel reiterated this position again at oral

5    argument, wherein he declared that Mattel was not necessarily interested in "a

6    parsing document by document," (Tr., 34:14-15), but instead "what [the MGA

7    Parties'] trial positions are going to be, before the jury is seated," (*id.*, p. 81:14-15).

8                     **(2)     Purported Presuppositions Regarding**

9                         **Interrogatory Nos. 56 and 58 – 63.**

10           The MGA Parties next assert that Interrogatory Nos. 60, 61 and 63 are

11   objectionable because they require the MGA Parties to presuppose that they are "in

12   possession of documents stolen or taken from Mattel by former employees – a fact

13   that MGA denies." (Opposition, p. 8).  The MGA Parties further assert that "each

14   of the interrogatories using the term 'MATTEL DOCUMENTS' [which includes

15   Interrogatory Nos. 56 and 58 – 63] requires MGA to assume . . . unfounded

16   assertions . . . which make the interrogatories unanswerable and incomprehensible."

17   (*Id.*, p. 9).  However, the MGA Parties cite no legal authority, and the Discovery

18   Master has found none, standing for the proposition that a party may refuse to

19   respond to an interrogatory merely because the interrogatory assumes a fact the

20   responding party disputes.

21                     **(3)     Compound And Excessive Objections**

22           The MGA Parties next assert that Interrogatory Nos. 56 – 63 are

23   impermissibly compound and exceed the allotted number of interrogatories.

24   (Opposition, pp. 10 and 11).  Each of these contentions is unavailing.

25           As an initial matter, the MGA Parties did not object to Interrogatory Nos. 56

26   ────────────────────

[18] Of course, if the MGA Parties subsequently wish to present other facts, witnesses or documents at summary
27   judgment or trial, they must supplement their response to these interrogatories accordingly and include the additional
information. (*See* Fed. R. Civ. P. 26(e)(1) ["A party who has . . . responded to an interrogatory . . . must supplement
28   its . . . response[] in a timely manner if the party learns that in some material respect the . . . response is incomplete
. . ."]).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

                                                     - 20 -                    AMENDED ORDER NO. 11
                                                                       [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____ 6

PAGE _____ 43

1   and 58 – 60 on the ground that they are compound.  Nor did they object to any of

2   the interrogatories as exceeding the allotted limit, except for Interrogatory No. 63.

3   Therefore, the MGA Parities waived any such objections to those interrogatories.

4   (*See, e.g., Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th

5   Cir. 1992) [stating that "failure to object to discovery requests within the time

6   period required constitutes a waiver of any objection."]).

7        As for the interrogatories where the objections were asserted, the MGA

8   Parties have not demonstrated that the interrogatories are compound or exceed the

9   allotted limit.  The fact that the interrogatories ask MGA to identify witnesses, facts

10  and documents related to the MATTEL DOCUMENTS does not render the

11  interrogatories compound because the questions in each interrogatory refer to one

12  common theme and count as a single interrogatory.  (*See Swackhammer v. Sprint*

13  *Corp. PCS*, 225 F.R.D. 658, 644 (D. Kan. 2004) ["[A]n interrogatory containing

14  subparts directed at eliciting details concerning a 'common theme' should generally

15  be considered a single question"]).  The prior discovery master applied this precise

16  rule in Phase 1, concluding that interrogatories "with subparts seeking facts

17  supporting a contention, the identity of persons with knowledge, and documents are

18  not counted separately for the purposes of applying the . . . interrogatory limit."

19  (Prior Discover Master Order dated September 15, 2007, pp. 5 – 7).

20                    **(4)     Establishing A Negative Proposition Objection**

21        As their final argument in opposing Interrogatory Nos. 56 – 63, the MGA

22  Parties assert that three of the interrogatories improperly ask them to establish a

23  negative proposition (i.e., Interrogatory Nos. 58, 59 and 62).  (Opposition, pp. 11 –

24  12).  The relevant question, however, is not whether an interrogatory may require a

25  party to prove a negative.  Rather, all of the cases cited by the parties concerning

26  this issue examine whether the interrogatory in question imposes an unreasonable

27  //

28  //

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

                                                    - 21 -        AMENDED ORDER NO. 11
                                                              [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____ 6

PAGE ___ ·( ___ 44

1   burden on the responding party.[19]  For the reasons explained above, there has been

2   no showing by the MGA Parties that an undue burden exists here.  (*See* Opposition,

3   pp. 11 – 12).

4                            **b.     Conclusion**

5          For all of the foregoing reasons, the objections to Interrogatory Nos. 56 – 63

6   are overruled and Mattel's motion to compel responses to the interrogatories is

7   granted, subject to the limitations discussed above.

8                    **3.     Interrogatory Nos. 67 – 69 Propounded On MGA And**

9                           **Larian**

10         Mattel also propounded Interrogatory Nos. 67 – 69 on both MGA and Larian.

11  These interrogatories ask the MGA Parties to provide information regarding any

12  payments they may have made to former Mattel employees and any persons

13  identified in the parties' initial disclosures:

14         • Interrogatory No. 67: "IDENTIFY fully and separately each and every

15                payment of money or other item of value that YOU have made or

16                given, or any promise, agreement, proposal [o]r offer by YOU to pay

17                money or given any item of value, to or on behalf of any PERSON

18                identified in any of the parties' initial disclosures in this ACTION at

19                any time when such person was not an employee of MGA, including

20                without limitation with respect to legal fees incurred by or on behalf of

21                such PERSON."  (Separate Statement in Support of Written Discovery

22                Motion, p. 88).

23         • Interrogatory No. 68: "To the extent not disclosed in prior

24

---

[19] The two cases cited by MGA in support of its argument (*Safeco of America v. Rawstron*, 181 F.R.D. 441, 447 -

25  448 (C.D.Cal.1998) and *Lawrence v. First Kansas Bank & Trust Co.*, 169 F.R.D. 657, 662-663 (D.Kan.1996)), both

    address the question of whether interrogatories are overly burdensome.  The same analysis is applied in the cases

26  cited by Mattel.  (*See Dang v. Cross*, 2002 WL 432197, *4 (C.D. Cal. 2002) [affirming magistrate judge's holding

    that interrogatories request "all facts" in support of a denial of a statement were not unduly burdensome]; *Tennison*

27  *v. San Francisco*, 226 F.R.D. 615, 618 (N.D. Cal. 2005) [concluding an interrogatory requiring plaintiff to provide all

    facts supporting the denial of an allegation was not unduly burdensome]; *Chapman v. California Dep't of Education*,

28  2002 WL 32854376, *2 (N.D. Cal. 2002) [same]).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 22 -                          AMENDED ORDER NO. 11
                                [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____ 6
                45
PAGE _____

1    Interrogatories, IDENTIFY fully and separately each and every

2    payment of money or other item of value that MGA has made, or any

3    promise, agreement, proposal or offer by MGA to pay money or given

4    any item of value, to or on behalf of any of the FORMER MATTEL

5    EMPLOYEES, including without limitation with respect to legal fees

6    incurred by or on behalf of any of the FORMER MATTEL

7    EMPLOYEES." (*Id.*, p. 91).

8    • Interrogatory No. 69: "To the extent not disclosed in prior

9    Interrogatories, IDENTIFY fully and separately each and every

10   payment of money or other item of value that YOU have made, or any

11   promise, agreement, proposal or offer by YOU to pay money or given

12   any item of value, since January 1, 1998 to or on behalf of any

13   PERSON who has been employed by MATTEL (excluding ordinary

14   salary and benefits paid to such PERSON while an MGA employee),

15   including without limitation with respect to legal fees incurred by or

16   on behalf of such PERSON and bonuses paid to such PERSON." (*Id.*,

17   p. 92).

