QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 090378)
johnquinn@quinnemanuel.com
Michael T. Zeller (Bar No. 196417)
(michaelzeller@quinnemanuel.com)
Jon D. Corey (Bar No. 185066)
(joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09039<br>Case No. CV 05-02727<br><br>**DISCOVERY MATTER**<br><br>**SECOND SUPPLEMENTAL DECLARATION OF RANDA A.F. OSMAN IN SUPPORT OF MATTEL, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR AN ORDER: (1) REMOVING "CONFIDENTIAL" DESIGNATIONS FROM PORTIONS OF THE DEPOSITION TRANSCRIPT OF SUSANA KUEMMERLE, AND (2) ISSUING AN APOSTILLE RE THE KUEMMERLE TRANSCRIPT**<br><br>Date: TBA<br>Time: TBA<br>Place: Arent Fox LLP<br><br>**Phase 2**<br>Pre-Trial Conference: Not Set<br>Trial Date: Not Set |

00505.07209/3098472.1

SECOND SUPPL. OSMAN DEC. I.S.O. REPLY I.S.O. MOTION TO DE-DESIGNATE AND FOR APOSTILLE

1     I, Randa A.F. Osman, declare as follows:

2     1. I am a member of the bar of the State of California and a member of Quinn Emanuel Urquhart Oliver & Hedges, LLP, attorneys for Mattel, Inc. I make this declaration of personal, firsthand knowledge, and if called and sworn as a witness, I could and would testify competently thereto.

    2. A true and correct copy of relevant excerpts from Mattel's First Amended Answer In Case 05-2727 and Counterclaims, filed November 20, 2006, is attached hereto as Exhibit A.

    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    Executed on September 14, 2009, at Los Angeles, California.

/s/ Randa A.F. Osman
Randa A.F. Osman

# EXHIBIT A

COPY

LODGED

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 90378)
2    (johnquinn@quinnemanuel.com)
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
     Duane R. Lyons (Bar No. 125091)
5    (duanelyons@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
6  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
7  Facsimile: (213) 443-3100

8  Attorneys for Plaintiff Mattel, Inc.

9              UNITED STATES DISTRICT COURT

10             CENTRAL DISTRICT OF CALIFORNIA

11 MATTEL, INC., a Delaware         CASE NO. CV 04-9049 SGL (RNBx)
   corporation,
12                                  Consolidated With Case No. 04-9059 and
                  Plaintiff,        Case No. 05-2727
13
          v.                        MATTEL, INC.'S FIRST AMENDED
14                                  COMPLAINT FOR:
   MGA ENTERTAINMENT, INC., a
15 California corporation; ISAAC    1.  COPYRIGHT INFRINGEMENT;
   LARIAN, an individual; CARTER    2.  VIOLATION OF THE
16 BRYANT, an individual; MGA           RACKETEER INFLUENCED AND
   ENTERTAINMENT (HK) LIMITED,          CORRUPT ORGANIZATIONS
17 a Hong Kong Special Administrative   ACT;
   Region business entity; MGAE DE  3.  CONSPIRACY TO VIOLATE THE
18 MEXICO, S.R.L. DE C.V., a            RACKETEER INFLUENCED AND
   Mexico business entity; CARLOS       CORRUPT ORGANIZATIONS
19 GUSTAVO MACHADO GOMEZ, an            ACT;
   individual; and DOES 4 through 10, 4. MISAPPROPRIATION OF TRADE
20                                      SECRETS;
                  Defendants.       5.  BREACH OF CONTRACT;
21                                  6.  INTENTIONAL INTERFERENCE
                                        WITH CONTRACT;
22 AND CONSOLIDATED CASES          7.  BREACH OF FIDUCIARY DUTY;
                                    8.  AIDING AND ABETTING
23                                      BREACH OF FIDUCIARY DUTY;
                                    9.  BREACH OF DUTY OF
24                                      LOYALTY;
                                    10. AIDING AND ABETTING
25                                      BREACH OF DUTY OF
                                        LOYALTY;
26                                  11. CONVERSION;
                                    12. UNFAIR COMPETITION; AND
27                                  13. DECLARATORY RELIEF.

