1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
2   John B. Quinn (Bar No. 090378)
    johnquinn@quinnemanuel.com
    Michael T. Zeller (Bar No. 196417)
3   (michaelzeller@quinnemanuel.com)
    Jon D. Corey (Bar No. 185066)
4   (joncorey@quinnemanuel.com)
    865 South Figueroa Street, 10th Floor
5   Los Angeles, California 90017-2543
    Telephone: (213) 443-3000
6   Facsimile: (213) 443-3100

7   Attorneys for Mattel, Inc.

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                    EASTERN DIVISION

11  CARTER BRYANT, an individual,       CASE NO. CV 04-9049 SGL (RNBx)

12          Plaintiff,                  Consolidated with Case Nos. CV 04-09059
                                        and CV 05-02727
13          vs.
                                        **DISCOVERY MATTER**
14  MATTEL, INC., a Delaware            **[To Be Heard By Discovery Master**
    corporation,                        **Robert O'Brien]**
15
            Defendant.                  DECLARATION OF MICHAEL T.
16                                      ZELLER IN SUPPORT OF MATTEL,
                                        INC.'S OPPOSITION TO MGA PARTIES'
17  AND CONSOLIDATED ACTIONS            APPLICATION FOR ISSUANCE OF
                                        LETTER OF REQUEST FOR JUDICIAL
18                                      ASSISTANCE RE: DANNY K.H. YU
                                        AND BIRD & BIRD
19

20                                      Date:   TBD
21                                      Time:   TBD
                                        Place:  TBD
22
                                        **Phase 2:**
23                                      Disc. Cut-off:    December 11, 2009
                                        Pre-trial Con.:   March 1, 2010
24                                      Trial Date:       March 23, 2010

25

26

27

28

00505.07975/3100244.1

ZELLER DECLARATION ISO MATTEL'S OPPOSITION TO MGA'S APP. FOR LETTERS OF REQUEST

## DECLARATION OF MICHAEL T. ZELLER

I, Michael T. Zeller, declare as follows:

1.      I am a member of the bars of the States of California, New York and Illinois and a partner at Quinn Emanuel Urquhart Oliver & Hedges, LLP "Quinn Emanuel"), attorneys for plaintiff and counter-defendant, Mattel, Inc. ("Mattel"). I make this declaration of personal, firsthand knowledge and, if called and sworn as a witness, I could and would testify competently thereto.

2.      Mattel initiated this action by filing its original complaint against Carter Bryant on April 27, 2004. On December 7, 2004, MGA intervened as a party-defendant claiming that its rights to Bratz were at stake. On November 20, 2006, Mattel filed its first amended answer and counterclaim which included, among others, a claim against MGA for misappropriation of trade secrets. In response to Mattel's first amended answer and counterclaim, MGA asserted numerous affirmative defenses including statutes of limitations and laches.

3.      Attached hereto as Exhibit 1 is a true and correct copy of the Court's Order Regarding Mattel's Motion For Leave To Amend, dated January 12, 2006.

4.      Attached hereto as Exhibit 2 is a true and correct copy of excerpts of Mattel, Inc.'s [Corrected] Notice of Motion and Motion For Partial Summary Judgment; And Memorandum of Points And Authorities, filed March 11, 2008. MGA and Carter Bryant also moved for partial summary judgment at this time.

5.      Attached hereto as Exhibit 3 is a true and correct copy of the Court's Order Granting In Part, Denying In Part, And Deferring In Part The Parties' Motions For Partial Summary Judgment, dated April 25, 2008.

6.      Attached hereto as Exhibit 4 is a true and correct copy of the Court's Order Re Motion For Reconsideration; Order Re The Parties' Motions For Partial Summary Judgment, dated May 21, 2008.

1         7.    Attached hereto as Exhibit 5 is a true and correct copy of the

2 MGA Parties' Supplemental Declaration Of Marina V. Bogorad In Further Support

3 Of The MGA Parties Motion For Partial Summary Judgment, dated May 19, 2008.

4         8.    Attached hereto as Exhibit 6 is a true and correct copy of MGA's

5 Reply Memorandum In Further Support Of The Supplemental Declaration Of

6 Marina V. Bogorad, dated May 22, 2008.

7         9.    Attached hereto as Exhibit 7 is a true and correct copy of the

8 Response of Mattel, Inc. To Supplemental Declaration Of Martina V. Bogorad,

9 dated May 21, 2008.

10       10.    Attached hereto as Exhibit 8 is a true and correct copy of the

11 Court's Order Re Statute Of Limitations Defense, dated May 27, 2008.

12       11.    Attached hereto as Exhibit 9 is a true and correct copy of the

13 Court's Further And Final Order Re Statute Of Limitations Defense, dated June 2,

14 2008.

15       12.    Attached hereto as Exhibit 10 is a true and correct copy of the

16 Court's Final Pre-Trial Conference Order For Phase 1 Trial, dated June 7, 2008.

17       13.    Attached hereto as Exhibit 11 is a true and correct copy of the

18 Phase B Verdict Form As Given, dated August 26, 2008.

19       14.    Attached hereto as Exhibit 12 is a true and correct copy of the

20 Court's Order Finding In Favor Of Mattel As To The MGA Parties' Affirmative

21 Defenses, et al., dated December 3, 2008.

22       I declare under penalty of perjury under the laws of the United States of

23 America that the foregoing is true and correct.

24       Executed on September 14, 2009, at Los Angeles, California.

25

26                  /s/ Michael T. Zeller

                     Michael T. Zeller

27

28

# EXHIBIT 1

EXHIBIT ___1___

PAGE ___4___

*P. Send*

1
2

ENTERED
CLERK, U.S. DISTRICT COURT

JAN 12 2006

CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION        BY DEPUTY

3
4
5
6
7

FILED

8

# UNITED STATES DISTRICT COURT

9

## CENTRAL DISTRICT OF CALIFORNIA

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(D).

10  CARTER BRYANT,

11                    Plaintiff,

12

13  v.

14  MATTEL, INC.,

15                    Defendant.

16  and related actions.

17

CASE NO. CV-04-9049-SGL

(Consolidated with cases CV-04-9059 and CV-05-2727)

ORDER REGARDING MATTEL'S MOTION FOR LEAVE TO AMEND

18          This case has, increasingly, become one of the proverbial tail wagging the

19  proverbial dog.

20          Back in April, 2004, Mattel, Inc., ("Mattel") filed a complaint in Los Angeles

21  County Superior Court against its former employee and the reputed creator of the

22  BRATZ dolls, Carter Bryant.  The complaint pressed five separate state-law

23  theories relating to certain agreements Bryant signed while an employee with

24  Mattel, namely, an Employee Confidential Information and Inventions Agreement

25  ("Inventions Agreement") and a Conflict of Interest Questionnaire ("COI

26  Questionnaire").  Although couched in state law terms and ostensibly pled as a

27  simple employment action, lurking beneath the allegations in the complaint was

28  whether Bryant had either misappropriated Mattel's intellectual property or

**EXHIBIT** 1
**PAGE** 5

1   resources in creating and/or developing the BRATZ dolls or whether he continued

2   to develop his BRATZ design while still working in Mattel's employ. In either event,

3   the rights to the BRATZ dolls could become the property of Mattel, either through

4   infringement or through operation of the agreements noted above. The case was

5   later removed to this Court and was assigned the case number CV-04-9059. MGA

6   Entertainment, Inc. ("MGA"), the maker of the BRATZ doll line, then intervened "to

7   protect its rights to Bratz dolls" that were at stake in the action. Mattel, Inc. v.

8   Bryant, 446 F.3d 1011, 1012 (9th Cir. 2006); see also id. at 1013 ("Mattel argues, 'a

9   significant risk of prejudice' to MGA [exists] if the ownership of rights to intellectual

10  property, i.e., the Bratz creations, were decided in the absence of MGA").

11          In the interim, Bryant filed a declaratory judgment action in this Court,

12  seeking for the Court to declare that his BRATZ doll creations did not infringe

13  Mattel's copyright in its Toon Teens products. See Court's July 18, 2006, Order at

14  3 (noting that, although "Bryant's complaint . . . makes reference to 'other Mattel

15  products,' . . . the substance of his allegations all address the product 'Toon

16  Teens'"). The declaratory judgment action was assigned the case number CV-04-

17  9049.

18          MGA then filed an action against Mattel in this Court broadening the scope

19  of the controversy beyond that concerned with the ownership rights to the BRATZ

20  doll line. MGA's complaint asserted various Lanham Act claims and their California

21  state law equivalent arising out of Mattel's alleged "habitual and unfair tactics of

22  competition-by-intimidation and serial copycatting of MGA's products." (Compl.

23  ¶ 7). In essence, although the prior actions were concerned with ownership in the

24  rights to the BRATZ doll line, the allegations in 05-2727 concerned whether there

25  had been unlawful efforts to block the marketing of those rights in the BRATZ dolls.

26  MGA's complaint did make mention of other products that were affected by Mattel's

27  alleged predatory business practices, but by far the largest portion of its complaint

28  concerned Mattel's conduct in undermining (or seeking to undermine) MGA's rival

                                      2

EXHIBIT _____ 1
PAGE _____ 6

Case 2:04-cv-09049-DOC-RNB  Document 6680-2  Filed 09/14/09  Page 7 of 52  Page ID
Case 2:04-cv-09049-SGL-RNB  Document 142  Filed 01/11/2007  Page 3 of 22
#:219534

1  line of BRATZ dolls.[1]

2  By Order dated June 19, 2006, the Court consolidated all three cases "for all

3  purposes" as they "involve[d] a number of common issues of law and fact."  As the

4  Court later noted in its August 10, 2006, Order:  "At its heart, this case asks the

5  question: Who owns the rights to the Bratz dolls?"  Resolution of this question lies

6  at the heart of or, at the very least, affects many of the other claims set forth in

7  each of the three respective cases.  For instance, even though the allegations in

8  05-2727 concern Mattel's alleged efforts at defeating the marketing of the BRATZ

9  dolls, resolution of who owned the rights to the BRATZ dolls could serve to moot

10  many of those allegations.  It is hard to imagine how it is unlawful for a company to

11  thwart or otherwise undermine the marketing of a product it owns.  Thus, if Mattel

12  owned the rights to the BRATZ dolls, many of the allegations in the 05-2727

13  complaint would become moot.  That said, such consolidation did not do away with

14  the distinctions that do exist between the three cases.  As the Court highlighted in

15  its consolidation order, when either party files a pleading in the case, "the first

16  paragraph of [that] document . . . shall inform the Court to which case(s) the

17  document relates."

18  On July 18, 2006, the Court dismissed Bryant's declaratory judgment action,

19  04-9049, finding there existed no reasonable apprehension of an imminent

20  copyright infringement claim being filed against him by Mattel based on Mattel's

21  Toon Teen intellectual property.  See Court's July 18, 2006, Order at 4.  The

22  Court's Order was predicated entirely upon counsel for Mattel's representation

23  during oral argument that it "will not maintain that Bratz infringes the copyright in

24  Toon Teens."  Owing to this representation, the Court, in dismissing the declaratory

25  judgment action, made clear that any future "claim by Mattel of copyright

26

27  [1] That the marketing of the BRATZ dolls lies at the heart of the issues between the rival doll makers in the 05-2727 case is best illustrated by the Court's

28  discussion of those allegations in its August 26, 2005, Order, Granting in Part and Denying Part Mattel's Motion to Strike portions of MGA's complaint.

3

EXHIBIT ___/___
PAGE ___7___

Case 2:04-cv-09049-DOC-RNB Document 6680-2 Filed 09/14/09 Page 8 of 52 Page ID
Case 2:04-cv-09049-SGL-RNB Document 342 Filed 01/11/2007 Page 4 of 22
#:215555

1    infringement based on the Toon Teens product is barred by counsel's

2    representation." July 18, 2006, Order at 4.

3       Presently before the Court is Mattel's request for leave to file an amended

4    complaint in the 04-9059 action. The complaint broadens considerably the nature

5    of the action from its genesis in state court. Whereas before the complaint simply

6    sought to litigate alleged contractual and fiduciary breaches by Bryant while in the

7    employ of Mattel (no doubt geared toward procuring a legal basis for Mattel to lay

8    claim to the BRATZ doll line), the amended complaint adds five more defendants

9    and nine new legal claims, alleging a wide range of commercial disputes between

10   the rival doll makers that spans three countries. For instance, the amended

11   complaint now contains RICO claims, a misappropriation of trade secrets claim,

12   and various aiding and abetting claims all stemming from allegations that MGA

13   cherry-picked certain high-ranking Mattel executives in foreign markets (many also

14   named as defendants in the amended complaint) or designers (namely, Bryant),

15   and then enticed or encouraged those same individuals to steal various trade and

16   proprietary secrets (be it sales plans, sales projections, customer profiles, or

17   intellectual property) from Mattel and hand them over to MGA before going to work

18   at MGA.

19       Moreover, the amended complaint expands upon the existing breaches of

20   contract and fiduciary duty claims in the original complaint by expanding the

21   universe of former employees (namely, the cherry-picked executives) to whom

22   those claims now apply.

