# EXHIBIT 8

EXHIBIT ___8___
PAGE ___176___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA  92501
CIVIL MINUTES – GENERAL

Case No.   CV 04-09049 SGL(RNBx)                          Date:  May 27, 2008
Title:      CARTER BRYANT -v- MATTEL, INC.

Consolidated With Related Actions:
CASE NO. CV 04-09059 SGL(RNBx):  MATTEL, INC.,  v. CARTER BRYANT,
CASE NO. CV 05-02727 SGL (RNBx): MGA ENTERTAINMENT, INC., v. MATTEL, INC.,
===============================================================
PRESENT:  HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

                    Gina Guzman
                    Courtroom Deputy Clerk

ATTORNEYS PRESENT FOR CARTER BRYANT:        ATTORNEYS PRESENT FOR MATTEL:

None Present                                None Present


ATTORNEYS PRESENT FOR MGA AND
ISAAC LARIAN:

None Present

PROCEEDINGS:    **ORDER RE STATUTE OF LIMITATIONS DEFENSE**

        Each of the remaining parties to this action, Mattel and MGA, seek summary judgment on
the issue of statute of limitations.  Crucial to resolution of this issue, is application of California's
"discovery rule," which can delay the accrual of a claim.  Both parties have offered evidence in
support of their positions.[1]  For its part, Mattel contends that its claims against Carter Bryant arose
on November 24, 2003, and that its claims against the MGA entities, including MGA CEO Isaac
Larian, arose on November 4, 2004, the date of Carter Bryant's deposition, at which he testified
regarding MGA and Larian's involvement in his actions.

_____

        [1]  Although he is no longer a party, the Court discusses at length the timeliness of the
claims asserted against Carter Bryant because it is relevant to the Court's relation-back analysis of
the claims asserted against MGA.

MINUTES FORM 90                                              Initials of Deputy Clerk: gg
CIVIL -- GEN                        Page 1                   Time:  0/00


EXHIBIT _____8_____
PAGE _____177____

At oral argument and in its briefs, MGA argues at length that Mattel's claims against Bryant accrued some time shortly after Bryant left Mattel's employ in October, 2000. In support of this argument, MGA offered evidence that Mattel has always believed that it took nine months to bring a doll through the stages of development and to market. From that knowledge, in MGA's view, the sudden appearance of the Bratz dolls at a toy fair in Tokyo in January, 2001, should have aroused their suspicions.

MGA cites to the deposition of Bryant's co-worker, who had suspicions at the time Bryant resigned that Bryant was going to work for a competitor based on her subjective belief that Bryant would not pursue any other vocation other than doll designer.

MGA contends that Mattel could have looked at Bryant's phone records and determined that he had called MGA a number of times during the month pre-dating his resignation.

There is evidence that one of Bryant's co-workers believed it was "common knowledge," sometime in 2001, that Bryant probably designed Bratz.

The undisputed facts establish that in August, 2002, an anonymous letter was sent to Mattel's CEO stating that Bryant had designed Bratz. This letter is the first indication that Bryant may have worked on Bratz during the period of his employment with Mattel. See Zeller Decl. Ex. 63 ("While he was working with Mattel and working to create these dolls he worked out a deal with MGA that let him collect a large sum of money each year from MGA in exchange for his secrecy about the dolls and the fact that they are rightly Mattel dolls.").

The undisputed facts also establish that on July 18, 2003, the Wall Street Journal published an article entitled "Dolled Up: To Lure Older Girls, Mattel Brings In Hip-Hop Crowd." In that article, MGA's CEO Isaac Larian is attributed with a statement that Carter Bryant was the creator of Bratz. The article states:

> Isaac Larian, chief executive of MGA, says he had never heard of a project similar to the Bratz at Mattel. He says he chose Mr. Bryant's idea for Bryant over several others after holding a sort of fashion-doll design contest in late 1999.

Zeller Decl. Ex. 118.

At the close of the second hearing, held on May 19, 2008, MGA offered, for the first time, evidence in the form of a time line that showed that a "claim" from a lawsuit filed in Hong Kong by MGA was received by Mattel on September 23, 2003. See Bogorad Supp. Decl. Ex. 145. A copy of court documents from that litigation shows that MGA claimed ownership of Bratz fashion dolls and that, more specifically, at issue were "17 design drawings of various fashion dolls between the years 1998 and 2000." Id. at Ex. 143. Exhibit 143 is a ten-page document captioned as "STATEMENT OF CLAIM" and appears to the Court to be, under Hong Kong law, the equivalent of a complaint. MGA's ownership to the 17 drawings referenced in the "STATEMENT OF CLAIM"

MINUTES FORM 90
CIVIL -- GEN

Page 2

Initials of Deputy Clerk: gg
Time: 0/00

EXHIBIT _____ 8
PAGE _____ 178

Case 2:04-cv-09049-DOC-RNB   Document 6680-5   Filed 09/14/09   Page 4 of 64   Page ID
#:219796
Case 2:04-cv-09049-SGL-RNB   Document 3826   Filed 05/27/2008   Page 3 of 9

was based on Bryant's creation of the design drawings during a time period that includes his employment at Mattel. Id.

Also at this time, MGA offered a letter, dated October 17, 2003, from Mattel's Hong Kong counsel to Mattel, that discusses the propriety of providing to Mattel certain documents relating to the City World litigation. Within this letter, certain key details of the "STATEMENT OF CLAIM" were referenced. See Supp. Bogorad Ex. 146 ("One of the exhibits referred to in such Affirmation was a set of coloured drawings described as '17 initial concept and design drawings of the Bratz dolls made by Mr. Carter Bryant in the year 2000.'").

After being given an opportunity to respond to this last-minute evidence, Mattel offered as evidence the documents it received on September 23, 2003, and that evidence did not include the document marked as Ex. 143. See Supp. Moore Decl. Ex. A. The documents Mattel received do not include any reference to Carter Bryant or the dates of creation of the 17 drawings. See id. Instead, it consists of a copy of a "writ of summons" in that same litigation.

In responding to this evidence, counsel for MGA first incorrectly contended that the declaration of in-house counsel, Michael Moore, did not deny receiving a copy of the City World claim setting forth this key language. Compare Reply at 1 ("**Mr. Moore, the only witness offered by Mattel, does _not_ deny that Mattel took possession of a copy of the City World claim on or about September 23, 2003**.") (emphasis in the original) with Supp. Moore Decl. ¶ 3 (attaching as Exhibit A all documents received from Mattel's Hong Kong counsel on September 23, 2003; noting that public access to court files in Hong Kong is limited; and verifying that the materials attached as Exhibit A (which does not include the key language regarding Carter Bryant's creation of Bratz drawings) "were the only ones relating to MGA's litigation that Mattel's Hong Kong counsel were allowed to obtain from the Hong Kong court files").

More disturbingly, however, counsel for MGA next lobbed unsubstantiated assaults on Mr. Moore's truthfulness. Counsel states that the documents "appear to have been doctored or manipulated in some fashion." Reply at 2. Counsel does so because the fax itself has an anomalous pagination in the fax header line wherein the first ten pages are numbered "01, 02 . . . 10," and the numbers thereafter are numbered "11/46, 12/46 . . . 46/46." Supp. Moore Ex. A.

This Court has indicated on a number of occasions, most strikingly in connection with its consideration of Mattel's motion to disqualify counsel for MGA, that it will not countenance unsubstantiated dispersions cast upon opposing counsel. Where there is *evidence* of unethical behavior, the Court expects to be made aware of that evidence; where, however, there is mere *speculation* of such behavior, no legitimate purpose is served by its airing.

Nevertheless, focusing on the additional evidence offered by MGA on May 19, 2008, the time line produced in connection with the Simpson-Taylor deposition makes reference to a City World "claim" that was received by Mattel on September 23, 2003. Although this time line stops short of acknowledging that the document entitled "STATEMENT OF CLAIM" was received in

EXHIBIT _____ 8
PAGE _____ 179

September, it is nevertheless sufficient to controvert Moore's declaration regarding whether the "STATEMENT OF CLAIM" was in fact received on this date. Moreover, the October 17, 2003, letter raises an inference regarding the full scope of Mattel's pre-November 23, 2003, knowledge of the contents of the "STATEMENT OF CLAIM."

It is uncontroverted that Mattel first received a copy of the Bryant-MGA contract, the effective date of which pre-dated the effective date of Bryant's resignation from Mattel, on November 24, 2003.

Where a plaintiff advances a state-law claim under California law, federal courts apply the California "discovery rule" to determine whether the state-law claim is time-barred. See, e.g., Orkin v. Taylor, 487 F.3d 734, 741 (9th Cir. 2007).

The Court's analysis begins with the unremarkable proposition that "[a] plaintiff must bring a claim within the limitations period after accrual of the cause of action." Fox v. Ethicon Endo-Surgery, Inc., 35 Cal.4th 797, 806 (Cal. 2005) (citation omitted). To apply this unremarkable proposition, however, the Court must determine what the California Supreme Court means by "accrual of the cause of action."

In that regard, the California Supreme Court has stated that, "[g]enerally speaking, a cause of action accrues at the time when the cause of action *is complete with all of its elements*," id. at 807 (emphasis added) (citation omitted), a phrase which itself must be expounded upon further to ascertain its meaning. When applying the discovery rule, those "elements" are not "specific legal element[s] of a particular cause of action"; rather, they are the "'generic' elements of wrongdoing, causation, and harm." Id. (citation omitted).

The definition of those terms gives a more comprehensive understanding to the California Supreme Court's statement that "the 'discovery rule' . . . postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." Id. (citation omitted). In turn, "[a] plaintiff has reason to discover a cause of action when he or she has reason at least to suspect a factual basis for its elements." Id. (internal quotation marks and citation omitted). Further refined, where a plaintiff has *knowledge* of at least one of the three generic elements, and *suspicion* of the remaining generic elements, the claim has accrued and the limitations period has begun to run. Id. (citation omitted).

This rule is designed to require plaintiffs to diligently investigate their potential claims. See id. at 808. To that end, in the context of a personal injury action, the California Supreme Court has stated that "plaintiffs are required to conduct a reasonable investigation after becoming aware of an injury, and are charged with knowledge of the information that would have been revealed by such an investigation." Id. Of course, this statement must itself be viewed with the definition of "injury" the California Supreme Court considered: "At common law, the term 'injury,' as used in determining the date of accrual of a cause of action, means both a person's physical condition and its negligent cause. . . . Thus, physical injury alone is often insufficient to trigger the statute of limitations." Id. at 808 n.2 (internal quotation marks and citation omitted).

MINUTES FORM 90
CIVIL -- GEN

Page 4

Initials of Deputy Clerk: gg
Time:  0/00

EXHIBIT _____ 8
PAGE _____ 180

This requirement of diligence, stated otherwise, prohibits California plaintiffs from passively waiting for the facts supporting their claim to find them and places on them an affirmative requirement to investigate:

> Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, she must decide whether to file suit or sit on her rights. So long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her.

Jolly v. Eli Lilly & Co., 44 Cal.3d 1103, 1111 (Cal.1988).

The Jolly court discussed two examples in explaining this standard. First, it cited to Miller v. Bechtel Corp., 33 Cal.3d 868, 874 (Cal.1983), which held time barred the fraud claim of a plaintiff who had suspicions that the value of her husband's stock was understated at the time of their dissolution agreement, but who failed to assert her claim until years later when the stock was sold. Id. In that case, the plaintiff's lawyer sought information, both before the dissolution and within a few months thereafter, regarding the method by which the stock was valued. Id. at 875. When the response was not forthcoming, the lawyer chose not to pursue this inquiry further, and thus plaintiff was charged with knowledge of the facts the investigation would have uncovered – that the stock was valued by the price attributed to it in the shareholders' agreement rather than by any objective valuation. Id.

Second, the Jolly court cited to Gray v. Reeves, 76 Cal.App.3d 567 (Cal. App.1977), which held that a plaintiff's claim based on his use of a prescription drug arose when the plaintiff understood the nature of his injury (deterioration of the hip socket) and the probable cause thereof (the use of the prescription drug prednisone) as well as the identity of the prescribing doctor and the drug's manufacturer.

Although the discovery rule has been largely developed in tort cases, the rule has also been applied in cases involving contract claims. See e.g., April Enterprises, Inc. v. KTTV, 147 Cal.App.3d 805, 832 (1983) ("Specifically, we hold the discovery rule may be applied to breaches which can be, and are, committed in secret and, moreover, where the harm flowing from those breaches will not be reasonably discoverable by plaintiffs until a future time."); Intermedics, Inc. v. Ventritex, Inc., 775 F.Supp. 1258, 1266-67 (N.D. Cal. 1991).

Thus, California's discovery rule is easily understood in the abstract; moreover, it is often easily applied in particular factual situations. Here, however, this Court's application of the rule in this case is not so clear cut, and the Court must consider the premises underlying the parties' respective analysis of this issue.

In substance, MGA contends that Mattel was on notice as early as February, 2001, of a potential claim that Carter Bryant breached the confidentiality provision of his contract by borrowing from or plagiarizing certain non-public Mattel projects. This date coincides with the display of the Bratz dolls at a New York Toy Fair and "speculation in the media started about

EXHIBIT _____ 8
PAGE _____ 181

alleged similarities between the BRATZ and Mattel's internal projects." MGA Motion at 18. Alternatively, MGA posits March 15, 2002, the beginning date of an internal Mattel investigation into MGA and Larian's involvement in Bryant's creation and development of Bratz, as the date Mattel's current claims accrued.

Mattel, on the other hand, contends that MGA is essentially arguing that a claim Mattel chose not to bring -- that Bratz infringed on the Mattel projects of Toon Teens and Diva Starz -- is time barred. Mattel points out that it has previously disavowed, and that it continues to disavow, any intent to assert such a claim. Rather, Mattel contends that it is bringing a different claim, a claim that Mattel has rights to Bratz pursuant to the Inventions Agreement based on Bryant's actions during the period of his employment with Mattel.

In determining, under California law, which of the parties' diametrically opposed positions represent the better approach, the Court is guided by the California Supreme Court case cited above, Fox v. Ethicon Endo-Surgery, Inc., 35 Cal.4th 797, 806 (Cal. 2005). In that case, a plaintiff, suffering from complications following gastric bypass surgery, sued for medical malpractice. Id. at 802. During the course of discovery, she learned, through the testimony provided at the deposition of her surgeon, that she had a potential claim against the manufacturer of a surgical stapler. Id. at 804. Specifically, the plaintiff's surgeon testified that he had found on previous occasions that the particular stapler had caused post-surgery leaks. Id. When the plaintiff amended the complaint to assert a products liability claim, the trial court, on statute of limitations grounds, sustained a demurrer without leave to amend, reasoning that "when a plaintiff sues based on knowledge or suspicion of negligence, . . . the statute of limitations begins to run as to all defendants, including manufacturers possibly liable under products liability theories." Id.

The Court of Appeal reversed, and the California Supreme Court affirmed the reversal. Id. at 812, 816. In doing so, the California Supreme Court rejected, as inconsistent with its precedent, the so-called "the Bristol-Myers Squibb rule that all claims arising from an injury accrue simultaneously, even if based upon distinct types of wrongdoing, is inconsistent with the generic elements approach . . . . " Id. at 815.

From this discussion, a parallel begins to emerge that MGA's position is like that of the demurring defendant who seeks to dismiss a products liability claim on the basis of plaintiff's discovery of a different claim of medical malpractice, and Mattel's position is like that of the plaintiff who seeks to assert the that products liability claim. In a sense, however, this analogy goes nowhere, as MGA's position is that the claim Mattel asserts in the current action is not different from the potential claim for which it was on notice of in 2001. After all, both would be based on breach of contract and/or copyright claims, both would involve the same defendants, and both would result in the same type of injury.

