# EXHIBIT 1

1 | QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 090378)
2 | (johnquinn@quinnemanuel.com)
Michael T. Zeller (Bar No. 196417)
3 | (michaelzeller@quinnemanuel.com)
Jon D. Corey (Bar No. 185066)
4 | (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
5 | Los Angeles, California 90017-2543
Telephone: (213) 443-3000
6 | Facsimile: (213) 443-3100

7 | Attorneys for Mattel, Inc.

8 | UNITED STATES DISTRICT COURT

9 | CENTRAL DISTRICT OF CALIFORNIA

10 | EASTERN DIVISION

| | |
|---|---|
| 11 | CARTER BRYANT, an individual, | CASE NO. CV 04-09049 SGL (RNBx) |
| 12 | Plaintiff, | Consolidated with Case Nos. CV 04-9059 and CV 05-2727 |
| 13 | vs. | |
| 14 | MATTEL, INC., a Delaware corporation, | MATTEL, INC.'S REQUESTS FOR ADMISSION TO MGA RELATED TO MGA'S ASSERTION OF PRIVILEGE TO WITHHOLD NON-PRIVILEGED LARIAN EMAIL COMMUNICATIONS THAT ARE THE SUBJECT OF THE COURT'S ORDER TO SHOW CAUSE DATED AUGUST 31, 2009 |
| 15 | | |
| 16 | Defendant. | |
| 17 | AND CONSOLIDATED ACTIONS | |

18

19

20

21 | PROPOUNDING PARTY:    Mattel, Inc.

22 | RESPONDING PARTY:    MGA Entertainment, Inc.

23 | SET NO.:    One (Phase 2)

24

25

26

27

28

00505.07975/3097732.3

EXHIBIT 1
PAGE 5

1    Pursuant to <u>Federal Rule of Civil Procedure</u> 36, plaintiff Mattel, Inc.

2  ("Mattel") hereby requests that MGA individually respond to the following Requests

3  for Admission (the "Requests"). MGA shall be obligated to supplement its responses to

4  the Requests at such times and to the extent required by the <u>Federal Rules of Civil</u>

5  <u>Procedure</u>.

6

7                                    **Definitions**

8    1.    "YOU," "YOUR," and "MGA" means MGA Entertainment, Inc.

9  and any PERSON acting directly or indirectly by, through, under or on behalf of MGA

10  Entertainment, Inc., including but not limited to current or former directors, officers,

11  employees, attorneys and agents.

12   2.    "Any" as used in these Requests includes the word "all," and the

13  word "all" as used in these Requests includes the word "any."

14   3.    "PERSON" or "PERSONS" means all natural persons, partnerships,

15  corporations, joint ventures and any kind of business, legal or public entity or

16  organization, as well as its, his or her agents, representatives, employees, officers and

17  directors and any one else acting on its, his or her behalf, pursuant to its, his or her

18  authority or subject to its, his or her control.

19   4.    "MGA'S REVISED JANUARY 23, 2008 PRIVILEGE LOG"

20  means the privilege log produced by MGA on January 23, 2008 and which was

21  subsequently revised on February 5, 2008 and April 9, 2009.

22   5.    The singular form of a noun or pronoun includes within its meaning

23  the plural form of the noun or pronoun so used, and vice versa; the use of the masculine

24  form of a pronoun also includes within its meaning the feminine form of the pronoun so

25  used, and vice versa; the use of any tense of any verb includes also within its meaning

26  all other tenses of the verb so used, whenever such construction results in a broader

27  request for information; and "and" includes "or" and vice versa, whenever such

28  construction results in a broader disclosure of documents or information.

## Requests for Admission

REQUEST FOR ADMISSION NO. 1:

Admit that MGA did not produce to Mattel the document attached hereto as Exhibit 1 prior to May 27, 2008.

REQUEST FOR ADMISSION NO. 2:

Admit that MGA had been compelled by Court Order prior to May 27, 2008 to produce to Mattel in this litigation the document attached hereto as Exhibit 1.

REQUEST FOR ADMISSION NO. 3:

Admit that MGA knew, prior to May 27, 2008, that MGA had been compelled by Court Order to produce to Mattel in this litigation the document attached hereto as Exhibit 1.

REQUEST FOR ADMISSION NO. 4:

Admit that MGA knew the document attached hereto as Exhibit 1 was not produced to Mattel prior to the commencement of the Phase 1 trial in this matter.

REQUEST FOR ADMISSION NO. 5:

Admit that MGA knew, at the time of the commencement of the Phase 1 trial in this matter, that the document attached hereto as Exhibit 1 was relevant to issues to be tried by the jury in the Phase 1 trial.

REQUEST FOR ADMISSION NO. 6:

Admit that the document attached hereto as Exhibit 1 was withheld by MGA from production in this litigation to Mattel on attorney-client privilege grounds until August 21, 2009.

EXHIBIT ___1___

1    REQUEST FOR ADMISSION NO. 7:

2            Admit that the document attached hereto as Exhibit 1 was withheld by

3    MGA from production in this litigation to Mattel on work product grounds until August

4    21, 2009.

5

6    REQUEST FOR ADMISSION NO. 8:

7            Admit that the document attached hereto as Exhibit 1 is protected by

8    attorney-client privilege.

9

10    REQUEST FOR ADMISSION NO. 9:

11            Admit that the document attached hereto as Exhibit 1 is protected by the

12    work product doctrine.

13

14    REQUEST FOR ADMISSION NO. 10:

15            Admit that the document attached hereto as Exhibit 1 is not protected by

16    attorney-client privilege.

17

18    REQUEST FOR ADMISSION NO. 11:

19            Admit that the document attached hereto as Exhibit 1 is not protected by

20    work product doctrine.

21

22    REQUEST FOR ADMISSION NO. 12:

23            Admit that the document attached hereto as Exhibit 1 never was protected

24    by attorney-client privilege.

25

26    REQUEST FOR ADMISSION NO. 13:

27            Admit that the document attached hereto as Exhibit 1 never was protected

28    by work product doctrine.

EXHIBIT    1

1  <u>REQUEST FOR ADMISSION NO. 14</u>:

2       Admit that MGA knew the document attached hereto as Exhibit 1 never

3  was protected by attorney-client privilege.

4

5  <u>REQUEST FOR ADMISSION NO. 15</u>:

6       Admit that MGA knew the document attached hereto as Exhibit 1 never

7  was protected by the work product doctrine.

8

9  <u>REQUEST FOR ADMISSION NO. 16</u>:

10       Admit that there was no basis for withholding from production in this

11  litigation the document attached hereto as Exhibit 1 on grounds of attorney-client

12  privilege.

13

14  <u>REQUEST FOR ADMISSION NO. 17</u>:

15       Admit that there was no basis for withholding from production in this

16  litigation the document attached hereto as Exhibit 1 on grounds of the work product

17  doctrine.

18

19  <u>REQUEST FOR ADMISSION NO. 18</u>:

20       Admit that the portion of the document attached hereto as Exhibit 1

21  containing the email exchange between Isaac Larian and Victoria O'Connor reflects

22  legal advice.

23

24  <u>REQUEST FOR ADMISSION NO. 19</u>:

25       Admit that the portion of the document attached hereto as Exhibit 1

26  containing the email exchange between Isaac Larian and Victoria O'Connor does not

27  reflect legal advice.

28

1 | REQUEST FOR ADMISSION NO. 20:

2         Admit that MGA knew that the portion of the document attached hereto as

3 | Exhibit 1 containing the email exchange between Isaac Larian and Victoria O'Connor

4 | did not reflect legal advice.

5

6 | REQUEST FOR ADMISSION NO. 21:

7         Admit that MGA stated, prior to August 21, 2009, that the portion of the

8 | document attached hereto as Exhibit 1 containing the email exchange between Isaac

9 | Larian and Victoria O'Connor reflects legal advice.

10

11 | REQUEST FOR ADMISSION NO. 22:

12         Admit that MGA stated, prior to August 21, 2009, that the portion of the

13 | document attached hereto as Exhibit 1 containing the email exchange between Isaac

14 | Larian and Victoria O'Connor did not reflect legal advice.

15

16 | REQUEST FOR ADMISSION NO. 23:

17         Admit that the document attached hereto as Exhibit 1 was listed as Entry

18 | No. 381 on MGA'S REVISED JANUARY 23, 2008 PRIVILEGE LOG.

19

20 | REQUEST FOR ADMISSION NO. 24:

21         Admit that the document attached hereto as Exhibit 1 was not listed on any

22 | MGA privilege log prior to MGA'S REVISED JANUARY 23, 2008 PRIVILEGE

23 | LOG.

24

25 | REQUEST FOR ADMISSION NO. 25:

26         Admit that the document attached hereto as Exhibit 1 was listed on a MGA

27 | privilege log prior to MGA'S REVISED JANUARY 23, 2008 PRIVILEGE LOG.

28

1  REQUEST FOR ADMISSION NO. 26:

2         Admit that the document attached hereto as Exhibit 1 was listed on

3  MGA'S REVISED JANUARY 23, 2008 PRIVILEGE LOG because MGA knew prior

4  to that time that MGA had been compelled by Court Order to produce the document

5  attached hereto as Exhibit 1.

6

7  REQUEST FOR ADMISSION NO. 27:

8         Admit that the document corresponding to Entry No. 557 on MGA's

9  MGA'S REVISED JANUARY 23, 2008 PRIVILEGE LOG is a duplicate of the

10  document attached hereto as Exhibit 1.

11

12  REQUEST FOR ADMISSION NO. 28:

13         Admit that the document corresponding to Entry No. 557 on MGA'S

14  REVISED JANUARY 23, 2008 PRIVILEGE LOG is not a duplicate of the document

15  attached hereto as Exhibit 1.

16

17  REQUEST FOR ADMISSION NO. 29:

18         Admit that the document corresponding to Entry No. 557 on MGA'S

19  REVISED JANUARY 23, 2008 PRIVILEGE LOG is a further communication related

20  to the subject or subjects of the document attached hereto as Exhibit 1.

21

22  REQUEST FOR ADMISSION NO. 30:

23         Admit that the document corresponding to Entry No. 557 on MGA'S

24  REVISED JANUARY 23, 2008 PRIVILEGE LOG is not a further communication

25  related to the subject or subjects of the document attached hereto as Exhibit 1.

26

27

28

EXHIBIT 1

1 | REQUEST FOR ADMISSION NO. 31:

2          Admit that the document corresponding to Entry No. 557 on MGA'S

3 | REVISED JANUARY 23, 2008 PRIVILEGE LOG has been withheld by MGA from

4 | production in this litigation to Mattel on attorney-client privilege grounds.

5

6 | REQUEST FOR ADMISSION NO. 32:

7          Admit that the document corresponding to Entry No. 557 on MGA'S

8 | REVISED JANUARY 23, 2008 PRIVILEGE LOG has been withheld by MGA from

9 | production in this litigation to Mattel on work product grounds.

10

11 | REQUEST FOR ADMISSION NO. 33:

12          Admit that the document corresponding to Entry No. 557 on MGA'S

13 | REVISED JANUARY 23, 2008 PRIVILEGE LOG is protected by attorney-client

14 | privilege.

15

16 | REQUEST FOR ADMISSION NO. 34:

17          Admit that the document corresponding to Entry No. 557 on MGA'S

18 | REVISED JANUARY 23, 2008 PRIVILEGE LOG is protected by the work product

19 | doctrine.

20

21 | REQUEST FOR ADMISSION NO. 35:

22          Admit that the document corresponding to Entry No. 557 on MGA'S

23 | REVISED JANUARY 23, 2008 PRIVILEGE LOG is not protected by attorney-client

24 | privilege.

25

26

27

28

EXHIBIT ___1___

1 | REQUEST FOR ADMISSION NO. 36:

2 |      Admit that the document corresponding to Entry No. 557 on MGA'S

3 | REVISED JANUARY 23, 2008 PRIVILEGE LOG is not protected by the work

4 | product doctrine.

5 |

6 | REQUEST FOR ADMISSION NO. 37:

7 |      Admit that the document corresponding to Entry No. 557 on MGA'S

8 | REVISED JANUARY 23, 2008 PRIVILEGE LOG never was protected by attorney-

9 | client privilege.

10 |

11 | REQUEST FOR ADMISSION NO. 38:

12 |      Admit that the document corresponding to Entry No. 557 on MGA'S

13 | REVISED JANUARY 23, 2008 PRIVILEGE LOG never was protected by the work

14 | product doctrine.

15 |

16 | REQUEST FOR ADMISSION NO. 39:

17 |      Admit that MGA has produced all other versions of the exchange reflected

18 | in the document attached hereto as Exhibit 1.

19 |

20 | REQUEST FOR ADMISSION NO. 40:

21 |      Admit that MGA has not produced to Mattel all other versions of the

22 | exchange reflected in the document attached hereto as Exhibit 1.

23 |

24 | REQUEST FOR ADMISSION NO. 41:

25 |      Admit that there are additional communications to or from Isaac Larian

26 | that are part of the email chain attached hereto as Exhibit 1.

27 |

28 |

EXHIBIT __1__

1   REQUEST FOR ADMISSION NO. 42:

2              Admit that there are no additional communications to or from Isaac Larian

3   that are part of the email chain attached hereto as Exhibit 1.

4

5   DATED:  September 11, 2009         QUINN EMANUEL URQUHART OLIVER &
                                       HEDGES. LLP
6

7                                      By _____
8                                         Michael T. Zeller
                                          Attorneys for Mattel. Inc.
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                              EXHIBIT  I

28                                              PAGE      14

00505.07975/3097732.3
                                        -10-

# EXHIBIT 1

EXHIBIT 1
PAGE 15

Anderson, Diane

From:       Isaac Larian
Sent:       Wednesday, October 23, 2002 8:39 AM
To:         Victoria O'Connor
Subject:    RE: FW: Interview for the French magazine CAPITAL

good point. Thanks.

-----Original Message-----
From: Victoria O'Connor
Sent: Wednesday, October 23, 2002 8:38 AM
To: Isaac Larian
Subject: RE: FW: Interview for the French magazine CAPITAL

don't you think we should say Bratz was born in October when a certain person was no longer with their company?

-----Original Message-----
From: Isaac Larian
Sent: Wednesday, October 23, 2002 1:35 AM
To: Victoria O'Connor; Sandrine de Raspide
Subject: FW: FW: Interview for the French magazine CAPITAL

FYI

-----Original Message-----
From: Isaac Larian
Sent: Wednesday, October 23, 2002 1:25 AM
To: 'Nathalie RIESEN'
Subject: RE: FW: Interview for the French magazine CAPITAL

Natalie,

Please see below

-----Original Message-----
From: Nathalie RIESEN [mailto:nathalie.villard@wanadoo.fr]
Sent: Wednesday, October 23, 2002 12:42 AM
To: ilarian@mgae.com
Subject: Re: FW: Interview for the French magazine CAPITAL

Thank you Isaac.
I have a few more questions about the story of the Bratz you would be kind to answer by email:
. Date of birth of the Bratz, time of development, first launch in the US

BORN SEPTEMBER 2000; 9 MONTH TO DEVELOP ( LIKE A BABY!); LAUNCHED IN THE USA IN JULY 2001 AND IN SPAIN JUNE 2001 ( BEFORE USA).ISAAC
. Total yearly Sales of the Bratz (in dollars) since their launch.
2001: $65 MILLION

2002: $350 MILLION ( INCLUDING LICENSED GOODS)

2003: PROJECTED $1 BILLION ( INCLUDING LICENSED GOODS)

. Increase of their market share of the doll market

BRATZ CURRENTLY HAVE 33% OF FASHION DOLL MARKET SHARE IN THE USA AND GROWING.

1

CONFIDENTIAL - ATTORNEYS' EYES ONLY

MGA2 0070266

EXHIBIT 1
PAGE 16

*I*

. Further development of the Bratz expected in 2003

THE BRATS LINE IS EXPANDING GREATLY FOR 2003. MGA , FOR THE FIRST TIME IS LAUNCHING A VERY INNOVATIVE AND FASHIONABLE LINE OF ELECTRONICS CALLED " BRATZ ELECTRIC FUNK" FOR 2003 AND THIS LINE IS EXPECTED TO GENERATE WHOLESALE SALES IN EXCESS OF $100 MILLION. WE ARE LITERALLY SIGNING 2-3 NEW LICENSEE'S A DAY FOR A VARIETY OF PRODUCTS ( I WILL E MAIL YOU THE LIST). We HAVE ALSO EXPANDED THE TOY LINE GREATLY FOR 2003 AND WILL HAVE OVER 100 NEW ITEMS INTRODUCED IN 2003. BY MGA ALONE. ISAAC

. Sales, Profits and margin of MGAE in 2002 / 2001 /2000

2000 SALES $90 MILLION

2001 SALES  $110 MILLION

2002 SALES $350 MILLION ( ESTIMATE)

. Brief description of MGAE headquarters in LA, its location...

MGAE IS PRESENTLY HEAD QUARTERED IN NORTH OF LA in 43,000 SQUARE FEET OFFICES. WE HAVE OUTGROWN THE FACILITIES AND ARE LOOKING TO MOVE TO A BIGGER FACILITY SOON. ISAAC
. Brief description of your management team

OUR MANAGEMENT TEAM CONSIST OF A GREAT GROUP PASSIONATE AND GROWTH AND EXCELLENCE ORIENTED INDIVIDUALS WHO CARE FOR THE BUSINESS. OUR MISSION STATEMENT IS TO BE NO 1 OR 2 IN ANYTHING WE DO OR DON'T DO IT. INNOVATIVE CONSUMER ENTERTAINMENT PRODUCTS IS THE HEART OF MGAE'S BUSINESS.MGA HAS WON NUMEROUS PRODUCT EXCELLENCE AWARDS EVERY YEAR INCLUDING THE MOST PRESTIGIOUS TOY OF THE YEAR AWARD AND FAMILY FUN TOY OF THE YEAR AWARD ( 3 YEARS IN THE ROW IN DIFFERENT CATEGORIES). ISAAC
. Your age, family situation and hobbies.

