# EXHIBIT 20

1 | Hon. Edward A. Infante (Ret.)
JAMS
2 | Two Embarcadero Center
Suite 1500
3 | San Francisco, California 94111
Telephone:    (415) 774-2611
4 | Facsimile:    (415) 982-5287

5

6

7

8 | UNITED STATES DISTRICT COURT

9 | CENTRAL DISTRICT OF CALIFORNIA

10 | EASTERN DIVISION

11

| | |
|---|---|
| 12 | CARTER BRYANT, an individual, | CASE NO. CV 04-09049 SGL (RNBx)<br>JAMS Reference No. 1100049530 |
| 13 | |
| 14 | Plaintiff, | |
| 15 | v. | Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-2727 |
| 16 | MATTEL, INC., a Delaware corporation, | |
| 17 | Defendant. | **ORDER GRANTING IN PART AND<br>DENYING IN PART MATTEL'S<br>MOTION TO COMPEL PRODUCTION<br>OF DOCUMENTS BY ISAAC LARIAN;<br>DENYING REQUEST FOR<br>SANCTIONS** |
| 18 | | |
| 19 | | |
| 20 | CONSOLIDATED WITH<br>MATTEL, INC. v. BRYANT and<br>MGA ENTERTAINMENT, INC. v. MATTEL,<br>INC. | |
| 21 | | |
| 22 | | |

23

## I. INTRODUCTION

24

25 On October 11, 2007, Mattel, Inc. ("Mattel") submitted a "Motion to Compel Production

26 of Documents by Isaac Larian and for Award of Monetary Sanctions." Specifically, Mattel seeks

27 an order compelling Isaac Larian ("Larian") to produce documents responsive to Mattel's First

28 Set of Requests for Documents and Things, including, without limitation, Request Nos. 1, 2, 13,

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

1

12-31

EXHIBIT 20
PAGE 220

15, 32, 33, 35, 41, 61-76, 79-101, 113-115, 123-125, 139-146, 178, 180, 181, 190-192, 194-199, 207-209, 213, 221-225, 227-228, 269, 272 and 273 and a privilege log identifying all documents withheld based on any claimed privilege. Mattel also seeks an award of sanctions against Larian in the amount of $4,500, which represents a portion of the costs incurred by Mattel in bringing this motion. Larian submitted an opposition on December 5, 2007.[1] Mattel submitted a reply on December 10, 2007. The matter was heard on December 14, 2007. Having considered the motion papers and comments of counsel at the hearing, Mattel's motion to compel is granted in part and denied in part, and the request for sanctions is denied.

## II. BACKGROUND

On June 13, 2007, Mattel propounded its First Set of Requests for Production of Documents and Things to Larian, the CEO and majority owner of MGA. On August 6, 2007, Larian filed his initial responses and objections. The parties met and conferred, and on September 25, 2007, Larian served supplemental responses and objections.

Mattel filed the instant motion on October 11, 2007 seeking further responses to 87 of the 276 Requests. The parties met and conferred further, and Larian ultimately agreed to provide further responses to 55 of the disputed 87 Requests. Specifically, Larian agreed to supplement his responses and to produce documents responsive to Request Nos. 1, 2, 13, 15, 32, 33, 35, 41, 61-76, 82-101, 139-146, 213, 221 and 223, "to include documents, if any, in his personal files that have not previously been produced." MGA's Opposition at pp. 1-2.

The remaining 32 Requests at issue can be grouped into ten categories: (1) personal financial data; (2) communications with Mattel employees; (3) statements to the media; (4) telephone records; (5) storage devices; (6) Carter Bryant's ("Bryant") storage devices; (7) market research concerning products not at issue; (8) Bryant's attorney and niece; (9) the Larian brother's arbitration; and (10) MGA Hong Kong and MGA Mexico.

//

---

[1] Mattel filed an Objection to Larian's Opposition and Response to Mattel's Separate Statement, asserting that the submissions should not be considered because they are untimely and because the Response to Mattel's Separate Statement fails to set forth a complete and verbatim statement of Mattel's position. The Objection is overruled because Mattel has not been prejudiced and because of the court's preference to resolve Mattel's motion on the merits.

EXHIBIT 20
PAGE 221

## II. DISCUSSION

Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed.R.Civ.P. 26(b)(1). Fishing expeditions to discover new claims, however, are not permitted. See Fed.R.Civ.P. 26(b)(1); Rivera v. NIBCO, Inc., 364 F.3d 1057, 1072 (9th Cir. 2004) ("District courts need not condone the use of discovery to engage in 'fishing expeditions.'"); Bernstein v. Travelers Ins. Co., 447 F.Supp.2d 1100, 1102 (N.D. Cal. 2006) (citing Rule 26(b), Advisory Committee's Note to Amendments Effective December 1, 2000) (Congress' changes in the language of Rule 26(c), substituting the words "claim or defense" for the phrase "subject matter involved in the pending action," were intended to prevent discovery that swept far beyond the claims and defenses of the parties and that seemed designed not to fairly litigate the issues presented by the pleadings but to develop new claims or defenses.).

Further, pursuant to Rule 26(b)(2), Fed.R.Civ.P., the court shall limit the frequency or extent of use of the discovery methods if the court determines that "(i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P. 26(b)(2).

The 55 Requests Resolved During Meet and Confer Session

During the meet and confer session held after the instant motion was filed, Larian agreed to produce documents responsive to 55 requests. In his Opposition brief, Larian states that the 55 requests are no longer in dispute.

Nevertheless, a court order compelling production is warranted for two reasons. First, Larian has not yet produced documents responsive to the 55 requests or provided a date by which

3

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

1    he will do so. Second, Larian's agreement to produce responsive documents is apparently limited

2    to documents from his so-called "personal files." See Opposition at 2:2-3.

3        Mattel's counsel "never agreed that Larian could limit his response to the above requests

4    to documents in his 'personal files' and Larian's counsel did not state that Larian would limit his

5    response to documents in Larian's 'personal files.'" Supp. Decl. of Scott B. Kidman.

6    Furthermore, the limitation to "personal files" suggested by Larian is contrary to Rule 34,

7    Fed.R.Civ.P, which imposes a duty to produce responsive documents within the responding

8    parties' "possession, custody or control." The limitation is also unworkable because, as Mattel

9    points out, it "would create a situation by which responsive and highly relevant documents might

10   never be produced because MGA, on the one hand, deems [a] document to belong to Larian, and

11   Larian, on the other hand, deems [a] document not to be part of his 'personal files.'" Reply at p.6.

12   Market Research for Products Not at Issue:  Request Nos. 79-81

13       In Request No. 79, Mattel seeks all documents relating to any focus groups relating to

14   Bratz and/or Angel, including without limitation all videotapes, summaries, notes and reports. In

15   his supplemental response, Larian agrees to produce the following documents, subject to his

16   general objections:

> Larian will produce all documents within his possession, custody, or control that
> relate to focus groups for "MGA contested products" and "Mattel contested
> products," as those terms are defined in Mattel's First Requests for Production
> regarding Claims of Unfair Competition, if any, and that have not already been
> produced, that he discovers in the course of his reasonable search and diligent
> inquiry, and to which no privilege or other protection applies, including without
> limitation, the attorney-client privilege or attorney's work product doctrine.

22   Mattel's Consolidated Separate Statement at pp. 20-21.

23       In Request No. 80, Mattel seeks all documents relating to any services or work performed

24   by L.A. Focus between January 1, 1999 and December 31, 2001, including without limitation, all

25   videotapes, summaries, notes and reports associated therewith. In his supplemental response,

26   Larian agrees to produce documents relating or referring to Bratz or Angel that are responsive to

27   the request and to which no privilege or other protection applies.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

4


EXHIBIT 20
PAGE 223

1    In Request No. 81, Mattel seeks all documents relating to Alaska Momma.  In his

2    supplemental response, Larian agrees to produce all documents relating or referring to Bratz,

3    Angel or Bryant that are responsive to the request and to which no privilege or other protection

4    applies.

5    Mattel contends that the requests are as narrowly tailored as possible to capture relevant

6    information.  More specifically, Mattel contends that Request No. 79 seeks documents that bear

7    directly on the timing of the development of Bratz, as well as MGA's unfair competition claims

8    and Mattel's defense thereto.  Mattel contends that the requested documents may demonstrate that

9    MGA is guilty of copying Mattel's Barbie and My Scene products.

    Larian contends that Request Nos. 79-81 are overbroad and unduly burdensome.  As an

10   example, Larian points to Request No. 80, which requests all documents relating to any services

11   or work performed by L.A. Focus, regardless of whether that work has any relation to the claims

12   and defenses in the action or any of the products at issue.  Larian similarly contends that Request

13   Nos. 79 and 81 are unbounded by subject matter or time, and are untethered to any claim or

14   defense in this case.

15   Mattel's motion to compel Larian to produce all documents responsive to Request No. 79

16   is granted.  The request is reasonably limited in subject matter to Bratz and Angel.  The requested

17   documents are relevant to several issues in the case, including the origin, conception and creation

18   of Bratz.  The requested documents are also relevant to the unfair competition claims.  Larian's

19   supplemental response to Request No. 79 is unduly restrictive.  Among other things, the

20   definitions of "contested MGA products" encompass only those products that provide a basis for

21   any claim by MGA against Mattel, and not claims by Mattel against MGA.

22   Mattel's motion to compel Larian to produce all documents responsive to Request Nos.

23   80-81 is denied.  These requests, as drafted, are clearly overbroad because they have no

24   reasonable limitations on subject matter or time.  In particular, the requests are directed to L.A.

25   Focus and Alaska Momma without regard to whether the services or work the companies

26   provided has any relation to any product at issue.

27   Larian's supplemental responses to Request Nos. 80 and 81 are reasonably limited to

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

5


EXHIBIT 20
PAGE 224

1   documents related to the products at issue: Bratz and Angel. In Mattel's view, Larian's

2   supplemental response is too narrow and "may result in the exclusion of highly relevant

3   documents because the project, concept or design that is the subject of the focus group is deemed

4   not to relate to something then known as Bratz or Angel." However, Larian acknowledges that

5   these types of hypothetical documents would still fall within the narrower scope of production

6   proposed in his supplemental response.

7   　　　Mattel also contends that it is entitled to all of the requested documents called for by

8   Request No. 80 because they are relevant to credibility and bias, particularly if the documents

9   show that work relating to Bratz or Angel deviate from standard procedures that MGA and L.A.

10   Focus used. It is, however, not apparent how deviations from standard procedures would impact

11   credibility or bias.

12   　　　As to Request No. 81, Mattel contends that the documents showing the relationship

13   between Larian or MGA and Alaska Momma are relevant, even if they do not themselves

14   specifically relate to Bratz, Angel or Bryant. Mattel contends that communications from Larian

15   or MGA asking Alaska Momma to look for fashion doll opportunities around the time Bryant

16   claims to have pitched Bratz to Alaska Momma would be highly relevant in impeaching MGA's

17   and Bryant's stories about how and when they came to be introduced. Mattel also contends that

18   documents showing other dealings between Larian or MGA and Alaska Momma are relevant to

19   the issues of bias and credibility. Mattel's supposition about the types of documents that might

20   exist does not justify the type of far-reaching request it has propounded. Request No. 81 is also

21   not limited by either subject matter or time.

22   　　　Accordingly, Larian shall produce documents responsive to Request Nos. 80 and 81 in

23   accordance with his supplemental responses.

24   Bryant's Attorney and Niece: Request Nos. 113-115

25   　　　In Request No. 113, Mattel seeks all communications between Larian or MGA and Anne

26   Wang, a lawyer who represented Bryant in his contract negotiations with MGA. In Request No.

27   114, Mattel seeks all documents, including without limitation all communications, between

28



EXHIBIT __20__
PAGE ___225___

1   Larian or MGA and Anne Wang.  In Request No. 115, Mattel seeks documents relating to Brooke

2   Gilbert, Bryant's niece.  In his supplemental responses, Larian agrees to produce documents

3   relating to Bratz, Angel or Bryant that are responsive to the requests and to which no privilege or

4   other protection applies.  Thus, the only issue is whether Larian should be required to produce

5   responsive documents that do not relate to Bratz, Angel or Bryant.

6        Mattel contends that Request Nos. 113-114 seek documents that are relevant to the origin

7   and conception of Bratz and the timing thereof.  Mattel also contends that the documents may

8   disclose relevant information regarding Mattel's claims for breach of contract and inducing

9   breach of contract, including information regarding Bryant's or MGA's knowledge of Bryant's

10   contractual obligations with Mattel.  Mattel also contends that Larian has failed to carry his

    burden of demonstrating that the requests are overly burdensome.

11        Mattel further contends that Larian's supplemental responses to Request Nos. 113 and 114

12   are inadequate because the limitations on scope may eliminate otherwise relevant documents that

13   do not specifically refer to Bratz, Angel or Bryant.  For example, Mattel contends that

14   communications with or about Bryant's lawyer that do not specifically relate to Bratz, Angel or

15   Bryant may be relevant to the issues of credibility and bias.

16        Mattel contends that Request No. 115 seeks documents that are relevant to determine

17   whether evidence on Bryant's computer was destroyed by the "Evidence Eliminator" software

18   that had been installed and run on the hard drive.  Bryant claims to have given his computer to his

19   niece.  Mattel also contends that the requested documents are relevant to the issues of credibility

20   and bias.  Further, Mattel contends that Larian's supplemental response to Request No. 115 is

21   inadequate, because evidence of any communication between Larian and his niece, regardless of

22   subject matter, is significant.

23        Larian contends that Request Nos. 113-115 are overbroad and unduly burdensome

24   because they lack any subject matter or time constraints.  Further, Larian contends that the

25   requests constitute an improper fishing expedition and necessarily sweep in documents that are

    not relevant to any claim or defense.

26   //

27

28   Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

EXHIBIT 20
PAGE 226

1    Mattel's motion to compel documents responsive to Request Nos. 113-115 is denied. The
2    requests are overbroad because they are not focused on relevant subject matter and are untethered
3    to any claim or defense. Although Mattel asserts that responsive documents unrelated to Bratz,
4    Angel or Bryant might be relevant to the issues of credibility and bias, that speculative possibility
5    is too remote to justify the breadth of Mattel's requests.

6    Larian's supplemental responses are sufficient to provide Mattel with relevant and
7    responsive documents. Larian shall produce documents responsive to Request Nos. 113-115 in
8    accordance with his supplemental responses.

9    <u>The Larian Brothers' "Arbitrations and Suits": Request Nos. 123-125</u>
10    In Request No. 123, Mattel seeks all documents relating to any and all arbitrations and
11    suits between Larian and his brother, Farhad Larian. In Request No. 124, Mattel seeks all
12    documents filed, submitted or served in the suit and/or arbitration proceedings brought by Farhad
13    Larian against Larian, including without limitation all declarations, affidavits, transcripts, video
14    and/or audio recordings and sworn testimony given by any person in such suit or arbitration
15    proceedings. In Request No. 125, Mattel seeks all documents relating to any and all settlements,
16    resolutions, or compromises of any suit and/or arbitration proceedings between Larian and Farhad
17    Larian. In his supplemental responses, Larian agrees to produce all documents referring or
18    relating to Bratz that are responsive to the requests and to which no privilege or other protection
19    applies.

20    Mattel contends that the court has already ruled that the arbitration proceedings between
21    Larian and his brother are relevant because they involve, among other matters, the conception and
22    creation date for Bratz. Mattel contends that Larian's supplemental responses improperly limit
23    the requests to the exclusion of potentially relevant documents. For example, Mattel contends
24    that documents that relate to the business, activities and plans of MGA in early 2000 are relevant
25    to the timing of the development of Bratz, whether or not they specifically refer to Bratz.
26    Mattel also contends that the requested documents are relevant to the value of the Bratz brand and
27    the net worths of Larian and MGA, as well as Mattel's claims for damages, including, for

28


EXHIBIT 20
PAGE _____ 227

example, profits from the sale and licensing of Bratz and other information that would impeach Larian's testimony that he has not made any profits from Bratz. Further, Mattel contends that the requested documents may lead to evidence of the assessments or valuations of the net worth or value of MGA or Larian, regardless of any reference to Bratz specifically. Mattel also contends that settlement documents may contain information that bears on the merit of Farhad Larian's claims and the value of Bratz. Mattel also claims that the requested documents are relevant to motive, intent, bias and credibility.

Larian contends the instant requests are overbroad and unduly burdensome. Further, Larian contends that the relationship of the requested documents to any of the claims or defenses in the present action is questionable, and the existence of such documents is conjectural. Moreover, Larian contends that many of the categories of documents of interest to Mattel are already the subject of other requests. Larian also contends that Request Nos. 123-125 impose an undue burden because of the protective orders in place that strictly limit the use of any documents from an arbitration and suit between Larian and his brother. Larian represents that he is currently working with Mattel and his brother in an attempt to achieve suitable modifications to the orders that are agreeable to all parties.

