1   MELINDA HAAG (State Bar No. 132612)
    mhaag@orrick.com
2   ANNETTE L. HURST (State Bar No. 148738)
    ahurst@orrick.com
3   WARRINGTON S. PARKER III (State Bar No. 148003)
    wparker@orrick.com
4   ORRICK, HERRINGTON & SUTCLIFFE LLP
    The Orrick Building
5   405 Howard Street
    San Francisco, CA 94105
6   Telephone:   +1-415-773-5700
    Facsimile:   +1-415-773-5759
7
    WILLIAM A. MOLINSKI (State Bar No. 145186)
8   wmolinski@orrick.com
    ORRICK, HERRINGTON & SUTCLIFFE LLP
9   777 South Figueroa Street, Suite 3200
    Los Angeles, CA  90017
10  Telephone:   +1-213-629-2020
    Facsimile:   +1-213-612-2499
11
12  Attorneys for MGA Parties

13              UNITED STATES DISTRICT COURT

14              CENTRAL DISTRICT OF CALIFORNIA

15                   EASTERN DIVISION

| | |
|---|---|
| 16  CARTER BRYANT, an individual | Case No. CV 04-9049 SGL (RNBx) |
| 17              Plaintiff, | Consolidated with: |
| 18  v. | CV 04-9059 |
| | CV 05-2727 |
| 19  MATTEL, INC., a Delaware | **DISCOVERY MATTER** |
| 20  Corporation | **[To be heard by Discovery Master Robert C. O'Brien]** |
| 21              Defendant. | |
| 22  AND CONSOLIDATED ACTIONS | EXHIBITS B, C, D, F AND G TO MGA ENTERTAINMENT, INC.'S RENEWED EX PARTE APPLICATION FOR ORDER COMPELLING DEPOSITION OF RICHARD DE ANDA IN ADVANCE OF COURT-ORDERED HEARING |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

# Exhibit B

1              UNITED STATES DISTRICT COURT

2              CENTRAL DISTRICT OF CALIFORNIA

3                   EASTERN DIVISION

4                       - - -

5        HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6

7   MATTEL, INC.,                    )
                                     )
8                   Plaintiff,       )
                                     )
9            vs.                     )  No. CV 04-09049
                                     )
10  MGA ENTERTAINMENT, INC., ET. AL.,)
                                     )
11                  Defendants.      )
    _____)  Motions
12

13

14              REPORTER'S TRANSCRIPT OF PROCEEDINGS

15                  Riverside, California

16                  Monday, August 31, 2009

17                      2:14 P.M.

18

19

20

21

22

23              THERESA A. LANZA, RPR, CSR
                Federal Official Court Reporter
24              3470 12th Street, Rm. 134
                Riverside, California  92501
25                  951-274-0844
                WWW.THERESALANZA.COM

```
 1   APPEARANCES:

 2
     ON BEHALF OF MATTEL, INC.:
 3
                           QUINN EMANUEL
 4                         By:  JOHN QUINN
                                MICHAEL T. ZELLER
 5                              B. DYLAN PROCTOR
                           865 S. Figueroa Street,
 6                         10th Floor
                           Los Angeles, California  90017
 7                         213-624-7707

 8

 9   ON BEHALF OF MGA ENTERTAINMENT/ISAAC LARIAN:

10                         ORRICK, HERRINGTON & SUTCLIFFE, LLP
                           BY:  ANNETTE L. HURST
11                         BY:  WARRINGTON S. PARKER III
                           405 Howard Street
12                         San Francisco, California  90071-3144
                           213-687-5000
13
                           ORRICK, HERRINGTON & SUTCLIFFE, LLP
14                         BY:  WILLIAM A. MOLINSKI
                           405 777 South Figueroa Street,
15                         Suite 3200
                           Los Angeles, California  90017-5855
16                         213-612-2256

17

18   ON BEHALF OF OMNI 808:

19                         BINGHAM McCUTCHEN LLP
                           BY:  Peter N. Villar
20                         600 Anton Boulevard
                           Costa Mesa, CA  92626-1924
21                         714-830-0640

22

23

24

25
```

3

```
1                        I N D E X

2                                              Page

3       Proceedings................................    4

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

4

```
1        Riverside, California; Monday, August 31, 2009; 2:14 P.M.

2                              -oOo-

3        THE CLERK:  Calling calendar item 11, case number CV

4   zero 4-9049-SGL, Mattel, Inc., versus MGA Entertainment, Inc.

5        May we have counsel please come forward and state         02:14

6   your appearances for the record.

7        MS. HURST:  Good afternoon, Your Honor.

8   Annette Hurst from Orrick for plaintiff/counter defendant MGA

9   Entertainment and the other MGA parties.

10       MR. PARKER:  Warrington Parker of Orrick for MGA.        02:15

11       MR. MOLINSKI:  Bill Molinski, also appearing for MGA,

12  with Orrick.

13       MR. QUINN:  John Quinn, Mike Zeller, and

14  Dylan Proctor, for plaintiff Mattel.

15       THE COURT:  Good afternoon to you all.                    02:15

16       The Court has before it the three motions; I have the

17  preclusive relief related to Mr. Larian's hard drives; I have

18  the motion for clarification of the Court's order earlier this

19  summer; and a motion to amend the scheduling order.

20       I want to deal with the motion that's easiest off the    02:15

21  top, and that's the clarification.  The Court has in mind what

22  it meant, and I'll issue a clarifying order to that effect this

23  week.  I should have worded that carefully.  The footnote in

24  question certainly applied to both findings with respect to

25  willful infringement, and I did not mean to intend that it only  02:15
```

1  applied to one; that is to say, that I was limiting that to the

2  purposes of the order itself and not as a finding that would

3  apply for all purposes.  But I'll make that clear in the

4  Court's next order.  So I do not need to hear anything really

5  on that.  But I do need to hear on this motion for preclusive          02:16

6  relief and certainly the motion to amend the scheduling order,

7  so let me begin with the motion for preclusive relief.

8          I'll start by just giving you my sense, having read

9  the papers.  I did receive the surreply and I did receive the

10 sur-surreply.  I read them, for what it's worth.  It is a             02:16

11 problem that these sur- and sur-surreplies are coming in

12 without leave of court, so I'm just going to ask on a going-

13 forward basis that we get leave of court to file those.  I

14 certainly understand that there are instances where there is a

15 need to file one, and this may very well be one of those            02:17

16 instances, to bring the Court's attention to the May 2008

17 protocol.  However, just go through the formality.  I certainly

18 know that everybody knows how to file in this courtroom, Lord

19 knows; so just do that on a going-forward basis.

20          So I have considered all of the papers.                        02:17

21          My sense is that on the issue of the hard drives, I

22 certainly don't believe there was anything wrong in the

23 Discovery Master's order not affording access to the hard drive

24 or the active files or the active drivers.  The problem,

25 though, does result -- a problem results when both sides'             02:17

1    experts don't have access to the same information.

2            There's got to be a level playing field here.  I'm

3    open to any creative solution to level that playing field.  If

4    both experts don't have access to the active hard drives, or if

5    both do, I understand there's problems no matter which way we      02:18

6    go.  If we get access, then there are all kinds of privilege

7    issues, all kinds of issues related to ongoing information on

8    there which would have to be screened.

9            I suppose in some sense the easier approach is to

10   just exclude access to that for both sides.  But then, the MGA    02:18

11   expert has already had that access, and that's, I suppose, the

12   basis or part of their conclusion, as I understand it.  But

13   perhaps my understanding is mistaken on that.  And in the

14   interest of making sure that the jury and whoever is the

15   fact-finder has all of the truth before them, I suppose the       02:18

16   interest would be in favor of giving both sides that

17   information and then hashing it out and seeing where we are.

18           My tentative thought is that there seems to be an

19   imbalance right now which needs to be addressed somehow.

20           Those are my initial thoughts.                            02:19

21           **MS. HURST:**  Thank you, your Honor.

22           Your Honor, there is a simple remedy to the problem

23   the Court has identified, which is a document request for the

24   files upon which the expert has relied.  Such a document

25   request was served and the MGA parties answered that they would   02:19

