# Exhibit 1

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

# Exhibit 2

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

# Exhibit 3

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

# Exhibit 4

1   Hon. Edward A. Infante (Ret.)
    JAMS
2   Two Embarcadero Center
    Suite 1500
3   San Francisco, California 94111
    Telephone:   (415) 774-2611
4   Facsimile:   (415) 982-5287

5

6

7

8                   UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10                       EASTERN DIVISION

11

12  CARTER BRYANT, an individual,        CASE NO. CV 04-09049 SGL (RNBx)
                                         JAMS Reference No. 1100049530
13
             Plaintiff,
14                                       Consolidated with
         v.                              Case No. CV 04-09059
15                                       Case No. CV 05-2727
    MATTEL, INC., a Delaware corporation,
16                                       ORDER DENYING MGA'S AND
             Defendant.                  CARTER BRYANT'S JOINT MOTION
17                                       TO COMPEL AN UNREDACTED
                                         VERSION OF M0074400, MATTEL'S
18                                       INVESTIGATIVE FILE 02-299 AND
                                         THE FURTHER DEPOSITION OF
19                                       RICHARD DE ANDA

20  CONSOLIDATED WITH
    MATTEL, INC. v. BRYANT and
21  MGA ENTERTAINMENT, INC. v. MATTEL,
    INC.
22

23                       I. INTRODUCTION

24      On January 4, 2008, MGA Entertainment, Inc. ("MGA") and Carter Bryant ("Bryant")

25  submitted a "Joint Motion to Compel an Unredacted Version of M0074400, Mattel's Investigative

26  File 02-299 and the Further Deposition of Richard De Anda."  On January 14, 2008, Mattel, Inc.

27

28
    Bryant v. Mattel, Inc.,                                                      1
    CV-04-09049 SGL (RNBx)

                                                                    Exhibit 4
                                                                    Page 24

                           5-9-08

1    ("Mattel") submitted an opposition, and on January 18, 2008, MGA and Bryant submitted a reply.

2    The parties were directed to meet and confer further regarding the motion, which has now been

3    completed. See Joint Report dated March 28, 2008.  Pursuant to Paragraph 5 of the Stipulation

4    and Order for Appointment of a Discovery Master, the Discovery Master finds it appropriate to

5    take the motion under submission for decision without oral argument.

6    II. BACKGROUND

7        Richard De Anda ("De Anda") is Mattel's Vice President of Global Security.  MGA

8    deposed De Anda on December 19, 2007 from about 9:00 a.m. to after 7:00 p.m., including

9    breaks.  Mumford Decl., Ex. 7.  Bryant's counsel was present at the deposition, but did not

10   question De Anda.

11       MGA and Bryant contend that during his deposition, De Anda voluntarily disclosed the

12   content of several conversations with in-house counsel, Michele McShane ("McShane"), from

13   March 2002 to August 2002 and beyond, and admitted that the content of those conversations was

14   reflected in the redacted portions of an email bearing bates number M0074400.  MGA and Bryant

15   move to compel Mattel to produce an unredacted version of this email on the grounds that any

16   attorney-client privilege was waived by De Anda's voluntary disclosure of his conversations with

17   McShane.

18       In response, Mattel contends that De Anda's testimony did not reveal the substance of any

19   privileged communication.  Rather, Mattel contends that De Anda's testimony was limited to the

20   factual circumstances surrounding his conversations with McShane or matters relating to

21   scheduling and coordination of investigations.  Mattel has submitted an unredacted copy of

22   M0074400 for in camera review.

23       Next, MGA and Bryant contend that during his deposition, De Anda testified that there

24   was an additional file (Investigative File 02-299) "related" to the one De Anda's department

25   opened in March 2002 to investigate whether MGA and Isaac Larian were hiring Mattel

26   employees and manufacturing products based on designs that belonged to Mattel.  MGA and

27

28
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

1  Bryant move to compel production of Investigative File 02-299 based upon De Anda's purported

2  admission that the File is relevant.  In response, Mattel contends that Investigative File 02-299 is

3  not relevant to this litigation, and that even if it were relevant, the File is protected by the

4  attorney-client privilege.  Mattel has submitted Investigate File 02-299 for *in camera* review,

5  together with the declaration of Mattel's Vice President and Assistant General Counsel attesting to

6  the contents of the File.

7       MGA and Bryant also seek an additional day to depose De Anda on the grounds that (1)

8  he is a key witness and (2) counsel did not have sufficient time to cover all aspects of the

9  investigations conducted by De Anda's department, including approximately 1200 pages of

10  investigative files that Mattel produced a day and a half before the deposition.  MGA and Bryant

11  also request additional time to allow Bryant's counsel an opportunity to question De Anda.  In

12  response, Mattel contends that MGA and Bryant had ample opportunity to depose De Anda.

13  Further, Mattel contends that MGA's counsel wasted much of the allotted time on collateral

14  issues, and should not now complain that there was insufficient time.

15                              III. DISCUSSION

16  A.  De Anda Did Not Waive the Attorney-Client Privilege as to M0074400

17       The essential elements of the attorney-client privilege are: "(1) When legal advice of any

18  kind is sought (2) from a professional legal adviser in his or her capacity as such, (3) the

19  communications relating to that purpose, (4) made in confidence (5) by the client, (6) are, at the

20  client's instance, permanently protected (7) from disclosure by the client or by the legal adviser

21  (8) unless the protection be waived." United States v. Martin, 278 F.3d 988, 999 (9th Cir. 2002).

22  The burden is on the party asserting the privilege to establish all the elements of the privilege.

23  United States v. Munoz, 233 F.3d 1117, 1128 (9th Cir. 2000).

24    "Voluntary disclosure of the content of a privileged attorney communication constitutes waiver

25  of the privilege as to all other such communications on the same subject."  Weil v. Inv./Indicators,

26  Research & Mgmt., Inc., 647 F.2d 18, 24 (9th Cir. 1981); see also Chevron Corp. v. Pennzoil Co.,

27

28

1  974 F.2d 1156, 1162 (9th Cir. 1992) (voluntary disclosure of privileged communication

2  constitutes waiver of privilege).  The rationale for the waiver is to prevent a party from disclosing

3  communications that support its position while simultaneously concealing communications that

4  do not.  Board of Trustees of Leland Stanford Junior University v. Roche Molecular Systems,

5  Inc., 237 F.R.D. 618, 625 (N.D. Cal. 2006).  "However, '[t]here is no bright line test for

6  determining what constitutes the subject matter of a waiver, rather courts weigh the circumstances

7  of the disclosure, the nature of the legal advice sought and the prejudice to the parties of

8  permitting or prohibiting further disclosures.'"  Id., quoting Fort James Corp. v. Solo Cup Co.,

9  412 F.3d 1340, 1349-50 (Fed. Cir. 2005) (holding that a party cannot selectively choose to

10  disclose information that supports its position, while withholding information that might damage

11  its case).

12        MGA and Bryant cite to ten different excerpts of De Anda's deposition to establish that De

13  Anda waived the attorney-client privilege.  As explained more fully below, in nine of the ten

14  excerpts, De Anda did not disclose the content of a confidential attorney-client communication

15  made for the purpose of giving or receiving legal advice, and therefore Mattel did not waive the

16  attorney-client privilege.

17        On pages 184:20-188:23, De Anda did not disclose the content of a privileged attorney-

18  client communication made for the purpose of giving or receiving legal advice.  Instead, when

19  asked about his conversation with McShane, De Anda testified very generally regarding his

20  impressions of the conversation as follows: "My take-away was that we were talking about one

21  or two of the same individuals that had contacted me had contacted her or it could have been the

22  other of the one who contacted me."  De Anda Tr. 186:24-187:3, Mumford Decl., Ex. 1.

23        On pages 192:2-193:17, De Anda testified regarding how Mattel's investigation was going

24  to be managed.  Specifically, De Anda testified as follows:

25        My take-away as I recall today from that conversation is – was more of –
        of having the same information and how it was going to be managed and who was
26        going to manage it, either she was or I was, because there was no need to run a
        parallel effort in managing this.  And I think that was the – that was the take-away
27        from me.  It wasn't – we did not have a dialogue because I think there was – there

28

was not enough information at the time or very, very little information at the time and I don't know where the information – how the information – what was the basis of the information.

De Anda Tr. 192:6-192:18. De Anda also explained that the essence of the conversation was "to understand the issue" and to understand who would be taking responsibility for the investigation into a potential claim for copyright infringement. De Anda Tr. 192:23-193:17, Mumford Decl., Ex. 1. De Anda did not disclose the content of a confidential attorney-client communication made for the purpose of giving or receiving legal advice.

On pages 197:11-22, De Anda gave generalized testimony regarding how an investigation should be conducted. Counsel asked, "Did you do any investigative background on MGA to prepare yourself better for this meeting?" De Anda Tr. 197:10, Mumford Decl., Ex. 1. De Anda responded as follows:

> No, that wasn't the – that wasn't the subject matter of the meeting at the time as I had said previously because it was a – and let me back up a second, too. This may help you understand. You don't necessarily shotgun an investigation and go a thousand directions in one place because actually what that nets is just busy work that has very little value to it. You have to do this methodically. So the first – the first process in this is to understand who is going to take responsibility for this matter and that was basically trying to gain an understanding of what was being communicated to us and what was the basis of this communication.

De Anda Tr. 197:11-22, Mumford Decl., Ex. 1. Nowhere in the passage cited above does De Anda reveal the substance of a confidential attorney-client conversation made for the purpose of giving or receiving legal advice.

