1  MELINDA HAAG (State Bar No. 132612)
   mhaag@orrick.com
2  ANNETTE L. HURST (State Bar No. 148738)
   ahurst@orrick.com
3  WARRINGTON S. PARKER III (State Bar No. 148003)
   wparker@orrick.com
4  ORRICK, HERRINGTON & SUTCLIFFE LLP
   The Orrick Building
5  405 Howard Street
   San Francisco, CA 94105
6  Telephone:  +1-415-773-5700
   Facsimile:   +1-415-773-5759
7
   WILLIAM A. MOLINSKI (State Bar No. 145186)
8  wmolinski@orrick.com
   ORRICK, HERRINGTON & SUTCLIFFE LLP
9  777 South Figueroa Street, Suite 3200
   Los Angeles, CA  90017
10 Telephone:  +1-213-629-2020
   Facsimile:   +1-213-612-2499
11
   Attorneys for MGA Parties
12

13              UNITED STATES DISTRICT COURT

14             CENTRAL DISTRICT OF CALIFORNIA

15                    EASTERN DIVISION

| | |
|---|---|
| 16  CARTER BRYANT, an individual | Case No. CV 04-9049 SGL (RNBx) |
| 17            Plaintiff, | Consolidated with: |
| | CV 04-9059 |
| 18  v. | CV 05-2727 |
| 19  MATTEL, INC., a Delaware Corporation | **DISCOVERY MATTER** |
| 20            Defendant. | **[To Be Heard By Discovery Master Robert C. O'Brien]** |
| 21 | MGA PARTIES' REPLY IN SUPPORT OF NOTICE AND APPLICATION FOR ISSUANCE OF LETTER OF REQUEST FOR JUDICIAL ASSISTANCE RE: DANNY K.H. YU AND BIRD & BIRD |
| 22  AND CONSOLIDATED ACTIONS | |
| 23 | |
| 24 | [Supplemental Declaration of Diana Rutowski and [CORRECTED][Proposed] Letters of Request for Judicial Assistance filed concurrently herewith] |
| 25 | |
| 26 | |

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

ARGUMENT....................................................................................................... 2

I.  MGA PARTIES' STATUTE OF LIMITATIONS AND LACHES DEFENSES IN PHASE 2 ARE PENDING.................................................. 2

II.  NONE OF THE PHASE 1 ORDERS RELIED UPON BY MATTEL ADDRESS PHASE 2 COUNTERCLAIMS OR DEFENSES ...................... 3

    A.  Relation Back of Phase 2 Counterclaims Has Not Been Decided........ 3

    B.  Phase 2 Counterclaims Implicate Different Facts And Different Accrual Dates Not Yet Decided.............................................................. 6

III.  MGA RECENTLY LEARNED OF NEW FACTS ....................................... 7

IV.  MGA'S PROPOSED LETTERS OF REQUEST, AS CORRECTED, ARE NOT OBJECTIONABLE ................................................................... 9

CONCLUSION.................................................................................................. 10

1

# TABLE OF AUTHORITIES

## FEDERAL CASES

**Page**

*Hydranautics* v. *Filmtec Corp.*,
  204 F.3d 880 (9th Cir. 2000) .................................................................. 2

*Lamps Plus, Inc.* v. *Seattle Lighting Fixture Co.*,
  345 F.3d 1140 (9th Cir. 2003) ............................................................... 6

## STATE CASES

*Fox* v. *Ethicon Endo-Surgery, Inc.*,
  35 Cal. 4th 797 (Cal. 2005) .................................................................. 6

## FEDERAL STATUTES

Fed. R. Civ. P. 26 ...................................................................................... 8

Fed. R. Civ. P. 56(f) ................................................................................. 1

## STATE STATUTES

Cal Civ. Code § 3426.1(d) ........................................................................ 6

1

## INTRODUCTION

2      Mattel seeks to turn MGA's application for issuance of Letters of Request

3 into a summary judgment motion on collateral estoppel, arguing that various orders

