QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br>Consolidated with<br>Case No. CV 04-09039<br>Case No. CV 05-02727<br><br>DISCOVERY MATTER<br>[To Be Heard by Discovery Master<br>Robert C. O'Brien Pursuant to Order<br>of January 6, 2009]<br><br>[PUBLIC REDACTED] MATTEL, INC.'S REPLY IN SUPPORT OF *EX PARTE* APPLICATION FOR AN ORDER SHORTENING TIME FOR MGA AND LARIAN TO RESPOND TO REQUESTS FOR ADMISSION AND FOR PRODUCTION OF PRIVILEGE LOG<br><br>[Supplemental Declaration of Scott L. Watson filed concurrently herewith]<br><br>Hearing Date:  TBD<br>Time:  TBD<br>Place:  Arent Fox<br><br>**Phase 2**<br><br>Discovery Cutoff:  Dec. 11, 2009<br>Pre-trial Conference:  March 1, 2010<br>Trial:  March 23, 2010 |

**Preliminary Statement**

MGA's lead argument ███████████████████████████ ███████████████████████████. What a difference a day makes. Just last week MGA argued that expedited discovery related to that same hearing was appropriate and necessary. ███████████████████████████ ████████████████████████████████████████████████ ████████████████████████████ Judicial estoppel and basic fairness dictate that Mattel is entitled to the expedited discovery it seeks.

The requests are relevant and do not call for privileged information. They seek to establish MGA's position on factual questions critical to, among other things, Mattel's brief and the hearing. These critical questions remain unanswered because MGA purported to file most substantive portions of its recent submissions *in camera*. As set forth in Mattel's separate statement, unanswered by MGA because it has no viable arguments to refute it, each request is relevant and none invades the privilege. Nor can MGA and Larian evade discovery by blaming their lawyers for the decision to withhold the Larian-O'Connor email in violation of Court Orders. Not only is the assertion unproven, but the law is clear that the conduct of attorneys in asserting the privilege is binding upon their clients. In any event, the argument does nothing to defeat the relevance of the information sought by the RFAs.

MGA's argument that it should not ███████████████████████ ████████████████████████████████████████ misses the mark. Mattel need not do that; it only need serve a document request that compels production of purportedly privileged documents. Mattel has done this, years ago, and MGA does not claim otherwise. Indeed, prior orders required MGA to produce relevant documents and to log documents withheld on privilege grounds. The only issue is whether the log should encompass post-litigation communications relating to the Larian-O'Connor email. Such a log is appropriate here and is directly relevant to the issues to be heard on September 22.

## Argument

### I. MGA'S ARGUMENTS AGAINST EXPEDITED DISCOVERY ARE PRECLUDED BY ITS PRIOR ARGUMENTS AND ORDER NO. 62

Ironically, MGA's Opposition makes the same arguments Mattel made in opposition to MGA's *Ex Parte* For Expedited Discovery. ▮▮▮▮▮ Having prevailed on its application, MGA now does an about face and makes the precise argument Mattel lost. (Opp. at 4.) Order No. 62 is dispositive of this issue. ▮▮▮▮▮ Similarly, ▮▮▮▮▮ But, again, this is the same argument the Discovery Master rejected in Order No. 62. It also ignores that the Court has authorized Mattel to submit briefing on these issues. Even though MGA is not entitled to submit briefing on the De Anda issues, ▮▮▮▮▮. Thus, ▮▮▮▮▮, but Mattel's entitlement to it is even clearer under Judge Larson's orders.[3]

---

[1] See Mattel's Opposition to MGA's Ex Parte Appl. For Order To Shorten Time For Response & Prod. of Documents & Order Authorizing Service of Deposition Notice, dated September 9, 2009, at 1-2, Exhibit 1 to the Supplemental Declaration of Scott L. Watson ("Supp. Watson Decl.") filed concurrently herewith; see also Order No. 62, dated September 11, 2009, Watson Decl. Exh. 9.

[2] Order No. 62 at 2, n.4, Watson Decl. Exh. 9.

