MELINDA HAAG (State Bar No. 132612)
mhaag@orrick.com
ANNETTE L. HURST (State Bar No. 148738)
ahurst@orrick.com
WARRINGTON S. PARKER III (State Bar No. 148003)
wparker@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105-2669
Telephone:  +1-415-773-5700
Facsimile:   +1-415-773-5759

WILLIAM A. MOLINSKI (State Bar No. 145186)
wmolinski@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA  90017
Telephone:  +1-213-629-2020
Facsimile:   +1-213-612-2499

Attorneys for MGA Parties

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>    Plaintiff,<br><br>    v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>    Defendant.<br><br>AND CONSOLIDATED ACTIONS | Case No.  CV 04-9049-SGL (RNBx)<br>Consolidated with: Case No. CV 04-9059 and Case No. CV 05-2727<br><br>**DISCOVERY MATTER**<br>[To Be Heard by Discovery Master Robert O'Brien]<br><br>**[PUBLIC VERSION] NOTICE OF MOTION AND MOTION TO COMPEL FURTHER RESPONSES TO MGA'S PHASE 1 INTERROGATORY NOS. 20-23 and 28; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:         TBD<br>Time:         TBD<br>Courtroom:  TBD<br><br>**Phase 2**<br>Discovery Cutoff:     December 11, 2009<br>Pretrial Conference: March 1, 2010<br>Trial Date:   March 23, 2010 |

## NOTICE OF MOTION AND MOTION

### TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, at a hearing before Discovery Master Robert C. O'Brien that will occur on a date and at a time to be determined by the Discovery Master, MGA Entertainment, Inc. ("MGA") will, and hereby does, move to compel Mattel, Inc. ("Mattel") to provide further responses to Interrogatory Nos. 20-23 and 28 in MGA Entertainment's Second Set of Phase 1 Interrogatories.

This Motion is made pursuant to Federal Rules of Civil Procedure 33, 34, and 37 and the Order appointing the Discovery Master on the grounds that Mattel has failed to provide full and complete responses to the interrogatories and has improperly designated its Second Supplemental Responses as Attorneys' Eyes Only.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of William A. Molinski filed concurrently herewith, the Separate Statement filed concurrently herewith, the records and files of this Court, any argument to be presented upon the hearing of this Motion, and all other matters of which the Court may take judicial notice.

## STATEMENT OF COMPLIANCE

MGA requested a meet and confer with Mattel on Requests Nos. 20-23 and 28 on August 12, 2009.  Mattel responded to this request on August 19, 2009.


Dated:  September 18, 2009          ORRICK, HERRINGTON & SUTCLIFFE LLP


By:      /s/ William A. Molinski
             William A. Molinski
             Attorneys for MGA Parties

# TABLE OF CONTENTS

**Page**

BACKGROUND .................................................................................................2

A.  THE REQUESTS ................................................................................2

B.  MATTEL'S INITIAL OBJECTIONS..................................................3

C.  MATTEL AGREES TO SUPPLEMENT BUT THEN RENEGES ON ITS PROMISE .....................................................................................3

D.  MATTEL IS ORDERED TO PROVIDE COMPLETE AND FULL RESPONSES ........................................................................................3

E.  MATTEL SERVES TARDY AND INCOMPLETE RESPONSES..............3

F.  MATTEL DELAYS THE MEET AND CONFER PROCESS AND THEN SERVES DELINQUENT AND DEFICIENT SECOND SUPPLEMENTAL RESPONSES ........................................................4

G.  MATTEL HAS FAILED TO IDENTIFY ITS TRADE SECRETS WITH THE REQUISITE SPECIFICITY .............................................5

ARGUMENT ....................................................................................................6

A.  MATTEL SHOULD BE REQUIRED TO WITHDRAW ITS OBJECTIONS AND CONFIRM THAT ITS RESPONSES ARE FULL AND COMPLETE ......................................................................6

B.  MATTEL'S CITATIONS TO "EXAMPLES" OF RESPONSIVE INFORMATION IS INADEQUATE ...................................................7

