QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>            Plaintiff,<br><br>    vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>            Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>Hon. Stephen G. Larson<br><br>**MATTEL, INC.'S REPORT REGARDING STATUS OF PHASE 2 DISCOVERY; AND STATEMENT OF POSITION REGARDING BIFURCATION OR STAY OF PHASE 2 TRIAL**<br><br>Date:  September 22, 2009<br>Time:  1:30 p.m.<br>Place:  Courtroom One<br><br>**Phase 2:**<br>Disc. Cut-off:       Dec. 11, 2009<br>Pre-trial Con.:      Mar. 1, 2010<br>Trial Date:          Mar. 23, 2010 |

07975/3102431.1

Pursuant to the Court's August 31, 2009 Order, this Report is being submitted to apprise the Court of the status of discovery and of Mattel's positions on Phase 2 bifurcation and stay issues.[1]  Because discovery is ongoing, Mattel cannot say with certainty what remains to be done.  It took six months of motion practice to simply obtain the first post-stay Phase 2 depositions.  Omni 808 and its affiliates have explicitly admitted that they are withholding relevant documents.   It may be months before the critical issues raised by Mattel's crime-fraud motion are decided.   The issues relating to withholding non-privileged documents, including the critical Larian-O'Connor email, are likely to require substantial motion practice.  This report therefore is necessarily incomplete.

## STATUS OF DISCOVERY

### I. DEPOSITIONS

While Mattel began noticing new depositions as soon as the Phase 2 stay was lifted in January 2009, substantial motion practice has been required to secure depositions and only three depositions have been since conducted:

- Since the Phase 2 discovery stay was lifted Mattel has taken, but not yet completed, the depositions of <u>Leon Neman</u>, <u>Fred Mashian</u>, and <u>Neil Kadisha</u>.[2]

- Mattel had earlier deposed <u>Gustavo Machado</u> and <u>Jorge Castilla</u>.  Mr. Machado invoked the Fifth Amendment 200 times, and Mr. Castilla some 500 times, limiting the value of these depositions.  Mattel had also deposed <u>Daniel Cooney</u>, <u>Nick Contreras</u>, and <u>Susana Kuemmerle</u> with respect to its trade secret claims.

---

[1] Mattel has made every effort to provide full and accurate information in this Report.  Given the page constraints, we have not provided detailed citations, but will provide any additional information or backup requested by the Court.

[2] Each of these depositions is now or will be the subject of further motion practice.  Mr. Kadisha refused to provide such basic information as his home telephone number or cell phone number in relation to his claim that he called Mattel's CEO, Bob Eckert, from either his office, home or cell phone regarding Omni 808's loan acquisition.  Counsel for Mr. Kadisha also improperly asserted blanket instructions not to answer other questions.  These issues are the subject of a pending meet and confer.  Mr. Neman, at his deposition, was improperly instructed not to answer questions regarding the payment of the legal fees for Mr. Neman, Omni and Vision Capital; Mattel will move to compel those answers.  Mr. Mashian admitted to being in possession of documents regarding Lexington Financial, Ltd., including the transaction with Vision Capital, but failed to fully produce those documents and indeed admitted that he had not even looked for documents.

Depositions in foreign countries have proceeded slowly:

- The Discovery Master denied Mattel's motion to compel the depositions of <u>Pablo Vargas</u> and <u>Mariana Trueba</u> by notice. Thereafter, Mattel moved for issuance of a Letter of Request, and on August 26, 2009, the Discovery Master recommended that the Court sign the Letter of Request as proposed by Mattel. That recommendation remains pending before this Court.

- The Court issued a Letter of Request to Canada for the depositions of <u>Janine Brisbois</u> and <u>MGA Canada</u>. A hearing in Canada on Mattel's motion to enforce the Letter of Request is currently scheduled for October 7, 2009, having twice been continued at MGA Canada's request. Today, MGA Canada filed an opposition refusing to produce basic discovery.

Additional authorized depositions are pending:

- On September 3, 2009, the Discovery Master granted Mattel an additional 11 hours to depose <u>Isaac Larian</u>. The deposition has not been scheduled.

