QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 090378)
johnquinn@quinnemanuel.com
Michael T. Zeller (Bar No. 196417)
michaelzeller@quinnemanuel.com
Jon D. Corey (Bar No. 185066)
joncorey@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br>Consolidated with<br>Case No. CV 04-09039<br>Case No. CV 05-02727<br><br>Hon. Stephen G. Larson<br><br>MATTEL, INC.'S OPPOSITION TO ISAAC LARIAN'S OBJECTIONS TO DISCOVERY MASTER ORDER NO. 46 REGARDING RESPONSES TO PHASE 2 INTERROGATORIES |

**PUBLIC REDACTED VERSION**

[Declaration of B. Dylan Proctor filed concurrently]

Hearing Date: October 5, 2009
Time: 10:00 a.m.
Place: Courtroom 1

**Phase 2**

Discovery Cutoff: Dec. 11, 2009
Pre-trial Conference: March 1, 2010
Trial: March 23. 2010

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

FACTUAL BACKGROUND ................................................................................... 2

ARGUMENT ........................................................................................................... 5

I.    LARIAN'S MOTION FAILS BECAUSE HE DOES NOT EVEN ARGUE THAT THE DISCOVERY MASTER'S ORDER IS CLEARLY ERRONEOUS OR CONTRARY TO LAW ................................. 5

II.   THE DISCOVERY MASTER'S ORDER SHOULD BE UPHELD ............... 6

    A.    The Interrogatories Seek Clearly Relevant Information ......................... 6

    B.    The Discovery Master's Ruling that the Interrogatories Are Not Overbroad Should Be Upheld .................................................................. 12

    C.    The Discovery Master's Finding that Larian Failed To Prove His Burdensome Objection as to Both Interrogatories Should Be Upheld ................................................................................................... 15

CONCLUSION ....................................................................................................... 16

1

# TABLE OF AUTHORITIES

2

**Page**

3

## Cases

4

Bryant v. Mattel, Inc.,
2007 WL 5430885 (C.D. Cal. July 2, 2007)..........................................................6

5

In re Certain Asbestos Cases,
6    112 F.R.D. 427 (N.D. Tex. 1986)..........................................................................9

7    Eastman Kodak Co. v. Camarata,
238 F.R.D. 372 (W.D.N.Y. 2006) .......................................................................9
8

9    England Data Servs., Inc. v. Becher,
829 F.2d 286 (1st Cir. 1987)..............................................................................9

10

Fahrenkrog v. SmithKline Beecham Corp., ,
2007 WL 389492 (D. Colo. Feb. 1, 2007)..........................................................8
11

12    Goff v. Kroger Co.,
121 F.R.D. 61 (S.D. Ohio 1988)..........................................................................9
13

Estate of Gonzales v. Hickman,
14    2007 WL 3231956 (April 18, 2007).......................................................................8

15    Ghotra v. Holder,
324 Fed. Appx. 609 (9th Cir. 2009) ...................................................................6
16

17    Grimes v. City and County of San Francisco,
951 F.2d 236 (9th Cir. 1991) .........................................................................5, 6

18    Hamilton v. Wilms,
2007 WL 2558615 (E.D. Cal., Sept. 4, 2007) ......................................................6
19

20    Henderson v. Frank,
2006 WL 3377567 (W.D. Wis. Aug. 6, 2006) ......................................................5

21    In re Intuit Privacy Litig.,
138 F. Supp. 2d 1272 (C.D. Cal. 2001)...............................................................6
22

23    Jackson v. Montgomery Ward & Co.,
173 F.R.D. 524 (D. Nev. 1997) .........................................................................15
24

25    Malautea v. Suzuki Motor Co., Ltd.,
987 F.2d 1546 (11th Cir. 1993) ..........................................................................8

26    Oppenheimer Fund, Inc. v. Sanders,
437 U.S. 340 (1978)..........................................................................................9
27

28    Sebago, Inc. v. Beazer East, Inc.,
18 F. Supp. 2d 70 (D. Mass. 1998)..............................................................9, 10

Southern Cal. Housing Rights Ctr. v. Krug,
  2006 WL 4122148 (C.D. Cal. Sept. 5, 2006) ........................................................ 10

Wrangen v. Pennsylvania Lumbermans Mut. Ins. Co.,
  593 F. Supp. 2d 1273 (S.D. Fla. 2008) .................................................................... 8

