QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  michaelzeller@quinnemanuel.com
  Jon D. Corey (Bar No. 185066)
  joncorey@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Mattel. Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with<br>Case No. CV 04-09039<br>Case No. CV 05-02727 |
| vs. | |
| MATTEL, INC., a Delaware corporation, | Hon. Stephen G. Larson |
| Defendant. | DECLARATION OF B. DYLAN PROCTOR IN SUPPORT OF MATTEL, INC.'S OPPOSITION TO ISAAC LARIAN'S OBJECTIONS TO DISCOVERY MASTER ORDER NO. 46 REGARDING RESPONSES TO PHASE 2 INTERROGATORIES |
| AND CONSOLIDATED ACTIONS | |
| **PUBLIC REDACTED VERSION** | Hearing Date:  October 5, 2009<br>Time:          10:00 a.m.<br>Place:          Courtroom 1 |
| | **Phase 2**<br>Discovery Cut-off:    Dec. 11, 2009<br>Pre-trial Conference:  Mar. 1, 2010<br>Trial Date:              Mar. 23. 2010 |

I, B. Dylan Proctor, declare as follows:

1.      I am a member of the bar of the State of California and a partner at Quinn Emanuel Urquhart Oliver & Hedges, LLP, attorneys for Mattel, Inc. ("Mattel").  I make this declaration of personal, firsthand knowledge and, if called and sworn as a witness, I could and would testify competently thereto.

2.      Attached hereto as Exhibit 1 is a true and correct copy of excerpts from Mattel's Third Amended Answer and Counterclaims, filed May 22, 2009.

3.      Attached hereto as Exhibit 2 is a true and correct copy of Isaac Larian's Response to Mattel, Inc's First Set of Interrogatories (Phase 2), served April 3, 2009.

4.      Attached hereto as Exhibit 3 is a true and correct copy of Mattel, Inc's Notice of Motion and Motion to Compel Responses to Mattel, Inc's First Set of Interrogatories (Phase 2) to Isaac Larian, dated June 19, 2009.

5.      Attached hereto as Exhibit 4 is a true and correct copy of Discovery Master Order No. 46, dated August 14, 2009.

6.      Attached hereto as Exhibit 5 is a true and correct copy of Isaac Larian's Opposition to Mattel, Inc.'s Motion to Compel Responses to First Set of Interrogatories (Phase 2) to Isaac Larian, dated June 26, 2009.

7.      Attached hereto as Exhibit 6 is a true and correct copy of the Court's Order Denying Motion to Dismiss, dated June 27, 2007.

8.      Attached hereto as Exhibit 7 is a true and correct copy of the Court's Order dated April 14, 2008.

9.      Attached hereto as Exhibit 8 is a true and correct copy of the Court's Order dated July 9, 2009.

10.     Attached hereto as Exhibit 9 is a true and correct copy of the Court's Order, dated July 2, 2007.

1        11.    Attached hereto as Exhibit 10 is a true and correct copy of

2    Discovery Master Order No. 3, dated March 10, 2009.

3        12.    Attached hereto as Exhibit 11 is a true and correct copy of

4    relevant excerpts from the court reporter's official transcript of the trial in this

5    matter, dated August 15, 2008.

6        13.    Attached hereto as Exhibit 12 is a true and correct copy of

7    relevant excerpts from the court reporter's official transcript of the December 30,

8    2008 hearing in this matter.

9        14.    Attached hereto as Exhibit 13 is a true and correct copy of

10   relevant excerpts from the court reporter's official transcript of the August 6, 2009

11   hearing in this matter.

12       15.    Attached hereto as Exhibit 14 is a true and correct copy of

13   Discovery Master Order No. 56, dated Sept. 3, 2009.

14       16.    Attached hereto as Exhibit 15 is a true and correct copy of

15   relevant excerpts from the court reporter's official transcript , dated Sept. 3, 2009.

16       17.    Attached hereto as Exhibit 16 is a true and correct copy of

17   relevant excerpts from the court reporter's official transcript , dated August 7, 2009.

18   //

19   //

20   //

21   //

22   //

23   //

24   //

25   //

26   //

27   //

28   //

-2-

PROCTOR DECLARATION

1        18.    Attached hereto as Exhibit 17 is a true and correct copy of

2  Mattel's Reply in Support of Motion to Compel Responses to Mattel, Inc's First Set

3  of Interrogatories (Phase 2) to Isaac Larian, dated July 1, 2009.

4

5        I declare under penalty of perjury under the laws of the United States of

6  America that the foregoing is true and correct.

7        Executed on September 21, 2009, at Los Angeles, California.

8

9

10                      B. Dylan Proctor

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07975/3112722.1

-3-

PROCTOR DECLARATION

# EXHIBIT 1

EXHIBIT FILED UNDER SEAL

PURSUANT TO PROTECTIVE ORDER

# EXHIBIT 2

1   PATRICIA L. GLASER (Bar No. 055668)
    pglaser@glaserweil.com
2   GLASER WEIL FINK JACOBS & SHAPIRO
    10250 Constellation Blvd., 19th Floor
3   Los Angeles, California 90067
    Telephone: (310) 553-3000
4   Facsimile: (310) 557-9815

5   RUSSELL J. FRACKMAN (Bar No. 49087)
    rjf@msk.com
6   PATRICIA H. BENSON (Bar No. 60565)
    phb@msk.com
7   MITCHELL SILBERBERG & KNUPP LLP
    11377 West Olympic Boulevard
8   Los Angeles, California 90064-1683
    Telephone: (310) 312-2000
9   Facsimile: (310) 312-3100

10  Attorneys for Defendants
    MGA Entertainment, Inc., MGA Entertainment
11  HK, Ltd., and Isaac Larian

12

13              UNITED STATES DISTRICT COURT

14              CENTRAL DISTRICT OF CALIFORNIA

15                    EASTERN DIVISION

16  CARTER BRYANT, an individual,          CASE NO.  CV 04-9049 SGL (RNBx)

17              Plaintiff,                 Consolidated with
                                           Case No.  CV 04-09059
18        v.                               Case No.  CV 05-02727

19  MATTEL, INC., a Delaware               ISAAC LARIAN'S RESPONSE TO
    corporation,                           MATTEL, INC.'S FIRST SET OF
20                                         INTERROGATORIES (PHASE
              Defendant.                   TWO)
21
22  AND CONSOLIDATED CASES

23

24

25

26

27

28

Mitchell
Silberberg &
Knupp LLP
155640.3

                        4|3

EXHIBIT    2
PAGE    16

1   PROPOUNDING PARTY:   . MATTEL, INC.

2   RESPONDING PARTY:      ISAAC LARIAN

3   SET NO.:                        ONE (Phase Two)

4          Pursuant to Federal Rule of Civil Procedure 33, Isaac Larian ("Larian")

5   hereby responds to Mattel, Inc.'s ("Mattel") First Set of Interrogatories (Phase

6   Two) (the "Interrogatories") as follows:

7   ## PRELIMINARY STATEMENT AND GENERAL OBJECTIONS

8          1.     These responses are made solely for the purposes of this action. Each

9   response is subject to and without waiver of all objections as to competence,

10  relevance, materiality, propriety, privilege, and admissibility, as well as to any and

11  all other objections on any grounds that would permit or require the exclusion of

12  any statement contained herein or any portion thereof if any of said Interrogatories

13  were asked of, or any statements contained herein were made by, a witness present

14  and testifying in court, all of which objections and grounds are hereby expressly

15  reserved and may be interposed at the time of any deposition or at or before any

16  hearing or trial in this matter, or any other matter.

17         2.     No incidental or implied admissions are intended by the responses

18  herein. The fact that Larian responds or objects to any Interrogatory or part thereof

19  is not intended and shall not be construed as an admission that Larian accepts or

20  admits the existence of any facts set forth in or assumed by such Interrogatory, or

21  that such response or objection constitutes admissible evidence. The fact that

22  Larian responds to all, or part, of any Interrogatory is not intended and shall not be

23  construed as a waiver by Larian of all, or any part, of any objection to any

24  Interrogatory made herein.

25         3.     Larian objects generally to the Interrogatories to the extent that they

26  seek to impose burdens or obligations beyond or inconsistent with those required

27  by the Federal Rules of Civil Procedure. In responding to these Interrogatories,

28  Larian has not and will not comply with any instructions or definitions that seek to

Mitchell
Silberberg &
Knupp LLP
21556403

2

EXHIBIT ___2___

PAGE ___17___

1    impose requirements in addition to those imposed by the Federal Rules of Civil

2    Procedure and any applicable local rule.

3        4.    Larian objects to each Interrogatory to the extent it seeks information

4    that is not relevant to any party's claim or defense or the subject matter of the

5    instant suit, nor reasonably calculated to lead to the discovery of admissible

6    evidence. As the Court has made clear, financial discovery must be related to

7    Phase Two claims.  See March 10, 2009 Order No. 3.

8        5.    Larian objects to each Interrogatory to the extent it seeks information

9    (such as the state of incorporation and agent for service of process of publicly

10   traded companies) that is equally available to Mattel.

11       6.    Larian objects to each Interrogatory to the extent it calls for

12   information not available to him and not within his knowledge.

13       7.    Pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, Larian

14   objects to providing responses to Interrogatories that can be derived from

15   documents that have or will be produced (when requested in compliance with Rule

16   26) and where the burden to derive such information is substantially the same for

17   Mattel as for Larian.

18       8.    Larian objects to the definitions and instructions to the extent such

19   definitions and instructions purport to enlarge, expand, or alter in any way the plain

20   meaning and scope of any specific term or specific Interrogatories on the ground

21   that such enlargement, expansion, or alteration renders such term or Interrogatory

22   vague, ambiguous, unintelligible, overly broad, unduly burdensome, or uncertain.

23       9.    In addition to the general objections and limitations set forth above,

24   each of which is hereby incorporated into each individual response below, Larian

25   specifically objects to the following defined terms in these Interrogatories:

26       a.    "LARIAN" is vague, ambiguous, unintelligible, overly broad,

27   unduly burdensome, oppressive, and harassing given the inclusion of Angela

28   Larian, who is not a party to this or any related action. Without limitation, each

Mitchell
Silberberg &
Knupp LLP
2155640.3

3



EXHIBIT ___2___

PAGE ___18___

1   Interrogatory that utilizes this defined term violates Angela Larian's right to
2   privacy under the constitutional, statutory, and/or decisional law of California, the
3   United States, and/or any other applicable jurisdiction, and seeks information that
4   is not relevant to any party's claim or defense, or to the subject matter involved in
5   this action, and is not reasonably calculated to lead to the discovery of admissible
6   evidence.

7            b.      "LARIAN TRUST" is vague, ambiguous, unintelligible, overly
8   broad, unduly burdensome, oppressive, harassing, and uncertain.  Without
9   limitation, each Interrogatory that utilizes this defined term far exceeds the bounds
10  of permissible discovery, in that it violates the privacy rights under the
11  constitutional, statutory, and/or decisional law of California, the United States,
12  and/or any other applicable jurisdiction, of Larian, Angela Larian, seemingly
13  limitless "blood or marriage" relatives of Larian, trust beneficiaries, and other third
14  parties having nothing to do with this or any related action.  It is also hopelessly
15  confusing.  For instance, the definition purports to include any person subject to
16  the "control" of any trust of which one of Larian's relatives by marriage was a
17  "vendor."  Each Interrogatory that utilizes this defined term also seeks information
18  that is not relevant to any party's claim or defense, or to the subject matter
19  involved in this action, and is not reasonably calculated to lead to the discovery of
20  admissible evidence.

21           c.      "IDENTIFY" (or "IDENTITY" [sic]) is vague, ambiguous,
22  unintelligible, overly broad, unduly burdensome, oppressive, and uncertain.  Each
23  Interrogatory that uses this defined term also may contribute to a future violation of
24  the limitation on the number of interrogatories that may be propounded under Rule
25  33 of the Federal Rules of Civil Procedure, because the definition creates
26  numerous subparts seeking discrete information.  For instance, the term is
27  compound and uncertain because it is used in connection with the subsequently
28  defined term "ENTITY," but "the type of ownership interest," "percentage

Mitchell
Silberberg &
Knupp LLP

2155640.3

4



EXHIBIT ___2___
PAGE ___19___

1  ownership interest," and "title or position that YOU have had with each such

2  ENTITY" are not typically associated with the plain meaning of the verb

3  "identify," and as such seek discrete information which should have been sought in

4  separate interrogatories.

5        d.    "YOU" and "YOUR" are capitalized but not defined.

6        e.    "OWNERSHIP INTEREST" as vague, ambiguous,

7  unintelligible, overly broad, unduly burdensome, oppressive, and uncertain.

8  Without limitation, the defined terms purportedly cover an interest or power that a

9  person "may possess," "directly or *indirectly*," "from any contract, arrangement,

10  understanding, relationship, *or otherwise*."  As phrased, the scope of this purported

11  definition is as limitless as it is amorphous.

12      10.   In addition to the general objections and limitations set forth above,

13  each of which is hereby incorporated into each response below, Larian objects to

14  the use of the terms "any," "all," "and," and "or" as defined in these

15  Interrogatories, since the purported definitions of those terms contradict their plain

16  meaning, rendering the Interrogatories in which they are utilized vague and

17  ambiguous.

18      11.   Larian hereby incorporates his objections set forth above into each of

19  the following responses.

20                 **RESPONSE TO INTERROGATORIES**

21  **INTERROGATORY NO. 1**

22      IDENTIFY each and every ENTITY in which LARIAN has held, directly or

23  indirectly, any OWNERSHIP INTEREST at any time since January 1, 2005.  For

24  purpose of this Interrogatory, transactions involving the purchase or acquisition of

25  publicly traded stock in an amount of $1,000 or less may be excluded.

26  **RESPONSE TO INTERROGATORY NO. 1**

27      In addition to the general objections and limitations set forth above, each of

28  which is hereby incorporated in this response, Larian objects to this Interrogatory

EXHIBIT ___2___

PAGE ___70___

1   on the following grounds:  (1) it seeks information that is not relevant to any

2   party's claim or defense, or to the subject matter involved in this action, and it is

3   not reasonably calculated to lead to the discovery of admissible evidence; (2) it

4   seeks private, confidential, proprietary, or otherwise sensitive information,

5   protected by the constitutional, statutory, or decisional law of California, the

6   United States, and/or any other applicable jurisdiction regarding Larian; (3) it

7   seeks private, confidential, proprietary, or otherwise sensitive information,

8   protected by the constitutional, statutory, or decisional law of California, the

9   United States, and/or any other applicable jurisdiction, regarding third parties to

10  whom no notice has been given, including, but not limited to, Angela Larian, who

11  is not a party to this or any related action; (4) it is vague, ambiguous, and

12  unintelligible because , among other reasons, it uses the defined terms, including,

13  but not limited to, "IDENTIFY," which (i) incorporates the subsequently defined

14  term "ENTITY," and "the type of ownership interest," "percentage ownership

15  interest," and "title or position that YOU have had with each such ENTITY" are

16  not typically associated with the plain meaning of the verb "identify," and (ii)

17  incorporates the term YOU, which is capitalized but undefined, and the plain

18  meaning of which is irreconcilable with the definition of LARIAN, so that it is

19  impossible to ascertain what information is being requested; (5) it is overly broad;

20  (6) it is unduly burdensome, oppressive, and harassing in that, among other things,

21  it purports to require Larian to search for and provide such utterly irrelevant

22  information as every stock market transaction over $1,000 in which he purchased

23  stock in any publicly traded company; and (7) it is impermissibly compound

24  because, among other reasons, the definition of "IDENTIFY" creates numerous

25  subparts seeking discrete information.

