MELINDA HAAG (State Bar No. 132612)
mhaag@orrick.com
ANNETTE L. HURST (State Bar No. 148738)
ahurst@orrick.com
WARRINGTON S. PARKER III (State Bar No. 148003)
wparker@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone: +1-415-773-5700
Facsimile: +1-415-773-5759

WILLIAM A. MOLINSKI (State Bar No. 145186)
wmolinski@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017
Telephone: +1-213-629-2020
Facsimile: +1-213-612-2499

Attorneys for MGA Parties

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | Case No. CV 04-9049-SGL (RNBx)<br><br>Consolidated with: Case No. CV 04-9059 and Case No. CV 05-2727<br><br>**DISCOVERY MATTER**<br>[To Be Heard by Discovery Master Robert O'Brien Pursuant to Order of January 6, 2009]<br><br>**MGA ENTERTAINMENT, INC.'S MOTION TO COMPEL FURTHER RESPONSES TO MGA'S REQUESTS FOR PRODUCTION OF DOCUMENTS**<br><br>Date:          TBD<br>Time:          TBD<br>Courtroom:  TBD<br><br>**Phase 2**<br>Discovery Cutoff:      December 11, 2009<br>Pretrial Conference: March 1, 2010<br>Trial Date:              March 23, 2010 |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................... 1

STATEMENT OF FACTS ...................................................................................... 1

    A.    MGA Served Discovery Prior to Bifurcation and the Stay of Phase 2 Discovery ........................................................................... 1

    B.    Mattel's Unwillingness to Engage In a Meet and Confer Dialogue ........................................................................................ 3

ARGUMENT .......................................................................................................... 6

I.    MATTEL'S OBJECTIONS ARE IMPROPER .......................................... 6

    A.    Where Mattel Agrees to Produce, Mattel Must Confirm That It Has Produced Or Produce By Date Certain .................................... 7

    B.    Mattel Improperly Limits Its Agreement To Produce ..................... 9

        1.    Mattel Improperly Limits to Information that It Unilaterally Deems At Issue ................................................ 9

        2.    Mattel Improperly Limits Responses Regarding Particular Custodians to Facts as Alleged by Mattel ................................................................................ 11

    C.    Mattel's Wholesale Refusal to Produce Responsive Documents is Improper .................................................................. 12

        1.    If A Request Is Duplicative, Then Mattel Need Only Confirm That It Has Produced Documents .......................... 13

        2.    Mattel's Boilerplate General and Specific Objections Do Not Justify Its Failure to Produce .......................... 13

        3.    Mattel States That It Simply "Will Not Produce" In Response to Many Proper Requests .................................. 16

II.    MGA'S REQUESTS SEEK INFORMATION DISCOVERABLE IN PHASE 2 ................................................................................................... 17

    A.    "Bratz" and "My Scene" Products ................................................ 17

    B.    Serial Copying of Non-Bratz Products ......................................... 20

    C.    Unfair Competition Through Improper Interference with MGA's Business Relationships .................................................... 21

    D.    Unfair Competition Through Improper Restraints on Employee Mobility ....................................................................... 22

    E.    Knowledge of Claims and Statute of Limitations ......................... 22

    F.    Document Retention and Destruction ............................................ 25

    G.    Damages and Other Relief Sought ................................................ 26

    H.    Custodians and Subject Matter Identified in Mattel's Initial Disclosures .................................................................................... 28

III.    MATTEL UNILATERALLY LIMITS THE SOURCES FROM WHICH IT IS COLLECTING DOCUMENTS .......................................... 29

CONCLUSION ...................................................................................................... 30

# TABLE OF AUTHORITIES

## FEDERAL CASES

Page(s)

A. Farber and Partners, Inc. v. Garber,
234 F.R.D. 186, 188 (C.D. Cal. 2006) ...................................................... 13, 15

Bible v. Rio Props., Inc.,
246 F.R.D. 614, 618 (C.D. Cal. 2007) ............................................................ 17

Buckminster v. Prudential Fin., Inc.,
No. 07-C133, 2008 WL 624532, *2 (D. Neb. March 3, 2008) ....................... 17

Computer Task Group, Inc. v. Brotby,
364 F.3d 1112, 1117 (9th Cir. 2004) .............................................................. 15

Holiday v. Extex,
447 F. Supp. 2d 1131, 1140 (D. Haw. 2006) ................................................... 6

Jackson v. Montgomery Ward & Co., Inc.,
173 F.R.D. 524, 528-29 (D. Nev. 1997) .......................................................... 14

Lamoureux v. Genesis Pharmacy Servs., Inc.,
226 F.R.D. 154, 159 (D. Conn 2004) ............................................................... 7

Miller v. Pancucci,
141 F.R.D. 292, 296 (C.D. Cal. 1992) .............................................................. 6

Mintz v. Dietz & Watson, Inc.,
No. 05-C1470, 2008 WL 5147234 (S.D. Cal. Dec. 5, 2008) ........................... 7

Nagele v. Elec. Data Sys. Corp,
193 F.R.D. 94, 109 (W.D.N.Y. 2000) ............................................................ 14

Oakes v. Halvorsen Marine, Ltd.,
179 F.R.D. 281, 283 (C.D. Cal. 1995) .............................................................. 6

Oppenheimer Fund v. Sanders,
437 U.S. 340 (1978) ....................................................................................... 10

Orleman v. Jumpking, Inc.,
No. 99-C2522, 2000 WL 1114849, *7 (D. Kan. July 11, 2000) ..................... 15

Ramirez v. Nicholson,
No. 06-C0546, 2007 WL 2990283, at *2
(S.D. Cal. Oct. 11, 2007) .................................................................................. 6

Sanyo Laser Prods. v. Arista Records,
214 F.R.D. 496, 499 (S.D. Ind. 2003) .............................................................. 6

Streck, Inc. v. Research & Diagnostic Sys. Inc.,
250 F.R.D. 426, 435 (D. Neb. 2008) ................................................................ 7

# TABLE OF AUTHORITIES
### (Cont.)

## FEDERAL CASES

**Page(s)**

<u>St. Paul Reinsurance Co., Ltd. v. Commercial Fin. Corp.</u>,
  198 F.R.D. 508, 514 (N.D. Iowa 2000)................................................... 15, 16

<u>Sullivan v. Prudential Ins. Co. of America</u>,
  233 F.R.D. 573, 575 (C.D. Cal. 2005) ........................................................ 17

<u>Swackhammer v. Sprint Corp. PCS</u>,
  225 F.R.D. 658, 662 (D. Kan. 2004).......................................................... 16

<u>Walker v. Lakewood Condo. Owners Ass'n</u>,
  186 F.R.D. <u>584</u>, 587 (C.D. Cal. 1999) ...................................................... 14

## FEDERAL STATUTES

Fed. R. Civ. P. 26.......................................................................................... 6, 17

Fed. R. Civ. P. 26(a)(1)(A)(i) ............................................................................ 28

Fed. R. Civ. P. 26(b)(1) ............................................................................... 6, 17

Fed. R. Civ. P. 26(b)(2) .............................................................................. 29, 30

Fed. R. Civ. P. 34.............................................................................................. 6

Fed. R. Civ. P. 34(b).......................................................................................... 6

Fed. R. Civ. P. 34(b)(2)(B).................................................................................. 8

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, at a hearing before Discovery Master Robert C. O'Brien that will occur on a date and at a time to be determined by the Discovery Master, MGA Entertainment, Inc. ("MGA") will, and hereby does, move the Discovery Master for an order:

(1)     compelling Mattel, Inc. ("Mattel") to produce all relevant, non-privileged documents in Mattel's custody, possession or control which are responsive to the following Requests for Production of Documents served by MGA in Case No. CV 04-9049:

- Set One, Nos. 1-31, 34-36, 40-42, 44-46, 68-92, 93-98, 100, and 105-115;
- Set Two Nos. 116-117, 123-133, 168, 170-173, 176-177 and 180;
- Set Three 182-383;
- Set Four Nos. 384-435, and 437-469;
- Set Five Nos. 471-483, 485, 492-525;
- Set Six Nos. 540-567 and 569;
- Set Seven Nos. 572-590, 594-600, 603, 605-644, 646, 648-657, 674-690, 693-695, 697-735, 741, 743-746, and 748-758;
- [Second] Set Seven Nos. 572(2)-574(2); and
- Set Eight Nos. 770-794;

and responsive to the following requests served by MGA in Case No. CV 04-9059:

- Set One Nos. 1-43, 47, 49-98, 100-167, 170-171, 175-179, 184-185, 189, 191-223, 252-253, 255-257, 272-280, 283, 286-295, 298, 301, 308, 310, 312, 314, 316, 318-319, and 321-322;
- Set Two Nos. 333-349; and
- Set Three Nos. 351-361;

(the "Requests at Issue");

MTN TO COMPEL FURTHER RESPONSES TO RFP
CV 04-9049 SGL (RNBx)

(2)     compelling Mattel to provide MGA with a privilege log sufficient for MGA to assess the validity of Mattel's privilege claims with respect to all documents withheld on privilege grounds; and

(3)     overruling all of Mattel's objections to the Requests at Issue.

This Motion is made pursuant to Federal Rules of Civil Procedure 26, 34 and 37 and the Order appointing the Discovery Master on the grounds that Mattel has failed to confirm production in response to any of the Requests at Issue, relying instead on a litany of improper objections that lack any merit.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Diana Rutowski and Separate Statements filed concurrently herewith, the records and files of this Court, any argument to be presented upon the hearing of this Motion, and all other matters of which the Court may take judicial notice.

