# Exhibit 17

1          UNITED STATES DISTRICT COURT

2          CENTRAL DISTRICT OF CALIFORNIA

3              EASTERN DIVISION

4                  - - -

5      HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6                  - - -

7   MATTEL, INC.,                    )
                                     )
8                    Plaintiff,      )
                                     )
9            vs.                     )   No. CV 04-09049
                                     )
10  MGA ENTERTAINMENT, INC., ET. AL.,)
                                     )
11                   Defendants.     )
    _____)   Motions
12  AND CONSOLIDATED ACTIONS,        )
    _____)

13

14

15        REPORTER'S TRANSCRIPT OF PROCEEDINGS

16            Riverside, California

17        Wednesday, February 11, 2009

18               10:03 A.M.

19

20

21

22

23        THERESA A. LANZA, RPR, CSR
          Federal Official Court Reporter
24        3470 12th Street, Rm. 134
          Riverside, California  92501
25             951-274-0844
          WWW.THERESALANZA.COM

ednesday, February 11, 2009                    Mattel vs. MGA Entertainmer

Exhibit 17 - Page 218

```
 1    APPEARANCES:

 2    ON BEHALF OF MATTEL, INC.:

 3                         QUINN EMANUEL
                          By:  JOHN QUINN
 4                             DYLAN PROCTOR
                               MICHAEL T. ZELLER
 5                        865 S. FIGUEROA STREET,
                          10TH FLOOR
 6                        LOS ANGELES, California  90017
                          213-624-7707

 7

 8    ON BEHALF OF MGA ENTERTAINMENT/ISAAC LARIAN:
      (Outgoing)
 9                        SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
                          BY:  THOMAS J. NOLAN
10                             JASON RUSSELL
                          300 SOUTH GRAND AVENUE
11                        LOS ANGELES, CALIFORNIA  90071-3144
                          213-687-5000

12

13    ON BEHALF OF MGA ENTERTAINMENT/ISAAC LARIAN:
      (Incoming)
14                        GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP
                          BY:  JOEL KLEVENS
15                        10250 Constellation Boulevard
                          Los Angeles, California  90067
16                        310-553-3000

17                        MITCHELL, SILBERBERG & KNUPP LLP
                          BY:  RUSSELL J. FRACKMAN
18                        11377 West Olympic Boulevard,
                          Los Angeles, California  90064-1683
19                        310-312-2000

20

21    ON BEHALF OF DEFENDANT GUSTAVO MACHADO:

                          OVERLAND BORENSTEIN SCHEPER & KIM LLP
22                        BY:  ALEXANDER H. COTE
                          601 West Fifth Street,
23                        12th Floor
                          Los Angeles, California  90071
24                        213-613-4660

25    /  /  /
```

ednesday, February 11, 2009                    Mattel vs. MGA Entertainmer

Exhibit 17 - Page 219

```
1                    I N D E X  (Continued)

2

3    APPEARANCES (continued):

4
     On behalf of OMNI 808:
5

6                    BINGHAM McCUTCHEN LLP
                     BY:  Todd E. Gordinier
7                    600 Anton Boulevard
                     Costa Mesa, CA  92626-1924
8                    714-830-0622

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

ednesday, February 11, 2009                    Mattel vs. MGA Entertainmer

Exhibit 17 - Page 220

1                     I N D E X

2                                                 Page

3    Motions.......................................     4

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

ednesday, February 11, 2009                    Mattel vs. MGA Entertainmer

Exhibit 17 - Page 221

1    Riverside, California; Wednesday, February 11, 2009; 10:03 A.M.

2                              -oOo-

3         **THE CLERK:**  Calling calendar item one, in the matter

4    of Mattel Incorporated versus MGA Entertainment Incorporated,

5    Case Number CV 04-9049.                                      00:03

6         Counsel, please state your appearances for the

7    record.

8         **MR. QUINN:**  John Quinn, Mike Zeller, Dylan Proctor

9    for Mattel.

10        **MR. NOLAN:**  Tom Nolan, Jason Russell,              00:03

11   Jennifer del Castillo on MGA and Isaac Larian's post trial

12   chamber on motions and motion for remittitur on Phase 1.

13        **MR. COTE:**  Alexander Cote on behalf of

14   Gustavo Machado.  I'll be sitting back in the gallery.

15        **MR. KLEVENS:**  Joel Klevens of Glaser Weil for the MGA  00:03

16   defendants.

17        **MR. FRACKMAN:**  Russell Frackman of Mitchell,

18   Silberberg & Knupp for the MGA defendants.

19        **MR. GORDINIER:**  Todd Gordinier for Omni 808.

20        **THE COURT:**  Counsel, good morning.                 00:04

21        We have several matters on calendar this morning to

22   take up.  I have the judgment as a matter of law by Mattel; I

23   have a motion for judgment as a matter of law from MGA; I have

24   MGA's motion for remittitur; I have the ex-parte application by

25   Omni 808 to intervene for limited purpose; I have MGA's request  00:04

ednesday, February 11, 2009                    Mattel vs. MGA Entertainmer

Exhibit 17 - Page 222

 1   regarding a briefing schedule related to the forensic audit and

 2   appointment of a receiver, which is an ex-parte application

 3   submitted by Mattel which the Court has held in abeyance

 4   pending the forensic audit.

 5           I indicated that I'm going to schedule the Phase 2       00:04

 6   matters this morning, and that does raise one concern.  I don't

 7   see lead counsel, Patty Glaser, present; but I assume that

 8   counsel from Mitchell, Silberberg can speak for MGA on Phase 2.

 9           **MR. KLEVENS:**  I'm Patty's partner, and I have her

10   calendar.                                                        00:05

11           **THE COURT:**  Very well.

12           And then I want to take up the issue of whether and

13   to what extent we should enter judgment in Phase 1 before we

14   move into Phase 2.

15           Those are the issues on my list, or my agenda.           00:05

16           Is there anything else, from the parties'

17   perspective, that needs to be addressed today?

18           **MR. QUINN:**  We believe that's it, Your Honor.

19           **THE COURT:**  You think that's enough.  Okay.

20           Mr. Nolan, the same?                                     00:05

21           **MR. NOLAN:**  We believe that's correct, Your Honor.

22           **THE COURT:**  Very well.

23           What I'd like to do is begin -- and this is just in

24   the order that I have them here in my notes -- with Mattel's

25   motion for judgment as a matter of law.                          00:05

ednesday, February 11, 2009                    Mattel vs. MGA Entertainmer

Exhibit 17 - Page 223

1          Basically, there are three issues here.  Mattel moves

2     for judgment as a matter of law on the issue of the scope of

3     the infringement of the Bratz dolls.  Mattel also moves for

4     judgment as a matter of law on the issue of the sculptor

5     Margaret Leahy's contributions, vis-à-vis independent creation,      00:06

6     which basically is the flip side of a point made by MGA in

7     their motion for judgment as a matter of law.

8          And then, finally, Mattel seeks judgment on the issue

9     of both Isaac Larian and MGA Hong Kong engaging in acts of

10    fraudulent concealment, vis-à-vis Carter Bryant and his role in     00:06

11    the creation of the Bratz product and the timing of his

12    creation; so those are the three issues.

13         I've received the truly voluminous papers, and the

14    Court has certainly reviewed them.  I'll give the moving party

15    the first right to address the Court, if there's anything          00:06

16    further you want to present on these three issues at this time.

17         Mr. Proctor?

18         **MR. PROCTOR:**  Good morning, Your Honor.

19         The Court found on the injunction motion that all of

20    the core Bratz dolls infringed Mattel's designs.  In our view,     00:07

21    based on the evidence that came in at trial, no jury could

22    reasonably find otherwise.  There's really two reasons for

23    that.  The first is the nature of the substantial similarity

24    analysis.

25         In this case, substantial similarity is strictly and          00:07

ednesday, February 11, 2009                          Mattel vs. MGA Entertainmen

Exhibit 17 - Page 224

1    purely a visual question.  It requires a visual analysis.  And

2    the Court made that clear in one of its summary judgment

3    orders, the July 24th order, where it's discussing the

4    extrinsic test, which requires an analysis of the similarity of

5    the objective details in appearance, and the intrinsic test,    00:07

6    which requires an analysis of the similarity in the overall

7    similarity of expression in the two works from the perspective

8    of the ordinary observer.

9            THE COURT:  Counsel, I don't necessarily disagree

10   with you.  It's precisely largely on that basis that I reached   00:07

11   the conclusion that I did in my December 3rd order when I ruled

12   on the equitable claims.

13           My question at this point is, given the Court's

14   earlier rulings, why is this necessary at this juncture?  Is

15   this not -- I don't want to say mooted, but somewhat redundant   00:08

16   with the Court's earlier ruling?

17           MR. PROCTOR:  It provides an alternative ground, is

18   the --

19           THE COURT:  If you would have lost the earlier one, I

20   could see why you'd be pressing the alternative; but you         00:08

21   prevailed on the --

22           MR. PROCTOR:  And MGA has this mootness argument as

23   well, and the Court's concern sounds like it ties in with that

24   to some extent.  The easy answer is, it provides an alternative

25   ground to support the Court's injunction order.  And there's     00:08

ednesday, February 11, 2009                          Mattel vs. MGA Entertainmer

Exhibit 17 - Page 225

1    certainly no Article III mootness problem.  MGA has that

2    objection, and I can address it, if the Court would like.

3    There isn't one.

4            But the Court's concern, if I'm understanding it,

5    sounds, perhaps, a bit more pragmatic:  Why go into this now?    00:08

6    Now is the time for us to bring our JMOLs.  Now is the time to

7    bring it on pain of waiver; so we have brought it.  We brought

8    it during trial, and we're renewing it now, number one.  And,

9    number two, the Court did agree with us as to the

10   interpretation of the jury's verdict, and in particular as to    00:09

11   the fact that the scope of infringement can't be divined from

12   the jury's verdict; and the Court reached its own findings on

13   the injunction motion.

14           But MGA has made it very clear, repeatedly, that they

15   intend to attack that finding or that decision, and attack the    00:09

16   Court's use of a general verdict in the first place, as long as

17   they can, including on appeal.  And entering an order, which we

18   think is a legally-required order, a proper order, that all of

19   the dolls, all of the core Bratz dolls, infringe as a matter of

20   law would provide an alternative ground and insulate the    00:09

21   Court's injunction order from that attack, which is an attack

22   that lacks merit, but it's an alternative ground to support the

23   order.

24           **THE COURT:**  And with respect to the sculpt?

25           The next argument.    00:10

ednesday, February 11, 2009                    Mattel vs. MGA Entertainmer

Exhibit 17 - Page 226

1       **MR. PROCTOR:**  Independent creation.

2            There is this dispute, fairly longstanding dispute by

3   now, as to who bears the burden of proof on independent

4   creation.  There is a series of Ninth Circuit cases making

5   clear that the defendants bear the burden of proof, Transgo,          00:10

6   Kamar, Three Boys, John L. Perry.  MGA's counsel conceded that

7   they had the burden to show independent creation.

8            But, really, none of that matters for the purpose of

9   this argument, because whoever bears the burden of proof,

10  independent creation is MGA's theory.  There's no dispute about      00:10

11  that.  No one says we're arguing independent creation.  MGA is

12  arguing independent creation.  And when it is a party's theory,

13  regardless of who bears the burden of proof, that party must

14  disclose that theory and include it in the final pretrial

15  conference order on pain of waiver.  And the case that so holds      00:11

16  is a case called El-Hakem, Ninth Circuit, 2005, which we cited

17  in our papers.  In that case, the plaintiff bore the burden of

18  proving that the defendant, in a retaliation case, would have

19  made the same decision to terminate but for discrimination.

20  And even though the plaintiff bore the burden -- and the             00:11

21  defendant said, Because the plaintiff bore the burden, I didn't

22  have to disclose it in the final pretrial conference order.

23           **THE COURT:**  Again, though, the Court has already --

24  putting that issue aside for a moment, based on the jury's

25  finding in Phase 1-A that Carter Bryant solely or jointly            00:11

ednesday, February 11, 2009                          Mattel vs. MGA Entertainmen

Exhibit 17 - Page 227

1    created the sculpt in question pursuant to the inventions

2    agreement, the Court has already found ownership of that sculpt

3    to rest with Mattel.

4           Why is this necessary at this point?

5           **MR. PROCTOR:**  Point of clarification, for starters, I    00:12

6    suppose.  The argument doesn't really limit it to the sculpt.

7    The argument is as to all of the dolls.  MGA's independent

8    creation defense or theory, or whatever we want to call it,

9    purports -- MGA claimed it applied to all of their dolls.  They

10   said, Oh, we independently created these dolls.    00:12

11          **THE COURT:**  But it's not disputed between the parties

12   that the same sculpt -- it's the same mold for all of these

13   dolls.  That was one of the bases upon which the Court ruled on

14   December 3rd, that there was this ongoing infringement that

15   went beyond the original generation of the four dolls.    00:12

16          Correct?

17          **MR. PROCTOR:**  Sure.

18          **THE COURT:**  If that is the case, and we already have

19   ownership of that sculpt placed in the hands of Mattel by

20   virtue of the jurors' verdict in 1-A on the creation of the    00:13

21   doll, at least either in part or solely or jointly by

22   Carter Bryant, what more is achieved by the Court ruling on

23   something which you say basically was not even raised in the

24   pretrial conference, is not brought up, and is untimely at this

25   point?    00:13

ednesday, February 11, 2009                    Mattel vs. MGA Entertainmer

Exhibit 17 - Page 228

1          Is this another alternative ground?

2          **MR. PROCTOR:**  This is the flip side of substantial

3   similarity.  We believe we are entitled to a finding of

4   judgment as a matter of law on substantial similarity and lack

5   of independent creation, which gives us the two put together,          00:13

6   judgment of infringement by the core Bratz dolls as a matter of

7   law.  So that is the ultimate pragmatic relevance, I suppose,

8   of this argument.

9          Aside from simply the legal analysis of it, the fact

10  is that MGA urged it and MGA waived it, and it lacks merit for          00:13

11  reasons I can discuss, if the Court would like.  But the

12  pragmatic aspect of it is similar comparable to the substantial

13  similarity analysis.

14         Substantial similarity, plus no independent creation,

15  means infringement in this case.  And substantial similarity is          00:14

16  a visual question, which we believe there's really only one

17  permissible answer to; and independent creation fails on the

18  merits and is waived.  And because of that, all of the dolls

19  infringe as a matter of law.

20         Because all of the dolls infringe as a matter of law,          00:14

21  whether MGA -- MGA's not right, but if MGA were right that the

22  jury found otherwise, as it continues to assert, that would be

23  immaterial.  And because of that, it provides alternative

24  grounds to support the injunction, which is an everyday --

25         **THE COURT:**  But the jury didn't find otherwise.          00:14

ednesday, February 11, 2009                    Mattel vs. MGA Entertainmen

Exhibit 17 - Page 229

1    **MR. PROCTOR:**  Correct.  We certainly think that's

2    right.  And the Court found that's right.

3        **THE COURT:**  I can understand these two claims being

4    surfaced if for some reason the jury found to the contrary and

5    you're arguing that notwithstanding that finding that as a              00:15

6    matter of law, the Court should be able to enter a finding now,

7    or a legal conclusion, that there was insufficient evidence or

8    whatever it was to support that jury finding.

9        Here, the jury ruled in your favor.  On that basis,

10   the Court made its December 3rd order.                                  00:15

11       **MR. PROCTOR:**  Perhaps, a useful construct, if I can,

12   is -- at least the way I think of this -- the briefing

13   sequencing in this case was set, and whatever the reasons were

14   way back when, the Court decided to brief the injunction motion

15   before the JMOLs.  If they had been briefed simultaneously, we          00:15

16   would have moved for an injunction, and MGA moves for -- MGA

17   opposes; we also move for JMOL.

18       MGA is arguing at that time, before the Court has

19   decided that the jury actually and necessarily found that only

20   the first four dolls infringed, and, therefore, the Court can't         00:16

21   enter the injunction that we're seeking.

22       **THE COURT:**  And the Court rejected that argument.

23       **MR. PROCTOR:**  Correct.  In the sense of this

24   hypothetical -- I mean, this isn't actually what happened, but

25   in terms of sequencing, our response would be, no, that's not          00:16

dnesday, February 11, 2009                          Mattel vs. MGA Entertainme

Exhibit 17 - Page 230

1    what the jury did; you can't divine that from the verdict,

2    number one; and, number two, even if that is what the jury did,

3    it doesn't matter because judgment as a matter of law as to

4    infringement by all of the dolls is legally required.

5           That would be a perfectly legitimate response for us          00:16

6    to make, and it would be perfectly legitimate for the Court in

7    its order -- and the injunction order is still not finalized as

8    of today -- it would be perfectly legitimate and ordinary for

9    the Court in its order to say, no, that's not what the jury

10   did, and even if it did, Mattel is entitled to judgment as a         00:16

11   matter of law on infringement.

12          That's the pragmatic consequence of the substantial

13   similarity and independent creation arguments we're asserting.

14          **THE COURT:**  Very well.  I understand your argument,

15   Counsel.                                                             00:17

16          The last point you raised was with respect to the

17   fraudulent concealment, Isaac Larian and MGA Hong Kong.

18          **MR. PROCTOR:**  Right.

19          There are two aspects to fraudulent concealment.  One

20   is concealment.  Two is lack of notice to us.  The second half      00:17

21   of it is easy.  The jury found lack of notice to us when they

22   found concealment by MGA.  So that's a finding that actually is

23   binding.  And that covers that.

24          The first aspect of it is certainly a closer call.

25   There is overwhelming evidence of concealment by Larian.  And        00:17

ednesday, February 11, 2009                          Mattel vs. MGA Entertainm

Exhibit 17 - Page 231

1    in the face of that, there are conclusory denials.  He got up

2    on the stand, and he did, in fact, deny that he intended to

3    conceal.

4             The rule is well established on summary judgment that

5    conclusory denials -- and summary judgment JMOL standards                00:17

6    mirror one another --

7             **THE COURT:**  This was more than a conclusory denial,

8    though.  There was some substance to it.  There was some

9    explanation offered that apparently the jury believed.  There's

10   some basis for the jury's decision.                                       00:18

11            We're not at summary judgment here.  We're at a jury

12   who has listened to the entire trial.  They heard the evidence.

13   It was a heavily disputed point.  It is hard for the Court to

14   understand how MGA Entertainment and Isaac Larian are somehow

15   separated on this point, given the Court's understanding of the          00:18

16   relationship between Isaac Larian and MGA Entertainment.  But

17   that's what the jury found.

18            **MR. PROCTOR:**  It's simply a function of sufficiency.

19   A scintilla of evidence is not enough to sustain a verdict.  We

20   think that's what there was here.  It's simply a measure of              00:18

21   sufficiency.

22            **THE COURT:**  Very well.  Thank you, Counsel.

23            Let me hear from MGA.

24            Again, I have read your papers, and I just want to

25   give you an opportunity to elaborate on any of these points or          00:18

ednesday, February 11, 2009                    Mattel vs. MGA Entertainmer

Exhibit 17 - Page 232

```
 1    respond to any of the points made.

