# Exhibit 32

1   THOMAS J. NOLAN (Bar No. 066992)
    HARRIET S. POSNER (Bar. No. 116097)
2   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
    300 South Grand Avenue
3   Los Angeles, California 90071-3144
    Telephone:  (213) 687-5000
4   Facsimile:   (213) 687-5600
    E-mail:   tnolan@skadden.com
5             hposner@skadden.com

6   RAOUL D. KENNEDY (Bar No.  40892)
    TIMOTHY A. MILLER (Bar No. 154744)
7   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
    4 Embarcadero Center, 38th Floor
8   San Francisco, CA  94111-5974
    Telephone:  (415) 984-6400
9   Facsimile:   (415) 984-2698
    Email:      rkennedy@skadden.com
10              tmiller@skadden.com

11  AMY S. PARK (Bar No. 208204)
    SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
12  525 University Avenue
    Palo Alto, CA  94301
13  Telephone:  (650) 470-4500
    Facsimile:   (650) 470-4570
14  Email:      apark@skadden.com

15  Attorneys for Counter-Defendants,
    MGA ENTERTAINMENT, INC., ISAAC LARIAN, MGA ENTERTAINMENT
16  (HK) LIMITED, AND MGAE de MEXICO S.R.L. de C.V.

17              UNITED STATES DISTRICT COURT

18              CENTRAL DISTRICT OF CALIFORNIA

19                    EASTERN DIVISION

20  CARTER BRYANT, an individual    )  CASE NO. CV 04-9049 SGL (RNBx)
                                    )
21            Plaintiff,            )  Consolidated with Case No. 04-9059
                                    )  and Case No. 05-2727
22       v.                         )
                                    )
23  MATTEL, INC., a Delaware        )  **MGA'S SIXTH SET OF**
    corporation                     )  **REQUESTS FOR THE**
24                                  )  **PRODUCTION OF**
              Defendant.            )  **DOCUMENTS AND THINGS**
25                                  )  **IN CASE NO. 05-2727**
                                    )
26                                  )  Honorable Stephen G. Larson
                                    )  Courtroom 1
27                                  )

28

---

MGA'S SIXTH SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS       NO. CV 05-2727 SGL (RNBx)

Exhibit 32 - Page 1224

<table>
<tr><td>1</td><td></td></tr>
<tr><td>2</td><td>Consolidated with MATTEL, INC. v. BRYANT and MGA ENTERTAINMENT, INC. v. MATTEL, INC.</td></tr>
</table>

Consolidated with MATTEL, INC. v.
BRYANT and MGA
ENTERTAINMENT, INC. v.
MATTEL, INC.

)
)
)
)
)
)

Discovery Cut-Off:  March 3, 2008

**PROPOUNDING PARTY:**       **MGA ENTERTAINMENT, INC.**

**RESPONDING PARTY:**        **MATTEL, INC.**

**SET NUMBER:**              **SIX**

**NOs.:**                    **540 - 571**

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, plaintiff MGA Entertainment, Inc. ("MGA") requests that defendant Mattel, Inc. ("Mattel") produce all DOCUMENTS and tangible things described, in accordance with the Definitions and Instructions set forth below, at 9:00 a.m. on December 16, 2007, at the offices of Skadden, Arps, Slate, Meagher & Flom LLP, 300 South Grand Avenue, Los Angeles, California  90071.

## DEFINITIONS

As used in these Requests:

1.     "BARBIE" means and refers to each image, character, logo, doll, toy, styling head, plush toy, play set, accessory, product, packaging or any other thing that is or has ever been manufactured, marketed or sold by YOU, or others under licensed by YOU, as part of a line of goods or merchandise commonly known as, or sold and marketed under the name "Barbie."

2.     "BRATZ" means and refers to each image, character, logo, doll, fashion doll, plush toy, styling head, toy, accessory, product, packaging, theme, or other thing or matter that is or has ever been manufactured, marketed or sold by MGA, or others under license, as part of a line of goods or merchandise commonly known as, or sold and marketed under the "Bratz" trademark or trade dress.

