MELINDA HAAG (State Bar No. 132612)
mhaag@orrick.com
ANNETTE L. HURST (State Bar No. 148738)
ahurst@orrick.com
WARRINGTON S. PARKER III (State Bar No. 148003)
wparker@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105
Telephone: +1-415-773-5700
Facsimile: +1-415-773-5759

WILLIAM A. MOLINSKI (State Bar No. 145186)
wmolinski@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017
Telephone: +1-213-629-2020
Facsimile: +1-213-612-2499

Attorneys for MGA Parties

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware Corporation<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | Case No. CV 04-9049 SGL (RNBx)<br><br>Consolidated with:<br>CV 04-9059<br>CV 05-2727<br><br>**ISAAC LARIAN'S REPLY IN SUPPORT OF OBJECTIONS TO DISCOVERY MASTER ORDER NO. 46 REGARDING RESPONSES TO PHASE 2 INTERROGATORIES**<br><br>Judge: Stephen G. Larson<br>Courtroom: Courtroom No. 1<br>Date: October 5, 2009<br>Time: 10:00 a.m.<br><br>**[Declaration of Warrington S. Parker III, filed concurrently]** |

**CONFIDENTIAL—FILED UNDER SEAL**

**TABLE OF CONTENTS**
Page

INTRODUCTION ................................................................................................. 1

ARGUMENT ....................................................................................................... 2

I. MATTEL'S ARGUMENTS FAIL TO ESTABLISH RELEVANCE ........... 2

II. MATTEL'S JUSTIFICATION FOR THE INTERROGATORY REVEALS THAT THESE INTERROGATORIES ARE OVERBROAD ................................................................................................ 6

CONCLUSION ................................................................................................... 9

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Adams v. Target,*
    2001 WL 987853 (S.D. Ind. July 30, 2001) ........................................................ 6

*Claude P. Bamberger Int'l, Inc. v. Rohm and Haas Co.,*
    1998 WL 684263 (D.N.J. Apr. 1, 1998) .............................................................. 8

*England Data Servs., Inc. v. Becher,*
    829 F.2d 286 (1st Cir. 1987) ............................................................................... 4

*PMC, Inc. v. Ferro Corp.,*
    131 F.R.D. 184 (C.D. Cal. 1990) ........................................................................ 6

*So. Cal. Housing Rights Ctr. v. Krug,*
    2006 WL 4122148 (C.D. Cal. Sept. 5, 2006) ..................................................... 5

# INTRODUCTION

However broadly one wishes to interpret Mattel's claims ████████████████████████████████████████████████████████████████████████████████████████████████████████████ ████████The interrogatories do not seek information relating to either of these facts. As Mattel makes clear, it seeks investment information from Mr. Larian and the trusts "irrespective of the source of those funds." Opp. 10. It seeks information even if there is no involvement of MGA. *Id.*

This is why these requests are overbroad and seek information that is entirely irrelevant. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Third Amended Complaint ("TAAC") ¶ 138. Discovery, if any, is appropriately cabined by these allegations.

Nor are the requests made more relevant or less overbroad when Mattel suggests that these interrogatories will show the relationship between Mr. Larian and the trusts and establish net worth. The interrogatories seek any investment at all since 2005. It does not matter whether Mr. Larian is somehow involved (monetarily, as co-owner) in the trusts' investments or vice-versa. This justification is meritless.

As for net worth, Mattel has documents establishing net worth. ██████████████████████████████████████████████████████████████████ In any case, these interrogatories do not serve the purpose of showing "net worth." They ask for

investments—that is a measure of worth. It is not a measure of *net* worth. Moreover, what Mattel fails to justify is why it needs "net worth" information for a particular date and then on a rolling basis from day to day or month to month. But at most, this is all that the information sought would provide.

In short, these interrogatories seek private information that has no bearing on this case. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Discovery Master Order No. 46 should be overruled.

## ARGUMENT

### I.   MATTEL'S ARGUMENTS FAIL TO ESTABLISH RELEVANCE

As noted in Mr. Larian's objection, Obj. 12-13, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Mattel does not dispute that these allegations are the core of the allegations against Mr. Larian. Indeed, it reiterates these very claims in support of the interrogatories at issue. Opp. 7.

Mattel then points to its more omnibus allegation, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ TAAC ¶ 138. This, according to Mattel, ▓▓▓▓▓▓ justifies the discovery sought. Opp. 7.

Even taking Mattel at its word, what these interrogatories *do not do* is attempt to obtain information ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ As Mattel admits, the interrogatories seek information relating to funds "irrespective of the source of those funds . . . ." Opp. 10. That is precisely the point. What Mattel wants is any investment made since 2005 even if there is absolutely no relationship

1  whatsoever to MGA or to the monies of Mattel.[1] Even if Mr. Larian or the various
2  trusts invested monies obtained from third parties or prior investments having
3  nothing to do with MGA or Mattel, Mattel seeks that information.

