# EXHIBIT 1



O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES – GENERAL

Case No.   CV 04-09049 SGL(RNBx)                          Date: December 3, 2008
Title:     MATTEL, INC. V. MGA ENTERTAINMENT, INC., et al.
===============================================================

PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

         James Holmes                          None Present
         Courtroom Deputy Clerk                Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:      ATTORNEYS PRESENT FOR DEFENDANTS:

None Present                           None Present

PROCEEDINGS:

**ORDER FINDING IN FAVOR OF MATTEL AS TO THE MGA PARTIES' AFFIRMATIVE DEFENSES**

**ORDER GRANTING MATTEL'S MOTION FOR DECLARATORY JUDGMENT (DOCKET #4303)**

**ORDER GRANTING MATTEL'S MOTION FOR CONSTRUCTIVE TRUST AND § 17200 INJUNCTIVE RELIEF (DOCKET #4305)**

**ORDER GRANTING MATTEL'S MOTION FOR PERMANENT INJUNCTION (DOCKET #4306)**

**ORDER DENYING AS MOOT MOTION TO STRIKE PORTIONS OF HUTNYAN DECLARATIONS AND EXHIBITS THERETO (DOCKET #4351)**

**ORDER DENYING MOTION TO STRIKE THE PROCTOR, KEISER, AND HOLLANDER DECLARATIONS (DOCKET #4352)**

**ORDER DENYING AS MOOT MOTION TO STRIKE MEYER DECLARATION (DOCKET #4377)**

**ORDER STAYING COURT'S ORDER PENDING CONSIDERATION OF THE PARTIES' POST-**

MINUTES FORM 90                                    Initials of Deputy Clerk: jh
CIVIL – GEN                     1

EXHIBIT _____1_____
PAGE _____6_____

**TRIAL MOTIONS**

**ORDER SETTING FORTH FURTHER BRIEFING SCHEDULE**

**ORDER REGARDING DISCOVERY MASTER PROPOSALS FOR PHASE 2**

**ORDER REGARDING JOINTLY LODGED LAPTOP COMPUTER**

**ORDER REGARDING SERVICE OF PERMANENT INJUNCTION**

**FILED CONCURRENTLY HEREWITH:**

**(1) MATTEL'S PROPOSED ORDER (AS MODIFIED BY THE COURT) GRANTING DECLARATORY JUDGMENT**

**(2) MATTEL'S PROPOSED ORDER (AS MODIFIED BY THE COURT) GRANTING MATTEL'S MOTION FOR CONSTRUCTIVE TRUST AND FOR FINDING LIABILITY AND INJUNCTIVE RELIEF PURSUANT TO CAL. BUS. & PROF. CODE § 17200**

**(3) MATTEL'S PROPOSED ORDER (AS MODIFIED BY THE COURT) GRANTING MATTEL'S MOTION FOR PERMANENT INJUNCTION**

These matters were heard on November 10, 2008, after extensive briefing by the parties. After a two-phase jury trial, the Court considers certain equitable issues (referred to as Phase 1C of the trial) and enters the following Order.  Filed concurrently herewith are:  (1) Mattel's Proposed Order (as modified by the Court) Granting Declaratory Judgment; (2) Mattel's Proposed Order (as modified by the Court) Granting Mattel's Motion for Constructive Trust and for Finding Liability and Injunctive Relief Pursuant to Cal. Bus. & Prof. Code § 17200; and (3) Mattel's Proposed Order (as modified by the Court) Granting Mattel's Motion for Permanent Injunction.

In reaching the rulings set forth herein, the Court has considered the parties' briefs and exhibits submitted during Phase 1C of the trial, the arguments of counsel, as well as the entire record (including the evidence properly submitted in Phase 1A and Phase 1B of the trial) and its previous Orders.

The Court refers collectively to all defendants herein, including MGA CEO Isaac Larian ("Larian"), as "the MGA parties".  MGA Entertainment, Inc., is referred to as "MGAE".

The Court has carefully and deliberately considered the parties' well-presented legal and equitable arguments, authorities, and evidence concerning the motions identified above.  In its final analysis, the Court finds, as did the jury, that the preponderance of evidence establishes that Carter Bryant ("Bryant") created and developed the name, the concept, and, together with Margaret Leahy, the prototypical sculpt for the hugely-successful Bratz brand of female fashion

MINUTES FORM 90
CIVIL – GEN                                          2                          Initials of Deputy Clerk: jh

EXHIBIT ___/___
PAGE ___7___

Case 2:04-cv-09049-DOC-RNB   Document 6857-2   Filed 09/25/09   Page 4 of 36   Page ID
#:228047
Case 2:04-cv-09049-SGL-RNB   Document 4439   Filed 12/03/2008   Page 3 of 17

dolls while working as an employee of Mattel and while bound by the terms of an Inventions Agreement, which provided that all rights to such property, and the property itself, belong to Mattel. Moreover, the Court further finds, as did the jury, that the preponderance of the evidence establishes that Isaac Larian and MGAE intentionally interfered with Bryant's contractual relations with Mattel, aided and abetted Bryant's breach of fiduciary duty to Mattel, aided and abetted Bryant's breach of his duty of loyalty to Mattel, and unlawfully converted certain property of Mattel. Finally, the Court finds, as did the jury, that the preponderance of the evidence establishes that the MGA parties, in further developing, producing, and marketing its Bratz brand of female fashion dolls, are liable to Mattel for copyright infringement.

## I.   The MGA Parties' Affirmative Defenses

Through its "Statement of Position Regarding Phase 1C Issues" (docket #4308), the MGA parties seek the Court's verdict in their favor as to their affirmative defenses of laches, estoppel, and waiver. As set forth below, the Court rules in favor of Mattel, and against the MGA parties as to these three remaining affirmative defenses.[1]

### A.   Laches

Laches is an equitable defense that may bar a claim where a defendant establishes "(1) lack of diligence by the plaintiff, and (2) prejudice to the defendant." Grand Canyon Trust v. Tucson Elec. Power Co., 391 F.3d 979, 987 (9th Cir. 2004). The MGA parties establish neither element.

Because the Court has already found that all the claims asserted against the MGA parties were filed within the applicable limitations periods, the Court starts with the presumption that laches is inapplicable. Jarrow Formulas, Inc. v. Nutrition Now, Inc., 304 F.3d 829, 835 (9th Cir. 2002).

Mattel has not delayed in bringing its claims against the MGA parties. The Court has already found, based on the undisputed evidence, that Mattel had no reason to know of its claims against Bryant until November 23, 2003, and that it had no knowledge of its claims against MGA and Larian until Bryant was deposed approximately a year later on November 4, 2004. MGAE intervened in Mattel's suit against Bryant approximately one month later on December 7, 2004. See Dec. 7, 2004, Stip. & Order (04-9059 docket #36) ("MGA[] believes . . . that it has a significantly protectable interest relating to the subject matter of the action, . . . and that MGA's interest is not adequately represented by the existing parties."). Thereafter, the parties briefed Mattel's motion to remand (filed on December 1, 2004, and denied on March 4, 2005), before a stay was entered in the case on May 20, 2005, pending the Ninth Circuit's consideration of an

---

[1]   By advancing only the affirmative defenses of laches, estoppel, and waiver in their Phase 1C brief, the MGA parties have implicitly waived the right to pursue any other affirmative defenses that they have not already expressly waived.

Initials of Deputy Clerk: jh

EXHIBIT ___/___
PAGE ____8____

Case 2:04-cv-09049-DOC-RNB    Document 6857-2    Filed 09/25/09    Page 5 of 36    Page ID
#:228048
Case 2:04-cv-09049-SGL-RNB    Document 4439    Filed 12/03/2008    Page 4 of 17

interlocutory appeal. After MGAE's intervention and before the stay was entered, the parties, including MGAE, engaged in discovery, and the Court considered certain discovery motions, including a motion to compel the deposition of Isaac Larian filed on March 17, 2005. The stay remained in place until after the Ninth Circuit affirmed the Court's denial of the motion to remand; it was lifted on May 16, 2006. Six months later, on November 17, 2006, Mattel sought leave to file its claims against the MGA parties. On this record, the Court finds no lack of diligence by Mattel.

Nor have the MGA parties shown they suffered resulting prejudice. MGAE was permitted to intervene in the lawsuit filed by Mattel against Carter Bryant only one month after it became evident that its rights could potentially be affected, and it did so with the express purpose of protecting its own rights. The other MGA parties have not shown that they suffered any prejudice unique to them or that the intervention by MGAE was not designed to protect their rights.

Moreover, the record does not support the evidentiary prejudice claimed by the MGA parties, and the record is devoid of any expectation-based prejudice (i.e., evidence of what MGA would have done differently had the claims against them been asserted sooner). Indeed, to the contrary, the record reveals that the MGA entities have continued to promote (and profit from) the Bratz brand during the entire pendency of the current litigation.

Because of the presumption that laches will not bar timely claims, and because the Court finds that the MGA parties have failed to establish either element of laches, the Court finds in favor of Mattel as to the affirmative defense of laches.

## B.    Estoppel

For equitable estoppel to preclude Mattel's claims here, the MGA parties must establish four elements:

> (1) [T]he party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel has a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury.

Strong v. County of Santa Cruz, 15 Cal.3d 720, 725 (1975).

The MGA parties cannot establish the first element because, as noted above, the Court has already found, based on the undisputed evidence, that Mattel had no reason to know of its claims against Bryant until November 23, 2003, and that it had no knowledge of its claims against MGA and Larian until Bryant was deposed almost a year later.

The MGA parties have produced no evidence that Mattel intended them to act upon any apparent intention to refrain from asserting any claims against them. To the contrary, MGAE quickly intervened in Mattel's suit against Bryant to protect its interests.

EXHIBIT ___1___
PAGE _____9_____

Case 2:04-cv-09049-DOC-RNB    Document 6857-2    Filed 09/25/09    Page 6 of 36    Page ID
#:228043
Case 2:04-cv-09049-SGL-RNB    Document 4439    Filed 12/03/2008    Page 5 of 17

Moreover, the MGA parties had no basis upon which to rely on Mattel's conduct. As found by the jury, they had superior knowledge regarding Bryant's creation of the Bratz drawings (and the timing of that creation).

