QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  michaelzeller@quinnemanuel.com
  Jon D. Corey (Bar No. 185066)
  joncorey@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>MGA ENTERTAINMENT, INC., et al.,<br><br>Defendants.<br><br>AND CONSOLIDATED ACTIONS<br><br>**PUBLIC REDACTED**<br>**VERSION** | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with Case Nos. CV 04-09059 and CV 05-02727<br><br>**DISCOVERY MATTER**<br>**[To Be Heard By Discovery Master Robert C. O'Brien]**<br><br>MATTEL, INC.'S OPPOSITION TO BINGHAM MCCUTCHEN'S MOTION FOR PARTIAL RECONSIDERATION OF ORDER NO. 51 REGARDING THE PRODUCTION OF ATTORNEY FEE INFORMATION<br><br>[Declaration of Dylan Proctor filed concurrently]<br><br>Hearing Date: TBD<br>Time: TBD<br>Place: Arent Fox LLP<br>555 West Fifth Street<br>Los Angeles, CA 90013<br><br>**Phase 2**<br><br>Discovery Cut-off:   June 1, 2010 |

**Preliminary Statement**

Bingham, already in violation of the Discovery Master's Order compelling it to produce, now seeks to litigate its subpoena responses for a *fourth* time. Bingham asserts that Discovery Master Order No. 60 somehow altered Bingham's existing obligation pursuant to Order No. 51 to ███████████████████████████████████████████████████████. In Order No. 60, the Discovery Master ruled that, █████████████████████████████████████████████████████████████████████████████████████████████████████████. Order No. 51, by contrast, compelled Bingham to produce █████████████████████████████████████████████████████████████████, specifically because both the Discovery Master and the District Court held that the relationships among MGA and Larian, on the one hand, and Omni 808 and Vision Capital, on the other hand, were directly at issue in Phase 2. Because these documents relate directly to Mattel's counterclaims, the Discovery Master compelled Bingham to produce ███████████████████████. Nothing in Order No. 60 in any way undercuts or limits that obligation.

Although Bingham styles its Motion as a request for "clarification," there is not even an alleged lack of clarity here. Order No. 51 compelled full discovery of █████████████████████████████ because Mattel's substantive allegations place *directly at issue* the relationships between those entities and the MGA parties. These relationships are obviously central to Mattel's claims that ██████████████████████████████████████████████. They are also critically relevant to Mattel's RICO claims, which turn

-1-
MATTEL'S OPPOSITION TO MOTION FOR RECONSIDERATION OF DM ORDER NO. 51

on the relationship between the parties alleged to have participated as an enterprise in a pattern of wrongdoing. Whether or not full disclosure should also have been ordered as to the additional witnesses at issue in Order No. 60,[1] nothing in Order No. 60 relieves Bingham of its obligation to produce documents which are directly relevant to Mattel's substantive claims. Once again, Bingham's Motion should be rejected, and it should be required to produce without further delay.

### Factual Background

The Discovery Master set forth the relevant factual and procedural history at length in Order No. 51.[2] Mattel therefore briefly summarizes it here.

On February 12, 2009, Mattel served a subpoena on Bingham.[3] Bingham moved to quash the subpoena, but refused to stipulate that if its motion to quash was denied by the Discovery Master, it would respond to Mattel's subpoena.[4] In its Motion to Compel, Mattel argued that the requests were relevant not only to bias and credibility, but also to the merits of Mattel's claims.[5] In Order No. 27, the Discovery Master initially denied Mattel's Motion.[6]

---

[1] Mattel has sought review of Order No. 60 to the extent that it allows MGA to withhold documents related to its fee agreements and arrangements with five named former Mattel employees, which the prior Discovery Master had previously ordered produced. See Mattel's Motion Objecting to Portions of Discovery Master Order No. 60, Regarding RFPs 75, 85, 95, 105, and 115 of Mattel's First Set of Requests Re Unfair Competition, dated Sept. 23, 2009, Declaration of B. Dylan Proctor, filed concurrently ("Proctor Decl."), Exh. 1. Mattel does not concede that the documents related to these five individuals are only relevant to bias, which was the basis of the Discovery Master's ruling limiting disclosure. But there is no question that the relevance of the documents at issue here, as found by both the Court and the Discovery Master, is not so limited.

