THOMAS J. NOLAN (Bar No. 66992)
(tnolan@skadden.com)
JASON D. RUSSELL (Bar No. 169219)
(jrussell@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA  90071-3144
Tel.: (213) 687-5000/Fax: (213) 687-5600

Attorneys for Counter-Defendants,
MGA ENTERTAINMENT, INC., ISAAC LARIAN,
and MGA ENTERTAINMENT (HK) LIMITED

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED CASES. | CASE NO. CV 04-9049 DOC (RNBx)<br>Consolidated with Case No. 04-9059 and Case No. 05-2727<br><br>Honorable David O. Carter<br><br>**BEFORE THE MONITOR PER COURT ORDER**<br><br>[*PUBLIC REDACTED*] MGA PARTIES' STATEMENT OF POSITION REGARDING SCOPE OF EXISTING PRODUCT RECALL AND IMPOUNDMENT;<br><br>**FILED UNDER SEPARATE COVER:** DECLARATION OF JASON D. RUSSELL IN SUPPORT THEREOF.<br><br>DATE: October 12, 2009<br>TIME: 9:30 a.m. |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ ii

PRELIMINARY STATEMENT ......................................................................... 1

BACKGROUND ................................................................................................ 3

ARGUMENT ..................................................................................................... 6

    I.    NO ORDER REQUIRES A RECALL OF ALL BRATZ PRODUCTS ............ 6

        A.    The Permanent Injunction Order Does Not And Cannot Apply To The "Bratz" Name .................................................................................. 6

        B.    The Constructive Trust Order Does Not And Should Not Include A Recall ....................................................................................................... 7

        C.    The Recall Provisions Are Not Ambiguous, But Even If They Were, They Should Be Construed Against Mattel As Drafter Of The Order ....................................................................................................... 12

    II.    MATTEL HAS NO BASIS TO MODIFY THE INJUNCTION ORDERS ............................................................................................................. 14

    III.    IMPOUNDMENT OF TOOLING SHOULD BE FURTHER LIMITED ....... 16

CONCLUSION ................................................................................................... 18

# <u>TABLE OF AUTHORITIES</u>

## CASES

<u>Advanced Cardiovascular System, Inc. v. Medtronic, Inc.</u>,
No. C95-03577-DLJ,
2008 WL 4647384 (N.D. Cal. Oct. 20, 2008) ............................................. 15

<u>Apple Computer, Inc. v. Microsoft Corp.</u>,
799 F. Supp. 1006 (N.D. Cal. 1992) ............................................................ 7

<u>Arica Institutes Inc. v. Palmer</u>,
970 F.2d 1067 (2d Cir. 1992) ...................................................................... 6

<u>Attrezzi, LLC v. Maytag Corp.</u>,
436 F.3d 32 (1st Cir. 2006) ......................................................................... 11

<u>Bellevue Manor Associates v. United States</u>,
165 F.3d 1249 (9th Cir. 1999) ..................................................................... 15

<u>Bird v. Parsons</u>,
289 F.3d 865 (6th Cir. 2002) ....................................................................... 6

<u>CMM Cable Rep, Inc. v. Ocean Coast Properties, Inc.</u>,
97 F.3d 1504 (1st Cir. 1996) ....................................................................... 6

<u>Clark v. Coye</u>,
60 F.3d 600 (9th Cir. 1995) ........................................................................ 12

<u>Echostar Satellite Corp. v. NDS Group PLC</u>,
No. SACV 03-950 DOC (JTLx),
2008 WL 5116513 (C.D. Cal. Dec. 4, 2008) .............................................. 16

<u>Fryer v. Brown</u>,
No. C04-5481 FDB,
2005 WL 1871112 (W.D. Wash. Aug. 3, 2005) .......................................... 7

<u>George Basch Co., Inc. v. Blue Coral, Inc.</u>,
968 F.2d 1532 (2d Cir. 1992) ...................................................................... 11

<u>Headlands Reserve, LLC v. Center For Natural Lands Management</u>,
523 F. Supp. 2d 1113 (C.D. Cal. 2007) ...................................................... 13

<u>Hynix Semiconductor Inc. v. Rambus Inc.</u>,
609 F. Supp. 2d 951 (N.D. Cal. 2009) ........................................................ 18

<u>Janus Films, Inc. v. Miller</u>,
801 F.2d 578 (2nd Cir. 1986) ...................................................................... 13

<u>Jeff D. v. Kempthorne</u>,
365 F.3d 844 (9th Cir. 2004) ....................................................................... 15

<u>Lance Manufacturing, LLC v. Voortman Cookies Ltd.</u>,
617 F. Supp. 2d 424 (W.D.N.C. 2009) ....................................................... 11

ii

Loya v. I.N.S.,
    583 F.2d 1110 (9th Cir. 1978) .................................................................. 18

MDY Industries, LLC v. Blizzard Entertainment, Inc.,
    No. CV-06-2555-PHX-DGC,
    2009 WL 649719 (D. Ariz. Mar. 10, 2009) ........................................... 18

Mastrobuono v. Shearson Lehman Hutton, Inc.,
    514 U.S. 52, 115 S. Ct. 52, 131 L. Ed. 2d 76 (1995) ........................... 12

McKnight v. Torres,
    563 F.3d 890 (9th Cir. 2009) .................................................................. 13

Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.,
    518 F. Supp. 2d 1197 (C.D. Cal. 2007) ............................................ 12, 17

Miller v. United States,
    363 F.3d 999 (9th Cir. 2004) .................................................................. 13

Primavera Laboratories, Inc. v. Elizabeth Arden Co.,
    No. 93 CIV. 4793 (CSH),
    1993 WL 319214 (S.D.N.Y. Aug. 13, 1993) ......................................... 10

Reed v. Peterson,
    No. C04-00228 WWS,
    2005 WL 1522187 (N.D. Cal. June 27, 2005) .......................................... 7

Rondeau v. Mosinee Paper Corp.,
    422 U.S. 49, 95 S. Ct. 2069, 45 L. Ed. 2d 12 (1975) ........................... 18

Rufo v. Inmates of Suffolk County Jail,
    502 U.S. 367, 112 S. Ct. 748, 116 L. Ed. 2d 867 (1992) ...................... 15

S.E.C. v. Coldicutt,
    258 F.3d 939 (9th Cir. 2001) ............................................................. 14, 15

