EXHIBIT 1

REDACTED

# EXHIBIT 2

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  michaelzeller@quinnemanuel.com
  Jon D. Corey (Bar No. 185066)
  joncorey@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with<br>CV 04-09059<br>CV 05-2727 |
| vs. | |
| MATTEL, INC., a Delaware corporation, | **MATTEL, INC.'S NOTICE OF MOTION AND MOTION FOR:** |
| Defendant. | **(1) CONSTRUCTIVE TRUST;** |
| | **(2) FINDING OF LIABILITY AND INJUNCTIVE RELIEF UNDER CAL. BUS. & PROF. CODE § 17200; AND** |
| AND CONSOLIDATED ACTIONS | |
| | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| | [Declaration of Scott B. Kidman and Proposed Order filed concurrently] |
| | Date: November 10, 2008<br>Time: 1:00 p.m.<br>Place: Courtroom 1 |
| | **Phase 1:**<br>Trial Date: May 27, 2008 |

07209/2643823.7

Exhibit 2, Page 46

1     TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2          PLEASE TAKE NOTICE that at 1:00 p.m. on November 10, 2008, or as soon

3 thereafter as counsel may be heard in Courtroom 1 of the above-captioned Court

4 located at 3470 Twelfth Street, Riverside, California, before the Honorable Stephen

5 G. Larson, Mattel, Inc. ("Mattel") will, and hereby does, move the Court for:

6          (1) the imposition of a constructive trust in favor of Mattel on all rights to

7 trademarks, service marks and domain names held by MGA Entertainment, Inc.

8 ("MGA") or Isaac Larian, or any person or entity acting on their behalf or for their

9 benefit, anywhere in the world that include the terms "Bratz" or "Jade," including

10 all such trademark registrations and trademark applications (including, without

11 limitation, United States Trademark Registrations identified by Registration Nos.

12 3206114, 3327385, 3150045, 3087710, 3055465, 3072141, 3127890, 3024713,

13 2989052, 2911097, 3080450, 2921772, 3071614, 2803235, 2848386, 2795675,

14 2776558, 2848281, 2751890, 2671473, 2787942, 2789216 and 2836780 and United

15 States Trademark Applications identified by Serial Nos. 78530196, 78571028,

16 78706504, 78706502, 78819868, 78857100, 78490324, 77443372 and 77575881),

17 and the good will inhering therein, as well as all such domain name registrations,

18 and an order effecting the transfer thereof;

19          (2)   an order requiring MGA and Isaac Larian to promptly (a) identify all

20 trademark registrations and applications held by them, or any person or entity acting

21 on their behalf or for their benefit, anywhere in the world that include the terms

22 "Bratz" or "Jade," (b) identify all marks that include the terms "Bratz" or "Jade" in

23 which they, or any person or entity acting on their behalf or for their benefit, claim

24 to own trademark rights, whether or not such marks are subject to existing

25 trademark registrations or pending trademark applications, (c) identify all domain

26 names and domain name registrations held by them, or any person or entity acting

27 on their behalf or for their benefit, anywhere in the world that include the terms

28 "Bratz" or "Jade," and (d) execute any and all documents necessary to effect the

transfer and/or assignment of such marks and domain names and associated applications and registrations to Mattel;

(3) a finding that MGA, MGA Entertainment (HK) Ltd., Isaac Larian and Carter Bryant[1] violated <u>California Business and Professions</u> Code § 17200 and are liable to Mattel on its twelfth claim for relief; and

(4) an injunction permanently enjoining MGA, MGA Entertainment (HK) Ltd., Isaac Larian and Carter Bryant, their officers, directors, principals, agents, representatives, servants, employees, successors or assigns, and any person or entity acting on their behalf or in concert or participation with them, from (a) using the terms "Bratz" or "Jade," either alone or in combination and whether as a trademark or otherwise, in connection with the manufacture, promotion, advertising, distribution, offering for sale or sale of any goods or services anywhere in the world and (b) taking any action to preclude Mattel from using the terms "Bratz" or "Jade" in any such manner, including without limitation as a mark in connection with goods and services.

This Motion is brought pursuant to the Court's prior rulings and the jury verdicts rendered in Phase 1(a) and Phase 1(b) of this action, 17 U.S.C. §§ 502(a) and 503(a), 28 U.S.C. § 2201, Fed. R. Civ. Proc. 57 and 64(b), <u>Cal. Bus. & Prof. Code</u> § 17200 and general principles of equity.

This Motion is based on this Notice of Motion and Motion, the Declaration of Scott B. Kidman filed concurrently herewith, the trial record and all other records and files of this Court, all matters of which the Court may take judicial notice, and any other evidence and argument as may be presented at the hearing on the Motion.

---

[1] By Order dated May 23, 2008, Bryant is bound by all declarations, injunctions and other rulings of this Court.

1                         **<u>Statement of Rule 7-3 Compliance</u>**

2         Counsel for Mattel and defendants met and conferred regarding the issues

3 presented by this Motion on September 17, 2008.

4

5 DATED:  September 29, 2008      QUINN EMANUEL URQUHART OLIVER &

6                                     HEDGES, LLP

7

8                          By /s/ Michael T. Zeller

9                            Michael T Zeller

10                            Attorneys for Mattel, Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07209/2643823.7

-3-

Exhibit 2, Page 49

MATTEL, INC.'S MOTION FOR CONSTRUCTIVE TRUST AND INJUNCTIVE RELIEF

# <u>TABLE OF CONTENTS</u>

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES...................................................1

PRELIMINARY STATEMENT ........................................................................................1

STATEMENT OF FACTS .................................................................................................2

ARGUMENT .....................................................................................................................5

I.   MATTEL IS ENTITLED TO A CONSTRUCTIVE TRUST OVER
     THE BRATZ AND JADE TRADEMARKS ............................................................5

     A.   Constructive Trusts Extend To All Benefits Obtained From The
          Wrongful Acquisition And Use Of Property That Belongs To
          Another..........................................................................................................5

     B.   The Elements For The Imposition Of A Constructive Trust Are
          Satisfied Here ...............................................................................................6

     C.   Absent A Constructive Trust Over The Bratz And Jade
          Trademarks, MGA Will Retain The Benefit From Its Wrongful
          Conduct .........................................................................................................8

     D.   MGA's Subsequent Acquisition Of A Single, Narrow Trademark
          Registration From A Third Party Does Not Defeat Mattel's Right
          To A Constructive Trust ..........................................................................10

II.  MGA ENGAGED IN UNLAWFUL BUSINESS PRACTICES AND
     THE COURT SHOULD ENJOIN MGA'S USE OF THE "BRATZ"
     AND "JADE" NAMES ...............................................................................................12

     A.   MGA Has Violated The Unfair Competition Law ..............................12

     B.   The Court Should Enjoin MGA From Using The Names "Bratz"
          Or "Jade"...................................................................................................14

CONCLUSION................................................................................................................16

Exhibit 2, Page 50

MATTEL, INC.'S MOTION FOR CONSTRUCTIVE TRUST AND INJUNCTIVE RELIEF

Case 2:04-cv-09049-DOC-RNB Document 6889-3 Filed 09/28/09 Page 9 of 133 Page ID
Case 2:04-cv-09049-SGL-RNB Document 4305 Filed 09/29/2008 Page 6 of 25
#:228488

# TABLE OF AUTHORITIES

**Page**

## Cases

Allied North Am. Ins. Brokerage Corp. of Cal. v. Woodruff-Sawyer,
   2005 WL. 2354119 (N.D. Cal. Sept. 26, 2005)..................................................... 13

Bancroft-Whitney Co. v. Glen,
   64 Cal. 2d  327, 332 (1966)..................................................................................13

Bank of the West v Superior Court,
   2 Cal. 4th 1254 (1992).........................................................................................15

Barquis v. Merchants Collection Ass'n,
   7 Cal. 3d 94 (1972).............................................................................................12

Beilstein-Institut Zur Forderung Der Chemischen Wissenschaften v.
   MDL Info. Sys., Inc.,
   2006 WL. 3218719 (N.D. Cal. Nov. 7, 2006)......................................................12

Benson v. Kwikset Corp.,
   152 Cal. App. 4th 1254 (2007).............................................................................14

Blue Cross & Blue Shield Ass'n v. Group Hosp. & Med. Servs.,
   744 F. Supp. 700 (E.D. Va. 1990).........................................................................7

Brockey v. Moore,
   107 Cal. App. 4th 86 (2003)................................................................................13

Burlesci v. Petersen,
   68 Cal. App. 4th 1062 (1998).................................................................................5

CRST Van Expedited, Inc. v. Werner Enterprises, Inc.,
   479 F.3d 1107 (9th Cir. 2007)..............................................................................13

Calistoga Civic Club v. City of Calistoga,
   143 Cal. App. 3d 111 (1983)..................................................................................6

Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.,
   20 Cal. 4th 163 (1999)................................................................................... 12, 14

Columbia Nastri & Carta Carbone S/p/A v. Columbia
   Ribbon & Carbon Mfg. Co.,
   367 F.2d 308 (2d Cir. 1966)...................................................................................7

Corporate Express Office Prods, Inc. v. Martinez,
   2002 WL. 31961458 (C.D. Cal. Mar. 8, 2002).....................................................15

Cortez v. Purolator Air Filtration Prods. Co.,
   23 Cal. 4th 163 (2000)..........................................................................................14

MATTEL, INC.'S MOTION FOR CONSTRUCTIVE TRUST AND INJUNCTIVE RELIEF

County of San Bernardino v. Walsh
158 Cal. App. 4th 533 (2007) .................................................................. 6, 9

Courtesy Temp. Serv., Inc. v. Camacho,
222 Cal. App. 3d 1278 (1990) ...................................................................... 15

GAB Bus. Servs. Inc. v. Lindsey & Newsom Claim Servs., Inc.,
83 Cal. App. 4th 409 (2000) .......................................................................... 13

GHK Assocs. v. Mayer Group, Inc.,
224 Cal. App. 3d 856 (1990) ............................................................................ 5

Gladstone v. Hillel,
203 Cal. App. 3d 977 (1988) ..................................................................... 9, 16

Haskel Engineering & Supply Co. v. Hartford Acc. & Indem. Co.,
78 Cal. App. 3d 371 (1978) ......................................................................... 6, 9

Heckmann v. Ahmanson,
168 Cal. App. 3d 119 (1985) ................................................................. 5, 6, 9

Iconix, Inc. v. Tokuda,
457 F. Supp. 2d 969 (N.D. Cal. 2006) ................................................... 13, 15

Juarez v. Arcadia Fin. Ltd.,
152 Cal. App. 4th 889 (2007) ........................................................................ 15

Klamath-Orleans Lumber, Inc. v. Miller,
87 Cal. App. 3d 458 (1978) ........................................................................... 15

Lurzer GMBH v. Am. Showcase, Inc.,
75 F. Supp. 2d 98 (S.D.N.Y. 1998) ................................................................. 7

Martin v. Kehl,
145 Cal. App. 3d 228 (1983) ........................................................................... 6

Mazzera v. Wolf,
30 Cal. 2d 531 (1947) ...................................................................................... 6

Online Partners.com, Inc. v. Atlanticnet Media Corp.,
2000 WL. 101242 (N.D. Cal. Jan. 20, 2000) ................................................... 7

Readylink Healthcare v. Cotton,
126 Cal. App. 4th 1006 (2005) ...................................................................... 15

Warren v. Merrill,
143 Cal. App. 4th 96 (2006) ............................................................................. 5

Weiss v. Marcus,
51 Cal. App. 3d 590 (1975) .......................................................................... 5, 6

Exhibit 2, Page 52

MATTEL, INC.'S MOTION FOR CONSTRUCTIVE TRUST AND INJUNCTIVE RELIEF

Case 2:04-cv-09049-DOC-RNB Document 6889-3 Filed 09/28/09 Page 11 of 133 Page ID
Case 2:04-cv-09049-SGL-RNB Document 4305 Filed 09/29/2008 Page 3 of 25
#:228490

1

## **Statutes**

Cal. Bus. & Prof. Code § 17200 ................................................................ 2, 12, 14, 15

Cal. Bus. & Prof. Code § 17203 ........................................................................ 14

Cal. Civ. Code § 3336 ...................................................................................... 13

## **Other Authorities**

California Civil Jury Instructions (BAJI) § 12.99 (Fall ed. 2008) ............................ 14

California Unfair Competition & Business Torts § 2.09 [1] (8th ed. 2008) ............ 13

Dan B. Dobbs, Law of Remedies § 4.3(2) (2d ed. 1993).............................5, 7

Anne Gilson LaLonde & Jerome Gilson,
    Gilson on Trademarks § 10.02 (2008) .........................................................8

Restatement of Restitution § 201 ........................................................................ 6

Restatement of Restitution § 201(2) .............................................................9, 15

Exhibit 2, Page 53

MATTEL, INC.'S MOTION FOR CONSTRUCTIVE TRUST AND INJUNCTIVE RELIEF

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### **Preliminary Statement**

This Court should impose a constructive trust for Mattel's benefit on the Bratz and Jade marks, order that the rights in the marks be transferred to Mattel and enjoin MGA from further use of the Bratz and Jade names and marks.

As the jury found, Bryant was a Mattel employee when he conceived of the "Bratz" name for the doll designs, concepts and characters that he also created while a Mattel employee. The jury further found that Bryant conceived the original Bratz character "Jade"—which is also an individual doll name disclosed to and used by MGA—and three other characters while he was a Mattel employee. Bryant not only had assigned the rights to the "Bratz" and "Jade" names (and other Bratz-related property) to Mattel under his Inventions Agreement, but those names constituted part of Mattel's proprietary, confidential information that this Court has ruled Bryant had a fiduciary duty to protect. In violation of his duties to Mattel, Bryant disclosed and purported to transfer the names and other Bratz-related properties to MGA. As the jury found, MGA and Isaac Larian knowingly aided and abetted Bryant in his breach of duties to Mattel.

Mattel is entitled to the return of the benefits MGA received from its tortious conduct, including any and all trademark rights in the "Bratz" and "Jade" names. The law has long recognized that where, as here, a party obtains information through the commission of a tort, that party holds in constructive trust for the rightful owner all benefits obtained from the use of that information. Indeed, "[w]here a fiduciary in violation of his duty to the beneficiary communicates confidential information to a third person, the third person, if he had notice of the violation of duty, holds upon a constructive trust for the beneficiary any profit which he makes *through the use of such information*." RESTATEMENT OF RESTITUTION § 201 (emphasis added). Trademark rights are no exception. In fact, anything short

MATTEL, INC.'S MOTION FOR CONSTRUCTIVE TRUST AND INJUNCTIVE RELIEF

Case 2:04-cv-09049-DOC-RNB Document 6889-3-05 Filed 09/28/09 Page 13 of 133 Page ID
Case 2:04-cv-09049-SGL-RNB Document 4305 Filed 09/29/2008 Page 10 of 25
#:228492

1  of a constructive trust over the Bratz and Jade marks will not restore Mattel to its
2  original position because MGA will undoubtedly assert that it is able to prevent
3  Mattel—the rightful owner of the "Bratz" and "Jade" names—from using those
4  names in any meaningful way.

5       Furthermore, the jury's verdict entitles Mattel to a finding of liability on its
6  claim for violation of § 17200 of the <u>California Business and Professions Code</u>.
7  California's Unfair Competition Law expressly authorizes the Court to enjoin
8  MGA's continued exploitation of the confidential information it took from Mattel.
9  Pursuant to that authority, the Court should enjoin MGA from any continued use of
10  the "Bratz" and "Jade" names.  Absent such relief, Mattel will not be made whole,
11  and MGA will continue to enjoy—unjustly and at Mattel's expense—the rewards of
12  its wrongful conduct.

## **Statement of Facts**

14       **Mattel's ownership and MGA's wrongful acquisition of the "Bratz" and**
15  **"Jade" names**.  In Phase 1(a), the jury unanimously found that Carter Bryant
16  created Bratz-related ideas, concepts, drawings, designs and other works while he
17  was employed by Mattel.[2]  These included Bratz design drawings, sculpt drawings,
18  three-dimensional models as well as the "Bratz" name itself.[3]  They also included
19  the original four Bratz characters—including one named "Jade"—which the jury
20  found Bryant conceived while employed by Mattel.[4]  Bryant described these
21  characters in his original pitch to MGA and disclosed them to MGA in
22  contravention of his duties to Mattel.[5]  As the Court has already ruled, as a matter of

---

24  [2]  Phase 1A Verdict, Question Nos. 1-6, Declaration of Scott B. Kidman dated
25  September 29, 2008 ("Kidman Dec."), Exh. A.

     [3]  <u>Id.</u>
26  [4]  <u>Id.</u> at Question No. 5.

27  [5]  Trial Exh. 302 (Bryant's Pitch Book), Kidman Dec., Exh. B.  Each of the four
     Bratz characters Bryant pitched to MGA was made into a corresponding doll.  The
28       (footnote continued)

 1   law, Mattel is the rightful owner of each and every one of these inventions,

 2   including the "Bratz" and "Jade" names and characters, under the Employee

 3   Confidential Information and Inventions Agreement (the "Inventions Agreement")

 4   between Bryant and Mattel.[6]

 5        Bryant owed Mattel a fiduciary duty under the Inventions Agreement not to

 6   disclose the "Bratz" and "Jade" names or other proprietary information.[7]  Bryant

 7   also owed Mattel a duty of loyalty not to knowingly act against Mattel's interests

 8   while he was employed by Mattel.[8]  The jury necessarily found that Bryant breached

 9   his fiduciary duty and duty of loyalty to Mattel.[9]  Indeed, the Court ruled as a matter

10   of law that Bryant breached his duty of loyalty by entering into a contract with

11   MGA, while he was still a Mattel employee, to produce the Bratz line of fashion

12   dolls.[10]  Moreover, it is beyond dispute that Bryant disclosed to MGA while he was

13   a Mattel employee the "Bratz" and "Jade" names and other proprietary Bratz

14   information upon which Bratz dolls and other Bratz products were based.

---

Zoe character became the Cloe doll, the Lupe character became the Yasmin doll, the Hallidae character became the Sasha doll, and the Jade character became the Jade doll.

[6]   Order dated April 25, 2008 Granting in Part, Denying in Part, and Deferring in Part the Parties' Motions for Partial Summary Judgment ("April 25, 2008 Order") at 5, Kidman Dec., Exh. C; Trial Exh. 25 (Inventions Agreement) at ¶ 2(a), Kidman Dec., Exh. D.

[7]   April 25, 2008 Order at 5, Kidman Dec., Exh. C; Trial Exh. 25 (Inventions Agreement) at ¶ 1(a), Kidman Dec., Exh. D.

[8]   April 25, 2008 Order at 5, Kidman Dec., Exh. C; Phase 1A Final Jury Instructions As Given, Instruction No. 27, Kidman Dec., Exh. E; Trial Exh. 25 (Inventions Agreement) at ¶ 3, Kidman Dec., Exh. D.

[9]   Phase 1A Final Jury Instructions as Given, Instruction Nos. 26 and 27, Kidman Dec., Exh. E; Phase 1A Verdict, Question Nos. 9 and 11, Kidman Dec., Exh. A.

[10]   April 25, 2008 Order at 5, Kidman Dec., Exh. C; Phase 1A Final Jury Instructions as Given, Instruction No. 28, Kidman Dec., Exh. E.

It is also beyond dispute at this juncture that MGA was no innocent bystander in this course of illegal conduct. The jury found that MGA and Isaac Larian aided and abetted Bryant's breach of his fiduciary duty, aided and abetted Bryant's breach of his duty of loyalty and tortiously interfered with Bryant's contractual duties to Mattel.[11]

**MGA's trademark rights in the "Bratz" and "Jade" names**. MGA used the wrongfully disclosed and acquired "Bratz" and "Jade" names to obtain trademark rights in the United States and abroad. Those rights purport to prevent Mattel—the rightful owner of the names—and others from using those terms in connection with dolls and other product categories. Presently, MGA professes to own no fewer than 23 trademark registrations that include the term "Bratz" in the United States alone.[12] Further, MGA has applications pending before the United States Patent and Trademark Office for at least nine more Bratz trademarks.[13]

MGA's public statements following the jury's verdicts in phase 1A and 1B make it clear that MGA intends to continue to use and claim ownership of the wrongfully acquired "Bratz" name and associated trademark rights therein.[14] In fact, as recently as last week, MGA applied for yet another trademark registration that includes the term "Bratz."[15] MGA also continues to sell dolls and other products using the terms "Bratz" and "Jade."

---

[11] Phase 1A Verdict, Question Nos. 7-12, Kidman Dec., Exh. A.
[12] Kidman Dec. at ¶ 7, Exh. F.
[13] Id. at ¶ 8, Exh. G. In addition, MGA claims to own and uses numerous domain names that include the term "Bratz," including "bratz.com, "be-bratz.com" and "bratzpetz.com." Id., Exh. J.
[14] Id., Exh. K.
[15] Id., Exh. O.

<u>**Argument**</u>

**I.**     <u>**MATTEL IS ENTITLED TO A CONSTRUCTIVE TRUST OVER THE BRATZ AND JADE TRADEMARKS**</u>

      **A.**     <u>**Constructive Trusts Extend To All Benefits Obtained From The Wrongful Acquisition And Use Of Property That Belongs To Another**</u>

A constructive trust is an equitable remedy that may be imposed in a wide variety of circumstances to prevent a defendant from retaining the benefits of its wrongful conduct. See <u>Burlesci v. Petersen</u>, 68 Cal. App. 4th 1062, 1069 (1998) ("The essence of the theory of constructive trust is to prevent unjust enrichment and to prevent a person from taking advantage of his or her wrongdoing."); <u>Weiss v. Marcus</u>, 51 Cal. App. 3d 590, 600 (1975) ("[A] constructive trust may be imposed in practically any case where there is a wrongful acquisition or detention of property to which another is entitled.") (citation omitted); <u>see also</u> Dan B. Dobbs, LAW OF REMEDIES § 4.3(2) (2d ed. 1993) at 589-90 ("The constructive trust might be imposed on any identifiable kind of property or entitlement in the defendant's hands if, in equity and conscience, it belongs to the plaintiff.").

California courts routinely employ constructive trusts to prevent defendants from retaining benefits obtained through the commission of torts like those for which the jury found MGA liable here. See <u>GHK Assocs. v. Mayer Group, Inc.</u>, 224 Cal. App. 3d 856, 878 (1990) (imposing constructive trust to remedy intentional interference with contract and noting "[t]he trial court in this case found that appellants had conspired to deprive GHK of its rights under the agreements and its profit interest in the Project. Accordingly, the trial court acted well within its discretion in imposing a constructive trust on those profits for the benefit of GHK."); <u>Heckmann v. Ahmanson</u>, 168 Cal. App. 3d 119, 135 (1985) (finding constructive trust to be appropriate remedy for aiding and abetting breach of fiduciary duty); <u>see also</u> <u>Warren v. Merrill</u>, 143 Cal. App. 4th 96, 113 (2006) ("A

1  constructive trust may be imposed when a party has acquired property to which he is

2  not justly entitled, if it was obtained by actual fraud, mistake or the like, or by

3  constructive fraud through the violation of some fiduciary or confidential

4  relationship.") (citing <u>Mazzera v. Wolf</u>, 30 Cal. 2d 531, 535 (1947)).

5        Moreover, in order to prevent unjust enrichment, it is well established that a

6  constructive trust extends not only to the wrongfully acquired property but to all

7  benefits obtained from the use of that property.  Thus, for example, "[w]here a

8  fiduciary in violation of his duty to the beneficiary communicates confidential

9  information to a third person, the third person, if he had notice of the violation of

10 duty, holds upon a constructive trust for the beneficiary any profit which he makes

11 through the use of such information."  RESTATEMENT OF RESTITUTION § 201; <u>see</u>

12 <u>also</u> <u>County of San Bernardino v. Walsh</u>, 158 Cal. App. 4th 533, 543 (2007)

13 ("Active participants in the breach of fiduciary duty by another are accountable for

14 all advantages they gained thereby."); <u>Heckmann</u>, 168 Cal. App. 3d at 135

15 (imposing constructive trust on amounts wrongfully acquired together with income

16 earned on those amounts to prevent defendant from being rewarded for

17 wrongdoing); <u>Haskel Engineering & Supply Co. v. Hartford Acc. & Indem. Co.</u>, 78

18 Cal. App. 3d 371, 375-76 (1978) (constructive trust extends to profits made on

19 wrongfully acquired funds to prevent unjust enrichment).

20        **B.**   **The Elements For The Imposition Of A Constructive Trust Are**

21            **Satisfied Here**

22        To obtain a constructive trust, a plaintiff generally must show (1) the

23 existence of a *res* (property or some interest in property); (2) its *right* to that res; and

24 (3) some *wrongful* acquisition or detention of the *res* by another party who is not

25 entitled to it.  <u>Martin v. Kehl</u>, 145 Cal. App. 3d 228, 237-38 (1983); <u>Calistoga Civic</u>

26 <u>Club v. City of Calistoga</u>, 143 Cal. App. 3d 111, 116 (1983); <u>Weiss</u>, 51 Cal. App. 3d

27 at 600.  These elements are general considerations to guide a court, not firm rules.

28 <u>Martin</u>, 145 Cal. App. 3d at 237 ("In order to provide the necessary flexibility to

1  apply an equitable doctrine to individual cases, these sections state general

2  principles for a court's guidance rather than restrictive rules.") (citation omitted).

