1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 090378)
2    johnquinn@quinnemanuel.com
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
     865 South Figueroa Street, 10th Floor
5  Los Angeles, California  90017-2543
     Telephone:  (213) 443-3000
6  Facsimile:  (213) 443-3100

7  Attorneys for Mattel, Inc.

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                  EASTERN DIVISION

| | |
|---|---|
| 11  MATTEL, INC., a Delaware corporation,<br><br>12         Plaintiff,<br><br>13<br><br>14     vs.<br><br>15  MGA ENTERTAINMENT, INC., a California corporation, et. al.,<br><br>16        Defendants.<br><br>17  AND CONSOLIDATED ACTIONS<br>18 | CASE NO. CV 04-9049 DOC (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>[DISCOVERY MATTER]<br>To be heard by Discovery Master<br>Robert C. O'Brien<br><br>[PUBLIC REDACTED] MATTEL, INC.'S OPPOSITION TO MOTION TO COMPEL FURTHER RESPONSES TO MGA'S PHASE 1 INTERROGATORY NOS. 20-23 AND 28 |

19
20       [Opposition to Separate Statement, and Declarations of Scott L. Watson, Michael Moore and Lori Pantel filed
21       concurrently herewith]

22       Date:    TBD
         Time:    TBD
23       Place:   Arent Fox LLP
                  555 West Fifth St., 48th Floor
24                Los Angeles, CA
                  90013
25
         **Phase 2**
26       Disc. Cut-off:      June 1, 2010
         Pre-trial Conf.:    None Set
27       Trial Date:         None Set

28

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

FACTUAL BACKGROUND .................................................................................... 2

ARGUMENT ............................................................................................................. 6

I.   MATTEL HAS NOT WAIVED ITS OBJECTIONS ....................................... 6

II.  MATTEL'S RESPONSE TO INTERROGATORY NO. 20 IS MORE THAN ADEQUATE ........................................................................................ 8

     A.   The Court Has Already Ruled That Mattel Fully Complied With Its Obligations Under California Law ....................................................... 8

     B.   MGA's Demand For All Documents Relating to the Stolen Trade Secrets Is Vastly Overbroad and Burdensome ...................................... 10

III. MATTEL'S RESPONSE TO INTERROGATORY NO. 22 IS CONSISTENT WITH THE DISCOVERY MASTER'S PRIOR ORDERS ....................................................................................................... 12

IV.  PROVIDING INFORMATION REGARDING ALL WHO HAD ACCESS TO MATTEL'S TRADE SECRETS WOULD BE UNDULY BURDENSOME ............................................................................................. 15

V.   MATTEL OFFERED TO PROVIDE REDACTED RESPONSES ................ 17

CONCLUSION ........................................................................................................ 18

-i-

# TABLE OF AUTHORITIES

**Page**

## Cases

Beacon Theatres, Inc. v. Westover,
  359 U.S. 500 (1959).............................................................................................17

Campbell v. Washington,
  2009 WL 577599 (W.D. Wash. Mar. 5, 2009)....................................................13

Coffeyville Resources Refining & Marketing v. Liberty Surplus Ins. Corp.,
  2009 WL 3007125 (D. Kan. Sept. 16, 2009)........................................................10

Computer Economics, Inc. v. Gartner Group, Inc.,
  50 F. Supp. 2d 980 (S.D. Cal. 1999) .....................................................................8

Diodes, Inc. v. Franzen,
  260 Cal. App. 2d 244 (1968) .............................................................................8, 9

GMAC Real Estate, LLC v. Gate City Real Estate Pocatello, Inc.,
  2008 WL 711203 (D. Idaho Mar. 13, 2008)................................................. 10-11

Gartner, Inc. v. Parikh,
  2008 WL 4601025 (C.D. Cal. Oct. 14, 2008) ......................................................17

Reinking v. Alyeska Pipeline Serv. Co.,
  2009 WL 1259385 (D. Alaska May 6, 2009)........................................................16

San Jose Const., Inc. v. S.B.C.C., Inc.,
  155 Cal. App. 4th 1528 (2007) ............................................................................17

Universal Analytics, Inc. v. MacNeal-Schwendler Corp.,
  707 F. Supp. 1170 (C.D. Cal. 1989)...................................................................8-9

## Statutes

Cal. Civ. Code § 3426.1(d)(1)-(2) .............................................................................17

Cal. Civ. Proc. Code § 2019.210 ............................................................................. 8-9

Cal. Civ. Proc. Code § 2019(d)................................................................................8, 9

Fed. R. Civ. P. 26(b)(2)(C) ........................................................................................11

Fed. R. Civ. P. 26(e) ....................................................................................................7

00505.07975/3116674.5

## Preliminary Statement

In April 2009, Mattel agreed to provide responses to five interrogatories propounded by MGA. MGA moved to compel them anyway. As it promised, Mattel then provided responses that were over 250 pages in length; after further meet and confer sessions to address MGA's claimed concerns, Mattel provided supplemental responses that were nearly 300 pages in length.

