# Exhibit 12

1   Robert C. O'Brien (SBN 154372)
    ARENT FOX LLP
2   555 West Fifth Street, 48th Floor
    Los Angeles, CA 90013-1065
3   Telephone: 213.629.7400
    Facsimile: 213.629.7401
4   obrien.robert@arentfox.com

5   Discovery Master

6

7

8                   UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10                         EASTERN DIVISION

11

12   CARTER BRYANT, an individual,      Case No. CV 04-09049 SGL (RNBx)

13                Plaintiff,
                                        Consolidated with
14          v.                          Case No. CV 04-09059
                                        Case No. CV 05-2727
15   MATTEL, INC., a Delaware
     corporation,                       **PHASE 2 DISCOVERY MATTER**
16
                 Defendant.             **ORDER NO. 12, REGARDING:**
17
                                            **(1) MATTEL'S REQUEST TO**
18                                          **EXPEDITE THE HEARING ON**
                                            **ITS *EX PARTE* APPLICATION;**
19                                          **and**

20                                          **(2) REVISIONS TO THE**
                                            **HEARING SCHEDULE**
21

22
     CONSOLIDATED WITH
23   MATTEL, INC. v. BRYANT and
     MGA ENTERTAINMENT, INC. v.
24   MATTEL, INC.

25

26

27

28
                                          _____
ARENT FOX LLP                                          ORDER NO. 12
ATTORNEYS AT LAW                           [Case No. CV 04-09049 SGL (RNBx)]
LOS ANGELES

                                                        **Exhibit 12**
                                                        **Page 775**

## I.     **INTRODUCTION**

This Order sets forth the Discovery Master's ruling on the request by Mattel, Inc. ("Mattel") to set a telephonic hearing on its *ex parte* application scheduled to be heard on April 21, 2009 or, alternatively, that the Discovery Master rule on the matter without conducting a hearing.  It further addresses Mattel's March 27, 2009 request asking the Discovery Master to advance the hearing on its *ex parte* application "to the earliest available date on which the Discovery Master is available . . ."  (March 27, 2009 Letter from Michael T. Zeller to Robert C. O'Brien, p. 3).

Having reviewed the March 25 and 27, 2009 letters submitted by Mattel in support of its requests and MGA Entertainment, Inc.'s March 26 and 27, 2009 letters opposing the requests, the Discovery Master hereby rules as set forth below.

## II.    **DENIAL OF MATTEL'S REQUEST FOR A TELEPHONIC HEARING/RULING WITHOUT A HEARING**

Mattel's request that the Discovery Master set a telephonic hearing or, alternatively, dispose of its *Ex Parte* Application for an Order to Show Cause Re: MGA Entertainment, Inc.'s Failure to Comply with Court Order without a hearing is **DENIED**.  As the Court noted in its March 12, 2009 Order referring the *ex parte* application to the Discovery Master, the "issues presented therein implicate [other] matters . . . currently pending before the Discovery Master . . ."  Because two other motions address the same interrogatories as the *ex parte* application, the Discovery Master finds that it does not make sense to decide the *ex parte* application without addressing those other motions (i.e., MGA's Motion for Protective Order Staying Discovery on Trade Dress Claims and Mattel's corresponding Motion to Enforce an Order Compelling MGA to Provide Discovery, to Compel Responses to Interrogatories by MGA and for Sanctions).  Nor has Mattel demonstrated that it will suffer any prejudice if the *ex parte* application is not heard right away or decided upon the papers.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 1 -

ORDER NO. 12
[Case No. CV 04-09049 SGL (RNBx)]

**Exhibit 12**
**Page 776**

## III.   GRANTING OF MATTEL'S REQUEST TO ADVANCE THE HEARING DATE ON ITS *EX PARTE* APPLICATION

Although the Discovery Master does not believe it is appropriate to resolve the *ex parte* application set to be heard on April 21, 2009 without a hearing or via a telephonic appearance, the Discovery Master **GRANTS** Mattel's request to advance the hearing date on its *ex parte* application.  Specifically, the Discovery Master advances all discovery matters set to be heard on April 21, 2009 to April 14, 2009 at 10:00 a.m.[1]  All of the discovery matters previously set to be heard on April 14, 2009 shall be continued to April 21, 2009 at 10:00 a.m.

For the convenience of the parties and to ensure that there is no confusion regarding the hearing schedule, a summary of all motions presently scheduled to be heard by the Discovery Master at the offices of Arent Fox, LLP is set forth below along with the accompanying date and time for each hearing.

**April 14, 2009 at 10:00 a.m.**

1.   Motion for a Protective Order Staying Discovery on Trade Dress Claims filed by MGA Entertainment, Inc. et al. on or about February 27, 2009.

2.   Motion to Enforce Order Compelling MGA to Provide Discovery, to Compel Responses to Interrogatories by MGA, and Request for Sanctions filed by Mattel, Inc. on or about March 6, 2009.

3.   *Ex Parte* Application for an Order to Show Cause Re: MGA Entertainment, Inc.'s Failure to Comply with Court Order filed by Mattel, Inc. on or about March 10, 2009.

**April 21, 2009 at 10:00 a.m.**

1.   Renewed Motion to Compel Consent to Production of Electronic Mail Messages filed by Mattel, Inc. on or about February 20, 2009.

---

[1] Counsel for MGA Entertainment, Inc. apparently has no objection to the hearing on the *ex parte* application and the related motions being advanced to April 14, since he requested that the "Discovery Master either leave the hearing on Mattel's *ex parte* application on April 21, or advance it and the other two Trade Dress Motions to a date no earlier than April 14, 2009." (March 26, 2009 Letter from Jean Pierre Nogues to Robert C. O'Brien, p. 4).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 2 -

ORDER NO. 12
[Case No. CV 04-09049 SGL (RNBx)]

**Exhibit 12
Page 777**

1      2.      Motion to Quash Subpoena Issued by Mattel to Non-Party Bingham

2   McCutchen LLP filed on or about February 25, 2009.

3      3.      Motion to Compel Bingham McCutchen LLP to Produce Documents

4   Responsive to the Subpoena filed by Mattel, Inc. on or about March 6, 2009.

5   **April 27, 2009 at 1:00 p.m.**

6      1.      Renewed Motion for Reconsideration of Portions of Discovery

7   Master's December 31, 2007 Order filed by Mattel, Inc. on or about March 4, 2009.

8      2.      Renewed Motion Objecting to Portions of Discovery

9   Master's February 15, 2008 Order Re: Mattel's Motion to Compel Responses to

10   Interrogatories by the MGA Parties filed by Mattel, Inc. on or about

11   January 20, 2009.

12      3.      Renewed Motion for Issuance of Letter of Request filed by Mattel, Inc.

13   on or about January 26, 2009.

14   **May 5, 2009 at 10:00 a.m.**

15      1.      Motion to Quash and/or for a Protective Order Re: Subpoenas Issued

16   by Mattel, Inc. to Non-Parties Leon Neman, Fred Mashian, and Neil Kadisha filed

17   on or about March 12, 2009.

18      2.      Motion for Order Compelling Production of Communications Made in

19   Furtherance of Crimes and Frauds as to which MGA has Waived the Attorney-

20   Client Privilege filed by Mattel, Inc. on or about March 16, 2009.

21      3.      Motion for Reconsideration of Phase II Discovery Matter Order No. 3

22   filed by Mattel, Inc. on or about March 24, 2009.

23   Dated:      March 30, 2009

24

25                        By:      /s/ Robert C. O'Brien

26                                 ROBERT C. O'BRIEN
                                   Discovery Master

27

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 3 -

ORDER NO. 12
[Case No. CV 04-09049 SGL (RNBx)]

**Exhibit 12
Page 778**

# Exhibit 13

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

# Exhibit 14

DALE M. CENDALI (admitted *pro hac vice*)
DIANA M. TORRES (S.B. #162284)
JAMES P. JENAL (S.B. # 180190)
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA  90071-2899
Telephone:   (213) 430-6000
Facsimile:   (213) 430-6407
Email:      jjenal@omm.com

PATRICIA GLASER (S.B. #55668)
CHRISTENSEN, GLASER, FINK,
JACOBS, WEIL & SHAPIRO, LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, CA  90067
Telephone:   (310) 553-3000
Facsimile:   (310) 557-9815

Attorneys for MGA Entertainment, Inc. and
Isaac Larian

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware Corporation,<br><br>Defendant.<br><br><br>CONSOLIDATED WITH MATTEL, INC. v. BRYANT and MGA ENTERTAINMENT, INC. v. MATTEL, INC. | Case No.  CV 04-09049 SGL (RNBx)<br>(consolidated with CV 04-9059 & 05-2727)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MGA ENTERTAINMENT, INC. AND ISAAC LARIAN'S JOINT MOTION TO DISMISS MATTEL'S AMENDED ANSWER AND COUNTERCLAIMS**<br><br>**[Fed. R. Civ. Pro. 12(b)(6) & 12(f)]**<br><br>Hearing Date:   March 26, 2007<br>Time:             10:00 A.M.<br>Courtroom:      1<br><br>Discovery Cut-off:      None Set<br>Pre-trial Conference:    None Set<br>Trial Date:              None Set<br><br>Judge:  Hon. Stephen G. Larson<br><br>Discovery Cut-Off:      TBD |

Exhibit 14
Page 837

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................2

II.   FACTUAL BACKGROUND.......................................................................3

III.  ARGUMENT...............................................................................................5

    A.    Standard of Review For a Motion to Dismiss .........................................5

    B.    Mattel's RICO Claims Are Defective And Should Be Dismissed Because Mattel Fails To Plead Any Cognizable Predicate Act ............5

        1.    Mattel Has Failed to Meet the Heightened Pleading Requirement Under Rule 9(b) for its RICO Predicate Acts of Mail and Wire Fraud........................................................................6

        2.    Mattel Has Failed to Adequately Plead Any Criminal Copyright Violation as a Predicate Act .......................................8

        3.    Mattel's Pleading of "Tampering with a Witness" Fails to Provide Notice of MGA's Allegedly Criminal Conduct ......... 10

        4.    Mattel's Pleading of "Interstate and Foreign Travel in Aid of Racketeering Enterprise" Fails to Provide Notice of MGA's Allegedly Criminal Conduct ................................... 11

        5.    Having Failed to Plead its Predicate Acts Sufficiently, Mattel's RICO Claim Should be Dismissed ........................... 11

    C.    Having Failed to Adequately Plead a RICO Violation, Mattel's Conspiracy Claim Also Fails.............................................................. 12

    D.    Mattel Lacks Standing to Bring a RICO Claim as its Alleged Injury Does Not Flow from the Purported Predicate Acts................. 13

    E.    Mattel Lacks Standing to Sue for Injuries to its Foreign Subsidiaries................................................................................... 14

IV. CONCLUSION ........................................................................................ 19

**Exhibit 14**
**Page 838**

# TABLE OF AUTHORITIES

Page

## CASES

*Advanced Modular Sputtering, Inc. v. Superior Ct.,*
132 Cal. App. 4th 826 (2nd Dist. 2005)............................................................. 16, 19

*Alan Neuman Productions, Inc. v. Albright,*
862 F.2d 1388 (9th Cir. 1988)................................................................................. 6

*Balistreri v. Pacifica Police Dept.,*
901 F.2d 696 (9th Cir. 1990).................................................................................. 5

*Computer Economics, Inc. v. Gartner Group Inc.,*
50 F. Supp. 2d 980 (S.D. Cal. 1999)................................................................. 16, 17

*Danjaq v. Sony Corp.,*
263 F.3d 942 (9th Cir. 2001)................................................................................ 10

*Diodes, Inc. v. Franzen, et al.,*
260 Cal. App. 2d 244 (2nd Dist. 1968) ........................................................ 16, 17, 19

*Dura Pharm., Inc. v. Broudo,*
544 U.S. 336 (2005)...................................................................................... 9, 11

*Edwards v. Marin Park, Inc.,*
356 F.3d 1058 (9th Cir. 2004)....................................................................... 6, 7, 12

*Gotham Print, Inc. v. American Speedy Printing Centers, Inc.,*
863 F. Supp. 447 (E.D. Mich. 1994)................................................................... 6, 8

*Holgate v. Levinson,*
425 F.3d 671 (9th Cir. 2005)........................................................................... 9, 11

*Howard v. America Online Inc.,*
208 F.3d 741 (9th Cir. 2000)................................................................................ 12

*Lancaster Community Hosp. v. Antelope Valley Hosp. District,*
940 F.2d 397 (9th Cir. 1991)................................................................................. 6

*Living Designs, Inc. v. E.I. Dupont de Nemours & Co.,*
431 F.3d 353 (9th Cir. 2005).................................................................................. 5

Monolithic Power Systems, Inc. v. O2 Micro Int'l Ltd.,
2006 WL 2975587 (N.D. Cal. Oct. 18, 2006) ........................................................ 15

*Moore v. Kayport,*
885 F.2d 531 (9th Cir. 1989).................................................................................. 6

*Murphy v. Goord,*
445 F. Supp. 2d 261 (W.D.N.Y. 2006)................................................................. 9, 11

*Resolution Trust Corp. v. Keating,*
186 F.3d 1110 (9th Cir. 1999)............................................................................... 13

*Sedima S.P.R.L. v. Imrex Co., Inc.,*
473 U.S. 479 (1985).......................................................................................... 13

*Semegen v. Weidner,*
780 F.2d 727 (9th Cir. 1985).................................................................................. 3

Exhibit 14
Page 839

1

### TABLE OF AUTHORITIES
### (continued)

2

Page

3   *Shell Petroleum, N.V. v. Graves,*
     709 F.2d 593 (9th Cir.),
4      *cert. denied,* 464 U.S. 1012 (1983)............................................................ 14

5   *Stewart v. Wachowski,*
     2004 WL 2980783 (C.D. Cal. 2004) ...................................... 6, 8, 10

6   *Turner v. Cook,*
     362 F.3d 1219 (9th Cir. 2004)....................................................5

7   *United States ex rel. Karvelas v. Melrose-Wakefield Hosp.,*
     360 F.3d 220, 240 (1st Cir. 2004)
8      *cert. denied,* 543 U.S. 820 (2004)........................................ 9, 10

9   *Vermont Microsystems, Inc. v. Autodesk, Inc.,*
     88 F.3d 142 (2d Cir. 1996)......................................................... 17

10   *Vess v. Ciba-Geigy Corp. USA,*
     317 F.3d 1097 (9th Cir. 2003).....................................................8
11

  *Warren v. Fox Family Worldwide, Inc.,*
12      328 F.3d 1136 (9th Cir. 2003)....................................................5

13   *Western Mining Council v. Watt,*
     643 F.2d 618 (9th Cir. 1981),
14      *cert. denied,* 454 U.S. 1031 (1981)............................................5

15   *Wilkerson v. Butler,*
     229 F.R.D. 166 (E.D. Cal. 2005) ............................................... 14

16

### STATUTES

17   18 U.S.C. § 1512 ................................................................ 10, 16

  18 U.S.C. § 1961 ...................................................................... 13
18
  18 U.S.C. § 1961(5) ....................................................................5
19
  18 U.S.C. § 1962(c)....................................................................5

20   18 U.S.C. § 1985(3) .................................................................. 11

  18 U.S.C. § 2319(a) ................................................................... 10
21
  California Civil Procedure Code § 2019.210...................... 15, 16

22

### RULES

23   Fed. R. Civ. Pro. 8 ................................................................ 10, 11

  Fed. R. Civ. Pro. 9 ............................................................. *passim*
24
  Fed. R. Civ. Pro. 12(f) ............................................................... 14

25

26

27

28

**Exhibit 14**
**Page 840**

1       This Memorandum of Points and Authorities is filed in support of

2   MGA Entertainment, Inc. and Isaac Larian's ("Mr. Larian," collectively "MGA")

3   Joint Motion to Dismiss Mattel, Inc.'s ("Mattel") Amended Answer and

4   Counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(6) and to strike

5   certain allegations contained in Mattel's Counterclaims pursuant to Federal Rule of

6   Civil Procedure 12(f) in the case originally captioned *MGA Entertainment, Inc. v.*

7   *Mattel, Inc.*, Case No. CV 05-2727.[1]

8   **I.   INTRODUCTION**

9       Having ruminated on its grievances against its all-too successful

10   competitor for many years, Mattel has now spewed forth one-hundred-and-seventy

11   paragraphs of counterclaims, insinuating all manner of evil deeds, designed, no

12   doubt, to play well to an eager press corps that was its first audience.  It is no

13   accident that MGA first learned of Mattel's baseless allegations from a reporter, as

14   it was certainly Mattel's intent to convert these legal proceedings into a trial by the

15   press and a personal attack upon these defendants cloaked by the protections of the

16   litigation privilege.

