# Exhibit 17

1 | Hon. Edward A. Infante (Ret.)
JAMS
2 | Two Embarcadero Center
Suite 1500
3 | San Francisco, California 94111
Telephone:    (415) 774-2611
4 | Facsimile:    (415) 982-5287

5

6

7

8 | UNITED STATES DISTRICT COURT

9 | CENTRAL DISTRICT OF CALIFORNIA

10 | EASTERN DIVISION

11

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>        Plaintiff,<br><br>    v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>        Defendant. | CASE NO. CV 04-09049 SGL (RNBx)<br>JAMS Reference No. 1100049530<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-2727<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MATTEL'S MOTION TO COMPEL RESPONSES TO INTERROGATORY NOS. 27-44 AND 46-50 BY THE MGA PARTIES** |
| CONSOLIDATED WITH<br>MATTEL, INC. v. BRYANT and<br>MGA ENTERTAINMENT, INC. v. MATTEL, INC. | |

## I. INTRODUCTION

On December 20, 2007, Mattel, Inc. ("Mattel") submitted a Motion to Compel Responses to Interrogatory Nos. 27-44 and 46-50 by the MGA Parties. MGA Entertainment, Inc., MGA Entertainment (HK) Limited, MGAE De Mexico, S.R.L. De C.V., and Isaac Larian (collectively referred to as "MGA parties") submitted an opposition on December 31, 2007. Mattel submitted a reply on January 7, 2008. On February 8, 2008, the MGA parties submitted their second

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

1

2·15·08

Exhibit 17
Page 937

1    supplemental responses and third supplemental responses to the interrogatories at issue.  The
2    matter was heard on February 11, 2008.

3                                    II. BACKGROUND

4            Mattel served its Revised Third Set of Interrogatories on the MGA parties on September
5    21, 2007, asking each of them the same fifteen questions (Nos. 27-41).  Mattel served its Fourth
6    Set of Interrogatories on the MGA parties on October 12, 2007, propounding four additional
7    interrogatories (Nos. 42-45).  Mattel served an Amended Fourth Set on October 23, 2007,
8    removing No. 45, but retaining Nos. 42-44.  Mattel served its Fifth Set of Interrogatories on
9    October 19, 2007, which consisted of two additional questions (Nos. 46-47).  On October 23,
10   2007, Mattel served its Sixth Set of Interrogatories, which consisted of Interrogatory No. 45 to
11   replace the previously withdrawn interrogatory.  On October 25, 2007, Mattel served its Seventh
12   Set of Interrogatories, which consisted of Nos. 48-50.

13           In November of 2007, the MGA parties served responses and objections to Mattel's
14   interrogatories, and in some instances supplemental responses.  For the most part, the answers of
15   each of the MGA parties are substantially similar.  However, in several instances where MGA
16   Entertainment, Inc. provides a response, either MGA Entertainment (HK), MGAE de Mexico
17   S.R.L. de C.V. and/or Larian do not, asserting that the interrogatory "appears directed at another
18   party."

19           The parties met and conferred on December 10 and 12, 2007 regarding the supplemental
20   responses.  The MGA parties offered to provide supplemental responses by January 7, 2008.
21   Mattel contends, however, that the scope of the MGA parties' proposed supplemental responses
22   was inadequate.  Therefore, Mattel filed the instant motion on December 20, 2007.[1]

23           Mattel contends that the interrogatories at issue seek information relevant to central issues
24   in the case, such as:  MGA's contentions regarding which Bratz inventions were created before,

25   _____

26           [1]  One of the issues raised in the motions papers –whether the interrogatories exceed the 50 interrogatory
27   per side limit -- has been rendered moot by Judge Larson's Order Granting in Part and Denying in Part Mattel's
     Motion for Leave to Take Additional Discovery, dated January 7, 2008.
28
     Bryant v. Mattel, Inc.,                                                              2
     CV-04-09049 SGL (RNBx)

Exhibit 17
Page 938

1    during and after Carter Bryant's ("Bryant") employment with Mattel; the identity of electronic

2    storage devices MGA used prior to 2002 for digital information related to Bratz; the identity of

3    the sources of information from which MGA has collected documents in this litigation which

4    relate to Bratz and the time period prior to February 28, 2001; the facts allegedly supporting

5    MGA's contention that the Bratz dolls are not based on designs Bryant created while employed

6    by Mattel; MGA's contentions regarding Mattel's claims against MGA, Bryant and others,

7    including how Bryant's Inventions Agreement with Mattel and his assignment of rights to Bratz

8    inventions to MGA and services with or for MGA while employed by Mattel affect who owns the

9    rights to Bratz inventions, and the alleged basis for MGA's claims that it purportedly acted with

10    innocent intent; the identity of MGA's bank or financial accounts; the identity of former Mattel

11    employees that have been employed by MGA; non-privileged facts concerning the dispute

12    leading to the withdrawal of MGA's prior counsel that relate to MGA's handling of discovery in

13    this case; the facts supporting MGA's claims against Mattel, including MGA's contentions that

14    Mattel has copied, infringed or diluted MGA's trade dress; and the relevant dates regarding the

15    products MGA asserts MGA has copied or infringed. Mattel's Motion at pp. 2-3.

16       Mattel contends that although it has received responses to all of the interrogatories except

17    Nos. 39, 46 and 47, all of the responses are deficient. As an initial matter, Mattel contends that

18    the MGA parties' "boilerplate" objections – that the interrogatories are vague and ambiguous,

19    overbroad, unduly burdensome and oppressive, seek information not in the possession, custody or

20    control of MGA, seek information protected by the attorney-client privilege, work product or joint

21    defense privileges, and call for a legal conclusion – are without merit. Mattel contends that the

22    MGA parties fail to specify how the questions are overbroad, unduly burdensome or oppressive.

23    Mattel also contends that its interrogatories do not require the disclosure of privileged information

24    or work product, but rather require the MGA parties to state their contentions about facts or the

25    application of law to facts.

26       Mattel further contends that some of the MGA parties' responses are deficient in that they

27    merely lay out the "basic facts" (instead of "all facts") on which they intend to rely, without any

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

3

Exhibit 17
Page 939

1    details. Mattel contends that its contention interrogatories, including the purportedly "negative"

2    interrogatories asking for every fact which supports the denial of a statement or allegation, are

3    commonly used and well accepted to elucidate facts regarding a party's contentions, absent a

4    showing of undue burden. Indeed, Mattel points to decisions by the district judge which it

5    contends supports its use of the contention interrogatories at issue. Mattel also points out that it

6    provided the MGA parties with the details supporting its contentions in a one hundred-ten page

7    supplemental interrogatory response, and contends that the MGA parties ought to provide

8    comparable details to Mattel.

9            Mattel also contends that the MGA parties have unilaterally limited many of their

10   responses by disregarding Mattel's definitions of terms and phrases used in the interrogatories.

11   Further, Mattel contends that the MGA parties have failed to identify with specificity documents

12   they intend to rely upon, as requested by some of the interrogatories.

13           Mattel acknowledges that fully responding to the interrogatories will require some effort.

14   However, Mattel contends that the interrogatories are not unduly burdensome in this high stakes

15   litigation. Mattel contends that its need to discover MGA's key contentions outweighs any effort

16   the MGA parties will be required to undertake to disclose the requested information.

17   Accordingly, Mattel seeks an order overruling all of the MGA parties' objections and compelling

18   the MGA parties to provide complete responses to Interrogatory Nos. 27-44 and 46-50.

19           The MGA parties contend that their current responses comply with Rule 33 of the Federal

20   Rules of Civil Procedure and that Mattel is not entitled to any additional information for a number

21   of reasons. The MGA parties raise four main arguments in opposition to Mattel's motion. First,

22   the MGA parties contend that Mattel is not entitled to information about MGA's substitution of

23   counsel because such information is protected by the attorney-client privilege or the work product

24   doctrine. Second, the MGA parties contend that Mattel is not entitled to the sweeping financial

25   data that has been requested. Third, the MGA parties contend that Mattel's contention

26   interrogatories contain misleading and unfair definitions and are unduly burdensome in that they

27   require a recitation of all facts supporting the MGA parties' contentions. Fourth, the MGA parties

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

4

Exhibit 17
Page 940

1  contend that Rule 33 does not require a response to a contention interrogatory to set forth more

2  than the principal factual and legal bases for the response.

3  ### III. STANDARDS

4  Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain

5  discovery regarding any matter, not privileged, that is relevant to the claim or defense of any

6  party." Fed.R.Civ.P. 26(b)(1). Fishing expeditions to discover new claims, however, are not

7  permitted. See Fed.R.Civ.P. 26(b)(1); Rivera v. NIBCO, Inc., 364 F.3d 1057, 1072 (9th Cir.

8  2004) ("District courts need not condone the use of discovery to engage in 'fishing

9  expeditions.'"); Bernstein v. Travelers Ins. Co., 447 F.Supp.2d 1100, 1102 (N.D. Cal. 2006)

10  (citing Rule 26(b), Advisory Committee's Note to Amendments Effective December 1, 2000)

11  (Congress' changes in the language of Rule 26(c), substituting the words "claim or defense" for

12  the phrase "subject matter involved in the pending action," were intended to prevent discovery

13  that swept far beyond the claims and defenses of the parties and that seemed designed not to fairly

14  litigate the issues presented by the pleadings but to develop new claims or defenses.).

15  Further, pursuant to Rule 26(b)(2), Fed.R.Civ.P., the court shall limit the frequency or

16  extent of use of the discovery methods if the court determines that (i) the discovery sought is

17  unreasonably cumulative or duplicative, or is obtainable from some other source that is more

18  convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample

19  opportunity by discovery in the action to obtain the information sought; or (iii) the burden or

20  expense of the proposed discovery outweighs its likely benefit, taking into account the needs of

21  the case, the amount in controversy, the parties' resources, the importance of the issues at stake in

22  the litigation, and the importance of the proposed discovery in resolving the issues. Fed.R.Civ.P.

23  26(b)(2)(C).

24  Rule 33 of the Federal Rules of Civil Procedure allows a party to propound

25  interrogatories, for which the responding party is required to furnish such information as is

26  available to the party after conducting a reasonable inquiry. "Each interrogatory must, to the

27  extent it is not objected to, be answered separately and fully in writing under oath." Fed.R.Civ.P.

28

1    33(b)(3). "The grounds for objecting to an interrogatory must be stated with specificity."

2    Fed.R.Civ.P. 33(b)(4).

3    IV. DISCUSSION

4    A. Interrogatories About the Identity of Bratz Inventions (Nos. 27, 28 and 29)

5         Interrogatory Nos. 27-29 request information relating to Bratz inventions created during

6    three different time periods, namely before, during and after Bryant's employment with Mattel:

7
8
9
10
11

> **Interrogatory No. 27**: IDENTIFY each and every BRATZ INVENTION YOU contend was CREATED, in whole or in part, prior to January 4, 1999, and for each BRATZ INVENTION so identified state all FACTS that support YOUR contention that such BRATZ INVENTION (or aspects or portions thereof) was CREATED prior to January 4, 1999, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS which REFER OR RELATE TO such facts.

12
13
14
15
16

> **Interrogatory No. 28**: IDENTIFY each and every BRATZ INVENTION YOU contend was CREATED, in whole or in part, after October 19, 2000 and before June 1, 2001, and for each BRATZ INVENTION so identified state all FACTS that support YOUR contention that such BRATZ INVENTION (or aspects or portions thereof) was CREATED after October 19, 2000 and before June 1, 2001, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS which REFER OR RELATE TO such facts.

