EXHIBIT 1

**SEND**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA - Eastern Division
<u>CIVIL MINUTES - GENERAL</u>

Case No.   CV 04-09059 SGL(RNBx)                    Date:  February 12, 2007
Title:       MATTEL, INC. -v- CARTER BRYANT, DOES 1-10, INCLUSIVE
          **Consolidated Action**
          CV 05-02727 SGL(RNBx)   MGA ENTERTAINMENT v. MATTEL, INC.,
=================================================================
PRESIDING: HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

Jim Holmes                        Theresa Lanza
Courtroom Deputy Clerk          Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:    ATTORNEYS PRESENT FOR DEFENDANTS:

John B. Quinn and Michael Zeller for    Diana M. Torres for MGA
Mattel                            Keith A. Jacoby for Carter Bryant

PROCEEDINGS:    SCHEDULING CONFERENCE PURSUANT TO FRCP 16(b)

      The Court convened a scheduling conference pursuant to FRCP 16(b).  Court and counsel discussed case management and thereafter the court set the following schedule:  <u>See</u> attachment "Schedule of Trial and Pretrial Dates."

      Counsel stipulated pursuant to Local Rule 16-14, to settlement procedure #3, to a retired judicial officer or other private or non-profit dispute resolution body for mediation type settlement proceedings. The Court approves the request and refers this case to an outside Mediator to act as the Settlement Officer.  Counsel are directed to contact such outside Mediator to schedule a settlement conference as soon as the parties believe such a conference would be fruitful. The cut-off to complete the mandatory settlement procedures under Local Rule 16-14, is December 3, 2007, in Case No. CV 04-09059-SGL (RNBx) <u>Mattel, Inc. v. Carter Bryant</u>, and the cut-off to complete the mandatory settlement procedures under Local rule 16-14, is April 21, 2008, in Case No. CV 05-02727 SGL (RNBx) <u>MGA Entertainment v. Mattel, Inc.</u>

      The Court further ordered that in both Case No. CV 04-09049-SGL (RNBx), <u>Mattel, Inc. v. Carter Bryant</u>, and Case No. CV 05-02727 SGL (RNBx), <u>MGA Entertainment v. Mattel, Inc.</u>:

    1.     Non-Expert Depositions are limited to a total of 24 for each side for both cases.
    2.     Expert Depositions are limited to a total of 20 for each side for both cases.
    3.     Interrogatories are limited to 50 for each side for both cases.

      IT IS SO ORDERED.

MINUTES FORM 90                  FEB 2 2 20         Initials of Deputy Clerk: jh
CIVIL – GEN             Page 1                    00/30

2-12-07

EXHIBIT 1
PAGE 8

## SCHEDULE OF TRIAL AND PRETRIAL DATES

**CASE NAME:**   CARTER BRYANT -v- MATTEL, INC., CASE NO: CV 04-09059-SGL(RNBx)

(Consolidated Case No: CV 05-2727-SGL(RNBx), MGA Entertainment, Inc. v. Mattel, Inc., et al.)

| Matter | Time | Court Order |
|---|---|---|
| Jury Trial Date | 9:30 am | 02/12/08 |
| Estimated Length of Trial | | |
| [Hearing on Motions in Limine; Hearing on Disputed Jury Instructions | 10:00 am | 02/04/08 |
| Final Pretrial Conference, LR 16-7 Motions in Limine to be filed | 11:00 am | 01/14/08 |
| Lodge Pretrial Conference Order, LR 16-6 to 16-6.2; File Contentions of Fact and Law, LR16-2.8; Exhibit & Witness Lists, LR 16-4 to 16-5; File Status Report regarding Settlement; File Rule 26(e)(1) Supplementation File Agreed Upon Set of Jury Instructions and Verdict Forms LR 49-1 to 49-2, 51-1 to 51-5.1; File Joint Statement regarding Disputed Instructions, Verdicts, etc. | | 12/31/07 |
| Last date to conduct Settlement Conference | | 12/03/07 |
| Last date for hearing motions, LR 7.2, et seq. | 10:00 am | 11/19/07 |
| Discovery cut-off | | 10/22/07 |
| Last date to Amend Pleadings or Add Parties | | Closed |

### ADDITIONAL MATTERS TO BE DETERMINED AT SCHEDULING CONFERENCE

LR 16-14.4 Settlement Selection: to be discussed

☐ 1. CT/USMJ

☐ 2. Attorney Settlement Panel

☑ 3. Outside ADR

☐

DOE Dismissal:

Complaint Filed: 04/13/05

Dismissal Date:

SET DATE

to be discussed

EXHIBIT  1
PAGE  9

EXHIBIT 2

**CERTIFIED COPY**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | | |
|---|---|---|
| CARTER BRYANT, AN INDIVIDUAL, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| V. | ) | NO. CV 04-9040 SGL (RNBX) |
| | ) | |
| MATTEL, INC., A DELAWARE CORPORATION, | ) | (CONSOLIDATED WITH NO. 04-9059 AND |
| | ) | CASE NO. 05-2727) |
| DEFENDANTS. | ) | |
| | ) | |
| AND CONSOLIDATED ACTIONS. | ) | |

# TRANSCRIPT OF
# TELEPHONIC PROCEEDINGS

# JUNE 19, 2007



REPORTED BY:
EMILY MCCARY
CSR NO. 7584
JOB NO. 07EM059

COURT REPORTERS
700 S. Flower Street
Suite 1100
Los Angeles, California 90017
Office: (213) 955-0070
Fax: (213) 955-0077

EXHIBIT 2
PAGE 10

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVSION

| | |
|---|---|
| CARTER BRYANT, AN INDIVIDUAL, | ) |
| | ) |
| PLAINTIFF, | ) |
| | ) |
| V. | ) CASE NO. |
| | ) |
| MATTEL, INC., A DELAWARE | ) CV 04-9049 SGL |
| CORPORATION, | ) (RNBX) |
| | ) [CONSOLIDATED WITH |
| DEFENDANTS. | ) NO. 04-9059 AND |
| | ) CASE NO. 05-2727] |
| | ) |
| AND CONSOLIDATED ACTION(S). | ) |
| | ) |

TRANSCRIPT OF TELEPHONIC PROCEEDINGS,
TAKEN BEFORE HON. EDWARD A. INFANTE, AT
865 SOUTH FIGUEROA STREET, TENTH FLOOR,
LOS ANGELES, CALIFORNIA, COMMENCING AT
1:34 P.M., TUESDAY, JUNE 19, 2007,
BEFORE EMILY MCCARY, CSR NO. 7584.

EXHIBIT 2
PAGE 11

```
 1
 2    BEFORE HON. EDWARD A. INFANTE (TELEPHONICALLY)
 3
 4    APPEARANCES OF COUNSEL:
 5
 6    FOR MATTEL, INC.:
 7              QUINN EMANUEL URQUHART
                OLIVER & HEDGES, LLP
 8              BY:  B. DYLAN PROCTOR, ESQ.
                     TIMOTHY L. ALGER, ESQ.
 9              865 SOUTH FIGUEROA STREET
                TENTH FLOOR
10              LOS ANGELES, CALIFORNIA  90017
                (213) 624-7707
11
12
13    FOR MGA ENTERTAINMENT, INC.:
14              O'MELVENY & MYERS, LLP
                BY:  MICHAEL KEATS, ESQ.
15                   MELANIE BRADLEY, ESQ.
                TIMES SQUARE TOWER
16              7 TIMES SQUARE
                NEW YORK, NEW YORK  10036
17              (212) 326-2000
                (TELEPHONICALLY)
18
19
20    FOR THE PLAINTIFF:

21              KEKER & VAN NEST, LLP
                BY:  MICHAEL H. PAGE, ESQ.
22              710 SANSOME STREET
                SAN FRANCISCO, CALIFORNIA 94111
23              (415) 391-5400
                (TELEPHONICALLY)
24
25
```

EXHIBIT 2
PAGE 12

```
1    OBVIOUSLY APPEALED SOME SPECIFIC ITEMS.  YOU
2    KNOW, WE'RE NOT LOOKING TO STAY THE WHOLE
3    30(B)(6) ORDER.  WE'VE OBVIOUSLY BEEN PRODUCING
4    30(B)(6) WITNESSES AND THE LIKE AND IDENTIFYING
5    PEOPLE.  THERE ARE A FEW THINGS WE APPEALED ON
6    THAT WE THINK WE HAVE SOME ARGUMENTS, BUT I DON'T
7    KNOW IF -- I DON'T KNOW IF YOU GET COPIES OF THE
8    PAPERS WE'VE FILED BEFORE JUDGE LARSON, BUT,
9    SIMPLY PUT, THE ISSUES ARE RELATING TO WHETHER OR
10   NOT THE COMMUNICATIONS AND DOCUMENTS RELATING TO
11   OUR CONSULTING EXPERT ARE DISCOVERABLE.  AND OUR
12   POSITION IS UNDER THE FEDERAL RULES THOSE KINDS
13   OF THINGS AREN'T.  AND, YOU KNOW, WE'LL JUST --
14   WE'LL JUST DEAL WITH IT.
15            THE OTHER IS SORT OF THE DOCUMENTS
16   AND THE 30(B)(6) WITNESS.  SORRY.  ACTUALLY, I
17   THINK IT'S JUST THE 30(B)(6) WITNESS ON THE
18   QUESTION OF NET WORTH.  AND M.G.A. DOESN'T
19   CALCULATE NET WORTH.  WE DON'T HAVE ANYBODY WHO'S
20   REALLY SORT OF CAPABLE OF DOING IT.  IT WOULD
21   REQUIRE US TO GET AN EXPERT.  AND THAT'S THE KIND
22   OF THING THAT USUALLY IS THE SUBJECT OF EXPERT
23   DISCOVERY, BUT THAT'S ANOTHER ITEM.
24            AND THE LAST THING THAT WE APPEALED
25   WAS THE NOTION THAT WE SHOULD HAVE TO PRODUCE A
```

EXHIBIT 2
PAGE 13

```
 1    30(B)(6) WITNESS WHO WILL GO THROUGH ALL OF PRIOR

 2    WITNESS STATEMENTS OF ANY SORT OF M.G.A. -- ANY

 3    WITNESSES, YOU KNOW, OF M.G.A. OR OTHERWISE WHO

 4    HAVE TESTIFIED ABOUT BRATZ.  AND WE JUST THINK

 5    THAT THAT'S JUST A WAY THAT PLAINTIFFS ARE TRYING

 6    TO CIRCUMVENT SORT OF THE LIMITATIONS ON THE

 7    NUMBER OF DEPOSITIONS.  AND IT'S HARD TO GET

 8    SOMEONE UP TO SPEED ON THE KNOWLEDGE OF OTHER

 9    PEOPLE'S TESTIMONY.

10              YOU KNOW, THE ORDINARY COURSE WOULD

11    BE TO CONFRONT WITNESSES WITH THEIR PRIOR

12    STATEMENTS IF THEY'RE INCONSISTENT OR OTHERWISE.

13    AND WE JUST DIDN'T SEE A REASON TO DEPART FROM

14    THE ORDINARY COURSE.

15         JUDGE INFANTE:  WELL, I'M NOT HEARING THE

16    APPEAL, SO I DON'T CARE ABOUT DEPOSITIONS.

17         MR. KEATS:  NO, NO, NO.  I UNDERSTAND.  I'M

18    JUST LETTING YOU KNOW THE THINGS WE'RE SEEKING

19    STAYS ON THE 30(B)(6) ORDER ARE MORE LIMITED.

20    THAT'S ALL I'M SAYING.  IT'S LIMITED TO THE STUFF

21    THAT WE HAVE RAISED ON APPEAL.  THAT IS ALL I'M

22    SAYING.

23              I UNDERSTAND THAT THAT'S NOT BEFORE

24    YOU AND THAT'S BEFORE JUDGE LARSON.  AND I THINK

25    THAT'S BEING ARGUED, ACTUALLY, ON THIS COMING
```

EXHIBIT 2
PAGE 14

1   MONDAY.  SO, YOU KNOW, WE'LL HAVE THE ANSWER

2   THERE.

3           YOU KNOW, ONE OTHER ISSUE ON TIMING,

4   AND IT'S COME UP BECAUSE THERE WAS AN ORAL

5   ARGUMENT ON MONDAY, THIS PAST MONDAY, ON THE

6   MOTION TO DISMISS.  MATTEL HAS RAISED THE ISSUE

7   OF WHAT CLAIMS SHOULD BE TRIED IN THE PHASE ONE

8   TRIAL.  THERE'S BEEN A BUNCH OF MOTION PRACTICE

9   ON THAT.

10          AND M.G.A. AND MATTEL ARE -- WERE

11  CLOSE ON THE CLAIMS THAT SHOULD BE MOVED FROM

12  PHASE TWO TO PHASE ONE THAT WILL CHANGE THINGS,

13  OBVIOUSLY, FOR DISCOVERY AND PRIORITIES; BUT

14  THERE'S A WHOLE ISSUE OF WHETHER DAMAGES ARE

15  GOING TO BE TRIED IN PHASE ONE NOW.  AND MY SENSE

16  IS THAT THERE'S A GOOD CHANCE THINGS LIKE EXPERT

17  DISCOVERY DEADLINES AND POSSIBLY EVEN THE TRIAL

18  DATES MAY BE AFFECTED BECAUSE THIS STUFF HAS BEEN

19  PUT UP IN THE AIR.

20          JUDGE INFANTE:  WAIT A MINUTE.  I'M

21  OPERATING ON THE RECORD AS IT EXISTS AT THE TIME

22  I ISSUE MY ORDERS.  AND THE RECORD AS IT EXISTS

23  HAS NO BIFURCATED DISCOVERY.  END OF STORY.

24          MR. KEATS:  NO.  I AGREE WITH THAT, BUT THE

25  POSITION THAT THE PLAINTIFF -- SORRY.  I AGREE

EXHIBIT 2
PAGE 15

1   WITH YOU.  THE POSITION MATTEL IS TAKING WITH ME

2   IN MEET AND CONFERS, THOUGH, ON PHASE TWO IS

3   IT'S MORE IMPORTANT TO GET THE PHASE ONE STUFF

4   FIRST, AND THERE'S NO RUSH TO GET THE PHASE TWO.

5            SO I COMPLETELY AGREE WITH YOU THAT

6   THERE SHOULD NOT BE A BIFURCATION OF DISCOVERY,

7   AND I'M NOT REMOTELY SUGGESTING IT.  BUT ALL --

8   ALL I'M SUGGESTING, AND THE ONLY REASON I RAISED

9   IT AT ALL IS THAT I DON'T THINK THE TIME WE'RE

10  SEEKING FOR THESE CATEGORIES TO FINISH ARE

11  UNREASONABLE, AND, YOU KNOW, THAT WE SHOULD BE

12  COMPLETED WITH OUR PRODUCTION WHEN I DON'T HAVE

13  ANY IDEA WHEN MATTEL IS GOING TO COMPLETE THEIRS.

14  TO ME, IT SEEMS A LITTLE UNFAIR.

15            JUDGE INFANTE:  THIS IS NOT ABOUT MATTEL.

16  THIS IS ABOUT YOU COMPLYING WITH A COURT ORDER

17  THAT WAS ISSUED BY A SPECIAL MASTER.  AND LET ME

18  TELL YOU WHAT THE CHRONOLOGY WAS:  THE REQUESTS

19  WERE MADE LONG AGO.  THE MOTION TO COMPEL WAS

20  FILED FEBRUARY 2ND; THE OPPOSITION, FEBRUARY

21  26TH, AND THEREAFTER A REPLY.

22            THE MOTION WAS HEARD ON MARCH 5TH,

23  AND DURING THAT HEARING I INDICATED THAT I WOULD

24  BE GRANTING THE MOTION.  AND I GAVE THE PARTIES

25  MY DIRECTION WITH RESPECT TO THE FUTURE

EXHIBIT 2
PAGE 16

1   UNRELEASED PRODUCTS, AND I SUGGESTED TO THE

2   PARTIES THAT THERE SHOULD BE A THIRD TIER IN THE

3   PROTECTIVE ORDER TO PARTIALLY REMOVE ANY DANGER

4   OF PREJUDICE.  AND I INVITED THE PARTIES TO

5   STIPULATE TO A NEW PROTECTIVE ORDER WITH AN ADDED

6   TIER OF PROTECTION.

7            FINALLY, I RECEIVED A STIPULATED,

8   MODIFIED PROTECTIVE ORDER APRIL 23RD.  IT WAS AT

9   THAT POINT THAT THE MOTION WAS THEN RIPE FOR MY

10  WRITTEN DECISION.  MY WRITTEN DECISION WAS ISSUED

11  MAY 15TH.  M.G.A. KNEW LONG BEFORE MAY 15TH THAT

12  THE MOTION WAS GRANTED.  THE ISSUE WAS -- THE

13  ORDER WAS ISSUED MAY 15TH.  MAY 31 WAS THE

14  COMPLIANCE DATE.  I RECEIVED YOUR REQUEST FOR AN

15  EXTENSION ON MAY 31ST.  THAT'S THE CHRONOLOGY.

16       MR. KEATS:  AND YOUR HONOR --

17       JUDGE INFANTE:  ANYTHING ELSE THAT YOU WISH

18  TO SAY IN SUPPORT OF YOUR MOTION TO STAY MY

19  ORDERS?

20       MR. KEATS:  JUDGE, I HAVE TO TAKE -- I'M A

21  LITTLE CONCERNED ABOUT THE TONE OF YOUR VOICE.

22       JUDGE INFANTE:  DO YOU WANT ANYTHING

23  FURTHER TO SAY, SAY IT.

24       MR. KEATS:  YES, I DO.  AND I'M -- I WANT

25  THE RECORD TO REFLECT THAT YOU'RE MAKING

EXHIBIT 2
PAGE 17

1   STATE OF CALIFORNIA        )

2                             ) SS.

