1    FILED, MATTEL VERSUS CARTER BRYANT.

2             THE COURT:  THE INITIAL CASE.

3             MS. TORRES:  YES.

4             THEREFORE, NOW THAT THERE IS MORE IN THE CASE, THOSE

5    DOCUMENTS ARE RELEVANT AND THEY ARE BEING PRODUCED.                02:07

6             THAT IS A NEW DEVELOPMENT THAT THEY HAD AGREED IN

7    FRONT OF JUDGE BLOCK, AND WE HAVE A TRANSCRIPT OF IT, THAT WE

8    ONLY NEEDED TO PRODUCE FIRST GENERATION.  AND IN DECEMBER THEY

9    RAISED THE ISSUE OF ALL BRATZ DRAWINGS.  SO WHEN THEY SAY THAT

10   CRITICAL BRATZ DRAWINGS HAVE NOT BEEN PRODUCED, IT'S MISLEADING   02:07

11   BECAUSE THEY MAY BE RELEVANT TO THE SECOND ROUND OF CLAIMS BUT

12   THEY WEREN'T RELEVANT TO THE MATTEL V. BRYANT CASE.  AND

13   DISCOVERY IN THE SECOND ROUND OF CASES OR CLAIMS DID NOT START

14   UNTIL DECEMBER.

15            THE COURT:  ALL RIGHT.  THAT WAS JUST ONE THAT KIND      02:07

16   OF STRUCK ME AS -- AND LIKE I SAY, I DIDN'T THOROUGHLY REVIEW

17   THESE PLEADINGS IN DETAIL.  I JUST KIND OF WANTED TO GET A

18   SENSE OF WHAT I WAS SIGNING THE UNDER-SEAL ORDER ON, AND I JUST

19   REVIEWED THEM TO GET A GENERAL SENSE OF THAT.

20            MS. TORRES:  YES.  AND WE HAVE NOT BEEN FILING -- MGA    02:08

21   AND CARTER BRYANT HAVEN'T BEEN FILING THEIR MOTIONS TO COMPEL

22   WITH THIS COURT BECAUSE WE THOUGHT THAT WAS IMPROPER.  AND

23   RECENTLY JUDGE INFANTE AGREED THAT THE MOTIONS TO COMPEL SHOULD

24   NOT BE FILED WITH THIS COURT.

25            THE COURT:  WELL, THE MOTIONS DON'T NEED TO BE FILED     02:08

EXHIBIT 18
PAGE 259

1  WITH THIS COURT, BUT THE UNDER-SEALING -- I ASSUME THAT YOU
2  WANT TO HAVE --
3          SO YOU'RE NOT FILING YOUR MOTIONS WITH THE COURT AT
4  ALL, EVEN UNDER SEAL?
5          MS. TORRES:  CORRECT.                                    02:08
6          THE COURT:  I'LL SPEAK TO JUDGE INFANTE ABOUT THAT.
7  THAT'S SOMETHING THAT HE PROBABLY SHOULD HAVE CONSULTED THIS
8  COURT ON.
9          MS. TORRES:  IN ANY EVENT, THE ISSUE THAT WE HAVE
10 HERE IS THE SCHEDULE AND WHETHER OR NOT --                       02:08
11         THE COURT:  YES.
12         I THINK YOU PROBABLY KNOW THE GENERAL SENSE OF WHERE
13 THE COURT IS GOING ON THIS.
14         WHAT ARE YOUR THOUGHTS?
15         MS. TORRES:  WE PROPOSED TWO SCHEDULES THAT WE            02:08
16 BELIEVED WERE IN KEEPING WITH THE COURT'S JANUARY 12TH ORDER.
17         THE COURT:  WHAT ABOUT THE WISDOM OF THE COURT'S
18 TENTATIVE THOUGHTS ON THAT?  DO YOU AGREE OR DISAGREE?
19         MS. TORRES:  I BELIEVE A LOT OF THE CASE WILL SHAKE
20 OUT WITH RESOLUTION OF THE ISSUES THAT WERE FIRST BROUGHT IN     02:09
21 STATE COURT AND REMOVED TO THIS COURT IN MATTEL V. BRYANT.
22 THAT IS THE HEART OF THE CASE.  I'M NOT SAYING THAT THERE WON'T
23 BE OTHER CLAIMS LEFT.  THERE WILL BE, MOST LIKELY.  BUT IT IS
24 THE MOST IMPORTANT ISSUE.  AND IT IS THE ONLY ISSUES THAT HAVE
25 BEEN IN THIS COURT FOR TWO AND A HALF YEARS, NOW ALMOST THREE    02:09

EXHIBIT 18
PAGE 260

1    YEARS.  IT'S AN IMPORTANT ISSUE THAT SHOULD BE DECIDED IN

2    ISOLATION.  IT SHOULD NOT BE DECIDED IN CONNECTION WITH

3    ALLEGATIONS ABOUT, YOU KNOW, AN MGA EMPLOYEE IN CANADA WHO

4    DOESN'T KNOW CARTER BRYANT FROM ADAM, OR AN ALLEGATION ABOUT AN

5    MGA EMPLOYEE IN MEXICO WHO ALSO PRIOR TO WORKING AT MGA NEVER          02:09

6    KNEW CARTER BRYANT.

7            WHAT THEY WOULD LIKE TO DO IS MUDDY THE WATERS ON

8    THAT PARTICULAR ISSUE, WHICH IS THE KEY ISSUE.  AND I THINK THE

9    COURT IS RIGHT, IF YOU ISOLATE THAT ISSUE, IT WILL DETERMINE A

10   LOT OF THE REST OF THE CASE.                                         02:10

11           THE COURT:  THANK YOU, COUNSEL.

12           MR. JACOBY?

13           MR. JACOBY:  JUST TO ADDRESS THE ISSUE THAT YOU

14   RAISED WITH MS. TORRES ABOUT THE DISCOVERY MASTER FILINGS.  I

15   WAS ACTUALLY ON THE CALL WITH JUDGE INFANTE.                         02:10

16           THE COURT:  PLEASE.

17           MR. JACOBY:  IN THE FIRST ROUND OF MOTIONS THAT

18   MATTEL FILED, THEY DID FILE THEM WITH THE COURT AS WELL AS

19   JUDGE INFANTE, AND THAT'S WHY THERE WERE SEALING ORDERS.  WE

20   RAISED THAT WITH JUDGE INFANTE, AND HE INDICATED THAT IN THE         02:10

21   ABSENCE OF AN APPEAL IN WHICH CASE THERE WAS AN APPEAL TO THIS

22   COURT THAT ALL OF THE BRIEFS WOULD GO TO YOU AND YOU WOULD

23   DECIDE THE APPEAL; THAT THE WHOLE PURPOSE OF THE DISCOVERY

24   MASTER IS TO TAKE THIS OFF THE PLATE OF THE MAGISTRATE JUDGE

25   AND, TO THE EXTENT THE PARTIES LIVE WITH THE ORDER OF THE            02:11

1   DISCOVERY MASTER, YOU.

2          AND WE, IN PARTICULAR, FOUND IT TROUBLING THAT MATTEL

3   WAS FILING THEIR PAPERS WITH THE COURT FOR PRECISELY THE REASON

4   THAT YOU ARTICULATED TODAY; THAT YOU READ THEIR PAPERS AND NOT

5   OURS AND HAD A SENSE OF HOW THINGS WERE GOING BASED ON HEARING         02:11

6   HALF THE STORY.

7          THE COURT:  I APPRECIATE JUDGE INFANTE'S THOUGHTS ON

8   THAT, BUT I GUESS THE REASON WHY I WOULD LIKE TO HAVE THOSE

9   FILED IS NOT BECAUSE I'M READING THEM, LIKE I SAY, FOR ANY

10  SUBSTANTIVE RESOLUTION OF THE MATTER.  I APPRECIATE THE SPECIAL       02:11

11  MASTER'S INVOLVEMENT IN THAT.  I LIKE TO KEEP A SENSE OF WHAT'S

12  GOING ON.  IT GIVES ME AN IDEA OF HOW MUCH DISCOVERY IS TAKING

13  PLACE; WHAT THE ISSUES ARE.  IT'S JUST A WAY OF ME TO MONITOR

14  THE CASE THAT I HAVE ULTIMATE RESPONSIBILITY FOR.

15         SO I THINK IT DOES MAKE SENSE TO FILE THOSE WITH THE           02:1:

16  COURT UNDER SEAL.  THEY ARE THERE THEN IF THERE IS AN APPEAL.

17  IF THERE'S ANY ISSUES DOWN THE ROAD, I'LL HAVE ACCESS TO THOSE.

18  AND IT ALSO GIVES ME A GENERAL SENSE OF WHERE THINGS ARE GOING.

19         JUST LIKE WITH THE MAGISTRATE JUDGE, RESOLVING THE

20  DISCOVERY DISPUTE, THERE ARE STILL COPIES OF THOSE CASES PLACED       02:1:

21  IN THE DISTRICT COURT'S FILE; AGAIN, NOT TO MICROMANAGE WHAT

22  THE MAGISTRATE JUDGE IS DOING, BUT JUST TO BE ABLE TO HAVE A

23  SENSE OF WHAT'S HAPPENING IN THE CASE.

24         IT'S ALL THE MORE IMPORTANT WHEN IT'S A SPECIAL

25  MASTER OUTSIDE OF THE COURT WHO'S HANDLING THESE THINGS.  I'D         02:1:

EXHIBIT 18
PAGE 262

1    JUST LIKE TO KEEP TABS ON WHAT'S HAPPENING.

2         MR. JACOBY:  WE'RE HAPPY TO DO THAT.

3         I WOULD AGREE WITH MR. QUINN, THAT THE DISCOVERY

4    MASTER PROCESS SEEMS TO BE WORKING SO FAR.  AND SO YOU HAVE A

5    SENSE OF IT, MGA AND BRYANT HAVE BROUGHT TWO MOTIONS AND WON          02:12

6    THEM BOTH.  MATTEL HAS BROUGHT ONE MOTION, AND THAT MOTION WAS

7    GRANTED AS WELL.  THERE ARE TWO MORE SCHEDULED FOR TOMORROW.

8         THE COURT:  LIKE I SAY, I DIDN'T RAISE THAT FOR ANY

9    OTHER REASON THAN JUST TO RAISE THE ISSUE.  I'M SURE THAT YOU

10   BOTH ARE VERY CAPABLE OF EXERCISING YOUR RIGHTS WITH THE             02:12

11   SPECIAL MASTER.  AND THAT'S PART OF MY POINT HERE, I SUPPOSE,

12   IS THAT I KNOW I HAVE THREE INCREDIBLY SOPHISTICATED LAW FIRMS

13   LITIGATING THIS CASE, AND SOPHISTICATED LAWYERS, SO I HAVE

14   CONFIDENCE THAT WE CAN ACCOMPLISH THIS.

15        DO YOU HAVE ANY THOUGHTS ON THE PARTICULAR ISSUE OF             02:13

16   BIFURCATION?

17        MR. JACOBY:  YES.

18        MR. BRYANT FEELS THAT -- THERE'S NO QUESTION THAT NO

19   MATTER HOW THE BRYANT CASE IS DECIDED, THE FIRST CASE, IT WILL

20   LIMIT THE ISSUES IN THE SECOND CASE BY DEFINITION.  IF              02:13

21   MR. BRYANT PREVAILS ON HIS CASES, IT WILL LIMIT THE ISSUES IN

22   THE SUBSEQUENT CASE.  IF MR. BRYANT DOES NOT PREVAIL, IT WILL

23   NARROW THE ISSUES; SO I THINK IT MAKES AN ABUNDANCE OF SENSE TO

24   TRY THE BRYANT ISSUES FIRST.

25        AND FOR HIS PART, I THINK MR. BRYANT IS ENTITLED TO            02:13

 1   THIS ADJUDICATION.  HE'S THE ONE PERSON IN THIS MIX WHO'S NOT A

 2   CORPORATION, AND HE HAS THIS CLOUD OVER HIS WELL-BEING THAT'S

 3   BEEN THERE FOR A PRETTY LONG TIME NOW, AND HE WOULD LIKE TO SEE

 4   IT DISPOSED OF, IN ONE WAY OR THE OTHER, AS QUICKLY AS

 5   POSSIBLE.                                                      02:14

 6          AND I THINK THAT AT THE LAST HEARING, THE COURT

 7   ALREADY SORTED THESE ISSUES WHEN IT SAID THAT THE CLAIMS -- AND

 8   THERE WERE CLAIMS AGAINST LARIAN AND CLAIMS AGAINST BRYANT IN

 9   THE AMENDED COMPLAINT THAT MATTEL MOVED TO FILE, AND THOSE WERE

10   MOVED OVER TO THE OTHER CASE.  AND I THINK THAT TO BLEED THEM   02:14

11   BACK IN TO THE ORIGINAL CASE WOULD JUST CREATE A LOT OF

12   CONFUSION.

13          WITHOUT ARGUING THE CASE HERE NOW, MR. BRYANT

14   OBVIOUSLY DISPUTES THAT THE ACTIVITIES THAT HE DID, WHAT HE DID

15   AND DIDN'T DO, IN SEPTEMBER AND OCTOBER OF 2000 IS GOING TO     02:14

16   ENTITLE MATTEL TO THE RELIEF THEY ARE SEEKING.  BUT WE'LL

17   DECIDE THAT AT THE TRIAL.  AND WHEN THAT HAPPENS, I THINK THE

18   ISSUES WILL BE NARROWED.  SO WE AGREE WITH YOU, VERY

19   SOPHISTICATED LAWYERS ON ALL SIDES, THAT YOU CAN WRAP THE CASE

20   UP IN A YEAR.                                                  02:14

21          SURE, IT'S A BIG CASE, BUT THEY HAVE 13 LAWYERS

22   WORKING ON THEIR CASE; 13 LAWYERS GET COPIES OF WHAT THE

23   DISCOVERY MASTER IS SENDING OUT EVERY DAY.  IT'S AN AMAZINGLY

24   LONG LIST.  THEY HAVE THE RESOURCES TO BRING THIS CASE TO TRIAL

25   BY THE END OF THIS YEAR, AND THAT'S EXACTLY WHAT I THINK SHOULD 02:15

EXHIBIT 18
PAGE 264

1    BE DONE.

2              THE COURT:  THANK YOU, ALL THREE OF YOU.

3              MR. QUINN, YOU SEEM TO BE ANXIOUS TO SAY SOMETHING; A

4    VERY, BRIEF RESPONSE.

5              MR. QUINN:  THE CLAIMS AGAINST MGA, WHICH I THINK GO          02:15

6    HAND IN HAND WITH THESE CLAIMS REGARDING MR. BRYANT -- THE

7    INDUCEMENT AND THE AIDING AND ABETTING BREACH OF FIDUCIARY DUTY

8    ARE -- IN THE COUNTERCLAIM THEY ARE CLAIM SIX, INTENTIONAL

9    INTERFERENCE; CLAIM EIGHT, AIDING AND ABETTING; BREACH OF

10   FIDUCIARY DUTY; CLAIM TEN, BREACH OF DUTY OF LOYALTY.                  02:15

11             AND THEN, YOUR HONOR, TO THE EXTENT THAT WE WANT TO

12   FOCUS ON OWNERSHIP OF BRATZ, THERE IS NOT A CLAIM IN THE

13   ORIGINAL COMPLAINT THAT ADDRESSES OWNERSHIP OF BRATZ.  AT THAT

14   POINT WHEN THIS WAS FIRST STARTED AGAINST MR. BRYANT, MATTEL

15   WASN'T SURE WHAT IT WAS HE HAD BEEN WORKING ON OR WHAT HE HAD          02:15

16   CREATED.  THAT CLAIM IS A DEC RELIEF CLAIM THAT IS IN COUNT 13

17   NOW IN THE COUNTERCLAIM; SO IF WE WERE GOING TO FOCUS ON THOSE

18   BRATZ ISSUES AND MR. BRYANT, I'D SUBMIT THAT THOSE CLAIMS ALL

19   OUGHT TO GO IN THE FIRST TRIAL.

20             THANK YOU, YOUR HONOR.                                       02:16

21             THE COURT:  ALL RIGHT.  VERY WELL.

22             THIS IS WHAT WE'RE GOING TO DO.  I'M GOING TO SET TWO

23   SCHEDULING MATTERS; ONE FOR CASE 04-9059, AND A SEPARATE

24   SCHEDULING ORDER FOR 05-2727, AND MY SENSE IS TO BIFURCATE THEM

25   ALONG THOSE LINES.                                                     02:16

EXHIBIT 18
PAGE 265

1          MR. QUINN, I WILL ENTERTAIN A MOTION FROM THE

2   PLAINTIFFS IN -9059 FROM MATTEL THAT SOME OF THOSE LIMITED

3   CLAIMS, AS YOU JUST IDENTIFIED, ARE MORE APPROPRIATELY

4   CONSIDERED IN THAT FIRST CASE.  AND THEN OF COURSE THE DEFENSE

5   MAY OPPOSE THAT.                                                02:17

6          I CAN SEE HOW ONE OR MORE OF THOSE CLAIMS MIGHT BE,

7   BUT THEY MIGHT NOT BE AS WELL.  I'M NOT GOING TO DECIDE THAT

8   TODAY.  I'LL GIVE YOU LEAVE TO BRING THAT MOTION ON THAT NARROW

9   ISSUE IF THERE SHOULD BE CERTAIN CLAIMS THAT WE SHOULD DO IN

10  THIS FIRST PHASE AS OPPOSED TO THE SECOND PHASE.  BUT ABSENT AN  02:17

11  ORDER FROM THE COURT, THE ONLY CLAIMS THAT WE ARE GOING TO SET

12  IN THE FIRST TRIAL ARE THOSE SET FORTH IN 04-9059, AND THE ONLY

13  CLAIMS IN THE SECOND ARE GOING TO BE THE CLAIMS AND

14  COUNTERCLAIMS IN 05-2727.  I WILL GIVE YOU THAT OPPORTUNITY.

15         I'M GOING TO SET A JURY TRIAL DATE FOR FEBRUARY 12,      02:17

16  2008, ONE YEAR FROM TODAY, AT 9:30 A.M. IN 04-9049.  A HEARING

17  ON ANY MOTIONS IN LIMINE WILL BE SCHEDULED FOR FEBRUARY 4,

18  2008, 10:00 A.M., AND A FINAL PRE-TRIAL CONFERENCE WILL BE

19  CONDUCTED JANUARY 14, 2008, AT 11:00 A.M.

20         LAST DATE TO CONDUCT A SETTLEMENT CONFERENCE IN THAT     02:18

21  CASE WILL BE DECEMBER 3, 2007; THE LAST DATE FOR HEARING ANY

22  DISPOSITIVE MOTIONS WILL BE NOVEMBER 19, 2007 AT 10:00 A.M.;

23  THE COMPLETE DISCOVERY CUTOFF ON THE FIRST CASE WILL BE

24  OCTOBER 22ND, 2007.

25         I'LL SPEAK IN A FEW MOMENTS ABOUT LIMITS IN TERMS OF     02:18

1   WITNESSES AND INTERROGATORIES AND THE LIKE.

2            AS FAR AS 05-2727, THE JURY TRIAL DATE WILL BE

3   JULY 1, 2008; THE HEARING ON ANY MOTIONS IN LIMINE WILL BE

4   JUNE 23, 2008, 10:00 A.M.; THE FINAL PRE-TRIAL CONFERENCE WILL

5   BE JUNE 2, 2008, 11:00 A.M.; THE LAST DATE TO CONDUCT A          02:18

6   SETTLEMENT CONFERENCE IN THAT CASE WILL BE APRIL 21, 2008; THE

7   LAST DATE FOR HEARING DISPOSITIVE MOTIONS IN THAT CASE WILL BE

8   APRIL 7, 2008, 10:00 A.M.; DISCOVERY CUTOFF WILL BE MARCH 3,

9   2008.

