**g.**      **Summary Of The Discovery Master's Findings With Respect To The Subpoenas Directed To The Financing Entities**

For the foregoing reasons, the Discovery Master finds that, based on the record before him, Mattel has failed to sufficiently articulate the necessary connection between most of the Financing Discovery and any Phase 2 issue. Moreover, while there is a connection between the Financing Discovery and some of the Phase 2 issues referenced (i.e., MGA's financial condition and its bearing on Mattel's claim for punitive damages), Mattel has failed to demonstrate that the Subpoenas meet the standard set forth in Rule 26(b)(2) and that all of the requested discovery is permissible in light of the case law interpreting Rules 26 and 45.

Accordingly, Mattel's motion to compel the Financing Entities to comply with the Subpoenas is **GRANTED** in part and **DENIED** in part.

        **2.**      **Subpoenas To The Transferee Entities**

In their briefs regarding the enforceability of the Subpoenas, Mattel and MGA do not, as a general rule, make a distinction between the Financing Entities and the Transferee Entities, but rather direct the same arguments to both groups collectively. However, there are important distinctions between the two groups, including, without limitation, that: (1) the Transferee Entities appear to be affiliated with – if not wholly owned by – Larian; (2) the Transferee Discovery involves the sale of MGA assets (i.e., Bratz products) in which Mattel has an ownership interest pursuant to the Court's December 3, 2008 ruling; and (3) the Subpoenas seek some documents relevant to Phase 2 issues which presumably cannot be obtained from MGA, namely the Transferee Entities' contracts with, and records of sales to, third parties purchasing the Bratz products. Accordingly, in ruling on the Subpoenas directed to the Transferee Entities, the Discovery Master's analysis of certain of the parties' above-referenced arguments differs, as follows.

//

EXHIBIT _71_
PAGE _401_

### a.    Non-Party Considerations

To begin with, the distinction between a party and non-party here is less compelling given the MGA parties' apparent admission that the Transferee Entities are single purpose entities created and controlled by Larian (who is, of course, himself a party) to dispose of inventory that is the subject of this litigation. Further, the MGA parties presumably do not have custody of the sales contracts whereby IGWT Group LLC sold Bratz products to third parties. The Discovery Master also notes that counsel for the Transferee Entities has submitted a declaration stating that there are "hundreds of sales contracts at issue, and as such, thousands of documents responsive to Mattel's requests." (Declaration of Jeffrey B. Valle dated February 17, 2009 ["Valle Decl."], ¶ 7). The unavailability of these relevant documents from any other source weighs heavily in favor of enforcing the Subpoena to IGWT Group LLC.

### b.    Relevance To Phase 2 Issues

### 1.    Phase 2 Damages

As mentioned above, Mattel argues that the Subpoenas "seek documents relevant to MGA and Larian's financial condition, net worth, and ability to pay" on the ground that such information is relevant to Mattel's Phase 2 damages claims, including Mattel's claim for punitive damages.

For the reasons previously discussed, the Discovery Master finds that, with respect to the Financing Entities, the discovery requests were, for the most part overbroad, and/or not sufficiently linked to Phase 2 issues. However, the Discovery Master's analysis is necessarily different with respect to entities which were created and apparently wholly owned and/or controlled by Larian (a defendant in Phase 2), and which are admittedly selling inventory which generate revenues in which Mattel has an interest. Specifically, Mattel contends that Larian has caused MGA to sell the inventory at a deep (80%) discount to the Transferee Entities. This practice, if true, limits MGA's profits (which go to MGA's balance sheet, and ultimately

EXHIBIT 24
PAGE 402

1    affects MGA's net worth) while at the same time allowing Larian to capture

2    additional profits which otherwise would have been realized by MGA and reflected

3    on MGA's balance sheet).  Accordingly, the Discovery Master finds that most of

4    the documents Mattel seeks to subpoena from the Transferee Entities properly

5    relate to Phase 2 issues, as specified in Section IV below.[21]

6              **2.    Mattel's Unfair Competition Counterclaim**

7         Given MGA's admissions regarding Larian's ownership/control of the

8    Transferee Entities, coupled with their sale of inventory purchased from MGA, the

9    Discovery Master finds that many of the documents requested from the Transferee

10   Entities are also arguably related to a "fraudulent," "unlawful," or "unfair" business

11   practice within the meaning of the Unfair Competition Law and the scope of

12   Mattel's Counterclaims.  Among other things, the Court's December 3, 2008 order

13   imposes a constructive trust on the proceeds of MGA's sale of the subject

14   inventory.  If, as Mattel argues, MGA's sale of that inventory to the Transferee

15   Entities constitutes a scheme on the part of Larian to enrich himself by depriving

16   Mattel of the true profits to be paid to Mattel pursuant to the Court's order, then

17   such conduct would constitute an unlawful attempt to circumvent the Court's order

18   and arguably render the transaction between MGA and the Transferee Entities an

19   anti-competitive business practice that is unlawful, unfair or fraudulent to other toy

20   manufacturers, including Mattel.  Therefore, such alleged misconduct, if proven,

21   could violate the Unfair Competition Law.

22        Moreover, although Mattel asserted its counterclaim for violation of the

23   Unfair Competition Law prior to the alleged misconduct (and long before the

24   Transferee Entities came into existence), Mattel phrased its allegations broadly

25

26   [21] The Discovery Master notes that IGWT 826 Investments is registered at the home address of Larian's sister and
     brother-in-law, indicating that some of Larian's relatives may be involved in the ownership or operation of the

27   Transferee Entities.  Accordingly, the Discovery Master has specified in some instances that the production of
     documents shall include those referencing not only Larian, but also his spouse, his children, his siblings, or their

28   spouses, or any entity or person affiliated with them.  However, the Discovery Master has stopped short of ordering
     the production of documents relating to any other entities, individuals "within the U.S. and outside the U.S.," as
     requested in Category 6 of each of the Subpoenas directed to the Transferee Entities.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 27 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

1   enough to potentially encompass subsequent acts of unfair competition which

2   perpetuate or extend the misconduct alleged in the Counterclaims.  Unlike Mattel's

3   RICO counterclaim, Mattel's Twelfth Counterclaim for Unfair Competition does

4   not purport to rest on a list of enumerated, factually detailed and carefully defined

5   acts, but rather is phrased broadly to cover "unlawful, unfair and/or fraudulent acts

6   of unfair competition" which include, "without limitation" certain illustrative

7   examples.  (Counterclaims, p. 74, ¶ 165).

8        Of course, the Discovery Master cannot predict whether the Court will

9   ultimately deem Mattel's unfair competition counterclaim to be sufficiently elastic

10  to encompass MGA's alleged misuse of the Transferee Entities or whether Mattel

11  will seek (and the Court permit) amendment of the counterclaim to expressly

12  reference such alleged misconduct.  Nevertheless, in light of the fact that the

13  discovery need only appear reasonably calculated to lead to the discovery of

14  admissible evidence, the Discovery Master finds that certain aspects of the

15  Subpoenas are sufficiently related to Mattel's Phase 2 unfair competition claim.

16               c.      **Summary Of The Discovery Master's Findings With**

17                       **Respect To The Subpoenas Directed To The**

18                       **Transferee Entities**

19       As set forth above, the Discovery Master finds that Mattel has sufficiently

20  articulated a connection between some of the Transferee Discovery and its Phase 2

21  claims.  Accordingly, Mattel's motion to compel the Transferee Entities to comply

22  with the Subpoenas is **GRANTED** in part and **DENIED** in part.

23  **IV.    Disposition**

24       1.      The Motion to Quash filed by MGA is **DENIED**.

25       2.      Mattel's Motion to Compel the Financing Entities to produce

26  documents responsive to the Subpoenas is **DENIED** with respect to OmniNet

27  Capital, LLC and Vision Capital, LLC.

28       3.      Mattel's Motion to Compel Omni 808 Investors, LLC to produce

EXHIBIT _71_
PAGE _404_

1   documents responsive to the Subpoena propounded on it is **GRANTED** in part and

2   **DENIED** in part, as follows:

3         a.     Requests 1 through 3, 13, 15, and 17:  The Motion is granted

4   with respect to documents relating to (1) the existence of any debt owed by MGA

5   Entertainment, Inc. to Omni 808 Investors, LLC, including any debt purchased

6   from Wachovia Bank, and (2) any communications between Omni 808 Investors,

7   LLC and the MGA parties regarding any such indebtedness.  The motion is denied

8   regarding any other documents sought by these requests.

9         b.     Requests 4 through 12, 14 and 18:  The Motion is denied.

10      4.     Mattel's Motion to Compel the Transferee Entities to produce

11  documents responsive to the Subpoenas is **DENIED** as to Request 6 propounded to

12  IGWT Group LLC and Request 6 propounded to IGWT 826 Investments, LLC.

13      5.     Mattel's Motion to Compel the Transferee Entities to produce

14  documents responsive to the Subpoenas is **GRANTED,** as follows:

15                      **Subpoena To IGWT Group LLC**

16        a.     Request 1:  The Motion is granted with respect to documents

17  relating to the purchase by, or transfer to, IGWT Group LLC of any items of value,

18  including Bratz products, from MGA, Larian, his spouse, his children, his siblings,

19  or their spouses, or any entity or person affiliated with them.

20        b.     Request 2:  The Motion is granted

21        c.     Request 3:  The Motion is granted with respect to documents

22  relating to any ownership interest by Larian, his spouse, his children, his siblings,

23  or their spouses, or any entity or person affiliated with them.

24        d.     Request 4:  The Motion is granted with respect to documents

25  relating to any sources of funding by Larian, his spouse, his children, his siblings,

26  or their spouses, or any entity or person affiliated with them.

27        e.     Request 5:  The Motion is granted with respect to documents

28  relating to any compensation, loans, advances, payments, fees or any other form of

EXHIBIT 76
PAGE 405

1    consideration paid by IGWT Group LLC to Larian, his spouse, his children, his

2    siblings, or their spouses, or any entity or person affiliated with them.

3          f.      Request 7: The Motion is granted.

4          **Subpoena To IGWT 826 Investments LLC**

5          a.      Request 1: The Motion is granted with respect to documents

6    relating to the purchase by, or transfer to, IGWT 826 Investments LLC of any items

7    of value, including Bratz products, from MGA, Larian, his spouse, his children, his

8    siblings, or their spouses, or any entity or person affiliated with them.

9          b.      Request 2: The Motion is granted

10         c.      Request 3: The Motion is granted with respect to documents

11   relating to any ownership interest by Larian, his spouse, his children, his siblings,

12   or their spouses, or any entity or person affiliated with them.

13         d.      Request 4: The Motion is granted with respect to documents

14   relating to any sources of funding by Larian, his spouse, his children, his siblings,

15   or their spouses, or any entity or person affiliated with them.

16         e.      Request 5: The Motion is granted with respect to documents

17   relating to any compensation, loans, advances, payments, fees or any other form of

18   consideration paid by IGWT 826 Investments LLC to Larian, his spouse, his

19   children, his siblings, or their spouses, or any entity or person affiliated with them.

20         f.      Request 7: The Motion is granted.

21   5.     All non-privileged documents referenced in Paragraphs 3 and 5, above,

22   shall be produced within 30 days of this Order, subject to any applicable

23   confidentiality designations available under the Protective Order.

24   6.     Nothing in this Order should be deemed to prevent Mattel from

25   seeking discovery from the MGA parties of documents encompassed by the

26   Subpoenas upon the showing of a sufficient nexus between the particular discovery

27   requests and legitimate Phase 2 issues, and subject to any applicable objections.

28   //

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 30 -            ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 26
PAGE 406



1   Dated:  March 10, 2009

2

3

4                                      By:        /s/ Robert C. O'Brien

5                                                 ROBERT C. O'BRIEN
                                                  Discovery Master
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT 2U
PAGE 407

EXHIBIT 27

O

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA  92501
### CIVIL MINUTES -- GENERAL

Case No.   CV 04-09049 SGL(RNBx)                                  Date: December 3, 2008
Title:        MATTEL, INC. V. MGA ENTERTAINMENT, INC., et al.
=========================================================================
PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

      James Holmes                                          None Present
      Courtroom Deputy Clerk                            Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:      ATTORNEYS PRESENT FOR DEFENDANTS:

None Present                                          None Present

PROCEEDINGS:

**ORDER FINDING IN FAVOR OF MATTEL AS TO THE MGA PARTIES' AFFIRMATIVE DEFENSES**

**ORDER GRANTING MATTEL'S MOTION FOR DECLARATORY JUDGMENT (DOCKET #4303)**

**ORDER GRANTING MATTEL'S MOTION FOR CONSTRUCTIVE TRUST AND § 17200 INJUNCTIVE RELIEF (DOCKET #4305)**

**ORDER GRANTING MATTEL'S MOTION FOR PERMANENT INJUNCTION (DOCKET #4306)**

**ORDER DENYING AS MOOT MOTION TO STRIKE PORTIONS OF HUTNYAN DECLARATIONS AND EXHIBITS THERETO (DOCKET #4351)**

**ORDER DENYING MOTION TO STRIKE THE PROCTOR, KEISER, AND HOLLANDER DECLARATIONS (DOCKET #4352)**

**ORDER DENYING AS MOOT MOTION TO STRIKE MEYER DECLARATION (DOCKET #4377)**

**ORDER STAYING COURT'S ORDER PENDING CONSIDERATION OF THE PARTIES' POST-**

EXHIBIT _87_
PAGE _408_

**TRIAL MOTIONS**

**ORDER SETTING FORTH FURTHER BRIEFING SCHEDULE**

**ORDER REGARDING DISCOVERY MASTER PROPOSALS FOR PHASE 2**

**ORDER REGARDING JOINTLY LODGED LAPTOP COMPUTER**

**ORDER REGARDING SERVICE OF PERMANENT INJUNCTION**

**FILED CONCURRENTLY HEREWITH:**

**(1) MATTEL'S PROPOSED ORDER (AS MODIFIED BY THE COURT) GRANTING DECLARATORY JUDGMENT**

**(2) MATTEL'S PROPOSED ORDER (AS MODIFIED BY THE COURT) GRANTING MATTEL'S MOTION FOR CONSTRUCTIVE TRUST AND FOR FINDING LIABILITY AND INJUNCTIVE RELIEF PURSUANT TO CAL. BUS. & PROF. CODE § 17200**

**(3) MATTEL'S PROPOSED ORDER (AS MODIFIED BY THE COURT) GRANTING MATTEL'S MOTION FOR PERMANENT INJUNCTION**

These matters were heard on November 10, 2008, after extensive briefing by the parties. After a two-phase jury trial, the Court considers certain equitable issues (referred to as Phase 1C of the trial) and enters the following Order.  Filed concurrently herewith are:  (1) Mattel's Proposed Order (as modified by the Court) Granting Declaratory Judgment; (2) Mattel's Proposed Order (as modified by the Court) Granting Mattel's Motion for Constructive Trust and for Finding Liability and Injunctive Relief Pursuant to Cal. Bus. & Prof. Code § 17200; and (3) Mattel's Proposed Order (as modified by the Court) Granting Mattel's Motion for Permanent Injunction.

In reaching the rulings set forth herein, the Court has considered the parties' briefs and exhibits submitted during Phase 1C of the trial, the arguments of counsel, as well as the entire record (including the evidence properly submitted in Phase 1A and Phase 1B of the trial) and its previous Orders.

The Court refers collectively to all defendants herein, including MGA CEO Isaac Larian ("Larian"), as "the MGA parties".  MGA Entertainment, Inc., is referred to as "MGAE".

The Court has carefully and deliberately considered the parties' well-presented legal and equitable arguments, authorities, and evidence concerning the motions identified above.  In its final analysis, the Court finds, as did the jury, that the preponderance of evidence establishes that Carter Bryant ("Bryant") created and developed the name, the concept, and, together with Margaret Leahy, the prototypical sculpt for the hugely-successful Bratz brand of female fashion

EXHIBIT _27_
PAGE _409_

dolls while working as an employee of Mattel and while bound by the terms of an Inventions Agreement, which provided that all rights to such property, and the property itself, belong to Mattel. Moreover, the Court further finds, as did the jury, that the preponderance of the evidence establishes that Isaac Larian and MGAE intentionally interfered with Bryant's contractual relations with Mattel, aided and abetted Bryant's breach of fiduciary duty to Mattel, aided and abetted Bryant's breach of his duty of loyalty to Mattel, and unlawfully converted certain property of Mattel. Finally, the Court finds, as did the jury, that the preponderance of the evidence establishes that the MGA parties, in further developing, producing, and marketing its Bratz brand of female fashion dolls, are liable to Mattel for copyright infringement.

## I. The MGA Parties' Affirmative Defenses

Through its "Statement of Position Regarding Phase 1C Issues" (docket #4308), the MGA parties seek the Court's verdict in their favor as to their affirmative defenses of laches, estoppel, and waiver. As set forth below, the Court rules in favor of Mattel, and against the MGA parties as to these three remaining affirmative defenses.[1]

### A.    Laches

Laches is an equitable defense that may bar a claim where a defendant establishes "(1) lack of diligence by the plaintiff, and (2) prejudice to the defendant."  Grand Canyon Trust v. Tucson Elec. Power Co., 391 F.3d 979, 987 (9th Cir. 2004).  The MGA parties establish neither element.

Because the Court has already found that all the claims asserted against the MGA parties were filed within the applicable limitations periods, the Court starts with the presumption that laches is inapplicable.  Jarrow Formulas, Inc. v. Nutrition Now, Inc., 304 F.3d 829, 835 (9th Cir. 2002).

