1 and give Mattel a further report on the issue at a continued meet-and-confer that the

2 parties scheduled for November 21, 2007. Id.

3      On November 21, the parties resumed their meet-and-confer discussions by

4 phone. Id. ¶ 4. At or about the time the parties were commencing their call, Mattel

5 sent MGA a letter purporting to (i) memorialize the parties' meet and confer

6 discussions from November 16 and (ii) identify follow-up work to be performed by

7 MGA regarding open discovery items. Id. Ex. A. Significantly, however, the letter

8 failed to mention the production of native email files or MGA's efforts regarding

9 them. Id.

10      During the November 21 call, MGA stated that it was willing to produce the

11 approximately 20 native email files that it had collected to date. Park Decl. ¶ 5.

12 MGA also stated that: (i) it was willing in principle to produce the remaining native

13 files to the extent that they are in MGA's possession, custody or control and could be

14 located and collected, and (ii) MGA was continuing to investigate whether and to

15 what extent that would be possible and what burden that would entail. Id. Ex. B.

16 MGA promised to circle back with Mattel in short order. Id. Later that day,

17 ignoring MGA's representations from the call that morning and without awaiting

18 MGA's promised follow-up, Mattel precipitously filed its motion to compel. By its

19 actions, Mattel has rejected MGA's offer to produce the 20 native files and has

20 demonstrated its unwillingness to amicably resolve this matter.

21 **III. ARGUMENT**

22     **A. Mattel Has Not Made The Required Particularized Showing That It**

23        **Needs The Requested Metadata.**

24      Mattel's motion is premised on the assumption that metadata is automatically

25 discoverable. Not so. "'Emerging standards of electronic discovery appear to

26 articulate a general presumption *against* the production of metadata[.]'" Wyeth v.

27 Impax Labs., Inc., Civil Action No. 06-222-JJF, 2006 U.S. Dist. LEXIS 79761, *4

28 (D. Del. Oct. 26, 2006) (citations omitted; emphasis added); see Kentucky Speedway,

1   LLC v. Nat'l Ass'n of Stock Car Auto Racing, Inc., Civil Action No. 05-138-WOB,

2   2006 U.S. Dist. LEXIS 92028, *22-24 (E.D. Ky. Dec. 18, 2006) (noting the strong

3   presumption against metadata production and holding that "[i]n most cases and for

4   most documents, metadata does not provide relevant information"). "Most metadata

5   is of limited evidentiary value, and reviewing it can waste litigation resources."

6   Wyeth, 2006 U.S. Dist. LEXIS, at *4 (citation omitted). As a result, a party

7   requesting metadata must demonstrate a "particularized need." Id. at *5; Kentucky

8   Speedway, 2006 U.S. Dist. LEXIS 92028, at *22-23 ("Plaintiff has not made any

9   showing of a particularized need for the metadata"); Michigan First Credit Union v.

10  Cumis Ins. Soc., Inc., Civil Action No. 05-74423, 2007 U.S. Dist. LEXIS 84842, *8

11  (E.D. Mich. Nov. 16, 2007) (refusing to compel production of metadata since it

12  would be "overly burdensome with no corresponding evidentiary value").

13        Mattel has not even come close to demonstrating a particularized need for the

14  requested metadata. Mattel baldly asserts that the metadata could have relevance to

15  Mattel's RICO cause of action because it may show that certain emails were

16  "communicated over state or international borders." Motion at 5-6. This is woefully

17  inadequate. Wyeth, 2006 U.S. Dist. LEXIS 79761, at **5-6. Mattel does not attach

18  to its motion even one of the emails in question. Nor has it otherwise demonstrated

19  with particularity how or why the metadata is necessary for any, much less all, of the

20  163 emails at issue. Moreover, Mattel has failed to make any showing that the

21  information it seeks is not available through other means. Kentucky Speedway,

22  2006 U.S. Dist. LEXIS 92028, at *24. As a result, there is no basis to compel this

23  discovery. Mattel's demand for native email files is nothing more than an

24  impermissible "fishing expedition." Rivera v. NIBCO, Inc., 364 F.3d 1057, 1072

25  (9th Cir. 2004).

26        Mattel's reliance on Williams v. Sprint/United Management Co., 230 F.R.D.

27  640 (D. Ka. 2005) is misplaced. Motion at 6. In Williams, unlike here, the question

28  was whether it was proper for the defendant to destroy Excel spreadsheet metadata

1  *prior* to the production of images of those spreadsheets, when the defendant knew

2  such information was specifically relevant to the unique employment discrimination

3  issues therein. Id. at 645, 654. Further, the metadata information at issue in

4  Williams was very basic – "file names, dates of the file, authors of the file,

5  recipients . . . ." Id. at 644. The emails at issue here already convey all of this

6  information and Mattel does not dispute that. Moreover, other courts have

7  specifically disapproved of Williams. In Kentucky Speedway the court held that

8  "[i[n the rapidly evolving world of electronic discovery, the holding of the Williams

9  case is not persuasive." 2006 U.S. Dist. LEXIS 92028, at *22. See also Wyeth,

10  2006 U.S. Dist. LEXIS 79761, at **4-6. The remaining cases cited by Mattel

11  (Motion at 6-7) are inapposite since none specifically addresses the discovery of

12  metadata. See Zubulake v. UBS Warburg LLC, 217 F.R.D. 309 (SDNY 2003);

13  Playboy Enters., Inc. v. Welles, 60 F. Supp. 2d 1050, 1053 (S.D. Cal. 1999); Simon

14  Prop. Group v. mySimon, Inc., 194 F.R.D. 639, 640 (S.D. Ind. 2000).

15  **B.    If MGA Is Ordered To Produce The Metadata, Mattel Should Pay
        The Costs Of Production.**

16

17  If MGA is ordered to produce the native email files notwithstanding Mattel's

18  failure to meet its burden of showing a particularized need, Mattel – not MGA –

19  should bear the costs of production. A court may protect the responding party from

20  "undue burden or expense" by shifting some or all of the costs of production to the

21  requesting party. Rowe Entm't, Inc. v. William Morris Agency, Inc., 205 F.R.D. 421,

22  428-29 (S.D.N.Y. 2002); see Anti-Monopoly, Inc. v. Hasbro, Inc., No. 94 Civ. 2120

23  (LMM) (AJP), 1996 WL 22976, at *2 (S.D.N.Y. Jan. 23, 1996) (requiring the

24  plaintiff to pay all costs incurred by defendants in extracting requested electronic

25  files from their computer systems). Courts have considered several factors in

26  determining whether the costs of discovery should be shifted, including: the relative

27  benefit to the parties of obtaining the information; the availability of such

28  information from other sources; the likelihood of discovering critical information;

1  the purposes for which the responding party maintains the requested data; the

2  relative ability of each party to control costs and its incentive to do so; the total cost

3  associated with production; and the resources available to each party.  See Rowe,

4  205 F.R.D. at 429; OpenTV v. Liberate Techs., 219 F.R.D. 474, 479 (N.D. Cal. 2003)

5  (shifting costs to party requesting discovery); Murphy Oil USA, Inc. v. Fluor Daniel,

6  Inc., No. Civ. A, 99-3564, 2002 WL 246439, at **3-6 (E.D. La. 2002) (same).

7       These factors weigh in favor of cost-shifting here:

8       *Relative Benefit to the Parties*:  Where the responding party will derive

9  little, if any, benefit from the requested production, cost shifting is appropriate.  See

10  Rowe, 205 F.R.D. at 431.  Here, there is no evidence that MGA will obtain any

11  benefit from producing the native email files.

12       *Availability of Such Information from Other Sources*:  Mattel asserts

13  that it is seeking the native email files to show the geographic locations from which

14  the subject emails were sent or received.  Motion at 5-6.  That information is

15  obtainable from sources other than the native files, including through the depositions

16  of the parties to the email communications.

17       *Likelihood of Discovering Critical Information*:  Mattel has not made a

18  particularized showing that the native formats of all 163 emails are "critical" to this

19  case.  Indeed, the value of those native files appears marginal at best given that the

20  very same metadata information that Mattel hopes to obtain could be sought in the

21  first instance from other sources, including depositions.

22       *Purposes for which the Responding Party Maintains the Requested*

23  *Data*:  Mattel has not demonstrated that MGA collects or uses metadata in the

24  ordinary course of its business or that MGA would produce this information in the

25  absence of a litigation demand or court order.  This factor therefore also weighs in

26  favor of cost-shifting.  Rowe, 205 F.R.D. at 431.

27       *Relative Ability of Each Party to Control Costs*:  To obtain native email

28  files, MGA would rely on its electronic discovery vendor and/or harvest vendor.

1 These vendors have their own pricing that is not subject to MGA's direct control.

2 Moreover, MGA has learned that those vendors cannot provide the native files for a

3 significant number of the requested emails. Park Decl. ¶ 9. As a result, MGA would

4 have to devote significant time and resources in an effort to produce those files, if it

5 could be done at all.[3] Declaration of Amir Suman (Suman Decl. ¶¶ 3-4.)

6    *Total cost Associated with Production:* Based on the number of native

7 files requested, the costs of production could easily exceed $10,000, which is a

8 substantial amount. Park Decl. ¶¶ 7-8; <u>Oppenheimer Fund, Inc. v. Sanders</u>, 437 U.S.

9 340, 361-62 (1978) ("[T]he test in this respect normally should be whether the cost is

10 substantial; not whether it is 'modest' in relation to ability to pay. In the context of a

11 lawsuit in which the defendants [with assets over $500 million] deny all liability, the

12 imposition on them of a threshold expense of $16,000 . . . can hardly be viewed as an

13 insubstantial burden.").

14    *Resources Available to Each Party:* Upon information and belief,

15 Mattel has ample resources to pay the costs associated with the production of the

16 emails in their native format.

17   If MGA is forced to incur the burden and expense of responding to Mattel's

18 requests for the production of native email files, Mattel, not MGA, should bear the

19 costs.

20   **C. MGA Should Not Be Sanctioned.**

21   The party who prevails on a motion to compel is entitled to its reasonable

22 expenses, including attorney's fees, unless the court finds that the losing party's

23 position is "substantially justified, or [] other circumstances make an award of

24

25

---

26 [3] Mattel's assertion that producing the native email files will not impose an undue

27 burden because MGA has preserved its emails (Opp'n at 8) is misguided. The fact that material has been preserved does not mean that the material can be located

28 and produced without undue burden. Suman Decl. ¶¶ 3-5.

1   expenses unjust." Fed. R. Civ. P. 37(a)(4)(A).  See also Fryer v. Brown, Case No.

2   C04-5481 FDB, 2005 U.S. Dist. LEXIS 20830, **21-22 (W.D. Wash. July 15, 2005).

3        MGA met and conferred in good faith regarding the production of the

4   requested native email files, offered to produce that portion of the files it had

5   collected, and promised to investigate the possibility of producing the rest and get

6   back to Mattel in short order.  Rather than making "a good faith effort to obtain the

7   disclosure or discovery without court action" (Fed. R. Civ. P. 37(a)(4)(A)), Mattel

8   rushed to file this motion without awaiting MGA's production – and largely ignoring

9   – MGA's representations.  Thus, it is Mattel – not MGA – that should be sanctioned.

10  Mattel should be ordered to pay $2,500 as partial reimbursement for the fees that

11  MGA has incurred in defending this unnecessary motion.

12  **IV.    CONCLUSION**

13       For the foregoing reasons, Mattel's motion to compel should be denied in its

14  entirety, and Mattel should be ordered to pay sanctions.

15  DATED:      November 30, 2007

16

17                                    SKADDEN, ARPS, SLATE, MEAGHER &
                                      FLOM, LLP
18

19

20                                    _____
                                      Thomas J. Nolan
21                                    Attorneys for Counter-Defendants, MGA
                                      ENTERTAINMENT, INC., ISAAC LARIAN,
22                                    MGA ENTERTAINMENT (HK) LIMITED,
                                      AND MGAE de MEXICO S.R.L. de C.V.
23

24

25

26

27

28

9

OPPOSITION TO MATTEL'S MOTION TO COMPEL PRODUCTION OF METADATA

EXHIBIT 31
PAGE 472

EXHIBIT 32

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 090378)
2    johnquinn@quinnemanuel.com
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
     Timothy L. Alger (Bar No. 160303)
5    (timalger@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
6  Los Angeles, California  90017-2543
   Telephone:   (213) 443-3000
7  Facsimile:   (213) 443-3100

8  Attorneys for Plaintiff Mattel, Inc.

9

10                    UNITED STATES DISTRICT COURT

11                   CENTRAL DISTRICT OF CALIFORNIA

12                          EASTERN DIVISION

13  CARTER BRYANT, an              CASE NO. CV 04-9049 SGL (RNBx)
    individual,
14                                 Consolidated with Case Nos. CV 04-09059
             Plaintiff,            and CV 05-02727
15
        vs.                        **DISCOVERY MATTER**
16
    MATTEL, INC., a Delaware       **[To Be Heard By Discovery Master Hon.**
17  corporation,                   **Edward Infante (Ret.) Pursuant To The**
                                   **Court's Order of December 6, 2006]**
18           Defendant.
                                   [PROPOSED] ORDER REGARDING
19  ─────────────────────────      MATTEL, INC.'S MOTION TO COMPEL
    AND CONSOLIDATED                PRODUCTION OF METADATA
20  ACTIONS

21

22

23

24

25

26

27

28

07209/2345470.29/234173
2.1                              1-9

                                                        [PROPOSED] ORDER

EXHIBIT 32
PAGE 773

**[Proposed] Order**

1
2      The Court having received the motion of Mattel, Inc. ("Mattel") to compel the

3  production of metadata for specified emails by MGA Entertainment, Inc. ("MGA"),

4  which was filed and served on November 21, 2007 (the "Motion"), and having

5  considered the Motion and all papers in support and opposition thereto, the Court

6  hereby ORDERS:

7      1.      The Motion is GRANTED IN PART.  MGA shall produce to Mattel,

8  on or before January 10, 2008, the approximately 80 native format emails requested

9  by Mattel in its Motion and identified by MGA at argument on January 3, 2008 as

10  the emails MGA's vendors have been able to locate in native electronic format to

11  date.  The emails shall be produced in their native electronic format sufficient to

12  show from where the email was sent and to where the email traveled.

13      2.      Mattel's Motion as to the remaining emails is DENIED WITHOUT

14  PREJUDICE because Mattel need not prove that each and every email

15  communication crossed commerce lines.

16      3.      The Court finds that monetary sanctions against MGA are appropriate

17  and that some shifting of the costs of this production is also appropriate.  However,

18  in lieu of awarding monetary sanctions against MGA, the Court ORDERS that there

19  shall be no cost shifting associated with this Motion and/or the production that is

20  ordered herein.

21      IT IS SO ORDERED.

22
23
24  DATED: January 9, 2008       By _____

25                                          Hon. Edward A. Infante (Ret.)
                                            Special Discovery Master

26
27
28

-1-

EXHIBIT 32
PAGE 474

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on January 9, 2008, I served the attached: (1) ORDER REGARDING MATTEL, INC.'S MOTION TO ENFORCE COURT'S AUGUST 20, 2007 ORDER REQUIRING CARTER BRYANT TO ANSWER REQUESTS FOR ADMISSION; and (2) ORDER REGARDING MATTEL, INC.'S MOTION TO COMPEL PRODUCTION OF METADATA in the within action by email addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| Matthew M. Werdegar, Esq. | Keker & Van Nest | mwerdegar@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| Audrey Walton-Hadlock, Esq. | Keker & Van Nest | awalton-hadlock@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Thomas J. Nolan, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tnolan@skadden.com |
| Raoul D. Kennedy, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | rkennedy@skadden.com |
| Amy S. Park, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | apark@skadden.com |
| Harriet S. Posner, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | hposner@skadden.com |
| Carl Alan Roth, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | croth@skadden.com |
| Timothy A. Miller, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tmiller@skadden.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on January 9, 2008, at San Francisco, California.

_Sandra Chan_
Sandra Chan

EXHIBIT 32
PAGE 475

EXHIBIT 33

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION

CARTER BRYANT, an
individual,

        Plaintiff,

   · vs.

MATTEL, INC., a Delaware
corporation,

        Defendants.

No. CV 04-9049 SGL
(RNBx)

**CERTIFIED COPY**

Consolidated with MATTEL, INC. v.
BRYANT and MGA ENTERTAINMENT, INC.
v. MATTEL, INC.

