UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION

CARTER BRYANT, an individual,

    Plaintiff,

   vs.

MATTEL, INC., a Delaware
corporation,

      Defendants.

No. CV 04-9049 SGL (RNBx)
Consolidated with
Nos. CV 04-9405 and
05-2727

**CERTIFIED COPY**

AND CONSOLIDATED ACTIONS.

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Los Angeles, California

Wednesday, March 4, 2009

Volume 1

Reported by:
CHERYL R. KAMALSKI
CSR No. 7113

Job No. 106479



877.955.3855
www.sarnoffcourtreporters.com
IRVINE ▪ LOS ANGELES ▪ SAN FRANCISCO ▪ LAS VEGAS ▪ SAN DIEGO

SARNOFF
Court Reporters and
Legal Technologies

```
 1                UNITED STATES DISTRICT COURT
                CENTRAL DISTRICT OF CALIFORNIA
 2                     EASTERN DIVISION

 3

 4    CARTER BRYANT, an individual,

 5         vs.                      No. CV 04-9049 SGL (RNBx)
                                    Consolidated with
 6    MATTEL, INC., a Delaware      Nos. CV 04-9405 and
      corporation,                  05-2727
 7
              Defendants.
 8

 9

10

11    _____
      AND CONSOLIDATED ACTIONS.
12    _____

13

14

15

16         REPORTER'S TRANSCRIPT OF PROCEEDINGS, Volume 1,

17    taken at 555 West Fifth Street, 48th Floor, Los Angeles,

18    California, beginning at 10:08 a.m. and ending at

19    12:12 p.m. on Wednesday, March 4, 2009, before

20    CHERYL R. KAMALSKI, Certified Shorthand Reporter No. 7113.

21

22

23

24

25
```

2

EXHIBIT 42
PAGE 62

TRANSCRIPT OF PROCEEDINGS                    03/04/09

```
 1   APPEARANCES:
 2
 3   Discovery Master:
 4        ROBERT C. O'BRIEN
          Attorney at Law
 5        555 West Fifth Street, Suite 4800
          Los Angeles, California  90013-1065
 6        (213) 629-7400
 7   For Defendant Mattel, Inc.:
 8        QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
          BY:   MICHAEL T. ZELLER
 9        BY:   JON COREY
          Attorneys at Law
10        865 South Figueroa Street, 10th Floor
          Los Angeles, California 90017
11        (213) 624-7707
12        MATTEL, INC.
          BY:   JILL E. THOMAS
13        Assistant General Counsel
          333 Continental Boulevard
14        El Segundo, California 90245-5012
          (310) 252-2000
15
     For Defendants MGA and Isaac Larian:
16
          SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
17        BY:   JASON D. RUSSELL
          BY:   JENNIFER K. DEL CASTILLO
18        Attorneys at Law
          300 South Grand Avenue
19        Los Angeles, California 90071
          (213) 687-5000
20
     For Defendant IGWT Group and IGWT 826 Investments:
21
          VALLE & ASSOCIATES
22        BY:   JEFFREY B. VALLE
          BY:   ILAN WISNIA
23        Attorneys at Law
          11911 San Vicente Boulevard, Suite 324
24        Los Angeles, California 90049
          (310) 476-0300
25
```

3

EXHIBIT 42
PAGE 622

```
 1   APPEARANCES (Continued):

 2

 3   For 808 Investors, LLC, Vision Capital, LLC, and OmniNet
     Capital, LLC:
 4

 5        BINGHAM McCUTCHEN LLP
          BY:   TODD E. GORDINIER
          BY:   PETER VILLAR
 6        Attorneys at Law
          600 Anton Boulevard, 18th Floor
 7        Costa Mesa, California 92626-1924
          (714) 830-0622
 8

 9   Also Present:

          STEPHEN HAUSS
10        CRAIG HOLDEN

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

4

EXHIBIT 42
PAGE 623

1   are the legitimate subject of discovery because they're

2   questionable; but, number 2, even if it did not matter,

3   even if it was irrelevant, as they've argued, as to who

4   the holder of the debt was, in other words, framed this

5   way, even if these are entirely aboveboard, legitimate

6   transactions, we're still entitled to that discovery.  So,

7   I mean we have -- you know, even taking their own

8   arguments at face value, this discovery is still relevant.

9   And I hope I've been clear on that point.

10              MR. O'BRIEN:  Very well.  Thank you.

11              Normally I'd let you have the last word on that.

12   I didn't keep track of the time.  There were two motions,

13   and so I'm going to give Mr. Russell just --

14              MR. RUSSELL:  I'll just take two minutes.

15              MR. O'BRIEN:  -- a short period of time to

16   respond so that everyone kind of gets their fair amount of

17   time.

18              MR. RUSSELL:  Thank you.

19              I just want to sort of pick up with some of the

20   points that Mr. Zeller ended with.

21              First, with respect to the nature and description

22   that he gives of his claim, I'd respectfully submit that

23   you should go ahead and look at the RICO claim, and I

24   think it will be fairly clear that it doesn't have

25   anything to do with the transfer of funds.  It's very

82

EXHIBIT 42
PAGE 624

1  specific when it's talking about the theft of property and

2  trade secret information.

3       And just so we're clear, when I make the timing

4  point, it's not as if Mattel filed this counterclaim with

5  the RICO allegations six years ago.  They filed it in

6  2007.  They asked for leave in November of 2006, I think

7  it was formally filed with the court in 2007.  They

8  certainly had plenty of opportunity and notice at that

9  point to make these allegations about shifting of funds

10 and all these kinds of things if they wanted to craft

11 their claim that way.  They didn't.  They chose to do what

12 they did and they should be held to the contours of their

13 claim.

14       And as the Asdourian case, A-s-d-o-u-r-i-a-n,

15 makes clear, this is their case, they've got to show an

16 interrelationship between the acts, the existence of a

17 pattern that's established by proof of temporal proximity

18 or common goals.

19       Their entire RICO claim is, as he says, the theft

20 of the ideas with Mr. Bratz (sic), allegedly, and then the

21 stealing of the machinery, if you will, to sell Bratz.

22 And that is really focused on MGA Mexico and foreign

23 operations.  That's what they're talking about.  It has

24 nothing to do with the transfer in or out of funds from

25 MGA.  And I didn't hear him respond, and I think it's

83

1    clear that he can't respond, on the Omni point. How is it

2    relevant who purchased the Wachovia debt? He didn't tell

3    you, and he had a chance to, that the Wachovia debt's not

4    valid. It is. So why does it matter, whether he wants to

5    walk from what he said or not, why does it matter who

6    purchased Wachovia's debt? He can get everything he

7    needs, without any burden on a third party, from MGA. If

8    it is, in fact, relevant, I don't contend that it is, if

9    it is, in fact, relevant that MGA was paying on that note,

10   he can get that from MGA. There's no question about that.

11              I will point out when he says that the fact that

12   Wachovia was subpoenaed proves relevance in phase 2; far

13   from it. What happened was -- and the reason why they

14   weren't -- prevented from getting the discovery on

15   Wachovia until that time was they hadn't shown any right

16   to it. It's not as if -- this is even more true in

17   phase 2 than it was in phase 1. In phase 1 there were

18   apportionment theories and they had punitive damages that

19   were allowed to go to the jury. It was only in the middle

20   of trial that the judge said, okay, I'm going to let you

21   have punitive damage-type discovery. Very similar to how

22   it'd work in State court under Civil Code 3295. And I

23   would submit the same should apply here. We don't get a

24   general relevance standard for financial condition of a

25   company at the beginning of the process. It's at the end.

EXHIBIT 42
PAGE 626

**TRANSCRIPT OF PROCEEDINGS**                    03/04/09

```
 1   While 3295 doesn't apply in Federal court, the same

 2   rationale can apply, and you have discretion, and I would

 3   urge you to apply that discretion to limit them now.  If,

 4   in fact, they can show that their claims, as opposed to

 5   their damages theories, their claims have merits to the

 6   point that they can survive motions, then we can talk

 7   about the intrusive financial discovery that they want.

 8   But they cannot tie, and Mr. Zeller has failed, in my

 9   opinion, to tie the Omni, in particular, discovery to any

10   claims.  There's no nexus temporally or even reading the

11   pleadings as broadly as you would like to the claims.  And

12   that ends the analysis.  They are not entitled to that

13   discovery from Omni because it doesn't relate to any

14   claims.  Financial condition is not a basis for financial

15   -- for discovery at this stage of the case.  And I think

16   it's just as simple as that.

17          With respect to IGWT, again, your Honor -- I've

18   done it now, too -- Mr. O' Brien -- 1 for 1.  It was

19   inevitable.

