# Exhibit 46

1

```
 1                UNITED STATES DISTRICT COURT
 2                CENTRAL DISTRICT OF CALIFORNIA
 3                      EASTERN DIVISION
 4                           - - -
 5        HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING
 6
 7   MATTEL, INC.,                    )
                                      )
 8                   Plaintiff,       )
                                      )
 9             vs.                    )  No. CV 04-09049
                                      )
10   MGA ENTERTAINMENT, INC., ET. AL.,)
                                      )
11                   Defendants.      )
                                      )  Status Hearing
12   AND CONSOLIDATED ACTIONS,        )
                                      )
13
14
15            REPORTER'S TRANSCRIPT OF PROCEEDINGS
16                    Riverside, California
17                 Tuesday, September 22, 2009
18                         10:19 A.M.
19
20
21
22
23              THERESA A. LANZA, RPR, CSR
                Federal Official Court Reporter
24               3470 12th Street, Rm. 134
                Riverside, California   92501
25                    951-274-0844
                  WWW.THERESALANZA.COM
```

2

```
 1   APPEARANCES:

 2   ON BEHALF OF MATTEL, INC.:

 3                   QUINN EMANUEL
                     By:  JOHN QUINN
 4                        MICHAEL T. ZELLER
                          B. DYLAN PROCTOR
 5                   865 S. Figueroa Street,
                     10th Floor
 6                   Los Angeles, California  90017
                     213-624-7707
 7

 8   ON BEHALF OF MGA ENTERTAINMENT/ISAAC LARIAN:

 9                   ORRICK, HERRINGTON & SUTCLIFFE, LLP
                     BY:  ANNETTE L. HURST
10                   BY:  WARRINGTON S. PARKER III
                     BY:  WALTER F. BROWN, JR.
11                   405 Howard Street
                     San Francisco, California  90071-3144
12                   213-687-5000

13                   ORRICK, HERRINGTON & SUTCLIFFE, LLP
                     BY:  WILLIAM A. MOLINSKI
14                   405 777 South Figueroa Street,
                     Suite 3200
15                   Los Angeles, California  90017-5855
                     213-612-2256
16

17   ON BEHALF OF SKADDEN ARPS:

18                   SKADDEN, ARPS, SLATE
                      MEAGHER & FLOM, LLP
19                   BY:  THOMAS J. NOLAN
                     BY:  JASON D. RUSSELL
20                   300 South Grand Avenue
                     Los Angeles, California  90071
21                   213-687-5250

22

23

24   / / /

25   / / /
```

Tuesday, September 22, 2009                                   Status Hearing

EXHIBIT 46  PAGE 670

```
 1   APPEARANCES (continued):

 2

 3   ON BEHALF OF DEFENDANT GUSTAVO MACHADO:

 4                       OVERLAND BORENSTEIN SCHEPER & KIM LLP
                         BY:  ALEXANDER H. COTE
 5                       601 West Fifth Street,
                         12th Floor
 6                       Los Angeles, California   90071
                         213-613-4660
 7

 8
     ON BEHALF OF O'MELVENY & MEYERS:
 9
                         GIBSON, DUNN & CRUTCHER, LLP
10                       BY:  J. CHRISTOPHER JENNINGS
                         333 South Grand Avenue
11                       Los Angeles, California   90071-3197
                         213-229-7836
12

13
     Also present:       Richard de Anda
14

15

16

17

18

19

20

21

22

23

24

25
```

Tuesday, September 22, 2009                              Status Hearing

EXHIBIT 46 PAGE 621

```
 1  just conduct full and fair discovery regarding communications
 2  with law enforcement officers.
 3           THE COURT:  And that's fine; that's before the
 4  Discovery Master.  I'm asking about this instance here.
 5           MS. HURST:  I believe there is a strong -- I           12:13
 6  understand Mr. de Anda has come here today and told the story,
 7  which we've heard for the first time and haven't otherwise had
 8  the opportunity to investigate, and he's indicated that he felt
 9  a social sense of obligation.
10           The facts also show that he met with the police; he   12:14
11  was the complaining witness; shortly after that he sent them a
12  gift at the time while they were investigating the matter that
13  he was a complaining witness about.
14           THE COURT:  You just left out something in your
15  chronology.                                                     12:14
16           MS. HURST:  That they gave him a gift as well.
17           That's why the law and the code of conduct is there,
18  Your Honor.
19           THE COURT:  I understand that.
20           MS. HURST:  Because a sense of social obligation       12:14
21  should take back seat to the ethical requirements and the legal
22  requirements.
23           THE COURT:  Quite the contrary, counsel.
24           The code of conduct, the one that you provided,
25  actually recognizes those social obligations.                   12:14
```

