1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 090378)
2    johnquinn@quinnemanuel.com
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
6  Facsimile: (213) 443-3100

7  Attorneys for Mattel, Inc.

8                UNITED STATES DISTRICT COURT

9                CENTRAL DISTRICT OF CALIFORNIA

10                     SOUTHERN DIVISION

11

12 | MATTEL, INC., a Delaware          CASE NO. CV 04-9049 DOC (RNBx)
   | corporation,
13 |                                   Consolidated with
   |        Plaintiff,                 Case No. CV 04-09059
14 |                                   Case No. CV 05-02727
   |        vs.
15 |                                   **DISCOVERY MATTER**
   | MGA ENTERTAINMENT, INC., a        **[To Be Heard By Discovery Master**
16 | California corporation, et al.    **Robert O'Brien]**
   |
17 |        Defendants.                [PUBLIC REDACTED] MATTEL,
   |                                   INC.'S OPPOSITION TO MGAE DE
18 |                                   MEXICO'S AND MGA
   | AND CONSOLIDATED ACTIONS          ENTERTAINMENT (HK) LTD.'S
19 |                                   MOTION TO COMPEL RESPONSES
   |                                   TO INTERROGATORIES; AND
20 |                                   MEMORANDUM OF POINTS AND
   |                                   AUTHORITIES
21 |
   |                                   [Separate Statement and Declarations of
22 |                                   Marshall M. Searcy and Bridget A.
   |                                   Hauler filed concurrently herewith]
23 |
   |                                   Date:   TBD
24 |                                   Time:   TBD
   |                                   Place:  Arent Fox LLP
25 |                                           555 West Fifth St.
   |                                           48th Floor
26 |                                           Los Angeles, CA
   |                                           90013
27 |                                   Discovery Cut-off: June 11, 2010
   |                                   Pre-trial Conference: TBD
28 |                                   Trial Date: TBD

07975/3132950.1

                        MATTEL. INC.'S OPPOSITION TO MOTION TO COMPEL

# **TABLE OF CONTENTS**

Page

Preliminary Statement..............................................................................................1

Statement of Facts...................................................................................................2

Argument .................................................................................................................6

I.     DEFENDANTS' INTERROGATORIES EXCEED THE LIMITS, HOWEVER THEY ARE DEFINED. ................................................................6

    A.     The Per Party Rule Advocated by the MGA Parties Is Inequitable, Contrary to the Law of the Case and Contrary to Case Law. ..................................................................................................6

        1.     Both The Court And The Prior Discovery Master Rejected A "Per Party" Allocation As Unfair. .............................................6

        2.     The Case Law Supports A Per Side Rule, Not A Per Party Rule. ............................................................................................8

        3.     The Very Interrogatories At Issue Disprove The MGA Parties' Claim That Each Should Be Entitled To 25 Unique Interrogatories. ..............................................................10

    B.     Defendants' Interrogatories Exceed the Limits Because They Are Compound. ..............................................................................................13

        1.     Discrete Subparts Of An Interrogatory Count As Separate Interrogatories. ...........................................................................13

    C.     Defendants' Interrogatories Are Compound.........................................16

II.     THE BURDEN ON MATTEL OF ANSWERING THE INTERROGATORIES FAR OUTWEIGHS ANY BENEFIT TO THE MGA PARTIES OF RECEIVING THE DISCOVERY. ...............................21

    A.     The Interrogatories Are Overbroad And Unduly Burdensome In Light Of The Detailed Litany Of Information They Demand. .............22

        1.     Simply Reading The Interrogatories, Their Burdensomeness Is Readily Apparent. ......................................22

        2.     The Interrogatories Are Unduly Burdensome Under Both Case Law And The Law Of The Case. .......................................29

    B.     The Interrogatories Are Cumulative of Prior Discovery and of Each Other.........................................................................................34

    C.     The Benefit Of The Interrogatories To The MGA Parties Is Minimal. ...............................................................................................40

1    D.    Interrogatory No. 9 Is Wholly Unjustified.............................................43

2  III.  THE MGA PARTIES' CONTENTION INTERROGATORIES
      DEPEND ON DISCOVERY DEFENDANTS HAVE YET TO
3      PROVIDE AND EXPERT OPINIONS THAT CANNOT BE
      REACHED UNTIL DEFENDANTS DO SO...............................................46

4    A.    The MGA Parties Have Failed to Provide the Discovery
5          Necessary to Respond to Contention Interrogatories...........................47

6    B.    The Discovery At Issue Seeks Information That Is The Subject
      Of Expert Testimony.............................................................................51

7  IV.  MATTEL HAS NOT WAIVED ITS PRIVILEGE OBJECTION.................53

8  V.   THE IMPOSITION OF SANCTIONS AGAINST MATTEL IS
9      UNWARRANTED............................................................................................54

10  Conclusion ................................................................................................................55

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page**

## Cases

American Booksellers Ass'n, Inc. v. Barnes & Noble, Inc.,
135 F. Supp. 2d 1031 (N.D. Cal. 2001) .................................................. 52

Armstrong v. Church of Scientology Intern.,
2000 WL 1681044 (9th Cir. 2000) ........................................................ 54

Bankston v. Vallejo City Unified School Dist.,
2 Fed.Appx. 817, 818 (9th Cir. 2001) .................................................. 54

Barnd v. City of Tacoma,
664 F.2d 1339 (9th Cir. 1982) .............................................................. 54

Cabrera v. Cordis Corp.,
134 F.3d 1418 (9th Cir. 1998) .............................................................. 52

Capacchione v. Charlotte-Mecklenburg Schools,
182 F.R.D. 486 .................................................................................... 47

Carter Bryant v. Mattel, Inc,
CV 04-9049 SGL (RNBx) ...................................................................... 2

Claar v. Burlington Northern R. Co.,
29 F.3d 499 (9th Cir. 1994) .................................................................. 52

In re Convergent Technologies Securities Litigation,
108 F.R.D. 328 (N.D.Cal. 1985) .......................................................... 22

Corley v. Rosewood Care Center,
288 F.3d 999 (7th Cir. 2004) ................................................................ 42

Dolgow v. Anderson,
53 F.R.D. 661 (E.D.N.Y. 1971) ............................................................ 22

Duttle v. Bandler & Kass,
1989 WL 31503 (S.D.N.Y. March 27, 1989) ........................................ 41

Goldman v. McMahan, Brafman, Morgan & Co.,
706 F. Supp. 256 (S.D.N.Y. 1989) ...................................................... 41

Grynberg v. Total S.A., No. 03-cv-01280-WYD-BNB,
2006 WL 118636 (D. Col. May 3, 2006) .............................................. 32

Hamilton v. State Farm Fire & Cas. Co.,
270 F.3d 778 (9th Cir. 2001) ................................................................ 15

07975/3132950.1

Helfand v. Gerson,
    105 F.3d 530 (9th Cir. 1997) .......................................................................16

Hiskett v. Wal-Mart Stores, Inc.,
    180 F.R.D. 403 (D. Kan. 1998) ...................................................................32

IBP, Inc. v. Mercantile Bank of Topeka,
    179 F.R.D. 316 (D. Kan. 1998) ..............................................................31, 32

Laker Airways Ltd. v. Pan American World Airways,
    559 F. Supp. 1124 (D.C.D.C. 1983)............................................................22

Lawrence v. First Kansas Bank & Trust Co.,
    169 F.R.D. 657 (D.Kan. 1996) ....................................................................33

Marshall & Isley Trust Co. v. Pate,
    819 F.2d 806 (7th Cir. 1987) .......................................................................42

McCarthy v. Paine Webber Group, Inc.,
    168 F.R.D. 448 (D. Conn. 1996) .................................................................47

Missouri Republican Party v. Lamb,
    87 F. Supp. 2d 912 (E.D. Mo. 2000) .............................................................8

Moses v. Halstead,
    236 F.R.D. 667 (D. Kan. 2006) ...................................................................32

Mr. Frank, Inc. v. Waste Management, Inc.,
    1983 WL 1859 (N.D. Ill. 1983)....................................................................22

Nestle Foods Corp. v. Aetna Casualty & Sur. Co.,
    135 F.R.D. 101 (D.N.J. 1990) .....................................................................47

New Haven Temple SDA Church v. Consolidated Edison Corp.,
    1995 WL 358788 (S.D.N.Y. June 13, 1995).................................................51

Orlander v. Schwartz,
    1996 WL 521429 (S.D.N.Y. 1996) ..............................................................42

Pegram v. Herdrich,
    530 U.S. 211 (2000)......................................................................................16

Rivera v. NIBCO, Inc.,
    364 F.3d 1057 (9th Cir. 2004) .....................................................................45

Russell v. Rolfs,
    893 F.2d 1033 (9th Cir. 1990) .....................................................................16

Safeco of America v. Rawstron,
181 F.R.D. 441 (C.D. Cal 1995)..............................................15, 17, 18, 20, 28, 32

Sanderson v. International Flavors and Fragrances, Inc.,
950 F. Supp. 981 (C.D. Cal. 1996)................................................................52, 53

Sec. Ins. Co. v. Trustmark Ins. Co.,
2003 U.S. Dist. LEXIS 18196 (D. Conn. 2003)..............................................15, 17

St. Paul Fire and Marine Ins. Co. v. Birch, Stewart, Kolasch & Birch, LLP,
217 F.R.D. 288 (D. Mass. 2003) ........................................................................8, 9

Swackhammer v. Sprint Corp. PCS,
225 F.R.D. 658 (D. Kan. 2004) ............................................................................14

Town of Kearny v. Hudson Meadows Urban Renewal Corp.,
829 F.2d 1263 (3d Cir. 1987) ...............................................................................42

United States v. Austin,
749 F.2d 1407 (9th Cir. 1984)...............................................................................54

U.S. v. Browne,
505 F.3d 1229 (11th Cir. 2007) ............................................................................41

U.S. v. Williams,
203 Fed. Appx. 976 (11th Cir. 2006) ...................................................................41

Vinton v. Adam Aircraft Industries, Inc.,
232 F.R.D. 650 (D. Colo. 2005).............................................................................9

Virden v. Graphics One,
623 F. Supp. 1417 (D.C. Cal. 1985)......................................................................42

Wilson v. PFS, LLC,
2008 WL 789898 (S.D. Cal. 2008).......................................................................54

Ziemack v. Centel Corp.,
1995 WL 729295 (N.D. Ill. Dec. 7, 1995) ...........................................................51

Zito v. Leasecomm Corp.,
233 F.R.D. 395 (S.D.N.Y. 2006)...........................................................................9

**Statutes**

28 U.S.C. § 1927..................................................................................................54

Fed. R. Civ. P. 26(b)(1).........................................................................................45
Fed. R. Civ. P. 26(b)(2)(C) ..............................................................................21, 45
Fed. R. Civ. P. 33(a) .............................................................................................13

Fed. R. Civ. P. 33(c) .................................................................47
Fed. R. Civ. P. 37.................................................................3, 54
Fed. R. Civ. P. 37(a)(5).............................................................54

### **Miscellaneous**

Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, 8A <u>Federal Practice and Procedure</u> § 2168.1 at 261 (2d ed. 1994)....................................................9, 10

MATTEL. INC.'S OPPOSITION TO MOTION TO COMPEL

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

The interrogatories served by MGA Mexico and MGA Hong Kong are grossly improper. Defendants claim the interrogatories number 36 in total; in Mattel's view, they actually count as at least several hundred. Either way, they cannot be compelled. The detail and volume of information they purport to require are astonishing. Answering them would take literally thousands of hours of attorney time at a cost of many hundreds of thousands, if not millions, of dollars. The burdens defendants seek to impose on Mattel are unjustifiable. In fact, these are, without a doubt, the most burdensome, improper interrogatories served in this case to date.

Mattel has already disclosed in discovery a fair summary of its contentions, including its trade secret and RICO contentions at issue in these interrogatories; in fact, Mattel has already answered an interrogatory seeking its contentions underlying *all* of its counterclaims. Through their latest interrogatories, defendants now demand that Mattel provide detailed litanies of information as to virtually every specific fact relating to its RICO and trade secret claims, one by one. Nothing remotely approximating these interrogatories has been compelled previously in this case precisely because the burdens of responding are too great. In fact, when Mattel sought far *less* information in response to far *less* burdensome interrogatories on an issue of unparalleled importance in this case – the timing of Bryant's creation of Bratz – Mattel was rebuffed based on MGA's burden objections. It would be unfair to impose the far greater burdens on Mattel that defendants' latest interrogatories implicate.

Moreover, it is indeed the case that defendants' latest interrogatories put them over the limits. There are two reasons for this. First, defendants have crammed within these interrogatories hundreds upon hundreds of discrete questions; the 25 served nominally by MGA Hong Kong themselves count as far, far more than 25

1 | interrogatories. Second, for reasons amply demonstrated by the interrogatories now
2 | before the Discovery Master, the Phase 1 rule that interrogatory limits are "per side"
3 | instead of "per party" should also be the rule in Phase 2, putting these sets over the
4 | limits.

5 |     This is not about hiding facts. It is about not spending the next 8 months of
6 | discovery doing nothing but answering interrogatories. According to defendants,
7 | they may bombard Mattel with a bare minimum of 125 interrogatories, with the
8 | same attorneys serving 100 of them (25 on behalf of each affiliated client).
9 | According to defendants, these same attorneys may serve another 50 interrogatories
10 | *after* these 36 are answered, presumably with as much burden and detail crammed
11 | into those as are in these. When each considered the issue, the Court and the prior
12 | Discovery Master expressly rejected a "per party" limitation to avoid precisely these
13 | undue burdens. The Discovery Master should do the same now.

14 |     The motion to compel should be denied in its entirety.

