THOMAS J. NOLAN (Bar No. 66992)
(tnolan@skadden.com)
JASON D. RUSSELL (Bar No. 169219)
(jrussell@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071-3144
Tel.: (213) 687-5000/Fax: (213) 687-5600

Attorneys for Counter-Defendants,
MGA ENTERTAINMENT, INC., ISAAC LARIAN,
and MGA ENTERTAINMENT (HK) LIMITED

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, <br><br> Plaintiff, <br><br> v. <br><br> MATTEL, INC., a Delaware corporation, <br><br> Defendant. <br><br> AND CONSOLIDATED CASES. | CASE NO. CV 04-9049 DOC (RNBx) <br> Consolidated with Case No. 04-9059 and Case No. 05-2727 <br> Honorable David O. Carter <br><br> **BEFORE THE MONITOR** <br> **PER COURT ORDER** <br><br> *[PUBLIC REDACTED]* MGA PARTIES' RESPONSE TO MATTEL, INC.'S SUBMISSION REGARDING THE SCOPE OF THE COURT-ORDERED RECALL; <br><br> **FILED UNDER SEPARATE COVER:** <br><br> SUPPLEMENTAL DECLARATION OF JASON D. RUSSELL IN SUPPORT THEREOF. <br><br> DATE: October 12, 2009 <br> TIME: 9:30 a.m. |

1

# **TABLE OF CONTENTS**

2  TABLE OF AUTHORITIES ....................................................................................... ii

3  PRELIMINARY STATEMENT ................................................................................ 1

4  ARGUMENT ............................................................................................................. 3

5  I.  THE CHARACTER ART, CHARACTERS, AND LOGO DO NOT
6     FALL UNDER THE PERMANENT INJUNCTION ORDER .......................... 3

7     A.  The Logo Is Not Enjoined Art .................................................... 4

8     B.  Only Core Female Bratz Character Art Is Enjoined ................................. 7

9     C.  The Enjoined Characters Are More Than Just Names ........................... 10

10 II.  THERE IS NO BASIS FOR THE EXPANSION OF THE DECEMBER
      3, 2008 ORDERS ............................................................................................ 12

11    A.  The May 21, 2009 Order Does Not Authorize The Monitor To
12       Expand The Scope Of The December 3, 2008 Orders ........................... 12

13    B.  ███████████████████████████ ............................................... 13

14 CONCLUSION ....................................................................................................... 16

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

## CASES

A.V. by Versace, Inc. v. Gianni Versace S.p.A.,
    87 F. Supp. 2d 281 (S.D.N.Y. 2000) .............................................................. 3

In re Baldwin-United Corp.,
    770 F.2d 328 (2nd Cir. 1985) ......................................................................... 3

CyberMedia, Inc. v. Symantec Corp.,
    19 F. Supp. 2d 1070 (N. D.Cal. 1998)..................................................... 14-15

Iconix, Inc. v. Tokuda,
    457 F. Supp. 2d 969 (N.D. Cal. 2006)......................................................... 15

NBA Properties, Inc. v. Gold,
    895 F.2d 30 (1st Cir. 1990)............................................................................ 3

Primavera Laboratories, Inc. v. Elizabeth Arden Co.,
    NO. 93 CIV. 4793 (CSH),
    1993 WL 319214 (S.D.N.Y. Aug. 13, 1993) .............................................. 14

Sierra Club v. Callaway,
    499 F.2d 982 (5th Cir. 1974) .......................................................................... 3

U.S. v. Holtzman,
    762 F.2d 720 (9th Cir. 1985) .......................................................................... 3

1

## PRELIMINARY STATEMENT

2    In their Statement of Position Regarding Scope Of Existing Product Recall And
3 Impoundment ("MGA's Opening Brief"), the MGA Parties established that Mattel should
4 not be permitted to read a recall into the Constructive Trust Order and thus must rely on the
5 provisions of the Permanent Injunction Order alone if a recall of Bratz-branded products is
6 to be ordered. Not surprisingly, Mattel concedes that it can find no recall in the
7 Constructive Trust Order. Therefore, it argues that either the reach of the Permanent
8 Injunction Order should be extended far beyond what Mattel originally asked for and what
9 the Court granted, or that the Monitor should, under the auspices of the Court's May 21,
10 2009 Order appointing him, issue a recall of his own beyond what the Court ordered. The
11 former is foreclosed from a plain reading of the Permanent Injunction Order and application
12 of basic interpretation principles, and the latter is indisputably beyond the authority of the
13 Monitor to do.[1]

14    In its Submission To The Monitor Regarding Scope Of Court-Ordered Recall
15 ("Mattel's Opening Brief"), Mattel argues first that the Permanent Injunction Order should
16 be read to include the Non-Recalled Bratz Products because it enjoins the use of the Bratz
17 logo, assorted character art, and any doll or drawing associated with the name Yasmin,

