1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
    John B. Quinn (Bar No. 090378)
2   johnquinn@quinnemanuel.com
    Michael T. Zeller (Bar No. 196417)
3   michaelzeller@quinnemanuel.com
    Jon D. Corey (Bar No. 185066)
4   joncorey@quinnemanuel.com
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California  90017-2543
   Telephone:  (213) 443-3000
6  Facsimile:   (213) 443-3100

7  Attorneys for Mattel, Inc.

8

9                UNITED STATES DISTRICT COURT

10               CENTRAL DISTRICT OF CALIFORNIA

11                      SOUTHERN DIVISION

12 | MATTEL, INC., a Delaware corporation, | CASE NO. CV 04-9049 DOC (RNBx) |
|---|---|
13 | Plaintiff, | Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727 |
14 | vs. | |
15 | MGA ENTERTAINMENT, INC., a California corporation, et al., | **[BEFORE THE MONITOR PER COURT ORDER]** |
16 | | |
17 | Defendants. | **MATTEL INC.'S RESPONSIVE SUBMISSION TO THE MONITOR REGARDING THE SCOPE OF THE COURT-ORDERED RECALL** |
18 | AND CONSOLIDATED ACTIONS | |
19 | | |
20 | **PUBLIC REDACTED VERSION** | [Supplemental Declaration of Michael T. Zeller filed concurrently] |
21 | | |
22 | | Discovery Cut-off:  June 1, 2010<br>Pre-trial Conference:  TBD<br>Trial Date:  TBD |

# TABLE OF CONTENTS
**Page**
PRELIMINARY STATEMENT .................................................................................... 1

ARGUMENT ................................................................................................................... 2

I.  THE INJUNCTION ORDER REQUIRES THE RECALL OF BRATZ-BRANDED PRODUCTS BEYOND THE CORE FASHION DOLLS ........... 2

   A.  MGA Admits That All Products Incorporating or Using Any Infringing Characters, Packaging or Artwork Must Be Recalled ........... 2

   B.  Virtually All Bratz-Branded Products Incorporate or Use Infringing Characters, Packaging or Artwork ................................................ 3

   C.  The Injunction Order Is Not A Contract And Must Be Construed To Effect The Court's Intentions ................................................. 5

II. ███████████████████████████████████████████, THE COURT'S ORDERS ARE NOT CONTINGENT ON MATTEL DOING SO ............................................................................................................... 8

III. IT IS MGA, NOT MATTEL WHO SEEKS TO MODIFY THE COURT'S ORDERS ......................................................................................... 10

CONCLUSION ............................................................................................................. 13

# TABLE OF AUTHORITIES

**Page**

**Cases**

Bhatnagar v. Surrendra Overseas Ltd.,
 52 F.3d 1220 (3d Cir. 1995) .................................................................................. 13

Coquico, Inc. v. Rodriguez-Miranda,
 562 F.3d 62 (1st Cir. 2009) ...................................................................................... 4

Fisher-Price Toys v. My-Toy Co., Inc.,
 385 F. Supp. 218 (D.C.N.Y. 1974) ........................................................................ 12

Gila Valley Irr. Distr. v. United Sstates,
 118 F.2d 507 (9th Cir. 1941) ................................................................................... 6

Lanard Toys Ltd. v. Novelty, Inc.,
 2007 WL 2439505 (C.D. Cal. Mar. 17, 2006) ................................................. 4, 10

Sharp v. Weston,
 233 F.3d 1166 (9th Cir. 2000) .............................................................................. 10

Templet v. HydroChem Inc.,
 367 F.3d 473 (5th Cir. 2004) ................................................................................ 12

UNR Industries, Inc. v. Bloomington Factory Workers,
 173 B.R. 149 (N.D. Ill. 1994) ................................................................................. 6

U.S. v. 60.22 Acres of Land,
 638 F.2d 1176 (9th Cir. 1980) ................................................................................ 6

Wildlife Exp. Corp. v. Carol Wright Sales, Inc.,
 18 F.3d 502 (7th Cir. 1994) .................................................................................... 4

