MELINDA HAAG (State Bar No. 132612)
mhaag@orrick.com
ANNETTE L. HURST (State Bar No. 148738)
ahurst@orrick.com
WARRINGTON S. PARKER III (State Bar No. 148003)
wparker@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone: +1-415-773-5700
Facsimile: +1-415-773-5759

WILLIAM A. MOLINSKI (State Bar No. 145186)
wmolinski@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017
Telephone: +1-213-629-2020
Facsimile: +1-213-612-2499

Attorneys for MGA Parties

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | Case No. CV 04-9049-DOC (RNBx)<br>Consolidated with: Case No. CV 04-9059 and Case No. CV 05-2727<br><br>**DISCOVERY MATTER**<br>[To Be Heard by Discovery Master Robert O'Brien]<br><br>**MGA'S REPLY IN SUPPORT OF MOTION TO COMPEL FURTHER RESPONSES TO PHASE 1 INTERROGATORIES 20-23 and 28**<br><br>Date: TBD<br>Time: TBD<br>Courtroom: TBD<br><br>**Phase 2**<br>Discovery Cutoff: June 1, 2010<br>Pretrial Conference: None Set<br>Trial Date: None Set |

## INTRODUCTION

Mattel should not be allowed to waffle in its responses to MGA's discovery requests. Rather than affirm that it has disclosed all "principal and material" facts related to its trade secrets claims, Mattel continues to insist that it can provide "just a subset" of "examples" of MGA's alleged misconduct in this case. This is not acceptable. Mattel must be ordered — again — to provide "complete and full responses" based on presently available knowledge as the Discovery Master has already ordered. This is not too much to ask.

Mattel's argument that it can litter its responses with numerous unfounded objections is untenable. Mattel delayed three months before finally providing responses to MGA's discovery, and did so only after the Discovery Master ordered Mattel to do what "it had originally promised to do."[1] Mattel then delayed another month with promises to amend its inadequate initial responses. When Mattel finally did provide its Second Supplemental Responses, the result was not worth the wait.

Because Mattel's responses are subject to so many objections, MGA has no way of knowing whether it has discovered the limits of Mattel's counterclaims. Any burden Mattel might face in having to provide "full and complete" responses pales in comparison to the burden MGA faces in having to defend itself against Mattel's multi-million dollar claim. The metes and bounds of Mattel's trade secret claims should not be hidden or ambiguous. The discovery at issue is clearly designed to elicit information that MGA is entitled to. The motion to compel should therefore be granted and Mattel should be ordered to provide amended responses that comply with the Federal Rules of Civil Procedure.

---

[1] MGA first propounded its Phase 1 Special Interrogatory Nos. 20-23 and 28 on December 4, 2007. *See* Declaration of William A. Molinski ("Molinski Decl."), Ex. A. Mattel promised to respond to those interrogatories on April 16, 2009. *Id.*, Ex. P. Mattel did not provide responses until August 3, 2009. MTC at 3-4; *id.*, Exs. C and E.

# ARGUMENT

## A. The Discovery Master Should Overrule Mattel's Unfounded Objections.

Mattel has flooded its discovery responses with page upon page of objections. For example, Mattel objects that Interrogatory Nos. 20-23 & 28 are overbroad, vague, and ambiguous; unduly burdensome, compound, and aggressive; that the Interrogatories seek to circumvent the expert disclosure provisions of the Federal and Local Rules; and that the Interrogatories seek to impose obligations on Mattel beyond those imposed by the Federal Rules of Civil Procedure. Molinski Decl. Ex. D at 309-11. Mattel included these objections even after the Discovery Master ordered Mattel to provide "complete and full responses" to MGA's requests. Molinski Decl. Ex. K. The Discovery Master's order could not have been more clear: Mattel must comply with the discovery requests *as they are written*. *Id.* at 648. Mattel should not allowed to insert additional objections because the Discovery Master's order effectively found that MGA's discovery requests have no sustainable basis for objection.

Mattel claims that providing responses without objections would "freeze discovery in this case," but this is not true. Opposition at 7. Without question, Mattel has a right to supplement its responses based on *later-acquired* information. But MGA is entitled to know the extent of Mattel's claims based on all *presently available* information. Mattel's vacillating responses provide no certainty to MGA that all presently available information has been disclosed. This is because, even after the Discovery Master's order, Mattel continues to assert a litany of objections and qualifications, prefacing each response with the refrain "[s]ubject to and without waiving the foregoing general and specific objections, Mattel responds as follows...." *See* Molinski Decl. Ex. D at 312, 412, 416, 564, and 584. In short, MGA has no way of knowing whether Mattel's responses are full and complete—as the Discovery Master ordered—or limited by unfounded objections. The Court should order Mattel to re-serve its Supplemental Responses without any objections.

