1    MELINDA HAAG (State Bar No. 132612)
     mhaag@orrick.com
2    ANNETTE L. HURST (State Bar No. 148738)
     ahurst@orrick.com
3    WARRINGTON S. PARKER III (State Bar No. 148003)
     wparker@orrick.com
4    ORRICK, HERRINGTON & SUTCLIFFE LLP
     The Orrick Building
5    405 Howard Street
     San Francisco, CA  94105-2669
6    Telephone:  +1-415-773-5700
     Facsimile:  +1-415-773-5759
7
     WILLIAM A. MOLINSKI (State Bar No. 145186)
8    wmolinski@orrick.com
     ORRICK, HERRINGTON & SUTCLIFFE LLP
9    777 South Figueroa Street, Suite 3200
     Los Angeles, CA  90017
10   Telephone:  +1-213-629-2020
     Facsimile:  +1-213-612-2499
11
     Attorneys for MGA Parties
12

13              UNITED STATES DISTRICT COURT

14              CENTRAL DISTRICT OF CALIFORNIA

15                   SOUTHERN DIVISION

16   CARTER BRYANT, an individual,      | Case No.  CV 04-9049 DOC (RNBx)

17          Plaintiff,                  | Consolidated with: Case No. CV 04-9059
                                        | and Case No. CV 05-2727
18       v.
                                        | **DISCOVERY MATTER**
19   MATTEL, INC., a Delaware           | [To Be Heard by Discovery Master
     corporation,                       | Robert O'Brien]
20
           Defendant.                   | **MGA DE MEXICO'S AND MGA
21                                       | ENTERTAINMENT HK, LTD.'S
                                        | REPLY IN SUPPORT OF MOTION
22   AND CONSOLIDATED ACTIONS           | TO COMPEL RESPONSES TO MGA
                                        | DE MEXICO'S
23                                       | INTERROGATORIES NOS. 1-11
                                        | AND MGA ENTERTAINMENT
24                                       | HK'S INTERROGATORIES NOS.
                                        | 1-25.**
25
26   **PUBLIC REDACTED VERSION**        | Date:        TBD
                                        | Time:        TBD
27
                                        | **Phase 2**
28                                       | Discovery Cutoff:    June 11, 2010

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................ 1

ARGUMENT ...................................................................................... 5

I.    MGA'S MOTION TO COMPEL RESPONSES SHOULD BE
      GRANTED IN ITS ENTIRETY ................................................. 5

      A.    The Information Sought By The Interrogatories At Issue Are
            Crucial To The MGA Parties Defense And Outweigh Any
            Burden ......................................................................... 5

      B.    The MGA Parties' Requests Are Not Unduly Burdensome In
            Light Of Mattel's Numerous, Broad, and Conclusory Trade
            Secret and RICO Allegations ........................................... 6

            1.    Mattel's Misappropriation Claims ............................ 6

            2.    Mattel's RICO Claims ........................................... 10

      C.    None of the MGA Parties Has Exceeded Its Interrogatory
            Allotment ................................................................... 13

      D.    Neither The Law of the Case Or Mattel's Cited Case Law
            Renders This Discovery Unduly Burdensome ................... 14

      E.    The Interrogatories Are Not Cumulative ......................... 17

      F.    Interrogatory No. 9 Is Specifically Relevant and Should Be
            Compelled .................................................................. 21

      G.    Mattel Can And Must Respond To The Interrogatories With The
            Information It Has Available, Regardless of Whether An Expert
            Will Ultimately Provide Opinion Testimony .................... 21

      H.    Mattel's Failure To Act In Good Faith Mandates An Award of
            Sanctions .................................................................. 25

II.   CONCLUSION ........................................................................ 26

1

# TABLE OF AUTHORITIES

2

## FEDERAL CASES

3
*American Booksellers Ass'n, Inc. v. Barnes & Noble, Inc.,*
    135 F. Supp. 2d 1031 (N.D. Cal. 200) ................................................................ 24
4

5
*Anza v. Ideal Supply Corp.,*
    547 U.S. 451 (2006) ................................................................................................ 11

6
*Berg v. First State Ins. Co.,*
    915 F.2d 460 (9th Cir. 1990) ................................................................................ 12
7

8
*Bridge v. Phoenix Bond & Indemnity Co.,*
    128 S. Ct. 2131 (2008) .......................................................................................... 11

9
*Cabrera v. Cordis Corp.,*
    134 F.3d 1418 (9th Cir. 1998) .............................................................................. 24
10

11
*City of Yonkers v. Otis Elevator Co.,*
    106 F.R.D. 524 (S.D.N.Y. 1985) .......................................................................... 22

12
*Claar v. Burlington Northern R. Co.,*
    29 F.3d 499 (9th Cir. 1994) ............................................................................ 24, 25
13

14
*Globespan, Inc. v. O'Neill,*
    131 F. Supp. 2d 1229 (C.D. Cal. 2001) ................................................................ 6

15
*Haven Temple SDA Church v. Consolidated Edison Corp.,*
    1995 WL 358788 (S.D.N.Y. June 13, 1995) ........................................................ 24
16

17
*Holmes v. Securities Investor Protection Corp.,*
    503 U.S. 258 (1992) ........................................................................................ 10, 11

18
*Howard v. America Online, Inc.,*
    208 F.3d 741 (9th Cir. 2000) ................................................................................ 12
19

20
*IBP, Inc. v. Mercantile Bank of Topeka,*
    179 F.R.D. 316 (D. Kan. 1998) ............................................................................ 17

21
*Imax Corporation v. Cinema Technologies, Inc.,*
    152 F.3d 1161 (9th Cir. 1998) .......................................................................... 7, 19
22

23
*King v. E.F. Hutton & Co., Inc.,*
    117 F.R.D. 2 (D.D.C. 1987) ...................................................................... 22, 23, 24

24
*Moses v. Halstead,*
    236 F.R.D. 667 (D. Kan. 2006) ............................................................................ 17
25

26
*Refac Intern., Ltd. v. Hitachi Ltd.,*
    141 F.R.D. 281 (C.D. Cal. 1991) .......................................................................... 22

27
*Safeco of America v. Rawstron,*
    181 F.R.D. 441 (C.D. Cal 1998) .......................................................................... 16
28

# TABLE OF AUTHORITIES
## (continued)

Page

*Salinas v. U.S.,*
522 U.S. 52 (1997) .................................................................. 12

*Sanderson v. International Flavors and Fragrances, Inc.,*
950 F. Supp. 981 (C.D. Cal. 1996)............................... 24, 25

*U.S. v. Philip Morris,*
396 F.3d 1190 (D.C. Cir. 2005) ........................................... 13

*Vinton v. Adam Aircraft,*
232 F.R.D. 650 (D. Colo. 2005) .......................................... 14

*Ziemack v. Centel Corp.,*
1995 WL 729295 (N.D. Ill. Dec. 7, 1995) .............. 23, 24, 25

*Zito v. Leasecomm Corp.,*
233 F.R.D. 395 (S.D.N.Y. 2006)........................................... 14