18              **a.    Objections Of MGA And Larian**

19   In their Opposition, the MGA Parties rely on two basic grounds for refusing

20   to provide responses to these three interrogatories.  First, the MGA Parties argue

21   that the interrogatories are impermissibly compound and exceed the number of

22   allotted interrogatories.  (*Id.*, pp. 10 – 11).  Second, the MGA Parties argue that

23   interrogatories are overly broad.  (*Id.*, pp. 12 – 14).

24              **(1)    Compound And Excessive Objections**

25   Like their objections to Interrogatory Nos. 56 – 63, the MGA Parties contend

26   that Interrogatory Nos. 67 – 69 are impermissibly compound and exceed the

27   allotted number of interrogatories.  (Opposition, pp. 10 and 11).  But those

28   arguments are not persuasive for reasons discussed in Section I.B.2.a.3 above.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 23 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____ 6

PAGE _____ 46

### (2)   Overly Broad Objection

The MGA Parties' second argument regarding Interrogatory Nos. 67 – 69 is that they are overly broad. The MGA Parties complain that Interrogatory No. 67 is overbroad because it seeks information regarding payments by MGA to any persons identified in the initial disclosures, not just former Mattel employees. (Opposition, pp. 12 – 13).

While a payment to a potential witness could be relevant to the issue of bias and, therefore, discoverable, (*See Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 283 (C.D. Cal. 1998) ["Rule 26 further permits the discovery of information which may simply relate to the credibility of a witness or other evidence in the case."]), the SAAC merely alleges that the MGA Parties bribed former Mattel employees — not every single witness in this case. In the absence of an allegation suggesting that other witnesses may have been bribed, Interrogatory No. 67 is overly broad and not relevant at this time.[20] Accordingly, Mattel's motion to compel a response to Interrogatory No. 67 is denied at this stage.

As for Interrogatory Nos. 68 and 69, the MGA Parties first argue that the "burden and expense of determining whether each individual contemplated by these interrogatories was ever paid by MGA . . . far outweighs the interrogatories' likely benefit." (*Id.*, pp. 13 and 14). Once again, however, the MGA Parties provide no evidence to support such a claim. (*See Jackson*, 173 F.R.D. at 528-9 ["The party claiming that a discovery request is unduly burdensome must allege specific facts which indicate the nature and extent of the burden, usually by affidavit or other reliable evidence."]).

The MGA Parties only remaining complaint is that Interrogatory No. 69 seeks information regarding payments to "or on behalf of" any person who has been

---

[20] Mattel's request for information regarding payments by the MGA Parties to all individuals identified in the parties' initial disclosures presumably extends to all former Mattel employees identified therein as well. To the extent Interrogatory No. 67 seeks such information, it is plainly relevant to Mattel's Phase 2 claims. Nevertheless, the Discovery Master denies Mattel's motion to compel a response to Interrogatory No. 67 in its entirety because any payments by the MGA Parties to former Mattel employees is duplicative of Interrogatory Nos. 68 and/or 69.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 24 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____ 6

PAGE _____ 47

1   employed by Mattel and that Interrogatory No. 68 defines FORMER MATTEL

2   EMPLOYEES as including specific individuals as well as each such person's

3   "current or former employees, agents, representatives, attorneys, accountants,

4   vendors, consultants, independent contractors, predecessors-in-interest and

5   successors-in-interest, and any other Person acting on [his or her] behalf, pursuant

6   to [his or her] authority or subject to [his or her] control." (Opposition, p. 13).

7   While they assert these definitional objections, counsel for the MGA Parties

8   nevertheless conceded at oral argument that to the extent "MGA paid . . . former

9   Mattel employees, for other than their salary as MGA employees, I think that is a

10  fair inquiry." (Tr., 63:17-20; *id.*, 61:21 - 64:4).

11          Therefore, the Discovery Master orders the MGA Parties to identify fully and

12  separately each and every payment of money or other item of value that they have

13  made or offered to pay to or on behalf of any "former employee of Mattel" since

14  January 1, 1998 but limits the definition of former Mattel employees to "all

15  individuals that the MGA Parties are aware of that worked for Mattel and who

16  received any payment (excluding ordinary salary and benefits paid to such person

17  while an MGA employee) from the MGA Parties."[21]

18                    **b.      Conclusion**

19          For all of the foregoing reasons, Mattel's motion to compel is denied with

20  respect to Interrogatory No. 67.  Regarding Interrogatory Nos. 68 and 69, Mattel's

21  motion to compel responses to the interrogatories is granted, subject to the

22  limitations discussed above.

23          **C.      Summary Of Ruling Regarding The Written Discovery Motion**

24          Mattel's Written Discovery Motion is **DENIED in part** and **GRANTED in**

25  **part**.

26

27  [21] While Interrogatory Nos. 68 and 69 both seek information regarding payments made by the MGA Parties to former Mattel employees for "legal fees," the MGA Parties did not argue in their Opposition or at oral argument that such a

28  request is improper for that specific reason, but instead merely relied on the definitional argument discussed above. Accordingly, the Discovery Master does not need to resolve that particular issue.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

                                                          - 25 -          AMENDED ORDER NO. 11
                                                                    [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____6_____

PAGE _____48_____

## II.   MATTEL'S DEPOSITION MOTION

### A.   Introduction

As indicated above, the Deposition Motion addresses the motion of Mattel to compel the depositions of Pablo Vargas San Jose ("Vargas") and Mariana Trueba Almada ("Trueba") (collectively, the "Witnesses").

### 1.   Background

The Witnesses are former employees of Mattel in Mexico[22] who, along with another former Mattel manager and named defendant, Carlos Gustavo Machado Gomez ("Machado") left Mattel to establish and run MGA's newly formed Mexico operation, defendant MGA De Mexico ("MGA Mex"), in 2004.  Mattel alleges that Machado and the Witnesses stole Mattel trade secrets.

The Witnesses are Mexican nationals who reside in Mexico, where MGA Mex has its principal place of business.  Vargas currently serves as the Director of Sales for MGA Mex.  In that capacity, he supervises approximately 8 or 9 employees and reports to Susan Kuemmerle ("Kuemmerle"), the Vice President of MGA Mex.  Trueba currently serves as the Marketing Manager of Special Projects for MGA Mex.  She does not manage or supervise any employees of MGA Mex. Trueba reports directly to Machado, who is MGA Mex's Director of Marketing. Machado, in turn, reports to Kuemmerle.

### 2.   Procedural History

On January 10, 2008, Mattel served deposition notices pursuant to Federal Rule of Civil Procedure 30(b)(1) setting the depositions of Vargas and Trueba for January 24, 2008 in Los Angeles.  In response, MGA and its affiliated parties to this action (the "MGA Defendants") asserted that neither of the Witnesses is a "managing agent," and therefore Mattel must subpoena the Witnesses.  On January 28, 2008, Mattel filed an *ex parte* application to compel the depositions of

---

[22] Vargas was the Senior Marketing Manager, Boys Division, for Mattel Mexico and Trueba was the Senior Marketing Manager, Girls Division, for Mattel Mexico.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 26 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____ 6
PAGE _____ 49

1   the Witnesses (as well as others). Mattel's application was stayed with other Phase

2   2 discovery and then denied without prejudice on September 23, 2008. After the

3   Court lifted the stay on Phase 2 discovery on January 6, 2009, Mattel noticed the

4   depositions of Vargas on January 27, 2009 and of Trueba on January 28, 2009.

5   Once again, the MGA Defendants objected on the ground that neither of the

6   Witnesses is an officer, director or managing agent of MGA Mex. After the parties

7   were unable to resolve their dispute, Mattel filed the Deposition Motion.