28                                  DEMAND FOR JURY TRIAL

07934/2001691.1                                              11-20
                                    EXHIBIT ___A___    FIRST AMENDED COMPLAINT
                                    PAGE ___3___

## Preliminary Statement

1. For years defendant MGA Entertainment, Inc. has engaged in a pattern of stealing and using Mattel, Inc.'s property and trade secrets. MGA's use of the stolen property and trade secrets caused and continues to cause significant harm to Mattel. MGA first stole "Bratz," a fashion doll, from Mattel, and then continued stealing Mattel's confidential and proprietary information to fuel MGA's growth.

2. Defendant Carter Bryant conceived, created and developed Bratz designs while he was employed by Mattel as a doll designer. He concealed his Bratz work from Mattel and wrongfully sold Bratz to MGA while time that he was a Mattel employee. As MGA knows, Mattel owns the Bratz designs that Bryant made. As the rightful owner of those Bratz designs, Mattel has registered copyrights for them and seeks damages arising from MGA's repeated infringement of those copyrights.

3. Emboldened by the success of its illegal conduct, MGA has repeated—and even expanded—its pattern of theft on numerous occasions. For example, in or about 2004, MGA decided to expand into Mexico. To do so, and operating from its Southern California offices, MGA hired away three key Mattel employees in Mexico, who, on their way out, stole virtually every category of Mattel's sensitive and trade secret business plans and information for the Mexican market, as well as a significant quantity of sensitive and trade secret information for Mattel's U.S. and worldwide businesses, and took them to MGA. Armed with Mattel's confidential business plans and methods, MGA claimed to have increased its market share in Mexico alone by 90% in a single year.

4. In 2005, MGA needed help in Canada. So MGA, again operating from its Southern California headquarters, hired Janine Brisbois from Mattel. At that time, Ms. Brisbois was responsible for Mattel's account with Toys 'R Us ("TRU") and Wal-Mart. MGA gave her responsibility for those same

accounts, and she took from Mattel documents containing proprietary advertising, project, sales, customer and strategy information for not only Canada, but for the United States. Eliminating any doubt that MGA then proceeded to use those stolen materials, Brisbois subsequently accessed and modified certain of those Mattel documents while employed by MGA.

5. These are not the only instances of such misconduct, which MGA orchestrated and carried out from its headquarters in this District. Defendants have engaged in an ongoing, widespread pattern of illegal acts, consisting of inducing Mattel employees to steal Mattel's confidential information or other property and take it with them to MGA to further MGA's business interests and to harm Mattel.

**Jurisdiction**

6. This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 17 U.S.C. §§ 101 *et seq.*, and 18 U.S.C. § 1964(c). This Court has supplemental jurisdiction over Mattel's state law claims pursuant to 28 U.S.C. § 1367.

**Venue**

7. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)-(d), 1391(f) and 1400(a) and 18 U.S.C. § 1965.

**Parties**

8. Mattel is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in El Segundo, California.

9. Defendant MGA Entertainment, Inc. ("MGA") is a corporation organized and existing under the laws of the State of California, with its principal place of business in Van Nuys, California. Mattel is informed and believes, and on that basis alleges, that ABC International Traders, Inc. is a predecessor corporation to MGA and that until September 16, 2002, MGA was incorporated and known as

of Bratz; and concealing the fact that Mattel was the true owner of Bratz by, among other things, filing fraudulent registrations and/or amendments to registrations with the United States Copyright Office claiming MGA as the author of Bratz as a work for hire and altering relevant dates on such documents to further obscure the true facts of when the works were created.