23       Finally, Mattel now makes plain what was always lurking in its original

24   complaint — a copyright claim, but one directed not only to Bryant but also to MGA,

25   MGA's Hong Kong subsidiary, and MGA's President and CEO Isaac Larian.

26   Moreover, Mattel characterizes its copyright claim somewhat differently from that at

27   issue in Bryant's declaratory relief action: "The Amended Complaint does not

28   include a claim for infringement of copyrights in Toon Teens, but rather

4

EXHIBIT _____ 1
PAGE _____ 8

Case 2:04-cv-09049-DOC-RNB Document 6680-2 Filed 09/14/09 Page 9 of 52 Page ID
#:219536
Case 2:04-cv-09049-SGL-RNB Document 142 Filed 01/11/2007 Page 5 of 22

1  infringement of copyrights in Bratz." (Reply to MGA Opp. at 11). Toward that end,

2  Mattel has recently filed copyright registrations with the U.S. Copyright Office

3  claiming ownership in various BRATZ doll design drawings penned by Bryant.

4  A.    ANALYSIS

5       Federal Rule of Civil Procedure 15(a) provides that, once a responsive

6  pleading has been served, "a party may amend the party's pleading only by leave of

7  court or by written consent of the adverse party; and leave shall be freely given

8  when justice so requires." With no consent to Mattel's proposed filing proffered by

9  MGA and Bryant, determining whether to grant Mattel leave to file an amended

10 complaint is gauged by looking to the familiar formulation of factors set forth by the

11 Supreme Court in Forman v. Davis:

> In the absence of any apparent or declared
> reason—such as undue delay, bad faith or dilatory
> motive on the part of the movant, repeated failure to
> cure deficiencies by amendments previously allowed,
> undue prejudice to the opposing party by virtue of
> allowance of the amendment, futility of amendment,
> etc.—the leave sought should, as the rules require, be
> 'freely given.' Of course, the grant or denial of an
> opportunity to amend is within the discretion of the
> District Court, but outright refusal to grant the leave
> without any justifying reason appearing for the denial is
> not an exercise of discretion; it is merely abuse of that
> discretion and inconsistent with the spirit of the Federal
> Rules.

20 371 U.S. 178, 182 (1962).

21      MGA and Bryant offer the following reasons for denying Mattel leave to

22 amend: (1) Mattel has long known of the factual predicates underlying its copyright

23 and intentional interference claims but delayed in asserting them; (2) the proposed

24 amendment to add the copyright claim and the intentional interference claims

25 (against the new defendants) are futile because they are barred by the applicable

26 statute of limitations; (3) the copyright claim had been brought in bad faith by Mattel

27 because of its prior public disavowal of an intent to assert such a claim; and (4)

28 MGA and Bryant would incur undue prejudice were the copyright claim added to the

5

EXHIBIT    1
PAGE    9

Case 2:04-cv-09049-DOC-RNB Document 6680-2 Filed 09/14/09 Page 10 of 52 Page ID
#:219537
Case 2:04-cv-09049-SGL-RNB Document 142 Filed 01/11/2007 Page 6 of 22

1  suit because of alleged spoilation of evidence issues involving Mattel's ZEUS

2  computer system used by doll designers at Mattel and its e-mail system. None of

3  these arguments are persuasive.

4      1.    Awareness of Factual Predicate for Copyright and Intentional

5             Interference Claims

6      MGA argues that Mattel has long known about the factual predicate for its

7  recently added copyright claim, observing that, "[o]ver four years ago, in August

8  2002, Mattel CEO Bob Eckert received an anonymous letter stating that Bryant

9  created the project that became the 'Bratz' dolls — and worked with MGA to 'steal'

10  that project — while still employed at Mattel." (MGA Opp. at 9). Similarly, MGA

11  argues that Mattel has long known of the factual predicate for its intentional

12  interference claim with respect to Bryant's contract given that, "[b]y Mattel's own

13  admission, it learned in November 2003 — more than three years ago — that

14  Bryant had signed a contract with MGA 'dated as of' a month prior to his final day at

15  Mattel." (MGA Opp. at 11-12).

16      At the outset it must be observed that "[m]ere delay in proffering an

17  amendment does not justify denying leave to amend." Sierra Club v. Union Oil Co.

18  of California, 813 F.2d 1480, 1493 (9th Cir. 1987), vacated on other grounds by,

19  485 U.S. 931 (1988), and reinstated by, 853 F.2d 667 (9th Cir. 1988). Seizing upon

20  this point of law, Mattel argues that "only in . . . cases" when "granting leave would

21  require discovery to be reopened after summary judgment motions have been filed"

22  has the Ninth Circuit found the denial of leave "justified" based on the passage of

23  time alone. (Reply to MGA Opp. at 3). That is incorrect. There is a line of cases

24  from the Ninth Circuit finding that, if a "party seeking amendment knows or should

25  know of the facts underlying the amendment when the original complaint is filed,

26  the motion to amend may be denied." Sierra Club, 813 F.2d at 1493 (citing Jordan

27  v. County of Los Angeles, 669 F.2d 1311, 1324 (9th Cir. 1982)). And, recently, the

28  Ninth Circuit upheld the denial of leave to amend based on the passage of time

6

EXHIBIT ___1___
PAGE ___10___

1  even though the requested leave to amend was tendered <u>before</u> the time, as set

2  forth in a Rule 16(b) pre-trial scheduling order, for amending pleadings had expired.

3  <u>See</u> <u>AmerisourceBergen Corp. v. Dialysist West, Inc.</u>, 465 F.3d 946 (9th Cir. 2006).

4  The Ninth Circuit observed that, even when a request for leave to amend is timely

5  under a Rule 16(b) schedule for pretrial motions, the district court may nonetheless

6  still deny the request based on any of the <u>Forman</u> factors. <u>Id</u>. at 951-52. The Ninth

7  Circuit then noted that the issue of untimeliness (regardless of whether the

8  amendment is tendered "within the period of time allotted by the district court in a

9  Rule 16 scheduling order") in seeking to amend can constitute a justification for

10  denying leave to amend if "the moving party knew or should have known the facts

11  and theories raised by the amendment in the original pleading." <u>Id</u>. at 953.

12  Toward that end, the Ninth Circuit observed that "an eight month delay between the

13  time of obtaining a relevant fact and seeking a leave to amend is unreasonable."

14  <u>Id</u>. In this regard, the Ninth Circuit in <u>Dialysist</u> was unpersuaded by the fact that,

15  even though the moving party had known of the facts prompting the amendment for

16  a long period of time, there still remained eight more months of discovery for the

17  parties to marshal facts against the allegations raised by the amended pleading:

18  "Even though eight months of discovery remained, requiring the parties to scramble

19  and attempt to ascertain whether the Procrit purchased by AmerisourceBergen was

20  tainted, would have unfairly imposed potentially high, additional litigation costs on

21  Dialysist West that could have easily been avoided had AmerisourceBergen

22  pursued its 'tainted product' theory in its original complaint or reply." <u>Id</u>. Thus,

23  absent "a satisfactory explanation" for the delay in amending the complaint, the

24  Court is well within its rights to deny leave to amend. <u>Id</u>.

25      Mattel proffers the following reasons for taking the time that it did before

26  presenting its amended complaint: (1) Acting out of an abundance of caution to its

27  obligations under Rule 11 to present "factual contentions [that] have evidentiary

28  support," Mattel waited until its claims were better supported by evidence

7

EXHIBIT ___/___

PAGE ___//___

Case 2:04-cv-09049-DOC-RNB   Document 6680-2   Filed 09/14/09   Page 12 of 52   Page ID
Case 2:04-cv-09049-SGL-RNB   Document 142   Filed 01/11/2007   Page 8 of 22
#:219539

1  uncovered in discovery; and (2) the delay in the proceedings caused by "the year-

2  long stay and the parties' prior jurisdictional disputes" have left the case still in its

3  "nascent stage."  (Reply to MGA Opp. at 2, 4).

4        The first reason is not well-founded.  Rule 11 specifically allows parties to

5  aver factual allegations that "are likely to have evidentiary support after a

6  reasonable opportunity for further investigation or discovery" so long as the party

7  makes clear in its pleading that its factual contentions on those points are with the

8  caveat that they are based on a good faith belief that further discovery would

9  unearth evidence to support them.  See FED. R. CIV. P. 11(b)(3).  Simply put, Rule

10 11 did not stand in the way of Mattel averring the factual contentions it now claims it

11 "merely suspected" as being the case based on the limited information before it.

12 Mattel could have gone ahead and made such suspected factual allegations so

13 long as it caveated those claims with the declaration that it reasonably believed that

14 those allegations would be borne out by further discovery.  Perhaps the time by

15 which Mattel could have reasonably believed such allegations would be borne out

16 by further discovery occurred after the dates noted by MGA, but it is hard to fathom

17 that such materialization took three or four years to occur.

18       The second reason would have some merit to it but for the fact that the

19 information that alerted (or should have alerted) Mattel to the existence of its now

20 asserted copyright and intentional interference claims was brought to Mattel's

21 attention well before the case was stayed on May 20, 2005.  The stay, therefore,

22 did not operate as an obstacle to Mattel asserting its claims; nor even if it did, the

23 stay does not explain why Mattel waited nearly six months after the stay was lifted

24 on May 16, 2006, to present those claims now.

25       All of that being said, the one thing that gives the Court pause in denying

26 leave based on the tardiness in Mattel's presentation is the lack of any evidence

27 that MGA or Bryant have been prejudiced by the delay.  Delay unconnected to

28 some showing of prejudice, be it prejudice to the parties or disruption in judicial

EXHIBIT ___/___
PAGE ___/ 2___

Case 2:04-cv-09049-DOC-RNB Document 6680-2 Filed 09/14/09 Page 13 of 52 Page ID
Case 2:04-cv-09049-SGL-RNB Document 142 Filed 01/11/2007 Page 9 of 22
#:215540

1    management of the case, does not suffice to deny granting leave to amend. The

2    Ninth Circuit has noted that, "where a defendant is on notice of the facts contained

3    in an amendment to a complaint, there is no serious prejudice to defendant in

4    allowing the amendment" even if it is made tardily.  Sierra Club, 813 F.2d at 1493.

5    Indeed, the denial of leave was proper in the Dialysist case not simply because of

6    the length of the delay, but because the delay itself was "detrimental" in that it

7    would entail the opposing party to have "unfairly" incurred "potentially high,

8    additional litigation costs" that could have been avoided if the moving party had

9    made clear its intentions earlier.  465 F.3d at 953.

10        Here, as well demonstrated in Mattel's papers, it is readily apparent from the

11   pleadings filed by MGA and Bryant in this case that both have been aware for some

12   time of the factual predicates now underlying Mattel's copyright claim and

13   intentional interference claim. (See MGA Opp. at 5 ("As Bryant and MGA

14   suspected at the time of filing — and Mattel now concedes by conduct — those

15   deceptively-pled state-law claims [in 04-9059] were copyright infringement claims all

16   along")(emphasis added)). The parties have engaged in meaningful discovery

17   regarding many of the facts touched upon by these new claims, be it tracking down

18   experts in various forensic fields or taking depositions of various of the key players

19   to those claims.   In point of fact, in their papers filed with this Court before this

20   present motion, both Bryant and MGA have made it abundantly clear that they have

21   long suspected that a copyright infringement claim was in the offing as evidenced

22   by Bryant's filing of the declaratory judgment action and MGA's intervention in the

23   05-9059 matter to protect its rights to the BRATZ dolls. Similarly, MGA and Bryant

24   have been on notice to the facts comprising the interference claim concerning

25   Bryant's contract as evidenced by the identity of the individuals who have been

26   deposed by Mattel, as well as the nature of the questions posed and the testimony

27   proffered at those depositions. MGA's argument that, with the amendments, it

28   faces the prospect of defending "against stale claims" owing to faded memories and

9

EXHIBIT __1__
PAGE __13__

Case 2:04-cv-09049-DOC-RNB   Document 6680-2   Filed 09/14/09   Page 14 of 52   Page ID
#:219541
Case 2:04-cv-09049-SGL-RNB   Document 142   Filed 01/11/2007   Page 10 of 22

1  loss of documents caused by the great passage of time, (see MGA Opp. at 3, 13),

2  is diminished by the fact that (no doubt owing to the sophistication of all counsel

3  involved) discovery on these very issues have been proceeding apace by both

4  sides long before Mattel filed its proposed amendments.  This is simply not a case

5  where "additional litigation costs" will be "unfairly" visited upon Bryant and MGA by

6  allowing the proposed amendments; much of those costs have already been borne

7  by the parties for some time.