However, the Fox Court's elaboration on the rule it enunciates convinces the Court that Mattel's position is the stronger one. After discussing the application of its rule in the more narrow situation presented by the overlap of medical malpractice and products liability claims at issue in the case before it, the Fox Court explained:

MINUTES FORM 90
CIVIL -- GEN

Page 6

Initials of Deputy Clerk: gg
Time:  0/00

EXHIBIT _____ 8
PAGE _____ 182

More broadly stated, if a plaintiff's reasonable and diligent investigation discloses only one kind of wrongdoing when the injury was actually caused by tortious conduct of a wholly different sort, the discovery rule postpones accrual of the statute of limitations on the newly discovered claim.

Id. at 813.  In analyzing the discovery rule, the term "wrongdoing" is used not in a technical or legal sense, but in its everyday meaning. Jolly v. Eli Lilly & Co., 44 Cal.3d 1103, 1111 (1988) ("In this context, 'wrong,' 'wrongdoing,' and 'wrongful' are used in their lay understanding.").

Here, on one hand, we have a breach of contract claim or copyright infringement claim based on alleged copying or "borrowing" of Mattel's undisputed rights in Toon Teens and/or Diva Starz to create Bratz that perhaps Mattel was on notice of as early as 2001, and which Mattel admittedly investigated as early as 2002, but upon which Mattel ultimately chose not to file suit. On the other hand, we have the claims asserted here, for breach of contract and copyright infringement, based on Mattel's (disputed) ownership rights to the Bratz drawings pursuant to Bryant's employment agreement with Mattel and in light of the (disputed) fact that Carter Bryant created these works during the period of his employment with Mattel. Applied to the present case, in the Court's view, the question the Court must ask is whether the first type of claim is based on qualitatively different type of "wrongdoing" – as that term might be understood by lay persons – than that which gives rise to the present claims.

Thus framed, the Court considers the two claims:  Although they are similar in that they both include the wrongdoing of the failure to keep one's promise to maintain confidentiality, they are qualitatively different, however, in that the former situation involves the alleged taking of rights known to Mattel while the latter involves the alleged concealment of certain creations that belong to Mattel in the first instance in order to facilitate the taking of rights unknown to Mattel.  This fundamental difference leads the Court to the conclusion that the latter claims, those asserted here, involve a different element of "wrongdoing" than do the unasserted claims based on Toon Teens and/or Diva Starz.

The burden of proof on the discovery rule issue is on Mattel.[2]  Examining the claim Mattel asserts, rather than the claim Mattel chose not to assert, the Court must determine whether Mattel had knowledge of any one of the three generic elements of wrongdoing, causation, or damages, coupled with suspicion of the remaining generic elements.  This determination cannot be made on the undisputed record before the Court.

Rather, MGA has raised triable issues of fact precluding summary judgment on the statute of limitations issue.  Any of the following could be the date upon which MGA claims against Carter

---

[2]  See Fox, 35 Cal.4th at 803 (imposing upon a plaintiff that seeks to take advantage of the discovery rule a requirement that it "plead[] and prove[] that a reasonable investigation at that time would not have revealed a factual basis for that particular cause of action).

EXHIBIT ___8___

PAGE ___183___

Case 2:04-cv-09049-DOC-RNB   Document 6680-5   Filed 09/14/09   Page 9 of 64   Page ID
#:219751
Case 2:04-cv-09049-SGL-RNB   Document 3826   Filed 05/27/2008   Page 8 of 9

Bryant accrued:  The July 18, 2003, <u>Wall Street Journal</u> article; the September 23, 2003, date of receipt of the City World "claim"; the October 17, 2003, date of counsel's letter to Mattel regarding the City World litigation; or the November 24, 2003, date of receipt of the MGA-Bryant agreement that pre-dated Bryant's resignation of his employment.[3]

The accrual of a copyright claim, as the parties recognize, approximates the state-law standard discussed herein.  <u>See</u> <u>Polar Bear Productions, Inc. v. Timex Corp.</u>, 384 F.3d 700, 706 (9th Cir. 2004) ("Thus, . . . the statute of limitations does not prohibit recovery of damages incurred more than three years prior to the filing of suit if the copyright plaintiff was unaware of the infringement, and that lack of knowledge was reasonable under the circumstances.").  Accordingly, the Court makes the same conclusion regarding the accrual date of Mattel's copyright claim against Carter Bryant as it does regarding the accrual date of Bryant's state-law claims.

As stated earlier, although Bryant is no longer a party to this action, the parties recognize, as does the Court, that the timeliness of the claims asserted against Carter Bryant is relevant because of the potential that Mattel's claims against the MGA entities and Isaac Larian may, pursuant to Fed. R. Civ. P. 15(c), relate back to those claims.  Mattel embraces the concept of relation back; MGA rejects it.

Although such distinction has not been particularly important at other points in this litigation, the Court has referred to the MGA entities and Isaac Larian collectively as MGA.  More specifically, as to Phase 1, there are two separate MGA entities: MGA Entertainment, Inc. and MGA Entertainment HK Limited.  There is also MGA's CEO, Isaac Larian.  This distinction is important to the Court's analysis of relation back.

MGA Entertainment, Inc., but <u>not</u> Isaac Larian or the other MGA entity, intervened in this action on December 7, 2004.  Therefore, based on the status of MGA Entertainment, Inc., as a party, the standard for whether the claims relate back differs from that governing the relation back of claims against MGA Entertainment HK Limited.  <u>See</u> <u>infra</u>.  As this Court has noted before, the Phase 1 claims against MGA sought to be asserted by Mattel on November 20, 2006, which arise out of the same factual allegations as do the claims asserted by Mattel against Carter Bryant on April 27, 2004, relate back to the date that complaint was filed.  <u>See</u> Court's Jan. 12, 2007, Order at 13-15.  The Court does not revisit that issue now.

MGA argues that "some courts have dis-allowed 'relation back' of claims against intervening <u>defendants.</u>" MGA Opp. at 25 n.21 (emphasis in the original).  However, in support of this argument, MGA cites a two-page Texas appellate court decision which does not cite to or interpret Fed. R. Civ. P. 15(c), <u>Davis v. Outdoor Equip. Co.</u>, 551 S.W.2d 72, 73 (Tex. Ct. App. 1977), which the Court finds unpersuasive.

As to the new parties sought to be added on November 20, 2006 (MGA Entertainment HK

---

[3]   The analysis is slightly different for the conversion claim.  <u>See</u> <u>infra</u> at 9-10.


EXHIBIT _____ 8
PAGE _____ 184

Case 2:04-cv-09049-DOC-RNB   Document 6680-5   Filed 09/14/09   Page 10 of 64   Page ID
#:219733
Case 2:04-cv-09049-SGL-RNB   Document 3826   Filed 05/27/2008   Page 9 of 9

Limited and Isaac Larian), MGA challenges the timeliness of the amendment to add these parties based on whether their identities were known to Mattel at an earlier date. The Court has already held that the claims against them relate back to the April, 2004, complaint. See Court's Jan. 12, 2007, Order at 15-16 n.5. The Court will not revisit that issue either.

The Court rejects the proposition, however, that the claims against both MGA entities did not arise until the date of Carter Bryant's deposition. Whatever the date on which the claims against Carter Bryant arose is ultimately found to be, the August 2002 anonymous letter should have given Mattel a suspicion of that MGA Entertainment, Inc., participated in any wrongdoing by Carter Bryant. See Zeller Decl. Ex. 63 (alleging that Carter Bryant "worked out a deal with MGA that let him collect a large sum of money each year from MGA in exchange for his secrecy about the dolls").

The same is not true as to MGA Entertainment HK Limited and as to Isaac Larian, whom the anonymous letter did not implicate. Therefore, the claims against these defendants arose no earlier than November 4, 2004.

Intentional interference with contractual relations is subject to a two-year statute of limitations. MGA contends that the claim accrues upon the breach of contract, and therefore argues that the claim was untimely before it was asserted against Carter Bryant. They make a similar argument regarding Mattel's conversion claim, which carries with it a three-year statute of limitations.

However, the statute of limitations for breach of contract is tolled during a period of fraudulent concealment. Gryczman v. 4550 Pico Partners, Ltd., 107 Cal.App.4th 1, 5 (2003). The rationale for such tolling easily extends to intentional interference with contractual relations claim, which includes the element of a breach of a contract. The limitations period is likewise tolled during a period of fraudulent concealment as to a conversion claim. AmerUS Life Ins. Co. v. Bank of America, 143 Cal.App.4th 631, 639 (2006) ("To the extent our courts have recognized a 'discovery rule' exception to toll the statute, it has only been when the defendant in a conversion action fraudulently conceals the relevant facts or where the defendant fails to disclose such facts in violation of his or her fiduciary duty to the plaintiff.") Mattel has raised a triable issue of fact as to whether the evidence of the breach and the tortious interference thereof was fraudulently concealed from them before the July 18, 2003, Wall Street Journal article.

The Court will permit further briefing from the parties on the limited issue of what further conclusions regarding the timeliness of each claim should be drawn as a result of this Order. The parties' simultaneous briefs shall be limited to seven pages in length, and shall not re-argue any point upon which the Court has ruled in this Order or its previous two summary judgment Orders. The briefs shall be e-filed no later than 8:30 a.m., Thursday, May 29, 2008, and a courtesy copy must be provided to chambers at the same time. The parties shall also file, as exhibits thereto, their revised proposed special interrogatories on the issue of statute of limitations.

**IT IS SO ORDERED.**

MINUTES FORM 90
CIVIL -- GEN

Initials of Deputy Clerk: gg
Time:  0/00

EXHIBIT _____8_____
PAGE _____185_____

# EXHIBIT 9

EXHIBIT 9

PAGE 186

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
<u>CIVIL MINUTES -- GENERAL</u>

Case No.   CV 04-09049 SGL(RNBx)                    Date:  June 2, 2008
Title:     CARTER BRYANT -v- MATTEL, INC.

<u>Consolidated With Related Actions:</u>
CASE NO. CV 04-09059 SGL(RNBx):  MATTEL, INC.  v. CARTER BRYANT
CASE NO. CV 05-02727 SGL (RNBx): MGA ENTERTAINMENT, INC. v. MATTEL, INC.
==================================================================
PRESENT:  HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

          Jim Holmes
          Courtroom Deputy Clerk

<u>ATTORNEYS PRESENT FOR CARTER BRYANT:</u>      <u>ATTORNEYS PRESENT FOR MATTEL</u>:

None Present                                 None Present


<u>ATTORNEYS PRESENT FOR MGA</u> AND
<u>ISAAC LARIAN:</u>

None Present

PROCEEDINGS:    **FURTHER AND FINAL ORDER RE STATUTE OF LIMITATIONS DEFENSE
                (IN CHAMBERS)**

        In an order dated May 27, 2008, the Court made several rulings regarding the timeliness of
Mattel's claims ("SOL Order").  At that time, the Court invited further, limited briefing from the
parties regarding "what further conclusions regarding the timeliness of each claim should be
drawn" in light of the Court's rulings.  The parties filed further briefing in conformity with the Court's
Order, which the Court has reviewed.

        As a result of the briefing, the Court discusses the following issues:  (1) Clarification of the
Court's Ruling Regarding the August 2002 Anonymous Letter; (2) Clarification of the Court's
Ruling Regarding Fraudulent Concealment and Mattel's Claims for Intentional Interference with
Contractual Relations and Conversion; and (3) Accrual of Mattel's Copyright Claim.

MINUTES FORM 90                                          Initials of Deputy Clerk:  jh
CIVIL -- GEN                          1

EXHIBIT ___9___
PAGE ___187___

**I. Clarification of the Court's Ruling Regarding the August 2002 Anonymous Letter**

The parties differ on their interpretation of the Court's holding as to the earliest accrual date of Mattel's claims. Although the Court's SOL Order, read as a whole, is most reasonably interpreted as clarified herein, MGA, quite understandably, interprets the Court's Order in a manner more favorable to its position regarding the statute of limitations defense. Accordingly, the Court clarifies its Order as set forth below.

In a key paragraph of the SOL Order, the Court articulates the four possible accrual dates of those state-law claims, asserted by Mattel against Carter Bryant, that are subject to the discovery rule:[1]

> MGA has raised triable issues of fact precluding summary judgment on the statute of limitations issue. Any of the following could be the date on which MGA claims against Carter Bryant accrued: The July 18, 2003, Wall Street Journal article; the September 23, 2003, date of receipt of the City World "claim"; the October 17, 2003, date of counsel's letter to Mattel regarding the City World litigation; or the November 24, 2003, date of receipt of the MGA-Bryant agreement that pre-dated Bryant's resignation of his employment.

SOL Order at 7-8. This portion of the Court's Order implicitly rejects MGA's contention that the August, 2002, letter could give rise to Mattel's claims against Bryant.

As set forth in the SOL Order, a claim accrues where a plaintiff has ***knowledge*** of at least one of the three generic elements of wrongdoing, causation, and harm. Fox v. Ethicon Endo-Surgery, Inc., 35 Cal.4th 797, 807 (Cal. 2005) (citation omitted). The SOL Order did not explicitly state, as the Court does now, that there is no evidence that Mattel had any ***knowledge*** of any one of the three generic elements of its claims, and thus no claim accrued, prior to the earliest date identified by the Court, which is July 18, 2003.

MGA's argument that Mattel's claims against Carter Bryant could have accrued in August 2002, is based on a statement made by the Court's regarding when the claims against MGA Entertainment, Inc., accrued:

> The Court rejects the proposition, however, that the claims against <u>both</u> MGA entities did not arise until the date of Carter Bryant's deposition. Whatever the date on which the claims against Carter Bryant arose is ultimately found to be, the August 2002 anonymous letter should have given Mattel a suspicion of that MGA Entertainment, Inc., participated in any wrongdoing by Carter Bryant. See Zeller Decl. Ex. 63

---

[1]   This portion of the Court's Order does not apply to Mattel's claims for intentional interference with contractual relations and conversion, which are addressed infra, in Section II.

EXHIBIT ___9___
PAGE ___188___

Case 2:04-cv-09049-DOC-RNB   Document 6680-5   Filed 09/14/09   Page 14 of 64   Page ID
#:219716
Case 2:04-cv-09049-SGL-RNB   Document 3902   Filed 06/02/2008   Page 3 of 4

(alleging that Carter Bryant "worked out a deal with MGA that let him collect a large sum of money each year from MGA in exchange for his secrecy about the dolls").

SOL Order at 9.  Mattel's understanding of this part of the SOL Order, that the claims against MGA Entertainment, Inc., accrued on the same date as did the claims against Carter Bryant, is correct.  See Mattel Supp. Brief at 6 n.4.

## II. Clarification of the Court's Ruling Regarding Fraudulent Concealment and Mattel's Claims for Intentional Interference with Contractual Relations and Conversion

The Court's statute of limitations analysis regarding Mattel's claims for intentional interference with contractual relations and conversion was rather inartfully articulated.  The Court's ruling was meant to convey that although the remainder of the state-law claims asserted by Mattel are subject to the discovery rule, these two claims are not.  Therefore, the conclusions drawn by the Court regarding the possible accrual dates for the remaining state-law claims do not apply to Mattel's claims for intentional interference with contractual relations and conversion.  Instead, these claims, having arisen around the time Bryant resigned from Mattel, are time-barred unless the relevant limitations periods have been extended by a period of fraudulent concealment.