I AM 48 YEARS OLD ( BUT 13 AT HEART!) MARRIED FOR THE PAST 18 YEARS TO ANGELA AND HAVE 3 CHILDREN ( JASON:16, YASMINE: 14, CAMERON:8). A KID AT HEART, MY HOBBIES ARE CREATING TOYS, PLAYING VOLLEYBALL, MOUNTAIN BIKE RIDING , CAMPING AND BACKPACKING. TWO OF THE DOLLS ( YASMINE AND CAMERON) ARE NAMED AFTER MY KIDS.

Thank you very much for all this. This story will come out in Capital (leading French business magazine) at the end of November.

PLEASE VISIT WWW.MGAE.COM FOR MORE INFORMATION ABOUT MGA. PLEASE SEND ME TWO COPIES OF THE MAGAZINE WHEN IT COMES OUT.

THANK YOU FOR YOUR INTEREST IN MGA. BY THE WAY, ARE YOUR THREE DAUGHTERS BRATZ FANS? ISAAC

Best regards,
Nathalie

nathalie.villard@wanadoo.fr
Journaliste
CAPITAL
Tel 00 +33 (4) 66 03 24 03 / (1) 56 99 49 33
 Fax 00 +33 (4) 66 03 24 02

 inMessssage du 23/10/2002 02:49
>De : Isaac Larian <ilarian@mgae.com>
>A : Dave Malacrida <DMalacrida@mgae.com>
>Copie à : 'nathalie.villard@wanadoo.fr' <nathalie.villard@wanadoo.fr>
>Objet : FW: Interview for the French magazine CAPITAL
>
> Natalie, It was a pleasure talking to you.
>
> Dave, Please send Natalie our recent news clipinings by e mail ASAP.

2

CONFIDENTIAL - ATTORNEYS' EYES ONLY

MGA2 0070267

EXHIBIT 1
PAGE 17

```
>
> Thanks,
>
> Isaac
>
>
>
> -----Original Message-----
> From: Nathalie RIESEN [mailto:nathalie.villard@wanadoo.fr]
> Sent: Tuesday, October 22, 2002 4:49 AM
> To: ilarian@mgae.com
> Subject: RE: Interview for the French magazine CAPITAL
>
> >I'll call you today at 10:00 am (your time).
> Nathalie
>
> Messsage du 22/10/2002 03:21
> >De : Isaac Larian <ilarian@mgae.com>
> >A : 'Nathalie RIESEN' <nathalie.villard@wanadoo.fr>
> >Copie à : Rene Turin <RTurin@mgae.com>
> >Objet : RE: Interview for the French magazine CAPITAL
> >
> > Dear Natalie,
> >
> > Lets do October 22 at 10 am.
> >
> > Thanks,
> >
> > Isaac Larian
> > Isaac Larian
> > CEO
> > M G A  Entertainment
> > 16730 Schoenborn Street
> > North Hills, California 91343
> > Tel: 818-894-3150
> > Fax:818-894-1267
> > e-mail: Ilarian@MGAE.COM
> > Please Visit
> > www.MGAE.com
> > And the beautiful BRATZ at
> > www.Bratzpack.com
> > Hey! Its MGA!
> >
> >
> >
> > -----Original Message-----
> > From: Nathalie RIESEN [mailto:nathalie.villard@wanadoo.fr]
> > Sent: Monday, October 21, 2002 8:47 AM
> > To: ilarian@mgae.com
> > Subject: Re: Interview for the French magazine CAPITAL
> >
> >
> > >Dear Isaac,
> > Thanks for your prompt answer.
> > When can I call you for a 15 mn interview, between 8:00 and 10:00 am (your
> > time), either on Oct 22, 28, 29, 30 or 31?
> > Interview: the ingredients of the success of the Bratz.
> > . Birth of the concept? Is there a "Mr or Mrs Bratz"?
> > . How many people involved in the Bratz business today at MGAE?
> > . How different are they from the Barbie world and among the doll market
> in
> general?
> > . Sales and market share in the US and oversea
> > Thanks.
> > Best regards,
> > Nathalie
```

3

CONFIDENTIAL - ATTORNEYS' EYES ONLY

MGA2 0070268

EXHIBIT ___1___
PAGE ___18___

```
> >
> > nathalie.villard@wanadoo.fr
> > > Journaliste
> > > CAPITAL
> > > Tel 00 +33 (4) 66 03 24 03 / (1) 56 99 49 33
> > > Fax 00 +33 (4) 66 03 24 02
> >
> > Message du 06/03/1904 16:20
> > >De : Nathalie Villard <nathalie.villard@wanadoo.fr>
> > >A :   <nathalie.villard@wanadoo.fr>
> > >Copie à :
> > >Objet : FW: Interview pour le magazine franc ais        CAPITAL
> > >
> > >
> > > ----------
> > > De : Isaac Larian <ilarian@mgae.com>
> > > Date : Fri, 18 Oct 2002 19:55:30 -0700
> > > À : Sandrine de Raspide <SDeRaspide@mgae.com>, 'Nathalie Villard'
> > > <nathalie.villard@wanadoo.fr>
> > > Cc : Dave Malacrida <DMalacrida@mgae.com>
> > > Objet : RE: Interview pour le magazine franç ais CAPITAL
> > >
> > > Dear Nathalie,
> > >
> > > I will be happy to do an interview.
> > >
> > > I am now in HK and back in the USA next Tuesday.
> > >
> > > I would like to ask for the list of questions in advance please.
> > >
> > > Best Regards,
> > >
> > > Isaac Larian
> > > Isaac Larian
> > > CEO
> > > M G A  Entertainment
> > > 16730 Schoenborn Street
> > > North Hills, California 91343
> > > Tel: 818-894-3150
> > > Fax:818-894-1267
> > > e-mail: Ilarian@MGAE.COM
> > > Please Visit
> > > www.MGAE.com
> > > And the beautiful BRATZ at
> > > www.Bratzpack.com
> > > Hey! Its MGA!
> > >
> > >
> > >
> > > -----Original Message-----
> > > From: Sandrine de Raspide
> > > Sent: Friday, October 18, 2002 5:53 PM
> > > To: 'Nathalie Villard'
> > > Cc: Isaac Larian, Dave Malacrida
> > > Subject: RE: Interview pour le magazine franç ais CAPITAL
> > >
> > >
> > > Dear Nathalie,
> > >
> > > Thanks for your interest in Bratz.  Per our company policy, all
> interviews
> > > need to be conducted through Isaac Larian, our CEO.  Isaac is copied on
> > > this
> > > e-mail and will let you know if he can make himself available for a
> phone
> > > interview before the 31st of October.
> > > Isaac, Capital is a business magazine (500,000 prints/month) that will
```

CONFIDENTIAL - ATTORNEYS' EYES ONLY

MGA2 0070269

EXHIBIT  1
PAGE  19

```
> do
> > a
> > > special report on the toy industry worldwide.
> > > Kind regards,
> > > Sandrine
> > >
> > > -----Original Message-----
> > > From: Nathalie Villard [mailto:nathalie.villard@wanadoo.fr]
> > > Sent: Friday, October 18, 2002 5:44 AM
> > > To: sderaspide@mgae.com
> > > Subject: Interview pour le magazine franç ais CAPITAL
> > > Importance: High
> > >
> > >
> > > Bonjour,
> > > Dans son numéro de Décembre, Capital (leader de la presse économique,
> 500
> > > 000 ex/mois) prépare un Dossier international de 18 pages sur le
> business
> > > mondial du jouet.
> > > Entre autres articles, je prépare une histoire sur le succès du
> phénomène
> > > Bratz, la naissance du concept, ses déclinaisons, son univers de
> > concurrence
> > > avec Mattel, ses licences...
> > > Pourrions-nous convenir rapidement d'un rdv téléphonique avant le 31
> > > Octobre. Beaucoup de personnes ici en France m'ont dit que vous pourriez
> > > m'être très utile.
> > > D'avance merci.
> > > Cordialement,
> > > Nathalie Villard
> > >
> > > nathalie.villard@wanadoo.fr
> > > Journaliste
> > > CAPITAL
> > > Tel 00 +33 (4) 66 03 24 03 / (1) 56 99 49 33
> > > Fax 00 +33 (4) 66 03 24 02
> > >
> > >
> >
>
```

5

CONFIDENTIAL - ATTORNEYS' EYES ONLY

MGA2 0070270

EXHIBIT ___1___
PAGE _____20___

# EXHIBIT 2

1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      John B. Quinn (Bar No. 090378)
2      (johnquinn@quinnemanuel.com)
      Michael T. Zeller (Bar No. 196417)
3      (michaelzeller@quinnemanuel.com)
      Jon D. Corey (Bar No. 185066)
4      (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5   Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
6   Facsimile: (213) 443-3100

7   Attorneys for Mattel, Inc.

8              UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10                  EASTERN DIVISION

| | |
|---|---|
| 11  CARTER BRYANT, an individual, | CASE NO. CV 04-09049 SGL (RNBx) |
| 12       Plaintiff, | Consolidated with Case Nos. CV 04-9059 and CV 05-2727 |
| 13       vs. | |
| 14  MATTEL, INC., a Delaware corporation, | MATTEL, INC.'S REQUESTS FOR ADMISSION TO ISAAC LARIAN RELATED TO ASSERTION OF PRIVILEGE TO WITHHOLD NON-PRIVILEGED LARIAN EMAIL COMMUNICATIONS THAT ARE THE SUBJECT OF THE COURT'S ORDER TO SHOW CAUSE DATED AUGUST 31, 2009 |
| 15 | |
| 16       Defendant. | |
| 17  AND CONSOLIDATED ACTIONS | |

18

19

20

21   PROPOUNDING PARTY:     Mattel, Inc.

22   RESPONDING PARTY:      Isaac Larian

23   SET NO.:               One (Phase 2)

24

25

26

27

28

EXHIBIT ___2___

PAGE ___21___

07975/3097715.2

1    Pursuant to <u>Federal Rule of Civil Procedure</u> 36, plaintiff Mattel, Inc.

2  ("Mattel") hereby requests that Isaac Larian individually respond to the following

3  Requests for Admission (the "Requests"). Larian shall be obligated to supplement his

4  responses to the Requests at such times and to the extent required by the <u>Federal Rules</u>

5  <u>of Civil Procedure.</u>

6

7                              <u>Definitions</u>

8    1.    "MGA" means MGA Entertainment, Inc. and any PERSON acting

9  directly or indirectly by, through, under or on behalf of MGA Entertainment, Inc.,

10  including but not limited to current or former directors, officers, employees, attorneys

11  and agents.

12    2.    "YOU," "YOUR," and "LARIAN" means Isaac Larian.

13    3.    "PERSON" or "PERSONS" means all natural persons, partnerships,

14  corporations, joint ventures and any kind of business, legal or public entity or

15  organization, as well as its, his or her agents, representatives, employees, officers and

16  directors and any one else acting on its, his or her behalf, pursuant to its, his or her

17  authority or subject to its, his or her control.

18    4.    "Any" as used in these Requests includes the word "all," and the

19  word "all" as used in these Requests includes the word "any."

20    5.    "MGA'S REVISED JANUARY 23, 2008 PRIVILEGE LOG"

21  means the privilege log produced by MGA on January 23, 2008 and which was

22  subsequently revised on February 5, 2008 and April 9, 2009.

23    6.    The singular form of a noun or pronoun includes within its

24  meaning the plural form of the noun or pronoun so used, and vice versa; the use of

25  the masculine form of a pronoun also includes within its meaning the feminine form

26  of the pronoun so used, and vice versa; the use of any tense of any verb includes

27  also within its meaning all other tenses of the verb so used, whenever such

28  construction results in a broader request for information; and "and" includes "or"

                                    -2-

EXHIBIT ___2___

and vice versa, whenever such construction results in a broader disclosure of documents or information.

## Requests for Admission

REQUEST FOR ADMISSION NO. 1:

Admit that the document attached hereto as Exhibit 1 is a true and correct copy of an email exchange in which YOU were involved on or about October 23, 2002.

REQUEST FOR ADMISSION NO. 2:

Admit that YOU had been compelled by Court Order prior to May 27, 2008 to produce to Mattel in this litigation the document attached hereto as Exhibit 1.

REQUEST FOR ADMISSION NO. 3:

Admit that YOU knew, prior to May 27, 2008, that YOU had been compelled by Court Order to produce to Mattel in this litigation the document attached hereto as Exhibit 1.

REQUEST FOR ADMISSION NO. 4:

Admit that MGA knew the document attached hereto as Exhibit 1 was not produced to Mattel prior to the commencement of the Phase 1 trial in this matter.

REQUEST FOR ADMISSION NO. 5:

Admit that MGA knew, at the time of the commencement of the Phase 1 trial in this matter, that the document attached hereto as Exhibit 1 was relevant to issues to be tried by the jury in the Phase 1 trial.

EXHIBIT 2
PAGE 23

07975/3097715.2 .

-3-

MATTEL'S REQUESTS FOR ADMISSION TO LARIAN RE AUGUST 31. 2009 ORDER TO SHOW CAUSE

1   REQUEST FOR ADMISSION NO. 6:

2          Admit that the document attached hereto as Exhibit 1 was withheld by

3   YOU from production in this litigation to Mattel on attorney-client privilege grounds

4   until August 21, 2009.

5

6   REQUEST FOR ADMISSION NO. 7:

7          Admit that the document attached hereto as Exhibit 1 was withheld by

8   YOU from production in this litigation to Mattel on work product grounds until August

9   21, 2009.

10

11   REQUEST FOR ADMISSION NO. 8:

12          Admit that the document attached hereto as Exhibit 1 is protected by

13   attorney-client privilege.

14

15   REQUEST FOR ADMISSION NO. 9:

16          Admit that the document attached hereto as Exhibit 1 is protected by the

17   work product doctrine.

18

19   REQUEST FOR ADMISSION NO. 10:

20          Admit that the document attached hereto as Exhibit 1 is not protected by

21   attorney-client privilege.

22

23   REQUEST FOR ADMISSION NO. 11:

24          Admit that the document attached hereto as Exhibit 1 is not protected by

25   the work product doctrine.

26

27

28

EXHIBIT 2

PAGE 24

07975/3097715.2

-4-

1  REQUEST FOR ADMISSION NO. 12:

2          Admit that the document attached hereto as Exhibit 1 never was protected

3  by attorney-client privilege.

4

5  REQUEST FOR ADMISSION NO. 13:

6          Admit that the document attached hereto as Exhibit 1 never was protected

7  by the work product doctrine.

8

9  REQUEST FOR ADMISSION NO. 14:

10          Admit that YOU knew the document attached hereto as Exhibit 1 never

11  was protected by attorney-client privilege.

12

13  REQUEST FOR ADMISSION NO. 15:

14          Admit that YOU knew the document attached hereto as Exhibit 1 never

15  was protected by the work product doctrine.

16

17  REQUEST FOR ADMISSION NO. 16:

18          Admit that there was no basis for withholding from production in this

19  litigation the document attached hereto as Exhibit 1 on grounds of attorney-client

20  privilege.

21

22  REQUEST FOR ADMISSION NO. 17:

23          Admit that there was no basis for withholding from production in this

24  litigation the document attached hereto as Exhibit 1 on grounds of the work product

25  doctrine.

26

27

28

EXHIBIT ___2___
PAGE ___25___

1 | REQUEST FOR ADMISSION NO. 18:

2 |      Admit that the portion of the document attached hereto as Exhibit 1

3 | containing the email exchange between YOU and Victoria O'Connor reflects legal

4 | advice.

5 |

6 | REQUEST FOR ADMISSION NO. 19:

7 |      Admit that the portion of the document attached hereto as Exhibit 1

8 | containing the email exchange between YOU and Victoria O'Connor did not reflect

9 | legal advice.

10 |

11 | REQUEST FOR ADMISSION NO. 20:

12 |      Admit that YOU believed, prior to May 27, 2008, that the portion of the

13 | document attached hereto as Exhibit 1 containing the email exchange between YOU

14 | and Victoria O'Connor reflects legal advice.

15 |

16 | REQUEST FOR ADMISSION NO. 21:

17 |      Admit that YOU believed, prior to May 27, 2008, that the portion of the

18 | document attached hereto as Exhibit 1 containing the email exchange between YOU

19 | and Victoria O'Connor did not reflect legal advice.

20 |

21 | REQUEST FOR ADMISSION NO. 22:

22 |      Admit that YOU have never believed that the portion of the document

23 | attached hereto as Exhibit 1 containing the email exchange between YOU and Victoria

24 | O'Connor reflects legal advice.

25 |

26 |

27 |

28 |

EXHIBIT 2
PAGE 26

07975/3097715.2

-6-

1 | REQUEST FOR ADMISSION NO. 23:

2 |      Admit that YOU knew that the portion of the document attached hereto as

3 | Exhibit 1 containing the email exchange between YOU and Victoria O'Connor did not

4 | reflect legal advice.

5 |

6 | REQUEST FOR ADMISSION NO. 24:

7 |      Admit that YOU stated, prior to August 21, 2009, that the portion of the

8 | document attached hereto as Exhibit 1 containing the email exchange between YOU

9 | and Victoria O'Connor reflects legal advice.

10 |

11 | REQUEST FOR ADMISSION NO. 25:

12 |      Admit that YOU stated, prior to August 21, 2009, that the portion of the

13 | document attached hereto as Exhibit 1 containing the email exchange between YOU

14 | and Victoria O'Connor did not reflect legal advice.

15 |

16 | REQUEST FOR ADMISSION NO. 26:

17 |      Admit that the document attached hereto as Exhibit 1 was not listed on any

18 | MGA privilege log prior to MGA'S REVISED JANUARY 23, 2008 PRIVILEGE

19 | LOG.