Mattel's motion to compel documents responsive to Request Nos. 123-125 as drafted is denied. The requests are clearly overbroad in calling for all documents from the arbitrations and suits between Larian and his brother, without any subject matter limitations. Furthermore, these requests are unduly burdensome to the extent they require production of documents that do not refer or relate to Bratz. Such documents have marginal relevance, at best, to the claims and defenses in the case.

Larian's supplemental responses to Request Nos. 123 -125 are sufficient. Larian's agreement to produce documents that refer or relate to Bratz is a reasonable compromise that will enable Mattel to obtain documents relevant to the claims and defenses in the case, including many of the categories of documents of interest to Mattel. For example, under Larian's proposed limitation, documents that relate to the business, activities and plans of MGA in 2000 that also refer or relate to Bratz must be produced. Documents relating to the value of the Bratz brand are

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

9


EXHIBIT 20
PAGE 228

also within the scope of Larian's proposed limitation and would have to be produced.  Documents relating to the net worth of Larian or MGA that refer or relate to Bratz would also have to be produced.  Further, Larian's proposed limitation does not necessarily foreclose discovery regarding the appraisal of MGA prepared by Mr. Dutcher.  In particular, documents relating to MGA's liabilities, debt, intangible assets, inventory, loans, growth rate projection, and revenue projections must be produced if such documents refer or relate to Bratz.  Accordingly, Larian shall produce documents responsive to Request Nos. 123-125 in accordance with his supplemental responses.

Telephone Records:  Request Nos. 178-181

 In Request No. 178, Mattel seeks all documents relating to, including without limitation phone records for, telephone calls by or to Larian or anyone on Larian's behalf for the time period from January 1, 1998 through January 1, 2001.  Larian objects to this request.

 In Request No. 179, Mattel seeks all documents relating to, including without limitation phone records for, telephone calls by or to Larian or anyone on Larian's behalf for the time period from January 1, 1998 through January 1, 2001 relating to Bratz and/or Angel.  In his supplemental responses, Larian agrees to produce documents responsive to Request No. 179.  In response to this motion, however, Larian contends that he should be permitted to produce documents responsive to Request No. 179 in redacted form as discussed more fully below.

 In Request No. 180, Mattel seeks all documents relating to, including without limitation phone records for, telephone calls by or to Larian or anyone on Larian's behalf for the time period from April 1, 2004 through June 1, 2004.  Larian objects to this request.

 In Request No. 181, Mattel seeks all documents relating to, including without limitation phone records for, telephone calls relating to Bryant by or to Larian or anyone on Larian's behalf at any time.  In his supplemental response, Larian agrees to produce all documents pertaining to communications made prior to January 1, 2001 that are responsive to the request and to which no privilege or other protection applies.

//

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

10

EXHIBIT 20
PAGE 229

Mattel contends that Request No. 178 seeks documents relevant to show Larian's communications with Bryant and other Mattel employees while such employees may still have been employed by Mattel and before Larian claims to have known about Bratz. Similarly, Mattel contends that Request No. 180 seeks documents relevant to Mattel's allegation that MGA, and Larian in particular, were recruiting employees of Mattel's Mexican subsidiary and enticing them to steal Mattel trade secrets.

Further, Mattel contends that the requested documents regarding telephone records are relevant to (a) Mattel's claims regarding ownership of Bratz to the extent they show communications with Carter Bryant; (b) Mattel's claims for theft of trade secrets to the extent they show communications with current and former Mattel employees, including Machado, Vargas, Trueba, Brawer, and Brisbois; (c) Mattel's claims regarding allegedly false statements Larian made to retailers; (d) MGA's counterclaims; and (e) Mattel's defenses. With respect to burden, Mattel contends that it would be more burdensome to attempt to produce the requested records in redacted form, and further, that the protective order in place is sufficient to protect Larian's privacy concerns.

Larian contends that the requests regarding telephone records are overbroad, completely unbounded as to subject matter, and necessarily sweep in private information that is completely irrelevant to any of the claims or defenses in the case. Larian also points out that the court previously considered similar requests served on Bryant and allowed production of redacted copies of telephone records as long as Bryant provided a signed verification that none of his redactions related to Bratz, MGA or any other project he worked on for MGA. Specifically, Bryant was permitted to produce redacted phone records as long as he provided a "signed verification that none of the telephone records that were redacted relate or refer in any way to MGA, Bratz, or any other project that Bryant worked on, with, for or on behalf of MGA." Kennedy Decl., Ex. 1 (January 25, 2007 Order Granting Mattel's Motion to Compel Production of Documents by Bryant). Larian contends that he should be permitted to redact responsive documents consistent with the court's prior order. During the meet and confer, Larian offered to provide redacted records and a signed verification that none of the redacted information was

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

11


EXHIBIT 20
PAGE 230

relevant to the case, but Mattel did not respond to the offer.

Mattel's motion to compel documents responsive to Request Nos. 178 (all documents relating to phone records by or to Larian for January 1, 1998 – January 1, 2001) is denied. The request is overbroad because it lacks any subject matter limitation, and thus necessarily sweeps in private information that is completely irrelevant to the case. Larian should not be subjected to such an intrusion into his private and business affairs when Mattel has made no attempt to tailor the request to the communications, claims, and defenses identified above.

In contrast to Request No. 178, Request No. 179 is reasonably tailored to phone records for a particular time frame (January 1, 1998 to January 1, 2001), and to particular subject matters (Bratz and/or Angel). Accordingly, Larian shall abide by his agreement to comply with Request No. 179, as stated in his supplemental response. Larian's proposal to produce responsive documents in redacted form is appropriate to address his privacy concerns. More specifically, Larian may produce documents responsive to Request No. 179 in redacted form as long as Larian provides a signed verification that none of the redacted material refers or relates in any way to MGA, Bratz, or any other proposed or actual project worked on, with, for or on behalf of MGA, or that are otherwise relevant to the case.

Mattel's motion to compel documents responsive to Request No. 180 (documents relating to telephone calls by or to Larian from April 1, 2004 – June 1, 2004) is granted. Request No. 180 is reasonably tailored to a two month period during which MGA and Larian allegedly recruited employees out of Mattel's Mexican subsidiary and enticed them to steal Mattel trade secrets. See Mattel's Second Amended Answer and Counterclaims, ¶¶37-54. Larian may produce documents responsive to Request No. 180 in redacted form as specified above with respect to Request No. 179.

Request No. 181 (documents relating to telephone calls relating to Bryant by or to Larian) is overbroad as written because it has no time limits. In his supplemental response, Larian agrees to produce communications prior to January 1, 2001 that are responsive to the request. Larian's proposed limitation is a reasonable compromise that will provide Mattel with relevant documents without imposing an undue burden. Accordingly, Larian shall produce documents responsive to

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

12

EXHIBIT 20
PAGE 231

1   Request No. 181 consistent with his supplemental response, and may produce such documents in

2   redacted form as specified above with respect to Request No. 179.

3

4   Statements to the Media: Request Nos. 190-192, 194-197 and 199

5          In Request Nos. 190-192, 194-197 and 199, Mattel seeks communications between Larian

6   and members of the press or financial institutions relating to Bratz, Bryant, Mattel or this action.

7   Mattel contends that the requests are sufficiently narrowly tailored to seek information that goes

8   to the issues in the lawsuit.  More specifically, Mattel contends that the request are relevant to

9   Mattel's allegation that MGA and Larian repeatedly issued false and misleading press releases

10   regarding Bratz's sales, Bratz's market share, Bratz's position relative to Mattel's Barbie

11   products, sales of Mattel's Barbie products, and the market share of Mattel's Barbie products.

12   Further, Mattel contends that statements to lenders or investors relating to Bratz or Bryant may

13   also contain admissions regarding the origin and conception of Bratz and statements relevant to

     damages.

14          Larian contends that the requests are overbroad and unduly burdensome, particularly

15   because several of the requests seek publicly available information.  Further, Larian points out

16   that the court has already considered and rejected as overbroad a nearly identical request served

17   on MGA that called for all documents relating to any communications by MGA with any news

18   organization regarding the contested MGA products or the contested Mattel products.  Larian

19   contends that the same reasoning applies to the instant requests.

20          Mattel's motion to compel documents responsive to Request Nos. 190-192, 194-197 and

21   199 is denied.  Although several of the requests encompass potentially relevant documents, the

22   requests are overbroad and encompass documents that have little to no relevance to the claims and

23   defenses in the case.  Not one of the requests is limited to relevant subject matters, such as Bratz's

24   sales, Bratz's market share, Bratz's position relative to Mattel's Barbie products, sales of Mattel's

25   Barbie products, the market share of Mattel's Barbie products, the origin and conception of Bratz,

26   or damages.

27   //

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                                13


EXHIBIT  20
PAGE            232

Furthermore, many of these overbroad requests seek publicly available information that is readily accessible to Mattel for which Larian should not be burdened. To the extent the requested documents and information are not publicly available, such documents and information are marginally, if at all, relevant because they are not likely to have caused Mattel compensable harm. In either case, the burden and expense of searching for and producing responsive documents are unjustified.

Communications With Mattel Employees: Request No. 198

In Request No. 198, Mattel seeks all communications between Larian and any individual while the individual was employed by Mattel. Mattel contends that this request is directly relevant to Mattel's claims of trade secret theft, and that the relevancy outweighs any purported burden of production.

Larian contends that the request is overbroad and unduly burdensome because it is unrestricted as to time and subject matter. Larian also points out that the court has previously found a similar request overbroad. Larian further contends that employees in the toy industry are likely to maintain contacts with other toy manufacturers, and that a large corporation such as Mattel is likely to have a high number of employees communicating with MGA or its officers, which makes the request more unduly burdensome and unreasonable than it appears on its face.

Unlike other requests regarding communications, Request No. 198 is reasonably tailored to the specific and numerous allegations in the case regarding alleged trade secret theft. Although the request is not limited by subject matter, it is limited in other respects to seek relevant documents without imposing an undue burden. The request is limited to communications between Larian (and not MGA or persons acting on his behalf) and individuals employed at Mattel. The request is also limited to only those communications that took place while the individuals were employed at Mattel.

Nevertheless, an additional temporal limit is appropriate to tailor the request to Mattel's allegations of trade secret theft. The alleged trade secret theft began with Bryant's conduct in 1999 and continued to 2005. Accordingly, Larian shall produce documents responsive to Request

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

14

EXHIBIT 20
PAGE 233

1  No. 198 that are limited to the time frame 1999 to 2005.

2

3  Personal Financial Data: Request Nos. 207-209 and 269

4      In Request No. 207, Mattel seeks documents sufficient to identify each of Larian's banks

5  or financial institutions and other banking relationships since January 1, 1999. In Request No.

6  208, Mattel seeks documents sufficient to establish Larian's gross income and sources for such

7  income for each year from 1999 to the present. In Request No. 209, Mattel seeks Larian's federal

8  and state tax returns for each year from 1999 to the present. In Request No. 269, Mattel seeks

9  documents sufficient to show or calculate Larian's net worth on a yearly basis for each year from

10 1999 to the present.

11      Mattel contends that Request No. 207 seeks information reasonably calculated to lead to

12 information showing the timing of payments to Bryant and others, which in turn is relevant to the

13 timing of the development of Bratz and issues of credibility. Mattel contends that Request Nos.

14 208-209 and 269 seek non-privileged information that is directly relevant to Larian's financial

15 condition, which in turn is relevant to damages. Further, Mattel contends that it is entitled to

16 information regarding the sources of Larian's income to determine whether they are attributable

17 to the alleged misconduct and thus subject to disgorgement.

18      Larian contends that the requested personal financial information is not relevant to the

19 claims or defenses at issue. More specifically, Larian contends that neither the names of his

20 banks nor his gross income have any bearing upon either compensatory or punitive damages or

21 Mattel's claim for disgorgement of profits. Larian further contends that there is no support for

22 Mattel's supposition that Larian has siphoned off MGA assets for his own personal benefit.

23      Larian also contends that all three of the requests overlap substantially with requests

24 Mattel previously propounded upon MGA, and that Mattel has failed to justify the duplication or

25 burden posed by these requests to him. Further, Larian contends that the court has previously

26 found that Mattel was not entitled to obtain tax returns from Bryant, and that Mattel has offered

27 no reason why the same result should not apply here.

28      Mattel's motion to compel responses to Request Nos. 207-208 and 269 is granted. The

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

15

EXHIBIT 20
PAGE 234

requests are reasonably calculated to lead to the discovery of admissible evidence relevant to several issues in the case. For example, the requested information is likely to lead to information regarding payments from Larian to Bryant, which is relevant to, among other things, the timing of the creation of Bratz. The requested information is also likely to show Larian's income and net worth, which are relevant to damages. Further, Larian has failed to establish that the requests are unduly burdensome. Although Mattel has sought and obtained broad discovery of financial information from MGA, Mattel is also entitled to seek financial information directly from Larian.

Mattel's motion is denied as to Request No. 209, provided that Larian complies with Request Nos. 207, 208 and 269. In light of the discovery of financial information ordered herein and other requests propounded to MGA, Mattel has not shown a compelling need for Larian's tax returns.

Storage Devices: Request Nos. 222 and 224

In Request Nos. 222 and 224, Mattel seeks digital storage devices and documents relating to digital storage devices used by Larian to create, prepare, generate, copy, transmit, receive, delete or modify digital information relating to Bratz, Angel, or Bryant. Mattel contends that a request for documents under Rule 34, Fed.R.Civ.P., operates as a request for documents stored in electronic form. Mattel also contends that Rule 34 permits a party to obtain and test computer hard drives and other storage devices.

Larian contends that the requests are overbroad, unduly burdensome, duplicative, and ignore his privilege and privacy interests. Larian also objects to an inspection of his actual hard drives or other storage devices based upon the Committee Note to Rule 34, Fed.R.Civ.P., which states that the amendment of Rule 34 relating to "electronically stored information is not meant to create a routine right of direct access to a party's electronic information system." See Fed.R.Civ.P. 34(a)(1), 2006 Adv. Comm. Notes. Larian contends that there is no justification for an inspection of his electronic devices because there is no allegation that he improperly deleted documents.

Mattel's motion to compel documents responsive to Request Nos. 222 and 224 is denied.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

16

EXHIBIT 20
PAGE 235

With respect to Request No. 222, Larian correctly notes that Rule 34 was not intended to authorize the routine production of a party's electronic devices. Mattel attempts to justify Request No. 222 by pointing to various instances of alleged destruction of evidence. See Mattel's Consolidated Separate Statement at pp. 203-204 (purported destruction of Larian's computer laptops; "wiping" information from the hard drives of Larian's computer laptops every six months; redacting "Barbie Collectibles" from a faxed version of Bryant's Bratz agreement; and destructive testing of Bryant's original Bratz drawings). However, Mattel fails to explain how these alleged instances of evidence destruction justify Request No. 222, other than to assert that it has a right to inspect Larian's storage devices to ensure that relevant information has not been deleted or permanently destroyed. Mattel's stated purpose suggests instead that Mattel is launching a fishing expedition in pursuit of new claims, which is not permitted by the Federal Rules of Civil Procedure. See e.g. Rivera v. NIBCO, Inc., supra. Furthermore, Mattel's stated purpose for inspecting Larian's storage devices does not justify the breadth of Request No. 222. Among other things, Request No. 222 encompasses every storage device that Larian has used to copy digital information relating to Bratz. Mattel does not need every CD and DVD containing copies of Bratz-related video and audio content, but that is what the request seeks.

Request No. 222 is also duplicative because it requests information that is sought in numerous other requests served on Larian as well as MGA. Mattel has served hundreds of requests for documents and communications relating to Bratz, Angel, and Bryant. To comply with the requests, Larian was required to search for documents in both hard-copy and electronic form. Under the circumstances, it is unnecessary for Larian to also produce the requested storage devices.

Documents responsive to Request No. 224 are minimally relevant (if at all) to the claims and defenses in the case, and therefore do not justify the burden of production on Larian.

Bryant's Storage Devices: Request Nos. 225, 227 and 228

In Request Nos. 225, 227 and 228, Mattel seeks digital storage devices and documents relating to digital storage devices used by Bryant to create, prepare, generate, copy, transmit,

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

17

EXHIBIT 20
PAGE 236

1   receive, delete or modify digital information relating to Bratz, Angel, or MGA.

2       Larian contends that the requests are improperly directed to him because he does not have

3   personal possession of Bryant's hard drive or storage devices, or other information about those

4   devices. Mattel's Consolidated Separate Statement at p. 206. Larian also contends that the

5   requests are overbroad and unduly burdensome for the reasons discussed above in connection

6   with Request Nos. 222 and 224.