```
 1   produce such responsive documents; so in a sense, this is sort
 2   of a mountain out of a molehill.
 3          THE COURT:  I don't know if I see that as a solution,
 4   though.
 5          You're suggesting that they get what your experts        02:19
 6   have actually relied upon?
 7          MS. HURST:  Sure.
 8          So, for example, the whole purpose for this
 9   inspection was to determine whether there had been spoliation.
10          THE COURT:  Deletions, right.                            02:19
11          MS. HURST:  So if the information exists in another
12   file, an active file, and if our expert has relied on that --
13   and I think there is a substantial dispute about that, because
14   there's the issue of simply running the hash algorithm, which
15   is not looking at the content as opposed to looking at the     02:20
16   content -- but if our expert goes and looks at the content in
17   response to their expert's report that says "it appears to us
18   from the deleted files that this user-generated content has
19   been deleted," if our expert looks at that and then he goes and
20   finds it somewhere else, then we can simply print those files  02:20
21   out and give it to them with all of the custodial information
22   about where it was found on the drive.  And if they need to
23   inspect, for the limited purpose of confirming that it's found
24   there --
25          THE COURT:  That's where I was going to go.             02:20
```

1    **MS. HURST:**  -- we can do that.  But you don't need to

2   give access to the whole thing in order to accomplish that.

3    **THE COURT:**  That address and what was found, might it

4   not also be important for them to know what's not there?

5    **MS. HURST:**  I would think the burden would be on us                02:21

6   to address everything they assert has been deleted.

7    **THE COURT:**  Mr. Zeller, what's your thought on this

8   solution?

9    **MR. ZELLER:**  I don't know if I would call it

10   creative, but this is along the lines of at least one proposal        02:21

11   that we had made in order to try and resolve this.  And to pick

12   up on the Court's last point, one problem in the kind of

13   limited or limitations that MGA's counsel is suggesting here is

14   that we still won't know if there's a criticism being leveled

15   against our expert for not looking.                                    02:21

16        Certainly, it's one thing if their expert goes so far

17   as to say, "Look, I looked in the active files, I found 90 out

18   of 100, and here they are."

19        But what it doesn't cover is something of the --

20   whether it's exactly the same or a variation, I guess one can         02:21

21   have different opinions about what their expert has already

22   done.  But, one, he could just simply say "Mattel did not look

23   at the active files."

24    **THE COURT:**  I certainly accept your -- it would be

25   very unfair for any expert to come in here and criticize an           02:22

```
1    opposing party for not looking at something that the parties

2    successfully precluded them from looking at.

3              You would agree with that.

4         MS. HURST:  Yes, certainly, your Honor.  And I would

5    think a motion in limine would be the remedy for that.        02:22

6         THE COURT:  Right.  That's something that we

7    understand that here and now that that's not going to happen.

8              So putting that issue aside then, Mr. Zeller, what

9    about this proposal dealing with the rest of your --

10        MR. ZELLER:  I think that is substantially along the    02:22

11   lines of what we had been proposing.

12             We've never said that we want to see every single

13   active file on those drivers; that has never been our position.

14        THE COURT:  What I like about this solution is that

15   it doesn't go down that road of getting into all of the active  02:22

16   files and all of the potential privilege and the quagmire that

17   I can see erupting if that was all turned over.  So this sounds

18   good.

19        MR. ZELLER:  I think so.  And obviously, subject

20   to -- ultimately, once we get information in hard copy printout  02:23

21   form, then if we need access to actually look at the data or

22   whatever it is that's actually associated with those particular

23   files, that is also along the lines of what we were

24   contemplating, just so that that's clear.

25        THE COURT:  Okay.                                        02:23
```

```
 1              Anything further?

 2         MS. HURST:  No thank you, your Honor.

 3         THE COURT:  Very good.  That takes care of that

 4    motion.

 5              So the motion is basically resolved by the       02:23

 6    stipulation of the parties, and the record here reflects that

 7    agreement.  If there's any concern about what that entails, the

 8    Court will take that up, but I trust that we can go forward,

 9    then, with this understanding in mind.

10              As far as the motion to amend the scheduling order,  02:23

11    the Court has given a lot of thought to this; it has a lot of

12    concern about this.

13              The biggest initial concern I have is that I know

14    that there is harboring over the case a fourth amended answer

15    and cross claim, and my concern is what impact that might have  02:24

16    on the case if the Court were to grant that motion to amend.

17              I guess I'm concerned about even discussing a

18    scheduling order now, or modifications to the scheduling

19    order -- you have to excuse me, I've got a terrible head cold

20    right now -- the Court is concerned about modifying that       02:24

21    schedule now, only to be facing potentially a much different or

22    expanded or larger case.  And frankly, my concern is

23    underscored by my recollection that Mattel was quite emphatic

24    that the third amended answer and cross claim would not expand

25    this case dramatically, and now here we are seeking an 8-month  02:25
```

1    continuation of discovery, which, frankly, I'm really not

2    inclined to grant, certainly at this point.  But this kind of

3    plays into the fourth amended answer.

4           I mean, this case has got to come to a head at some

5    point in time.                                                          02:25

6           Part of the concern I have is that we seem to be --

7    I'm going to be oversimplistic here in trying to describe

8    this -- but the RICO claim, the phase two, while it was

9    certainly not just related to Bratz, my understanding that the

10   gravamen of the allegation there was that in addition to the     02:25

11   copyright infringement alleged in phase one, that MGA, as a

12   company and through its other affiliates, was engaged in acts

13   that were designed to compromise Mattel's integrity, either by

14   stealing ideas or stealing employees or what have you; that it

15   was all related to this notion of theft, of commercial theft.   02:26

16   Those were the allegations, and it was brought together in a

17   RICO claim.

18          Now we seem to have added these perjury counts, or

19   perjury claims, that stem from the trial, and now this whole

20   Wachovia debt transaction, which is a post-trial act, seems to  02:26

21   be getting us farther afield from what was the core of that

22   second phase.  And while I'm certainly reluctant to suggest

23   that we somehow sever that out into a third phase -- something

24   about the myth of hydra comes to mind -- but I really want to

25   make sure that we get a handle on what it is that we're          02:26

1   supposed to be trying now, as opposed to -- I don't want to

2   call it a moving target, because I don't want to suggest that

3   the claims that have been brought as a matter of law are not

4   properly brought.  It's just that from a case management

5   perspective, I'm developing some concerns about where this all          02:27

6   is going.

7           So that's where I'm at on that.

8           I'll hear from counsel in response to some of those

9   thoughts.

10          **MR. QUINN:**  Good afternoon, your Honor.                      02:27

11          **THE COURT:**  Good afternoon, Mr. Quinn.

12          **MR. QUINN:**  I understand the Court's concern.  Phase

13  two has transmuted, to some degree.

14          **THE COURT:**  Yes.

15          **MR. QUINN:**  I think, though, that that's in response         02:27

16  to subsequent events, from things that happened last year and

17  from things that we've come to learn as time has gone by.

18          In terms of the fourth amended complaint, that will

19  add some additional parties, but it's all within the scope of

20  the existing allegations.                                               02:27

21          **THE COURT:**  As I understand it -- I really have not

22  focused on it a whole lot, but as I understand it, that largely

23  relates to the Wachovia debt transaction and the spillout, the

24  aftermath of that.  Is that correct?

25          **MR. QUINN:**  Yes; that's correct, your Honor.                02:28

```
 1          If the Court's preference is to address this issue

 2   about whether the present schedule should be modified, to defer

 3   that until the pleadings are settled on that, we would not have

 4   any objection to that.

 5          My burden is to demonstrate to the Court that based     02:28

 6   on the existing complaint, but notwithstanding the fact that

 7   we've been diligent, we cannot, for reasons which are not our

 8   fault, be fairly expected to be ready to try the case under the

 9   existing schedule.  And demonstrating that to the Court

10   requires that I engage in kind of a tedious process of talking    02:28

11   to the Court about specific things we've been trying to do and

12   the difficulties we've faced in trying to do that.

13          If the Court would bear with me, I'm prepared to do

14   that.

15          THE COURT:  I have certainly read your papers, and       02:29

16   I've gone through the long list of concerns.  I've also been

17   following along as the Discovery Master has been dealing with a

18   number of these issues that have come up, and reading his

19   orders; so I know that it should be of no surprise to anybody

20   that this has been, on both sides, a protracted litigation.      02:29

21          MR. QUINN:  It's protracted, Your Honor, and --

22          THE COURT:  You certainly did not expect, when we

23   agreed to the times set on this, that somehow this was going to

24   be smooth sailing.