On pages 205:22-207:17, De Anda testified generally about a meeting with McShane and others:

> As I recall this meeting, it was held within the Design Center in a meeting room somewhere in the center of the Design Center and it was – the meeting room – outside the meeting room were cubicles that designers and employees worked at and that, like I said before, I believe to my recollection Cassidy Parks, Ivy Ross, Michele McShane, Bob Simoneau, myself and possibly one or two other people but those one or two other people could have may have walked in and walked out during the meeting and that's why I'm having difficulty recalling these individuals.

1        The subject matter of the meeting was to try to understand – have a better idea of – of what they were communicating to us with regards to Carter Bryant

2   utilizing or copying Luis Martinez's [Toon] Teens while at MGA to create Bratz. . . . And the take-away from that meeting was that Michele McShane would –

3   would take the next step which was the responsibility to determine if, in fact, the [Toon] Teens – Louis Martinez's [Toon] Teens were, in fact, a copyright

4   infringement violation that was utilized to create the Bratz doll.  That was the take-away from there.  So the ball was transferred at that time into her court.

5

6   Tr. 206:3-207:17, Mumford Decl., Ex. 1.  Once again, De Anda did not reveal the content of a

7   privileged communication.  Rather, De Anda's limited testimony disclosed the fact of the meeting,

8   who was in attendance, the purpose of the meeting, and the general subject matter of the meeting,

9   without disclosing the substance of any confidential communication made for the purpose of

10  giving or receiving legal advice.

11          On pages 227:1-17, De Anda testified that he contacted McShane to determine the results

12  of her analysis of Toon Teens and was "frustrated" when he found out that she had not completed

13  the analysis at that time.  Tr. 227:1-17, Mumford Decl., Ex. 1.  De Anda did not, however, reveal

14  the content of any confidential attorney-client communication made for the purpose of giving or

15  receiving legal advice.

16          On pages 240:10-241:23, De Anda similarly testified that he called McShane to determine

17  the status of her analysis of Toon Teens and that based upon that conversation, his understanding

18  was that she had not completed her analysis as of that time.  Tr. 240:10-241:23, Mumford Decl.,

19  Ex. 1.  Again, De Anda did not reveal the content of any attorney-client communication made for

20  the purpose of giving or receiving legal advice.

21          On pages 258:23-259:15, De Anda testified he contacted McShane approximately twice a

22  month to inquire as to the status of her investigation.  Tr. 258:23-259:15, Mumford Decl., Ex. 1.

23  De Anda limited his testimony to the frequency of his contact with McShane and did not disclose

24  the content of any attorney-client communication made for the purpose of giving or receiving

25  legal advice.

26

27

28

1     On pages 281:1-282:3, De Anda testified regarding the email bearing bates number

2   M0074400 that is the subject of the instant motion.  Counsel asked De Anda whether he had read

3   the unredacted version of the email a month ago, and De Anda responded that yes, he had.

4   Counsel next asked whether De Anda had told his lawyers he had reviewed the unredacted email,

5   to which De Anda responded, "I don't recall if I did or didn't as I think I've restated." Tr. 282:1-3,

6   Mumford Decl., Ex. 1.  De Anda did not reveal the substance of any confidential attorney-client

7   communication.

8     On pages 283:1-22, De Anda testified that McShane was the source of the information that

9   had been redacted from the email.  Tr. 283:1-22, Mumford Decl., Ex. 1.  De Anda also testified

10   that the redacted information was the same information that De Anda had received from McShane

11   in the various phone calls during the period of March 2002 through August 2002 regarding the

12   status of McShane's copyright infringement analysis.  Once again, De Anda did not reveal the

13   substance of a privileged communication.

14     In the last of the deposition excerpts at issue, however, De Anda arguably disclosed the

15   content of an attorney-client privileged communication.  On pages 221:17-224:16, De Anda

16   testified as follows:

17         Q: And was there – after that meeting was an issue – was it determined
           that there was an issue?

18

19         MR. COREY: Objection:  vague.

20         THE WITNESS: With regards to the copyright of [Toon] Teens?  Is that
           what you're asking?

21         Q: The accusation that had been placed that Carter Bryant working for
           MGA had used proprietary information of some nature in – in making the

22         Bratz doll.

23         MR. COREY:  Objection:  vague and ambiguous.

24         THE WITNESS: Had – there was a conclusion with regards to Luis
           Martinez's [Toon] Teens being copyrighted to create Bratz.

25

26         Q: And what was that conclusion.

27         A: That it was not.

28

1    Q:  And how do you – how was that conclusion communicated to you?

2    A:  Through Michele McShane.

3    Q:  And when did that occur?

4    A:  It took some time and it was either – it was either at the end of 2002 or beginning of 2003 or thereafter, but to tell you an exact time I can't but I

5    know that it was late.

6    Q:  How did McShane communicate that conclusion to you?

7    A:  I think it was a phone call because – in fact, I'm certain it was a phone call because I was calling her every so often to find out if she had an

8    understanding if this was, in fact, a copyright infringement or not.

9    Q:  Did she communicate to you this conclusion – did you take notes in this phone call?

10

11   A:  I don't believe I did.

      Q:  Did McShane tell you what she did to determine if there was, in fact, a
12   copyright infringement?

13   MR. COREY:  You can answer that "yes" or "no."

14   THE WITNESS:  Well, but I would prefer not.  There was a –

15   MR. COREY:  Well –

16   THE WITNESS:  Okay.  She may have, however, the take-away from the conversation was that it was outside counsel of some sort that came to the

17   conclusion and that was my understanding.  I don't know the exact words but that was my take-away from it.

18
      Q:  Now, this conversation that you had with McShane where she gave
19   you the conclusion that there wasn't a copyright violation of [Toon] Teens, did that conclusion get communicated to you before you received a copy

20   of the anonymous letter that had been sent to Bob Eckert, the Chairman of Mattel -- the CEO of Mattel?

21
      A:  No, it was after because the conclusion had . . .
22

23   Tr. 222:18-224:25.  When De Anda testified that McShane told him a determination had been

24   made that there wasn't a copyright violation of Toon Teens, De Anda disclosed the substance of a

25   an attorney-client communication, which appears to have been made in confidence for the

26   purpose of giving or receiving legal advice.  Nevertheless, even if De Anda disclosed the

27

28

1   substance of an attorney-client privileged communication in the excerpt quoted above, this

2   disclosure was inconsequential.  An *in camera* review of the email at issue bearing Bates number

3   M0074400 confirms that the redacted portions of the email do not pertain to the determination

4   that there wasn't a copyright violation of Toon Teens, and thus, are not within the subject matter

5   of the disclosed communication.  Furthermore, there is no suggestion that Mattel was selectively

6   asserting the attorney-client privilege for use as a sword and shield.  Rather, the transcript

7   indicates that De Anda cooperated during his deposition and attempted to provide very general

8   testimony regarding his communications with McShane.  Therefore, as a matter of fairness, there

9   is no justification for finding a waiver based upon De Anda's limited disclosure of the substance

10  of his communication with McShane.

11       MGA and Bryant next contend that any attorney-client privilege as to the email was

12  waived because De Anda reviewed the unredacted version of the email to prepare for his

13  deposition and presumably refreshed his recollection.  De Anda's testimony, however, was not so

14  definitive.  At one point De Anda testified that he may have seen an unredacted version of the

15  email a month ago (Tr. 271:8-12), and at another point, De Anda testified that he had read the

16  email in unredacted form (Tr. 281:18-20).  Furthermore, he did not testify that his review of the

17  email refreshed his recollection.  Rather, when asked whether reading the email helped him

18  remember events occurring between March and August of 2002, De Anda testified, "[w]hen I

19  read this the – the complete copy back a month or so ago, it may have but I don't recall."  Tr.

20  282:15-17.

21  B. Investigative File 02-299 is Not Relevant to the Claims and Defenses in the Case

22       MGA and Bryant seek an order compelling Mattel to produce Investigative File 02-299,

23  contending that De Anda admitted at his deposition that File 02-299 was "related" to the file

24  opened in March 2002 to investigate whether MGA and Isaac Larian were hiring Mattel

25  employees and manufacturing products based on designs that belonged to Mattel.

26

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

9

Exhibit 4
Page 32

1     MGA's and Bryant's description of De Anda's testimony is inaccurate. De Anda testified

2  that a "notation" on one file that it is "related" to another file "could mean a variety of things,"

3  such as being "related either by location, subject matter, type of issue" to the matters raised by the

4  March 2002 investigation. De Anda Tr. 294:4-9, Mumford Decl., Ex.1. In any event, the

5  notation on File 02-299 that it is "related" to the March 2002 investigation does not necessarily

6  mean it is relevant and discoverable within the meaning of Rule 26, Fed.R.Civ.P.

7     Moreover, an *in camera* review of Investigative File 02-299 confirms Mattel's

8  representation that the File is not relevant to the claims and defenses in this case. Investigative

9  File 02-299 contains information regarding an MGA French licensing agent who had provided

10  Bratz-related licensing information to an employee of Mattel's French affiliate. An *in camera*

11  review confirms that the circumstances of that investigation had nothing to do with the March

12  2002 investigation, the "anonymous letter" or any other claim or defense at issue in this litigation.

13  Furthermore, the declaration of Brian O'Connor, Mattel's Vice President and Assistant General

14  Counsel, establishes that the documents in the file are protected by the attorney-client privilege.

15  <u>C. There is No Good Cause for Additional Time to Depose De Anda re Phase 1 Issues</u>

16     Rule 30(d)(1), Fed.R.Civ.P., provides that "a court must allow additional time consistent

17  with <u>Rule 26(b)(2)</u> if needed to fairly examine the deponent or if the deponent, another person, or

18  any other circumstance impedes or delays the examination." In this case, MGA and Bryant have

19  failed to establish the requisite good cause to justify additional deposition time on Phase 1 issues.