4 regarding Phase 1 claims and defenses render the discovery sought through the

5 proposed Letters of Request irrelevant.  In Phase 2 Mattel is asserting currently

6 *pending* and *different* claims against MGA Parties, and the MGA Parties are

7 asserting statute of limitations and laches defenses to those claims.  So long as

8 Mattel's Phase 2 counterclaims and MGA Parties' statute of limitations and laches

9 defenses thereto are pending, the evidence sought through the proposed Letters of

10 Request is plainly relevant and discoverable.

11      This discovery motion is not an appropriate forum for the Discovery Master

12 to decide the merits of Mattel's argument that MGA Parties should be collaterally

13 estopped from asserting statute of limitations and laches defenses in Phase 2—such

14 an argument would require full briefing and consideration in and of itself.  Indeed,

15 such a motion plainly would be improper in light of the discovery sought in

16 connection with the Letters of Request.  *See* Fed. R. Civ. P. 56(f).  Moreover, the

17 Phase 1 orders cited by Mattel in its disguised summary judgment motion do not

18 have any direct applicability to MGA Parties' Phase 2 defenses for at least three

19 reasons: (1) the prior orders cited by Mattel relate only to Phase 1 claims; (2) the

20 claims at issue in Phase 2 are different from those that were at issue in Phase 1, so

21 the relevant facts are necessarily different; and (3) newly discovered evidence in

22 connection with the Hong Kong Bill of Costs in the Cityworld action points to the

23 existence of facts not previously considered by the Court.  For these reasons, MGA

24 Parties respectfully submit that the Discovery Master should recommend issuance

25 of MGA's proposed Letters of Request, which are narrowly tailored to seek

26 discovery relevant to its currently pending defenses in Phase 2.

27

28

**ARGUMENT**

**I.     MGA PARTIES' STATUTE OF LIMITATIONS AND LACHES DEFENSES IN PHASE 2 ARE PENDING.**

The simple undisputed fact is that MGA Parties' defenses to Mattel's Phase 2 claims (including statute of limitations and laches) are currently pending and yet to be decided in Phase 2.  See Declaration of Diana Rutowski In Support Of Application for Letters of Request ("Rutowski Decl."), Exs. B, C & D; see also, Docket Document No. 5798 (MGA Parties' Answer and Affirmative Defenses to Mattel, Inc.'s Third Amended Answer and Counterclaims).  Mattel itself acknowledges that these defenses are pending in its opposition brief, stating that: "Mattel *intends* to bring a motion before Judge Larson shortly to confirm the direct applicability of [prior] rulings to Mattel's misappropriation of trade secrets claim. A ruling in Mattel's favor *would* plainly render this application moot."  Mattel, Inc.'s Opposition to MGA Parties' Application for Issuance of Letter of Request for Judicial Assistance Re: Danny K. H. Yu and Bird & Bird ("Opp.") at 1 (emphasis added).  It follows that MGA's application *is not currently moot*.

Moreover, to "confirm the direct applicability of [prior] rulings" through collateral estoppel, Mattel would have to establish that "(1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the first proceeding."  Hydranautics v. Filmtec Corp., 204 F.3d 880 (9th Cir. 2000).  Mattel cannot make such a showing, and it certainly has not done so here in opposition to MGA's discovery motion.  The MGA Parties strongly contest that Phase 1 orders have any preclusive effect with respect to the MGA Parties' statute of limitations and laches defenses in Phase 2 and will present arguments to that effect if and when Mattel brings its hypothetical motion before Judge Larson.  Indeed, such a motion would be wholly improper at this stage of the

proceedings in light of the discovery sought by these Letters of Request and the new evidence from the taxations of costs proceedings in Hong Kong demonstrating that Mattel concealed its earlier communications with Cityworld's counsel.  The requested discovery is relevant to MGA's defenses in Phase 2, and the proposed Letters of Request should issue.