[3] And MGA certainly has not "stepped back" in seeking discovery from Mattel and Mr. De Anda in advance of the hearing. Indeed, the same day it filed this opposition MGA moved *again* to compel Mr. De Anda's expedited deposition, ▮▮▮▮▮

## II. **MATTEL'S RFA'S SEEK RELEVANT, NON-PRIVILEGED INFORMATION AND MGA HAS NOT SHOWN OTHERWISE**

███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████ Mattel's RFAs undeniably meet this standard and MGA has not attempted to show otherwise. Mattel filed a separate statement explaining the relevance of each RFA served. MGA ignored it, instead relying on conclusory assertions that the RFAs are not relevant.

Mattel has met its burden to show the discovery is relevant. MGA bears the burden of refuting that showing but has not done so. Bryant v. Ochoa, 2009 WL 1390794, slip. op. at *1 (S.D. Cal. May 14, 2009) ("The party seeking to compel discovery has the burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)(1). Thereafter, the party opposing discovery has the burden of showing that the discovery should be prohibited, and the burden of clarifying, explaining or supporting its objections.") (citations omitted); see also Court's July 9, 2009 Order, at 4 ("[T]he party resisting discovery thereafter has the burden of establishing that discovery should be denied.") (citations omitted).[5] By failing to respond in any substantive way to Mattel's showing of relevance in the separate statement, MGA has conceded relevance.[6] The Court set a hearing to ascertain the

---

[4] ███████████████████████████████████████████████████████
███████████████████████████████████████████████████████

[5] Supp. Watson Decl. Exh. 3.

[6] After recently arguing that separate statements are required, MGA flips position and now argues that a separate statement is improper. (Opp. at 3 n.2). The Discovery Master has squarely rejected the argument that separate statements are improper. Order No. 3, dated March 10, 2009, at 9-10 n.10, Suppl. Watson Decl. Exh. 2 (rejecting MGA's unsupported position that Mattel's Motion to Compel should be denied because it filed a separate statement and noting "that where there are numerous discovery requests in dispute he would prefer for a separate statement to be submitted by the moving party").

1  facts surrounding the withholding of the Larian-O'Connor email. Mattel's RFAs are
2  plainly relevant to the OSC hearing, as well as Mattel's claims.
3       MGA argues that it ████████████████████████████
4  ██████████████████████ (Opp. at 3.) This effort to separate MGA from its
5  counsel attempts to create a dichotomy that is contrary to the law. A recipient of
6  requests for admission is required to respond informed by the knowledge of its counsel.
7  Christian v. Janed Enterprises, Inc., 2009 WL 1796074, at *2 (M.D. Ga. June 23, 2009)
8  (party required to answer requests for admission with knowledge in possession of the
9  party and its counsel); Hise v Lockwood Grader Corp., 153 F Supp 276, 278 (D. Neb.
10 1957) (plaintiff required to respond to requests for admission with facts only in the
11 possession of counsel). Thus, an RFA appropriately seeks the knowledge of both the
12 party and its counsel.
13      MGA argues ████████████████████████████ privilege
14 determinations. Not only is this unproven as to the Larian-O'Connor email, but it
15 misstates the law. The privilege is the client's. In re Carter, 62 B.R. 1007, 1014
16 (Bkrtcy. C.D. Cal. 1986) ("The client, not his attorney, is the holder of the privilege;
17 only the client can waive the privilege by voluntarily disclosing the protected
18 information or consenting to its disclosure."); U.S. v. Layton, 855 F.2d 1388, 1406 (9th
19 Cir. 1988), *overruled on other grounds* ("the privilege can be invoked only at the
20 instance of the client"). An attorney is just an agent for the client. See, e.g., Pelican
21 Prod. Corp. v. Marino, 893 F.2d 1143, 1147 (10th Cir. 1990) (party is bound by the
22 actions of [its] *attorney-agent*) (emphasis provided). The MGA parties are bound by
23 the acts of their counsel in asserting, or waiving, the privilege. See Link v. Wabash R.
24 Co., 370 U.S. 626, 634 (1962) (in our system of "representative litigation . . . each party
25 is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all
26 facts, notice of which can be charged upon the attorney'") (citation and internal
27
28

quotations omitted).[7] MGA cannot escape discovery by pointing its finger at its lawyers.