C.  MATTEL'S UNILATERAL LIMITATIONS ON ITS RESPONSES ARE IMPROPER AND IN VIOLATION OF COURT ORDER..................9

    1.  Mattel's Refusal To Identify Documents It Claims Were Not Stolen Is Improper ......................................................10

    2.  Mattel's Vague "Placeholders" Should Be Struck ...................11

    3.  Mattel's Temporal Limitation Is Improper..............................11

D.  MATTEL'S DESIGNATION OF ITS SUPPLEMENTAL RESPONSES AS "ATTORNEYS' EYES ONLY" IS IMPROPER ............12

E.  CONCLUSION ..................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Computer Economics Inc. v. Gartner Group, Inc.*,
  50 F. Supp. 2d 980 (S.D. Cal. 1999) ...................................................................5

*Imax Corp. v. Cinema Techs., Inc.*,
  152 F.3d 1161 (9th Cir. 1998) ...........................................................................5

*Universal Analytics, Inc. v. MacNeal-Schwendler Corp.*,
  707 F. Supp. 1170 (C.D. Cal. 1989).....................................................................5

## STATUTES & RULES

Civil Code
  § 3426.1 ......................................................................................................11, 12

Federal Rules of Civil Procedure
  33 .....................................................................................................................1
  34 .....................................................................................................................1
  37 .....................................................................................................................1

## MEMORANDUM OF POINTS AND AUTHORITIES

On July 29, 2009, Mattel was ordered to provide "complete and full responses" to four interrogatories that sought to uncover the basis for Mattel's claims of trade secret misappropriation (Phase 1 Interrogatory Nos. 20-23, the "Interrogatories").  Ignoring this directive, Mattel has laced its responses (the "Second Supplemental Responses") with objections and self-imposed limitations. Mattel's Second Supplemental Responses are neither complete nor full.

First, in direct contravention of the Discovery Master's Order, Mattel continues to assert objections to each Interrogatory and has made each Interrogatory subject to these objections.  Mattel should be ordered to remove its objections and to make clear that no responsive information has been withheld based upon any objections.

Second, Mattel's reference to "examples" of alleged misappropriation illustrate on their face, that the Second Supplemental Responses are incomplete. MGA is entitled to all facts currently known to Mattel that support Mattel's claim of misappropriation, not simply selected examples.

Third, Mattel's self-imposed limitations on its Second Supplemental Responses are in violation of the Discovery Master's Order to provide "complete and full responses," and are thus improper.  For example, Mattel announces that it will not provide information about documents that were not allegedly misappropriated.  Mattel also rewrites Interrogatory No. 21 so that it is limited only to information up to the time of the misappropriation.  These limitations are neither warranted nor proper as they exclude relevant information and render the Second Supplemental Responses incomplete.

Lastly, Mattel has designated its response as "Attorneys Eyes Only."  There is no basis for this designation for the vast majority of information in the Second Supplemental Responses.  Most of the Second Supplemental Responses contain page upon page of bates numbers that cannot be confidential, let alone Attorneys

1  Eyes Only.  The responses also contain page upon page of summaries of testimony

2  from the Phase I trial and a repetition of the allegations in the public version of the

3  Third Amended Answer and Counterclaim.  These responses, though deficient,

4  contain what Mattel asserts are the trade secrets at issue and thus, MGA needs to be

5  able to discuss these responses with MGA.

6  **BACKGROUND**

7  **A.      The Requests.**

8          On December 4, 2007, MGA propounded its Second Set of Phase 1

9  Interrogatories.  Declaration of William A. Molinski ("Molinski Decl.") Ex. A.

10  This set included Interrogatory Nos. 20-23 (the "Interrogatories"), which provide:

11          INTERROGATORY NO. 20:

12                  IDENTIFY with specificity each ALLEGED TRADE SECRET,

13          include the IDENTITY of each DOCUMENT that embodies or

14          REFERS or RELATES to each ALLEGED TRADE SECRET.

15          INTERROGATORY NO. 21:

16                  IDENTIFY each PERSON who has had access to each

17          ALLEGED TRADE SECRET, including (a) the ALLEGED TRADE

18          SECRET each PERSON had access to; and (b) the date or dates each

19          PERSON had this access.

20          INTERROGATORY NO. 22:

21                  STATE THE COMPLETE FACTUAL BASIS FOR YOUR

22          CONTENTION that MGA misappropriated any ALLEGED TRADE

23          SECRET.

24          INTERROGATORY NO. 23:

25                  STATE THE COMPLETE FACTUAL BASIS FOR YOUR

26          CONTENTION that the ALLEGED TRADE SECRETS are

27          protectable.