- On September 11, the Discovery Master granted Mattel an additional seven hours to depose <u>Ron Brawer</u>. The deposition has not been scheduled.

- Mattel has served <u>Susan Kim</u>, a former Mattel employee, with a deposition subpoena and noticed her deposition for November 11, 2009.

- Counsel for MGA accepted service in January 2009 of a deposition notice on <u>Sharin Salemnia</u>, who left Mattel to work at MGA, and then subsequently informed Mattel that Ms. Salemnia no longer worked at MGA, that she was no longer represented by MGA's counsel and that Mattel would be required to serve her with a subpoena. Ms. Salemnia evaded numerous service attempts.

- Mattel has served <u>Leon Farahnik</u>, an associate of Isaac Larian's, with a deposition subpoena, and his deposition is currently scheduled for September 30, 2009, having previously been continued at Mr. Farahnik's request.

- Mattel has sought, and the MGA Parties agreed to produce, the depositions of MGA Hong Kong executives, Stephen Lee and Patrick Ma. The parties have discussed scheduling those depositions for late September or October 2009.

Still more depositions remain to be approved or scheduled:

- Neither <u>MGA Entertainment</u> nor <u>MGA Mexico</u> has produced witnesses to testify regarding any of the topics detailed in the 30(b)(6) notices Mattel served last year. Mattel intends to renew its requests and move to compel.

- On August 11, 2009, Mattel sought leave to conduct depositions of <u>Benjamin Nazarian</u>, <u>Joseph Monian</u>, <u>David Nazarian</u>, <u>Arsalan Gozini</u>, <u>Elahe Pezeshkifar</u>, <u>Angela Larian</u>, <u>Shirin Makabi</u>, <u>Jahangir Makabi</u>, <u>Peter Carson</u>, <u>Brian Wing</u>, <u>John Woolard</u>, <u>Tom Allison</u>, and <u>Patrick Ma</u>, as well as 30(b)(6) witnesses of <u>Omni 808</u>, <u>Bank of Ireland</u>, <u>Cerberus</u>, <u>Silverpoint</u>, <u>IGWT Group, LLC</u>, <u>IGWT 826 Investments, LLC</u>, <u>Vision Capital</u>, <u>Lexington Financial Limited</u>, and <u>Wachovia</u>. That motion is pending.

- In interrogatory responses served less than three weeks ago, the MGA

Defendants identified at least 172 individuals with knowledge of their unclean hands defense and unfair competition claims against Mattel, 141 of whom have yet to be deposed, and many of whom had not been previously identified. As for the remainder, including witnesses such as Paula Garcia, Mattel did not have enough time during Phase 1 discovery to question many of them as to Phase 2 issues. Furthermore, some witnesses are identified as only companies, without the name of any individual. Mattel has sought additional information on the identities of such witnesses but has not received a response from MGA.

- MGA has identified more than 130 individual witnesses with knowledge of facts relevant to Mattel's misappropriation of trade secret claims and MGA's defenses thereto. The vast majority of these witnesses have not been deposed.

## II. DISCOVERY RELATING TO FINANCIAL ISSUES

Defendants have not produced documents, or responded to interrogatories, regarding the financial issues. Their affiliates at Omni and Vision Capital have provided deficient document productions despite being compelled by two Discovery Master Orders. The outstanding discovery to date includes:

- <u>First Set of Interrogatories (Phase 2) to Isaac Larian</u>. These interrogatories, served on March 4, 2009, ask Larian to identify any entity in which (1) he and Angela Larian have an ownership interest; or (2) in which any trust he owns has an ownership interest—basic information needed for net worth, to untangle financial transactions alleged in the TAAC, and to conduct follow-up discovery. Mattel moved to compel many months ago, and the Discovery Master ordered Larian to answer these interrogatories. Rather than comply, Larian filed objections with the Court, which are due to be heard on October 5, 2009.

- <u>First Set of Interrogatories (Phase 2) to MGA Parties</u>. These interrogatories seek, among other things, information relating to payments the MGA Parties have made to Larian or his family members, Omni, and certain other parties related to the fraudulent financial transactions. Such information is necessary to disentangle the fraudulent transactions and to show that they were orchestrated by Larian and his conspirators. Defendants have not yet responded to the Interrogatories.