**Statutes/Rules**

Fed. R. Civ. Proc. 72(a) ............................................................................................. 5

## **Preliminary Statement**

More than six months after propounding them, Mattel is still awaiting responses to its first two Phase 2 interrogatories to Larian, which seek basic information concerning Larian's involvement in the laundering of Bratz funds, his numerous other financial misdeeds alleged in this case, and his net worth. Larian has never denied that he has such information readily available to him, undoubtedly because Larian, like other individuals of his means, has financial advisers, accountants and other professionals who routinely prepare and maintain such information for him. The Discovery Master found that the interrogatories seek information relevant to Mattel's claims and ordered them answered as modified by his ruling, but Larian still refuses, even though his date for compliance with the Order has passed and he has neither obtained nor sought any stay of his obligations.

Larian's objections to the Discovery Master's Order fail at the starting gate. Nowhere in his Motion does Larian even argue, let alone carry his burden of proving, that the Discovery Master's ruling was contrary to law or clearly erroneous. Instead, underscoring that even Larian recognizes his objections simply do not justify reversing the Discovery Master's Order, Larian asks the Court to reach a different result than that of the Discovery Master. That, of course, is insufficient. Absent a ruling that is contrary to law or clearly erroneous, the Discovery Master's Order must be upheld. Larian's Motion does not ask for, and cannot sustain, that finding.

In any event, Larian's objections are groundless. Larian largely mischaracterizes the Order, falsely claiming that it did not address Larian's relevance and overbreadth objections. But the Discovery Master considered all of the arguments Larian presents here (and others he has abandoned) and rejected them. Citing numerous portions of Mattel's Third Amended Answer and Counterclaims ("TAAC"), the Discovery Master correctly held that information concerning the ownership interests of Isaac Larian, his immediate family, and trusts they control are highly relevant to Mattel's Phase 2 claims. Indeed, as the Discovery Master found, Larian did not even

-1-

1 | challenge and, in fact, " ███████████████████████████

2 | ███████████████████████████ " and thus conceded its relevance.

3 |      Ignoring this, Larian's motion spins out hypothetical scenarios involving

4 | supposed $10 investments in real estate investment trusts and tomato farms in an

5 | attempt to show overbreadth. Such unsupported -- and indeed facially implausible --

6 | conjecture cannot serve to avoid the discovery of plainly relevant financial information.

7 | Nor can such imaginative musings constitute proof that the interrogatories are

8 | overbroad or burdensome, let alone unduly so in a case that MGA and Larian's counsel

9 | routinely claim is worth "billions." The Discovery Master was correct that Mattel's

10 | interrogatories, viewed in light of the TAAC and given a common sense interpretation,

11 | properly seek information that is likely to lead to the discovery of admissible evidence

12 | concerning Mattel's Phase 2 claims, ███████████████████████

13 | ███████████████████████ .

14 |      Larian's Motion should be denied and the Discovery Master's Order

15 | should be upheld. Further, because Mattel needs this basic financial information to

16 | even start unraveling the full picture of Larian's massive financial wrongdoing and

17 | because Larian overtly threatens to continue to litigate these interrogatories through

18 | "rounds and rounds of" further briefing,[1] even though Mattel served them almost seven

19 | months ago and even though Larian's deadline for compliance with the Discovery

20 | Master's Order passed weeks ago, the Court should order Larian to immediately and

21 | fully answer the interrogatories, with sanctions for failure to comply.

22 | **Factual Background**

23 |      <u>Mattel Serves Two Interrogatories on Larian.</u> On March 4, 2009, Mattel

24 | served two interrogatories on Larian, seeking information concerning the entities in

25 | which Larian and those acting under his control have held ownership interests over the

26 | last four years. The Interrogatories are:

27 |

28 | [1]   Motion, at 3:17-20.

1 **Interrogatory No. 1:** IDENTIFY each and every ENTITY in

2 which LARIAN has held, directly or indirectly, any

3 OWNERSHIP INTEREST at any time since January 1, 2005.

4 For the purpose of this Interrogatory, transactions involving the

5 purchase or acquisition of publicity traded stock in an amount of

6 $1,000 or less may be excluded.