26  **INTERROGATORY NO. 2**

27       IDENTIFY each and every ENTITY in which any LARIAN TRUST has

28  held, directly or indirectly, any OWNERSHIP INTEREST at any time since

Mitchell
Silberberg &
Knupp LLP
21556 4 0.3

6



EXHIBIT ___2___

PAGE ___21___

1    January 1, 2005. For purpose of this Interrogatory, transactions involving the

2    purchase or acquisition of publicly traded stock in an amount of $1,000 or less may

3    be excluded.

4    **RESPONSE TO INTERROGATORY NO. 2**

5         In addition to the general objections and limitations set forth above, each of

6    which is hereby incorporated in this response, Larian objects to this Interrogatory

7    on the following grounds: (1) it seeks information that is not relevant to any

8    party's claim or defense, or to the subject matter involved in this action, and it is

9    not reasonably calculated to lead to the discovery of admissible evidence; (2) it

10   seeks private, confidential, proprietary, or otherwise sensitive information,

11   protected by the constitutional, statutory, or decisional law of California, the

12   United States, and/or any other applicable jurisdiction regarding Larian; (3) it

13   seeks private, confidential, proprietary, or otherwise sensitive information,

14   protected by the constitutional, statutory, or decisional law of California, the

15   United States, and/or any other applicable jurisdiction, regarding third parties to

16   whom no notice has been given, including, but not limited to, seemingly limitless

17   "blood or marriage" relatives of Larian, trust beneficiaries, and other third parties

18   having nothing to do with this or any related action; (4) it is vague, ambiguous, and

19   unintelligible because of, among other reasons, it uses the defined terms, including,

20   but not limited to, "IDENTIFY," which (i) incorporates the subsequently defined

21   term "ENTITY," and "the type of ownership interest," "percentage ownership

22   interest," and "title or position that YOU have had with each such ENTITY" are

23   not typically associated with the plain meaning of the verb "identify," (ii)

24   incorporates the term YOU, which is capitalized but undefined, and the plain

25   meaning of which is irreconcilable with the definition of LARIAN TRUST, so that

26   it is impossible to ascertain what information is being requested; (5) it is overly

27   broad; (6) it is unduly burdensome, oppressive, and harassing in that, among other

28   things, it purports to require Larian to produce such utterly irrelevant information

Mitchell
Silberberg &
Knupp LLP
2155640.3

7

EXHIBIT _____

PAGE _____

1  as every stock market transaction over $1,000 for any person under the "control"

2  of any trust of which any blood or marriage relative of Larian is a "vendor;" and

3  (7) it is impermissibly compound because, among other reasons, the definition of

4  "IDENTIFY" creates numerous subparts seeking discrete information.

5

DATED: April 3, 2009                    MITCHELL SILBERBERG & KNUPP LLP

6

7

8                                       By: _____
                                            Daniel M. Hayes (SBN 240250)
9                                           Attorneys for Defendants
                                            MGA Entertainment, Inc., MGA
10                                          Entertainment HK, Ltd., and Isaac Larian

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

!155640.3

8

EXHIBIT  2
PAGE  23

1

## PROOF OF SERVICE

2  STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

3      I am employed in the county of Los Angeles, State of California.  I am over the age of 18
   and not a party to the within action.  My business address is Mitchell Silberberg & Knupp LLP,
4  11377 West Olympic Boulevard, Los Angeles, California 90064-1683, and my business email
   address is @msk.com.

5

6      On April 3, 2009, I served a copy of the foregoing document(s) described as **ISAAC
   LARIAN'S RESPONSE TO MATTEL, INC.'S FIRST SET OF INTERROGATORIES
7  (PHASE TWO)** on the interested parties in this action at their last known address as set forth
   below by taking the action described below:

8                      **SEE ATTACHED SERVICE LIST**

9

10 ☒  **BY MAIL:**  I placed the above-mentioned document(s) in sealed envelope(s) addressed as set
   forth above, and deposited each envelope in the mail at Los Angeles, California.  Each
11     envelope was mailed with postage thereon fully prepaid.

12 ☐  **BY OVERNIGHT MAIL:**  I placed the above-mentioned document(s) in sealed envelope(s)
   designated by the carrier, with delivery fees provided for, and addressed as set forth above, and
13     deposited the above-described document(s) with FedEx in the ordinary course of business, by
   depositing the document(s) in a facility regularly maintained by the carrier or delivering the
14     document(s) to an authorized driver for the carrier.

15 ☐  **BY ELECTRONIC MAIL:**  I served the above-mentioned document electronically at __:__
   __.m. on the parties listed at the email addresses above and, to the best of my knowledge, the
16     transmission was complete and without error in that I did not receive an electronic notification
   to the contrary.

17      I declare under penalty of perjury under the laws of the United States that the above is true
   and correct.

18

19      Executed on April 3, 2009, at Los Angeles, California.

20

21                                          _____
                                              Monica Bowdre

22

23

24

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

184487.1

EXHIBIT ___2___
PAGE ___27___

1

<u>SERVICE LIST</u>

2

3   John Quinn, Esq.
(johnquinn@quinnemanuel.com)
4   Jon D. Corey, Esq.
(joncorey@quinnemanuel.com)
5   Michael T. Zeller, Esq.
(michaeltzeller@quinnemanuel.com)
6   Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543

Patricia L. Glaser, Esq.
(Pglaser@glaserweil.com)
Joel N. Klevens, Esq.
(Jklevens@glaserweil.com)
Glaser, Weil, Fink, Jacobs & Shapiro, LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, CA 90067

7

8   Thomas J. Nolan, Esq.
(tnolan@skadden.com)
9   Raoul D. Kennedy, Esq.
(rkennedy@skadden.com)
10  Jason D. Russell, Esq.
(Jason.russell@skadden.com)
11  Skadden, Arps, Slate, Meagher & Flom LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071-3144

Mark E. Overland, Esq.
Overland Borenstein Scheper & Kim LLP
One Bunker Hill
601 W. 5th Street, 12th Floor
Los Angeles, CA 90071

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

:184487.1

EXHIBIT ____2____
PAGE ____28____

# EXHIBIT 3

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
    John B. Quinn (Bar No. 090378)
2    johnquinn@quinnemanuel.com
    Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
    Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
    865 South Figueroa Street, 10th Floor
5  Los Angeles, California  90017-2543
    Telephone:  (213) 443-3000
6  Facsimile:  (213) 443-3100

7  Attorneys for Plaintiff Mattel, Inc.

8

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11                  EASTERN DIVISION

12  CARTER BRYANT, an          CASE NO. CV 04-9049 SGL (RNBx)
    individual,
13                             Consolidated with Case Nos. CV 04-09059
              Plaintiff,       and CV 05-02727
14
         vs.                   DISCOVERY MATTER
15
    MATTEL, INC., a Delaware   [To Be Heard By Discovery Master Robert
16  corporation,               O'Brien]

17            Defendant.       MATTEL, INC.'S NOTICE OF MOTION
                               AND MOTION TO COMPEL RESPONSES
18  AND CONSOLIDATED           TO MATTEL, INC.'S FIRST SET OF
    ACTIONS                    INTERROGATORIES (PHASE 2) TO
19                             ISAAC LARIAN;

20                             AND MEMORANDUM OF POINTS AND
                               AUTHORITIES
21
                               [Declaration of Michael T. Zeller filed
22                             concurrently herewith]

23                             Date:   TBD
                               Time:   TBD
24                             Place:  TBD

25                             Discovery cut-off: December 11: 2009
                               Pre-trial Conference:  March 1, 2010
26                             Trial Date:  March 23, 2010

27

28

EXHIBIT __3__
PAGE __26__

1   TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2           PLEASE TAKE NOTICE that, at a date and time to be set by

3   Discovery Master Robert O'Brien, Mattel, Inc. ("Mattel") will, and hereby does,

4   move the Court:

5           (1)    to compel Isaac Larian ("Larian") to provide full and complete

6   responses to Mattel's First Set of Interrogatories (Phase 2) (the "Interrogatories");

7   and

8           (2)    to overrule each of Larian's objections to the Interrogatories.

9           This Motion is made pursuant to Federal Rules of Civil Procedure

10   33(b)(5) and 37(a) on the grounds that Mattel's requests seek discoverable

11   information and Larian's objections lack merit.

12           This Motion is based on this Notice of Motion and Motion, the

13   accompanying Memorandum of Points and Authorities, the Declaration of Michael

14   T. Zeller filed concurrently, the records and files of this Court, and all other matters

15   of which the Court may take judicial notice.

16

17                 **Certification of Meet and Confer**

18           The parties met and conferred regarding this Motion on April 21 and

19   April 23, 2009.

20

21

22   DATED: June 19 , 2009          QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

23

24

25                     By/s/ Michael T. Zeller

26                       Michael T. Zeller
                        Attorneys for Mattel, Inc.

27

28

EXHIBIT _3_
PAGE _27_

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................. 1

PRELIMINARY STATEMENT ............................................................................... 1

STATEMENT OF FACTS ...................................................................................... 1

ARGUMENT .......................................................................................................... 3

I.    THE DISCOVERY MASTER SHOULD OVERRULE LARIAN'S
      RELEVANCE OBJECTION. ........................................................................ 3

      A.    The Interrogatories Seek Relevant, Discoverable Information. .............. 3

      B.    Larian's Proposed Limitations to Mattel's Interrogatories Are
            Improper. ............................................................................................... 5

II.   LARIAN'S REMAINING OBJECTIONS ARE WITHOUT MERIT
      AND SHOULD BE OVERRULED ............................................................. 7

      A.    The Interrogatories Are Not Vague and Ambiguous ............................. 8

      B.    The Interrogatories Are Not Overly Broad ........................................... 9

      C.    The Interrogatories Do Not Pose An Undue Burden ............................. 9

      D.    The Interrogatories Are Not Compound .............................................. 11

CONCLUSION ..................................................................................................... 12

EXHIBIT ___3___
PAGE ___28___

**TABLE OF AUTHORITIES**

Page

**Cases**

Chapman v. California Dept. of Educ.,
2002 WL 32854376 (N.D. Cal. February 6, 2002) ................................................ 6

Jackson v. Montgomery Ward & Co., Inc.,
173 F.R.D. 524 (D. Nev. 1997) ............................................................................. 9

King v. Georgia Power Co.,
50 F.R.D. 134 (N.D. Ga. 1970) ........................................................................... 10

Nagele v. Electronic Data Systems Corp.,
193 F.R.D. 94 (W.D.N.Y. 2000) ........................................................................... 9

Pacific Lumber Co. v. National Union Fire Ins. Co. of Pittsburgh,
2005 WL 318811 (N.D. Cal. January 5, 2005) .................................................... 11

Ramirez v. Nicholson,
2007 WL 2990283 (S.D. Cal. 2007) ...................................................................... 7

Seff v. General Outdoor Advertising Co.,
11 F.R.D. 597 (N.D. Ohio 1951) ......................................................................... 10

Swackhammer v. Sprint Corp. PCS,
225 F.R.D. 658 (D. Kan. 2004) ........................................................................... 11

**Statutes**

Cal. Civ. Code § 3294' ............................................................................................. 5

Cal. Civil Code §§ 3439 et seq .............................................................................. 3, 4

Fed. R. Civ. P. 26(b)(1) ........................................................................................... 7

Fed. R. Civ. P. 33(b)(4) ........................................................................................... 9

Fed. R. Civ. P. 33(b)(5) ........................................................................................... 1

Fed. R. Civ. P. 33(d) .............................................................................................. 10

**Miscellaneous**

Federal Practice & Procedure: Federal Rules of Civil Procedure § 2174 ................ 10

EXHIBIT __3__
PAGE __29__

# MEMORANDUM OF POINTS AND AUTHORITIES

## Preliminary Statement

Mattel's First Set of Phase 2 interrogatories to Isaac Larian seek financial information that goes to the core of the issues in Phase 2. In particular, the interrogatories request information relating to Larian's and his trusts' ownership interests in business entities since 2005. Such matters are directly pertinent to net worth issues that the Court has repeatedly held are relevant and discoverable as well as to the fraudulent transfer issues raised by Mattel's Third Amended Answer and Counterclaims that the Court granted Mattel leave to file. Without basis, Larian flatly refuses to provide any information in response. Instead, Larian has offered boilerplate compound objections that have already been repeatedly rejected by the current and former Discovery Masters. Larian's objections should be overruled, and he should be ordered to fully answer Mattel's interrogatories without further delay.

## Statement of Facts

**Mattel's First Set of Interrogatories (Phase 2) to Larian.** Mattel propounded its First Set of Interrogatories (Phase 2) ("Interrogatories") to Larian on March 4, 2009, asking Larian to identify each entity in which Larian or his alter ego trusts have held an ownership interest since January 1, 2005.[1] The Interrogatories ask, verbatim:

INTERROGATORY NO. 1:

IDENTIFY each and every ENTITY in which LARIAN has held, directly or indirectly, any OWNERSHIP INTEREST at any time since January 1, 2005. For purpose of this Interrogatory, transactions involving the purchase or acquisition

---

[1] Mattel, Inc.'s First Set of Interrogatories (Phase 2), dated March 4, 2009, Zeller Dec., Exh. 1.

-1-                Case No. CV 04-9049 SGL (RNBx)
MATTEL INC.'S MOTION TO COMPEL INTERROGATORY RESPONSES

EXHIBIT ___3___
PAGE ___30___

1    of publicly traded stock in an amount of $1,000 or less may be

2    excluded.