## <u>Conference of Counsel</u>

The parties met and conferred concerning the issues regarding this motion on August 11, 2009 and dates thereafter.

Dated:  September 23, 2009          ORRICK, HERRINGTON & SUTCLIFFE LLP


By:  _____/s/ Diana Rutowski_____
                    Diana Rutowski
        Attorneys for MGA ENTERTAINMENT, INC.,
        MGA ENTERTAINMENT HK, LTD., MGA de
        MEXICO, S.R.L. de C.V., and ISAAC LARIAN

MTN TO COMPEL FURTHER RESPONSES TO RFP
CV 04-9049 SGL (RNBx)

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

The parties' discovery obligations in this case did not end with the Phase 1 trial.  The case is ongoing, and so is each party's duty to produce discoverable information regarding Phase 2 issues.  Despite this obligation, Mattel withholds documents, or refuses to confirm full production of documents, central to MGA's claims in Phase 2.  After a month of unproductive meet and confer efforts, MGA seeks the Discovery Master's assistance to ensure that Mattel will produce documents in Phase 2 responsive to its requests for production.

At issue in Phase 2 are MGA's affirmative claims that Mattel has engaged in trade dress infringement, as well as a broad variety of unfair trade practices, from serial copying of MGA products, to threatening retailers and suppliers to cease doing business with MGA, to intimidating employees and industry groups in order to prevent MGA from fairly competing.  Prior to bifurcation and the stay of Phase 2 discovery, MGA served numerous requests for production relating to Phase 2 claims and defenses.  Now, MGA seeks confirmation from Mattel that it has or will produce, and is not withholding, all non-privileged documents responsive to properly propounded requests despite its assertion of improper objections.  Mattel refuses to provide any such confirmation.  MGA is entitled to discovery in connection with its claims and defenses in Phase 2, and having reached no agreement after a month of delay tactics by Mattel's lawyers, MGA hereby moves for an order compelling Mattel to produce.

## STATEMENT OF FACTS

**A.    MGA Served Discovery Prior to Bifurcation and the Stay of Phase 2 Discovery.**

On July 2, 2007, the Court issued an order bifurcating the trial on the issues in the consolidated proceeding into two phases.[1]  While discovery on Phase 1 issues

---

[1] Rutowski Decl. Ex. 14 (Docket Document No. 608)

1   proceeded, on February 4, 2008 the Court issued an order staying discovery relating
2   to Phase 2 issues.[2]  The issues in Phase 2 include MGA's claims of false
3   designation of origin, unfair competition, dilution, unjust enrichment, and damages
4   for these claims.[3]  Mattel also has Phase 2 counterclaims, including, for the
5   purposes of this motion, misappropriation of trade secrets, conversion (non-Bratz),
6   unfair competition, and damages for its Phase 2 claims.[4]  In ruling on motions to
7   compel during the stay of Phase 2 discovery, the Discovery Master and the Court
8   explicitly limited discovery obligations to Phase 1, stating that discovery relating to
9   Phase 2 issues could be sought in Phase 2.[5]  The issues in Phase 1 were tried in
10  2008, and on February 11, 2009, Judge Larson stated unequivocally that discovery
11  for Phase 2 was starting over with a "clean slate."[6]

12          Prior to the stay of Phase 2 discovery, MGA served the following requests on
13  Mattel, and Mattel served the following responses (all attached as exhibits to the
14  Rutowski Decl.):

15  <u>*Bryant v. Mattel, Inc.*</u>, Case No. CV 04-9049 SGL (RNBx):[7]
16      • MGA's First Set of Requests (1-115) (Nov. 22, 2006), Ex. 18
              ○ Mattel's Responses (Jan. 15, 2007), Ex. 19
17      • MGA's Second Set of Requests (116-181) (Mar. 27, 2007), Ex. 20
              ○ Mattel's Responses (Apr. 26, 2007), Ex. 21
18            ○ Mattel's Supp. Responses (June 22, 2007), Ex. 22
              ○ Mattel's Second Supp. Responses (Apr. 17, 2009), Ex. 23
              ○ Mattel's Third Supp. Responses (Apr. 29, 2009)
19      • MGA's Third Set of Requests (182-383) (Mar. 27, 2007), Ex. 24
              ○ Mattel's Responses (Apr. 26, 2007), Ex. 25
20            ○ Mattel's Supp. Responses (June 22, 2007), Ex. 26
21      • MGA's Fourth Set of Requests (384-469) (June 6, 2007), Ex. 27

22  [2] Docket Document No. 1931.
    [3] <u>See</u>, MGA's Complaint For False Designation of Origin, Affiliation, Association
23  or Sponsorship; unfair Competition; Dilution; and Unjust Enrichment in Case No.
    05-2727 filed April 13, 2005 ("MGA's Complaint"), Rutowski Decl. Ex. 15 at 98-
24  103
    [4] <u>See</u> Mattel Inc.'s Fourth Amended Answer in Case No. 05-2727 and
25  Counterclaims ("Mattel's Fourth Amended Answer"), Rutowski Decl. Ex. 16._
    [5] <u>See, e.g.</u>, Docket Document No. 3562 (May 11, 2008) ("[T]he documents are
26  relevant, if at all, to Phase 2 claims and defenses and not to Phase 1. At present,
    Phase 2 discovery is stayed.").
27  [6] Transcript of hearing on February 11, 2009, Rutowski Decl. Ex. 17 at 321.
    [7] These will be referred to as the RFPs from "9049" or "9049 RFPs".  The requests
28  and responses are attached to as exhibits to the Declaration of Diana Rutowski
    ("Rutowski Decl.") only when they pertain to requests at issue in this motion.

    o  Mattel's Responses (July 6, 2007), Ex. 28
- MGA's Fifth Set of Requests (470-531) (Aug. 3, 2007), Ex. 29
    o  Mattel's Responses (Sept. 4, 2007), Ex. 30
    o  Mattel's Corrected Responses (Jan. 9, 2009), Ex. 31
    o  Mattel's Supp. Responses (Apr. 17, 2009)
    o  Mattel's Second Supp. Responses (Apr. 29, 2009)
- MGA's Sixth Set of Requests (540-571) (Nov. 16, 2007), Ex. 32
    o  Mattel's Responses (Dec. 17, 2007), Ex. 33
- MGA's Seventh Set of Requests (572-766) (Nov. 29, 2007), Ex. 34.
    o  Mattel's Responses (Dec. 31, 2007), Ex. 35
- MGA's [Second] Seventh Set of Requests (572-574) (Dec. 21, 2007), Ex.36[8]
    o  Mattel's Responses (Jan. 22, 2008), Ex. 37.
- MGA's Eighth Set of Requests (770-797) (Dec. 28, 2007), Ex. 38
    o  Mattel's Responses (Jan. 28, 2008), Ex. 39
    o  Mattel's Amended Responses (Jan. 30, 2008), Ex. 40

*Mattel, Inc. v. Bryant and MGA Entertainment, Inc.*, CV 04-9059 NM (RNBx):[9]
- MGA's First Set of Requests (1-332) (Jan. 31, 2005), Ex. 41
    o  Mattel's Responses (Mar. 2, 2005), Ex. 42
    o  Mattel's Supp. Responses (misc.) (Jan. 5, 2007), Ex. 43
    o  Mattel's Second Supp. Responses (misc.) (July 16, 2007), Ex. 44
    o  Mattel's Corrected Second Supp. Responses (misc.) (Aug. 16, 2007), Ex. 45
    o  Mattel's Third Supp. Responses (misc.) (January 18, 2008)., Ex. 46
- MGA's Second Set of Requests (333-350) (Apr. 13, 2005), Ex. 47
    o  Mattel's Responses (May 13, 2005), Ex. 48
- MGA's Third Set of Requests (351-361) (Feb. 14, 2007), Ex. 49
    o  Mattel's Responses (Mar. 16, 2007), Ex. 50

Served prior to the stay of Phase 2 discovery, many of these requests were directed to Phase 2 issues, such as trade dress similarities between "Bratz" and "My Scene" products, the serial copying by Mattel of MGA products, and Mattel's threatening and intimidating of retailers, industry groups, and employees in an effort to interfere unfairly with MGA's business. MGA is entitled to discovery on these issues in Phase 2.

## B.   Mattel's Unwillingness to Engage In a Meet and Confer Dialogue.

During Phase 1, the parties engaged in meet and confer efforts regarding many of these requests, and motions to compel were filed targeting requests that seek information relevant to Phase 1 issues.[10]  Despite these efforts, Mattel's

---

[8] MGA served two Seventh Sets of Requests, both including RFPs 572-574.  The requests from this [Second] Seventh Set will be referred to as 572(2), 573(2) and 574(2) to avoid confusion.
[9] These will be referred to as the RFPs from "9059" or "9059 RFPs".
[10] The requests subject to prior motions to compel are not part of the present Motion.  However, MGA anticipates filing a separate motion to confirm compliance with the orders to the extent that they granted MGA's motions to

1   responses to the written requests identified in this Motion remain wholly inadequate

2   and its objections entirely improper in Phase 2.[11]  They range from agreeing to

3   produce "subject to" Mattel's objections, to limiting agreement to produce in an

4   improper way, to affirmatively stating that Mattel will not produce.

5         Once the stay on Phase 2 issues was lifted and Mattel's duty to produce

6   information discoverable in Phase 2 was renewed, MGA again sought confirmation

7   from Mattel that it has or will produce responsive documents, that it is not

8   withholding documents based on its numerous improper objections, and that it will

9   produce in response to those requests where it previously refused to provide

10  responsive materials.  Counsel for MGA sent Mattel a letter on July 28, 2009

11  identifying many of the requests at issue in this motion and requesting a meet and

12  confer conference.  Declaration of Diana Rutowski ("Rutowski Decl.") Ex. 1.