 2              MR. RUSSELL:  Thank you, Your Honor.

 3              Let me just take them in the order that Mr. Proctor

 4    laid them out for you.

 5              First, on the substantial similarity, as Your Honor      00:19

 6    has noted -- and we briefed -- it's an advisory opinion;

 7    there's no reason for Your Honor to go ahead and step into the

 8    shoes and override the jury.  You made the findings you made.

 9    They have the relief they need.  There's no reason for you to

10    give an alternative ground.  I'm not even sure I see it as an       00:19

11    alternative ground.  To me it seems as if it's the same ground;

12    they just want to have Your Honor enter a actual finding that,

13    frankly, they should have asked the jury to make.  I mean,

14    that's one of the complaints we've had throughout.

15              This issue of, gosh, we don't know what the jury did,     00:19

16    is an issue of their own creation.  And so for Your Honor to

17    step in and reward their steadfast obstinacy in getting it teed

18    up for the jury seems hard to stomach, particularly when now

19    pressed, I didn't hear any explanation as to why it's actually

20    required.                                                          00:19

21              THE COURT:  Just for the record, though, Mr. Russell,

22    part of the issue was -- I'm going back in time now to the jury

23    verdict in question -- that the Court was never presented by

24    either side, MGA or Mattel, with a complete verdict form that

25    would have identified all of the products in question.  There      00:20
```

ednesday, February 11, 2009                    Mattel vs. MGA Entertainmer

Exhibit 17 - Page 233

1   was the general verdict form proffered by Mattel; there was the

2   representative sample verdict form proffered by MGA.  At no

3   time did the Court have before it an option presented by either

4   party, or urged by either party, to do a complete verdict form.

5   So I just don't want that to pass without --                    00:20

6           **MR. RUSSELL:**  That's absolutely correct, Your Honor,

7   though I think we all recognize the difficulties in having a

8   complete verdict form, with 10,000 or 15,000 items.  The jury

9   would probably still be here.  And none of us wanted that.

10          But I think our approach certainly would have been      00:20

11  the more reasonable approach, particularly since they're now

12  able to specify the core dolls.  There are a limited number of

13  core dolls.  We did offer a representative sample.

14          **THE COURT:**  That's water under the bridge at this

15  point, though.                                                  00:21

16          The question is whether or not the Court has

17  sufficiently addressed this issue, based on what findings we

18  did receive from the jury, coupled with what findings the Court

19  has made -- is there a need for a further finding, pursuant to

20  this JMOL motion?                                               00:21

21          I understand your position is that there's not.

22          **MR. RUSSELL:**  Correct.  And the problem, of course,

23  is, I'm going to stand up here in 30 seconds and tell you I'd

24  like you to reverse your findings in the December 3rd order and

25  find that the jury limited itself and should only be read to    00:21

ednesday, February 11, 2009                    Mattel vs. MGA Entertainmer

Exhibit 17 - Page 234

```
 1   have found the first generation.
 2           THE COURT:  I understand your position.
 3           MR. RUSSELL:  So I'm struggling here a little bit.
 4           But let me just take it to the next step, which is,
 5   when Mr. Proctor tells you it's just simply a visual analysis,   00:21
 6   that's just simply not true here.  That might be true for the
 7   extrinsic test, but for the intrinsic test, they have a
 8   problem.
 9           On summary judgment, when you denied summary
10   judgment, they presented, by every measure, more evidence.      00:21
11   Mr. Lowes and Mr. Hollander were before you.  In fact, they
12   told Your Honor in the motion in limine briefing number three
13   that a reasonable jury could not make the intrinsic test and
14   step into the shoes of reasonable 7- to 12-year-old tweens
15   without the assistance of Mr. Hollander and expert testimony.   00:22
16   And Your Honor agreed with it.  Then they got to trial, and
17   they didn't present it.  So for them to say this is a slam dunk
18   -- they lost it on summary judgment and presented less evidence
19   at trial.  And I think it's fair to say there was substantial
20   evidence from which a reasonable jury could find the later      00:22
21   generation dolls did not infringe, because it is undisputed
22   that there were changes in the face paint, the hair, the
23   fashions, the overall look and feel of the doll, not just the
24   body, but the doll, the product that was sold, substantial
25   evidence the jury clearly could have made a finding.  And we    00:22
```

ednesday, February 11, 2009                                    Mattel vs. MGA Entertainmer

Exhibit 17 - Page 235

1    know from the jury --

2         THE COURT:   The Court concluded otherwise after its

3    own intrinsic and extrinsic analysis.

4         MR. RUSSELL:   And I understand that, Your Honor.   But

5    to be fair to you and to us, when you were asked on the          00:22

6    injunction motions to do so, you were sitting as a court of

7    equity, making an independent finding, because you could not

8    say what the jury did or didn't do.   Now you're being asked to

9    say the jury could only have found one way.   And I'm suggesting

10   to you, a reasonable jury could have found otherwise.           00:23

11        THE COURT:   I understand your argument, Counsel.

12        MR. RUSSELL:   Okay.

13        With respect to the independent creation, I think

14   Your Honor hit most of the arguments on the head.   The only

15   point I want to make is, it's a little bit problematic to say    00:23

16   that this argument was waived when the jury found only in

17   Phase 1 that the sculpt was created by Mr. Bryant alone or with

18   us.   That's what the verdict form says.

19        And so this issue of, did we have creation that was

20   part and parcel of the sculpt or anything else, was a live       00:23

21   issue created by the very verdict form.   So it's hard to

22   understand, at the threshold, putting aside the case law.

23        THE COURT:   But it was not a live issue identified by

24   the pretrial conference order.

25        MR. RUSSELL:   In fairness, Your Honor, if you look at      00:23

1    cases that Mr. Proctor refers you to, you can see -- first of

2    all, at most charitably, there's a circuit split.  The

3    Ninth Circuit, of course, we believe, falls on our side.  The

4    Granite Productions case says the burden of proof always

5    remains with the plaintiff, is not an affirmative defense.        00:24

6           And it's no answer for Mr. Proctor to say, You didn't

7    disclose the theory.  Of course we disclosed the theory.  It

8    has been MGA's position throughout the case that they created

9    these products.  And to be further fair to us, the sculpt was

10   not listed in the pretrial conference order.  It came up during   00:24

11   the course of the trial.  So how could we have predicted that a

12   sculpt that our client made solely, they would take the

13   position that they made solely.

14          Mr. Bryant sat on the stand and admitted he's not a

15   sculptor.  And you heard Leahy and Garcia stand up and tell you   00:24

16   that the sculpt was created essentially independently of him.

17   He gave the drawings -- that was at least something to look at,

18   and then they were told to run with it.  He testified he made

19   suggestions, and he testified that those suggestions were

20   rejected.  Ms. Leahy suggested that his drawing wasn't enough     00:24

21   for her to create the sculpt.  So there is simply no evidence

22   for Carter Bryant to be the sole author.

23          **THE COURT:**  While we're discussing this, why don't we

24   discuss your ninth point in your JMOL, the flip side of this.

25   You're asking the Court to go the other extreme and find that     00:25

ednesday, February 11, 2009                          Mattel vs. MGA Entertainmer

Exhibit 17 - Page 237

1    as a matter of law, Carter Bryant was not an author of the

2    sculpt.

3            **MR. RUSSELL:**  Absolutely.

4            **THE COURT:**  How can you say that after what you just

5    indicated?

6            Clearly, the jury came back and found that at a

7    minimum -- I mean, he may have been the sole creator of the

8    sculpt -- at a minimum, he was a joint creator.

9            **MR. RUSSELL:**  That, I have to respectfully disagree

10   with, Your Honor, because, first, let's look at what the jury

11   verdict in Phase 1 actually said.

12           The verdict asked to find whether it was conceived or

13   reduced to practice while he was at Mattel.  That's what the

14   contract calls for, right?

15           The testimony is, the sculpt was not actually

16   completed while he was at Mattel; it was not reduced to

17   practice while he was at Mattel.  And we cite Your Honor to

18   some decisional law, the Pfaff, P-F-A-F-F, case, that --

19           **THE COURT:**  What it specifically says -- this is

20   question four from the verdict form -- "For each of the items

21   listed below" -- one of the items being the sculpt -- "has

22   Mattel proven by a preponderance of the evidence that the item

23   was conceived or reduced to practice, that is, created, by

24   Carter Bryant, alone or jointly with others, during the period

25   in which he was employed by Mattel, January 4, 1999, to

00:25

00:25

00:25

00:26

00:26

ednesday, February 11, 2009                          Mattel vs. MGA Entertainmen

Exhibit 17 - Page 238

1   October 19, 2000?"

2        Assuming that I find sufficient evidence in the

3   record in the Phase 1-A trial to support a finding on that, how

4   could I ever conclude as a matter of law --

5        **MR. RUSSELL:**  Perhaps I just didn't lay it out well          00:26

6   in the papers.

7        First of all, based on what we've cited Your Honor to

8   in our papers, the issue in Phase 1-A was not copyright

9   ownership.  It was timing.  That's the key issue.  Was it

10  created, for lack of a better word --                                00:26

11       **THE COURT:**  The timing of the creation.

12       **MR. RUSSELL:**  Correct.  But the creation has two

13  components, and the jury could have found either or both.  Was

14  it conceived; and on the other hand, was it reduced to

15  practice?  And this is a crucial distinction here.                   00:27

16       It could have been conceived and thus fall within the

17  ambit of the inventions agreement.

18       **THE COURT:**  How is a sculpt conceived?

19       **MR. RUSSELL:**  I think the argument, based on what I'm

20  hearing, is, the drawing was handed to Ms. Leahy.                    00:27

21       **THE COURT:**  Conceptions refer to ideas.

22       **MR. RUSSELL:**  Correct.  And ideas are not protected

23  under copyright law.

24       **THE COURT:**  I understand that.  But we're not talking

25  about an idea here; we're talking about a sculpt.                    00:27

ednesday, February 11, 2009                          Mattel vs. MGA Entertainmen

Exhibit 17 - Page 239

1          MR. RUSSELL:  If the sculpt had been reduced to

2   practice, then we might have an issue, because it conceived --

3          THE COURT:  I think you do have an issue.

4          MR. RUSSELL:  This is why I say, Your Honor,

5   respectfully, we think we're entitled to judgment as a matter          00:27

6   of law.  The evidence is that the sculpt was not completed

7   while he was at Mattel.

8          THE COURT:  Well, there's also evidence that it was

9   completed while he was at Mattel.

10          MR. RUSSELL:  We've made the argument to Your Honor          00:27

11   that there's no evidence that a reasonable jury could rely upon

12   to find it was reduced to practice while he was at Mattel.  And

13   if you credit our position there, conception is not enough for

14   copyright ownership; therefore, we would necessarily have to be

15   the --          00:28

16          THE COURT:  But the question wasn't copyright

17   ownership.  Copyright was reserved for Phase 1-B.

18          MR. RUSSELL:  I understand.  All I'm saying is, 1-A

19   only gives you timing.  1-B is going to be --

20          THE COURT:  Timing of creation.          00:28

21          MR. RUSSELL:  Timing of creation for 1-A.  1-B is

22   ownership.  Ownership requires that it be a fixed item.

23          Even if you take it a step beyond that, it's hard to

24   imagine that MGA could be anything other than at least a joint

25   author, given that Mr. Bryant is not a sculptor.  And the          00:28

ednesday, February 11, 2009                    Mattel vs. MGA Entertainmen

Exhibit 17 - Page 240

1    evidence on this point is undisputed.  He at most gave two

2    suggestions, the ankles, and I think it was the size of the

3    neck, to Ms. Leahy and said, Those are changes you should make.

4    She said no.  He agreed she said no.  She was told to do what

5    she wanted with that drawing.  She said she basically looked at          00:28

6    it for inspiration, put it away, made her own sculpt.

7              THE COURT:  I understand your argument, Counsel.

8              MR. RUSSELL:  Thank you, Your Honor.

9              THE COURT:  I'll give you a very brief chance to

10   respond, since this is your motion, Mr. Proctor.                          00:29

11             MR. RUSSELL:  Could I just do fraudulent concealment,

12   or do you want me to wait?

13             THE COURT:  Oh, I'm sorry.  Yes.  I'm sorry.  We're

14   back now to the motion -- I'm sorry, Mr. Proctor -- the

15   fraudulent concealment.                                                   00:29

16             MR. RUSSELL:  And on this one, Your Honor -- and I'll

17   just make it fairly quick -- and that is, I think Your Honor

18   nailed it.  It's not a conclusory denial by Mr. Larian.  He was

19   confronted with the very evidence that Mattel now puts before

20   you, and given a chance to explain it.  And he wasn't the only           00:29

21   person who explained it, by the way.  You had other witnesses

22   who testified that Mr. Larian never told them to conceal

23   anything.

24             And I can explain for Your Honor -- we speculate,

25   which is all we can do here, as to why the jury might have               00:29

ednesday, February 11, 2009                          Mattel vs. MGA Entertainmer

Exhibit 17 - Page 241

```
 1   reached a different result.  I don't think you should, but if

 2   you would like me to, I'd say, maybe they didn't trust

 3   Ms. Garcia.  Ms. Garcia was hammered repeatedly with

 4   allegations that she hid things.  She's an agent of MGA.  So

 5   there's at least a basis for the jury to have reasonably          00:30

 6   concluded disparately between the two.

 7            THE COURT:  Thank you, Counsel.

 8            Now, Mr. Proctor.

 9            MR. PROCTOR:  Mr. Russell just said, and MGA is going

10   to continue to say today and in the future, that everything      00:30

11   that has gone on thus far about the scope of infringement was

12   wrong.

13            Mr. Russell's words were, the scope of infringement

14   is a finding we, Mattel, should have asked the jury to make.

15            None of that has any relevance.  All of those          00:30

16   objections, which are recurring in virtually every brief, will

17   all be mooted if the Court finds, as we believe is the law,

18   that no reasonable jury could conclude the core dolls do not

19   infringe.  And that is a very pragmatic reason, a valid

20   pragmatic reason, for granting the motion; and there's          00:31

21   certainly no Article III problem in doing so.

22            On independent creation, Mr. Russell's response seems

23   to confuse the issue, to me.  Independent creation is a defense

24   to infringement.