3.     "BRYANT" means Carter Bryant, any of his current or former agents, representatives, attorneys, employees, partners, joint venturers, and any other person acting on his behalf, pursuant to his authority or subject to his control.

4.     "COMMUNICATION[S]" means any transmission of information from one person or entity to another, including, without limitation, by personal meeting, conversation, letter, telephone, facsimile or electronic mail. Each request that encompasses information relating in any way to communications to, from or within a

---

1  business or corporate entity is hereby designated to mean, and should be construed to

2  include, all communications by and between representatives, employees, agents or

3  servants of the business or corporate entity.

4       5.   "CONFLICT OF INTEREST QUESTIONNAIRE" shall mean any form

5  of employment agreement concerning, *inter alia*, relations, if any, between Mattel's

6  employees, suppliers, and/or competition, whether known by the title "Conflict of

7  Interest Questionnaire" or any other title, including without limitation the form of

8  Conflict of Interest Questionnaire entitled "Conflict of Interest Questionnaire"

9  executed by BRYANT on or about January 4, 1999.

10       6.   "DOCUMENT[S]" incorporates the full meaning of Federal Rule of

11  Civil Procedure 34, and shall be construed in the broadest sense to mean any and all

12  writings, tangible things and property, of any kind, that are now or that have been in

13  YOUR actual or constructive possession, custody or control, including, but not

14  limited to, any handwritten, typewritten, printed, drawn, charted, taped, filmed,

15  punched, copied, recorded, transcribed, graphic or photographic matter of any kind

16  or nature, in, through, or from which information may be embodied, translated,

17  conveyed or stored, whether an original, a draft or copy, however produced or

18  reproduced, whether sent or received or neither, including, but not limited to, notes,

19  memoranda, correspondence, letters, facsimiles and facsimile transmittals, reports,

20  inter- and intra-office COMMUNICATIONS, work papers, work sheets, work

21  records, ledgers, graphs, indexes, advertisements, brochures, price lists, cost sheets,

22  estimating sheets, bills, bills of lading, bids, time cards, receipts, purchase orders,

23  telephone records, telegrams, telexes, literature, invoices, contracts, purchase orders,

24  estimates, recordings, transcriptions of recordings, records, books, pamphlets,

25  periodicals, publications, papers, tapes, DVDs, video CDs, video, audio and digital

26  recordings, television commercials, story boards, website or other spot

27  advertisements, movies, movie trailers, prototypes, products, diaries, calendars,

28

1  charts, drawings, sketches, messages, photographs and data contained in or
2  accessible through any electronic data processing system, including, but not limited
3  to, computer databases, data sheets, data processing cards, computer files and tapes,
4  computer disks, CD-ROMs, computer metadata, microfilm, microfiche, electronic
5  mail, website and web pages and transcriptions thereof and all other
6  memorializations of any conversations, meetings and conference, by telephone or
7  otherwise.  The term DOCUMENT also means every copy of a DOCUMENT, where
8  such copy is not an identical duplicate of the original, whether because of deletions,
9  underlinings, showing of blind copies, initialing, signatures, receipt stamps,
10  comments, notations, differences in stationery or any other difference or
11  modification of any kind.

12      7.   "EMPLOYEE INVENTIONS AGREEMENT" shall mean any form of
13  Mattel employment agreement concerning, *inter alia*, (i) ownership of inventions,
14  and (ii)(a) trade secrets and/or (iii) conflicts, whether known by the title "Employee
15  Confidential Information and Inventions Agreement" or any other title, including
16  without limitation the form of Employee Inventions Agreement entitled "Employee
17  Confidential Information and Inventions Agreement" executed by BRYANT on or
18  about January 4, 1999.