4  Yet, in no way does this establish, tend to establish or suggest the
5  specific allegations ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
6  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
7  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* TAAC ¶ 138.
8  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
9  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
10 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ The requests are divorced of
11 the two predicate facts that even Mattel has to acknowledge forms the basis of its
12 complaint—▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
13 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

14 This relevancy argument is further reinforced by the specific
15 allegations Mattel does make. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
16 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
17 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
18 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
19 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
20 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
21 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
22 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
23 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
24 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[1] Mattel claims that MGA argued in its Objection "for the first time" that the interrogatories are not relevant because they do not require a link to monies obtained from MGA. Opp. 9. This is false. As stated in Isaac Larian's original opposition to Mattel's motion to compel "The Interrogatories do ***not*** tie the information requested to any use or receipt of MGA assets, nor are they limited to information about Mr. Larian or trusts he controls." Parker Decl. Ex. D at 396 (emphasis in original).

1  ██████████████████████████████████████████████████████████
2  ██████████████████████████████████████████████████████████
3  ██████████████ *England Data Servs., Inc. v. Becher*, 829 F.2d 286, 291-92
4  (1st Cir. 1987) (cited at Opp. 9).
5        Mattel offers two other reasons why this information is relevant.
6  ██████████████████████████████████████████████████████████
7  ██████████████████████████████████████ Mattel does not show how
8  these interrogatories will establish control and the relationship, and it is difficult to
9  imagine how these broad requests would. Interrogatory No. 1, for example, asks
10 for a list of every "entity" in which Mr. Larian and his wife had an "ownership
11 interest." There is no dispute in this case that Mr. Larian and his wife have a
12 relationship. Moreover, because the interrogatory is not limited to ownership
13 interests in the trusts at issue in this case, this interrogatory sweeps into its ambit
14 investments in publicly trade companies, real estate and all other matter of
15 investment with third parties who Mattel does not claim were involved in this case.
16 And Mattel nowhere suggests that Mr. Larian's investment in some publicly traded
17 company would show that he somehow controls one of the trusts at issue.
18       Similarly, with regard to the trusts, the interrogatories do not attempt
19 to suss out Mr. Larian's control and relationship. If, for example, the trusts have
20 invested in some stock, the information sought will merely establish ownership of a
21 small portion of a company. This does not show control or relationship by Mr.
22 Larian of those trusts. Moreover, as Mattel admits, it seeks information regarding
23 "ownership interests" whether or not Mr. Larian or MGA had any involvement—in
24 making the decision, in providing the funds, or in any other way. Thus, Mattel
25 actually *is not* seeking information relating to control or relationship. The list of
26 investments will not provide that either. There is no way that Mattel could
27 segregate out those investments purchased with monies from Mr. Larian or MGA
28 and monies obtained by other means.

Regarding net worth, Mattel has at various times made the claim that it has not obtained financial data establishing net worth. The Discovery Master recently rejected just this type of assertion. Indeed, MGA has recently supplemented its production. *See* Decl. of Warrington S. Parker III filed in support of this Reply Ex. H (DM Order No. 59 at 8); *see also* Dkt. No. 6067 (MGA Opp. to Mtn. to Compel); Dkt. Nos. 6063, 6072 ¶ 24, Exs. D & Q. (Parker Decl. filed in Support of MGA Opp. to Mtn. to Compel).[2]

Even were this not so, the information sought is not the method of establishing net worth. The information sought will show purchases from day to day or month to month. It does not seek "net worth," which is not measured merely by what one purchases—hence the use of the word "net."

Also, were Mattel truly interested in net worth, one would still expect that it would establish why "net worth"—even though that term is inappropriate to these interrogatories—is relevant on a day to day basis. Mattel has done no such thing. As an example, what Mattel will obtain is information that on June 10, 2005, a trust purchased some stock. That does not tell you what the trust's net worth is at any given point, even as of June 10, 2005. And even if it did, Mattel has made no attempt to show that net worth on June 10, 2005 or any other specific date is critical to its case or its determination of net worth.

This is all to say that Mattel seeks information that has absolutely no bearing on this case. The interrogatories have no relationship to the allegations of this case because, as Mattel admits, it does not care where the funds came from, ████████████████████████████████████████ or just routine investments.

Courts have warned that discovery in RICO claims must be carefully

---

[2] Mattel points to *So. Cal. Housing Rights Ctr. v. Krug*, 2006 WL 4122148 (C.D. Cal. Sept. 5, 2006), as proof that courts "routinely require multiple years of financial information as part of net worth discovery." Opp. 10 n. 25. They may be. But Mattel has that discovery. And the information sought here is not the information at issue in that case.

monitored and limited precisely because, as Mattel takes pains to point out, such claims are often broad. Opp. 9. "The need to reasonably limit the scope of discovery is acute for claims brought under the RICO statute" because there is a "risk that a party will attempt to use discovery to conduct a 'fishing expedition' [which] is a significant concern." *PMC, Inc. v. Ferro Corp.*, 131 F.R.D. 184, 187 (C.D. Cal. 1990); *see also Adams v. Target*, 2001 WL 987853 * 2 (S.D. Ind. July 30, 2001) ("The purpose of discovery is to sharpen the issues in a case for trial, not to gather information to support a complaint."). So here. There is absolutely no justification for such discovery.