Because the Court finds that the MGA parties cannot establish all the elements of estoppel, the Court finds in favor of Mattel as to the affirmative defense of estoppel.

## C.    Waiver

"Waiver is the intentional relinquishment of a known right with knowledge of its existence and the intent to relinquish it." <u>United States v. King Features Entertainment, Inc.</u>, 843 F.2d 394, 399 (1988).

Here, the MGA parties contend that Mattel's tolerance of its employees' "moonlighting" for its competitors was so widespread as to constitute such a relinquishment. Although such implied waivers may be found where a plaintiff's conduct "is so inconsistent with the intent to enforce the right in question as to induce a reasonable belief that such right has been relinquished," <u>Medico-Dental etc. Co. v. Horton & Converse</u>, 21 Cal.2d 411, 432 (1942), no such conduct is present here.

No evidence of record suggests that Mattel tolerated the type of conduct in which Bryant engaged. The Court has previously addressed, and will not belabor here, the distinctions to be made between the limited evidence regarding "moonlighting" in the record and the conduct in which Bryant engaged. The evidence establishes, and the jury found, that while employed by Mattel as a fashion designer, Bryant preliminarily developed designs for and pitched a line of fashion dolls to Mattel's direct competitor. There is no evidence that Mattel has ever tolerated this type of conduct. Instead, several witness testified to their belief that such conduct would result in immediate termination of the offending employees. Indeed, the record is replete with details of the steps taken by Bryant, the MGA parties, and MGA employees to conceal the extent of Bryant's involvement in the Bratz project while he was employed by Mattel.

The Court finds in favor of Mattel as to the affirmative defense of waiver.

## II.    Declaratory Relief Motion (docket #4303)

In its motion for declaratory judgment, Mattel seeks, pursuant to its thirteenth cause of action, a declaration of its rights (and the MGA parties' lack of rights) regarding the Bratz-related works, including certain drawings, sculpts, and ideas.[2] Mattel also seeks imposition of a

---

[2]  The parties and the Court are all equally aware that ideas are not copyrightable. However, they are, as set forth in the Court's summary judgment order, assignable under California state law. As noted in the Court's summary judgment order, such an assignment was made by Bryant to Mattel.

MINUTES FORM 90                                                     Initials of Deputy Clerk: jh
CIVIL -- GEN                              5

EXHIBIT ____/____
PAGE ____/ 0____

constructive trust as to MGA's copyright registrations in certain Bratz drawings. As detailed in the concurrently filed Order, the Court **GRANTS** Mattel's Motion for Declaratory Judgment (docket #4303).

In opposition, the MGA parties contend that the relief sought by Mattel should not be granted because it is preempted by the Copyright Act. The Court rejects this argument. The Court's ruling regarding preemption is set forth in the Court's summary judgment order, which the Court does not here modify.

Declaratory relief is generally granted "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." <u>Bilbrey by Bilbrey v. Brown</u>, 738 F.2d 1462, 1470 (1984).

Here, considering this legal standard and based on the relationship among the parties, the jury's verdicts, the Court's previous Orders, and the entire record, the Court finds that the declaratory relief sought by Mattel is appropriate.[3]  Concurrently herewith, the Court has entered, as modified, Mattel's proposed order for declaratory relief.

### III. Motion for Constructive Trust and § 17200 Injunctive Relief (docket #4505)

As set forth more fully in its Motion, Mattel seeks, pursuant to California state law, imposition of a constructive trust over the trademarks "Bratz" and "Jade." Mattel also seeks, pursuant to its twelfth cause of action, a finding that the MGA parties violated Cal. Bus. & Prof. Code § 17200 on the basis of the jury's findings that the MGA parties converted Mattel's property, tortiously interfered by Mattel's contractual relations, and aided and abetted Bryant's breaches of his fiduciary duty and the duty of loyalty. Pursuant to this finding, and in addition to imposition of a constructive trust as to the Bratz and Jade marks, Mattel seeks an injunction prohibiting the MGA parties from using these marks. As detailed in the concurrently filed Order, the Court **GRANTS** Mattel's Motion for Constructive Trust and § 17200 Injunctive Relief (docket #4305).

### A. Constructive Trust

Cal. Civ. Code § 2223 provides that "[o]ne who wrongfully detains a thing is an involuntary trustee thereof, for the benefit of the owner." Cal. Civ. Code § 2224 explicitly addresses things gained by wrongful acts: "One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he or she has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it." The parties agree on the resulting elements, which may be stated as

---

[3] The appropriateness of the constructive trust remedy is discussed below, in a separate section, but applies equally here.

MINUTES FORM 90
CIVIL -- GEN

6

Initials of Deputy Clerk: jh

EXHIBIT _____ /
PAGE _____ / /

Case 2:04-cv-09049-DOC-RNB   Document 6857-2   Filed 09/25/09   Page 8 of 36   Page ID
#:228051
Case 2:04-cv-09049-SGL-RNB   Document 4439   Filed 12/03/2008   Page 7 of 17

follows: "(1) the existence of a *res* (property or some interest in property); (2) the right of a complaining party to that *res*; and (3) some wrongful acquisition or detention of the *res* by another party who is not entitled to it. <u>Communist Party v. 522 Valencia, Inc.</u>, 35 Cal.App.4th 980, 990 (1995).

Significantly, because the purpose of a constructive trust is to prevent unjust enrichment, enhancement of value is given to the beneficiary of the constructive trust. <u>Haskel Engineering & Supply Co. v. Hartford Acc. & Indem. Co.</u>, 78 Cal.App.3d 371, 375 (1978)

Here, the jury found that the MGA parties wrongfully acquired the idea for the name "Bratz" along with the idea and preliminary drawings for a line of fashion dolls. The same is true for the one Bratz character who retained the name given her by Carter Bryant: "Jade."[4]  In addition to wrongfully acquiring them, the MGA parties continue to wrongfully retain them. The MGA parties enhanced the value of the names by acquiring trademark rights to them. California law requires, in this instance, that a constructive trust be imposed as to these marks. Mattel is the beneficiary of the constructive trust and MGA's trademarks in "Bratz" and "Jade" inure to Mattel's benefit.

In making this conclusion, the Court has considered, and rejected, the MGA parties' argument that Mattel has disavowed an intention to seek this remedy or waited too long to seek it. Mattel has conceded that it is not asserting a trademark infringement claim. It cannot, because it has not used the relevant marks in commerce, and one must do so to acquire trademark rights. <u>Conversive, Inc. v. Conversagent, Inc.</u>, 433 F.Supp.2d 1079, 1089 (C.D. Cal. 2006) (citing <u>Brookfield Communications, Inc. v. West Coast Entertainment Corp.</u>, 174 F.3d 1036, 1046 (9th Cir. 1999)).  However, Mattel has not disavowed its intent to seek a constructive trust over the marks that were created by Bryant, with rights thereto acquired by the MGA parties through registration and use in commerce. This remedy is well within the scope of relief that is sought in Mattel's second amended answer and counterclaims, <u>see</u> SAAC at 73 ¶ 9 (Prayer for Relief) (seeking "imposition of a constructive trust over Bratz, including without limitations registrations and applications for registrations relating thereto made or filed by [the MGA parties] and third parties, and all profits, monies, royalties and any other benefits derived or obtained from [the MGA parties'] exercise of ownership, use, sale, distribution and licensing of Bratz"), and the Court has rejected all timeliness challenges to Mattel's claims.

## B.    § 17200 Violation

The record reveals sufficient evidence of injury-in-fact to Mattel to confer standing upon it to assert its § 17200 claim. Specifically, as testified to by Mattel officers (and acknowledged by MGAE officers and attorneys), Mattel has suffered lost market share as a result of the sales of the Bratz dolls. Moreover, the jury was instructed that "harm" to Mattel was a necessary element of a number of state law claims. <u>See</u> Final Jury Instructions as Given [Phase 1A], docket #4115, at

---

[4]  Bryant's other characters were re-named before they were marketed: Zoe became the now-familiar Cloe, Hallidae became Sasha, and Lupe became Yasmin.

MINUTES FORM 90
CIVIL – GEN                                              7

Instruction Nos. 22, 25-27, and 29 (intentional interference with contractual relations, aiding and abetting breaches of fiduciary duty and the duty of loyalty, and conversion). The jury's finding in favor of Mattel as to those claims necessarily implies a factual finding by the jury as to the specified element of harm to Mattel and, as explained in more detail below, the Court is bound by that implicit factual finding. Los Angeles Police Protective League v. Gates, 995 F.2d 1469, 1473 (9th Cir. 1993) (finding that by awarding damages on a specific claim, the jury implicitly found that the plaintiff had proven one particular element of that claim).

As set forth in a previous Order, this claim is only partially preempted by the Copyright Act. The preempted portion of Mattel's § 17200 claim did not survive summary judgment and is not at issue here.

Based on the jury's findings that the MGA parties converted Mattel's property, tortiously interfered with its contractual relations, and aided and abetted Bryant's breaches of his fiduciary duty and the duty of loyalty, the Court finds that the MGA parties also violated Cal. Bus. & Prof. Code § 17200.

## C.   § 17200 Injunctive Relief

Where a Court finds violation of § 17200, it has broad powers to shape appropriate injunctive relief:

> Any person who . . . has engaged . . . in unfair competition may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments, . . . as may be necessary to prevent the use or employment by any person of any practice which [either] constitutes unfair competition, . . . or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition.

Cal. Bus. & Prof. § 17203.

The injunction sought by Mattel's proposed order (as modified by the Court) is necessary to restore to Mattel the property acquired as a result of the MGA parties' unfair competition.

For the reasons set forth above, concurrently herewith, the Court has entered, as modified, Mattel's proposed order for constructive trust and § 17200 injunctive relief.