[2] Discovery Master Order No. 51, dated August 26, 2009, at 1-7, Proctor Decl., Exh. 7.

[3] See Notice of Subpoena Issued to Bingham McCutchen, LLP, dated Feb. 12, 2009, Proctor Decl., Exh. 3.

[4] See Mattel, Inc.'s Notice of Motion and Motion to Compel Bingham McCutchen LLP to Produce Documents Response to Subpoena, dated March 5, 2009, at 6, Proctor Decl., Exh. 4.

[5] Id., at 9-11.

[6] Discovery Master Order No. 27, dated May 6, 2009, Proctor Decl., Exh. 5.

Mattel objected to Order No. 27, and the District Court granted Mattel's motion, remanding the issue to the Discovery Master for reconsideration of the Requests in light of Mattel's Third Amended Answer and Counterclaims ("TAAC"), which "significantly heightens the relevancy of the issue of how the MGA parties and the parties represented by Bingham may be related" and "dramatically altered the calculus" for determining the relevance of Mattel's subpoena to Bingham.[7]

After remand further briefing by Mattel and Bingham, the Discovery Master on reconsideration compelled Bingham to respond to Request Nos. 1 through 6, finding that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮."[8]

The Discovery Master's August 26, 2009 Order gave Bingham 20 days to fully produce documents in response to Request Nos. 1 through 6. Thus, the deadline for Bingham's response was September 15, 2009. On September 18, 2009, three days after that deadline and without having produced the compelled documents relevant here or sought a stay of its compliance obligations, Bingham filed this Motion seeking a *second* reconsideration, and initiating a fourth round of briefing, concerning Mattel's now seven-month-old subpoena.

---

[7] July 9, 2009 Omnibus Order at 5, Proctor Decl., Exh. 6.
[8] Discovery Master Order No. 51, dated August 26, 2009 at 13-14, Proctor Decl., Exh. 7 (emphasis added).

# Argument

## I. THE COURT AND THE DISCOVERY MASTER HAVE HELD THAT MATTEL'S REQUESTS SEEK RELEVANT INFORMATION

### A. Payment of Legal Fees Is Directly Relevant to the Substance of Mattel's Phase 2 Claims

As the Court and the Discovery Master have held, the relationships between the MGA parties and the parties represented by Bingham are a critical, substantive element of Mattel's RICO claims. See Whitehouse v. United States Dist. Court for Dist. of Rhode Island, 53 F.3d 1349, 1352 n. 1 (1st Cir. 1995) (under RICO, "evidence that legal representation was provided by a benefactor, for participation in a criminal enterprise, [could be] relevant to prove existence of criminal enterprise"); United States v. Pape, 144 F.2d 778, 782 (2d Cir. 1944) (defendant's payment of legal fees for woman accused of prostitution could be used to show that defendant's "interest in the woman went to the point of retaining and paying for a lawyer to secure her release"); United States v. Castellano, 610 F. Supp. 1151, 1159 (S.D.N.Y. 1985) ("benefactor payments of attorneys' fees by one defendant in behalf of another might suggest the existence of an association in fact, since payment of another person's legal fees may imply facts about a prior or present relationship with that person") (quotation omitted).

At least twice, the Court and the Discovery Master have explicitly recognized that these Requests go directly to the "relationship" between the parties, and that these relationships are directly and critically relevant to Mattel's Phase 2 claims. July 9, 2009 Order at 5 (finding that error in applying incorrect burden of proof was "magnified by the recent filing of the TAAC, which significantly heightens the relevancy of the issue of how the MGA parties and the parties represented by Bingham may be related . . . ."), Proctor Decl., Exh. 9; Order No. 51 at 13-14 ("█████████████████████████████████████

█████████████████████████████████████

1 ████████████████████████████████████████████
2 ████████.").[9]