S.E.C. v. Kirkland,
    No. 6:06-CV-183-ORL,
    2008 WL 4491528 (M.D. Fla. Sept. 30, 2008) ...................................... 15

Shakey's Inc. v. Covalt,
    704 F.2d 426 (9th Cir. 1983) .................................................................... 8

Sharp v. Weston,
    233 F.3d 1166 (9th Cir. 2000) ................................................................ 15

Sutter Home Winery, Inc. v. Vintage Selections, Ltd.,
    971 F.2d 401 (9th Cir. 1992) .................................................................. 13

TVT Records v. Island Defense Jam Music Group,
    279 F. Supp. 2d 366 (S.D.N.Y. 2003),
    rev'd on other grounds, 412 F.3d 82 (2nd Cir. 2005) .......................... 10

Taft Television and Radio Co. v. King Broadcasting Co.,
    No. 85-518-FR,
    1986 WL 580 (D. Or. Sept. 10, 1986) ............................................................... 7

Trenton v. Infinity Broadcasting Corp.,
    865 F. Supp. 1416 (C.D. Cal. 1994) ................................................................. 7

United States v. Angle,
    No. CIV S-80-583 LKK,
    2009 WL 347749 (E.D. Cal. Feb. 11, 2009) ................................................. 15

United States v. Asarco Inc.,
    430 F.3d 972 (9th Cir. 2005) ......................................................................... 15

United States v. Holtzman,
    762 F.2d 720 (9th Cir. 1985) ......................................................................... 12

U.S. Olympic Committee v. Olympic Supply, Inc.,
    Civ. No. DKC 2008-0496,
    --- F. Supp. 2d ---, 2009 WL 2426255 (D. Md. Aug. 6, 2009) ................................... 11

Vertex Distributing, Inc. v. Falcon Foam Plastics, Inc.,
    689 F.2d 885 (9th Cir. 1982) ......................................................................... 13

**STATUTES**

37 C.F.R. § 202.1 ........................................................................................... 6

17 U.S.C. § 503(a)(1)(A-B) ............................................................................ 17

Fed. R. Civ. P. 60(b) ...................................................................................... 14

**MISCELLANEOUS**

4 Louis Altman & Malla Pollack, Callman on Unfair Competition, Trademarks &
    Monopolies § 23.75 (4th ed.) .......................................................................... 11

11A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice &
    Procedure, § 2955 ......................................................................................... 12

5 J. Thomas McCarthy, McCarthy on Trademarks & Unfair Competition § 30:3
    (4th ed.) ....................................................................................................... 11

Restatement (Second) of Contracts § 206, cmt. a (1979) ....................................... 12

iv

1    The MGA Parties respectfully submit this Statement of Position regarding the scope

2 of the recall of Bratz-related products and impoundment of products and tooling per the

3 Monitor's request for briefing on these issues of September 16, 2009.

4                                    **PRELIMINARY STATEMENT**

5    In the "Phase 1C" post-trial briefing on equitable remedies, Mattel brought two

6 distinct motions seeking injunctive relief.  One was motion for a permanent injunction

7 under the Copyright Act to enjoin future violations of the copyrights Mattel had been

8 awarded – that motion sought various remedies available under the Copyright Act,

9 including recall and impoundment of infringing products and the means of making them.

10 (Ex. 1 (Mattel's Motion For Permanent Injunction (Dkt 4319) ("Permanent Injunction

11 Motion")).)[1]  The other was a motion to declare a constructive trust over the trademarks that

12 included the names "Bratz" and "Jade" (collectively, "the Bratz marks") and to enter an

13 injunction barring the future use of those trademarks under California's unfair competition

14 law, Bus. & Prof. Code § 17200 *et seq*.  (Ex. 2. (Mattel, Inc.'s Motion For: (1) Constructive

15 Trust [and] (2) Finding Of Liability And Injunctive Relief Under Cal. Bus. & Prof. Code

16 § 17200 (Dkt 4305) ("Constructive Trust Motion")).)

17    The Constructive Trust Motion, being grounded in principles of unfair competition

18 and trademark law rather than the Copyright Act, did <u>not</u> include a request for recall or

19 impoundment.  Both motions were granted, and the Court adopted almost verbatim the

20 proposed orders submitted by Mattel.  (<u>See</u> Ex. 6 (Order Granting Mattel, Inc.'s Motion For

21 Permanent Injunction (Dkt 4443) ("Permanent Injunction Order")) & Ex. 7 (Order Granting

22 Mattel's Motion For Constructive Trust And For Finding Liability And Injunctive Relief

23 Pursuant To Cal. Bus. & Prof Code § 17200 (Dkt 4441) ("Constructive Trust Order")).)

24    Mattel had months to consider its position before filing the motions and has asserted

25 that it took great pains to draft comprehensive orders reflecting the entirety of the relief that

26 _____

27 [1]    All "Ex." cites refer to documents attached as exhibits to the concurrently filed Declaration of Jason D. Russell in Support of the MGA Parties' Statement of Position Regarding the Scope of

28 Product Recall and Impoundment , unless otherwise noted.

Mattel sought.  It could have – but did not – seek an order requiring recall and impoundment of all Bratz-branded merchandise.  Presumably, it did not seek such relief because it was not warranted and was unlikely to be granted.  When the recall process began, MGA made plain that it did not believe the orders required the recall of all Bratz-branded merchandise.  Nonetheless, Mattel has now taken the position that all MGA products bearing the Bratz marks are subject to recall and impoundment.  It is not clear which revision of history Mattel wishes to adopt:  that the Bratz name should have been included in the Permanent Injunction Order or that the Constructive Trust Order should have included recall and impoundment provisions.  It hardly matters as neither revision has any merit.  The Copyright Act does not apply to single words, so the word "Bratz" could not, as a matter of law, be part of the Permanent Injunction Order.  The Constructive Trust Order plainly and indisputably includes no recall or impoundment, nor should it given that Mattel has no Bratz line of its own with which MGA's Bratz even theoretically could be confused.