3      Each of these elements is satisfied here. First, trademark rights constitute an

4  interest in property or entitlement over which a constructive trust may be imposed.

5  See Dobbs, supra § 4.3(2) ("The asset may be an intangible entitlement such as a

6  trademark."); Columbia Nastri & Carta Carbone S/p/A v. Columbia Ribbon &

7  Carbon Mfg. Co., 367 F.2d 308, 311 (2d Cir. 1966) (transferring wrongfully

8  acquired trademark through a constructive trust); Lurzer GMBH v. Am. Showcase,

9  Inc., 75 F. Supp. 2d 98, 106 (S.D.N.Y. 1998) (same); Blue Cross & Blue Shield

10  Ass'n v. Group Hosp. & Med. Servs., 744 F. Supp. 700, 720-21 (E.D. Va. 1990),

11  aff'd without opinion, 911 F.2d 720 (4th Cir. 1990) (same). So, too, do domain

12  names. See Online Partners.com, Inc. v. Atlanticnet Media Corp., 2000 WL

13  101242, at *10 (N.D. Cal. Jan. 20, 2000) (transferring wrongfully acquired domain

14  name through a constructive trust).

15      As to the second and third elements, MGA cannot contest that it wrongfully

16  acquired the "Bratz" and "Jade" names that belonged to Mattel as part of the Bratz

17  project Bryant conceived and created while a Mattel employee. The jury

18  unanimously found that Bryant conceived the name "Bratz," conceived the "Jade"

19  character and created other Bratz-related inventions while he was employed by

20  Mattel. Under his Inventions Agreement, Bryant had fiduciary and contractual

21  duties not to disclose to MGA the Bratz-related inventions that he created during his

22  Mattel employment.[16] He nevertheless breached those duties by disclosing to MGA

23

24  _____

25  [16] Trial Ex. 25 (Inventions Agreement) at ¶ 1, Kidman Dec., Exh. D; April 25, 2008 Order at 5, Kidman Dec., Exh. C; Phase 1A Final Jury Instructions As Given,

26  Instruction No. 28, Kidman Dec., Exh. E. The Court also has ruled as a matter of law that under the Inventions Agreement Mattel owns all Bratz-related inventions,

27  including any designs, improvements, ideas, concepts, and copyrightable subject

28  (footnote continued)

the "Bratz" and "Jade" names and other aspects of the Bratz project he conceived and created while a Mattel employee. As the jury found, MGA knowingly interfered with and aided and abetted Bryant's breaches of those duties. MGA accordingly cannot dispute that its receipt, acquisition and use of the Bratz-related inventions created by Bryant during his employment by Mattel was wrongful.

**C.**   **Absent A Constructive Trust Over The Bratz And Jade Trademarks, MGA Will Retain The Benefit From Its Wrongful Conduct**

The jury's verdict establishes that MGA's theft of the terms "Bratz" and "Jade." Mattel is entitled to all benefits MGA obtained as a result of its wrongful conduct. The Bratz and Jade marks are one such benefit.

In the United States, trademark rights are obtained by use of the mark in commerce in connection with the sale or offering of goods or services. MGA's use of the "Bratz" and "Jade" names to establish trademarks is merely an example of MGA's improper use of property that belongs to Mattel. It is part of the very wrongful conduct for which MGA is liable. That wrongful use entitles Mattel to a constructive trust over the resulting trademark rights.[17]

Even if MGA's use of the "Bratz" and "Jade" names were not itself part of MGA's wrongful conduct—and it clearly is—Mattel is still entitled to a constructive trust over marks including the term "Bratz" or "Jade" because they represent benefits from use of the wrongfully taken property. As set forth above, a

_____

matter, created by Bryant during the period of his employment with Mattel. April 25, 2008 Order at 5-6, Kidman Dec., Exh. C.

[17]   Outside the United States, use is not a requirement for the acquisition of trademark rights. Trademark rights are conferred by the mere act of registration. Anne Gilson LaLonde & Jerome Gilson, GILSON ON TRADEMARKS § 10.02 (2008). Accordingly, a constructive trust should also be imposed over all registrations and applications using the term "Bratz" or "Jade" that are held by or for MGA in foreign jurisdictions.

1  constructive trust extends to the benefits received from the use of wrongfully

2  acquired property. See, e.g., RESTATEMENT OF RESTITUTION § 201(2) ("Where a

3  fiduciary in violation of his duty to the beneficiary communicates confidential

4  information to a third person, the third person, if he had notice of the violation of

5  duty, holds upon a constructive trust for the beneficiary any profit which he makes

6  through the use of such information."). This includes any enhancement in the value

7  of wrongfully acquired property. Gladstone v. Hillel, 203 Cal. App. 3d 977, 989

8  (1988) ("The constructive trust includes the product of the misappropriated

9  property: 'The constructive trust extends to property acquired in exchange for that

10  wrongfully acquired, and includes the direct product, i.e., profit on and enhancement

11  in the value of the property traced into the trust.'") (citation omitted); Heckmann,

12  168 Cal. App. 3d at 135 (imposing constructive trust on amounts wrongfully

13  acquired together with income earned on those amounts to prevent defendant from

14  being rewarded for wrongdoing); Haskel Engineering & Supply Co., 78 Cal. App.

15  3d at 375-76 (constructive trust extends to profits made on wrongfully acquired

16  funds to prevent unjust enrichment).

17      But for this rule, there would not be a sufficient deterrent to the wrongful

18  conduct. See County of San Bernardino, 158 Cal. App. at 543 (2007) (without

19  disgorgement of all benefits received from the wrongful conduct "there would be an

20  insufficient deterrent to improper conduct which is more profitable than lawful

21  conduct"). Absent a constructive trust over the Bratz and Jade marks here, MGA

22  would continue to unjustly benefit from its theft of the names. This is not, for

23  example, an instance where MGA could return the stolen property and retain the

24  value added. MGA's unlawful acquisition and use of the Bratz and Jade names is so

25  intertwined with the trademarks that allowing MGA to retain the marks will allow it

26  to keep that which it stole in the first place. Moreover, because a mark is by

27  definition the right to exclude use by others, MGA undoubtedly will purport to

28  preclude Mattel from making any meaningful use of the terms "Bratz" and "Jade" if

1    MGA is allowed to retain the marks, even if the names could somehow be separated
2    from the marks.

**D.      MGA's Subsequent Acquisition Of A Single, Narrow Trademark Registration From A Third Party Does Not Defeat Mattel's Right To A Constructive Trust**

In late 2002—*after* MGA had wrongfully obtained disclosure of Mattel's "Bratz" name and began using it connection with Bratz dolls and other Bratz products—MGA ostensibly purchased certain trademark rights from a company called Lovins, Inc., which had claimed to have rights to the word "Bratz" for children's clothing. MGA suggested at trial that this somehow trumps Mattel's rights to the Bratz trademarks. It does not.

MGA did not get the "Bratz" name from Lovins. It is undisputed that the "Bratz" name came from Carter Bryant when he wrongfully disclosed it to MGA along with other Bratz-related inventions that he had developed while he was a Mattel employee. As Isaac Larian testified at trial:

Q:   I want to go to the name Bratz for a second. There's been a lot of discussion about that.

My question is this, sir: There's been a lot of testimony in this case with respect to the origin of the name "Bratz."

A:   Yes.

Q:   Do you dispute in any way that Carter Bryant had the idea of Bratz when he presented the drawings to you?

A:   I do not.[18]

MGA would not have had the "Bratz" name to use or acquire trademark rights in had it not been for the wrongful disclosure and use of Mattel's property in the

_____

[18]   Trial Transcript at 2148:2-10. <u>See also</u> Trial Transcript at 1645:1-22; (Larian); 1747:20-1748:1 (Larian); 567:5-8 (Garcia); 996:3-20 (Garcia).

1   first place.  Indeed, it is undisputed that MGA had been using the "Bratz" name

2   *prior* to any agreement with Lovins.  At most, the claim by Lovins was merely a

3   potential obstacle to MGA perfecting trademark rights in Bratz with respect to a

4   single class of goods—clothing—which, according to MGA's expert, has accounted

5   for less than 1.6 percent of MGA's total Bratz product line sales.[19]  As the

6   constructive trustee of the "Bratz" name, any steps by MGA to perfect such

7   trademark rights were undertaken for and inure to the benefit of Mattel.

8       In any event, by MGA's own account, the purported rights asserted by Lovins

9   were limited to the narrow category of children's apparel.[20]  They have nothing

10  whatsoever to do with the Bratz marks MGA has acquired for dolls and all the

11  products other than children's apparel that now make up the Bratz brand.  And, of

12  course, MGA's contention here could not conceivably avoid the imposition of a

13  constructive trust over the Jade marks.

14                                    * * *

15      The Court should impose a constructive trust over the "Bratz" and "Jade"

16  names, marks and domain names and order the rights therein transferred to Mattel.

17  Furthermore, as shown in the next section, the Court should permanently enjoin

18  MGA and those acting with it or on its behalf from further use of the "Bratz" and

19  "Jade" names, marks and domain names in connection with any goods or services

20  under California's Unfair Competition Law.

21

22

23      [19]  Trial Exh. 18923-15, Kidman Dec. Exh. L.

24      [20]  *See* MGA's response to Lovins' motion to suspend opposition proceedings
    before the Trademark Trial and Appeal Board, Kidman Dec., Exh. M.  On its face,
25  the registration MGA obtained pursuant to the assignment from Lovins is limited to
    "infants and children's clothing, namely, tops, bottoms, sleepwear, hats; and infants
26  and children's outerwear namely, jackets, parkas, coats, snow suits and mittens, in
27  Class 25."  Kidman Dec., Exh. N.

28

Case 2:04-cv-09049-DOC-RNB   Document 6889-3   Filed 09/28/09   Page 23 of 133   Page ID
#:228502
Case 2:04-cv-09049-SGL-RNB   Document 4305   Filed 09/25/2008   Page 20 of 25

## II.   MGA ENGAGED IN UNLAWFUL BUSINESS PRACTICES AND THE COURT SHOULD ENJOIN MGA'S USE OF THE "BRATZ" AND "JADE" NAMES

### A.   MGA Has Violated The Unfair Competition Law

Mattel's twelfth cause of action is for unfair competition under Cal. Bus. & Prof. Code § 17200. California's Unfair Competition Law ("UCL") precludes "unlawful, unfair or fraudulent business act[s] or practice[s]" to preserve "fair business competition." Cal. Bus. & Prof. Code § 17200; see also Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co., 20 Cal. 4th 163, 180 (1999); Barquis v. Merchants Collection Ass'n, 7 Cal. 3d 94, 110 (1972). The law's coverage is "sweeping," precluding "anything that can properly be called a business practice and that at the same time is forbidden by law." Cel-Tech., 20 Cal. 4th at 180 (internal quotations and citation omitted). By proscribing "unlawful" activity the statutory scheme "borrows" violations of other laws, making them "independently actionable" under the UCL. Id. Thus, its remedies are "cumulative" to remedies or penalties available for the underlying unlawful activity. Id. at 179.[21]

---

[21]   Because the UCL includes three distinct prongs—conduct that is unlawful, unfair, or fraudulent—courts have held that even where federal law preempts claims based on certain conduct or even an entire prong of a potential UCL claim, a viable claim may still be established through other unfair conduct or any of the remaining potential prongs. See, e.g., Beilstein-Institut Zur Forderung Der Chemischen Wissenschaften v. MDL Info. Sys., Inc., 2006 WL 3218719, at *4 (N.D. Cal. Nov. 7, 2006) (holding Copyright Act did not preempt claim for unfair competition given defendant's fraudulent actions). This Court previously held that Mattel's unfair competition claim was precluded to the extent it was predicated on copyright infringement or antitrust violations. See April 25, 2008 Order at 7, Kidman Dec. Exh. C. However, the Court recognized that Mattel's claim for unfair competition could still be based on other unlawful activity. See id. Consistent with that Order and the jury's subsequent verdict, Mattel's claim of unfair competition under the "unlawful" prong is based on MGA's tortious conduct and is therefore not preempted.

07209/2643823.7

Exhibit 2, Page 65

MATTEL, INC.'S MOTION FOR CONSTRUCTIVE TRUST AND INJUNCTIVE RELIEF

Here, the jury's verdict established that MGA and Larian acted unlawfully by tortiously interfering with Mattel's contractual relations and by aiding and abetting Bryant's breaches of duties owed to Mattel. Each of those torts is a violation of a duty imposed by law and thereby constitutes an "unlawful" practice "independently actionable" under the UCL. CRST Van Expedited, Inc. v. Werner Enterprises, Inc., 479 F.3d 1099, 1107 (9th Cir. 2007).

In CRST, the Ninth Circuit held that a UCL claim can be predicated on intentional interference with an employment contract. CRST, 479 F.3d at 1107. Likewise, "[t]he California courts have held that a breach of fiduciary duty can provide the predicate unlawful act that gives rise to an Unfair Competition Law claim." Iconix, Inc. v. Tokuda, 457 F. Supp. 2d 969, 996 (N.D. Cal. 2006) (granting preliminary injunction to prevent former employee from using confidential information to develop competing product); Allied North Am. Ins. Brokerage Corp. of Cal. v. Woodruff-Sawyer, 2005 WL 2354119, at *9 (N.D. Cal. Sept. 26, 2005) (former employee's use of confidential information in breach of fiduciary duties is unfair competition). One who aids and abets such a breach is equally liable under the UCL. See, e.g., Bancroft-Whitney Co. v. Glen, 64 Cal. 2d 327, 332 (1966) (competitor liable for unfair competition for aiding the breach of employee's fiduciary duty to former employer); GAB Bus. Servs. Inc. v. Lindsey & Newsom Claim Servs., Inc., 83 Cal. App. 4th 409, 425 (2000) (same) (overruled on other grounds Reeves v. Hanlon, 33 Cal. 4th 1140, 1154 (2004)). A UCL claim may also be predicated on conversion, which is an unlawful practice under California law. See Cal. Civ. Code § 3336; California Civil Jury Instructions (BAJI) § 12.99 (Fall ed. 2008). Conversion of a competitor's confidential information violates public policy and "significantly threatens or harms competition." Cel-Tech, 20 Cal. 4th at 180.

The unlawful prong of the UCL "turns a violation of the underlying law into a per se violation of the UCL." CALIFORNIA UNFAIR COMPETITION & BUSINESS TORTS

§ 2.09[1] (8th ed. 2008). The jury's verdict therefore establishes that MGA violated the UCL. See, e.g., Brockey v. Moore, 107 Cal. App. 4th 86, 98-99 (2003) (declining to address defendant's appeal of injunction under the UCL based on trial court's finding of false advertising where the jury's verdict on liability also established various unlawful activities supporting injunction).

Accordingly, Mattel respectfully requests that the Court find that the MGA defendants and Carter Bryant violated § 17200 of the California Business and Professions Code and rule in Mattel's favor on its twelfth claim for relief.

**B.** **The Court Should Enjoin MGA From Using The Names "Bratz" Or "Jade"**

In addition to imposing a constructive trust over the Bratz and Jade marks, the Court should permanently enjoin MGA from making any further use of the term "Bratz" or "Jade." The UCL provides that "[a]ny person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction." Cal. Bus. & Prof. Code § 17203. "The court may make such orders . . . necessary to prevent the use . . . of any practice which constitutes unfair competition . . . or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition." Id. Courts have "'very broad'" discretion to formulate equitable relief under the UCL for the purpose of "making the victims of unfair competition whole." Benson v. Kwikset Corp., 152 Cal. App. 4th 1254, 1277-1278 (2007) (quoting Cortez v. Purolator Air Filtration Prods. Co., 23 Cal. 4th 163, 180 (2000)); Brockey, 107 Cal. App. 4th at 104 (affirming trial court's injunction as "a necessary mechanism to achieve full disgorgement of [defendant's] wrongful profits") (citation omitted).

Where, as here, a defendant unlawfully obtains and uses a competitor's proprietary or confidential information, courts will grant equitable relief under

§ 17200 to prevent that defendant from unfairly benefiting. See, e.g., Iconix, 457 F. Supp. 2d at 997 (granting, in part, plaintiff's request for injunctive relief to prevent defendants from "benefiting from the fruits of their wrongdoing"); see also Readylink Healthcare v. Cotton, 126 Cal. App. 4th 1006, 1018 (2005) (affirming trial court's injunction to prevent competitor's use of misappropriated confidential information under UCL); Courtesy Temp. Serv., Inc. v. Camacho, 222 Cal. App. 3d 1278, 1291(1990) (reversing trial court for failure to grant injunction under the UCL to prevent competitor from using confidential information); Klamath-Orleans Lumber, Inc. v. Miller, 87 Cal. App. 3d 458 (1978) (affirming trial court's grant of permanent injunction preventing party from using competitor's customer lists).

The purpose of such injunctive orders is to "foreclose retention by the violator of its ill-gotten gains" and prevent continued violation of the UCL. Juarez v. Arcadia Fin. Ltd., 152 Cal. App. 4th 889, 913 (2007) (quoting Bank of the West v Superior Court, 2 Cal. 4th 1254, 1267 (1992)). When a party unlawfully obtains confidential or proprietary information, it is appropriate to order both the return of the information and to enjoin its use going forward. See, e.g., Corporate Express Office Prods, Inc. v. Martinez, 2002 WL 31961458, at *6 (C.D. Cal. Mar. 8, 2002) (entering preliminary injunction enjoining defendant from retaining confidential information and from engaging in certain activities); see also RESTATEMENT OF RESTITUTION § 201(2) & comments thereto (when fiduciary in violation of his duty to the beneficiary communicates confidential information to a third person who has notice of the violation, the third person will be enjoined from making use of the information).

Thus, for example, in Gladstone v. Hillel, defendants took plaintiff's original jewelry designs and the molds used in their production and used them to launch a competing line of jewelry. 203 Cal. App. 3d at 981. Plaintiff prevailed at trial on conversion and fraud claims. The trial court, having already ordered that plaintiff's property be returned, issued an injunction which prohibited defendants from using

plaintiff's designs or molds going forward.  Id. at 988.  The appellate court affirmed the order (with slight modifications), concluding that the dispute presented exactly the type of situation that § 17200 was enacted to remedy:

> [Defendants'] conduct displayed a pattern of wrongfully using [plaintiff's] molds and designs which represented a sufficient threat of violation of Business and Professions Code section 17200 to justify a decree which includes an injunction against future violations of that statute.

Id. at 990.  The court reasoned that defendants "should not be permitted to benefit from the fruit of their wrongful conversion of [plaintiff's] property," which—despite having been ordered to return the property itself—they would continue to do if not prevented from unfairly capitalizing on plaintiff's property. Id. at 989.

Here, equitable relief is appropriate and necessary in order to restore to Mattel the confidential information that was unlawfully disclosed to and used by MGA in contravention of the UCL, including the "Bratz" and "Jade" names.  These are, as a matter of law, Mattel's property.  MGA obtained them unlawfully and continues to benefit from the fruits of its wrongdoing.  Only by returning them to Mattel and enjoining MGA from further use will Mattel be made whole.  Absent such an injunction, MGA will continue to benefit from its unlawful business practices.

### Conclusion

For the reasons set forth above, Mattel respectfully requests that the Court impose a constructive trust on all rights to any trademarks and domain names owned by MGA or Isaac Larian, or any person or entity acting on their behalf or for their benefit, anywhere in the world that include the terms "Bratz" or "Jade," including all such trademark registrations and pending trademark applications, and all goodwill inhering therein, as well as all such domain names and domain name registrations, and an order effecting the transfer thereof to Mattel.  In addition, Mattel requests that the Court find the MGA Defendants and Carter Bryant liable to

1  Mattel on its twelfth claim for relief and enjoin them, and any person or entity acting

2  on their behalf or in concert or participation with them, from using the term "Bratz"

3  or "Jade" and from taking any steps to prevent Mattel from using them in any

4  manner.

5

6  DATED:  September 29, 2008          QUINN EMANUEL URQUHART OLIVER &
                                      HEDGES, LLP
7

8

9                                     By /s/ Michael T. Zeller

10                                    _____
                                      Michael T Zeller
                                      Attorneys for Mattel, Inc.
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-17-
MATTEL, INC.'S MOTION FOR CONSTRUCTIVE TRUST AND INJUNCTIVE RELIEF

# EXHIBIT 3

Case 2:04-cv-09049-DOC-RNB Document 6889-3 Filed 09/28/09 Page 30 of 133 Page ID
Case 2:04-cv-09049-SGL-RNB Document 4316 Filed 09/30/2008 Page 1 of 19
#:228509

1

2

3

4

5

6

7

8               UNITED STATES DISTRICT COURT

9               CENTRAL DISTRICT OF CALIFORNIA

10                     EASTERN DIVISION

| | |
|---|---|
| 11  CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| 12          Plaintiff, | Consolidated with<br>Case Nos. CV 04-09059 & CV 05-2727 |
| 13       vs. | |
| 14  MATTEL, INC., a Delaware<br>corporation, | [PROPOSED] ORDER GRANTING<br>MATTEL, INC.'S MOTION FOR<br>PERMANENT INJUNCTION |
| 15          Defendant. | |
| 16 | |
| 17  AND CONSOLIDATED ACTIONS | |

18

19

20

21

22

23

24

25

26

27

28

<u>ORDER</u>

Having considered Mattel, Inc.'s Motion for Permanent Injunction (the "Motion"), the opposition thereto, and all other papers, evidence and arguments submitted in connection therewith, as well as the evidence admitted at trial and the jury's verdicts in the Phase 1 trial, the Court hereby GRANTS Mattel's Motion against MGA Entertainment Inc. ("MGA"), MGA Entertainment (HK) Ltd. ("MGA Hong Kong"), Isaac Larian ("Larian") and Carter Bryant ("Bryant") (MGA, MGA Hong Kong, Larian and Bryant are, collectively, "Defendants"), and hereby ORDERS as follows:

1.      MGA, MGA Hong Kong, Larian, and Bryant, along with their respective officers, directors, principals, agents, representatives, servants, employees, affiliates, successors or assigns, and any person or entity acting on their behalf or in concert or participation with them, are hereby PERMANENTLY ENJOINED from manufacturing, procuring the manufacture of, making, producing, reproducing, copying, distributing, transferring, displaying, marketing, advertising, shipping, importing, exporting, licensing, offering to license, selling or offering to sell:

      (a)      any doll, product or other item that embodies or depicts in whole or in part, or incorporates or uses in any manner, the head and/or body sculpt shown in Exhibit 1 (sometimes known as the "core Bratz fashion doll production sculpt"), which is incorporated herein by this reference;

      (b)      any doll, product or other item that embodies or depicts in whole or in part, or incorporates or uses in any manner, the head and/or body sculpt shown in Exhibit 2 (sometimes known as the "Bratz Movie sculpt"), which is incorporated herein by this reference;

Case 2:04-cv-09049-DOC-RNB Document 6880 Filed 09/28/09 Page 32 of 133 Page ID
#:228511
Case 2:04-cv-09049-SGL-RNB Document 4316 Filed 09/30/2008 Page 3 of 19

(c)     any doll shown in Exhibits 3 to 4, inclusive, which are
        incorporated herein by this reference;

(d)     any product shown in Exhibits 5 to 6, inclusive, which are
        incorporated herein by this reference;

(e)     any product, packaging or other item that embodies or depicts in
        whole or in part, or incorporates or uses in any manner, the
        artwork shown in Exhibit 7, which is incorporated herein by this
        reference.

(f)     any doll, product, packaging or other item that embodies or
        depicts in whole or in part, or incorporates or uses in any
        manner, any of the Jade, Cloe, Yasmin and Sasha Bratz
        characters, including without limitation the items shown in
        Exhibits 3 and 5, which are incorporated herein by this reference;

(g)     any marketing or advertising materials that embody or depict in
        whole or in part, or incorporate or use in any manner, any of the
        dolls, products, items or other matter described in paragraphs (a)
        through (f) above, including without limitation the marketing or
        advertising materials shown in Exhibits 8 (screen captures from
        television commercials) to 9 (print advertisements), inclusive,
        which are incorporated herein by this reference;

(h)     any doll that counterfeits, copies, is substantially similar to or
        otherwise utilizes the combination of features of Mattel's
        copyrighted designs, specifically, (i) oversized eyes; (ii)
        diminutive nose; (iii) oversized or pouty lips; (iv) head that is
        oversized in proportion to body; and (iv) feet and/or shoes that
        are oversized in proportion to body.

(i)     any doll, product, packaging, advertising or other item or
        materials that counterfeits, copies or is substantially similar to

Mattel's copyright protected head and/or body sculpt shown in Exhibit 10, which is incorporated herein by this reference, including without limitation the Bratz fashion dolls known as Cloe, Yasmin, Sasha, Jade, Ciara, Dana, Diona, Felicia, Fianna, Katia, Kiana, Krysta, Kumi, Lana, Leah, Lela, Liliana, Lilee, Lina, Maribel, May Lin, Meygan, Nevra, Nevaeh, Nona, Nora, Oriana, Peyton, Phoebe, Rina, Roxxi, Sharidan, Sierrna, Sorya, Sunya, Tess, Tiana, Trinity, Vinessa, and Valentina, and any and all other dolls employing a sculpt which is substantially similar to Exhibit 10;

(j)    any doll, product, packaging, advertising or other item or materials that embodies or depicts in whole or in part, or incorporates or uses in any manner, any of the Jade, Cloe, Yasmin and Sasha Bratz characters depicted or described in Exhibit 11, which is incorporated herein by this reference; and

(k)    any doll, product, packaging, advertising or other item or materials that counterfeit, copy or are substantially similar to Mattel's Bratz-related copyrighted works, including without limitation such works in Exhibits 11 and 12, inclusive, which are incorporated herein by this reference.