MGA is still not satisfied. It claims that Mattel cannot include any objections to the Interrogatories, even though MGA agreed with Mattel that it should provide responses and have the propriety of the objections settled afterward, and even though the Discovery Master Order only required Mattel to provide the promised responses that Mattel repeatedly stated would include objections.

MGA argues that Mattel's descriptions of its trade secrets do not comply with California law. Judge Larson rejected this same argument when MGA made it long ago. Even before it had responded to the Interrogatories at issue here, Mattel identified its trade secrets by Bates number. MGA challenged that as insufficient. The Court disagreed and ruled that it suffices under California law.

MGA also claims that Mattel needs to provide responses that reference not merely the thousands of pages of trade secrets stolen, but also all documents that refer or relate in any manner to those trade secrets. Such an overbroad requirement would multiply the burden of providing responses quite literally a thousand-fold, imposing a substantial and undue burden on Mattel that cannot be justified since the end result would be an interrogatory response that was thousands of pages long—and one that is useless for any purpose but to harass Mattel.

MGA also argues that Mattel's 150-page response to an interrogatory seeking "all facts" in support of Mattel's trade secret claims is insufficient because it draws in part from the language of Mattel's counterclaims. In fact, the Court already found that Mattel's counterclaims provided an "unprecedented" amount of information in support of Mattel's claims. Mattel should not be punished for its

1   diligence in providing detailed, thorough counterclaims which on their face respond
2   to the interrogatories.   Moreover, defendants have vigorously fought Mattel's
3   discovery efforts into these claims; there is nothing improper about Mattel's
4   reservation of its right to supplement the responses based on information yet to be
5   obtained from defendants.

6          MGA also objects to Mattel providing only the names of those who had
7   access to Mattel's trade secrets up through their theft between 2004 and 2006 (at
8   least those Mattel is aware of).   Of course, once MGA stole them, the access
9   included those at MGA—information within MGA's control that MGA has failed to
10  produce to Mattel.  Furthermore, ███████████████████████████
11  ████████████████████████████████████████████████████████
12  ████████████████████████████████████████████████████████
13  ██████████████████████████████████████████ the minimal
14  relevance of this request, which would yield names including lawyers, inside Mattel
15  and at Quinn Emanuel, consulting experts and law enforcement personnel who have
16  accessed this information in judicial and related proceedings.

17         Finally, MGA objects to Mattel's Attorney's Eyes Only designation of
18  its responses. The Protective Order specifically calls out trade secret information as
19  the sort of information that is properly designated AEO, and the responses discuss in
20  detail highly confidential information such as the steps Mattel takes to maintain its
21  trade secrets.   Nevertheless, Mattel in fact offered to provide public redacted
22  responses if MGA would be willing to do the same with its AEO discovery
23  responses.  Rather than accept Mattel's offer, MGA simply filed this motion, in a
24  thinly disguised—and improper—effort to litigate before the Discovery Master a
25  substantive element of Mattel's claims.

26                          **Factual Background**

27         **MGA's Agreement to Mattel's Proposal.**  On March 25, 2009, MGA
28  wrote Mattel a six-page meet-and-confer letter identifying twenty-one requests for

1  production and six interrogatories, including the five at issue here, which MGA
2  asked Mattel to supplement.[1]  Mattel promptly met and conferred as requested, and
3  on April 16, 2009 informed MGA that it would supplement all the interrogatories at
4  issue.[2]  MGA nevertheless filed a motion to compel responses to the interrogatories,
5  arguing that an Order should be issued because Mattel had not yet provided
6  responses to the interrogatories—even though less than four days had passed.[3]
7  Mattel's failure to provide supplementary responses in four days is the basis for
8  MGA's groundless rhetoric here that Mattel "welched on its promise."[4]  (Motion at
9  3.)