17       ***Privileged these allegations may be, but proper they are not.***

18       As the Ninth Circuit has made clear:

19       Rule 9(b) ensures that allegations of fraud are specific enough to

20   give defendants notice of the particular misconduct which is
     alleged to constitute the fraud charged so that they can defend

21   against the charge and not just deny that they have done
     anything wrong.  It also prevents the filing of a complaint as a

22   pretext for the discovery of unknown wrongs and protects

23   potential defendants – especially professionals whose reputations
     in their fields of expertise are most sensitive to slander – from

24   the harm that comes from being charged with the commission of

25

26   ───────────────

27   [1] MGA and Mr. Larian join in and incorporate by reference the points and arguments as
     detailed in section III.B.1.a.(1) of Carter Bryant's Motion to Dismiss Counterclaims II, III,
     V, VII, IX and XI, as well as those sections of Mr. Bryant's brief that involve MGA

28   and/or Mr. Larian.

**Exhibit 14**
**Page 841**

fraudulent acts.[2]

Mattel's RICO claims are ultimately baseless, and certainly inadequately pleaded. Accordingly, they should be dismissed.

In addition, Mattel's allegations regarding its alleged trade secrets are insufficient, as Mattel has failed to provide the required designation of those secrets "with reasonable particularity" as required under California law. Until Mattel provides an adequate designation of those secrets, it may not proceed on those claims, or on any of the other claims predicated upon trade secret misappropriation.

## II.    FACTUAL BACKGROUND

As the Court is well aware, on November 20, 2006, Mattel filed its Motion for Leave to File an Amended Complaint and lodged its First Amended Complaint in the *Mattel, Inc. v. Carter Bryant* litigation. In its January 12, 2007 Order, the Court denied Mattel's motion for leave to amend its complaint and instead granted Mattel leave to amend its answer to assert counterclaims in the *MGA v. Mattel* litigation. That same day, Mattel filed its amended answer and counterclaims, seeking a declaration of ownership of the "Bratz" copyrights, demanding relief for MGA's "infringement" of Mattel's purported rights in "Bratz," as well as claims based on the Racketeer Influenced and Corrupt Organizations Act ("RICO"), misappropriation of trade secrets, and various state law claims previously raised in the *Bryant* litigation.[3]

Having reviewed the counterclaims filed by Mattel, MGA and Mr. Bryant sent three letters to Mattel's counsel, advising of the many deficiencies contained in Mattel's counterclaims and requesting a meet and confer pursuant to the Local Rules.[4] On January 26, 2007, the parties met to discuss Mattel's

---

[2] *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

[3] Declaration of James P. Jenal ("Jenal Decl.") filed concurrently, ¶ 2.

[4] *Id.* ¶¶ 2-3, Exs. A & B.

**Exhibit 14**
**Page 842**

1   counterclaims and the intent of MGA to file a motion to dismiss.[5]  During the "meet

2   and confer," Mattel indicated that it would consider amending its counterclaims to

3   address several of the concerns raised regarding Mattel's failure to meet the

4   pleading requirements under the Federal Rules of Civil Procedure, including the

5   possibility of submitting a separate RICO Statement that could address MGA's

6   concerns regarding the pleading of the alleged predicate acts.[6]  MGA sent a follow-

7   up letter to Mattel on February 1, 2007, and again on February 6, 2007.[7]

8          Finally, on February 7, 2007, Mattel responded, but offered only:

9          (1) to add additional allegations of predicate acts of mail and
10         wire   fraud   personally   perpetrated   by   Bryant   (*i.e.,*
           communications in furtherance of the fraudulent scheme that
11         were sent by Bryant personally); and (2) to physically attach the
12         communications listed in Exhibit C to an amended version of
           Mattel's Amended Answer and Counterclaims.[8]
13
14  MGA responded on February 8, welcoming the prospect of an amended pleading,

15  but cautioning that simply attaching the documents would not, as previously

16  explained, specify the complained of content needed to satisfy Rule 9(b).  Given the

17  press of time, MGA requested a response by close of business the next day – that is,

18  the last business day before MGA was required to respond to the Amended Answer

19  and Counterclaims – indicating whether Mattel would indeed file an amended

20  pleading.[9]

21         Mattel responded the next day, but simply repeated its prior offer, and

22  specifically rejected the request that it amend its pleading to specifically identify

23  the content that it believes supports its allegations of mail and wire fraud.[10]  Thus,

24  despite the prodding of MGA and the clear dictates of this Court's Standing

25  [5] *Id.* ¶ 4.
    [6] *Id.* ¶ 5.
26  [7] *Id.* ¶ 5, Exs. C & D.
    [8] Jenal Decl. ¶ 6, Ex. E.
27  [9] Jenal Decl. ¶ 7, Ex. F.
28  [10] Jenal Decl. ¶ 8, Ex. G.

LA2:822732.4                    - 4 -

**Exhibit 14**
**Page 843**

1   Order,[11] Mattel has refused to amend its counterclaims and as a result, MGA had no
2   choice but to bring this Motion.
3   **III.   ARGUMENT**
4        **A.   STANDARD OF REVIEW FOR A MOTION TO DISMISS**
5             Dismissal of a complaint under Rule 12(b)(6) is proper where there is
6   a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged
7   under a cognizable legal theory."[12]  In ruling on a motion to dismiss, the "court
8   must accept all factual allegations pleaded in the complaint as true."  The Court
9   need not, however, accept as true unreasonable inferences or conclusory legal
10  allegations cast in the form of factual allegations.[13]
11       **B.   MATTEL'S RICO CLAIMS ARE DEFECTIVE AND SHOULD BE
              DISMISSED BECAUSE MATTEL FAILS TO PLEAD ANY COGNIZABLE**
12       **PREDICATE ACT**
13            To establish a violation of RICO, a plaintiff must plead and show that
14  the defendant participated, through a pattern of racketeering activity (known as
15  predicate acts), in the conduct of the affairs of an enterprise, and that the
16  racketeering activity proximately caused injury to the plaintiff's business or
17  property.[14]  Additionally, a "pattern of racketeering activity" requires at least two
18  predicate acts.[15]  Mattel's counterclaims, while long on verbiage, fall far short of
19  well-established requirements for pleading these predicate acts and, therefore,
20  should be dismissed.
21
22
23
   _____
24  [11] Standing Order ¶ 4.
    [12] *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).
25  [13] *See Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003);
    *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981), *cert. denied*, 454 U.S.
26  1031 (1981).
    [14] *See Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 631 (9th Cir.
27  2005); *Turner v. Cook,* 362 F.3d 1219, 1228 (9th Cir. 2004); 18 U.S.C. § 1962(c).
28  [15] 18 U.S.C. § 1961(5).

**Exhibit 14**
**Page 844**

1          **1.    *Mattel Has Failed to Meet the Heightened Pleading***
2                  ***Requirement Under Rule 9(b) for its RICO Predicate Acts of***
                   ***Mail and Wire Fraud***

3          Mattel's claim for violations of RICO predicated on mail and wire

4     fraud should be dismissed because Mattel has failed to meet the applicable,

5     heightened pleading requirements.  Where a claim is based on fraud, Rule 9(b)

6     applies and the "circumstances constituting fraud" must be pleaded with

7     particularity.[16]  Specifically, a plaintiff must identify "the time, place and nature of

8     the alleged fraudulent activities" and the specific contents of the false

9     representation.[17]  Mere conclusory allegations of fraud are insufficient.[18]  In cases

10    where allegations involving fraud are brought under RICO, the plaintiff must also

11    allege how the particular predicate act was in furtherance of the scheme to defraud[19]

12    and the role of each defendant in the fraud.[20]

13          Mattel has failed to satisfy the requirements of Rule 9(b) and the

14    heightened pleading standards applied to RICO claims, instead providing only

15    conclusory allegations in support of its claims for mail and wire fraud.  In

16    particular, Mattel attached "Exhibit C" to its amended answer and counterclaims,

17

---

18    [16] Fed. R. Civ. Proc. 9(b).

19    [17] *Moore v. Kayport*, 885 F.2d 531, 540 (9th Cir. 1989); *Alan Neuman Productions, Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988); *Edwards v. Marin Park, Inc.*, 356 F.3d
20    1058, 1066 (9th Cir. 2004) (affirming grant of motion to dismiss RICO claim where plaintiff failed to state specific contents of the false representation upon which plaintiff
21    based its claim).

      [18] *Moore*, 885 F.2d at 531.

22    [19] *See Gotham Print, Inc. v. American Speedy Printing Centers, Inc.*, 863 F. Supp. 447,
23    457 (E.D. Mich. 1994) (explaining that "Courts have been particularly sensitive to Fed. R. Civ. Pro. 9(b)'s pleading requirements in RICO cases in which the 'predicate acts' are
      mail and wire fraud"), *cited with approval, Stewart v. Wachowski*, 2004 WL
24    2980783, *6 (C.D. Cal. 2004) (dismissing complaint because it contained no "allegations
25    regarding the nature of defendants' purported scheme to defraud, the identity of the members of the scheme, the manner in which defendants' communications were
26    fraudulent, or the manner in which they furthered the fraudulent scheme.")).

      [20] *Lancaster Community Hosp. v. Antelope Valley Hosp. District*, 940 F.2d 397, 405 (9th
27    Cir. 1991)(explaining that Rule 9(b) "requires a pleader of fraud to detail with particularity the time, place and manner of each act of fraud, plus the role of each
28    defendant in each scheme.").

**Exhibit 14**
**Page 845**

1    which purports to identify a series of emails, letters and shipments that Mattel

2    alleges support its claims for mail and wire fraud.  However, merely listing the

3    dates, senders and recipients of the alleged predicate acts, does not identify the

4    specific fraudulent acts contained therein that Mattel alleges supports its claims of

5    mail and wire fraud, nor does it identify the roles of MGA or Mr. Larian in the

6    alleged fraudulent scheme.[21]

7            In fact, the solitary attempt by Mattel to state the particular content of

8    any of the emails that it alleges to be a wire fraud predicate act, is to quote an email

9    from Carlos Gustavo Machado Gomez, Mariana Trueba Almada and Pablo Vargas

10   San Jose, three former employees of Mattel Mexico, to Mr. Larian.  Yet Mattel

11   intentionally mischaracterizes this email by insinuating that the message relates to

12   the theft of Mattel trade secrets.[22]  In truth, however, the email refers to an offer of

13   employment by MGA and has nothing to do with the theft of trade secrets, as

14   Mattel certainly knows.  In fact, this particularly misleading representation as to the

15   content of that email was specifically pointed out to Mattel during the meet and

16   confer process leading up to this Motion.  Mattel's counsel did not challenge

17   MGA's characterization of the email's innocence, but nevertheless, Mattel has

18   refused to amend its counterclaims even to cure its mischaracterization to this

19   Court.[23]  That is precisely the type of misleading and reputationally damaging

20   pleading that Rule 9(b) is intended to protect against.[24]

21           Finally, Exhibit C does not indicate how each of the alleged predicate

22   acts was in furtherance of the alleged scheme to defraud, or any defendant's role in

23   the alleged fraudulent scheme, as is required to meet the heightened pleading

24

25   _____

     [21] *Edwards,* 356 F.3d at 1066.  Indeed, only some of the documents listed in Exhibit C
26   have been produced to date in this litigation.  *See* Jenal Decl. ¶ 11.

27   [22] Counterclaims ¶ 43.

     [23] Jenal Decl. at ¶¶ 9-10, Ex. H.
28   [24] *Semegen,* 780 F.2d at 731.

LA2:822732.4                          - 7 -

Exhibit 14
Page 846

1  standards for mail and wire fraud under Rule 9.[25]  Indeed, Mattel makes no effort

2  whatsoever to explain how the alleged predicate acts were in furtherance of a

3  scheme to defraud or to explain any defendant's role in those acts.  Accordingly,

4  Mattel's claims for RICO violations predicated on acts of mail and wire fraud

5  should be dismissed for failure to plead with particularity.

6          2.      **Mattel Has Failed to Adequately Plead Any Criminal
Copyright Violation as a Predicate Act**

7

8          a.      *Mattel's Criminal Copyright Predicate Act "Sounds in
Fraud" and thus is Subject to Rule 9(b)*

9  Mattel's reliance on criminal copyright infringement as a RICO

10  predicate act also fails because Mattel has not pleaded the claim with particularity.

11  Where a plaintiff chooses to allege that a defendant engaged in fraudulent conduct,

12  "the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading

13  of that claim as a whole must satisfy the particularity requirement of Rule 9(b)."[26]

14  This is the case even where fraud is not a necessary element of a claim.[27]

15  Here, Mattel has alleged that MGA, among others, executed a scheme

16  to "defraud Mattel and steal its trade secret or otherwise confidential and

17  proprietary information, by means of tortious, *fraudulent* and criminal

18  conduct...."[28]  Three paragraphs later, Mattel further alleged that MGA "willfully

19  infringed Mattel's copyrights, including with respect to documents containing

20  Mattel trade secret and confidential information...."[29]  Thus, based on the limited

21  allegations in its counterclaims, Mattel's claim for criminal copyright infringement

22  "sounds in fraud" and must be pleaded with particularity.

23  Notably, however, Mattel has failed to plead any facts so as to give

24  [25] *Gotham Print,* 863 F. Supp. at 457.

25  [26] *See Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1103-04 (9th Cir. 2003) (explaining
that where claims "sound in fraud" they must meet the pleading requirements of Rule

26  9(b)); *Stewart,* 2004 WL 2980783, *5.

27  [27] *Vess,* 317 F.3d at 1103-04; *Stewart,* 2004 WL 2980783, *5.

[28] Counterclaims ¶ 90.

28  [29] Counterclaims ¶ 93.

**Exhibit 14
Page 847**

1   MGA notice of the basis for Mattel's claim.  Indeed, ***Mattel has not identified a***

2   ***single work that it claims MGA infringed***, nor does Mattel identify the basis for its

3   claim that MGA engaged in a scheme to defraud Mattel so as to criminally infringe

4   Mattel's alleged copyright.[30]  Such a failing is fatal to Mattel's claim for criminal

5   copyright infringement.

6           b.   *As Pleaded, Mattel's Criminal Copyright Predicate Act*
            *Does Not Even Satisfy Rule 8 Pleadings*
7

8           Even assuming, *arguendo*, that Mattel need only meet the pleading

9   requirements under Rule 8, Mattel's reliance on its claim of criminal copyright

10  infringement as a RICO predicate act still fails because Mattel has failed to provide

11  "fair notice of what [Mattel's] claim is and the grounds upon which it rests."[31]

12  Notwithstanding Rule 8's directive that a plaintiff need provide only a "short and

13  plain statement" of its claims, a plaintiff must nonetheless "set forth factual

14  allegations, either direct or inferential, respecting each material element necessary

15  to sustain recovery under some actionable legal theory."[32]  This is consistent with

16  the purpose of Rule 8 – to give the defendant "fair notice of what the plaintiff's

17  claim is and the grounds upon which it rests" to enable him to respond to those

18  allegations.[33]

19          Mattel's allegations do not meet even Rule 8's requirements.  As noted

20  above, Mattel does not identify what works MGA is alleged to have infringed.