17
18
19
20

> **Interrogatory No. 29**: IDENTIFY each and every BRATZ INVENTION that was CREATED, in whole or in part, after January 3, 1999 and before October 21, 2000, and for each BRATZ INVENTION so identified state all FACTS that REFER OR RELATE TO the timing of the creating of such BRATZ INVENTION and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS which REFER OR RELATE TO such facts.

21    Mattel contends that these interrogatories seek information that is plainly relevant and

22    discoverable, and that the MGA parties do not contend otherwise. Mattel further contends that

23    the partial response given using the MGA parties' definition, not Mattel's definition, of BRATZ

24    INVENTION is inadequate. Mattel also contends that the MGA parties have failed to carry their

25    burden of showing that the interrogatories are burdensome or oppressive, particularly given the

26    importance of the information sought. Mattel emphasizes that the information sought will prove

27    liability as to a number of its claims. Moreover, Mattel contends that knowing which inventions

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

6

Exhibit 17
Page 942

1  MGA claims were created before and just after Bryant's second period of employment at Mattel

2  is essential so that Mattel can avoid unfair surprise at trial and impeach the defendants'

3  chronology of Bratz design and development.

4      The MGA parties contend that Mattel is using misleading and unfair definitions to create

5  jury confusion. In particular, the MGA parties object to Mattel's definition of "BRATZ

6  INVENTION," which they contend contains separate component parts ("representation, idea,

7  concept, work, process, procedure, plan, improvement, DESIGN or other development"), and

8  Mattel's definition of "DESIGN," which they contend adds at least another 21 elements ("all

9  works, designs, artwork, sketches, drawings, illustrations, representations, depictions, blueprints,

10  schematics, diagrams, images, sculptures, prototypes, models, samples, rotocasts, reductions to

11  practice, developments, inventions and/or improvements"). The MGA parties contend that

12  including all of these concepts in the definition "improperly conflates distinct issues of patent law,

13  copyright protection, trade secret law and the common law protecting original ideas, many of

14  which have no place in the ordinary usage of the term 'invention.'" MGA Parties' Opposition at

15  2:11-13. The MGA parties emphasize that these distinctions are important because Mattel lays

16  claim to Bratz under a January 4, 1999 "Employee Confidential Information and Inventions

17  Agreement." Further, the MGA parties accuse Mattel of using the contention interrogatories to

18  elicit a misleading "sound bite" it can read to the jury to argue that the MGA parties concede that

19  Bryant "invented" Bratz while employed by Mattel. The MGA parties contend that they have

20  provided adequate responses to the interrogatories using the common and ordinary meaning of the

21  term "invention," and should not be required to provide anything further.

22      Next, the MGA parties contend that they have given Mattel the principal factual and legal

23  bases for their contentions, and Rule 33 does not require them to provide anything further. The

24  MGA parties contend that requiring a narrative response setting forth all evidence in support of

25  their contentions would render the interrogatories unduly burdensome and "inherently improper."

26  See e.g. Clean Earth Remediation & Constr. Servs. v. Am. Int'l Group, 245 F.R.D. 137, 141 (S.D.

27  N.Y. 2007) ("[A] number of cases have held that interrogatories seeking identification of all facts

28  Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

7

Exhibit 17
Page 943

1   | supporting a particular allegation are *inherently improper*.").

2   |       Mattel's motion to compel further responses to Interrogatory Nos. 27-29 is denied because

3   | the interrogatories are overbroad and unduly burdensome. The definition of "Bratz Invention" is

4   | extremely broad, encompassing numerous intellectual property concepts. Mattel has not shown

5   | how each and every concept embedded in its multi-faceted definition of "Bratz Invention" is

6   | relevant to interpreting the term "invention" for purposes of enforcing the "Employee

7   | Confidential Information and Inventions Agreement," signed by Bryant. The breadth and undue

8   | burden of Interrogatory Nos. 27-29 are also compounded by the fact that Mattel is employing an

9   | extremely broad definition of "Bratz Invention" in a contention interrogatory seeking all facts

10  | supporting the MGA parties' contentions, the identities of all persons knowledgeable, and all

11  | supporting documents. Not all contention interrogatories requiring a recitation of all facts,

12  | documents and witness are objectionable. See e.g. Tatum v. Schwartz, 2007 WL 2220977 at *1

13  | (E.D. Cal. Aug. 2, 2007) (noting that contention interrogatories can impose undue burdens, but

14  | that "courts have otherwise approved of them when they are limited to discrete, narrow factual

15  | events"); Roberts v. Heim, 130 F.R.D. 424, 427 (N.D. Cal. 1989) (recognizing a broad spectrum

16  | of contention interrogatories, and noting that it is not possible to announce a hard and fast rule as

17  | to the exact amount of detail a party has to supply in response to a contention interrogatory). In

18  | the instant case, however, Mattel's contention interrogatories would force the MGA parties to

19  | review the nearly 4 million pages of documents produced in this action and more than 50 days of

20  | deposition testimony in search of information relating to "any representation, idea, concept, work,

21  | process, procedure, plan, improvement, design or other development" that refers or relates to

22  | Bratz, including "all works, designs, artwork, sketches, drawings, illustrations, representations,

23  | depictions, blueprints, schematics, diagrams, images, sculptures, prototypes, models, samples,

24  | rotocasts, reductions to practice, developments, inventions and/or improvements" that refer or

25  | relate to Bratz. It is not the MGA parties' responsibility to re-write the interrogatories in a

26  | manner that will yield Mattel the most amount of information to support Mattel's claims and

27  | defenses. On balance, the burden of responding further to Interrogatory Nos. 27-29, as written,

28  |

1   outweighs the likely benefit of the interrogatories, taking into account the needs of the case, the

2   amount in controversy, the parties' resources, the importance of the issues at stake in the

3   litigation, and the importance of the proposed discovery in resolving the issues.

4       In any event, the MGA parties' responses are adequate under the circumstances. Faced

5   with overbroad and unduly burdensome interrogatories, the MGA parties provide facts supporting

6   the contentions identified in the interrogatories, identify persons with knowledge of those facts,

7   and identify the principal documents or categories of documents that support each contention.

8   See e.g. Moses v. Halstead, 236 F.R.D. 667, 674 (D. Kan. 2006). For example, in response to

9   Interrogatory No. 27, the MGA parties set forth their contention that the concept for a new line of

10  fashion dolls envisioned by Bryant in August and/or September of 1998 could not have been

11  patented as a utility patent because fashion dolls were in the public domain for the purposes of

12  utility patent protection. However, the MGA parties contend that Bryant's idea of a line of

13  fashion dolls he called Bratz was sufficiently novel and original to be protected under California

14  law as a confidential novel idea under Desny v. Wilder, 46 Cal.2d 715 (1956) and its progeny.

15      The MGA parties' supplemental responses to Interrogatory No. 27 also include the MGA

16  parties' contention that Bryant's pre-1999 drawings were never reduced to practice; that design

17  patents are not available for drawings or two-dimensional flat art of the sort that Bryant sketched

18  in 1998; that Bryant was not a sculptor and any effort to translate his pre-1999 two-dimensional

19  flat art into a three-dimensional form for use as a fashion doll sculpt would have produced shapes

20  that were different from the actual shape of the final three-dimensional Bratz sculpt used in

21  manufacturing the first generation of Bratz dolls released on the market by MGA in or about June

22  2001; that the final physical shape of the first generation of Bratz dolls released on the market by

23  MGA in or about June 2001 was conceived by Margaret Leahy; and that Bryant's drawings used

24  standard fashion model poses, and thus were not novel or original. Further, the MGA parties'

25  supplemental responses to Interrogatory No. 27 include the MGA parties' contention that the

26  drawings Bryant completed in August and September of 1998 contained original expression

27  covered by copyright, but that subsequent modifications and versions of the drawings made by

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

9

Exhibit 17
Page 945

1    Bryant in 1999 and 2000 did not contain original expression. The MGA parties also identify

2    numerous individuals having knowledge of the facts supporting their contentions, and identify

3    documents that are relevant to the MGA parties' contentions.

4    B. Interrogatory About the Identity of Former Mattel Employees Hired by MGA (No. 41)

5            Interrogatory No. 41 asks the MGA parties to "IDENTIFY" all former Mattel employees

6    "who are now or have been employed" by MGA since January 1, 1999.  More specifically,

7    Interrogatory No. 41 asks the MGA parties to:

8            IDENTIFY all PERSONS who at any time have been employed by or under
             contract with MATTEL who are now or have been employed by or under contract
9            with YOU since January 1, 1999, and, for each such PERSON, state his or her
             name, date of hire or effective date of contract, the date on which YOU first had
10           contact with such PERSON regarding potential employment or contracting, the
             date(s) on which such PERSON was interviewed for possible employment or
11           contracting, each title (if any) such PERSON has held while employed by or
             under contract with YOU, and the date of termination (if applicable).
12

13   In their supplemental response, the MGA parties assert numerous objections, but also provide a

14   list of well over a hundred individuals with their position title and employment dates.

15           Mattel contends that the MGA parties' response is incomplete because it does not contain

16   the date of first contact regarding potential employment or contracting, as well as the interview

17   date for potential employment or contracting.

18           The MGA parties contend that during the meet and confer process, they agreed to

19   investigate whether the additional requested information was reasonably available.  The MGA

20   parties represent that they are in the process of looking for the requested information, and that

21   they will supplement their response if the information is reasonably available without undue

22   burden.

23           Mattel's motion to compel a further response to Interrogatory No. 41 is granted in part.

24   The requested information is clearly relevant to Mattel's claims, and the MGA parties do not

25   contend otherwise.  In particular, the date of first contact, interview date, start date and end date

26   for Bryant's employment are highly relevant, but are conspicuously absent from the MGA

27   parties' response.  The MGA parties shall provide the missing information for Bryant.  In

28
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

                                                                                          10

Exhibit 17
Page 946

1  addition, the MGA parties shall provide the interview dates for each of the individuals identified

2  in their supplemental responses.  The interview dates are potentially relevant to Mattel's claim

3  that the MGA parties induced former Mattel employees to abscond with Mattel's trade secrets.

4  However, the MGA parties are not required to provide the date of first contact for each individual

5  because the burden of producing such information outweighs its likely benefit, taking into

6  account the factors set forth in Rule 26(b)(2)(C), Fed.R.Civ.P.

7  C. Interrogatories re Allegedly Copied or Infringed Products (Nos. 43-44)

8      Interrogatory Nos. 43 and 44 request dates on which each "concept, design, product,

9  product packaging or other matter that YOU contend Mattel copied or infringed" was (1)

10  "conceived" and (2) "first fixed in any tangible medium of expression," and the identity of

11  persons with knowledge and documents that refer or relate to the foregoing.  In the responses, the

12  MGA parties state numerous objections, but also refer Mattel to MGA's response to Interrogatory

13  No. 3 of Mattel's First Set of Interrogatories re Claims of Unfair Competition.  The MGA parties

14  also respond that, in general, at MGA, product development is completed 7-8 months before the

15  first invoice date, although that time period could be reduced in certain situations to 5-6 months.

16      Mattel contends that the information it seeks is relevant to its defense against MGA's

17  claims that Mattel copied or infringed MGA's products.  One of Mattel's defenses is that "Mattel

18  was the one who came up with relevant matters first – before MGA – and that MGA was the one

19  who copied or stole from Mattel."  Mattel's Motion at p.23.  Mattel contends that the MGA

20  parties' responses to Interrogatory Nos. 43 and 44 are inadequate because the referenced

21  Interrogatory No. 3 requested different information, namely the dates on which the products were

22  first "disclosed to any PERSON not employed by MGA" and first "made available for sale."