3   COUNTY OF LOS ANGELES      )

4

5

6       I, EMILY MCCARY, CERTIFIED SHORTHAND

7   REPORTER, CERTIFICATE NO. 7584, FOR THE STATE OF

8   CALIFORNIA, HEREBY CERTIFY;

9       THE FOREGOING PROCEEDINGS WERE TAKEN BEFORE

10  ME AT THE TIME AND PLACE THEREIN SET FORTH;

11      THE TESTIMONY OF THE WITNESSES AND ALL

12  OBJECTIONS MADE AT THE TIME OF THE EXAMINATION

13  WERE RECORDED STENOGRAPHICALLY BY ME AND WERE

14  THEREAFTER TRANSCRIBED;

15      THE FOREGOING TRANSCRIPT IS A TRUE AND

16  CORRECT TRANSCRIPT OF MY SHORTHAND NOTES SO

17  TAKEN;

18      I FURTHER CERTIFY THAT I AM NEITHER COUNSEL

19  FOR NOR RELATED TO ANY PARTY TO SAID ACTION NOR

20  IN ANY WAY INTERESTED IN THE OUTCOME THEREOF;

21      IN WITNESS WHEREOF, I HAVE HEREUNTO

22  SUBSCRIBED MY NAME THIS 19TH OF JUNE, 2007,

23

24  _____

25                  EMILY MCCARY

EXHIBIT 2
PAGE 18

EXHIBIT 3

1  ROBERT F. MILLMAN, Bar No. CA 062152
2  DOUGLAS A. WICKHAM, Bar No. CA 127268
   LITTLER MENDELSON
3  A Professional Corporation
   2049 Century Park East, 5th Floor
4  Los Angeles, CA  90067.3107
   Telephone:  310.553.0308
5  Facsimile:    310.553.5583

6  Attorneys for Defendant
   CARTER BRYANT

7

8                UNITED STATES DISTRICT COURT

9                CENTRAL DISTRICT OF CALIFORNIA

10

11  MATTEL, INC., a Delaware          Case No. CV 04 3431 NM (RBx)
    Corporation,
12                                    **DEFENDANT'S FIRST SET OF**
                Plaintiff,            **INTERROGATORIES**
13                                    **PROPOUNDED ON PLAINTIFF**
        v.                           **MATTEL, INC.**
14
    CARTER BRYANT, an individual;
15  and DOES 1 through 10, inclusive,
                                      Action Filed: April 27, 2004
16              Defendant.

17

18  PROPOUNDING PARTY:      DEFENDANT, CARTER BRYANT

19  RESPONDING PARTY:       PLAINTIFF, MATTEL, INC.

20  SET:                    ONE

21

22

23

24

25

26

27

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA  90067 3107
310 553.0308

                        INTERROGATORIES

EXHIBIT  3
PAGE  19

**TO PLAINTIFF MATTEL, INC. AND ITS ATTORNEYS OF RECORD, QUINN EMANUEL URQUHART OLIVER & HEDGES:**

Defendant Carter Bryant (hereinafter "Defendant" or "Bryant") hereby requests, pursuant to Federal Rule of Civil Procedure Rule 33, that Plaintiff MATTEL, Inc. (hereinafter "Plaintiff" or "MATTEL") answer in writing and under oath the following Interrogatories within 30 days of service hereof.

<b><u>DEFINITIONS</u></b>

1.     "PERSON" or "PERSONS" means any or all entities, including, but not limited to, any or all individuals, single proprietorships, associations, companies, firms, partnerships, joint ventures, corporations, employees or former employees, or any other business, governmental, or labor entity, and any divisions, departments, or other units thereof.

2.     The singular and plural forms of words are used interchangeably, as are the masculine and feminine forms and the present and past tenses of verbs.

3.     "IDENTIFY" means:

    A.     when used in reference to a natural PERSON, to state the individual's full name, present or last known residence and business addresses, social security number, present or last known position and business affiliation, and present or last known e-mail and telephone number;

    B.     when used in reference to a corporation, partnership, or other entity, to state the full and complete corporate name, the organizational format (e.g., corporation, partnership, limited liability partnership), the present or last known address of its principal place of business, the present or last known e-mail address and telephone number, the date on which it commenced doing business, each and every officer of the company, and each

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

2.
INTERROGATORIES

EXHIBIT 3
PAGE 20

and every stockholder of a corporation or partner of a partnership, or anyone holding an equity interest in the entity;

C. when used in reference to a DOCUMENT, to state the date, identity of the author, addressee(s), signatories, parties, or other PERSONS identified therein, the type of DOCUMENT (e.g., letter, memorandum, chart, etc.), its present location or custodian and a brief topical description of its contents; and

D. when used in reference to a COMMUNICATION, to state the date, IDENTIFY the parties, the type of COMMUNICATION, and a brief description of its contents.

4. "RELATE TO" and "RELATING TO" mean in any way directly or indirectly, concerning, referring to, pertaining to, mentioning, discussing, describing, disclosing, confirming, supporting, evidencing, representing, or being connected with a stated subject matter or any aspect thereof.

5. "AND" and "OR" mean either the conjunctive or the disjunctive as context may require so that the meaning of the term is inclusive rather than exclusive.

6. "MATTEL," "PLAINTIFF," "YOU" or "YOUR" refer to Plaintiff MATTEL, Inc. and its officers, directors, agents, employees and all persons acting under its direction or control or on its behalf.

## INTERROGATORY NO. 1:

State all facts supporting YOUR contention, if YOU so contend, that Bryant performed services or did any work for a third party or for himself while in the employ of MATTEL.

## INTERROGATORY NO. 2:

State all facts supporting YOUR contention, if YOU so contend, that Bryant for his own gain, or the gain of any third party, at any time converted, improperly used,

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310 553.0308

3.

EXHIBIT 3
PAGE 21

1   sold, assigned or otherwise transferred any work product of his creation which YOU

2   believe was owned by MATTEL.

3   **INTERROGATORY NO. 3:**

4      State all facts supporting YOUR contention, if YOU so contend, that Bryant for

5   his own gain, or the gain of any third party, at any time converted, used, sold, assigned

6   or otherwise transferred any MATTEL work product owned at any time by MATTEL

7   or created by any MATTEL employee other than Bryant, or by any independent

8   contractor, during the time that such PERSON was working for MATTEL.

9   **INTERROGATORY NO. 4:**

10     State all facts supporting YOUR contention, if YOU so contend, that any

11  product sold by MGA Entertainment, Inc. ("MGA") under the trade name "Bratz"

12  originated from, is derived from, is based on, copies, incorporates, or is substantially

13  or confusingly similar to any design or work product created or worked on by Bryant

14  while employed by MATTEL.

15  **INTERROGATORY NO. 5:**

16     State all facts supporting YOUR contention, if YOU so contend, that any

17  product sold at any time by MGA under the trade name "Bratz" originated from, is

18  derived from, is based on, copies, incorporates, or is substantially or confusingly

19  similar to any design or work product owned at any time by MATTEL or created by

20  any MATTEL employee other than Bryant or by any independent contractor during

21  the time that such PERSON was working for MATTEL.

22  **INTERROGATORY NO. 6:**

23     State all facts supporting YOUR claim that YOU have been damaged by any act

24  or omission of Bryant.

25  **INTERROGATORY NO. 7:**

26     IDENTIFY all PERSONS YOU believe have knowledge of facts supporting

27  YOUR contention, if YOU so contend, that any product sold by MGA under the trade

28  name "Bratz" originated from, is derived from, is based on, copies, incorporates, is

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA  90067-3107
310.553.0308

4.

EXHIBIT 3
PAGE 22

1  substantially similar to any design, or elements thereof, created or worked on by

2  Bryant while employed by MATTEL.

3  **INTERROGATORY NO. 8:**

4  IDENTIFY all PERSONS YOU believe have knowledge of facts supporting

5  YOUR contention, if YOU so contend, that any product sold by MGA under the trade

6  name "Bratz" originated from, is derived from, is based on, copies, incorporates, or is

7  substantially or confusingly similar to any design or work product owned at any time

8  by MATTEL or created by any MATTEL employee other than Bryant or by any

9  independent contractor during the time that such PERSON was working for

10 MATTEL.

11 **INTERROGATORY NO. 9:**

12 State all facts supporting YOUR contention that MATTEL first became aware

13 of the alleged wrongful conduct of Bryant in November 2003, as set forth in

14 Paragraph 12 of the Complaint.

15 **INTERROGATORY NO. 10:**

16 State all facts supporting YOUR contention that Bryant failed to meet his

17 obligations under the MATTEL "Employee Confidential Information and Inventions

18 Agreement" attached to the Complaint as Exhibit "A".

19 **INTERROGATORY NO. 11:**

20 State all facts supporting YOUR contention that Bryant failed to meet his

21 obligations under the MATTEL Conflict of Interest Questionnaire," attached to the

22 Complaint as Exhibit "B".

23 **INTERROGATORY NO. 12:**

24 State all facts supporting YOUR contention that Bryant misappropriated

25 MATTEL property, including without limitation intellectual property, at any time.

26 **INTERROGATORY NO. 13:**

27 State all facts supporting YOUR contention that Bryant was in a fiduciary

28 relationship with MATTEL.

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310.553.0308

5.

INTERROGATORIES

EXHIBIT 3
PAGE 23

**INTERROGATORY NO. 14:**

If YOU contend that prior to October 20, 2000, MATTEL had any toy concept or project which had not yet been offered for sale to the public, including without limitation, any toy concept or project in the pre-production or development phase, that Bryant improperly copied, replicated, borrowed or otherwise used in whole, or in any part, during or after Bryant's employment with MATTEL, IDENTIFY that toy concept or project.

**INTERROGATORY NO. 15:**

IDENTIFY each and every MATTEL employee who supervised work performed by Bryant throughout the period or periods of Bryant's employment with MATTEL.

**INTERROGATORY NO. 16:**

IDENTIFY each and every MATTEL employee or independent contractor that worked with Bryant on any project he worked on for MATTEL, from 1996 to October 2000.

**INTERROGATORY NO. 17:**

IDENTIFY each and every employee against whom YOU have filed, or threaten to file, a lawsuit pertaining in whole, or in any part, to an alleged violation of the MATTEL "Employee Confidential Information and Inventions Agreement," the form of which is attached to the Complaint as Exhibit "A".

**INTERROGATORY NO. 18:**

IDENTIFY each and every employee against whom YOU have filed, or threaten to file, a lawsuit pertaining in whole, or in any part, to an alleged violation of the MATTEL "Conflict of Interest Questionnaire," the form of which attached to the Complaint as Exhibit "B".

**INTERROGATORY NO. 19:**

IDENTIFY all measures taken by MATTEL to achieve compliance with the MATTEL "Employee Confidential Information and Inventions Agreement," the form

6.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

**EXHIBIT** 3
**PAGE** 24

1   of which is attached to the Complaint as Exhibit "A," and the MATTEL "Conflict of

2   Interest Questionnaire," the form of which attached to the Complaint as Exhibit "B".

3

4   Dated:  June 14, 2004

5                                              ROBERT F. MILLMAN
                                               DOUGLAS A. WICKHAM
6

7                                              DOUGLAS A. WICKHAM

8                                              LITTLER MENDELSON
                                               A Professional Corporation
9                                              Attorneys for Defendant
                                               CARTER BRYANT

10

11  Los_Angeles:361794.1 028307.1010

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

7.

INTERROGATORIES

EXHIBIT 3
PAGE 25

## PROOF OF SERVICE BY PERSONAL DELIVERY

I am employed in Los Angeles County, California.  I am over the age of eighteen years and not a party to the within-entitled action.  My business address is ProCourier, 1706 South  Figueroa Street, Los Angeles, California 90015.  On June 14, 2004, I personally served:

### DEFENDANT'S FIRST SET OF INTERROGATORIES PROPOUNDED ON PLAINTIFF MATTEL, INC.

by delivering copies thereof to:

Michael T. Zeller, Esq.
**Quinn Emanuel Urquhart Oliver & Hedges, LLP**
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

Executed on June 14, 2004, at Los Angeles, California.

Los_Angeles:362022.1 028307.1010

_____

PROOF OF PERSONAL SERVICE

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA  90067-3107
310.553.0308

EXHIBIT 3
PAGE 26

EXHIBIT 4

1  KEKER & VAN NEST, LLP
   JOHN W. KEKER - #49092
2  jkeker@kvn.com
   MICHAEL H. PAGE - #154913
3  mpage@kvn.com
   CHRISTA M. ANDERSON - #184325
4  canderson@kvn.com
   MATTHEW M. WERDEGAR - #200470
5  mwerdegar@kvn.com
   JOHN E. TRINIDAD - #250468
6  jtrinidad@kvn.com
   AUDREY WALTON-HADLOCK- #250574
7  awaltonhadlock@kvn.com
   710 Sansome Street
8  San Francisco, CA 94111-1704
   Telephone: (415) 391-5400
9  Facsimile: (415) 397-7188

10 Attorneys for Plaintiff
   CARTER BRYANT

11

12              UNITED STATES DISTRICT COURT

13             CENTRAL DISTRICT OF CALIFORNIA

14                    EASTERN DIVISION

15

16 CARTER BRYANT, an individual,        Case No. CV 04-09049 SGL (RNBx)
                                        (consolidated with CV 04-9059 & 05-
17                       Plaintiff,      2727

18      v.                             CARTER BRYANT'S SECOND SET
                                       OF INTERROGATORIES TO
19 MATTEL, INC. a Delaware             MATTEL, INC.
   Corporation,
20
21                      Defendant.

22 CONSOLIDATED WITH MATTEL,
   INC., v. BRYANT and MGA
23 ENTERTAINMENT, INC. v.
   MATTEL, INC.
24

25

26

27

28

                          _12-26_

408205.02

EXHIBIT 4
PAGE 27

| | |
|---|---|
| PROPOUNDING PARTY: | CARTER BRYANT |
| RESPONDING PARTY: | MATTEL, INC. |
| SET NUMBER: | TWO |

Pursuant to Federal Rule of Civil Procedure 33, CARTER BRYANT requests that MATTEL, INC. respond to the following interrogatories separately, fully and under oath within thirty days of service.

## DEFINITIONS

1.    "MATTEL" or "YOU" means and refers to Mattel, Inc., its current employees, officers, directors, agents, representatives, attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control.

2.    "BRATZ" refers to any product that has ever been sold or marketed under the name or term "Bratz."

3.    "DOCUMENT" or "DOCUMENTS" is defined broadly to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), and includes all originals (or, if originals are not available, identical copies thereof), all non-identical copies of a DOCUMENT, all drafts of final DOCUMENTS, all other written, printed, or recorded matter of any kind, and all other data compilations from which information can be obtained and translated if necessary, that are or have been in your actual or constructive possession, custody or control, regardless of the medium on which they are produced, reproduced, or stored, and any electronic mail, recording or writing, as these terms are defined in Federal Rule of Evidence 1001. Any DOCUMENT bearing marks, including without limitation, initials, stamped initials, comments, or

1

408205.02

EXHIBIT 4
PAGE 28

1  notations not a part of the original text or photographic reproduction thereof, is a

2  separate DOCUMENT.

3      4.      "IDENTIFY" or "IDENTIFYING" means the following:  (a) with

4  reference to PERSONS, means to state such PERSON's full name, any known

5  business title, current or last known residential address, current or last known

6  business address, and current or last known telephone number, and current or last

7  known relationship to MATTEL; (b) with reference to DOCUMENT or

8  DOCUMENTS, means to describe each DOCUMENT by Bates number if the

9  DOCUMENT has a bate number, and if not, then to provide a complete description

10  of the DOCUMENT including the date of creation, identity of author, identity of

11  current custodian, the document's present physical location, the location of where

12  the document is stored electronically, and a description of the DOCUMENT's

13  subject matter and content; (c) with reference to "MATTEL property or resources",

14  means to provide a complete description of the property or the resource, including

15  but not limited, its monetary value or estimated monetary value.

16      5.      "PERSON" or "PERSONS" means and refers to all natural persons,

17  partnerships, joint ventures and any kind of business, legal or public entity or

18  organization, as well as its, its or her agents, representatives, employees, officers

19  and directors and any one else acting on its, its or her behalf, pursuant to its, its or

20  her authority or subject or its, its or her control.

21      6.      "REFER OR RELATE TO" should be construed in the broadest

22  possible sense to mean concern, consist of, refer to, relate to, pertain to, involved

23  with, describe, discuss, constitute, evidence, contain, reflect, mention, cite,

24  summarize, embody, analyze or bear any logical or factual connection with the

25  subject matter discussed.