10           ANY FURTHER AMENDMENTS OR THE ADDITION OF PARTIES IN     02:19

11  EITHER OF THESE CASES IS GOING TO REQUIRE LEAVE OF COURT.

12           THESE ARE THE LIMITS I'M GOING TO PUT ON EXPERT

13  DEPOSITIONS AND INTERROGATORIES.  NOW, THESE LIMITS ARE -- I

14  DON'T WANT TO SAY THEY ARE SOFT LIMITS, BUT THEY ARE LIMITS

15  WHICH THE COURT WOULD CERTAINLY UNDERSTAND OR WOULD INVITE       02:20

16  COUNSEL TO SUBMIT A MOTION TO EXPAND, IF THERE'S REASON TO.

17  BUT I JUST WANT TO HAVE SOME PARAMETERS PLACED ON THIS AT THE

18  OUTSET.

19           AS FAR AS NONEXPERT DEPOSITIONS, I'M GOING TO LIMIT

20  EACH SIDE TO 24; SO THAT WILL BE A TOTAL OF 48 BETWEEN THE TWO   02:20

21  SIDES, WHICH WOULD HOPEFULLY CAPTURE MOST OF THE INDIVIDUALS

22  WHO HAVE SOME INFORMATION TO PROVIDE IN THIS CASE.  I'M GOING

23  TO LIMIT THE NUMBER OF EXPERT WITNESSES TO 20 ON EACH SIDE, AND

24  THEN THE TOTAL NUMBER OF INTERROGATORIES TO A TOTAL NUMBER OF

25  50 TO EACH SIDE.                                                 02:20

1    AGAIN, IF YOU GET TO THE POINT WHERE YOU NEED 21

2  EXPERT WITNESSES FOR SOME REASON, OR YOU NEED 25 FACT

3  WITNESSES, YOU CAN MAKE APPLICATION TO THIS COURT AND THE COURT

4  WILL CONSIDER THAT AFTER YOU, OF COURSE, HAVE MET AND CONFERRED

5  AND TRIED TO WORK THAT OUT ON YOUR OWN.  BUT WE HAVE TO HAVE          02:20

6  SOME PARAMETERS ON THIS.

7    ARE THERE ANY QUESTIONS?

8    THE COURT WILL BE ISSUING ITS SCHEMATIC WHICH WILL

9  HAVE ALL THESE DATES AND THE COURT'S SCHEDULING ORDERS AND

10  CALCULATIONS, BUT ARE THERE ANY GENERAL QUESTIONS ABOUT WHAT        02:21

11  THE COURT IS TRYING TO ACCOMPLISH HERE?

12    MS. TORRES:  YOUR HONOR, YOU JUST SAID 50

13  INTERROGATORIES EACH SIDE.  THE FEDERAL RULES ORDINARILY

14  PROVIDE FOR INTERROGATORIES TO PARTIES, AND THERE ARE A NUMBER

15  OF PARTIES THAT THEY ARE TRYING TO SERVE, WHO THEY MAY HAVE          02:21

16  ALREADY SERVED, I DON'T KNOW.

17    ARE THOSE PARTIES INCLUDED IN THAT 50 LIMIT?

18    THE COURT:  THERE'S ONE PARTY, ESSENTIALLY, ON THE

19  OTHER SIDE, AND YOU HAVE TWO PARTIES.

20    MS. TORRES:  WELL, THEY HAVE ALSO NAMED -- ACTUALLY      02:21

21  WE HAVE THREE PARTIES NOW; THEY SUED OUR CEO ISAAC LARIAN AND

22  THEY HAVE NAMED ANOTHER EMPLOYEE AND TWO INDIRECT SUBSIDIARIES.

23    THE COURT:  WELL, MR. JACOBY, YOU'RE HERE ON BEHALF

24  OF MR. BRYANT.  WOULD YOU REALLY NEED ANOTHER 50

25  INTERROGATORIES BEYOND WHAT MGA WOULD BE SUBMITTING ON THESE        02:22

EXHIBIT 18
PAGE 266

1    CLAIMS CONCERNING BRATZ OWNERSHIP?

2           MR. JACOBY:  PROBABLY NOT.  BUT, I MEAN, I THINK IT

3    IS A CONCERN THAT THERE ARE POTENTIALLY FOUR PARTIES WHO AREN'T

4    EVEN HERE TODAY.

5           THE COURT:  LET'S TRY TO WORK WITHIN THE CONFINES OF     02:22

6    THE 50 INTERROGATORIES, AND IF YOU NEED MORE, AGAIN, THE COURT

7    IS GOING TO BE FORTHCOMING, IF THERE'S A NEED FOR IT.  AND IT'S

8    THE TYPE OF ORDER THAT IF YOU CAN STIPULATE AMONGST YOURSELVES,

9    YOU'RE NOT GOING TO NEED AN ORDER FROM THE COURT.

10          BUT IF YOU'RE NOT AGREEING AMONGST YOURSELVES, THEN      02:22

11   YOU'RE GOING TO HAVE TO COME BACK TO THE COURT BEFORE YOU BUST

12   THOSE LIMITS.  UNLIKE EVERY OTHER ORDER THE COURT ISSUES, WHERE

13   ONCE THE COURT ISSUES AN ORDER AND YOU NEED AN ORDER FROM THE

14   COURT TO ALTER THAT, THIS IS ONE THAT I WILL GIVE YOU AUTHORITY

15   AMONGST YOURSELVES TO STIPULATE TO A GREATER NUMBER.  BUT LETS  02:22

16   BE REASONABLE.  I CAN'T IMAGINE YOU CAN'T WORK THIS OUT.  I

17   JUST DON'T WANT TO HAVE OPEN-ENDED NUMBERS OF INTERROGATORIES

18   AND EXPERTS.

19          MS. TORRES:  WE DON'T EITHER, AND I DON'T THINK WE'LL

20   NEED 50 PER PARTY.                                             02:23

21          MR. QUINN:  IN THE UNLIKELY EVENT THERE WERE A

22   DISAGREEMENT ON THAT, DOES THAT COME TO YOU?

23          THE COURT:  YES, THAT COMES TO ME.

24          MR. QUINN:  THANK YOU, YOUR HONOR.

25          THE COURT:  BUT GIVEN THE SIGNIFICANCE OF THIS CASE     02:23

EXHIBIT 18
PAGE 269

25

1   AND THE RESOURCES THAT QUINN EMANUEL AND O'MELVENY & MYERS AND

2   LITTLER ARE ALL DEVOTING TO THIS, THESE DATES ARE PRETTY FIRM;

3   SO PLAN ACCORDINGLY.

4           MR. JACOBY:   THANK YOU, YOUR HONOR.

5           MR. QUINN:   THANK YOU, YOUR HONOR.                          02:23

6           THE COURT:   ALL RIGHT.   GOOD LUCK.

7

8

9

10

11

12

13

14

15

16

17                          CERTIFICATE

18

19   I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED
     STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF
20   THE STENOGRAPHICALLY RECORDED PROCEEDINGS HELD IN THE ABOVE-
     ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN
21   CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF
     THE UNITED STATES.

22

23   _____          _____
     THERESA A. LANZA, CSR, RPR                      DATE
24   FEDERAL OFFICIAL COURT REPORTER

25

2-12-07                    CV 04-09049

EXHIBIT 18
PAGE 270

EXHIBIT 19

1    Hon. Edward A. Infante (Ret.)
     JAMS
2    Two Embarcadero Center
     Suite 1500
3    San Francisco, California  94111
     Telephone:     (415) 774-2611
4    Facsimile:     (415) 982-5287

5

6
                    UNITED STATES DISTRICT COURT
7
                    CENTRAL DISTRICT OF CALIFORNIA
8
                         EASTERN DIVISION
9

10
                                       │ CASE NO. C 04-09049 SGL (RNBx)
11   CARTER BRYANT, an individual,     │ JAMS Reference No. 1100049530
12              Plaintiff,             │
                                       │ Consolidated with
13        v.                           │ Case No. CV 04-09059
                                       │ Case No. CV 05-2727
14   MATTEL, INC., a Delaware corporation, │
                                       │ **ORDER GRANTING JOINT MOTION**
15              Defendant.             │ **FOR PROTECTIVE ORDER**
                                       │ **REGARDING MATTEL'S**
16                                     │ **INTERROGATORIES; DENYING**
                                       │ **MATTEL'S MOTION TO COMPEL**
17                                     │ **INTERROGATORY RESPONSES**

18
     CONSOLIDATED WITH
19   MATTEL, INC. v. BRYANT and
     MGA ENTERTAINMENT, INC. v. MATTEL,
20   INC.

21

22

23                         I. INTRODUCTION

24        Presently pending are two separate motions pertaining to Mattel's Third Set of

25   Interrogatories:  (1) MGA Entertainment, Inc., MGA Entertainment (HK) LTD., Isaac Larian, and

26   Carter Bryant's (collectively "Defendants") Joint Motion For Protective Order Regarding Mattel,

27

28   Bryant v. Mattel, Inc.,                                          1
     CV-04-09049 SGL (RNBx)

                         9-05-07

EXHIBIT 19
PAGE 271

1  Inc.'s ("Mattel") Interrogatories[1]; and (2) Mattel's motion to compel Defendants to answer the

2  Third Set of Interrogatories.[2]  Having considered the motion papers and the comments of counsel

3  at the hearing, the joint motion for a protective order is granted, and Mattel's motion to compel

4  interrogatory responses is denied.  MGA's request for sanctions in connection with Mattel's

5  motion to compel interrogatory responses is also denied.[3]

6  <center>II. BACKGROUND</center>

7      In December of 2004, Mattel served Carter Bryant ("Bryant") and MGA Entertainment,

8  Inc. ("MGA") with its First Set of Interrogatories, which consisted of a total of six interrogatories.

9  In April of 2005, Mattel served Bryant and MGA with its Second Set of Interrogatories, asking

10  Bryant four questions and MGA seven questions.  Of these, three interrogatories to Bryant were

11  identical to three interrogatories to MGA.  In December of 2006, Mattel served MGA with its

12  First Set of Interrogatories Re Claims of Unfair Competition, which consisted of ten additional

13  interrogatories.

14      During a scheduling conference held on February 12, 2007, the district court imposed a

15  limit on interrogatories of "50 for each side for both cases." February 27, 2007 Minute Order,

16  Proctor Dec., Ex. 6; Tr. of scheduling conference, Proctor Dec., Ex. 7.  When MGA asked

17  whether all Defendants would count as one "side" under the court's order, the court confirmed

18  that was its intent: "there's one party, essentially, on the other side, and [defendants] have two

19  parties." Tr. of scheduling conference, Proctor Dec., Ex. 7.  After MGA clarified that there were

20  actually six Defendants, the court asked Bryant's counsel if Bryant would need to serve fifty

21

22

23

24  [1]  Defendants submitted their joint motion on July 10, 2007. Mattel submitted its opposition on July 17, 2007.  Defendants submitted their reply brief on July 20, 2007.

25  [2]  Mattel submitted its motion to compel on July 18, 2007. Defendants submitted an opposition on August 1, 2007. Mattel submitted its reply brief on August 6, 2007.

26

27  [3]  The Discovery Master determined that a hearing was not necessary.

28  Bryant v. Mattel, Inc.,
   CV-04-09049 SGL (RNBx)

<div align="right">2</div>

<div align="right">EXHIBIT 19<br/>PAGE 272</div>

1  interrogatories on Mattel in addition to MGA's interrogatories.  Bryant stated that he probably

2  would not.  The court responded as follows:

> Let's try to work within the confines of the 50 interrogatories, and if you
> need more, again, the court is going to be forthcoming, if there's a need for it.
> And it's the type of order that if you can stipulate amongst yourselves, you're not
> going to need an order from the court,

> But if you're not agreeing amongst yourselves, then you're going to have
> to come back to the court before you bust those limits.  Unlike every other order
> the court issues, where once the court issues an order and you need an order from
> the court to alter that, this is one that I will give you authority amongst yourselves
> to stipulate to a greater number.  But [let's] be reasonable.  I can't imagine you
> can't work this out.  I just don't want to have open-ended numbers of
> interrogatories and experts,

10  Id. at 24:5-18.  The court also directed the parties to return to court if they were unable to reach

11  an agreement.  Id. at 24:23.

12       On June 7, 2007, Mattel served its Third Set of Interrogatories on the "other side" –

13  MGA, MGA Entertainment (HK) Ltd. ("MGA Hong Kong"), Isaac Larian ("Larian") and Bryant

14  – asking each of these four defendants the same nineteen questions.  On July 9, 2007, MGA,

15  MGA Hong Kong, Larian and Bryant each separately served objections to the Third Set of

16  Interrogatories and no responses.  The parties met and conferred on July 10, 2007.  Defendants

17  refused to answer any of the interrogatories, claiming that Mattel had exceeded the fifty

18  interrogatory limit and that the interrogatories were otherwise objectionable on several grounds.

19  Defendants contended that Mattel exceeded the 50 interrogatories limit by serving interrogatories

20  that are compound and by serving interrogatories on multiple responding parties on the "same

21  side."  By Defendants' calculations, when each discrete subpart of each of Mattel's

22  interrogatories served on each of the responding parties are counted separately, Mattel has

23  served, at a minimum, 227 separate interrogatories.  In contrast, Mattel contended that its

24  interrogatories are not compound, and that each identical interrogatory it serves should be

25  counted as one, regardless of how many parties it serves on the "other side."  By Mattel's

26  calculations, it has propounded a total of forty-three non-identical interrogatories.  The parties

27

28
Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

3

EXHIBIT 19
PAGE 273

1    also discussed potentially stipulating to a greater number of interrogatories but apparently did not

2    reach an agreement.

3        Defendants move for a protective order preventing Mattel from serving additional

4    interrogatories and requiring Mattel to serve a revised Third Set of Interrogatories or else identify

5    which interrogatories (or subparts) it wishes to be answered, consistent with the limits imposed

6    by the district court.  Mattel opposes the motion, contending that it has not exceeded the 50

7    interrogatory limit set by the district court.  In a separate motion, Mattel moves to compel

8    Defendants to provide responses to its Third Set of Interrogatories.

### III. STANDARDS

10        Under Federal Rules of Civil Procedure 26(c), a court may "make any order which justice

11    requires to protect a party or person from annoyance, embarrassment, oppression, or undue

12    burden or expense," including "that the disclosure or discovery not be had."

### IV. DISCUSSION

14        Defendants' motion for a protective order raises essentially three issues:  (1) whether an

15    identical interrogatory served on several Defendants should be counted as only one interrogatory

16    or counted separately for each Defendant served with the identical interrogatory; (2) whether an

17    interrogatory that requires a Defendant to "state all facts," "identify all persons with knowledge of

18    such facts," and "identify all documents" should be counted as a single interrogatory or three

19    separate interrogatories; and (3) whether an interrogatory that covers multiple claims, legal

20    theories or other subjects should be counted as a single interrogatory or multiple interrogatories.

21    A. The Fifty "Per Side" Limit

22        The district court limited interrogatories to fifty "per side."  Although the district court's

23    order does not speak directly to this issue, the most reasonable approach is to count one identical

24    interrogatory served on all six of the Defendants as one interrogatory.  Under this approach,

25    Mattel may serve a total of 50 non-identical interrogatories to the "other side," and Defendants

26    collectively may serve a total of 50 non-identical interrogatories on Mattel.

27

28    Bryant v. Mattel, Inc.,
   CV-04-09049 SGL (RNBx)

4

EXHIBIT 19
PAGE 274

1    Defendants' alternative approach is not realistic because it would leave Mattel with far

2    fewer interrogatories than the 50 permitted by the district court. Indeed, Defendants' approach

3    would not even provide Mattel with the presumptive limit of 25 interrogatories permitted under

4    Rule 33(a), Fed.R.Civ.P. Under Defendants' approach, Mattel would be limited to approximately

5    eight interrogatories for each of the six Defendants, but Defendants would be allowed to serve 50

6    interrogatories on Mattel. Such an imbalance would be fundamentally unfair.

7    Therefore, for purposes of applying the 50 interrogatory limit, one identical interrogatory

8    served on all six of the Defendants is counted as one interrogatory.

9    B. Interrogatories Requiring Responding Party to: (1) state all facts; (2) identify all persons with

10    knowledge; and (3) identify all documents

11    Pursuant to Rule 33(a), Fed.R.Civ.P., "discrete subparts" of an interrogatory are to be

12    counted as separate interrogatories for purposes of the statutorily imposed limit on the number of

13    interrogatories a party may serve upon any other party. Although Rule 33(a) does not define the

14    term "discrete subparts," The Advisory Committee addresses this issue and provides the

15    following guidance as to when subparts should and should not count as separate interrogatories:

16    Each party is allowed to serve 25 interrogatories upon any other party, but must
       secure leave of court (or stipulation from the opposing party) to serve a larger
17    number. Parties cannot evade this presumptive limitation through the device of
       joining as 'subparts' questions that seek information about discrete separate
18    subjects. However, a question asking about communications of a particular type
       should be treated as a single interrogatory even though it requests that the time,
19    place, persons present, and contents be stated separately for each such
       communication.

20

21    Advisory Committee Notes for the 1993 Amendments to Rule 33. A leading treatise has

22    explained that "it would appear that an interrogatory containing subparts directed at eliciting

23    details concerning the common theme should be considered a single question, although the

24    breadth of an area inquired about may be disputable." 8A Charles A. Wright, Arthur R. Miller &

25    Richard L. Marcus, Federal Practice and Procedure § 2168.1, at 261 (2d ed. 1994). "Although

26    there is no bright-line test as to whether a subpart should be counted as an interrogatory, the

27

28    Bryant v. Mattel, Inc.,
      CV-04-09049 SGL (RNBx)

                                                                                            5

EXHIBIT 19
PAGE 225

1   weight of authority interpreting Rule 33(a) requires examining whether the subparts are

2   'logically or factually subsumed within and necessarily related to the primary question.'"

3   Chapman v. California Dept. of Education, 2002 WL 32854376 (N.D. Cal. Feb. 6, 2002) citing

4   Safeco of America v. Rawstron, 181 F.R.D. 441, 445 (C.D. Cal. 1998), quoting Ginn v. Gemini

5   Inc., 137 F.R.D. 320, 322 (D. Nev. 1991).

6           Cases applying Rule 33(a), Fed.R.Civ.P., however, have not been consistent in addressing

7   whether an interrogatory constitutes one or more interrogatories if it asks the responding party to

8   (1) state all facts, (2) identify all persons with knowledge of such facts, and/or (3) identify all

9   documents referring or relating to such facts.  On the one hand, for example, in United States ex

10  rel. Pogue v. Diabetes Treatment Ctrs. of America, Inc., 235 F.R.D. 521, 524 (D.C. Cir. 2006),

11  the court explained that an "interrogatory may properly seek identification of documents and facts

12  supporting a contention, but it may not do so in a single interrogatory."  See also Nobles v. Jacobs

13  IMC, 2003 WL 23198817 (D. Virgin Islands 2003) (finding that an interrogatory that asks the

14  responding party to state all facts regarding a particular issue and to identify all persons having

15  knowledge of such information is two separate interrogatories); Chapman v. California Dept. of

16  Education, 2002 WL 32854376 (N.D. Cal. Feb. 6, 2002) (treating an interrogatory seeking

17  disclosure of facts (including the identity of persons with knowledge) and documents as two

18  separate interrogatories); Kendall v. GES Exposition Services, Inc., 174 F.R.D. 684, 685-86 (D.