Mattel has not delayed in bringing its claims against the MGA parties.  The Court has already found, based on the undisputed evidence, that Mattel had no reason to know of its claims against Bryant until November 23, 2003, and that it had no knowledge of its claims against MGA and Larian until Bryant was deposed approximately a year later on November 4, 2004.  MGAE intervened in Mattel's suit against Bryant approximately one month later on December 7, 2004. See Dec. 7, 2004, Stip. & Order (04-9059 docket #36) ("MGA[] believes . . . that it has a significantly protectable interest relating to the subject matter of the action, . . . and that MGA's interest is not adequately represented by the existing parties.").  Thereafter, the parties briefed Mattel's motion to remand (filed on December 1, 2004, and denied on March 4, 2005), before a stay was entered in the case on May 20, 2005, pending the Ninth Circuit's consideration of an

---

[1]    By advancing only the affirmative defenses of laches, estoppel, and waiver in their Phase 1C brief, the MGA parties have implicitly waived the right to pursue any other affirmative defenses that they have not already expressly waived.

EXHIBIT 27
PAGE 410

interlocutory appeal. After MGAE's intervention and before the stay was entered, the parties, including MGAE, engaged in discovery, and the Court considered certain discovery motions, including a motion to compel the deposition of Isaac Larian filed on March 17, 2005. The stay remained in place until after the Ninth Circuit affirmed the Court's denial of the motion to remand; it was lifted on May 16, 2006. Six months later, on November 17, 2006, Mattel sought leave to file its claims against the MGA parties. On this record, the Court finds no lack of diligence by Mattel.

Nor have the MGA parties shown they suffered resulting prejudice. MGAE was permitted to intervene in the lawsuit filed by Mattel against Carter Bryant only one month after it became evident that its rights could potentially be affected, and it did so with the express purpose of protecting its own rights. The other MGA parties have not shown that they suffered any prejudice unique to them or that the intervention by MGAE was not designed to protect their rights.

Moreover, the record does not support the evidentiary prejudice claimed by the MGA parties, and the record is devoid of any expectation-based prejudice (i.e., evidence of what MGA would have done differently had the claims against them been asserted sooner). Indeed, to the contrary, the record reveals that the MGA entities have continued to promote (and profit from) the Bratz brand during the entire pendency of the current litigation.

Because of the presumption that laches will not bar timely claims, and because the Court finds that the MGA parties have failed to establish either element of laches, the Court finds in favor of Mattel as to the affirmative defense of laches.

### B.    Estoppel

For equitable estoppel to preclude Mattel's claims here, the MGA parties must establish four elements:

> (1) [T]he party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel has a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury.

Strong v. County of Santa Cruz, 15 Cal.3d 720, 725 (1975).

The MGA parties cannot establish the first element because, as noted above, the Court has already found, based on the undisputed evidence, that Mattel had no reason to know of its claims against Bryant until November 23, 2003, and that it had no knowledge of its claims against MGA and Larian until Bryant was deposed almost a year later.

The MGA parties have produced no evidence that Mattel intended them to act upon any apparent intention to refrain from asserting any claims against them. To the contrary, MGAE quickly intervened in Mattel's suit against Bryant to protect its interests.

MINUTES FORM 90
CIVIL -- GEN                                    4                    Initials of Deputy Clerk: jh

EXHIBIT  27
PAGE  411

Moreover, the MGA parties had no basis upon which to rely on Mattel's conduct. As found by the jury, they had superior knowledge regarding Bryant's creation of the Bratz drawings (and the timing of that creation).

Because the Court finds that the MGA parties cannot establish all the elements of estoppel, the Court finds in favor of Mattel as to the affirmative defense of estoppel.

### C.    Waiver

"Waiver is the intentional relinquishment of a known right with knowledge of its existence and the intent to relinquish it." United States v. King Features Entertainment, Inc., 843 F.2d 394, 399 (1988).

Here, the MGA parties contend that Mattel's tolerance of its employees' "moonlighting" for its competitors was so widespread as to constitute such a relinquishment. Although such implied waivers may be found where a plaintiff's conduct "is so inconsistent with the intent to enforce the right in question as to induce a reasonable belief that such right has been relinquished," Medico-Dental etc. Co. v. Horton & Converse, 21 Cal.2d 411, 432 (1942), no such conduct is present here.

No evidence of record suggests that Mattel tolerated the type of conduct in which Bryant engaged. The Court has previously addressed, and will not belabor here, the distinctions to be made between the limited evidence regarding "moonlighting" in the record and the conduct in which Bryant engaged. The evidence establishes, and the jury found, that while employed by Mattel as a fashion designer, Bryant preliminarily developed designs for and pitched a line of fashion dolls to Mattel's direct competitor. There is no evidence that Mattel has ever tolerated this type of conduct. Instead, several witness testified to their belief that such conduct would result in immediate termination of the offending employees. Indeed, the record is replete with details of the steps taken by Bryant, the MGA parties, and MGA employees to conceal the extent of Bryant's involvement in the Bratz project while he was employed by Mattel.

The Court finds in favor of Mattel as to the affirmative defense of waiver.

### II.  Declaratory Relief Motion (docket #4303)

In its motion for declaratory judgment, Mattel seeks, pursuant to its thirteenth cause of action, a declaration of its rights (and the MGA parties' lack of rights) regarding the Bratz-related works, including certain drawings, sculpts, and ideas.[2] Mattel also seeks imposition of a

---

[2]  The parties and the Court are all equally aware that ideas are not copyrightable. However, they are, as set forth in the Court's summary judgment order, assignable under California state law. As noted in the Court's summary judgment order, such an assignment was made by Bryant to Mattel.

MINUTES FORM 90
CIVIL -- GEN                              5                    Initials of Deputy Clerk: jh

EXHIBIT 27
PAGE 412

constructive trust as to MGA's copyright registrations in certain Bratz drawings. As detailed in the concurrently filed Order, the Court **GRANTS** Mattel's Motion for Declaratory Judgment (docket #4303).

In opposition, the MGA parties contend that the relief sought by Mattel should not be granted because it is preempted by the Copyright Act. The Court rejects this argument. The Court's ruling regarding preemption is set forth in the Court's summary judgment order, which the Court does not here modify.

Declaratory relief is generally granted "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." Bilbrey by Bilbrey v. Brown, 738 F.2d 1462, 1470 (1984).

Here, considering this legal standard and based on the relationship among the parties, the jury's verdicts, the Court's previous Orders, and the entire record, the Court finds that the declaratory relief sought by Mattel is appropriate.[3] Concurrently herewith, the Court has entered, as modified, Mattel's proposed order for declaratory relief.

### III. Motion for Constructive Trust and § 17200 Injunctive Relief (docket #4505)

As set forth more fully in its Motion, Mattel seeks, pursuant to California state law, imposition of a constructive trust over the trademarks "Bratz" and "Jade." Mattel also seeks, pursuant to its twelfth cause of action, a finding that the MGA parties violated Cal. Bus. & Prof. Code § 17200 on the basis of the jury's findings that the MGA parties converted Mattel's property, tortiously interfered by Mattel's contractual relations, and aided and abetted Bryant's breaches of his fiduciary duty and the duty of loyalty. Pursuant to this finding, and in addition to imposition of a constructive trust as to the Bratz and Jade marks, Mattel seeks an injunction prohibiting the MGA parties from using these marks. As detailed in the concurrently filed Order, the Court **GRANTS** Mattel's Motion for Constructive Trust and § 17200 Injunctive Relief (docket #4305).

### A.     Constructive Trust

Cal. Civ. Code § 2223 provides that "[o]ne who wrongfully detains a thing is an involuntary trustee thereof, for the benefit of the owner." Cal. Civ. Code § 2224 explicitly addresses things gained by wrongful acts: "One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he or she has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it." The parties agree on the resulting elements, which may be stated as

---

[3] The appropriateness of the constructive trust remedy is discussed below, in a separate section, but applies equally here.

EXHIBIT 27
PAGE 413

follows: "(1) the existence of a *res* (property or some interest in property); (2) the right of a complaining party to that *res*; and (3) some wrongful acquisition or detention of the *res* by another party who is not entitled to it. Communist Party v. 522 Valencia, Inc., 35 Cal.App.4th 980, 990 (1995).

Significantly, because the purpose of a constructive trust is to prevent unjust enrichment, enhancement of value is given to the beneficiary of the constructive trust. Haskel Engineering & Supply Co. v. Hartford Acc. & Indem. Co., 78 Cal.App.3d 371, 375 (1978)

Here, the jury found that the MGA parties wrongfully acquired the idea for the name "Bratz" along with the idea and preliminary drawings for a line of fashion dolls. The same is true for the one Bratz character who retained the name given her by Carter Bryant: "Jade."[4]  In addition to wrongfully acquiring them, the MGA parties continue to wrongfully retain them. The MGA parties enhanced the value of the names by acquiring trademark rights to them. California law requires, in this instance, that a constructive trust be imposed as to these marks. Mattel is the beneficiary of the constructive trust and MGA's trademarks in "Bratz" and "Jade" inure to Mattel's benefit.

In making this conclusion, the Court has considered, and rejected, the MGA parties' argument that Mattel has disavowed an intention to seek this remedy or waited too long to seek it. Mattel has conceded that it is not asserting a trademark infringement claim. It cannot, because it has not used the relevant marks in commerce, and one must do so to acquire trademark rights. Conversive, Inc. v. Conversagent, Inc., 433 F.Supp.2d 1079, 1089 (C.D. Cal. 2006) (citing Brookfield Communications, Inc. v. West Coast Entertainment Corp., 174 F.3d 1036, 1046 (9th Cir. 1999)). However, Mattel has not disavowed its intent to seek a constructive trust over the marks that were created by Bryant, with rights thereto acquired by the MGA parties through registration and use in commerce. This remedy is well within the scope of relief that is sought in Mattel's second amended answer and counterclaims, see SAAC at 73 ¶ 9 (Prayer for Relief) (seeking "imposition of a constructive trust over Bratz, including without limitations registrations and applications for registrations relating thereto made or filed by [the MGA parties] and third parties, and all profits, monies, royalties and any other benefits derived or obtained from [the MGA parties'] exercise of ownership, use, sale, distribution and licensing of Bratz"), and the Court has rejected all timeliness challenges to Mattel's claims.

## B.    § 17200 Violation

The record reveals sufficient evidence of injury-in-fact to Mattel to confer standing upon it to assert its § 17200 claim. Specifically, as testified to by Mattel officers (and acknowledged by MGAE officers and attorneys), Mattel has suffered lost market share as a result of the sales of the Bratz dolls. Moreover, the jury was instructed that "harm" to Mattel was a necessary element of a number of state law claims. See Final Jury Instructions as Given [Phase 1A], docket #4115, at

---

[4]    Bryant's other characters were re-named before they were marketed:  Zoe became the now-familiar Cloe, Hallidae became Sasha, and Lupe became Yasmin.

EXHIBIT 27
PAGE 414

Instruction Nos. 22, 25-27, and 29 (intentional interference with contractual relations, aiding and abetting breaches of fiduciary duty and the duty of loyalty, and conversion).  The jury's finding in favor of Mattel as to those claims necessarily implies a factual finding by the jury as to the specified element of harm to Mattel and, as explained in more detail below, the Court is bound by that implicit factual finding.  Los Angeles Police Protective League v. Gates, 995 F.2d 1469, 1473 (9th Cir. 1993) (finding that by awarding damages on a specific claim, the jury implicitly found that the plaintiff had proven one particular element of that claim).

As set forth in a previous Order, this claim is only partially preempted by the Copyright Act.  The preempted portion of Mattel's § 17200 claim did not survive summary judgment and is not at issue here.

Based on the jury's findings that the MGA parties converted Mattel's property, tortiously interfered with its contractual relations, and aided and abetted Bryant's breaches of his fiduciary duty and the duty of loyalty, the Court finds that the MGA parties also violated Cal. Bus. & Prof. Code § 17200.

### C.      § 17200 Injunctive Relief

Where a Court finds violation of § 17200, it has broad powers to shape appropriate injunctive relief:

> Any person who . . . has engaged . . . in unfair competition may be enjoined in any court of competent jurisdiction.  The court may make such orders or judgments, . . . as may be necessary to prevent the use or employment by any person of any practice which [either] constitutes unfair competition, . . . or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition.

Cal. Bus. & Prof. § 17203.

The injunction sought by Mattel's proposed order (as modified by the Court) is necessary to restore to Mattel the property acquired as a result of the MGA parties' unfair competition.

For the reasons set forth above, concurrently herewith, the Court has entered, as modified, Mattel's proposed order for constructive trust and § 17200 injunctive relief.

### IV. Motion for Permanent Injunction (docket #4306)

### A.      Facts Supporting Injunctive Relief

The present motions, to varying degrees, implicate the question of to what extent a Court trying equitable claims is bound by a jury's factual findings related to the same underlying conduct.

MINUTES FORM 90
CIVIL -- GEN                                      8                        Initials of Deputy Clerk: jh

EXHIBIT  27
PAGE  415

The question comes into sharpest focus in Mattel's Motion for Permanent Injunction.

"[W]here legal claims are tried by a jury and equitable claims are tried by a judge, and the claims are based on the same facts, the Seventh Amendment requires the trial judge to follow the jury's implicit or explicit factual determinations." Los Angeles Police Protective League v. Gates, 995 F.2d 1469, 1473 (9th Cir. 1993) (internal quotation marks and citation omitted). In the absence of an express finding, a court must determine whether implicit factual determinations by the jury can be inferred, and should consult the jury's verdict and the jury instructions to make this determination. Id. (finding, based on an examination of the jury instructions and the jury's verdict awarding damages as to a specific claim, that the jury implicitly found that plaintiff had proven one particular element of that claim).

The Court is certainly aware that the jury returned an award of damages that was far less than that sought by Mattel. Moreover, the Court is aware that a controversy exists as to the actual amount of the jury's verdict. See Mattel's Submission Regarding Email from Juror No. 7 and Request to Recall the Jury, docket #4288 (denied by Order dated September 3, 2008, docket #4295).

MGA has argued that the jury has found that only the so-called "first generation" Bratz dolls were infringing. The jury made no express finding on this issue; the general verdict form they were provided did not request such a detailed finding. Thus, in accordance with Gates, the Court looks to the jury instructions to determine any implicit findings.

The jury was instructed that "Mattel is entitled to recover any profits attributed to the infringement." MGA attempts to equate the $10 million figure awarded by the jury for copyright infringement to the amount of profits related to the first generation Bratz dolls. The difficulty with this "equation" is that it is woefully unbalanced. To be sure, MGA's damages expert presented evidence that the first generation Bratz dolls netted approximately $4 million in profits; had the jury awarded this amount as copyright damages, then the Court might be persuaded that the jury implicitly found that the infringement was limited to the first generation Bratz dolls. But that is not the case. The factual finding advanced by MGA cannot be inferred from the jury award.

In making this ruling, the Court is mindful of the jury's note that queried whether they could find infringement as to the first generation dolls and no other dolls. The Court, without objection from counsel, answered that question affirmatively. Although this note reveals that the jury considered limiting their finding of infringement to the first generation, it does not reveal that they ultimately chose that conclusion. Again, had the jury awarded an amount equal to the amount of profits generated by the first generation Bratz dolls, the Court would find, based on the award and the jury's note, that the jury implicitly found infringement as to the first generation Bratz dolls only.

Alternatively, counsel posited at oral argument, that the jury found that a large portion of the

Initials of Deputy Clerk: jh

EXHIBIT __27
PAGE __416

Bratz dolls infringed Mattel's copyrights, but only in very minute ways.[5]  Counsel likened the jury's damage award to a rug that, no matter which way one moved it, simply would not cover the floor. See Nov. 10, 2008, Tr. at 100-101.  Counsel explained that the jury's findings led to one conclusion or the other and, regardless of which conclusion was chosen, the jury's finding did not support an injunction:

> The rug is too small for an injunction, regardless of how you allocate that money.  You either come up with a vanishingly small subset of infringing products, or you come up with a vanishingly small percentage of infringement by all of the products.  And the jury has put that cap for us.

Id.  Although colorful, counsel's metaphor is not helpful.  Assuming that the Court would be bound by a jury's factual finding in a case where only two possible inferences -- both of which would lead the Court to the same conclusion -- were possible, this is not that case.

Where a jury returns a monetary award based on a particular piece of evidence such as an expert report, the Court will infer the factual findings that necessarily flow from it.  But where, as here, the Court and the parties are left to hazard various guesses as to the jury's intentions, the Court can make no principled inferences and must therefore engage in its own fact-finding.[6]

The Court has carefully examined each of the exhibits attached to the proposed preliminary injunction, as well as the actual exhibits being stored in Courtroom Four of the U.S. Courthouse in Riverside, and finds that the dolls depicted in Exs. 3 and 4, and the products depicted in Exs. 5 and 6, are, pursuant to the standard set forth in the Court's Orders dated July 24, 2008, and August 15, 2008, substantially similar to Mattel's registered copyrighted drawings and are embodiments of the sculpts depicted in Exs. 1 and 2.  In doing so, the Court has first examined the specific expressive elements of the works at issue and has compared them to those found in the exhibits referenced

---

[5]   This argument was not raised in the opposition papers filed by the MGA parties, and is rejected for that reason as well.  See Opp. at 21 ("Here, the circumstances clearly show that the only reasonable conclusion to draw is that the jury's infringement finding was limited to a small universe of products, specifically the first generation Bratz dolls as clothed and packaged.") (emphasis added).

[6]   The MGA parties hazard such a guess in their opposition, wherein they attempt to explain how, in the jury's mind, $4 million in first-generation profits could equate to $10 million total copyright infringement award:  "The jury's decision to award $6 million against MGA[E] (and $10 million total) rather than simply the $4 million] argued by MGA as profits for the first generation may be due to the jury believing that MGA's proffer of $4 million in profits on nearly $80 million revenue was a bit low."  Opp. at 21 n.30.  This guessing game illustrates why no factual findings can be inferred from the jury's copyright infringement award and why the Court is obligated to make its own factual findings.