HEARING BEFORE THE HONORABLE EDWARD A. INFANTE

San Francisco, California

Thursday, January 3, 2008

Reported by:
DANA M. FREED
CSR No. 10602

JOB No. 79867

EXHIBIT 38
PAGE 476

1                   UNITED STATES DISTRICT COURT
                    CENTRAL DISTRICT OF CALIFORNIA
2                        EASTERN DIVISION

3    CARTER BRYANT, an
     individual,
4
              Plaintiff,
5
         vs.                          No. CV 04-9049 SGL
6                                          (RNBx)
     MATTEL, INC., a Delaware
7    corporation,

8             Defendants.

9

10   _____

11   Consolidated with MATTEL, INC. v.
     BRYANT and MGA ENTERTAINMENT, INC.
12   v. MATTEL, INC.
     _____

13

14           Hearing before the Honorable EDWARD A. INFANTE,

15   at JAMS, Two Embarcadero Center, Suite 1500, San Francisco,

16   California, beginning at 1:30 p.m. and ending at 4:05 p.m.

17   on Thursday, January 3, 2008, before DANA M. FREED,

18   Certified Shorthand Reporter No. 10602.

19

20

21

22

23

24

25

                                                              2

EXHIBIT 33
PAGE 477

```
 1    APPEARANCES:

 2

 3    For the Plaintiff CARTER BRYANT, an individual:

 4         KEKER & VAN NEST LLP
           BY:   MATTHEW M. WERDEGAR
 5               JOHN TRINIDAD
           Attorneys at Law
 6         710 Sansome Street
           San Francisco, California 94111-1704
 7         415.391.5400

 8    For the Defendant MATTEL, INC., a Delaware
      corporation:
 9
           QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
10         BY:   JON COREY
                 TIMOTHY L. ALGER
11               B. DYLAN PROCTOR
           Attorneys at Law
12         865 Figueroa Street, 10th Floor
           Los Angeles, California 90017
13         213.443.3000

14    For the Defendants MGA Entertainment, Inc., MGA
      Entertainment (HK) Limited, and Isaac Larian:
15
           SKADDEN ARPS SLATE MEAGHER & FLOM LLP
16         BY:   RAOUL D. KENNEDY
                 AMY S. PARK
17         Attorneys at Law
           Four Embarcadero Center, 38th Floor
18         San Francisco, California 94111-5974
           415.984.6400
19
      Also Present:
20
           MAUREEN McCUAIG
21

22

23

24

25
```

3

EXHIBIT 33
PAGE 478

1    There is no other way of adequately getting it and MGA

2    doesn't deny that it possesses it, so I believe MGA

3    should be ordered to produce all of the e-mails in

4    native format with full e-mail header information.

5          JUDGE INFANTE:  There were about 163 e-mails

6    that you had specified; is that correct?

7          MR. PROCTOR:  Correct.

8          JUDGE INFANTE:  The relevance that you stated

9    in your papers is that the information pertaining to

10   where the e-mail was sent from, how it traveled, who

11   the recipients were, where they were located is

12   relevant to your interstate or foreign commerce burden

13   of proof under your RICO claim; is that correct?

14         MR. PROCTOR:  Correct.

15         JUDGE INFANTE:  Any other relevance?

16         MR. PROCTOR:  No.  The relevance of the

17   metadata, the asserted relevance is strictly

18   establishing the elements of effect on interstate

19   commerce.

20         JUDGE INFANTE:  That's right as to these

21   particular e-mails.

22         MR. PROCTOR:  Correct.

23         JUDGE INFANTE:  So my question to you is

24   this, yes, you have that burden of proof which you

25   didn't have at the pleading stage, why do you need all

1    163?  Won't 30 or 40 or 50 do to prove interstate

2    commerce?

3            MR. PROCTOR:  Well, MGA has challenged, MGA

4    has challenged at the motion to dismiss phase the

5    culpability to prove a pattern of racketeering

6    activity.  We believe the law is clear that a pattern

7    exists if there are only two or more predicate acts.

8    But MGA challenged, as to a number of these e-mails

9    specifically, whether these e-mails could in fact

10   constitute predicate acts for other reasons.

11   For example, because some post-date the close of

12   Carter Bryant's employment.  And so we have -- we have

13   alleged about, you know, 200, roughly, predicate acts.

14   We're entitled, I believe, to try to obtain proof as

15   to all of these predicate acts.  MGA is undoubtedly on

16   summary judgment --

17           JUDGE INFANTE:  But on the question of

18   interstate commerce, doesn't seem to me you need to

19   prove each and every communication crossed commerce

20   lines.

21           MR. PROCTOR:  I would agree that we do not

22   bear the burden of proving all of them crossed

23   commerce lines, for the simple reason that I don't

24   think we have to prove 200 predicate acts.

25           JUDGE INFANTE:  That's right.

9

EXHIBIT 33
PAGE 480

1          MR. PROCTOR:  But we have alleged 200

2    predicate acts.  And I believe we're entitled to

3    discovery to attempt to prove that, because MGA is

4    undoubtedly going to attack all of those.

5          JUDGE INFANTE:  Burden is an issue here.  Are

6    you taking the position that you must have all?

7          MR. PROCTOR:  I'm taking the position that

8    I believe that we are entitled to all, since it is

9    critical information that goes directly to the --

10          JUDGE INFANTE:  You're never entitled to all

11    under the Federal Rules of Civil Procedure, because

12    that would read out of the rules, Rules 26(b)(2).

13          MR. PROCTOR:  I do understand that.  However,

14    this is not -- this is not, I would submit, a

15    situation where we are seeking all metadata for an

16    overbroad set of categories.  For example, each of the

17    cases cited by MGA involve a request for metadata for

18    all documents produced in the case.  Here MGA has

19    produced 3.4 million documents or approximately.

20    We're not seeking metadata for those documents, we're

21    seeking metadata for 163 alleged predicate acts.

22          JUDGE INFANTE:  Only for the purpose of

23    proving interstate commerce or foreign commerce.

24          MR. PROCTOR:  Correct.  However, I believe

25    MGA's position will be that that has to be proven for

10

EXHIBIT 33
PAGE 481

1    each and every predicate act.  That is the position

2    which they have taken previously.

3                JUDGE INFANTE:  That's not correct.

4                Okay.  Anything further?

5                MR. PROCTOR:  No, Your Honor.

6                JUDGE INFANTE:  Okay.  You may proceed.

7                MR. KENNEDY:  Thank you, Your Honor.  And let

8    me not try to reconstruct what's happened at all of

9    the meet and confers.  I don't think we need to get

10.  into that.  I'd like to offer a very pragmatic

11   suggestion or proposal.

12                We asserted the particularized need because

13   of this demand for all 163.  The 163 fall into

14   three buckets, Your Honor.  One consists of about

15   20 documents that our vendor EED was able to retrieve

16   fairly readily.  And as we explained in the papers, we

17   offered those up before.

18                I would offer those up again now.  We've been

19   through them and there may be, and I'm sure there are,

20   people who are smarter about this than I am.  But of

21   those 20, there's only one that has anything that

22   would help show interstate commerce.  The metadata

23   there shows that it was once on a Japanese server.

24                On the other hand, the e-mail itself says,

25   I'm transmitting a document from a guy in Tokyo.  So

11

EXHIBIT 83
PAGE 482

1    it wasn't really too revolutionary.  But we would be

2    willing to offer those up.

3          In addition, we've gone -- there's a second

4    bucket, I would call them the Stroh's, like the beer,

5    for another vendor.  And we've paid $12,000 and

6    they've retrieved 60 other metadatas or metadatum,

7    whenever the plural is.  And we would also be willing

8    to offer those up, and we can argue about whether we

9    ought to get half our cost back for having done that

10   or not.

11         We have not been through those completely to

12   know how beneficial they are going to be.  But in any

13   event, there are approximately 80, about half of them

14   that are available could be turned over, as I

15   understand it, by Monday or Tuesday of next week.

16         As to the third bucket, at least at this

17   point, we have not been able to come up with any

18   readily available, quickly affordable, even in the

19   sense of $12,000 for 60 of them, method of doing it.

20   And I would propose that the Court defer any ruling on

21   the other 100 until Mattel has had a chance to go

22   through the 80 and come back and show just what kind

23   of a cost benefit analysis is coming out and how much

24   more they're going to need with regard to this issue.

25         JUDGE INFANTE:  Well, there's also a motion

EXHIBIT 33
PAGE 483

1    for costs of this motion, namely monetary sanctions,

2    in which they point out that MGA's prior counsel

3    agreed to produce this information on multiple

4    occasions and never produced it.

5           MR. KENNEDY:  I'm not in a position to refute

6    their side of that story.  As a mitigating factor,

7    at least since we've been in the case, we've said

8    we've got the 20 that we've retrieved.  Why don't you

9    go take a look at those before you go file a motion to

10   compel?

11          And as so often happens in this case, they

12   decide to punt on second down and go ahead and file a

13   motion without even looking at the 20.  But beyond

14   that, I'm prepared to submit, Your Honor.

15          JUDGE INFANTE:  Thank you.

16          Mr. Proctor.

17          MR. PROCTOR:  Thank you, Judge.  As to that

18   last point, we couldn't look at the 20, because they

19   never came.  To this day, they still haven't come.

20   All the e-mails, which MGA has said in fact are

21   readily available and they could just send over to us,

22   have never been delivered.

23          The only other point I would add is, under

24   Rule 26B2B, there are new provisions, limitations on

25   electronically stored information.

13

EXHIBIT 33
PAGE 484

1    I, the undersigned, a Certified Shorthand

2 Reporter of the State of California, do hereby certify:

3    That the foregoing proceedings were taken

4 before me at the time and place herein set forth; that

5 any witnesses in the foregoing proceedings, prior to

6 testifying, were duly sworn; that a record of the

7 proceedings was made by me using machine shorthand

8 which was thereafter transcribed under my direction;

9 that the foregoing transcript is a true record of the

10 testimony given.

11    Further, that if the foregoing pertains to

12 the original transcript of a deposition in a Federal

13 Case, before completion of the proceedings, review of

14 the transcript [  ] was [  ] was not requested.

15    I further certify I am neither financially

16 interested in the action nor a relative or employee

17 of any attorney or party to this action.

18    IN WITNESS WHEREOF, I have this date

19 subscribed my name.

20

21 Dated: JAN - 4 2008

22

23                        
       DANA M. FREED

24       CSR No. 10602

25

EXHIBIT 33
PAGE 485

EXHIBIT 34



1 | THOMAS J. NOLAN (Bar No. 66992)
(tnolan@skadden.com)
2 | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
3 | Los Angeles, CA  90071
Tel.: (213) 687-5000/Fax: (213) 687-5600
4 |
5 | KENNETH PLEVAN (admitted *pro hac vice*)
(kplevan@skadden.com)
6 | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
7 | New York, NY  10046
Tel.: (212) 735-3000 / Fax: (212) 735-2000

8 | Attorneys for MGA Entertainment, Inc., MGA Entertainment (HK) Limited,
MGAE de Mexico, S.R.L. DE C.V., and Isaac Larian
9 |

UNITED STATED DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CARTER BRYANT, an individual,                    )   CASE NO. CV 04-9049 SGL (RNBx)
                                                 )
                          Plaintiff,             )   MGA'S PRELIMINARY RESPONSE
                                                 )   TO MATTEL'S MOTION FOR
          v.                                     )   LETTERS OF REQUEST
                                                 )
MATTEL, INC., a Delaware                         )
corporation,                                     )
                                                 )
                          Defendant.             )
                                                 )
_____              )
                                                 )
AND CONSOLIDATED ACTIONS                         )
                                                 )

2·15·08

MGA'S PRELIMINARY RESPONSE TO MATTEL'S MOTION FOR LETTERS OF REQUEST

EXHIBIT 34
PAGE 486

On January 28, 2008, the final day of Phase I discovery, Mattel filed a motion for issuance of Letters of Request for International Judicial Assistance to allow it to take the depositions of two non-parties (Jeanine Brisbois and MGA Canada) in Canada. Jeanine Brisbois is a former Mattel employee who went to work for MGA Canada in 2005. In its motion, Mattel identifies the witnesses as relevant to its Phase 2 RICO, conspiracy, and misappropriation of trade secret counterclaims. Mattel does not contend that the depositions are relevant to any Phase 1 issues.

In its February 4, 2008 Order, the Court stayed all Phase 2 discovery, including motions relating to Phase 2 discovery, until after the conclusion of Phase 1 of the trial. In light of the Court's ruling, MGA will respond to Mattel's motion at the appropriate time after the conclusion of the Phase 1 trial. MGA hereby reserves all of its rights in connection with Mattel's motion, including whether the motion should have been directed to the Discovery Master.

DATED: February 15, 2008

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP

By: _Thomas J. Nolan_
Thomas J. Nolan
Attorney for MGA Entertainment, Inc.

---

MGA'S PRELIMINARY RESPONSE TO MATTEL'S MOTION FOR LETTERS OF REQUEST
1

EXHIBIT 34
PAGE 487

1 | THOMAS J. NOLAN (Bar No. 066992)
  | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2 | 300 South Grand Avenue
  | Los Angeles, CA  90071-3144
3 | Telephone:   (213) 687-5000
  | Facsimile:    (213) 687-5600
4 | E-mail:      tnolan@skadden.com

5 | KENNETH PLEVAN (admitted *pro hac vice*)
  | (kplevan@skadden.com)
6 | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
  | Four Times Square
7 | New York, NY  10036
  | Tel.: (212) 735-3000 / Fax: (212) 735-2000
8 |
  | Attorneys for Counter-Defendants,
9 | MGA ENTERTAINMENT, INC., ISAAC LARIAN, MGA ENTERTAINMENT
  | (HK) LIMITED, AND MGAE de MEXICO S.R.L. de C.V.
10 |

### UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with Case No. 04-9059 and Case No. 05-2727 |
| v. | **PROOF OF SERVICE** |
| MATTEL, INC., a Delaware corporation | |
| Defendant. | |
| | |
| Consolidated with MATTEL, INC. v. BRYANT and MGA ENTERTAINMENT, INC. v. MATTEL, INC. | Discovery Cut-Off:  January 28, 2008 |

2-15-08

PROOF OF SERVICE                                         NO. CV 04-9049 SGL (RNBx)

EXHIBIT 34
PAGE 488

## PROOF OF SERVICE

### STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the county of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 300 South Grand Avenue, 34ᵗʰ Floor, Los Angeles, CA 90071.

On February 15, 2008, I served the foregoing documents described as:

### SEE ATTACHED DOCUMENT LIST

on the interested parties in this action addressed as follows:

### SEE ATTACHED SERVICE LIST

☒   (BY PERSONAL SERVICE)   ☐   By personally delivering copies to the person served. (FEDERAL)

☒   I caused such document to be hand delivered to the above addressees. (FEDERAL)

☒   (BY FEDERAL EXPRESS) I am readily familiar with the firm's practice for the collection and processing of correspondence for mailing with Federal Express and the fact that the correspondence would be deposited with Federal Express that same day in the ordinary course of business; on this date, the above-referenced correspondence was placed for deposit at Los Angeles, California and placed for collection and mailing following ordinary business practices.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the above is true and correct.

Executed on February 15, 2008 at Los Angeles, California.

_____Matthew Bowman_____          _____
PRINT NAME                                    SIGNATURE

-3-

PROOF OF SERVICE                                    NO. CV 04-9049 SGL (RNBx)

EXHIBIT 34
PAGE 489

1

## DOCUMENT LIST

2

3   1) MGA'S PRELIMINARY RESPONSE TO MATTEL'S MOTION FOR LETTERS OF REQUEST

4

5   2) PROOF OF SERVICE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-4-

EXHIBIT 34
PAGE 490

1  SERVICE LIST

2

3  John B. Quinn, Esq.
   Michael T. Zeller, Esq.
4  Jon D. Corey, Esq.
   Timothy L. Alger, Esq.
5  Quinn Emanuel Urquhart Oliver &
   Hedges, LLP
6  865 South Figueroa Street, 10th Floor
   Los Angeles, CA 90017-2543
7  (213) 443-3000
   (213) 443-3100 (Fax)
8
   Attorneys for Mattel, Inc.
9  [Personal Service]

10

11

12  Mark E. Overland, Esq.
    Alexander H. Cote, Esq.
13  David C. Scheper, Esq.
    Overland Borenstein Scheper & Kim
    300 South Grand Avenue, Suite 2750
14  Los Angeles, CA 90071
    (213) 613-4655
15  (213) 613-4656 (Fax)

16  [Federal Express]

17

18

19

20

21

22

23

24

25

26

27

28

John W. Keker, Esq.
Michael H. Page, Esq.
Keker & Van Nest, LLP
710 Sansome Street
San Francisco, CA 94111
(415) 391-5400
(415) 397-7188 (Fax)

Attorneys for Carter Bryant
[Federal Express]

-5-

PROOF OF SERVICE                                    NO. CV 04-9049 SGL (RNBx)

EXHIBIT 34
PAGE 491

EXHIBIT 35

1  Robert C. O'Brien (SBN 154372)
   ARENT FOX LLP
2  555 West Fifth Street, 48th Floor
   Los Angeles, CA 90013-1065
3  Telephone: 213.629.7400
   Facsimile: 213.629.7401
4  obrien.robert@arentfox.com

5  Discovery Master

6

7

8              UNITED STATES DISTRICT COURT

9            CENTRAL DISTRICT OF CALIFORNIA

10                  EASTERN DIVISION

11

12  CARTER BRYANT, an individual,      Case No. CV 04-09049 SGL (RNBx)

13              Plaintiff,
                                       Consolidated with
14        v.                           Case No. CV 04-09059
                                       Case No. CV 05-2727
15  MATTEL, INC., a Delaware
    corporation,                       **PHASE 2 DISCOVERY MATTER**
16
                Defendant.             **ORDER NO. 52, REGARDING:**
17
                                       **(1) MOTION TO COMPEL MGA**
18                                     **MEXICO TO PRODUCE**
                                       **DOCUMENTS RESPONSIVE TO**
19                                     **FIRST, SECOND AND THIRD SETS**
                                       **OF PHASE 1 REQUESTS FOR**
20                                     **PRODUCTION;**

21                                     **(2) MOTION TO COMPEL MGA**
                                       **MEXICO TO PRODUCE**
22                                     **DOCUMENTS RESPONSIVE TO**
                                       **FIRST SET OF PHASE 2**
23                                     **REQUESTS FOR PRODUCTION;**
                                       **and**
24
                                       **(3) MOTION FOR ISSUANCE OF**
25  CONSOLIDATED WITH                  **LETTERS OF REQUEST FOR**
    MATTEL, INC. v. BRYANT and         **VARGAS AND TRUEBA**
26  MGA ENTERTAINMENT, INC. v.
    MATTEL, INC.
27

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

                                                ORDER NO. 52
                                       [Case No. CV 04-09049 SGL (RNBx)]

**EXHIBIT 35**
**PAGE 492**

1        This Order sets forth the Discovery Master's ruling on the following

2    discovery matters:  (1) the motion to compel MGA de Mexico, S.R.L. de C.V.