20          MR. O'BRIEN:  I'm getting promoted.

21          MR. RUSSELL:  You've got my vote.  Maybe I should

22   hold it --

23          MR. GORDINIER:  We'll have to get him a robe.

24          MR. RUSSELL:  That's right.

25          Again, with respect to IGWT, I think the same
```

85

EXHIBIT 42
PAGE 627

1   analysis can be said, that is to say, while it is true

2   that they're not required in the first instance to go to

3   MGA, I think we should be sending a message here that that

4   is what they should do.  I mean, we should be preventing

5   burden on third parties, unless there's some reason.

6        I didn't hear anything from Mr. Zeller that

7   suggests why it is they couldn't go to MGA in the first

8   instance.  They can get the purchase information.  Their

9   own experts are going to opine on fair market value, and

10  MGA (sic) clearly has the fair market value of products

11  for Bratz items in its possession.  There's no need to get

12  that from MGA.

13       What IGWT sold it for might be of interest, but

14  it's still burdensome because that same information can be

15  gotten directly from MGA.  And given there's, again, no

16  nexus to the claims, all we're hearing about is it's

17  relevant to financial condition, under the same standard,

18  I would submit there's no basis for that discovery as to

19  IGWT.  And even if there were, I think Mr. Valle's point

20  is very germane, let's wait and see what Mr. Durkin comes

21  up with.  You know, Mr. Zeller told you that Judge Larson

22  didn't say to rely upon the report.  I submit he said the

23  opposite.  He said let's see if there's anything to these

24  allegations as to IGWT and Omni, and if there is,

25  Mr. Zeller was the one who said, then we'd like to look

86

EXHIBIT 42
PAGE 628

1    I, the undersigned, a Certified Shorthand

2    Reporter of the State of California, do hereby certify:

3    That the foregoing proceedings were taken

4    before me at the time and place herein set forth; that

5    any witnesses in the foregoing proceedings, prior to

6    testifying, were duly sworn; that a record of the

7    proceedings was made by me using machine shorthand

8    which was thereafter transcribed under my direction;

9    that the foregoing transcript is a true record of the

10   testimony given.

11   Further, that if the foregoing pertains to

12   the original transcript of a deposition in a Federal

13   Case, before completion of the proceedings, review of

14   the transcript [  ] was [  ] was not requested.

15   I further certify I am neither financially

16   interested in the action nor a relative or employee

17   of any attorney or party to this action.

18   IN WITNESS WHEREOF, I have this date

19   subscribed my name.

20

21   Dated:        MAR 0 9 2009

22

23   _____
     *Cheryl R. Kamalski*
     CHERYL R. KAMALSKI

24   CSR No. 7113

25

EXHIBIT 42
PAGE 629

EXHIBIT 43

1   Hon. Edward A. Infante (Ret.)
    JAMS
2   Two Embarcadero Center
    Suite 1500
3   San Francisco, California  94111
    Telephone:   (415) 774-2611
4   Facsimile:   (415) 982-5287

5

6

7

8                           UNITED STATES DISTRICT COURT

9                          CENTRAL DISTRICT OF CALIFORNIA

10                                 EASTERN DIVISION

11

12                                              CASE NO. CV 04-09049 SGL (RNBx)
                                                JAMS Reference No. 1100049530
13  CARTER BRYANT, an individual,

14          Plaintiff,
                                                Consolidated with
15      v.                                      Case No. CV 04-09059
                                                Case No. CV 05-2727
16  MATTEL, INC., a Delaware corporation,
                                                **ORDER GRANTING IN PART AND**
17          Defendant.                          **DENYING IN PART MATTEL'S**
                                                **MOTION TO COMPEL RESPONSES**
18                                              **TO INTERROGATORY NOS. 27-44**
                                                **AND 46-50 BY THE MGA PARTIES**
19
20  CONSOLIDATED WITH
    MATTEL, INC. v. BRYANT and
21  MGA ENTERTAINMENT, INC. v. MATTEL,
    INC.
22                                                  I. INTRODUCTION

23          On December 20, 2007, Mattel, Inc. ("Mattel") submitted a Motion to Compel Responses

24  to Interrogatory Nos. 27-44 and 46-50 by the MGA Parties.  MGA Entertainment, Inc., MGA

25  Entertainment (HK) Limited, MGAE De Mexico, S.R.L. De C.V., and Isaac Larian (collectively

26  referred to as "MGA parties") submitted an opposition on December 31, 2007.  Mattel submitted

27  a reply on January 7, 2008.  On February 8, 2008, the MGA parties submitted their second

28  
    Bryant v. Mattel, Inc.,                                                              1
    CV-04-09049 SGL (RNBx)

                                        2·15·08

EXHIBIT 43
PAGE 1630

1  supplemental responses and third supplemental responses to the interrogatories at issue.  The

2  matter was heard on February 11, 2008.

3                                    II. BACKGROUND

4          Mattel served its Revised Third Set of Interrogatories on the MGA parties on September

5  21, 2007, asking each of them the same fifteen questions (Nos. 27-41).  Mattel served its Fourth

6  Set of Interrogatories on the MGA parties on October 12, 2007, propounding four additional

7  interrogatories (Nos. 42-45).  Mattel served an Amended Fourth Set on October 23, 2007,

8  removing No. 45, but retaining Nos. 42-44.  Mattel served its Fifth Set of Interrogatories on

9  October 19, 2007, which consisted of two additional questions (Nos. 46-47).  On October 23,

10  2007, Mattel served its Sixth Set of Interrogatories, which consisted of Interrogatory No. 45 to

11  replace the previously withdrawn interrogatory.  On October 25, 2007, Mattel served its Seventh

12  Set of Interrogatories, which consisted of Nos. 48-50.

13          In November of 2007, the MGA parties served responses and objections to Mattel's

14  interrogatories, and in some instances supplemental responses.  For the most part, the answers of

15  each of the MGA parties are substantially similar.  However, in several instances where MGA

16  Entertainment, Inc. provides a response, either MGA Entertainment (HK), MGAE de Mexico

17  S.R.L. de C.V. and/or Larian do not, asserting that the interrogatory "appears directed at another

18  party."

19          The parties met and conferred on December 10 and 12, 2007 regarding the supplemental

20  responses.  The MGA parties offered to provide supplemental responses by January 7, 2008.

21  Mattel contends, however, that the scope of the MGA parties' proposed supplemental responses

22  was inadequate.  Therefore, Mattel filed the instant motion on December 20, 2007.[1]

23          Mattel contends that the interrogatories at issue seek information relevant to central issues

24  in the case, such as:  MGA's contentions regarding which Bratz inventions were created before,

25

26  _____

27  [1]  One of the issues raised in the motions papers –whether the interrogatories exceed the 50 interrogatory per side limit -- has been rendered moot by Judge Larson's Order Granting in Part and Denying in Part Mattel's Motion for Leave to Take Additional Discovery, dated January 7, 2008.

28

EXHIBIT 43
PAGE 031

1    during and after Carter Bryant's ("Bryant") employment with Mattel; the identity of electronic

2    storage devices MGA used prior to 2002 for digital information related to Bratz; the identity of

3    the sources of information from which MGA has collected documents in this litigation which

4    relate to Bratz and the time period prior to February 28, 2001; the facts allegedly supporting

5    MGA's contention that the Bratz dolls are not based on designs Bryant created while employed

6    by Mattel; MGA's contentions regarding Mattel's claims against MGA, Bryant and others,

7    including how Bryant's Inventions Agreement with Mattel and his assignment of rights to Bratz

8    inventions to MGA and services with or for MGA while employed by Mattel affect who owns the

9    rights to Bratz inventions, and the alleged basis for MGA's claims that it purportedly acted with

10   innocent intent; the identity of MGA's bank or financial accounts; the identity of former Mattel

11   employees that have been employed by MGA; non-privileged facts concerning the dispute

12   leading to the withdrawal of MGA's prior counsel that relate to MGA's handling of discovery in

13   this case; the facts supporting MGA's claims against Mattel, including MGA's contentions that

14   Mattel has copied, infringed or diluted MGA's trade dress; and the relevant dates regarding the

15   products MGA asserts MGA has copied or infringed.  Mattel's Motion at pp. 2-3.

16        Mattel contends that although it has received responses to all of the interrogatories except

17   Nos. 39, 46 and 47, all of the responses are deficient.  As an initial matter, Mattel contends that

18   the MGA parties' "boilerplate" objections – that the interrogatories are vague and ambiguous,

19   overbroad, unduly burdensome and oppressive, seek information not in the possession, custody or

20   control of MGA, seek information protected by the attorney-client privilege, work product or joint

21   defense privileges, and call for a legal conclusion – are without merit.  Mattel contends that the

22   MGA parties fail to specify how the questions are overbroad, unduly burdensome or oppressive.

23   Mattel also contends that its interrogatories do not require the disclosure of privileged information

24   or work product, but rather require the MGA parties to state their contentions about facts or the

25   application of law to facts.

26        Mattel further contends that some of the MGA parties' responses are deficient in that they

27   merely lay out the "basic facts" (instead of "all facts") on which they intend to rely, without any

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

3

EXHIBIT 43
PAGE 632

1  details. Mattel contends that its contention interrogatories, including the purportedly "negative"

2  interrogatories asking for every fact which supports the denial of a statement or allegation, are

3  commonly used and well accepted to elucidate facts regarding a party's contentions, absent a

4  showing of undue burden. Indeed, Mattel points to decisions by the district judge which it

5  contends supports its use of the contention interrogatories at issue. Mattel also points out that it

6  provided the MGA parties with the details supporting its contentions in a one hundred-ten page

7  supplemental interrogatory response, and contends that the MGA parties ought to provide

8  comparable details to Mattel.

9       Mattel also contends that the MGA parties have unilaterally limited many of their

10  responses by disregarding Mattel's definitions of terms and phrases used in the interrogatories.

11  Further, Mattel contends that the MGA parties have failed to identify with specificity documents

12  they intend to rely upon, as requested by some of the interrogatories.

13       Mattel acknowledges that fully responding to the interrogatories will require some effort.

14  However, Mattel contends that the interrogatories are not unduly burdensome in this high stakes

15  litigation. Mattel contends that its need to discover MGA's key contentions outweighs any effort

16  the MGA parties will be required to undertake to disclose the requested information.

17  Accordingly, Mattel seeks an order overruling all of the MGA parties' objections and compelling

18  the MGA parties to provide complete responses to Interrogatory Nos. 27-44 and 46-50.

19       The MGA parties contend that their current responses comply with Rule 33 of the Federal

20  Rules of Civil Procedure and that Mattel is not entitled to any additional information for a number

21  of reasons. The MGA parties raise four main arguments in opposition to Mattel's motion. First,

22  the MGA parties contend that Mattel is not entitled to information about MGA's substitution of

23  counsel because such information is protected by the attorney-client privilege or the work product

24  doctrine. Second, the MGA parties contend that Mattel is not entitled to the sweeping financial

25  data that has been requested. Third, the MGA parties contend that Mattel's contention

26  interrogatories contain misleading and unfair definitions and are unduly burdensome in that they

27  require a recitation of all facts supporting the MGA parties' contentions. Fourth, the MGA parties

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

4

EXHIBIT 43
PAGE 633

1   contend that Rule 33 does not require a response to a contention interrogatory to set forth more

2   than the principal factual and legal bases for the response.

### III. STANDARDS

4      Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain

5   discovery regarding any matter, not privileged, that is relevant to the claim or defense of any

6   party." Fed.R.Civ.P. 26(b)(1).  Fishing expeditions to discover new claims, however, are not

7   permitted.  See Fed.R.Civ.P. 26(b)(1); Rivera v. NIBCO, Inc., 364 F.3d 1057, 1072 (9th Cir.

8   2004) ("District courts need not condone the use of discovery to engage in 'fishing

9   expeditions.'"); Bernstein v. Travelers Ins. Co., 447 F.Supp.2d 1100, 1102 (N.D. Cal. 2006)