Tuesday, September 22, 2009                              Status Hearing

EXHIBIT 46  PAGE 622

|    |                                                                                          |       |
|----|------------------------------------------------------------------------------------------|-------|
| 1  | If I remember correctly going through these when you                                     |       |
| 2  | were showing these, for example, the one that you introduced,                            |       |
| 3  | Exhibit No. 2, the code of professional conduct and                                      |       |
| 4  | responsibilities for the peace officers, cannon eight, the part                          |       |
| 5  | you read was "peace officers shall not compromise their                                  | 12:14 |
| 6  | integrity nor that of their agency or profession by accepting,                           |       |
| 7  | giving or soliciting any gratuity."                                                      |       |
| 8  | That is clear. But what you did not read was the                                         |       |
| 9  | very next line or two lines down, 8.1, the standard for this,                            |       |
| 10 | which says "Peace officers shall refuse to offer or give or                              | 12:15 |
| 11 | receive gifts, favors or gratuities, either large or small,                              |       |
| 12 | which can be reasonably interpreted as capable of influencing                            |       |
| 13 | official acts or judgments. This standard is not intended to                             |       |
| 14 | isolate peace officers' from normal social practices."                                   |       |
| 15 | And I think the sense here, at least the sense that I                                    | 12:15 |
| 16 | got from listening to Mr. de Anda -- and frankly, part of this                           |       |
| 17 | Court's own experience back when I was a prosecutor and dealt                            |       |
| 18 | with law enforcement was that part of the social practice                                |       |
| 19 | between law enforcement is to exchange these trinkets or their                           |       |
| 20 | patches or whatever as just part of polite discourse.                                    | 12:15 |
| 21 | In foreign countries, it's not uncommon for small                                        |       |
| 22 | trinkets to be given just as a matter of politeness. It's                                |       |
| 23 | considered quite rude to refuse those and not to have something                          |       |
| 24 | on hand to reciprocate. And it's the same type of thing.                                 |       |
| 25 | I really think, based on what I have before me, this                                     | 12:16 |

Tuesday, September 22, 2009                                    Status Hearing

EXHIBIT 46 PAGE 623

```
 1  seems to be a lot of -- much about nothing or very little.
 2         MS. HURST:  I appreciate that it sounds like the
 3  Court has some knowledge of its own regarding these practices,
 4  and certainly in the law enforcement community, more generally.
 5         Your Honor, I think at this point that, as mentioned,     12:16
 6  we wanted -- the reason we raised this in the first place, I
 7  think, frankly, was just in the context of the Court's
 8  examination of various issues about how discovery was going in
 9  the case, and so forth.
10         As the Court has indicated, the full discovery            12:16
11  regarding these issues is before the Discovery Master at this
12  point.
13         Fairly, I think, Your Honor, the Court sees this as
14  an exchange with regard to a social obligations.  We remain
15  very concerned that complaining witnesses should not give gifts  12:17
16  to law enforcement officers who are investigating their
17  complaints.  And certainly I agree with the Court that officers
18  on the beat should be able to accept cups of coffee and so
19  forth.  But I think that the complaining witness law
20  enforcement relationship is one where there is a unique          12:17
21  opportunity for difficulties.
22         In this instance, Mattel's code of conduct did
23  require consultation with the law department.  I think
24  Mr. de Anda pretty fairly admitted that he did not do that.
25         THE COURT:  Excuse me, counsel.                           12:17
```

84

I do agree that it was inadvisable on that basis and that it appears that he did not comply with the internal requirement. However, that record is incomplete and necessarily limited by the attorney-client privilege in terms of what was communicated between Mr. de Anda and the attorneys internally.

**MS. HURST:** Thank you, your Honor.

**THE COURT:** All right. Very well.

**MS. HURST:** I think I'll submit.

**THE COURT:** Very good.

Anything further from Mattel on this point here?

**MR. QUINN:** No.

**THE COURT:** The next issue that the Court wants to take up is the issue of the attorney-client privilege log. Given the nature of this, most of this discussion has to take place in camera. Most. But there was one question that I wanted to address to MGA just to clear up now.

The document in question that current counsel for MGA produced was listed as number 381. It appears, or at least Mattel suggests, and I don't know if this is true or not, that Document 557 on the log has not been produced, and it appears to be the same or similar document.

What is the status of that?

**MS. HURST:** It's the same document, Your Honor.

**THE COURT:** Okay.

Tuesday, September 22, 2009                                  Status Hearing

EXHIBIT 46 PAGE 625

1  **THE COURT:** I will be issuing an order later today or
2  first thing tomorrow which will address all of these issues.
3  But the OSC at this point, based on the information before the
4  Court, is deemed satisfied.
5      **MR. JENNINGS:** Thank you.                                02:03
6      **THE COURT:** Court is adjourned.

16                     CERTIFICATE

18  I hereby certify that pursuant to section 753, title 28, United
    States Code, the foregoing is a true and correct transcript of
19  the stenographically recorded proceedings held in the above-
    entitled matter and that the transcript page format is in
20  conformance with the regulations of the Judicial Conference of
    the United States.
21

22  _____            _____
                                                              Date
    THERESA A. LANZA, CSR, RPR
23  Federal Official Court Reporter

Tuesday, September 22, 2009                              Status Hearing

EXHIBIT 46 PAGE 626