15 | **Statement of Facts**

16 |     The Court Limits Interrogatories to 50 "Per Side" Prior to the Phase 1 Trial.
17 | On February 27, 2007, the Court issued an order setting the total number of
18 | interrogatories at 50 interrogatories "for each side" for the consolidated case Carter
19 | Bryant v. Mattel, Inc., CV 04-9049 SGL (RNBx).[1] At the Scheduling Conference
20 | held prior to this order, the Court stated that "I'm going to limit . . . the total number
21 | of interrogatories to a total number of 50 to each side."[2] The Court made this ruling
22 | over Defendants' objection that "the Federal Rules ordinarily provide for
23 |
24 |

_____

25 |   [1] See Minute Order of February 12, 2007, attached as Exhibit 1 to the
26 | Declaration of Bridget A. Hauler ("Hauler Dec."), dated October 1, 2009 and filed
27 | concurrently herewith.
  [2] February 12, 2007 Hearing Tr., Hauler Dec., Exh. 18, at 22:22-25.
28 |

1  interrogatories to parties,"[3] and stated that the parties should "try to work with the
2  confines of the 50 interrogatories...."[4]

3    Mattel Agrees To Respond to Additional MGA Interrogatories.  In February
4  2009, following the Phase 1 trial, the Court ruled that each side would be allowed
5  additional discovery for Phase 2 of this litigation, consistent with the Federal Rules
6  of Civil Procedure and Local Rule 37.[5]  MGA subsequently demanded, in March
7  2009, that Mattel supplement its responses to Interrogatory Nos. 20-23 and 28 from
8  MGA's Second Set of Interrogatories, to which Mattel had previously objected as
9  beyond the limits.[6]  Mattel agreed to supplement its responses to these
10 interrogatories.[7]  The Discovery Master has held that Interrogatory Nos. 20-23 and
11 28 count toward the Phase 2 limits because Mattel had previously served only
12 objections.[8]  Mattel served responses to Interrogatory Nos. 20-23 and 28 on July 31,
13 2009, and supplemented those Responses on September 14, 2009.[9]

14

15 _____

16  [3]  Feb. 12, 2007 Hearing Tr., Hauler Dec., Exh. 18, at 23:13-14.
17  [4]  Feb. 12, 2007 Hearing Tr., Hauler Dec., Exh. 18, at 24:5-6.
    [5]  See Hearing Transcript, dated February 11, 2009, at 102:12-21, Hauler Dec.,
18 Exh. 11.
    [6]  See March 25, 2009 letter from Carolyn H. Mankey to Jon D. Corey and
19 Michael T. Zeller ("March 25 Mankey Letter"), Hauler Dec., Exh. 12.
    [7]  See April 16, 2009 letter from Diane C. Hutnyan to Caroline H. Mankey
20 ("April 16 Hutnyan Letter"), at 3, Hauler Dec., Exh. 13.
21  [8]  See Phase 2 Discovery Matter Order No. 46, dated August 14, 2009, attached
22 as Exhibit 8 to the Declaration of William Molinski ("Molinski Dec."), dated
23 September 18, 2009 and filed concurrently with MGA Mexico's and MGA Hong
   Kong's Motion to Compel.
24  [9]  See Mattel's First Supplemental Objections and Responses to Interrogatory
25 Nos. 20-23 and 28 in MGA's second Set of Interrogatories, dated July 31, 2009,
   attached as Exhibit 1 to the Declaration of Marshall M. Searcy ("Searcy Dec."),
26 dated September 29, 2009 and filed concurrently herewith; see also Mattel's Second
27 Supplemental Responses to Interrogatories 20-23 and 28, dated September 14, 2009,
   Searcy Dec., Exh. 14.
28

1    <u>MGA Serves Additional Interrogatories.</u>  On April 14, 2009, MGA served its
2    First Set of Phase 2 Interrogatories, which consisted of 14 numbered
3    interrogatories.[10]  MGA moved to compel responses to all 14 on July 24, 2009.[11]
4    One day before the motion was set to be heard, MGA then withdrew its motion with
5    respect to Interrogatory Nos. 1-2 and 12-14 in its First Set of Phase 2
6    Interrogatories.[12]  On September 3, 2009, the Discovery Master ordered Mattel to
7    respond to Interrogatory Nos. 3-11.  As ordered, Mattel will be serving responses to
8    these nine interrogatories on October 6, 2009, bringing the number of Phase 2
9    interrogatories Mattel has answered to 14.  One of these, No. 28, requested the facts
10   underlying <u>all</u> of Mattel's counterclaims.[13]  Others requested details about Mattel's
11   trade secrets claims, among others.[14]

12   <u>Defendants Serve Excessive Interrogatories.</u>  On July 29, 2009, the MGA
13   Parties served 36 additional interrogatories: 11 separately-numbered interrogatories
14   from MGA Mexico and 25 separately-numbered interrogatories from MGA Hong
15   Kong.  These 36 numbered interrogatories bring the total number of interrogatories
16   the MGA Parties have served in Phase 2 to 55 numbered interrogatories, in excess
17   of the number of interrogatories allotted to all of the MGA Parties *and* Carter Bryant

18
19   _____

20   [10]  See MGA's First Set of Phase 2 Interrogatories, dated April 14, 2009;
21   MGA's Second Set of Phase 2 Requests for Production, dated April 14, 2009,
     Hauler Dec., Exhs. 14-15.
22   [11]  MGA Entertainment, Inc.'s Motion To Compel Further Responses To MGA's
23   First Set of Phase 2 Interrogatories And Second Set of Phase 2 Requests For
     Production, dated July 24, 2009, Hauler Dec., Exh. 9.
24   [12]  See Phase 2 Discovery Matter Order No. 56, dated September 3, 2009,
25   Searcy Dec., Exh. 2, at 26:17-19.
     [13]  See MGA's Second Set of Interrogatories, Hauler Dec., Exh. 6, at
26   Interrogatory No. 28.
     [14]  See, e.g., MGA's Second Set of Interrogatories, Hauler Dec., Exh. 6, at
27   Interrogatory Nos. 20-23.
28

1   in Phase 1 – a limit that the Court originally ordered would apply to the entirety of
2   the case.

3       The Discovery Master Defers Ruling On The Number Of Interrogatories
4   Allowed.  Because the MGA Parties served these 36 additional interrogatories while
5   Mattel had a motion for a protective order regarding interrogatories pending, Mattel
6   submitted a Supplemental Declaration to apprise the Discovery Master of the
7   additional interrogatories.  At the hearing, the Discovery Master stated that "I
8   understand that there was a limit on interrogatories per side in Phase 1 and that's an
9   argument, perhaps, that flows over to Phase 2,"[15] but declined to rule on the issue at
10  that time, saying that "I'm not sure it needs to be decided as part of [Mattel's]
11  motion."[16]  The Discovery Master invited Mattel to raise the issue later if need be,
12  stating that "it's something that I think we need to have briefed so I can get a better
13  understanding."[17]

14      The parties met and conferred on September 3, 2009 regarding the 36
15  additional interrogatories the MGA Parties had served.[18]  Mattel explained that
16  interrogatories had been allotted "per side" in Phase 1, and that simple fairness
17  dictated that the same rule apply in Phase 2.[19]  MGA stated that it believed Mattel's
18  objections to be improper, and that a "per party" rule should apply in Phase 2
19  because the Court stated that the Parties had a "clean slate" in Phase 2.[20]  MGA
20  stated that the detailed subparts of its interrogatories are necessary because it
21  believes that some of the RICO predicates are a "square peg in a round hole."[21]

22

---

23  [15] August 6, 2009 Hearing Tr., Hauler Dec., Exh. 10, at 6:16-19.
24  [16] August 6, 2009 Hearing Tr., Hauler Dec., Exh. 10, at 7:16-17.
25  [17] August 6, 2009 Hearing Tr., Hauler Dec., Exh. 10, at 6:21-7:1.
    [18] Searcy Dec., ¶ 5.
26  [19] Searcy Dec., ¶ 5.
    [20] Searcy Dec., ¶ 5.
27  [21] Searcy Dec., ¶ 5.

28

Mattel indicated that if MGA would clarify which predicates it was referring to in a letter, Mattel would consider MGA's position.[22]  MGA neither clarified this position during the meet and confer, nor provided any subsequent clarification.[23]

## Argument

### I.   DEFENDANTS' INTERROGATORIES EXCEED THE LIMITS, HOWEVER THEY ARE DEFINED.

#### A.   The Per Party Rule Advocated by the MGA Parties Is Inequitable, Contrary to the Law of the Case and Contrary to Case Law.

##### 1.   Both The Court And The Prior Discovery Master Rejected A "Per Party" Allocation As Unfair.

In its Motion, the MGA Parties argue that interrogatories in this case should be allotted "per party" rather than "per side" because a "per side" limit would produce a "ludicrous," "nonsensical and unfair" result.[24]  But the MGA Parties fail to address that they previously were able to work in the confines of such a rule, or explain why they cannot do so now.  Nor do Defendants justify the inequitable result of their own proposed rule, which would permit them to propound 125 interrogatories on Mattel while limiting Mattel to serving just 25 interrogatories on all Defendants combined.

Rather than explain why MGA's side would need a hundred more interrogatories than Mattel, the MGA parties base their argument on an out-of-context statement by the Court – the Court's general statement at the February 11, 2009 hearing that the Rules of Civil Procedure apply to Phase 2 discovery, and that the parties would start with a "clean slate."  Interrogatories – much less allotment of

---

[22]  Searcy Dec., ¶ 5.
[23]  Searcy Dec., ¶ 5.
[24]  Motion at 5, 6.

1   them – were never addressed during that hearing. The one time the Court
2   specifically addressed allotment of interrogatories, it held that they are to be allotted
3   per side, not per party.[25] Likewise, the prior Discovery Master rejected what would
4   have been equivalent to a per party allocation of interrogatories, ruling that "[s]uch
5   an imbalance would be fundamentally unfair" because, in substance, Defendants
6   would have 5 or more times as many interrogatories to use as Mattel.[26] There is
7   simply no basis to read into the Court's statement that the Federal Rules apply a
8   specific but unspoken rejection of the "per side" rule, which has long been the rule
9   of the case.

10      The facts supporting the Court's and former Discovery Master's reasoning
11  have not changed. The five Defendants in this case act in unison and are only
12  nominally separated in that they consist of a parent company, MGA, two of its
13  subsidiaries, MGA Hong Kong and MGA Mexico, and the parent company's CEO
14  and majority shareholder, Isaac Larian -- all represented by the same counsel -- and
15  one senior employee of the parent company, Carlos Gustavo Machado Gomez, who
16  founded one of the subsidiaries.[27] Mattel typically must obtain answers from *each*

17
_____

18  [25] February 12, 2007 Scheduling Conf. Tr., Hauler Dec., Exh. 18, at 22:22-25;
19  see also February 12, 2007 Minute Order, Hauler Dec., Exh. 1.
    [26] See September 5, 2007 Order, Hauler Dec., Exh. 19, at 5:1-6.
20  [27] See Mattel, Inc.'s Third Amended Answer ("TAAC"), dated May 22, 2009,
21  Searcy Dec., Exh. 16. The caption page and signature line from MGA's First Set of
    Phase 2 Interrogatories identify Mitchell Silberberg & Knupp LLP as "Attorneys for
22  MGA Entertainment, Inc., MGA Entertainment HK Ltd., MGAE de Mexico S.R.L.
23  de C.V. and Isaac Larian." See MGA's First Set of Phase 2 Interrogatories, Hauler
    Dec., Exh. 14 at 1, 11. These parties regularly serve nearly identical responses to
24  discovery propounded by Mattel. See, e.g., MGA's Third Supplemental Responses
25  to Mattel's Amended Fourth Set of Interrogatories, Searcy Dec., Exh. 4 at Response
    to Interrogatory No. 42; MGA Hong Kong's Third Supplemental Responses to
26  Mattel's Amended Fourth Set of Interrogatories, Searcy Dec., Exh. 5 at Response to
27  Interrogatory No. 42; Larian's Third Supplemental Responses to Mattel's Amended
    Fourth Set of Interrogatories, Searcy Dec., Exh. 6 at Response to Interrogatory No.
28  (footnote continued)

1  defendant to an interrogatory, lest it be unfairly surprised at trial (for example, by
2  Larian claiming at trial that he has contentions to make on a given subject that MGA
3  did not disclose in its interrogatory response, or vice versa). Yet, as MGA would
4  have it, Mattel can serve only 25 such interrogatories on Defendants (getting each
5  defendant's contentions on the same 25 issues), while they can serve five times that
6  number of non-identical interrogatories on Mattel (with each defendant serving a
7  different interrogatory to which Mattel must provide a separate substantive
8  response). That unfair result has been rejected before and should be again now.

9           **2.      The Case Law Supports A Per Side Rule, Not A Per Party**
10                    **Rule.**

11         Finding no support in the prior rulings in this case, the MGA Parties argue
12  that rulings in other cases support allotting interrogatories on a per party basis. Of
13  the two cases the MGA Parties cite, however, one is wholly inapposite and the other
14  actually supports Mattel's position. In <u>Missouri Republican Party v. Lamb</u>, 87 F.
15  Supp. 2d 912, 919 (E.D. Mo. 2000), the court merely denied a motion to vacate a
16  preliminary injunction and set a Scheduling Plan that included a per party allotment
17  of interrogatories. At no point in that case did the court even address the question of
18  whether a per party or per side rule should apply to interrogatories. In <u>St. Paul Fire</u>
19  <u>and Marine Ins. Co. v. Birch, Stewart, Kolasch & Birch, LLP</u>, 217 F.R.D. 288, 289
20  (D. Mass. 2003), the court addressed the question of "whether a court may, by local
21  rule, restrict the number of interrogatories which may be filed under the Federal

22  _____

23  42. Machado is not represented by the same attorneys as the other Defendants, but
24  his attorneys' fees are being paid by MGA -- both his attorneys' fees in this
25  litigation and in the criminal prosecution in Mexico. <u>See</u> Deposition Transcript of
    Carlos Gustavo Machado Gomez ("Machado Depo. Tr."), dated October 14, 2008,
26  at 34:18-35:16, Searcy Dec., Exh. 7. In addition, he is currently employed by
27  MGAE de Mexico, which he helped found, and at one point was an executive at
    MGA in the United States. TAAC at ¶¶ 44-61, Searcy Dec., Exh. 13.

28

1  Rules of Civil Procedure." Id. After concluding that a court may not restrict
2  interrogatories *ex ante* with local rules, the court went on to state:

3      That does not end the inquiry; there is a question of the propriety of
4      the defendants each serving 25 interrogatories on the plaintiff . . .
5      Plaintiff's point that it seems unduly burdensome and duplicative to
6      have to answer this many interrogatories . . . appears to have some
7      merit.

8  Id. The court did not, as MGA contends, "permit[] 25 interrogatories for
9  each of three defendants."[28] Rather, in recognition of the merits of this point,
10 the court directed the parties to meet and confer regarding defendants'
11 interrogatories, and invited the plaintiff to file a motion for protective order
12 if the parties could not reach agreement. Id. at 289-90.