18 ───────────────
[1]    The MGA Parties continue the abbreviations from their Opening Brief for Mattel's Mattel's
19 Motion For Permanent Injunction (Dkt 4319) ("Permanent Injunction Motion"), [Proposed] Order
20 Granting Mattel, Inc.'s Motion For Permanent Injunction (Dkt 4316) ("Proposed Permanent
   Injunction Order"), Court's Omnibus Order (Order Finding In Favor Of Mattel As To The MGA
21 Parties' Affirmative Defenses; Order Granting Mattel's Motion For Declaratory Judgment; Order
   Granting Mattel's Motion For Constructive Trust And § 17200 Injunctive Relief; Order Granting
22 Mattel's Motion For Permanent Injunction; Order Denying As Moot Motion To Strike Portions Of
   Hutnyan Declarations And Exhibits Thereto; Order Denying Motion To Strike The Proctor, Keiser,
23 And Hollander Declarations, etc.) (Dkt 4439) ("Dec. 3 Omnibus Order), Order Granting Mattel,
24 Inc.'s Motion For Permanent Injunction (Dkt 4443) ("Permanent Injucntion Order"), and Order
   Granting Mattel's Motion For Constructive Trust And For Finding Liability And Injunctive Relief
25 Pursuant To Cal. Bus. & Prof Code § 17200 (Dkt 4441) ("Constructive Trust Order"). All
26 documents cited in their Opening Brief are exhibits to the Declaration of Jason D. Russell in
   support thereof. New documents are included in the Supplemental Declaration of Jason D. Russell
27 (Supp. Russell Dec.) filed concurrently with this submission and are numbered consecutively with
28 the original declaration.

1

MGA Parties' Response To Mattel, Inc.'s Submission Regarding The Scope Of The Court-Ordered Recall
Case No. CV 04-9049 DOC (RNBx)

1  Sasha, Cloe, or Jade.[2]  However, neither the language of the Permanent Injunction Order –
2  that Mattel itself proposed – nor Mattel's own motion support this interpretation.  And even
3  if there were ambiguous language to support such an interpretation – there is not – the
4  language of injunctions is to be narrowly construed against Mattel.  Mattel's Permanent
5  Injunction Motion contains no reference to the Bratz logo – only the "hero shot" of the four
6  characters based on Carter Bryant's drawings.  (See infra I.A.)  Moreover, while Mattel was
7  certainly aware of the existence of the Non-Recalled Bratz Products for months (if not years)
8  before drafting its Permanent Injunction Motion, it included no exemplars of character art
9  depicting the younger and/or non-infringing products in its request for relief.  (See infra I.B.)
10  Finally, Mattel's Permanent Injunction Motion sought only to enjoin representations of the
11  teenage "characters" created by Carter Bryant – not any doll with the name Sasha, Yasmin,
12  or Cloe.  (See infra I.C.)  Simply put, despite its burden to do so, Mattel failed to establish
13  that the Permanent Injunction Order applies to the products it seeks to recall here.

14      In an effort to shore up its flawed manipulation of the Permanent Injunction Order,
15  Mattel offers an interpretation of the May 21 Order Re Expiration Of Temporary
16  Receivership And Order Appointing MGA Monitor (Supp. Russell Dec. Ex. 17) (the "May
17  21 Order") wholly at odds with the Court's language (and indeed, contrary to the Court's
18  explicit instructions) to support its absurd position that the Non-Recalled Bratz Products are
19  subject to recall.  (See infra II.A.)  And finally, Mattel lamely insists it will be harmed by
20  the retailers' continued sale of the Non-Recalled Bratz Products.

---

[2]  The MGA Parties defined the "Non-Recalled Bratz Products" in their Opening Brief as "MGA manufactures and sells numerous products bearing the name "Bratz" which are not derived from the copyrights awarded Mattel, such as Bratz Kidz, Bratz Lil Angelz, Lil Bratz, Bratz Babyz, and Bratz Boyz" (MGA's Opening Br. at 5).

*(cont'd)*

1

2    (See infra II.B.)  Thus, Mattel's arguments

3   seeking to impermissibly expand the scope of the recall should be rejected out of hand.

4                                    **ARGUMENT**

5   **I.    THE CHARACTER ART, CHARACTERS, AND LOGO DO NOT FALL**
       **UNDER THE PERMANENT INJUNCTION ORDER**

6

7        Because "Rule 65(d) requires the language of injunctions to be reasonably clear so

8   that ordinary persons will know precisely what action is proscribed," the Ninth Circuit has

9   made clear that "**all ambiguities or inconsistencies [in an injunction] are resolved in**

10  **favor of the person subject to the injunction.**"  United States v. Holtzman, 762 F.2d 720,

11  726 (9th Cir. 1985) (emphasis added); see also MGA's Opening Br. at 12 (collecting cases).