**Statutes**

17 U.S.C. § 503(a) ...................................................................................................... 12

17 U.S.C. § 503 ........................................................................................................... 12

## Preliminary Statement

MGA argues at length about whether the Bratz "name" can be copyrighted, but in doing so it misses the point. As MGA concedes, *all* products, packaging or other items that incorporate or use in *any* manner any of the Jade, Cloe, Yasmin and Sasha characters must be recall. In additional, all products, packaging or other items that incorporate or use in any manner the packaging or artwork in Exhibits 3, 5, 7, and 11 to the Injunction Order must be recalled. Virtually of all MGA's Bratz-branded products incorporate or use the infringing characters, packaging or artwork, and therefore must be recalled for this reason alone. MGA's arguments seeking to limit the scope of the recall fail to account for the Exhibits to the Injunction Order or the Order's clear language requiring the recall of products using in any manner the Bratz characters or artwork.

MGA claims that Mattel seeks modification of the Injunction Order, but that misconstrues Mattel's position. Mattel first and foremost seeks enforcement of the plain language of the Injunction Order, which requires the recall of, inter alia, products and packaging utilizing the Bratz characters or the Bratz material reflected in the Exhibits. Furthermore, and independently, the Court already has empowered the Monitor to protect the Bratz *brand* and effectuate the transfer of the Bratz *brand* to Mattel. As Mattel's evidence shows, and MGA itself has acknowledged, clearing the shelves of infringing product is necessary to accomplish those mandates. MGA, in contrast, itself plainly seeks modification, claiming it should be relieved of its Court-ordered responsibility to turn over to Mattel all "means of making" any of the infringing products. This is not the forum to resolve MGA's claim that the Injunction Order exceeds the Court's authority under the Copyright Act or is unfairly punitive. The time for litigation of those issues has long since passed, and MGA identifies no new facts or law that would warrant even revisiting the Court's Orders. MGA must comply with the terms of the Order.

    The Monitor should instruct MGA to effect a recall of all products described in the Injunction Order, pursuant to the terms of the Court's Orders and the Monitor's power to effectuate transfer of the brand to Mattel. Further the Monitor should reject MGA's request to limit the scope of the Court-ordered impoundment.

<u>Argument</u>

I. <u>THE INJUNCTION ORDER REQUIRES THE RECALL OF BRATZ-BRANDED PRODUCTS BEYOND THE CORE FASHION DOLLS</u>

  A. <u>MGA Admits That All Products Incorporating or Using Any Infringing Characters, Packaging or Artwork Must Be Recalled</u>

    The Injunction Order applies not just to the core fashion dolls, but to "any doll, product, packaging or other item" that "incorporates or uses in any manner" the infringing artwork or characters, including those depicted in the Exhibits to the Injunction Order. See Injunction Order at 2-3. Virtually all of MGA's Bratz-branded products incorporate or use in some manner the Jade, Cloe, Yasmin and/or Sasha characters and/or the artwork displayed on the packaging in the hundreds of attachments to the Court's Injunction Order. Thus, these Bratz-branded products are subject to recall, not simply because they have the name "Bratz" on them, but because they are infringing under the plain terms of the Injunction Order.

    After attacking the straw man of "a name is not copyrightable," MGA claims only way its non-core fashion doll Bratz products could be recalled is through the Constructive Trust Order.[1] But that argument, which rests on what MGA claims to have divined about the "focus" of the Injunction Order and the Constructive Trust Order, ignores the plain language of the Court's Orders. What matters are the terms and purposes of the Orders, which require MGA to recall all products that, *inter alia*, use the Bratz artwork or characters, including those depicted in the Injunction Order's Exhibits.

---

[1] MGA Brief at 7.