### B. Mattel Must Affirm That It Has Disclosed All "Principal and Material" Facts Related To Its Trade Secret Claims.

Mattel spends much of its brief expounding on its duty to provide all "principal and material facts" in support of its trade secret claims. Opposition at 12-13. Ironically, Mattel fails to comply with its own recitation of its discovery obligations. As an initial matter, the majority of Mattel's facts are simply a regurgitation of the allegations in its complaint. MGA has already demonstrated how at least one of these allegations—the "plot04" email referenced in paragraph 50 of the Third Amended Complaint—cannot possibly be evidence of trade secret misappropriation, as the communication merely refers to a discussion concerning possible employment with MGA Mexico. *See* MTC at 7-8. The few places where Mattel purports to add new facts regarding its trade secret allegations are framed as "examples" of alleged misconduct. *See, e.g.*, Molinski Decl. Ex. D at 456-58, and 467-68. These "examples" beg the question whether Mattel has disclosed all presently-available information concerning its trade secrets claim.

MGA's Phase 1 Special Interrogatory No. 22 presents a very simple question: "STATE THE COMPLETE FACTUAL BASIS FOR YOUR CONTENTION that MGA misappropriated any ALLEGED TRADE SECRET." Molinski Decl. Ex. A at 19. In its response, Mattel uses language that suggests it is not disclosing the *complete* basis for its trade secrets claims. In particular, Mattel states that it is disclosing only a "subset of the vast misconduct" or just "one example" that could be included "among other things." MTC at 9; Molinski Decl. Ex. D at 457, 458, and 467. This language indicates that Mattel is *not* disclosing the material bases for its trade secret claim. Rather, it is disclosing a "subset" of "examples" it may rely in support of its claim. MGA is left to wonder what other facts and evidence Mattel is relying on and failing to disclose.

Mattel also blames MGA for its incomplete discovery responses by arguing that Mattel is unable to provide more evidence of misappropriation because MGA

Mexico only recently made its first production. This makes no sense. Mattel must have had some evidentiary basis for bringing suit, and it must disclose that to MGA. Mattel cannot blame MGA for failing to produce information it is presently aware of.

If MGA's interpretation of Mattel's expansive language is incorrect and Mattel has indeed disclosed all "principal and material" facts underlying its trade secret claim, Mattel need only state as much in amended, verified responses without including equivocal and ambiguous language. Until then, Mattel should be ordered to supplement its discovery responses to provide MGA with all "principal and material" facts underlying its trade secret claim. Mattel cannot be allowed to continually pad its discovery responses with wiggle-room that provides no certainty to MGA. MGA is entitled to definitive answers based on presently available knowledge regarding Mattel's trade secret claims.

### C. Mattel Must Provide Information Concerning Prior And Subsequent Drafts Of Documents That Memorialize Its Alleged Trade Secrets.

Phase 1 Interrogatory No. 20 presents another example of Mattel qualifying a response to a very simple discovery request. The request seeks documents that "refer or relate" to alleged trade secrets that Mattel claims were misappropriated. MGA's request will unquestionably lead to the discovery of admissible evidence— at a minimum as to whether the misappropriated documents have independent economic value, whether the claimed secrets are generally known or readily available, and whether Mattel has undertaken reasonable efforts to maintain the secrecy of the alleged trade secrets in those documents.

Specifically, if prior or subsequent drafts of the trade secret documents were distributed widely within Mattel or even shared with third-parties outside the company, MGA will have a stronger claim that the information memorialized in those documents cannot be considered a trade secret. Further, if documents specifically refer to the alleged secrets in a way that demonstrates the information is

either not considered confidential or of little value, that information is directly relevant. MGA is therefore requesting that prior drafts of the alleged trade secret documents; all memoranda or written communications discussing the identified trade secret documents or the drafting of the identified trade secret documents, including, but not limited to emails, summaries, or meeting minutes; or other documents discussing the trade secrets or their value to Mattel be identified by bates number.