## STATE CASES

*Continental Car-Na-Var v. Moseley,*
24 Cal. 2d 104 (1944) ........................................................... 8

*Flir Systems, Inc. v. Parrish,*
2009 DJDAR 8599 (June 15, 2009) ....................................... 8

*Greyhound Corp. v. Super. Ct. (Clay),*
56 Cal. 2d 355 (1961) ........................................................... 5

*Thoren v. Johnston & Washer,*
29 Cal. App. 3d 270 (1972) .................................................. 5

*Whyte v. Schlage,*
101 Cal. App. 4th 1443 (2002)........................................... 6, 7

*Williams v. Volkswagenwerk Aktiengesellschaft,*
180 Cal. App. 3d 1244 (1986) .............................................. 5

## FEDERAL STATUTES

18 U.S.C. § 1962(c) ................................................................. 12

18 U.S.C. § 1962(d) ................................................................. 12

18 U.S.C. § 1964(c) ................................................................. 12

FED. R. CIV. P. 8 ........................................................................ 1

FED. R. CIV. P. 11 ....................................................... 4, 10, 22

**TABLE OF AUTHORITIES**
**(continued)**

Page

FED. R. CIV. P. 37(a) .......................................................................... 25

FED. R. CIV. P. 9(b) ........................................................................... 13

FED. R. CIV. P. 33(a) ......................................................................... 14

**STATE STATUTES**

CAL. CIV. PROC. CODE § 2019.210 ....................................................... 9

CAL. CIV. CODE § 3426 ..................................................................... 17

CAL. CIV. CODE § 3426.1(a) .......................................................... 9, 18

CAL. CIV. CODE § 3426.1(b) ............................................................. 18

CAL. CIV. CODE § 3426.1(b)(1) ...................................................... 9, 18

CAL. CIV. CODE § 3426.1(b)(2) ......................................................... 18

CAL. CIV. CODE § 3426.1(d)(1) ...................................................... 9, 18

CAL. CIV. CODE § 3426.1(d)(2) ......................................................... 18

**MISCELLANEOUS**

Local Rule 37 ................................................................................... 15

1

# **INTRODUCTION**

Mattel has alleged against the MGA Parties (also "MGA") an extremely broad, decade-long scheme to steal Mattel's trade secrets and to commit a host of other crimes, including but not limited to, mail, wire and bankruptcy fraud; copyright infringement; money laundering; and obstruction of justice. Mattel seeks massive damages for the alleged trade secret thefts, and triple its losses (plus attorneys' fees) for the claimed RICO violations. Its lengthy and convoluted TAAC is nearly incomprehensible in many respects, and fails to provide effective notice of many material issues.[1] Despite all of these factors underscoring the counter-defendants' need for adequate notice and a fair chance to prepare their defense – *i.e.*, their need for **discovery** – Mattel refuses to provide *any* responses to MGA Mexico and MGA HK's initial set of Phase 2 interrogatories focused on trade secret misappropriation and RICO violations. Mattel (the architect and general contractor of this overwrought and enormously expensive legal enterprise) insists it would be too burdensome and expensive to provide discovery – any discovery.

Despite its volume, Mattel's Opposition ignores the central issue concerning these requests: MGA Mexico and MGA HK seek, and are entitled to discover, the information underlying Mattel's allegations. Mattel is unexcused in its failure to substantively respond to the Interrogatories at Issue. These claims have been pending for four years, providing Mattel with ample time to discover evidence of MGA's purported bad acts. Indeed, Mattel has spent millions of dollars attempting to find evidence to support its claims against MGA. The interrogatories merely seek whatever evidence or information Mattel claims to have that support these claims. Contrary to Mattel's assertions, these interrogatories are narrowly tailored to obtain only those facts supporting Mattel's claim and each interrogatory

---

[1] The MGA Parties' Opposition to Mattel's pending motion to file an even more convoluted Fourth Amended pleading shows how Mattel's pleading practices have flouted FRCP 8's requirement of a plain and simply stated claim for relief.

addresses a discrete subset of Mattel's contentions and elements of its claims.

Moreover, if Mattel's excuses of burden, overbreadth, or its need for expert assistance in addressing its own claims were valid, no plaintiff in any case would be required to produce before trial the information it intends to use to prove its claims, much less produce information likely to lead to the discovery of admissible evidence. Instead, defendants would be left to guess the bases of plaintiffs' claims and scramble to prepare defenses when those bases were revealed at trial. This not only contradicts the basic notions of fairness, but also undercuts the very purpose of the federal civil discovery rules. Mattel must be compelled to respond with whatever evidence it has to support its allegations of trade secret misappropriation and RICO violation.

With respect to the trade secret claims, Mattel has accused the MGA Parties of misappropriating information concerning virtually every aspect of Mattel's business in the United States, Mexico and Canada. Mattel has so far identified over 40,000 documents that it considers Mattel trade secrets, without so much as indicating which, if any, have been misappropriated by MGA.[2] Indeed, even after Mattel has conducted full blown investigations of at least 100 former employees who left Mattel for better employment at MGA, Mattel can identify only eight as having documents from Mattel upon their departure. Even then, Mattel has not shown a single instance in which that information was in these employees' possession for any illegal purpose, let alone that MGA actually used or had access to the claimed Mattel trade secrets. To the contrary, MGA has repeatedly advised Mattel that it did not have access to, and did not use, Mattel trade secrets for its own benefit, and, in fact, has policies against employees using any such information. In other words, Mattel has no viable trade secret misappropriation claim. Nonetheless,

---

[2] Mattel's extremely over inclusive document identification includes hundreds, if not thousands, of documents that are not, and could not be, Mattel trade secrets. *See* Motion at 8.

as long as Mattel persists in its trade secret claims in their current broad form, Mattel must bear the burden it created itself by responding to discovery concerning those numerous vague claims.[3]  The Interrogatories at Issue seek only to discover the identity of the trade secrets claimed to have been misappropriated and the evidence supporting the statutory elements of a trade secret claim.

As for RICO allegations, Mattel's identifies 28 "racketeers" operating through three different RICO enterprises and three different conspiracies, to commit nine different predicate acts.  While it alleges these very serious violations, Mattel has yet to identify a single document or formulate a single interrogatory response that supports its claims.  The RICO interrogatory requests are straightforward and basic.  They seek to elicit who committed which acts constituting which predicate acts, who was associated with which enterprise(s) and which conspiracy/ies and which acts proximately caused which actual and specific harm(s) to Mattel's business or property.  The information sought does not require the assistance of an expert.  Where Mattel has such information, it must produce it.  Where Mattel lacks such information, it should simply state as much, *e.g.*, Mattel has no evidence that a particular person committed certain predicate acts, that a particular predicate act caused it actual harm, or that there is a definite amount of damages needed to compensate a claimed harm.  The MGA Parties can then attempt to excise those issues from the case or otherwise refocus their defense.

The burden, if there is one, of responding to discovery here flows from Mattel's decision to file a wide ranging decade-long RICO theory relying on a large number of enterprises, conspiracies, 'racketeers,' and predicate acts.