8         **B.     Discussion**

9         Mattel argues that (1) the Witnesses are directors and/or managing agents of

10   MGA Mex, and (2) that MGA Mex must produce them for deposition in Los

11   Angeles. Mattel also seeks sanctions on the ground that the MGA Defendants are

12   acting in bad faith and without justification to frustrate Mattel's legitimate

13   discovery rights. In response, the MGA Defendants argue that (1) the Witnesses

14   are merely mid-level employees who cannot be deemed to act for MGA Mex, and

15   (2) even if the Witnesses could be deposed pursuant to Federal Rule of Civil

16   Procedure 30(b) ("Rule 30(b)"), the depositions must be conducted in Mexico. The

17   MGA Defendants seek sanctions against Mattel, contending that Mattel failed to

18   adequately meet and confer with one of the attorneys for MGA Mex, Amman Khan

19   ("Khan") and then served a redacted version of the Deposition Motion on a

20   different attorney for the MGA Defendants, Patricia Glaser ("Glaser") while she

21   was out of town.[23] According to MGA Mex, Mattel only served a complete,

22   unredacted copy of the Deposition Motion on counsel for the MGA Defendants two

23   days before the deadline for the Opposition.

24         **1.     Legal Standard**

25         If a corporation is a party to an action, any other party may take the

26   deposition of that corporation by identifying a specific officer, director, or

27

28   ---
[23] Both Khan and Glaser are partners at Glaser Weil, Phase 2 attorneys of record for the MGA Defendants, including MGA Mex.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____ **6** _____

- 27 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

PAGE _____ **50** _____

1    managing agent to be deposed and noticing that person's deposition under Rule

2    30(b)(1). Notice alone is enough to compel the managing agent to attend the

3    deposition. (*JSC Foreign Econ. Ass'n Technostroyexport v. International Dev. &*

4    *Trade Services, Inc.*, 220 F.R.D. 235, 237 (S.D.N.Y. 2004)). For purposes of

5    compelling a corporate officer's deposition, courts do not recognize a distinction

6    between an "apex" official or director and other high corporate officials. (*Resort*

7    *Properties of America v. El-Ad Properties N.Y. LLC*, 2008 WL 2741131 at *2 (D.

8    Nev. July, 10 2008) citing Fed. R. Civ. Proc. 37(d) advisory committee's notes

9    ["There is slight warrant for the present distinction between officers and managing

10   agents on the one hand and directors on the other."]).

11          The case law provides somewhat ambiguous guidance with respect to the

12   burden of proof for demonstrating managing agent status. Generally, the burden is

13   on the discovering party to establish the status of the witness. (See *Sugarhill*

14   *Records Ltd. v. Motown Record Corp.*, 105 F.R.D. 166, 170 (S.D.N.Y. 1985);

15   *Proseus v. Anchor Line, Ltd.*, 26 F.R.D. 165, 167 (S.D.N.Y.1960)). At the same

16   time, however (and as Mattel points out in its papers), courts resolve doubts in

17   favor of the examining party, at least during the discovery phase. (See *Sugarhill*,

18   105 F.R.D. at 171; *Tomingas v. Douglas Aircraft Co.*, 45 F.R.D. 94, 97

19   (S.D.N.Y.1968)). "Thus, it appears that the examining party has the burden of

20   providing enough evidence to show that it is at least a close question whether the

21   proposed deponent is a managing agent." (*United States of America v. Afram Lines*

22   *(USA) Ltd.*, 159 F.R.D. 408, 413 (S.D.N.Y. 1994)).

23          The identification of a managing agent in any given case is fact-sensitive.

24   "[B]ecause of the vast variety of factual circumstances to which the concept must

25   be applied, the standard . . . remains a functional one to be determined largely on a

26   case-by-case basis." (*Founding Church of Scientology of Washington, D.C., Inc. v.*

27   *Webster*, 802 F.2d 1448, 1452 (D.C.Cir. 1986) (citation omitted)). "Thus, 'the

28   question of whether a particular person is a 'managing agent' is to be answered

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 28 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT        6

PAGE        51

1    pragmatically on an ad hoc basis . . . .'" (*Afram Lines*, 159 F.R.D. at 413 quoting 8

2    C. Wright & A. Miller, *Federal Practice and Procedure* § 2103, at 376 (1970) and

3    citing 4A *Moore's Federal Practice* ¶ 30.51, at 30-47 to 30-48 (1994)).  Whether a

4    proposed deponent falls into a particular category of employee or agent is therefore

5    less relevant than the individual's specific functions and authority.

6        As both parties acknowledge, federal courts have formulated a set of factors

7    to assist in determining whether person is a party's "managing agent," and therefore

8    subject to deposition under Rule 30(b)(1):

9        1)    whether the individual is invested with general powers allowing him to

10             exercise judgment and discretion in corporate matters;

11       2)    whether the individual can be relied upon to give testimony, at his

12             employer's request, in response to the demands of the examining

13             party;

14       3)    whether any person or persons are employed by the corporate

15             employer in positions of higher authority than the individual

16             designated in the area regarding which the information is sought by the

17             examination;

18       4)    the general responsibilities of the individual "respecting the matters

19             involved in the litigation;" and

20       5)    whether the individual can be expected to identify with the interests of

21             the corporation.

22   (*Sugarhill*, 105 F.R.D. at 170).

23       According to Mattel, the most important of these factors is "whether the

24   witness can be expected to identify with the employer corporation's interest as

25   opposed to an adversary's." (Deposition Motion, p. 12, quoting *In re Honda*

26   *American Motor Co.*, 168 F.R.D. 535, 541 (D. Md. 1996)).  Applying that test,

27   Mattel argues that the Witnesses are presumptively loyal to MGA Mex, given that

28   they helped to found the company and part of the "tight" group that manages its

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 29 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___6___
___52___

PAGE _____

1    day-to-day operations. (Deposition Motion, p. 13). Accordingly (Mattel reasons),

2    the Witnesses are managing agents of MGA Mex.

3        Mattel's emphasis on the employee's loyalty as the main test for determining

4    his or her status is unwarranted. Federal courts have effectively challenged the

5    notion that the employee's loyalty to the employer is entitled to special weight.

6    (*Libbey Glass, Inc. v. Oneida, Ltd.*, 197 F.R.D. 342, 350 (N.D.Oh. 1999)). As the

7    *Libbey Glass* court explained, that view "overstates the role of the deponent's . . .

8    apparent fidelity to the principal's interests, because it would apply to many agents

9    and employees who do not function with the degree of authority over a company's

10   affairs connoted by the term 'managing' agent." (*Id.*, at 350). Moreover, the

11   *Libbey Glass* court demonstrated that the approach followed in *Honda* is based on a

12   rationale that no longer applies. Specifically, the court traced the rule to *Newark*

13   *Ins. Co. v. Sartain*, 20 F.R.D. 583, 586 (N.D. Cal. 1957), which sets forth the

14   analytical underpinning of the "loyalty" factor.

15       In that case, the court was concerned with the evidentiary problem facing a

16   litigant seeking to obtain and use the testimony of an adversary corporation's most

17   senior employees. Under the then-existing rule, a litigant could not call such an

18   employee to testify at trial in his or her individual capacity without waiving the

19   right to impeach the witness. This presented a problem for the party seeking to

20   elicit the testimony, because, as the court reasoned, a corporation's ranking

21   employee having possession of pertinent information will always "give his

22   testimony in the light most favorable to the principal," but would, at the same time,

23   be immune from impeachment at trial. (*Id.*) On that basis, the court concluded that

24   an adversary should be able to obtain such testimony from the employee in his or

25   her capacity as the representative of the corporation (who could, therefore, be

26   subject to impeachment).

27       However, as the court in *Libbey Glass* noted, the concerns expressed in

28   *Newark Ins.* were rendered moot by the enactment of Federal Rule of Evidence 607

EXHIBIT ____6____

53

PAGE ____

1  ("Rule 607").[24]  Under that rule, a party may take the deposition of a senior

2  employee of an adversary corporation in his individual capacity and may

3  nonetheless still seek to impeach that testimony.  In other words, characterizing a

4  particular witness as a "managing agent" no longer provides any substantive

5  advantage to the deposing party, only procedural advantages (i.e., the ability to take

6  the deposition without a subpoena).