36. Because of Bryant's and MGA's acts of concealment and Bryant's misrepresentations to Mattel, Mattel had no reason to suspect that Bryant had worked with MGA, or assisted MGA, while he still employed by Mattel until approximately November 24, 2003, when Mattel received, through an unrelated legal action, a copy of Bryant's agreement with MGA which showed that the date of Bryant's agreement with MGA predated Bryant's departure from Mattel. It was then, as a result, that Mattel learned for the first time that Bryant had secretly aided, assisted and worked for and with MGA while employed at Mattel and in violation of his Mattel Employment Agreement. Specifically, Bryant's agreement with MGA obligated Bryant to provide product design services to MGA on a "top priority" basis. Bryant's agreement with MGA also provided that Bryant would receive royalties and other consideration for sales of products on which Bryant provided aid or assistance; that all works and services furnished by Bryant under the agreement, including those he purportedly provided while still a Mattel employee, purportedly would be considered "works for hire" of MGA; and that all intellectual property rights to preexisting works by Bryant, including Bratz designs, purportedly were assigned to MGA.

### IV. MGA STEALS MATTEL TRADE SECRETS IN MEXICO

37. On information and belief, in or about late 2003 or early 2004, MGA decided to open business operations in Mexico. Faced with the difficult task of developing an overall strategy for expanding into a market in which it had only a nominal presence and no operations, MGA elected to steal Mattel's plans, strategy and business information for the Mexican market and materials related to Mattel's

1  worldwide business strategies. As detailed below, MGA and Larian approached
2  three employees of Mattel's Mexican subsidiary ("Mattel Mexico"), enticed them to
3  steal Mattel's most sensitive business planning materials, and then hired them to
4  assist in establishing and running MGA's new Mexican subsidiary.

### A. MGA Hires Three Senior Mattel Employees in Mexico

38. Carlos Gustavo Machado Gomez ("Machado") was the Senior Marketing Manager, Boys Division, for Mattel Mexico, a position of trust and confidence. He was employed at Mattel Mexico from April 1, 1997 until April 19, 2004. His duties included short, medium and long-term marketing planning, generating product sales projections, and assisting in creation of the media plan. In his position, Machado had access to highly confidential and sensitive marketing and product development information. Machado had an employment agreement with Mattel in which he agreed to maintain the confidentiality of Mattel's protected information. Mattel's policies also required Machado to protect Mattel's proprietary information and not to disclose it to competitors.

39. Mariana Trueba Almada ("Trueba") was the Senior Marketing Manager, Girls Division, for Mattel Mexico, a position of trust and confidence. She was employed at Mattel Mexico from November 3, 1997 until April 19, 2004. Like Machado, her duties included short, medium and long-term marketing planning, generating product sales projections, and assisting in creation of the media plan. In her position, Trueba had access to highly confidential and sensitive marketing and product development information. Trueba had an employment agreement with Mattel in which she agreed to maintain the confidentiality of Mattel's protected information. Mattel's policies also required Trueba to protect Mattel's proprietary information and not to disclose it to competitors.

40. Pablo Vargas San Jose ("Vargas") was a Senior Trade Marketing Manager with Mattel Mexico, a position of trust and confidence. He was employed at Mattel Mexico from March 29, 2001 until April 19, 2004. Vargas was

1  responsible for ensuring that point-of-sale promotions were carried out, analyzing
2  the results of such promotions, negotiating promotion budgets, and generally
3  managing promotional activities. Vargas also had access to highly confidential and
4  sensitive marketing and product development information. Vargas had an
5  employment agreement with Mattel in which he agreed to maintain the
6  confidentiality of Mattel's protected information. Mattel's policies also required
7  Vargas to protect Mattel's proprietary information and not to disclose it to
8  competitors.
9        41. Beginning in late 2003 or early 2004, Machado, Trueba and
10 Vargas began planning to leave Mattel Mexico to join MGA. In connection with
11 that plan, and with the encouragement of Larian and other MGA officers operating
12 in the United States, they began accessing, copying and collecting proprietary
13 Mattel documents to take with them. On April 19, 2004, Machado, Trueba and
14 Vargas each resigned their positions with Mattel, effective immediately. They
15 stated that they had been hired by a Mattel competitor, but refused to identify that
16 competitor. In fact, they had been offered and accepted employment by MGA to
17 establish and run MGA's new operation in Mexico.
18   **B. Machado, Trueba and Vargas Stole Dozens of Confidential Trade**
19       **Secret Marketing and Sales Documents for MGA's Benefit**
20       42. Following these resignations, Mattel discovered that Machado,
21 Trueba and Vargas had been in frequent telephonic and e-mail contact with MGA
22 personnel, including Larian, for over three months prior to their resignations. The
23 primary vehicle for these communications in furtherance of their "plot" was an
24 America Online e-mail account with the address <plot04@aol.com>. On
25 information and belief, during this time, Machado, Trueba and Vargas supplied
26 Larian with certain Mattel confidential and proprietary information in order to
27 prove their value to MGA and to improve their negotiating position vis-à-vis their
28 respective employment contracts with MGA.