8       2.    Spoilation of Evidence

9       MGA next argues that Mattel's delay in bringing the amended complaint has

10 caused it prejudice as, in the interim, critical pieces of evidence have been or are

11 suspected of having become lost.  For instance, MGA asserts that Mattel's Rule

12 30(b)(6) witness concerning its Zeus computer system, Julia Marine, testified that,

13 "although Mattel identified and segregated its most relevant backup tapes available

14 for Zeus, Mattel allowed its tape backup system to expire the database for those

15 backup tapes, thereby eliminating all information about what was actually stored on

16 those backup tapes." (MGA Opp. at 9-10).  Information on the Zeus computer

17 system is critical because of Mattel's assertion that part of its copyright claim rests

18 on Bryant's exposure to Mattel development programs.  (First Am. Compl. ¶ 26(a)).

19 As explained by MGA: "[C]oncept data and drawings created by [Mattel] design

20 center personnel are stored on Zeus.  Thus, the electronic documents stored on

21 Zeus – which should include the metadata showing who created, edited and

22 accessed Mattel's concept drawings and designs – during the time Bryant worked

23 in the design center at Mattel is vitally important to defending against Mattel's

24 claims." (MGA Opp. at 14).  MGA's argument is neither an accurate

25 characterization of Ms. Marine's testimony nor of the nature of Mattel's exposure

26 claim.

27      Ms. Marine did not testify that the information on the backup tapes (some

28 fifty in total) was lost, but rather that Mattel no longer carried the type of hardware

10

EXHIBIT ___/___
PAGE ___/4___

Case 2:04-cv-09049-DOC-RNB   Document 6680-2   Filed 09/14/09   Page 15 of 52   Page ID
Case 2:04-cv-09049-SGL-RNB   Document 142   Filed 01/11/2007   Page 11 of 22
#:219542

that could restore the information still found on those tapes:

> Q.   So if you wanted to restore that 2002 backup
>      tape[s] then, how would you go about doing that?
>
>                    . . . .
>
> A.   You need the hardware so if we don't have the
>      hardware — if [the technology used by the tape
>      is] DLT we don't have the hardware and you've
>      got to buy it and – well, first you have to find a
>      place to put it with adequate power which we
>      don't have in the design center. You need to
>      have a tape library. You need to have the tape
>      drives that carried those tapes. You need a
>      server that has the capability to – that's big
>      enough to handle all of the hardware. You need
>      the software – the license for the backup
>      software[, Net Backup]. You need the disk space
>      to restore it to and then you have to start reading
>      in all those tapes.
>
> Q.   You said that you don't have that in the design
>      center. Do you have that hardware anywhere
>      else in the company?
>
> A.   DLT? No, no.
>
> Q.   At what point did you get rid of the hardware?
>
> A.   Once the last backups — DLT backups expired
>      so it would have been a couple years ago
>      probably.

(Decl. Diana Torres, Ex. K at 118-119).

The above testimony clearly denotes the difficulty in restoring what was on Mattel's Zeus computer system during the relevant time frame, but it certainly does not demonstrate that the information on those backup tapes has been "eliminated" or forever lost. Undoubtedly it will be a costly endeavor to recover that information (not to mention to later search and sort through it); but to argue, as MGA does, that the information is "unavailable" or "lost", (MGA Opp. at 9, 14), exaggerates its plight. Indeed, Ms. Marine's testimony indicates that the difficulty in retrieving the information on the Zeus backup tapes has been present for some time (maybe since 2004 or perhaps even earlier). This is important because it undermines MGA's claim that Mattel's undue delay in bringing its amended complaint will cause

EXHIBIT    1
PAGE    15

Case 2:04-cv-09049-DOC-RNB Document 6680-2 Filed 09/14/09 Page 16 of 52 Page ID
#:219543
Case 2:04-cv-09049-SGL-RNB Document 142 Filed 01/17/2007 Page 12 of 22

1   it to suffer prejudice it otherwise would not have faced if the amendments were

2   brought sooner. Such prejudice has been present for years, and Mattel's failure to

3   bring its amended complaint sooner would not have changed this situation.

4   Similarly, MGA's point that access to what was on the Zeus computer

5   system is vital in demonstrating that Bryant was not exposed to or otherwise did not

6   hack the system to steal other designers work is diminished to some extent by the

7   fact that Bryant himself testified that he did not use the Zeus computer system and

8   was "pretty much computer illiterate" while employed at Mattel. Admittedly, the

9   ability to point to information on the Zeus system backup tapes to prove that Bryant

10  did not access other designers drawings or to prove the date those drawings were

11  created by those other designers would be useful evidence to negate Mattel's

12  factual claims. Nonetheless, such evidence still would not discount other avenues

13  outside of the Zeus computer system by which Mattel could seek to prove that

14  Bryant was exposed to its copyrighted works, <u>e.g.</u>, witness testimony that Bryant

15  saw drawings of the same posted on other designers' cubicles.

16  MGA next surmises that Mattel's e-mail records have disappeared, not

17  because it has any proof on that point, but simply because Mattel has postponed

18  the deposition of the individual most knowledgeable of Mattel's e-mail records until

19  after the hearing on Mattel's motion for leave to amend. (MGA Opp. at 10).

20  Speculation of spoilation does not suffice. That MGA's argumentation on this point

21  is nothing more than speculation is best exhibited by the evidence it has proffered

22  in support of its argument: "[I]f the sole retained backup for Zeus is no longer

23  available, it is not hard to <u>imagine</u> that Mattel's electronic mail archives are similarly

24  out of reach." (MGA Opp. at 15 (emphasis added)). MGA then makes much of a

25  deposition from a Mattel executive, Alan Kaye, who testified that e-mails in his

26  inbox would be automatically deleted if they had remained there for more than a

27  certain time period. (Decl. Diana Torres, Ex. H at 292-93). MGA takes from this

28  acknowledgment that Mattel has an "automatic email deletion system" that has

12

EXHIBIT _____ 1
PAGE _____ 16

1 compromised Mattel's "duty to preserve documents." (MGA's Opp. at 14).

2 Noticeably absent from MGA's argument is any evidence that the e-mails so

3 deleted from a Mattel employee's inbox are forever lost or, as is far more likely,

4 whether such information remains or is otherwise archived on some backup file on

5 Mattel's computer system. Absent concrete proof that spoilation has occurred,

6 nothing in MGA's argument forms a basis for denying Mattel its requested leave to

7 amend.

8     3.   Statute of Limitations

9      MGA next argues that Mattel's copyright and intentional interference claims

10 are futile as both are barred by the applicable statute of limitations. This argument

11 was pressed emphatically at oral argument. With respect to the copyright claim,

12 MGA argues that the applicable statute of limitations is three years, with the

13 limitations period accruing from when a party has knowledge of a violation or when

14 a reasonably diligent person would have been put on inquiry of the infringement.

15 (MGA Opp. at 16 (citing Roley v. New World Pictures, 19 F.3d 479, 481 (9th Cir.

16 1994)). MGA argues that Mattel was put on notice about its copyright claim in

17 August, 2002, upon the receipt of the anonymous letter to Mattel's CEO that Bryant

18 had stolen the idea for BRATZ while working at Mattel. Thus, according to MGA,

19 the limitations period on Mattel's claim expired in August, 2005, rendering Mattel's

20 current copyright claim stale.

21      The problem with MGA's analysis is it fails to take into account the relations-

22 back principles found in Rule 15(c), which provides that "[a]n amendment of a

23 pleading relates back to the date of the original pleading when "the claim . . . in the

24 amended pleading arose out of the conduct, transaction, or occurrence set forth . . .

25 in the original pleading," or if such relation back is otherwise permissible by the

26 state "law that provides the statute of limitations applicable to the action." By

27 MGA's own admission Mattel's copyright claim arises out of the same conduct or

28 transaction contained in the original complaint filed in April, 2004, well within the

13

EXHIBIT _____1_____
PAGE _____17_____

Case 2:04-cv-09049-DOC-RNB    Document 6680-2    Filed 09/14/09    Page 18 of 52    Page ID
#:219545
Case 2:04-cv-09049-SGL-RNB    Document 142    Filed 01/11/2007    Page 14 of 22

1    applicable limitations period.[2]  (MGA Opp. at 12 ("These very same allegations

2    [contained in the original complaint] underlie the copyright infringement and

3    intentional interference contract claims Mattel now seeks to allege against MGA,

4    Mr. Larian and Bryant")).

5        MGA's statute of limitations argument with respect to the intentional

6    interference claims fares no better.  According to MGA, the applicable statute of

7    limitations is two years for an intentional interference with contract claim and Mattel

8    was aware of the facts alerting it to this claim (insofar as Bryant's contract is

9    concerned) on November 24, 2003, when it learned "that Bryant worked with MGA

10   to develop the 'Bratz' dolls prior to his last day of employment by Mattel and, hence,

11   prior to the expiration of his contractual relationship with Mattel."[3]  (MGA Opp. at 18

12   (citing Knoell v. Petrovich, 76 Cal. App.4th 164, 168 (1999)) .  Such a time line

13   would, according to MGA, mean that the applicable limitations period expired on

14   Mattel's interference with Bryant's contract claim on November 24, 2005, well

15   before Mattel sought leave to file its amended complaint.  (Id).  The problem again

16   with MGA's argument is that it ignores that through Rule 15(c) Mattel's intentional

17   interference claim would relate back to when it filed its original complaint in April,

18

19

_____

20       [2] The same would appear to be true — that the amendments would be timely
21   — if the amendments related back to Mattel's answer (filed on May 13, 2005) to
     MGA's complaint in the 05-2727 case.
22

23       [3] With respect to Mattel's interference with contract claim as to one of its
     former executives, Ron Brawer, MGA claims Mattel was put on notice of that claim
24   on September 17, 2004, when Brawer informed Mattel that he leaving to go to work
     for MGA.  (MGA Opp. at 19-20).  The problem with this argument is that nothing from
25   that simple event — Brawer's declaration of his intent to leave — in any way would
     apprise Mattel that MGA had encouraged Brawer to engage in nefarious conduct
26   (the stealing of proprietary information) causing Brawer to breach his contract with
     Mattel that he would not do anything to help a competitor while working for them.
27   MGA's contention that Mattel must have known of those misdeeds in mid-September
     is nothing more than speculation.  Futility cannot be founded on what might or might
28   not be the case; either a claim is futile to bring or it is not.

EXHIBIT       1
PAGE          18

Case 2:04-cv-09049-DOC-RNB Document 6680-2 Filed 09/14/09 Page 19 of 52 Page ID
#:219546
Case 2:04-cv-09049-SGL-RNB Document 142 Filed 07/11/2007 Page 15 of 22

1  2004, well before the limitations period expired.[4]

2       Accordingly, MGA's futility argument is not well-founded.

3       4.    Prior Disavowals of Asserting a Copyright Claim

4       Finally, MGA takes umbrage with the cageyness to which Mattel has taken in

5  this case as to whether or not it is asserting a copyright infringement claim against

6  it. To MGA, such ducking and weaving on Mattel's part renders its effort to now

7  bring such a copyright claim as one done in bad faith. No doubt the Court itself has

8  been subjected to Mattel's overly vague statements on this point, but in the end

9  nothing in those statements has ever foreclosed the possibility that such a claim

10  may be in the offing. Indeed, during the oral argument on Mattel's motion to

11  dismiss Bryant's declaratory judgment action, the Court pressed Mattel's counsel as

12  to whether it would assert such a copyright claim against Bryant as it is currently

13  seeking to do. The most that Mattel's counsel would proffer was that Mattel would

14  not assert a copyright claim against Bryant based on Mattel's copyright rights in

15  TOON TEENS. At that point, the Court directed the parties to engage in a meet

16  and confer based on counsel for Mattel's representation and to provide a report to

17  the Court based on those discussions. The report submitted to the Court made

18  clear that, although Mattel was willing to accede that it would not bring a copyright

19  claim based on TOON TEENS, it refused to accede to Bryant's broader request

20  that "Bryant 'never copied anything' and that no Mattel product has any 'relevance'

21  to any claim that Mattel has or ever will assert against Bryant." This by itself should

22  have dispelled any illusion either Bryant or MGA was operating under that Mattel's

23  prior statements had foreclosed any potential copyright claim against them.[5]

24

25       [4] Again the relations-back principle would also seem to render its claim timely
if it were filed as an amended answer (the original having been filed in May, 2005) in
26  the 05-2727 case.