Whether a period of fraudulent concealment exists, as well as the duration of any such period, cannot be determined on the undisputed record and are therefore questions of fact for the jury.

## III. Accrual of Copyright Claim

The supplemental briefing brings into focus an issue not addressed by the SOL Order:  The accrual date of Mattel's copyright claim.

MGA refers to two arguments it made in its partial summary judgment papers regarding the statute of limitations and Mattel's copyright claim.  First, MGA argues that the date Mattel registered its copyrights impacts upon the Court's application of the relation-back doctrine; second, MGA argues that the "rolling" statute of limitations regarding copyright claims is inapplicable when the gravamen of the claim is a claim of ownership rather than infringement.

Mattel did not address this issue in its supplemental briefing, which was filed concurrently with MGA's supplemental briefing.  In its partial summary judgment papers, however, Mattel had responded to these arguments.

In reviewing the supplemental briefs, as well as the relevant portions of the partial summary judgment papers, and reflecting upon the hearings held on this matter, the Court concludes that it need not resolve MGA's two arguments.

In the SOL Order, the Court's analysis equated the accrual of Mattel's copyright claim with

MINUTES FORM 90
CIVIL -- GEN

3

Initials of Deputy Clerk:  jh

EXHIBIT _____ 9
PAGE _____ 189

Case 2:04-cv-09049-DOC-RNB   Document 6680-5   Filed 09/14/09   Page 15 of 64   Page ID
#:219717
Case 2:04-cv-09049-SGL-RNB   Document 3902   Filed 06/02/2008   Page 4 of 4

the accrual with certain of Mattel's state-law claims; as explained below, this analysis overlooks important concepts of copyright law.

As noted by the Court in its order regarding summary judgment, in order to establish copyright infringement, a plaintiff must establish three elements: (1) ownership of a valid copyright, (2) the defendant's access to the original, and (3) substantial similarity between the copyrighted work and the allegedly infringing work. Lamps Plus, Inc. v. Seattle Lighting Fixture Co., 345 F.3d 1140, 1144 (9th Cir. 2003). Here, although the date Mattel received details regarding the City World litigation is in dispute, it is uncontroverted that Mattel did not receive copies of the Bratz drawings prior to November 23, 2003. Without the drawings, Mattel could not assess the substantial similarity factor to determine whether it could assert a claim that the Bratz dolls infringed Mattel's rights to them. Accordingly, on the undisputed record, the Court concludes that Mattel's copyright claim did not accrue prior to November 23, 2003.

Therefore, when first asserted on November 20, 2006, Mattel's copyright claim was timely in its own right, and the Court need not resolve MGA's two arguments regarding relation back and the rolling statute of limitations.[2]

**IT IS SO ORDERED.**

---

[2] In accordance with the foregoing, the Court VACATES the following language from the SOL Order:

> The accrual of a copyright claim, as the parties recognize, approximates the state-law standard discussed herein. See Polar Bear Productions, Inc. v. Timex Corp., 384 F.3d 700, 706 (9th Cir. 2004) ("Thus, . . . the statute of limitations does not prohibit recovery of damages incurred more than three years prior to the filing of suit if the copyright plaintiff was unaware of the infringement, and that lack of knowledge was reasonable under the circumstances."). Accordingly, the Court makes the same conclusion regarding the accrual date of Mattel's copyright claim against Carter Bryant as it does regarding the accrual date of Bryant's state-law claims.

SOL Order at 8.

MINUTES FORM 90                                                      Initials of Deputy Clerk: jh
CIVIL -- GEN                                   4

EXHIBIT _____9_____
PAGE _____190_____

# EXHIBIT 10

EXHIBIT _____ 10
PAGE _____ 191

Case 2:04-cv-09049-DOC-RNB   Document 6680-5   Filed 09/14/09   Page 17 of 64   Page ID
#:219719
Case 2:04-cv-09049-SGL-RNB      Document 3950     Filed 06/07/2008   Page 1 of 20

1
2
3
4
5
6
7
8
9            UNITED STATES DISTRICT COURT

10           CENTRAL DISTRICT OF CALIFORNIA

11                  EASTERN DIVISION

| | |
|---|---|
| 12  CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| 13        Plaintiff, | Consolidated with |
| 14      vs. | Case No. CV 04-09059<br>Case No. CV 05-02727 |
| 15  MATTEL, INC., a Delaware<br>corporation, | **COURT'S FINAL PRE-TRIAL**<br>**CONFERENCE ORDER FOR**<br>**PHASE 1 TRIAL** |
| 16 | |
| 17        Defendant. | |
| 18  AND CONSOLIDATED ACTIONS | |

19
20
21
22
23
24
25
26
27
28

07209/2474226.14

EXHIBIT _____ 10
PAGE _____ 192

1   Following pretrial proceedings, pursuant to Federal Rule of Civil

2   Procedure 16 and Local Rule 16-1 et seq., and in accordance with the Court's

3   Scheduling Order entered February 22, 2007, IT IS ORDERED:

4

5   **I.**

6   **PARTIES**

7   For purposes of this Phase 1 trial, the parties are:

8   (a)   Plaintiff and Counter-Defendant Mattel, Inc. ("Mattel");

9   (b)   Defendant and Counter-Defendant MGA Entertainment, Inc.

10   ("MGA");

11   (c)   Defendant and Counter-Defendant Isaac Larian;

12   (d)   Defendant and Counter-Defendant MGA Entertainment (HK)

13   Limited ("MGA HK").

14   Each of these parties has been served and has appeared.  For purposes

15   of this Phase 1 trial, and the claims and defenses to be tried therein, no party other

16   than those identified above has asserted a claim, been served, or asserted any

17   defense.  Because the Court has bifurcated these consolidated cases, the Court will

18   not at this point dismiss any other party, including any Doe defendants.

19   In addition, as a result of the confidential settlement between Mattel

20   and Carter Bryant, Carter Bryant is no longer a party to this case, although Carter

21   Bryant remains bound by all past Orders of this Court and will be bound by any

22   injunctive, declaratory or other non-monetary relief relating to Bratz that the Court

23   enters in the future against the MGA parties.

24   The pleadings that raise the issues in Phase 1 are:

25   (a)   Complaint filed by Mattel, Inc. (Case No. BC314398) on April

26   27, 2004 in the Superior Court of the State of California for the County of Los

27   Angeles (the "Bryant Case");

28

EXHIBIT _____ *10*
PAGE _____ *193*

Case 2:04-cv-09049-DOC-RNB   Document 6680-5   Filed 09/14/09   Page 19 of 64   Page ID
#:219721
Case 2:04-cv-09049-SGL-RNB   Document 3950   Filed 06/07/2008   Page 3 of 20

1         (b)     Answer to Plaintiff's Unverified Complaint filed by Carter

2 Bryant on May 14, 2004;

3         (c)     Defendant/Cross-Complainant Carter Bryant's Cross-Complaint

4 for (1) Unfair Competition; (2) Rescission; (3) Declaratory Relief; and (4) Fraud,

5 filed by Bryant on September 8, 2004 in the Superior Court of the State of

6 California for the County of Los Angeles;

7         (d)     Notice to Federal Court of Removal of Civil Action from State

8 Court Pursuant to 28 U.S.C. Section 1332(a)(1) and 1331, filed by defendant Carter

9 Bryant on November 2, 2004.  That notice removed the case to federal court on

10 November 2, 2004, where it was assigned Case No. 04-9059;

11         (e)     Stipulation Permitting MGA to Intervene as a Party to This

12 Action and Order, dated December 7, 2004, and MGA's Answer in Intervention;

13         (f)     Complaint filed by MGA Entertainment, Inc. (Case No. CV 05-

14 2727 SGL (RNBx)) on April 13, 2005 in the District Court of the Central District of

15 California (the "MGA Case"), as limited by the Court's Order dated August 25,

16 2005, striking allegations regarding the Brawer litigation;

17         (g)     Second Amended Answer and Counterclaims filed by Mattel,

18 Case No. CV 04-9059 SGL (RNBx) on July 12, 2007 in the District Court of the

19 Central District of California;

20         (h)     Amended Answer and Affirmative Defenses of MGA

21 Entertainment Inc., MGA Entertainment (HK) Limited and MGAE de Mexico

22 S.R.L. de C.V. to Mattel, Inc.'s Second Amended Answer and Counterclaims filed

23 by defendants MGA, MGA HK, and MGA Mexico (collectively, the "MGA

24 Defendants") on September 19, 2007 in the District Court of the Central District of

25 California;

26         (i)     Isaac Larian's Amended Answer and Affirmative Defenses to

27 Mattel, Inc.'s Second Amended Answer and Counterclaims filed by Larian on

28 November 8, 2007 in the District Court of the Central District of California.

07209/2474226.14

-2-

Case No. CV 04-9049 SGL (RNBx)
FINAL PRE TRIAL CONFERENCE ORDER

EXHIBIT _____ 10

PAGE _____ 194

1    By Order dated June 19, 2006, the Court consolidated the <u>Bryant</u> case

2    and the <u>MGA</u> case with <u>Bryant v. Mattel, Inc.</u>, Case No. 04-9049.  The matter shall

3    hereafter be referred to as <u>Mattel, Inc., v. MGA Entertainment, Inc., et al.</u>, Case No.

4    04-9049-SGL(RNBx).

5    The MGA Parties may file a motion seeking a determination of good

6    faith settlement pursuant to CCP § 877.6.  To the extent that Mattel continues to list

7    pleadings that address claims asserted by or against Bryant – and fail to exclude

8    them specifically from the list – the MGA Parties object to Mattel's list of pleadings.

9    Mattel's claims against the MGA parties have been modified by the terms of the

10   Court's Orders re the parties' motions for partial summary judgment dated April 25,

11   2008, May 22, 2008, May 27, 2008, and June 2, 2008.

12

13                                              **II.**

14              **ABANDONED CLAIMS, COUNTERCLAIMS AND DEFENSES**

15   The following claims, counter-claims, or defenses have been dismissed

16   or abandoned:

17   By Order dated July 17, 2006, the Court dismissed Defendant/Cross-

18   Complainant Carter Bryant's Cross-Complaint for (1) Unfair Competition; (2)

19   Rescission; (3) Declaratory Relief; and (4) Fraud; and Bryant's Complaint for

20   Declaratory Relief of Copyright Non-Infringement.  Bryant was given leave to

21   amend his Complaint and Cross-Complaint, but elected not to do so and the

22   dismissal became final.

23   Bryant's Ninth Affirmative Defense: Failure of Contract was withdrawn

24   by Bryant, by stipulation on October 5, 2007;

25   Bryant's Tenth Affirmative Defense: Duress/Unconscionability was

26   withdrawn by Bryant, by stipulation on October 5, 2007;

27   Bryant's Eleventh Affirmative Defense: Alleged Duties Contrary to

28   Law was withdrawn by Bryant, by stipulation on October 5, 2007;

EXHIBIT ____10____
PAGE ____195____

Case 2:04-cv-09049-DOC-RNB   Document 6680-5   Filed 09/14/09   Page 21 of 64   Page ID
#:219723
Case 2:04-cv-09049-SGL-RNB     Document 3950     Filed 06/07/2008     Page 5 of 20

1   MGA Defendants' Sixteenth Affirmative Defense:  Innocent Intent was

2   withdrawn by MGA Entertainment, Inc., by stipulation on September 5, 2007;

3   Larian's Sixteenth Affirmative Defense:  Innocent Intent was

4   withdrawn by MGA Entertainment, Inc., by stipulation on September 5, 2007;

5   MGA Defendants' Ninth Affirmative Defense:  Res Judicata was

6   withdrawn by MGA Entertainment, Inc., by stipulation on September 5, 2007;

7   Larian's Ninth Affirmative Defense:  Res Judicata was withdrawn by

8   MGA Entertainment, Inc., by stipulation on September 5, 2007;

9   MGA Defendants' Twelfth Affirmative Defense:  Lack of Ownership

10  was withdrawn by MGA Entertainment, Inc., by stipulation on September 5, 2007;

11  Unclean Hands Affirmative Defense was withdrawn with respect to

12  Phase 1 claims by the MGA Defendants by Notice on February 15, 2008;

13  Unclean Hands Affirmative Defense was limited by Carter Bryant as to

14  Phase 1 issues by letter dated February 27, 2008.

15  By Order dated April 25, 2008, the Court granted partial summary

16  judgment in favor of Mattel.  In particular, the Court ruled that the Employee

17  Confidential Information and Inventions Agreement that Carter Bryant entered into

18  as a Mattel designer is a valid and enforceable contract.  It further ruled that, under

19  the Inventions Agreement, Mattel owns "any Bratz-related 'inventions' (including

20  any designs, improvements, ideas, concepts and copyrightable subject matter)" that

21  Carter Bryant "created during the period of his employment with Mattel."  The

22  Court found that it was irrelevant whether Bryant performed such work on Bratz

23  during his own time.

24  In its Order granting Mattel partial summary judgment, the Court

25  further ruled that Carter Bryant owed Mattel a duty of loyalty and that Bryant

26  "breached this duty by entering into a contract with Mattel's competitor, while still

27  employed by Mattel, to produce a line of fashion dolls to be marketed in direct

28

Case 2:04-cv-09049-DOC-RNB   Document 6680-5   Filed 09/14/09   Page 22 of 64   Page ID
#:219724
Case 2:04-cv-09049-SGL-RNB   Document 3950   Filed 06/07/2008   Page 6 of 20

1   competition with Mattel's products." The Court rejected defendants' claim that such

2   activities were mere "preparations to compete" with Mattel.

3     By virtue of its April 25, 2008, and May 21, 2008, Orders granting

4   Mattel partial summary judgment, the Court ruled that Carter Bryant owed a

5   fiduciary duty to Mattel, but held that there is a triable issue of fact as to Bryant's

6   breach of that duty.

7     Also by Order dated April 25, 2008, the Court granted partial summary

8   judgment in favor of Bryant and the MGA Defendants on Mattel's claims for (1)

9   tortious interference with contractual relations, but only "to the extent that it is based

10   on Mattel's rights to Bratz," such that it remains in the case "as to Mattel's claims for

11   breach of fiduciary duty" (Order at 2); (2) conversion, but only to the extent it is

12   based on conversion of ideas, such that it remains in the case "to the extent it seeks

13   the return of tangible things" (*id.* at 3); (3) common law unfair competition (*id.* at 7);

14   and (4) unjust enrichment (*id.*).

15     By virtue of its Orders dated April 25, 2008, May 22, 2008, and its

16   clarification on May 23, 2008, the Court further ruled that the MGA parties were

17   entitled to partial summary judgment on Mattel's statutory unfair competition

18   claims, except that Mattel's statutory unfair competition claim presented triable

19   issues of fact relating to "whether MGA tortiously interfered with Bryant and

20   Mattel's contractual relationship and whether MGA engaged in commercial

21   bribery."

22     In its orders regarding the statute of limitations affirmative defense,

23   dated May 27, 2008, and June 2, 2008, the Court made rulings regarding the accrual

24   dates of various claims asserted by Mattel. As to defendant MGA only, the Court

25   ruled that Mattel's state-law claims other than tortious interference with contractual

26   relations claim and the conversion claim accrued no earlier than July 18, 2003, and

27   no later than November 23, 2003, but that triable issues of fact precluded a

28   determination as to the exact accrual date.