20 |

21 | REQUEST FOR ADMISSION NO. 27:

22 |      Admit that the document attached hereto as Exhibit 1 was listed on a MGA

23 | privilege log prior to MGA'S REVISED JANUARY 23, 2008 PRIVILEGE LOG.

24 |

25 | REQUEST FOR ADMISSION NO. 28:

26 |      Admit that the document attached hereto as Exhibit 1 was listed on

27 | MGA'S REVISED JANUARY 23, 2008 PRIVILEGE LOG because MGA knew prior

28 |

**EXHIBIT** ___

**PAGE**    27

-7-

MATTEL'S REQUESTS FOR ADMISSION TO LARIAN RE AUGUST 31, 2009 ORDER TO SHOW CAUSE

1 | to that time that MGA had been compelled by Court Order to produce the document

2 | attached hereto as Exhibit 1.

3

4 | REQUEST FOR ADMISSION NO. 29:

5 |       Admit that the document attached hereto as Exhibit 1 was listed as Entry

6 | No. 381 on MGA'S REVISED JANUARY 23, 2008 PRIVILEGE LOG.

7

8 | REQUEST FOR ADMISSION NO. 30:

9 |       Admit that the document corresponding to Entry No. 557 on MGA's

10 | MGA'S REVISED JANUARY 23, 2008 PRIVILEGE LOG is a duplicate of the

11 | document attached hereto as Exhibit 1.

12

13 | REQUEST FOR ADMISSION NO. 31:

14 |       Admit that the document corresponding to Entry No. 557 on MGA'S

15 | REVISED JANUARY 23, 2008 PRIVILEGE LOG is not a duplicate of the document

16 | attached hereto as Exhibit 1.

17

18 | REQUEST FOR ADMISSION NO. 32:

19 |       Admit that the document corresponding to Entry No. 557 on MGA'S

20 | REVISED JANUARY 23, 2008 PRIVILEGE LOG is a further communication related

21 | to the subject or subjects of the document attached hereto as Exhibit 1.

22

23 | REQUEST FOR ADMISSION NO. 33:

24 |       Admit that the document corresponding to Entry No. 557 on MGA'S

25 | REVISED JANUARY 23, 2008 PRIVILEGE LOG is not a further communication

26 | related to the subject or subjects of the document attached hereto as Exhibit 1.

27

28

EXHIBIT 2
PAGE 28

1   REQUEST FOR ADMISSION NO. 34:

2         Admit that the document corresponding to Entry No. 557 on MGA'S

3   REVISED JANUARY 23, 2008 PRIVILEGE LOG has been withheld by YOU from

4   production in this litigation to Mattel on attorney-client privilege grounds.

5

6   REQUEST FOR ADMISSION NO. 35:

7         Admit that the document corresponding to Entry No. 557 on MGA'S

8   REVISED JANUARY 23, 2008 PRIVILEGE LOG has been withheld by YOU from

9   production in this litigation to Mattel on work product grounds.

10

11  REQUEST FOR ADMISSION NO. 36:

12        Admit that the document corresponding to Entry No. 557 on MGA'S

13  REVISED JANUARY 23, 2008 PRIVILEGE LOG is protected by attorney-client

14  privilege.

15

16  REQUEST FOR ADMISSION NO. 37:

17        Admit that the document corresponding to Entry No. 557 on MGA'S

18  REVISED JANUARY 23, 2008 PRIVILEGE LOG is protected by the work product

19  doctrine.

20

21  REQUEST FOR ADMISSION NO. 38:

22        Admit that the document corresponding to Entry No. 557 on MGA'S

23  REVISED JANUARY 23, 2008 PRIVILEGE LOG is not protected by attorney-client

24  privilege.

25

26

27

28

EXHIBIT 2
PAGE 29

1  REQUEST FOR ADMISSION NO. 39:

2         Admit that the document corresponding to Entry No. 557 on MGA'S

3  REVISED JANUARY 23, 2008 PRIVILEGE LOG is not protected by the work

4  product doctrine.

5

6  REQUEST FOR ADMISSION NO. 40:

7         Admit that the document corresponding to Entry No. 557 on MGA'S

8  REVISED JANUARY 23, 2008 PRIVILEGE LOG never was protected by attorney-

9  client privilege.

10

11  REQUEST FOR ADMISSION NO. 41:

12         Admit that the document corresponding to Entry No. 557 on MGA'S

13  REVISED JANUARY 23, 2008 PRIVILEGE LOG never was protected by the work

14  product doctrine.

15

16  REQUEST FOR ADMISSION NO. 42:

17         Admit that MGA has produced all other versions of the exchange reflected

18  in the document attached hereto as Exhibit 1.

19

20  REQUEST FOR ADMISSION NO. 43:

21         Admit that MGA has not produced to Mattel all other versions of the

22  exchange reflected in the document attached hereto as Exhibit 1.

23

24  REQUEST FOR ADMISSION NO. 44:

25         Admit that there are additional communications to or from Isaac Larian

26  that are part of the email chain attached hereto as Exhibit 1.

27

28

EXHIBIT ___2___
PAGE ___30___

07975/3097715.2 .

-10-

1 | REQUEST FOR ADMISSION NO. 45:

2        Admit that there are no additional communications to or from Isaac Larian

3 | that are part of the email chain attached hereto as Exhibit 1.

4

5 | DATED:  September 11, 2009      QUINN EMANUEL URQUHART OLIVER & HEDGES. LLP

6

7                          By _____

8                             Michael T. Zeller
                            Attorneys for Mattel, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT 2**

**PAGE 31**

-11-

MATTEL'S REQUESTS FOR ADMISSION TO LARIAN RE AUGUST 31. 2009 ORDER TO SHOW CAUSE

# EXHIBIT 1

EXHIBIT 2
PAGE 32

**Anderson, Diane**

| | |
|---|---|
| From: | Isaac Larian |
| Sent: | Wednesday, October 23, 2002 6:39 AM |
| To: | Victoria O'Connor |
| Subject: | RE: FW: Interview for the French magazine CAPITAL |

good point. Thanks.

-----Original Message-----
From: Victoria O'Connor
Sent: Wednesday, October 23, 2002 6:38 AM
To: Isaac Larian
Subject: RE: FW: Interview for the French magazine CAPITAL

don't you think we should say Bratz was born in October when a certain person was no longer with their company?

-----Original Message-----
From: Isaac Larian
Sent: Wednesday, October 23, 2002 1:35 AM
To: Victoria O'Connor; Sandrine de Raspide
Subject: FW: FW: Interview for the French magazine CAPITAL

FYI

-----Original Message-----
From: Isaac Larian
Sent: Wednesday, October 23, 2002 1:25 AM
To: 'Nathalie RIESEN'
Subject: RE: FW: Interview for the French magazine CAPITAL

Natalie,

Please see below

-----Original Message-----
From: Nathalie RIESEN [mailto:nathalie.villard@wanadoo.fr]
Sent: Wednesday, October 23, 2002 12:42 AM
To: ilarian@mgae.com
Subject: Re: FW: Interview for the French magazine CAPITAL

Thank you Isaac.
I have a few more questions about the story of the Bratz you would be kind to answer by email:
. Date of birth of the Bratz, time of development, first launch in the US

BORN SEPTEMBER 2000; 9 MONTH TO DEVELOP ( LIKE A BABY!); LAUNCHED IN THE USA IN JULY 2001 AND IN SPAIN JUNE 2001 ( BEFORE USA).ISAAC
. Total yearly Sales of the Bratz (in dollars) since their launch.
2001: $65 MILLION

2002: $350 MILLION ( INCLUDING LICENSED GOODS)

2003: PROJECTED $1 BILLION ( INCLUDING LICENSED GOODS)

. Increase of their market share of the doll market

BRATZ CURRENTLY HAVE 33% OF FASHION DOLL MARKET SHARE IN THE USA AND GROWING.

1

CONFIDENTIAL - ATTORNEYS' EYES ONLY

MGA2 0070266

EXHIBIT 2
PAGE 33

. Further development of the Bratz expected in 2003

THE BRATS LINE IS EXPANDING GREATLY FOR 2003. MGA , FOR THE FIRST TIME IS LAUNCHING A VERY INNOVATIVE AND FASHIONABLE LINE OF ELECTRONICS CALLED " BRATZ ELECTRIC FUNK" FOR 2003 AND THIS LINE IS EXPECTED TO GENERATE WHOLESALE SALES IN EXCESS OF $100 MILLION. WE ARE LITERALLY SIGNING 2-3 NEW LICENSEE'S A DAY FOR A VARIETY OF PRODUCTS ( I WILL E MAIL YOU THE LIST). we HAVE ALSO EXPANDED THE TOY LINE GREATLY FOR 2003 AND WILL HAVE OVER 100 NEW ITEMS INTRODUCED IN 2003, BY MGA ALONE. ISAAC

. Sales, Profits and margin of MGAE in 2002 / 2001 /2000

2000 SALES $90 MILLION

2001 SALES  $110 MILLION

2002 SALES $350 MILLION ( ESTIMATE)

. Brief description of MGAE headquarters in LA, its location...

MGAE IS PRESENTLY HEAD QUARTERED IN NORTH OF LA in 43,000 SQUARE FEET OFFICES. WE HAVE OUTGROWN THE FACILITIES AND ARE LOOKING TO MOVE TO A BIGGER FACILITY SOON. ISAAC
. Brief description of your management team

OUR MANAGEMENT TEAM CONSIST OF A GREAT GROUP PASSIONATE AND GROWTH AND EXCELLENCE ORIENTED INDIVIDUALS WHO CARE FOR THE BUSINESS. OUR MISSION STATEMENT IS TO BE NO 1 OR 2 IN ANYTHING WE DO OR DON'T DO IT. INNOVATIVE CONSUMER ENTERTAINMENT PRODUCTS IS THE HEART OF MAGE'S BUSINESS.MGA HAS WON NUMEROUS PRODUCT EXCELLENCE AWARDS EVERY YEAR INCLUDING THE MOST PRESTIGIOUS TOY OF THE YEAR AWARD AND FAMILY FUN TOY OF THE YEAR AWARD ( 3 YEARS IN THE ROW IN DIFFERENT CATEGORIES). ISAAC
. Your age, family situation and hobbies.

I AM 48 YEARS OLD ( BUT 13 AT HEART!) MARRIED FOR THE PAST 18 YEARS TO ANGELA AND HAVE 3 CHILDREN ( JASON:16, YASMINE: 14, CAMERON:8). A KID AT HEART, MY HOBBIES ARE CREATING TOYS, PLAYING VOLLEYBALL, MOUNTAIN BIKE RIDING , CAMPING AND BACKPACKING. TWO OF THE DOLLS ( YASMINE AND CAMERON) ARE NAMED AFTER MY KIDS.

Thank you very much for all this. This story will come out in Capitel (leading French business magazine) at the end of
November.

PLEASE VISIT WWW.MGAE.COM FOR MORE INFORMATION ABOUT MGA. PLEASE SEND ME TWO COPIES OF THE MAGAZINE WHEN IT COMES OUT.

THANK YOU FOR YOUR INTEREST IN MGA. BY THE WAY, ARE YOUR THREE DAUGHTERS BRATZ FANS? ISAAC

Best regards,
Nathalie

nathalie.villard@wanadoo.fr
Journaliste
CAPITAL
Tel 00 +33 (4) 66 03 24 03 / (1) 56 99 49 33
 Fax 00 +33 (4) 66 03 24 02


   inMesssage du 23/10/2002 02:49
>De : Isaac Larian <ilarian@mgae.com>
>A : Dave Malacrida <DMalacrida@mgae.com>
>Copie à : 'nathalie.villard@wanadoo.fr' <nathalie.villard@wanadoo.fr>
>Objet : FW: Interview for the French magazine CAPITAL
>
> Natalie, It was a pleasure talking to you.
>
> Dave, Please send Natalie our recent news clipinings by e mail ASAP.

2

CONFIDENTIAL - ATTORNEYS' EYES ONLY                    MGA2 0070267


EXHIBIT 2
PAGE 34

```
>
> Thanks,
>
> Isaac
>
>
>
> -----Original Message-----
> From: Nathalie RIESEN [mailto:nathalie.villard@wanadoo.fr]
> Sent: Tuesday, October 22, 2002 4:49 AM
> To: ilarian@mgae.com
> Subject: RE: Interview for the French magazine CAPITAL
>
>
> >I'll call you today at 10:00 am (your time).
> Nathalie
>
> Message du 22/10/2002 03:21
> >De : Isaac Larian <ilarian@mgae.com>
> >A : 'Nathalie RIESEN' <nathalie.villard@wanadoo.fr>
> >Copie à : Rene Turin <RTurin@mgae.com>
> >Objet : RE: Interview for the French magazine CAPITAL
> >
> > Dear Natalie,
> >
> > Lets do October 22 at 10 am.
> >
> > Thanks,
> >
> > Isaac Larian
> > Isaac Larian
> > CEO
> > M G A  Entertainment
> > 16730 Schoenborn Street
> > North Hills, California, 91343
> > Tel: 818-894-3150
> > Fax:818-894-1267
> > e-mail: Ilarian@MGAE.COM
> > Please Visit
> > www.MGAE.com
> > And the beautiful BRATZ at
> > www.Bratzpack.com
> > Hey! Its MGA!
> >
> >
> >
> > -----Original Message-----
> > From: Nathalie RIESEN [mailto:nathalie.villard@wanadoo.fr]
> > Sent: Monday, October 21, 2002 8:47 AM
> > To: ilarian@mgae.com
> > Subject: Re: Interview for the French magazine CAPITAL
> >
> >
> > >Dear Isaac,
> > Thanks for your prompt answer.
> > When can I call you for a 15 mn interview, between 8:00 and 10:00 am (your
> > time), either on Oct 22, 28, 29, 30 or 31?
> > Interview; the ingredients of the success of the Bratz.
> > . Birth of the concept? Is there a "Mr or Mrs Bratz"?
> > . How many people involved in the Bratz business today at MGAE?
> > . How different are they from the Barbie world and among the doll market
> in
> > general?
> > . Sales and market share in the US and oversea
> > Thanks.
> > Best regards,
> > Nathalie
```

3

CONFIDENTIAL - ATTORNEYS' EYES ONLY

MGA2 0070268



EXHIBIT  2
PAGE  35

```
> >
> > nathalie.villard@wanadoo.fr
> > > Journaliste
> > > CAPITAL
> > > Tel 00 +33 (4) 66 03 24 03 / (1) 56 99 49 33
> > > Fax 00 +33 (4) 66 03 24 02
> >
> > Messsage du 06/03/1904 16:20
> > >De : Nathalie Villard <nathalie.villard@wanadoo.fr>
> > >A :   <nathalie.villard@wanadoo.fr>
> > >Copie à :
> > >Objet : FW: Interview pour le magazine franç siz    CAPITAL
> > >
> > >
> > > ------------
> > > De : Isaac Larian <ilarian@mgae.com>
> > > Date : Fri, 18 Oct 2002 19:55:30 -0700
> > > À : Sandrine de Raspide <SDeRaspide@mgae.com>, 'Nathalie Villard'
> > > <nathalie.villard@wanadoo.fr>
> > > Cc : Dave Malacrida <DMalacrida@mgae.com>
> > > Objet : RE: Interview pour le magazine franç ais CAPITAL
> > >
> > > Dear Nathalie,
> > >
> > > I will be happy to do an interview.
> > >
> > > I am now in HK and back in the USA next Tuesday.
> > >
> > > I would like to ask for the list of questions in advance please.
> > >
> > > Best Regards,
> > >
> > > Isaac Larian
> > > Isaac Larian
> > > CEO
> > > M G A  Entertainment
> > > 16730 Schoenborn Street
> > > North Hills, California 91343
> > > Tel: 818-894-3150
> > > Fax: 818-894-1267
> > > e-mail: Ilarian@MGAE.COM
> > > Please Visit
> > > www.MGAE.com
> > > And the beautiful BRATZ at
> > > www.Bratzpack.com
> > > Hey! Its MGA!
> > >
> > >
> > >
> > > -----Original Message-----
> > > From: Sandrine de Raspide
> > > Sent: Friday, October 18, 2002 5:53 PM
> > > To: 'Nathalie Villard'
> > > Cc: Isaac Larian; Dave Malacrida
> > > Subject: RE: Interview pour le magazine franç ais CAPITAL
> > >
> > >
> > > Dear Nathalie,
> > >
> > > Thanks for your interest in Bratz.  Per our company policy, all
> interviews
> > > need to be conducted through Isaac Larian, our CEO.  Isaac is copied on
> > > this
> > > e-mail and will let you know if he can make himself available for a
> phone
> > > interview before the 31st of October.
> > > Isaac, Capital is a business magazine (500,000 prints/month) that will
```

4

CONFIDENTIAL - ATTORNEYS' EYES ONLY

MGA2 0070269


EXHIBIT ___
PAGE    36

```
> do
> > a
> > > special report on the toy industry worldwide.
> > > Kind regards,
> > > Sandrine
> > >
> > > -----Original Message-----
> > > From: Nathalie Villard [mailto:nathalie.villard@wanadoo.fr]
> > > Sent: Friday, October 18, 2002 5:44 AM
> > > To: sderaspide@mgae.com
> > > Subject: Interview pour le magazine franç ais CAPITAL
> > > Importance: High
> > >
> > >
> > > Bonjour,
> > > Dans son numéro de Décembre, Capital (leader de la presse économique,
> 500
> > > 000 ex/mois) prépare un Dossier international de 18 pages sur le
> business
> > > mondial du jouet.
> > > Entre autres articles, je prépare une histoire sur le succès du
> phénomène
> > > Bratz, la naissance du concept, ses déclinaisons, son univers de
> concurrence
> > > avec Mattel, ses licences...
> > > Pourrions-nous convenir rapidement d'un rdv téléphonique avant le 31
> > > Octobre. Beaucoup de personnes ici en France m'ont dit que vous pourriez
> > > m'être très utile.
> > > D'avance merci.
> > > Cordialement,
> > > Nathalie Villard
> > >
> > > nathalie.villard@wanadoo.fr
> > > Journaliste
> > > CAPITAL
> > > Tel 00 +33 (4) 66 03 24 03 / (1) 56 99 49 33
> > > Fax 00 +33 (4) 66 03 24 02
> > >
> > >
> >
```

5

CONFIDENTIAL - ATTORNEYS' EYES ONLY

MGA2 0070270



EXHIBIT 2
PAGE 37

# EXHIBIT 3



# ORRICK

ORRICK, HERRINGTON & SUTCLIFFE LLP
4 PARK PLAZA
SUITE 1600
IRVINE, CALIFORNIA 92614-2558

tel  +1-949-567-6700
fax  949-567-6710

WWW.ORRICK.COM

August 21, 2009

Cynthia A. Lock
(949) 852-7753
clock@orrick.com

*BY MESSENGER*

B. Dylan Proctor
Quinn Emanuel
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

Re:     <u>MGA Entertainment, Inc. v. Mattel</u>

Dear Dylan:

Enclosed is MGA's production of documents not submitted for *in camera* review, Bates Range MGA2 0069701 – MGA2 0070614.