7       Mattel's motion to compel documents responsive to Request Nos. 225, 227 and 228 is

8   denied for the reasons already discussed in connection with Request Nos. 222 and 224.

9   <u>MGA Hong Kong and MGA Mexico: Request Nos. 272 and 273</u>

10      In Request Nos. 272 and 273, Mattel seeks documents relating to the ownership of MGA

11  Entertainment HK Ltd. ("MGA Hong Kong") and MGAE de Mexico S.r.l. de C.V. ("MGA

12  Mexico"), both of which are named defendants. In his supplemental responses, Larian agrees to

13  produce documents sufficient to show the ownership of these entities.

14      Mattel contends that the requests seek information relevant to refute MGA Mexico's

15  personal jurisdiction defense, and which bear on whether the acts of Larian and others are

16  attributable to the entities. Mattel also contends that Larian's (or MGA's ) ownership interest in

17  these companies is relevant to net worth. Mattel contends that Larian's supplemental response is

18  inadequate because it would allow Larian to withhold contradictory information and conceal the

19  true ownership of the business entities. Furthermore, Mattel contends that it is entitled to know

20  the ownership of these entities at times when different allegedly wrongful acts took place and to

21  determine if the ownership structure changed as a means of concealing assets or concealing the

22  payments of commercial bribes.

23      Larian contends that these requests should not be made to him, but to the entities

24  themselves or to MGA. Further, Larian contends that the requests are duplicative of a request

25  Mattel served on MGA Mexico, another request served on MGA Hong Kong, and another request

26  served on MGA. Moreover, Larian contends that the requests are overbroad and unduly

27  burdensome, and that at most, he should only have to produce a list of owners.

28  

EXHIBIT __20__
PAGE ____237____

1    Mattel contends that Larian cannot avoid his duty to respond to these requests simply by

2    saying that the information is obtainable from another source.  Further, Mattel contends that

3    Larian has failed to establish that the requests are unduly burdensome.

4    Mattel's motion to compel documents responsive to Request Nos. 272-273 is denied

5    pursuant to Rule 26(b)(2), Fed.R.Civ.P., because the requested information is clearly obtainable

6    from another source that is more convenient, less burdensome, or less expensive, namely MGA

7    Mexico and MGA Hong Kong.  The requests are also overbroad and unduly burdensome.

### IV. CONCLUSION

8    For the reasons set forth above, it is hereby ordered as follows:

9    1.    At meet and confer sessions held after the filing of this motion, Larian agreed to

10   produce documents in response to Request Nos. 1, 2, 13, 15, 32, 33, 35, 41, 61-76, 82-101, 139-

11   146, 213, 221 and 223.  Accordingly, Larian shall produce, without limitation, all non-privileged

12   documents that are responsive to these Requests.

13   2.    With respect to the remaining requests that are at issue in this motion, Larian shall:

14        A.    produce, without limitation, all non-privileged documents that are

15   responsive to Request Nos. 79, 180, 198 (for the time period 1999-2005), 207, 208 and

16   269; and

17        B.    produce, in accordance with his supplemental responses, non-privileged

18   documents that are responsive to Request Nos. 80, 81, 113-115, 123-125, 179, 181 and

19   209.

20        C.    Larian may produce documents responsive to Request Nos. 179, 180 and

21   181 in redacted form as provided herein.

22        D.    Mattel's motion is denied as to Request No. 178, 190-192, 194-197, 199,

23   209, 222, 224, 225, 227, 228, 272 and 273.

24   3.    Larian shall produce all non-privileged documents that are required by this Order

25   that are in his possession, custody or control and that have not already been produced no later

26   than January 11, 2008.

27   4.    Larian shall produce a privilege log no later than January 15, 2008.

28
Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

19

EXHIBIT __20__
PAGE ____238__

1        5.     Mattel's request for sanctions is denied.

2        Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

3  Master, Mattel shall file this Order with the Clerk of Court forthwith.

4

5  Dated: December 31, 2007

                                     HON. EDWARD A. INFANTE (Ret.)

6                                      Discovery Master

EXHIBIT ___20___
PAGE ___239___

# EXHIBIT 21

AO 88 (Rev. 11/94) Subpoena in a Civil Case

Issued by the

# UNITED STATES DISTRICT COURT

<u>Central</u> DISTRICT OF <u>California</u>

Mattel, Inc., a Delaware corporation,

Plaintiff,

**SUBPOENA IN A CIVIL CASE**

v.

Carter Bryant, an individual; and DOES
1 through 10, inclusive,

Case Number:[1] CV 04-3431 NM (RNBx)

Defendants.

TO: MGA Entertainment, Inc.
    16730 Schoenborn St.
    North Hills, CA 91343-6122

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  |  |
|  | DATE AND TIME |
|  |  |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Exhibit A annexed hereto

| PLACE | DATE AND TIME |
|---|---|
| Quinn Emanuel Urquhart Oliver & Hedges, LLP<br>865 S. Figueroa St., 10th Floor<br>Los Angeles, CA 90017 | Friday, June 25, 2004<br>10:00 a.m. |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| John B. Quinn, Attorneys for Plaintiff Mattel | June 15, 2004 |

ISSUING OFFICER'S NAME ADDRESS AND TELEPHONE NUMBER
John B. Quinn, Quinn Emanuel Urquhart Oliver & Hedges, LLP, 865 S. Figueroa
St., 10th Floor, Los Angeles, CA 90017, (213) 443-3000

(See Rule 45, Federal Rules of Civil Procedure, parts C & D on reverse)

[1] If action is pending in district other than district of issuance, state district under case number.

**EXHIBIT** 21 **PAGE** 210       AO-88

| ATTORNEY OR PARTY WITHOUT ATTORNEY   (Name and Address) | TELEPHONE NUMBER | FOR COURT USE ONLY |
|---|---|---|
| QUINN EMANUEL URQUHART OLIVER<br>865 S FIGUEROA ST<br>10TH FL<br>LOS ANGELES CA 90017<br>ATTORNEY FOR | 624-7707<br><br>Ref. No. or File No.<br>7209 | |

Insert name of court and name of judicial district and branch if any.

U.S DISTRICT COURT 312 NORTH SPRING STREET
CENTRAL DISTRICT LOS ANGELES, CA 90012

SHORT TITLE OF CASE:

MATTEL v. BRYANT

| INVOICE NO. | DATE: | TIME: | DEP./DIV. | CASE NUMBER: |
|---|---|---|---|---|
| 136711 | 06/25/04 | 10:00AM | | CV 04-3431 NM |

PROOF OF SERVICE

1.   I served SUBPOENA IN A CIVIL CASE by personally delivering a copy
to the person served as follows:

    a.   Person Served:   MGA ENTERTAINMENT, INC.
                          C/O RICHARD DANIELS
                          Authorized to Accept
    b.   Address:  16730 SHOEBORN ST
                 NORTH HILLS CA 91343

    c.   On:  06/15/04         d.   At:  4:02PM

    e.   Witness fees: (2) were not demanded or paid.

    f.   Fee for service $        .00

2.   I received this Subpoena for service on 06/15/04.

3.   The following copies were delivered to the Person Served:

    SUBPOENA IN A CIVIL CASE

4.   Person Serving:  ISRAEL ADEYEMO

APEX ATTORNEY SERVICES
1055 WEST SEVENTH STREET
LOS ANGELES, CA 90017
213-488-1500 FAX 213-488-1550

    d.   Registered California process server
    (1) [ ⋉ ] Employee or [    ] Independent Contractor
    (2) Registration No. 3104
    (3) County: LOS ANGELES
    (4) Expiration: 05/24/05

I declare under penalty of perjury, under the laws of the of California, and of the United States of America that the foregoing is true and correct.

DATE: 06/17/04                          >
                               SIGNATURE

EXHIBIT _21_ PAGE _27_

**<u>Exhibit A</u>**

<u>Definitions</u>

1.      "YOU" or "YOUR" means MGA Entertainment, Inc., any of its current or former employees, officers, directors, agents, attorneys, representatives, parents, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control.

2.      "BRYANT" means Carter Bryant and any of his current or former agents, representatives, employees, attorneys, predecessors-in-interest and successors-in-interest, and any other PERSON acting on his behalf, pursuant to his authority or subject to his control.

3.      "BRATZ" means any doll or any portion thereof that is now or has ever been known as, or sold or marketed under, the name "Bratz" (regardless of what such doll is or has been also or previously called) or that is now or has ever been sold or marketed as part of the "Bratz" line, and all prototypes, models, samples and versions of such doll or any portion thereof.

4.      "REFER OR RELATE TO" means constituting, embodying, containing, referring to, commenting on, evidencing, regarding, discussing, describing, mentioning, reflecting, expressing, pertaining to, concerning, supporting, contradicting, negating, revoking or otherwise relating to in any manner.

5.      "DESIGNS" means any and all works, designs, artwork, sketches, drawings, illustrations, representations, depictions, blueprints, schematics, diagrams, descriptions, sculptures, prototypes, models, samples, reductions to practice, developments, know-how, ideas, concepts, inventions and/or improvements, as well as all other items, things and DOCUMENTS in which any of the foregoing are or

have been expressed, embodied, contained, fixed or reflected in any manner, whether in whole or in part.

6.   "DOCUMENT" means all "WRITINGS" and "RECORDINGS" as those terms are defined in <u>Rule</u> 34 of the <u>Federal Rules of Civil Procedure</u> and <u>Rule</u> 1001 of the <u>Federal Rules of Evidence</u>, including, but not limited to, all writings and records of every type and description including, but not limited to, contracts, agreements, correspondence, memoranda, letters, facsimiles, electronic mail ("e-mail"), records of telephone conversations, handwritten and typewritten notes of any kind, statements, reports, minutes, recordings, transcripts and summaries of meetings, voice recordings, pictures, photographs, drawings, computer cards, tapes, discs, printouts and records of all types, studies, instruction manuals, policy manuals and statements, books, pamphlets, invoices, canceled checks and every other device or medium by which or through which information of any type is transmitted, recorded or preserved.   Without any limitation on the foregoing, the term "DOCUMENT" shall include all copies that differ in any respect from the original or other versions of the DOCUMENT, including, but not limited to, all drafts and all copies of such drafts or originals containing initials, comments, notations, insertions, corrections, marginal notes, amendments or any other variation of any kind.

7.   "COMMUNICATION" or "COMMUNICATIONS" means and includes any disclosure, transfer or exchange of information between two or more PERSONS, whether orally or in writing, including, without limitation, any conversation or discussion by means of meeting, letter, telephone, note, memorandum, telegraph, telex, telecopier, electronic mail, or any other electronic or other medium, including without limitation in written, audio or video form.

8.   "PERSON" or "PERSONS" means all natural persons, partnerships, corporations, joint ventures and any kind of business, legal or public entity or organization, as well as its, his or her agents, representatives, employees,

02284/588966.1

-2-

1 | officers and directors and any one else acting on its, his or her behalf, pursuant to its,
2 | his or her authority or subject to its, his or her control.

3 |      9.    The singular form of a noun or pronoun includes within its
4 | meaning the plural form of the noun or pronoun so used, and *vice versa*; the use of
5 | the masculine form of a pronoun also includes within its meaning the feminine form
6 | of the pronoun so used, and *vice versa*; the use of any tense of any verb includes also
7 | within its meaning all other tenses of the verb so used, whenever such construction
8 | results in a broader request for information; and "and" includes "or" and *vice versa*,
9 | whenever such construction results in a broader disclosure of documents or
10 | information.

11 |
12 | <u>Instructions</u>
13 |

14 |      A.    Unless otherwise specified, these requests call for DOCUMENTS
15 | prepared on or after January 1, 1995 through the present.  Documents shall be
16 | produced in their original file folders, or in lieu thereof, any writing on the file folder
17 | from which each such document is taken shall be copied and appended to such
18 | document and the person for whom or department, division, or office for which the
19 | document or the file folder is maintained shall be identified.

20 |      B.    In the event that any document called for by these requests is to
21 | be withheld on the basis of a claim of privilege or immunity from discovery, that
22 | document is to be identified by stating (i) any addressor and addressee; (ii) any
23 | indicated or blind copy; (iii) the document's date, subject matter, number of pages,
24 | and attachments or appendices; (iv) all persons to whom the document was
25 | distributed, shown, or explained; (v) its present custodian; and (vi) the nature of the
26 | privilege or immunity asserted.

27 |      C.    In the event that any document called for by these requests has
28 | been destroyed or discarded, that document is to be identified by stating: (i) any

1  addressor and addressee; (ii) any indicated or blind copies; (iii) the document's date,

2  subject matter, number of pages, and attachments or appendices; (iv) all persons to

3  whom the document was distributed, shown, or explained; (v) the date of destruction

4  or discard, manner of destruction or discard, and reason for destruction or discard;

5  (vi) the persons who were authorized to carry out such destruction or discard; and

6  (vii) whether any copies of the document presently exist and, if so, the name of the

7  custodian of each copy.

8

9                              Requests for Production

10

11  REQUEST FOR PRODUCTION NO. 1:

12          All DOCUMENTS that REFER OR RELATE TO any agreement or

13  contract between YOU and BRYANT, including without limitation all drafts thereof.

14

15  REQUEST FOR PRODUCTION NO. 2:

16          All COMMUNICATIONS that REFER OR RELATE TO any agreement

17  or contract between YOU and BRYANT.

18

19  REQUEST FOR PRODUCTION NO. 3:

20          All DOCUMENTS that REFER OR RELATE TO the performance of

21  any agreement or contract between YOU and BRYANT.

22

23  REQUEST FOR PRODUCTION NO. 4:

24          All DOCUMENTS that REFER OR RELATE TO DESIGNS that

25  BRYANT produced, created, authored, conceived of or reduced to practice, whether

26  alone or jointly with others, prior to October 21, 2000.

27

28

EXHIBIT 2.1 PAGE 245

1   REQUEST FOR PRODUCTION NO. 5:

2          All DOCUMENTS that REFER OR RELATE TO any work, activities

3   or services, including without limitation any freelance work or consulting services,

4   that BRYANT performed for YOU or on YOUR behalf prior to October 21, 2000.

5

6   REQUEST FOR PRODUCTION NO. 6:

7          All DOCUMENTS that REFER OR RELATE TO DESIGNS produced,

8   created, authored, conceived of or reduced to practice prior to October 21, 2000 by

9   BRYANT, whether alone or jointly with others, in which YOU have purported to

10  purchase, acquire or own any right, title or interest (whether in whole or in part).

11

12  REQUEST FOR PRODUCTION NO. 7:

13         All DOCUMENTS that REFER OR RELATE TO DESIGNS that

14  BRYANT created, authored, produced, conceived of or reduced to practice prior to

15  October 21, 2000 that YOU claim to own or have rights to as "works-made-for-hire"

16  (whether in whole or in part).

17

18  REQUEST FOR PRODUCTION NO. 8:

19         All COMMUNICATIONS between YOU and BRYANT that REFER

20  OR RELATE TO Mattel, Inc., any officer, director, employee or representative of

21  Mattel, Inc. or any agreement or contract between BRYANT and Mattel, Inc.

22

23  REQUEST FOR PRODUCTION NO. 9:

24         All COMMUNICATIONS between YOU and BRYANT prior to

25  October 21, 2000.

26

27

28

1    REQUEST FOR PRODUCTION NO. 10:

2              All COMMUNICATIONS between YOU and BRYANT that REFER
3    OR RELATE TO BRATZ, including without limitation to any DESIGNS for BRATZ
4    and any work or services performed by BRYANT in connection with BRATZ, prior
5    to October 21, 2000.

6

7    REQUEST FOR PRODUCTION NO. 11:

8              All DOCUMENTS, including without limitation all diaries, notes,
9    calendars, logs, phone records and letters, that reflect, record or memorialize or
10   otherwise REFER OR RELATE TO any oral COMMUNICATIONS between YOU
11   and BRYANT prior to October 21, 2000.

12

13   REQUEST FOR PRODUCTION NO. 12:

14             All DOCUMENTS that REFER OR RELATE TO any payment made to
15   or on behalf of BRYANT prior to October 21, 2000 or for work or services performed
16   by BRYANT prior to October 21, 2000.

17

18   REQUEST FOR PRODUCTION NO. 14:

19             All DOCUMENTS that REFER OR RELATE TO any money or
20   consideration paid by YOU to or on behalf of BRYANT for any DESIGNS, or for any
21   right, title or interest in any DESIGNS, that BRYANT produced, created, authored,
22   conceived of or reduced to practice, whether alone or jointly with others, prior to
23   October 21, 2000.

24

25   REQUEST FOR PRODUCTION NO. 15:

26             All of YOUR royalty statements to or for BRYANT.

27

28

**REQUEST FOR PRODUCTION NO. 16:**

Any personnel file that YOU have created or maintained concerning BRYANT.