25          MR. QUINN:  Smooth sailing?  No.  But there have been     02:29
```

1    some, I would say, kind of unique events that have happened.

2          If I could call the Court's attention, just by way of

3    example, to one specific document.

4          **THE COURT:**  Yes.

5          **MR. QUINN:**  This is Exhibit 2 to Mr. Proctor's                02:29

6    declaration.

7          **THE COURT:**  I have it here.

8          **MR. QUINN:**  It is Page 12.  The Court will see that

9    it says "Anderson, Diane" at the top.

10         **THE COURT:**  Yes.                                              02:30

11         **MR. QUINN:**  This is a document that we received ten

12   days ago, on August 21st.  This was a document that was

13   identified in a privilege log which Mattel has been trying to

14   get for 23 months.  The only thing that was produced was

15   everything below the "FYI" that the Court can see there.        02:30

16   What's up there at the top, the e-mail between Mr. Larian and

17   Victoria O'Connor, was withheld on the grounds of privilege.

18         We had to get two orders, and ultimately there was an

19   order that was entered that it would be produced to the

20   Discovery Master for his in-camera review.  A deadline was set    02:30

21   for doing that.  They got an extension on that deadline.  The

22   deadline came and went, two or three weeks went by, and then

23   finally they said "the Discovery Master does not have to review

24   this; we'll simply produce the document."

25         Your Honor, on the face of this, I don't see any            02:31

1    arguments that this was ever a privileged document.  This is a

2    very damaging document.

3            There are another 400 documents that the Discovery

4    Master has on his plate right now to review in camera.  This is

5    the result, we finally got this after 23 months, and they          02:31

6    coughed it up.  They did not want the Discovery Master to see

7    it and to focus on whether or not it's privileged.

8            Your Honor, there are other motions similar.

9            Just talking now about privileged logs, the Discovery

10   Master has entered an order requiring that documents relating      02:31

11   to the alleged crime fraud -- which I think the Court will

12   recall that issue -- be produced to the Discovery Master for

13   his in-camera review.  They have moved for reconsideration and

14   they have said that no matter what, the Discovery Master -- if

15   the Discovery Master doesn't go their way on reconsideration,      02:31

16   they are going to appeal that to Your Honor, and they have also

17   announced that they will take it mandamus to the Ninth Circuit,

18   which is their right to seek all these things.

19           The point is, Your Honor, there have been a total of

20   over 40 -- over 50 discovery motions since January.                02:32

21           Now, that in itself doesn't tell the Court anything

22   in terms of the merits of the position being taken.  I can tell

23   the Court that of those motions, Mattel thus far has won 32 of

24   them; has lost 18 of them; and there's 18 of them pending.

25           We did not get a single deposition until -- since          02:32

```
 1   this motion was filed, there have now been two depositions,

 2   phase two; that's it.  Not withstanding our motion practice,

 3   our efforts at diligence.

 4          It took two orders to get Mr. Kadisha to finally

 5   appear.  Similarly, with respect to the other witness,          02:32

 6   Mr. Neman, we still have no documents.  No documents,

 7   Your Honor, from MGA Mexico.  Notwithstanding we've been

 8   seeking them for a couple of years.  They say in their

 9   opposition that, "Well, we produced MGA Mexico documents in the

10   MGA production.  The Discovery Master found" -- and I'm using    02:33

11   the Discovery Master's words in his order -- "that was not

12   credible."  He's ordered them to produce those documents.

13   There are some 200 RFP's directed to MGA Mexico that they are

14   now under Discovery Master order to produce.

15          The trust that provided some of this financing for        02:33

16   OMNI 808, they have not identified to us, notwithstanding the

17   Discovery Master's order, any information about those trusts;

18   who the beneficiaries are; who the grantors are; who the

19   trustees are.  We've been blocked in getting that kind of most

20   basic information.                                               02:33

21          The answers to contention interrogatories addressed

22   in their affirmative defenses, we still do not have them.

23   Maybe we will get them today.  We were promised them by the end

24   of the month, but we haven't gotten any of that.

25          After this schedule was set, the Court will remember,     02:34
```

```
 1    there have been stays; there was a one-month stay that the
 2    Court entered while settlement discussions took place in the
 3    May/June time frame.  There were also stays that MGA took as a
 4    matter of self-help.  The Court may recall that in January,
 5    they took the position that because the Court had appointed a
 6    forensic auditor to look at MGA's books and records, that we
 7    were barred from ever taking any discovery.  The Court may
 8    recall that.  And it came up at the appropriate time, and the
 9    Court made it clear, that was not the Court's intention.  That
10    blocked us for a month.  That was the second month in this
11    discovery period that the Court set aside where we did not get
12    any discovery.
13            For four months, four months, Your Honor, we did not
14    get any discovery on their claims against Mattel.  They said we
15    were not entitled to any discovery because we had indicated we
16    intended to move for summary judgment.  Their position was,
17    "Well, there's no disputed -- apparently you believe there's no
18    issue of disputed fact.  Therefore, you don't need any
19    discovery; you should bring your motion."  That was their
20    position.
21            Ultimately we had to go to the Discovery Master on
22    that.  Ultimately they were sanctioned for taking that
23    position.  But for four months we did not get any discovery on
24    their claims.
25            I could go on, Your Honor.
```

02:34
02:34
02:35
02:35
02:35

```
 1          I don't take any pleasure in going through this 'who

 2   did what to whom,' but again, as I started out, it's my

 3   obligation to prove that notwithstanding our due diligence,

 4   we're not going to be in a position to try the case on the

 5   existing schedule.  And I think the record clearly shows we've      02:35

 6   been diligent.  Everything requires a motion, oftentimes

 7   multiple motions, because of the aggressive positions that are

 8   taken on very many of these issues and aspects of this case,

 9   perhaps most of them.

10          I'm sorry to report to the Court, we're at the very         02:36

11   beginning of discovery now.

12          THE COURT:  How many more depositions are you

13   planning to take?

14          MR. QUINN:  I think there was some information in our

15   papers on that.  If I could defer to Mr. Zeller, Your Honor.       02:36

16          THE COURT:  Mr. Zeller.

17          MR. ZELLER:  I can get the Court the exact number

18   that we currently understand.  But we have made a motion to the

19   Discovery Master for additional depositions.  It's in the

20   multiples of tens; it's certainly less than 100; but I know        02:36

21   there's a particular number on it.

22          THE COURT:  You've taken three; correct?

23          MR. ZELLER:  We've taken two.  And we have also asked

24   for leave beyond the limit of ten that the Court will recall --

25   the Court said that for this phase we should go to the             02:37
```