20  De Anda is an important witness in the case. However, MGA's counsel deposed De Anda for

21  over seven hours. A review of the excerpts of the deposition transcript submitted by the parties

22  reveals that MGA was able to question De Anda regarding his investigations and other subjects

23  that are relevant to Phase 1, without any impediments or delays. Indeed, MGA and Bryant

24  acknowledge that they questioned De Anda regarding Mattel's March 2002 investigation of MGA

25  and Isaac Larian for allegedly hiring Mattel employees and manufacturing products based on

26  designs that allegedly belonged to Mattel; the August 2002 investigation conducted after Mattel

27

28

1    received the "anonymous letter"; Mattel's policy on secondary employment; and De Anda's

2    security consulting firm, Richard N. De Anda & Associates. MGA and Carter Bryant have not

3    established good cause to allow additional time to depose DeAnda, taking into consideration all of

4    the factors set forth in Rule 26(b)(2)(C), Fed.R.Civ.P.

5            Finally, although Mattel produced many documents a day and a half before De Anda's

6    deposition, the belated production does not justify additional deposition time regarding Phase 1

7    issues. MGA and Bryant have reviewed the documents and determined that the documents

8    include, *inter alia*, Mattel's investigative files regarding former Mattel employees Carlos Gustavo

9    Machado Gomez ("Machado"), Mariana Trueba Almada ("Trueba") and Pablo Vargas San Jose

10   ("Vargas"). MGA's and Bryant's Opposition at p. 10. According to MGA and Bryant, these

11   documents "relate directly to Mattel's assertions and claims in this litigation that Machado, Trueba

12   and Vargas stole trade secrets from Mattel." Id. Thus, based upon MGA's and Bryant's own

13   description of the documents, the documents are relevant, if at all, to Phase 2 claims and defenses,

14   and not to Phase 1. At present, Phase 2 discovery is stayed.

15                                   IV. CONCLUSION

16           For the reasons set forth above, MGA and Bryant's joint motion is denied. Nothing in this

17   Order is intended to authorize or preclude MGA or Bryant from seeking additional deposition

18   time with De Anda during Phase 2 discovery, if appropriate.

19           Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

20   Master, Mattel shall file this Order with the Clerk of Court forthwith.

21

22   Dated: May 9, 2008

23                                                    HON. EDWARD A. INFANTE (Ret.)
                                                      Discovery Master
24

25

26

27

28

## <u>PROOF OF SERVICE BY E-MAIL</u>

I, Anthony Sales, not a party to the within action, hereby declare that on May 9, 2008, I served the attached: ORDER DENYING MGA'S AND CARTER BRYANT'S JOINT MOTION TO COMPEL AN UNREDACTED VERSION OF M0074400, MATTEL'S INVESTIGATIVE FILE 02-299 AND THE FURTHER DEPOSITION OF RICHARD DEANDA in the within action by email addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| Matthew M. Werdegar, Esq. | Keker & Van Nest | mwerdegar@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| Audrey Walton-Hadlock, Esq. | Keker & Van Nest | awalton-hadlock@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| John Gordon, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johngordon@quinnemanuel.com |
| Diane Hutnyan, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dianehutnyan@quinnemanuel.com |
| Thomas J. Nolan, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tnolan@skadden.com |
| Raoul D. Kennedy, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | rkennedy@skadden.com |
| Amy S. Park, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | apark@skadden.com |
| Harriet S. Posner, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | hposner@skadden.com |
| Carl Alan Roth, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | croth@skadden.com |
| Timothy A. Miller, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tmiller@skadden.com |
| Marcus R. Mumford, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Mmumford@skadden.com |
| Paul M. Eckles, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Paul.eckles@skadden.com |
| Lance A. Etcheverry, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Lance.etcheverry@skadden.com |
| Robert J. Herrington, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Robert.herrington@skadden.com |
| Mark Overland, Esq. | Overland, Borenstein, et al. | moverland@obsklaw.com |
| Alexander Cote, Esq. | Overland, Borenstein, et al. | acote@obsklaw.com |
| David C. Scheper, Esq. | Overland, Borenstein, et al. | dscheper@obsklaw.com |
| Larry W. McFarland, Esq. | Keats, McFarland & Wilson | lmcfarland@kmwlaw.com |
| Christian Dowell, Esq. | Keats, McFarland & Wilson | cdowell@kmwlaw.com |
| Robyn Aronson, Esq. | Davis Wright Tremaine | robynaronson@dwt.com |
| Alonzo Wickers, Esq. | Davis Wright Tremaine | alonzowickers@dwt.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on May 9, 2008, at San Francisco, California.

_____
Anthony Sales

Exhibit 4
Page 35

# Miscellaneous Filings (Other Documents)

2:04-cv-09049-SGL-RNB Carter Bryant v. Mattel Inc
(RNBx), AO279, DISCOVERY, PROTORD, RELATED-G

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

### Notice of Electronic Filing

The following transaction was entered by Proctor, Brett on 5/12/2008 at 10:15 AM PDT and filed on
5/12/2008
**Case Name:**          Carter Bryant v. Mattel Inc
**Case Number:**        2:04-cv-9049
**Filer:**              Mattel Inc
**Document Number:** 3562

**Docket Text:**
Order Denying MGA's and Carter Bryant's Joint Motion to Compel Unredacted Version of M0074400,
Mattel's Investigative File 02-299 and The Further Deposition of Richard De Anda filed by Counter
Claimant Mattel Inc (Proctor, Brett)

### 2:04-cv-9049 Notice has been electronically mailed to:

Juan Pablo Alban     juanpabloalban@quinnemanuel.com

Timothy L Alger      timalger@quinnemanuel.com

Christa M Anderson   canderson@kvn.com

Matthew C Bousquette    caldwell@caldwell-leslie.com

Linda M Burrow       burrow@caldwell-leslie.com

Jon D Corey     joncorey@quinnemanuel.com

Alexander H Cote     acote@obsklaw.com, feseroma@obsklaw.com

Leah Chava Gershon    leah@spertuslaw.com

Scott E Gizer     sgizer@chrisglase.com

Melissa Grant     melissagrant@quinnemanuel.com

Emil W Herich     eherich@kmwlaw.com

Diane C Hutnyan    dianehutnyan@quinnemanuel.com, andreahoeven@quinnemanuel.com

Exhibit 4
Page 36

Stan Karas    stankaras@quinnemanuel.com, gayleduran@quinnemanuel.com,
westonreid@quinnemanuel.com

John W Keker    jkeker@kvn.com, DRoberts@kvn.com, efiling@kvn.com

Michael P Kelly    mikelly@skadden.com

Raoul D Kennedy    rkennedy@skadden.com

Alisa Morgenthaler Lever    amorgenthaler@chrisglase.com

James E Lyons    jlyons@skadden.com

Larry W McFarland    lmcfarland@kmwlaw.com

Cyrus S Naim    cyrusnaim@quinnemanuel.com

Thomas J Nolan    tnolan@skadden.com, carl.roth@skadden.com, marcus.mumford@skadden.com

Randa A F Osman    randaosman@quinnemanuel.com

Mark E Overland    moverland@obsklaw.com, jhibino@obsklaw.com

Michael H Page    mhp@kvn.com, efiling@kvn.com

Kenneth A Plevan    kenneth.plevan@skadden.com, drogosa@skadden.com, sumclaug@skadden.com

Brett Dylan Proctor    dylanproctor@quinnemanuel.com

Rebekah L Punak    rpunak@kvn.com, lhartzlewis@kvn.com

John B Quinn    johnquinn@quinnemanuel.com

Jason D Russell    jrussell@skadden.com, allison.velkes@skadden.com

David C Scheper    dscheper@obsklaw.com, feseroma@obsklaw.com

Oleg Stolyar    alexstolyar@quinnemanuel.com

Sandra L Tholen    tholen@caldwell-leslie.com

John Elliot Trinidad    jtrinidad@kvn.com, cparker@kvn.com, efiling@kvn.com, yjayasuriya@kvn.com

Audrey Walton-Hadlock    awaltonhadlock@kvn.com

Matthew M Werdegar    mmw@kvn.com

Michael T Zeller    michaelzeller@quinnemanuel.com

**2:04-cv-9049 Notice has been delivered by First Class U. S. Mail or by fax to: :**

Exhibit 4
Page 37

Lauren E Aguiar
Skadden Arps Slate Meagher & Flom
1440 New York Ave
Washington, DC 20005-2111

Marina Vladimir Bogorad
Skadden Arps Slate Meagher & Flom
300 S Grand Ave, Ste 3400
Los Angeles, CA 90071-3144

David W Foster
Skadden Arps Slate Meagher & Flom LLP
1440 New York Avenue NW
Washington, DC 20005-2111

Nathan Meyer
Kaye Scholer
1999 Avenue of the Stars, Suite 1700
Los Angeles, CA 90067

Cheryl Plambeck
Davis & Gilbert LLP
1740 Broadway
New York, NY 10019

Amy R Sabrin
Skadden Arps Slate Meagher & Flom LLP
1440 New York Avenue NW
Washington, DC 20005-2111

Kien C Tiet
Stern and Goldberg
6345 Balboa Boulevard, Suite 200
Encino, CA 91316

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**C:\Documents and Settings\laurakinsey\Desktop\Order re DeAnda.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=5/12/2008] [FileNumber=5834485-0]
[7e452961728c3cad3acdbfdca7de6d5bafc18f87c587db397b88c91bcaeba15d5d70
6d07d47de4ece5e90cf2573689db785a75c7d9c8c274d5ebcd77b33ac68c]]