## II.   NONE OF THE PHASE 1 ORDERS RELIED UPON BY MATTEL ADDRESS PHASE 2 COUNTERCLAIMS OR DEFENSES.

Mattel's attempt to circumvent merits briefing on collateral estoppel through its opposition to this discovery motion should not be allowed.  While this is not the appropriate forum for merits briefing, MGA Parties do point out below that the orders upon which Mattel seeks to rely relate only to Phase 1 issues, and they did not result in dismissal of MGA Parties' defenses to counterclaims pending in Phase 2.[1]

### A.   Relation Back of Phase 2 Counterclaims Has Not Been Decided.

Mattel misrepresents several orders in support of its argument that its Phase 2 counterclaims relate back to the filing of its earlier complaint on April 27, 2004; however, none of these orders are final judgments as to MGA Parties' defenses to Mattel's Phase 2 counterclaims.

January 12, 2007:  First, Mattel cites to the January 12, 2007 order granting Mattel leave to file its proposed amended complaint as counterclaims.  Declaration of Michael T. Zeller ISO Mattel's Opp. ("Zeller Decl.") Ex. 1.  The order referenced MGA's argument that Mattel's *copyright* and *intentional interference* claims were barred by the statute of limitations; however, the Court did not finally decide the issue.  Id. at 13-14.  The order is inapposite both because (1) it does not relate to Mattel's Phase 2 counterclaims, including misappropriation of trade secrets, and (2) it was not a final determination of MGA's statute of limitations or

---

[1] MGA expressly reserves its right to present any and all arguments on this issue if and when it is ripe and Mattel brings an appropriate motion.

1    laches defenses with respect to any claims – the Court merely allowed Mattel to

2    amend to assert counterclaims.  Id. at 15.

3        April 25 and May 21, 2008:  On April 25, 2008 and May 21, 2008, Mattel

4    correctly notes that Judge Larson deferred ruling on MGA's affirmative defenses to

5    Mattel's Phase 1 claims, including statute of limitations and laches.  Zeller Decl.

6    Exs. 3 & 4.  These rulings are notable only because they demonstrate that even

7    MGA's Phase 1 statute of limitations and laches defenses were still in play and not

8    finally decided by the January 12, 2007 order.  They do not otherwise bear any

9    relevance to Phase 2 counterclaims and defenses.

10       May 27, 2008:  Next, Mattel cites to Judge Larson's May 27, 2008 order,

11   arguing that it "affirmed its earlier ruling that the claims asserted by Mattel in its

12   November 6, 2006 first amended answer and counterclaim—including its trade

13   secrets misappropriation claim—related back to the filing of Mattel's original

14   complaint on April 27, 2004."  Opp. at 4.  Mattel then purports to cite from the

15   order.  However, Mattel apparently seeks to mislead the court by *omitting* the first

16   clause, which states explicitly: "*the Phase 1 claims against MGA* sought to be

17   asserted by Mattel on November 20, 2006, which arise out of the same factual

18   allegations as do the claims asserted by Mattel against Carter Bryant on April 27,

19   2004, relate back to the date that complaint was filed."  Zeller Decl. Ex. 8 at 8

20   (emphasis added).  Thus, the May 27, 2008 order explicitly applied only to (1)

21   Phase 1 claims, and (2) only to the extent that those claims arise out of the same

22   factual allegations as do the claims asserted by Mattel against Carter Bryant on

23   April 27, 2004.  With respect to the first point, the Phase 1 claims are not the same

24   as the Phase 2 claims (otherwise there would not be two Phases), and the May 27,

25   2008 order does not apply for that reason alone.  With respect to the second point,

26   Mattel has not shown, nor can it show, that its Phase 2 claims against MGA Parties

27   arise out of the same factual allegations as do the claims it asserted earlier against

28   Carter Bryant—an issue that is in all events well beyond the scope of this discovery

1   matter.  The May 27, 2008 order did not decide or dismiss MGA Parties' defenses

2   in Phase 2.