Moreover, MGA's unsubstantiated effort to distance itself from its counsel misconceives the facts. Counsel do not make privilege determinations in a vacuum with no input from clients. There is not a single attorney on the Larian-O'Connor email. Thus, there are only two possible "explanations" for why this email was withheld for years despite being compelled by Court Orders. One is that the MGA Parties have taken the position that the communication reflected legal advice. The other is that counsel grossly violated their ethical duties in knowingly and intentionally withholding a non-privileged document that has, as Judge Larson has ruled, "clear relevance" to a main issue in this litigation.[8] Mattel is entitled to know which one of these MGA claims happened. The RFAs are designed to elicit non-privileged facts going to these clearly relevant issues. They are proper.

### III. MGA'S BLANKET ASSERTIONS OF PRIVILEGE FAIL

MGA broadly claims the RFAs ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. MGA bears the burden on this argument as well. Weil v. Investment/Indicators, Research and Management, Inc., 647 F.2d 18, 25 (9th Cir. 1981) ("As with all evidentiary privileges, the burden of proving that the attorney-client privilege applies rests not with the party contesting the privilege, but with the party asserting it."). MGA's ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ however, fail under the law to

---

[7] See also Pelican Prod. Corp., 893 F.2d at 1147 (there is "nothing unfair about requiring a party to be bound by the actions of [its] attorney-agent"); Ringgold Corp. v. Worrall, 880 F.2d 1138, 1141-42 (9th Cir. 1989) (litigants "are considered to have notice of all facts known to their lawyer-agent"); Jones Stevedoring Co. v. Director, Office of Workers' Compensation Programs, 133 F.3d 683, 689 (9th Cir. 1997) ("[A] bedrock principle of the American 'system of representative litigation' is that 'each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney'.") (citing Link v. Wabash R.R., 370 U.S. 626, 634 (1962)); Int'l Ins. Co. v. Certain Underwriters at Lloyd's London, 1992 WL 314199, at *2 (N.D. Ill. Oct. 26, 1992) (party is bound by privilege positions taken by its attorneys).

[8] August 31 Order at 3, Watson Decl. Exh. 7.

1  sustain that burden: "[m]ere, conclusory statements that the privilege applies is not
2  sufficient to meet [its] burden." <u>Spine Solutions, Inc. v. Medtronic Sofamor Danek,</u>
3  <u>Inc.</u>, 2008 WL 199709, *3 (W.D. Tenn. Jan. 23, 2008); <u>see also</u> <u>Green v. Baca</u>, 219
4  F.R.D. 485, 491 (C.D. Cal. 2003) ("A party may not make a blanket assertion of
5  privilege in response to a discovery request") (collecting numerous cases). Rather than
6  boilerplate claims of privilege, the law requires that privilege objections must be made
7  on an individualized basis. <u>See, e.g.</u>, <u>Clarke v. Am. Commerce Nat'l Bank</u>, 974 F.2d
8  127, 129 (9th Cir. 1992) ("[B]lanket assertions of the privilege are 'extremely
9  disfavored.' The privilege must ordinarily be raised as to each record sought to allow
10 the court to rule with specificity.") (citations omitted).

11     MGA's claim that ███████████████████████████████████████
12 ███████████████████████████████████ The RFAs simply do not seek admissions
13 that invade the privilege. For example, in the Requests directed at MGA:[9]

14     • RFA Nos. 1-4 seek admissions that the Larian-O'Connor email
15 was not produced prior to the date of the Phase 1 trial and that MGA was
16 aware that the email had previously been ordered produced;[10]

17     • RFA No. 5-7 seek admissions that the email was relevant to the
18 Phase 1 trial, and of the fact that it was withheld on attorney-client privilege
19 or work product grounds;[11]

20     • RFA Nos. 8-14 seek to discover MGA's binding position about
21 whether the document is, or ever was, protected by the attorney-client or work
22 product privileges;[12]

23     • RFA Nos. 15-17 seek admissions that the email was improperly
24 withheld;[13]

---

[9] See RFAs to MGA, Watson Decl. Exh. 1.
[10] These correspond to RFAs to Larian Nos. 2-4, Watson Decl. Exh. 2.
[11] These correspond to RFAs to Larian Nos. 5-7, Watson Decl. Exh. 2.
[12] These correspond to RFAs to Larian Nos. 8-14, Watson Decl. Exh. 2.