28

**B.     Mattel's Initial Objections.**

On January 3, 2008, Mattel served written objections and no substantive responses to the Interrogatories.  Molinski Decl. Ex. B.

**C.     Mattel Agrees To Supplement But Then Reneges On Its Promise.**

On March 25, 2009, after the Court lifted the stay on Phase 2 discovery, MGA asked Mattel to supplement its responses to the Interrogatories.  Molinski Decl. Ex. Q.  Initially, Mattel agreed to do so.  Molinski Decl. Ex. P.  Later, however, Mattel welched on its promise and MGA was forced to file a motion to compel.  Molinski Decl. Ex. O (Motion filed April 20, 2009).

After that motion was fully briefed, but before the hearing on the motion, Mattel raised a "counting" objection, claiming that it need not respond to the Interrogatories because they purportedly exceeded the maximum number of permitted interrogatories.  Molinski Decl. Ex. N (Declaration of Dylan Proctor filed July 7, 2009).

On July 8, 2009, at the hearing on MGA's motion to compel, the Discovery Master found that the "counting" issue was premature and that Mattel should respond to the Interrogatories.  Molinski Decl. Ex. M (Transcript at 17:9-18:4).  Thereafter, the parties agreed that Mattel would provide substantive answers to the Interrogatories by July 31, 2009.  Molinski Decl. Ex. L.

**D.     Mattel Is Ordered To Provide Complete and Full Responses**

On July 29, 2009, the Discovery Master issued Order No. 42.  Molinski Decl. Ex. K.  In it, the Discovery Master confirmed that Mattel's counting issue was "a red-herring" and ordered Mattel to provide "**complete and full**" responses to Interrogatory Nos. 20-23.  *Id.* (27:19-20) (emphasis added).

**E.     Mattel Serves Tardy And Incomplete Responses**

MGA did not receive the amended responses as promised on July 31, 2009.  Instead, on August 3, 2009, MGA wrote to Mattel inquiring as to when responses would be provided.  Molinski Decl., Ex. E.  Mattel claimed to have already served

- 3 -

1    its responses by mail, although no such service was received by MGA.  *Id.*  At

2    MGA's request, Mattel finally sent a copy of these responses to MGA via email.

3    *Id.*  Molinski Decl., Ex. C.

4    **F.     Mattel Delays The Meet And Confer Process And Then Serves**

5    **Delinquent and Deficient Second Supplemental Responses.**

6           On August 12, 2009, MGA sent a meet and confer letter to Mattel about the

7    deficiencies in its First Supplemental Responses.  Molinski Decl. Ex. F.  On August

8    19, Mattel responded, noting that it might consider providing amended responses,

9    but that it needed until September 2, 2009, to determine whether such responses

10   would be "necessary."  Molinski Decl. Ex. G.

11          On September 2, 2009, Mattel requested even more time to consider whether

12   or not it would actually agree to amend its supplemental responses.  Molinski Decl.

13   Ex. H.  MGA inquired as to whether Mattel actually planned to provide amended

14   supplemental responses, but Mattel refused to say one way or the other.  Molinski

15   Decl. Ex. I.  Mattel then asked the Discovery Master if it could have another week

16   to consider whether or not it would supplement.  Molinski Decl., Ex. J.  MGA

17   opposed this request in light of the fact that Mattel had already delayed the meet

18   and confer by two weeks and still Mattel would not confirm whether it planned to

19   amend its responses.  *Id.*  The Discovery Master declined to rule on Mattel's

20   request and, in an abundance of caution, MGA decided to wait yet another week to

21   see if Mattel would actually amend.