- <u>Updated financial information for MGA.</u> MGA has not updated the vast majority of its financial information since its productions prior to and during Phase 1 trial, and even those productions were incomplete. Mattel only has balance sheets and audited financial statements up through 2006, and partial, unaudited financial statements up through mid-2008. The Discovery Master ordered MGA to supplement certain financial information but MGA has not done so. Mattel has sent a meet and confer letter regarding MGA's failure to supplement. MGA has not yet responded.

- Mattel has been attempting to get information regarding Lexington from Bingham McCutchen, its transactional counsel, for over seven months. Mattel served Bingham McCutchen with a subpoena on February 12, 2009. The Discovery Master granted Bingham's motion to quash on May 6, 2009.

Mattel appealed this ruling to the Court, which granted Mattel's motion in part and remanded to the Discovery Master on July 9, 2009. On August 26, 2009, the Discovery Master ordered Bingham to produce documents responsive to the subpoena. Today, the day for its compliance, Bingham filed for partial reconsideration, which will delay a complete production still further while the parties undergo another round of briefing.

- <u>Documents Regarding Debt Acquisition & Related Omni/Vision/Lexington Transactions</u>. Basic loan and financial documents relating to the debt acquisition that is the subject of Mattel's claims in the TAAC have not been produced. The Omni Parties acknowledged that they have not produced to Mattel any documents reflecting loans between Vision Capital and Lexington Financial, which purportedly funded Vision Capital for its contribution to the loan acquisition, despite the Discovery Master's prior Orders which plainly directed them to do so. Mattel's motion to enforce is currently scheduled to be heard on September 25, 2009.

    - There is not one reference, much less any supporting documents, evidencing the transfer of the $10 million allegedly provided by Vision Capital to Omni 808 to fund the acquisition of the Wachovia debt.

    - The one-page, redacted wire transfer records produced by Omni with critical names and accounts excised and lacking any supporting documentation of any kind do not identify the actual source of any of these funds—which is what is at issue.

    - There are no documents produced regarding the formation of Vision Capital or Lexington, despite this Court's July 9 Order making clear that such information is relevant.

    - Mattel does not even have many of the financial documents and communications attached to the Durkin Report that came from MGA's files.

    - Both Messrs. Neman and Mashian have admitted to the existence of relevant documents which have not been produced. These will be the subject of motion practice, since meet and confers have proved unsuccessful in obtaining the documents.[3]

- Based on new information, Mattel will have to seek reconsideration of the Court's previous orders denying service of process on Lexington. Mr. Mashian recently admitted that key statements in his declaration—which the Discovery Master relied on when it found Lexington Financial to be beyond the Court's jurisdiction—were without basis. Additionally, Mattel has recently discovered from Mashian's and Neman's depositions that Lexington has for years continuously engaged in business in California and continues to do so.

---

[3] For further pending discovery regarding these issues, <u>see</u> Supplemental Declaration of Michael T. Zeller In Support Of Mattel, Inc.'s Motion to Modify Scheduling Order, dated August 24, 2009, at ¶¶22-33.

## III. DISCOVERY RELATED TO TRADE SECRETS THEFTS

Written discovery propounded so far regarding Mattel's trade secret claims includes at least 550 requests for production of documents and things, 130 requests for admission and 14 interrogatories. Nonetheless, defendants have only begun to provide documents regarding the trade secret thefts. Just this week, after months of motion practice and a Discovery Master Order, MGA Mexico made its *first* production of documents, which Mattel has not yet reviewed because of its volume (more than 288,000 pages) and because MGA Mexico's production has technical defects precluding full review that it has not yet corrected. The following documentary discovery also remains outstanding:

- MGA objected to each of 107 requests by Mattel related to MGA's receipt of Mattel's trade secrets. Mattel has initiated meet and confer discussions regarding MGA's objections. Mattel has also served documents requests and interrogatories relating to MGA's knowledge and use of Mattel's trade secret information, specifically including MGA's knowledge of Mattel's pricing information, forecasting and inventory systems and use of such information. MGA has not yet responded to these requests.