7 **Interrogatory No. 2:** IDENTIFY each and every ENTITY in

8 which any LARIAN TRUST has held, directly or indirectly, any

9 OWNERSHIP INTEREST at any time since January 1, 2005. For

10 purpose[s] of this Interrogatory, transactions involving the

11 purchase or acquisition of publicity traded stock in an amount of

12 $1,000 or less may be excluded.

13 As explained more fully below, and as the Discovery Master ultimately

14 found, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

15 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

16 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

17 ▮▮▮▮▮▮.[2]

18 <u>Larian Refuses to Respond at All, Forcing a Motion to Compel.</u> On April

19 3, 2009, Larian served objections to the two Interrogatories, providing no substantive

20 responses at all.[3] The parties met and conferred in April and May 2009. Following the

21

22

23

24

25

---

26 [2] <u>See</u> TAAC, ¶¶ 17, 19, 121, 136, 138, 145, 149, and 150, Declaration of B. Dylan Proctor, filed concurrently ("Proctor Decl."), Exh. 1.

27 [3] Isaac Larian's Response to Mattel, Inc's First Set of Interrogatories (Phase 2),

28 served April 3, 2009, Proctor Decl., Exh. 2.

1   temporary stay of Phase 2 discovery, Mattel filed its motion to compel on June 19,

2   2009.[4]

3           The Discovery Master Compels Larian to Respond. On August 14, 2009,

4   the Discovery Master's Order No. 46 granted Mattel's Motion to Compel.[5]  The

5   Discovery Master expressly found that both interrogatories sought relevant information,

6   and overruled Larian's objections based on burden and overbreadth.  The Discovery

7   Master ordered Larian to "████████████████████████" to Interrogatory No. 1

8   within 20 days.  As to Interrogatory No. 2, the Discovery Master narrowed the

9   definition of ████████████████████████████████████████████

10  ████████████████████████████████████████████████

11  ████████████████████████████████."[6] As limited, the Discovery

12  Master compelled Larian to "████████████████████████

13  ████" to Interrogatory No. 2.[7]  Larian's deadline for compliance with the Order was no

14  later than September 7, 2009, but that date has come and gone without compliance by

15  Larian and without any stay sought or obtained by him.

16          Larian Objects to the Discovery Master's Order.  While Larian now objects

17  to the Discovery Master's Order compelling his responses, he has abandoned several

18  objections raised before the Discovery Master.  For example, in opposing Mattel's

19  Motion to Compel, Larian argued that both Interrogatories were vague, ambiguous,

20

21

22

23

---

24  [4]   Mattel Inc.'s Notice of Motion and Motion to Compel Responses to Mattel, Inc's
25  First Set of Interrogatories (Phase 2) to Isaac Larian, dated June 19, 2009, Proctor
    Decl., Exh. 3.
26  [5]   Discovery Master Order No. 46, dated August 14, 2009 ("Order No. 46"), Proctor
    Decl., Exh. 4.
27  [6]   Id., at 39.
28  [7]   Id.

-4-

1  burdensome, and compound.[8]  The Discovery Master ▮▮▮▮▮▮▮▮▮▮▮▮

2  ▮▮▮▮▮▮▮▮,[9] and Larian does not meaningfully pursue them here.  Notably, the

3  Discovery Master found that as to both Interrogatories, ▮▮▮▮▮▮▮▮

4  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

5  ▮▮▮▮▮.[10]  Having abandoned those objections, and in any event having failed to

6  prove them, Larian raises two objections here – relevance and overbreadth – both of

7  which the Discovery Master discussed at length and properly rejected.[11]

8  **Argument**

9  **I.    LARIAN'S MOTION FAILS BECAUSE HE DOES NOT EVEN ARGUE**

10  **THAT THE DISCOVERY MASTER'S ORDER IS CLEARLY**

11  **ERRONEOUS OR CONTRARY TO LAW**

12  The Discovery Master's rulings may only be overruled if they are "clearly

13  erroneous or []contrary to law." Fed. R. Civ. Proc. 72(a).  Although Larian disagrees

14  with the Discovery Master's finding that the Interrogatories seek information

15  reasonably calculated to lead to the discovery of admissible evidence, nowhere does

16  Larian's motion assert, let alone demonstrate, that the Discovery Master's Order was

17  clearly erroneous or contrary to law.