3    INTERROGATORY NO. 2:

4    IDENTIFY each and every ENTITY in which any LARIAN

5    TRUST has held, directly or indirectly, any OWNERSHIP

6    INTEREST at any time since January 1, 2005. For purpose of

7    this Interrogatory, transactions involving the purchase or

8    acquisition of publicly traded stock in an amount of $1,000 or

9    less may be excluded.[2]

10    Larian served objections on April 3, 2009, refusing to provide any

11   substantive answers on the grounds that the interrogatories purportedly seek private

12   and confidential information and are irrelevant, vague and ambiguous, overly broad,

13   unduly burdensome, and compound.[3]

14    **The Parties' Meet and Confer.** Mattel sent a meet and confer letter to

15   Larian, explaining why Larian's objections to Mattel's Interrogatories are improper.[4]

16   The parties met and conferred on April 21 and 22.[5] Counsel for Larian argued that

17   the Interrogatories were unintelligible, overly broad, and sought irrelevant

18   information.[6] Mattel explained during that conference and by letter[7] that the text of

19   the Interrogatories lays out in plain English the scope of the information Mattel

20

21

---

22    [2] Id.
23    [3] Isaac Larian's Response to Mattel, Inc.'s First Set of Interrogatories (Phase Two), dated April 3, 2009, Zeller Dec., Exh. 2.
24    [4] Letter from Jon Corey to Amman Khan and Jean Pierre Nogues, dated April 15, 2009, Zeller Dec., Exh. 3.
25    [5] See Letter from Tamar Buchakjian to Richard Sheldon and Daniel Hayes, dated April 29, 2009, Zeller Dec., Exh. 4; see also letter from Daniel Hayes to Tamar Buchakjian, dated April 22, 2009, Zeller Dec., Exh. 5; Letter from Daniel
26   Hayes to Tamar Buchakjian, dated April 23, 2009, Zeller Dec., Exh. 6.
27    [6] Id.
      [7] See Letter from Tamar Buchakjian to Richard Sheldon and Daniel Hayes,
28   dated April 29, 2009, Zeller Dec., Exh. 4.

EXHIBIT ___3___
PAGE ___31___

1   seeks and explained the relevance of such information.[8]  Larian, however, refused to

2   withdraw his boilerplate objections.[9]

3                                        **Argument**

4   **I.    THE DISCOVERY MASTER SHOULD OVERRULE LARIAN'S**

5   **RELEVANCE OBJECTION.**

6        A.    **The Interrogatories Seek Relevant, Discoverable Information.**

7              The Interrogatories are directly relevant to Mattel's Phase 2 claims.  As

8   Mattel alleges, MGA and Larian have engaged in a complex scheme to transfer the

9   ill-gotten funds they have obtained by virtue of their unlawful conduct and have

10  gone to extensive lengths to cover up and obscure such activities.[10]  They have

11  engaged in monetary transactions with property derived from their unlawful conduct

12  and laundered and concealed their profits.[11]  They have siphoned assets out of MGA

13  and into other entities.[12]  Their conduct has wronged Mattel, which has rights as the

14  owner of Bratz and as MGA's creditor.[13]  Based on their unlawful conduct, Mattel

15  has brought claims against MGA and Larian for Avoidance of Intentional and

16  Constructive Fraudulent Transfers ("UFTA")[14] and for RICO violations.[15]

17             The Interrogatories plainly go to Mattel's UFTA and RICO claims.

18  Interrogatory Nos. 1 and 2 ask Larian to identify the entities in which Larian and his

19  trusts have held significant ownership interests since 2005.  They seek to determine

20

21  [8]  Id.
22  [9]  See Letter from Tamar Buchakjian to Richard Sheldon and Daniel Hayes,
    dated April 29, 2009, Zeller Dec., Exh. 4; see also letter from Daniel Hayes to
23  Tamar Buchakjian, dated April 22, 2009, Zeller Dec., Exh. 5; Letter from Daniel
    Hayes to Tamar Buchakjian, dated April 23, 2009, Zeller Dec., Exh. 6.  The only
24  objection Larian agreed to withdraw was his privacy objection.  See Letter from
    Daniel Hayes to Tamar Buchakjian, dated May 1, 2009, Zeller Dec., Exh. 7.
    [10]  Mattel, Inc.'s Third Amended Answer and Counterclaims at 60-68, Zeller
25  Dec., Exh. 8.
    [11]  Id. at 78-79.
26  [12]  Id. at 67-68.
    [13]  Id. at 95-96; see also Cal. Civil Code §§ 3439 et seq.
27  [14]  Id. at 95-96.
    [15]  Id. at 70-80.
28

EXHIBIT __3__

PAGE __32__

1  to where MGA's assets have been fraudulently transferred;[16] to ascertain the

2  financial transactions in which Larian has engaged with property derived from

3  unlawful conduct;[17] to assess how Larian has laundered and concealed his ill-gotten

4  gains;[18] and to enable Mattel to track the money Larian has siphoned from MGA.[19]

5  The information Mattel now seeks is crucial to Mattel's development and further

6  investigation of its RICO and UFTA Phase 2 claims.

7          The information is also relevant to Mattel's unfair competition claims.

8  In fact, the Discovery Master has already held as much, and did so based even on

9  the claims in Mattel's Second Amended Answer and Counterclaims.  In Order No.

10 3, the Discovery Master found that Larian's ownership of entities that have received

11 assets from MGA is relevant to Phase 2 and discoverable because it relates "to

12 'fraudulent,' 'unlawful,' or 'unfair' business practice within the meaning of the Unfair

13 Competition Law and the scope of Mattel's Counterclaims."[20]   The Discovery

14 Master thus compelled two Larian vehicles, IGWT Group, LLC and IGWT 826

15 Investments, LLC, to produce documents relating to any ownership interest by

16 Larian, his spouse, his children, his siblings, or their spouses, or any entity or person

17 affiliated with them.[21]   Mattel's interrogatories, directed to a party, clearly are

18 properly tailored to ascertain Larian's interests entities such as IGWT which may

19 have been to transfer assets from MGA.[22]

20 ─────────────────

21      [16] Id. at 60-63, 78-79, 95-96.
        [17] Id.
22      [18] Id.
        [19] Id.
23      [20] Order No. 3, Regarding Motion of Mattel, Inc. to Compel Production of
24 Documents Responsive to the Same Non-Party Subpoenas, dated March 10, 2009 at
    26-27, Zeller Dec., Exh. 9.
        [21] See id. at 29-30.
25      [22] During the meet and confer process, Larian demanded that *Mattel* identify the
26 "single-purpose companies" other than IGWT that purchased Bratz from MGA at an
    extreme discount.  See Letter from Tamar Buchakjian to Richard Sheldon and
27 Daniel Hayes, dated April 29, 2009, Zeller Dec., Exh. 4.  This, however, is precisely
    the type of information that Mattel *seeks to obtain* through the Interrogatories; only
28 Larian, not Mattel, is in a position to provide it.

EXHIBIT    3
PAGE    33

1          Independently, the interrogatories seek relevant information about
2   Larian's net worth. Larian's ownership interests are unquestionably a part of his net
3   worth. The Court, the current Discovery Master and the prior Discovery Master
4   have all held this is a proper topic for discovery.[23]  Larian's relevance objections
5   should be overruled.

6     **B.    Larian's Proposed Limitations to Mattel's Interrogatories Are**
7           **Improper.**

8          Larian has provided no substantive information in response to the
9   interrogatories. During meet and confer, and with little elaboration, Larian's counsel
10  insisted that Mattel limit the scope of the interrogatories by: (1) narrowing the
11  definition of "LARIAN TRUST," (2) limiting the temporal scope of the
12  interrogatories to a "date certain," and (3) raising the "more than $1000" threshold.[24]
13  None of these proposed limitations is appropriate, as each would prevent Mattel
14  from obtaining relevant information, with little or no benefit.

15         First, "LARIAN TRUST" is defined as including "the Isaac and Angela
16  Larian Trust, Isaac Larian Grantor Annuity Trust, Angela Larian Grantor Annuity
17  Trust, Larian Family Trust and any other trust of which Isaac Larian is a trustee or
18  of which any member of Isaac Larian's family, whether by blood or marriage, is a
19  beneficiary, the current or former trustees, beneficiaries, attorneys, agents,
20  representatives, accountants, vendors, consultants or any other PERSON acting on

21

22

---

23     [23]  See Order No. 11, dated March 30, 2009, at 7 (Larian's net worth "relates to
24  Phase 2 damages issues, including, among other things, damages sought against
    Larian in connection with Mattel's unfair competition cause of action as well as the
25  calculation of Larian's net worth for purposes of litigating the propriety of any
    'exemplary damages under Cal. Civ. Code § 3294.'"), Zeller Dec., Exh. 10; July 2,
26  2007 Order, at 5, Zeller Dec., Exh. 15; Order No. 3, dated March 10, 2009, Zeller
    Dec., Exh. 9; Order, dated September 26, 2007, at 11-12, Zeller Dec., Exh. 18;
27  Order, dated December 31, 2007, at 15-16, Zeller Dec., Exh. 19.
       [24]  Letter from Tamar Buchakjian to Richard Sheldon and Daniel Hayes, dated
28  April 29, 2009, Zeller Dec., Exh. 4.

EXHIBIT ___3___

PAGE ___34___

1  its behalf, subject to its authority and control."[25]  This definition is consistent with

2  information the Discovery Master has previously compelled as relevant.  See Order

3  No. 3, Regarding Motion of Mattel, Inc. to Compel Production of Documents

4  Responsive to the Same Non-Party Subpoenas, dated March 10, 2009 at 29-30

5  (compelling production of documents relating to any ownership interest by Larian,

6  his spouse, his children, his siblings, or their spouses, or any entity or person

7  affiliated with them in IGWT Group or IGWT 826 and the dates of such person's

8  affiliation).  Moreover, many of the trusts have now been expressly identified in

9  Mattel's pleading[26] and therefore are unquestionably the proper subject of

10  discovery.[27] They cannot be excluded.

11          Second, the Interrogatories are already limited in time to January 1,

12  2005 through the present.[28]  Although Larian demanded a limitation on the

13  Interrogatories to transactions of a "date certain," engrafting an additional temporal

14  limitation on the Interrogatories would be improper.  Mattel is the proponent of the

15  Interrogatories "and is the master of its terms. So long as the information sought is

16  within the broad bounds of relevancy as set forth in Rule 26 and is otherwise

17  properly discoverable, [the other party] may not unilaterally reshape or rephrase the

18  discovery request."  Chapman v. California Dept. of Educ., 2002 WL 32854376, at

19  *3 (N.D. Cal. February 6, 2002).  There can be no plausible dispute that Larian's on-

20  going financial transactions are relevant here, given that Mattel's Third Amended

21  Answer and Counterclaims expressly allege that his financial manipulations are

22

23

24

---

25  [25] Mattel's First Set of Interrogatories (Phase 2), at 2, Zeller Dec., Exh. 1.
    [26] See, e.g., Mattel's Third Amended Answer and Counterclaims at 66-67,

26  Zeller Dec., Exh. 8.
    [27] MGA Parties' Opposition to Mattel, Inc.'s Motion for Leave to File Third

27  Amended Answer and Counterclaims, dated April 27, 2009, at 6, Zeller Dec., Exh.
    11.

28  [28] Mattel's First Set of Interrogatories (Phase 2), at 5, Zeller Dec., Exh. 1.

EXHIBIT    3
PAGE    35

1  continuing.  And, of course, his current and on-going ownership interests are plainly

2  relevant to his net worth.[29]

3          Finally, the $1000 interest threshold is necessary to capture relevant

4  information about net worth.  For example, Larian has admitted that he owns shares

5  of Zapf (which is a publicly traded company) through his trusts.[30]  Mattel is entitled

6  to know of such ownership, whether accumulated in a single purchase or through

7  increments of $1000 plus transactions.    Indeed, Larian's asset-siphoning and

8  concealment is relevant at any value.    Mattel's Interrogatories seek relevant

9  information which Mattel is entitled to discover.  See Ramirez v. Nicholson, 2007

10  WL 2990283, at *2 (S.D. Cal. 2007) (quoting Fed. R. Civ. P. 26(b)(1)) ("The

11  Federal Rules allow for broad discovery in civil actions  Relevant information need

12  not be admissible at trial if the discovery appears reasonably calculated to lead to the

13  discovery of admissible evidence.").  Nevertheless, Mattel made a good-faith effort

14  to eliminate at least some burden by creating a $1,000 threshold -- a threshold that

15  Larian has merely quibbled with, but that Larian has never provided any alternative

16  to that would provide the information Mattel is entitled to.  The Discovery Master

17  should overrule Larian's erroneous relevance objections and compel Larian to

18  provide responses to the Interrogatories without further delay.

19  **II.    LARIAN'S REMAINING OBJECTIONS ARE WITHOUT MERIT**

20          **AND SHOULD BE OVERRULED**

21          Larian also has raised a number of boilerplate objections.  They, too,

22  should be overruled.[31]

23  _____

24  [29]   In addition, Larian never provided any definition to his suggestions that

25  Mattel's already temporally limited interrogatories be limited further. Letter from

Tamar Buchakjian to Richard Sheldon and Daniel Hayes, dated April 29, 2009,

26  Zeller Dec., Exh. 4.

[30]   Larian Depo. (Vol. 2), dated March 26, 2008,  at 506:16-22, Zeller Dec., Exh.

27  12.

[31]   Larian initially objected that the Interrogatories seek private, confidential,

28  proprietary or otherwise sensitive information regarding Larian, third-party

(footnote continued)

EXHIBIT ___3___

PAGE ___36___

### A.   The Interrogatories Are Not Vague and Ambiguous

Larian asserts that the Interrogatories are vague and ambiguous, and that it is "impossible to ascertain what information is being requested" by these Interrogatories.[32] Not so. Larian fails to explain why the specifically defined term "IDENTIFY" is vague or ambiguous simply because it incorporates the term "ENTITY," "type of ownership interest," "percentage ownership interest," and "title or position that YOU have had with each such ENTITY."[33] These interrogatories simply specify, in plain and unmistakable terms, to list as to each ENTITY what identifying information Mattel is seeking.[34] Thus, for example, the definitions ask that Larian identify in his answer: the entity's full name; the type of ownership interest that Larian holds or did hold; the date(s) on which Larian held such ownership interest; and the relevant entity's contact information.[35] There is nothing ambiguous or unclear about the nature of the information sought, and the information is necessary and appropriate to identify the relevant entities -- including for purposes of locating additional witnesses and others with relevant information -- and Larian's stake in each.

Nor is the definition of "LARIAN TRUST" unintelligible.[36] "LARIAN TRUST" is defined as including "the Isaac and Angela Larian Trust, Isaac Larian Grantor Annuity Trust, Angela Larian Grantor Annuity Trust, Larian Family Trust and any other trust of which Isaac Larian is a trustee or of which any member of Isaac Larian's family, whether by blood or marriage, is a beneficiary, the current or

---

relatives, and trust beneficiaries of Larian. Isaac Larian's Response to Mattel, Inc.'s First Set of Interrogatories (Phase 2), at 6-7, Zeller Dec., Exh. 2. However, Larian has since agreed to withdraw that objection. Letter from Daniel Hayes to Tamar Buchakjian, dated May 1, 2009, Zeller Dec., Exh. 7.
[32] Isaac Larian's Response to Mattel, Inc.'s First Set of Interrogatories (Phase Two), at 6-7, Zeller Dec., Exh. 2.
[33] Id.
[34] Mattel's First Set of Interrogatories (Phase 2), at 2-3, Zeller Dec., Exh. 1.
[35] Id.