13  Thereafter, the parties engaged in meet and confer efforts over the next three to four

14  weeks, during which counsel for Mattel failed to participate meaningfully as

15  detailed in the Declaration of Diana Rutowski filed in support of this motion.

16        For example, MGA repeatedly asked in writing and during meet and confer

17  teleconferences that Mattel confirm that it has produced the documents that it

18  agreed to produce.  Prior to engaging in any dialogue about Mattel's responses,

19  counsel for Mattel demanded a written showing of relevance with respect to each

20  request by MGA.  Rutowski Decl. ¶ 9.  This is directly contrary to the position

21  Mattel took in connection with its recent Motion to Compel MGA Mexico to

22  Produce Documents and Things:  "Mattel does not have an obligation to

23  preemptively demonstrate the relevance of its requests.  If MGA Mexico believes

24  certain requests are irrelevant, it should articulate why each purportedly irrelevant

25  compel in light of Mattel's continuing discovery obligations in Phase 2.  As will be

26  detailed in that motion, Mattel has refused to confirm compliance with Phase 1 discovery orders, with respect to Phase 2 discovery.

27  [11] While this may appear to be a very large number of requests, to put the numbers in context, by the end of Phase 1 discovery Mattel had propounded 2,889 Requests

28  for Production, and MGA had produced four million, two hundred thousand pages of documents.

1  request is, in fact, irrelevant." Id. ¶¶ 10-11.  When questioned on this issue, counsel

2  for Mattel confirmed that Mattel was not abandoning that position.  Id. ¶ 12.

3        Nevertheless, when a meet and confer call went forward on August 19, 2009,

4  Mattel refused to "confer."  Id. ¶¶ 13-22.  Mattel refused to confirm whether it was

5  withholding responsive documents based on its objections, absent a relevancy

6  showing by MGA.  Id., ¶¶ 15-17.   In an effort to move the meet and confer

7  forward, counsel for MGA offered to engage in a dialogue on this issue and began

8  to discuss each RFP at issue, pointing out why the documents sought are

9  discoverable in Phase 2.  Id., ¶ 18.   After three requests, it became clear that

10  counsel for Mattel was not going to engage in a dialogue at all, but rather sought to

11  take MGA's deposition on its positions in the case.  Id., ¶ 19.   Though counsel for

12  Mattel had more than three weeks to review the requests and to prepare for the call,

13  they could not or would not articulate a response to any of the requests MGA had

14  put at issue.  Id., ¶¶ 20-21.   Mattel refused to provide any indication as to whether

15  or not it agreed or disagreed with MGA's articulation of relevance.  Id., ¶ 20.

16  Instead, Mattel's counsel stated that it would get back to MGA by some uncertain

17  date.  Id., ¶ 20.   Because Mattel's counsel refused to "meet and confer," MGA

18  declined to continue its unilateral "discussion" of relevance to Phase 2 and ended

19  the call.  Id., ¶ 21.

20        Seriously concerned about Mattel's commitment to continue producing

21  information in Phase 2 responsive to discovery requests previously served, MGA

22  sent Mattel a follow up letter on August 20, 2009.  Id., ¶ 24.  In the letter, MGA

23  identified additional requests seeking information discoverable in Phase 2.  Id., ¶

24  24.  Mattel's response to this letter was unproductive, making it clear that the

25  parties are at an impasse.  Id., ¶ 25.   Mattel has stonewalled MGA's discovery

26  efforts.

27

28

MTN TO COMPEL FURTHER RESPONSES TO RFP
CV 04-9049 SGL (RNBx)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ARGUMENT**

**I.    <u>MATTEL'S OBJECTIONS ARE IMPROPER.</u>**

MGA's requests for production pursuant to Federal Rules of Civil Procedure 26 and 34 are reasonably calculated to lead to the discovery of admissible evidence in Phase 2.  Fed. R. Civ. P. 26(b)(1).  Courts broadly construe the scope of discovery under Rule 26(b).  <u>See</u>, <u>Ramirez v. Nicholson</u>, No. 06-C0546, 2007 WL 2990283, at *2 (S.D. Cal. Oct. 11, 2007) (Rule 26 "is liberally construed to provide wide-ranging discovery of information necessary for parties to evaluate and resolve their dispute") (citing <u>Oakes v. Halvorsen Marine, Ltd.</u>, 179 F.R.D. 281, 283 (C.D. Cal. 1995); <u>Holiday v. Extex</u>, 447 F. Supp. 2d 1131, 1140 (D. Haw. 2006) ("Relevancy, for purposes of Rule 26(b), is a broad concept that is construed liberally. 'Discovery is not limited to the issues raised only in the pleadings, but rather it is designed to define and clarify the issues.'") (citing <u>Miller v. Pancucci</u>, 141 F.R.D. 292, 296 (C.D. Cal. 1992)); <u>Sanyo Laser Prods. v. Arista Records</u>, 214 F.R.D. 496, 499 (S.D. Ind. 2003) ("When the discovery sought appears relevant, the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.").

The requests at issue in this motion describe with reasonable particularity each item or category of items to be inspected, as required by Rule 34(b).  Fed. R. Civ. P. 34(b).  In response, Mattel must "either state that inspection and related activities will be permitted or state an objection to the request, including the reasons."  <u>Id</u>.  "An objection to part of a request must specify the part and permit inspection of the rest."  <u>Id</u>.  Mattel has failed to comply with these requirements.  As detailed below and in the Separate Statements, Mattel's objections are unfounded.  In granting this motion to compel, the Discovery Master should

1    overrule all of Mattel's objections and order that the requests be answered without

2    objection and that all non-privileged responsive documents be produced.

3        ### A.    Where Mattel Agrees to Produce, Mattel Must Confirm That It
         ### Has Produced Or Produce By Date Certain.

4

5        In response to many of the requests at issue, Mattel raises a litany of

6    boilerplate objections and then either agrees to produce non-privileged responsive

7    documents or states that it has produced non-privileged responsive documents.[12]

8    During meet and confer efforts MGA asked Mattel to confirm that (1) it has

9    diligently searched for, collected and produced <u>all</u> non-privileged documents

10   responsive to the request, and (2) it has not narrowed the scope of its investigation,

11   collection or production based on its objections.[13]

12       As the Discovery Master found when granting in part Mattel's Motion to

13   Compel MGA Mexico to Produce Documents and Things, "there is an important

14   distinction between promising to produce documents and actually producing them."

15   Order No. 52, dated August 26, 2009, Rutowski Decl. Ex. 54 at 2484. Mattel

16   argued in support of that motion that an agreement to produce documents is not

17   sufficient to comply with its discovery obligations.  <u>See</u> Mattel's Motion to Compel

18   MGA Mexico To Produce Documents and Things, Rutowski Decl. Ex. 52 (Docket

19   Document No. 5971) at 13:7-14:13.  In Mattel's words, if information has not been

20   disclosed, "then, plainly, it remains to be compelled."  <u>Id</u>. (citing <u>Lamoureux v.</u>

21   <u>Genesis Pharmacy Servs., Inc.</u>, 226 F.R.D. 154, 159 (D. Conn 2004); <u>Mintz v.</u>

22   <u>Dietz & Watson, Inc.</u>, No. 05-C1470, 2008 WL 5147234 (S.D. Cal. Dec. 5, 2008);

23   <u>Streck, Inc. v. Research & Diagnostic Sys. Inc.</u>, 250 F.R.D. 426, 435 (D. Neb.

24   2008)).  The same rule applies to Mattel.

25   _____
     [12] 9049 RFPs: 17, 42, 46, 68, 75, 89, 92, 105, 114-117, 123-124, 126, 128-129,
26   131-133, 172-173, 188, 385-387, 395, 398, 419, 475, 481, 483, 485, 502, 541-542,
     544, 547, 561-562, 583, 586, 605-610, 653-655, 657, 676, 699-703, 716-719, 726-
27   728, 732-733, 757, 785.
       9059 RFPs: 82-87, 89-90, 96-97, 189, 280, 283, 286-295, 298, 301, 308, 310,
28   312, 314, 316, 318-319, 321-322, 331-332, 338-342, 348-349, 351-361.
     [13] <u>See e.g.</u>, Rutowski Decl. ¶ 24, Ex. 12 (August 20, 2009 letter to James Webster).

1    Moreover, searching through Mattel's production reveals gross deficiencies
2    with respect to requests in response to which Mattel has agreed to produce.  For
3    example, 9049 RFP 14 seeks documents regarding the creation and development of
4    Mattel "My Scene" Themes, including "My Bling," which is relevant to MGA's
5    claims and defenses in Phase 2.  See, e.g. Supplemental Responses of MGA
6    Entertainment Inc. to Interrogatories 51-55 and 64 Pursuant to Order of April 14,
7    2009, Rutowski Decl. Ex. 53.  A search of Mattel's production shows no document
8    responsive to the search string "My Bling."  Rutowski Decl. ¶ 26.   Similarly,
9    Mattel agrees to produce documents in connection with 9059 RFPs 82-90 and 97,
10   which seek documents regarding "Toon Teens."  In 2002 and 2003, Mattel
11   conducted an investigation into whether or not "Bratz" copied "Toon Teens," an
12   issue relevant to at least MGA's statute of limitations and laches affirmative
13   defenses, as well as to Mattel's claim of trade secrets in "Bratz".  Despite this
14   investigation lasting over two years, only seventeen documents in Mattel's
15   production are responsive to the search string "Toon Teens." Id., ¶ 27.