25            THE COURT:  Counsel, I feel -- and I've certainly      00:31
```

ednesday, February 11, 2009                    Mattel vs. MGA Entertainmer

Exhibit 17 - Page 242

 1    thought about this, both before and after the Court made the

 2    decision -- I feel confident in the decision, in the Court's

 3    finding, regarding infringement.  But the standard for JMOL is

 4    different.  And that's the issue that I'm having.

 5         I don't mean to in any way back away from the Court's      00:31

 6    finding on substantial similarity, on my extrinsic and

 7    intrinsic analysis, et cetera.  I feel very comfortable and

 8    confident in that finding.

 9         At the same time, under a JMOL, it's a much higher

10    standard.  You're asking me to find that no jury could have     00:31

11    found -- or that there was simply no other way to have resolved

12    this issue other than the way that the Court did.

13         That's an entirely different question.

14         **MR. PROCTOR:**  It is.  It is a different question.

15         **THE COURT:**  You're suggesting that there's no way      00:32

16    that you could have rendered a decision to the contrary?

17         **MR. PROCTOR:**  I am.  There is no dispute.  It is a

18    different question, and it is a different standard.  There's no

19    dispute about that.  And we certainly didn't mean to suggest

20    otherwise, if we did.                                           00:32

21         However, there are constraints on the analysis, legal

22    constraints, which, in my view, require a decision in the one

23    particular direction.  The extrinsic test, when properly

24    applied, is a very specific focus on comparisons between the

25    protected elements in Mattel's works, which the Court has       00:32

ednesday, February 11, 2009                          Mattel vs. MGA Entertainmer

Exhibit 17 - Page 243

1    identified, and those same elements in defendant's works.

2         **THE COURT:**  And that I see as a little easier to

3    find.  It's the intrinsic test.

4         **MR. PROCTOR:**  The intrinsic test in this case also

5    has certain legal constraints put on it.  In this case, the          00:33

6    intrinsic test -- and the Court has a jury instruction that's

7    right on point -- the Court instructed the jury under the

8    intrinsic test that you should ask yourself whether the

9    ordinary, reasonable audience -- in this case, girls between

10   the ages of 7 and 12 -- would view the products as reflecting       00:33

11   the total concept and feel.

12        So you're not asking, under the intrinsic test,

13   whether the jurors recognize the dolls as reflecting the total

14   concept and feel of Mattel's works; you're asking whether the

15   ordinary, reasonable 7- to 12-year-old girl would do so.            00:33

16        The Court found, on the injunction motion, as a

17   matter of fact, that the ordinary, reasonable 7- to 12-year-old

18   girl would so recognize.

19        **THE COURT:**  And, again, I feel confident in that

20   finding; however, is that necessarily a finding that is            00:34

21   inescapable as a matter of law?

22        **MR. PROCTOR:**  The intrinsic test is undoubtedly a

23   typically factual test.  In this case, where the total concept

24   and feel analysis is not being done from the views of the

25   jurors, or from the perspectives of the jurors, but from the       00:34

 1    perspectives of third parties, 7- to 12-year-old girls, none of

 2    whom are jurors, that aspect of it is minimized, I would

 3    suggest, number one.

 4         Number two, where it is clear courts do, in fact,

 5    find infringement as a matter of law -- we've cited the Court          00:34

 6    to a number of courts that do that, including under the

 7    intrinsic test, and those cases are in our brief.

 8         And, number three, judicial estoppel, I would submit,

 9    applies with particular force to the intrinsic test.

10         **THE COURT:**  What about Mr. Russell's argument that             00:34

11    we're somewhat judicially estopped from earlier rulings made

12    on -- not that the Court's judicially estopped -- but this

13    estoppel argument that, given the Court's findings on the

14    motion *in limine* in the summary judgment stage, where the Court

15    was not able to find as a matter of law these issues then, why         00:35

16    should I be able to find them now?  What has changed?

17         **MR. PROCTOR:**  The evidence that came in at trial was

18    different, for starters.  Number one, there's no such rule.

19    There's no rule saying, you know, this case -- there's no final

20    judgment in this case.                                                  00:35

21         **THE COURT:**  I understand that.  I know the Court can

22    do it, but it's more of an estoppel-type argument.

23         **MR. PROCTOR:**  The evidence changed.

24         One of the primary things the Court focused on in its

25    summary judgment order was the conflicting opinions of the             00:35

```
 1    experts, the design experts; Mr. Villapuu says X, Mr. Lowes

 2    says Y, and this creates a fact issue.  Those experts didn't

 3    testify at the trial.  There is no such fact issue.

 4            And when you focus in on it, in this case you're

 5    looking at a visual analysis, under the extrinsic test, an          00:36

 6    objective one, and under the intrinsic test, one that's from

 7    the perspective of third parties, none of whom are in the

 8    courtroom.

 9            THE COURT:  Very good.  I understand your argument,

10    Counsel.                                                            00:36

11            MR. PROCTOR:  Thank you.

12            THE COURT:  Let's move on to the MGA motion for

13    judgment as a matter of law.

14            Mr. Russell, I'll permit you to go first.

15            MR. RUSSELL:  Your Honor, I don't know that I have a        00:36

16    lot to add to the papers, but I would like to take one shot at

17    you.

18            THE COURT:  All right.

19            MR. RUSSELL:  Just one.

20            THE COURT:  This is your opportunity.                       00:36

21            MR. RUSSELL:  On the preemption arguments, if I may,

22    because no argument would be complete --

23            THE COURT:  We've been around the block on this a few

24    times.

25            MR. RUSSELL:  But, Your Honor, it's funny, in              00:36
```

 1   preparing for this hearing and reading the cases again,

 2   something really struck me, which is, the preemption argument

 3   we're asking Your Honor to credit is that the aiding and

 4   abetting claims should be preempted by the Copyright Act.  And

 5   Your Honor found that there was an additional element.  And the       00:36

 6   element was the proving of the fiduciary duty.  And there are

 7   certainly tons of cases that say that.  Mattel cites

 8   Your Honor, indeed, to a case called the Brier Patch Decision

 9   from the Second Circuit, to make that point.

10          But what struck me, Your Honor -- and I don't know             00:37

11   that I've ever articulated it this way to you, and I just want

12   to try it on for you, because I think it's compelling -- is,

13   here, unlike these other cases, it is true a fiduciary duty had

14   to be proven; but there is no extra element, vis-à-vis the

15   copyright claim, because the basis for the fiduciary duty and        00:37

16   the basis for the copyright both stem from the exact same

17   thing, namely the contract.  The contract gave the copyright

18   rights, and gave the fiduciary duty rights.  And it wasn't as

19   if they were different provisions or different proof.  It's the

20   same proof.  The very same thing that establishes one claim         00:37

21   establishes the other.

22          Brier Patch tells us it's not merely enough to say,

23   as a legal matter, gosh, there's this extra element.  If that

24   were the case, you could never have preemption.  You have to

25   look at the gist of the claim, which is what del Madera did.         00:37

ednesday, February 11, 2009                          Mattel vs. MGA Entertainmen

Exhibit 17 - Page 247

31

```
 1              And here, I would submit respectfully, Your Honor,
 2    that if you look at that element, the point that really
 3    troubled the Court -- and I understand the Court's trouble,
 4    because there are certainly tons of cases on that -- this is a
 5    unique case in a way, because the fiduciary duty is so              00:38
 6    integrally related and, indeed, inextricably related to the
 7    copyright claim.
 8              So I would submit respectfully, Your Honor, that
 9    there is no extra element here as a matter of fact, even as a
10    legal matter there were, as a matter of fact -- and del Madera      00:38
11    then becomes squarely on point, because there is certainly no
12    argument but that the copyright claim and fiduciary duty claim,
13    once you take away the proving of the duty of the same.  Now
14    you are squarely within del Madera's holding.  What's being
15    asked for here is, you induce someone to give you copyrighted       00:38
16    material and exploit it.  That's del Madera.
17              So I would submit, Your Honor, that should change
18    your analysis.
19              THE COURT:  I'll take a look at that, Counsel.
20              One issue that I do want to take up with you on your      00:38
21    motion -- and I probably want to explore this more with
22    Mattel also -- is with respect to the MGA Hong Kong's liability
23    on the unfair competition claim.
24              You're arguing now that was not raised in the
25    pretrial conference order.                                          00:39
```

ednesday, February 11, 2009                                    Mattel vs. MGA Entertainmer

Exhibit 17 - Page 248

1          I don't know if you can waive a waiver, but you

2    didn't make this argument in opposition to the motion for

3    constructive trust, or at least I couldn't find it.

4          **MR. RUSSELL:**  Right.

5          **THE COURT:**  That would have been a really good time          00:39

6    to bring this to the Court's attention.

7          **MR. RUSSELL:**  The problem here, Your Honor, is, the

8    way these staggered briefs worked, this argument had already

9    been conceded by Mattel on the JMOLs.  We made this argument

10   back in August for Your Honor, and they conceded.  They didn't          00:39

11   dispute it.  They conceded it.  And that's one reason why we

12   make the judicial admissions point.

13         **THE COURT:**  Okay.

14         **MR. RUSSELL:**  So I don't know how I waived something

15   that they conceded.          00:39

16         It's also difficult to understand -- since, from our

17   perspective, how do we waive something when they didn't name

18   Hong Kong as a defendant on the tortious interference?

19         And yet, the unfair competition claim had two

20   predicates.  And we stood up here and said we should get          00:40

21   summary judgment; and they said, no, no, commercial bribery,

22   Your Honor; we've got commercial bribery.  So we sat at trial

23   waiting for, patiently, evidence of commercial bribery from

24   Hong Kong.  And you know what?  There isn't any.  They don't

25   even try to tell you that there is.  The only evidence they          00:40

ednesday, February 11, 2009                                    Mattel vs. MGA Entertainmer

Exhibit 17 - Page 249

1  cite Your Honor to are e-mails sent after Mr. Bryant signed the

2  contract with MGA.  They don't put a scintilla of evidence in

3  the record that Hong Kong even had any direct contact with

4  Bryant; that they knew he was at Mattel; much less that they

5  knew about the contract.                                        00:40

6           This is really, really, respectfully, our strongest

7  argument, I think.  I don't know how we lose this argument,

8  given the complete absence of any evidence, which I think the

9  best evidence of that is, they conceded it at first.

10          **THE COURT:**  Let's listen to Mr. Proctor.  He'll try   00:40

11 to explain how you could conceivably lose this argument.

12          I'll give you a chance to respond, because there are

13 a couple of other points I want to take up.

14          Actually, it's Mr. Zeller who's going to explain

15 this.                                                           00:40

16          **MR. ZELLER:**  Thank you, Your Honor.

17          It's actually a fairly simple explanation.  The fact

18 is that --

19          **THE COURT:**  Did you concede this?

20          **MR. ZELLER:**  We did to a degree.                    00:41

21          **THE COURT:**  Okay.

22          **MR. ZELLER:**  And I can actually read the Court the

23 exact language of what we said in this footnote.

24          Part of this has to do now, too, with the fact that

25 at that time, and even now, it's not clear what it is that MGA   00:41

ednesday, February 11, 2009                    Mattel vs. MGA Entertainm

Exhibit 17 - Page 250

34

```
 1   is moving on.  If MGA is moving on an actual unfair competition
 2   claim -- that is the phraseology that they use -- that is not a
 3   claim that went to the jury as part of Phase 1.  We reserved
 4   our rights with respect to Phase 2.
 5            Certainly, of course, the Court had held that certain    00:41
 6   aspects of our unfair competition claim were preempted, and we
 7   reserved our rights on that as well, of course.  But,
 8   fundamentally, Your Honor, there is a confusion in terminology
 9   here because of MGA interjected it.
10            We did not take an unfair competition claim to the      00:41
11   jury as part of Phase 1; so there's no basis for a JMOL,
12   period, on this.  They moved on it.  We said we have a problem
13   on that substantive issue, but it's not part of this phase.
14   And so they have now renewed it.  It has caused us concern,
15   because apparently -- and you'll see in other parts of their     00:42
16   briefs as well -- they refer to seeking JMOL on Mattel's unfair
17   competition claim.  It's a very different matter.
18            To the extent that they are arguing that judgment as
19   a matter of law should be entered in MGA Hong Kong's favor on
20   any claim that went to the jury, that we do dispute.  But the    00:42
21   whole premise of this has been that they -- as far as we can
22   understand, and have no understanding as to why they even move
23   for JMOL -- and that it wasn't a proper JMOL to begin with.
24            So I hope that clears it up.  I mean, part of this is
25   simply, even now, I don't know what it is that they think        00:42
```

ednesday, February 11, 2009                                    Mattel vs. MGA Entertainmen

Exhibit 17 - Page 251

```
 1   they're moving on.

 2        THE COURT:  Let's take up the issue that Mr. Russell

 3   raises about this preemption issue.  He says the fiduciary duty

 4   element, which the Court has relied upon as establishing that

 5   separate additional element taken out of preemption, is so        00:43

 6   inextricably intertwined with the underlying -- what you

 7   established on a copyright claim -- that it renders,

 8   essentially, the claim preempted, because they're all

 9   essentially the same thing.

10        MR. ZELLER:  I think that there are two different          00:43

11   issues that are not only being conflated here by MGA, but that

12   do not track the proper legal standard.

13        Where Mr. Russell's argument is now is that, well,

14   basically, there's no extra element, because both of the claims

15   stem from the same source, namely the contract.                  00:43

16        THE COURT:  It's more than that.  He suggested that

17   they both require proving the same conduct.

18        MR. ZELLER:  It's not though, Your Honor.  Just

19   simply because it comes from the same piece of paper, that's

20   not the same conduct, and that's not the same actions.           00:43

21        In fact, the Court will recall that -- even just

22   simply accepting part of Mr. Russell's premise, the fact is

23   that those are different parts of the contract.  Section 1,

24   Paragraph 1, is the one that deals with Mr. Bryant's fiduciary

25   duties that the Court found as a matter of law.                  00:44
```

ednesday, February 11, 2009                         Mattel vs. MGA Entertainmen

Exhibit 17 - Page 252

1          Now, by the way, the Court found that those were the

2     duties that he had as a matter of law.  It did not foreclose

3     the jury from finding that there were others; so that's part

4     one.

5          Part two is that the second paragraph of the

6     agreement is the one that vested ownership.  So there were

7     multiple breaches here by multiple acts, some of which had

8     absolutely nothing to do with any of the copyrighted works.  So

9     it is not the case that somehow -- what he's doing is basically

10    saying, well, because the obligations arise from the same

11    source, that, therefore, must be preempted.

12         And even taking del Madera as being the authority

13    that they present it as being -- which the Court will recall,

14    we don't quite agree with -- but the fact is that there, it was

15    exactly the same conduct, we're talking identical conduct,

16    between the state law claims of unfair compensation and unjust

17    enrichment, and the copyright claim.  Identical conduct, which

18    was the misappropriation of the time and effort.

19         Here, we have multiple other actions, including

20    disclosures of other kinds of information; we have acceptance

21    of payments; we have working and aiding and assisting a

22    competitor during the term of Bryant's employment.  I could go

23    on, obviously, with a litany of other kinds of conduct that we

24    have set forth in the brief that just simply is more in the

25    nature of -- again, if one wants to even look at del Madera as

00:44
00:44
00:44
00:45
00:45

ednesday, February 11, 2009                    Mattel vs. MGA Entertainmer

Exhibit 17 - Page 253

1  being the touchstone that MGA claims it is, the Court will

2  recall from that case that other kinds of misappropriation

3  claims, namely, for example, misappropriation of the effort to

4  obtain approval of the subdivision, that wasn't preempted.  So

5  the Court, I think, in del Madera is very precise in terms of     00:45

6  what it found to be preempted; and it's because it's the same

7  conduct, the exact same acts.  And that was undisputed.

8         That's just not the case here.

9         And moreover, inextricably linked, which is, again,

10  the basis of MGA's argument at this point, that's not the       00:46

11  standard either.  Just because something is intertwined or

12  linked does not lead to preemption.  There is a very

13  well-defined test, as the Court is aware of, that does not use

14  that as the terminology.  If there's the extra element that has

15  qualitatively different rights, it's not preempted.             00:46

16         **THE COURT:**  There's one other area I'd like you to

17  address, Counsel.  This relates to the Bratz name.

18         MGA cites this string of cases which talk about that

19  an idea, even if it's assigned by a contract, cannot be

20  anyone's exclusive property.  This kind of takes on the         00:46

21  ownership issue of Bratz, and what to make with it; and this is

22  something -- and I'm just trying to think about going forward

23  with respect to the injunctive relief the Court had awarded on

24  December 3rd.

25         How does the Court square these line of cases which      00:47

ednesday, February 11, 2009                    Mattel vs. MGA Entertainmen

Exhibit 17 - Page 254

1    talk about the ideas, like a Bratz, like a name Bratz, not

2    being susceptible to this exclusive assignment?

3              MR. ZELLER:  Well, first of all, Your Honor, this is

4    not -- and this was, in fact, going to be on my first point on

5    this particular argument -- this is not even a proper JMOL          00:47

6    argument.  This is not an issue that went to the jury, first

7    and foremost.

8              THE COURT:  And I understand that.  But it's

9    something which is bothering the Court.  The Court is going to

10   address the injunction shortly.  And this is an issue that has     00:47

11   caused me to reconsider that.

12             So if you're prepared to address it, I'd like you to

13   do so.

14             MR. ZELLER:  Sure.  Absolutely.

15             With the understanding that what we're really talking    00:48

16   about is more in the context of the Court's injunctive order,

17   as far as we're concerned.

18             THE COURT:  It is.  I understand that.

19             MR. ZELLER.  This has nothing do with JMOLs.

20             THE COURT:  Indulge me.                                  00:48

21             MR. ZELLER:  With respect to the Bratz name, this is

22   nothing more than the same argument that MGA had made before in

23   different garb, which is that we had to show some sort of

24   proprietary ownership right in the name before the Court could

25   grant the constructive trust motion.  That is exactly the same     00:48

ednesday, February 11, 2009                    Mattel vs. MGA Entertainm

Exhibit 17 - Page 255

 1   argument.

 2           The various cases that they now belatedly cite -- and

 3   I would actually ask the Court, if the Court is seriously

 4   concerned about these cases, that we be given an opportunity to

 5   go through and parse them in a brief, because we certainly          00:48

 6   didn't have that here, namely because we just didn't think this

 7   was the right context.

 8           But to the extent the Court is concerned about those

 9   cases, those cases arise in a whole panoply of completely

10   different circumstances.  Yes, certainly, if something is          00:49

11   publicly disclosed, the world is, perhaps, free to use it.

12   That is not the situation that we have here.

13           Moreover, much of their entire argument here is based

14   upon a misreading of the contract.  And, in particular, they

15   somehow, of course, challenge the scope of the agreement.  In      00:49

16   fact, their papers are quite explicit about this, which is

17   basically yet again attacking the notion that an idea or a

18   design -- or, excuse me, a development, any of these things

19   were assignable under the contract.  And so they attack the

20   scope of the agreement on that.  And there's just simply no        00:49

21   question that we are on the right side of that; that that is

22   something that was part and parcel of what Bryant's obligations

23   were to Mattel.

24           But to also reiterate a point that I think we did

25   show on the injunction -- and we're happy to elaborate on -- in    00:49

ednesday, February 11, 2009                            Mattel vs. MGA Entertainmen

Exhibit 17 - Page 256

1   order to provide the constructive trust type remedy, it doesn't

2   require the kind of proprietary interest that MGA is attempting

3   to conjure up here as being a requirement.  It's not in the

4   cases.  Moreover, when we look at the statements or the other

5   cases, it says they have to disgorge benefits.                    00:50

6       **THE COURT:**  So this is an argument, then, that it's

7   not so much that the Court is giving exclusive rights to

8   Mattel; it is saying that the matter of the equitable remedies

9   being imposed that the portion of profits obtained from the use

10  of that idea non exclusively should be warranted or should be   00:50

11  afforded to Mattel.

12      **MR. ZELLER:**  Precisely, Your Honor.

13      Also, in particular, because it's in the equitable

14  context, the Court has broad powers.  The cases are absolutely

15  clear that the Court has very broad powers to fashion the right  00:50

16  kind of remedy to basically put the parties back where they

17  belong.  The Court is not excluding anybody else from doing

18  anything else.  All the Court is doing is basically righting a

19  wrong.

20      **THE COURT:**  Even MGA, to a certain extent, provided     00:51

21  that the profits from it are disgorged.

22      **MR. ZELLER:**  Well, the benefit.  I would use the

23  terminology in this context as being the benefit.  But, yes,

24  the profit, the advantage.  And that's why, in fact, the

25  courts, when you look at the restatement or the court           00:51

ednesday, February 11, 2009                    Mattel vs. MGA Entertainmen

Exhibit 17 - Page 257

1    decisions, or whatever, they never talk about, well, the wrong

2    party, the party who participated in the breach of fiduciary

3    duty, has to turn back the, quote, "proprietary interest."

4    Terms like "benefit," "advantage," "profit," those are what are

5    used.                                                                          00:51

6            And I'll also harken back to our briefing on the

7    injunction, Your Honor, where we quoted the restatement.  And

8    the restatement basically says, when it talks about

9    disgorgement of benefit, it makes very clear that it's

10   anything; any kind of advantage.  It is not limited, and         00:51

11   certainly is not limited in the equitable context, to something

12   that has some magical terminology of proprietary interest

13   attached to it.

14           The fact is, Carter Bryant took a doll project to

15   MGA -- and that included a name, a bunch of information, this     00:52

16   whole package of a doll line -- and provided that to MGA.  That

17   was the initial wrong.  It was wrong then, and they obtained

18   benefits from that.  And part and parcel of that was the name

19   and the use of the name.

20           **THE COURT:**  I understand your argument, Mr. Zeller.    00:52

21           **MR. ZELLER:**  Thank you, Your Honor.

22           There's just one thing I would like to elaborate on

23   in terms of the opposition to the JMOL, since I'm not sure that

24   this point was really raised in the briefing, because it came

25   up more in MGA's reply.                                          00:52