19      8.   "MATTEL," "YOU," or "YOUR" means the party Mattel, Inc. and any
20  of its past or present officers, directors, agents, employees, representatives,
21  consultants, attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-
22  interest, entities and persons acting in joint venture or partnership relationships with
23  YOU and any others acting on YOUR behalf, pursuant to YOUR authority or subject
24  to YOUR control.

25      9.   "MGA" means MGA Entertainment, Inc. and any of its past or present
26  officers, directors, agents, employees, representatives, consultants, attorneys, parents,
27  subsidiaries, divisions, affiliates, predecessors-in-interest, entities and persons acting
28

1 in joint venture or partnership relationships with MGA and any others acting on

2 MGA's behalf, pursuant to its authority or subject to its control.

3     10.    "MY SCENE" means and refers to each image, character, logo, doll,

4 fashion doll, toy, styling head, plush toy, play set, accessory, product, packaging or

5 any other thing that is or has ever been manufactured, marketed or sold by YOU, or

6 others under licensed by YOU, as part of a line of goods or merchandise commonly

7 known as, or sold and marketed under the name "My Scene."

8     11.    "MY SCENE DOLL" means any fashion doll that is or has ever been

9 distributed, marketed, sold or offered for sale under the name "My Scene" or as part

10 of the "My Scene" line, including separate themes.

11     12.    "REFERRING OR RELATING TO" should be construed in the

12 broadest possible sense to mean concerning, consisting of, referring to, relating to,

13 describing, discussing, constituting, evidencing, containing, reflecting, mentioning,

14 pertaining to, citing, summarizing, analyzing or bearing any logical or factual

15 connection with the matter discussed.

16

17                          **INSTRUCTIONS**

18     1.    YOU are instructed to produce all non-privileged DOCUMENTS in

19 YOUR possession, custody or control.  A DOCUMENT is in YOUR "possession,

20 custody, or control" if it is in YOUR physical possession, or if, as a practical matter,

21 YOU have the ability, upon request, to obtain possession of the DOCUMENT or a

22 copy thereof from another person or entity who has physical possession of the

23 DOCUMENT.

24     2.    YOU are instructed to produce all non-privileged DOCUMENTS

25 responsive to these Requests to the extent YOU have not previously produced them

26 to MGA.

27

28

---

3.      If any DOCUMENT or category of DOCUMENTS is not produced in full, please state with particularity the reason or reasons it is not being produced in full.

4.      Each DOCUMENT is to be produced as it is kept in the usual course of business, including all file folders, binders, notebooks, and other devices by which such DOCUMENTS may be organized, separated, or identified.

5.      Each DOCUMENT maintained or stored electronically in native, electronic format is to be produced with all relevant metadata intact and in an appropriate and useable electronic manner.

6.      Unless otherwise noted, these Requests seek DOCUMENTS from January 1, 1998, to the present.

7.      These Requests impose a continuing obligation subsequent to your initial production to the full extent provided for in Rule 26(e) of the Federal Rules of Civil Procedure.

## REQUESTS FOR PRODUCTION

**REQUEST NO. 540:**

Each of MATTEL's Brand Directional Outlines.

**REQUEST NO. 541:**

Each version of the EMPLOYEE INVENTIONS AGREEMENT adopted and/or used by or on behalf of MATTEL, including specifically the version identified by Lissa Freed at her deposition, pages 56-59, implemented by MATTEL according to her testimony during the years 2004-2006.

**REQUEST NO. 542**

Each version of MATTEL's "Proprietary Information Checkout" form, and/or each version of any similar forms used for a comparable purpose in connection with

1 employee exit processing, whether known by the name "Proprietary Information

2 Checkout" form or any other name.

3 **REQUEST NO. 543:**

4      All DOCUMENTS concerning each instance in which any provision of an

5 EMPLOYEE INVENTIONS AGREEMENT was breached or alleged to be breached

6 by an employee, independent contractor, or any other person with whom MATTEL

7 had entered into an EMPLOYEE INVENTIONS AGREEMENT, including but not

8 limited to employee personnel files to the extent not protected by applicable federal

9 or state privacy laws; letters, e-mails, or other forms of correspondence; and

10 DOCUMENTS sufficient to evidence litigations.

11 **REQUEST NO. 544:**

12      Each version of the CONFLICT OF INTEREST QUESTIONNAIRE adopted

13 and/or used by or on behalf of MATTEL.