## II. MATTEL'S JUSTIFICATION FOR THE INTERROGATORIES REVEALS THAT THESE INTERROGATORIES ARE OVERBROAD

Mattel justifies the breadth of these interrogatories by offering an example of what it hopes to obtain. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Opp. 12. And Mattel notes that these interrogatories relate to ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *Id.*

Were this the information sought by these interrogatories, perhaps there might be a different argument made by Mr. Larian. But this is not the information sought—not by a long shot. The interrogatories *do not* ask for monies that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ They ask for any ownership interest in any entity whatsoever for the past four years. These interrogatories do not make a distinction between ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (which Mattel claims is what it seeks) and monies that went to other entities having no relationship with MGA or Mr. Larian. Indeed, it is this contrast between what Mattel claims it wants and what it is actually seeking that most vividly highlights the disconnect and the overbreadth.

1         Nor will these interrogatories reveal what assets from the trust have been used for MGA's benefit. At most, these interrogatories will merely show the investments made by the trusts.

        As for Mattel's claim that "common sense" should offer some limitation to these interrogatories, Opp. 13, as noted by Mr. Larian in his original objection, the common sense approach offers no meaningful limitation. It applies only to the definition of the term "ownership" and that term remains vague. Indeed, Mattel does not attempt to offer some meaningful limitation at all on which the parties could agree. It does not tell this Court what that common sense limitation could be.

        While claiming that Mr. Larian is engaging in a mere rhetorical flourish when he suggests that even a $10 REIT must be revealed, Opp. 13, Mr. Larian suggested this example for two reasons. First, the example reveals just how little a "common sense" definition of "ownership" provides guidance. REITs, money markets and similar investments could arguably provide some relevant interest. But to suggest that it creates the type of ownership, or control or relationship that Mattel imagines is to stretch the point of "ownership" beyond a logical limit. And to couple that with the fact that the monies need not have been ████████ or even come from MGA is to then stretch the requests beyond the scope of this case entirely. But other than to suggest that a $10 investment is somehow preposterous, Mattel does not disavow a desire to obtain information even into these investment vehicles.

        Mr. Larian highlighted a $10 REIT for another purpose. There is no dollar amount limitation to the investment that Mattel seeks except as to publicly traded stock. If it is a publicly traded stock, the transaction must be more than $1,000. As a result, no matter how small the investment, unless it is publicly traded stock, it must be disclosed.

        Finally, Mattel's argument that these requests are not overbroad

1  ███████████████████████████████████████████ does not work.
2  Opp. 14. This "what is good for the goose is good for the gander argument" fails
3  for the reasons set forth in Discovery Order No. 56. ███████████████████
4  ███████████████████████████████████████████████████████████
5  ███████████████████████████████████████████████████████████
6  ██████ *See* Proctor Decl. Ex. 14 at 268 (Discovery Master Order No. 56).
7  Here, Mattel has not made any specific allegation concerning the
8  alleged conduct that would allow discovery starting in 2005. ████████████
9  ███████████████████████████████████████████ Opp. 14.
10 That is all. ███████████████████████████████████
11 ███████████████████████████████████████████████████████████
12 █████████████████████ *See* TAAC ¶¶ 138, 149. But this is not enough
13 to sustain the discovery sought. Speculation that something might have happened
14 is not sufficient to allow broad reaching discovery, particularly when Mattel is
15 seeking information completely █████████████████████ it claims Mr.
16 Larian obtained from Mattel. *Claude P. Bamberger Int'l, Inc. v. Rohm and Haas*
17 *Co.*, 1998 WL 684263 (D.N.J. Apr. 1, 1998) (denying discovery based on the
18 speculation that something must be wrong and rejecting discovery of all of
19 defendant's finances because unrelated to plaintiff's claims). This is all the more
20 true when ████████████████████████████████████
21 ███████████████████████████████████████████████ *See id.*
22 ███████████████████████████████████████████████████████████
23 ███████████████████████████████████████████████████████████
24 █████████████████████ Given this, these requests are overbroad.
25 In sum, Mattel seeks broad ranging discovery that invades the privacy
26 interests of all concerned without any justification.

## CONCLUSION

For all of the foregoing reasons and for the reasons set forth herein and the original objection, Discovery Master Order No. 46 should be overruled.

Dated: September 24, 2009

Respectfully submitted,

WARRINGTON S. PARKER III
Orrick, Herrington & Sutcliffe LLP

By: _____
WARRINGTON S. PARKER III
Attorneys for Plaintiff