### IV.   Motion for Permanent Injunction (docket #4306)

## A.   Facts Supporting Injunctive Relief

The present motions, to varying degrees, implicate the question of to what extent a Court trying equitable claims is bound by a jury's factual findings related to the same underlying conduct.

MINUTES FORM 90
CIVIL -- GEN                                          8                    Initials of Deputy Clerk: jh

EXHIBIT _____1_____
PAGE _____13_____

The question comes into sharpest focus in Mattel's Motion for Permanent Injunction.

"[W]here legal claims are tried by a jury and equitable claims are tried by a judge, and the claims are based on the same facts, the Seventh Amendment requires the trial judge to follow the jury's implicit or explicit factual determinations." Los Angeles Police Protective League v. Gates, 995 F.2d 1469, 1473 (9th Cir. 1993) (internal quotation marks and citation omitted). In the absence of an express finding, a court must determine whether implicit factual determinations by the jury can be inferred, and should consult the jury's verdict and the jury instructions to make this determination. Id. (finding, based on an examination of the jury instructions and the jury's verdict awarding damages as to a specific claim, that the jury implicitly found that plaintiff had proven one particular element of that claim).

The Court is certainly aware that the jury returned an award of damages that was far less than that sought by Mattel. Moreover, the Court is aware that a controversy exists as to the actual amount of the jury's verdict. See Mattel's Submission Regarding Email from Juror No. 7 and Request to Recall the Jury, docket #4288 (denied by Order dated September 3, 2008, docket #4295).

MGA has argued that the jury has found that only the so-called "first generation" Bratz dolls were infringing. The jury made no express finding on this issue; the general verdict form they were provided did not request such a detailed finding. Thus, in accordance with Gates, the Court looks to the jury instructions to determine any implicit findings.

The jury was instructed that "Mattel is entitled to recover any profits attributed to the infringement." MGA attempts to equate the $10 million figure awarded by the jury for copyright infringement to the amount of profits related to the first generation Bratz dolls. The difficulty with this "equation" is that it is woefully unbalanced. To be sure, MGA's damages expert presented evidence that the first generation Bratz dolls netted approximately $4 million in profits; had the jury awarded this amount as copyright damages, then the Court might be persuaded that the jury implicitly found that the infringement was limited to the first generation Bratz dolls. But that is not the case. The factual finding advanced by MGA cannot be inferred from the jury award.

In making this ruling, the Court is mindful of the jury's note that queried whether they could find infringement as to the first generation dolls and no other dolls. The Court, without objection from counsel, answered that question affirmatively. Although this note reveals that the jury considered limiting their finding of infringement to the first generation, it does not reveal that they ultimately chose that conclusion. Again, had the jury awarded an amount equal to the amount of profits generated by the first generation Bratz dolls, the Court would find, based on the award and the jury's note, that the jury implicitly found infringement as to the first generation Bratz dolls only.

Alternatively, counsel posited at oral argument, that the jury found that a large portion of the

EXHIBIT _____/_____
PAGE _____/4_____

Case 2:04-cv-09049-DOC-RNB   Document 6857-2   Filed 09/25/09   Page 11 of 36   Page ID
#:228054
Case 2:04-cv-09049-SGL-RNB   Document 4439   Filed 12/03/2008   Page 10 of 17

Bratz dolls infringed Mattel's copyrights, but only in very minute ways.[5]  Counsel likened the jury's
damage award to a rug that, no matter which way one moved it, simply would not cover the floor.
See Nov. 10, 2008, Tr. at 100-101.  Counsel explained that the jury's findings led to one conclusion
or the other and, regardless of which conclusion was chosen, the jury's finding did not support an
injunction:

> The rug is too small for an injunction, regardless of how you allocate
> that money.  You either come up with a vanishingly small subset of
> infringing products, or you come up with a vanishingly small percentage
> of infringement by all of the products.  And the jury has put that cap for
> us.

Id.  Although colorful, counsel's metaphor is not helpful.  Assuming that the Court would be bound
by a jury's factual finding in a case where only two possible inferences – both of which would lead
the Court to the same conclusion -- were possible, this is not that case.

Where a jury returns a monetary award based on a particular piece of evidence such as an
expert report, the Court will infer the factual findings that necessarily flow from it.  But where, as
here, the Court and the parties are left to hazard various guesses as to the jury's intentions, the
Court can make no principled inferences and must therefore engage in its own fact-finding.[6]

The Court has carefully examined each of the exhibits attached to the proposed preliminary
injunction, as well as the actual exhibits being stored in Courtroom Four of the U.S. Courthouse in
Riverside, and finds that the dolls depicted in Exs. 3 and 4, and the products depicted in Exs. 5 and
6, are, pursuant to the standard set forth in the Court's Orders dated July 24, 2008, and August 15,
2008, substantially similar to Mattel's registered copyrighted drawings and are embodiments of the
sculpts depicted in Exs. 1 and 2.  In doing so, the Court has first examined the specific expressive
elements of the works at issue and has compared them to those found in the exhibits referenced

---

[5]  This argument was not raised in the opposition papers filed by the MGA parties, and is
rejected for that reason as well.  See Opp. at 21 ("Here, the circumstances clearly show that the
only reasonable conclusion to draw is that the jury's infringement finding was limited to a small
universe of products, specifically the first generation Bratz dolls as clothed and packaged.")
(emphasis added).

[6]  The MGA parties hazard such a guess in their opposition, wherein they attempt to
explain how, in the jury's mind, $4 million in first-generation profits could equate to $10 million total
copyright infringement award: "The jury's decision to award $6 million against MGA[E] (and $10
million total) rather than simply the $4 million] argued by MGA as profits for the first generation
may be due to the jury believing that MGA's proffer of $4 million in profits on nearly $80 million
revenue was a bit low."  Opp. at 21 n.30.  This guessing game illustrates why no factual findings
can be inferred from the jury's copyright infringement award and why the Court is obligated to
make its own factual findings.

Initials of Deputy Clerk: jh

EXHIBIT ____1____
PAGE ____15____

above, and the Court has then further examined the overall similarity of the expression in various works from the perspective of the ordinary observer. Although the Court recognizes that there are differences between the works, the Court ultimately finds that those dolls and products set forth in the above-referenced exhibits are **substantially similar** to Mattel's registered copyrighted drawings and are embodiments of the sculpts depicted in Exs. 1 and 2. Especially important to the Court's conclusion is the consistency of the particularized expression of the dolls' heads, lips, eyes, eyebrows, eye features, noses, as well as the particularized expression of certain anatomical features relative to others (most notably the doll lips, doll eyes, doll eyebrows, and certain other doll eye features) and de-emphasis of certain anatomical features (most notably the minimalized doll nose and thin, small doll bodies). Also important to the Court is the particularized, synergistic compilation and expression of the human form and anatomy that quite clearly expresses a unique style and conveys a distinct look or attitude, especially as perceived by the intended consumer market (7-12 year old girls). The evidence on this latter point is particularly compelling, supported by both analytical and market analysis. Together, these features clearly give each of the dolls the particularized expression to which the Court referred in its July 24, 2008, and August 15, 2008, Orders.

## B.   Standard for Awarding Permanent Injunctive Relief

The Supreme Court recently announced the standard for granting a permanent injunction:

> According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006).

### 1.   Irreparable Injury

The Court begins, then, by looking to whether Mattel has established that it will suffer irreparable injury if an injunction is not granted.

Prior to the eBay decision, where a plaintiff sought a preliminary injunction, irreparable injury was presumed in intellectual property cases; in light of the eBay decision, some doubt has been cast on whether courts should continue to apply that presumption. See Broadcom Corp. v. Qualcomm Inc., 543 F.3d 683, 702 (Fed. Cir. 2008) (noting that the continuing viability of the presumption is "an open question").

Mattel has established its exclusive rights to the Bratz drawings, and the Court has found

MINUTES FORM 90
CIVIL – GEN                                    11                        Initials of Deputy Clerk: jh

EXHIBIT _____1_____
PAGE _____16_____

that hundreds of the MGA parties' products — including all the currently available core female fashion dolls Mattel was able to locate in the marketplace — infringe those rights. The MGA parties have evinced an intention to continue marketing those dolls. This represents a wholesale inability on the part of Mattel to enforce its exclusive rights under the Copyright Act, amounting to irreparable harm. Taylor Corp. v. Four Seasons Greetings, LLC, 403 F.3d 958, 968 (8th Cir. 2005).

MGA criticizes Mattel's reliance on Taylor, citing Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd., 518 F.Supp.2d 1197, 1211 n.13 (C.D. Cal. 2007) (Wilson, J.). The Grokster case holds that, in copyright permanent injunction cases, a presumption of irreparable injury is not permitted in light of eBay. In Grokster, the court rejected the rationale of Taylor, stating:

> [T]his Court is not persuaded by the Eighth Circuit's pre-eBay
> conclusion in Taylor Corp. v. Four Seasons Greetings, LLC, 403 F.3d
> 958, 968 (8th Cir. 2005), that because "[a plaintiff] certainly has the right
> to control the use of its copyrighted materials, . . . irreparable harm
> inescapably flows from the denial of that right." In substance, such
> language is nothing more than a disguised presumption, particularly
> with the use of the word "inescapably." After eBay, Plaintiffs cannot rely
> on the pure fact of infringement in order to establish irreparable harm.

Grokster, 518 F. Supp.2d at 1211 n.13. Judge Wilson's point is well-taken. Although the Taylor court did not purport to apply a presumption of irreparable harm, its use of the word "inescapably" in this phrase certainly could indicate that it was merely presuming irreparable harm. However, a review of the Taylor case makes clear that the Eighth Circuit considered the implications of allowing an infringer to continue to infringe: "[I]n copyright infringement actions, the denial of a request for injunctive relief could otherwise "amount to a forced license to use the creative work of another." Taylor Corp., 403 F.3d at 967-68. This rationale removes Taylor further from the application of a "disguised presumption" of irreparable harm and closer to an actual finding of irreparable harm.