3    Access to these documents is particularly important in light of Bingham's misrepresentations concerning the Omni Parties. Bingham initially claimed Larian had absolutely no involvement in funding the Wachovia debt acquisition,[10] only to later admit that he provided the majority of the funds. After the Court-appointed forensic auditor's findings also contradicted Bingham's prior representations, Bingham launched a campaign of "unwarranted, unsubstantiated, and public personal attacks" on him.[11] Even in this Motion, Bingham misrepresents the fee arrangements at issue here, asserting that it is "well known" that "Omni 808, not MGA, is paying Bingham's legal fees."[12] Neil Kadisha, Omni 808's alleged principal, testified that *MGA* is responsible for Omni 808's fees and further that MGA is responsible for any fees that Mr. Kadisha *personally* incurs as well. See Deposition of Neil Kadisha, dated August 28, 2009, at 184:4-17 (testifying that "[MGA] is obligated to pay Omni 808 fees under the agreements"), Proctor Decl., Exh. 10; id at 187:4-188:2 (testifying that MGA writes checks to Omni 808 for Omni 808's legal fees, which Omni then "forwards" to the Bingham firm); id. at 188:10-189:1 ("If you are asking me if you were to sue me, does MGA ha[ve] to pay for that legal fees [sic], the answer is heck, yes.").

   The relationship between MGA, Larian, and Bingham's clients is a critical, and much-disputed, element of this case. Mattel -- and ultimately the jury -- has a right to know both how much MGA and Larian have paid on behalf of Vision Capital and Omni 808, and the terms of the agreements and understandings under which those payments were made.

---

[9] Proctor Decl., Exh. 7.
[10] February 11, 2009 Hearing Tr. at 71:16 to 72:5, Proctor Decl., Exh. 8; March 4, 2009 Hearing Tr. at 51:3-8, Proctor Decl., Exh. 9.
[11] July 9, 2009 Order at 5-14, Proctor Decl., Exh. 6.

In addition, the fee agreements are directly relevant to the question of how depositions of these witnesses may be used at trial. The terms of these agreements bear directly on the "identity of interests" that is an important factor in the test for using such testimony against MGA and Larian. See, e.g., Fed. R. Civ. P. 32 ("An adverse party may use for any purpose the deposition of a party or anyone who, when deposed, was the party's officer, director, managing agent, or designee under Rule 30(b)(6) or 31(a)(4)."); Young & Assocs. Pub. Relations, L.L.C. v. Delta Air Lines, Inc., 216 F.R.D. 521, 523 (D. Utah 2003) (listing one of the factors for determining managing agent status as "whether the agent's interests are identified with those of the principal"); Reed Paper Co. v. Proctor & Gamble Distrib. Co., 144 F.R.D. 2, 4 (D. Me. 1992) (managing agent for purposes of Rule 32 "should be a person who can be expected to identify himself with the interests of the corporation rather than with those of the other parties"); In re Honda Am. Motor Co., 168 F.R.D. 535, 541 (D. Md. 1996) ("The 'paramount test' is whether the individual can be expected to identify with the corporation's interests as opposed to an adversary's.").[13]

### B. Payments of Legal Fees Is Also Critical to Bias and Credibility

While the Discovery Master ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, these documents are also critically relevant to bias and credibility, which further supports Order No. 60. As the Court has held in this very case, fee arrangements are obviously relevant to assessing bias and credibility Bryant v. Mattel, Inc., 573 F. Supp. 2d 1254, 1274 (C.D. Cal. 2007) ("fee-payment arrangements are relevant to credibility and bias,

---

[12] Motion at 2.
[13] In a similar vein, the fee agreements are directly relevant to the questions of control and alter-ego status that may determine who ultimately is liable for damages awarded in this case. See, e.g., Daval Steel Products v. M/V Fakredine, 951 F.2d 1357, 1368 (2d Cir. 1991) ("information concerning financial transactions and movements of corporate assets .
   (footnote continued)

and if asked in discovery, Bryant must disclose who is paying his legal fees"); see Bryant v. Mattel, Inc., 2007 WL 5430887, *2 (C.D. Cal. June 20, 2007) (ordering production of fee agreement); see also United States v. Cathcart, 2009 WL 1764642, *2 (N.D. Cal. 2009) (overruling magistrate order limiting discovery regarding payment of legal fees because this information is relevant to "the issue of defendant's credibility and bias"); Perez v. Consolidated Edison Corp. of New York, 2008 WL 194615, *1 (S.D.N.Y. January 23, 2008) ("Con Ed's agreement to pay defendant Wallace's legal fees could be relevant to his credibility if he testifies and I will not preclude such evidence, in limine.").