In discussions with MGA and the Monitor, Mattel has asserted that even if the Constructive Trust and Permanent Injunction Orders do not currently require a recall or impoundment of all Bratz-branded merchandise, then Mattel intends to seek a modification or "clarification" because such relief "clearly was intended."  Nonsense.  Mattel drafted the very orders it apparently now concedes are unclear.  The Court, after narrowing them in certain respects, adopted those proposed orders almost verbatim.  Mattel should not be permitted to modify orders that it drafted because it did a shoddy job of defining the issues.  Injunction orders are narrowly construed and mandatory injunctions are even more strictly construed against adding implied terms.  Mattel was well aware of the existence of the products it now seeks to include in the recall when it drafted its proposed orders last October, and was already contemplating a future line.  Thus, there are no new factual or legal circumstances to justify the expansion Mattel demands here.  Moreover, granting such an expansion in relief would impose significant hardship and expense on MGA, which are entirely unjustified.  Consequently, MGA respectfully seeks a determination from the Monitor that (i) the Constructive Trust Order does not require (or even permit) a recall or

1   impoundment of <u>any</u> Bratz-branded merchandise; and (ii) that the Permanent Injunction

2   Order similarly does not (and could not) require such a recall or impoundment of all

3   merchandise bearing a Bratz or Jade trademark., but rather only requires recall of those

4   items infringing the copyrights awarded to Mattel by the Phase 1 jury.

5   ## BACKGROUND

6       Mattel's Constructive Trust Motion sought a constructive trust over the Bratz marks

7   and an injunction, pursuant to California's unfair competition law, barring MGA from any

8   subsequent use of the Bratz marks.  (<u>See</u> Constructive Trust Motion at 2 ("California's

9   Unfair Competition Law expressly authorizes the Court to enjoin MGA's continued

10  exploitation of the confidential information it took from Mattel. Pursuant to that authority,

11  the Court should enjoin MGA from any continued use of the "Bratz" and "Jade" names.");

12  <u>see also</u> Ex. 5 (Dec. 3, 2008 Omnibus Order (Dkt 4439)) at 6-8.)  Adopting Mattel's

13  proposed language, the Constructive Trust Order permanently enjoined MGA and its

14  associates from "using the terms 'Bratz' or 'Jade,' either alone or in combination and

15  whether as a trademark, domain name or otherwise, in connection with the manufacture,

16  promotion, advertising, distribution, offering for sale or sale of any goods or services

17  anywhere in the world."  (Constructive Trust Order ¶ 4; <u>compare</u> Ex. 4 ([Proposed] Order

18  Granting Mattel's Motion For Constructive Trust And For Finding Liability And Injunctive

19  Relief Pursuant To Cal. Bus. & Prof Code § 17200 (Dkt 4305-6)) ¶ 4.)  While this order on

20  its face enjoins MGA from using the name "Bratz" going forward, it specifically does <u>not</u>

21  order a recall or impoundment of infringing products.  Mattel did not ask for such

22  provisions, and the Court did not include such provisions in adopting Mattel's proposed

23  order.  (<u>See</u> <u>id.</u>)

24      In contrast, the Permanent Injunction Order enjoins MGA from infringing Mattel's

25  copyrights, specifically, making or selling a product "that embodies or depicts in whole or

26  in part, or incorporates or uses in any manner" the core Bratz fashion doll production sculpt

27  or the Bratz movie sculpt or is "substantially similar" to the core head or body sculpt, or

28  using infringing characters or character art.  (Permanent Injunction Order ¶¶ 1 (a)-(j).)

1  Significantly, in its Order, the Court narrowed the scope of infringing products demanded

2  by Mattel, carving out exceptions for the Bratz Pixiez and "younger" versions of Chloe,

3  Yasmin and Alicia (Bratz Kidz).   (Compare Ex. 3 (Mattel's [Proposed] Permanent

4  Injunction Order (Dkt 4316)) ¶¶ 1(c) & (d) with Permanent Injunction Order ¶¶ 1(c) & (d);

5  Ex. 8 (redline comparing Mattel [Proposed] Permanent Injunction Order and final

6  Permanent Injunction Order).)   Mattel's Permanent Injunction Order was indisputably

7  grounded in the Copyright Act.  (See Permanent Injunction Motion at 1 ("The jury found

8  that MGA has infringed Matters copyrights.  MGA has stated that it intends to continue to

9  make and market dolls – and to advertise and grant licenses – using Matters copyrighted

10 designs.  Mattel is entitled to a permanent injunction to stop that ongoing infringement."); at

11 15 ("Because MGA is engaged in widespread, ongoing acts of infringement, and intends to

12 continue to engage in such infringement, Mattel is entitled to an injunction.  Under the

13 Copyright Act, the Court has authority to grant permanent injunctive relief "on such terms

14 as it may deem reasonable to prevent or restrain infringement of a copyright. 17 U.S.C. §

15 502(a)."); see also Dec. 3, 2008 Omnibus Order at 8-14.)  As authorized by copyright law,

16 the Permanent Injunction Order included provisions for recall of infringing products and

17 impoundment of the products and means of making them.  (Permanent Injunction Order

18 ¶¶ 3-8.)

19      The provisions of the Permanent Injunction Order describing the recall were

20 submitted by Mattel in its proposed order granting permanent injunction and were entered

21 by the Court verbatim.  (Compare Mattel's [Proposed] Permanent Injunction Order ¶¶ 3-8

22 with Permanent Injunction Order ¶¶ 3-8; see also Ex. 8.)  Specifically, the MGA Parties are

23 required "to deliver to Mattel's counsel for impoundment" and "to procure the return, and to

24 withdraw and recall, from any and all channels of trade and distribution, including without

25 limitation from retail shelves and from on-line retailers," all of the products "referred to in

26 paragraphs 1(a) through 1(k), inclusive, and/or in paragraphs 2(a) through 2(h), inclusive,"

27 and to impound "all plates, molds, matrices and other means of making the same."

28 (Permanent Injunction Order ¶ 3-4.)  Thus, the recall and impoundment is limited only to

4

1  those products outlined in the Permanent Injunction Order.  (Id.)