2.    MGA, MGA Hong Kong, Larian, and Bryant, along with their respective officers, directors, principals, agents, representatives, servants, employees, affiliates, successors or assigns, and any person or entity acting on their behalf or in concert or participation with them, are further hereby PERMANENTLY ENJOINED from engaging in any of the following acts:

(a)    copying, imitating, selling, offering to sell, marketing, distributing, importing, displaying or making any use of the

Case 2:04-cv-09049-DOC-RNB Document 6889-6 Filed 09/28/09 Page 34 of 133 Page ID
Case 2:04-cv-09049-SGL-RNB Document 4316 Filed 09/30/2008 Page 5 of 19
#:228513

copyrighted works shown in Exhibits 10 to 12, inclusive, which
works are owned by Mattel;

(b)    engaging in any and all further acts of infringement of the
copyrighted works shown in Exhibits 10 to 12, inclusive, which
works are owned by Mattel;

(c)    asserting any ownership of rights or any right, title or interest in
the copyrighted works shown in Exhibits 10 to 12, inclusive,
which works are owned by Mattel;

(d)    transferring, disposing of, destroying, spoliating or secreting any
documents, records, recordings or materials, whether in
electronic or non-electronic form, that evidence, relate to or
pertain to any aspect of the dolls, products, packaging, items or
other materials referred to in paragraphs 1(a) through 1(k) above,
inclusive, including without limitation any and all agreements,
contracts, correspondence, communications, invoices, purchase
orders, sales orders, manufacturing records, import or export
records, sales records, ledgers, inventory records and shipping
records relating thereto;

(e)    transferring, disposing of, destroying, spoliating or secreting any
documents, records, recordings or material, whether in electronic
or non-electronic form, that in any manner evidence, relate to or
pertain to any products, services or activities using or displaying
any simulation, counterfeit, reproduction or copy of, or are
derived from, Mattel's copyrighted works shown in Exhibits 10
to 12, inclusive, which are incorporated herein by this reference;

(f)    transferring, disposing of, destroying, spoliating, secreting or
exporting any products, product packaging, labels, signs, prints,
dies, wrappers, receptacles, advertisements or any other tangible

items (including without limitation computer files) that in any manner utilize, contain, evidence, reproduce, display, or relate to any simulation, counterfeit, reproduction or copy of, or are derived from, (i) the dolls, products, packaging, items or other materials referred to in paragraphs 1(a) through 1(k) above, inclusive, or (ii) Mattel's copyrighted works shown in Exhibits 10 to 12, inclusive, which are incorporated herein by this reference;

(g) transferring, disposing of, destroying, spoliating, secreting or exporting any plates, molds, matrices, and other means of making or manufacturing (i) the dolls, products, packaging, items or other materials referred to in paragraphs 1(a) through 1(k) above, inclusive, or (ii) any reproduction, counterfeit, copy, substantially similar likeness, or derivative of Mattel's copyrighted works shown in Exhibits 10 to 12, inclusive;

(h) assisting, aiding or abetting any other entity or person in engaging in or performing any of the activities referred to in paragraphs 1(a) through 1(k), inclusive, and/or in paragraphs 2(a) through 2(h), inclusive.

3. At Defendants' expense, Defendants shall deliver to Mattel's counsel for impoundment, at such location in the Central District of California as Mattel's counsel may direct, all dolls, products, product packaging, labels, signs, prints, dies, wrappers, receptacles and advertisements, in the direct or indirect possession, custody or control of Defendants, their officers, directors, principals, agents, servants, employees, successors or assigns, or any person or entity acting on their behalf or in concert or participation with them, that are referred to in paragraphs 1(a) through 1(k), inclusive, and/or in paragraphs 2(a) through 2(h),

1  inclusive, together with all plates, molds, matrices and other means of making the

2  same.  Mattel's counsel is hereby appointed substitute custodian for all such items.

3      4.  Defendants are hereby ORDERED to procure the return, and to

4  withdraw and recall, from any and all channels of trade and distribution, including

5  without limitation from retail shelves and from on-line retailers, all of the dolls and

6  doll products that are referred to in paragraphs 1(a) through 1(k), inclusive, and/or in

7  paragraphs 2(a) through 2(h), inclusive.  As to each entity or person returning such

8  dolls and doll products, Defendants shall refund all monies paid by each entity or

9  person in connection with such dolls and doll products and shall reimburse each

10 such entity or person for all associated shipping charges.

11     5.  Defendants shall hand serve upon Mattel's counsel a declaration,

12 made under oath, that sets forth fully and completely the following information:  (a)

13 the identity of each and every doll, product, package or other item manufactured,

14 marketed, displayed, distributed, imported, exported, sold or offered for sale by or

15 for Defendants that are referred to in paragraphs 1(a) through 1(k), inclusive, and/or

16 in paragraphs 2(a) through 2(h), inclusive; (b) for each such doll, product, package

17 or other item, the number of units manufactured, marketed, displayed, distributed,

18 shipped, imported, exported, sold or offered for sale by or for Defendants; (c) for

19 each unit of each such doll, product, package or other item, the purchaser, transferee

20 or recipient of each such unit(s), the quantities acquired by such purchaser,

21 transferee or recipient and complete contact information (including limitation the

22 address, telephone number, fax number and email address where known) for each

23 such purchaser, transferee or recipient; (d) for each unit of such doll, product,

24 package or other item, the current or last known location of each such unit,

25 including without limitation the location of all such dolls, products, package or other

26 items in Defendant's inventory; and (v) for each person or entity to whom or which

27 Defendants have promoted, advertised, marketed or offered to sell any doll, product,

28 package or other item that is the subject of this Order, the identity of, and complete

1  contact information for (including limitation the address, telephone number, fax

2  number and email address where known), each such person or entity.

3        6.    At Defendants' expense, Defendants shall make written contact

4  (either through fax or electronic mail) with (i) each retailer, distributor, wholesaler,

5  importer, exporter, customer, licensee or any other person and entity to or through

6  whom Defendants have shipped, transferred, imported, exported or sold any doll,

7  product or other item that is the subject of this Order; and (ii) each retailer,

8  distributor, wholesaler, licensee, potential licensee, customer, potential customer or

9  any other person and entity who Defendants have contacted (whether by mail,

10 electronic mail, orally or otherwise) within the past ninety (90) days in marketing,

11 promoting or advertising any doll, product or other item that is the subject of this

12 Order, and shall provide each such person and entity with a copy of this Order and

13 with a verbatim copy of the following notice, in legible and conspicuous print, in its

14 entirety (hereinafter, the "Notice"):

15 <u>NOTICE PUBLISHED PURSUANT TO ORDER OF THE UNITED STATES DISTRICT COURT</u>

16

17       YOU ARE HEREBY ADVISED as follows:

18       Recently you may have bought, seen, or been contacted regarding, the

19       sale of Bratz dolls or other Bratz products.

20       Pursuant to the rulings of the United States District Court, Mattel is the

21       owner of Bratz-related copyrights that are infringed by Bratz dolls, products and packaging manufactured by or for MGA.

22

23       The Court has ordered MGA to immediately cease any further

24       manufacture, sale, promotion, shipment or distribution of Bratz dolls, products and packaging.

25       In addition, the Court has ordered that Bratz dolls must be returned

26       immediately to the following address:  MGA Entertainment, Inc., Attn:

27       Customer Service, 163000 Roscoe Blvd., Suite 150, Van Nuys, CA 91406.

28

MGA will refund to you all monies paid by you for these dolls and reimburse you for all associated shipping charges.

7.     At Defendants' expense, Defendants shall post in legible and conspicuous print a verbatim copy of the entire Notice set forth in Paragraph 6, above, upon the home page of MGA's web site at www.mgae.com beginning within twenty-four hours of receipt of notice of this Order and continuing for a period of no less than one hundred and twenty (120) days.

8.     Defendants, and any person or entity acting on their behalf or in concert or participation with Defendants, shall fully comply with Paragraphs 1 and 2 of this Order immediately, shall fully comply with Paragraph 6 of this Order within two (2) calendar days of the date of this Order, shall fully comply with Paragraph 5 of this Order within seven (7) calendar days of the date of this Order and shall fully comply with Paragraphs 3 and 4 of this Order within thirty (30) days of this Order. In the event that any additional doll, product or item that is the subject of this Order subsequently is delivered to or comes within the direct or indirect possession, custody or control of Defendants, Defendants shall deliver such additional doll, product or item to Mattel's counsel within two (2) calendar days in accordance with the terms of Paragraph 3, above.

9.     Within forty (40) calendar days of the date of this Order, Defendants shall file with the Court, and personally serve on counsel for Mattel, a report in writing under oath setting forth the actions taken to comply with the terms herein pursuant to 15 U.S.C. § 1116(a).  Such Report shall have appended to it complete, true and accurate copies of each communication ordered to be sent pursuant to Paragraph 6 of this Order.

10.     Pursuant to Federal Rule of Civil Procedure 53, the Court hereby appoints a special master to supervise implementation of the requirements of this Order (the "Special Master").  The parties shall confer on an agreed upon designee to serve as Special Master.  Within five (5) calendar days of the date of this Order,

Case 2:04-cv-09049-DOC-RNB Document 6889-3 Filed 09/28/09 Page 39 of 133 Page ID
#:228518
Case 2:04-cv-09049-SGL-RNB Document 4316 Filed 09/30/2008 Page 10 of 14

the parties shall file either (1) a joint document setting forth their agreed selection of a Special Master and a certification by the selected designee that he or she is willing to serve as Special Master, or (2) if the parties cannot agree on a selection, Mattel on the one hand, and Defendants on the other hand, may each file a list of proposed designees, from which the Court will select the Special Master.

11. Any and all disputes arising out of this Order and/or motions or applications seeking to enforce the terms of this Order shall be presented to the Special Master for resolution in the first instance, once the Special Master is appointed. The Special Master shall have the authority to set the time, place and manner of hearings and other proceedings he or she will conduct; to preside over hearings, whether telephonic or in person; to take evidence in connection with disputes before the Special Master; to make inspections in connection with the requirements of this Order, including inspections of Defendants' facilities and warehouses; to issue orders resolving motions, applications and matters arising out of this Order and/or seeking to enforce the terms of this Order; to issue orders awarding non-contempt sanctions, including, without limitation, the award of attorney's fees; and to issue reports and recommendations on matters for which the Special Master lacks jurisdiction to issue an order, including, without limitation, reports and recommendations regarding contempt sanctions. In addition to any other filing procedures the Special Master may permit, the Special Master shall permit the filing of *ex parte* applications to enforce the terms of this Order, which must be heard and adjudicated within ten (10) calendar days of filing. A party may bring an *ex parte* application for relief pursuant to this provision only upon certifying, as an officer of the Court, that such expedited adjudication is required and could not be avoided in due course. The parties shall file with this Court, contemporaneously, the original of all submissions made to the Special Master such that the Court's Docket shall be complete and include all pertinent submissions.

1  Third parties shall be bound by the Special Master's orders to the same extent as
2  Orders of this Court.

3        12.    The Special Master's orders, reports and recommendations shall
4  be treated as rulings made by a Magistrate Judge of this Court and may be reviewed
5  in the same manner and pursuant to the same procedures as this Court reviews such
6  orders, reports and recommendations of a Magistrate Judge.  A court reporter shall
7  transcribe all hearings and proceedings held before the Special Master.  The Special
8  Master's fees, and other costs incurred in connection with proceedings before the
9  Special Master, including the fees of court reporters, shall be paid one-half by
10  Mattel, Inc. and one-half by MGA Entertainment, Inc. unless, consistent with the
11  Federal Rules of Civil Procedure, the Special Master orders otherwise.  The Special
12  Master shall not have *ex parte* communications with a party or counsel.

13        13.    The Special Master shall be authorized to receive information
14  designated "CONFIDENTIAL" and "CONFIDENTIAL--ATTORNEY'S EYES
15  ONLY" pursuant to the protective order dated January 4, 2005.

16        14.    This Court shall have jurisdiction to interpret and enforce the
17  terms of this Permanent Injunction and to determine any issues which may arise
18  concerning this Permanent Injunction.

19              **IT IS SO ORDERED**.

20  DATED:          , 2008  _____

21                             Hon. Stephen G. Larson
                           United States District Judge

22

23

24

25

26

27

28

EXHIBIT 4

Case 2:04-cv-09049-DOC-RNB Document 6889-3 Filed 09/29/09 Page 42 of 133 Page ID
#:228521
Case 2:04-cv-09049-SGL-RNB Document 4305-8 Filed 09/25/2008 Page 1 of 3

1
2
3
4
5
6
7
8                      UNITED STATES DISTRICT COURT
9                     CENTRAL DISTRICT OF CALIFORNIA
10                            EASTERN DIVISION
11   CARTER BRYANT, an individual,      | CASE NO. CV 04-9049 SGL (RNBx)
                                         | Consolidated with
12            Plaintiff,                 | Case Nos. CV 04-09059 & CV 05-2727
13        vs.                            | **[PROPOSED] ORDER GRANTING
14   MATTEL, INC., a Delaware           | MATTEL'S MOTION FOR
     corporation,                        | CONSTRUCTIVE TRUST AND FOR
15                                       | FINDING LIABILITY AND
              Defendant.                 | INJUNCTIVE RELIEF PURSUANT TO
16                                       | CAL. BUS. & PROF CODE § 17200**
17   AND CONSOLIDATED ACTIONS
18
19
20
21
22
23
24
25
26
27
28

# **ORDER**

Having considered Mattel, Inc.'s ("Mattel") Motion for Constructive Trust and for a Finding of Liability and Injunctive Relief Pursuant to <u>California Business & Professional Code</u> § 17200, and all other papers and arguments submitted in connection therewith, as well as the evidence admitted at trial and the jury's verdicts in the Phase 1 trial, the Court hereby GRANTS the Motion against MGA Entertainment Inc. ("MGA"), MGA Entertainment (HK) Ltd. ("MGA Hong Kong"), Isaac Larian ("Larian") (collectively the "MGA Defendants"), and Carter Bryant ("Bryant"), and ORDERS as follows:

1.     A constructive trust in favor of Mattel on all rights to trademarks, service marks and domain names held by MGA or Larian, or any person or entity acting on their behalf or for their benefit, anywhere in the world that include the terms "Bratz" or "Jade," including all such trademark registrations and trademark applications (including, without limitation, United States Trademark Registrations identified by Registration Nos. 3206114, 3327385, 3150045, 3087710, 3055465, 3072141, 3127890, 3024713, 2989052, 2911097, 3080450, 2921772, 3071614, 2803235, 2848386, 2795675, 2776558, 2848281, 2751890, 2671473, 2787942, 2789216 and 2836780 and United States Trademark Applications identified by Serial Nos. 78530196, 78571028, 78706504, 78706502, 78819868, 78857100, 78490324, 77443372 and 77575881), and the good will inhering therein, as well as all such domain name registrations, is HEREBY ORDERED and all rights therein are ORDERED transferred to Mattel.

2.     MGA and Larian are HEREBY ORDERED to (a) identify all trademark registrations and applications held by them, or any person or entity acting on their behalf or for their benefit, anywhere in the world that include the terms "Bratz" or "Jade," (b) identify all marks that include the terms "Bratz" or "Jade" in which they, or any person or entity acting on their behalf or for their benefit, claim to own trademark rights, whether or not such marks are subject to existing

Exhibit 4, Page 83

ORDER GRANTING MATTEL'S MOTION FOR CONSTRUCTIVE TRUST AND PERMANENT INJUNCTION

trademark registrations or pending trademark applications, (c) identify all domain names and domain name registrations held by them, or any person or entity acting on their behalf or for their benefit, anywhere in the world that include the terms "Bratz" or "Jade," and (d) execute any and all documents necessary to effect the transfer and/or assignment of such marks and domain names and associated applications and registrations to Mattel. MGA shall fully comply with (a), (b) and (c) of this paragraph within fourteen (14) calendar days of the date of this Order.

3.     The Court HEREBY FINDS that the MGA Defendants and Bryant violated <u>California Business and Professions Code</u> § 17200 and are liable to Mattel on its twelfth claim for relief for unfair competition.

4.     The MGA Defendants and Bryant, along with their respective officers, directors, principals, agents, representatives, servants, employees, affiliates, successors or assigns, and any person or entity acting on their behalf or in concert or participation with them, are HEREBY PERMANENTLY ENJOINED from (a) using the terms "Bratz" or "Jade," either alone or in combination and whether as a trademark, domain name or otherwise, in connection with the manufacture, promotion, advertising, distribution, offering for sale or sale of any goods or services anywhere in the world and (b) taking any action to preclude Mattel from using the terms "Bratz" or "Jade" in any such manner, including without limitation as a mark in connection with goods and services.

**IT IS SO ORDERED.**

DATED:                    , 2008    _____
                                     Hon. Stephen G. Larson
                                     United States District Judge

EXHIBIT 5

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
<u>CIVIL MINUTES -- GENERAL</u>

Case No.   CV 04-09049 SGL(RNBx)                          Date: December 3, 2008
Title:     MATTEL, INC. V. MGA ENTERTAINMENT, INC., et al.
================================================================================
PRESENT:  HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

James Holmes                          None Present
Courtroom Deputy Clerk                Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:     ATTORNEYS PRESENT FOR DEFENDANTS:

None Present                          None Present

PROCEEDINGS:

**ORDER FINDING IN FAVOR OF MATTEL AS TO THE MGA PARTIES' AFFIRMATIVE DEFENSES**

**ORDER GRANTING MATTEL'S MOTION FOR DECLARATORY JUDGMENT (DOCKET #4303)**

**ORDER GRANTING MATTEL'S MOTION FOR CONSTRUCTIVE TRUST AND § 17200 INJUNCTIVE RELIEF (DOCKET #4305)**

**ORDER GRANTING MATTEL'S MOTION FOR PERMANENT INJUNCTION (DOCKET #4306)**

**ORDER DENYING AS MOOT MOTION TO STRIKE PORTIONS OF HUTNYAN DECLARATIONS AND EXHIBITS THERETO (DOCKET #4351)**

**ORDER DENYING MOTION TO STRIKE THE PROCTOR, KEISER, AND HOLLANDER DECLARATIONS (DOCKET #4352)**

**ORDER DENYING AS MOOT MOTION TO STRIKE MEYER DECLARATION (DOCKET #4377)**

**ORDER STAYING COURT'S ORDER PENDING CONSIDERATION OF THE PARTIES' POST-**

MINUTES FORM 90                                          Initials of Deputy Clerk: jh
CIVIL -- GEN                      1

**TRIAL MOTIONS**

**ORDER SETTING FORTH FURTHER BRIEFING SCHEDULE**

**ORDER REGARDING DISCOVERY MASTER PROPOSALS FOR PHASE 2**

**ORDER REGARDING JOINTLY LODGED LAPTOP COMPUTER**

**ORDER REGARDING SERVICE OF PERMANENT INJUNCTION**

**FILED CONCURRENTLY HEREWITH:**

**(1) MATTEL'S PROPOSED ORDER (AS MODIFIED BY THE COURT) GRANTING DECLARATORY JUDGMENT**

**(2) MATTEL'S PROPOSED ORDER (AS MODIFIED BY THE COURT) GRANTING MATTEL'S MOTION FOR CONSTRUCTIVE TRUST AND FOR FINDING LIABILITY AND INJUNCTIVE RELIEF PURSUANT TO CAL. BUS. & PROF. CODE § 17200**

**(3) MATTEL'S PROPOSED ORDER (AS MODIFIED BY THE COURT) GRANTING MATTEL'S MOTION FOR PERMANENT INJUNCTION**

These matters were heard on November 10, 2008, after extensive briefing by the parties. After a two-phase jury trial, the Court considers certain equitable issues (referred to as Phase 1C of the trial) and enters the following Order. Filed concurrently herewith are: (1) Mattel's Proposed Order (as modified by the Court) Granting Declaratory Judgment; (2) Mattel's Proposed Order (as modified by the Court) Granting Mattel's Motion for Constructive Trust and for Finding Liability and Injunctive Relief Pursuant to Cal. Bus. & Prof. Code § 17200; and (3) Mattel's Proposed Order (as modified by the Court) Granting Mattel's Motion for Permanent Injunction.

In reaching the rulings set forth herein, the Court has considered the parties' briefs and exhibits submitted during Phase 1C of the trial, the arguments of counsel, as well as the entire record (including the evidence properly submitted in Phase 1A and Phase 1B of the trial) and its previous Orders.

The Court refers collectively to all defendants herein, including MGA CEO Isaac Larian ("Larian"), as "the MGA parties". MGA Entertainment, Inc., is referred to as "MGAE".

The Court has carefully and deliberately considered the parties' well-presented legal and equitable arguments, authorities, and evidence concerning the motions identified above. In its final analysis, the Court finds, as did the jury, that the preponderance of evidence establishes that Carter Bryant ("Bryant") created and developed the name, the concept, and, together with Margaret Leahy, the prototypical sculpt for the hugely-successful Bratz brand of female fashion

Exhibit 5, Page 86

dolls while working as an employee of Mattel and while bound by the terms of an Inventions Agreement, which provided that all rights to such property, and the property itself, belong to Mattel. Moreover, the Court further finds, as did the jury, that the preponderance of the evidence establishes that Isaac Larian and MGAE intentionally interfered with Bryant's contractual relations with Mattel, aided and abetted Bryant's breach of fiduciary duty to Mattel, aided and abetted Bryant's breach of his duty of loyalty to Mattel, and unlawfully converted certain property of Mattel. Finally, the Court finds, as did the jury, that the preponderance of the evidence establishes that the MGA parties, in further developing, producing, and marketing its Bratz brand of female fashion dolls, are liable to Mattel for copyright infringement.

## I. The MGA Parties' Affirmative Defenses

Through its "Statement of Position Regarding Phase 1C Issues" (docket #4308), the MGA parties seek the Court's verdict in their favor as to their affirmative defenses of laches, estoppel, and waiver. As set forth below, the Court rules in favor of Mattel, and against the MGA parties as to these three remaining affirmative defenses.[1]

### A.    Laches

Laches is an equitable defense that may bar a claim where a defendant establishes "(1) lack of diligence by the plaintiff, and (2) prejudice to the defendant." Grand Canyon Trust v. Tucson Elec. Power Co., 391 F.3d 979, 987 (9th Cir. 2004). The MGA parties establish neither element.

Because the Court has already found that all the claims asserted against the MGA parties were filed within the applicable limitations periods, the Court starts with the presumption that laches is inapplicable. Jarrow Formulas, Inc. v. Nutrition Now, Inc., 304 F.3d 829, 835 (9th Cir. 2002).

Mattel has not delayed in bringing its claims against the MGA parties. The Court has already found, based on the undisputed evidence, that Mattel had no reason to know of its claims against Bryant until November 23, 2003, and that it had no knowledge of its claims against MGA and Larian until Bryant was deposed approximately a year later on November 4, 2004. MGAE intervened in Mattel's suit against Bryant approximately one month later on December 7, 2004. See Dec. 7, 2004, Stip. & Order (04-9059 docket #36) ("MGA[] believes . . . that it has a significantly protectable interest relating to the subject matter of the action, . . . and that MGA's interest is not adequately represented by the existing parties."). Thereafter, the parties briefed Mattel's motion to remand (filed on December 1, 2004, and denied on March 4, 2005), before a stay was entered in the case on May 20, 2005, pending the Ninth Circuit's consideration of an

---

[1]    By advancing only the affirmative defenses of laches, estoppel, and waiver in their Phase 1C brief, the MGA parties have implicitly waived the right to pursue any other affirmative defenses that they have not already expressly waived.

MINUTES FORM 90                                                      Initials of Deputy Clerk: jh
CIVIL -- GEN                        3

interlocutory appeal. After MGAE's intervention and before the stay was entered, the parties, including MGAE, engaged in discovery, and the Court considered certain discovery motions, including a motion to compel the deposition of Isaac Larian filed on March 17, 2005. The stay remained in place until after the Ninth Circuit affirmed the Court's denial of the motion to remand; it was lifted on May 16, 2006. Six months later, on November 17, 2006, Mattel sought leave to file its claims against the MGA parties. On this record, the Court finds no lack of diligence by Mattel.

Nor have the MGA parties shown they suffered resulting prejudice. MGAE was permitted to intervene in the lawsuit filed by Mattel against Carter Bryant only one month after it became evident that its rights could potentially be affected, and it did so with the express purpose of protecting its own rights. The other MGA parties have not shown that they suffered any prejudice unique to them or that the intervention by MGAE was not designed to protect their rights.

Moreover, the record does not support the evidentiary prejudice claimed by the MGA parties, and the record is devoid of any expectation-based prejudice (i.e., evidence of what MGA would have done differently had the claims against them been asserted sooner). Indeed, to the contrary, the record reveals that the MGA entities have continued to promote (and profit from) the Bratz brand during the entire pendency of the current litigation.