10  In opposing MGA's motion to compel, Mattel again stated that it
11  intended to respond to the interrogatories,[5] but made clear repeatedly and
12  specifically that it reserved its right to include reasonable objections in its responses:

13
14
15  [1]  See March 25, 2009 letter from Caroline H. Mankey to Jon D. Corey, attached
     as Exhibit 1 to the concurrently filed Declaration of Scott L. Watson ("Watson
16  Dec.").
     [2]  See April 16, 2009 letter from Diane C. Hutnyan to Caroline H. Mankey, at 3,
17  Watson Dec., Exh. 2.
18  [3]  See MGA Entertainment, Inc.'s Motion to Compel Production of Documents
     and Things From MGA's Second and Fifth Sets of Requests for Production and
19  Responses to MGA's Second Set of Interrogatories to Mattel, Inc., dated April 20,
20  2009, Watson Dec., Exh. 3.
     [4]  As Mattel pointed out in its opposition, Mattel also was concerned about
21  MGA's newfound position that Mattel's responses to interrogatories never
22  substantively answered before should not count towards the limits on
     interrogatories.  Notably, the Discovery Master agreed that Mattel's responses did
23  indeed count towards the limits.  See Phase 2 Discovery Matter Order No. 46, dated
24  August 14, 2009, at 17, Watson Dec., Exh. 4.
     [5]  See Mattel, Inc.'s Opposition to MGA Entertainment, Inc.'s Motion to Compel
25  Production of Documents and Things From MGA's Second and Fifth Sets of
26  Requests for Production and Responses to MGA's Second Set of Interrogatories to
     Mattel, Inc., dated April 29, 2009, at 11 ("Mattel has agreed to provide supplemental
27  responses to the MGA interrogatories at issue in this motion."), Watson Dec., Exh.
28  5.

00505.07975/3116674.5

-3-

1            Once MGA receives those responses, if it feels they are

2            inadequate Mattel will gladly meet and confer to address

3            any such concerns.  But MGA's demand that all of

4            Mattel's objections be overruled *ex ante*—and its demand

5            that Mattel be held to a higher standard than MGA—is

6            improper.[6]

7 Mattel made absolutely clear that those responses would include objections, and

8 argued that the "blanket order" sought by MGA overruling all of Mattel's objections

9 in advance of its voluntary responses would be improper.[7]  "[I]t would be improper

10 and premature to address this Mattel objection (and Mattel's other objections) now

11 in light of Mattel's agreement to respond to the interrogatories—again, there is no

12 current dispute that calls for a ruling."[8]

13        In Reply, MGA effectively conceded on this issue.  "Assuming Mattel

14 does, in fact, provide further responses to the subject interrogatories . . . as it has

15 committed to do, no Interrogatories and only four Requests for Production appear to

16 remain at issue."[9]  MGA devoted the remainder of its Reply to the few document

17 requests that remained in dispute.  It never mentioned the interrogatories, or Mattel's

18 reservations of its objections, again.

19        **The Discovery Master's Order.**   Based on the agreement of the

20 parties, ███████████████████████████████████████████████

21 ████████████████████████████████████████████████████████

22 ████████████████████████████████████████████████████████

23 

24    [6]  Id. at 12 (emphasis added).

25    [7]  Id. (emphasis added).
   [8]  Id. at 13 (emphasis added).

26    [9]  MGA Entertainment, Inc.'s Reply Re Motion to Compel Production of

27 Documents and Things From MGA's Second and Fifth Sets of Requests for
Production and Responses to MGA's Second Set of Interrogatories to Mattel, Inc.,

28 dated May 4, 2009, at 1, Watson Dec., Exh. 6.

1

2

3

4

5      **Mattel's Responses and Supplemental Responses.**   The parties

6 agreed that Mattel would serve its responses on July 31, 2009. On that date, Mattel

7 provided detailed responses that included Mattel's current contentions as to the

8 bases of its counterclaims; listed thousands of pages of trade secrets that were stolen

9 and provided information regarding why each of those trade secrets was valuable;

10 documented the steps Mattel had taken to protect its trade secrets, including its

11 highly confidential security procedures; and provided MGA with documents that

12 supported its claims. In total, Mattel's responses were over 250 pages in length.[11]

13      MGA sent a meet and confer letter demanding still further

14 supplementation. Mattel then provided a set of Second Supplemental Responses,

15 294 pages in length, providing additional facts and documents in support of Mattel's

16 claims.[12]

17

18

_____

19   [10]  Phase 2 Discovery Matter Order No. 42, dated July 29, 2009, at 25, Watson

20 Dec., Exh. 7.

  [11]  See Mattel, Inc.'s First Supplemental Objections and Responses to

21 Interrogatory Nos. 20-23 and 28 in MGA Entertainment, Inc.'s Second Set of

22 Interrogatories, dated July 15, 2009, Watson Dec., Exh. 9. MGA baselessly implies

that Mattel did not serve its responses by mail. (Motion at 3-4.) As clearly shown

23 on the proof of service, the responses were served by mail to no less than three

24 separate offices for MGA's counsel. And, as MGA admits, Mattel provided a

25 courtesy copy of the responses as soon as one was requested by MGA. (Motion at

4.)