21  Indeed, although Mattel's *civil* copyright infringement claim appears to be based on

22  the alleged infringement of "Bratz" drawings MGA properly registered with the

23  U.S. Copyright Office years ago, the *criminal* copyright infringement alleged by

24  ───────────
    [30] As set forth *infra*, Mattel's counterclaims are so hopelessly vague on this issue, they do
25  not satisfy even the requirements of Rule 8, let alone Rule 9(b).

    [31] *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 346 (2005).
26
    [32] *See United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 240 (1st
27  Cir. 2004), *cert. denied*, 543 U.S. 820 (2004); *see also Holgate v. Levinson*, 425 F.3d 671,
    676-77 (9th Cir. 2005); *Murphy v. Goord*, 445 F. Supp. 2d 261, 264 (W.D.N.Y. 2006).
28  [33] *Dura Pharm*, 544 U.S. at 346.

**Exhibit 14**
**Page 848**

1  Mattel in support of its civil RICO claim *may* be based on alleged infringement of
2  entirely different copyrighted works, including possibly works that Mattel alleges
3  were taken from it by Machado and other former employees of Mattel Mexico. But
4  Mattel's allegations are so vague that MGA is left to guess at what it is alleged to
5  have infringed, thanks to Mattel's deficient, *lack of notice* pleading.

6  Moreover, "[w]illful copyright infringement requires proof that
7  defendant acted with knowledge that its conduct infringed,"[34] yet Mattel has failed
8  to state any basis for claiming that any alleged infringement was willful as is
9  required to violate 18 U.S.C. § 2319(a). Because Mattel has failed to "set forth
10 factual allegations" identifying what works Mattel claims MGA infringed and
11 Mattel's basis for claiming that such infringement was willful, Mattel's criminal
12 copyright infringement allegations provide virtually no notice of what Mattel's
13 claim is and the grounds on which it rests. Those allegations therefore do not meet
14 the basic requirements of Rule 8, as they leave MGA to guess as to what crime it
15 allegedly committed.

16          3.    ***Mattel's Pleading of "Tampering with a Witness" Fails to
               Provide Notice of MGA's Allegedly Criminal Conduct***
17          Mattel's claim that MGA tampered with a document so as to constitute
18 a RICO predicate act under 18 U.S.C. § 1512 also fails to satisfy the notice
19 pleading requirements of Rule 8. Indeed, Mattel fails to identify in its
20 counterclaims ***any*** document that MGA is alleged to have corruptly altered or
21 destroyed.[35] Instead, Mattel merely recites the language of 18 U.S.C. § 1512
22 without alleging any facts to support its claim. However, "[s]imply parroting the
23 language of a statutory cause of action, without providing some factual support, is
24 not sufficient to state a claim" under Rule 8.[36] Mattel's utter failure to allege any
25

26 [34] *Stewart*, 2004 WL 2980783, *5 (citing *Danjaq v. Sony Corp.*, 263 F.3d 942, 957 (9th
   Cir. 2001) ("the term 'willful' refers to conduct that occurs 'with knowledge that the
27 defendant's conduct constitutes copyright infringement.'")).
   [35] Counterclaims ¶ 93(c).
28 [36] *United States ex rel. Karvelas*, 360 F.3d at 240; *see also, Murphy*, 445 F. Supp. 2d at

**Exhibit 14**
**Page 849**

1  facts whatsoever to support its claim that MGA tampered with a document requires

2  its dismissal.[37]

3       4.  ***Mattel's Pleading of "Interstate and Foreign Travel in Aid of Racketeering Enterprise" Fails to Provide Notice of MGA's Allegedly Criminal Conduct***

5       Just as with its other predicate acts, Mattel's recitation of statutory

6  language untied to any factual allegations is fatal to Mattel's claim of interstate and

7  foreign travel in aid of the alleged racketeering enterprise.[38]  Indeed, Mattel alleges

8  that some one or more of the named Defendants, aided and abetted by other

9  unnamed members of the alleged enterprise, carried on the "unlawful activity, *i.e.,*

10 bribery, in violation of the laws of the State of California."[39]  But here, Mattel fails

11 even to allege the elements of the offense, let alone factual allegations sufficient to

12 put MGA on notice of the offense it allegedly committed.[40]  As discussed above,

13 such vague and conclusory allegations do not even meet the lesser pleading

14 standards of Rule 8.

15      5.  ***Having Failed to Plead its Predicate Acts Sufficiently, Mattel's RICO Claim Should be Dismissed***

16      Despite dozens of paragraphs of sensational accusations, when

17 examined closely, Mattel's allegations fail to establish the requisite RICO predicate

18 acts and accordingly, its RICO claim must be dismissed.  Mattel is well aware of *all*

19

20

---

21 265 (explaining that a "complaint that essentially regurgitates the relevant 'personal involvement' standard, without offering any facts indicating that, or how, an individual
22 defendant in a supervisory role was personally involved in a constitutional violation, cannot withstand dismissal.").
23 [37] *See Dura Pharm.,* 544 U.S. at 346-47 (finding that plaintiff failed to state a claim,
24 warranting dismissal, where plaintiff failed to allege facts tending to support its claim); *Holgate v. Baldwin,* 425 F.3d 671, 676-77 (9th Cir. 2005) (affirming the dismissal of
25 plaintiff's claim for failure to meet the pleading requirements of Rule 8, explaining that "[a]s the complaint failed on its face to allege a required element of a § 1985(3) claim, the
26 district court did not abuse its discretion by finding it lacked adequate legal support.")
27 [38] Counterclaims ¶ 93(d).
   [39] *Id.*
28 [40] *See Dura Pharm.,* 544 U.S. at 346-47; *Holgate,* 425 F.3d at 676-77.

Exhibit 14
Page 850

1  of these deficiencies, as they were specifically brought to Mattel's attention.[41]

2  Indeed, the parties discussed the possibility of Mattel providing a detailed RICO

3  Statement that would satisfy the particularity requirements – but Mattel has

4  declined to do so and refused to amend its counterclaims.[42]

5          In light of the Court's Standing Order, and MGA's repeated requests

6  that Mattel amend, there is only one possible conclusion – Mattel did not amend its

7  counterclaims because it knows full well that there are no facts that it could plead,

8  consistent with Rule 11, to substantiate its sensational but unsupportable RICO

9  claim. Accordingly, Mattel's RICO claim should be dismissed without leave to

10  amend.[43]

11      **C.**    **HAVING FAILED TO ADEQUATELY PLEAD A RICO VIOLATION, MATTEL'S CONSPIRACY CLAIM ALSO FAILS**

12          It is black letter law that if allegations of the underlying RICO claim

13  are inadequately pleaded, no claim for conspiracy to commit those RICO violations

14  can stand.[44] As the Ninth Circuit noted:

15

16          Plaintiffs cannot claim that a conspiracy to violate RICO existed if they do not adequately plead a substantive violation of RICO.

17          Even if Plaintiffs properly claimed that the defendants agreed to be a part of an enterprise, the failure to allege substantive

18          violations precludes their claim that there was a conspiracy to

19          violate RICO.[45]

20  For the reasons set forth at length in the previous sections, Mattel has "not

21  adequately plead[ed] a substantive violation of RICO," and thus its conspiracy

22  claim should also be dismissed.

---

23  [41] Jenal Decl., ¶¶ 2-5.

24  [42] *Id.* ¶ 8.

25  [43] *See Edwards,* 356 F.3d at 1066 (affirming dismissal of plaintiff's RICO claim where plaintiff's claim failed to satisfy Rule 9(b) and finding that no further leave to amend need be granted because plaintiff had the opportunity to amend but failed to do so).

26  [44] *See, e.g., Howard v. America Online Inc.,*208 F.3d 741, 751 (9th Cir. 2000) ("the district

27  court held that the failure to adequately plead a substantive violation of RICO precludes a claim for conspiracy. We agree.")

28  [45] *Id.* (internal citations omitted).

Exhibit 14
Page 851

1
2

### D.   MATTEL LACKS STANDING TO BRING A RICO CLAIM AS ITS ALLEGED INJURY DOES NOT FLOW FROM THE PURPORTED PREDICATE ACTS

3   Mattel's vague pleading of its alleged RICO predicate acts compels the

4   conclusion that Mattel lacks standing even to bring a RICO claim. To be sure,

5   Mattel alleges a criminal enterprise formed "for the purpose of executing and

6   attempting to execute a scheme to improperly defraud Mattel and steal its trade

7   secret or otherwise confidential and proprietary information."[46]  Indeed, throughout

8   its lengthy allegations, Mattel repeatedly refers to MGA "inducing Mattel

9   employees to steal Mattel's confidential information or other property and take it

10   with them to MGA to further MGA's business interests and to harm Mattel."[47]  But

11   trade secret misappropriation is not a predicate act under RICO,[48] and, as noted

12   above, Mattel's recitation of its mail and wire fraud, criminal copyright

13   infringement, document tampering, and bribery predicate acts are so vaguely

14   alleged that there is nothing in those allegations even to allow MGA to respond to

15   them, let alone to connect them to Mattel's alleged harm, as required by binding

16   precedent.

17   "Recovery under RICO is limited to those injuries flowing from

18   predicate acts."[49]  But Mattel has not alleged any facts that show how its claimed

19   injuries were caused by the purported predicate acts, and recovery under RICO

20   "does not extend to all injuries caused by an enterprise which violates RICO."[50]

21   Thus, even if Mattel had adequately alleged the existence of a RICO enterprise that

22   misappropriated Mattel's trade secrets, Mattel has not alleged how those injuries

23

24   [46] Counterclaims ¶ 90.

   [47] Id. ¶ 5.

25   [48] See 18 U.S.C. § 1961 (providing exclusive list of RICO predicate acts).

26   [49] Resolution Trust Corp. v. Keating, 186 F.3d 1110, 1117 (9th Cir. 1999) citing Sedima S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 497 (1985) ("Any recoverable damages

27   occurring by reason of a violation of § 1962(c) will flow from the commission of the predicate acts.")

28   [50] Resolution Trust Corp., 186 F.3d at 1117.

- 13 -

Exhibit 14
Page 852

1  flow from the predicate acts, and therefore recovery under RICO is foreclosed.

2  Accordingly, Mattel's lack of standing provides an independent basis for

3  dismissing its RICO claim.[51]

### E.   MATTEL LACKS STANDING TO SUE FOR INJURIES TO ITS FOREIGN SUBSIDIARIES

The sole Plaintiff in this case is Mattel, Inc., a "corporation organized and existing under the laws of the state of Delaware, with its principal place of business in El Segundo, California."[52] Yet it is beyond dispute that a substantial portion of Mattel's allegations regarding its alleged injuries are not injuries to this Plaintiff at all, but rather, to Mattel's foreign subsidiaries in Mexico and Canada.[53] As a general proposition, a corporate parent of multiple subsidiaries is simply a shareholder in those corporate subsidiaries, and a shareholder does not have standing to redress an injury to the corporation in which it holds stock.[54] Mattel has not pleaded any facts to take its claims out of this general rule, and to the extent that those claims are predicated on injuries to parties not before the Court, they should also be dismissed, or in the alternative, stricken. In particular, this would require dismissing both RICO predicate acts and trade secret allegations based on conduct in Canada and Mexico[55] Alternatively, these provisions should be ordered stricken pursuant to Rule 12(f) as they are wholly immaterial to any claim of damage suffered by this Plaintiff.[56]

---

[51] *Sedima,* 473 U.S. at 496 ("In addition, the plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation.").

[52] Counterclaims ¶ 8.

[53] *See* Counterclaims ¶¶ 37-55 (alleged trade secret theft in Mexico from Mattel's Mexico subsidiary); ¶¶ 70-76 (alleged trade secret theft in Canada from Mattel's Canadian subsidiary).

[54] *See, e.g., Shell Petroleum, N.V. v. Graves,* 709 F.2d 593, 595 (9th Cir.), *cert. denied,* 464 U.S. 1012 (1983).

[55] *See* n. 53, *supra.*

[56] *See* Fed. R. Civ. Pro. 12(f) ("the court may order stricken from any pleading... any redundant, immaterial, impertinent, or scandalous matter"); *Wilkerson v. Butler,* 229 F.R.D. 166, 170-71 (E.D. Cal. 2005) (striking allegations as immaterial to plaintiff's

**Exhibit 14**
**Page 853**

1
2

**F.   MATTEL HAS FAILED TO COMPLY WITH CALIFORNIA CIVIL PROCEDURE CODE SECTION 2019.210 AND THUS MAY NOT PROCEED WITH ITS TRADE SECRETS CLAIM**

3        Taken as a whole, Mattel's counterclaims are directed at what it

4   describes as MGA's supposed "pattern of stealing and using Mattel, Inc.'s property

5   and trade secrets."[57]  Mattel insists that all of MGA's commercial success is due not

6   to MGA's superior products or dedicated and hard working employees, but rather,

7   to "its pattern of theft on numerous occasions."[58]  According to Mattel, this pattern

8   has been replicated in Mexico,[59] Canada, [60] and in other, unspecified locations.[61]

9   Indeed, leaving aside Mattel's tortured copyright claim – in support of which Mattel

10  has apparently registered with the Copyright Office drawings produced by MGA

11  and Mr. Bryant which are subject to the protective order in this litigation – the

12  overwhelming bulk of Mattel's allegations focuses on the alleged theft of trade

13  secrets[62] and the RICO criminal enterprise allegedly created to facilitate that theft.[63]

14  Indeed, even the allegations of criminal copyright infringement that purportedly

15  support Mattel's civil RICO claim are for infringement of "copyrights, including

16  ─────────────────────────────────

complaint); *Monolithic Power Systems, Inc. v. O2 Micro Int'l Ltd.*, 2006 WL 2975587, *4
17  (N.D. Cal. Oct. 18, 2006) (striking allegations of common law fraud because they were immaterial and impertinent to the complaint).
18  [57] Counterclaims ¶ 1.
    [58] *Id.* ¶ 3.
19  [59] *Id.*
    [60] *Id.* ¶ 4.
20
    [61] *Id.* ¶ 5.
21  [62] Specifically, *see* Counterclaims ¶¶ 37-54 (alleged theft of trade secrets in Mexico),
22  ¶¶ 55-69 (alleged theft of trade secrets by Ron Brawer), ¶¶ 70-76 (alleged theft of trade secrets in Canada), ¶ 77 (other amorphous allegations regarding possible theft of trade
23  secrets), ¶¶ 106-115 (fourth counterclaim for misappropriation of trade secrets), ¶¶ 122-128 (sixth counterclaim for intentional interference with contract), 129-135 (seventh
24  counterclaim for breach of fiduciary duty), ¶¶ 136-141 (eighth counterclaim for aiding and abetting breach of fiduciary duty), ¶¶ 142-148 (ninth counterclaim for breach of duty of
25  loyalty), ¶¶ 149-154 (tenth counterclaim for aiding and abetting breach of duty of loyalty). Even Mattel's conversion claim actually sounds in part in trade secret theft: "Counter-
26  defendants wrongfully converted Mattel's property by removing the Trade Secret Materials in electronic and paper form from Mattel's offices. *Id.* ¶ 158.
27  [63] *Id.* ¶¶ 88-105 (second counterclaim for violation of RICO and third counterclaim for
28  conspiracy to violate RICO).