23      In response to the instant motion to compel, the MGA parties represent that they are

24  assessing whether they can provide more specific information without undue hardship, and will

25  supplement their responses if such information is available.  MGA's Opposition at p.29.

26      Mattel's motion to compel further responses to Interrogatory Nos. 43 and 44 is granted.

27  The requested information is relevant to Mattel's defense against the MGA parties' claims that

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

11

Exhibit 17
Page 947

1   their products have been copied or infringed by certain Mattel products.  Although the MGA

2   parties served supplemental responses after filing their opposition brief, the supplemental

3   responses do not include the requested information.  The MGA parties have failed to establish

4   that the interrogatories are unduly burdensome.

5   D. Interrogatories About the Trade Dress MGA Claims Mattel Products Infringe (Nos. 48-50)

6        Interrogatory Nos. 48-50 are directed to the MGA parties' trade dress claims:

7        **Interrogatory No. 48**:  Separately IDENTIFY each trade dress that YOU
         contend MATTEL has copied, infringed or diluted or that is otherwise the
8        subject of YOUR claims, defenses or allegations in THIS ACTION.

9        **Interrogatory No. 49**:  For each trade dress identified in response to
         Interrogatory No. 48, separately and fully IDENTIFY each and every MATTEL
10       product, packaging or other matter that YOU contend copies, infringes or dilutes
         such trade dress, including without limitation by describing fully and separately,
11       for each such MATTEL product, packaging or other matter, each and every
         element of the claimed trade dress that YOU contend MATTEL has copied,
12       infringed or diluted.

13       **Interrogatory No. 50**:  For each trade dress identified in response to
         Interrogatory No. 48, separately and completely IDENTIFY all facts that support
14       YOUR contention that such trade dress is protectible, all DOCUMENTS that
         REFER OR RELATE to the foregoing and all PERSONS with knowledge of the
15       foregoing.

16       Mattel contends that these interrogatories seek core contentions underlying the MGA

17   parties' trade dress infringement claims and that the partial responses provided are inadequate

18   because they set forth only the "basic facts" without identifying a single product that MGA

19   alleges was infringed or any other details.  Mattel also contends that the responses are improper

20   insofar as the MGA parties state that their responses "may be incomplete" as the subject matter of

21   this interrogatory will be the source of expert testimony and an expert may identify additional

22   facts that support MGA's contentions.  Mattel contends that such a limitation would allow MGA

23   to sandbag Mattel by introducing new products into the litigation after fact discovery has closed.

24       As a preliminary matter, the MGA parties contend that Interrogatory Nos. 48-50 are

25   directed to a Phase 2 issue, and therefore, they reserve their right to supplement the responses in

26   Phase 2.  Nevertheless, the MGA parties contend that their responses provide Mattel with the

27   principal facts supporting their contentions in compliance with Rule 33.

28   
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)                                                                    12

Exhibit 17
Page 948

1    Mattel's motion to compel further responses to Interrogatory Nos. 48-50 is denied.  The
2    MGA parties are in substantial compliance with Rule 33, having identified numerous elements of
3    trade dress they contend Mattel has infringed.  More specifically, the MGA parties' responses
4    identify Mattel's "My Scene" fashion dolls and pet dolls as the Mattel products that infringe their
5    trade dress.  The MGA parties also set forth the principal facts supporting their contention that
6    their trade dress is protectible under the applicable trade dress legal principles, including that the
7    trade dress is aesthetic and non-functional, inherently distinctive, and has acquired secondary
8    meaning.  That the interrogatory responses include a reservation of rights to supplement during
9    expert discovery does not render the responses inherently improper or inadequate.  Mattel does
10   not contest that the identification of the elements and products subject to trade dress infringement
11   will be a subject of expert testimony.

12   E. Interrogatory About the Identity of MGA's Bank Accounts (No. 39)

13   Interrogatory No. 39 asks MGA to "IDENTIFY each and every bank or financial
14   institution account that REFERS OR RELATES TO YOU, including accounts in YOUR name or
15   for YOUR benefit, since January 1, 1999."  The MGA parties objected to this interrogatory as
16   seeking information "not relevant to the claims or defenses of any party to the action and not
17   reasonably calculated to lead to the discovery of admissible evidence.

18   Mattel contends that the information sought is discoverable because it may lead to direct
19   evidence of liability regarding Mattel's allegations of commercial bribery against MGA and
20   Larian.  More specifically, Mattel contends that the timing and amounts of payments made to
21   Bryant and to other then-Mattel employees from MGA's bank accounts would establish
22   commercial bribery and other tortious conduct.  Mattel also contends that the timing of such
23   payments would also be indicative of the timing of Bryant's first involvement with MGA.
24   Further, Mattel contends that the requested information is relevant to establish net worth for
25   purposes of calculating punitive damages.  Mattel also contends that the MGA parties' objection
26   based upon Rule 69(a), Fed.R.Civ.P., is without merit because the requested information is
27   independently relevant to many issues in the liability phase of trial, and is not just directed at

28
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

Exhibit 17
Page 949

1  seeking discovery in aid of a judgment or execution.

2         The MGA parties contend that Mattel is not entitled to the sweeping financial data sought

3  in Interrogatory No. 39.  The MGA parties are particularly concerned that Mattel will use the

4  information it obtains pursuant to Interrogatory No. 39 to launch abusive third-party discovery for

5  even more private financial information.  Further, the MGA parties contend that Mattel has

6  already received substantial financial information from MGA Entertainment, Inc. directly, and

7  has not shown how that information is insufficient.  More specifically, the MGA parties point out

8  that Mattel already has audited and unaudited quarterly and annual profit and loss statements;

9  audited and unaudited quarterly and annual statements; annual reports; various MGA financial

10  reports; various financial documents relating to Veronica Marlow; documents showing royalty

11  payments to Bryant; documents showing MGA's sales, returns and costs of good sold for each

12  month, by SKU, since 2001; documents showing MGA's promotional advertising and media

13  expenditures, including MGA's internal allocation of those expenditures by brand and/or product;

14  documents showing MGA's amortization and depreciation of certain capital assets and

15  expenditures; documents showing MGA's monthly general ledger entries aggregated by account,

16  including income and expense accounts, reserves and liabilities; and documents sufficient to

17  explain MGA's various accounts as presently and historically maintained in MGA's books and

18  records, as well as various nomenclature assigned to items, products, brands, sub-brands, and

19  profit centers.  MGA's Opposition at pp. 10-11.  Further, the MGA parties contend that MGA's

20  witness, Lisa Tonnu, has testified regarding payments to Mr. Bryant.

21         Mattel's motion to compel a further response to Interrogatory No. 39 is denied on the

22  grounds that the financial information sought is cumulative of other discovery already sought and

23  obtained by Mattel, as outlined above by the MGA parties.  Mattel has also sought and obtained

24  documents sufficient to identify each of Mr. Larian's bank accounts or financial institutions and

25  other banking relationships since January 1, 1999.  See Order Granting in Part and Denying in

26  Part Mattel's Motion to Compel Production of Documents by Isaac Larian; Denying Request for

27  Sanctions (Document Request No. 207).  Further, as Mattel acknowledges, Mattel has sought and

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

14

Exhibit 17
Page 950

1  obtained deposition testimony regarding payments to Mr. Larian, including the account to which

2  such payments were made.  <u>See</u> Order Granting in Part and Denying in Part Mattel's Motion to

3  Compel MGA to Produce Witnesses Pursuant to Third Notice of Deposition Under Rule 30(b)(6).

4  In light of the financial information discovery Mattel has already obtained, Interrogatory No. 39 is

5  unjustified, taking into consideration all of the factors set forth in Rule 26(b)(2)(C), Fed.R.Civ.P.

6  <u>F. Contention Interrogatories (Nos. 30-38 and 42)</u>

7      Mattel served several contention interrogatories on several additional topics.  The

8  remaining contention interrogatories at issue are set forth below.

9  **Interrogatory No. 30**: State all facts that support YOUR contention, if YOU so
   contend, that, assuming BRYANT assigned rights in any BRATZ INVENTION
10  to MATTEL pursuant to the INVENTIONS AGREEMENT, MGA is entitled to
   priority over and/or has superior rights to MATTEL as to such BRATZ
11  INVENTION, and IDENTIFY all PERSONS with knowledge of such facts and
   all DOCUMENTS that REFER OR RELATE TO such facts.

12

13  **Interrogatory No. 31**: State all facts that support YOUR contention, if YOU so
   contend, that the INVENTIONS AGREEMENT is not valid and enforceable, and
   IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS
14  that REFER OR RELATE TO such facts.

15  **Interrogatory No. 32**: State all facts that support YOUR contention, if YOU so
   contend, that MATTEL is not or would not be entitled to injunctive relief as
16  requested in its COMPLAINT and/or COUNTERCLAIMS if it is not ultimately
   determined that MATTEL owns one or more BRATZ INVENTIONS, and
17  IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS
   that REFER OR RELATE TO such facts.

18

19  **Interrogatory No. 33**: State all facts that support YOUR contention, if YOU so
   contend, that MATTEL is not entitled to an award of punitive or exemplary
   damages against YOU, and IDENTIFY all PERSONS with knowledge of such
20  facts and all DOCUMENTS that REFER OR RELATE TO such facts.

21  **Interrogatory No. 34**: State all facts that support YOUR contention, if YOU so
   contend, that YOU did not intentionally interfere with the INVENTIONS
22  AGREEMENT when BRYANT purported to TRANSFER and MGA purported
   to ACQUIRE rights to BRATZ, and IDENTIFY all PERSONS with knowledge
23  of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

24  **Interrogatory No. 35**: State all facts that support YOUR contention, if YOU so
   contend, that YOU did not aid or abet any breach of fiduciary duty or duty of
25  loyalty owed by BRYANT to MATTEL when BRYANT performed work or
   services with or for MGA while BRYANT was employed by MATTEL, and
26  IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS
   that REFER OR RELATE TO such facts.

27

28  **Interrogatory No. 36**: State all facts that support YOUR contention, if YOU so

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

15

Exhibit 17
Page 951

contend, that YOU acted with an innocent state of mind or reasonably believed that MATTEL did not own any rights in any BRATZ INVENTION when Bryant purported to TRANSFER and MGA purported to ACQUIRE rights to BRATZ, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

**Interrogatory No. 37:** State all facts that support YOUR contention, if YOU so contend, that BRYANT did not breach the INVENTIONS AGREEMENT when BRYANT purported to TRANSFER right to BRATZ to MGA, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

**Interrogatory No. 38:** State all facts that support YOUR contention, if YOU so contend, that BRYANT did not breach BRYANT's duty of loyalty or fiduciary duties to MATTEL when BRYANT performed work or services with or for MGA while BRYANT was employed by MATTEL, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

**Interrogatory No. 42:** State all facts that support YOUR contention, if YOU so contend, that any BRATZ DOLLS are not BASED ON BRATZ DESIGNS created by BRYANT on or before October 19, 2000, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

Mattel contends that each of these interrogatories seeks facts relating to key issues in this case, including MGA's contentions, if any, regarding the priority of Mattel's rights in Bratz vis-à-vis MGA; how Bryant's Inventions Agreement with Mattel, Bryant's assignment of rights to Bratz inventions to MGA, and Bryant's services with or for MGA while employed by Mattel affect who owns the rights to Bratz inventions; Mattel's alleged entitlement to punitive damages and other relief; MGA's purported innocent state of mind; MGA's alleged intentional interference with the Inventions Agreement; MGA's alleged aiding and abetting of Bryant's breach of fiduciary duty and duty of loyalty to Mattel; why the Bratz dolls purportedly are not based on designs Bryant created during his Mattel employment; and why the trade dress MGA contends Mattel infringed is protectible. Mattel contends that the MGA parties cannot show burden sufficient to outweigh Mattel's need for the information sought.