26                          **INSTRUCTIONS**

27      1.      If MATTEL elects to answer any interrogatory pursuant to Federal

28  Rule of Civil Procedure 33(d), BRYANT requests that MATTEL identify the

EXHIBIT 4
PAGE 29

1    particular documents relating to the subject matter of the specific interrogatory,

2    and separately for each document, the date the document bears, the title of the

3    document, if any, the identity of the authors of the document, the identity of each

4    addressee or recipient of the document, the type and subject matter of the

5    document and the present location or custodian of the document.

6        2.     If MATTEL cannot answer an interrogatory in full, MATTEL is

7    hereby directed to answer it to the fullest extent possible, specify the reasons for its

8    inability to answer the remainder, and state whatever information or knowledge

9    MATTEL has concerning the unanswered portion.

10

11                     **INTERROGATORIES**

12

13    **INTERROGATORY NO. 20:**

14        To the extent that YOU contend that BRYANT used or employed any

15    MATTEL property or resources in connection with the design, development, sale

16    or licensing of any BRATZ products, IDENTIFY each such MATTEL property or

17    resource and state all facts that support your contention, including but not limited

18    to IDENTIFYING all PERSONS with knowledge of such facts and all

19    DOCUMENTS which REFER OR RELATE TO such facts.

20

21    Dated: December 26, 2007            KEKER & VAN NEST, LLP

22

23

24                        By: _____

25                          Matthew M. Werdegar
                               Attorneys for Plaintiff
                               CARTER BRYANT

26

27

28

3

CARTER BRYANT'S SECOND SET OF INTERROGATORIES TO MATTEL, INC.
CASE NO. CV 04-09049 SGL (RNBx)

EXHIBIT 4
PAGE 30

PROOF OF SERVICE

I am employed in the City and County of San Francisco, State of California in the office of a member of the bar of this court at whose direction the following service was made. I am over the age of eighteen years and not a party to the within action. My business address is Keker & Van Nest, LLP, 710 Sansome Street, San Francisco, California 94111.

On December 26, 2007, I served the following document(s):

**CARTER BRYANT'S SECOND SET OF INTERROGATORIES TO MATTEL, INC.**

by **FEDERAL EXPRESS**, by placing a true and correct copy in a sealed envelope addressed as shown below. I am readily familiar with the practice of Keker & Van Nest, LLP for correspondence for delivery by FedEx Corporation. According to that practice, items are retrieved daily by a FedEx Corporation employee for overnight delivery.

by **E-MAIL VIA PDF FILE**, by transmitting on this date via e-mail a true and correct copy scanned into an electronic file in Adobe "pdf" format. The transmission was reported as complete and without error.

John B. Quinn
Michael T. Zeller
Quinn Emanuel Urquhart Oliver &
Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
Tel:  213/443-3000
Fax:  213/443-3100
Email:  johnquinn@quinnemanuel.com
Email:  michaelzeller@quinnemanuel.com

Thomas J. Nolan
Skadden Arps Slate Meagher & Flom
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071-3144
Tel:  213/687-5000
Fax:  213/687-5600
Email:  tnolan@skadden.com

Alexander H. Cote
Overland Borenstein Scheper & Kim LLP
300 S. Grand Avenue, Suite 2750
Los Angeles, California 90071
Tel:  213/613-4660
Fax:  213/613-4656
Email:    acote@obsklaw.com

EXHIBIT 4
PAGE 31

1      Executed on December 26, 2007, at San Francisco, California.

2      I declare under penalty of perjury under the laws of the State of California

3 that the above is true and correct.

4                    *Julie Selby*

                    JULIE A. SELBY

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

396359.01

PROOF OF SERVICE
CASE NO. CV 04-09049 SGL (RNBx)

EXHIBIT 4
PAGE 32

EXHIBIT 5

DIANA M. TORRES (S.B. #162284)
PAULA E. AMBROSINI (S.B. #193126)
ALICIA C. MEYER (S.B. #230189)
O'MELVENY & MYERS, LLP
400 South Hope Street
Los Angeles, California 90071-2899
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

Attorneys for Defendant-in-Intervention,
MGA Entertainment, Inc.

**RECEIVED**

FEB 0 7 2005

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTEL, INC., a Delaware Corporation, <br><br> Plaintiff, <br><br> v. <br><br> CARTER BRYANT, an individual, and MGA ENTERTAINMENT, INC., a California Corporation <br><br> Defendant and Defendant-in-Intervention. | Case No.  CV04-9059 NM (RNBx) <br><br> **MGA'S FIRST SET OF INTERROGATORIES TO MATTEL, INC.** |

PROPOUNDING PARTY:    MGA ENTERTAINMENT, INC.

RESPONDING PARTY:    MATTEL, INC.

SET:    ONE

EXHIBIT 5
PAGE 33

1    Defendant-In-Intervention, MGA Entertainment Inc. ("MGA"), hereby

2 requests that Plaintiff, Mattel Inc. ("Mattel") answer the following Interrogatories

3 separately, fully, and under oath, pursuant to Rule 33 of the Federal Rules of Civil

4 Procedure, within thirty (30) days of service, in accordance with the definitions and

5 instructions set forth herein.

6                                  **DEFINITIONS**

7    1. "BRATZ" means and refers to each image, character, logo, doll, toy,

8 accessory, product, packaging or other thing or matter that is or has ever been

9 manufactured, marketed or sold by MGA, or others under license, as part of a line of

10 goods or merchandise commonly known as, or sold and marketed under the "Bratz"

11 trademark or trade dress including but not limited to the "BRATZ CONCEPT,"

12 "FIRST BRATZ DOLLS," "BRATZ DOLLS," "BRATZ PACK", "LIL' BRATZ,"

13 "BRATZ PETZ," "BRATZ BABYZ," and "BRATZ BOYZ.

14    2. "BRATZ CONCEPT" means and refers to each "BRATZ"-related image,

15 drawing, picture, sculpt, mold, prototype and any other form of artwork predating the

16 FIRST BRATZ DOLLS, examples of which have been the subject of Mr. Bryant's

17 testimony and produced by Mr. Bryant bearing Bates serial numbers Bryant 00175-

18 177; 00179-00182; 00189-00190; 00192-00196; 00198-00216; 00218; 00341; 00972;

19 01014; and 01116-01118.

20    3. "FIRST BRATZ DOLLS" means and refers to each image, character, logo,

21 doll, toy, accessory, product, packaging or other thing or matter that is or has ever

22 been manufactured, marketed or sold by MGA, or others under license, as part of a

23 line of goods or merchandise commonly known as, or sold and marketed under the

24 "Bratz" trademark or trade dress and consisting of the following:  "Bratz Cloe", SKU

25 248521; "Bratz Cloe", SKU 248538; "Bratz Jade", SKU 248545; "Bratz Sasha, SKU

26 248552; "Bratz Yasmin", SKU 248569; "Bratz Pajama Power Fashion", SKU

27 248576; "Bratz Study Hall Fashion", SKU 248583; and "Bratz Dynamite Dance

28 Fashion", SKU 248682.

EXHIBIT 5
PAGE 34

1     4. "BRATZ DOLLS" means and refers to each image, character, logo, doll,

2  toy, accessory, product, packaging or other thing or matter that is or has ever been

3  manufactured, marketed or sold by MGA, or others under license, as part of a line of

4  goods or merchandise commonly known as, or sold and marketed under the "Bratz"

5  trademark or trade dress excluding the "FIRST BRATZ DOLLS", "LIL' BRATZ,"

6  "BRATZ PETZ," and "BRATZ BABYZ" and including, without limitation, the

7  styling head commonly known as or sold and marketed as the "Bratz Funky Fashion

8  Make Over" styling head, and specifically including, without limitation, the images,

9  characters, dolls, playsets and other products and toys called or referred to as, or

10  named or marketed in association with the names "Cloe", "Jade", "Sasha", "Yasmin",

11  "Meygan", "Dana", "Fianna", "Nevra", "Cameron", "Dylan", "Eitan", "Koby",

12  "Cade", "Ailani", "Nazalia", "Talia", "Zada", "Mikko", "Colin", "Deavon", "Lakin",

13  "Flaunt It," "Beach Party", "Micro Bratz", "Xpress It", "Bratz Boyz", "Funk 'n'

14  Glow", "Funky Fashion Makeover", "Holiday Bratz – Sweetheart", "Holiday Bratz –

15  Spring Fling", "Holiday Bratz – Independence Dance", "Slumber Party", "Strut It",

16  "Spring Break", "Formal Funk", "Bratz Boyz Formal Funk", "Wintertime

17  Wonderland", "Style It!", "Funky Fashion Makeover", "Funk Out!", "Sun-Kissed

18  Summer", "Girls Nite Out!", "Wild Life Safari", and any other released, or yet to be

19  released, BRATZ named character or product theme.

20     5. "BRATZ PACK" means and refers to any collection, compilation or

21  grouping of two or more images, characters or dolls that are or have ever been

22  manufactured, marketed or sold by MGA, or others under license, as part of a line of

23  goods or merchandise commonly known as, or sold and marketed under the "Bratz"

24  trademark or trade dress including, without limitation, the collection, compilation or

25  grouping of four female images, characters or dolls individually named, called or

26  referred to as "Bratz Cloe", "Bratz Jade", "Bratz Sasha", and "Bratz Yasmin" and any

27  other similar collection, compilation or grouping of two or more images, characters or

28  dolls, male or female, and specifically including, without limitation, the images,

EXHIBIT 5
PAGE 35

1   characters and dolls called or referred to as, or named or marketed in association with

2   the names "Cloe", "Jade", "Sasha", "Yasmin", "Meygan", "Dana", "Fianna",

3   "Nevra", "Cameron", "Dylan", "Eitan", "Koby", "Cade", "Ailani", "Nazalia",

4   "Talia", "Zada", "Mikko", "Colin", "Deavon", "Lakin", and any other released, or yet

5   to be released, BRATZ character.

6         6. "LIL' BRATZ" means and refers to each image, character, logo, doll, toy,

7   accessory, product, packaging or other thing or matter that is or has ever been

8   manufactured, marketed or sold by MGA, or others under license, as part of a line of

9   goods or merchandise commonly known as, or sold and marketed under the "Bratz"

10   trademark or trade dress and commonly labeled, called, referred to, named or

11   identified as "LIL' BRATZ", and specifically including, without limitation, the

12   images, characters, dolls, playsets and other products and toys called or referred to as,

13   or named or marketed in association with the names "Cloe", "Yasmin", "Sasha",

14   "Jade", "Ailani", "Nazalia", "Talia", "Zada", "Lil' Boyz", "Cameron", "Dylan",

15   "Eitan", "Koby", "Mikko", "Colin", "Deavon", "Lakin", "Lil' Bratz Slumber Party",

16   "Lil' Bratz Tote", "Lil' Bratz Spring Break", "Lil Bratz Dancefloor Funk", "Lil' Boyz

17   Dancefloor Funk", and any other released, or yet to be released, LIL' BRATZ

18   character or product theme.

19         7. "BRATZ PETZ" means and refers to each image, character, logo, doll, toy,

20   accessory, product, packaging or other thing or matter that is or has ever been

21   manufactured, marketed or sold by MGA, or others under license, as part of a line of

22   goods or merchandise commonly known as, or sold and marketed under the "Bratz"

23   trademark or trade dress and commonly labeled, called, referred to, named or

24   identified as "BRATZ PETZ", and specifically including, without limitation, the

25   images, characters and toys called or referred to as, or named or marketed in

26   association with the names, "Bratz Catz", "Brigitte", "Jolie", "Kendall", "Daphne",

27   "Bratz Petz Tokyo Catz", "Kyoto", "Cho", "Nami", "Yukiko", "Bratz Petz Foxz",

28   "Carly", "Reilly", "Shayna", "Bree", "Bratz Petz Dogz", "Shae", "Kali", "Pilar",

EXHIBIT 5
PAGE 36

1   "Abby", and any other released, or yet to be released, BRATZ PETZ character or

2   product theme.

3       8. "BRATZ BABYZ" means and refers to each image, character, logo, doll,

4   toy, accessory, product, packaging or other thing or matter that is or has ever been

5   manufactured, marketed or sold by MGA, or others under license, as part of a line of

6   goods or merchandise commonly known as, or sold and marketed under the "Bratz"

7   trademark or trade dress and commonly labeled, called, referred to, named or

8   identified as "BRATZ BABYZ", and specifically including, without limitation, the

9   images, characters and dolls called or referred to as, or named or marketed in

10  association with the names, "Cloe", "Sasha", "Jade," "Yasmin", and any other

11  released, or yet to be released, BRATZ BABYZ character or product theme.

12      9. "BRATZ BOYZ" means and refers to each male image, character, logo, doll,

13  toy, accessory, product, packaging or other thing or matter that is or has ever been

14  manufactured, marketed or sold by MGA, or others under license, as part of a line of

15  goods or merchandise commonly known as, or sold and marketed under the "Bratz"

16  trademark or trade dress and commonly labeled, called, referred to, named or

17  identified as "BRATZ BOYZ", and specifically including, without limitation, the

18  images characters, dolls, playsets and other products and toys called or referred to as,

19  or named or marketed in association with the names "Cameron", "Dylan", "Eitan",

20  "Koby", "Cade", "Mikko", "Colin", "Deavon", "Lakin", "Bratz Boyz Formal Funk",

21  "Boyz Funk Out!", "Boyz Sun-Kissed Summer", and any other released, or yet to be

22  released BRATZ BOYZ character or product theme.

23      10. "BRATZ INTELLECTUAL PROPERTY" means all intellectual and

24  industrial property rights in and to BRATZ including, without limitation, all

25  copyrights, patents, trademarks, industrial designs, trade secrets, contract and

26  licensing rights, design rights, moral rights and trade dress rights, in any country of

27  the world.

28      11. "BRYANT" means defendant Carter Bryant.

4

EXHIBIT 5
PAGE 37

12.   "COMMUNICATION[S]" means any transmission of information from one person or entity to another, including, without limitation, by personal meeting, conversation, letter, telephone, facsimile or electronic mail.  Each request that encompasses information relating in any way to communications to, from or within a business or corporate entity is hereby designated to mean, and should be construed to include, all communications by and between representatives, employees, agents or servants of the business or corporate entity.

13.   "COMPLAINT" means and refers to the Complaint filed by Mattel Inc. in this matter on April 27, 2004 and now designated as Case No. CV 04-9059 NM (RNBx) in the United States District Court for the Central District of California.

14.   "DOCUMENT[S]" incorporates the full meaning of Federal Rule of Civil Procedure 24, and shall be construed in the broadest sense to mean any and all writings, tangible things and property, of any kind, that are now or that have been in YOUR actual or constructive possession, custody or control, including, but not limited to, any handwritten, typewritten, printed, drawn, charted, taped, filmed, punched, copied, recorded, transcribed, graphic or photographic matter of any kind or nature, in, through, or from which information may be embodied, translated, conveyed or stored, whether an original, a draft or copy, however produced or reproduced, whether sent or received or neither, including, but not limited to, notes, memoranda, correspondence, letters, facsimiles and facsimile transmittals, reports, inter- and intra-office COMMUNICATIONS, work papers, work sheets, work records, ledgers, graphs, indexes, advertisements, brochures, price lists, cost sheets, estimating sheets, bills, bills of lading, bids, time cards, receipts, purchase orders, telephone records, telegrams, telexes, literature, invoices, contracts, purchase orders, estimates, recordings, transcriptions of recordings, records, books, pamphlets, periodicals, publications, papers, tapes, DVDs, video CDs, video, audio and digital recordings, television commercials, story boards, website or other spot

EXHIBIT 5
PAGE 35

advertisements, movies, movie trailers, prototypes, products, diaries, calendars, charts, drawings, sketches, messages, photographs and data contained in or accessible through any electronic data processing system, including, but not limited to, computer databases, data sheets, data processing cards, computer files and tapes, computer disks, CD-ROMs, computer meta-data, microfilm, microfiche, electronic mail, website and web pages and transcriptions thereof and all other memorializations of any conversations, meetings and conference, by telephone or otherwise.  The term DOCUMENT also means every copy of a DOCUMENT, where such copy is not an identical duplicate of the original, whether because of deletions, underlinings, showing of blind copies, initialing, signatures, receipt stamps, comments, notations, differences in stationery or any other difference or modification of any kind.

15.    "MARKET RESEARCH" means any type of research, study, survey or analysis of consumers or potential consumers of a product or potential product including, without limitation, focus groups, consumer surveys, market analyses, behavioral analyses and consumer research.

16.    "MATTEL," "PLAINTIFF," "YOU" or "YOUR" means plaintiff MATTEL, Inc. and any of its past or present officers, directors, agents, employees, representatives, consultants, attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, entities and persons acting in joint venture or partnership relationships with YOU and any others acting on YOUR behalf, pursuant to YOUR authority or subject to YOUR control.

17.    MGA" means MGA Entertainment, Inc. and any of its past or present officers, directors, agents, employees, representatives, consultants, attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, entities and persons acting in joint venture or partnership relationships with MGA

6

EXHIBIT 5
PAGE 39

and any others acting on MGA's behalf, pursuant to its authority or subject to its control.

18.     "MGA PRODUCTS" means any and all products offered for sale by MGA Entertainment, Inc., other than BRATZ, including, without limitation, "4-Ever Best Friends" and "Alien Racers".

19.     "PERSON" or "PERSONS" means all natural persons, partnerships, corporations, joint ventures and any kind of business, legal or public entity or organization, as well as its, his or her agents, representatives, employees, officers and directors and any one else acting on its, his or her behalf, pursuant to its, his or her authority or subject to its, his or her control.