19  Nevada 1997) (determining that a subpart asking for documents in addition to facts should be

20  treated as two subparts).  On the other hand, for example, in Krawczyc v. City of Dallas, 2004

21  WL 614842 at *3 (N.D. Tex. 2004), the court held that an interrogatory asking a party to state

22  facts supporting a contention and to identify persons with knowledge of those facts counts as one

23  interrogatory because "[w]itnesses and their statements are facts," and hence the subpart is

24  "factually subsumed within and necessarily related to the primary question."

25          In the instant case, most of Mattel's interrogatories follow the same format, asking the

26  responding party to state all facts supporting a contention or contentions, to identity persons with

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

6

EXHIBIT 19
PAGE 226

1   knowledge, and to identify all documents that refer or relate to such acts.  Notwithstanding

2   caselaw to the contrary, these subparts are not discrete.  Rather, the subparts are related and

3   directed to the underlying details of a specifically identified contention (or contentions) in a

4   manner similar to the example given in the Advisory Committee Notes:  "a question asking about

5   communications of a particular type should be treated as a single interrogatory even though it

6   requests that the time, place, persons present, and contents be stated separately for each such

7   communication."  Therefore, subparts seeking facts supporting a contention, the identity of

8   persons with knowledge, and documents are not counted separately for purposes of applying the

9   50 interrogatory limit.

10   C.  Interrogatories Addressing Several Discrete Issues

11        Notwithstanding the discussion above in Section "B," many of Mattel's interrogatories are

12   compound because they address discrete issues.  For example, Mattel has propounded the

13   following interrogatory:

14        State all facts that support YOUR contention, if YOU so contend, that one
       or more of MATTEL's claims against YOU in THIS ACTION is barred, in whole
15       or in part, by the doctrines of unclean hands, estoppel, waiver, or consent, and
       IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS
16       that REFER OR RELATE TO such facts.[4]

17   This interrogatory is directed to four separate and discrete defense theories:  unclean hands,

18   estoppel, waiver and consent.  Therefore, the interrogatory is compound and each of the four

19   discrete subparts should be counted as a separate interrogatory.  See Safeco of America, 181

20   F.R.D. at 446 ("Where the underlying requests for admissions [that are the subject of an

21   interrogatory] concern different, separate, or discrete matters, however, the interrogatory should

22   be viewed as containing a subpart for each request."); see also Sec. Ins Co. v. Trustmark Ins. Co.,

23   2003 WL 22326563 (D. Conn. 2003) (finding that a single interrogatory seeking information

24

25

26        [4]  Mattel's Third Set of Interrogatories (No. 18), Glad Dec., Ex. 9.

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                                    7

EXHIBIT  19
PAGE  277

1  about all elements of a given claim was compound and explaining that each element of a claim is

2  discrete and constitutes a separate interrogatory).

3        Mattel's next interrogatory is even more expansive, covering multiple legal theories and

4  factual matters:

5          State all facts that support YOUR contention, if YOU so contend, that
        YOU did not intentionally interfere with the INVENTIONS AGREEMENT or

6          any other agreement or contract between MATTEL and BRYANT, or aid or abet
        any breach of fiduciary duty or duty of loyalty owed by BRYANT to MATTEL,

7          when BRYANT purported to TRANSFER and MGA purported to ACQUIRE
        rights to BRATZ or when BRATZ performed work or services with or for MGA

8          while BRYANT was employed by MATTEL, and IDENTIFY all PERSONS with
        knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO

9          such facts.[5]

10  This interrogatory includes three different legal contentions: (1) intentional interference with the

11  Inventions Agreement; (2) intentional interference with any other agreement or contract between

12  Mattel and Bryant; and (3) aiding or abetting any breach of fiduciary duty or duty of loyalty

13  owed by Bryant to Mattel.[6]  In addition, this interrogatory asks the responding party to apply two

14  different sets of factual allegations to the three different legal contentions.  Therefore, the

15  interrogatory consists of six discrete subparts, each of which counts as a separate interrogatory.

16        The following additional interrogatories contain similar types of discrete and separate

17  subparts:  Mattel's First Set of Interrogatories (Unfair Competition), No. 5 (two discrete

18  subparts); No. 10 (two discrete subparts); Mattel's Third Set of Interrogatories, No. 17 (two

19  discrete subparts), No. 22 (two discrete subparts), No. 23 (4 discrete subparts), No. 25 (two

20  discrete subparts), and No. 27 (2 discrete subparts).  When all of these discrete subparts are taken

21  into consideration, it is evident that Mattel exceeded the 50 interrogatory limit when it

22

23

24

    [5]  Id. (No. 21).

25

26      [6] The portion of the interrogatory seeking contentions about a potential breach of a fiduciary duty or the duty of loyalty could potentially be interpreted as two separate interrogatories, but because these theories are similar and presumably would be based on interrelated facts, this portion of the interrogatory will count as one interrogatory.

27

28

EXHIBIT 19
PAGE 278

1    propounded its Third Set of Interrogatories.  Therefore, Defendants are entitled to a protective

2    order.

3                                    V. CONCLUSION

4         For the reasons set forth above, Defendants' motion for a protective order is granted, and

5    Mattel's motion to compel responses to the Third Set of Interrogatories is denied.  Mattel may

6    serve a Revised Third Set of Interrogatories that shall not exceed the 50 interrogatory limit

7    imposed by the district court.  MGA's request for sanctions in connection with Mattel's motion to

8    compel interrogatory responses is denied.

9         Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

10   Master, MGA shall file this Order with the Clerk of Court forthwith.

11

12

13   Dated: September 5, 2007

14                                   HON. EDWARD A. INFANTE (Ret.)
                                     Discovery Master
15

16

17

18

19

20

21

22

23

24

25

26

27

28
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)                                                              9

EXHIBIT 19
PAGE 229

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on September 5, 2007, I served the attached ORDER GRANTING JOINT MOTION FOR PROTECTIVE ORDER REGARDING MATTEL'S INTERROGATORIES; DENYING MATTEL'S MOTION TO COMPEL INTERROGATORY RESPONSES in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Michael C. Keats, Esq. | O'Melveny & Myers LLP | mkeats@omm.com |
| Kendall Burr, Esq. | O'Melveny & Myers LLP | kburr@omm.com |
| Melanie Bradley, Esq. | O'Melveny & Myers LLP | mbradley@omm.com |
| Marvin Putnam, Jr., Esq. | O'Melveny & Myers LLP | mputnam@omm.com |
| William Charron, Esq. | O'Melveny & Myers LLP | wcharron@omm.com |
| Marc Feinstein, Esq. | O'Melveny & Myers LLP | mfeinstein@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on September 5, 2007, at San Francisco, California.

Sandra Chan

EXHIBIT 19
PAGE 280

EXHIBIT 20

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL: (213) 443-3000 FAX: (213) 443-3100

WRITER'S DIRECT DIAL NO.
(213) 443-3152

WRITER'S INTERNET ADDRESS
marshallsearcy@quinnemanuel.com

June 26, 2009

VIA ELECTRONIC MAIL

Jean Pierre Nogues
Mitchell Silberberg & Knupp LLP
11377 West Olympic Blvd.
Los Angeles, CA 90064

Re:    Bryant v. Mattel, Inc.

Dear Mr. Nogues:

I write concerning the parties' meet and confer on Wednesday, June 24, 2009 regarding Mattel's responses to MGA's First Set of Phase 2 Requests for Admissions, First Set of Phase 2 Interrogatories, and Second Set of Phase 2 Requests for Production.

**Mattel's Responses to MGA's Phase 2 Requests for Admission**

During our conference, I agreed that Mattel would supplement our responses to MGA's Phase 2 Requests for Admission Nos. 1-7 by Thursday, July 6, 2009. With respect to RFA No. 4, I explained that this RFA is vague and ambiguous as presently written, but that we would supplement our response based on our understanding of the Interrogatory.

**Mattel's Responses to MGA's First Set of Phase 2 Interrogatories**

The parties were unable to reach agreement as to whether or not MGA has exceeded its allotted interrogatories in this case, and thus we did not get to the other objections interposed by Mattel. You stated your belief that Mattel's position is inconsistent with Mattel's previous positions on interrogatories. I asked you to identify the pleadings you believed are inconsistent. Though you could not identify them with specificity, we went back and reviewed the one pleading that you

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, NY 10010 | TEL (212) 849-7000 FAX (212) 849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, CA 94111 | TEL (415) 875-6600 FAX (415) 875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, CA 94065 | TEL (650) 801-5000 FAX (650) 801-5100
CHICAGO | 250 South Wacker Drive, Suite 230, Chicago, IL 60606 | TEL (312) 463-2961 FAX (312) 463-2962
LONDON | 16 Old Bailey, London EC4M 7EG United Kingdom | TEL 144(0) 20 7653 2000 FAX 144(0) 20 7653 2100
TOKYO | Akasaka Twin Tower Main Building, 6th Floor, 17-22 Akasaka 2-Chome, Minato-ku, Tokyo 107-0052 Japan | TEL +81 3 5561-1711 FAX +81 3 5561-1712

07975/2988448.1

EXHIBIT **20**
PAGE 281

mentioned, as well as the prior orders in the case, and do not believe there is any inconsistency. Because we cannot agree, it appears that we will need guidance from the Discovery Master on this threshold counting issue.

**Mattel's Responses to MGA's Second Set of Phase 2 Requests for Production**

As I explained Wednesday, a large number of the Requests for Production in MGA's Second Set of Phase 2 Requests for Production are duplicative of previously served RFPs, including RFPs that were limited by the previous Discovery Master. You confirmed that you did not intend for Mattel to reproduce documents served previously. In light of this statement, Mattel will agree to supplement its responses by July 6 as follows:

**Requests To Which Mattel Will Supplement Its Responses:**

The following RFPs seek documents previously produced in response to other RFPs, but Mattel will supplement its responses to these RFPs to clarify that it will produce additional responsive, non-privileged documents found after a reasonably diligent search, if any, on a rolling basis.

**REQUEST FOR PRODUCTION NO. 88:**
All DOCUMENTS that REFER OR RELATE to ANY alleged destruction or spoliation of evidence by or on behalf of MGA, as alleged in YOUR OPERATIVE COUNTERCLAIMS in THIS ACTION.

**REQUEST FOR PRODUCTION NO. 89:**
All DOCUMENTS that REFER OR RELATE to the DOCUMENTS to which Farhad Larian allegedly gave YOU access and which YOU allegedly viewed or inspected before Farhad Larian allegedly destroyed or spoiled the same, including but not limited to ANY lists of such DOCUMENTS to which YOU actually were given access and/or YOU actually viewed or inspected.

**REQUEST FOR PRODUCTION NO. 99:**
ALL DOCUMENTS that constitute or REFER OR RELATE to any analysis of Janine Brisbois' "thumb" drive referred to in YOUR OPERATIVE COUNTERCLAIMS, including but not limited to any analysis by or on behalf of KPMG.

**REQUEST FOR PRODUCTION NO. 100:**
YOUR entire personnel file (except health care specific information, social security numbers, tax identification numbers, dates of birth, bank account numbers, and checking account numbers) for Carlos Gustavo Machado Gomez ("Machado"), including but not limited to ANY employment agreements between YOU and Machado, all confidentiality or non-disclosure agreements signed by Machado, and ANY other DOCUMENTS signed by Machado that concern the use, confidentiality, and disclosure of MATTEL'S TRADE SECRETS.

**REQUEST FOR PRODUCTION NO. 101:**
YOUR entire personnel file (except health care specific information, social security numbers, tax identification numbers, dates of birth, bank account numbers, and checking account numbers) for Mariana Trueba Almada ("Trueba"), including but not limited to ANY

EXHIBIT 20
PAGE 282

employment agreements between YOU and Trueba, ANY confidentiality or non-disclosure agreements signed by Trueba, and ANY other DOCUMENTS signed by Trueba that concern the use, confidentiality, and disclosure of MATTEL's TRADE SECRETS.

**REQUEST FOR PRODUCTION NO. 102:**
YOUR entire personnel file (except health care specific information, social security numbers, tax identification numbers, dates of birth, bank account numbers, and checking account numbers) for Pablo Vargas San Jose ("Vargas"), including but not limited to ANY employment agreements between YOU and Vargas, ANY confidentiality or non-disclosure agreements signed by Vargas, and ANY other DOCUMENTS signed by Vargas that concern the use, confidentiality, and disclosure of MATTEL's TRADE SECRETS.

**REQUEST FOR PRODUCTION NO. 103:**
YOUR entire personnel file (except health care specific information, social security numbers, tax identification numbers, dates of birth, bank account numbers, and checking account numbers) for Ron Brawer ("Brawer"), including but not limited to ANY employment agreements between YOU and Brawer, ANY confidentiality or non-disclosure agreements signed by Brawer, and ANY other DOCUMENTS signed by Brawer that concern the use, confidentiality, and disclosure of MATTEL's TRADE SECRETS.

**REQUEST FOR PRODUCTION NO. 104:**
YOUR entire personnel file (except health care specific information, social security numbers, tax identification numbers, dates of birth, bank account numbers, and checking account numbers) for Janine Brisbois ("Brisbois"), including but not limited to ANY employment agreements between YOU and Brisbois, ANY confidentiality or non-disclosure agreements signed by Brisbois, and ANY other DOCUMENTS signed by Brisbois that concern the use, confidentiality, and disclosure of MATTEL's TRADE SECRETS.

**REQUEST FOR PRODUCTION NO. 111:**
All DOCUMENTS that refer or relate to ANY contacts allegedly made by Ron Brawer after his resignation from MATTEL to past or present MATTEL employees, as alleged in paragraph 60 of YOUR OPERATIVE COUNTERCLAIMS.

**Requests Intertwined with Improper Interrogatories:**

Certain of the RFPs are inextricably intertwined with MGA's First Set of Phase 2 Interrogatories, in that the documents responsive to these RFPs depend upon Mattel's answers to those interrogatories. Because the interrogatories in question exceed MGA's allotted interrogatories, Mattel cannot produce documents in response to the RFPs unless or until the Discovery Master rules on the counting issue. The following RFPs fall into this category: RFP Nos. 69, 70, 71, 72, 73, 74, 75, 76, 80, 82, 84, 85, 90, 93, 98, 107 and 108.

3

EXHIBIT 20
PAGE 283

**Overbroad Requests To Which Mattel Will Not Supplement Its Responses:**

Requests Seeking Documents Relating To Bratz

RFP Nos. 72, 87, 92, 95 and 97 seek documents relating to the Bratz line of dolls and products. The documents responsive to RFP No. 72 depend upon Mattel's answer to RFA No. 4, the RFA which you refused to limit by timeframe or product line. To the extent this RFP seeks documents regarding any Mattel product developed from the intellectual property that the jury found Mattel owned in the Phase 1 trial, such documents appear to be irrelevant. RFP No. 72 is also dependent upon Mattel's answer to Interrogatory No. 4, one of the interrogatories that is beyond MGA's allotted number.

To the extent RFP Nos. 87, 92, 95 and 97 seek information regarding any Mattel product developed from the intellectual property that the jury found Mattel owned in the Phase 1 trial, the requests are overbroad and seek documents that again appear to be irrelevant. Thus, RFP Nos. 95 and 97 are wholly objectionable on this ground alone. RFP Nos. 87 and 92 seek documents that refer or relate to any market research generated from January 1, 2000 to the present relating to Bratz popularity (RFP No. 87) or the sale of the Bratz line of dolls and products (RFP No. 92). The previous discovery master found similarly overbroad requests that sought all documents referring or relating to Bratz to be overbroad in that they did not "have anything to do with the claims and defenses in this case." See, e.g., Discovery Master's Order, dated May 22, 2007, at 17:14-16, 18:16-19, 21:1-7. In addition, RFP Nos. 87 and 92 are duplicative of previous requests, including MGA RFP Nos. 175, 555, 557, 567, 737 and 787.

Requests Seeking Documents Relating To Barbie

RFP Nos. 86, 91 and 94 seek broad categories of documents relating to "the Barbie line of dolls and products," an undefined term. RFP Nos. 86 and 91 seek market research generated from January 1, 2000 to the present regarding the sales or popularity of the Barbie line of dolls and products (RFP No. 86) or the sale of the Barbie line of dolls and products (RFP No. 91). These two requests seek documents responsive to previously served MGA requests, including RFP Nos. 149-164, 555, 567, 737 and 787. Like those previously served requests, RFP Nos. 86 and 91 are overbroad and seek documents that are irrelevant. RFP No. 94 seeks documents referring or relating to *future* sales of the Barbie line of dolls and products, which are also irrelevant. Notably, the Court previously rejected MGA arguments that such information is material.

Requests Seeking Documents Relating To "The 2007 Toy Recall"

RFP Nos. 77, 78, 80, 81, 82, 83 and 84 seek broad categories of documents relating to "the 2007 TOY RECALL." These broad categories are duplicative of MGA RFP Nos. 591-593. Like those previous requests, these requests seek documents that do not have anything to do with the claims and defenses in this case.

Requests Seeking Documents Relating To Jon Corey's January 9 Letter

RFP Nos. 109 and 110 seek documents relating to the hardware based backup system for Mattel's Exchange servers referenced in Jon Corey's letter of January 9, 2009. However, Mattel

EXHIBIT 20
PAGE 284

requested that MGA object to Mattel's change to this hardware based backup system by January 14, 2009. MGA failed to respond at all until February 10, 2009 -- more than a month after Mr. Corey's initial letter. Thus, MGA waived any objections to the hardware change and is not entitled to discovery regarding the hardware. In addition, these requests are overbroad, irrelevant and unduly burdensome.

<u>Request Seeking Communications Relating to Lobbying</u>

RFP No. 79 seeks "ALL non-privileged COMMUNICATIONS between MATTEL and ANY PERSON that REFER OR RELATE to ANY lobbying efforts by or on behalf of MATTEL concerning proposed legislation before the U.S. Congress to ban ANY chemicals or other substances found in MATTEL PRODUCTS." This request seeks documents that do not have anything to do with the claims and defenses in this case.

<u>Requests Seeking Personnel Files of Employees and Contractors Moving To Mattel</u>

RFP Nos. 105 and 106 seek Mattel personnel files for any past employees or contractors hired since January 1, 1998 who worked for MGA prior to working for Mattel (RFP No. 105) or who worked in designing, manufacturing, producing or selling dolls prior to working for Mattel (RFP No. 106). Both of these requests are overbroad and seek documents that do not have anything to do with the claims and defenses in this case.

Mattel anticipates serving supplemental responses to RFP Nos. 88, 89, 99, 100, 101, 102, 103, 104 and 111 on Thursday, July 6, 2009 and producing any additional responsive documents on a rolling basis after that date.