MINUTES FORM 90
CIVIL -- GEN                                        10                     Initials of Deputy Clerk: jh

EXHIBIT 27
PAGE 417

above, and the Court has then further examined the overall similarity of the expression in various works from the perspective of the ordinary observer. Although the Court recognizes that there are differences between the works, the Court ultimately finds that those dolls and products set forth in the above-referenced exhibits are **substantially similar** to Mattel's registered copyrighted drawings and are embodiments of the sculpts depicted in Exs. 1 and 2. Especially important to the Court's conclusion is the consistency of the particularized expression of the dolls' heads, lips, eyes, eyebrows, eye features, noses, as well as the particularized expression of certain anatomical features relative to others (most notably the doll lips, doll eyes, doll eyebrows, and certain other doll eye features) and de-emphasis of certain anatomical features (most notably the minimalized doll nose and thin, small doll bodies). Also important to the Court is the particularized, synergistic compilation and expression of the human form and anatomy that quite clearly expresses a unique style and conveys a distinct look or attitude, especially as perceived by the intended consumer market (7-12 year old girls). The evidence on this latter point is particularly compelling, supported by both analytical and market analysis. Together, these features clearly give each of the dolls the particularized expression to which the Court referred in its July 24, 2008, and August 15, 2008, Orders.

## B.   Standard for Awarding Permanent Injunctive Relief

The Supreme Court recently announced the standard for granting a permanent injunction:

> According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006).

### 1.   Irreparable Injury

The Court begins, then, by looking to whether Mattel has established that it will suffer irreparable injury if an injunction is not granted.

Prior to the eBay decision, where a plaintiff sought a preliminary injunction, irreparable injury was presumed in intellectual property cases; in light of the eBay decision, some doubt has been cast on whether courts should continue to apply that presumption. See Broadcom Corp. v. Qualcomm Inc., 543 F.3d 683, 702 (Fed. Cir. 2008) (noting that the continuing viability of the presumption is "an open question").

Mattel has established its exclusive rights to the Bratz drawings, and the Court has found

MINUTES FORM 90
CIVIL -- GEN                                         11                          Initials of Deputy Clerk: jh

EXHIBIT 27
PAGE 418

that hundreds of the MGA parties' products -- including all the currently available core female fashion dolls Mattel was able to locate in the marketplace -- infringe those rights. The MGA parties have evinced an intention to continue marketing those dolls. This represents a wholesale inability on the part of Mattel to enforce its exclusive rights under the Copyright Act, amounting to irreparable harm.  Taylor Corp. v. Four Seasons Greetings, LLC, 403 F.3d 958, 968 (8th Cir. 2005).

MGA criticizes Mattel's reliance on Taylor, citing Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd., 518 F.Supp.2d 1197, 1211 n.13 (C.D. Cal. 2007) (Wilson, J.).  The Grokster case holds that, in copyright permanent injunction cases, a presumption of irreparable injury is not permitted in light of eBay.  In Grokster, the court rejected the rationale of Taylor, stating:

> [T]his Court is not persuaded by the Eighth Circuit's pre-eBay conclusion in Taylor Corp. v. Four Seasons Greetings, LLC, 403 F.3d 958, 968 (8th Cir. 2005), that because "[a plaintiff] certainly has the right to control the use of its copyrighted materials, . . . irreparable harm inescapably flows from the denial of that right."  In substance, such language is nothing more than a disguised presumption, particularly with the use of the word "inescapably."  After eBay, Plaintiffs cannot rely on the pure fact of infringement in order to establish irreparable harm.

Grokster, 518 F. Supp.2d at 1211 n.13.  Judge Wilson's point is well-taken.  Although the Taylor court did not purport to apply a presumption of irreparable harm, its use of the word "inescapably" in this phrase certainly could indicate that it was merely presuming irreparable harm.  However, a review of the Taylor case makes clear that the Eighth Circuit considered the implications of allowing an infringer to continue to infringe: "[i]n copyright infringement actions, the denial of a request for injunctive relief could otherwise "amount to a forced license to use the creative work of another."  Taylor Corp., 403 F.3d at 967-68.  This rationale removes Taylor further from the application of a "disguised presumption" of irreparable harm and closer to an actual finding of irreparable harm.

At least one district court within the Ninth Circuit is in accord with the Court's decision today, as it has decided, post-eBay, that a plaintiff who establishes past infringement and the threat of future infringement amounts to irreparable harm.  Designer Skin, LLC v. S & L Vitamins, Inc., 2008 WL 4174882 at *5 (D. Ariz. 2008) (Teilborg, J.).  Judge Teilborg's rationale is well articulated:

> Whatever else might be said against the propriety of a rule that holds that past infringement plus the threat of future infringement equals irreparable harm, it seems clear to this Court that such a rule would not run afoul of eBay's directives.  First of all, the eBay Court did not address the showing necessary to establish "irreparable harm."  It merely held that the plaintiff has the burden of proving it.  Second, this two-part test does not resurrect the presumption of irreparable harm impliedly laid to rest by the eBay court.  It simply recognizes that a

EXHIBIT 27
PAGE 419

plaintiff meets the burden of proving irreparable harm by making this two-part showing. And finally, the two-part test does not represent a rule [prohibited by eBay] that an injunction automatically follows a determination that a copyright has been infringed. . . . In exercising their equitable discretion, courts would still have the freedom to deny injunctive relief when the public interest or the balance of hardships weighs against such relief.

Designer Skin, 2008 WL 4174882 at *5 (citation omitted).

Indeed, this is not so complex an issue as applied to the facts of this particular case. The statutory directive to the Court is clear: "Any court having jurisdiction of a civil action arising under this title may, . . . grant temporary and final injunctions on such terms as it may deem reasonable **to prevent or restrain infringement of a copyright.**" 17 U.S.C. § 502 (emphasis added). The Court can envision no case more appropriate for a finding of irreparable harm. Here, as the record shows and as the jury found, an employee bound by contract and fiduciary duty to communicate to his employer (and keep confidential from all others) all copyrightable works he creates during the term of his employment, not only fails to so communicate but actually secretly purports to convey the rights thereto to a direct competitor of his employer. The rights to those works are actively concealed from their true owner (by both the employee and the competitor) for years while the competitor exploits the works, reaping profits therefrom totaling hundreds of millions of dollars. After millions of pages of discovery are produced, thousands of filings are submitted, scores and scores of motions are decided by the Court, and after months of trial and two jury verdicts in favor of the plaintiff, defendants remain steadfast in their intention to continue to produce their infringing products. Viewed in this light, Mattel has established irreparable injury on the basis of the MGA parties' past infringement and the high probability of continued acts of infringement.

### 2.      Inadequate Legal Remedies

Unless MGA is enjoined, Mattel would be forced to sue each retailer and distributor to stop the sale and distribution of the infringing dolls; therefore, the legal remedies are inadequate. See Continental Airlines, Inc. v. Intra Brokers, Inc., 24 F.3d 1099, 1105 (9th Cir. 1994).

### 3.      Balance of Equities

Factually, the hardship on MGA weighs very heavily upon the Court. The Court has expressed its concerns in this regard on the record. The evidence at trial showed that, at least historically, Bratz is the brand that has made MGA profitable. And the proposed injunction addresses the core of that brand -- most notably, the female fashion dolls.

However, where, as here, the only hardship that will be suffered is lost profits from the cessation of its infringing activities, the Court, in the final analysis, must afford this very little -- if any -- weight. Triad Systems Corp. v. Southeastern Exp. Co., 64 F.3d 1330, 1338 (9th Cir. 1995) ("Where the only hardship that the defendant will suffer is lost profits from an activity which has

EXHIBIT 27
PAGE 420

been shown likely to be infringing, such an argument in defense merits little equitable consideration . . . .") (internal quotation marks and citations omitted), accord, Cadence Design Systems, Inc. v. Avant! Corp., 125 F.3d 824, 829-30 (9th Cir. 1997) (collecting cases).  The balance of equities favor Mattel.

### 4.    Public Interest

There is a strong economic interest, especially in these troubled economic times, in maintaining a profitable enterprise as a going concern.  However, there is also a strong public interest in enforcing copyright laws in a uniform manner.  Indeed, nothing is more essential to long-term economic prosperity than the stability provided by the rule of law.  Although the MGA parties raise excellent points in their opposition, in the end, the public interest is served by precluding defendants from engaging in copyright infringement.  The injunction issued by the Court does no more than that.

### C.    Scope of Injunction

The scope of the permanent injunction is set forth in a separate order.  Four issues raised in the parties' papers warrant the brief discussion that follows.

### 1.    Impoundment and Destruction

As set forth more fully in its motion, Mattel seeks impoundment of Bratz dolls and destruction of the specialized plates, molds, and matrices used to make them.  Impoundment of existing infringing products and the destruction of the means to make those products are clearly remedies contemplated by the Copyright Act.  See 17 U.S.C. § 503(a).  The MGA parties argue that these remedies are inappropriate because there is no ongoing infringement or, at the very least, its products infringe very little.  In its findings supporting the issuance of a permanent injunction, the Court has rejected this premise, and the Court finds that the requested impoundment and destruction is an appropriate remedy.[7]

### 2.    Recall

In light of the scope of infringement found by the Court, and in light of the fact that the injunction addresses products that directly compete with Mattel's products, the Court has ordered the recall of infringing products from retailers.  See CyberMedia, Inc. v. Symantec Corp., 19 F.Supp.2d 1070, 1079 (N.D. Cal.1998); Patry on Copyright, § 22:81.

---

[7]   No party shall destroy any of the implements used to make the Bratz dolls that are the subject of the permanent injunction absent a specific order of this Court authorizing such destruction.

MINUTES FORM 90
CIVIL -- GEN                                    14                    Initials of Deputy Clerk: jh

EXHIBIT  27
PAGE  421

### 3.    Royalty

The MGA parties argue that the more appropriate remedy to be imposed here is for the Court to order a royalty instead of an injunction. The difficulty in this proposal is that it is premised on the idea that the ongoing infringement, if any, is minute. See Opp. at 29-32 (suggesting a royalty of .3% would be appropriate). As noted above, the Court has rejected this premise. Moreover, although the Court has been hopeful that an out-of-court resolution involving such a remedy may have been obtained, and has gone to great lengths to encourage both sides to pursue such a resolution in good faith, their failure so far to do so underscores the Court's present view, which is based on the evidence and argument of record, that the hostility between these parties is such that this form of remedy is unworkable.

### 4.    Appointment of a Special Master

Mattel suggests that the Court appoint a special master to "monitor implementation of the relief granted by the Court." Motion at 28. The MGA parties have not indicated their position on this issue. The appointment of a special master to monitor implementation of the permanent injunction is warranted; this task could easily overwhelm the Court's resources. Subject to the Court's consideration of any in camera objections submitted to the Court by the parties, the Court will select a Special Master from the list submitted below.

## V. Motion to Strike Portions of Hutnyan Declarations and Exhibits Thereto (docket #4351)

The MGA parties move to strike certain evidence offered by Mattel on the issue of harm suffered by Mattel, contending the evidence is inadmissible. This motion is **DENIED AS MOOT.** Although Mattel has offered additional evidence of harm, the Court has found the evidence of harm to Mattel offered during Phases 1A and 1B sufficient to resolve the issues presented in the current motions.

## VI. Motion to Strike the Proctor, Keiser, and Hollander Declarations (docket #4352)

The motion is **DENIED** as to the Proctor declaration. The declaration is a helpful presentation of appropriate argument and/or observations of counsel for the Court's consideration.

The motion is **DENIED** as to the Keiser declaration. The Keiser declaration authenticates two-dimensional depictions of three-dimensional models he scanned using a sophisticated scanning machine.

The motion is **DENIED** as to the Hollander declaration. This declaration was the subject of extensive briefing in MGA's motion in limine 8, which the Court has reviewed. Hollander's declaration, which presents survey evidence of the target market, is relevant to application of the

MINUTES FORM 90
CIVIL -- GEN

15

Initials of Deputy Clerk: jh

EXHIBIT 27
PAGE 422

intrinsic test. The Court, in fact, instructed the jury to consider how girls 7 to 12 would view the Bratz dolls. Hollander's survey attempts to determine just that. The Court has considered the methodological flaws pointed out by MGA in weighing the evidence Hollander presents.

### VII. Motion to Strike Meyer Declaration (docket #4377)

Mattel moves to strike the Meyer declaration. This motion is **DENIED AS MOOT.** This declaration sets forth a calculation justifying the proposed .3% royalty. The Court has rejected the proposal that a royalty be imposed.

### VIII. Stay of this Order

This Order, and the three concurrently filed orders, are stayed pending the Court's consideration of the parties' post-trial motions. This stay shall remain in place until lifted by further Order of this Court.

### IX. Briefing Schedule for Post-Trial Motions

Notwithstanding the Court's earlier order, the motions referred to in ¶ 3 of the Court's September 2, 2008, Order may be filed no later than December 22, 2008. Response briefs may be filed no later than January 12, 2009. Replies may be filed no later than January 19, 2009. A hearing on this matter is set for Wednesday, February 11, 2009, at 10:00 a.m., in Courtroom One of the above-referenced Court.

### X. Discovery Master Proposals for Phase 2

The Court previously stated that it would submit for counsel's consideration the names of potential Discovery Masters for Phase 2 that possess both the resources to handle the scope of the anticipated discovery disputes as well as the personal confidence of this Court. The Discovery Master would serve pursuant to the same terms and conditions of the Phase 1 Discovery Master. In addition, as noted above, the Court also intends to appoint a Special Master to oversee implementation of the permanent injunction. The Court provides for counsels' consideration the following individuals who meet the Court's requirements, and have indicated to the Court a willingness and an ability to serve in one or both of these roles. Counsel are directed to file any objections to any or all of the proposed Masters on or before December 22, 2008. Any such objections are to be submitted *in camera* and under seal with the Court. After considering any objections, as well as any preferences expressed by the parties, the Court will make an appointment at the appropriate time.

EXHIBIT 27
PAGE 423

Patrick A. Fraioli, Jr.
Moldo Davidson et al LLP
2029 Century Park East, 21st Fl.
Los Angeles, CA 90067
310-551-3100
pfraioli@mdfslaw.com

Jan L. Handzlik
Howrey LLP
550 S. Hope Street, Suite 1100
Los Angeles, CA 90071
213-892-1802
handzlikj@howrey.com

Kendall H. MacVey
Best Best & Krieger LLP
P.O. Box 1028
Riverside, CA 92502-1028
951-686-1450

David G. Moore
Reid & Hellyer
P.O. Box 1300
Riverside, CA 92502
951-682-1771
dmoore@rhlaw.com

Robert C. O' Brien
Arent Fox LLP
555 W. 5th Street, 48th fl.
Los Angeles, CA 90013
213-629-7400
obrien.robert@arentfox.com

C. Michael Zweiback
Alston & Bird LLP
333 S. Hope Street, 16th Fl.
Los Angeles, CA 90071
213-576-1000
michael.zweiback@alston.com

## XI. Jointly Lodged Laptop Computer

The Court is in possession of a jointly lodged laptop computer used to access the Phases 1A and 1B trial transcripts maintained by the parties. The Court will retain possession of the laptop computer until after its ruling on the motions referred to in section IX, above, and the parties are directed to follow the procedure outlined in the Court's September 9, 2008, Order regarding the e-filing of excerpts of transcripts cited in their anticipated motions.

## XII. Service of Permanent Injunction

The service of Mattel's proposed permanent injunction by the Clerk presents challenges given the limited resources of the Court. The permanent injunction, for reasons explained by Mattel on the record, attaches to it approximately 900 color copies. Accordingly, although the Court directs the Clerk to serve on all parties a copy of the permanent injunction, the Court directs Mattel, no later than ten days after the entry of this Order, to serve a copy of the permanent injunction, together with the color exhibits, on all parties.

**IT IS SO ORDERED.**

MINUTES FORM 90
CIVIL -- GEN                                    17                    Initials of Deputy Clerk: jh

EXHIBIT 27
PAGE 424

EXHIBIT 28

1   Hon. Edward A. Infante (Ret.)
    JAMS
2   Two Embarcadero Center
    Suite 1500
3   San Francisco, California 94111
    Telephone:    (415) 774-2611
4   Facsimile:    (415) 982-5287

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10                        EASTERN DIVISION

11

12  CARTER BRYANT, an individual,         CASE NO. CV 04-09049 SGL (RNBx)
13                                        JAMS Reference No. 1100049530
                 Plaintiff,
14                                        Consolidated with
         v.                               Case No. CV 04-09059
15                                        Case No. CV 05-2727
    MATTEL, INC., a Delaware corporation,
16                                        **ORDER DENYING MATTEL'S**
                 Defendant.               **MOTION TO COMPEL RESPONSES**
17                                        **TO INTERROGATORY NOS. 27-33,**
                                          **36-40, 42, 45 AND 47 BY CARTER**
18                                        **BRYANT**

19
20  CONSOLIDATED WITH
    MATTEL, INC. v. BRYANT and
21  MGA ENTERTAINMENT, INC. v. MATTEL,
    INC.
22                                        I. INTRODUCTION

23       On December 13, 2007, Mattel, Inc. ("Mattel") submitted a Motion to Compel Responses

24  to Interrogatory Nos. 27-33, 36-40, 42, 45 and 47 by Carter Bryant ("Bryant").  On December 17,

25  2007, Bryant served supplemental responses, and on December 20, 2007, Bryant submitted an

26  opposition brief.  Mattel submitted a reply on December 27, 2007.  On January 28, 2008, Bryant

27  served second supplemental responses, which he later submitted to the court on February 6, 2008.