3    ("MGA Mexico") to produce documents in response to first, second and third sets

4    of Phase 1 requests for production filed by Mattel, Inc. ("Mattel") ("Motion to

5    Compel") [Docket No. 5971]; (2) the motion to compel production of documents in

6    response to Mattel's first set of Phase 2 requests for production to MGA Mexico

7    ("Second Motion to Compel") [Docket No. 5982]; and (3) the motion for issuance

8    of letters of request for Vargas and Trueba filed by Mattel and request for

9    amendment filed by MGA Entertainment, Inc. ("MGA") ("Letter of Request

10   Motion") [Docket Nos. 5994 and 6090] (collectively, the "Motions").

11       The Discovery Master, having considered the papers filed in support of and

12   in opposition to the Motions, and having determined that oral argument was

13   unnecessary, rules as set forth below.

14   **I.**   **MOTION TO COMPEL**

15       **A.**   **Factual Background**

16           **1.**   **MGA Mexico Objects To The First Set Of Requests For**

17              **Production Propounded By Mattel**

18       On November 21, 2007, Mattel served its First Set of Requests for

19   Documents and Things on MGA Mexico, which included 148 separate requests for

20   production ("First Set of RFPs").  (Declaration of Marshall M. Searcy III in

21   Support of Mattel, Inc.'s Motion to Compel MGA Mexico to Produce Documents

22   and Things in Response to Mattel's First, Second and Third Sets of Requests for

23   Production to MGA Mexico ("Searcy Decl."), Ex. 1).  MGA Mexico objected to the

24   First Set of RFPs thirty days later without agreeing to produce any responsive

25   documents.  (*Id.*, Ex. 2 [Reponses to Requests 1 – 148]).

26   //

27   //

28   //

EXHIBIT 35
PAGE 493

1      **2.      MGA Mexico Agrees To Produce Responsive Documents To**
2              **318 Of The Second Set Of Requests For Production**
3              **Propounded By Mattel But Stands On Its Objections To The**
4              **Remaining 102 Requests**

5      On December 12, 2007, Mattel served its Second Set of Requests for

6      Documents and Things on MGA Mexico ("Second Set of RFPs"). (*Id.*, Ex. 3). The

7      Second Set of RFPs contained 420 separate requests for production. (*Id.*).

8      On January 11, 2008, MGA Mexico served its responses to the Second Set of

9      RFPs. (*Id.*, Ex. 4). With respect to 318 of the requests, it agreed to "produce all,

10     non-privileged, responsive documents in its possession, custody or control."[1] (*Id.*,

11     Ex. 4 [Responses to Request Nos. 1 – 8, 13 – 22, 25 – 35, 42 – 45, 54 – 58, 61, 71 –

12     85, 89 – 96, 101 – 104, 106, 117 – 147, 151 – 167, 174, 175, 177 – 179, 181 – 192,

13     194 – 199, 201 – 219, 221, 222, 227 – 248, 253 – 268, 277 – 299, 302 – 316, 329 –

14     342, 345 – 385, 387 – 397, 400 – 410, and 412 – 417]). As for the remaining 102

15     requests, it stood on its objections and refused to produce any responsive

16     documents. (*Id.*, Ex. 4 [Responses to Request Nos. 9 – 12, 23, 24, 36 – 41, 46 – 53,

17     59, 60, 62 – 70, 86 – 88, 97 – 100, 105, 107 – 116, 148 – 150, 168 – 173, 176, 180,

18     193, 200, 220, 223 – 226, 249 – 252, 269 – 276, 300, 301, 317 – 328, 343, 344,

19     386, 398, 399, 411, and 418 – 420]).

20     **3.      MGA Mexico Objects To The Third Set Of Requests For**
21              **Production Propounded By Mattel**

22     On January 22, 2008, Mattel served six additional requests for production on

23     MGA Mexico ("Third Set of RFPs"). (*Id.*, Ex. 5). MGA Mexico objected to this

24     Third Set of RFPs on February 21, 2008 and, once again, did not agree to produce

25     any responsive documents. (*Id.*, Ex. 6 [Responses to Request Nos. 1 – 6]).

26

27     ───────────────
       [1] In its Opposition to the Motion to Compel, MGA Mexico asserts that it agreed to produce documents in response to
28     309 of the requests. However, this figure is inconsistent with the actual responses to the Second Set of RFPs.
       (Compare Opposition to Motion to Compel at p. 4 fn. 9 with Ex. 4 to the Searcy Decl.).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES
                                          - 2 -                    ORDER NO. 52
                                                          [Case No. CV 04-09049 SGL (RNBx)]

                                                          **EXHIBIT 35**
                                                          **PAGE 494**

**B.**    **The Relief Sought By Mattel**

Mattel requests that the Discovery Master (1) overrule all of MGA Mexico's objections to Mattel's First Set of RFPs, Second Set of RFPs and Third Set of RFPs, (2) compel MGA Mexico to produce all relevant, non-privileged documents in its possession, custody or control which are responsive to Mattel's First Set of RFPs, Second Set of RFPs and Third Set of RFPs, (3) compel MGA Mexico to provide Mattel with a privilege log, and (4) impose sanctions in the amount of $5000. (Motion to Compel, pp. 32 – 33).

Mattel claims that such relief is warranted for the following reasons. First, Mattel argues that MGA Mexico's general objections do not provide a basis to withhold any documents. (*Id.*, pp. 11 – 13). Second, Mattel argues that MGA Mexico's specific objections are boilerplate and improper. (*Id.*, pp. 5 – 6). Third, Mattel argues that MGA Mexico's definitional objections are unfounded. (*Id.*, pp. 14 – 17). Fourth, Mattel argues that MGA Mexico's relevance objections are conclusory and should be overruled because the requests are relevant to Phase 2 issues. (*Id.*, pp. 6 – 7 and 18 – 31). Fifth, Mattel argues that the production of documents by other parties does not relieve MGA Mexico of its obligation to produce documents. (*Id.*, pp. 10 – 11). Sixth, Mattel argues that MGA Mexico may not avoid producing documents within its possession, custody or control by requiring Mattel to seek documents from other sources. (*Id.*, pp. 7 – 8). Seventh, Mattel argues that that the requests describe the categories of documents to be produced with reasonable particularity. (*Id.*, pp. 8 – 9). Eighth, Mattel argues that the protective order is sufficient to protect any privacy rights and commercially sensitive information. (*Id.*, pp. 9 – 10). Ninth, Mattel argues that MGA Mexico's mere agreement to produce documents regarding some of the requests does not foreclose an order compelling production. (*Id.*, pp. 13 – 14). Finally, Mattel argues that MGA Mexico should be sanctioned for its refusal to comply with its discovery obligations. (*Id.*, pp. 31 – 32).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 3 -

ORDER NO. 52
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 35
PAGE 495

C.   **MGA Mexico's Opposition**

MGA Mexico opposes the Motion to Compel on six grounds.  First, MGA

Mexico argues that the Motion to Compel is procedurally defective because there is

no separate statement, Mattel has not provided the necessary information for the

Discovery Master to evaluate each of the 574 requests at issue, and "[i]t simply is

not enough for Mattel to broadly categorize its requests and summarily dismiss

each of MGA Mexico's detailed objections and responses to the requests."

(Opposition to Motion to Compel, pp. 7 – 8).  Second, MGA Mexico argues that

the Motion to Compel is unreasonable and improper because (1) Mattel is seeking

to compel production with respect to 574 document requests and refuses to narrow

or limit even a single request, (2) the Motion to Compel ignores the thousand pages

of detailed objections to the 574 requests, (3) MGA Mexico has agreed to produce

documents in response to more than 300 of the requests at issue, (4) many of the

requests are duplicative of those served on other MGA Parties, (5) the MGA Parties

have produced 4.2 million pages of documents, (6) Mattel has refused to conduct

simple searches that would demonstrate MGA Mexico has produced documents,

(7) Mattel has not given any consideration to whether the specific requests at issue

are still relevant or necessary, (8) it is irrelevant in most instances whether an

MGA-created document is in the possession of MGA Mexico, (9) it is clear from

the face of many documents whether it was in the possession of MGA Mexico, and

(10) Mattel's representation that more than 400 requests are relevant to the issue of

unclean hands demonstrates the "absurdity of its position." (*Id.*, pp. 4 – 7).  Third,

MGA Mexico argues that a number of defined terms embedded in the requests are

objectionable. (*Id.*, pp. 9 – 12).  Fourth, MGA Mexico argues that the requests seek

irrelevant information, are overbroad and unduly burdensome. (*Id.*, pp. 12 – 16).

Fifth, MGA Mexico argues that its objections to the requests are not boilerplate but

have been specifically tailored to each request. (*Id.*, pp. 16 – 17).  Finally, MGA

Mexico argues that Mattel should be sanctioned for filing "an omnibus motion to

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 4 -

ORDER NO. 52
[Case No. CV 04-09049 SGL (RNBx)]
EXHIBIT 35
PAGE 496

1    compel" without agreeing to limit its requests in any fashion and with the

2    knowledge that MGA Mexico agreed to provide documents in response to more

3    than 300 requests at issue.[2]  (*Id.*, pp. 17 – 18).

4         **D.    Analysis**

5              **1.    Federal Rules Of Civil Procedure 26 And 34**

6         Pursuant to Federal Rule of Civil Procedure 26(b), "[p]arties may obtain

7    discovery regarding any matter, not privileged, that is relevant to the claim or

8    defense of any party. . . . Relevant information need not be admissible at trial if the

9    discovery appears reasonably calculated to lead to the discovery of admissible

10   evidence." (Fed. R. Civ. P. 26(b)(1)).

11        Federal Rule of Civil Procedure 34 further allows a party to

12             serve on any other party a request within the scope of

13             Rule 26(b): (1) to produce and permit the requesting party

14             or its representative to inspect [or] copy . . . the following

15             items in the responding party's possession, custody, or

16             control: (A) any designated documents or electronically

17             stored information--including writings, drawings, graphs,

18             charts, photographs, sound recordings, images, and other

19             data or data compilations--stored in any medium from

20             which information can be obtained either directly or, if

21             necessary, after translation by the responding party into a

22             reasonably usable form . . . .

23   (Fed. R. Civ. P. 34(a)).

24

25   [2] The parties filed several supplemental declarations (two by MGA Mexico and one by Mattel) after the Discovery Master ruled that the Motions would be decided on the papers (collectively, the "Supplemental Papers"). Mattel
26   objected to the second supplemental declaration filed by MGA Mexico. Because the Supplemental Papers are untimely, I exercise my discretion not to consider them. (*See, e.g., Ashton-Tate Corp. v. Ross*, 916 F.2d 516, 520
27   (9th Cir. 1990) [district court may disregard untimely opposing affidavits]; *Russell v. Harms*, 397 F.3d 458, 467 (7th Cir. 2005) [not abuse of discretion for district court to refuse to consider late filed affidavit]). Regardless, the
28   Supplemental Papers do not alter the conclusions reached herein in any way.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 5 -

ORDER NO. 52
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 35
PAGE 497

1    A request served in connection with Rule 34(a) "must describe with

2    reasonable particularity each item or category of items to be inspected" and

3    "specify a reasonable time, place, and manner for the inspection and for performing

4    the related acts."   (Fed. R. Civ. P. 34(b)).

5    "The party to whom the request is directed must respond in writing within 30

6    days after being served" and "either state that inspection and related activities will

7    be permitted as requested or state an objection to the request, including the

8    reasons." (*Id.*).   Where the responding party indicates that it will produce

9    documents, it must produce them "as they are kept in the usual course of business

10   or must organize and label them to correspond to the categories in the request."

11   (*Id.*).

### 2.    The Motion To Compel Is Proper With Respect To 318 Requests

14   As an initial matter, MGA Mexico asserts in its Opposition that the Motion to

15   Compel is at least partially moot because it "has agreed to produce document in

16   response to more than 300 of the requests at issue." (Opposition to Motion to

17   Compel, p. 4 and fn. 9).   However, there is an important distinction between

18   promising to produce documents and actually producing them.  Unless the promise

19   is fulfilled, stating that documents will be produced means nothing.  As Mattel

20   notes, "[e]ither information has been disclosed or it has not been disclosed.  If it has

21   not been disclosed, then, plainly, it remains to be compelled." (Motion to Compel,

22   p. 13 [quoting *Lamoureux v. Genesis Pharmacy Servs., Inc.*, 226 F.R.D. 154, 159

23   (D.Conn. 2004)]).   Accordingly, Mattel's Motion to Compel is not moot unless

24   MGA lived up to its promise to "produce all, non-privileged, responsive documents

25   in its possession, custody or control" concerning 318 requests set forth in the

26   Second Set of RFPs. (Searcy Decl., Ex. 4 [Responses to Request Nos. 1 – 8, 13 –

27   22, 25 – 35, 42 – 45, 54 – 58, 61, 71 – 85, 89 – 96, 101 – 104, 106, 117 – 147, 151

28   – 167, 174, 175, 177 – 179, 181 – 192, 194 – 199, 201 – 219, 221, 222, 227 – 248,

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 6 -

ORDER NO. 52
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 35
PAGE 498

1   253 – 268, 277 – 299, 302 – 316, 329 – 342, 345 – 385, 387 – 397, 400 – 410, and

2   412 – 417]).

3             a.   **Even If It Produced Documents Previously, MGA**

4                  **Mexico Has Not Produced Materials In Compliance**

5                  **With Federal Rule Of Civil Procedure 34**

6         While MGA Mexico argues "that documents from [it] ha[ve], in fact, been

7   previously produced in th[is] action," (Opposition to Motion to Compel, p. 3), it has

8   not satisfied its obligation under Rule 34 to produce documents "as they are kept in

9   the usual course of business or . . . [alternatively] organize and label them to

10  correspond to the categories in the request." (Fed. R. Civ. P. 34(b)).  Indeed, even

11  assuming the Discovery Master found MGA Mexico's assertion that it has

12  previously produced documents credible (which I do not for the reasons discussed

13  below in Section I.A.2.b.), the most favorable interpretation of MGA Mexico's

14  position is that it produced responsive materials at the same time as other MGA

15  Parties.  (Opposition to Motion to Compel, p. 2 ["[T]he MGA Parties have

16  produced more than 4.2 million documents.  However, Mattel wants . . . to badger

17  MGA Mexico into reproducing thousands of documents already produced in this

18  action, either by MGA Mexico or by another MGA party."]).  But a production that

19  commingles MGA Mexico's documents along with the documents of other MGA

20  Parties is not a production of documents "as they are kept in the usual course of

21  business." (Fed. R. Civ. P. 34(b)).  Nor has MGA Mexico organized and labeled

22  any alleged documents that it produced to correspond to the categories in Mattel's

23  requests. (*Id.*).  Accordingly, the Discovery Master finds that, even assuming MGA

24  Mexico previously produced responsive documents, it has not complied with Rule

25  34.  For this reason alone, the Motion to Compel must be granted with respect to

26  the 318 requests for which MGA Mexico promised to provide all non-privileged

27  responsive documents.

28  //

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 7 -

ORDER NO. 52
[Case No. CV 04-09049 SGL (RNBx)]

**EXHIBIT 35**
**PAGE 499**

1
2
3
4

            **b.**    **MGA Mexico Has Not Established That It Has
Produced Any Documents Responsive To The 318
Requests For Which It Promised To Provide All Non-
Privileged Materials**

5       The Discovery Master also finds that the contention that MGA Mexico has

6   already produced responsive documents is not supported by the record.  The lone

7   production MGA Mexico references in its Opposition as potentially having been

8   produced is a CD, (*see* Opposition to Motion to Compel, p. 5), which is "Bates

9   numbered *MGA* 3815506,"[3] (Reply in Support of Motion to Compel, p. 3; *see also*

10  Declaration of William A. Molinski, Ex. C at p.1).  That *MGA* may have produced

11  a CD, however, is not the same as *MGA Mexico* satisfying its independent

12  discovery obligations unless MGA Mexico is claiming that certain documents were

13  actually produced by MGA on its behalf.  But there is no such allegation set forth

14  anywhere in MGA Mexico's Opposition.