10  (citing Rule 26(b), Advisory Committee's Note to Amendments Effective December 1, 2000)

11  (Congress' changes in the language of Rule 26(c), substituting the words "claim or defense" for

12  the phrase "subject matter involved in the pending action," were intended to prevent discovery

13  that swept far beyond the claims and defenses of the parties and that seemed designed not to fairly

14  litigate the issues presented by the pleadings but to develop new claims or defenses.).

15      Further, pursuant to Rule 26(b)(2), Fed.R.Civ.P., the court shall limit the frequency or

16  extent of use of the discovery methods if the court determines that (i) the discovery sought is

17  unreasonably cumulative or duplicative, or is obtainable from some other source that is more

18  convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample

19  opportunity by discovery in the action to obtain the information sought; or (iii) the burden or

20  expense of the proposed discovery outweighs its likely benefit, taking into account the needs of

21  the case, the amount in controversy, the parties' resources, the importance of the issues at stake in

22  the litigation, and the importance of the proposed discovery in resolving the issues. Fed.R.Civ.P.

23  26(b)(2)(C).

24      Rule 33 of the Federal Rules of Civil Procedure allows a party to propound

25  interrogatories, for which the responding party is required to furnish such information as is

26  available to the party after conducting a reasonable inquiry.  "Each interrogatory must, to the

27  extent it is not objected to, be answered separately and fully in writing under oath." Fed.R.Civ.P.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

5

EXHIBIT 43
PAGE 634

1    33(b)(3). "The grounds for objecting to an interrogatory must be stated with specificity."

2    Fed.R.Civ.P. 33(b)(4).

3                                    IV. DISCUSSION

4    A. Interrogatories About the Identity of Bratz Inventions (Nos. 27, 28 and 29)

5            Interrogatory Nos. 27-29 request information relating to Bratz inventions created during

6    three different time periods, namely before, during and after Bryant's employment with Mattel:

7            **Interrogatory No. 27:** IDENTIFY each and every BRATZ INVENTION YOU
             contend was CREATED, in whole or in part, prior to January 4, 1999, and for
8            each BRATZ INVENTION so identified state all FACTS that support YOUR
             contention that such BRATZ INVENTION (or aspects or portions thereof) was
9            CREATED prior to January 4, 1999, and IDENTIFY all PERSONS with
             knowledge of such facts and all DOCUMENTS which REFER OR RELATE TO
10           such facts.

11
             **Interrogatory No. 28:** IDENTIFY each and every BRATZ INVENTION YOU
12           contend was CREATED, in whole or in part, after October 19, 2000 and before
             June 1, 2001, and for each BRATZ INVENTION so identified state all FACTS
13           that support YOUR contention that such BRATZ INVENTION (or aspects or
             portions thereof) was CREATED after October 19, 2000 and before June 1, 2001,
14           and IDENTIFY all PERSONS with knowledge of such facts and all
15           DOCUMENTS which REFER OR RELATE TO such facts.

16
             **Interrogatory No. 29:** IDENTIFY each and every BRATZ INVENTION that
17           was CREATED, in whole or in part, after January 3, 1999 and before October 21,
             2000, and for each BRATZ INVENTION so identified state all FACTS that
18           REFER OR RELATE TO the timing of the creating of such BRATZ
             INVENTION and IDENTIFY all PERSONS with knowledge of such facts and all
19           DOCUMENTS which REFER OR RELATE TO such facts.

20

21   Mattel contends that these interrogatories seek information that is plainly relevant and

22   discoverable, and that the MGA parties do not contend otherwise. Mattel further contends that

23   the partial response given using the MGA parties' definition, not Mattel's definition, of BRATZ

24   INVENTION is inadequate. Mattel also contends that the MGA parties have failed to carry their

25   burden of showing that the interrogatories are burdensome or oppressive, particularly given the

26   importance of the information sought. Mattel emphasizes that the information sought will prove

27   liability as to a number of its claims. Moreover, Mattel contends that knowing which inventions

28
     Bryant v. Mattel, Inc.,                                                                6
     CV-04-09049 SGL (RNBx)

EXHIBIT 43
PAGE 635

1  MGA claims were created before and just after Bryant's second period of employment at Mattel

2  is essential so that Mattel can avoid unfair surprise at trial and impeach the defendants'

3  chronology of Bratz design and development.

4       The MGA parties contend that Mattel is using misleading and unfair definitions to create

5  jury confusion. In particular, the MGA parties object to Mattel's definition of "BRATZ

6  INVENTION," which they contend contains separate component parts ("representation, idea,

7  concept, work, process, procedure, plan, improvement, DESIGN or other development"), and

8  Mattel's definition of "DESIGN," which they contend adds at least another 21 elements ("all

9  works, designs, artwork, sketches, drawings, illustrations, representations, depictions, blueprints,

10  schematics, diagrams, images, sculptures, prototypes, models, samples, rotocasts, reductions to

11  practice, developments, inventions and/or improvements"). The MGA parties contend that

12  including all of these concepts in the definition "improperly conflates distinct issues of patent law,

13  copyright protection, trade secret law and the common law protecting original ideas, many of

14  which have no place in the ordinary usage of the term 'invention.'" MGA Parties' Opposition at

15  2:11-13. The MGA parties emphasize that these distinctions are important because Mattel lays

16  claim to Bratz under a January 4, 1999 "Employee Confidential Information and Inventions

17  Agreement." Further, the MGA parties accuse Mattel of using the contention interrogatories to

18  elicit a misleading "sound bite" it can read to the jury to argue that the MGA parties concede that

19  Bryant "invented" Bratz while employed by Mattel. The MGA parties contend that they have

20  provided adequate responses to the interrogatories using the common and ordinary meaning of the

21  term "invention," and should not be required to provide anything further.

22       Next, the MGA parties contend that they have given Mattel the principal factual and legal

23  bases for their contentions, and Rule 33 does not require them to provide anything further. The

24  MGA parties contend that requiring a narrative response setting forth all evidence in support of

25  their contentions would render the interrogatories unduly burdensome and "inherently improper."

26  See e.g. Clean Earth Remediation & Constr. Servs. v. Am. Int'l Group, 245 F.R.D. 137, 141 (S.D.

27  N.Y. 2007) ("[A] number of cases have held that interrogatories seeking identification of all facts

28  

EXHIBIT 43
PAGE 636

1    supporting a particular allegation are *inherently improper*.").

2        Mattel's motion to compel further responses to Interrogatory Nos. 27-29 is denied because

3    the interrogatories are overbroad and unduly burdensome. The definition of "Bratz Invention" is

4    extremely broad, encompassing numerous intellectual property concepts. Mattel has not shown

5    how each and every concept embedded in its multi-faceted definition of "Bratz Invention" is

6    relevant to interpreting the term "invention" for purposes of enforcing the "Employee

7    Confidential Information and Inventions Agreement," signed by Bryant. The breadth and undue

8    burden of Interrogatory Nos. 27-29 are also compounded by the fact that Mattel is employing an

9    extremely broad definition of "Bratz Invention" in a contention interrogatory seeking all facts

10    supporting the MGA parties' contentions, the identities of all persons knowledgeable, and all

11    supporting documents. Not all contention interrogatories requiring a recitation of all facts,

12    documents and witness are objectionable. See e.g. Tatum v. Schwartz, 2007 WL 2220977 at *1

13    (E.D. Cal. Aug. 2, 2007) (noting that contention interrogatories can impose undue burdens, but

14    that "courts have otherwise approved of them when they are limited to discrete, narrow factual

15    events"); Roberts v. Heim, 130 F.R.D. 424, 427 (N.D. Cal. 1989) (recognizing a broad spectrum

16    of contention interrogatories, and noting that it is not possible to announce a hard and fast rule as

17    to the exact amount of detail a party has to supply in response to a contention interrogatory). In

18    the instant case, however, Mattel's contention interrogatories would force the MGA parties to

19    review the nearly 4 million pages of documents produced in this action and more than 50 days of

20    deposition testimony in search of information relating to "any representation, idea, concept, work,

21    process, procedure, plan, improvement, design or other development" that refers or relates to

22    Bratz, including "all works, designs, artwork, sketches, drawings, illustrations, representations,

23    depictions, blueprints, schematics, diagrams, images, sculptures, prototypes, models, samples,

24    rotocasts, reductions to practice, developments, inventions and/or improvements" that refer or

25    relate to Bratz. It is not the MGA parties' responsibility to re-write the interrogatories in a

26    manner that will yield Mattel the most amount of information to support Mattel's claims and

27    defenses. On balance, the burden of responding further to Interrogatory Nos. 27-29, as written,

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

8

EXHIBIT 43
PAGE 637

1  outweighs the likely benefit of the interrogatories, taking into account the needs of the case, the

2  amount in controversy, the parties' resources, the importance of the issues at stake in the

3  litigation, and the importance of the proposed discovery in resolving the issues.

4          In any event, the MGA parties' responses are adequate under the circumstances. Faced

5  with overbroad and unduly burdensome interrogatories, the MGA parties provide facts supporting

6  the contentions identified in the interrogatories, identify persons with knowledge of those facts,

7  and identify the principal documents or categories of documents that support each contention.

8  See e.g. Moses v. Halstead, 236 F.R.D. 667, 674 (D. Kan. 2006). For example, in response to

9  Interrogatory No. 27, the MGA parties set forth their contention that the concept for a new line of

10  fashion dolls envisioned by Bryant in August and/or September of 1998 could not have been

11  patented as a utility patent because fashion dolls were in the public domain for the purposes of

12  utility patent protection. However, the MGA parties contend that Bryant's idea of a line of

13  fashion dolls he called Bratz was sufficiently novel and original to be protected under California

14  law as a confidential novel idea under Desny v. Wilder, 46 Cal.2d 715 (1956) and its progeny.

15          The MGA parties' supplemental responses to Interrogatory No. 27 also include the MGA

16  parties' contention that Bryant's pre-1999 drawings were never reduced to practice; that design

17  patents are not available for drawings or two-dimensional flat art of the sort that Bryant sketched

18  in 1998; that Bryant was not a sculptor and any effort to translate his pre-1999 two-dimensional

19  flat art into a three-dimensional form for use as a fashion doll sculpt would have produced shapes

20  that were different from the actual shape of the final three-dimensional Bratz sculpt used in

21  manufacturing the first generation of Bratz dolls released on the market by MGA in or about June

22  2001; that the final physical shape of the first generation of Bratz dolls released on the market by

23  MGA in or about June 2001 was conceived by Margaret Leahy; and that Bryant's drawings used

24  standard fashion model poses, and thus were not novel or original. Further, the MGA parties'

25  supplemental responses to Interrogatory No. 27 include the MGA parties' contention that the

26  drawings Bryant completed in August and September of 1998 contained original expression

27  covered by copyright, but that subsequent modifications and versions of the drawings made by

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

9

EXHIBIT 43
PAGE 638

1    Bryant in 1999 and 2000 did not contain original expression. The MGA parties also identify

2    numerous individuals having knowledge of the facts supporting their contentions, and identify

3    documents that are relevant to the MGA parties' contentions.

4    B. Interrogatory About the Identity of Former Mattel Employees Hired by MGA (No. 41)

5           Interrogatory No. 41 asks the MGA parties to "IDENTIFY" all former Mattel employees

6    "who are now or have been employed" by MGA since January 1, 1999.  More specifically,

7    Interrogatory No. 41 asks the MGA parties to:

8           IDENTIFY all PERSONS who at any time have been employed by or under
            contract with MATTEL who are now or have been employed by or under contract
9           with YOU since January 1, 1999, and, for each such PERSON, state his or her