13     Indeed, contrary to the MGA Parties' assertions, courts properly impose "per
14 side" limitations on interrogatories where parties, like the defendants here, have
15 aligned litigation interests. See, e.g., Vinton v. Adam Aircraft Industries, Inc., 232
16 F.R.D. 650, 664 (D. Colo. 2005) (limiting interrogatories to 25 per side where, as
17 here, two defendants were alleged to be alter egos of one another); Zito v.
18 Leasecomm Corp., 233 F.R.D. 395, 399 (S.D.N.Y. 2006) (where 11 defendants
19 acted in concert to propound interrogatories, the "more sensible approach" is to allot
20 interrogatories on a per side basis); Charles Alan Wright, Arthur R. Miller &
21 Richard L. Marcus, 8A Federal Practice and Procedure § 2168.1 at 261 (2d ed.
22 1994) ("The best result would seem to be to recognize that in some instances
23 nominally separate parties should be considered one party for purposes of the 25-
24 interrogatory limitation.").

25
26
27   [28]  Motion at 5.
28

Interrogatories are properly allocated on a "per side basis" when parties are represented by a single attorney, when there is unity of action, or when there is a legal relationship between parties. Id. The MGA Parties satisfy all three of these tests. See supra note 27. A per side limitation is appropriate.[29]

### 3. The Very Interrogatories At Issue Disprove The MGA Parties' Claim That Each Should Be Entitled To 25 Unique Interrogatories.

The interrogatories at issue amply demonstrate the abuses a "per party" rule would cause in this case. MGA asserts that each defendant requires its own separate set of 25 interrogatories because "[t]he various MGA Parties are each accused of different misconduct."[30] Of course, such an argument overlooks that, logically, Mattel should have an equal number of interrogatories to inquire into these different acts of misconduct (and according to a "per party" rule would not). But the argument also overlooks the actual interrogatories at issue. According to MGA, the interrogatories are aimed at the allegations against each defendant: *"MGA Mexico's interrogatories address primarily the trade secrets claims that are asserted against it, and MGA HK's interrogatories address primarily the RICO claims asserted*

---

[29]   Indeed, the MGA Parties themselves have suggested that, for discovery purposes, they should be treated as a group; for example, in response to Mattel's Motion to Compel MGA Mexico to Produce Documents and Things, the "MGA Parties" filed an opposition arguing that MGA Mexico need not produce even a single document because "more than 4.2 million pages of documents have already been produced by the *MGA Parties*."See MGA Parties' Opposition to Motion to Compel MGA Mexico to Produce Documents and Things in Response to Mattel's First, Second and Third Sets of Requests for Production to MGA Mexico ("MGA Mexico Opp."), dated July 22, 2009, Hauler Dec., Exh. 17, at caption page, 1:12-13.

[30]   Motion at 6.

1   *against it.*"[31]   That is misleading at best.  In fact, only three of the 36 interrogatories

2   at issue relate specifically to MGA Mexico or MGA Hong Kong.

3        Of the 11 interrogatories propounded by MGA Mexico, only Interrogatory

4   Nos. 8 and 10 even arguably relate specifically to MGA Mexico.  The other nine are

5   either unrelated to specific parties[32] or seek information pertaining to "MGA,"

6   which is broadly defined to encompass MGA Entertainment, Inc., MGA Mexico,

7   MGA Hong Kong *and* Isaac Larian.[33]  For example, MGA Mexico asks Mattel to:

8   • identify trade secrets "misappropriated by MGA";[34]

9   • "[s]tate all facts" that show that "MGA obtained through improper means"
10      Mattel's trade secrets;[35]

11   • "[s]tate all facts" that show that "MGA used or disclosed" Mattel's trade
12      secrets;[36]

13   • "[s]tate all facts" that show that the trade secrets "misappropriated by MGA"
14      "derived independent economic value from not being generally known to the
15      public";[37]

16   • "[s]tate all facts" that show that the trade secrets "misappropriated by MGA"
17      were "not known to the public or to PERSONS who can obtain economic
18      value from [their] disclosure or use";[38]

19

20   _____

21   [31]   Motion at 6 (emphasis added).
     [32]   See, e.g., MGAE de Mexico's Interrogatory Nos. 1-11 to Mattel, Inc.,
22   Molinski Dec., Exh. 2 at No. 11 (relating to Mattel's allegations "upon information
     and belief.").
23   [33]   MGAE de Mexico's Interrogatory Nos. 1-11 to Mattel, Inc., Molinski Dec.,
24   Exh. 2 at 2:14-20.
25   [34]   Id. at Interrogatory No. 1.
     [35]   Id. at Interrogatory No. 2.
26   [36]   Id. at Interrogatory No. 3.
     [37]   Id. at Interrogatory Nos. 1, 5.
27   [38]   Id. at Interrogatory Nos. 1, 6.

28

1     •  "[s]tate all facts" that show that the trade secrets "misappropriated by MGA"
2       "were the subject of efforts that are reasonable under the circumstances to
3       maintain [their] secrecy";[39] and

4     •  identify every communication over an 8-year span between Mattel and any
5       government entity regarding "misconduct by MGA...."[40]

6 All of these interrogatories seek information for the benefit of the MGA Parties
7 generally, not for MGA Mexico specifically.

8       Similarly, of the 25 interrogatories propounded by MGA Hong Kong, only
9 one relates specifically to MGA Hong Kong.[41]  Most of the remaining 24
10 interrogatories, as with MGA Mexico's interrogatories, seek information relating to
11 all "defendants" or to "MGA."[42]  And several relate specifically to *Isaac Larian*, to
12 the exclusion of MGA Hong Kong.  For example, MGA Hong Kong propounded
13 interrogatories asking Mattel to:

14     •  "State all facts regarding *Isaac Larian's* conducting or participating, directly
15       or indirectly, in the conduct of the affairs of a RICO enterprise through a
16       pattern of racketeering activity (as alleged in the Counterclaims of the
17       TAAC);[43]

18     •  "With respect to the allegation in paragraphs 99 - 102 of the Counterclaims of
19       the TAAC, that *Isaac Larian* made misrepresentations to retailers and in press
20       releases and in the market place, state all facts regarding...";[44]

21
22
23   [39]  Id. at Interrogatory Nos. 1, 7.
24   [40]  Id. at Interrogatory No. 9.
25   [41]  MGA Entertainment (HK) Limited's Interrogatory Nos. 1-25 to Mattel, Inc.,
  Molinski Dec., Exh. 1 at Interrogatory No. 3.
26   [42]  See id. at Interrogatory Nos. 1, 4-17, 19, 22, 24 and 25.
27   [43]  Id. at Interrogatory No. 2 (emphasis added).
  [44]  Id. at Interrogatory No. 18 (emphasis added).
28

07975/3132950.1

-12-

1     •   "With respect to the allegations in paragraphs 122 - 126 of the Counterclaims

2       of the TAAC, that *Isaac Larian* sold MGA inventory to himself at fire sale

3       prices, state all facts regarding...."[45]

4       As the substance of these interrogatories makes clear, the MGA Parties are

5 using their "per party" position regarding interrogatories to obtain discovery relating

6 to the MGA Parties generally (or even as to specific defendants <u>other than</u> the

7 serving party). Altogether, the MGA Parties have now served a total of at least 50

8 numbered interrogatories in Phase 2.[46] If MGA's "per party" argument were

9 accepted, Defendants would claim the right to launch another 75 interrogatories for

10 a total of 125, imposing extraordinary burdens on Mattel. MGA's "per party" rule is

11 a recipe for abuse, and should be rejected.

12     **B.**     <u>**Defendants' Interrogatories Exceed the Limits Because They Are**</u>

13         <u>**Compound.**</u>

14       **1.**     **Discrete Subparts Of An Interrogatory Count As Separate**

15          **Interrogatories.**

16       Pursuant to <u>Fed. R. Civ. P.</u> 33(a), "discrete subparts" of an interrogatory are

17 to be counted as separate interrogatories for the purpose of determining how many

18 interrogatories a party may serve.

19       Both the prior and existing Discovery Master have analyzed this issue before.

20 In Order No. 46, the Discovery Master confirmed that ███████████

21 ████████████████████████████████████████

22

23

24

---

25     [45]   <u>Id.</u> at Interrogatory No. 23 (emphasis added).

26     [46]   MGA's Second Set of Interrogatories, Hauler Dec., Exh. 6, at Interrogatory Nos. 20-23 and 28; MGA's First Set of Phase 2 Interrogatories, Hauler Dec., Exh.

27 14, at Interrogatory Nos. 3-11; MGA Mexico's Interrogatory Nos. 1-11; MGA Hong Kong Interrogatory Nos. 1-25, Molinski Dec., Exh. 1-2.

28

1  ██████████████████████████████[47]   Although the Discovery

2  Master went on to hold that MGA's Interrogatory No. 28 did not fall under this rule

3  by inquiring into discrete areas, the Discovery Master did so based on ████████

4  ████████████████████████████████████████████████████████████

5  ████████████████████████████████████████████████████████████

6  ████████████████████████████████████████████████████████████

7  ██████████████[48]

8      The underlying foundations of this rule were first established by the prior

9  Discovery Master, at the urging of defendants.  In July 2007, MGA moved for a

10  protective order, urging that the 46 numbered interrogatories that Mattel had served

11  as of that date actually counted as, "conservatively, 227 separate interrogatories."[49]

12  The Discovery Master rejected almost all of Defendants' specific arguments

13  regarding how Mattel's particular interrogatories should be counted, but adopted

14  Defendants' argument that interrogatories that addressed discrete legal or factual

15  issues were compound.[50]

16

17  [47]  Phase 2 Discovery Matter Order No. 46, dated August 14, 2009, Molinski

18  Dec., Exh. 8 at 19:14-15 (quoting Swackhammer v. Sprint Corp. PCS, 225 F.R.D.

19  658, 664-665 (D. Kan. 2004)).
    [48]  Phase 2 Discovery Matter Order No. 46, dated August 14, 2009, Molinski

20  Dec., Exh. 8 at 19 n10.

21  [49]  See MGA Entertainment, Inc.'s and Bryant's Joint Motion for Protective
    Order ("Joint Motion for Protective Order"), dated July 10, 2007, at 3:17-19, 5:19-

22  21, Hauler Dec., Exh. 21.

23  [50]  Order Granting Joint Motion For Protective Order Regarding Mattel's
    Interrogatories, dated September 5, 2007, Hauler Dec., Exh. 19 at 7:11-12, 9:4-8.

24  For example, the Discovery Master ruled that the following interrogatory constituted

25  four separate interrogatories because it was "directed to four separate and discrete
    defense theories:" "State all facts that support YOUR contention, if YOU so

26  contend, that one or more of MATTEL'S claims against YOU in THIS ACTION is

27  barred, in whole or in part, by the doctrines of unclean hands, estoppel, waiver or
    consent, and IDENTIFY all PERSONS with knowledge of such facts and all

28      (footnote continued)

1        Defendants specifically urged this holding. In their Joint Motion for a

2 Protective Order, they argued "[e]ach of [Mattel's] interrogatories addresses several

3 discrete issues and constitutes multiple interrogatories."[51] In fact, they specifically

4 argued that an interrogatory that addresses separate elements of a claim is compound

5 for that reason: "*each element of a claim is discrete and constitutes a separate*

6 *interrogatory*."[52] The Discovery Master adopted this argument.[53] The Discovery

7 Master then granted Defendants' motion for protective order and denied Mattel's

8 motion to compel, requiring Mattel to serve an amended set of interrogatories

9 pursuant to his ruling.[54] MGA is now bound to its assertions.[55]

10 ————————————————

11 DOCUMENTS that REFER OR RELATE TO such facts." Id. at 7:12-8:2.

12 Similarly, the Discovery Master ruled that the following interrogatory consisted of
six discrete subparts – three different legal contentions and two different factual

13 allegations – and thus equaled six interrogatories: "State all facts that support

14 YOUR contention, if YOU so contend, that YOU did not intentionally interfere with
the INVENTIONS AGREEMENT or any other agreement or contract between

15 MATTEL and BRYANT, or aid or abet any breach of fiduciary duty or duty of

16 loyalty owed by BRYANT to MATTEL, when BRYANT purported to TRANSFER
and MGA purported to ACQUIRE rights to BRATZ or when BRYANT performed

17 work or services with or for MGA while BRYANT was employed by MATTEL,

18 and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS
that REFER OR RELATE TO such facts." Id. at 8:3-15.

19     [51]    Joint Motion for Protective Order, Hauler Dec., Exh. 19 at 8:7-8.

20     [52]    Joint Motion for Protective Order, Hauler Dec., Exh. 19 at 8:24-9:2 (citing

21 Sec. Ins. Co. v. Trustmark Ins. Co., 2003 U.S. Dist. LEXIS 18196, *4-5 (D. Conn. 2003).

22     [53]    September 5, 2007 Order, Hauler Dec., Exh. 19, at 7:14-8:2 (citing Safeco of

23 America, 181 F.R.D. 441, 445 (C.D. Cal 1995) and Sec. Ins. Co. v. Trustmark Ins.
Co., 2003 U.S. Dist. LEXIS 18196, *4-5 (D. Conn. 2003)).

24     [54]    Id. at 7:10-9:2.

25     [55]    "Judicial estoppel is an equitable doctrine that precludes a party from gaining
an advantage by asserting one position, and then later seeking an advantage by

26 taking a clearly inconsistent position." Hamilton v. State Farm Fire & Cas. Co., 270

27 F.3d 778, 782 (9th Cir. 2001). The doctrine is invoked "not only to prevent a party
from gaining an advantage by taking inconsistent positions, but also because of

28      (footnote continued)

MATTEL. INC.'S OPPOSITION TO MOTION TO COMPEL

1

### C.   **Defendants' Interrogatories Are Compound.**

2      Many of the MGA Parties' interrogatories now at issue are <u>clearly</u> compound

3 under these standards. They seek information relating to discrete and unrelated

4 factual allegations in the TAAC, different legal theories or causes of action;

5 different elements of a claim and, in many cases, application of different facts to

6 different legal theories.

7      For example, MGA Hong Kong's Interrogatory No. 6 purports to require

8 Mattel to:

9          As to **each** misrepresentation or concealment underlying the Second

10         Counterclaims allegations of mail and/or wire fraud (*see, e.g.*, ¶¶137-

11         39, 141(a)(b)), state all facts regarding:

12         (a)   the duration and goals of the mail and/or wire fraud based on that

13         misrepresentation or concealment;

14         (b)   which PERSONS employed by or associated with which RICO

15         enterprises committed that mail and/or wire fraud;

16         (c)   what facts or information were misrepresented or concealed;

17         (d)   when the facts or information were misrepresented or concealed;

18         (e)   who misrepresented or concealed the facts or information;

19

20

21   'general considerations of the orderly administration of justice and regard for the dignity of judicial proceedings,' and to 'protect against a litigant playing fast and

22   loose with the courts.'" <u>Id.</u> (quoting <u>Russell v. Rolfs</u>, 893 F.2d 1033, 1037 (9th Cir.