12  These concerns militate a narrow reading of injunction orders, as "an injunction does not

13  prevent acts which are not within its terms as reasonably construed."  Sierra Club v.

14  Callaway, 499 F.2d 982, 991 (5th Cir. 1974); see also NBA Props., Inc. v. Gold, 895 F.2d

15  30, 32, 34 (1st Cir. 1990) (noting that "[w]e must decide the issue in this case in light of

16  unbroken lines of authority that caution us to read court decrees to mean rather precisely

17  what they say"); In re Baldwin-United Corp., 770 F.2d 328, 339 (2nd Cir. 1985) ("To the

18  extent that there is any doubt we will construe the injunction narrowly").[4]

19       Despite this clear mandate, Mattel would have the Permanent Injunction Order issued

20  in this case construed **broadly** to apply not merely to the works that were put forth in

21  Mattel's Motion, considered by the Court, and appear in the Order itself, but also to works

22

23

24  [4]   As discussed in MGA's Opening Brief, this is particularly true because "the Court must

25  construe any possible ambiguity [in] the [] injunction against [Mattel], as it was the one that 'drew
    the order, chose the language, and presented it to the judge for approval.'  Under the general rule

26  that a writing should be construed against its drafter, had [Mattel] truly wanted such activity
    prohibited, it could easily have proposed and drafted an order that explicitly forbid it."  A.V. by

27  Versace, Inc. v. Gianni Versace S.p.A., 87 F. Supp. 2d 281, 291-92 (S.D.N.Y. 2000) (emphasis

28  added) (citation omitted); see also MGA'S Opening Br. at 12-14 (collecting cases).

1   that Mattel never asked the Court to consider and that are reflected nowhere in the Order.

2   By loosely characterizing its additions to the scope as Bratz "artwork" or "characters,"

3   Mattel attempts to insert ambiguity into the Permanent Injunction Order and then interpret

4   that ambiguity to its advantage.[5]   As demonstrated above, however, any ambiguities

5   (whether created by Mattel now or when it drafted its Proposed Permanent Injunction Order)

6   should be interpreted in favor of <u>limiting</u> the reach of the Permanent Injunction, not

7   expanding it.  If Mattel did not ask for what it wanted, it cannot fix that error now.

8          A.     **The Logo Is Not Enjoined Art**

9          Forced to concede that the word Bratz cannot be covered by the Permanent Injunction

10  Order, Mattel has concocted a novel theory to bring the Bratz name into the scope of the

11  Permanent Injunction Order.  It has decided to claim that the Bratz logo (that is, the word

12  "BRATZ" in block letters pressed together and slightly out of alignment, with a halo over

13  the "R") infringes Mattel's copyrights, and that the logo is part of the enjoined "artwork"

14  referenced in Paragraph 1(e) of the Permanent Injunction Order.  (Mattel's Opening Br. at

15  6-7.)  The obvious – and fatal – problem with this newly-minted theory is that Mattel did

16  not present it to the Court when it sought its Permanent Injunction, and the Court never

17  found that the Bratz logo that MGA created was substantially similar to anything Mattel

18  owns.[6]

19  _____

20  [5]     Indeed, Mattel's overreaching is almost laughable when Mattel triumphantly announces in
     its Opening Brief that the Bratz Boyz are enjoined because sample Bratz Boyz products are
21  included at pages 521-22 in Exhibit 5 to the Permanent Injunction Order, and the Permanent
     Injunction Order enjoins the production and sale of "[a]ny doll or portion of a doll shown in
22  Exhibits 5 to 6[.]"  (Mattel's Opening Br. at 6; Permanent Injunction Order ¶ 1(d) (emphasis
     added).)  Sadly, whether out of an intention to mislead the Monitor or simply gross negligence,
23  Mattel failed to examine its own cited pages closely – if it had, it would have seen that the <u>dolls</u>
     depicted at the cited pages are, in fact, <u>female</u> core fashion dolls on motorcycles, and <u>not</u> Bratz
24  Boyz dolls created from an independent, non-infringing sculpt.  (<u>Compare</u> Permanent Injunction
     Order Ex. 5 at 521-22 (Supp. Russell Dec. Ex. 18) with Zeller Decl. Ex. 25 (images of Bratz Boyz
25  doll).)  Since the Order only enjoins the "doll" depicted on those pages, Mattel has no basis for its
26  assertion that the male Bratz Boyz <u>dolls</u> are enjoined pursuant to the Order.
27  [6]     As the MGA Parties demonstrated in their Opening Brief, a single word like "Bratz" is not
28  copyrightable and therefore could not be included in Mattel's copyright-based Permanent
                                                                                    *(cont'd)*