B.  **Virtually All Bratz-Branded Products Incorporate or Use Infringing Characters, Packaging or Artwork**

The Injunction Order recognizes that because MGA's packaging, artwork, and characters are all infringing, there are many products subject to recall beyond the core female fashion dolls. MGA argues that the recall is limited "only to those products outlined" in the Order,[2] but the Order clearly and repeatedly states that *any* "other item" that uses the infringing material in any manner is subject to recall.[3]

Although the written terms of the Order expressly sweep beyond its many attached Exhibits, the Exhibits (which MGA's opening brief ignores) themselves make clear that recall of more than just Bratz dolls is mandated. These Exhibits contain a number of non-female doll products, including several "Bratz Boyz" products. In addition to the Bratz Boyz Exhibits cited in Mattel's opening brief,[4] Exhibit 3 contains "Bratz Boyz" line products as well.[5]

MGA also erroneously claims that "younger" versions of dolls such as Cloe are not subject to recall.[6] The Court's Order expressly found that these "younger" versions of the Bratz characters *are* infringing as they are displayed in the Exhibits themselves. In paragraph 1(c), the Court found that a *separate* character "Cloe's younger sister" pictured in Exhibit 3, page 277 -- not to be confused with "younger" versions of the "Cloe" character itself -- is not infringing *if and only if* that doll is

---

[2]  MGA Brief at 4:28-5:1. MGA also incorrectly claims that, during a meeting with the Monitor in which MGA presented examples of products it believes are not subject to the Injunction Order, Mattel only identified the Bratz trademark as a basis for objecting to them. MGA Brief at 6, n.3. Mattel expressly did not so limit its objections, and specifically identified the Bratz artwork and characters as a ground for objection. See Supplemental Declaration of Michael T. Zeller, filed concurrently ("Supp. Zeller Decl."), at ¶ 2.
[3]  Injunction Order at 1(e), (f), (i), (j).
[4]  Exhibit 5 at 521-522.
[5]  Injunction Order, Exhibit 3, pages 91, 105, 112-114 (exemplars of images of Bratz "Secret Date" products containing "Bratz Boyz" dolls).
[6]  MGA Brief at 4:2-3.

separately packaged from infringing material. And the product, as shown, is specifically found to be infringing and subject to recall pursuant to paragraph 1(f) of the Injunction Order, which enjoins use of any "doll, product, packaging or other item" making any use of the Cloe *character* "as shown in Exhibits 3 and 5."[7] The same is true of the "Pixiez" products listed in Exhibit 5, pages 551-555. Although the *dolls* in these exhibits are carved out of paragraph 1(d), those *products*, as shown, make use of infringing characters and artwork and are expressly made subject to recall pursuant to paragraph 1(f) of the Injunction Order. MGA's infringing packaging and artwork is an independent basis for the injunction, regardless of the product itself. See Lanard Toys Ltd. v. Novelty, Inc., 2007 WL 2439505, at *9, 13-14 (C.D. Cal. Mar. 17, 2006) (granting preliminary injunction and finding plaintiffs' copyright infringed by "the text and the placement of text on the packaging" and by "the captions and accompanying illustrations").[8]

        This distinction is critical. Here, while finding that a few specified *dolls* were not infringing, the Court ordered the products containing those dolls *as packaged and sold* to be recalled because even the non-infringing dolls in the Exhibits are packaged and sold using the infringing Bratz characters and artwork. Similarly,

---

[7] Order at 1(f) ("Any doll, product, packaging or other item that embodies or depicts in whole or in part, or incorporates or uses in any manner, any of the Jade cloe, Yasmin and Sasha Bratz characters, including without limitation the items shown in Exhibits 3 and 5 . . . .").

[8] As borne out by the Injunction Order, slightly altered embodiments, including derivative works, of the infringing Bratz characters are no less infringing than a direct copy. See, e.g., Wildlife Exp. Corp. v. Carol Wright Sales, Inc., 18 F.3d 502, 511 (7th Cir. 1994) (noting that "slight adaptations," including differences in "size," "facial dimensions," and "color scheme" are insufficient to protect defendant from a finding of infringement); Coquico, Inc. v. Rodriguez-Miranda, 562 F.3d 62, 66-70 (1st Cir. 2009) (upholding preliminary injunction against infringing plush toy, and noting that [t]he holder of a valid plush-toy copyright possesses exclusive rights to reproduce and distribute not only exact 'copies' of the toy but also 'derivative works' based upon it."). In any event, as discussed, the terms of the Court's Injunction Order control here, and this is not the forum, nor has MGA provided any basis, for challenging them.