All MGA wants is a fair representation of Mattel's efforts at maintaining the secrecy of its alleged trade secrets. To use the example cited by Mattel regarding its 2005 All World Line, prior and subsequent drafts and all written communications discussing the substance of the trade secret information contained in that document could provide valuable information regarding how widely distributed this document is within Mattel and who at Mattel has access to it. If information conveyed by Mattel's 2005 All World Line was circulated in a subsequent memorandum throughout a broad cross-section of Mattel or to a group of non-Mattel employees, this will bear directly on Mattel's burden to prove that it maintains the secrecy of its alleged trade secrets.

Mattel's principal argument in opposition to MGA's Interrogatory is that MGA's request is burdensome. However, as noted above, MGA is *not* requesting the identification of each and every document relied upon in the generation of the identified trade secret documents. By limiting its request to prior and subsequent drafts and all written communications discussing the content of the identified trade secret information, MGA has reasonably narrowed the scope of this discovery. Unless Mattel has failed to maintain reasonable efforts of secrecy, this should not result in "thousands" of pages of additional identifications.

Furthermore, MGA is not requesting information in furtherance of its own claims; MGA is requesting this information to respond to and defend against

Mattel's counterclaims. Any burden on Mattel is minimal in comparison to the millions of dollars in damages that it seeks from MGA in this case.

### D. Mattel Must Identify The Persons Who Had Access To Its Alleged Trade Secrets Even After They Were Allegedly Misappropriated.

Mattel claims that providing information regarding the individuals who had access to Mattel's trade secret documents after their alleged theft would be unduly burdensome. To prove its point, Mattel lists the purportedly overly burdensome steps it would need to take to identify such information for MGA: (1) review the stolen documents with Mattel employees, (2) locate old organizational charts, (3) review employment records to see if any Mattel employees had remained in each of those departments since the trade secrets were allegedly stolen, and (4) interview those employees for additional names of present or past employees who may have had access to these documents. *See* Opposition at 15-16. Even as they are listed on this page, Mattel's purported steps in having to secure the requested information cannot be considered burdensome. Quite the opposite, they summarize the steps one would expect Mattel to provide if it expected to recover millions of dollars in damages from MGA.

The relevance of the requested information cannot be denied. Mattel's efforts at secrecy following the alleged misappropriation bear directly on Mattel's diligence in maintaining the secrecy of its trade secrets, on whether such information was a trade secret in the first place, and on any claim of damages Mattel may pursue as a result of such alleged misappropriation. A claim of trade secret misappropriation does not absolve Mattel of its duty to maintain the reasonable secrecy of the trade secret after the fact. Unless, of course, Mattel decides that, upon MGA's alleged trade secret misappropriation, Mattel would not continue to protect such information as trade secret. If the information contained in these documents is no longer a trade secret, Mattel should be ordered to represent as much to MGA.

Regardless of whether the information memorialized in these documents is still a trade secret, however, MGA's request will still produce relevant information. If these documents are no longer trade secrets, information pertaining to Mattel's efforts of secrecy following an alleged misappropriation will be crucial, comparatively speaking, to MGA's assessment of Mattel's reasonable efforts of secrecy. If Mattel did not change its efforts of secrecy following a decision that such information was not protectable, this will bear on the reasonableness of its efforts when such information was previously considered a trade secret. If Mattel maintains that these documents are still trade secrets, an assessment of the persons with access to Mattel's alleged trade secrets, even after they were allegedly stolen, demonstrates whether they were trade secrets in the first place. These are sound justifications for compelling discovery.

Any way you slice it, the requested information is responsive and, as demonstrated above, can be provided by following normal, customary discovery procedures. Mattel is not claiming it cannot comply with MGA's discovery request; only that it does not want to. Mattel can alleviate its burden by narrowing the scope of its claims. Until Mattel does so, it is obligated to provide information that is reasonably calculated to lead to the discovery of admissible evidence.

### E. Mattel's Responses Should Be De-Designated As Confidential And Not Attorney Eyes Only.

Mattel's only reason for designating the responses as "Attorneys Eyes Only" is to assert that MGA has marked some of its responses the same. This misses the point. The reason these responses should be de-designated is that they do not contain any information that is even conceivably proprietary or competitively sensitive; the responses merely describe types of information without disclosing the information itself. MGA needs to know at least the type of information that it is accused of stealing if it is to defend itself.

**F.   Conclusion**

Mattel should be ordered to provide amended responses to MGA's Second Set of Phase 1 Interrogatory Nos. 20-23 and 28.

Dated:   October 9, 2009              ORRICK, HERRINGTON & SUTCLIFFE LLP

By: _____
William A. Molinski
Attorneys for MGA Parties