---

[3] Though Mattel complains of the burden of responding to the Interrogatories at Issue discussed in this Motion, Mattel ignores its own onerous requests on MGA. Mattel has served at least 18 interrogatories, 305 RFPs, 87 admission requests, 4 deposition notices, 2 third party subpoenas and 2 letters rogatory covering two countries.  Moreover, Mattel has filed no fewer than 4 discovery motions detailing why the burden on MGA is merited.  As in those instances, the burden on the parties in this litigation is coextensive with the number of claims raised and the breadth of the claims and the seriousness of the allegations

The remainder of Mattel's opposition rehashes arguments that have been repeatedly rejected by Judge Larson and the Discovery Master. For example, Mattel argues that the "law of the case" mandates that interrogatories be allocated per party as opposed to per side, while blatantly ignoring Judge Larson's order that Phase 2 discovery begins with a "clean slate" and Discovery Master O'Brien's confirmation of same; the only prohibitions on Phase 2 discovery are those set forth in the Federal Rules of Civil Procedure. Likewise, Mattel cannot refuse to respond to the requests by claiming that the information is in the hands of MGA or that responses are premature.[4] Mattel is obligated to provide substantive responses describing its bases for its claims.

Mattel's Opposition is the epitome of a shotgun approach to litigation; it argues every conceivable basis – including repeating some arguments multiple times – for avoiding its discovery obligations under the Federal Rules. Had Mattel spent a small fraction of the time it took penning its fifty-five page Opposition, or even some of the effort it exerted in seeking multiple bids for an extension in which to file its Opposition, actually responding to the Interrogatories at Issue, this motion would be unnecessary. Instead, Mattel wasted a significant amount of time, money, and paper to justify its refusal to provide a single substantive response to these contention interrogatories. At bottom, Mattel, bound by Federal Rule of Civil Procedure 11 and California case law, must provide the information on which it bases a right to assert these claims against the MGA Parties. Mattel must be compelled to reveal that information to the MGA Parties so that they may prepare their defense or drop the claims that Mattel cannot prove.

---

[4] Mattel asserts its right to invoke the attorney-client privilege in responding to the outstanding discovery requests. Even this argument is disingenuous as the MGA Parties have repeatedly informed Mattel that the requests were not designed or intended to seek information protected by the privilege. The MGA Parties' position has not changed. Still, the MGA Parties are entitled to all non-privileged information concerning Mattel's trade secret misappropriation and RICO claims.

# ARGUMENT

## I.   MGA'S MOTION TO COMPEL RESPONSES SHOULD BE GRANTED IN ITS ENTIRETY

### A.   The Information Sought By The Interrogatories At Issue Are Crucial To The MGA Parties Defense And Outweigh Any Burden

Mattel casts its misappropriation and RICO claims widely and without specificity.  Without substantive responses to the Interrogatories at Issue, MGA can neither discern what exactly Mattel claims MGA has done nor evaluate whether Mattel's claims are legally tenable.  Mattel now refuses to answer the Interrogatories at Issue – all the while steadfastly expending significant time and money to shirk its obligation to articulate its allegations until trial.

Discovery, however, is designed "to enhance the truth seeking function of the litigation process and eliminate trial strategies that focus on gamesmanship and surprise."  *Williams v. Volkswagenwerk Aktiengesellschaft*, 180 Cal. App. 3d 1244, 1254 (1986); *see also Thoren v. Johnston & Washer*, 29 Cal. App. 3d 270, 274 (1972) (internal citations omitted) ("One of the principal purposes of civil discovery is to do away with 'the sporting theory of litigation—namely, surprise at trial.'").  The discovery phase of litigation exists to "make trial less a game of blindman's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent."  *Greyhound Corp. v. Super. Ct. (Clay)*, 56 Cal. 2d 355, 376 (1961) (citations omitted).  Mattel must clarify what its claims are and provide the information supporting those claims now, else it will be allowed the opportunity to sandbag MGA at trial with new evidence after discovery has closed and severely prejudice MGA in its preparation of an adequate defense.

Not only would such an outcome directly contravene the jurisprudence undergirding our Federal Discovery rules, it would be materially unfair.  Mattel seeks treble damages – more than $500M – as well as approximately $100M in attorney's fees.  With such liability overhead, MGA is entitled to some real notice

of claims, and an opportunity to prepare a focused defense. Mattel claims compliance with the Interrogatories at Issue will costs it thousands of dollars in attorney time – a small fraction of what it seeks to recover from the MGA Parties, and an insufficient excuse for refusing discovery. Responses to the Interrogatories at Issue yield much more than a minimal benefit to MGA: they are essential to MGA's defense and MGA's due right.

**B.** **The MGA Parties' Requests Are Not Unduly Burdensome In Light Of Mattel's Numerous, Broad, and Conclusory Trade Secret and RICO Allegations**

**1.** **Mattel's Misappropriation Claims**

Though Mattel claims that responding to MGA Mexico's interrogatories is "make work," Mattel ignores the fact that it has failed to identify a single piece of evidence showing that any Mattel trade secret was ***used or disclosed*** at MGA, which is what Mattel must show to prove a trade secret claim against MGA. *Globespan, Inc. v. O'Neill*, 131 F. Supp. 2d 1229, 1235 (C.D. Cal. 2001) ("California courts require that the trade secret be *used* by the Defendant or *disclosed by* the Defendant to a third party.") Instead, Mattel points to the documents accessed or copied by certain former employees when leaving Mattel and has suggested that this fact alone suggests misappropriation by MGA. This argument relies wholly upon the theory of inevitable disclosure, which has been firmly rejected in California as a basis for a trade secrets claim. As the court in *Whyte v. Schlage*, 101 Cal. App. 4th 1443, 1463 (2002) stated:

> The inevitable disclosure doctrine permits an employer to enjoin the former employee without proof of the employee's actual or threatened use of trade secrets based upon an inference (based in turn upon circumstantial evidence) that the employee inevitably will use his or her knowledge of those trade secrets in the new employment. The result is not merely an injunction against the use of trade secrets, but an injunction restricting employment.

*Id.* at 1461-62. As a result, the court declared: "Lest there be any doubt about our

1  holding, our rejection of the inevitable disclosure doctrine is complete." *Id.* at

2  1463.  A former employee's removal of information from his prior employer is not

3  a basis for claiming misappropriation against his new employer absent proof of ***use***

4  or ***disclosure*** at his new job.

5      Lacking proof of the use or disclosure at MGA of any information taken by

6  these employees, Mattel has identified every piece of information these former

7  employees accessed, copied or viewed in their days at Mattel as the trade secrets

8  Mattel claims to have been misappropriated.  The universe of information includes

9  information on almost every aspect of Mattel's business.  As Mattel asserts in

10  describing the alleged conduct in Mexico:



14  Supplemental Declaration of Anthony A. DeCorso ("DeCorso Suppl. Dec.") Ex. 1,

15  104:8-12.  On this basis Mattel identifies over 40,000 pages of documents as the

16  trade secrets that were misappropriated, which, alone, is contrary to established

17  California law.  *See Imax Corporation v. Cinema Technologies, Inc.*, 152 F.3d 1161

18  (9th Cir. 1998) (noting that plaintiff's reference to 469 documents was insufficient

19  to identify the purported trade secrets with necessary particularity to survive

20  summary judgment).