7        Having discarded the notion that the witness' loyalty to his employer is the

8  main factor to be considered in ascertaining his status as a managing agent, the

9  court in *Libbey Glass* instead focused on "the nature of the deponent's activities on

10 behalf of the corporation, rather than his loyalty to its interests." (*Libbey Glass*,

11 197 F.R.D. at 350).  The court reasoned:

12        For the purpose of determining whether an individual is a

13        'managing agent' within the meaning of the discovery rules, the

14        alter ego theory provides a useful analogy.  As in the arena of

15        corporate liability, the focus begins with the character of the

16        individual's control.  In addition, we can profitably examine both

17        the degree to which the interests of the individual and the

18        corporation converge, and how helpful the individual will be in

19        fact finding on the matter at issue, in comparison to others

20        associated with the corporation.  As in all matters appertaining to

21        discovery, it is the ends of justice that are to be served.

22 (*Id.*, quoting *Founding Church of Scientology of Washington, D.C., Inc. v. Webster*,

23 802 F.2d 1448, 1453 (D.C. Cir. 1986)).  The Discovery Master finds that the

24 analysis set forth in *Libbey Glass* and the authorities cited therein to be the most

25 practical and well-reasoned test for determining whether the Witnesses are

26 managing agents of MGA Mex, and applies that test below.

27

28 [24] Rule 607 provides "The credibility of a witness may be attacked by any party, including the party calling the witness."

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT      6

54

PAGE

1   **2.   Analysis Of The Witnesses' Job Functions And Managerial**
2   **Authority**
3   **a.   The Nature Of The Witnesses' Activities On Behalf**
4   **Of, And Control Over, MGA Mex.**

5   In accordance with the approach outlined in *Libbey Glass*, the Discovery

6   Master begins his analysis by examining the Witnesses' activities on behalf of, and

7   managerial control over the operations of, MGA Mex.

8   Mattel relies heavily on documentary evidence regarding the role of

9   Machado and the Witnesses in establishing MGA Mex in 2004, but the Discovery

10   Master finds that this evidence, which is limited to events that occurred five years

11   ago, to be only minimally probative of the *current scope* of the Witnesses' activities

12   and authority.[25]   The only evidence presented by the parties concerning the

13   Witnesses' current role in the company is the testimony of Kuemmerle.   That

14   testimony derives from three sources:   (1) her declaration filed on February 27,

15   2007 ("First Kuemmerle Decl.") (attached as Exh. 12 to Zeller Decl.); (2) her

16   deposition testimony on January 28, 2008 ("Kuemmerle Tr.") (attached as Exh. 9 to

17   Zeller Decl.); and (3) her declaration filed on February 12, 2009 in support of the

18   Opposition to the Deposition Motion ("Second Kuemmerle Decl.").

19   The relevant portion of Kuemmerle's first declaration is Paragraph 6, which

20   states in its entirety:

21   All of the day to day operations of MGA Mexico are managed

22   locally in Mexico.   For example, MGA Mexico's Finance

23   Director, Sales Director and Marketing Director are all based in

24   Mexico and all of the marketing and finance functions are

25   handled in Mexico.

26   (First Kuemmerle Decl., ¶ 6).

27

28   ---
[25] As counsel for the MGA Defendants noted at oral argument, the critical question is "when do we look at this question as to whether these [Witnesses] are managing agents?   And the answer, of course, is now." (Tr., 21:14-16).

EXHIBIT _____ 6

PAGE _____ 55

1      There are two main excerpts from Kuemmerle's deposition transcript cited

2   by Mattel in support of its Deposition Motion. In the first, Kuemmerle testifies that

3   pricing for the products sold by MGA Mex is set by means of a "combined team

4   effort" among a group that counsel refers to as "the four of you." (Kuemmerle Tr.,

5   p. 91:8 – 14, [Exh. 9 to Zeller Decl., p. 154]).[26] Kuemmerle testifies that these

6   individuals (which apparently include the Witnesses) continue to set the pricing of

7   MGA Mex products in the same manner to this day. (Id.).

8      Second, Mattel relies on a passage of Kuemmerle's deposition in which she

9   testified that, at the time the Witnesses joined MGA Mex in 2004, "we were so

10   tight of a group, not enough employees, that we were all forced to multitask."

11   (Kuemmerle Tr., p. 135:24 - 136:1, [Exh. 9 to Zeller Decl., pp. 169 - 170]).

12      In her second declaration, Kuemmerle testifies regarding the chain of

13   command at MGA Mex. Specifically, she testifies that Vargas reports directly to

14   her and that Trueba reports to Machado, who in turn reports to Kuemmerle.

15   (Second Kuemmerle Decl., ¶¶ 3 – 4). Kuemmerle is entirely silent regarding the

16   functions performed by, or general authority exercised by, either of the Witnesses.

17   Instead, she simply states that Ms. Trueba "does not manage or supervise anyone at

18   all at MGA De Mexico." (Id., ¶ 4). Kuemmerle does not state whether Vargas

19   supervises anyone. (Id., ¶ 3).

20      In the absence of any evidence directly addressing the Witnesses' current

21   role in MGA Mex, Mattel asks the Discovery Master to infer that the Witnesses are

22   managing agents based on the Witnesses' job titles and past participation in the

23   "tight group" that made operational decisions for the fledgling company several

24   years ago. However, such an inference is not supported by the scant evidence

25   before the Discovery Master. For instance, the Discovery Master cannot attribute

26

---

27   [26] None of the prior passages of the deposition transcript provided by Mattel reflect the individuals to whom counsel is referring. However, later, counsel asks Kuemmerle a question beginning with "When you and Mr. Machado and

28   Mr. Vargas and Ms. Trueba were determining the prices for MGA products . . ." (Kuemmerle Tr., p. 93:2 – 6 [Exh. 9 to Zeller Decl., p. 156]).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 33 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT    6

PAGE    56

1  such status to Trueba, who supervises no employees, and whose scope of

2  responsibility is circumscribed to public relations.[27]

3      Likewise, although Mattel emphasizes that Vargas supervises approximately

4  8 or 9 MGA Mex employees (Kuemmerle Tr., p. 97:5 – 11, [Exh. 9 to Zeller Decl.,

5  p. 159]), that fact, alone, is ambiguous at best, because Mattel does not provide the

6  necessary context by identifying the number of total MGA Mex employees. If, for

7  instance, MGA Mex employs 100 persons, then Vargas' oversight of 8 or 9

8  employees would tend to indicate he does not have such authority.[28] Because the

9  necessary contextual information is not provided, the Discovery Master is unable to

10  assess the significance (if any) of the evidence that is provided regarding Vargas'

11  current role at MGA Mex.

12      In sum, the evidence currently before the Discovery Master is insufficient to

13  allow him to determine that the Witnesses' functions on behalf of, and control over,

14  MGA Mex is such that they can be deemed its "managing agents."

15              **b.      Other Factors**

16      Since there is virtually no evidence addressing the critical factor governing

17  whether the Witnesses are managing agents of their employer (see Section II.B.2.a,

18  above), the five factors enumerated by the *Sugarhill* Court have marginal relevance,

19  at best. Even if all those factors were satisfied – which they are not – the record

20  would still be insufficient to enforce the deposition notices at issue here. However,

21  in order to create a complete record and to address the arguments made by the

22  parties, the Discovery Master nonetheless briefly discusses those factors below.

23      As set forth above, the first factor identified by the *Sugarhill* Court bearing

[27] Mattel also argues that the Discovery Master should infer that Ms. Trueba is a managing agent because she submitted a declaration on behalf of MGA Mex two years ago (April 11, 2007) in connection with its motion to dismiss for lack of personal jurisdiction in which she identified her job title as "Director of Marketing." (Deposition Motion, p. 4 fn. 4 and Exh. A to Suppl. Zeller Decl.).

[28] At oral argument, Mattel's counsel asserted that MGA Mex presently employs 34 or 35 individuals, (Tr., pp. 15 – 16), but there is no admissible evidence before the Discovery Master to support such an assertion. Further, such a contention (if true) merely demonstrates that Vargas supervises, at most, approximately 25 percent of the employees at MGA Mex, and is insufficient to show that he can be deemed its "managing agent."