07934/2001691.1                                    -12-                                       FIRST AMENDED COMPLAINT

EXHIBIT A

43. In March 2004, Machado, Trueba and Vargas were making plans to travel from Mexico to Los Angeles to meet with MGA personnel in person prior to resigning their positions at Mattel. Also, by at least March 3, 2004, Machado, Trueba and Vargas were discussing with MGA personnel, including Larian, specific details regarding setting up MGA offices in Mexico City. On information and belief, prior to their resignations, Larian and others at MGA directed Machado, Trueba and Vargas to steal virtually all Mattel confidential and proprietary information that they could access and bring it with them to MGA. This was reflected in, among things, e-mail messages that Mattel had discovered after Machado, Trueba and Vargas had resigned. For example, on March 22, 2006, approximately one month before they resigned, Machado, Trueba and Vargas wrote an e-mail message from the <plot04@aol.com> e-mail account addressed to Larian, MGA's General Manager Susan Kuemmerle and another MGA officer Thomas Park. In that e-mail message, Machado, Trueba and Vargas sought to prove their value in this endeavor to MGA by writing: "Attached you will find our analysis for future discussion. We will be available during the nights of the week after 16:30 Los Angeles time . . . ." In another e-mail message, showing that the participants intentionally sought to maximize the damage to Mattel from their conduct, Kuemmerle wrote to Larian and Park: "Gustavo, Mariana and Pablo want to resign (all at the same time, and you can believe my smile!) next Wednesday."

44. Beginning on April 12, 2004, a week before his resignation and after numerous communications and meetings with Larian and other MGA personnel, Machado began transferring additional Mattel confidential and proprietary information to a portable USB storage device (also know as a "thumb drive") that he connected to his Mattel computer. On Friday, April 16, 2004, the last business day before he gave notice, Machado copied at least 70 sensitive documents to the portable USB storage device.

-13-

EXHIBIT A
PAGE 9
FIRST AMENDED COMPLAINT

45. Starting on April 12, 2004, Vargas also copied a host of confidential and proprietary materials to a portable USB storage device, including sales plans, sales projections and customer profiles.

46. On April 16, 2004, Trueba also copied Mattel confidential and proprietary information to a portable USB storage device connected to her Mattel computer.

47. With full knowledge that she was going to leave Mattel for a competitor, Trueba also took steps to increase further her access to Mattel's confidential information shortly before her resignation. For example, just four days before leaving, Trueba went out of her way to seek to attend a meeting at which Mattel personnel analyzed BARBIE programs for the United States, Canada and South America. Two days before her resignation, she contacted both a Mattel employee located in El Segundo, California and Mattel's advertising agency to request updated confidential information about advertising plans for BARBIE. On information and belief, Trueba acted at the direction of MGA and Larian and did so in order to obtain further information that would allow MGA to obtain unfair competitive advantage over Mattel.

48. Machado, Trueba and Vargas stole virtually every type of document a competitor would need to enter the Mexican market and to unlawfully compete with Mattel in Mexico, in the United States, and elsewhere. They stole global internal future line lists that detailed anticipated future products, production and shipping costs for Mattel products; daily sales data for Mattel products; customer data; sales estimates and projections; marketing projections; documents analyzing changes in sales performance from 2003 to 2004; budgets for advertising and promotional expenses; strategic research reflecting consumer responses to products in development; media plans; consumer comments regarding existing Mattel products customer discounts and terms of sale; customer inventory level data; assessments of promotional campaign success; market size historical data and

projections; marketing plans and strategies; merchandising plans; retail pricing and marketing strategies; and other similar materials.