27       [5] MGA also argues that Mattel's effort to substitute MGA and its CEO, Isaac
28  Larian, for the "Doe" defendants listed in its original complaint is improper because
Mattel knew of their identity when it filed the original complaint. The argument is

15

EXHIBIT ___1___
PAGE ___19___

Case 2:04-cv-09049-DOC-RNB  Document 6680-2  Filed 09/14/09  Page 20 of 52  Page ID
Case 2:04-cv-09049-SGL-RNB  Document 142  Filed 01/11/2007  Page 16 of 22  Page ID
#:219547

1    That said, Mattel's allegation in the amended complaint as to how it is

2  seeking to lay claim to the copyright in BRATZ is disconcerting.  Paragraph 26,

3  subsection a, in the amended complaint alleges that Bryant "misappropriated and

4  misused Mattel property" by "using his exposure to Mattel development programs to

5  create the concept, design and name of Bratz."  (First Am. Compl. ¶ 26(a)).  Such

6  "exposure" could include Bryant misappropriating the Mattel design concept in

7  TOON TEENS in drawing his inspiration for the BRATZ doll.  Were Mattel's

8  copyright claim so predicated it would be barred by this Court's July, 2006, Order,

9  dismissing Bryant's declaratory judgment action.  Mattel was pressed on this point

10  during oral argument and conceded that such "exposure" to Mattel "development

11  programs" did not include TOON TEENS.  With this representation, nothing in

12  Mattel's proposed copyright claim is barred under the rubric of bad faith.

13        5.    Judicial Economy Considerations

14    In his opposition, Bryant adds an additional reason for denying leave beyond

15  those contained in MGA's papers — the amendment would muddy the waters in the

16  04-9059 by adding "tangential" issues that would only serve to delay resolution of

17  the key issue lying at the heart of the complaint:  Who owns the rights to the

18  BRATZ line of dolls.  (Bryant Opp. at 2 ).  Bryant notes that the case has proceeded

19  apace in moving toward resolving that issue, and the amendment would "transform

20

21  _____

    misplaced.  As made clear by Mattel, California law allows a plaintiff to substitute in a
22  defendant for a "Doe" if the plaintiff was ignorant of that defendant's identity or
    ignorant of the basis for liability at the time the complaint was filed.  See Miller v.
23  Thomas, 121 Cal.App.3d 440 (1981).  MGA does not dispute this legal contention
24  but at oral argument disputed that Mattel did not know the basis for liability against
    itself or Mr. Larian due to the "uncanny" similarity between the allegations averred in
25  the original complaint and those now proffered against the two in the amended
    complaint.  Specifically, MGA notes that the original complaint spoke of Bryant
26  working for one of Mattel's competitiors and of that employee's theft of Mattel's
    intellectual property before leaving to work for that competitior.  At most, all this
27  shows is that Mattel knew that Bryant went to work for MGA, not that MGA or Mr.
28  Larian encouraged Bryant's alleged unlawful behavior recited in the original
    complaint.

EXHIBIT ____1____
PAGE ____20____

Case 2:04-cv-09049-DOC-RNB    Document 6680-2    Filed 09/14/09    Page 21 of 52    Page ID
Case 2:04-cv-09049-SGL-RNB    Document 142    Filed 01/11/2007    Page 17 of 22
#:219548

1   what Mattel has always claimed was a straightforward employment action against

2   an individual defendant into a global commercial dispute against Mattel's primary

3   competitor, MGA," that "will last years" thereby "delay[ing]" resolution of who owns

4   BRATZ.[6]  (Bryant Opp. at 2).  Mattel argues that "the law does not deny leave to

5   amend because claims are 'tangential'" and then reiterates its point that some

6   showing of prejudice, namely, seeking leave after expiration of discovery, is

7   necessary. (Reply to Bryant Opp. at 3).  That is not entirely correct.

8           As noted previously, the Ninth Circuit recently upheld a denial for leave to

9   amend because the amendment would have "drastically changed" the litigation,

10  even though the leave request was tendered before the time, as set forth in a Rule

11  16(b) pre-trial scheduling order, for filing a motion to amend had expired and well

12  before the discovery cut-off.  See AmerisourceBergen Corp. v. Dialysist West, Inc.,

13  465 F.3d 946, 953 (9th Cir. 2006).  In justifying its reasoning the Ninth Circuit cited

14  approvingly to the following statement from a well-respected treatise: "If an

15  amendment substantially changes the theory on which the case has been

16  proceeding and is proposed late enough so that the opponent would be required to

17  engage in significant new preparation, the court may deem it prejudicial." Id. at 953

18  n.2 (quoting 6 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE,

19  FEDERAL PRACTICE AND PROCEDURE § 1487 (2nd ed. 1990)).  Thus, Dialysist

20  recognized that the introduction of "different legal theories" and/or proof of

21  materially different facts well into the litigation can itself be a basis for finding

22  prejudice regardless of whether the period for discovery has expired (or is even

23  close to expiring) or the parties have already filed summary judgment motions. Id.

24  at 953-54.

25          Although the parties can safely be said to be at this point well into the

26

27          [6] Bryant also brings intricate legal arguments about the sufficiency of the
28  allegations Mattel has averred in building its RICO claims against him.  Such
    considerations are best left to be resolved on a properly filed motion to dismiss.

17

EXHIBIT _____/_____

PAGE _____2.l_____

Case 2:04-cv-09049-DOC-RNB   Document 6680-2   Filed 09/14/09   Page 22 of 52   Page ID
Case 2:04-cv-09049-SGL-RNB   Document 142   Filed 01/11/2007   Page 18 of 22
#:213543

1  litigation in this consolidated action (as evidenced by the protracted discovery

2  disputes contained in the docket sheet that the parties have had before the

3  magistrate judge and now the special master, and the litigation of motions to

4  dismiss in both the 04-9049 and 04-9059 cases), the fact remains that, as Mattel

5  has made painfully clear in its papers, no scheduling order has been entered in this

6  case.[7]  This takes away somewhat from the prejudice Dialysist found to exist when

7  a "drastic change [in a party's] litigation theory" takes place mid-stream in the

8  litigation process. Id. at 953.  Simply put, without a schedule for the filing of pre-trial

9  motions and other matters (e.g., discovery cutoff), the parties have been given free

10  reign in how to conduct the litigation in this case.

11        That the delay in bringing the proposed amendments and the relative length

12  of time into the litigation when those amendments were brought may not neatly fold

13  into Dialysist's reasoning does not mean that leave must nonetheless be granted.

14  The 04-9059 action, as it is presently constituted, is not a complex one.  It asks a

15  rather narrow and straightforward question — Did anything from Bryant's

16  employment at Mattel during the 1999-2000 period give Mattel ownership rights to

17  the BRATZ doll line?  The proposed amendments would radically alter the litigation

18  in that case to include far ranging disputes involving multiple parties and concerning

19  events not connected with the BRATZ ownership issue.  That the original action

20  was a relatively simple and straight-forward matter raises another point beyond the

21  change in the action's litigation posture — whether entangling the rival doll makers'

22  other commercial disputes into this particular case would serve to muddy the waters

23  and make the matter that much more difficult to manage from the Court's

24  perspective.

25  _____

26        [7]  Mattel's repeated refrain that the matter is in its nascent stage as evidenced
by the fact that the parties only just recently exchanged in initial disclosures is
27  misleading.  The exchange of initial disclosures referred to by Mattel is in the 05-
2727 case.  With respect to the 04-9059 case it appears that such initial disclosures
28  were completed long ago as evidenced by the fact that discovery disputes appeared
in that case as far back as January, 2005.

EXHIBIT _____1____
PAGE _____22____

Case 2:04-cv-09049-DOC-RNB   Document 6680-2   Filed 09/14/09   Page 23 of 52   Page ID
#:219550
Case 2:04-cv-09049-SGL-RNB   Document 142   Filed 01/11/2007   Page 19 of 22

1    As has long been recognized, equally important in determining whether to

2    grant such leave is what impact such amendments would have on the court's ability

3    to manage the case.  See 3 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE

4    § 15.15[1] at 15-42.1 to 15-43 (3rd ed. 2006)("A court should also consider judicial

5    economy and its ability to manage the case. . . . The court should also temper the

6    policy favoring freely granting leave to amend with consideration of the ability of the

7    district court to manage the case adequately if amendment is allowed"). As Judge

8    Clark for the Fifth Circuit once observed: "In keeping with the purposes of the rule,

9    the court should consider judicial economy and whether the amendments would

10   lead to expeditious disposition of the merits of the litigation.  Finally, the court

11   should consider whether the amendment adds substance to the original allegations,

12   and whether it is germane to the original case of action." Chitimacha Tribe of

13   Louisiana v. Harry L. Laws Co., 690 F.2d 1157, 1163 (5th Cir. 1982); see also

14   Sierra Club v. Union Oil Co. of California, 813 F.2d 1480, 1493 (9th Cir.

15   1987)("General considerations of judicial economy also justify allowing the

16   amendments. The violations included in the proposed amendment relate to the

17   same subject matter as the original complaint. Allowing the amendment will further

18   the federal policy of 'wrapping in one bundle all matters concerning the same

19   subject matter.'").

20   Mattel's amendments do not add substance to the claims contained in its

21   original complaint. Rather, they would expand the universe of claims and

22   defendants stretching well-beyond the questions raised in the original complaint

23   over whether Bryant's conduct while in the employ of Mattel subjected his later

24   attributed creation of the BRATZ dolls to the provisions in Mattel's Inventions

25   Agreement or otherwise rendered his creation subject to an infringement action.

26   Nowhere does Mattel seek to reconcile the breadth of its present amendments with

27   the narrowness of the allegations contained in its original complaint.  In fact, the

28   precise opposite is true. Mattel acknowledges that its proposed amendments bear

19

EXHIBIT _____ 1

PAGE _____ 23

1    more congruity to the allegations leveled against it in MGA's Lanham Act case than

2    to those in the action to which it seeks to add them:

3            [M]any of the matters raised by Mattel's proposed
4        Amended Complaint are and will remain at issue
         because of MGA's Complaint, whether or not leave to
5        amend is granted.  MGA's claims allege that a broad
         array of purported Mattel conduct across the globe,
6        starting at least as early as 1999, has violated the
         Lanham Act and unfair competition law.  This includes
7        Mattel's alleged infringement of Bratz and other MGA
         products.  As a result, issues in the proposed Amended
8        Complaint are already part and parcel of Mattel's
         defenses to MGA's unfair competition claims, including
9        because they show that MGA and Bryant, and not
         Mattel, are ones who stole the products and other
10       properties involved.

11   (Reply to Bryant Opp. at 7 (emphasis added)).  Mattel apparently finds this

12   discongruity unimportant because "all of these matters have been consolidated with

13   the Bryant case." (Id. at 7).  As noted earlier, the fact that the cases have been

14   consolidated does not mean that the parties can ignore the distinctions that still

15   exist between them.  If, as Mattel acknowledges, the present amendments are

16   nothing more than re-formulated defenses and counterclaims it presently has to

17   MGA's complaint against it in the 05-2727 case, then such amendments should be

18   brought in the form of an amended answer and counterclaim in that case.

19        Consideration of the distinctions between the two cases is wise as it serves

20   as a useful tool in providing the Court a better means to manage the cases now

21   that they have been consolidated.  The proverbial dog (ownership in BRATZ)

22   should be wagging the proverbial tail (the remaining commercial disputes), not the

23   other way around.  Admittedly, the dog's tail has grown in size both by MGA's filing

24   of its complaint in the 05-2727 action and Mattel's response thereto through its

25   proposed amendments.  Nonetheless, it is readily apparent to the Court that the

26   crown jewel in this action still remains the ownership rights to the BRATZ dolls.  The

27   parties have engaged in extensive and undoubtedly expensive discovery on this

28   very issue (from hiring world-renowned experts to test the age of Bryant's design

EXHIBIT ___1___
PAGE ___29___

Case 2:04-cv-09049-DOC-RNB   Document 6680-2   Filed 09/14/09   Page 25 of 52   Page ID
#:219552
Case 2:04-cv-09049-SGL-RNB   Document 142   Filed 01/11/2007   Page 21 of 22

1    drawings to technically complex discovery of what is on each other's computers).

2        Indeed the separateness of the two matters is reflected in how the cases are

3    currently structured, namely, the narrowness of the issue involved in 04-9059 and

4    the expansiveness of the facts at issue in 05-2727.  In light of this fact, the Court

5    believes a two-track scheduling order wherein the 04-9059 matter's discovery cut

6    off and trial date are set well-ahead of those in 05-2727 makes the most sense.  As

7    noted earlier, many of the legal claims being pressed in 05-2727 will be affected by

8    the result of the litigation in 04-9059.  If, for instance, Mattel does own the rights to

9    the BRATZ dolls (either owing to Bryant's stealing his idea from one of Mattel's

10   "development programs" or by way of the Inventions Agreement because he

11   continued to work on his designs while at Mattel), then large portions of MGA's

12   Lanham Act infringement claims may become moot.  By the same token, if Mattel

13   does not own rights to BRATZ, then some of the defenses and counterclaims set

14   forth as independent claims in the present amended complaint may become moot,

15   including Mattel's copyright infringement claim as well as portions of its remaining

16   RICO, misappropriation, and aiding and abetting claims.  If, however, the Court

17   were to allow the amended complaint to be filed in the 04-9059 action, such case

18   management would be difficult, if not impossible as many of the issues being

19   litigated in the 05-2727 case would have been poured into the 04-9059 case by the

20   amendment.  Due to this substantial overlap in claims and facts, a two-track

21   scheduling order utilizing the case number distinctions would be impossible to craft.

22   When pressed by the Court at oral argument as to which of its proposed claims it

23   believed would <u>not</u> undermine the BRATZ ownership posture of the 04-9059 case,

24   Mattel cited to its copyright and RICO claims.  However, upon further questioning

25   by the Court, counsel for Mattel acknowledged that much of those claims were, like

26   the claims at issue in 05-2727, dependent upon resolution of the ownership issue.