EXHIBIT _____ *10*
PAGE _____ *197*

1      As to defendants Isaac Larian and MGA HK, the Court ruled that these

2  state-law claims arose no earlier than the date of Carter Bryant's deposition,

3  November 4, 2004.

4      In these orders, regarding the tortious interference with contractual

5  relations claim and the conversion claim as to all defendants, the Court ruled that the

6  discovery rule was inapplicable to these claims, and that they were therefore time

7  barred unless Mattel establishes a period of fraudulent concealment of sufficient

8  duration.

9      Additionally, the Court ruled that the copyright claim arose no earlier

10 than November 23, 2003.

11      Finally, the Court ruled that the new claims asserted on November 20,

12 2006, the Court ruled that all claims (except the copyright claim, upon which the

13 Court found it unnecessary to rule) related back to the filing of Mattel's complaint

14 against Carter Bryant in April, 2004.

15      Finally, pursuant to the confidential settlement between Mattel and

16 Carter Bryant and pursuant to the Stipulation entered as part of that settlement, all

17 claims, counterclaims and defenses as between Mattel and Carter Bryant have been

18 dismissed, although Carter Bryant remains bound by all past Orders of this Court

19 and will be bound by any injunctive, declaratory or other non-monetary relief

20 relating to Bratz that the Court enters in the future against the MGA parties.

21

22

23                              **III.**

24                    **JURISDICTION AND VENUE**

25      Federal jurisdiction and venue are invoked upon the following grounds:

26      This Court has diversity jurisdiction over the claims asserted in <u>Mattel</u>

27 <u>v. Bryant</u> pursuant to 28 U.S.C. § 1332, as determined by the Ninth Circuit in <u>Mattel</u>

28

07209/2474226.14

Case No. CV 04-9049 SGL (RNBx)
                                       FINAL PRE TRIAL CONFERENCE ORDER

EXHIBIT _____ *10*

PAGE _____ *198*

1 | v. Bryant, Inc., 446 F.3d 1011, 1013 (9th Cir. 2006). This Court has supplemental

2 | jurisdiction over Mattel's state law claims in that case pursuant to 28 U.S.C. § 1367.

3 | This Court has federal question jurisdiction over MGA's claims in

4 | MGA Entertainment, Inc. v. Mattel, Inc. pursuant to 15 U.S.C. §§ 1116 and §1121,

5 | 28 U.S.C. §§ 1331, 1338(a), and supplemental subject matter jurisdiction over

6 | MGA's state law claims pursuant to 28 U.S.C. § 1367.

7 | This Court has federal question jurisdiction over Mattel's counterclaims

8 | in MGA Entertainment, Inc. v. Mattel, Inc. pursuant to 28 U.S.C. §§ 1331, 1338(a),

9 | 17 U.S.C. §§ 101 et seq., and 18 U.S.C. § 1964(c). This court has supplemental

10 | jurisdiction over Mattel's state law counterclaims pursuant to 28 U.S.C. § 1367.

11 | Venue in this Court for MGA Entertainment, Inc. v. Mattel, Inc. is

12 | alleged to be proper pursuant to 28 U.S.C. §§ 1391(b) - (d), 1391(f) and 1400(a) and

13 | 18 U.S.C. § 1965.

## IV.

## TRIAL ESTIMATE

16 | The parties understand that the Court has directed each side to complete

17 | the presentation of evidence in Phase 1, including the examination and cross-

18 | examination of witnesses, in 60 hours. The parties further understand that the 60

19 | hours shall not apply to argument, jury selection, opening statements, or closing

20 | arguments.

21 | Consistent with the express language of the Court's April 7, 2008 Order

22 | [Docket No. 2998], the 60-hour limit may be enlarged "if extraordinary

23 | circumstances warrant such relief." Apr. 7, 2008 Order, at 2.

## V.

## TYPE OF TRIAL

27 | The trial is to be a jury trial, except for issues which are not properly

28 | tried to jury. Pursuant to the Court's Scheduling Order, the parties have already

EXHIBIT _____10_____
PAGE _____199_____

1   delivered to the Court (a) a set of Joint Proposed Jury Instructions and (b) a set of

2   disputed Jury Instructions, along with reasons supporting and opposing each

3   disputed instruction, and (c) at the Pre-Trial Conference brief proposed voir dire

4   questions for the jury.  The parties shall revise and supplement the jury instructions

5   and verdict forms on or before June 6, 2008, in light of the Court's May 22 and May

6   23 Orders relating to the parties' respective motions for partial summary judgment

7   and motions *in limine*, as well as the Court's May 22, 2008 Order on the MGA

8   Parties' motion for reconsideration.

9          The Court intends to rule upon the MGA parties' equitable affirmative

10   defenses at the close of the Phase 1 trial, but will allow evidence as to these defenses

11   to be presented to the jury.  The Court may have the jury answer special

12   interrogatories as to certain of these equitable defenses so as to establish the

13   requisite factual findings for the Court to rule upon such defenses.

14

15                                    **VI.**

16                        **STIPULATED FACTS**

17          1.      The following facts have been stipulated, and shall be deemed

18   established:[1]

19                              **Parties**

20          1.      Mattel, Inc. is a corporation formed under the laws of the State of

21                  Delaware with its headquarters in El Segundo, California.

22

23   ────────────────

[1]   The parties to this action do not understand the rules to require the recitation

24   of admissions in the Pre-Trial Conference Order for those admissions to be

25   introduced at trial.  Therefore, admissions are not included herein.

        The parties' lists of facts herein are not exhaustive.  The parties reserve the right

26   to introduce additional evidence in support of their claims — or in opposition to

27   affirmative defenses — at trial.  In addition, the parties intend to introduce expert

     evidence not listed below in support of its claims.

28

07209/2474226.14

EXHIBIT _____ /0
PAGE _____ 202

2.    MGA Entertainment, Inc. is a privately held California corporation.

3.    MGA Entertainment (HK) Limited, a Hong Kong company, and MGAE de Mexico, S.R.L. de C.V., a Mexico corporation, are wholly owned subsidiaries of MGA Entertainment, Inc.

4.    Isaac Larian, an individual, is the CEO and majority shareholder of MGA Entertainment, Inc. and is a resident of California.

**Bryant's Employment at Mattel**

5.    Carter Bryant first worked for Mattel in the mainline Barbie group from September 1995 to April 1998.

6.    Bryant signed a document titled "Employee Confidential Information and Inventions Agreement," dated November 6, 1995.

7.    Bryant signed a document titled "Conflict of Interest Questionnaire," dated November 6, 1995.

8.    Bryant left California in December 1997 and moved to Missouri to live with his parents, where he continued to do work for Mattel until April 1998.

9.    In late December 1998, Mattel offered Bryant a position in the Barbie Collectibles group.

10.   Bryant accepted Mattel's offer, moved back to California, and started work at Mattel on January 4, 1999.

11.   Bryant signed a document titled "Employee Confidential Information and Inventions Agreement" dated January 4, 1999.

12.   Bryant signed a document titled "Conflict of Interest Questionnaire," incorrectly dated January 4, 1998, instead of 1999.

07209/2474226.14

-9-

EXHIBIT _____ /0

PAGE _____ 201

1    13.    Before Bryant left Mattel, he was asked to and did participate in

2            an exit interview.

3    14.    During his exit interview, Bryant signed a document titled

4            "Proprietary Information Checkout," dated October 19, 2000.

5    15.    Carter Bryant, an individual, is a resident of Missouri.

6

7                                  **VII.**

8                                **CLAIMS**

9

10   A.    **MATTEL INC.'S CLAIMS AND COUNTERCLAIMS**

11          Except to the extent already adjudicated in its favor by the Court's

12   Orders re Summary Judgment, and pursuant to the Court's July 5, 2007 Phasing

13   Order, Mattel, Inc. plans to pursue the following claims and counterclaims against

14   the defendants in Phase 1 trial as indicated[2]:

15

16

17

18

19

20

21

22

---

23   [2]    Mattel has claims for misappropriation of trade secrets that are being reserved
     for Phase II of this litigation.  To the extent defendants seek to raise the issue of
24   trade secrets during Phase I, either as a claim or as an affirmative defense, Mattel
     reserves its right to argue its misappropriation of trade secrets claim in Phase I.
25   The MGA parties note that the Court gave specific guidance on this issue and
     expressly limited the type of evidence that Mattel may introduce that falls outside of
26   the scope of Phase I of the trial in ruling on the MGA parties' motion *in limine*
     number 6.
27

28

07209/2474226.14

-10-                        Case No. CV 04-9049 SGL (RNBx)
                           FINAL PRE TRIAL CONFERENCE ORDER

EXHIBIT _____ 10
PAGE _____ 202

1    Claim 1: Intentional Interference with Contract (Against Larian
2    and MGA).

3    Claim 2: Aiding and Abetting Breach of Fiduciary Duty (Against
4    Larian and MGA).

5    Claim 3: Aiding and Abetting Breach of Duty of Loyalty (Against
6    Larian and MGA).

7    Claim 4: Conversion (Against MGA, MGA HK and Larian).

8    Claim 5: Statutory Unfair Competition (Against Larian, MGA,
9    and MGA HK).

10    Claim 6: Declaratory Relief (Against Larian, MGA, and MGA
11    HK) (ownership of original Bratz works and associated copyrights allegedly
12    created by Bryant while employed by Mattel)

13    Claim 7: Copyright Infringement (Against Larian, MGA, and
14    MGA HK)

15    The parties stipulated, and the Court agreed, that contentions of law and
16    fact, were not necessary and would not be productive, in light of the parties'
17    exhaustive briefing of the same issues in their cross-motions for partial summary
18    judgment and the fact that the Court has not yet ruled on certain of those cross-
19    motions.

20

21    **VIII.**

22    **DEFENDANTS' AFFIRMATIVE DEFENSES**

23    Relevant to Phase 1 of the Trial, Defendants assert the following
24    affirmative defenses:

25    Affirmative Defense 3: Laches

26    Affirmative Defense 4: Statute of Limitations

27    Affirmative Defense 5 and 6: 205(d)/Bona Fide Purchaser for Value

28    Affirmative Defense 9: Estoppel

07209/2474226.14

-11-

EXHIBIT _____ 10
PAGE _____ 203

Case 2:04-cv-09049-DOC-RNB   Document 6680-5   Filed 09/14/09   Page 29 of 64   Page ID
#:219731
Case 2:04-cv-09049-SGL-RNB   Document 3950   Filed 06/07/2008   Page 13 of 20

1        Affirmative Defense 10:  Acquiescence

2        Affirmative Defense 11:  Mitigation

3        Affirmative Defense 13:  Waiver

4        Affirmative Defense 14: Abandonment

5        Affirmative Defense 15: *De Minimus* Use

6        Affirmative Defense 17: Privilege/Justification

7        Affirmative Defense 18: Good Faith

8        Affirmative Defense 21: Consent

9  **MGA PARTIES' AFFIRMATIVE DEFENSE TO COPYRIGHT DAMAGES**

10  MGA, MGA (HK), and/or Larian must prove:

11    1.    Expenses deductible from gross revenues causally connected to the

12        alleged infringement;

13    2.    Elements of defendants' profit attributable to factors other than the

14        copyrighted work.

15

16               **IX.**

17         **DISCOVERY**

18        Phase 1 Discovery is not complete, but will be within two weeks.

19  Counsel have waived any prejudice from commencing trial without completing

20  discovery.  Phase 2 discovery has been stayed.  Many Phase 1 discovery motions

21  remain to be heard.  The parties are working to complete them as expeditiously as

22  possible.

23

24               **X.**

25         **EXHIBITS**

26        All disclosures under F.R.Civ. P. 26(a)(3) have been made.  The joint

27  exhibit list of the parties has been filed.

28

EXHIBIT _____ *10*
PAGE _____ *204*

1

## XI.

2

## WITNESSES

3        All disclosures under F.R.Civ.P. 26(a)(3) have been made.  Witness

4   lists of the parties have been filed with the Court pursuant to the schedule approved

5   by the Court.  Each party intending to present evidence by way of deposition

6   testimony has marked such depositions in accordance with L.R. 16-2.7.  For this

7   purpose, the following depositions shall be lodged with the Clerk as required by

8   L.R. 32-1:  William Ackerman (Art Attacks), Bryant Joseph Armstrong, Nana

9   Ashong, Schuyler Bacon, Ronald Brawer, Kerry Brode, Charnayne Brooks, Carter

10  Bryant, Carter Bryant (Art Attacks), Carter Bryant (Gunther-Wahl), Janet Bryant,

11  Thomas Bryant, Ana Cabrera, Mei Wah (Sarah) Chui, Elise Cloonan, Nick

12  Contreras, Daniel Cooney, Wendy Feinberg, Jeanne Galvano, Paula Garcia, Paula

13  Garcia (Art Attacks), Brooke Gilbert, Kami Gillmour, Daphne Gronich, Sarah

14  Halpern, Esther Han, Rachel Harris, Rebecca Harris (Art Attacks), Amy Hyland,

15  Richard Irmen, Mitchell Kamarck, Samir Khare, Andreas Koch, Susana

16  Kuemmerle, Robert Kullman, Farhad Larian, Isaac Larian, Isaac Larian (Art

17  Attacks), Isaac Larian (Larian v. Larian), Isaac Larian (Ubisoft), Margaret Leahy,

18  Edmond Lee, Steven Linker, Kenneth Lockhart, Jennifer Lynn Maurus (Larian v.

19  Larian), Albert Lyter, David Malacrida, Peter Marlow, Veronica Marlow, Karl

20  Meyer, Beatriz Morales, Amy Myers, Joyce Ng, Victoria O'Connor, Sarah D.

21  Odom, Denise O'Neal, Jacqueline Prince, Jessie Ramirez, Anna Rhee, David

22  Rosenbaum, Lon Ross (Fun4All), Maria Salazar, Shirin Salemnia, Joe Tiongco,

23  Maureen Tkacik, Lisa Tonnu, Anne Wang, Jeffrey Neil Weiss, Spencer Woodman,

24  Mel Woods, and MGA's 30(b)(6) witness regarding Larian v. Larian.

25        Additional depositions to be lodged:  Ronald Brawer, Richard DeAnda,

26  Ann Driskill, Robert Eckert, Kevin Farr, Lissa Freed, Jeanne Galvano, Hoi

27  Hoffman-Briggs, Brian Hooks, Julia Jensen, Alan Kaye, Fred Kawashima, Tim

28  Kilpin, Liliana Martinez, Heather McComb, Ginger McRae, Nicholas Mirzoeff,

EXHIBIT ____10____
PAGE ____205____

1 | Teresa Newcomb, Jill Nordquist, Ralph Oman, Rodney Palmer, Joni Pratte,

2 | Jacqueline Prince, Kathleen Simpson-Taylor, Maureen Tafoya, and Sandra

3 | Yonemoto.

4 |     Furthermore, certain depositions have been recently taken or remain to

5 | be taken.  The parties will advise the Court of such transcripts to be lodged as they

6 | become available and relevant.

7 |     Pursuant to ¶ 97 of the Court's Scheduling Order, the parties identify

8 | the following expert witnesses to be called:

9 |     Mattel:  Valery Aginsky, John Alex, Lloyd Cunningham, William

10 | Flynn, Frank Keiser, Lee Loetz, Mark Menz, Nicholas Mirzoeff, Ralph Oman,

11 | Walter Rantanen, Carol Scott, Bryce Stein, Michael Wagner, Robert Lind, Angel

12 | Gomez, Heather McComb, Ginger McRae, Denise Van Patten, and Kenneth

13 | Hollander.