## Mattel's Appendix A

Jan. 15 Log Entry Nos. 32, 33, 41 and 44.

Jan. 30 Log Entry Nos. 5, 40, 294, 295, 296, 297, 298, 299 and 300.

Oct. Log Entry Nos. 8, 1941, 2724, 2728, 2732 and 2802.

Rev. Aug. Log Entry No. 990.

Rev. Jan. 23 Log Entry Nos. 115, 209, 232, 233, 267, 381, 536, 548, 592, 593, 594, 595, 596, 609, 610, 611, 613, 672, 1172, 1173, 1178, 1179, 1277, 1301, 1399, 1418, 1424, 1474, 1635, 1706, 1721, 1731, 1732, 1775, 1779, 1783, 1899, 2025, 2039, 2042 and 2043.

Rev. Jan. 28 Log Entry Nos. 28, 36, 37, 38, 42, 43, 61, 97, 98, 99, 113 and 219.

## Mattel's Appendix B

Jan. 30 Log Entry Nos. 126, 218, 225 and 226.

Rev. Jan. 23 Log Entry No. 1476.

Rev. Jan. 28 Log Entry No. 214.

EXHIBIT __3__
PAGE __38__



ORRICK

B. Dylan Proctor
August 21, 2009
Page 2

**Mattel's Appendix C**

Oct. Log Entry Nos. 3, 1046, 1047, 1466 and 1761.

**Mattel's Appendix D**

Rev. Jan. 23 Log Entry Nos. 1480 and 1648.

**Mattel's Appendix E**

Jan. 15 Log Entry No. 188.

Rev. Jan. 23 Log Entry Nos. 118, 670, 1087, 1096, 1099, 1103, 2031 and 2090.

Very truly yours,

Cynthia Lock

Cynthia A. Lock

cc:    Annette L. Hurst
       Jason D. Russell

EXHIBIT 3
PAGE 39

# EXHIBIT 4

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 5

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 6



## ORRICK

ORRICK, HERRINGTON & SUTCLIFFE LLP
THE ORRICK BUILDING
405 HOWARD STREET
SAN FRANCISCO, CALIFORNIA 94105-2669

tel  +1-415-773-5700
fax  +1-415-773-5759

WWW.ORRICK.COM

August 3, 2009

Annette L. Hurst
(415) 773-4585
ahurst@orrick.com

*VIA ELECTRONIC MAIL AND FACSIMILE*

Robert C. O'Brien, Esq.
555 West Fifth Street, 48th Floor
Los Angeles, CA 90013-1065

Re:   *Carter Bryant v. Mattel* and consolidated actions

Dear Mr. O'Brien:

MGA's Motion to Compel Further Responses to MGA's First Set of Phase 2 Interrogatories and Second Set of Phase 2 Requests for Production ("Motion") was filed and served by the ECF system before the 6:00 p.m. deadline on July 24. Mattel's opposition was due on July 31, and Mattel failed to file by that date. Mattel has therefore defaulted on the Motion. As provided by Local Rule 7-12, such failure to file by the deadline "may be deemed consent to the granting of the motion." This is an instance where such consent should be deemed, because the excusable neglect requirement of Federal Rule 6(b)(1)(B) (applicable when an extension is requested after the deadline) is not met here.

Yesterday, on Sunday at 10:59 a.m., Mattel (by Ms. Hauler) sent me an e-mail asking for an extension of time until Wednesday to file the already-late opposition. She requested the extension "for scheduling reasons" as "a professional courtesy." I generally interpret requests for professional courtesy to mean there is a personal scheduling problem on the part of counsel. When I pointed out that the opposition was already late, Ms. Hauler then claimed that the extension was actually needed in order to obtain declarations from Mattel witnesses.

Mattel asserts that a calendaring error led to its failure to file a timely opposition. This is hard to credit, since the motion was filed and served by ECF before 6:00 p.m. It is hard to imagine that Mattel's calendaring system is determined by e-mails from counsel rather than official court notices—and failing to observe official court notices is inexcusable. Even were that failure excusable, it does not justify a further extension until Wednesday and the failure to file today should be considered a further default. Had Mattel been diligent, it should have been able to file an opposition today. Instead, Mattel apparently did not start working on the opposition until the weekend and then realized that it would require declarations in order to oppose the motion. The overall picture here is not excusable neglect sufficient to relieve Mattel of its default and grant it a further extension.

EXHIBIT ___6___
PAGE _____106



**ORRICK**

Robert C. O'Brien
August 3, 2009
Page 2

Moreover, this delay of nearly a week in getting the motion fully briefed matters for three reasons:
(1) MGA's need for the information; (2) Mattel's consistent pattern of aggressive exploitation of
deadlines and other rules to its perceived advantage; and (3) enforcement of *consistent* minimum
standards of courtesy *applied evenly to both parties.*

First, complete answers, responses and production for this discovery, which goes to the core of
Phase 2 issues, have already been improperly delayed with a near-frivolous motion for protective
order on *counting* issues. As the Discovery Master stated to Mattel at the July 8 hearing, there should
be no further motion on counting issues until there is some claim that MGA is past its limit for
Phase 2, and even then the Discovery Master is going to be inclined to give both parties the
discovery they reasonably need in this complex matter. Mattel's motion for protective order should
have been immediately withdrawn at that point and the answers and responses served. Instead that
protective order motion will not even be heard for another ten days. If Mattel is not ordered to
comply promptly, MGA will be even further delayed in obtaining this discovery. Thus, it matters if
the Motion is delayed, and no extension should be granted.

Second, Mattel raised no issue in meet and confer that could now reasonably be expected to require
attention in declarations from its personnel. In fact, Mattel engages in a consistent pattern of failing
to meet and confer in good faith. It does not present its arguments during meet and confer, it does
not agree to limitations on its own discovery, and it does not agree to produce anything in response
to discovery requests from others. So, Mattel should not even be permitted to submit these
declarations which are purportedly causing it to be late, because the issues were never raised in the
first place during meet and confer as an excuse for non-compliance.

Third, Mattel apparently believes that MGA's efforts to obtain relevant and timely discovery must
come to a standstill when it requires a courtesy, but it is entirely unwilling to grant one to MGA
when desperately needed, no matter how reasonable the request. Courtesy is a two-way street, but
Mattel walks only in one direction. Here, I pause to address Mattel's misleading assertions
concerning the extension we requested for MGA's *in camera* inspection.

The notion that we should force the Discovery Master to review documents *in camera* for which no
claim of privilege is maintained, as Mattel apparently would have it, is foolish. The only reason for
such an assertion is to impose the expense of the Discovery Master upon MGA as an ancillary
burden of litigation. Orrick has spent hundreds of hours re-reviewing the documents at issue and in
the utmost good faith has determined that some of them should be produced in their entirety and
others should be produced in redacted form (it is this total group that we estimated a week ago
would comprise approximately 40% of the documents on the appendices). But we are not certain
whether the documents to be produced in redacted form have ever been produced in the form we
believe appropriate. We proposed to Mattel an additional two-week extension to complete this

EXHIBIT __10__
PAGE _____107__

# O
## ORRICK

Robert C. O'Brien
August 3, 2009
Page 3

production, serve a supplemental privilege log expanding upon the claims of privilege for the documents continuing to be withheld and the basis for the redactions, and then to let Mattel say which documents they really believe require *in camera* review at which point we would turn them over for review immediately without further discussion. Mattel refused our original request for a two-week extension (agreeing only to one), and refused all of our subsequent entreaties for additional time, including this proposal. As a result, we have had several people working almost nonstop on this issue for the last three weeks, pulling all-nighters, missing family obligations and the like. Accordingly, we will provide to the Discovery Master tomorrow, as ordered, all of the documents for *in camera* inspection over which MGA maintains any claim of privilege, with proposed redactions. Once those proposed redactions are approved (or modified), we will produce the redacted documents and the additional ones for which no claim of privilege is maintained.

Additionally, Mattel has granted extensions either sparingly, or not at all, asserting that discovery meet and confer letters are late if not sent within five days, and refusing to grant other reasonable extensions such as the additional time reasonable needed to oppose their motion for continuance. Most recently Mattel has threatened IGWT with the five-day requirement for meet and confer on a document subpoena, even though IGWT's prior counsel informed Mattel that he was no longer representing it and it had not yet obtained new counsel. Mattel serves witnesses with subpoenas on Sundays at 6:00 a.m. in the morning. Mattel will stop short of nothing to enforce the deadlines and press all limits when it perceives doing so to be even in its slightest interest.

Despite Mattel's practices, *on every prior occasion until this one that Mattel has requested an extension, we have granted it.* We granted three weeks to serve interrogatory responses ordered by the Discovery Master to be served by July 31, *and we still don't have those responses.* We granted other extensions on deadlines in at least two instances when requested, promptly and without question.

Mattel should be held to the same standards it would inflict on others. Mattel's approach to the discovery process should not be rewarded with the requested extension.

Respectfully submitted,

*Annette L. Hurst*

Annette L. Hurst

cc:    Michael T. Zeller, Esq.
       Todd Gordinier, Esq.

EXHIBIT __6__
PAGE _____ 108

# EXHIBIT 7

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES - GENERAL

Case No.     CV 04-09049-SGL(RNBx)                              Date: August 31, 2009

Title:     CARTER BRYANT -v- MATTEL, INC.
==============================================================================
PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

Cindy Sasse                             Theresa Lanza
Courtroom Deputy Clerk                  Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:       ATTORNEYS PRESENT FOR DEFENDANTS:

John Quinn                              Annette L. Hurst
Michael T. Zeller                       Warrington S. Parker, III
B. Dylan Proctor                        William A. Molinski


PROCEEDINGS:   MOTIONS HEARING

            1.   Mattel Inc.'s Motion for Order for Preclusive Relief or, in the
                 Alternative, Access to Active Files on the Larian Hard Drives, No.
                 5760, 5769;

            2.   Mattel, Inc.'s Motion for Clarification of 6/18/09 Order,
                 No. 5783;

            3.   Mattel Inc.'s Motion to Modify Scheduling Order,
                 No. 6050

            4.   Order to Show Cause

        The Court addressed the issue the filings of sur-replies; all counsel are directed to follow
Local Rule 7-10 regarding the filing of replies.  The Court further heard oral argument and makes
the following rulings:

        First, in light of the parties' stipulation, as set forth on the record, the Court **DENIES AS**

MINUTES FORM 90                                          Initials of Deputy Clerk: cls
CIVIL -- GEN                    Page 1                   Time: 00/41


EXHIBIT ___7___
PAGE ___109___

**MOOT** Mattel Inc.'s Motion for Order for Preclusive Relief or, in the Alternative, Access to Active Files on the Larian Hard Drives.

Second, the Court **GRANTS** Mattel, Inc.'s Motion for Clarification. The Court's June 18, 2009, Order is **CLARIFIED** in the following manner: The Court's June 18, 2009, Order, including its discussion of willfulness, was intended to be and is limited to the equitable issue of the scope of an appropriate accounting, and shall not be construed to apply to any circumstances beyond the scope of an appropriate accounting.

Third, the Court **DENIES WITHOUT PREJUDICE** Mattel, Inc.'s Motion to Amend the Scheduling Order as premature. The Court will re-visit the issue of the case scheduling order when it takes up Mattel, Inc.'s motion for leave to file a Fourth Amended Answer and Counterclaims on October 1, 2009. In addition, the Court sets a status conference at which all lead counsel of record shall appear on September 21, 2009, at 1:30 p.m. On or before September 18, 2009, the parties are **ORDERED** to file with the Court a report, not to exceed 10 pages, of the status of discovery for Phase 2 – what has been completed and what must still be completed prior to trial. Counsel shall also advise the Court of the parties' positions with respect to (1) any further bifurcation of Phase 2 trial and (2) a stay of the trial of Phase 2 pending the Ninth Circuit's ruling on the appeal of Phase 1.

Finally, the Court addresses an issue of concern that arose in the papers submitted in advance of this hearing. Specifically, Exhibit 2 to the Second Supplemental Declaration of Dylan Proctor in support of Mattel's Motion for Clarification, dated August 26, 2009, appears relevant to the issue of whether certain acts of copyright infringement were willful acts of infringement. Upon consideration of the evidence in Phase 1, the jury found that the infringement was not willful. However, this document, Bates Nos. MGA2 0070266-0070270, was not offered as evidence in Phase 1, as it was withheld by counsel for the MGA parties on a claim of attorney client privilege. It was finally produced in its current, more complete form on August 21, 2009, well after the conclusion of Phase 1 of the trial, and only upon the eve of an impending *in camera* review of the document by the Discovery Master pursuant to his Order.[1]

The more complete version shows MGA employee Victoria O'Connor was concerned with Mr. Larian's representations to a media source regarding the timing of the creation of Bratz, the central issue tried in Phase 1. Ms. O'Connor stated: "[D]on't you think we should say Bratz was born in October when a certain person was no longer with their company?" Mr. Larian responded: "[G]ood point. Thanks."

---

[1] The document was produced earlier to Mattel in an incomplete form, but the produced version eliminates the communications most relevant to the issue of willfulness. The document takes the form of an email string, a printed version of electronic communications now familiar to most individuals (and certainly to all litigation attorneys), with the most recent communication appearing first. The incomplete document ends with Isaac Larian forwarding the communication, on Wednesday, October 23, 2002, at 1:35 a.m., to other individuals as an "FYI." The more complete version continues with a response from Victoria O'Connor, at 8:38 a.m., and Mr. Larian's reply one minute later.

EXHIBIT **7**

PAGE **110**

This document has clear relevance to the claims and defenses at issue in the Phase 1 trial. The withholding of this document under a claim of privilege concerns the Court, as it implicates the duty of the Court to oversee the conduct of the lawyers who appear before it, and who are largely responsible for maintaining the integrity of the adversarial process.

Toward that end, the Court **ORDERS** counsel for the MGA parties to **APPEAR AND SHOW CAUSE** on September 21, 2009, at 1:30 p.m., why sanctions should not be imposed for their repeated failure to produce this document at an earlier date.

With respect to the email communications referenced in this Order, the Court **ORDERS** counsel for the MGA parties to file a report with the Court (served on all parties and Court-Appointed Officers) that, at a minimum, provides to and/or reports to the Court:

(1)    Copies of all versions of all privilege logs, whether or not provided to Mattel, the Discovery Master, the Court-Appointed Forensic Auditor, the Temporary Receiver, or the Monitor, upon which the document referred to above appears, including any version of this email exchange among the senders and recipients (including those "cc'd" or "bcc'd") that contains communications not set forth in the incomplete version of the document that was produced in discovery.

(2)    A description of the process whereby the document referred to above (or any version of it) came to appear on any privilege log.  That description shall include, with respect to the document that bears Bates Nos. MGA2 0070266-0070270, the identity of any attorney responsible for the designation of the document as privileged, the identity of any attorney responsible for reviewing that designation, and the identity of any attorney who, upon discovery of the non-privileged nature of the document, continued to withhold the document from production. Each of those attorneys,[2] whether or not current or past counsel of record, shall file a declaration regarding what actions he or she took (or refrained from taking) with respect to this document.

(3)    Any other information known to any current or past counsel of record relevant to a determination of why this unprivileged, relevant document was withheld pursuant to a claim of privilege.

(4)    If any of the information referenced in (1)-(3) above is itself subject to a claim of either attorney-client or work-product privilege, that information may not be withheld from the Court, but need not be served on any party or Court-Appointed Officer (unless the Court orders otherwise) and shall instead be delivered to the Courtroom

---

[2] Each current and past counsel of record is **ORDERED** to disseminate a copy of this Order to every attorney (whether or not currently associated with any law firm that is or was counsel of record) whom is known to have been, or who is not known to have been but who is likely to have been, involved in the designation of maintenance of this document as privileged.

Initials of Deputy Clerk: cls
Time: 00/41

EXHIBIT __7__
PAGE ___111___

Deputy Clerk, Cindy Sasse, in a separate, *in camera* filing.

Counsel for the MGA parties shall file their written report(s) no later than September 14, 2009. Any party may respond no later than September 18, 2009.

The Court recognizes that the Court's current inquiry may overlap to a certain extent with Orders or issues or proceedings before the Discovery Master. The focus of the Court's inquiry is on attorney conduct; the focus of the Discovery Master is on discovery of evidence. Therefore, the Court's actions here should not be construed to impact in any way upon the Discovery Master's proceedings and Orders. More specifically, but not exclusively, this OSC shall not be construed to limit the Discovery Master's ability to continue to hear and resolve discovery disputes on the schedule he sees fit to set, nor shall it be construed to extend any deadline or briefing schedule set by the Discovery Master, and nor shall it be construed to effectuate any delay on the Discovery Master's anticipated *in camera* inspection of certain documents identified as privileged, which may proceed (or be delayed) as the Discovery Master deems appropriate.