**REQUEST FOR PRODUCTION NO. 17:**

All DOCUMENTS that REFER OR RELATE TO the conception or sculpting of BRATZ prior to January 1, 2001.

**REQUEST FOR PRODUCTION NO. 18:**

All DOCUMENTS that REFER OR RELATE TO BRYANT'S participation in the conception, creation, design, development, sculpting, tooling, production or manufacture of BRATZ.

**REQUEST FOR PRODUCTION NO. 19:**

All DOCUMENTS that REFER OR RELATE TO this action, including without limitation all COMMUNICATIONS pertaining thereto and all DOCUMENTS that REFER OR RELATE TO any indemnification that BRYANT has sought, proposed, requested or obtained in connection with the claims asserted in this action.

**REQUEST FOR PRODUCTION NO. 20:**

All DOCUMENTS that REFER OR RELATE TO Mattel, Inc., or that were prepared, authored or created by Mattel, Inc. or any officer, director, employee or representative of Mattel, Inc., that BRYANT has ever provided to, shown, described to, communicated to or disclosed in any manner to YOU.

-7-

REQUEST FOR PRODUCTION NO. 21:

All prototypes, models, samples and tangible items that REFER OR RELATE TO DESIGNS for dolls, doll accessories or toys that BRYANT produced, created, authored, conceived of or reduced to practice, whether alone or jointly with others, prior to October 21, 2000.

**PROOF OF SERVICE**

1013A(3) CCP Revised 5/1/88

STATE OF CALIFORNIA )
COUNTY OF LOS ANGELES )

    I am employed in the county of Los Angeles  State of California.  I am over the age of 18 and not a party to the within action; my business address is: 865 S. Figueroa Street, 10th Floor, Los Angeles, CA 90017.

    On June 18, 2004, I served the foregoing document(s) described as **SUBPOENA IN A CIVIL CASE** on all interested parties in this action.

**Robert F. Miliman, Esq.**
**Doughlas A. Wickham, Esq.**
**Littler Mendelson**
**A Professional Corporation**
2049 Century Park East, 5th Floor
Los Angeles, California 90067-3107

[ ]   By placing [ ] the original [X] true copies thereof enclosed in sealed envelopes addressed as follows:

[ ]   **BY MAIL**

[ ]   I deposited such envelope in the mail at Los Angeles, California.  The envelope was mailed with postage thereon fully prepaid.

[ ]   As follows:  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[X]   **BY OVERNIGHT COURIER** I caused each envelope with postage prepaid to be sent by <u>Federal Express</u>.

[ ]   **BY TELECOPIER** By transmitting the above listed document(s) to the fax number(s) set forth below on this date.

[ ]   **BY PERSONAL SERVICE** I delivered such envelope by hand to the addressee.

Executed on June 18, 2004, at Los Angeles, California.

[ ]   (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

[X]   (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Donna B. Sanchez
Print Name

Signature

**EXHIBIT** 21 **PAGE** 250

# EXHIBIT 22

CONFORMED COPY
LODGED

FILED

2007 MAY 16  PM 1:59   2007 MAY 16  PM 2:00

CLERK U.S. DISTRICT COURT   CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.   CENTRAL DIST. OF CALIF.
RIVERSIDE   RIVERSIDE
BY_____

1  Hon. Edward A. Infante (Ret.)
   JAMS
2  Two Embarcadero Center
   Suite 1500
3  San Francisco, California 94111
   Telephone:    (415) 774-2611
4  Facsimile:    (415) 982-5287

5

6

7              UNITED STATES DISTRICT COURT

8           CENTRAL DISTRICT OF CALIFORNIA

9                   EASTERN DIVISION

10

11  CARTER BRYANT, an individual,         CASE NO. C 04-09049 SGL (RNBx)
                                          JAMS Reference No. 1100049530
12          Plaintiff,

13       v.                               Consolidated with
                                          Case No. CV 04-09059
14  MATTEL, INC., a Delaware corporation, Case No. CV 05-2727

15          Defendant.                    **ORDER GRANTING MATTEL'S
                                          MOTION TO COMPEL PRODUCTION
16                                        OF DOCUMENTS AND
                                          INTERROGATORY RESPONSES BY
17  CONSOLIDATED WITH                     MGA**
    MATTEL, INC. v. BRYANT and
18  MGA ENTERTAINMENT, INC. v. MATTEL,
    INC.
19

20

21                        I.  INTRODUCTION

22      On February 2, 2007, Mattel, Inc. ("Mattel") submitted its Motion To Compel Production

23  of Documents and Interrogatory Answers by MGA Entertainment, Inc. ("MGA"). On February

24  20, 2007, MGA submitted its opposition brief, and on February 26, 2007, Mattel submitted a

25  reply brief. The matter was heard on March 5, 2007. Thereafter the motion was taken under

26  submission pending the parties' submission of a proposed protective order, which was received

27

28
    Bryant v. Mattel, Inc.,                                                    1
    CV-04-09049 SGL (RNBx)

EXHIBIT _22_ PAGE _251_

1    on April 23, 2007. Having considered the motion papers and comments of counsel at the hearing,

2    Mattel's motion to compel is granted.

3                II. BACKGROUND

4       A. Requests for Documents

5        In June of 2004, two months after Mattel filed suit against Bryant, and before MGA

6    became a party to the action, Mattel served MGA with an eight-page subpoena for twenty-one

7    categories of documents, to be produced in ten days. MGA filed a motion to quash, which the

8    court granted because of the short amount of time provided for compliance with the subpoena.

9    The parties met and conferred in July of 2004, and reached an agreement to limit the scope of

10    some of Mattel's requests. In particular, the parties agreed to limit production to the "first

11    generation" Bratz dolls. On August 12, 2004, MGA produced documents.

12        In 2005, the parties stipulated to supplementing their document productions on May 16,

13    2005. Mattel agreed to continue limiting its discovery requests to "first generation" Bratz dolls.

14        In September of 2006, MGA made a supplemental production of documents. On February

15    5, 2007, MGA produced about 2,300 pages of documents to replace earlier produced documents

16    with legibility problems. On February 20, 2007, MGA produced an additional 224 pages of

17    documents to replace earlier produced documents with legibility problems.

18        Mattel now moves to compel MGA to produce documents responsive to its requests. As a

19    preliminary matter, Mattel contends that MGA's production is deficient because it contains

20    redactions and cut-off text. Further, Mattel contends that MGA's production is incomplete with

21    respect to essentially five categories of documents. First, Mattel contends that MGA is

22    withholding documents relating to the origins of Bratz and Bryant's work for MGA. Mattel

23    believes that MGA's production is incomplete based upon its review of documents that have been

24    produced by third party Steven Linker. According to Mattel, Linker's documents from October

25    of 2000 show that Bratz was much farther along before Bryant left Mattel than MGA or Bryant

26    previously represented. Mattel also contends that MGA's responses to the document requests

27

28    Bryant v. Mattel, Inc.,
       CV-04-09049 SGL (RNBx)                           2

EXHIBIT 22 PAGE 252

1    contain inappropriate limitations, such as MGA's statement that it will produce "relevant and
2    responsive non-objectionable documents" or only that it will produce documents "sufficient" to
3    show when certain dates relating to Bratz occurred. Mattel contends that these "carve outs
4    purport to allow MGA to cherry-pick what it will and will not produce to Mattel." Mattel's
5    Separate Statement at 17:11-13. Mattel also contends that the carve-outs fail to provide notice of
6    what is or is not being withheld. Mattel also contends that MGA's objections based upon its
7    confidentiality concerns or the privacy rights of third parties are unwarranted in light of the
8    protective order in place. In addition, Mattel contends that MGA's objection to producing
9    documents relating to activities or conduct in foreign countries is wholly improper because those
10   documents may contain information relevant to Mattel's claims.

11          Second, Mattel seeks documents relating to the origins of Bratz, regardless of whether
12   such documents relate to the "first generation" Bratz dolls. Mattel argues that whether the work
13   ultimately resulted in Bratz dolls that were released at a particular time does not matter for
14   discovery purposes. Mattel contends that the works created by Bryant during his Mattel
15   employment are highly relevant because Mattel owns them, regardless of whether they resulted in
16   a Bratz doll released at a particular time.[1]

17          Mattel next contends that MGA is improperly withholding documents about designs
18   Bryant created on Bratz dolls that were released after June 2001, even though such designs may
19   be derivative of work he did when employed by Mattel. Mattel contends that it is entitled to
20   explore whether such works and the profits from Bratz dolls other than the "first generation"
21   Bratz dolls were derived from works owned by Mattel both for purposes of establishing liability
22   and damages. Furthermore, Mattel asserts that the "first generation" limitation on discovery is
23   improper in light of Bryant's continuing duty not to use Mattel's confidential and proprietary
24   information as well as MGA's unfair competition claims.

25   _____

26          [1] Mattel also reiterates many of the arguments it made previously in connection with its earlier filed motion
     to compel Bryant to produce documents.

27

28
     Bryant v. Mattel, Inc.,                                                          3
     CV-04-09049 SGL (RNBx)

EXHIBIT 22 PAGE 253

1    Mattel also asserts that MGA is improperly withholding documents relating to products,

2    services and matters other than those relating to "dolls."  According to Mattel, it has evidence that

3    Bryant conceived of marketing and advertising ideas for the Bratz line while he was employed by

4    Mattel.  Mattel contends that any such ideas or contributions may belong to it pursuant to the

5    Inventions Agreement.

6    Third, Mattel seeks documents relating to all of MGA's payments to Bryant, and not just

7    payments for the "first generation" Bratz dolls.  Mattel asserts that such information is relevant

8    because (1) Mattel seeks all benefits Bryant received as a result of violating his duties to Mattel;

9    (2) under the Copyright Act, Mattel is entitled to all profits from infringement as well as actual

10   damages; and (3) payments may show when and what trade secret information Bryant and other

11   defendants allegedly misappropriated from Mattel.

12   Fourth, Mattel seeks documents relating to MGA's agreements with Bryant.  Mattel

13   contends that all agreements between Bryant and MGA are relevant, not just the original

14   September 18, 2000 agreement.  In particular, Mattel contends that it is entitled to discover all

15   documents relating to MGA and Bryant's alleged joint defense agreement because such

16   information would be relevant to demonstrate bias and lack of credibility.

17   Fifth, Mattel seeks production of all declarations, affidavits and other sworn written

18   statements from other cases that refer or relate to Bratz or Angel.  Mattel contends that such

19   information may reveal relevant information about the date of creation of Bryant's Bratz

20   drawings.

21   In response, MGA denies withholding responsive documents and asserts that it has

22   produced volumes of documents responsive to Mattel's requests.  In particular, MGA represents

23   that it has produced all responsive and relevant documents that it was able to locate in response to

24   request nos. 6, 7, 9, 26, 27, 32, 33, 34, 35, 36, 55, 69, and 70.  Further, MGA asserts that even

25   before the motion was filed, it had agreed to address the vast majority of the issues raised in this

26   motion.  In particular, MGA represents that it is diligently working to produce documents related

27

28
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)                                                    4

EXHIBIT _22_ PAGE _254_

1  to Bratz other than "first generation" Bratz in response to request nos. 1, 2, 8, 10, 11, 43, 45, 46,

2  49, 50, 51, 53, 57, 59, 61, 63, 64, 66, 96, 97, 98, 99 and 100.  MGA represents that it informed

3  Mattel that it would produce documents pertaining to subsequent generations of Bratz dolls that

4  have been released on the market.  In addition, MGA represents that it has agreed to produce

5  documents relevant to Bratz or Prayer Angels that it received from Union Bank.  More

6  specifically, MGA represents that it agreed to review and produce documents provided to it by

7  Union Bank for the years 1999 – 2001 concerning payments that it could identify as being for

8  Bratz or Prayer Angels.  MGA also represents that it has agreed to produce royalty statements.

9  Therefore, MGA views the motion as unnecessary.

10       MGA next contends that Mattel's motion should be denied for the following additional

11  reasons.  First, MGA contends that Mattel is not entitled to MGA's product design documents for

12  unreleased products.  MGA asserts that its product design documents for its unreleased toy

13  concepts are among its most highly valuable trade secrets.  Furthermore, MGA contends that

14  designs and drawings for products currently under development, over six years after Bryant first

15  created his original Bratz drawings, have no relevance to any of Mattel's claims.  In the event that

16  documents relating to unreleased products are ordered produced, MGA requests a protective order

17  under Rule 26(c), Fed.R.Civ.P., that limits the dissemination of its documents more drastically

18  than the current protective order provides.  In the alternative, MGA requests that any order

19  compelling production of documents relating to unreleased products should essentially be stayed

20  until after MGA's products are publicly released.

21       Second, MGA contends that Mattel is not entitled to information concerning Bryant's

22  attorneys' fees because the information is privileged.  Furthermore, MGA contends that the

23  information is not relevant to demonstrate bias because "there is no dispute that Bryant's interests

24

25

26

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

5

EXHIBIT _22_ PAGE _255_

1  in this case are aligned with those of MGA, and that Bryant is 'biased' in that sense." MGA's

2  Opposition at 24:9-12.[2]

3      Third, MGA asserts that Mattel is not entitled to review all non-public witness statements

4  and litigation documents concerning Bratz for a variety of reasons, including because Mattel has

5  refused to produce similar types of documents.  More significantly, MGA contends that Mattel's

6  requests for non-public witness statements are "a blatant attempt to avoid the discovery

7  limitations imposed by both the Federal Rules of Civil Procedure and those additional limitations

8  imposed by this Court."  MGA's Opposition at 25:6-7.  MGA explains its position as follows.

9  MGA is involved in litigation against a number of counterfeiters and infringers in Asia.  In 2003,

10  Mattel allegedly began feeding documents concerning "Toon Teens" to those defendants in an

11  attempt to prove that Bryant created Bratz while working at Mattel, even though Mattel

12  abandoned its claims based upon "Toon Teens" in this court.  Thereafter, those defendants took

13  the position that MGA did not own, and therefore could not enforce, the rights to Bratz.  MGA

14  was thus forced to litigate the issue of ownership.  MGA contends that "[i]n effect, by prompting

15  foreign counterfeiters to espouse a theory that Mattel now admits has no merit, Mattel has created

16  a situation in which MGA has been forced to give testimony and provide evidence related to

17  issues in this case that Mattel now seeks to obtain wholesale."  MGA's Opposition at 25:5-24.

18      Fourth, MGA contends that Mattel is not entitled to documents concerning a family

19  dispute between MGA's chief executive officer and his brother because such documents are in no

20  way relevant to this lawsuit.  MGA explains that the brothers were involved in an arbitration

21  proceeding relating to MGA's CEO's purchase of his brother's interest in MGA.  Moreover,

22  MGA contends that the brothers were bound by a protective order prohibiting the use of any

23  documents or testimony for any purpose other than the arbitration.

24

25  _____

26      [2]  Nevertheless, MGA represents that it has produced the only non-privileged document responsive to the request.

27

28  Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

6

EXHIBIT 22  PAGE 256

1    Fifth, MGA contends that Mattel is not entitled to its chief executive officer's personnel

2    files because they contain confidential information and are not relevant to the lawsuit. Sixth,

3    MGA contends that Mattel is not entitled to obtain documents from MGA that belong to, and are

4    in the possession, custody and control of, its indirect foreign subsidiary, MGA HK Ltd. Lastly,

5    MGA objects to producing documents relating to any testing performed to determine the date that

6    Bratz documents were created. MGA contends that such discovery is premature and should not

7    proceed until experts are designated.

8    B. Interrogatories

9    On April 28, 2005, Mattel served its Second Set of Interrogatories. On May 20, 2005,

10   however, the district court stayed the action. On May 17, 2006, the district court lifted the stay.

11   On May 30, 2006, MGA responded to the interrogatories.

12   Mattel contends that MGA's responses to the interrogatories were untimely. Further,

13   Mattel contends that the interrogatory responses to numbers five through eleven are deficient

14   because they lack substantive information and consist almost entirely of objections. MGA

15   responds that the motion is moot because it is prepared to provide supplemental responses to its

16   interrogatories. MGA does not otherwise assert any additional grounds for opposing Mattel's

17   motion to compel responses to interrogatories.

18   III. DISCUSSION

19   A. Rule 26 of the Federal Rules of Civil Procedure

20   Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain

21   discovery regarding any matter, not privileged, that is relevant to the claim or defense of any

22   party." Fed.R.Civ.P. 26(b)(1). "Relevant information need not be admissible at trial if the

23   discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id.

24   Discovery shall, however, be limited by the court if it determines that: "(i) the discovery sought is

25   unreasonably cumulative or duplicative, or is obtainable from some other source that is more

26   convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample

27

28
Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

7

EXHIBIT 22 PAGE 256A

1   opportunity by discovery in the action to obtain the information sought; or (iii) the burden or

2   expense of the proposed discovery outweighs its likely benefit, taking into account the needs of

3   the case, the amount in controversy, the parties' resources, the importance of the issues at stake in

4   the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P.