```
 1   Discovery Master to make a showing for excess depositions.
 2            There is at least another one that I'm recalling
 3   offhand that has been ordered, which is that of Mr. Mashian.
 4            THE COURT:  Mr. Zeller, of the whatever number, the
 5   multiple of ten --                                              02:37
 6            MR. ZELLER:  I apologize, Your Honor.  It's 30.
 7            THE COURT:  Of the 30 depositions, how many of those
 8   depositions would you say are related to what the Court has
 9   termed the Wachovia debt transaction?
10            MR. ZELLER:  I would estimate that about a dozen of    02:37
11   those are related to the Wachovia debt acquisition.  Then there
12   also, of course, are some such as Mr. Larian's, for example,
13   where we are certainly seeking that deposition; and that would,
14   of course, relate to a whole host of issues beyond that.
15            THE COURT:  So there's 24, then, or 18.                02:37
16            MR. ZELLER:  I mean, this is rough justice,
17   Your Honor.  To be perfectly accurate, I'd have to go and add
18   them up, but that's my best estimate standing here.  I think
19   that's about right.
20            We have, for example, ones that are clearly related    02:38
21   to what we'll call the "old phase two issues."  Say, for
22   example, the trade secret misappropriation.  We have MGA Canada
23   that's still outstanding; Jeanine Brisbois, who's associated
24   with MGA Canada, still outstanding; those were the subject of
25   those letters of request a few months ago.                      02:38
```

1          **THE COURT:**  Speaking of MGA Canada, just while it's

2    fresh in my mind, what is this nonsense about the head of

3    security of Mattel's giving gifts to the Canadian Police?

4          **MR. ZELLER:**  I would say that is a fair amount of

5    hyperbole on MGA's part that is not substantiated by the          02:38

6    record.

7          **THE COURT:**  I don't know whether it's substantiated

8    or not.  Did it happen?

9          **MR. ZELLER:**  No.

10         What happened, Your Honor, is that Mr. Deanda spoke          02:38

11    to the police.  They gave him a token of a pen and perhaps a

12    coffee mug.  He gave them in return a few toy police cars, like

13    less than ten.  That's what this is.

14         **THE COURT:**  He must be mindful of that.

15         I trust you'll have a talk with him about that on a          02:39

16    going-forward basis.

17         Yes?

18         **MR. ZELLER:**  Yes, your Honor, absolutely.

19         I was nodding in agreement.

20         **THE COURT:**  All right.  Back to the bigger issue of       02:39

21    this.

22         If you have these 30 depositions to take and you've

23    only taken two, when do you plan on taking these other

24    depositions?

25         **MR. ZELLER:**  As soon as these individuals are            02:39

1    produced.

2            Right now, we have had to go to the Discovery Master

3    to get leave.

4            **THE COURT:**  Have you proposed dates for these 28

5    depositions that you want?                                        02:39

6            **MR. ZELLER:**  No, your Honor.

7            **THE COURT:**  You have not even proposed dates yet?

8            **MR. ZELLER:**  When we talk about all 28, that's kind

9    of a big category.

10           Some of them, we have certainly asked dates for; say,    02:40

11   MGA Canada; Jeanine Brisbois; Vargas in Mexico.  There are

12   others clearly related to phase two, we've asked for those

13   dates for literally months and years; so as to those people,

14   yes.

15           There are others who, no, we have not asked for dates    02:40

16   because we don't know whether we have leave to take them.  And

17   also -- and the courts have been very clear about this -- we

18   are entitled to know, before we use up our remaining eight or

19   seven depositions, whatever the case will be after Mr. Mashian,

20   as to whether or not we're going to have leave for those other   02:40

21   ones.  Because if we end up being constrained to some smaller

22   number, we're entitled to know that before making those final

23   choices.

24           So in terms of where we are in the stream of our

25   efforts to get those depositions, we've asked for them; we've    02:40

```
 1   made a motion for leave; it is in the process of being briefed;

 2   the briefing may actually already be done or substantially

 3   done.  But that is the first step.

 4          We have an instance here, Your Honor, where MGA did

 5   not agree to a single one of those additional depositions.        02:41

 6   Justified or not, but that is a fact that it is going to

 7   require time to work those issues through.

 8          THE COURT:  How many depositions of your people have

 9   they taken?

10          MR. ZELLER:  Throughout the case?                          02:41

11          THE COURT:  Not throughout the case.

12          MR. ZELLER:  Right now?

13          THE COURT:  Yes.

14          MR. ZELLER:  There have been none taken.  The only

15   two depositions that have been taken were by us so far since      02:41

16   the beginning of the year.  They have taken none.

17          THE COURT:  Thank you, Mr. Zeller.

18          MR. ZELLER:  Thank you.

19          THE COURT:  Counsel.

20          MS. HURST:  Not for lack of trying, Your Honor.            02:41

21          THE COURT:  So you have sought to take depositions?

22          MS. HURST:  We have, Your Honor, and they did not

23   show up.  We noticed a 30(b)(6) on communications with

24   governmental authorities pertaining specifically to this

25   document, in part where they sent gifts to the Canadian police,   02:42
```

1    and about two days before the deposition, I got an e-mail

2    saying "We're not going to show up."  We had to file a motion

3    to compel on that; so that's the one deposition that we've

4    noticed that we've not been able to take.

5            But, I frankly think, Your Honor, the way to approach          02:42

6    this motion is not with some litany of past transgressions.

7    The focus should be on the future.  We have three months until

8    the discovery cutoff in this case, and what I have not heard

9    either Mr. Quinn or Mr. Zeller say is what can't be done in

10   three months.                                                          02:42

11       THE COURT:  Tell me, what do you think, do you think

12   this -- you have a sense, now, and I know you're still new to

13   the case and all, but you've done a fabulous job of getting up

14   to speed; that is reflected in your papers.

15           What is your sense of the possibility of this being           02:42

16   completed, given what you know about just the status of the

17   case right now?  Without the fourth amended, just based on the

18   third amended, do you believe this can be done in the next

19   three months?

20       MS. HURST:  I believe it can, Your Honor, if it's                  02:43

21   done with focus and efficiency, which has been lacking,

22   frankly; and on both sides, Your Honor.  I don't mean to just

23   say on Mattel.

24       THE COURT:  I appreciate that.

25       MS. HURST:  And let me say why.  Because the vast                  02:43

1    majority of those 32 depositions related to the Wachovia debt

2    transaction, it's more like 22, 24 of the 32 depositions.  And,

3    Your Honor, not just the people who actually participated in

4    that transaction, but the companies to whom MGA went to try to

5    get them to buy out the Wachovia debt who didn't take part in          02:43

6    the transaction.  That's the long list.  They don't just want

7    Mr. Neman; they also want the person most knowledgeable of

8    Vision Capital.  They don't just want Mr. Kadisha; they want

9    also the person most knowledgeable of OMNI 808.

10         Mr. Villar is here; he sent them an e-mail before            02:43

11   they took those depositions, saying "these witnesses will be

12   our 30(b)(6) witnesses.  Please give us the chance to prepare

13   them on whatever topics you might want to propound before you

14   take their depositions, and let's do it all at once."

15         Mr. Zeller said no.                                         02:44

16         That's the lack of focus and efficiency.  And

17   frankly, Your Honor, if the Court forces the parties to do

18   this, we will get it done.

19         We did not refuse to agree to any deposition in

20   excess of ten.  We said it's crazy to take more than 30              02:44

21   depositions at seven hours a pop.

22         And to be clear, Your Honor, the 32 they have asked

23   for does not include a number of party depositions that they

24   have told us are coming.  It does not include Mr. Larian; it

25   doesn't include Mr. Brewer; it doesn't include what Mr. Proctor       02:44

1    proposed, that this Court rejected during phase one as an

2    endless number of hours of 30(b)(6) depositions.

3           So what we proposed in response was an hour's limit.

4    We said "Let's set an hour's limit; that will force, just like

5    trial, force everybody to be efficient, to go get what they                    02:45

6    really need.  Let's do it that way instead."

7           So that's the issue that is presently pending before

8    Discovery Master O'Brien.

9        **THE COURT:**  What about my thoughts concerning

10   separating out the remainder of this case?  What's your initial          02:45

11   reaction?

12          And I know that puts you on the spot, but what's your

13   initial reaction?

14       **MS. HURST:**  As the Court knows, we did suggest a stay

15   of the case pending resolution by the Ninth Circuit.  We                   02:45

16   obviously did not include within that a request for stay of the

17   Court's injunctive relief, or anything like that.  That's been

18   addressed repeatedly before.  We're not going there,

19   Your Honor.

20          The problem is now these RICO claims are kind of a                   02:45

21   house of cards.  And if you take away the Wachovia debt

22   transaction, which was characterized in their reply brief on

23   this motion as a "scheme whose essence is deception"; that's

24   the quote on this motion.  In the clarification reply brief,

25   Your Honor, they called it "an attempted encumbrance of the                02:46

1    Bratz intellectual property."

2            I think the people writing those two briefs need to

3    meet each other over there at the Quinn law firm.

4            This is crazy.  It's crazy out of control on this

5    Wachovia debt transaction thing.                          02:46

6            On Friday when Mr. Kadisha testified, Your Honor, he

7    said he's known Bob Eckert, the CEO for Mattel, for years

8    through their participation in the Young President's

9    Organization and the World President's Organization, and that

10   when he, in leading the OMNI 808 buyout of the Wachovia debt  02:46

11   transaction, when he did that, he called Mr. Eckert to tell him

12   that he was going to engage or had just engaged in that

13   transaction.

14           Your Honor, that means that Mr. Kadisha's testimony

15   turns out to be accurate with his recollection, and everything  02:47

16   else, that Mattel has come in here in the last ten months with

17   emergency applications for receivers, forensic auditors,

18   permanent receivers, monitors, you name it, every act they have

19   taken to put the Court's close supervision of MGA's daily

20   business activity was founded on a false premise that somehow  02:47

21   MGA had tried to conceal this transaction, to which,

22   Your Honor, it wasn't even a party.  All of that was done after

23   Mr. Kadisha called Bob Eckert and told him about this

24   transaction.

25           **THE COURT:**  Getting back to the Court's question...  02:47

1          **MS. HURST:**  Apologies, your Honor.

2          It can be done, Your Honor.

3          **THE COURT:**  Your sense is that it should stay

4    unified.

5          **MS. HURST:**  Well, my sense is that there should not          02:48

6    be an amendment permitted, Your Honor.  Not for this case.

7    Adding defendants, Your Honor, I don't think in fairness I

8    could say anything other than that adding defendants would

9    force a continuance of the trial.  I mean, of course they would

10   want to have adequate time to prepare themselves.          02:48

11         **THE COURT:**  But we've already had this one amendment

12   that has brought in, at least in part, the Wachovia debt

13   transaction.  I use that phrase, and I'm trying to be as

14   neutral as I can in terms of my characterization, because I do

15   know that you both characterize this transaction vastly          02:48

16   differently, and I'm trying to go to great lengths to make sure

17   it's understood that nothing has been established, at least in

18   this courtroom.

19         **MS. HURST:**  Thank you, Your Honor.

20         **THE COURT:**  But the thought would be is there some          02:48

21   value in taking that out for the time being?  Let's get through

22   what I think Mr. Quinn referred to as the older RICO claims,

23   getting that done and behind us, and then focus just on this

24   Wachovia debt transaction.

25         Perhaps not.  If it is the house of cards, as you're          02:49