Exhibit 4
Page 38

# Exhibit 5

1   MELINDA HAAG (State Bar No. 132612)
    mhaag@orrick.com
2   ANNETTE L. HURST (State Bar No. 148738)
    ahurst@orrick.com
3   WARRINGTON S. PARKER III (State Bar No. 148003)
    wparker@orrick.com
4   ORRICK, HERRINGTON & SUTCLIFFE LLP
    The Orrick Building
5   405 Howard Street
    San Francisco, CA 94105
6   Telephone:  +1-415-773-5700
    Facsimile:   +1-415-773-5759
7
    WILLIAM A. MOLINSKI (State Bar No. 145186)
8   wmolinski@orrick.com
    ORRICK, HERRINGTON & SUTCLIFFE LLP
9   777 South Figueroa Street, Suite 3200
    Los Angeles, CA  90017
10  Telephone:  +1-213-629-2020
    Facsimile:   +1-213-612-2499
11
12  Attorneys for MGA Parties

13                    UNITED STATES DISTRICT COURT

14                   CENTRAL DISTRICT OF CALIFORNIA

15                          EASTERN DIVISION

16  | CARTER BRYANT, an individual | Case No. CV 04-9049 SGL (RNBx) |
17  |                              | Consolidated with:            |
    | Plaintiff,                   | CV 04-9059                    |
18  |                              | CV 05-2727                    |
    | v.                           |                               |
19  |                              | **DISCOVERY MATTER**          |
    | MATTEL, INC., a Delaware     |                               |
20  | Corporation                  | **[To be heard by Discovery Master Robert C. O'Brien]** |
21  | Defendant.                   |                               |
22  |                              | MGA ENTERTAINMENT, INC.'S EX PARTE APPLICATION FOR (1) ORDER TO SHORTEN TIME FOR |
23  | AND CONSOLIDATED ACTIONS     | RESPONSE AND PRODUCTION OF DOCUMENTS REGARDING GIFTS TO |
24  |                              | LAW ENFORCEMENT, AND (2) ORDER AUTHORIZING SERVICE OF |
25  |                              | DEPOSITION NOTICE AND COMPELLING DEPOSITION |
26  |                              | RICHARD DE ANDA IN ADVANCE OF COURT-ORDERED HEARING |
27

28

# EX PARTE APPLICATION

Plaintiff and Counter-Defendant MGA Entertainment, Inc. ("MGA") hereby applies ex parte for the following relief:  (1) an order pursuant to Federal Rule of Civil Procedure 34(b)(2)(A) shortening time for Mattel to respond and produce documents in response to MGA's Third Set of Phase 2 Document Requests Nos. 170-173 requiring such response and production on September 14, 2009; and (2) an order pursuant to Rule 30(a)(2)(A)(ii) permitting the service of a further Notice of Deposition upon Richard de Anda and compelling his attendance at such deposition on September 16, 2009 at 1:00 p.m.  The grounds for this Application are as follows.

1.      On August 3, 2007, MGA served document requests Nos. 526 and 528 requesting all of Mattel's communications with and documents provided to law enforcement authorities regarding various persons and entities.

2.      On September 4, 2007, Mattel served responses to the requests.  In the initial set of responses, Mattel agreed to produce documents responsive to Request No. 526 seeking communications with law enforcement authorities, but objected to and refused to produce documents in response to Request No. 528.  In subsequent "corrected" responses, however, Mattel retracted its agreement to produce the documents responsive to Request No. 526.  One of the grounds upon which Mattel objected to Request No. 526 for communications with law enforcement authorities was that it was "duplicative" of prior requests.  Mattel did not make a representation, however, that the documents supposedly responsive to those prior requests that were also responsive to Request No. 526 had been produced.

3.      MGA first moved to compel production on these document requests in January 2008.  In February 2008, the stay of Phase 2 discovery was entered and the motion was thereafter ordered off calendar in light of the stay.  On February 6, 2009, after the stay was lifted, MGA renewed its motion to compel, and Mattel again opposed it.

Exhibit 5
Page 40

4.      On March 13, 2009, in Discovery Master Order No. 6, the Discovery Master overruled Mattel's objections in their entirety and ordered compliance with document requests Nos. 526 and 528 requiring Mattel to produce documents evidencing its communications with law enforcement authorities.  The Order required that all "records of communications between Mattel and law enforcement officials shall be produced in the same format and order as they are maintained in the original files of [Mattel] as required by Federal Rule of Civil Procedure 34(b)(2)(E)(i).  Order No. 6 ¶5.  The Order further required that "the documents reflecting Mattel's communications with law enforcement officials shall include any and all enclosures, and documents transmitted as a group shall be marked in a manner that permits MGA to ascertain which pages constitute each individual transmittal."  *Id.*  ¶6.

5.      On or about April 13, 2009, Mattel produced documents pursuant to Order No. 6.  Amongst those documents was M 0925946-46, an e-mail from a Canadian police officer, Mr. Rodney Jones, to Richard de Anda, Mattel's head of security, dated April 25, 2006.  The e-mail stated, amongst other things, that "we received the package you sent and made the distributions to the officers with young children.  Ok, I admit to having a couple on my desk.  Thank you very much for your kindness it was appreciated.  I really enjoyed meeting with you and will try to stay involved with the Mattel investigation as much as possible."

6.      Mattel's production of documents pursuant to Order No. 6 did not include, however, any documents evidencing the communication of the package itself.  There was no cover letter or any other document communicating the package.  Nor was there any supplemental response to the request, or certificate of compliance with Order No. 6 by Mattel, itemizing the communication of the package from Mr. de Anda to Mr. Jones and explaining that the package itself could not be provided because it had been conveyed to Mr. Jones.

7.      Mattel has not produced any other documents identifying the contents

MGA EX PARTE APP. FOR DOCS AND DEPO OF DE ANDA
CV-04-0049 SGL (RNBx)

Exhibit 5
Page 41

of "the package" sent by Mr. de Anda to Mr. Jones.

8.     Mr. de Anda was previously deposed in this action on December 19, 2007.  Mr. de Anda was not questioned about the e-mail from Mr. Jones or any of the circumstances surrounding "the package," nor was he questioned more generally about Mattel's communications with law enforcement authorities related to the substance of its trade secret allegations.  M 0925946-46 had not yet been produced by Mattel when Mr. de Anda was deposed.

9.     On July 27, 2009, MGA served a 30(b)(6) Notice regarding Mattel's communications with governmental authorities, its collection and production of documents responsive to Requests Nos. 526 and 528, and other topics.  Mattel refused to produce a witness in response to the Notice, and MGA moved to compel on August 18, 2009.  As part of that motion, MGA also moved to de-designate the Jones-de Anda e-mail as AEO under the Protective Order.  The motions are fully briefed, but the Discovery Master has not yet set a hearing date.

10.     On August 28, 2009, MGA served its Third Set of Phase 2 Document Requests on Mattel.  A true and correct copy of those requests is attached hereto as Exhibit A.  Three of the requests, Nos. 170-72, sought additional documents concerning the Jones-de Anda e-mail, and a fourth, Request No. 173, sought documents regarding any other packages sent to law enforcement authorities.

11.     In particular, Request No. 170 asked for "DOCUMENTS sufficient to identify the entire contents of the 'package you sent' referenced in M 0925945." Request No. 171 asked for "DOCUMENTS sufficient to calculate the retail value of the entire contents of the 'package you sent' referenced in M0925945 at the time the package was sent."  Request No. 172 asked for "All DOCUMENTS evidencing or relating to the means and manner of conveyance of the 'package you sent' referenced in M 0925945, including without limitation copies of forms submitted to any public or private common carrier requesting the conveyance, receipts from any common carrier, tracking information, customs declarations, and the like."  Request

Exhibit 5
Page 42

No. 173 asked for "All DOCUMENTS relating, conveying, discussing or describing any package YOU sent to any other law enforcement authorities investigating any of the matters at issue in the TAAC."

12.     Mattel's date for response and production of documents in response to these requests is September 28, 2009.

13.     At the hearing on August 31, 2009, the Court inquired "what is this nonsense about the head of security of Mattel's giving gifts to the Canadian police?" 8/31/09 Hearing Tr. at 20:1-3.  Mr. Zeller responded that it was "hyperbole on MGA's part that is not substantiated by the record."  The Court then inquired further, stating "I don't know whether it's substantiated or not.  Did it happen."  Mr. Zeller then responded, "No."  After saying "no," however, Mr. Zeller went on to concede that Mr. de Anda had given something to the Canadian police.  Mr. Zeller represented to the Court that the contents were "a few toy police cars, like less than ten." 8/31/09 Hearing Tr. at 20:10-13.  A true and correct copy of the hearing transcript is attached hereto as Exhibit B.

14.     On September 3, 2009, the Court ordered Mr. de Anda to appear on September 21, 2009 for a hearing.  A true and correct copy of that order is attached hereto as Exhibit C.

15.     MGA seeks expedited production of the requested documents and a deposition of Mr. Anda in order to prepare for the Court-ordered hearing.  Without production of the requested documents or an opportunity to depose Mr. de Anda regarding the documents, MGA will not be able to adequately prepare for the September 21 hearing.  In particular, absent production of the requested documents (which MGA respectfully submits should have long since been produced in response to Order No. 6 anyway), MGA will not be able to prepare for cross-examination of Mr. de Anda regarding what exactly he sent to the Canadian police or whether he has given gifts to other law enforcement authorities.  This information is exclusively within Mattel's control and MGA has no other means of

- 4 -

Exhibit 5
Page 43

1    discovering the information without Mattel's compliance.  Additionally, with

2    respect to Requests Nos. 170—72, they are very specific and limited, and since

3    Mattel has already investigated this matter enough to make representations to the

4    Court on August 31 about what was sent to the Canadian police, there can be no

5    undue burden in producing these documents on shortened time.