3        June 2, 2008:  As Mattel notes, after the May 27, 2008 order, the issue was

4   still not finally decided even as to Phase 1 claims and further briefing and argument

5   was allowed.  Opp. at 5, n. 18.  In its briefing, MGA presented additional

6   arguments regarding the application of the relation-back doctrine to the copyright

7   claim.  Zeller Decl. Ex. 9 at 3.  Judge Larson then issued a Further and Final Order

8   Re Statute of Limitations Defense on June 2, 2008.  Opp. at 5, n.18; Zeller Decl.

9   Ex. 9.  What Mattel fails to point out in its opposition is that with respect to the

10  copyright claim, Judge Larson explicitly stated that he "*need not resolve MGA's*

11  *two arguments regarding relation back* and the rolling statute of limitations."

12  Zeller Decl. Ex. 9 at 4 (emphasis added).[2]

13       The remaining orders and jury verdict form cited by Mattel also relate only to

14  Phase 1 issues—they did not decide Phase 2 counterclaims or defenses, as they

15  were issued specifically in connection with the Phase 1 trial.[3]  Mattel's attempt to

16  muddle the issues cannot avoid the plain fact that the merits of MGA Parties'

17  statute of limitations and laches defenses in Phase 2 have never been addressed, let

18  alone decided.  The defenses remain pending.

19

20  [2] Notably, even with respect to Mattel's Phase 1 copyright counterclaim, *whether or
    not it related back to Mattel's April 27, 2004 claims was never finally decided*.

21  [3]       June 7, 2008:  The June 7, 2008 order is the "Court's Final Pre-Trial
    Conference Order for Phase 1 Trial." Zeller Decl. Ex. 10 at 1.  The Court clarifies

22  that: "The claims and counterclaims to be tried in Phase 1 trial are set forth herein.
    The claims remaining for trial in Phase 2 are set forth on pages 8-9 in Mattel's

23  Memorandum of Trial Structure, filed June 20, 2007, as adopted in the July 2, 2007
    Order." Id. at 18.  Thus, it is clear that any statements in this order apply only to

24  Phase 1 claims and defenses.
         August 26, 2008:  Mattel cites to the jury verdict form for Phase 1B.  Opp. at

25  5; Zeller Decl. Ex. 11.  The jury heard only issues pertaining to Phase 1B, and its
    verdict form has no bearing on Phase 2 issues.

26       December 3, 2008:  Finally, Mattel relies on a December 3, 2008 order in an
    effort to claim laches is no longer at issue.  Opp. at 5-6; Zeller Decl. Ex. 12.  Again,

27  this order relates only to equitable issues relating to those claims tried in Phase 1,
    which the Court refers to as Phase 1C issues.  Zeller Decl. Ex. 12 at 2.

28  Accordingly, the Court's order applies only to those claims and affirmative
    defenses tried in Phase 1.  Id. at 3.

1

### B.   Phase 2 Counterclaims Implicate Different Facts And Different Accrual Dates Not Yet Decided.

2

3   Judge Larson quoted the California Supreme Court for the statement that

4   "[g]enerally speaking, a cause of action accrues at the time when the cause of action

5   *is complete with all of its elements*."  Zeller Decl. Ex. 8 at 4 (quoting <u>Fox v. Ethicon</u>

6   <u>Endo-Surgery, Inc.</u>, 35 Cal. 4th 797, 807 (Cal. 2005)).  Each cause of action

7   requires different elements.  Accordingly, and consistent with the prior orders cited

8   by Mattel, each cause of action and its requisite elements must be separately

9   considered.  For example, the elements required to show copyright infringement

10  differ from those required to show misappropriation of trade secrets.[4]

11  In its opposition, Mattel erroneously seeks to conflate accrual of Mattel's

12  Phase 1 claims with its Phase 2 counterclaims.  For example, Mattel argues that

13  Judge Larson already found that Mattel had no basis to know of its claims against

14  Carter Bryant until November 23, 2003 and against MGA until November 4, 2004.

15  Opp. at 8.  This finding, however, relates only to Mattel's Phase 1 claims.  As cited

16  by Mattel in its opposition, Judge Larson found that "[w]ithout the <u>drawings</u>, Mattel

17  could not assess the substantial similarity factor to determine whether it could assert

18  a claim that the Bratz <u>dolls</u> infringed Mattel's rights to them."  Opp. at 5; Zeller

19  Decl. Ex. 9.  He considered the elements required to establish only those claims at

20  issue in Phase 1, and made his determination as to accrual based on those elements.