- RFA Nos. 23-26 seek admissions regarding when the email appeared on MGA's privilege logs;[14]
- RFA Nos. 27-42 seek to determine whether MGA has now produced all emails that are part of the Larian-O'Connor email chain and whether certain log entries that appear to be the Larian-O'Connor email are duplicates of each other.[15]

These Requests do not seek the contents of attorney-client communications that have been kept confidential. Rather, they seek to establish facts about the document, its production (or lack thereof) and the bases on which it was withheld. These RFAs do not even approach an intrusion upon the attorney-client privilege, which protects the contents of attorney-client communications from disclosure, and MGA has cited no authority to support its sweeping assertion that they do. It is black letter law that "questions related to the existence of attorney-client communications" are not protected by the privilege. Markwest Hydrocarbon, Inc. v. Liberty Mutual Ins. Co., 2007 WL 1106105, at *4 (D. Colo. April 12, 2007); see also New Jersey v. Sprint Corp., 2009 WL 1917412, at *18 (D. Kan. July 2, 2009) ("Questions regarding the existence, extent, or waiver of an attorney-client privilege or work-product immunity are not themselves privileged or protected"); B.F.G. of Illinois, Inc. v. Ameritech Corp., 2001 WL 1414468, at *4 (N.D. Ill. Nov. 13, 2001) ("plaintiffs' counsel's proper questions regarding foundational facts going to the assertion of privilege were improperly objected to and the witness instructed not to answer"); Malletier v. Dooney & Bourke, Inc., 2006 WL 3851150, at *1 (S.D.N.Y. Dec. 18, 2006) (declarations submitted to support claim of privilege were improperly redacted because "plaintiff has effectively eliminated from the declarations much of the basic information that would be required to appear on a

---

[13] These correspond to RFAs to Larian Nos. 15-17, Watson Decl. Exh. 2.
[14] These correspond to RFAs to Larian Nos. 26-29, Watson Decl. Exh. 2.
[15] These correspond to RFAs to Larian Nos. 30-45, Watson Decl. Exh. 2.

privilege log, together with the foundational facts that its adversary would be entitled to discover in order to test a privilege claim.").

MGA argues that ███████████████████████████████████████ ███████████████████ This is dead wrong. MGA cites no authority for this proposition, nor can it. If it were true, every privilege log would invade the privilege since they, by nature, make assertions as to whether the attorney-client privilege and/or work product doctrine protect a document from disclosure. Parties routinely take positions as to whether documents are privileged without violating the attorney-client or work product privileges. See Fox v. California Sierra Financial Servs., 120 F.R.D. 520, 524 (N.D. Cal. 1988) ("information identifying a communication for which a claim of privilege is made is not itself privileged").[17]

Nor do RFAs 18-23, which seek information about whether MGA claims (or ever claimed) that the Larian-O'Connor email reflected legal advice, invade the privilege. The privilege is not invaded by discovery that seeks to establish the involvement of an attorney in a communication over which privilege is asserted. Markwest Hydrocarbon,