22          September 9 came and went and, as MGA expected, Mattel did not serve any

23   supplemental responses.  Five days later, on September 14, 2009, Mattel served its

24   Second Supplemental Objections And Responses to MGA's Phase 1 Interrogatory

25   Nos. 20-23 and 28 (the "Second Supplemental Responses").  Molinski Decl., Ex. D.

26   Except for a few additional names and bates numbers, the Second Supplemental

27   Responses are substantially the same and as the First Supplemental Responses and

28

1  did not address any of the deficiencies MGA outlined in its meet and confer letter.

2  The Second Supplemental Responses also were not verified.

3  **G.    Mattel Has Failed To Identify Its Trade Secrets With The Requisite Specificity**

4

5  By way of background, Mattel's Third Amended Complaint ("TAAC")

6  provides little indication of the specific information that Mattel claims was actually

7  misappropriated – – as opposed to the broader universe of information to which

8  former Mattel employees had access while at Mattel.  TAAC at ¶¶ 45-47.

9  MGA's Phase 1 Interrogatory No. 20 seeks to discover the identity of the

10  trade secrets that Mattel claims were misappropriated.  However, Mattel's

11  supplemental response to Interrogatory No. 20 falls far short of providing the level

12  of specificity that California law requires.  *See Universal Analytics*, *Inc. v.*

13  *MacNeal-Schwendler Corp.*, 707 F. Supp. 1170, 1177 (C.D. Cal. 1989) (plaintiff

14  failed to identify trade secrets that former employees were accused of taking); *Imax*

15  *Corp. v. Cinema Techs.*, *Inc.*, 152 F.3d 1161, 1164-1165 (9th Cir. 1998) (plaintiff

16  failed to provide precise numerical dimensions and tolerances for alleged trade

17  secrets); *Computer Economics Inc. v. Gartner Group, Inc.*, 50 F. Supp. 2d 980,

18  984-985 (S.D. Cal. 1999) (discussing rationale for requiring specificity in trade

19  secret designations).  Indeed, Mattel simply provides broad categories or types of

20  information that constitute the alleged trade secrets and then points MGA to

21  thousands of pages of documents and says "Go fish!"  This, of course, is consistent

22  with Mattel's efforts to win by attrition.  Mattel should not be allowed to deluge its

23  competitor with a massive and expensive undertaking to unearth what it is actually

24  accused of doing wrong.

25  Recently, on July 29, 2009, MGA de Mexico served its first set of Phase 2

26  interrogatories that also asked Mattel to identify the trade secrets that Mattel claims

27  were appropriated.  Molinski Decl. Ex. R.  These interrogatories were narrowly

28  tailored in a way that sought to prevent Mattel from the type of obfuscation it

employed in response to Interrogatory No. 20.  Specifically, this most recent sent of interrogatories by MGA de Mexico asked Mattel to identify its secrets on a document-by-document basis in such a way that would allow MGA to defend itself. *Id.*

On August 28, 2009, Mattel provided nothing but boilerplate objections to these interrogatories, and once again raised the "counting issue" that the Discovery Master has repeatedly stated is a dead issue.  Molinski Decl. Ex. S.  MGA has filed a separate motion to compel regarding these interrogatories, but Mattel's objections are mentioned here to show the Court how difficult it has been to get Mattel to identify with the requisite specificity the trade secrets that are at issue in this case. Mattel should not be allowed to hide such important information.

By this Motion, MGA seeks to preclude Mattel from unilaterally limiting its responses to each of the Interrogatories Nos. 20-23 and 28, and seeks further substantive responses to Interrogatories Nos. 21 and 22.  MGA reserves its right to move to compel further responses to Interrogatories Nos. 20 and 23.

## ARGUMENT

**A.   Mattel Should Be Required To Withdraw Its Objections And Confirm That Its Responses Are Full and Complete**

The Discovery Master's Order No. 42 could not be more clear.  After delaying responses for months due to premature counting issues, Mattel was ordered to provide "complete and full responses" to these Interrogatories.  Any objections Mattel had to providing such complete and full responses was overruled by Order No. 42.