- Mattel still does not have complete information regarding MGA's payments to former Mattel employees, which are the subject of Mattel's claims, despite two Discovery Master Orders. Mattel first propounded interrogatories seeking this information on January 9, 2008. On March 3, 2009, the Discovery Master Ordered MGA to provide full responses. After receiving three extensions, MGA finally provided facially deficient responses on June 15, 2009. These responses did not even include information regarding payments to Carter Bryant, Veronica Marlow and other former Mattel employees known to have received payments from MGA. Thus, on September 9, 2009, the Discovery Master granted Mattel's motion to enforce and ordered for a second time that MGA provide Mattel with complete interrogatory responses. Those responses are due to be served by September 29, 2009.

- By that same Order, the Discovery Master also granted in part Mattel's motion to enforce the former Discovery Master's August 14, 2007 order, and compelled MGA to produce documents relating to its payment of "bonuses" to Machado, Vargas, Trueba, Brisbois and Brawer. MGA's deadline for producing such documents is September 29, 2009.

- On July 15, 2009, Mattel moved to compel MGA Mexico to produce documents responsive to 657 requests in four separate requests for production of documents, seeking documents regarding, among other things, Mattel's trade secret and unfair competition claims and the MGA parties' unclean hands defense. On August 26, 2009, the Discovery Master granted Mattel's motion as to 344 requests and ordered MGA Mexico to produce documents by September 15, 2009. On September 16, 2009, MGA Mexico produced

more than 288,000 pages of documents in response to those requests. It also, however, served further improper responses that suggest it is still withholding key documents. As to the remaining 256 requests, the Discovery Master denied Mattel's motion without prejudice, stating that Mattel needed to submit a separate statement. The Discovery Master ordered the parties to further meet and confer and submit a joint statement setting forth their respective positions as to each. The parties have met and conferred and are in the process of preparing the joint statement. Numerous disputed issues remain to be resolved.

- The Court issued a Letter of Request for the production of documents by MGA Canada. Thus far, Mattel has received no documents. A hearing in Canada on Mattel's motion to enforce the Letter of Request is scheduled for October 7, 2009.

## IV. DISCOVERY RELATED TO PERJURY, OBSTRUCTION AND SPOLIATION

Virtually no discovery has been completed related to obstruction and spoliation because of defendants' refusal to produce critical documents. The remaining issues include:

- Crime-Fraud Discovery: In March 2009, Mattel filed a motion to discover communications relating to the origin and timing of Bratz on the grounds of crime-fraud and waiver of the attorney-client privilege. In August 2009, the Discovery Master ruled that Mattel had made a prima facie showing of entitlement to documents and ordered *in camera* review of the documents at issue. Since the Discovery Master's Order, MGA has moved for a stay, moved for reconsideration, and indicated that it intends to move for mandamus review.

- On August 10, 2009, MGA produced for the first time a non-privileged e-mail exchange between Larian and Victoria O'Connor (MGA2 0070266-0070270) discussing their attempts to conceal Carter Bryant's creation of Bratz while he was still a Mattel employee. The Court has already ruled this document was improperly withheld from the Phase 1 trial. Mattel currently has pending Requests for Admission to MGA and Larian regarding the O'Connor-Larian e-mail exchange. Yesterday, the Discovery Master held that the Requests for Admission seek relevant information and Ordered MGA to answer them. Mattel intends to propound additional discovery, including Requests for Production and deposition notices and topics, related to the substance of the e-mail, MGA's and Larian's obstruction of justice in improperly concealing it and deliberately misrepresenting its contents to Mattel and the Court, and their obstruction more generally.

## V. DISCOVERY RELATED TO MGA'S UNFAIR COMPETITION CLAIM AND AFFIRMATIVE DEFENSES

In response to Mattel's TAAC, on June 29, 2009, the MGA Defendants answered with at least 12 new affirmative defenses. The MGA Defendants provided supplemental responses on August 31, 2009 to a contention interrogatory as to these

07975/3102431.1
-6-
MATTEL'S REPORT ON STATUS OF DISCOVERY

defenses. Even for the previously pleaded affirmative defenses, in the supplemental responses MGA identified new factual assertions, relevant documents or knowledgeable witnesses for all but six of them.