18  Larian's failure to make this showing alone dooms his motion. See Grimes

19  v. City and County of San Francisco, 951 F.2d 236, 241 (9th Cir. 1991) ("A non-

20  dispositive order entered by a magistrate must be deferred to unless it is 'clearly

21  erroneous or contrary to law.'); Henderson v. Frank, 2006 WL 3377567, at *1 (W.D.

22  Wis. Aug. 6, 2006) (declining to overrule magistrate's discovery order because

23

24

---

25  [8]  Isaac Larian's Opposition to Mattel, Inc.'s Motion to Compel Responses to First Set of Interrogatories (Phase 2), dated June 26, 2009, at 15-16, 21-22, Proctor Decl.,

26  Exh. 5.

27  [9]  Order No. 46, at 31-33, 36-40, Proctor Decl., Exh. 4.
[10]  Id., at 33, 39.

28  [11]  Id., at 28-32, 35-39.

1 "[n]othing in plaintiff's motion for reconsideration indicates that [the magistrate's
2 ruling] was clearly erroneous or contrary to law."). Indeed, this Court has previously
3 held that it is insufficient that the Court may disagree with the Discovery Master's
4 Order. Bryant v. Mattel, Inc., 2007 WL 5430885, at *2 (C.D. Cal. July 2, 2007) ("This
5 Court . . . may very well have weighed the evidence differently and reached a contrary
6 result. However, this Court is bound by the standard of review, and MGA's motion
7 falls far short of convincing the Court that the Discovery Master's order is contrary to
8 law."); see also Grimes, 951 F.2d at 241 ("The reviewing court may not simply
9 substitute its judgment for that of the deciding court.").

10        Larian's complete failure to address the proper standard, much less meet it,
11 alone mandates denial of his Motion.[12]

12 **II.    THE DISCOVERY MASTER'S ORDER SHOULD BE UPHELD**

13        Under any standard, the Discovery Master's Order was correct, and it
14 certainly was neither clearly erroneous nor contrary to law.

15     **A.    The Interrogatories Seek Clearly Relevant Information**

16        Larian erroneously claims that the Discovery Master "left unanswered the
17 question of how this information is relevant."[13] In fact, Order No. 46 spends over five
18 pages specifically discussing the relevance of the information sought by both
19

20 _____

21 [12] Any effort by Larian to belatedly argue on reply that he has met the required
standard for his motion is unavailing and cannot serve to correct this fatal defect. See
22 Ghotra v. Holder, 324 Fed. Appx. 609, 610 (9th Cir. 2009) ("Issues raised for the first
time in the reply brief are waived.") (quoting Bazuaye v. I.N.S., 79 F.3d 118, 120 (9th
23 Cir. 1996) (per curiam)); Hamilton v. Willms, 2007 WL 2558615, at *11 (E.D. Cal.
24 Sept. 4, 2007) ("Parties are required to raise all of their arguments in their opening brief
to prevent 'sandbagging' of other non-moving party and to provide opposing counsel
25 the chance to respond."). This Court previously noted the impropriety of such attempts
26 by a moving party to address its burden of proof for the first time in a reply brief. See
Order Denying Motion to Dismiss, dated June 27, 2007, at 30 n.7 (citing In re Intuit
27 Privacy Litig., 138 F. Supp. 2d 1272, 1275 n.3 (C.D. Cal. 2001)), Proctor Decl., Exh. 6.
28 [13] Motion, at 11.

1 | interrogatories.[14]  The Discovery Master ███████████████████████

2 | █████████████████████████████, and ultimately overruled Larian's relevance

3 | objections in their entirety.[15]

4 |     Specifically, the Discovery Master observed that "███████████

5 | ████████████████████████████████████████████████████████████

6 | ████████████████████████████████████████████████████████████

7 | ██████."   In overruling Larian's relevance objection to Interrogatory No. 1, the

8 | Discovery Master cited numerous paragraphs of the TAAC[16] to which responsive

9 | information would be relevant.  These paragraphs include allegations that "████████

10 | ████████████████████████████████████████████████████████████

11 | ████████████████████████"; that "████████████████████████████████

12 | ████████████████████████████████████████████████████████████

13 | ███████████████████████████████████████████████████████"; that "█████

14 | ████████████████████████████████████████████████████████████

15 | ████████████████████████████████████████████████████████████

16 | ████████████████████████████████████████████████████████████

17 | ████████████████████████████████████████████████████████████

18 | ████████████████████████████████████████████████████████████

19 | ██████████████████."  In light of these allegations, the Discovery Master concluded that

20 | because "████████████████████████████████████████████████████

21 | ████████████████████████████████████████████████████████████

22 | ███████████████████████████████████████████████████████,"[17]

23 |

24 |

25 | _____

26 | [14]   Order No. 46, at 28-31, 35-36, Proctor Decl., Exh. 4.