-8-

Case No. CV 04-9049 SGL (RNBx)
MATTEL INC.'S MOTION TO COMPEL INTERROGATORY RESPONSES

EXHIBIT ___3___
PAGE ___37___

1   former trustees, beneficiaries, attorneys, agents, representatives, accountants,

2   vendors, consultants or any other PERSON acting on its behalf, subject to its

3   authority and control."[37]   There is nothing vague and ambiguous about this

4   definition that prevents Larian from providing full and complete responses to these

5   Interrogatories.

6       **B.   The Interrogatories Are Not Overly Broad**

7           Larian further objects that the Interrogatories are overly broad.[38]   Yet

8   he provides no explanation, let alone with the required particularity, as to why these

9   interrogatories are overly broad.   This boilerplate objection is therefore improper.

10   Order No. 17, dated April 14, 2009, at 20 (overruling objections not stated with

11   specificity), Zeller Dec., Exh. 16; see also Fed. R. Civ. P. 33(b)(4) (grounds for

12   objecting to an interrogatory must be stated "with specificity"); Nagele v. Electronic

13   Data Systems Corp., 193 F.R.D. 94, 109 (W.D.N.Y. 2000) (overruling

14   "burdensome" objections because objecting party failed to particularize basis for

15   objection). Nor, in any event, does the objection have merit. As explained above,

16   the interrogatories are designed to discover key financial information that Mattel is

17   entitled to discover. The Discovery Master should overrule this objection.

18       **C.   The Interrogatories Do Not Pose An Undue Burden**

19           Larian objects that the Interrogatories are unduly burdensome because

20   they "purport to require Larian to search for and provide such utterly irrelevant

21   information as every stock market transaction over $1,000 in which he purchased

22   stock in any publicly traded company."[39]   Larian has not demonstrated why

23   responding to these interrogatories would present any burden.   See Jackson v.

24   _____

25   [36]   Isaac Larian's Response to Mattel, Inc.'s First Set of Interrogatories (Phase 2),
     at 4, Zeller Dec., Exh. 2.
     [37]   Mattel's First Set of Interrogatories (Phase 2), at 2, Zeller Dec., Exh. 1.
26   [38]   Isaac Larian's Response to Mattel, Inc.'s First Set of Interrogatories (Phase
27   Two), at 6-7, Zeller Dec., Exh. 2.

28

EXHIBIT ___3___
PAGE ___38___

1  *Montgomery Ward & Co., Inc.*, 173 F.R.D. 524, 528-9 (D. Nev. 1997) ("The party

2  claiming that a discovery request is unduly burdensome must allege specific facts

3  which indicate the nature and extent of the burden, usually by affidavit or other

4  reliable evidence.") (cited in Order No. 11 at 19, Zeller Dec., Exh. 10).   It is

5  implausible that someone of Larian's resources and professed business acumen does

6  not, himself or through professionals such as his accountants, maintain precise

7  records reflecting his ownership interests, which either can be used to answer the

8  interrogatories or, if Larian so chooses, be produced and identified pursuant to Rule

9  33(d).

10        Furthermore, as discussed above, the information Mattel seeks is highly

11  relevant.   Any ostensible burden associated with providing it -- and none has been

12  proven here since Larian undoubtedly has accountants who routinely keep such

13  information -- is minimal compared to the value this information will have to Mattel

14  in developing its claims.   See 8A Wright & Miller, Federal Practice & Procedure:

15  Federal Rules of Civil Procedure § 2174 (to determine if an interrogatory poses an

16  "undue burden," courts have adopted a "proportionality approach that balances the

17  burden on the interrogated party against the benefit that having the information

18  would provide to the party submitting the interrogatory"); see also King v. Georgia

19  Power Co., 50 F.R.D. 134, 136 (N.D. Ga. 1970) (overruling objection that

20  interrogatory was burdensome and oppressive, even though preparation of answer

21  would be time-consuming and costly, because information was crucial to the issues

22  of the suit and in exclusive custody of defendant); Seff v. General Outdoor

23  Advertising Co., 11 F.R.D. 597, 598 (N.D. Ohio 1951) (overruling "overly

24  burdensome" objection because value of information to plaintiff clearly outweighed

25  any annoyance or expense involved in disclosure by defendant).

26

27  [39]   Isaac Larian's Response to Mattel, Inc.'s First Set of Interrogatories (Phase

28  Two), at 6-7, Zeller Dec., Exh. 2.

EXHIBIT ___3___

PAGE ___39___

1      Larian's burden objections are unfounded and should be rejected.

2    **D.    The Interrogatories Are Not Compound**

3      Finally, Larian's objection that the Interrogatories are impermissibly
4    compound because the definition of "IDENTIFY" allegedly creates numerous
5    subparts is unfounded.[40]      As detailed above, Mattel has defined the term
6    "IDENTIFY" to ensure that Larian provides a response with sufficient detail
7    regarding his various ownership interests.[41] This definition, however, refers to, and
8    elicits information about, only one common theme -- the entities which Larian or the
9    Larian Trust have held ownership interest in.  Thus, this definition does not render
10    the Interrogatories compound.  See Swackhammer v. Sprint Corp. PCS, 225 F.R.D.
11    658, 664 (D. Kan. 2004) ("[A]n interrogatory containing subparts directed at
12    eliciting details concerning a 'common theme' should generally be considered a
13    single question."); see also Pacific Lumber Co. v. National Union Fire Ins. Co. of
14    Pittsburgh, 2005 WL 318811, at * 7 (N.D. Cal. January 5, 2005) (interrogatory that
15    asked the "same question regarding a common group of people" was not compound)
16    (citing Wright & Miller, 8A Fed. Prac. & Proc. Civ. 2d § 2168.1 at 261).

17      Based on this same reasoning, both the current Discovery Master and
18    the former Discovery Master have repeatedly rejected MGA's and Larian's
19    objections on this ground as meritless.  See Order No. 11, dated March 30, 2009, at
20    21 ("The fact that the interrogatories ask MGA to identify witnesses, facts, and
21    documents related to the MATTEL DOCUMENTS does not render the
22    interrogatories compound because the questions in each interrogatory refer to one
23    common theme"), Zeller Dec., Exh. 10; Order No. 17, dated April 14, 2009, at 21-
24    22 (overruling compound objection and counting as one interrogatory, supplemental
25    interrogatory which asked MGA, for each trade dress it claimed MGA copied,

26    _____

27    [40]  Isaac Larian's Response to Mattel, Inc.'s First Set of Interrogatories (Phase
28    Two), at 6-7, Zeller Dec., Exh. 2.

EXHIBIT ___3___
PAGE ___40___

1 | infringe or diluted, to "separately IDENTIFY each product sold by YOU or YOUR
2 | licensees that incorporates such trade dress and, for each such product, separately
3 | state (a) the number of units, by year, of each such product sold by YOU or YOUR
4 | licensees; (b) revenue received by YOU from such SALES of each such product; (c)
5 | all costs YOU have incurred in connection with each product, including but not
6 | limited to YOUR cost of good sold, and (d) YOUR gross and net profits from each
7 | such product"), Zeller Dec., Exh. 16; Order, dated September 5, 2007, at 5-7
8 | (interrogatories with "subparts seeking facts supporting a contention, the identity of
9 | persons with knowledge, and documents are not counted separately for the purposes
10 | of applying the . . . interrogatory limit."), Zeller Dec., Exh. 17.   The Discovery
11 | Master should do so again here and overrule Larian's baseless objection.

12 | ### Conclusion

13 | For the foregoing reasons, Mattel respectfully requests that the
14 | Discovery Master: (1) compel Larian to provide full and complete answers to
15 | Mattel, Inc.'s First Set of Interrogatories (Phase 2), and (2) to overrule all of Larian's
16 | objections to the Interrogatories.

17 |
18 | DATED: June 19, 2009       QUINN EMANUEL URQUHART OLIVER &
19 |                            HEDGES, LLP
20 |
21 |             By /s/ Michael T. Zeller
22 |                Michael T. Zeller
               Attorneys for Mattel, Inc.
23 |
24 |
25 |
26 |
27 | _____
28 | [41]   Mattel's First Set of Interrogatories (Phase 2), at 2-3, Zeller Dec., Exh. 1.

EXHIBIT _____3_____
PAGE _____41_____

# EXHIBIT 4

EXHIBIT FILED UNDER SEAL

PURSUANT TO PROTECTIVE ORDER

# EXHIBIT 5

1  PATRICIA L. GLASER (Bar No. 055668)
   pglaser@glaserweil.com
2  GLASER WEIL FINK JACOBS & SHAPIRO
   10250 Constellation Blvd., 19th Floor
3  Los Angeles, California 90067
   Telephone: (310) 553-3000
4  Facsimile: (310) 557-9815

5  RUSSELL J. FRACKMAN (Bar No. 49087)
   rjf@msk.com
6  PATRICIA H. BENSON (Bar No. 60565)
   phb@msk.com
7  MITCHELL SILBERBERG & KNUPP LLP
   11377 West Olympic Boulevard
8  Los Angeles, California 90064-1683
   Telephone: (310) 312-2000
9  Facsimile: (310) 312-3100

10 - Attorneys for The MGA Parties

11

12                    UNITED STATES DISTRICT COURT

13                   CENTRAL DISTRICT OF CALIFORNIA

14                        EASTERN DIVISION

15  CARTER BRYANT, an individual,        CASE NO.  CV 04-9049 SGL (RNBx)

16          Plaintiff,                   Consolidated with
                                         Case No.  CV 04-09059
17      v.                               Case No.  CV 05-02727

18  MATTEL, INC., a Delaware             DISCOVERY MATTER
    corporation,                         [To Be Heard By Discovery Master
19                                       Robert O'Brien Pursuant To Order Of
          Defendant.                     January 6, 2009]

20  AND CONSOLIDATED CASES              ISAAC LARIAN'S OPPOSITION TO
                                         MATTEL, INC.'S MOTION TO
21                                       COMPEL RESPONSES TO FIRST
                                         SET OF INTERROGATORIES
22                                       (PHASE 2)

23                                       [DECLARATION OF DANIEL M.
                                         HAYES FILED CONCURRENTLY]

24                                       Date:   TBD
                                         Time:   TBD
25                                       Place:  TBD
                                         Phase 2
26                                       Discovery Cutoff:      December 11, 2009
                                         Pretrial Conference:   March 1, 2010
27                                       Trial Date:            March 23, 2010

Mitchell
Silberberg &  28
Knupp LLP

2281006.4       ISAAC LARIAN'S OPPOSITION TO MATTEL, INC.'S MOTION TO COMPEL RESPONSES TO FIRST SET
                                     OF INTERROGATORIES (PHASE 2)

EXHIBIT   5
PAGE   84

1

## TABLE OF CONTENTS

2
Page

3    I.     INTRODUCTION ................................................................................. 1

4    II.    THE INTERROGATORIES AND DEFINITIONS ...................................... 5

5    III.   MATTEL'S MOTION TO COMPEL SHOULD BE DENIED ................. 10

6           A.   Standards For A Motion To Compel Discovery ............................. 10

7           B.   Counsel For Mattel Failed To Meet And Confer In Good
                 Faith ........................................................................................ 11

8
            C.   The Interrogatories Are Vague, Ambiguous, And
9                Unintelligible ........................................................................... 15

10          D.   The Interrogatories Are Overbroad And Seek
                 Information That Is Not Relevant To Any Party's Claims
11               Or Defenses .............................................................................. 16

12               1.   The Interrogatories Seek Information That Is Not
                      Relevant To Establishing Larian's Net Worth, And
13                    To The Extent That They Arguably Do, They Are
                      Cumulative And Improper .................................................. 16
14
                 2.   The Interrogatories Seek Information That Is Not
15                    Relevant To Mattel's New Fraudulent Transfer
                      And Money Laundering Claims .......................................... 18
16
                 3.   The Interrogatories Seek Information That Is Not
17                    Relevant To Mattel's Unfair Competition Claim .................... 20

18          E.   The Interrogatories Are Unduly Burdensome,
                 Oppressive, And Harassing ......................................................... 21
19
            F.   The Interrogatories Are Compound ............................................. 22
20
     IV.    CONCLUSION .................................................................................. 24
21

22

23

24

25

26

27

Mitchell
Silberberg &
Knupp LLP

2281006.4
28

i

EXHIBIT      5
PAGE         85

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Collaboration Properties, Inc. v. Polycom, Inc.*,
224 F.R.D. 473 (N.D. Cal. 2004) ................................................................. 23

*Cytodyne Technologies, Inc. v. Biogenic Technologies, Inc.*,
216 F.R.D. 533 (M.D. Fla. 2003) ................................................................. 11

*Denny v. Barber*,
73 F.R.D. 6 (S.D.N.Y 1977) ........................................................................ 20

*Finkelstein v. Guardian Life Insurance Co.*,
2008 WL 2095786 (N.D. Cal. 2008) ........................................................... 15

*In re Sharp International Corp.*,
403 F. 3d 43 (2d Cir. 2005) ......................................................................... 19

*Industrial Electric Engineering and Testing Company v. Dynalectric Company*,
1990 WL 80411 (D. Kan. 1990) ................................................................... 17

*McFarland v. Memorex Corp.*,
493 F. Supp. 631 (N.D. Cal. 1980) ....................................................... 19, 20

*Mid-America Facilities, Inc. v. Argonaut Ins. Co.*,
78 F.R.D. 497 (E.D. Wisc. 1978) ................................................................ 17

*Pacific Lumber Co. v. National Union Fire Ins. Co. of Pittsburg*,
2005 WL 318811 (N.D. Cal. January 5, 2005) ........................................... 24

*Robin Singh Educational Services, Inc. v. Excel Test Prep*,
2004 WL 2554454 (N.D. Cal. 2004) ........................................................... 15

*Safeco of America v. Rawsrton*,
181 F.R.D. 441 (C.D. Cal. 1998) ................................................................. 22

*Swackhammer v. Sprint Corp. PCS*,
225 F.R.D. 658 (D. Kan. 2004) .............................................................. 23, 24

*Webster Motor Car Company v. Packard Motor Car Company*,
16 F.R.D. 350 (D.D.C. 1954) ...................................................................... 15

Mitchell
Silberberg &
Knupp LLP

2281006.4

ii

EXHIBIT ___5___
PAGE ___86___

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*Wing v. Challenge Machinery Company,*
    23 F.R.D. 669 (S.D. Ill. 1959) ................................................................ 21, 22

## OTHER AUTHORITIES

7 *Moore's Federal Practice*, § 33.30[2] (Matthew Bender 3d ed.) ........................ 22

Fed. R. Civ. Proc.
    9(b) ........................................................................................................ 19

Fed. R. Civ. Proc. 26(b)(2)(C)(i) ........................................................................ 17

Fed. R. Civ. Proc. 26(b)(2)(C)(iii) ................................................................ 17, 22

Fed. R. Civ. Proc. 33(a)(1) ........................................................................... 22, 24

Fed. R. Civ. Proc. 37(a) ....................................................................................... 10

Fed. R. Civ. Proc. 37(a) ......................................................................................... 3

Mitchell
Silberberg &
Knupp LLP

2281006.4

EXHIBIT  5
PAGE   87

## I.     INTRODUCTION

1  
2         Mattel egregiously mischaracterizes Interrogatory Nos. 1 and 2 of its First

3  Set of Phase 2 Interrogatories to Isaac Larian (the "Interrogatories"). It does so by

4  divorcing the Interrogatories from the lengthy, convoluted, and in many respects

5  unintelligible definitions that accompany them. Using this sleight of hand, Mattel

6  claims that the Interrogatories seek only "information relating to Larian's and *his*

7  trusts' ownership interests in business entities since 2005," Motion at 1:4-6

8  (emphasis added) and the identity of "the entities in which Larian and *his* trusts

9  have held *significant* ownership interests since 2005." Motion at 3:18-19

10  (emphasis added). Not so.