16   As Mattel has not limited its agreement to produce in response to these
17   requests (except for the general statement "subject to and without waiving the
18   foregoing general and specific objections"), Mattel should not be withholding
19   subject to its objections.  Under Rule 34(b)(2)(B), if Mattel intended to withhold
20   documents, it would have had to so state with specificity in its response.  MGA is
21   entitled to confirmation of production of all non-privileged responsive documents,
22   and, as it pointed out during meet and confer efforts, such confirmation is all that is
23   required to end the dispute as to these requests.  In the absence of such confirmation
24   from Mattel, MGA requests that the Court compel Mattel to confirm production of
25   all non-privileged materials (and production, to the extent it has not already
26   occurred), by a date certain.[14]

27   ────────────────
28   [14] Pursuant to Order 52, which granted Mattel's motion to compel 318 requests in
response to which MGA Mexico promised to provide responsive documents
without a separate statement by Mattel, MGA does not include these requests in its

- 8 -

1

**B.      Mattel Improperly Limits Its Agreement To Produce.**

2

In response to many of the requests at issue, Mattel states that it will produce

3

documents, but improperly limits its agreement to do so by unilaterally rewriting

4

the terms of the request or agreeing to produce only documents sufficient to show

5

some subset of the requested information.[15]  As with the requests above, MGA has

6

sought from Mattel a representation that it has not narrowed the scope of its

7

investigation, collection or production based on its objections <u>or</u> its rephrasing of

8

the request language in connection with its agreement to produce.  <u>See e.g.</u>,

9

Rutowski Decl. ¶ 24, Ex. 12 (August 20, 2009 letter to James Webster).  MGA

10

submits that the Discovery Master need only turn to Mattel's responses to find the

11

limitations on its agreement to produce unsupported and improper.  Nevertheless,

12

for the reasons set forth below and those detailed in the Separate Statements, these

13

requests seek discoverable information in Phase 2 and Mattel should be compelled

14

to produce all responsive non-privileged documents, without limitation.

15

**1.      Mattel Improperly Limits to Information that It Unilaterally
        Deems At Issue.**

16

First, Mattel's boilerplate response to many requests limits production to

17

some subset of matters at issue, as unilaterally defined by Mattel.[16]  Mattel has

18

failed to confirm whether or not it is withholding responsive documents based on

19

its rewriting of MGA's request.  For example, Mattel improperly limits its

20

responses to 9049 RFPs 40-41 (regarding communications with specific entities

21

22

Separate Statements filed herewith.  However, pursuant to the Discovery Master's

23

Order, MGA does include Separate Statements for the remaining requests subject to this Motion, in response to which Mattel does not agree to produce either all or a

24

subset of discoverable information.  Order No. 52, dated August 26, 2009, Rutowski Decl. Ex. 54 at 2488.

25

[15] 9049 RFPs: 1-31, 40-41, 44-45, 69-74, 76, 79-81, 83-88, 90-94, 106-112, 168, 171, 182-384, 388-394, 396-397, 300-419, 420-422, 431-432, 452-454, 456-457,

26

460-463, 466, 516-518, 525, 565, 573, 642-643, 758.
   9059 RFPs: 81, 88, 108-109, 132, 136, 333-337.

27

[16] 9049 RFPs: 1, 17, 40-41, 44-45, 83-88, 90-91, 168, 171, 384, 388-394, 396-397, 400-419, 420-422, 431-432, 452-454, 456-457, 460-463, 466, 525, 758.  9059

28

RFPs: 333-335.  Mattel's improper limitations in response to these requests are detailed further in the Separate Statements.

1   about particular awards in the toy industry), to communications "which are alleged

2   in MGA's Complaint."  This is clearly an improper limitation, as MGA need not

3   allege a particular communication in its Complaint for such a communication to be

4   discoverable.  In Oppenheimer Fund v. Sanders, 437 U.S. 340 (1978), the Supreme

5   Court explained that "[c]onsistently with the notice-pleading system established by

6   the Rules, discovery is not limited to issues raised by the pleadings, for discovery

7   itself is designed to help define and clarify the issues" and "the court should and

8   ordinarily does interpret 'relevant' very broadly to mean matter that is relevant to

9   anything that is or may become an issue in the litigation."  Id. at 351 and n.12.

10      Second, Mattel improperly limits a number of its responses to accused

11   products or "aspects of MY SCENE products" that MGA has accused of

12   infringement and/or "aspects of the Bratz products" that MGA claims were

13   infringed.[17]  Such limitations are unjustified for a number of reasons.  MGA has

14   brought a false designation of origin claim, which includes allegations of trade

15   dress infringement detailed in MGA's interrogatory responses.[18]  MGA is entitled

16   to discovery on all aspects of these products, not just those that Mattel deems are at

17   issue.  Additionally, MGA has brought an unfair competition claim based on

18   Mattel's serial copying of MGA products.  MGA is entitled to discovery on all

19   aspects of the products under this claim as well, and not just its infringement

20   theory.

21      Mattel's boilerplate limitation also renders its response to some of the

22   requests nonsensical.  For example, 9049 RFP 13 seeks documents relating to

23   market research, projections or plans pertaining to the release of "My Scene"

24   products.  Mattel's response that it will produce documents "relating to the

25   marketing of the aspects of the 'My Scene' products that MGA has accused of

26   infringement" does not make sense – what does it mean to market a particular

27

28

[17] 9049 RFPs: 2, 4-7, 10-31, 69-74, 76, 79- 81, 92, 94, 106-112.
[18] See e.g., Supplemental Responses of MGA Entertainment Inc. to Interrogatories
48 Through 50 dated May 29, 2009, Rutowski Decl. Ex. 55.

MTN TO COMPEL FURTHER RESPONSES TO RFP
CV 04-9049 SGL (RNBx)

aspect of a product?  Mattel's limitation to "aspects" of products that it unilaterally deems at issue should be stricken.

Third, Mattel limits its agreement to produce in response to additional requests to documents "sufficient to show" some subset of the information requested.[19]   For example, 9049 RFPs 90 and 91 seek information about the commercial success or recognition of "My Scene" and "Bratz", including market research.  Mattel limits its response to documents sufficient to show the overall sales of these products.  Mattel's limitation is too narrow because in addition to overall sales, documents such as market research reports showing the relative success of "My Scene" and "Bratz" would clearly be relevant to MGA's claims and defenses, including MGA's claim that when Mattel's products failed it began to copy MGA's successful products.  Mattel's limitations on these requests are unjustified, and Mattel should be ordered to produce all non-privileged responsive documents.

## 2.   Mattel Improperly Limits Responses Regarding Particular Custodians to Facts as Alleged by Mattel.

MGA's Third Set of Requests for Production (182-383) seek production of documents relating to individually named custodians identified in Mattel's Initial Disclosures regarding specific subject matters identified by Mattel in those Initial Disclosures.[20]  Despite the obvious relevance of any document within the category identified by Mattel in its own Initial Disclosures, Mattel has improperly limited its agreement to produce to documents relating to "the facts at issue in this litigation *as alleged in Mattel's Initial Disclosures*."  Mattel Supp. Response to Requests No. 182-383, Rutowski Decl. Ex. 26.

---

[19] 9049 RFPs: 3, 8, 9, 90-91, 565, 642-643.
    9059 RFPs: 88, 336-337.
[20] Mattel, Inc.'s Consolidated (1) Initial Disclosures Relating to MGA's Unfair Competition Claims, and (2) Second Supplemental Initial Disclosures Relating to Mattel's Claims Against Bryant and MGA, dated January 5, 2007 ("Initial Disclosures") are attached as Exhibit 56 to the Rutowski Decl.

1    While true that the individual is identified as knowledgeable about specific

2    topics in Mattel's Initial Disclosures, Mattel's obligation to produce does not end

3    with the facts as alleged by Mattel (or even as interpreted by Mattel).  That is, the

4    category of documents that must be produced is responsive documents, regardless

5    of whether a document is supportive of Mattel's factual allegations or any other

6    parties' factual allegations.  Given that the requests are specifically limited to the

7    topics identified in Mattel's Initial Disclosures, Mattel's further limitation to the

8    facts at issue in this litigation *as alleged by Mattel* is merely an escape hatch to

9    allow Mattel to limit its production.  Such a limitation is improper.  <u>See</u> Order

10   Granting Mattel's Motion to Compel Production of Documents and Interrogatory

11   Responses by MGA, dated May 15, 2007 (finding that "[r]estrictions suggest that

12   MGA might be excluding documents that are responsive to the request based upon

13   its unilateral determination of what is 'relevant' or 'sufficient.'"), Rutowski Decl.

14   Ex. 57 at 2586; Order No. 52, dated August 26, 2009 (requiring production of

15   "responsive" documents, not merely "relevant" documents), Rutowski Decl. Ex. 54

16   (Docket Document No 6437) at 2512.