```
 1            They basically make an argument that because a
 2    preemption wasn't waived.  I'd like to direct the Court's
 3    attention to a case called Johnson v. Armored Transport, which
 4    is 813 F.2d 1041.  It's a 1987 Ninth Circuit case.  But it
 5    makes it very clear that -- the Ninth Circuit said there that        00:53
 6    where preemption involves a choice of law, as opposed to a
 7    choice of forum, it is a waivable defense.  And, here, because
 8    there's no argument that the Court would still have
 9    jurisdiction, even if there was preemption by Cutsa of Mattel's
10    claims, it is a waivable defense in this context.                    00:53
11            So I did want to raise that additional argument,
12    because the language there makes very clear that where the
13    preemption argument only affects choice of law but not choice
14    of forum, it's waivable.  And it was waived in that case.
15            THE COURT:  Thank you, Mr. Zeller.                           00:53
16            Mr. Russell, if you would follow up on all three of
17    those arguments.
18            MR. RUSSELL:  If I could lead with the MGA Hong Kong
19    discussion, because I think Mr. Zeller said something that,
20    frankly, I'm a little disappointed with.  He said to Your Honor     00:53
21    that the briefs made certain arguments.  You can read their
22    brief as carefully as you want.  They do not raise the
23    arguments that he raised before you today, which is to say that
24    this is not the proper basis for a JMOL.  We, of course, think
25    that it is, because we're asking for a judgment as a matter of      00:54
```

ednesday, February 11, 2009                         Mattel vs. MGA Entertainmer

Exhibit 17 - Page 259

```
 1    law on the claim and the underpinnings, whether to you or to

 2    the jury; and that is appropriate.

 3            THE COURT:  Well, clarify for the record what exactly

 4    you are seeking for the Court to do on this point.

 5            MR. RUSSELL:  We'd like you to enter judgment as a        00:54

 6    matter of law for MGA Hong Kong on that claim.

 7            THE COURT:  That...

 8            MR. RUSSELL:  Unfair competition across the board.

 9    Because there are only two predicates that could support the

10    unfair competition claim, tortious interference -- and I think  00:54

11    it's a fair argument by us to say, You didn't name them as a

12    defendant, so did you really think they were a defendant?

13            And there's no evidence to prove that.

14            And as to commercial bribery, there's no evidence; so

15    neither predicate was proven to you or to the jury.             00:54

16            But let me read to you, since Mr. Zeller alluded to

17    it, what they wrote, because I think it was quite misleading.

18    Here's what they wrote in their Footnote 15, Page 5, the first

19    time we did this:  "Mattel does not" --

20            THE COURT:  This was in their present motion?           00:55

21            MR. RUSSELL:  In the prior iteration, where they

22    expressly waived.

23            "Mattel does not oppose MGA's motion as to the

24    Phase 1 unfair competition claim against MGA Hong Kong as

25    limited by the Court."                                          00:55
```

ednesday, February 11, 2009                    Mattel vs. MGA Entertainmen

Exhibit 17 - Page 260

```
 1            The limitation he refers to, Mr. Zeller:  "Mattel

 2   reserves all right as to its Phase 2 unfair competition

 3   claims."

 4            I mean, they expressly waived this argument.  And for

 5   us to be told now that, Geez, we didn't know this argument was      00:55

 6   coming our way, that is very hard, indeed, to take.

 7            THE COURT:  Very well.

 8            Address the other points, Counsel.

 9        MR. RUSSELL:  With respect to the Desny line of

10   cases, Your Honor -- and I think there's a couple of points to      00:55

11   be made here.  First, the contract just simply doesn't cover

12   the name, and we've made that point clear now, and it's not

13   simply, as he said, dressing the argument up in different

14   clothing.

15            There are two points to be made.  One is the one that      00:55

16   you heard a lot about on the constructive trust.  You can't

17   transfer an item -- you can't assign an item that has no value.

18        THE COURT:  Wait a second.  Let's go back to your

19   first argument.  You say the contract does not cover the name.

20            The Court has held contrary to that.  It's not            00:56

21   self-evident.  So you might want to explicate.  It's not

22   self-evident that the Court is wrong on this.  I may be wrong,

23   but I don't think it's self-evident that I'm wrong.

24        MR. RUSSELL:  I would never suggest that it's

25   self-evident, Your Honor.  I think what we're trying to say        00:56
```

ednesday, February 11, 2009                              Mattel vs. MGA Entertainmen

Exhibit 17 - Page 261

1    here is, if you look at the scope of the contract, the contract

2    might protect ideas.  It's possible that it does.  And if so,

3    California would certainly --

4            **THE COURT:**  I appreciate the concession.

5            **MR. RUSSELL:**  Thank you, Your Honor.                    00:56

6            But that doesn't answer the question, unfortunately.

7    The question is -- the contract doesn't say -- does not use the

8    word "ideas."  That word does not appear --

9            **THE COURT:**  It does not use the word "ideas,"

10   correct.                                                           00:57

11           **MR. RUSSELL:**  It uses "inventions"; things that are

12   subject to copyright ability, patent ability, and the like.

13           Even if it used the word "trademark" --

14           **THE COURT:**  Well, long ago, the Court interpreted the

15   contract, and based on its interpretation, found that the idea   00:57

16   of the name falls within that.

17           **MR. RUSSELL:**  I understand that, Your Honor.

18           But now we're trying to take you back and say -- even

19   if you accept that as true, now we're at a different place.  In

20   other words, that's the first part of the argument which          00:57

21   Mr. Zeller is saying we're just redressing.

22           The second part, which is the part I want to talk

23   about today, which is, I think, much more expounded upon in

24   these papers, is the fact that they have no right to a

25   monopoly, even if you assume that they own it.                    00:57

ednesday, February 11, 2009                          Mattel vs. MGA Entertainmer

Exhibit 17 - Page 262

```
 1          THE COURT:  I'm not giving them a monopoly on the

 2   name.

 3          MR. RUSSELL:  But you are if you're saying you are

 4   precluding us from using the name.  And we had the right, then

 5   and now --                                                    00:57

 6          THE COURT:  Respond to the argument that Mr. Zeller

 7   makes, and that is that what I'm doing is giving an equitable

 8   remedy, which may have the effect, certainly, of precluding MGA

 9   from using it.  But what these cases seem to speak to, or at

10   least the ones that I've looked at seem to speak to, is the    00:58

11   idea of saying that one company as opposed to the world has a

12   monopoly or exclusive right to that idea.

13          I've been saying that, I think, since well before the

14   trial; that it doesn't make any sense to suggest that an idea

15   such as that can somehow be copyrighted, monopolized.  I get   00:58

16   that, and I've been saying that probably longer than anybody in

17   this courtroom.

18          MR. RUSSELL:  I think the link up here is -- so then

19   you look at Desny and you look at Chandler, which say ideas are

20   not subject to monopoly; anyone who's not subject to the       00:58

21   contract is free to use the idea.  And then you have to

22   juxtapose that necessarily with the fact that, how can it be

23   wrongful for someone to use something to which they have a

24   right under California law?

25          Anyone can use the name Bratz.  And it is in the        00:58
```

ednesday, February 11, 2009                    Mattel vs. MGA Entertainmen

Exhibit 17 - Page 263

1    record, and Your Honor has the evidence, the name Bratz was in

2    the public domain.  It had been used many, many years prior to

3    the time that Mr. Bryant came up with the idea and brought it

4    over to MGA.  And, in fact, MGA even purchased it, albeit in a

5    different submarket, for children's clothing from Lovins.  But          00:59

6    the name was out there.  So MGA was perfectly within its right;

7    and, therefore, it is not wrongful for it to go ahead and do

8    that.  And that's what Desny and Chandler and those cases are

9    saying.

10          And I think Your Honor was troubled the last time,               00:59

11    saying, Well, there's this contractual right.  Now we're

12    saying, if there's no exclusivity and if anyone can use the

13    name, it can't be wrongful.  And we're not talking about harm

14    to Mattel.  Mattel admits it had no harm here.  Their entire

15    theory of the trial was no harm to them.                               00:59

16          **THE COURT:**  They're trying to reclaim the benefit.

17          **MR. RUSSELL:**  A benefit that we created.  And

18    according to Desny and Chandler, we had the right to create it.

19    They had no right to exclude us from using it.

20          **THE COURT:**  I understand your argument.                      00:59

21          Do you want to address Mr. Zeller's points on

22    preemption?

23          **MR. RUSSELL:**  I think the difficulty here is --

24    first, I'd like to just pick up on something that I think is,

25    in essence, a concession from Mr. Zeller.  And that is, he             00:59

ednesday, February 11, 2009                                    Mattel vs. MGA Entertainmen

Exhibit 17 - Page 264

1    seems to be agreeing that Your Honor can parse the claim and

2    preempt portions of the claim, if nothing else.  So if there's

3    any portion of the fiduciary duty claim that overlaps, you can

4    preempt it, which is exactly what del Madera did.

5           The only way he gets around this argument is to say,                01:00

6    well, because one part of the contract defines what is an

7    invention, and the other part obligates him to keep it within

8    Mattel, somehow there's two distinct sets of proof.  Both had

9    to be proven for copyright.  Both had to be proven for the

10   breach of fiduciary duty.  There is no distinction.  These                01:00

11   claims are directly overlapping.

12          His referral to del Madera proves the point.

13          In del Madera, just like here, an employee had a

14   contract, a joint venture, had a contract that said thou shalt

15   not take X work products and give it to someone else.  And              01:00

16   that's exactly what that person did.  As part of the proof,

17   they would have had to prove a fiduciary duty and then the

18   taking.

19          We've got that exact hand in glove here, so I don't

20   see the distinction he's trying to rely upon.  I really think         01:01

21   they are indistinguishable.

22          **THE COURT:**  Thank you, Counsel.

23          **MR. RUSSELL:**  Thank you, Your Honor.

24          **THE COURT:**  I'm going to turn now to MGA's motion for

25   a remittitur.                                                          01:01

1     **MR. NOLAN:**  Thank you, Your Honor.

2          Your Honor, like all of the briefs that have been

3     submitted in this case, the arguments are well set forth.  The

4     evidentiary record is amply cited to.

5          I want to, however, bring to the Court's attention          01:01

6     something that crossed my mind last night when I was preparing.

7          In essence, everything that we've been talking about

8     this morning is asking you to look at prior rulings that you've

9     entered and apply them to how the evidence played out at trial,

10    whether or not we're talking about even the last item with     01:01

11    respect to the awarding of the name Bratz.

12         In this case, in this trial, Mattel and MGA adopted

13    trial strategies which they believed would lead to what result

14    they hoped for from the jury.  In this motion, more than any

15    other argument that's being presented to you today, what we're   01:02

16    asking you to do is actually embrace what you -- since it might

17    be the last substantive argument I might make, last night, I

18    thought it was masterful how you positioned Mattel prior to the

19    start of trial on the obvious issue that there may be a very

20    strong likelihood in this case that the jury, in awarding the   01:02

21    damages, would award duplicate damages.

22         The discussions first arose in the summary judgment

23    stage, where you were identifying -- as they were fine tuning

24    what the different elements were, the Court made the point,

25    obviously, these type of claims could result in duplicate       01:03

ednesday, February 11, 2009                    Mattel vs. MGA Entertainme

Exhibit 17 - Page 266

1    damages, the same result.

2           When we got to the trial, and we were in, in

3    particular, the phase where we were talking about jury

4    instructions, we, of course, proposed a jury instruction

5    fundamentally different than the one requested and the one the          01:03

6    Court gave, which is Jury Instruction Number 44.

7           Mattel clearly said, Our concern without this

8    instruction is that the jury, based on the presentation that

9    has been provided to them and the arguments that were made, may

10   very well likely put all of the damages on one verdict, pick          01:04

11   one --

12           **THE COURT:**  Right.

13           **MR. NOLAN:**  -- and then say, You know, the work has

14   been done, and we gave you everything we wanted, and they put

15   zero.  And Mr. Proctor said, That's our concern.  And the Court       01:04

16   again posed to both -- I think it was Mr. Zeller, Mr. Proctor,

17   and again Mr. Price, Do you acknowledge the Court's authority

18   to sort through and determine the duplicative nature, if any,

19   of the awards granted?

20           Getting that assurance in the instructions that were         01:04

21   provided to the jury, the Court, with the agreement of Mattel,

22   said to the jury -- and I quote this; this is probably the only

23   time I'll really quote specifically from something in the

24   brief, and I apologize, because it just sets the tone and the

25   tenor of our argument -- "Mattel seeks damages under more than        01:05

ednesday, February 11, 2009                    Mattel vs. MGA Entertainmer

Exhibit 17 - Page 267

1    one legal claim or theory, and as to three defendants.  In

2    awarding damages as to any particular claim or defendant, you

3    should not consider or discount your award based on amounts, if

4    any, that you award as to any other claim or defendant.  That

5    is, you should award the full amount of damages you find          01:05

6    appropriate, if any, as to each separate claim against each

7    defendant."

8           The last sentence, to the jury:  "The Court will

9    ensure, once your verdict has been reached, that the plaintiff

10   does not obtain duplicative damages."                             01:06

11          Last night, in rereading the closing argument --

12   which by the way, six months later, it's a little bit easier to

13   reread than sitting through trial and listening to it --

14   Mr. Price, in his closing argument, in the last five minutes,

15   Your Honor, put up -- the Court may recall this -- put up --      01:06

16   it's the last graphic the jury saw -- it was a mock verdict

17   form that was filled out.  And at various pages, including

18   Page 8259, it was clear that Mattel published to the jury and

19   told them to fill out the verdict form, indicating that

20   starting with Page 2, first claim, "Please, based on the         01:07

21   evidence that was presented, write in the amount of

22   $1.4 billion."  If you want to do prejudgment interest -- and

23   they gave a little bit lower number.

24          Then with respect to the second item, they said --

25   and they filled out the form -- $779 million against            01:07

ednesday, February 11, 2009                        Mattel vs. MGA Entertainmen

Exhibit 17 - Page 268

```
 1   Isaac Larian, and admitting to the jury what Mr. Wagner had

 2   been forced to admit in his examination, that the $779 million

 3   awarded or requested by Mattel represented distributions from

 4   MGA that were already included in the number that was published

 5   on the first line.                                          01:07

 6          And Mr. Quinn, in addressing it, said to the jury --

 7   and this is at Page 8136 -- "And I want to take a moment to

 8   address the question that may have occurred to some of you.

 9   Included in MGA's $779 million in profits is money that went to

10   Isaac Larian.  You might be concerned that Mattel is trying to  01:08

11   double count by asking for it to be awarded against both

12   Mr. Larian and MGA.  Rest assured, as the Court has already

13   indicated (Jury Instruction 44), the Court will not let that

14   happen."

15          THE COURT:  Let me ask a couple of questions,          01:08

16   Counsel.

17          There's no question that the amount that you just

18   referred to -- and I do recall Mr. Price doing just that -- the

19   amount that he was requesting the jury to put in greatly

20   exceeded what the jury actually did put in.                  01:08

21          MR. NOLAN:  Yes.

22          THE COURT:  Okay.

23          How would you define a duplicative damage?

24          MR. NOLAN:  A duplicative damage would be an amount

25   of money intended by the jury to compensate for the same      01:09
```

ednesday, February 11, 2009                          Mattel vs. MGA Entertainmer

Exhibit 17 - Page 269

53

```
 1   injury.

 2            THE COURT:  Okay.

 3        You used the words "intended by the jury."

 4        The Court can't look into what the jury meant.

 5            MR. NOLAN:  No.                                    01:09

 6            THE COURT:  The Court can only look at what the jury

 7   did.