14 **REQUEST NO. 545:**

15      Each DOCUMENT evidencing a disclosure by a MATTEL employee of pre-

16 employment inventions disclosed to MATTEL in connection with the employee's

17 execution of MATTEL's CONFLICT OF INTEREST QUESTIONNAIRE.

18 **REQUEST NO. 546:**

19      All DOCUMENTS concerning each instance in which any provision of a

20 CONFLICT OF INTEREST QUESTIONNAIRE was breached or alleged to be

21 breached by an employee, independent contractor, or any other person with whom

22 MATTEL had entered into a CONFLICT OF INTEREST QUESTIONNAIRE,

23 including but not limited to employee personnel files to the extent not protected by

24 applicable federal or state privacy laws; letters, e-mails, or other forms of

25 correspondence; and DOCUMENTS sufficient to evidence litigations.

26

27

28

**REQUEST NO. 547:**

All DOCUMENTS evidencing a MATTEL reminder COMMUNICATION to MATTEL employees and/or independent contractors relating to their obligations under any of the EMPLOYEE INVENTIONS AGREEMENT, CONFLICT OF INTEREST QUESTIONNAIRE, and/or MATTEL's policy concerning conflict(s) of interest.

**REQUEST NO. 548:**

DOCUMENTS sufficient to evidence each complaint, tip, or other COMMUNICATION, whether oral or written, received by MATTEL that alleged a breach and/or violation of any of the EMPLOYEE INVENTIONS AGREEMENT, the CONFLICT OF INTEREST QUESTIONNAIRE, and/or MATTEL's policies concerning conflict(s) of interest.

**REQUEST NO. 549:**

Each "brand brief," "creative brief," or other similar DOCUMENT concerning the advertising strategy for MATTEL's "BARBIE" products, including but not limited to "BARBIE" dolls.

**REQUEST NO. 550:**

Each "brand brief," "creative brief," or other similar DOCUMENT concerning the advertising strategy for MATTEL's "MY SCENE" products, including but not limited to "MY SCENE" DOLLS.

**REQUEST NO. 551:**

Each report, study, presentation, memorandum, or other DOCUMENT that analyzed the effectiveness of any television commercial or any advertising campaign for MATTEL's "BARBIE" products, including but not limited to "BARBIE" dolls.

**REQUEST NO. 552:**

Each report, study, presentation, memorandum, or other DOCUMENT that analyzed the effectiveness of any television commercial or any advertising campaign

1  for MATTEL's "MY SCENE" products, including but not limited to "MY SCENE"

2  DOLLS.

3  **REQUEST NO. 553:**

4      DOCUMENTS sufficient to evidence each of MATTEL's policies, procedures,

5  rules, or strategies, whether written or oral, concerning the number and/or types of

6  products perceived as being in actual or potential competition with MATTEL's

7  "BARBIE" dolls that MATTEL would market, sell, offer for sale, or otherwise

8  introduce to consumers.

9  **REQUEST NO. 554:**

10      To the extent not already produced in response to the foregoing Requests, all

11  DOCUMENTS and things identified in response to MGA's Second Set of

12  Interrogatories.

13  **REQUEST NO. 555:**

14      Each report of consumer or customer research relating to the market for

15  fashion dolls and/or any specific fashion doll, whether marketed by MATTEL or

16  otherwise.