At least one district court within the Ninth Circuit is in accord with the Court's decision today, as it has decided, post-eBay, that a plaintiff who establishes past infringement and the threat of future infringement amounts to irreparable harm. Designer Skin, LLC v. S & L Vitamins, Inc., 2008 WL 4174882 at *5 (D. Ariz. 2008) (Teilborg, J.). Judge Teilborg's rationale is well articulated:

> Whatever else might be said against the propriety of a rule that holds
> that past infringement plus the threat of future infringement equals
> irreparable harm, it seems clear to this Court that such a rule would not
> run afoul of eBay's directives. First of all, the eBay Court did not
> address the showing necessary to establish "irreparable harm." It
> merely held that the plaintiff has the burden of proving it. Second, this
> two-part test does not resurrect the presumption of irreparable harm
> impliedly laid to rest by the eBay court. It simply recognizes that a

EXHIBIT _____ 1 _____
PAGE _____ 17 _____

plaintiff meets the burden of proving irreparable harm by making this two-part showing. And finally, the two-part test does not represent a rule [prohibited by eBay] that an injunction automatically follows a determination that a copyright has been infringed. . . . In exercising their equitable discretion, courts would still have the freedom to deny injunctive relief when the public interest or the balance of hardships weighs against such relief.

Designer Skin, 2008 WL 4174882 at *5 (citation omitted).

Indeed, this is not so complex an issue as applied to the facts of this particular case. The statutory directive to the Court is clear: "Any court having jurisdiction of a civil action arising under this title may, . . . grant temporary and final injunctions on such terms as it may deem reasonable *to prevent or restrain infringement of a copyright.*" 17 U.S.C. § 502 (emphasis added). The Court can envision no case more appropriate for a finding of irreparable harm. Here, as the record shows and as the jury found, an employee bound by contract and fiduciary duty to communicate to his employer (and keep confidential from all others) all copyrightable works he creates during the term of his employment, not only fails to so communicate but actually secretly purports to convey the rights thereto to a direct competitor of his employer. The rights to those works are actively concealed from their true owner (by both the employee and the competitor) for years while the competitor exploits the works, reaping profits therefrom totaling hundreds of millions of dollars. After millions of pages of discovery are produced, thousands of filings are submitted, scores and scores of motions are decided by the Court, and after months of trial and two jury verdicts in favor of the plaintiff, defendants remain steadfast in their intention to continue to produce their infringing products. Viewed in this light, Mattel has established irreparable injury on the basis of the MGA parties' past infringement and the high probability of continued acts of infringement.

**2.      Inadequate Legal Remedies**

Unless MGA is enjoined, Mattel would be forced to sue each retailer and distributor to stop the sale and distribution of the infringing dolls; therefore, the legal remedies are inadequate. See Continental Airlines, Inc. v. Intra Brokers, Inc., 24 F.3d 1099, 1105 (9th Cir. 1994).

**3.      Balance of Equities**

Factually, the hardship on MGA weighs very heavily upon the Court. The Court has expressed its concerns in this regard on the record. The evidence at trial showed that, at least historically, Bratz is the brand that has made MGA profitable. And the proposed injunction addresses the core of that brand – most notably, the female fashion dolls.

However, where, as here, the only hardship that will be suffered is lost profits from the cessation of its infringing activities, the Court, in the final analysis, must afford this very little -- if any -- weight. Triad Systems Corp. v. Southeastern Exp. Co., 64 F.3d 1330, 1338 (9th Cir. 1995) ("Where the only hardship that the defendant will suffer is lost profits from an activity which has

EXHIBIT _____ 1
PAGE _____ 18

been shown likely to be infringing, such an argument in defense merits little equitable consideration . . . .") (internal quotation marks and citations omitted), accord, Cadence Design Systems, Inc. v. Avanti Corp., 125 F.3d 824, 829-30 (9th Cir. 1997) (collecting cases).  The balance of equities favor Mattel.

### 4.    Public Interest

There is a strong economic interest, especially in these troubled economic times, in maintaining a profitable enterprise as a going concern.  However, there is also a strong public interest in enforcing copyright laws in a uniform manner.  Indeed, nothing is more essential to long-term economic prosperity than the stability provided by the rule of law.  Although the MGA parties raise excellent points in their opposition, in the end, the public interest is served by precluding defendants from engaging in copyright infringement.  The injunction issued by the Court does no more than that.

### C.    Scope of Injunction

The scope of the permanent injunction is set forth in a separate order.  Four issues raised in the parties' papers warrant the brief discussion that follows.

### 1.    Impoundment and Destruction

As set forth more fully in its motion, Mattel seeks impoundment of Bratz dolls and destruction of the specialized plates, molds, and matrices used to make them.  Impoundment of existing infringing products and the destruction of the means to make those products are clearly remedies contemplated by the Copyright Act.  See 17 U.S.C. § 503(a).  The MGA parties argue that these remedies are inappropriate because there is no ongoing infringement or, at the very least, its products infringe very little.  In its findings supporting the issuance of a permanent injunction, the Court has rejected this premise, and the Court finds that the requested impoundment and destruction is an appropriate remedy.[7]

### 2.    Recall

In light of the scope of infringement found by the Court, and in light of the fact that the injunction addresses products that directly compete with Mattel's products, the Court has ordered the recall of infringing products from retailers.  See CyberMedia, Inc. v. Symantec Corp., 19 F.Supp.2d 1070, 1079 (N.D. Cal.1998); Patry on Copyright, § 22:81.

---

[7]  No party shall destroy any of the implements used to make the Bratz dolls that are the subject of the permanent injunction absent a specific order of this Court authorizing such destruction.

MINUTES FORM 90
CIVIL — GEN

14

Initials of Deputy Clerk: jh

EXHIBIT _____ / _____
PAGE _____ / 9 _____

### 3.   Royalty

The MGA parties argue that the more appropriate remedy to be imposed here is for the Court to order a royalty instead of an injunction.  The difficulty in this proposal is that it is premised on the idea that the ongoing infringement, if any, is minute.  See Opp. at 29-32 (suggesting a royalty of .3% would be appropriate).  As noted above, the Court has rejected this premise.  Moreover, although the Court has been hopeful that an out-of-court resolution involving such a remedy may have been obtained, and has gone to great lengths to encourage both sides to pursue such a resolution in good faith, their failure so far to do so underscores the Court's present view, which is based on the evidence and argument of record, that the hostility between these parties is such that this form of remedy is unworkable.

### 4.   Appointment of a Special Master

Mattel suggests that the Court appoint a special master to "monitor implementation of the relief granted by the Court."  Motion at 28.  The MGA parties have not indicated their position on this issue.  The appointment of a special master to monitor implementation of the permanent injunction is warranted; this task could easily overwhelm the Court's resources.  Subject to the Court's consideration of any in camera objections submitted to the Court by the parties, the Court will select a Special Master from the list submitted below.

### V. Motion to Strike Portions of Hutnyan Declarations and Exhibits Thereto (docket #4351)

The MGA parties move to strike certain evidence offered by Mattel on the issue of harm suffered by Mattel, contending the evidence is inadmissible.  This motion is **DENIED AS MOOT.** Although Mattel has offered additional evidence of harm, the Court has found the evidence of harm to Mattel offered during Phases 1A and 1B sufficient to resolve the issues presented in the current motions.

### VI. Motion to Strike the Proctor, Keiser, and Hollander Declarations (docket #4352)

The motion is **DENIED** as to the Proctor declaration.  The declaration is a helpful presentation of appropriate argument and/or observations of counsel for the Court's consideration.

The motion is **DENIED** as to the Keiser declaration.  The Keiser declaration authenticates two-dimensional depictions of three-dimensional models he scanned using a sophisticated scanning machine.

The motion is **DENIED** as to the Hollander declaration.  This declaration was the subject of extensive briefing in MGA's motion in limine 8, which the Court has reviewed.  Hollander's declaration, which presents survey evidence of the target market, is relevant to application of the

MINUTES FORM 90
CIVIL -- GEN                                             15                          Initials of Deputy Clerk: jh

EXHIBIT _____/_____
PAGE _____20_____

Case 2:04-cv-09049-DOC-RNB   Document 6857-2   Filed 09/25/09   Page 17 of 36   Page ID
#:228060
Case 2:04-cv-09049-SGL-RNB   Document 4439   Filed 12/03/2008   Page 16 of 17

intrinsic test. The Court, in fact, instructed the jury to consider how girls 7 to 12 would view the Bratz dolls. Hollander's survey attempts to determine just that. The Court has considered the methodological flaws pointed out by MGA in weighing the evidence Hollander presents.

### VII. Motion to Strike Meyer Declaration (docket #4377)

Mattel moves to strike the Meyer declaration. This motion is **DENIED AS MOOT.** This declaration sets forth a calculation justifying the proposed .3% royalty. The Court has rejected the proposal that a royalty be imposed.

### VIII. Stay of this Order

This Order, and the three concurrently filed orders, are stayed pending the Court's consideration of the parties' post-trial motions. This stay shall remain in place until lifted by further Order of this Court.

### IX. Briefing Schedule for Post-Trial Motions

Notwithstanding the Court's earlier order, the motions referred to in ¶ 3 of the Court's September 2, 2008, Order may be filed no later than December 22, 2008. Response briefs may be filed no later than January 12, 2009. Replies may be filed no later than January 19, 2009. A hearing on this matter is set for Wednesday, February 11, 2009, at 10:00 a.m., in Courtroom One of the above-referenced Court.

### X. Discovery Master Proposals for Phase 2

The Court previously stated that it would submit for counsel's consideration the names of potential Discovery Masters for Phase 2 that possess both the resources to handle the scope of the anticipated discovery disputes as well as the personal confidence of this Court. The Discovery Master would serve pursuant to the same terms and conditions of the Phase 1 Discovery Master. In addition, as noted above, the Court also intends to appoint a Special Master to oversee implementation of the permanent injunction. The Court provides for counsels' consideration the following individuals who meet the Court's requirements, and have indicated to the Court a willingness and an ability to serve in one or both of these roles. Counsel are directed to file any objections to any or all of the proposed Masters on or before December 22, 2008. Any such objections are to be submitted *in camera* and under seal with the Court. After considering any objections, as well as any preferences expressed by the parties, the Court will make an appointment at the appropriate time.