### C. The Terms of Any Fee Arrangements Were Properly Compelled

The premise of Bingham's argument is that fee arrangements are *only* relevant to bias and credibility and hence the actual terms of the fee arrangements may be concealed. As shown, Bingham is simply wrong as to the bases for Order No. 51 – for good reason, the Discovery Master found that ███████████ ███████████████████████████████████████. But in any case, even as to bias the terms of the agreements are as important as the amounts paid under them. For example, a fee payment agreement or arrangement that included an explicit *quid pro quo* for specific testimony or that contained terms which might influence the substance of testimony will remain concealed if only a "verified summary" is compelled.

This is not hypothetical conjecture. ███████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ███████████████████████████████:

---

. . was 'reasonably calculated to lead to the discovery' of evidence admissible on the issue of alter ego liability").

1  ██████████████████████████████████████
2  ██████████████████████████████████████
3  ████████████████████████████████
4  ██████████████████████████████████████
5  ████████████████████████████████
6  ████████.[14]

7  Mattel, and ultimately the jury, are entitled to know if a witness is testifying with the
8  threat of legal fees over his head depending on MGA's or Larian's level of
9  satisfaction with his testimony.

## II. ORDER NO. 60 IN NO WAY LIMITS BINGHAM'S OBLIGATION TO PRODUCE

In Order No. 60, the Discovery Master considered requests by both MGA and Mattel for documents related to fee agreements between the parties and any and all potential witnesses in this litigation.[15] In his Order, the Discovery Master ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.[17]

In Order No. 51, by contrast, the Discovery Master specifically found that the ████████████████████████████████████████████████████████████████████████ -- were directly

---

[14] Proctor Dec., Exh. 11, at 2.
[15] Discovery Master Order No. 60, dated Sept. 9, 2009, at 9-13, Proctor Decl., Exh. 2.
[16] Id. at 13-14.
[17] Id. at 9 ("████████████████████████████████████████████████████").

relevant to Mattel's counterclaims.[18] As the Discovery Master recognized, Omni 808 and Vision Capital, two of the entities represented by Bingham, are "███████████████████████████████████████████."[19] Indeed, it was for precisely this reason that Order No. 51 also compelled ███████████ █████████████, which Bingham does not challenge here but nevertheless has failed to comply with by withholding responsive discovery. Request No. 5, which the Discovery Master compelled, seeks "*all* contracts and agreements [including drafts] . . . referring or relating to Omni 808, Vision Capital and/or Lexington."[20] Request No. 6, which the Discovery Master compelled, likewise requests "*all* communications referring or relating to Omni 808, Vision Capital and/or Lexington."[21] The Discovery Master held that these requests were ████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ █████████."[22] The Discovery Master further held that:

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
███████████████████████████████████████████████"[23]

In short, the Discovery Master correctly found that the █████████████ ████████████████████████ (among others) are directly at issue in Phase 2, making *all* communications and agreements with those entities relevant. Nothing in Order No. 60 undercuts that conclusion or limits its import. And, in further contrast,

---

[18] See Order No. 51 at 1-2, Proctor Decl, Exh. 7.
[19] Id. at 11.
[20] Id. at 2.
[21] Id.
[22] Id. at 14-15.
[23] Id. at 15.

Bingham made no burden showing at all[24] – which was the rationale for Order No. 60.[25] For this additional reason, Order No. 60 is of no assistance to Bingham here.

### Conclusion

For the foregoing reasons, Mattel respectfully requests that Bingham's Motion be denied in entirety and that Bingham again be ordered to fully comply with Order No. 51 immediately, with sanctions for further delays.

DATED: September 25, 2009         QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By /s/ Michael T. Zeller
   Michael T. Zeller
   Attorneys for Mattel, Inc.

---

[24] Order No. 51 at 9 ("███████████████████████████████████"). Proctor Decl., Exh. 7.

[25] Order No. 60 at 23-24 (████████████████████████████████████"); Proctor Decl., Exh. 2.