2       MGA manufactures and sells numerous products bearing the name "Bratz" which are

3  not derived from the copyrights awarded Mattel, such as Bratz Kidz, Bratz Lil Angelz, Lil

4  Bratz, Bratz Babyz, and Bratz Boyz (collectively, the "Non-Recalled Bratz Products").

5  Mattel can make no argument that these products, such as the Boyz and Lil Angelz, are

6  derived from the core or movie doll sculpts – they depict boys or infants – and the younger

7  versions of the female dolls (e.g., the Bratz Kidz) were expressly carved out by the Court in

8  the Order.  (See Permanent Injunction Order ¶ 1(c) (carving out the "younger" dolls

9  depicted in Ex. 3).)  Thus, MGA remains free to exploit and offer these products for sale –

10  so long as it does not use the Bratz trademark in connection with the offering for sale of

11  such products.  Moreover, the fact that these dolls and products exist can hardly come as a

12  surprise to Mattel – not only did Mattel seek to include younger versions of the dolls in their

13  demand (see Permanent Injunction Order, Ex. 3 at 277, 278 & 379) but the Non-Recalled

14  Bratz Products were discussed repeatedly at trial and samples of these products were even

15  shown to the jury.  (See, e.g. Tr. 5759:17-5760:9 (discussing Bratz Boyz); Tr. 5762:13-

16  5763:8, 7206:15-7208:4, TX 17360, 18862 (Bratz Babyz); Tr. 5764:25-5765:16, 7208:5-

17  7209:5, TX 17467, 18865, 18866 (Bratz Big Babyz); Tr. 5765:17- 5766:3, 7209:6-7210:9,

18  TX 17479, 18860, 18861 (Bratz Kidz); Tr. 7210:10-7211:1, TX 18877, 18864 (Bratz Big

19  Kidz); Tr. 5767:19-5768:8, 7211:2-7212:6, TX 17486, 17486, 18878, 18867, 18868 (Bratz

20  Lil Angelz); Tr. 5768:9-22, TX 17602 (Bratz Petz); Tr. 7205:19-7206:14, TX 17491 (Lil

21  Bratz).)[2]  MGA is enjoined from using the Bratz marks in connection with these products in

22  the future, but because they are subject only to the Constructive Trust Order and not the

23  Permanent Injunction Order; they are not subject to recall and the means of making these

24  products are not subject to impoundment.[3]

---

25  [2]     All trial exhibits cited are included in Russell Dec. Ex. 12, all transcripts cited are excerpted

26  in Russell Dec. Ex. 13.

27  [3]     As the Monitor will recall, MGA's counsel provided a sample of 2009 Non-Recalled Bratz Products to Mattel's counsel at the recall working group meeting on August 19, 2009.  The sample

28  consisted of:  Lil Bratz Bedroom Phone Yasmin, Lil Bratz School Time Lunch Box Jade, Lil Bratz

*(cont'd)*

## ARGUMENT

## I.   NO ORDER REQUIRES A RECALL OF ALL BRATZ PRODUCTS

### A.   The Permanent Injunction Order Does Not And Cannot Apply To The "Bratz" Name

Because the Permanent Injunction Order was issued <u>solely</u> pursuant to the authority granted in the Copyright Act, it **cannot** enjoin the use of a single word like "Bratz," because single words – as this Court has repeatedly acknowledged[4] – are not subject to copyright protection.  <u>See</u> <u>Bird v. Parsons</u>, 289 F.3d 865, 881 (6th Cir. 2002) ("Courts that have addressed this issue have concluded that taking a single word, or even a phrase, from a copyrighted work generally does not violate the rights that copyright law provides to the owner of that work."); <u>CMM Cable Rep, Inc. v. Ocean Coast Props., Inc.</u>, 97 F.3d 1504, 1519-20 (1st Cir. 1996) ("It is axiomatic that copyright law denies protection to 'fragmentary words and phrases' and to 'forms of expression dictated solely a[s] functional considerations' on the grounds that these materials do not exhibit the minimal level of creativity necessary to warrant copyright protection."); <u>Arica Inst., Inc. v. Palmer</u>, 970 F.2d 1067, 1072-73 (2d Cir. 1992) (words that the defendant copied did "not exhibit the minimal creativity required for copyright protection"): <u>see also</u> 37 C.F.R. § 202.1 ("[w]ords and

_____

Surprise Purse Cloe, Bratz Bunny Boo, Bratz Boyz Wildlife Kobe, Bratz Boyz Cowboyz Cade, Bratz Boyz Spring Break Cameron, Bratz Lil Angelz Sleepy Time Ashley, Bratz Lil Angelz Sleepy Time Trinity, Bratz Lil Angelz Pet Store Surprise Sasha, Bratz Kidz Sassy Style Cloe, Bratz Kidz Sassy Style Katia, Bratz Kidz Hair Crazy Cloe, Bratz Kidz Hair Crazy Meygan, Bratz Kidz Sleep Over Yasmin, and Bratz Kidz Sleep Over Sasha.  (Russell Dec. ¶ 18.)  MGA's counsel invited Mattel's counsel to provide a complete listing of all bases on which it objected to such products and Mattel identified only that these products bore the Bratz trademark on their packaging. (<u>Id.</u>)

[4]   <u>See</u> Ex. 9 (Court's Order Denying Mattel's Motion for Judgment As A Matter Of Law (Dkt 5273)) at 5 ("California law allows the assignment of an idea; thus, the name 'Bratz' is, by virtue of the Inventions Agreement, the Court's summary judgment order construing that Agreement, and the jury's finding regarding the origin of the name, Mattel's property (even if it was not a proper trademark at the time it was conveyed and <u>even though it is not subject to being copyrighted</u>).") (emphasis added); Dec. 3, 2008 Omnibus Order at 5 n.2 ("The parties and the Court are all equally aware that ideas are not copyrightable"); 2/11/09 Tr. 46:13-17 (court noting that "I've been saying that, I think, since well before the trial; that it doesn't make any sense to suggest that an idea such as that can somehow be copyrighted, monopolized.  I get that, and I've been saying that probably longer than anybody in this courtroom.").

1  short phrases such as names, titles, and slogans" are not subject to copyright protection).

2      Decisions from within the Ninth Circuit are legion that a word or name may not be

3  copyrighted. <u>See, e.g.</u>, <u>Trenton v. Infinity Broad. Corp.</u>, 865 F.Supp. 1416, 1426 (C.D. Cal.