Because of the presumption that laches will not bar timely claims, and because the Court finds that the MGA parties have failed to establish either element of laches, the Court finds in favor of Mattel as to the affirmative defense of laches.

## B. Estoppel

For equitable estoppel to preclude Mattel's claims here, the MGA parties must establish four elements:

> (1) [T]he party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel has a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury.

Strong v. County of Santa Cruz, 15 Cal.3d 720, 725 (1975).

The MGA parties cannot establish the first element because, as noted above, the Court has already found, based on the undisputed evidence, that Mattel had no reason to know of its claims against Bryant until November 23, 2003, and that it had no knowledge of its claims against MGA and Larian until Bryant was deposed almost a year later.

The MGA parties have produced no evidence that Mattel intended them to act upon any apparent intention to refrain from asserting any claims against them. To the contrary, MGAE quickly intervened in Mattel's suit against Bryant to protect its interests.

MINUTES FORM 90
CIVIL -- GEN

4

Initials of Deputy Clerk: jh

Moreover, the MGA parties had no basis upon which to rely on Mattel's conduct. As found by the jury, they had superior knowledge regarding Bryant's creation of the Bratz drawings (and the timing of that creation).

Because the Court finds that the MGA parties cannot establish all the elements of estoppel, the Court finds in favor of Mattel as to the affirmative defense of estoppel.

## C.    Waiver

"Waiver is the intentional relinquishment of a known right with knowledge of its existence and the intent to relinquish it." United States v. King Features Entertainment, Inc., 843 F.2d 394, 399 (1988).

Here, the MGA parties contend that Mattel's tolerance of its employees' "moonlighting" for its competitors was so widespread as to constitute such a relinquishment. Although such implied waivers may be found where a plaintiff's conduct "is so inconsistent with the intent to enforce the right in question as to induce a reasonable belief that such right has been relinquished," Medico-Dental etc. Co. v. Horton & Converse, 21 Cal.2d 411, 432 (1942), no such conduct is present here.

No evidence of record suggests that Mattel tolerated the type of conduct in which Bryant engaged. The Court has previously addressed, and will not belabor here, the distinctions to be made between the limited evidence regarding "moonlighting" in the record and the conduct in which Bryant engaged. The evidence establishes, and the jury found, that while employed by Mattel as a fashion designer, Bryant preliminarily developed designs for and pitched a line of fashion dolls to Mattel's direct competitor. There is no evidence that Mattel has ever tolerated this type of conduct. Instead, several witness testified to their belief that such conduct would result in immediate termination of the offending employees. Indeed, the record is replete with details of the steps taken by Bryant, the MGA parties, and MGA employees to conceal the extent of Bryant's involvement in the Bratz project while he was employed by Mattel.

The Court finds in favor of Mattel as to the affirmative defense of waiver.

## II. Declaratory Relief Motion (docket #4303)

In its motion for declaratory judgment, Mattel seeks, pursuant to its thirteenth cause of action, a declaration of its rights (and the MGA parties' lack of rights) regarding the Bratz-related works, including certain drawings, sculpts, and ideas.[2] Mattel also seeks imposition of a

---

[2] The parties and the Court are all equally aware that ideas are not copyrightable. However, they are, as set forth in the Court's summary judgment order, assignable under California state law. As noted in the Court's summary judgment order, such an assignment was made by Bryant to Mattel.

MINUTES FORM 90                                                      Initials of Deputy Clerk: jh
CIVIL -- GEN                              5

Exhibit 5, Page 89

constructive trust as to MGA's copyright registrations in certain Bratz drawings. As detailed in the concurrently filed Order, the Court **GRANTS** Mattel's Motion for Declaratory Judgment (docket #4303).

In opposition, the MGA parties contend that the relief sought by Mattel should not be granted because it is preempted by the Copyright Act. The Court rejects this argument. The Court's ruling regarding preemption is set forth in the Court's summary judgment order, which the Court does not here modify.

Declaratory relief is generally granted "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." Bilbrey by Bilbrey v. Brown, 738 F.2d 1462, 1470 (1984).

Here, considering this legal standard and based on the relationship among the parties, the jury's verdicts, the Court's previous Orders, and the entire record, the Court finds that the declaratory relief sought by Mattel is appropriate.[3] Concurrently herewith, the Court has entered, as modified, Mattel's proposed order for declaratory relief.

### III. Motion for Constructive Trust and § 17200 Injunctive Relief (docket #4505)

As set forth more fully in its Motion, Mattel seeks, pursuant to California state law, imposition of a constructive trust over the trademarks "Bratz" and "Jade." Mattel also seeks, pursuant to its twelfth cause of action, a finding that the MGA parties violated Cal. Bus. & Prof. Code § 17200 on the basis of the jury's findings that the MGA parties converted Mattel's property, tortiously interfered by Mattel's contractual relations, and aided and abetted Bryant's breaches of his fiduciary duty and the duty of loyalty. Pursuant to this finding, and in addition to imposition of a constructive trust as to the Bratz and Jade marks, Mattel seeks an injunction prohibiting the MGA parties from using these marks. As detailed in the concurrently filed Order, the Court **GRANTS** Mattel's Motion for Constructive Trust and § 17200 Injunctive Relief (docket #4305).

#### A. Constructive Trust

Cal. Civ. Code § 2223 provides that "[o]ne who wrongfully detains a thing is an involuntary trustee thereof, for the benefit of the owner." Cal. Civ. Code § 2224 explicitly addresses things gained by wrongful acts: "One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he or she has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it." The parties agree on the resulting elements, which may be stated as

---

[3] The appropriateness of the constructive trust remedy is discussed below, in a separate section, but applies equally here.

MINUTES FORM 90
CIVIL -- GEN

6

Initials of Deputy Clerk: jh

follows: "(1) the existence of a *res* (property or some interest in property); (2) the right of a complaining party to that *res*; and (3) some wrongful acquisition or detention of the *res* by another party who is not entitled to it. <u>Communist Party v. 522 Valencia, Inc.</u>, 35 Cal.App.4th 980, 990 (1995).

Significantly, because the purpose of a constructive trust is to prevent unjust enrichment, enhancement of value is given to the beneficiary of the constructive trust. <u>Haskel Engineering & Supply Co. v. Hartford Acc. & Indem. Co.</u>, 78 Cal.App.3d 371, 375 (1978)

Here, the jury found that the MGA parties wrongfully acquired the idea for the name "Bratz" along with the idea and preliminary drawings for a line of fashion dolls. The same is true for the one Bratz character who retained the name given her by Carter Bryant: "Jade."[4]  In addition to wrongfully acquiring them, the MGA parties continue to wrongfully retain them. The MGA parties enhanced the value of the names by acquiring trademark rights to them. California law requires, in this instance, that a constructive trust be imposed as to these marks. Mattel is the beneficiary of the constructive trust and MGA's trademarks in "Bratz" and "Jade" inure to Mattel's benefit.

In making this conclusion, the Court has considered, and rejected, the MGA parties' argument that Mattel has disavowed an intention to seek this remedy or waited too long to seek it. Mattel has conceded that it is not asserting a trademark infringement claim. It cannot, because it has not used the relevant marks in commerce, and one must do so to acquire trademark rights. <u>Conversive, Inc. v. Conversagent, Inc.</u>, 433 F.Supp.2d 1079, 1089 (C.D. Cal. 2006) (citing <u>Brookfield Communications, Inc. v. West Coast Entertainment Corp.</u>, 174 F.3d 1036, 1046 (9th Cir. 1999)).  However, Mattel has not disavowed its intent to seek a constructive trust over the marks that were created by Bryant, with rights thereto acquired by the MGA parties through registration and use in commerce. This remedy is well within the scope of relief that is sought in Mattel's second amended answer and counterclaims, <u>see</u> SAAC at 73 ¶ 9 (Prayer for Relief) (seeking "imposition of a constructive trust over Bratz, including without limitations registrations and applications for registrations relating thereto made or filed by [the MGA parties] and third parties, and all profits, monies, royalties and any other benefits derived or obtained from [the MGA parties'] exercise of ownership, use, sale, distribution and licensing of Bratz"), and the Court has rejected all timeliness challenges to Mattel's claims.

## B.    § 17200 Violation

The record reveals sufficient evidence of injury-in-fact to Mattel to confer standing upon it to assert its § 17200 claim. Specifically, as testified to by Mattel officers (and acknowledged by MGAE officers and attorneys), Mattel has suffered lost market share as a result of the sales of the Bratz dolls. Moreover, the jury was instructed that "harm" to Mattel was a necessary element of a number of state law claims. <u>See</u> Final Jury Instructions as Given [Phase 1A], docket #4115, at

---

[4]  Bryant's other characters were re-named before they were marketed:  Zoe became the now-familiar Cloe, Hallidae became Sasha, and Lupe became Yasmin.

MINUTES FORM 90
CIVIL -- GEN                                7                    Initials of Deputy Clerk: jh

Instruction Nos. 22, 25-27, and 29 (intentional interference with contractual relations, aiding and abetting breaches of fiduciary duty and the duty of loyalty, and conversion). The jury's finding in favor of Mattel as to those claims necessarily implies a factual finding by the jury as to the specified element of harm to Mattel and, as explained in more detail below, the Court is bound by that implicit factual finding. Los Angeles Police Protective League v. Gates, 995 F.2d 1469, 1473 (9th Cir. 1993) (finding that by awarding damages on a specific claim, the jury implicitly found that the plaintiff had proven one particular element of that claim).

As set forth in a previous Order, this claim is only partially preempted by the Copyright Act. The preempted portion of Mattel's § 17200 claim did not survive summary judgment and is not at issue here.

Based on the jury's findings that the MGA parties converted Mattel's property, tortiously interfered with its contractual relations, and aided and abetted Bryant's breaches of his fiduciary duty and the duty of loyalty, the Court finds that the MGA parties also violated Cal. Bus. & Prof. Code § 17200.

## C.   § 17200 Injunctive Relief

Where a Court finds violation of § 17200, it has broad powers to shape appropriate injunctive relief:

> Any person who . . . has engaged . . . in unfair competition may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments, . . . as may be necessary to prevent the use or employment by any person of any practice which [either] constitutes unfair competition, . . . or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition.

Cal. Bus. & Prof. § 17203.

The injunction sought by Mattel's proposed order (as modified by the Court) is necessary to restore to Mattel the property acquired as a result of the MGA parties' unfair competition.

For the reasons set forth above, concurrently herewith, the Court has entered, as modified, Mattel's proposed order for constructive trust and § 17200 injunctive relief.

## IV.  Motion for Permanent Injunction (docket #4306)

## A.   Facts Supporting Injunctive Relief

The present motions, to varying degrees, implicate the question of to what extent a Court trying equitable claims is bound by a jury's factual findings related to the same underlying conduct.

MINUTES FORM 90
CIVIL -- GEN

8

Initials of Deputy Clerk: jh

The question comes into sharpest focus in Mattel's Motion for Permanent Injunction.

"[W]here legal claims are tried by a jury and equitable claims are tried by a judge, and the claims are based on the same facts, the Seventh Amendment requires the trial judge to follow the jury's implicit or explicit factual determinations." Los Angeles Police Protective League v. Gates, 995 F.2d 1469, 1473 (9th Cir. 1993) (internal quotation marks and citation omitted). In the absence of an express finding, a court must determine whether implicit factual determinations by the jury can be inferred, and should consult the jury's verdict and the jury instructions to make this determination. Id. (finding, based on an examination of the jury instructions and the jury's verdict awarding damages as to a specific claim, that the jury implicitly found that plaintiff had proven one particular element of that claim).

The Court is certainly aware that the jury returned an award of damages that was far less than that sought by Mattel. Moreover, the Court is aware that a controversy exists as to the actual amount of the jury's verdict. See Mattel's Submission Regarding Email from Juror No. 7 and Request to Recall the Jury, docket #4288 (denied by Order dated September 3, 2008, docket #4295).

MGA has argued that the jury has found that only the so-called "first generation" Bratz dolls were infringing. The jury made no express finding on this issue; the general verdict form they were provided did not request such a detailed finding. Thus, in accordance with Gates, the Court looks to the jury instructions to determine any implicit findings.

The jury was instructed that "Mattel is entitled to recover any profits attributed to the infringement." MGA attempts to equate the $10 million figure awarded by the jury for copyright infringement to the amount of profits related to the first generation Bratz dolls. The difficulty with this "equation" is that it is woefully unbalanced. To be sure, MGA's damages expert presented evidence that the first generation Bratz dolls netted approximately $4 million in profits; had the jury awarded this amount as copyright damages, then the Court might be persuaded that the jury implicitly found that the infringement was limited to the first generation Bratz dolls. But that is not the case. The factual finding advanced by MGA cannot be inferred from the jury award.

In making this ruling, the Court is mindful of the jury's note that queried whether they could find infringement as to the first generation dolls and no other dolls. The Court, without objection from counsel, answered that question affirmatively. Although this note reveals that the jury considered limiting their finding of infringement to the first generation, it does not reveal that they ultimately chose that conclusion. Again, had the jury awarded an amount equal to the amount of profits generated by the first generation Bratz dolls, the Court would find, based on the award and the jury's note, that the jury implicitly found infringement as to the first generation Bratz dolls only.

Alternatively, counsel posited at oral argument, that the jury found that a large portion of the

MINUTES FORM 90
CIVIL -- GEN

9

Initials of Deputy Clerk: jh

Bratz dolls infringed Mattel's copyrights, but only in very minute ways.[5]  Counsel likened the jury's damage award to a rug that, no matter which way one moved it, simply would not cover the floor. See Nov. 10, 2008, Tr. at 100-101.  Counsel explained that the jury's findings led to one conclusion or the other and, regardless of which conclusion was chosen, the jury's finding did not support an injunction:

> The rug is too small for an injunction, regardless of how you allocate that money.  You either come up with a vanishingly small subset of infringing products, or you come up with a vanishingly small percentage of infringement by all of the products.  And the jury has put that cap for us.

Id.  Although colorful, counsel's metaphor is not helpful.  Assuming that the Court would be bound by a jury's factual finding in a case where only two possible inferences -- both of which would lead the Court to the same conclusion -- were possible, this is not that case.

Where a jury returns a monetary award based on a particular piece of evidence such as an expert report, the Court will infer the factual findings that necessarily flow from it.  But where, as here, the Court and the parties are left to hazard various guesses as to the jury's intentions, the Court can make no principled inferences and must therefore engage in its own fact-finding.[6]

The Court has carefully examined each of the exhibits attached to the proposed preliminary injunction, as well as the actual exhibits being stored in Courtroom Four of the U.S. Courthouse in Riverside, and finds that the dolls depicted in Exs. 3 and 4, and the products depicted in Exs. 5 and 6, are, pursuant to the standard set forth in the Court's Orders dated July 24, 2008, and August 15, 2008, substantially similar to Mattel's registered copyrighted drawings and are embodiments of the sculpts depicted in Exs. 1 and 2.  In doing so, the Court has first examined the specific expressive elements of the works at issue and has compared them to those found in the exhibits referenced

---

[5]  This argument was not raised in the opposition papers filed by the MGA parties, and is rejected for that reason as well.  See Opp. at 21 ("Here, the circumstances clearly show that the only reasonable conclusion to draw is that the jury's infringement finding was limited to a small universe of products, specifically the first generation Bratz dolls as clothed and packaged.") (emphasis added).

[6]  The MGA parties hazard such a guess in their opposition, wherein they attempt to explain how, in the jury's mind, $4 million in first-generation profits could equate to $10 million total copyright infringement award:  "The jury's decision to award $6 million against MGA[E] (and $10 million total) rather than simply the $4 million] argued by MGA as profits for the first generation may be due to the jury believing that MGA's proffer of $4 million in profits on nearly $80 million revenue was a bit low."  Opp. at 21 n.30.  This guessing game illustrates why no factual findings can be inferred from the jury's copyright infringement award and why the Court is obligated to make its own factual findings.

MINUTES FORM 90
CIVIL -- GEN

10

Initials of Deputy Clerk: jh

above, and the Court has then further examined the overall similarity of the expression in various works from the perspective of the ordinary observer. Although the Court recognizes that there are differences between the works, the Court ultimately finds that those dolls and products set forth in the above-referenced exhibits are **substantially similar** to Mattel's registered copyrighted drawings and are embodiments of the sculpts depicted in Exs. 1 and 2. Especially important to the Court's conclusion is the consistency of the particularized expression of the dolls' heads, lips, eyes, eyebrows, eye features, noses, as well as the particularized expression of certain anatomical features relative to others (most notably the doll lips, doll eyes, doll eyebrows, and certain other doll eye features) and de-emphasis of certain anatomical features (most notably the minimalized doll nose and thin, small doll bodies). Also important to the Court is the particularized, synergistic compilation and expression of the human form and anatomy that quite clearly expresses a unique style and conveys a distinct look or attitude, especially as perceived by the intended consumer market (7-12 year old girls). The evidence on this latter point is particularly compelling, supported by both analytical and market analysis. Together, these features clearly give each of the dolls the particularized expression to which the Court referred in its July 24, 2008, and August 15, 2008, Orders.

## B.      Standard for Awarding Permanent Injunctive Relief

The Supreme Court recently announced the standard for granting a permanent injunction:

> According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006).

### 1.      Irreparable Injury

The Court begins, then, by looking to whether Mattel has established that it will suffer irreparable injury if an injunction is not granted.

Prior to the eBay decision, where a plaintiff sought a preliminary injunction, irreparable injury was presumed in intellectual property cases; in light of the eBay decision, some doubt has been cast on whether courts should continue to apply that presumption. See Broadcom Corp. v. Qualcomm Inc., 543 F.3d 683, 702 (Fed. Cir. 2008) (noting that the continuing viability of the presumption is "an open question").

Mattel has established its exclusive rights to the Bratz drawings, and the Court has found

MINUTES FORM 90
CIVIL -- GEN                                     11                          Initials of Deputy Clerk: jh

that hundreds of the MGA parties' products -- including all the currently available core female fashion dolls Mattel was able to locate in the marketplace -- infringe those rights. The MGA parties have evinced an intention to continue marketing those dolls. This represents a wholesale inability on the part of Mattel to enforce its exclusive rights under the Copyright Act, amounting to irreparable harm. Taylor Corp. v. Four Seasons Greetings, LLC, 403 F.3d 958, 968 (8th Cir. 2005).

MGA criticizes Mattel's reliance on Taylor, citing Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd., 518 F.Supp.2d 1197, 1211 n.13 (C.D. Cal. 2007) (Wilson, J.). The Grokster case holds that, in copyright permanent injunction cases, a presumption of irreparable injury is not permitted in light of eBay. In Grokster, the court rejected the rationale of Taylor, stating:

> [T]his Court is not persuaded by the Eighth Circuit's pre-eBay
> conclusion in Taylor Corp. v. Four Seasons Greetings, LLC, 403 F.3d
> 958, 968 (8th Cir. 2005), that because "[a plaintiff] certainly has the right
> to control the use of its copyrighted materials, . . . irreparable harm
> inescapably flows from the denial of that right." In substance, such
> language is nothing more than a disguised presumption, particularly
> with the use of the word "inescapably." After eBay, Plaintiffs cannot rely
> on the pure fact of infringement in order to establish irreparable harm.

Grokster, 518 F. Supp.2d at 1211 n.13. Judge Wilson's point is well-taken. Although the Taylor court did not purport to apply a presumption of irreparable harm, its use of the word "inescapably" in this phrase certainly could indicate that it was merely presuming irreparable harm. However, a review of the Taylor case makes clear that the Eighth Circuit considered the implications of allowing an infringer to continue to infringe: "[I]n copyright infringement actions, the denial of a request for injunctive relief could otherwise "amount to a forced license to use the creative work of another." Taylor Corp., 403 F.3d at 967-68. This rationale removes Taylor further from the application of a "disguised presumption" of irreparable harm and closer to an actual finding of irreparable harm.

At least one district court within the Ninth Circuit is in accord with the Court's decision today, as it has decided, post-eBay, that a plaintiff who establishes past infringement and the threat of future infringement amounts to irreparable harm. Designer Skin, LLC v. S & L Vitamins, Inc., 2008 WL 4174882 at *5 (D. Ariz. 2008) (Teilborg, J.). Judge Teilborg's rationale is well articulated:

> Whatever else might be said against the propriety of a rule that holds
> that past infringement plus the threat of future infringement equals
> irreparable harm, it seems clear to this Court that such a rule would not
> run afoul of eBay's directives. First of all, the eBay Court did not
> address the showing necessary to establish "irreparable harm." It
> merely held that the plaintiff has the burden of proving it. Second, this
> two-part test does not resurrect the presumption of irreparable harm
> impliedly laid to rest by the eBay court. It simply recognizes that a

MINUTES FORM 90                                           Initials of Deputy Clerk: jh
CIVIL -- GEN                          12

Exhibit 5, Page 96

plaintiff meets the burden of proving irreparable harm by making this two-part showing. And finally, the two-part test does not represent a rule [prohibited by eBay] that an injunction automatically follows a determination that a copyright has been infringed. . . . In exercising their equitable discretion, courts would still have the freedom to deny injunctive relief when the public interest or the balance of hardships weighs against such relief.

Designer Skin, 2008 WL 4174882 at *5 (citation omitted).

Indeed, this is not so complex an issue as applied to the facts of this particular case. The statutory directive to the Court is clear: "Any court having jurisdiction of a civil action arising under this title may, . . . grant temporary and final injunctions on such terms as it may deem reasonable **to prevent or restrain infringement of a copyright**." 17 U.S.C. § 502 (emphasis added). The Court can envision no case more appropriate for a finding of irreparable harm. Here, as the record shows and as the jury found, an employee bound by contract and fiduciary duty to communicate to his employer (and keep confidential from all others) all copyrightable works he creates during the term of his employment, not only fails to so communicate but actually secretly purports to convey the rights thereto to a direct competitor of his employer. The rights to those works are actively concealed from their true owner (by both the employee and the competitor) for years while the competitor exploits the works, reaping profits therefrom totaling hundreds of millions of dollars. After millions of pages of discovery are produced, thousands of filings are submitted, scores and scores of motions are decided by the Court, and after months of trial and two jury verdicts in favor of the plaintiff, defendants remain steadfast in their intention to continue to produce their infringing products. Viewed in this light, Mattel has established irreparable injury on the basis of the MGA parties' past infringement and the high probability of continued acts of infringement.

### 2. Inadequate Legal Remedies

Unless MGA is enjoined, Mattel would be forced to sue each retailer and distributor to stop the sale and distribution of the infringing dolls; therefore, the legal remedies are inadequate. See Continental Airlines, Inc. v. Intra Brokers, Inc., 24 F.3d 1099, 1105 (9th Cir. 1994).

### 3. Balance of Equities

Factually, the hardship on MGA weighs very heavily upon the Court. The Court has expressed its concerns in this regard on the record. The evidence at trial showed that, at least historically, Bratz is the brand that has made MGA profitable. And the proposed injunction addresses the core of that brand -- most notably, the female fashion dolls.

However, where, as here, the only hardship that will be suffered is lost profits from the cessation of its infringing activities, the Court, in the final analysis, must afford this very little -- if any -- weight. Triad Systems Corp. v. Southeastern Exp. Co., 64 F.3d 1330, 1338 (9th Cir. 1995) ("Where the only hardship that the defendant will suffer is lost profits from an activity which has

MINUTES FORM 90                                                      Initials of Deputy Clerk: jh
CIVIL -- GEN                              13

been shown likely to be infringing, such an argument in defense merits little equitable consideration
. . . .") (internal quotation marks and citations omitted), <u>accord</u>, <u>Cadence Design Systems, Inc. v.
Avant! Corp.</u>, 125 F.3d 824, 829-30 (9th Cir. 1997) (collecting cases). The balance of equities
favor Mattel.

### 4. Public Interest

There is a strong economic interest, especially in these troubled economic times, in
maintaining a profitable enterprise as a going concern. However, there is also a strong public
interest in enforcing copyright laws in a uniform manner. Indeed, nothing is more essential to long-
term economic prosperity than the stability provided by the rule of law. Although the MGA parties
raise excellent points in their opposition, in the end, the public interest is served by precluding
defendants from engaging in copyright infringement. The injunction issued by the Court does no
more than that.

### C. Scope of Injunction

The scope of the permanent injunction is set forth in a separate order. Four issues raised in
the parties' papers warrant the brief discussion that follows.

### 1. Impoundment and Destruction

As set forth more fully in its motion, Mattel seeks impoundment of Bratz dolls and
destruction of the specialized plates, molds, and matrices used to make them. Impoundment of
existing infringing products and the destruction of the means to make those products are clearly
remedies contemplated by the Copyright Act. <u>See</u> 17 U.S.C. § 503(a). The MGA parties argue
that these remedies are inappropriate because there is no ongoing infringement or, at the very
least, its products infringe very little. In its findings supporting the issuance of a permanent
injunction, the Court has rejected this premise, and the Court finds that the requested
impoundment and destruction is an appropriate remedy.[7]

### 2. Recall

In light of the scope of infringement found by the Court, and in light of the fact that the
injunction addresses products that directly compete with Mattel's products, the Court has ordered
the recall of infringing products from retailers. <u>See</u> <u>CyberMedia, Inc. v. Symantec Corp.</u>, 19
F.Supp.2d 1070, 1079 (N.D. Cal.1998); Patry on Copyright, § 22:81.