26   [12]  Mattel, Inc.'s Second Supplemental Objections and Responses to

27 Interrogatory Nos. 20-23 and 28 in MGA Entertainment, Inc.'s Second Set of

Interrogatories, dated September 14, 2009 ("Responses"), Watson Dec., Exh. 10;

28 Verification, Watson Dec., Exh. 23.

## **Argument**

### I.    **MATTEL HAS NOT WAIVED ITS OBJECTIONS**

MGA argues that Mattel should be ordered to provide responses without objections because the Discovery Master "previously overruled" all of them.  (Motion at 6-7.)  The Discovery Master did not even consider, much less overrule, Mattel's objections.  ██████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████  And while agreeing to provide responses, Mattel repeatedly reminded both MGA and the Discovery Master that those responses would be subject to reasonable objections that should not be ruled on *ex ante*.  MGA did not dispute that this was sufficient.

Moreover, the putative ruling MGA presumes was made is directly at odds with rulings the Discovery Master actually has made and indeed with MGA's own successful position in this litigation.  The Discovery Master has already ruled that a party need not provide "all facts" in support of a party's contentions, but instead a recitation of "principal and material facts."[14]   MGA's argument would mean that Mattel would nevertheless be required to provide "*all*" facts, since that is

---

[13]   See, e.g., Phase 2 Discovery Matter Order No. 22, dated April 28, 2009, at 43-46 (explicitly overruling majority of MGA's objections to document requests), Watson Dec., Exh. 11; Phase 2 Discovery Matter Order No. 42, dated July 29, 2009, at 15-18, 19-25 (ruling as to each of Mattel's objections in response to specific discovery requests), Watson Dec., Exh. 7.

[14]   See Phase 2 Discovery Matter Order No. 22, dated April 28, 2009, at 53, Watson Dec., Exh. 11.

1    what MGA's interrogatories request, when the Discovery Master has already limited

2    MGA's obligations to respond to interrogatories on this basis.[15]

3            MGA's argument would also freeze discovery in this case.   Among the

4    objections MGA seeks to deem overruled is Mattel's reservation of the right to

5    supplement its responses in the future, including based on expert discovery and

6    based on information learned from defendants and third parties.   Thus, MGA would

7    limit Mattel to the facts Mattel is aware of right now even though discovery does not

8    end for over seven months and, for example, MGA Mexico made its first document

9    production a week ago.     The Discovery Master has already upheld similar

10   reservations of rights,[16] and there is simply no basis for MGA's presumption that the

11   Discovery Master somehow overruled *sub silencio* here an objection that has been

12   consistently upheld in the past.   See also Fed. R. Civ. P. 26(e) (requiring parties to

13   ───────────────

14   [15]   See Phase 2 Discovery Matter Order No. 11, dated March 31, 2009, at 19,
       Watson Dec., Exh. 12; see also Phase 2 Discovery Matter Order No. 22, dated April
15     28, 2009, at 53, Watson Dec., Exh. 11; Phase 2 Discovery Matter Order No. 56,
16     dated September 3, 2009, at 37 ███████████

17     ███████████████████████████████████████████████████

18     ███████████████████████████████████████████████████,
19     Watson Dec., Exh. 13; Carter Bryant and MGA Defendants' Joint Opposition to
       Mattel, Inc.'s Motion for Leave to Serve a Supplemental Interrogatory Regarding
20     Defendants' Affirmative Defenses, dated November 19, 2007 ("Mattel's proposed
       interrogatory, which seeks to require the defendants to 'state all facts' and
21     'IDENTIFY all PERSONS . . . and all DOCUMENTS that REFER OR RELATE to
22     such facts', supporting each of their affirmative defenses is exactly the type of
       'blunderbuss' interrogatory that numerous courts have held to be inappropriate and
23     abusive."), Watson Dec., Exh. 20; Hearing Tr. dated December 3, 2007, at 32:5-18
24     (counsel asserts that a request for all facts "should properly be interpreted [a]s laying
       forth your principal facts, laying forth the principal basis for a defense" and Court
25     replies, "Let's lay forth some facts, counsel.  Let's start with that."), Watson Dec.,
26     Exh. 21.
       [16]   See Phase 2 Discovery Matter Order No. 22, dated April 28, 2009, at 47,
27     Watson Dec., Exh. 11; see also Phase 2 Discovery Matter Order No. 56, dated
28     September 3, 2009, at 31-32, Watson Dec., Exh. 13.

1  supplement their responses with additional information as it becomes available).
2  MGA's argument would overrule even Mattel's privilege objections.  There can be
3  no basis for such a finding here, where Mattel has repeatedly reserved its right to
4  make such objections.