**Exhibit 14
Page 854**

1    with respect to documents containing Mattel trade secret and confidential

2    information....["64]

3            When a plaintiff's claims sound in trade secret misappropriation,

4    California law requires that the plaintiff disclose those trade secrets "with

5    reasonable particularity" *before* proceeding with discovery on *any* of those claims.[65]

6    The reasons for this requirement are grounded in fundamental fairness:

7            'First, it promotes well-investigated claims and dissuades the
         filing of meritless trade secret complaints. Second, it prevents
8            plaintiffs from using the discovery process as a means to obtain
         the defendant's trade secrets. [Citations.] Third, the rule assists
9            the court in framing the appropriate scope of discovery and in
         determining whether plaintiff's discovery requests fall within
10           that scope. [Citations.] Fourth, it enables defendants to form
11           complete and well-reasoned defenses, ensuring that they need
         not wait until the eve of trial to effectively defend against
12           charges of trade secret misappropriation.'[66]

13

14

15           Indeed, the California statutory provision is a codification of the

16    decision in *Diodes, Inc. v. Franzen*[67] which upheld a demurrer to plaintiff's third

17    amended complaint for failure to provide the necessary specificity as to plaintiff's

18    alleged trade secrets. Reasoned the *Diodes* court:

19           *Before a defendant is **compelled to respond to a complaint**
         **based upon claimed misappropriation or misuse of a trade**
20           **secret** and to embark on discovery which may be both prolonged
         and expensive, the complainant should describe the subject
21           matter of the trade secret with sufficient particularity to separate

22

23    [64] Counterclaims ¶ 93.

      [65] *See Advanced Modular Sputtering, Inc. v. Superior Ct.,* 132 Cal. App. 4th 826 (2nd Dist.
24    2005) (holding that where "every cause of action is factually dependant on the
      misappropriation allegation, discovery can commence only after the allegedly
25    misappropriated trade secrets have been identified with reasonable particularity, as
      required by [Cal. Code Civ. Pro.] section 2019.210.")

26    [66] *Id.* at 833-34, *quoting Computer Economics, Inc. v. Gartner Group Inc.,* 50 F. Supp. 2d
27    980, 985 (S.D. Cal. 1999).  Each of these reasons is particularly applicable to this
      litigation.

28    [67] *Diodes, Inc. v. Franzen, et al.,* 260 Cal. App. 2d 244 (2nd Dist. 1968).

Exhibit 14
Page 855

it from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies.[68]

It is beyond dispute that this rule of California substantive law applies to this case in federal court.[69]  It is similarly beyond dispute that Mattel's vague pleading fails to identify its claimed trade secrets with anything approaching "reasonable particularity."  For example, in discussing the alleged theft of trade secrets in Mexico, Mattel's most detailed description of its trade secrets reads as follows:

> They stole global internal future line lists that detailed anticipated future products, production and shipping costs for Mattel products; daily sales data for Mattel products; customer data; sales estimates and projections; marketing projections; documents analyzing changes in sales performance from 2003 to 2004; budgets for advertising and promotional expenses; strategic research reflecting consumer responses to products in development; media plans; consumer comments regarding existing Mattel products customer discounts and terms of sale; customer inventory level data; assessments of promotional campaign success; market size historical data and projections; marketing plans and strategies; merchandising plans; retail pricing and marketing strategies; and other similar materials.[70]

The problem with such generic allegations that fail to identify the allegedly stolen trade secrets with reasonable particularity is that it makes it impossible for a defendant to determine whether any of these broad categories of materials could ever be protected as a trade secret.  For example, "assessments of promotional

---

[68] *Diodes*, 260 Cal. App. 2d at 253 (emphasis added).

[69] *See Computer Economics*, 50 F. Supp. 2d 980 (establishing the applicability of California's statutory provision to federal cases, including cases where pendent jurisdiction applies to state law claims, under the *Erie* doctrine); *see also Vermont Microsystems, Inc. v. Autodesk, Inc.*, 88 F.3d 142 (2d Cir. 1996)(applying California trade secret law and specifically this provision without dispute or need for discussion).

[70] Counterclaims ¶ 48.

- 17 -

**Exhibit 14**
**Page 856**

1   campaign success" fails to reveal who conducted the assessment, what campaign it

2   concerned, when the assessment was conducted, to whom it was distributed and so

3   on.  Even less illuminating is the category of "*customer* data" without the slightest

4   hint of what that data might be or how it might be a *Mattel* trade secret.  Indeed, it

5   is by definition public knowledge who many, if not all, of Mattel's customers are,

6   as those customers are the companies – such as Wal-Mart, Target, Toys-R-Us, *etc.*

7   – that resell Mattel products to the public.

8           Mattel's allegations regarding Ron Brawer are even worse.

9   Specifically, Mattel's trade secret allegations concerning Mr. Brawer assert:

10          On information and belief, Brawer removed proprietary and
            trade secret information from Mattel that he did not return.
11          Mattel is informed and believes that Brawer did not return to
            Mattel, for example, the information contained in *his* contacts
12          file.  The contacts file included contact information for Mattel
13          customers, most notably TRU, and extensive contact information
            for Mattel employees, including titles, e-mail addresses and
14          telephone numbers.[71]
15

16  In other words, the only alleged trade secret that Mattel can describe with any

17  particularity at all is *Mr. Brawer's* contacts file.  That is no more *Mattel's* trade

18  secret than the contents of a lawyer's contacts file is the trade secret of his firm.[72]

19  Indeed, there is no allegation here that Mattel ever saw Mr. Brawer's contacts file,

20  that Mattel ever considered it to be a Mattel trade secret before he had the audacity

21  to leave Mattel's employ, that Mattel ever took any steps to "safeguard" it, or that

22  Mattel ever had any interest in it whatsoever.

23          Mattel's allegations regarding "other employees" are even more

24  inchoate:

25

26  ---
    [71] Counterclaims ¶ 68 (emphasis added).

27  [72] During the meet and confer process, MGA and Mr. Bryant requested Mattel to provide
    authority for the proposition that an employee's personally created and maintained
    contacts list could be the employer's trade secret. Jenal Decl. ¶ 12. No such authority
28  was provided (*id.*) and MGA is aware of none.

Exhibit 14
Page 857

> Mattel is informed and believes, however, that *certain additional employees* accessed, copied and took from Mattel confidential and proprietary information, including Mattel's strategic plans; business operations, methods and systems; marketing and advertising strategies and plans; future product lines; product profit margins; and customer requirements.[73]

Once again, these are simply generic categories of information that a company might reasonably generate in the course of its business. But there is no detail here at all, and allegations regarding things as vague as "business operations, methods and systems" fails to provide "sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade."[74]

Until such time as Mattel complies with its statutory obligations to set forth its trade secrets with "reasonable particularity," California law requires that all claims that are "factually dependent on the misappropriation allegation" be dismissed or stayed.[75]

## IV.   CONCLUSION

For the foregoing reasons, the Court should grant MGA and Mr. Larian's Joint Motion to Dismiss Mattel's Amended Answer and Counterclaims.

Dated: February 12, 2007          O'MELVENY & MYERS LLP

By: James P. Jenal
Attorneys for MGA Entertainment, Inc.

---

[73] Counterclaims ¶ 77.

[74] *Diodes*, at 253.

[75] *Advanced Modular Sputtering*, 132 Cal. App. 4th at 835. This would require the dismissal of Counterclaims 2, 3, 4, 6, 7, 8, 9, 11, and 12.

Exhibit 14
Page 858

1

## PROOF OF SERVICE

2

I, Karen A. Nakatsu, declare:

3

4

I am a resident of the State of California and over the age of eighteen years, and not a party to the within action; my business address is 400 South Hope Street, Los Angeles, California 90071-2899. On February 12, 2007, I served the within document(s):

5

6

7

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MGA ENTERTAINMENT, INC., ISAAC LARIAN AND CARTER BRYANT'S JOINT MOTION TO DISMISS MATTEL'S AMENDED ANSWER AND COUNTERCLAIMS**

8

9

[x]  by causing to be personally served the document(s) listed above to the person(s) listed below.

10

11

12

John Quinn, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
talger@quinnemanuel.com

13

14

15

16

17

18

[x]  by putting a true and correct copy thereof, together with an unsigned copy of this declaration, in a sealed envelope designated by the carrier, with delivery fees paid or provided for, for delivery the next business day to the person(s) listed below, and placing the envelope for collection today by the overnight courier in accordance with the firm's ordinary business practices. I am readily familiar with this firm's practice for collection and processing of overnight courier correspondence. In the ordinary course of business, such correspondence collected from me would be processed on the same day, with fees thereon fully prepaid, and deposited that day in a box or other facility regularly maintained by FedEx, which is an express carrier.

19

20

21

Keith A. Jacoby, Esq.
Littler Mendelson, P.C.
2049 Century Park East
Fifth Floor
Los Angeles, CA 90067
kjacoby@littler.com

22

23

24

25

Patricia Glaser, Esq.
Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP
10250 Constellation Blvd.
19th Floor
Los Angeles, CA 90067
pglaser@chrimill.com

26

27

28

LA2:822283.1

**Exhibit 14**
**Page 859**

1        I declare under penalty of perjury under the laws of the United States that the
2    above is true and correct.

3        Executed on February 12, 2007, at Los Angeles, California.

4

5                                    _Karen A. Nakatsu_
                                     Karen A. Nakatsu

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LA2:822283.1

Exhibit 14
Page 860

# Exhibit 15

RightFAX

CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
Priority ___✓___    Send _____
Entered ___✓___    Closed _____
JS-5/JS-6 _____    JS-2/JS-3 _____
Scan Only_____    Docketed on CM _____
THIS CONSTITUTES NOTICE OF
ENTRY AS REQUIRED BY FRCP 77(d)

JUN 2 7 2007

EASTERN DIVISION
BY _____ DEPUTY

FILED - EASTERN DIVISION
CLERK, U.S. DISTRICT COURT

JUN 27 2007

CENTRAL DISTRICT OF CALIFORNIA
BY _____ JIM HOLMES _____ DEPUTY

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

CARTER BRYANT,

        Plaintiff,

v.

MATTEL, INC.,

        Defendant,

AND CONSOLIDATED ACTIONS

CASE NO. CV 04-09049 SGL

CONSOLIDATED WITH
    CV 04-09059 SGL
    CV 05-02727 SGL

ORDER RE MOTIONS HEARD ON
JUNE 11, 2007

       Presently before the Court is a multitude of motions filed by a number of parties in these consolidated cases. The factual allegations underlying the present actions are expansive and complex. They are set forth below only to the extent necessary for the Court's consideration of the present motions. At their essence, although involving a number of other legal and factual issues, these cases involve the rights to certain fashion dolls.

       The present motions, six in total, focus on four basic issues: Two of the motions, filed by certain counter-defendants, address the sufficiency of the allegations made by Mattel, Inc. ("Mattel") in its counterclaims; most notably, these motions challenge the sufficiency of the allegations which underlie Mattel's claims based on the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C.

Exhibit 15
Page 861
Docket No. 577

06/27/07

§§ 1961-1968 ("RICO").  Another motion challenges the Court's exercise of personal jurisdiction over a foreign corporation, MGAE de México, S.R.L. de C.V. ("MGA Mexico").  Two additional motions seek review of a ruling, issued by a court-appointed discovery master, overruling objections made during a party's deposition that were based on the attorney-client and joint-defense privileges.  A final motion heard on June 11, 2007, addresses the Court's scheduling order that divided the issues to be tried in these consolidated cases into two phases.  This last motion will be addressed in a separate order.

The Court has reviewed the parties' filings regarding these motions and held a hearing on June 11, 2007.  For the reasons and in the manner set forth more fully herein, the Court makes the following rulings regarding these motions:

1.    Motion of MGA Entertainment, Inc., ("MGA") and Issac Larian ("Larian") to Dismiss Mattel's Amended Answer and Counterclaims (docket # 189):[1] **GRANTED IN PART AND DENIED IN PART.**

2.    Motion of Carter Bryant to Dismiss Counterclaims II, III, V, VII, IX, and XI (docket # 191):  **GRANTED IN PART AND DENIED IN PART.**

3.    Motion of MGA Mexico to Dismiss Mattel's Amended Answer and Counterclaims (docket # 266):  **DENIED.**

4.    Motion of MGA Objecting to Discovery Master's March 7, 2007, Order (docket # 308):  **GRANTED IN PART AND DENIED IN PART.**

5.    Motion of Carter Bryant Objecting to Discovery Master's March 7, 2007, Order (docket # 306):  **GRANTED IN PART AND DENIED IN PART.**

---

[1] Joining in this Motion were MGA Entertainment (HK) Ltd. ("MGA Hong Kong"), Carter Bryant ("Bryant"), and MGA Mexico.

Exhibit 15
Page 862

## I. Factual Allegations

The following allegations appear in the Amended Answer and Counterclaims ("AAC"):

### A.   Bryant's Employment by Mattel

Carter Bryant was hired by Mattel as a Barbie product designer in January 1999. (AAC ¶ 21.) At that time, Bryant signed an "Employee Confidential Information and Inventions Agreement," wherein he agreed not to assist or work for a Mattel competitor while employed by Mattel and that the designs and inventions he created while employed by Mattel were Mattel property. (AAC ¶¶ 22-23.) Bryant also executed a "Conflict of Interest Questionnaire" wherein he certified that, other than as disclosed, he had not worked for a Mattel competitor in the past year, had not engaged in a business transaction with a Mattel competitor that could create a conflict of interest, and that he would inform Mattel immediately if such an event occurred. (AAC ¶¶ 24-25.) While still employed by Mattel, Bryant used Mattel property and resources to develop and design the Bratz concept. (AAC ¶ 26.) Bryant also allegedly enlisted other Mattel employees to perform work on the Bratz line, in some cases, falsely informing those employees that they were working on a Mattel project. (AAC ¶ 27.)

### B.   MGA's Involvement in Bryant's Conduct

MGA knew of and encouraged Bryant's misappropriation of Mattel property and resources. (AAC ¶ 33). Bryant made affirmative misrepresentations to Mattel, including that he was leaving Mattel for "non-competitive" pursuits. (AAC ¶ 28.) Bryant and MGA concealed from Mattel that Bryant developed Bratz while employed by Mattel, that Bryant worked with MGA during the time he was employed by Mattel, and that Larian and others, not Bryant, were the creators of Bratz. (AAC ¶ 35.) Prior to his departure from MGA, Bryant entered into a contract with MGA to provide design services to MGA on a "top priority" basis. (AAC ¶ 36.) Bryant left Mattel's employ on October 20, 2000; three weeks later, MGA

Exhibit 15
Page 863

1  showed the Bratz prototypes to focus groups and retailers. (AAC ¶ 29.) Soon

2  thereafter, MGA showed the Bratz line to retailers at the Hong Kong Toy Fair in

3  January, 2001, and then began manufacturing and selling the dolls to retailers for

4  an annual revenue in the excess of $500 million. (AAC ¶¶ 31-32.)

5  **C.**   **Proprietary Information**

6      **1.**   **Mexico**

7      Counter-defendant Carlos Gustavo Machado Gomez ("Machado"), nonparty

8  Mariana Trueba Almada ("Trueba"), and nonparty Pablo Vargas San Jose

9  ("Vargas") were upper-level employees at Mattel Mexico. (AAC ¶¶ 38-40.) In the

10  three months before all three simultaneously resigned from Mattel Mexico on April

11  19, 2004, they were in contact with MGA via an email account with the address

12  "plot04@aol.com". (AAC ¶ 42.) The three former employees allegedly used this

13  account to supply MGA with confidential and proprietary Mattel information. (AAC

14  ¶ 42.) The three also copied various proprietary Mattel documents onto USB flash

15  drives prior to resigning. (AAC ¶ 44-46.) Shortly before her departure, Trueba

16  increased her access to Mattel's confidential information and attended a meeting at

17  which Mattel personnel analyzed Barbie programs for the United States, Canada,

18  and South America. (AAC ¶ 47.)