In addition to the objections discussed in connection with Interrogatory Nos. 27-29, the MGA parties contend that they have given sufficient responses to Interrogatory Nos. 30 and 42.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

16

Exhibit 17
Page 952

1   As for Interrogatory Nos. 31-38, the MGA parties contend that the interrogatories improperly

2   assume that Mattel owns Bryant's original idea for Bratz and ask the MGA parties to explain why

3   they should not be punished for developing Bryant's ideas.  Nevertheless, the MGA parties

4   represent that they responded to the interrogatories in good faith by providing the principal facts

5   supporting their contentions, and therefore are in compliance with Rule 33.

6          Mattel's motion to compel a further response to Interrogatory No. 30 is denied.  Like

7   Interrogatory Nos. 27-29, the definition of "Bratz Invention" in No. 30, combined with the

8   request for all facts, the identity of all persons and all supporting documents, render the

9   interrogatory overbroad and unduly burdensome.  In any event, the MGA parties have provided a

10   reasonably sufficient response.  The MGA parties' supplemental response includes their

11   contention that the "Inventions Agreement" did not apply to design patent rights.  Further, the

12   MGA parties contend that (a) the pre-October 21, 2000 drawings of characters that Bryant named

13   Bratz were never reduced to practice; (b) under 35 U.S.C. §171, design patents are available for

14   three-dimensional objections, not drawings or two-dimensional flat art of the sort that Bryant

15   sketched in 1998; (c) Bryant was not a sculptor, and any direct translation of his pre-October 21,

16   2000 two-dimensional flat art into a three-dimensional form for use as a fashion doll sculpt would

17   have produced shapes that were different from the actual shape of the final three-dimensional

18   Bratz sculpt used in manufacturing the first generation of Bratz dolls released on the market by

19   MGA in or about June 2001; (d) the final physical shape of the first generation of Bratz dolls,

20   released on the market by MGA in or about June 2001 was "conceived of" and "reduced to

21   practice" by Margaret Leahy, working on behalf of MGA, after October 20, 2000 and before June

22   1, 2001, along with other MGA agents and employees; (e) Bryant's drawings used standard

23   fashion model poses, and thus were not novel or original; and (f) the "dummy" brought by Bryant

24   to his meeting with MGA on September 1, 2000, was merely an assemblage of random pre-

25   existing doll parts that was never intended to, and did not, provide an accurate representation of

26   what became the Bratz sculpt.  Based on the foregoing, the MGA parties contend that, assuming

27   arguendo that both Bryant assigned his 1998 drawings to Mattel and that such drawings were the

28

1    conception of what could have been developed into a tangible item that would have qualified for

2    protection under a design patent, such conception would not have covered the shape of the final

3    Bratz sculpt utilized in the first generation of Bratz dolls released to market in or about June 2001,

4    nor any subsequent three-dimensional Bratz shape.  The MGA parties' supplemental responses to

5    Interrogatory No. 30 also address copyright protection and trademark protection, and identify

6    persons with knowledge and documents relevant to the MGA parties' contentions.

7            Mattel's motion to compel further responses to Interrogatory Nos. 31-37 and 42 is denied.

8    The MGA parties are in substantial compliance with Rule 33, having set forth sufficient facts,

9    identified persons with knowledge, and identified documents to support their contentions.  To

10   require any further information would be unduly burdensome, taking into consideration all of the

11   factors set forth in Rule 26(b)(2)(C), Fed.R.Civ.P.

12           Mattel's motion to compel a further response to Interrogatory No. 38 is granted, however,

13   because the supplemental response does not identify supporting documents.

14   G. Interrogatories About MGA's Searches for Documents (40 and 47)

15           Mattel has propounded two interrogatories to the MGA parties about their searches for

16   documents and storage devices containing evidence of early work on Bratz:

17           **Interrogatory No. 40**:  IDENTIFY each and every STORAGE DEVICE that
             YOU have used for any purpose which contains or contained DIGITAL
18           INFORMATION that REFERS OR RELATES TO BRATZ and/or ANGEL prior
             to January 1, 2002.

19

20           **Interrogatory No. 47**:  IDENTIFY each and every SOURCE OF
             INFORMATION from which YOU have COLLECTED DOCUMENTS in THIS
             ACTION that REFER OR RELATE TO BRATZ and that also REFER OR
21           RELATE TO the time period prior to February 28, 2001 (regardless of when such
             DOCUMENT was, in whole or part, created, drafted, generated, sent, received or
22           transmitted).

23   In response to Interrogatory No. 40, the MGA parties described the computer systems that existed

24   worldwide at MGA prior to January 1, 2002.  The MGA parties did not provide any substantive

25   response to No. 47.

26           Mattel contends that the interrogatories are designed to test MGA's productions in this

27   litigation and obtain additional responsive documents and information.  Further, Mattel contends

28

1   that there is legal precedent allowing access to a party's information storage systems where the

2   party is shown to have improperly withheld relevant documents or information.  Mattel contends

3   that Interrogatory No. 40 seeks legitimate discovery regarding the identification of MGA's

4   storage devices because Mattel may have a right to access such storage devices.  In particular,

5   Mattel contends that it is entitled to, but the MGA parties have failed to provide, an identification

6   of specific storage devices, the individuals who have used them, the persons who currently

7   possess them, and the dates on which they were destroyed or copied, if any.  Mattel contends that

8   the information requested in Interrogatory No. 40 is necessary to determine whether MGA has

9   withheld responsive documents and to enable Mattel to obtain such documents.

10          Similarly, Mattel contends that Interrogatory No. 47 seeks relevant information regarding

11   the sources of information – i.e. the media – from which the MGA parties have collected

12   documents relating to Bratz and the period prior to February 28, 2001.  Mattel contends that the

13   information it seeks will enable it to determine what sources the MGA parties have examined and

14   have not examined to produce documents in the case.

15          During the meet and confer process, the MGA parties proposed that the parties exchange

16   "source logs" regarding the entirety of their productions in lieu of MGA's responses to Nos. 40

17   and 47.  The "source logs" would provide each document's Bates number, the identity of the

18   individual associated with or who maintained the document and the location where the document

19   was found.  Mattel contends that the "source log" proposal is unnecessary because Mattel is only

20   seeking information about key early Bratz documents, not every document produced in the case.

21   Mattel also contends that the "source log" proposal is unacceptable because the "source log,"

22   would not reveal sources that contain early Bratz documents that MGA has not produced

23   documents from, or where MGA looked for documents, as well as where MGA failed to look.

24          The MGA parties contend that the interrogatories assume, without any factual support,

25   that the MGA parties are aware of the existence of Bratz documents on their computer systems

26   that relate to the time period prior to January 1, 2002, and have not produced those documents.

27   The MGA parties contend that Mattel's speculation is not a basis to compel further responses to

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

19

Exhibit 17
Page 955

1    Interrogatory Nos. 40 and 47.  The MGA parties emphasize that they have already produced more

2    than 3.7 million pages of documents, whereas Mattel has only produced a few hundred thousand

3    pages of documents.  Furthermore, the MGA parties contend that these interrogatories are

4    cumulative of deposition testimony Mattel has previously sought and obtained regarding the

5    collection of documents produced in this action.  The MGA parties also represent that they have

6    agreed to provide additional testimony on this topic.

7        Mattel's motion to compel further responses to Interrogatory Nos. 40 and 47 is granted.

8    The interrogatories seek relevant information about the identity of each storage device that

9    contains or contained information referring or relating to Bratz prior to January 1, 2002, and other

10   sources of information from which the MGA parties collected documents in this action that refer

11   or relate to Bratz and the time period prior to February 28, 2001.  The "source log" information is

12   not a reasonable substitute for the information requested in the interrogatories because it would

13   not necessarily identify all storage devices used by the MGA parties during the relevant period.

14   The interrogatories are narrowly tailored to a key subject, namely early Bratz documents and

15   other information.  The MGA parties have failed to establish that the interrogatories are unduly

16   burdensome.  Nor are the interrogatories cumulative of other discovery propounded by Mattel.

17   Interrogatory Nos. 40 and 47 have the potential of imparting more detailed information than a

18   witness might be able to recall in the course of a deposition.  Furthermore, the information sought

19   in Interrogatory Nos. 40 and 47 will enable Mattel to question MGA's witnesses more effectively.

20   H. Interrogatory Regarding MGA's Substitution of Counsel (No. 46)

21        Interrogatory No. 46 seeks facts regarding MGA's substitution of counsel as follows:

22   **Interrogatory No. 46**:  Without disclosing the content of communications which
     are protected by the attorney-client privilege, state fully and in detail all facts

23   which REFER OR RELATE TO any dispute regarding THIS ACTION between,
     on the one hand, MGA, LARIAN, BRYANT and/or MACHADO and, on the

24   other hand, O'MELVENY and/or CHRISTENSEN, including but not limited to
     any and all disputes which were or have been asserted as a basis for, or which

25   underlie, contributed to or were a factor in, the withdrawal, termination and/or
     substitution of O'MELVENY and/or CHRISTENSEN as counsel of record in this

26   ACTION, and IDENTIFY all PERSONS with knowledge of such facts and all
     DOCUMENTS that REFER OR RELATE TO such facts.

27

28   Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)                                                              20

Exhibit 17
Page 956

1    Mattel contends that the interrogatory is limited to facts, and does not require the disclosure of

2    information protected by either the attorney-client privilege or the work product doctrine.

3    Further, Mattel contends that the requested facts are relevant and discoverable.  Mattel reasons

4    that O'Melveny cited to California Rule of Professional Conduct 3-700(c) as the basis for its

5    motion to withdraw, and that Rule 3-700(c) sets forth several grounds for withdrawal that could

6    be relevant to the case.  For example, Mattel contends that O'Melveny may have withdrawn

7    because MGA sought to provide false testimony, or was seeking "to pursue an illegal course of

8    conduct" or "insist[ed] that counsel pursue a course of conduct that is illegal or prohibited under

9    the State Bar Act."  Mattel's Motion at p. 38.

10          The MGA parties contend that Interrogatory No. 46 is predicated upon an imagined

11   "dispute" with former counsel, and moreover, that the information sought is protected by the

12   work product doctrine and/or attorney-client privilege.  The MGA parties reason that even if

13   Mattel is correct that there was some sort of dispute, either (1) the dispute does not relate to the

14   claims and defenses in this action, and therefore the requested information is irrelevant and

15   outside the proper scope of discovery, or (2) the dispute does relate to the claims or defenses in

16   this action, such that revelation of the substance of the dispute would necessarily reveal the

17   thought processes of trial counsel and the communication of those thought processes to the MGA

18   parties.

19          Mattel's motion to compel is denied as to Request No. 46.  The interrogatory is not

20   tethered to any particular claim or defense.  Nor is the interrogatory directed at uncovering the

21   factual events giving rise to any claim or defense.  Instead, the interrogatory assumes that there

22   was a "dispute" with former counsel involving false testimony, illegal conduct, or attorney

23   misconduct; that this "dispute" led to the withdrawal, termination and/or substitution of counsel;

24   and that this "dispute" potentially relates to a claim or defense in this suit.  There is no evidence,

25   however, to substantiate such a series of assumptions.  Although the publicly available

26   information suggests that there was a breakdown of the attorney-client relationship, this evidence,

27   without more, is insufficient to justify Interrogatory No. 46 because the burden or expense of the

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

21

Exhibit 17
Page 957

1  proposed discovery outweighs its likely benefit under Rule 26(b)(2)(C), Fed.R.Civ.P.