20.     "PROPERTY" or "PROPERTIES" means all ideas, concepts, rights, designs, proprietary and confidential information, and other intellectual and intangible property including, without limitation, copyrights, patents, trademarks, design rights and trade secrets.

21.     The singular form includes the plural, and vice versa.

22.     The terms "any" and "all" are interchangeable.

23.     The terms "and" and "or" shall be construed disjunctively and conjunctively, and each shall include the other whenever such dual construction will serve to bring within the scope of any interrogatory, information that would otherwise not be within its scope.

24.     As used herein, the terms "relating to" and "referring to" should each be construed in the broadest possible sense to mean concerning, consisting of, referring to, describing, discussing, constituting, evidencing, containing, reflecting, mentioning, pertaining to, citing, summarizing, analyzing or bearing any logical or factual connection with the matter discussed.

### INSTRUCTIONS

1.     Mattel is instructed to serve written responses to these Interrogatories

EXHIBIT 5
PAGE 40

1   upon MGA's counsel at O'Melveny & Myers LLP, 400 South Hope Street, Los

2   Angeles, California 90071.

3          2.     These Interrogatories are deemed to be continuing in nature.  If, after

4   responding, Mattel discovers additional information responsive to any Interrogatory,

5   or part thereof, MGA requests that Mattel provide such information to MGA within

6   thirty days after acquiring knowledge of its existence or advise MGA in writing as to

7   why such additional information cannot be provided within the specified period.

8          3.     For any information withheld based on any ground, including privilege,

9   provide a written statement setting forth:  (a) the identity of all person(s) from and to

10  whom the information has been communicated; (b) the names and organization

11  position, if any, of each such person; (c) a brief description of the subject matter of the

12  information; and (d) the legal ground upon which you rely in withholding the

13  information; and (e) if work product is asserted, the proceeding for or during which

14  the information was obtained or created.

15         4.     Whenever in these Interrogatories there is a request to "IDENTIFY" a

16  COMMUNICATION, the answering party shall state the date of the

17  COMMUNICATION, the places of origin and reception of the COMMUNICATION,

18  the persons present during any portion of the COMMUNICATION if oral, the type of

19  COMMUNICATION (*i.e.* letter, facsimile, face-to-face conversation, telephone, etc.),

20  the substance of the COMMUNICATION and the DOCUMENT(S), if any, that

21  constitute, record, show or refer to the COMMUNICATION.

22         5.     Whenever in these Interrogatories there is a request to state the

23  "IDENTITY" of a PERSON, the answering party shall set forth the person's name,

24  present or last known business address, residence address and telephone numbers,

25  dates of employment, job capacity, title, status, position, rank or classification or, with

26  respect to a non-natural person, the name and address of the principal office or place

27  of business, all names under which it is doing business or ever has done business, the

28  nature of the venture (*i.e.* sole proprietorship, partnership , corporation, etc.), and the

EXHIBIT 5
PAGE 41

1   identities of its officers, directors, partners or administrators.

2        6.    Whenever in these Interrogatories there is a request to state the

3   "IDENTITY" of a DOCUMENT, the answering party shall identify, by name, all

4   authors and recipients of the DOCUMENT, the date of the DOCUMENT, the person

5   or entity who currently has possession, custody and control of the DOCUMENT, and

6   describe the DOCUMENT in a manner sufficient for MGA to draft a discovery

7   demand requesting production of the DOCUMENT.

8        7.    Whenever in these Interrogatories there is a request to "IDENTIFY"

9   PROPERTY, the answering party shall describe the PROPERTY as specifically as

10  possible, state the name and current employer, if known, of the author(s), inventor(s),

11  owner(s) and any assignee(s) and licensee(s) of the PROPERTY, state any copyright

12  registration, recordation information relative to a copyright interest, trademark

13  registration and patent numbers of the PROPERTY, if any, and state the dates of

14  conception, authorship, invention and reduction to practice of the PROPERTY.

15

16  **INTERROGATORIES**

17  **INTERROGATORY NO. 1.:**

18      State all facts, with particularity, and IDENTIFY all DOCUMENTS that

19  support YOUR contention, if YOU so contend, that YOU have suffered harm as a

20  result of any act or omission of MGA.

21  **INTERROGATORY NO. 2.:**

22      For each fact stated in response to Interrogatory No. 1, IDENTIFY all

23  PERSONS with knowledge of each fact.

24  **INTERROGATORY NO. 3.:**

25      State, with particularity, the nature, amount, cause and calculation of every item

26  of YOUR alleged damages, including, without limitation, general, actual and statutory

27  damages, restitution, disgorgement of unlawful profits, lost profits, lost payments, lost

28

9

EXHIBIT 5
PAGE 42

revenues, lost monies, lost royalties or license fees, reputational harm, lost relationships, lost business opportunities, interest, attorneys' fees, costs, expenses, and any other form of injury or damage or quantifiable remedy that YOU seek to recover in this lawsuit.

**INTERROGATORY NO. 4.:**

State all facts, with particularity, and IDENTIFY all DOCUMENTS that support YOUR contention, if YOU so contend, that YOU are entitled to exemplary damages, attorneys' fees and costs.

**INTERROGATORY NO. 5.:**

State all facts, with particularity, and IDENTIFY all DOCUMENTS that YOU contend prove, directly or circumstantially, that MGA copied YOUR PROPERTY, including, without limitation, "Toon Teens".

**INTERROGATORY NO. 6.:**

IDENTIFY each COMMUNICATION that YOU have ever made, received, or participated in that referred to, mentioned, or concerned this lawsuit.

**INTERROGATORY NO. 7.:**

IDENTIFY all PERSONS interviewed for the July 18, 2003 Wall Street Journal article.

**INTERROGATORY NO. 8.:**

Describe, with particularity, each error contained in the July 18, 2003 Wall Street Journal article by explaining why and in what way each fact is incorrect.

**INTERROGATORY NO. 9.:**

State, with particularity, when and how MATTEL first learned of BRATZ.

**INTERROGATORY NO. 10.:**

State, with particularity, when and how MATTEL first learned that BRYANT performed work for MGA.

EXHIBIT 5
PAGE 43

1

**INTERROGATORY NO. 11.:**

2      State, with particularity, when and how MATTEL first learned that BRYANT

3  conceived of the BRATZ CONCEPT.

4

5  Dated: February 4, 2005

                DIANA M. TORRES

6                                  PAULA E. AMBROSINI
                                  ALICIA C. MEYER

7                                  O'MELVENY & MEYERS LLP

8

9                                  Paula E. Ambrosini,

10                                  Attorneys for MGA Entertainment, Inc.

11  LA2:746290.2

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

11

EXHIBIT 5
PAGE 44

**PROOF OF SERVICE**

I, Suzanne I. Jimenez, declare:

I am a resident of the State of California and over the age of eighteen years, and not a party to the within action; my business address is 400 South Hope Street, Los Angeles, California 90071-2899. On February 4, 2005, I served the within document:

**MGA'S FIRST SET OF INTERROGATORIES TO MATTEL, INC.**

☒    by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles addressed as set forth below. I am readily familiar with the firm's practice of collecting and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☒    by putting a true and correct copy thereof, together with an unsigned copy of this declaration, in a sealed envelope designated by the carrier, with delivery fees paid or provided for, for delivery the same business day to the person(s) listed above. I am readily familiar with this firm's practice for collection and processing of overnight courier correspondence. In the ordinary course of business, such correspondence collected from me would be processed on the same day, with fees thereon fully prepaid.

Michael T. Zeller                  **VIA HAND-DELIVERY & MAIL**
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Tel: (213) 443-3000
Fax: (213) 443-3100

Keith Jacoby                      **VIA REGULAR MAIL**
Littler Mendelson
A Professional Corporation
2049 Century Park East, 5th Floor
Los Angeles, CA 90067-3107
Tel: (310) 553-0308
Fax: (310) 553-5583

I declare under penalty of perjury under the laws of the United States that the above is true and correct.

Executed on February 4, 2005, at Los Angeles, California.

_Suzanne I. Jimenez_
Suzanne I. Jimenez

**EXHIBIT 5**
**PAGE 45**

EXHIBIT 6

THOMAS J. NOLAN (Bar No. 066992)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue
Los Angeles, California 90071-3144
Telephone:   (213) 687-5000
Facsimile:   (213) 687-5600
E-mail:   tnolan@skadden.com

KENNETH A. PLEVAN (Admitted *Pro Hac Vice*)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
4 Times Square
New York, NY  10036
Telephone:   (212) 735-3000
Facsimile:   (212) 735-2000
E-mail:   kplevan@skadden.com

Attorneys for Counter-Defendants,
MGA ENTERTAINMENT, INC., ISAAC LARIAN, MGA ENTERTAINMENT
(HK) LIMITED, AND MGAE de MEXICO S.R.L. de C.V.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation<br><br>Defendant. | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with Case No. 04-9059 and Case No. 05-2727<br><br>**MGA'S SECOND SET OF INTERROGATORIES TO MATTEL, INC.**<br><br>Honorable Stephen G. Larson<br>Courtroom 1 |

*12 - 4*

MGA'S SECOND SET OF INTERROGATORIES TO MATTEL, INC.          NO. CV 04-9049 SGL (RNBx)

EXHIBIT 6
PAGE 46

1

Consolidated with MATTEL, INC. v.
2  BRYANT and MGA
ENTERTAINMENT, INC. v.
3  MATTEL, INC.

4

**PROPOUNDING PARTY:**   MGA ENTERTAINMENT, INC.

**RESPONDING PARTY:**   MATTEL, INC.

**SET NUMBER:**   SECOND

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MGA'S SECOND SET OF INTERROGATORIES TO MATTEL, INC.          NO. CV 04-9049 SGL (RNBx)

EXHIBIT 6
PAGE 47

MGA Entertainment Inc. ("MGA"), hereby requests that Plaintiff, Mattel Inc. ("Mattel") respond to the following Second Set of Interrogatories separately, fully, and under oath, pursuant to Rule 33 of the Federal Rules of Civil Procedure, within (30) days of service, in accordance with the definitions and instructions set forth herein.

## DEFINITIONS

1.    "AFFILIATES" means any and all corporations, proprietorships, d/b/a's, partnerships, joint ventures and business entities of any kind that, directly or indirectly, in whole or in part, own or control, are under common ownership or control with, or are owned or controlled by a PERSON, party or entity, including without limitation each parent, subsidiary and joint venture of such person, party or entity.

2.    "ALLEGED COPYRIGHTED WORKS" means the copyrighted works alleged in paragraph 83 of MATTEL'S Second Amended Answer in Case No. 05-2727 and Counterclaim in THIS ACTION.

3.    "ALLEGED TRADE SECRETS" means the trade secret material alleged in paragraphs 107 thru 111 of MATTEL'S Second Amended Answer in Case No. 05-2727 and Counterclaim in THIS ACTION.

4.    "BARBIE" means and refers to each image, character, logo, doll, toy, styling head, plush toy, play set, accessory, product, packaging or any other thing that is or has ever been manufactured, marketed or sold by YOU, or others under licensed by YOU, as part of a line of goods or merchandise commonly known as, or sold and marketed under the name "Barbie."

5.    "BRYANT" means Carter Bryant individually and does not include his agents, representatives, attorneys, experts or any other PERSON acting on his behalf, pursuant to his authority or subject to his control.

6.    "BRATZ" means and refers to each image, character, logo, doll, fashion doll, plush toy, styling head, toy, accessory, product, packaging, theme, or other

2

1  thing or matter that is or has ever been manufactured, marketed or sold by MGA, or

2  others under license, as part of a line of goods or merchandise commonly known as,

3  or sold and marketed under the "Bratz" trademark or trade dress.

4      7.    "COLLECT," "COLLECTED" or "COLLECTION" with reference to

5  DOCUMENTS means to collect, review, produce, request, seek, look for, search for,

6  analyze or in any other way collect or review or attempt to collect or review such

7  DOCUMENTS in connection with YOUR search for, review of and/or production of

8  DOCUMENTS in this ACTION."

9      8.    The term "CONFLICT OF INTEREST QUESTIONNAIRE" refers to

10 Mattel's form of employment agreement concerning, _inter alia_, relations, if any,

11 between Mattel's employees, suppliers, and/or competition, whether known by the

12 title "Conflict of Interest Questionnaire" or any other title, including without

13 limitation the form of Conflict of Interest Questionnaire entitled "Conflict of Interest

14 Questionnaire" executed by Carter Bryant on or about January 4, 1999.

15     9.    "CONTESTED MATTEL PRODUCTS" means:

16     (a) each female fashion doll and its packaging that is or has ever been

17 manufactured, marketed or sold by MATTEL, or others under license by MATTEL,

18 as part of a line of goods or merchandise commonly known as, or sold and marketed

19 under the "My Scene" trademark or trade dress;

20     (b) each image, character, logo, fashion doll, doll, toy, accessory, product,

21 packaging or other thing or matter that is or has ever been manufactured, marketed or

22 sold by MATTEL, or others under license by MATTEL, as part of a line of goods or

23 merchandise commonly known as, or sold and marketed under the "My Scene"

24 "Chillin' Out!" trademark or trade dress, the "My Scene" "Night on the Town"

25 trademark or trade dress, the "My Scene" "My Bling Bling" trademark or trade

26 dress, and/or the "My Scene" "Jammin' in Jamaica" trademark or trade dress;

27     (c) each plush toy and its packaging that is or has ever been manufactured,

28 marketed or sold by MATTEL, or others under license by MATTEL, as part of a line

3

1   of goods or merchandise commonly known as, or sold and marketed under the "My

2   Scene" trademark or trade dress;

3       (d) each styling head that is or has ever been manufactured, marketed or sold

4   by MATTEL, or others under license by MATTEL, as part of a line of goods or

5   merchandise commonly known as, or sold and marketed under the "My Scene"

6   trademark or trade dress;

7       (e) the "My Scene Sound Lounge" play set and packaging;

8       (f) each image, character, logo, doll, toy, accessory, product, packaging or any

9   other thing that is or has ever been manufactured, marketed or sold by MATTEL, or

10   others under license by MATTEL, as part of a line of goods or merchandise

11   commonly known as, or sold and marketed under the name "Little Mommy";

12       (g) each image, character, logo, doll, toy, accessory, product, packaging or any

13   other thing that is or has ever been manufactured, marketed or sold by YOU, or

14   others under licensed by YOU, as part of a line of goods or merchandise commonly

15   known as, or sold and marketed under the name "Wee 3 Friends"; and

16       (h) each image, character, logo, toy, accessory, product, packaging or any

17   other thing that is or has ever been manufactured, marketed or sold by MATTEL, or

18   others under license by MATTEL, as part of a line of goods or merchandise

19   commonly known as, or sold and marketed under the name "AcceleRacerS."

20      10.   "COUNTERCLAIMS" means Mattel, Inc.'s Second Amended Answer

21   and Counterclaims for: 1. Copyright Infringement; 2. Violation of the Racketeer

22   Influenced and Corrupt Organizations Act; 3. Conspiracy to Violate the Racketeer

23   Influenced and Corrupt Organizations Act; 4. Misappropriation of Trade Secrets; 5.

24   Breach of Contract; 6. Intentional Interference with Contract; 7. Breach of Fiduciary

25   Duty; 8. Aiding and Abetting Breach of Fiduciary Duty; 9. Breach of Duty of

26   Loyalty; 10. Aiding and Abetting Breach of Duty of Loyalty; 11. Conversion; 12.

27   Unfair Competition; and 13. Declaratory Relief filed July 12, 2007, in MGA v.

28   Mattel, Inc., CV 05-02727, including any amendment or supplement thereto.

4

EXHIBIT 6
PAGE 56

11.    "DESCRIBE THE SALES AND PROFITS" means to state fully and separately for each MATTEL PRODUCT by year (a) the number of units of each such MATTEL PRODUCT sold by YOU or YOUR licensees, (b) the gross and net revenue received by YOU from such sales of each such MATTEL PRODUCT, (c) all costs YOU have incurred in connection with each such MATTEL PRODUCT, including but not limited to YOUR cost of goods sold, and (d) YOUR gross and net profits from each such MATTEL PRODUCT.

12.    "DESIGN" or "DESIGNS" means any and all representations, whether two-dimensional or three dimensional, and whether in tangible, digital, electronic or other form, including but not limited to all works, designs, artwork, sketches, drawings, illustrations, representations, depictions, blue prints, schematics, diagrams, images, sculptures, prototypes, models, samples, rotocasts, reductions to practice, development, inventions, or improvements, as well as all other items, things and DOCUMENTS in which any of the foregoing are or have been expressed, embodied, contained, fixed or reflected in any manner, which in whole or in part.

13.    "DIGITAL INFORMATION" means any information created or stored digitally, including but not limited to electronically, magnetically, or optically.