Very truly yours,


/s/ Marshall M. Searcy

Marshall M. Searcy III

MMS
07975/2988448.3

EXHIBIT 20
PAGE 285

**Tiffany Garcia**

| | |
|---|---|
| **From:** | Bridget Hauler |
| **Sent:** | Friday, June 26, 2009 1:22 PM |
| **To:** | Andrea Hoeven; Laura Kinsey; Tiffany Garcia |
| **Cc:** | Amy Kuzio |
| **Subject:** | FW: Bryant v. Mattel |
| **Attachments:** | 2988716_Jun 26 Searcy letter to Nogues.PDF |

for file

---

**From:** Bridget Hauler
**Sent:** Friday, June 26, 2009 1:21 PM
**To:** 'jpn@msk.com'
**Cc:** Marshall Searcy
**Subject:** Bryant v. Mattel

Counsel, please see the attached correspondence.

Thanks,

Bridget Hauler
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Direct: (213) 443-3402
Main Phone: (213) 443-3000
Main Fax: (213) 443-3100
E-mail:  bridgethauler@quinnemanuel.com
Web:  www.quinnemanuel.com

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above.  This message may be an attorney-client communication and/or work product and as such is privileged and confidential.  If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited.  If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

6/26/2009

EXHIBIT 20
PAGE 286

EXHIBIT 21

1   DALE M. CENDALI (admitted *pro hac vice*)
    JAMES P. JENAL (S.B. #180190)
2   O'MELVENY & MYERS LLP
    400 South Hope Street
3   Los Angeles, CA  90071-2899
    Telephone:   (213) 430-6000
4   Facsimile:   (213) 430-6407
    jjenal@omm.com
5
    PATRICIA GLASER (S.B. #55668)
6   CHRISTENSEN, GLASER, FINK,
    JACOBS, WEIL & SHAPIRO, LLP
7   10250 Constellation Boulevard, 19th Floor
    Los Angeles, CA 90067
8   Telephone:   (310) 553-3000
    Facsimile:   (310) 557-9815
9
    Attorneys for MGA Entertainment, Inc.
10
    MICHAEL H. PAGE (S.B. #154913)
11  KEKER & VAN NEST LLP
    710 Sansome Street
12  San Francisco, CA  94111
    Telephone:  (415) 391-5400
13  Facsimile:   (415) 397-7188

14  Attorneys for Carter Bryant

15              UNITED STATES DISTRICT COURT

16             CENTRAL DISTRICT OF CALIFORNIA

17                     EASTERN DIVISION

18

19  CARTER BRYANT, an individual,        Case No.  CV 04-9049 SGL (RNBx)
                                         (consolidated with CV 04-4059 & 05-
20                 Plaintiff,            2727)

21        v.                            **[DISCOVERY MATTER]**

22  MATTEL, INC., a Delaware            **MGA ENTERTAINMENT, INC.,**
    corporation,                        **MGA ENTERTAINMENT (HK)**
23                                      **LTD., ISAAC LARIAN, AND**
                   Defendant.           **CARTER BRYANT'S JOINT**
24                                      **NOTICE OF MOTION AND**
                                        **MOTION FOR PROTECTIVE**
25  AND CONSOLIDATED ACTIONS            **ORDER REGARDING MATTEL'S**
                                        **INTERROGATORIES**
26
                                        Hearing Date:     T.B.D.
27                                      Time:             T.B.D.
                                        Discovery Cutoff: October 22, 2007
28                                      Trial Date:       February 12, 2008

                                        JOINT MOTION FOR PROTECTIVE ORDER
                                                 CASE NO. CV 04-9049

EXHIBIT **21**
PAGE __287__

1   TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2        PLEASE TAKE NOTICE that, at a telephonic conference before Discovery

3   Master Hon. Edward Infante (Ret.) that will occur at a time to be determined by

4   Judge Infante, MGA Entertainment, Inc. ("MGA"), MGA Entertainment (HK) Ltd.

5   ("MGA (HK)"), Isaac Larian ("Mr. Larian"), and Carter Bryant ("Bryant") jointly

6   will, and hereby do, move the Discovery Master to issue a protective order to limit

7   the number of interrogatories that Mattel, Inc. ("Mattel") may serve on the parties,

8   in compliance with the number previously ordered by the District Court.

9        This Motion is made pursuant to Federal Rule of Civil Procedure 26 on the

10  grounds that Mattel has served more than the 50 interrogatories allowed per side by

11  the District Court's Order and has refused to withdraw or to otherwise serve a

12  revised set of interrogatories so as to comply with the limit imposed by the District

13  Court.

14       The parties met and conferred regarding this Motion pursuant to Local Rule

15  37-1 on July 10, 2007.

16       This Motion is based on this Notice of Motion and Motion, the

17  accompanying Memorandum of Points and Authorities, the Declaration of B.

18  Jennifer Glad filed concurrently herewith and attached exhibits, the record and files

19  of this Court, and all other matters of which the Court may take judicial notice.

20

21  Dated:  July 10, 2007            O'MELVENY & MYERS LLP

22                                   _____

23                                   By:  James P. Jenal
                                     Attorneys for MGA Entertainment, Inc.,
                                     MGA Entertainment (HK) Ltd., and
24                                   Isaac Larian

25  Dated:  July 10, 2007            KEKER & VAN NEST LLP

26                                   _____

27                                   By:  Michael H. Page
                                     Attorneys for Carter Bryant

28

                                   - 2 -       JOINT MOTION FOR PROTECTIVE ORDER
                                               CASE NO. CV 04-9049

EXHIBIT 21
PAGE 268

## I.   INTRODUCTION

Mattel's most recent set of interrogatories is one more example of Mattel's attempts to avoid the District Court's limits on discovery and to engage in abusive and excessive discovery tactics.[1] As Mattel is well aware, the District Court limited the number of interrogatories allowed in the consolidated actions to "50 for each side." In an attempt to circumvent this limitation, however, Mattel has served a series of compound interrogatories which well exceed the number of interrogatories allowed per side. Mattel has also served its most recent set of interrogatories on multiple responding parties, claiming that each interrogatory in that set constitutes only one interrogatory. However, this latest set alone exceeds the total number of interrogatories allowed in the consolidated actions. In fact, Mattel has served more than *five times* the amount of interrogatories allowed by the District Court.

When MGA pointed out Mattel's excessive interrogatories and asked that Mattel withdraw them and serve a revised set consistent with the number of interrogatories allowed by the District Court, Mattel refused. Mattel's conduct belies its claims of cooperation, which it has made repeatedly to both the Discovery Master and the District Court. Mattel's attempt to circumvent the District Court's limitations on discovery and to serve, conservatively, ***227 separate interrogatories,*** should not be allowed.

Accordingly, for the reasons set forth below, the Court should issue a protective order preventing Mattel from serving additional interrogatories and continuing to engage in its abusive and excessive discovery,[2] and require Mattel to serve revised interrogatories or else identify the interrogatories, or subparts of

---

[1] MGA's motions for protective orders in response to Mattel's bandying and abusive 30(b)(6) deposition practice, among others, will be filed separately.

[2] Mattel has also engaged in a practice of serving excessive Requests for Admission. Although the District Court has not currently set any limit on the number of Requests for Admission a party may ask, Mattel's behavior in this regard is consistent with its pattern of serving excessive interrogatories and other abusive discovery tactics. Indeed, to date Mattel has served *4,257* separate Requests for Admission on MGA, MGA (HK), Mr. Larian and Bryant. *See* Declaration of B. Jennifer Glad ("Glad Decl."), ¶ 5.

- 3 -

JOINT MOTION FOR PROTECTIVE ORDER
CASE NO. CV 04-9049

EXHIBIT 21
PAGE 289

1  interrogatories, it wishes to be answered, consistent with the limits imposed by the

2  District Court.

## II.  STATEMENT OF FACTS

4      Since the inception of this case, Mattel has served multiple sets of

5  interrogatories on Bryant and MGA. On December 27 and 28, 2004, Mattel served

6  its First Sets of Interrogatories on Bryant and MGA, respectively, followed by its

7  Second Sets of Interrogatories propounded on Bryant and MGA on April 28, 2005.

8  Thereafter, on December 20, 2006, Mattel served its First [sic] Set of

9  Interrogatories Re: Claims of Unfair Competition on MGA.

10      On February 12, 2007, the District Court held a scheduling conference,

11  during which time the Court specifically stated that it wanted parameters placed on

12  discovery due to its concern over what it clearly thought was excessive requests for

13  discovery.[3] In particular, the District Court stated that the parties were limited to 50

14  interrogatories per side for the consolidated actions, in addition to imposing limits

15  on the number of expert and non-expert depositions.[4] When the issue was raised

16  that the Federal Rules ordinarily provide for interrogatories to "parties" rather than

17  to "sides," the District Court specifically stated that the parties were to work within

18  the confines of the 50 interrogatories allowed per side.[5] In the hearing before Judge

19  Larson, the parties all agreed to the limitation on the number of interrogatories,

20  however, Mattel has now revealed that it never intended to so limit itself.

21      On June 7, 2007, Mattel served its Third Set of Interrogatories on Bryant,

22  MGA, MGA (HK) and Mr. Larian. Upon review of this most recent set of Mattel's

---

[3] *See* Glad Decl., ¶ 2 & Ex. 1 (Transcript of Status/Scheduling Conference, dated February 12, 2007, at 8:19-25 ("Speaking of discovery -- and this is part of what gives the court so much pause in terms of continuing to let this case go on without some kind of parameters -- that is the mutual request for no limit on the number of expert depositions. You're asking for 40 non-expert depositions with no limit on the number of Rule 30(b)(6) witnesses. That is disconcerting."), 24:16-18 ("I just don't want to have open-ended numbers of interrogatories and experts."))

[4] *See* Glad Decl., ¶ 2 & Ex. 1 (Transcript of Status/Scheduling Conference, dated February 12, 2007, at 20:21-23:11).

[5] *See* Glad Decl., ¶ 2 & Ex. 1 (Transcript of Status/Scheduling Conference, dated February 12, 2007, at 23:12-24:18).

- 4 -

JOINT MOTION FOR PROTECTIVE ORDER
CASE NO. CV 04-9049

EXHIBIT 21
PAGE 290

1  interrogatories, however, it was apparent that Mattel had willfully violated the

2  District Court's Order by exceeding the number of interrogatories allowed per side

3  even though it had never requested that the District Court increase the number of

4  interrogatories allowed.[6]

5       Thereafter, on July 2, 2007, counsel for MGA, MGA (HK), Mr. Larian and

6  Bryant requested that Mattel either withdraw its excessive interrogatories or meet

7  and confer in anticipation of a joint motion for a protective order.[7]  Mattel refused

8  to withdraw its interrogatories, claiming that it had served fewer than 50

9  interrogatories to date, and that none of its interrogatories constituted more than one

10 interrogatory.[8]  Although Mattel originally agreed to meet and confer on July 9,

11 2007, Mattel later stated that it was unavailable to meet on that date and instead

12 insisted that the parties meet and confer on July 10, 2007, the day *after* the parties'

13 responses were due, to discuss this issue as well to address Mattel's anticipated

14 motion to compel on the same.[9]  MGA, MGA (HK), Mr. Larian and Bryant

15 subsequently served objections to Mattel's improper and excessive interrogatories

16 on July 9, 2007.  Thereafter, on July 10, 2007, the parties met and conferred, at

17 which time Mattel reiterated its refusal to withdraw its Third Set of

18 Interrogatories.[10]

19      To date, Mattel has served a total of 46 differently numbered interrogatories,

20 the vast majority of which are compound or were served on multiple responding

21 parties, thus constituting multiple interrogatories.[11]  Thus, due to the compound

22 nature of its interrogatories, and the fact that its most recent set was served on four

23

24 [6] Any such request to increase the number of interrogatories allowed must be made to the District
   Court. *See* Glad Decl., ¶ 2 & Ex. 1 (Transcript of Status/Scheduling Conference, dated February

25 12, 2007, at 24:5-23).
   [7] *See* Glad Decl., ¶ 3 & Ex. 3.

26 [8] *Id.*
   [9] *Id.*

27 [10] *Id.*

28 [11] *Id.* ¶ 4 & Exs. 4-9.

- 5 -

JOINT MOTION FOR PROTECTIVE ORDER
CASE NO. CV 04-9049

EXHIBIT 21
PAGE 291

1  separate responding parties on the same "side," Mattel has served, conservatively,

2  *227 separate interrogatories*. This is well over the 50 interrogatories allowed per

3  side and should not be condoned.

4  **III.   ARGUMENT**

5      **A.   Mattel's Interrogatories Far Exceed the District Court's Allowed Maximum**

6        Mattel's attempt to circumvent the District Court's Order limiting the number

7  of interrogatories is improper and should not be allowed.  Pursuant to the District

8  Court's Scheduling Order, dated February 12, 2007, the number of interrogatories

9  is "limited to 50 for each side" for the consolidated actions.[12]  Additionally, Federal

10  Rule of Civil Procedure 33(a) provides that "discrete subparts" of interrogatories

11  should be counted as separate interrogatories.  Interrogatory subparts are to be

12  counted as discrete subparts if they are not "logically or factually subsumed within

13  and necessarily related to the primary question."[13]  Courts have explained that "[i]f

14  the first question can be answered fully and completely without answering the

15  second question, then the second question is totally independent of the first and not

16  factually subsumed within and necessarily related to the primary question."[14]

17        Mattel has exceeded the 50 interrogatories permitted per side by serving

18  interrogatories that are compound and by serving interrogatories on multiple

19  responding parties.  First, many of the interrogatories propounded by Mattel, both

20  in its latest set as well as those in prior sets, are compound and are, in reality, not

21  one but multiple interrogatories.[15]  For example, Mattel has propounded the

22  following interrogatories:

23

24  [12] *Id.*, ¶ 2, Ex. 2 (Scheduling Order, dated February 12, 2007).

25  [13] *See Kendall v. GES Exposition Services, Inc.*, 174 F.R.D. 684, 686 (D. Nev. 1997); *Trevino v. ACB American, Inc.*, 232 F.R.D. 612, 614 (N.D. Cal. 2006).

26  [14] *See Krawczyk v. City of Dallas*, 2004 U.S. Dist. LEXIS 30011, *7 (N.D. Tex. 2004); *Kendall*, 174 F.R.D. at 686.

27  [15] The following interrogatories served by Mattel are compound and constitute multiple interrogatories: Mattel's Second Set of Interrogatories propounded on MGA, Interrogatory No. 10; Mattel's First Set of Interrogatories Re: Claims of Unfair Competition propounded on MGA,

28

- 6 -      JOINT MOTION FOR PROTECTIVE ORDER
    CASE NO. CV 04-9049

EXHIBIT 21
PAGE 242

1   State all facts that support YOUR contention, if YOU so

2   contend, that one or more of MATTEL's claims against

3   YOU in THIS ACTION is barred, in whole or in part, by

4   the doctrines of unclean hands, estoppel, waiver, or

5   consent, and IDENTIFY all PERSONS with knowledge

6   of such facts and all DOCUMENTS that REFER OR

7   RELATE TO such facts.[16]

8

9   State all facts that support YOUR contention, if YOU so

10   contend, that YOU did not intentionally interfere with the

11   INVENTIONS AGREEMENT or any other agreement or

12   contract between MATTEL and Bryant, or aid or abet any

13   breach of fiduciary duty or duty of loyalty owed by

14   BRYANT to MATTEL, when BRYANT purported to

15   TRANSFER and MGA purported to ACQUIRE rights to

16   BRATZ or when BRYANT performed work or services

17   with or for MGA while BRYANT was employed by

18   MATTEL, and IDENTIFY all PERSONS with

19   knowledge of such facts and all DOCUMENTS that

20   REFER OR RELATE TO such facts.[17]

21

22   State all facts that support YOUR contention, if YOU so

23   contend, that BRYANT did not breach the INVENTIONS

24   AGREEMENT or BRYANT's duty of loyalty or

25

26   Interrogatory Nos. 4, 5, 6, 7, 8, 9 and 10;  Mattel's Third Set of Interrogatories propounded on
    MGA, MGA (HK), Mr. Larian and Bryant, Interrogatory Nos. 12, 13, 14, 15, 16, 17, 18, 19, 20,
27   21, 22, 23 and 27.  *See* Glad Decl., ¶ 4, Exs. 4-9.
    [16] Glad Decl., ¶ 4 & Ex. 9 (Mattel's Third Set of Interrogatories, Interrogatory No. 18).
28   [17] *Id.* ¶ 4 & Ex. 9 (Mattel's Third Set of Interrogatories, Interrogatory No. 21).

- 7 -   JOINT MOTION FOR PROTECTIVE ORDER
CASE NO. CV 04-9049

EXHIBIT 21
PAGE 243

1         fiduciary duties to MATTEL when BRYANT purported

2         to TRANSFER rights to BRATZ to MGA or performed

3         work or services with or for MGA while BRYANT was

4         employed by MATTEL, and IDENTIFY all PERSONS

5         with knowledge of such facts and all DOCUMENTS that

6         REFER OR RELATE TO such facts.[18]

7  Each of these interrogatories addresses several discrete issues, and constitutes

8  multiple interrogatories.  Indeed, not only do the interrogatories request that the

9  responding parties "state all facts," "identify all persons with knowledge of such

10  facts," and identify "all documents" referring or relating to such facts, which alone

11  constitutes multiple interrogatories, but the interrogatories also request that the

12  responding parties answer such questions with regard to multiple claims or

13  defenses.  Combining multiple interrogatories in this fashion is clearly improper

14  and should not be allowed.  *See United States ex rel. Pogue v. Diabetes Treatment*

15  *Ctrs. of America, Inc.*, 235 F.R.D. 521, 524 (D.C. Cir. 2006) (explaining that an

16  "interrogatory may properly seek identification of documents and facts supporting a

17  contention, but it may not do so in a single interrogatory"); *Nobles v. Jacobs IMC*,

18  2003 U.S. Dist. LEXIS 24083, *18 (D. V.I. 2003) (finding that an interrogatory that

19  asks the responding party to state all facts regarding a particular issue and to

20  identify all persons having knowledge of such information is two separate

21  interrogatories because "although identity of persons who are the source of various

22  facts inquired about may be logically subsumed within and necessarily related to

23  the primary question, the determination of the identity of all persons having

24  knowledge of such information requires additional effort by Defendant"); *Sec. Ins.*

25  *Co. v. Trustmark Ins. Co.*, 2003 U.S. Dist. LEXIS 18196, *4-5 (D. Conn. 2003)

26  (finding that a single interrogatory seeking information about all elements of a

27

28  [18] Glad Decl., ¶ 4 & Ex. 9 (Mattel's Third Set of Interrogatories, Interrogatory No. 23).

JOINT MOTION FOR PROTECTIVE ORDER
CASE NO. CV 04-9049

EXHIBIT 21
PAGE 294

1   given claim was compound and explaining that each element of a claim is discrete

2   and constitutes a separate interrogatory).  Moreover, many of the definitions in

3   Mattel's interrogatories require distinct subsets of information, further making the

4   interrogatories compound.[19]  Thus, even under a conservative reading of Mattel's

5   interrogatories, Mattel has served well in excess of the 50 permitted.