28
    Bryant v. Mattel, Inc.,                                                    1
    CV-04-09049 SGL (RNBx)

EXHIBIT 28
PAGE 425

1   The matter was heard on February 11, 2008.

2        Mattel contends that all of the interrogatories at issue are relevant to central issues in the

3   case and that Bryant's interrogatory responses are deficient.  Mattel contends that Bryant's

4   responses include unsubstantiated boilerplate objections that should all be overruled.  In

5   particular, Mattel contends that Bryant's "unduly burdensome" objection to all interrogatories

6   asking him to state "all facts" is meritless because such contention interrogatories are commonly

7   used to elucidate facts regarding a party's contentions, and numerous courts have held them

8   proper.  Mattel also emphasizes that "[t]his is a high stakes litigation for all parties, and Bryant is

9   a defendant and central figure in it."  Mattel's Motion at p.3.  Further, Mattel contends that Bryant

10  is willfully refusing to provide complete responses to the interrogatories at issue, and therefore

11  Mattel seeks $3,000 in sanctions.

12        Bryant contends that Mattel's motion is moot because he served supplemental responses

13  to all of the interrogatories except for the one that he contends is clearly objectionable.

14  Alternatively, Bryant contends that the motion is premature because it was filed before Mattel

15  ever received, much less analyzed or sought to meet and confer regarding, his supplemental

16  responses.  Bryant requests that the court deny the motion as premature, without regard to the

17  substance of the motion, and sanction Mattel in the amount of $3,000 for failing to meet and

18  confer regarding his supplemental responses.

19        On the merits of the motion, Bryant contends that his objections should not be overruled

20  *en masse*, as requested by Mattel, because the interrogatories are defective in many respects and

21  his objections to them are specific and proper.  In particular, Bryant contends that the

22  interrogatories requiring him to "state all facts" regarding his contentions are overbroad and

23  unduly burdensome.

24                                    II. STANDARDS

25        Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain

26  discovery regarding any matter, not privileged, that is relevant to the claim or defense of any

27  party."  Fed.R.Civ.P. 26(b)(1).  Fishing expeditions to discover new claims, however, are not

28

EXHIBIT 28
PAGE 426

1    permitted.  See Fed.R.Civ.P. 26(b)(1); Rivera v. NIBCO, Inc., 364 F.3d 1057, 1072 (9th Cir.

2    2004) ("District courts need not condone the use of discovery to engage in 'fishing

3    expeditions.'"); Bernstein v. Travelers Ins. Co., 447 F.Supp.2d 1100, 1102 (N.D. Cal. 2006)

4    (citing Rule 26(b), Advisory Committee's Note to Amendments Effective December 1, 2000)

5    (Congress' changes in the language of Rule 26(c), substituting the words "claim or defense" for

6    the phrase "subject matter involved in the pending action," were intended to prevent discovery

7    that swept far beyond the claims and defenses of the parties and that seemed designed not to fairly

8    litigate the issues presented by the pleadings but to develop new claims or defenses.).

9         Further, pursuant to Rule 26(b)(2), Fed.R.Civ.P., the court shall limit the frequency or

10   extent of use of the discovery methods if the court determines that (i) the discovery sought is

11   unreasonably cumulative or duplicative, or is obtainable from some other source that is more

12   convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample

13   opportunity by discovery in the action to obtain the information sought; or (iii) the burden or

14   expense of the proposed discovery outweighs its likely benefit, taking into account the needs of

15   the case, the amount in controversy, the parties' resources, the importance of the issues at stake in

16   the litigation, and the importance of the proposed discovery in resolving the issues.  Fed.R.Civ.P.

17   26(b)(2)(C).

18        Rule 33 of the Federal Rules of Civil Procedure allows a party to propound interrogatories

19   and requires the responding party to furnish such information as is available to the party after

20   conducting a reasonable inquiry.  "Each interrogatory must, to the extent it is not objected to, be

21   answered separately and fully in writing under oath."  Fed.R.Civ.P. 33(b)(3).  "The grounds for

22   objecting to an interrogatory must be stated with specificity."  Fed.R.Civ.P. 33(b)(4).

23                                   III. DISCUSSION

24   A. Interrogatories About the Identity of Bratz Inventions (Nos. 27, 28 and 29)

25        Interrogatory Nos. 27-29 request information relating to Bratz inventions created during

26   three different time periods, specifically before, during and after Bryant's employment with

27   Mattel.  Mattel's motion to compel further responses to Interrogatory Nos. 27-29 is denied

28

EXHIBIT  28
PAGE  427

1   because the interrogatories are overbroad and unduly burdensome.  Among other things, the

2   definition of "Bratz Invention" is extremely broad, encompassing numerous intellectual property

3   concepts.  Mattel has not shown how each and every concept imbedded in its multi-faceted

4   definition of "Bratz Invention" is relevant to interpreting the term "invention" for purposes of

5   enforcing the "Employee Confidential Information and Inventions Agreement," signed by Bryant.

6   The breadth and undue burden of Interrogatory Nos. 27-29 are also compounded by the fact that

7   Mattel is employing an extremely broad definition of "Bratz Invention" in a contention

8   interrogatory seeking all facts supporting Bryant's contentions, the identities of all persons

9   knowledgeable, and all supporting documents.

10        In any event, Bryant's second supplemental responses are adequate under the

11   circumstances.  Faced with overbroad and unduly burdensome interrogatories, Bryant provides

12   facts supporting the contentions identified in the interrogatories, identifies persons with

13   knowledge of those facts, and identifies the principal documents or categories of documents that

14   support each contention.  See e.g.  Moses v. Halstead, 236 F.R.D. 667, 674 (D. Kan. 2006).  For

15   example, in response to Interrogatory No. 27, Bryant sets forth his contention that the conception

16   and/or reduction to practice of any "invention," as that term is defined in utility patent law and/or

17   the "Inventions Agreement," occurred before January 1999 and/or after October 20, 2000.  With

18   respect to design patents, Bryant contends that in or about August 1998, inspired by images he

19   was exposed to, including in the August 1998 issue of *Seventeen Magazine*, the appearance of

20   teenagers he observed at the time, as well as other images in the public domain, he conceived of

21   an idea for a line of dolls he named Bratz and sketched a series of drawings to illustrate his idea.

22   Bryant's second supplemental response to Interrogatory No. 27 also includes his contention that

23   to the extent his idea contained elements covered by design patent law, no such invention was

24   "reduced to practice" until after October 20, 2000.  Further, Bryant contends that his idea did not

25   fall within the scope of the term "invention" as used in the "Inventions Agreement."

26        Bryant also identifies portions of his deposition testimony by page and line number that

27   are relevant to Interrogatory No. 27.  Bryant also identifies numerous individuals having

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

4

EXHIBIT 28
PAGE 428

1   knowledge of the facts supporting his contentions, and describes documents and/or identifies

2   documents by bates number that are relevant to his contentions.

3        On balance, the burden of responding further to Interrogatory Nos. 27-29, as written,

4   outweighs the likely benefit of the interrogatories, taking into account the needs of the case, the

5   amount in controversy, the parties' resources, the importance of the issues at stake in the

6   litigation, and the importance of the proposed discovery in resolving the issues.

7   B. Interrogatory About the Identity of Bryant's Bank Accounts (No. 39)

8        Interrogatory No. 39 asks Bryant to identify his bank and other financial institution

9   accounts. Mattel's motion to compel a further response to Interrogatory No. 39 is denied. The

10  interrogatory is overbroad, requiring account information for any account, no matter under whose

11  name or whose benefit, that in any way mentions Bryant or reflects his existence. The

12  interrogatory also implicates Bryant's (and others) privacy interests, without reasonable

13  justification. Mattel attempts to justify Interrogatory No. 39 as seeking information relevant to a

14  host of issues, including Mattel's claims for commercial bribery and other allegedly tortious

15  conduct, the timing of Bryant's first involvement with MGA, bias and punitive damages. The

16  interrogatory, however, is not reasonably tailored to seek such information, and goes far beyond

17  what is relevant. Furthermore, to the extent Interrogatory No. 39 seeks relevant information, that

18  information is readily available through alternative less intrusive sources. For example, Bryant

19  represents that he has produced and will continue to produce his royalty statements from MGA.

20  Mattel has also had the opportunity to depose Bryant and MGA, and to obtain relevant financial

21  information from MGA. In light of the financial information Mattel has already obtained and will

22  continue to receive, Interrogatory No. 39 is unjustified, taking into consideration all of the factors

23  set forth in Rule 26(b)(2)(C), Fed.R.Civ.P.

24  C. Interrogatory about Bryant's Profits from Bratz (No. 45)

25       Interrogatory No. 45 asks Bryant to identify each "Bratz Product" that has been sold by

26  him or his licensees, and for each "Bratz Product," state (a) the number of units of each "Bratz

27  Product" sold; (b) the gross and net revenue received by Bryant from such sales; (c) all costs

28

EXHIBIT 28
PAGE 429

1  incurred in connection with each "Bratz Product"; and (d) Bryant's gross and net profits from

2  each "Bratz Product." Mattel's motion to compel a further response to Interrogatory No. 45 is

3  denied because Bryant is in substantial compliance with Rule 33. In his second supplemental

4  response, Bryant states that he has not sold any "Bratz Product" as that term is commonly defined

5  and understood or as it is specially defined by Mattel in connection with this interrogatory.

6  Bryant explains that pursuant to a contract he executed in October 2000, he transferred rights to

7  his idea for a line of dolls he had named Bratz to MGA Entertainment, Inc. Bryant also identifies

8  the contract by bates number, and explains that he is entitled to receive royalties on the sales of

9  any MGA products developed by MGA on which Bryant has provided his consulting services.

10 Further, Bryant represents that he has produced or will produce documents sufficient to show the

11 total royalties he received pursuant to his contract with MGA, and identifies numerous responsive

12 documents produced to date by bates number. To require any further response to Interrogatory

13 No. 45 would be unduly burdensome, taking into consideration all of the factors set forth in Rule

14 26(b)(2)(C), Fed.R.Civ.P.

15 D. Contention Interrogatories (Nos. 30-33, 36-38 and 42)

16      Interrogatory Nos. 30-33, 36-38 and 42 seek facts relating to several issues in this case,

17 including Bryant's contentions, if any, regarding the priority of Mattel's rights in Bratz vis-à-vis

18 MGA; the validity and enforceability of Bryant's Inventions Agreement with Mattel; Mattel's

19 alleged entitlement to injunctive relief; Mattel's alleged entitlement to punitive or exemplary

20 damages; whether Bryant acted with an innocent statement of mind; and whether the Bratz dolls

21 are not based on designs Bryant created during his Mattel employment.

22      Mattel's motion to compel further responses to Interrogatory Nos. 30-33, 36-38 and 42 is

23 denied. Bryant is in substantial compliance with Rule 33, Fed.R.Civ.P., having set forth sufficient

24 facts, identified persons with knowledge, and identified documents to support his contentions.

25 For example, in his second supplemental response to Interrogatory No. 33, Bryant incorporates by

26 reference his responses to Interrogatory Nos. 27-29, and responds further that hypothetically

27 assuming that he assigned rights to inventions related to Bratz pursuant to the "Invention

28

EXHIBIT 28
PAGE 430

1  Agreement," MGA would have superior rights in the Bratz dolls because: (1) there were no

2  "inventions" related to Bratz covered by the "Inventions Agreement" during the period of

3  Bryant's employment with Mattel; (2) the Bratz dolls that were first marketed by MGA in 2001

4  were neither substantially similar to, nor a copy of, nor derivative of, any Bratz invention that

5  hypothetically could have been assigned to Mattel pursuant to the "Inventions Agreement"; and

6  (3) Mattel is precluded from enforcing any rights it may have had to any Bratz inventions due to

7  laches, the statute of limitations, unclean hands, estoppel, waiver and consent.  Bryant also

8  identifies all persons and documents identified by MGA in its responses to this interrogatory and

9  interrogatories on related subject matter.  To require any further information would be unduly

10  burdensome, taking into consideration all of the factors set forth in Rule 26(b)(2)(C),

11  Fed.R.Civ.P.

12  E. Interrogatories About Bryant's Searches for Documents (40 and 47)

13        Mattel has propounded two interrogatories to Bryant about his searches for documents and

14  storage devices containing evidence of early work on Bratz.  Mattel's motion to compel further

15  responses to Interrogatory Nos. 40 and 47 is denied because Bryant is in substantial compliance

16  with Rule 33, Fed.R.Civ.P.  In his supplemental responses, Bryant provides responsive

17  information about an HP desktop computer and a Compaq Presario Laptop.  Bryant also identifies

18  portions of his deposition testimony by page and line number where he discusses the use of a

19  computer at his parents' home and his occasional use of Elise Cloonan's computer.

IV. CONCLUSION

21        For the reasons set forth above, Mattel's motion to compel further responses to

22  interrogatories by Carter Bryant is denied.  The parties' respective requests for sanctions are

23  denied.  Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

24  Master, Mattel shall file this Order with the Clerk of Court forthwith.

26  Dated: February 20, 2008

HON. EDWARD A. INFANTE (Ret.)
Discovery Master

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

7

EXHIBIT 28
PAGE 431

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on February 20, 2008, I served the attached ORDER DENYING MATTEL'S MOTION TO COMPEL RESPONSES TO INTERROGATORY NOS. 27-33, 36-40, 42, 45 AND 47 BY CARTER BRYANT in the within action by email addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| Matthew M. Werdegar, Esq. | Keker & Van Nest | mwerdegar@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| Audrey Walton-Hadlock, Esq. | Keker & Van Nest | awalton-hadlock@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges. | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| John Gordon | Quinn, Emanuel, Urquhart, Oliver & Hedges | johngordon@quinnemanuel.com |
| Thomas J. Nolan, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tnolan@skadden.com |
| Raoul D. Kennedy, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | rkennedy@skadden.com |
| Amy S. Park, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | apark@skadden.com |
| Harriet S. Posner, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | hposner@skadden.com |
| Carl Alan Roth, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | croth@skadden.com |
| Timothy A. Miller, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tmiller@skadden.com |
| Marcus R. Mumford, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Mmumford@skadden.com |
| Paul M. Eckles, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Paul.eckles@skadden.com |
| Lance A. Etcheverry, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Lance.etcheverry@skadden.com |
| Robert J. Herrington, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Robert.herrington@skadden.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on February 20, 2008, at San Francisco, California.

*Sandra Chan* (signature)

Sandra Chan

EXHIBIT 28
PAGE 432

EXHIBIT 29

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA  92501
CIVIL MINUTES -- GENERAL

Case No.    CV 04-09049 SGL(RNBx)                              Date: May 21, 2009
Title:      MATTEL, INC. V. MGA ENTERTAINMENT, INC., et al.
================================================================================
PRESENT:   HONORABLE STEPHEN G. LARSON, U.S. DISTRICT JUDGE

          Cindy Sasse                              None Present
          Courtroom Deputy                         Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:        ATTORNEYS PRESENT FOR DEFENDANTS:

None Present                             None Present

PROCEEDINGS:   ORDER DENYING MOTION TO MODIFY DISCOVERY MASTER ORDER
               NO. 11 (DOCKET #5185)

               ORDER GRANTING MOTION FOR LEAVE TO FILE A THIRD AMENDED
               ANSWER AND COUNTERCLAIMS (DOCKET #5143)

               ORDER DENYING EX PARTE APPLICATION FOR STAY PENDING
               APPEAL (DOCKET #5396)

               ORDER DENYING EX PARTE APPLICATION RE DISCLOSURE OF 2009
               PRODUCT LINE INFORMATION (DOCKET #5425)

               ORDER RE EXPIRATION OF TEMPORARY RECEIVERSHIP AND ORDER
               APPOINTING MGA MONITOR

               ORDER IMPOSING LIMITED AND TEMPORARY STAY OF PHASE 2 AND
               REQUIRING MANDATORY SETTLEMENT CONFERENCE

     These matters were heard on May 18, 2009.

MINUTES FORM 90                                    Initials of Deputy Clerk ___cls_____
CIVIL -- GEN                          1                 Time: 03/02

EXHIBIT 29
PAGE 433

## I. MOTION TO MODIFY DISCOVERY MASTER ORDER NO. 11

Mattel moves to overrule that portion of the Discovery Master's Order No. 11 ("Order No. 11") that concludes that witnesses Pablo Vargas San Jose ("Vargas") and Mariana Trueba ("Trueba") (collectively, "the witnesses") are not "managing agents" within the scope of Fed. R. Civ. P. 30(b)(1). The Court has reviewed Order No. 11, Mattel's Motion, the MGA parties' opposition thereto, and Mattel's reply. Applying the "clearly erroneous or contrary to law" standard of review that all parties agree is applicable here, the Court **DENIES** Mattel's Motion.

In Order No. 11, the Discovery Master acknowledged the so-called Sugarhill factors, see Sugarhill Records Ltd. v. Motown Record Corp., 105 F.R.D. 166, 170 (D.C.N.Y. 1985), which the parties agreed applied. After an ancillary discussion that concluded the witnesses were not managing agents as measured by a test similar to the Sugarhill factors, the Discovery Master either applied, or explained why his conclusion would not change if he did apply, the Sugarhill factors.[1] Those factors are:

> 1) [W]hether the individual is invested with general powers allowing him to exercise judgment and discretion in corporate matters; 2) whether the individual can be relied upon to give testimony, at his employer's request, in response to the demand of the examining party; 3) whether any person or persons are employed by the corporate employer in positions of higher authority than the individual designated in the area regarding which information is sought by the examination; 4) the general responsibilities of the individual "respecting the matters involved in the litigation," . . . and 5) whether the individual can be expected to identify with the interests of the corporation.