15      Nor does the Opposition ever reference any correspondence in which MGA

16  Mexico allegedly transmitted a document production to Mattel, let alone point to

17  any documents bearing a MGA Mexico bates number.  Rather than simply

18  identifying the documents it produced, MGA Mexico has ignored multiple requests

19  from Mattel for this basic information. In fact, in its meet and confer efforts leading

20  up to this motion, Mattel sent MGA Mexico's counsel a letter that claimed "MGA

21  Mexico has not produced any documents in response to Mattel's First, Second, and

22  Third Sets of Request." (Searcy Decl., Ex. 7).  MGA responded one week later by

23  stating that it "will not re-produce the **millions** of documents it has already

24  produced." (*Id.*, Ex. 8 at p. 1 [emphasis in original]).  Mattel then informed MGA

25

26  [3] MGA Mexico claims that "it is clear from the face of many documents produced whether it was in the possession of
27  MGA Mexico" because they are in Spanish and/or provide sufficient information for Mattel do determine whether
the documents were in MGA Mexico's possession. (Opposition to Motion to Compel, p. 7).  However, the critical
28  inquiry regarding production is not whether the documents were in MGA Mexico's possession at some point in time
but rather whether MGA Mexico in fact produced the document(s).

Arent Fox LLP
Attorneys At Law
Los Angeles

- 8 -

ORDER NO. 52
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _35_
PAGE _500_

1  Mexico that

2  　　　　None of the '4.2 million pages' you refer to has a

3  　　　　distinctive Bates number or other identifier which would

4  　　　　indicate that any of them were produced by MGA

5  　　　　Mexico.  Moreover, your letter does not identify a single

6  　　　　document produced by MGA Mexico.  Nor does your

7  　　　　letter identify a single document request for which MGA

8  　　　　Mexico has produced documents. . . . *As part of the meet*

9  　　　　*and confer, we would expect that, if MGA Mexico has*

10 　　　　*indeed produced responsive documents, it should be*

11 　　　　*prepared to identify by Bates number the responsive*

12 　　　　*documents it claims to have produced* . . .

13 (*Id.,* Ex. 9 at pp. 1 and 2 [emphasis added]).  After receiving this correspondence

14 from Mattel, MGA Mexico reiterated that it did not have any obligation to indicate

15 which of the millions of documents produced by the MGA Parties were actually

16 produced by MGA Mexico.[4]  (*Id.,* Ex. 10 at p. 1).  This statement is not only in

17 violation of Federal Rule of Civil Procedure 34's requirements regarding how

18 documents must be produced, (*see Mancini v. Insurance Corp. of New York,* 2009

19 WL 1765295 *5 (S.D.Cal., June 18, 2009) [concluding that a party is required to

20 produce documents as they are kept in the ordinary course of business or respond to

21 document requests by specifying which documents respond to which requests, such

22 as by bates number]), but fails to even identify what documents were produced.

23 Because MGA Mexico has not sufficiently identified any documents that it has

24 //

25 //

26

27 [4] The parties further had a conversation on April 23, 2009 wherein, at least according to Mattel's counsel, MGA
28 Mexico again took the "position that it will not identify the documents, if any, that it has produced in this
   litigation. . . . [and that it] did not have any record of the documents it produced." (*Id.,* Ex. 11 at p. 1).

Arent Fox LLP
Attorneys At Law
Los Angeles                                    - 9 -                    ORDER NO. 52
                                                    [Case No. CV 04-09049 SGL (RNBx)]
                                                              EXHIBIT 35
                                                              PAGE 501

1  allegedly produced to Mattel,[5] the Discovery Master grants Mattel's Motion to

2  Compel for all 318 requests where MGA Mexico promised to provide responsive

3  documents and orders all non-privileged materials produced within (20) days of this

4  Order. In the alternative, MGA Mexico may specifically identify by bates number

5  the "millions" of documents it claims to have already produced.

### 3.      The Format Of The Motion To Compel Is Inadequate To Permit An Efficient Analysis Of The Remaining 256 Document Requests

9        In Order No. 3, I overruled an objection arguing that Mattel's motion to

10  compel documents from several non-parties should be denied because it filed a

11  separate statement that may have included duplicative arguments. (Order No. 3, pp.

12  9 – 10). In so doing, I explained that "where there are numerous discovery requests

13  in dispute [I] would prefer for a separate statement to be submitted by the moving

14  party." (*Id.*, p. 10 fn. 10).

15        With respect to the Motion to Compel, there are 256 document requests at

16  issue to which MGA Mexico has not agreed to produce any responsive documents.

17  (Searcy Decl., Ex. 2 [Responses to Request Nos. 1 – 148], Ex. 4 [Responses to

18  Request Nos. 9 – 12, 23, 24, 36 – 41, 46 – 53, 59, 60, 62 – 70, 86 – 88, 97 – 100,

19  105, 107 – 116, 148 – 150, 168 – 173, 176, 180, 193, 200, 220, 223 – 226, 249 –

20  252, 269 – 276, 300, 301, 317 – 328, 343, 344, 386, 398, 399, 411, and 418 – 420],

21  and Ex. 6 [Responses to Request Nos. 1 – 6). Mattel also acknowledges—as it

---

[5] MGA Mexico's refusal to identify the documents it purportedly produced is likewise not excused because other MGA Parties may have produced documents. MGA Mexico and MGA are separate defendants with independent obligations to respond to discovery. (Fed. R. Civ. P. 34). While MGA Mexico argues that compelling discovery from it is unnecessary and duplicative because MGA has already responded to similar document requests, (Opposition to Motion to Compel, p. 5), discovery requests that are similar may nonetheless lead to the discovery of different information because documents "actually maintained in the files of each entity may not be identical." (*See, e.g., Diamond State Ins. Co. v. Rebel Oil Co., Inc.*, 157 F.R.D. 691, 697 (D.Nev. 1994)). Furthermore, Mattel is entitled to have MGA Mexico produce documents for purposes of authentication and because MGA Mexico's possession of particular documents is at issue. Indeed, Mattel has alleged that MGA Mexico persuaded Mattel employees to steal confidential information so that it could unfairly compete with Mattel. Therefore, MGA Mexico's possession of Mattel's information is a relevant fact and discoverable.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 10 -

ORDER NO. 52
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 35
PAGE 502

1  must—that MGA Mexico has asserted a litany of objections to every single request.

2  (Motion to Compel, p. 6 fn. 14).  Nevertheless, Mattel declined to file a separate

3  statement in support of its Motion to Compel because it thought a separate

4  statement "would not aid the Discovery Master in the resolution of this Motion

5  since it would consist of lengthy, unhelpful repetitions of the same MGA Mexico

6  objections over and over again." (*Id.*).

7      I disagree.  Given the voluminous nature of the document requests at issue,

8  the individual requests and responses must be submitted in a format that permits me

9  to review them side by side in a single document along with the parties' respective

10  positions.

11      In addition to failing to provide the necessary information in a usable format,

12  Mattel has not demonstrated how each of the document requests at issue is relevant

13  to a Phase 2 issue.  (*See Bryant v. Ochoa*, 2009 WL 1390794 at *1 (S.D.Cal. 2009)

14  ["The party seeking to compel discovery has the burden of establishing that its

15  request satisfies the relevancy requirements of Rule 26(b)(1). . . . Thereafter, the

16  party opposing the discovery has the burden of showing that the discovery should

17  be prohibited, and the burden of clarifying, explaining or supporting its

18  objections."]).  To the contrary, it has grouped its requests into categories and

19  broadly alleged that they relate to general issues in this case, including claiming

20  that 420 requests relate to MGA Mexico's affirmative defense of unclean hands.

21  (Motion to Compel, pp. 18 – 31).

22      Because it is Mattel's burden to apprise me of the issues in dispute and

23  demonstrate why the documents it seeks to compel are reasonably calculated to lead

24  to the discovery of admissible evidence, I find that the Motion to Compel is

25  procedurally defective at this time with respect to the remaining 256 document

26  requests and, therefore, deny it without prejudice.

27  //

28  //

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 11 -

ORDER NO. 52
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 35
PAGE 503

1      **4.    The Parties Are Ordered To Meet And Confer In Person**

2              **Regarding The 256 Document Requests And Submit A Joint**

3              **Statement Concerning Any Issues That Cannot Be Resolved**

4      Prior to the filing of any subsequent motion addressing the 256 document

5  requests, Mattel and MGA Mexico shall comply with Local Rule 37-1 (as modified

6  herein). Specifically, counsel for the parties (who possess authority to enter into

7  discovery agreements on behalf of their clients) shall meet and confer *in person* in a

8  good faith effort to eliminate the necessity for hearing the motion or to eliminate as

9  many of the disputes as possible. This conference shall take place at a mutually

10  convenient time within five (5) calendar days after Mattel serves a letter requesting

11  such conference on MGA Mexico's counsel.

12      If the parties are unable to settle their differences at the aforementioned

13  conference, they shall formulate a joint statement. The statement shall contain all

14  issues in dispute and, with respect to each such issue, the contentions and points

15  and authorities of each party. The statement shall not refer the Discovery Master to

16  any other documents. The specification of the issues in dispute, and the parties'

17  contentions and points and authorities with respect to such issues, may be preceded

18  by an introductory statement from each party, provided that no party's introductory

19  statement shall exceed twenty-five (25) pages in length. When a party states its

20  contentions with respect to a particular issue, such party shall also state how it

21  proposed to resolve the dispute over that issue at the conference of counsel. The

22  stipulation should present the disputed issues as concisely as the subject matter

23  permits and should be accompanied by an indexed table of contents setting forth the

24  headings or subheadings contained in the body thereof, but need not be

25  accompanied by a table of authorities.

26      Following the conference of counsel, counsel for Mattel shall personally

27  deliver, e-mail or fax to counsel for MGA Mexico Mattel's portion of the statement,

28  together with all declarations and exhibits to be offered in support of its position.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 12 -

ORDER NO. 52
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 35
PAGE 504

Case 2:04-cv-09049-DOC-RNB   Document 6901-8   Filed 10/01/09   Page 43 of 85   Page ID
#:229781
Case 2:04-cv-09049-SGL-RNB   Document 6437   Filed 08/26/2009   Page 14 of 36

1   Within fourteen (14) days, counsel for MGA Mexico shall personally deliver, e-

2   mail, or fax to counsel for Mattel MGA Mexico's portion of the stipulation,

3   together with all declarations and exhibits to be offered in support of its position.

4   After MGA Mexico's papers are added to the stipulation, it can be filed.

5        **E.**    **Summary Of Ruling Regarding The Motion To Compel**

6        The Discovery Master grants the Motion to Compel in part and orders MGA

7   Mexico to produce all non-privileged documents responsive to the 318 requests for

8   production for which it previously stated it would produce responsive materials

9   along with a privilege log.  The Discovery Master denies the Motion to Compel

10  without prejudice regarding the remaining 256 document requests, instructs the

11  parties to meet and confer in person to determine if any issues can be eliminated

12  regarding any subsequent motion involving the 256 requests, and orders the parties

13  to submit a joint stipulation in the event their differences cannot be resolved.

14       **F.**    **The Parties' Respective Requests For Sanctions**

15       Both parties contend that they are entitled to sanctions.  (Motion to Compel,

16  pp. 31 and 32; Opposition to Motion to Compel, pp. 17 and 18).  However, each

17  side advanced some meritorious arguments and partially prevailed in connection

18  with the Motion to Compel.  Accordingly, the Discovery Master concludes that an

19  award of sanctions against either side is inappropriate.

20  **II.**   **SECOND MOTION TO COMPEL**

21       **A.**    **Factual Background**

22            **1.**    **Mattel Serves Its First Set Of Phase 2 Requests, And MGA**

23                   **Mexico Responds By Objecting To All Categories**

24       On April 16, 2009, Mattel served its First Set of Requests for Documents

25  (Phase 2) on MGA Mexico (the "Requests").  (Declaration of Marshall M. Searcy

26  III in Support of Mattel, Inc.'s Motion to Compel Production of Documents and

27  Things in Response to Mattel's 1st Set of (Phase 2) RFPs to MGA Mexico

28  ("Second Searcy Decl."), Ex. 4).  The Requests consist of 83 categories seeking,

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 13 -

ORDER NO. 52
[Case No. CV 04-09049 SGL (RNBx)]

**EXHIBIT 35**
**PAGE 505**

1    among other things, documents concerning the involvement of Marianna Trueba

2    and Pablo Vargas ("Trueba and Vargas") in almost every aspect of the operation of

3    MGA Mexico.

4        MGA Mexico responded to the Requests on May 18, 2009.  The responses

5    consisted entirely of objections and did not state that MGA Mexico would produce

6    documents in response to any of the 83 categories.  Among other things, MGA

7    Mexico objected that the requests were overly broad and unduly burdensome on the

8    grounds "that the post-March 1, 2007 time period is beyond the scope of Mattel's

9    Second Amended Answer and Counterclaims and is irrelevant to this action." (See,

10   e.g., Second Searcy Decl., Ex. 5 [Response to Request Nos. 1 – 47]).  MGA

11   Mexico also objected that the requests were duplicative of prior requests (but did

12   not identify the supposedly duplicative requests), sought trade secret information,

13   and "violate[d] the privacy rights of third parties to their confidential, proprietary or

14   trade secret information." (Id. [Response to Request Nos. 1 – 83]).

15              **2.    The Meet And Confer Process**

16       On June 18, 2009, counsel for Mattel wrote to MGA Mexico to request a

17   meet and confer regarding the objections and Mattel's anticipated motion to compel

18   ("June 18, 2009 Letter").  (Second Searcy Decl., Ex. 6).

19       According to Mattel, the Requests relating to Trueba and Vargas are proper

20   because MGA Mexico had placed "at issue their duties, responsibilities and roles

21   for MGA Mexico" by claiming that they "are . . . low-level employees without

22   meaningful responsibility." (Id. at p. 1).  Mattel asserted that the documents sought

23   could enable Mattel to rebut that claim.  Mattel also argued that the documents

24   sought bear on the issue of whether Vargas and Trueba's actions could be imputed

25   to MGA Mexico. (Id. at pp. 1 and 2).

26       With respect to the Requests involving MGA Mexico's communications with

27   law enforcement officials, Mattel noted that MGA Mexico had successfully sought

28   an order compelling such documents from Mattel.  Consequently Mattel should be

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 14 -                      ORDER NO. 52
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 35
PAGE 506

1   able to obtain any such documents in MGA Mexico's possession.  (*Id.* at p. 2).

2   With respect to information relating to MGA Mexico's trade secrets and contracts

3   between it and third parties which were negotiated by Trueba and Vargas, Mattel

4   asserted that any privacy concerns are obviated by the existence of the Protective

5   Order.  (*Id.*)  Mattel did not offer any discussion of specific Requests in its June 18,

6   2009 Letter.

7        Before MGA Mexico responded to the June 18, 2009 letter, counsel for

8   Mattel wrote a follow up letter asking for "available dates for a meet and confer."

9   (Second Searcy Decl., Ex. 7).

10       The next day (i.e., June 25, 2009), MGA Mexico responded ("June 25, 2009

11  Letter").  It began by asserting that 43 of the Requests (i.e., Request Nos. 1 – 21, 24

12  – 26, 29 – 32, 37, 39 – 50, 55 and 56) "all purport to seek information to establish

13  that [Trueba and Vargas] are managing agents of MGA Mexico," which "is only

14  conceivably relevant to determine whether [they] may be compelled to attend

15  depositions based on mere notice." (Second Searcy Decl., Ex. 8 at p. 1).  MGA

16  Mexico asserted that, given the rulings by the Court and the Discovery Master

17  adjudicating that issue, such Requests are moot.  (*Id.*).

18       MGA Mexico next turned to a group of 14 Requests (Nos. 22, 23, 33 – 36,

19  57, 59, 61, 63, 65, 69, 77 and 78).  Quoting four of those Requests (i.e., Nos. 36,

20  59, 77, and 78) MGA Mexico discussed each individually to illustrate its contention

21  that the entire group seeks information about MGA Mexico's internal policies with

22  respect to trade secrets, expenditures and other matters which, according to MGA

23  Mexico, "bear no relation" to the parties' claims and defenses.  (*Id.* at pp. 1 and 2).

24       Lastly, MGA Mexico argued that seven of the requests (Request Nos. 22, 23,

25  57, 65, 69, 77, and 78) are overly broad.  (*Id.* at pp. 2 and 3).

26       Despite the foregoing objections, MGA Mexico agreed to produce "all

27  relevant, non-privileged documents responsive to Request Nos. 27, 28, 38, 51 – 54,

28  58, 60, 62, 64, 66 – 68, 70 – 76, and 79 – 83.  (*Id.* at p. 3).  Among these are three

EXHIBIT **35**
PAGE **507**

1   categories (Request Nos. 51 – 53) relating to the alleged theft of trade secrets and

2   criminal investigation arising therefrom.  However, as of this date, MGA Mexico

3   has not produced any of the promised documents.

4       In the June 25, 2009 Letter, MGA Mexico's counsel also offered to meet the

5   next day to try to reach an agreement on these issues.  (*Id.*).  Mattel did not respond

6   to this offer.