            name, date of hire or effective date of contract, the date on which YOU first had
10          contact with such PERSON regarding potential employment or contracting, the
            date(s) on which such PERSON was interviewed for possible employment or
11          contracting, each title (if any) such PERSON has held while employed by or
            under contract with YOU, and the date of termination (if applicable).

12
     In their supplemental response, the MGA parties assert numerous objections, but also provide a
13
     list of well over a hundred individuals with their position title and employment dates.
14
            Mattel contends that the MGA parties' response is incomplete because it does not contain
15
     the date of first contact regarding potential employment or contracting, as well as the interview
16
     date for potential employment or contracting.
17
            The MGA parties contend that during the meet and confer process, they agreed to
18
     investigate whether the additional requested information was reasonably available.  The MGA
19
     parties represent that they are in the process of looking for the requested information, and that
20
     they will supplement their response if the information is reasonably available without undue
21
     burden.
22
            Mattel's motion to compel a further response to Interrogatory No. 41 is granted in part.
23
     The requested information is clearly relevant to Mattel's claims, and the MGA parties do not
24
     contend otherwise.  In particular, the date of first contact, interview date, start date and end date
25
     for Bryant's employment are highly relevant, but are conspicuously absent from the MGA
26
     parties' response.  The MGA parties shall provide the missing information for Bryant.  In
27

28   Bryant v. Mattel, Inc.,                                                                    10
     CV-04-09049 SGL (RNBx)

EXHIBIT 43
PAGE 639

1   addition, the MGA parties shall provide the interview dates for each of the individuals identified

2   in their supplemental responses.  The interview dates are potentially relevant to Mattel's claim

3   that the MGA parties induced former Mattel employees to abscond with Mattel's trade secrets.

4   However, the MGA parties are not required to provide the date of first contact for each individual

5   because the burden of producing such information outweighs its likely benefit, taking into

6   account the factors set forth in Rule 26(b)(2)(C), Fed.R.Civ.P.

7   C. Interrogatories re Allegedly Copied or Infringed Products (Nos. 43-44)

8       Interrogatory Nos. 43 and 44 request dates on which each "concept, design, product,

9   product packaging or other matter that YOU contend Mattel copied or infringed" was (1)

10  "conceived" and (2) "first fixed in any tangible medium of expression," and the identity of

11  persons with knowledge and documents that refer or relate to the foregoing.  In the responses, the

12  MGA parties state numerous objections, but also refer Mattel to MGA's response to Interrogatory

13  No. 3 of Mattel's First Set of Interrogatories re Claims of Unfair Competition.  The MGA parties

14  also respond that, in general, at MGA, product development is completed 7-8 months before the

15  first invoice date, although that time period could be reduced in certain situations to 5-6 months.

16      Mattel contends that the information it seeks is relevant to its defense against MGA's

17  claims that Mattel copied or infringed MGA's products.  One of Mattel's defenses is that "Mattel

18  was the one who came up with relevant matters first – before MGA – and that MGA was the one

19  who copied or stole from Mattel."  Mattel's Motion at p.23.  Mattel contends that the MGA

20  parties' responses to Interrogatory Nos. 43 and 44 are inadequate because the referenced

21  Interrogatory No. 3 requested different information, namely the dates on which the products were

22  first "disclosed to any PERSON not employed by MGA" and first "made available for sale."

23      In response to the instant motion to compel, the MGA parties represent that they are

24  assessing whether they can provide more specific information without undue hardship, and will

25  supplement their responses if such information is available.  MGA's Opposition at p.29.

26      Mattel's motion to compel further responses to Interrogatory Nos. 43 and 44 is granted.

27  The requested information is relevant to Mattel's defense against the MGA parties' claims that

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

11

EXHIBIT 43
PAGE 640

1   their products have been copied or infringed by certain Mattel products.  Although the MGA

2   parties served supplemental responses after filing their opposition brief, the supplemental

3   responses do not include the requested information.  The MGA parties have failed to establish

4   that the interrogatories are unduly burdensome.

5   <u>D. Interrogatories About the Trade Dress MGA Claims Mattel Products Infringe (Nos. 48-50)</u>

6       Interrogatory Nos. 48-50 are directed to the MGA parties' trade dress claims:

7       **Interrogatory No. 48:**  Separately IDENTIFY each trade dress that YOU
        contend MATTEL has copied, infringed or diluted or that is otherwise the
8       subject of YOUR claims, defenses or allegations in THIS ACTION.

9       **Interrogatory No. 49:**  For each trade dress identified in response to
        Interrogatory No. 48, separately and fully IDENTIFY each and every MATTEL
10      product, packaging or other matter that YOU contend copies, infringes or dilutes
        such trade dress, including without limitation by describing fully and separately,
11      for each such MATTEL product, packaging or other matter, each and every
        element of the claimed trade dress that YOU contend MATTEL has copied,
12      infringed or diluted.

13       **Interrogatory No. 50:**  For each trade dress identified in response to
        Interrogatory No. 48, separately and completely IDENTIFY all facts that support
14      YOUR contention that such trade dress is protectible, all DOCUMENTS that
        REFER OR RELATE to the foregoing and all PERSONS with knowledge of the
15      foregoing.

16       Mattel contends that these interrogatories seek core contentions underlying the MGA

17   parties' trade dress infringement claims and that the partial responses provided are inadequate

18   because they set forth only the "basic facts" without identifying a single product that MGA

19   alleges was infringed or any other details.  Mattel also contends that the responses are improper

20   insofar as the MGA parties state that their responses "may be incomplete" as the subject matter of

21   this interrogatory will be the source of expert testimony and an expert may identify additional

22   facts that support MGA's contentions.  Mattel contends that such a limitation would allow MGA

23   to sandbag Mattel by introducing new products into the litigation after fact discovery has closed.

24       As a preliminary matter, the MGA parties contend that Interrogatory Nos. 48-50 are

25   directed to a Phase 2 issue, and therefore, they reserve their right to supplement the responses in

26   Phase 2.  Nevertheless, the MGA parties contend that their responses provide Mattel with the

27   principal facts supporting their contentions in compliance with Rule 33.

28

EXHIBIT 43
PAGE 641

1        Mattel's motion to compel further responses to Interrogatory Nos. 48-50 is denied. The

2   MGA parties are in substantial compliance with Rule 33, having identified numerous elements of

3   trade dress they contend Mattel has infringed. More specifically, the MGA parties' responses

4   identify Mattel's "My Scene" fashion dolls and pet dolls as the Mattel products that infringe their

5   trade dress. The MGA parties also set forth the principal facts supporting their contention that

6   their trade dress is protectible under the applicable trade dress legal principles, including that the

7   trade dress is aesthetic and non-functional, inherently distinctive, and has acquired secondary

8   meaning. That the interrogatory responses include a reservation of rights to supplement during

9   expert discovery does not render the responses inherently improper or inadequate. Mattel does

10  not contest that the identification of the elements and products subject to trade dress infringement

11  will be a subject of expert testimony.

12  E. Interrogatory About the Identity of MGA's Bank Accounts (No. 39)

13       Interrogatory No. 39 asks MGA to "IDENTIFY each and every bank or financial

14  institution account that REFERS OR RELATES TO YOU, including accounts in YOUR name or

15  for YOUR benefit, since January 1, 1999." The MGA parties objected to this interrogatory as

16  seeking information "not relevant to the claims or defenses of any party to the action and not

17  reasonably calculated to lead to the discovery of admissible evidence.

18       Mattel contends that the information sought is discoverable because it may lead to direct

19  evidence of liability regarding Mattel's allegations of commercial bribery against MGA and

20  Larian. More specifically, Mattel contends that the timing and amounts of payments made to

21  Bryant and to other then-Mattel employees from MGA's bank accounts would establish

22  commercial bribery and other tortious conduct. Mattel also contends that the timing of such

23  payments would also be indicative of the timing of Bryant's first involvement with MGA.

24  Further, Mattel contends that the requested information is relevant to establish net worth for

25  purposes of calculating punitive damages. Mattel also contends that the MGA parties' objection

26  based upon Rule 69(a), Fed.R.Civ.P., is without merit because the requested information is

27  independently relevant to many issues in the liability phase of trial, and is not just directed at

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

13

EXHIBIT 43
PAGE 692

1    seeking discovery in aid of a judgment or execution.

2        The MGA parties contend that Mattel is not entitled to the sweeping financial data sought

3    in Interrogatory No. 39. The MGA parties are particularly concerned that Mattel will use the

4    information it obtains pursuant to Interrogatory No. 39 to launch abusive third-party discovery for

5    even more private financial information. Further, the MGA parties contend that Mattel has

6    already received substantial financial information from MGA Entertainment, Inc. directly, and

7    has not shown how that information is insufficient. More specifically, the MGA parties point out

8    that Mattel already has audited and unaudited quarterly and annual profit and loss statements;

9    audited and unaudited quarterly and annual statements; annual reports; various MGA financial

10    reports; various financial documents relating to Veronica Marlow; documents showing royalty

11    payments to Bryant; documents showing MGA's sales, returns and costs of good sold for each

12    month, by SKU, since 2001; documents showing MGA's promotional advertising and media

13    expenditures, including MGA's internal allocation of those expenditures by brand and/or product;

14    documents showing MGA's amortization and depreciation of certain capital assets and

15    expenditures; documents showing MGA's monthly general ledger entries aggregated by account,

16    including income and expense accounts, reserves and liabilities; and documents sufficient to

17    explain MGA's various accounts as presently and historically maintained in MGA's books and

18    records, as well as various nomenclature assigned to items, products, brands, sub-brands, and

19    profit centers. MGA's Opposition at pp. 10-11. Further, the MGA parties contend that MGA's

20    witness, Lisa Tonnu, has testified regarding payments to Mr. Bryant.

21        Mattel's motion to compel a further response to Interrogatory No. 39 is denied on the

22    grounds that the financial information sought is cumulative of other discovery already sought and

23    obtained by Mattel, as outlined above by the MGA parties. Mattel has also sought and obtained

24    documents sufficient to identify each of Mr. Larian's bank accounts or financial institutions and

25    other banking relationships since January 1, 1999. See Order Granting in Part and Denying in

26    Part Mattel's Motion to Compel Production of Documents by Isaac Larian; Denying Request for

27    Sanctions (Document Request No. 207). Further, as Mattel acknowledges, Mattel has sought and

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

14

EXHIBIT 43
PAGE 643

1   obtained deposition testimony regarding payments to Mr. Larian, including the account to which

2   such payments were made.  See Order Granting in Part and Denying in Part Mattel's Motion to

3   Compel MGA to Produce Witnesses Pursuant to Third Notice of Deposition Under Rule 30(b)(6).

4   In light of the financial information discovery Mattel has already obtained, Interrogatory No. 39 is

5   unjustified, taking into consideration all of the factors set forth in Rule 26(b)(2)(C), Fed.R.Civ.P.

6   F. Contention Interrogatories (Nos. 30-38 and 42)

7        Mattel served several contention interrogatories on several additional topics.  The

8   remaining contention interrogatories at issue are set forth below.

9        **Interrogatory No. 30:** State all facts that support YOUR contention, if YOU so