23   1990)). Judicial estoppel can apply to inconsistent positions of law or fact. <u>See</u> <u>Helfand v. Gerson</u>, 105 F.3d 530, 534-536 (9th Cir. 1997) ("The integrity of the

24   judicial process is threatened when a litigant is permitted to gain an advantage by

25   the manipulative assertion of inconsistent positions, factual or legal.") Judicial estoppel can also apply within the continuing progress of a single action. <u>See</u>

26   <u>Pegram v. Herdrich</u>, 530 U.S. 211, 228 n. 8 (2000) ("Judicial estoppel generally

27   prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.").

28

1    (f)   the factual and legal basis of the duties, if any, to disclose the

2    facts or information;

3    (g)   to whom the misrepresentation or concealment was directed;

4    (h)   who, if anyone, relied upon the misrepresentation or

5    concealment;

6    (i)   the uses of the mails and or wires that furthered the mail and/or

7    wire fraud based on that misrepresentation or concealment;

8    (j)   the injuries to MATTEL's business or property proximately

9    caused by the misrepresentation or concealment and/or the mail and/or

10    wire fraud based on the misrepresentation or concealment;

11    (k)   how MATTEL has calculated or estimated the dollar value of

12    those injuries to MATTEL's business or property (and if it has not,

13    why not); and

14    (l)   IDENTIFY all PERSONS MATTEL believes have knowledge of

15    the information requested in this Interrogatory.[56]

16       This interrogatory, which requires 12 letters of the alphabet to enumerate its

17 sub-parts, patently addresses discrete legal contentions and factual allegations.

18 First, the interrogatory seeks information regarding both "misrepresentation" and

19 "concealment" pertaining to the predicates of both mail fraud and wire fraud -- and

20 does so as to "each" of defendants' misrepresentations and concealments.   Thus,

21 without even accounting for the interrogatory's (a) – (l) subparts, it counts as

22 multiple interrogatories.   Sec. Ins. Co. v. Trustmark Co., 2003 U.S. Dist. LEXIS

23 18196, *4-5 (D. Conn. 2003) (finding that a single interrogatory seeking information

24 about all elements of a given claim was compound and explaining that each element

25 of a claim is discrete and constitutes a separate interrogatory); Safeco of America,

26

27    [56] MGA Entertainment (HK) Limited's Interrogatory Nos. 1-25, Molinski Dec., Exh. 1, at Interrogatory No. 6 (emphasis added).

28

1   181 F.R.D. 441, 446 (C.D. Cal 1998) ("where the underlying requests for admission
2   [that are the subject of an interrogatory] concern different, separate, or discrete
3   matters, however, the interrogatory should be viewed as containing a subpart for
4   each request.").   Moreover, the numerous, separately-lettered subparts address
5   discrete elements of both wire fraud and mail fraud, damages flowing from
6   misrepresentations, concealments, wire fraud predicates and mail fraud predicates,
7   and how Mattel calculated its damages.  Of course, the Discovery Master has ruled,
8   at the express urging of MGA, that an interrogatory that seeks information about
9   separate and discrete legal theories or claim elements is compound.[57]

10      MGA Hong Kong's remaining interrogatories fare no better.  For instance,
11   Interrogatory No. 1 -- which MGA called out as proper in its Motion (Motion at 9-
12   10) -- seeks several different categories of information about each of the hundreds of
13   predicate acts Mattel has alleged:

14          As to **each** occasion on which Mattel contends a RICO predicate was
15          committed as alleged in the Second and Third Counterclaims of the
16          TAAC:

17          (a)   IDENTIFY the RICO predicate act (by statute) and state all facts
18          regarding the acts and omissions establishing that RICO predicate act.
19          (If you contend the same acts and omissions established the commission
20          of more than one RICO predicate act, IDENTIFY all of those RICO
21          predicate acts.);

22          (b)   IDENTIFY which PERSONS employed by or associated with
23          which RICO enterprise(s) committed that RICO predicate act;

24
25
26

27   [57]   See September 5, 2007 Order, Hauler Dec., Exh. 19, at 7:10-9:2.
28

07975/3132950.1

-18-
MATTEL. INC.'S OPPOSITION TO MOTION TO COMPEL

(c)     state all facts which you contend demonstrate that Isaac Larian knew of, participated in, or directed the commission of that RICO predicate act;

(d)     state all facts regarding how that RICO predicate act proximately caused injury(s) to Mattel's business or property;

(e)     state all facts regarding how Mattel has calculated or estimated the monetary damages for each type of injury to its business or property proximately caused by that RICO predicate act (and if it has not, why not); and

(f)     IDENTIFY all PERSONS Mattel believes have knowledge of the information requested in this Interrogatory.[58]

The number of discrete questions posed by this interrogatory -- as to each of the hundreds of predicate acts Mattel has alleged, one by one -- is overwhelming.

The vast majority of MGA Hong Kong's and MGA Mexico's remaining interrogatories similarly seek information regarding discrete legal contentions and factual allegations.  For instance, MGA Mexico's Interrogatory No. 11 reads:

As to **each** allegation upon information and belief as alleged in the Counterclaims of the TAAC, state all facts regarding the sources of the information alleged, when the information was acquired from each source, and all inferences or conclusions you have drawn that support the stated belief.[59]

Again, this interrogatory does not seek a unified factual narrative, but instead, a sprawling discussion of Mattel's various and unrelated allegations on information

---

[58] MGA Entertainment (HK) Limited's Interrogatory Nos. 1-25, Molinski Dec., Exh. 1, at Interrogatory No. 1.
[59] MGAE de Mexico Interrogatory Nos. 1-11, Molinski Dec., Exh. 2, at Interrogatory No. 11.

1   and belief.  Just as an interrogatory asking for facts supporting denials of requests
2   for admissions is compound (and counts as one for each request for admission at
3   issue, see Safeco of America, 181 F.R.D. 441, 446 (C.D. Cal. 1998), this
4   interrogatory counts as one for each allegation on information and belief, of which
5   there are more than 20.[60]

6       The MGA Parties argue that their interrogatories are not compound because
7   each seeks ███████████████████████████████[61]  The language
8   of the interrogatories permits no such conclusion.   To the contrary, the
9   interrogatories expressly and repeatedly demand individualized recitations as to, for
10  example, discrete, enumerated questions as to "each" of the hundreds of predicate
11  acts at issue.  Indeed, MGA's approach would vitiate the rule of discrete subparts
12  entirely.  According to MGA, "each of the Interrogatories at Issue [sic] relates to
13  only a single common theme: *Mattel's claim of trade secret misappropriation in*
14  *Mexico's interrogatories, and Mattel's RICO claims in MGA HK's interrogatories.*
15  Since each of the MGA interrogatories with subparts directly addresses a single
16  topic, Mattel's objections are baseless."[62]  Such an understanding of what constitutes
17  a "common theme" -- "t rade secrets" or "RICO" -- wo uld render virtually any
18  interrogatory non-compound.  MGA's arguments fly in the face of the law of the
19  case -- law urged by MGA itself.[63]

20  _____

21      [60]   At a minimum, interrogatory Nos. 1, 4-25 of MGA Hong Kong's
22  Interrogatories and Nos. 1-7 and 10-11 of MGA Mexico's Interrogatories are also
23  compound—many of them exceedingly so.
        [61]   Motion at 8.
24      [62]   Motion at 7.
        [63]   The interrogatories from MGA Mexico and Hong Kong are also
25  distinguishable from the interrogatory regarding defendants' affirmative defenses
26  that Mattel served on December 3, 2007.  Mattel sought and was granted leave
27  specifically for the purpose of serving that interrogatory above and beyond the
    limits.  See Court's Order Granting Motion for Leave to Serve a Supplemental
28      (footnote continued)

1    The 36 additional interrogatories the MGA Parties have served count as at
2  least many hundreds under the Rules.  Even if interrogatories are allotted per party,
3  which they should not be, Mattel should not have to respond to such compound and
4  incredibly burdensome discovery.

5  **II.    THE BURDEN ON MATTEL OF ANSWERING THE**
6  **INTERROGATORIES FAR OUTWEIGHS ANY BENEFIT TO THE**
7  **MGA PARTIES OF RECEIVING THE DISCOVERY.**

8    The burden on Mattel of answering MGA Hong Kong's and MGA Mexico's
9  interrogatories outweighs any benefit to such discovery.  Rule 26(b)(2)(C) provides
10  that a Court should limit the extent of discovery if it determines that the burden of
11  the proposed discovery outweighs its likely benefit; the discovery sought is
12  unreasonably cumulative or duplicative, or is obtainable from some other source that
13  is more convenient, less burdensome, or less expensive; or the party seeking
14  discovery has had ample opportunity by discovery in the action to obtain the
15  information sought.  See Fed. R. Civ. P. 26(b)(2)(C); see also Order Denying
16  Mattel's Motion to Compel Responses to Interrogatory Nos. 27-33, 36-40, 42, 45
17  and 47 by Carter Bryant, dated February 20, 2008, Hauler Dec., Exh. 28, at 5:3-6
18  ("On balance, the burden of responding further to Interrogatory Nos. 27-29, as
19  written, outweighs the likely benefit of the interrogatories, taking into account the
20  needs of the case, the amount in controversy, the parties' resources, the importance
21  of the issues at stake in the litigation, and the importance of the proposed discovery
22  in resolving the issue.").

23

24

_____

25  Interrogatory, dated December 3, 2007, Hauler Dec. Exh. 37 at 1.  The MGA
26  Parties, however, have not sought or obtained leave to serve any of the
27  interrogatories at issue here.  Therefore, for the purpose of counting interrogatories
    here, Mattel's December 3, 2007 affirmative defenses interrogatory is irrelevant.
28

MATTEL. INC.'S OPPOSITION TO MOTION TO COMPEL

In addition, "[a] trial court has a duty, of special significance in lengthy and complex cases where the possibility of abuse is always present, to supervise and limit discovery to protect parties and witnesses from annoyance and excessive expense." Dolgow v. Anderson, 53 F.R.D. 661, 664 (E.D.N.Y. 1971); see also Laker Airways Ltd. v. Pan American World Airways, 559 F. Supp. 1124, 1133 n.36 (D.C.D.C. 1983) (same); Mr. Frank, Inc. v. Waste Management, Inc., 1983 WL 1859, *1 (N.D. Ill. 1983) (same). Where information necessary to answer contention interrogatories to plaintiffs is in possession of defendants, the contention interrogatories are premature at an early point in discovery. See In re Convergent Technologies Securities Litigation, 108 F.R.D. 328, 331 (N.D.Cal. 1985) (contention interrogatories propounded on plaintiffs were premature where information necessary to answer them was in possession of defendants) (emphasis in original).

### A. The Interrogatories Are Overbroad And Unduly Burdensome In Light Of The Detailed Litany Of Information They Demand.

#### 1. Simply Reading The Interrogatories, Their Burdensomeness Is Readily Apparent.

Each of the interrogatories at issue consists of multiple subparts seeking detailed factual recitations and analysis of those facts. To respond to virtually any one of these interrogatories would require hundreds of hours of attorney time; to respond to all 36 would require Mattel to invest thousands of hours of attorney time.[64] Upon merely reading the interrogatories, it is readily apparent that each is exceptionally burdensome and oppressive. For example, MGA Hong Kong's Interrogatory No. 1 states:

---

[64] Searcy Dec., ¶ 2.

**MGA Hong Kong's Interrogatory No. 1:**

As to each occasion on which Mattel contends a RICO predicate was committed as alleged in the Second and Third Counterclaims of the TAAC:

(a)    IDENTIFY the RICO predicate act (by statute) and state all facts regarding the acts and omissions establishing that RICO predicate act. (If you contend the same acts and omissions established the commission of more than one RICO predicate act, IDENTIFY all of those RICO predicate acts.);

(b)    IDENTIFY which PERSONS employed by or associated with which RICO enterprise(s) committed that RICO predicate act;

(c)    state all facts which you contend demonstrate that Isaac Larian knew of, participated in, or directed the commission of that RICO predicate act;

(d)    state all facts regarding how that RICO predicate act proximately caused injury(s) to Mattel's business or property;

(e)    state all facts regarding how Mattel has calculated or estimated the monetary damages for each type of injury to its business or property proximately caused by that RICO predicate act (and if it has not, why not); and

(f)    IDENTIFY all PERSONS Mattel believes have knowledge of the information requested in this Interrogatory.

Mattel has alleged hundreds of predicate acts.[65]  Interrogatory No. 1 purports to require Mattel to answer multiple, disparate questions regarding each of them.

---

[65]  See, e.g., Exhibits to the TAAC, Searcy Dec., Exh. 17.

For example, the interrogatory purports to demand "all facts" regarding each individual predicate act, Larian's involvement in each individual act, a detailed damages analysis regarding each individual act and, in the event Mattel has not analyzed damages at the individual predicate act level, an explanation as to why it has not. To provide this level of detailed information and analysis regarding each of hundreds of predicate acts would alone require many hundreds of attorney hours.[66]

The other interrogatories at issue are similarly onerous. For example:

**MGA Hong Kong's Interrogatory No. 6:**

As to each misrepresentation or concealment underlying the Second Counterclaim's allegations of mail and/or wire fraud (see, e.g., ¶¶ 137-39, 141(a),(b)), state all facts regarding:

(a)   the duration and goals of the mail and/or wire fraud based on that misrepresentation or concealment;

(b)   which PERSONS employed by or associated with which RICO enterprises committed that mail and/or wire fraud;

(c)   what facts or information were misrepresented or concealed;

(d)   when the facts or information were misrepresented or concealed;

(e)   who misrepresented or concealed the facts or information;

(f)   the factual and legal basis of the duties, if any, to disclose the facts or information;

(g)   to whom the misrepresentation or concealment was directed;

---

[66]   Searcy Dec., ¶ 2.