4

MGA Parties' Response To Mattel, Inc.'s Submission Regarding The Scope Of The Court-Ordered Recall
Case No. CV 04-9049 DOC (RNBx)

1   In its Dec. 3 Omnibus Order, the Court described the substantial similarity analysis it
2   undertook in support of the Permanent Injunction Order, which focused entirely on the
3   Bratz dolls, and did not make even a passing reference to the Bratz logo:

4   The Court has carefully examined each of the exhibits attached to the proposed
5   preliminary injunction, as well as the actual exhibits being stored in Courtroom
6   Four of the U.S. Courthouse in Riverside, and finds that the dolls depicted in Exs.
7   3 and 4, and the products depicted in Exs. 5 and 6, are, pursuant to the standard
8   set forth in the Court's Orders dated July 24, 2008, and August 15, 2008,
9   substantially similar to Mattel's registered copyrighted drawings and are
10   embodiments of the sculpts depicted in Exs. 1 and 2.  In doing so, the Court has
11   first examined the specific expressive elements of the works at issue and has
12   compared them to those found in the exhibits referenced above, and the Court has
13   then further examined the overall similarity of the expression in various works
14   from the perspective of the ordinary observer. Although the Court recognizes that
15   there are differences between the works, the Court ultimately finds that those
16   dolls and products set forth in the above-referenced exhibits are substantially
17   similar to Matters registered copyrighted drawings and are embodiments of the
18   sculpts depicted in Exs. 1 and 2. Especially important to the Court's conclusion is
19   the consistency of the particularized expression of the dolls' heads, lips, eyes,
20   eyebrows, eye features, noses, as well as the particularized expression of certain
21   anatomical features relative to others (most notably the doll lips, doll eyes, doll
22   eyebrows, and certain other doll eye features) and de-emphasis of certain
23   anatomical features (most notably the minimalized doll nose and thin, small doll
24   bodies).  Also important to the Court is the particularized, synergistic compilation
25   and expression of the human form and anatomy that quite clearly expresses a
26   unique style and conveys a distinct look or attitude, especially as perceived by the

27

28   Injunction Motion.  (MGA's Opening Br. at 6-7.)

1    intended consumer market (7-12 year old girls).  The evidence on this latter point

2    is particularly compelling, supported by both analytical and market analysis.

3    Together, these features clearly give each of the dolls the particularized

4    expression to which the Court referred in its July 24, 2008, and August 15, 2008,

5    Orders.

6  (Dec. 3 Omnibus Order at 10-11.)  The fact that Court did not address the logo is not

7  surprising, as Mattel's Motion for Permanent Injunction did not raise the issue.

8       To the extent that Mattel addressed the artwork on the Bratz packaging, it had a

9  singular focus:  the Bratz "hero shot."  The hero shot is character art depicting the original

10 four core female fashion dolls.  In its Motion for Permanent Injunction, Mattel claimed:

11     MGA's packaging also infringes Mattel's rights when it features elements that

12     belong to Mattel.  The jury's findings establish that Mattel owns the hero shot

13     drawing, [see TX 774] which MGA concedes is featured on the Bratz packaging

14     [see TX 504].  Packaging that consists of little more than the name Bratz, the

15     Bratz logo, and the hero shot infringe on Mattel's copyrights every bit as much as

16     the dolls inside. [See Phase 1(b) Closing Slides at 14D, Hutnyan Decl. Ex. 129;

17     TX 12286, Hutnyan Decl. Ex. 130; TX 3-001, Hutnyan Decl. Ex. 131.]

18 (Permanent Injunction Motion at 14, n.75-77 (exhibits at Supp. Russell Dec. Exs. 19-20).)

19 It is apparent from this discussion alone that Mattel's infringement claim with respect to

20 packaging is premised on the "hero shot" and, at most, by extension, other similar drawings

21 of the core female fashion dolls – **not** the Bratz logo.

22      Any doubt that this is the case can be eliminated by reviewing the trial exhibits and

23 closing argument slide to which Mattel directed the Court.  To begin with, neither of the

24 Carter Bryant drawings cited by Mattel have anything resembling a Bratz logo on them.

25 Trial Exhibit 774 is one of Carter Bryant's renditions of the "hero shot" – it has the word

26 Bratz on it, off to one side, but it is not a logo, it is just the word.  (Supp. Russell Dec. Ex.

27 19.)  Trial Exhibit 3-001 (Hutnyan Dec. Ex. 131) does not even have the word "Bratz" on it.