although the actual Bratz Kidz doll or the plush dog shown in the "Bratz Petz" product[9] alone themselves may not infringe, they must also be recalled because they are packaged and sold using infringing material that makes use of Bratz artwork and characters. Because virtually all of MGA's Bratz-branded products make some use of the Bratz artwork and characters, they must be recalled under the plain terms of the Injunction Order.

### C. The Injunction Order Is Not A Contract And Must Be Construed To Effect The Court's Intentions

Contrary to MGA's argument, the Court's Injunction Order is not a "contract" between Mattel and MGA. MGA claims that the Court "did a shoddy job" in adopting Mattel's proposed order and argues that therefore the Order must be construed against Mattel.[10] MGA is wrong on both the facts and the law, and the argument insults the Court.

As an initial matter, MGA admits that the District Court did not simply accept Mattel's proposed order wholesale, but rather made careful revisions before entering the Order. In fact, MGA attaches to its brief a redline of the Injunction Order, showing that Judge Larson did not simply enter Mattel's proposed Orders.[11] The factual premise of MGA's argument is simply wrong.

MGA is also wrong on the law. Nowhere does it cite any authority for its (factually erroneous) assumption that even where Courts adopt Orders proposed by a party wholesale, it must be construed against the party who proposed it. Unable to support its key premise, MGA instead cites inapposite decisions involving the

---

[9] Declaration of Michael T. Zeller in Support of Mattel, Inc.'s Submission to the Monitor Regarding the Scope of the Court-Ordered Recall, dated Sept. 28, 2009 ("Zeller Decl."), at Exhs. 24 (Bratz Petz), 26 (Bratz Kidz).
[10] MGA Brief at 2, 12-14.
[11] Russell Declaration in Support of MGA Parties' Statement of Position Regarding Scope of Existing Product Recall and Impoundment, Exhibit 8.

interpretation of contracts and consent decrees.[12] But the Injunction Order is neither a contract between the parties nor is it a consent decree. It is a Court Order, and like all Court Orders, it must be complied with and construed to give the effect *the Court* intended. See U.S. v. 60.22 Acres of Land, 638 F.2d 1176, (9th Cir. 1980) ("It is our responsibility to construe a judgment so as to give effect to the intention of the court, not to that of the parties."); Gila Valley Irr. Distr. v. United Sstates, 118 F.2d 507, 510 (9th Cir. 1941) (even when final decree rendered pursuant to stipulation agreed to by all parties, the court is "concerned not with the intention of the parties as in the case of a contract between them, but with the intention of the court as expressed in the decree."). MGA's cases discussing *consent* agreements are of no moment here -- MGA certainly did not consent to the injunction. See UNR Industries, Inc. v. Bloomington Factory Workers, 173 B.R. 149, 156 (N.D. Ill. 1994) (discussing differences between consent agreements and contested court orders and noting that "the most important factor to consider when interpreting a disputed court order is the intention of judge entering order, rather than the parties contesting it"). The Orders are clear, and the Monitor's charge is to enforce their terms and purpose as the Court intended.

Separately, in the Order appointing the Monitor that MGA has thus far ignored, the Monitor was ordered to "obtain from MGA ... such of the Bratz Assets... as are necessary to enable Mattel to begin preparation of its own Bratz line for the Spring, 2010 sales season."[13] The Court also charged the Monitor with responsibility and authority to take "any and all action" necessary to monitor and oversee the exploitation of Bratz Assets.[14] The purpose of the Orders is a transfer of the Bratz brand to Mattel, and the Monitor is ordered to effectuate that purpose in a way that preserves and protects the brand. ████████████████████████

████████████████████████████

---

[12] MGA Brief at 13:16-28.
[13] May 21, 2009 Order, at 11, ¶ 1(h), Zeller Decl., Exh. 22.
[14] Id., at 10, ¶ 1(b).