21      Mattel has, then, set out on a fishing expedition hoping to find proof that any

22  of the 40,000 pages of claimed secrets were used by or disclosed to MGA.  Mattel's

23  discovery, therefore, has been as broad based as its alleged description of trade

24  secrets – addressing requests at virtually every aspect of MGA's business in the

25  U.S., Mexico and Canada.  So, for example, since Jorge Castilla removed from

26  Mattel documents regarding the work he did at Mattel on forecasting and inventory

27  systems, Mattel has sought every document at MGA on its development and use of

28

forecasting and inventory systems to see if there are any similarities Mattel can point to as evidence of use or disclosure at MGA of the documents taken by Mr. Castilla.  DeCorso Supp. Dec. Ex. 2, pp. 21-23.  Where Mattel asserts that Gustavo Machado was involved in marketing and sales at Mattel Mexico and took materials regarding sales and marketing when he left Mattel, Mattel has demanded every document at MGA Mexico regarding its sales or marketing in Mexico to see if Mr. Machado disclosed any Mattel secrets to MGA.  *Id.*, Ex. 3, pp. 19-20.  Where Mattel asserts that Janine Brisbois removed documents concerning Mattel's business with WalMart and Toys R Us, Mattel has sought every document exchange between MGA and these retailers in which Ms. Brisbois had any involvement.  *Id.*, Ex. 4, 21:12-23.

Not only has this approach been rejected by California courts – *i.e.*, bringing suit based on a former employee removing trade secrets without proof of use or disclosure at his new employer – courts have found that bringing such suits is bad faith.  *See Flir Systems, Inc. v. Parrish*, 2009 DJDAR 8599, 8600 (June 15, 2009) (an employee's download of a hard drive from its previous employer is not sufficient to sustain a claim of trade secret misappropriation and doing so merits an award of sanctions); *see also Continental Car-Na-Var v. Moseley*, 24 Cal.2d 104, 107-108 (1944) (speculation that a departing employee may misappropriate and use a trade secret in a competing business is not sufficient to sustain a claim).  Nonetheless, if Mattel is going to assert that the trade secrets that were misappropriated comprise everything removed from Mattel by these employees, then MGA is entitled to take discovery on each such claimed secret at the same level of detail as if Mattel claimed the theft of only a single trade secret.  That is exactly what MGA Mexico's interrogatories seek to obtain.  Specifically, the interrogatories seek:

- The specific identity of their purported trade secretes as required by

Cal. Civ. Proc. Code § 2019.210 – Interrogatory No 1.;

- Information concerning Mattel's claim that MGA obtained the information by improper means as defined by California Civil Code § 3426.1(a) & (b)(1) – Interrogatory No. 2;

- Information concerning Mattel's claim that MGA used or disclosed the purported trade secrets without the consent of Mattel as defined by California Civil Code § 3426.1(a). – Interrogatory 3;

- Information concerning Mattel's claim that MGA acquired the purported Mattel trade secrets from a person that MGA knew or had reason to know acquired the information by improper means as defined by California Civil Code § 3426.1(a)(1) – Interrogatory No. 4;

- Information concerning Mattel's claim that its purported trade secret derived independent economic value from not being generally known as defined by California Civil Code § 3426.1(d)(1) – Interrogatory No. 5;

- Information concerning Mattel's claim that its purported trade secret information was not known to the public as defined by California Civil Code § 3426.1 – Interrogatory No. 6; and

- Information concerning Mattel's effort to maintain the secrecy of the purported trade secret as defined by California Civil Code § 3426.1 – Interrogatory No. 7.

Finally, Mattel's Opposition does nothing to dispute its complete failure to provide the information requested and necessary to MGA's defense. Rather, in a single carefully worded sentence in fifty-five pages of text, Mattel states only that "MGA knows already why Mattel believes MGA "obtained through improper means" the trade secrets . . . ." Opposition at 27:22-24. Mattel's "belief" that trade

secrets were misappropriated is not evidence, much less proof, of trade secret misappropriation.  Mattel must not only identify its trade secrets with particularity, Mattel must also prove each element under the California Uniform Trade Secrets Act; evidence which MGA seeks to obtain through these interrogatories.  If Mattel has no such evidence, Mattel should dismiss its claims or face the consequences of maintaining a meritless action under Federal Rule of Civil Procedure 11 and California case law.

### 2.      Mattel's RICO Claims

For similar reasons, Mattel's Opposition fails to proffer any legitimate burden outweighing MGA HK's need to obtain discovery concerning Mattel's RICO allegations.  RICO liability requires proof that a person conducted the affairs of an enterprise through a pattern of racketeering (*i.e.*, two or more predicate acts), and proof of actual financial harm to the plaintiff's business or property.  *See Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258 (1992).  MGA's interrogatories seek to learn who committed which acts constituting which predicate acts, while associated with which enterprise(s) and what conspiracy/ies, to proximately cause what actual concrete harm(s) to Mattel's business or property.  If the discovery covers manifold issues, it is because RICO liability presents manifold issues.  Thus, the breadth and burden that Mattel complains of here flow from what it has *chosen* to plead, and so can hardly be characterized as undue or excessive.  Where Mattel has the information sought, it must produce it; where Mattel lacks such information, it must acknowledge that.  Mattel cannot hide the ball from now until trial.  That MGA HK assists Mattel in identifying the exact type of information it seeks in response to the interrogatories does not render them overly burdensome.  To the contrary, the detailed nature of the request lessens the burden on Mattel by encapsulating an outline of the information sought, so that Mattel can provide a narrative response addressing the basis for its RICO claims.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

The information is particularly necessary and relevant because Mattel's allegations are overly broad and expansive. The TAAC alleges many acts or episodes of alleged wrongdoing during ten years, by 28 individuals and entities associated with three overlapping enterprises and three overlapping conspiracies. Mattel claims that wrongdoing constituted multiple commission of nine different predicate acts, and numerous patterns of racketeering violating RICO. Mattel must provide discovery in support of those numerous factual elements of its RICO claims, *i.e.*, facts showing if and how the many acts or episodes of wrongdoing involved the commission of one or more genuine predicate acts that constituted a true pattern of racketeering. MGA Parties should not be required to guess as to these key issues, and Mattel should not be permitted to stretch onerous RICO liability to new lengths. This is particularly true of Mattel's wide ranging allegations of mail and wire fraud. Fraud is not a catch all for every alleged wrong that falls short of being a genuine RICO predicate act. Mattel must provide discovery identifying each alleged instance of fraud, and showing how the alleged acts, omissions, and/or statements satisfy the elements of mail or wire fraud.