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 34 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____ 6

PAGE _____ 57

1   on the issue of whether an employee is a managing agent is whether he or she "is

2   invested with *general* powers allowing him to exercise judgment and discretion in

3   corporate matters." (*Sugarhill*, 105 F.R.D. at 170 [emphasis added]). Here, the

4   current scope of Trueba's authority appears to be the opposite of "general:" she is

5   responsible for handling media and public relations. (Kuemmerle Tr., p. 97:14 – 15

6   attached as Exh. 9 to Kahn Decl.). Likewise, Vargas' authority, although somewhat

7   broader than that of Trueba, appears to be confined primarily to sales. (Second

8   Kuemmerle Decl., ¶ 3). There is no evidence that either of the Witnesses has any

9   authority over such things as internal administrative functions, budgeting, contracts

10  with vendors, and various other aspects of running a business.

11        The second *Sugarhill* factor (whether the individual can be relied upon to

12  give testimony at the employer's request) is satisfied, since the Witnesses are

13  current employees of MGA Mex who will presumably cooperate in their

14  employer's defense of Mattel's counterclaims by providing testimony at a

15  deposition.

16        Turning to the third *Sugarhill* factor (whether there are other MGA Mex

17  employees in positions of higher authority than the Witnesses in the area regarding

18  which the information is sought), the Discovery Master finds that the undisputed

19  testimony of Kuemmerle demonstrates that there are such MGA Mex employees:

20  Kuemmerle supervises Vargas and (through Machado) Trueba. (Second

21  Kuemmerle Decl., ¶¶ 3 and 4). Accordingly, this factor weighs against finding that

22  the Witnesses are "managing agents."

23        With respect to fourth factor (the general responsibilities of the Witnesses

24  respecting the matters involved in the litigation), Mattel's papers demonstrate that

25  the Witnesses do oversee aspects of MGA Mex which are directly addressed by

26  Mattel's Phase 2 counterclaims, namely sales and public relations (which, Mattel

27  contends, MGA Mex conducts using stolen Mattel trade secrets). (Deposition

28  Motion, pp. 4 – 7). Accordingly, this factor weighs in favor of deeming the

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 35 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____6_____

PAGE _____58_____

1   Witnesses to be managing agents.

2       The last factor is the "loyalty" inquiry discussed above, namely whether the
3   Witnesses can be expected to identify with the interests of MGA Mex. Because
4   they are being subjected to investigation in Mexico, have their own lawyers and the
5   MGA Defendants may take the position that if any Mattel documents were taken,
6   the Witnesses did it on their own, Vargas and Trueba's interests do not necessarily
7   align with the MGA Defendants in this matter. It is unclear on this record whether
8   this factor weighs in favor of or against deeming the Witnesses to be managing
9   agents.

10   **C.**   **Summary Of The Discovery Master's Findings In Connection**
11         **With The Deposition Motion**

12       At this stage, Mattel has not met its initial burden to demonstrate that the
13   Witnesses are managing agents of MGA Mex. The presumption in favor of the
14   party seeking discovery only applies (as Mattel itself acknowledges) in *close* cases.
15   (*Honda*, 168 F.R.D. at 540). Given the current state of the evidence presented, this
16   is not such a case.[29]

17       Nevertheless, it is clear to the Discovery Master that the Witnesses have
18   information relating to several Phase 2 issues and that Mattel is entitled to take their
19   depositions.[30] Accordingly, Mattel may promptly prepare letters rogatory and
20   submit them to the Discovery Master, who will see that the letters rogatory are
21   expeditiously issued by the Court.

22   **D.**   **Sanctions**

23       **1.**   **Mattel's Request For Sanctions**

24       Having found that the MGA Defendants have articulated a meritorious legal

---

25   [29] In light of the Discovery Master's finding that the Witnesses are not managing agents of MGA Mex, it is
26   unnecessary for him to reach the question of where the depositions may be taken.

27   [30] The Discovery Master would not hesitate to enforce subpoenas propounded on the Witnesses if they resided in the
      United States and were being deposed in their individual capacities. However, since they are foreign nationals who
28   are not managing agents of MGA Mex (at least on the evidence presented), the Discovery Master does not have
      authority to compel the depositions under Rule 30(b)(1).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 36 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____ b _____

PAGE _____ 59 _____

1   and factual basis for their objections to the subject deposition notices, the Discovery

2   Master concludes that the refusal of the MGA Defendants to produce the Witnesses

3   was justified. Accordingly, Mattel's request for sanctions is **DENIED**.

4          **2.   The MGA Defendants' Request For Sanctions**

5        The MGA Defendants request an award of sanctions against Mattel for

6   conduct related to Mattel's service of the Deposition Motion. First, the MGA

7   Defendants contend that Mattel should have served the Deposition Motion on

8   Amman A. Kahn ("Kahn"), the main attorney at Glaser Weil with whom Mattel's

9   counsel had been communicating regarding the subject depositions. The MGA

10   Defendants complain that, instead of doing so, Mattel served the Deposition Motion

11   on Kahn's colleague, Glaser, while the latter was out of town. However, the MGA

12   Defendants do not explain why other attorneys in their office who were assigned to

13   the matter were not notified of the delivery of the Deposition Motion given Ms.

14   Glaser's absence. Further, Mattel has submitted the declaration of its counsel,

15   Michael T. Zeller ("Zeller") attaching a proof of service reflecting that Mattel

16   served the Deposition Motion on all three law firms representing the MGA

17   Defendants at the same time (February 6, 2009) that the motion was filed. (See

18   Suppl. Zeller Decl., Exh. E).

19        Second, the MGA Defendants argue that Mattel only served a redacted

20   version of the Deposition Motion on them at some later point, leaving them only

21   two days to draft and file opposing papers, and refused Kahn's request for a

22   reasonable extension of time. (Kahn Decl., ¶¶ 3 - 4). However, the Kahn Decl. is

23   vague regarding the date and manner in which Mattel is alleged to have belatedly

24   served the unredacted version of the Deposition Motion, (*id.*), and so the Discovery

25   Master is unable to ascertain whether Kahn's belated receipt of the motion was

26   caused by some conduct of Mattel, or instead, caused by internal delays within

27   Glaser Weil in routing the papers to the appropriate attorney.

28        Accordingly, the MGA Defendants' request for sanctions is **DENIED**.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 37 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___6___

60

PAGE _____

## III.   DISPOSITION

A.   Mattel's Written Discovery Motion is **DENIED in part** and **GRANTED in part**, as follows:

1.   Document Request Nos. 207, 208 and 269 directed to Larian:  The Motion is **GRANTED**.  All non-privileged documents, responsive to these document requests shall be produced by Larian within 30 days of the original Order No. 11, subject to any applicable confidentiality designations available under the Protective Order.

2.   Document Request Nos. 4 – 37, 40, 41, 43 (erroneously numbered in Mattel's Separate Statement as request number 42), 44 (erroneously numbered in Mattel's Separate Statement as request number 43), 45 (erroneously numbered in Mattel's Separate Statement as request number 44), and 46 (erroneously numbered in Mattel's Separate Statement as request number 45) directed to MGA:  The Motion is **GRANTED**.  All non-privileged documents, responsive to these document requests shall be produced by MGA within 30 days of the original Order No. 11, subject to any applicable confidentiality designations available under the Protective Order.

3.   Interrogatory No. 45 directed to MGA:  The Motion is **GRANTED**.  MGA's response to this interrogatory shall be served within 30 days of the original Order No. 11, subject to any applicable confidentiality designations available under the Protective Order.