49. The stolen data was not limited to the Mexican market. The information stolen would, and did, give MGA an unfair competitive advantage in the United States and around the world. Further, the stolen information was not located exclusively in Mexico, but included confidential and proprietary information that resided on Mattel computers in Phoenix, Arizona and El Segundo, California, and/or documents which were originally created by personnel in El Segundo. Included among these stolen documents was one of Mattel's earliest internal global line lists, which included information for BARBIE products for the upcoming year and included, for each product, the expected profit margin, advertising expenditures, expected volume and marketing strategy. On information and belief, Machado, Trueba or Vargas delivered that internal line list to Larian or another MGA officer during their negotiations with MGA.

50. MGA has used the information taken from Mattel to obtain an unfair advantage over Mattel, including in both the United States and Mexico. In fact, MGA later publicized its claim that, in 2005, it had increased its Mexican market share by 90 percent over the prior year. This increase came at the expense of Mattel, which lost market share during 2004 in Mexico and was forced to increase its advertising and promotional spending to offset further losses.

51. Machado, Trueba and Vargas attempted to conceal their widespread theft of Mattel's proprietary information. For example, Machado ran a software program on his Mattel personal computer in an attempt to erase information, including information that would reveal the addresses to which he had sent, or from which he had received, e-mail messages. On information and belief, for the same purpose Machado also damaged the hard drive of the personal computer that he used at Mattel.

EXHIBIT A

PAGE 11

-15-

FIRST AMENDED COMPLAINT

07934/2001691.1

52. On information and belief, on April 19, 2004, immediately after Machado, Trueba and Vargas simultaneously resigned, they traveled from Mexico to Los Angeles to meet with MGA personnel, including Larian, in person.

53. Mattel notified Mexican authorities about the theft of its trade secret and confidential information. On October 27, 2005, the Mexican Attorney General Office obtained a search warrant from the Mexican Federal Criminal Courts for MGA's facilities in Mexico City. In that search, the Mexican authorities found and seized from MGA's offices both electronic and paper copies of a large number of documents containing Mattel trade secrets, including those that Mattel discovered through its forensic investigations, plus many others that Mattel had not known had been stolen.

54. Based on Machado's "performance" in Mexico, Isaac Larian subsequently promoted Machado and he was transferred to MGA's main office in Van Nuys, California. On information and belief, Machado currently resides in the County of Los Angeles, California.

## V. MGA HIRES MATTEL'S SENIOR VICE PRESIDENT AND GENERAL MANAGER TO FACILITATE ITS THEFT AND USE OF MATTEL'S HIGHLY VALUABLE BUSINESS METHODS AND PRACTICES

55. On October 1, 2004, Mattel's Senior Vice President and General Manager, Ron Brawer, left Mattel and joined MGA. Tyco Toys, Inc. ("Tyco"), a predecessor to Mattel, had hired Brawer on April 22, 1996. The same day, Brawer entered into an Employee Invention & Trade Secret Agreement with Tyco. On April 9, 1997, Brawer became a Marketing Director for Mattel in Mount Laurel, New Jersey, and remained bound by his Employee Invention & Trade Secret Agreement.

EXHIBIT __A__

PAGE __12__

-16-

FIRST AMENDED COMPLAINT

1    15.  That Mattel have such other and further relief as the Court may
2   deem just and proper.

4   DATED: November 19, 2006    QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

6                               By /s/ John B Quinn
7                                  John B. Quinn
                                   Attorneys for Plaintiff
8                                  Mattel, Inc.

EXHIBIT A

PAGE 13

07934/2001691.1

-48-

FIRST AMENDED COMPLAINT

**DEMAND FOR JURY TRIAL**

Plaintiff Mattel, Inc. respectfully requests a jury trial on all issues triable thereby.

DATED: November 19, 2006

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By _John B. Quinn_
John B. Quinn
Attorneys for Plaintiff
Mattel, Inc.

EXHIBIT A
PAGE 14

-49-