27       In light of the burden allowing Mattel's amendment to proceed would have on

28   this Court's ability to efficiently manage these consolidated matters denial of

21

EXHIBIT _____ *1*

PAGE _____ *25*

Case 2:04-cv-09049-DOC-RNB   Document 6680-2   Filed 09/14/09   Page 26 of 52   Page ID
#:219553
Case 2:04-cv-09049-SGL-RNB   Document 142   Filed 01/11/2007   Page 22 of 22

1  Mattel's request to amend its complaint in the 04-9059 matter is justified. <u>See</u>

2  <u>Perrian v. O'Grady</u>, 958 F.2d 192, 195 (7th Cir. 1992)("The burden to the judicial

3  system can justify a denial of a motion to amend 'even if the amendment would

4  cause no hardship at all to the opposing party'"). Buttressing the Court's decision is

5  the fact that, even with such a denial, Mattel may file (and the Court provides leave

6  to Mattel to so file) an amended answer and counterclaim in the 05-2727 case

7  raising all the new claims and defendants presently sought to be achieved through

8  amendment of its complaint in the 04-9059 action. None of the substantive

9  concerns raised by MGA and Bryant to the present amended complaint, <u>e.g.</u>,

10  statutes of limitations, would appear to be affected if the new claims and

11  defendants were brought as defenses and counterclaims in the 05-2727 case as

12  opposed to the 04-9059 one.

13       Accordingly, the Court GRANTS Mattel's motion for leave to file its proposed

14  amendments, but only insofar as they are pled in the form of an amended answer

15  and counterclaim in the 05-2727 case.

16       Finally, the lack of a scheduling order in this case is problematic; one should

17  have been entered long ago. <u>See</u> Fed. R. Civ. P. 16(b)(noting that a scheduling

18  "order shall issue as soon as practicable but in any event within 90 days after the

19  appearance of a defendant and within 120 days after the complaint has been

20  served on a defendant"). In light of the fact that entry of a scheduling order is

21  woefully overdue in this case, the Court hereby ORDERS that a Rule 16(b)

22  scheduling conference be held in this consolidated matter on February 12, 2007, at

23  1:30 p.m. in Courtroom One. The parties are directed to file a Joint Rule 26(f)

24  report with the Court by February 5, 2007.

25       IT IS SO ORDERED.

26  DATE: _/- //- o 7_

27

28                                 STEPHEN G. LARSON
                               UNITED STATES DISTRICT JUDGE

EXHIBIT _____1_____
PAGE _____26_____

# EXHIBIT 2

EXHIBIT __2__
PAGE __27__

1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
2   John B. Quinn (Bar No. 090378)
    johnquinn@quinnemanuel.com
    Michael T. Zeller (Bar No. 196417)
3   (michaelzeller@quinnemanuel.com)
    Jon D. Corey (Bar No. 185066)
4   (joncorey@quinnemanuel.com)
    Timothy L. Alger (Bar No. 160303)
5   (timalger@quinnemanuel.com)
    865 South Figueroa Street, 10th Floor
6   Los Angeles, California 90017-2543
    Telephone: (213) 443-3000
7   Facsimile: (213) 443-3100

8   Attorneys for Mattel, Inc.

9

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

12

| 13  CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
|---|---|
| 14              Plaintiff, | Consolidated with |
|     vs. | Case No. CV 04-09059 |
|     | Case No. CV 05-2727 |
| 16  MATTEL, INC., a Delaware corporation, | MATTEL, INC.'S [CORRECTED] NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY |
| 17              Defendant. | JUDGMENT; AND |
| 18  AND CONSOLIDATED ACTIONS | MEMORANDUM OF POINTS AND |
| 19  | AUTHORITIES |
| 20  | [Declarations of B. Dylan Proctor, Jon Corey, Lee Loetz, Michael Moore, |
| 21  | Rodney Palmer Jr. and Separate Statement of Uncontested Facts and |
| 22  **CONFIDENTIAL -- FILED UNDER** | Uncontested Conclusions of Law, Request for Judicial Notice filed |
| 23  **SEAL** | concurrently herewith] |
| 24  | Date: April 23, 2008 |
| 25  **PURSUANT TO PROTECTIVE ORDER** | Time: 10:00 a.m. Place: Courtroom 1 |
| 26  | **Phase 1** |
| 27  | Discovery Cut-Off:    Jan. 28, 2008 Pre-Trial Conference:   May 5, 2008 |
| 28  | Trial Date:    May 27, 2008 |

EXHIBIT ___2___
PAGE ___28___

3/10

MOTION FOR PARTIAL SUMMARY JUDGMENT

1    TO PLAINTIFFS/COUNTER-DEFENDANTS AND THEIR ATTORNEYS OF

2    RECORD:

3            PLEASE TAKE NOTICE THAT on April 23, 2008 at 10:00 a.m., or as

4    soon thereafter as counsel may be heard, in the Courtroom of the Honorable

5    Steven G. Larson, located at Courtroom 1, plaintiff and counterclaimant Mattel, Inc.

6    ("Mattel") will, and hereby does, move the Court, pursuant to <u>Federal Rule of Civil</u>

7    <u>Procedure</u> 56(a) and 56(d) and L.R. 56-4, for partial summary judgment against

8    defendants Carter Bryant, Isaac Larian, MGA Entertainment Inc. ("MGA"),, and

9    MGA Entertainment (HK), Ltd. ("MGA Hong Kong") in Mattel's favor on the

10   following issues:

11           **(1)** the Employee Confidential Information and Inventions Agreement

12   ("Inventions Agreement") executed by Bryant and Mattel on January 4, 1999 is

13   enforceable;

14           **(2)** under the Inventions Agreement (a) Mattel owns all Bratz-related

15   "inventions" Bryant conceived, created, made, or reduced to practice while he was

16   employed by Mattel, (b) the term "inventions" covers designs, improvements, ideas,

17   concepts, and copyrightable subject matter, such that if Mattel proves at trial that

18   any such items were conceived, created, made, or reduced to practice by Bryant

19   during his Mattel tenure, Mattel will be entitled to a judgment that it owns those

20   inventions, and (c) there is no factual dispute that certain such inventions, including

21   several drawings (Exs. 716-19, 721-22, 724-25, drawing Bates-numbered SL00044)

22   and a dummy model, were conceived, created, made, or reduced to practice during

23   Bryant's Mattel tenure, and hence are owned by Mattel;

24           **(3)** the first-generation Bratz dolls released to the public in the summer

25   of 2001, Copyright Registration Nos. VA 1-090-287, VA 1-090-288, VA 1-090-

26   289, VA 1-090-290 and VA 1-148-305, are substantially similar to seventeen

27   drawings (Ex. 10) and a doll sculpt drawing or blueprint (SL00044) created by

28   Bryant, which are original, protectable works of expression;

EXHIBIT      2

PAGE      29

1    **(4)** Although damages and the full scope of Bryant's wrongdoing may
2    involve disputed facts which need to be decided by the jury, on the undisputed facts
3    Bryant is liable for breach of both the Inventions Agreement and the Conflict of
4    Interest Questionnaire, breach of the duty of loyalty, and breach of fiduciary duty;

5    **(5)** Although damages and the full scope of their wrongdoing may
6    involve disputed facts which need to be decided by the jury, on the undisputed facts
7    MGA and Larian are liable for aiding and abetting Bryant's breaches of the duty of
8    loyalty and fiduciary duty; and

9    **(6)** The affirmative defenses of MGA, Larian and MGA Hong Kong of
10   (a) 17 U.S.C. § 205, (b) bona fide purchaser for value, (c) good faith, (d)
11   acquiescence, (e) abandonment, (f) acts and omissions of others; and the affirmative
12   defenses of MGA, Larian, MGA Hong Kong and Bryant of (a) statute of limitations,
13   (b) laches, (c) waiver, (d) failure to mitigate damages, and (e) estoppel; and the
14   affirmative defense of Bryant of (a) unclean hands and (b) consent, all fail as to
15   Mattel's Phase 1 claims.

16   This motion is based on this Notice of Motion and Motion, the
17   accompanying Memorandum of Points and Authorities, Separate Statement of
18   Uncontested Facts and Conclusions of Law, the Declarations of B. Dylan Proctor
19   ("Proctor Decl."), Jon D. Corey ("Corey Decl."), Lee Loetz ("Loetz Decl."),
20   Michael Moore ("Moore Decl."), and Rodney Palmer Jr. ("Palmer"), and
21   accompanying exhibits to these declarations, Request for Judicial Notice, the
22   records and files of this Court, and all other matters of which the Court may take
23   judicial notice.

Local Rule 7-3 Certification

25   This motion is made following the conference of counsel, which was
26   held pursuant to Local Rule 7.3 on February 15, 2008.

27

28

EXHIBIT ___2___
PAGE ___30___

1   DATED:  March 7, 2008       QUINN EMANUEL URQUHART OLIVER &amp;
2                         HEDGES, LLP

3                       By_____

4                        John B. Quinn
                        Attorneys for Mattel, Inc.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

9/2424109.3

-4-

EXHIBIT   2
PAGE    31

MOTION FOR PARTIAL SUMMARY JUDGMENT

# TABLE OF CONTENTS

**Page**

Preliminary Statement ................................................................................ 1

Argument ................................................................................................... 2

I.    THE INVENTIONS AGREEMENT IS ENFORCEABLE. ........................... 2

    A.    This Court Has Already Ruled the Inventions Agreement
        Enforceable ................................................................................... 3

    B.    Bryant's Work On Bratz Falls Within Section 2870. ................... 4

II.   MATTEL OWNS ANY BRATZ INVENTIONS BRYANT
     CREATED, MADE, CONCEIVED, OR REDUCED TO PRACTICE
     WHILE EMPLOYED BY MATTEL. .......................................................... 6

    A.    The Inventions Agreement Effects A Broad Assignment of
        "Inventions" to Mattel. ................................................................ 6

    B.    Bryant Has Admitted That "Inventing" a Toy is Equivalent to
        Designing a Toy. .......................................................................... 7

    C.    Bryant Has Admitted Inventions "Conceived" During
        Employment With Mattel are Assigned to Mattel ....................... 8

    D.    Bryant Admitted Creating Certain Bratz Drawings and Models
        During His Mattel Tenure. ........................................................... 9

III.  THE FIRST-WAVE BRATZ DOLLS ARE SUBSTANTIALLY
     SIMILAR TO CERTAIN OF BRYANT'S DRAWINGS. ......................... 10

    A.    The First-Wave Bratz Dolls Are Substantially Similar To
        Bryant's Drawings, Which Mattel Has Registered With the
        Copyright Office. ....................................................................... 12

        1.    The Extrinsic Test Shows Substantial Similarity. ...................... 13

        2.    Mattel Also Clearly Satisfies the Intrinsic Test. ........................ 23

    B.    Proof of Substantial Similarity Disposes of Defendants'
        Affirmative Defense of De Minimis Use. .................................. 23

    C.    Bryant's Drawings Are Sufficiently Original To Qualify For
        Copyright Protection. ................................................................. 24

        1.    Bryant Has Admitted That His Drawings are Original
            Works of Authorship. ............................................................ 25

        2.    MGA's Registrations Create a Presumption of
            Copyrightability. ................................................................... 25

09/2424109.3

-i-

EXHIBIT _____2_____

PAGE _____32_____

3.   Defendants Are Estopped from Contradicting Their Prior Sworn Statements That the Drawings Are Original. ................. 26

4.   The Drawings Easily Satisfy the Low Threshold for a Finding of Originality. ....................................... 26

IV.   BRYANT IS LIABLE FOR BREACH OF CONTRACT, BREACH OF THE DUTY OF LOYALTY, AND BREACH OF FIDUCIARY DUTY. ................................................................. 30

A.   Bryant Is Liable for Breach of Contract. ............................. 31

B.   Bryant Is Liable for Breach of the Duty of Loyalty and Breach of Fiduciary Duty. ................................................. 33

1.   Bryant Owed Mattel a Duty of Loyalty and a Fiduciary Duty. ........................................................... 33

2.   Bryant Clearly Breached Both Duties. ........................... 35

V.   MGA AND LARIAN ARE LIABLE FOR AIDING AND ABETTING BRYANT'S BREACHES OF HIS DUTIES. ......................... 39

A.   MGA And Larian Knew That Bryant's Behavior Was In Breach Of His Duty Of Loyalty And His Fiduciary Duty To Mattel. .............. 40

B.   MGA And Larian Substantially Assisted Bryant in Breaching His Duties to Mattel. ................................................... 42

C.   MGA and Larian Profited from Bryant's Breaches. ........................... 43

D.   MGA's and Larian's Aiding and Abetting Conduct Is Fatal to Their Affirmative Defense of Acts or Omissions of Others. .............. 43

VI.   DEFENDANTS' REMAINING AFFIRMATIVE DEFENSES FAIL. ......... 43

A.   Good Faith and 17 U.S.C. § 205. ....................................... 44

1.   Good Faith and 17 U.S.C. § 205 Are Not Valid Defenses to Mattel's Claim For Copyright Infringement ........................... 44