14 |     Defendants:  Mary Bergstein, D. Jan Duffy, Thomas S. Gruca, Erich

15 | Joachimstaler, Robert D. Kullman, Albert H. Lyter, Peter Menell, Paul Meyer,

16 | Debora Middleton, Robert Tonner, Glenn Vilppu, Douglas Kidder, and Gary Funck.

17 |     The following law and motion matters and motions in limine have been

18 | decided:

19 |     Mattel has filed the following motions *in limine*:

20 |     1.    MIL No. 1 to exclude: (1) evidence or argument that Bryant's

21 | invention assignment agreements are unfair or unconscionable; (2) evidence of other

22 | versions of Mattel's inventions agreements; and (3) expert testimony of D. Jan

23 | Duffy;

24 |     Granted.

25 |     2.    MIL No. 2 to exclude evidence, argument or reference to

26 | Mattel's alleged motive in filing suit or re consequences thereof ;

27 |     Denied as written.  Will allow late evidence with proper foundation.

28 | Consequences of lawsuit to MGA may not be admitted.

EXHIBIT ___10___
PAGE ___206___

Case 2:04-cv-09049-DOC-RNB   Document 6680-5   Filed 09/14/09   Page 32 of 64   Page ID
#:219734
Case 2:04-cv-09049-SGL-RNB   Document 3950   Filed 06/07/2008   Page 16 of 20

1    3. MIL No. 3 to exclude Phase 1(B) evidence in the Phase 1(A)

2 trial and Phase 2 evidence in the Phase 1 trials or, in the alternative, to permit

3 expedited Phase 2 discovery;

4    Granted insofar as apportionment and responsive evidence is limited to

5    1B; deferred on rest.

6    4. MIL No. 4 to preclude introduction to jury of evidence and

7 testimony relating to equitable defenses to be tried by court ;

8    Denied.

9    5. MIL No. 5 to exclude evidence of or argument concerning other

10 lawsuits and other purported bad acts and dismissed defenses;

11    Granted as to Nos. 1-4 and 10; Denied without prejudice to specific

12    objections as to Nos. 5-9.

13    6. MIL No. 6 to exclude evidence or argument concerning actions

14 taken by or against Mattel employees other than Carter Bryant;

15    Granted in part and denied in part; Evidence is admissible only if such

16    other employees are analogous to Bryant.

17    7. MIL No. 7 to preclude the MGA Defendants from asserting or

18 relying on an advice of counsel defense;

19    Granted.  However, the MGA Parties can introduce Rosenbaum's

20    testimony relaying his factual conversations not as reliance on any legal

21    advice he gave but as to the fact that he undertook certain actions and had

22    certain conversations, provided otherwise admissible.

23    8. MIL No. 8 to exclude evidence relating to whether Mattel would

24 have marketed Bratz;

25    Granted as to 1A; Deferred as to 1B.

26    9. MIL No. 9 to exclude argument, evidence, or expert testimony

27 regarding Barbie and other Mattel dolls;

28    Daubert hearing to be held one day prior to testifying.

-15-

EXHIBIT _____ 10
PAGE _____ 207

Case 2:04-cv-09049-DOC-RNB   Document 6680-5   Filed 09/14/09   Page 33 of 64   Page ID
Case 2:04-cv-09049-SGL-RNB   Document 3950   Filed 06/07/2008   Page 17 of 20
#:219795

1      10.   MIL No. 10 to exclude testimony by Glenn V. Vilppu;

2      Daubert hearing to be held one day prior to testifying.

3      11.   MIL No. 11 to preclude Defendants from offering improperly

4  disclosed evidence;

5      Granted as to test project.  Deferred on apportionment issues otherwise

6      denied.

7      12.   MIL No. 12 to exclude the testimony of Peter S. Menell;

8      Daubert hearing to be held one day prior to testifying.

9      13.   MIL No. 13 to exclude expert testimony of Mary Bergstein,

10  Robert Tonner, and Debora Middleton;

11      Daubert hearing to be held one day prior to testifying.

12      14.   MIL No. 14 to exclude evidence and argument related to certain

13  discovery matters;

14      Granted.

15      15.   MIL No. 15 for a preclusion order regarding MGA's disqualified

16  expert Christina Tomiyama.

17      Taken under submission.  Deferred ruling until Phase 1(b).

18      Defendants filed the following motions in limine:

19      1.   MGA Parties' Notice of Motion and Motion in Limine Number 1

20  to  Exclude All Evidence Relating to Litigation or Other Proceedings Between Isaac

21  and Farhad Larian;

22      Denied.

23      2.   MGA Parties' Notice of Motion and Motion in Limine Number 2

24  to  Exclude All Evidence Relating to Isaac Larian's Wealth and Assets;

25      Granted in part, denied in part. General evidence regarding Mr. Larian's

26  wealth is inadmissible.  Any gain to Larian from Bratz may be introduced only in Phase

27  1b. In Phase 1a, Mattel only may submit evidence of what Larian stood to gain **at the**

28  **time** of any alleged breach, not subsequent gain.

FINAL PRE TRIAL CONFERENCE ORDER

EXHIBIT _____ _10_

PAGE _____ _208_

Case 2:04-cv-09049-DOC-RNB   Document 6680-5   Filed 09/14/09   Page 34 of 64   Page ID
#:219950
Case 2:04-cv-09049-SGL-RNB   Document 3950   Filed 06/07/2008   Page 18 of 20

1       3.      MGA Parties' Notice of Motion and Motion in Limine Number 3

2   to Exclude Reference to and Use of Evidence of Other Legal Proceedings;

3       Granted insofar as findings of foreign courts are excluded unless they

4   are the only evidence of MGA's prior positions.

5       4.      MGA Parties' Notice of Motion and Motion in Limine Number 4

6   to Exclude Reference to and Use of MGA's Employment Agreements With its

7   Employees;

8       Denied.

9       5.      MGA Parties' Notice of Motion and Motion in Limine Number 5

10  to Exclude References to Prior Legal Representation;

11      Granted.

12      6.      MGA Parties' Notice of Motion and Motion in Limine Number 6

13  to Exclude Reference to and Use of Phase Two Evidence;

14      Denied as to Nos. 1, 2, and 5. Based on stipulation of counsel, moot as

15  to Nos. 4 and 6. Granted as to No. 3 in 1A but door may be opened in 1B.

16      7.      MGA Parties' Notice of Motion and Motion in Limine Number 7

17  to Exclude All References to and Use of Certain "Expert" Testimony Proffered by

18  Mattel Witness Michael J. Wagner;

19      Daubert hearing to be held one day prior to testifying.

20      8.      MGA Parties' Notice of Motion and Motion in Limine Number 8

21  to Strike Expert Rebuttal Report of Kenneth Hollander and Sections of Expert

22  Rebuttal Reports of Heather McComb, Denise Van Patten, and Nicholas Mirzoeff;

23      Daubert hearing to be held one day prior to testifying.

24      9.      MGA Parties' Notice of Motion and Motion in Limine Number 9

25  to Strike the Expert Report and Testimony of Ralph Oman and John Alex;

26      Daubert hearing to be held one day prior to testifying.

27

28

EXHIBIT _____ *10*

PAGE _____ *209*

1       10.    MGA Parties' Notice of Motion and Motion in Limine Number

2   10 to Exclude All References to and Use of Certain "Expert" Testimony Proffered

3   by Mattel Witness Carol A. Scott;

4           Daubert hearing to be held one day prior to testifying.

5       11.    MGA Parties' Notice of Motion and Motion in Limine Number

6   11 to Strike the Expert Rebuttal Report of Robert C. Lind;

7           Daubert hearing to be held one day prior to testifying.

8       12.    MGA Parties' Notice of Motion and Motion in Limine Number

9   12 to Strike Portion of the Expert Report of Lee Loetz;

10          Daubert hearing to be held one day prior to testifying.

11      13.    Motion in Limine Number 13:  To exclude evidence and

12   argument regarding alleged spoliation by Bryant;

13          Hearing to be held one day prior to Bryant testifying; hearing to include

14   Bryant and experts; excluded from opening statement.

15      14.    Motion in Limine Number 14:  To exclude evidence and

16   argument regarding Bryant's alleged "borrowing" of ideas or concepts from

17   preexisting Mattel projects, including Toon Teens, Diva Starz, the "Swan" line, and

18   Skipper.

19          Denied.

20          The Court ruled upon or otherwise addressed the remaining motions

21   during recent hearings.

22          Bifurcation of the claims and counterclaims was ordered pursuant to

23   the Court's Order of July 2, 2007.  The claims and counterclaims to be tried in Phase

24   1 trial are set forth herein.  The claims remaining for trial in Phase 2 are set forth on

25   pages 8-9 in Mattel's Memorandum of Trial Structure, filed June 20, 2007, as

26   adopted in the July 2, 2007 Order.  At the hearing on May 22, 2008, the Court

27   provided guidance to the parties as to the issues that may be tried as part of Phase 1a

28   versus Phase 1b.

07209/2474226.14

-18-                    Case No. CV 04-9049 SGL (RNBx)
                        FINAL PRE TRIAL CONFERENCE ORDER

EXHIBIT _____ /0
PAGE _____ 2/0

Case 2:04-cv-09049-DOC-RNB   Document 6680-5   Filed 09/14/09   Page 36 of 64   Page ID
#:219398
Case 2:04-cv-09049-SGL-RNB   Document 3950   Filed 06/07/2008   Page 20 of 20

1      The foregoing admissions having been made by the parties, and the

2    parties having specified the foregoing issues of fact and law remaining to be

3    litigated, this Pretrial Conference Order shall supersede the pleadings as they relate

4    to claims or defenses to be tried in Phase 1 and govern the course of the trial of the

5    Phase 1 claims and defense, unless modified to prevent manifest injustice.

6    DATED:  June 07. 2008

7

8

9    Approved as to form by:

10   QUINN EMANUEL URQUHART OLIVER &
     HEDGES, LLP

11

12    By /s/ John B. Quinn
13        John B. Quinn, Esq.
          Attorneys for Mattel, Inc.

14

15   SKADDEN, ARPS, SLATE, MEAGHER &
     FLOM LLP
16

17

18    By /s/ Thomas J. Nolan, Esq.
          Thomas J. Nolan, Esq.
19        Attorneys for MGA Entertainment, Inc.

20

21

22

23

24

25

26

27

28

07209/2474226.14

-19-                                Case No. CV 04-9049 SGL (RNBx)
                                    FINAL PRE TRIAL CONFERENCE ORDER

EXHIBIT _____ 10
PAGE _____ 211

# EXHIBIT 11

EXHIBIT ___11___
PAGE ___212___

1

2

3

4

5

6

7

8 UNITED STATES DISTRICT COURT

9 CENTRAL DISTRICT OF CALIFORNIA

10 EASTERN DIVISION

11

| | |
|---|---|
| 12 MATTEL, INC., | CASE NO. CV 04-9049 SGL (RNBx) |
| 13         Plaintiff, | Consolidated with |
| 14     vs. | Case No. CV 04-09059 SGL (RNBx) Case No. CV 05-02727 SGL (RNBx) |
| 15 MGA ENTERTAINMENT, INC., et al., | Honorable Stephen G. Larson |
| 16         Defendant. | **PHASE B VERDICT FORM AS GIVEN** |
| 17 | |
| AND CONSOLIDATED ACTIONS | |
| 18 | |

19

20

21

22

23

24

25

26

27

28

07209/2609529.2209/260$
584.2

EXHIBIT _____ *11*_____

PAGE _____ *213*_____

PHASE B VERDICT FORM AS GIVEN

1

2 **VERDICT FORM - PHASE B**

3 We answer the questions submitted to us as follows:

4 **I.  Damages for Phase A Claims**

5 (Answer all four questions in this section.)

6

7 **Intentional Interference With Contractual Relations**

8     1.    In Phase A of this trial, you found that MGA Entertainment, Inc.

9 ("MGA") and Isaac Larian are liable to Mattel for intentional interference with

10 contractual relations.  What amount of damages, if any, should be awarded to

11 Mattel?

12     As to MGA:    $   20 MILLION

13     As to Mr. Larian:  $   10 MILLION

14

15 **Aiding and Abetting Breach of Fiduciary Duty**

16     2.    In Phase A of this trial, you found that MGA and Isaac Larian are liable

17 to Mattel for aiding and abetting Carter Bryant's breach of fiduciary duty.  What

18 amount of damages, if any, should be awarded to Mattel?

19     As to MGA:    $   20 MILLION

20     As to Mr. Larian:  $   10 MILLION

21

22 **Aiding and Abetting Breach of the Duty of Loyalty**

23     3.    In Phase A of this trial, you found that MGA and Isaac Larian are liable

24 to Mattel for aiding and abetting Carter Bryant's breach of the duty of loyalty.  What

25 amount of damages, if any, should be awarded to Mattel?

26     As to MGA:    $   20 MILLION

27     As to Mr. Larian:  $   10 MILLION

28

PHASE B VERDICT FORM AS GIVEN

EXHIBIT _____ 11
PAGE _____ 214

1

**Conversion**

2      4.      In Phase A of this trial, you found that MGA, Isaac Larian and MGA

3   Entertainment (HK) Limited ("MGA Hong Kong") are liable to Mattel for

4   conversion.  What amount of damages, if any, should be awarded to Mattel?

5                  As to MGA:                    $    31,500  PLUS 7% INTEREST

6                  As to Mr. Larian:          $        0      CALCULATED FROM

7                  As to MGA Hong Kong: $         0       THE DATE MATTEL'S

8                                                                    PROPERTY WAS

9                                                                    CONVERTED.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-3-

PHASE B VERDICT FORM AS GIVEN

EXHIBIT _____11_____

PAGE _____215_____

## II.   Copyright Infringement

5.      Has Mattel proven by a preponderance of the evidence that MGA is liable to Mattel for copyright infringement?

      Yes     X

      No     _____

If your answer is "yes," then answer Question 6.

If your answer is "no," then answer Question 7.


6.      Was MGA's copyright infringement willful?

      Yes     _____

      No     X

Answer Question 7.


7.      Has Mattel proven by a preponderance of the evidence that Isaac Larian is liable to Mattel for copyright infringement?

      Yes     X

      No     _____

If your answer is "yes," then answer Question 8.

If your answer is "no," then answer Question 9.


8.      Was Mr. Larian's copyright infringement willful?

      Yes     _____

      No     X

Answer Question 9.


9.      Has Mattel proven by a preponderance of the evidence that MGA Hong Kong is liable to Mattel for copyright infringement?

      Yes     X

PHASE B VERDICT FORM AS GIVEN

EXHIBIT _____ 11

PAGE _____ 216

1        No    ____

2    If your answer is "yes," then answer Question 10.

3    If your answer is "no," then answer Question 11.

4

5        10.    Was MGA Hong Kong's copyright infringement willful?

6            Yes    ____

7            No    X

8    Answer Question 11.

9

10       11.    What amount of damages, if any, should be awarded to Mattel for the

11   defendants' copyright infringement?

12       (a)    Copyright Infringement by MGA

13            $    6 Million

14       (b)    Copyright Infringement by Isaac Larian

15            Distributions Mr. Larian received from MGA attributable to Bratz-

16            related works:

17            $    3 Million

18            Value of Mr. Larian's ownership percentage of MGA attributable to

19            Bratz-related works:

20            $    0

21       (c)    Copyright Infringement by MGA Hong Kong:

22            $    1 Million

23

24

25

26

27

28

PHASE B VERDICT FORM AS GIVEN

EXHIBIT    11
PAGE    217

### III.   Punitive Damages

12.   Has Mattel proven by clear and convincing evidence that MGA acted with malice, oppression, or fraud?

      Yes   _____

      No   _X_

If your answer is "yes," then answer Question 13.