**IT IS SO ORDERED.**

EXHIBIT __7__
PAGE __112__

# EXHIBIT 8

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES - GENERAL

Case No.   CV 04-09049-SGL(RNBx)                    Date: September 11, 2009

Title:     MATTEL, INC. -v- MGA ENTERTAINMENT, INC.

==================================================================
PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

Cindy Sasse                                N/A
Courtroom Deputy Clerk                     Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:          ATTORNEYS PRESENT FOR DEFENDANTS:

N/A                                        N/A


PROCEEDINGS:  IN CHAMBERS (NO PROCEEDINGS HELD) RE: STATUS HEARING

        The hearing previously set for September 21, 2009, is ORDERED continued to
September 22, 2009, at 10:00 a.m.

        IT IS SO ORDERED.


MINUTES FORM 90                                         Initials of Deputy Clerk: cls
CIVIL -- GEN                 Page 1

EXHIBIT 8
PAGE 113

# EXHIBIT 9

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 10

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 11

**Anderson, Diane**

From:          Isaac Larian
Sent:          Wednesday, October 23, 2002 1:35 AM
To:            Victoria O'Connor; Sandrine de Raspide
Subject:       FW: FW: Interview for the French magazine CAPITAL

FYI

-----Original Message-----
From: Isaac Larian
Sent: Wednesday, October 23, 2002 1:25 AM
To: 'Nathalie RIESEN'
Subject: RE: FW: Interview for the French magazine CAPITAL


Natalie,

Please see below

-----Original Message-----
From: Nathalie RIESEN [mailto:nathalie.villard@wanadoo.fr]
Sent: Wednesday, October 23, 2002 12:42 AM
To: ilarian@mgae.com
Subject: Re: FW: Interview for the French magazine CAPITAL


Thank you Isaac.
I have a few more questions about the story of the Bratz you would be kind to answer by
email:
. Date of birth of the Bratz, time of development, first launch in the US

BORN SEPTEMBER 2000; 9 MONTH TO DEVELOP ( LIKE A BABY!); LAUNCHED IN THE USA IN JULY 2001
AND IN SPAIN JUNE 2001 ( BEFORE USA).ISAAC
. Total yearly Sales of the Bratz (in dollars) since their launch.
2001: $65 MILLION

2002: $350 MILLION ( INCLUDING LICENSED GOODS)

2003: PROJECTED $1 BILLION ( INCLUDING LICENSED GOODS)

. Increase of their market share of the doll market

BRATZ CURRENTLY HAVE 33% OF FASHION DOLL MARKET SHARE IN THE USA AND GROWING. .

. Further development of the Bratz expected in 2003

THE BRATS LINE IS EXPANDING GREATLY FOR 2003. MGA , FOR THE FIRST TIME IS LAUNCHING A VERY
INNOVATIVE AND FASHIONABLE LINE OF ELECTRONICS CALLED " BRATZ ELECTRIC FUNK" FOR 2003 AND
THIS LINE IS EXPECTED TO GENERATE WHOLESALE SALES IN EXCESS OF $100 MILLION. WE ARE
LITERALLY SIGNING 2-3 NEW LICENSEE'S A DAY FOR A VARIETY OF PRODUCTS ( I WILL E MAIL YOU
THE LIST). we HAVE ALSO EXPANDED THE TOY LINE GREATLY FOR 2003 AND WILL HAVE OVER 100 NEW
ITEMS INTRODUCED IN 2003, BY MGA ALONE. ISAAC

. Sales, Profits and margin of MGAE in 2002 / 2001 /2000

2000 SALES $90 MILLION

2001 SALES  $110 MILLION

2002 SALES $350 MILLION ( ESTIMATE)

. Brief description of MGAE headquarters in LA, its location...

1

CONFIDENTIAL - ATTORNEYS' EYES ONLY

EXHIBIT __11__
PAGE ____150

MGA 3819572
EX 11907-0001

MGAE IS PRESENTLY HEAD QUARTERED IN NORTH OF LA in 43,000 SQUARE FEET OFFICES. WE HAVE OUTGROWN THE FACILITIES AND ARE LOOKING TO MOVE TO A BIGGER FACILITY SOON. ISAAC
. Brief description of your management team

OUR MANAGEMENT TEAM CONSIST OF A GREAT GROUP PASSIONATE AND GROWTH AND EXCELLENCE ORIENTED INDIVIDUALS WHO CARE FOR THE BUSINESS. OUR MISSION STATEMENT IS TO BE NO 1 OR 2 IN ANYTHING WE DO OR DON'T DO IT. INNOVATIVE CONSUMER ENTERTAINMENT PRODUCTS IS THE HEART OF MAGE'S BUSINESS.MGA HAS WON NUMEROUS PRODUCT EXCELLENCE AWARDS EVERY YEAR INCLUDING THE MOST PRESTIGIOUS TOY OF THE YEAR AWARD AND FAMILY FUN TOY OF THE YEAR AWARD ( 3 YEARS IN THE ROW IN DIFFERENT CATEGORIES). ISAAC
. Your age, family situation and hobbies.

I AM 48 YEARS OLD ( BUT 13 AT HEART!) MARRIED FOR THE PAST 18 YEARS TO ANGELA AND HAVE 3 CHILDREN ( JASON:16, YASMINE: 14, CAMERON:8). A KID AT HEART, MY HOBBIES ARE CREATING TOYS, PLAYING VOLLEYBALL, MOUNTAIN BIKE RIDING , CAMPING AND BACKPACKING. TWO OF THE DOLLS ( YASMINE AND CAMERON) ARE NAMED AFTER MY KIDS.

Thank you very much for all this. This story will come out in Capital (leading French business magazine) at the end of
November.

PLEASE VISIT WWW.MGAE.COM FOR MORE INFORMATION ABOUT MGA. PLEASE SEND ME TWO COPIES OF THE MAGAZINE WHEN IT COMES OUT.

THANK YOU FOR YOUR INTEREST IN MGA. BY THE WAY, ARE YOUR THREE DAUGHTERS BRATZ FANS? ISAAC

Best regards,
Nathalie

nathalie.villard@wanadoo.fr
Journaliste
CAPITAL
Tel 00 +33 (4) 66 03 24 03 / (1) 56 99 49 33
 Fax 00 +33 (4) 66 03 24 02


 inMesssage du 23/10/2002 02:49
>De : Isaac Larian <ilarian@mgae.com>
>A : Dave Malacrida <DMalacrida@mgae.com>
>Copie à : 'nathalie.villard@wanadoo.fr' <nathalie.villard@wanadoo.fr>
>Objet : FW: Interview for the French magazine CAPITAL
>
> Natalie, It was a pleasure talking to you.
>
> Dave, Please send Natalie our recent news clipinings by e mail ASAP.
>
> Thanks,
>
> Isaac
>
>
>
> -----Original Message-----
> From: Nathalie RIESEN [mailto:nathalie.villard@wanadoo.fr]
> Sent: Tuesday, October 22, 2002 4:49 AM
> To: ilarian@mgae.com
> Subject: RE: Interview for the French magazine CAPITAL
>
>
> >I'll call you today at 10:00 am (your time).
> Nathalie
>
> Messsage du 22/10/2002 03:21
> >De : Isaac Larian <ilarian@mgae.com>

2

CONFIDENTIAL - ATTORNEYS' EYES ONLY

EXHIBIT 11
PAGE 151

MGA 3819573
EX 11907-0002

```
> >A : 'Nathalie RIESEN' <nathalie.villard@wanadoo.fr>
> >Copie à : Rene Turin <RTurin@mgae.com>
> >Objet : RE: Interview for the French magazine CAPITAL
> >
> > Dear Natalie,
> >
> > Lets do October 22 at 10 am.
> >
> > Thanks,
> >
> > Isaac Larian
> > Isaac Larian
> > CEO
> > M G A  Entertainment
> > 16730 Schoenborn Street
> > North Hills, California 91343
> > Tel: 818-894-3150
> > Fax:818-894-1267
> > e-mail: Ilarian@MGAE.COM
> > Please Visit
> > www.MGAE.com
> > And the beautiful BRATZ at
> > www.Bratzpack.com
> > Hey! Its MGA!
> >
> >
> >
> > -----Original Message-----
> > From: Nathalie RIESEN [mailto:nathalie.villard@wanadoo.fr]
> > Sent: Monday, October 21, 2002 8:47 AM
> > To: ilarian@mgae.com
> > Subject: Re: Interview for the French magazine CAPITAL
> >
> >
> > >Dear Isaac,
> > Thanks for your prompt answer.
> > When can I call you for a 15 mn interview, between 8:00 and 10:00 am (your
> > time), either on Oct 22, 28, 29, 30 or 31?
> > Interview: the ingredients of the success of the Bratz.
> > . Birth of the concept? Is there a "Mr or Mrs Bratz"?
> > . How many people involved in the Bratz business today at MGAE?
> > . How different are they from the Barbie world and among the doll market
> in
> > general?
> > . Sales and market share in the US and oversea
> > Thanks.
> > Best regards,
> > Nathalie
> >
> >  nathalie.villard@wanadoo.fr
> > > Journaliste
> > > CAPITAL
> > > Tel 00 +33 (4) 66 03 24 03 / (1) 56 99 49 33
> > > Fax 00 +33 (4) 66 03 24 02
> >
> > Messsage du 06/03/1904 16:20
> > >De : Nathalie Villard <nathalie.villard@wanadoo.fr>
> > >A :  <nathalie.villard@wanadoo.fr>
> > >Copie à :
> > >Objet : FW: Interview pour le magazine franç ais        CAPITAL
> > >
> > >
> > > ----------
> > > De : Isaac Larian <ilarian@mgàe.com>
> > > Date : Fri, 18 Oct 2002 19:55:30 -0700
> > > À : Sandrine de Raspide <SDeRaspide@mgae.com>, 'Nathalie Villard'
> > > <nathalie.villard@wanadoo.fr>
```

3

CONFIDENTIAL - ATTORNEYS' EYES ONLY

EXHIBIT 11
PAGE 152

MGA 3819574
EX 11907-0003

```
> > > Cc : Dave Malacrida <DMalacrida@mgae.com>
> > > Objet : RE: Interview pour le magazine franç ais CAPITAL
> > >
> > > Dear Nathalie,
> > >
> > > I will be happy to do an interview.
> > >
> > > I am now in HK and back in the USA next Tuesday.
> > >
> > > I would like to ask for the list of questions in advance please.
> > >
> > > Best Regards,
> > >
> > > Isaac Larian
> > > Isaac Larian
> > > CEO
> > > M G A  Entertainment
> > > 16730 Schoenborn Street
> > > North Hills, California 91343
> > > Tel: 818-894-3150
> > > Fax:818-894-1267
> > > e-mail: Ilarian@MGAE.COM
> > > Please Visit
> > > www.MGAE.com
> > > And the beautiful BRATZ at
> > > www.Bratzpack.com
> > > Hey! Its MGA!
> > >
> > >
> > >
> > > -----Original Message-----
> > > From: Sandrine de Raspide
> > > Sent: Friday, October 18, 2002 5:53 PM
> > > To: 'Nathalie Villard'
> > > Cc: Isaac Larian; Dave Malacrida
> > > Subject: RE: Interview pour le magazine franç ais CAPITAL
> > >
> > >
> > > Dear Nathalie,
> > >
> > > Thanks for your interest in Bratz.  Per our company policy, all
> interviews
> > > need to be conducted through Isaac Larian, our CEO.  Isaac is copied on
> > this
> > > e-mail and will let you know if he can make himself available for a
> phone
> > > interview before the 31st of October.
> > > Isaac, Capital is a business magazine (500,000 prints/month) that will
> do
> > a
> > > special report on the toy industry worldwide.
> > > Kind regards,
> > > Sandrine
> > >
> > > -----Original Message-----
> > > From: Nathalie Villard [mailto:nathalie.villard@wanadoo.fr]
> > > Sent: Friday, October 18, 2002 5:44 AM
> > > To: sderaspide@mgae.com
> > > Subject: Interview pour le magazine franç ais CAPITAL
> > > Importance: High
> > >
> > >
> > > Bonjour,
> > > Dans son numéro de Décembre, Capital (leader de la presse économique,
> 500
> > > 000 ex/mois) prépare un Dossier international de 18 pages sur le
> business
```

4

EXHIBIT __11__

PAGE __153__

MGA 3819575
EX 11907-0004

```
> > > mondial du jouet.
> > > Entre autres articles, je prépare une histoire sur le succès du
> > phénomène
> > > Bratz, la naissance du concept, ses déclinaisons, son univers de
> > concurrence
> > > avec Mattel, ses licences...
> > > Pourrions-nous convenir rapidement d'un rdv téléphonique avant le 31
> > > Octobre. Beaucoup de personnes ici en France m'ont dit que vous pourriez
> > > m'être très utile.
> > > D'avance merci.
> > > Cordialement,
> > > Nathalie Villard
> > >
> > > nathalie.villard@wanadoo.fr
> > > Journaliste
> > > CAPITAL
> > > Tel 00 +33 (4) 66 03 24 03 / (1) 56 99 49 33
> > > Fax 00 +33 (4) 66 03 24 02
> > >
> > >
> >
> >
```

5

CONFIDENTIAL – ATTORNEYS' EYES ONLY

EXHIBIT  11
PAGE  154

MGA 3819576
EX 11907-0005

# EXHIBIT 12

1

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

- - -

HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

- - -

MATTEL, INC.,                          )
                                       )
                    PLAINTIFF,         )
                                       )
          VS.                          )
                                       )   NO. ED CV 04-09049
MGA ENTERTAINMENT, INC., ET. AL.,      )   (LEAD LOW NUMBER)
                                       )
                    DEFENDANTS.        )   MOTION HEARING
                                       )
AND CONSOLIDATED ACTIONS,              )
                                       )

**CERTIFIED COPY**

REPORTER'S TRANSCRIPT OF PROCEEDINGS

RIVERSIDE, CALIFORNIA

MONDAY , JUNE 2 , 2008

1:33 P.M.

THERESA A. LANZA, RPR, CSR
FEDERAL OFFICIAL COURT REPORTER
3470 12TH STREET, RM. 134
RIVERSIDE, CALIFORNIA  92501
951-274-0844
WWW.THERESALANZA.COM

MONDAY, JUNE 2, 2008

EXHIBIT 12
PAGE 155

2

1    APPEARANCES:

2

3

4    ON BEHALF OF MATTEL:

5                    QUINN EMANUEL
                     BY:   HARRY A. OLIVAR
6                    BY:   JON COREY
                     BY:   DYLAN PROCTOR
7                    865 S. FIGUEROA STREET,
                     10TH FLOOR
8                    LOS ANGELES, CALIFORNIA   90017
                     213-624-7707

9

10   ON BEHALF OF MGA ENTERTAINMENT:

11

12                   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
                     BY:   JASON RUSSELL
13                   BY:   JOSÉ ALLAN
                     300 SOUTH GRAND AVENUE
14                   LOS ANGELES, CALIFORNIA   90071-3144
                     213-687-5000

15

16

17

18

19

20

21

22

23

24

25

MONDAY, JUNE 2, 2008

EXHIBIT  12
PAGE _____ 156

26

1  MET.

2       THE COURT:  WHAT KIND OF EVIDENCE ARE YOU LOOKING

3  FOR?  THAT'S SOMETHING ELSE YOU SAY AS WELL, BUT I AM NOT SURE

4  WHAT YOU ARE LOOKING FOR.

5       MR. OLIVAR:  SOME TESTIMONY FROM A PERCIPIENT WITNESS

6  THAT BANDAI AND ACCLAIM GAMES HAVE AN IDENTICAL LEGAL ISSUE; IT

7  PUTS IT CLOSE TO IDENTICAL WITH MGA IN DEFENDING AGAINST THE

8  CLAIMS OF THIS LAWSUIT.

9       THE COURT:  SO YOU'RE LOOKING FOR A DECLARATION OR

10  SOMETHING TO THAT EFFECT.

11       MR. OLIVAR:  WE HAVE THAT, BUT IT REALLY SAYS NOTHING

12  AT ALL.  IT SAYS WE WORK WITH BANDAI CLOSELY, THEY HAVE VARIOUS

13  ROLES, THEY HAVE INTERESTS IN THE SALE OF BRATZ.  WE ACCEPT

14  THEY HAVE ECONOMIC INTERESTS AS A LICENSEE.  BUT THE CASE LAW

15  IS CLEAR THAT JUST BECAUSE SOMEONE IS INTERESTED IN THE SALES

16  OF BRATZ CONTINUING IN A COMMERCIAL SENSE, THAT DOES NOT COUNT

17  AS AN IDENTICAL OR MERELY AN IDENTICAL LEGAL INTEREST.

18       THERE'S NO EVIDENCE THAT BANDAI HAS BEEN WORKING WITH

19  MGA ON A COORDINATED LEGAL STRATEGY OR THAT ANY OF THESE

20  DOCUMENTS IN ANY WAY FIT INTO THAT STRATEGY.  THEY JUST HAVE

21  DOCUMENTS INVOLVING PRODUCT SALES OR INVOICES OR TRADEMARKS AND

22  THEY SAY PURSUANT TO COMMON INTEREST, AND THERE'S NO EVIDENCE

23  TO SATISFY ANY OF THE LEGAL TESTS AS TO THESE DOCUMENTS.

24       THE ONE DECLARATION THEY PUT IN, MR. KHARI, SAYS

25  NOTHING THAT WOULD SATISFY THE LEGAL TESTS.

02:08
02:08
02:08
02:08
02:09
:09

EXHIBIT  12
PAGE  157

27

1          SO THAT ONE I THINK IS SUSCEPTIBLE TO A CLEAR RULING.
2     WE HIT A STONE WALL DURING MEET AND CONFER TRYING TO GET
3     PRODUCTION OF THOSE DOCUMENTS.
4          THE COURT:   VERY GOOD.
5          MR. ALLAN, LET ME HEAR FROM YOU ON THIS.
6          MR. ALLAN:   GOOD AFTERNOON, YOUR HONOR.                02:09
7          JOSE ALLAN.   I'M FROM THE SKADDEN ARPS OFFICE IN SAN
8     FRANCISCO.
9          THE COURT:   WELCOME, COUNSEL.
10         MR. ALLAN:   I'VE SPENT QUITE A BIT OF TIME FOCUSED
11    JUST ON THESE PRIVILEGED LOG ISSUES, YOUR HONOR, AND THEY DO    02:10
12    BREAK DOWN INTO THREE GENERAL CATEGORIES; THOSE THAT THE CLAIM
13    IS MADE THAT THIS JUST REFLECTS COMMUNICATIONS AMONG IN-HOUSE
14    PERSONNEL AND NO LAWYER IS INVOLVED; THE SO-CALLED TRADEMARK
15    SEARCH RESULTS; AND THEN THE THIRD-PARTY COMMUNICATIONS.
16         LET'S DEAL WITH THE FIRST CATEGORY FIRST, BECAUSE I        02:10
17    HAVE HAD QUITE EXTENSIVE COMMUNICATIONS WITH THE QUINN FIRM
18    CONCERNING THE NATURE OF THE DOCUMENTS.
19         WHEN THIS ISSUE FIRST CAME UP, WE WENT BACK THROUGH
20    THE PRIVILEGED LOGS AND IDENTIFIED THE DOCUMENTS WHICH WE
21    BELIEVED COULD BE REDACTED AND PRODUCED IN PART WHERE THERE WAS  02:10
22    NONPRIVILEGED COMMUNICATIONS INVOLVED.   THE DOCUMENTS THAT
23    REMAINED ON THE LOG WERE DOCUMENTS IN WHICH INTERNAL MGA
24    PERSONNEL WERE DISCUSSING ADVICE RECEIVED FROM COUNSEL
25    CONCERNING A BROAD ARRAY OF MATTERS.   THOSE ARE THE DOCUMENTS    02:11