5   26(b)(2).

6       B.   Document Requests

7           1.   Requests re Origins of Bratz and Bryant's Work for MGA (Nos. 6, 26, 27, 32, 33,

8               34, 35, 51, 53, 55, 64, 69, 96, 97, 98, 99, 100

9   The requests above seek discoverable information regarding the origins of Bratz and

10  Bryant's work for MGA.  MGA represents that it has produced all responsive documents in

11  response to request nos. 6, 26, 27, 32, 33, 34, 35, 55, and 69 (MGA's Opposition at 13:4-5), and is

12  "diligently working to produce documents in response to" request nos. 51, 53, 64, 96, 97, 98, 99,

13  and 100, including documents related to Bratz other than "first generation" (MGA's Opposition at

14  14:1-4 and note 39).  MGA does, however, object to producing design documents for unreleased

15  products and documents from MGA Hong Kong.

16      As a threshold matter, MGA's responses are inadequate to the extent MGA has restricted

17  its production to "relevant and responsive non-objectionable documents" or documents

18  "sufficient" to show when events relating to Bratz occurred.  These restrictions suggest that MGA

19  might be excluding documents that are responsive to the request based upon its unilateral

20  determination of what is "relevant" or "sufficient."  Mattel shall provide the responses to

21  document requests ordered herein without these restrictions.

                        Design Documents for Unreleased Products

23      MGA's design documents for unreleased products are relevant to Mattel's claims and

24  defenses and must be produced.  See Order Modifying Protective Order.  On April 23, 2007, the

25  parties submitted a stipulation to modify the existing protective order to limit the disclosure of

26  design documents for unreleased products that constitute trade secret information.  See Stipulation

27

28  Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)                                                              8

EXHIBIT 22 PAGE 257

1   to Modify Protective Order; And Proposed Order Thereon ("stipulation"). The parties' stipulation
2   has been approved and entered as an order of the court. MGA is ordered to produce design
3   documents for unreleased products that are responsive to Mattel's document requests in
4   accordance with the terms of the stipulation and order.

Documents from MGA Hong Kong

6       Documents relating to activities or conduct in foreign countries are relevant and
7   discoverable because Mattel has evidence indicating that MGA Hong Kong was involved with
8   Bratz. Nevertheless, MGA objects to producing documents from Hong Kong unless Mattel
9   provides reciprocal discovery from its subsidiaries.

10      Whether MGA is entitled to discovery from Mattel's subsidiaries has not been briefed in
11  the context of this motion, and therefore is not addressed herein. MGA is ordered to produce
12  documents from MGA Hong Kong.

13      Mattel's motion is granted with respect to request nos. 6, 26, 27, 32, 33, 34, 35, 51, 53, 55,
14  64, 69, 96, 97, 98, 99, 100.

15      2. Additional Requests re Origins of Bratz (Nos. 7, 8, 9, 10, 11, 12, 13, 36, 46, 57, 59,
16          61, 63, 66, 67, 70, 88, 90, 91

17      Mattel contends that MGA is improperly limiting its document production to the "first
18  generation" Bratz dolls. MGA represents, however, that it has agreed to produce subsequent
19  generations of Bratz products (MGA's Opposition at 9:20-25, 13:6-14:1), except design
20  documents for yet unreleased products.

21      As stated previously, design documents for yet unreleased products are relevant and
22  discoverable. See Order Modifying Protective Order. Accordingly, MGA is ordered to produce
23  all non-privileged documents that are responsive to request nos. 7, 8, 9, 10, 11, 12, 13, 36, 46, 57,
24  59, 61, 63, 66, 67, 70, 88, 90, and 91.

25      //
26      //
27
28

EXHIBIT 22 PAGE 258

### 3. MGA's Payments to Bryant (Nos.43, 45)

MGA represents that it has already agreed to produce documents related to Bratz, without limiting its production to "first generation" Bratz. MGA's motion at 13:7-14:3. Nevertheless, Mattel is entitled to an order compelling production of such documents by a date certain. Mattel's motion is granted with respect to request nos. 43 and 45.

### 4. MGA's Agreements with Bryant (Nos. 1, 2, 49, 50)

MGA represents that it has already agreed to produce non-privileged documents responsive to request nos. 1, 2, 49, and 50, even though it believes that such documents are not relevant (MGA's motion at 13:7-14:3). These requests seek documents relating to fee or indemnity agreements between MGA and Bryant .

Fee or indemnity agreements are relevant to demonstrate bias and lack of credibility. Accordingly, Mattel's motion is granted with respect to request nos. 1, 2, 49, and 50. Any responsive documents withheld on the basis of a privilege must be properly identified in a privilege log.

### 5. Declarations, Affidavits & Other Sworn Written Statements (Nos. 37, 38, 39, 40, 41,

In request nos. 37, 38, 390, 40, and 41, Mattel seeks production of declarations, affidavits, and other sworn written statements from cases that refer or relate to Bratz or Angel. Mattel anticipates that these documents could provide evidence relating to the conception date for Bratz.

Request nos. 37, 38, 39, 40, and 41 seek relevant information regarding the conception date for Bratz. MGA admits in its opposition brief that this issue was litigated in its suits against alleged counterfeiters and infringers.[3] The issue also appears to have been raised in the arbitration proceedings between MGA's chief executive officer, Isaac Larian, and his brother Farhad Larian. In those proceedings, Farhad Larian alleged that Isaac Larian concealed from him

---

[3] Although MGA questions the propriety of Mattel providing assistance to the alleged counterfeiters and infringers in raising ownership of Bratz as a defense against MGA's claims, MGA has not cited to any legal authority that prohibits Mattel's conduct.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

10

EXHIBIT 22 PAGE 259

1  that MGA was developing Bratz by early 2000.  Nevertheless, MGA objects to producing

2  documents from the Larians' arbitration on the grounds that the arbitration was governed by a

3  protective order that prohibits the use of any documents or testimony for any purpose other than

4  the arbitration.  MGA, however, has not provided any evidence of the protective order.

5  Accordingly, Mattel's motion to compel is granted as to request nos. 37, 38, 39, 40 and 41.[4]

6        6. <u>Documents Regarding Date-Testing (Request No. 92)</u>

7       Mattel's request no. 92 seeks documents that refer or relate to "any testing of or sampling

8  from any documents that refer or relate to Bratz or Bryant, including without limitation any such

9  testing or sampling in connection with ink, paper or chemical analysis to date any such documents

10  and including without limitation all results and reports relating thereto."  MGA contends that the

11  request is premature, and should proceed in the course of expert discovery.

12       The request calls for relevant discovery and there is no basis for delaying production of

13  responsive documents, other than expert reports.  The timing of expert reports is governed by

14  Rule 26(a)(2)(C), Fed.R.Civ.P.  Accordingly, Mattel's motion is granted as to request no. 92.

15       C. <u>Interrogatories</u>

16       Mattel contends that MGA's responses to interrogatories were untimely, and therefore

17  MGA has waived its objections to the interrogatories.  Pursuant to Rule 33(b)(3), Fed.R.Civ.P.,

18  responses to interrogatories are due thirty days after service.  In this case, Mattel served its

19  interrogatories on April 28, 2005, and responses were initially due May 31, 2005.  The district

20  court, however, issued a stay on May 20, 2005, twenty-two days after the interrogatories were

21  served.  The district court lifted the stay on May 17, 2006.

22

23

24

25      [4]  In its discussion of the arbitration proceedings, MGA raises an objection to producing Isaac Larian's

26  personnel file based upon privacy grounds.  The personnel file may have documents relevant to Bratz, and therefore should be produced.  The protective order is sufficient to alleviate Mr. Isaac Larian's privacy concerns.

27

28  Bryant v. Mattel, Inc.,
  CV-04-09049 SGL (RNBx)
                                  11

EXHIBIT 22 PAGE 260

1    Neither party has cited to any caselaw governing the calculation of the 30-day period

2  when there is an intervening stay in discovery. In the absence of any caselaw, MGA's responses

3  will be treated as timely in order to preserve any valid objections MGA may have asserted.

4    Interrogatory No. 5 seeks the identity of each and every person who was involved in the

5  conception, origin, creation, design, development, sculpting, engineering, reduction to practice,

6  tooling or painting of, or who otherwise produced or contributed to any embodiment of Bratz

7  before December 31, 2001, including a description of each person's role and the start and end

8  dates of each person's involvement. In response, MGA asserted numerous objections, but did

9  provide the names of five individuals.

10    The interrogatory clearly seeks information relevant to the claims at issue. MGA's

11  objections are without merit. The interrogatory is not vague, ambiguous, compound or overbroad.

12  Nor has MGA carried its burden of establishing that the interrogatory is unduly burdensome, calls

13  for confidential, proprietary or commercially sensitive information, or seeks information

14  protected by the attorney-client privilege. Furthermore, MGA's response is incomplete insofar as

15  it fails to provide the description of each person's role and the start and end dates of each person's

16  involvement. Accordingly, MGA is ordered to provide a complete response to Interrogatory No.

17  5 and identify documents in compliance with Rule 33(d), Fed.R.Civ.P.

18    Interrogatory No. 6 seeks the same information as Interrogatory No. 5 with respect to any

19  embodiment of Angel. MGA is ordered to provide a complete response to Interrogatory No. 6 for

20  the reasons previously discussed in connection with Interrogatory No. 5.

21    Interrogatory No. 7 asks MGA to identify each and every embodiment of Bratz prior to

22  December 31, 2001. In response, MGA asserted numerous objections and did not provide any

23  substantive information.

24    MGA's objections are without merit. The interrogatory clearly seeks information relevant

25  to establishing when Bryant first conceived Bratz. The interrogatory is not vague, ambiguous,

26  compound or overbroad. Nor has MGA carried its burden of establishing that the interrogatory is

27

28
   Bryant v. Mattel, Inc.,                                                    12
   CV-04-09049 SGL (RNBx)

EXHIBIT 22  PAGE 264

1   unduly burdensome, calls for confidential, proprietary or commercially sensitive information, or

2   seeks information protected by the attorney-client privilege.  Accordingly, MG is ordered to

3   provide a complete response to Interrogatory No. 7.

4        Interrogatory No.8 asks MGA to identify each and every embodiment of Angel.  MGA is

5   ordered to provide a complete response to Interrogatory No. 8 for the reasons previously

6   discussed in connection with Interrogatory No. 7.

7        Interrogatory No. 9 requires MGA to identify each and every sworn statement that refers

8   or relates to the conception, origin, creation, design, development, sculpting, engineering, tooling

9   or painting of Bratz.  In response, MGA asserted numerous objections and did not provide any

10  substantive information.

11       The interrogatory seeks information relevant to establishing when Bryant first conceived

12  Bratz.  Furthermore, MGA's boiler-plate objections are unsubstantiated.  Accordingly, MGA is

13  ordered to provide a complete response to Interrogatory No. 9.

14       Interrogatory No. 10 requires MGA to identify each and every instance in which Bratz

15  was shown, displayed, or exhibited prior to June 1, 2001, including by stating the date(s) on

16  which each such instance occurred, the location of each show or exhibit, and the identity of

17  persons with knowledge of the shows or exhibits.  In response, MGA asserted numerous

18  objections and provided the following information:  Hong Kong Toy Fair in Hong Kong in or

19  about January 2001 and New York Toy Fair, New York, in or about February 2001.

20       Once again, MGA's boiler-plate objections are unsubstantiated.  The information is

21  potentially relevant to establish when Bryant conceived Bratz.  Further, the response is

22  incomplete insofar as it fails to identify any persons with knowledge.  Therefore, MGA is ordered

23  to provide a complete response to Interrogatory No. 10.

24       Interrogatory No. 11 requires MGA to state the "number for each and every telephone,

25  including without limitation each office, home and cell phone number, in the name of, for the

26  benefit of or for the account of Isaac Larian and any other telephone that Isaac Larian used from

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

13

EXHIBIT 22 PAGE 262

1 | January 1, 1998 through the present, and IDENTIFY each and every carrier (including without
2 | limitation any long-distance carrier) for each such number. In response, MGA asserted numerous
3 | boiler-plate objections.

4 |     Once again, MGA has failed to substantiate any of its objections with supporting
5 | declarations or legal authorities. Accordingly, all objections are overruled and MGA is ordered to
6 | provide a full response to Interrogatory No. 11.

7 | IV. CONCLUSION

8 |     For the reasons set forth above, Mattel's motion to compel production of documents is
9 | granted. MGA shall produce all non-privileged documents that are responsive to the requests
10 | identified in this Order. Further, MGA shall produce all documents in un-redacted form, except
11 | for redactions that are justified by the attorney-client privilege or work product doctrine. Mattel's
12 | motion to compel interrogatory answers is also granted. MGA shall produce documents and
13 | provide responses to interrogatories consistent with this Order, and produce a privilege log in
14 | compliance with Rule 26(b)(5), Fed.R.Civ.P., no later than May 31, 2007. Mattel's request for
15 | sanctions is denied.

16 |     Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery
17 | Master, Mattel shall file this Order with the Clerk of Court forthwith.

21 | Dated: May 5, 2007

HON. EDWARD A. INFANTE (Ret.)
Discovery Master

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

14

EXHIBIT 22 PAGE 263

## PROOF OF SERVICE BY E-MAIL

I, Anthony Sales, not a party to the within action, hereby declare that on May 15, 2007, I served the attached ORDER GRANTING MATTEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND INTERROGATORY RESPONSES BY MGA in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| Robert Millman Esq. | Littler Mendelson | rfmillman@littler.com |
| Douglas Wickham Esq. | Littler Mendelson | dwickham@littler.com |
| Keith Jacoby Esq. | Littler Mendelson | kjacoby@littler.com |
| Dominic Messiha Esq | Littler Mendelson | dmessiha@littler.com |
| Diba Rastegar Esq. | Littler Mendelson | drastegar@littler.com |
| Michelle Park Esq. | Littler Mendelson | mpark@littler.com |
| Alaya B. Meyers, Esq. | Littler Mendelson | ameyers@littler.com |
| Brady Mitchell, Esq. | Littler Mendelson | bmitchell@littler.com |
| Carol Miller, Esq. | Littler Mendelson | cmiller@littler.com |
| Ryan P. Eskin, Esq. | Littler Mendelson | reskin@littler.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | jbq@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Morris Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgetmorris@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on May 15, 2007, at San Francisco, California.

Anthony Sales

EXHIBIT 22   PAGE 264

# EXHIBIT 23

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 90378)
  Michael T. Zeller (Bar No. 196417)
  Shane H. McKenzie (Bar No. 228978)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Plaintiff and Counter-Defendant
Mattel, Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTEL, INC., a Delaware corporation, | Case No. CV 04-09059 NM (RNBx) |
| Plaintiff, | |
| v. | MATTEL, INC.'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND TANGIBLE THINGS TO MGA ENTERTAINMENT INC. |
| CARTER BRYANT, an individual | |
| Defendant. | |
| | |
| CARTER BRYANT, on behalf of himself, all present and former employees of Mattel, Inc., and the general public, | |
| Counterclaimant, | |
| v. | |
| MATTEL, INC., a Delaware corporation, | |
| Counter-defendant. | |

**EXHIBIT 23 PAGE 265**

3/14

FIRST REQUEST FOR PRODUCTION TO MGA

07209/642197.1

1      Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Plaintiff

2  and Counter-Defendant Mattel, Inc. hereby requests that MGA Entertainment Inc.

3  make available for inspection and copying the following documents and things

4  within thirty days of the service of these Requests, at the offices of Quinn Emanuel

5  Urquhart Oliver & Hedges, LLP, 865 South Figueroa Street, 10th Floor, Los

6  Angeles, California 90036.

7      These Requests shall be deemed to be continuing, and MGA

8  Entertainment Inc. shall be obligated to supplement its responses to these requests

9  at such times and to the extent required by Rule 26(e) of the Federal Rules of Civil

10  Procedure.

11

12                DEFINITIONS

13

14      For purposes of this Request for Production of Documents:

15      A.    "YOU" or "YOUR" means MGA Entertainment Inc. and any of

16  its current or former employees, officers, directors, agents, representatives,

17  attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-interest and

18  successors-in-interest, and any other PERSON acting on its behalf, pursuant to its

19  authority or subject to its control.

20      B.    "MATTEL" means Mattel, Inc. and any of its current or former

21  employees, officers, directors, agents, representatives, attorneys, subsidiaries,

22  divisions, affiliates, predecessors-in-interest and successors-in-interest, and any

23  other PERSON acting on its behalf, pursuant to its authority or subject to its

24  control.