```
 1   suggesting, perhaps it is so inextricably intertwined that it

 2   would not be prudent to separate them.  I'm just trying to come

 3   up with the best way to go forward at this point, given where

 4   we're at.

 5          MS. HURST:  Your Honor, I appreciate the Court's          02:49

 6   inquiry.  I think the problem is that it's a terrible catch-22

 7   for MGA.  The burden and expense of this litigation is so

 8   enormous that when MGA makes its motion for summary judgment on

 9   the RICO claims, we'd like to dispose of them entirely,

10   Your Honor.                                                      02:49

11          THE COURT:  Okay.

12          MS. HURST:  I think that's probably a fair answer to

13   your question.

14          THE COURT:  Fair enough.

15          I would be remiss if I did not raise the issue of        02:49

16   settlement.  I know there was a lot of talk about this over the

17   course of the summer.  I have not heard anything about that

18   since.  I know that Ambassador Prosper made some efforts;

19   Judge Tevrizian has been involved; the Court had a brief

20   conversation with both principal CEOs.                          02:50

21          Is there any sense of trying to resolve this case at

22   this point?  Is there anything that can be done along those

23   lines?  Is there anything that the Court can do to help

24   facilitate that?

25          MS. HURST:  Yes.  And, Your Honor, that is --             02:50
```

```
 1        MR. ZELLER:  I'm sorry, but if we're going to talk
 2   about this, I would prefer to do it at side-bar or off the
 3   record.  Because once we get into it, there's a little bit in
 4   terms of some personal scheduling for people, and that kind of
 5   thing, which I think is better not said in open court.          02:50
 6        THE COURT:  Fair enough.  When it comes to
 7   settlement, I'm willing to be -- I want to be comfortable in
 8   what we are doing.
 9        MS. HURST:  I was not going to get into any details,
10   other than to say that part of MGA's frustration is that the    02:50
11   ball was in Mattel's court.
12        THE COURT:  That's precisely the type of public
13   statement that I think Mr. Zeller was asking for you not to
14   make.  We need to be respectful of that when we go down this
15   road.                                                           02:51
16        MS. HURST:  Thank you, your Honor.
17        THE COURT:  I'm going to strike that last statement
18   from the record.  Let's not do that.  We've had trouble with
19   that before; people just making statements that they --
20        MS. HURST:  I'm happy to approach for side-bar,           02:51
21   Your Honor.  I did not understand that was the focus of
22   Mr. Zeller's comments.
23        THE COURT:  I don't know for sure if it was or it was
24   not.
25        MR. ZELLER:  It absolutely was, because I knew this       02:51
```

```
 1   exact accusation was --
 2           THE COURT:  This is not constructive, so let's stop
 3   this.
 4           Is there anything further on this motion, on the
 5   motion to amend the scheduling order, from MGA's perspective?    02:51
 6           MS. HURST:  No.  Thank you, your Honor.  We would
 7   submit.
 8           THE COURT:  Is there anything further from Mattel?
 9           MR. QUINN:  Your Honor, in terms of carving out the
10   Wachovia part of the case, it sounds like that's something they  02:51
11   would prefer not to do.
12           It could be done, I think.  We would face some of the
13   same issues that we've now faced in carving out the present
14   phase one and phase two; I mean, some overlap; some witnesses
15   being asked to appear a second time.  I think it probably could  02:52
16   be done.  It's something that frankly we have not thought of
17   before the Court raised it.
18           If it's something that the Court would like to see a
19   proposal on, what that might look like, I'm sure we could meet
20   and confer, if the other side is interested, and try to put      02:52
21   something forward.
22           It would require some disentangling, and I think we
23   would have to confront the fact going in that potentially there
24   would be duplicate testimony, because they do overlap to some
25   degree, particularly in the RICO claims.                         02:52
```

1     **THE COURT:**  We had some of those problems when we

2  first tried to distance phase one and phase two.  If it doesn't

3  make sense, it doesn't make sense.  But both of you should

4  think about that between now and our next hearing.

5     Our next hearing is October -- when did I say it was?    02:53

6     **MR. ZELLER:**  I believe it was October 1st,

7  Your Honor.

8     **THE COURT:**  So the 1st of October.  And we set that

9  for a Thursday, keeping it away from a Monday, because I assume

10  everyone will have lots to say on October 1st.    02:53

11     **MR. QUINN:**  To get back to the motion to amend the

12  schedule, Your Honor.  Even if nothing else is done with the

13  case, even if the existing complaint is not amended at all, I

14  do come back to the predicament we find ourselves in.

15     The Court had set a schedule.  We had actually asked    02:53

16  for more time when the Court set the schedule originally.  We

17  sort of bit our lips and said "We're going to have to do what

18  we have to do to meet these deadlines."  And we've encountered

19  what we've encountered:  The stays; the requirement that we

20  make these motions.  And we find ourselves where we are now, at    02:53

21  a very preliminary stage.

22     There's an obligation to disclose expert witnesses, I

23  think, on October 16th, and we're just -- given where we are,

24  that frankly is not realistic, Your Honor, even on the existing

25  complaint.    02:54

1          **THE COURT:**  Okay.

2          Thank you, counsel.

3          **MS. HURST:**  There's just one thing that I wanted to

4     add.

5          We are trying to keep this within the current scope                02:54

6     of the claims, but if the Court were to permit amendment and to

7     vacate dates, then MGA also would likely have supplementation

8     and/or amendment of its claims, Your Honor.

9          **THE COURT:**  It would be very helpful to have that --

10    it would be nice to consider that all at once.                          02:54

11         Would you be in a position to --

12         **MS. HURST:**  I think we can get it on file for the

13    October 1st hearing date.

14         **THE COURT:**  That would make a lot of sense to have --

15    if there are going to be more claims being brought in against           02:54

16    Mattel, to have those considered all at once.

17         **MS. HURST:**  All right, Your Honor.  Thank you.

18         **THE COURT:**  Very good.

19         I am going to deny at this point the motion to amend

20    the scheduling order.  Neither side should take too much solace        02:55

21    in that.  Mattel needs to understand that they cannot bank on a

22    continuance, and MGA has to understand that I really take you

23    at your word that any inefficiencies -- you referred to the

24    inefficiencies -- any inefficiencies in the past will be set

25    aside.  You really hold the ability to keep this thing under           02:55

```
 1   control in your hands by getting the discovery that Mattel is

 2   entitled to.  And, of course, vice versa.

 3           I just don't think right now is the time to amend the

 4   scheduling order.

 5           I will look forward to seeing you on October 1st.        02:55

 6           I do want to speak to you briefly at side-bar about

 7   the settlement issue; so Mr. Zeller or Mr. Quinn, and whoever

 8   would like to come forward.

 9           Is there anything else we need to take up at this

10   time?                                                           02:56

11           MS. HURST:  No, your Honor.

12           MR. QUINN:  No, your Honor.

13           THE COURT:  Very well.

14           We'll go off the record.  I'll speak briefly with

15   counsel off the record at side-bar.                             02:56

16               (Off the record discussion.)