6        16.    Additionally, absent examination of Mr. de Anda in deposition prior to

7    the hearing, MGA will not be afforded a full and fair opportunity to ascertain the

8    evidence in preparation for the hearing.  Mr. de Anda has never been examined

9    regarding the package that he sent to Mr. Jones.

10       17.    Accordingly, for the foregoing reasons, MGA respectfully submits that

11   there is good cause for the Discovery Master to shorten time for response and

12   production of documents in response to Phase 2 Requests Nos. 170-73 pursuant to

13   Rule 34(b)(2)(A), and to permit service of a notice of deposition and to order the

14   deposition of Mr. de Anda for not more than four hours in advance of the hearing

15   pursuant to Rule 30(a)(2)(A)(ii).

16       18.    MGA respectfully requests that the production be ordered on

17   September 14, and the deposition occur on the afternoon of September 16.

18       19.    This proposed schedule will also permit any pertinent information

19   gleaned from the documents and deposition to be supplied to the Court in writing in

20   advance of the September 21, hearing.

21

22

23

24

25

26

27

28

Exhibit 5
Page 44

MGA EX PARTE APP. FOR DOCS AND DEPO OF DE ANDA
CV-04-0049 SGL (RNBx)

1      20.    On September 3, 2009 I sent an e-mail to counsel for Mattel asking

2  that they agree to the foregoing and informing them that MGA would seek ex parte

3  relief.  Mr. Proctor responded and declined to agree.

4  Dated: September 4, 2009       Respectfully submitted,

5                      ORRICK, HERRINGTON & SUTCLIFFE LLP

By: _____
              Annette L. Hurst
            Attorneys for MGA Parties

Exhibit 5
Page 45

MGA EX PARTE APP. FOR DOCS AND DEPO OF DE ANDA
CV-04-0049 SGL (RNBx)

# Exhibit 6

CERTIFIED COPY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

CARTER BRYANT, AN INDIVIDUAL, )
)
          PLAINTIFF, )
)
    V. )     NO. CV 04-9040 SGL (RNBX)
)
MATTEL, INC., A DELAWARE )
CORPORATION, )
)
        DEFENDANTS. )
_____ )
)
AND CONSOLIDATED ACTION (S). )
_____ )

# TELEPHONIC TRANSCRIPT
# OF PROCEEDINGS

# SEPTEMBER 17, 2007



REPORTED BY:
ANGELA DUPRE
CSR NO. 7804
JOB NO. 07AD074

COURT REPORTERS
515 S. Flower Street
Suite 3600
Los Angeles, California 90071
Office: (213) 955-0070
Fax: (213) 955-0077

Exhibit 6
Page 46

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

CARTER BRYANT, AN INDIVIDUAL,   )
                                )
                  PLAINTIFF,    )
                                )
       VS.                      )   CASE NO.
                                )
MATTEL, INC., A DELAWARE        ) CV 04-9049 SGL (RNBX)
CORPORATION,                    ) [CONSOLIDATED WITH
                                ) CASE NO. 04-9059 AND
                  DEFENDANT.    ) CASE NO. 05-2727]
                                )
_____  )
                                )
AND CONSOLIDATED ACTION(S).     )
_____  )


TELEPHONIC TRANSCRIPT OF
PROCEEDINGS, TAKEN BEFORE HON.
EDWARD A. INFANTE, AT 865 SOUTH
FIGUEROA STREET, TENTH FLOOR, LOS
ANGELES, CALIFORNIA, COMMENCING
AT 9:02 A.M., MONDAY, SEPTEMBER 17,
2007, BEFORE ANGELA DUPRE, CSR 7804.

```
 1    APPEARANCES OF COUNSEL:
 2
      FOR CARTER BRYANT:
 3
          KEKER & VAN NEST, LLP
 4        BY:  MICHAEL PAGE, ESQ.
          710 SANSOME STREET
 5        SAN FRANCISCO, CALIFORNIA 94111
          (415) 391-5400
 6        (TELEPHONICALLY)
 7
 8    FOR MATTEL, INC.:
 9        QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
          BY:   TIMOTHY ALGER, ESQ.
10              JON D. COREY, ESQ.
                B. DYLAN PROCTOR, ESQ.
11        865 SOUTH FIGUEROA STREET
          TENTH FLOOR
12        LOS ANGELES, CALIFORNIA 90017-2543
          (213) 443-3000
13
14
      FOR MGA ENTERTAINMENT, INC.:
15
          O'MELVENY & MYERS, LLP
16        BY:  DIANA M. TORRES, ESQ.
          400 SOUTH HOPE STREET
17        LOS ANGELES, CALIFORNIA 90071-2899
          (213) 430-6000
18        (TELEPHONICALLY)
19              AND
20        CHRISTENSEN, GLASER, FINK, JACOBS,
          WEIL & SHAPIRO, LLP
21        BY:  AMMAN A. KHAN, ESQ.
                JOEL N. KLEVENS, ESQ.
22              SCOTT E. GIZER, ESQ.
          10250 CONSTELLATION BOULEVARD
23        19TH FLOOR
          LOS ANGELES, CALIFORNIA 90067
24        (310) 553-3000
25
```

```
 1    APPEARANCES (CONTINUED):

 2
      ALSO PRESENT:
 3
          HON. EDWARD A. INFANTE (TELEPHONICALLY)
 4        JILL THOMAS - IN-HOUSE COUNSEL, MATTEL
          CRAIG HOLDEN - IN-HOUSE COUNSEL, MGA
 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1    RESCHEDULED ON REASONABLE NOTICE, AND WE ARE
 2    WILLING TO DO ANOTHER DATE AT A MUTUALLY CONVENIENT
 3    DATE.
 4            BUT TO SEND US A NOTICE JUST BEFORE A
 5    RELIGIOUS HOLIDAY THAT COVERS TWO DAYS, AND THEN,
 6    YOU KNOW, EXPECT US TO GET SOMEONE ON THE PLANE,
 7    IT'S NOT FAIR AND NOT REASONABLE, YOUR HONOR.
 8        JUDGE INFANTE:   THANK YOU.
 9            ANYTHING FURTHER?
10        MR. ALGER:   YOUR HONOR, I THINK IT'S OBVIOUS
11    THERE'S PLENTY OF STAFFING ON THE OTHER SIDE.   IT'S
12    TWO MAJOR LAW FIRMS IN THIS CASE.
13            AND, AGAIN, IT'S JUST A FAIR AMOUNT OF
14    WHINING HERE.   I DON'T QUITE UNDERSTAND WHY SOMEONE
15    COULDN'T GET ON A PLANE, IF THEY KNEW ABOUT THIS ON
16    TUESDAY.   WE HAVE TWO LAW FIRMS INVOLVED, SOMEBODY
17    COULD SCHEDULE A TRIP TO CHICAGO FOR A COUPLE
18    HOURS.
19        JUDGE INFANTE:   WELL, I UNDERSTAND.
20            THE PROBLEM IS ADEQUATE NOTICE.   THE --
21    THE NOTICE WAS GIVEN SEPTEMBER 11TH, AND I'M NOT
22    SUGGESTING THAT YOU WERE DILATORY IN GIVING THAT
23    NOTICE; YOU GAVE THAT NOTICE AS SOON AS YOU WERE
24    ABLE TO ESTABLISH A DATE THROUGH NEGOTIATION WITH
25    MS. O'NEAL'S ATTORNEY.
```