21  In contrast, Mattel's Phase 2 counterclaims, such as misappropriation of trade

22  secrets, do not require a showing of "substantial similarity."  Unlike the copyright

23  _____

[4] Copyright infringement requires a showing of (1) ownership of a valid copyright, (2) the defendant's access to the original, and (3) substantial similarity between the copyrighted work and the allegedly infringing work.  Zeller Decl. Ex. 9 at 4 (citing <u>Lamps Plus, Inc. v. Seattle Lighting Fixture Co.</u>, 345 F.3d 1140, 1144 (9th Cir. 2003)).  Misappropriation of trade secrets, in contrast, requires a showing of misappropriation of trade secret information, including "a formula, pattern, compilation, program, device, method, technique or process that: (1) derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."  Cal Civ. Code § 3426.1(d).

1   claims, receipt of the "Bratz" drawings will not be necessary before Mattel's Phase
2   2 counterclaims could accrue.  Phase 2 counterclaims may have accrued at an
3   earlier date based on the exchange of different information.  Moreover, as set forth
4   below, the new evidence strongly suggests that even the earlier conclusion by the
5   District Court as to the copyright claims was based on an incomplete record
6   regarding what actually happened in Hong Kong.
7       The evidence sought by MGA's proposed Letters of Request remains
8   discoverable and relevant in connection with its Phase 2 defenses.

9   **III.   MGA RECENTLY LEARNED OF NEW FACTS.**

10      Moreover, newly discovered communications between Mattel and Hong
11  Kong attorneys have come to light that warrant additional discovery.  For example,
12  the Bill of Costs reflects several lengthy phone calls between Mattel and Danny Yu:
13  (1) a 20 minute call on October 13, 2003; (2) a 15 minute call on November 10,
14  2003; (3) a 15 minute call on November 18, 2003; and (4) a *40 minute* call on
15  November 19, 2003.  Rutowski Decl. Ex. K at 84.[5]  All of these conversations,
16  lasting an hour and a half total, occurred more than three years before Mattel sought
17  to assert its counterclaims on November 20, 2003.  The contents and information
18  shared by Danny Yu and Mattel—never before disclosed by Mattel despite
19  substantial litigation of these issues—will lead to the discovery of admissible and
20  highly relevant evidence regarding MGA's defenses.  As further detailed in MGA's
21  Motion, the extent of communications between Danny Yu's firm and Mattel only
22  recently came to light after the Phase 1 trial was concluded in connection with the
23  Hong Kong taxation proceedings.  Id. ¶¶ 13 and 14, Exs. K and L.  Mattel does not
24  explain why it failed to disclose the extent of these communications when its
25  30(b)(6) witness and testified in discovery and it produced a timeline of Cityworld-
26
27  _____
    [5] See Rutowski Decl. Ex. K at 80-84 and Rutowski Decl. Ex. L at 170 for context
28  showing that the Bill of Cost entries beginning with 1011, and continuing through
    the phone entries listed from 1053 through 1062, relate to communications between
    Mr. Danny Yu's firm and Mattel.

1   related events in connection with that deposition.  Zeller Decl. Ex. 5 at 94-95.

2   Notably, at least the lengthy October 13 and November 10 calls noted above were

3   missing from that timeline.  Compare i.d. with Rutowski Decl. Ex. K at 84 (Bill of

4   Cost entries reflecting telephone calls between Danny Yu and Mattel).  Moreover,

5   when Mattel's counsel Michael Moore testified on this subject at trial, he repeatedly

6   said the phone calls were merely "to arrange the meeting in Hong Kong," which

7   seems patently incredible in light of the total length of the calls—especially the

8   forty minute call on November 19.  Supplemental Declaration of Diana Rutowski