---

[16] ███████████████████████████████████████████████████████████████

[17] Likewise, MGA's conclusory claims of burden in responding on an expedited basis fail. A party seeking to establish undue burden must support its claim with specific and compelling proof. See Jackson v. Montgomery Ward & Co., Inc., 173 F.R.D. 524, 528-29 (D. Nev. 1997) (party claiming a discovery request is "unduly burdensome must allege specific facts which indicate the nature and extent of the burden, usually by affidavit or other reliable evidence"); Horsewood v. Kids "R" Us, 1998 WL 526589, at *4 (D. Kan. Aug. 13, 1998) ("Mere assertions by plaintiff of harassment and intimidation provide no evidence of undue burden."); Bible v. Rio Props., Inc., 246 F.R.D. 614, 618 (C.D. Cal. 2007) ("Contrary to defendant's assertion, the party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections."); Discovery Master Order No. 46, dated August 14, 2009, at 33 ("[T]he party claiming that a discovery request is unduly burdensome must allege specific facts which indicate the nature and extent of the burden, usually by affidavit or other reliable evidence.")(citing Jackson v. Montgomery Ward & Co., Inc., 173 F.R.D. 524, 528-29 (D. Nev. 1997)).

2007 WL 1106105 at *2 (questions related to the involvement of an attorney in a communication are not privileged). Mattel is entitled to MGA's position as to whether a claim of legal advice was the basis on which this document was wrongly withheld. Indeed, confirming that no confidential communication is involved by answering these RFAs, MGA's privilege log claimed "legal advice regarding product development" as the basis for withholding the email. Mattel is entitled to know in a binding fashion whether that was a true fact or not—which is information sought by the RFAs.

Moreover, by voluntarily producing the email, MGA cannot assert any privilege as to that communication and the facts surrounding it. Griffith v. Davis, 161 F.R.D. 687, 698 (C.D. Cal. 1995) ("Voluntary disclosure of a privileged communication to a third person destroys confidentiality and constitutes a waiver of the privilege.") (citing Clady v. County of Los Angeles, 770 F.2d 1421, 1433 (9th Cir. 1985)); Hergenroeder v. Travelers Property Cas. Ins. Co., 249 F.R.D. 595, 605 n.4 (E.D. Cal. 2008) ("It is well settled that when the holder of a privilege voluntarily discloses the privileged material, the voluntary disclosure constitutes a waiver of the privilege.") (citing Wright & Graham, 26A Federal Practice and Procedure § 5726 (1992)); Hartford Fire Ins. Co. v. Garvey, 109 F.R.D. 323, 328 (N.D. Cal. 1985) ("None of the documents reveal such an attorney client relationship on their face. Furthermore, had any privilege existed, it would appear that [plaintiff] … voluntarily waived the privilege by producing the documents"); Fox v. California Sierra Financial Servs., 120 F.R.D. 520, 527 (N.D. Cal. 1988) (voluntary disclosure to third party waived attorney-client privilege "as to the disclosed information and all information on the same subject.") (citing Weil v. Investment/Indicators, Research & Management, Inc., 647 F.2d 18, 24 (9th Cir. 1981)). Whatever privilege might have attached to this email and any legal advice it reflects is now gone by its voluntary disclosure by MGA.

### IV. MATTEL IS ENTITLED TO THE PRIVILEGE LOG REQUESTED AND MGA HAS NOT SHOWN OTHERWISE

MGA claims ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ MGA misses the point. A party need not serve a separate request for a log to obtain one, although Mattel's RFPs do call for such a log.[18] In any event, a party need only serve a request that compels the production of purportedly privileged documents to be entitled to a log. As Mattel demonstrated, Mattel served RFPs that encompass the communications Mattel is requesting be logged as far back as *2005*.[19] MGA asserts ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ignoring the *three* Orders issued in 2007 compelling production, one of which explicitly compelled a log.[20] MGA does not seriously dispute that the log sought by Mattel here for communications about withholding the email will provide information directly relevant to the September 22 hearing. The log should be required.

### Conclusion

For the foregoing reasons, Mattel respectfully requests that its *ex parte* application be granted.

DATED: September 16, 2009       QUINN EMANUEL URQUHART OLIVER & HEDGES. LLP

By /s/ Michael T. Zeller
Michael T. Zeller
Attorneys for Mattel, Inc.

---

[18] See Fed. R. Civ. P. 26(b)(5)(A).
[19] App. at 8 n.41.
[20] Id. at 3 (citing December 2007 Order which granted Mattel's motion to enforce and required MGA to submit a privilege log identifying "any and all documents withheld from its production").