Mattel has blatantly ignored this Order by providing incomplete and objection-laden responses to each Interrogatory.  Indeed, Mattel makes no effort to conceal its disregard for Order No. 42 by labeling its Second Supplemental Responses as "*Objections* and Responses" (italics added).  Mattel then proceeds to include two pages of General Objections, along with numerous specific objections

1   to each Interrogatory.  Mattel further states that its responses to each Interrogatory

2   are "subject to and without waiving the foregoing general and specific objections."

3   Molinski Decl., Ex. D (5:7-8, 105:23-24, 109:19-20, 257:3-4, 277:7-8).

4       Given these myriad objections and supplemental objections, MGA has no

5   way of knowing whether Mattel is withholding any documents on the basis of any

6   of its asserted objections.  Further, Mattel should not be allowed to provide

7   responses that are subject to so many objections when all such objections were

8   previously overruled by the Discovery Master.  Mattel should be ordered to re-serve

9   its Supplemental Responses without any objections.

10  **B.    Mattel's Citations To "Examples" Of Responsive Information Is
        Inadequate**

11

12      Interrogatory No. 22 asks Mattel to "STATE THE COMPLETE FACTUAL

13  BASIS" for its contention that MGA misappropriated any Mattel trade secrets.  In

14  response to this critical question, Mattel instead provides an incomplete response

15  that contains isolated "examples" of alleged misappropriation, again, in violation of

16  Order No. 42.

17      MGA's need for a complete response cannot be overstated.  In the TAAC,

18  Mattel takes a handful of isolated events of employee departures, misstates or

19  completely fabricates the facts surrounding those departures, and spins a story

20  worthy of Spielberg credit about an alleged plot by MGA to steal virtually every

21  trade secret owned by Mattel.

22      For example, in paragraph 50 of the TAAC, Mattel cites a March 22, 2006,

23  email communication that Mattel claims supports its trade secret misappropriation

24  claim.  The email is between former Mattel employees (Carlos Machado, Mariana

25  Trueba and Pablo Vargas) on the one hand, and certain MGA managers (Isaac

26  Larian, Susan Kuemmerle and Thomas Park) on the other.  Mattel quotes the email

27  as saying:  "Attached you will find our analysis for future discussion.  We will be

28  available during the nights of the week after 16:30 Los Angeles time…."  TAAC, ¶

1  50:26-28.  Mattel also attributes a nefarious motive to this email by speculating that

2  it was sent by departing Mattel employees "to prove their value in this endeavor to

3  MGA."  TAAC, ¶ 50:25-26.  Mattel does not elaborate as to what the "analysis"

4  was that the former employees communicated in their email or whether it had

5  anything to do with Mattel's alleged trade secrets.

6       In fact, the email that Mattel references in its TAAC has nothing to do with

7  the use or disclosure of any trade secret information.  To the contrary, the

8  "analysis" that is attached to the email simply describes the terms these individuals

9  were proposing to work for MGA Mexico.  Molinski Dec., Ex. T.  But the casual

10  reader would not know this because of Mattel's innuendo and clever story-telling.

11  Mattel should not be allowed to rely on such tactics to prove its misappropriation

12  claim.  A full and detailed account of the trade secrets that Mattel claims were

13  misappropriated is required.

14       In response to this all-important Interrogatory No. 22, Mattel spends the first

15  15 pages summarizing – – albeit inaccurately – – the evidence presented in the

16  Phase 1 trial concerning Carter Bryant's involvement with the creation of Bratz

17  dolls.  Molinski Decl., Ex. D (110:10-125:19).  Mattel then dedicates most of the

18  remaining thirty-five pages to repeating, almost verbatim, the allegations in the

19  TAAC.  *Id.* (126:20-161:9).  That means that of the fifty or so pages of substantive

20  answer to the this Interrogatory, Mattel provides only five or six pages of "new"

21  material.