Discovery taken so far includes the following:

- Mattel has propounded over 30 interrogatories on the MGA Defendants relating to MGA's unfair competition claims against Mattel, and has filed at least 6 motions to compel to obtain full and complete responses to these interrogatories.

- Mattel has propounded approximately 650 requests for production of documents and things on the MGA Defendants relating to MGA's unfair competition claims against Mattel, and has already filed at least 3 motions to compel to obtain production of documents and things responsive to these requests.

Much discovery remains outstanding, including the following:

- MGA's August 31 Interrogatory Responses reference documents and categories of documents that MGA has not produced, and they fail to identify the majority of the documents supporting their affirmative defenses by Bates number or with enough specificity to allow Mattel to identify them. Such documents are directly responsive to requests for production that the previous Discovery Master compelled. Mattel sent a meet and confer letter in this regard on September 4, 2009. MGA responded that all of the documents referenced in its Response have been produced or are available to Mattel, even though the Response references Bates-numbered documents that they have never produced.

- MGA's August 31 Response also fails to identify by name the people that will support its claims. It states that "current or former employees" of certain entities have knowledge of facts regarding MGA's unclean hands defense, yet fails to provide names of any of these individuals. Mattel has requested that MGA provide this information promptly, but it has not responded to Mattel's request.

- MGA's August 31 Response also includes for the first time new facts and legal theories, including its assertion that Mattel possesses and improperly uses its dominant market power to drive MGA from the market completely. Mattel intends to take depositions and propound written discovery regarding the new subject areas identified in this response.

- MGA has also yet to produce to Mattel many of the products it claims embodies its alleged trade dress. The prior Discovery Master ordered MGA to produce products that the MGA claimed Mattel infringes. In MGA's Supplemental Response to Interrogatory No. 2 of Mattel, Inc.'s First Set of Interrogatories re Claims of Unfair Competition, MGA identified products it claims contains the claimed trade dress. However, MGA has not provided Mattel with these products themselves, let alone associated documents. Mattel has requested that MGA do so, but MGA has ignored Mattel's request.

- Mattel has propounded seven additional interrogatories relating to MGA's

unfair competition claims against Mattel. MGA has not yet provided responses.

- Mattel propounded its Second Set of Requests for Documents and Things to MGA (Phase 2) on September 4, 2009. Many of these requests also relate to MGA's unfair competition claims against Mattel. MGA has yet to produce documents in response to these requests.

- On December 20, 2006, Mattel propounded interrogatories regarding MGA's damages theories and the factual basis for those theories, including alleged loss of sales to Mattel. MGA has not supplemented its response since early 2007. Mattel is in the process of seeking full, updated answers.

- Mattel anticipates serving additional requests for production and requests for admission to narrow the scope of the issues at trial regarding MGA's claims and affirmative defenses.

## VI. OUTSTANDING ISSUES RELATING TO PRIVILEGE LOGS

The parties are currently meeting and conferring as to the following unresolved issues:

- Mattel has challenged hundreds of documents on MGA's logs as being improperly withheld. Earlier today, MGA produced more than 800 pages of long withheld documents, conceding they are not privileged, following more than a dozen letters by Mattel and multiple meet and confers since early this year. Motion practice will be required as to at least hundreds of other entries.

- Mattel recently learned (through MGA's disclosure of documents long withheld improperly as privileged) that Larian has a practice of improperly channeling non-legal communications through in-house counsel in order to shield them from disclosure. There are at least 1300 communications between Larian and in-house counsel which Mattel has indentified. MGA has refused to meet and confer on any of these entries. This issue will likely require substantial time for resolution, given the volume of documents at issue.

- MGA has refused to provide even basic information about the identities of individuals and attorneys on its logs, which list over 10,000 separate entries. Mattel has a pending application before the Discovery Master to obtain some such information.