27 | [15]   Id.
  | [16]   Id., at 29-30 (citing TAAC ¶¶ 17, 19, 121, 136, 138, and 149-50).

28 | [17]   Id., at 31.

1        The Discovery Master likewise found that Interrogatory No. 2 seeks

2  information "████████████████████████,"[18] including in

3  particular to claims alleged in paragraphs 17, 19, 120, 121, 136, 138, 145, 149, and 150

4  of Mattel's TAAC.[19] These paragraphs allege, among other things, "████████

5  ████████████████████████████████████████

6  ████████████████████████████████████████

7  ████████████████████████████"[20]

8        As to Interrogatory No. 2, the Discovery Master further ruled that because

9  Larian did not challenge and in fact "████████████████████

10  ████████████████████████████," Larian conceded

11  relevance and any relevance objection to Interrogatory No. 2 was waived. Order, at 35.

12  Larian cannot object here based on an argument not made before the Discovery Master.

13  See, e.g., Order dated April 14, 2008 (refusing to consider "new theories" presented in

14  objecting to a Discovery Master Order);[21] Estate of Gonzales v. Hickman, 2007 WL

15  3231956, at *5, n.15 (April 18, 2007) (noting the usual rule that the district court is

16  limited to consideration of the "record before the magistrate judge").

17        There can be no question that, when viewed through the liberal standards

18  for discovery relevance, which promote the search for the truth, the Discovery Master's

19  ruling that the Interrogatories seek relevant information is correct. See Malautea v.

20  Suzuki Motor Co., Ltd., 987 F.2d 1546 (11th Cir. 1993); Wrangen v. Pennsylvania

21  Lumbermans Mut. Ins. Co., 593 F. Supp. 2d 1273, 1278 (S.D. Fla. 2008) ("it is well

22  established that courts must employ a liberal discovery standard in keeping with the

23  spirit and purpose of the discovery rules"); Fahrenkrog v. SmithKline Beecham Corp.,

24

---

25  [18] Order No. 46, at 35-36, Proctor Decl., Exh. 4.

26  [19] Id., at 35-36, Proctor Decl., Exh. 4; TAAC, ¶¶ 17, 19, 120, 121, 136, 138, 145,

27  149, and 150, Proctor Decl., Exh. 1.
    [20] Order No. 46, at 35, Proctor Decl., Exh. 4.

28  [21] Proctor Decl., Exh. 7.

1   2007 WL 389492, at *1 (D. Colo. Feb. 1, 2007) ("[d]iscovery is intended to be a truth-
2   finding process"); Goff v. Kroger Co., 121 F.R.D. 61, 62 (S.D. Ohio 1988) ("This
3   Court's paramount purpose is to determine the truth, and the broad rules of discovery
4   are essential tools to facilitate that truth-finding process"); In re Certain Asbestos Cases,
5   112 F.R.D. 427, 432 n.8 (N.D. Tex. 1986) ("[t]he purpose of discovery is to ascertain
6   the truth").

7           The scope of relevant discovery in a RICO case is especially broad and
8   extends beyond the particulars alleged in the TAAC. Discovery relevance with respect
9   to RICO claims "encompass[es] any matter that bears on, or that reasonably could lead
10  to other matter that could bear on, any issue that is or may be in the case." Eastman
11  Kodak Co. v. Camarata, 238 F.R.D. 372, 374 (W.D.N.Y. 2006) (quoting Oppenheimer
12  Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)). Discovery in RICO cases thus
13  includes all matters related to the alleged pattern of criminal activity, including pattern
14  evidence, as well as unpleaded predicate acts and the identities and connections among
15  the participants in the enterprise (of which Mattel has alleged three separate ones in the
16  TAAC). See England Data Servs., Inc. v. Becher, 829 F.2d 286, 291-92 (1st Cir. 1987)
17  (holding that lower court abused its discretion in denying request for further discovery
18  as to specific predicate acts when plaintiff had "provided an outline of the general
19  scheme to defraud and established an inference that the mails or wires was used to
20  transact this scheme"); see also Sebago, Inc. v. Beazer East, Inc., 18 F. Supp. 2d 70, 80
21  (D. Mass. 1998) (acknowledging that further discovery "may provide additional
22  instances" of alleged RICO violations, therefore it is relevant to establishing predicate
23  acts, relatedness and continuity).