11         In actuality, these sweeping, confusing, and downright harassing discovery

12  requests are not limited to "significant ownership interests," nor are they limited to

13  Mr. Larian and "his" trusts (whatever that means). Instead, they demand

14  information about *every* "ownership interest" held at any time since 2005, whether

15  actual or "contingent, inchoate, potential or otherwise," in every conceivable form

16  of business enterprise, including every purchase of a publicly traded stock in

17  excess of $1,000, and regardless of whether or when that stock (or other

18  "ownership interest") has since been sold. Moreover, the Interrogatories seek such

19  information not just for Isaac Larian and "his" trusts, but also for *at least* the

20  following other persons and entities: (1) Mr. Larian's wife, (2) a trust established

21  by Mr. Larian's wife; and (3) every trust of which *any* of Mr. Larian's relatives by

22  blood or marriage is a beneficiary – no matter how distant the relative, and

23  irrespective of whether that relative ever had any involvement with MGA or

24  whether Mr. Larian ever had any interest in such trust. But the Interrogatories do

25  not stop there. *In addition* to asking about actual, potential, contingent, inchoate

26  and other "ownership interests" held by any of the foregoing persons and entities at

27  any time during the past 4 1/2 years, the Interrogatories also demand the same

Mitchell
Silberberg &
Knupp LLP

2281006.4

1

ISAAC LARIAN'S OPPOSITION TO MATTEL, INC.'S MOTION TO COMPEL RESPONSES TO FIRST SET
OF INTERROGATORIES (PHASE 2)

EXHIBIT ___5___
PAGE ___88___

1  information about "ownership interests" held *either* by (1) every beneficiary,

2  trustee, attorney, agent, representative, accountant, vendor, consultant, or

3  "PERSON"[1] "acting on behalf of" or "subject to the authority" of (a) four

4  specifically identified trusts, (b) any trust of which Mr. Larian is a trustee, and

5  (c) any trust of which any member of Mr. Larian's family by blood or marriage –

6  no matter how distant – is a beneficiary, *or* by (2) every trust of which any member

7  of Mr. Larian's family by blood or marriage – again, no matter how distant – ever

8  was, or now is, a trustee, beneficiary, attorney, agent, representative, accountant,

9  vendor, consultant, or PERSON acting on behalf or subject to such trust's authority

10  and control.  Since Mattel's counsel have flatly refused to clarify any of Mattel's

11  incomprehensible definitions, it is impossible for Larian to know which of the

12  aforementioned alternatives is the intended one.  In either event however, the

13  Interrogatories sweep far broader than the issues in this case even arguably

14  warrant, yet Mattel's counsel have adamantly refused to narrow the Interrogatories

15  in any way.

16      Mattel's Motion should be denied for at least the following reasons.

17      First, the Interrogatories are not properly tailored to seek relevant

18  information.  Mattel's relevance arguments are simply conclusory assertions that

19  do not withstand scrutiny.  Mattel contends that "Larian's ownership interests are

20  unquestionably a part of his net worth" (Motion at 5:2-3), but it fails to explain

21  how the "ownership interests" of a trust of which some distant cousin-by-marriage

22  is a beneficiary, or the "ownership interests" of a vendor to a trust of which

23

24

25  _____

26  [1] "PERSON" is defined as "all natural persons, partnerships, corporations, joint ventures and any kind of business, legal or public entity or organization, as well as

27  its, his or her agents, representatives, employees, officers and directors and any one else acting on its, his or her behalf, pursuant to its, his or her authority or subject to its, his or her control.

28

Mitchell
Silberberg &
Knupp LLP

2281006.4

EXHIBIT ____5____

PAGE ___89___

1   Mr. Larian is a trustee, is in any way probative of Mr. Larian's net worth.[2]

2   Seemingly recognizing that its net worth argument is reed-thin at best, Mattel

3   claims – for the first time in the Motion – that the Interrogatories are relevant to its

4   newly minted Fraudulent Transfer and money laundering allegations – allegations

5   made in a pleading (the Third Amended Counterclaims ("TAC")) that was not

6   even on file when Mattel propounded the Interrogatories or when Larian responded

7   to them, and that Mattel never raised when it was going through its charade of

8   meeting and conferring with Larian's counsel.  As with its net worth arguments,

9   however, Mattel simply *says* that the Interrogatories are relevant to these claims,

10  but does not explain why.  That is hardly surprising.  The Interrogatories do not ask

11  about "ownership interests" acquired with MGA assets, which is the *sine qua non*

12  of Mattel's money laundering theory.  The Interrogatories are not limited to

13  "trusts" that used or received MGA assets, or even to "trusts" in which Larian

14  himself has or had an interest.  Indeed, it strains creative lawyering past the

15  breaking point for Mattel to contend that a purchase by Larian of $2,000 worth of

16  publicly traded stock in 2005 – two years before Mattel had even sued him or

17  MGA – is probative of a "complex scheme to transfer the ill-gotten funds … and

18  … cover up and obscure such activities."  Motion at 3:8-10.

19       Mattel's Motion also should be denied because Mattel's counsel failed to

20  meet and confer in good faith, in flagrant violation of Rule 37(a) of the Federal

21  Rules of Civil Procedure and the Discovery Master Order in this case.  The

22  Discovery Master thus far has refused to deny any of Mattel's torrent of discovery

23  motions on this ground, thereby cementing Mattel's belief that it need only give a

24

25  [2] Apparently in the belief that its mere *ipse dixit* is an acceptable substitute for
    logic, Mattel makes the remarkable statement that "the $1,000 interest threshold
26  [for publicly traded stock] is necessary to capture relevant information about net
    worth."  Motion at 7:3-4.  But Mattel does not, because it cannot, explain why a
27  $2,000 purchase and sale of a publicly traded stock in 2005 sheds light on
    Mr. Larian's net worth 4 1/2 years later.

Mitchell
Silberberg &
Knupp LLP   28

3

ISAAC LARIAN'S OPPOSITION TO MATTEL, INC.'S MOTION TO COMPEL RESPONSES TO FIRST SET
OF INTERROGATORIES (PHASE 2)

EXHIBIT ___5___
PAGE ___90___

1    perfunctory nod to the meet and confer process. Enough is enough. If Mattel and

2    its counsel are allowed to continue to flout their obligation to meet and confer in

3    good faith, then the Discovery Master might as well eliminate the meet and confer

4    requirement altogether, as its only purpose is to add the additional attorneys fees

5    attendant to meaningless communications on top of the already enormous fees the

6    MGA Parties are forced to incur in opposing Mattel's motions and paying half of

7    the Discovery Master's fees in connection therewith.

8         Here, counsel for Larian attempted in good faith to obtain clarification about

9    what the Interrogatories were seeking, and to discuss reasonable limitations on the

10   Interrogatories. Those efforts were completely rejected. Mattel's counsel flatly

11   refused to clarify the Interrogatories, simply reading back *verbatim* the

12   incomprehensible definitions that Larian's counsel had said they did not

13   understand. Mattel's counsel were equally adamant in refusing to narrow the

14   Interrogatories in any way whatsoever, even though they were unable to explain,

15   for example, how Larian's $2,000 purchase of a publicly traded stock in 2005, and

16   his sale of that stock one week later, was relevant to any issue in this case. *See*

17   Declaration of Daniel M. Hayes ("Hayes Decl.") ¶ 9. If the Discovery Master does

18   not deny Mattel's Motion outright for ignoring the good faith component of its

19   duty to meet and confer, then Mattel's Motion must stand or fall based on its

20   position that the Interrogatories, as drafted, are entirely proper. It is not the role of

21   the Discovery Master, nor should it be, to rewrite the Interrogatories by parsing

22   through the definitions and teasing out some combination of information included

23   therein that might arguably be relevant to some issue in the case.

24        Finally, Mattel's request that Larian's objections be overruled is utterly

25   without merit, and should be denied. As discussed in more detail below, Mattel's

26   confusing, overlapping and compound definitions render the Interrogatories

27   virtually incomprehensible, and thus the objection on the grounds of vagueness and

Mitchell
Silberberg &
Knupp LLP

2281006.4

28

4

EXHIBIT ___5___
PAGE ___91___

1   ambiguity is more than well-taken.  All of the other objections that Mattel

2   challenges – that the Interrogatories are overbroad, unduly burdensome, and

3   impermissibly compound – are equally valid and should be sustained.

4   **II.   THE INTERROGATORIES AND DEFINITIONS**

5        On March 4, 2009, Mattel served its first set of interrogatories to Isaac

6   Larian (Phase 2).  INTERROGATORY NO. 1 reads as follows:

7             IDENTIFY each and every ENTITY in which LARIAN[3]

8             has held, directly or indirectly, any OWNERSHIP

9             INTEREST at any time since January 1, 2005.  For

10            purpose of this Interrogatory, transactions involving the

11            purchase or acquisition of publicly traded stock in an

12            amount of $1,000 or less may be excluded.

13  Hayes Decl. ¶ 3, Ex. 2.

14            INTERROGATORY NO. 2 reads as follows:

15            IDENTIFY each and every ENTITY in which any

16            LARIAN TRUST has held, directly or indirectly, any

17            OWNERSHIP INTEREST at any time since January 1,

18            2005.  For purpose of this Interrogatory, transactions

19            involving the purchase or acquisition of publicly traded

20            stock in an amount of $1,000 or less may be excluded.

21  *Id.*

22       Although these Interrogatories, read in a vacuum, appear simple, one must

23  follow a trail of lengthy, complicated, overlapping, ambiguous, and in some

24  respects unintelligible definitions in order to grasp what they actually request.

25

26  [3] "LARIAN" is defined to mean *both* Isaac Larian and his wife Angela Larian. *See*

27  Hayes Decl. ¶ 3, Ex. 2.  Angela Larian is not a party to this action.  Nowhere in its Motion does Mattel even try to explain why it should be permitted to gather information about Angela Larian's separate investments.

28

Mitchell
Silberberg &
Knupp LLP

2281006.4

5

EXHIBIT   5
PAGE   92

1  With one exception, Mattel's Memorandum of Points and Authorities conveniently

2  omits the Definitions, and the single Definition it does quote ("LARIAN TRUST")

3  is incomplete, because it fails to set forth the definition of another term

4  ("PERSON") that is included within the definition of "LARIAN TRUST." *See*

5  Motion at 8-9.

6          The Interrogatories define "LARIAN TRUST" as follows:

7                  "LARIAN TRUST" means the Isaac and Angela Larian

8                  Trust, Isaac Larian Grantor Annuity Trust, Angela Larian

9                  Grantor Annuity Trust, Larian Family Trust and any

10                 other trust of which Isaac Larian is a trustee or of which

11                 any member of Isaac Larian's family, whether by blood

12                 or marriage, is a beneficiary, the current or former

13                 trustees, beneficiaries, attorneys, agents, representatives,

14                 accountants, vendors, consultants or any other PERSON

15                 acting on its behalf, [sic] subject to its authority and

16                 control.

17  Hayes Decl. ¶3, Ex. 2.  It is unclear from this definition whether the portion that

18  begins "the current or former trustees, beneficiaries..." and ends with

19  "consultants" is intended to modify "any member of Isaac Larian's family," or is

20  intended to modify the various trusts described.  It is also impossible to determine

21  what is meant by the phrase "or any other PERSON acting on its behalf, subject to

22  its authority and control," because the word "it" has no antecedent, and use of the

23  word "it" in the definition is grammatically and logically unintelligible.

24          Further, to interpret the meaning of "LARIAN TRUST," one also must look

25  to the definition of "PERSON," since "PERSON" is part of the definition of

26  "LARIAN TRUST."

27          The Interrogatories define "PERSON" as follows:

Mitchell
Silberberg &
Knupp LLP

2281006.4

28

6

EXHIBIT ___5___
PAGE ___93___

1    "PERSON" or "PERSONS" means all natural persons,
2    partnerships, corporations, joint ventures and any kind of
3    business, legal or public entity or organization, as well as
4    its, his or her agents, representatives, employees, officers
5    and directors and any one else acting on its, his or her
6    behalf, pursuant to its, his or her authority or subject to
7    its, his or her control.

8    *Id.* Thus, for example, if the words "the current or former trustees, attorneys,

9    agents, representatives, accountants, vendors, consultants or any other PERSON

10   acting on its behalf," are intended to modify the various types of trusts described,

11   then the definition of "LARIAN TRUST" includes (among *many* others)

12   employees, attorneys, accountants, consultants and vendors of any trusts of which

13   any relative of Mr. Larian by blood or marriage is a beneficiary – no matter how

14   distant the relationship between Mr. Larian and the relative, and regardless of

15   whether such distant relative ever had any involvement with MGA or Bratz – *as*

16   *well as* every agent, or person acting on behalf of the employees, attorneys,

17   accountants, consultants and vendors of the distant-relative-beneficiary's trust.

18   "LARIAN TRUST" also conceivably includes, for example, a paralegal working

19   on trust matters in the office of an attorney for a trust of which a distant relative by

20   marriage of Mr. Larian's is a beneficiary, because if the word "it" refers to such a

21   trust, the clause "PERSON acting on its behalf" would sweep such a paralegal

22   within the definition of "LARIAN TRUST." Examples of such absurdities

23   abound, yet Mattel and its counsel refused to clarify the definition of "LARIAN

24   TRUST" or limit it in any way.

25        Assuming Larian can identify who or what falls within the definition of

26   "LARIAN TRUST," he is then required to "IDENTIFY" every "ENTITY" in

27   which each such "who or what" has an "OWNERSHIP INTEREST." This, in turn,

Mitchell
Silberberg &
Knupp LLP

28

2281006.4

7

EXHIBIT     5
PAGE        94

1   requires reference to three additional definitions, one of which ("OWNERSHIP

2   INTEREST") requires reference back to the defined terms "ENTITY" and

3   "PERSON."