17          **C.    Mattel's Wholesale Refusal to Produce Responsive Documents is
                    Improper.**
18

19          In response to more than 400 requests, Mattel raises a host of improper

20   general and specific objections and then fails to agree to produce *any* non-

21   privileged responsive documents.[21]  These requests are reasonably calculated and

22   narrowly tailored to lead to the discovery of admissible evidence in Phase 2.  The

23   Separate Statements set forth in detail why Mattel's particular objections to each

24   ─────────────────
     [21] 9049 RFPs: 34-36, 77-78, 82, 95-98, 100, 125, 127, 130, 170, 176-177, 180, 423-
25   430, 433-435, 437-451, 455, 458-459, 471-472, 464-465, 467-469, 473-474, 476,
     479-480, 482, 492-501, 503-515, 519-524, 540, 543, 545-546, 548-549, 553-560,
26   563-564, 566-567, 569, 572, 574, 572(2)-574(2), 575-582, 584-585, 587-590, 594-
     596, 600, 603, 611-641, 644, 646, 648-652, 656, 674-675, 677-695, 697-698, 704-
27   715, 720-725, 729-731, 734-735, 741, 743-746, 748-756, 770-784, 786-794.
         9059 RFPs: 1-43, 49-60, 63-80, 91-95, 98, 100-107, 110-131, 133, 135, 137-167,
28   170-171, 175-179, 184-185, 189, 191-223, 255-257, 272-279, 344-347.

1    request are invalid.  In sum, Mattel's cut and paste objections are no more than

2    boilerplate responses served by Mattel in an effort to hinder MGA from obtaining

3    discovery central to its affirmative claims and defenses in Phase 2, and Mattel must

4    be compelled to produce.

### 1.    If A Request Is Duplicative, Then Mattel Need Only Confirm That It Has Produced Documents.

7        Mattel objects to many requests as "duplicative of or subsumed within other

8    requests," yet fails to state which requests are allegedly duplicative.[22]  The solution

9    here is simple: Mattel need only confirm that it has produced *all* non-privileged

10   documents.  Mattel's failure to do so is improper for at least two reasons.

11       First, Mattel acknowledges that the request seeks discoverable information,

12   but it fails to provide MGA with confirmation that all responsive information has

13   been or will be collected and produced.

14       Second, Mattel fails to identify what requests are allegedly duplicative or

15   subsumed, thereby preventing MGA from assessing whether the requests <u>are in fact</u>

16   duplicative, or whether Mattel has produced documents in response to the allegedly

17   duplicative request.  To the extent that Mattel is withholding documents in response

18   to the allegedly duplicative requests, Mattel's boilerplate objections to the requests

19   are without merit and cannot support withholding documents as detailed below.  If

20   Mattel has produced all non-privileged responsive information, it must simply state

21   so in response to each request.

### 2.    Mattel's Boilerplate General and Specific Objections Do Not Justify Its Failure to Produce.

24       It is well established that boilerplate objections are improper.  <u>A. Farber and

25   Partners, Inc. v. Garber</u>, 234 F.R.D. 186, 188 (C.D. Cal. 2006) ("[G]eneral or

26   boilerplate objections such as 'overly burdensome and harassing' are improper –

27   _____

28   [22] 9059 RFPs: 1-16, 35-39, 47-48, 61-62, 72-79, 91-95, 98, 100-107, 110, 165-166, 184-185, 191-192, 196-206, 209, 211-223, 255-257, 272-276, 279, 343.

especially when a party fails to submit any evidentiary declarations supporting such objections."); Walker v. Lakewood Condo. Owners Ass'n, 186 F.R.D. 584, 587 (C.D. Cal. 1999) ("Boilerplate, generalized objections are inadequate and tantamount to not making any objection at all.").

Overly Broad.  Among Mattel's boilerplate objections is its objection that the requests are overly broad.  Yet, Mattel provides no explanation, let alone with the required particularity, as to why these requests are overly broad.  This objection is therefore improper and should be overruled.  Order No. 17, dated April 14, 2009, (overruling objections not stated with specificity), Rutowski Decl. Ex. 58 (Docket Document No. 5190) at 2613.

Unduly Burdensome.  Mattel further objects that the requests are unduly burdensome.  Again, Mattel provides no explanation, as required if Mattel were going to withhold documents on this basis.  Jackson v. Montgomery Ward & Co., Inc., 173 F.R.D. 524, 528-29 (D. Nev. 1997) ("The party claiming that a discovery request is unduly burdensome must allege specific facts which indicate the nature and extent of the burden, usually by affidavit or other reliable evidence.") (cited in Order No. 11, dated March 31, 2009, Rutowski Decl. Ex. 59 (Docket Document No. 5093) at 2646; Order No. 17, Rutowski Decl. Ex. 58 (Docket Document No. 5190) at 2616; Nagele v. Elec. Data Sys. Corp, 193 F.R.D. 94, 109 (W.D.N.Y. 2000) (overruling "burdensome" objections because objecting party failed to particularize its basis for the objection).  Indeed, the Discovery Master has already overruled objections of this type where the party "has not provided any evidence in connection with its Motion To Compel to support its claim of burden."  Order No. 17, Rutowski Decl. Ex. 58 (Docket Document No. 5190) at 2616; see also Order Granting Mattel's Motion to Compel Production of Documents and Interrogatory Responses by MGA, dated May 15, 2007, Rutowski Decl. Ex. 57 at 2592 ("Once again, MGA has failed to substantiate any of its objections with supporting declarations or legal authorities").

Confidential/Proprietary/Trade Secret Information.  Mattel also objects that many requests seek purportedly confidential, proprietary or trade secret information. A Protective Order exists in this case, obviating any concern as to protection of privacy rights and/or commercially sensitive information.  See, e.g., Order dated July 2, 2007 (District Court approved the Discovery Master's finding that the entry of a protective order was sufficient to protect even information of a "particularly sensitive nature" including "the most secretive documents maintained by MGA"), Rutowski Decl. Ex. 14 (Docket Document No. 608) at 64; A. Farber and Partners, Inc., 234 F.R.D. at 191-92 (C.D. Cal. 2006) ("plaintiff's need for [defendant's] financial documents outweighs [defendant's] claim of privacy, especially when the 'impact' of the disclosure of the information can be protected by a 'carefully drafted' protective order"); Computer Task Group, Inc. v. Brotby, 364 F.3d 1112, 1117 (9th Cir. 2004) (failure to provide discovery is inexcusable when a protective order governed production with respect to privileged and confidential documents).

In Possession of Others.  To the extent that Mattel seeks to withhold documents because they are in the possession, custody or control of defendants or third parties, or are publicly available, such an objection is without merit.  Mattel is obliged to produce responsive documents in *its* possession, custody or control, even if it believes that those same documents are also in the possession of MGA and/or third parties.  Orleman v. Jumpking, Inc., No. 99-C2522, 2000 WL 1114849, *7 (D. Kan. July 11, 2000); St. Paul Reinsurance Co., Ltd. v. Commercial Fin. Corp., 198 F.R.D. 508, 514 (N.D. Iowa 2000).

Vague and Ambiguous.  Mattel's objection to terms as vague and ambiguous should be stricken because Mattel fails to provide any explanation.  In addition, "[a] party responding to discovery requests 'should exercise reason and common sense to attribute ordinary definitions to terms and phrases utilized in [discovery].'"

Swackhammer v. Sprint Corp. PCS, 225 F.R.D. 658, 662 (D. Kan. 2004).  This objection cannot justify non-production.

Time and Geographic Scope.  Mattel's objection that requests are not limited in time or geographic scope should be rejected because Mattel has provided no support for this objection.  St. Paul Reinsurance Co., Ltd., 198 F.R.D. at 513 (rejecting similar objections, finding that "[t]he plaintiffs'' third objection to CFC's request is based on the ground the it is overbroad and without reasonable limitation in scope or time frame.  Once again, plaintiffs fail to offer any evidence or affidavits in support of these objections.").  Moreover, most of the requests are limited in time by virtue of the fact that they are limited to particular products that have existed only within a discrete time frame.  With respect to geographic scope, it is not incumbent on MGA to limit its requests to a particular geographic scope—Mattel is required to produce all responsive information within its possession, custody or control.

Premature.  Mattel's objection that the discovery sought in certain requests is premature, such as discovery relating to damages, rings hollow in light of the fact that expert reports come due shortly.  Responsive documents, irrespective of whether they will also be the subject of expert testimony, must be produced.

Such general objections are not a legitimate basis upon which to withhold production, and Mattel should be compelled to produce.

**3.    Mattel States That It Simply "Will Not Produce" In Response to Many Proper Requests.**

In response to many requests, Mattel states that it will not produce non-privileged responsive documents, other than what it has already produced in response to other requests.[23]  This is tantamount to a complete failure to produce because it does not tell MGA whether or not responsive documents have been or

---

[23] 9049 RFPs: 543, 545-546, 548-549, 552-553, 555, 557-560, 567, 572, 770-774, 777-784, 786-794.

1  will be produced, or whether Mattel is seeking to withhold documents based on its

2  objections.  If all non-privileged responsive documents have been produced in

3  response to other requests, then Mattel need only provide that information.  By not

4  doing so, the logical conclusion is that Mattel is withholding documents based on

5  its objections.  As detailed above and in the Separate Statements, Mattel's

6  boilerplate objections to the requests are without merit and cannot support its

7  wholesale statement that it will not produce.  These are properly propounded

8  requests, and Mattel produce all non-privileged, responsive documents.

9  **II.   MGA'S REQUESTS SEEK INFORMATION DISCOVERABLE IN**
   **PHASE 2**

10

11         The standard for discovery is liberal – information is discoverable if it

12  "appears reasonably calculated to lead to the discovery of admissible evidence."

13  Fed. R. Civ. P. 26(b)(1).  As Mattel argued in its Motion to Compel MGA Mexico

14  To Produce Documents and Things, "[i]t is insufficient for the party objecting to

15  discovery based on relevance to simply make conclusory allegations that the

16  request is irrelevant."  Rutowski Decl. Ex. 52 (Docket Document No. 5971) at 2376

17  (citing Buckminster v. Prudential Fin., Inc., No. 07-C133, 2008 WL 624532, *2 (D.