 8            MR. NOLAN:  That's correct.

 9            THE COURT:  So when we talk about the Court saying

10   that it's going to eliminate a duplicative award, we've got to  01:09

11   look to see if it really is duplicative; that's what I need to

12   do.

13            MR. NOLAN:  Correct.

14            THE COURT:  How do I know if something is

15   duplicative?                                                 01:09

16            MR. NOLAN:  Interesting question, addressed not

17   directly by any of the cases cited by Mattel, because in a

18   sense, this case, Your Honor, respectfully, is almost the

19   perfect trifecta.

20        You do not have to speculate what the jury did.  You    01:09

21   don't.  Because you told them to award the full amount of

22   damages on each claim they find.  The damage theory presented

23   by Mattel, regardless of the claim or the cause of action, was

24   identical.  It was disgorgement of profits.

25        In this circuit, as is the rule across all of the       01:10
```

```
 1   circuits, the presumption is that the jury followed the Court's
 2   instruction.  We do not have to speculate.  You told them to
 3   award full measure of damages.  Mattel told them to fill out
 4   the verdict form and put in the same number for the causes of
 5   action, with the exception of the copyright.                    01:10
 6          But what was interesting about the argument on the
 7   copyright is that all they did -- it wasn't -- when I say
 8   "all," I don't mean that in a pejorative way -- what they did
 9   was, they said, for copyright, what you need to do now is add
10   the two figures that you put on the state law claims; don't      01:11
11   apply apportionment, because it's willful.  And so, in essence,
12   they were arguing on the copyright claim.  It's the same answer
13   as to the first.
14          And, of course, the Court could go back and look at
15   the transcript.  It's quite elegant how Mr. Price and Mr. Quinn  01:11
16   handled this.
17          So my answer to you, Your Honor, is that I suppose
18   that there is a case where a lawyer, making a similar argument
19   to you, might have to confess, to get engaged in this analysis,
20   you do have to speculate.  In this case, Your Honor,             01:11
21   respectfully, you do not have to speculate because you told
22   them to award the maximum damage.  Mattel's lawyers told them
23   to award the same amount of money on each claim.
24          The only difference is that the jury did not agree
25   with the amount.  They agreed with the formula that they were    01:12
```

ednesday, February 11, 2009                          Mattel vs. MGA Entertainmen

Exhibit 17 - Page 271

1    told to pursue, disgorgement of profits, main remedy; and they

2    answered the question consistently.

3              THE COURT:  Your motion is one for a remittitur.

4              What, from your perspective, is the standard for a

5    remittitur in the Ninth Circuit?                              01:12

6              MR. NOLAN:  Whether or not the -- and this is under,

7    I think it's Rule 59 -- whether or not, from the presentation

8    of evidence to the jury, that the jury awarded duplicative

9    damages, and that the verdict reflected on the verdict form

10   establishes that the amounts are identical for each of the    01:12

11   causes of action as set forth.

12             THE COURT:  Isn't the standard more, whether or not

13   the evidence supports the total awarded damages?

14             MR. NOLAN:  No.  Respectfully, Your Honor, I think

15   that might be the standard in those situations, the cases cited  01:13

16   by Mattel, where there may be an ambiguity or an inconsistency

17   in the verdict.  But as I said when I prefaced my answer to the

18   Court's question about speculation, that's not this case.

19             THE COURT:  You would concede that if that were the

20   standard, then the relatively small amount of the award,       01:13

21   compared to what was being sought, what the experts testified

22   to, what there was evidence of, would be supported by the

23   evidence?

24             MR. NOLAN:  Yes.

25             THE COURT:  Fair enough.                             01:13

ednesday, February 11, 2009                    Mattel vs. MGA Entertainmen

Exhibit 17 - Page 272

1          **MR. NOLAN:**  But I want to make certain that we're

2     clear on this.

3          **THE COURT:**  I understand you disagree with that

4     standard.  But if that were the standard --

5          **MR. NOLAN:**  If that was the standard.  But if that          01:13

6     standard was applied to this case, then there is an immediate

7     tension, because the Court will have to find against the

8     presumption that the jury followed your instructions.

9          In the cases that Mattel presents to Your Honor, they

10    don't have the trifecta.  They don't have the court          01:14

11    acknowledging that you have the authority, which Mattel

12    conceded, to reduce on the remittitur.

13         Number two, the parties, expecting you to deal with

14    it, arguing to the jury in that vein, and ultimately having the

15    penultimate jury instruction that tells the jury, Do not          01:14

16    concern yourself with this; we will take that and we'll correct

17    it.  Mr. Quinn and Mr. Price made the same point.

18         So I think the standard that they would like to apply

19    in this case is irrelevant, given the way the Court was

20    instructing the jury in this case, at Mattel's request.          01:14

21         **THE COURT:**  Very good.

22         There's another point I'd like you to address,

23    unrelated to the remittitur, what I'm calling the $60 million

24    question, the $30 million versus the $90 million, on the

25    $10 million award against Isaac Larian for the intentional          01:15

ednesday, February 11, 2009                    Mattel vs. MGA Entertainmer

Exhibit 17 - Page 273

```
 1   infliction of emotional distress.

 2           I think I understand your argument.

 3           The question is, notwithstanding the jury's decision

 4   of no intentional act by Mr. Larian, would it be proper for the

 5   Court to impute on Mr. Larian, as the principal for MGA, what      01:15

 6   the jury found was the intentional act by MGA?

 7           MR. NOLAN:  Respectfully, no, Your Honor.

 8           And the reason for it, again, as I go back to -- and

 9   we all know painfully and recall the time that we spent arguing

10   these very issues, about the form of the verdict form and the     01:15

11   jury instructions.

12           Mattel specifically asked for a finding against

13   Isaac Larian separate from MGA.  There was a purpose for that.

14   A lot of evidence was devoted to the distinction between

15   Isaac Larian and MGA.  Mr. Russell addressed it in kind of a      01:16

16   speculative form, Well, how can it be?  You posited the

17   position that MGA is so much Isaac Larian.

18           Well, what was interesting is that for purposes of

19   the trial, there was a great amount of effort put in by both

20   Mattel and MGA to prove that Isaac Larian had no intent to        01:16

21   conceal anything at any given time.

22           Despite anybody's view of it, here, we know one thing

23   for certain; that the jury found that Isaac Larian had not

24   willfully concealed that information; and we think it would be

25   fundamentally inappropriate now to go back and redo a verdict     01:16
```

ednesday, February 11, 2009                          Mattel vs. MGA Entertainmer

Exhibit 17 - Page 274

1   form that Mattel had proposed to the Court, and now impute the

2   knowledge of MGA to Isaac Larian when the award is against

3   Isaac Larian personally.

4        I've had a note, as I often do.  If I might, Your

5   Honor, just read it from the brains of the outfit here.          01:17

6        Mr. Russell points out that Mattel should not be

7   allowed to recover for the same injury more than once.  They're

8   getting that amount, presumably, in the amount of award that

9   was made to MGA separate from Mr. Larian.  And also Mattel

10  never pled an alter ego theory here and that was never          01:17

11  presented to the jury; so I do think that's not a fair

12  imputation.

13       I do want to go back, if I might, before I sit down,

14  to address -- I think the Court constructed it as the

15  $30 million versus the $60 million question.                    01:17

16       Your Honor, we, of course, take the position that

17  there's more duplicity here than just the one that runs across

18  the claims.  There is no dispute -- and, again, it was

19  acknowledged by their own expert and conceded by Mattel -- that

20  there wouldn't be a double recovery if the jury were to find    01:18

21  against Mr. Larian and MGA.  And yet, that's, in fact, what

22  happened, because the money, if you go to the first verdict

23  form on the first claim --

24            THE COURT:  I understand your argument there.

25            MR. NOLAN:  I think, Your Honor, we briefed the       01:18

ednesday, February 11, 2009                    Mattel vs. MGA Entertainmer

Exhibit 17 - Page 275

```
 1   question of the conversion, whether or not they get the
 2   drawings, whether or not the money --
 3           THE COURT:  Yes.
 4           MR. NOLAN:  That was an interesting way to end the
 5   brief, but --                                              01:18
 6           THE COURT:  More interesting than significant, I
 7   suppose.
 8           MR. NOLAN:  But better than ending on a footnote.
 9           THE COURT:  We're not going to spend a whole lot of
10   time on that today.                                        01:18
11           MR. NOLAN:  Nor, Your Honor, I hope, do we spend any
12   time at all on the issue of waiver or so-called editorial
13   comments made by jurors, for the reasons as we set forth in our
14   objections.
15           THE COURT:  We're not going to go down that road    01:19
16   either.
17           Thank you, Counsel.  I'll give you a chance to
18   respond.
19           Mr. Quinn?
20           MR. QUINN:  Thank you, Your Honor.                  01:19
21           On the issue, Your Honor, about whether there are
22   duplicative damages in the jury's verdict, to quote
23   Justice Ginsburg in the Carter case, that's a question now that
24   is unknown and unknowable.  We simply can't know how the jurors
25   came up with those numbers or what they represent.         01:19
```

ednesday, February 11, 2009                    Mattel vs. MGA Entertainme

Exhibit 17 - Page 276

60

```
 1          THE COURT:  In reality, I agree with you.  But the

 2    argument is, as a matter of law, we make certain legal

 3    fictions, perhaps, that the jury carefully and diligently

 4    follows our instructions; and then using logical reasoning,

 5    Mr. Nolan argues, we can assume what the jury did.              01:20

 6          MR. QUINN:  We can make assumptions, but that would

 7    be improper, Your Honor.  That renders the verdict an advisory

 8    verdict.  The standard here -- and it wasn't disputed in the

 9    papers -- is that it's impossible to come up with any other

10    explanation.                                                    01:20

11          This Court has already recognized that there are

12    other possible explanations.  There are explanations that there

13    was a certain amount of profits, and they decided to allocate

14    those across the various causes of action.  That would not have

15    been inconsistent with the instruction that the Court gave the  01:20

16    jury, Instruction Number --

17          THE COURT:  How was that --

18          MR. QUINN:  It was not an instruction like you

19    sometimes see, Your Honor, that says you're to treat each cause

20    of action, each claim, as if it's the only claim in the case.   01:20

21    They weren't told that.  They were told, Award the full amount

22    that you regard as appropriate for each one.

23          It's not inconsistent for them to say $20 million for

24    this one, $20 million for this one, $20 million for this one.

25    It's not impossible that they did that.  And we have precedent   01:21
```

Exhibit 17 - Page 277

1   here in the Ninth Circuit, and that's the Banes case, Your

2   Honor, and the Court has that instruction.  It's essentially

3   the same instruction as this jury was given.  And the Court of

4   Appeal basically said, Well, the jury allocated the damages,

5   the economic damages, to one cause of action, but they                01:21

6   certainly must have also recognized that there were economic

7   damages on the other statutory causes of action to support the

8   punitive damages award.

9        The Banes case is directly on point.

10       But, Your Honor, the reason this is unknown and           01:21

11  unknowable now is because MGA didn't pursue the question in

12  polling the jury, either before or after the jury was

13  discharged.  We've cited the Court to the Yeti case, which

14  says, if you don't do that, that's a waiver.  And there are

15  cases, the Gentile case, the Indu Craft case, which talk about    01:22

16  the importance of polling the jury in order to ferret out

17  whether, in fact, there is any duplication in the damages.  We

18  don't have to get to those statements by the jurors to

19  recognize that there are other ways of understanding how they

20  could have reached that conclusion.  This was a waiver.  This     01:22

21  was something that should have been brought up before.  And

22  when we tried to bring it up afterwards, after the jury was

23  discharged, and cited the Court to authority that the Court

24  could recall the jury and ask them this very question, MGA

25  opposed doing it.                                                  01:22

ednesday, February 11, 2009                          Mattel vs. MGA Entertainmer

Exhibit 17 - Page 278

1          **THE COURT:**  Counsel, I think I brought both parties

2   in -- Mr. Corey representing Mattel, and I think Mr. Nolan was

3   here for MGA -- and both parties waived that at that time.

4          **MR. QUINN:**  Bringing the jurors back to ask them

5   that?                                                                        01:23

6          **THE COURT:**  I asked them if there was anything they

7   wanted to pursue, like this note that we received.

8          **MR. QUINN:**  I wasn't here, Your Honor.  I apologize

9   if I have misstated what happened there.  But the point is,

10  there was an opportunity.                                                    01:23

11         **THE COURT:**  There was an opportunity afforded to both

12  sides on this point shortly after the jury -- the jury had been

13  discharged, but this was a very -- it was either the day of or

14  the day after; I can't remember exactly when it was.

15         **MR. QUINN:**  Your Honor, perhaps, then, the waiver        01:23

16  argument doesn't have as much force with respect to the post-

17  discharge issue.  But before the jury was discharged, there was

18  an opportunity to do what courts have recognized is valuable

19  and important to do in trying to determine whether it's

20  duplicative damages; and that is to poll the jury.  And MGA did   01:23

21  not ask that.  That's why we find ourselves where we are now.

22         Your Honor, I wouldn't be up here making this

23  argument if they had filled out the verdict form the way

24  Mr. Price asked them to in the last three minutes of his

25  argument.  Then we would know, if they had put $1.2 billion, or  01:24

ednesday, February 11, 2009                    Mattel vs. MGA Entertainmen

Exhibit 17 - Page 279

```
 1    whatever the number was, after each cause of action.  There's

 2    no explanation for that, except it's duplicative.

 3            But the amount here, the aggregate amount is well

 4    within what was supported by the evidence.  And, in fact, MGA

 5    doesn't challenge that.  The $100 million, they never at any        01:24

 6    point argue that the evidence did not support a $100 million

 7    total award.

 8            THE COURT:  Counsel, on the $10 million question,

 9    with respect to Mr. Larian and MGA, I know you argued that I

10    should impute the intentional finding.                             01:24

11            MR. QUINN:  We do argue that, Your Honor.  On a very

12    practical level, we find ourselves in a very strange position

13    in that we have a jury determination that a claim was

14    fraudulently concealed from Mattel, but the principal of that

15    company is immunized from liability, under MGA's theory.  Even      01:25

16    under their theory, we were deprived of that -- under their

17    theory, we're deprived of that claim against Mr. Larian because

18    of his company's action, the fraudulent concealment.  And I

19    would just submit, Your Honor, it doesn't make any sense.

20            To the extent that this is an issue of alter ego,          01:25

21    alter ego is an issue that's been expressly reserved, at MGA's

22    urging, for Phase 2 of this case.

23            THE COURT:  The case that you rely on imputes an

24    agent's knowledge on the principal.  You're asking me to do the

25    reverse here, basically.                                           01:25
```

ednesday, February 11, 2009                          Mattel vs. MGA Entertainmen

Exhibit 17 - Page 280

64

```
1              Is there any authority for doing this?

2         MR. QUINN:  I don't know that that's true, Your

3    Honor.

4              This is a corporation, which is, I think the evidence

5    supports, an extension of Mr. Larian.  I mean, he owns the

6    corporation.  It's almost a corporation sole.

7         THE COURT:  Not quite, but there's no question that

8    the corporation would be the principal.  Mr. Larian is

9    unquestionably the agent of the principal; he speaks for MGA;

10   he has spoken here in court for MGA.

11             Are you suggesting that MGA is his agent?

12        MR. QUINN:  Yes, Your Honor.  I'm suggesting that MGA

13   can also be his agent; that is what I'm suggesting.

14             But, Your Honor, on a more basic level, if I could

15   take a step back -- we've cited the cases we've cited.  The

16   argument is that the claim against Mr. Larian is barred by the

17   statute of limitations because of the finding on fraudulent

18   concealment.

19        THE COURT:  Right.

20        MR. QUINN:  The basis for that is this Court's prior

21   ruling in a previous order that the discovery rule does not

22   apply to claims for intentional interference.

23             Your Honor, I went back to try to figure out how we

24   reached that conclusion.  In the Court's order of June 2nd, the

25   Court says that, referring to a previous ruling, the May 27,
```

01:26

01:26

01:26

01:27

01:27

ednesday, February 11, 2009                    Mattel vs. MGA Entertainmer

Exhibit 17 - Page 281

1    2008 ruling -- the Court said that the Court's previous ruling

2    was meant -- and I'm quoting now -- "to convey that although

3    the remainder of the state law claims asserted by Mattel are

4    subject to the discovery rule, these two claims are not,"

5    referring to intentional interference with contractual          01:27

6    relations and conversion.

7           I tried to do the archeology to figure out how we

8    reached that; and for the life of me, Your Honor, I can't find

9    it.  Neither side had ever cited to the Court a single case

10   saying that there's some special rule that applies to the tort  01:28

11   of intentional interference with contract, but the otherwise

12   applicable discovery rule that applies to contract claims,

13   applies to tort claims, does not apply.

14          I really think our strongest position on this is, we

15   would ask the Court to go back and revisit that.  This was in   01:28

16   the context of a blizzard of briefing on a lot of different

17   issues, and we cannot find any authority that says the

18   discovery rule does not apply to intentional interference

19   claims.

20          **THE COURT:**  Very well.                                 01:28

21          Thank you, Counsel.

22          **MR. QUINN:**  Thank you, Your Honor.

23          **THE COURT:**  Mr. Nolan, I do think I have a pretty

24   clear understanding of your position on these, but I will give

25   you the last word on the remittitur.                            01:28

ednesday, February 11, 2009                          Mattel vs. MGA Entertainmen

Exhibit 17 - Page 282

```
 1          MR. NOLAN:  I'll try to pinpoint a couple of quick

 2   points.