17  **REQUEST NO. 556:**

18      All DOCUMENTS relating to each "stopper" product introduction launched

19  by MATTEL in response to the launch of a MATTEL competitor's product, and all

20  DOCUMENTS assessing the success of MATTEL's "stopper" product.

21  **REQUEST NO. 557:**

22      DOCUMENTS sufficient to evidence each assessment by or for MATTEL of

23  the BRATZ line of products.

24  **REQUEST NO. 558:**

25      All DOCUMENTS relating to each disclosure, whether written or oral, made

26  to MATTEL by a MATTEL employee or independent contractor of "Proprietary

27  Subject Matter made or conceived during the term of [an employee's or independent

28

Exhibit 32 - Page 1233

1   contractor's] employment" as this phrase is used in MATTEL's "Proprietary
2   Information Checkout" form.
3   **REQUEST NO. 559:**
4        All DOCUMENTS relating to each COMMUNICATION, whether written or
5   oral, made to MATTEL by a MATTEL employee or independent contractor of
6   "inventions... conceived or reduced to practice by [an employee or independent
7   contractor] (along or jointly by others) at any time during [an employee's or
8   independent contractor's] employment by Mattel" as this phrase is used in the
9   Inventions Agreement.
10  **REQUEST NO. 560:**
11       DOCUMENTS sufficient to evidence the identify of the MATTEL officers,
12  officials, or other designees to whom disclosures were made or were designated to be
13  made by MATTEL employees and/or independent contractors of "Proprietary
14  Subject Matter made or conceived during the term of [an employee's or independent
15  contractor's] employment" as this phrase is used in MATTEL's "Proprietary
16  Information Checkout" form.
17  **REQUEST NO. 561:**
18       DOCUMENTS sufficient to evidence each of MATTEL's policies, procedures,
19  or processes, whether written or oral, concerning the disclosure by MATTEL
20  employees and/or independent contractors of "Proprietary Subject Matter made or
21  conceived during the term of [an employee's or independent contractor's]
22  employment" as this phrase is used in MATTEL's "Proprietary Information
23  Checkout" form.
24  **REQUEST NO. 562:**
25       DOCUMENTS sufficient to evidence each of MATTEL's policies, procedures,
26  or processes, whether written or oral, concerning the disclosure by MATTEL
27  employees and/or independent contractors of "inventions . . . conceived or reduced to
28

1 practice by [an employee or independent contractor] (along or jointly by others) at

2 any time during [an employee's or independent contractor's] employment by

3 [MATTEL]" as this phrase is used in the Inventions Agreement.

4 **REQUEST NO. 563:**

5     DOCUMENTS sufficient to show all records of sales figures, revenues and

6 profits pertaining to BARBIE from January 1, 1990 to the present.

7 **REQUEST NO. 564:**

8     All DOCUMENTS REFERRING OR RELATING TO YOUR profits,

9 including, but not limited to, gross profits and gross margins, from the sale of each

10 MY SCENE DOLL sold by YOU or YOUR licensees.

11 **REQUEST NO. 565:**

12     YOUR general ledgers from January 1, 1995 through the present.

13 **REQUEST NO. 566:**

14     All DOCUMENTS REFERRING OR RELATING TO business plans,

15 forecasts, budgets and projects prepared by YOU in connection with each of YOUR

16 products, including but not limited to BARBIE and MY SCENE.

17 **REQUEST NO. 567:**

18     All DOCUMENTS REFERRING OR RELATING TO market research and

19 competitive studies and analyses prepared or conducted by YOU with respect to the

20 fashion doll market.

21 **REQUEST NO. 568:**

22     All DOCUMENTS REFERRING OR RELATING TO any position taken by

23 YOU in any litigation, arbitration or other legal proceeding that any damages owed

24 by YOU for copyright infringement should be apportioned.