EXHIBIT _____/_____
PAGE _____2-/_____

Case 2:04-cv-09049-DOC-RNB   Document 6857-2   Filed 09/25/09   Page 18 of 36   Page ID
#:228061
Case 2:04-cv-09049-SGL-RNB   Document 4439   Filed 12/03/2008   Page 17 of 17

Patrick A. Fraioli, Jr.
Moldo Davidson et al LLP
2029 Century Park East, 21st Fl.
Los Angeles, CA 90067
310-551-3100
pfraioli@mdfslaw.com

Jan L. Handzlik
Howrey LLP
550 S. Hope Street, Suite 1100
Los Angeles, CA 90071
213-892-1802
handzlikj@howrey.com

Kendall H. MacVey
Best Best & Krieger LLP
P.O. Box 1028
Riverside, CA 92502-1028
951-686-1450

David G. Moore
Reid & Hellyer
P.O. Box 1300
Riverside, CA 92502
951-682-1771
dmoore@rhlaw.com

Robert C. O' Brien
Arent Fox LLP
555 W. 5th Street, 48th fl.
Los Angeles, CA 90013
213-629-7400
obrien.robert@arentfox.com

C. Michael Zweiback
Alston & Bird LLP
333 S. Hope Street, 16th Fl.
Los Angeles, CA 90071
213-576-1000
michael.zweiback@alston.com

## XI. Jointly Lodged Laptop Computer

The Court is in possession of a jointly lodged laptop computer used to access the Phases 1A and 1B trial transcripts maintained by the parties. The Court will retain possession of the laptop computer until after its ruling on the motions referred to in section IX, above, and the parties are directed to follow the procedure outlined in the Court's September 9, 2008, Order regarding the e-filing of excerpts of transcripts cited in their anticipated motions.

## XII. Service of Permanent Injunction

The service of Mattel's proposed permanent injunction by the Clerk presents challenges given the limited resources of the Court. The permanent injunction, for reasons explained by Mattel on the record, attaches to it approximately 900 color copies. Accordingly, although the Court directs the Clerk to serve on all parties a copy of the permanent injunction, the Court directs Mattel, no later than ten days after the entry of this Order, to serve a copy of the permanent injunction, together with the color exhibits, on all parties.

**IT IS SO ORDERED.**

MINUTES FORM 90
CIVIL -- GEN

17

Initials of Deputy Clerk: jh

EXHIBIT _____ 1
PAGE _____ 22

# EXHIBIT 2

EXHIBIT ___2___
PAGE ___23___

Case 2:04-cv-09049-DOC-RNB   Document 6857-2   Filed 09/25/09   Page 20 of 36   Page ID
#:228063
Case 2:04-cv-09049-SGL-RNB   Document 3902   Filed 06/02/2008   Page 1 of 4

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA  92501
<u>CIVIL MINUTES – GENERAL</u>

Case No.    CV 04-09049 SGL(RNBx)                          Date:  June 2, 2008
Title:         CARTER BRYANT -v- MATTEL, INC.

<u>Consolidated With Related Actions</u>:
CASE NO. CV 04-09059 SGL(RNBx):  MATTEL, INC.  v. CARTER BRYANT
CASE NO. CV 05-02727 SGL (RNBx): MGA ENTERTAINMENT, INC. v. MATTEL, INC.
=================================================================
PRESENT:  HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

         Jim Holmes
         Courtroom Deputy Clerk

<u>ATTORNEYS PRESENT FOR CARTER BRYANT</u>:     <u>ATTORNEYS PRESENT FOR MATTEL</u>:

None Present                                                      None Present


<u>ATTORNEYS PRESENT FOR MGA <u>AND</u>
<u>ISAAC LARIAN</u>:

None Present

PROCEEDINGS:     **FURTHER AND FINAL ORDER RE STATUTE OF LIMITATIONS DEFENSE
                 (IN CHAMBERS)**

        In an order dated May 27, 2008, the Court made several rulings regarding the timeliness of
Mattel's claims ("SOL Order").  At that time, the Court invited further, limited briefing from the
parties regarding "what further conclusions regarding the timeliness of each claim should be
drawn" in light of the Court's rulings.  The parties filed further briefing in conformity with the Court's
Order, which the Court has reviewed.

        As a result of the briefing, the Court discusses the following issues:  (1) Clarification of the
Court's Ruling Regarding the August 2002 Anonymous Letter; (2) Clarification of the Court's
Ruling Regarding Fraudulent Concealment and Mattel's Claims for Intentional Interference with
Contractual Relations and Conversion; and (3) Accrual of Mattel's Copyright Claim.

MINUTES FORM 90                                                  Initials of Deputy Clerk: jh
CIVIL -- GEN                              1

EXHIBIT ___2___
PAGE ___24___

### I. Clarification of the Court's Ruling Regarding the August 2002 Anonymous Letter

The parties differ on their interpretation of the Court's holding as to the earliest accrual date of Mattel's claims. Although the Court's SOL Order, read as a whole, is most reasonably interpreted as clarified herein, MGA, quite understandably, interprets the Court's Order in a manner more favorable to its position regarding the statute of limitations defense. Accordingly, the Court clarifies its Order as set forth below.

In a key paragraph of the SOL Order, the Court articulates the four possible accrual dates of those state-law claims, asserted by Mattel against Carter Bryant, that are subject to the discovery rule:[1]

MGA has raised triable issues of fact precluding summary judgment on the statute of limitations issue. Any of the following could be the date upon which MGA claims against Carter Bryant accrued: The July 18, 2003, Wall Street Journal article; the September 23, 2003, date of receipt of the City World "claim"; the October 17, 2003, date of counsel's letter to Mattel regarding the City World litigation; or the November 24, 2003, date of receipt of the MGA-Bryant agreement that pre-dated Bryant's resignation of his employment.

SOL Order at 7-8. This portion of the Court's Order implicitly rejects MGA's contention that the August, 2002, letter could give rise to Mattel's claims against Bryant.

As set forth in the SOL Order, a claim accrues where a plaintiff has **_knowledge_** of at least one of the three generic elements of wrongdoing, causation, and harm. Fox v. Ethicon Endo-Surgery, Inc., 35 Cal.4th 797, 807 (Cal. 2005) (citation omitted). The SOL Order did not explicitly state, as the Court does now, that there is no evidence that Mattel had any **_knowledge_** of any one of the three generic elements of its claims, and thus no claim accrued, prior to the earliest date identified by the Court, which is July 18, 2003.

MGA's argument that Mattel's claims against Carter Bryant could have accrued in August 2002, is based on a statement made by the Court's regarding when the claims against MGA Entertainment, Inc., accrued:

The Court rejects the proposition, however, that the claims against both MGA entities did not arise until the date of Carter Bryant's deposition. Whatever the date on which the claims against Carter Bryant arose is ultimately found to be, the August 2002 anonymous letter should have given Mattel a suspicion of that MGA Entertainment, Inc., participated in any wrongdoing by Carter Bryant. See Zeller Decl. Ex. 63

---

[1]     This portion of the Court's Order does not apply to Mattel's claims for intentional interference with contractual relations and conversion, which are addressed infra, in Section II.

EXHIBIT ___2___
PAGE ___25___

(alleging that Carter Bryant "worked out a deal with MGA that let him collect a large sum of money each year from MGA in exchange for his secrecy about the dolls").

SOL Order at 9. Mattel's understanding of this part of the SOL Order, that the claims against MGA Entertainment, Inc., accrued on the same date as did the claims against Carter Bryant, is correct. See Mattel Supp. Brief at 6 n.4.

## II. Clarification of the Court's Ruling Regarding Fraudulent Concealment and Mattel's Claims for Intentional Interference with Contractual Relations and Conversion

The Court's statute of limitations analysis regarding Mattel's claims for intentional interference with contractual relations and conversion was rather inartfully articulated. The Court's ruling was meant to convey that although the remainder of the state-law claims asserted by Mattel are subject to the discovery rule, these two claims are not. Therefore, the conclusions drawn by the Court regarding the possible accrual dates for the remaining state-law claims do not apply to Mattel's claims for intentional interference with contractual relations and conversion. Instead, these claims, having arisen around the time Bryant resigned from Mattel, are time-barred unless the relevant limitations periods have been extended by a period of fraudulent concealment.

Whether a period of fraudulent concealment exists, as well as the duration of any such period, cannot be determined on the undisputed record and are therefore questions of fact for the jury.

## III. Accrual of Copyright Claim

The supplemental briefing brings into focus an issue not addressed by the SOL Order: The accrual date of Mattel's copyright claim.

MGA refers to two arguments it made in its partial summary judgment papers regarding the statute of limitations and Mattel's copyright claim. First, MGA argues that the date Mattel registered its copyrights impacts upon the Court's application of the relation-back doctrine; second, MGA argues that the "rolling" statute of limitations regarding copyright claims is inapplicable when the gravamen of the claim is a claim of ownership rather than infringement.

Mattel did not address this issue in its supplemental briefing, which was filed concurrently with MGA's supplemental briefing. In its partial summary judgment papers, however, Mattel had responded to these arguments.

In reviewing the supplemental briefs, as well as the relevant portions of the partial summary judgment papers, and reflecting upon the hearings held on this matter, the Court concludes that it need not resolve MGA's two arguments.

In the SOL Order, the Court's analysis equated the accrual of Mattel's copyright claim with

EXHIBIT ___2___
PAGE ___26___

Case 2:04-cv-09049-DOC-RNB   Document 6857-2   Filed 09/25/09   Page 23 of 36   Page ID
#:228066
Case 2:04-cv-09049-SGL-RNB   Document 3902   Filed 06/02/2008   Page 4 of 4

the accrual with certain of Mattel's state-law claims; as explained below, this analysis overlooks
important concepts of copyright law.