4  1994) (holding single word "Loveline" as title was not subject to copyright); <u>Reed v.</u>

5  <u>Peterson</u>, 2005 WL 1522187, at *3 (N.D. Cal. June 27, 2005) (single words "tempo" and

6  "handicapping" "are not copyrightable, and Plaintiff cannot claim authorship of them");

7  <u>Fryer v. Brown</u>, 2005 WL 1871112, at *2 (W.D. Wash. Aug. 3, 2005) (granting summary

8  judgment for defendant on copyright infringement claim because "copyright law does not

9  afford [] protection to the word 'autoupholstrykits'…   Such protection falls exclusively

10  under the protections afforded by trademark law"); <u>Apple Computer, Inc. v. Microsoft</u>

11  <u>Corp.</u>, 799 F. Supp. 1006, 1036 (N.D. Cal. 1992) (name "Waste Basket" was unprotectible

12  short phrase, noting that "[a] short phrase or name might have some relevance in

13  determining the copyright in a literary work, but is merely an unprotectible aspect of a

14  visual work"); <u>Taft Television & Radio Co., Inc. v. King Broad. Co.</u>, 1986 WL 580, at *4

15  (D. Or. Sept. 10, 1986) (allowing use of word "Fantasy" to describe category of prizes in

16  competing radio contest brochures because "[w]ords and short phrases are not afforded

17  copyright protection").

18      Thus, very simply, Mattel cannot read the word "Bratz" into the scope of the

19  Permanent Injunction Order.  And, consequently, the Permanent Injunction Order, which is

20  the only order providing for a recall or impoundment, cannot be relied upon to provide a

21  basis for recalling or impounding Bratz-branded merchandise.

22      **B.**    **<u>The Constructive Trust Order Does Not And Should Not Include A Recall</u>**

23      Because the Permanent Injunction Order cannot extend to the "Bratz" name, Mattel

24  must rely on the Constructive Trust Order for any recall and impoundment provisions – and

25  such provisions are plainly and indisputably not there.   The injunctive portion of the

26  Constructive Trust Order states in its entirety:

27      The MGA Defendants, along with their respective officers, directors, principals,

28      agents, representatives, servants, employees, affiliates, successors or assigns, and

any person or entity acting on their behalf or in concert or participation with them, are HEREBY PERMANENTLY ENJOINED from (a) using the terms "Bratz" or "Jade," either alone or in combination and whether as a trademark, domain name or otherwise, in connection with the manufacture, promotion, advertising, distribution, offering for sale or sale of any goods or services anywhere in the world and (b) taking any action to preclude Mattel from using the terms "Bratz" or "Jade" in any such manner, including without limitation as a mark in connection with goods and services.

(Constructive Trust Order ¶ 4.)  There is <u>no</u> language in the Constructive Trust Order stating, much less implying, that MGA must do anything beyond ceasing its own use of the Bratz marks.

Nor should there be.  The focus of the Constructive Trust Order is not on Mattel's copyrights, like the Permanent Injunction Order, it is on Mattel's trademarks.  In trademark law, "[t]he gravamen of both an infringement and an unfair competition claim is whether the defendant has created a 'likelihood of confusion.' … Likelihood of confusion exists when consumers are likely to assume that a product or service is associated with a source other than its actual source because of similarities between the two sources' marks or marketing techniques."  <u>Shakey's Inc. v. Covalt</u>, 704 F.2d 426, 431 (9th Cir. 1983).  So long as Mattel itself is not using the Bratz name, no likelihood of confusion exists.

Although Mattel has repeatedly asserted that it will have a competing Bratz product on store shelves in January 2010, MGA has seen no evidence to support such a claim

While Mattel prevailed on its request for a permanent injunction and denial of MGA's requests for stay of the injunction orders pending appeal at least in part due to its early and consistent representations to the Court that "it is not Mattel's intention to let the Bratz brand die" (12/30/08 Tr. 33:15-16),



1

2                                                                                        11/10/08 Tr. 86:7-

3    19),

4

5

6

7

8

9

10                                                                                        MGA has

11   since attempted to learn the extent to which Mattel is planning to develop and market its

12   own line of Bratz and is awaiting Mattel's response.

13

14                        5

15        Moreover, even if it exists, Mattel cannot show that its hypothetical Bratz line will be

16   harmed by the sale of the relatively limited remaining inventory of the Non-Recalled Bratz

17   Products.

18

19

20   _____

21   5

22

23

24

25

26

27

28

MGA Parties' Statement of Position Regarding Scope Of Product Recall And Impoundment
Case No. CV 04-9049 DOC (RNBx)

**1**

**2** ████████████████████████████████ Thus, although there are a sufficient number

**3** of Non-Recalled Bratz Products in existence to create a substantial burden on MGA should

**4** they be recalled, there are not so many that they could be deemed a threat to Mattel's

**5** traditional market presence.

**6**       Courts have found that a recall is unnecessary where the quantity of infringing

**7** product to be recalled is limited and manufacturing has ceased.  In <u>Primavera Laboratories,</u>

**8** <u>Inc. v. Elizabeth Arden Co.</u>, the court, weighing the burdens and benefits of a recall on the

**9** parties, declined to order a recall of a limited amount of an infringing seasonal product,

**10** noting that "while a recall would prevent further sales of defendant's infringing and

**11** misleading product, the number of sales likely to occur this late in the season is relatively

**12** small."  1993 WL 319214, at *1 (S.D.N.Y. Aug. 13, 1993).  Moreover, the <u>Primavera</u> court

**13** noted that "[t]he decisive factor in the burden/benefit analysis is the relative scarcity of

**14** plaintiff's product in the marketplace" and since there was no indication plaintiff had a

**15** competing product "on the same shelves, competing for the same consumer dollar" which

**16** would benefit from the recall, the Court held that recall was unwarranted where "[w]hile

**17** plaintiff may wish that every No Burn No Bite bottle were removed from the shelves, by the

**18** time plaintiff could fill that vacuum the season will be over."  <u>Id.</u>; <u>see also</u> <u>TVT Records v.</u>