---

[7] No party shall destroy any of the implements used to make the Bratz dolls that are the
subject of the permanent injunction absent a specific order of this Court authorizing such
destruction.

Exhibit 5, Page 98

### 3. Royalty

The MGA parties argue that the more appropriate remedy to be imposed here is for the Court to order a royalty instead of an injunction. The difficulty in this proposal is that it is premised on the idea that the ongoing infringement, if any, is minute. See Opp. at 29-32 (suggesting a royalty of .3% would be appropriate). As noted above, the Court has rejected this premise. Moreover, although the Court has been hopeful that an out-of-court resolution involving such a remedy may have been obtained, and has gone to great lengths to encourage both sides to pursue such a resolution in good faith, their failure so far to do so underscores the Court's present view, which is based on the evidence and argument of record, that the hostility between these parties is such that this form of remedy is unworkable.

### 4. Appointment of a Special Master

Mattel suggests that the Court appoint a special master to "monitor implementation of the relief granted by the Court." Motion at 28. The MGA parties have not indicated their position on this issue. The appointment of a special master to monitor implementation of the permanent injunction is warranted; this task could easily overwhelm the Court's resources. Subject to the Court's consideration of any in camera objections submitted to the Court by the parties, the Court will select a Special Master from the list submitted below.

## V. Motion to Strike Portions of Hutnyan Declarations and Exhibits Thereto (docket #4351)

The MGA parties move to strike certain evidence offered by Mattel on the issue of harm suffered by Mattel, contending the evidence is inadmissible. This motion is **DENIED AS MOOT.** Although Mattel has offered additional evidence of harm, the Court has found the evidence of harm to Mattel offered during Phases 1A and 1B sufficient to resolve the issues presented in the current motions.

## VI. Motion to Strike the Proctor, Keiser, and Hollander Declarations (docket #4352)

The motion is **DENIED** as to the Proctor declaration. The declaration is a helpful presentation of appropriate argument and/or observations of counsel for the Court's consideration.

The motion is **DENIED** as to the Keiser declaration. The Keiser declaration authenticates two-dimensional depictions of three-dimensional models he scanned using a sophisticated scanning machine.

The motion is **DENIED** as to the Hollander declaration. This declaration was the subject of extensive briefing in MGA's motion in limine 8, which the Court has reviewed. Hollander's declaration, which presents survey evidence of the target market, is relevant to application of the

MINUTES FORM 90
CIVIL -- GEN

Initials of Deputy Clerk: jh

intrinsic test. The Court, in fact, instructed the jury to consider how girls 7 to 12 would view the Bratz dolls. Hollander's survey attempts to determine just that. The Court has considered the methodological flaws pointed out by MGA in weighing the evidence Hollander presents.

## VII. Motion to Strike Meyer Declaration (docket #4377)

Mattel moves to strike the Meyer declaration. This motion is **DENIED AS MOOT.** This declaration sets forth a calculation justifying the proposed .3% royalty. The Court has rejected the proposal that a royalty be imposed.

## VIII. Stay of this Order

This Order, and the three concurrently filed orders, are stayed pending the Court's consideration of the parties' post-trial motions. This stay shall remain in place until lifted by further Order of this Court.

## IX. Briefing Schedule for Post-Trial Motions

Notwithstanding the Court's earlier order, the motions referred to in ¶ 3 of the Court's September 2, 2008, Order may be filed no later than December 22, 2008. Response briefs may be filed no later than January 12, 2009. Replies may be filed no later than January 19, 2009. A hearing on this matter is set for Wednesday, February 11, 2009, at 10:00 a.m., in Courtroom One of the above-referenced Court.

## X. Discovery Master Proposals for Phase 2

The Court previously stated that it would submit for counsel's consideration the names of potential Discovery Masters for Phase 2 that possess both the resources to handle the scope of the anticipated discovery disputes as well as the personal confidence of this Court. The Discovery Master would serve pursuant to the same terms and conditions of the Phase 1 Discovery Master. In addition, as noted above, the Court also intends to appoint a Special Master to oversee implementation of the permanent injunction. The Court provides for counsels' consideration the following individuals who meet the Court's requirements, and have indicated to the Court a willingness and an ability to serve in one or both of these roles. Counsel are directed to file any objections to any or all of the proposed Masters on or before December 22, 2008. Any such objections are to be submitted *in camera* and under seal with the Court. After considering any objections, as well as any preferences expressed by the parties, the Court will make an appointment at the appropriate time.

Exhibit 5, Page 100

Patrick A. Fraioli, Jr.
Moldo Davidson et al LLP
2029 Century Park East, 21st Fl.
Los Angeles, CA 90067
310-551-3100
pfraioli@mdfslaw.com

Jan L. Handzlik
Howrey LLP
550 S. Hope Street, Suite 1100
Los Angeles, CA 90071
213-892-1802
handzlikj@howrey.com

Kendall H. MacVey
Best Best & Krieger LLP
P.O. Box 1028
Riverside, CA 92502-1028
951-686-1450

David G. Moore
Reid & Hellyer
P.O. Box 1300
Riverside, CA 92502
951-682-1771
dmoore@rhlaw.com

Robert C. O' Brien
Arent Fox LLP
555 W. 5th Street, 48th fl.
Los Angeles, CA 90013
213-629-7400
obrien.robert@arentfox.com

C. Michael Zweiback
Alston & Bird LLP
333 S. Hope Street, 16th Fl.
Los Angeles, CA 90071
213-576-1000
michael.zweiback@alston.com

## XI. Jointly Lodged Laptop Computer

The Court is in possession of a jointly lodged laptop computer used to access the Phases 1A and 1B trial transcripts maintained by the parties. The Court will retain possession of the laptop computer until after its ruling on the motions referred to in section IX, above, and the parties are directed to follow the procedure outlined in the Court's September 9, 2008, Order regarding the e-filing of excerpts of transcripts cited in their anticipated motions.

## XII. Service of Permanent Injunction

The service of Mattel's proposed permanent injunction by the Clerk presents challenges given the limited resources of the Court. The permanent injunction, for reasons explained by Mattel on the record, attaches to it approximately 900 color copies. Accordingly, although the Court directs the Clerk to serve on all parties a copy of the permanent injunction, the Court directs Mattel, no later than ten days after the entry of this Order, to serve a copy of the permanent injunction, together with the color exhibits, on all parties.

**IT IS SO ORDERED.**

# EXHIBIT 6

O

1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                      CENTRAL DISTRICT OF CALIFORNIA

10                            EASTERN DIVISION

11  CARTER BRYANT, an individual,       | CASE NO. CV 04-9049 SGL (RNBx)
                                          Consolidated with
12              Plaintiff,               | Case Nos. CV 04-09059 & CV 05-2727

13          vs.                          | ORDER GRANTING MATTEL, INC.'S
                                          MOTION FOR PERMANENT
14  MATTEL, INC., a Delaware              INJUNCTION
    corporation,
15
                Defendant.
16

17  AND CONSOLIDATED ACTIONS

18

19

20

21

22

23

24

25

26

27

28

Case 2:04-cv-09049-SGL-RNB Document 4443 Filed 12/03/2008 Page 2 of 49

<u>ORDER</u>

Having considered Mattel, Inc.'s Motion for Permanent Injunction (the "Motion"), the opposition thereto, and all other papers, evidence and arguments submitted in connection therewith, as well as the evidence admitted at trial and the jury's verdicts in the Phase 1 trial, the Court hereby GRANTS Mattel's Motion against MGA Entertainment Inc. ("MGA"), MGA Entertainment (HK) Ltd. ("MGA Hong Kong"), and Isaac Larian ("Larian") (MGA, MGA Hong Kong, and Larian are, collectively, "Defendants"), and hereby ORDERS as follows:

1.  MGA, MGA Hong Kong, and Larian, along with their respective officers, directors, principals, agents, representatives, servants, employees, affiliates, successors or assigns, and any person or entity acting on their behalf or in concert or participation with them, are hereby PERMANENTLY ENJOINED from manufacturing, procuring the manufacture of, making, producing, reproducing, copying, distributing, transferring, displaying, marketing, advertising, shipping, importing, exporting, licensing, offering to license, selling or offering to sell:

(a)  Any doll, product or other item that embodies or depicts in whole or in part, or incorporates or uses in any manner, the head and/or body sculpt shown in Exhibit 1 (sometimes known as the "core Bratz fashion doll production sculpt"), which is incorporated herein by this reference.

(b)  Any doll, product or other item that embodies or depicts in whole or in part, or incorporates or uses in any manner, the head and/or body sculpt shown in Exhibit 2 (sometimes known as the "Bratz Movie sculpt"), which is incorporated herein by this reference.

(c)  Any doll shown in Exhibits 3 to 4, inclusive, which are incorporated herein by this reference, except Cloe's younger sister depicted at Exhibit 3, page 277; the younger version of Yasmin depicted at Exhibit 3, page 278; and the younger Alicia

1    depicted at Exhibit 4, page 379, if those dolls are packaged

2    separately from a doll that includes a doll incorporating the core

3    Bratz fashion doll production sculpt or Bratz Movie sculpt

4    (Exhibits 1 and 2).

5    (d)    Any doll or portion of a doll shown in Exhibits 5 to 6, inclusive,

6    which are incorporated herein by this reference, except the dolls

7    depicted at Exhibit 5, pages 551 through 555, inclusive, and the

8    dolls depicted at Exhibit 6, pages 556, 557, 558, and 565.

9    (e)    Any product, packaging or other item that embodies or depicts in

10    whole or in part, or incorporates or uses in any manner, the

11    artwork shown on the packaging set forth in Exhibit 7, which is

12    incorporated herein by this reference.

13    (f)    Any doll, product, packaging or other item that embodies or

14    depicts in whole or in part, or incorporates or uses in any

15    manner, any of the Jade, Cloe, Yasmin and Sasha Bratz

16    characters, including without limitation the items shown in

17    Exhibits 3 and 5, which are incorporated herein by this reference.

18    (g)    Any marketing or advertising materials that embody or depict in

19    whole or in part, or incorporate or use in any manner, any of the

20    dolls, products, items or other matter described in paragraphs (a)

21    through (f) above, including without limitation the marketing or

22    advertising materials shown in Exhibits 8 (screen captures from

23    television commercials) to 9 (print advertisements depicting any

24    dolls incorporating the core Bratz fashion doll production sculpt

25    or Bratz Movie sculpt (Exhibits 1 and 2), inclusive, which are

26    incorporated herein by this reference.

27    (h)    Any doll, product, packaging, advertising or other item or

28    materials that counterfeits, copies or is substantially similar to

Case 2:04-cv-09049-DOC-RNB Document 6889 Filed 09/28/09 Page 67 of 133 Page ID
#:228546
Case 2:04-cv-09049-SGL-RNB Document 4445 Filed 12/03/2008 Page 4 of 10

Mattel's copyright protected head and/or body sculpt shown in
Exhibit 10, which is incorporated herein by this reference,
including without limitation the Bratz fashion dolls known as
Cloe, Yasmin, Sasha, Jade, Ciara, Dana, Diona, Felicia, Fianna,
Katia, Kiana, Krysta, Kumi, Lana, Leah, Lela, Liliana, Lilee,
Lina, Maribel, May Lin, Meygan, Nevra, Nevaeh, Nona, Nora,
Oriana, Peyton, Phoebe, Rina, Roxxi, Sharidan, Sierrna, Sorya,
Sunya, Tess, Tiana, Trinity, Vinessa, and Valentina, and any and
all other dolls employing a sculpt which is substantially similar
to Exhibit 10.

(i) Any doll, product, packaging, advertising or other item or
materials that embodies or depicts in whole or in part, or
incorporates or uses in any manner, any of the Jade, Cloe,
Yasmin and Sasha Bratz characters depicted or described in
Exhibit 11, which is incorporated herein by this reference; and

(j) Any doll, product, packaging, advertising or other item or
materials that counterfeit, copy or are substantially similar to
Mattel's Bratz-related copyrighted works, including without
limitation such works in Exhibits 11 and 12, inclusive, which are
incorporated herein by this reference.

2. MGA, MGA Hong Kong, and Larian, along with their respective
officers, directors, principals, agents, representatives, servants, employees, affiliates,
successors or assigns, and any person or entity acting on their behalf or in concert or
participation with them, are further hereby PERMANENTLY ENJOINED from
engaging in any of the following acts:

(a) Copying, imitating, selling, offering to sell, marketing,
distributing, importing, displaying or making any use of the

1            copyrighted works shown in Exhibits 10 to 12, inclusive, which

2            works are owned by Mattel.

3     (b)    Engaging in any and all further acts of infringement of the

4            copyrighted works shown in Exhibits 10 to 12, inclusive, which

5            works are owned by Mattel.

6     (c)    Asserting any ownership of rights or any right, title or interest in

7            the copyrighted works shown in Exhibits 10 to 12, inclusive,

8            which works are owned by Mattel.

9     (d)    Transferring, disposing of, destroying, spoliating or secreting any

10           documents, records, recordings or materials, whether in

11           electronic or non-electronic form, that evidence, relate to or

12           pertain to any aspect of the dolls, products, packaging, items or

13           other materials referred to in paragraphs 1(a) through 1(k) above,

14           inclusive, including without limitation any and all agreements,

15           contracts, correspondence, communications, invoices, purchase

16           orders, sales orders, manufacturing records, import or export

17           records, sales records, ledgers, inventory records and shipping

18           records relating thereto.

19    (e)    Transferring, disposing of, destroying, spoliating or secreting any

20           documents, records, recordings or material, whether in electronic

21           or non-electronic form, that in any manner evidence, relate to or

22           pertain to any products, services or activities using or displaying

23           any simulation, counterfeit, reproduction or copy of, or are

24           derived from, Mattel's copyrighted works shown in Exhibits 10

25           to 12, inclusive, which are incorporated herein by this reference.

26    (f)    Transferring, disposing of, destroying, spoliating, secreting or

27           exporting any products, product packaging, labels, signs, prints,

28           dies, wrappers, receptacles, advertisements or any other tangible

1     items (including without limitation computer files) that in any

2     manner utilize, contain, evidence, reproduce, display, or relate to

3     any simulation, counterfeit, reproduction or copy of, or are

4     derived from, (i) the dolls, products, packaging, items or other

5     materials referred to in paragraphs 1(a) through 1(k) above,

6     inclusive, or (ii) Mattel's copyrighted works shown in Exhibits

7     10 to 12, inclusive, which are incorporated herein by this

8     reference.

9     (g)    Transferring, disposing of, destroying, spoliating, secreting or

10       exporting any plates, molds, matrices, and other means of

11       making or manufacturing (i) the dolls, products, packaging,

12       items or other materials referred to in paragraphs 1(a) through

13       1(k) above, inclusive, or (ii) any reproduction, counterfeit, copy,

14       substantially similar likeness, or derivative of Mattel's

15       copyrighted works shown in Exhibits 10 to 12, inclusive.

16     (h)    Assisting, aiding or abetting any other entity or person in

17       engaging in or performing any of the activities referred to in

18       paragraphs 1(a) through 1(k), inclusive, and/or in paragraphs 2(a)

19       through 2(h), inclusive.

20     3.     At Defendants' expense, Defendants shall deliver to Mattel's

21 counsel for impoundment, at such location in the Central District of California as

22 Mattel's counsel may direct, all dolls, products, product packaging, labels, signs,

23 prints, dies, wrappers, receptacles and advertisements, in the direct or indirect

24 possession, custody or control of Defendants, their officers, directors, principals,

25 agents, servants, employees, successors or assigns, or any person or entity acting on

26 their behalf or in concert or participation with them, that are referred to in

27 paragraphs 1(a) through 1(k), inclusive, and/or in paragraphs 2(a) through 2(h),

28

1  inclusive, together with all plates, molds, matrices and other means of making the

2  same.  Mattel's counsel is hereby appointed substitute custodian for all such items.

3       4.  Defendants are hereby ORDERED to procure the return, and to

4  withdraw and recall, from any and all channels of trade and distribution, including

5  without limitation from retail shelves and from on-line retailers, all of the dolls and

6  doll products that are referred to in paragraphs 1(a) through 1(k), inclusive, and/or in

7  paragraphs 2(a) through 2(h), inclusive.  As to each entity or person returning such

8  dolls and doll products, Defendants shall refund all monies paid by each entity or

9  person in connection with such dolls and doll products and shall reimburse each

10 such entity or person for all associated shipping charges.

11       5.  Defendants shall hand serve upon Mattel's counsel a declaration,

12 made under oath, that sets forth fully and completely the following information:  (a)

13 the identity of each and every doll, product, package or other item manufactured,

14 marketed, displayed, distributed, imported, exported, sold or offered for sale by or

15 for Defendants that are referred to in paragraphs 1(a) through 1(k), inclusive, and/or

16 in paragraphs 2(a) through 2(h), inclusive; (b) for each such doll, product, package

17 or other item, the number of units manufactured, marketed, displayed, distributed,

18 shipped, imported, exported, sold or offered for sale by or for Defendants; (c) for

19 each unit of each such doll, product, package or other item, the purchaser, transferee

20 or recipient of each such unit(s), the quantities acquired by such purchaser,

21 transferee or recipient and complete contact information (including limitation the

22 address, telephone number, fax number and email address where known) for each

23 such purchaser, transferee or recipient; (d) for each unit of such doll, product,

24 package or other item, the current or last known location of each such unit,

25 including without limitation the location of all such dolls, products, package or other

26 items in Defendant's inventory; and (v) for each person or entity to whom or which

27 Defendants have promoted, advertised, marketed or offered to sell any doll, product,

28 package or other item that is the subject of this Order, the identity of, and complete

Case 2:04-cv-09049-DOC-RNB Document 6889 Filed 09/29/09 Page 71 of 133 Page ID
#:228550
Case 2:04-cv-09049-SGL-RNB Document 4445 Filed 12/03/2008 Page 8 of 19

1  contact information for (including limitation the address, telephone number, fax

2  number and email address where known), each such person or entity.

3          6.      At Defendants' expense, Defendants shall make written contact

4  (either through fax or electronic mail) with (i) each retailer, distributor, wholesaler,

5  importer, exporter, customer, licensee or any other person and entity to or through

6  whom Defendants have shipped, transferred, imported, exported or sold any doll,

7  product or other item that is the subject of this Order; and (ii) each retailer,

8  distributor, wholesaler, licensee, potential licensee, customer, potential customer or

9  any other person and entity who Defendants have contacted (whether by mail,

10 electronic mail, orally or otherwise) within the past ninety (90) days in marketing,

11 promoting or advertising any doll, product or other item that is the subject of this

12 Order, and shall provide each such person and entity with a copy of this Order and

13 with a verbatim copy of the following notice, in legible and conspicuous print, in its

14 entirety (hereinafter, the "Notice"):

<u>NOTICE PUBLISHED PURSUANT TO</u>

<u>ORDER OF THE UNITED STATES DISTRICT COURT</u>

YOU ARE HEREBY ADVISED as follows:

Recently you may have bought, seen, or been contacted regarding, the
sale of Bratz dolls or other Bratz products.

Pursuant to the rulings of the United States District Court, Mattel is the
owner of Bratz-related copyrights that are infringed by Bratz dolls,
products and packaging manufactured by or for MGA.

The Court has ordered MGA to immediately cease any further
manufacture, sale, promotion, shipment or distribution of Bratz dolls,
products and packaging.

In addition, the Court has ordered that Bratz dolls must be returned
immediately to the following address:  MGA Entertainment, Inc., Attn:
Customer Service, 163000 Roscoe Blvd., Suite 150, Van Nuys, CA
91406.

MGA will refund to you all monies paid by you for these dolls and reimburse you for all associated shipping charges.

7. At Defendants' expense, Defendants shall post in legible and conspicuous print a verbatim copy of the entire Notice set forth in Paragraph 6, above, upon the home page of MGA's web site at www.mgae.com beginning within twenty-four hours of receipt of notice of this Order and continuing for a period of no less than one hundred and twenty (120) days.

8. Defendants, and any person or entity acting on their behalf or in concert or participation with Defendants, shall fully comply with Paragraphs 1 and 2 of this Order immediately, shall fully comply with Paragraph 6 of this Order within two (2) calendar days of the date of this Order, shall fully comply with Paragraph 5 of this Order within seven (7) calendar days of the date of this Order and shall fully comply with Paragraphs 3 and 4 of this Order within thirty (30) days of this Order. In the event that any additional doll, product or item that is the subject of this Order subsequently is delivered to or comes within the direct or indirect possession, custody or control of Defendants, Defendants shall deliver such additional doll, product or item to Mattel's counsel within two (2) calendar days in accordance with the terms of Paragraph 3, above.

9. Within forty (40) calendar days of the date of this Order, Defendants shall file with the Court, and personally serve on counsel for Mattel, a report in writing under oath setting forth the actions taken to comply with the terms herein pursuant to 15 U.S.C. § 1116(a). Such Report shall have appended to it complete, true and accurate copies of each communication ordered to be sent pursuant to Paragraph 6 of this Order.

10. Pursuant to Federal Rule of Civil Procedure 53, the Court hereby appoints a special master to supervise implementation of the requirements of this Order (the "Special Master").

11.     Any and all disputes arising out of this Order and/or motions or applications seeking to enforce the terms of this Order shall be presented to the Special Master for resolution in the first instance, once the Special Master is appointed.  The Special Master shall have the authority to set the time, place and manner of hearings and other proceedings he or she will conduct; to preside over hearings, whether telephonic or in person; to take evidence in connection with disputes before the Special Master; to make inspections in connection with the requirements of this Order, including inspections of Defendants' facilities and warehouses; to issue orders resolving motions, applications and matters arising out of this Order and/or seeking to enforce the terms of this Order; to issue orders awarding non-contempt sanctions, including, without limitation, the award of attorney's fees; and to issue reports and recommendations on matters for which the Special Master lacks jurisdiction to issue an order, including, without limitation, reports and recommendations regarding contempt sanctions.  In addition to any other filing procedures the Special Master may permit, the Special Master shall permit the filing of *ex parte* applications to enforce the terms of this Order, which must be heard and adjudicated within ten (10) calendar days of filing.  A party may bring an *ex parte* application for relief pursuant to this provision only upon certifying, as an officer of the Court, that such expedited adjudication is required and could not be avoided in due course.  The parties shall file with this Court, contemporaneously, the original of all submissions made to the Special Master such that the Court's Docket shall be complete and include all pertinent submissions.  Third parties shall be bound by the Special Master's orders to the same extent as Orders of this Court.

12.     The Special Master's orders, reports and recommendations shall be treated as rulings made by a Magistrate Judge of this Court and may be reviewed in the same manner and pursuant to the same procedures as this Court reviews such orders, reports and recommendations of a Magistrate Judge.  A court reporter shall

07209/2650992.1     Exhibit 6, Page 111

1  transcribe all hearings and proceedings held before the Special Master.  The Special

2  Master's fees, and other costs incurred in connection with proceedings before the

3  Special Master, including the fees of court reporters, shall be paid one-half by

4  Mattel, Inc. and one-half by MGA Entertainment, Inc. unless, consistent with the

5  Federal Rules of Civil Procedure, the Special Master orders otherwise.  The Special

6  Master shall not have *ex parte* communications with a party or counsel.

7  　　　　　13.　　The Special Master shall be authorized to receive information

8  designated "CONFIDENTIAL" and "CONFIDENTIAL--ATTORNEY'S EYES

9  ONLY" pursuant to the protective order dated January 4, 2005.

10  　　　　　14.　　This Court shall have jurisdiction to interpret and enforce the

11  terms of this Permanent Injunction and to determine any issues which may arise

12  concerning this Permanent Injunction.

13  　　　　　**IT IS SO ORDERED**.