5  **II.    MATTEL'S RESPONSE TO INTERROGATORY NO. 20 IS MORE**
6  **THAN ADEQUATE**

7  **A.    The Court Has Already Ruled That Mattel Fully Complied With**
8  **Its Obligations Under California Law**

9  MGA complains that Mattel's response to Interrogatory No. 20 is
10 insufficient because its description of the stolen trade secrets "falls far short of
11 providing the level of specificity that California law requires." (Motion at 5.)  MGA
12 has no basis to complain and its argument is contrary to prior rulings in this case:
13 Judge Larson overruled this very argument when MGA's prior counsel made it, and
14 explicitly held that Mattel had adequately identified its trade secrets under
15 California law even *before* it provided the responses at issue by identifying the
16 documents reflecting the stolen secrets by Bates number.[17]

17 As the cases cited by MGA recognize, a plaintiff's duty to identify its
18 trade secrets is governed by Cal. Civ. Proc. Code § 2019.210, which states that "[i]n
19 any action alleging the misappropriation of a trade secret under the Uniform Trade
20 Secrets Act . . . the party alleging the misappropriation shall identify the trade secret
21 with reasonable particularity."  See Computer Economics, Inc. v. Gartner Group,
22 Inc., 50 F. Supp. 2d 980, 983-985 (S.D. Cal. 1999) (noting that § 2019.210 codifies
23 Diodes, Inc. v. Franzen, 260 Cal. App. 2d 244, 253 (1968));[18] Universal Analytics,

24
25
_____

26  [17]  Order Re Motions Heard On June 11, 2007, dated June 27, 2007, at 25,
    Watson Dec., Exh. 15.
27  [18]  Computer Economics discusses the relevant statute but refers to it as Cal.
28  Civ. Proc. Code § 2019(d).  That section was later moved to the current Cal. Civ.
    (footnote continued)

00505.07975/3116674.5
-8-

1 | Inc. v. MacNeal-Schwendler Corp., 707 F. Supp. 1170, 1177 (C.D. Cal. 1989)
2 | (citing Diodes as basis for rule). In moving to dismiss Mattel's trade secret claims,
3 | MGA argued that Mattel had not complied with this requirement,[19] even though
4 | Mattel had specifically identified the stolen trade secrets by Bates number. The
5 | Court ruled that this was sufficient: "The Court agrees that, *by identifying*
6 | *documents in discovery by Bates-stamp number, Mattel has complied with the*
7 | *dictates of § 2019.210.*"[20]  MGA simply ignores this dispositive ruling. The Court
8 | has held that identification by Bates number is sufficient under California law.
9 | MGA has cited no authority for its assertion that, directly contrary to the ruling
10 | made by the Court, what Mattel has done "falls far short of providing the level of
11 | specificity that California law requires." (Motion at 5.)

12 | In fact, Mattel has gone far beyond its duties under California law.
13 | Mattel has identified each of the stolen trade secrets by Bates number, and then gone
14 | on to identify the information within those documents that has made them valuable.
15 | MGA has no right to demand more than that; indeed, it does not even say exactly
16 | what more it wants.[21]

---

Proc. Code § 2019.210. See id. at Law Revision Comments ("Section 2019.210 continues former Section 2019(d) without change.").

[19]  See MGA Entertainment and Isaac Larian's Memorandum of Points and Authorities in Support of Joint Motion to Dismiss Mattel's Amended Answer and Counterclaims, dated February 12, 2007, at 15-19, Watson Dec., Exh. 14.

[20]  Order Re Motions Heard On June 11, 2007, dated June 27, 2007, at 25, Watson Dec., Exh. 15.

[21]  MGA complains that Mattel purportedly "points MGA to thousands of pages of documents and says 'Go fish!'" (Motion at 5.) Hardly. Mattel has not hidden the stolen trade secrets in thousands of pages of documents. Rather, MGA has stolen thousands of pages of trade secrets. The vast number of pages does not speak to any obfuscation by Mattel, but rather to the vast number of trade secrets defendants stole.

**B. MGA's Demand For All Documents Relating to the Stolen Trade Secrets Is Vastly Overbroad and Burdensome**

MGA also objects to Mattel's response to Interrogatory No. 20 because Mattel has identified only the trade secret documents that were stolen, rather than each and every document that "REFERS or RELATES to" the stolen trade secrets. (Motion at 10.)   MGA defines that phrase to mean, "constituting, embodying, containing, referring to, commenting on, evidencing, regarding, discussing, describing, mentioning, reflecting, expressing, pertaining to, concerning, supporting, contradicting, negating, revoking or otherwise relating to in any manner."[22]   MGA argues that "[i]f this were a single trade secret case, there is no question that MGA would be entitled to see any document that relates to the alleged trade secret," (Motion at 10), and therefore the same rules should apply even though many more trade secrets were stolen.