19      Among them, Machado, Trueba, and Vargas stole documents containing

20  information regarding Mattel's future products, production and shipping costs, sales

21  information, customer information, marketing information, and strategic research

22  information both in Mexico and worldwide. (AAC ¶ 48.) The stolen data was not

23  limited to the Mexican market; rather, the information stolen had the potential, and

24  in fact did, give MGA an unfair competitive advantage in the United States and

25  around the world. (AAC ¶ 49.)

26      In an attempt to conceal his actions, Machado ran a software program on his

27  Mattel computer in order to erase information pertaining to his contact with MGA.

28  (AAC ¶ 51.) When Mattel alerted Mexican authorities about the theft, they seized

**Exhibit 15
Page 864**

1   from MGA's Mexico City offices, pursuant to a search warrant, a large number of

2   documents containing Mattel trade secrets and confidential information. (AAC

3   ¶ 53.)

4        Shortly after the theft, Machado, Trueba, and Vargas traveled to Los

5   Angeles to meet face-to-face with MGA personnel. (AAC ¶ 52.)

6        **2.    Canada**

7        Jane Brisbois was the Director of Sales for the Girls Division in Canada.

8   (AAC ¶ 71.) When she was hired in 1999, she agreed to preserve and not disclose

9   Mattel's proprietary information. (AAC ¶ 71.) While still employed by Mattel,

10  Brisbois spoke with Larian on September 22, 2005. (AAC ¶ 74.) That same day,

11  Brisbois copied approximately 45 Mattel documents containing Mattel trade secret

12  information into a USB flash drive that she took from the Mattel Canada office.

13  (AAC ¶ 74.) The files taken by Brisbois included documents regarding Mattel sales,

14  advertising strategies, market analyses, product launch dates, and profit margins in

15  Canada, Mexico, and the United States. (AAC ¶ 74.) Four days later, she resigned

16  from Mattel. (AAC ¶ 74.)

17       When Mattel learned of Brisbois' misappropriation of Mattel documents, it

18  notified Canadian law enforcement officials, who were able to recover the flash

19  drive and the documents from Brisbois. (AAC ¶ 75.)

20       **3.    United States**

21       Ron Brawer was Mattel's Senior Vice President and General Manager.

22  (AAC ¶ 55.) On September 17, 2004, Brawer informed Mattel that he was leaving

23  Mattel to work for MGA. (AAC ¶ 63.) During Brawer's exit interview, he falsely

24  represented that he had returned all proprietary information to Mattel; specifically,

25  Brawer took the information in his contacts file which included contact information

26  for Mattel customers and Mattel employees. (AAC ¶ 68.) Brawer has since used

27  the contact information to induce certain Mattel employees to join MGA and

28  misappropriate Mattel trade secrets. (AAC ¶ 69.)

**Exhibit 15**
**Page 865**

1    MGA has also allegedly hired at least 25 other Mattel employees, some of

2    whom have provided MGA with Mattel's confidential information.  (AAC ¶ 77.)

3  **D.      Larian's Communications Regarding Mattel's New Product Line**

4        On May 12, 2006, Larian sent an email message to an email distribution list

5    that included a reference to a new Mattel Barbie line ("MY SCENE MY BLING

6    BLING") which Mattel had not yet made public.  (AAC ¶ 79.)  The distribution of the

7    email included members of the media and many of Mattel's most significant

8    customers.  (AAC ¶ 78.)  Soon after sending the email, Larian began calling these

9    significant customers and making false representations about the product;

10   specifically, Larian told each that it was the only retailer to purchase the product

11   and that Mattel would not be supporting the product with television advertising.

12   (AAC ¶ 80.)

13  **E.      Exhibit C**

14       In Exhibit C to the AAC, Mattel references a number of communications,

15   numbering well over one hundred, that it contends constitutes predicate acts of mail

16   fraud or wire fraud.  Exhibit C does not describe the contents of those

17   communications.

18                   **II. Counterclaims Asserted**

19       Based on these allegations, Mattel asserts the following counterclaims:

20   (1) Copyright Infringement, including willful, vicarious, and contributory

21   infringement, asserted against MGA, MGA Hong Kong, Larian and Bryant;

22   (2) violation of RICO's substantive prohibition, 18 U.S.C. § 1962(c), asserted as

23   authorized by 18 U.S.C. § 1964(c) against all defendants, which alleges predicate

24   acts of, inter alia, mail fraud, wire fraud, and criminal copyright infringement; (3) a

25   violation of RICO's prohibition against conspiracies, 18 U.S.C. § 1962(d), asserted

26   against all defendants; (4) state-law misappropriation of trade secrets against MGA,

27   MGA Mexico, Larian, and Machado; (5) breach of contract, asserted against Bryant

28   only and based on certain employment agreements between Bryant and Mattel;

6

**Exhibit 15**
**Page 866**

1   (6) intentional interference with contract, asserted against MGA and Larian and

2   based on Bryant's employment agreements; (7) breach of fiduciary duty, asserted

3   against Bryant and Machado; (8) aiding and abetting breach of fiduciary duty,

4   asserted against MGA and Larian; (9) breach of the duty of loyalty, asserted

5   against Bryant and Machado; (10) aiding and abetting breach of the duty of loyalty,

6   asserted against MGA and Larian; (11) conversion, asserted against all counter-

7   defendants; (12) violation of California's unfair competition law, Cal. Bus. & Prof.

8   Code § 17200, asserted against all counter-defendants; and finally, (13) a claim for

9   declaratory relief.

10  ### III. Counter-Defendants' Motions to Dismiss for Failure to State a Claim

11          The parties have moved to dismiss a number of Mattel's counterclaims on

12  various grounds.  The Court addresses each claim in turn, considering at all times

13  the standard for dismissal pursuant to Fed. R. Civ. P. 12(b)(6).

14  **A.      Standard for Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6)**

15          In lieu of an answer, a party may, as the counter-defendants have here, file a

16  motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), which provides that such a

17  motion may be made where the pleader has "fail[ed] to state a claim upon which

18  relief can be granted."  Id.  In deciding a Rule 12(b)(6) motion, the Court must also

19  consider the requirements of Fed. R. Civ. P. 8(a), which requires only a "short and

20  plain statement of the claim showing that the pleader is entitled to relief" or, when

21  the claim at issue avers fraud or mistake, the motion must be considered in

22  conformity with Fed. R. Civ. P. 9(b), which requires fraud and mistake to be pleaded

23  with particularity.  See 5A Charles A. Wright & Arthur Miller, Federal Practice and

24  Procedure, §1356 (1990); James Wm. Moore, Moore's Federal Practice, Vol. 2

25  § 12.34[1][c].

26          In bringing a motion pursuant to Rule 12(b)(6), the moving party has the

27  burden of persuading the Court that the complaint has failed to state a claim upon

28  which relief can be granted.  Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406,

Exhibit 15
Page 867

1   1409 (3d Cir.), cert. denied, 501 U.S. 1222 (1991).  In considering the motion,

2   "courts must consider the complaint in its entirety," and read it in the light most

3   favorable to the plaintiff, accepting as true all factual allegations in the complaint, as

4   well as reasonable inferences to be drawn therefrom.  Tellabs, Inc. v. Makor Issues

5   & Rights, Ltd., __ U.S. __, No. 06-484, 2007 WL 1773208, at *9 (June 21, 2007);

6   Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th Cir. 1998).  However, the Court need not

7   accept any unwarranted deductions of fact, or conclusory legal statements cast in

8   the form of factual allegations.  See Western Mining Council v. Watt, 643 F.2d 618,

9   624 (9th Cir.), cert. denied, 454 U.S. 1031 (1981).

10          Generally, a court cannot consider evidence in deciding a Rule 12(b)(6)

11  motion; however, a court may consider exhibits attached to the complaint as well as

12  documents that are not physically attached to the complaint but "whose contents

13  are alleged in [the] complaint and whose authenticity no party questions."  Branch v.

14  Tunnell, 14 F.3d 449, 453-54 (9th Cir. 1994), cert. denied, 512 U.S. 1219 (1994).

15  Facts of which a court may take judicial notice pursuant to Fed. R. Evid. 201 are

16  also properly considered.  Mir v. Little Company of Mary Hospital, 844 F.2d 646,

17  649 (9th Cir. 1988).

18  **B.    RICO Claims**

19          The counter-defendants devote most of their motions to the sufficiency of the

20  allegations regarding Mattel's RICO claims.  The Court's analysis begins, as it must

21  when considering a federal statute, with the language of that statute.  The

22  substantive RICO prohibition at issue is found in 18 U.S.C. § 1962(c):

23                 It shall be unlawful for any person employed by or associated

24          with any enterprise engaged in, or the activities of which affect,

25          interstate or foreign commerce, to conduct or participate, directly or

26          indirectly, in the conduct of such enterprise's affairs through a pattern

27          of racketeering activity or collection of unlawful debt.

28  Id. Conspiracies to violate this substantive prohibition are themselves prohibited by

Exhibit 15
Page 868

8

§ 1962(d), which states that "[i]t shall be unlawful for any person to conspire to

violate any of the provisions of subsection (a), (b), or (c) of this section." Id. Many

of these terms are defined by the statutory language, including "racketeering

activity," "enterprise," and "pattern of racketeering activity":

>     (1) "racketeering activity" means . . . (B) any act which is
> indictable under any of the following provisions of title 18, United
> States Code: . . . section 1341 (relating to mail fraud), section 1343
> (relating to wire fraud), . . . section 1512 (relating to tampering with a
> witness, victim, or an informant), . . . section 1952 (relating to
> [interstate and foreign travel or transportation in aid of racketeering
> enterprises]), [and] section 2319 (relating to criminal infringement of a
> copyright)[.]
>
>                    . . . .
>
>     (4) "enterprise" includes any individual, partnership,
> corporation, association, or other legal entity, and any union or group
> of individuals associated in fact although not a legal entity;
>
>     (5) "pattern of racketeering activity" requires at least two acts of
> racketeering activity, one of which occurred after the effective date of
> this chapter and the last of which occurred within ten years (excluding
> any period of imprisonment) after the commission of a prior act of
> racketeering activity[.]

18 U.S.C. § 1961.

In considering a Rule 12(b)(6) motion seeking to dismiss a RICO claim, the

Court measures the sufficiency of alleged predicate acts of wire fraud and mail

fraud by the Rule 9(b) "pleading-with-particularity" standard; however, the Court

measures the sufficiency of all other predicate acts by the more lenient standard set

forth in Rule 8(a). Compare Fed. R. Civ. P. 9(b) ("In all averments of fraud or

mistake, the circumstances constituting fraud or mistake shall be stated with

Exhibit 15
Page 869

particularity.  Malice, intent, knowledge, and other condition of mind of a person

may be averred generally.") with Fed. R. Civ. P. 8(a) ("A pleading which sets forth a

claim for relief, . . . shall contain . . . (2) a short and plain statement of the claim

showing that the pleader is entitled to relief . . . ."); see Lancaster Community Hosp.

v. Antelope Valley Hosp. Dist., 940 F.2d 397, 405 (9th Cir. 1991) (applying Rule

9(b) standard to allegations of mail fraud and noting that "[t]he Ninth Circuit has

repeatedly insisted that [Rule 9(b)] be followed in RICO actions alleging the

predicate act of mail fraud."), cert. denied, 502 U.S. 1094 (1992).

      In order to state its claim under § 1962(c), Mattel "must allege (1) conduct

(2) of an enterprise (3) through a pattern (4) of racketeering activity (5) causing

injury to [its] business or property."  Ove v. Gwinn,  264 F.3d 817, 825 (9th Cir.

2001) (internal quotation marks and citation omitted).  Here, counter-defendants'

motions challenge the first, second, fourth, and fifth elements.

      **1.**    **"Conduct or Participate"**

      Bryant contends that his role in any alleged scheme or enterprise is too

tenuous to constitute the "conduct" necessary to impose RICO liability.  In order to

have RICO liability imposed upon him, a defendant must "conduct or participate,

directly or indirectly, in the conduct of [an] enterprise's affairs through a pattern of

racketeering activity . . . ."  18 U.S.C. § 1962(c).  The United States Supreme Court

has elaborated on this statutory language in Reves v. Ernst & Young, 507 U.S. 170,

179 (1993), wherein it noted:

> [T]he word "participate" makes clear that RICO liability is not limited to
> those with primary responsibility for the enterprise's affairs, just as the
> phrase "directly or indirectly" makes clear that RICO liability is not
> limited to those with a formal position in the enterprise, but some part
> in directing the enterprise's affairs is required.

Id.  Here, Mattel has alleged that Bryant secretly developed Bratz while employed

by Mattel and using Mattel's resources and employees, that he concealed that fact

Exhibit 15
Page 870

1   when he had a duty to disclose it, and that he did these things in order to facilitate

2   the development of the Bratz concept by Mattel's direct competitor, in violation of,

3   *inter alia*, criminal copyright law.  These allegations, if proven to be true, are

4   sufficient to impose RICO liability on Bryant.

5       **2.    Enterprise**

6           Bryant's motion challenges the sufficiency of the allegations regarding a

7   RICO enterprise.  That enterprise is alleged to be an "association-in-fact" enterprise

8   comprised of the counter-defendants, Brawer, Trueba, Vargas, Brisbois, and

9   others.  (AAC ¶ 89.)  Mattel alleges that counter-defendants participated in or

10  conducted the affairs of the association-in-fact enterprise through a pattern of

11  racketeering activities, including, as detailed in the AAC, predicate acts of mail

12  fraud, wire fraud, evidence tampering, interstate and foreign travel to aid

13  racketeering activities, and criminal copyright infringement.  (AAC ¶ 90.)  The

14  counter-defendants' goal is alleged to have been to "execut[e] or attempt to

15  execut[e] [a] scheme to improperly defraud Mattel and steal its trade secret or

16  otherwise confidential and proprietary information . . . ."  (AAC ¶ 90.)

17          A recent *en banc* decision of the Ninth Circuit sets forth a comprehensive

18  analysis of the sufficiency of allegations regarding a RICO enterprise necessary to

19  state a claim.  See Odom v. Microsoft Corp., 486 F.3d 541, 2007 WL 1297249 (9th

20  Cir. 2007) (designated for publication).  That decision provides the blueprint for the

21  Court's present analysis.

22          Odom involved an alleged scheme involving consumers who purchased

23  computers from Best Buy retail stores.  Id. at 543.  The computers would include a

24  Microsoft compact disc that the cashier would scan; the consumer's credit card was

25  also scanned for purchase.  Id.  The credit card information was transmitted to

26  Microsoft, and Microsoft would, at some point, begin making unauthorized charges

27  to the credit card used to purchase the computer, ostensibly for Microsoft's

28  provision of internet services.  Id.  Odom brought substantive RICO and RICO

11

Exhibit 15
Page 871

1  conspiracy claims based on these allegations. Id. at 544.

2      The Ninth Circuit first noted the evidenced judicial resistance to RICO in the

3  lower courts, contrasted with the Supreme Court's four reversals of such narrow

4  readings of RICO. Id. at 545-47 (citing United States v. Turkette, 452 U.S. 576

5  (1981) (rejecting notion that RICO prohibited only the infiltration of legitimate

6  businesses by organized crime); Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 481

7  (1985) (rejecting notion that RICO could be used to impose civil liability only where

8  the defendant had been criminally convicted and that such liability was limited to a

9  narrow measure of damages); National Organization for Women v. Scheidler, 510

10  U.S. 249 (1994) (rejecting the notion that RICO liability could be imposed only when

11  the acts of a RICO enterprise had an economic motive); and Cedric Kushner

12  Promotions v. King, 533 U.S. 158 (2001) (reversing lower court's ruling that no

13  RICO claim was stated where president and sole shareholder of a corporation was

14  alleged to have associated with his wholly owned corporation as a RICO

15  "enterprise," and relying on fact that person and corporation were separate legal

16  entities). In Odom, the Ninth Circuit understandably viewed these four holdings as

17  a "general instruction that we should not read the statutory terms of RICO

18  narrowly." Odom, 486 F.3d at 547 (internal citation omitted).