2  Furthermore, the interrogatory is grossly overbroad in seeking information about "any and all

3  disputes" with former counsel, regardless of whether such disputes relate to a claim or defense in

4  the case.

5      The interrogatory is also objectionable because it intrudes upon MGA's relationship with

6  former counsel, and thus necessarily intrudes upon the protections afforded by the attorney-client

7  privilege and work product doctrine. Mattel's rank speculation that there were attorney-client

8  discussions of wrongdoing is insufficient to vitiate the attorney-client privilege. See e.g. In re

9  Napster, Inc. Copyright Litig., 479 F.3d 1078, 1090 (9th Cir. 2007). Nor have the MGA parties

10 waived the attorney-client privilege. Although the MGA parties discussed the reasons for their

11 substitution of counsel with the press, there has been no showing that the information they

12 disclosed revealed the substance of an attorney-client privileged communication.

13                                    V. CONCLUSION

14     For the reasons set forth above, it is hereby ordered as follows:

15     1. Mattel's motion to compel is granted as to Interrogatory Nos. 38, 40, 41 (as narrowed),

16 43-44 and 47. The MGA parties shall serve supplemental responses to said interrogatories no

17 later than February 26, 2008.

18     2. Mattel's motion to compel is denied as to Interrogatory Nos. 27-37, 39, 42, 46 and 48-

19 50.

20 Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery Master,

21 Mattel shall file this Order with the Clerk of Court forthwith.

22

23 Dated: February 15, 2008

24                                    HON. EDWARD A. INFANTE (Ret.)
                                      Discovery Master
25

26

27

28
Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                        22

Exhibit 17
Page 958

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on February 15, 2008, I served the attached ORDER GRANTING IN PART AND DENYING IN PART MATTEL'S MOTION TO COMPEL RESPONSES TO INTERROGATORY NOS. 27-44 AND 46-50 BY THE MGA PARTIES in the within action by email addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| Matthew M. Werdegar, Esq. | Keker & Van Nest | mwerdegar@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| Audrey Walton-Hadlock, Esq. | Keker & Van Nest | awalton-hadlock@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Thomas J. Nolan, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tnolan@skadden.com |
| Raoul D. Kennedy, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | rkennedy@skadden.com |
| Amy S. Park, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | apark@skadden.com |
| Harriet S. Posner, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | hposner@skadden.com |
| Carl Alan Roth, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | croth@skadden.com |
| Timothy A. Miller, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tmiller@skadden.com |
| Marcus R. Mumford, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Mmumford@skadden.com |
| Paul M. Eckles, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Paul.eckles@skadden.com |
| Robert J. Herrington, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Robert.herrington@skadden.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on February 15, 2008, at San Francisco, California.

Sandra Chan

**Exhibit 17**
**Page 959**

# Miscellaneous Filings (Other Documents)

2:04-cv-09049-SGL-RNB Carter Bryant v. Mattel Inc

(RNBx), AO279, DISCOVERY, PROTORD, RELATED-G

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

### Notice of Electronic Filing

The following transaction was entered by Proctor, Brett on 2/19/2008 at 2:56 PM PST and filed on 2/19/2008

| | |
|---|---|
| **Case Name:** | Carter Bryant v. Mattel Inc |
| **Case Number:** | 2:04-cv-9049 |
| **Filer:** | Mattel Inc |
| **Document Number:** | 2266 |

**Docket Text:**
Order Granting in Part and Denying in Part Mattel's Motion to Compel Responses to Interrogatory Nos. 27-44 and 46-50 by the MGA Parties filed by Defendant Mattel Inc re: MOTION to Compel Responses to Interrogatories by the MGA Parties *(Nos. 27-44 and 46-50)*[1317] (Proctor, Brett)

**2:04-cv-9049 Notice has been electronically mailed to:**

Juan Pablo Alban     juanpabloalban@quinnemanuel.com

Timothy L Alger     timalger@quinnemanuel.com

Christa M Anderson     canderson@kvn.com

Linda M Burrow     burrow@caldwell-leslie.com

Michelle M Campana     michelle.campana@skadden.com

Jon D Corey     joncorey@quinnemanuel.com

Alexander H Cote     acote@obsklaw.com

Leah Chava Gershon     leah@spertuslaw.com

Alan Neil Goldberg     agoldberg@sgattys.com

Melissa Grant     melissagrant@quinnemanuel.com

Emil W Herich     eherich@kmwlaw.com

Diane C Hutnyan     dianehutnyan@quinnemanuel.com, andreahoeven@quinnemanuel.com

**Exhibit 17**

John W Keker    jkeker@kvn.com, DRoberts@kvn.com, efiling@kvn.com

Raoul D Kennedy    rkennedy@skadden.com

Alisa Morgenthaler Lever    amorgenthaler@chrisglase.com

Larry W McFarland    lmcfarland@kmwlaw.com

Nathan Meyer    nmeyer@kayescholer.com, dclow@kayescholer.com

Cyrus S Naim    cyrusnaim@quinnemanuel.com

Thomas J Nolan    tnolan@skadden.com, carl.roth@skadden.com, marcus.mumford@skadden.com

Mark E Overland    moverland@obsklaw.com

Michael H Page    mhp@kvn.com

Kenneth A Plevan    kenneth.plevan@skadden.com, drogosa@skadden.com, sumclaug@skadden.com

Brett Dylan Proctor    dylanproctor@quinnemanuel.com

John B Quinn    johnquinn@quinnemanuel.com

David C Scheper    dscheper@obsklaw.com, feseroma@obsklaw.com

Oleg Stolyar    alexstolyar@quinnemanuel.com

John Elliot Trinidad    jtrinidad@kvn.com, efiling@kvn.com, yjayasuriya@kvn.com

Audrey Walton-Hadlock    awaltonhadlock@kvn.com

Matthew M Werdegar    mmw@kvn.com

Michael T Zeller    michaelzeller@quinnemanuel.com

**2:04-cv-9049 Notice has been delivered by First Class U. S. Mail or by fax to: :**

Kien C Tiet
Stern and Goldberg
6345 Balboa Boulevard, Suite 200
Encino, CA 91316

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**C:\Documents and Settings\laurakinsey\Desktop\Order re Motion to Compel.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=2/19/2008] [FileNumber=5381686-0]
[643f3427701adad1bfb3880576efb3c91150eb5f693240ae485529023da3f2864add
e9800830a44a4c86425534ead16e2d9b58cbceeb1aba019aa1836347bcbd]]

# Exhibit 18

Case 2:04-cv-09049-DOC-RNB   Document 6896-8   Filed 09/30/09   Page 28 of 44   Page ID
#:220153
Case 2:04-cv-09049-SGL-RNB   Document 5565   Filed 05/21/2009   Page 1 of 15

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES -- GENERAL

Case No.    CV 04-09049 SGL(RNBx)                          Date: May 21, 2009
Title:      MATTEL, INC. V. MGA ENTERTAINMENT, INC., et al.
========================================================================
PRESENT:  HONORABLE STEPHEN G. LARSON, U.S. DISTRICT JUDGE

          Cindy Sasse                          None Present
          Courtroom Deputy                     Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:     ATTORNEYS PRESENT FOR DEFENDANTS:

None Present                          None Present

PROCEEDINGS:      ORDER DENYING MOTION TO MODIFY DISCOVERY MASTER ORDER
                  NO. 11 (DOCKET #5185)

                  ORDER GRANTING MOTION FOR LEAVE TO FILE A THIRD AMENDED
                  ANSWER AND COUNTERCLAIMS (DOCKET #5143)

                  ORDER DENYING EX PARTE APPLICATION FOR STAY PENDING
                  APPEAL (DOCKET #5396)

                  ORDER DENYING EX PARTE APPLICATION RE DISCLOSURE OF 2009
                  PRODUCT LINE INFORMATION (DOCKET #5425)

                  ORDER RE EXPIRATION OF TEMPORARY RECEIVERSHIP AND ORDER
                  APPOINTING MGA MONITOR

                  ORDER IMPOSING LIMITED AND TEMPORARY STAY OF PHASE 2 AND
                  REQUIRING MANDATORY SETTLEMENT CONFERENCE

     These matters were heard on May 18, 2009.

MINUTES FORM 90                                    Initials of Deputy Clerk __cls_____
CIVIL -- GEN                        1              Time: 03/02

Exhibit 18
Page 962

## I. MOTION TO MODIFY DISCOVERY MASTER ORDER NO. 11

Mattel moves to overrule that portion of the Discovery Master's Order No. 11 ("Order No. 11") that concludes that witnesses Pablo Vargas San Jose ("Vargas") and Mariana Trueba ("Trueba") (collectively, "the witnesses") are not "managing agents" within the scope of Fed. R. Civ. P. 30(b)(1). The Court has reviewed Order No. 11, Mattel's Motion, the MGA parties' opposition thereto, and Mattel's reply. Applying the "clearly erroneous or contrary to law" standard of review that all parties agree is applicable here, the Court **DENIES** Mattel's Motion.

In Order No. 11, the Discovery Master acknowledged the so-called Sugarhill factors, see Sugarhill Records Ltd. v. Motown Record Corp., 105 F.R.D. 166, 170 (D.C.N.Y. 1985), which the parties agreed applied. After an ancillary discussion that concluded the witnesses were not managing agents as measured by a test similar to the Sugarhill factors, the Discovery Master either applied, or explained why his conclusion would not change if he did apply, the Sugarhill factors.[1] Those factors are:

> 1) [W]hether the individual is invested with general powers allowing him to exercise judgment and discretion in corporate matters; 2) whether the individual can be relied upon to give testimony, at his employer's request, in response to the demand of the examining party; 3) whether any person or persons are employed by the corporate employer in positions of higher authority than the individual designated in the area regarding which information is sought by the examination; 4) the general responsibilities of the individual "respecting the matters involved in the litigation," . . . and 5) whether the individual can be expected to identify with the interests of the corporation.

105 F.R.D. at 170 (internal citation omitted). The Discovery Master found that although the second and fourth factors favor designating the witnesses as managing agents, the first, third, and fifth do not.

As to the first factor, Mattel argues that the Discovery Master should have focused more on

---

[1] In the relevant portion of Order No. 11, the Discovery Master first discussed, and then rejected for reasons set forth therein, an argument advanced by Mattel that the most important Sugarhill factor was the fifth factor, the so-called "loyalty factor." He next applied an alternative test articulated in Libbey Glass, Inc. v. Oneida, Ltd., 197 F.R.D. 342, 350 (N.D. Ohio 1999), which was originally adopted by the D.C. Circuit. See id. (quoting Founding Church of Scientology of Washington, D.C., Inc. v. Webster, 802 F.2d 1448, 1452 (D.C. Cir.1986)). That test is set forth in Order No. 11 at 31, and is not repeated here. It focuses on the character of the employee's control, the convergence of interest of the employee and the corporation, and the employee's area of expertise in relation to others associated with the corporation. Libbey Glass, 197 F.R.D. at 350. This test appears to the Court to implicate, to varying degrees, all of the Sugarhill factors except the second. Because the two tests are similar, and because neither is controlling, adoption of either could not be said to be contrary to law. Notwithstanding language that may be so read, the Court does not accept the notion that Order No. 11 rejected outright the Sugarhill factors. The Court does so based on the acknowledgment that the parties agreed those factors were applicable, the similarity between the two alternative tests, and the Discovery Master's articulation regarding each Sugarhill factor. See Order No. 11 at 29-36.