14.    "DOCUMENT[S]" incorporates the full meaning of Federal Rule of Civil Procedure 34, and shall be construed in the broadest sense to mean any and all DIGITAL INFORMATION, STORAGE DEVICE, writings, tangible things and property, of any kind, that are now or that have been in YOUR actual or constructive possession, custody or control, including, but not limited to, any handwritten, typewritten, printed, drawn, charted, taped, filmed, punched, copied, recorded, transcribed, graphic or photographic matter of any kind or nature, in, through, or from which information may be embodied, translated, conveyed or stored, whether an original, a draft or copy, however produced or reproduced, whether sent or received or neither, including, but not limited to, notes, memoranda, correspondence, letters, facsimiles and facsimile transmittals, reports, inter- and intra-office

1  COMMUNICATIONS, work papers, work sheets, work records, ledgers, graphs,

2  indexes, advertisements, brochures, price lists, cost sheets, estimating sheets, bills,

3  bills of lading, bids, time cards, receipts, purchase orders, telephone records,

4  telegrams, telexes, literature, invoices, contracts, purchase orders, estimates,

5  recordings, transcriptions of recordings, records, books, pamphlets, periodicals,

6  publications, papers, tapes, DVDs, video CDs, video, audio and digital recordings,

7  television commercials, story boards, website or other spot advertisements, movies,

8  movie trailers, prototypes, products, diaries, calendars, charts, drawings, sketches,

9  messages, photographs and data contained in or accessible through any electronic

10  data processing system, including, but not limited to, computer databases, data sheets,

11  data processing cards, computer files and tapes, computer disks, CD-ROMs,

12  computer metadata, microfilm, microfiche, electronic mail, website and web pages

13  and transcriptions thereof and all other memorializations of any conversations,

14  meetings and conference, by telephone or otherwise.  The term DOCUMENT also

15  means every copy of a DOCUMENT, where such copy is not an identical duplicate

16  of the original, whether because of deletions, underlinings, showing of blind copies,

17  initialing, signatures, receipt stamps, comments, notations, differences in stationery

18  or any other difference or modification of any kind.

19      15.    The term "EMPLOYEE INVENTIONS AGREEMENT" refers to

20  Mattel's form of employment agreement concerning, inter alia, (i) ownership of

21  inventions, and (ii)(a) trade secrets and/or (iii) conflicts, whether known by the title

22  "Employee Confidential Information and Inventions Agreement" or any other title,

23  including without limitation the form of Employee Inventions Agreement entitled

24  "Employee Confidential Information and Inventions Agreement" executed by Carter

25  Bryant on or about January 4, 1999.

26      16.    "IDENTIFY," "IDENTITY," or "IDENTIFYING" mean the following:

27          •    With reference to an *individual*, means to state fully and

28  separately for each, such individual's full name, any known business title, current or

6

EXHIBIT _V_
PAGE _52_

last known business affiliation, current or last known residential address, current or last known business address, current or last known relationship with MATTEL, and current or last known phone number(s).

• With reference to an *entity*, means to state, fully and separately for each, such entity's full name, state (or country) of incorporation or organization, present or last known address, and present or last known telephone number(s).

• With reference to any *DOCUMENT*, means to describe each DOCUMENT by Bates number. If the DOCUMENT does not have a Bates number, IDENTIFY means to provide a complete description of the DOCUMENT such that it may be the subject of a request for production of documents, including by stating the date, identity of the author, addresses(s), recipient(s), signatories, parties, or other PERSONS identified in the DOCUMENT, its present location or custodian and a description of its contents.

• With reference to any MATTEL or MGA product, means to state fully and separately for each, the full name of the product; the number of the product; the SKU of the product; any other applicable designation of the product; the period of time in which the product has been sold; and IDENTIFY each PERSON who has licensed such product.

17. "MATTEL," "YOU," or "YOUR" means the party Mattel, Inc. and any of its past or present officers, directors, employees, parents, subsidiaries, divisions, affiliates, predecessors-in-interest, and joint venture partners.

18. "MATTEL EMPLOYEE" means any of MATTEL's current or former employees.

19. "MATTEL'S INITIAL DISCLOSURES" means Mattel, Inc.'s Consolidated (1) Initial Disclosures Relating to MGA's Unfair Competition Claims, and (2) Second Supplemental Initial Disclosures Relating to Mattel's Claims Against Bryant and MGA, dated January 5, 2007 and any supplemental or amendment thereto.

7

EXHIBIT V
PAGE 53

20.    "MATTEL PRODUCTS," includes all products sold or offered by sale by MATTEL under or using the name "Barbie," including without limitation, all CONTESTED MATTEL PRODUCTS, all MY SCENE DOLLS, and any doll sold or offered for sale under the name "Diva Starz."

21.    "MY SCENE" means and refers to each image, character, logo, doll, fashion doll, toy, styling head, plush toy, play set, accessory, product, packaging or any other thing that is or has ever been manufactured, marketed or sold by YOU, or others under licensed by YOU, as part of a line of goods or merchandise commonly known as, or sold and marketed under the name "My Scene."

22.    "MY SCENE DOLL" means any fashion doll that is or has ever been distributed, marketed, sold or offered for sale under the name "My Scene" or as part of the "My Scene" line, including separate themes.

23.    "PERSON" or "PERSONS" means all natural persons, partnerships, joint ventures and any kind of business, legal or public entity or organization, as well as its, its or her agents, representatives, employees, officers and directors and any one else acting on its, its or her behalf, pursuant to its, its or her authority or subject or its, its or her control.

24.    "REFERRING OR RELATING TO" means constituting, embodying, containing, referring to, commenting on, evidencing, regarding, discussing, describing, mentioning, reflecting, expressing, pertaining to, concerning, supporting, contradicting, negating, revoking or otherwise relating to in any manner.

25.    "STATE THE COMPLETE FACTUAL BASIS FOR YOUR CONTENTION" means to (i) describe in detail the complete factual for the identified contention; (ii) IDENTIFY all DOCUMENTS that REFER OR RELATE TO that contention; and (iii) IDENTIFY all witnesses who may have information that REFERS OR RELATES TO the contention.

26.    "STORAGE DEVICE" means any computer hard drive, memory, USB device, tape, storage array or any other device or medium that allows a user, whether

8

1  permanently, temporarily or otherwise, to create, generate, transmit, copy, retain,
2  store, or maintain DIGITAL INFORMATION.

3      27.   "SOURCE OF INFORMATION" means any PERSON or medium
4  containing DOCUMENTS, DIGITAL INFORMATION, or other information,
5  whether in paper, electronic or other form, including, but not limited to any
6  STORAGE DEVICE, file, file cabinet, or any other source of information or
7  DOCUMENTS.

8      28.   "THIS ACTION" refers to *Mattel, Inc. v. Bryant*, Case No. CV 04-9059
9  SGL (RNBx), filed on April 27, 2004 and all cases consolidated or coordinated
10  therewith.

11      29.   The singular form of a noun or pronoun includes within its meaning the
12  plural form of the noun or pronoun so used, and vice versa; the use of the masculine
13  form of a pronoun also includes within its meaning the feminine form of the pronoun
14  so used, and vice versa; the use of any tense of any verb includes also within its
15  meaning all other tenses of the verb so used, whenever such construction results in a
16  broader request for information; and "and" includes "or" and vice versa, whenever
17  such construction results in a broader disclosure of documents or information.

18
19                          **INSTRUCTIONS**

20      1.   Mattel is instructed to serve written responses to these Interrogatories on
21  MGA's counsel at Skadden, Arps, Slate, Meagher & Flom, LLP, 300 South Grand
22  Avenue, Los Angeles, California 90071.

23      2.   Pursuant to Federal Rule of Civil Procedure 33, Mattel shall provide its
24  answers under oath within 30 days of service.

25      3.   If, in responding to these Interrogatories, Mattel asserts an ambiguity in
26  either a particular Interrogatory or an Instruction of Definition applicable thereto,
27  Mattel shall identify in the response to such Interrogatory the language it contends is
28  ambiguous and state the interpretation used in responding.

9

4.     These Interrogatories impose a continuing obligation subsequent to your initial production to the full extent provided for in Rule 26(e) of the Federal Rules of Civil Procedure.

5.     If, in responding to these Interrogatories, any information is not being provided based on an objection or otherwise, IDENTIFY the information not be provided and explain the complete basis supporting YOUR refusal and/or failure to provide that information.

6.     Unless otherwise noted, these Interrogatories seek information from January 1, 1995, to the present.

10

EXHIBIT 6
PAGE 56

## INTERROGATORIES

INTERROGATORY NO. 12:

IDENTIFY each version of the EMPLOYEE INVENTIONS AGREEMENT adopted and/or used by or on behalf of MATTEL, including, without limitation, (a) the IDENTITY of all persons who participated in or were consulted concerning the creation, drafting, adoption, and/or use of the EMPLOYEE INVENTIONS AGREEMENT; (b) the date(s) and/or range(s) of dates MATTEL'S used each version of the EMPLOYEE INVENTIONS AGREEMENT; and (c) the reason(s) for the changes between each version.

INTERROGATORY NO. 13:

Describe in detail each instance in which any provision of an EMPLOYEE INVENTIONS AGREEMENT was breached or alleged to be breached by an employee, independent contractor, or any other person with whom MATTEL had entered into an EMPLOYEE INVENTIONS AGREEMENT, including without limitation: (a) a complete description of the conduct comprising said breach; and (b) a complete description of all steps taken by MATTEL in response to said breach or alleged breach (*including, for example, conducting an investigation or arranging that an investigation be conducted on MATTEL'S behalf; issuing a warning, whether written or oral; issuing any other notification, whether written or oral; initiating civil litigation, including the name, case number and court of any such litigation; initiating any other legal proceeding, including but not limited to criminal proceedings, including the name, case number and court of any such proceeding; making an exception, whether written, oral, express, or implied; making a determination that no breach occurred, whether or not such determination was documented; or no action*).

11

EXHIBIT 6
PAGE 57

1 | INTERROGATORY NO. 14:

2 |      IDENTIFY each version of the CONFLICT OF INTEREST

3 | QUESTIONNAIRE adopted and/or used by or on behalf of MATTEL, including,

4 | without limitation, (a) the identity of all persons who participated in or were

5 | consulted concerning the creation, drafting, adoption, and/or use of the CONFLICT

6 | OF INTEREST QUESTIONNAIRE; (b) the date(s) and/or range(s) of dates

7 | MATTEL'S used each version of the CONFLICT OF INTEREST

8 | QUESTIONNAIRE; and (c) the reason(s) for the changes between each version.

9 |

10 | INTERROGATORY NO. 15:

11 |      Describe in detail each instance in which any provision of a CONFLICT OF

12 | INTEREST QUESTIONNAIRE was breached or alleged to be breached by an

13 | employee, independent contractor, or any other person with whom MATTEL had

14 | entered into a CONFLICT OF INTEREST QUESTIONNAIRE, including without

15 | limitation: (a) a description of the conduct comprising said breach; and (b) a

16 | description of all steps taken by MATTEL in response to said breach or alleged

17 | breach (*including, for example, conducting an investigation or arranging that an*

18 | *investigation be conducted on MATTEL'S behalf; issuing a warning, whether written*

19 | *or oral; issuing any other notification, whether written or oral; initiating civil*

20 | *litigation, including the name, case number and court of any such litigation;*

21 | *initiating any other legal proceeding, including but not limited to criminal*

22 | *proceedings, including the name, case number and court of any such proceeding;*

23 | *making an exception, whether written, oral, express, or implied; making a*

24 | *determination that no breach occurred, whether or not such determination was*

25 | *documented; or no action*).

26 |

27 |

28 |

12

EXHIBIT 𝟷𝟶
PAGE 58

1  INTERROGATORY  NO. 16:

2      STATE THE COMPLETE FACTUAL BASIS FOR YOUR CONTENTION

3  that MATTEL has a viable affirmative claim for relief against MGA even if the

4  evidence establishes both of the following:  (i) in August and/or September, 1998,

5  Carter Bryant conceived of the line of fashion dolls that he named Bratz, <u>and</u> (ii) the

6  design for the BRATZ dolls sold by MGA in 2001 was reduced to practice after

7  October 20, 2000.

8

9  INTERROGATORY  NO. 17:

10      STATE THE COMPLETE FACTUAL BASIS FOR YOUR CONTENTION

11  that MATTEL employees in the Design Center who personally knew Carter Bryant

12  did not know and/or believe, immediately following the launch of MGA's Bratz

13  dolls in 2001, that Carter Bryant was the creator of the concept for the BRATZ line

14  of dolls.

15

16  INTERROGATORY  NO. 18:

17      STATE THE COMPLETE FACTUAL BASIS FOR YOUR CONTENTION

18  that any of the fashions and/or accessories for the BRATZ line of dolls sold by MGA

19  violate or infringe any of MATTEL'S intellectual property and/or proprietary rights.

20

21  INTERROGATORY  NO. 19:

22      IDENTIFY with specificity each element of each ALLEGED

23  COPYRIGHTED WORK that MATTEL contends is an original element protectable

24  under the United States Copyright Laws.

25

26

27

28

13

**INTERROGATORY NO. 20:**

IDENTIFY with specificity each ALLEGED TRADE SECRET, including the IDENTITY of each DOCUMENT that embodies or REFERS OR RELATES to each ALLEGED TRADE SECRET.

**INTERROGATORY NO. 21:**

IDENTIFY each PERSON who has had access to each ALLEGED TRADE SECRET, including (a) the ALLEGED TRADE SECRET each PERSON had access to; and (b) the date or dates each PERSON had this access.

**INTERROGATORY NO. 22:**

STATE THE COMPLETE FACTUAL BASIS FOR YOUR CONTENTION that MGA misappropriated any ALLEGED TRADE SECRET.

**INTERROGATORY NO. 23:**

STATE THE COMPLETE FACTUAL BASIS FOR YOUR CONTENTION that the ALLEGED TRADE SECRETS are protectable.

**INTERROGATORY NO. 24:**

DESCRIBE THE SALES AND PROFITS for each MATTEL PRODUCT that has been sold or offered for sale by YOU or YOUR licensees. (The time period applicable to this interrogatory is from January 1, 1990 to the present).

**INTERROGATORY NO. 25:**

IDENTIFY, fully and separately, each and every PERSON who was involved in the development or marketing of the CONTESTED MATTEL PRODUCTS by stating each PERSON'S name, role, and start/end date. (As used in this Interrogatory, the phrase "development or marketing" means the entire process of

14

1  creating and selling a new product or design, including without limitation, the

2  marketing, advertising, promotion, licensing, offering for sale, conception, origin,

3  creation, design, development, sculpting, engineering, reduction to practice, tooling

4  or painting of a product or embodiment of a product).

5

6  INTERROGATORY NO. 26:

7      Describe in detail all instances in which a PERSON expressed confusion as to

8  source or sponsorship between any MATTEL products, packaging or advertising

9  (including, but not limited to, the CONTESTED MATTEL PRODUCTS) and any

10  MGA products, packaging or advertising (including, but not limited to, "BRATZ"),

11  by: (i) stating the facts and circumstances of each instance; (ii) IDENTIFYING all

12  DOCUMENTS that REFER OR RELATE TO each instance; and (iii)

13  IDENTIFYING all witnesses who may have information that REFER OR RELATE

14  TO each instance.

15

16  INTERROGATORY NO. 27:

17      For each PERSON listed in MATTEL'S INITIAL DISCLOSURES,

18  IDENTIFY each PERSON and describe in detail each PERSON's alleged

19  knowledge of the subjects or information identified in MATTEL'S INITIAL

20  DISCLOSURES.

21

22  INTERROGATORY NO. 28:

23      Describe in detail the complete factual basis for YOUR COUNTERCLAIMS,

24  including, without limitation all facts, DOCUMENTS, and witnesses that REFER

25  OR RELATE TO YOUR COUNTERCLAIMS.

26

27

28

EXHIBIT 6
PAGE 61

INTERROGATORY NO. 29:

Describe in detail any estimate or calculation of damage, loss, injury, or unjust enrichment, by reason of any act or omission alleged in YOUR COUNTERCLAIMS, that YOU have made or that has been made on YOUR behalf or at YOUR request, including all facts, DOCUMENTS or witnesses RELATING TO each estimate or calculation.

INTERROGATORY 30:

IDENTIFY each and every SOURCE OF INFORMATION from which YOU have COLLECTED DOCUMENTS that REFER OR RELATE TO BRATZ.

INTERROGATORY 31:

STATE THE COMPLETE FACTUAL BASIS FOR YOUR CONTENTION that any BRATZ doll is substantially similar to, a copy or a derivative of BRATZ DESIGNS created by Carter Bryant on or before October 19, 2000.

DATED: December 4, 2007

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP

By: _____
Robert J. Herrington
Attorneys for Counter-Defendants, MGA ENTERTAINMENT, INC., ISAAC LARIAN, MGA ENTERTAINMENT (HK) LIMITED, AND MGAE de MEXICO S.R.L. de C.V.

16

EXHIBIT 6
PAGE 62

# **PROOF OF SERVICE**

## STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the county of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 300 South Grand Avenue, 34th Floor, Los Angeles, CA 90071.

On December 4, 2007, I served the foregoing document described as:

## **MGA'S SECOND SET OF INTERROGATORIES TO MATTEL, INC.**

on the interested parties in this action addressed as follows:

## **SEE ATTACHED SERVICE LIST**

☒    (BY PERSONAL SERVICE)    ☐    By personally delivering copies to the person served. (FEDERAL)

☒    I caused such document to be hand delivered to the office of the addressee. (FEDERAL) [As Noted.]