6        Second, Mattel exceeded the number of interrogatories it was allowed to ask

7   in its Third Set of Interrogatories alone.  In particular, Mattel's Third Set of

8   Interrogatories includes 19 different interrogatories served on four different

9   responding parties on the same side.  In its definitions to the set of interrogatories,

10

---

11  [19] *See e.g.,* Glad Decl., ¶ 4 & Ex. 9 (Mattel, Inc.'s Third Set of Interrogatories at 2, defining

12  "BRATZ" to mean "any project, product, doll, or DESIGN ever known by that name (whether in whole or in part and regardless of what such product, doll or DESIGN or portion thereof is or has

13  been also, previously or subsequently called) and any product, doll or DESIGN or any portion thereof that is now or has even been known as, or sold or marketed under, the name or term

14  'Bratz' (whether in whole or in part and regardless of what such product, doll or DESIGN or portion thereof is or has been also, previously or subsequently called) or that is now or has ever

15  been sold or marketed as part of the 'Bratz' line, and each version or iteration of such product, doll or DESIGN or any portion thereof.  As used herein, 'product, doll or design or portion

16  thereof' also includes without limitation any names, fashions, accessories, artwork, packaging or any other works, materials, matters or items included or associated therewith.  Without limiting

17  the generality of the foregoing, and contrary to MGA's recent assertions in connection with other Mattel discovery requests, the term 'BRATZ' does not and shall not require that there be a doll

18  existing at the time of the event, incident or occurrence that is the subject of, or otherwise relevant or responsive to, the Interrogatories."); Glad Decl., ¶ 4 & Ex. 8 (Mattel, Inc.'s First Set of

19  Interrogatories Re Claims of Unfair Competition at 2, defining "CONTESTED MGA PRODUCTS" as "the CONTESTED BRATZ DOLLS PRODUCTS, the CONTESTED BRATZ

20  PETZ PRODUCTS, the CONTESTED BRATZ FUNKY FASHION MAKEOVER HEAD, the CONTESTED 4-EVER BEST FRIENDS PRODUCTS, the CONTESTED MOMMY's LITTLE

21  DOLL PRODUCTS, and the CONTESTED ALIENRACERS PRODUCTS, and any doll, toy, portion thereof, or version thereof that is now or has ever been known as, or sold, offered for sale,

22  licensed, offered for license or marketed under the name or terms 'Bratz,' '4-Ever Best Friends,' 'Mommy's Little,' 'Alienracers,' or any derivative thereof, that provides a basis for any claim by

23  YOU against MATTEL, including without limitation 'Bratz Dolls,' 'Bratz Dogz,' 'Winter Wonderland,' 'Bratz Sportz,' 'Formal Funk,' 'Sun-Kissed Summer,' 'Funky Fashion Makeover

24  Head,' 'Runway Disco,' '4-Ever Best Friends,' 'Mommy's Little Patient,' and 'Alienracers.'"); Glad Decl., ¶ 4 & Ex. 8 (Mattel, Inc.'s First Set of Interrogatories Re Claims of Unfair

25  Competition at 2, defining "EMBODIMENT" to mean "any representation of the identified product or its retail packaging, whether two-dimensional or three-dimensional, and whether in

26  tangible, digital, electronic or other form, including but not limited to all works, designs, artwork, sketches, drawings, illustrations, representations, depictions, blueprints, schematics, diagrams,

27  images, sculptures, prototypes, models, samples, reductions to practice, developments, inventions and/or improvements, as well as other items, things and DOCUMENTS in which any of the

28  foregoing are or have been expressed, embodied, contained, fixed or reflected in any manner, whether in whole or in part.")

- 9 -

JOINT MOTION FOR PROTECTIVE ORDER
CASE NO. CV 04-9049

EXHIBIT 21
PAGE 295

1  Mattel defined the terms "YOU" and "YOUR" to mean "each of the Responding

2  Parties."[20]  These interrogatories include questions related to the personal financial

3  information of Mr. Larian,[21] the responding parties' state of mind at various points

4  in time,[22] and the potential defenses that may be raised by the various responding

5  parties,[23] among other questions.  These interrogatories necessarily require each

6  responding party to serve its own specific objections and responses based on the

7  particular information known or otherwise available to the responding party.  Thus,

8  even assuming that these interrogatories are not *textually* compound, which many

9  of them are, at a minimum Mattel's Third Set of Interrogatories alone constitutes 76

10  separate interrogatories by virtue of the multiple responding parties aligned on the

11  same side.

12  **B.  The Court Should Issue a Protective Order Preventing Mattel**
   **From Abusing the Discovery Process and Attempting to Exceed**
13  **the Number of Interrogatories Allowed**

14  Under Federal Rule of Civil Procedure 26(c), a court may "make any order

15  which justice requires to protect a party or person from annoyance, embarrassment,

16  oppression, or undue burden or expense," including "that the disclosure or

17  discovery not be had."  Because Mattel's Third Set of Interrogatories far exceeds

18  the number of interrogatories allowed under the District Court's Order, MGA,

19  MGA (HK), Mr. Larian and Bryant should not be obligated to respond to the

20  [20] Glad Decl., ¶ 4 & Ex. 9 (Mattel, Inc.'s Third Set of Interrogatories at 1).

21  [21] "IDENTIFY each and every bank or financial institution account that REFERS OR RELATES
    TO LARIAN, including accounts in LARIAN's name or for LARIAN's benefit, since January 1,
22  1999." *See* Glad Decl., ¶ 4 & Ex. 9 (Mattel's Third Set of Interrogatories, Interrogatory No. 24).
    [22] "State all facts that support YOUR contention, if YOU so contend, that YOU acted with an
23  innocent state of mind or reasonably believed that MATTEL did not own any rights in any
    BRATZ INVENTION when BRYANT purported to TRANSFER and MGA purported to
24  ACQUIRE rights to BRATZ or when BRYANT performed work or services with or for MGA
    while BRYANT was employed by MATTEL, and IDENTIFY all PERSONS with knowledge of
25  such facts and all DOCUMENTS that REFER OR RELATE TO such facts." *See* Glad Decl., ¶ 4
    & Ex. 9 (Mattel's Third Set of Interrogatories, Interrogatory No. 22).
26  [23] "State all facts that support YOUR contention, if YOU so contend, that one or more of
    MATTEL's claims against YOU in THIS ACTION is barred, in whole or in part, by the doctrines
27  of unclean hands, estoppel, waiver, or consent, and IDENTIFY all PERSONS with knowledge of
    such facts and all DOCUMENTS that REFER OR RELATE TO such facts." *See* Glad Decl., ¶ 4
28  & Ex. 9 (Mattel's Third Set of Interrogatories, Interrogatory No. 18).

- 10 -                    JOINT MOTION FOR PROTECTIVE ORDER
                         CASE NO. CV 04-9049

EXHIBIT 21
PAGE 296

1  interrogatories.  MGA, MGA (HK), Mr. Larian and Bryant respectfully request that

2  the Discovery Master issue a protective order preventing Mattel from serving

3  additional interrogatories and continuing to engage in its abusive and excessive

4  discovery, and require Mattel to withdraw its present set of interrogatories and

5  serve revised interrogatories or else identify the interrogatories, or subparts of

6  interrogatories, it wishes to be answered, consistent with the limits imposed by the

7  District Court.

8  **IV.    CONCLUSION**

9        For the foregoing reasons, MGA, MGA (HK), Mr. Larian and Mr. Bryant

10  respectfully request that the Discovery Master issue a protective order preventing

11  Mattel from serving additional interrogatories and continuing to engage in its

12  abusive and excessive discovery, and require Mattel to serve a revised set of its

13  latest interrogatories or else identify which interrogatories, or subparts of

14  interrogatories, it wishes to be answered, consistent with the limits imposed by the

15  District Court.

16

17

18  Dated:  July 10, 2007                     O'MELVENY & MYERS LLP

19

20                                  By:  James P. Jenal
                                Attorneys for MGA Entertainment, Inc.,
                                MGA Entertainment (HK) Ltd., and
                                Isaac Larian

21

22  Dated:  July 10, 2007                     KEKER & VAN NEST LLP

23

24                                    By:  Michael H. Page
                                  Attorneys for Carter Bryant

25

26

27

28

      JOINT MOTION FOR PROTECTIVE ORDER
                         CASE NO. CV 04-9049

EXHIBIT 21
PAGE 297

EXHIBIT 22

1  Robert C. O'Brien (SBN 154372)
   ARENT FOX LLP
2  555 West Fifth Street, 48th Floor
   Los Angeles, CA 90013-1065
3  Telephone: 213.629.7400
   Facsimile: 213.629.7401
4  obrien.robert@arentfox.com

5

6  Discovery Master

7

8              UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10                  EASTERN DIVISION

11

12  CARTER BRYANT, an individual,,          Case No. CV 04-09049 SGL (RNBx)

13              Plaintiff,                   Consolidated with
                                             Case No. CV 04-09059
14        v.                                 Case No. CV 05-2727

15  MATTEL, INC., a Delaware                 **PHASE 2 DISCOVERY MATTER**
    corporation,
16                                           **ORDER NO. 6, REGARDING:**
                Defendant.
17                                           **(1) MOTION OF MATTEL, INC.
                                             TO COMPEL PRODUCTION OF
18                                           DOCUMENTS RESPONSIVE
                                             TO ITS FIRST AND THIRD
19                                           SETS OF REQUESTS FOR
                                             PRODUCTION; and**
20
                                             **(2) MOTION OF MGA TO
21                                           COMPEL PRODUCTION OF
                                             DOCUMENTS RESPONSIVE TO
22                                           THE DOCUMENT REQUEST
                                             NOS. 526 AND 528**
23

24
    ┌─────────────────────────────┐
25  │ CONSOLIDATED WITH           │
    │ MATTEL, INC. v. BRYANT and  │
26  │ MGA ENTERTAINMENT, INC. v.  │
    │ MATTEL, INC.                │
27  └─────────────────────────────┘

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT 22
PAGE 298

## I.   INTRODUCTION

This Order sets forth the Discovery Master's ruling on: (1) the motion of Mattel, Inc. ("Mattel") to compel production of documents by MGA Entertainment, Inc. ("MGA Entertainment") responsive to Mattel's First Set of Requests for Production No. 48 and Third Set of Requests for Production Nos. 43 through 75, 87 and 88 [Docket No. 4741] (the "Mattel Motion"), and (2) the motion of MGA Entertainment, Isaac Larian, MGA Entertainment HK Limited, and MGAE De Mexico SRL De Cv (collectively "MGA") to compel Mattel to produce documents responsive to MGA's Requests for Production 526 and 528 [Docket Number 4782] (the "MGA Motion") (collectively, the "Motions").

The Motions came on regularly for hearing before the Discovery Master on March 11, 2009. All interested parties were represented by counsel and afforded the opportunity to present oral argument on the Motions. The Discovery Master, having considered the papers filed in support of and in opposition to the Motions, and having heard oral argument thereon, rules as set forth below.

## II.   THE MATTEL MOTION

Mattel seeks to compel MGA Entertainment to produce documents responsive to 36 separate document requests. (Mattel Motion, pp. 9 – 15). However, MGA Entertainment subsequently agreed to produce all non-privileged documents responsive to 34 of the document requests identified by Mattel. (MGA Opposition, p. 6). Therefore, the only document requests that remain at issue are Mattel's Third Set of Requests for Production Nos. 87 and 88. (*Id.*, p. 7).

### A.   The Discovery Sought

Document Request No. 87 seeks "all personnel and vendor files for each person identified in Exhibit 664." (Mattel's Sep. Stmt., p. 3).

Document Request No. 88 seeks "all personnel and vendor files for each person who has worked as an employee of or vendor for [MGA Entertainment] and who also has been at any time an employee or vendor for Mattel." (*Id.*, p. 5).

EXHIBIT 22
PAGE 299

**B.   Phase 1 Ruling**

This is not the first time that Mattel has moved to compel responses to Document Request Nos. 87 and 88.  Mattel previously moved to compel responses to these requests as part of Phase 1, but its motion was denied because "Request Nos. 87 and 88 (files for former Mattel employees) . . . relate[d] primarily to Phase 2 issues."  (Disc. Master Order, Apr. 14, 2008, p. 7).  The former discovery master's April 14, 2008 Order denying Mattel's original motion to compel further held that "[i]n view of the stay on Phase 2 discovery . . . . [n]othing in this Order is intended to authorize or preclude Mattel from seeking further production of documents in response to Request Nos. 1 – 88 during Phase 2 discovery."  (*Id.*, pp.7 - 8).

**C.   Objections of MGA Entertainment**

In its Opposition, MGA Entertainment relies on three basic grounds for refusing to produce the requested documents.  First, MGA Entertainment argues that Mattel failed to meet and confer.  Second, MGA Entertainment argues that the requests are overbroad.  Finally, MGA Entertainment argues that California's privacy laws prevent it from producing the requested documents.

**1.   Purported Failure To Meet And Confer**

As indicated above, MGA Entertainment first asserts that Mattel's Motion to Compel should be denied because Mattel failed to adequately meet and confer.  (MGA Opposition, pp. 9 - 10).  However, MGA Entertainment admits that Mattel did meet and confer regarding the two requests at issue prior to filing its original motion to compel in Phase 1.  (*Id.*, p. 2 ["The Renewed Motion is in fact based on meet and confer discussions held over one year ago with MGA's prior lead counsel."]; *see also id.*, p. 9 n.2 [Mattel "met and conferred over a year ago"].)  MGA further provides no legal authority, and the Discovery Master has found none, supporting the proposition that a party must meet and confer again before renewing a motion to compel that was denied merely because the case had been

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 2 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 22
PAGE 300

1  divided into phases and where the order denying the motion expressly noted that

2  nothing in the ruling was intended to "preclude Mattel from seeking further

3  production of documents in response" to the requests as part of Phase 2 discovery.[1]

4  (Order Apr. 14, 2008, pp: 7 - 8).

5        Even assuming such a requirement did exist, Mattel in fact met and conferred

6  with MGA Entertainment for a second time following the filing of its current

7  motion and resolved 34 of the 36 document requests in dispute.  (MGA Opposition,

8  pp. 1, 6.)  However, the parties were still unable to resolve their differences relating

9  to Document Requests Nos. 87 and 88.  (Id., 7–9.)  It is, therefore, unclear what

10. could have been accomplished by an additional meet and confer on these issues

11  prior to the filing of the motion.  Regardless, Mattel met and conferred once before

12  filing its current motion to compel and that is all that is required by the Federal

13  Rules of Civil Procedure and the discovery procedures governing this case.

14        **2.      Overbreadth Objection**

15        MGA Entertainment's second argument in opposition to Mattel's Motion is

16  that Document Requests Nos. 87 and 88 are "grossly overbroad."  (MGA

17  Opposition, pp. 14 – 15).  Specifically, MGA Entertainment argues that the requests

18  are improper because they are not tied "to any product(s) that Mattel alleged that

19  MGA [Entertainment] stole from Mattel." (Id.,14.)  Without citing any legal

20  authority in support of this position, MGA Entertainment asserts that the current

21  Discovery Master should find that the requests are overbroad because the prior

22  discovery master merely compelled it to produce portions of personnel and vendor

23  files related to the Bratz products as part of Phase 1 discovery.  (Id.; see also Order

24  Apr.14, 2008, pp. 7 - 8).  But MGA Entertainment's argument fails to recognize

25  //

26

27  [1] The arguments of MGA Entertainment that (1) it has new lead counsel and (2) the case has "changed dramatically"
    since the initial meet and confer took place in 2008 are not supported by any legal authority, (MGA Opposition, p. 9),
28  and do nothing to alter the fact that Mattel met and conferred on these issues previously.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES
                                        - 3 -                    ORDER NO. 6
                                                         [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 22
PAGE 361

1   the differences between Mattel's Phase 1 and Phase 2 claims.[2]

2       The touchstone for determining whether a particular discovery request is

3   reasonably calculated to lead to the discovery of admissible evidence in this case is

4   whether the request bears some relation to the issues to be tried in Phase 2.

5   Whereas Phase 1 of this case primarily addressed whether Mattel or MGA

6   Entertainment owned the rights to the Bratz products, Mattel's Phase 2 claims are

7   not linked to a single discrete product or even multiple products.  Instead, the issues

8   to be litigated in Phase 2 include, among other things, Mattel's claim that MGA

9   Entertainment stole "a vast array of trade secrets and other confidential information

10  that comprise Mattel's intellectual infrastructure," including, among other things,

11  stealing "Mattel's proprietary business methods, practices and information."

12  (Second Amended Answer and Counterclaims ["SAAC"], ¶ 20).  Mattel alleges in

13  its Counterclaims, which are to be litigated in Phase 2, that MGA Entertainment :

14  • "engaged in a pattern of stealing and using [Mattel's] property and trade

15      secrets," (*Id.*,    ¶ 1);

16  • "repeated—and even expanded—its pattern of theft [regarding the Bratz

17      dolls] on numerous occasions," including by hiring away three key Mattel

18      employees in Mexico who "stole virtually every category of Mattel's

19      sensitive and trade secret business plans and information for the Mexican

20      market as well as a significant quantity of sensitive and trade secrete

21      information for Mattel's U.S. and worldwide businesses," (*Id.*, ¶ 3);

22  • "stole Mattel trade secrets regarding Mattel's customers, sales, projects,

23      advertising and strategy, not only for Canada, but the United States and the

24      rest of the world," (*Id.*, ¶ 70);

25  //

26

27  ---

[2] MGA Entertainment's claim that the document requests are overbroad is also inconsistent with its statement that it

28  would "produce all requested personnel files in their entirety (except for any medical or health related documents) if
    Mattel gave notice to the employees and obtained their consent for such disclosure." (MGA Opposition, pp. 8 – 9).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

-4-

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 22
PAGE 302

1  • "took from Mattel documents containing proprietary advertising, project,

2     sales, customer and strategy information for not only Canada, but for the

3     United States," (*Id.*, ¶ 4);

4  • "engaged in an ongoing, widespread pattern of . . . inducing Mattel

5     employees to steal Mattel's confidential information or other property and

6     take it with them to MGA [Entertainment]," (*Id.*, ¶ 5);

7  • stole "Mattel's plans, strategy and business information for the Mexican

8     market and materials related to Mattel's worldwide business strategies," (*Id.*,

9     ¶ 37);

10 • "enticed [Mattel's employees] to steal Mattel's most sensitive business

11    planning materials, and then hired them to assist in establishing and running

12    MGA's new Mexican subsidiary," (*Id.*, ¶ 37);

13 • "directed [certain Mattel employees'] to steal virtually all Mattel confidential

14    and proprietary information that they could access and bring it with them to

15    MGA," (*Id.*, ¶ 43), including "virtually every type of document a competitor

16    would need to enter the Mexican market, and to unlawfully compete with

17    Mattel in Mexico, in the United States and elsewhere," such as "global

18    internal future line lists that detailed anticipated future products; production

19    and shipping costs for Mattel products, daily sales data for Mattel products;

20    customer data; sales estimates and projections; marketing projections;

21    documents analyzing changes in sales performance from 2003 to 2004;

22    budgets for advertising and promotional expenses; strategic research

23    reflecting consumer responses to products in development; media plans;

24    consumer comments regarding existing Mattel products customer discounts

25    and terms of sale; customer inventory level data; assessments of promotional

26    campaign success; market size historical data and projections; marketing

27    plans and strategies, merchandising plans; retail pricing and marketing

28    strategies; and other similar materials," (*Id.*, ¶ 48);

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 5 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 22
PAGE 303

1      • "targeted certain Mattel employees who have broad access to Mattel
2      proprietary information in an effort to induce and encourage them to join
3      MGA [Entertainment] and to steal or otherwise wrongfully misappropriate
4      Mattel confidential information and trade secrets," including by "promising
5      these employees salaries 25 percent or more higher than they earn at Mattel
6      and stating to them that they should not be concerned by legal action taken
7      by Mattel to protect its trade secrets and its rights because such claims are
8      hard to prove and easy to defeat," (*Id.*, ¶ 69); and

9      • "hired directly from Mattel's United States operations at least 25 employees,
10     from Senior Vice-President level to lower level employees," and that some of
11     these individuals misappropriated "Mattel confidential and proprietary
12     information, including Mattel's strategic plans; business operations; methods
13     and systems; marketing and advertising strategies and plans; future product
14     lines; product profit margins, and customer requirements." (*Id.*, ¶ 77).