105 F.R.D. at 170 (internal citation omitted). The Discovery Master found that although the second and fourth factors favor designating the witnesses as managing agents, the first, third, and fifth do not.

As to the first factor, Mattel argues that the Discovery Master should have focused more on

---

[1] In the relevant portion of Order No. 11, the Discovery Master first discussed, and then rejected for reasons set forth therein, an argument advanced by Mattel that the most important Sugarhill factor was the fifth factor, the so-called "loyalty factor." He next applied an alternative test articulated by Libbey Glass, Inc. v. Oneida, Ltd., 197 F.R.D. 342, 350 (N.D. Ohio 1999), which was originally adopted by the D.C. Circuit. See id. (quoting Founding Church of Scientology of Washington, D.C., Inc. v. Webster, 802 F.2d 1448, 1452 (D.C. Cir.1986)). That test is set forth in Order No. 11 at 31, and is not repeated here. It focuses on the character of the employee's control, the convergence of interest of the employee and the corporation, and the employee's area of expertise in relation to others associated with the corporation. Libbey Glass, 197 F.R.D. at 350. This test appears to the Court to implicate, to varying degrees, all of the Sugarhill factors except the second. Because the two tests are similar, and because neither is controlling, adoption of either could not be said to be contrary to law. Notwithstanding language that may be so read, the Court does not accept the notion that Order No. 11 rejected outright the Sugarhill factors. The Court does so based on the acknowledgment that the parties agreed those factors were applicable, the similarity between the two alternative tests, and the Discovery Master's articulation regarding each Sugarhill factor. See Order No. 11 at 29-36.

MINUTES FORM 90                                    Initials of Deputy Clerk __cls_____
CIVIL -- GEN                          2            Time: 03/02

EXHIBIT __29__
PAGE __434__

whether the witnesses were managing agents as to the particular matters at issue in the lawsuit
rather than their general powers and that, in any event, the relevant time period to measure
managing agent status is not at the time of deposition but is rather at the time of the events giving
rise to the lawsuit. Although these arguments find some support, the Discovery Master's
conclusion regarding this first Sugarhill factor (and its Libbey Glass analog) is not contrary to law.
The first Sugarhill factor is clearly concerned with an employee's general power; the fourth factor,
which the Discovery Master found in favor of Mattel, focuses on the witnesses' responsibilities
regarding matters involved in the litigation. The cases cited by Mattel support its timing argument;
however, cases cited by the MGA parties establish that other cases favor a contrary position.
Neither side's authority is controlling, and the Court therefore concludes the position adopted by
the Discovery Master is not contrary to law.

    As to the third factor, Mattel argues that it was clear error for the Discovery Master to
conclude that Kuemmerle, to whom Vargas reported directly and to whom Trueba's supervisor
reported, could provide substitute testimony to them is clear error. Mattel's ultimate point is that no
one can testify more accurately and more on point than can the two witnesses regarding their
alleged trade secret theft. Again, this is not an invalid point. Indeed, it is possible that if such theft
occurred (the MGA parties deny that it did), then the witnesses did not proceed at the behest of the
MGA parties and instead acted on their own accord (the MGA parties alternatively contend).   The
fact is that if the MGA parties' alternative contention is true, then the witnesses' testimony
regarding any theft would not be on behalf of MGA at all. Who can or cannot testify about these
events that may or may not have occurred on behalf of any MGA party -- let alone who can testify
best -- is far from clear. This area of inquiry is fraught with uncertainty. The Discovery Master's
conclusion one way or another on this issue, therefore, cannot be said to be clear error. See
Wolpin v. Philip Morris Inc., 189 F.R.D. 418, 422 (C.D. Cal.1999) ("To conclude that a magistrate
judge's decision is clearly erroneous, the District Court must arrive at a definite and firm conviction
that a mistake has been committed.").

    As to the fifth factor, it was not clearly erroneous for the Discovery Master to conclude that
MGA Mexico's interests and the witnesses' interests are at odds. The witnesses are currently
employed by MGA Mexico, weighing in favor of a finding of alignment, but they have also been
subjected to criminal investigations regarding the allegations asserted in this lawsuit, and they
have separately retained counsel to represent their interests. Additionally, the MGA parties have
maintained that if any trade secret theft occurred, it occurred without their knowledge or consent.
These facts support the Discovery Master's finding.

    Weighing these factors, and taking into account the mixed burden of proof, as the Discovery
Master did, the Court cannot find that the Discovery Master's conclusion was clearly erroneous or
contrary to law, and the Court therefore **DENIES** Mattel's Motion (docket #5185).

## II. MOTION FOR LEAVE TO FILE THIRD AMENDED ANSWER AND COUNTERCLAIMS

    Mattel has filed a motion seeking leave to file its proposed Third Amended Answer and

MINUTES FORM 90                                          Initials of Deputy Clerk __cls_____
CIVIL -- GEN                              3                   Time: 03/02

EXHIBIT  29
PAGE 435

Counterclaims ("TAAC"). In substance, the TAAC adds one additional claim and a number of additional allegations. First, Mattel asserts an additional claim pursuant to California's version of the Uniform Fraudulent Transfers Act, found at Cal. Civ. Code §§ 3439 et seq. Second, Mattel avers facts that fall into the following broad categories: (1) Allegations regarding certain 2008 financial transactions that were the subject of the Forensic Auditor's Report ("the Wachovia/Omni 808 transactions"); (2) allegations regarding acts of commercial bribery relating to three Mattel seamstresses who were employed by MGA contractor Veronica Marlow; (3) allegations regarding evidence tampering, including the alleged destruction by Isaac Larian's brother Farhad of boxes of documents relating to the development of Bratz and Farhad's deletion of emails from a USB device; (4) allegations that Isaac Larian and MGA perjured themselves during their Phase 1 testimony; and (5) allegations setting forth additional predicate acts of racketeering activities, including money laundering, concealing assets, engaging in monetary transactions involving property derived from unlawful activity, commercial bribery, destruction of evidence, and obstruction of justice.

The parties, quite understandably, disagree on whether the Fed. R. Civ. P. 15(a) liberal standard or the Rule 16(b) "good cause" standard applies to the present motion. Upon the lifting of the stay on Phase 2 discovery, the Court set new dates for Phase 2 proceedings, but neglected to set a deadline for amending the pleadings related to Phase 2, leading to the present dispute. The Court now sets that deadline for three months prior to the discovery cutoff date of December 11, 2009, or September 11, 2009. Accordingly, the present motion is governed by the standard for amendments to the pleadings that are sought prior to the deadline set in the Court's Scheduling Order, which is set forth in Rule 15(a).

Pursuant to Rule 15(a), leave to amend a pleading is granted "freely . . . when justice so requires." Id.; See Foman v. Davis, 371 U.S. 178, 182 (1962). However, leave need not be granted where the proposed amendment "(1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." AmerisourceBergen Corp. v. Dialysist West, Inc., 465 F.3d 946, 951 (9th Cir. 2006).

Allegations relating to events occurring after the filing of the Second Amended Answer and Counterclaims ("SAAC") are governed not by the Rule 15(a) standard; rather, those amendments are governed by the Rule 15(d) standard. Rule 15(d) provides:

> On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense. The court may order that the opposing party plead to the supplemental pleading within a specified time.

Id. This standard, like the Rule 15(a) standard, is liberal, and leave to file a supplemental pleading is favored. Planned Parenthood of S. Ariz. v. Neely, 130 F.3d 400, 402 (9th Cir.1997). It should not, however, be used to introduce a separate, distinct, and new cause of action. Id. The goal of

MINUTES FORM 90                                          Initials of Deputy Clerk __cls_____
CIVIL -- GEN                          4                  Time: 03/02

EXHIBIT  29
PAGE 436

Rule 15(d) is to promote judicial efficiency, permitting "a court to award complete relief, or more nearly complete relief, in one action, and to avoid the cost, delay and waste of separate actions which must be separately tried and prosecuted." Keith v. Volpe, 858 F.2d 467, 473 (9th Cir.1988) (internal quotation marks and citation omitted).

The MGA parties contend the perjury allegations should not be permitted because there can be no present RICO injury (because Mattel prevailed in Phase 1) and/or no judgment has yet been entered and upheld on appeal. Additionally, they contend that perjury is not a predicate act of racketeering activity. The Court disagrees. Case law makes clear that what Mattel must show is injury as a result of the pattern of racketeering activity; Mattel need not prove that each and every predicate act itself caused harm. Corley v. Rosewood Care Center, Inc. of Peoria, 388 F.3d 990, 1004 (7th Cir. 2004) (improper for district court to hold that a RICO plaintiff be injured by every predicate act); Virden v. Graphics One, 623 F.Supp. 1417, 1425 (C.D. Cal. 1985) (a RICO plaintiff must be harmed by either a predicate act or the pattern of racketeering activity). As to the propriety of perjury as a predicate act, although perjury may not always rise to the level of a RICO predicate act, perjury in the course of a judicial proceeding, as is alleged here, is a predicate act of racketeering activity because it is obstruction of justice. See Streck v. Peters, 855 F.Supp. 1156, 1162 (D. Hawai'i,1994) (perjury during federal court proceedings is a RICO predicate act because it is indictable under the federal obstruction of justice statute).[2]

The MGA parties also that the allegations regarding the theft of trade secrets are improper because Mattel failed to allege them in the SAAC although the claims were known to them at that time. Mattel counters that, in light of the Rule 8(a) pleading standards, the Castilla allegations are already within the scope of the SAAC. See SAAC ¶¶ 79, 89-93. All that is required by Fed. R. Civ. P. 8(a) is a "a short and plain statement of the claim showing that the pleader is entitled to relief." The details are filled in by discovery, as has already occurred in this case, including Mr. Castilla's deposition. Accordingly, as the Court finds that these allegations are already within the scope of

---

[2] The MGA parties contend that this case is "unhelpful" to Mattel on this point: "The Streck court, in *dismissing* a RICO claim, simply noted that 'acts of perjury may, *under the appropriate circumstances*, constitute RICO predicate acts,' but did not discuss what those circumstances might be." Opp. at 12 n.11 (emphasis in the original) (citing Streck, 855 F. Supp. at 1162). The quotation from the Streck case is correct, and the Streck court did indeed dismiss the RICO claim (or, more precisely, granted summary judgment in favor of defendants as to the RICO claim); however, the MGA parties incorrectly state that the Streck case did not discuss under what circumstances perjury might constitute the RICO predicate act of obstruction of justice. The four sentences following the quoted portion clearly do exactly what the MGA parties claim the Streck court did not: Specifically, the Streck court distinguishes between perjury occurring in state-court proceedings (which it notes is *not* a RICO predicate act) and perjury occurring in federal-court proceedings (which it notes *is* a RICO predicate act):

[T]his Court finds that the acts of perjury which the defendants in the case at bar are alleged to have committed do not constitute RICO predicate acts. [The obstruction statute] applies only to perjury offered in federal court proceedings. Here, all of the alleged perjury took place in state court, not federal court. Thus, [the obstruction statute] is not implicated by Streck's perjury allegations.

Id. (internal citations and footnote omitted). Thus, the Streck case's relevance to the present issue is unmistakable.

MINUTES FORM 90
CIVIL -- GEN                              5

Initials of Deputy Clerk ___cls_____
Time: 03/02

EXHIBIT 29
PAGE 437

the SAAC, the Court finds that the proposed amendments are not untimely; instead, they are in the nature of "clean up" amendments that succinctly state existing issues fairly stated in the SAAC when measured by the requirements of Rule 8(a).

The amendments setting forth additional copyright registrations come as a result of the jury's Phase 1 verdict. Although in most respects the issue of copyright infringement was resolved in Phase 1, allegations regarding criminal copyright infringement, cast in the form of RICO predicate acts, are relevant to Phase 2.

The MGA parties correctly point out, and the Court is fully aware, that the proposed amendments will dramatically expand the scope of the present litigation. Admittedly, the allegations set forth in the SAAC are already varied enough in nature and broad enough in scope to strain the Court's resources and to challenge a jury's powers of comprehension; nevertheless, this is not atypical of a successfully pleaded RICO claim, which the Court has already found was stated in the SAAC, and which has the tendency to draw together a multitude of seemingly unrelated acts into one litigation.[3]

In applying the relevant standards to the present motion, the Court's decision is not influenced by a lack of evidence supporting a particular allegation. Although Mattel attaches an unprecedented amount of evidence to the proposed TAAC, it is not required to do so. See Fed. R. Civ. P. 8(a). Accordingly, Mattel's failure (in the MGA parties' eyes) to provide evidentiary support for its allegations that Jorge Castilla stole its trade secrets, that Farhad Larian destroyed evidence, and that the MGA parties engaged in commercial bribery of certain Mattel employees is not relevant to the present inquiry.[4]

Accordingly, because the Court discerns no prejudice to the MGA parties, no bad faith or undue delay on Mattel's part, and no futility as to the present amendments, the Court **GRANTS** Mattel's Motion for Leave to File the Proposed Third Amended Answer and Counterclaims (docket #5143). To ensure proper filing, Mattel is directed to, within two days of the entry of this Order, provide the Courtroom Deputy Clerk for manual filing (1) an original and a copy of the public redacted version of the TAAC, and (2) an original and a copy of the under seal version of the TAAC.

---

[3] The allegations regarding the Wachovia/Omni 808 financial transactions illustrate this potential, and the Court has considered whether the amendments should be rejected based on the notion that Rule 15(d) should not be used to introduce a separate, distinct, and new cause of action. Here, however, the Wachovia/Omni 808 financial transactions are alleged as new predicate acts in an ongoing RICO conspiracy; as such, rejection of amendments as comprising a separate, distinct, and new cause of action is not warranted.

[4] Of course, in making factual allegations, all parties remain bound by their Rule 11(b)(3) obligation to ensure that "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Moreover, whether there is evidence sufficient for a reasonable jury to find in favor of the complaining party as to a particular claim is determined after discovery, pursuant to a Rule 56 motion for summary judgment.

MINUTES FORM 90                                    Initials of Deputy Clerk __cls_____
CIVIL -- GEN                          6            Time: 03/02

EXHIBIT __29__
PAGE 438

### III. EX PARTE APPLICATION TO STAY PENDING APPEAL

The standard for granting a stay pending appeal is similar to that for a preliminary injunction. Lopez v. Heckler, 713 F.2d 1432, 1435 (9th Cir.1983). Thus, a party seeking a stay must show either (1) a likelihood of success on the merits of its appeal and the possibility of irreparable harm, or (2) that serious questions regarding the merits exist and the balance of hardships tips sharply in its favor. See Lands Council v. McNair, 494 F.3d 771, 775 (9th Cir. 2007) (noting that the alternative tests "are extremes of a single continuum in which the greater the relative hardship to the party seeking the [stay], the less probability of success must be shown.").

As the Court explained on the record, there is the potential for harm, possibly irreparable harm, to both sides, but that balance favors Mattel, for the reasons set forth in its opposition brief. See Opp. at 16-18. For reasons set forth at length in the Court's orders that are purportedly implicated by the appeal, see Notice of Appeal at 1-2 & Exs. A-R (docket #5340), the Court does not find a likelihood of success on the merits of its appeal.

Accordingly, the Court **DENIES** the MGA parties' Ex Parte Application and Motion to Stay.

The Court understands from the report of the Temporary Receiver that its previous Orders regarding a partial stay of enforcement of the Court's December 3, 2008, need clarification, as does the issue of the scope of the profits that are subject to the constructive trust imposed by the Court on December 3, 2008.[5]  Accordingly, to assist the newly appointed Monitor, see infra, the Court provides the following guidance regarding its rulings and sets a briefing schedule as detailed below:

(1) **Older Inventory**:  The MGA parties and others in the distribution chain may sell all 2009 Bratz products up through and including January 21, 2010.  The older inventory of Bratz products may likewise be sold, unless the Monitor determines that those sales tend to, in his reasoned judgment, diminish the value of the Bratz brand, in which case he should so report to the Court in an expeditious manner.

(2) **Profits**:  The Court's Permanent Injunction Order found that all the female fashion dolls that use the "core Bratz fashion doll production sculpt" or the "Bratz movie sculpt" were subject to the injunction; the Courts' Constructive Trust imposed a constructive trust over, inter alia, "all trademarks, service marks and domain names[,] . . . that include the terms 'Bratz' or 'Jade.'"  In order to provide meaningful guidance to the parties, the Monitor, and their accountants, the parties may brief, and the Court will resolve, the issue of the scope of the profits that must be turned over by MGA and held by the Monitor pursuant to these Orders and any other Order of this Court.  The parties' simultaneous opening briefs (not to exceed 25 pages) shall be filed no later than

---

[5] This is largely due to the fact that, in issuing its December 3, 2008, order providing injunctive relief, the Court did not foresee that it would be subsequently modified by the January 7, 2009, Order staying enforcement pending sale of the 2009 Bratz line.

MINUTES FORM 90
CIVIL -- GEN                                      7

Initials of Deputy Clerk __cls_____
Time: 03/02

EXHIBIT **29**
PAGE **439**

Wednesday, May 27, 2009; simultaneous responsive briefs (not to exceed 25 pages) shall be filed no later than Friday, May 29, 2009, at which time the Court will take the matter under submission and issue an order as expeditiously as possible.

## IV. EX PARTE APPLICATION RE DISCLOSURE OF
## 2009 PRODUCT LINE INFORMATION (DOCKET #5425)

In light of the Court's denial of the Ex Parte Application for Stay Pending Appeal, the ex parte application seeking production of the 2009 Bratz line and the new MGA products is moot, and it is **DENIED** for that reason. Nevertheless, because it is in the interest of all parties to expeditiously resolve outstanding issues regarding MGA's new "Moxie" line of dolls, counsel for Mattel and the MGA parties are directed to meet and confer in an expeditious manner regarding those dolls.