7           **3.**    **Mattel Files The Second Motion To Compel**

8       On July 15, 2009, Mattel filed its Second Motion to Compel against MGA

9   Mexico.  Mattel did not file a Separate Statement setting forth the individual

10  Requests and an explanation as to why each was appropriately tailored to seek

11  information relevant to Phase 2 issues.  Nor did Mattel discuss the text of a single

12  one of the Requests in its motion.  Instead, Mattel grouped the Requests in

13  categories and summarized the general subject matter of those categories, without

14  quoting any specific language actually contained in the Requests or linking that

15  language to Phase 2 issues.

16      With respect to the 26 Requests for which MGA Mexico agreed during the

17  meet and confer process to produce "relevant" documents, Mattel pointed out that

18  MGA Mexico has failed to produce a single page of these promised documents.

19  Mattel also argued that MGA Mexico's agreement to produce only documents

20  which it deems relevant is improper in that Mattel is entitled to all responsive

21  documents, not just those MGA Mexico cherry picks pursuant to its own

22  undisclosed, subjective criteria.  (Second Motion to Compel, p. 22 and Reply in

23  Support of Second Motion to Compel, pp. 3 – 4).

24          **4.**    **MGA Mexico's Opposition To The Second Motion To**

25              **Compel**

26      In its Opposition to the Second Motion to Compel, MGA Mexico argues that

27  Mattel failed to adequately meet and confer by, among other things, refusing to

28  clarify or narrow the scope of even a single one of the Requests.  MGA Mexico also

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 16 -

ORDER NO. 52
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 35
PAGE 508

1    argues that Mattel ignored MGA Mexico's proposal to further meet and confer on

2    June 26, 2009 and instead rushed headlong into premature motion practice.

3    (Opposition to Second Motion to Compel, pp. 5 and 6).

4         With respect to the substance of the motion, MGA Mexico notes that Mattel

5    did not discuss the actual text of a single one of the Requests in its Second Motion

6    to Compel or supply the Discovery Master with a Separate Statement.  MGA

7    Mexico then quotes and discusses several of the Requests to support its contention

8    that the Requests are overbroad and unduly burdensome.  (*Id.*, pp. 6 – 13).

9    However, it did not support its claim of burden by providing any declaration

10   indicating that the Requests would, in practice, force MGA Mexico to review and

11   produce an unduly voluminous amount of documents.

12        **B.    The Relief Sought By the Parties**

13        Mattel seeks to compel immediate compliance with all 83 categories as

14   written, without narrowing, clarifying or qualifying the scope of any of them.

15   Mattel also seeks sanctions in the amount of $5,000, representing the attorneys'

16   fees incurred in preparing the Second Motion to Compel, but has not provided a

17   declaration attesting to the amount of fees incurred.

18        MGA Mexico claims that the Second Motion to Compel should be denied for

19   the reasons discussed above and seeks sanctions based on Mattel's alleged failure to

20   meet and confer in good faith.  However, MGA Mexico has not specified the

21   amount of sanctions sought by it nor submitted a declaration attesting to the amount

22   of fees it incurred in opposing the Second Motion to Compel.

23        **C.    Analysis**

24        **1.    Neither Side Has Fulfilled Its Discovery Obligations**

25        As demonstrated by the facts set forth above, the parties have made virtually

26   no progress in narrowing – or even defining – their disputes in a manner that would

27   enable the Discovery Master to efficiently adjudicate the Second Motion to

28   Compel.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 17 -

ORDER NO. 52
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 35
PAGE 509

1    As the moving party, Mattel bears the burden of: (1) demonstrating that it
2    has made a good faith attempt to resolve, or at least narrow, the dispute, and
3    (2) presenting the issues to the Discovery Master in a format that will enable me to
4    address the dispute in an orderly and efficient manner. Mattel has not sufficiently
5    accomplished either of these necessary prerequisites.

6    Mattel has also not sufficiently addressed the merits of MGA Mexico's
7    relevance objections. Moreover, while Mattel is correct that a Separate Statement
8    is not required with respect to every motion to compel filed in this matter, that fact
9    does not absolve the moving party from presenting the issues in *some* readily-
10   usable format. Nor does it conform with the pronouncement in Order No. 3,
11   indicating that "where there are numerous discovery requests in dispute [I] would
12   prefer for a separate statement to be submitted by the moving party." (Order No. 3,
13   p. 10 fn. 10).

14   Here, Mattel never discussed the actual language of a single one of the 83
15   Requests in its moving papers. Instead, Mattel opted to summarize the general
16   subject matter of groups of Requests. Such an approach is of very little use where,
17   as here, the responding party is objecting to the specific language of numerous
18   individual Requests.

19   For its part, MGA Mexico has failed to adequately respond to the Requests.
20   While many of the Requests may be overbroad, they clearly encompass some
21   relevant documents. Accordingly, MGA Mexico had the obligation to promptly
22   produce responsive documents which do relate to the parties' claims and defenses
23   (for instance, the law-enforcement related files sought in Requests 51 – 53). MGA
24   Mexico has failed to produce any such documents. Further, MGA Mexico has, as
25   more fully discussed below, taken the position that it is entitled to unilaterally
26   revise the scope of the Requests, without providing any basis for Mattel or the
27   Discovery Master to determine whether MGA Mexico's interpretation of the
28   subject Requests is appropriate.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 18 -

ORDER NO. 52
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 35
PAGE 510

2. **MGA Mexico Must Produce Documents Responsive To The 26 Categories Identified In Its June 25, 2009 Letter and Must Serve Supplemental Responses Explaining How It Determined "Relevance" As To Each Category**

MGA Mexico emphasizes that it has "offered" to produce documents "relevant" to 26 of the Requests. (Opposition to Second Motion to Compel, pp. 4 – 6). However, as explained in Section I.D.2 above, an offer is not compliance. MGA Mexico must promptly comply with its discovery obligations and produce documents it agreed to produce along with a privilege log.

Mattel argues that, even if MGA Mexico produces the subject documents, such production is inadequate because it has improperly qualified its statement of compliance. Specifically, in its June 25, 2009 letter, MGA Mexico agreed to produce "all *relevant*, non-privileged documents responsive to Request Nos. 27, 28, 38, 51 – 54, 58, 60, 62, 64, 66 – 68, 70 – 76, and 79 – 83." (Second Searcy Decl., Ex. 8 at p. 3 [emphasis added]). It did not, however, agree to produce all *responsive* and non-privileged documents to those requests, and did not give any explanation as to which documents it intended to withhold as not "relevant." As Mattel points out, this practice has already been rejected by the prior discovery master. Specifically, in 2007, MGA responded to Mattel documents requests by stating only that it would "produce relevant and responsive non-objectionable documents," and claimed that this response was sufficient. The prior discovery master ruled those responses were improper because "[t]hese restrictions suggest that MGA might be excluding documents that are responsive to the request based upon its unilateral determination of what is 'relevant' or sufficient.'" (Order Granting Mattel's Motion to Compel Production of Documents and Interrogatory Responses By MGA, dated May 15, 2007).

A party propounding discovery is entitled to a plain understanding of what is being produced, and what is not. A party may not make a vague statement that it is

EXHIBIT _35_
PAGE _511_

1  producing relevant documents – and withholding irrelevant ones – without any

2  indication of what documents it believes relevant or irrelevant. (*See Athridge v.*

3  *Aetna Cas. and Sur. Co.*, 184 F.R.D. 181, 190 (D.D.C. 1998) ["Asserting a

4  relevance objection, then proceeding to agree to produce 'relevant, non-privileged'

5  documents '[s]ubject to and without waiving' that objection, serves only to obscure

6  potentially discoverable information and provides no mechanism for either

7  plaintiffs or the Court to review defendant's decisions."]).

8       In light of this case law and the prior discovery master's May 15, 2007 order,

9  the Discovery Master agrees that allowing MGA Mexico to determine which

10  documents are "relevant" would permit MGA Mexico to produce only what it

11  wants to, and withhold anything it does not. Normally, the appropriate remedy in

12  this situation would be to order the responding party to produce all *responsive*

13  documents. However, given the fact that, as discussed more fully below, MGA

14  Mexico has made an initial showing that many of the Requests are overbroad, and

15  given Mattel's refusal to clarify, narrow, or even discuss the language of, any of the

16  Requests, the Discovery Master finds that the appropriate remedy at this time is to

17  compel only the production of the documents MGA Mexico has offered to produce,

18  subject to further production if and when Mattel demonstrates that such production

19  is warranted.

20       To enable Mattel to evaluate the sufficiency of MGA Mexico's production of

21  documents and determine whether further production is warranted, MGA Mexico

22  shall serve on Mattel supplemental verified responses to the 26 Requests identified

23  in MGA Mexico's June 25, 2009 letter (the "Supplemental Responses"). In each of

24  the Supplemental Responses, MGA Mexico shall: (a) explain in detail how it has

25  defined the scope of "relevant" documents being produced in response to the

26  particular Request; (b) cite any facts or allegations of the parties supporting its

27  definition of "relevance," (c) describe, in general terms, the types of documents

28  being produced pursuant to its definition of "relevance," and (d) describe the types

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 20 -

ORDER NO. 52
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 35
PAGE 512

1    of documents excluded from production pursuant to its definition of "relevance."

2    The description must be sufficient to enable Mattel and the Discovery Master to

3    evaluate whether the documents not produced may be discoverable and therefore

4    subject to a further motion to compel by Mattel.

       3.     **The Parties Must Meet And Confer In Person Regarding Each Of The Requests And Then File A Joint Statement (In The Form Set Forth In Section I.D.4.) Addressing Each Disputed Request**

9    As noted above, Mattel has failed to address the specific language of any of

10   the Requests or to demonstrate how that language is tailored to the scope of the

11   allegations in the parties' pleadings.

12   Instead, Mattel argues that the "substance" of the Requests relate to

13   legitimate Phase 2 issues. Because the Discovery Master requires the parties to

14   meet and confer further to, among other things, discuss the specific language of the

15   individual Requests, I do not address all of Mattel's arguments at this point.

16   However, by way of guidance, and in the hope of focusing the meet and confer

17   process, I take this opportunity to address the parties' chief point of disagreement

18   regarding the scope of the Requests.

19   According to Mattel, 58 of the Requests (Nos. 1 – 50, 55 – 58, 65, 70, 77 and

20   78) relate to the roles of Trueba and Vargas at MGA Mexico. In its June 18, 2009

21   Letter, Mattel offered two rationales for the Requests involving Trueba and Vargas'

22   employment by MGA Mexico. First, Mattel argued that the requested documents

23   are relevant to rebut MGA Mexico's assertion that Trueba and Vargas "are . . . low-

24   level employees without meaningful responsibility." Mattel elaborated on this

25   point in its moving papers:

26         Documents relating to contracts negotiated, signed, or entered

27         into by Vargas and Trueba on behalf of MGA Mexico are

28         relevant to show (a) that [MGA Mexico] indeed authorized

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 21 -

ORDER NO. 52
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 35
PAGE 513

1       Vargas and Trueba to bind it; and (b) exactly what MGA Mexico

2       operations are managed by Vargas and Trueba. . . . [T]he

3       documents may show that Vargas and Trueba are heavily

4       involved in or manage MGA Mexico operations that *specifically*

5       *relate to the trade secrets stolen from Mattel, including price lists*

6       *and costing information. . . . [S]uch facts . . . would be*

7       *circumstantial evidence that MGA Mexico used Mattel's trade*

8       *secrets stolen by Vargas and Trueba.*

9    (Second Motion to Compel, pp. 12 – 13 [emphasis added]).

10       Second, Mattel argued that the requested documents are relevant to show

11   whether Vargas and Trueba's actions can be imputed to MGA Mexico.  In its

12   moving papers, Mattel explains this point as follows:

13       Such documents are central to establishing Vargas' and Trueba's

14       role at MGA Mexico, and hence relevant to show that their acts

15       are imputable to [it] and that defendants are liable for punitive

16       damages. ... [¶].  MGA Mexico has repeatedly attempted to

17       minimize its own role in the wrongdoing by Vargas and Trueba,

18       representing without evidence or detail that they were mere mid-

19       level employees without significant responsibility or authority.

20       According to MGA Mexico, they stole Mattel's trade secrets on

21       their own, and without MGA Mexico's knowledge.

22   (*Id.*, p. 11).

23       Neither during the meet and confer process nor in its briefs does Mattel

24   provide support for its first rationale for production.  Specifically, Mattel has not

25   addressed MGA Mexico's objection on the ground that all of the Requests

26   specifying the post-March 1, 2007 time period are beyond the scope of the

27   pleadings.  Although Mattel argues that these issues have been properly raised in

28   Mattel's Third Amended Answer and Counterclaims dated May 22, 2009

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 22 -

ORDER NO. 52
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 35
PAGE 514

1   ("TAAC") (*id.*, pp. 15 – 16), the three paragraphs of the TAAC cited by Mattel do

2   not support Mattel's assertion that the TAAC alleges that "Vargas and Trueba have

3   used and continue to use their positions to exploit Mattel's trade secrets up to and

4   through the present," (*id.*, p. 16). In fact, only one of the three passages (all of

5   which are from Mattel's RICO counterclaim), even mentions Trueba and Vargas

6   (*see* TAAC, ¶ 134) and that one allegation does not allege any specific acts by them

7   other than being "employed by and associated in fact with" an alleged criminal

8   enterprise.

9        The other portions of the TAAC cited by Mattel do contain some specific

10  allegations regarding Trueba and Vargas, but those passages all allege conduct

11  occurring in 2004.[6] Moreover, those passages specifically involve the theft of trade

12  secrets relating to 2003 and 2004 data (*see, e.g.,* TAAC, ¶ 55 [referring to

13  "marketing projections[,] documents analyzing changes in sales performance from

14  2003 to 2004[,] budgets for advertising and promotional expenses," and so forth]).

15  Mattel does not point to any allegation in the TAAC that suggests that Trueba and

16  Vargas had access to or stole Mattel trade secrets any time after 2004.

17       In short, Mattel does not link these allegations to the specific language of the

18  Requests seeking documents for the time period after March 1, 2007. Further,

19  Mattel does not explain how Trueba and Vargas' responsibilities and functions after

20  March 1, 2007 relate to the quoted allegations of the TAAC or constitute

21  "circumstantial evidence that MGA Mexico used Mattel's [2004] trade secrets

22  stolen by Vargas and Trueba." (Second Motion to Compel, p. 16).

23       Likewise, with respect to Mattel's second argument (i.e., that the Requests

24  relate to Trueba and Vargas' status as "managing agents" and may therefore

25  support imputing their conduct to MGA Mexico for purposes of punitive damages),

26  Mattel does not respond to MGA Mexico's contention that the information sought

27

28  _____
[6] The one allegation that mentions 2006 in Paragraph 50 of the TAAC appears from the context to be a typographical error intended to refer to 2004.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 23 -

ORDER NO. 52
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 35
PAGE 515

1   by specific Requests is largely outside the scope of the legal elements comprising

2   the definition of "managing agent." (Opposition to Second Motion to Compel, p. 9).

3   Throughout the meet and confer process, and in its briefs, Mattel has remained

4   silent as to how the specific language of these 58 Requests (Nos. 1 – 50, 55 – 58,

5   65, 70, 77 and 78) relates to the "managing agent" status of Trueba and Vargas *at*

6   *the time* they committed the alleged conduct which Mattel seeks to impute to MGA

7   Mexico.

8        Rather than deny the Second Motion to Compel responses to these Requests

9   outright, the Discovery Master will give Mattel an opportunity to resume the meet

10  and confer process to address these issues.  Specifically, Mattel and MGA Mexico

11  are ordered to meet and confer in person to discuss the specific language of the

12  Requests for the purpose of determining whether that language can be clarified or

13  narrowed in a manner that would result in a mutually agreeable production of

14  responsive documents by MGA Mexico.

15       **D.   Summary Of Ruling Regarding The Second Motion To Compel**

16       The Discovery Master grants the Second Motion to Compel in part and

17  orders MGA Mexico to produce responsive documents to Request Nos. 27, 28, 38,

18  51 – 54, 58, 60, 62, 64, 66 – 68, 70 – 76, and 79 – 83, and (b) serve verified

19  Supplemental Responses for each of these 26 requests that (1) explain in detail how

20  it has defined the scope of "relevant" documents being produced in response to the

21  particular Request; (2) cite any facts or allegations of the parties supporting its'

22  definition of "relevance," (3) describe, in general terms, the types of documents

23  being produced pursuant to its definition of "relevance;" and (4) describe the types

24  of documents excluded from production pursuant to its definition of "relevance."

25  The Discovery Master denies the Second Motion to Compel without prejudice in all

26  other respects, instructs the parties to meet and confer in person to determine if any

27  issues can be eliminated regarding any subsequent motion involving the Requests,

28  and orders the parties to submit a joint statement in the event their differences

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 24 -

ORDER NO. 52
[Case No. CV 04-09049 SGL (RNBx)]
EXHIBIT   35
PAGE   516

1   cannot be resolved.