    contend, that, assuming BRYANT assigned rights in any BRATZ INVENTION
10   to MATTEL pursuant to the INVENTIONS AGREEMENT, MGA is entitled to
    priority over and/or has superior rights to MATTEL as to such BRATZ
11   INVENTION, and IDENTIFY all PERSONS with knowledge of such facts and
    all DOCUMENTS that REFER OR RELATE TO such facts.

12

13        **Interrogatory No. 31:** State all facts that support YOUR contention, if YOU so
    contend, that the INVENTIONS AGREEMENT is not valid and enforceable, and
14   IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS
    that REFER OR RELATE TO such facts.

15        **Interrogatory No. 32:** State all facts that support YOUR contention, if YOU so
    contend, that MATTEL is not or would not be entitled to injunctive relief as
16   requested in its COMPLAINT and/or COUNTERCLAIMS if it is not ultimately
    determined that MATTEL owns one or more BRATZ INVENTIONS, and
17   IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS
    that REFER OR RELATE TO such facts.

18

19        **Interrogatory No. 33:** State all facts that support YOUR contention, if YOU so
    contend, that MATTEL is not entitled to an award of punitive or exemplary
20   damages against YOU, and IDENTIFY all PERSONS with knowledge of such
    facts and all DOCUMENTS that REFER OR RELATE TO such facts.

21        **Interrogatory No. 34:** State all facts that support YOUR contention, if YOU so
    contend, that YOU did not intentionally interfere with the INVENTIONS
22   AGREEMENT when BRYANT purported to TRANSFER and MGA purported
    to ACQUIRE rights to BRATZ, and IDENTIFY all PERSONS with knowledge
23   of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

24        **Interrogatory No. 35:** State all facts that support YOUR contention, if YOU so
    contend, that YOU did not aid or abet any breach of fiduciary duty or duty of
25   loyalty owed by BRYANT to MATTEL when BRYANT performed work or
    services with or for MGA while BRYANT was employed by MATTEL, and
26   IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS
    that REFER OR RELATE TO such facts.

27

28        **Interrogatory No. 36:** State all facts that support YOUR contention, if YOU so

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

15

EXHIBIT 43
PAGE 644

1    contend, that YOU acted with an innocent state of mind or reasonably believed
     that MATTEL did not own any rights in any BRATZ INVENTION when Bryant
2    purported to TRANSFER and MGA purported to ACQUIRE rights to BRATZ,
     and IDENTIFY all PERSONS with knowledge of such facts and all
3    DOCUMENTS that REFER OR RELATE TO such facts.

4    **Interrogatory No. 37:** State all facts that support YOUR contention, if YOU so
     contend, that BRYANT did not breach the INVENTIONS AGREEMENT when
5    BRYANT purported to TRANSFER right to BRATZ to MGA, and IDENTIFY
     all PERSONS with knowledge of such facts and all DOCUMENTS that REFER
6    OR RELATE TO such facts.

7    **Interrogatory No. 38:** State all facts that support YOUR contention, if YOU so
     contend, that BRYANT did not breach BRYANT's duty of loyalty or fiduciary
8    duties to MATTEL when BRYANT performed work or services with or for
     MGA while BRYANT was employed by MATTEL, and IDENTIFY all
9    PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR
     RELATE TO such facts.
10
     **Interrogatory No. 42:** State all facts that support YOUR contention, if YOU so
11   contend, that any BRATZ DOLLS are not BASED ON BRATZ DESIGNS
     created by BRYANT on or before October 19, 2000, and IDENTIFY all
12   PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR
     RELATE TO such facts.
13

14
     Mattel contends that each of these interrogatories seeks facts relating to key issues in this case,
15
     including MGA's contentions, if any, regarding the priority of Mattel's rights in Bratz vis-à-vis
16
     MGA; how Bryant's Inventions Agreement with Mattel, Bryant's assignment of rights to Bratz
17
     inventions to MGA, and Bryant's services with or for MGA while employed by Mattel affect who
18
     owns the rights to Bratz inventions; Mattel's alleged entitlement to punitive damages and other
19
     relief; MGA's purported innocent state of mind; MGA's alleged intentional interference with the
20
     Inventions Agreement; MGA's alleged aiding and abetting of Bryant's breach of fiduciary duty
21
     and duty of loyalty to Mattel; why the Bratz dolls purportedly are not based on designs Bryant
22
     created during his Mattel employment; and why the trade dress MGA contends Mattel infringed is
23
     protectible.  Mattel contends that the MGA parties cannot show burden sufficient to outweigh
24
     Mattel's need for the information sought.
25
            In addition to the objections discussed in connection with Interrogatory Nos. 27-29, the
26
     MGA parties contend that they have given sufficient responses to Interrogatory Nos. 30 and 42.
27

28

EXHIBIT 43
PAGE 645

1   As for Interrogatory Nos. 31-38, the MGA parties contend that the interrogatories improperly

2   assume that Mattel owns Bryant's original idea for Bratz and ask the MGA parties to explain why

3   they should not be punished for developing Bryant's ideas.  Nevertheless, the MGA parties

4   represent that they responded to the interrogatories in good faith by providing the principal facts

5   supporting their contentions, and therefore are in compliance with Rule 33.

6       Mattel's motion to compel a further response to Interrogatory No. 30 is denied.  Like

7   Interrogatory Nos. 27-29, the definition of "Bratz Invention" in No. 30, combined with the

8   request for all facts, the identity of all persons and all supporting documents, render the

9   interrogatory overbroad and unduly burdensome.  In any event, the MGA parties have provided a

10  reasonably sufficient response.  The MGA parties' supplemental response includes their

11  contention that the "Inventions Agreement" did not apply to design patent rights.  Further, the

12  MGA parties contend that (a) the pre-October 21, 2000 drawings of characters that Bryant named

13  Bratz were never reduced to practice; (b) under 35 U.S.C. §171, design patents are available for

14  three-dimensional objections, not drawings or two-dimensional flat art of the sort that Bryant

15  sketched in 1998; (c) Bryant was not a sculptor, and any direct translation of his pre-October 21,

16  2000 two-dimensional flat art into a three-dimensional form for use as a fashion doll sculpt would

17  have produced shapes that were different from the actual shape of the final three-dimensional

18  Bratz sculpt used in manufacturing the first generation of Bratz dolls released on the market by

19  MGA in or about June 2001; (d) the final physical shape of the first generation of Bratz dolls,

20  released on the market by MGA in or about June 2001 was "conceived of" and "reduced to

21  practice" by Margaret Leahy, working on behalf of MGA, after October 20, 2000 and before June

22  1, 2001, along with other MGA agents and employees; (e) Bryant's drawings used standard

23  fashion model poses, and thus were not novel or original; and (f) the "dummy" brought by Bryant

24  to his meeting with MGA on September 1, 2000, was merely an assemblage of random pre-

25  existing doll parts that was never intended to, and did not, provide an accurate representation of

26  what became the Bratz sculpt.  Based on the foregoing, the MGA parties contend that, assuming

27  arguendo that both Bryant assigned his 1998 drawings to Mattel and that such drawings were the

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

17

EXHIBIT 43
PAGE 646

1   conception of what could have been developed into a tangible item that would have qualified for

2   protection under a design patent, such conception would not have covered the shape of the final

3   Bratz sculpt utilized in the first generation of Bratz dolls released to market in or about June 2001,

4   nor any subsequent three-dimensional Bratz shape.  The MGA parties' supplemental responses to

5   Interrogatory No. 30 also address copyright protection and trademark protection, and identify

6   persons with knowledge and documents relevant to the MGA parties' contentions.

7        Mattel's motion to compel further responses to Interrogatory Nos. 31-37 and 42 is denied.

8   The MGA parties are in substantial compliance with Rule 33, having set forth sufficient facts,

9   identified persons with knowledge, and identified documents to support their contentions.  To

10   require any further information would be unduly burdensome, taking into consideration all of the

11   factors set forth in Rule 26(b)(2)(C), Fed.R.Civ.P.

12        Mattel's motion to compel a further response to Interrogatory No. 38 is granted, however,

13   because the supplemental response does not identify supporting documents.

14   G. Interrogatories About MGA's Searches for Documents (40 and 47)

15        Mattel has propounded two interrogatories to the MGA parties about their searches for

16   documents and storage devices containing evidence of early work on Bratz:

17        **Interrogatory No. 40:**  IDENTIFY each and every STORAGE DEVICE that

18        YOU have used for any purpose which contains or contained DIGITAL INFORMATION that REFERS OR RELATES TO BRATZ and/or ANGEL prior to January 1, 2002.

19        **Interrogatory No. 47:**  IDENTIFY each and every SOURCE OF

20        INFORMATION from which YOU have COLLECTED DOCUMENTS in THIS ACTION that REFER OR RELATE TO BRATZ and that also REFER OR

21        RELATE TO the time period prior to February 28, 2001 (regardless of when such

22        DOCUMENT was, in whole or part, created, drafted, generated, sent, received or transmitted).

23   In response to Interrogatory No. 40, the MGA parties described the computer systems that existed

24   worldwide at MGA prior to January 1, 2002.  The MGA parties did not provide any substantive

25   response to No. 47.

26        Mattel contends that the interrogatories are designed to test MGA's productions in this

27   litigation and obtain additional responsive documents and information.  Further, Mattel contends

28

EXHIBIT 43
PAGE 647

1   that there is legal precedent allowing access to a party's information storage systems where the

2   party is shown to have improperly withheld relevant documents or information.  Mattel contends

3   that Interrogatory No. 40 seeks legitimate discovery regarding the identification of MGA's

4   storage devices because Mattel may have a right to access such storage devices.  In particular,

5   Mattel contends that it is entitled to, but the MGA parties have failed to provide, an identification

6   of specific storage devices, the individuals who have used them, the persons who currently

7   possess them, and the dates on which they were destroyed or copied, if any.  Mattel contends that

8   the information requested in Interrogatory No. 40 is necessary to determine whether MGA has

9   withheld responsive documents and to enable Mattel to obtain such documents.

10          Similarly, Mattel contends that Interrogatory No. 47 seeks relevant information regarding

11   the sources of information – i.e. the media – from which the MGA parties have collected

12   documents relating to Bratz and the period prior to February 28, 2001.  Mattel contends that the

13   information it seeks will enable it to determine what sources the MGA parties have examined and

14   have not examined to produce documents in the case.

15          During the meet and confer process, the MGA parties proposed that the parties exchange

16   "source logs" regarding the entirety of their productions in lieu of MGA's responses to Nos. 40

17   and 47.  The "source logs" would provide each document's Bates number, the identity of the

18   individual associated with or who maintained the document and the location where the document

19   was found.  Mattel contends that the "source log" proposal is unnecessary because Mattel is only

20   seeking information about key early Bratz documents, not every document produced in the case.

21   Mattel also contends that the "source log" proposal is unacceptable because the "source log,"

22   would not reveal sources that contain early Bratz documents that MGA has not produced

23   documents from, or where MGA looked for documents, as well as where MGA failed to look.

24          The MGA parties contend that the interrogatories assume, without any factual support,

25   that the MGA parties are aware of the existence of Bratz documents on their computer systems

26   that relate to the time period prior to January 1, 2002, and have not produced those documents.

27   The MGA parties contend that Mattel's speculation is not a basis to compel further responses to

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

19

EXHIBIT 43
PAGE 648

1   Interrogatory Nos. 40 and 47. The MGA parties emphasize that they have already produced more

2   than 3.7 million pages of documents, whereas Mattel has only produced a few hundred thousand

3   pages of documents. Furthermore, the MGA parties contend that these interrogatories are

4   cumulative of deposition testimony Mattel has previously sought and obtained regarding the

5   collection of documents produced in this action. The MGA parties also represent that they have

6   agreed to provide additional testimony on this topic.

7           Mattel's motion to compel further responses to Interrogatory Nos. 40 and 47 is granted.