1         (h)     who, if anyone, relied upon the misrepresentation or

2  concealment;

3         (i)     the uses of the mails and/or wires that furthered the mail

4  and/or wire fraud based on that misrepresentation or concealment;

5         (j)     the injuries to MATTEL's business or property

6  proximately caused by the misrepresentation or concealment and/or the mail

7  and/or wire fraud based on that misrepresentation or concealment;

8         (k)     how MATTEL has calculated or estimated the dollar value

9  of those injuries to MATTEL's business or property (and if it has not, why

10  not); and

11         (l)     IDENTIFY all PERSONS MATTEL believes have

12  knowledge of the information requested in this Interrogatory.

13  **MGA Hong Kong's Interrogatory No. 19:**

14         With respect to the allegation in paragraphs $103 - 104$ of the

15  Counterclaims of the TAAC, regarding destruction of documents, perjury,

16  conspiracy to commit perjury, and obstruction of justice, state all facts

17  regarding:

18         (a)     every RICO predicate act committed through that conduct;

19         (b)     which PERSONS employed by or associated with which

20  RICO enterprises committed those predicate acts;

21         (c)     the injuries to MATTEL's business or property

22  proximately caused by those predicate acts;

23         (d)     how MATTEL has calculated or estimated the dollar value

24  of those injuries (and if it has not, why not); and

25         (e)     IDENTIFY all PERSONS MATTEL believes have

26  knowledge of the information requested in this Interrogatory.

27

28

-25-

**MGA Hong Kong's Interrogatory No. 20:**

With respect to the allegation in paragraphs 108 – 112 and 120 of the Counterclaims of the TAAC, that Isaac Larian and MGA created various shell and off-shore entities to either transfer or assist in the transfer of proceeds generated by unlawful conduct and criminal enterprises, state all facts regarding:

(a)     every RICO predicate act committed through that conduct;

(b)     which PERSONS employed by or associated with which RICO enterprises committed those predicate acts;

(c)     the injuries to MATTEL's business or property proximately caused by those predicate acts;

(d)     how MATTEL has calculated or estimated the dollar value of those injuries (and if it has not, why not); and

(e)     IDENTIFY all PERSONS MATTEL believes have knowledge of the information requested in this Interrogatory.

And this is just a sampling -- comparably broad, onerous interrogatories are riddled throughout these sets.[67]

Moreover, even where the interrogatories do not contain multiple lettered subparts, they still would impose tremendous burdens. For instance, MGA Mexico's Interrogatory No. 11 asks for detailed information regarding each allegation in Mattel's TAAC that is alleged upon information and belief:

**MGA Mexico's Interrogatory No. 11:**

As to each allegation upon information and belief as alleged in the Counterclaims of the TAAC, state all facts regarding the sources of the information alleged, when the information was acquired from each source,

---

[67]  See, e.g., MGA Hong Kong Interrogatory Nos. 4, 5, 10-25, Molinski Dec., Exh. 1.

MATTEL. INC.'S OPPOSITION TO MOTION TO COMPEL

1    and all inferences or conclusions you have drawn that support the stated
2    belief.

3 There are dozens of such allegations in the TAAC.[68] Answering this interrogatory
4 would be inordinately time-consuming and costly -- and probative of nothing.

5    Other interrogatories in the MGA Mexico set are similarly burdensome.
6 Many of them purport to require Mattel to "[s]tate all facts, on a document-by-
7 document basis by bates number." For example:

8 **MGA Mexico's Interrogatory No. 2:**

9    State all facts, on a document-by-document basis by bates number, which
10    support your contention that MGA obtained through improper means any
11    MATTEL DOCUMENT containing MATTEL trade secrets identified in
12    response to Request No. 1, above, and IDENTIFY all PERSONS with
13    knowledge of such facts and all DOCUMENTS that REFER OR RELATE to
14    such facts.

15 **MGA Mexico's Interrogatory No. 7:**

16    State all facts, on a document-by-document basis by bates number, that
17    support YOUR contention that the trade secrets identified in response to
18    Request No. 1, above, were the subject of efforts that are reasonable under the
19    circumstances to maintain its secrecy, and IDENTIFY all PERSONS with
20    knowledge of such facts and all DOCUMENTS that REFER OR RELATE to
21    such facts.

22 Itemizing this information on a document-by-document basis is make work. MGA
23 knows already why Mattel believes MGA "obtained through improper means" the
24 trade secrets it stole, and how Mattel attempted to maintain their secrecy -- Mattel

25
26
27    [68] See TAAC, Searcy Dec., Exh. 17, passim.
28

07975/3132950.1

1  has already disclosed that. Disclosing it again, one-by-one for each of the hundreds
2  of stolen trade secrets would be extraordinarily, and unduly, burdensome.

3  Recognizing that the interrogatories are unduly burdensome and compound
4  on their face, the MGA Parties attempt to characterize each of them as relating "to
5  only a single common theme," Motion at 7:23-25, and state that "the subparts are
6  intended simply as a measure against vagueness, ambiguity, and overbreadth."
7  Motion at 9:7-11. But the text of the interrogatories themselves shows the
8  extraordinary burdens they would create, and the MGA Parties' characterization is
9  belied by the remainder of their brief. In fact, nowhere do the MGA Parties state
10  that they do not want Mattel to provide all the information enumerated in each of
11  their subparts. To the contrary, the MGA Parties request that their Motion "be
12  granted in its entirety" and that Mattel *be ordered to serve full and complete*
13  *answers, without objection, to each of the interrogatories at issue.*" Motion at
14  2:13-16 (emphasis added).[69]

15  Moreover, the burdens created by defendants' interrogatories are enhanced by
16  their demands for "all facts", "all persons" and "all documents that refer or relate" to
17  such facts.[70] For instance, Interrogatory No. 2 of MGA Mexico's First Set of
18  Interrogatories requires Mattel to, "[s]tate all facts, on a document-by-document
19  basis by bates number, which support your contention that MGA obtained through

---

21  [69] Furthermore, even were the MGA Parties to agree to somehow limit their
22  grossly burdensome interrogatories in their Motion, such an approach is too little,
23  too late. Safeco of America v. Rawstron, 181 F.R.D. 441, 448 (C.D. Cal. 1998)
   ("Defendants' counsel should have considered these practical problems before
24  serving such broad discovery requests, rather than waiting until the inevitable
25  objections were received before trying to salvage the requests by limiting them to
   what is really needed.").
26  [70] See MGAE de Mexico's Interrogatory Nos. 1-11 to Mattel, Inc., Molinski
27  Dec., Exh. 2; see also MGA Entertainment (HK) Limited's Interrogatory Nos. 1-25
   to Mattel, Inc., Molinski Dec., Exh. 1.
28

MATTEL. INC.'S OPPOSITION TO MOTION TO COMPEL

1  improper means any MATTEL DOCUMENT containing MATTEL trade secrets
2  identified in response to Request No. 1, above, and IDENTIFY all PERSONS with
3  knowledge of such facts and all DOCUMENTS that REFER OR RELATE to such
4  facts."[71]  Other interrogatories seek "all facts" regarding Mattel's RICO
5  allegations.[72]  Defendants' motion confirms their demand for literally "all facts" in
6  response to these questions.  Motion at 2:13-15.  The Discovery Master previously
7  has found interrogatories employing such terms to be overbroad and unduly
8  burdensome.[73]

9          **2.**       **The Interrogatories Are Unduly Burdensome Under Both**
10                  **Case Law And The Law Of The Case.**

11        MGA's interrogatories are far more burdensome than others that have been
12  rejected in this case as too onerous.  In fact, the Discovery Master found at MGA's
13  urging that contention interrogatories going to the timing of the creation of Bryant's
14  Bratz works -- the issue at the heart of the Phase 1 trial -- were overly burdensome
15  because of the detail they required.  In September 2007, Mattel served three
16  interrogatories, asking the MGA Parties to:

17  **Interrogatory No. 27:**

18        IDENTIFY each and every BRATZ INVENTION YOU contend was
19        CREATED, in whole or in part, prior to January 4, 1999, and for each
20        BRATZ INVENTION so identified state all FACTS that support
21        YOUR contention that such BRATZ INVENTION (or aspects or

---

[71]  See MGAE de Mexico Interrogatory Nos. 1-11, Molinski Dec., Exh. 2, at Interrogatory No. 2.

[72]  See, e.g., MGAE de Mexico Interrogatory Nos. 1-11, Molinski Dec., Exh. 2, at Interrogatory No. 10; see also MGA Hong Kong Interrogatory Nos. 1-25, Molinski Dec., Exh. 1, at Interrogatory Nos. 1, 4-25.

[73]  See Order Denying Mattel's Motion To Compel Responses to Interrogatory Nos. 27-33, 36-40, 42, 45 and 47 by Carter Bryant, dated February 20, 2007, Hauler Dec., Exh. 28, at 4:6-9.

1  portions thereof) was CREATED prior to January 4, 1999, and
2  IDENTIFY all PERSONS with knowledge of such facts and all
3  DOCUMENTS which REFER OR RELATE TO such facts.

4  **Interrogatory No. 28:**

5  IDENTIFY each and every BRATZ INVENTION YOU contend was
6  CREATED, in whole or in part, after October 19, 2000, and before
7  June 1, 2001, and for each BRATZ INVENTION so identified state all
8  FACTS that support YOUR contention that such BRATZ INVENTION
9  (or aspects or portions thereof) was CREATED after October 19, 2000,
10  and before June 1, 2001, and IDENTIFY all PERSONS with
11  knowledge of such facts and all DOCUMENTS which REFER OR
12  RELATE TO such facts.

13  **Interrogatory No. 29:**

14  IDENTIFY each and every BRATZ INVENTION YOU contend was
15  CREATED, in whole or in part, after January 3, 1999, and before
16  October 21, 2000, and for each BRATZ INVENTION so identified
17  state all FACTS that REFER OR RELATE TO the timing of the
18  creating of such BRATZ INVENTION and IDENTIFY all PERSONS
19  with knowledge of such facts and all DOCUMENTS which REFER
20  OR RELATE TO such facts.[74]

21  These were designed to serve the obviously legitimate purpose of assessing
22  Defendants' contentions about which relevant Bratz works were created when, a
23
24
25

26  [74]  Order Granting in Part and Denying in Part Mattel's Motion to Compel
27  Responses to Interrogatory Nos. 27-44 and 45-60 By the MGA Parties, Hauler Dec.,
   Exh. 43, at 2:4-5, 6:7-20..
28

1   core issue. Nevertheless, Defendants served only objections,[75] and opposed Mattel's

2   motion to compel on the grounds that "requiring a narrative response setting forth

3   all evidence in support of their contentions would render the interrogatories unduly

4   burdensome and 'inherently improper.'"[76]   Defendants also then served bare bones

5   responses consisting of short (sometimes one paragraph) summaries of their

6   contentions, cites to deposition testimony and documents and an incorporation by

7   reference of other interrogatory responses.[77]   Nevertheless, because the burdens of

8   responding were substantial, the Discovery Master refused to compel further

9   responses. As the Discovery Master then ruled, "[f]aced with overbroad and unduly

10  burdensome interrogatories," a party properly may limit its response to "facts

11  supporting the contentions identified in the interrogatories, identif[ying] persons

12  with knowledge of the those facts, and identif[ying] the principal documents or

13  categories of documents that support each contention."[78]

14      Similarly, other cases have found that "[t]o require specifically 'each and

15  every' fact and application of law to fact . . . would too often require a laborious,

16  time-consuming analysis, search, and description of incidental, secondary, and

17  perhaps irrelevant and trivial details." IBP, Inc. v. Mercantile Bank of Topeka, 179

18  _____

19  [75]   See, e.g., MGA's Second Supplemental Responses to Mattel's Revised Third

20  Set of Interrogatories, Searcy Dec., Exh. 22, at Response to Interrogatory No. 27.

    [76]   See Order Granting in Part and Denying in Part Mattel's Motion to Compel

21  Responses to Interrogatory Nos. 27-44 and 45-60 By the MGA Parties, Hauler Dec.,

22  Exh. 43, at 7:23-25 (internal cites omitted).

    [77]   See Order Denying Mattel's Motion To Compel Responses to Interrogatory

23  Nos. 27-33, 36-40, 42, 45 and 47 by Carter Bryant, Hauler Dec., Exh. 28; see also

24  Carter Bryant's Second Supplemental Responses to Mattel, Inc.'s Revised Third Set

    of Interrogatories, dated January 28, 2008, Searcy Dec., Exh. 15, at Second

25  Supplemental Response to Interrogatory No. 27.

26  [78]   Id. at 8-9; see also  MGA's Second Supplemental Responses to Mattel's

    Revised Third Set of Interrogatories, Searcy Dec., Exh. 22, at Supplemental

27  Responses to Nos. 27-29.

28

F.R.D. 316, 321 (D. Kan. 1998). Indeed, defendants themselves have repeatedly urged that the duty to respond to a contention interrogatory is limited to an identification of the "'principal or material' facts which support" the contention.[79] Moses v. Halstead, 236 F.R.D. 667, 674 (D. Kan. 2006) (quoting Hiskett v. Wal-Mart Stores, Inc., 180 F.R.D. 403, 404-405 (D. Kan. 1998)); see also Grynberg v. Total S.A., No. 03-cv-01280-WYD-BNB, 2006 WL 118636, at *7 (D. Col. May 3, 2006) ("It is proper, of course, to inquire about the material facts supporting specific factual matters raised in the pleadings."); IBP, Inc., 179 F.R.D. at 321 ("An interrogatory may reasonably ask for the material or principal facts which support a contention.").

The instant interrogatories also purport to require Mattel to apply interrogatories with multiple subparts to hundreds of discrete predicate acts and trade secrets.[80] Such a requirement is contrary to law. See Safeco of America v. Rawstron, 181 F.R.D. 441, 447-448 (C.D. Cal. 1998) (an interrogatory that sought to require the answering party to state all facts supporting the denial of statements made to 50 separate requests for admission was unduly burdensome). The Safeco court found that were it to allow an interrogatory referencing 50 separate requests for admission, such a ruling would essentially transform each request for admission into an interrogatory not subject to the numerical limit. Id. at 445. The MGA Parties attempt to do the same thing here -- transform each interrogatory into hundreds of interrogatories not subject to the numerical limit.[81] The Safeco court

---

[79]  See,e.g., Order Granting in Part and Denying in Part Mattel's Motion to Compel Responses to Interrogatory Nos. 27-44 and 45-60 By the MGA Parties, Hauler Dec., Exh. 43, at 7:23-25 (internal cites omitted).
[80]  See MGA Hong Kong's Interrogatory Nos. 1-25, Molinski Dec., Exh. 1; see also MGA Mexico's Interrogatory Nos. 1-11, Molinski Dec., Exh. 2.
[81]  See, e.g., MGA Hong Kong Interrogatory Nos. 1-25, Molinski Dec., Exh. 1, at Interrogatory Nos. 10-23.