28 (Id. Ex. 20.)  With no purported Bryant Bratz logo to refer to, the Court never had the

6

1 opportunity to compare that prototype and the current Bratz logo and undertake a substantial
2 similarity analysis, much less reach the conclusion that MGA's Bratz logo was infringing.

3   Most telling, however, is the closing argument slide Mattel used to highlight the
4 purported similarities between Bryant's works and MGA's Bratz packaging, the comparison
5 that Mattel both cited in its Motion and presented to the jury. In slide 14D from Mattel's
6 Phase 1B closing arguments (Hutnyan Dec. Ex. 129), Mattel was clearly not focused on the
7 Bratz logo. (Id. Ex. 20.) The Bratz logo is <u>not even visible</u> – it is covered by a blow-up of
8 the hero shot:

REDACTED

20   In light of these facts, and because injunctions are to be construed both reasonably
21 and narrowly, Mattel's newly-minted claim that the Bratz logo falls under the Permanent
22 Injunction Order must be rejected, and cannot be used to define the scope of the recall.

23   **B.   <u>Only Core Female Bratz Character Art Is Enjoined</u>**

24   In a second attempt at post-hoc revisions to the Permanent Injunction, Mattel argues
25 that the packaging art on products such as the Bratz Kidz and Lil Bratz is enjoined under
26 paragraph 1(e) of the Permanent Injunction Order. (Mattel's Opening Br. at 5-6; Zeller Dec.

1 Exs. 26 (Bratz Kidz) & 27 (Lil Bratz).)[7]  Again, Mattel is attempting to expand the reach of
2 the Permanent Injunction Order far beyond what Mattel asked the Court to consider a year
3 ago.  As discussed above, Mattel's discussion of character art in its Permanent Injunction
4 Motion focused entirely on the hero shot.  In Mattel's Proposed Permanent Injunction Order
5 (adopted by the Court), rather than specifically define the character art enjoined in the text,
6 Mattel opted to enjoin "[a]ny product, packaging or other item that embodies or depicts in
7 whole or in part, or incorporates or uses in any manner, the artwork shown on the packaging
8 set forth in Exhibit 7, which is incorporated herein by this reference."   (Permanent
9 Injunction Order ¶ 1(e).)

10      Exhibit 7 to the Permanent Injunction Order – the exhibit which defines the enjoined
11 packaging art – contains thirteen examples of enjoined artwork.  (Supp. Russell Dec. Ex. 18
12 ("PI Order Ex. 7").)  These consist of: the packaging for a "Bratz Winterland Collection"
13 doll, the packaging for two "Bratz Slumber Party" dolls, the packaging for a "Bratz Play
14 Sportz Inline Skating" doll, the packaging for a "Bratz Beach Party" doll, and the packaging
15 for several first generation and later generation Bratz dolls without themes.  (PI Order Ex. 7
16 at 570-572J.)  This packaging has artwork depicting a single Bratz character (id. at 570-572),
17 a group of Bratz characters sitting on and around a bed (id. at 571, 572), the original four
18 character hero shot (id. at 572D-J), and five character variant of the hero shot (id. at 572A-
19 C).  Thus, at its most broad, paragraph 1(e) of the Permanent Injunction Order can be read
20 to incorporate the four and five person variants of the hero shot and – if read generously –
21 depictions of Bratz characters standing alone or engaged in various activities.[8]

22 [7]    As the Monitor can observe from these Exhibits, misnamed Exhibits 27 and 28 in Mattel's
23 brief, the depictions of Lil Bratz are the same as the depictions of Bratz Kidz and, as discussed below, distinct from the depictions of regular Bratz.
24 [8]    Of course, read literally, Paragraph 1(e) only enjoins the artwork in Exhibit 7, not all
25 artwork that resembles it, thus, it actually only enjoins the two versions of the hero shot and the specific depictions of the Bratz characters on the Winterland Collection and Slumber Party
26 packaging. However, out of an abundance of caution, the MGA Parties presume that it was meant to provide examples of what was enjoined, not the entire universe, and have assumed that Bratz
27 characters engaged in a variety of activities and in a variety of clothes are covered. This is already
28 giving Mattel more credit than its sloppy drafting entitles it to. Mattel's request that the MGA
(cont'd)

8

MGA Parties' Response To Mattel, Inc.'s Submission Regarding The Scope Of The Court-Ordered Recall
Case No. CV 04-9049 DOC (RNBx)