1 ██████████████████████████████████████.[15]  MGA speculates, without any
2 support or even explanation, that it will have a magically calibrated number of Bratz
3 non-female fashion dolls on the shelves in January 2010 -- just enough to "create a
4 substantial burden on MGA should they be recalled," but "not so many that they could
5 be deemed a threat to Mattel's traditional market presence."[16]  Even if this conjecture
6 had some basis -- and it does not -- the assertion is specious. ████████████████
7 ████████████████████████████████████████████████████████████████████████
8 ████████████████████████████████████████████████████████████████████████
9 ████████████████████████████████████████████████████████████████████████.
10 ████████████████████████████████████████████████████████████████████████
11 ████████████████████████████████████████████████████████████████████████
12 ████████████████████████████████████████████████████████████████████████
13 ████████████████████████████████████████████████████████████████████████
14 ████████████████████████████████████████████████████████████████████████
15 ████████████████████████████████████████████████████████████████████████
16 ████████████████████████████████████████████████████████████████████████
17 ████████████████████████████████████████████████████████████████████████
18 ████████████████████████████████████████████████████████████████████████
19 ████████.

20           Accordingly, as an independent basis for requiring the recall of non-core
21 Bratz fashion dolls, the Monitor should exercise his authority to carry out the recall in a
22
23
---

[15] Declaration of Timothy Kilpin in Support of Mattel, Inc.'s Submission to the Monitor Regarding the Scope of the Court-Ordered Recall, dated Sept. 28, 2009 ("Kilpin Decl."), at ¶¶ 5-6.
[16] MGA Brief at 10:3-6.
[17] MGA Parties' Opening Submission to the Monitor Regarding July 2009 Accounting Issues, dated Sept. 25, 2009, at 8:2-5, Supp. Zeller Decl., Exh. 1.
[18] Id.

1 way that avoids further harm to the Bratz brand and effectuates the required transfer of
2 the brand to Mattel.

## II. ███████████████████████████████████████, THE COURT'S ORDERS ARE NOT CONTINGENT ON MATTEL DOING SO

MGA alternatively argues that there is no harm if it fails to comply with the Court's Orders "so long as Mattel itself is not using the Bratz name." MGA Brief at 8:19. MGA's premise is flawed, ███████████████████████████████. But more fundamentally, MGA's unsupported perceptions of harm to Mattel do not affect its obligations under the Court's Orders as they are written.

MGA asserts without proof that it should not be required to comply with the recall provisions of the Injunction Order ███████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
███,[20] MGA has notably failed to do so. Indeed, it cites to no evidence at all for its groundless allegations.

In contrast, Mattel has submitted the Kilpin Declaration that ███████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████

---

[19] ████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████.

[20] Supp. Zeller Decl., ¶ 2.

[redacted].[22]

MGA also incorrectly claims that Mattel prevailed against its motions for a stay of the injunctive Orders by representing that it would launch its own Bratz line. MGA Brief at 8:23-26. The Ninth Circuit did not even reach that issue in rejecting MGA's stay requests. Rather, after reviewing the merits of MGA's claimed grounds for appeal, the Ninth Circuit found that "MGA has not met the prevailing standard to show a substantial likelihood of ultimate success on the merits."[23]

Finally, the District Court has rejected MGA's now-repeated efforts to derail the recall and specifically rejected its contention that it should be excused from recalling products even if Mattel were not going to launch a Bratz product line in 2010.

---

[21] See Stipulation Regarding Access to Mattel Design Center, dated September 30, 2009, Supp. Zeller Decl., Exh. 2.

[22] MGA's claims that, in January 2009, Mattel supposedly "hedged" as to whether it would produce a Bratz line and that Mr. Kilpin's May 2009 declaration did not provide sufficient detail are false as a review of the record evidence amply demonstrates. And, in light of the record at this juncture [redacted], MGA's allegations are simply irrelevant. MGA's similar claim that it is still "awaiting a response" to its requests for detailed information concerning Mattel's Bratz launch is incorrect, as the Monitor is aware. [redacted]. Indeed, in contrast, MGA has refused to give Mattel even *historical* financial data, including data supporting its monthly accountings of profits to the Monitor. [redacted], and in any event irrelevant, as discussed *infra*.