Likewise, Mattel must prove that a pattern of racketeering (*i.e.*, two or more predicate acts) – and not other factors – caused it concrete harm to its business or property. *Holmes*, 503 U.S. 258 at 268; *Anza v. Ideal Supply Corp.*, 547 U.S. 451 (2006); and *Bridge v. Phoenix Bond & Indemnity Co.*, 128 S.Ct. 2131 (2008). Mattel cannot recover for losses resulting from market forces, bad management by Mattel, great marketing at MGA, drops in consumer spending, or other factors unrelated to racketeering. Discovery about this element of proximate cause is critical to the MGA Parties' defense. Yet Mattel refuses to provide it. Instead of answering the legitimate questions its claims have prompted, Mattel argues a distinction between predicate acts and patterns, which is a distinction resting on logical legerdemain. A pattern comprises two or more predicate acts. Though it

- 11 -

may be true that not every predicate act must be shown to have caused concrete harm, at least *one* of them must—else, there is no harm at all. *See* Opposition at 42:15-17. The MGA Parties are entitled to know which predicate acts Mattel claims caused it harm. Mattel is also confusing discovery and trial evidentiary standards. Mattel will not have to connect every predicate act with harm at trial, but we are not in trial. In discovery to prepare for trial, Mattel must disclose the facts regarding its claimed predicate acts and disclose whether and how each of the nine caused harm. If only some of the nine caused harm, Mattel should say so.

Mattel's Third Counterclaim also alleges, in conclusory fashion, that numerous persons and entities, including the counter-defendants, conspired to violate section 1962(c). A conspiracy claim under section 1962(d), requires proof that each counter-defendant joined a conspiracy to violate section 1962(c). That is, they **agreed** to use a **pattern** of racketeering to participate in the affairs of an enterprise. *Salinas v. U.S.*, 522 U.S. 52, 65 (1997); *Howard v. America Online, Inc.*, 208 F.3d 741, 751 (9th Cir. 2000). Mattel must prove the conspirators agreed to the same criminal objective (522 U.S. at 63), *i.e.* an agreement either to violate section 1962(c) or an agreement to commit or participate in at least two predicate acts (208 F.3d at 751). And, of course, a civil RICO conspiracy claim is not valid unless Mattel can show that it suffered actual harm to its business or property as a result of the conspiracy. 18 U.S.C. section 1964(c). The MGA Parties are entitled to know what evidence Mattel possesses to support its broad claims of conspiracy and injury.

Finally, MGA HK has crafted the Interrogatories at Issue specifically to determine whether Mattel suffered true RICO damages. Potential, speculative, contingent, intangible, or non-financial harms cannot be recovered; gains by MGA parties cannot be recovered. *Berg v. First State Ins. Co.*, 915 F.2d 460, 464 (9th Cir. 1990); *U.S. v. Philip Morris*, 296 F.3d 1190 (D.C. Cir. 2005). The TAAC says

very little about RICO damages, merely tracking conclusory language from the statute about available remedies.  It is time for Mattel to provide information about any actual cognizable RICO harm it claims to have suffered.  Mattel cannot seek *triple* damages while providing no supporting facts.

## C.   None of the MGA Parties Has Exceeded Its Interrogatory Allotment

Unbound by prior discovery limitations dictated in Phase 1 of this case, the Federal Rules of Civil Procedure govern interrogatory allocation in Phase 2: each party to this litigation is allowed to serve and seek responses to 25 interrogatories. Nothing in Mattel's Opposition dictates otherwise.  Moreover, MGA Mexico and MGA HK are well within their allotment of interrogatories.  MGA Mexico has propounded 11 interrogatories and MGA HK has propounded 25.  *See* Declaration of William A. Molinski ("Molinski Decl.") Exs. 1, 2.  Neither is any of the MGA Parties in excess of its interrogatory limit based on an Mattel's unsupported claim that the interrogatories are compound.  Even the examples Mattel cites in its Opposition clearly focus on one general subject seeking a narrative response on a common theme.  For example, with respect to MGA HK's Interrogatory No. 6, the interrogatory seeks information concerning Mattel's evidence of fraud as a predicate act for its RICO allegations.  The subparts merely break that common theme into the elements of the claim.  That is, c) through i) concentrate on the alleged fraud incidents; subparts a) and b) link those alleged acts to particular enterprises; and j) and k) focus on the resulting harm. MGA Mexico's Interrogatory No. 1 is similarly focused: subparts a) and f) aim to extract information about the alleged fraud incidents; b) and c) goes to who carried out those acts; and e) and f) focus on the resulting harm.  Fraud is an easily abused allegation; almost anything can be shoehorned into it.  MGA is entitled to know the specifics, especially since the TAAC runs afoul of Federal Rule 9(b) which require a plaintiff to allege "with particularity the circumstances constituting fraud."  Despite Judge Larson's ruling

that Phase 2 discovery is to begin fresh, Mattel argues that as a matter of fairness, the interrogatory limits of Phase 1 should carry over. The issues in Phase 1 of this case, however, differ substantially from the myriad allegations against the MGA Parties here. Phase 1 concerned only the ownership of the Bratz copyright. Here, MGA is accused of a decade-long enterprise to defraud Mattel.

Contrary to what Mattel argues, per-side allocation is nonsensical here; it would leave Mattel's many and vague claims unvetted and MGA seriously prejudiced. Mattel relies in vain on *Vinton v. Adam Aircraft*, 232 F.R.D. 650, 664 (D. Colo. 2005) and *Zito v. Leasecomm Corp.*, 233 F.R.D. 395, 399 (S.D.N.Y. 2006) to substantiate its stance. In *Vinton*, the court limited interrogatories to 25 per side because—to use Mattel's own language—"the two defendants were alleged to be alter egos of one another." Opp. at 9. Mattel has not alleged here that any of MGA's subsidiaries, like MGA Mexico and MGA Hong Kong, are alter egos of each other; Mattel only claims they have "aligned litigation interests." *Id.* Nonetheless, Mattel alleges a vast conspiracy among these entities who are each accused of being somehow involved in a different way and each of them should be allowed its own discovery. *Vinton* does not mandate otherwise. As for its use of *Zito*, Mattel disingenuously suggests that the case mandates per-side counting as opposed to a per-party counting of interrogatories. Opp. at 9. This proposition, however, is not the holding of the case; it is dicta in a case where the Judge ultimately refuses to decide on the interpretation of Federal Rule 33(a).

### D.   Neither The Law of the Case Or Mattel's Cited Case Law Renders This Discovery Unduly Burdensome.

Mattel misstates both the "law of the case" and case law to manufacture an argument that the Interrogatories at Issue are somehow unduly burdensome. First, Mattel blatantly misrepresents the "law of the case" with respect to Phase 2 discovery, arguing that discovery rulings in Phase 1 necessarily apply to Phase 2.

This argument ignores both Judge Larson's and Discovery Master O'Brien's mandate that discovery for Phase 2 is to start fresh. Again, Judge Larson explained that the Court has "placed no limits, no restriction, other than what is set forth in the rules of civil procedure and in local rule 37 on discovery from this point until [Phase 2 trial]." Motion at 5.