4.   Interrogatory Nos. 56 – 63 directed to MGA and Larian:

a.   The Motion is **GRANTED** with respect to Interrogatory Nos. 56 and 57.

b.   Regarding Interrogatory Nos. 58 – 63, the Motion is **GRANTED** subject to the following limitations:  The Discovery Master orders the MGA Parties to identify all facts, documents or witnesses that they currently intend to rely on at summary judgment or trial to demonstrate (i) they did not obtain any

EXHIBIT _____ 6

PAGE _____ 61

1   MATTEL DOCUMENTS through improper means (i.e., Interrogatory No. 58),

2   (ii) that the information in the MATTEL documents did not derive independent

3   economic value (i.e., Interrogatory No. 59), (iii) any information in the MATTEL

4   DOCUMENTS was known to the public, (i.e., Interrogatory No. 60), (iv) the MGA

5   Parties independently developed, or did not otherwise use or disclose, any

6   information in the MATTEL DOCUMENTS (i.e., Interrogatory No. 61), (v) that

7   the MGA Parties have not benefited by their use of the information in the MATTEL

8   DOCUMENTS nor harmed Mattel (Interrogatory No. 62), and (vi) the MGA

9   Parties had or have a right to copy, possess, use or disclose any MATTEL

10  DOCUMENT (Interrogatory No. 63).

11          c.      The MGA Parties responses to interrogatories numbered

12  56 – 63 shall be served within 30 days of the original Order No. 11, subject to any

13  applicable confidentiality designations available under the Protective Order.

14          5.      Interrogatory No. 67 directed to MGA and Larian:  The Motion

15  is **DENIED**.

16          6.      Regarding Interrogatory Nos. 68 and 69 directed to MGA and

17  Larian, the Motion is **GRANTED** subject to the following limitations:  The MGA

18  Parties are ordered to identify fully and separately each and every payment of

19  money or other item of value that they have made or offered to pay to or on behalf

20  of any former employee of Mattel since January 1, 1998, with the definition of

21  former Mattel employees re-defined as "all individuals that the MGA Parties are

22  aware of that worked for Mattel and who received any payment (excluding ordinary

23  salary and benefits paid to such person while an MGA employee) from the MGA

24  Parties."  The MGA Parties responses to these interrogatories shall be served within

25  30 days of the original Order No. 11, subject to any applicable confidentiality

26  designations available under the Protective Order.

27      **B.**    Mattel's Deposition Motion:

28          1.      Mattel's Deposition Motion is **DENIED**.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 39 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____ 6

PAGE _____ 62

1    2.  Mattel's request for sanctions is **DENIED**.

2    3.  The MGA Defendants' request for sanctions is **DENIED**.

3

4 Dated: March 31, 2009

5

6           By:  /s/ Robert C. O'Brien

                 ROBERT C. O'BRIEN

7                 Discovery Master

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 40 -    AMENDED ORDER NO. 11
        [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____ 6 _____

PAGE _____ 63 _____

# EXHIBIT 7

1   Robert C. O'Brien (SBN 154372)
    ARENT FOX LLP
2   555 West Fifth Street, 48th Floor
    Los Angeles, CA  90013-1065
3   Telephone:  213.629.7400
    Facsimile:   213.629.7401
4   obrien.robert@arentfox.com

5   Discovery Master

6

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10                          EASTERN DIVISION

11

12   CARTER BRYANT, an individual,        Case No.  CV 04-09049 SGL (RNBx)

13                    Plaintiff,

14            v.                          Consolidated with
                                         Case No. CV 04-09059
15   MATTEL, INC., a Delaware            Case No. CV 05-2727
     corporation,
16                                       **PHASE 2 DISCOVERY MATTER**

17                    Defendant.         **ORDER NO. 14, REGARDING:**

18                                       *EX PARTE* APPLICATION OF
                                         **MATTEL, INC. FOR AN ORDER**
19                                       **FOR PRESERVATION OF**
                                         **DOCUMENTS**

20   CONSOLIDATED WITH
     MATTEL, INC. v. BRYANT and
21   MGA ENTERTAINMENT, INC. v.
     MATTEL, INC.
22

23

24

25

26

27

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES
                                                        ORDER NO. 14
                                         [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT  7

PAGE  64

1    This Order sets forth the Discovery Master's ruling on the *ex parte*

2 application of Mattel, Inc. ("Mattel") filed on or about April 3, 2009 (the

3 "Application") [Docket Number 5133].

4    The Discovery Master determines that it is not necessary to conduct a hearing

5 prior to issuing his ruling, and notes that the interested parties have provided

6 various written submissions, including the Application and related papers, multiple

7 letters and e-mails. Having considered all of the submitted papers, the Discovery

8 Master rules as follows.

9    **I.    RELIEF SOUGHT BY MATTEL**

10    In the Application, Mattel seeks an order requiring that Lexington Financial

11 Limited ("Lexington") "preserve documents sought by Mattel's subpoenas until

12 further order of the Court." (Application, p. 2). While it has not issued or effected

13 service of any subpoena on Lexington,[1] Mattel argues that a preservation order is

14 necessary and that the Discovery Master is authorized to issue such a ruling.

15 Specifically, Mattel contends that (1) there is a "genuine threat that documents will

16 be destroyed or lost" by Lexington, (*id.*, p. 7), (2) the destruction of any documents

17 would cause Mattel irreparable harm, (*id.*, p. 10), (3) Lexington is "capable of

18 maintaining its own financial and corporate records," (*id.*, p. 11), and (4) the

19 Discovery Master may issue an order requiring the preservation of documents

20 because the Court has personal jurisdiction over Lexington, (*id.*, pp 11 – 19).

21    **II.    LEXINGTON'S RESPONSE**

22    In its written communications requesting that the Discovery Master

23 summarily deny the Application or alternatively that it be given until April 15, 2009

24 to file a written opposition, Lexington asserts that the Application "fails at every

25 level, procedurally and substantively . . ." (April 3, 2009 letter from Todd

26

27  [1] *See* Application, p. 1 of the notice section [stating that to date Lexington "has evaded service of Mattel's subpoena"]; *see also* Application, p. 1 [noting that Lexington has not "accept[ed] service of Mattel's subpoena"] and

28  p. 11 [stating that "Mattel's ultimate ability to obtain . . . documents [from Lexington] will depend upon proper service of a subpoena"].

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 1 -                                              ORDER NO. 14
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___7___
                65
PAGE _____

1    Gordinier to Robert C. O'Brien, p. 1). Initially, Lexington argues that Mattel fails

2    to "satisfy the requirements for *ex parte* relief." (*Id.*, p. 2; *see also* April 6, 2009

3    letter from Peter Villar to Robert C. O'Brien, p. 1 and 2). Lexington next argues

4    that Mattel "is not subject to the jurisdiction of this Court." (April 3, 2009 letter

5    from Todd Gordinier to Robert C. O'Brien, p. 1). Finally, Lexington argues that

6    "unless and until [Mattel] issues and serves a subpoena pursuant to the governing

7    United States and international laws and treaties, this Court has no . . . authority to

8    compel Lexington to do anything." (*Id.*, p. 2).

9    **III.  FAILURE TO SATISFY THE DISCOVERY MASTER ORDER'S**

10           **GOOD CAUSE REQUIREMENT**

11         Under the procedures set forth in the Court's order appointing a discovery

12    master dated December 6, 2006 ("Discovery Master Order"), Mattel must

13    demonstrate that "good cause" exists for hearing the Application "on shortened

14    time" and that it will "be prejudiced absent prompt resolution" of the issue.

15    (Discovery Master Order, pp. 4 – 5). This standard is not satisfied here.

16         In the introductory section of its Application preceding the Memorandum of

17    Points and Authorities, Mattel states that "good cause exists to seek . . . relief on an

18    ex parte basis because, absent, a preservation order, relevant evidence could be

19    spoliated before a regularly noticed motion could be heard." (Application, p. 2 of

20    the notice section [underline omitted]). That is the extent of Mattel's attempt to

21    satisfy its burden to demonstrate good cause. The Memorandum of Points and

22    Authorities does not discuss what specific evidence is in danger of being destroyed

23    or how that evidence is relevant to any subpoena that has been served on Lexington.