2.   Good Faith Is Not a Defense to Mattel's Strict Liability Claims. ........................................................... 45

3.   Good Faith Is Not a Defense to Mattel's Intentional Tort Claims. ........................................................... 45

4.   In Any Event, Undisputed Evidence Establishes that Defendants Did Not Act in Good Faith. ........................... 46

B.   Statute of Limitations and Laches. ....................................... 46

1.   Applicable Statutes of Limitations. ....................................... 47

2.   Mattel's Original Claims Against Bryant Are Timely. .............. 49

!09/2424109.3

MOTION FOR PARTIAL SUMMARY JUDGMENT
EXHIBIT         2
PAGE            33

3.    Mattel's Amended Claims Against Bryant Are Timely............. 50

4.    Mattel's Claims Against MGA Are Timely............................... 50

5.    Mattel's Claims Against Larian and MGA Hong Kong Are Timely.................................................................................... 51

C.    Laches Does Not Bar Mattel's Claims. ................................................. 52

D.    Waiver and Consent.............................................................................. 54

1.    Waiver................................................................................ 54

2.    Consent. ............................................................................ 58

E.    Abandonment........................................................................................ 59

F.    Estoppel................................................................................................ 59

G.    Acquiescence. ...................................................................................... 61

H.    Unclean Hands...................................................................................... 62

I.    Mitigation Of Damages........................................................................ 64

Conclusion ................................................................................................................. 64

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

19/2424109 3

MOTION FOR PARTIAL SUMMARY JUDGMENT

EXHIBIT ___2___
PAGE ___34___

# TABLE OF AUTHORITIES

**Page**

## Cases

A&M Records, Inc. v. Napster, Inc.,
  239 F.3d 1004 (9th Cir. 2001).................................................................... 52

Abbott v. City of Los Angeles,
  50 Cal. 2d 438 (1958)............................................................................... 49

Am. Cas. Co. of Reading Pa. v. Baker,
  22 F.3d 880 (9th Cir. 1994)...................................................................... 57

Am. President Lines, Ltd. v. Zolin,
  38 Cal. App. 4th 910 (1995)....................................................................... 6

Anderson v. Liberty Lobby, Inc.,
  477 U.S. 242 (1986) .................................................................................. 56

April Enters., Inc. v. KTTV,
  147 Cal. App. 3d 805 (1983).............................................................. 43, 44

Arthur v. Davis,
  126 Cal. App. 3d 684 (1981)..................................................................... 61

Austin v. Mass. Bonding & Ins. Co.,
  56 Cal. 2d 596 (1961)............................................................................... 49

Bancroft-Whitney Co. v. Glen,
  64 Cal. 2d 327 (1966).......................................................................... 31, 39

Bank of the Sierra v. Kallis,
  2006 WL. 3513568 (E.D. Cal. Dec. 6 2006)............................................ 42

Bank of the West v. Superior Court,
  2 Cal.4th 1254 (1992)................................................................................. 6

Bell Atlantic Bus. Sys. Servs., Inc. v. Hitachi Data Sys. Corp,
  1995 WL. 836331 (1995) .......................................................................... 57

Bell Atlantic Business Systems Services, Inc. v. Hitachi Data Systems Corp.,
  1995 WL. 836331 (1995) .......................................................................... 56

In re Bennett,
  298 F.3d 1059 (9th Cir. 2002) .................................................................... 6

Berg & Berg Enters., LLC v. Sherwood Partners, Inc.,
  131 Cal. App. 4th 802 (2005).................................................................... 36

Bono v. Clark,
  103 Cal. App. 4th 1409 (2003)................................................................... 44

-iv-

MOTION FOR PARTIAL SUMMARY JUDGMENT

EXHIBIT ___2___
PAGE ___35___

Brown Bag Software Corp. v. Symantec,
    960 F.2d 1465 (9th Cir. 1992)........................................................... 10

CRST Van Expedited, Inc. v. Werner Enters., Inc.,
    479 F.3d 1099 (9th Cir. 2007)........................................................... 42

Cadence Design Sys., Inc. v. Bhandari,
    2007 WL. 3343085 (N.D. Cal. Nov. 8, 2007)..................................... 4

Casey v. U.S. Bank Nat'l Assoc.,
    127 Cal. App. 4th 1138 (2005)............................................... 36, 39, 42

City & County of San Francisco v. Grant Co.,
    181 Cal. App. 3d 1085 (1986).......................................................... 58

City of Ukiah v. Fones,
    64 Cal. 2d 104 (1966)...................................................................... 52

Classic Concepts, Inc. v. Linen Source, Inc.,
    2006 WL. 4756377 (C.D. Cal. Apr. 27 2006)................................... 61

Community Assisting Recovery, Inc. v. Aegis Ins. Co.,
    92 Cal. App. 4th 886 (2001)............................................................ 41

County of Ventura v. Blackburn,
    362 F.2d 515 (9th Cir. 1966)........................................................... 41

Cubic Corp. v. Marty,
    229 Cal. Rptr. 828 (1986)................................................................. 4

Cummings v. U.S.,
    704 F.2d 437 (9th Cir. 1983)........................................................... 48

Daniel Orifice Fitting Co. v. Whalen,
    198 Cal. App. 2d 791 (1962)............................................... 30, 34, 35

Danjaq LLC v. Sony Corp.,
    263 F.3d 942 (9th Cir. 2001)....................................................... 50, 51

DePinto v. Provident Sec. Life Ins. Co.,
    323 F.2d 826 (9th Cir. 1963)........................................................... 48

Deal v. Consumer Programs, Inc.,
    458 F. Supp. 2d 970 (E.D. Mo. 2005)............................................. 55

Dollar Systems, Inv. v. Avcar Leasing Systems, Inc.,
    890 F.2d 165 (9th Cir. 1989)........................................................... 60

Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.,
    109 F.3d 1394 (9th Cir. 1997)......................................................... 11

Driscoll v. City of L.A.,
    67 Cal. 2d 297 (1967)...................................................................... 57

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Educ. Testing Serv. v. Simon,
  95 F. Supp. 2d 1081 (C.D. Cal. 1999)................................................................10

Emerson Electric Co. v. Rogers,
  418 F.3d 841 (8th Cir. 2005)...............................................................................54

Feist Publications, Inc. v. Rural Telephone Service Co.,
  499 U.S. 340 (1991)...........................................................................................24

Fisher-Price Toys v. My-Toy Co.,
  385 F. Supp. 218 (S.D.N.Y. 1974)......................................................................19

Fisher v. Dees,
  794 F.2d 432 (9th Cir. 1986)...............................................................................20

Fleisher Studios v. Ralph A. Freundlich, Inc.,
  73 F.2d 276 (2d Cir. 1934).................................................................................20

Fowler v. Varian Assocs. Inc.,
  196 Cal. App. 3d 34 (1987)...........................................................................29, 35

Fox v. Ethicon Endo-Surgery, Inc.,
  35 Cal. 4th 797 (2005)...................................................................................44, 45

GAB Bus. Svcs, Inc. v. Lindsey & Newsom Claim Servs., Inc.,
  83 Cal. App. 4th 409 (2000).................................................................................30

Garamendi v. SDI Vendome S.A.,
  276 F. Supp. 2d 1030 (C.D. Cal. 2003)................................................................45

Greenawalt v. Rogers,
  151 Cal. 630 (1907)............................................................................................56

Grudt v. City of Los Angeles,
  2 Cal. 3d 575 (1970)..........................................................................................47

Gund v. Russ Berrie & Co.,
  701 F. Supp. 1013 (S.D.N.Y. 1988)....................................................................19

Hamilton v. State Farm Fire & Cas. Co.,
  270 F.3d 778 (9th Cir. 2001)...............................................................................22

Hampton v. Paramount Pictures Corp.,
  279 F.2d 100 (9th Cir.).......................................................................................56

Harper & Row Publishers, Inc. v. Nation Enters.,
  471 U.S. 539 (1985)............................................................................................14

Hobson v. Wilson,
  737 F.2d 1 (D.C. Cir. 1984), cert. denied, 470 U.S. 1084 (1985).................45, 46

Howard Jarvis Taxpayers Ass'n v. City of La Habra,
  25 Cal. 4th 809 (2001).......................................................................................44

-vi-

MOTION FOR PARTIAL SUMMARY JUDGMENT
EXHIBIT _____ 2
PAGE _____ 37

J. C. Peacock, Inc. v. Hasko,
196 Cal. App. 2d 353 (1961) ................................................................. 29, 30, 35

JCW Investments, Inc. v. Novelty, Inc.,
482 F.3d 910 (7th Cir. 2007) .......................................................................... 26

JCW Invs., Inc. v. Novelty, Inc.,
289 F. Supp. 2d 1023 (N.D. Ill. 2003), aff'd 482 F.3d 910 (7th Cir. 2007) .......... 10

JW/EAI,
1994 WL. 16458729 (N.D. Cal. 1993) .............................................................. 53

Jarrow Formulas, Inc. v. Nutrition Now, Inc.,
304 F.3d 829 (9th Cir. 2002) ......................................................................... 50

Kamar Intern., Inc. v. Russ Berrie and Co.
657 F.2d 1059 (9th Cir. 1981) ........................................................................ 25

Kendall-Jackson Winery Ltd v. Superior Court,
76 Cal. App. 4th 970 (1999) ........................................................................... 60

King Features Syndicate v. Fleisher,
299 F. 533 (2d Cir. 1924) .............................................................................. 20

Kling v. Hallmark Cards Inc.,
225 F.3d 1030 (9th Cir. 2000) ........................................................................ 51

Korea Supply Co. v. Lockheed Martin Corp.,
109 Cal. Rptr. 2d 417 (2001), rev'd on other grounds, 29 Cal.4th 1134 (2003) .. 43

L.A. News Serv. v. Conus Commc'n Co.,
969 F. Supp. 579 (C.D. Cal. 1997) .................................................................. 41

Litchfield v. Spielberg,
736 F.2d 1352 (9th Cir. 1984) ........................................................................ 12

Lopez v. Electrical Rebuilders, Inc.,
416 F. Supp. 1133 (C.D. Cal. 1976) ................................................................. 56

Lyons P'ship, L.P. v. Morris Costumes, Inc.,
243 F.3d 789 (4th Cir. 2001) ......................................................................... 50

Magnesystems, Inc.v. Nikken, Inc.,
933 F. Supp. 944 (C.D.Cal. 1996) ................................................................... 61

Mandracio v. Bartenders Union, Local 41,
41 Cal. 2d 81 (1953) .............................................................................. 50, iii

Marasco v. Wadsworth,
21 Cal. 3d 82 (1978) ..................................................................................... 49

Martel v. Trilogy Ltd.,
872 F.2d 322 (9th Cir. 1989) ......................................................................... 47

MOTION FOR PARTIAL SUMMARY JUDGMENT

EXHIBIT _____ 2
PAGE _____ 38

09/2424109.3

Mass. Mutual Life Ins. Co. v. Superior Court,
97 Cal. App. 4th 1282 (2002)..................................................................44

Mattel, Inc. v. Goldberger Doll Mfg. Co.,
365 F.3d 133 (2d Cir. 2004).............................................................25, 26

Meta-Film Assoc., Inc. v. MCA, Inc.,
586 F. Supp. 1346 (C.D. Cal. 1984)......................................................10

Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.,
518 F. Supp. 2d 1197 (9th Cir. 2007)........................................54, 57, 58

Michelson v. Hamada,
29 Cal. App. 4th 1566 (1994)..................................................................31

Micro Star v. Formgen Inc.,
154 F.3d 1107 (9th Cir. 1998)..................................................................56

Miller v. Maxwell's Int'l Inc.,
991 F.2d 583 (9th Cir. 1993)....................................................................50

Myers v. Phillip Morris, Inc.,
2003 WL. 21756086 (E.D. Cal. 2003)....................................................49

Neilson v. Union Bank of Calif.,
290 F. Supp. 2d 1101 (C.D. Cal. 2003)............................................36, 39

North Coast Indus. v. Jason Maxwell, Inc.,
972 F.2d 1031 (9th Cir. 1992)..................................................................24

Novell Inv. v. Weird Stuff, Inc.,
No. C92-20467 ........................................................................53, 54, 58

Olson v. Nat'l Broad. Co.,
855 F.2d 1446 (9th Cir. 1988)..................................................................12

PMC, Inc. v. Kadisha,
78 Cal. App. 4th 1368 (2000)..................................................................42

Palo Alto Mut. Bldg. & Loan Ass'n v. First Nat'l Bank,
33 Cal. App. 214 (1917)...........................................................................32

Pivot Point Int'l, Inc. v. Charlene Prods., Inc.,
372 F.3d 913 (7th Cir. 2004)....................................................................19

Pochopien v. Marshall, O'Toole, Gerstein, Murray & Borun,
315 Ill. App. 3d 329 (Ill. App. 2000).......................................................55

Pye v. Mitchell,
574 F.2d 476 (9th Cir. 1978)....................................................................41