If your answer is "no," then answer Question 14.


13.   What amount of punitive damages, if any, should be awarded against MGA?

      $ _____0_____

Answer Question 14.


14.   Has Mattel proven by clear and convincing evidence that Isaac Larian acted with malice, oppression, or fraud?

      Yes   _____

      No   _X_

If your answer is "yes," then answer Question 15.

If your answer is "no," then answer Question 16.


15.   What amount of punitive damages, if any, should be awarded against Mr. Larian?

      $ _____0_____

Answer Question 16.


16.   Has Mattel proven by clear and convincing evidence that MGA Hong Kong acted with malice, oppression, or fraud?

      Yes   _____

07209/2609529.2608584.2

PHASE B VERDICT FORM AS GIVEN

EXHIBIT _____//_____

PAGE _____2l8_____

Case 2:04-cv-09049-DOC-RNB   Document 6680-5   Filed 09/14/09   Page 44 of 64   Page ID
Case 2:04-cv-09049-SGL-RNB   Document 4279   Filed 08/26/2008   Page 7 of 9
#:219746

1      No    X

2      If your answer is "yes," then answer Question 17.

3      If your answer is "no," then answer Question 18.

4

5      17.    What amount of punitive damages, if any, should be awarded against

6   MGA Hong Kong?

7      $_____0_____

8      Answer Question 18.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07209/2609529.2608584.2

-7-

PHASE B VERDICT FORM AS GIVEN

EXHIBIT ___11___

PAGE ___219___

Case 2:04-cv-09049-DOC-RNB   Document 6680-5   Filed 09/14/09   Page 45 of 64   Page ID
Case 2:04-cv-09049-SGL-RNB   Document 4279   Filed 08/26/2008   Page 8 of 9
#:219743

1

## IV.  Fraudulent Concealment

2                    (Answer all five questions in this section.)

3

4          18.    Has Mattel proven by a preponderance of the evidence that MGA

5    fraudulently concealed the bases for Mattel's claim of intentional interference with

6    contract against it until at least April 27, 2002?

7                    Yes    _X_

8                    No     ____

9

10         19.    Has Mattel proven by a preponderance of the evidence that Isaac Larian

11   fraudulently concealed the bases for Mattel's claim of intentional interference with

12   contract against him until at least April 27, 2002?

13                   Yes    ____

14                   No     _X_

15

16         20.    Has Mattel proven by a preponderance of the evidence that MGA

17   fraudulently concealed the bases for Mattel's claim of conversion against it until at

18   least April 27, 2001?

19                   Yes    _X_

20                   No     ____

21

22         21.    Has Mattel proven by a preponderance of the evidence that Mr. Larian

23   fraudulently concealed the bases for Mattel's claim of conversion against him until

24   at least April 27, 2001?

25                   Yes    ____

26                   No     _X_

27

28

07209/2609529.2608584

-8-

PHASE B VERDICT FORM AS GIVEN

EXHIBIT ____11____
PAGE ____220____

1    22.    Has Mattel proven by a preponderance of the evidence that MGA Hong

2 Kong fraudulently concealed the bases for Mattel's claim of conversion against it

3 until at least April 27, 2001?

4              Yes    _____

5              No      _X_

6

7        Once this verdict form is completed, the foreperson of the jury should sign

8 and date on the lines below.

9

10 DATED: *August 26, 2008*

              */s/*
              _____
              Jury Foreperson

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07209/2609529.2608584.2

-9-

# EXHIBIT 12

EXHIBIT ____12____
PAGE ____222____

Case 2:04-cv-09049-DOC-RNB   Document 6680-5   Filed 09/14/09   Page 48 of 64   Page ID
#:219750
Case 2:04-cv-09049-SGL-RNB   Document 4439   Filed 12/03/2008   Page 1 of 17

O

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
<u>CIVIL MINUTES -- GENERAL</u>

Case No.    CV 04-09049 SGL(RNBx)                    Date: December 3, 2008
Title:      MATTEL, INC. V. MGA ENTERTAINMENT, INC., et al.
================================================================================
PRESENT:  HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

James Holmes                          None Present
Courtroom Deputy Clerk                Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:     ATTORNEYS PRESENT FOR DEFENDANTS:

None Present                          None Present

PROCEEDINGS:

**ORDER FINDING IN FAVOR OF MATTEL AS TO THE MGA PARTIES' AFFIRMATIVE DEFENSES**

**ORDER GRANTING MATTEL'S MOTION FOR DECLARATORY JUDGMENT (DOCKET #4303)**

**ORDER GRANTING MATTEL'S MOTION FOR CONSTRUCTIVE TRUST AND § 17200 INJUNCTIVE RELIEF (DOCKET #4305)**

**ORDER GRANTING MATTEL'S MOTION FOR PERMANENT INJUNCTION (DOCKET #4306)**

**ORDER DENYING AS MOOT MOTION TO STRIKE PORTIONS OF HUTNYAN DECLARATIONS AND EXHIBITS THERETO (DOCKET #4351)**

**ORDER DENYING MOTION TO STRIKE THE PROCTOR, KEISER, AND HOLLANDER DECLARATIONS (DOCKET #4352)**

**ORDER DENYING AS MOOT MOTION TO STRIKE MEYER DECLARATION (DOCKET #4377)**

**ORDER STAYING COURT'S ORDER PENDING CONSIDERATION OF THE PARTIES' POST-**

MINUTES FORM 90
CIVIL -- GEN                          1                    Initials of Deputy Clerk: jh

EXHIBIT _____ 17
PAGE _____ 223

**TRIAL MOTIONS**

**ORDER SETTING FORTH FURTHER BRIEFING SCHEDULE**

**ORDER REGARDING DISCOVERY MASTER PROPOSALS FOR PHASE 2**

**ORDER REGARDING JOINTLY LODGED LAPTOP COMPUTER**

**ORDER REGARDING SERVICE OF PERMANENT INJUNCTION**

**FILED CONCURRENTLY HEREWITH:**

**(1) MATTEL'S PROPOSED ORDER (AS MODIFIED BY THE COURT) GRANTING DECLARATORY JUDGMENT**

**(2) MATTEL'S PROPOSED ORDER (AS MODIFIED BY THE COURT) GRANTING MATTEL'S MOTION FOR CONSTRUCTIVE TRUST AND FOR FINDING LIABILITY AND INJUNCTIVE RELIEF PURSUANT TO CAL. BUS. & PROF. CODE § 17200**

**(3) MATTEL'S PROPOSED ORDER (AS MODIFIED BY THE COURT) GRANTING MATTEL'S MOTION FOR PERMANENT INJUNCTION**

These matters were heard on November 10, 2008, after extensive briefing by the parties. After a two-phase jury trial, the Court considers certain equitable issues (referred to as Phase 1C of the trial) and enters the following Order. Filed concurrently herewith are: (1) Mattel's Proposed Order (as modified by the Court) Granting Declaratory Judgment; (2) Mattel's Proposed Order (as modified by the Court) Granting Mattel's Motion for Constructive Trust and for Finding Liability and Injunctive Relief Pursuant to Cal. Bus. & Prof. Code § 17200; and (3) Mattel's Proposed Order (as modified by the Court) Granting Mattel's Motion for Permanent Injunction.

In reaching the rulings set forth herein, the Court has considered the parties' briefs and exhibits submitted during Phase 1C of the trial, the arguments of counsel, as well as the entire record (including the evidence properly submitted in Phase 1A and Phase 1B of the trial) and its previous Orders.

The Court refers collectively to all defendants herein, including MGA CEO Isaac Larian ("Larian"), as "the MGA parties". MGA Entertainment, Inc., is referred to as "MGAE".

The Court has carefully and deliberately considered the parties' well-presented legal and equitable arguments, authorities, and evidence concerning the motions identified above. In its final analysis, the Court finds, as did the jury, that the preponderance of evidence establishes that Carter Bryant ("Bryant") created and developed the name, the concept, and, together with Margaret Leahy, the prototypical sculpt for the hugely-successful Bratz brand of female fashion

MINUTES FORM 90
CIVIL -- GEN                                        2                          Initials of Deputy Clerk: jh

EXHIBIT _____ 12
PAGE _____ 224

Case 2:04-cv-09049-DOC-RNB   Document 6680-5   Filed 09/14/09   Page 50 of 64   Page ID
#:219752
Case 2:04-cv-09049-SGL-RNB   Document 4439   Filed 12/03/2008   Page 3 of 17

dolls while working as an employee of Mattel and while bound by the terms of an Inventions
Agreement, which provided that all rights to such property, and the property itself, belong to Mattel.
Moreover, the Court further finds, as did the jury, that the preponderance of the evidence
establishes that Isaac Larian and MGAE intentionally interfered with Bryant's contractual relations
with Mattel, aided and abetted Bryant's breach of fiduciary duty to Mattel, aided and abetted
Bryant's breach of his duty of loyalty to Mattel, and unlawfully converted certain property of Mattel.
Finally, the Court finds, as did the jury, that the preponderance of the evidence establishes that the
MGA parties, in further developing, producing, and marketing its Bratz brand of female fashion
dolls, are liable to Mattel for copyright infringement.

## I. The MGA Parties' Affirmative Defenses

Through its "Statement of Position Regarding Phase 1C Issues" (docket #4308), the MGA
parties seek the Court's verdict in their favor as to their affirmative defenses of laches, estoppel,
and waiver. As set forth below, the Court rules in favor of Mattel, and against the MGA parties as
to these three remaining affirmative defenses.[1]

### A. Laches

Laches is an equitable defense that may bar a claim where a defendant establishes "(1)
lack of diligence by the plaintiff, and (2) prejudice to the defendant." Grand Canyon Trust v.
Tucson Elec. Power Co., 391 F.3d 979, 987 (9th Cir. 2004). The MGA parties establish neither
element.

Because the Court has already found that all the claims asserted against the MGA parties
were filed within the applicable limitations periods, the Court starts with the presumption that
laches is inapplicable. Jarrow Formulas, Inc. v. Nutrition Now, Inc., 304 F.3d 829, 835 (9th Cir.
2002).

Mattel has not delayed in bringing its claims against the MGA parties. The Court has
already found, based on the undisputed evidence, that Mattel had no reason to know of its claims
against Bryant until November 23, 2003, and that it had no knowledge of its claims against MGA
and Larian until Bryant was deposed approximately a year later on November 4, 2004. MGAE
intervened in Mattel's suit against Bryant approximately one month later on December 7, 2004.
See Dec. 7, 2004, Stip. & Order (04-9059 docket #36) ("MGA[] believes . . . that it has a
significantly protectable interest relating to the subject matter of the action, . . . and that MGA's
interest is not adequately represented by the existing parties."). Thereafter, the parties briefed
Mattel's motion to remand (filed on December 1, 2004, and denied on March 4, 2005), before a
stay was entered in the case on May 20, 2005, pending the Ninth Circuit's consideration of an

---

[1] By advancing only the affirmative defenses of laches, estoppel, and waiver in their Phase
1C brief, the MGA parties have implicitly waived the right to pursue any other affirmative defenses
that they have not already expressly waived.

Initials of Deputy Clerk: jh

EXHIBIT _____ 12
PAGE _____ 225

interlocutory appeal. After MGAE's intervention and before the stay was entered, the parties, including MGAE, engaged in discovery, and the Court considered certain discovery motions, including a motion to compel the deposition of Isaac Larian filed on March 17, 2005. The stay remained in place until after the Ninth Circuit affirmed the Court's denial of the motion to remand; it was lifted on May 16, 2006. Six months later, on November 17, 2006, Mattel sought leave to file its claims against the MGA parties. On this record, the Court finds no lack of diligence by Mattel.

Nor have the MGA parties shown they suffered resulting prejudice. MGAE was permitted to intervene in the lawsuit filed by Mattel against Carter Bryant only one month after it became evident that its rights could potentially be affected, and it did so with the express purpose of protecting its own rights. The other MGA parties have not shown that they suffered any prejudice unique to them or that the intervention by MGAE was not designed to protect their rights.

Moreover, the record does not support the evidentiary prejudice claimed by the MGA parties, and the record is devoid of any expectation-based prejudice (i.e., evidence of what MGA would have done differently had the claims against them been asserted sooner). Indeed, to the contrary, the record reveals that the MGA entities have continued to promote (and profit from) the Bratz brand during the entire pendency of the current litigation.

Because of the presumption that laches will not bar timely claims, and because the Court finds that the MGA parties have failed to establish either element of laches, the Court finds in favor of Mattel as to the affirmative defense of laches.

### B.     Estoppel

For equitable estoppel to preclude Mattel's claims here, the MGA parties must establish four elements:

> (1) [T]he party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel has a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury.

Strong v. County of Santa Cruz, 15 Cal.3d 720, 725 (1975).

The MGA parties cannot establish the first element because, as noted above, the Court has already found, based on the undisputed evidence, that Mattel had no reason to know of its claims against Bryant until November 23, 2003, and that it had no knowledge of its claims against MGA and Larian until Bryant was deposed almost a year later.

The MGA parties have produced no evidence that Mattel intended them to act upon any apparent intention to refrain from asserting any claims against them. To the contrary, MGAE quickly intervened in Mattel's suit against Bryant to protect its interests.

MINUTES FORM 90
CIVIL -- GEN                                          4                    Initials of Deputy Clerk: jh

EXHIBIT ___12___
PAGE ___226___

Case 2:04-cv-09049-DOC-RNB  Document 6680-5  Filed 09/14/09  Page 52 of 64  Page ID
#:219754
Case 2:04-cv-09049-SGL-RNB  Document 4439  Filed 12/03/2008  Page 5 of 17

Moreover, the MGA parties had no basis upon which to rely on Mattel's conduct. As found by the jury, they had superior knowledge regarding Bryant's creation of the Bratz drawings (and the timing of that creation).

Because the Court finds that the MGA parties cannot establish all the elements of estoppel, the Court finds in favor of Mattel as to the affirmative defense of estoppel.

### C.     Waiver

"Waiver is the intentional relinquishment of a known right with knowledge of its existence and the intent to relinquish it." United States v. King Features Entertainment, Inc., 843 F.2d 394, 399 (1988).

Here, the MGA parties contend that Mattel's tolerance of its employees' "moonlighting" for its competitors was so widespread as to constitute such a relinquishment. Although such implied waivers may be found where a plaintiff's conduct "is so inconsistent with the intent to enforce the right in question as to induce a reasonable belief that such right has been relinquished," Medico-Dental etc. Co. v. Horton & Converse, 21 Cal.2d 411, 432 (1942), no such conduct is present here.

No evidence of record suggests that Mattel tolerated the type of conduct in which Bryant engaged. The Court has previously addressed, and will not belabor here, the distinctions to be made between the limited evidence regarding "moonlighting" in the record and the conduct in which Bryant engaged. The evidence establishes, and the jury found, that while employed by Mattel as a fashion designer, Bryant preliminarily developed designs for and pitched a line of fashion dolls to Mattel's direct competitor. There is no evidence that Mattel has ever tolerated this type of conduct. Instead, several witness testified to their belief that such conduct would result in immediate termination of the offending employees. Indeed, the record is replete with details of the steps taken by Bryant, the MGA parties, and MGA employees to conceal the extent of Bryant's involvement in the Bratz project while he was employed by Mattel.

The Court finds in favor of Mattel as to the affirmative defense of waiver.