MONDAY, JUNE 2, 2008

EXHIBIT 12
PAGE     158

28

1   THAT WE'VE TOLD THEM WE HAVE DECIDED SHOULD NOT BE PRODUCED.

2   THEY WERE NOT SUSCEPTIBLE OF BEING PRODUCED IN REDACTED FORM.

3   BUT WE COMMITTED AND WE DID GO THROUGH AND REVIEW EVERY

4   DOCUMENT THAT THEY IDENTIFIED IN THEIR LETTER THAT THEY HAD

5   RAISED A QUESTION ABOUT, AND WE ASSURED OURSELVES THAT THE ONES

6   THAT WERE NOT BEING PRODUCED IN REDACTED FORM WERE

7   APPROPRIATELY WITHHELD ON THE GROUNDS OF PRIVILEGED LOGS.

8           THE COURT:  LET ME STOP YOU THERE.

9           CAN YOU REPRESENT THEN TO THE COURT YOU'VE DONE THAT

10  FOR NOT ONLY THE ONES THEY HAVE RAISED PERHAPS IN A LETTER OR

11  YOUR COMMUNICATIONS, BUT ALL OF THE ONES IDENTIFIED IN THIS

12  FIRST MOTION?

13          MR. ALLAN:  YES.

14          ONE OF THE PROBLEMS IS WE'VE HAD A MOVING TARGET

15  HERE.  I SAID, 'LOOK, I'M GOING TO GIVE YOU A REVISED LOG WHICH

16  IDENTIFIES DOCUMENTS WHICH HAVE BEEN PRODUCED IN REDACTED FORM

17  AND DOCUMENTS WHICH HAVE BEEN WITHHELD IN PART.'

18          THE COURT:  VERY WELL.

19          MR. ALLAN:  WE GAVE THEM THOSE LOGS.  AND I SAID,

20  'LOOK, ONCE YOU GET THOSE LOGS, I'D LIKE YOU TO GO THROUGH

21  THOSE NEW REVISED LOGS AND TELL ME WHICH DOCUMENTS YOU STILL

22  HAVE A PROBLEM WITH, THAT YOU'VE GOT SOME CONCERNS ABOUT.'

23          I GOT THAT LETTER.  I WENT BACK AND WENT THROUGH

24  THOSE DOCUMENTS AND WE IDENTIFIED THE ONES THAT WE BELIEVED ARE

25  APPROPRIATELY WITHHELD IN WHOLE; SO WE'VE BEEN THROUGH THAT

MONDAY   JUNE 2   2008

EXHIBIT 12
PAGE ____ 159

29

1    EXERCISE.

2            THE COURT:   WHAT ABOUT THE TRADEMARK SEARCH RESULTS

3    AND REQUESTS?

4            MR. ALLAN:   YOUR HONOR, YOU HIT THE NAIL RIGHT ON THE

5    HEAD WITH REGARD TO THE TRADEMARK SEARCH RESULTS.   WE HAVE NOT

6    WITHHELD FROM PRODUCTION DOCUMENTS WHERE SOMEBODY DID A

7    TRADEMARK SEARCH RESULT AND GOT A PRINTOUT BACK IDENTIFYING

8    WHAT OTHER MARKS WERE OUT THERE.

9            WHAT WE HAVE WITHHELD ARE DOCUMENTS IN WHICH COUNSEL

10   FOR MGA HAS SAID, 'LOOK, I'VE CONDUCTED A TRADEMARK SEARCH

11   RESULT AND THIS IS WHAT I DISCOVERED AND HERE'S MY ADVICE TO

12   YOU AS TO WHAT YOUR NEXT STEPS OUGHT TO BE.'

13           NOW, MR. OLIVAR HAS AGREED THAT THOSE TYPES OF

14   COMMUNICATIONS WOULD BE PRIVILEGED AND THAT THEY ARE NOT

15   SEEKING PRODUCTION OF THAT TYPE OF COMMUNICATIONS.

16           THE COURT:   LET ME STOP YOU THERE.

17           I DON'T KNOW WHETHER HE DOES OR NOT.   I DON'T KNOW IF

18   I AGREE.

19           THE FIRST SENTENCE THAT YOU SAID THERE, IN YOUR

20   HYPOTHETICAL LETTER, 'I HAVE CONDUCTED A TRADEMARK SEARCH AND

21   THIS IS MY ADVICE TO YOU,' I AGREE THAT EVERYTHING AFTER 'THIS

22   IS MY ADVICE TO YOU...' IS REDACTED AND PROTECTED BY PRIVILEGE.

23   BUT THE FACT HE CONDUCTED OR SHE CONDUCTED A TRADEMARK SEARCH

24   RESULT, THAT FIRST PORTION, THAT IS NOT PROTECTED, UNDER MY

25   READING OF THE LAW.

02:12
02:13
02:13
02:13
02:13

EXHIBIT 12-
PAGE 160

MONDAY   JUNE 2   2008

34

1   ONE OF THOSE TWO CATEGORIES?  THAT ALL OF THE DOCUMENTS THAT

2   HAVE NOT BEEN BASED ON THIS COMMON INTEREST PRIVILEGE FALL INTO

3   ONE OF THOSE TWO CATEGORIES?

4           MR. ALLAN:  YES, YOUR HONOR.  AND I'LL DO YOU ONE

5   BETTER AND I'LL GO BACK AND DOUBLE CONFIRM THAT.  BUT THAT HAS       02:20

6   BEEN THE STANDARD THAT WE USED.

7           THE COURT:  VERY WELL.  THANK YOU, COUNSEL.

8           I'D LIKE TO HEAR FROM MATTEL ON THE SECOND ISSUE, AND

9   THAT'S ON MY CONCERN ABOUT CUMULATIVE EVIDENCE.  BECAUSE,

10  CERTAINLY, IF THERE WAS A TRADEMARK SEARCH OR IF MGA RECEIVED A      02:20

11  TRADEMARK SEARCH RESULT, WE DON'T NEED FIVE DOCUMENTS REFERRING

12  TO THAT PARTICULAR SEARCH OR THAT PARTICULAR SEARCH RESULT,

13  PROVIDED THAT YOU HAVE IT.

14          WOULD YOU AGREE?

15          MR. OLIVAR:  THIS WAS A MOTION ABOUT DOCUMENTS             02:20

16  CLAIMED TO BE PRIVILEGE.  THE ARGUMENT IS NOW THEY ARE NOT

17  PRIVILEGED, BUT WE DON'T NEED WHAT WE'RE SEEKING.

18          THE COURT:  I UNDERSTAND THAT, BELIEVE ME.

19          MR. OLIVAR:  TAKING COUNSEL'S REPRESENTATION THEY MAY

20  NOT BE PRIVILEGED -- YES, WE DO NEED THE INFORMATION WE'RE          02:21

21  SEEKING AS TO FIRST USES OF BRATZ AND OTHER TRADEMARKS.

22          THE COURT:  FAIR ENOUGH.

23          MR. OLIVAR:  THIS IS WHAT I DISCOVERED, COUNSEL IS

24  SAYING; THAT'S NOT PRIVILEGED ON A TRADEMARK SEARCH.

25          THE COURT:  I AGREE.                                        02:21

MONDAY, JUNE 2, 2008                      MOTIONS HEARING

EXHIBIT 12
PAGE 161

35

1        IS THERE A CUMULATIVE DIMENSION?  DOES THERE COME A

2   POINT WHEN IT BECOMES OBVIOUS THAT --

3        MR. OLIVAR:  YOU HAVE TO SEE THE DOCUMENTS.

4        WITH ALL DUE RESPECT, WE DON'T ACCEPT MGA'S

5   REPRESENTATION THAT THERE IS NOTHING OF BENEFIT TO US IN THESE    02:21

6   DOCUMENTS.  I DON'T THINK IN THIS CASE WE OUGHT TO HAVE TO

7   ACCEPT THAT.

8        ONE FINAL THING, MR. ALLAN MADE REPRESENTATIONS ON

9   ONE AND THREE.  THERE ARE SOME DOCUMENTS THAT WE THINK ARE SO

10  CRITICAL THAT WE DON'T WANT TO TAKE COUNSEL'S REPRESENTATION IN   02:21

11  COURT THAT THEY ARE NOT PRIVILEGED.  WE WOULD SUBMIT A SMALL

12  NUMBER TO YOUR HONOR, LESS THAN 50, IN THE CRITICAL TIME

13  PERIOD, SUCH AS THE CONSULTING AGREEMENT IN AUGUST OF 2000 BY A

14  NONLAWYER THAT THEY SAY IS PRIVILEGED, FOR SOME REASON, FOR

15  YOUR HONOR'S REVIEW.  WE REQUESTED THE ABILITY TO DO THAT, LESS   02:22

16  THAN 50 DOCUMENTS, SO WE DON'T HAVE TO ACCEPT COUNSEL'S

17  REPRESENTATION THAT LOG ENTRIES THAT APPEAR TO BE IMPROPER ARE

18  REALLY PRIVILEGED.

19       WITH THAT, I'LL SUBMIT, YOUR HONOR.

20       THE COURT:  ALL RIGHT.

21       THE COURT IS GOING TO GRANT IN PART AND DENY IN PART         02:22

22  ALL THREE OF THESE MOTIONS.

23       I'M GOING TO DENY THE FIRST MOTION, BASED ON THE

24  REPRESENTATIONS MADE BY MR. ALLAN HERE BEFORE THE COURT TODAY

25  THAT ALL OF THE DOCUMENTS THAT HAVE BEEN REPRESENTED AS          02:22

MONDAY, JUNE 2, 2008                          MOTIONS HEARING

EXHIBIT ___12___
PAGE ___162___

.36

1   COMMUNICATIONS BETWEEN NONLAWYERS ARE, IN FACT, PRIVILEGED AND

2   THAT MR. ALLAN HAS PERSONALLY ASSURED THE COURT THAT THOSE HAVE

3   BEEN REVIEWED AND, IN FACT, TO THE EXTENT THAT THEY ARE

4   PARTIALLY NONPRIVILEGED, THAT THEY HAVE BEEN PRODUCED IN

5   REDACTED FORM.   TO THE EXTENT THAT THEY HAVE NOT BEEN PRODUCED,   02:23

6   THAT IS BECAUSE THEY ARE FULLY PRIVILEGED.   HERE'S JUST SIMPLY

7   NOT A BASES FOR ANY PARTICULAR DOCUMENT OR ANY GROUP OF

8   DOCUMENTS FOR THE COURT TO ORDER A PRODUCTION AT THIS POINT.   I

9   DO ACCEPT MR. ALLAN'S REPRESENTATION.   SO THE FIRST MOTION I

10  WILL DENY; THAT'S THE MOTION TO COMPEL PRODUCTION OF PREVIOUSLY   02:23

11  WITHHELD DOCUMENTS, ONLY PORTIONS OF WHICH ARE ALLEGEDLY

12  PRIVILEGED.

13          WITH RESPECT TO THE SECOND MOTION IN THIS GROUPING

14  RELATED TO THE TRADEMARK SEARCH RESULTS, I'M GOING TO GRANT

15  THIS IN PART BY ORDERING THAT ALL DOCUMENTS WHICH REVEAL   02:23

16  TRADEMARK SEARCH RESULTS AND REQUESTS AND/OR TRADEMARK DATES OF

17  FIRST USE BE PRODUCED SUBJECT TO REDACTION FOR ANY PRIVILEGED

18  COMMUNICATIONS.

19          SO IF THE DOCUMENT MAKES A REFERENCE, TO USE AN

20  EXAMPLE, LIKE MR. ALLAN USED -- I CONDUCTED A TRADEMARK SEARCH   02:24

21  ON SUCH AND SUCH A DATE, THIS IS MY ADVICE; THE FORMER PART

22  WOULD BE PRODUCED, THE LATTER PART WOULD BE REDACTED.

23          WITH RESPECT TO THE THIRD MOTION CONCERNING THE

24  SO-CALLED BANDAI DOCUMENTS, THIS IS THE COMMON INTEREST

25  PRIVILEGE, THE COURT IS SETTING FORTH ITS FINDINGS AND ITS   02:24

MONDAY, JUNE 2, 2008                    )TIONS HEARING

EXHIBIT __12__
PAGE __163__

37

1    LEGAL CONCLUSIONS THAT THE COMMON INTEREST PRIVILEGE ATTACHES

2    ONLY WHERE THE PARTIES SHARE IDENTICAL OR NEARLY IDENTICAL

3    LEGAL INTERESTS; AND TWO, THE COMMUNICATIONS ARE MADE AS PART

4    OF A COORDINATED LEGAL STRATEGY.

5         I'M CONFIDENT IN MR. ALLAN'S EXPLANATION OF HIS                02:24

6    REVIEW, BUT I AM GOING TO REQUIRE THAT BASED ON SOME DEGREE OF

7    UNCERTAINTY OR A DESIRE TO DOUBLE CHECK, THAT HE MAKE A

8    COMPREHENSIVE REVIEW OF THE SO-CALLED BANDAI DOCUMENTS AND THAT

9    IS TO INCLUDE THE ACCLAIM GAME OR ANY OTHER THIRD-PARTY TO

10   WHICH THESE DOCUMENTS WERE DISCLOSED, AND SUBMIT APPROPRIATE      02:25

11   EVIDENCE TO THE COURT IN THE FORM OF A SWORN DECLARATION OF THE

12   REVIEW THAT WAS MADE, WHAT WAS DONE TO ENSURE THOSE HAVE BEEN

13   PROPERLY DESIGNATED ON THE PRIVILEGED LOGS.

14        MR. ALLAN:  ONE INQUIRY WITH REGARD TO THE SECOND

15   MOTION, AND THAT IS, WOULD THE COURT CONSIDER A DATE LIMITATION   02:25

16   WITH RESPECT TO THOSE TRADEMARK SEARCH RESULTS?  BECAUSE THERE

17   ARE A NUMBER OF DOCUMENTS THAT ARE 2002, 2003, WELL BEYOND THE

18   PERIOD THAT THEY WOULD REALLY HAVE ANY BEARING ON THE ISSUES

19   THAT ARE TEED UP FOR PHASE 1-A.

20        THE COURT:  COUNSEL?

21        MR. OLIVAR:  FIRST DATES OF FIRST USE ARE CRITICAL NO        02:26

22   MATTER WHEN THEY APPEAR.  IF IT'S A 2004 SEARCH FOR BRATZ, AND

23   IT'S REPRESENTED TO THE LAWYER BRATZ WAS FIRST USED IN AUGUST

24   OF 2000, THAT'S A DOCUMENT WE WANT; AT LEAST THE PART ABOUT THE

25   DATE OF FIRST USE.                                                02:26

EXHIBIT  12
PAGE      164

58

1    ASKING THE COURT TO ENTERTAIN A MOTION TO ALLOW THAT EXPERT TO

2    TESTIFY AND TO HAVE MGA CONSIDER THAT REPORT.

3            MR. RUSSELL:   YOUR HONOR, I RECEIVED NOTICE OF THIS

4    FROM MR. COREY APPROXIMATELY AN HOUR BEFORE I SHOWED UP IN

5    COURT.  IT'S DIFFICULT TO, WITH ANY CERTAINTY, RESPOND TO IT.          02:5

6            I GUESS WHAT I'D ASK IS I CAN TELL YOU NOW, MGA IS

7    GOING TO OBJECT, BECAUSE WE BELIEVE THEY HAVE HAD THE

8    OPPORTUNITY TO HAVE THIS REPORT LONG BEFORE THE EXPERT PROCESS

9    COMMENCED; SO IF IT'S THEIR INTENT TO USE THIS REPORT, I'D ASK

10   THEY BE GIVEN A DATE TO FILE THIS MOTION, LET'S SET UP A              02:5

11   BRIEFING SCHEDULE.  BECAUSE, IN OUR VIEW, THIS IS CLEARLY

12   UNTIMELY, INAPPROPRIATE, AND WE STRONGLY OBJECT.

13           THE COURT:   SINCE YOU'VE ONLY HAD AN HOUR TO THINK

14   ABOUT THIS, LET'S TALK ABOUT IT TOMORROW MORNING, AND WE'LL SEE

15   IF BRIEFING IS APPROPRIATE.                                          02:5

16           MR. RUSSELL:   THANK YOU, YOUR HONOR.

17           MR. COREY:   THANK YOU, JUDGE.

18                      CERTIFICATE

19

20   I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED
     STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF
21   THE STENOGRAPHICALLY RECORDED PROCEEDINGS HELD IN THE
     ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN
22   CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF
     THE UNITED STATES.
23