25      C.    "DOCUMENT" or "DOCUMENTS" means all "writings" and

26  "recordings" as those terms are defined in Rule 34 of the Federal Rules of Civil

27  Procedure and Rule 1001 of the Federal Rules of Evidence, including, but not

28  limited to, all writings and records of every type and description including, but not

-2-

1 │ limited to, contracts, agreements, correspondence, memoranda, letters, facsimiles,

2 │ electronic mail ("e-mail"), records of telephone conversations, handwritten and

3 │ typewritten notes of any kind, statements, reports, minutes, recordings, transcripts

4 │ and summaries of meetings, voice recordings, pictures, photographs, drawings,

5 │ computer cards, tapes, discs, printouts and records of all types, studies, instruction

6 │ manuals, policy manuals and statements, books, pamphlets, invoices, canceled

7 │ checks and every other device or medium by which or through which information

8 │ of any type is transmitted, recorded or preserved.  Without any limitation on the

9 │ foregoing, the term "DOCUMENT" shall include all copies that differ in any

10 │ respect from the original or other versions of the DOCUMENT, including, but not

11 │ limited to, all drafts and all copies of such drafts or originals containing initials,

12 │ comments, notations, insertions, corrections, marginal notes, amendments or any

13 │ other variation of any kind.

14 │     D.    "REFER OR RELATE TO" means constituting, embodying,

15 │ containing, referring to, commenting on, evidencing, regarding, discussing,

16 │ describing, mentioning, reflecting, expressing, pertaining to, concerning,

17 │ supporting, contradicting, negating, revoking or otherwise relating to in any

18 │ manner.

19 │     E.    "PERSON" or "PERSONS" means all natural persons,

20 │ partnerships, corporations, joint ventures and any kind of business, legal or public

21 │ entity or organization, as well as its, its or her agents, representatives, employees,

22 │ officers and directors and any one else acting on its, its or her behalf, pursuant to

23 │ its, its or her authority or subject to its, its or her control.

24 │     F.    "BRYANT" means Carter Bryant, any of his current or former

25 │ agents, representatives, attorneys, employees, partners, joint venturers,

26 │ predecessors-in-interest and successors-in-interest, and any other PERSON acting

27 │ on his behalf, pursuant to his authority or subject to his control.

28 │

**EXHIBIT _2.3_ PAGE _267_**

FIRST REQUEST FOR PRODUCTION TO MGA

1        G.    "BRATZ" means any project ever known by that name

2    (whether in whole or in part and regardless of what such project is or has been

3    also, previously or subsequently called) and any doll or any portion thereof that is

4    now or has ever been known as, or sold or marketed under, the name or term

5    "Bratz" (whether in whole or in part and regardless of what such doll is or has

6    been also, previously or subsequently called) or that is now or has ever been sold

7    or marketed as part of the "Bratz" line, and all prototypes, models, samples and

8    versions of such doll or any portion thereof.

9        H.    "ANGEL" means any project that is the subject of

10   MGA000706-08, MGA000710-12, MGA000714-16, MGA000718-20,

11   MGA000724-28 and MGA000734, and any doll (sometimes purportedly called

12   "Angel," "Angel Faces" and/or "Prayer Angels") or any portion thereof that is the

13   subject of MGA000706-08, MGA000710-12, MGA000714-16, MGA000718-20,

14   MGA000724-28 and MGA000734, including all prototypes, models, samples and

15   versions of such doll(s) or any portion thereof.  Without limiting the generality of

16   the foregoing, "ANGEL" means any project or any doll or any portion thereof that

17   is the subject of MGA000706-08, MGA000710-12, MGA000714-16,

18   MGA000718-20, MGA000724-28 and MGA000734, regardless of what any such

19   project or doll has in fact been called, and regardless of what any such project or

20   doll is or has been also, previously or subsequently called.

21       I.    "DESIGNS" means any and all works, designs, artwork,

22   sketches, drawings, illustrations, representations, depictions, blueprints,

23   schematics, diagrams, descriptions, sculptures, prototypes, models, samples,

24   reductions to practice, developments, know-how, ideas, concepts, inventions

25   and/or improvements, as well as all other items, things and DOCUMENTS in

26   which any of the foregoing are or have been expressed, embodied, contained,

27   fixed or reflected in any manner, whether in whole or in part.

28

EXHIBIT __23__ PAGE _268_

FIRST REQUEST FOR PRODUCTION TO MGA

1      J.    "COMMUNICATION" or "COMMUNICATIONS" means and
2   includes any disclosure, transfer or exchange of information between two or more
3   PERSONS, whether orally or in writing, including, without limitation, any
4   conversation or discussion by means of meeting, letter, telephone, note,
5   memorandum, telegraph, telex, telecopier, electronic mail, or any other electronic
6   or other medium, including without limitation in written, audio or video form.

7      K.    The singular form of a noun or pronoun includes within its
8   meaning the plural form of the noun or pronoun so used, and *vice versa*; the use of
9   the masculine form of a pronoun also includes within its meaning the feminine
10  form of the pronoun so used, and *vice versa*; the use of any tense of any verb
11  includes also within its meaning all other tenses of the verb so used, whenever
12  such construction results in a broader request for information; and "and" includes
13  "or" and *vice versa*, whenever such construction results in a broader disclosure of
14  documents or information.

16              INSTRUCTIONS

18      A.    Unless otherwise specified, these requests call for
19  DOCUMENTS prepared on or after January 1, 1995 through the present.
20  Documents shall be produced in their original file folders, or in lieu thereof, any
21  writing on the file folder from which each such document is taken shall be copied
22  and appended to such document and the person for whom or department, division,
23  or office for which the document or the file folder is maintained shall be
24  identified.

25      B.    YOU are to produce all DOCUMENTS requested hereby that
26  are in YOUR possession, custody and control.

27      C.    In the event that any document called for by these requests is to
28  be withheld on the basis of a claim of privilege or immunity from discovery, that

-5-

**EXHIBIT 23 PAGE 269**

1  document is to be identified by stating (i) any addressor and addressee; (ii) any

2  indicated or blind copy; (iii) the document's date, subject matter, number of pages,

3  and attachments or appendices; (iv) all persons to whom the document was

4  distributed, shown, or explained; (v) its present custodian; and (vi) the nature of

5  the privilege or immunity asserted.

6      D.    In the event that any document called for by these requests has

7  been destroyed or discarded, that document is to be identified by stating: (i) any

8  addressor and addressee; (ii) any indicated or blind copies; (iii) the document's

9  date, subject matter, number of pages, and attachments or appendices; (iv) all

10  persons to whom the document was distributed, shown, or explained; (v) the date

11  of destruction or discard, manner of destruction or discard, and reason for

12  destruction or discard; (vi) the persons who were authorized to carry out such

13  destruction or discard; and (vii) whether any copies of the document presently

14  exist and, if so, the name of the custodian of each copy.

15

16                    REQUESTS FOR PRODUCTION

17

18  REQUEST FOR PRODUCTION NO. 1:

19      All DOCUMENTS that REFER OR RELATE TO any agreement or

20  contract between YOU and BRYANT, including without limitation all drafts

21  thereof and all actual or proposed amendments, modifications and revisions

22  thereto.

23

24  REQUEST FOR PRODUCTION NO. 2:

25      All DOCUMENTS that REFER OR RELATE TO the performance of

26  any agreement or contract between YOU and BRYANT.

27

28

EXHIBIT 2 3  PAGE 2 70

FIRST REQUEST FOR PRODUCTION TO MGA

REQUEST FOR PRODUCTION NO. 3:

ALL DOCUMENTS that REFER OR RELATE TO the agreement dated as of September 18, 2000 between YOU and BRYANT, including without limitation all drafts thereof and any actual or proposed modifications, amendments or revisions thereto.

REQUEST FOR PRODUCTION NO. 4:

ALL DOCUMENTS that REFER OR RELATE TO the Modification and Clarification of the Agreement dated as of September 18, 2000 between YOU and BRYANT, including without limitation all drafts thereof and any actual or proposed modifications, amendments or revisions thereto.

REQUEST FOR PRODUCTION NO. 5:

ALL DOCUMENTS that REFER OR RELATE TO the agreement dated April 2001 between YOU and BRYANT, including without limitation all drafts thereof and any actual or proposed modifications, amendments or revisions thereto.

REQUEST FOR PRODUCTION NO. 6:

All DOCUMENTS prepared, created, received or transmitted (whether in whole or in part) prior to January 1, 2001 that REFER OR RELATE TO BRYANT.

REQUEST FOR PRODUCTION NO. 7:

All DOCUMENTS that REFER OR RELATE TO any work, activities or services, including without limitation any freelance work or consulting services, that BRYANT performed for or with YOU or on YOUR

EXHIBIT 23 PAGE 271

FIRST REQUEST FOR PRODUCTION TO MGA

1  behalf prior to January 1, 2001 (regardless of when any such DOCUMENT was

2  prepared, created, received or transmitted, whether in whole or in part).

3

4  REQUEST FOR PRODUCTION NO. 8:

5        All DOCUMENTS that REFER OR RELATE TO any work,

6  activities or services, including without limitation any freelance work or

7  consulting services, that Anna Rhee performed for or with YOU or on YOUR

8  behalf prior to January 1, 2001 (regardless of when any such DOCUMENT was

9  prepared, created, received or transmitted, whether in whole or in part).

10

11  REQUEST FOR PRODUCTION NO. 9:

12        All DOCUMENTS that REFER OR RELATE TO any work,

13  activities or services, including without limitation any freelance work or

14  consulting services, that Veronica Marlow performed for or with YOU or on

15  YOUR behalf prior to January 1, 2001 (regardless of when any such DOCUMENT

16  was prepared, created, received or transmitted, whether in whole or in part).

17

18  REQUEST FOR PRODUCTION NO. 10:

19        All DOCUMENTS that REFER OR RELATE TO any work,

20  activities or services, including without limitation any freelance work or

21  consulting services, that Sarah Halpern performed for or with YOU or on YOUR

22  behalf prior to January 1, 2001 (regardless of when any such DOCUMENT was

23  prepared, created, received or transmitted, whether in whole or in part).

24

25  REQUEST FOR PRODUCTION NO. 11:

26        All DOCUMENTS that REFER OR RELATE TO any work,

27  activities or services, including without limitation any freelance work or

28  consulting services, that Jesse Ramirez performed for or with YOU or on YOUR

EXHIBIT 23 PAGE 272

-8-

1  behalf prior to January 1, 2001 (regardless of when any such DOCUMENT was
2  prepared, created, received or transmitted, whether in whole or in part).

3

4  REQUEST FOR PRODUCTION NO. 12:
5       All DOCUMENTS that REFER OR RELATE TO any work,
6  activities or services, including without limitation any freelance work or
7  consulting services, that Margaret Hatch (also known as Margaret Leahy and/or
8  Margaret Hatch-Leahy) performed for or with YOU or on YOUR behalf prior to
9  January 1, 2001 (regardless of when any such DOCUMENT was prepared,
10  created, received or transmitted, whether in whole or in part).

11

12  REQUEST FOR PRODUCTION NO. 13:
13       All DOCUMENTS that REFER OR RELATE TO any work,
14  activities or services, including without limitation any freelance work or
15  consulting services, that Elise Cloonan performed for or with YOU or on YOUR
16  behalf prior to January 1, 2001 (regardless of when any such DOCUMENT was
17  prepared, created, received or transmitted, whether in whole or in part).

18

19  REQUEST FOR PRODUCTION NO. 14:
20       All agreements and contracts between YOU and Anna Rhee,
21  including without limitation all drafts thereof and amendments, modifications and
22  revisions thereto.

23

24  REQUEST FOR PRODUCTION NO. 15:
25       All DOCUMENTS that REFER OR RELATE TO any agreement or
26  contract between YOU and Anna Rhee, including without limitation all
27  COMMUNICATIONS that REFER OR RELATE thereto.

28

**EXHIBIT 23 PAGE 223**

-9-

FIRST REQUEST FOR PRODUCTION TO MGA

**REQUEST FOR PRODUCTION NO. 16:**

All agreements and contracts between YOU and Veronica Marlow, including without limitation all drafts thereof and amendments, modifications and revisions thereto.

**REQUEST FOR PRODUCTION NO. 17:**

All DOCUMENTS that REFER OR RELATE TO any agreement or contract between YOU and Veronica Marlow, including without limitation all COMMUNICATIONS that REFER OR RELATE thereto.

**REQUEST FOR PRODUCTION NO. 18:**

All agreements and contracts between YOU and Margaret Hatch (also known as Margaret Leahy and/or Margaret Hatch-Leahy), including without limitation all drafts thereof and amendments, modifications and revisions thereto.

**REQUEST FOR PRODUCTION NO. 19:**

All DOCUMENTS that REFER OR RELATE TO any agreement or contract between YOU and Margaret Hatch (also known as Margaret Leahy and/or Margaret Hatch-Leahy), including without limitation all COMMUNICATIONS that REFER OR RELATE thereto.

**REQUEST FOR PRODUCTION NO. 20:**

All agreements and contracts between YOU and Sarah Halpern, including without limitation all drafts thereof and amendments, modifications and revisions thereto.

EXHIBIT _23_ PAGE _274_

FIRST REQUEST FOR PRODUCTION TO MGA

REQUEST FOR PRODUCTION NO. 21:

All DOCUMENTS that REFER OR RELATE TO any agreement or contract between YOU and Sarah Halpern, including without limitation all COMMUNICATIONS that REFER OR RELATE thereto.

REQUEST FOR PRODUCTION NO. 22:

All agreements and contracts between YOU and Jesse Ramirez, including without limitation all drafts thereof and amendments, modifications and revisions thereto.

REQUEST FOR PRODUCTION NO. 23:

All DOCUMENTS that REFER OR RELATE TO any agreement or contract between YOU and Jesse Ramirez, including without limitation all COMMUNICATIONS that REFER OR RELATE thereto.

REQUEST FOR PRODUCTION NO. 24:

All agreements and contracts between YOU and Elise Cloonan, including without limitation all drafts thereof and amendments, modifications and revisions thereto.

REQUEST FOR PRODUCTION NO. 25:

All DOCUMENTS that REFER OR RELATE TO any agreement or contract between YOU and Elise Cloonan, including without limitation all COMMUNICATIONS that REFER OR RELATE thereto.

EXHIBIT 23 PAGE 225

FIRST REQUEST FOR PRODUCTION TO MGA

1  REQUEST FOR PRODUCTION NO. 26:

2       All DOCUMENTS that REFER OR RELATE TO DESIGNS that

3  BRYANT produced, prepared, created, authored, conceived of or reduced to

4  practice, whether alone or jointly with others, prior to January 1, 2001.

5

6  REQUEST FOR PRODUCTION NO. 27:

7       All DOCUMENTS that REFER OR RELATE TO DESIGNS

8  produced, prepared, created, authored, conceived of or reduced to practice prior to

9  January 1, 2001 by BRYANT, whether alone or jointly with others, in which YOU

10  have purported at any time to purchase, acquire or own any right, title or interest

11  (whether in whole or in part).

12

13  REQUEST FOR PRODUCTION NO. 28:

14       All DOCUMENTS that REFER OR RELATE TO DESIGNS

15  produced, prepared, created, authored, conceived of or reduced to practice prior to

16  January 1, 2001 by Margaret Hatch (also known as Margaret Leahy and/or

17  Margaret Hatch-Leahy), whether alone or jointly with others, in which YOU have

18  purported at any time to purchase, acquire or own any right, title or interest

19  (whether in whole or in part).

20

21  REQUEST FOR PRODUCTION NO. 29:

22       All DOCUMENTS, including without limitation all

23  COMMUNICATIONS between YOU and any PERSON, that REFER OR

24  RELATE TO any agreement or contract between BRYANT and Mattel, Inc.

25

26  REQUEST FOR PRODUCTION NO. 30:

27       All DOCUMENTS, including without limitation all

28  COMMUNICATIONS between YOU and any PERSON, that REFER OR

EXHIBIT __2-3__ PAGE __276__

07209/642197.1

-12-

FIRST REQUEST FOR PRODUCTION TO MGA

1  RELATE TO any agreement or contract between Margaret Hatch (also known as
2  Margaret Leahy and/or Margaret Hatch-Leahy) and Mattel, Inc.

3

4  REQUEST FOR PRODUCTION NO. 31:

5       All COMMUNICATIONS between YOU and BRYANT that REFER
6  OR RELATE TO Mattel, Inc. or any officer, director, employee or representative
7  of Mattel, Inc.

8

9  REQUEST FOR PRODUCTION NO. 32:

10      All DOCUMENTS prepared, written, transmitted or received
11  (whether in whole or in part) prior to January 1, 2001 that REFER OR RELATE
12  TO BRATZ.

13

14  REQUEST FOR PRODUCTION NO. 33:

15      All DOCUMENTS that REFER OR RELATE TO BRATZ that
16  REFER OR RELATE TO any time prior to January 1, 2001 (regardless of when
17  such document was prepared, written, transmitted or received, whether in whole or
18  in part).