17               (Proceedings are concluded.)

18                       CERTIFICATE

19

20   I hereby certify that pursuant to section 753, title 28, United
     States Code, the foregoing is a true and correct transcript of
21   the stenographically recorded proceedings held in the above-
     entitled matter and that the transcript page format is in
22   conformance with the regulations of the Judicial Conference of
     the United States.

23

24   _____        _____
     THERESA A. LANZA, CSR, RPR                Date
25   Federal Official Court Reporter
```

# Exhibit C

Case 2:04-cv-09049-DOC-RNB Document 6704 Filed 09/16/09 Page 37 of 56 Page ID
#:220196
Case 2:04-cv-09049-SGL-RNB Document 6567 Filed 09/03/2009 Page 1 of 1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
<u>CIVIL MINUTES -- GENERAL</u>

Case No.    CV 04-09049 SGL(RNBx)                          Date: September 3, 2009
Title:      MATTEL, INC. V. MGA ENTERTAINMENT, INC., et al.
=======================================================================
PRESENT:  HONORABLE STEPHEN G. LARSON, U.S. DISTRICT JUDGE

            Cindy Sasse                              None Present
            Courtroom Deputy                         Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:       ATTORNEYS PRESENT FOR DEFENDANTS:

None Present                             None Present

**PROCEEDINGS:    ORDER REGARDING APPEARANCE AT SEPTEMBER 21, 2009, HEARING
                  BY MATTEL OFFICER RICHARD DE ANDA**

        With the opposition to the Motion to Modify the Scheduling Order, counsel for the MGA
parties filed a copy of an email communication between Mattel's head of security, Richard De
Anda, and Canadian law enforcement officials, which references a package sent to those officials.
Based on this email communication, the MGA parties contend that "Mattel sent gifts to Canadian
police in an obviously improper attempt to curry favor in their investigation."  Opp.  at 14.

        At the August 31, 2009, hearing, counsel for Mattel represented to the Court that the
package contained less than a dozen toy cars and was given by Mr.  De Anda upon being
presented by Canadian officials with the token gift of mugs and pens.

        This email has led to concern by the MGA parties that other gifts have been given to law
enforcement officials by Mattel.

        To address this concern, the Court **ORDERS** Mattel to assure the appearance of Mr.  De
Anda at the hearing set for September 21, 2009, at 1:30 p.m., in Courtroom One of the above-
referenced Court.

        **IT IS SO ORDERED.**

MINUTES FORM 90                                 Initials of Deputy Clerk __cls_____
CIVIL -- GEN                        1

Exhibit C - Page 374

# Exhibit D

**Hurst, Annette**

| | |
|---|---|
| **From:** | Michael T Zeller [michaelzeller@quinnemanuel.com] |
| **Sent:** | Friday, September 11, 2009 3:52 PM |
| **To:** | Hurst, Annette; Dylan Proctor; Jon Corey |
| **Cc:** | Angell, Jason |
| **Subject:** | RE: Carter Bryant v. Mattel Inc. and consolidated actions |

Ok, I will check re service and get back to you, but your position here is directly contrary to prior DM rulings (based on MGA's own positions) regarding the time to respond to a subpoena.


Michael T. Zeller
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Direct: (213) 443-3180
Main Phone: (213) 443-3000
Main Fax:  (213) 443-3100
E-mail:  michaelzeller@quinnemanuel.com
Web:  www.quinnemanuel.com

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above.  This message may be an attorney-client communication and/or work product and as such is privileged and confidential.  If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited.  If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.



**From:** Hurst, Annette [mailto:ahurst@orrick.com]
**Sent:** Friday, September 11, 2009 3:46 PM
**To:** Michael T Zeller; Dylan Proctor; Jon Corey
**Cc:** Angell, Jason
**Subject:** RE: Carter Bryant v. Mattel Inc. and consolidated actions

I intend to serve it for his attendance on September 18.  That is what is out for service right now, and we will have someone sit on his house until he is found if necessary.  If he is available on any day prior to September 22, I will take it then, including nights and weekends.  But we expect to take it before the hearing.  I understand that by accepting service you are not agreeing to a date, and I will not urge otherwise.  My view is he should bring a motion to quash if he cannot appear on the requested date or we cannot otherwise agree.

**From:** Michael T Zeller [mailto:michaelzeller@quinnemanuel.com]
**Sent:** Friday, September 11, 2009 3:39 PM
**To:** Hurst, Annette; Dylan Proctor; Jon Corey
**Cc:** Angell, Jason
**Subject:** RE: Carter Bryant v. Mattel Inc. and consolidated actions

I will check on that.  But please confirm you still want to serve it notwithstanding the DM's decision not to compel the dep on an expedited basis.

Michael T. Zeller
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Direct: (213) 443-3180
Main Phone: (213) 443-3000
Main Fax:  (213) 443-3100
E-mail:  michaelzeller@quinnemanuel.com
Web:  www.quinnemanuel.com

The information contained in this e-mail message is intended only for the personal and confidential use of the
recipient(s) named above.  This message may be an attorney-client communication and/or work product and as
such is privileged and confidential.  If the reader of this message is not the intended recipient or agent responsible
for delivering it to the intended recipient, you are hereby notified that you have received this document in error
and that any review, dissemination, distribution, or copying of this message is strictly prohibited.  If you have
received this communication in error, please notify us immediately by e-mail, and delete the original message.

**From:** Hurst, Annette [mailto:ahurst@orrick.com]
**Sent:** Friday, September 11, 2009 3:36 PM
**To:** Michael T Zeller; Dylan Proctor; Jon Corey
**Cc:** Angell, Jason
**Subject:** Carter Bryant v. Mattel Inc. and consolidated actions

Counsel:

Will you accept service of the deposition subpoena for Mr. de Anda?  His wife indicates that he is an extremely
busy fellow and she's not sure he's ever coming home again.

Regards,
Annette Hurst



ORRICK

ANNETTE L. HURST
*Partner*

**ORRICK, HERRINGTON & SUTCLIFFE LLP**
SAN FRANCISCO

*tel* (415) 773-4585
*fax* (415) 773-5759
ahurst@orrick.com

www.orrick.com

```
"EMF <orrick.com>" made the following annotations.
-------------------------------------------------------------------------
=========================================================