10

Exhibit 6
Page 50

1    HOWEVER, I HAVE TO FIND IT'S INADEQUATE

2    NOTICE UNDER THE FEDERAL RULES OF CIVIL PROCEDURE.

3    I TAKE INTO CONSIDERATION SORT OF PRESUMPTION THAT

4    10 DAYS IS ADEQUATE NOTICE.  DAYS OF LESS THAN

5    10 DAYS MAY BE ADEQUATE NOTICE, BUT IT DEPENDS UPON

6    THE CIRCUMSTANCES; WHERE THE DEPOSITION IS BEING

7    TAKEN, HOW MANY BUSINESS DAYS.

8         I CERTAINLY FEEL THAT THE RELIGIOUS

9    HOLIDAYS OF LAST WEEK ARE A FACTOR, GOING TO

10   CHICAGO IS A FACTOR.  SO, THEREFORE, I HAVE TO SAY

11   THAT THIS IS INADEQUATE NOTICE UNDER ALL THE

12   CIRCUMSTANCES.

13        WHAT I WOULD SUGGEST IS THAT THE

14   DEPOSITION -- AND THIS IS JUST A SUGGESTION --

15   COULD BE TAKEN BY TELEPHONE TOMORROW AFTERNOON AT

16   2:00.  THE RULES CERTAINLY PROVIDE FOR IT.  THIS IS

17   A SIMPLE DEPOSITION; NO AUTHENTICITY.  THERE WILL

18   BE SOME SUBSTANTIVE QUESTIONS.

19        IF YOU DON'T THINK A TELEPHONE DEPOSITION

20   IS GOOD ENOUGH, THAT'S OKAY.  I RESPECT YOU, IF YOU

21   DON'T WANT TO DO THAT.  BUT YOU'LL HAVE TO CONTINUE

22   THE DEPOSITION TO A LATER DATE, AND GIVE MORE THAN

23   A COUPLE OF BUSINESS DAYS' NOTICE.

24        THE OBJECTION --

25   MR. KLEVENS:  YOUR HONOR --

11

Exhibit 6
Page 51

```
 1        JUDGE INFANTE:  WAIT.  THE OBJECTION IS
 2   SUSTAINED.
 3        MR. KLEVENS:  THANK YOU, YOUR HONOR.  THIS IS
 4   JOEL KLEVENS.  I'M RELATIVELY NEW TO THIS CASE.
 5   I'M AT CHRISTENSEN, GLASER.
 6             BUT I WOULD SIMPLY REQUEST THAT COUNSEL
 7   FOR MATTEL, EVEN WITH THIRD-PARTY DEPOSITIONS,
 8   THERE'S NO REASON --
 9        JUDGE INFANTE:  I'M JUST -- WAIT A MINUTE.
10   WAIT A MINUTE.  I'M JUST RULING ON THIS DEPOSITION.
11   I DON'T WANT ANYMORE SPEECHES.
12             YOUR OBJECTION IS SUSTAINED.  OKAY?
13        MR. KLEVENS:  I WAS JUST DEALING WITH THE
14   TELEPHONE ASPECT, YOUR HONOR, THAT WE OUGHT TO BE
15   CONSULTED ABOUT THE DATE WITH REGARD TO THAT AS
16   WELL.
17        JUDGE INFANTE:  THE PERSON WHO NOTICED THE
18   DEPOSITION HAS A CHOICE OF WHETHER TO DO IT BY
19   TELEPHONE TOMORROW OR NOT.  AND IF IT'S DONE BY
20   TELEPHONE, YOU WILL BE PRESENT.
21             YOUR OBJECTION IS OVERRULED IF IT'S DONE
22   BY TELEPHONE.
23             NOW, DOES THE PERSON WHO NOTICED THE
24   DEPOSITION WISH TO DO IT BY TELEPHONE?
25        MR. ALGER:  YOUR HONOR, IT'S TIM ALGER FOR
```

12

Exhibit 6
Page 52

```
 1    STATE OF CALIFORNIA        )
                                 )    SS.
 2    COUNTY OF LOS ANGELES      )

 3            I,   ANGELA DUPRE    , CERTIFIED

 4    SHORTHAND REPORTER, CERTIFICATE NUMBER 7804, FOR

 5    THE STATE OF CALIFORNIA, HEREBY CERTIFY:

 6            THE FOREGOING PROCEEDINGS WERE TAKEN

 7    BEFORE ME AT THE TIME AND PLACE THEREIN SET FORTH;

 8            THE FOREGOING TRANSCRIPT IS A TRUE AND

 9    CORRECT TRANSCRIPT OF MY SHORTHAND NOTES SO TAKEN;

10            I FURTHER CERTIFY THAT I AM NEITHER

11    COUNSEL FOR NOR RELATED TO ANY PARTY TO SAID ACTION

12    NOR IN ANY WAY INTERESTED IN THE OUTCOME THEREOF.

13            IN WITNESS WHEREOF, I HAVE HEREUNTO

14    SUBSCRIBED MY NAME THIS __18TH_____ DAY OF

15    _____SEPTEMBER_____, 2007.

16

17            _____

18

19

20

21

22

23

24

25
```

A&E COURT REPORTERS (213) 955-0070 FAX: (213) 955-0077

# Exhibit 7

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

| | | |
|---|---|---|
| **NEW YORK**<br>51 Madison Avenue, 22nd Floor<br>New York, NY 10010<br>(212) 849-7000<br>Facsimile: (212) 849-7100 | **LOS ANGELES**<br>865 South Figueroa Street, 10th Floor<br>Los Angeles, CA 90017<br>(213) 443-3000<br>Facsimile: (213) 443-3100 | **TOKYO**<br>Akasaka Twin Tower Main Building, 6th Floor<br>17-22 Akasaka 2-Chome<br>Minato-ku, 107-0052<br>+81 3 5561-1711<br>Facsimile: +81 3 5561-1712 |
| **SILICON VALLEY**<br>555 Twin Dolphin Drive, Suite 560<br>Redwood Shores, CA 94065<br>(650) 801-5000<br>Facsimile: (650) 801-5100 | **SAN FRANCISCO**<br>50 California Street, 22nd Floor<br>San Francisco, CA 94111<br>(415) 875-6600<br>Facsimile: (415) 875-6700 | **LONDON**<br>16 Old Bailey<br>London United Kingdom<br>+44(0) 20 7653 2000<br>Facsimile: +44(0) 20 7653 2100 |

## LOS ANGELES OFFICE

## FACSIMILE TRANSMISSION

**DATE:**   February 17, 2009          **NUMBER OF PAGES, INCLUDING COVER: 2**

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| Caroline H. Mankey, Esq.<br>Glaser, Weil, Fink, Jacobs & Shapiro, LLP | 310-556-7874 | 310-556-2920 |

**FROM:**   Jon Corey

**RE:**   *Mattel, Inc. v. MGA Entertainment, Inc., et al*

**MESSAGE:**



07209/2795852.1

| CLIENT # | 7209 | ROUTE/<br>RETURN TO: | Johanna Minassian - 10th<br>Floor | ☒ CONFIRM FAX<br>☒ INCLUDE CONF. REPORT |
|---|---|---|---|---|
| OPERATOR: | | | CONFIRMED? | ☐ NO   ☐ YES: _____ |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received the facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

Exhibit 7
Page 54

**IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3000 AS SOON AS POSSIBLE.**

```
*********************
***    TX REPORT    ***
*********************

TRANSMISSION OK

TX/RX NO                    2348
RECIPIENT ADDRESS           9414#07209#13105562920#
DESTINATION ID
ST. TIME                    02/17 16:21
TIME USE                    00'40
PAGES SENT                  2
RESULT                      OK
```

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

| NEW YORK | LOS ANGELES | TOKYO |
|---|---|---|
| 51 Madison Avenue, 22nd Floor | 865 South Figueroa Street, 10th Floor | Akasaka Twin Tower Main Building, 6th Floor |
| New York, NY 10010 | Los Angeles, CA 90017 | 17-22 Akasaka 2-Chome |
| (212) 849-7000 | (213) 443-3000 | Minato-ku, 107-0052 |
| Facsimile: (212) 849-7100 | Facsimile: (213) 443-3100 | +81 3 5561-1711 |
| | | Facsimile: +81 3 5561-1712 |

| SILICON VALLEY | SAN FRANCISCO | LONDON |
|---|---|---|
| 555 Twin Dolphin Drive, Suite 560 | 50 California Street, 22nd Floor | 16 Old Bailey |
| Redwood Shores, CA 94065 | San Francisco, CA 94111 | London United Kingdom |
| (650) 801-5000 | (415) 875-6600 | +44(0) 20 7653 2000 |
| Facsimile: (650) 801-5100 | Facsimile: (415) 875-6700 | Facsimile: +44(0) 20 7653 2100 |

## LOS ANGELES OFFICE

## FACSIMILE TRANSMISSION

DATE:    February 17, 2009              NUMBER OF PAGES, INCLUDING COVER: 2

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| Caroline H. Mankey, Esq.<br>Glaser, Weil, Fink, Jacobs & Shapiro, LLP | 310-556-7874 | 310-556-2920 |

FROM:     Jon Corey

RE:       *Mattel, Inc. v. MGA Entertainment, Inc., et al*

MESSAGE:

Exhibit 7
Page 55

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

February 12, 2009

**<u>VIA FACSIMILE and U.S. MAIL</u>**

Caroline H. Mankey, Esq.
Glaser, Weil, Fink, Jacobs & Shapiro, LLP
10250 Constellation Boulevard
19th Floor
Los Angeles, CA 90067

Re:   <u>Mattel, Inc. v. Carter Bryant, et al.</u>

Dear Mrs. Mankey:

I write to confirm our conversation of last Thursday, February 5, 2009, regarding the MGA parties request for additional time to depose.  We agreed to continue our conversation regarding this topic after a ruling on MGA's motion to compel with respect to Request for Production Nos. 526 and 528.

Best regards,

Jon Corey

JDC:wp
00505.07209/2799860.1

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
TOKYO | Akasaka Twin Tower Main Building, 6th Floor, 17-22 Akasaka 2-Chome, Minato-ku, Tokyo 107-0052, Japan | TEL +81-3-5561-1711 FAX +81-3-5561-1712

Exhibit 7
Page 56

# Exhibit 8

COPY FILED

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARTER BRYANT, an individual,<br>(SEE ATTACHED)<br><br>v.<br>Plaintiff(s)<br><br>MATTEL, INC., a Delaware corporation,<br>(SEE ATTACHED)<br>Defendant(s) | CASE NUMBER:<br>CV 04-9049 SGL (RNBx)<br>Consolidated with Case No. 04-9059 and Case No. 05-2727<br><br>**PROOF OF SERVICE**<br>**SUMMONS AND COMPLAINT**<br>(Use separate proof of service for each person/party served) |

1. At the time of service I was at least 18 years of age and not a party to this action and **I served** copies of the *(specify documents)*:

   a. [X] summons   [ ] complaint   [ ] alias summons   [ ] first amended complaint
   [ ] second amended complaint
   [ ] third amended complaint

   [X] other *(specify)*: <u>Mattel, Inc.'s Amended Answer in Case No. 05-2727 and Counterclaims; Standing Order</u>

2. **Person served:**

   a. [X] Defendant *(name)*: <u>MGA ENTERTAINMENT (HK) LIMITED</u>

   b. [X] Other *(specify name and title or relationship to the party/business named)*: <u>Isaac Larian - Officer/ Managing Agent</u>

   c. [X] Address where papers were served: <u>16380 Roscoe Blvd., Van Nuys, CA</u>

3. **Manner of Service** in compliance with *(the appropriate box **must** be checked)*:

   a. [X] Federal Rules of Civil Procedure
   [ ] California Code of Civil Procedure

4. **I served** the person named in Item 2:

   a. [X] **By Personal service.** By personally delivering copies. If the person is a minor, by leaving copies with a parent, guardian, conservator or similar fiduciary and to the minor if at least twelve (12) years of age.