9   In Support Of Application for Letters of Request, Ex. A at 6616:20-22, 6618:20-22.

10       Rather than address its apparent concealment of relevant evidence, Mattel

11  cites to Judge Larson's May 27, 2008 Order, arguing that the relevance of certain

12  documents from the Hong Kong proceedings has been considered.  Opp. at 9.  In

13  the portion of the order quoted by Mattel, Judge Larson states that "[w]here there is

14  ***evidence*** of unethical behavior, the Court expects to be made aware of that

15  evidence."  Opp. at 9; Zeller Decl. Ex. 8 at 3.  The proposed Letters of Request seek

16  the very evidence contemplated by Judge Larson in his order through the proper

17  discovery means.  To refuse the discovery because such evidence has not yet been

18  adduced is to place the MGA Parties in precisely the catch-22 situation that Federal

19  Rule of Civil Procedure 26 prohibits.  As Mattel has been fond of arguing to the

20  discovery master in prior motions, the pleadings frame the relevance, and this

21  evidence is plainly relevant.  The fact that the issues are contested make discovery

22  all the more necessary.  The discovery is permissible because it is likely to lead to

23  the discovery of admissible evidence directly relevant to the MGA Parties

24  affirmative defenses of statute of limitations and laches.

25       The proposed Letters of Request are narrowly tailored to the discovery of

26  *new* evidence that was not previously discovered or considered in Phase 1.  They

27  are based on documents that became available to MGA only after the conclusion of

28  the Phase 1 trial.  The discovery is plainly warranted.

**IV.   MGA'S PROPOSED LETTERS OF REQUEST, AS CORRECTED, ARE NOT OBJECTIONABLE**

Mattel argues that aspects of the Letters of Request are objectionable for two reasons.  First, it points out language in the proposed Letters, which was inadvertently included as a typographical error in section 12, "Fees and Costs":

> This Court respectfully requests its willingness to reimburse the High Court of the Hong Kong Special Administrative Region Court of First Instance for costs incurred in executing the Letter of Request.

As noted by the U.S. Department of State, there are generally no costs incurred in connection with service through Hong Kong under the Convention.[6]  Nevertheless, this language should be deleted from section 12, "Fees and Costs." Accordingly, MGA attaches corrected proposed Letters of Request as Exhibits 1A and 2A hereto. In the corrected proposed Letter of Request regarding Danny K. H. Yu and his firms (Exhibit 1A), section 12 now contains only the following language:

> Any fees and costs incurred as a result of the special procedures set forth in section 9 above will be paid by MGA through its counsel of record:  Annette Hurst, Orrick Herrington & Sutcliffe LLP, 405 Howard Street, San Francisco, CA 94105. MGA's payment of any such fees and costs is without prejudice to its making a subsequent request to be reimbursed for these costs by other parties in these consolidated actions.[7]

In the corrected proposed Letter of Request regarding Bird & Bird (Exhibit 2A), section 12 has been deleted in its entirety.

Second, Mattel objects based on its allegation that the proposed Letters of Request contradict the prior relation back and accrual rulings of the Court.   For the reasons stated above, Mattel's second objection lacks merit.

---

[6] See http://travel.state.gov/law/info/judicial/judicial_650.html (the U.S. Department of State website regarding Hong Kong Judicial Assistance).
[7] This language is included pursuant to Articles 14 and 9 of the Hague Convention, which provide for reimbursement of expenses incurred due to special methods or procedures such as the transcription and videotaping of Mr. Yu's examination. See http://hcch.e-vision.nl/index_en.php?act=conventions.text&cid=82 (full text of the Hague Convention).

1

## CONCLUSION

For the reasons above and the reasons stated in MGA's opening papers, MGA's Application for Issuance of Letters of Request for Judicial Assistance to the Hong Kong Central Authority should be granted.

Dated:  September 17, 2009             Respectfully submitted,

DIANA M. RUTOWSKI
Orrick, Herrington & Sutcliffe LLP


By: /s/ Diana M. Rutowski
      DIANA M. RUTOWSKI
      Attorneys for Plaintiff