22       Of the "new" material, Mattel cites to certain "examples" of alleged evidence

23  of misappropriation.  For example, after repeating the exact same allegations about

24  Janine Brisbois, Mattel asserts:

25
26  
27
28

1     ██████████████████████████████████

2     Molinski Decl. Ex. D (150:3-7)(emphasis added).

3         Similarly, when describing the claim that Nick Contreras allegedly requested

4     certain files from a Mattel employee, Mattel states:

5     ███████████████████████████████████████

6     ███████████████████████████████████████

7     ███████████████████████

8     Molinski Decl. Ex. D (151:5-7)(emphasis added).

9         In another example, Mattel also concludes its response to this Interrogatory

10     by stating:

11     ██████████████████████████████████████████

12     ██████████████████████████████████████████

13     ██████████████████████████████████████████

14     ███████████████████████████████████████████

15     ██████████████

16     Molinski Decl. Ex. D (160:25-28)(emphasis added).

17         The "examples" cited by Mattel in its responses are clearly inadequate as

18     MGA is entitled to know *all* the facts Mattel claims supports its trade secret

19     claim—not just the selected facts that Mattel chooses to identify.  As a result,

20     Mattel should be required to provide complete and full responses and confirm that it

21     is not aware of any other evidence that supports its misappropriation claim.

22     **C.**     **Mattel's Unilateral Limitations On Its Responses Are Improper And In**

23     **Violation Of Court Order**

24         Neither Order No. 42 nor the Federal Rules of Civil Procedure allow Mattel

25     to unilaterally limit its responses, re-define the scope of MGA's requests or include

26     placeholders for unidentified information.  Order No. 42 could not be more clear

27     that Mattel is required to provide "complete and full responses."  Each of Mattel's

28

1  qualification below should be struck and Mattel should be ordered to provide

2  amended answers without such limitations.

3      **1.    Mattel's Refusal To Identify Documents It Claims Were Not Stolen Is Improper**

4

5      In response to Interrogatory No. 20, Mattel includes the following

6  qualification:

7      Mattel will identify ███████████████████████████

8  ████████████████████████████████████████

9  Molinski Decl. Ex. D (4:27-5:1).  There is no basis for these unilateral

10  qualifications.

11      Whether a document was "stolen" or not, if it refers to the alleged trade

12  secrets at issue, it is relevant or likely to lead to the discovery of admitted evidence.

13  Other documents that refer to the trade secrets at issue could identify, for example

14  (1) how the trade secret was created (which bears on its economic value, if any); (2)

15  the disclosure of the trade secret to third parties (which bears on Mattel's efforts, if

16  any, to keep this information secret); (3) the efforts to protect the alleged trade

17  secret (same); (4) the individuals involved in preparation of the alleged trade secrets

18  (same); and (5) whether Mattel even considers the information to be confidential or

19  proprietary (same).

20      A brief example illustrates this point.  If there is a business plan that Mattel

21  claims was "stolen" by MGA, and another business plan refers to the allegedly

22  "stolen" plan as outdated, incorrect or inapplicable, MGA is entitled to see that later

23  plan.  If this were a single trade secret case, there is no question that MGA would

24  be entitled to see any document that relates to the alleged trade secret.  That Mattel

25  chose to throw the kitchen sink at MGA and claim the theft of thousand of pages of

26  purported secrets does not mean that Mattel is relieved of its obligations to identify

27  and produce every document that relates to its alleged trade secrets.

28

### 2.   Mattel's Vague "Placeholders" Should Be Struck

Interrogatory No. 20 contains a vague "catchall" or placeholder that is obviously intended to give Mattel cover for expanding the alleged trade secrets at issue.  Category No. 1 of the purported trade secrets states:



Molinski Decl., Ex. D (5:10-13).  Mattel then cites to literally thousands of documents and tells MGA that its trade secrets could be in any one of those documents.  *Id.*

Mattel's "description" of its alleged trade secret, however, is nothing more than a recitation of the definition of a trade secret from California's Uniform Trade Secret Act.  *See* Civil Code § 3426.1.  Mattel is saying, in essence, that its trade secrets are whatever trade secrets exist in these thousands of pages of documents.  This circular definition is of no use to MGA and provides no guidance as to what Mattel contends are the allegedly misappropriated trade secrets.  MGA should not be required to spin its wheels trying to guess what information in these many pages might be a trade secret under California Law.  Indeed, even if MGA tried, it could not tell what information was a trade secret because it would not know, e.g., whether the information was maintained in a manner designed to ensure its secrecy and what, if any, value Mattel attributed to this information.  MGA could not even tell if Mattel was the original author of these documents.