- The Discovery Master is reviewing more than 400 withheld documents pursuant to Order No. 33. It is likely that these communications, when they are finally produced, will reveal further issues requiring continued motion practice.

- In addition to MGA's privilege logs, Mattel is presently engaged with Omni 808 and the IGWT parties regarding numerous issues on their privilege logs.

## VII. DISCOVERY RELATED TO DAMAGES

As noted above, the MGA Parties have failed to update most of their financial

information since Phase 1 trial.  A proper damages analysis cannot even begin absent this information.  Other important evidence relating to damages remains outstanding as well, including the following:

- Mattel has learned that MGA and Larian are actively subverting the Bratz brand held in constructive trust for Mattel, and instead are developing products designed to compete with Bratz, including the recently-released "Moxie" dolls.  Mattel has begun discovery into these matters, and intends to propound requests for production and 30(b)(6) topics in this regard.

- Marketing and Consumer Studies:  MGA has produced some, but not all, of its tracking studies.  Notably, they have not produced any post-2007 tracking studies, which are critical.  Similarly, MGA has not produced any post-2007 consumer research reports or any updated information on co-branding relationships.

- Sales Data: Updated lists of retailers, distributors and licensees; updated market-share and shelf space information; and updated SKU-level data.

- Bratz advertising and marketing information, including marketing and media plans and amounts spent to advertise, market and promote Bratz.

- Product development information, including the amounts spent to design and develop new products, the current number of employees assigned to Bratz-related tasks and descriptions of their Bratz-related responsibilities.

- Information regarding the value of the Bratz brand over time.

## VIII. BIFURCATING TRIAL WOULD NOT PROMOTE EFFICIENCY AND WOULD PREJUDICE MATTEL

While Mattel has alleged a number of separate legal claims in its Phase 2 complaint, virtually all of the underlying facts and evidence relevant to these separate claims are also relevant to the RICO enterprise allegations of the complaint. RICO requires proof of a pattern: in this case, the trade secrets thefts, improper financial transactions, devaluation of the Bratz brand, and obstruction and perjury are all part of the pattern that Mattel has alleged.  For RICO purposes, the financial transactions cannot be considered separate and apart from the other elements of the pattern.  Moreover, these sham transactions are central to determining defendants' net worth even apart from the new claims in the TAAC.  It was for this reason that the Discovery Master properly permitted at least partial discovery into these transactions even *before* Mattel amended its counterclaims.

This is not a situation where resolution of the issues in "Phase 2" would also resolve, or redefine, the issues in "Phase 3." There is no analog to the argument that ownership of Bratz, determined first, would focus if not resolve the issues to be decided later. Here, far from promoting efficiency, bifurcation would undermine it, requiring two trials involving the same evidence with the result of the first doing little, if anything, to streamline the second. What's more, the inevitable discovery disputes as to whether requests relate to Phase 2 or Phase 3 make any effort to bifurcate "fraught with the potential of unnecessarily compounding discovery disputes in a case already predisposed to such disputes." January 7, 2008 Order at 3. Unlike in Phase 1, there are no efficiencies to counterbalance such disadvantages.

## IX.  A STAY IS BOTH PREMATURE AND UNNECESSARY

Mattel has moved to extend the trial date in this case by eight months because of the large amount of discovery, discussed above, that remains to be completed. Thus, any stay of the Phase 2 trial is both unnecessary and premature at this point, since the Court of Appeals may well rule on MGA's appeal (which is limited to injunctive relief in any event) by the time of the Phase 2 trial, rendering the stay question moot. Even more important, there is no scenario in which the current appeal would resolve all of the claims in Phase 2 and obviate the need to complete discovery. Given that Phase 2 discovery was already stayed once, it is essential that there be no further delay that could result in memories fading further and documents being lost or misplaced. Mattel has no objection to deferring the issue of a trial stay until the completion of discovery, but respectfully submits that there should be no stay at this point because, intentionally or not, it risks complicating and delaying the already complicated and much-delayed completion of discovery in this case.

DATED: September 18, 2009      QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By   /s/ Michael T. Zeller
  Michael T. Zeller
  Attorneys for Mattel, Inc.