24          Ignoring all this, Larian argues here – for the first time – that the
25  Interrogatories are not relevant because "

26

27

28

1  ████████████."[22]  As the above passages in the TAAC demonstrate, and as the Court

2  has previously found,[23] the TAAC and the discovery to which Mattel is entitled sweep

3  well beyond money wrongfully obtained by MGA and Larian.  Larian's *ipse dixit*

4  approach to Mattel's allegations and to the broad scope of relevant discovery into the

5  RICO enterprises does not change the reality of those allegations.  The interrogatories

6  are indisputably relevant to the TAAC's allegations that ████████████

7  ████████████████████████████████████████████

8  ████████████████████████████████████████████

9  ████████████████████████████████████████████

10  ████████████████.

11          They are also relevant, as the Court has observed, to the financial

12  relationships among Larian and his co-conspirators,[24] since the information sought will

13  assist in showing Larian's control and relationship to other enterprise members.  The

14  interrogatories seek facts that are relevant to Larian's net worth as well.  Larian does not

15  dispute that information concerning his financial holdings is plainly relevant to net

16  worth, and the Court has previously held that net worth is discoverable at this stage.[25]

---

[22]  Motion, at 11. (emphasis in original). Similarly, Larian baldly asserts that "the issue of what [the trusts] own is not relevant." Motion, at 16.  Of course it is.  In addition to the allegations discussed above, ████████████████.

[23]  See July 9, 2009 Omnibus Order, at 5, Proctor Decl., Exh. 8.

[24]  Id. ("[T]he TAAC . . . significantly heightens the relevancy of the issue of how the MGA parties and the parties represented by Bingham may be related . . . .")

[25]  See Order, dated July 2, 2007, at 5, Proctor Decl., Exh. 9; Discovery Master Order No. 3, dated March 10, 2009, at 19-20, 26-27, Proctor Decl., Exh. 10.  Indeed, courts routinely require multiple years of financial information as part of net worth discovery. See Southern Cal. Housing Rights Ctr. v. Krug, 2006 WL 4122148 (C.D. Cal. Sept. 5, 2006) (ordering production of financial documents - including all properties owned in whole or part, profit and loss statements, financial statements and balance sheets - related to defendants' net worth and current assets going back three years).

1  Instead, again ignoring reality, Larian argues without evidentiary support that he should
2  not have to respond because Mattel already has information concerning "net worth,
3  financial condition, and ability to pay." Motion, at 7. As Larian has not produced any
4  net worth information in Phase 2, presumably this is a reference to Larian's Phase 1
5  production. But as the Court will recall, during the Phase 1 trial, Larian disavowed the
6  accuracy of even the limited financial information produced to Mattel relevant to net
7  worth up to that time, arguing in part that the information he had produced was
8  inaccurate.[26] Furthermore, it is both unproven by Larian and simply incorrect that
9  Mattel had received Larian's financial information since trial. Mattel has received
10  virtually no financial information since the Phase 1 trial, during which time Larian has
11  engaged in several of the fraudulent transactions alleged in the TAAC and about which
12  Mattel's interrogatories seek information.[27]

13      The Discovery Master's findings that both Interrogatories are directly
14  relevant to its claims, and that Larian separately had waived any relevance argument as
15  to Interrogatory No. 2, should be upheld.

16

17  [26] See August 7, 2008 Trial Tr. at 6278:9-6280:3, Proctor Decl., Exh. 15 (Q: "What
18  was given to Mattel in response to a request for documents concerning your net worth
    in January of 2008 was this document, correct, which listed MGA's value – your
19  percentage as $1.6 billion and your net assets as $1.9 billion? That's what you gave us,
20  right?" A: "Yes. And I said that figure is a mistake."); see also August 15, 2008 Trial
    Tr. at 7760:1-17, Proctor Decl., Exh. 11; December 30, 2008 Hearing Tr. at 15:17-23,
21  Proctor Decl., Exh. 12.