4           The Interrogatories define "OWNERSHIP INTEREST" as follows:

5                   "OWNERSHIP INTEREST" means any right, title or

6                   interest of any kind, whether legal, beneficial, past,

7                   present, future, contingent, inchoate, potential or

8                   otherwise, and includes without limitation any right, title,

9                   interest or power that a PERSON possesses or may

10                   possess, directly or indirectly, from any contract,

11                   arrangement, understanding, relationship or otherwise, to

12                   direct, control, dictate or vote on the actions or potential

13                   or proposed actions of an ENTITY, and includes without

14                   limitation securities, stock, shares, warrants, options,

15                   membership interests, partnership interests, voting

16                   interests, equity interests, simple ownership, debt or other

17                   non-security obligations that may be convertible to equity

18                   or other interests and any right, interest; [sic] or any

19                   right, title, interest, power, title, agreement or

20                   understanding to receive, directly or indirectly,

21                   distributions of value from an ENTITY.

22   *Id.* Among other problems with this convoluted and seemingly open-ended

23   ("without limitation") definition is the language "may possess," which creates the

24   unanswerable question of how one is to distinguish between a right, title, interest

25   or power that a person "possesses," and a right, title, interest or power that a person

26   "may" possess.

27           The Interrogatories define "ENTITY" as follows:

Mitchell
Silberberg &   28
Knupp LLP

22810064

EXHIBIT   5
PAGE   95

1          "ENTITY" means any and all business enterprises of any

2          kind, including without limitation any and all

3          partnerships, corporations, companies and joint ventures,

4          trusts, associations, limited liability companies or sole

5          proprietorships.

6    *Id.* Finally, the Interrogatories define "IDENTIFY" as follows:

7          "IDENTIFY" or "IDENTITY" [sic] means to state, fully

8          and separately as to each ENTITY, such ENTITY's full

9          name; taxpayer identification number or other

10         governmental identifying number of [sic] the ENTITY is

11         not registered in the United States; state or country of

12         creation, incorporation or organization or registration; the

13         date of incorporation, organization, creation and/or

14         registration; the type of ownership interest that YOU

15         hold or did hold; the percentage of YOUR ownership in

16         each ENTITY; the date(s) on which YOU held such

17         ownership interest; each title or position that YOU have

18         had with each such ENTITY, if any, and the date(s) on

19         which YOU held such title or position; the current

20         address of each entity; the present or last known

21         telephone number of each entity; and the name and

22         current address of each such ENTITY's agent(s) for

23         service of process or, if not such agent has been

24         designated, the then name; current address and current

25         telephone number of each officer, director, managing

26         agent and general agent of such ENTITY.

27

28

Mitchell
Silberberg &
Knupp LLP

2281006.4

9

EXHIBIT ___5___
PAGE ___96___

1    *Id.* Although the definition of "IDENTIFY" includes the capitalized term

2    "YOUR," there is no definition of "YOUR." Necessarily, therefore, "YOUR"

3    must be a reference to Mr. Larian himself, since the Interrogatories are directed to

4    him. This leads to the following result, by way of example: If a distant relative by

5    marriage of Mr. Larian's is a beneficiary of a trust in which Mr. Larian has and had

6    no involvement whatsoever, and that trust purchased $10,000 of General Electric

7    Stock in 2005, Mr. Larian must state whether he, individually, *ever* owned stock in

8    General Electric, what percentage of that enormous public company his

9    stockholdings represented, the name, address and telephone number of every

10   General Electric officer and director, and the like. Obviously, such information is

11   not even arguably relevant to any issue in this case, yet Mattel rejected Mr.

12   Larian's request that it consider limiting the vast sweep of these Interrogatories or

13   in some way clarifying them.

14   **III.    MATTEL'S MOTION TO COMPEL SHOULD BE DENIED**

15          A.    <u>Standards For A Motion To Compel Discovery</u>

16          To prevail on its Motion to Compel, Mattel must satisfy both procedural and

17   substantive burdens. It has satisfied neither.

18          First, a party filing a motion to compel discovery must "meet and confer" *in*

19   *good faith.* Fed. R. Civ. Proc. 37(a) (emphasis added). As discussed hereafter,

20   Mattel not only failed to meet and confer in good faith, but it is now moving to

21   compel based on arguments its counsel never raised with Mr. Larian's counsel as

22   support for its position, and that are based on a pleading that was not even on file

23   when Mattel propounded the Interrogatories – or when Mr. Larian served his

24   responses. It thus appears that the TAC was filed to justify the discovery sought,

25   not that the Interrogatories were propounded in aid of the TAC.

26          Second, as a substantive matter, Mattel, as the moving party, bears the

27   burden of "establishing that the information sought is relevant and necessary to its

Mitchell
Silberberg &
Knupp LLP

2281006.4                                          10

ISAAC LARIAN'S OPPOSITION TO MATTEL, INC.'S MOTION TO COMPEL RESPONSES TO FIRST SET
OF INTERROGATORIES (PHASE 2)

28

EXHIBIT ___5___
PAGE ___97___

1    lawsuit." *Cytodyne Technologies, Inc. v. Biogenic Technologies, Inc.*, 216 F.R.D.

2    533, 534 (M.D. Fla. 2003); *see also* Ex. 9 to Zeller Decl.: Order No. 3 at 14:21-25

3    (*quoting Cytodyne Technologies, Inc.*). Mattel's conclusory arguments about the

4    putative relevance of the Interrogatories are not sufficient to meet its burden.

5          **B.    Counsel For Mattel Failed To Meet And Confer In Good Faith**

6          Preliminarily, Mattel has failed to comply with the procedural prerequisite to

7    its Motion, i.e. a good faith attempt to resolve the matter informally. Mattel's

8    Motion to Compel was a foregone conclusion. Throughout its perfunctory meet

9    and confer communications, Mattel refused to limit or even explain either

10   Interrogatory. Instead, as it has done in its Motion, Mattel simply pronounced, in

11   conclusory fashion, that the information sought by the Interrogatories is relevant,

12   and that the definitions are clear. Hayes Decl. ¶¶ 9, 12. The details of the parties'

13   communication are set forth in the accompanying declaration of Daniel M. Hayes.

14   Briefly:

15         On April 15, 2009, Jon Corey of Quinn Emanuel Urquhart Oliver & Hedges,

16   LLP ("Quinn Emanuel"), one of Mattel's lawyers, requested a meet and confer

17   conference concerning the objections to Mattel's Interrogatories that Larian had

18   timely served 12 days earlier. Hayes Decl. ¶ 4, Ex. 3; ¶ 5, Ex. 4.

19         On April 17, 2009, Daniel M. Hayes of MSK, wrote to accept Mr. Corey's

20   invitation to meet and confer, noting that "[w]e are willing to provide information

21   consistent with the Discovery Master Orders, but the Interrogatories (to the extent

22   we understand them) are not confined to such matters." Hayes Decl. ¶ 6, Ex. 5.

23   (Mattel carefully omits this letter from the exhibits in support of its Motion.)

24   Mr. Hayes also observed that Mr. Corey had claimed in his April 15 letter "that

25   Mattel 'recently discovered that Larian has been transferring assets from MGA by

26   using single-purpose companies' to purchase Bratz products," and he asked Mr.

27   Corey to "[p]lease identify these 'single-purpose companies' before our call next

EXHIBIT    5
PAGE    98

1    week, since we cannot have a meaningful discussion unless we know what

2    companies you are referring to." *Id.* Despite having claimed to have made this

3    "recent discovery," neither Mr. Corey nor anyone else on behalf of Mattel ever

4    responded to Mr. Hayes' inquiry, nor is there any mention of this putative

5    discovery in Mattel's Motion.[4]

6        On April 21, 2009, Mr. Hayes and Richard Sheldon of MSK had a telephone

7    conference with Tamar Buchakjian of Quinn Emanuel regarding the

8    Interrogatories. Hayes Decl. ¶ 7. When Mr. Hayes asked Ms. Buchakjian to state

9    in clear, plain terms what information Mattel was seeking in the Interrogatories, so

10   that both parties could at least agree on that, her only response was to read back the

11   definitions, *verbatim. Id.* When Mr. Hayes asked Ms. Buchakjian to clarify

12   Mattel's definition of "LARIAN TRUST," Ms. Buchakjian replied that she could

13   not clarify it beyond what was in the definition. *Id.* Parroting back language one

14   has just been told is confusing, with no effort to further explain it, is not meeting

15   and conferring at all, let alone in good faith.

16       When Mr. Hayes asked why the vast amount of information apparently

17   sought by the Interrogatories was relevant, Ms. Buchakjian replied that the

18   Interrogatories sought information relevant to determining Larian's net worth.

19   Hayes Decl. ¶ 8. Mr. Hayes then asked Ms. Buchakjian whether she thought that a

20

21   [4] Showing a remarkable talent for misstating the facts, Mattel asserts in a footnote
     that "[d]uring the meet and confer process, Larian demanded that *Mattel* identify
22   the 'single purpose companies' other than IGWT that purchased Bratz from MGA
     at an extreme discount. This, however, is precisely the type of information that
23   Mattel seeks to obtain through the Interrogatories; only Larian, not Mattel can
     provide it." Motion at 4, fn. 22. What Mattel fails to disclose, however, is that it
24   was *Mattel*, not Larian (emphasis in original), that claimed to have knowledge of
     some single purpose entities other than IGWT that supposedly were being used to
25   transfer MGA assets. Larian had (and has) no knowledge of any such conduct, and
     his counsel therefore asked Mr. Corey to explain what he was talking about. The
26   fact that Mattel's counsel never responded to that question strongly suggests that
     the assertion in Mr. Corey's April 15 letter was pure fabrication – just like the
27   "information and belief" allegations of financial impropriety that Mattel alleges in
     its TAC.

28

Mitchell
Silberberg &
Knupp LLP

2281006.4

12

ISAAC LARIAN'S OPPOSITION TO MATTEL, INC.'S MOTION TO COMPEL RESPONSES TO FIRST SET
OF INTERROGATORIES (PHASE 2)

EXHIBIT    5
PAGE    99

1    2005 transaction in which Larian bought $2000 worth of publicly traded stock and

2    sold it a week later needed to be identified in response to Interrogatory No. 1.

3    Hayes Decl. ¶ 9. Ms. Buchakjian said yes. *Id.* But despite Mr. Hayes' prodding,

4    Ms. Buchakjian did not (presumably, because she could not) explain how such

5    information would shed light on Mr. Larian's net worth at trial. *Id.*

6         During the April 21 conversation, Mr. Sheldon and Mr. Hayes proposed that

7    the parties consider limiting the definition of "LARIAN TRUST" and the temporal

8    scope of both Interrogatories, and raising the "more than $1000" threshold in each

9    Interrogatory. Hayes Decl. ¶ 10. The parties agreed to consult with their

10   respective clients about such limitations and to speak further in another call.

11        That second call took place on April 23, 2009. Mr. Hayes again asked

12   Ms. Buchakjian whether she would provide a more intelligible definition of

13   "LARIAN TRUST" and a plain English statement of what information was

14   covered by the Interrogatories. Hayes Decl. ¶ 12. Ms. Buchakjian refused to do

15   so. *Id.* In an effort to demonstrate how confusing the definition of "LARIAN

16   TRUST" is, Mr. Hayes asked Ms. Buchakjian to explain who would be a person

17   subject to the control of any trust of which one of Larian's relatives by blood or

18   marriage was a "vendor." Hayes Decl. ¶ 13. Ms. Buchakjian could not provide an

19   answer. *Id.* She also stated that her client was not willing to narrow the scope of

20   the Interrogatories in any way. Hayes Decl. ¶ 14.

21        On April 23, 2009, in a letter following the call, Mr. Hayes made his fourth

22   request that Ms. Buchakjian "(1) clarify the interrogatories as I requested in my

23   April 22 letter to you, and (2) engage in meaningful, good faith efforts to narrow

24   your client's interrogatories." Hayes Decl. ¶ 15, Ex. 7. Ms. Buchakjian did not

25   respond.

26        On April 29, 2009, Ms. Buchakjian wrote to Mr. Sheldon that "Mattel has no

27   alternative but to move to compel." Hayes Decl. ¶ 16, Ex. 8. On May 1, 2009,

28

Mitchell
Silberberg &
Knupp LLP

2281006.4

13

EXHIBIT     5
PAGE     100

1    Mr. Hayes reiterated to Ms. Buchakjian that Mr. Larian was "willing to respond

2    substantively to interrogatories that are appropriately limited in terms of scope and

3    subject matter," and asked Ms. Buchakjian to let him know if she was prepared to

4    "discuss limiting the interrogatories." Hayes Decl. ¶ 17, Ex. 9. Mr. Hayes did not

5    receive a response to his May 1, 2009 letter. On Friday, June 19, 2009, Mattel

6    filed its Motion without any further meet and confer efforts. Hayes Decl. ¶ 18.

7        It is not meeting and conferring at all, let alone with the requisite good faith,

8    to flatly refuse to explain language an opposing counsel has said he does not

9    understand, to flatly refuse to place any limitations whatsoever on discovery

10   requests that are so sweeping as to encompass clearly irrelevant matter, or to file

11   motions to compel based on arguments never raised or discussed with opposing

12   counsel. Too many lawyers, from too many firms, have expressed under oath their

13   frustration at the perfunctory nature of Mattel's supposed "meeting and

14   conferring." Meeting and conferring in good faith means more than just having a

15   phone call and saying "no," unless there is some legitimate reason for that "no."

16   There is no legitimate reason here. At a minimum, Mattel could have, and should

17   have, made *some* attempt to clarify the definitions that govern the Interrogatories.

18   Likewise, Mattel could have, and should have, at least agreed to limit the

19   Interrogatories so as to exclude some of the more obviously irrelevant information

20   (*e.g.*, defining a "Larian Trust" as either a "lawyer or vendor," or as a trust to

21   which a distant relative by marriage is a lawyer or vendor, depending on how the

22   ambiguous language of "LARIAN TRUST" is interpreted. *See* discussion in

23   Section II, *supra*).

24       At some point, the Discovery Master must require Mattel to do more than

25   give lip service to its meet and confer obligation. The only way to do so is to deny

26   this Motion unless and until Mattel engages in a meaningful attempt to resolve this

27

28

Mitchell
Silberberg &
Knupp LLP

2281006.4

ISAAC LARIAN'S OPPOSITION TO MATTEL, INC.'S MOTION TO COMPEL RESPONSES TO FIRST SET
OF INTERROGATORIES (PHASE 2)

EXHIBIT ___5___
PAGE ___101___

1    discovery dispute through the meet and confer process.  Otherwise, there is no

2    reason to have a meet and confer requirement.