18  Neb. March 3, 2008)).  Mattel further acknowledged that "[g]iven the broad reach

19  of discovery under Rule 26, the burden to show why discovery should not be

20  allowed is on the party resisting discovery."  Id., at 2377 (citing Bible v. Rio Props.,

21  Inc., 246 F.R.D. 614, 618 (C.D. Cal. 2007); Sullivan v. Prudential Ins. Co. of

22  America, 233 F.R.D. 573, 575 (C.D. Cal. 2005)).  Nevertheless, MGA sets forth the

23  clear discoverability in Phase 2 of the information requested in the requests in

24  response to which Mattel has expressly limited its agreement to produce or failed to

25  agree to produce below and in the Separate Statements.

26         **A.    "Bratz" and "My Scene" Products.**

27         At the core of this dispute are MGA's "Bratz" and Mattel's "My Scene"

28  product lines.  Information regarding the conception, design and development of

- 17 -

1    these products is relevant to numerous of MGA's claims and defenses.  MGA's

2    Complaint includes claims for relief based on false designation of origin, such as

3    trade dress infringement, and unfair competition based on Mattel's deliberate

4    poaching upon the commercial magnetism of "Bratz" and intentionally imitating

5    the distinctive features such that the "My Scene" products have progressively

6    become closer and closer to the themes, packaging and overall image of the "Bratz"

7    line.[24]  MGA also has an affirmative claim for dilution.  In addition to MGA's

8    affirmative claims, Mattel's claim for trade secret misappropriation relating to

9    alleged trade secrets in "Bratz" puts various aspects of the "Bratz" and "My Scene"

10   products at issue, in particular their conception and design.[25]   It follows, then, that

11   MGA's affirmative defenses also relate to "Bratz" and Mattel's claimed trade secret

12   rights in connection with "Bratz."[26]

13           Thus, (1) documents relating to the conception and changes in design of "My

14   Scene" products, packaging and advertising; (2) documents relating to the

15   conception and changes in design of "Bratz" products, packaging and advertising;

16   (3) documents relating to Mattel and its employees' and contractors' knowledge of

17   "Bratz"; (4) documents relating to the advertising and marketing of "Bratz" and

18   "My Scene" products; (5) documents relating to the similarities between and

19   confusion that results from "Bratz" and "My Scene" products; (6) documents

20   relating to predecessors of "Bratz" and "My Scene" products; and (7) documents

21   relating to any competitive analyses of the markets for "My Scene" products and

22   "Bratz" products, are highly relevant to MGA's Phase 2 claims and defenses.[27]

23   _____

[24] MGA's Complaint, Rutowski Decl. Ex. 15.
24   [25] Mattel's Fourth Amended Answer, Rutowski Decl. Ex. 16; Mattel's First
     Supplemental Objections and Responses to Interrogatory Nos. 20-23 and 28 in
25   MGA Entertainment, Inc.'s Second Set of Interrogatories (July 31, 2009), Rutowski
     Decl. Ex. 60 at 2683.
26   [26] MGA Parties' Answer and Affirmative Defenses to Mattel, Inc.'s Third
     Amended Answer and Counterclaims ("MGA's Answer"), Rutowski Decl. Ex. 61
27   (Docket Document No. 5798) at 2949-2951, 2955-2957; MGA's Response To
     Mattel, Inc.'s Amended Supplemental Interrogatory Regarding Defendants'
     Affirmative Defenses (August 31, 2009), Rutowski Decl. Ex. 62.
28   [27] As detailed in the Separate Statements, these requests include 9049 RFPs: 1-16,

MTN TO COMPEL FURTHER RESPONSES TO RFP
CV 04-9049 SGL (RNBx)

1   Many of the requests for which Mattel has failed to provide an adequate response
2   go to the core of these issues.

3         For example, 9059 RFP 123 seeks documents relating to "Bratz" or "Bratz"
4   intellectual property that Mattel gave or showed to any person working on or
5   involved in the conception, creation, design or development of the "My Scene"
6   styling head.  This request is narrowly tailored to a "My Scene" styling heads and
7   the use or knowledge of "Bratz" in the creation thereof.  The information sought is
8   essential to MGA's claim that Mattel copied and infringed upon MGA's products
9   and intellectual property.  In response to this request, Mattel lists its standard "cut
10  and paste" objection and does not agree to produce any responsive documents.

11        As another example, 9049 RFP 552, seeks reports, studies, presentations,
12  memoranda or other documents that analyzed the effectiveness of television
13  commercials or advertising campaigns for Mattel's "My Scene" products.  Any
14  such analysis is likely to lead to relevant evidence, such as evidence showing that
15  Mattel's "My Scene" advertisements were not commercially successful and its
16  resulting decision to copy "Bratz" advertisements.  In response to this request,
17  Mattel states that "other than those documents produced pursuant to other requests,
18  Mattel *will not produce* documents responsive to this Request."  This is tantamount
19  to a complete failure to produce documents responsive to this request in particular.

20        Mattel's failure to produce documents central to MGA's claims and defenses
21  in Phase 2 is reprehensible.  Mattel must be ordered to produce all responsive non-
22  privileged documents that go to the core of the issues regarding "My Scene" and
23  "Bratz," as detailed for each request in the Separate Statements.

24
25
26  18-31, 69-73, 76-85, 90, 91, 93, 94, 106-113, 125, 127, 130, 168, 171, 420-424,
27  430-434, 445, 446, 452-455, 471-474, 525, 540, 549-551, 553, 555, 557, 566-567,
    597-599, 693, 735, 775-784, 786-788, 792-794; 9059 RFPs: 1-4, 17-19, 26-28, 35-
28  37, 47, 71-80, 112-114, 121-123, 165-166, 170, 175, 184-185, 273, 333-337, 343-
    347.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## B.    Serial Copying of Non-Bratz Products.

In addition to the issues surrounding "Bratz" and "My Scene," MGA alleges that Mattel has engaged in serial copying of other MGA products.  Allegations of serial copying are set forth both as part of MGA's unfair competition claim as well as in MGA's affirmative defenses.  For example, in its Complaint, MGA alleges that Mattel has deliberately and repeatedly adopted, imitated and mimicked the make-up, appearance, features, trade dress, and image of MGA's products, packaging and advertising, exploiting the goodwill and reputation of MGA.  MGA's Complaint provides some specific examples including Mattel's copying of: MGA's "4-Ever Best Friends" in creating its "Wee 3 Friends" line, MGA's "Mommy's Little" line in creating its "Little Mommy" line, and MGA's "Alien Racers" line in creating its "AcceleRacerS" line.  MGA's unclean hands and competition privilege or justification defenses also allege that Mattel has copied MGA's products, packaging, themes and advertising in connection with its "My Scene", "Diva Starz," "Wee 3 Friends," "Acceleracers," "Polly Pocket," and "Little Mommy" products, just to name a few.[28]

Documents that evidence Mattel's efforts to copy products, advertising, and store displays and layouts are highly relevant to these claims, yet Mattel refuses to provide a complete production.   In response to many of the requests seeking documents about these issues, Mattel limits its agreement to produce to "matters placed at issue in this litigation."[29]  Mattel's limitation to what it determines has been "placed at issue" is far from giving MGA the assurance that all non-privileged, responsive documents have been or will be produced.

In response to other requests, such as 9059 RFP 139, Mattel flat out fails to produce.  This request seeks documents relating to the similarities or differences between "Bratz" and "Diva Starz," but only to the extent that Mattel contends that

---

[28] See MGA's Answer, Rutowski Decl. Ex. 61 (Docket Document No. 5798) at 2949-2951, 2955-2957.
[29] See, e.g., 9049 RFPs 384, 388-394, 396-397, 400 (regarding "Acceleracers"); 401-409 (regarding "Little Mommy"; and 410-418 (regarding "Wee 3 Friends").

MTN TO COMPEL FURTHER RESPONSES TO RFP
CV 04-9049 SGL (RNBx)

1   "Bratz" was derived from "Diva Starz."  If Mattel intends to defend against MGA's

2   claim that "My Scene" copies "Bratz" by arguing that instead "Bratz" is derived

3   from "Diva Starz," MGA is entitled to a complete production in response to this

4   request.  If Mattel does not intend to raise such a defense to MGA's affirmative

5   claims, it should tell MGA and state that no responsive documents exist for that

6   reason.

7          MGA is entitled to discovery on all aspects of Mattel's serial copying and

8   Mattel's defenses to these claims, and many of its requests are narrowly tailored to

9   seek discovery on these issues.[30]

10         **C.     Unfair Competition Through Improper Interference with MGA's**
               **Business Relationships.**
11

12         MGA's Complaint and its affirmative defenses also allege that Mattel has

13  engaged in unfair competition through its improper interference with MGA's

14  business by, for example, threatening retailers and suppliers and the intimidating

15  various industry groups in order to prevent MGA from fairly competing. [31]  MGA's

16  affirmative defenses allege that Mattel has engaged in campaigns to create negative

17  publicity or press about MGA, MGA products, Carter Bryant, Isaac Larian or MGA

18  employees; that it has pressured and influenced entities such as NPD Funworld,

19  Children's Advertising Review Unit, Nickelodeon, Zapf Creation AG and Smoby

20  Group in an effort to interfere with MGA's business strategies; and that it spied on

21  MGA in an effort to obtain competitive non-public information through various

22  improper means.[32]  MGA is entitled to seek documents reasonably calculated to

23  lead to the discovery of admissible evidence that will support (or refute) its claim

24  that Mattel has improperly sought to interfere with MGA's business relationships

25  _____

26  [30] As detailed in the Separate Statements, these requests include 9049 RFPs: 180, 351-352, 384, 388-394, 396, 397, 399-418, 440-444, 512-515, 556, 611-641, 644, 646, 652, 656, 674, 695, 748-756; and  9059 RFPs: 131-148, 274-276.