 3          Number one is on this last point, imputation.

 4          First of all, it had never been briefed the way

 5   Mr. Quinn has presented it today.  And I was sitting there      01:28

 6   going, Well, if that's your position, why did you put his name

 7   on the verdict form?  Why did you insist that there be a

 8   separate finding with respect to Mr. Larian?

 9          THE COURT:  Probably because of the Court's ruling.

10          MR. NOLAN:  But, Your Honor, then there should be       01:29

11   some meaning to the ruling, in that if the jury did not find as

12   to Mr. Larian, then you go back into the archeology.  And I

13   think that in word familiarity, you look at Jason Russell, you

14   think preemption.  I hope, maybe, or I fear, that you think

15   Nolan, statute of limitations.  We argued this consistently     01:29

16   over and over, and we always argued it as individually against

17   Mr. Larian too.

18          With respect to the waiver, I just want to make a

19   point.

20          I know the Court will look at and read Yeti By Molly,    01:29

21   Ltd., which is the case that they talk about, with respect to,

22   we should have sat here and we should have polled the jury.

23   The Yeti case, when you read it, the Ninth Circuit is talking

24   about a defect that appeared in the verdict form itself, the

25   construct of the verdict form, and that they waived that defect  01:29
```

ednesday, February 11, 2009                    Mattel vs. MGA Entertainme

Exhibit 17 - Page 283

```
1    by not polling the jury at the time.

2             There is no defect in this verdict form.

3             THE COURT:  I'm glad to hear you say that.

4             (Laughter.)

5             MR. NOLAN:  Why do I think that's going to come back    01:30

6    and someone will tell me, You shouldn't have said that?

7             MR. RUSSELL:  I think he meant on this issue, Your

8    Honor.

9             MR. NOLAN:  On this particular issue, Your Honor.

10            (Laughter.)                                              01:30

11            MR. NOLAN:  But, most importantly, the words that

12   were added by the Court, there are some issues.

13            But nevertheless, as I sit here and I listen to this

14   argument, we, MGA, lose our objections to the jury instruction

15   with respect to duplicative damages.  They get the jury         01:30

16   instruction that they want.  We have a waiver by them saying,

17   You have the authority to reduce the duplicative damage award;

18   that will be your domain after the case.

19            The verdict comes in.  If anybody should be

20   stunned -- and we know they were, given the press statements    01:30

21   that were made and how both sides spun the verdict -- it was

22   Mattel that should have polled the jury, if anything.  But the

23   Yeti case, Your Honor, does not impose upon us, nor does the

24   Ninth Circuit, in light of the Court's instruction, in light of

25   the arguments that were made, put us in a position to have      01:31
```

1   asked to poll the jury.

2          But even if you want to go that far, Your Honor, I

3   would invite you to go to the Court's order on September 3rd,

4   where you did bring back counsel with respect to and in

5   response to the note from the juror saying, What should we do?      01:31

6   And the record will set forth the position taken by both

7   counsel.

8          In your order denying the opportunity to call back,

9   the Court even acknowledged that to make that inquiry would

10  come so close anyway to impeding on 606(b), that it would have    01:31

11  been inappropriate if I stood up or Mattel stood up while the

12  jury was still here.  So, frankly, Your Honor, I don't think

13  it's been waived.

14         The standard Mr. Quinn has posited for remittitur

15  purposes, as long as you're under the total amount of damages     01:32

16  that the evidence would have supported, then the Court really

17  has no basis to remit.

18         That would be an interesting question in a case where

19  there was more than one type of injury complained of, more than

20  one type of harm argued, more than one damage theory presented    01:32

21  to the jury.

22         **THE COURT:**  What if the jury had come back with

23  slightly different amounts, say, $20 million on one, $30

24  million on the second, and $45 million on the third?  Would

25  that change it?                                                    01:32

ednesday, February 11, 2009                    Mattel vs. MGA Entertainmen

Exhibit 17 - Page 285

 1          **MR. NOLAN:**  I think it would invite, perhaps, some

 2    speculation as to why there was a difference.  I think it was

 3    in one of the cases cited, where it was slightly different, but

 4    the variance wasn't all that great.

 5          **THE COURT:**  But the remittitur standard would be

 6    whether or not the awards were less than the total amount by

 7    the evidence.

 8          So what's different here is that the amounts happen

 9    to be all the same.

10          **MR. NOLAN:**  All of the same, at the instruction and

11    at the request of Mattel.  That's actually the difference, Your

12    Honor.

13          And I go back to the cases that they cited where that

14    is an interesting question posited by the court, which we're

15    not here to address because it didn't happen here.  There was

16    an inconsistent verdict, so the court was taking a look at all

17    of that.

18          Here, you don't have that problem.  The jury did

19    exactly what Mattel asked them to do and what you instructed

20    them to do.

21          **THE COURT:**  Not exactly.

22          **MR. NOLAN:**  As to the form.

23          But they did do, Your Honor, based on the

24    presumption -- you told them to award the full amount of

25    damages.  That was your instruction.  And that is why, if you

01:33
01:33
01:33
01:33
01:34

ednesday, February 11, 2009                    Mattel vs. MGA Entertainmen

Exhibit 17 - Page 286

1  follow the logical reason, their full amount of damages, based

2  on the instructions that they were provided and the evidence

3  that they were given, comes out to a consistent verdict.

4          **THE COURT:**  I do understand your argument.  Thank

5  you, Counsel.

6          **MR. ZELLER:**  Your Honor --

7          **THE COURT:**  No.  I've allowed the moving party to

8  speak first and last, and let's stick to that.  You have well

9  briefed these things.

10          I next want to take up Omni 808's ex-parte                01:34

11  application to intervene for limited purposes.

12          Mr. Gordinier.

13          **MR. GORDINIER:**  Thank you for offering me the

14  opportunity to address the Court.

15          We've set out in our papers, really, what we're         01:34

16  looking for here.  The transaction by which Omni 808 acquired

17  its interest and stepped into the shoes of Wachovia was

18  straightforward and it was at arm's length.  And I, frankly,

19  although naively, believed that if we would get stipulated to

20  be a party to the proceeding going forward, to the extent the   01:35

21  Court --

22          **THE COURT:**  Where do those funds come from?

23          **MR. GORDINIER:**  Mr. Kadisha, Your Honor, is a very

24  substantial individual.  Mr. Kadisha, Neil Kadisha, who is the

25  president and CEO of Omni 808, was one of the founders of       01:35

ednesday, February 11, 2009                        Mattel vs. MGA Entertainmen

Exhibit 17 - Page 287

```
 1    Qualcomm.  With everything that's gone on in the market in the
 2    last six or seven months, I don't want to make any
 3    representations, but Mr. Kadisha has from time to time appeared
 4    on the Forbes 400 list.  I don't know what his net worth is.
 5              What happened, Your Honor, is, Wachovia called the      01:35
 6    note.  I don't know why.  I've been involved in these cases
 7    where everybody feels like the world revolves around what's
 8    happening in this courtroom.  As the Court knows, Wachovia had
 9    other issues.
10              Wachovia and its syndicate wanted it off its balance    01:35
11    sheet, and MGA needed relief from the immediate need to pay
12    money they did not have.  And my client was approached and put
13    together people and bought the indebtedness and assumed the
14    debt at a discount, at a substantial discount; and he expects
15    to make money.                                                    01:36
16         THE COURT:  You're representing to the Court, though,
17    that this was not MGA's money; that this was -- from wherever
18    it came from, it came from someplace else.
19         MR. GORDINIER:  Your Honor, two things.  I've never
20    met Mr. Larian, and I know less about MGA than almost everybody  01:36
21    else.
22         THE COURT:  I'm not asking about what you know from
23    MGA but of what you know from your client.
24         MR. GORDINIER:  What I know from my client is, he put
25    in many millions of dollars.  He had a couple of investors with  01:36
```

ednesday, February 11, 2009                                Mattel vs. MGA Entertainmer

Exhibit 17 - Page 288

1   him to put in many millions of dollars.

2          THE COURT:  Those investors and that money did not

3   come from MGA?

4          MR. GORDINIER:  That's the best of my understanding,

5   Your Honor.  That's true.                                          01:36

6          And the best way to resolve that is what the Court

7   has already done.  The Court did exactly the right thing and

8   set up Mr. Durkin, who's very accomplished, to look at MGA's

9   books.  Step number one, he can tell the Court what their

10  balance sheet is, what their income statement is, and also the    01:37

11  sources and uses of cash.

12         And if there are any issues -- and, by the way, I'm

13  happy to talk to Mr. Durkin or have Mr. Durkin talk to my

14  client.  This is not intended to be -- this wasn't a fraudulent

15  transaction, Your Honor.  We negotiated -- we -- I didn't do      01:37

16  it -- Omni 808 negotiated with Davis Polk on behalf of Wachovia

17  and bought at a discount; and Omni 808 expects to and would

18  like to make money on its investment, and will not be able to

19  do so, obviously, if MGA goes out of business.  So our interest

20  here is in protecting Omni 808's investment.  And part of that    01:38

21  is wanting a say in how MGA's business on this receiver issue

22  is dealt with.

23         THE COURT:  The interest to intervene is focused, as

24  you indicate in your papers, on the receivership issue?

25         MR. GORDINIER:  That's correct, Your Honor.  That's        01:38

ednesday, February 11, 2009                    Mattel vs. MGA Entertainmen

Exhibit 17 - Page 289

73

```
 1    correct.

 2              THE COURT:  Very well.

 3              Does anyone wish to be heard in opposition to the

 4    ex-parte application?

 5              MR. ZELLER:  Yes, Your Honor.                          01:38

 6              I don't know that we've been -- and maybe the Court

 7    heard it differently, but I still do not hear anything that

 8    certainly approaches evidence that this was, in fact, an arm's

 9    length transaction.

10              THE COURT:  I have a representation from respected    01:38

11    counsel.

12              MR. ZELLER:  Well, he said -- Your Honor, the

13    Court -- all he said was to the best of his knowledge.  He

14    didn't say it didn't come from it.

15              Second, the Court asked MGA; it didn't ask from      01:39

16    Larian, Larian's brother-in-law, his wife -- there are other

17    family members involved in this, and their fingerprints are on

18    this.  So, certainly, I want to be very clear, Your Honor, we

19    have not gone so far as to say, this is a fraud, this is a

20    sham, or so on.  The fact is that there are substantial        01:39

21    questions here as to the bona fides of this transaction and

22    whether or not this has been papered in a way to basically

23    create debt and credit, where, in fact, it would simply be

24    treated by the tax code, by the bankruptcy code, by the courts,

25    for every other purpose, as, in fact, being nothing but a loan, 01:39
```

ednesday, February 11, 2009                           Mattel vs. MGA Entertainmen

Exhibit 17 - Page 290

```
 1   or funding, I should say, by an equity holder, somebody with a
 2   stake in the company.
 3            THE COURT:  At the end of the day, or at least at
 4   this juncture in the case -- I'm not looking into the future as
 5   to how this case may evolve, what the future of MGA holds, what     01:40
 6   happens from going forward.  But at this juncture, what is the
 7   concern to the Court of that allegation?
 8            MR. ZELLER:  In terms of, if it turns out that it's
 9   true?
10            THE COURT:  Yes.                                            01:40
11            MR. ZELLER:  Well, I mean, there's the immediate
12   impact on the motion that's before the Court, which is that
13   that would mean there is, in fact, an identity of interest;
14   therefore, they wouldn't be allowed to intervene on that basis.
15   And, in fact, there wouldn't even be a bona fide interest.          01:40
16            What they're hanging their hat on as the interests
17   that they are trying to protect is so-called credit.  If, in
18   fact, it is not credit, and, in fact, if all this is is
19   basically a way in which $200 million in debt is being carried
20   on MGA's books, for which no taxes have been paid, there are a       01:40
21   whole series of very serious consequences for MGA as a company.
22            THE COURT:  I understand that.  But that is not the
23   Court's concern right now.
24            MR. ZELLER:  Sure.  And that's what I'm saying; in
25   terms of the immediate impact, it would mean that the motion         01:41
```

ednesday, February 11, 2009                              Mattel vs. MGA Entertainmen

Exhibit 17 - Page 291

1   here should be denied.

2           **THE COURT:**  Fair enough.

3           **MR. ZELLER:**  And that, of course, would have impact

4   on the receivership motion, from our perspective too; that's

5   what I was alluding to there.                                    01:41

6           **THE COURT:**  Right.

7           **MR. ZELLER:**  But if I may, Your Honor, in terms of

8   setting all of that aside, number one, if, in fact, Omni 808 is

9   a legitimate creditor, and even accepting any sort of

10  representation assuming that that's enough here, the fact is     01:41

11  that under the local rules, Omni 808, along with any other

12  creditor, will have an opportunity to make objections to an OSC

13  on receivership.  That's, in fact, the procedure that MGA has

14  advocated in doing this.

15          The Court has seen additional briefing on this.  It's    01:41

16  something that makes sense after getting the report and seeing

17  where it is that we go from there.  But there's no reason why

18  Omni 808 should be allowed to intervene.

19          And to get, then, to the particular question the

20  Court asked, what's the concern here, we have a very pragmatic,  01:42

21  very specific concern, which is, of course, if Omni 808 is

22  allowed to intervene -- and there's an issue as to exactly what

23  the scope of their intervention is.  I mean, they said two

24  different things in their papers, Your Honor -- but if they're

25  allowed to intervene, and if they're allowed, basically, a seat  01:42

ednesday, February 11, 2009                          Mattel vs. MGA Entertainmen

Exhibit 17 - Page 292

```
 1   at the settlement table, this case will never settle.  That

 2   means that Omni 808 would have to sign off on any sort of

 3   settlement.  The fact is -- and I'm not going to go into

 4   details, but whether one wants to call it progress or not, I'll

 5   leave other people to debate --                                    01:42

 6        THE COURT:  Does this mean Mattel is interested in

 7   settling this case?

 8        MR. ZELLER:  There's certainly -- yes.  I can

 9   certainly say we are interested in settling this case.  Whether

10   one would call it substantive progress or not, I won't go into   01:42

11   that, but there's some activity with respect to parties making

12   some effort to settle the case.

13        To now, four and a half years, or whatever, that

14   we're now into this, four years into this litigation, to allow

15   an entity, Omni 808 -- which we have serious concerns about who  01:43

16   this even is -- to allow them to come into the case and

17   basically have a seat at the settlement table that would allow

18   them to crater a settlement -- and these are the concerns that

19   courts have expressed; this isn't just us.  We quoted a couple

20   of court decisions making it very clear there's a cost           01:43

21   intervention from this, once they're allowed in.

22        So what I would urge the Court is that even if the

23   Court is going to allow Omni 808 to intervene, that it be made

24   very clear, and that, in fact, Omni 808 agreeing that they have

25   absolutely no say in whether this case settles or not.           01:43
```

ednesday, February 11, 2009                          Mattel vs. MGA Entertainmer

Exhibit 17 - Page 293

1    Because, otherwise, the Court is creating, I mean, truly very,

2    very pragmatic problems.  And that's just even on the

3    settlement front.  There are others I can talk about, in terms

4    of the complication of the proceedings.

5           If we now have yet another party, and particularly                01:44

6    one who we do not really know who it is, floating around in

7    this case, asserting rights -- and whatever it is that Omni 808

8    claims to have, namely this credit interest, can be fully

9    protected by Local Rule 66 procedures.

10          In fact, if that's all they're really trying to do,               01:44

11   to intervene on that basis, that's coextensive with Local Rule

12   66.  So there is nothing to be gained, and huge amounts to be

13   potentially lost, by allowing them in.

14          **THE COURT:**  Thank you, Counsel.

15          Mr. Gordinier, do you wish to respond?                            01:44

16          **MR. GORDINIER:**  Yes.  The last point first.

17          The last thing I want to do is sit at a settlement

18   table with these gentlemen, no offense to either of them, who I

19   know well.  We are entitled as a matter of right to intervene,

20   to protect our interests.  These unprovoked and unwarranted            01:44

21   personal attacks are just inappropriate.

22          I said as far as I know because I wasn't involved in

23   the actual funding of the deal.  But it's my understanding that

24   many millions of dollars went to Wachovia, for which Wachovia

25   transferred its interest in the debt.  And that was an arm's           01:45

ednesday, February 11, 2009                          Mattel vs. MGA Entertainmen

Exhibit 17 - Page 294