25 **REQUEST NO. 569:**

26     All DOCUMENTS REFERRING OR RELATING TO any position taken by

27 YOU in any litigation, arbitration or other legal proceeding relating to the estimated

28

1 | value of original drawings, designs or ideas for a product, including, but not limited

2 | to, such determinations expressed as a fraction or percentage of the overall value of

3 | that product and other related products based on those original drawings, designs or

4 | ideas.

5 | **REQUEST NO. 570:**

6 |    All DOCUMENTS REFERRING OR RELATING TO any research or

7 | investigation by YOU to determine the estimated value of original drawings, designs

8 | or ideas for any toy, including, but not limited to, fashion dolls owned or licensed by

9 | MATTEL, including, but not limited to, such determinations expressed as a fraction

10 | or percentage of the overall value of all products based on those original drawings,

11 | designs or ideas.

12 | **REQUEST NO. 571:**

13 |    All DOCUMENTS REFERRING OR RELATING TO any decision made by

14 | YOU to sell, grant or license to any PERSON the rights to any toy design or idea,

15 | including, but not limited to fashion dolls, that YOU did not intend to exploit or

16 | develop.

17 | DATED:      November 16, 2007

18 |

19 |                      SKADDEN, ARPS, SLATE, MEAGHER &
20 |                      FLOM, LLP

21 |
22 |                      *Thomas J. Nolan/pmw*

23 |                      Thomas J. Nolan

24 |
25 |                      Attorneys for Counter-Defendants, MGA
                          ENTERTAINMENT, INC., ISAAC LARIAN,
26 |                      MGA ENTERTAINMENT (HK) LIMITED,
                          AND MGAE de MEXICO S.R.L. de C.V.

27 |

28 |

---

MGA'S SIXTH SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS      NO. CV 05-2727 SGL (RNBx)

11

Exhibit 32 - Page 1236

John B. Quinn, Esq.
Michael T. Zeller, Esq.
Jon D. Corey, Esq.
Timothy L. Alger, Esq.
Quinn Emanuel Urquhart Oliver &
Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
(213) 443-3000
(213) 443-3100 (Fax)

*Attorneys for Mattel, Inc.*
*(Personal Service)*

Mark E. Overland
Alexander H. Cote
David C. Scheper
Overland Borenstein Scheper & Kim
300 South Grand Avenue, Suite 2750
Los Angeles, CA  90071
(213) 613-4655
(213) 613-4656 (Fax)
*Attorneys for Carlos Gustavo Machado*
*Gomez*
*(Federal Express)*

John W. Keker, Esq.
Michael H. Page, Esq.
Keker & Van Nest, LLP
710 Sansome Street
San Francisco, CA 94111
(415)391-5400
(415) 397-7188 (Fax)

*Attorneys for Carter Bryant*
*(Federal Express)*

Exhibit 32 - Page 1237

## PROOF OF SERVICE

### STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the county of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 300 South Grand Avenue, 34th Floor, Los Angeles, CA 90071.

On **November 16, 2007**, I served the foregoing document described as:

**MGA's SIXTH SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS AND THINGS IN CASE NO. 05-2727**

on the interested parties in this action addressed as follows:

### SEE ATTACHED SERVICE LIST

[X]   (BY PERSONAL SERVICE)   ☐   By personally delivering copies to the person served. (FEDERAL) (As Noted.)

[X]   I caused such documents to be hand delivered to the office of the addressee. (FEDERAL) (As Noted.)

[X]   BY FEDERAL EXPRESS) I am readily familiar with the firm's practice for the collection and processing of correspondence for mailing with Federal Express and the fact that the correspondence would be deposited with Federal Express that same day in the ordinary course of business; on this date, the above-referenced correspondence was placed for deposit at Los Angeles, California and placed for collection and mailing following ordinary business practices. (As Noted.)

I declare under penalty of perjury under the laws of the State of California and the United States of America that the above is true and correct.

Executed on November 16, 2007 at Los Angeles, California.

Becky S. Isomoto
PRINT NAME                           SIGNATURE

Exhibit 32 - Page 1238