As noted by the Court in its order regarding summary judgment, in order to establish
copyright infringement, a plaintiff must establish three elements:  (1) ownership of a valid
copyright, (2) the defendant's access to the original, and (3) substantial similarity between the
copyrighted work and the allegedly infringing work.  Lamps Plus, Inc. v. Seattle Lighting Fixture
Co., 345 F.3d 1140, 1144 (9th Cir. 2003).  Here, although the date Mattel received details
regarding the City World litigation is in dispute, it is uncontroverted that Mattel did not receive
copies of the Bratz drawings prior to November 23, 2003.  Without the drawings, Mattel could not
assess the substantial similarity factor to determine whether it could assert a claim that the Bratz
dolls infringed Mattel's rights to them.  Accordingly, on the undisputed record, the Court concludes
that Mattel's copyright claim did not accrue prior to November 23, 2003.

Therefore, when first asserted on November 20, 2006, Mattel's copyright claim was timely
in its own right, and the Court need not resolve MGA's two arguments regarding relation back and
the rolling statute of limitations.[2]

**IT IS SO ORDERED.**

---

[2] In accordance with the foregoing, the Court VACATES the following language from the SOL Order:

> The accrual of a copyright claim, as the parties recognize, approximates the state-law standard
> discussed herein.  See Polar Bear Productions, Inc. v. Timex Corp., 384 F.3d 700, 706 (9th Cir. 2004)
> ("Thus, . . . the statute of limitations does not prohibit recovery of damages incurred more than three
> years prior to the filing of suit if the copyright plaintiff was unaware of the infringement, and that lack of
> knowledge was reasonable under the circumstances.").  Accordingly, the Court makes the same
> conclusion regarding the accrual date of Mattel's copyright claim against Carter Bryant as it does
> regarding the accrual date of Bryant's state-law claims.

SOL Order at 8.

MINUTES FORM 90                                                      Initials of Deputy Clerk: jh
CIVIL -- GEN                                    4

EXHIBIT _____2_____
PAGE _____27_____

# EXHIBIT 3

EXHIBIT _____3_____
PAGE _____28_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA  92501
CIVIL MINUTES – GENERAL

Case No.    CV 04-09049 SGL(RNBx)                              Date:  May 27, 2008
Title:       CARTER BRYANT -v- MATTEL, INC.

Consolidated With Related Actions:
CASE NO. CV 04-09059 SGL(RNBx):  MATTEL, INC.,  v. CARTER BRYANT,
CASE NO. CV 05-02727 SGL (RNBx): MGA ENTERTAINMENT, INC., v. MATTEL, INC.,
=================================================================
PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

              Gina Guzman
              Courtroom Deputy Clerk

ATTORNEYS PRESENT FOR CARTER BRYANT:        ATTORNEYS PRESENT FOR MATTEL:

None Present                                 None Present


ATTORNEYS PRESENT FOR MGA AND
ISAAC LARIAN:

None Present

PROCEEDINGS:    **ORDER RE STATUTE OF LIMITATIONS DEFENSE**

        Each of the remaining parties to this action, Mattel and MGA, seek summary judgment on
the issue of statute of limitations.  Crucial to resolution of this issue, is application of California's
"discovery rule," which can delay the accrual of a claim.  Both parties have offered evidence in
support of their positions.[1]  For its part, Mattel contends that its claims against Carter Bryant arose
on November 24, 2003, and that its claims against the MGA entities, including MGA CEO Isaac
Larian, arose on November 4, 2004, the date of Carter Bryant's deposition, at which he testified
regarding MGA and Larian's involvement in his actions.

───────────────

        [1]  Although he is no longer a party, the Court discusses at length the timeliness of the
claims asserted against Carter Bryant because it is relevant to the Court's relation-back analysis of
the claims asserted against MGA.

MINUTES FORM 90                                              Initials of Deputy Clerk: gg
CIVIL – GEN                        Page 1                    Time:  0/00

EXHIBIT ___3___
PAGE ___29___

At oral argument and in its briefs, MGA argues at length that Mattel's claims against Bryant accrued some time shortly after Bryant left Mattel's employ in October, 2000.  In support of this argument, MGA offered evidence that Mattel has always believed that it took nine months to bring a doll through the stages of development and to market.  From that knowledge, in MGA's view, the sudden appearance of the Bratz dolls at a toy fair in Tokyo in January, 2001, should have aroused their suspicions.

MGA cites to the deposition of Bryant's co-worker, who had suspicions at the time Bryant resigned that Bryant was going to work for a competitor based on her subjective belief that Bryant would not pursue any other vocation other than doll designer.

MGA contends that Mattel could have looked at Bryant's phone records and determined that he had called MGA a number of times during the month pre-dating his resignation.

There is evidence that one of Bryant's co-workers believed it was "common knowledge," sometime in 2001, that Bryant probably designed Bratz.

The undisputed facts establish that in August, 2002, an anonymous letter was sent to Mattel's CEO stating that Bryant had designed Bratz.  This letter is the first indication that Bryant may have worked on Bratz during the period of his employment with Mattel.  See Zeller Decl. Ex. 63 ("While he was working with Mattel and working to create these dolls he worked out a deal with MGA that let him collect a large sum of money each year from MGA in exchange for his secrecy about the dolls and the fact that they are rightly Mattel dolls.").

The undisputed facts also establish that on July 18, 2003, the Wall Street Journal published an article entitled "Dolled Up:  To Lure Older Girls, Mattel Brings In Hip-Hop Crowd."  In that article, MGA's CEO Isaac Larian is attributed with a statement that Carter Bryant was the creator of Bratz.  The article states:

> Isaac Larian, chief executive of MGA, says he had never heard
> of a project similar to the Bratz at Mattel.  He says he chose Mr.
> Bryant's idea for Bryant over several others after holding a sort of
> fashion-doll design contest in late 1999.

Zeller Decl. Ex. 118.

At the close of the second hearing, held on May 19, 2008, MGA offered, for the first time, evidence in the form of a time line that showed that a "claim" from a lawsuit filed in Hong Kong by MGA was received by Mattel on September 23, 2003.  See Bogorad Supp. Decl. Ex. 145.  A copy of court documents from that litigation shows that MGA claimed ownership of Bratz fashion dolls and that, more specifically, at issue were "17 design drawings of various fashion dolls between the years 1998 and 2000."  Id. at Ex. 143.  Exhibit 143 is a ten-page document captioned as "STATEMENT OF CLAIM" and appears to the Court to be, under Hong Kong law, the equivalent of a complaint.  MGA's ownership to the 17 drawings referenced in the "STATEMENT OF CLAIM"

Initials of Deputy Clerk: gg

Time:  0/00

EXHIBIT _____ 3

PAGE _____ 30

Case 2:04-cv-09049-DOC-RNB   Document 6857-2   Filed 09/25/09   Page 27 of 36   Page ID
#:228070
Case 2:04-cv-09049-SGL-RNB   Document 3826   Filed 05/27/2008   Page 3 of 9

was based on Bryant's creation of the design drawings during a time period that includes his employment at Mattel. Id.

Also at this time, MGA offered a letter, dated October 17, 2003, from Mattel's Hong Kong counsel to Mattel, that discusses the propriety of providing to Mattel certain documents relating to the City World litigation. Within this letter, certain key details of the "STATEMENT OF CLAIM" were referenced. See Supp. Bogorad Ex. 146 ("One of the exhibits referred to in such Affirmation was a set of coloured drawings described as '17 initial concept and design drawings of the Bratz dolls made by Mr. Carter Bryant in the year 2000.'").

After being given an opportunity to respond to this last-minute evidence, Mattel offered as evidence the documents it received on September 23, 2003, and that evidence did not include the document marked as Ex. 143. See Supp. Moore Decl. Ex. A. The documents Mattel received do not include any reference to Carter Bryant or the dates of creation of the 17 drawings. See id. Instead, it consists of a copy of a "writ of summons" in that same litigation.

In responding to this evidence, counsel for MGA first incorrectly contended that the declaration of in-house counsel, Michael Moore, did not deny receiving a copy of the City World claim setting forth this key language. Compare Reply at 1 ("**Mr. Moore, the only witness offered by Mattel, does _not_ deny that Mattel took possession of a copy of the City World claim on or about September 23, 2003**.") (emphasis in the original) with Supp. Moore Decl. ¶ 3 (attaching as Exhibit A all documents received from Mattel's Hong Kong counsel on September 23, 2003; noting that public access to court files in Hong Kong is limited; and verifying that the materials attached as Exhibit A (which does not include the key language regarding Carter Bryant's creation of Bratz drawings) "were the only ones relating to MGA's litigation that Mattel's Hong Kong counsel were allowed to obtain from the Hong Kong court files").

More disturbingly, however, counsel for MGA next lobbed unsubstantiated assaults on Mr. Moore's truthfulness. Counsel states that the documents "appear to have been doctored or manipulated in some fashion." Reply at 2. Counsel does so because the fax itself has an anomalous pagination in the fax header line wherein the first ten pages are numbered "01, 02 . . . 10," and the numbers thereafter are numbered "11/46, 12/46 . . . 46/46." Supp. Moore Ex. A.

This Court has indicated on a number of occasions, most strikingly in connection with its consideration of Mattel's motion to disqualify counsel for MGA, that it will not countenance unsubstantiated dispersions cast upon opposing counsel. Where there is *evidence* of unethical behavior, the Court expects to be made aware of that evidence; where, however, there is mere *speculation* of such behavior, no legitimate purpose is served by its airing.

Nevertheless, focusing on the additional evidence offered by MGA on May 19, 2008, the time line produced in connection with the Simpson-Taylor deposition makes reference to a City World "claim" that was received by Mattel on September 23, 2003. Although this time line stops short of acknowledging that the document entitled "STATEMENT OF CLAIM" was received in

EXHIBIT ___3___
PAGE ___31___

September, it is nevertheless sufficient to controvert Moore's declaration regarding whether the "STATEMENT OF CLAIM" was in fact received on this date.  Moreover, the October 17, 2003, letter raises an inference regarding the full scope of Mattel's pre-November 23, 2003, knowledge of the contents of the "STATEMENT OF CLAIM."