**19** <u>Island Def Jam Music Group</u>, 279 F. Supp. 2d 366, 408-09 (S.D.N.Y. 2003), <u>rev'd on other</u>

**20** <u>grounds</u>, 412 F.3d 82 (2nd Cir. 2005) (where there was no evidence of further

**21** manufacturing of infringing product, only a limited amount of product remained at retail,

**22** and the majority of the content of the infringing products were "original and noninfringing",

**23** recall of infringing product still in circulation was denied because "[t]he Court is not

**24** persuaded that the disruption of the marketplace and the burden and expense to IDJ that

**25** recalling and destroying the remaining infringing units represents are warranted.").

**26**       Indeed, in trademark cases, it is common for courts to allow a sell-off period rather

**27** than order a recall, particularly when the threatened harm to the trademark holder is limited.

**28** <u>See</u> <u>Attrezzi, LLC v. Maytag Corp.</u>, 436 F.3d 32, 43 (1st Cir. 2006) (affirming district

10

court's decision to allow a sell-off period, noting "there is no indication that the risk of harm to Attrezzi LLC's service mark is likely to increase appreciably because of the additional 12 months of Maytag's competing use"); <u>George Basch Co. v. Blue Coral, Inc.</u>, 968 F.2d 1532, 1542 (2d Cir. 1992) ("[W]e cannot fault the district court for allowing Blue Coral to liquidate its remaining inventory of infringing cans without requiring the defendant to account for the profits on those sales."); <u>U.S. Olympic Committee v. Olympic Supply, Inc.</u>, --- F. Supp. 2d ---, 2009 WL 2426255, at *2 (D. Md. Aug. 6, 2009) (allowing trademark infringer a sell-off period "to permit Defendant to dispose of its existing infringing inventory in a non-wasteful manner," noting that "courts have denied such grace periods only when the defendant willfully infringes on the plaintiff's trademark in a 'particularly bold' manner," citing 4 Louis Altman & Malla Pollack, <u>Callman on Unfair Competition, Trademarks & Monopolies</u> § 23.75 (4th ed.) (collecting cases)); <u>Lance Mfg., LLC v. Voortman Cookies Ltd.</u>, 617 F. Supp. 2d 424, 434 (W.D.N.C. 2009) ("In light of the relatively short time period that the infringing products will remain in the marketplace and the financial burden that Voortman would incur in removing these products, however, the Court finds that the injunction should be narrowly tailored so as to allow Voortman to sell off its available supply of cookies that are already in the marketplace-that is, on store shelves or in the possession of its distributors."); <u>see also</u> 5 J. Thomas McCarthy, <u>McCarthy on Trademarks & Unfair Competition</u> § 30:3 (4th ed.) ("Allowing such a sell-off of infringing goods avoids the wastefulness of extensive relabeling or trashing the existing stock of goods bearing an infringing mark.").

For these reasons, Mattel could not have justified requesting a recall in its original motion and cannot justify requesting a recall now. The Constructive Trust Order is properly limited by its terms – it transfers ownership of the Bratz marks and bars MGA from future use of them, but does <u>not</u> require MGA to pull its existing products from the stream of commerce. Therefore, products that fall only within the scope of the Constructive Trust Order and not the Permanent Injunction Order are **<u>not</u>** subject to recall.

### C.  The Recall Provisions Are Not Ambiguous, But Even If They Were, They Should Be Construed Against Mattel As Drafter Of The Order

As noted above, both the Constructive Trust Order and the Permanent Injunction Order are clear on their face that <u>neither</u> requires recall of the Non-Recalled Bratz Products. However, to the extent any ambiguity exists, that ambiguity should be construed against Mattel as the drafter of the proposed orders.

As a preliminary matter, Ninth Circuit law is clear that "the strong policy of clarity behind rule 65(d)", which "requires the language of injunctions to be reasonably clear so that ordinary persons will know precisely what action is proscribed," dictates that "all ambiguities or inconsistencies are resolved in favor of the person subject to the injunction." <u>U.S. v. Holtzman</u>, 762 F.2d 720, 726 (9th Cir. 1985); <u>accord</u> <u>Clark v. Coye</u>, 60 F.3d 600, 604 (9th Cir. 1995); <u>Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.</u>, 518 F. Supp. 2d 1197, 1228 (C.D. Cal. 2007) ("[A]n ordinary person reading the court's order should be able to ascertain from the document itself exactly what conduct is proscribed.") (citing 11A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, <u>Federal Practice & Procedure</u>, § 2955).

In the analogous context of contract drafting, the law is equally clear that Mattel, as drafter, should have its own language construed against it.  The Supreme Court has recognized "the common-law rule of contract interpretation that a court should construe ambiguous language <u>against the interest of the party that drafted it</u>." <u>Mastrobuono v. Shearson Lehman Hutton, Inc.</u>, 514 U.S. 52, 62 (1995) (emphasis added).  Where, as here, a party "drafted an ambiguous document . . .they cannot now claim the benefit of the doubt." <u>Id.</u> at 63.  "The reason for this rule is to protect the party <u>who did not choose the language</u> from an unintended or unfair result." <u>Id.</u>  (emphasis added) (citing Restatement (Second) of Contracts § 206, Comment a (1979): "Where one party chooses the terms of a contract, he is likely to provide more carefully for the protection of his own interests than for those of the other party. . . .Indeed, he may leave meaning deliberately obscure, intending to decide at a later date what meaning to assert. In cases of doubt, therefore, so long as other factors are

1  not decisive, <u>there is substantial reason for preferring the meaning of the other party</u>.")

2  (emphasis added)).

3      The Ninth Circuit likewise recognizes that "where a contract is reasonably

4  susceptible to more than one meaning, 'that meaning is generally preferred which operates

5  <u>against the party who supplies the words or from whom a writing otherwise proceeds</u>.'"

6  <u>Sutter Home Winery, Inc. v. Vintage Selections, Ltd.</u>, 971 F.2d 401, 406 (9th Cir. 1992);

7  <u>accord</u> <u>Miller v. U.S.</u>, 363 F.3d 999, 1005-06 (9th Cir. 2004) (construing ambiguous

8  language of bankruptcy plan provision against drafter).  Any omission by that party is thus

9  construed against him.  <u>See</u> <u>McKnight v. Torres</u>, 563 F.3d 890, 893 (9th Cir. 2009) (where

10  parties' unambiguous agreement did not contain provision plaintiff sought later to

11  implement, court held his "uncommunicated subjective intent is irrelevant").  "When

12  discerning the mutual intent of the parties, a court must take care not to substitute one

13  party's view of what the contract <u>should have said</u> for the terms that are actually contained

14  within the document."  <u>Headlands Reserve, LLC v. Ctr. For Natural Lands Mgmt.</u>,  523 F.