14  DATED:  December 03, 2008

　　　　　　　　　　　　　　　　　_____
15  　　　　　　　　　　　　　　　Hon. Stephen G. Larson
　　　　　　　　　　　　　　　　　United States District Judge



**Exhibit 3**
**Page 277**

Exhibit 6, Page113



Exhibit 3
Page 278

Exhibit 6, Page114



Exhibit 4
Page 380



TRIAL EXHIBIT 18775-001

Exhibit 3
Page 408



Exhibit 5
Page 552

TRIAL EXHIBIT 17524-001

Exhibit 6, Page117



Exhibit 5
Page 553

TRIAL EXHIBIT 17524-001

Exhibit 6, Page118



EX 14051-0001

**Exhibit 5**
**Page 554**

Exhibit 6, Page119



EX 14052-0001

Exhibit 5
Page 555

Exhibit 6, Page120



Exhibit 6
Page 556

Exhibit 3
Page 58



Exhibit 6
Page 557



Exhibit 6
Page 558



Exhibit 6
Page 565

# EXHIBIT 7

Case 2:04-cv-09049-DOC-RNB Document 6389-3-4 Filed 09/28/09 Page 88 of 133 Page ID
Case 2:04-cv-09049-SGL-RNB Document 4447 Filed 12/03/2008 Page 1 of 9
#:228567

O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>    Plaintiff,<br><br>    vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>    Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-09049 SGL (RNBx)<br>Consolidated with<br>Case Nos. CV 04-09059 & CV 05-2727<br><br>**ORDER GRANTING MATTEL'S MOTION FOR CONSTRUCTIVE TRUST AND FOR FINDING LIABILITY AND INJUNCTIVE RELIEF PURSUANT TO CAL. BUS. & PROF CODE § 17200** |

Case 2:04-cv-09049-DOC-RNB Document 6839-3 Filed 09/28/09 Page 89 of 133 Page ID
Case 2:04-cv-09049-SGL-RNB Document 444 Filed 12/03/2008 Page 2 of 9
#:228568

## <u>ORDER</u>

Having considered Mattel, Inc.'s ("Mattel") Motion for Constructive Trust and for a Finding of Liability and Injunctive Relief Pursuant to <u>California Business & Professional Code</u> § 17200, and all other papers and arguments submitted in connection therewith, as well as the evidence admitted at trial and the jury's verdicts in the Phase 1 trial, the Court hereby GRANTS the Motion against MGA Entertainment Inc. ("MGA"), MGA Entertainment (HK) Ltd. ("MGA Hong Kong"), and Isaac Larian ("Larian") (collectively the "MGA Defendants"):

1.     A constructive trust in favor of Mattel on all rights to trademarks, service marks and domain names held by MGA or Larian, or any person or entity acting on their behalf or for their benefit, anywhere in the world that include the terms "Bratz" or "Jade," including all such trademark registrations and trademark applications (including, without limitation, United States Trademark Registrations identified by Registration Nos. 3206114, 3327385, 3150045, 3087710, 3055465, 3072141, 3127890, 3024713, 2989052, 2911097, 3080450, 2921772, 3071614, 2803235, 2848386, 2795675, 2776558, 2848281, 2751890, 2671473, 2787942, 2789216 and 2836780 and United States Trademark Applications identified by Serial Nos. 78530196, 78571028, 78706504, 78706502, 78819868, 78857100, 78490324, 77443372 and 77575881), and the good will inhering therein, as well as all such domain name registrations, is HEREBY ORDERED and all rights therein are ORDERED transferred to Mattel.

2.     MGA and Larian are HEREBY ORDERED to (a) identify all trademark registrations and applications held by them, or any person or entity acting on their behalf or for their benefit, anywhere in the world that include the terms "Bratz" or "Jade," (b) identify all marks that include the terms "Bratz" or "Jade" in which they, or any person or entity acting on their behalf or for their benefit, claim to own trademark rights, whether or not such marks are subject to existing trademark registrations or pending trademark applications, (c) identify all domain

1 names and domain name registrations held by them, or any person or entity acting
2 on their behalf or for their benefit, anywhere in the world that include the terms
3 "Bratz" or "Jade," and (d) execute any and all documents necessary to effect the
4 transfer and/or assignment of such marks and domain names and associated
5 applications and registrations to Mattel. MGA shall fully comply with (a), (b) and
6 (c) of this paragraph within fourteen (14) calendar days of the date of this Order.

7      3.    The Court HEREBY FINDS that the MGA Defendants violated
8 <u>California Business and Professions Code</u> § 17200 and are liable to Mattel on its
9 twelfth claim for relief for unfair competition.

10      4.    The MGA Defendants, along with their respective officers,
11 directors, principals, agents, representatives, servants, employees, affiliates,
12 successors or assigns, and any person or entity acting on their behalf or in concert or
13 participation with them, are HEREBY PERMANENTLY ENJOINED from (a)
14 using the terms "Bratz" or "Jade," either alone or in combination and whether as a
15 trademark, domain name or otherwise, in connection with the manufacture,
16 promotion, advertising, distribution, offering for sale or sale of any goods or
17 services anywhere in the world and (b) taking any action to preclude Mattel from
18 using the terms "Bratz" or "Jade" in any such manner, including without limitation
19 as a mark in connection with goods and services.

20      **IT IS SO ORDERED.**

22 DATED: December 3, 2008

                                     _____
23                                        Hon. Stephen G. Larson
                                       United States District Judge

EXHIBIT 8

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

CARTER BRYANT, an individual,

Plaintiff,

vs.

MATTEL, INC., a Delaware corporation,

Defendant.
AND CONSOLIDATED ACTIONS

CASE NO. CV 04-9049 SGL (RNBx)
Consolidated with
Case Nos. CV 04-09059 & CV 05-2727

~~[PROPOSED]~~ ORDER GRANTING
MATTEL, INC.'S MOTION FOR
PERMANENT INJUNCTION

ORDER

Having considered Mattel, Inc.'s Motion for Permanent Injunction (the "Motion"), the opposition thereto, and all other papers, evidence and arguments submitted in connection therewith, as well as the evidence admitted at trial and the jury's verdicts in the Phase 1 trial, the Court hereby GRANTS Mattel's Motion against MGA Entertainment Inc. ("MGA"), MGA Entertainment (HK) Ltd. ("MGA Hong Kong"), and Isaac Larian ("Larian") and Carter Bryant ("Bryant") (MGA, MGA Hong Kong, and Larian and Bryant are, collectively, "Defendants"), and hereby ORDERS as follows:

1. MGA, MGA Hong Kong, and Larian, and Bryant, along with their respective officers, directors, principals, agents, representatives, servants, employees, affiliates, successors or assigns, and any person or entity acting on their behalf or in concert or participation with them, are hereby PERMANENTLY ENJOINED from manufacturing, procuring the manufacture of, making, producing, reproducing, copying, distributing, transferring, displaying, marketing, advertising, shipping, importing, exporting, licensing, offering to license, selling or offering to sell:

   (a)    a Any doll, product or other item that embodies or depicts in whole or in part, or incorporates or uses in any manner, the head and/or body sculpt shown in Exhibit 1 (sometimes known as the "core Bratz fashion doll production sculpt"), which is incorporated herein by this reference; .

   (b)    a Any doll, product or other item that embodies or depicts in whole or in part, or incorporates or uses in any manner, the head and/or body sculpt shown in Exhibit 2 (sometimes known as the "Bratz Movie sculpt"), which is incorporated herein by this reference; .

(c)   ~~a~~Any doll shown in Exhibits 3 to 4, inclusive, which are incorporated herein by this reference~~:~~, except Cloe's younger sister depicted at Exhibit 3, page 277; the younger version of Yasmin depicted at Exhibit 3, page 278; and the younger Alicia depicted at Exhibit 4, page 379, if those dolls are packaged separately from a doll that includes a doll incorporating the core Bratz fashion doll production sculpt or Bratz Movie sculpt (Exhibits 1 and 2).

(d)   ~~any product~~Any doll or portion of a doll shown in Exhibits 5 to 6, inclusive, which are incorporated herein by this reference~~:~~, except the dolls depicted at Exhibit 5, pages 551 through 555, inclusive, and the dolls depicted at Exhibit 6, pages 556, 557, 558, and 565.

(e)   ~~a~~Any product, packaging or other item that embodies or depicts in whole or in part, or incorporates or uses in any manner, the artwork shown on the packaging set forth in Exhibit 7, which is incorporated herein by this reference.

(f)   ~~a~~Any doll, product, packaging or other item that embodies or depicts in whole or in part, or incorporates or uses in any manner, any of the Jade, Cloe, Yasmin and Sasha Bratz characters, including without limitation the items shown in Exhibits 3 and 5, which are incorporated herein by this reference~~:~~.

(g)   ~~a~~Any marketing or advertising materials that embody or depict in whole or in part, or incorporate or use in any manner, any of the dolls, products, items or other matter described in paragraphs (a) through (f) above, including without limitation the marketing or advertising materials shown in Exhibits 8 (screen captures from television commercials) to 9 (print advertisements depicting any dolls incorporating the core Bratz fashion doll production sculpt or Bratz Movie

sculpt (Exhibits 1 and 2), inclusive, which are incorporated herein by this reference;.

(h)   any doll that counterfeits, copies, is substantially similar to or otherwise utilizes the combination of features of Mattel's copyrighted designs, specifically, (i) oversized eyes; (ii) diminutive nose; (iii) oversized or pouty lips; (iv) head that is oversized in proportion to body; and (iv) feet and/or shoes that are oversized in proportion to body.

(h)   (i) anyAny doll, product, packaging, advertising or other item or materials that counterfeits, copies or is substantially similar to Mattel's copyright protected head and/or body sculpt shown in Exhibit 10, which is incorporated herein by this reference, including without limitation the Bratz fashion dolls known as Cloe, Yasmin, Sasha, Jade, Ciara, Dana, Diona, Felicia, Fianna, Katia, Kiana, Krysta, Kumi, Lana, Leah, Lela, Liliana, Lilee, Lina, Maribel, May Lin, Meygan, Nevra, Nevaeh, Nona, Nora, Oriana, Peyton, Phoebe, Rina, Roxxi, Sharidan, Sierrna, Sorya, Sunya, Tess, Tiana, Trinity, Vinessa, and Valentina, and any and all other dolls employing a sculpt which is substantially similar to Exhibit 10;10.

(i)   (j) anyAny doll, product, packaging, advertising or other item or materials that embodies or depicts in whole or in part, or incorporates or uses in any manner, any of the Jade, Cloe, Yasmin and Sasha Bratz characters depicted or described in Exhibit 11, which is incorporated herein by this reference; and

(j)   (k) anyAny doll, product, packaging, advertising or other item or materials that counterfeit, copy or are substantially similar to Mattel's Bratz-related copyrighted

Case 2:04-cv-09049-SGL-RNB Document ~~4316~~4443 Filed ~~09~~12/~~30~~03/2008 Page 5 of 13

works, including without limitation such works in Exhibits 11 and 12, inclusive, which are incorporated herein by this reference.

2.     MGA, MGA Hong Kong, and Larian~~, and Bryant~~, along with their respective officers, directors, principals, agents, representatives, servants, employees, affiliates, successors or assigns, and any person or entity acting on their behalf or in concert or participation with them, are further hereby PERMANENTLY ENJOINED from engaging in any of the following acts:

(a)     ~~c~~Copying, imitating, selling, offering to sell, marketing, distributing, importing, displaying or making any use of the copyrighted works shown in Exhibits 10 to 12, inclusive, which works are owned by Mattel~~;~~.

(b)     ~~e~~Engaging in any and all further acts of infringement of the copyrighted works shown in Exhibits 10 to 12, inclusive, which works are owned by Mattel~~;~~.

(c)     ~~a~~Asserting any ownership of rights or any right, title or interest in the copyrighted works shown in Exhibits 10 to 12, inclusive, which works are owned by Mattel~~;~~.

(d)     ~~t~~Transferring, disposing of, destroying, spoliating or secreting any documents, records, recordings or materials, whether in electronic or non-electronic form, that evidence, relate to or pertain to any aspect of the dolls, products, packaging, items or other materials referred to in paragraphs 1(a) through 1(k) above, inclusive, including without limitation any and all agreements, contracts, correspondence, communications, invoices, purchase orders, sales orders, manufacturing records, import or export records, sales records, ledgers, inventory records and shipping records relating thereto~~;~~.

(e)     ~~t~~Transferring, disposing of, destroying, spoliating or secreting any documents, records, recordings or material, whether in electronic or non-electronic form, that in any manner evidence, relate to or pertain to any products, services or activities using or displaying any simulation, counterfeit, reproduction or copy of, or are derived from, Mattel's copyrighted works shown in Exhibits 10 to 12, inclusive, which are incorporated herein by this reference~~;~~,

(f)     ~~t~~Transferring, disposing of, destroying, spoliating, secreting or exporting any products, product packaging, labels, signs, prints, dies, wrappers, receptacles, advertisements or any other tangible items (including without limitation computer files) that in any manner utilize, contain, evidence, reproduce, display, or relate to any simulation, counterfeit, reproduction or copy of, or are derived from, (i) the dolls, products, packaging, items or other materials referred to in paragraphs 1(a) through 1(k) above, inclusive, or (ii) Mattel's copyrighted works shown in Exhibits 10 to 12, inclusive, which are incorporated herein by this reference~~;~~,

(g)     ~~t~~Transferring, disposing of, destroying, spoliating, secreting or exporting any plates, molds, matrices, and other means of making or manufacturing (i) the dolls, products, packaging, items or other materials referred to in paragraphs 1(a) through 1(k) above, inclusive, or (ii) any reproduction, counterfeit, copy, substantially similar likeness, or derivative of Mattel's copyrighted works shown in Exhibits 10 to 12, inclusive~~;~~,

(h)     ~~a~~Assisting, aiding or abetting any other entity or person in engaging in or performing any of the activities referred to in paragraphs 1(a) through 1(k), inclusive, and/or in paragraphs 2(a) through 2(h), inclusive.

3.      At Defendants' expense, Defendants shall deliver to Mattel's counsel for impoundment, at such location in the Central District of California as Mattel's counsel may direct, all dolls, products, product packaging, labels, signs, prints, dies, wrappers, receptacles and advertisements, in the direct or indirect possession, custody or control of Defendants, their officers, directors, principals, agents, servants, employees, successors or assigns, or any person or entity acting on their behalf or in concert or participation with them, that are referred to in paragraphs 1(a) through 1(k), inclusive, and/or in paragraphs 2(a) through 2(h), inclusive, together with all plates, molds, matrices and other means of making the same. Mattel's counsel is hereby appointed substitute custodian for all such items.

4.      Defendants are hereby ORDERED to procure the return, and to withdraw and recall, from any and all channels of trade and distribution, including without limitation from retail shelves and from on-line retailers, all of the dolls and doll products that are referred to in paragraphs 1(a) through 1(k), inclusive, and/or in paragraphs 2(a) through 2(h), inclusive. As to each entity or person returning such dolls and doll products, Defendants shall refund all monies paid by each entity or person in connection with such dolls and doll products and shall reimburse each such entity or person for all associated shipping charges.

5.      Defendants shall hand serve upon Mattel's counsel a declaration, made under oath, that sets forth fully and completely the following information: (a) the identity of each and every doll, product, package or other item manufactured, marketed, displayed, distributed, imported, exported, sold or offered for sale by or for Defendants that are referred to in paragraphs 1(a) through 1(k), inclusive, and/or in paragraphs 2(a) through

2(h), inclusive; (b) for each such doll, product, package or other item, the number of units manufactured, marketed, displayed, distributed, shipped, imported, exported, sold or offered for sale by or for Defendants; (c) for each unit of each such doll, product, package or other item, the purchaser, transferee or recipient of each such unit(s), the quantities acquired by such purchaser, transferee or recipient and complete contact information (including limitation the address, telephone number, fax number and email address where known) for each such purchaser, transferee or recipient; (d) for each unit of such doll, product, package or other item, the current or last known location of each such unit, including without limitation the location of all such dolls, products, package or other items in Defendant's inventory; and (v) for each person or entity to whom or which Defendants have promoted, advertised, marketed or offered to sell any doll, product, package or other item that is the subject of this Order, the identity of, and complete contact information for (including limitation the address, telephone number, fax number and email address where known), each such person or entity.

6.      At Defendants' expense, Defendants shall make written contact (either through fax or electronic mail) with (i) each retailer, distributor, wholesaler, importer, exporter, customer, licensee or any other person and entity to or through whom Defendants have shipped, transferred, imported, exported or sold any doll, product or other item that is the subject of this Order; and (ii) each retailer, distributor, wholesaler, licensee, potential licensee, customer, potential customer or any other person and entity who Defendants have contacted (whether by mail, electronic mail, orally or otherwise) within the past ninety (90) days in marketing, promoting or advertising any doll, product or other item that is the subject of this Order, and shall provide each such person and entity with a copy

of this Order and with a verbatim copy of the following notice, in legible and conspicuous print, in its entirety (hereinafter, the "Notice"):

## NOTICE PUBLISHED PURSUANT TO ORDER OF THE UNITED STATES DISTRICT COURT

YOU ARE HEREBY ADVISED as follows:

Recently you may have bought, seen, or been contacted regarding, the sale of Bratz dolls or other Bratz products.

Pursuant to the rulings of the United States District Court, Mattel is the owner of Bratz-related copyrights that are infringed by Bratz dolls, products and packaging manufactured by or for MGA.

The Court has ordered MGA to immediately cease any further manufacture, sale, promotion, shipment or distribution of Bratz dolls, products and packaging.

In addition, the Court has ordered that Bratz dolls must be returned immediately to the following address: MGA Entertainment, Inc., Attn: Customer Service, 163000 Roscoe Blvd., Suite 150, Van Nuys, CA 91406.

MGA will refund to you all monies paid by you for these dolls and reimburse you for all associated shipping charges.

7.   At Defendants' expense, Defendants shall post in legible and conspicuous print a verbatim copy of the entire Notice set forth in Paragraph 6, above, upon the home page of MGA's web site at www.mgae.com beginning within twenty-four hours of receipt of notice of this Order and continuing for a period of no less than one hundred and twenty (120) days.

8.   Defendants, and any person or entity acting on their behalf or in concert or participation with Defendants, shall fully comply with Paragraphs 1 and 2 of this Order immediately, shall fully comply with Paragraph 6 of this Order within two (2) calendar days of the date of this Order, shall fully comply with Paragraph 5 of this Order within seven (7) calendar days of the date of this Order and shall fully comply with Paragraphs 3 and 4 of this

Order within thirty (30) days of this Order. In the event that any additional doll, product or item that is the subject of this Order subsequently is delivered to or comes within the direct or indirect possession, custody or control of Defendants, Defendants shall deliver such additional doll, product or item to Mattel's counsel within two (2) calendar days in accordance with the terms of Paragraph 3, above.

9.     Within forty (40) calendar days of the date of this Order, Defendants shall file with the Court, and personally serve on counsel for Mattel, a report in writing under oath setting forth the actions taken to comply with the terms herein pursuant to 15 U.S.C. § 1116(a). Such Report shall have appended to it complete, true and accurate copies of each communication ordered to be sent pursuant to Paragraph 6 of this Order.

10.    Pursuant to Federal Rule of Civil Procedure 53, the Court hereby appoints a special master to supervise implementation of the requirements of this Order (the "Special Master"). ~~The parties shall confer on an agreed upon designee to serve as Special Master. Within five (5) calendar days of the date of this Order, the parties shall file either (1) a joint document setting forth their agreed selection of a Special Master and a certification by the selected designee that he or she is willing to serve as Special Master, or (2) if the parties cannot agree on a selection, Mattel on the one hand, and Defendants on the other hand, may each file a list of proposed designees, from which the Court will select the Special Master.~~

11.    Any and all disputes arising out of this Order and/or motions or applications seeking to enforce the terms of this Order shall be presented to the Special Master for resolution in the first instance, once the Special Master is appointed. The Special Master shall have the authority to set the time, place and manner of hearings and other proceedings he or she

will conduct; to preside over hearings, whether telephonic or in person; to take evidence in connection with disputes before the Special Master; to make inspections in connection with the requirements of this Order, including inspections of Defendants' facilities and warehouses; to issue orders resolving motions, applications and matters arising out of this Order and/or seeking to enforce the terms of this Order; to issue orders awarding non-contempt sanctions, including, without limitation, the award of attorney's fees; and to issue reports and recommendations on matters for which the Special Master lacks jurisdiction to issue an order, including, without limitation, reports and recommendations regarding contempt sanctions. In addition to any other filing procedures the Special Master may permit, the Special Master shall permit the filing of ex parte applications to enforce the terms of this Order, which must be heard and adjudicated within ten (10) calendar days of filing. A party may bring an ex parte application for relief pursuant to this provision only upon certifying, as an officer of the Court, that such expedited adjudication is required and could not be avoided in due course. The parties shall file with this Court, contemporaneously, the original of all submissions made to the Special Master such that the Court's Docket shall be complete and include all pertinent submissions. Third parties shall be bound by the Special Master's orders to the same extent as Orders of this Court.

12.   The Special Master's orders, reports and recommendations shall be treated as rulings made by a Magistrate Judge of this Court and may be reviewed in the same manner and pursuant to the same procedures as this Court reviews such orders, reports and recommendations of a Magistrate Judge. A court reporter shall transcribe all hearings and proceedings held before the Special Master. The Special Master's fees, and other costs

incurred in connection with proceedings before the Special Master, including the fees of

court reporters, shall be paid one-half by Mattel, Inc. and one-half by MGA

Entertainment, Inc. unless, consistent with the Federal Rules of Civil Procedure, the

Special Master orders otherwise. The Special Master shall not have ex parte

communications with a party or counsel.

13.     The Special Master shall be authorized to receive information designated

"CONFIDENTIAL" and "CONFIDENTIAL--ATTORNEY'S EYES ONLY" pursuant to

the protective order dated January 4, 2005.

14.     This Court shall have jurisdiction to interpret and enforce the terms of this Permanent

Injunction and to determine any issues which may arise concerning this Permanent

Injunction.

          IT IS SO ORDERED.

DATED:                                  , December 03, 2008

_____

                              Hon. Stephen G. Larson
                              United States District Judge

EXHIBIT 9

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA  92501
<u>CIVIL MINUTES -- GENERAL</u>

Case No.    CV 04-09049 SGL(RNBx)                    Date: April 27, 2009
Title:      MATTEL, INC. V. MGA ENTERTAINMENT, INC., et al.
===============================================================
PRESENT:  HONORABLE STEPHEN G. LARSON, U.S. DISTRICT JUDGE

       Cindy Sasse                            None Present
       Courtroom Deputy                       Court Reporter

ATTORNEYS PRESENT FOR              ATTORNEYS PRESENT FOR
PLAINTIFFS:                        DEFENDANTS:

None Present                       None Present

**PROCEEDINGS:    ORDER DENYING MATTEL'S MOTION FOR JUDGMENT AS A
                  MATTER OF LAW (DOCKET #4498)**

**                ORDER GRANTING IN PART AND DENYING IN PART MGA'S
                  MOTION FOR JUDGMENT AS A MATTER OF LAW (DOCKET
                  #4496)**

**                ORDER AMENDING IN PART ORDER RE FINDING OF
                  LIABILITY PURSUANT TO CAL. BUS. & PROFS. CODE § 17200
                  (DOCKET #4441);**

**                ORDER GRANTING IN PART AND DENYING IN PART MGA'S
                  MOTION FOR REMITTITUR (DOCKET #4495, #4523)**

**                ORDER LIFTING STAY ON PERMANENT INJUNCTION (#4443)**

**                ORDER FOR ACCOUNTING OF PROFITS OF
                  BRATZ PRODUCTS**

**                ORDER REGARDING RETRIEVAL OF PREVIOUSLY LODGED**

MINUTES FORM 90                            Initials of Deputy Clerk __cls_____
CIVIL -- GEN                   1

Exhibit 9, Page 140

**LAPTOP COMPUTER WITH PHASE 1A AND 1B TRIAL TRANSCRIPT**

**ORDER REGARDING UNSEALING OF DOCUMENTS FILED UNDER SEAL FROM MAY 28, 2008, THROUGH FEBRUARY 11, 2009**

**ORDER RE PHASED, UNDER SEAL RELEASE OF FORENSIC AUDITOR'S REPORT TO COUNSEL AND PARTIES**

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO INTERVENE (DOCKET #4761)**

**ORDER APPOINTING TEMPORARY RECEIVER**

**ORDER SETTING HEARING ON APPOINTMENT OF PERMANENT RECEIVER**

### I. MATTEL'S MOTION FOR JUDGMENT AS A MATTER OF LAW (DOCKET #4498)

A motion for judgment as a matter of law after trial is granted only when there is not a "legally sufficient evidentiary basis [for a reasonable jury] to find for that party on [an] issue." Pavao v. Pagay, 307 F.3d 915, 918 (9th Cir. 2002).  Sufficient evidence is "evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion." Id.

Mattel, Inc. ("Mattel") moves for judgment as a matter of law on the issue of the scope of infringement of the Bratz dolls.  Specifically, Mattel argues that "[e]ach core Bratz fashion doll sold by MGA infringes Mattel's copyrights."  Motion at 4.  Mattel acknowledges that the judgment it seeks would alter neither the jury's damages award nor the Court-awarded equitable relief; however, Mattel seeks this judgment as an alternative basis for the relief it has already been awarded.  Without ruling on the merits of the argument, the Court declines to adopt this alternative basis because it is not necessary to support the relief awarded to Mattel.  The jury, in the Phase 1B verdict, found that the Bratz dolls infringed Mattel's copyrights, but the scope of that infringement was not explicitly found by the jury.  Even if the Court were to grant the relief sought by Mattel, the amount the jury awarded for copyright infringement, $10 million, would be unchanged.  Moreover, the Court, sitting in equity, made an express factual finding, set forth more fully in its December 3, 2008, Order that the core Bratz fashion dolls infringed Mattel's copyrights.  This portion of Mattel's motion is therefore **DENIED**.