The argument is misguided. First, even a single stolen document may relate to a multitude of completely irrelevant documents. The documents that were stolen here include numerous line-lists, charts, and other aggregations or summaries of data which in turn arguably "relate" to every other document relating to the data they summarize. Identifying all documents relating to even a single stolen trade secret would be a monumental task. See, e.g., Coffeyville Resources Refining & Marketing v. Liberty Surplus Ins. Corp., 2009 WL 3007125, at *5 (D. Kan. Sept. 16, 2009) (holding request "overly broad because the sweeping request would require National to produce detailed information concerning claims that have little or no similarity to the controversy before the court" and "unduly burdensome" because it "would require it to manually review nearly 95,000 open and closed pollution claim files"); GMAC Real Estate, LLC v. Gate City Real Estate Pocatello, Inc., 2008 WL

---

[22]   MGA's Second Set of Interrogatories To Mattel, Inc., dated December 4, 2007, at 8, ¶ 24, Watson Dec., Exh. 8.

1  711203, at *3 (D. Idaho Mar. 13, 2008) (rejecting request that sought a "potentially

2  immense volume of material" not relevant to the case).

3         Among other things, MGA stole Mattel's 2005 All World Line List.

4  ████████████████████████████████████████████████████████

5  ████████████████████████████████████████████████████████

6  ██████████████[23]████████████████████████████████████

7  ███████████████████████████████████████████████[24]███

8  ████████████████████████████████████████████████████████

9  ████████████████████████████████████████████████████████

10 ████████████████████████████████████████████████████████

11 ███████████████████████████[25]████████████████████████

12 ████████████████████████████████████████████████████████

13 ████████████████████████████████████████████████████████

14 Other stolen trade secret documents are similarly sweeping in the scope of the

15 information that could "refer or relate" to them.[26]

16        Moreover, contrary to MGA's hypothetical, this is not a "single trade

17 secret case." The identification of the trade secrets alone spans a hundred pages; it

18 would take thousands more to identify all documents that relate to these trade

19 secrets. The Federal Rules require consideration of the actual issues, and the actual

20 burdens discovery present, and to balance those burdens against the benefits. See

21 Fed. R. Civ. P. 26(b)(2)(C); Phase 2 Discovery Matter Order No. 3, dated March 10,

22 _____

23  [23] Declaration of Lori Pantel filed concurrently ("Pantel Decl.") at ¶ 4.

24  [24] Id.

25  [25] Id.

26  [26] Id. at ¶ 5. ████████████████████████████

27 ████████████████████████████████████████████████████████

28 ████████████████████████████████████████████████████████

1   2009, at 13 ("Rule 26(b)(2) provides that the frequency or extent of discovery
2   otherwise allowed by the Rules must be limited if the court determines that . . . 'the
3   burden or expense of the proposed discovery outweighs its likely benefit . . . .'"),
4   Watson Dec., Exh. 22. Most of the documents identified would not be even
5   remotely relevant. For example, an email message about a one-day delay of a
6   shipment of on of the products on the line list to a retailer has no bearing on any
7   claim or defense. MGA has provided no basis to believe that every document
8   related to every product on the 2005 all worlds line list has any bearing on this case.
9   Given the number and breadth of the trade secrets at issue, identifying all documents
10  relating to them is simply not practicable, and not justified.

11  **III.   MATTEL'S RESPONSE TO INTERROGATORY NO. 22 IS**
12  **CONSISTENT WITH THE DISCOVERY MASTER'S PRIOR**
13  **ORDERS**

14          MGA challenges Mattel's response to Interrogatory No. 22 because
15  "MGA is entitled to know *all* the facts that Mattel claims supports its trade secret
16  claim—not just the selected facts that Mattel chooses to identify." (Motion at 9.)
17  Yet, when it came to MGA's own interrogatory responses, MGA has argued that
18  this very requirement to recite "all" facts is "                              ": "
19  ████████████████████████████████████████████████████
20  ████████████████████████████████████████████████████
21  ██████████████████████████████"[27]    MGA has urged that a party
22  satisfies its discovery obligations by setting forth "sufficient facts, identified persons
23
24
25
26  _____
27  [27]  See MGA Entertainment, Inc.'s Opposition to Mattel, Inc.'s Motion to
    Compel Responses to Interrogatories by the MGA Parties, dated December 31,
28  2007, at 3, Watson Dec., Exh. 16.