19      In Odom, the Ninth Circuit clarified -- and relaxed -- the standard for pleading

20  and proving an "associated-in-fact" enterprise such as the one alleged here:

21          The definition of "enterprise" in the text of RICO is fairly

22      straightforward. In its entirety, the definition is as follows: "'enterprise'

23      includes any individual, partnership, corporation, association, or other

24      legal entity, and any union or group of individuals associated in fact

25      although not a legal entity." 18 U.S.C. § 1961(4). As is evident from

26      the text, this definition is not very demanding. A single "individual" is

27      an enterprise under RICO. Similarly, a single "partnership," a single

28      "corporation," a single "association," and a single "other legal entity"

Exhibit 15
Page 872

1    are all enterprises.  At issue in this case is the last kind of enterprise

2    listed in the definition -- a "group of individuals associated in fact."  It is

3    undisputed that a corporation can be an "individual" for purposes of

4    an associated-in-fact enterprise.

5  Id. at 548.

6        The Ninth Circuit acknowledged that "enterprise" must be something greater

7  than merely a pattern of racketeering activity; however, the court rejected the notion

8  that an enterprise must have a particular ascertainable organizational structure.  Id.

9  at 551 ("We take this opportunity to join the circuits that hold that an

10  associated-in-fact enterprise under RICO does not require any particular

11  organizational structure, separate or otherwise.") (citations omitted).  A party need

12  only set forth factual allegations of "a group of persons associated together for a

13  common purpose of engaging in a course of conduct," "evidence of an ongoing

14  organization, formal or informal," and "evidence that the various associates function

15  as a continuing unit."  Id. at 552 (internal citations and quotation marks omitted).

16        As for the common purpose, it was met in Odom, where the plaintiff had

17  alleged the following:

18        [D]efendants had the common purpose of increasing the

19        number of people using Microsoft's Internet Service, and doing so by

20        fraudulent means.  Best Buy furthered this common purpose by

21        distributing Microsoft Internet Trial CD's and conveying its customers'

22        debit and credit card information to Microsoft.  Microsoft then used the

23        information to activate customer accounts.

24  Id.  Here, Mattel has alleged the common purpose of attempting to defraud Mattel

25  and steal its trade secrets.  Mattel's many factual allegations, detailed herein,

26  support this alleged common purpose.

27        As for the "ongoing organization" requirement, the Ninth Circuit in Odom

28  noted that the plaintiffs had met that element, which was met where the

13

Exhibit 15
Page 873

1   organization was alleged to be "a vehicle for the commission of two or more

2   predicate crimes." Id. (internal quotation marks and citation omitted).  The Ninth

3   Circuit noted the following factual allegations:

4              Microsoft and Best Buy established mechanisms for

5         transferring plaintiffs' personal and financial information from Best Buy

6         to Microsoft. That information then allowed Microsoft to activate

7         plaintiffs' Internet accounts without their knowledge or permission.

8         These mechanisms enabled Microsoft to bill plaintiffs improperly for

9         MSN services in 2001, 2002 and 2003.

10  Id. Here, plaintiffs have alleged that the counter-defendants coordinated their many

11  efforts at depriving Mattel of its proprietary information and its intellectual property.

12  The allegations regarding common use of the "plot04@aol.com" email address to

13  transfer confidential Mattel information to MGA support the finding of an "ongoing

14  organization." So, too, do the allegations regarding the repeated communications

15  between Bryant and MGA.

16         The "continuing unit" requirement does not appear to the Court to mandate

17  that the organization continues to this day;[2] rather, the requirement is related to the

18  notion that RICO was not meant to address discrete instances of fraud or criminal

19  conduct.  "[T]he continuity requirement focuses on whether the associates'

20  behavior was 'ongoing' rather than isolated activity." Id. at 553 (internal quotation

21  marks and citation omitted).  Related to that concern, it is also clear to the Court

22  that this requirement is related to the duration of the racketeering activities. See id.

23  ("An almost two-year time span is far more than adequate to establish that Best

24  Buy and Microsoft functioned as a continuing unit.").  Here, the allegations do not

25  reveal that the conduct complained of was mere isolated activity; rather, Mattel sets

26  forth allegations of racketeering activity that spanned a period of three years.  The

27

28         [2] Nevertheless, Mattel alleges that the enterprise exists to this day by virtue
    of its continued use of Mattel's information and property.

Exhibit 15
Page 874

1  allegations describe a scheme consisting of corporate warfare between competitors

2  that has been waged over a long period of time and waged on a number of fronts,

3  both foreign and domestic. The "continuing unit" requirement is therefore satisfied.

4      Accordingly, the Court finds that Mattel has sufficiently pleaded the existence

5  of a RICO enterprise.

6  **3.   Predicate Acts of Racketeering Activity**

7      **a.   Mail Fraud and Wire Fraud**

8  The criminal prohibition against mail fraud is found at 18 U.S.C. § 1341:

9          Whoever, having devised or intending to devise any scheme or

10  artifice to defraud, . . . for the purpose of executing such scheme or

11  artifice or attempting so to do, places in any post office or authorized

12  depository for mail matter, any matter or thing whatever to be sent or

13  delivered by the Postal Service, or deposits or causes to be deposited

14  any matter or thing whatever to be sent or delivered by any private or

15  commercial interstate carrier, or takes or receives therefrom, any such

16  matter or thing, . . . shall be fined under this title or imprisoned not

17  more than 20 years, or both.

18  Id. The Ninth Circuit has described the elements of mail fraud as "(1) proof of a

19  scheme to defraud; (2) using or causing the use of the mails to further the

20  fraudulent scheme; and (3) specific intent to defraud." United States v. Rogers, 321

21  F.3d 1226, 1229 (9th Cir. 2003) (internal citation omitted).

22      The criminal prohibition against wire fraud is similar:

23          Whoever, having devised or intending to devise any scheme or

24  artifice to defraud, . . . transmits or causes to be transmitted by means

25  of wire, radio, or television communication in interstate or foreign

26  commerce, any writings, signs, signals, pictures, or sounds for the

27  purpose of executing such scheme or artifice, shall be fined under this

28  title or imprisoned not more than 20 years, or both.

**Exhibit 15
Page 875**

1    18 U.S.C. § 1343. The Ninth Circuit has described the elements of wire fraud as

2    "(1) a scheme to defraud; (2) use of the wires in furtherance of the scheme; and

3    (3) a specific intent to deceive or defraud." United States v. Shipsey, 363 F.3d 962,

4    971 (9th Cir. 2004) (citations omitted).

5         As all parties acknowledge, the predicate acts of mail fraud and wire fraud

6    must be pleaded with particularity pursuant to Fed. R. Civ. P. 9(b). Specifically,

7    Mattel must detail "the time, place, and manner of each act of fraud, [and it must

8    set forth] the role of each defendant in each scheme." Lancaster Community

9    Hosp., 940 F.2d at 405. This standard applies in RICO actions alleging predicate

10   acts of mail fraud. Id.

11        Here, Mattel sets forth allegations of predicate acts of mail fraud and wire

12   fraud referenced in Exhibit C to the AAC. However, these alleged predicate acts

13   are insufficiently pleaded because they fail to adequately describe the contents of

14   the communications; specifically, they fail to detail time, place and manner of "each

15   act of fraud." The substantive RICO claim is therefore dismissed to the extent it is

16   premised on those communications. Mattel is **GRANTED** leave to amend the RICO

17   claim based on this insufficiency; Mattel must attach to the Second Amended

18   Answer and Counterclaims ("SAAC") copies of the referenced communications.

19   The contents of packages referenced in Exhibit C must be described in order to

20   meet the Rule 9(b) requirements.

21        At oral argument, counsel for MGA argued that the substance of many, if not

22   all of the communications, cannot be read to further a scheme to defraud. That

23   argument will be considered another day, after Mattel files the SAAC. However, the

24   Court takes the opportunity today to note that, given the broad scope of the alleged

25   scheme to defraud, including the criminal copyright infringement allegations,

26   otherwise innocuous and routine communications regarding day-to-day operations

27   and product development may be found to be in furtherance of that scheme. See

28   Tellabs, Inc. v. Makor Issues & Rights, Ltd., __ U.S. __, No. 06-484,  2007 WL

Exhibit 15
Page 876

1   1773208, at *9 (June 21, 2007) (noting that, in considering a Rule 12(b)(6) motion,

2   "courts must consider the complaint in its entirety").

3        Counter-defendants also argue that Mattel failed to plead each defendant's

4   role in furtherance of the scheme to defraud.  As interpreted by the Ninth Circuit,

5   the Rule 9(b) standard clearly requires that a plaintiff so plead.  Lancaster

6   Community Hosp., 940 F.2d at 405.  However, the Court will view the

7   communications alleged to constitute mail and wire fraud in conjunction with all the

8   allegations set forth regarding the alleged scheme in the counterclaims.  See Flood

9   v. Makowski, No. 3:CV-03-1803, 2004 WL 1908221, at *14 (M.D. Pa., Aug. 24,

10  2004) (applying the principle that reasonable inferences in favor of a plaintiff must

11  be made when considering a Rule 12(b)(6) motion and noting that "[a]lthough

12  Plaintiffs' Complaint does not expressly identify how each particular mail or wire

13  communication furthered the scheme, the Complaint clearly alleges facts which

14  create an unquestionable inference that the alleged communications furthered the

15  scheme.").

16        Counter-defendants also argue that, because the emails alleged to

17  constitute wire fraud were sent among individuals physically located in the same

18  state, Mattel will not be able to establish the interstate nature of the

19  communications.  See 18 U.S.C. § 1343 (setting forth the requirement that

20  communications be transmitted "in interstate or foreign commerce").  Mattel has

21  alleged that the communications were transmitted in interstate or foreign

22  commerce.  (AAC ¶ 93(b).)  This suffices at the pleadings stage; however,

23  eventually Mattel will be called upon to support these allegations with evidence.

24  See First Pacific Bancorp, Inc. v. Bro, 847 F.2d 542, 547 (9th Cir. 1988) (implicitly

25  holding that wire fraud must be supported, at the summary judgment stage, by

26  evidence of interstate wire fraud).

27        The Court dismisses the RICO claim to the extent it is based on the alleged

28  predicate acts of mail fraud and wire fraud because those acts are not pleaded with

Exhibit 15
Page 877

1   particularity as required by Rule 9(b).  Mattel is **GRANTED** ten days' leave to file a

2   SAAC that incorporates and attaches and/or describes the communications and the

3   contents of packages referenced in Exhibit C.

4            b.    **Evidence Tampering**

5        Unlike the mail fraud and wire fraud allegations, the allegations regarding the

6   remaining predicate acts are governed by the more lenient pleading standards of

7   Rule 8(a).  See Slade v. Gates, No. 01-8244-RMT, 2002 WL 31387263, at *6 (C.D.

8   Cal., Oct. 11, 2002).  The Court considers the sufficiency of those remaining

9   allegations pursuant to this Rule.

10       The criminal prohibition against tampering with evidence is found at 18

11  U.S.C. § 1512:

12            Whoever corruptly . . . alters, destroys, mutilates, or conceals a

13        record, document, or other object, or attempts to do so, with the intent

14        to impair the object's integrity or availability for use in an official

15        proceeding . . . shall be fined under this title or imprisoned not more

16        than 20 years, or both.

17  Id.  Mattel's opposition makes clear that its evidence tampering allegations are

18  based upon two categories of documents:  The first category of documents,

19  perhaps composed of only one multi-page document, involves the alleged alteration

20  of Bryant's contract with MGA to remove a fax header showing that the date of its

21  execution, which predated the effective date of Bryant's resignation from Mattel.[3]

22  The second category of documents are those filed with the United States Copyright

23  Office, which are alleged to omit the disclosure that certain Bratz drawings were

24  "works for hire," and which are alleged to have had alterations made to certain

25

26        [3]  The AAC merely alleges that counter-defendants Bryant and MGA

27  "tamper[ed] with and defac[ed] documents which showed that . . . Bryant was a
    Mattel employee while he was working for and with MGA . . . ."  (AAC ¶ 35.)

28  However, it is clear from other filings by the parties that, at a minimum, this
    allegation refers to MGA's contract with Bryant.

Exhibit 15
Page 878

1   relevant dates.  (See AAC ¶ 35; Mattel Opp. to MGA's Motion at 9.)

2          As to the first category, a predicate act is sufficiently alleged.  Mattel has

3   alleged that a document was altered in a manner designed to conceal critical

4   evidence, highly relevant to the present official proceeding, regarding the timing of

5   the execution of the document.

6          Conversely, it is unclear whether Mattel has alleged a predicate act with

7   respect to the second category of documents.  The issue of whether submitting

8   fraudulent registrations and "altering relevant dates" on documents submitted to the

9   United States Copyright Office has not been fully briefed by the parties; the issue

10  was framed in this manner only upon the filing of the reply.[4]  Therefore, the Court

11  reserves this issue for a later date, and anticipates that it will be addressed by the

12  parties in a motion to dismiss the SAAC.

13         c.      **Travel Act Violation**

14         Federal criminal law prohibits interstate or foreign travel to aid in

15  racketeering activities.  18 U.S.C. § 1952; see also 18 U.S.C. § 1961 (defining a

16  violation of § 1962 as a RICO predicate act).  In relevant part, the criminal

17  prohibition states:

18         Whoever travels in interstate or foreign commerce or uses the

19         mail or any facility in interstate or foreign commerce, with intent to . . .

20         promote, manage, establish, carry on, or facilitate the promotion,

21         management, establishment, or carrying on, of any unlawful activity,

22         and thereafter performs or attempts to perform . . . [such an act,] shall

23         be fined under this title, imprisoned not more than 5 years, or

24         both . . . .

25                                  . . . .

26         As used in this section . . . "unlawful activity" means . . .

27   _____

28         [4] The Court does not view this failure as the fault of any party.

Exhibit 15
Page 879

RightFAX          6/?  '2007 3:04:?        021/037    ax Server

1    extortion, bribery, or arson in violation of the laws of the State in which

2    committed or of the United States . . . .

3    Id.  Mattel alleges that Bryant and others traveled in interstate commerce to commit

4    commercial bribery in violation of California's prohibition against commercial

5    bribery, which in relevant part provides:

6           (a) Any employee who solicits, accepts, or agrees to accept

7           money or any thing of value from a person other than his or her

8           employer, other than in trust for the employer, corruptly and without

9           the knowledge or consent of the employer, in return for using or

10          agreeing to use his or her position for the benefit of that other person,

11          and any person who offers or gives an employee money or any thing

12          of value under those circumstances, is guilty of commercial bribery.

13   Cal. Penal Code § 641.3.  Several allegations support a violation of § 641.3(a),

14   which in turn supports a violation of 18 U.S.C. § 1952.  Mattel has alleged that

15   Bryant, while still employed by Mattel, entered into a contract with MGA to provide

16   design services to MGA on a "top priority" basis, and used Mattel property,

17   employees, and resources to develop and design the Bratz concept.

18          Counter-defendants argue that the requirement under California's

19   commercial bribery statute that a violator act "corruptly" is not met because Bryant

20   did not intend to injure Mattel.  Such an intent is not required; rather it is sufficient

21   that Bryant is alleged to have intended to defraud Mattel.  See Cal. Penal Code

22   § 341.3(d)(3) (defining "corruptly" as involving the intent "to injure *or* defraud")

23   (emphasis added).