Exhibit 18
Page 963

whether the witnesses were managing agents as to the particular matters at issue in the lawsuit rather than their general powers and that, in any event, the relevant time period to measure managing agent status is not at the time of deposition but is rather at the time of the events giving rise to the lawsuit.  Although these arguments find some support, the Discovery Master's conclusion regarding this first Sugarhill factor (and its Libbey Glass analog) is not contrary to law. The first Sugarhill factor is clearly concerned with an employee's general power; the fourth factor, which the Discovery Master found in favor of Mattel, focuses on the witnesses' responsibilities regarding matters involved in the litigation.  The cases cited by Mattel support its timing argument; however, cases cited by the MGA parties establish that other cases favor a contrary position. Neither side's authority is controlling, and the Court therefore concludes the position adopted by the Discovery Master is not contrary to law.

As to the third factor, Mattel argues that it was clear error for the Discovery Master to conclude that Kuemmerle, to whom Vargas reported directly and to whom Trueba's supervisor reported, could provide substitute testimony to them is clear error.  Mattel's ultimate point is that no one can testify more accurately and more on point than can the two witnesses regarding their alleged trade secret theft.  Again, this is not an invalid point.  Indeed, it is possible that if such theft occurred (the MGA parties deny that it did), then the witnesses did not proceed at the behest of the MGA parties and instead acted on their own accord (the MGA parties alternatively contend).  The fact is that if the MGA parties' alternative contention is true, then the witnesses' testimony regarding any theft would not be on behalf of MGA at all.  Who can or cannot testify about these events that may or may not have occurred on behalf of any MGA party -- let alone who can testify best -- is far from clear.  This area of inquiry is fraught with uncertainty.  The Discovery Master's conclusion one way or another on this issue, therefore, cannot be said to be clear error.  See Wolpin v. Philip Morris Inc., 189 F.R.D. 418, 422 (C.D. Cal.1999) ("To conclude that a magistrate judge's decision is clearly erroneous, the District Court must arrive at a definite and firm conviction that a mistake has been committed.").

As to the fifth factor, it was not clearly erroneous for the Discovery Master to conclude that MGA Mexico's interests and the witnesses' interests are at odds.  The witnesses are currently employed by MGA Mexico, weighing in favor of a finding of alignment, but they have also been subjected to criminal investigations regarding the allegations asserted in this lawsuit, and they have separately retained counsel to represent their interests.  Additionally, the MGA parties have maintained that if any trade secret theft occurred, it occurred without their knowledge or consent. These facts support the Discovery Master's finding.

Weighing these factors, and taking into account the mixed burden of proof, as the Discovery Master did, the Court cannot find that the Discovery Master's conclusion was clearly erroneous or contrary to law, and the Court therefore **DENIES** Mattel's Motion (docket #5185).

## II. MOTION FOR LEAVE TO FILE THIRD AMENDED ANSWER AND COUNTERCLAIMS

Mattel has filed a motion seeking leave to file its proposed Third Amended Answer and

Exhibit 18
Page 964

Counterclaims ("TAAC"). In substance, the TAAC adds one additional claim and a number of additional allegations. First, Mattel asserts an additional claim pursuant to California's version of the Uniform Fraudulent Transfers Act, found at Cal. Civ. Code §§ 3439 et seq. Second, Mattel avers facts that fall into the following broad categories: (1) Allegations regarding certain 2008 financial transactions that were the subject of the Forensic Auditor's Report ("the Wachovia/Omni 808 transactions"); (2) allegations regarding acts of commercial bribery relating to three Mattel seamstresses who were employed by MGA contractor Veronica Marlow; (3) allegations regarding evidence tampering, including the alleged destruction by Isaac Larian's brother Farhad of boxes of documents relating to the development of Bratz and Farhad's deletion of emails from a USB device; (4) allegations that Isaac Larian and MGA perjured themselves during their Phase 1 testimony; and (5) allegations setting forth additional predicate acts of racketeering activities, including money laundering, concealing assets, engaging in monetary transactions involving property derived from unlawful activity, commercial bribery, destruction of evidence, and obstruction of justice.

The parties, quite understandably, disagree on whether the Fed. R. Civ. P. 15(a) liberal standard or the Rule 16(b) "good cause" standard applies to the present motion. Upon the lifting of the stay on Phase 2 discovery, the Court set new dates for Phase 2 proceedings, but neglected to set a deadline for amending the pleadings related to Phase 2, leading to the present dispute. The Court now sets that deadline for three months prior to the discovery cutoff date of December 11, 2009, or September 11, 2009. Accordingly, the present motion is governed by the standard for amendments to the pleadings that are sought prior to the deadline set in the Court's Scheduling Order, which is set forth in Rule 15(a).

Pursuant to Rule 15(a), leave to amend a pleading is granted "freely . . . when justice so requires." Id.; See Foman v. Davis, 371 U.S. 178, 182 (1962). However, leave need not be granted where the proposed amendment "(1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." AmerisourceBergen Corp. v. Dialysist West, Inc., 465 F.3d 946, 951 (9th Cir. 2006).

Allegations relating to events occurring after the filing of the Second Amended Answer and Counterclaims ("SAAC") are governed not by the Rule 15(a) standard; rather, those amendments are governed by the Rule 15(d) standard. Rule 15(d) provides:

> On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense. The court may order that the opposing party plead to the supplemental pleading within a specified time.

Id. This standard, like the Rule 15(a) standard, is liberal, and leave to file a supplemental pleading is favored. Planned Parenthood of S. Ariz. v. Neely, 130 F.3d 400, 402 (9th Cir.1997). It should not, however, be used to introduce a separate, distinct, and new cause of action. Id. The goal of

MINUTES FORM 90
CIVIL -- GEN                          4

Initials of Deputy Clerk __cls_____
Time: 03/02

**Exhibit 18**
**Page 965**

Rule 15(d) is to promote judicial efficiency, permitting "a court to award complete relief, or more nearly complete relief, in one action, and to avoid the cost, delay and waste of separate actions which must be separately tried and prosecuted." Keith v. Volpe, 858 F.2d 467, 473 (9th Cir.1988) (internal quotation marks and citation omitted).

The MGA parties contend the perjury allegations should not be permitted because there can be no present RICO injury (because Mattel prevailed in Phase 1) and/or no judgment has yet been entered and upheld on appeal. Additionally, they contend that perjury is not a predicate act of racketeering activity. The Court disagrees. Case law makes clear that what Mattel must show is injury as a result of the pattern of racketeering activity; Mattel need not prove that each and every predicate act itself caused harm. Corley v. Rosewood Care Center, Inc. of Peoria, 388 F.3d 990, 1004 (7th Cir. 2004) (improper for district court to hold that a RICO plaintiff be injured by every predicate act); Virden v. Graphics One, 623 F.Supp. 1417, 1425 (C.D. Cal. 1985) (a RICO plaintiff must be harmed by either a predicate act or the pattern of racketeering activity). As to the propriety of perjury as a predicate act, although perjury may not always rise to the level of a RICO predicate act, perjury in the course of a judicial proceeding, as is alleged here, is a predicate act of racketeering activity because it is obstruction of justice. See Streck v. Peters, 855 F.Supp. 1156, 1162 (D. Hawai'i,1994) (perjury during federal court proceedings is a RICO predicate act because it is indictable under the federal obstruction of justice statute).[2]

The MGA parties also that the allegations regarding the theft of trade secrets are improper because Mattel failed to allege them in the SAAC although the claims were known to them at that time. Mattel counters that, in light of the Rule 8(a) pleading standards, the Castilla allegations are already within the scope of the SAAC. See SAAC ¶¶ 79, 89-93. All that is required by Fed. R. Civ. P. 8(a) is a "a short and plain statement of the claim showing that the pleader is entitled to relief." The details are filled in by discovery, as has already occurred in this case, including Mr. Castilla's deposition. Accordingly, as the Court finds that these allegations are already within the scope of

---

[2] The MGA parties contend that this case is "unhelpful" to Mattel on this point: "The Streck court, in *dismissing* a RICO claim, simply noted that 'acts of perjury may, *under the appropriate circumstances*, constitute RICO predicate acts,' but did not discuss what those circumstances might be." Opp. at 12 n.11 (emphasis in original) (citing Streck, 855 F. Supp. at 1162). The quotation from the Streck case is correct, and the Streck court did indeed dismiss the RICO claim (or, more precisely, granted summary judgment in favor of defendants as to the RICO claim); however, the MGA parties incorrectly state that the Streck case did not discuss under what circumstances perjury might constitute the RICO predicate act of obstruction of justice. The four sentences following the quoted portion clearly do exactly what the MGA parties claim the Streck court did not: Specifically, the Streck court distinguishes between perjury occurring in state-court proceedings (which it notes is *not* a RICO predicate act) and perjury occurring in federal-court proceedings (which it notes *is* a RICO predicate act):

[T]his Court finds that the acts of perjury which the defendants in the case at bar are alleged to have committed do not constitute RICO predicate acts. [The obstruction statute] applies only to perjury offered in federal court proceedings. Here, all of the alleged perjury took place in state court, not federal court. Thus, [the obstruction statute] is not implicated by Streck's perjury allegations.

Id. (internal citations and footnote omitted). Thus, the Streck case's relevance to the present issue is unmistakable.

MINUTES FORM 90                                        Initials of Deputy Clerk __cls_____
CIVIL -- GEN                          5                 Time: 03/02

Exhibit 18
Page 966

the SAAC, the Court finds that the proposed amendments are not untimely; instead, they are in the nature of "clean up" amendments that succinctly state existing issues fairly stated in the SAAC when measured by the requirements of Rule 8(a).

The amendments setting forth additional copyright registrations come as a result of the jury's Phase 1 verdict.  Although in most respects the issue of copyright infringement was resolved in Phase 1, allegations regarding criminal copyright infringement, cast in the form of RICO predicate acts, are relevant to Phase 2.

The MGA parties correctly point out, and the Court is fully aware, that the proposed amendments will dramatically expand the scope of the present litigation.  Admittedly, the allegations set forth in the SAAC are already varied enough in nature and broad enough in scope to strain the Court's resources and to challenge a jury's powers of comprehension; nevertheless, this is not atypical of a successfully pleaded RICO claim, which the Court has already found was stated in the SAAC, and which has the tendency to draw together a multitude of seemingly unrelated acts into one litigation.[3]

In applying the relevant standards to the present motion, the Court's decision is not influenced by a lack of evidence supporting a particular allegation.  Although Mattel attaches an unprecedented amount of evidence to the proposed TAAC, it is not required to do so.  See Fed. R. Civ. P. 8(a).  Accordingly, Mattel's failure (in the MGA parties' eyes) to provide evidentiary support for its allegations that Jorge Castilla stole its trade secrets, that Farhad Larian destroyed evidence, and that the MGA parties engaged in commercial bribery of certain Mattel employees is not relevant to the present inquiry.[4]

Accordingly, because the Court discerns no prejudice to the MGA parties, no bad faith or undue delay on Mattel's part, and no futility as to the present amendments, the Court **GRANTS** Mattel's Motion for Leave to File the Proposed Third Amended Answer and Counterclaims (docket #5143).  To ensure proper filing, Mattel is directed to, within two days of the entry of this Order, provide the Courtroom Deputy Clerk for manual filing (1) an original and a copy of the public redacted version of the TAAC, and (2) an original and a copy of the under seal version of the TAAC.

---

[3] The allegations regarding the Wachovia/Omni 808 financial transactions illustrate this potential, and the Court has considered whether the amendments should be rejected based on the notion that Rule 15(d) should not be used to introduce a separate, distinct, and new cause of action.  Here, however, the Wachovia/Omni 808 financial transactions are alleged as new predicate acts in an ongoing RICO conspiracy; as such, rejection of amendments as comprising a separate, distinct, and new cause of action is not warranted.