☒    **(BY MAIL)** I am readily familiar with the firm's practice for the collection and processing of correspondence for mailing with the United States Postal Service and the fact that the correspondence would be deposited with the United States Postal Service that same day in the ordinary course of business; on this date, the above-referenced correspondence was placed for deposit at Los Angeles, California and placed for collection and mailing following ordinary business practices. [As Noted.]

I declare under penalty of perjury under the laws of the State of California and the United States of America that the above is true and correct.

Executed on December 4, 2007 at Los Angeles, California.

Allison G. Velkes
PRINT NAME                          SIGNATURE

1

EXHIBIT 6
PAGE 63

## SERVICE LIST

John B. Quinn, Esq.
Michael T. Zeller, Esq.
Jon D. Corey, Esq.
Timothy L. Alger, Esq.
Quinn Emanuel Urquhart Oliver &
Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
(213) 443-3000
(213) 443-3100 (Fax)

Attorneys for Mattel, Inc.
[Personal Service]

John W. Keker, Esq.
Michael H. Page, Esq.
Keker & Van Nest, LLP
710 Sansome Street
San Francisco, CA 94111
(415) 391-5400
(415) 397-7188 (Fax)

Attorneys for Carter Bryant
[Mail]

Mark E. Overland, Esq.
Alexander H. Cote, Esq.
David C. Scheper, Esq.
Overland Borenstein Scheper & Kim
300 South Grand Avenue, Suite 2750
Los Angeles, CA 90071
(213) 613-4655
(213) 613-4656 (Fax)

Attorneys for Carlos Gustavo Machado
Gomez
[Mail]

2

EXHIBIT 6
PAGE 64

EXHIBIT 7

CALENDARED

RECEIVED

DEC 1 0 2007

1 | THOMAS J. NOLAN (Bar No. 066992)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2 | 300 South Grand Avenue
Los Angeles, California 90071-3144
3 | Telephone: (213) 687-5000
Facsimile: (213) 687-5600
4 | E-mail: tnolan@skadden.com

5
KENNETH A. PLEVAN (Admitted *Pro Hac Vice*)
6 | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
4 Times Square
7 | New York, NY 10036
Telephone: (212) 735-3000
8 | Facsimile: (212) 735-2000
E-mail: kplevan@skadden.com
9
Attorneys for Counter-Defendants,
10 | MGA ENTERTAINMENT, INC., ISAAC LARIAN, MGA ENTERTAINMENT
(HK) LIMITED, AND MGAE de MEXICO S.R.L. de C.V.

11

12 | **UNITED STATES DISTRICT COURT**

13 | **CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | | |
|---|---|---|
| 14 | CARTER BRYANT, an individual | ) CASE NO. CV 04-9049 SGL (RNBx) |
| 15 | Plaintiff, | ) Consolidated with Case No. 04-9059 |
| 16 | v. | ) and Case No. 05-2727 |
| 17 | MATTEL, INC., a Delaware corporation | ) **MGA'S AMENDED** |
| 18 | | ) **SUPPLEMENTAL** |
| | Defendant. | ) **INTERROGATORY TO** |
| 19 | | ) **MATTEL, INC. REGARDING** |
| 20 | | ) **ITS AFFIRMATIVE** |
| | | ) **DEFENSES** |
| 21 | | ) |
| 22 | | ) Honorable Stephen G. Larson |
| 23 | | ) Courtroom 1 |

24

25

26

27

28

12-6

EXHIBIT 7
PAGE 65

| | |
|---|---|
| 1 | |
| 2 | Consolidated with MATTEL, INC. v. BRYANT and MGA ENTERTAINMENT, INC. v. MATTEL, INC. ) ) ) ) ) |
| 3 | |
| 4 | |

**PROPOUNDING PARTY:** MGA ENTERTAINMENT, INC.

**RESPONDING PARTY:** MATTEL, INC.

**SET NUMBER:** (AMENDED) SUPPLEMENTAL

1   MGA Entertainment Inc. ("MGA"), hereby requests that Plaintiff, Mattel Inc.

2   ("Mattel") respond to the following (Amended) SUPPLEMENTAL Interrogatory

3   fully, and under oath, pursuant to Rule 33 of the Federal Rules of Civil Procedure,

4   within (30) days of service, in accordance with the definitions and instructions set

5   forth herein.

6                               **DEFINITIONS**

7       1.      "DIGITAL INFORMATION" means any information created or stored

8   digitally, including but not limited to electronically, magnetically, or optically.

9       2.      "DOCUMENT[S]" incorporates the full meaning of Federal Rule of

10   Civil Procedure 34, and shall be construed in the broadest sense to mean any and all

11   DIGITAL INFORMATION, STORAGE DEVICE, writings, tangible things and

12   property, of any kind, that are now or that have been in YOUR actual or constructive

13   possession, custody or control, including, but not limited to, any handwritten,

14   typewritten, printed, drawn, charted, taped, filmed, punched, copied, recorded,

15   transcribed, graphic or photographic matter of any kind or nature, in, through, or

16   from which information may be embodied, translated, conveyed or stored, whether

17   an original, a draft or copy, however produced or reproduced, whether sent or

18   received or neither, including, but not limited to, notes, memoranda, correspondence,

19   letters, facsimiles and facsimile transmittals, reports, inter- and intra-office

20   COMMUNICATIONS, work papers, work sheets, work records, ledgers, graphs,

21   indexes, advertisements, brochures, price lists, cost sheets, estimating sheets, bills,

22   bills of lading, bids, time cards, receipts, purchase orders, telephone records,

23   telegrams, telexes, literature, invoices, contracts, purchase orders, estimates,

24   recordings, transcriptions of recordings, records, books, pamphlets, periodicals,

25   publications, papers, tapes, DVDs, video CDs, video, audio and digital recordings,

26   television commercials, story boards, website or other spot advertisements, movies,

27   movie trailers, prototypes, products, diaries, calendars, charts, drawings, sketches,

28   messages, photographs and data contained in or accessible through any electronic

2

EXHIBIT 7
PAGE 67

1  data processing system, including, but not limited to, computer databases, data sheets,

2  data processing cards, computer files and tapes, computer disks, CD-ROMs,

3  computer metadata, microfilm, microfiche, electronic mail, website and web pages

4  and transcriptions thereof and all other memorializations of any conversations,

5  meetings and conference, by telephone or otherwise.  The term DOCUMENT also

6  means every copy of a DOCUMENT, where such copy is not an identical duplicate

7  of the original, whether because of deletions, underlinings, showing of blind copies,

8  initialing, signatures, receipt stamps, comments, notations, differences in stationery

9  or any other difference or modification of any kind.

10      3.      "IDENTIFY," "IDENTITY," or "IDENTIFYING" mean the following:

11      •      With reference to an *individual*, means to state fully and

12  separately for each, such individual's full name, any known business title, current or

13  last known business affiliation, current or last known residential address, current or

14  last known business address, current or last known relationship with MATTEL, and

15  current or last known phone number(s).

16      •      With reference to an *entity*, means to state, fully and separately

17  for each, such entity's full name, state (or country) of incorporation or organization,

18  present or last known address, and present or last known telephone number(s).

19      •      With reference to any *DOCUMENT*, means to describe each

20  DOCUMENT by Bates number.  If the DOCUMENT does not have a Bates number,

21  IDENTIFY means to provide a complete description of the DOCUMENT such that it

22  may be the subject of a request for production of documents, including by stating the

23  date, identity of the author, addresses(s), recipient(s), signatories, parties, or other

24  PERSONS identified in the DOCUMENT, its present location or custodian and a

25  description of its contents.

26      •      With reference to any MATTEL or MGA product, means to state

27  fully and separately for each, the full name of the product; the number of the product;

28  the SKU of the product; any other applicable designation of the product; the period

3

EXHIBIT 7
PAGE 68

1  of time in which the product has been sold; and IDENTIFY each PERSON who has
2  licensed such product.

3     4.   "MATTEL," "YOU," or "YOUR" means the party Mattel, Inc. and any
4  of its past or present officers, directors, employees, parents, subsidiaries, divisions,
5  affiliates, predecessors-in-interest, and joint venture partners.

6     5.   "PERSON" or "PERSONS" means all natural persons, partnerships,
7  joint ventures and any kind of business, legal or public entity or organization, as well
8  as its, its or her agents, representatives, employees, officers and directors and any
9  one else acting on its, its or her behalf, pursuant to its, its or her authority or subject
10  or its, its or her control.

11     6.   "REFERRING OR RELATING TO" means constituting, embodying,
12  containing, referring to, commenting on, evidencing, regarding, discussing,
13  describing, mentioning, reflecting, expressing, pertaining to, concerning, supporting,
14  contradicting, negating, revoking or otherwise relating to in any manner.

15     7.   "STATE THE COMPLETE FACTUAL BASIS FOR YOUR
16  CONTENTION" means to (i) describe in detail the complete factual for the
17  identified contention; (ii) IDENTIFY all DOCUMENTS that REFER OR RELATE
18  TO that contention; and (iii) IDENTIFY all witnesses who may have information
19  that REFERS OR RELATES TO the contention.

20     8.   "THIS ACTION" refers to *Mattel, Inc. v. Bryant*, Case No. CV 04-9059
21  SGL (RNBx), filed on April 27, 2004 and all cases consolidated or coordinated
22  therewith.

23     9.   The singular form of a noun or pronoun includes within its meaning the
24  plural form of the noun or pronoun so used, and vice versa; the use of the masculine
25  form of a pronoun also includes within its meaning the feminine form of the pronoun
26  so used, and vice versa; the use of any tense of any verb includes also within its
27  meaning all other tenses of the verb so used, whenever such construction results in a
28

4

EXHIBIT 7
PAGE 69

1  broader request for information; and "and" includes "or" and vice versa, whenever
2  such construction results in a broader disclosure of documents or information.

3

4  ## INSTRUCTIONS

5      1.      Mattel is instructed to serve written responses to this Supplemental
6  Interrogatory on MGA's counsel at Skadden, Arps, Slate, Meagher & Flom, LLP,
7  300 South Grand Avenue, Los Angeles, California 90071.

8      2.      Pursuant to Federal Rule of Civil Procedure 33, Mattel shall provide its
9  answers under oath within 30 days of service.

10     3.      If, in responding to these Interrogatories, Mattel asserts an ambiguity in
11  either a particular Interrogatory or an Instruction of Definition applicable thereto,
12  Mattel shall identify in the response to such Interrogatory the language it contends is
13  ambiguous and state the interpretation used in responding.

14     4.      These Interrogatories impose a continuing obligation subsequent to your
15  initial production to the full extent provided for in Rule 26(e) of the Federal Rules of
16  Civil Procedure.

17     5.      If, in responding to these Interrogatories, any information is not being
18  provided based on an objection or otherwise, IDENTIFY the information not be
19  provided and explain the complete basis supporting YOUR refusal and/or failure to
20  provide that information.

21     6.      Unless otherwise noted, these Interrogatories seek information from
22  January 1, 1995, to the present.

23
24
25
26
27
28

5

EXHIBIT 7
PAGE 70

1

2                                 **INTERROGATORIES**

3   SUPPLEMENTAL INTERROGATORY :

4        State the facts upon which YOU intend to rely at trial to support YOUR

5   affirmative defenses, and IDENTIFY all PERSONS with knowledge of those facts

6   and all DOCUMENTS that REFER OR RELATE TO those facts.

7

8

9

10  DATED:  December 6, 2007

11                              SKADDEN, ARPS, SLATE, MEAGHER &
                                FLOM, LLP

12                              By: _____

13                                      Robert J. Herrington
                                Attorneys for Counter-Defendants, MGA
14                              ENTERTAINMENT, INC., ISAAC LARIAN,
                                MGA ENTERTAINMENT (HK) LIMITED,
15                              AND MGAE de MEXICO S.R.L. de C.V.

16

17

18

19

20

21

22

23

24

25

26

27

28

                                          6

EXHIBIT 7
PAGE 71

## PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the county of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 300 South Grand Avenue, 34th Floor, Los Angeles, CA 90071.

On **December 6, 2007**, I served the foregoing document described as:

**MGA's AMENDED SUPPLEMENTAL INTERROGATORY TO MATTEL INC. REGARDING ITS AFFIRMATIVE DEFENSES**

on the interested parties in this action addressed as follows:

### SEE ATTACHED SERVICE LIST

| | | | |
|---|---|---|---|
| ☒ | (BY PERSONAL SERVICE) | ☐ | By personally delivering copies to the person served. |
| | | ☒ | I caused such documents to be hand delivered to the office of the addressee. |

☒   **(BY MAIL)** I am readily familiar with the firm's practice for the collection and processing of correspondence for mailing with the United States Postal Service and the fact that the correspondence would be deposited with the United States Postal Service that same day in the ordinary course of business; on this date, the above-referenced correspondence was placed for deposit at Los Angeles, California and placed for collection and mailing following ordinary business practices.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the above is true and correct.

Executed on December 6, 2007 at Los Angeles, California.

Becky S. Isomoto
PRINT NAME                           SIGNATURE

1

EXHIBIT 7
PAGE 72

John B. Quinn, Esq.
Michael T. Zeller, Esq.
B. Dylan Proctor, Esq.
Jon D. Corey, Esq.
Timothy L. Alger, Esq.
Quinn Emanuel Urquhart Oliver &
Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
(213) 443-3000
(213) 443-3100 (Fax)

*Attorneys for Mattel, Inc.*
*(Personal Service)*

Mark E. Overland
Alexander H. Cote
David C. Scheper
Overland Borenstein Scheper & Kim
300 South Grand Avenue, Suite 2750
Los Angeles, CA  90071
(213) 613-4655
(213) 613-4656 (Fax)

*Attorneys for Carlos Gustavo Machado*
*Gomez*
*(U.S. Mail)*

John W. Keker, Esq.
Michael H. Page, Esq.
Keker & Van Nest, LLP
710 Sansome Street
San Francisco, CA 94111
(415)391-5400
(415) 397-7188 (Fax)

*Attorneys for Carter Bryant*
*(U.S. Mail)*

3

EXHIBIT __7__
PAGE __73__

EXHIBIT 8

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

WRITER'S DIRECT DIAL NO.
**(213) 443-3112**

WRITER'S INTERNET ADDRESS
**dylanproctor@quinnemanuel.com**

January 3, 2008

**VIA FACSIMILE AND U.S. MAIL**

Michael H. Page, Esq.
Keker & Van Nest, LLP
710 Sansome Street
San Francisco, CA 94111

Thomas J. Nolan, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071

Re:     Mattel, Inc. v. Bryant, et al.

Dear Counsel:

We are in receipt of your latest sets of Interrogatories to Mattel -- MGA's Second Set of Interrogatories to Mattel, Inc. and Carter Bryant's Second Set of Interrogatories to Mattel, Inc. Pursuant to the Order for the Appointment of a Discovery Master, we write to request a meet and confer regarding these discovery requests.

As you are aware, both sides in this case are limited to a total of fifty interrogatories. *See* Minute Order of February 27, 2007. Additionally, discrete, unrelated issues addressed within an interrogatory count as their own, separate interrogatories. *Order Granting Joint Motion for Protective Order Regarding Mattel's Interrogatories; Denying Mattel's Motion to Compel Interrogatory Responses*, dated September 5, 2007. MGA and Carter Bryant have exceeded the limits on the number of interrogatories they may serve.

To date, Mr. Bryant has served at least twenty numbered interrogatories, and MGA has served at least thirty-one. However, many of the interrogatories are compound and therefore actually constitute multiple interrogatories. For example, MGA's interrogatory number 28 reads: "Describe in detail the complete factual basis for YOUR COUNTERCLAIMS, including, without limitation all facts, DOCUMENTS, and witnesses that REFER OR RELATE TO YOUR

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

07975/2339545.1

EXHIBIT _8_
PAGE _74_

COUNTERCLAIMS." Because Mattel has brought a number of counterclaims, this discovery request actually constitutes a number of interrogatories. Thus, although Defendants have not sought leave of Court to exceed the 50 interrogatory limit, they clearly have. MGA's Second Set of Interrogatories to Mattel, Inc. and Carter Bryant's Second Set of Interrogatories to Mattel, Inc. are therefore improper.

Please let us know when you are available to meet and confer regarding these issues. If we cannot come to a resolution, Mattel intends to move for a protective order providing that it need not respond to some or all of these Interrogatories.

I look forward to hearing from you.