15      In light of the foregoing allegations, the documents requested by Mattel fall

16 within the purview of permissible discovery allowed by Federal Rule of Civil

17 Procedure 26. Rule 26 permits the discovery of information that is "relevant to the

18 claim or defense of any party." Fed.R.Civ.P. 26(b)(1). Accordingly, Mattel's

19 request for "all personnel and vendor files" of individuals who either (1) work at

20 MGA Entertainment and previously used to work for Mattel or (2) who are vendors

21 of MGA Entertainment and used to work with or had contact with Mattel appears to

22 be "reasonably calculated to lead to the discovery of admissible evidence." *Id.*

23      **3.**   **Privacy Rights Objection**

24      MGA Entertainment's final argument is that the records sought by Mattel

25 (i.e., personnel and vendor files) invade the privacy rights of non-parties and cannot

26 be produced under *California law* unless the individuals affected are given advance

27 notice of the requests and afforded an opportunity to object to the production.

28 (MGA's Opposition, pp. 10 – 14). Specifically, MGA Entertainment argues that

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 6 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 22
PAGE 304

1   the California Constitution and California Code of Civil Procedure § 1985.3

2   together constitute a fundamental public policy in California that do not allow

3   MGA Entertainment to "place its employees privacy rights at risk." (*Id.*). But each

4   of these contentions is unavailing.

5        As an initial matter, a protective order has been entered in this case. (Mattel

6   Reply, p. 2). This fact is crucial to analyzing the privacy concerns raised by MGA

7   Entertainment, because courts within the Ninth Circuit have repeatedly held that,

8   where such an order has been (or will be) entered, state-based privacy laws do not

9   bar production of personnel files.[3] *See, e.g., Nakagawa v. Regents of Univ. of Cal.*,

10   2008 WL 1808902, *3 (N.D. Cal. April 22, 2008) (ordering production of

11   personnel files and stating "[a]ny other privacy concerns defendant may have

12   should be addressed by a protective order"); *Grinzi v. Barnes*, 2004 WL 2370639,

13   *1 (N.D. Cal. Oct. 20, 2004) ("The proper mechanism for an employer to use to

14   protect an employee's privacy interest in his personnel file is to obtain, either by

15   stipulation or motion, a properly crafted protective order under Rule 26(c)");

16   *Maldonado v. Cal. Dep't of Corr. & Rehab.*, 2007 WL 4249811, *7 (E.D. Cal. Nov.

17   30, 2007) ("The court has already analyzed these non-party privacy rights, and the

18   protective order should serve to remedy any concern in this regard."); *Walton v. K-

19   Mart, Inc.*, 2007 WL 4219395, *2 (N.D. Cal. November 28, 2007) ("In view of the

20   employees' privacy interests, documents shall be produced pursuant to an

21   attorneys' eyes only protective order."); *Keller-McIntrye v. Coll. Of Health &

22   Human Servs.*, 2006 WL 3456672, *1-*2 (N.D. Cal. November 29, 2006) (ordering

23   production of employee information, pursuant to a protective order, despite privacy

24   claims under California law).

25        Further, contrary to MGA Entertainment's assertions, the Ninth Circuit has

26   ────────────────

[3] In fact, some of the California authority relied on by MGA Entertainment contemplates that confidential
27   information may be appropriately disclosed if a protective order is in place. (*See, e.g., Valley Bank of Nev. v.
Superior Court*, 15 Cal. 3d 652, 658 (1975) ["[T]he trial court has available certain procedural devices which may be
28   useful in fashioning an appropriate order that will, so far as possible, accommodate considerations of both disclosure
and confidentiality."]).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

-7-

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 22
PAGE 305

1   held that "personnel files are discoverable in federal question cases . . . despite

2   claims of [state-created] privilege,"[4] (*Garrett v. San Francisco*, 818 F.2d 1515,

3   1519 n. 6 (9th Cir. 1987); *see also Kerr v. District Court*, 511 F.2d 192, 197 (9th

4   Cir. 1975)), and this includes any claim of privilege resulting from California Code

5   of Civil Procedure § 1985.3,[5] (*see Reed v. Williams*, 2007 WL 2140506, *4 (E.D.

6   Cal. July 25, 2007) [holding that the requirements of California Code of Civil

7   Procedure § 1985.3 do not apply in federal question cases because "federal law

8   applies in terms of substantive, privilege and discovery law."]).  Accordingly, the

9   privacy concerns raised by MGA Entertainment have no applicability here.

10      Despite the foregoing, and notwithstanding the existence of the protective

11   order as a safeguard, the Discovery Master finds that the requested documents

12   should exclude "health care specific information," because Mattel's counsel

13   conceded that Mattel is not seeking such information in its discussions with counsel

14   for MGA Entertainment.  (*See* Decl. of Amman Khan, Ex. G, 2).  Counsel for

15   Mattel restated this position at the hearing.

16      The Discovery Master further orders MGA Entertainment to redact any

17   social security numbers, tax identification numbers, dates of birth, indication of

18   sexual orientation, bank account numbers, and checking account numbers that may

19   be included within the requested documents prior to production, as Mattel has not

20   made a showing at this time that such discrete personal information is reasonably

21   calculated to lead to the discovery of admissible evidence.

22   **D.   Conclusion**

23      The documents sought by Mattel's Request Nos. 87 and 88 are reasonably

24   calculated to lead to the discovery of admissible evidence regarding Mattel's Phase

---

25   [4] Mattel's SAAC includes, among other things, claims for alleged RICO violations under U.S.C. §§ 1962(c), 1962(d)
26   and 1964(c), (SAAC at ¶¶ 88 – 105) and MGA Entertainment removed this action to federal court on federal question grounds, (Mattel Reply, p. 5).

27   [5] The same rule may even apply in diversity cases, (see *Corser v. County of Merced*, 2006 WL 2536622, *2 (E.D.
28   Cal. August 31, 2006) [holding that "the extent that Section 1985.3 may provide a California-law privilege [] the privilege does not apply to this litigation"], but the Discovery Master need not resolve that issue.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 8 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 22
PAGE 306

1  2 claims, and are not protected from disclosure on the grounds of third-party

2  privacy rights or any other ground cited by MGA Entertainment.

3  **III.   MATTEL'S REQUEST FOR SANCTIONS**

4      In its Reply, Mattel also seeks $1,460 in sanctions relating to the attorneys'

5  fees and costs it incurred in drafting the reply. (Mattel's Reply, pp. 11 – 13; *see*

6  *also* Decl. of Zachary Krug, ¶ 14). As the Discovery Master has previously stated,

7  however, he, like the Court,[6] disfavors the insertion of new arguments at the reply

8  stage that could have been raised in the moving papers.[7] This rule is routinely

9  adhered to by courts in the Ninth Circuit. *See, e.g., United States v. Boyce*, 148

10  F.Supp .2d 1069, 1085 (S.D. Cal. 2001); *Leick v. Hartford Life & Accident Ins. Co.,*

11  2007 WL 1847635, at *1, n. 1 (E.D. Cal. June 27, 2007); *Stewart v. Wachowski,*

12  2004 WL 2980783, at *11 (C.D. Cal. Sept. 28, 2004); *Hamilton v. Willms,* 2007

13  WL 2558615, at *11 (E.D. Cal.2007); *see also United States v. Cox,* 7 F.3d 1458,

14  1463 (9th Cir.1993); *United States v. Wright,* 215 F.3d 1020, 1030 n. 3 (9th

15  Cir.2000).

16      Accordingly, the Discovery Master therefore declines to award sanctions

17  against MGA Entertainment.

18  **IV.   MGA'S MOTION TO COMPEL RESPONSES TO DOCUMENT**

19        **REQUEST NOS. 526 AND 528**

20      In its motion, MGA seeks an order compelling Mattel to produce documents

21  responsive to two document requests (the "Requests") included in MGA's Fifth Set

22  of Requests for Production of Documents and Things dated August 3, 2007.

23  //

24

---

25  [6] In *Bryant v. Mattel, Inc.*, 573 F.Supp.2d 1254, 1273 n.7 (C.D. Cal. 2007), the Court noted that it "ordinarily would not consider" arguments made for the first time on reply but did so only "because [undertaking the analysis did] not change [its] ultimate conclusion."

26

27  [7] Mattel was apparently aware of MGA Entertainment's grounds for opposing the motion before it filed its moving papers, since Mattel met and conferred with MGA Entertainment prior to bringing its motion. Mattel nevertheless failed to request a sanctions award in its moving papers, thereby depriving opposing counsel and MGA Entertainment of the chance to oppose the request in the Opposition brief.

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 9 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 22
PAGE 307

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### A.   The Discovery Sought

The Requests seek copies of Mattel's communications with law enforcement authorities (Request No. 526) and copies of any documents that it has provided to law enforcement authorities (Request No. 528).  The complete text of the Requests is as follows:

- **Request No 526**:  All DOCUMENTS that constitute COMMUNICATIONS between YOU (including YOUR agents and attorneys) and law enforcement authorities in Mexico, Canada, or the United States, including but not limited to the United States Attorney's Office, the Department of Justice and any national, regional, state or local authorities, concerning any of the allegations in YOUR COUNTERCLAIMS or any other alleged taking of confidential MATTEL information by MGA or persons currently or formerly employed by MGA.

- **Request No. 528**:  All DOCUMENTS that you (including YOUR agents and attorneys) provided to law enforcement authorities in Mexico, Canada [*sic*] or the United States, including but not limited to the United States Attorney's Office, the Department of Justice and any national, regional, state or local authorities concerning any of the allegations in YOUR COUNTERCLAIMS or any other alleged taking of confidential MATTEL information by MGA or persons currently or formerly employed by MGA.

### B.   Mattel's Objections

In its Opposition, Mattel relies on three basic grounds for refusing to produce the requested documents.  First, Mattel argues that the Requests are overbroad and encompass information not reasonably calculated to lead to the discovery of admissible evidence.  Second, Mattel argues that the documents are protected by the work product doctrine.  Finally, Mattel argues that the documents are

EXHIBIT 22
PAGE 308

1    privileged.

2        **1.    Overbreadth Objection**

3        Among the issues to be adjudicated in Phase 2 are Mattel's counterclaims for

4    RICO violations, misappropriation of trade secrets and unfair competition. Mattel's

5    SAAC alleges that "Mattel notified Mexican authorities about the [alleged] theft of

6    its trade secret and confidential information." (SAAC, ¶ 53). The SAAC further

7    details Mattel's knowledge of the Mexican authorities' activities related to MGAE

8    de Mexico and suggests that Mattel communicated with the authorities regarding

9    their seizure of certain documents from MGA's office. (*Id.*, ¶ 53). Mattel also

10   alleges that "Mattel notified Canadian law enforcement authorities" about its belief

11   that Janine Brisbois copied documents onto a thumb drive when she left Mattel.

12   (*Id.*, ¶ 75). Further, Mattel states that it communicated with Canadian authorities

13   regarding the information allegedly recovered from Brisbois' thumb drive. (*Id.*, ¶

14   75).

15       Mattel has also acknowledged that at least some of the documents responsive

16   to Request No. 526 relate to Mattel's claims by producing to MGA "the judicial file

17   in criminal proceedings in Mexico, relating to the trade secret thefts in that country,

18   *and some of those materials reflected communications between Mattel and law*

19   *enforcement*." (Declaration of Timothy L. Alger dated January 24, 2008 ["Alger

20   Decl."], ¶ 16 (emphasis added).)

21       Given Mattel's allegations regarding the theft of its trade secrets, its

22   communications with law enforcement officials, and the overlap between the civil

23   and criminal claims Mattel is pursuing, the Discovery Master concludes that, as a

24   threshold matter, MGA has made a prima facie case that the Requests seeking the

25   documents Mattel provided to law enforcement officials, as well as Mattel's

26   communications with those officials, are reasonably calculated to lead to the

27   discovery of admissible evidence regarding the claims to be adjudicated in Phase 2.

28       Although the Requests on their face relate to Phase 2 issues, Mattel

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 11 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 22
PAGE 309

1    nonetheless argues in its Opposition that Request No. 526 is overbroad because

2    Mattel's civil claims are wholly separate and independent from any criminal relief

3    it is seeking. (Mattel Opposition, p. 4 ["The civil claims stand or fall based on

4    MGA's actions, not Mattel's subsequent communications with law enforcement."]).

5         In so arguing, Mattel misses the point. The issue is not whether Mattel's

6    communications with law enforcement officials constitute the basis of Mattel's

7    claims. Rather, the issue is whether those communications are reasonably

8    calculated to lead to the discovery of admissible evidence regarding what Mattel

9    itself characterizes as the basis of its claims, namely MGA's alleged acts of trade

10   secret misappropriation. Mattel does not dispute that its subsequent

11   communications with law enforcement involve the same conduct that is the basis of

12   the civil claims. On the contrary, Mattel has alleged in its SACC that it is

13   concurrently seeking relief through the criminal justice system and this civil action

14   based on the same documents allegedly stolen by MGA and confirmed that fact

15   during the meet and confer process. (See, e.g., Alger Decl., ¶ 16 [asserting that "the

16   judicial file in the criminal proceedings in Mexico" are among the "documents

17   *relating to Mattel's Counterclaims.*"] [emphasis added].)

18        Mattel's communications with law enforcement may, among other things,

19   disclose what Mattel told the investigating authorities about what information was

20   taken, the people who have knowledge of the thefts, and any supposed criminal

21   intent on the part of MGA or the former Mattel employees who supposedly took the

22   information. Given this admitted overlap in subject matter, the communications

23   between Mattel and law enforcement agencies are discoverable. (*See, e.g., In re*

24   *Qwest Commc'ns Intl., Inc.*, 450 F.3d 1179, 1181-82, 1201 (10th Cir. 2006) [private

25   plaintiff permitted discovery of materials provided to law enforcement authorities

26   concerning the same underlying facts]).

27        With respect to Request No. 528 (seeking documents Mattel provided to law

28   enforcement agencies), Mattel argues that it has already provided to MGA tens of

EXHIBIT 22
PAGE 310

1   thousands of documents that pertain to the underlying facts of Mattel's

2   counterclaims. (Mattel Opposition p, 5). But, as Mattel admits, that production

3   does not satisfy Request No. 528 which, in Mattel's words "seeks something more

4   and different." (*Id*.). According to Mattel, the "different" information sought by

5   Request No. 528 is information that would enable "MGA's executives to defend

6   against actual or potential criminal charges . . ." (*Id*.). However, since those

7   possible criminal charges are based on the same conduct as Mattel's civil claims, it

8   would be inappropriate to bar MGA from obtaining that information for use in this

9   lawsuit, simply because that same information might also relate to possible future

10  criminal cases (which may or may not ever be filed). Put another way, the

11  information sought by MGA to defend the civil claims does not become

12  "irrelevant" simply because it might have the ancillary effect of facilitating MGA's

13  defense of possible criminal claims.

14      Lastly, Mattel argues that both Requests are overbroad because they are not

15  limited to misconduct expressly alleged in the SAAC but also seek "documents

16  'concerning . . . any other alleged taking of confidential MATTEL information by

17  MGA . . .'" (Mattel Opposition, pp. 5 -6). In response, MGA points out that the

18  SAAC includes a catch-all allegation stating that unidentified "additional

19  employees accessed, copied and took from Mattel confidential and proprietary

20  information." (SAAC, ¶ 77). Mattel's apparent purpose in including such an

21  allegation was to preserve its right to allege and prove other acts of

22  misappropriation besides those expressly alleged in the SAAC. Accordingly, since

23  Mattel reserves the right to seek relief regarding additional, un-alleged acts, MGA

24  should likewise be entitled to conduct discovery to identify those additional acts

25  and to determine what evidence Mattel may have to prove them.

26          **2.      Work Product Objection**

27      Next, Mattel argues that production of Mattel's communications with law

28  enforcement agencies, together with the documents Mattel chose to provide to those

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 13 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 22
PAGE 311

1  agencies, would violate the attorney work-product doctrine by revealing counsel's

2  strategy and mental processes. (Mattel Opposition, p. 6).

3       To qualify for work-product protection under Federal Rule Civil Procedure

4  26, documents must meet two requirements: (1) they must be "prepared in

5  anticipation of litigation or for trial," and (2) they must be prepared "by or for

6  another party or by or for that other party's representative." *In re Cal. Pub. Utils.*

7  *Comm'n*, 892 F.2d 778, 780-781 (9th Cir. 1989). In determining whether the

8  doctrine is applicable to a particular document, "the court must consider the

9  *primary purpose* of the work product doctrine, which is to 'prevent exploitation of a

10  party's efforts in *preparing for litigation.*'" *Johnson v. Finn*, 2007 WL 3232253,

11  *1 (E.D. Cal. Oct. 31, 2007) (emphasis added). The authorities Mattel cites agree

12  that the purpose of the work product doctrine is "to establish a zone of privacy for

13  *strategic litigation planning.*" (Opposition, p. 6 quoting *United States v. Adlman*,

14  68 F.3d 1495, 1501 (2d Cir. 1995) [emphasis added].)

15       Here, Mattel does not demonstrate any connection between its

16  communications with law enforcement officials, on the one hand, and its litigation

17  strategy in the present civil case, on the other hand. Rather, it appears that Mattel's

18  primary purpose in communicating with, and disclosing the disputed documents to,

19  various law enforcement officials was to instigate criminal prosecutions by

20  prosecutorial agencies, not pursue its civil claims against MGA. Thus, to the extent

21  the selection of particular documents by Mattel's counsel reveals counsel's

22  impressions and mental processes, the window into counsel's thinking relates to

23  counsel's strategy of encouraging *criminal prosecution* by the relevant authorities.

24  There is no showing that counsel's thinking regarding how best to achieve *that*

25  purpose would also reveal counsel's strategies and impressions in any matter

26  related to the current civil litigation. In short, Mattel has made an insufficient

27  showing that the communications and documents at issue constitute work product

28  in *this* litigation. Accordingly, the work-product doctrine is inapplicable.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 14 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 22
PAGE 312

1    Further, even if the work-product doctrine somehow applied to Mattel's

2  communications with law enforcement agencies, Mattel waived it, in at least two

3  ways. First, Mattel admits that it has already produced some of those

4  communications to MGA. (See Alger Decl., ¶ 16.)