## V. ORDER RE EXPIRATION OF TEMPORARY RECEIVERSHIP
## AND ORDER APPOINTING MGA MONITOR

The Court previously issued, on April 27, 2009, an Order to Show Cause re Appointment of Permanent Receiver. In response, the Temporary Receiver, the parties and the Court-appointed Forensic Auditor have filed, and the Court has reviewed, the following documents: (1) The Report and Recommendations of Patrick A. Fraioli, Jr., Temporary Receiver; (2) the Responsive Report of Court-appointed Forensic Auditor Ronald Durkin; and (3) all documents filed in support of the Appointment of a Permanent Receiver and in opposition thereto, including the Statement of Position filed by Omni 808. In consideration of these filings, and after hearing on these matters, as detailed in the following subsections, the Court declines to appoint a Permanent Receiver, confirms the expiration of the temporary receivership, orders the filing of an accounting of the temporary receivership, and appoints an MGA Monitor to effectuate the Court's prior Orders.

### A.   Expiration of Temporary Receivership

**IT IS ORDERED THAT:**

1.   The period of the Temporary Receivership imposed by this Court on April 27, 2009 has expired;

2.   The Court declines to appoint a Permanent Receiver over MGA Entertainment, Inc. or MGA Hong Kong ("MGA");

3.   The Court reserves jurisdiction to appoint a Receiver in the future, as it deems appropriate;

4.   The Temporary Receiver, Patrick A. Fraioli, Jr., is hereby directed to prepare and file with the Court a final report including a final accounting and application for fees and

EXHIBIT __24__
PAGE __440__

costs, on or before May 28, 2009;

5.   The Court hereby lifts the Injunction against Omni 808's enforcement of its rights as a creditor against MGA, and **ORDERS** that should Omni 808 take any action to enforce its rights as a creditor against MGA, such action shall be filed and heard in the Central District of California;

6.   Based on MGA's representations to the Court that, should MGA file for bankruptcy protection under Title 11 of the United States Code, it shall do so in the Central District of California, and having previously found in its April 27, 2009, Order appointing a Temporary Receiver that MGA is domiciled in California and have their principal place of business in the Central District of California and have the majority of their assets located within the Central District of California, the Court hereby lifts the Injunction against MGA filing bankruptcy without permission of the Court, but **ORDERS** that any bankruptcy filing by MGA or any of its affiliates shall be filed in the Central District of California.

**B.**   **Appointment of MGA Monitor**

1.   For good cause shown, pursuant to the alternative recommendation of the MGA parties, and in lieu of appointing a Permanent Receiver at this time, the Court appoints Patrick A. Fraioli, Jr., Monitor, who shall have the power to take any and all action that he deems necessary, appropriate, or advisable to effectuate the purposes of the Monitorship, including but not limited to the following:

   a.   The Monitor shall maintain monitoring, supervisory, and oversight responsibilities over the Bratz Assets;[6]

---

[6] In light of the issue regarding the scope of profits that must be accounted for, see supra section III, and because the amount of access that must be given to the Monitor almost certainly extends beyond the materials that must be turned over to Mattel and may, depending on the resolution of the issue identified above, extend beyond the products for which profits must be held in constructive trust as a result of the Court's December 3, 2008, Orders, setting forth a workable definition of "Bratz Assets" that applies in all instances is challenging. Nonetheless, the Court so defines that term at this time in order to provide to the Monitor and the parties meaningful guidance on the issue of Monitor access to facilities and information. The Court admonishes all counsel that this definition should not be taken out of its current context and may very well be further modified, for purposes of both turn-over and the constructive trust, following resolution of the issue identified above.

   Bratz Assets include all tangible or intangible assets, including, without limitation, all intellectual property necessary or materially useful for the design, manufacture, marketing, distribution and sale of any Bratz doll or other Bratz-branded product in the possession, custody or control (whether or not claimed to be encumbered by any security interest) of any of the MGA Defendants.  The Bratz Assets include, without limitation:

   a. All Bratz-related intellectual property rights, including, without limitation, copyrights (whether or not registered); copyright registrations; moral rights; design rights; patents (issued and pending); service marks; trademarks; tradedress; designs; slogans; characters; product packaging in any medium; product names; product

MINUTES FORM 90                                          Initials of Deputy Clerk __cls_____
CIVIL -- GEN                         9                         Time: 03/02

EXHIBIT **29**
PAGE **441**

      b.      The Monitor shall monitor, supervise, and oversee the exploitation of the Bratz Assets;

      c.      The Monitor shall have the power and authority to monitor the financial affairs and operations[7] of MGA Entertainment, Inc. and MGA Hong Kong (collectively, "MGA") as the Monitor deems appropriate in order to carry out the duties specified herein;

      d.      The Monitor shall monitor compliance by the parties with this Court's Injunction and other Orders as directed by the Court, specifically this Court's December 3, 2008, Order Granting Mattel, Inc.'s Motion for Permanent Injunction, January 7, 2009, Order re Modification and Stay of Permanent Injunction Order, and April 27, 2009, Omnibus Order (the "Injunction Orders");

---

illustrations; product designs; product concepts; conceptual drawings; engineering drawings; engineering specifications; processes; methods; trade secrets; know-how; product ideas; prototypes; line extensions; domain names; marketing and advertising materials; commercials; style guides; theme songs; soundtracks; scripts; screenplays; computer programming; digital and internet rights; video games; theatrical, television, video and DVD rights and masters; and rights in future technologies.

    b. All Bratz-related tooling for all past, current and future lines, including without limitation tools, tooling, in process tools, molds, sculptures, models, dies, and mock-ups, as well as other Bratz-related tangible items.

    c. All Bratz-related marketing and sales assets for all past, current and future lines, including, without limitation, consumer lists, marketing plans, account plans, focus group studies, marketing databases, and other consumer and marketing research.

    d. All Bratz-related records, including, without limitation, contracts, manufacturing records, inventory records and data, sales records and data, product testing data and records, vendor list and records, customer communications, and invoices and purchase orders.

    e. All Bratz-related contracts and agreements, including, without limitation, assignments, work-for-hire agreements and licensing agreements.

    f. All other Bratz-related rights, including, without limitation, distribution rights, licensing rights, exploitation rights, accounts receivable, and all choses in action relating to Bratz or the Bratz brand.

    g. All Bratz-related items referenced at Paragraph 3 and Paragraph 8 (at lines 15-19) of the Court's Order granting Mattel's Motion for Permanent Injunction (Docket No. 4443).

    h. "Bratz-related" as used in this definition, is a broad term, that applies to all products, property, and information that bears the "Bratz" trademark. It is expressly not limited to the Bratz female fashion dolls, and includes such products as the Bratz boy dolls, Baby Bratz, and Bratz Kidz.

    [7] Toward that end, the Monitor shall have full and complete access to all Bratz assets (wherever they may be found), all MGA business premises, all MGA facilities (including manufacturing and storage facilities), all real and personal MGA property (including computers), all MGA employees, all MGA information (including financial and operational information), and all MGA books and records.

EXHIBIT 29
PAGE 442

e.  At the appropriate time, the Monitor shall direct the MGA turnover to Mattel of any of the Bratz Assets subject to recall, impoundment, or destruction, as set forth in this Court's Injunction Orders of December 3, 2008, and as otherwise directed by the Court;

f.  The Monitor shall establish such bank accounts as the Monitor deems necessary or convenient to carry out the Monitor's duties under this Order;

g.  The Monitor shall collect from MGA, on a monthly basis, the amount of net profits derived by MGA from exploitation of the Bratz Assets during the preceding month, as well as an accounting setting forth the basis for the calculation of the net profits and the supporting documentation establishing such basis.  The Monitor shall retain these funds pending further order of this Court;[8]

h.  The Monitor is ordered and directed to obtain from MGA, and to make available to Mattel, as set forth herein, such of the Bratz Assets, and related information about the content of the Fall, 2009 Bratz line being produced and sold by MGA pursuant to this Court's Injunction Orders, as are necessary to enable Mattel to begin preparation of its own Bratz line for the Spring, 2010 sales season;

I.  The Monitor shall monitor, supervise and oversee, with authority to approve or disapprove, the following categories of financial transactions of MGA: Inter-company transfers of any amount, payments by MGA or any MGA affiliate to any related parties in excess of $50,000.00 per payment, and any payments to Omni 808;

j.  The Monitor shall file monthly reports with the Court, under seal (but served on all parties), setting forth the Monitor's activities, actions and recommendations. Nothing herein shall prevent the Monitor from filing other reports, as he deems appropriate.  As in the case of the Court-appointed Settlement Officer and Discovery Master (and as previously with the Court-appointed Temporary Receiver), the Monitor may report orally to Court concerning matters of procedure; however, any substantive inquiries or reports shall be submitted in the first instance to the Court in writing.  The Court shall determine, whether and, if so, with what restrictions, the Monitor's reports shall be served on parties and their counsel;

---

[8]  The Court recognizes that resolution of the issue identified in section III, supra, will greatly impact on the amount of profits that must be turned over by MGA (see infra ¶ 2) and retained by the Monitor; accordingly, it is the Court's intention to resolve the issue as expeditiously as possible and, in any event, prior to the first turnover of profits on June 22, 2009.

MINUTES FORM 90
CIVIL -- GEN                                11                    Initials of Deputy Clerk __cls_____
                                                                 Time: 03/02

EXHIBIT 29
PAGE 443

k.  The Monitor may retain and/or engage the services of advisors and/or professionals, including, without limitation, accountants, attorneys, consultants and experts to assist the Monitor in carrying out his duties and responsibilities under this Order. The Monitor, without further order of this Court, is authorized to employ Ervin, Cohen & Jessup LLP, and the accounting firm of Crowe Horwath LLP, to assist him in his duties. Nothing herein shall prevent the Monitor from utilizing the same advisors and professionals as rendered services to the Temporary Receiver before the appointment of the Monitor;

l.  The Monitor may hire and employ individuals and entities as necessary or advisable to carry out the Monitor's duties under this Order;

m.  The Monitor, his employees and agents, as well as any and all of the professionals employed by the Monitor, are entitled to compensation for services rendered at their normal hourly rates and reimbursement for all expenses incurred by them in providing services to the Monitor. The Monitor shall submit to the Court, *in camera*, monthly requests for approval of payment. Upon Court approval, the Monitor shall serve on the Parties, but not file, Notice of Court Approval of Request for Payment of Interim Fees and Costs of Monitorship, along with a summary statement of the fees and costs;

n.  The Monitor shall have the status of an officer and agent of this Court, and as such shall be vested with the same immunities as enjoyed by this Court. Neither the Monitor nor any person or entity acting at the direction of the Court or pursuant to agreements with the Monitor (whether employees, vendors, contractors or otherwise) may be held liable to any party for any acts taken in good faith in compliance with this Order, including but not limited to claims of alleged copyright infringement, trademark infringement, or other alleged causes of action;

o.  Nothing herein shall alter or affect the right of Mattel to take any and all actions relating to the Bratz Assets or the Bratz brand which it otherwise lawfully could take, including, without limitation, the institution, maintenance and prosecution of legal proceedings anywhere in the world or other proceedings before any governmental or tribunal or arbitration panel;

p.  The Court shall retain jurisdiction over the Monitorship for the duration of its existence.

q.  No bond shall be required in connection with the appointment of the Monitor. Except for acts of gross negligence, the Monitor and his agents and employees shall not be liable for loss or damage incurred by any party to this action or their officers, agents, servants, employees, attorneys or others by virtue of any act performed or omitted to be performed by the Monitor in connection with the discharge of his duties and responsibilities.

EXHIBIT 29
PAGE 444

2.   Unless otherwise directed by the Court, MGA is **ORDERED** to turn over to the Monitor, on a monthly basis, the amount of net profits derived by MGA from exploitation of the Bratz Assets during that month, as well as an accounting setting forth the basis for the calculation of the net profits and the supporting documentation establishing such basis. The Monitor and his accountants shall review the accountings, and any related submissions of the Court or Monitor by Mattel, and shall report and recommend to the Court as directed on any disputes arising therefrom. MGA shall make its first turnover and accounting by June 22, 2009, which shall cover the period from the return of the jury verdict in this case through May 31, 2009, and this shall constitute compliance with section V of the Court's April 27, 2009, Order. Each month thereafter, the turnover and accounting shall be made by the 10th day of the month, for the prior month period.

3.   MGA shall immediately make available to the Monitor, for transfer to Mattel, such portion of the Bratz Assets necessary to enable Mattel to begin preparation of its own Bratz line for the Spring, 2010 sales season.  MGA shall also provide to the Monitor for delivery to Mattel such related information about the content of the Fall, 2009, Bratz line being produced and sold by MGA pursuant to this Court's Injunction Orders to enable Mattel to make appropriate commercial determinations about the content of its own Spring, 2010, Bratz line.

4.   No action may be filed against the Monitor, or any of his agents or employees, for any actions taken in this case, without prior permission of this Court.

5.   For the duration of Monitorship, Mattel is directed to pay to the Monitor, in the manner directed by the Monitor, the fees and costs of the Monitorship within five (5) days of receipt of the Notice of Court Approval of Request for Payment of Interim Fees and Costs of Monitorship. All interim fees paid shall be subject to final review and approval by this Court. This Court retains jurisdiction to award a greater or lesser amount as the full, fair, and final value of such services.

6.   Any party may later apply to the Court for relief related to any profit calculations or profits turned over to the Monitor, or for relief related to the allocation of payment of the fees and costs of the Monitorship, as well as for the previously imposed Temporary Receivership.

7.   All Parties and their employees, agents and attorneys are ordered to cooperate fully with the Monitor.

## VI.  IMPOSING LIMITED AND TEMPORARY STAY OF PHASE 2

At the May 18, 2009, hearing, the Court heard from the Court-appointed Settlement Officer, who advised the Court that a settlement conference was scheduled for June 1, 2009.  The Settlement Officer believes that settlement negotiations continue to be of value, and has recommended that the Court consider the judicial officer's participation in those settlement

MINUTES FORM 90                                          Initials of Deputy Clerk __cls_____
CIVIL -- GEN                        13                        Time: 03/02

EXHIBIT  19
PAGE 445

negotiations -- a proposal to which no party offered objection.

The Court heard from the parties regarding whether a stay of Phase 2 discovery should be imposed to assist in settlement efforts.  Counsel for MGA advocated for a four-month stay. Counsel for Mattel cautioned against a stay, outlining for the Court the various positions taken by the MGA parties as to how the Court's previous stay limited or altered their responsibility to comply with previously set deadlines.

Mindful of the concerns expressed by Mattel, the Court nevertheless imposes a stay of Phase 2 discovery that is strictly limited in scope and duration.  The parties shall, notwithstanding the stay, meet and confer regarding the Moxie issue set forth in section IV.  Moreover, notwithstanding any other provision of this Order, the MGA parties are not relieved of their responsibility to produce, on or before the currently imposed deadline, their responses the Interrogatories to which counsel for Mattel referred during the hearing.

The stay of discovery, as limited, is imposed up to and including June 12, 2009.  Unless otherwise extended by the Court or the Discovery Master, the deadlines for all discovery responses that have previously been ordered are extended for a period, measured by calendar days, not longer than the total number of calendar days the stay of discovery is imposed.  For purposes of this date calculation, both the beginning date of the stay (May 18, 2009) and the ending date (June 12, 2009) are to be included.  Similarly, the deadline for responding to discovery requests that have been propounded, but to which responses are not yet due, is extended for the same period of calendar days.  If depositions are scheduled during this time period, they must be rescheduled for a date certain no later than the currently scheduled date plus the number of calendar days for which the stay of discovery is imposed.

The Court further **ORDERS** the parties to participate in a Mandatory Settlement Conference ("MSC") on or about June 1, 2009 (to be coordinated by the Court-appointed Settlement Officer). Those attending the MSC shall include the chief executive officers or equivalent of Mattel, MGA, and Omni 808; the chief financial officers or equivalent of Mattel, MGA, and Omni 808; in-house counsel of Mattel and MGA; and lead counsel of record for each party.  Following the MSC, the Settlement Officer shall report to the Court on the status of settlement efforts.  If the parties fail to reach a full and complete settlement, the Court shall, pursuant to the parties' agreement and waiver of any conflict issues, conduct a settlement conference beginning on June 10, 2009, at 10:00 am.

## VII. NOTICE OF INTENT TO UNSEAL FORENSIC AUDITOR REPORTS

In light of Omni 808's emphatic public criticism of the Court-ordered Forensic Auditor's April 23, 2009, Report, the contents of which were expressly ordered by this Court to be maintained by the parties under seal, and the contents of which, to the Court's knowledge, were in fact maintained under seal until the filing of The Statement of Position of Omni 808 Investors, LLC, filed on May 14, 2009, it is the Court's intention to release the April 23, 2009, Summary Report (together with its Exhibits that have been redacted for privilege), absent sustained objections

MINUTES FORM 90                                         Initials of Deputy Clerk __cls_____
CIVIL -- GEN                              14              Time: 03/02

EXHIBIT  29
PAGE 446

thereto by the MGA parties.[9]

At this time, the Court **ORDERS** that the May 17, 2009, Responsive Forensic Auditor Report, maintained by the Court until this time *in camera* be released under seal to the parties.[10] The May 17, 2009, Responsive Report shall, pending resolution of any objections to its disclosure by the MGA parties, remain under seal, and distribution shall be limited to parties, their attorneys (whether or not the attorneys are of record), any Court-appointed officers, and, as necessary, the parties', attorneys', and officers' staff.

Within five days of the entry of this Order, the MGA parties, including Mr. Larian, may file, under seal, specific and supported objections to the release of the Summary Report or the Responsive Report. In the same time frame and manner, any party may object to the release of specific identifying information contained in the exhibits of the report than have the tendency to reveal personal identifying information such as social security numbers, tax identification numbers, or bank account numbers. Within two days, any party may respond to these objections. No hearing will be held unless the Court orders otherwise.