2       **E.**   **Neither Party Is Entitled To Sanctions At This Time**

3       Because both sides have failed to comply with their discovery obligations as

4   described above, the Discovery Master concludes that sanctions are not appropriate

5   at this time.  However, in the event that Mattel renews any aspect of its Second

6   Motion to Compel after receiving the Supplemental Responses and production of

7   documents, either side may request sanctions so long as the request is supported by

8   a declaration setting forth the factual basis therefor, including the fees incurred in

9   making or opposing any further motion.

10   **III.**   **LETTER OF REQUEST MOTION**

11       **A.**   **Factual Background**

12           **1.**   **The Proposed Deponents' Background And Nature of**

13                   **Examination Sought**

14       In its Letter of Request Motion, Mattel seeks to depose two witnesses, Pablo

15   Vargas San Jose ("Mr. Vargas") and Mariana Trueba Almada ("Ms. Trueba")

16   (collectively, the "Witnesses").  The Witnesses are former employees of Mattel and

17   are or were employees of MGA Mexico.[7]  Mattel alleges in its TAAC that the

18   Witnesses were induced by MGA and Isaac Larian to resign from their positions at

19   Mattel, steal Mattel's trade secrets and confidential business planning materials,

20   and provide Mattel's stolen information to MGA.  (*See* Mattel's Third Amended

21   Answer and Counterclaims, ¶¶ 44 – 60).

22           **2.**   **Procedural History**

23       Mattel previously sought to depose the Witnesses as managing agents by

24   noticing their depositions pursuant to Federal Rule of Civil Procedure 30(b)(1).  In

25

26   ---

[7] Mattel frames its Letter of Request Motion as if the Witnesses are current employees of MGA Mexico.  (*See* Letter of Request Motion, p. 6).  MGA, in contrast, states without elaboration that the individuals "are no longer employed

27   by MGA [Mexico]."  (*See* MGA's Non-Opposition to Letter of Request Motion, p. 2).  There is no dispute, however, that both individuals were employed by MGA Mexico subsequent to their employment by Mattel and remained as

28   MGA Mexico employees for some significant period, including times relevant to the claims made in this action.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 25 -

ORDER NO. 52
[Case No. CV 04-09049 SGL (RNBx)]

**EXHIBIT 35**
**PAGE 517**

1    response, MGA and its affiliated parties to this action, including MGA Mexico

2    (collectively, the "MGA Defendants"), objected to the deposition notices asserting

3    that neither Mr. Vargas nor Ms. Trueba was an officer, director or managing agent

4    of the MGA Defendants and therefore Mattel's deposition notices were insufficient

5    to command the appearance of the requested deponents.

6         On February 9, 2009, Mattel filed a motion to compel the depositions of the

7    Witnesses ("Motion to Compel Depositions"). (*See* Declaration of Marshall M.

8    Searcy in Support of Mattel, Inc.'s Motion for Issuance of Letters of Request for

9    Vargas and Trueba, Ex. 3). The MGA Defendants opposed the Motion to Compel

10   Depositions on February 13, 2009. (*Id.*, Ex. 4).

11        On March 31, 2009, I issued Amended Order No. 11 denying Mattel's

12   Motion to Compel Depositions on the ground that the evidence presented was

13   insufficient to allow me to determine that either Mr. Vargas or Ms. Trueba was a

14   managing agent of the MGA Defendants (Amended Order No. 11, pp. 26 – 36). In

15   Amended Order No. 11, I also expressly noted that

16        it is clear to the Discovery Master that the Witnesses have information

17        relating to several Phase 2 issues and that Mattel is entitled to take their

18        depositions. Accordingly, Mattel may promptly prepare letters rogatory and

19        submit them to the Discovery Master, who will see that the letters rogatory

20        are expeditiously issued by the Court.

21   (*Id.*, p. 36).

22        On April 13, 2009, Mattel filed a motion objecting to the portions of

23   Amended Order No. 11 relating to the Witnesses ("Appeal"). (*See* Mattel's Motion

24   Objecting to Portions of Discovery Master Order No. 11 dated April 13, 2009).  On

25   May 21, 2009, the Court denied Mattel's Appeal.  Mattel then filed the instant

26   Letter of Request Motion on July 22, 2009.

27   //

28   //

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 26 -                                    ORDER NO. 52
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 35
PAGE 518

**B.   The Relief Sought By Mattel**

Mattel requests that I issue an order recommending that the Court execute a letter of request for international judicial assistance. Specifically, Mattel seeks a letter of request "for the purpose of taking the deposition under oath of Pablo Vargas San Jose and Mariana Trueba Almada in Mexico City, Mexico." (Letter of Request Motion, p.1). A Proposed Letter of Request for Judicial Assistance was submitted by Mattel along with its Letter of Request Motion ("Mattel's Proposed Letter of Request").

**C.   MGA's Non-Opposition And Request For Amendment Of Mattel's Proposed Letter Of Request To Add An Additional Topic**

In its Opposition, MGA concedes that it does not oppose issuance of Mattel's Proposed Letter of Request. (*See* MGA's Non-Opposition to the Letter of Request Motion And Request For Amendment, p. 1). MGA requests, however, that an additional topic be added to Mattel's Proposed Letter of Request to allow for questioning of the Witnesses by MGA on MGA's claims and defenses against Mattel. (*Id.*, pp.1 – 2). Specifically, MGA seeks to depose the Witnesses on "Mattel's tortious, unfair, and anti-competitive practices to banish MGA from the market as described in MGA's complaint against Mattel." (*Id.*, p. 1). MGA also requests that the Court extend the seven hour limit for each of the requested depositions to allow for questioning by MGA. (*Id.*, p. 2).

**D.   Mattel's Reply Brief**

In its Reply, Mattel claims that MGA's request to amend Mattel's Proposed Letter of Request is inappropriate for three reasons. First, Mattel argues that the additional topic is vague and could delay approval of Mattel's Proposed Letter of Request. (Reply in Support of Letter of Request Motion, p. 1). Second, Mattel argues that if MGA wishes to depose the Witnesses, the depositions should count toward their Phase 2 deposition limits. (*Id.*, p. 2). Finally, Mattel argues that the request to extend the length of the depositions for questioning by MGA is

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 27 -

ORDER NO. 52
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT  35
PAGE  519

1  inappropriate because it assumes that the depositions are governed by the Federal

2  Rules of Civil Procedure when, in reality, the deposition procedure will be

3  determined by the Mexican judicial authorities. (*Id.*).

4        **E.**   **MGA's Supplemental Declaration And Mattel's Objections**

5           **Thereto**

6        Nearly three weeks after MGA filed its Opposition and two weeks after

7  Mattel filed its Reply, MGA filed a supplemental declaration that attached a revised

8  version of the proposed letter of request ("MGA's Proposed Letter of Request").

9  (*See* Declaration of William A. Molinski in Response to Motion for Issuance of

10  Letters of Request for Vargas and Trueba And Request for Amendment of Letters

11  dated August 17, 2009 ("Molinski Decl."), ¶ 4 and Ex. A). MGA's Proposed Letter

12  of Request modifies Mattel's Proposed Letter of Request in a variety of ways,

13  including by deleting information, adding information and inserting new topics that

14  were never discussed in MGA's Opposition. (*Id.*).

15        Mattel objects to the supplemental declaration on at least seven grounds.

16  (*See* Mattel's Objections to the Supplemental Declaration of William A. Molinski

17  in Response to Motion for Issuance of Letters of Request for Vargas and Trueba

18  and Request for Amendment of Letters dated August 18, 2009, pp. 1 – 5). First, it

19  argues that MGA has not filed any motion seeking the issuance of a letter of

20  request. (*Id.*, p. 1). Second, it argues that MGA's request to add additional topics

21  (other than the one identified in its Opposition) or otherwise modify Mattel's

22  Proposed Letter of Request is untimely and has been waived. (*Id.*, pp. 1 and 2).

23  Third, it argues that the supplemental declaration is an improper sur-reply. (*Id.*, p.

24  2). Fourth, it argues that MGA's Proposed Letter of Request is inconsistent with

25  prior orders. (*Id.*). Fifth, it argues that MGA's Proposed Letter of Request is

26  argumentative and the Discovery Master should not permit potentially unacceptable

27  topics to infect Mattel's Proposed Letter of Request. (*Id.*, p. 3). Sixth, it argues

28  that MGA's Proposed Letter of Request improperly requires Mattel to pay for the

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 28 -

ORDER NO. 52
[Case No. CV 04-09049 SGL (RNBx)]
**EXHIBIT 35**
**PAGE 520**

1   entirety of the deposition costs. (*Id.*, pp. 3 and 4). Finally, it argues that MGA's

2   Proposed Letter of Request should not delay the issuance of Mattel's Proposed

3   Letter of Request. (*Id.*, pp. 4 and 5).

4          **F.**    **Analysis**

5             **1.**    **Legal Standard**

6         Federal Rule of Civil Procedure 28(b)(1) permits a "deposition [to] be taken

7   in a foreign country . . . under a letter of request, whether or not captioned a 'letter

8   rogatory.'" Rule 28 further provides for the issuance of a letter of request "on

9   appropriate terms after an application and notice of it . . ." (Fed. R. Civ. P.

10   28(b)(2)).

11             **2.**    **Mattel's Proposed Letter Of Request Asks That All Parties**

12                   **Be Allowed To Fully Examine And Cross-Examine The**

13                   **Witnesses On The Subject Matter Of This Case**

14         In its Proposed Letter of Request, Mattel seeks to depose Mr. Vargas and Ms.

15   Trueba "as to their knowledge of the facts which are relevant to the claims and

16   defenses of these consolidated cases." (*See* Mattel's Proposed Letter of Request, p.

17   10:19-20). It further asks the Mexican judicial authorities to permit "Mr. Vargas

18   and Ms. Trueba to be examined under oath by counsel for all parties in this matter,

19   allowing full examination and cross-examination on the subject matter of this case,

20   including the topics delineated in Schedules B and C to this Letter of Request."

21   (*Id.*, p. 13:24-27). The depositions sought by the Letter of Request Motion are,

22   therefore, within the scope of permissible discovery for Phase 2 because Federal

23   Rule of Civil Procedure 26 allows litigants to "obtain discovery regarding any

24   matter, not privileged, that is relevant to the claim or defense of any party."

25   (Fed.R.Civ.P. 26(b)(1)).

26   //

27   //

28   //

Arent Fox LLP
Attorneys At Law
Los Angeles

- 29 -

ORDER NO. 52
[Case No. CV 04-09049 SGL (RNBx)]
EXHIBIT 35
PAGE 52

3.   MGA Concedes Mattel's Proposed Letter of Request Is
Proper

In its Opposition, MGA does not question the authority of the Court to issue
Mattel's Proposed Letter of Request under Rule 28, and concedes the depositions of
Mr. Vargas and Ms. Trueba are each proper under the circumstance of this case.
Nor does MGA oppose the form of Mattel's Proposed Letter of Request, other than
to request the addition of one topic.  In fact, MGA's Opposition is captioned "Non-
Opposition To Mattel's Motion for Issuance of Letters of Request for Vargas and
Trueba and Request for Amendment of Letters."  (*See* caption page to MGA's Non-
Opposition to the Letter of Request Motion and Request For Amendment).  The
Opposition further expressly states that MGA "does not oppose Mattel's Motion for
Issuance of Letters of Request for Vargas and Trueba" so long as "an additional
topic [is] added to the Letters to allow for questioning by MGA on MGA's claims
and defenses against Mattel" and MGA is provided time to conduct "its own
examination" of the Witnesses.  (*Id.*, pp. 1 and 2).  Therefore, the only issues left to
be decided are (1) whether the additional topic requested by MGA should be added
to Mattel's Proposed Letter of Request and (2) if the time limit for the depositions
should be extended.

The supplemental declaration filed by MGA on August 17, 2009 does not
alter this conclusion.  While MGA claims that its "Non-Opposition" to the Letter of
Request Motion objected to "the one-sided Letters of Request that Mattel sought to
have issued," (Molinski Decl., ¶ 2), and that the supplemental declaration merely
"responds to new arguments raised in Mattel's Reply," (*see* email from William
Molinski to Robert O'Brien dated August 17, 2009 at 4:36 p.m.), the modifications
MGA proposes by way of its supplemental declaration to Mattel's Proposed Letter
of Request were never raised in MGA's Opposition.  In fact, they are contrary to
MGA's express statement in its Opposition that it "does not oppose Mattel's
Motion for Issuance of Letters of Request for Vargas and Trueba" except for

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 30 -

ORDER NO. 52
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT  35
PAGE  522

1  requesting the addition of one topic. (*See* MGA's Non-Opposition to the Letter of

2  Request Motion And Request For Amendment, pp. 1 – 2). The supplemental

3  declaration further does not relate to any new arguments raised by Mattel in its

4  Reply. Accordingly, the Discovery Master finds that the arguments set forth in the

5  supplemental declaration are inconsistent with MGA's position in its Opposition,

6  have been waived, are untimely and constitute an improper sur-reply. (*See, e.g.,*

7  *Richmark Corp. v. Timber Falling Consultants,* 959 F.2d 1468, 1473 (9th Cir.

8  1992) [objections waived when not made in opposition to motion to compel];

9  *Diapulse Corp. of America v. Curtis Publishing Co.,* 374 F.2d 442, 445 (2d Cir.

10  1967) [arguments not raised in initial opposition to motion to compel were "clearly

11  afterthoughts" and were waived]). The Discovery Master, therefore, declines to

12  consider them in connection with this motion.

13         **4.      MGA's Proposed Additional Topic Is Already Encompassed**

14                 **Within The Scope Of Mattel's Proposed Letter Of Request**

15         As for the issues MGA did raise in its Opposition, MGA first requests that an

16  additional topic be added to Mattel's Proposed Letter of Request to allow for

17  questioning of the Witnesses by MGA on MGA's claims and defenses against

18  Mattel. (*See* MGA's Non-Opposition to the Letter of Request Motion And Request

19  For Amendment, p. 1). Specifically, MGA proposes the following additional topic:

20  "Mattel's tortious, unfair and anti-competitive practices to banish MGA from the

21  market as described in MGA's complaint against Mattel." (*Id.*).

22         Mattel claims that this requested topic is vague and that inserting it into

23  Mattel's Proposed Letter of Request may provide grounds for the Mexican judicial

24  authorities or the Witnesses to object to Mattel's Proposed Letter of Request.

25  (Reply in Support of Letter of Request Motion, p. 1). However, this argument is

26  unavailing, since Mattel's Proposed Letter of Request already encompasses this

27  topic and more. Indeed, notwithstanding certain statements that the deposition will

28  be limited to the topics set forth in Schedules B and C, (*see, e.g.,* Mattel's Proposed

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 31 -

ORDER NO. 52
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 35
PAGE 523

1   Letter of Request, pp. 10, 12 and 15), Mattel's Proposed Letter of Request

2   explicitly asks the Mexican judicial authorities on page 13 to "permit Mr. Vargas

3   and Ms. Trueba to be examined under oath by counsel for all parties in this matter,

4   allowing full examination and cross-examination on the *subject matter of this case*,

5   including the topics delineated in Schedules B and C to this Letter of Request."

6   (*See* Mattel's Proposed Letter of Request, p. 13:24-27 [emphasis added]).

7   Similarly, on page 10 of Mattel's Proposed Letter of Request, Mattel states that it

8   will "further the interests of justice" if Mr. Vargas and Ms. Trueba "are examined,

9   under oath, as to their knowledge of the facts which are relevant to the *claims and*

10  *defenses of these consolidated cases*." (*Id.* at p. 10:18-20). Given that Mattel's

11  Proposed Letter of Request already seeks permission for "all parties" to fully

12  examine the Witnesses as to the entire "subject matter of this case," including the

13  parties' "claims and defenses of these consolidated cases," the topic proposed by

14  MGA is squarely within the areas of examination already requested by Mattel.[8]

15  Accordingly, it is not necessary to add the additional topic requested by MGA in its

16  Opposition to Mattel's Proposed Letter of Request.[9]

17       **5.**    **MGA's Request For An Extension Of Time Is Also**

18             **Unnecessary Given The Language Of Mattel's Proposed**

19             **Letter Of Request**

20      MGA's request that the seven-hour time limit imposed by the Federal Rules

21  of Civil Procedure be extended for the depositions of Mr. Vargas and Ms. Trueba is

22  likewise unnecessary in light of the language of Mattel's Proposed Letter of

23

---

24  [8] Mattel itself references MGA's claims in Mattel's Proposed Letter of Request, noting that MGA filed a case against
    Mattel "alleging trade dress infringement, delusion (sic) and unfair competition," and alleging that the witnesses have

25  information relevant to "Mattel's defense against MGA's unfair competition claims . . ." (Mattel's Proposed Letter of
    Request, pp. 5 and 10).