8   The interrogatories seek relevant information about the identity of each storage device that

9   contains or contained information referring or relating to Bratz prior to January 1, 2002, and other

10  sources of information from which the MGA parties collected documents in this action that refer

11  or relate to Bratz and the time period prior to February 28, 2001. The "source log" information is

12  not a reasonable substitute for the information requested in the interrogatories because it would

13  not necessarily identify all storage devices used by the MGA parties during the relevant period.

14  The interrogatories are narrowly tailored to a key subject, namely early Bratz documents and

15  other information. The MGA parties have failed to establish that the interrogatories are unduly

16  burdensome. Nor are the interrogatories cumulative of other discovery propounded by Mattel.

17  Interrogatory Nos. 40 and 47 have the potential of imparting more detailed information than a

18  witness might be able to recall in the course of a deposition. Furthermore, the information sought

19  in Interrogatory Nos. 40 and 47 will enable Mattel to question MGA's witnesses more effectively.

20  H. Interrogatory Regarding MGA's Substitution of Counsel (No. 46)

21          Interrogatory No. 46 seeks facts regarding MGA's substitution of counsel as follows:

22  **Interrogatory No. 46:** Without disclosing the content of communications which
    are protected by the attorney-client privilege, state fully and in detail all facts
23  which REFER OR RELATE TO any dispute regarding THIS ACTION between,
    on the one hand, MGA, LARIAN, BRYANT and/or MACHADO and, on the
24  other hand, O'MELVENY and/or CHRISTENSEN, including but not limited to
    any and all disputes which were or have been asserted as a basis for, or which
25  underlie, contributed to or were a factor in, the withdrawal, termination and/or
    substitution of O'MELVENY and/or CHRISTENSEN as counsel of record in this
26  ACTION, and IDENTIFY all PERSONS with knowledge of such facts and all
    DOCUMENTS that REFER OR RELATE TO such facts.

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

· 20

EXHIBIT 43
PAGE 699

1   Mattel contends that the interrogatory is limited to facts, and does not require the disclosure of

2   information protected by either the attorney-client privilege or the work product doctrine.

3   Further, Mattel contends that the requested facts are relevant and discoverable. Mattel reasons

4   that O'Melveny cited to California Rule of Professional Conduct 3-700(c) as the basis for its

5   motion to withdraw, and that Rule 3-700(c) sets forth several grounds for withdrawal that could

6   be relevant to the case. For example, Mattel contends that O'Melveny may have withdrawn

7   because MGA sought to provide false testimony, or was seeking "to pursue an illegal course of

8   conduct" or "insist[ed] that counsel pursue a course of conduct that is illegal or prohibited under

9   the State Bar Act." Mattel's Motion at p. 38.

10       The MGA parties contend that Interrogatory No. 46 is predicated upon an imagined

11   "dispute" with former counsel, and moreover, that the information sought is protected by the

12   work product doctrine and/or attorney-client privilege. The MGA parties reason that even if

13   Mattel is correct that there was some sort of dispute, either (1) the dispute does not relate to the

14   claims and defenses in this action, and therefore the requested information is irrelevant and

15   outside the proper scope of discovery, or (2) the dispute does relate to the claims or defenses in

16   this action, such that revelation of the substance of the dispute would necessarily reveal the

17   thought processes of trial counsel and the communication of those thought processes to the MGA

18   parties.

19       Mattel's motion to compel is denied as to Request No. 46. The interrogatory is not

20   tethered to any particular claim or defense. Nor is the interrogatory directed at uncovering the

21   factual events giving rise to any claim or defense. Instead, the interrogatory assumes that there

22   was a "dispute" with former counsel involving false testimony, illegal conduct, or attorney

23   misconduct; that this "dispute" led to the withdrawal, termination and/or substitution of counsel;

24   and that this "dispute" potentially relates to a claim or defense in this suit. There is no evidence,

25   however, to substantiate such a series of assumptions. Although the publicly available

26   information suggests that there was a breakdown of the attorney-client relationship, this evidence,

27   without more, is insufficient to justify Interrogatory No. 46 because the burden or expense of the

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

21

EXHIBIT 43
PAGE 650

1    proposed discovery outweighs its likely benefit under Rule 26(b)(2)(C), Fed.R.Civ.P.

2    Furthermore, the interrogatory is grossly overbroad in seeking information about "any and all

3    disputes" with former counsel, regardless of whether such disputes relate to a claim or defense in

4    the case.

5          The interrogatory is also objectionable because it intrudes upon MGA's relationship with

6    former counsel, and thus necessarily intrudes upon the protections afforded by the attorney-client

7    privilege and work product doctrine.  Mattel's rank speculation that there were attorney-client

8    discussions of wrongdoing is insufficient to vitiate the attorney-client privilege.  See e.g. In re

9    Napster, Inc. Copyright Litig., 479 F.3d 1078, 1090 (9th Cir. 2007).  Nor have the MGA parties

10   waived the attorney-client privilege.  Although the MGA parties discussed the reasons for their

11   substitution of counsel with the press, there has been no showing that the information they

12   disclosed revealed the substance of an attorney-client privileged communication.

### V. CONCLUSION

14         For the reasons set forth above, it is hereby ordered as follows:

15         1.  Mattel's motion to compel is granted as to Interrogatory Nos. 38, 40, 41 (as narrowed),

16   43-44 and 47.  The MGA parties shall serve supplemental responses to said interrogatories no

17   later than February 26, 2008.

18         2.  Mattel's motion to compel is denied as to Interrogatory Nos. 27-37, 39, 42, 46 and 48-

19   50.

20   Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery Master,

21   Mattel shall file this Order with the Clerk of Court forthwith.

22

23   Dated: February 15, 2008

24                                    HON. EDWARD A. INFANTE (Ret.)
                                           Discovery Master
25

26

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

22

EXHIBIT 43
PAGE 651

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on February 15, 2008, I

served the attached ORDER GRANTING IN PART AND DENYING IN PART MATTEL'S MOTION

TO COMPEL RESPONSES TO INTERROGATORY NOS. 27-44 AND 46-50 BY THE MGA

PARTIES in the within action by email addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| Matthew M. Werdegar, Esq. | Keker & Van Nest | mwerdegar@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| Audrey Walton-Hadlock, Esq. | Keker & Van Nest | awalton-hadlock@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Thomas J. Nolan, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tnolan@skadden.com |
| Raoul D. Kennedy, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | rkennedy@skadden.com |
| Amy S. Park, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | apark@skadden.com |
| Harriet S. Posner, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | hposner@skadden.com |
| Carl Alan Roth, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | croth@skadden.com |
| Timothy A. Miller, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tmiller@skadden.com |
| Marcus R. Mumford, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Mmumford@skadden.com |
| Paul M. Eckles, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Paul.eckles@skadden.com |
| Robert J. Herrington, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Robert.herrington@skadden.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above

is true and correct.

Executed on February 15, 2008, at San Francisco, California.

_Sandra Chan_

Sandra Chan

EXHIBIT 43
PAGE 652

EXHIBIT 44



**ORRICK**

**RECEIVED**

SEP 16 2009

ORRICK, HERRINGTON & SUTCLIFFE LLP
777 SOUTH FIGUEROA STREET
SUITE 3200
LOS ANGELES, CALIFORNIA 90017-5855

*tel +1-213-629-2020*
*fax +1-213-612-2499*

WWW.ORRICK.COM

*VIA FEDERAL EXPRESS*

September 15, 2009

William A. Molinski
(213) 612-2256
wmolinski@orrick.com

Marshall M. Searcy III, Esq.
QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
865 S. Figueroa St. 10th Floor
Los Angeles, California 90017

Re:   <u>MGA v. Mattel, Inc.</u>

Dear Marshall:

Pursuant to Discovery Master's Order No. 52, you will be receiving, under separate cover from our litigation support vendor, an external hard drive containing documents being produced by MGA de Mexico, S.R.L. de C.V. ("MGA Mexico") (MGA2 0070615 - MGA2 0258102). Because of the expedited nature of the ordered production, and while we have made every reasonable effort to remove privileged materials, it is possible that there may be additional privileged materials in that production. Any such production is inadvertent and is in no way intended to be a waiver or relinquishment of the attorney-client privilege or attorney work product privilege. *See* Protective Order ¶ 13. Should you locate any such materials, we ask that you notify us immediately and return such materials to us.

Further, as we indicated in our opposition to the two motions to compel MGA Mexico, MGA has already produced from MGA Mexico a vast number of documents responsive to the requests addressed in Order No. 52. I am attaching hereto, as Exhibit A, a list that identifies by Bates number and custodian the documents produced from MGA Mexico. As Order No. 52 contemplates, MGA Mexico identifies those documents previously produced in response to Order No. 52. As you will see, there are over a hundred thousand documents we have identified to date that were produced by MGA Mexico, which would fill more than 40 boxes of documents.

Also enclosed are additional documents responsive to the requests addressed in Order No. 52 that are Bates numbered MGA2 0258103 - MGA2 0258936.

**EXHIBIT** 44
**PAGE** 653



ORRICK

Marshall M. Searcy III, Esq.
September 15, 2009
Page 2

Finally, also enclosed are MGA's Supplemental Responses to certain requests contained within Mattel's First Set of Requests for Productions (Phase II), as ordered by the Discovery Master.

Very truly yours,

William A. Molinski

WAM/mmn
Enclosures

cc:     Jason D. Russell, Esq.

OHS West:260728210.1

EXHIBIT 49
PAGE 654



# ORRICK

Marshall M. Searcy III, Esq.
September 15, 2009
Page 3

## Exhibit A

<u>Laura Ochoa</u> – MGA 3512627-3512648; MGA 4463852-4466135; MGA2 0059199-0059230.

<u>Lourdes Aguilar</u> – MGA 0155499-0156244; MGA 0239777-0246244; MGA 0246282 – MGA 0246283; MGA 0246290 – MGA 0253027; MGA 0253288 – MGA 0253403; MGA 0464241 – MGA 0495776; MGA 0495795 – MGA 0495832; MGA 0495881 – MGA 0499477; MGA 0500243 – MGA 0504164; MGA 0504375 – MGA 0508771; MGA 0510531 – MGA 0517691; MGA 1042211 – MGA 1042254; MGA 1042266 – MGA 1042272; MGA 1042279 – MGA 1042286; MGA 1042293 – MGA 1042294; MGA 1120707 – MGA 1120806; MGA 1121081 – MGA 1121140; MGA 1121248 – MGA 1121257; MGA 1121260 – MGA 1123078; MGA 1125597 – MGA 1125598; MGA 1128139 – MGA 1534326; MGA 1534351 – MGA 1534363; MGA 1534385 – MGA 1534912; MGA 1535264 – MGA 1535265; MGA 1822713 – MGA 1823159; MGA 1823162 – MGA 1823206; MGA 1823254 – MGA 1823768; MGA 1823778 – MGA 1823799; MGA 1824441 – MGA 1824448; MGA 1825135 – MGA 1825800; MGA 2160744 – MGA 2160754; MGA 2160789 – MGA 2161331; MGA 2161374 – MGA 2161375; MGA 2898733 – MGA 2899009; MGA 3495551 – MGA 3496191; MGA 3775030 – MGA 4010436; MGA 4048294 – MGA 4048296; MGA 4050681 – MGA 4050746; MGA 4050766 – MGA 4050881; MGA 4051045 – MGA 4051110; MGA 4458312 – MGA 4461585; MGA 4461600 – MGA 4461736; MGA 4461740 – MGA 4462803; MGA 4462833 – MGA 4463054; MGA 4463064 – MGA 4463246; MGA 469693 – MGA 4473050; MGA 4473063 – MGA 4473275; MGA 4473512 – MGA 4474328.

<u>Mariana Trueba</u> – MGA 0208848 – MGA 0209207; MGA 0253274 – MGA 0253287; MGA 0438332 – MGA 0438600; MGA 0504356 – MGA 0504374; MGA 1026031 – MGA 1027163; MGA 1118654 - MGA 1118842; MGA 1120685 – MGA 1120700; MGA 1120821 – MGA 1121080; MGA 1121258 – MGA 1121259; MGA 1127467 – MGA 1128138; MGA 1132991 – MGA 1133571; MGA 1192900 – MGA 1193416; MGA 1193754 – MGA 1193778; MGA 1472399 – MGA 1472505; MGA 1515156 – MGA 1516512; MGA 1533615 – MGA 1533639; MGA 1535362 – MGA 1535365; MGA 1776920 – MGA 1777151; MGA 1777388 – MGA 1777396; MGA 1822675 – MGA 1822712; MGA 1823769 – MGA 1823777; MGA 2151054 -- MGA 215085; MGA 2896590 – MGA 289663; MGA 2901544 – MGA 2901557; MGA 3480772 – MGA 3481410; MGA 3774888 – MGA 3774893; MGA 4009986 – MGA 400991; MGA 4453544 – MGA 454298; MGA 4458214 – MGA 4458230; MGA 4461586 – MGA 4461599; MGA 4461737 – MGA 4461739; MGA 4468082 – MGA 4468376; MGA 4469602 – MGA 4469615; MGA 4473051 - MGA 4473062; MGA 4474341 – MGA 4474353; MGA2 0018584 - MGA2 0018591.

<u>Pablo Vargas</u> – MGA 0437324 – MGA 0438331; MGA 0464236 – MGA 0464240; MGA 1026021 – MGA 1026030; MGA 1042207 – MGA 1042210; MGA 1117848 – MGA 1118653; MGA 1120701 – MGA 1120706; MGA 1192760 – MGA 1192899; MGA 1515105 – MGA 1515155; MGA

EXHIBIT 44