1 also found that requiring "all facts" including those based simply upon
2 "'information and belief, adds a significant and unreasonable burden to the task of
3 the answering party.'" Id. at 447 (quoting Lawrence v. First Kansas Bank & Trust
4 Co., 169 F.R.D. 657, 663 (D.Kan. 1996)). Here, MGA Mexico's Interrogatory No.
5 11 not only seeks "all facts" including those based upon "information and belief"
6 but, in fact, specifically targets facts based upon information and belief, rendering
7 this interrogatory particularly onerous.[82]

8   Finally, the interrogatories also pose an undue burden because they seek
9 information which MGA itself has prevented Mattel from obtaining. Many of the
10 interrogatories seek information relating to "every RICO predicate act"[83] despite the
11 fact that MGA has successfully argued that producing evidence relating to every
12 RICO predicate is unduly burdensome. In November 2007, Mattel sought
13 production of metadata from MGA to prove that emails Mattel attached to its
14 Counterclaims were sent across state and national borders and constituted wire fraud
15 predicates.[84] MGA opposed Mattel's motion to compel, arguing that Mattel had not
16 shown that the metadata was "critical" to the case, that the information was
17 available via other sources such as depositions and that it would cost MGA $10,000
18 to produce the metadata requested, and sought cost-shifting in that amount.[85] The
19 prior Discovery Master agreed and denied Mattel's motion with respect to all
20 metadata MGA had not already collected.[86] In so doing, the Discovery Master

21

---

22 [82] See MGA Mexico's Interrogatory No. 11, Molinski Dec., Exh. 2.
23 [83] See MGA Hong Kong Interrogatory Nos. 1-25, Molinski Dec., Exh. 1, at Interrogatory Nos. 10-23.
24 [84] Mattel, Inc.'s Motion to Compel Production of Metadata, dated November 21,
25 2007, Hauler Dec., Exh. 30.
 [85] MGA's Opposition to Mattel, Inc.'s Motion to Compel Production of
26 Metadata, dated November 30, 2009, Hauler Dec., Exh. 31, at 5:13-25, 7:12-8:13.
27 [86] Order Regarding Mattel, Inc.'s Motion to Compel Production of Metadata,
 dated January 9, 2008, Hauler Dec., Exh. 32.

28

1   reasoned that Mattel did not need to demonstrate the element of interstate commerce
2   with respect to "each and every predicate act."[87]  Based on these and other efforts by
3   MGA, Mattel has been unable to obtain critical information relating to "every RICO
4   predicate act."  MGA should not be permitted now to use interrogatories to burden
5   Mattel to regurgitate MGA information that MGA itself refuses to produce.

6        **B.     The Interrogatories Are Cumulative of Prior Discovery and of**
7        **Each Other.**

8        The MGA Parties' interrogatories are written so that they are not only
9   extremely burdensome, but are duplicative of prior discovery.  Mattel has invested
10  hundreds of attorney hours in Phase 2 to answering and supplementing
11  interrogatories in this case.[88]  In addition, Mattel has served a Third Amended
12  Answer and Counterclaims ("TAAC") that lays out its claims in detail and "attaches
13  an unprecedented amount of evidence."[89]  In response to the interrogatories already
14  served by Defendants, Mattel has recounted the factual basis for its claims,
15  identified people with knowledge of such facts and identified documents referring or
16  relating to such facts.[90]  Mattel has responded at length to interrogatories including
17  the following:

18

19      [87]  Hearing Transcript, January 3, 2008, Hauler Dec., Exh. 33, at 10:13-11:3.
20      [88]  Searcy Dec., ¶ 3.
21      [89]  Court's Order, dated May 21, 2009, Hauler Dec., Exh. 29, at 6.
        [90]  Mattel's Second Supplemental Responses to MGA's First Set of
22  Interrogatories to Mattel, Inc., dated May 23, 2008; Mattel, Inc.'s Supplemental
23  Objections and Responses to MGA Entertainment, Inc.'s Second Set of
    Interrogatories, dated March 5, 2008; Mattel, Inc.'s Objections and Response to
24  MGA Entertainment, Inc.'s Amended Supplemental Interrogatory Regarding
25  Affirmative Defenses, dated January 7, 2008; Mattel, Inc.'s Objections and Second
    Supplemental Responses to Defendant's First Set of Interrogatories, Numbers 1-14,
26  dated December 13, 2007; Mattel, Inc.'s Supplemental Responses to Second Set of
27  Interrogatories Propounded by Carter Bryant, dated March 4, 2008; Mattel's Second
    Supplemental Response to Interrogatory No. 29 of MGA's Second Set of
28      (footnote continued)

1        **Interrogatory No. 1, MGA's First Set of Interrogatories:** State all

2        facts, with particularity, and IDENTIFY all DOCUMENTS that

3        support YOUR contention, if YOU so contend, that YOU have suffered

4        harm as a result of any act or omission of MGA.[91]

5        **Interrogatory No. 2, MGA's First Set of Interrogatories:**

6        IDENTIFY all PERSONS with knowledge of each fact" "stated in

7        response to Interrogatory No. 1.[92]

8        **Interrogatory No. 3, MGA's First Set of Interrogatories:** State, with

9        particularity, the nature, amount, cause and calculation of every item of

10       YOUR alleged damages, including, without limitation, general, actual

11       and statutory damages, restitution, disgorgement of unlawful profits,

12       lost profits, lost payments, lost revenues, lost monies, lost royalties or

13       license fees, reputational harm, lost relationships, lost business

14       opportunities, interest, attorneys' fees, costs, expenses, and any other

15       form of injury or damage of quantifiable remedy that YOU seek to

16       recover in this lawsuit.[93]

17        **Interrogatory No. 20, MGA's Second Set of Interrogatories:**

18        IDENTIFY with specificity each ALLEGED TRADE SECRET,

19

20

21 _____

22 Interrogatories, dated July 6, 2009; Mattel's Second Supplemental Reponses to

23 Interrogatories 20-23 and 28, dated September 9, 2009; Searcy Dec. Exhs. 16-21, 14.

24   [91] MGA's First Set of Interrogatories, Hauler Dec., Exh. 5, at Interrogatory No.

25 1.  [92] MGA's First Set of Interrogatories, Hauler Dec., Exh. 5, at Interrogatory No.

26 2.  [93] MGA's First Set of Interrogatories, Hauler Dec., Exh. 5, at Interrogatory No.

27 3.

28

MATTEL. INC.'S OPPOSITION TO MOTION TO COMPEL

including the IDENTITY of each DOCUMENT that embodies or REFERS OR RELATES to each ALLEGED TRADE SECRET.[94]

**Interrogatory No. 21, MGA's Second Set of Interrogatories:** IDENTIFY each PERSON who has had access to each ALLEGED TRADE SECRET, including (a) the ALLEGED TRADE SECRET each PERSON had access to; and (b) the date or dates each PERSON had this access.[95]

**Interrogatory No. 22, MGA's Second Set of Interrogatories:** STATE THE COMPLETE FACTUAL BASIS FOR YOUR CONTENTION that MGA misappropriated any ALLEGED TRADE SECRET.[96]

**Interrogatory No. 23, MGA's Second Set of Interrogatories:** STATE THE COMPLETE FACTUAL BASIS FOR YOUR CONTENTION that the ALLEGED TRADE SECRETS are protectable.[97]

**Interrogatory No. 28, MGA's Second Set of Interrogatories:** Describe in detail the complete factual basis for YOUR COUNTERCLAIMS including, without limitation all facts,

---

[94] See MGA's Second Set of Interrogatories, Hauler Dec., Exh. 6., at Interrogatory No. 20.

[95] See MGA's Second Set of Interrogatories, Hauler Dec., Exh. 6., at Interrogatory No. 21.

[96] See MGA's Second Set of Interrogatories, Hauler Dec., Exh. 6., at Interrogatory No. 22.

[97] See MGA's Second Set of Interrogatories, Hauler Dec., Exh. 6, at Interrogatory No. 23.

1    DOCUMENTS, and witnesses that REFER OR RELATE TO YOUR
2    COUNTERCLAIMS.[98]

3    **Interrogatory No. 29, MGA's Second Set of Interrogatories:**
4    Describe in detail any estimate or calculation of damage, loss, injury, or
5    unjust enrichment, by reason of any act or omission alleged in YOUR
6    COUNTERCLAIMS, that YOU have made or that has been made on
7    YOUR behalf or at YOUR request, including all facts, DOCUMENTS
8    or witnesses RELATING TO each estimate or calculation.[99]

9    In addition, Mattel shortly will serve responses to MGA's First Set of Phase  2
10   Interrogatories, which include:

11   **Interrogatory No. 5, MGA's First Set of Phase 2 Interrogatories:**
12   IDENTIFY ANY damages YOU contend YOU have suffered as a
13   result of the violation of the Racketeer Influenced and Corrupt
14   Organization Act alleged by YOU in the Second Counterclaim of
15   YOUR OPERATIVE COUNTERCLAIMS in THIS ACTION.[100]

16   **Interrogatory No. 6, MGA's First Set of Phase 2 Interrogatories:**
17   IDENTIFY ANY damages YOU contend YOU have suffered as a
18   result of the alleged MISAPPROPRIATION of trade secrets alleged by
19   YOU in the Fourth Counterclaim of YOUR OPERATIVE
20   COUNTERCLAIMS in THIS ACTION.[101]

21

22

23   [98]   See MGA's Second Set of Interrogatories, Hauler Dec., Exh. 6, at
     Interrogatory No. 28.
24   [99]   See MGA's Second Set of Interrogatories, Hauler Dec., Exh. 6, at
25   Interrogatory No. 29.
     [100]   See MGA's First Set of Phase 2 Interrogatories, Hauler Dec., Exh. 14, at
26   Interrogatory No. 5.
27   [101]   See MGA's First Set of Phase 2 Interrogatories, Hauler Dec., Exh. 14, at
     Interrogatory No. 6
28

1  Mattel will also answer additional interrogatories from MGA's First Set of Phase 2

2  Interrogatories that concern Mattel's trade secret claims and damages theories.  For

3  example:

4          **Interrogatory No. 3, MGA's First Set of Phase 2 Interrogatories:**

5          If your response to RFA No. 3 is anything other than an unqualified

6          admission, state for each MATTEL DOCUMENT that is a basis for

7          such response ANY facts that SUPPORT your response to RFA No. 3,

8          IDENTIFY ANY PERSONS with knowledge of such facts, and ANY

9          DOCUMENTS that REFER or RELATE to such facts.

10          **Interrogatory No. 6, MGA's First Set of Phase 2 Interrogatories:**

11          IDENTIFY ANY damages YOU contend YOU have suffered as a result

12          of the alleged MISAPPROPRIATION of trade secrets alleged by YOU

13          in   the   Fourth   Counterclaim   of   YOUR   OPERATIVE

14          COUNTERCLAIMS in THIS ACTION.

15          **Interrogatory No. 7, MGA's First Set of Phase 2 Interrogatories:**

16          IDENTIFY every MATTEL PRODUCT whose sales YOU contend

17          were harmed by MGA's sale of the Bratz line of dolls and products.

18          **Interrogatory No. 8, MGA's First Set of Phase 2 Interrogatories:**

19          IDENTIFY every MATTEL PRODUCT whose sales YOU contend

20          were harmed by ANY act or omission of MGA alleged in YOU [sic]

21          OPERATIVE COUNTERCLAIMS.

22      Mattel has devoted hundreds of hours to preparing answers and supplemental

23  answers to the interrogatories above[102] and served more than a thousand pages of

24  interrogatory responses to date.[103]  These responses disclose facts, documents and

25  

26     [102]  Searcy Dec. ¶ 2.

27     [103]  <u>See</u> Mattel's Responses and Supplemental Responses, Searcy Dec., Exhs.
16-21, 14.

28

1  witnesses relating to each of Mattel's claims -- and do so in far more detail than
2  Defendants have ever provided.[104]   The MGA Parties' latest interrogatories are
3  cumulative of those already answered.   The primary "new" aspect of these
4  interrogatories is that they contain dozens of subparts, requiring that Mattel re-write
5  and reformat its responses, yet providing little new information to MGA.

6       For example, MGA Mexico's Interrogatory Nos. 1-7 seek the same
7  information in a new format that already has been provided in response to other
8  interrogatories, such as Interrogatory Nos. 20-23 and 28 of MGA's Second Set of
9  Interrogatories.[105]   The new interrogatories on RICO issues seek the same
10  information responsive to Interrogatory Nos. 28 of MGA's Second Set of
11  Interrogatories and Interrogatory No. 5 of MGA's First Set of Phase 2
12  Interrogatories.[106] The interrogatories regarding Mattel's damages are cumulative of
13  Interrogatory Nos. 1-3 of MGA's First Set of Interrogatories and Interrogatory No.
14  29 of MGA's Second Set of Interrogatories.[107]   And two of MGA Mexico's and
15  MGA Hong Kong's interrogatories are not just cumulative of prior interrogatories
16  but are exact duplicates of one another -- MGA Mexico's Interrogatory No. 10 and
17  MGA Hong Kong's Interrogatory No. 11 are replicas of one another.[108]

18

19  [104]  See Mattel's Responses and Supplemental Responses, Searcy Dec., Exhs.
20  16-21, 14.
21  [105]  MGA's Second Set of Interrogatories to Mattel, Hauler Dec., Exh. 6, at
   Interrogatory Nos. 20-23 and 28.
22  [106]  MGA's Second Set of Interrogatories to Mattel, Hauler Dec., Exh. 6, at
23  Interrogatory No. 28; MGA's First Set of Phase 2 Interrogatories, Hauler Dec., Exh.
   14, at Interrogatory No. 5.
24  [107]  MGA's First Set of Interrogatories, Hauler Dec., Exh. 5, at Interrogatory
25  Nos. 1-3; MGA's Second Set of Interrogatories, Hauler Dec., Exh. 6, at
   Interrogatory No. 29.
26  [108]  MGAE de Mexico Interrogatory Nos. 1-11, Molinski Dec., Exh. 2, at
27  Interrogatory No. 10; MGA Hong Kong Interrogatory Nos. 1-25, Molinski Dec.,
   Exh. 1, at Interrogatory No. 11.
28

1    MGA claims in its motion at times that, notwithstanding the language of its
2    interrogatories, it merely seeks a "factual narrative" through these interrogatories.
3    Motion at 10.  Certainly if that is true, virtually all interrogatories are cumulative of
4    prior discovery.  Rewriting responses to interrogatories is not a simple task: it will
5    require Mattel attorneys to go through prior responses and pick which information is
6    responsive to the interrogatory, and parse through documents and other materials
7    even though this material has already been provided to MGA.[109]  The burden of
8    compliance is undue.