1    Exhibit 7 does **not** contain packaging for **any** non-core fashion doll – no Bratz Kidz,
2    no Lil Bratz, no Bratz Babyz, nor any Bratz Boyz or Bratz Petz.  Nonetheless, Mattel would
3    have the Monitor believe that the exemplars contained in Exhibit 7 were meant to extend to
4    all of those other lines, and that Mattel did not include additional exemplars because it
5    simply found they were unnecessary.  The Bratz Kidz and Lil Bratz dolls depict younger
6    versions of the Bratz, as such, are drawn differently in the accompanying artwork.  (See
7    Supp. Russell Dec. Ex. 19 (TX 14006 & 18712) (showing, for example, that the Bratz Kidz
8    have a nose and their faces and eyes are rounder than regular Bratz).)  As the MGA Parties
9    pointed out in their Opening Brief, Mattel was well aware of secondary lines like the Bratz
10   Kidz and Lil Bratz, and could easily have included samples of that packaging in Exhibit 7 if
11   they sought to enjoin it as well.  (MGA's Opening Br. at 5.)  Instead, they chose to include
12   only the thirteen examples described above.  Given that the Permanent Injunction Order is
13   construed against Mattel, it cannot plausibly argue that this was sufficient to denote the
14   entire universe of Bratz-related artwork, nor such a reading consistent with the Permanent
15   Injunction Order as a whole.  Certainly, Mattel did not take this "less is more" approach to
16   any other portion of the Permanent Injunction Order – Exhibits 3-6, which depict dolls
17   Mattel sought to have enjoined under the Permanent Injunction Order, contain
18   approximately **550** examples.

19   Indeed, Mattel cites no evidence that any fact-finder – either the Court in Phase 1C or
20   the jury in Phase 1B – ever found that the Bratz Kidz or Lil Bratz artwork was substantially
21   similar to any of Bryant's drawings now owned by Mattel.  Mattel cannot even demonstrate
22   that the question was ever put before either the Court or the jury.  As a result, Mattel's
23   argument that products bearing the Bratz Kidz or Lil Bratz artwork are subject to recall can
24   be rejected out of hand.  A narrow and reasonable reading of Paragraph 1(e) dictates that it
25   only apply to artwork depicting regular, teenage Bratz.

26

27   Parties broaden it even further to include distinct portrayals of completely different and non-
     infringing dolls, such as the Bratz Kidz/Lil Bratz, asks for far too much lenience and is simply
28   untenable.

MGA Parties' Response To Mattel, Inc.'s Submission Regarding The Scope Of The Court-Ordered Recall
Case No. CV 04-9049 DOC (RNBx)

## C.   The Enjoined Characters Are More Than Just Names

Mattel likewise asserts that it is entitled to recall of the Non-Recalled Bratz Products which "incorporate the female fashion doll characters" because the recall provisions prohibit the further use of "any of the Jade, Cloe, Yasmin, or Sasha Bratz characters." (Mattel's Opening Br. at 2-6, citing Permanent Injunction Order ¶ 1(f).)   Mattel cites to what it finds to be recognizable depictions of the characters in the form of Bratz artwork, and then extends that argument to what it claims are depictions of the same characters in the form of Bratz Kidz and Lil Bratz artwork.   (Id. at 5-6, Zeller Dec. Ex. 26-27.)   Again, Mattel is taking too far the narrow scope of what it was awarded.   The Bratz characters, as created by Carter Bryant and awarded to Mattel, are scantily defined, but what one can deduce about them with certainty is that they are definitively teenagers – not "Kidz" (or "Babyz," or any other variant).   Hence, the Court has not enjoined every blond doll named Cloe, and Isaac Larian is free to name other dolls Yasmin after his daughter.

In its Permanent Injunction Motion, as here, Mattel argued that "the initial four Bratz characters … were and are distinctive, as shown both by their visual appearance and the written personality attributes Bryant gave them." (Permanent Injunction Motion at 12-13.)[9] The characters that Bryant created were Zoe, Lupe, Hallidae, and Jade.   In production as Bratz, Jade remained Jade, Zoe became Cloe, Lupe became Yasmin, and Hallidae became Sasha.   (Russell Dec. Ex. 20 (Hutnyan Dec. Exs. 54-57).)   Bryant described Zoe was "the queen of cool" and her mascot was a pair of angel wings.   (Id. (Hutnyan Dec. Exs. 136 at 2658; 56.))   Lupe was "the princess of pretty" and her mascot was a frog prince.   (Id. (Hutnyan Dec. Exs. 136 at 2661-2662; 55).)   Hallidae had "the beat" and was "ultra-trendy" and her mascot was a rabbit.   (Id. (Hutnyan Dec. Exs. 136 at 2663-2664; 57).)   Jade liked "far-out fashion" and her mascot was a cat.   (Id. (Hutnyan Dec. Exs. 136 at 2665-2666; 54).) All of the characters' additional "personality traits" were actually just descriptions their

---

[9]   Significantly, Mattel's evidence of the "depictions" of those characters is restricted only to examples of the core fashion dolls themselves.   (See Supp. Russell Dec. Ex. 20 (Hutnyan Decl. Exs. 58-59, 138-140).)