[23] June 10, 2009 Order at 3, attached as Exhibit 3 to the Supp. Zeller Decl.; see also May 21, 2009 Order at 7 (denying MGA's application for stay because "the Court does not find a likelihood of success on the merits of [MGA's] appeal."), Zeller Decl., Exh. 22.

As the Court's September 22, 2009 Order held, MGA is "mistaken in [its] contention that 'the whole point of that recall order was so it would clear the market for Mattel to come in with its vision of Bratz." Rather, the Court reiterated that the recall was imposed *both* "in light of the scope of infringement found by the Court (which was broad) and light of the fact that the Bratz dolls compete directly with existing Mattel products."[24] This broad scope of infringement is precisely what the Injunction Order addresses and remedies, through the recall of a broad range of Bratz-related products. MGA is simply wrong that the Court's recall requirements are dependent on Mattel launching a Bratz line, and ███████████████████████████, but irrelevant to MGA's recall obligations.

### III. IT IS MGA, NOT MATTEL WHO SEEKS TO MODIFY THE COURT'S ORDERS

MGA claims Mattel is trying to modify the Court's Orders, but it is MGA that seeks to "further limit[]" the scope of the Court's impoundment provisions in Paragraph 3 of the Injunction Order. MGA admits that the Order requires it to turn over the "means of making" all infringing Bratz products, but claims it should not have to do so because the Court's Order is "outside the scope of Section 503(a)'s authorization" and is "unfairly punitive." As the Monitor has recognized in the context of MGA's attempts to avoid the Court's accounting orders, this is not the forum for MGA to seek relief from District Court Orders, particularly given that MGA fails to show any change in the law or the facts since the entry of the Injunction Order and accordingly does not even attempt to show there is any reason to reconsider the impoundment provisions of the Injunction Order.[25]

---

[24] September 22, 2009 Order at 2 (emphasis added), Zeller Decl., Exh. 23. See also Lanard, 2007 WL 2439505, at *13 (finding a showing of irreparable harm "[w]hether or not plaintiffs are currently selling the toy in the copyrighted packaging.").

[25] See Sharp v. Weston, 233 F.3d 1166, 1170 (9th Cir. 2000) ("A party seeking modification or dissolution of an injunction bears the burden of establishing that a significant change in facts or law warrants revision or dissolution of an injunction.").

Even if the Monitor were authorized to "further limit" the Court's Injunction Order and consider MGA's arguments, however, MGA provides no basis for its request. MGA cites to "vast computer files" it will be forced to turn over that detail the designs for its infringing packaging and doll artwork. MGA Brief at 17:14-16. But those are precisely the sort of tooling and the "means of making" infringing material contemplated by the impoundment order. And, in any event, MGA's arguments that the impoundment provisions will cause it harm (even if it could be considered material here) is both unproven and unavailing. Under Paragraph 2(f) of the Injunction Order, MGA is prohibited from "transferring," "exporting" or "disposing" of, and under Paragraph 3 must turn over to Mattel:

> any products, product packaging, labels, signs, prints, dies, wrappers, receptacles, advertisements, or *any other tangible items (including without limitation computer files)* that in any manner utilize, evidence, reproduce, display, or relate to any simulation, counterfeit, reproduction or copy of, or are derived from, (i) the dolls, products, packaging, items or other materials referred to in paragraphs 1(a) through 1(k) above, inclusive....