*Id.*

Additionally, even Mattel's own examples reveal that the MGA Parties and Bryant provided substantive responses to Mattel's requests, in stark contrast to Mattel's purported responses here. As conceded by Mattel, responses were served that offered summaries of the MGA Parties' contentions, cites to deposition testimony and documents and incorporation by reference of other interrogatory responses. *See* Opposition at 31:5-7. Those same responses were again supplemented to include additional information sought by Mattel after motion practice before the Discovery Master. The result is that those responses were far more detailed than Mattel's "responses" to the Interrogatories at Issue here. Indeed, Mattel's "responses" consist entirely of objections. The MGA Parties are entitled to information concerning proof of its claims and that information must be provided by Mattel.

Finally, the Interrogatories at Issue are no different from the litany of requests served by Mattel on the MGA Parties. For example, Mattel propounded discovery seeking information regarding MGA Parties alleged theft of certain Mattel documents.[5] Unsatisfied with the responses, Mattel filed a motion to compel supplemental responses and the Discovery Master ordered that MGA provide

---

[5] *See* Mattel's Supplemental Interrogatories dated January 9, 2008; DeCorso Suppl. Dec., Ex. 5.

additional information.[6]  MGA complied with that order and served over 25,000 pages of substantive responses.[7]  Still, Mattel persisted and MGA responded with a second supplemental response.  MGA did not merely point to a set of documents and tell Mattel to go find the responsive information. MGA, in narrative form, properly responded to each of the requests.[8]  If there is any applicable "law of the case," it is that each party is obligated to comply with the discovery obligations detailed in the Federal Rules of Civil Procedure.

Neither does the case law relied upon by Mattel support its argument that the Interrogatories at Issue are burdensome.  For example, while Mattel asserts *Safeco of America v. Rawstron*, 181 F.R.D. 441, 447-448 (C.D. Cal 1998) bars interrogatories with multiple subparts, that is not the holding in this case.  *Safeco* addressed a series of requests for admissions and a related interrogatory that sought all facts upon which a denial to any of the requests for admission was based.  The court narrowly held that allowing such an interrogatory would transform the requests for admissions into 50 distinct and separate interrogatories.  In other words, the request would be an end run on the discovery limits imposed by the Federal Rules of Civil Procedure.  The Interrogatories at Issue here do not present an analogous situation.  To the contrary, the Interrogatories at Issue address discrete topics concerning a common theme and seek narrative responses identifying the evidence Mattel has to prove its claims of trade secret misappropriation and RICO Act violations.  Each interrogatory addresses a specific element and seeks information about that element.  The other cases cited by Mattel are likewise

---

[6] *See* Mattel's Motion to Compel Responses to Interrogatories and Production of Documents by MGA and Isaac Larian dated February 10, 2009; DeCorso Suppl. Dec., Ex. 6.
[7] *See* MGA and Larian's First Supplemental Responses to Mattel's Supplemental Interrogatories Nos. 56-63 dated July 8, 2009; DeCorso Suppl. Dec., Exs. 7 & 8.
[8] *See* MGA and Larian's Second Supplemental Responses to Mattel's Supplemental Interrogatories Nos. 56-63 dated August 20, 2009; DeCorso Suppl. Dec., Exs. 9 & 10.

inapposite. *IBP, Inc. v. Mercantile Bank of Topeka*, 179 F.R.D. 316, 321 (D. Kan. 1998) concerns requests where every interrogatory sought "every fact and every application of law to fact which supports the identified allegations", while *Moses v. Halstead*, 236 F.R.D. 667, 674 (D. Kan. 2006), addressed an interrogatory that sought all facts concerning every defense and affirmative defense alleged separated by defense. Again, the Interrogatories at Issue seek narrative information concerning discrete claims of trade secret misappropriation and RICO Act violations.[9] Accordingly, Mattel must be compelled to respond to the requests.

## E. The Interrogatories Are Not Cumulative

Mattel claims that the Interrogatories at Issue require a redraft of prior responses. Opposition at 39. This is not true.[10] Each of these requests seeks a narrative about specific elements of the Trade Secret and RICO claims not previously requested. For example:

- MGA Mexico's Interrogatory Nos. 1-7 do not seek the same information in a new format as Interrogatory Nos. 20-23 and 28 of MGA's Second Set of Interrogatories. Opposition at 39. As discussed in B.1, supra, the instant interrogatories are specifically and narrowly tailored to obtain information relating to the elements of Mattel's trade secret misappropriation claim. Indeed, the interrogatories track the elements of the California Trade Secret Act. *See* Civil Code section 3426. In other words, Interrogatory No. 1 seeks documents that contain trade secrets Mattel claims were misappropriated by MGA.

---

[9] Even if Mattel could show that the cited cases were applicable, Mattel has failed to provide even the material facts supporting its claims of trade secret misappropriation or RICO Act violations. As discussed above, Mattel has not identified any use of the purported Mattel trade secrets, has not identified any predicate act and has not identified any damage to itself or its business.

[10] Assuming *arguendo* that Mattel was correct in its blanket assertion that certain interrogatories are duplicative of previous requests, the burden on Mattel to respond would be minimal. Mattel could simply reference its previous responses. Mattel did not do so here, precisely because it knows this argument lacks merit. These interrogatories seek information Mattel has yet to provide to the MGA Parties.

*See* § 3426.1(b).  Interrogatory No. 2 seeks documents identified in Interrogatory No. 1 that Mattel claims MGA obtained through improper means.  *See* § 3426.1(a).  Interrogatory No. 3 seeks documents identified in Interrogatory No. 1 that Mattel claims MGA used or disclosed without Mattel's consent.  *See* § 3426.1(b)(2). Interrogatory No. 4 seeks documents identified in Interrogatory No. 1 that Mattel claims MGA acquired.  *See* § 3426.1(b)(1).  Interrogatory 5 seeks documents identified in Interrogatory No. 1 that Mattel claims derive independent value from not being generally known to the public.  *See* § 3426.1(d)(1).  Interrogatory No. 6 seeks documents identified in Interrogatory No. 1 that Mattel claims were not known to the public.  *See* § 3426.1(d)(1).  Interrogatory No. 7 seeks documents identified in Interrogatory No. 1 that Mattel claims were subject of efforts that are reasonable under the circumstances to main its secrecy.  *See* § 3426.1(d)(2).  Interrogatory Nos. 20-23 and 28 of MGA's Second Set of Interrogatories, on the other hand, focus on the identity of each of Mattel's alleged trade secret and the identity of each of Mattel's counterclaim respectively and all documents referring or relating to those trade secrets.  *See* MGA's Second Set of Interrogatories to Mattel, Hauler Dec., Exh. 6, at Interrogatory Nos. 20-23 and 28.  These are different questions, worded more broadly, than the Interrogatories at Issue, that seek information at a more grander level so that MGA can determine not only the identity of documents containing trade secrets, but the specific information in those documents that constitutes the trade secrets allegedly misappropriated.  The distinction is even more apparent when reviewing Mattel's response to the prior interrogatories.  Rather than

identify the specific trade secrets Mattel claims have been misappropriated,  Mattel  inappropriately identified over 40,000 pages of documents.  *See Imax Corporation v. Cinema Technologies, Inc.*, 152 F.3d 1161 (9th Cir. 1998) (noting that plaintiff's reference to 469 documents was insufficient to identify the purported trade secrets with particularity).  Mattel's document dump is insufficient to bear any meaningful defense by MGA, and in order to remedy such an unfair plight, Interrogatories Nos. 1-7 seek on a document by document basis any information that Mattel has that the trade secrets were disclosed and used by MGA.