24    Indeed, the sole basis for the Application appears to be that unspecified classes of

25    documents might potentially be destroyed because Lexington will not voluntarily

26    agree to be bound by the Discovery Master's Order No. 10.

27         However, the fact that a non-party who has not yet been served with a

28    subpoena will not agree to be bound by an order involving other entities (who have

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 2 -

ORDER NO. 14
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT    7

PAGE    66

1   been served with subpoenas) is insufficient to establish that there is a "genuine

2   threat" of documents being destroyed, especially when such a promise could be

3   construed as an admission that Lexington possesses documents that relate to this

4   case (which Lexington may dispute). Nor is it possible to ascertain what

5   documents allegedly in danger of being destroyed are relevant to this case in the

6   absence of a subpoena having been served on Lexington and the scope of the

7   document requests set forth.

8        For all of these reasons, Mattel has not demonstrated — at least on the record

9   presented to the Discovery Master — that *ex parte* relief is warranted   (*Cf. Mission*

10  *Power Engineering Co. v. Continental Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal.

11  1995)).

12  **IV.   MATTEL HAS NOT DEMONSTRATED THAT THE COURT HAS**

13       **PERSONAL JURISDICTION OVER LEXINGTON**

14       **A.   Specific Jurisdiction Arising Out Of Lexington's Forum-Related**

15            **Contacts**

16       In its Application, Mattel argues that the Court has specific jurisdiction over

17  Lexington "because: (1) Lexington both purposefully availed itself of the privilege

18  of conducting activities in the forum and, purposefully directed its activities at the

19  forum state, either of which is sufficient; (2) the discovery at issue relates to

20  Lexington's forum-related activities; and (3) the exercise of jurisdiction is not

21  unreasonable." (Application, p. 13). As support for this position, Mattel cites

22  several cases, including *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th

23  Cir. 1998) ("*Panavision*"). In that case, the Ninth Circuit ruled that the "purposeful

24  availment" prong of the test for determining specific jurisdiction can be met by

25  demonstrating that the non-resident defendant has "aimed" its conduct so as to

26  create an injury in the forum. (See, also, *Bancroft & Masters, Inc. v. Augusta Nat'l,*

27  *Inc.*, 223 F. 3d 1082, 1087 (9th Cir. 2000), which describes this concept in terms of

28  "express aiming" of conduct "targeted" to a plaintiff residing in the forum).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 3 -

ORDER NO. 14
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____ 1 _____

PAGE _____ 67 _____

1   A review of *Panavision* and the other cases cited by Mattel discloses that this
2 "express aiming" test applies where a court is asked to exercise jurisdiction over a
3 non-resident *defendant sued in tort or contract*. These cases do not address the
4 situation presented here, where a court is asked to exercise jurisdiction over a non-
5 resident *non-party* who is not alleged to have committed any wrong or breach and
6 from whom a party merely seeks to obtain (as-yet unserved) discovery.
7 Nevertheless, Mattel argues that the Discovery Master should rely on the express
8 aiming test applied in the aforementioned cases as a basis for (1) finding that
9 Lexington directed its activities at California, (2) exercising specific jurisdiction
10 over Lexington, and (3) issuing an order restraining Lexington from destroying
11 evidence.

12   Such a result is not warranted. In all of the cases relied upon by Mattel, the
13 party over whom jurisdiction was sought was alleged to have engaged in actionable
14 conduct which caused the plaintiff to suffer damage in the forum. (See, e.g.,
15 *Sinatra v. National Enquirer, Inc.*, 854 F.2d 1191, 1995 (9th Cir.); *Calder v. Jones*,
16 465 U.S. 783, 789 (1984)). As a result, the courts in those cases were called upon
17 to determine whether jurisdiction existed for the purpose of requiring a *defendant to
18 appear and defend its conduct* in the forum. The analysis turned on whether there
19 was a sufficient link between the defendant's bad act, on the one hand, and the
20 injury suffered in the forum state, on the other hand, such that it would be fair to
21 require the defendant to appear and litigate in the forum. (*Id.*)

22   Here, Lexington is not a defendant, is not alleged to have committed any tort
23 or breached any contractual obligation, and is not being called upon to appear and
24 defend any claim in this forum. Without such facts, the analysis undertaken in the
25 cases cited by Mattel cannot be performed, and there is neither a basis nor a reason
26 for exercising jurisdiction over Lexington. The concept of specific jurisdiction
27 presupposes that the tribunal asserting jurisdiction does so for the purpose of
28 adjudicating some actionable conduct and rendering some cognizable relief or

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 4 -

ORDER NO. 14
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT   7
   68
PAGE

1   remedy for an injury, or enforcing some process of the court (such as a validly

2   issued subpoena). In the absence of such allegations, Mattel's argument that MGA,

3   Larian and others "targeted Mattel specifically in order to, among other things,

4   conceal assets from Mattel and the Court," (Application, p. 15), is unavailing. Even

5   assuming that these allegations are true and assuming that "concealing assets" is a

6   cognizable tort, the fact remains that Mattel is not asking the Court to exercise

7   jurisdiction over Lexington in order to adjudicate any claims Mattel has asserted

8   against Lexington for such conduct. In short, the body of law cited by Mattel

9   relating to jurisdiction over non-resident defendants is inapposite to situations

10  where jurisdiction is sought over a non-party overseas entity for the purpose of

11  preserving evidence that may be the subject of future discovery.[2]

12          **B.    Lexington's Purported Consent To Jurisdiction**

13          In its Application, Mattel also argues that Lexington has waived any

14  challenge to the Court's exercise of personal jurisdiction by appearing before the

15  Court and by "threaten[ing]" judicial action against Mattel. (Application, p. 18). In

16  support of this assertion, Mattel states that counsel for Lexington (Messrs.

17  Gordinier and Villar) appeared at the March 4, 2009 hearing before the Discovery

18  Master and promised, on Lexington's behalf, that Lexington would not destroy

19  evidence.

20          As the record reflects, the hearing conducted on March 4, 2009 involved

21  subpoenas issued to non-parties Omni 808 Investors, LLC, OmniNet Capital, LLC

22  and Vision Capital, LLC. Messrs. Gordinier and Villar's appearance at that hearing

23  was expressly entered on behalf of those non-parties – not Lexington (Transcript, p.

24  4:3-8; 5:18-6:8). Accordingly, counsel's appearance cannot be deemed a general

25  appearance on behalf of Lexington.

26

27  _____
    [2] This conclusion also disposes of Mattel's contention that the other two prongs of the "purposeful availment"
    requirement have been met, since the entire requirement only applies where a court seeks to exercise jurisdiction over

28  a non-resident defendant alleged to have committed a tort or breached an obligation causing injury in the forum.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 5 -

ORDER NO. 14
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___7___

PAGE ___69___

1       With respect to Mattel's contention that Lexington's counsel made a promise

2   to preserve documents on behalf of Lexington at the March 4, 2009 hearing, the

3   following colloquy occurred between Mr. Gordinier and the Discovery Master

4   regarding Mattel's then-pending application to deem Lexington served with a

5   subpoena (the "Subpoena Application"). Because Lexington had requested an

6   extension of time to oppose the Subpoena Application, Mattel was concerned that

7   documents would be destroyed during any resulting delay that might ensue before

8   the Discovery Master could rule on the Subpoena Application:

9       MR. ZELLER: There's a preservation issue that I'm

10       concerned about . . . [M]y point is that we have a situation

11       where Lexington, which we have suspicion about, for

12       obvious reasons, considers itself under no obligation of

13       the subpoena. If they're willing to say that obviously they

14       understand that Lexington is under an obligation to

15       preserve documents *during this time period*, then Monday

16       is fine by me. *But I don't want an argument that*

17       *somehow between the time that this got teed up and*

18       *Monday something's happened that somehow their legal*

19       *obligations are different from how we view them.*

20       MR. O'BRIEN: Is that a representation you –

21       MR. GORDINIER: Exhibit A. Let me just tell you this,

22       *nothing is going to be destroyed between now and*

23       *Monday close of business.* I'm not going to concede

24       anything else with respect to what he said.