R. Dakin & Co. v. A & L Novelty Co., Inc.,
444 F. Supp. 1080 (E.D.N.Y. 1978)..................................................24, 25

209/2424109.3

MOTION FOR PARTIAL SUMMARY JUDGMENT

EXHIBIT _____ 2
PAGE _____ 39

Rambus Inc. v. Samsung Electronics Co.,
    2007 WL. 39374 (N.D. Cal. 2007)...............................................................44

Reeves v. Hanlon,
    33 Cal. 4th 1140 (2004)..............................................................................30

River Colony Estates Gen. P'ship v. Bayview Fin. Trading Group, Inc.,
    287 F. Supp. 2d 1213 (S.D.Cal. 2003)........................................................36

Roley v. New World Pictures, Ltd.,
    19 F.3d 479 (9th Cir. 1994)...................................................................43, 48

Russell v. Price,
    612 F.2d 1123 (9th Cir. 1979)....................................................................51

Russell v. Rolfs,
    893 F.2d 1033 (9th Cir. 1990)....................................................................22

Sawyer v. Sonoma County,
    719 F.2d 1001 (9th Cir. 1983)....................................................................57

Securities and Exchange Commission v. Lincoln Thrift Ass'n,
    557 F.2d 1274 (9th Cir. 1977).....................................................................52

Sequoia Vacuum Sys. v. Stransky,
    229 Cal. App. 2d 281 (1964).......................................................................34

Shaw v. Lindheim,
    919 F.2d 1353 (9th Cir. 1990).....................................................................19

Sheet Metal Workers, Int'l Ass'n Local Union No. 24 v.
    Architectural Metal Works, Inc.,
    259 F.3d 418 (6th Cir. 2001)........................................................................6

Sheldon v. Metro-Goldwyn Pictures Corp.,
    81 F.2d 49 (2d Cir. 1936)...........................................................................14

Sid & Marty Krofft Television Prods., Inc. v. McDonalds Corp.,
    562 F.2d 1157 (9th Cir. 1977)..........................................................10, 11, 12

Smeltzley v. Nicholson Mfg. Co.,
    18 Cal. 3d 932 (1977)................................................................................49

Snow v. A.H. Robins Co.,
    165 Cal. App. 3d 120 (1985)......................................................................45

Stevens v. Marco,
    147 Cal. App. 2d 357 (1956).......................................................................31

Stokes v. Dole Nut Co.,
    41 Cal. App. 4th 285 (1995)...................................................................29, 35

Three Boys Music Corp. v. Bolton,
    212 F.3d 477 (9th Cir. 2000)................................................................11, 24

09/2424109.3

MOTION FOR PARTIAL SUMMARY JUDGMENT

EXHIBIT _____2_____
PAGE _____40_____

1   Transgo, Inc. v. Ajac Transmission Parts Corp.,
2       768 F.2d 1001 (9th Cir. 1985).................................................................22

    U. S. v. King Features Entm't, Inc.,
3       843 F.2d 394 (9th Cir. 1988)..............................................................52, 57

4   U.S. v. Union Pacific R. Co.,
5       2008 WL. 413765 (E.D.Cal. 2008) ......................................................61

    Unilogic, Inc. v. Burroughs Corp.,
6       10 Cal. App. 4th 612 (1992) ...................................................................50

7   Vernon v. Heckler,
8       811 F.2d 1274 (9th Cir. 1987)................................................................27

    Virtanen v. O'Connell,
9       140 Cal. App. 4th 688 (2006) .................................................................41

10  Wells Fargo Bank v. Bank of America,
    32 Cal. App. 4th 424 (1995) ...................................................................50
11
    Westinghouse Elec. Corp. v. General Circuit Breaker & Elec. Supply Inc.,
12      106 F.3d 894 (9th Cir. 1997)..................................................................45

13  Zivkovic v. Southern California Edison Co.,
    302 F.3d 1080 (9th Cir. 2002) ................................................................42
14

15                                    **Statutes**

16  17 U.S.C. § 102....................................................................................21

17  17 U.S.C. § 205.........................................................................40, 41, 62

18  17 U.S.C. § 410(c) .................................................................................22

19  17 U.S.C. § 507....................................................................................48

20  17 U.S.C. § 507(b) .................................................................................43

21  Cal. Bus. & Prof. Code § 16600 .............................................................3

22  Cal. Bus. & Prof. Code § 17208 ...........................................................44

23  Cal. Civ. Code § 1639 .........................................................................5, 6

24  Cal. Code Civ. Pro. § 3426.6 ..........................................................43, 44

25  Cal. Labor Code § 96(k) .........................................................................3

26  Cal. Labor Code § 98.6............................................................................3

27  Labor Code § 232 ...................................................................................3

28  Labor Code § 232.5 .................................................................................3

1   Cal. Labor Code § 2699 ...................................................................................... 3

2   Cal. Labor Code § 2856 .................................................................................... 30

3   Cal. Labor Code § 2860 .................................................................................... 30

4   Cal. Labor Code § 2863 .................................................................................... 30

5   Cal. Labor Code § 2870 .......................................................................... 3, 4, 5, 6

6   Cal. Labor Code § 2872 ...................................................................................... 4

7   Fed. R. Civ. P. 15(c) .................................................................................. 47, 49

8   Fed. R. Civ. P. 15(c)(1)(B) ............................................................................... 47

9   Fed. R. Civ. P. 56(d)(2) ............................................................................. 27, 57

10

## Other Authorities

11   4 Kirby Wilcox and Erica Grubb, California Employment Law § 70.04 (2003) ...... 29

12   B.E. Witkin, Summary of California Law, Equity § 14(a)(2) (9th ed. 1987) ........... 49

13   Charles Alan Wright, et al., Federal Practice And Procedure,
       § 4477 at 587 (3d ed. 2002) ........................................................................... 22, 23
14

15   Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 13.06 ................. 52

16   Melville B. Nimmer & David Nimmer, Nimmer on Copyright §12.11[B][1]
       ....................................................................................................................... 22, 24
17

18   Restatement (Second) of Agency §§ 393, 403, 429, 469 (1958) ............................. 30

     Wm. Moore, MOORE'S FEDERAL PRACTICE 3d, § 15.20[3] at 15-126 ............. 49

19

20

21

22

23

24

25

26

27

28

MOTION FOR PARTIAL SUMMARY JUDGMENT

EXHIBIT _____ 2
PAGE _____ 72

1    Mattel's claims for aiding and abetting a breach of loyalty or a breach

2    of fiduciary duty and for interference with contract clearly fall within this category.

3    See, e.g., CRST Van Expedited, Inc. v. Werner Enters., Inc., 479 F.3d 1099, 1105

4    (9th Cir. 2007) (interference with contract); PMC, Inc. v. Kadisha, 78 Cal. App. 4th

5    1368, 1382 (2000) (misappropriation of trade secrets); Casey v. U.S. Bank Nat'l

6    Ass'n, 127 Cal. App. 4th 1138, 1144 (2005) (aiding and abetting).[130] Accordingly,

7    defendants' assertion of good faith defenses as to these claims is also misplaced, and

8    the defenses should be rejected.

9    **4.    In Any Event, Undisputed Evidence Establishes that**

10   **Defendants Did Not Act in Good Faith.**

11   Even if good faith were theoretically available as an affirmative

12   defense to some or all of Mattel's claims, no reasonable juror could find it on the

13   facts here.  Defendants did not receive the copyright transfer in good faith because

14   the evidentiary record can only lead to a finding that defendants aided and abetted

15   Bryant's breaches of his fiduciary duty and duty of loyalty to Mattel.  We discussed

16   that evidence in Point V, supra; we will not burden the Court by repeating it here.

17   At bottom, defendants have misrepresented and concealed too much and for too

18   long to argue now with any credibility that they acted in good faith.  Therefore, even

19   if defendants could pursue a good faith defense -- and, as a matter of law, they

20   cannot -- the undisputed evidence demonstrates that the defense has no basis in fact.

21   **B.    Statute of Limitations and Laches.**

22   There is no genuine dispute of fact here.  Mattel's claims are timely.

23

24

---

25   [130]   Mattel also asserts claims for breach of fiduciary duty and breach of the duty

26   of loyalty against Bryant.  Bryant initially asserted a good faith defense, but

27   withdrew it in his amended answer.  UF 115 (Bryant's Amended Reply to Mattel's

28   Counterclaims).    Although Bryant purports to incorporate by reference the affirmative defenses of other defendants, it is evident that MGA's purported good faith cannot excuse Bryant's breaches of his duty of loyalty and fiduciary duty.

EXHIBIT    2
PAGE    73

1    **1.    Applicable Statutes of Limitations.**

2    We begin by identifying each claim's limitations period.

| Claim | Statute of Limitations | Accrual |
|---|---|---|
| Copyright Infringement | rolling 3 years (17 U.S.C. § 507(b)) | upon discovery (see Roley v. New World Pictures, Ltd., 19 F.3d 479, 481 (9th Cir. 1994)) |
| Misappropriation of Trade Secrets | 3 years (Cal. Code Civ. Pro. § 3426.6) | upon discovery (see Cal. Code Civ. Pro. § 3426.6) |
| Breach of Contract | 4 years (Cal. Code Civ. Pro. § 337(1)) | upon discovery where there is concealment (see April Enters., Inc. v. KTTV, 147 Cal. App. 3d 805, 831 (1983)) |
| Interference with Contract | 2 years (Cal. Code Civ. Pro. § 339(1)) | upon discovery (see Korea Supply Co. v. Lockheed Martin Corp., 109 Cal.Rptr. 2d 417, 428-9 (2001), rev'd on other grounds, 29 Cal.4th 1134 (2003)) |
| Breach of Fiduciary Duty | 4 years if gravamen of claim is not fraud (Cal. Code Civ. Pro. § 343) | upon discovery (see April Enters., 147 Cal. App. 3d at 827) |
| Aiding and Abetting Breach of Fiduciary Duty | 2 years (see Rambus Inc. v. Samsung Electronics Co., 2007 WL 39374, at *3 n.4 (N.D. Cal. 2007)) | upon discovery (see April Enters., 147 Cal. App. 3d at 827) |
| Breach of Duty of Loyalty | 3 years (by analogy to breach of fiduciary duty) | upon discovery (by analogy to breach of fiduciary duty) |
| Aiding and Abetting Breach of Duty of Loyalty | 2 years (by analogy to aiding and abetting breach of fiduciary duty) | upon discovery (by analogy to aiding and abetting breach of fiduciary duty) |
| Conversion | 3 years (Cal. Code Civ. Pro. § 338(c)) | upon act of wrongfully taking property (see Bono v. Clark, 103 Cal. App. 4th 1409, 1433 (2003)), but the discovery rule applies in cases where "a fiduciary has concealed the material facts giving rise to the cause of action." Id. |
| Unfair Competition | 2 years if based on common law (Cal. Code Civ. Pro. § 339(1)); 4 years if based on | upon discovery (see, e.g., Mass. Mutual Life Ins. Co. v. Superior Court, 97 Cal. |

209/2424109.3

MOTION FOR PARTIAL SUMMARY JUDGMENT

EXHIBIT _____2_____
PAGE _____44_____

| | statute (Cal. Bus. & Prof. Code § 17208) | App.4th 1282, 1295 (2002)) |
|---|---|---|
| Declaratory Relief | period applicable to underlying claim (see Howard Jarvis Taxpayers Ass'n v. City of La Habra, 25 Cal.4th 809, 821 (2001)) | accrual applicable to underlying claim (see Howard Jarvis Taxpayers Ass'n, 25 Cal.4th at 821) |

A claim accrues when the plaintiff could have discovered the factual basis for the wrongful acts alleged in the complaint. See, e.g., Fox v. Ethicon Endo-Surgery, Inc., 35 Cal. 4th 797 (2005). In Fox, a patient filed a medical malpractice action against her surgeon. After learning in discovery about a potential surgical equipment malfunction, she amended her complaint to include a product liability claim against the equipment manufacturer. The California Supreme Court held that the plaintiff's product liability claim was timely because "if a plaintiff's reasonable and diligent investigation discloses only one kind of wrongdoing when the injury was actually caused by tortious conduct of a wholly different sort, the discovery rule postpones accrual of the statute of limitations on the newly discovered claim." Id. at 813 (emphasis added). See also Westinghouse Elec. Corp. v. General Circuit Breaker & Elec. Supply Inc., 106 F.3d 894, 899 (9th Cir. 1997) (citing Hobson v. Wilson, 737 F.2d 1, 35 (D.C. Cir. 1984), cert. denied, 470 U.S. 1084 (1985)) (the party asserting the time bar must prove that the opposing party knew of facts giving it notice of the specific cause of action at issue, not just any cause of action); Snow v. A.H. Robins Co., 165 Cal. App. 3d 120, 124 (1985) (plaintiff's fraud claim based upon the manufacturer's concealment of product defect rates accrued upon her discovery of the misrepresentation, not when she learned that the product failed). Thus, the pertinent question for accrual is when the plaintiff discovered the specific misconduct for which it has sued.