### II. Declaratory Relief Motion (docket #4303)

In its motion for declaratory judgment, Mattel seeks, pursuant to its thirteenth cause of action, a declaration of its rights (and the MGA parties' lack of rights) regarding the Bratz-related works, including certain drawings, sculpts, and ideas.[2] Mattel also seeks imposition of a

---

[2]  The parties and the Court are all equally aware that ideas are not copyrightable. However, they are, as set forth in the Court's summary judgment order, assignable under California state law. As noted in the Court's summary judgment order, such an assignment was made by Bryant to Mattel.

MINUTES FORM 90                                                    Initials of Deputy Clerk: jh
CIVIL -- GEN                             5

EXHIBIT ____12____
PAGE ____227____

Case 2:04-cv-09049-DOC-RNB  Document 6680-5  Filed 09/14/09  Page 53 of 64  Page ID
#:219755
Case 2:04-cv-09049-SGL-RNB    Document 4439    Filed 12/03/2008    Page 6 of 17

constructive trust as to MGA's copyright registrations in certain Bratz drawings.  As detailed in the concurrently filed Order, the Court **GRANTS** Mattel's Motion for Declaratory Judgment (docket #4303).

In opposition, the MGA parties contend that the relief sought by Mattel should not be granted because it is preempted by the Copyright Act.  The Court rejects this argument.  The Court's ruling regarding preemption is set forth in the Court's summary judgment order, which the Court does not here modify.

Declaratory relief is generally granted "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding."  Bilbrey by Bilbrey v. Brown, 738 F.2d 1462, 1470 (1984).

Here, considering this legal standard and based on the relationship among the parties, the jury's verdicts, the Court's previous Orders, and the entire record, the Court finds that the declaratory relief sought by Mattel is appropriate.[3]  Concurrently herewith, the Court has entered, as modified, Mattel's proposed order for declaratory relief.

### III. Motion for Constructive Trust and § 17200 Injunctive Relief (docket #4505)

As set forth more fully in its Motion, Mattel seeks, pursuant to California state law, imposition of a constructive trust over the trademarks "Bratz" and "Jade."  Mattel also seeks, pursuant to its twelfth cause of action, a finding that the MGA parties violated Cal. Bus. & Prof. Code § 17200 on the basis of the jury's findings that the MGA parties converted Mattel's property, tortiously interfered by Mattel's contractual relations, and aided and abetted Bryant's breaches of his fiduciary duty and the duty of loyalty.  Pursuant to this finding, and in addition to imposition of a constructive trust as to the Bratz and Jade marks, Mattel seeks an injunction prohibiting the MGA parties from using these marks.  As detailed in the concurrently filed Order, the Court **GRANTS** Mattel's Motion for Constructive Trust and § 17200 Injunctive Relief (docket #4305).

### A.    Constructive Trust

Cal. Civ. Code § 2223 provides that "[o]ne who wrongfully detains a thing is an involuntary trustee thereof, for the benefit of the owner."  Cal. Civ. Code § 2224 explicitly addresses things gained by wrongful acts:  "One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he or she has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it."  The parties agree on the resulting elements, which may be stated as

---

[3]  The appropriateness of the constructive trust remedy is discussed below, in a separate section, but applies equally here.

EXHIBIT _____ 12
PAGE _____ 228

follows: "(1) the existence of a *res* (property or some interest in property); (2) the right of a complaining party to that *res*; and (3) some wrongful acquisition or detention of the *res* by another party who is not entitled to it. Communist Party v. 522 Valencia, Inc., 35 Cal.App.4th 980, 990 (1995).

Significantly, because the purpose of a constructive trust is to prevent unjust enrichment, enhancement of value is given to the beneficiary of the constructive trust. Haskel Engineering & Supply Co. v. Hartford Acc. & Indem. Co., 78 Cal.App.3d 371, 375 (1978)

Here, the jury found that the MGA parties wrongfully acquired the idea for the name "Bratz" along with the idea and preliminary drawings for a line of fashion dolls. The same is true for the one Bratz character who retained the name given her by Carter Bryant: "Jade."[4]  In addition to wrongfully acquiring them, the MGA parties continue to wrongfully retain them. The MGA parties enhanced the value of the names by acquiring trademark rights to them. California law requires, in this instance, that a constructive trust be imposed as to these marks. Mattel is the beneficiary of the constructive trust and MGA's trademarks in "Bratz" and "Jade" inure to Mattel's benefit.

In making this conclusion, the Court has considered, and rejected, the MGA parties' argument that Mattel has disavowed an intention to seek this remedy or waited too long to seek it. Mattel has conceded that it is not asserting a trademark infringement claim. It cannot, because it has not used the relevant marks in commerce, and one must do so to acquire trademark rights. Conversive, Inc. v. Conversagent, Inc., 433 F.Supp.2d 1079, 1089 (C.D. Cal. 2006) (citing Brookfield Communications, Inc. v. West Coast Entertainment Corp., 174 F.3d 1036, 1046 (9th Cir. 1999)). However, Mattel has not disavowed its intent to seek a constructive trust over the marks that were created by Bryant, with rights thereto acquired by the MGA parties through registration and use in commerce. This remedy is well within the scope of relief that is sought in Mattel's second amended answer and counterclaims, see SAAC at 73 ¶ 9 (Prayer for Relief) (seeking "imposition of a constructive trust over Bratz, including without limitations registrations and applications for registrations relating thereto made or filed by [the MGA parties] and third parties, and all profits, monies, royalties and any other benefits derived or obtained from [the MGA parties'] exercise of ownership, use, sale, distribution and licensing of Bratz"), and the Court has rejected all timeliness challenges to Mattel's claims.

**B.     § 17200 Violation**

The record reveals sufficient evidence of injury-in-fact to Mattel to confer standing upon it to assert its § 17200 claim. Specifically, as testified to by Mattel officers (and acknowledged by MGAE officers and attorneys), Mattel has suffered lost market share as a result of the sales of the Bratz dolls. Moreover, the jury was instructed that "harm" to Mattel was a necessary element of a number of state law claims. See Final Jury Instructions as Given [Phase 1A], docket #4115, at

---

[4]   Bryant's other characters were re-named before they were marketed:  Zoe became the now-familiar Cloe, Hallidae became Sasha, and Lupe became Yasmin.

EXHIBIT _____ 12
PAGE _____ 229

Case 2:04-cv-09049-DOC-RNB   Document 6680-5   Filed 09/14/09   Page 55 of 64   Page ID
#:219757
Case 2:04-cv-09049-SGL-RNB   Document 4439   Filed 12/03/2008   Page 8 of 17

Instruction Nos. 22, 25-27, and 29 (intentional interference with contractual relations, aiding and abetting breaches of fiduciary duty and the duty of loyalty, and conversion).  The jury's finding in favor of Mattel as to those claims necessarily implies a factual finding by the jury as to the specified element of harm to Mattel and, as explained in more detail below, the Court is bound by that implicit factual finding.  Los Angeles Police Protective League v. Gates, 995 F.2d 1469, 1473 (9th Cir. 1993) (finding that by awarding damages on a specific claim, the jury implicitly found that the plaintiff had proven one particular element of that claim).

As set forth in a previous Order, this claim is only partially preempted by the Copyright Act.  The preempted portion of Mattel's § 17200 claim did not survive summary judgment and is not at issue here.

Based on the jury's findings that the MGA parties converted Mattel's property, tortiously interfered with its contractual relations, and aided and abetted Bryant's breaches of his fiduciary duty and the duty of loyalty, the Court finds that the MGA parties also violated Cal. Bus. & Prof. Code § 17200.

### C.     § 17200 Injunctive Relief

Where a Court finds violation of § 17200, it has broad powers to shape appropriate injunctive relief:

> Any person who . . . has engaged . . . in unfair competition may be enjoined in any court of competent jurisdiction.  The court may make such orders or judgments, . . . as may be necessary to prevent the use or employment by any person of any practice which [either] constitutes unfair competition, . . . or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition.

Cal. Bus. & Prof. § 17203.

The injunction sought by Mattel's proposed order (as modified by the Court) is necessary to restore to Mattel the property acquired as a result of the MGA parties' unfair competition.

For the reasons set forth above, concurrently herewith, the Court has entered, as modified, Mattel's proposed order for constructive trust and § 17200 injunctive relief.

### IV. Motion for Permanent Injunction (docket #4306)

### A.     Facts Supporting Injunctive Relief

The present motions, to varying degrees, implicate the question of to what extent a Court trying equitable claims is bound by a jury's factual findings related to the same underlying conduct.

MINUTES FORM 90
CIVIL -- GEN                                    8                      Initials of Deputy Clerk: jh

EXHIBIT _____ 12
PAGE _____ 230

Case 2:04-cv-09049-DOC-RNB   Document 6680-5   Filed 09/14/09   Page 56 of 64   Page ID
#:219758
Case 2:04-cv-09049-SGL-RNB   Document 4439   Filed 12/03/2008   Page 9 of 17

The question comes into sharpest focus in Mattel's Motion for Permanent Injunction.

"[W]here legal claims are tried by a jury and equitable claims are tried by a judge, and the claims are based on the same facts, the Seventh Amendment requires the trial judge to follow the jury's implicit or explicit factual determinations." <u>Los Angeles Police Protective League v. Gates</u>, 995 F.2d 1469, 1473 (9th Cir. 1993) (internal quotation marks and citation omitted). In the absence of an express finding, a court must determine whether implicit factual determinations by the jury can be inferred, and should consult the jury's verdict and the jury instructions to make this determination. <u>Id.</u> (finding, based on an examination of the jury instructions and the jury's verdict awarding damages as to a specific claim, that the jury implicitly found that plaintiff had proven one particular element of that claim).

The Court is certainly aware that the jury returned an award of damages that was far less than that sought by Mattel. Moreover, the Court is aware that a controversy exists as to the actual amount of the jury's verdict. <u>See</u> Mattel's Submission Regarding Email from Juror No. 7 and Request to Recall the Jury, docket #4288 (denied by Order dated September 3, 2008, docket #4295).

MGA has argued that the jury has found that only the so-called "first generation" Bratz dolls were infringing. The jury made no express finding on this issue; the general verdict form they were provided did not request such a detailed finding. Thus, in accordance with <u>Gates</u>, the Court looks to the jury instructions to determine any implicit findings.

The jury was instructed that "Mattel is entitled to recover any profits attributed to the infringement." MGA attempts to equate the $10 million figure awarded by the jury for copyright infringement to the amount of profits related to the first generation Bratz dolls. The difficulty with this "equation" is that it is woefully unbalanced. To be sure, MGA's damages expert presented evidence that the first generation Bratz dolls netted approximately $4 million in profits; had the jury awarded this amount as copyright damages, then the Court might be persuaded that the jury implicitly found that the infringement was limited to the first generation Bratz dolls. But that is not the case. The factual finding advanced by MGA cannot be inferred from the jury award.

In making this ruling, the Court is mindful of the jury's note that queried whether they could find infringement as to the first generation dolls and no other dolls. The Court, without objection from counsel, answered that question affirmatively. Although this note reveals that the jury considered limiting their finding of infringement to the first generation, it does not reveal that they ultimately chose that conclusion. Again, had the jury awarded an amount equal to the amount of profits generated by the first generation Bratz dolls, the Court would find, based on the award and the jury's note, that the jury implicitly found infringement as to the first generation Bratz dolls only.

Alternatively, counsel posited at oral argument, that the jury found that a large portion of the

MINUTES FORM 90
CIVIL -- GEN                                    9                    Initials of Deputy Clerk: jh

EXHIBIT _____ 12
PAGE _____ 231

Case 2:04-cv-09049-DOC-RNB   Document 6680-5   Filed 09/14/09   Page 57 of 64   Page ID
#:219759
Case 2:04-cv-09049-SGL-RNB   Document 4439   Filed 12/03/2008   Page 10 of 17

Bratz dolls infringed Mattel's copyrights, but only in very minute ways.[5]  Counsel likened the jury's damage award to a rug that, no matter which way one moved it, simply would not cover the floor. See Nov. 10, 2008, Tr. at 100-101.  Counsel explained that the jury's findings led to one conclusion or the other and, regardless of which conclusion was chosen, the jury's finding did not support an injunction:

> The rug is too small for an injunction, regardless of how you allocate that money.  You either come up with a vanishingly small subset of infringing products, or you come up with a vanishingly small percentage of infringement by all of the products.  And the jury has put that cap for us.

Id.  Although colorful, counsel's metaphor is not helpful.  Assuming that the Court would be bound by a jury's factual finding in a case where only two possible inferences -- both of which would lead the Court to the same conclusion -- were possible, this is not that case.

Where a jury returns a monetary award based on a particular piece of evidence such as an expert report, the Court will infer the factual findings that necessarily flow from it.  But where, as here, the Court and the parties are left to hazard various guesses as to the jury's intentions, the Court can make no principled inferences and must therefore engage in its own fact-finding.[6]

The Court has carefully examined each of the exhibits attached to the proposed preliminary injunction, as well as the actual exhibits being stored in Courtroom Four of the U.S. Courthouse in Riverside, and finds that the dolls depicted in Exs. 3 and 4, and the products depicted in Exs. 5 and 6, are, pursuant to the standard set forth in the Court's Orders dated July 24, 2008, and August 15, 2008, substantially similar to Mattel's registered copyrighted drawings and are embodiments of the sculpts depicted in Exs. 1 and 2.  In doing so, the Court has first examined the specific expressive elements of the works at issue and has compared them to those found in the exhibits referenced

---

[5]   This argument was not raised in the opposition papers filed by the MGA parties, and is rejected for that reason as well.  See Opp. at 21 ("Here, the circumstances clearly show that the only reasonable conclusion to draw is that the jury's infringement finding was limited to a small universe of products, specifically the first generation Bratz dolls as clothed and packaged.") (emphasis added).

[6]   The MGA parties hazard such a guess in their opposition, wherein they attempt to explain how, in the jury's mind, $4 million in first-generation profits could equate to $10 million total copyright infringement award: "The jury's decision to award $6 million against MGA[E] (and $10 million total) rather than simply the $4 million] argued by MGA as profits for the first generation may be due to the jury believing that MGA's proffer of $4 million in profits on nearly $80 million revenue was a bit low."  Opp. at 21 n.30.  This guessing game illustrates why no factual findings can be inferred from the jury's copyright infringement award and why the Court is obligated to make its own factual findings.

MINUTES FORM 90
CIVIL -- GEN

10

Initials of Deputy Clerk: jh

EXHIBIT _____12_____
PAGE _____232_____

Case 2:04-cv-09049-DOC-RNB   Document 6680-5   Filed 09/14/09   Page 58 of 64   Page ID
#:219760
Case 2:04-cv-09049-SGL-RNB      Document 4439      Filed 12/03/2008      Page 11 of 17

above, and the Court has then further examined the overall similarity of the expression in various works from the perspective of the ordinary observer. Although the Court recognizes that there are differences between the works, the Court ultimately finds that those dolls and products set forth in the above-referenced exhibits are **substantially similar** to Mattel's registered copyrighted drawings and are embodiments of the sculpts depicted in Exs. 1 and 2. Especially important to the Court's conclusion is the consistency of the particularized expression of the dolls' heads, lips, eyes, eyebrows, eye features, noses, as well as the particularized expression of certain anatomical features relative to others (most notably the doll lips, doll eyes, doll eyebrows, and certain other doll eye features) and de-emphasis of certain anatomical features (most notably the minimalized doll nose and thin, small doll bodies). Also important to the Court is the particularized, synergistic compilation and expression of the human form and anatomy that quite clearly expresses a unique style and conveys a distinct look or attitude, especially as perceived by the intended consumer market (7-12 year old girls). The evidence on this latter point is particularly compelling, supported by both analytical and market analysis. Together, these features clearly give each of the dolls the particularized expression to which the Court referred in its July 24, 2008, and August 15, 2008, Orders.