24   _____        6-3-08
                                      _____
25   THERESA A. LANZA, RPR, CSR          DATE
     FEDERAL OFFICIAL COURT REPORTER

EXHIBIT __12__
PAGE ___165___

MONDAY, JUNE 2, 2008

# EXHIBIT 13

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 14

Case 2:04-cv-09049-DOC-RNB   Document 6698-4   Filed 09/16/09   Page 79 of 107   Page ID
#:220028
Case 2:04-cv-09049-SGL-RNB   Document 6674   Filed 09/14/2009   Page 1 of 2

1 | THOMAS J. NOLAN (Bar No. 66992)
(tnolan@skadden.com)
2 | JASON D. RUSSELL (Bar No. 169219)
(jrussell@skadden.com)
3 | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
4 | Los Angeles, CA  90071-3144
Tel.: (213) 687-5000/Fax: (213) 687-5600
5 |
Attorneys for Counter-Defendants,
6 | MGA ENTERTAINMENT, INC.,
ISAAC LARIAN, and MGA ENTERTAINMENT (HK) LIMITED
7 |

8 |               UNITED STATED DISTRICT COURT

9 |               CENTRAL DISTRICT OF CALIFORNIA

10 |                    EASTERN DIVISION

CARTER BRYANT, an individual          )   CASE NO. CV 04-9049 SGL (RNBx)
11 |                                          )
         Plaintiff,                      )   Consolidated with Case No. 04-9059 and
12 |                                          )   Case No. 05-2727
    v.                                   )
13 |                                          )   **SKADDEN, ARPS' NOTICE OF** *IN*
MATTEL, INC., a Delaware corporation  )   *CAMERA* **SUBMISSION IN**
14 |                                          )   **RESPONSE TO THE COURT'S**
         Defendant.                      )   **ORDER TO SHOW CAUSE**
15 |                                          )   **REGARDING DOCUMENT NO.**
                                         )   **MGA2 0070266-0070270**
16 | AND CONSOLIDATED ACTIONS.            )
                                         )
17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |                                   EXHIBIT _14_
28 |                                   PAGE ___173___

Skadden, Arps' Notice Of *In Camera* Submission - Case No. CV 04-9049 SGL (RNBx)

1  **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

2       **PLEASE TAKE NOTICE** that Skadden, Arps, Slate, Meagher & Flom LLP has

3  submitted the following sealed documents to the Court *in camera* pursuant to the Court's

4  September 2, 2009 Order To Show Cause:

5      1.    Report Of Skadden, Arps, Slate, Meagher & Flom LLP In Response To The

6  Court's Order To Show Cause Regarding Document No. MGA2 0070266-0070270

7      2.    Declaration of Thomas J. Nolan In Response To The Court's Order To Show

8  Cause Regarding Document No. MGA2 0070266-0070270

9      3.    Declaration of Jose R. Allen In Response To The Court's Order To Show

10  Cause Regarding Document No. MGA2 0070266-0070270

11      4.    Declaration of Kenneth A. Plevan In Response To The Court's Order To Show

12  Cause Regarding Document No. MGA2 0070266-0070270

13

14  DATED: September 14, 2009     SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

15

16          By: _____ /s/ Thomas J. Nolan _____

                           Thomas J. Nolan

17                     Attorneys for the MGA Parties

18

19

20

21

22

23

24

25

26

27

28

                                    EXHIBIT __14__

                                    PAGE _____174__

Skadden, Arps' Notice Of *In Camera* Submission - Case No. CV 04-9049 SGL (RNBx)

# EXHIBIT 15

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

WRITER'S DIRECT DIAL NO.
**(213) 443-3203**

WRITER'S INTERNET ADDRESS
**scottwatson@quinnemanuel.com**

September 11, 2009

**VIA E-MAIL AND MESSENGER**

Annette L. Hurst
Orrick Herrington & Sutcliffe LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105

William Molinski
Orrick Herrington & Sutcliffe LLP
777 South Figueroa Street
Suite 3200
Los Angeles, CA 90017

Re:   Mattel Inc. v. MGA Entertainment, Inc. et al.

Dear Counsel:

Enclosed please find Mattel's Requests for Admission Related To the Court's Order to Show Cause Dated August 31, 2009 to MGA and Mr. Larian.

Each of these Requests is directly relevant to the issues to be addressed by the Court at the September 21, 2009 hearing. Accordingly, Mattel requests that MGA and Mr. Larian agree to provide substantive answers to these Requests by noon on Friday, September 18, 2009.

If MGA and Mr. Larian will not agree to do so, Mattel intends to seek an *ex parte* order from the Discovery Master compelling full responses to the Requests by that time, including on the same basis on which Mattel was compelled to respond to certain MGA document requests before the September 21 hearing. I am available to further meet and confer regarding Mattel's contemplated *ex parte*, if necessary, any time Monday morning.

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
07975/3097873.1 SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
TOKYO | Akasaka Twin Tower Main Building, 6th Floor, 17-22 Akasaka 2-Chome, Minato-ku, Tokyo 107-0052, Japan | TEL +81-3-5561-1711 FAX +81-3-5561-1712
LONDON | 16 Old Bailey, London EC4M 7EG, United Kingdom | TEL +44-20-7653-2000 FAX +44-20-7653-2100

EXHIBIT 15
PAGE 175

Please let me know your clients' position on Mattel's request.

Very truly yours,

Scott L. Watson

2

EXHIBIT _15_
PAGE ___176

# EXHIBIT 16

## Valerie Lozano

| | |
|---|---|
| **From:** | Scott Watson |
| **Sent:** | Monday, September 14, 2009 2:16 PM |
| **To:** | Valerie Lozano; Dylan Proctor; Joseph Sarles |
| **Subject:** | Fw: Mattel v. MGA |

Fyi

---

**From:** Hurst, Annette <ahurst@orrick.com>
**To:** Hurst, Annette <ahurst@orrick.com>; Scott Watson
**Cc:** Michael T Zeller; Jason.Russell@skadden.com <Jason.Russell@skadden.com>; Molinski, William
<wmolinski@orrick.com>
**Sent:** Mon Sep 14 14:05:42 2009
**Subject:** RE: Mattel v. MGA

Scott:

I've now reviewed your letter and the enclosed RFAs directed to Mr. Larian and MGA.

First, we disagree with the premise of your letter that the Order to Show Cause set for the September 22 hearing
is directed to the MGA Parties, as opposed to the MGA Parties' *counsel*. On its face, the OSC concerns "the
duty of the Court to oversee the conduct of the lawyers who appear before it, and who are largely responsible
for maintaining the integrity of the adversarial process." 8/31/09 Order at 3. The Order further requires *counsel*
to file reports. The conclusion of the Order expressly notes that the "focus of the Court's inquiry is on attorney
conduct . . . ." *Id.* at 4. Accordingly, there is no basis to expedite discovery of the MGA Parties because of the
hearing set for September 22.

Second, even were the OSC directed to the MGA Parties, which it is not, these RFAs are plainly improper. On
their face, they are invasive of the attorney-client privilege and work product protection.

In light of the foregoing, which is not intended to be an exclusive statement of all objections the MGA Parties
may interpose, the MGA Parties will oppose any ex parte application seeking to shorten time for response to
these RFAs.

Annette Hurst

---

**From:** Hurst, Annette
**Sent:** Monday, September 14, 2009 12:09 PM
**To:** Scott Watson; Molinski, William
**Cc:** Michael T Zeller
**Subject:** RE: Mattel v. MGA

Scott:

I haven't even reviewed your correspondence yet from Friday (which I believe was sent around 5:00 p.m.). There is
nothing about Mr. Sarles' e-mail transmitting it that suggested any urgency whatsoever. In the future if you require an
urgent response, it would be useful to provide some notice that a letter attached to an e-mail is something more than
routine correspondence.

I will take this e-mail as such notice and proceed to review your letter and the proposed discovery and get back to you.

1

EXHIBIT 14
PAGE 177

Sincerely,
Annette Hurst

---

**From:** Scott Watson [mailto:scottwatson@quinnemanuel.com]
**Sent:** Monday, September 14, 2009 11:32 AM
**To:** Hurst, Annette; Molinski, William
**Cc:** Michael T Zeller
**Subject:** Mattel v. MGA

Counsel,

I have received no response to my letter of Friday in which I asked MGA to agree to provide substantive responses to the Requests for Admission served with the letter by noon on Friday, September 18, 2009. Nor has anyone contacted me this morning to meet and confer on this issue.

I take MGA's silence as a refusal to agree to answer the RFAs on an expedited basis and Mattel will proceed with its ex parte application.

Best,

Scott

**Scott L. Watson**
**Quinn Emanuel Urquhart Oliver & Hedges LLP.**

865 S. Figueroa St 10th Floor
Los Angeles, Ca 90017
213-443-3203 Direct
213.443.3000 Main Office Number
213.443.3100 FAX
scottwatson@quinnemanuel.com
www.quinnemanuel.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.


```
"EMF <orrick.com>" made the following annotations.
-----------------------------------------------------------------------------
=========================================================
```

```
IRS Circular 230 disclosure:
To ensure compliance with requirements imposed by the IRS,
we inform you that any tax advice contained in this
communication, unless expressly stated otherwise, was not
intended or written to be used, and cannot be used, for
the purpose of (i) avoiding tax-related penalties under
the Internal Revenue Code or (ii) promoting, marketing or
recommending to another party any tax-related matter(s)
addressed herein.
```

```
=========================================================
```

NOTICE TO RECIPIENT:   THIS E-MAIL IS   MEANT FOR ONLY THE

2

EXHIBIT _16_
PAGE _178_

INTENDED RECIPIENT OF THE TRANSMISSION, AND MAY BE A
COMMUNICATION PRIVILEGED BY LAW.   IF YOU RECEIVED THIS E-
MAIL IN ERROR, ANY REVIEW, USE, DISSEMINATION,
DISTRIBUTION, OR COPYING OF THIS E-MAIL IS STRICTLY
PROHIBITED.   PLEASE NOTIFY US IMMEDIATELY OF THE ERROR BY
RETURN E-MAIL AND PLEASE DELETE THIS MESSAGE FROM YOUR
SYSTEM. THANK YOU IN ADVANCE FOR YOUR COOPERATION.

For more information about Orrick, please visit
http://www.orrick.com/
=======================================================
==========================================================================

EXHIBIT 16
PAGE 179

# EXHIBIT 17

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 18

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 19

1 | QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
2 |   John B. Quinn (Bar No. 90378)
  (johnquinn@quinnemanuel.com)
3 |   Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
4 |   Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
5 |   Timothy L. Alger (Bar No. 160303)
  (timalger@quinnemanuel.com)
6 | 865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
7 | Telephone: (213) 443-3000
Facsimile: (213) 443-3100

8 | Attorneys for Mattel, Inc.

9 | UNITED STATES DISTRICT COURT

10 | CENTRAL DISTRICT OF CALIFORNIA

11 | EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727 |
| v. | |
| MATTEL, INC., a Delaware corporation, | MATTEL, INC.'S FIRST SET OF REQUESTS FOR DOCUMENTS AND THINGS TO ISAAC LARIAN |
| Defendant. | |
| AND CONSOLIDATED CASES. | |

EXHIBIT __19__
PAGE __205__

C4|13|c7

07209/2142932.1

ORIGINAL

1          Pursuant to <u>Rule</u> 34 of the <u>Federal Rules of Civil Procedure</u>, Mattel,

2  Inc. hereby requests that defendant Isaac Larian ("Larian") respond to these

3  document requests ("Requests") and make available for inspection and copying

4  originals of the following documents within 30 days of service at the offices of

5  Quinn Emanuel Urquhart Oliver & Hedges, LLP, 865 South Figueroa Street, 10th

6  floor, Los Angeles, CA 90017.  Larian shall be obligated to supplement the

7  responses to these Requests at such times and to the extent required by <u>Rule</u> 26(e) of

8  the <u>Federal Rules of Civil Procedure</u>.

9

10  **I.    DEFINITIONS**

11

12          For purposes of these Requests, the following definitions apply:

13          A.     "YOU," "YOUR" and "LARIAN" mean Isaac Larian and any

14  individual or entity acting directly or indirectly by, through, under or on behalf of

15  Isaac Larian, including but not limited to current or former directors, officers,

16  agents, attorneys, employees, partners, joint venturers, contractors, accountants, or

17  representatives of Isaac Larian or any entity under the control or direction of Isaac

18  Larian (including but not limited to MGA), and any corporation, partnership,

19  association, trust, predecessor-in-interest and successor-in-interest, and any other

20  PERSON acting on behalf of Isaac Larian or pursuant to his authority or subject to

21  his control.

22          B.     "MGA" means MGA Entertainment, Inc. and all current or

23  former directors, officers, employees, agents, contractors, attorneys, accountants,

24  representatives, subsidiaries, divisions, AFFILIATES, predecessors-in-interest and

25  successors-in-interest, and any other PERSON acting on its behalf, pursuant to its

26  authority or subject to its control.

27          C.     "MATTEL" means Mattel, Inc. and all current or former

28  directors, officers, employees, agents, contractors, attorneys, accountants,

1   representatives, subsidiaries, divisions, AFFILIATES, predecessors-in-interest and

2   successors-in-interest, and any other PERSON acting on its behalf, pursuant to its

3   authority or subject to its control.

4          D.   "BRYANT" means Carter Bryant, any of his current or former

5   agents, representatives, attorneys, employees, partners, joint venturers,

6   predecessors-in-interest and successors-in-interest, and any other PERSON acting

7   on his behalf, pursuant to his authority or subject to his control.  For purposes of

8   these Requests, "MGA" and "LARIAN" do not include "BRYANT."

9          E.   "DOCUMENT" or "DOCUMENTS" means all "writings" and

10  "recordings" as those terms are defined in <u>Rule</u> 1001 of the <u>Federal Rules of</u>

11  <u>Evidence</u> and <u>Rule</u> 34 of the <u>Federal Rules of Civil Procedure</u> and shall include all

12  writings, including but not limited to handwriting, typewriting, printing, image,

13  photograph, photocopy, digital file of any kind, transmittal by (or as an attachment

14  to) electronic mail (including instant messages and text messages) or facsimile,

15  video and audio recordings, and every other means of recording upon any tangible

16  thing, any form of communication or representation, and any record thereby created,

17  regardless of the manner in which the record has been stored, and all non-identical

18  copies of such DOCUMENTS, in the possession, custody, or control of YOU,

19  YOUR counsel, or any other PERSON acting on YOUR behalf.

20         F.   "COMMUNICATION," in the plural as well as the singular,

21  means any transmittal and/or receipt of information, whether such was oral or

22  written, and whether such was by chance, prearranged, formal or informal, and

23  specifically includes, but is not limited to, conversations in person, telephone

24  conversations, electronic mail (including instant messages and text messages),

25  voicemail, letters, memoranda, statements, media releases, magazine and newspaper

26  articles, and video and audio transmissions.

27         G.   "DESIGN" or "DESIGNS" means any and all representations,

28  whether two-dimensional or three-dimensional, and whether in tangible, digital,

EXHIBIT __19__
PAGE ____207____

-3-

MATTEL'S FIRST SET OF DOCUMENT REQUESTS TO ISAAC LARIAN

1   electronic or other form, including but not limited to all works, designs, artwork,

2   sketches, drawings, illustrations, representations, depictions, blueprints, schematics,

3   diagrams, images, sculptures, prototypes, models, samples, rotocasts, reductions to

4   practice, developments, concepts, ideas, inventions and/or improvements, as well as

5   all other items, things and DOCUMENTS in which any of the foregoing are or have

6   been expressed, embodied, contained, fixed or reflected in any manner, whether in

7   whole or in part.

8           H.      "BRATZ" means any project, product, doll or DESIGN or any

9   portion thereof ever known by that name, that is now or has ever been known as, or

10  sold or marketed under, the name or term "Bratz" or that is now or has ever been

11  sold or marketed as part of the "Bratz" line, including without limitation all

12  prototypes, models, samples and versions thereof.  As used herein, "products, dolls

13  or DESIGNS or any portion thereof" also includes without limitation any names,

14  fashions, accessories, artwork, packaging or any other works, materials, matters or

15  items included or associated therewith.  Without limiting the generality of the

16  foregoing, "BRATZ" includes any such project, product, doll or DESIGN,

17  regardless of what any such project, product, doll or DESIGN has in fact been

18  called, and regardless of what any such project, product, doll or DESIGN is or has

19  been also, previously or subsequently called.  Also without limiting the generality of

20  the foregoing, and contrary to MGA's recent assertions in connection with other

21  Mattel discovery requests, the term "BRATZ" does not require that there be a doll

22  existing at the time of the event, incident or occurrence that is the subject of, or

23  otherwise relevant or responsive to, the Requests herein.