19

20  REQUEST FOR PRODUCTION NO. 34:

21      All DOCUMENTS prepared, written, transmitted or received
22  (whether in whole or in part) prior to January 1, 2001 that REFER OR RELATE
23  TO ANGEL.

24

25  REQUEST FOR PRODUCTION NO. 35:

26      All DOCUMENTS that REFER OR RELATE TO ANGEL that
27  REFER OR RELATE TO any time prior to January 1, 2001 (regardless of when

28

1  such document was prepared, written, transmitted or received, whether in whole or

2  in part).

3

4  REQUEST FOR PRODUCTION NO. 36:

5           All DOCUMENTS that REFER OR RELATE TO the origin(s),

6  conception or creation of BRATZ, including without limitation all DOCUMENTS

7  that REFER OR RELATE TO the timing of, and the method and manner in which,

8  BRATZ first came to YOUR attention.

9

10  REQUEST FOR PRODUCTION NO. 37:

11          All declarations, affidavits and other sworn written statements of any

12  other type or form by YOU that REFER OR RELATE TO BRATZ (other than

13  those previously filed and served in this action).

14

15  REQUEST FOR PRODUCTION NO. 38:

16          All transcripts and video and/or audio recordings of statements made

17  by YOU under oath, including without limitation all deposition transcripts, trial

18  transcripts and arbitration transcripts, that REFER OR RELATE TO BRATZ

19  (other than those taken in this action when Mattel, Inc.'s counsel was in

20  attendance).

21

22  REQUEST FOR PRODUCTION NO. 39:

23          All declarations, affidavits and other sworn written statements of any

24  other type or form by any PERSON that REFER OR RELATE TO ANGEL (other

25  than those previously filed and served in this action).

26

27

28

EXHIBIT _2-3_ PAGE _228_

07209/642197.1

FIRST REQUEST FOR PRODUCTION TO MGA

1    REQUEST FOR PRODUCTION NO. 40:

2         All transcripts and video and/or audio recordings of statements made

3 by any PERSON under oath, including without limitation all deposition

4 transcripts, trial transcripts and arbitration transcripts, that REFER OR RELATE

5 TO ANGEL (other than those taken in this action when Mattel, Inc.'s counsel was

6 in attendance).

7

8    REQUEST FOR PRODUCTION NO. 41:

9         All DOCUMENTS that REFER OR RELATE TO BRATZ and/or

10 ANGEL filed, submitted or served in the suit and/or arbitration proceedings

11 brought by Farhad Larian against Isaac Larian, including without limitation all

12 declarations, affidavits and sworn testimony given by any PERSON in such suit or

13 arbitration proceedings.

14

15    REQUEST FOR PRODUCTION NO. 42:

16         All DOCUMENTS that REFER OR RELATE TO any payment made

17 to or on behalf of BRYANT prior to October 21, 2000 or for work or services

18 performed by BRYANT prior to October 21, 2000 regardless of when such

19 payment was actually made.

20

21    REQUEST FOR PRODUCTION NO. 43:

22         All DOCUMENTS that REFER OR RELATE TO any payment made

23 to or on behalf of BRYANT for DESIGNS that BRYANT assigned or transferred

24 to YOU prior to October 21, 2000, regardless of when such payment was actually

25 made.

26

27

28

EXHIBIT 2-3 PAGE 229

-15-

FIRST REQUEST FOR PRODUCTION TO MGA

**REQUEST FOR PRODUCTION NO. 44:**

All DOCUMENTS that REFER OR RELATE TO invoices submitted by BRYANT to YOU prior to January 31, 2001.

**REQUEST FOR PRODUCTION NO. 45:**

All of YOUR royalty statements to or for BRYANT.

**REQUEST FOR PRODUCTION NO. 46:**

All DOCUMENTS that REFER OR RELATE TO BRYANT'S participation in the conception, creation, design, development, sculpting, tooling, production or manufacture of BRATZ.

**REQUEST FOR PRODUCTION NO. 47:**

All DOCUMENTS that REFER OR RELATE TO BRYANT'S participation in the conception, creation, design, development, sculpting, tooling, production or manufacture of ANGEL.

**REQUEST FOR PRODUCTION NO. 48:**

All non-privileged COMMUNICATIONS between YOU and any PERSON that REFER OR RELATE TO this action.

**REQUEST FOR PRODUCTION NO. 49:**

All DOCUMENTS that REFER OR RELATE TO any indemnification that BRYANT has sought, proposed, requested or obtained in connection with this action.

EXHIBIT 23 PAGE 280

FIRST REQUEST FOR PRODUCTION TO MGA

REQUEST FOR PRODUCTION NO. 50:

All DOCUMENTS that REFER OR RELATE TO any indemnification that YOU have sought, proposed, requested or obtained in connection with this action.

REQUEST FOR PRODUCTION NO. 51:

All DOCUMENTS that REFER OR RELATE TO each and every sculpt of BRATZ (including without limitation any model, prototype or sample thereof) prior to June 1, 2001.

REQUEST FOR PRODUCTION NO. 52:

All DOCUMENTS that REFER OR RELATE TO each and every sculpt of ANGEL (including without limitation any model, prototype or sample thereof).

REQUEST FOR PRODUCTION NO. 53:

All DOCUMENTS that REFER OR RELATE TO the procurement, fabrication, preparation and production of each and every mold for BRATZ (including without limitation for any model, prototype or sample thereof) prior June 1, 2001, including without limitation all orders, purchase orders and invoices relating thereto.

REQUEST FOR PRODUCTION NO. 54:

DOCUMENTS sufficient to show when any mold for ANGEL (including without limitation for any model, prototype or sample thereof) was first ordered, procured, fabricated, prepared and produced.

EXHIBIT _23_ PAGE _281_

-17-

FIRST REQUEST FOR PRODUCTION TO MGA

1 REQUEST FOR PRODUCTION NO. 55:

2          All DOCUMENTS that REFER OR RELATE TO the exhibition, or

3 proposed, offered or requested exhibition, of BRATZ (including without limitation

4 any model, prototype or sample thereof) to any third party prior to June 1, 2001.

5

6 REQUEST FOR PRODUCTION NO. 56:

7          DOCUMENTS sufficient to show when ANGEL (including without

8 limitation any model, prototype or sample thereof) was first exhibited to any third

9 party.

10

11 REQUEST FOR PRODUCTION NO. 57:

12          DOCUMENTS sufficient to show when and where BRATZ

13 (including without limitation any model, prototype or sample thereof) was first

14 marketed to any wholesaler, distributor and/or retailer.

15

16 REQUEST FOR PRODUCTION NO. 58:

17          DOCUMENTS sufficient to show when and where ANGEL

18 (including without limitation any model, prototype or sample thereof) was first

19 marketed to any wholesaler, distributor and/or retailer.

20

21 REQUEST FOR PRODUCTION NO. 59:

22          DOCUMENTS sufficient to show when and where BRATZ

23 (including without limitation any model, prototype or sample thereof) was first

24 offered for sale to any wholesaler, distributor and/or retailer.

25

26

27

28

EXHIBIT 23 PAGE 282

-18-

FIRST REQUEST FOR PRODUCTION TO MGA

REQUEST FOR PRODUCTION NO. 60:

DOCUMENTS sufficient to show when and where ANGEL (including without limitation any model, prototype or sample thereof) was first offered for sale by YOU to any wholesaler, distributor and/or retailer.

REQUEST FOR PRODUCTION NO. 61:

DOCUMENTS sufficient to show when and where BRATZ was first shipped, distributed and sold.

REQUEST FOR PRODUCTION NO. 62:

DOCUMENTS sufficient to show when and where ANGEL was first shipped, distributed and sold.

REQUEST FOR PRODUCTION NO. 63:

All DOCUMENTS that REFER OR RELATE TO the licensing, including without limitation the proposed or requested licensing, of BRATZ prior to December 31, 2001.

REQUEST FOR PRODUCTION NO. 64:

All COMMUNICATIONS between YOU and any manufacturer, or any contemplated, proposed or potential manufacturer, that REFER OR RELATE TO BRATZ prior to June 1, 2001.

REQUEST FOR PRODUCTION NO. 65:

DOCUMENTS sufficient to identify when YOU first contacted any manufacturer, or any contemplated, proposed or potential manufacturer, for the manufacture of ANGEL.

EXHIBIT 2.3 PAGE 283

07209/642197.1

FIRST REQUEST FOR PRODUCTION TO MGA

1  REQUEST FOR PRODUCTION NO. 66:

2         All COMMUNICATIONS between YOU and any PERSON that

3  REFER OR RELATE TO the distribution or proposed or potential distribution of

4  BRATZ prior to June 1, 2001.

5

6  REQUEST FOR PRODUCTION NO. 67:

7         All COMMUNICATIONS between YOU and Universal Commerce

8  Corp., Ltd. prior to June 1, 2001.

9

10  REQUEST FOR PRODUCTION NO. 68:

11         All DOCUMENTS that REFER OR RELATE TO Mattel, Inc., or that

12  were prepared, authored or created by Mattel, Inc. or any officer, director,

13  employee or representative of Mattel, Inc., that BRYANT has ever provided to,

14  shown, described to, communicated to or disclosed in any manner to YOU.

15

16  REQUEST FOR PRODUCTION NO. 69:

17         All COMMUNICATIONS between YOU and BRYANT prior to

18  January 1, 2001, including without limitation all diaries, notes, calendars, logs,

19  phone records and letters, that reflect, record or memorialize or otherwise REFER

20  OR RELATE TO any such COMMUNICATIONS.

21

22  REQUEST FOR PRODUCTION NO. 70:

23         All COMMUNICATIONS between YOU and Elise Cloonan that

24  REFER OR RELATE TO BRYANT, Mattel, Inc., BRATZ and/or Anna Rhee,

25  including without limitation all diaries, notes, calendars, logs, phone records and

26  letters, that reflect, record or memorialize or otherwise REFER OR RELATE TO

27  any such COMMUNICATIONS.

28

EXHIBIT _2 3_ PAGE _284_

FIRST REQUEST FOR PRODUCTION TO MGA

1  REQUEST FOR PRODUCTION NO. 71:

2      All COMMUNICATIONS between YOU and Elise Cloonan prior to

3  June 11, 2002, including without limitation all diaries, notes, calendars, logs,

4  phone records and letters, that reflect, record or memorialize or otherwise REFER

5  OR RELATE TO any such COMMUNICATIONS.

6

7  REQUEST FOR PRODUCTION NO. 72:

8      All COMMUNICATIONS between YOU and Veronica Marlow prior

9  to January 1, 2001, including without limitation all diaries, notes, calendars, logs,

10  phone records and letters, that reflect, record or memorialize or otherwise REFER

11  OR RELATE TO any such COMMUNICATIONS.

12

13  REQUEST FOR PRODUCTION NO. 73:

14      All COMMUNICATIONS between YOU and Mercedeh Ward prior

15  to November 6, 2000, including without limitation all diaries, notes, calendars,

16  logs, phone records and letters, that reflect, record or memorialize or otherwise

17  REFER OR RELATE TO any such COMMUNICATIONS.

18

19  REQUEST FOR PRODUCTION NO. 74:

20      All COMMUNICATIONS between YOU and Margaret Hatch (also

21  known as Margaret Leahy and/or Margaret Hatch-Leahy) prior to January 1, 2001,

22  including without limitation all diaries, notes, calendars, logs, phone records and

23  letters, that reflect, record or memorialize or otherwise REFER OR RELATE TO

24  any such COMMUNICATIONS.

25

26  REQUEST FOR PRODUCTION NO. 75:

27      All COMMUNICATIONS between YOU and Anna Rhee prior to

28  January 1, 2001, including without limitation all diaries, notes, calendars, logs,

EXHIBIT __2 3__ PAGE __285__

07209/642197.1

FIRST REQUEST FOR PRODUCTION TO MGA

1   phone records and letters, that reflect, record or memorialize or otherwise REFER

2   OR RELATE TO any such COMMUNICATIONS.

3

4   REQUEST FOR PRODUCTION NO. 76:

5            All COMMUNICATIONS between Veronica Marlow and Anna Rhee

6   prior to January 1, 2001, including without limitation all diaries, notes, calendars,

7   logs, phone records and letters, that reflect, record or memorialize or otherwise

8   REFER OR RELATE TO any such COMMUNICATIONS.

9

10  REQUEST FOR PRODUCTION NO. 77:

11           All COMMUNICATIONS between YOU and Sarah Halpern prior to

12  January 1, 2001, including without limitation all diaries, notes, calendars, logs,

13  phone records and letters, that reflect, record or memorialize or otherwise REFER

14  OR RELATE TO any such COMMUNICATIONS.

15

16  REQUEST FOR PRODUCTION NO. 78:

17           All COMMUNICATIONS between YOU and Jesse Ramirez prior to

18  January 1, 2001, including without limitation all diaries, notes, calendars, logs,

19  phone records and letters, that reflect, record or memorialize or otherwise REFER

20  OR RELATE TO any such COMMUNICATIONS.

21

22  REQUEST FOR PRODUCTION NO. 79:

23           Any personnel or vendor file that YOU have created or maintained

24  concerning BRYANT.

25

26  REQUEST FOR PRODUCTION NO. 80:

27           Any personnel file that YOU have created or maintained concerning

28  Paula Treantafellas.

EXHIBIT 23 PAGE 286

1  REQUEST FOR PRODUCTION NO. 81:

2        Any personnel file that YOU have created or maintained concerning

3  Mercedeh Ward.

4

5  REQUEST FOR PRODUCTION NO. 82:

6        Any personnel or vendor file that YOU have created or maintained

7  concerning Margaret Hatch (also known as Margaret Leahy and/or Margaret

8  Hatch-Leahy).

9

10  REQUEST FOR PRODUCTION NO. 83:

11        Any personnel or vendor file that YOU have created or maintained

12  concerning Veronica Marlow.

13

14  REQUEST FOR PRODUCTION NO. 84:

15        Any personnel or vendor file that YOU have created or maintained

16  concerning Anna Rhee.

17

18  REQUEST FOR PRODUCTION NO. 85:

19        Any personnel or vendor file that YOU have created or maintained

20  concerning Jessie Ramirez.

21

22  REQUEST FOR PRODUCTION NO. 86:

23        Any personnel file that YOU have created or maintained concerning

24  Shirin Salemnia.

25

26  REQUEST FOR PRODUCTION NO. 87:

27        Any personnel file that YOU have created or maintained concerning

28  Victoria O'Connor.

EXHIBIT _2 3_ PAGE _287_

FIRST REQUEST FOR PRODUCTION TO MGA

1  REQUEST FOR PRODUCTION NO. 88:

2          Any personnel file that YOU have created or maintained concerning

3  Farhad Larian.

4

5  REQUEST FOR PRODUCTION NO. 89:

6          All telephone records for MGA Entertainment Inc. for the time period

7  from January 1, 1998 through January 1, 2001.

8

9  REQUEST FOR PRODUCTION NO. 90:

10          All DOCUMENTS that REFER OR RELATE TO any copyright,

11  patent or any other application or registration for BRATZ DESIGNS, including

12  without limitation all COMMUNICATIONS pertaining thereto.

13

14  REQUEST FOR PRODUCTION NO. 91:

15          All DOCUMENTS that REFER OR RELATE TO any copyright,

16  patent or any other application or registration for ANGEL DESIGNS, including

17  without limitation all COMMUNICATIONS pertaining thereto.

18

19  REQUEST FOR PRODUCTION NO. 92:

20          All DOCUMENTS that REFER OR RELATE TO any testing of or

21  sampling from any DOCUMENTS that REFER OR RELATE TO BRATZ or

22  BRYANT, including without limitation any such testing or sampling in connection

23  with any ink, paper or chemical analysis to date any such DOCUMENTS and

24  including without limitation all results and reports relating thereto.

25

26

27

28

EXHIBIT _2 3_ PAGE _288_

07209/642197.1

FIRST REQUEST FOR PRODUCTION TO MGA

REQUEST FOR PRODUCTION NO. 93:

An electronic copy of each DOCUMENT that YOU have produced in this action, or that is responsive to these Requests, that is or was created, prepared, generated, maintained or transmitted in digital form.

REQUEST FOR PRODUCTION NO. 94:

The metadata for each DOCUMENT that YOU have produced in this action, or that is responsive to these Requests, that is or was created, prepared, generated, maintained or transmitted in digital form.

REQUEST FOR PRODUCTION NO. 95:

All DOCUMENTS that support, refute or otherwise REFER OR RELATE TO any facts underlying YOUR Affirmative Defenses in this action.

REQUEST FOR PRODUCTION NO. 96:

All doll heads, sculpts, prototypes, models, samples and tangible items that were created, prepared or made, whether in whole or in part, prior to January 1, 2001 that REFER OR RELATE TO BRATZ.