IRS Circular 230 disclosure:
To ensure compliance with requirements imposed by the IRS,
```

we inform you that any tax advice contained in this
communication, unless expressly stated otherwise, was not
intended or written to be used, and cannot be used, for
the purpose of (i) avoiding tax-related penalties under
the Internal Revenue Code or (ii) promoting, marketing or
recommending to another party any tax-related matter(s)
addressed herein.


==========================================================

NOTICE TO RECIPIENT:  THIS E-MAIL IS  MEANT FOR ONLY THE
INTENDED RECIPIENT OF THE TRANSMISSION, AND MAY BE A
COMMUNICATION PRIVILEGED BY LAW.  IF YOU RECEIVED THIS E-
MAIL IN ERROR, ANY REVIEW, USE, DISSEMINATION,
DISTRIBUTION, OR COPYING OF THIS E-MAIL IS STRICTLY
PROHIBITED.  PLEASE NOTIFY US IMMEDIATELY OF THE ERROR BY
RETURN E-MAIL AND PLEASE DELETE THIS MESSAGE FROM YOUR
SYSTEM. THANK YOU IN ADVANCE FOR YOUR COOPERATION.

For more information about Orrick, please visit
http://www.orrick.com/
==========================================================
==============================================================

# Exhibit F

## Calderon, James

| | |
|---|---|
| **From:** | Hurst, Annette |
| **Sent:** | Monday, September 14, 2009 10:03 AM |
| **To:** | Michael T Zeller; Dylan Proctor; Jon Corey |
| **Cc:** | moverland@obsklaw.com; acote@obsklaw.com; Jason.Russell@skadden.com |
| **Subject:** | de Anda Deposition |
| **Attachments:** | DOC001.PDF |

Gentlemen:

I am informed that Mr. de Anda was served Friday night with the attached subpoena requiring his attendance on 9/16 at 9:00 a.m. in our Los Angeles offices at 777 S. Figueroa St., Ste. 3200, 90017 (as we indicated we would in our reply brief filed in support of MGAE's Ex Parte Application).  If you are representing the witness, I remain willing to negotiate the date as previously indicated so long as we are able to take his deposition in advance of the 9/22 hearing.  Caroline Mankey confirms that Mr. Corey previously agreed that Mattel would not object to a further deposition of Mr. de Anda in this action, so long as there was a reasonable time limitation.  Please advise whether you represent the witness.

Annette Hurst



**O R R I C K**

**ANNETTE L. HURST**
*Partner*

**ORRICK, HERRINGTON & SUTCLIFFE LLP**
SAN FRANCISCO

*tel* (415) 773-4585
*fax* (415) 773-5759
ahurst@orrick.com

www.orrick.com

AO 88A  (Rev  01/09) Subpoena to Testify at a Deposition or to Produce Documents in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Central District of California

| | | |
|---|---|---|
| MGA ENTERTAINMENT, INC. | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No. CV 05-2727 SGL (RNBx) |
| | ) | |
| MATTEL, INC., | ) | (If the action is pending in another district, state where: |
| *Defendant* | ) | District of _____ ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION
## OR TO PRODUCE DOCUMENTS IN A CIVIL ACTION

To:  RICHARD N. DE ANDA

☐ *Testimony:*  **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action.  If you are an organization that is *not* a party in this case, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| Place: | Date and Time: |
|---|---|
| 777 S. Figueroa St., #3200, Los Angeles, CA 90017 | 09/16/2009  9:00 AM |

The deposition will be recorded by this method:  Stenographic, audio, and videotape

☐ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:  09/10/2009

           *CLERK OF COURT*

                                      OR

           *Signature of Clerk or Deputy Clerk*                     *Attorney's signature*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*   MGA Entertainment, Inc.,
Isaac Larian, MGAE de Mexico, MGA Entertainment (HK) Ltd. _____ , who issues or requests this subpoena, are:

Annette Hurst, Orrick Herrington & Sutcliffe, 405 Howard Street, San Francisco, CA 94105
ahurst@orrick.com, (415) 773-4585

American LegalNet, Inc.
www.FormsWorkflow.com

AO 88A  (Rev.  01/09) Subpoena to Testify at a Deposition or to Produce Documents in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

This subpoena for *(name of individual and title, if any)* ...........................................................................
was received by me on *(date)* ............................ .

❑ I personally served the subpoena on the individual at *(place)* ...........................................................................
.............................................................................................. on *(date)* ............................ ; or

❑ I left the subpoena at the individual's residence or usual place of abode with *(name)* ............................
.............................................................. , a person of suitable age and discretion who resides there,
on *(date)* ............................ , and mailed a copy to the individual's last known address; or

❑ I served the subpoena on *(name of individual)* ............................................................. , who is
designated by law to accept service of process on behalf of *(name of organization)* ............................
.............................................................................................. on *(date)* ............................ ; or

❑ I returned the subpoena unexecuted because ............................................................................ ; or

❑ Other *(specify):*


Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of
$ ............................ .

My fees are $ ............................ for travel and $ ............................ for services, for a total of $ ............................ .


I declare under penalty of perjury that this information is true.


Date: ............................                    .............................................................
                                                                Server's signature

                                                     .............................................................
                                                                Printed name and title

                                                     .............................................................
                                                                Server's address

Additional information regarding attempted service, etc:

American LegalNet, Inc.
www.FormsWorkflow.com

Exhibit F - Page 382

AO 88A  (Rev. 01/09) Subpoena to Testify at a Deposition or to Produce Documents in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*

**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

**(i)** At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

**(A)** *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

**(i)** fails to allow a reasonable time to comply;

**(ii)** requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

**(iv)** subjects a person to undue burden.

**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

**(i)** disclosing a trade secret or other confidential research, development, or commercial information;

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

**(iii)** a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*

**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

**(i)** expressly make the claim; and

**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

American LegalNet, Inc.
www.FormsWorkflow.com

Exhibit F - Page 383

1  MELINDA HAAG (State Bar No. 132612)
   mhaag@orrick.com
2  ANNETTE L. HURST (State Bar No. 148738)
   ahurst@orrick.com
3  WARRINGTON S. PARKER III (State Bar No. 148008)
   wparker@orrick.com
4  ORRICK, HERRINGTON & SUTCLIFFE LLP
   The Orrick Building
5  405 Howard Street
   San Francisco, CA  94105-2669
6  Telephone:  1-415-773-5700
   Facsimile:   1-415-773-5759
7
   WILLIAM A. MOLINSKI (State Bar No. 145186)
8  wmolinski@orrick.com
   ORRICK, HERRINGTON & SUTCLIFFE LLP
9  777 South Figueroa Street, Suite 3200
   Los Angeles, CA  90017
10 Telephone:  1-213-629-2020
   Facsimile:   1-213-612-2499
11
   Attorneys for MGA Parties
12

13              UNITED STATES DISTRICT COURT

14             CENTRAL DISTRICT OF CALIFORNIA

15                   EASTERN DIVISION

16 | CARTER BRYANT, an individual, | Case No.  CV 04-9049-SGL (RNBx) |
17 |              Plaintiff,        | Consolidated with: Case No. CV 04-9059 and Case No. CV 05-2727 |
18 |        v.                      | |
19 | MATTEL, INC., a Delaware corporation, | **NOTICE OF DEPOSITION OF RICHARD DE ANDA** |
20 |              Defendant.        | |
21 | | |
22 | AND CONSOLIDATED ACTIONS       | |
23 | | |
24

25

26

27

28

| | |
|---|---|
| 1 | **TO ALL PARTIES AND THEIR COUNSEL OF RECORD:** |
| 2 |   **PLEASE TAKE NOTICE** that pursuant to Rule 30 of the Federal Rules of |
| 3 | Civil Procedure, Counter-Defendants MGA Entertainment, Inc. (collectively, |
| 4 | "MGA"), by their attorneys, will take the deposition of Richard De Anda upon oral |
| 5 | examination before an officer authorized by law to administer oaths, beginning at |
| 6 | 9:00 a.m. on September 16, 2009, at the offices of Orrick, Herrington & Sutcliffe |
| 7 | LLP, 777 South Figueroa Street, Suite 3200, Los Angeles, California, 90017-5855. |
| 8 |   The deposition will be stenographically recorded by a certified court reporter |
| 9 | and may be recorded by videographic and/or audio means pursuant to Rule 30(b)(3) |
| 10 | of the Federal Rules of Civil Procedure.  You are invited to have counsel attend and |
| 11 | cross-examine as authorized by the Rules of Civil Procedure. |

Dated:  September 14, 2009   ORRICK, HERRINGTON & SUTCLIFFE LLP

By: _____
     Annette L. Hurst
    Attorneys for MGA Parties

NOTICE OF DEPOSITION OF RICHARD DE ANDA