   1. [X] **Papers were served on** *(date)*: <u>February 7, 2007</u>   at *(time)*: <u>7:40 p.m.</u>

   b. [ ] **By Substituted service.** By leaving copies:

   1. [ ] **(home)** at the dwelling house, usual place of abode, or usual place of business of the person served in the presence of a competent member of the household, at least 18 years of age, who was informed of the general nature of the papers.

   2. [ ] **(business)** or a person apparently in charge of the office or place of business, at least 18 years of age, who was informed of the general nature of the papers.

   3. [ ] **Papers were served on** *(date)*: _____   at *(time)*: _____

   4. [ ] **by mailing** *(by first-class mail, postage prepaid)* copies to the person served in Item 2(b) at the place where the copies were left in Item 2(c).

   5. [ ] **papers were mailed on** (date): _____

   6. [ ] **due diligence:** I made at least three (3) attempts to personally serve the defendant.

Exhibit 8

CCD-1B

2-12

c. ☐ **Mail and acknowledgment of service.** By mailing *(by first-class mail or airmail, postage prepaid)* copies to the person served, with two (2) copies of the form of Waiver of Service of Summons and Complaint and a return envelope, postage prepaid addressed to the sender. **(Attach completed Waiver of Service of Summons and Complaint).**

d. ☐ **Service on domestic corporation, unincorporated association (including partnership), or public entity. (F.R.Civ.P. 4(h)) (C.C.P. 416.10)** By delivering, during usual business hours, a copy of the summons and complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute and the statute so requires, by also mailing, by first-class mail, postage prepaid, a copy to the defendant.

e. ☐ **Substituted service on domestic corporation, unincorporated association (including partnership), or public entity. (C.C.P. 415.20 only)** By leaving during usual office hours, a copy of the summons and complaint in the office of the person served with the person who apparently was in charge and thereafter by mailing *(by first-class mail, postage prepaid)* copies to the persons at the place where the copies were left in full compliance with C.C.P. 415.20. Substitute service upon the California Secretary of State requires a court order. **(Attach a copy of the order to this Proof of Service).**

f. ☐ **Service on a foreign corporation.** In any manner prescribed for individuals by FRCP 4(f).

g. ☐ **Certified or registered mail service.** By mailing to an address outside California *(by first-class mail, postage prepaid, requiring a return receipt)* copies to the person served. **(Attach signed return receipt or other evidence of actual receipt by the person served).**

h. ☐ **Other** (specify code section and type of service): _____

5. Service upon the **United States, and Its Agencies, Corporations or Officers.**

a. ☐ by delivering a copy of the summons and complaint to the clerical employee designated by the U.S. Attorney authorized to accept service, pursuant to the procedures for the Office of the U.S. Attorney for acceptance of service. or by sending a copy of the summons and complaint by registered or certified mail addressed to the civil process clerk at the U.S. Attorneys Office.

Name of person served: _____

Title of person served: _____

Date and time of service: *(date)*: _____ at *(time)*: _____

b. ☐ By sending a copy of the summons and complaint by registered or certified mail to the Attorney General of the United States at Washington, D.C. **(Attach signed return receipt or other evidence of actual receipt by the person served).**

c. ☐ By sending a copy of the summons and complaint by registered or certified mail to the officer, agency or corporation **(Attach signed return receipt or other evidence of actual receipt by the person served).**

6. At the time of service I was at least 18 years of age and not a party to this action.

7. Person serving *(name, address and telephone number)*:

Donald Moon PI 22017
P.O. Box 50801
Pasadena, CA 91115
(626) 577-6551

a. Fee for service: $ _____
b. ☐ Not a registered California process server
c. ☒ Exempt from registration under B&P 22350(b)
d. ☐ Registered California process server

8. ☐ I am a California sheriff, marshal, or constable and I certify that the foregoing is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Date: February 9, 2007

_____
*(Signature)*

1

## PROOF OF SERVICE

2

I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action; my business address is 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017-2543.

3

4

On February 12, 2007, I served true copies of the following document(s) described as **PROOF OF SERVICE OF SUMMONS AND COMPLAINT** on the parties in this action as follows:

5

6

Diana M. Torres, Esq.
**O'MELVENY & MYERS, LLP**
400 S. Hope Street
Los Angeles, CA 90071

Keith Jacoby, Esq.
**LITTLER MENDELSON**
2049 Century Park East, 5th Floor
Los Angeles, CA 90067

7

8

**BY MAIL:** I enclosed the foregoing into sealed envelope(s) addressed as shown above, and I deposited such envelope(s) in the mail at Los Angeles, California.  The envelope was mailed with postage thereon fully prepaid.

9

10

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

11

12

Executed on February 12, 2007, at Los Angeles, California.

13

14

15

Helen Lim

16

17

18

19

20

21

22

23

24

25

26

27

28

07209/2053462.1

Exhibit 8
Page 59

# Exhibit 9

COPY

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
  Timothy L. Alger (Bar No. 160303)
  (timalger@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:   (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS. | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with Case Nos. CV 04-09059 and CV 05-02727<br><br>SUPPLEMENTAL DECLARATION OF DONALD MOON REGARDING ATTEMPTS TO PERSONALLY SERVE COUNTERDEFENDANT CARLOS GUSTAVO MACHADO GOMEZ WITH PROCESS |

Exhibit 9
Page 60

07209/2090854.1

SUPPLEMENTAL DECLARATION OF DONALD MOON REGARDING ATTEMPTS TO PERSONALLY SERVE COUNTERDEFENDANT CARLOS GUSTAVO MACHADO GOMEZ WITH PROCESS

I, Donald Moon, declare as follows:

      1.    I am a licensed Private Investigator in the State of California, Private Investigator Number 22017.  I make this declaration of personal, firsthand knowledge and, if called and sworn as a witness, I could and would testify competently thereto.

      2.    On or about January 26, 2007, I was asked to effect service of the following documents in the above-captioned matter on Carlos Gustavo Machado Gomez:  Summons, Mattel, Inc.'s Amended Answer in Case No. 05-2727 and Counterclaims and Standing Order dated April 14, 2006.

      3.    On Sunday, January 28, 2007, at approximately 8:00 a.m., I made my first attempt to serve the Mr. Machado at his residence at 13700 Marina Pointe Dr., unit 916, Marina Del Rey, California.  This location is a high-rise security condominium complex with both vehicle and pedestrian restricted access.  I went to the security desk in the lobby of the building, exhibited my private investigator credentials to the guard at the security desk and informed him that I was there to serve legal process on Mr. Machado.  The guard indicated that I would be allowed access to the area where the Mr. Machado's unit is located, but that I would have to be escorted by a security guard.  Another guard escorted me to Mr. Machado's unit.  I knocked on the door and asked for Mr. Machado by name, but there was no response.  The security guard remained with me at all times and escorted me back to the lobby.  I then left the complex.

      4.    On January 28, 2007, at approximately 8:00 p.m., I returned to the Mr. Machado's residence and repeated the same process with the guard at the security desk in the lobby of the building.  I was escorted by a security guard to Mr. Machado's unit and attempted to contact him by knocking on the door of his unit and calling out his name.  Once again, there was no response.  As before, the security guard remained with me at all times and escorted me back to the lobby.

A07209/2090854.1

-1-

Exhibit 9
Page 61

SUPPLEMENTAL DECLARATION OF DONALD MOON REGARDING ATTEMPTS TO PERSONALLY SERVE COUNTERDEFENDANT CARLOS GUSTAVO MACHADO GOMEZ WITH PROCESS

5.      On Monday, January 29, 2007, at approximately 7:00 p.m., I returned to Mr. Machado's residence and repeated the same process with the guard the security desk. I was again escorted to Mr. Machado's unit by a security guard where I knocked on the door and called out his name. As on the prior occasions, there was no response to my repeated knocks on the door of Mr. Machado's unit. The security guard escorted me back to the lobby of the building and I left.

6.      On Wednesday, January 31, 2007, at approximately 9:45 p.m., I returned to Mr. Machado's residence and asked the guard at the security desk to contact Mr. Machado by telephone to get permission for me to see him. The security guard called Mr. Machado's unit and spoke to a person who the guard addressed as Mr. Machado. The guard informed me that Mr. Machado asked that I identify myself and the purpose of my visit. I informed the guard that I was Donald Moon and that I wanted to see Mr. Machado to serve him with legal process. The guard relayed this message to Mr. Machado. The guard then advised me that Mr. Machado had instructed him not to allow me access to his unit and that he was not receiving anyone that day. I asked the guard if I could speak to Mr. Machado on the telephone, but the guard said that it was against building policy to allow me to do so. I then asked the guard to allow me to go to Mr. Machado's unit. The guard escorted me to Mr. Machado's unit where I knocked on the door and called his name. There was no response from the other side of the door. I left the service copies of the Summons, Mattel's Amended Answer and Counterclaims, and Standing Order at Mr. Machado's door and was escorted by the security guard back to the lobby.

7.      On March 19, 2007, I contacted the management of Mr. Machado's condominium complex and asked to be allowed to remain inside the complex near Mr. Machado's unit so that I could personally serve him as he was leaving or going to his unit. The management refused my request and suggested that I contact the complex's attorney. I left message for the attorney and received no response.