### 3.   Mattel's Temporal Limitation Is Improper

Mattel has also refused to provide important information about its trade secret claims by imposing temporal limitations that are not called for by the scope of MGA's requests.  Specifically, in response to Interrogatory No. 21, which asked Mattel to identify the persons who had access to Mattel's trade secrets, Mattel

1    qualifies its response by claiming that it will only identify the persons who had

2    access to it its trade secrets ████████████████████████

3    Molinski Decl. Ex. D (105:15-16).  Mattel repeats this limitation later when it says,

4    ████████████████████████████████████████

5    ████████████████████████████████████████████

6    ████████████████████████████████████████

7    ████████████████ Id. (108:22-25).  This limitation is neither proper nor called

8    for by this Interrogatory.

9        MGA is entitled to know the persons who had access to Mattel's trade

10   secrets, even after they were allegedly "stolen" from Mattel.  This information is

11   relevant because it bears directly on Mattel's efforts (if any) to keep its information

12   confidential—a required element for trade secret protection under California's

13   Uniform Trade Secrets Act.  *See* Civil Code § 3426.1.  For example, if hundreds of

14   people at Mattel have access to the company's alleged trade secrets, obviously

15   Mattel will have a more difficult time proving that its information is truly trade

16   secret.  Mattel's unilateral decision to limit its response to persons who had access

17   to its trade secrets prior to a certain point in time prevents MGA from obtaining this

18   important information.

19        Moreover, the fact that Mattel might not know who had access to its trade

20   secrets after they were allegedly "stolen" is irrelevant.  Mattel can at least provide

21   the names of the individuals that Mattel is aware of who had access to its alleged

22   trade secrets.  This would include Mattel's own employees and the persons to

23   whom Mattel's trade secrets were disclosed in the prosecution of the various

24   investigations that Mattel instigated in the United States, Canada, and Mexico.

25   Obviously Mattel knows or should know who these individuals are.

26   **D.**     **Mattel's Designation Of Its Supplemental Responses As "Attorneys'**

27         **Eyes Only" Is Improper**

28        The protective order governing discovery in this case (the "Protective

1  Order") provides for a very narrow definition of what may be designated as

2  "Attorneys Eyes Only."  Specifically, under paragraph 2 of the Protective Order,

3  only "trade secret" or other commercially sensitive information can be given this

4  designation.  Molinski Decl. Ex. U.

5      Mattel has marked the entirety of its Second Supplemental Responses as

6  "Attorneys Eyes Only" even though nothing in the document reveals what Mattel's

7  trade secrets actually are.  Rather, most of the document consists of pages and

8  pages of bates numbers and regurgitations of allegations from Mattel's publicly-

9  filed Third Amended Complaint.  On the face of the Second Supplemental

10  Responses themselves, nothing about them should be designated as "Attorneys

11  Eyes Only."  Yet Mattel has marked them as such – presumably to prevent MGA

12  and its in-house counsel from reviewing them.  Not only is there no reason for

13  doing this (since the document does not actually betray any trade secrets), but what

14  limited information the Second Supplemental Responses do provide must be shared

15  with MGA and its in-house counsel so that MGA can properly defend itself in this

16  case.  Only MGA and its in-house counsel can verify whether Mattel's alleged trade

17  secrets were every disclosed to or used by MGA.  MGA must be allowed to review

18  Mattel's Second Supplemental Responses to make this inquiry.

19  **E.**    **Conclusion**

20      For all these reasons, MGA motion to compel should be granted and Mattel

21  should be ordered to provide amended responses to MGA's Second Set of Phase 1

22  Interrogatory Nos. 20-23 and 28.

23  Dated:    September 18, 2009    ORRICK, HERRINGTON & SUTCLIFFE LLP

24

25      By:      /s/ William A. Molinski

26      William A. Molinski
    Attorneys for MGA Parties

27

28