22  [27] Larian also suggests here that money he earned in 2001 from other sources
    cannot be relevant. Motion, at 11. First, this is another unproven hypothetical, and
23  there is nothing to suggest Larian would not have earned that money as a result of
24  Bratz. To the contrary, Larian conceded at trial that the bulk of his wealth was based
    on MGA, the value of which is in turn largely based on Bratz. See August 7, 2008
25  Trial Tr. at 6247:2-23 (Q: "So the greatest percentage of your net worth is tied to the
26  value of MGA; correct? A: Correct."). More fundamentally, as discussed, the *source*
    of the funds is not the sole issue; Mattel is entitled to discovery concerning Larian's
27  fraudulent transactions, regardless of where he originally earned the specific funds he
28  and his co-conspirators used to defraud Mattel.

**B.**   **The Discovery Master's Ruling that the Interrogatories Are Not Overbroad Should Be Upheld**

The Discovery Master correctly ruled that Interrogatory No. 1 was not overbroad because, in light of the TAAC's allegations of █████████████, Interrogatory No. 1 permissibly seeks information concerning "███████████████████████████████████████████████████████████████████."[28]   Although Larian argued then, as now, that Mattel is only entitled to discovery related to funds emanating from MGA,[29] the Discovery Master rejected that argument entirely, by reference to the actual claims in the TAAC.[30]   This ruling is unassailable, and certainly is not contrary to law or clearly erroneous.   Indeed, many of the TAAC's claims allege that ████████████████████████████████████████████████████████████████████████████████.   As Mattel noted at the hearing before the Discovery Master, these Interrogatories relate to "assets from these trust [that] have been used for MGA's benefit," and are part and parcel of the alleged RICO conspiracy involving Larian, his family members, MGA, and trusts that have engaged in the alleged fraudulent transfers.[31]   And in any event, Mattel needs this information in order to piece together the entire picture of the flow of funds, such as by linking the source of relevant funds to Larian.   That Mattel will need other information to complete the picture is not reason to deny discovery into a part of the picture.

---

[28]   Order No. 46, at 31. (citing TAAC ¶¶ 19, 120 ("███████████████████████████████████████████████████████████████████████████████████████████████████████████████")).

[29]   Order No. 46, at 31, Proctor Decl., Exh. 4; Motion, at 13.

[30]   Id.

[31]   Hearing Tr., dated August 6, 2009, at 61:14-62:22, Proctor Decl., Exh. 13.

-12-

In finding the scope of Interrogatory No. 1 well within these allegations, the Discovery Master stated that discovery requests must be interpreted with "███████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████."[32]  In an imaginative attempt to manufacture overbreadth, Larian asserts here that Interrogatory No. 1 will impermissibly require Larian to identify all of his $10 REIT holdings.[33]  But Larian provides no evidentiary basis for his rhetoric, and common sense tells us that there are no such $10 investments involved here.  In any event, as Larian has never denied, he and his financial advisers have readily available a complete listing of his ownership interests and financial holdings.

The Discovery Master similarly held that Interrogatory No. 2 was proper in light of the limitation on the scope of the definitions.[34]  Specifically, the Discovery Master ruled that for purposes of Interrogatory No. 2, ██████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████."  While Larian argues that this definition "reaches trusts that have no connection to Mr. Larian,"[36] it is expressly limited on its face to trusts in which he or an immediate family member have a direct interest.  The Discovery Master correctly held

---

[32]  Order No. 46, at 33, Proctor Decl., Exh. 4.
[33]  Motion, at 15.  Before the Discovery Master, Larian argued that Interrogatory No. 1 was also overbroad because it called for holdings of public stock in excess of $1,000, an argument the Discovery Master rightly rejected and Larian does not raise here.  Order No. 46, at 32, Proctor Decl., Exh. 4.
[34]  Id., at 39.
[35]  These are: The Isaac and Angela Larian Trust, Isaac Larian Grantor Annuity Trust, Angela Larian Grantor Annuity Trust, and the Larian Family Trust.  See id., at 36.
[36]  Motion, at 16.