3        **C.**    **The Interrogatories Are Vague, Ambiguous, And Unintelligible**

4        Mattel refused to clarify what information it seeks in the Interrogatories,

5    instead simply parroting back the convoluted definitions, *verbatim*, without further

6    explanation.  Mattel does not do any better in the Motion.  For instance, Mattel

7    simply quotes the definition of "LARIAN TRUST," and then pronounces, "[t]here

8    is nothing vague and ambiguous about this definition[.]"  Motion to Compel at

9    8:17-9:5.  But saying this does not make it true.

10       Indeed, the proverbial proof is in the pudding.  Mattel's own counsel could

11   not explain what entities would be covered by "LARIAN TRUST."  Hayes Decl.

12   ¶ 13.  Nor could she explain what was meant by the language that defines

13   "OWNERSHIP INTEREST" as including "any right, title, interest or power that a

14   PERSON possesses *or may possess*, directly *or indirectly*, from any contract,

15   arrangement, understanding, relationship *or otherwise*."  Hayes Decl. ¶ 17, Ex. 9

16   (emphasis added).  Larian is not required to guess what the Interrogatories mean.

17   *See Webster Motor Car Company v. Packard Motor Car Company*, 16 F.R.D. 350,

18   351 (D.D.C. 1954) ("an interrogatory must be specific in order that it need not be

19   necessary for the party that is being examined to exercise discretion or judgment in

20   determining what is intended to be covered by the interrogatory").

21       It is not the Court's (or Discovery Master's) duty to rewrite interrogatories.

22   *See Finkelstein v. Guardian Life Insurance Co.*, 2008 WL 2095786, *2 (N.D. Cal.

23   2008) (court would "not rewrite plaintiff's overbroad discovery request," stating

24   that "Rule 26 does not require the Court to rewrite discovery requests for the

25   parties.") (*quoting Robin Singh Educational Services, Inc. v. Excel Test Prep*, 2004

26   WL 2554454, *1 (N.D. Cal. 2004).  Since Mattel's Interrogatories are ambiguous

27

28

Mitchell
Silberberg &
Knupp LLP

2281006.4

15

EXHIBIT    5
PAGE    102

1  at best, and since Mattel has refused to revise them in any way, Mattel's Motion

2  must be denied.

3      **D.    The Interrogatories Are Overbroad And Seek Information That**

4          **Is Not Relevant To Any Party's Claims Or Defenses**

5      Mattel contends that the Interrogatories are relevant to the newly alleged

6  Fraudulent Transfer and money laundering claims in its TAC, and to the issue of

7  Mr. Larian's net worth. But none of Mattel's conclusory arguments explains why

8  this is so. The absence of explanation is telling.

9          **1.    The Interrogatories Seek Information That Is Not Relevant**

10              **To Establishing Larian's Net Worth, And To The Extent**

11              **That They Arguably Do, They Are Cumulative And**

12              **Improper**

13      Mattel makes the bald pronouncement that "Larian's ownership interests are

14  unquestionably a part of his net worth." Motion at 5:2-3. While that statement

15  may be partially true, the Interrogatories are not limited to Larian's ownership

16  interests, let alone to interests that he currently holds.

17      Mattel fails to explain how it is probative of Mr. Larian's net worth to know,

18  for example, (1) the "ownership interests" of a trust of which a distant relative is a

19  beneficiary, but in which Mr. Larian has no interest whatsoever, (2) the "ownership

20  interests" of an attorney who works for, or a vendor who sells to, a trust in which

21  Mr. Larian does or does not have an interest, or (3) Mr. Larian's purchase of

22  $2,000 worth of publicly traded stock in 2005, which he sold one week later. But

23  this is precisely the type of information the Interrogatories demand. For Mattel to

24  argue that these interrogatories are "properly tailored to ascertain Larian's

25  interests" (Motion at 4:18) is ludicrous.

26      Further, even assuming "net worth" is a proper topic for discovery

27  propounded more than a year before the scheduled trial date, the Interrogatories are

28

Mitchell
Silberberg &
Knupp LLP

2281006.4

ISAAC LARIAN'S OPPOSITION TO MATTEL, INC.'S MOTION TO COMPEL RESPONSES TO FIRST SET
OF INTERROGATORIES (PHASE 2)

EXHIBIT ___5___
PAGE ___102___

1    not limited to current "ownership interests." Courts consistently refuse to order

2    years worth of financial discovery, where the purpose of the discovery is to

3    establish net worth. *See, e.g., Mid-America Facilities, Inc. v. Argonaut Ins. Co.*, 78

4    F.R.D. 497, 498-99 (E.D. Wisc. 1978) (objection to requests for documents

5    involving defendant's financial status for a seven-year period was sustained when

6    plaintiff needed to know only defendant's current financial status for purposes of

7    its punitive damages claim); *Industrial Electric Engineering and Testing Company

8    v. Dynalectric Company*, 1990 WL 80411, *1 (D. Kan. 1990) (denying discovery

9    request for several years of financial discovery, stating request is "excessively

10   broad, and calls for much material that does not appear to the court to be relevant

11   to the punitive damages sought to be recovered"). Answering Mattel's sweeping

12   Interrogatories would impose the significant burden of searching for and

13   identifying utterly irrelevant transactions that would not shed any light at all on

14   Larian's net worth today. The Motion must therefore be denied. *See* Fed. R. Civ.

15   Proc. 26(b)(2)(C)(iii).

16        Moreover, even assuming (without conceding) that some information

17   relevant to Larian's current net worth is buried among the mountain of minutae

18   sought by these Interrogatories, "the court must limit the frequency or extent of

19   discovery otherwise allowed…if it determines that [] the discovery sought is

20   unreasonably cumulative or duplicative[.]" Fed. R. Civ. Proc. 26(b)(2)(C)(i). In

21   Order No. 11, the Discovery Master allowed discovery of documents sufficient to

22   identify Larian's net worth, reasoning that such information relates to Phase 2

23   damages issues.[5] However, the Discovery Master specifically stated that ***"Larian

24   should not be required to provide updated information concerning his net worth

25   and gross income every few months."*** Ex. 10 to Zeller Decl.: Amended Order

---

[5] Larian objected to such "net worth" discovery then, and maintains that all such discovery is inappropriate. However, the Interrogatories go well beyond even what was permitted in Order No. 11.

26

27

28

Mitchell
Silberberg &
Knupp LLP

2281006.4

17

EXHIBIT   5
PAGE   104

No. 11 at n.6 (emphasis added).  Pursuant to Order No. 11, Larian was required to supplement his 2008 responses to discovery about his net worth, and to produce documents "sufficient to calculate [his] net worth," documents sufficient to identify every account at any bank or financial institution that he (broadly defined) had ever had, or in which he ever had an interest, and documents sufficient to establish his gross income and the sources of same.  *See* Ex. 10 to Zeller Decl.: Amended Order No. 11 at 3:7.  Less than three months after having obtained Order No. 11, the insatiable Mattel is back at the well.  Further discovery focused on Larian's net worth is cumulative of the discovery already allowed by Order No. 11, and contravenes the Discovery Master's admonition that Larian should not be forced to provide net worth discovery every few months.

>                2.    **The Interrogatories Seek Information That Is Not Relevant**
>                      **To Mattel's New Fraudulent Transfer And Money**
>                      **Laundering Claims**

In conclusory terms (again), Mattel argues that the Interrogatories are relevant to its new fraudulent transfer and money laundering allegations (Motion at 3:17-4:4) because the Interrogatories supposedly seek "to determine to [sic] where MGA assets have been fraudulently transferred; to ascertain the financial transactions in which Larian has engaged with property derived from unlawful conduct; to assess how Larian has laundered and concealed his ill-gotten gains; and to enable Mattel to track the money Larian has siphoned from MGA."  Motion at 3:19-4:4.  But Mattel does not even attempt to explain *how* the information requested by the Interrogatories will enable such "determinations" and "assessments."  The Interrogatories do *not* tie the information requested to any use or receipt of MGA assets, nor are they limited to information about Mr. Larian or trusts he controls.  Instead, the Interrogatories demand the identification of every stock market transaction or other "ownership interest" in any public or private

Mitchell
Silberberg &
Knupp LLP

22810064

18

ISAAC LARIAN'S OPPOSITION TO MATTEL, INC.'S MOTION TO COMPEL RESPONSES TO FIRST SET
OF INTERROGATORIES (PHASE 2)



EXHIBIT ___5___
PAGE ___105___

1   entity since 2005 on the part of a host of persons and entities *other than* Larian,

2   regardless of whether those persons or entities had anything whatsoever to do with

3   MGA or any assets of MGA.  Likewise, the Interrogatories demand information

4   about Mr. Larian's "ownership interests" regardless of the source of funds used to

5   acquire those interests, and regardless of the time of acquisition.[6]  In short, these

6   Interrogatories are *not* designed to elicit information about "fraudulent transfers of

7   MGA assets" or about the use of proceeds from some unspecified "unlawful

8   conduct."[7]  They are designed to enable Mattel to aim its discovery artillery at any

9   person, firm or entity that may have had some tenuous connection to Isaac Larian.

10         In considering the propriety of these Interrogatories, it also is important to

11   remember that allegations of fraudulent transfer must be pleaded with specificity

12   under Rule 9(b) of the Federal Rules of Civil Procedure.  *See, e.g., In re Sharp*

13   *International Corp.*, 403 F. 3d 43, 56 (2d Cir. 2005).  This specificity requirement

14   is "designed to discourage this 'sue first, ask questions later' philosophy."

15   *McFarland v. Memorex Corp.*, 493 F. Supp. 631, 639 (N.D. Cal. 1980) (internal

16   citations and quotations omitted).  But "sue first ask questions later" is exactly

17   what Mattel is attempting to do here.  In its new fraudulent transfer claim, Mattel

18   has not specifically alleged any fraudulent transfer other than the alleged transfer

19   of Bratz inventory to the IGWT Group.  The Interrogatories have nothing to do

20   with the alleged transfer of Bratz inventory from MGA to the IGWT Group.

21

22

23   [6] As discussed above, the use of the term YOU in the definition of IDENTIFY,
     coupled with the definition of LARIAN TRUST, removes any time limit for
24   certain information required to be provided.

25   [7] It is simply preposterous for Mattel to contend that information about a $2,000
     stock market purchase by a vendor to a trust of which some distant relative of
26   Mr. Larian's is a beneficiary, and in which Mr. Larian has no involvement or
     interest, will shed light on Mr. Larian's financial transactions *at all*, let alone his
27   supposed transactions involving property "derived" from some unidentified
     "unlawful conduct."

Mitchell
Silberberg &   28
Knupp LLP

2281006.4

19

ISAAC LARIAN'S OPPOSITION TO MATTEL, INC.'S MOTION TO COMPEL RESPONSES TO FIRST SET
OF INTERROGATORIES (PHASE 2)

EXHIBIT ___5___

PAGE ___106___

1    "Complaints should not be conceived merely as tokens, guaranteeing access
2    to a world of discovery." *Denny v. Barber*, 73 F.R.D. 6, 10 (S.D.N.Y 1977). *See*
3    *also McFarland*, 493 F. Supp. at 636-37 (in a case where allegations based on
4    "information and belief," noting that the "'detail following discovery' rationale has
5    been firmly rejected by the courts"). Indeed, Mattel's objective in filing its TAC
6    seems to have been to manufacture a basis for its harassing discovery. In Order
7    No. 3, the Discovery Master denied Mattel's motion to compel certain financial
8    discovery because "Mattel's allegations in support of its RICO counterclaim turn
9    on misappropriation of trade secrets and confidential information, and make no
10.  mention of improper transfers of funds or any other predicate act similar to MGA's
11   purported business transactions with any of the Financing Entities....Mattel has not
12   alleged any sort of financial scheme which would support inquiry into the MGA
13   Parties' financial transactions with third parties." Ex. 9 to Zeller Decl.: Order No.
14   3 at 17:1-4; n.16. Presumably in response to this defeat, Mattel simply included in
15   the TAC, on "information and belief," new allegations about improper transfers of
16   funds, that it now relies on those "information and belief" allegations as support
17   for its argument that it should have unfettered access to the sweeping discovery it
18   now seeks.

19          **3.    The Interrogatories Seek Information That Is Not Relevant**
20                 **To Mattel's Unfair Competition Claim**

21          Mattel contends that the Interrogatories are relevant to its unfair competition
22   claim, citing Discovery Master Order No. 3. Motion at 4:7-19. Order No. 3 does
23   not justify the blunderbuss discovery requests here at issue.

24          Preliminarily, in Order No. 3, the Discovery Master appears to have
25   misunderstood the timing of certain events and the content of the Court's
26   Constructive Trust Order. The Discovery Master allowed certain discovery
27   pertaining to two specific entities ("IGWT") that had purchased Bratz inventory

Mitchell
Silberberg &   28
Knupp LLP

2281006.4

                                    20

EXHIBIT    5
PAGE    107

1    from MGA, reasoning that the December 3, 2008 Constructive Trust Order

2    "imposes a constructive trust on the proceeds of MGA's sale of the subject

3    inventory [of Bratz products], and therefore MGA's sale of that inventory to Larian

4    "would constitute an unlawful attempt to circumvent the Court's order and

5    arguably render the transaction ...an anti-competitive business practice..." *See*

6    Ex. 9 to Zeller Decl.: Order No. 3 at 27:14-19. There are at least two flaws in this

7    analysis, of which Mattel is fully aware, but about which its Motion remains silent.

8    First, the sale of Bratz inventory to IGWT took place in July 2008, some 5 months

9    *before* the Court issued its December 3, 2008 Constructive Trust Order. Second,

10   the Court's Constructive Trust Order did *not* impose a constructive trust over the

11   proceeds of the sale of Bratz products; it imposed a constructive trust only over

12   trade marks, service marks and domain names. *See* Hayes Decl. ¶ 2, Ex. 1.

13       In any event, however, Order No. 3 authorized discovery only of the

14   ownership interests, if any, held by a specific and limited group of people in two

15   specific entities that had purchased Bratz inventory in supposed violation of a

16   Court order. The discovery compelled by Order No. 3 in no way is analogous to a

17   demand for every "ownership interest" in any publicly or privately owned entity,

18   held by any host of persons and entities, during a 4 1/2 year period, irrespective of

19   whether the holder ever received or used MGA assets to acquire such an

20   "ownership interest," and regardless of whether the holder of the interest had or

21   has any relationship whatsoever with MGA or Bratz.