27  [31] See, e.g., MGA's Complaint, Rutowski Decl. Ex. 15 at 100-102.

28  [32] MGA's Answer, Rutowski Decl. Ex. 61 (Docket Document No. 5798) at 2949-2952, 2955-2957.

1   and MGA's ability to compete fairly compete in the toy industry.  Many of MGA's

2   requests are narrowly tailored to this issue, and Mattel's objections to such requests

3   are unfounded.[33]

4          **D.**    **Unfair Competition Through Improper Restraints on Employee Mobility.**

5

6          As stated in MGA's Complaint, Mattel has used its power and influence to

7   attempt to, if not actually, intimidate and threaten MGA's current and potential

8   employees so as to cause MGA competitive injury.[34]  Mattel's acts have negatively

9   affected employee mobility and MGA's ability to attract, hire and retain

10   employees.[35]  MGA further alleges in its affirmative defenses that Mattel has

11   coerced its employees to accept restrictive covenants and non-compete clauses and

12   engaged in other efforts to prevent prospective MGA employees from accepting

13   offers of employment, thereby draining resources necessary to compete in the

14   marketplace.[36]  Requests directed at evidence of Mattel's improper restraints on

15   employees in the toy industry, either in employee contracts or through intimidation

16   and threats, are reasonably calculated to lead to evidence relevant to these claims.

17   Any relevancy objection to such requests should be overruled.[37]

18          **E.**    **Knowledge of Claims and Statute of Limitations.**

19          MGA alleges that Mattel had knowledge of its counterclaims against MGA,

20   including its claim for misappropriation of alleged trade secrets in "Bratz," at such

21   an early date that its claims are barred by laches and the statute of limitations.[38]

22

23   [33] As detailed in the Separate Statements, these requests include 9049 RFPs: 34-36, 40-41, 44-45, 95-98, 100, 425-428, 435-439, 447-451, 458-466, 468, 469, 494-501,

24   503-511, 519-524, 574A, 575-580, 584-585, 587, 589, 594-596, 600, 603, 642-643, 648-650, 677-690, 694; and 9059 RFPs: 49-69, 176-179, 196-203, 211-219, 279.

25   [34] MGA's Complaint, Rutowski Decl. Ex. 15 at 101.
[35] Id. at 98.

26   [36] MGA's Answer, Rutowski Decl. Ex. 61 (Docket Document No. 5798) at 2950, 2956.

27   [37] As detailed in the Separate Statements, these requests include 9049 RFPs: 176-177, 456-457, 467, 477-478,  543,  545, 546,  548, 558, 559, 560, 563, 573, 590,

28   675, 697, 770-774, 790-791; and  9059 RFPs: 255-256.
[38] MGA's Answer, Rutowski Decl. Ex. 61 (Docket Document No. 5798) at 2951.

1   Mattel amended its pleadings to add its Phase 2 counterclaims on January 12, 2007,

2   having moved to amend its pleadings on November 20, 2006.[39]  The statute of

3   limitations for misappropriation of trade secrets is three years.  Yet, the evidence

4   shows and MGA alleges, that Mattel began actively investigating Bryant's role in

5   creating "Bratz" at least as early as 2001 or 2002—Mattel's internal investigative

6   files confirm that Mattel commenced an official investigation into whether Bryant

7   stole the "Bratz" idea in March 2002.  In mid-2003, additional events further

8   evidence Mattel's first knowledge of Phase 2 claims brought in 2006, such as a

9   Wall Street Journal article regarding Bryant's involvement in "Bratz" quoting

10  Mattel employees, and correspondence between Mattel and Hong Kong lawyers,

11  including Danny Yu, regarding litigation between MGA and Cityworld Limited

12  ("Cityworld") involving Carter Bryant and "Bratz."

13          Accordingly, MGA is entitled to documents in response to requests about

14  Mattel's first knowledge of the facts and claims at issue, about the investigations

15  conducted by Mattel, and about the particular events that MGA has reason to

16  believe were sufficient to put Mattel on notice of its Phase 2 claims.[40]  For example,

17  with respect to Mattel's first knowledge of the facts, 9059 RFPs 220-223 seek

18  communications and documents received by Mattel implying that MGA copied or

19  used Mattel's intellectual property in connection with "Bratz" and any

20  investigations that may have been performed in response to such communications.

21  These requests are narrowly tailored to Mattel's first knowledge of facts asserted in

22  connection with the claims later brought against MGA.  With respect to particular

23  _____

24  [39] MGA does not hereby concede that Mattel's claims at issue in Phase 2 relate back to its November 20, 2006 motion to amend, nor that they were properly pled

25  or asserted either at that time or by January 12, 2007.  Rather, MGA has currently pending statute of limitations and laches defenses, and it is entitled to discovery on

26  those defenses.  The evidence sought through this Motion is reasonably calculated to show the accrual date of Mattel's Phase 2 claims.  MGA is using these dates only by way of example.

27  [40] As detailed in the Separate Statements, these requests include 9049 RFPs: 170, 476, 482, 572, 758, 789; 9059 RFPs: 88, 91-95, 98, 100-101, 110-111, 167, 191-

28  195, 210, 220-223, 252-253, 277-278.

- 23 -

events, 9059 RFPs 213 and 214 seek communications between Mattel and specific attorneys and entities involved in the litigation between MGA and Cityworld in Hong Kong regarding Carter Bryant and "Bratz."  These requests are narrowly tailored to particular communications that MGA contends were sufficient to put Mattel on notice of its Phase 2 claims against MGA.  Mattel objects that all of these requests are duplicative and states that it will not re-produce documents.  This is wholly insufficient to ensure that Mattel is not withholding non-privileged discoverable information in response to these requests.

Notably, Judge Infante granted a prior motion brought by Carter Bryant and MGA to compel on a narrow subset of documents relating to this issue, specifically any investigation that occurred as a result of the receipt of an anonymous letter in August 2002 addressed to Mattel CEO Robert Eckert and alleging that Bryant designed "Bratz" dolls while at Mattel.  Order by Judge Infante, dated January 30, 2007, Rutowski Decl. Ex. 63 (Docket Document No. 176).  Mattel produced documents and a privilege log, and Judge Infante conducted an *in camera* review of some allegedly privileged documents, overruling privilege as to some and sustaining privilege as to others. Order by Judge Infante, dated July 20, 2007, Rutowski Decl. Ex. 64 (Docket Document No. 688).   Notably, Mattel has added supplemental entries to its privilege log at least eight times since then, many of which cover the same time frame as the anonymous letter investigation and are described as relating to "potential litigation."[41]  From this, it is apparent that not all responsive documents were provided as of the July 20, 2007 order.  Prior motion practice on a particular and narrow subset of issues relating to the statute of limitations defense does not relieve Mattel of its obligation to produce and supplement its production with all responsive non-privileged documents in

---

[41] For example, comparing  Mattel's Supplemental Privilege log dated September 18, 2007 (entries 1-251) with Mattel's Supplemental Privilege log dated October 29, 2007 (additional entries 252-334) reveals numerous additional entries within the 2002-2003 time frame relating to "potential litigation."  Rutowski Decl. ¶ 82.

1  response to MGA's requests.  In fact, the prior motion practice highlights the

2  relevance of the requested documents to MGA's defenses.

3      If Mattel has completed production in response to these requests, it need only

4  supplement its responses to confirm that it is not withholding any responsive

5  information based on its objections.  To the extent that Mattel has not produced or

6  supplemented its production, it should be ordered to do so.

7      **F.    Document Retention and Destruction.**

8      Several of the requests at issue in this motion relate to Mattel's document

9  retention policies, efforts to institute a litigation hold, and document destruction.[42]

10  These requests seek information relevant to, among other things, MGA's

11  affirmative defense regarding Mattel's spoliation of evidence.[43]

12      During Phase 1, MGA moved for terminating sanctions based alleged

13  destruction and willful spoliation of documents by Mattel.  This motion was

14  denied,[44] but Mattel was ordered to produce a declaration by setting forth its

15  preservation policies in detail.[45]  Mattel submitted an affidavit of Michael Moore.

16  Mattel now uses this affidavit in an effort to circumscribe its obligations to produce

17  documents regarding its document preservation efforts.  For example, 9049 RFPs

18  516-518 seek all documents relating to Mattel's efforts to institute a litigation hold

19  in connection with these consolidated proceedings.  Mattel responds that it will

20  produce one or more affidavits setting forth its preservation efforts and policies

21  with respect to the litigation pursuant to the Court's order denying terminating

22  sanctions.  If the attachments to Mr. Moore's affidavit provide a complete

23  production in response to these requests, then Mattel should respond that all non-

24  privileged responsive documents have been produced.  Otherwise, Mattel should

25  ─────────────────
   [42] As detailed in the Separate Statements, these requests include 9049 RFPs: 86-88, 480, 492-493, 500, 509, 516-518, 572(2)-574(2).
26  [43] MGA's Answer, Rutowski Decl. Ex. 61 (Docket Document No. 5798) at 2960-2961.
27  [44] Rutowski Decl. Ex. 65 (Docket Document No. 895).
   [45] Transcript of August 27, 2007 proceedings in front of Judge Larson, Rutowski
28  Decl. Ex. 66 at 3180.