```
 1    length deal, and it was a straightforward negotiation, and
 2    Davis Polk represented Wachovia.  There is no reason for the
 3    kind of repeated personal --
 4             THE COURT:  And who represented --
 5             MR. GORDINIER:  My partner in San Francisco, Bingham.   01:45
 6             THE COURT:  Bingham.
 7             MR. GORDINIER:  It's a fine firm, Your Honor.
 8             Bingham represented Omni 808 in this transaction.
 9             THE COURT:  Your representation, then, is that based
10    on your information and belief, the proceeds for that were not   01:45
11    proceeds -- I said MGA, but MGA, Isaac Larian, any other MGA
12    entity.
13             MR. GORDINIER:  As far as I know, Your Honor, this
14    was structured by Mr. Kadisha and the monies went to Wachovia.
15             THE COURT:  I know that part.  The question is where   01:46
16    the monies came from.
17             MR. GORDINIER:  I know at least $50 million came from
18    Mr. Kadisha and his immediate -- that's -- it's serious money,
19    Your Honor.  This was an arm's length transaction.
20             The focus of the receiver motion should be, and I      01:46
21    know is, from the Court's perspective, on MGA.  And Mr. Durkin,
22    when he finishes his process, or in the middle of his
23    process -- I'd be happy to talk to him about how this
24    transaction was structured.
25             THE COURT:  Very good.                                  01:46
```

ednesday, February 11, 2009                                    Mattel vs. MGA Entertainmen

Exhibit 17 - Page 295

1       **MR. GORDINIER:**  We are not intending to hold up or

2   obstruct.  We've moved with the drift of this case as it's gone

3   for the ten days I've been involved in it.  We're not going to

4   hold the case up.  But we do believe we're entitled to be heard

5   on the receiver issue.                                          01:47

6       **THE COURT:**  Very good.

7       We're going to take a very brief five-minute break

8   for the court reporter.  I'll come back and rule on these

9   matters, and then we'll proceed with the hearing.

10      (Whereupon, a brief recess was held.)                       01:47

11      **THE COURT:**  We're back on the record.

12      Regarding the receivership and everything, there's

13  actually three matters that are related.  First of all, there

14  is the ex-parte application for receivership which was being

15  held in abeyance by the Court; I have the ex-parte application   02:07

16  by Omni 808 for intervention for this limited purpose; and then

17  I have a request for a briefing schedule on the appointment of

18  a receiver.

19      For the record, the Court wishes to disclose that

20  last evening, or yesterday afternoon, the Court held a meeting   02:07

21  with the forensic auditor, Mr. Durkin, and his staff, as well

22  as certain judicial officers of the court and certain other

23  nonjudicial individuals assisting the Court.  All have been

24  expressly ordered not to disclose the contents of the interim

25  report pending further order of this Court, and the Court did    02:08

ednesday, February 11, 2009                    Mattel vs. MGA Entertainmen

Exhibit 17 - Page 296

1    so for the purpose of basically finding out where the forensic

2    auditor was, to ensure that the audit was proceeding as

3    envisioned by the Court.

4          Based on that meeting last night, the Court was

5    assured by Mr. Durkin that all of the relevant parties are          02:08

6    fully cooperating with Mr. Durkin; that he has obtained so far

7    a voluminous amount of information, although there is still a

8    substantial amount of information that he needs to gather

9    before he's able to complete his accounting.

10         At this point, based on the information that             02:09

11   Mr. Durkin has and has been able to relate to the court, there

12   is no basis to appoint a receiver, and the Court declines to do

13   so.  However, the Court will revisit this issue once the

14   forensic audit is done.

15         So what the Court is going to do is continue to hold          02:09

16   in abeyance the application and request for the appointment of

17   receiver.  I will also hold in abeyance the motion for

18   intervention by Omni 808; because to the extent that no

19   receiver is appointed, then there's no purpose for Omni 808's

20   intervention and for the Court to even consider the grounds for     02:09

21   the intervention.

22         If, on the other hand, the Court does envision

23   appointing a permanent receiver, the Court will then take up

24   the issue of Omni 808's intervention.

25         As far as the request for a briefing schedule, as I          02:10

ednesday, February 11, 2009                    Mattel vs. MGA Entertainmen

Exhibit 17 - Page 297

think Mr. Zeller points out, the local rules provide for

provisions for both the Court's appointment of either an

interim or a permanent receiver, the required notice

thereunder, et cetera, and the Court would fully comply with

that.  I'm not going to set out at this point any briefing

schedule on this, because that would be premature.

        The Court will continue, on a strictly in-camera

basis, to continue to be apprised by the forensic auditor.  The

Court will expect all parties to continue to cooperate with the

forensic auditor.

        Mr. Gordinier, on behalf of nonparty Omni 808, has

represented to the Court that his client will cooperate with

Mr. Durkin, and I appreciate that.  And I trust that Mr. Durkin

will continue to experience the full cooperation that he has

experienced up to this point.  And I will leave at that.

        Are there any questions from either party with

respect to the Court's ruling on matters related to the

receivership?

        **MR. NOLAN:**  On behalf of MGA, no, Your Honor.

        **THE COURT:**  From Mattel?

        **MR. ZELLER:**  No, Your Honor.

        There is just one other ex-parte which we believe has

been submitted to Your Honor; your name was on it.  It was an

additional ex-parte by Omni 808 which was basically asking for

a discovery motion we had filed with the Discovery Master to be

ednesday, February 11, 2009                    Mattel vs. MGA Entertainm

Exhibit 17 - Page 298

```
 1    striken.  And I believe it was filed with this court.

 2         We filed an opposition last night.  I don't know if

 3    there's been more briefing or if now is the time, but I did

 4    want to alert the Court that it is --

 5         THE COURT:  Those discovery matters have been                02:11

 6    referred to the Discovery Master and will be litigated before

 7    the Discovery Master.

 8         MR. GORDINIER:  That's what we served Mr. O'Bryan

 9    with copies of, so that's our understanding as well.  I didn't

10    want to violate the Court's protocol, so we did both.  But the  02:12

11    application --

12         THE COURT:  I appreciate that.  That's been the

13    practice of the parties in this Court, to file with the Court

14    what the parties have done and I'll ask the parties to continue

15    to do.                                                           02:12

16         And Mr. Gordinier, you can do this on discover

17    matters:  Simply put in the caption that it is a discovery

18    matter; that way the Court knows when I receive it that it's

19    not something that I need to deal with at this time; that it

20    will be handled by the Discovery Master.                         02:12

21         All right.  Moving right along.

22         The next issue the Court wants to take up is the

23    potential -- well, not potential, the entry of judgment in this

24    case; whether or not judgment should be entered after the Court

25    has issued its ruling, which it anticipates doing shortly        02:12
```

ednesday, February 11, 2009                    Mattel vs. MGA Entertainm

Exhibit 17 - Page 299

within the next week, regarding the two judgments, motions for judgment as a matter of law and the motion for the remittitur. The Court will then be in a position of potentially having to issue judgment in this case.

The question is under Rule 54-B whether I should enter judgment at this time on Phase 1 or whether we should await the final completion of this case to enter judgment.

My sense is that it probably makes sense, just given the way we've structured everything up to this point, to enter judgment, at least on these Phase 1 issues.  I'd like to hear from the parties briefly on their respective positions on that.

**MR. ZELLER:**  I'll be brief, at this point, with respect to Mattel's position.  I can certainly elaborate.  But Mattel actually does not think it's appropriate or really feasible to enter judgment under Rule 54-B at this juncture. Part of it has to do with the fact that I think, as we've all recognized, and certainly Mattel has said in the past, that there are intertwined issues.

As we understand the standard, under Rule 54-B there has to be sufficient separateness, real separateness, that would allow for that judgment under 54-B.  And to the extent the Court is seriously considering doing that, we'd like the opportunity to lay this out in some papers and put the appropriate authority.

But I can certainly say in terms of where we were in

ednesday, February 11, 2009                    Mattel vs. MGA Entertainmen

Exhibit 17 - Page 300

1   our viewpoint as that it would be extremely challenging, at a

2   minimum, and perhaps impossible to meet the Rule 54-B standard.

3   We had not submitted anything to the Court.  I generally seem

4   to recall that there was an opportunity for either party to

5   seek that from the Court in the past.  I don't recall MGA          02:15

6   having in the past affirmatively requested or signaled in some

7   way that it was seeking judgment under Rule 54-B; so we have

8   not had an opportunity to really lay that out and perhaps

9   crystalize our thinking on this particular issue.

10          Certainly, just, I think, in terms of where we are          02:15

11  today, Your Honor, we think it would be very, very difficult to

12  meet that standard.

13          **THE COURT:**  I would have to take up the issue --

14  assuming that I did not enter judgment and the Court rules on

15  the motion for remittitur, there would be some amount of money    02:15

16  that would be eventually part of some judgment.

17          I guess my greater concern is with the injunctive

18  relief, which, the permanent injunction that I issued on

19  December 3rd, I have stayed.  And I've indicated in my later

20  December order that I will certainly stay and preclude Mattel     02:15

21  from removing the 2009 line through the 2009 season.  That

22  would certainly continue to be the Court's indication.

23          But the remainder of the injunction, the constructive

24  trust, for example, and the other elements of that order, the

25  question is, should that take affect or should that await a       02:16

ednesday, February 11, 2009                    Mattel vs. MGA Entertainmer

Exhibit 17 - Page 301

 1   final judgment after the end of Phase 2?

 2          MR. ZELLER:  I think that independent of a Rule 54-B

 3   judgment -- and I'm probably going to talk in too broad of a

 4   brush -- there are going to be lots of nuances associated with

 5   this -- but I think as a general matter, the entry of a 54-B        02:16

 6   judgment will not affect whether or not those orders become

 7   final.  At least, certainly, for purposes of appeal or for

 8   purposes of whether they are affective in the sense that

 9   parties must comply with them and that certain consequences

10   would flow if they are not complied with; so, I mean, certainly    02:17

11   those orders can take affect --

12          THE COURT:  Without the judgment.

13          MR. ZELLER:  Correct.

14          THE COURT:  Because there may very well be

15   consequences beyond the parties for some of those orders.          02:17

16          MR. ZELLER:  Correct.

17          And when I caveat by saying I'm speaking rather

18   broadly at the moment, I mean, certainly -- and I would want an

19   opportunity to go through and parse every aspect of this.  I

20   mean, there may be slightly different answers for a different      02:17

21   order in a particular issue.  But certainly, in general, if one

22   looks at, say, the injunction, that will take affect.  It will

23   become appealable at some point once it reaches the definition

24   of finality.  And that's independent of Rule 54-B.  There's

25   actually a separate provision, of course, under 28 USC that        02:17

ednesday, February 11, 2009                    Mattel vs. MGA Entertainmer

Exhibit 17 - Page 302

```
 1    governs whether or not the injunction is appealable.
 2            So what I would request, Your Honor, is --
 3            THE COURT:  For example, if the Court were to lift
 4    the stay imposed on December 3rd and basically remodify its
 5    permanent injunction so as to permit the injunction to proceed,      02:18
 6    striking from the injunction, of course, anything which would
 7    interfere with the 2009 season of sales, holding, I would
 8    suppose, those sales or the infringing portion of those sales
 9    or those sales attributed to infringing portions, in trust for
10    Mattel or require an accounting to Mattel; that is something          02:18
11    which could, once these motions have been resolved, go into
12    affect and be final for purposes of appeal so that MGA can then
13    appeal those to the Ninth Circuit and, in the interim, have
14    affect.  And, of course, the Court would entertain and the
15    Ninth Circuit would entertain any further motions for stays,         02:19
16    but basically to get that ball rolling.
17            MR. ZELLER:  Yes.
18            I think, particularly with respect to the permanent
19    injunction, that is all correct.
20            I would say that the way that the issues concerning          02:19
21    conditions would come up in terms of, say, for example, putting
22    money into escrow or the appointment of somebody to oversee the
23    brand, or any of those other number of conditions which we
24    previously asked the Court to impose --
25            THE COURT:  Right.  And the Court is definitely              02:19
```

1   considering those, and that will be part of the Court's

2   forthcoming order.

3          **MR. ZELLER:**  That, again, too, would not require the

4   vehicle of a 54-B judgment to deal with.

5          **THE COURT:**  Very well.          02:19

6          **MR. ZELLER:**  That's really in terms of the

7   conditions, and the Court has extremely broad latitude in

8   imposing conditions on any stay pending appeal, as well as, of

9   course, just the terms of the injunction in the first instance.

10          **THE COURT:**  Very well.          02:20

11          Let me hear from MGA on that point.

12          And I guess the point that I am looking for is

13   whether or not you agree with Mr. Zeller or disagree with

14   Mr. Zeller that the Court can proceed with basically resolving

15   Phase 1 with or without a 54-B judgment being entered.       02:20

16          What is MGA's perspective?

17          **MR. NOLAN:**  With respect to splitting the question

18   and asking with respect to preliminary injunction/constructive

19   trust, and whether or not that could be put into place before

20   any judgment would be entered on Phase 1, I don't mean to punt,   02:20

21   but I think we would want to address some of the nuances that

22   Mr. Zeller has made reference to in connection with whatever

23   modification, if any, might be made to the terms of the

24   injunction or the constructive trust.

25          So in a sense, I'm almost arguing in a vacuum,     02:20

ednesday, February 11, 2009          Mattel vs. MGA Entertainmen

Exhibit 17 - Page 304

1    without the ability to consult with appellate counsel or my

2    client; so I'm not in a position right now to say.

3            My gut would be to say, Your Honor, to see the

4    rulings that the Court issues; ask the Court on a short leash,

5    maybe ten days after the entry of the Court's rulings on these          02:21

6    matters, and any indication with respect to how you would

7    adjust, modify the terms of the face of the injunction and/or

8    the constructive trust, if there were going to be any changes,

9    so that we would then be in a position to advise the Court what

10   our position is as to whether or not the two can be separated.          02:21

11           With respect to the judgment on Phase 1 following the

12   Court's entry of order, a similar issue, given Mattel's

13   position, that they think that's inappropriate, given what they

14   contend to be some overlapping issues between Phase 1 and

15   Phase 2.  Again, I'm not shy about coming up with affirmative          02:21

16   positions with respect to our position, but I'd like to do it

17   only when I've had the ability to consult with my clients.

18           Perhaps I should have been prepared to do that today,

19   and I apologize for not being able to.  But I would ask the

20   Court to consider the possibility of asking us to come back           02:22

21   within a limited period of time after the entry of the orders

22   and we'd be in a position to lay out a roadmap as to how we

23   view the substance of that order.

24           It may very well be that with respect to either the

25   preliminary injunction, the stay, the affect of that, the             02:22

89

```
 1    constructive trust, the affects of the stay, that we would want

 2    to raise certain issues with the Court that are not before the

 3    Court right now, and that's the only reason why I want to hold

 4    back and not to confirm a very firm position right now.

 5             THE COURT:  Very well.                                   02:22

 6             I will give you until Friday, both sides, until

 7    Friday, to submit their respective positions on whether or not

 8    the Court should or should not enter a 54-B judgment; and,

 9    alternatively, if it does not enter a 54-B judgment, your

10    respective positions on how the Court should enter a final      02:23

11    order with respect to Phase 1; and that way you can consult

12    with your client and other counsel.

13             MR. NOLAN:  Right.

14             THE COURT:  But the Court would want to make this as

15    part of its next order that it issues.                          02:23

16             We have had exhaustive briefing and hearings on the

17    issue of injunctions and all of the rest, and we're not going

18    to revisit that or reopen that, but I'll give you an

19    opportunity to consult with all counsel and your client, of

20    course, and advise the Court of your respective positions so I  02:23

21    can address that.

22             MR. NOLAN:  I appreciate that.

23             As the Court knows, with respect to the phasing of

24    counsel in this case and Mr. Zeller's contention there's an

25    overlap with the Phase 2 issues, I do feel the need to consult  02:23
```

Exhibit 17 - Page 306

1    with opposing counsel --

2              THE COURT:  I'm somewhat disappointed that the lead

3    counsel is not present here today, because this was the hearing

4    that was designated previously on several occasions as the time

5    that we would be discussing the resolution of Phase 1 and the          02:24

6    scheduling of Phase 2.  But I will give you some latitude on

7    that point.

8              MR. NOLAN:  I appreciate that, Your Honor.

9              On Friday we'll have our submissions.

10             Thank you very much.                                          02:24

11             THE COURT:  Very well.

12             The last issue I want to take up is the scheduling of

13   Phase 2 at this time, and I had asked counsel previously to

14   come prepared to discuss and to commit to those dates.

15             Essentially, I want to come up with five dates:  A           02:24

16   discovery cutoff date, a dispositive motion cutoff date, a

17   pretrial conference date, a trial date, and a mandatory

18   settlement conference cutoff date; so those are the five dates.

19             I'll hear from either side on this.

20             There's now nobody on the defense counsel table for          02:24

21   MGA.  This is somewhat disconcerting.  Someone is going to have

22   to come forward and pick this up.

23             (Laughter.)

24             MR. ZELLER:  One thing, Your Honor, if I may just

25   start with this.  The Court about a month ago lifted the               02:25

ednesday, February 11, 2009                          Mattel vs. MGA Entertainmen

Exhibit 17 - Page 307

```
 1   Phase 2 discovery stay.  Unfortunately, even as to matters that
 2   have been compelled, we don't have a single scrap of paper; we
 3   don't have a witness; we have not received any further
 4   discovery from MGA.  We've already had to file a number of
 5   motions.                                                         02:25
 6          I say that as a preface, not to attack or lambast
 7   MGA, but, rather, that we're going to have, obviously, a
 8   significant period of time that discovery is going to take to
 9   allow the Discovery Master and this Court and the parties to
10   make our way through the remainder of Phase 2 discovery.  There  02:25
11   are still a number of witnesses.  In fact, two of the key
12   witnesses, Vargas and another one, who have been stated by MGA
13   in the past to be the ones who run MGA, Mexico, we're told we
14   have to go through the Haigh convention to get them, that a
15   deposition notice is not sufficient; so that's in front of the  02:26
16   discovery master currently.
17          So of course if we had to go through the Haigh
18   convention, that is, of course, many months, if not a year.
19          So again, I only say these things not to pick a fight
20   over discovery at this point, but to say that I think what      02:26
21   we're looking at is probably a year of discover to try to get
22   that done.
23          So I'm thinking that in terms of attempting to get
24   discovery done, I would say that at some point next spring is
25   frankly what we're looking at.  Then we're going to need a      02:26
```