It is uncontroverted that Mattel first received a copy of the Bryant-MGA contract, the effective date of which pre-dated the effective date of Bryant's resignation from Mattel, on November 24, 2003.

Where a plaintiff advances a state-law claim under California law, federal courts apply the California "discovery rule" to determine whether the state-law claim is time-barred.  See, e.g., Orkin v. Taylor, 487 F.3d 734, 741 (9th Cir. 2007).

The Court's analysis begins with the unremarkable proposition that "[a] plaintiff must bring a claim within the limitations period after accrual of the cause of action."  Fox v. Ethicon Endo-Surgery, Inc., 35 Cal.4th 797, 806 (Cal. 2005) (citation omitted).  To apply this unremarkable proposition, however, the Court must determine what the California Supreme Court means by "accrual of the cause of action."

In that regard, the California Supreme Court has stated that, "[g]enerally speaking, a cause of action accrues at the time when the cause of action *is complete with all of its elements*," id. at 807 (emphasis added) (citation omitted), a phrase which itself must be expounded upon further to ascertain its meaning.  When applying the discovery rule, those "elements" are not "specific legal element[s] of a particular cause of action"; rather, they are the "'generic' elements of wrongdoing, causation, and harm."  Id. (citation omitted).

The definition of those terms gives a more comprehensive understanding to the California Supreme Court's statement that "the 'discovery rule' . . . postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action."  Id. (citation omitted).  In turn, "[a] plaintiff has reason to discover a cause of action when he or she has reason at least to suspect a factual basis for its elements."  Id. (internal quotation marks and citation omitted).  Further refined, where a plaintiff has *knowledge* of at least one of the three generic elements, and *suspicion* of the remaining generic elements, the claim has accrued and the limitations period has begun to run.  Id. (citation omitted).

This rule is designed to require plaintiffs to diligently investigate their potential claims.  See id. at 808.  To that end, in the context of a personal injury action, the California Supreme Court has stated that "plaintiffs are required to conduct a reasonable investigation after becoming aware of an injury, and are charged with knowledge of the information that would have been revealed by such an investigation."  Id.  Of course, this statement must itself be viewed with the definition of "injury" the California Supreme Court considered:  "At common law, the term 'injury,' as used in determining the date of accrual of a cause of action, means both a person's physical condition and its negligent cause. . . . Thus, physical injury alone is often insufficient to trigger the statute of limitations."  Id. at 808 n.2 (internal quotation marks and citation omitted).

EXHIBIT _____ 3

PAGE _____ 32

This requirement of diligence, stated otherwise, prohibits California plaintiffs from passively waiting for the facts supporting their claim to find them and places on them an affirmative requirement to investigate:

> Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, she must decide whether to file suit or sit on her rights. So long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her.

Jolly v. Eli Lilly & Co., 44 Cal.3d 1103, 1111 (Cal.1988).

The Jolly court discussed two examples in explaining this standard. First, it cited to Miller v. Bechtel Corp., 33 Cal.3d 868, 874 (Cal.1983), which held time barred the fraud claim of a plaintiff who had suspicions that the value of her husband's stock was understated at the time of their dissolution agreement, but who failed to assert her claim until years later when the stock was sold. Id. In that case, the plaintiff's lawyer sought information, both before the dissolution and within a few months thereafter, regarding the method by which the stock was valued. Id. at 875. When the response was not forthcoming, the lawyer chose not to pursue this inquiry further, and thus plaintiff was charged with knowledge of the facts the investigation would have uncovered – that the stock was valued by the price attributed to it in the shareholders' agreement rather than by any objective valuation. Id.

Second, the Jolly court cited to Gray v. Reeves, 76 Cal.App.3d 567 (Cal. App.1977), which held that a plaintiff's claim based on his use of a prescription drug arose when the plaintiff understood the nature of his injury (deterioration of the hip socket) and the probable cause thereof (the use of the prescription drug prednisone) as well as the identity of the prescribing doctor and the drug's manufacturer.

Although the discovery rule has been largely developed in tort cases, the rule has also been applied in cases involving contract claims. See e.g., April Enterprises, Inc. v. KTTV, 147 Cal.App.3d 805, 832 (1983) ("Specifically, we hold the discovery rule may be applied to breaches which can be, and are, committed in secret and, moreover, where the harm flowing from those breaches will not be reasonably discoverable by plaintiffs until a future time."); Intermedics, Inc. v. Ventritex, Inc., 775 F.Supp. 1258, 1266-67 (N.D. Cal. 1991).

Thus, California's discovery rule is easily understood in the abstract; moreover, it is often easily applied in particular factual situations. Here, however, this Court's application of the rule in this case is not so clear cut, and the Court must consider the premises underlying the parties' respective analysis of this issue.

In substance, MGA contends that Mattel was on notice as early as February, 2001, of a potential claim that Carter Bryant breached the confidentiality provision of his contract by borrowing from or plagiarizing certain non-public Mattel projects. This date coincides with the display of the Bratz dolls at a New York Toy Fair and "speculation in the media started about

EXHIBIT ___3___

PAGE ___33___

Case 2:04-cv-09049-DOC-RNB   Document 6857-2   Filed 09/25/09   Page 30 of 36   Page ID
#:228073
Case 2:04-cv-09049-SGL-RNB   Document 3826   Filed 05/27/2008   Page 6 of 9

alleged similarities between the BRATZ and Mattel's internal projects." MGA Motion at 18.
Alternatively, MGA posits March 15, 2002, the beginning date of an internal Mattel investigation
into MGA and Larian's involvement in Bryant's creation and development of Bratz, as the date
Mattel's current claims accrued.

Mattel, on the other hand, contends that MGA is essentially arguing that a claim Mattel
chose not to bring – that Bratz infringed on the Mattel projects of Toon Teens and Diva Starz – is
time barred. Mattel points out that it has previously disavowed, and that it continues to disavow,
any intent to assert such a claim. Rather, Mattel contends that it is bringing a different claim, a
claim that Mattel has rights to Bratz pursuant to the Inventions Agreement based on Bryant's
actions during the period of his employment with Mattel.

In determining, under California law, which of the parties' diametrically opposed positions
represent the better approach, the Court is guided by the California Supreme Court case cited
above, Fox v. Ethicon Endo-Surgery, Inc., 35 Cal.4th 797, 806 (Cal. 2005). In that case, a plaintiff,
suffering from complications following gastric bypass surgery, sued for medical malpractice. Id. at
802. During the course of discovery, she learned, through the testimony provided at the
deposition of her surgeon, that she had a potential claim against the manufacturer of a surgical
stapler. Id. at 804. Specifically, the plaintiff's surgeon testified that he had found on previous
occasions that the particular stapler had caused post-surgery leaks. Id. When the plaintiff
amended the complaint to assert a products liability claim, the trial court, on statute of limitations
grounds, sustained a demurrer without leave to amend, reasoning that "when a plaintiff sues
based on knowledge or suspicion of negligence, . . . the statute of limitations begins to run as to all
defendants, including manufacturers possibly liable under products liability theories." Id.

The Court of Appeal reversed, and the California Supreme Court affirmed the reversal. Id.
at 812, 816. In doing so, the California Supreme Court rejected, as inconsistent with its precedent,
the so-called "the Bristol-Myers Squibb rule that all claims arising from an injury accrue
simultaneously, even if based upon distinct types of wrongdoing, is inconsistent with the generic
elements approach . . . . " Id. at 815.

From this discussion, a parallel begins to emerge that MGA's position is like that of the
demurring defendant who seeks to dismiss a products liability claim on the basis of plaintiff's
discovery of a different claim of medical malpractice, and Mattel's position is like that of the plaintiff
who seeks to assert the that products liability claim. In a sense, however, this analogy goes
nowhere, as MGA's position is that the claim Mattel asserts in the current action is not different
from the potential claim for which it was on notice of in 2001. After all, both would be based on
breach of contract and/or copyright claims, both would involve the same defendants, and both
would result in the same type of injury.

However, the Fox Court's elaboration on the rule it enunciates convinces the Court that
Mattel's position is the stronger one. After discussing the application of its rule in the more narrow
situation presented by the overlap of medical malpractice and products liability claims at issue in
the case before it, the Fox Court explained:

EXHIBIT _____3_____
PAGE _____34_____

Case 2:04-cv-09049-DOC-RNB   Document 6857-2   Filed 09/25/09   Page 31 of 36   Page ID
#:228074
Case 2:04-cv-09049-SGL-RNB   Document 3826   Filed 05/27/2008   Page 7 of 9

> More broadly stated, if a plaintiff's reasonable and diligent investigation
> discloses only one kind of wrongdoing when the injury was actually
> caused by tortious conduct of a wholly different sort, the discovery rule
> postpones accrual of the statute of limitations on the newly discovered
> claim.

Id. at 813.  In analyzing the discovery rule, the term "wrongdoing" is used not in a technical or legal sense, but in its everyday meaning. Jolly v. Eli Lilly & Co., 44 Cal.3d 1103, 1111 (1988) ("In this context, 'wrong,' 'wrongdoing,' and 'wrongful' are used in their lay understanding.").

Here, on one hand, we have a breach of contract claim or copyright infringement claim based on alleged copying or "borrowing" of Mattel's undisputed rights in Toon Teens and/or Diva Starz to create Bratz that perhaps Mattel was on notice of as early as 2001, and which Mattel admittedly investigated as early as 2002, but upon which Mattel ultimately chose not to file suit. On the other hand, we have the claims asserted here, for breach of contract and copyright infringement, based on Mattel's (disputed) ownership rights to the Bratz drawings pursuant to Bryant's employment agreement with Mattel and in light of the (disputed) fact that Carter Bryant created these works during the period of his employment with Mattel.  Applied to the present case, in the Court's view, the question the Court must ask is whether the first type of claim is based on qualitatively different type of "wrongdoing" – as that term might be understood by lay persons – than that which gives rise to the present claims.