15  Supp. 2d 1113, 1123 (C.D. Cal. 2007) (emphasis added).

16      The Ninth Circuit and other courts have applied this reasoning in refusing to read

17  requirements into consent decrees enjoining an infringing party from further conduct where

18  the language of the decree does not so state.  <u>See</u> <u>Vertex Distrib., Inc. v. Falcon Foam</u>

19  <u>Plastics, Inc.</u>, 689 F.2d 885, 893 (9th Cir. 1982) (where language of consent decree did not

20  specifically prohibit use of single word "Falcon", court noted that "[h]ad [plaintiff] wished

21  such a limitation, <u>it should have . . . included that prohibition in the language of the consent</u>

22  <u>decree</u>" because "[w]e do not wish to rewrite the parties' 'contract' by holding, in light of

23  the purpose of only one of the parties to the consent judgment, that language which does not

24  explicitly prohibit the use of the single word 'Falcon' does in fact do so") (emphasis added);

25  <u>see also</u> <u>Janus Films, Inc. v. Miller</u>,  801 F.2d 578, 585-86 (2nd Cir. 1986) (rejecting recall

26  provision in permanent injunction drafted after settlement agreement as beyond the scope of

27  the parties' agreement, because "[i]f Janus wanted Miller to recall infringing copies of the

28  films from his distributees, in addition to ceasing distribution and paying $100,000, <u>it</u>

13

1  should have negotiated such an obligation during the settlement") (emphasis added).

2  Here, where Mattel drafted both the proposed Permanent Injunction Order and the

3  Constructive Trust Orders, which were adopted nearly verbatim by the Court, Mattel cannot

4  complain of any purported ambiguity or omission in those Orders to its own benefit in

5  expanding the scope of the recall.  Mattel's proposed interpretation of the Orders should be

6  rejected as it has only itself to blame if the Orders do not clearly elaborate relief that Mattel

7  purportedly intended to obtain.

8  **II.   MATTEL HAS NO BASIS TO MODIFY THE INJUNCTION ORDERS**

9  As shown above, the recall provisions in the Permanent Injunction Order on their face

10  unquestionably do not apply to the Non-Recalled Bratz Products described above.  And the

11  Constructive Trust Order contains no recall provisions whatsoever.  Mattel is thus seeking

12  to modify at least one existing permanent injunction, and, as outlined below, Mattel cannot

13  demonstrate that such modification is warranted.

14  Under Federal Rule of Civil Procedure 60(b), a court may modify its orders for the

15  following reasons: "(1) mistake, inadvertence, surprise, or excusable neglect;[6] (2) newly

16  discovered evidence that, with reasonable diligence, could not have been discovered in time

17  to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or

18  extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void;

19  (5) the judgment has been satisfied, released or discharged; it is based on an earlier

20  judgment that has been reversed or vacated; or applying it prospectively is no longer

21  equitable; or (6) any other reason that justifies relief."  Fed. R. Civ. P. 60.

22  "A party seeking modification or dissolution of an injunction bears the burden of

23

---

24  [6]   Any reliance on Rule 60(b)(1) by Mattel to claim the recall provisions were limited or

25  omitted by mistake or inadvertence is undermined by the fact that the Court entered Mattel's
   proposed order.  See S.E.C. v. Kirkland, 2008 WL 4491528, at *10 (M.D. Fla. Sept. 30, 2008)

26  ("The record reflects that the Court did not make a mistake, clerical or otherwise, in the order
   transferring the Summerhill Property to Austell. The Court entered the order exactly as proposed

27  by the Receiver, and the Receiver's counsel who drafted the order testified that the order stated

28  exactly what he intended it to state.") (emphasis added).

establishing that a significant change in facts or law warrants revision or dissolution of an injunction." <u>Sharp v. Weston</u>, 233 F.3d 1166, 1170 (9th Cir. 2000); <u>see also</u> <u>S.E.C. v. Coldicutt</u>, 258 F.3d 939, 942 (9th Cir. 2001) (refusing to modify permanent injunction (<u>id.</u> at 945)); <u>Bellevue Manor Assocs. v. U.S.</u>, 165 F.3d 1249, 1255 (9th Cir. 1999) (modifying permanent injunction due to change in circumstances). "Modification 'may be warranted when changed factual conditions make compliance with the decree substantially more onerous. ... Modification is also appropriate when a decree proves to be unworkable because of unforeseen obstacles, or when enforcement of the decree without modification would be detrimental to the public interest.' In addition, an order must be modified if compliance becomes legally impermissible." <u>Coldicutt</u>, 258 F.3d at 942 (citing <u>Rufo v. Inmates of the Suffolk County Jail</u>, 502 U.S. 367, 384 (1992)).[7]  "Ordinarily, however, modification should not be granted where a party relies upon events <u>that actually were anticipated</u> at the time it entered into a decree."  <u>Rufo</u>, 502 U.S. at 385 (emphasis added).

The Ninth Circuit agrees that modification under Rule 60 is improper where the moving party "anticipated a significant change in factual conditions[.]"  <u>U.S. v. Asarco Inc.</u>, 430 F.3d 972, 976 (9th Cir. 2005) (refusing to modify "unambiguous language" of consent decree where the party seeking modification "had 'ample opportunity to propose incorporation' of a provision in the decree prohibiting or limiting the EPA from superfunding the area outside the Box") (<u>id.</u> at 982-83); <u>see also</u> <u>Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.</u>, 2008 WL 4647384, at *8 (N.D. Cal. Oct. 20, 2008) (citing <u>Rufo</u> and noting party seeking modification "bears a heavy burden to demonstrate that there is a significant factual or legal change which warrants a modification of the injunction"

---

[7]     While the <u>Rufo</u>, <u>Bellevue Manor</u> and <u>Coldicutt</u> courts were considering a motion brought under Rule 60(b)(5), courts routinely apply the <u>Rufo</u> standard to motions brought under the various provisions of Rule 60(b). See <u>Jeff D. v. Kempthorne</u>, 365 F.3d 844, 851 (9th Cir. 2004) (applying standard in denying Rule 60(b) (5) and (6) motions to vacate consent decree); <u>U.S. v. Angle</u>, 2009 WL 347749, at *3 (E.D. Cal. Feb. 11, 2009) (in addressing gamut of Rule 60 provisions, quoting <u>Rufo</u> that the "party seeking modification of a consent decree bears the burden of establishing that a significant change in circumstances warrants revision of the decree.")

1  where party was aware of expiration date of patent at issue when consent decree was
2  entered).