Exhibit 9, Page 141

In a similar fashion, Mattel seeks judgment as a matter of law on the issue that sculptor Margaret Leahy's contributions cannot, as a matter of law, support a claim of independent creation of the Bratz fashion doll sculpt, TX 1136A.[1]  In Phase 1A of the trial, the jury found that the sculpt was "'conceived or reduced to practice' -- that is, created -- by Carter Bryant, alone or jointly with others," during his employment with Mattel.  Phase 1A Verdict Form at 5.  This finding, when viewed in conjunction with the Court's summary judgment order, was sufficient to place the sculpt within the assignment clause of the Inventions Agreement which, in turn, conferred the rights to the sculpt to Mattel.  Therefore, as with the previous issue, this judgment is sought merely as an alternative basis for the relief Mattel has been awarded, which the Court, without deciding the merits, declines to adopt.  This portion of Mattel's motion is therefore similarly **DENIED.**

Finally, Mattel seeks judgment as a matter of law that both Isaac Larian and MGA HK engaged in acts of fraudulent concealment.  As to Isaac Larian, although there was evidence suggesting that he engaged in a cover-up as to *who* created Bratz (and later, as to *when* Bratz was created), he testified at trial that he did nothing to keep Carter Bryant's *role* in the creation of Bratz hidden.  Even in the face of evidence to the contrary, the jury could have believed him; thus, judgment as a matter of law on this point is not appropriate.  Credibility determinations are for the jury, and the jury could have made this credibility determination in favor of Isaac Larian.  Winarto v. Toshiba America Electronics Components, Inc., 274 F.3d 1276, 1294 (9th Cir. 2001).  As for MGA HK, Mattel did not cite any evidence that suggests that MGA HK should be found to have fraudulently concealed the basis for Mattel's claims, and therefore judgment as a matter of law is not appropriate.  This portion of Mattel's motion is therefore also **DENIED.**

For the reasons set forth above, Mattel's Motion for Judgment as a Matter of Law is **DENIED** in its entirety.

## II. MGA'S MOTION FOR JUDGMENT AS A MATTER OF LAW (DOCKET #4496)

The MGA parties[2] seek judgment as a matter of law that federal copyright law

---

[1]  For their part, the MGA parties seek judgment as a matter of law of the mirror image of Mattel's claim; specifically, as discussed more fully below, the MGA parties seek judgment as a matter of law that Margaret Leahy's contribution to the creation of the sculpt amounted to independent creation.

[2]  The Court herein refers to all three MGA parties collectively and individually as follows:  MGA Entertainment, Inc., is referred to as "MGAE."  MGA Entertainment (HK) Limited (also referred to in the record as "MGA Hong Kong") is referred to herein as "MGA HK."  All three defendants, Isaac Larian, MGAE, and MGA HK are collectively referred to as "the MGA parties."  When necessary to distinguish them further, the subset of entity defendants, MGAE and MGA HK, are collectively referred to as "the MGA entities."

MINUTES FORM 90
CIVIL -- GEN

3

Initials of Deputy Clerk __cls_____

preempts Mattel's claims for aiding and abetting breach of fiduciary duty and the duty of loyalty.  Relatedly, they also seek judgment as a matter of law that the damages awarded as to the state-law claims are precluded as preempted because they represent damages awarded under the theory of disgorgement, which was also awarded as part of copyright damages.  The Court has previously rejected the argument that copyright law preempts the two aiding and abetting claims, and the Court leaves undisturbed its previous holding on this issue.  As for the related argument regarding damages, to accept the MGA parties' argument, the Court would have to reject the current, firmly established standard for determining if a state-law claim is preempted in favor of a new standard that would find preemption any time the relief sought by the state-law claim is also redressable by a copyright claim. This Court must follow the enunciated standard for copyright law preemption, and it therefore rejects the MGA parties' argument regarding this issue.  This portion of the motion is **DENIED.**

The MGA parties seek judgment as a matter of law that Mattel's claims for aiding and abetting breach of fiduciary duty and the duty of loyalty is preempted by the California Uniform Trade Secrets Act.  This issue was not raised in the parties' pretrial conference order and, accordingly, was waived.  See e.g., El-Hakem v. BJY Inc., 415 F.3d 1068, 1077 (9th Cir. 2005).  This portion of the motion is **DENIED.**

The MGA parties seek judgment as a matter of law that Mattel failed to prove its damages as to each of its state-law claims.  Mattel proceeded on a theory of recovery that sought disgorgement of the MGA parties' profits rather than another measure of damages; there was ample evidence presented by both sides regarding the MGA parties' profits.  The Court has previously rejected, and does not now revisit, the MGA parties' contention that the proper measure of damages for aiding and abetting Carter Bryant's breaches of fiduciary duty and the duty of loyalty should be measured by Carter Bryant's profits, rather than the MGA parties' profits.  As for the conversion claim, as set forth infra, the Court has remitted the monetary damages awarded by the jury in favor of the equitable relief awarded by the Court in the form of return of the original drawings.[3]  This portion of the motion is **DENIED.**

The MGA parties seek judgment as a matter of law that Mattel failed to prove that the MGA parties had actual knowledge of Carter Bryant's fiduciary duty or breach thereof.  Admittedly, there is an absence of direct evidence, such as an admission by Isaac Larian, that any of the MGA parties had actual knowledge of Carter Bryant's fiduciary duty or breach thereof.  But the indirect evidence relevant to this issue admitted at trial clearly supports the jury's verdict that both MGAE and Isaac Larian had an understanding that Carter Bryant had such an obligation as well as the parameters of such an obligation. This portion of the motion is **DENIED.**

---

[3] Those original drawings are currently in the custody of the Court as part of the Court record.

MINUTES FORM 90                                              Initials of Deputy Clerk __cls_____
CIVIL -- GEN                          4

The MGA parties seek judgment as a matter of law as to MGA HK's liability for unfair competition. The Court's summary judgment Order held that Mattel had raised a triable issue of fact as to whether the MGA parties tortiously interfered with Bryant and Mattel's contractual relationship and whether they engaged in commercial bribery. However, the tortious interference claim was not asserted against MGA HK, and there was no evidence presented at trial to support a statutory unfair competition claim against MGA HK for commercial bribery.  See Court's June 4, 2009, Final Pretrial Conference Order.  Accordingly, the Court **GRANTS** the motion on this issue, and the Court **ORDERS** that the following **AMENDMENTS** be made to its Order Granting Mattel's Motion for Finding Liability and Injunctive Relief Pursuant to Cal. Bus. & Profs. Code § 17200, filed December 3, 2008 (docket #4441):

- At page 1, line 6:  Delete "GRANTS" and substitute "GRANTS IN PART AND DENIES IN PART"

- At page 3, line 7:  Delete "the MGA Defendants" and substitute "MGA and Larian"

The MGA parties seek judgment as a matter of law that Mattel is not entitled to base any claims on ownership to the name "Bratz."  To the extent that the MGA parties' argument is based on the construction of the Inventions Agreement, it was not raised in the Rule 50(a) motion for judgment as a matter of law and, therefore, may not be raised for the first time in a Rule 50(b) motion for judgment as a matter of law.[4]  The Court finds wavier.

In any event, the argument fails on its merits.  The name "Bratz," which the jury found Carter Bryant conceived of during the period of his employment with Mattel, is within the scope of the assignment clause of the Inventions Agreement.  California law allows the assignment of an idea; thus, the name "Bratz" is, by virtue of the Inventions Agreement, the Court's summary judgment order construing that Agreement, and the jury's finding regarding the origin of the name, Mattel's property (even if it was not a proper trademark at the time it was conveyed and even though it is not subject to being copyrighted).  This portion of the motion is **DENIED.**

The MGA parties seek judgment as a matter of law that copyright infringement is limited to the first-generation Bratz dolls.  Essentially, the MGA parties seek a ruling that no reasonable jury could have found that any Bratz dolls, other than the first-generation

---

[4] The Court rejects the MGA parties' contention that this issue was raised in the Rule 50(a) motion and that the Rule 50(b) motion merely expands upon the argument.  The MGA parties' point in the Rule 50(a) motion was that there was a lack of intellectual property protection for the name Bratz (because it was not a valid trademark because it had not ever been used in commerce and because it could not be copyrighted); conversely, their point here is that the name "Bratz" is not within the scope of the Inventions Agreement.

MINUTES FORM 90                                      Initials of Deputy Clerk __cls_____
CIVIL -- GEN                              5

Bratz dolls, infringe Mattel's copyrights. The Court has already found that this is not the case; specifically, the Court has found, for the reasons set forth in its December 3, 2008, Order, that hundreds of Bratz female fashion dolls infringe Mattel's copyrights. This portion of the motion is **DENIED.**

The MGA parties seek judgment as a matter of law that Bryant was not an author of the Bratz sculpt. The Court previously observed, at trial, that this is an affirmative defense that was not asserted and was therefore waived. Moreover, this issue was not raised in the pretrial conference order; thus, it was waived for that reason as well. Furthermore, it was not raised in the MGA parties' Rule 50(a) motion, and therefore may not be raised for the first time in the Rule 50(b) motion.

In fact, this issue was not raised until *after* the jury's verdict in Phase 1A, in which the jury determined that Bryant created the sculpt (alone, or jointly with others). Recognizing this fact as a potential impediment to the relief they now seek, the MGA parties contend that in Phase 1A, the jury was not instructed on how to determine – and thus its express factual finding does not address – authorship as a matter of copyright law. Nevertheless, the Phase 1A verdict established the jury's finding that the sculpt was "'conceived or reduced to practice' – that is, created – by Carter Bryant, alone or jointly with others," during his employment with Mattel. Phase 1A Verdict Form at 5. This finding, when viewed in conjunction with the Court's summary judgment order, was sufficient to place the sculpt within the assignment clause of the Inventions Agreement which, in turn, conferred the rights to the sculpt to Mattel.

In any event, this argument also fails on its merits. A reasonable jury could have readily found that Carter Bryant was the author of the sculpt based on Paula Garcia's testimony that Margaret Leahy was tasked with creating the three-dimensional object equivalent of Carter Bryant's two-dimensional drawings. Trial Tr. at 800. When asked if she looked back to Carter Bryant's two-dimensional drawings during her review of the sculpt, Ms. Garcia stated that it was possible (although she had no specific recollection of doing so), "because the exercise was to create a 3D version of those 2D drawings, it was very likely that those drawings were there to then compare its 3D version with those relationships." Id.; see also Trial Tr. at 797 (Garcia's testimony as to the purpose of the sculpt, which was to determine how the "2D image" would "translate" to "3D"). This final portion of the motion is therefore **DENIED**.

As set forth herein, the Court **GRANTS** that portion of the MGA parties' Motion for Judgment as a matter of law that challenges the Court's finding of a violation of §§ 17200 et seq. on the part of MGA HK. The Court **DENIES** the remainder of the MGA parties' Motion for Judgment as a matter of law.

MINUTES FORM 90                                          Initials of Deputy Clerk __cls_____
CIVIL -- GEN                          6

### III.  MGA'S MOTION FOR REMITTITUR
### (DOCKET #4495, #4523)

On its face, the jury's Phase 1 verdict awards Mattel $100,031,500.00.  The jury verdict was a round $100 million (allocated among a total of four claims and three defendants) except for $31,500, which was awarded to Mattel as damages for conversion of the original Bratz drawings.  The MGA parties seek remittitur of this amount, arguing that, at most, Mattel should be awarded $20 million.

The Ninth Circuit enunciated its remittitur standard in 1982, when it noted that other circuits "consistently approve remitting the judgment to the maximum amount sustainable by the proof," before stating, "[w]e adopt this standard." D & S Redi-Mix v. Sierra Redi-Mix and Contracting Co., 692 F.2d 1245, 1249 (9th Cir. 1982).  One of the cases cited with approval by the Redi-Mix court stated the standard in greater detail:

> The defendants' final contention is that the verdict was excessive, justifying a new trial or, in the alternative, a remittitur.  Our review of this issue is limited to an examination of the plaintiff's injuries to determine whether the damage award is beyond the maximum possible award supported by the evidence in the record.

Keyes v. Lauga, 635 F.2d 330, 336 (5th Cir. 1981)

Since 1981, the Ninth Circuit has elaborated on this standard:

> Even a total inadequacy of proof on isolated elements of damages claims submitted to a jury will not undermine a resulting aggregated verdict which is nevertheless reasonable in light of the totality of the evidence.  If we find that a jury's damages award exceeds the maximum amount sustainable by the probative evidence, we will not hesitate to order a remission of the excess by the plaintiff or, in the alternative, a new trial. . . .  But where, as here, the jury's verdicts find substantial support in the record and lie within the range sustainable by the proof, we will not "play Monday morning quarterback" and supplant the jury's evaluation of the complex and conflicting evidence with our own.

Los Angeles Memorial Coliseum Com'n v. National Football League, 791 F.2d 1356,

MINUTES FORM 90
CIVIL -- GEN                             7

Initials of Deputy Clerk __cls_____

1366 (9th Cir. 1986) (internal citations omitted).[5]  Cf. In re First Alliance Mortg. Co., 471 F.3d 977, 1001 (9th Cir. 2006) (using the above-quoted standard, but noting that before the Court was "the rare case in which it is sufficiently certain that the jury award was not based on proper consideration of the evidence" but was instead "based on improperly considered evidence, directly traceable to an error that was cured too little, too late"). Generally, courts are cautioned to "undertake only limited review of jury damages awards, in order to avoid encroaching upon the jury's proper function under the Constitution." Memorial Coliseum at 1365.  The standard is exceptionally deferential to the jury's findings.  If the damages award is supported by the evidence, it must be upheld even if the Court would have awarded a different amount of damages.

It is through this very narrowly focused lens that the Court must consider the present motion.

The MGA parties argue that Mattel had a singular theory of recovery – disgorgement of profits – and the amounts set forth by the jury as to each of the three state-law claims are duplicative.  This is not a completely unappealing argument.  For each of three state law claims – intentional interference with contractual relations, aiding and abetting breach of fiduciary duty, and aiding and abetting the duty of loyalty – the jury indicated that Mattel should be awarded $20 million as to MGAE and $10 million as to Isaac Larian.  Totaled, this award is $90 million.  Viewed pursuant to the MGA parties' theory, it would be the same $30 million awarded three times.  Relatedly, the MGA parties contend that the copyright damages of $10 million (allocated among three defendants) are also duplicative of this $30 million, even though the number is not exactly the same.[6]

However, these explanations as to what the jury intended are purely speculative. The remittitur standard is exceptionally deferential to the jury's verdict, and the Court cannot disturb it based on speculation.  The fact is the evidence not only supported a verdict of $100 million, this Court could have, under the remittitur standard, easily sustained a verdict many times this amount.  The jury may have meant to award only a total of $30 million, or they may have simply decided they could all agree on a round figure of $100 million and then set about allocating that $100 million among multiple claims and defendants.

_____

    [5]  A number of district court cases in the Ninth Circuit have recently applied this standard.  Paul v. Asbury Automotive Group, LLC  2009 WL 188592, at *2 (D. Ore. 2009); Hall v. North American Indus. Services, Inc., 2008 WL 789895, at *2 (E.D. Cal. 2008); Lucky Break Wishbone Corp. v. Sears, Roebuck and Co., 2008 WL 4742206, at *4 (W.D. Wash. 2008); Eldorado Stone, LLC v. Renaissance Stone, Inc., 2007 WL 2403572, at *1 (S.D. Cal. 2007).

    [6]  The MGA parties' explanation for why these damages are duplicative even though they are not exactly the same is that the jury reduced the $30 million for apportionment based on the expert testimony of Professor Joachimsthaler, who testified that MGA's branding efforts could be responsible for approximately 50% to 70% of Bratz-related profits.

MINUTES FORM 90                                    Initials of Deputy Clerk __cls_____
CIVIL -- GEN                    8

In any event, the Court must return to the standard by which its conclusion is governed.  Here, a district court _**must**_ leave undisturbed jury's verdict that is "reasonable in light of the totality of the evidence," where the verdict does not "exceed[] the maximum amount sustainable by the probative evidence," and where the verdict "lie[s] within the range sustainable by the proof."  The jury's verdict of $100 million is well within the range of possible awards based on the evidence of record, and therefore the Court must leave it undisturbed.

What the MGA parties are careful not to encroach upon, but what they in essence really seek, is an inquiry into what the jury _**meant**_ by its verdict.  As the Court and the parties to this case are aware, this inquiry is squarely within that which is prohibited by Fed. R. Evid. 606(b):

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith.

Id.  Of course, if that inquiry were permissible in this instance, the results seem clear.  Counsel for the MGA parties has not thus far denied that at least one juror, possibly more, stated to them that the jury in fact intended a $100 million award of damages.

Separately, the MGA parties contend that, of that $100 million award, the $1 million awarded as defendant MGA HK's liability for copyright infringement is duplicative because of certain consolidated financial reporting that occurs between MGAE and MGA HK.  This evidence was not before the jury; the jury made its award based on the evidence before it.  In any event, because the evidence presented supports the $1 million award made against MGA HK, under the Memorial Coliseum standard, it must be left undisturbed.

The MGA parties also contend that the damages against Mr. Larian for intentional interference with contractual relations is barred by the statute of limitations.  The Court previously held that the intentional interference with contractual relations claim was not subject to the discovery rule, so unless Mattel was able to establish a sufficient period of fraudulent concealment, the interference claim would be time barred.  June 2, 2008, Order at 3.  In its Phase 1B verdict, the jury answered in the negative a specific interrogatory regarding whether a requisite period of fraudulent concealment could be attributed to Mr. Larian.[7]  Therefore, a combination of the Court's June 2, 2008,

---

[7] Conversely, the jury answered the same question regarding MGAE affirmatively.

MINUTES FORM 90
CIVIL -- GEN                                  9                    Initials of Deputy Clerk __cls_____

Order and the jury's specific findings supports the MGA parties' position that the $10 million awarded as to Isaac Larian for the claim of intentional interference with contractual relations should be remitted because, in the absence of a fraudulent concealing finding by the jury, the claim is time barred.

However, at the hearing on this issue, counsel for Mattel suggested to the Court that its legal conclusion regarding the non-application of the discovery rule to tortious interference claims was in error and was, in fact, not an argument advanced by the parties in their summary judgment papers. Only very rarely will a court entertain an oral motion for reconsideration; rarer still are those occasions when such a motion is granted. However, such a result is warranted here where the Court's previous legal conclusion was simply wrong.

In their summary judgment motion, the MGA parties argued that a claim for "intentional interference with a contract accrues no later than the date of the contract's breach," implying – at least in the Court's view at the time of its review of the motion – that the discovery rule did not apply. See MGA SJ Mot. at 21 (docket #2572). The authority they cite supports the general rule regarding the accrual date of a tortious interference claim, but the authority does not support the Court's more specific conclusion that the discovery rule is inapplicable to claims for tortious interference. See Knoell v. Petrovich, 76 Cal.App.4th 164, 168 (1999) (refusing to apply the discovery rule to a tortious interference claim but doing so on the basis that the plaintiff made judicial admissions that were inconsistent with the application of the rule); Trembath v. Digardi, 43 Cal.App.3d 834, 836 (1974) (refusing to hold that the accrual of a claim for tortious interference claim as to an attorney-client contingency fee contract extended beyond the date of the breach to the suggested accrual date of the client's actual recovery, but not discussing the discovery rule); Forcier v. Microsoft Corp., 123 F.Supp.2d 520, 531 (N.D. Cal. 2000) (refusing to apply the discovery rule to a tortious interference claim because the facts presented in the case did not warrant it); Charles Lowe Co. v. Xomox Corp., 1999 WL 1293362 at *9 (N.D. Cal. 1999) (defining accrual of a tortious interference claim in relation to when damages are incurred and when a plaintiff may seek a legal remedy, but not discussing the discovery rule); Menefee v. Ostawari, 228 Cal.App.3d 239, 245 (1991) (discussing neither tortious interference claims nor the discovery rule).

At best, these cases represent examples of cases in which courts refuse to apply the discovery rule because the facts of the case do not warrant it; these cases do not stand for the broader conclusion reached by the Court in its prior order that the discovery rule is inapplicable to **_all_** tortious interference claims, regardless of the factual circumstances related to the claim's discovery. Cf. AmerUS Life Ins. Co. v. Bank of America, N.A., 143 Cal.App.4th 631, 639 (2006) (explicitly stating, regarding conversion claims, that "[t]o the extent our courts have recognized a 'discovery rule' exception to toll the statute, it has only been when the defendant in a conversion action fraudulently conceals the relevant facts or where the defendant fails to disclose such facts in

MINUTES FORM 90
CIVIL -- GEN                                    10                    Initials of Deputy Clerk __cls_____

violation of his or her fiduciary duty to the plaintiff.").  Indeed, by examining the facts of the case and discussing the discovery rule standard before concluding the rule does not apply in that instance, rather than noting a wholesale rejection of the application of the discovery rule to tortious interference claims, these courts have implicitly held that the discovery rule may, in certain undefined instances, permit otherwise time-barred claims to proceed.[8]

The Court has previously discussed at length why the discovery rule delayed the accrual of Mattel's claims in this case.  That rationale applies with equal force to the intentional interference with contractual relations claim, which was timely asserted against Mr. Larian.  Thus, it becomes irrelevant that the jury failed to attribute any fraudulent concealment to Mr. Larian, and the Court **DENIES** the motion on issue of timeliness of the tortious interference claim.

Finally, the MGA parties correctly contend that the damages awarded for conversion, totaling $31,500, should be remitted because the Court's declaratory judgment orders the MGA parties to return the drawings.  The Court **GRANTS** the motion on this issue.  However, the drawings shall remain in the Court's custody pending completion of Phase 2, pending appeal, and/or pending further order of this Court.

### IV. LIFTING STAY, AS MODIFIED AND SUPPLEMENTED, ON PERMANENT INJUNCTION (#4443)

Subject to the modification set forth in the Court's January 7, 2009, Order (docket #4657) (relating to distributors and retailers), the Court **VACATES** the stay on enforcement of its December 3, 2008, Order Granting Mattel, Inc.'s Motion for Permanent Injunction (docket #4443) ("Permanent Injunction Order").  Specifically, the Court **VACATES** the stay set forth in its Omnibus Order of December 3, 2008 (docket #4439) at 16 (which was imposed pending resolution of the three post-trial motions upon which the Court today rules); however, the Court leaves undisturbed the more limited stay set forth in the Court's January 7, 2009, Order, which relates to the purchase of Bratz products by retailers and distributors up to and including December 31, 2009.  This limited stay is supplemented as set forth below.

---

[8]  Had those courts not wished to make this implication, they could have, but did not, set forth a qualification that the court was assuming without deciding that the discovery rule could be applied to a tortious interference claim.  Cf. Grisham v. Philip Morris U.S.A., Inc., 40 Cal.4th 623, 634 n.7 (2007) ("We assume for purposes of this discussion that the delayed discovery rule applies to unfair competition claims. We note that this point is currently not settled under California law . . . and we do not address it.") (citations omitted).

The Permanent Injunction Order contemplates the Court's appointment of a Special Master to resolve issues and disputes relating to the enforcement of the Permanent Injunction Order.  At this point, in the absence of any such disputes, the Court reserves such an appointment.

## V. ACCOUNTING OF BRATZ PROFITS SINCE AUGUST 26, 2008

In light of the Court's interpretation of what has been referred to in this litigation as the Inventions Agreement (especially the Court's April 25, 2008, summary judgment Order), in light of the two jury verdicts returned in this case on July 17, 2008, and on August 26, 2008, in light of the Court's December 3, 2008, Orders regarding the parties' equitable claims and equitable relief (especially the Court's Omnibus Order defining the parameters of the scope of copyright infringement, the Court's Order Granting Mattel's Motion for Permanent Injunction, and the Court's Order Granting Mattel's Motion for Constructive Trust), and in light of this Order rejecting in all material respects the MGA parties' post-trial challenges to the jury's findings, the Court's findings, and the Court's legal and equitable rulings, the Court **ORDERS** the MGA entities to file with the Court, and serve on all parties, no later than thirty days from the entry of this Order, a full accounting of all profits that have resulted from all sales, occurring after August 26, 2008, of all products that fall within any of the Court's December 3, 2008, Orders referenced above.

Within ten days of the filing of that accounting, the interested parties shall file a joint status report setting forth the position of all interested parties on how they wish to proceed on this issue.

## VI. ORDER RE RETRIEVAL OF JOINTLY LODGED LAPTOP COMPUTER

On September 11, 2008, for the Court's convenience and pursuant to its Order, Mattel and the MGA parties jointly lodged a laptop computer from which the Court could easily access the Phase 1A and 1B trial transcripts.  Counsel are advised to contact the courtroom deputy clerk to arrange to retrieve the computer from the Court.

## VII. ORDER RE REVIEW OF UNDER SEAL FILINGS

On June 24, 2008, this Court ordered unsealed vast portions of the previously sealed record in these consolidated cases.  That Order related only to documents filed on or before May 27, 2008.  Certain specific documents, identified by the parties by docket number and found by the Court to have good cause to remain sealed, were not unsealed; similarly, certain Orders of this Court were not unsealed.

Counsel for all the parties are **ORDERED** to engage in a review and meet and confer process to significantly narrow, if not eliminate the under seal nature of the filings

Initials of Deputy Clerk __cls_____

dated May 28, 2008, through the date of the lifting of the stay on Phase 2 discovery, which occurred on February 11, 2009.  The parties are **ORDERED** to file with the Court, no later than forty-five days from the entry of this Order, a joint report that identifies by docket number and pinpoint citation all materials the parties agree should remain under seal, as well as the materials any party contends should remain under seal.  In all instances, all materials that are contemplated by any party to be maintained by the Court under seal shall specify the reasons therefor.

Counsel should anticipate the narrowest possible information to be maintained under seal.  For example, if there is good cause for maintaining under seal only a small portion of an attachment, counsel should anticipate that they may be required to e-file a public redacted version of that document.