1   with knowledge, and identified documents to support [its] contentions."[28]   Likewise,

2   when Mattel moved to compel MGA to respond to interrogatories about MGA's

3   trade dress contentions with complete answers, MGA claimed it had satisfied its

4   discovery obligations by providing Mattel with the "████████████████████

5   ██████"[29]

6          This is the rule that has been enforced to date.   In Order No. 22, the

7   Discovery Master agreed that MGA complied with <u>Rule</u> 33 by "appris[ing] Mattel

8   of the principal and material facts supporting MGA's trade dress claim."[30]   The

9   Discovery Master explained that "[t]here is always a greater degree of specificity

10  that could be provided by an interrogatory response."   Nevertheless, the Discovery

11  Master found MGA's response sufficient.[31]   Similarly, in Order No. 11, the

12  Discovery Master rejected the reading of a contention interrogatory as requiring a

13  recitation of "all" facts as unduly burdensome: "[T]he Discovery Master is

14  nonetheless cognizant of the fact that a demand for 'all facts' relating to what could

15  be thousands of different documents could be construed by Mattel in a manner that

16  could place an unreasonable burden on the MGA Parties, particularly when that

17  information is requested via a written interrogatory."   Discovery Matter Order No.

18  11, dated March 30, 2009 at 19.   <u>See also</u> <u>Campbell v. Washington</u>, 2009 WL

19  577599, at *2 (W.D. Wash. Mar. 5, 2009) (holding interrogatory "overly broad and

20  unduly burdensome to the extent that it requests each fact supporting the defense").

21

22

23  [28]   <u>See</u> Discovery Master's Order Granting in Part and Denying in Part Mattel's
    Motion to Compel Responses to Interrogatory Nos. 27-44 and 46-50 by the MGA
24  Parties, dated February 15, 2008, at 17-18, Watson Dec., Exh. 17.

25  [29]   <u>See</u> MGA Entertainment, Inc.'s Opposition to Mattel, Inc.'s Motion to
    Compel Responses to Interrogatories by the MGA Parties, dated December 31,
26  2007, at 30, Watson Dec., Exh. 16.

27  [30]   Discovery Matter Order No. 22, dated April 28, 2009, at 53, Watson Dec.,
    Exh. 11.

28  [31]   <u>Id.</u>

The same rules should apply here.  Mattel has provided MGA with the principal and material facts supporting its claims, and that is all it is obligated to do.  Indeed, as even MGA acknowledges, Mattel devoted fifty pages of its responses to a detailed recitation of the facts in support of Mattel's claims.  (Opp. at 8.)

MGA next complains that Mattel's responses track its pleadings.  Even if that were true, it would reflect the fact that, as recognized by the Court, Mattel's counterclaims contain an "unprecedented amount of evidence."[32]  But it is not true in any case; Mattel has provided much information that was not in its counterclaims. Thus, for example, Mattel has identified two additional former Mattel employees who stole Mattel trade secrets who are nowhere mentioned in Mattel's counterclaims, and provided information regarding the circumstances of their theft, and what they stole.[33]  Mattel provided additional information as to each of the thefts named in the counterclaims as well, including for example, information regarding evidence of MGA's access to and use of Mattel's trade secrets stolen in Mexico;[34] additional thefts of trade secrets and destruction of evidence by Ron Brawer;[35] use of Mattel's trade secrets by Janine Brisbois;[36] and Jorge Castilla's knowledge of his wrongdoing.[37]

To the extent MGA thinks there should be more detail, it only has itself to blame for the alleged missing information.  For example, it was not until last week that MGA Mexico made its first production—of some *188,000* pages that it had been withholding through years of discovery.  Mattel cannot be blamed for the

---

[32] Order dated May 21, 2009, at 6, Watson Dec., Exh. 18.
[33] Responses at 150-151 (Nick Contreras); 151-154 (Daniel Cooney), Watson Dec., Exh. 10.
[34] Id. at 140-141.
[35] Id. at 144-146.
[36] Id. at 149-150.
[37] Id. at 160.

1   fact that there is not yet evidence from MGA Mexico in its responses when that

2   evidence was not produced until after the responses were provided.

## IV.   PROVIDING INFORMATION REGARDING ALL WHO HAD ACCESS TO MATTEL'S TRADE SECRETS WOULD BE UNDULY BURDENSOME

6   MGA also complains that Mattel improperly limited its response to

7   those who had access to the trade secrets prior to the time they were stolen.   As

8   detailed in the accompanying declaration of Michael Moore, providing such

9   responses would be unduly burdensome.



1
2
3
4
5
6
7
8
9
10
11



40

12        The information MGA would receive from this endeavor would be, at

13   best, of only marginal relevance. Many of the names on the list would be those of

14   the attorneys involved in this litigation, which would be of no possible relevance to

15   MGA. Similarly, Mattel could be forced to provide information regarding the

16   experts it has consulted to assist in the prosecution of its claims. Even as to the

17   Mattel employees, the relevance of who had access some five years later is far

18   outweighed by the burden of compiling such a list. See, e.g., Reinking v. Alyeska

19   Pipeline Serv. Co., 2009 WL 1259385, at *5 (D. Alaska May 6, 2009) (holding that

20   defendant "need not respond to Interrogatory Nos. 7 and 8, which would require a

21   very detailed review of a great deal of information (to extract individual names of

22   people who took specific actions, and then to update the address for each such

23   person who took one of the specific actions)").