24          d.      **Criminal Copyright Violations**

25          The parties dispute the relevant pleading standard that governs the

26   allegations which underlie the criminal copyright violation claim.  Counter-

27   defendants would have the Court apply the more exacting Rule 9(b) standards

28   because, in their assessment, the claim "sounds in fraud."  Mattel, however,

**Exhibit 15**
**Page 880**

1 contends that there is no reason to depart from the more lenient Rule 8(a) standard

2 generally applied to copyright claims because, in its assessment, the claims "sound

3 in copying, not fraud." (Mattel Opposition to MGA's Motion at 4.)

4      The recent Ninth Circuit case on this issue, cited by both parties, stands for

5 the unremarkable proposition that, consistent with Rule 9(b), all *averments* of fraud

6 must be pleaded with particularity, regardless of whether fraud is an essential

7 element of the claim to which the averment relates. <u>See</u> <u>Vess v. Ciba-Geigy Corp.</u>

8 <u>USA</u>, 317 F.3d 1097, 1103 (9th Cir. 2003); Fed. R. Civ. P. 9(b) ("In all *averments*

9 of fraud or mistake, the circumstances constituting fraud or mistake shall be stated

10 with particularity.") (emphasis added).

11      Considering Rules 8(a), 9(b), and the teachings of <u>Vess</u>, a spectrum

12 emerges. At the left end of this spectrum are claims that do not involve any

13 allegations of fraud. Those need only satisfy Rule 8(a)'s "short and plain

14 statement" standard. At the opposite end of the spectrum are claims based solely

15 on fraud, and the facts underlying such a claim must be alleged with particularity

16 pursuant to Rule 9(b). Lying closer to the Rule 9(b) end of the spectrum is a

17 category of claims discussed in <u>Vess</u>:

18        In cases where fraud is not a necessary element of a claim, a

19      plaintiff may choose nonetheless to allege in the complaint that the

20      defendant has engaged in fraudulent conduct. In some cases, the

21      plaintiff may allege a unified course of fraudulent conduct and rely

22      entirely on that course of conduct as the basis of a claim. In that

23      event, the claim is said to be "grounded in fraud" or to "sound in

24      fraud," and the pleading of that claim as a whole must satisfy the

25      particularity requirement of Rule 9(b).

26 <u>Vess</u>, 317 F.3d at 1103-04 (internal citations omitted). It is into this category MGA

27 contends that the allegations of criminal copyright claims fit, and MGA therefore

28 contends that all allegations regarding the criminal copyright claims must be

**Exhibit 15**
**Page 881**

1   pleaded with particularity.

2   However, <u>Vess</u> sets up another category, lying closer to the Rule 8(a) part of

3   the spectrum (but nevertheless requiring pleading with some particularity):

4           In other cases, however, a plaintiff may choose not to allege a

5       unified course of fraudulent conduct in support of a claim, but rather

6       to allege some fraudulent and some non-fraudulent conduct.  In such

7       cases, only the allegations of fraud are subject to Rule 9(b)'s

8       heightened pleading requirements. . . . The rule does not require that

9       allegations supporting a claim be stated with particularity when those

10      allegations describe non-fraudulent conduct.

11          [In other words,] in a case where fraud is not an essential

12      element of a claim, only allegations ("averments") of fraudulent

13      conduct must satisfy the heightened pleading requirements of Rule

14      9(b).  Allegations of non-fraudulent conduct need satisfy only the

15      ordinary notice pleading standards of Rule 8(a).

16  <u>Id.</u> at 1104-05.

17      Whether fraud is an essential element of criminal copyright infringement

18  must be determined by reference to the statutory language and any interpretative

19  case law.  In relevant part, the prohibition against criminal copyright infringement

20  provides:  "Any person who violates section 506(a) (relating to criminal offenses) of

21  title 17 shall be punished as provided [herein] in and such penalties shall be in

22  addition to any other provisions of title 17 or any other law."  18 U.S.C. § 2319.  In

23  turn, the relevant provision in 17 U.S.C. § 506 states that "[a]ny person who willfully

24  infringes a copyright shall be punished as provided under section 2319 of title 18, if

25  the infringement was committed . . . for purposes of commercial advantage or

26  private financial gain . . . ."  17 U.S.C. § 506(a)(1)(A).  The elements of the offense

27  are easily gleaned from the straightforward statutory language:  "Criminal

28  infringement of copyright has three elements: (1) infringement of a copyright

**Exhibit 15**
**Page 882**

1   (2) done wilfully (3) for purposes of commercial advantage or private financial gain."

2   United States v. Goss, 803 F.2d 638, 642 (11th Cir. 1986).

3       Clearly, fraud is not an essential element of a criminal copyright claim, taking

4   it out of the category at the far end of the spectrum described above, and

5   necessitating an inquiry into whether Mattel has chosen to incorporate a fraud

6   element into its criminal copyright claim.  The AAC at ¶ 93(e) reveals that the

7   criminal copyright claim is premised upon the "willfull[] infringe[ment of] Mattel's

8   copyrights, including with respect to documents containing Mattel trade secret and

9   confidential information . . . ."  The Opposition fills in more details regarding this

10  claim, noting that the criminal copyright claim is premised upon the Bratz-related

11  works, Bratz-derivative works, and works contained within Mattel's allegedly

12  purloined trade secrets and confidential information.  (Mattel Opposition to MGA's

13  Motion at 5).

14      These allegations do not "allege a unified course of fraudulent conduct and

15  rely entirely on that course of conduct as the basis of a claim" such that the claim

16  could be said to "sound in fraud" and therefore require pleading with particularity as

17  to the entire claim.  The allegations establish that much of the conduct complained

18  of consists of simple copying of the Bratz-related works or the creation of Bratz-

19  derivative works.  Such allegations are unrelated to allegations of fraud.  Therefore,

20  if this claim falls anywhere on the spectrum other than the Rule 8(a) category, it

21  falls in the category described by Vess as those claims in which a claimant chooses

22  to "allege some fraudulent and some non-fraudulent conduct." Id. at 1104.

23      When one considers that the alleged predicate acts of criminal copyright

24  infringement are but a small part of a larger, and singular, claim brought pursuant to

25  RICO, it is evident that the RICO claim falls neatly into the category of claims that

26  are based partly on fraudulent and partly on non-fraudulent conduct.  The Court

27  has already found that certain fraudulent conduct -- that supporting the alleged

28  predicate acts of mail fraud and wire fraud -- is insufficiently pleaded.  The current

Exhibit 15
Page 883

1   focus, however, is whether the allegations supporting the predicate acts of criminal

2   copyright infringement involve fraudulent conduct.

3          Here, there are two types of works allegedly infringed.  The first type is the

4   Bratz-related and Bratz-derivative works.  The second type is Mattel's other trade

5   secrets and confidential information.  Both types are alleged -- with particularity -- to

6   have been procured by MGA through fraudulent conduct, but the criminal copyright

7   infringement predicate acts do not implicate that fraudulent conduct.  Rather, they

8   implicate only questions of whether counter-defendants wilfully infringed Mattel's

9   works for commercial advantage or private financial gain.  Here, Mattel has

10   sufficiently alleged predicate acts of criminal copyright infringement by alleging that

11   MGA and other counter-defendants willfully infringed its copyrights for purposes of

12   gaining commercial advantage and private financial gain.  As Mattel correctly

13   contends, state of mind, in this instance willfulness, may be pleaded generally.  <u>See</u>

14   <u>Ferguson Beauregard/Logic Controls v. Mega systems, LLC</u>, 350 F.3d 1327, 1343

15   (Fed. Cir. 2003).

16          4.      <u>**Injury to Business or Property**</u>

17          "Recovery under RICO is limited to those injuries flowing from predicate

18   acts . . . ."  <u>Resolution Trust Corp. v. Keating</u>, 186 F.3d 1110, 1117 (9th Cir. 1999)

19   (citing <u>Sedima, S.P.R.L. v. Imrex Co., Inc.</u>, 473 U.S. 479, 497 (1985)).  Here, Mattel

20   has alleged damages flowing from the alleged acts of racketeering activity.  (AAC

21   ¶ 96).  Damages easily flow from theft of trade secrets and confidential information

22   committed by a direct competitor and from infringement of copyrights that are

23   alleged to have been used to make millions -- if not billions -- of dollars.

24          Counter-defendants argue that Mattel lacks standing to sue on behalf of its

25   subsidiaries.  This issue arises because many of the allegations of the thefts of

26   trade secrets involve actions taken in Mexico or Canada by employees of Mattel's

27   foreign subsidiaries.  Mattel argues that it is not attempting to sue for damages

28   incurred by its subsidiaries; rather, Mattel alleges that much of the confidential

Exhibit 15
Page 884

1  information stolen by the employees of Mattel's subsidiaries belonged not to

2  Mattel's subsidiaries, but to Mattel itself.  Based on these allegations, Mattel may

3  sue for damages it sustained.  Mattel may not sue for damages incurred by its

4  foreign subsidiaries.

### 5. Ruling on Motions to Dismiss

6  The Motions to Dismiss the RICO claims are **GRANTED** in part.  As set forth

7  herein, the alleged predicate acts of mail fraud and wire fraud are insufficiently

8  alleged, and Mattel is **GRANTED** leave to amend the AAC.

## C. Trade Secrets

10  MGA contends that Mattel has failed to plead its trade secrets with sufficient

11  particularity to comply with its duties under Cal. Code Civ. P. § 2019.210, which

12  provides:

13      In any action alleging the misappropriation of a trade secret

14      under the Uniform Trade Secrets Act . . . , before commencing

15      discovery relating to the trade secret, the party alleging the

16      misappropriation shall identify the trade secret with reasonable

17      particularity subject to any orders that may be appropriate under

18      Section 3426.5 of the Civil Code [involving in camera reviews and

19      sealing of court documents].

20  Id.  Based on the unambiguous language of the statute, the Court agrees with

21  Mattel's characterization of this requirement as one related to discovery rather than

22  related to pleading.

23  The Court also agrees that, by identifying documents in discovery by Bates-

24  stamp number, Mattel has complied with the dictates of § 2019.210.  See

25  Advanced Modular Sputtering, Inc. v. Superior Court, 132 Cal.App.4th 826, 835-36,

26  (2005) (internal quotation marks and citations omitted) ("[Reasonable particularity]

27  means that the plaintiff must make some showing that is reasonable, i.e., fair,

28  proper, just and rational[,] . . . under all of the circumstances to identify its alleged

Exhibit 15
Page 885

1  trade secret in a manner that will allow the trial court to control the scope of

2  subsequent discovery, protect all parties' proprietary information, and allow them a

3  fair opportunity to prepare and present their best case or defense at a trial on the

4  merits."). MGA's complaints regarding the volume of documents so identified, and

5  their skepticism of Mattel appropriately attaching such an identification to many of

6  those identified documents, are not properly addressed at this stage of the

7  proceedings.

8       The motion to dismiss the trade secrets claim on this basis is therefore

9  **DENIED**.

10 **D.     Duplicative State-Law Claims**

11      Bryant's motion to dismiss Mattel's duplicative state-law claims is **DENIED**.

12 The state-law counterclaims asserted against Bryant in the AAC admittedly overlap

13 with the claims asserted against him in the 04-9059 case, however, the factual

14 allegations underlying the claims asserted in the AAC are broader in scope than

15 those underlying the claims asserted in the 04-9059 case.

16            **IV. Motion to Dismiss for Lack of Personal Jurisdiction**

17      MGA Mexico challenges this Court's exercise of personal jurisdiction over it.

18 As set forth below, the Court concludes that it may, consistent with California law

19 and the federal Due Process Clause, exercise specific personal jurisdiction over

20 this admittedly foreign corporation.

21 **A.     The Constitutional Exercise of Personal Jurisdiction**

22      Where a party moves to dismiss a claim for lack of personal jurisdiction, the

23 party asserting the claim bears the burden of demonstrating that jurisdiction is

24 appropriate. Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir.

25 2004). However, in opposing a motion to dismiss for lack of personal jurisdiction,

26 the party asserting the claim need only make a *prima facie* showing of jurisdictional

27 facts. Id. Disputed facts are to be resolved in favor of the exercise of personal

28 jurisdiction. Id.

Exhibit 15
Page 886

1   Because there is no applicable federal statute governing personal

2   jurisdiction, the Court applies the law of the state in which the district court sits. Id.

3   (citations omitted). "Because California's long-arm jurisdictional statute is

4   coextensive with federal due process requirements, the jurisdictional analyses

5   under state law and federal due process are the same." Id. at 800-01 (citations

6   omitted). In order for a court's exercise of personal jurisdiction over a nonresident

7   defendant to be constitutionally permissible, the defendant must have "minimum

8   contacts" with the forum state "such that the exercise of jurisdiction does not offend

9   traditional notions of fair play and substantial justice." Id. at 801 (internal quotation

10  marks and citation omitted).

11      Personal jurisdiction may be either general or specific. For general personal

12  jurisdiction to apply, a defendant (or here, a counter-defendant) "must engage in

13  continuous and systematic general business contacts . . . that approximate a

14  physical presence in the forum state." Id. (internal quotation marks and citations

15  omitted).

16      To determine whether it has specific personal jurisdiction over a nonresident

17  defendant, the Court employs a three-part test:

18          (1) The non-resident defendant must purposefully direct his

19          activities or consummate some transaction with the forum or resident

20          thereof; or perform some act by which he purposefully avails himself

21          of the privilege of conducting activities in the forum, thereby invoking

22          the benefits and protections of its laws; (2) the claim must be one

23          which arises out of or relates to the defendant's forum-related

24          activities; and (3) the exercise of jurisdiction must comport with fair

25          play and substantial justice, i.e. it must be reasonable.

26  Id. at 802.

27      The party asserting the claim bears the burden of establishing the first two

28  parts of the test. Id. If that party establishes the first two parts, then the burden

Exhibit 15
Page 887

shifts to the party resisting the Court's exercise of personal jurisdiction "to present a **compelling case** that the exercise of jurisdiction would not be reasonable." Id. (emphasis added).

The first part of the test is satisfied by either "purposeful availment" or "purposeful direction." Id. Purposeful availment is shown when a defendant avails itself of the privilege of doing business in a forum state, usually met when the defendant took some action in the forum, such as executing or performing a contract there. Id. By virtue of such actions, a defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958). When taking advantage of these "benefits and protections," a defendant must also "submit to the burdens of litigation in that forum." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985).

By contrast, purposeful direction, involves actions by the defendant outside of the forum state but that are directed at the forum. Schwarzenegger, 374 F.3d at 803. The purposeful direction analysis is derived from a three-part "effects test" that finds its roots in the Supreme Court's decision in Calder v. Jones, 465 U.S. 783 (1984). Pursuant to this analysis, the defendant must "have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." Id.; Schwarzenegger, 374 F.3d at 803. All three parts of the test must be satisfied. The second part of the effects test is described by the Ninth Circuit as the "express aiming" requirement, and requires that the counter-defendants "expressly aimed" its intentional act at California. See Schwarzenegger, 374 F.3d at 806. Specifically, "express aiming" is found where the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." Bancroft & Masters, Inc. v. Augusta Nat. Inc., 223 F.3d 1082,

Exhibit 15
Page 888

RightFAX                6/2  2007 3:04    PAGE 030/037    ax Server

1087 (9th Cir. 2000).[5]

Assuming that the party asserting a claim can establish that the party resisting the Court's exercise of personal jurisdiction has met either the purposeful availment or express aiming part of the three-part test regarding the exercise of specific personal jurisdiction, courts next consider whether the claim arises out of or relates to the forum-related activities. In making this determination, the Court considers whether the contacts with the forum gave rise to the claims asserted, employing a "but for" standard. See Doe v. Unocal Corp., 248 F.3d 915, 924 (9th Cir. 2001).