[4] Of course, in making factual allegations, all parties remain bound by their Rule 11(b)(3) obligation to ensure that "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."  Moreover, whether there is evidence sufficient for a reasonable jury to find in favor of the complaining party as to a particular claim is determined after discovery, pursuant to a Rule 56 motion for summary judgment.

MINUTES FORM 90                                        Initials of Deputy Clerk __cls_____
CIVIL -- GEN                       6                   Time: 03/02

**Exhibit 18**
**Page 967**

**III.  EX PARTE APPLICATION TO STAY PENDING APPEAL**

The standard for granting a stay pending appeal is similar to that for a preliminary injunction. Lopez v. Heckler, 713 F.2d 1432, 1435 (9th Cir.1983). Thus, a party seeking a stay must show either (1) a likelihood of success on the merits of its appeal and the possibility of irreparable harm, or (2) that serious questions regarding the merits exist and the balance of hardships tips sharply in its favor. See Lands Council v. McNair, 494 F.3d 771, 775 (9th Cir. 2007) (noting that the alternative tests "are extremes of a single continuum in which the greater the relative hardship to the party seeking the [stay], the less probability of success must be shown.").

As the Court explained on the record, there is the potential for harm, possibly irreparable harm, to both sides, but that balance favors Mattel, for the reasons set forth in its opposition brief. See Opp. at 16-18.  For reasons set forth at length in the Court's orders that are purportedly implicated by the appeal, see Notice of Appeal at 1-2 & Exs. A-R (docket #5340), the Court does not find a likelihood of success on the merits of its appeal.

Accordingly, the Court **DENIES** the MGA parties' Ex Parte Application and Motion to Stay.

The Court understands from the report of the Temporary Receiver that its previous Orders regarding a partial stay of enforcement of the Court's December 3, 2008, need clarification, as does the issue of the scope of the profits that are subject to the constructive trust imposed by the Court on December 3, 2008.[5]   Accordingly, to assist the newly appointed Monitor, see infra, the Court provides the following guidance regarding its rulings and sets a briefing schedule as detailed below:

(1)  **Older Inventory**:  The MGA parties and others in the distribution chain may sell all 2009 Bratz products up through and including January 21, 2010.  The older inventory of Bratz products may likewise be sold, unless the Monitor determines that those sales tend to, in his reasoned judgment, diminish the value of the Bratz brand, in which case he should so report to the Court in an expeditious manner.

(2)  **Profits**:  The Court's Permanent Injunction Order found that all the female fashion dolls that use the "core Bratz fashion doll production sculpt" or the "Bratz movie sculpt" were subject to the injunction; the Courts' Constructive Trust imposed a constructive trust over, inter alia, "all trademarks, service marks and domain names[,] . . . that include the terms 'Bratz' or 'Jade.'"  In order to provide meaningful guidance to the parties, the Monitor, and their accountants, the parties may brief, and the Court will resolve, the issue of the scope of the profits that must be turned over by MGA and held by the Monitor pursuant to these Orders and any other Order of this Court.  The parties' simultaneous opening briefs (not to exceed 25 pages) shall be filed no later than

---

[5] This is largely due to the fact that, in issuing its December 3, 2008, order providing injunctive relief, the Court did not foresee that it would be subsequently modified by the January 7, 2009, Order staying enforcement pending sale of the 2009 Bratz line.

Initials of Deputy Clerk __cls_____
Time: 03/02

**Exhibit 18**
**Page 968**

Wednesday, May 27, 2009; simultaneous responsive briefs (not to exceed 25 pages) shall be filed no later than Friday, May 29, 2009, at which time the Court will take the matter under submission and issue an order as expeditiously as possible.

## IV.  EX PARTE APPLICATION RE DISCLOSURE OF
## 2009 PRODUCT LINE INFORMATION (DOCKET #5425)

In light of the Court's denial of the Ex Parte Application for Stay Pending Appeal, the ex parte application seeking production of the 2009 Bratz line and the new MGA products is moot, and it is **DENIED** for that reason.  Nevertheless, because it is in the interest of all parties to expeditiously resolve outstanding issues regarding MGA's new "Moxie" line of dolls, counsel for Mattel and the MGA parties are directed to meet and confer in an expeditious manner regarding those dolls.

## V. ORDER RE EXPIRATION OF TEMPORARY RECEIVERSHIP
## AND ORDER APPOINTING MGA MONITOR

The Court previously issued, on April 27, 2009, an Order to Show Cause re Appointment of Permanent Receiver.  In response, the Temporary Receiver, the parties and the Court-appointed Forensic Auditor have filed, and the Court has reviewed, the following documents:  (1) The Report and Recommendations of Patrick A. Fraioli, Jr., Temporary Receiver; (2) the Responsive Report of Court-appointed Forensic Auditor Ronald Durkin; and (3) all documents filed in support of the Appointment of a Permanent Receiver and in opposition thereto, including the Statement of Position filed by Omni 808.  In consideration of these filings, and after hearing on these matters, as detailed in the following subsections, the Court declines to appoint a Permanent Receiver, confirms the expiration of the temporary receivership, orders the filing of an accounting of the temporary receivership, and appoints an MGA Monitor to effectuate the Court's prior Orders.

A.      **Expiration of Temporary Receivership**

**IT IS ORDERED THAT:**

1.      The period of the Temporary Receivership imposed by this Court on April 27, 2009 has expired;

2.      The Court declines to appoint a Permanent Receiver over MGA Entertainment, Inc. or MGA Hong Kong ("MGA");

3.      The Court reserves jurisdiction to appoint a Receiver in the future, as it deems appropriate;

4.      The Temporary Receiver, Patrick A. Fraioli, Jr., is hereby directed to prepare and file with the Court a final report including a final accounting and application for fees and

MINUTES FORM 90

CIVIL -- GEN                               8

Initials of Deputy Clerk __cls_____

<u>Time: 03/02</u>

**Exhibit 18**
**Page 969**

costs, on or before May 28, 2009;

5.   The Court hereby lifts the Injunction against Omni 808's enforcement of its rights as a creditor against MGA, and **ORDERS** that should Omni 808 take any action to enforce its rights as a creditor against MGA, such action shall be filed and heard in the Central District of California;

6.   Based on MGA's representations to the Court that, should MGA file for bankruptcy protection under Title 11 of the United States Code, it shall do so in the Central District of California, and having previously found in its April 27, 2009, Order appointing a Temporary Receiver that MGA is domiciled in California and have their principal place of business in the Central District of California and have the majority of their assets located within the Central District of California, the Court hereby lifts the Injunction against MGA filing bankruptcy without permission of the Court, but **ORDERS** that any bankruptcy filing by MGA or any of its affiliates shall be filed in the Central District of California.

B.   **Appointment of MGA Monitor**

1.   For good cause shown, pursuant to the alternative recommendation of the MGA parties, and in lieu of appointing a Permanent Receiver at this time, the Court appoints Patrick A. Fraioli, Jr., Monitor, who shall have the power to take any and all action that he deems necessary, appropriate, or advisable to effectuate the purposes of the Monitorship, including but not limited to the following:

a.   The Monitor shall maintain monitoring, supervisory, and oversight responsibilities over the Bratz Assets;[6]

---

[6]  In light of the issue regarding the scope of profits that must be accounted for, see supra section III, and because the amount of access that must be given to the Monitor almost certainly extends beyond the materials that must be turned over to Mattel and may, depending on the resolution of the issue identified above, extend beyond the products for which profits must be held in constructive trust as a result of the Court's December 3, 2008, Orders, setting forth a workable definition of "Bratz Assets" that applies in all instances is challenging.  Nonetheless, the Court so defines that term at this time in order to provide to the Monitor and the parties meaningful guidance on the issue of Monitor access to facilities and information.  The Court admonishes all counsel that this definition should not be taken out of its current context and may very well be further modified, for purposes of both turn-over and the constructive trust, following resolution of the issue identified above.

Bratz Assets include all tangible or intangible assets, including, without limitation, all intellectual property necessary or materially useful for the design, manufacture, marketing, distribution and sale of any Bratz doll or other Bratz-branded product in the possession, custody or control (whether or not claimed to be encumbered by any security interest) of any of the MGA Defendants.  The Bratz Assets include, without limitation:

a.  All Bratz-related intellectual property rights, including, without limitation, copyrights (whether or not registered); copyright registrations; moral rights; design rights; patents (issued and pending); service marks; trademarks; tradedress; designs; slogans; characters; product packaging in any medium; product names; product

MINUTES FORM 90
CIVIL -- GEN                                    9                    Initials of Deputy Clerk __cls_____
                                                                      Time: 03/02

Exhibit 18
Page 970

b.    The Monitor shall monitor, supervise, and oversee the exploitation of the Bratz Assets;

c.    The Monitor shall have the power and authority to monitor the financial affairs and operations[7] of MGA Entertainment, Inc. and MGA Hong Kong (collectively, "MGA") as the Monitor deems appropriate in order to carry out the duties specified herein;

d.    The Monitor shall monitor compliance by the parties with this Court's Injunction and other Orders as directed by the Court, specifically this Court's December 3, 2008, Order Granting Mattel, Inc.'s Motion for Permanent injunction, January 7, 2009, Order re Modification and Stay of Permanent Injunction Order, and April 27, 2009, Omnibus Order (the "Injunction Orders");

---

illustrations; product designs; product concepts; conceptual drawings; engineering drawings; engineering specifications; processes; methods; trade secrets; know-how; product ideas; prototypes; line extensions; domain names; marketing and advertising materials; commercials; style guides; theme songs; soundtracks; scripts; screenplays; computer programming; digital and internet rights; video games; theatrical, television, video and DVD rights and masters; and rights in future technologies.

b. All Bratz-related tooling for all past, current and future lines, including without limitation tools, tooling, in process tools, molds, sculptures, models, dies, and mock-ups, as well as other Bratz-related tangible items.

c. All Bratz-related marketing and sales assets for all past, current and future lines, including, without limitation, consumer lists, marketing plans, account plans, focus group studies, marketing databases, and other consumer and marketing research.

d. All Bratz-related records, including, without limitation, contracts, manufacturing records, inventory records and data, sales records and data, product testing data and records, vendor list and records, customer communications, and invoices and purchase orders.

e. All Bratz-related contracts and agreements, including, without limitation, assignments, work-for-hire agreements and licensing agreements.

f. All other Bratz-related rights, including, without limitation, distribution rights, licensing rights, exploitation rights, accounts receivable, and all choses in action relating to Bratz or the Bratz brand.

g. All Bratz-related items referenced at Paragraph 3 and Paragraph 8 (at lines 15-19) of the Court's Order granting Mattel's Motion for Permanent Injunction (Docket No. 4443).

h. "Bratz-related" as used in this definition, is a broad term, that applies to all products, property, and information that bears the "Bratz" trademark.  It is expressly not limited to the Bratz female fashion dolls, and includes such products as the Bratz boy dolls, Baby Bratz, and Bratz Kidz.

[7] Toward that end, the Monitor shall have full and complete access to all Bratz assets (wherever they may be found), all MGA business premises, all MGA facilities (including manufacturing and storage facilities), all real and personal MGA property (including computers), all MGA employees, all MGA information (including financial and operational information), and all MGA books and records.