Very truly yours,

*Dylan Proctor (by Heidi Keahn)*

B. Dylan Proctor

EXHIBIT 8
PAGE 75

EXHIBIT 9

1   MELINDA HAAG (State Bar No. 132612)
    mhaag@orrick.com
2   ANNETTE L. HURST (State Bar No. 148738)
    ahurst@orrick.com
3   WARRINGTON S. PARKER III (State Bar No. 148008)
    wparker@orrick.com
4   ORRICK, HERRINGTON & SUTCLIFFE LLP
    The Orrick Building
5   405 Howard Street
    San Francisco, CA 94105-2669
6   Telephone: +1-415-773-5700
    Facsimile: +1-415-773-5759
7
    WILLIAM A. MOLINSKI (State Bar No. 145186)
8   wmolinski@orrick.com
    ORRICK, HERRINGTON & SUTCLIFFE LLP
9   777 South Figueroa Street, Suite 3200
    Los Angeles, CA 90017
10  Telephone: +1-213-629-2020
    Facsimile: +1-213-612-2499
11
    Attorneys for MGA Parties
12

13              UNITED STATES DISTRICT COURT

14             CENTRAL DISTRICT OF CALIFORNIA

15                    EASTERN DIVISION

16  CARTER BRYANT, an individual,        Case No. CV 04-9049-SGL (RNBx)

17              Plaintiff,               Consolidated with: Case No. CV 04-9059
                                         and Case No. CV 05-2727
18       v.
                                         **DISCOVERY MATTER**
19  MATTEL, INC., a Delaware             [To Be Heard by Discovery Master
    corporation,                         Robert O'Brien Pursuant to Order of
20                                       January 6, 2009]
                Defendant.
21                                       **MGA ENTERTAINMENT, INC.'S
                                         MOTION TO COMPEL FURTHER
22                                       RESPONSES TO MGA'S FIRST SET
    AND CONSOLIDATED ACTIONS             OF PHASE 2 INTERROGATORIES
23                                       AND SECOND SET OF PHASE 2
                                         REQUESTS FOR PRODUCTION**
24
                                         Date:        TBD
25                                       Time:        TBD
                                         Courtroom:   TBD
26
                                         **Phase 2**
27                                       Discovery Cutoff:    December 11, 2009
                                         Pretrial Conference: March 1, 2010
28                                       Trial Date:          March 23, 2010

OHS West:260698938.2                     MTN TO COMPEL FURTHER RESPONSES TO
                                         INTERROGATORIES AND RFP
                                         CV 04-9049 SGL (RNBx)

EXHIBIT 9
PAGE 76

1    TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2    PLEASE TAKE NOTICE that, at a hearing before Discovery Master Robert

3    C. O'Brien that will occur on a date and at a time to be determined by the

4    Discovery Master, MGA Entertainment, Inc. ("MGA") will, and hereby does, move

5    to compel Mattel, Inc. ("Mattel") to provide further responses to MGA's First Set

6    of Phase 2 Interrogatories (the "Interrogatories") and Second Set of Phase 2

7    Requests for Production Nos. 69-76, 80, 82, 84, 85, 90, 93, 98, 107, and 108 (the

8    "Requests at Issue").

9    This Motion is made pursuant to Federal Rules of Civil Procedure 33, 34,

10   and 37 and the Order appointing the Discovery Master on the grounds that Mattel

11   has failed to provide substantive responses to any of the Interrogatories or Requests

12   at Issue, relying instead on a litany of improper objections that lack any merit.  In

13   particular, MGA has not exceeded its allotted interrogatories, and Mattel's reliance

14   on this argument as the primary basis for its refusal to respond substantively to this

15   discovery is unwarranted and an attempt to thwart MGA's legitimate attempts to

16   obtain the discovery to which it is entitled.

17   This Motion is based on this Notice of Motion and Motion, the

18   accompanying Memorandum of Points and Authorities, the Declarations of Andrew

19   C. Spitser, Caroline H. Mankey, Frank D. Rorie, and Robert J. Herrington and

20   Separate Statement filed concurrently herewith, the records and files of this Court,

21   any argument to be presented upon the hearing of this Motion, and all other matters

22   of which the Court may take judicial notice.

23

24

25

26

27

28

OHS West:260698938.2                                 - 1 -                    MTN TO COMPEL FURTHER RESPONSES TO
                                                                                   INTERROGATORIES AND RFP
                                                                                     CV 04-9049 SGL (RNBx)

EXHIBIT 9
PAGE 77

1

## Conference of Counsel

2       On information and belief, the parties met and conferred concerning the

3 issues regarding this motion on June 19, 2009 and dates thereafter.

4

5 Dated: July 24, 2009           ORRICK, HERRINGTON & SUTCLIFFE LLP

6

7                  By: _____/s/ William A. Molinski_____

8                      William A. Molinski
              Attorneys for MGA ENTERTAINMENT, INC.,

9               MGA ENTERTAINMENT HK, LTD., MGA de
              MEXICO, S.R.L. de C.V., and ISAAC LARIAN

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT 9
PAGE 78

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION .......................................................................... 1

II.     MGA HAS THE RIGHT TO SERVE, AND MATTEL IS OBLIGATED TO ANSWER, 25 INTERROGATORIES SERVED DURING PHASE 2 ................................................................ 1

    A.    The 75-Interrogatory Limit Mattel Proposes is a Figment of Mattel's Imagination and Lacks Any Support in the Record .............. 4

    B.    The Number of Interrogatories Answered in Phase 1 is Irrelevant ......................................................................... 5

    C.    The Discovery Master Has Already Rejected Mattel's Basis For Refusing To Answer ........................................................ 6

III.    MATTEL'S OTHER OBJECTIONS ARE UNFOUNDED ........................ 7

    A.    The Interrogatories Are Not Overly Broad ........................... 7

    B.    The Interrogatories Do Not Pose An Undue Burden ........................ 8

    C.    The Interrogatories Seek Relevant Information .................... 11

    D.    Mattel's Remaining Objections Are Baseless ...................... 12

IV.     BECAUSE MATTEL'S ARGUMENTS REGARDING THE INTERROGATORIES ARE INVALID, MATTEL MUST ANSWER THE CORRESPONDING REQUESTS FOR PRODUCTION ................... 14

V.      MATTEL SHOULD BE SANCTIONED ............................................... 15

VI.     CONCLUSION ......................................................................... 15

- i -
OHS
West:260698938

MTN TO COMPEL FURTHER RESPONSES TO
INTERROGATORIES AND RFP
CV 04-9049 SGL (RNBx)

EXHIBIT 9
PAGE 79

1

## TABLE OF AUTHORITIES

2

3                                                                              **Page(s)**

**CASES**

4  *Am. Oil Co. v. Penn. Petro. Co.,*
5     23 F.R.D. 680 (D. R.I. 1959) ...................................................................... 11

   *Capacchione v. Charlotte-Mecklenburg Schools,*
6     182 F.R.D. 486 (W.D. N.C. 1998) ................................................................ 10

7  *Carmichael Lodge No. 2103, Benevolent and Protective Order of Elks of the
      United States of America,*
8     2009 WL. 1118896 (E.D. Cal. Apr. 23, 2009) ...................................... 12, 14

9  *Eureka Financial Corp. v. Hartford Acc. and Indem. Co.,*
      136 F.R.D. 179 (E.D. Cal. 1991) ............................................................ 12, 14
10
   *Jackson v. Montgomery Ward & Co., Inc.,*
11     173 F.R.D. 524 (D. Nev. 1997) ..................................................................... 8

12 *King v. Georgia Power Co.,*
      50 F.R.D. 134 (N.D. Ga. 1970) ................................................................... 10
13
   *Nagele v. Electronic Data Systems Corp,*
14     193 F.R.D. 94 (W.D.N.Y. 2000) .................................................................... 8

15 *O'Connor v. Boeing North American, Inc.,*
      185 F.R.D. 272 (C.D. Cal. 1999) ................................................................ 11
16
   *Richmark Corp. v. Timber Falling Consultants,*
17     959 F.2d 1468 (9th Cir. 1992) ..................................................................... 14

18 *Seff v. General Outdoor Advertising Co.,*
      11 F.R.D. 597 (N.D. Ohio 1951) .................................................................. 10
19
   **RULES**
20
   Fed. R. Civ. P.
21     33(a)(1) ........................................................................................................... 4
       33(b)(4) ........................................................................................................... 8
22
   **ADDITIONAL AUTHORITIES**
23
   8A Wright, *et al.*, Fed. Practice & Proc.: Civ. § 2174 ............................... 10
24

25

26

27

28

EXHIBIT 9
PAGE 80

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

After Judge Larson stated unequivocally in the February 11, 2009 hearing that discovery for Phase 2 was starting over with a "clean slate" and subject only to the limits embodied in the Federal Rules, MGA served its First Set of Phase 2 Interrogatories (the "Interrogatories"). Despite MGA's unambiguous right to this essential discovery into Mattel's Phase 2 claims and defenses, and in direct contravention to Judge Larson's directions, Mattel has refused to answer a single one of the Interrogatories, and 17 of MGA's Second Set of Phase 2 Requests for Production that are related to the Interrogatories (the "Requests at Issue").

Mattel bases its refusal to respond on an entirely fabricated interrogatory limit (75 total for all phases) never set by Judge Larson or even contemplated by the Parties. Mattel also engages in "creative" counting that is inconsistent with both established law and the precedent in this case, including Mattel's own arguments and Discovery Master rulings about strikingly similar interrogatories. Thus, even if Mattel's imaginary aggregate 75 interrogatory limit for all phases of this case were supportable (and it is not), MGA has not exceeded such a limit. In addition, the Discovery Master has already addressed this issue and instructed Matte to respond to the Interrogatories unless MGA is already over the Phase 2 limit, which MGA is not. Finally, none of Mattel's other objections to the Interrogatories and related Requests at Issue are supported or valid.

Accordingly, MGA's Motion to Compel should be granted in its entirety and Mattel should be ordered to serve full and complete answers, without objection, to each of the Interrogatories and the corresponding Requests at Issue.

### II.   MGA HAS THE RIGHT TO SERVE, AND MATTEL IS OBLIGATED TO ANSWER, 25 INTERROGATORIES SERVED DURING PHASE 2

Mattel asserts that MGA's interrogatories served during Phase One are purportedly compound, and claims, therefore, that MGA has exceeded a purported

- 1 -                     MTN TO COMPEL FURTHER RESPONSES TO
                                                                                        INTERROGATORIES AND RFP
                                                                                        CV 04-9049 SGL (RNBx)

EXHIBIT 9
PAGE 81

1   limit of 75 total interrogatories (for all phases) that neither Judge Larson nor the

2   Discovery Master has ever set. Mattel has simply ignored Judge Larson's actual

3   statements concerning Phase 2 discovery, and has invented its own alternate

4   universe, apparently hoping that the Discovery Master will not bother to read Judge

5   Larson's actual words. Mattel's argument fails, for it is crystal clear that Judge

6   Larson stated that Phase 2 would have its own separate and independent discovery

7   limits, and that interrogatories served prior to the Phase 1 trial are irrelevant to the

8   number of interrogatories allowed in Phase 2.[1]

9        On February 11, 2009, Judge Larson discussed in detail his thoughts on

10  Phase 2 discovery and what effects Phase 1 discovery had on the limits in Phase 2.

11  In this hearing, he made it absolutely clear that *all* previous discovery and all

12  previous rulings on discovery were moot, and that *new* limits on discovery applied

13  to all discovery served in Phase 2 (i.e., after the stay was lifted). The Court began

14  by noting that "[t]he last issue I want to take up is the scheduling of Phase 2 at this

15  time." See Transcript of February 11, 2009 Hearing, at 90:11-13, Declaration of

16  Andrew C. Spitser ("Spitser Decl."), Ex. 4. Then, after a discussion clarifying that

17  no discovery has been stayed, MGA's counsel addressed the Court:

18       **Mr. Frackman:** We would request from the Court that there be a

19       reasonable limit placed on Phase 2 depositions. I don't know

20       whether that comes to Your Honor or whether that goes to the

21       discover[y] referee.

22

23

24

25  [1] In Phase 1, Judge Larson imposed a limit on interrogatories of "50 for each side
    for both cases." See Order Granting Joint Motion for Protective Order Regarding
26  Mattel's Interrogatories; Denying Mattel's Motion to Compel Interrogatory
    Responses, dated Sept. 5, 2007 ("Order, dated Sept. 5, 2007"), at 2:14-16 (citing
27  February 27, 2007 Minute Order; Transcript of Feb. 12, 2009 Scheduling
    Conference), Declaration of Andrew C. Spitser ("Spitser Decl."), Ex. 12. The
28  Parties operated under this separate and independent limit for all interrogatories
    served prior to the Phase 1 trial.

OHS West:260698938.2                    - 2 -                    MTN TO COMPEL FURTHER RESPONSES TO
                                                                INTERROGATORIES AND RFP
                                                                CV 04-9049 SGL (RNBx)

EXHIBIT 9
PAGE 82

1    The Court: In the first instance, that would go to the discovery referee.

2    The limits that were placed were limits that were placed on the earlier

3    discovery phase.

4    To be clear again, I have placed no limits, no restrictions, other than

5    what is set forth in the rules of civil procedure and in local rule 37 on

6    discovery from this point until March 23rd [2010, the Phase 2 trial

7    date].

8    ...

9    Mr. Frackman: I think we're prepared to follow the federal rules, Your

10    Honor. Thank you.

11    ...

12    Mr. Zeller [Mattel's counsel]: ... Just so it's clear, because as I

13    understood it, there, of course, are the limits under the Federal Rules of

14    ten depositions. We, of course, have – and I thought that the parties –

15    The Court: You did more than ten depositions.

16    Mr. Zeller: Correct. And I think both sides have.

17    The Court: Yes.

18    Mr. Zeller: Or then there were limits the Court did put on the case, as

19    we understood it; I want to say the number was 24, but I could be off

20    slightly, that the Court did modify the limits already.

21    The Court: I allowed for additional depositions. But those were all in

22    the context of the first phase. We now have new counsel coming in....

23    ...

24    The Court: Whatever limits I imposed, if I did not use the precise

25    language that I should have, let me make it clear now: That was

26    applied to the [first] discovery phase. That's now water under the

27    bridge. It is over.

28

EXHIBIT 9
PAGE 83

1      We are starting with a clean slate, a new discovery master, new

2      counsel for MGA, and we are going to build this up and we'll go from

3      here.  If there's a discovery dispute, please take it to the Discovery

4      Master.

5    Id. at 102:4-104:8 (emphasis added).

6          This could scarcely be clearer.  While the actual discovery limits the Court

7    was addressing were those regarding depositions, the Court's language plainly

8    applies to all forms of discovery – it "made it clear" that it "placed *no limits, no*

9    *restrictions, other than what is set forth in the rules of civil procedure and in*

10   *local rule 37* on discovery from this point until" the Phase 2 trial.  Id.

11         Under the Federal Rules, "a party may serve on any other party no more than

12   25 written interrogatories...."  Fed. R. Civ. P. 33(a)(1).  Thus, according to Judge

13   Larson's Order, "from this point" i.e. starting on February 11, 2009, MGA had the

14   right to "serve on any other party no more than 25 written interrogatories."

15         A.    <u>The 75-Interrogatory Limit Mattel Proposes is a Figment of</u>

16                <u>Mattel's Imagination and Lacks Any Support in the Record.</u>

17         Recognizing that its objections fail under the limit of 25 Phase 2

18   interrogatories, Mattel invents an aggregate 75 interrogatory limit (for all phases)

19   never contemplated by either Judge Larson or the Parties.

20         As is clear from Judge Larson's actual words above, this is simply

21   inaccurate.  Indeed, the Discovery Master will search in vain to find anywhere in

22   the February 11, 2009 hearing transcript or elsewhere that a "total of 75" has ever

23   been discussed or even contemplated, by Judge Larson or between the Parties.

24   Instead, Judge Larson unequivocally stated that the Federal Rules' discovery limits

25   would apply separately to discovery served in Phase 2.  Any counting of

26   interrogatories served in Phase 1 was *water under the bridge.  It is over.*"  Indeed,

27   as of February 11, 2009, the Parties were "starting with a clean slate."  This

28

MTN TO COMPEL FURTHER RESPONSES TO
INTERROGATORIES AND RFP
CV 04-9049 SGL (RNBx)

EXHIBIT _9_
PAGE _84_

1   language is entirely inconsistent with Mattel's unsupported assertion that an

2   aggregate limit of 75 interrogatories has somehow been imposed.

3        **B.    The Number of Interrogatories Answered in Phase 1 is Irrelevant.**

4        Having invented an aggregate limit of 75 interrogatories for all phases (in

5   contravention of Judge Larson's Order), Mattel argues that, counting supposed

6   subparts, it answered more than 75 interrogatories during Phase 1.

7        While this is not true, it is also irrelevant.  To the extent that Mattel

8   voluntarily answered more than the 50 interrogatories allowed during Phase 1, it

9   waived any argument that MGA was not entitled to such responses at the time

10   Mattel answered.  Mattel cannot now argue that those responses were improper at

11   the time it provided them (or agreed to provide them) and, therefore, that they count

12   against MGA's allotted 25 Phase 2 interrogatories.  If Mattel did not think it was

13   required to answer those interrogatories during Phase 1, it should have refused to do

14   so and either moved for a protective order or resisted a motion to compel.  That it

15   did neither constitutes a waiver of any argument that those responses somehow now

16   count against the interrogatories allowed in Phase 2.

17        Indeed, Judge Larson specifically held that the Parties could agree to answer

18   more than the 50 interrogatories he allowed during Phase 1.  See Order, dated Sept.

19   5, 2007, at 3:35 (citing Tr. of February 12, 2007 Scheduling Conference, at 24:5-

20   11), Spitser Decl., Ex. 12 ("Let's try to work within the confines of the 50

21   interrogatories, and if you need more, again, the court is going to be forthcoming, if

22   there's a need for it.  And it's the type of order that if you can stipulate amongst

23   yourselves, you're not going to need an order from the court.").  If Mattel answered

24   more than 50 interrogatories propounded during Phase 1, it did so of its own

25   volition, and cannot now use those responses to limit MGA's right to obtain Phase

26   2 discovery.  Again, Judge Larson was clear that Phase 2 starts with a "clean slate."