5    Second, to the extent Mattel's communications with law enforcement

6  officials disclose its conclusions and theories to law enforcement officials, such a

7  disclosure also constitutes a waiver. Mattel admits that the work-product doctrine

8  is waived when material is "voluntarily disclosed such that it may become readily

9  accessible to an adversary." (Mattel Opposition, pp. 6 - 7 (citing *Aronson v.*

10  *McKesson HBOC, Inc.*, 2005 WL 934331, *6 (N.D. Cal. Mar. 31, 2005)). In fact,

11  the courts have specifically held that "disclosing information to governmental

12  authorities in the hope that they will attack an adversary . . . cannot be said to be

13  done 'in the pursuit of ...trial preparation.' Thus, disclosure in such a situation

14  results in a waiver of the work product protection." *Bank of America, NA. v. Terra*

15  *Nova Insur. Co.*, 212 F.R.D. 166, 172-73 (S.D.N.Y. 2002). Therefore, when a party

16  provides information to law enforcement agencies and "harbor[s] the hope, even if

17  un-communicated, that its disclosures would encourage the Government to

18  prosecute" a third party, this disclosure constitutes waiver because it "substantially

19  increase[s] the potential that the information gained during the investigation would

20  be disclosed to [the] adversary." *Id.*

21    Given that Mattel disclosed the documents to these entities with the intention

22  of triggering criminal prosecution of MGA and its representatives, the intended

23  effect of Mattel's disclosure is to make those documents available to MGA under

24  the applicable rules of criminal procedure, which would entitle MGA to the

25  documentary evidence on which any alleged criminal liability is based. Mattel

26  itself concedes this fact when it acknowledges that MGA can request disclosure of

27  the information provided to law enforcement officials "in accordance with the

28  applicable law in the countries involved." (Mattel Opposition, p. 5). Mattel knew

EXHIBIT 22
PAGE 313

1    when it provided the documents to law enforcement agencies that such production

2    "substantially increased the opportunities for potential adversaries to obtain the

3    information." (Mattel Opposition, p. 7). Thus, Mattel cannot demonstrate a

4    reasonable expectation this material would remain protected.

5              **3.     Privilege Objections**

6         Lastly, Mattel asserts that the litigation privilege codified in Cal. Civ. Code §

7    47(b) and/or the *Noerr-Pennington* doctrine bar MGA from seeking any affirmative

8    relief from Mattel based on the latter's communications with law enforcement

9    authorities. Consequently (Mattel reasons), those communications "are not

10   properly discoverable" in this action. (Mattel Opposition, p. 8).

11        That argument is based on a premise for which there is no support in the

12   record, namely that MGA seeks the subject documents in order to assert a claim

13   against Mattel arising from Mattel's allegedly privileged communications.

14   Proceeding from this unsupported assumption, Mattel then argues that such a non-

15   existent claim would be barred.

16        However, that speculative foray is entirely non-responsive to the MGA

17   Motion. The MGA Motion asserts that the documents should be produced not

18   because MGA intends to sue Mattel for communicating with law enforcement

19   authorities, but rather because Mattel itself injected the issue of the criminal

20   proceedings *into this lawsuit* by asserting in its SAAC that Mattel has

21   communicated with criminal authorities in various countries regarding the conduct

22   of MGA upon which Mattel bases its counterclaims. *That* is the reason MGA

23   offers for seeking the subject documents.

24        Accordingly, Mattel's attempt to rely on privilege fails to address the actual

25   position taken by MGA in its Motion or the issues raised in the pleadings. Further,

26   the cases cited by Mattel demonstrate on their face that the subject privileges are

27   restricted to situations not present here. Those cases stand for the proposition that

28   parties who communicate with law enforcement officials may be immune from

EXHIBIT 22
PAGE 314

1   *liability* under California tort law and federal anti-trust law, respectively – not that

2   such parties are immune from *discovery* in civil suits.

### a.   The Litigation Privilege

4   The California Supreme Court described the scope of the litigation privilege

5   in a case cited by Mattel, *Hagberg v. Cal. Fed. Bank FSB*, 32 Cal. 4th 350 (2004).

6   According to Mattel, *Hagberg* stands for the proposition that a communication to

7   law enforcement officials about suspected criminal activity "enjoys an unqualified

8   privilege." (Mattel's Opp'n, 8.)  However, nothing in the *Hagberg* opinion

9   addresses the issue presented here, namely whether communications and documents

10  passed from the reporting party to the law enforcement agency is discoverable in

11  litigation arising out of the same underlying, allegedly criminal, activities.  Rather,

12  in *Hagberg* the question presented was "whether *tort liability* may be imposed for

13  statements made when a citizen contacts law enforcement personnel to report

14  suspected criminal activity...." 32 Cal. 4th at 355 (emphasis added).  The Court

15  answered that question in the affirmative.  *Id.*

16  The other California cases cited by Mattel are in accord.  See *Jacob B. v.*

17  *County of Shasta*, 40 Cal. 4th 948, 955, 956 (2007) ("We have discussed the basic

18  principles underlying section 47(b)'s litigation privilege in many cases....  [P]ublic

19  agencies... must be permitted to provide such information without fear of being

20  harassed by *derivative lawsuits*.") (emphasis added); *Silberg v. Anderson*, 50 Cal.

21  3d 205, 213, 214 (1990) (the "*litigation* privilege" provided by section 47(2)

22  "afford[s] litigants and witnesses... the utmost freedom of access to the courts

23  without fear of being harassed subsequently by *derivative tort actions*") (emphasis

24  added); *Williams v. Taylor*, 129 Cal, App. 3d 745 (1982) (affirming summary

25  judgment against plaintiff's claims for slander and malicious prosecution based on

26  Section 47(b)).

### b.   The *Noerr-Pennington* Doctrine

28  "The Noerr-Pennington doctrine *immunizes from the antitrust laws* anti-

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 17 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 22
PAGE 315

1   competitive conduct undertaken to influence or petition government bodies, or to

2   utilize judicial or quasi-judicial mechanisms." (*Forro Precisions, Inc. v. Intl Bus.*

3   *Mach.* 673 F.2d 1045, 1059 (1982) [emphasis added]). In *Forro*, the plaintiff

4   brought suit against IBM for assisting a police search of his business premises.

5   Based in part on the *Noerr-Pennington* doctrine, the court held that the plaintiff's

6   antitrust claim could not be based on IBM's solicitation of aid from the police

7   department that resulted in the police investigation and search of his premises, or on

8   IBM's assistance in these activities. (*Id.* at 1053 ["IBM's actions in assisting the

9   police...were privileged and could not serve as a basis for *civil liability*."] [emphasis

10  added]) . In short, the "privilege" at issue in *Forro* dealt with freedom from

11  antitrust liability, not freedom from discovery.[8]

12              c.    **Application To The Present Case**

13          Here, MGA has not yet asserted any affirmative claim against Mattel arising

14  out of Mattel's communication with law enforcement officials. If and when MGA

15  attempts to do so, it may well be appropriate for Mattel to assert the privileges

16  discussed above in an attempt to defeat any such claims on the merits. In the

17  meantime, MGA is simply defending Mattel's civil claims in the present action, and

18  no privilege cited by counsel prevents MGA from conducting discovery regarding

19  the basis for those claims.

20      **C.    Conclusion**

21          The documents sought by MGA's Request Nos. 526 and 528 are reasonably

22  calculated to lead to the discovery of admissible evidence regarding Mattel's Phase

23  2 claims, and are not protected from disclosure under any of the privileges or

24  doctrines cited by Mattel.

25  //

26

27  [8] Mattel cites only one case in which the Court actually held that a party was protected from the production of
    communications made to government agencies regarding suspected criminal activity. However, in that case (which
28  arose under the Annunzio-Wylie Act) the communications were sought to prove a defamation claim based on those
    communications. *See Whitney Nat'l Bank v. Karam*, 306 F. Supp. 2d 678, 682 (S.D. Tex. 2004).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

-18-

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 22
PAGE 316

## V.  DISPOSITION

1.    The Mattel Motion is **GRANTED**, with the exception of health care specific information, social security numbers, tax identification numbers, dates of birth, bank account numbers, and checking account numbers.

2.    Mattel's request for sanctions is **DENIED**.

3.    The MGA Motion is **GRANTED**.

4.    All non-privileged documents shall be produced within 30 days of this Order, subject to any applicable confidentiality designations available under the Protective Order.

5.    All documents to be produced pursuant to this Order, including employee personnel files and records of communications between Mattel and law enforcement officials, shall be produced in the same format and order as they are maintained in the original files of the parties as required by Federal Rule of Civil Procedure 34(b)(2)(E)(i).

6.    The documents reflecting Mattel's communications with law enforcement officials shall include any and all enclosures, and documents transmitted as a group shall be marked in a manner that permits MGA to ascertain which pages constitute each individual transmittal.

7.    All personnel or vendor documents redacted by MGA in accordance with this Order shall, whenever applicable, retain any letterhead, title, or other header that permits Mattel to ascertain the general nature and source of the document redacted and shall be marked in a manner that permits Mattel to ascertain which pages comprise a single document.

Dated:       March 13, 2009

By:       /s/ Robert C. O'Brien
          ROBERT C. O'BRIEN
          Discovery Master

EXHIBIT 22
PAGE 317

EXHIBIT 23

**CONFORMED COPY**

FILED

2007 APR 18  PM 11: 07

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
RIVERSIDE

BY_____

1  Hon. Edward A. Infante (Ret.)
   JAMS
2  Two Embarcadero Center
   Suite 1500
3  San Francisco, California 94111
   Telephone:    (415) 774-2611
4  Facsimile:    (415) 982-5287

5

6

7                    UNITED STATES DISTRICT COURT

8                    CENTRAL DISTRICT OF CALIFORNIA

9                         EASTERN DIVISION

10

11  CARTER BRYANT, an individual,          CASE NO. C 04-09049 SGL (RNBx)
                                           JAMS Reference No.1100049530
12              Plaintiff,

13        v.                               Consolidated with
                                           Case No. CV 04-09059
14  MATTEL, INC., a Delaware corporation,  Case No. CV 05-2727

15              Defendant.                 **ORDER GRANTING IN PART AND
                                           DENYING IN PART MATTEL'S
16                                         MOTION FOR PROTECTIVE ORDER
                                           REGARDING "POLLY POCKET"
17  CONSOLIDATED WITH                      DOCUMENTS**
    MATTEL, INC. v. BRYANT and
18  MGA ENTERTAINMENT, INC. v. MATTEL,
    INC.
19

20

21                         I.  INTRODUCTION

22        On March 30, 2007, Mattel, Inc. ("Mattel") submitted its Motion For Protective Order

23  Regarding "Polly Pocket" Documents.  Pursuant to Rule 26(c), Fed.R.Civ.P., Mattel seeks a

24  protective order to limit the scope of MGA Entertainment, Inc.'s ("MGA") and Carter Bryant's

25  ("Bryant") subpoenas for production of documents relating to Polly Pocket to only those

26  documents that relate to a single Polly Pocket commercial identified by MGA in an interrogatory

27

28
    Bryant v. Mattel, Inc.,                                                    1
    CV-04-09049 SGL (RNBx)

                                                           04\19\07  **EXHIBIT 23**
                                                                     **PAGE 318**

1   response.  On April 6, 2007, MGA submitted its opposition brief, and on April 11, 2007, Mattel

2   submitted a reply brief.  The matter was heard via telephonic conference on April 19, 2007.

3   Having considered the motion papers and comments of counsel at the hearing, Mattel's motion

4   for a protective order is granted in part and denied in part.[1]

## II. BACKGROUND

5

6       This consolidated action includes MGA's claims for unfair competition against Mattel.

7   Among other things, MGA alleges that Mattel has engaged in "serial copycatting" of MGA

8   products, packaging and advertising, including Bratz dolls and other Bratz products, Bratz

9   packaging and Bratz television commercials.

10      On March 7, 2007 and March 12, 2007, MGA and Bryant issued subpoenas to three of

11   Mattel's advertising agencies:  Young & Rubicam Brands, Peterson Milla Hooks, Inc., and

12   Ogilvy & Mather Worldwide.  The subpoenas seek, among other things, documents relating to

13   Mattel's products, including the Polly Pocket line of products.  See Request Nos. 3, 4, 7, 12, 13,

14   and 14.  The subpoenas define Polly Pocket as "each image, character, logo, doll, toy, accessory,

15   product, packaging or other thing or matter that is or has ever been manufactured, marketed or

16   sold by MATTEL, or others under license by MATTEL, as part of a line of goods or merchandise

17   commonly known as, or sold and marketed under the POLLY POCKET trademark or trade

18   dress."  The requests at issue are set forth below:

19      Request No. 3:  All DOCUMENTS REFERRING OR RELATING TO any focus

20          group for "MY SCENE," "POLLY POCKET," or "ACCELERACERS" products

21          and which also REFER OR RELATE TO "BRATZ," "ALIEN RACERS," or

22          MGA.

23      Request No. 4:  All DOCUMENTS REFERRING OR RELATING TO any

24          participant comments from any focus group for "MY SCENE," "POLLY

25   

26      [1] Pursuant to the Order for Appointment Of A Discovery Master, dated December 6, 2006, the undersigned
    is authorized to resolve disputes regarding third party subpoenas.  See Order at 3-4, 6.

27

28   Bryant v. Mattel, Inc.,                                                                    2
    CV-04-09049 SGL (RNBx)

EXHIBIT 23
PAGE 319

1  POCKET," or "ACCELERACERS" products and which also REFER OR

2  RELATE TO "BRATZ," "ALIEN RACERS," or MGA.

3  Request No. 7:  All DOCUMENTS REFERRING OR RELATING TO any

4  MARKET RESEARCH REFERRING OR RELATING TO "MY SCENE,"

5  "POLLY POCKET," or "ACCELERACERS" or MATTEL, and which also

6  REFER OR RELATE TO "BRATZ," "ALIEN RACERS," or MGA.

7  Request No. 12:  All DOCUMENTS REFERRING OR RELATING TO proposed

8  or actual advertisements for "MY SCENE," "POLLY POCKET," OR

9  "ACCELERACERS" products and which also REFER OR RELATE TO

   "BRATZ," "ALIEN RACERS," or MGA.

10  Request No. 13:  All DOCUMENTS REFERRING OR RELATING TO

11  directives, suggestions, or instructions from MATTEL to create advertisements

12  for "MY SCENE," "POLLY POCKET," OR "ACCELERACERS" products using

13  elements that are similar to or the same as elements used in advertisements for

14  "BRATZ," "ALIEN RACERS," or MGA products.

15  Request No. 14:  Copies of all advertisements for "BRATZ," "ALIEN RACERS,"

16  or MGA products that YOU consulted or reviewed to create advertisements for

17  "MY SCENE," "POLLY POCKET," or "ACCELERACERS" products.

18  (collectively referred to hereinafter as the "Polly Pocket Requests").  See Decl. of B. Dylan

19  Proctor in Support of Mattel's Motion for Protective Order, Exs. 1-3.

20      Mattel served objections to the subpoenas and requested a meet and confer with MGA and

21  Bryant regarding the scope of the Polly Pocket Requests.  The parties met and conferred on

22  March 27, 2007.  MGA asserted that the Polly Pocket Requests sought information relevant to

23  MGA's claims that Mattel has serially copied and imitated MGA's commercials.  MGA pointed

24  out that it is currently aware of at least one Polly Pocket commercial that copied elements from a

25  MGA Bratz commercial.  More specifically, in response to a contention interrogatory, MGA

26  identified twenty-two separate instances of alleged serial copycatting and imitating, one of which

27  was that "Mattel filmed a 'Polly Pocket' commercial in the same mall and featuring the same

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

3

EXHIBIT 23
PAGE 320

escalator as appeared in a previous 'Bratz' commercial." See MGA's Second Supplemental Responses to Mattel's First Set of Interrogatories re Claims of Unfair Competition, Response to Interrogatory No. 6.   MGA asserted that it was entitled to discovery to determine whether Mattel's advertising agencies have documents evidencing plans, strategies or intentions to copycat or imitate MGA commercials for this or any other Polly Pocket commercials in the past or future.  Further, MGA asserted that the Polly Pocket Requests sought only those documents that specifically related to MGA and its products.  In contrast, Mattel asserted that the Polly Pocket Requests were overbroad, seeking information far beyond the Polly Pocket commercial identified in MGA's interrogatory response.  The parties later exchanged meet and confer letters, but were unable to resolve their dispute.

In this motion, Mattel contends that it is entitled to a protective order because the Polly Pocket Requests are overbroad, seeking documents that have no connection or relevance to the claims or defenses in the case, other than the single television commercial identified in MGA's interrogatory response.  Mattel also contends that MGA and Bryant should not be permitted to engage in a fishing expedition for potential claims involving Polly Pocket products.  Furthermore, Mattel contends that its Polly Pocket line of dolls is in direct competition with MGA's doll products, and that MGA and Bryant are not entitled to issue sweeping subpoenas for the improper purpose of discovering Mattel's confidential focus group and market research documents relating to competing products and other matters that are not even alleged to be at issue.  Accordingly, Mattel seeks an order limiting the scope of the Polly Pocket Requests to only those Polly Pocket documents that relate to the television commercial MGA claims that Mattel copied.

MGA and Bryant contend that Mattel has not demonstrated the requisite "good cause" for a protective order.  They contend that there has been no showing that a protective order is necessary to avoid annoyance, embarrassment, oppression or undue burden or expense.  Further, they contend that the Stipulated Protective Order is sufficient to address Mattel's confidentiality concerns.  MGA and Bryant also contend that the Polly Pocket Requests are narrowly tailored to seek documents relevant to the claims that Mattel has serially imitated and copycatted MGA's advertising for Bratz and other products.  Further, they contend that the Polly Pocket Requests

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

4

EXHIBIT 23
PAGE 321

target documents that specifically relate to MGA or its products. Lastly, MGA and Bryant object to limiting discovery to the one Polly Pocket commercial referenced in MGA's interrogatory response. They contend that such a limitation would prevent them from obtaining documents "that reveal Mattel's plans to copy or imitate MGA commercials for other 'Polly Pocket' commercials and related efforts by Mattel's ad agencies to effectuate or evaluate these plans, simply because the plans are non-public and about which MGA and Bryant could not possibly have any actual knowledge." Opposition at p.7.

### III. DISCUSSION

Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed.R.Civ.P. 26(b)(1). Fishing expeditions to discover new claims, however, are not permitted. See Fed.R.Civ.P. 26(b)(1); Rivera v. NIBCO, Inc., 364 F.3d 1057, 1072 (9th Cir. 2004) ("District courts need not condone the use of discovery to engage in 'fishing expeditions.'"); Bernstein v. Travelers Ins. Co., 447 F.Supp.2d 1100, 1102 (N.D. Cal. 2006) (citing Rule 26(b), Advisory Committee's Note to Amendments Effective December 1, 2000) (Congress' changes in the language of Rule 26(c), substituting the words "claim or defense" for the phrase "subject matter involved in the pending action," were intended to target discovery that swept far beyond the claims and defenses of the parties and that seemed designed not to fairly litigate the issues presented by the pleadings but to develop new claims or defenses.). Furthermore, Rule 26(c), Fed.R.Civ.P., provides, in pertinent part, that upon motion and for good cause shown, "the court in which the action is pending may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including that certain matters not be inquired into, that the scope of the disclosure or discovery be limited to certain matters, or that a trade secret or other confidential research, development or commercial information not be revealed or be revealed only in a designated way." Fed.R.Civ.P. 26(c).