**IT IS SO ORDERED.**

---

[9] Despite an express Order of this Court to maintain the Summary Report and its exhibits under seal, counsel for Omni 808 revealed the Report's contents in Omni 808's Statement of Position. Similarly, counsel for Mattel also revealed certain contents of the Receiver's Report and Recommendation regarding MGAE's liquidity and solvency, also released under seal. All counsel are reminded of their responsibilities to maintain information under seal. Unless otherwise ordered, the Court's hearings are open to the public. The Court does not close hearings unless and until requested to do so by one or more of the parties, and only then does so when and to the extent that such closure is justified when counterbalanced with important First Amendment concerns.

[10] Sua sponte, the Court has already redacted certain portions of the Forensic Auditor's Responsive Report on the basis that the emails reflect highly personal electronic conversations between Mr. Larian, Mr. Kadisha, and their spouses.

MINUTES FORM 90                                                    Initials of Deputy Clerk __cls_____

CIVIL -- GEN                                    15                    Time: 03/02

EXHIBIT 29
PAGE 447

EXHIBIT 30

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
       John B. Quinn (Bar No. 090378)
2      johnquinn@quinnemanuel.com
       Michael T. Zeller (Bar No. 196417)
3      (michaelzeller@quinnemanuel.com)
       Jon D. Corey (Bar No. 185066)
4      (joncorey@quinnemanuel.com)
    865 South Figueroa Street, 10th Floor
5  Los Angeles, California 90017-2543
    Telephone:  (213) 443-3000
6  Facsimile:   (213) 443-3100

7  Attorneys for Mattel, Inc.

8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10                         EASTERN DIVISION

11  CARTER BRYANT, an individual,        CASE NO. CV 04-9049 SGL (RNBx)

12                Plaintiff,             Consolidated with
                                         Case No. CV 04-09059
13        vs.                            Case No. CV 05-02727

14  MATTEL, INC., a Delaware             **DISCOVERY MATTER**
    corporation,
15                                       **[To Be Heard By Discovery Master**
                  Defendant.             **Hon. Edward Infante (Ret.) Pursuant To**
16                                       **The Court's Order Of December 6, 2006]**

17  AND CONSOLIDATED ACTIONS             MATTEL, INC.'S NOTICE OF MOTION
                                         AND MOTION TO COMPEL
18                                       PRODUCTION OF METADATA; AND

19                                       MEMORANDUM OF POINTS AND
                                         AUTHORITIES
20
                                         [Declaration of B. Dylan Proctor filed
21                                       concurrently herewith]

22                                       Hearing Date:      TBD
                                         Time:              TBD
23                                       Place:             TBD

24                                       Discovery Cut-off:   January 28, 2007
                                         Pre-trial Conference: May 5, 2008
25                                       Trial Date:          May 27, 2008

26

27

28

07209/2298724.2

                        MATTEL'S MOTION TO COMPEL PRODUCTION OF METADATA

EXHIBIT 20
PAGE 448

1   TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2           PLEASE TAKE NOTICE that at a telephonic conference before

3   Discovery Master Hon. Edward Infante (Ret.) that will occur on a date and at a time

4   to be determined by Judge Infante, plaintiff Mattel, Inc. ("Mattel") will, and hereby

5   does, move the Court to compel MGA Entertainment, Inc. ("MGA") to produce

6   specified e-mails in their native, electronic format, and for sanctions.

7           This Motion is made pursuant to <u>Federal Rules of Civil Procedure</u> 34

8   and 37 on the grounds that Mattel's Requests for Production seek discoverable

9   information, including electronic information, and MGA has failed to produce

10   documents in response thereto without justification.

11           This Motion is based on this Notice of Motion and Motion, the

12   accompanying Memorandum of Points and Authorities, the Declaration of B. Dylan

13   Proctor filed concurrently herewith, the records and files of this Court, and all other

14   matters of which the Court may take judicial notice.

15               **Statement of Rule 37-1 Compliance**

16           The parties met and conferred regarding this motion on August 29,

17   2007 and times thereafter, including with MGA's substituted counsel after the

18   expiration of the stay on November 16, 2007 and November 21, 2007.

19

20   DATED:  November 21, 2007      QUINN EMANUEL URQUHART OLIVER &
                                   HEDGES, LLP

21

22                   By /s/ B. Dylan Proctor /HH

23                       B. Dylan Proctor
                      Attorneys for Mattel, Inc.

24

25

26

27

28

1

## TABLE OF CONTENTS

2
Page

3

4   Preliminary Statement .................................................................................................. 1

5   Statement of Facts....................................................................................................... 2

6   Argument ..................................................................................................................... 5

7   I.      THE COURT SHOULD COMPEL MGA TO PRODUCE THE
            REQUESTED DOCUMENTS IN THEIR NATIVE FORMAT,
8           INCLUDING ALL METADATA ....................................................................... 5

9           A.      The Information Contained in the Metadata of these Documents
                    Is Relevant to Mattel's RICO Claims........................................................ 5
10
            B.      MGA Is Obligated to Produce These Electronic Documents................. 6
11
            C.      Any Burden This Production Places on MGA Is Minimal...................... 7
12
     II.    MGA SHOULD BE SANCTIONED................................................................. 8
13
     Conclusion ................................................................................................................... 9
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT 30
PAGE 450

1

# TABLE OF AUTHORITIES

2                                                                              **Page**

3

## Cases

4

5    Braley v. Campbell,
       832 F.2d 1504 (10th Cir. 1987)...............................................................9

6    Hyde & Drath v. Baker,
7      24 F.3d 1162 (9th Cir. 1994)..................................................................8

8    Musick v. Burke,
       913 F.2d 1390 (9th Cir. 1990).................................................................5

9    Playboy Enterprises, Inc. v. Welles,
10     60 F. Supp. 2d 1050 (S.D. Cal. 1999) ....................................................7

11   RTC v. Dabney,
       73 F.3d 262 (10th Cir. 1995)...................................................................9

12
     Simon Property Group v. Simon, Inc.,
13     194 F.R.D. 639 (S.D. Ind. 2000).............................................................7

14   United States v. Daniel,
       329 F.3d 480 (6th Cir. 2003)...................................................................6

15

16   Williams v. Sprint/United Management Company,
       230 F.R.D. 640 (D. Kan. 2005)...........................................................6, 7

17   Zubulake v. UBS Warburg LLC,
18     217 F.R.D. 309 (S.D.N.Y. 2003)............................................................6

19

## Statutes

20   28 U.S.C. § 1927.......................................................................................8

21   18 U.S.C. § 1962(c).................................................................................5

22   Fed. R. Civ. P. 26(b)(1)...........................................................................6

23   Fed. R. Civ. P. 34..............................................................................2, 6, 7

24   Fed. R. Civ. P. 37(a)(4)...........................................................................8

25

26

27

28

EXHIBIT 20

PAGE 451

1
2

# MEMORANDUM OF POINTS AND AUTHORITIES

3

## Preliminary Statement

4      Once again, Mattel requests the Court's assistance in compelling MGA
5  to produce obviously relevant and discoverable information. Indeed, MGA agreed
6  to produce it on numerous occasions but has not done so.

7      Mattel has been seeking "metadata" from certain electronic mail
8  communications that shows from where an e-mail was sent from and was sent to --
9  information that is not contained in the produced, printed versions of these e-mails.
10 As is undisputed, this metadata is relevant to Mattel's allegation that certain counter-
11 defendants sent various e-mails in furtherance of their criminal conspiracy *across*
12 *state or international borders* -- activities that constitute predicate acts of wire fraud
13 underlying Mattel's RICO claims. Nor has MGA disputed that the requested
14 information is discoverable. In fact, after numerous requests by Mattel and several
15 meet and confers, MGA long ago agreed to produce the native, i.e. electronic,
16 versions of each of these e-mails that contain the requested metadata by October 1,
17 2007. Nevertheless, despite the fact that it was first requested by Mattel on August
18 21, 2007, MGA has not done so and now declines to even provide Mattel with a date
19 on which it will commit (again) to finally produce these electronic files.

20     MGA has repeatedly represented to the Court and Mattel that it has
21 preserved all of the electronic documents that are potentially relevant to this dispute.
22 If true, MGA accordingly possesses the metadata for these electronic files that
23 Mattel seeks to prove its claims. Each and every e-mail Mattel requests was either
24 sent or received by at least one MGA employee. MGA should be compelled to
25 produce without further delay these documents in their native or electronic format,
26 with full "e-mail header" information to show the "IP addresses" to which e-mails
27 have traveled.

28

07209/2298724.2

-1-

1

## Statement of Facts

2          MGA Agrees to Produce Relevant Documents in Their Native,

3  Electronic Format.  On August 21, 2007, Mattel requested copies of specified e-

4  mails "in their native format, including all metadata and the full e-mail header

5  information," as well as a meet and confer on the subject of MGA's production.[1]

6  Mattel specifically identified by Bates number each of the e-mails for which it was

7  requesting metadata.[2]

8          The following day, MGA responded by e-mail that they were

9  "researching the documents" and would respond to Mattel at a later date.[3]  On

10  August 28, 2007, because MGA had not responded further, Mattel sent a second

11  letter requesting a meet and confer.[4]  The parties met and conferred on August 29,

12  2007.  At that time, Mattel informed MGA that all of the e-mails it sought were

13  included in Exhibit C of Mattel's Second Amended Answer and Counterclaims and

14  that it would accept, at least as an initial matter, the production of each e-mail in its

15  native format from *any* source where the e-mail can be located, i.e. from the

16  electronic file of any recipient or sender of a given e-mail, in order to minimize any

17

18

---

19      [1]  Letter from Dylan Proctor to Jim Jenal, dated August 21, 2007, at 1-2,

20  attached as Exh. 1 to the Declaration of B. Dylan Proctor in Support of Mattel's
   Motion to Compel Documents, dated November 21, 2007 ("Proctor Dec."), Exh. 1.

21      [2]  Id.  The next day, Mattel clarified that it was not seeking certain of the

22  documents, which were inadvertently included in Mattel's request.  E-mail from
   Proctor to Jenal, dated August 22, 2007, Proctor Dec., Exh. 2.

23      [3]  E-mail from Jenal to Proctor, dated August 22, 2007, Proctor Dec., Exh. 2.

24  MGA also inquired as to why some of the requested documents were identified with
   an "M" bates number, rather than an "MGA" one.  Id.  Mattel sent a reply e-mail

25  that although some of these "M" documents were included inadvertently, others

26  were e-mails between MGA and Gustavo Machado Gomez, Pablo Vargas San Jose,
   and Mariana Trueba, that Mattel had produced.  E-mail from Proctor to Jenal, dated

27  August 22, 2007, Proctor Dec., Exh. 2.

28      [4]  Letter from Proctor to Jenal, dated August 28, 2007, at 1, Proctor Dec., Exh. 3.

-2-

1    arguable burden this production would place on MGA.[5]  MGA promised to

2    investigate.[6]  On September 10, 2007, Mattel received a letter from MGA requesting

3    that Mattel provide twenty documents that Mattel had already produced in printed

4    form "in their native format, including all metadata and the full e-mail header

5    information"[7] -- information Mattel has since produced.[8]

6             Then, during a follow-up meet and confer on September 14, 2007,

7    MGA agreed to produce all of the e-mails requested by Mattel in their electronic

8    format, *with full e-mail header information*, on or before October 1, 2007.[9]

9             MGA Fails to Produce as Promised.  On October 3, 2007, when these

10   electronic documents were already past due,  MGA produced a chart containing

11   what it claimed to be "the metadata MGA was able to retrieve," rather than the files

12   themselves.[10]  This chart did not contain the e-mail header information that was

13   promised by MGA and requested by Mattel.[11]  As a result, the chart produced by

14   MGA was of little use for proving from where, or to where, these e-mails were

15   sent.[12]  In addition, the chart contained no information whatsoever for some of the

16   requested e-mails which had been sent to or from MGA employees in 2004.[13]  MGA

17

18

19

20   [5]  Letter from Proctor to Jenal, dated August 30, 2007, at 2, Proctor Dec., Exh. 4.
     [6]  Proctor Dec., ¶ 6.

21   [7]  Letter from Chris Nguyen to Proctor, dated September 10, 2007, Proctor Dec.,

22   Exh. 5.
     [8]  Proctor Dec., ¶ 7.

23   [9]  Letter from Proctor to William J. Charron, dated September 14, 2007, at 1,

24   Proctor Dec., Exh. 6.
     [10]  See Letter from Nguyen to Proctor, dated October 3, 2007, Proctor Dec., Exh.

25   7.

26   [11]  See id.
     [12]  Proctor Dec., ¶ 9.

27   [13]  See Letter from Chris D. Nguyen to Proctor, dated October 3, 2007, Proctor

28   Dec., Exh. 7.

07209/2298724.2

-3-
EXHIBIT 80
PAGE 454

1  offered no explanation why it had produced this chart in lieu of the electronic files it

2  had promised.[14]

3          After Mattel explained to MGA that the chart was inadequate,[15] MGA

4  again assured Mattel that it would provide the electronic version of each of the

5  requested e-mails MGA possessed, and represented that it would investigate how

6  long this would take.[16] On October 12, 2007, prior counsel for MGA withdrew.[17]

7  On October 14, 2007, Mattel sent an e-mail to MGA's new counsel that catalogued

8  some of the discovery MGA owed Mattel, including the overdue electronic

9  documents.[18] Mr. Nolan informed Mattel that he would "look into" these matters.[19]

10  Since nothing further was heard from MGA on this subject, Mattel sent an

11  additional letter on October 29, 2007, identifying categories of discovery that MGA

12  still owed Mattel, including the electronic files MGA agreed to produce.[20]

13          On November 16, 2007, counsel for Mattel again met and conferred,

14  this time with MGA's new counsel.  MGA stated it was inclined to produce the

15  electronic version of these documents, including all metadata, was investigating

16  what would be involved in such a production, and would follow up with Mattel

17

18

19

20

---

[14]  See id.

21  [15]  E-mail from Proctor to Charron, dated October 4, 2007, Proctor Dec., Exh. 8.

22  [16]  E-mail from Proctor to Charron, dated October 8, 2007, Proctor Dec., Exh. 9.

[17]  Request for Approval of Substitution of Attorney and Order, dated October

23  12, 2007, Proctor Dec., Exh. 10.

[18]  E-mail from Jon D. Corey to Thomas J. Nolan, dated October 14, 2007,

24  Proctor Dec., Exh. 11.

25  [19]  E-mail form Nolan to Proctor and Corey, dated October 14, 2007, Proctor

26  Dec., Exh. 12.

[20]  Letter from Zeller to Nolan, dated October 29, 2007, at 6, Proctor Dec., Exh.

27  13.

28

-4-

MATTEL'S MOTION TO COMPEL PRODUCTION OF METADATA

EXHIBIT 9

PAGE 455

1  during a scheduled teleconference on November 21, 2007.[21]  However, Mattel has

2  still not received these documents, let alone a date by which they will be produced.[22]

3                                          **Argument**

4

5  **I.     THE COURT SHOULD COMPEL MGA TO PRODUCE THE**

6         **REQUESTED DOCUMENTS IN THEIR NATIVE FORMAT,**

7         **INCLUDING ALL METADATA**

8

9         **A.     The Information Contained in the Metadata of these Documents Is**

10             **Relevant to Mattel's RICO Claims**

11             Mattel has asserted claims for violations of RICO and conspiracy to

12  violate RICO against all the counter-defendants to this action.[23]  To that end, Mattel

13  alleges that defendants engaged in a "pattern of racketeering activity," including

14  wire fraud.[24]  To prove wire fraud allegations, Mattel may show that counter-

15  defendants' conduct affected "interstate or foreign commerce." See 18 U.S.C. §

16  1962(c) ("It shall be unlawful for any person employed by or associated with any

17  enterprise engaged in, or the activities of *which affect, interstate or foreign*

18  *commerce*, to conduct or participate, directly or indirectly, in the conduct of such

19  enterprise's affairs through a pattern of racketeering activity or collection of

20  unlawful debt."); see also Musick v. Burke, 913 F. 2d 1390, 1399 (9th Cir. 1990)

21  (demonstration of effect on interstate commerce is appropriate in context of RICO

22  claim). This can be established by proof that certain of counter-defendants' e-mails,

23  made in furtherance of their criminal conspiracy, were communicated over state or

24  _____

25  [21]  Proctor Dec., ¶ 19.

26  [22]  Proctor Dec., ¶ 20.

27  [23]  Mattel's Second Amended Answer and Counterclaims, dated July 12, 2007, at
       ¶¶ 88-105, Proctor Dec., Exh 14.

28  [24]  See id.

07209/2298724.2

1    international borders. See, e.g., United States v. Daniel, 329 F.3d 480, 485 (6th Cir.

2    2003).

3            Mattel has alleged that each of the e-mails for which it seeks metadata

4    was communicated in furtherance of a defendants' conspiracy in violation of RICO.