26
    [9] In the event MGA wants its additional topic to proceed on a separate track or is concerned that the Mexican judicial

27  authorities or the Court might not enforce a sufficiently broad reading of Mattel's request that the examination
    include the entire "subject matter of this case," MGA has the option of filing a separate letter of request motion of its

28  own, specifying any area of examination it seeks.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 32 -

ORDER NO. 52
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 35
PAGE 524

1   Request.  Mattel has requested that the Mexican judicial authorities "permit Mr.

2   Vargas and Ms. Trueba to be examined under oath *by counsel for all parties* in this

3   matter, *allowing full examination and cross-examination* on the subject matter of

4   this case . . ." (*See* Mattel's Proposed Letter of Request, p. 13:24-26 [emphasis

5   added]).  Mattel's Proposed Letter of Request further requests that the Witnesses'

6   examinations "continue day to day until completion and conducted in accordance

7   with the Federal Rules of Civil Procedure or as permitted by [the Mexican judicial

8   authorities]." (*Id.*, p. 13:15-17).  The plain language of Mattel's Proposed Letter of

9   Request, therefore, already entitles MGA to a full and fair cross-examination of the

10  Witnesses continuing day to day until completion.  Consequently, it is not

11  necessary to amend Mattel's Proposed Letter of Request regarding the duration of

12  the deposition.[10]

13       **G.    Summary of Discovery Master's Findings Regarding The Letter**

14              **Of Request Motion**

15       For the foregoing reasons, Mattel's Letter of Request Motion is granted and

16  the Discovery Master will forthwith recommend that Mattel's Proposed Letter of

17  Request be issued by the Court.

18  **IV.   DISPOSITION**

19       **A.    Mattel's Motion to Compel is GRANTED in part and DENIED in**

20  part, as follows:

21              1.    The Discovery Master orders MGA Mexico to produce to Mattel

22  all non-privileged documents responsive to Request Nos. 1 – 8, 13 – 22, 25 – 35, 42

---

24  [10] In its Reply, Mattel also argues that if MGA wants to examine the Witnesses, the depositions should be counted
    against both Mattel's and MGA's existing ten deposition limit rather than just against Mattel's limit only, and that
25  under no circumstance should MGA be permitted to conduct "free" depositions of the witnesses noticed by Mattel.
    (Reply in Support of Motion to Compel, p. 2).  However, this position in inconsistent with Mattel's Proposed Letter
26  of Request, since it affirmatively asks the Mexican judicial authorities to "permit Mr. Vargas and Ms. Trueba to be
    examined under oath by counsel *for all parties* in this matter, allowing full examination *and cross-examination* on the
27  subject matter of this case . . ." (*See* Mattel's Proposed Letter of Request, p. 13:24-26 [emphasis added]).
    Regardless, depositions are generally charged against the party noticing the deposition and the Discovery Master sees
28  no basis to deviate from this general practice here, as both sides have the right to cross-examine any individual
    noticed for deposition by the other party.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 33 -

ORDER NO. 52
[Case No. CV 04-09049 SGL (RNBx)]
EXHIBIT _35_
PAGE _525_

1   – 45, 54 – 58, 61, 71 – 85, 89 – 96, 101 – 104, 106, 117 – 147, 151 – 167, 174, 175,

2   177 – 179, 181 – 192, 194 – 199, 201 – 219, 221, 222, 227 – 248, 253 – 268, 277 –

3   299, 302 – 316, 329 – 342, 345 – 385, 387 – 397, 400 – 410, and 412 – 417 of

4   Mattel's Second Set of RFPs that are within its possession, custody or control

5   within twenty (20) days of this Order along with a privilege log.

6          2.      The Discovery Master denies the Motion to Compel without

7   prejudice to the extent it relates to the 148 requests for production in Mattel's First

8   Set of RFPs, Request Nos. 9 – 12, 23, 24, 36 – 41, 46 – 53, 59, 60, 62 – 70, 86 – 88,

9   97 – 100, 105, 107 – 116, 148 – 150, 168 – 173, 176, 180, 193, 200, 220, 223 –

10  226, 249 – 252, 269 – 276, 300, 301, 317 – 328, 343, 344, 386, 398, 399, 411, and

11  418 – 420 in Mattel's Second Set of RFPs, and the six document requests in

12  Mattel's Third Set of RFPs.

13         3.      The parties are ordered to meet and confer in person to

14  determine if any issues can be eliminated regarding any subsequent motion

15  involving the 256 requests referenced in the preceding paragraph.  In the event any

16  differences cannot be resolved, the parties are ordered to submit a joint statement in

17  the form set forth in Section I.D.4. above.

18      **B.**    The Second Motion to Compel is **GRANTED** in part and **DENIED** in

19  part, as follows.

20         1.      Within twenty (20) days hereof, MGA Mexico is ordered to (a)

21  produce documents responsive to Request Nos. 27, 28, 38, 51 – 54, 58, 60, 62, 64,

22  66 – 68, 70 – 76, and 79 – 83 along with a privilege log, and (b) serve verified

23  Supplemental Responses for each of these 26 requests that (1) explain in detail how

24  it has defined the scope of "relevant" documents being produced in response to the

25  particular Request; (2) cite any facts or allegations of the parties supporting its'

26  definition of "relevance," (3) describe, in general terms, the types of documents

27  being produced pursuant to its definition of "relevance;" and (4) describe the types

28  of documents excluded from production pursuant to its definition of "relevance."

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 34 -

ORDER NO. 52
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT  35
PAGE  52b

1    The description must be sufficient to enable Mattel and the Discovery Master to

2    evaluate whether the documents not produced may be discoverable and therefore

3    subject to a further motion to compel by Mattel.

4            2.    Except as provided above, Mattel's Second Motion to Compel is

5    denied without prejudice.

6            3.    The parties are ordered to meet and confer in person to

7    determine if the remaining issues involving the 83 requests can be eliminated.  In

8    the event any differences cannot be resolved, the parties are ordered to submit a

9    joint statement in the form set forth in Section I.D.4. above.

10           **C.**    The Letter of Request Motion is **GRANTED**.  The Discovery Master

11   will, therefore, issue a separate order, similar to Order No. 35 that recommends the

12   Court execute Mattel's Proposed Letter of Request.

13

14   Dated:        August 26, 2009

15                              By:    /s/ Robert C. O'Brien

16                                     ROBERT C. O'BRIEN
                                       Discovery Master

17

18

19

20

21

22

23

24

25

26

27

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 35 -

ORDER NO. 52
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 35
PAGE 527

EXHIBIT 36

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California  90017 | TEL: (213) 443-3000 FAX: (213) 443-3100

WRITER'S DIRECT DIAL NO.
(213) 443-3180

WRITER'S INTERNET ADDRESS
michaelzeller@quinnemanuel.com

September 4, 2009

VIA ELECTRONIC MAIL

Todd E. Gordinier
Bingham McCutchen LLP
600 Anton Boulevard, 18th Floor
Costa Mesa, CA 92626-1924

Re:    Mattel, Inc. adv. MGA Entertainment, Inc.

Dear Todd:

I write pursuant to paragraph 5 of the stipulation and order for appointment of a discovery master for a meet and confer regarding Neil Kadisha's refusal to answer questions during his deposition and counsel's improper instructions not to answer during his deposition.

Mr. Kadisha refused to answer questions and you instructed Mr. Kadisha not to answer questions on bases other than privilege. Such refusals to answer and instructions are contrary to law. See Fed. R. Civ. P. 30(c)(2) ("A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation directed by the Court, or to present a motion under Rule 30(d)(3).").

First, Mr. Kadisha refused to provide his home telephone number or cell phone number, after relating a conversation in which he purportedly called Mattel's CEO, Bob Eckert, from either his office, home or cell phone regarding Omni 808's loan acquisition. See Deposition Transcript of Neil Kadisha ("Kadisha Tr."), dated August 28, 2009, at 44:21-46:12. You objected to the line of questioning on privacy grounds. Id. However, Mr. Kadisha's own testimony made his home and cell phone numbers relevant, and as the prior Discovery Master found previously, the protective order is sufficient to protect Mr. Kadisha's privacy concerns. See Order Granting Mattel's Motion to Compel Production of Documents and Interrogatory Responses by MGA,

**quinn emanuel urquhart oliver & hedges, llp**
NEW YORK | 51 Madison Avenue, 22nd Floor, New York, NY  10010 | TEL (212) 849-7000 FAX (212) 849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, CA  94111 | TEL (415) 875-6600 FAX (415) 875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, CA  94065 | TEL (650) 801-5000 FAX (650) 801-5100
CHICAGO | 250 South Wacker Drive, Suite 230, Chicago, IL  60606 | TEL (312) 463-2961 FAX (312) 463-2962
LONDON | 16 Old Bailey, London EC4M 7EG United Kingdom | TEL +44(0) 20 7653 2000 FAX +44(0) 20 7653 2100
TOKYO | Akasaka Twin Tower Main Bldg., 6th Fl., 17-22 Akasaka 2-Chome, Minato-ku, Tokyo 107-0052 Japan | TEL +81 3 5561-1711 FAX +81 3 5561-1712
07975/3068931.1

EXHIBIT 36
PAGE 528

dated May 15, 2007, at 11, fn 4 ("The protective order is sufficient to alleviate Mr. Isaac Larian's privacy concerns.") and at 13:24-14:6 (compelling MGA to provide each office, home and cell phone number of Mr. Larian). Later in the deposition, you improperly asserted a blanket instruction not to answer regarding Mr. Kadisha's conversations with Mr. Durkin. See Kadisha Tr. at 124:11-125:1. Communications between Mr. Kadisha and Mr. Durkin are not privileged, thus this blanket instruction was improper as well.

Please let me know when you are available to discuss Mattel's anticipated motion to overrule Mr. Kadisha's refusals to answer and counsel's instructions not to answer. I look forward to hearing from you.

Very truly yours,

Michael T. Zeller

MTZ
07975/3089518.1

cc:     Annette Hurst, Esq.

2

EXHIBIT 36
PAGE 529

**Tiffany Garcia**

| | |
|---|---|
| **From:** | Bridget Hauler |
| **Sent:** | Friday, September 04, 2009 7:42 PM |
| **To:** | 'todd.gordinier@bingham.com'; 'peter.villar@bingham.com'; 'ahurst@orrick.com' |
| **Cc:** | Michael T Zeller |
| **Subject:** | Mattel, Inc. adv. MGA Entertainment, Inc. |
| **Attachments:** | 3089625_Letter to Gordinier re Kadisha.PDF |

Counsel,

Please see attached correspondence.

Best regards,

Bridget Hauler
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Direct: (213) 443-3402
Main Phone: (213) 443-3000
Main Fax:  (213) 443-3100
E-mail:  bridgethauler@quinnemanuel.com
Web:  www.quinnemanuel.com

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above.  This message may be an attorney-client communication and/or work product and as such is privileged and confidential.  If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited.  If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

EXHIBIT 34
PAGE 530

EXHIBIT 37

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
<u>CIVIL MINUTES -- GENERAL</u>

Case No.   CV 04-09049 SGL(RNBx)                Date: December 3, 2007
Title:     CARTER BRYANT -v- MATTEL, INC.
           AND CONSOLIDATED ACTIONS

===================================================================

PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

|  |  |
|---|---|
| Jim Holmes | Theresa Lanza |
| Courtroom Deputy Clerk | Court Reporter |

ATTORNEYS PRESENT FOR CARTER                ATTORNEYS PRESENT FOR MATTEL:
BRYANT:

Matthew M. Werdegar                         Michael T. Zeller
                                            B. Dylan Proctor
                                            Jon D. Corey

ATTORNEYS PRESENT FOR MGA:                  ATTORNEY PRESENT FOR CARLOS
                                            GUSTAVO MACHADO GOMEZ:

Thomas J. Nolan                             Alexander H. Cote
Carl A. Roth
Ryan Weinstein

PROCEEDINGS:   ORDER GRANTING MOTION FOR LEAVE TO SERVE A SUPPLEMENTAL
               INTERROGATORY; ORDER DENYING MOTION TO STRIKE (OR
               ALTERNATIVELY, FOR SUMMARY JUDGMENT AS TO) AFFIRMATIVE
               DEFENSES

       The Court heard argument on these motions on December 3, 2007.  For reasons discussed
on the record, the Court GRANTS the motion for leave to serve a supplemental interrogatory.
Mattel may serve on all opposing parties, and all parties served shall answer without objection
thereto, the following interrogatory:

       State the facts upon which YOU intend to rely at trial to support YOUR
       affirmative defenses, and IDENTIFY all PERSONS with knowledge of those facts and

MINUTES FORM 90                                  Initials of Deputy Clerk __jh_____
CIVIL -- GEN                        1            Time: 00/45

EXHIBIT 37
PAGE 531

all DOCUMENTS that REFER OR RELATE TO those facts.

In light of the Court's granting of the motion for leave to file a supplemental interrogatory, the motion to strike (or alternatively, for summary judgment as to) MGA's affirmative defenses is DENIED WITHOUT PREJUDICE pending completion of discovery in this action.

IT IS SO ORDERED.

MINUTES FORM 90
CIVIL -- GEN                              2

Initials of Deputy Clerk __jh_____
Time: 00/45

EXHIBIT 37
PAGE 532

EXHIBIT 38



RE: Mattel v. MGA · Message (HTML)

Message

From: Scott Kidman
To: Villar, Peter H.
Cc:
Subject: RE: Mattel v. MGA

Sent: Tue 9/22/2009 5:06 PM

Peter:

The instructions to Mr. Neman not to answer questions regarding the payment of fees in connection with this case were clearly improper for all the reasons set forth in my initial meet and confer letter which I have repeated in our numerous telephone conversations. Your proposal that Mr. Neman provide a declaration to answer these questions is not acceptable. Depositions "rank high in the hierarchy of pre-trial, truth-finding mechanisms" and "are a critical component of the tools of justice in civil litigation." Founding Church of Scientology of Washington, D.C., Inc. v. Webster, 802 F.2d 1448, 1451 (D.C. Cir. 1986); See Kile Underwriting Ltd. v. Jesuit High School of New Orleans, 2008 WL 4286491, at *2 (E.D. La. Sept. 18, 2008) ("Depositions play a vital role in the preparation for trial.") (citation and internal quotation omitted). A key reason for this is the spontaneity of the responses. E.g., Nat'l Life Ins. Co. v. Hartford Acc. and Indem. Co., 615 F.2d 595, 599-600 n.5 (3d Cir. 1980) (Federal Rules "specifically give a party the right to question a witness by oral deposition," and "there are strong reasons why a party will select to proceed by oral deposition rather than alternate means, most significantly the spontaneity of the responses.") Mattel is entitled to ask and obtain answers to these and reasonable follow up questions in the context of an oral deposition. Mattel will file a motion to compel.

The instructions to Mr. Neman not to answer questions regarding prior loan transactions with Lexington Financial were also clearly improper for all the reasons set forth in my initial meet and confer letter which I have repeated in our numerous telephone conversations. However, based on the examination following the telephonic hearing with the Discovery Master, Mattel does not intend to file motion to compel with respect to the specific questions Mr. Neman was improperly instructed not to answer in the first instance.

As for the third issue, your offer to produce certain documents Mr. Neman admitted are in the possession of Fred Mashian, such as the loan agreement between Vision Capital and Lexington Financial, does not resolve the issue. Mattel does not know what other documents responsive to the subpoena to Vision Capital or the subpoena to Mr. Neman may be in Mr. Mashian's possession but never searched for or produced. I have repeatedly asked you to agree to search for and produce all documents in Mr. Mashian's possession that are responsive to the subpoenas to Vision Capital or the subpoena to Mr. Neman and that Vision Capital or Mr. Neman have been or may be compelled to produce or otherwise have agreed or may agree to produce. You have refused to do so. If I have some how misread your email and you will agree to search for and produce all such documents in Mr. Mashian's possession, please confirm this agreement by the close of business tomorrow. Otherwise, Mattel will go forward with a motion to compel

Regards,

Scott B. Kidman
Partner
Quinn Emanuel Urquhart Oliver & Hedges LLP.

865 S. Figueroa St 10th Floor
Los Angeles, Ca 90017
213-443-3162 Direct
213-443-3000 Main Office Number

EXHIBIT 38
PAGE 533

**Irina Komarov**

| | |
|---|---|
| **From:** | Scott Kidman |
| **Sent:** | Tuesday, September 22, 2009 5:06 PM |
| **To:** | Villar, Peter N. |
| **Subject:** | RE: Mattel v. MGA |

Peter:

The instructions to Mr. Neman not to answer questions regarding the payment of fees in connection with this case were clearly improper for all the reasons set forth in my initial meet and confer letter which I have repeated in our numerous telephone conversations.  Your proposal that Mr. Neman provide a declaration to answer these questions is not acceptable.  Depositions "rank high in the hierarchy of pre-trial, truth-finding mechanisms" and "are a critical component of the tools of justice in civil litigation".  Founding Church of Scientology of Washington, D.C., Inc. v. Webster, 802 F.2d 1448, 1451 (D.C. Cir. 1986).  See Kiln Underwriting Ltd. v. Jesuit High School of New Orleans, 2008 WL 4286491, at *2 (E.D. La. Sept. 18, 2008) ("Depositions play a vital role in the preparation for trial.") (citation and internal quotation omitted).  A key reason for this is the spontaneity of the responses.  E.g., Nat'l Life Ins. Co. v. Hartford Acc. and Indem. Co., 615 F.2d 595, 599-600 n.5 (3d Cir. 1980) (Federal Rules "specifically give a party the right to question a witness by oral deposition," and "there are strong reasons why a party will select to proceed by oral deposition rather than alternate means, most significantly the spontaneity of the responses").  Mattel is entitled to ask and obtain answers to these and reasonable follow up questions in the context of an oral deposition.  Mattel will file a motion to compel.