PAGE 455



**ORRICK**

Marshall M. Searcy III, Esq.
September 15, 2009
Page 4

1517601 – MGA 1517975; MGA 1533640 – MGA 1533680; MGA 1776914 – MGA 1776919; MGA 2160628 – MGA 2160743; MGA 2896397 – MGA 2896589; MGA 4009983 – MGA 4009985; MGA 4453516 – MGA 4453543; MGA 4458231 – MGA 4458311; MGA 4468076 – MGA 4468081; MGA 4468569 – MGA 4468784; MGA 4469616 – MGA 4469692.

Gustavo Machado – MGA 0209208 – MGA 0209509; MGA 0438601 – MGA 0441237; MGA 1027164 – MGA 1027623; MGA 1042273 – MGA 1042278; MGA 1042289 – MGA 1042292; MGA 1042314 – MGA 1042319; MGA 1118843 – MGA 1118956; MGA 1121141 – MGA 1121247; MGA 1123576 – MGA 1123597; MGA 1127450 – MGA 1127466; MGA 1132886 – MGA 1132990; MGA 116551 – MGA 1165512; MGA 1193417 – MGA 1193753; MGA 1193799 – Mga 1193945; MGA 1516513 – MGA 1517600; MGA 1517976 – MGA 1518516; MGA 1535388 – MGA 1535395; Mga 1777152 – MGA 1777387; MGA 1777397 – MGA 1777459; MGA 1825083 – MGA 1825088; MGA 2151086 – MGA 2153487; MGA 2896664 – MGA 2896665; MGA 3481411 – MGA 3482053; MGA 3496227 – MGA 3496698; MGA 3774894 – MGA 40100015; MGA 4050628 – MGA 4050632; MGA 4454299 – MGA 4458187; MGA 4468377 – MGA 4469064; MGA 4474329 – MGA 4474340; MGA2 0018592 – MGA2 0018595.

Susana Kuemmerle – MGA 0246245 – MGA 0246281; MGA 0246284 – MGA 0246289; MGA 0252925 – MGA 0252996; MGA 0253028 – MGA 0253273; MGA 0253404 – MGA 0253439; MGA 0495777 – MGA 0253439; MGA 0495777 – MGA 0495794; MGA 0495833 – MGA 0495880; MGA 0499478 – MGA 0500242; MGA 0504165 – MGA 0504355; MGA 0508772 – MGA 1042265; MGA 1042287 – MGA 1042288; MGA 1042295 – MGA 1042313; MGA 1120807 – MGA 1120820; MGA 1123079 – MGA 1123575; MGA 1123598 – MGA 1125596; MGA 1125599 – MGA 1127449; MGA 1132881 – MGA 1132885; MGA 1165527 – MGA 1534350; MGA 1534364 – MGA 1534384; MGA 1534462 – MGA 1534472; MGA 1534913 – MGA 1826276; MGA 2160755 – MGA 2160788; MGA 2161332 – MGA 2161903; MGA 2899010 – MGA 2901567; MGA 3496192 – MGA 3496226; MGA 4010346 – MGA 1040347; MGA 4050747 – MGA 4050765; MGA 4050882 – MGA 4051044; MGA 4377065 – MGA 4377067; MGA 4462804 – MGA 4462832; MGA 4463055 – MGA 4463063; MGA 4463247 – MGA 4463259; MGA 4473276 – MGA 4473511.

EXHIBIT 44
PAGE 656



EXHIBIT 44
PAGE 657

EXHIBIT 45

1    MELINDA HAAG (State Bar No. 132612)
     mhaag@orrick.com
2    ANNETTE L. HURST (State Bar No. 148738)
     ahurst@orrick.com
3    WARRINGTON S. PARKER III (State Bar No. 148008)
     wparker@orrick.com
4    ORRICK, HERRINGTON & SUTCLIFFE LLP
     The Orrick Building
5    405 Howard Street
     San Francisco, CA  94105-2669
6    Telephone:  +1-415-773-5700
     Facsimile:  +1-415-773-5759
7

8    WILLIAM A. MOLINSKI (State Bar No. 145186)
     wmolinski@orrick.com
9    ORRICK, HERRINGTON & SUTCLIFFE LLP
     777 South Figueroa Street, Suite 3200
10   Los Angeles, CA  90017
     Telephone:  +1-213-629-2020
11   Facsimile:  +1-213-612-2499

12   Attorneys for MGA Parties

13             UNITED STATES DISTRICT COURT

14             CENTRAL DISTRICT OF CALIFORNIA

15                 EASTERN DIVISION

| | |
|---|---|
| 16  CARTER BRYANT, an individual, | Case No. CV 04-9049-SGL (RNBx) |
| 17           Plaintiff, | Consolidated with: Case No. CV 04-9059 and Case No. CV 05-2727 |
| 18       v. | |
| 19  MATTEL, INC., a Delaware | **DISCOVERY MATTER** [To Be Heard by Discovery Master Robert O'Brien Pursuant to Order of January 6, 2009] |
| 20  corporation, | |
| 21           Defendant. | **MGA ENTERTAINMENT, INC.'S REPLY MEMORANDUM IN** |
| 22 | **SUPPORT MOTION TO COMPEL FURTHER RESPONSES TO PHASE** |
| 23  AND CONSOLIDATED ACTIONS | **2 INTERROGATORIES AND REQUESTS FOR PRODUCTION** |
| 24 | |
| 25 | Date:       TBD Time:       TBD |
| 26 | Courtroom: TBD |
| 27 | **Phase 2** Discovery Cutoff:   December 11, 2009 |
| 28 | Pretrial Conference: March 1, 2010 Trial Date:        March 23, 2010 |

MGA MTN TO COMPEL FURTHER RESPONSES TO
PHASE 2 INTERROGATORIES AND RFPs
CV 04-9049 SGL (RNBx)

EXHIBIT 45
PAGE 658

## I.  INTRODUCTION

Mattel needs to stop playing counting games and start answering discovery. Six months ago, Judge Larson ruled that Phase 2 discovery would begin "with a clean slate" and that each *party* (not each side) would be entitled to whatever discovery the Rules of Civil Procedure provide.  Despite this unambiguous ruling and the Discovery Master's own words at the July 9 hearing,[1] Mattel has yet to answer a single Phase 2 interrogatory in this case.  Mattel's procrastination is inexcusable, especially since it seeks millions in alleged damages from MGA, and MGA has no way of obtaining the discovery that supports Mattel's claims except through Mattel.

MGA's First Set of Phase 2 Interrogatories and Second Set of Phase 2 Requests For Production seek vital information about the claims and alleged damages in this case.  Among other things, MGA's discovery seeks information about the allegations that Mattel has trade secrets, that MGA misappropriated those secrets, and that Mattel suffered harm as a result.  Spitzer Decl., Ex. A (Interrogatory Nos. 1-3, 6).  MGA's discovery also seeks information concerning Mattel's spoliation claim, Mattel's RICO claims, and the damages Mattel claims to have suffered in connection with those claims.  Id., (Interrogatory Nos. 7-8, 9-11, 12-14).

For the most part, Mattel does not dispute the relevance of MGA's discovery.[2]  Rather, Mattel argues that it need not answer because MGA has somehow exceeded its allotted number of Phase 2 interrogatories.  This argument fails, however, because MGA's motion concerns its <u>first</u> set of Phase 2 Interrogatories (Nos. 1 through 14), and there is no way this set can exceed any limit prescribed by the Rules of Civil Procedure.  Likewise, Mattel's "counting"

---

[1] Rorie Decl., Ex. A (Transcript of 7/9/09 Hearing at 17:9-18:4).
[2] Mattel did not assert relevance as a basis for the protective order it sought in connection with this same discovery.

OHS West:260708199.1

- 1 -

MGA MTN TO COMPEL FURTHER RESPONSES TO PHASE 2 INTERROGATORIES AND RFPs CV 04-9049 SGL (RNBx)

EXHIBIT 45
PAGE 659

1  argument cannot apply to the unanswered requests for production, as there is no

2  numerical limit on those requests.  In short, Mattel's hackneyed "counting"

3  argument is without merit and should be rejected.

4      Similarly disingenuous are Mattel's objections that MGA's interrogatories

5  and requests for production are overly broad and unduly burdensome.  Mattel has

6  placed MGA's discovery at issue by alleging, among other things, that MGA

7  misappropriated Mattel's trade secrets, that MGA violated the Racketeer Influenced

8  Corrupt Organizations Act, and that MGA has spoiled evidence in this case.  MGA

9  has a fundamental right to the documents and information that support these

10  accusations, and there is no excuse for Mattel's refusal to date to respond

11  substantively to MGA's Phase 2 interrogatories and related discovery requests.

12      MGA's motion to compel should be granted and Mattel should be sanctioned

13  for failing to comply with its discovery obligations in this case.

14  **II.     MATTEL'S "COUNTING" OBJECTION IS A STALL TACTIC.**

15      As Judge Larson ruled over six months ago, there are *"no limits, no*

16  *restrictions [on Phase 2 discovery] other than what is set forth in the Rules of*

17  *Civil Procedure and in Local Rule 27…."*  Spitser Decl., Ex. 4 (Transcript of

18  February 11, 2009 Hearing at 90:11-13)(emphasis added).

19      The Rules of Civil Procedure very clearly provide that each "party" is

20  entitled to "no more than 25" written interrogatories.  See Fed. R. Civ. P. 33(a)(1).

21  Indeed, the words "per side" do not appear anywhere in Rule 33.  See Advisory

22  Committee Notes to Rule 33, 1993 Amendments ("Each *party* is allowed to serve

23  25 interrogatories upon any other party…") (emphasis added).  There is no

24  numerical limit on requests for production.  See Fed. R. Civ. P. 34.

25      Notwithstanding this unambiguous language, Mattel claims that the number

26  of written interrogatories in this case should be allotted on a "per side" and not "per

27  party" basis.  Opp. at 8-9.  However, the authorities that Mattel cites do not support

28  its position.  In those cases, the court merely suggested that "in *some* instances"

OHS West:260708199.1                - 2 -              MGA MTN TO COMPEL FURTHER RESPONSES TO
                                                      PHASE 2 INTERROGATORIES AND RFPs
                                                      CV 04-9049 SGL (RNBx)

EXHIBIT 45
PAGE 660

1   "*nominally* separate parties" might be considered one party for purposes of the 25-

2   interrogatory limitation. See Vinton v. Adam Aircraft Industries, Inc., 232 F.R.D.

3   650, 664 (D. Colo. 2005); Zito v. Leasecomm Corp., 233 F.R.D. 395, 399

4   (S.D.N.Y. 2006).  But those cases represent an exception to the general rule that the

5   25 interrogatory limitation is applied per party and not per side.  See, e.g., St. Paul

6   Fire and Marine Ins. Co. v. Birch, Stewart, Kolasch & Birch, LLP, 217 F.R.D. 288,

7   289 (D. Mass. 2003) (permitting 25 interrogatories for each of three defendants and

8   striking down a local rule that allotted interrogatories on a "per side" basis).

9        In this case, Mattel has made no showing that any of cross-defendants it has

10  sued are "nominally separate" from one another.  Nor has Mattel made any showing

11  that this case merits an exception to the general rule that written interrogatories are

12  allotted per-party, not per-side.  If Mattel thinks it needs more than 25 written

13  interrogatories, it can petition the Discovery Master for additional interrogatories

14  pursuant to F.R.C.P. Rule 33(a)(1) (assuming it could not first stipulate with

15  MGA).  But there is no reason to curtail the 25 interrogatory per party rule and

16  deprive certain parties of their right to take separate discovery.  Mattel's binary "per

17  side" suggestion makes no sense because of the complex procedural nature of this

18  litigation.  There are not just two "sides" to this litigation.  Rather, there are

19  multiple cross-complainants and multiple cross-defendants representing several

20  distinct parties—each of whom are entitled to his and its own discovery.

21       Finally, Mattel spends a portion of its brief counting all of the Phase 2

22  interrogatories that MGA has served to date.  As Mattel observes, MGA

23  Entertainment, Inc. has served a total of 14 Phase 2 interrogatories to date; MGA

24  Mexico has served a total of 11 Phase 2 interrogatories to date; and MGA Hong

25  Kong has served a total of 25 Phase 2 interrogatories to date.  Mattel can count all it

26  wants, but no amount of counting can change the fact that Mattel has not answered

27  a single Phase 2 interrogatory to date.  Moreover, no amount of counting can

28  change the fact that MGA Entertainment Inc., MGA Mexico, and MGA Hong

MGA MTN TO COMPEL FURTHER RESPONSES TO
PHASE 2 INTERROGATORIES AND RFPs
CV 04-9049 SGL (RNBx)

EXHIBIT 45
PAGE 661

1   Kong are all within their collective 75-interrogatory limit. Under the Rules of Civil

2   Procedure, each of these entities is entitled to their own separate discovery. Mattel

3   must therefore answer MGA's First Set of Phase 2 Interrogatories.

4   **III.   MGA'S DISCOVERY IS NOT OVERBROAD.**

5        Realizing that its "counting" objection is likely to fail, Mattel raises a number

6   of substantive objections in its opposition papers that were not previously asserted

7   in Mattel's motion for a protective order regarding this same discovery. As set

8   forth below, these objections should be overruled as they are clearly a last-ditch

9   effort to avoid having to answer Phase 2 discovery.

10       Mattel's first objection is that Interrogatory No. 4 and RFP No. 72, which

11  seek documents and information concerning Mattel's intention to sell the Bratz line

12  of dolls and products, are "overbroad" and "wholly irrelevant" to the claims at issue

13  in this litigation. Opp. at 11-12. Mattel does not support this objection with any

14  facts or evidence, but instead nakedly asserts that Mattel's intention to sell Bratz

15  dolls (whether past or future) is "irrelevant" because these requests are being sought

16  for "improper competitive reasons"—whatever those might be. Opp. at 12:10-13.

17       This objection fails, however, because many of the claims that Mattel has

18  asserted against MGA, including Mattel's RICO claims, are based on a fundamental

19  presumption that Mattel would in fact have sold Bratz dolls in the past or at least is

20  planning do so in the future. This is because Mattel can only recover actual and

21  concrete harm to its operations (not MGA's profits) in connection with its RICO

22  claims. See U.S. v. Philip Morris, 396 F.3d 1190 (D.C. Cir. 2005). Therefore, Mattel

23  cannot recover lost profits for the sale of Bratz under its RICO claims unless Mattel

24  in fact had an intention of selling Bratz. In this regard, Interrogatory No. 4 and

25  RFP No. 76 are relevant and should be answered.

26       Mattel also argues that RFP Nos. 73-76, 80, 82, 84, 90, and 94 are overbroad.

27  Opp. at 12-13. These requests seek documents concerning the products that Mattel

28  claims were harmed by MGA's acts and omissions in the cross-complaint,

EXHIBIT 45
PAGE 662

1   including its sale of Bratz dolls (the "Mattel Harmed Products"). Notably, Mattel

2   does dispute that the subject matter of these requests is relevant and likely to lead to