9    **C.    The Benefit Of The Interrogatories To The MGA Parties Is**
10        **Minimal.**

11        Any benefit to MGA Mexico and MGA Hong Kong from the
12    interrogatories is minimal when compared to the burden on Mattel of answering the
13    interrogatories.  There are several reasons for this.

14        First, MGA Mexico and MGA Hong Kong have served numerous
15    interrogatories that go well beyond any claims or facts related to those parties.  For
16    instance, of the 11 interrogatories propounded by MGA Mexico, only Interrogatory
17    Nos. 8 and 10 even arguably relate specifically to MGA Mexico.[110]  MGA Mexico
18    should not be allowed to claim the benefit of discovery related to facts and claims
19    that relate to other Defendants, especially since the whole basis of its claim of
20    entitlement to its own 25 interrogatories is that each of the Defendants is a separate
21    and distinct party.  Similarly, of the interrogatories propounded by MGA Hong
22    Kong, only *one* of 25 relates specifically to MGA Hong Kong, and several
23    specifically relate to other Defendants, including Isaac Larian and MGA Mexico.[111]

24

25        [109]  Searcy Dec. ¶ 2.
26        [110]  See MGAE de Mexico's Interogatory Nos. 1-11, Molinski Dec., Exh. 2.
27        [111]  See, e.g., MGA Hong Kong Interrogatory Nos. 1-25, Molinski Dec., Exh. 1,
        at Interrogatory Nos. 2, 11, 18 and 23.

28

MGA Hong Kong cannot claim any benefit from the interrogatories that flows to Defendants that it has explicitly stated should be treated as separate and distinct parties from itself.

Second, to the extent the interrogatories relate to the parties that actually served them, the interrogatories are still of minimal value in that they are cumulative of previously served interrogatories and the detailed allegations in and evidence attached to the TAAC, as explained above.[112]

Third, the highly detailed, granular sort of information about Mattel's RICO claims sought by the interrogatories is largely immaterial. RICO claims are about *patterns* of conduct; they are not prone to analysis in microscopic detail. See U.S. v. Browne, 505 F.3d 1229, 1260 (11th Cir. 2007) (defendant's argument "goes astray in its focus on the jury outcomes regarding individual predicate acts"); U.S. v. Williams, 203 Fed. Appx. 976, 988 (11th Cir. 2006) ("The focus is on the defendant's agreement to participate in the enterprise through the pattern of racketeering activity, not on any agreement to commit the individual predicate crimes."); Duttle v. Bandler & Kass, 1989 WL 31503, *3 (S.D.N.Y. March 27, 1989) ("A RICO plaintiff need not be the victim of each racketeering act alleged."); Goldman v. McMahan, Brafman, Morgan & Co., 706 F. Supp. 256, 262 (S.D.N.Y. 1989) ("The focus of the inquiry now centers on the pattern of activity requirement...."). The details MGA demands are, therefore, of minimal value.

To illustrate the disconnect, defendants seek, through these interrogatories, to have Mattel identify how each predicate act, one by one, proximately caused damages.[113] However, Mattel will not be required to prove

---

[112] See Mattel's Responses and Supplemental Responses, Searcy Dec., Exhs. 16-21, 14.; see also TAAC, Searcy Dec., Exh. 13.

[113] See, e.g., MGA Hong Kong's Interrogatory Nos. 10-23, Molinski Dec., Exh. 1.

1 proximate cause with respect to "every RICO predicate act" at summary judgment
2 or at trial.  See Virden v. Graphics One, 623 F. Supp. 1417, 1425 (C.D. Cal. 1985)
3 (explaining that plaintiff need not be injured by every predicate act, and plaintiff
4 only "must demonstrate a causal nexus between [plaintiff's] own injury" and either
5 "(i) a predicate act . . . or (ii) the pattern of racketeering activity"); see also Corley v.
6 Rosewood Care Center, 388 F.3d 990, 1004 (7th Cir. 2004) ("a plaintiff need not
7 demonstrate injury to himself from each and every predicate act making up the
8 RICO claim"); Town of Kearny v. Hudson Meadows Urban Renewal Corp., 829
9 F.2d 1263, 1268 (3d Cir. 1987) (plaintiff need only show "an injury directly
10 resulting from some or all of the activities comprising the violation"); Marshall &
11 Isley Trust Co. v. Pate, 819 F.2d 806, 810 (7th Cir. 1987) ("[o]ur research has
12 disclosed no case holding that a civil RICO plaintiff is precluded from recovering
13 damages because, while there was sufficient proof of an enterprise and a pattern of
14 racketeering activity, the plaintiff failed to show injury directly resulting from all the
15 predicate acts constituting the pattern"); Orlander v. Schwartz, 1996 WL 521429 at
16 *6 (S.D.N.Y. 1996) ("While plaintiffs need not allege that they were harmed by all
17 of each defendant's predicate acts, they must be harmed by at least some of them.").
18 MGA's demand that Mattel show its injuries on a predicate-act-by-predicate-act
19 basis in its interrogatory responses, and its other granular demands, is make work --
20 There is no requirement that Mattel do so.  RICO is about patterns of conduct, not
21 the granular details that MGA now seeks.

22         In addition, many of the interrogatories seek information that has no
23 bearing on any claim or defense, and therefore provide minimal or no benefit to
24 MGA Hong Kong and MGA Mexico.  For example, MGA Mexico's Interrogatory
25 No. 11 seeks "all facts" regarding the sources of information underlying any
26 allegation in the TAAC made upon information and belief, and inferences and

27
28

1   conclusions supporting such allegations.[114]   Such information is both privileged

2   work product and not relevant to the claims or defenses of any party; MGA is not

3   entitled to take discovery into Mattel's counsel's thought processes in making

4   allegations as this interrogatory would do.  In addition, many interrogatories contain

5   other patently irrelevant information, including their demands that Mattel link up

6   damages with each predicate act, one by one, see supra, and their demands that

7   Mattel state "all facts" regarding how it has calculated or estimated damages caused

8   by each predicate act, "and if [Mattel] has not [calculated such damages], why

9   not".[115]  This is not just overreaching; this is harassment.  It would be simply absurd

10   to require Mattel to state in an interrogatory response why it has not calculated

11   damages in a particular manner when (1) expert disclosures have not yet been made,

12   including damages expert disclosures, and (2) Mattel will not ever need to calculate

13   damages in the manner hypothesized by MGA because that is not how RICO

14   damages work.   The requested information, though burdensome to gather, is of

15   minimal benefit to anyone.

16       **D.**    **Interrogatory No. 9 Is Wholly Unjustified.**

17       MGA Mexico's Interrogatory No. 9 is fatally overbroad and burdensome.

18   This interrogatory reads:

19       IDENTIFY all communications since January 1, 2001, between MATTEL

20       and government entities (federal, state or local, domestic or foreign) regarding

21       alleged misconduct by MGA (or its subsidiaries, affiliates, agents, or

22       employees), and/or alleged misconduct by former MATTEL employees who

23       worked for MGA, including but not limited to the predicate acts and patterns

24

25   [114]   See MGA Mexico's Interrogatory Nos. 1-11, Molinski Dec., Exh. 2, at
Interrogatory No. 11.

26   [115]   See, e.g., MGA Hong Kong's Interrogatory Nos. 1-25, Molinski Dec., Exh.

27   1, at 1, 4-6, 10-23; MGAE de Mexico Interrogatory Nos. 1-11, Molinski Dec., Exh.
2, at Interrogatory No. 10.

28

1  of racketeering alleged in the Second and Third Counterclaims of the
2  TAAC.[116]

3  The burdens of compiling this information are tremendous, if doing so were even
4  possible. ███████████████████████████████████████████

5  ████████████████████████████████ [117] ████████████████

6  █████████████████████████████████████████████████████████

7  █████████████████████ [118]  This would require Mattel to identify all
8  communications with the Federal District Court in the present case, all
9  communications with the Court in the criminal action in Mexico, and so on.
10 Documenting communications from this case is nonsensical, and Mattel has already
11 produced pleadings and written communications with respect to the action in
12 Mexico.[119]

13    Further, the overbroad interrogatory does not even seek useful information: to
14 the extent it targets communications with law enforcement, it is duplicative of other
15 discovery with which Mattel has already complied.  The Discovery Master has
16 compelled Mattel to produce communications with law enforcement and documents
17 provided to law enforcement.[120]  Mattel has produced all such documents, which
18 provides more information than an interrogatory response listing "communications"
19 with "government entities."  See Fed.R.Civ.P. 26(b)(2)(C) (a court should limit the
20 extent of discovery if it determines that the discovery sought is unreasonably
21 cumulative or duplicative, or is obtainable from some other source that is more

22 _____

23 [116] See MGAE de Mexico Interrogatory Nos. 1-11, Molinski Dec., Exh. 2, at
24 Interrogatory No. 9.
25 [117] See Searcy Dec. ¶ 3.
   [118] Id.
26 [119] See Searcy Dec. ¶ 4.
27 [120] See Phase 2 Discovery Master Order No. 6, dated March 13, 2009, Hauler
   Dec., Exh. 22, at 18-19.
28

1   convenient, less burdensome, or less expensive; or the party seeking discovery has
2   had ample opportunity by discovery in the action to obtain the information sought.);
3   see also Discovery Master's Order Denying Mattel's Motion to compel Responses
4   to Interrogatory Nos. 27-33, 36-40, 42, 45 and 47 by Carter Bryant, dated February
5   20, 2008, Hauler Dec., Exh. 28, at 5:17-23 (denying motion to compel further
6   response to interrogatory where to the extent the interrogatory sought "relevant
7   information, that information is readily available through alternative less intrusive
8   sources", including produced documents).

9       Interrogatory No. 9 is also overbroad because it is not even tied to the
10   allegations in the TAAC. See Fed. R. Civ. P. 26(b)(1) (discovery available as to
11   matters "relevant to the claim or defense of any party."); see also Phase 2 Discovery
12   Order No. 3, dated March 10, 2009, Hauler Dec., Exh. 26, at 17:17-18:1 (discovery
13   denied where Mattel "failed to demonstrate a relationship" between Mattel's
14   operative pleadings and the discovery sought). Interrogatory No. 9 seeks
15   communications regarding misconduct "including **but not limited to** the predicate
16   acts and patterns of racketeering alleged in the Second and Third Counterclaims of
17   the TAAC."[121] Thus, by the very text of the Interrogatory, it seeks discovery
18   beyond matters "relevant to the claim or defense of any party." The interrogatory is
19   apparently designed to assist MGA in a fishing expedition for new claims. As the
20   Discovery Master has held, a party may not propound discovery in that matter.[122]
21   Rivera v. NIBCO, Inc., 364 F.3d 1057, 1072 (9th Cir. 2004) ("District courts need
22   not condone the use of discovery to engage in 'fishing expeditions.'"). And the
23   interrogatory is also overbroad as to time. It seeks communications from January 1,

24

25   [121]  MGAE de Mexico Interrogatory Nos. 1-11, Molinski Dec., Exh. 2, at
     Interrogatory No. 9 (emphasis added).
26   [122]  Discovery Master Order Granting in Part and Denying in Part Mattel's
27   Motion for Protective Order Regarding Polly Pocket Documents, dated April 19,
     2007, Hauler Dec., Exh. 23 at 5:10-18.
28

1  2001 to present, but MGA Mexico makes no showing as to how communications
2  over this eight-year period are material.

3      Over the past months, MGA has been engaged in what could only be
4  described as a witch hunt, accusing Mattel of corrupting foreign officials based on a
5  handful of toy cars.[123]  Recently, MGA even tried to assert that the toy cars
6  constituted evidence that Mattel had violated the Foreign Corrupt Practices Act.[124]
7  After MGA's counsel cross-examined Mr. De Anda for more than an hour about the
8  incident, the Court found nothing "improper regarding [Mr. De Anda's] actions as
9  they were not subjectively intended as an attempt to influence, nor were they even
10  marginally likely to influence, an ongoing investigation."[125]  Indeed, the Court
11  stated that MGA's accusations of bribery were "much about nothing."[126]  MGA
12  should not be permitted to waste more of Mattel's resources on a non-event.

13  **III.  THE MGA PARTIES' CONTENTION INTERROGATORIES DEPEND**
14        **ON DISCOVERY DEFENDANTS HAVE YET TO PROVIDE AND**
15        **EXPERT OPINIONS THAT CANNOT BE REACHED UNTIL**
16        **DEFENDANTS DO SO.**

17      The interrogatories at issue in the MGA Parties' motion seek all facts, persons
18  and documents relating to Mattel's trade secret and RICO claims.  But MGA and
19  related parties have hamstrung Mattel's attempts to obtain those very facts -- most
20  of which are exclusively in their possession.  Mattel's objections on these grounds
21  and others are valid, and should not be overruled.

22

23  _____

24    [123]  Mattel, Inc.'s *Ex Parte* Application for Limited Reconsideration of Order No.
25  62, dated September 14, 2009, Searcy Dec., Exh. 8.
  [124]  Id.
26    [125]  Court's Order, dated September 22, 2009, Hauler Dec., Exh. 24, at 1.
  [126]  Hearing Transcript, dated September 22, 2009, Hauler Dec., Exh. 46, at
27  82:25-83:1.
28

-46-

A.   **The MGA Parties Have Failed to Provide the Discovery Necessary to Respond to Contention Interrogatories.**

Mattel properly objected to the discovery requests at issue on the basis that "they seek the disclosure of information or documents that are in the possession, custody and control of independent parties over whom Mattel has no control, including defendants, or are publicly available and hence equally available to all parties to this litigation."[127]

"Due to the nature of contention interrogatories, they are more appropriately used after a substantial amount of discovery has been conducted—typically, at the end of the discovery period." Capacchione v. Charlotte-Mecklenburg Schools, 182 F.R.D. 486, 489 (citing Fed.R.Civ.P. 33(c); McCarthy v. Paine Webber Group, Inc., 168 F.R.D. 448, 450 (D. Conn. 1996); Nestle Foods Corp. v. Aetna Casualty & Sur. Co., 135 F.R.D. 101, 110-11 (D.N.J. 1990)).  Here, the Court has just vacated the pending pretrial conference and trial dates for Phase 2 and extended the discovery cutoff to June 1, 2010 -- eight months from now.[128]   To date, Defendants' stonewalling and obstructionism have prevented Mattel from obtaining discovery regarding the parties' claims and defenses.  Numerous examples illustrate MGA's and related parties' stonewalling, and its impact on the state of Mattel's knowledge in this case:

---

[127]   See, e.g., Mattel's Responses to MGA Mexico's Interrogatory Nos. 1-11, Molinski Dec., Exh. 3, at 2:3-7; see also Mattel's Responses to MGA Hong Kong's Interrogatory Nos. 1-25, Molinski Dec., Exh. 4, at 3:3-7.