10

MGA Parties' Response To Mattel, Inc.'s Submission Regarding The Scope Of The Court-Ordered Recall
Case No. CV 04-9049 DOC (RNBx)

1 clothing and accessories, which changed regularly through the years. (Id. (Hutnyan Dec.
2 Exs. 136 at 2658-2666; 138-141).)[10]   That was the extent of their individual character
3 development.

4      Collectively, Bryant emphasized that his characters were group of hip, edgy high-
5 school age teens on the cutting edge of fashion.   (Id. (Hutnyan Dec. Exs. 136 at 2657)
6 (describing the Bratz as "totally transformable teenage dolls" and "four best friends from
7 high school who love to trade clothes, shoes and hairdos")).)   Hence, in purporting to
8 demonstrate that "Jade is always recognizable as Jade, and Cloe is always recognizable as
9 Cloe," Mattel compared not different purported depictions of the same character across
10 different product lines, but rather different depictions of the same character as a Bratz doll.
11 (Id. (Hutnyan Dec. Ex. 58, 59, 135).)   This is because, contrary to Mattel's current stance,
12 whatever character continuity existed was limited to the Bratz line of teenage dolls only.

13      Indeed, the Permanent Injunction Order itself contradicts Mattel's claims that a Bratz
14 Kidz doll named Yasmin is subject to the injunction.   The Court expressly carved out a doll
15 depicting the "younger version of Yasmin" from the Permanent Injunction Order.
16 (Permanent Injunction Order ¶ 1(c))   If giving the doll the name Yasmin and the right
17 coloring were sufficient to make the younger doll the same "character," there would have
18 been no reason to exclude that doll. Perhaps this was the theory that Mattel hoped the Court
19 would adopt in adding that sample to its Proposed Order.   However, the Court rejected that
20 theory and found that the younger Yasmin if "packaged separately" was not infringing. (Id.)
21 The same logic that guided the Court's decision about the doll inside the box obviously
22 applies to the drawings on the outside of the box. The drawings on the outside of the box
23 depict younger Yasmins, Cloes, and Sashas, and Mattel has made no showing that these
24 younger characters – even if they share a name and a hair color with older Bratz
25 counterparts – are enjoined under the Permanent Injunction.   Again, a narrow and

26

[10]   As Mattel's own examples demonstrate, clothing has varied widely. (See, e.g., Mattel's
27 Opening Br. at 4-5 (showing Yasmin in a bathing suit and Sasha in skateboarding gear).) As such,
28 the clothing descriptions on Carter Bryant's drawings do not provide a definition for the characters.

1  reasonable reading of the injunction requires the opposite conclusion. As such, their
2  presence should not be a basis for recall.[11]

3  ## II.     THERE IS NO BASIS FOR THE EXPANSION OF THE DECEMBER 3, 2008
4  ORDERS

### A.     The May 21, 2009 Order Does Not Authorize The Monitor To Expand The
5  Scope Of The December 3, 2008 Orders

6          Mattel's insistence that the Court's May 21 Order "provides for the recall of all
7  Bratz-related products and packaging" including the Non-Recalled Bratz Products (Mattel's
8  Opening Br. at 8) is <u>frivolous</u> and Mattel knows better than to have made such an argument.
9  As Mattel well knows, the very order it cites <u>refutes</u> precisely the argument Mattel now
10 makes. The May 21 Order addressed the scope of profits to be escrowed by MGA, and the
11 Court only reluctantly offered a definition of the Bratz Assets due to the need to give the
12 Monitor access to MGA's product line and financial information. Indeed, the Court noted
13 that the access it was giving the Monitor "almost certainly ***extends beyond the materials***
14 ***that <u>must be turned over</u> to Mattel and may, depending on the resolution of the issue***
15 ***identified above, <u>extend beyond the products for which profits must be held in</u>***
16 ***<u>constructive trust</u>*** as a result of the Court's December 3, 2008, Orders." (May 21 Order at 9
17 n.6 (emphasis added).)  The Court then offered an admittedly "broad" definition of the
18 Bratz Assets, which, as Mattel crows, includes some of the Non-Recalled Bratz Products,[12]