(Emphasis added.) Further, under Paragraph 2(d), MGA is enjoined from "transferring" or "disposing" of, and under Paragraph 3 must turn over to Mattel, "any documents..., whether in electronic or non-electronic form, that evidence relate to or pertain to *any aspect* of the dolls, products, packaging, items or other materials" referenced in the Injunction Order. Paragraph 2(h) also prohibits MGA from assisting, aiding or abetting any person or entity "in performing any of the activities referred to" in the Order. Thus, MGA's claim that it will suffer hardship in having to comply with the impoundment requirements because it will be deprived of productions means that it is otherwise allowed to use is contrary to the Injunction Order. They are specifically subject to impoundment.

Lastly, MGA complains that the Court's Order that all "means of making" Bratz products identified in the Order be impounded under Paragraph 3 is somehow

unfair because it "encompasses a number of items besides means of making the infringing sculpts or packaging." MGA Brief at 17:13-14.[26] First, MGA fails to prove its assertions and, as with its attempt to avoid recall of the products themselves, MGA misapprehends the scope of the Injunction Order. The Injunction Order applies to more than just "infringing sculpts and packaging"; it expressly and repeatedly applies to the means of making any of the infringing products, packaging, artwork and other items identified and described in the Order and its Exhibits.[27] MGA's unsupported suggestion that the Order should only apply to "tooling that is exclusive to the infringing dolls" is contrary to the plain language of the Order. And it is contrary to law.[28] Indeed, if MGA believed that such arguments had any merit, it was required to bring them to the Court's attention during the extensive briefing that occurred *before* the Injunction Order with its impoundment provision was entered. MGA cannot raise them now, particularly in the absence of any new facts or law.[29]

---

[26] Though this admission later in MGA's brief that the Injunction Order applies to Bratz packaging is notable given its attempt to avoid recall of non-doll products that use infringing packaging.

[27] Ignoring the record in this case, MGA also claims that "Mattel has never claimed the fashions or accessories infringed any Mattel intellectual property." MGA Brief at 17:21-23. This claim is mistaken, and indeed the Injunction Order expressly applies to such material by its terms. See also Mattel, Inc.'s [Corrected] Notice of Motion and Motion for Permanent Injunction, dated Sept. 30, 2008, at 8:6-13, Supp. Zeller Decl., Exh. 4 (Mattel also specifically argued in its Motion for Permanent Injunction that the Bratz "clothes, shoes and accessories" were infringing).

[28] See 17 U.S.C. § 503 (allowing impoundment of means by which infringing articles "may be reproduced."); Fisher-Price Toys v. My-Toy Co., Inc., 385 F. Supp. 218, 223 (D.C.N.Y. 1974) (ordering impoundment of "all molds and other means for manufacturing the infringing dolls"). MGA's claims that the Injunction Order is unfairly punitive fail for the same reasons. The scope of impoundment is expressly within the Court's discretion. See 17 U.S.C. § 503(a) ("[T]he court may order impounding, *on such terms as it may deem reasonable* . . . of all plates, molds, matrices . . . or other articles by means of which such copies or phonorecords may be reproduced.").

[29] See, e.g., U.S. v. Comprehensive Drug Testing, Inc., 513 F.3d 1085, 1097 (9th Cir. 2008) ("A motion for reconsideration of the decision on any motion may be made
(footnote continued)

MGA's efforts to challenge the Injunction Order here, and its claims that the Court-ordered impoundment should be "further limited" to allow MGA to "repurpose" its infringing tooling, are meritless.

### Conclusion

Because they are expressly subject to the Injunction Order, and independently, because the Monitor is so empowered by the May 21, 2009 Order, the Monitor should instruct MGA to recall all Bratz-branded products.

DATED: October 5, 2009

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By /s/ Michael T. Zeller
Michael T. Zeller
Attorneys for Mattel, Inc.

---

only on the grounds of (a) a material difference in fact or law from that presented to the Court before such decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at the time of such decision, or (b) the emergence of new material facts or a change of law occurring after the time of such decision, or (c) a manifest showing of a failure to consider material facts presented to the Court before such decision."); Bhatnagar v. Surrendra Overseas Ltd., 52 F.3d 1220, 1231 (3d Cir. 1995) ("Whatever other circumstances may justify reconsideration, mere presentation of arguments or evidence *seriatim* does not.").