- Likewise, the instant interrogatories on RICO issues do not seek the same information responsive to Interrogatory Nos. 28 of MGA's Second Set of Interrogatories and Interrogatory No. 5 of MGA's First Set of Phase 2 Interrogatories.  Opposition at 39.  The instant interrogatories are crafted to specifically uncover information concerning Mattel's RICO Act allegations and whether Mattel suffered true RICO damages.  As with the trade secret interrogatories, each interrogatory addresses a specific element and seeks information on that element.  Interrogatory Nos. 5 of MGA's First Set of Phase 2 Interrogatories and 28 of MGA's Second Set of Interrogatories on the other hand focus on the identity of any damages that Mattel contends it suffered as a result of RICO activities of MGA and the identity of each of Mattel's counterclaims respectively.  *See* MGA's Second Set of Interrogatories to Mattel, Hauler Dec., Exh. 6, at Interrogatory No. 28; MGA's First Set of Phase 2 Interrogatories, Hauler Dec., Exh. 14, at Interrogatory No. 5.  Again, Mattel's response to the prior interrogatory is instructive as to the differences between that and the

1 current interrogatories.  Mattel's supplemental response to
2 Interrogatory No. 28 of MGA's Second Set of Interrogatories lacks
3 any kind of intelligent specificity to parse out relevant information.  In
4 fact, it does not even address a single alleged predicate act in terms of
5 Mattel's RICO claims.  Moreover, though Mattel asserts it will
6 respond to Interrogatory No. 5 of MGA's First Set of Phase 2
7 Interrogatories, it has yet to do so.  Even then, the interrogatory does
8 not seek the same information.  Interrogatory No. 5 seeks information
9 regarding identity of any damages Mattel contends to have suffered as
10 a result of RICO violations as a general matter.  The instant RICO
11 interrogatories on the other hand seek to learn who committed what
12 acts that constituted what predicate acts, while associated with what
13 enterprise(s) and what conspiracy(s), to proximately cause what actual
14 concrete harm(s) to Mattel's business or property.

- Nor are the interrogatories regarding Mattel's damages cumulative of
Interrogatory Nos. 1-3 of MGA's First Set of Interrogatories and
Interrogatory No. 29 of MGA's Second Set of Interrogatories.
Opposition at 39.  Interrogatories regarding Mattel's damages are
narrowly tailored to seek factual information concerning how Mattel
has estimated or calculated the massive damages Mattel contends it
suffered owing to MGA's trade secret misappropriation and/or RICO
violations.  Unlike the interrogatories regarding Mattel's damages,
Interrogatory Nos. 1-3 of MGA's First Set of Interrogatories focus on
the identity of documents that support Mattel's contention that it
suffered harm as a result of *any* act of MGA.  *See* MGA's First Set of
Interrogatories, Hauler Dec., Exh. 5, at Interrogatory Nos. 1-3.
Similarly, Interrogatory No. 29 of MGA's Second Set of

Interrogatories focuses on the calculation of damages, loss, injury, or unjust enrichment, by reason of *any* act of MGA alleged by Mattel. *See* MGA's Second Set of Interrogatories, Hauler Dec., Exh. 6, at Interrogatory No. 29. In sum, the interrogatories related to Mattel's damages seek specific information owing to trade secret misappropriation and RICO violation claimed by Mattel and are not cumulative of previous interrogatories on the same general topic that focused on *any* act of MGA.

F. **Interrogatory No. 9 Is Specifically Relevant and Should Be Compelled.**

Suspiciously, of all the Interrogatories at Issue, Mattel specifically and vehemently protests responding to Interrogatory No. 9. Yet the request is one of the most relevant to Mattel's RICO claims. The request seeks communications between Mattel and government agencies regarding alleged misconduct by MGA. These communications would reveal Mattel's RICO claim theory and would likely provide the MGA Parties with added detail concerning Mattel's allegations. Likewise, to the extent that Mattel alleged MGA misconduct to the government entities and the entities failed to identify any illegal act, that information is directly relevant to disprove Mattel's theories. Moreover, the same information is directly relevant to MGA's equitable defenses including unclean hands. Finally, Mattel's assertion that responding to this interrogatory would be overly burdensome is indefensible. The burden is no greater than it was when Mattel alleged misconduct to these governmental agencies.

G. **Mattel Can And Must Respond To The Interrogatories With The Information It Has Available, Regardless of Whether An Expert Will Ultimately Provide Opinion Testimony.**

Despite Mattel's argument to the contrary, the Interrogatories at Issue are not premature. For example, the RICO claims have been pending for more than two years and Mattel's allegations of RICO Act violations must be based on some fact

specific knowledge. Mattel should rightfully produce the information it has gathered during this time. Avoiding these issues simply with objections is unacceptable and suggests stalling or concealment of information. To the extent that Mattel argues it cannot answer these interrogatories without expert help, it is not acting in good faith. Indeed, Mattel did not even mention its inability to answer these interrogatories based on this meritless argument at the Meet and Confer session. DeCorso Suppl. Dec. ¶ 12. If Mattel now contends that it cannot articulate the harm it has suffered without an expert, Mattel should state that in a response, under oath.

Case law requires that a party respond to discovery to identify the evidence of the allegations contained in the complaint. Indeed, courts have observed that "it is inconceivable that, after bringing the claims in this case, plaintiffs have objected to interrogatories requesting specific and detailed information as to the amounts of each loss, how those amounts were determined, how each loss is attributable to the acts of the defendants . . . ." *King v. E.F. Hutton & Co.*, Inc. 117 F.R.D. 2, 5 (D. D.C. 1987). Mattel cannot hide behind objections, it must respond. While an expert may be necessary to refine the evidence of Mattel's loses, Mattel must have had some factual basis for concluding they had sustained losses at the time the complaint was filed. *See id.* This is indeed the exact kind of information MGA seeks and Rule 11 of the Federal Rules requires no less. *See* Fed. R. Civ. Pro. Rule 11. Rule 11 is designed to insure that allegations made in a complaint drafted by a member of the bar of the court are supported by a sufficient factual predicate at the time that the claims are asserted. *City of Yonkers v. Otis Elevator Co.* 106 F.R.D. 524, 525 (S.D.N.Y. 1985); *see also Refac Intern., Ltd. v. Hitachi Ltd.*, 141 F.R.D. 281, 287 (C.D. Cal. 1991) (Rule 11 imposes an affirmative duty of investigation both as to law and as to fact before a paper is filed with the court.)