25       MR. O'BRIEN: I'm not asking – I don't want to get into

26       the issue of whether the subpoena was proper or not.

27       He's raised an issue about document preservation that he

28       believes your putative client – do you represent

EXHIBIT ___7___

PAGE ___70___

1   Lexington?

2   MR. GORDINIER:  It's a more complicated issue than

3   that.  We will address it on the papers on Monday but –

4   MR. O'BRIEN:  I will take your representation today that

5   Lexington or affiliated entities are not going to destroy

6   any documents that would have been subject to *the*

7   *subpoena* that may or may not have been served *so that*

8   *we can deal with that issue*, but there will be no document

9   destruction of any nature, and I'm going to ask you to

10   convey that to the Lexington people and let them know

11   that you've made that representation on their behalf.

12   MR. GORDINIER:  Will do.

13   (Transcript, p. 96:19 – 98:5, emphasis added).

14        As the foregoing exchange reflects, Mr. Gordinier's representation involved

15   Lexington's preservation of documents pending the Discovery Master's ruling on

16   Mattel's Subpoena Application.  The Discovery Master denied that application

17   pursuant to Order No. 8 issued on March 16, 2009.  In its Application, Mattel

18   nonetheless seeks to convert Mr. Gordinier's representation into:  (1) an ongoing,

19   obligation by Lexington to Mattel; and (2) consent to jurisdiction by the Court, at

20   least to the extent of enforcing Lexington's promise to preserve documents.

21        The record does not support such a characterization of the above-quoted

22   colloquy.  Both counsel for Mattel (Mr. Zeller) and counsel for Lexington (Mr.

23   Gordinier) indicated that Mattel's concern involved the preservation of documents

24   for the limited period until the Discovery Master could rule on the Subpoena

25   Application.  Indeed, the Discovery Master himself indicated that the issue before

26   him was the possible destruction of "documents that would have been subject to the

27   subpoena . . . so that we can deal with that issue," i.e., until the Discovery Master

28   could rule on the Subpoena Application.  (*Id.*, p. 97:25 – 98:1).  Nothing in the

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 7 -

ORDER NO. 14
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT       1

PAGE       71

1   record indicates that Mr. Gordinier intended to or did undertake any other

2   obligation; on the contrary, he expressly stated, "I'm not going to concede anything

3   else with respect to what [Mr. Zeller] said." (*Id.*, p. 97:12 – 13).

4        Accordingly, the Discovery Master declines to find, based on the record

5   before him, that Lexington undertook any ongoing obligation to preserve

6   documents after the adjudication of the Subpoena Application or that Lexington

7   submitted to the jurisdiction of the Court for purposes of allowing the Court to

8   enforce such an obligation.[3]

9        With respect to Mattel's argument that Lexington has "appeared" in this

10  litigation, the Discovery Master understands Mattel to be referencing Lexington's

11  opposition to the Subpoena Application.[4]  However, a party which successfully

12  opposes enforcement of a subpoena by establishing (as Lexington did here) that the

13  subpoena was never properly served on it does not make a general appearance

14  waiving its objections to the court's exercise of jurisdiction. (*See Estate of Yaron*

15  *Ungar v. Palestinian Authority*, 400 F.Supp.2d 541, 551-52 (S.D.N.Y.2005)).

16       Lastly, Mattel contends that Lexington submitted to the Court's jurisdiction

17  by threatening to seek sanctions against Mattel, citing a March 30, 2009 letter from

18  Mr. Gordinier to Mr. Zeller.  Setting aside for the moment the question of whether

19  threatening to seek sanctions from a court is equivalent to making a general

20  appearance and submitting to the court's jurisdiction, the alleged threat is contained

21  in the second and third paragraphs of the above-referenced letter in response to

22

23  [3] In footnote 49 of its Application, Mattel cited the following passage of the March 4, 2009 transcript as support for its claim that Lexington consented to jurisdiction:

24       MR. GORDINIER:  What documents do we have that show that either Mr.
         Larian or MGA paid money into this to purchase this debt?  I can tell you there

25       are none.  This is a ready, fire, aim situation.  The allegations that were made and
         were made publicly and can't be undone.

26  (Transcript, p. 51:3 – 8, cited in footnote 49 of the Application).  This passage does not contain any mention of Lexington or any promise purportedly made on Lexington's behalf.

27  [4] While Mattel also references Mr. Gordinier's statements and appearance before the Court on February 11, 2009 at
28  various points in its Application, the transcript reflects that Mr. Gordinier appeared on behalf of Omni 808 Investors, LLC at that hearing, not on behalf of Lexington. (Transcript of February 11, 2009 hearing, p. 3 and p. 5, ln. 19).

EXHIBIT _____1_____
             72
PAGE _____

1  Mattel's statement that it might file another *ex parte* application if Lexington and
2  another entity, Neman Bros. & Associates ("Neman"), do not agree to preserve
3  documents.  In the subject paragraphs, Mr. Gordinier, who apparently represents
4  both entities, addresses the contemplated *ex parte* application *against Neman* and
5  states that, if Mattel files such an application, "[w]e fully intend to seek sanctions if
6  you move for the requested relief."  Given the context of that statement, Mr.
7  Gordinier appears to be speaking on behalf of his client Neman.  Moreover, even if
8  Lexington had made such a threat, Mattel does not cite, and the Discovery Master is
9  not aware of, any authority supporting the proposition that such a statement,
10  unaccompanied by the filing of a pleading with the Court, constitutes a general
11  appearance.[5]

12  **V.   MATTEL'S APPLICATION ALSO FAILS BECAUSE IT HAS NOT**
13  **SERVED ANY SUBPOENA ON LEXINGTON**

14  Even assuming personal jurisdiction existed over Lexington (which is not the
15  case based on the record presented to the Discovery Master), Mattel has not cited
16  any legal authority supporting the proposition that a court has the power to issue an
17  order compelling a non-party to preserve documents covered by a subpoena that has
18  not been served.  While it may later be shown that the Court has personal
19  jurisdiction over Lexington, it does not follow that the Discovery Master is
20  authorized to order a non-party, who has not been properly brought into the case via
21  the service of a subpoena under the Federal Rules of Civil Procedure, to take any
22  affirmative steps.  If the rule were otherwise, each time Mattel (or any other party in
23  this case) considered serving a subpoena, it could request an *ex parte* order
24  compelling that non-party to preserve documents prior to the subpoena being issued
25  or served.  At a minimum, a party seeking an order that concerns a non-party must
26
27  ─────────────
28  [5] Mattel's request for permission to conduct jurisdictional discovery related to Lexington is denied by the Discovery Master at this stage because, as discussed below in Section V, Mattel has not yet served Lexington with any subpoena.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 9 -

ORDER NO. 14
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____1_____

PAGE _____73_____

1    first sufficiently connect that non-party to the pending litigation through the service

2    of a valid subpoena or other authorized method (e.g., amending its complaint).

3        Put another way, the existence of jurisdiction in the abstract does not

4    empower a tribunal to issue orders over any party unless and until the subject entity

5    or individual has been properly associated with the case in accordance with

6    established principles of due process.  Because Lexington is a non-party that has

7    admittedly not been served with a subpoena by Mattel, it has not been sufficiently

8    linked to this litigation, and the Discovery Master is not empowered to order it to

9    indefinitely preserve unspecified classes of documents because it may eventually be

10   served with a subpoena.

11   **VI.   DISPOSITION**

12       For all of the foregoing reasons, the Application is **DENIED**.

13

14   Dated:  April 9, 2009

15

16

17                                   By:   /s/ Robert C. O'Brien

18                                         ROBERT C. O'BRIEN
                                           Discovery Master
19

20

21

22

23

24

25

26

27

28

EXHIBIT ___7___

___74___

PAGE _____