Moreover, a plaintiff is "on notice" of a claim only when he has "an awareness of sufficient facts to identify a particular cause of action, be it a tort, a constitutional violation or a claim of fraud. [It does] not mean the kind of notice—

-48-

1  based on hints, suspicions, hunches or rumors—that requires a plaintiff to make
2  inquiries in the exercise of due diligence, but not to file suit." <u>Garamendi v. SDI</u>
3  <u>Vendome S.A.</u>, 276 F. Supp. 2d 1030, 1043 (C.D. Cal. 2003) (quoting <u>Hobson</u>,
4  737 F.2d at 35).

5     **2.** **Mattel's Original Claims Against Bryant Are Timely.**

6     Mattel filed suit against Bryant on April 27, 2004, alleging several state
7  law claims including breach of contract and breach of duty of loyalty.[131] There is no
8  reasonable dispute that these claims were timely. Those claims subject to a three-
9  year limitations period are timely unless Mattel had notice of them prior to April 27,
10 2001, and claims subject to a two-year limitations period are timely unless Mattel
11 had notice of them prior to April 27, 2002. Bryant has adduced no facts supporting
12 an earlier date. To the contrary, the evidence shows that Mattel did not know the
13 facts of Bryant's disloyalty until November 24, 2003, when Mattel's in-house
14 counsel learned through discovery in another action that Bryant had entered a
15 contract with MGA while still employed by Mattel.[132] Indeed, this Court ruled in
16 denying defendants' motion for terminating sanctions that "November 24, 2003[]
17 marks the date when litigation between Mattel and Bryant became more than merely
18 speculative and in fact became probable."[133]

19
20
21
22
23
24
25
26

  [131] UF 70.

27    [132] UF 26.

28    [133] <u>Id.</u> (emphasis added).

09/2424109.3

-49-

EXHIBIT   2
PAGE   46

### 3. Mattel's Amended Claims Against Bryant Are Timely.

Mattel added a claim for copyright infringement against Bryant when it moved to amend on November 20, 2006.[134] "[A] claim relates back if it "arose out of the conduct, transaction, or occurrence set out — or attempted to be set out — in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). Here, the claim relates back to the filing date of the original complaint because it arises from the same transaction or occurrence as Mattel's other claims, i.e., working with MGA while employed by Mattel and creating Bratz while employed by Mattel.   Martel v. Trilogy Ltd., 872 F.2d 322, 327 (9th Cir. 1989) (new claim related back because it arose from the same transaction and occurrence as original claim); Grudt v. City of Los Angeles, 2 Cal. 3d 575, 583-84 (1970) (holding that amended complaint related back to filing of original complaint where new claim added new theory of recovery based on same acts and same injury alleged in original pleading).   The Court has already held that Mattel's copyright claim against Bryant relates back under Fed. R. Civ. P. 15(c) to Mattel's original complaint against Bryant.[135]   That ruling should not be disturbed.

### 4. Mattel's Claims Against MGA Are Timely.

MGA intervened as defendant in Mattel's action against Bryant in December 2004.   As it pertains to Phase I, Mattel's amended pleading added interference with contract, aiding and abetting and copyright infringement claims against MGA, based on MGA's substantial assistance of Bryant's breaches of his duties to Mattel, and its copying of Mattel's copyrighted materials.   As this Court ruled in the January 11, 2007 Order (at 12-15), the relation-back principle applies to MGA even though it was not named a defendant in Mattel's original complaint, but rather intervened as a defendant thereafter.   See also Cummings v. U.S., 704 F.2d

---

[134]   UF 72.

[135]   See UF 75 (Order dated Jan. 11, 2007, at 13 ("By MGA's own admission Mattel's copyright claim arises out of the same conduct or transaction contained in the original complaint filed in April, 2004 …")).

-50-

437 (9th Cir. 1983) (claimant's insurer's complaint in intervention seeking to enforce its right of subrogation related back to filing of claimant's original complaint); DePinto v. Provident Sec. Life Ins. Co., 323 F.2d 826, 831-32 (9th Cir. 1963) (intervention of a party plaintiff that shared interests with the original plaintiff related back for statute of limitations purposes).[136]

The fact that Mattel, as it was given leave, asserted these claims against MGA as counter-claims to MGA's complaint in the 05-2727 action does not alter the conclusion that these claims are timely.  In the order granting Mattel leave to assert these claims as counterclaims, the Court held, "None of the substantive concerns raised by MGA and Bryant to the present amended complaint, e.g., statutes of limitations, would appear to be affected if the new claims and defendants were brought as defenses and counterclaims in the 05-2727 case as opposed to the 04-9059 one."

### 5.    Mattel's Claims Against Larian and MGA Hong Kong Are Timely.

Mattel's amended pleading substituted Isaac Larian and MGA Hong Kong as "Doe defendants."  The Phase I claims against Larian include aiding and abetting Bryant's breaches, interference with contract, conversion, unfair competition and copyright infringement.  The Phase I claims against MGA Hong Kong include copyright infringement, conversion, and unfair competition.  The Court held -- and defendants cannot now dispute -- that Mattel's claims against them are also timely because they arise from the same general set of facts as the claims

---

[136] The copyright claim against MGA would also be timely even if did not relate back (which it does). The statute of limitations for a copyright infringement claim is three years.   17 U.S.C.  § 507.   Mattel sought to amend its complaint, on November 20, 2006, less than three years after discovering the infringement. Roley v. New World Pictures, Ltd., 19 F.3d 479, 481 (9th Cir. 1994) ("A cause of action for copyright infringement accrues when one has knowledge of a violation or is chargeable with such knowledge.") (citation omitted).

MOTION FOR PARTIAL SUMMARY JUDGMENT

EXHIBIT _____ 2

PAGE _____ 48

1    against Bryant.[137]  Specifically, the claims are based Bryant's purported assignment

2    of works that he created at Mattel to MGA, his breaches of duties to Mattel, and the

3    MGA defendants' claims to Bratz.

4           The Court's order was correct.  Under Rule 15(c), the state relation

5    back rules apply if state law provides "the applicable statute of limitations."  See

6    also Wm. Moore, MOORE'S FEDERAL PRACTICE 3d, § 15.20[3] at 15-126.

7    ("When a state relation-back rule is more generous than the federal relation-back

8    rule, the more generous state rule should apply.").  California favors "liberality in

9    the amendment of pleadings to encourage litigating causes on their merits."

10   Myers v. Philip Morris, Inc., 2003 WL 21756086 at *4 (E.D. Cal. 2003) (quoting

11   Marasco v. Wadsworth, 21 Cal. 3d 82, 89 (1978)).  Under California relation-back

12   doctrine, the claims against new defendants, who were previously sued as Does,

13   relate back to the date of the original complaint, as long as they are based on the

14   same general set of facts.  See, e.g., Smeltzley v. Nicholson Mfg. Co., 18 Cal.

15   3d 932 (1977); Austin v. Mass. Bonding & Ins. Co., 56 Cal. 2d 596, 600 (1961).

16   Accordingly, the claims against the newly-named defendants relate back to the

17   original timely complaint, and these defendants' statute of limitations defense fails.

18        C.    **Laches Does Not Bar Mattel's Claims.**

19           At the threshold, "[l]aches is not available as a defense to [a state-law

20   based] action at law."[138]  Abbott v. City of Los Angeles, 50 Cal. 2d 438, 462 (1958);

21

22

---

[137]  UF 118, 127.

[138]  While some Ninth Circuit precedent holds that laches can bar a statutorily
timely federal copyright claim, it will do so only in "unusual" or "extraordinary"
circumstances not present here.  See, e.g., Danjaq LLC v. Sony Corp., 263 F.3d 942,
954 (9th Cir. 2001) (plaintiff's 1998 lawsuit based on films released between 1962
and 1977 was barred by laches, even though claims were statutorily timely because
of recent DVD re-releases); but see Miller v. Maxwell's Int'l Inc., 991 F.2d 583,
586 (9th Cir. 1993) ("The doctrine of laches is inapplicable when Congress has
provided a statute of limitations to govern the action."); Lyons P'ship, L.P. v. Morris
(footnote continued)

7309/2424109.3

-52-

EXHIBIT _____2_____
PAGE _____79_____

1  see also 11 B.E. WITKIN, SUMMARY OF CALIFORNIA LAW, EQUITY § 14(a)(2) (9th ed.

2  1987) ("Laches can be asserted only in a suit in equity; an action at law may be

3  brought at any time within the period of the statute of limitations."). "The equitable

4  doctrine of laches has a legal equivalent in the statute of limitations. To allow a

5  laches defense in a legal action would be to override a time limit mandated by the

6  Legislature." Unilogic, Inc. v. Burroughs Corp., 10 Cal. App. 4th 612, 619 (1992).

7        At best for defendants,, the only state-law equitable claims here are for

8  unfair competition and declaratory relief. (We note that these claims are arguably

9  legal because the nature of the underlying claim -- to establish that all profits from

10  Bratz should be placed in a constructive trust[139] -- resembles an action at law for

11  money damages. See, e.g., Wells Fargo Bank v. Bank of America, 32 Cal. App. 4th

12  424, 439 (1995) ("Although declaratory relief is an equitable proceeding, whether

13  laches is available in a declaratory relief proceeding depends upon the nature of the

14  underlying claim.")  As demonstrated above, however, Mattel satisfied the statute of

15  limitations for these claims.  Only in the rarest of circumstances can a claim that

16  satisfies the statute of limitations be barred as untimely by laches.  See, e.g., Jarrow

17  Formulas, Inc. v. Nutrition Now, Inc., 304 F.3d 829, 835-36 (9th Cir. 2002) ("[A]

18  laches determination is made with reference to the limitations period for the

19  analogous action at law.  If the plaintiff filed suit within the analogous limitations

20  period, the strong presumption is that laches is inapplicable."); Kling v. Hallmark

21  Cards Inc., 225 F.3d 1030, 1041, n.8 (9th Cir. 2000) ("When a limitation on the

22  period for bringing suit has been set by statute, laches will generally not be invoked

23  to shorten the statutory period.") (quoting Advanced Cardiovascular Sys., Inc. v.

24  SciMed Life Sys., Inc., 988 F.2d 1157, 1161 (Fed. Cir. 1993)).

25  _____

26  Costumes, Inc., 243 F.3d 789, 798 (4th Cir. 2001) (same).  The purported delays

27  alleged by Bryant here are neither unusual nor particularly lengthy, especially
compared to the decades-long prejudicial delay in Danjaq.

28    [139]  UF 119 (Mattel's Second Amended Answer ¶ 169).

209/2424109.3

-53-

EXHIBIT _____2_____

PAGE _____50_____

1    In any event, on the undisputed facts Defendants cannot satisfy the

2    delay or prejudice elements of the laches doctrine. See, e.g., Kling, 225 F.3d

3    at 1036 (defendant must show "both an unreasonable delay . . . and prejudice to

4    itself") (quotation omitted).   There is simply no evidence of unreasonable delay.

5    Further, defendants were not prejudiced because they did not rely on Mattel's

6    alleged delay; rather, they proceeded with developing and producing Bratz dolls

7    both before and after Mattel brought suit.[140]   See, e.g, Russell v. Price, 612 F.2d

8    1123, 1125-2f6 (9th Cir. 1979) ("Defendants at no time changed their film

9    distribution activities in reliance on [plaintiff's] conduct."); Danjaq, LLC v. Sony

10    Corp., 263 F.3d 942, 955 (9th Cir. 2001) ("A defendant may also demonstrate

11    prejudice by showing that it took actions or suffered consequences that it would not

12    have, had the plaintiff brought suit promptly.").   Nor is there any evidence that they

13    would have ceased producing Bratz had Mattel sued earlier, as defendants claim it

14    should have.

15        **D.    Waiver and Consent.**

16            **1.    Waiver.**

17            As an initial matter, the plain language of the Inventions Agreement

18    precludes waiver (and, therefore, consent) defenses.   In the Inventions Agreement,

19    Bryant acknowledged that his "obligations under this Agreement may not be

20    modified or terminated, in whole or in part, <u>except in writing</u> signed by a Vice-

21    President of the Company."[141]   See Securities and Exchange Commission v. Lincoln

22    Thrift Ass'n, 557 F.2d 1274, 1278 (9th Cir. 1977) (existence of nonwaiver clauses

23    was "important fact[]" militating against finding of waiver).   No authorized Mattel

24    executive ever provided Bryant with written consent to his assignment of Bratz to

25

26

_____

27    [140]   UF 120.

28    [141]   UF 77 (Inventions Agreement at ¶ 4(a))(emphasis added).

MOTION FOR PARTIAL SUMMARY JUDGMENT

EXHIBIT _____2_____
PAGE _____51_____

1 ‖ DATED:  March 7, 2008          QUINN EMANUEL URQUHART OLIVER &
2                                  HEDGES, LLP

3                                  By _____

4                                    John B. Quinn
                                     Attorneys for Mattel, Inc.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

7209/2424109.3

MOTION FOR PARTIAL SUMMARY JUDGMENT

EXHIBIT ___2___
PAGE ___52___