**B.      Standard for Awarding Permanent Injunctive Relief**

The Supreme Court recently announced the standard for granting a permanent injunction:

> According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006).

**1.      Irreparable Injury**

The Court begins, then, by looking to whether Mattel has established that it will suffer irreparable injury if an injunction is not granted.

Prior to the eBay decision, where a plaintiff sought a preliminary injunction, irreparable injury was presumed in intellectual property cases; in light of the eBay decision, some doubt has been cast on whether courts should continue to apply that presumption. See Broadcom Corp. v. Qualcomm Inc., 543 F.3d 683, 702 (Fed. Cir. 2008) (noting that the continuing viability of the presumption is "an open question").

Mattel has established its exclusive rights to the Bratz drawings, and the Court has found

MINUTES FORM 90
CIVIL -- GEN                                    11                        Initials of Deputy Clerk: jh

EXHIBIT _____ 12
PAGE _____ 233

that hundreds of the MGA parties' products -- including all the currently available core female fashion dolls Mattel was able to locate in the marketplace -- infringe those rights. The MGA parties have evinced an intention to continue marketing those dolls. This represents a wholesale inability on the part of Mattel to enforce its exclusive rights under the Copyright Act, amounting to irreparable harm. Taylor Corp. v. Four Seasons Greetings, LLC, 403 F.3d 958, 968 (8th Cir. 2005).

MGA criticizes Mattel's reliance on Taylor, citing Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd., 518 F.Supp.2d 1197, 1211 n.13 (C.D. Cal. 2007) (Wilson, J.). The Grokster case holds that, in copyright permanent injunction cases, a presumption of irreparable injury is not permitted in light of eBay. In Grokster, the court rejected the rationale of Taylor, stating:

> [T]his Court is not persuaded by the Eighth Circuit's pre-eBay conclusion in Taylor Corp. v. Four Seasons Greetings, LLC, 403 F.3d 958, 968 (8th Cir. 2005), that because "[a plaintiff] certainly has the right to control the use of its copyrighted materials, . . . irreparable harm inescapably flows from the denial of that right." In substance, such language is nothing more than a disguised presumption, particularly with the use of the word "inescapably." After eBay, Plaintiffs cannot rely on the pure fact of infringement in order to establish irreparable harm.

Grokster, 518 F. Supp.2d at 1211 n.13. Judge Wilson's point is well-taken. Although the Taylor court did not purport to apply a presumption of irreparable harm, its use of the word "inescapably" in this phrase certainly could indicate that it was merely presuming irreparable harm. However, a review of the Taylor case makes clear that the Eighth Circuit considered the implications of allowing an infringer to continue to infringe: "[I]n copyright infringement actions, the denial of a request for injunctive relief could otherwise "amount to a forced license to use the creative work of another." Taylor Corp., 403 F.3d at 967-68. This rationale removes Taylor further from the application of a "disguised presumption" of irreparable harm and closer to an actual finding of irreparable harm.

At least one district court within the Ninth Circuit is in accord with the Court's decision today, as it has decided, post-eBay, that a plaintiff who establishes past infringement and the threat of future infringement amounts to irreparable harm. Designer Skin, LLC v. S & L Vitamins, Inc., 2008 WL 4174882 at *5 (D. Ariz. 2008) (Teilborg, J.). Judge Teilborg's rationale is well articulated:

> Whatever else might be said against the propriety of a rule that holds that past infringement plus the threat of future infringement equals irreparable harm, it seems clear to this Court that such a rule would not run afoul of eBay's directives. First of all, the eBay Court did not address the showing necessary to establish "irreparable harm." It merely held that the plaintiff has the burden of proving it. Second, this two-part test does not resurrect the presumption of irreparable harm impliedly laid to rest by the eBay court. It simply recognizes that a

EXHIBIT _____ 12
PAGE _____ 234

Case 2:04-cv-09049-DOC-RNB  Document 6680-5  Filed 09/14/09  Page 60 of 64  Page ID
#:219762
Case 2:04-cv-09049-SGL-RNB  Document 4439  Filed 12/03/2008  Page 13 of 17

plaintiff meets the burden of proving irreparable harm by making this
two-part showing. And finally, the two-part test does not represent a
rule [prohibited by eBay] that an injunction automatically follows a
determination that a copyright has been infringed. . . . In exercising
their equitable discretion, courts would still have the freedom to deny
injunctive relief when the public interest or the balance of hardships
weighs against such relief.

Designer Skin, 2008 WL 4174882 at *5 (citation omitted).

Indeed, this is not so complex an issue as applied to the facts of this particular case. The
statutory directive to the Court is clear: "Any court having jurisdiction of a civil action arising under
this title may, . . . grant temporary and final injunctions on such terms as it may deem reasonable
*to prevent or restrain infringement of a copyright*." 17 U.S.C. § 502 (emphasis added). The
Court can envision no case more appropriate for a finding of irreparable harm. Here, as the record
shows and as the jury found, an employee bound by contract and fiduciary duty to communicate to
his employer (and keep confidential from all others) all copyrightable works he creates during the
term of his employment, not only fails to so communicate but actually secretly purports to convey
the rights thereto to a direct competitor of his employer. The rights to those works are actively
concealed from their true owner (by both the employee and the competitor) for years while the
competitor exploits the works, reaping profits therefrom totaling hundreds of millions of dollars.
After millions of pages of discovery are produced, thousands of filings are submitted, scores and
scores of motions are decided by the Court, and after months of trial and two jury verdicts in favor
of the plaintiff, defendants remain steadfast in their intention to continue to produce their infringing
products. Viewed in this light, Mattel has established irreparable injury on the basis of the MGA
parties' past infringement and the high probability of continued acts of infringement.

### 2.    Inadequate Legal Remedies

Unless MGA is enjoined, Mattel would be forced to sue each retailer and distributor to stop
the sale and distribution of the infringing dolls; therefore, the legal remedies are inadequate. See
Continental Airlines, Inc. v. Intra Brokers, Inc., 24 F.3d 1099, 1105 (9th Cir. 1994).

### 3.    Balance of Equities

Factually, the hardship on MGA weighs very heavily upon the Court. The Court has
expressed its concerns in this regard on the record. The evidence at trial showed that, at least
historically, Bratz is the brand that has made MGA profitable. And the proposed injunction
addresses the core of that brand -- most notably, the female fashion dolls.

However, where, as here, the only hardship that will be suffered is lost profits from the
cessation of its infringing activities, the Court, in the final analysis, must afford this very little -- if
any -- weight. Triad Systems Corp. v. Southeastern Exp. Co., 64 F.3d 1330, 1338 (9th Cir. 1995)
("Where the only hardship that the defendant will suffer is lost profits from an activity which has

EXHIBIT  12
PAGE  235

been shown likely to be infringing, such an argument in defense merits little equitable consideration . . . .") (internal quotation marks and citations omitted), accord, Cadence Design Systems, Inc. v. Avant! Corp., 125 F.3d 824, 829-30 (9th Cir. 1997) (collecting cases). The balance of equities favor Mattel.

### 4.    Public Interest

There is a strong economic interest, especially in these troubled economic times, in maintaining a profitable enterprise as a going concern. However, there is also a strong public interest in enforcing copyright laws in a uniform manner. Indeed, nothing is more essential to long-term economic prosperity than the stability provided by the rule of law. Although the MGA parties raise excellent points in their opposition, in the end, the public interest is served by precluding defendants from engaging in copyright infringement. The injunction issued by the Court does no more than that.

### C.    Scope of Injunction

The scope of the permanent injunction is set forth in a separate order. Four issues raised in the parties' papers warrant the brief discussion that follows.

### 1.    Impoundment and Destruction

As set forth more fully in its motion, Mattel seeks impoundment of Bratz dolls and destruction of the specialized plates, molds, and matrices used to make them. Impoundment of existing infringing products and the destruction of the means to make those products are clearly remedies contemplated by the Copyright Act. See 17 U.S.C. § 503(a). The MGA parties argue that these remedies are inappropriate because there is no ongoing infringement or, at the very least, its products infringe very little. In its findings supporting the issuance of a permanent injunction, the Court has rejected this premise, and the Court finds that the requested impoundment and destruction is an appropriate remedy.[7]

### 2.    Recall

In light of the scope of infringement found by the Court, and in light of the fact that the injunction addresses products that directly compete with Mattel's products, the Court has ordered the recall of infringing products from retailers. See CyberMedia, Inc. v. Symantec Corp., 19 F.Supp.2d 1070, 1079 (N.D. Cal.1998); Patry on Copyright, § 22:81.

---

[7] No party shall destroy any of the implements used to make the Bratz dolls that are the subject of the permanent injunction absent a specific order of this Court authorizing such destruction.

MINUTES FORM 90                                                        Initials of Deputy Clerk: jh
CIVIL -- GEN                          14

EXHIBIT        12
PAGE          236

### 3.     Royalty

The MGA parties argue that the more appropriate remedy to be imposed here is for the Court to order a royalty instead of an injunction. The difficulty in this proposal is that it is premised on the idea that the ongoing infringement, if any, is minute. See Opp. at 29-32 (suggesting a royalty of .3% would be appropriate). As noted above, the Court has rejected this premise. Moreover, although the Court has been hopeful that an out-of-court resolution involving such a remedy may have been obtained, and has gone to great lengths to encourage both sides to pursue such a resolution in good faith, their failure so far to do so underscores the Court's present view, which is based on the evidence and argument of record, that the hostility between these parties is such that this form of remedy is unworkable.

### 4.     Appointment of a Special Master

Mattel suggests that the Court appoint a special master to "monitor implementation of the relief granted by the Court." Motion at 28. The MGA parties have not indicated their position on this issue. The appointment of a special master to monitor implementation of the permanent injunction is warranted; this task could easily overwhelm the Court's resources. Subject to the Court's consideration of any in camera objections submitted to the Court by the parties, the Court will select a Special Master from the list submitted below.

### V. Motion to Strike Portions of Hutnyan Declarations and Exhibits Thereto (docket #4351)

The MGA parties move to strike certain evidence offered by Mattel on the issue of harm suffered by Mattel, contending the evidence is inadmissible. This motion is **DENIED AS MOOT.** Although Mattel has offered additional evidence of harm, the Court has found the evidence of harm to Mattel offered during Phases 1A and 1B sufficient to resolve the issues presented in the current motions.

### VI. Motion to Strike the Proctor, Keiser, and Hollander Declarations (docket #4352)

The motion is **DENIED** as to the Proctor declaration. The declaration is a helpful presentation of appropriate argument and/or observations of counsel for the Court's consideration.

The motion is **DENIED** as to the Keiser declaration. The Keiser declaration authenticates two-dimensional depictions of three-dimensional models he scanned using a sophisticated scanning machine.

The motion is **DENIED** as to the Hollander declaration. This declaration was the subject of extensive briefing in MGA's motion in limine 8, which the Court has reviewed. Hollander's declaration, which presents survey evidence of the target market, is relevant to application of the

EXHIBIT ___12___
PAGE ___237___

Case 2:04-cv-09049-DOC-RNB   Document 6680-5   Filed 09/14/09   Page 63 of 64   Page ID
#:219765
Case 2:04-cv-09049-SGL-RNB      Document 4439      Filed 12/03/2008     Page 16 of 17

intrinsic test. The Court, in fact, instructed the jury to consider how girls 7 to 12 would view the Bratz dolls. Hollander's survey attempts to determine just that. The Court has considered the methodological flaws pointed out by MGA in weighing the evidence Hollander presents.

### VII. Motion to Strike Meyer Declaration (docket #4377)

Mattel moves to strike the Meyer declaration. This motion is **DENIED AS MOOT.** This declaration sets forth a calculation justifying the proposed .3% royalty. The Court has rejected the proposal that a royalty be imposed.

### VIII. Stay of this Order

This Order, and the three concurrently filed orders, are stayed pending the Court's consideration of the parties' post-trial motions. This stay shall remain in place until lifted by further Order of this Court.

### IX. Briefing Schedule for Post-Trial Motions

Notwithstanding the Court's earlier order, the motions referred to in ¶ 3 of the Court's September 2, 2008, Order may be filed no later than December 22, 2008. Response briefs may be filed no later than January 12, 2009. Replies may be filed no later than January 19, 2009. A hearing on this matter is set for Wednesday, February 11, 2009, at 10:00 a.m., in Courtroom One of the above-referenced Court.

### X. Discovery Master Proposals for Phase 2

The Court previously stated that it would submit for counsel's consideration the names of potential Discovery Masters for Phase 2 that possess both the resources to handle the scope of the anticipated discovery disputes as well as the personal confidence of this Court. The Discovery Master would serve pursuant to the same terms and conditions of the Phase 1 Discovery Master. In addition, as noted above, the Court also intends to appoint a Special Master to oversee implementation of the permanent injunction. The Court provides for counsels' consideration the following individuals who meet the Court's requirements, and have indicated to the Court a willingness and an ability to serve in one or both of these roles. Counsel are directed to file any objections to any or all of the proposed Masters on or before December 22, 2008. Any such objections are to be submitted *in camera* and under seal with the Court. After considering any objections, as well as any preferences expressed by the parties, the Court will make an appointment at the appropriate time.

EXHIBIT _____ 12
PAGE _____ 238

Patrick A. Fraioli, Jr.
Moldo Davidson et al LLP
2029 Century Park East, 21st Fl.
Los Angeles, CA  90067
310-551-3100
pfraioli@mdfslaw.com

Jan L. Handzlik
Howrey LLP
550 S. Hope Street, Suite 1100
Los Angeles, CA  90071
213-892-1802
handzlikj@howrey.com

Kendall H. MacVey
Best Best & Krieger LLP
P.O. Box 1028
Riverside, CA  92502-1028
951-686-1450

David G. Moore
Reid & Hellyer
P.O. Box 1300
Riverside, CA  92502
951-682-1771
dmoore@rhlaw.com

Robert C. O' Brien
Arent Fox LLP
555 W. 5th Street, 48th fl.
Los Angeles, CA  90013
213-629-7400
obrien.robert@arentfox.com

C. Michael Zweiback
Alston & Bird LLP
333 S. Hope Street, 16th Fl.
Los Angeles, CA  90071
213-576-1000
michael.zweiback@alston.com

## XI. Jointly Lodged Laptop Computer

The Court is in possession of a jointly lodged laptop computer used to access the Phases 1A and 1B trial transcripts maintained by the parties.  The Court will retain possession of the laptop computer until after its ruling on the motions referred to in section IX, above, and the parties are directed to follow the procedure outlined in the Court's September 9, 2008, Order regarding the e-filing of excerpts of transcripts cited in their anticipated motions.

## XII. Service of Permanent Injunction

The service of Mattel's proposed permanent injunction by the Clerk presents challenges given the limited resources of the Court.  The permanent injunction, for reasons explained by Mattel on the record, attaches to it approximately 900 color copies.  Accordingly, although the Court directs the Clerk to serve on all parties a copy of the permanent injunction, the Court directs Mattel, no later than ten days after the entry of this Order, to serve a copy of the permanent injunction, together with the color exhibits, on all parties.

**IT IS SO ORDERED.**

MINUTES FORM 90
CIVIL -- GEN

Initials of Deputy Clerk: jh

EXHIBIT _____ 12
PAGE _____ 239