24          I.      "ANGEL" refers to those projects, products, dolls or DESIGNS

25  or any portion thereof, sometimes called "Angel Faces" and/or "Prayer Angels," that

26  MGA has claimed are the subject of MGA000706-08, MGA000710-12,

27  MGA000714-16, MGA000718-20, MGA000724-28 and MGA000734, including

28  without limitation all prototypes, models, samples and versions thereof.  As used

1   herein, "products, dolls or DESIGNS or any portion thereof" also includes without

2   limitation any names, fashions, accessories, artwork, packaging or any other works,

3   materials, matters or items included or associated therewith.  Without limiting the

4   generality of the foregoing, "ANGEL" includes any such project, product, doll or

5   DESIGN, regardless of what any such project, product, doll or DESIGN has in fact

6   been called, and regardless of what any such project, product, doll or DESIGN is or

7   has been also, previously or subsequently called.  Also without limiting the

8   generality of the foregoing, and contrary to MGA's recent assertions in connection

9   with other Mattel discovery requests, the term "ANGEL" does not require that there

10  be a doll existing at the time of the event, incident or occurrence that is the subject

11  of, or otherwise relevant or responsive to, the Requests herein.

12       J.   "AFFILIATES" means any and all corporations, proprietorships,

13  d/b/a's, partnerships, joint ventures and business entities of any kind that, directly or

14  indirectly, in whole or in part, own or control, are under common ownership or

15  control with, or are owned or controlled by a PERSON, party or entity, including

16  without limitation each parent, subsidiary and joint venture of such PERSON, party

17  or entity.

18       K.   "IDENTIFY" or "IDENTITY" means the following:

19       (a)   With reference to an individual, means such individual's

20  name, current or last known business title, current or last known business affiliation,

21  current or last known relationship to YOU, current or last known residential and

22  business address, and current or last known telephone number.

23       (b)   With reference to an entity or governmental organization,

24  means such entity's or organization's name, present or last-known address, and

25  present or last-known telephone number and the IDENTITY of each individual who

26  has served or participated as a contact for or on behalf of such entity or organization.

27       (c)   With reference to an account with a bank or financial

28  institution, means the name and address of the bank or financial institution, the

EXHIBIT _19_
PAGE _209_

-5-

MATTEL'S FIRST SET OF DOCUMENT REQUESTS TO ISAAC LARIAN

1    account number(s) for or otherwise associated with such account and the name of

2    each holder, including without limitation each beneficial holder, of each such

3    account.

4              (d)     With reference to a STORAGE DEVICE, means the

5    manufacturer name, brand, model name and number, serial number and all other

6    manufacturer identifiers, and the technical specifications and capacities of such

7    STORAGE DEVICE.

8              L.      "ACTION" means this action now consolidated under Case No.

9    04-9049 before the Hon. Stephen Larson and formerly Mattel, Inc. v. Bryant, first

10   filed in Los Angeles County Superior Court; Bryant v. Mattel, Inc.; and MGA

11   Entertainment, Inc. v. Mattel, Inc.; and all counterclaims, cross-claims and defenses

12   therein.

13             M.      "DIGITAL INFORMATION" means any information created or

14   stored digitally, including but not limited to electronically, magnetically or optically.

15             N.      "STORAGE DEVICE" means any computer hard drive,

16   memory, USB device, tape, storage array or any other device or medium that allows

17   a user, whether permanently, temporarily or otherwise, to create, generate, prepare,

18   transmit, copy,  retain, store or maintain DIGITAL INFORMATION.

19             O.      "FAMILY MEMBER" means any PERSON who at any time is,

20   was or has been a parent, spouse, or child of another PERSON.

21             P.      "RELATING," "RELATING TO," "REFERRING OR

22   RELATING TO," or "REFER OR RELATE TO" means any and all of the following

23   terms and their synonyms:  refer to, discuss, constitute, evidence, pertain to,

24   mention, support, contradict, negate, bear on, touch on, contain, embody, reflect,

25   identify, state, deal with, concern, comment on, summarize, respond to, relate to, or

26   describe.

27             Q.      "PERSON," in the plural as well as the singular, means any

28   natural person, association, partnership, corporation, joint venture, government

EXHIBIT __19__

PAGE ____210____

-6-

MATTEL'S FIRST SET OF DOCUMENT REQUESTS TO ISAAC LARIAN

1   entity, organization, trust, institution, proprietorship, or any other entity recognized

2   as having an existence under the laws in the United States or any other nation.

3               R.      "BRATZ PRODUCT" means any product, whether two-

4   dimensional or three-dimensional, and whether in tangible, digital, electronic or

5   other form: (i) that is or has ever been distributed, marketed or sold under the name

6   "Bratz" or as part of the "Bratz" line; (ii) that depicts, incorporates, embodies,

7   consists of or REFERS OR RELATES TO BRATZ; and/or (iii) that is or has ever

8   been distributed, marketed or sold in any packaging that includes the name "Bratz"

9   or depicts, incorporates, embodies, consists of or REFERS OR RELATES TO

10  BRATZ.

11              S.      "BRATZ DOLL" means any doll that is or has ever been

12  distributed, marketed, sold or offered for sale under the name "Bratz" or as part of

13  the "Bratz" line.

14              T.      "BRATZ MOVIE" means any motion picture or film that

15  depicts, incorporates, embodies, consists of or REFERS OR RELATES TO BRATZ

16  or any BRATZ DESIGN.

17              U.      "BRATZ TELEVISION SHOW" means any production

18  exhibited on television that depicts, incorporates, embodies, consists of or REFERS

19  OR RELATES TO BRATZ or any BRATZ DESIGN.

20              V.      "DIVA STARZ" means any project, product, doll or DESIGN or

21  any portion thereof ever known by that name, that is now or has ever been known

22  as, or sold or marketed under, the name or term "DIVA STARZ" or that is now or

23  has ever been sold or marketed as part of the "DIVA STARZ" line, including

24  without limitation "Chat Girls," "Brats," and "Chat Brats," and including without

25  limitation all prototypes, models, samples and versions thereof.  As used herein,

26  "products, dolls or DESIGNS or any portion thereof" also includes without

27  limitation any names, fashions, accessories, artwork, packaging or any other works,

28  materials, matters or items included or associated therewith.  Without limiting the

EXHIBIT __19__          -7-
PAGE ____211____          MATTEL'S FIRST SET OF DOCUMENT REQUESTS TO ISAAC LARIAN

1   generality of the foregoing, "DIVA STARZ" includes any such project, product, doll

2   or DESIGN, regardless of what any such project, product, doll or DESIGN has in

3   fact been called, and regardless of what any such project, product, doll or DESIGN

4   is or has been also, previously or subsequently called.  Also without limiting the

5   generality of the foregoing, and contrary to MGA's recent assertions in connection

6   with other Mattel discovery requests, the term "DIVA STARZ" does not require that

7   there be a doll existing at the time of the event, incident or occurrence that is the

8   subject of, or otherwise relevant or responsive to, the Requests herein.

9          W.     The singular form of a noun or pronoun includes within its

10  meaning the plural form of the noun or pronoun so used, and *vice versa*; the use of

11  the masculine form of a pronoun also includes within its meaning the feminine form

12  of the pronoun so used, and *vice versa*; the use of any tense of any verb includes

13  also within its meaning all other tenses of the verb so used, whenever such

14  construction results in a broader request for information; and "and" includes "or"

15  and *vice versa*, whenever such construction results in a broader disclosure of

16  documents or information

17

18  **II.    INSTRUCTIONS**

19

20         A.     YOU are to produce all requested DOCUMENTS in YOUR

21  possession, custody or control.

22         B.     If YOU contend that YOU are not required to produce certain

23  DOCUMENTS called for by these Requests on the grounds of a privilege or

24  protection that YOU are not prepared to waive, identify each such DOCUMENT

25  and provide the following information:

26         1.             the date and type of the DOCUMENT, the author(s) and

27                        all recipients;

28

EXHIBIT __19__

PAGE ____212____

-8-

MATTEL'S FIRST SET OF DOCUMENT REQUESTS TO ISAAC LARIAN

07209/2142932.1

2.      the privilege or protection that YOU claim permits YOU to withhold the DOCUMENT;

3.      the title and subject matter of the DOCUMENT;

4.      any additional facts on which YOU base YOUR claim of privilege or protection; and

5.      the identity of the current custodian of the original of the DOCUMENT.

C.      DOCUMENTS shall be produced in their original file folders, or in lieu thereof, any writing on the file folder from which each such DOCUMENT is taken shall be copied and appended to such DOCUMENT and the PERSON for whom or department, division or office for which the DOCUMENT or the file folder is maintained shall be identified.

D.      The DOCUMENTS should be produced in their complete and unaltered form.  Attachments to DOCUMENTS should not be removed.  The DOCUMENTS should not be cut-up, pasted over, redacted or altered in any way for any reason, including alleged nonrelevance.  If emails are produced that had attachments, the attachments shall be attached when produced.

E.      DOCUMENTS in electronic form shall be produced in that form.

F.      In the event that any DOCUMENT called for by these requests has been destroyed or discarded, that DOCUMENT is to be identified by stating:

1.      the date and type of the DOCUMENT, the author(s) and all recipients;

2.      the DOCUMENT's date, subject matter, number of pages, and attachments or appendices;

3.      the date of destruction or discard, manner of destruction or discard, and reason for destruction or discard;

4.      the PERSONS who were authorized to carry out such destruction or discard;

EXHIBIT __19__
PAGE __213__

-9-
MATTEL'S FIRST SET OF DOCUMENT REQUESTS TO ISAAC LARIAN

5.        the PERSONS who have knowledge of the content, origins, distribution and destruction of the DOCUMENT; and

6.        whether any copies of the document exist and, if so, the name of the custodian of each copy.

## III.   REQUESTS FOR DOCUMENTS AND THINGS

REQUEST FOR PRODUCTION NO. 1:

All DOCUMENTS prepared, drafted, written, transmitted or received (whether in whole or in part) prior to December 31, 2001 RELATING TO BRATZ.

REQUEST FOR PRODUCTION NO. 2:

All DOCUMENTS RELATING TO BRATZ and RELATING TO any time prior to December 31, 2001 (regardless of when such DOCUMENT was prepared, written, transmitted or received, whether in whole or in part).

REQUEST FOR PRODUCTION NO. 3:

All DOCUMENTS RELATING TO the origin(s), conception and creation of BRATZ, including without limitation all DOCUMENTS RELATING TO the timing and the method and manner in which BRATZ first came to YOUR or MGA's attention.

REQUEST FOR PRODUCTION NO. 4:

All DOCUMENTS RELATING TO the modeling, prototyping, rotocasting, sculpting or DESIGN of BRATZ at any time prior to June 30, 2001, including without limitation all DOCUMENTS RELATING to the creation, preparation or modification of any three-dimensional representation of BRATZ.

EXHIBIT __19__
PAGE __214__

-10-
MATTEL'S FIRST SET OF DOCUMENT REQUESTS TO ISAAC LARIAN

REQUEST FOR PRODUCTION NO. 5:

All DOCUMENTS RELATING TO any payment or transfer of anything of value made to or on behalf of BRYANT for any DESIGN that BRYANT assigned or transferred to YOU or MGA prior to October 21, 2000, regardless of when such payment was actually made. -

REQUEST FOR PRODUCTION NO. 6:

All DOCUMENTS that RELATING TO invoices submitted by BRYANT to YOU or MGA prior to January 31, 2001.

REQUEST FOR PRODUCTION NO. 7:

All royalty statements to or for BRYANT.

REQUEST FOR PRODUCTION NO. 8:

All DOCUMENTS RELATING TO BRYANT's participation in the conception, creation, DESIGN, development, sculpting, tooling, production or manufacture of BRATZ.

REQUEST FOR PRODUCTION NO. 9:

All DOCUMENTS RELATING TO COMMUNICATIONS between YOU or MGA and BRYANT and RELATING TO the period prior to December 31, 2001 (regardless of when such document was prepared, written, transmitted or received, whether in whole or in part), including without limitation all diaries, notes, calendars, logs, phone records and letters, that reflect, record or memorialize or otherwise RELATING TO any such COMMUNICATIONS.

07209/2142932.1

1  REQUEST FOR PRODUCTION NO. 10:

2        All DOCUMENTS RELATING TO COMMUNICATIONS between

3  YOU or MGA and BRYANT prior to December 31, 2001, including without

4  limitation all diaries, notes, calendars, logs, phone records and letters, that reflect,

5  record or memorialize or otherwise RELATING TO any such

6  COMMUNICATIONS.

7

8  REQUEST FOR PRODUCTION NO. 11:

9        All COMMUNICATIONS between YOU or MGA and BRYANT prior

10  to December 31, 2001.

11

12  REQUEST FOR PRODUCTION NO. 12:

13        All DOCUMENTS RELATING TO COMMUNICATIONS between

14  YOU or MGA and BRYANT prior to December 31, 2001 (regardless of when such

15  DOCUMENT was prepared, written, transmitted or received, whether in whole or in

16  part), including without limitation all diaries, notes, calendars, logs, phone records

17  and letters, that reflect, record or memorialize or otherwise RELATING TO any

18  such COMMUNICATIONS.

19

20  REQUEST FOR PRODUCTION NO. 13:

21        All COMMUNICATIONS RELATING TO BRATZ between YOU or

22  MGA and any PERSON prior to December 31, 2001.

23

24  REQUEST FOR PRODUCTION NO. 14:

25        All DOCUMENTS RELATING TO COMMUNICATIONS between

26  YOU or MGA and any PERSON and RELATING TO the period prior to December

27  31, 2001 (regardless of when such DOCUMENT was prepared, written, transmitted

28  or received, whether in whole or in part), including without limitation all diaries,

072209/2142932.1

1  notes, calendars, logs, phone records and letters, that reflect, record or memorialize

2  or otherwise RELATING TO any such COMMUNICATIONS.

3

4  REQUEST FOR PRODUCTION NO. 15:

5        All COMMUNICATIONS RELATING TO BRATZ between YOU or

6  MGA and BRYANT.

7

8  REQUEST FOR PRODUCTION NO. 16:

9        All DOCUMENTS RELATING TO BRYANT's employment by

10  MATTEL.

11

12  REQUEST FOR PRODUCTION NO. 17:

13        All DOCUMENTS RELATING TO YOUR or MGA's knowledge of

14  BRYANT's employment by MATTEL.

15

16  REQUEST FOR PRODUCTION NO. 18:

17        All DOCUMENTS RELATING TO DESIGNS that BRYANT

18  produced, prepared, created, authored, conceived of or reduced to practice, whether

19  alone or jointly with others, prior to December 31, 2001.

20

21  REQUEST FOR PRODUCTION NO. 19:

22        All DOCUMENTS RELATING TO DESIGNS produced, prepared,

23  created, authored, conceived of or reduced to practice prior to December 31, 2001

24  by BRYANT, whether alone or jointly with others, in which YOU or MGA have

25  purported at any time to purchase, acquire or own any right, title or interest (whether

26  in whole or in part).

27

28

EXHIBIT __19__
PAGE __217__

-13-

MATTEL'S FIRST SET OF DOCUMENT REQUESTS TO ISAAC LARIAN

1  REQUEST FOR PRODUCTION NO. 20:

2          All DOCUMENTS, including without limitation all

3  COMMUNICATIONS between YOU or MGA and any PERSON, RELATING TO

4  any agreement or contract between BRYANT and MATTEL.

5

6  REQUEST FOR PRODUCTION NO. 21:

7          All DOCUMENTS, including without limitation all

8  COMMUNICATIONS between YOU or MGA and any PERSON, RELATING TO

9  YOUR or MGA's knowledge of any agreement or contract between BRYANT and

10 MATTEL.

11

12 REQUEST FOR PRODUCTION NO. 22:

13         All DOCUMENTS RELATING TO any payment or transfer of

14 anything of value made to or on behalf of BRYANT prior to October 21, 2000 or for

15 work or services performed by BRYANT prior to October 21, 2000 regardless of

16 when such payment was actually made.

17

18 REQUEST FOR PRODUCTION NO. 23:

19         All DOCUMENTS RELATING TO any agreement or contract

20 between YOU or MGA, on the one hand, and BRYANT, on the other hand,

21 including without limitation all drafts thereof, all actual or proposed amendments,

22 modifications and revisions thereto and all COMMUNICATIONS RELATING

23 thereto.

24

25 REQUEST FOR PRODUCTION NO. 24:

26         All doll heads, sculpts, prototypes, models, samples and tangible items

27 that were created, prepared or made, whether in whole or in part, prior to December

28 31, 2001 RELATING TO BRATZ.

07209/2142932.1

EXHIBIT __19__
PAGE __218__

-14-

MATTEL'S FIRST SET OF DOCUMENT REQUESTS TO ISAAC LARIAN

1    REQUEST FOR PRODUCTION NO. 273:

2            All DOCUMENTS RELATING TO the ownership of MGAE de

3    Mexico, S.r.l. de C.V.

4

5    REQUEST FOR PRODUCTION NO. 274:

6            An electronic copy of each DOCUMENT that YOU have produced in

7    this action, or that is responsive to these Requests, that is or was created, prepared,

8    generated, maintained or transmitted in digital form.

9

10   REQUEST FOR PRODUCTION NO. 275:

11           The metadata for each DOCUMENT that YOU have produced in this

12   action, or that is responsive to these Requests, that is or was created, prepared,

13   generated, maintained or transmitted in digital form.

14

15   REQUEST FOR PRODUCTION NO. 276:

16           To the extent not produced in response to any other Request for

17   Production, all DOCUMENTS and tangible things upon which YOU intend to rely

18   in this ACTION.

19

20   DATED:  June 13, 2007            QUINN EMANUEL URQUHART OLIVER &
                                      HEDGES, LLP
21

22

23          By  *Michael T. Zeller*

24             Michael T. Zeller
               Attorneys for Mattel, Inc.
25

26

27

28

EXHIBIT __19__
PAGE __219__

-64-
MATTEL'S FIRST SET OF DOCUMENT REQUESTS TO ISAAC LARIAN

07209/2142932.1