REQUEST FOR PRODUCTION NO. 97:

All doll heads, sculpts, prototypes, models, samples and tangible items that were created, prepared or made, whether in whole or in part, prior to January 1, 2001 that REFER OR RELATE TO ANGEL.

REQUEST FOR PRODUCTION NO. 98:

All doll heads, sculpts, prototypes, models, samples and tangible items that Anna Rhee painted, whether in whole or in part, for or with YOU or on YOUR behalf or for or on behalf of BRYANT prior to January 1, 2001.

EXHIBIT __23__ PAGE __289__

1   <u>REQUEST FOR PRODUCTION NO. 99</u>:

2          All doll heads, sculpts, prototypes, models, samples and tangible

3   items that REFER OR RELATE TO DESIGNS for dolls, doll accessories or toys

4   that BRYANT produced, created, authored, conceived of or reduced to practice,

5   whether alone or jointly with others, prior to January 1, 2001.

6

7   <u>REQUEST FOR PRODUCTION NO. 100</u>:

8          All doll heads, sculpts, prototypes, models, samples and tangible

9   items that support, refute or otherwise REFER OR RELATE TO any facts

10  underlying YOUR Affirmative Defenses in this action.

11

12  DATED:  March 14, 2005          QUINN EMANUEL URQUHART

13                                  OLIVER & HEDGES, LLP

14                                  By _____

15                                  Shane Heather McKenzie

16                                  Attorneys for Plaintiff/Counter-defendant
                                    Mattel, Inc.

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT _23_ PAGE _270_

FIRST REQUEST FOR PRODUCTION TO MGA

# EXHIBIT 24

1 | QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
   John B. Quinn (Bar No. 090378)
2 |   johnquinn@quinnemanuel.com
   Michael T. Zeller (Bar No. 196417)
3 |   (michaelzeller@quinnemanuel.com)
   Jon D. Corey (Bar No. 185066)
4 |   (joncorey@quinnemanuel.com)
   Timothy L. Alger (Bar No. 160303)
5 |   (timalger@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
6 | Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
7 | Facsimile: (213) 443-3100

8 | Attorneys for Mattel, Inc.

9 | UNITED STATES DISTRICT COURT

10 | CENTRAL DISTRICT OF CALIFORNIA

11 | EASTERN DIVISION

| | |
|---|---|
| 12 CARTER BRYANT, an individual, | Case No. CV 04-09049 SGL (RNBx) |
| 13 Plaintiff, | Consolidated with Case No. CV 04-09059 Case No. CV 05-02727 |
| 14 vs. | **DISCOVERY MATTER** |
| 15 MATTEL, INC., a Delaware corporation, | **Hon. Edward A. Infante (Ret.)** |
| 16 Defendant. | **Discovery Master** |
| 17 | [~~PROPOSED~~] ORDER REGARDING MATTEL, INC.'S MOTION TO |
| 18 AND CONSOLIDATED CASES | ENFORCE THE COURT'S ORDER OF MAY 15, 2007, TO (I) COMPEL |
| 19 | MGA TO PRODUCE COMPELLED DOCUMENTS (INCLUDING FEE |
| 20 | AND/OR INDEMNITY AGREEMENTS BETWEEN MGA |
| 21 | AND BRYANT), (II) ORDER THAT ANY PRIVILEGE OBJECTIONS |
| 22 | HAVE BEEN WAIVED, AND (III) IMPOSE SANCTIONS |
| 23 | Date: December 14, 2007 |
| 24 | Time: 10:45 a.m. Place: JAMS |
| 25 | |
| 26 | **Phase I:** Discovery Cut-Off: January 28, 2008 |
| 27 | Pre-Trial Conference: May 5, 2008 Trial Date: May 27, 2008 |
| 28 | |

*12-19*

07209/2326426.1

PROPOSED ORDER

EXHIBIT 24 PAGE 291

**[PROPOSED] ORDER**

Mattel, Inc.'s Motion to Enforce the Court's Order of May 15, 2007 to (I) Compel MGA to Produce Compelled Documents (Including Fee and/or Indemnity Agreements Between MGA And Bryant), (II) Order That Any Privilege Objections Have Been Waived, and (III) Impose Sanctions (the "Motion") came on for hearing before me on December 14, 2007. The matter having been fully briefed and argued, and good cause appearing, IT IS HEREBY ORDERED THAT:

1.  The Motion is GRANTED IN PART AND DENIED IN PART.

2.  MGA Entertainment, Inc. ("MGA") shall produce all non-privileged documents responsive to Request Nos. 1, 2, 49 and 50 in Mattel's First Set of Requests for Production dated March 14, 2005, including documents relating to fee and/or indemnity agreements between Carter Bryant and MGA, as the Discovery Master previously ordered in his May 15, 2007 Order;

3.  MGA shall identify any and all documents withheld from its production pursuant to Paragraph 1 above as privileged on a privilege log.

4.  Mattel's request that the privilege be deemed waived is DENIED;

5.  MGA and/or its prior counsel of record shall pay Mattel monetary sanctions in the amount of $3,500; and

6.  The foregoing requirements shall be satisfied on or before December 31, 2007.

**IT IS SO ORDERED.**

DATED: _/2-19—_, 2007

_Edward A. Infante_
Hon. Edward A. Infante (Ret.)
Discovery Master

EXHIBIT 24 PAGE 292

# EXHIBIT 25



1  THOMAS J. NOLAN (Bar No. 66992)
   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2  300 South Grand Avenue
   Los Angeles, California 90071-3144
3  Telephone:   (213) 687-5000
   Facsimile:   (213) 687-5600
4  E-mail:   tnolan@skadden.com

5  RAOUL D. KENNEDY (Bar No. 40892)
   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
6  4 Embarcadero Center, 38th Floor
   San Francisco, California 94111-5974
7  Telephone:   (415) 984-6400
   Facsimile:   (415) 984-2698
8  Email:   rkennedy@skadden.com

9  Attorneys for MGA Entertainment, Inc.,
   MGA Entertainment (HK) Limited,
10 MGAE De Mexico, S.R.L. DE C.V., and
   Isaac Larian

11

12              UNITED STATES DISTRICT COURT

13             CENTRAL DISTRICT OF CALIFORNIA

14                    EASTERN DIVISION

15  CARTER BRYANT, an individual          )   CASE NO. CV 04-9049 SGL (RNBx)
                                          )
16              Plaintiff,                )   Consolidated with Case No. 04-9059 and
                                          )   Case No. 05-2727
17       v.                               )
                                          )   **DISCOVERY MATTER**
18  MATTEL, INC., a Delaware              )
    corporation                          )   **[To be heard by Discovery Master**
19                                        )   **Hon. Edward A. Infante (Ret.)]**
                Defendant.                )
20                                        )   [~~PROPOSED~~] ORDER RE
    _____       )   MATTEL, INC.'S MOTION TO
21  Consolidated with MATTEL, INC. v.     )   ENFORCE THE COURT'S ORDER
    BRYANT and MGA                        )   OF MAY 15, 2007 TO COMPEL
22  ENTERTAINMENT, INC. v.                )   MGA TO PRODUCE COMPELLED
    MATTEL, INC.                          )   DOCUMENTS IN UNREDACTED
23                                        )   FORM AND FOR SANCTIONS

24

25

26

27

28
                              12-19
       [PROPOSED] ORDER RE MATTEL'S MOT. TO ENFORCE COURT'S ORDER OF MAY 15, 2007

EXHIBIT 25 PAGE 293

1   Mattel, Inc.'s Motion to Enforce the Court's Order of May 15, 2007 to Compel
2 MGA to Produce Compelled Documents in Un-Redacted Form, and for Sanctions
3 came on for hearing before me on December 14, 2007. The matter having been fully
4 briefed and argued, and good cause appearing, IT IS HEREBY ORDERED THAT:
5   The motion is granted in part and denied in part. The Court finds that MGA
6 violated the May 15 Order by producing documents containing information redacted
7 for reasons other than privilege, and that MGA's failure to comply with the May 15
8 Order was not justified. MGA, or its prior counsel, is to pay Mattel monetary
9 sanctions in the amount of $3,500 on or before December 31, 2007. The Court
10 further finds that MGA has now achieved substantial compliance with the May 15
11 Order's requirement that it produce its documents in unredacted form. MGA's
12 proposal that when Mattel's counsel finds a redacted document, Mattel should so
13 inform MGA's counsel, who will then advise whether the redactions are proper
14 because they are based on a claim of privilege or, if they are not, promptly produce a
15 properly redacted copy of the document, is reasonable and shall be followed. The
16 motion is denied in all other respects.
17   IT IS SO ORDERED.
18
19 Dated: 12-19-2007, 2007
20                                         Hon. Edward A. Infante (Ret.)
21                                              Discovery Master
22
23
24
25
26
27
28

1
[PROPOSED] ORDER RE MATTEL'S MOT. TO ENFORCE COURT'S ORDER OF MAY 15, 2007
202387.02-San Francisco Server 1A - MSW

EXHIBIT 25 PAGE 294

# EXHIBIT 26

1  THOMAS J. NOLAN (Bar No. 66992)
   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2  300 South Grand Avenue
   Los Angeles, California 90071-3144
3  Telephone:  (213) 687-5000
   Facsimile:  (213) 687-5600
4  E-mail:   tnolan@skadden.com

5  RAOUL D. KENNEDY (Bar No. 40892)
   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
6  4 Embarcadero Center, 38th Floor
   San Francisco, California  94111-5974
7  Telephone:  (415) 984-6400
   Facsimile:  (415) 984-2698
8  Email:   rkennedy@skadden.com

9  Attorneys for MGA Entertainment, Inc.,
   MGA Entertainment (HK) Limited,
10 MGAE De Mexico, S.R.L. DE C.V., and
   Isaac Larian

11

12                UNITED STATES DISTRICT COURT

13              CENTRAL DISTRICT OF CALIFORNIA

14                     EASTERN DIVISION

15  CARTER BRYANT, an individual        )   CASE NO. CV 04-9049 SGL (RNBx)

16              Plaintiff,              )   Consolidated with Case No. 04-9059 and
                                            Case No. 05-2727
17      v.                             )
                                           **DISCOVERY MATTER**
18  MATTEL, INC., a Delaware           )
    corporation                            [To be heard by Discovery Master
19                                     )   Hon. Edward A. Infante (Ret.)]
                Defendant.
20                                     )   [~~PROPOSED~~] ORDER RE
                                           MATTEL, INC.'S MOTION TO
21  Consolidated with MATTEL, INC. v.  )   COMPEL PRODUCTION OF
    BRYANT and MGA                         DOCUMENTS WITHHELD AS
22  ENTERTAINMENT, INC. v.             )   PRIVILEGED
    MATTEL, INC.
23                                     )

24

25

26

27

28
                           12-19

    [PROPOSED] ORDER RE MATTEL'S MOT. TO COMPEL PRODUCTION OF DOCUMENTS WITHHELD AS PRIVILEGED

EXHIBIT 26 PAGE 295

1      Mattel, Inc.'s Motion to Compel Production of Documents Withheld as

2 Privileged came on for hearing before me on December 14, 2007. The matter having

3 been fully briefed and argued, and good cause appearing, IT IS HEREBY

4 ORDERED THAT:

5      Mattel, Inc.'s Motion to Compel Production of Documents Withheld as

6 Privileged be and hereby is denied. In the Discovery Master's May 15, 2007 Order,

7 MGA was originally ordered to produce documents and a privilege log no later than

8 May 31, 2007. MGA appealed. On July 2, 2007, Judge Larson extended MGA's

9 production date to July 31 and confirmed that MGA would have to provide a

10 privilege log. That Order impliedly extended MGA's time to produce a privilege log

11 until July 31, 2007. MGA did not produce a privilege log by the July 31 deadline,

12 and violated the May 15 Order in this regard. However, MGA did produce privilege

13 logs on August 14, September 5 and November 15, 2007. In light of all the factors,

14 including the period of delay, the number of documents involved, the magnitude of

15 the document production, and the other circumstances involved in this case, as well

16 as the factors identified in Burlington Northern R.R. Co. v. United States Dist. Court

17 for Dist. of Montana, Ninth Cir. 2005, 408 F.3d 1142, the Court finds that Mattel's

18 request for a wholesale waiver of the attorney-client privilege as to all of the

19 documents in question is denied. Because Mattel did not seek any other sanctions in

20 its moving papers, the Discovery Master declines to impose them. MGA voluntarily

21 withdrew its counter-motion.

22      IT IS SO ORDERED.

23

24

25 Dated: _12-19-_ 2007

                              Hon. Edward A. Infante (Ret.)

26                               Discovery Master

27

28

[PROPOSED] ORDER RE MATTEL'S MOT. TO COMPEL PRODUCTION OF DOCUMENTS WITHHELD AS PRIVILEGED
202362.02-San Francisco Server 1A - MSW

EXHIBIT _26_ PAGE _296_

# EXHIBIT 27

1  Patricia L. Glaser, State Bar No. 055668
      pglaser@glaserweil.com
2  Joel N. Klevens, State Bar No. 045446
      jklevens@glaserweil.com
3  GLASER, WEIL, FINK, JACOBS,
      HOWARD & SHAPIRO, LLP
4  10250 Constellation Boulevard, 19th Floor
   Los Angeles, California 90067
5  Telephone:  310-553-3000
   Facsimile:  310-556-2920
6
7  Former attorneys for the MGA Parties for Phase 2

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                  EASTERN DIVISION

11  CARTER BRYANT, an individual          )   Case No. CV 04-9049 SGL (RNBx)
                                          )
12              Plaintiff,                )   Consolidated with: Case No. CV 04-
                                          )   9059 and Case No. CV 05-2727
13  v.                                    )
                                          )   **Hon. Stephen J. Larson**
14                                        )
    MATTEL, INC., a Delaware              )   **DECLARATION OF JOEL N.**
15  Corporation                          )   **KLEVENS IN RESPONSE TO**
                                          )   **COURT'S ORDER OF AUGUST 31,**
16              Defendant.                )   **2009**
                                          )
17  _____     )
                                          )
18  AND CONSOLIDATED ACTIONS              )
                                          )
19                                        )
                                          )
20                                        )
                                          )
21                                        )
                                          )
22                                        )

23
24
25
26                                    EXHIBIT 27
27                                    PAGE 297
28

689009 v3

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

## DECLARATION OF JOEL N. KLEVENS

I, Joel N. Klevens, hereby declare that:

1. I am an attorney licensed to practice law before all Courts of the State of California and before this Court. I am a partner in the firm of Glaser, Weil, Fink, Jacobs, Howard & Shapiro, LLP, former counsel of record of the MGA Parties in connection with the litigation of Phase 2 in the above-referenced matter. I have personal knowledge of the facts stated herein and, if called upon, could and would testify competently to said facts.

2. I supervised my firm's investigation in response to the Court's Order of August 31, 2009 and supervised communications with all of the attorneys in my firm who were involved in the litigation of the above-referenced matter at my firm.

3. No attorney from my firm ever reviewed the O'Connor email chain referenced in the Court's Order of August 31, 2009, and no attorney from my firm participated in any decision to withhold that document from production on grounds of privilege.

4. No attorney from my firm was involved in creating any of the privilege logs at issue in the Court's Order. In 2009, my firm did prepare revisions to certain of the privilege logs, providing some additional information regarding certain of the documents referred to on the logs. None of the revisions concerned the O'Connor email chain referred to in the Court's Order of August 31, 2009.

5. In response to a meet and confer letter from counsel for Mattel dated February 8, 2009, my firm agreed to re-review certain categories of documents identified as privileged on privilege logs created by other law firms that had previously represented MGA in this action. However, this firm did not agree to re-review the largest category of documents addressed in the February 8, 2009 letter, which was described by counsel for Mattel as "Communications Between Non-Lawyers and Non-Legal Communications." That category of documents contained the O'Connor email chain.

EXHIBIT 27
PAGE 290

689009 v3

2

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

6.    The reason that the category of documents that turned out to contain the O'Connor email chain was not reviewed by my firm was that we understood that that category of documents had been the subject of this Court's Order dated June 5, 2008 and, therefore, we declined to re-review those documents.

7.    Thereafter, when the Discovery Master issued his Order No. 33 on or about May 18, 2009, requiring the re-review of all documents listed on Appendices A through E, we began, but did not complete that process of re-review. The process was interrupted by temporary stays of discovery and then by the change of counsel for the MGA Parties on July 3, 2009. The deadline for production of the documents listed on Appendices A through E (which turned out to include the O'Connor email chain) was July 28, 2009, taking into account the extensions created by the temporary stays of discovery.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

Executed at Los Angeles, California on September 14, 2009.


JOEL N. KLEVENS


EXHIBIT 27
PAGE 299

DECLARATION OF JOEL N. KLEVENS IN RESPONSE TO COURT'S ORDER OF AUGUST 31, 2009

689009 v3