CV 04-9049 SGL (RNBx)

Exhibit F - Page 385

AO 88A (Rev. 01-09) Subpoena to Testify at a Deposition or to Produce Documents in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Central District of California

| | | |
|---|---|---|
| MGA ENTERTAINMENT, INC. | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No. CV 05-2727 SGL (RNBx) |
| | ) | |
| MATTEL, INC., | ) | (If the action is pending in another district, state where: |
| *Defendant* | ) | District of _____ ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION
## OR TO PRODUCE DOCUMENTS IN A CIVIL ACTION

To:  RICHARD N. DE ANDA

☐ *Testimony:*  **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization that is *not* a party in this case, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| Place: | Date and Time: |
|---|---|
| 777 S. Figueroa St., #3200, Los Angeles, CA 90017 | 09/16/2009  9:00 AM |

The deposition will be recorded by this method:  Stenographic, audio, and videotape

☐ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:  09/10/2009

*CLERK OF COURT*

OR _____

*Signature of Clerk or Deputy Clerk*                           *Attorney's signature*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*   MGA Entertainment, Inc., Isaac Larian, MGAE de Mexico, MGA Entertainment (HK) Ltd.   , who issues or requests this subpoena, are:

Annette Hurst, Orrick Herrington & Sutcliffe, 405 Howard Street, San Francisco, CA 94105
ahurst@orrick.com, (415) 773-4585

American LegalNet, Inc.
www.FormsWorkflow.com

Exhibit F - Page 386

## PROOF OF SERVICE BY EMAIL TO COUNSEL

I am more than eighteen years old and not a party to this action.  My business address is Orrick, Herrington & Sutcliffe LLP, The Orrick Building, 405 Howard Street, San Francisco, CA 94105.  On September 14, 2009, I served the following document(s):

- **NOTICE OF DEPOSITION AND DEPOSITION SUBPOENA TO TESTIFY AT DEPOSITION OR TO PRODUCE DOCUMENTS IN A CIVIL ACTION TO RICHARD N. DE ANA**

I served copies of said papers on September 14, 2009 by attaching them to an email addressed to:

| | |
|---|---|
| **Michael Zeller**<br>michaelzeller@quinnemanuel.com | **Dylan Proctor**<br>dylanproctor@quinnemanuel.com |
| **Mark Overland**<br>moverland@scheperkim.com | **Jason Russell**<br>jason.russell@skadden.com |
| **Jon Corey**<br>joncorey@quinnemanuel.com | **Alexander Cote**<br>acote@scheperkim.com |

I declare under penalty of perjury that the foregoing is true and correct.
Executed on September 14, 2009, at San Francisco, California.

_____
Rebecca B. Mance

**Mance, Rebecca**

| | |
|---|---|
| **From:** | Mance, Rebecca |
| **Sent:** | Monday, September 14, 2009 11:43 AM |
| **To:** | 'michaelzeller@quinnemanuel.com'; 'dylanproctor@quinnemanuel.com'; 'moverland@scheperkim.com'; 'jason.russell@skadden.com'; 'joncorey@quinnemanuel.com'; 'acote@scheperkim.com' |
| **Cc:** | Hurst, Annette |
| **Subject:** | Bryant v. Mattel CV 04-9049-SGL (RNBx) - Notice of Deposition and Deposition Subpoena of Richard De Ana |
| **Attachments:** | DOC001.PDF |

Gentlemen:

Please see attached referenced above.

Thank you,
Rebecca Mance



ORRICK

REBECCA B. MANCE
*Legal Secretary*
ORRICK, HERRINGTON & SUTCLIFFE LLP
rmance@orrick.com
www.orrick.com

## PROOF OF SERVICE BY HAND DELIVERY

I, _Scott Amundson_ declare I am a resident of the State of California and over the age of eighteen years, and not a party to the within action; my business address is 350 S. Figueroa Street, Suite 196, Los Angeles, California 90071.

On September 14, 2009 I served all parties with the following documents:

- **NOTICE OF DEPOSITION AND DEPOSITION SUBPOENA TO TESTIFY AT DEPOSITION OR TO PRODUCE DOCUMENTS IN A CIVIL ACTION TO RICHARD N. DE ANA**

by hand-delivering true and correct copies of those documents to:

**Michael Zeller, Esq.**
**Dylan Proctor, Esq.**
**Jon Corey, Esq.**
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017

**Mark Overland, Esq.**
**Alexander Cote, Esq.**
Scheper Kim & Overland LLP
One Bunker Hill
601 West Fifth Street, 12th Floor
Los Angeles, California 90071

**Jason Russell, Esq.**
Skadden Arps Slate Meagher & Flom LLP
300 South Grand Avenue
Suite 3400
Los Angeles, CA 90071

Executed on September 14, 2009, at Los Angeles, California.

I declare under penalty of perjury that the foregoing is true and correct.

_Scott Amundson_

Exhibit F - Page 389

# Exhibit G

**Hurst, Annette**

| | |
|---|---|
| **From:** | Michael T Zeller [michaelzeller@quinnemanuel.com] |
| **Sent:** | Monday, September 14, 2009 4:57 PM |
| **To:** | Hurst, Annette; Dylan Proctor; Jon Corey |
| **Cc:** | Angell, Jason; Gambhir, Nitin; Parker, Warrington; Molinski, William |
| **Subject:** | RE: Carter Bryant v. Mattel, Inc. and consolidated actions |

We disagree, and the Discovery Master's Order clearly rejected your position beyond the subpoena issue and, in any event, you have now violated other Rules as well.


Michael T. Zeller
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Direct: (213) 443-3180
Main Phone: (213) 443-3000
Main Fax:  (213) 443-3100
E-mail:  michaelzeller@quinnemanuel.com
Web:  www.quinnemanuel.com

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above.  This message may be an attorney-client communication and/or work product and as such is privileged and confidential.  If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited.  If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.



**From:** Hurst, Annette [mailto:ahurst@orrick.com]
**Sent:** Monday, September 14, 2009 4:55 PM
**To:** Michael T Zeller; Dylan Proctor; Jon Corey
**Cc:** Angell, Jason; Gambhir, Nitin; Parker, Warrington; Molinski, William
**Subject:** RE: Carter Bryant v. Mattel, Inc. and consolidated actions

Mattel claimed he is a third party and you refused to accept service of a subpoena.  Now you say you represent him anyway.  I will take this e-mail as your indication that the witness will not appear on Wednesday in response to the subpoena, and we will be filing a renewed ex parte application seeking to compel his deposition.

Your assertion that the subpoena was sent in defiance of any order or rule is incorrect.  The Discovery Master denied the prior application WITHOUT PREJUDICE solely on the ground that Mattel claimed no longer to employ Mr. de Anda.  And, Mr. Corey agreed with Ms. Mankey earlier this year that Mr. de Anda could be deposed again (without mentioning his purported retirement).

MGA's actions have been proper in all respects.  If you wish to meet and confer for the purposes of providing a date for the deposition prior to the 9/22 hearing, please let me know.  Otherwise we will proceed to file an ex parte application to compel,.


**From:** Michael T Zeller [mailto:michaelzeller@quinnemanuel.com]
**Sent:** Mon 9/14/2009 4:44 PM

9/15/2009                                                                            Exhibit G - Page 390

**To:** Hurst, Annette; Dylan Proctor; Jon Corey
**Cc:** Angell, Jason
**Subject:** RE: Carter Bryant v. Mattel, Inc. and consolidated actions

We do represent him, as you know.  We will send you a letter about your improper subpoena, sent in defiance of the Discovery Master's Order and the Federal Rules, in due course.


Michael T. Zeller
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Direct: (213) 443-3180
Main Phone: (213) 443-3000
Main Fax:  (213) 443-3100
E-mail:  michaelzeller@quinnemanuel.com
Web:  www.quinnemanuel.com

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above.  This message may be an attorney-client communication and/or work product and as such is privileged and confidential.  If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited.  If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.



**From:** Hurst, Annette [mailto:ahurst@orrick.com]
**Sent:** Monday, September 14, 2009 4:43 PM
**To:** Michael T Zeller; Dylan Proctor; Jon Corey
**Cc:** Angell, Jason
**Subject:** Carter Bryant v. Mattel, Inc. and consolidated actions

Counsel:

Please advise as previously requested whether or not you are representing Richard de Anda.  Unless I hear definitively from you today that you are, I plan to contact him directly to discuss his deposition.

Thank you.

Annette Hurst




ANNETTE L. HURST
Partner

ORRICK, HERRINGTON & SUTCLIFFE LLP
SAN FRANCISCO

tel (415) 773-4585
fax (415) 773-5759
ahurst@orrick.com

9/15/2009

www.orrick.com

"EMF <orrick.com>" made the following annotations.
-------------------------------------------------------------------------
============================================================

IRS Circular 230 disclosure:
To ensure compliance with requirements imposed by the IRS,
we inform you that any tax advice contained in this
communication, unless expressly stated otherwise, was not
intended or written to be used, and cannot be used, for
the purpose of (i) avoiding tax-related penalties under
the Internal Revenue Code or (ii) promoting, marketing or
recommending to another party any tax-related matter(s)
addressed herein.


============================================================

NOTICE TO RECIPIENT:  THIS E-MAIL IS  MEANT FOR ONLY THE
INTENDED RECIPIENT OF THE TRANSMISSION, AND MAY BE A
COMMUNICATION PRIVILEGED BY LAW.  IF YOU RECEIVED THIS E-
MAIL IN ERROR, ANY REVIEW, USE, DISSEMINATION,
DISTRIBUTION, OR COPYING OF THIS E-MAIL IS STRICTLY
PROHIBITED.  PLEASE NOTIFY US IMMEDIATELY OF THE ERROR BY
RETURN E-MAIL AND PLEASE DELETE THIS MESSAGE FROM YOUR
SYSTEM. THANK YOU IN ADVANCE FOR YOUR COOPERATION.

For more information about Orrick, please visit
http://www.orrick.com/
============================================================
================================================================

9/15/2009                                          Exhibit G - Page 392