Exhibit 9
Page 62

-2-

SUPPLEMENTAL DECLARATION OF DONALD MOON REGARDING ATTEMPTS TO PERSONALLY SERVE COUNTERDEFENDANT CARLOS GUSTAVO MACHADO GOMEZ WITH PROCESS

8.      On March 22, 2007, I attempted to serve Mr. Machado at the offices of MGA Entertainment, Inc. at 16380 Roscoe Blvd., Van Nuys, California where I am informed Mr. Machado works.  I informed the receptionist in the lobby of the building that I would like to speak with Mr. Machado, but was told that no one by that name worked there.

9.      On Monday, March 26, 2007, at approximately 8:30 p.m., I arrived at Mr. Machado's residence in order to again attempt to serve him.  I informed the guard at the security desk that I wanted to contact Mr. Machado in unit 916 and to serve him with legal process.  The guard stated that he would provide me with an escort to the Mr. Machado's unit.  I asked the guard to call Mr. Machado first to see if he was home.  The guard refused, stating that it was against the policy of the building to do so, but that I could be escorted to the unit to attempt service.

10.     Another security guard escorted me to unit 916 where I again attempt to serve the Mr. Machado.  I knocked on the door several times but there was no response.  The security guard stated that I was allowed only three knocks on the door and that it was now time for me to leave.  As the security guard escorted me back to the lobby, he informed me that residents of the building are instructed by the Home Owners' Association never to open the door unless the visitor has been identified at the security desk in the lobby and the purpose of the visit has been made known to the resident.  When I returned to the security desk, I again asked the guard to call Mr. Machado's unit to confirm if he was home.  The guard refused and stated that I had my chance to serve Mr. Machado.  I then left the Summons, Amended Answer and Counterclaims and Standing Order with the guard and informed him that I was substitute serving him with legal process and that he should contact Mr. Machado and have him pick up the documents.  I asked for the guard's name, but he refused to give it to me.

A07209/2090854.1

-3-

Exhibit 9
Page 63

SUPPLEMENTAL DECLARATION OF DONALD MOON REGARDING ATTEMPTS TO PERSONALLY SERVE COUNTERDEFENDANT CARLOS GUSTAVO MACHADO GOMEZ WITH PROCESS

1          11.    That same night, on March 26, 2007, I mailed a copy of the

2    Summons, Amended Answer and Counterclaims and Standing Order to

3    Mr. Machado at this residence address.

4          12.    On April 10, 2007, at approximately 4:40 p.m., I returned to the

5    offices of MGA Entertainment, Inc. at 16380 Roscoe Blvd., Van Nuys, California to

6    again attempt to personally serve Mr. Machado. I spoke with a woman in the

7    human resources department and informed her that I was there to serve Mr.

8    Machado with legal process. The woman said that she would call the legal

9    department. I then spoke with an individual named Richard Daniels who identified

10   himself as an in-house attorney for MGA. I informed Mr. Daniels that I was there to

11   serve Mr. Machado with legal process. Mr. Daniels confirmed that Mr. Machado

12   worked for MGA at the Van Nuys office, but refused to allow me access to Mr.

13   Machado to serve him with process. I then asked Mr. Daniels if Isaac Larian was

14   available. Mr. Daniels would not confirm if Mr. Larian was there or allow me

15   access to Mr. Larian to substitute serve him with the legal process for Mr. Machado.

16   I also asked Mr. Daniels if Daphne Gronich was available so that I could serve her

17   with the legal process for Mr. Machado. Mr. Daniels would not respond. At that

18   point, I left a copy of the Summons, Amended Answer and Counterclaims and

19   Standing Order with Mr. Daniels and informed him that I was substitute serving him

20   with legal process for Mr. Machado.

21         13.    On April 13, 2007, I mailed a copy of the Summons, Amended

22   Answer and Counterclaims and Standing Order to Mr. Machado at his place of

23   employment at 16380 Roscoe Blvd., Van Nuys, California 91406.

24         14.    I have served process upon litigants in the State of California for

25   the past six years for both state and federal courts as well as out of state

26   jurisdictions. I have also served arrest warrants for criminal defendants who are

27

28
                                                                    Exhibit 9
A07209/2090854.1                          -4-                        Page 64
        SUPPLEMENTAL DECLARATION OF DONALD MOON REGARDING ATTEMPTS TO PERSONALLY SERVE
                 COUNTERDEFENDANT CARLOS GUSTAVO MACHADO GOMEZ WITH PROCESS

1   fugitives from justice.  From this experience, I have formed the opinion that

2   Machado has engaged in a deliberate evasion of service of process.

3

4        I declare under penalty of perjury under the laws of the United States of

5   America that the foregoing is true and correct.

6        Executed on April 13, 2007, at Los Angeles, California.

7

8                                        _____
                                         Donald Moon

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

A07209/2090854.1

Exhibit 9
Page 65
-5-

SUPPLEMENTAL DECLARATION OF DONALD MOON REGARDING ATTEMPTS TO PERSONALLY SERVE
COUNTERDEFENDANT CARLOS GUSTAVO MACHADO GOMEZ WITH PROCESS

1

## PROOF OF SERVICE

2      I am employed in the County of Los Angeles, State of California.  I am over the age of
eighteen years and not a party to the within action; my business address is 865 South Figueroa
3   Street, 10th Floor, Los Angeles, California 90017-2543.

4      On April 16, 2007, I served true copies of the following document(s) described as
**SUPPLEMENTAL DECLARATION OF DONALD MOON REGARDING ATTEMPTS TO**
5   **PERSONALLY SERVE COUNTERDEFENDANT CARLOS GUSTAVO MACHADO**
**GOMEZ WITH PROCESS** on the parties in this action as follows:

6

7   Diana M. Torres, Esq.                     Keith Jacoby, Esq.
**O'MELVENY & MYERS, LLP**         **LITTLER MENDELSON**
8   400 S. Hope Street                        2049 Century Park East, 5th Floor
Los Angeles, CA 90071                     Los Angeles, CA 90067

9   Patty Glaser, Esq.
**CHRISTENSEN, GLASER, FINK,**
10  **JACOBS, WEIL & SHAPIRO**
10250 Constellation Boulevard, 19th Floor
11  Los Angeles, CA 90067

12  **BY MAIL:**  I enclosed the foregoing into sealed envelope(s) addressed as shown above, and I
deposited such envelope(s) in the mail at Los Angeles, California.  The envelope was mailed with
13  postage thereon fully prepaid.

14      I declare under penalty of perjury under the laws of the State of California that the
foregoing is true and correct.
15

16      Executed on April 16, 2007, at Los Angeles, California.

17

18  Helen Lim

19

20

21

22

23

24

25

26

27

28

Exhibit 9
Page 66

07209/2065704.1

# Exhibit 10

**Cyrus Naim**

**From:**     Michael T Zeller

**Sent:**     Tuesday, September 15, 2009 10:52 AM

**To:**       'Hurst, Annette'; Dylan Proctor; Jon Corey

**Cc:**       'Angell, Jason'; 'Gambhir, Nitin'; Bridget Hauler

**Subject:**  RE: Carter Bryant v. Mattel, Inc. and consolidated actions

As our ex parte papers state, there are no responsive documents, and we are asking (as you know) for modification of the Order as it relates to the privilege log.


Michael T. Zeller
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Direct: (213) 443-3180
Main Phone: (213) 443-3000
Main Fax:  (213) 443-3100
E-mail:  michaelzeller@quinnemanuel.com
Web:  www.quinnemanuel.com


The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above.  This message may be an attorney-client communication and/or work product and as such is privileged and confidential.  If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited.  If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.


**From:** Hurst, Annette [mailto:ahurst@orrick.com]
**Sent:** Tuesday, September 15, 2009 10:49 AM
**To:** Michael T Zeller; Dylan Proctor; Jon Corey
**Cc:** Angell, Jason; Gambhir, Nitin; Bridget Hauler
**Subject:** Carter Bryant v. Mattel, Inc. and consolidated actions

Counsel:

As far as we have been able to ascertain, we received nothing from Mattel yesterday pursuant to Discovery Master Order No. 62. Please advise whether Mattel served anything and if so, what it was and the manner of service.

Sincerely,
Annette Hurst



**ORRICK**

**ANNETTE L. HURST**
*Partner*

**ORRICK, HERRINGTON & SUTCLIFFE LLP**
SAN FRANCISCO

*tel* (415) 773-4585
*fax* (415) 773-5759

Exhibit 10
Page 67

ahurst@orrick.com
www.orrick.com

"EMF <orrick.com>" made the following annotations.
-------------------------------------------------------------------------
=========================================================

IRS Circular 230 disclosure:
To ensure compliance with requirements imposed by the IRS,
we inform you that any tax advice contained in this
communication, unless expressly stated otherwise, was not
intended or written to be used, and cannot be used, for
the purpose of (i) avoiding tax-related penalties under
the Internal Revenue Code or (ii) promoting, marketing or
recommending to another party any tax-related matter(s)
addressed herein.

=========================================================

NOTICE TO RECIPIENT:  THIS E-MAIL IS  MEANT FOR ONLY THE
INTENDED RECIPIENT OF THE TRANSMISSION, AND MAY BE A
COMMUNICATION PRIVILEGED BY LAW.  IF YOU RECEIVED THIS E-
MAIL IN ERROR, ANY REVIEW, USE, DISSEMINATION,
DISTRIBUTION, OR COPYING OF THIS E-MAIL IS STRICTLY
PROHIBITED.  PLEASE NOTIFY US IMMEDIATELY OF THE ERROR BY
RETURN E-MAIL AND PLEASE DELETE THIS MESSAGE FROM YOUR
SYSTEM. THANK YOU IN ADVANCE FOR YOUR COOPERATION.

For more information about Orrick, please visit
http://www.orrick.com/
=========================================================
=============================================================================

Exhibit 10
Page 68

9/16/2009