1  that Mattel's TAAC directly alleges ███████████████████████

2  ███████████████████████████; Interrogatory No. 2, certainly as

3  construed by the Discovery Master, is properly tailored to those allegations.[37]

4       Several times in his Motion, Larian incorrectly states that the

5  Interrogatories seek information over a "nine year" period. See, e.g., Motion at 2, 3,

6  and 14. This is presumably a repeated typo: Mattel's interrogatories seek information

7  from 2005 to the present, a four-year period. As to this temporal scope, the Discovery

8  Master ruled that the TAAC alleges a RICO conspiracy ████████████████

9  ████; and because Mattel alleges the conspiracy began prior to that time, the Discovery

10 Master ruled that Mattel was reasonably entitled to discover transactions beginning in

11 2005.[38]  Indeed, Mattel's RICO allegations make clear that the criminal enterprises

12 began even before that.[39]  Larian's overbreadth complaints about the temporal scope of

13 the financial information he must produce are not only contradicted by the TAAC but

14 are also puzzling, given that ████████████████████████████

15 ███████████████████████████████[40]

16

17

---

18  [37]  Although Larian argues that Interrogatory No. 2 requires "attorneys" for Larian
19  would be required to disclose their own trusts and holdings, Mattel has made clear, in
    both its briefing and at the hearing before the Discovery Master, that it intended the
20  definition to apply only to Larian's trusts, not those of his attorneys. See Mattel's
    Reply in Support of Motion to Compel Responses to Mattel, Inc's First Set of
21  Interrogatories (Phase 2) to Isaac Larian, at 11-12, Proctor Decl., Exh. 17; August 6,
22  2009 Hearing at 57-59, Proctor Decl., Exh. 13.
     [38]  Order No. 46, at 32 (emphasis added), Proctor Decl., Exh. 4.
23   [39]  TAAC, at ¶¶ 136, 149, Proctor Decl., Exh. 1.  Larian also argues that because
24  IGWT was formed in 2008, no financial information concerning Larian should be
    discoverable prior to that time. Motion, at 13.  This cherry-picking by Larian simply
25  ignores Mattel's allegations, which also describe ████████████████████
26  █████████████████████████████████████. See, e.g.,
    id., at ¶¶ 134, 135, 141.
27   [40]  Discovery Master Order No. 56, dated Sept. 3, 2009, at 45-46, Proctor Decl.,
28  Exh. 14.

1    The Discovery Master carefully considered the scope of the Interrogatories
2  in light of the TAAC, and narrowed Interrogatory No. 2 to ensure it was properly
3  tailored to Mattel's allegations.  Larian has not attempted to show that the Discovery
4  Master's rulings here were clearly erroneous or contrary to law, nor could he.  These
5  rulings therefore must be upheld.

6  **C.    The Discovery Master's Finding that Larian Failed To Prove His**
7  **Burdensome Objection as to Both Interrogatories Should Be Upheld**

8    Lastly, Larian intimates, without directly arguing, that the Interrogatories
9  would also be unduly burdensome.[41]  The Discovery Master expressly rejected this
10  argument because Larian completely failed to substantiate it.[42]  Here, as below, Larian
11  offers no evidence whatsoever of burden.  To the extent Larian has raised this objection
12  here, it must therefore be overruled.  See July 9, 2009 Order at 4 (After the initial
13  relevancy burden is met, "the party opposing discovery has the burden of showing that
14  the discovery should be prohibited, and the burden of clarifying, explaining or
15  supporting its objections.")[43]; Jackson v. Montgomery Ward & Co., 173 F.R.D. 524,
16  528-29 (D. Nev. 1997) ("[T]he party claiming that a discovery request is unduly
17  burdensome must allege specific facts which indicate the nature and extent of the
18  burden, usually by affidavit or other reliable evidence.").

19
20
21
22
23
24
25
26

[41]  See Motion, at 1:23-25.
27  [42]  Order No. 46, at 33, 39, Proctor Decl., Exh. 4.
28  [43]  Proctor Decl., Exh. 8.

## Conclusion

For the foregoing reasons, Mattel respectfully requests that the Court deny Larian's Motion in its entirety, and order Larian to fully and completely respond to Mattel's First Set of Interrogatories (Phase 2), with sanctions for any further failure to comply.

DATED:  September 21, 2009     QUINN EMANUEL URQUHART OLIVER & HEDGES. LLP

By _____
   Michael T. Zeller
   Attorneys for Mattel. Inc.