22       **E.    The Interrogatories Are Unduly Burdensome, Oppressive, And**

23            **Harassing**

24       Where, as here, interrogatories are so ambiguous that they become

25   burdensome, an objection on that basis should be sustained. *See Wing v.*

26   *Challenge Machinery Company,* 23 F.R.D. 669, 673 (S.D. Ill. 1959) (sustaining

27   objection where interrogatories "are of such broad nature, so ambiguous and so

28

Mitchell
Silberberg &
Knupp LLP

2281006.4



EXHIBIT    5
PAGE    108

1   wanting in specificity that the same are burdensome and oppressive"). The

2   Interrogatories here at issue fall squarely within that category. Hence, Larian's

3   objection is entirely proper.

4          Further, "the court must limit the frequency or extent of discovery otherwise

5   allowed by these rules or by local rule if it determines that [] the burden or expense

6   of the proposed discovery outweighs its likely benefit, considering the needs of the

7   case, the amount in controversy, the parties' resources, the importance of the issues

8   at stake in the action, and the importance of the discovery in resolving the issues."

9   Fed. R. Civ. Proc. 26(b)(2)(C)(iii). In this case, the burden clearly outweighs the

10  virtually nonexistent benefit to be gained by the Interrogatories. As discussed

11  above, the Interrogatories are grossly overbroad, and seek information that is not

12  relevant. The vague and incomprehensible nature of the Interrogatories only

13  increases the burden. *See Wing*, 23 F.R.D. at 673, *supra*. Mattel's Motion to

14  overrule Larian's objection should be denied for this additional reason.

15         F.    **The Interrogatories Are Compound**

16         A party may not serve more than 25 written interrogatories, "including all

17  discrete subparts." Fed. R. Civ. Proc. 33(a)(1). "When a subpart introduces a line

18  of inquiry that is separate and distinct from the inquiry made by the portion of the

19  interrogatory that precedes it, the subpart must be considered a separate

20  interrogatory no matter how it is designated." 7 *Moore's Federal Practice*,

21  § 33.30[2] (Matthew Bender 3d ed.). By seeking the separate stock exchange

22  purchases and other "ownership interests" of Larian, his wife, attorneys, vendors,

23  accountants, consultants, and an indeterminate number of other persons and trusts

24  that might fall within the convoluted definition for "LARIAN TRUST," Mattel has

25  crammed innumerable discrete questions into two interrogatories. *See Safeco of*

26  *America v. Rawsrton*, 181 F.R.D. 441, 446 (C.D. Cal. 1998) (denying motion to

27  compel in part and ruling that interrogatories that asked for the basis for a denial of

Mitchell
Silberberg &
Knupp LLP

28

2281006.4

22

ISAAC LARIAN'S OPPOSITION TO MATTEL, INC.'S MOTION TO COMPEL RESPONSES TO FIRST SET OF INTERROGATORIES (PHASE 2)

EXHIBIT ___5___
PAGE ___109___

1   each request for admission comprising a set of requests for admissions contained a

2   separate subpart for each request for admission); *Collaboration Properties, Inc. v.*

3   *Polycom, Inc.*, 224 F.R.D. 473, 475 (N.D. Cal. 2004) (denying motion to compel

4   and ruling that interrogatories asking for information about 26 different products

5   contained 26 different discrete subparts). The compound nature of the

6   Interrogatories created by the definitions of LARIAN and LARIAN TRUST is

7   further exacerbated by the independently compound definition of "IDENTIFY,"

8   which requires numerous and discrete categories of information about *both* the

9   ENTITY in which an interest has been acquired (*e.g.* name, taxpayer information,

10  place and date of creation, address, telephone number, agent for service of process,

11  addresses and telephone numbers of every officer, director and managing agent)

12  *and* about the details of any interest Larian may ever have had in such entity (*e.g.*

13  type of ownership interest he did or does hold, dates on which he held such an

14  interest, any title or position he ever had, percentage of ownership interest).

15      The cases cited by Mattel do not support its position that the Interrogatories

16  are not compound. In *Swackhammer v. Sprint Corp. PCS*, 225 F.R.D. 658 (D.

17  Kan. 2004), the Court considered an interrogatory which asked the responding

18  party to identify executives who had been disciplined but not terminated for certain

19  separately listed actions. *Swackhammer*, 225 F.R.D. at 663. After reciting the

20  standard that "an interrogatory containing subparts directed at eliciting details

21  concerning a 'common theme' should generally be considered a single question[,]"

22  but that "an interrogatory which contains subparts that inquire into discrete areas

23  should, in most cases, be counted as more than one interrogatory," the Court went

24  on to rule that the subparts in the interrogatory at issue *should be counted as*

25  *separate interrogatories*: "Turning to the disputed Fourth Interrogatory No. 8, the

26  Court finds that it contains five subparts that are not related to a common theme,

27

28

ISAAC LARIAN'S OPPOSITION TO MATTEL, INC.'S MOTION TO COMPEL RESPONSES TO FIRST SET
OF INTERROGATORIES (PHASE 2)

EXHIBIT ____5____

PAGE ____110____

1   and that it should therefore be counted as five separate interrogatories."

2   *Swackhammer*, 225 F.R.D. at 665.

3          In *Pacific Lumber Co. v. National Union Fire Ins. Co. of Pittsburg*, 2005

4   WL 318811 (N.D. Cal. January 5, 2005), an unreported decision, the Court found a

5   compound objection was not well-taken where the interrogatory at issue asked "the

6   same question regarding a *common group of people*." *Pacific Lumber Co.*, 2005

7   WL 318811 at *7 (emphasis added). The "common group of people" consisted of

8   plaintiffs in a lawsuit. *Id.* Distinct remote trusts and each of their respective

9   "current or former trustees, beneficiaries, attorneys, agents, representatives,

10  accountants, vendors, consultants or any other PERSON acting on its behalf,

11  subject to its authority and control," (including natural persons and other entities),

12  to the extent they can be ascertained at all, do not constitute a "common group of

13  people."

14         To allow Mattel to jam numerous, discrete, and unrelated persons and

15  entities into a single, sweeping definition and then call that definition a "common

16  theme," violates the letter and the spirit of Rule 33(a)(1). Larian's objection to the

17  Interrogatories is proper, and Mattel's Motion to overrule it must be denied.

18  **IV.    CONCLUSION**

19         For all of the foregoing reasons, Larian respectfully requests that the

20  Discovery Master deny Mattel's Motion in its entirety.

21

22  DATED: June 26, 2009              RUSSELL J. FRACKMAN
                                      PATRICIA H. BENSON
23                                    MITCHELL SILBERBERG & KNUPP LLP

24

25                                    By: /s/ Patricia H. Benson
                                          Patricia H. Benson
26                                        Attorneys for The MGA Parties

27

28

Mitchell
Silberberg &
Knupp LLP

2281006.4

24

EXHIBIT     5
PAGE       111

**Tiffany Garcia**

| | |
|---|---|
| **From:** | Dylan Proctor |
| **Sent:** | Friday, June 26, 2009 6:06 PM |
| **To:** | MGA / Bryant Team |
| **Subject:** | Fw: Activity in Case 2:04-cv-09049-SGL-RNB Carter Bryant v. Mattel Inc Objection/Opposition (Motion related) |

Pls circ pdf.

Dylan Proctor
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 South Figueroa Street, 3rd Floor
Los Angeles, CA 90017

Direct: (213) 443-3112
Main Phone: (213) 443-3000
Main Fax: (213) 443-3100

E-mail: dylanproctor@quinnemanuel.com
Web: www.quinnemanuel.com

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

---

**From:** cacd_ecfmail@cacd.uscourts.gov
**To:** ecfnef@cacd.uscourts.gov
**Sent:** Fri Jun 26 17:53:37 2009
**Subject:** Activity in Case 2:04-cv-09049-SGL-RNB Carter Bryant v. Mattel Inc Objection/Opposition (Motion related)

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.
\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

### UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

**Notice of Electronic Filing**

The following transaction was entered by Benson, Patricia on 6/26/2009 at 5:53 PM PDT and filed on 6/26/2009

| | |
|---|---|
| **Case Name:** | Carter Bryant v. Mattel Inc |
| **Case Number:** | 2:04-cv-9049 |

6/29/2009

EXHIBIT ___5___
PAGE ___112___

**Filer:**          Isaac Larian
                    MGA ENTERTAINMENT INC., INTERVENOR RE: CV04-09059
                    MGA Entertainment HK Limited
                    MGAE De Mexico SRL De Cv
**Document Number:** 5775

**Docket Text:**
**TO MATTEL, INC.'S MOTION TO COMPEL RESPONSES TO FIRST SET OF INTERROGATORIES OPPOSITION re: MOTION to Compel Answers to Interrogatories of Isaac Larian[5744] filed by Intervenor Defendant MGA ENTERTAINMENT INC., INTERVENOR RE: CV04-09059, Counter Defendants Isaac Larian, MGA Entertainment HK Limited, MGAE De Mexico SRL De Cv. (Attachments: # (1) Declaration of Daniel M. Hayes)(Benson, Patricia)**

**2:04-cv-9049 Notice has been electronically mailed to:**

Adil M Khan    amkhan@glaserweil.com

Alexander H Cote    acote@scheperkim.com, feseroma@scheperkim.com

Alisa Morgenthaler Lever    amorgenthaler@chrisglase.com

Amman A Khan    akhan@glaserweil.com

Brett Dylan Proctor    dylanproctor@quinnemanuel.com, westonreid@quinnemanuel.com

Byron Z Moldo    bmoldo@ecjlaw.com

Caroline H Mankey    cmankey@glaserweil.com

Christian C Dowell    cdowell@kmwlaw.com

Craig A Taggart    craig.taggart@bingham.com, lan.ly@bingham.com

Cyrus S Naim    cyrusnaim@quinnemanuel.com

David C Scheper    dscheper@scheperkim.com, feseroma@scheperkim.com

David M Stern    dstern@ktbslaw.com

David W Foster    david.foster@skadden.com

David W Hansen    dhansen@skadden.com

Diane C Hutnyan    dianehutnyan@quinnemanuel.com, andreahoeven@quinnemanuel.com

Douglas Andrew Winthrop    dwinthrop@howardrice.com

Ilan Wisnia    iwisnia@valleassociates.com

6/29/2009

EXHIBIT ___5___
PAGE ___113___

James I Stang    jstang@pszjlaw.com

Jason D Russell    jrussell@skadden.com, allison.velkes@skadden.com

Jean P Nogues    jpn@msk.com

Jeffrey B Valle    jvalle@valleassociates.com

Jennifer A Lopez    -jennifer.lopez@bingham.com

Joel N Klevens    jklevens@glaserweil.com

John B Quinn    johnquinn@quinnemanuel.com

Jon D Corey    joncorey@quinnemanuel.com

Kenneth A Plevan    kenneth.plevan@skadden.com, drogosa@skadden.com, sumclaug@skadden.com

Kevin E Deenihan    kdeenihan@ktbslaw.com

Larry W McFarland    lmcfarland@kmwlaw.com

Leah Chava Gershon    leah@spertuslaw.com

Linda M Burrow    burrow@caldwell-leslie.com, popescu@caldwell-leslie.com, wilson@caldwell-leslie.com

Lisa M Zepeda    lzepeda@glaserweil.com

Marina Vladimir Bogorad    marina.bogorad@skadden.com

Mark E Overland    moverland@scheperkim.com, jhibino@scheperkim.com

Matthew C Bousquette    caldwell@caldwell-leslie.com

Matthew C Heyn    mheyn@ktbslaw.com

Michael P Kelly    mikelly@skadden.com

Michael T Zeller    michaelzeller@quinnemanuel.com

Nicole S Pelletier    npelletier@glaserweil.com

Patricia H Benson    phb@msk.com, mxb@msk.com

Patricia L Glaser    pglaser@glaserweil.com

Patrick A Fraioli , Jr    pfraioli@ecjlaw.com

Patrick J. Fraioli, Jr.    pdavidson@ecjlaw.com

EXHIBIT ___5___
PAGE ___114___

Peter A Davidson    pdavidson@ecjlaw.com

Peter N Villar    peter.villar@bingham.com, paul.mcconnell@bingham.com

Randa A F Osman    randaosman@quinnemanuel.com

Richard Giles Stoll , III    rstoll@glaserweil.com

Richard M Pachulski    jstang@pszjlaw.com

Robert C O'Brien    obrien.robert@arentfox.com

Robyn Aronson    robynaronson@dwt.com, frankromero@dwt.com

Russell J Frackman    rjf@msk.com, jpn@msk.com, krs@msk.com, mem@msk.com, phb@msk.com, rbs@msk.com

Sandra L Tholen    tholen@caldwell-leslie.com, mejia@caldwell-leslie.com, wilson@caldwell-leslie.com

Sanford I Weisburst    sandyweisburst@quinnemanuel.com

Scott E Gizer    sgizer@glaserweil.com

Sophia S Lau    slau@glaserweil.com

Stan Karas    stankaras@quinnemanuel.com, westonreid@quinnemanuel.com

Thomas J Nolan    tnolan@skadden.com, carl.roth@skadden.com, marcus.mumford@skadden.com

Thomas P Lambert    tpl@msk.com

Todd E Gordinier    todd.gordinier@bingham.com, craig.taggart@bingham.com, julie.valenzuela@bingham.com, karina.ward@bingham.com, lan.ly@bingham.com, michael.mortenson@bingham.com

**2:04-cv-9049 Notice has been delivered by First Class U. S. Mail or by fax to: :**

Cheryl Plambeck
Davis & Gilbert LLP
1740 Broadway
New York, NY 10019

Kien C Tiet
Stern and Goldberg
6345 Balboa Boulevard, Suite 200
Encino, CA 91316

Peter H Bonis
Peter H. Bonis Law Offices

6/29/2009

EXHIBIT 5
PAGE 115

1990 N. California Blvd, 8th Floor
Walnut Creek, CA 94596

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**C:\DOCUME~1\MXB\LOCALS~1\TEMP\WDGX\8D8\OPEN\0001\Opposition to
Motion to Compel (2287029).PDF
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=6/26/2009] [FileNumber=8012327-0]
[7dd5bdc031ca411b50f001288da846aa7aa6efac6553769faecde4ae8dd9dd4018cf
07437d3ef5fb444d14bd0c0393b2081c4c2dc81fb03016d7fc9525ee069b]]
**Document description:**Declaration of Daniel M. Hayes
**Original filename:**C:\DOCUME~1\MXB\LOCALS~1\TEMP\WDGX\8D8\OPEN\0001\CV 04-9049
SGL (RNBx) Decl of Dan Hayes re Opp to Compel (2286991).PDF
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=6/26/2009] [FileNumber=8012327-1]
[a0b93ff8c53992ae8734c2d30ee47d96d3d07f7882f2452e06a769e6b434cfab28ba
ff6d1ed7cc1a2de54788756dcf4c9025d5889d9a8b26dd458cc16c8b553a]]

6/29/2009

EXHIBIT ___5___
PAGE ___116___