1   not be able to avoid production through an argumentative affidavit from its in-

2   house counsel.  For example, if there are emails or other documents that reflect how

3   the policies were implemented or lapses in the policies set forth in Mr. Moore's

4   declaration, MGA is entitled to those as well.

5        Other requests, such as 9049 RFPs 492-493, 500 and 509 are tailored to seek

6   specific evidence of retention or destruction by Mattel of the documents of current

7   or former MGA employees, freelancers or contractors, such as Tina Patel,

8   Christopher Hardouin, Margo Eldridge, Charlotte Broussard, and Andrew

9   Gallerani.  As alleged in MGA's Complaint, affirmative defenses, and interrogatory

10  responses, Mattel's hiring of and contracting with former MGA employees and

11  contractors is central to MGA's unfair competition claim and unclean hands

12  defense, which allege that Mattel intimidated employees in the industry and used

13  them to spy on MGA in an effort to gain confidential information about MGA.  If

14  Mattel willfully destroyed any documents evidencing this activity, such spoliation

15  would be highly relevant to MGA's claims and defenses.  These requests are

16  narrowly tailored to seek such documents.

17       Mattel's objections and limitations with respect to requests seeking

18  documents concerning its document preservation policies and/or document

19  destruction are improper, and Mattel should be ordered to produce non-privileged

20  responsive documents.

21       **G.    Damages and Other Relief Sought.**

22       Damages and relief for Phase 2 claims are also at issue in Phase 2, and

23  requests  directed toward either (or both) parties' prayers for relief in Phase 2 seek

24  information discoverable in Phase 2.[46]  MGA's prayer for relief is set forth in its

25  Complaint.[47]  It seeks to enjoin Mattel from using confusingly similar trade dress,

26  ─────────────
[46] As detailed in the Separate Statements, these requests include 9049 RFPs: 74,
27  479, 564, 565, 569, 581-582, 651, 698, 704-715, 720-725, 729-731, 734, 741, 743-
    746; and  9059 RFPs: 5-16, 20-25, 29-34, 38-43, 81, 102-109, 115-121, 124-130,
28  149-164, 204-209.
    [47] MGA's Complaint, Rutowski Decl. Ex. 15 at 103-104.

MTN TO COMPEL FURTHER RESPONSES TO RFP
                                                      CV 04-9049 SGL (RNBx)

improperly influencing standard-setting and industry organizations, engaging in unfair competition and unfair business practices and diluting MGA's trade dress.[48] It also seeks damages and profits derived by Mattel for its acts of false designation of origin or affiliation, unfair competition and unfair business practices and dilution.[49]

Mattel's prayer for relief, as articulated in its Fourth Amended Answer in Case No. 05-2727 and Counterclaims, which it moved to file on August 17, 2009 (after the Phase 1 trial and well into Phase 2) is extremely, and overly, broad.[50] Because Mattel's pleadings seek such broad relief, MGA is entitled to extremely broad discovery on these issues.  For example, Mattel's prayer includes a declaration that MGA has no valid or protectable ownership interests or rights in "Bratz" designs, works or properties made by Bryant during the term of his Mattel employment as well as in all derivatives prepared there from; an accounting of all profits, monies and/or royalties form the exercise of ownership, use, distribution, sales and licensing of "Bratz;" a constructive trust over "Bratz;" actual damages and lost profits; and double damages due to alleged willful misappropriation of Mattel's trade secrets with deliberate intent to injure Mattel's business and approve its own.[51]  Many of the 9059 requests in particular are narrowly tailored to seek categories of documents *only to the extent* that Mattel intends to seek specific relief relating to the documents requested.[52]  The relevancy of the information sought in these requests is self-evident, yet Mattel unreasonably refuses to produce responsive materials.  If Mattel intends to pursue all of relief sought in its pleadings in Phase 2, MGA is entitled to discovery on both the relief MGA seeks as well as Mattel's overly broad prayer for relief.[53]

---

[48] Id.
[49] Id.
[50] Mattel's Fourth Amended Answer, Rutowski Decl. Ex. 16 at 212-214.
[51] Id.
[52] See, e.g., 9059 RFPs 5-16, 20-25, 29-34, 38-43, 102-109, 116-121, 125-130, 149-157, 204-209.
[53] Of course, MGA would consider limiting this category of requests if Mattel

MTN TO COMPEL FURTHER RESPONSES TO RFP
CV 04-9049 SGL (RNBx)

### H.    Custodians and Subject Matter Identified in Mattel's Initial Disclosures.

The relevance and discoverability of the information sought in response to Mattel's Third Set of Requests (9049 RFPs 182-383) is without question.  These requests seek documents based upon individuals and areas of knowledge identified by Mattel in its Initial Disclosures.  For example, Mattel's Initial Disclosures identify Stephanie Cota as a person with knowledge of the development and ownership of intellectual property at issue.  Mattel's Initial Disclosures, Rutowski Decl. Ex. 56 at 2562.  As a result, 9049 RFPs 221 & 222 are directed toward documents "referring or relating to Stephanie Cota's alleged knowledge of '[t]he development and ownership of intellectual property at issue'" and "documents in Stephanie Cota's possession referring or relating to her alleged knowledge of '[t]he development and ownership of intellectual property at issue.'"  Mattel objects to these requests, and indeed every request in 9049, Set Three, on the ground that they "seek[] documents that are not relevant to this action or likely to lead to the discovery of admissible evidence."  Mattel's relevance objection is nonsense.  The requests are limited to the individuals Mattel itself identified as "individuals likely to have discoverable information" and the subject areas specifically set forth by Mattel.  See Fed. R. Civ. P. 26(a)(1)(A)(i).  Mattel itself has provided the rationale for discoverability.

Moreover, the subject matter areas identified by Mattel in its Initial Disclosures are broad and plainly involve Phase 2 issues.[54]  For example, many of the individuals identified in Mattel's Initial Disclosures are alleged to have information about the development and ownership of intellectual property at issue.

---

limits the relief it seeks in Phase 2.
[54] Mattel's Initial Disclosures do not break out witnesses by case or phase, but instead provide only extremely broad descriptions of their purportedly relevant knowledge.  Mattel cannot hide behind its own broad categorizations to avoid production of documents relating to individuals that it has put at issue and topics that it has defined.

1  Such information is relevant to the parties' claims and defenses regarding "Bratz"

2  and "My Scene," as well as to issues of serial copying, as discussed in Sections II.A

3  and II.B above.  In addition, many individuals are identified by Mattel as having

4  information related to the broad category of MGA's access to Mattel's intellectual

5  property and trade secrets.  Thus, according to Mattel's own Initial Disclosures,

6  these custodians are reasonably likely to have information pertaining to at least

7  MGA's trade dress claim, MGA's unfair competition claim, and MGA's defenses,

8  for example, to Mattel's trade secret misappropriation claim.  As Mattel's Initial

9  Disclosures identify witnesses with information on broad topics that are clearly

10  relevant to Phase 2 issues, MGA is entitled to documents responsive to requests

11  narrowly tailored to Mattel's self-identified witnesses and topics.

12  **III.    MATTEL UNILATERALLY LIMITS THE SOURCES FROM WHICH**
**IT IS COLLECTING DOCUMENTS.**

13

14         It is clear that MGA's concerns regarding Mattel's production are warranted

15  in light of Mattel's recent brief in opposition to MGA's Motion to Compel Further

16  Responses to MGA's First Set of Phase 2 Interrogatories and Second Set of Phase 2

17  Requests for Production.  Rutowski Decl. Ex. 67.  In this brief Mattel included a

18  background section regarding the universe of Mattel documents in which it

19  purportedly sets forth the number of computer servers, employee computers,

20  electronic mail systems and hardcopy documents that it has in its possession.  Id. at

21  3665.  Mattel apparently seeks unilaterally to impose limits on the electronic

22  discovery sources that it must search and from which it must collect documents

23  because it is a large company.  MGA is entitled to discovery of relevant

24  information, and Mattel should be compelled to confirm that it is searching all data

25  sources that are reasonably likely to contain responsive information in connection

26  with MGA's requests.

27         If Mattel seeks to limit its production of electronically stored information

28  pursuant to Federal Rule of Civil Procedure 26(b)(2), the requirements are clear.

1   Mattel must identify as not reasonably accessible because of undue burden or cost

2   the specific sources of electronically stored information from which it does not

3   intend to provide discovery, and make a showing that the information is not

4   reasonably accessible.  Fed. R. Civ. P. 26(b)(2).  Mattel has not done so in

5   connection with the Phase 2 discovery sought through this motion, and it should be

6   compelled to conduct a reasonable search for responsive materials through all data

7   sources in its possession, custody or control.

8                                   **CONCLUSION**

9        For all of the foregoing reasons, MGA respectfully requests that the

10  Discovery Master grant MGA's Motion to Compel in its entirety as requested

11  herein.

12  Dated:  September 23, 2009          ORRICK, HERRINGTON & SUTCLIFFE LLP

13

14                                     By:  _____/s/ Diana M. Rutowski_____
                                              Diana M. Rutowski
15                                     Attorneys for MGA ENTERTAINMENT, INC.,
                                       MGA ENTERTAINMENT HK, LTD., MGA de
16                                     MEXICO, S.R.L. de C.V., and ISAAC LARIAN

17

18

19

20

21

22

23

24

25

26

27

28

MTN TO COMPEL FURTHER RESPONSES TO RFP
                                       CV 04-9049 SGL (RNBx)