```
 1   briefing schedule on dispositive motions that I would suggest
 2   be fairly comparable to what the Court did the last time.
 3          And maybe MGA has a different perspective on this,
 4   but I think, from our perspective, while certainly the summary
 5   judgment briefing schedule and the like was challenging, it        02:27
 6   was, nevertheless, entirely workable and something that we
 7   could replicate here.  But the other kinds of deadlines, once
 8   we figure out the terminus of the discovery period, then we can
 9   simply work from a comparable schedule for the other milestones
10   in terms of time.                                                  02:27
11          THE COURT:  How much time post-discovery would you
12   anticipate would be required for dispositive motions?
13          MR. ZELLER:  Well, I think -- and maybe someone can
14   remind me how much time we had the last time; it was about
15   three months, is my sense.  I can go back and double check as      02:27
16   to the exact dates, but my sense, between when it is that we
17   brought those motions and then the completed briefing and then
18   actually having the hearing with the Court and then
19   disposition, I think it was approximately that time period.
20          THE COURT:  Very good.                                      02:28
21          Thank you, Counsel.
22          From MGA?
23          MR. KLEVENS:  Joel Klevens.
24          I would think the proposed ending date of next spring
25   is a bit longer than should be necessary.                         02:28
```

ednesday, February 11, 2009                              Mattel vs. MGA Entertainmer

Exhibit 17 - Page 309

1          THE COURT:  What's your sense?

2          MR. KLEVENS:  I would hope we could have a trial date

3     in the latter part of November.

4          THE COURT:  Of this year?

5          MR. KLEVENS:  Yes, and work backward from that with          02:28

6     our other deadlines, rather than pushing this all of the way to

7     next spring.  And I'm hoping that we'll find ways to reduce the

8     incredibly exorbitant amount of discovery that took place in

9     Phase 1 and the incredible expense to both parties that was

10    entailed in that and figure out some ways to streamline some of    02:28

11    this in Phase 2 so that we don't have that kind of thing that

12    counsel and parties had in Phase 1.  And I think a tighter

13    schedule will hopefully facilitate that as well.

14         THE COURT:  Very well.

15         So if we had a November trial date, you'd be              02:29

16    suggesting a discovery cutoff, then, in July or August?

17         MR. KLEVENS:  I guess, right, or September.

18         THE COURT:  Because we'd still have to fit in the

19    dispositive motions.

20         MR. KLEVENS:  You're saying the motions would have to     02:29

21    follow the discovery cutoff?

22         THE COURT:  Yes.  I found it helps to have --

23         MR. KLEVENS:  So I guess August would be the

24    discovery cutoff.

25         THE COURT:  Very good.                                    02:29

ednesday, February 11, 2009                    Mattel vs. MGA Entertainmen

Exhibit 17 - Page 310

1    **MR. KLEVENS:**  I would simply request the latter part

2    of November rather than the early part, because we do have a

3    conflict in the first week of November, the 5th and 13th.

4            (Brief pause. )

5        **THE COURT:**  I think, on the one hand, trying to wrap                    02:32

6    up discovery, given my understanding of the Phase 2 issues, by

7    August or even September, I think, is unworkable.

8            At the same time, I do agree that spring of next

9    year, given how much discovery has gone on here and my sincere

10   hopes that we will be able to streamline discovery, is too much  02:33

11   time.

12           I'm going to set a discovery cutoff for the end of

13   this year; December 11, 2009 will be the discovery cutoff.

14           I have just received a note.

15           There's another defendant in this case.                              02:34

16           Counsel, you did not weigh in on this.

17       **MR. COTE:**  Alexander Cote, representing Gustavo

18   Machado.

19           Either plan sounds fine with us, Your Honor.  We

20   don't anticipate a lot of discovery, so we'll defer to counsel.  02:34

21           Would that be for expert and fact discovery?

22       **THE COURT:**  All discovery cutoff, all discovery will

23   be done by this date.

24       **MR. COTE:**  Thank you.

25       **THE COURT:**  We've gone through this before; all             02:34

ednesday, February 11, 2009                                    Mattel vs. MGA Entertainmen

Exhibit 17 - Page 311

1    discovery is cut off December 11, 2009.

2            I will schedule dispositive motions for February 1st,

3    2010, at 10:00 A.M.; I'll schedule a pretrial conference for

4    March 1st, 2010, at 11:00 A.M.; and the trial date for Phase 2

5    will be March 23, 2010, at 9:30 A.M.  I will have the cutoff        02:35

6    for the mandatory settlement conference also scheduled for

7    December 11, 2009.

8            My hope would be that we could wrap this case up this

9    year, but, if not, we'll have dispositive motions and the trial

10   in the early part of next year.                                     02:35

11           Are there any conflicts, known conflicts at this

12   point, with any of those dates?

13           From Mattel's perspective?

14           MR. ZELLER:  No.  Not with Mattel, Your Honor.

15           THE COURT:  With MGA?                                       02:35

16           MR. KLEVENS:  I don't believe so, Your Honor.

17           MR. COTE:  None, Your Honor.

18           THE COURT:  Very well.

19           Is there anything else we need to address at this

20   time?                                                              02:35

21           MR. ZELLER:  Yes, Your Honor.

22           Given these deadlines -- and I regret having to

23   embroil the Court in this, because this is a, quote, "discovery

24   issue," but it involves the Court's orders from January.

25           As I've mentioned, we have received nothing from MGA,      02:35

ednesday, February 11, 2009                    Mattel vs. MGA Entertainmer

Exhibit 17 - Page 312

1    even as to things that were compelled before the stay.  They

2    have been taking the position that the Court's orders of

3    January 6th and January 7th effectively stayed our ability to

4    get financial discovery.

5              I would ask the Court to make a ruling on this.          02:36

6              I regret having to raise it, but we are going to lose

7    at least another month, if not another two months, in getting

8    financial information which is absolutely critical for our

9    ability to prepare for this.  And this is one reason why I was

10   suggesting as long as I was.                                      02:36

11             THE COURT:  I understand, Counsel.

12             MR. ZELLER:  But, the idea that there's a stay in

13   place is --

14             THE COURT:  I thought I made it clear that I lifted

15   all stays on discovery, but perhaps not.                          02:36

16             MR. KLEVENS:  The system the Court has set up cannot

17   work if counsel are allowed to come to the Court and give some

18   distorted view of what they think the dispute is about and not

19   leave it to the Discovery Master to look at and resolve and

20   give the parties the opportunity to brief.                        02:36

21             I'm not going to respond to what he says.  I don't

22   agree with a word that he said.  But I'm not going to

23   respond to it.

24             THE COURT:  I think you have responded, Counsel, and

25   I take your response at its value.                                02:37

ednesday, February 11, 2009                        Mattel vs. MGA Entertainmer

Exhibit 17 - Page 313

1          For the record, I previously indicated that all stays

2   on discovery have been lifted.  All discovery matters should

3   rightfully be referred to the Discovery Master.  And I'll let

4   it go at that.

5          **MR. ZELLER:**  And that no discovery issues or no

6   requests for discovery are premature at this point, because

7   that's the other term they are using on this.

8          **THE COURT:**  I will instruct the Discovery Master this

9   afternoon, in no uncertain terms, that there is no stay on any

10  discovery related to this case at all.  There's no longer a

11  Phase 1/Phase 2 distinction.

12          As I indicated, I thought that I made this clear

13  before.  If it's not, it will be expressly set forth in the

14  minutes coming out of today's hearing.

15          There is no stay on discovery.  Period.

16          **MR. ZELLER:**  And we're fully entitled to the

17  financial information that --

18          **THE COURT:**  Lets leave it at that, Counsel.

19          Thank you, Mr. Zeller.

20          **MR. RUSSELL:**  Could I say one thing, since

21  Mr. Zeller injected this.

22          When he's talking about this stay -- and this is the

23  twilight between Phase 1 and Phase 2 counsel -- they

24  promulgated a series of receiver-related discovery which we

25  contend and run your Honor's orders saying let's talk it out of

02:37

02:37

02:37

02:38

02:38

ednesday, February 11, 2009                    Mattel vs. MGA Entertainme

Exhibit 17 - Page 314

1  discovery, let's let Mr. Durkin handle this.  And that's what

2  he's talking about.

3          There may be other issues, but a major component --

4  and I would not want Your Honor to paint with too broad a

5  brush -- it is MGA's position as to Phase 1 receiver-related          02:38

6  issues, that Your Honor appropriately, at our request, took out

7  of discovery the financial discovery issues.

8          **THE COURT:**  Mr. Durkin is acting at the Court's

9  direction to inform the Court of information.  I may or may not

10 release any of the information that Mr. Durkin provides; so no       02:38

11 one, neither side, should be relying upon the information that

12 Mr. Durkin is gathering for purposes of litigating this case.

13 That's an entirely separate matter.  And I have not stayed any

14 discovery, and there should be no reliance on that.

15         If that was misunderstood, it's clarified now.            02:39

16         **MR. RUSSELL:**  Just so I can make sure I'm clear, Your

17 Honor, because I really, since we were the ones at the hearing

18 when this was discussed, and we asked Your Honor for this

19 precise relief, which is to say the financial discovery, the

20 allegations against Omni and IGWT and the like, and I thought I      02:39

21 heard Your Honor to say that it made sense for Mr. Durkin to

22 get to the base of it.  And if, then, there were any merit to

23 it, we could allow this discovery to go forward.

24         **THE COURT:**  Wait a second.

25         You're adding something in there.  I didn't say            02:39

ednesday, February 11, 2009                                Mattel vs. MGA Entertainme

Exhibit 17 - Page 315

1    anything about discovery not going forth.  I have not ruled on

2    any discovery issues.  I ruled on the ex-parte application for

3    the appointment of the receiver that before I ruled on that,

4    that I wanted to have Mr. Durkin's report.  That's exactly what

5    I'm doing.  I took an interim report last night.  I'll await      02:39

6    the final report.  But that's for the Court's purposes.

7         Depending on how the receivership issue plays out, it

8    may or may not be released to some or all of the attorneys.  It

9    may very well be that at the end of the day, after my final

10   meeting with Mr. Durkin, that it never reaches the light of      02:40

11   day.

12        MR. RUSSELL:  Just so we're clear, Your Honor, Mattel

13   attached the very discovery they are now promulgating to other

14   parties to their receiver application and asked for leave to

15   serve it.  Your Honor did not grant that leave.  And then what   02:40

16   happened was they said, Well, we can't go down this avenue,

17   we'll launch a series of subpoenas.

18        THE COURT:  Then the question becomes -- and this is

19   a question for the Discovery Master, not for this Court --

20   whether or not the discovery is related to Phase 2.  If it is,   02:40

21   it is.  I'm not going to pass any judgment whatsoever.  I'm

22   going to leave that completely up to the Discovery Master.

23        MR. RUSSELL:  That's all we're asking for.  Rather

24   than painting with a broad brush, saying all discovery is

25   permitted, there's some discovery that does fall within the      02:40

ednesday, February 11, 2009                    Mattel vs. MGA Entertainm

Exhibit 17 - Page 316

```
 1   scope of what Your Honor refused to give them.  Let's let the

 2   discovery master rule on it.  It can always come back to you.

 3            THE COURT:  Okay.

 4            But I guess, Mr. Russell, I'm not sure of the

 5   characterization that you're making.                        02:41

 6            I handled the receivership application and request

 7   made thereunder in the way that I'm handling the receivership

 8   application; that should not be taken one way or the other as a

 9   discovery ruling.

10            MR. RUSSELL:  I guess, Your Honor, the question is if  02:41

11   there was, as part of that application, and there's an

12   assumption built in that we'd like to have the Discovery Master

13   resolve, is it just receiver discovery or is it Phase 2?  That

14   seems like a question that Mr. O'Bryan should answer.  But I

15   assume, since you don't have any of the briefs and you don't    02:41

16   have the discovery and this has just been dropped on you,

17   assume for the sake of this discussion, that it is solely

18   related to the receiver; that it is, as we pause it, identical

19   to the discovery submitted.

20            THE COURT:  I guess where I would distinguish,         02:41

21   counsel, is this notion of receiver discovery, or that phrase,

22   that's not a phrase the Court has used.  Not that I can recall

23   using.  If I did, I certainly did not intend to.  I'm not

24   designating that as a separate and severable part of the

25   discovery.                                                     02:42
```

ednesday, February 11, 2009                    Mattel vs. MGA Entertainmer

Exhibit 17 - Page 317

```
 1              The question for the discovery master will be whether

 2    or not the disputed discovery request is related or relevant to

 3    the trial that has now been scheduled for March or not.  I can

 4    see tremendous overlap between, for example, discovery on                  02:42

 5    financial condition of the company as it relates to damages in

 6    the Phase 2 and also issues that the receiver is looking at.

 7    And without making a ruling on any of this, I would not suggest

 8    for a moment that these are mutually exclusive categories.

 9              MR. RUSSELL:  They may not be, Your Honor.  That's

10    the reason why Mr. O'Bryan in the first instance should deal              02:42

11    with it.  Because if you take it the way we take it, this might

12    not be Phase 2 discovery.

13              THE COURT:  You can make that argument to

14    Mr. O'Bryan.

15              MR. RUSSELL:  Thank you, Your Honor.                            02:43

16              MR. ZELLER:  And just so it's clear, what Mr. Russell

17    is articulating is a basis as to why MGA has refused to give us

18    any financial --

19              THE COURT:  Mr. Zeller, I'm going to cut you off

20    here.  Take that up with the Discovery Master.  I don't mean to          02:43

21    cut you off, but I think I made my position as clear as I can

22    today that there is nothing from this Court which is precluding

23    any discovery that is properly sought for the trial that is

24    scheduled.

25              Whatever has happened has happened and we need to              02:43
```

```
 1    move forward.

 2              MR. ZELLER:  Thank you, Your Honor.

 3              THE COURT:  Thank you, counsel.

 4              MR. FRACKMAN:  I'm last, and I think I'll be the

 5    shortest.  On the issue of streamlining discovery, I've read      02:43

 6    the Court's prior orders concerning the number of depositions,

 7    for example, and I confess, I'm a bit confused.

 8              We would request from the Court that there be a

 9    reasonable limit placed on Phase 2 depositions.  I don't know

10    whether that comes to Your Honor or whether that goes to the      02:44

11    discover referee.

12              THE COURT:  In the first instance, that would go to

13    the discovery referee.  The limits that were placed were limits

14    that were placed on the earlier discovery phase.

15              To be clear again, I have placed no limits, no          02:44

16    restrictions, other than what is set forth in the rules of

17    civil procedure and in local rule 37 on discovery from this

18    point until March 23rd.

19              If the parties wish to stipulate, they may.  If the

20    parties think that the Court needs to be involved in this in      02:44

21    the first instance, that needs to go to the Discovery Master.

22              MR. FRACKMAN:  I think we're prepared to follow the

23    federal rules, Your Honor.  Thank you.

24              THE COURT:  Very good.

25              MR. ZELLER:  I feel like I'm being more difficult at    02:44
```

ednesday, February 11, 2009                    Mattel vs. MGA Entertainmen

Exhibit 17 - Page 319

1    the end than I should be.

2           Just so it's clear, because as I understood it,

3    there, of course, are the limits under the Federal Rules of ten

4    depositions.  We, of course, have -- and I thought that the

5    parties --                                                          02:45

6           **THE COURT:**  You did more than ten depositions.

7           **MR. ZELLER:**  Correct.  And I think both sides have.

8           **THE COURT:**  Yes.

9           **MR. ZELLER:**  Or then there were limits the Court did

10   put on the case, as we understood it; I want to say the number     02:45

11   was 24, but I could be off slightly, that the Court did modify

12   the limits already.

13          **THE COURT:**  I allowed for additional depositions.

14   But those were all in the context of the first phase.  We now

15   have new counsel coming in.  I'm certainly not going to suggest     02:45

16   you're all done with discovery.

17          **MR. ZELLER:**  Absolutely.

18          **THE COURT:**  Maybe I should.  Maybe I should say the

19   limits have all been filled in spades and we're done and let's

20   go to trial.                                                        02:45

21          **MR. ZELLER:**  That's what I'm trying to understand is

22   is the Court's view on this, because the Court had

23   previously -- and I don't recall the mechanics of how we got

24   there, but the Court essentially increased the limit to, I

25   think, 24.                                                          02:45

ednesday, February 11, 2009                          Mattel vs. MGA Entertainmen

Exhibit 17 - Page 320

1        **THE COURT:**  Whatever limits I imposed, if I did not

2   use the precise language that I should have, let me make it

3   clear now:  That was applied to the discovery phase.  That's

4   now water under the bridge.  It is over.

5        We are starting with a clean slate, a new discovery                    02:46

6   master, new counsel for MGA, and we are going to build this up

7   and we'll go from here.  If there's a discovery dispute, please

8   take it to the Discovery Master.

9        **MR. ZELLER:**  That helps clarify it quite a bit, Your

10  Honor.                                                                      02:46

11        The other component is that at least with respect to

12  Phase 1, when we asked the question of where should we take a

13  request for leave to take additional depositions or serve

14  additional interrogatories and the like, the Court previously

15  directed that the motions be made to Your Honor.  And the Court            02:46

16  may recall that, in fact, in the first phase, Mattel did make

17  such a motion that was granted.

18        **THE COURT:**  Regarding what, again?

19        **MR. ZELLER:**  Increasing the limits.

20        **THE COURT:**  That is something which I am going to                 02:46

21  change for this.  I think in the first instance that should be

22  directed to the Discovery Master.  You both have full right to

23  appeal any decision from that, but I think it's best that the

24  Discovery Master function essentially as the Magistrate Judge

25  in this case and handle all of those from the get-go.  And                 02:47

ednesday, February 11, 2009                           Mattel vs. MGA Entertainmen

Exhibit 17 - Page 321

1  we'll go from there.

2          **MR. ZELLER:**  Thank you.

3          **THE COURT:**  Anything further?

4          Thank you.  Good day.

5

6

7

8

9

10                              CERTIFICATE

11

12  I hereby certify that pursuant to section 753, title 28, United
    States Code, the foregoing is a true and correct transcript of
13  the stenographically recorded proceedings held in the above-
    entitled matter and that the transcript page format is in
14  conformance with the regulations of the Judicial Conference of
    the United States.

15

16  _____          _____
    THERESA A. LANZA, CSR, RPR                        Date
17  Federal Official Court Reporter

18

19

20

21

22

23

24

25