Thus framed, the Court considers the two claims:  Although they are similar in that they both include the wrongdoing of the failure to keep one's promise to maintain confidentiality, they are qualitatively different, however, in that the former situation involves the alleged taking of rights known to Mattel while the latter involves the alleged concealment of certain creations that belong to Mattel in the first instance in order to facilitate the taking of rights unknown to Mattel.  This fundamental difference leads the Court to the conclusion that the latter claims, those asserted here, involve a different element of "wrongdoing" than do the unasserted claims based on Toon Teens and/or Diva Starz.

The burden of proof on the discovery rule issue is on Mattel.[2]  Examining the claim Mattel asserts, rather than the claim Mattel chose not to assert, the Court must determine whether Mattel had knowledge of any one of the three generic elements of wrongdoing, causation, or damages, coupled with suspicion of the remaining generic elements.  This determination cannot be made on the undisputed record before the Court.

Rather, MGA has raised triable issues of fact precluding summary judgment on the statute of limitations issue.  Any of the following could be the date upon which MGA claims against Carter

---

[2]  See Fox, 35 Cal.4th at 803 (imposing upon a plaintiff that seeks to take advantage of the discovery rule a requirement that it "plead[] and prove[] that a reasonable investigation at that time would not have revealed a factual basis for that particular cause of action).

Initials of Deputy Clerk: gg
Time:  0/00

EXHIBIT _____ 3
PAGE _____ 35

Case 2:04-cv-09049-DOC-RNB   Document 6857-2   Filed 09/25/09   Page 32 of 36   Page ID
#:228075
Case 2:04-cv-09049-SGL-RNB   Document 3826   Filed 05/27/2008   Page 8 of 9

Bryant accrued:  The July 18, 2003, <u>Wall Street Journal</u> article; the September 23, 2003, date of receipt of the City World "claim"; the October 17, 2003, date of counsel's letter to Mattel regarding the City World litigation; or the November 24, 2003, date of receipt of the MGA-Bryant agreement that pre-dated Bryant's resignation of his employment.[3]

The accrual of a copyright claim, as the parties recognize, approximates the state-law standard discussed herein.  <u>See Polar Bear Productions, Inc. v. Timex Corp.</u>, 384 F.3d 700, 706 (9th Cir. 2004) ("Thus, . . . the statute of limitations does not prohibit recovery of damages incurred more than three years prior to the filing of suit if the copyright plaintiff was unaware of the infringement, and that lack of knowledge was reasonable under the circumstances.").  Accordingly, the Court makes the same conclusion regarding the accrual date of Mattel's copyright claim against Carter Bryant as it does regarding the accrual date of Bryant's state-law claims.

As stated earlier, although Bryant is no longer a party to this action, the parties recognize, as does the Court, that the timeliness of the claims asserted against Carter Bryant is relevant because of the potential that Mattel's claims against the MGA entities and Isaac Larian may, pursuant to Fed. R. Civ. P. 15(c), relate back to those claims.  Mattel embraces the concept of relation back; MGA rejects it.

Although such distinction has not been particularly important at other points in this litigation, the Court has referred to the MGA entities and Isaac Larian collectively as MGA.  More specifically, as to Phase 1, there are two separate MGA entities:  MGA Entertainment, Inc. and MGA Entertainment HK Limited.  There is also MGA's CEO, Isaac Larian.  This distinction is important to the Court's analysis of relation back.

MGA Entertainment, Inc., but <u>not</u> Isaac Larian or the other MGA entity, intervened in this action on December 7, 2004.  Therefore, based on the status of MGA Entertainment, Inc., as a party, the standard for whether the claims relate back differs from that governing the relation back of claims against MGA Entertainment HK Limited.  <u>See infra</u>.  As this Court has noted before, the Phase 1 claims against MGA sought to be asserted by Mattel on November 20, 2006, which arise out of the same factual allegations as do the claims asserted by Mattel against Carter Bryant on April 27, 2004, relate back to the date that complaint was filed.  <u>See</u> Court's Jan. 12, 2007, Order at 13-15.  The Court does not revisit that issue now.

MGA argues that "some courts have dis-allowed 'relation back' of claims against intervening <i>defendants</i>."  MGA Opp. at 25 n.21 (emphasis in the original).  However, in support of this argument, MGA cites a two-page Texas appellate court decision which does not cite to or interpret Fed. R. Civ. P. 15(c), <u>Davis v. Outdoor Equip. Co.</u>, 551 S.W.3d 72, 73 (Tex. Ct. App. 1977), which the Court finds unpersuasive.

As to the new parties sought to be added on November 20, 2006 (MGA Entertainment HK

---

[3]   The analysis is slightly different for the conversion claim.  <u>See</u> <u>infra</u> at 9-10.

EXHIBIT _____ 3
PAGE _____ 36

Limited and Isaac Larian), MGA challenges the timeliness of the amendment to add these parties based on whether their identities were known to Mattel at an earlier date. The Court has already held that the claims against them relate back to the April, 2004, complaint. See Court's Jan. 12, 2007, Order at 15-16 n.5. The Court will not revisit that issue either.

The Court rejects the proposition, however, that the claims against both MGA entities did not arise until the date of Carter Bryant's deposition. Whatever the date on which the claims against Carter Bryant arose is ultimately found to be, the August 2002 anonymous letter should have given Mattel a suspicion of that MGA Entertainment, Inc., participated in any wrongdoing by Carter Bryant. See Zeller Decl. Ex. 63 (alleging that Carter Bryant "worked out a deal with MGA that let him collect a large sum of money each year from MGA in exchange for his secrecy about the dolls").

The same is not true as to MGA Entertainment HK Limited and as to Isaac Larian, whom the anonymous letter did not implicate. Therefore, the claims against these defendants arose no earlier than November 4, 2004.

Intentional interference with contractual relations is subject to a two-year statute of limitations. MGA contends that the claim accrues upon the breach of contract, and therefore argues that the claim was untimely before it was asserted against Carter Bryant. They make a similar argument regarding Mattel's conversion claim, which carries with it a three-year statute of limitations.

However, the statute of limitations for breach of contract is tolled during a period of fraudulent concealment. Gryczman v. 4550 Pico Partners, Ltd., 107 Cal.App.4th 1, 5 (2003). The rationale for such tolling easily extends to intentional interference with contractual relations claim, which includes the element of a breach of a contract. The limitations period is likewise tolled during a period of fraudulent concealment as to a conversion claim. AmerUS Life Ins. Co. v. Bank of America, 143 Cal.App.4th 631, 639 (2006) ("To the extent our courts have recognized a 'discovery rule' exception to toll the statute, it has only been when the defendant in a conversion action fraudulently conceals the relevant facts or where the defendant fails to disclose such facts in violation of his or her fiduciary duty to the plaintiff.") Mattel has raised a triable issue of fact as to whether the evidence of the breach and the tortious interference thereof was fraudulently concealed from them before the July 18, 2003, Wall Street Journal article.

The Court will permit further briefing from the parties on the limited issue of what further conclusions regarding the timeliness of each claim should be drawn as a result of this Order. The parties' simultaneous briefs shall be limited to seven pages in length, and shall not re-argue any point upon which the Court has ruled in this Order or its previous two summary judgment Orders. The briefs shall be e-filed no later than 8:30 a.m., Thursday, May 29, 2008, and a courtesy copy must be provided to chambers at the same time. The parties shall also file, as exhibits thereto, their revised proposed special interrogatories on the issue of statute of limitations.

**IT IS SO ORDERED.**

# EXHIBIT 4

EXHIBIT ___4___
PAGE ___38___

| Tab | Date | Event | Bates/Exhibit No. |
|---|---|---|---|
| 1. | September 4, 2003 | CityWorld counsel, Danny Yu writes to Mattel General Counsel, Robert Normile | M 0013374 - M 0013375 |
| 2. | September 23, 2003 | Mattel obtains a copy of MGA/CityWorld claim | No Bates |
| NA | September 25, 2003 | R. Normile calls Danny Yu | |
| NA | September 25, 2003 | R. Normile speaks with Danny Yu | |
| NA | October 9, 2003 | R. Normile calls Paul KC Chan firm, also Cityworld counsel | |
| 3. | October 17, 2003 | CityWorld counsel writes Mattel General Counsel | M 0013377 - M 0013378 |
| 4. | October 27, 2003 | CityWorld counsel writes to Mattel General Counsel, Robert Normile (received November 5) | M 0013376 |
| 5. | November 9, 2003 | Moore writes to Yu, CityWorld counsel | No Bates |
| NA | November 12, 2003 | R. Normile calls Simon CW Yung firm | |
| NA | November 17, 2003 | R. Normile speaks with Simon CW Yung firm | |
| NA | November 18, 2003 | Moore calls Simon CW Yung firm | |
| NA | November 20, 2003 | Moore makes two brief calls to Danny Yu, one to his office, and one to his cell phone | |
| 6. | November 20, 2003 | Moore provides draft agreement to Danny Yu | M 0013369 - M 0013373 |
| 7. | November 20, 2003 | Yu e-mails Moore to confirm meeting details | No Bates |
| NA | November 24, 2003 | Moore and Zeller meet with CityWorld counsel, Danny Yu and George Kesslering at the offices of | |

Simpson-Taylor
EXHIBIT NO. 4434
2/23/08
Wendy S. Schreiber

EXHIBIT   4
PAGE   39

Bird & Bird in Hong Kong.

| 8. | November 24, 2003 | CityWorld and Mattel agree to exchange materials | No Bates |
|---|---|---|---|
| 9. | November 24, 2003 | Moore and Zeller obtain from CityWorld the Larian affidavit(9A), Lee affirmation and exhibits(9B), including Carter Bryant/MGA agreement(9C) and Carter Bryant drawings of Bratz(9D) | Exhibit 12;<br>Exhibit 941;<br>M 0001547 - M 001552;<br>Exhibit 10 |
| 10. | November 24, 2003 | Danny Yu writes to Moore providing additional Lee affidavit exhibits | M 0013379 - M 0013382 |

07209/2411231.1

EXHIBIT _____ 4
PAGE _____ 40