3      Significantly, <u>unlike</u> the procedural posture of the cases cited above, where the
4  enjoined party was seeking to modify restrictions placed upon it in a consent decree <u>it had</u>
5  <u>negotiated</u> with the plaintiff, MGA had no such opportunity to participate in the drafting of
6  the injunctions in this case.  Here, <u>Mattel</u> drafted its request for injunction and constructive
7  trust fully aware of the Non-Recalled Bratz Products.  Mattel can thus point to no changes
8  in circumstances warranting a modification of the orders enjoining MGA to include the
9  Non-Recalled Bratz Products in the court-ordered recall – especially when Mattel, not MGA,
10  drafted the orders in the first place.

11      Further, "it is quite obvious that the requested clarification or modification must be
12  consistent with the Court's prior findings."  <u>Echostar Satellite Corp. v. NDS Group PLC</u>,
13  2008 WL 5116513, at *2 (C.D. Cal. Dec. 4, 2008).  Thus, where, as here, a request for
14  modification "goes beyond the language of the Injunction, rather than clarifying it," the
15  court must refuse to modify the injunction accordingly.  <u>Id.</u> at *4 (refusing to modify
16  injunction to add plaintiff's requested language because "there is no reason to change-rather
17  than merely clarify-this language at this juncture").  As demonstrated above, the Court not
18  only did <u>not</u> require a recall of products bearing the Bratz name in either the Permanent
19  Injunction Order or the Constructive Trust Order, but it deliberately <u>narrowed</u> the scope of
20  products subject to recall to exclude dolls like the Non-Recalled Bratz Products.  It would
21  be wholly inconsistent with the Court's findings underlying the entry of the Orders,
22  therefore, to extend the scope of the recall to those products.

23  ### III.  IMPOUNDMENT OF TOOLING SHOULD BE FURTHER LIMITED

24      The Permanent Injunction Order requires that the MGA Parties deliver to Mattel "all
25  plates, molds, matrices and other means of making" (collectively referred by the shorthand
26  "tooling") for the products subject to the injunction.  (Permanent Injunction Order ¶ 3.)  As
27  discussed above, impoundment applies only to tooling for items within the scope of the
28  Permanent Injunction Order, not the Constructive Trust Order.  In addition, impoundment

1   should be limited to only to tooling that is <u>exclusive</u> to the infringing dolls and packaging.

2           As explained in the Court's Omnibus Order, the Court's basis for ordering

3 impoundment was rooted in the statutory language of the Copyright Act: "[i]mpoundment

4 of existing infringing products and the destruction of the means to make those products are

5 clearly remedies contemplated by the Copyright Act. <u>See</u> 17 U.S.C. § 503(a)."  (Dec. 3,

6 2008 Omnibus Order at 14.)   Section 503(a) provides that "At any time while an action

7 under this title is pending, the court may order the impounding, on such terms as it may

8 deem reasonable … of all copies or phonorecords <u>claimed to have been made or used in</u>

9 <u>violation of the exclusive right of the copyright owner</u>; [and] of all plates, molds, matrices,

10 masters, tapes, film negatives, or other articles <u>by means of which such copies or</u>

11 <u>phonorecords may be reproduced</u> …"  <u>See</u> 17 U.S.C. § 503(a)(1)(A-B) (emphasis added).

12           However, the "means of making" the Bratz products identified in the Permanent

13 Injunction Order encompasses a number of items besides means of making the infringing

14 sculpts or packaging.  There are vast computer files detailing the designs and patterns for

15 each portion of the packaging, masks for painting the dolls' faces, patterns for the dolls'

16 clothing, molds for the dolls shoes and handbags and various other accessories, and so on.

17 It is MGA's position that the impoundment provision should not extend to tooling for

18 components of the enjoined products that are not themselves infringing, as this tooling may

19 be re-purposed within the company to another brand or non-infringing product.   For

20 example, patterns for Bratz fashions and accessories may be revamped to fit another, non-

21 infringing, doll.  Mattel has never claimed the fashions or accessories infringed any Mattel

22 intellectual property, and thus requiring MGA to turn over these patterns to Mattel would be

23 outside the scope of Section 503(a)'s authorization.[8]

24           Moreover, requiring MGA to turn over the means of making non-infringing

25 components would be unfairly punitive.  In issuing a permanent injunction, "a district court

26

27   [8]       As discussed at length above, any ambiguity on this point should be interpreted against the

28 drafter of Permanent Injunction Order – namely, Mattel.

1  should only include injunctive terms that have a common sense relationship to the needs of

2  the specific case, and the conduct for which a defendant has been held liable." <u>MGM</u>

3  <u>Studios, Inc.</u>, 518 F. Supp. 2d at 1226-27.   The reason for this is clear: injunctions are

4  "designed to deter, not to punish."   <u>Rondeau v. Mosinee Paper Corp.</u>,   422 U.S. 49, 61

5  (1975); <u>accord</u> <u>Loya v. I.N.S.</u>, 583 F.2d 1110, 1114 (9th Cir. 1978) ("Injunctive relief is

6  designed to deter future misdeeds, not to punish for past conduct").   Ninth Circuit courts

7  considering requests to permanently enjoin infringing conduct likewise recognize that "an

8  injunction may deter future harm, but it may not punish."   <u>Hynix Semiconductor Inc. v.</u>

9  <u>Rambus Inc.</u>, 609 F. Supp. 2d 951, 969 (N.D. Cal. 2009) (refusing to grant injunction in

10  light of "the court's firm conviction that Rambus's motive in seeking an injunction is not to

11  prevent irreparable harm but either (a) to increase its leverage in negotiating an ongoing

12  license with Hynix or (b) to punish Hynix out of spite for its decision to contest Rambus's

13  infringement allegations and over a variety of other grievances" (<u>id.</u> at 985)); <u>accord</u> <u>MDY</u>

14  <u>Indus., LLC v. Blizzard Entm't, Inc.</u>, 2009 WL 649719, at *1 (D. Ariz. Mar. 10, 2009)

15  (citing <u>Rondeau</u>).  MGA should not be made to replace tooling for components that are not

16  infringing at its own expense – there was nothing wrongful about the components that the

17  tooling was used to make.

18  ## <u>CONCLUSION</u>

19          For the foregoing reasons, the MGA Parties respectfully submit that Mattel's request

20  to expand the scope of the recall of Bratz products should be denied and the impoundment

21  of the "means of making" Bratz be narrowly circumscribed.

22

23  DATED:  September 28, 2009      SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

24

25                              By:  _____/s/ Thomas J. Nolan_____

26                                          Thomas J. Nolan

27                                    Attorneys for the MGA Parties

28