## VIII. ORDER RE PHASED, UNDER SEAL RELEASE OF FORENSIC AUDITOR'S REPORT TO COUNSEL AND PARTIES

The Court received *in camera* on April 23, 2009, and has since reviewed, the Forensic Auditor's Report.  Concurrently served, under seal, on each parties' counsel of record, is a copy of the Forensic Auditor's preliminary report to the Court.  The Court reserves at this time release of the supporting documentation that is attached to the report.  This document is, until further Order of the Court, designated as a highly restricted attorney-eyes-only document.  It may be reviewed, and its contents shared, only with *counsel of record* in this case and the Court-appointed Temporary Receiver appointed below; it may not be shared with either the parties or attorneys who are not counsel of record, including in-house counsel for the parties.

The parties are advised that they must file any objections on the basis of privilege within forty-eight hours of the entry of this Order.  Failure to do may result in waiver of that privilege.  After the expiration of this forty-eight hour period, the Court will make further Orders regarding the scope of the release of the report, including its attachments.

The Court understands that certain requested information has only recently been produced to the Forensic Auditor.  For that reason, and because he has represented to the Court that certain analyses are ongoing, the Court continues the appointment of the Forensic Auditor until further Order of this Court.

## IX. ORDER GRANTING IN PART AND DENYING IN PART MOTION TO INTERVENE  (DOCKET #4761)

Non-party Omni 808 Investors, LCC ("Omni 808"), has filed an ex parte application to intervene for the limited purposes of responding to Mattel's ex parte application for a receiver for MGA and to address "all other issues related to Omni's

status as a secured creditor of MGA."  <u>See</u> Ex Parte Application to Intervene (docket #4761) at 1.  This motion was heard on February 11, 2009, at which time the Court expressly held the motion in abeyance, along with the Mattel's ex parte application for appointment of a receiver (docket #4540), which is addressed in the following section, to allow the preparation of an audit report by the Court-appointed Forensic Auditor.

For the reasons set forth below, the Court  **GRANTS IN PART AND DENIES IN PART** the motion to intervene.  The motion is granted to the extent it seeks intervention to address the potential receivership issues; the motion is **HELD IN ABEYANCE** as to the other, broader, but unspecified issues raised by Omni 808.

In the absence of a federal statute conferring a right to intervene, Rule 24(a)(2) provides as follows:

> (a) Intervention of Right. On timely motion, the court must permit anyone to intervene who: . . . (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

<u>Id.</u>  The Ninth Circuit has identified four separate elements that must be met in order to qualify for intervention under this rule; specifically, a would-be intervenor must show the following:

> (1) [I]t has a significant protectable interest relating to the property or transaction that is the subject of the action; (2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; (3) the application is timely; and (4) the existing parties may not adequately represent the applicant's interest.

<u>United States Alisal Water Corp.</u>, 370 F.3d 915, 919 (9th Cir. 2004).

Omni 808 has met both the first and second elements.  Where a party has a non-speculative economic interest that is both concrete and related to the underlying subject matter of the action, this element is met. <u>Id.</u>  Mattel has correctly argued that, generally, the issues regarding the collectability of a party's debt does not confer an interest on the part of the creditor to justify intervention pursuant to Rule 24(a)(2).  <u>See id.</u> (denying intervention where the interest of the would-be intervenor was "several degrees removed from the overriding public health and environmental policies that are the backbone of this litigation.").  However, this particular request for intervention is not one that falls into this general category.  Rather, it is an intervention for a very limited

MINUTES FORM 90
CIVIL -- GEN                                    14

Initials of Deputy Clerk __cls_____

purpose – to address the issue of the appointment of a receiver – which is directly related to debt collectability.  By virtue of this case, Mattel claims a significant interest in the assets of the MGA parties, including both money damages and rights to intellectual property previously held by the MGA parties.  Omni 808 now claims a superior interest by virtue of a transaction that occurred after the jury returned its verdict as to ownership of certain Bratz property.  This interest is directly related to this litigation.

The second element is met because the relief sought by Mattel is to take control of the Bratz assets, as that term is at length defined by its proposed order submitted with its motion for appointment of a receiver.  According to the testimony the Court heard at trial, the Bratz assets are, at least historically, the most significant ones owned by the MGA parties.  Resolution of the disputes over the priority to these assets may have to take into account the claimed superiority of Omni 808's interest in MGAE.

The third element is met, at least as to the receivership issue, which is the only ground upon which the Court grants the motion to intervene at this time.

The fourth element has been described as presenting a "minimal burden." Trbovich v. United Mine Workers of America, 404 U.S. 528, 538 n.10 (1972).  It is sufficient that the would-be intervenor shows that the representation "may be inadequate." Id.  Here, although both the MGA parties and Omni 808 may oppose in general the appointment of a receiver, their positions could differ significantly because MGAE is Omni 808's debtor.  Because all that is required is a minimal showing, and because Omni 808 has represented that it is an MGAE secured creditor, the Court finds that the fourth element is met because of the vastly different roles played by MGAE and Omni 808 vis-à-vis Mattel:  One is an anticipated judgment debtor and the other is a competing creditor.

Accordingly, the Court **GRANTS IN PART** the motion to intervene.  Omni 808 is a party to these consolidated cases for the limited purpose of addressing the receivership issues.  As such, it may file briefing in accordance with the schedule set forth below, and it may appear and argue at the hearing set as specified below.

For just cause and in order to preserve the status quo and address the allegations set forth in Mattel's application for the appointment of a receiver and in its opposition to the present motion to intervene, the Court **ORDERS** that Omni 808 and its counsel are restrained and enjoined, absent further order from this Court, from taking any action to assert or enforce any purported rights against the MGA parties, including but not limited to commencing an action against the MGA parties, taking any action to foreclose on any collateral of the MGA parties, committing any act that interferes with the Temporary Receiver's possession, control or use of the assets of the MGA entities, or commencing or participating in any involuntary bankruptcy proceedings against any MGA party pending further hearing on this matter on May 18, 2009, at 1:30 p.m.  At that hearing, the Court will consider whether, as counsel for Omni 808 represented to this

MINUTES FORM 90                                    Initials of Deputy Clerk __cls_____
CIVIL -- GEN                    15

Court, "Omni's purchase of the Senior Bank Credit Facility from Wachovia was a straightforward, arms-length business deal between non-parties to this action," or whether, as counsel for Mattel contends, the purchase was by entities formed for "the improper purpose of attempting to leapfrog over Mattel's claims and shield their assets from creditors and other rights-holders such as Mattel."  Counsel for all parties, including the intervenors, are afforded leave to file a final position on this issue no later than May 14, 2009.

## X. ORDER RE APPOINTMENT OF TEMPORARY RECEIVER PENDING HEARING ON APPOINTMENT OF PERMANENT RECEIVER

Mattel has filed an application for the appointment of a receiver or for alternative relief.  The Court has considered all papers submitted in support of the application and all opposition and reply papers thereto, the arguments of counsel at the hearing on the application, and the entire record in this action, and finds that just cause exists for the appointment of a Temporary Receiver purusant to L.R. 66.[9]  Specifically, the Court finds as follows:

1.     The MGA entities, MGAE and MGA HK, are domiciled in California, have their principal place of business in the Central District of California, and have the majority of their assets located within the Central District of California;

2.     As the Court has previously found, the Bratz Assets (as defined below and in that order) are and have been the property of Mattel and not any of the MGA parties;

3.     Good cause exists to believe that the MGA parties, defined as MGAE, MGA HK, and Isaac Larian, and each of them, have engaged in, are engaging in, or are about to engage in transactions, acts, practices and courses of business that constitute fraudulent transfers of assets and violations of Mattel's ownership and other rights in and to the Bratz Brand and Bratz Assets, as defined below;

4.     Mattel has demonstrated the possibility of dissipation of assets and, from the entire record herein, it appears likely that the MGA parties, agents,

---

[9]  The interim report of the Court-appointed Forensic Auditor recommends, for the reasons stated in the report, the appointment of a Receiver.  Although the report is fully consistent with the findings made herein, the Court is not relying upon this recommendation, or the information set forth in the Forensic Auditor's report, in making these findings because the parties have not yet had an opportunity to object or otherwise respond to the report.  The Court will consider the Forensic Auditor's report, and any objections or responses thereto, in determining whether or not to extend the appointment of the Temporary Receiver after the OSC hearing scheduled for May 18, 2009.

MINUTES FORM 90                                                    Initials of Deputy Clerk __cls_____
CIVIL -- GEN                              16

and related entities (as defined below) are engaged in a course of conduct with related parties designed to frustrate the Court's Orders, Findings and Injunction herein;

5.      Good cause exists to believe that the MGA parties, agents, and related entities (as defined below) will continue to engage in such transactions, acts, practices, and courses of conduct and business to the immediate and irreparable loss and damage to Mattel, and contrary to the interests of justice, unless restrained and enjoined.

6.      It is appropriate and in the interests of justice that, pursuant to L.R. 66, that a Temporary Receiver be appointed and that an Order to Show Cause be issued why a permanent receiver should not be appointed.

Accordingly, the Court **ORDERS** as follows:

1.      Patrick A. Fraioli, Jr., is hereby appointed Temporary Receiver pursuant to L.R. 66 for the MGA entities to manage, supervise and oversee the assets of the MGA entities and the Bratz Brand and all Bratz Assets as these terms are defined herein (the "Temporary Receiver").

2.      The Temporary Receiver is appointed and is hereby directed and ordered to take full and exclusive control over, and to manage, preserve, and maximize the profits of, the MGA entities and the Bratz Brand and Bratz Assets as of the date hereof, including, without limitation, by locating, taking possession and ownership of, preserving, protecting, managing, supervising and overseeing the Bratz Assets.

3.      The Temporary Receiver is further directed to investigate the financial affairs of the MGA entities, and specifically investigate transfers and transactions made by the MGA entities from and after July 17, 2008.

4.      The Temporary Receiver shall have the power to take any and all action which may be necessary, appropriate or advisable to effectuate the purposes of the Temporary Receivership, including, but not limited to, the power to:

a.      take custody, control and possession of the assets of the MGA entities and Bratz Assets in the possession, custody or control of the MGA entities, and/or any person or entity acting at their behest or direction or pursuant to their control, including, but not limited to, Isaac Larian and any successor-in-interest, subsidiary, corporate affiliate, agent, servant, attorney, accountant, officer, director, employee or other confederate (collectively, "the MGA parties,

Exhibit 9, Page 156

agents, and related entities") whether or not claimed to be encumbered by any security interest;

b.    preserve, hold and manage the assets of the MGA entities and the Bratz Assets and perform all acts necessary or advisable to preserve and/or enhance the value of these assets;

c.    exploit, license, distribute and sell the assets of the MGA entities and the Bratz Assets and products for profit, including, without limitation, by selling Bratz-branded dolls and other goods through appropriate channels of trade and distribution;

d.    market, promote and/or advertise the assets of the MGA entities and the Bratz Assets and/or Bratz-branded products;

e.    hire and employ individuals and entities as necessary or advisable to carry out the Temporary Receiver's mandate under this order;

f.    disburse funds as needed to satisfy and pay the reasonable and ordinary expenses incurred by the receivership, provided, however, that the Temporary Receiver shall maintain and shall not distribute, disburse or pay to anyone any receivership funds except as needed to satisfy the reasonable and ordinary expenses incurred by the receivership;

g.    open bank accounts in the name of the Temporary Receiver and transfer funds to, from and/or between those accounts;

h.    collect and maintain, and take all necessary or advisable actions to collect and maintain, monies owed by virtue of the sale, licensing, or other exploitation of the Bratz Assets;

i.    sell, compromise or assign debts for purposes of collection upon such terms and conditions as the Temporary Receiver deems necessary or advisable to carry out the Temporary Receiver's mandate under this order;

j.    enter into such agreements or contracts, and seek and enter into modifications to or amendments of such agreements and contracts, as the Temporary Receiver deems necessary or advisable to carry out the Temporary Receiver's mandate under this order;

k.    prepare, execute, acknowledge and deliver any and all deeds, assignments or other instruments necessary or advisable to carry

MINUTES FORM 90
CIVIL -- GEN

18

Initials of Deputy Clerk __cls_____

out the Temporary Receiver's mandate under this Order;

l.      protect and preserve all Bratz-related intellectual property, including, without limitation, by commencing, prosecuting, and/or renewing intellectual property registrations and/or filings of any type and in any jurisdiction or forum;

m.      retain and/or engage the services of advisors and/or professionals, including, without limitation, accountants, attorneys, consultants and experts to assist the Temporary Receiver in carrying out the Temporary Receiver's mandate under this Order.  The Temporary Receiver, without further order of this Court, is authorized to employ Ervin, Cohen & Jessup LLP, Dr. Lynne Phillips and the firm of Reinventures, Inc., to assist the Temporary Receiver in carrying out the Temporary Receiver's mandate under this Order;

n.      retain and/or engage the services of vendors, suppliers, distributors and other persons and/or entities to assist the Temporary Receiver in carrying out the Temporary Receiver's mandate under this Order;

o.      record this Order in any jurisdiction;

p.      the Temporary Receiver may for any lawful purpose use any federal or state taxpayer identification number previously used by the MGA parties, agents, and related entities;

q.      take all actions the Temporary Receiver deems necessary or advisable to marshal, collect, preserve or protect the Bratz Assets, including, without limitation, the institution of inquiries and investigations into the conduct of any of the MGA parties, agents, and related entities to uncover concealed Bratz Assets and/or fraudulent conveyances and/or attempts to dispose of Bratz Assets;

r.      institute, defend, intervene in and/or substitute as, and/or otherwise become a party to any or all actions in local, state, federal or foreign courts, including, without limitation, bankruptcy court, and any other proceedings before any governmental tribunal or arbitration panels, and take any and all necessary or advisable steps and measures in such actions as necessary or advisable to carry out the Temporary Receiver's mandate under this Order; provided, however, notwithstanding the foregoing, the MGA parties have all the requisite authority to assert all rights in this ongoing litigation between Mattel and the MGA parties in this action and the Temporary Receiver shall not assert a position in such litigation,

MINUTES FORM 90                                    Initials of Deputy Clerk __cls_____
CIVIL -- GEN                            19

except insofar as the Court orders or invites the Temporary Receiver to do so; and,

s.     perform such further and additional acts as the Temporary Receiver deems necessary or advisable to preserve the Bratz Assets, maximizing the profits derived therefrom, ensure the successful manufacture, delivery and marketing of Bratz-branded dolls and products for the spring and fall 2009 seasons and otherwise carry out the Temporary Receiver's mandate under this Order, including, without limitation, any acts which could be lawfully carried out by a corporation in the state of California.

5.     The Temporary Receiver, the Temporary Receiver's employees and agents as well as any and all of the professionals employed by the Temporary Receiver, are entitled to compensation for services rendered at their normal hourly rates and reimbursement for all expenses incurred by them on behalf of the receivership estate. The Temporary Receiver shall serve written notice upon counsel of record for the parties of the amount to be paid to each payee, with an itemization of the services rendered or expenses incurred. Upon service of said notice, the itemized fees and expenses may be paid by the Temporary Receiver on an interim basis. In the event that extraordinary services are performed by the Temporary Receiver, he shall be entitled to extraordinary compensation according to proof and approval of this Court. All interim fees paid shall be subject to final review and approval by this Court. This Court retains jurisdiction to award a greater or lesser amount as the full, fair and final value of such services. In the event there are insufficient funds in the receivership estate to fully compensate the Temporary Receiver and his professionals, the Court retains jurisdiction to allocate the costs and expenses of this receivership against Mattel, as the party who sought the appointment of the Temporary Receiver, and/or Isaac Larian, as the principal owner and beneficiary of the MGA entities.

6.     Upon service of a copy of this Order, all banks, broker-dealers, savings and loans, escrow agents, title companies, commodity trading companies, or other financial institutions shall cooperate with all reasonable requests of the Temporary Receiver regarding implementation of this Order, including transferring funds at his direction and producing records related to the assets of the MGA entities.

7.     The Bratz Assets include all tangible or intangible assets, including,

MINUTES FORM 90
CIVIL -- GEN

20

Initials of Deputy Clerk __cls_____

without limitation, all intellectual property necessary or materially useful for the design, manufacture, marketing, distribution and sale of any Bratz doll or other Bratz-branded product in the possession, custody or control (whether or not claimed to be encumbered by any security interest) of any of the MGA parties, agents, and related entities.  The Bratz Assets include, without limitation:

a.   All Bratz-related intellectual property rights, including, without limitation, copyrights (whether or not registered); copyright registrations; moral rights; design rights; patents (issued and pending); service marks; trademarks; trade dress; designs; slogans; characters; product packaging in any medium; product names; product illustrations; product designs; product concepts; conceptual drawings; engineering drawings; engineering specifications; processes; methods; trade secrets; know-how; product ideas; prototypes; line extensions; domain names; marketing and advertising materials; commercials; style guides; theme songs; soundtracks; scripts; screenplays; computer programming; digital and internet rights; video games; theatrical, television, video and DVD rights and masters; and rights in future technologies.

b.   All Bratz-related tooling for all past, current and future lines, including without limitation tools, tooling, in process tools, molds, sculptures, models, dies, and mock-ups, as well as other Bratz-related tangible items.

c.   All Bratz-related marketing and sales assets for all past, current and future lines, including, without limitation, consumer lists, marketing plans, account plans, focus group studies, marketing databases, and other consumer and marketing research.

d.   All Bratz-related records, including, without limitation, contracts, manufacturing records, inventory records and data, sales records and data, product testing data and records, vendor list and records, customer communications, and invoices and purchase orders.

e.   All Bratz-related contracts and agreements, including, without limitation, assignments, work-for-hire agreements and licensing agreements.

f.   All other Bratz-related rights, including, without limitation, distribution rights, licensing rights, exploitation rights, accounts receivable, and all choses in action relating to Bratz or the Bratz

Initials of Deputy Clerk __cls_____

brand.

g.    All Bratz-related items referenced at Paragraph 3 and Paragraph 8 (at lines 15-19) of the Court's Order granting Mattel's Motion for Permanent Injunction (docket #4443).

8.    The Temporary Receiver shall hereby be vested with, and is authorized, directed and empowered to exercise, all of the rights, powers or authorizations of the MGA entities, their officers, directors, general partners or persons who exercise similar powers and perform similar duties, including without limitation the sole authority and power to file or cause to be filed any suit or action in any court or arbitration tribunal other than this court, and filing, or causing to be filed, a petition for relief under the United States Bankruptcy Code, 11 U.S.C. § 101 et seq. for the MGA entities, their officers, agents, employees, representatives, directors, successors-in-interest, attorneys in fact and all persons acting in concert or participating with them are hereby divested of, restrained, enjoined, and barred from exercising, any of the rights, powers or authorities vested herein in the Temporary Receiver, including but not limited to filing, or causing to be filed, any suit or action in any court or arbitration tribunal other than this court, and/or filing, or causing to be filed, a petition for relief under the United States Bankruptcy Code, 11 U.S.C. § 101 et seq. for the MGA entities, except as otherwise specified herein or by further order of this Court.

9.    As set forth above, the Court leaves undisturbed the stay set forth in the Court's January 7, 2009, Order.  Moreover, the stay is hereby supplemented (a) to enable the Temporary Receiver to take the actions specified herein, and (b) to permit retailers who receive Bratz products pursuant to the authority of the Temporary Receiver, and who pay the Temporary Receiver monies due and owing for such Bratz products, to not remove such products from the shelves until January 10, 2010, at which time the mandatory provisions of Paragraphs 4, 6 and 7 of the Court's December 3, 2008, Order granting Mattel's Motion for Permanent Injunction (docket #4443) shall become effective as to such retailers.  The supplemental stay provisions shall not eliminate, alter or amend the obligations of any retailer, distributor, seller or other person or entity, including, without limitation, the MGA parties, who do not meet the foregoing requirements, to earlier recall or earlier obtain the recall of Bratz products as required by the mandatory provisions of Paragraphs 4, 6 and 7 the Court's Order granting Mattel's Motion for Permanent Injunction (docket #4443).  The supplemental stay provisions shall not apply to permit, enable or authorize enjoined conduct by any enjoined party, except as to actions taken by the Temporary Receiver and/or any

MINUTES FORM 90                                    Initials of Deputy Clerk __cls_____
CIVIL -- GEN                        22

authorized agents working for and under the auspices of the Temporary Receiver pursuant to the terms of this Order.

10. Additional Provisions.

    a. In the event that any person or entity or fails to refuses to deliver or transfer any of the assets of the MGA entities or Bratz Assets or otherwise fails to comply with any provision of this Order, the Temporary Receiver is instructed to file ex parte an affidavit setting forth the failures. Upon the filing of such affidavit, the Court may authorize repossession or sequestration or other equitable relief as requested by Temporary Receiver.

    b. The Temporary Receiver shall maintain and shall not disburse, distribute or pay anyone any receivership funds or proceeds earned from exploitation of Bratz-branded dolls and products except as needed to satisfy the reasonable and ordinary cost and expenses incurred by the receivership.

    c. The Temporary Receiver shall have the status of officers and agents of this Court, and as such shall be vested with the same immunities as vested with this Court. Neither the Temporary Receiver nor any person or entity acting at the direction of the Court or pursuant to agreements with the Temporary Receiver (whether employees, vendors, contractors or otherwise) may be held liable to the MGA parties whether for claims of alleged copyright infringement, trademark infringement, or other alleged causes of action for any acts taken in good faith in compliance with this Order.

    d. During the course of the receivership, and pending further order of the Court, the MGA parties shall not have any right, title, or interest and/or power as to the Bratz Assets or Bratz brand. All ownership of all Bratz Assets, Bratz Brands and Bratz-related copyrights and other intellectual property are hereby vested in the Temporary Receiver and the MGA parties are divested of all such ownership. Nothing herein shall alter or affect the right of Mattel to take any and all actions relating to the Bratz Assets or the Bratz brand which it otherwise lawfully could take, including, without limitation, the institution, maintenance and prosecution of legal proceedings anywhere in the world or other proceedings before any governmental or tribunal or arbitration panel.

    e. Effective as of the date of this Order, the MGA parties, agents, and

related entities shall turn over to the Temporary Receiver any and all revenues they receive or obtain relating to the MGA entities and Bratz in any manner and for any reason, including, without limitation, in connection with any sale, distribution and/or licensing thereof.  These revenues shall not be released pending further order of the Court.  The MGA entities shall account for all such revenues and interest paid thereon, and shall present to the Court, the Temporary Receiver and Mattel reports reflecting such accounting every ten days, commencing ten days from the date of this Order.

f.     To the extent that the proceeds are insufficient at any point to fund the cost of the receivership, the MGA entities are ordered to provide the Temporary Receiver with such additional funds as the Temporary Receiver requires to accomplish the purposes of the receivership.

g.     The Court shall retain jurisdiction over the receivership for the duration of its existence.

h.     No bond shall be required in connection with the appointment of the Temporary Receiver.  Except for acts of gross negligence, the Temporary Receiver, and his agents and employees shall not be liable for loss or damage incurred by the MGA entities, its officers, agents, servants, employees, attorneys or others by virtue of any act performed or omitted to be performed by the Temporary Receiver in connection with the discharge of his duties and responsibilities.

i.     It is further ordered that no officer, director, agent, servant, employee or attorney of the MGA entities shall take any action in the name of or on behalf of the MGA entities before any court of any jurisdiction without the prior written consent of the Temporary Receiver or Order of the Court.  However, notwithstanding the foregoing, nothing herein shall be deemed to deny the MGA parties the right to appeal from the Order Granting Preliminary Injunction or this Order.  Moreover, this provision is subject to the right of the MGA parties with respect to the current litigation, as set forth in ¶ 4.r.

j.     In light of the appointment of a Temporary Receiver, the MGA entities, their officers, directors, agents, employees and attorneys are hereby prohibited from filing, or causing to be filed, a petition for relief under the United States Bankruptcy Code, 11 U.S.C. §§ 101

et seq. for the MGA entities without prior permission of this Court.

k.      The MGA entities are ordered to cooperate fully with the Temporary Receiver, including without limitation providing all   financial and other documentation requested by the Temporary Receiver.

l.      The Temporary Receiver is authorized to contact the Court-appointed Forensic Auditor, Ronald Durkin, and may utilize the findings and conclusions reached by Mr. Durkin as the Temporary Receiver deems appropriate.

m.      The Temporary Receiver is hereby ordered and directed to prepare and provide to this court a report setting forth preliminary conclusions, findings and recommendations in accordance with the schedule set forth below.

11.   Order to Show Cause.  All interested parties, and any interested creditor, shall appear before this Court on Monday, May 18, 2009, at 2:00 p.m. to show cause, if there be any, why a permanent receiver should not be appointed in the same scope and manner as the Court's appointment of the Temporary Receiver.  Any declarations, affidavits, points and authorities or other submissions in support of, or in opposition to, the appointment of a Permanent Receiver shall be filed with the Court and served on all parties no later than May 14, 2009.

12.   Pursuant to L.R. 66-4, Mattel is **ORDERED** to cause this Order to be served on all known creditors of the MGA entities within three days of the date of this Order.

13.   The Temporary Receiver shall file a report and recommendation concerning all actions taken as well as recommendations for further action no later than Monday, May 11, 2009.  This report shall be filed with the Court and served on all parties.

**IT IS SO ORDERED THIS 27th DAY OF APRIL, 2009**

**STEPHEN G. LARSON**
**UNITED STATES DISTRICT JUDGE**

MINUTES FORM 90                                    Initials of Deputy Clerk __cls_____
CIVIL -- GEN                          25

EXHIBIT 10

REDACTED

EXHIBIT 11

REDACTED