24
25

_____

26   [38]   Declaration of Michael Moore, filed concurrently herewith ("Moore Dec."),

27   at ¶¶ 4-6.
    [39]   Id. at ¶ 7.

28   [40]   Id. at ¶¶ 8-9.

1  **V.      MATTEL OFFERED TO PROVIDE REDACTED RESPONSES**

2              The Discovery Master should not be deciding, in the first instance,

3  what is and what is not a trade secret in this context. Mattel has alleged that some of

4  that information constitutes its confidential trade secrets.[41]  What is and what is not a

5  stolen trade secret is a disputed issue for the jury to decide. San Jose Const., Inc. v.

6  S.B.C.C., Inc., 155 Cal. App. 4th 1528, 1540 (2007) (whether information

7  constitutes a trade secret is a factual issue for the jury or court to determine at trial).

8  Asking the Discovery Master to make this determination during discovery threatens

9  to deprive Mattel of its Seventh Amendment rights,[42] and is rife for abuse by the

10  MGA defendants.  As an element of its misappropriation of trade secrets claims,

11  Mattel will have to prove at trial that the information at issue "[d]erives independent

12  economic value, actual or potential, from not being generally known to the public or

13  to other persons who can obtain economic value from its disclosure or use"; and is

14  the subject of efforts that are reasonable under the circumstances to maintain its

15  secrecy.  Cal. Civ. Code § 3426.1(d)(1)-(2).  Now is not the time for Mattel to

16  present all of its evidence that the designated information constitutes trade secrets,

17  as that term is used in the California Uniform Trade Secret Act.  See Gartner, Inc. v.

18  Parikh, 2008 WL 4601025 (C.D. Cal. Oct. 14, 2008) (holding that Plaintiff's trade

19  secret misappropriation cause of action could not be defeated on summary judgment

20  where Plaintiff had "provided sufficient evidence to raise a genuine issue of fact as

21

22  _____

23  [41]  See Declaration of Richard de Anda in Support of Mattel, Inc.'s Motion for
     Modification of the Protective Order, dated July 27, 2007, Watson Dec., Exh. 21;

24  see also Responses at 257-265, Watson Dec., Exh. 10; Verification, Watson Dec.,
     Exh. 23.

25  [42]  See, e.g., Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 510-511 (1959)

26  ("In the Federal courts this (jury) right cannot be dispensed with, except by the
     assent of the parties entitled to it; nor can it be impaired by any blending with a

27  claim, properly cognizable at law, of a demand for equitable relief in aid of the legal
     action, or during its pendency.").

28

MATTEL'S OPPOSITION TO MOTION TO COMPEL RE INTERROGATORY NOS. 20-23 AND 28

1   to whether the information contained in [the document] constitutes a trade secret.").
2   MGA's request that the Discovery Master make this determination is in fact an
3   attempt to have the Discovery Master usurp the jury's role in contravention of the
4   Seventh Amendment and make a determination of the protectability of Mattel's
5   trade secrets. MGA's motion should therefore be rejected.

6          The Discovery Master need not reach that decision here.  MGA has
7   argued that Mattel should be ordered to produce a redacted version of its
8   interrogatory responses.  Neither side has ever provided a separate public redacted
9   version of interrogatory responses that were designated under the protective order.[43]
10  Nevertheless, Mattel offered to do so, if MGA would confirm that it would be
11  willing to do the same with its discovery responses.[44]  Instead of responding, MGA
12  filed the instant motion.

13         MGA accuses Mattel of marking the responses Attorney's Eyes Only
14  "presumably to prevent MGA and its in-house counsel from reviewing them."  In
15  fact, the responses are marked Attorney's Eyes Only because of (1) their highly
16  confidential discussions of the steps Mattel takes to protect its trade secrets; and (2)
17  the fact that much of the information in support of Mattel's claims was only
18  discovered through documents that were produced Attorney's Eyes Only by *MGA*.
19  As Mattel stated during the meet and confer, Mattel is willing to provide responses
20  redacting information it believes is confidential.  But MGA's assertion that Mattel's
21  designation was inherently improper or reflected improper motives is baseless and
22  incorrect.

### Conclusion

24         For the foregoing reasons, MGA's motion should be denied.

---

26   [43]  Watson Dec., ¶ 2.
27   [44]  See Phase 2 Discovery Matter Order No. 60, dated September 9, 2009, at 8
     (holding that the parties are entitled to "an even playing field"), Watson Dec., Exh.
28   19.

1   DATED:  September 29, 2009

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By _Michael Zeller (CSN)_

Michael T. Zeller
Attorneys for Mattel, Inc.

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

00505.07975/3116674.4