Once the purposeful availment/express aiming and relatedness requirements are established, the burden shifts to the party resisting the Court's exercise of jurisdiction to show that exercise of jurisdiction is unreasonable. In determining reasonableness, the Court considers seven factors:

1) the extent of the defendant's purposeful interjection into the forum state's affairs; 2) the burden on the defendant; 3) conflicts of law between the forum and defendant's home jurisdiction; 4) the forum's interest in adjudicating the dispute; 5) the most efficient judicial resolution of the dispute; 6) the plaintiff's interest in convenient and effective relief; and 7) the existence of an alternative forum.

---

[5] What constitutes, or doesn't constitute, "express aiming" is best illustrated by example. For instance, in Pebble Beach Co. v. Caddy, 453 F.3d 1151 (9th Cir. 2006), no express aiming was found where the owner of a bed-and-breakfast in England (overlooking a pebbly beach) used the term "pebblebeach," the name of a famous golf course located in California, on its web site. Id. at 1153, 1156-57. The Ninth Circuit acknowledged that it might be foreseeable that the defendant's use of the web site might have some effect on California, but noted that mere foreseeability of effect in a forum state is not enough to constitute express aiming. Id. at 1157. In contrast to Pebble Beach is the case of Panavision Intern., L.P. v. Toeppen, 141 F.3d 1316, 1321 (9th Cir. 1998), in which the Ninth Circuit found that the express aiming requirement was met where the defendant registered plaintiff's marks as Internet domain names in order to force a California plaintiff to pay him money.

Exhibit 15
Page 889

1  Roth v. Garcia Marquez, 942 F.2d 617, 623 (9th Cir. 1991) (internal citation
2  omitted).  No factor is dispositive and the Court must balance all seven.  Id.
3  (internal citation omitted).

4  **B.**   **MGA Mexico's Contacts with the Forum State**

5      The AAC alleges that Issac Larian and other MGA officers, while in
6  California, executed a plot to target three high-level employees of Mattel Mexico,
7  and entice them to steal Mattel's trade secrets.  In written offers of employment to
8  these three individuals, Issac Larian held himself out to be the CEO of MGA
9  Mexico.  This plot was facilitated by a number of cross-border communications
10 among the participants as well as travel to the United States by the targeted
11 employees.

12 **C.**   **The Court May Exercise Personal Jurisdiction over MGA Mexico**

13      The AAC repeatedly alleges that Larian, who held himself out to be MGA
14 Mexico's CEO, and who was designated as MGA Mexico's "legal agent" in Mexican
15 registration document actively sought to induce others to access and steal Mattel's
16 trade secrets while located in the California.  See Velázquez Decl. Exs. A-C; Salem
17 Decl. Ex. B.  This constitutes purposeful availment.

18      To the extent that any of the actions taken in Mexico by the three Mexican
19 employees may be imputed to Mattel Mexico, there is also purposeful direction.
20 The alleged actions taken on behalf of MGA Mexico were specifically engineered to
21 result in the alleged illegal acquisition of trade secrets belonging to Mattel, a
22 California resident.[6]

23      The relatedness requirement is also clearly met.  The contacts with
24 California involve actions allegedly taken in order to further the illegal acquisition of
25 Mattel's trade secrets, leading to the present claims against MGA Mexico for
26 misappropriation of trade secrets and the related RICO claims.

27 _____
28      [6] The AAC alleges the theft of trade secrets belonging not only to Mattel's
Mexican subsidiary, but also to Mattel itself, which is a California corporation.

Exhibit 15
Page 890

The burden, therefore, is on MGA Mexico to show that the exercise of jurisdiction is unreasonable.[7] As noted previously, the Court considers seven factors. The first factor the Court considers is the defendant's purposeful interjection. For the reasons the Court has found purposeful availment and purposeful direction, this factor favors the exercise of personal jurisdiction.

MGA Mexico argues, without elaboration, that the burden of defending itself in California is "significant." However, the assumption underlying this argument is that the present action is more properly litigated by MGA's and Mattel's Mexican subsidiaries. This assumption misses the point of Mattel's claim against MGA Mexico; Mattel, the parent company, was itself injured by MGA's Mexico's alleged misappropriation of its own trade secrets because the alleged misappropriation was not limited to trade secrets belonging to its Mexican subsidiary. The argument based on this faulty assumption is therefore unconvincing. In order to show unreasonableness, the burden on the defendant must be great. See Panavision, 141 F.3d at 1323 ("A defendant's burden in litigating in the forum is a factor in the assessment of reasonableness, but unless the inconvenience is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction.") (internal quotation marks and citation omitted).

As to the third and seventh factors, regarding conflicts of law and the

---

[7] In its reply, MGA Mexico declares that it "made a 'compelling case' in support of its motion to dismiss that it would be unreasonable to force it to litigate in this forum." MGA Mexico Reply at 10. However, MGA Mexico's motion papers fail to acknowledge that they bear the burden on this issue. See MGA Mexico's Memorandum of Points and Authorities at 10 ("Finally, Mattel has failed to satisfy the third element required for specific jurisdiction -- that the exercise of jurisdiction over the defendant would be reasonable."). As Mattel accurately predicted in its opposition papers, MGA Mexico implicitly acknowledged its burden in the reply, and used the occasion to improperly present additional arguments for the first time. Although the Court ordinarily would not consider such arguments, it does so here because it does not change the Court's ultimate conclusion. See In re Intuit Privacy Litigation, 138 F.Supp.2d 1272, 1275 n.3 (C.D. Cal. 2001) ("this court does not consider arguments raised anew for the first time in a reply brief as to do so would unfairly deny the non-moving party an opportunity to respond.").

Exhibit 15
Page 891

existence of an alternative forum, MGA Mexico makes veiled references to the criminal action in Mexico as constituting a choice of forum made by Mattel, apparently implying that Mattel, having chosen to pursue criminal charges in Mexico, should be precluded from invoking the power of this Court. It appears to the Court that MGA Mexico has failed to fully and clearly articulate this argument because it is untenable. Whether Mexican authorities pursue criminal charges based on the same conduct underlying the claims in this action is irrelevant to whether this Court may constitutionally exercise personal jurisdiction over MGA Mexico. Therefore, MGA Mexico's argument on this issue is unpersuasive.

The fourth factor, the interest in adjudicating the dispute, weighs in favor of the exercise of personal jurisdiction, as does the sixth, the plaintiff's interest in convenient and effective relief.

MGA Mexico argues that the fifth factor weighs in its favor when the Court considers that the site of injury, which it does not believe is California, is the most efficient forum. However, this argument is premised on the rejected assumption that the present action is more properly litigated between MGA's and Mattel's Mexican subsidiaries.

On balance, a consideration of the reasonableness factors reveals that MGA Mexico has fallen far short of establishing the "compelling case" necessary to render the Court's exercise of personal jurisdiction unreasonable.

The Court concludes that Mattel has established the first two parts of the specific personal jurisdiction test, and that MGA Mexico has failed to establish that the Court's exercise of personal jurisdiction over it is otherwise unreasonable. Accordingly, the Court **DENIES** MGA Mexico's motion to dismiss.

### V. MGA's and Bryant's Motions Regarding the Discovery Master's March 7, 2007, Order

MGA and Bryant seek review of a decision that resolved discovery disputes that arose during Bryant's deposition, and that was rendered by the Court-

Exhibit 15
Page 892

1    appointed discovery master, Judge Edward A. Infante (Ret.), on March 7, 2007.

2    The Court's order appointing Judge Infante provides that his orders resolving

3    discovery disputes shall be reviewed in the same manner as those made by a

4    magistrate judge of this Court.

5        Pursuant to Fed. R. Civ. P. 72(a), when the parties object to the ruling of a

6    magistrate judge on a non-dispositive manner, such as a discovery dispute, the

7    district judge may modify or set aside only those portions of the magistrate judge's

8    order that are "clearly erroneous or contrary to law." Id.

9        The "clearly erroneous" language refers to factual findings. See e.g.,

10   Concrete Pipe and Products of California, Inc. v. Construction Laborers Pension

11   Trust, 508 U.S. 602, 622 (1993) (discussing the clearly erroneous standard).  Here,

12   there were no explicit factual findings or legal conclusions made by Judge Infante

13   regarding the relevant rulings; therefore, the Court reviews the record presented to

14   Judge Infante to determine whether his rulings are contrary to law. See March 7,

15   2007, Order.

16       Questions that do not seek the substance of attorney-client communications

17   generally do not implicate the attorney-client privilege. United States v. Carrillo,16

18   F.3d 1046, 1050 (9th Cir. 1994) (finding no violation of the attorney-client privilege

19   where prosecutor, who asked whether a criminal defendant had consulted with his

20   attorney during a recess in order to raise an inference of attorney coaching of

21   testimony during the trial, stopped short of asking defendant the substance of

22   defendant's communications with his attorney).  Therefore, questions such as the

23   one addressed by objection No. 38, asking whether Bryant talked to counsel for

24   MGA during a break from his deposition, are not subject to objection based on the

25   attorney-client privilege.  This conclusion is consistent with Judge Infante's Order.

26       Mattel's question regarding who is paying Bryant's legal fees, addressed by

27   objection No. 42, is likewise not objectionable.  MGA and Bryant argue that state

28   law applies; however, because the present consolidated actions involve both

Exhibit 15
Page 893

1   federal and state-law claims, the federal law of privilege applies.  Agster v.

2   Maricopa County, 422 F.3d 836, 839-40 (9th Cir. 2005) ("Where there are federal

3   question claims and pendent state law claims present, the federal law of privilege

4   applies.").  To that end, consistent with federal privilege law, fee-payment

5   arrangements are relevant to credibility and bias, and if asked in discovery, Bryant

6   must disclose who is paying his legal fees.  See United States v. Blackman, 72 F.3d

7   1418, 1424 (9th Cir. 1995) ("As a general rule, client identity and the nature of the

8   fee arrangement between attorney and client are not protected from disclosure by

9   the attorney-client privilege.").  This conclusion is also consistent with Judge

10  Infante's Order.

11        However, in this case, the joint-defense privilege protects from disclosure the

12  substance of certain statements made by Bryant and his attorneys in the presence

13  of attorneys representing MGA.  "The joint defense privilege protects

14  communications between an individual and an attorney for another when the

15  communications are 'part of an on-going and joint effort to set up a common

16  defense strategy.'"  United States v. Bay State Ambulance and Hosp. Rental

17  Service, Inc., 874 F.2d 20, 28 (1st Cir. 1989) (internal quotation marks and citation

18  omitted).  Generally, to rely on the joint-defense privilege, a party must establish

19  three elements:  "(1) [T]he communications were made in the course of a joint

20  defense effort, (2) the statements were designed to further the effort, and (3) the

21  privilege has not been waived."  Id.

22        The Court finds the first element was met.  The Court, based on its review of

23  the record pending before Judge Infante, is satisfied that the parties had in place at

24  the time of Bryant's deposition, and have in place today, a valid joint-defense

25  agreement.  The Court also finds that the second element was met.  Mattel cannot

26  seriously contend that MGA's interests are not aligned with Bryant's in this action,

27  or that counsels' thorough preparation of Bryant for his deposition was not designed

28  to further the joint defense effort.  Finally, as for the third element, there is no

**Exhibit 15
Page 894**

1    suggestion in the record that any party has waived the attorney-client privilege.

2        Accordingly, the Court holds that Judge Infante's rulings on Objection Nos.

3    39 and 50 are contrary to law to the extent those rulings require Bryant to divulge

4    the substance of his communications with counsel for MGA.

5                              **VII. Conclusion**

6        In the manner set forth more fully herein, the Court makes the following

7    rulings:

8        1.    Motion of MGA Entertainment, Inc., ("MGA") and Issac Larian

9    ("Larian") to Dismiss Mattel's Amended Answer and Counterclaims (docket # 189):

10   **GRANTED IN PART AND DENIED IN PART.**

11       2.    Motion of Carter Bryant to Dismiss Counterclaims II, III, V, VII, IX, and

12   XI (docket # 191):  **GRANTED IN PART AND DENIED IN PART.**

13       3.    Motion of MGA Mexico to Dismiss Mattel's Amended Answer and

14   Counterclaims (docket # 266):  **DENIED.**

15       4.    Motion of MGA Objecting to Discovery Master's March 7, 2007, Order

16   (docket # 308):  **GRANTED IN PART AND DENIED IN PART.**

17       5.    Motion of Carter Bryant Objecting to Discovery Master's March 7,

18   2007, Order (docket # 306):  **GRANTED IN PART AND DENIED IN PART.**

19       Mattel is **GRANTED** ten days' leave to amend the AAC in conformity with

20   this Order.  The Counter-defendants shall answer or otherwise respond to the

21   SAAC no later than thirty days after the filing of the SAAC.

22

23

24

25

26

27

28
                                                        **Exhibit 15**
                                                        **Page 895**

1    The Motion Re Trial Structure (docket #462) has been the subject of further

2    briefing by the parties and is set for further oral argument on July 2, 2007.  Ruling

3    on that matter is **DEFERRED** pending oral argument.

4        DATE:  June 27, 2007

5                                        STEPHEN G. LARSON
                                         UNITED STATES DISTRICT JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit 15
Page 896

Received:     6/27/07   3:21PM                         FAX -> QUINN E  IUEL;  Page 1

RightFAX                   6/2./2007 3:04     PAGE 001/037   Fax Server

'om:     Name:        United States District Court
                      312 North Spring Street
                      Los Angeles, CA  90012
         Voice Phone: (213) 894-5474

D:       Name:        Michael Zeller
         Company:

                      865 S Figueroa St, 10th Floor,
         City/State:  Los Angeles, CA 90017-2543
         Fax Number:  213-443-3100

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA



## Automated Document Delivery Service
*Notice pursuant to Rule 77(d) FRCiv.P*
*The attached copy is hereby served upon you pursuant to Federal Rule of Civil Procedure 77(d).*

**x Notes:**

se 2:04-CV-09049 : CARTER BRYANT V. MATTEL INC

*rsuant to General Order 06-07, Section F, the following documents shall be submitted in the traditional manner: Pen Registers, Search*
*larrants, Seizure Warrants, Wire Taps, Bond Related Documents, Under Seal and In-Camera Documents, and All Charging Documents*
*(Complaints, Informations, Indictments, and Superseding Charging Documents). All other documents filed in cases unassigned to a*
*judge shall be filed electronically with a copy e-mailed to the criminal intake mailbox for the appropriate division. The proper e-mail*
*address for each division is as follows:*

*Western Division: CrimIntakeCourtDocs-LA@cacd.uscourts.gov*
*Southern Division: CrimIntakeCourtDocs-SA@cacd.uscourts.gov*
*Eastern Division: CrimIntakeCourtDocs-RS@cacd.uscourts.gov*

*For additional information and assistance, please refer to the CM/ECF page on the Court website at www.cacd.uscourts.gov.*

**Switch to e-mail delivery and get these documents sooner!**
**To switch, complete and submit**
**Optical Scanning Enrollment / Update form G-76.**
**Call 213-894-5474 for help and free technical support.**

*you received this document in error because the attorney with whom this document is directed is no longer the attorney on the case,*
*a Notice of Change of Attorney Information, form G-6, must be filed. If there are other cases which you've received documents for*
*hich you are no longer the attorney, separate notices must be filed for each case. Failure to do so will result in the continued sending*
*of documents to you. Form G-6 is available on the court's website at www.cacd.uscourts.gov or at the Clerk's Office.*

te and time of transmission:        Wednesday, June 27, 2007 3:04:20 PM
mber of pages including this cover sheet:  37

**Exhibit 15**
**Page 897**

# Exhibit 16

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**