MINUTES FORM 90                                     Initials of Deputy Clerk __cls_____
CIVIL -- GEN                            10              Time: 03/02

Exhibit 18
Page 971

e.      At the appropriate time, the Monitor shall direct the MGA turnover to Mattel of any of the Bratz Assets subject to recall, impoundment, or destruction, as set forth in this Court's Injunction Orders of December 3, 2008, and as otherwise directed by the Court;

f.      The Monitor shall establish such bank accounts as the Monitor deems necessary or convenient to carry out the Monitor's duties under this Order;

g.      The Monitor shall collect from MGA, on a monthly basis, the amount of net profits derived by MGA from exploitation of the Bratz Assets during the preceding month, as well as an accounting setting forth the basis for the calculation of the net profits and the supporting documentation establishing such basis.  The Monitor shall retain these funds pending further order of this Court;[8]

h.      The Monitor is ordered and directed to obtain from MGA, and to make available to Mattel, as set forth herein, such of the Bratz Assets, and related information about the content of the Fall, 2009 Bratz line being produced and sold by MGA pursuant to this Court's Injunction Orders, as are necessary to enable Mattel to begin preparation of its own Bratz line for the Spring, 2010 sales season;

I.      The Monitor shall monitor, supervise and oversee, with authority to approve or disapprove, the following categories of financial transactions of MGA: Inter-company transfers of any amount, payments by MGA or any MGA affiliate to any related parties in excess of $50,000.00 per payment, and any payments to Omni 808;

j.      The Monitor shall file monthly reports with the Court, under seal (but served on all parties), setting forth the Monitor's activities, actions and recommendations. Nothing herein shall prevent the Monitor from filing other reports, as he deems appropriate.  As in the case of the Court-appointed Settlement Officer and Discovery Master (and as previously with the Court-appointed Temporary Receiver), the Monitor may report orally to Court concerning matters of procedure; however, any substantive inquiries or reports shall be submitted in the first instance to the Court in writing.  The Court shall determine, whether and, if so, with what restrictions, the Monitor's reports shall be served on parties and their counsel;

---

[8] The Court recognizes that resolution of the issue identified in section III, supra, will greatly impact on the amount of profits that must be turned over by MGA (see infra ¶ 2) and retained by the Monitor; accordingly, it is the Court's intention to resolve the issue as expeditiously as possible and, in any event, prior to the first turnover of profits on June 22, 2009.

Exhibit 18
Page 972

k.      The Monitor may retain and/or engage the services of advisors and/or professionals, including, without limitation, accountants, attorneys, consultants and experts to assist the Monitor in carrying out his duties and responsibilities under this Order.  The Monitor, without further order of this Court, is authorized to employ Ervin, Cohen & Jessup LLP, and the accounting firm of Crowe Horwath LLP, to assist him in his duties.  Nothing herein shall prevent the Monitor from utilizing the same advisors and professionals as rendered services to the Temporary Receiver before the appointment of the Monitor;

l.      The Monitor may hire and employ individuals and entities as necessary or advisable to carry out the Monitor's duties under this Order;

m.      The Monitor, his employees and agents, as well as any and all of the professionals employed by the Monitor, are entitled to compensation for services rendered at their normal hourly rates and reimbursement for all expenses incurred by them in providing services to the Monitor.  The Monitor shall submit to the Court, *in camera*, monthly requests for approval of payment.  Upon Court approval, the Monitor shall serve on the Parties, but not file, Notice of Court Approval of Request for Payment of Interim Fees and Costs of Monitorship, along with a summary statement of the fees and costs;

n.      The Monitor shall have the status of an officer and agent of this Court, and as such shall be vested with the same immunities as enjoyed by this Court. Neither the Monitor nor any person or entity acting at the direction of the Court or pursuant to agreements with the Monitor (whether employees, vendors, contractors or otherwise) may be held liable to any party for any acts taken in good faith in compliance with this Order, including but not limited to claims of alleged copyright infringement, trademark infringement, or other alleged causes of action;

o.      Nothing herein shall alter or affect the right of Mattel to take any and all actions relating to the Bratz Assets or the Bratz brand which it otherwise lawfully could take, including, without limitation, the institution, maintenance and prosecution of legal proceedings anywhere in the world or other proceedings before any governmental or tribunal or arbitration panel;

p.      The Court shall retain jurisdiction over the Monitorship for the duration of its existence.

q.      No bond shall be required in connection with the appointment of the Monitor. Except for acts of gross negligence, the Monitor and his agents and employees shall not be liable for loss or damage incurred by any party to this action or their officers, agents, servants, employees, attorneys or others by virtue of any act performed or omitted to be performed by the Monitor in connection with the discharge of his duties and responsibilities.

MINUTES FORM 90                                    Initials of Deputy Clerk __cls_____
CIVIL -- GEN                        12              Time: 03/02

Exhibit 18
Page 973

2.      Unless otherwise directed by the Court, MGA is **ORDERED** to turn over to the Monitor, on a monthly basis, the amount of net profits derived by MGA from exploitation of the Bratz Assets during that month, as well as an accounting setting forth the basis for the calculation of the net profits and the supporting documentation establishing such basis. The Monitor and his accountants shall review the accountings, and any related submissions of the Court or Monitor by Mattel, and shall report and recommend to the Court as directed on any disputes arising therefrom. MGA shall make its first turnover and accounting by June 22, 2009, which shall cover the period from the return of the jury verdict in this case through May 31, 2009, and this shall constitute compliance with section V of the Court's April 27, 2009, Order. Each month thereafter, the turnover and accounting shall be made by the 10th day of the month, for the prior month period.

3.      MGA shall immediately make available to the Monitor, for transfer to Mattel, such portion of the Bratz Assets necessary to enable Mattel to begin preparation of its own Bratz line for the Spring, 2010 sales season.  MGA shall also provide to the Monitor for delivery to Mattel such related information about the content of the Fall, 2009, Bratz line being produced and sold by MGA pursuant to this Court's Injunction Orders to enable Mattel to make appropriate commercial determinations about the content of its own Spring, 2010, Bratz line.

4.      No action may be filed against the Monitor, or any of his agents or employees, for any actions taken in this case, without prior permission of this Court.

5.      For the duration of Monitorship, Mattel is directed to pay to the Monitor, in the manner directed by the Monitor, the fees and costs of the Monitorship within five (5) days of receipt of the Notice of Court Approval of Request for Payment of Interim Fees and Costs of Monitorship. All interim fees paid shall be subject to final review and approval by this Court.  This Court retains jurisdiction to award a greater or lesser amount as the full, fair, and final value of such services.

6.      Any party may later apply to the Court for relief related to any profit calculations or profits turned over to the Monitor, or for relief related to the allocation of payment of the fees and costs of the Monitorship, as well as for the previously imposed Temporary Receivership.

7.      All Parties and their employees, agents and attorneys are ordered to cooperate fully with the Monitor.

## VI.  IMPOSING LIMITED AND TEMPORARY STAY OF PHASE 2

At the May 18, 2009, hearing, the Court heard from the Court-appointed Settlement Officer, who advised the Court that a settlement conference was scheduled for June 1, 2009.  The Settlement Officer believes that settlement negotiations continue to be of value, and has recommended that the Court consider the judicial officer's participation in those settlement

MINUTES FORM 90                                                  Initials of Deputy Clerk __cls_____
CIVIL -- GEN                              13                     Time: 03/02

**Exhibit 18**
**Page 974**

negotiations -- a proposal to which no party offered objection.

The Court heard from the parties regarding whether a stay of Phase 2 discovery should be imposed to assist in settlement efforts. Counsel for MGA advocated for a four-month stay. Counsel for Mattel cautioned against a stay, outlining for the Court the various positions taken by the MGA parties as to how the Court's previous stay limited or altered their responsibility to comply with previously set deadlines.

Mindful of the concerns expressed by Mattel, the Court nevertheless imposes a stay of Phase 2 discovery that is strictly limited in scope and duration. The parties shall, notwithstanding the stay, meet and confer regarding the Moxie issue set forth in section IV. Moreover, notwithstanding any other provision of this Order, the MGA parties are not relieved of their responsibility to produce, on or before the currently imposed deadline, their responses the Interrogatories to which counsel for Mattel referred during the hearing.

The stay of discovery, as limited, is imposed up to and including June 12, 2009. Unless otherwise extended by the Court or the Discovery Master, the deadlines for all discovery responses that have previously been ordered are extended for a period, measured by calendar days, not longer than the total number of calendar days the stay of discovery is imposed. For purposes of this date calculation, both the beginning date of the stay (May 18, 2009) and the ending date (June 12, 2009) are to be included. Similarly, the deadline for responding to discovery requests that have been propounded, but to which responses are not yet due, is extended for the same period of calendar days. If depositions are scheduled during this time period, they must be rescheduled for a date certain no later than the currently scheduled date plus the number of calendar days for which the stay of discovery is imposed.

The Court further **ORDERS** the parties to participate in a Mandatory Settlement Conference ("MSC") on or about June 1, 2009 (to be coordinated by the Court-appointed Settlement Officer). Those attending the MSC shall include the chief executive officers or equivalent of Mattel, MGA, and Omni 808; the chief financial officers or equivalent of Mattel, MGA, and Omni 808; in-house counsel of Mattel and MGA; and lead counsel of record for each party. Following the MSC, the Settlement Officer shall report to the Court on the status of settlement efforts. If the parties fail to reach a full and complete settlement, the Court shall, pursuant to the parties' agreement and waiver of any conflict issues, conduct a settlement conference beginning on June 10, 2009, at 10:00 am.

## VII. NOTICE OF INTENT TO UNSEAL FORENSIC AUDITOR REPORTS

In light of Omni 808's emphatic public criticism of the Court-ordered Forensic Auditor's April 23, 2009, Report, the contents of which were expressly ordered by this Court to be maintained by the parties under seal, and the contents of which, to the Court's knowledge, were in fact maintained under seal until the filing of The Statement of Position of Omni 808 Investors, LLC, filed on May 14, 2009, it is the Court's intention to release the April 23, 2009, Summary Report (together with its Exhibits that have been redacted for privilege), absent sustained objections

MINUTES FORM 90
CIVIL -- GEN

14

Initials of Deputy Clerk __cls_____
<u>Time: 03/02</u>

**Exhibit 18**
**Page 975**

thereto by the MGA parties.[9]

At this time, the Court **ORDERS** that the May 17, 2009, Responsive Forensic Auditor Report, maintained by the Court until this time *in camera* be released under seal to the parties.[10] The May 17, 2009, Responsive Report shall, pending resolution of any objections to its disclosure by the MGA parties, remain under seal, and distribution shall be limited to parties, their attorneys (whether or not the attorneys are of record), any Court-appointed officers, and, as necessary, the parties', attorneys', and officers' staff.

Within five days of the entry of this Order, the MGA parties, including Mr. Larian, may file, under seal, specific and supported objections to the release of the Summary Report or the Responsive Report. In the same time frame and manner, any party may object to the release of specific identifying information contained in the exhibits of the report than have the tendency to reveal personal identifying information such as social security numbers, tax identification numbers, or bank account numbers. Within two days, any party may respond to these objections. No hearing will be held unless the Court orders otherwise.

**IT IS SO ORDERED.**

---

[9] Despite an express Order of this Court to maintain the Summary Report and its exhibits under seal, counsel for Omni 808 revealed the Report's contents in Omni 808's Statement of Position. Similarly, counsel for Mattel also revealed certain contents of the Receiver's Report and Recommendation regarding MGAE's liquidity and solvency, also released under seal. All counsel are reminded of their responsibilities to maintain information under seal. Unless otherwise ordered, the Court's hearings are open to the public. The Court does not close hearings unless and until requested to do so by one or more of the parties, and only then does so when and to the extent that such closure is justified when counterbalanced with important First Amendment concerns.

[10] Sua sponte, the Court has already redacted certain portions of the Forensic Auditor's Responsive Report on the basis that the emails reflect highly personal electronic conversations between Mr. Larian, Mr. Kadisha, and their spouses.

MINUTES FORM 90                                    Initials of Deputy Clerk __cls_____
CIVIL -- GEN                        15             Time: 03/02

Exhibit 18
Page 976

# Exhibit 19

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**