27

28

OHS West:260698938.2                          - 5 -                    MTN TO COMPEL FURTHER RESPONSES TO
                                                                         INTERROGATORIES AND RFP
                                                                         CV 04-9049 SGL (RNBx)

EXHIBIT 9
PAGE 85

1      **C.**    **The Discovery Master Has Already Rejected Mattel's Basis For**

2              **Refusing To Answer.**

3      This very issue has already been decided against Mattel by the Discovery

4  Master. In addressing Mattel's motion for a protective order on July 8, 2009, the

5  Discovery Master clarified that:

6            MR. O'BRIEN: Let me ask you, Mr. Proctor, is it your

7        contention that these interrogatories already put MGA over the limit or

8        that they simply should be counted towards the limit? The reason I'm

9        asking is if they're not already at the limit, it seems to me that it's a

10        premature issue, and if they want these interrogatories responded to

11        and you think they've used up their interrogatories, you know, a week

12        or two from now when they serve you with more, I think the re – at

13        that point you can come in and ask for a protective order and say

14        "Judge Larson gave them X number of interrogatories and they've

15        used them and we don't have to answer any more."

16          So think about that, because that's one of the questions I have

17        here. And that may be something Ms. Hurst, that you want to address

18        in your argument. Because if that's – and the reason I bring it up now

19        is because of the declaration that came in yesterday from Mr. Proctor.

20          So that may be something that you want to address in the –

21        because, otherwise, it doesn't appear that there's an issue – I could be

22        wrong. Is there an issue with responding to those interrogatories other

23        than this issue of how many interrogatories they get in phase 2?

24  See Transcript of 7/9/09 Hearing at 12:16-13:13, Declaration of Frank D. Rorie

25  ("Rorie Decl."), Ex. A. The Discovery Master further noted that:

26            MR. O'BRIEN: Right. I'm going to note this in the order, but

27        just so everyone knows what the ruling is going to be, the

28        interrogatories need to be answered. If there is another set of

EXHIBIT 9
PAGE 86

1     interrogatories that puts – that you believe puts MGA over the limit,

2     then, the remedy for that is to file a motion for protective order on the

3     additional interrogatories.  So with respect to these current

4     interrogatories, I don't want to presume that – answer them seriatim, as

5     they come in, and if they hit a limit that you think Judge Larson has

6     ordered or that the federal rules cut them off at the 25, then file a

7     motion for a protective order and we'll take up the issue of additional

8     interrogatories at that time.

9        And this goes for both parties.  By the way, Ms. Hurst, if you

10    feel that you need additional discovery over and above an order that

11    Judge Larson has already made or over and above what's the default in

12    the FRCP, then, make a motion, and Mattel clearly can make the same

13    sort of motion if it feels it needs additional discovery.

14        So let's get these interrogatories answered and we'll deal with

15    the limits in a future motion.

16  Id. at 17:9-18:4.  As noted above, the Discovery master has already rejected

17 Mattel's basis for refusing to respond to the Interrogatories and Requests at Issue.

18 There is no basis for Mattel's failure to respond.

19 **III.**   **MATTEL'S OTHER OBJECTIONS ARE UNFOUNDED**

20       In its written objections to the Interrogatories, Mattel also makes a number of

21 other improper objections (some of which are set forth below), none of which is

22 substantiated in the least.

23      **A.**    **The Interrogatories Are Not Overly Broad.**

24       Mattel objects that the Interrogatories are overly broad.[2]  Yet Mattel provides

25 no explanation, let alone with the required particularity, as to why these

26 interrogatories are overly broad.  This objection is therefore improper.  Order

27  [2] See Responses of Mattel, Inc. to MGA Entertainment, Inc.'s First Set of Phase 2

28 Interrogatories, Spitser Decl., Ex. 1, *passim.*  Mattel's objections to each
Interrogatory were nearly identical.

EXHIBIT 9
PAGE 87

1   No. 17, dated April 14, 2009, at 20 (overruling objections not stated with

2   specificity), Spitser Decl., Ex. 17; see also Fed. R. Civ. P. 33(b)(4) (grounds for

3   objecting to an interrogatory must be stated "with specificity").[3]

4        Moreover, this objection has no merit. The interrogatories are designed to

5   discover – and are targeted precisely to at discovering only – relevant and key

6   information regarding Mattel's Phase II claims and defenses that MGA is entitled to

7   discover. For example, Interrogatory No. 1 asks Mattel to identify all facts (and

8   persons with knowledge of said facts) that support its position Mattel's documents

9   contain trade secret information. See Separate Statement filed concurrently

10  herewith ("Separate Statement"), at 1-6. This interrogatory could not be more

11  narrowly tailored to extract information that is directly relevant to Mattel's Phase II

12  claims. The Discovery Master should therefore overrule this objection.

13       **B.    The Interrogatories Do Not Pose An Undue Burden.**

14       Mattel also objects that the Interrogatories are "unduly burdensome."[4]

15  However, Mattel does not demonstrate why responding to these interrogatories

16  presents any burden. Consequently, the objection is not well-taken and should be

17  rejected. See Jackson v. Montgomery Ward & Co., Inc., 173 F.R.D. 524, 528-29

18  (D. Nev. 1997) ("The party claiming that a discovery request is unduly burdensome

19  must allege specific facts which indicate the nature and extent of the burden,

20  usually by affidavit or other reliable evidence.") (cited in Order No. 11, dated

21  March 30, 2009, at 19, Spitser Decl., Ex. 13; Order No. 17, at 23, Spitser Decl., Ex.

22  17); Nagele v. Electronic Data Systems Corp, 193 F.R.D. 94, 109 (W.D.N.Y. 2000)

23  (overruling "burdensome" objections because objecting party failed to particularize

24  its basis for the objection). Indeed, the Discovery Master has already overruled

25  objections of this type where the party "has not provided any evidence in

26  ───────────────────────────
    [3] Furthermore, Mattel has waived this objection by failing to raise it in its
27  precipitously-filed Motion for Protective Order regarding the Interrogatories. See
    Spitser Decl., Ex. 19.
28  [4] See Responses of Mattel, Inc. to MGA Entertainment, Inc.'s First Set of Phase 2
    Interrogatories, Spitser Decl., Ex. 1, passim.

EXHIBIT 9
PAGE 88

1    connection with its Motion To Compel to support its claim of burden." Order

2    No. 17, at 23; <u>see also</u> Order Granting Mattel's Motion to Compel Production of

3    Documents and Interrogatory Responses by MGA, dated May 15, 2007, at 14,

4    Spitser Decl., Ex. 18 ("Once again, MGA has failed to substantiate any of its

5    objections with supporting declarations or legal authorities.").[5]

6         Furthermore, this objection is unfounded. It is implausible that Mattel would

7    be unduly burdened by answering these straightforward interrogatories, which

8    simply call for further explication of, facts relating to, and documents concerning

9    the counterclaims that Mattel itself brought in this action. If there is any burden on

10    Mattel, it is from Mattel's having filed broad-based and unwarranted attacks on

11    MGA's conduct in three countries. MGA's requests, however, are not overly broad

12    and only seek evidence needed to defend against these attacks. For example,

13    Interrogatory No. 2 asks Mattel to identify all facts (and persons with knowledge of

14    said facts) that support its claim that MGA misappropriated Mattel documents and

15    alleged trade secrets. <u>See</u> Separate Statement at 6-10. There is no way in which

16    such a straightforward interrogatory can be considered an undue burden on Mattel,

17    especially when Mattel is asserting a trade secret claim against MGA.

18         Moreover, any ostensible burden associated with providing the requested

19    information – and none has been proven here since Mattel has not even attempted

---

20  [5] Mattel has made, and won, this exact argument. <u>See</u> Mattel, Inc.'s Notice of

21  Motion and Motion to Enforce Order Compelling MGA to Provide Discovery, to Compel Responses to Contention Interrogatories by MGA and for Sanctions, at 14,

22  Spitser Decl., Ex. 14 ("MGA has offered no evidence that responding to interrogatories with these defined terms would be unduly burdensome, and the

23  definitions are vague. MGA's boilerplate objections to Mattel's defined terms should be overruled for this reason."); <u>id.</u>, at 20 ("MGA provided no explanation as

24  to why Interrogatory No. 51 is unduly burdensome. This objection should be overruled for this reason alone."); Reply in Support of Mattel, Inc.'s Motion to

25  Enforce Order Compelling MGA to Provide Discovery, to Compel Responses to Contention Interrogatories by MGA and for Sanctions, at 13:11-12, Spitser Decl.,

26  Ex. 16 ("MGA does not dispute that it has failed to provide any proof to support its burden assertions. The Court should therefore overrule each of MGA's

27  unsubstantiated burden objections."). The Discovery Master agreed with Mattel. See Order No. 17, dated Apr. 4, 2009, at 23:5-6, Spitser Decl., Ex. 17 ("MGA has

28  not provided any evidence in connection with its Motion To Compel to support its claim of burden.... Accordingly, the objections are overruled.").

EXHIBIT 9
PAGE 89

1   to explain what such burden would be – is minimal compared to the value this

2   information will have to MGA in developing its claims and defenses.  See 8A

3   Wright et al., Fed. Practice & Proc.: Civ. § 2174, at 278 (to determine if an

4   interrogatory poses an "undue burden," courts have adopted a "proportionality

5   approach that balances the burden on the interrogated party against the benefit that

6   having the information would provide to the party submitting the interrogatory");

7   see also King v. Georgia Power Co., 50 F.R.D. 134, 135 (N.D. Ga. 1970)

8   (overruling objection that interrogatory was burdensome and oppressive, even

9   though preparation of answer would be time-consuming and costly, because

10  information was crucial to the issues of the suit and in exclusive custody of

11  defendant); Seff v. General Outdoor Advertising Co., 11 F.R.D. 597, 598 (N.D.

12  Ohio 1951) (overruling "overly burdensome" objection because value of

13  information to plaintiff clearly outweighed any annoyance or expense involved in

14  disclosure by defendant); Capacchione v. Charlotte-Mecklenburg Schools, 182

15  F.R.D. 486, 491 (W.D. N.C. 1998) ("Requiring a responding party to perform

16  extensive research or to compile substantial amounts of data and information does

17  not automatically constitute an undue burden…. Imposing such a burden is

18  particularly proper where, as here, the information sought is crucial to the ultimate

19  determination of a crucial issue….").

20      The Discovery Master has already ruled that a party cannot complain that

21  interrogatories are unduly burdensome when the request "merely seeks information

22  regarding the extent of" a party's claims.  Order No. 17, dated April 14, 2009, at

23  23:9-13, Spitser Decl., Ex. 17 ("If MGA contends Mattel infringed numerous

24  products, Mattel has the right to discover the scope of the alleged claims.

25  Accordingly, the objections are overruled."); id., at 13:26-14:5 ("[A] party is

26  always burdened with costs when it voluntarily chooses to pursue a claim…. If the

27  MGA Parties wish to avoid these costs in connection with MGA's trade dress

28  claims, MGA can always dismiss them. Because any hardship that MGA might

EXHIBIT 9
PAGE 90

1   face is one of its own making, any burden imposed on it in having to respond to the

2   discovery is justified."); see also O'Connor v. Boeing North American, Inc., 185

3   F.R.D. 272, 280-81 (C.D. Cal. 1999) (interrogatory asking responding party to

4   describe each injury "which you contend was caused by defendant's conduct" was

5   proper).  Because the Interrogatories seek information related to Mattel's own

6   factual and legal contentions, "the burden [is] on the party opposing discovery

7   rather than ... the proponent of the contention interrogatories to justify their

8   propoundment." Id. at 652.  This policy is "consistent with Rule 11 of the [FRCP,

9   which requires that] plaintiffs must have some factual basis for the allegations in

10  their complaint...." Id.; see also Am. Oil Co. v. Penn. Petro. Co., 23 F.R.D. 680,

11  683 (D. R.I. 1959) ("Since the information sought here will undoubtedly be

12  assembled by the defendant prior to trial in the preparation of its defenses, it cannot

13  be said that these interrogatories are objectionable as being burdensome.").

14      MGA seeks relevant and essential information about Mattel's Phase 2 claims,

15  and Mattel's burden objections are unfounded and should be rejected.

16  **C.     The Interrogatories Seek Relevant Information.**

17      Mattel also objects that the Interrogatories "seek[] information that is neither

18  relevant nor likely to lead to the discovery of admissible evidence."[6]  This objection

19  is not only unsubstantiated but meritless.  For example, Interrogatory Nos. 5 and 6

20  asks Mattel to identify any damages it contends it has suffered as a result of the

21  purported RICO violation plead by Mattel or "the alleged MISAPPROPRIATION

22  of trade secrets" alleged by Mattel." See Separate Statement at 20-29.  In addition,

23  Interrogatory Nos. 9-11 seek to discover "ANY evidence that [Mattel] contend[s]

24  was destroyed or otherwise spoiliated by or on behalf of MGA," the identity of the

25  persons accused of doing so, and any facts supporting such contentions. Id. at 18-

26  22.  Likewise, Interrogatory Nos. 12-14 seek information about each act or

27

28  [6] See Responses of Mattel, Inc. to MGA Entertainment, Inc.'s First Set of Phase 2
    Interrogatories, *passim*, Spitser Decl., Ex. 1.

EXHIBIT 9
PAGE 91

1   omission by Isaac Larian and MGA that Mattel contends constitutes racketeering

2   activity and the facts supporting such assertions. Id. at 23-27. The information

3   sought by these interrogatories is essential to MGA's defense of Mattel's claims.

4   Mattel's relevance objections should therefore be rejected.

5       **D.**    **Mattel's Remaining Objections Are Baseless.**

6       The remainder of Mattel's objections are also without merit.[7]  For example:

7       •   Mattel objects that the Interrogatories are "premature."[8]  This is

8           nonsense.  It was Mattel who argued explicitly that "no discovery

9           issues or no requests for discovery are premature at this point...."[9]

10          Judge Larson agreed, clarifying, "in no uncertain terms, [] there is no

11          stay on any discovery related to this case at all."[10]  Mattel's bare

12          assertion that MGA has "failed to produce witnesses  for deposition

13          and [is] withholding information and documents requested in violation

14          of orders of the Discovery Master and the Court" is not only

15          unsupported and false, but immaterial – if this were true (and it is not),

16          Mattel's obligation to fully respond to the Interrogatories would be

17          unaffected.

18      •   Mattel objects that the Interrogatories are "vague and ambiguous."

19          This objection is also meritless.  The Interrogatories are each clear and

20          unambiguous.  The definition of "MATTEL DOCUMENTS" is taken

21          directly from Mattel's own discovery requests to MGA, which

22          requests MGA has been ordered to answer despite objections to

---

23  [7] In addition, Mattel has waived all objections other than its compound, over limit,
24  and undue burden objections by failing to rely on those objections either in the meet
   and confer between counsel or in its Motion for Protective Order regarding the
25  Interrogatories.  See Eureka Financial Corp. v. Hartford Acc. and Indem. Co., 136
   F.R.D. 179, 185 (E.D. Cal. 1991) (objections not properly raised during meet and
26  confer were waived); Carmichael Lodge No. 2103, Benevolent and Protective
   Order of Elks of the United States of America, 2009 WL 1118896, at *5 (E.D. Cal.
27  Apr. 23, 2009) (accord).
   [8] Id. at 2:5-6.
28  [9] Tr. of Feb. 11, 2009 Hearing, at 97:5-7, Spitser Decl., Ex. 4.
   [10] Id. at 97:8-10.

EXHIBIT 9
PAGE 92

1    Mattel's definitions, among other things.  The definition of "MATTEL
2    PRODUCTS," though it does omit one reference to a year, is perfectly
3    intelligible without such reference; moreover, Mattel was well aware
4    that the year is 1996, as set forth in the identical definition in MGA's
5    concurrently propounded Requests for Production.  Mattel's objection
6    that "OPERATIVE COUNTERCLAIM" is vague and ambiguous
7    hardly merits a response – it refers to Mattel's operative pleading at
8    the time of response, as is plain from the definition of that term.
9  •  Mattel objects that the Interrogatories "call for the disclosure of
10    information subject to the attorney-client privilege, the attorney work-
11    product doctrine, or any other applicable privilege...."[11]  This
12    objection is not only meritless, but was waived by Mattel's failure to
13    produce a privilege log.
14  •  Mattel's objection that the Interrogatories "seek the disclosure of
15    information or documents that are in the possession, custody and
16    control of independent parties over whom Mattel has no control"[12] is
17    irrelevant – Mattel is obligated to provide all information in its
18    possession, custody, or control that is responsive to the Interrogatories.
19  •  Mattel's expert disclosure objection is without support.  The fact that
20    expert testimony may ultimately bear on some of the subjects of the
21    Interrogatories does not excuse Mattel from its obligation to provide
22    full and complete responses based on the information Mattel presently
23    has.
24  •  The Interrogatories do not seek information that violates any third-
25    party's rights of privacy.  There is no evidence to support such an
26    claim.

27  [11] Responses of Mattel, Inc. to MGA Entertainment, Inc.'s First Set of Phase 2
28  Interrogatories, at 2:16-19, Spitser Decl., Ex. 1.
    [12] Id. at 2:25-28.

OHS West:260698938.2                       - 13 -                    MTN TO COMPEL FURTHER RESPONSES TO
                                                                      INTERROGATORIES AND RFP
                                                                      CV 04-9049 SGL (RNBx)

EXHIBIT 9
PAGE 93