Polly Pocket is not mentioned in either MGA's or Bryant's complaint or any of the other pleadings filed in this consolidated action. Rather, MGA's complaint alleges that Mattel's

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

5

EXHIBIT 23
PAGE 322

1   advertising and marketing schemes for two of its products – "My Scene" and "AcceleRacers" –

2   have "serially imitated" MGA's advertising.  MGA's complaint does not even reference the Polly

3   Pocket line of dolls or other Polly Pocket products.

4            The only proffered justification for the Polly Pocket Requests is an interrogatory response

5   in which MGA claims that one of Mattel's Polly Pocket commercials was allegedly filmed in the

6   same mall using the same escalator as an MGA Bratz commercial.[2]  The bulk of the Polly Pocket

7   Requests (Nos. 3, 4, 7, 12, 14), however, are far broader than the commercial identified by MGA.

8   The definition for Polly Pocket includes not just commercials, but  "each image, character, logo,

9   doll, toy, accessory, product, and packaging that is or has ever been manufactured, marketed or

10  sold by Mattel as part of a line of goods or merchandise known as, or sold and marketed under the

11  Polly Pocket trademark or trade dress.  Furthermore, MGA and Bryant seek all Polly Pocket focus

12  group documents, including participant comments which relate to Bratz, MGA or Alien Racers.

13  They seek all "market research" referring or relating to Polly Pocket and which also relate to

14  Bratz, MGA, or Alien Racers, where "market research" is defined as "any type of research, study,

15  survey or analysis of consumers or potential consumers of a product or potential product

16  including, without limitation, focus groups, consumer surveys, market analyses, behavioral

17  analyses and consumer research."  They also seek all documents relating to proposed or actual

18  advertisements for Polly Pocket dolls which also relate to Bratz, MGA or Alien Racers.  MGA

19  and Bryant also seek copies of all advertisements for Bratz, Alien Racers, or MGA products that

20  were consulted or reviewed to create any and all advertisements for Polly Pocket products.  These

21  requests are clearly overbroad, extending far beyond the single Polly Pocket commercial that

22  MGA has contended is actionable.  The Federal Rules of Civil Procedure do not permit MGA and

23

24          [2]  Like MGA's complaint, MGA's response to Mattel's contention interrogatory regarding the alleged serial

25  imitating and copycatting focus primarily on Mattel's "My Scene" and "Acceleracers" products.

26          See MGA's Second Supplemental Responses to Mattel's First Set of Interrogatories re Claims of Unfair
     Competition

27

28                                                                                           6

     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

EXHIBIT  23
PAGE  323

1    Bryant to use broad discovery requests, untethered to a claim or defense, to fish for new claims.

2    Rivera v. NIBCO, Inc., supra.  Because Request Nos. 3, 4, 7, 12, and 14 extend far beyond the

3    permissible scope of discovery under Rule 26, Fed.R.Civ.P., there is good cause to issue the

4    requested protective order limiting their scope to the Polly Pocket commercial identified in

5    MGA's interrogatory response.

6           In contrast, however, Request No. 13 is reasonably tailored to documents relevant to

7    MGA's unfair competition claim.  Evidence of directives, suggestions, or instructions from Mattel

8    to its advertising agencies to create advertisements for Polly Pocket using elements that are

9    similar to or the same as elements used in advertisements for "BRATZ," "ALIEN RACERS," or

10   MGA products could establish that Mattel intentionally used the same mall and escalator to

11   produce the Polly Pocket commercial identified in MGA's interrogatory response.  Therefore,

12   Mattel's motion is denied with respect to Request No. 13.

                              IV. CONCLUSION

13
14          For the reasons set forth above, Mattel's motion for a protective order is granted in part

     and denied in part.  Request Numbers 3, 4, 7, 12, and 14 of MGA's and Bryant's subpoenas to
15
     Young & Rubicam Brands, Peterson Milla Hooks, Inc., and Ogilvy & Mather Worldwide relating
16
     to Polly Pocket are hereby limited in scope to Polly Pocket documents relating to the single Polly
17
     Pocket television commercial identified in MGA's interrogatory response.  Mattel's motion is
18
     denied as to Request No. 13.
19
            Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery
20
     Master, Mattel shall file this Order with the Clerk of Court forthwith.
21

22   Dated: April 19, 2007

23                                              _Edward A. Infante_

24                                         HON. EDWARD A. INFANTE (Ret.)

25                                              Discovery Master

26

27

28
     Bryant v. Mattel, Inc.,                                                    7
     CV-04-09049 SGL (RNBx)

EXHIBIT 23
PAGE 324

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on April 19, 2007,

I served the attached ORDER GRANTING IN PART AND DENYING IN PART

MATTEL'S MOTION FOR PROTECTIVE ORDER REGARDING "POLLY POCKET"

DOCUMENTS" in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| Robert Millman Esq. | Littler Mendelson | rfmillman@littler.com |
| Douglas Wickham Esq. | Littler Mendelson | dwickham@littler.com |
| Keith Jacoby Esq. | Littler Mendelson | kjacoby@littler.com |
| Dominic Messiha Esq | Littler Mendelson | dmessiha@littler.com |
| Diba Rastegar Esq. | Littler Mendelson | drastegar@littler.com |
| Michelle Park Esq. | Littler Mendelson | mpark@littler.com |
| Alaya B. Meyers, Esq. | Littler.Mendelson | ameyers@littler.com |
| Brady Mitchell, Esq. | Littler Mendelson | bmitchell@littler.com |
| Carol Miller, Esq. | Littler Mendelson | cmiller@littler.com |
| Ryan P. Eskin, Esq. | Littler Mendelson | reskin@littler.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | jbq@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Morris Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgetmorris@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| Benjamin Kim Esq. | O'Melveny & Myers LLP | bjkim@omm.com |
| Hamid Jabbar Esq. | O'Melveny & Myers LLP | hjabbar@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrismill.com |

I declare under penalty of perjury under the laws of the Untied States of America that
the above is true and correct.

Executed on April 19, 2007, at San Francisco, California.

Sandra Chan

EXHIBIT 23
PAGE 325

EXHIBIT 24

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
<u>CIVIL MINUTES -- GENERAL</u>

Case No.  CV 04-09049 SGL(RNBx)                    Date: September 22, 2009
Title:    MATTEL, INC. V. MGA ENTERTAINMENT, INC., et al.
==========================================================================
PRESENT:  HONORABLE STEPHEN G. LARSON, U.S. DISTRICT JUDGE

        Cindy Sasse                         None Present
        Courtroom Deputy                    Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:     ATTORNEYS PRESENT FOR DEFENDANTS:

None Present                          None Present


**PROCEEDINGS: ORDER AFTER HEARING**

        Pursuant to the Court's September 3, 2009, Order, the Court heard the testimony of Richard De Anda regarding an email communication between him (as Mattel's head of security) and Canadian law enforcement officials, which references a package sent to those officials. Although the Court finds, based on the evidence currently before the Court, in the context of this case, that it was inadvisable for Mr. De Anda to send to Canadian law enforcement officials a package containing approximately six miniature toy cars, the Court does not find anything improper regarding his actions as they were not subjectively intended as an attempt to influence, nor were they even marginally likely to influence, an ongoing investigation. Rather, the Court finds that the toys were token gifts given, in keeping with social conventions, in response to his receipt of certain token gifts, namely a coffee mug, a tie tack, and a pen, by the Canadian law enforcement officials.

        The Court conducted sealed proceedings regarding the August 31, 2009, Order to Show Cause ("OSC"). On the basis of counsel's representations of the subjective thought processes by which the document at issue came to appear on the privilege log of the MGA parties, the Court finds that the OSC is **SATISFIED** as it relates to counsel herein and **DISCHARGES** the OSC. Consideration of any evidentiary or other case-related sanctions or implications regarding prior findings by the Court and/or jury in this matter must await adjudication of the issue of whether the crime/fraud exception applies to various other documents placed on MGA's privilege logs, as well as completion of the Discovery Master's *in camera* review of numerous other documents listed on

MINUTES FORM 90                              Initials of Deputy Clerk __cls_____
CIVIL -- GEN                    1            Time: 02/59


EXHIBIT 24
PAGE 326

Case 2:04-cv-09049-DOC-RNB   Document 6901-5   Filed 10/01/09   Page 75 of 81   Page ID
#:229602
Case 2:04-cv-09049-DOC-RNB   Document 6851   Filed 09/22/2009   Page 2 of 2

MGA's privilege logs and resolution of certain discovery motions related thereto.

In light of the anticipated transfer of these consolidated cases to the docket of the Honorable David O. Carter, the Court **VACATES** the pending pretrial conference date and trial date for Phase 2.

The Court **EXTENDS** the discovery cutoff date to June 1, 2010.

As the judicial officer most familiar with this case, Judge Larson has consented to assist the parties' and the Settlement Officers' attempt at a global resolution to these consolidated cases. Accordingly, counsel for Mattel is directed to provide its proffered settlement proposals to the Court (*in camera* to chambers) and to the MGA parties within ten days of the entry of this Order.

The hearing dates as to Mattel's Motion for Leave to File Fourth Amended Answer and Counterclaims (docket #6311) and Motion of the MGA parties re Discovery Master Order No. 46 (docket #6476) are **VACATED** pending re-setting by the newly assigned judicial officer.

Mattel's Ex Parte Application re service of responses to the August 31, 2009, OSC (docket #6708) is **DENIED AS MOOT.**

The Ex Parte Application of the MGA parties to compel Mr. DeAnda's deposition in advance of the September 21, 2009, hearing date (docket #6767) is **DENIED AS MOOT.**

Two Proposed Stipulations and Orders by the parties (#6687 (to continue October 1, 2009, hearing date) and #6706 (re extension of expert discovery dates)) are also **DENIED AS MOOT.**

The oral request of the MGA parties for a stay pending settlement discussions is **DENIED.** In general, stays of ***discovery*** in these consolidated cases have, in the past, proven to be counter-productive. As for the more specific request to stay the ***recall order***, the Court notes that counsel for the MGA parties is mistaken in her contention that "the whole point of that recall order was so that it would clear the market for Mattel to come in with its vision of Bratz."[1] Instead, as set forth in the Court's December 3, 2008, Omnibus Order, the Court imposed the recall order in light of the scope of infringement found by the Court (which was broad) and in light of the fact that the Bratz dolls compete directly with existing Mattel products. Id. at 14.  Thus, the rationale underlying the recall Order remains firmly intact.  For that reason, the request is **DENIED.**

**IT IS SO ORDERED.**

---

[1] Mattel also denies the MGA parties' factual assumption that it will not be able to market its own dolls under the name "Bratz." Resolution of the factual issue is unnecessary at this time, and the Court does not consider it.

MINUTES FORM 90
CIVIL -- GEN                                  2

Initials of Deputy Clerk __cls_____
Time: 02/59

EXHIBIT 24
PAGE 327

EXHIBIT 25

FILED

DALE M. CENDALI
(of counsel, not admitted in California)
DIANA M. TORRES (S.B. #162284)
PAULA E. AMBROSINI (S.B. #193126)
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA  90071-2899
Telephone:  (213) 430-6000
Facsimile:   (213) 430-6407
email:       dtorres@omm.com

PATRICIA GLASER (S.B. # 55668)
CHRISTENSEN, MILLER, FINK,
JACOBS, GLASER, WEIL &
SHAPIRO LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, CA  90067
Telephone:  (310) 553-3000
Facsimile:   (310) 556-2920

Attorneys for Plaintiff
MGA Entertainment, Inc.

APR 13 FM 3:04

CLERK U.S. DISTRICT COURT
CENTRAL DIST OF CALIF
LOS ANGELES

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

CV 05 - 02727  CBM (RZx)

| | |
|---|---|
| MGA ENTERTAINMENT, INC., | Case No. |
| Plaintiff, | **COMPLAINT FOR FALSE DESIGNATION OF ORIGIN, AFFILIATION, ASSOCIATION OR SPONSORSHIP (15 U.S.C. § 1125 (a)); UNFAIR COMPETITION (15 U.S.C. § 1125 (a), Cal. Bus. & Prof. Code § 17200 *et seq.* and California Common Law); DILUTION (15 U.S.C. § 1125 (c), Cal. Bus. & Prof Code § 14330 and California Common Law); AND UNJUST ENRICHMENT** |
| v. | |
| MATTEL, INC., a Delaware Corporation, and DOES 1-10, | |
| Defendants. | |
| | **DEMAND FOR JURY TRIAL** |

EXHIBIT 25
PAGE 328

1    Plaintiff MGA Entertainment, Inc. for its complaint against

2    Defendants Mattel, Inc. and DOES 1-10 alleges and avers as follows:

3

4                               **PARTIES**

5        1.    Plaintiff MGA Entertainment, Inc. ("MGA") is a California

6    corporation organized and existing under the laws of the State of California, with a

7    principal place of business in Van Nuys, California.

8        2.    MGA is informed and believes, and based thereon alleges, that

9    Defendant Mattel, Inc. ("Mattel") is a Delaware corporation with a principal place

10   of business in El Segundo, California.

11       3.    MGA is ignorant of the true names and capacities of the defendants

12   sued herein under the fictitious names DOES 1 through 10 inclusive. MGA will

13   seek leave of court to amend this complaint to allege such names and capacities

14   when they are ascertained. MGA is informed and believes, and based thereon

15   alleges, that each of the fictitiously named DOE defendants is responsible in some

16   manner for the wrongful conduct alleged herein. MGA further alleges that each

17   defendant acted in concert with, as agent or representative for, or at the request or

18   on behalf of another or Mattel. Each charging allegation contained herein is,

19   therefore, also hereby alleged against each fictitiously named DOE defendant.

20

21                      **JURISDICTION AND VENUE**

22       4.    Through this action MGA asserts claims against Mattel arising under

23   the Lanham Act, 15 U.S.C. Sections 1125 (a) and (c), California Business and

24   Professions Code Sections 17200 *et seq.*, California Business and Professions Code

25   Section 14330 and California common law. This Court has original subject matter

26   jurisdiction over MGA's federal claims pursuant to 15 U.S.C. Sections 1116 and

27   1121, 28 U.S.C. Section 1338(a), and 28 U.S.C. Section 1331, and supplemental

28

                                     1

EXHIBIT 25
PAGE 329

1  subject matter jurisdiction over MGA's state law claims pursuant to 28 U.S.C.
2  Section 1367(a).

3      5.      This Court has specific personal jurisdiction over Mattel, as it has
4  purposefully committed, within the State of California, the acts from which these
5  claims arise and/or has committed tortious acts outside California, knowing and
6  intending that such acts would cause injury to MGA within the state.  The Court
7  also has general personal jurisdiction over Mattel, as it conducts continuous,
8  systematic and routine business within the State of California and the County of
9  Los Angeles.

10     6.      Venue is proper in the United States District Court for the Central
11  District of California pursuant to 28 U.S.C. Sections 1391(b) and 1391(c).

12

13                  **FACTUAL BACKGROUND**

14     7.      MGA seeks by this action to halt Mattel's habitual and unfair tactics of
15  competition-by-intimidation and serial copycatting of MGA's products, which
16  Mattel has used in an unbridled effort to cause confusion in the market place and
17  eliminate MGA as a competitor in the toy and fashion doll market long dominated
18  and controlled by Mattel.

19     8.      MGA is a privately-held company in the San Fernando Valley that
20  began in 1979 as a small consumer electronics business.  In 1987, the company
21  made its first foray into the toy business when it secured rights to market handheld
22  LCD games featuring licensed Nintendo® characters.  Building on that small
23  success, the company began marketing products for popular licensed properties
24  such as the "Power Rangers"® and "Hello Kitty"®.  This little-known but
25  successful company, however, was propelled into the limelight after its daring
26  release in June 2001 of an innovative line of fashion dolls called "BRATZ".
27  "BRATZ" are multi-ethnic fashion dolls that sport a fresh new urban and
28  contemporary look and fashion.  At the time of the release of "BRATZ", "Barbie"

2

EXHIBIT 25
PAGE 330

1    sales were in a slump, Mattel was in turmoil, and the market was ripe for something

2    new, exciting and inventive. "BRATZ" fit the bill. It is the first fashion doll that

3    has been able to seriously challenge "Barbie" for market share, and begin to loosen

4    Mattel's 50-year iron-fisted grip on the fashion doll market.

5         9.      Mattel has not taken kindly to the challenge. Either unable or

6    unwilling to compete against "BRATZ" fairly, and on a level-playing field, Mattel

7    has, instead, taken a more expeditious approach, resorting to unfair and anti-

8    competitive business practices. Wielding its substantial clout and influence in the

9    toy industry, Mattel has tried to muscle MGA out of business. MGA is informed

10    and believes that Mattel has intimidated, coerced and threatened retailers, licensees,

11    suppliers and others in the industry – both in the U.S. and internationally – in order

12    to inhibit and stifle MGA's ability to compete with Mattel and to prevent MGA

13    from obtaining licensees, contracts and supplies for its products. Mattel has also

14    serially imitated and copy-catted the look of MGA products, trade dress,

15    trademarks, themes, ideas, advertising and packaging, including for the "BRATZ"

16    line of dolls. MGA brings this action to stop Mattel's tortious, unfair and anti-

17    competitive conduct and to recover the extensive damage that Mattel's illicit

18    behavior has caused, and continues to cause, MGA. Mattel's own website states:

19    "As the global leader in the toy industry, we believe that how we achieve success is

20    just as important as the success itself." It also proclaims that "unwavering integrity

21    defines our corporate culture on every level, guiding how we work and how we do

22    business." Mattel's own corporate governance standards require it to "play by the

23    rules," complete fairly and be a good corporate citizen. Mattel's actions, however,

24    speak louder than its words.

25

26

27

28

<p style="text-align:center">3</p>

EXHIBIT 25
PAGE 331

## Mattel History and Performance

10.     Mattel is the world's largest toy company, but it owes its immense success chiefly to a single product: "Barbie." Since her debut in 1959, "Barbie" has been the fuel for Mattel's growth and success, turning Mattel into an international powerhouse. By the late 1990's, Mattel's annual sales of the doll approached or topped $1.8 billion and Mattel stock reached a record high of approximately $45.00 a share. At that time, the average American girl had eight "Barbie" dolls, and "Barbie" was the world's best-selling toy.

11.     Mattel's reliance on a single, 40-year old product for as much as 50% of its business turned out to be a risky business model, however. Resting on its laurels, Mattel failed to react to the shifting tastes of consumers, changing dynamics in the industry, and an increasing focus on technologically advanced and interactive toys. "Barbie's" record sales fell into a tailspin. According to one report, Adrienne Fontanella, Mattel's "Barbie" brand president, would later be quoted as saying that, "The world changed very quickly, and we missed a beat... Barbie wasn't talking to girls. She just wasn't hitting it."

12.     Sales began to plunge in 1997, and Mattel began posting a series of net income losses. In the first quarter of 1998, sales of the "Barbie" brand dropped 17%. This steep slide was followed by another in the second quarter, when sales fell again, down by 15%. By the end of 1998, Mattel reported an overall 14% decline in "Barbie" sales for the year and analysts were using words such as "devastating" and "a catastrophe" to describe Mattel's earnings. The company's stock fell as much as 27% in a single day. "Barbie" was having a crisis.

13.     Jill Barad, who had taken over as Mattel's chairman and chief executive in January 1997, at the height of Mattel's success, had to do something fast. Instead of focusing on and investing in new product development, however, which would obviously take time, Mattel embarked on a series of acquisitions that were seemingly aimed at quickly diversifying the company's product line and

4

EXHIBIT 25
PAGE 332