5    Therefore, the information requested by Mattel -- metadata that shows from where

6    and to where an e-mail was sent, and where the e-mail traveled -- may provide

7    evidence showing that some, or all, of these communications were made across state

8    lines. The paper copies of the e-mails do not contain this information. As a result,

9    the metadata sought by Mattel, and promised by MGA, is highly relevant. In fact,

10   all of these documents relate to MGA's alleged theft of Mattel's trade secrets and

11   other confidential information -- allegations for which the Court has already had to

12   order MGA to produce responsive documents.[25]

13

14       **B.    MGA Is Obligated to Produce These Electronic Documents**

15           Mattel is entitled to Fed. R. Civ. P. 26(b)(1) "discovery regarding any

16   matter, not privileged, which is relevant to the subject matter in the pending

17   litigation." Electronic versions of relevant documents, including their metadata, are

18   no exception to this standard and are clearly discoverable under Rule 34. Williams

19   v. Sprint/United Management Company, 230 F.R.D. 640, 656 (D. Kan. 2005)

20   (holding that producing party should produce electronic version of documents,

21   including metadata); Zubulake v. UBS Warburg LLC, 217 F.R.D. 309, 317

22   (S.D.N.Y. 2003) ("[E]lectronic documents are no less subject to discovery than

23   paper records. This is true not only of electronic documents that are currently in

24   use, but also of documents that may have been deleted and now reside only on

25

26   _____

27   [25]   Order Granting in Part and Denying in Part Mattel's Motion to Compel the
     Production of Documents by MGA, dated August 13, 2007, at 14, Proctor Dec. Exh.

28   16.

EXHIBIT 30
PAGE 457

1   backup disks."); Playboy Enterprises, Inc. v. Welles, 60 F. Supp. 2d 1050, 1053

2   (S.D. Cal. 1999) ("The Advisory Committee Notes to Fed. R. Civ. P. 34 make clear

3   that information stored in computer format is discoverable."); Simon Property

4   Group v. Simon, Inc., 194 F. R. D. 639, 640 (S.D. Ind. 2000) ("[C]omputer records,

5   including records that have been 'deleted,' are documents discoverable under Fed. R.

6   Civ. P. 34."). Mattel is accordingly entitled to any electronic documents, and

7   corresponding metadata, that are relevant to its claims. See Williams, 230 F. R. D.

8   at 651 ("Of course, if the producing party knows or should reasonably know that

9   particular metadata is relevant to the dispute, it should be produced) (citations

10  omitted).

11

12          C.     **Any Burden This Production Places on MGA Is Minimal**

13                 MGA cannot genuinely claim, and indeed has not claimed to date, that

14  the production requested by Mattel is unduly burdensome.  To the contrary, after

15  "researching" them, MGA agreed to produce these electronic documents.[26]

16                 In addition, first, MGA should be able to produce the requested

17  information with little effort.  Mattel has done everything in its power to minimize

18  whatever arguable burden this production could place on MGA.  Mattel has

19  specifically identified each of the e-mails for which it seeks an electronic

20  counterpart, all of which have already been produced.  In Mattel's initial letter

21  requesting this information on August 21, 2007, Mattel provided a bates number for

22  each of the documents it seeks in order to assist MGA in locating these documents.[27]

23  So as to reduce any burden further, Mattel also informed MGA that it would accept

24  the production of each e-mail in its electronic form from *any* source where the e-

25

26  ────────────────

27  [26]  E-mail from Jenal to Proctor, dated August 22, 2007, Proctor Dec., Exh. 2.
    [27]  Letter from Dylan Proctor to Jim Jenal, dated August 21, 2007, at 1-2,

28  Proctor Dec., Exh. 1.

1 | mail can be located, i.e. from the electronic file of any recipient or sender of a given

2 | e-mail.[28]

3 |      Second, every e-mail for which Mattel seeks an electronic version was

4 | sent or received by at least one of MGA's own employees, and thus should be

5 | readily accessible.[29]  Moreover, since MGA claims it "does not have, and never has

6 | had, a policy to auto-delete e-mails," the electronic versions of the e-mails sought by

7 | Mattel should still be in MGA's possession, and easily accessible.[30]

8 |      Mattel is not asking MGA to do anything more than locate and produce

9 | electronic versions of its employees' e-mails that are relevant to this dispute, which

10 | it has already promised to produce.  It should be ordered to do so immediately.

11 |

12 | **II.   MGA SHOULD BE SANCTIONED**

13 |      Under the Federal Rules, a party bringing a motion to compel is entitled

14 | to the "reasonable expenses incurred in making the motion, including attorney's

15 | fees, unless the court finds that the motion was filed without the movant's first

16 | making a good faith effort to obtain the disclosure or discovery without court action,

17 | or that the opposing party's nondisclosure, response or objection was substantially

18 | justified, or that other circumstances make an award of expenses unjust." Fed. R.

19 | Civ. P. 37(a)(4).  The burden of establishing substantial justification is on the party

20 | being sanctioned.  Hyde & Drath v. Baker, 24 F.3d 1162, 1171 (9th Cir. 1994).

21 | Independently, sanctions may be imposed under 28 U.S.C. § 1927, which provides

22 | that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably

23 |

24 |

---

25 | [28] Letter from Proctor to Jenal, dated August 30, 2007, at 2, Proctor Dec., Exh. 4.

26 | [29] Email from Proctor to Jenal, dated August 22, 2007, Proctor Dec., Exh. 2.

27 | [30] Declaration of Daphne Gronich in Response to Court's Request for Information Regarding Document Preservation, dated September 10, 2007, at ¶ 11, Proctor Dec., Exh. 15.

28 |

1  and vexatiously may be required by the court to satisfy personally the excess costs,

2  expenses, and attorneys' fees reasonably incurred because of such conduct."

3  Sanctions under this section are appropriate "for conduct that, viewed objectively,

4  manifests either intentional or reckless disregard of the attorney's duties to the

5  court." RTC v. Dabney, 73 F.3d 262, 265 (10th Cir. 1995), citing Braley v.

6  Campbell, 832 F.2d 1504, 1512 (10th Cir. 1987).

7        MGA has failed to produce documents that relate to MGA's alleged

8  theft of Mattel's trade secrets and other confidential information -- allegations for

9  which the Court has already ordered MGA to produce responsive documents.[31]  This

10 is despite the fact that MGA long ago agreed to produce this information, and has no

11 justification for failing to live up to its obligation.

12       MGA's actions are part of a pattern of unreasonable and vexatious

13 conduct by the MGA parties, and MGA, and it should be sanctioned for the fees

14 Mattel has been forced to incur in connection with this motion. Mattel therefore

15 requests that MGA and its counsel be ordered to pay $2,500 as partial

16 reimbursement for the fees Mattel has incurred on this Motion.

17                          **Conclusion**

18       For the foregoing reasons, MGA should be compelled to produce the

19 electronic version of each of the e-mails requested by Mattel with their

20 accompanying metadata.

21 DATED: November 21, 2007        QUINN EMANUEL URQUHART OLIVER &

22                                 HEDGES, LLP

23

24                                 By _B. Dylan Proctor /MM_

25                                    B. Dylan Proctor
                                      Attorneys for Mattel, Inc.

26

27 [31]  Order Granting Mattel's Motion to Compel Production of Documents, dated

28 August 13, 2007, at 14, Proctor Dec. Exh. 16.

07209/2298724.2

-9-

EXHIBIT 31

1   THOMAS J. NOLAN (Bar No. 066992)
    SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2   300 South Grand Avenue
    Los Angeles, California 90071-3144
3   Telephone:  (213) 687-5000
    Facsimile:   (213) 687-5600
4   E-mail:   tnolan@skadden.com

5
    RAOUL D. KENNEDY (Bar No. 40892)
6   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
    4 Embarcadero Center, 38th Floor
7   San Francisco, CA  94111-5974
    Telephone:  (415) 984-6400
8   Facsimile:   (415) 984-2698
    Email:       rkennedy@skadden.com
9

10  Attorneys for MGA Entertainment, Inc.,
    MGA Entertainment (HK) Limited,
11  MGAE De Mexico, S.R.L. DE C.V., and
    Isaac Larian

12

13              **UNITED STATES DISTRICT COURT**

14              **CENTRAL DISTRICT OF CALIFORNIA**

15                    **EASTERN DIVISION**

| | |
|---|---|
| 15  CARTER BRYANT, an individual | ) CASE NO. CV 04-9049 SGL (RNBx) |
| 16                Plaintiff, | ) Consolidated with Case No. 04-9059 ) and Case No. 05-2727 |
| 17        v. | ) **DISCOVERY MATTER** |
| 18  MATTEL, INC., a Delaware corporation | ) **[To be heard by Discovery Master** ) **Hon. Edward A. Infante (Ret.)]** |
| 19                Defendant. | ) **MGA'S OPPOSITION TO** |
| 20 | ) **MATTEL, INC.'S MOTION TO** ) **COMPEL PRODUCTION OF** |
| 21  Consolidated with MATTEL, INC. v. BRYANT and MGA | ) **METADATA** |
| 22  ENTERTAINMENT, INC. v. MATTEL, INC. | ) **[Declarations Of Amy S. Park** ) **and Amir Suman Filed Under** |
| 23 | ) **Separate Cover]** |
| 24 | ) Hearing Date:  TBD |
| 25 | ) Time:            TBD ) Place:           TBD |
| 26 | ) |
| 27 | ) |
| 28 | ) |

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ...................................................................................1

II.   FACTUAL BACKGROUND ...................................................................1

    A.   MGA Engages In Good Faith Meet And Confer Discussions Regarding The Production Of Emails In Their Native Format. ...........1

    B.   MGA Produces Exemplar Metadata Information, As Agreed..............2

    C.   The Court Temporarily Stays All Discovery Obligations. ...................3

    D.   Mattel Precipitously Files This Motion. .............................................3

III.  ARGUMENT...........................................................................................4

    A.   Mattel Has Not Made The Required Particularized Showing That It Needs The Requested Metadata.....................................................4

    B.   If MGA Is Ordered To Produce The Metadata, Mattel Should Pay The Costs Of Production...................................................................6

    C.   MGA Should Not Be Sanctioned. .....................................................8

IV.   CONCLUSION .......................................................................................9

i

OPPOSITION TO MATTEL'S MOTION TO COMPEL PRODUCTION OF METADATA

EXHIBIT 31
PAGE 462

# TABLE OF AUTHORITIES

Page

**CASES**

Anti-Monopoly, Inc. v. Hasbro, Inc.,
   No. 94 Civ. 2120 (LMM) (AJP),
   1996 WL 22976 (S.D.N.Y. Jan 23, 1996) ...........................6

Fryer v. Brown,
   Case No. C04-5481 FDB,
   2005 U.S. Dist. LEXIS 20830 (W.D. Wash. July 15, 2005) .....................9

Kentucky Speedway, LLC v. Nat'l Ass'n of Stock Car Auto Racing,
   Civil Action No. 05-138-WOB,
   2006 U.S. Dist. LEXIS 92028 (E.D. Ky. Dec. 18, 2006)......................4, 5, 6

Michigan First Credit Union v.Cumis Ins. Soc., Inc.,
   Civil Action No. 05-74423,
   2007 U.S. Dist. LEXIS 84842 (E.D. Mich. Nov. 16, 2007)........................5

Murphy Oil USA, Inc. v. Fluor Daniel, Inc.,
   No. Civ. A, 99-3564, 2002 WL 246439 (E.D. La. 2002).......................7

OpenTV v. Liberate Techs.,
   291 F.R.D. 474 (N.D. Cal. 2003) ...........................7

Oppenheimer Fund, Inc. v. Sanders,
   437 U.S. 340 (1978)..........................8

Playboy Enters., Inc. v. Welles,
   60 F. Supp. 2d 1050 (S.D. Cal. 1999) ...........................6

Rivera v. NIBCO, Inc.,
   364 F.3d 1057 (9th Cir. 2004)..........................5

Rowe Entm't, Inc. v. William Morris Agency, Inc.,
   205 F.R.D. 421 (S.D.N.Y. 2002)..........................6, 7

Simon Prop. Group v. mySimon, Inc.,
   194 F.R.D. 639 (S.D. Ind. 2000) ...........................6

Williams v. Sprint/United Management Co.,
   230 F.R.D. 640 (D. Ka. 2005)..........................5, 6

Wyeth v. Impax Labs., Inc.,
   Civil Action No. 06-222-JJF,
   2006 U.S. Dist. LEXIS 79761 (D. Del. Oct. 26, 2006)..........................4, 5, 6

Zubulake v. UBS Warburg LLC,
   217 F.R.D. 309 (S.D.N.Y. 2003)..........................6

**STATUTES**

Fed. R. Civ. P. 37(a)(4)(A) ...........................9

ii

EXHIBIT 31
PAGE 463

# I.   INTRODUCTION

Mattel, Inc.'s ("Mattel") motion to compel production of email files in their native electronic format should be denied.

On the same day that Mattel filed this motion, the parties conducted a meet-and-confer regarding Mattel's request for 163 email files in their native format. In that meeting, MGA told Mattel that MGA had located and would be willing produce some of the native files and that MGA would be willing to produce the remaining native files to the extent they are in MGA's possession, custody or control and could be located and collected without undue burden. MGA explained, however, that it was encountering difficulties in researching the remaining files. MGA stated, therefore, that it needed additional time to ascertain what would be required to obtain the data, and promised to get back to Mattel in short order.

Within hours of the meet-and-confer, without awaiting MGA's promised follow-up, Mattel precipitously filed its motion to compel, and by so doing, rejected MGA's efforts and offer to cooperate. In the rush to file its motion, Mattel has failed to make the threshold showing of "particularized need" that is required to justify the intrusive discovery it seeks. Mattel's failure is fatal to its motion, and the motion should therefore be denied.

# II.   FACTUAL BACKGROUND

## A.   MGA Engages In Good Faith Meet And Confer Discussions Regarding The Production Of Emails In Their Native Format.

On August 21, 2007, Mattel requested that MGA produce copies of 168 emails "in their native format, including all metadata and the full e-mail header information," and requested an immediate "meet and confer" on the issue. Declaration of B. Dylan Proctor ("Proctor Decl.") Ex. 1. While many of the emails for which Mattel seeks native information were produced by MGA, several others

1

1  were produced by Mattel.  Id.[1]  Mattel did not suggest, let alone articulate, a theory

2  of relevancy or any specific need with respect to any of the metadata it sought.  Id.

3        The next day the parties conferred by email.  Mattel clarified that it had

4  requested five emails that it did not want.  Id.  MGA agreed to research the

5  remaining 163 emails and get back to Mattel.  Id.

6        On August 29, 2007, the parties met and conferred again.  MGA informed

7  Mattel that obtaining metadata information for the 163 emails may be unduly

8  burdensome.  Id. Ex. 4.  MGA also stated that some of the information was not likely

9  in MGA's possession, custody or control.  Id.  The parties discussed the possibility

10  of MGA making an initial production of exemplar native file information so that

11  Mattel could determine what specific metadata fields it wanted.  Id. Ex. 4.  At that

12  time, Mattel stated that it needed to determine whether its vendor could access the

13  files in the format in which MGA's vendors kept them.  Id.  Accordingly, the parties

14  agreed to convene a further meet-and-confer at a later date to continue discussion of

15  the matter.  Id.

16        **B.    MGA Produces Exemplar Metadata Information, As Agreed.**

17        On September 14, 2007, the parties convened another meet-and-confer during

18  which Mattel agreed to review exemplars of MGA's native file information so that it

19  could advise MGA "with more specificity than it already has as to specifically what

20  metadata information it requires for such emails."  Id. Ex. 6.

21        On October 3, 2007, MGA provided Mattel with a chart containing native file

22  information for a number of emails.  Id. Ex. 7.  The next day, after an initial review

23  of the information, Mattel stated that it would review the chart further and "make

24  further inquiries on [][its] end" to "see if it contains the information we require."  Id.

25  Ex. 8.  Mattel purported to reserve the right to demand production of the email files

26  ────────────

27  [1]  Mattel admits that it already has the native files for the emails it produced and
       claims to have provided those files to MGA.  Proctor Decl. ¶ 7; Declaration of
28     Amy S. Park ("Park Decl.") Ex. C.

1  in their native electronic format – to the extent they were accessible – "if Mattel so

2  requires." Id.   Thereafter, on October 8, 2007, Mattel asked MGA to advise Mattel

3  how long it would take to produce the native format emails "to the extent MGA

4  possesses the files or they are within MGA's custody or control." Id. Ex. 9. [2]

5     **C.     The Court Temporarily Stays All Discovery Obligations.**

6        On October 12, 2007, MGA's prior counsel withdrew from the case, and

7  MGA's new counsel substituted in. Id. Ex. 10. On October 14, 2007, Mattel sent

8  MGA's new counsel an email enumerating a list of nearly 30 items that MGA had

9  purportedly "agreed it currently owes Mattel." Id. Ex. 11. Buried in this list was a

10  reference to "Requested Metadata for certain emails (overdue)." Id. MGA's counsel

11  agreed to look into the various matters. Id. Ex. 12.

12        The next day, the Court imposed a stay on responding to discovery from

13  October 15 to October 31, 2007. On October 31, the Court imposed a further stay on

14  *all* discovery from November 1, 2007 through November 14, 2007.

15     **D.     Mattel Precipitously Files This Motion.**

16        On November 16, 2007, the day after the stay was lifted, the parties conducted

17  an in-person meet-and-confer to discuss various pending discovery motions and

18  other open discovery issues, including Mattel's request for the 163 native email files.

19  Park Decl. ¶ 2.   During the conference, MGA advised Mattel that MGA could locate

20  some of the native email files in short order.   MGA explained, however, that due to

21  the manner in which the remaining emails were originally harvested and produced,

22  MGA was investigating whether it could obtain the remaining native files and, if so,

23  what burden that might entail. Id. ¶ 3.   MGA agreed to continue its investigation

24

25

26  [2]  Mattel asserts that MGA promised, but failed to produce the native files by
27  October 1. Motion at 3. But that assertion is belied by the fact that Mattel agreed
    first to review exemplar information, which MGA provided, and as of October 4,
28  Mattel was continuing its review. Proctor Decl. Exs. 7 & 8.

3

OPPOSITION TO MATTEL'S MOTION TO COMPEL PRODUCTION OF METADATA

EXHIBIT 31
PAGE 466