The instructions to Mr. Neman not to answer questions regarding prior loan transactions with Lexington Financial were also clearly improper for all the reasons set forth in my initial meet and confer letter which I have repeated in our numerous telephone conversations.  However, based on the examination following the telephonic hearing with the Discovery Master, Mattel does not intend to file motion to compel with respect to the specific questions Mr. Neman was improperly instructed not to answer in the first instance.

As for the third issue, your offer to produce certain documents Mr. Neman admitted are in the possession of Fred Mashian, such as the loan agreement between Vision Capital and Lexington Financial, does not resolve the issue.  Mattel does not know what other documents responsive to the subpoena to Vision Capital or the subpoena to Mr. Neman may be in Mr. Mashian's possession but never searched for or produced.  I have repeatedly asked you to agree to search for and produce all documents in Mr. Mashian's possession that are responsive to the subpoenas to Vision Capital or the subpoena to Mr. Neman and that Vision Capital or Mr. Neman have been or may be compelled to produce or otherwise have agreed or may agree to produce.  You have refused to do so.  If I have some how misread your email and you will agree to search for and produce all such documents in Mr. Mashian's possession, please confirm this agreement by the close of business tomorrow.  Otherwise, Mattel will go forward with a motion to compel.

Regards,

**Scott B. Kidman**
*Partner,*
**Quinn Emanuel Urquhart Oliver & Hedges LLP.**

865 S. Figueroa St 10th Floor
Los Angeles, Ca 90017
213-443-3162 Direct
213.443.3000 Main Office Number
310-376-3412 FAX
scottkidman@quinnemanuel.com
www.quinnemanuel.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

EXHIBIT _38_
PAGE _534_

**From:** Villar, Peter N. [mailto:peter.villar@bingham.com]
**Sent:** Wednesday, September 16, 2009 4:08 PM
**To:** Scott Kidman
**Subject:** Mattel v. MGA

Scott, I am not going to be able to talk this afternoon regarding the Neman deposition. As I recall, there are three issues that we have been discussing as follows:

First, Mattel claimed that Mr. Neman was improperly instructed not to answer questions regarding the payment of fees in connection with this case. While we disagreed that these instructions were improper, in an effort to resolve this issue, we have proposed that Mr. Neman provide a declaration to answer these questions. You were going to let me know whether that is acceptable to Mattel.

Second, Mattel claimed that Mr. Neman was improperly instructed not to answer questions regarding prior loan transactions between Vision Capital and Lexington Financial that are not related to the Wachovia debt acquisition. While we disagreed that these instructions were improper, I pointed out that Mr. Neman ultimately answered those questions following the phone conference with the Discovery Master during the deposition. You were going to review the transcript for verification.

Third, Mattel claimed that Mr. Neman's testimony revealed that Vision Capital has failed to produce documents in Fred Mashian's possession relating to the $10 million loan from Lexington Financial to Vision Capital. As I indicated, we contend that Vision Capital had no obligation to produce those documents under the Discovery Master's Order and that the issue will be decided by the Discovery Master shortly. I further indicated that if the Discovery Master instructs Vision Capital to produce those documents, we would agree to produce the documents whether they are in the possession of Vision Capital or Mr. Mashian. Therefore, this issue should be resolved.

If you can respond to this email with Mattel's position, we may be able to wrap up the meet and confer process without the need for a further phone call.

Regards, Peter

B I N G H A M
Peter N. Villar |
Plaza Tower, 18th Floor |
600 Anton Boulevard |
Costa Mesa, CA 92626-1924 |
T 714.830.0640 |
F 714.830.0700 |
peter.villar@bingham.com |

---

**From:** Scott Kidman [mailto:scottkidman@quinnemanuel.com]
**Sent:** Tuesday, September 15, 2009 8:51 PM
**To:** Villar, Peter N.
**Subject:** Re: RE:

Thanks. I'll give yoiu a call around 4:00.

---

**From:** Villar, Peter N. <peter.villar@bingham.com>
**To:** Scott Kidman
**Sent:** Tue Sep 15 10:33:43 2009
**Subject:** RE: RE:

EXHIBIT 38
PAGE 535

I am available Wednesday afternoon between 3 and 5 pm.

---

**From:** Scott Kidman [mailto:scottkidman@quinnemanuel.com]
**Sent:** Monday, September 14, 2009 7:31 PM
**To:** Villar, Peter N.
**Subject:** RE:

Peter:

I did not receive a response to my email below. Please let me know when you are available to speak. I am also available pretty much any time on Wednesday.

---

**From:** Scott Kidman
**Sent:** Sunday, September 13, 2009 8:02 PM
**To:** Villar, Peter N.
**Subject:**

Peter:

We are scheduled to speak again tomorrow at 10:00 a.m. I need to re-schedule. Are you available Tuesday any time between 10:00 and 12:00?

---

Confidentiality Notice: The information in this e-mail (including attachments, if any) is considered confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this e-mail is prohibited except by or on behalf of the intended recipient. If you have received this email in error, please notify me immediately by reply email, delete this email, and do not disclose its contents to anyone.

Bingham McCutchen LLP Circular 230 Notice: To ensure compliance with IRS requirements, we inform you that any U.S. federal tax advice contained in this communication is not intended or written to be used, and cannot be used by any taxpayer, for the purpose of avoiding any federal tax penalties. Any legal advice expressed in this message is being delivered to you solely for your use in connection with the matters addressed herein and may not be relied upon by any other person or entity or used for any other purpose without our prior written consent.

EXHIBIT 38
PAGE 536

EXHIBIT 39

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 090378)
2    johnquinn@quinnemanuel.com
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California  90017-2543
   Telephone:  (213) 443-3000
6  Facsimile:   (213) 443-3100

7  Attorneys for Mattel, Inc.

8

9                  UNITED STATES DISTRICT COURT

10                CENTRAL DISTRICT OF CALIFORNIA

11                      EASTERN DIVISION

12 | CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx)
13 |          Plaintiff,           | Consolidated with
   |                               | Case No. CV 04-09059
14 |     vs.                       | Case No. CV 05-02727
15 | MATTEL, INC., a Delaware       | MATTEL, INC.'S FIRST SET OF
   | corporation,                   | REQUESTS FOR DOCUMENTS AND
16 |                               | THINGS TO ISAAC LARIAN
   |          Defendant.           | (PHASE 2)
17 |
18 | AND CONSOLIDATED CASES
19
20

21 PROPOUNDING PARTY:  MATTEL, INC.

22 RESPONDING PARTY:    ISAAC LARIAN

23 SET NO.:                    FIRST (PHASE 2)

24

25

26

27

28

07209/2753498.1

_01-08-09_

Pursuant to <u>Rule</u> 34 of the <u>Federal Rules of Civil Procedure,</u>
Mattel, Inc. hereby requests that Isaac Larian ("Larian") respond to these document
requests ("Requests") and make available for inspection and copying originals of the
following documents within 30 days of service at the offices of Quinn Emanuel
Urquhart Oliver & Hedges, LLP, 865 South Figueroa Street, 10th floor,
Los Angeles, CA 90017.  Larian shall be obligated to supplement responses to these
requests at such times and to the extent required by <u>Rule</u> 26(e) of the <u>Federal Rules</u>
<u>of Civil Procedure.</u>

## I.   **DEFINITIONS**

A.   "YOU," "YOUR," "ISAAC LARIAN" or "LARIAN" means
Isaac Larian and any individual or entity acting directly or indirectly by, through,
under or on behalf of Isaac Larian, including but not limited to current or former
directors, officers, agents, attorneys, employees, partners, joint venturers,
contractors, accountants, or representatives of Isaac Larian or any entity under the
control or direction of Isaac Larian (including but not limited to MGA), and any
corporation, partnership, association, limited liability company, trust, predecessor-
in-interest and successor-in-interest, and any other PERSON acting on behalf of
Isaac Larian or pursuant to his authority or subject to his control..

B.   "MGA" means MGA Entertainment, Inc. and any PERSON
acting directly or indirectly by, through, under or on behalf of MGA Entertainment,
Inc., including but not limited to, current or former directors, officers, agents,
attorneys, employees, partners, joint venturers, contractors, accountants, or
representatives of MGA Entertainment, Inc., and any current or former corporation,
partnership, association, trust, parent, subsidiary, division, AFFILIATE,
predecessor-in-interest and successor-in-interest of MGA Entertainment, Inc., and
any other PERSON acting on its behalf

1       C.    "MATTEL" means Mattel, Inc. and all current or former

2  directors, officers, employees, agents, contractors, attorneys, accountants,

3  representatives, subsidiaries, divisions, AFFILIATES, predecessors-in-interest and

4  successors-in-interest, and any other PERSON acting on its behalf, pursuant to its

5  authority or subject to its control.

6       D.    "MASHIAN" means Fred Mashian and any individual or entity

7  acting directly or indirectly by, through, under or on behalf of Fred Mashian,

8  including but not limited to current or former directors, officers, agents, attorneys,

9  employees, partners, joint venturers, contractors, accountants, or representatives of

10  Fred Mashian or any entity under the control or direction of Fred Mashian, and any

11  corporation, partnership, association, limited liability company, trust, predecessor-

12  in-interest and successor-in-interest, and any other PERSON acting on behalf of

13  Fred Mashian or pursuant to his authority or subject to his control.

14       E.    "BRATZ" means any project, product, doll or DESIGN ever

15  known by that name (whether in whole or in part and regardless of what such

16  project, product or doll is or has been also, previously or subsequently called) and

17  any product, doll or DESIGN or any portion thereof that is now or has ever been

18  known as, or sold or marketed under, the name or term "Bratz" (whether in whole or

19  in part and regardless of what such product, doll or DESIGN or portion thereof is or

20  has been also, previously or subsequently called) or that is now or has ever been

21  sold or marketed as part of the "Bratz" line, and each version or iteration of such

22  product, doll or DESIGN or any portion thereof.  As used herein, "product, doll or

23  DESIGNS or any portion thereof" also includes without limitation any names,

24  fashions, accessories, artwork, packaging or any other works, materials, matters or

25  items included or associated therewith.  Without limiting the generality of the

26  foregoing, the term "BRATZ" does not and shall not require that there be a doll,

27  product or three-dimensional embodiment existing at the time of the event, incident

28

EXHIBIT 31

PAGE 539

1    or occurrence that is the subject of, or otherwise relevant or responsive to, the

2    Requests herein.

3           F.      "DESIGN" or "DESIGNS" means any and all representations,

4    whether two-dimensional or three-dimensional, and whether in tangible, digital,

5    electronic or other form, including but not limited to all works, designs, artwork,

6    sketches, drawings, illustrations, representations, depictions, blueprints, schematics,

7    diagrams, images, sculptures, prototypes, models, samples, rotocasts, reductions to

8    practice, developments, inventions and/or improvements, as well as all other items,

9    things and DOCUMENTS in which any of the foregoing are or have been

10   expressed, embodied, contained, fixed or reflected in any manner, whether in whole

11   or in part.

12          G.      "DOCUMENT" or "DOCUMENTS" means all "writings" and

13   "recordings" as those terms are defined in Rule 1001 of the Federal Rules of

14   Evidence and Rule 34 of the Federal Rules of Civil Procedure and shall include all

15   writings, including but not limited to, handwriting, typewriting, printing, image,

16   photograph, photocopy, digital file of any kind, transmittal by (or as an attachment

17   to) electronic mail (including instant messages and text messages) or facsimile,

18   video and audio recordings, and every other means of recording upon any tangible

19   thing, any form of COMMUNICATION or representation, and any record thereby

20   created, regardless of the manner in which the record has been stored, and all non-

21   identical copies of such DOCUMENTS, in the possession, custody, or control of

22   YOU, YOUR counsel, or any other PERSON acting on YOUR behalf.

23          H.      "AFFILIATES" means any and all corporations, limited liability

24   companies, associations, proprietorships, d/b/a's, partnerships, joint ventures and

25   business entities of any kind that, directly or indirectly, in whole or in part, own or

26   control, are under common ownership or control with, or are owned or controlled by

27   a PERSON, party or entity, including without limitation, each parent, subsidiary and

28   joint venture of such PERSON, party or entity.

EXHIBIT 39
PAGE 540

1  I. "REFERRING OR RELATING TO," "REFER OR RELATE

2 TO," "RELATING," "RELATING TO" or "REFERS TO" means any and all of the

3 following terms and their synonyms:  refer to, discuss, constitute, evidence, pertain

4 to, mention, support, undermine, disprove, refute, contradict, negate, bear on,

5 amend, revise, modify, touch on, contain, embody, reflect, identify, state, deal with,

6 concern, comment on, summarize, respond to, relate to, or describe.

7  J. "PERSON," in the plural as well as the singular, means any

8 natural person, association, partnership, corporation, joint venture, government

9 entity, organization, limited liability company, trust, institution, proprietorship, or

10 any other entity recognized as having an existence under the laws in the United

11 States or any other nation.

12  K. "ITEM OF VALUE," in the plural as well as the singular, means

13 any and all articles, units, goods, commodities, property, products, services,

14 assistance, shares, stocks, bonds, financial instruments, indebtedness, credit, capital,

15 and currency, in any form, or any other tangible or intangible matter that have

16 current, past or future material worth, monetary worth or use, of any type and in any

17 amount.  Gifts of individual units of manufactured MGA products that are not

18 intended for re-transfer, that were not and have not been re-transferred and that do

19 not exceed $500 in retail value in total may be excluded from this Definition.

20  L. "IDENTIFY," "IDENTIFYING" OR "IDENTITY" means the

21 following:

22  (a) With reference to an individual, means such individual's name,

23 current or last known business title, current or last known business affiliation,

24 current or last known relationship to YOU, current or last known residential and

25 business address, and current or last known telephone number.

26  (b) With reference to an entity or entities, such entity's full name,

27 state (or country) of incorporation or organization, present or last known address,

28 and present or last known telephone number.

1    (c)    With reference to any other DOCUMENT or DOCUMENTS,

2  means the date, identity of the author, addressee(s), signatories, parties, or other

3  PERSONS identified therein, its present location or custodian and a description of

4  its contents.

5    (d)    With reference to an account with a bank or financial institution,

6  means the name and address of the bank or financial institution, the account

7  number(s) for or otherwise associated with such account and the name of each

8  holder, including without limitation, each beneficial holder, of each such account.

9    M.    "OMNI 808 INVESTORS, LLC" means OMNI 808

10  INVESTORS, LLC and all current or former directors, officers, employees, agents,

11  contractors, attorneys, accountants, representatives, subsidiaries, divisions,

12  AFFILIATES, predecessors-in-interest and successors-in-interest, and any other

13  PERSON acting on its behalf, pursuant to its authority or subject to its control.

14    N.    "VISION CAPITAL, LLC" means VISION CAPITAL, LLC and

15  all current or former directors, officers, employees, agents, contractors, attorneys,

16  accountants, representatives, subsidiaries, divisions, AFFILIATES, predecessors-in-

17  interest and successors-in-interest, and any other PERSON acting on its behalf,

18  pursuant to its authority or subject to its control.

19    O.    "LEXINGTON INVESTORS, LLC" means LEXINGTON

20  INVESTORS, LLC and all current or former directors, officers, employees, agents,

21  contractors, attorneys, accountants, representatives, subsidiaries, divisions,

22  AFFILIATES, predecessors-in-interest and successors-in-interest, and any other

23  PERSON acting on its behalf, pursuant to its authority or subject to its control.

24    P.    "COMMUNICATION," in the plural as well as the singular,

25  means any transmittal and/or receipt of information, whether such was oral or

26  written, and whether such was by chance, prearranged, formal or informal, and

27  specifically includes, but is not limited to, conversations in person, telephone

28  conversations, electronic mail (including instant messages and text messages),

1  voicemail, letters, memoranda, statements, media releases, magazine and newspaper
2  articles, and video and audio transmissions.

3       Q.    The singular form of a noun or pronoun includes within its
4  meaning the plural form of the noun or pronoun so used, and vice versa; the use of
5  the masculine form of a pronoun also includes within its meaning the feminine form
6  of the pronoun so used, and vice versa; the use of any tense of any verb includes
7  also within its meaning all other tenses of the verb so used, whenever such
8  construction results in a broader request for information; and "and" includes "or"
9  and vice versa, whenever such construction results in a broader disclosure of
10  documents or information.

11

12  **II.**   **INSTRUCTIONS**

13       A.    YOU are to produce all requested DOCUMENTS in YOUR
14  possession, custody or control.

15       B.    If YOU contend that YOU are not required to produce certain
16  DOCUMENTS called for by these Requests on the grounds of a privilege or
17  protection that YOU are not prepared to waive, IDENTIFY each such DOCUMENT
18  and provide the following information:

19           1.    the date and type of the DOCUMENT, the author(s) and all
20                 recipients;

21           2.    the privilege or protection that YOU claim permits YOU to
22                 withhold the DOCUMENT;

23           3.    the title and subject matter of the DOCUMENT;

24           4.    any additional facts on which YOU base YOUR claim of
25                 privilege or protection; and

26           5.    the IDENTITY of the current custodian of the original of the
27                 DOCUMENT.

28

EXHIBIT 21
PAGE 543