3   the discovery of admissible evidence. Rather, Mattel primarily objects to the

4   temporal scope of this discovery.

5       Specifically, Mattel claims that RFP Nos. 73-76, 80, 82, and 90 are

6   "overbroad" because they seek documents concerning the sale and recall of the

7   Mattel Harmed Products going back to 1998, 2000, and 2001, respectively. Opp. at

8   13:11-18. But these timeframes are entirely justified because in order for MGA to

9   discern whether the sale of Bratz harmed any Mattel product, MGA must be able to

10  compare the sale of the Mattel Harmed Products both before and after Bratz was

11  introduced to the market. For example, if sales of Mattel Harmed Products

12  continued to increase after Bratz was introduced to the market, that would tend to

13  suggest that Mattel did not suffer any harm vis-à-vis Bratz. Similarly, MGA's

14  requests for documents concerning the recall of any Mattel Harmed Product since

15  2000 or 2001 will help MGA establish whether there may have been intervening

16  circumstances, unrelated to the sale of Bratz, that impacted the sale of the Mattel

17  Harmed Products.

18      Finally, Mattel complains that certain requests for production—namely, RFP

19  Nos. 73-76 and 93—are "overbroad" because they seek documents concerning lost

20  sales of Mattel Harmed Products by licensees in the United States, Mexico, and

21  Canada. Mattel claims these documents are not relevant, but even a cursory review

22  of Mattel's cross-complaint reveals that that is not true. In fact, the requests are

23  relevant because Mattel is claiming that it has suffered harm not just in the United

24  States, but in Mexico, Canada and throughout the world. See, e.g., Mattel Third

25  Amended Cross-Complaint, ¶ 56 ("The stolen data was not limited to the Mexican

26  market. The information stolen would, and did, give MGA an unfair competitive

27

28

MGA MTN TO COMPEL FURTHER RESPONSES TO
PHASE 2 INTERROGATORIES AND RFPs
CV 04-9049 SGL (RNBx)

EXHIBIT 45
PAGE 663

1    advantage in the United States and around the world.")[3]  Mattel also seeks damages

2    for past, present, and future harm and lost profits.  See, e.g., Mattel Third Amended

3    Cross-Complaint, Prayer for Relief ¶¶ 7-10.  So long as Mattel is making these

4    allegations and requesting these damages, MGA is entitled to whatever documents

5    Mattel has in its possession that support these claims.  There is nothing unfair or

6    overbroad about making such requests.

7    **IV.    MGA'S DISCOVERY NOT UNDULY BURDENSOME.**

8        Hoping to find any reason not to provide substantive responses, Mattel also

9    argues that the requested discovery is "unduly burdensome" because of the size of

10   Mattel's world-wide operations and the number of different locations in which

11   responsive documents may be found.  Opp. at 15-16.  Mattel spends a significant

12   portion of its brief quantifying the amount of data it has, the number of servers it

13   maintains, and time and expense it would take to search for responsive documents.

14   Opp. at 17-18.  Mattel's "unduly burdensome" argument, however, is not

15   convincing for the simple reason that Mattel has been a gorilla in they toy industry

16   for decades.  As Mattel loves to boast, it is "the world's most successful toy

17   company" with subsidiaries and affiliates in dozens of countries, and thousands of

18   employees worldwide.  Opp. at 2:2-4.  Such massive size does not relieve Mattel of

19   its obligations to comply with the rules of civil discovery.  If anything, it means that

20   Mattel should have the resources and the know-how to produce the documents that

21   it has placed at issue with the allegation in its cross-complaint.[4]

22       Mattel further argues that certain interrogatories and requests for production

23   are unduly burdensome because they ask Mattel to identify "all" facts, documents,

24   and persons with knowledge regarding certain subject matters.  For example,

25   _____

[3] MGA does not concede that damages outside the U.S. are properly recoverable in
26   this suit.
[4] Moreover, if size truly were an issue, Mattel would never have been able to
27   respond to MGA's Phase 1 interrogatories or requests for production.  The fact that
     Mattel has produced "nearly a million pages of documents to date" shows that size
28   has nothing to do with its ability to comply with its discovery obligations and
     produce responsive documents in this case.  Opp. at 3:16-18.

EXHIBIT 45
PAGE 664

1    Interrogatory Nos. 1-3 ask Mattel to identify "any" fact that supports its claim that

2    it owns trade secrets, that those secrets were misappropriated by MGA, and that

3    Mattel suffered harm as a result.  Similarly, RFP No. 90 asks Mattel to produce

4    documents that relate to "any" reports, studies, analyses, focus groups, polling or

5    other research concerning sales of the Mattel Harmed Products.

6        Mattel claims that this language is unduly burdensome because responsive

7    documents "could be found anywhere on one of the [hundreds] of servers Mattel

8    maintains worldwide or in the possession of one of Mattel's thousands of

9    employees." Opp. at 15:10-12. However, Mattel is the proverbial pot calling the

10   kettle black with this objection since Mattel itself has propounded numerous

11   discovery requests that have asked MGA to identify "all" facts, documents, and

12   persons with knowledge regarding a particular subject matter. See, e.g., Mattel's

13   Phase 1 Interrogatory Nos. 56-63 (asking MGA to state "all" facts, identify "all"

14   persons with knowledge, and identify "all" documents that "refer or relate" to

15   certain subject matters).

16       Finally, there is no reason why Mattel should be allowed to identify some of

17   the facts and documents that support its claims, but not others.  One of the reasons

18   for civil discovery is to allow parties to discover all (not just some) of the evidence

19   that will be presented at trial.  Mattel's suggestion that it will be unduly burdened if

20   it has to identify "all" of its evidence is simply not convincing.  If anything is

21   unduly burdensome about this situation, it is the fact that Mattel has placed

22   documents and information at issue by seeking millions in alleged damages from

23   MGA, but so far is refusing to answer any Phase 2 interrogatory.  Mattel's position

24   is untenable and it should be compelled to respond to MGA's requests as they are

25   phrased.

26   **V.    MGA'S DISCOVERY IS NOT DUPLICATIVE.**

27       On July 31, 2009, more than eighteen months after they were first

28   propounded, Mattel finally responded to certain Phase 1 interrogatories concerning

MGA MTN TO COMPEL FURTHER RESPONSES TO
PHASE 2 INTERROGATORIES AND RFPS
CV 04-9049 SGL (RNBx)

EXHIBIT 45
PAGE 665

1   Mattel's alleged trade secret claims.  It took a motion to compel and about a year

2   and a half before Mattel even attempted to identify its alleged trade secrets in a

3   discovery response.  And when Mattel finally did, the responses were so ambiguous

4   and so full of irrelevant information, that MGA still has no idea what specific

5   documents constitute Mattel alleged trade secrets, or what specific documents

6   Mattel claims were misappropriated.

7        For example, Mattel's recent responses identify thousands of documents that

8   Mattel claims "refer or relate" to its trade secret claims.  But these documents

9   include newspaper articles, magazine articles, copyright registrations, pleadings and

10  other publicly filed documents that cannot possibly constitute Mattel's alleged trade

11  secrets.  Those discovery responses will no doubt need to be narrowed in the future,

12  but Mattel cannot claim that they obviate the need to respond to MGA's Phase 2

13  interrogatories.

14       The recently served discovery responses concern Phase 1 Interrogatory Nos.

15  20, 21, 22, 23 and 28.  Earlier this year, Mattel voluntarily agreed to answer those

16  interrogatories after MGA reminded Mattel of its promise (in Phase 1) to do so.

17  Subsequently, Mattel welched on this promise and MGA was forced to file a

18  motion to compel.  That motion was heard on July 9, 2009, at which point Mattel

19  was ordered to provide responses to those Phase 1 interrogatories, and the

20  Discovery Master specifically tabled the issue of whether Mattel's answers to those

21  interrogatories would count toward the number of Phase 2 interrogatories that

22  MGA was allowed to propound.  See Rorie Decl., Ex. A (Transcript of 7/9/09

23  Hearing at 17:9-18:4)("[J]ust so everyone knows what the ruling is going to be, the

24  interrogatories need to be answered. If there is another set of interrogatories that

25  puts – that you believe puts MGA over the limit, then the remedy is for that is to

26  file a motion for protective order on the additional interrogatories.")  There is

27  simply no way that Mattel can argue that its compliance with the Discovery

28  Master's ruling regarding certain Phase 1 interrogatories somehow obviates the

MGA MTN TO COMPEL FURTHER RESPONSES TO
PHASE 2 INTERROGATORIES AND RFPs
CV 04-9049 SGL (RNBx)

EXHIBIT 45
PAGE 466

1    need for Mattel to answer the MGA's first set of Phase 2 interrogatories.

2        Moreover, there are significant differences between the Phase 1

3    interrogatories that Mattel recently answered and the Phase 2 interrogatories that

4    are currently at issue in this motion. For example, MGA's Phase 2 Interrogatory

5    Nos. 9-11 seek information concerning Mattel's spoliation claims, while MGA's

6    Phase 2 Interrogatory Nos. 12-14 seek information concerning Mattel's RICO

7    claims. These two subjects were not addressed in the Phase 1 interrogatories that

8    Mattel recently answered and Mattel needs to answer them now.

9    **VI.**    **MGA'S DISCOVERY IS NOT PREMATURE.**

10        The discovery cut-off for Phase 2 discovery is December 11, 2009. In other

11    words, MGA has only a few short months to take and complete its Phase 2

12    discovery. There is nothing premature about asking Mattel to respond to

13    interrogatories that were propounded months ago and that have still not been

14    answered. With the Phase 2 discovery clock ticking, MGA is entitled to whatever

15    documents and information Mattel currently has in its possession regarding this

16    case. This is so, even if the requested discovery may also be the subject of

17    subsequent expert discovery. Mattel "premature" argument is hollow and should be

18    rejected.

19    **VII.**    **MATTEL CANNOT BLAME MGA FOR MATTEL'S FAILURE TO**

20         **RESPOND.**

21        At the end of its opposition papers, Mattel asserts that it cannot answer

22    MGA's Phase 2 Interrogatories or Requests For Production because MGA allegedly

23    has not responded to certain of Mattel's discovery requests in this case. Opp. at 24-

24    27. Mattel's finger-pointing should be seen for what it is: an obvious attempt to

25    avoid providing discovery in this case. Mattel's discovery to MGA has absolutely

26    nothing to do with MGA's discovery to Mattel and, even if it did, that coincidence

27    would not justify Mattel's dilatory conduct. Mattel's discovery responses are

28    consistently clear that they are subject to information that is currently available to

EXHIBIT 45
PAGE 667

1   Mattel, and that Mattel reserves its rights to supplement based on subsequently

2   acquired information.  Accordingly, Mattel has no excuse for failing to respond to

3   MGA's discovery based on information that is currently in its possession, custody

4   or control.

5   **VIII.  SANCTIONS ARE WARRANTED AGAINST MATTEL.**

6       Mattel's incessant reliance on its "counting" objection to avoid answering

7   discovery merits an award of monetary sanctions under Rule 37(a)(5).  That section

8   provides that the Court "must" require the party whose conduct necessitates a

9   motion to compel to pay for the movant's reasonable expenses incurred in making

10  the motion, including attorney's fees.  Mattel argues that sanctions are not

11  warranted because it "promptly brought a motion for a protective order" regarding

12  the "threshold numbering issue".  Opp. at 33:13-15.  However, Mattel ignores the

13  fact that it continued to assert this objection even *after* the July 9 hearing in which

14  the Discovery Master expressly ordered Mattel to start answering discovery.  See

15  Rorie Decl., Ex. A (Transcript of 7/9/09 Hearing at 17:9-18:4).  Mattel has been

16  asserting this same hackneyed objection for months, and continued to do so even

17  after the Discovery Master ruled that it was premature and did not provide a basis

18  for refusing to answer discovery.  Mattel should be sanctioned for insisting on

19  motion practice to resolve a moot issue.

20  **IX.   CONCLUSION**

21      For the foregoing reasons, MGA's motion to compel and request for

22  sanctions should be granted.

23

24  Dated: August 11, 2009          ORRICK, HERRINGTON & SUTCLIFFE LLP

25

26                                  By: _____ /s/ William A. Molinski _____
                                            William A. Molinski

27                                  Attorneys for MGA ENTERTAINMENT, INC.,
                                    MGA ENTERTAINMENT HK, LTD., MGA de
28                                  MEXICO, S.R.L. de C.V., and ISAAC LARIAN

EXHIBIT 45
PAGE 668