[128]   See Court's Order, dated September 22, 2009, Hauler Dec., Exh. 24, at 2.

-47-

MATTEL, INC.'S OPPOSITION TO MOTION TO COMPEL

- <u>MGA Mexico And MGA Canada Refuse To Produce Documents Or Witnesses:</u>
  - o Until September 16, 2009, MGA Mexico had not produced a single page of documents even though it is a named defendant and figures centrally in Mattel's Phase 2 claims.[129]
  - o MGA Canada and Janine Brisbois have yet to produce documents nor appear for deposition, even though Mattel first moved prior to Phase 1 trial for the issuance of a letter of request for the depositions and production of documents by each.[130]
  - o Mattel noticed the depositions of Pablo Vargas and Mariana Trueba on the day after the discovery stay was lifted. MGA Mexico refused to produce these witnesses, arguing they are mere low- or mid-level employees of MGA Mexico -- rather than managing agents -- and that the Court had no jurisdiction to require them to appear. Mattel has initiated the process to seek their depositions through the issuance of a letter of request.[131]

---

[129]   <u>See</u> Mattel, Inc.'s Notice of Motion and Motion to Compel Production of Documents and Things in Response to Mattel, Inc.'s First Set of Requests for Documents and Things to MGAE de Mexico, S.R.L. de C.V., dated July 15, 2009, Searcy Dec., Exh. 10, at 1; <u>see also</u> Letter from William Molinski to Marshall Searcy, dated September 15, 2009, Hauler Dec., Exh. 44, at 1.

[130]   MGA's Preliminary Response to Mattel's Motion for Letters of Request, dated February 15, 2008, Hauler Dec. Exh. 34.

[131]   <u>See</u> Phase 2 Discovery Master Order No. 52, dated August 26, 2009, Hauler Dec., Exh. 35, at 35 (granting Mattel's Motion for Issuance of Letters of Request for Vargas and Trueba).

- MGA And Its Related Parties Have Stonewalled On Financing Documents:

  o Despite the fact that Mattel first served subpoenas on Omni 808 Investors LLC, Omninet LLC, Vision Capital LLC more than six months ago and the Discovery Master has since compelled these parties via multiple orders to produce responsive documents, each entity's production is still woefully incomplete. For example, Vision Capital has produced a total of 149 pages, featuring an outdated MGA sales presentation; its production contains not one reference, much less any supporting documents, evidencing the transfer of the $10 million allegedly provided by Vision Capital to Omni 808 to fund the acquisition of the Wachovia debt. Supposedly Vision Capital got this money from Lexington, but there is also not a single document, check, wire transfer, or even an e-mail referencing any relationship between Vision and Lexington, much less a $10 million relationship.[132]

  o Mattel subpoenaed Neil Kadisha, Leon Neman and Fred Mashian to appear for deposition six months ago, but each successfully evaded being deposed until the last few weeks. Even once they appeared, each improperly refused to answer questions on basis other than privilege.[133]

  o Two days after the Phase 2 stay was lifted, Mattel propounded Requests to both MGA and Larian seeking information related to

---

[132] Id.

[133] See Deposition of Leon Neman, dated August 14, 2009, Searcy Dec., Exh. 3, at 215:13-216:4; see also Letter from Michael Zeller to Todd Gordinier, dated September 4, 2009, Hauler Dec., Exh. 36; email correspondence from Scott Kidman to Peter Villar, dated September 22, 2009, Hauler Dec., Exh. 38.

1    the financial transactions.[134]   Even though MGA and Larian
2    objected to each and every Request, and refused to produce any
3    documents in response,[135] they nevertheless sought to assist Omni's
4    stonewalling by repeatedly representing to the Discovery Master in
5    March that Mattel could get all the documents relating to the
6    financial transactions from them instead of the Omni parties.[136]
7    Despite those representations, MGA and Larian still have not
8    produced a single page of such documents to date.

- MGA And Related Parties Further Evade Phase 2 Discovery:

    o  At each of their Court-ordered depositions, MGA executive and
       named defendant Carlos Gustavo Machado and MGA manager
       Jorge Castilla invoked the Fifth Amendment throughout.[137]

    o  MGA refused to allow any additional time to depose Isaac Larian
       and Ron Brawer regarding Mattel's Phase 2 claims -- despite the
       fact that both are critical Phase 2 witnesses whose names appear on
       hundreds of thousands of documents.   The Discovery Master

---

[134]  See Mattel, Inc.'s First Set of Requests for Document and Things to Isaac Larian (Phase 2), dated January 8, 2009, Hauler Dec., Exh. 39; Mattel, Inc.'s First Set of Requests for Document and Things to MGA Entertainment, Inc. (Phase 2), dated January 8, 2009, Hauler Dec., Exh. 40.

[135]  See, e.g., Responses to Requests for Documents and Things to MGA Entertainment, Inc. (Phase 2), dated February 6, 2009, at Request Nos. 17 (documents relating to any transfer of items of value to IGWT Group, LLC); 27 (documents relating to agreements between MGA and Vision Capital); 28-30 (documents sufficient to identify owners of IGWT Parties and Omni), Hauler Dec., Exh. 41.

[136]  March 4, 2009 Hearing Transcript, at 84:6-7, Hauler Dec., Exh. 42.

[137]  See Deposition of Carlos Gustavo Machado, dated October 14, 2008, Searcy Dec., Exh. 7; see also Deposition of Jorge Castilla, dated October 22, 2008, Searcy Dec., Exh. 11.

1            granted Mattel's motions to compel more time with both Larian and

2            Brawer, but they have not yet been deposed further.[138]

3        Based on MGA's and related parties' stonewalling, Mattel properly objected

4 to the discovery requests at issue as premature. Mattel's objection should be upheld.

5       **B.**     **The Discovery At Issue Seeks Information That Is The Subject Of**

6              **Expert Testimony.**

7        Similarly, Mattel properly objected that the MGA Parties' interrogatories call

8 for expert discovery. <u>New Haven Temple SDA Church v. Consolidated Edison</u>

9 <u>Corp.</u>, 1995 WL 358788, at *5 (S.D.N.Y. June 13, 1995) (sustaining objections to

10 interrogatory because "[t]o the extent that the theories of damages applicable to

11 these claims may be related to the damages sought by plaintiff's fourth claim, the

12 interrogatory is premature"); <u>Ziemack v. Centel Corp.</u>, 1995 WL 729295, at *2-3

13 (N.D. Ill. Dec. 7, 1995) (granting in part motion to compel interrogatory responses

14 but noting that "this Court does not expect Plaintiffs to address the issues that will

15 be more appropriately dealt with by experts, at a later date" and "[s]ince experts

16 have not been either retained or deposed, much of the remaining discovery is also

17 premature.").    Indeed, the Discovery Master ruled previously "[t]hat the

18 interrogatory responses include a reservation of rights to supplement during expert

19 discovery does not render the responses inherently improper or inadequate."[139]

20        Many of the interrogatories at issue here go to Mattel's damages theories. For

21 instance, MGA HK's Interrogatory No. 4 seeks detailed information regarding

22

---

23     [138]   <u>See</u> Phase 2 Discovery Master Order No. 56, dated September 3, 2009,

24 Searcy Dec., Exh. 2, at 52; <u>see also</u> Phase 2 Discovery Master Order No. 63, dated

25 September 11, 2009, Searcy Dec., Exh. 12, at 14.
    [139]   <u>See</u> Order Granting in Part and Denying in Part Mattel's Motion to Compel

26 Responses To Interrogatory Nos. 27-44 and 46-50 By The MGA Parties, dated

27 February 15, 2008, Hauler Dec., Exh. 43, at 13:8-9; <u>see also</u> Phase 2 Discovery
Master Order No. 56, dated September 3, 2009, Searcy Dec., Exh. 2, at 31.

28

1   damages and causation, including work product information that will be the subject
2   of expert opinion:

3   **MGA Hong Kong Interrogatory No. 4:**

4            As to each injury to its business or property which
5       MATTEL claims was proximately caused by the actions and/or
6       omissions alleged in the Second and Third Counterclaims of the
7       TAAC:

8                (a)     state all facts regarding the precise nature and type
9       of that injury;

10               (b)     state all facts regarding the RICO predicate act(s)
11      and/or pattern of racketeering that proximately caused that injury;

12               (c)     IDENTIFY which PERSONS employed by or
13      associated with which RICO enterprises committed the RICO predicate
14      act(s) and/or pattern of racketeering that proximately caused that injury;

15               (d)     state all facts regarding how MATTEL has
16      calculated or estimated the monetary damages for that injury (and if it
17      has not, why not); and

18               (e)     IDENTIFY all PERSONS MATTEL believes have
19      knowledge of the information requested in this Interrogatory.

20      A causation analysis is required to respond to interrogatories such as this, and
21  that is an area suited for expert analysis. See American Booksellers Ass'n, Inc. v.
22  Barnes & Noble, Inc., 135 F.Supp.2d 1031, 1042 (N.D. Cal. 2001) ("only expert
23  testimony can demonstrate that any injury to plaintiffs was caused by defendants'
24  unlawful conduct"); see also Cabrera v. Cordis Corp., 134 F.3d 1418, 1423 (9th Cir.
25  1998) (affirming grant of summary judgment in product liability action because
26  without expert testimony, plaintiff "could not prove causation or liability"); Claar v.
27  Burlington Northern R. Co., 29 F.3d 499, 504 (9th Cir. 1994) (expert testimony
28  necessary to establish causation required by FELA); Sanderson v. International

07975/3132950.1

-52-

1  Flavors and Fragrances, Inc., 950 F.Supp. 981, 985 (C.D. Cal. 1996) (expert
2  testimony required to establish causation in personal injury action).  Before Mattel
3  can determine and disclose precisely all the harm it has suffered as a result of
4  MGA's wrongdoing, the MGA Parties need to stop stonewalling as to information
5  essential to define that wrongdoing.  In any case, expert analyses are not yet due.
6  Thus, even if the Discovery Master finds that the MGA Parties have not exceeded
7  its interrogatory limit, the Discovery Master should still uphold Mattel's objection
8  on this ground, consistent with his prior rulings.

9  **IV.  MATTEL HAS NOT WAIVED ITS PRIVILEGE OBJECTION.**

10       The MGA Parties assert, without citing any authority, that Mattel's privilege
11  objection "was waived by Mattel's failure to produce a privilege log."[140]  This
12  specious claim has already been rejected by the Discovery Master.  As the
13  Discovery Master stated in Order No. 56:



[141]

23  The Discovery Master also rejected an identical argument by MGA in Order No.
24  58.[142]  That the MGA Parties insist on repeating this argument once again does not

26  [140]  Motion at 17.
27  [141]  Phase 2 Discovery Matter Order No. 56, Searcy Dec., Exh. 2, at 33.
    [142]  Phase 2 Discovery Matter Order No. 58, Molinski Dec., Exh. 9, at 9-10.

1 || make it correct.  The same principles at work in Order Nos. 56 and 58 apply here.
2 || Mattel has not waived its privilege objections, and, as evidenced by MGA's
3 || transparent demands for Mattel's work product, see, e.g., MGA Hong Kong
4 || Interrogatory No. 4 part (d), the objections are proper.

5 || **V.     THE IMPOSITION OF SANCTIONS AGAINST MATTEL IS**
6 || **UNWARRANTED.**

7 ||     MGA Hong Kong and MGA Mexico request in a conclusory fashion that
8 || Mattel be sanctioned without citing to any authority or evidence.  Sanctions against
9 || Mattel are not justified under any standard.  Fed. R. Civ. P. 37 provides for
10 || monetary sanctions only if (1) the movant has not made a good faith effort to obtain
11 || the disclosure or discovery without court action; (2) the losing party was not
12 || substantially justified in making or opposing the motion; (3) other circumstances do
13 || not make an award of expenses unjust.  See Fed. R. Civ. P. 37(a)(5).  In the instant
14 || case, Mattel is substantially justified in opposing MGA's motion.  There is simply
15 || no basis for sanctions,[143] and MGA's request for sanctions should be denied.

16
17
18
_____

19 [143]   Under 28 U.S.C. § 1927, sanctions may be imposed only where there is "a finding that counsel has acted in 'subjective bad faith,' that is, has knowingly or
20 recklessly raised a frivolous argument or has raised a meritorious argument solely to harass the opposing party." Armstrong v. Church of Scientology Intern., 2000 WL
21 1681044, at *2 (9th Cir. 2000) (citations omitted).  "Unreasonably and vexatiously"
22 require a showing of intent, recklessness, or bad faith. Barnd v. City of Tacoma, 664 F.2d 1339, 1343 (9th Cir. 1982); see also United States v. Austin, 749 F.2d
23 1407, 1408 (9th Cir. 1984); Bankston v. Vallejo City Unified School Dist., 2
24 Fed.Appx. 817, 818 (9th Cir. 2001) ("Because a frivolous argument is insufficient to support an award of sanctions under 28 U.S.C. § 1927, we deny defendants'
25 request."). Exercise of the court's inherent power to award sanctions for bad faith is
26 only justified where the lawyer or party "acted in bad faith, vexatiously, wantonly or for oppressive reasons." Wilson v. PFS, LLC, 2008 WL 789898, at *5 (S.D. Cal.
27 2008).  Clearly, no such showing can be made here.
28

07975/3132950.1

MATTEL. INC.'S OPPOSITION TO MOTION TO COMPEL

1

## **Conclusion**

2    For the reasons set forth above, Mattel respectfully requests that the

3  Discovery Master deny this motion in its entirety.

4

5  DATED:  October 1, 2009              QUINN EMANUEL URQUHART OLIVER &
                                        HEDGES, LLP
6

7                                       By_____
8                                          Marshall M. Searcy
                                           Attorneys for Mattel, Inc.
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07975/3132950.1

-55-