19 ─────────────────
20 [11]     As Mattel owns the trademark for the name "Jade," the issue of whether the Jade character
   is the same character across lines is moot. However, had the Jade character been given a different
21 name, the same analysis would apply.
   [12]     In a definition the Court found "challenging" to craft, given the aforementioned unavoidable
22 inclusion of products clearly <u>not</u> subject to turnover in order to give the Monitor broader access to
   MGA profits information (May 21 Order at 9 n.6), the Bratz Assets "include all tangible or
23 intangible assets, including, without limitation, all intellectual property necessary or materially
24 useful for the design, manufacture, marketing, distribution and sale of any Bratz doll or other
   Bratz-branded product"; the Court defined Bratz-related "a broad term, that applies to all products,
25 property, and information that bears the 'Bratz' trademark" including "such products as the Bratz
26 boy dolls, Baby Bratz, and Bratz Kidz." (<u>Id.</u>)  Obviously, the reason this definition was
   "challenging" was that the Court recognized that it was in conflict with the narrower definition
27 provided for in the December 3rd orders and was subject to potential misuse (precisely as Mattel
28 now seeks to do).

1  but warned that "[t]he Court admonishes all counsel that this definition should not be taken

2  out of its current context and may very well be further modified, for purposes of both turn-

3  over and the constructive trust, following resolution of the issue identified above." (Id.

4  (emphasis in original). Mattel has not heeded this warning in its overreaching and flat out

5  erroneous interpretation of the May 21 Order, much less acknowledged this warning to the

6  Monitor.

7      Far from compelling the recall of the Non-Recalled Bratz Products, the Court's May

8  21 Order repeatedly holds that the recall and impoundment provisions do not apply to all

9  Bratz Assets, as Mattel maintains. Indeed, the May 21 Order expressly recognizes that only

10  some, not all, of the Bratz Assets as defined by the Court are subject to turnover to Mattel.

11  (Id. ¶ B.1(e) ("At the appropriate time, the Monitor shall direct the MGA turnover to Mattel

12  of any of the Bratz Assets subject to recall, impoundment, or destruction, as set forth in this

13  Court's Injunction Orders of December 3, 2008, and as otherwise directed by the Court.")

14  (emphasis added).)  And Section 1(h), relied on by Mattel, has nothing whatsoever to do

15  with a recall of the Bratz Assets, but merely states that: "The Monitor is ordered and

16  directed to obtain from MGA, and to make available to Mattel, as set forth herein, such of

17  the Bratz Assets, and related information about the content of the Fall, 2009 Bratz line being

18  produced and sold by MGA pursuant to this Court's Injunction Orders, as are necessary to

19  enable Mattel to begin preparation of its own Bratz line for the Spring, 2010 sales season[.]"

20  ((Id. ¶ B.1(h).)  The May 21 Order thus does not in any way provide the support Mattel

21  seeks for the recall of Non-Recalled Bratz Products, no matter how Mattel struggles to twist

22  the Court's language out of context – indeed, as noted above, the Court's order explicitly

23  prohibited this exact Mattel ploy.

24      **B.**  ███████████████████████████████████████████

25

26      MGA has already shown that courts routinely permit "sell-offs" of infringing product

27  and will not order recalls where production of the infringing product has ceased and

28  quantities of remaining product are limited. (See MGA's Opening Br. at 10-11 (collecting

cases).)



*(cont'd)*

MGA Parties' Response To Mattel, Inc.'s Submission Regarding The Scope Of The Court-Ordered Recall
Case No. CV 04-9049 DOC (RNBx)

1

2

3

4

5

6

7

8

9

10

11 scores of

12 Barbie products, including Barbie Collector Dolls, currently available as clearance items,

13 for example, at Toys R Us at substantial reductions of up to more than 50% off the list

14 price.[16]

15

16

17

18

19

20

21

22

23

24

25 [16] See Supp. Russell Dec. Ex. 23 (Toys R Us webpage).  The Barbie Collector Doll Silver Label

26 Supergirl Doll is marked down from $42.99 to $17.98, a reduction in price of nearly 60%.  Id.
Likewise, Mattel maintains no less than nine "Mattel Toy Store" outlet store locations throughout

27 the country, which offer "factory outlet prices" and "[d]eep discounts on closeout merchandise" on

28 a variety of Mattel products, including Barbie.  See Supp. Russell Dec. Ex. 24.

[REDACTED]

Unsurprisingly, Mattel submits no declarations from retailers on either of these points, perhaps because these arguments defy all common sense and are wholly out of line with toy industry convention. [REDACTED]

## CONCLUSION

For all of the reasons discussed above, Mattel's attempt to expand the scope of the recall to the Non-Recalled Products should be rejected.

DATED:  October 5, 2009          SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP


                                 By:  _____/s/ Thomas J. Nolan_____
                                            Thomas J. Nolan
                                      Attorneys for the MGA Parties

16

MGA Parties' Response To Mattel, Inc.'s Submission Regarding The Scope Of The Court-Ordered Recall
Case No. CV 04-9049 DOC (RNBx)