The information that MGA seeks does not require any analysis, let alone an

expert witness. MGA is entitled to information that shows how alleged predicate acts caused actual harm to Mattel. Such basic factual information pertaining to claims that Mattel has made does not require analysis by an expert. Further, estimates or calculations of damages do not require expert analysis either. *See King*, 117 F.R.D at 5. For example, if Mattel lost specific accounts or incurred specific damage or particular assets, or knows certain sales drop offs are attributable to a pattern of racketeering, it should identify them. It is not a stretch to assume that Mattel's in-house business analysts have contended that certain out of pocket expenses (*e.g.*, increased advertising and marketing costs) were incurred in response to the to MGA's alleged pattern of racketeering. MGA is entitled to such basic factual raw data and should not have to guess or wait until trial to hear of these losses. Indeed, even the case law cited by Mattel stands for the exact same proposition. *See Ziemack v. Centel Corp.*, 1995 WL 729295, *3 (N.D. Ill. Dec. 7, 1995) (Rather, Plaintiffs' provision of information regarding the *fact* of their damages will suffice, even if the only such underlying facts are the raw data on stock prices.)

However, to bolster its meritless objection, Mattel singles out MGA HK's interrogatory No. 4 as one of the interrogatories that "go to Mattel's damages theories." Opposition at 51. However, Mattel's claim is a fallacy.

**MGA Hong Kong Interrogatory No. 4:**

> As to each injury to its business or property which MATTEL claims was proximately caused by the actions and/or omissions alleged in the Second and Third Counterclaims of the TAAC:
> (a) state all facts regarding the precise nature and type of that injury;
> (b) state all facts regarding the RICO predicate act(s) and/or pattern of racketeering that proximately caused that injury;
> (c) IDENTIFY which PERSONS employed by or associated with which RICO enterprises committed the RICO predicate

1           act(s) and/or pattern of racketeering that proximately caused that injury;

2                   (d) state all facts regarding how MATTEL has

3           calculated or estimated the monetary damages for that injury (and if it has not, why not); and

4                   (e) IDENTIFY all PERSONS MATTEL believes have

5           knowledge of the information requested in this Interrogatory.

6

7        Clearly, subparts (a), (b), (c) and (e) do not need expert analysis.  Mattel

8  should not be allowed to avoid identifying the types of injuries it claims (subpart

9  (a)), or MGA's acts that caused the injury (subpart (b)), or who it thinks caused

10  those injuries (subpart (c)), or knows about these injuries (subpart (e)).  Assuming

11  *arguendo* that subpart (d) could benefit from an expert, however, Mattel still cannot

12  rightfully refuse identifying the raw data an expert might rely on.  *See King*, 117

13  F.R.D at 6 ("While an expert may be helpful to the plaintiffs, the value of this

14  expert's opinions will depend upon the facts upon which his opinions are\

15  predicated.  For this reason, it is important to have the facts upon which the

16  plaintiffs personally rely in claiming they had losses in order to test the factual basis

17  for the expert's opinions.")

18        Further, the case law cited by Mattel in support of its argument is also wholly

19  inapposite.  None of the cases is about discovery issues, let alone interrogatory

20  responses.  None of the cases involves RICO claims, fraud, trade secret or

21  copyright infringement – the subject matter of these cases range from anti-trust (*see*

22  *American Booksellers Ass'n, Inc. v. Barnes & Noble, Inc.*, 135 F.Supp. 2d 1031

23  (N.D. Cal. 200); to class actions (*see Haven Temple SDA Church v. Consolidated*

24  *Edison Corp.*, 1995 WL 358788 (S.D.N.Y. June 13, 1995); *Ziemack v. Centel*

25  *Corp.*, 1995 WL 729295 (N.D. Ill. Dec. 7, 1995)); to personal injury (*see Cabrera*

26  *v. Cordis Corp.*, 134 F.3d 1418 (9th Cir. 1998); *Claar v. Burlington Northern R.*

27  *Co.*, 29 F.3d 499 (9th Cir. 1994); *Sanderson v. International Flavors and*

28  *Fragrances, Inc.*, 950 F.Supp. 981 (C.D. Cal. 1996)).  None of these cases even

suggests that Mattel can avoid answering the interrogatories MGA rightfully seeks in this action.  For example, *Claar* involves Federal Employers' Liability Act ("FELA") that has a lower evidentiary standard for causation than common law torts asserted in this case and therefore should be ignored.  29 F.3d 499 at 503. ("It is true that under FELA the quantum of evidence sufficient to present a jury question of causation is less than it is in a common law tort action.")  And far from our case, in *Sanderson*, the court noted that California law applied and dictated that in personal injury cases, proof must be to "a reasonable medical probability based on competent expert testimony." 950 F.Supp. 981 at 984.  As Mattel will surely agree, MGA is not seeking any "reasonable medical probability" in these interrogatories.  In *Ziemack*, the plaintiff contended that certain interrogatories required testimony of experts.  In response, the court held that "[i]n a securities action, where the securities may be easily liquidated, damages can be generally ascertained by looking at the market price. The more difficult part of the analysis involves *ascertaining the extent* to which the drop in stock price was caused by any actionable information disseminated by Defendants into the marketplace. . . . the discovery thereof is more appropriately within the experts' domain" 1995 WL 729295 at *3 (emphasis added.)  As a threshold matter, this is not a securities fraud class action suit.  Secondly, MGA is not asking Mattel to "ascertain[] the extent" of the damage it claims was caused by MGA; instead, it only seeks relevant, raw factual data that Mattel relies on or will rely on in calculating its damages.  Such information is not within any "experts' domain."  Hence, Mattel's objection should be ignored.

## H. Mattel's Failure To Act In Good Faith Mandates An Award of Sanctions

By Mattel's own admission, sanctions are appropriate where "the losing party was not substantially justified in making or opposing the motion."  Fed. R. Civ. P. 37(a).  Mattel has failed to respond to the Interrogatories at Issue in any

1   substantive way.  Moreover, Mattel has failed to meet and confer in good faith: it

2   did not detail any of the reasons it has for refusing to respond to the interrogatories.

3   For example, while Mattel argues that it has already provided discovery concerning

4   its RICO claims in its Opposition, Mattel made no mention of this during the meet

5   and confer sessions, much less point to where it had previously provided the

6   information.  DeCorso Suppl. Dec. ¶ 12.  Likewise, Mattel claims that the MGA

7   Parties volunteered to clarify which predicate acts were "square pegs in a round

8   hole."  *Id.*  This is simply not true.  *Id.*  In fact, it was Mattel that was to reconsider

9   its more noxious objections in the responses and provide its position as to those

10  objections.  *Id.*  Mattel did not do so.  *Id.*  Nonetheless, Mattel is not substantially

11  justified in refusing to respond to the interrogatories in any manner.  Mattel should

12  be compelled to respond to the interrogatories and sanctioned for requiring the

13  MGA Parties to file this motion to obtain those responses.

## II.   CONCLUSION

14       For all of the foregoing reasons, MGA respectfully requests that the

15  Discovery Master grant MGA's Motion to Compel and order Mattel to provide

16  substantive responses to the interrogatories.

17  Dated:  October 9, 2009            ORRICK, HERRINGTON & SUTCLIFFE LLP

18

19

20                                     By: _____
                                            William A. Molinski
21                                     Attorneys for MGA ENTERTAINMENT, INC.,
22                                     MGA ENTERTAINMENT HK, LTD., MGA de
                                       MEXICO, S.R.L. de C.V., and ISAAC LARIAN
23

24

25

26

27

28