1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
   John B. Quinn (Bar No. 090378)
2    (johnquinn@quinnemanuel.com)
   Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
   Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
6  Facsimile: (213) 443-3100

7  Attorneys for Mattel, Inc.

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                  SOUTHERN DIVISION

| | |
|---|---|
| 11  MATTEL, INC., a Delaware corporation, | CASE NO. CV 04-9049 DOC (RNBx) Consolidated with Case Nos. CV 04-09059 & CV 05-2727 |
| 12 | |
| 13          Plaintiff, | **DISCOVERY MATTER** |
| 14     vs. | **[To Be Heard By Discovery Master Robert C. O'Brien Pursuant To Order Of January 6, 2009]** |
| 15  MGA ENTERTAINMENT, INC., a California corporation, et al., | |
| 16          Defendant. | MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL *IN CAMERA* REVIEW OF IMPROPERLY WITHHELD NON-LEGAL LARIAN COMMUNICATIONS |
| 17  AND CONSOLIDATED ACTIONS | |
| 18 | |
| 19 | [Declaration of Zachary D. Krug and Appendix of Privilege Log Entries Submitted Concurrently] |
| 20 | |
| 21     **[PUBLIC REDACTED]** | Hearing Date:   TBD |
| 22 | Time:        TBD Place:       Arent Fox LLP |
| 23 | **Phase 2:** Discovery Cut-off:   June 1, 2010 |
| 24 | Pre-trial Conference:  TBD Trial Date:       TBD |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

1   TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2           PLEASE TAKE NOTICE that, at a hearing date to be set by Discovery

3   Master Robert C. O'Brien, Mattel, Inc. ("Mattel") will and hereby does move the

4   Court, pursuant to Federal Rules of Civil Procedure 26 and 37, for an order

5   compelling MGA Entertainment, Inc. ("MGA") and Isaac Larian ("Larian") to

6   produce to the Discovery Master for *in camera* review and, if appropriate based on

7   such review, produce to Mattel specified documents and communications

8   improperly withheld on MGA's and Larian's privilege logs under a claim of

9   privilege.[1]  These privilege log entries are enumerated in Appendix A.[2]

10          This Motion is made pursuant to Federal Rules of Civil Procedure 26

11  and 37 on the grounds that MGA and Larian are improperly withholding non-

12  privileged documents and communications that are relevant to Mattel's claims and

13  defenses, and that MGA and Larian have failed to establish the privileges claimed.

14          This Motion is based on this Notice of Motion and Motion, the

15  accompanying Memorandum of Points and Authorities and Appendix of MGA

16

17
[1]   Excerpts of the relevant privilege logs produced by MGA and Larian, as revised, are
18  attached to the concurrently filed Declaration of Zachary D. Krug ("Krug Decl."). See
19  MGA's Supplemental Privilege Log – August 14, 2007, revised March 20, 2008 and April
    17, 2009 ("Rev. Aug. Log"), Krug Decl., Ex. 1; MGA's Supplemental Privilege Log –
20  September 5, 2007, revised March 20, 2008 and May 5, 2009 ("Rev. Sept. Log"), Krug
    Decl., Ex. 2; MGA's Privilege Log for MGA's October 17, and October 19, 2007
21  Document Production, dated November 16, 2008 ("Oct. Log"), Krug Decl., Ex. 3; Isaac
22  Larian's Privilege Log, dated January 15, 2008 ("Jan. 15 Log"), Krug Decl., Ex. 4; MGA's
    Supplemental Privilege Log for MGA's October 2007 Document Production, dated
23  January 22, 2008 ("Supp. Oct. Log"), Krug Decl., Ex. 5; MGA's Privilege Log – January
    23, 2008, revised January 25, 2008 and April 9, 2009 ("Rev. Jan. 23 Log"), Krug Decl.,
24  Ex. 6; MGA's Privilege Log – January 28, 2008, revised February 8, 2008 ("Rev. Jan. 28
25  Log"), Krug Decl., Ex. 7; Isaac Larian's Privilege Log – January 30, 2008, revised April 9,
    2009 ("Rev. Jan. 30 Log"), Krug Decl., Ex. 8.
26  [2]   Appendix A lists each privilege log entry at issue in this motion, including all the
27  relevant information about such entries provided in the corresponding revised privilege
    logs.
28

1 | Privilege Log Entries, the concurrently filed Declaration of Zachary D. Krug, the
2 | records and files of this Court, and all other matters of which the Court may take
3 | judicial notice.

### Statement of Compliance

5 | On September 9, 2009, Mattel requested a meet and confer with MGA
6 | regarding the issues set forth in this Motion.   Thereafter, MGA refused to
7 | substantively engage Mattel on these issues.

10 | DATED:  October 13, 2009

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By B. Dylan Proctor /ZDK

B. Dylan Proctor
Attorneys for Mattel, Inc.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND ................................................................................................. 1

I.   MGA BEARS THE BURDEN OF SUBSTANTIATING ITS CLAIMS OF PRIVILEGE AS TO THE WITHHELD COMMUNICATIONS............... 7

II.  COMMUNICATIONS WITH IN-HOUSE COUNSEL THAT RELATE TO BUSINESS MATTERS ARE SUBJECT TO HEIGHTENED SCRUTINY............................................................................. 8

III. *IN CAMERA* REVIEW OF LARIAN'S COMMUNICATIONS WITH IN-HOUSE COUNSEL IS WARRANTED....................................................... 11

CONCLUSION.................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

AAMCO Transmissions, Inc. v. Marino,
   1991 WL 193502 (E.D. Pa. Sept. 24, 1991)........................................................10

B.F.G. of Illinois, Inc. v. Ameritech Corp.,
   2001 WL 1414468 (N.D. Ill. Nov. 13, 2001).............................................10, 14, 15

Blankenship v. Hearst Corp.,
   519 F.2d 418 (9th Cir. 1975) ................................................................7

In re CV Therapeutics, Inc. Secs. Litig.,
   2006 WL 2585038 (N.D. Cal. Aug. 30, 2006) ........................................................9

Cal. Union Ins. Co. v. Nat'l Union Fire Ins. Co.,
   1989 WL 48413 (N.D.N.Y. Apr. 27, 1989) ................................................8

Claude P. Bamberger Int'l, Inc. v. Rohm & Haas Co.,
   1997 WL 33762249 (D.N.J. May 18, 1997)................................................8

DeKalb Genetics Corp. v. Pioneer Hi-Bred Int'l,
   2002 WL 318129 (N.D. Ill. Feb. 28, 2002)................................................14

Matter of Fischel,
   557 F.2d 209 (9th Cir. 1977) ................................................................8

Georgia-Pacific Corp. v. GAF Roofing Mfg. Corp.,
   1996 WL 29392 (S.D.N.Y. Jan. 25, 1996) ................................................9

In re Grand Jury Proceedings,
   2001 WL 1167497 (S.D.N.Y. Aug. 13, 2001) ................................................8

HPD Labs., Inc. v. Clorox Co.,
   202 F.R.D. 410 (D.N.J. 2001) ................................................................13

Hohider v. United Parcel Service, Inc.,
   257 F.R.D. 80 (W.D. Pa. 2009) ................................................................14

IBJ Whitehall Bank & Trust Co. v. Cory & Assocs., Inc.,
   1999 WL 617842 (N.D. Ill. Aug. 12, 1999)................................................8

Lafarge N. Am., Inc. v. Matraco-Colorado, Inc.,
   2008 WL 2474638 (S.D. Fla. June 19, 2008)................................................11

Mancini v. Ins. Corp.,
   2009 WL 1765295 (S.D. Cal. June 18, 2009) ................................................7

McCaugherty v. Siffermann,
132 F.R.D. 234 (N.D. Cal. 1990) ................................................................... 9

Medtronic Sofamor Danek, Inc. v. Michelson,
2004 WL 2905401 (W.D. Tenn. Apr. 19, 2004) ...................................... 11

Minebea Co., Ltd. v. Papst,
228 F.R.D. 13 (D.D.C. 2005) .............................................................. 9, 11

Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Trust No. 1B,
230 F.R.D. 398 (D. Md. 2005) ................................................................... 9

Rivera v. Kmart Corp.,
190 F.R.D. 298 (D.P.R. 2000) .................................................................. 10

In re Sealed Case,
737 F.2d 94 (D.C. Cir. 1984) .................................................................... 10

In re Teleglobe Communications Corp.,
493 F.3d 345 (3d Cir. 2007) ..................................................................... 14

U.S. Postal Service v. Phelps Dodge Refining Corp.,
852 F. Supp. 156 (E.D.N.Y. 1994) ............................................................. 8

U.S. v. Davis,
132 F.R.D. 12 (S.D.N.Y. 1990) ........................................................... 10, 11

United States v. Chevron Corp.,
1996 WL 264769 (N.D. Cal. Mar. 13, 1996) ............................................ 10

United States v. Munoz,
233 F.3d 1117 (9th Cir. 2000) ..................................................................... 7

In re Universal Servs. Fund Tel. Billing Practices Litig.,
232 F.R.D. 669 (D. Kan. 2005) ................................................................... 9

In re Vioxx Prods. Liability Litig.,
501 F. Supp. 2d 789 (E.D. La. 2007) ............................................... 9, 11, 12

**Miscellaneous**

Paul K. Rice, 1 Attorney-Client Privilege In The United States
§ 7.1 (2d ed. 2009) .................................................................................. 10

Paul K. Rice, 1 Attorney-Client Privilege In The United States
§ 7.2 (2d ed. 2009) .................................................................................. 11

Wright & Miller,
24 Federal Practice & Procedure § 5484 ..................................................... 8

**Preliminary Statement**

It has now become clear, after years of dogged efforts by Mattel, that MGA has used its privilege logs to improperly withhold non-privileged documents. Larian's internal communications with in-house counsel are a case in point.  A company's business officers obviously may engage in privileged communications with in-house counsel; Mattel has never previously challenged MGA's internal communications with legal personnel for that reason.   But recently produced documents reveal that MGA and Larian have abused the privilege by channeling non-privileged communications through in-house counsel for the sole purpose of concealing them—to suppress clearly non-privileged, discoverable evidence.  MGA also recently conceded, facing *in camera* review, that it had long withheld at least hundreds of non-privileged documents on its privilege logs.

Once these documents were revealed, Mattel identified additional entries on MGA's privilege logs consisting of internal communications between Larian and in-house counsel and asked MGA to assess whether they too should be produced as non-privileged.  Rather than do so, MGA refused to even substantively address the matter.  Its sole excuse for that refusal was because, of the nearly 1,300 entries Mattel had identified, approximately 10 had already been ordered produced *in camera* and were erroneously included in Mattel's list. This pattern is all too familiar—MGA withholds documents improperly and then, when challenged, obstructs and delays.   The Discovery Master should order MGA to submit the communications listed in Appendix A for *in camera* review to resolve the propriety of MGA's privilege assertions.

**Background**

MGA Has Used Its Privilege Logs to Conceal Documents.   As the Discovery Master is aware, in March of this year Mattel moved to compel *in camera*

review of approximately 520 documents from MGA's privilege logs which, based on the logs' descriptions, did not appear to be privileged.[3]  Most of these involved communications between non-lawyers or communications that involved lawyers but appeared not to involve legal issues.  These communications had been the subject of a previous challenge by Mattel during Phase 1, which MGA successfully defeated by certifying—first to the prior Discovery Master[4] and then to Judge Larson[5]—that the communications had been individually re-reviewed and were properly withheld as privileged.  When Mattel renewed its challenge in Phase 2, MGA again reiterated its prior certifications and urged the Discovery Master to deny Mattel the relief it sought on that basis.[6]  The Discovery Master ordered the communications submitted for *in camera* review.[7]

Months later, shortly before the deadline to comply with the Order compelling *in camera* review, MGA finally conceded that, contrary to its earlier certifications, approximately "40% of the documents" at issue were not, in fact,

---

[3]  See Mattel's Motion to Compel *In Camera* Review and Production of Non-Attorney or Non-Legal Communications Listed on MGA's Privilege Logs, dated March 27, 2009 ("Mattel's Mot. re Non-Legal Comms."), Krug Decl., Ex. 9.

[4]  See MGA's Opposition to Mattel's Motion to Compel Production of Previously Withheld Documents Only Portions of Which Are Allegedly Privileged, dated February 7, 2008 ("MGA Opp. re Phase 1 Mot."), at 8:4-5, Krug Decl., Ex. 10 ("[a] review of the documents cited by Mattel confirms their privileged status").

[5]  See June 2, 2008 Hearing Tr. at 27:19-29:1, Krug Decl., Ex. 11 ("we did go through and review every document that they identified . . . and we assured ourselves that the ones that were not being produced in redacted form were appropriately withheld").

[6]  See MGA's Opposition to Mattel's Motion to Compel *In Camera* Review and Production of Non-Attorney and Non-Legal Communications Listed on MGA's Privilege Logs, dated April 3, 2009 ("MGA Opp. re Non-Legal Comms."), at 6:23-27, Krug Decl., Ex. 12 ("████████████████████████████████████████████████████████████████████████████ .'").

[7]  See Discovery Matter Order No. 33, dated May 18, 2009, Krug Decl., Ex. 13.

1  privileged.[8]  MGA eventually produced some 95 documents directly to Mattel.[9]  The

2  remaining documents, Mattel has been advised, are currently before the Discovery

3  Master.

4       MGA Has Channeled Clearly Non-Legal Communications Through In-

5  House Counsel.  The long-concealed documents recently produced by MGA

6  pursuant to Order No. 33 included a critical email chain between Isaac Larian and

7  Victoria O'Connor, which was thereafter the subject of an Order to Show Cause and

8  hearing held by Judge Larson.[10]  The Court stated, in unmistakable terms, that this

9  email exchange was highly relevant and had been compelled by prior Court Orders

10  but nevertheless withheld by MGA:



[11]

18  The Court also recognized that MGA's withholding of evidence may be the subject

19  of further motion practice, including as to sanctions issues.[12]  However, the Court

---

22  [8]  See August 3, 2009 Letter from A. Hurst to R. O'Brien ("August 3 Letter"), at 2, Krug Decl., Ex. 14.

23  [9]  See August 21, 2009 Letter from C. Lock to B. Proctor, Krug Decl., Ex. 15.

24  [10]  See MGA2 070266 - 270, Krug Decl., Ex. 16; see also August 31, 2009 Order to Show Cause, at 2-3, Krug Decl., Ex. 17.

25  [11]  September 22, 2009 Hearing Tr. at 8:18-9:2, Krug Decl. Ex. 18.

26  [12]  See id. at 19:20-20:2 ("

(footnote continued)

1  suggested it would be beneficial if such issues were raised once the full universe of
2  improperly withheld documents is revealed.[13]

3          In addition to the concealed Larian-O'Connor email, other documents
4  produced by MGA pursuant to Order No. 33 present grave concerns about MGA's
5  privilege assertions.  These documents suggest a pattern of abuse of the privilege by
6  Larian, who repeatedly channeled non-privileged communications through MGA's
7  in-house attorneys or otherwise cloaked non-privileged communications in the
8  trappings of privilege to shield discoverable evidence.

9          Entry No. 2025, which was listed on MGA's privilege log as an
10  "███████████████████████████████████████████",[14]
11  demonstrates this kind of abuse.  In this 2005 email, Mr. Larian instructs Schuyler
12  Bacon, an MGA recruiter, and Jey Wagner, a vice president in human resources, to
13  hire a Mattel employee, Jean Gomez—clearly, a business communication on an
14  employment issue.  However, to shield this communication from discovery, Larian
15  addressed the email to Daphne Gronich, then MGA's General Counsel, titled it
16  "█████████████████████" and directed Ms. Gronich to "███████████
17  ████████████████████████████████████████████"  while
18  simultaneously cc'ing Ms. Bacon and Mr. Wagner.[15]  MGA has conceded this email
19  is not privileged and produced it, but that happened only after the Discovery Master
20  ordered it submitted for *in camera* review in Order No. 33, only after years of effort
21  by Mattel to obtain it, and only after repeated representations by MGA's counsel
22  _____

23  ████████████████████████████████████████
24  ████")."
   [13] See id. at 11:23-12:3 ("█
25  ████████████████████████████████████████
26  ████████ . . .").
27  [14] Entry No. 2025, Rev. Jan. 23 Log at 234, Krug Decl., Ex. 6.
   [15] See MGA2 0070581-582, Krug Decl., Ex. 19.
28

07975/3134173.6                              -4-        Case No. CV-04-9049 DOC (RNBx)
                                    MOTION TO COMPEL NON-LEGAL LARIAN COMMUNICATIONS

that this email, like the concealed Larian-O'Connor email and other withheld documents, contained no non-privileged information and was privileged in its entirety.[16]

Another long withheld communication, Entry No. 1648 on MGA's logs, reflects the same improper practice.[17]  In this 2006 email, also regarding the recruitment of a Mattel employee, Larian forwards a recruiter's email to Ms. Gronich, as well as Linda Whaley and Schulyer Bacon, two MGA human resources employees.[18]  Larian then directs the two HR employees to set up an interview: "███████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████" Although this communication was plainly directed to non-legal employees regarding non-legal matters, Larian misleadingly typed "███████████████████" in the subject line and sent the communication to in-house counsel to shield it.  And it was, as intended, shielded for years before it was produced just weeks ago in response to Order No. 33.[19]

---

[16]  The entry was first challenged by Mattel in February 2008 and then later certified by MGA as privileged.  _See_ Mattel's Supplemental Notice of Motion in Support of Motion to Compel Production of Previously Withheld Documents Only Portions of Which are Allegedly Privileged, dated February 5, 2008 ("Supp. Mot. re Phase 1 Mot."), at 2 n.4 Krug Decl., Ex. 20 (challenging Entry No. 2025); June 2, 2008 Hearing Tr. at 27:22-25, 28:23-25, Krug Decl., Ex. 11 (certifying that MGA "went back and went through those documents and we identified the ones that are appropriately withheld in whole" and that "[t]he documents that remained on the log were documents in which internal MGA personnel were discussing advice received from counsel concerning a broad array of matters").

[17]  Entry No. 1648, Rev. Jan. 23 Log at 192, Krug Decl., Ex. 6.

[18]  _See_ MGA2 0070568-569, Krug Decl., Ex. 21.

[19]  Another concealed document, just produced, reveals that Larian has also instructed MGA employees to destroy evidence in advance of potential litigation.  For example, one document shows Larian expressing concern about potential Bratz-related licensing litigation ("███████████████████████████████████████████ ███████████") and directly instructing Victoria O'Connor to destroy potential

(footnote continued)

1           MGA Refused to Meet and Confer.   After MGA produced these

2   documents, Mattel promptly sought to engage MGA in a meet and confer.[20]  To that

3   end, Mattel reviewed MGA's logs and specifically identified nearly 1,300 entries

4   reflecting communications between Larian and MGA in-house counsel or

5   paralegals.[21]  MGA, however, refused to even discuss the matter.  By letter a week

6   later, MGA deemed the request "burdensome and unnecessary make-work" based

7   on a "groundless contention" and refused to engage in any substantive discussion,

8   purportedly because some of the 1,300 entries Mattel identified were duplicative of

9   prior requests.[22]  This stated basis for refusing even to meet and confer (as MGA

10  was required by the Discovery Master Stipulation) is astonishing—only *10* of the

11  1,300 entries Mattel identified were duplicative of entries already submitted to the

12  Discovery Master, and Mattel does not hereby challenge those.[23]  Even worse, MGA

13  represented to Judge Larson a few days later, during the hearing on the Order to

14  Show Cause, just the opposite of its actual position as expressed to Mattel:



22  evidence ("⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛").  <u>See</u> MGA2 0070551-553, Krug

23  Decl., Ex. 22 (emphasis in original).

   [20]  <u>See</u> September 9, 2009 Letter from B. Proctor to A. Hurst, Krug Decl., Ex. 23.

24     [21]  <u>Id.</u>

25     [22]  <u>See</u> September 16, 2008 Letter from C. Lock to B. Proctor ("Sept. 16 Letter"), at 1, Krug Decl., Ex. 24.

26     [23]  Those 10 entries were  Rev. Jan. 23 Log Nos. 2025, 2074, Oct. Log. 1514, 1780 and

27  Supp. Oct. Log Nos. 89, 90, 128, 129, 130, 131, each of which had already been ordered submitted for *in camera* review pursuant to Order No. 33.

28

1    ██████ [24]

2       If the "make-work" basis for refusing to discuss the matter sounds

3 familiar, that is because it is: MGA has repeated this refrain throughout this

4 litigation to oppose Mattel's privilege log challenges.[25] The history of this case

5 shows that, far from "make-work," these challenges—and Orders requiring *in*

6 *camera* review—are vitally necessary to prevent MGA from continuing to conceal

7 discoverable evidence on its privilege logs.

8 <center>**Argument**</center>

9 I.    **MGA BEARS THE BURDEN OF SUBSTANTIATING ITS CLAIMS**

10      **OF PRIVILEGE AS TO THE WITHHELD COMMUNICATIONS**

11       As the party seeking to withhold responsive documents based on the

12 attorney-client privilege or work product doctrine, MGA bears the "heavy burden"

13 of showing why Mattel's motion should not be granted. Mancini v. Ins. Corp., 2009

14 WL 1765295, at *1 (S.D. Cal. June 18, 2009) (quoting Blankenship v. Hearst Corp.,

15 519 F.2d 418, 429 (9th Cir. 1975)). MGA's burden is to "to establish all the

16 elements of the privilege." See Discovery Matter Order No. 33, dated May 18, 2009

17 at 56 (ordering documents from MGA's logs submitted for *in camera* review where

18 logs did not "provide enough information to permit the court to review the

19 applicability of the privilege to the documents at issue") (citations omitted); see also

20 United States v. Munoz, 233 F.3d 1117, 1128 (9th Cir. 2000) (burden is on party

21 asserting the attorney-client privilege to establish all of its elements).

22 

23     [24] September 22, 2009 Hearing Tr. at 12:7-13, Krug Decl. Ex. 18.

24     [25] See, e.g., MGA's Opposition to Mattel's Supplemental Motions to Compel, dated February 29, 2008, at 3, Krug Decl., Ex. 25 (arguing that the "endeavor is just a 'make-

25 work' exercise"); MGA Opp. re Non-Legal Comms at 7 n.4, Krug Decl., Ex. 12 ("█

26 ████████████████████████████████████

27 ████████████████████████████████████

28 ████████████████ ")

## II.   COMMUNICATIONS WITH IN-HOUSE COUNSEL THAT RELATE TO BUSINESS MATTERS ARE SUBJECT TO HEIGHTENED SCRUTINY

As the Ninth Circuit has counseled, it is not the purpose of the attorney-client privilege "to permit an attorney to conduct his client's business affairs in secret." Matter of Fischel, 557 F.2d 209, 211 (9th Cir. 1977). Therefore, caution should be taken to apply the privilege strictly to ensure that "[a]n attorney's involvement in, or recommendation of, a transaction does not place a cloak of secrecy around all the incidents of such a transaction." Id. at 212.   Countless authorities make clear that "a litigant cannot cloak business information in privilege by involving an attorney in the communication of business matters." Claude P. Bamberger Int'l Inc. v. Rohm & Haas Co., 1997 WL 33762249, at *4 (D.N.J. May 18, 1997).[26]

To justify withholding communications with in-house counsel, the "lawyer's role as a lawyer must be primary to her participation" in the

---

[26]   See also U.S. Postal Service v. Phelps Dodge Refining Corp., 852 F. Supp. 156, 163-164 (E.D.N.Y. 1994) ("A corporation cannot be permitted to insulate its files from discovery simply by sending a "cc" to in-house counsel."); Cal. Union Ins. Co. v. Nat'l Union Fire Ins. Co., 1989 WL 48413, at *2 (N.D.N.Y. Apr. 27, 1989) ("The corporate attorney-client privilege is not available to allow a corporation to funnel its papers and documents into the hands of its lawyers for custodial purposes and thereby avoid disclosure."); In re Grand Jury Proceedings, 2001 WL 1167497, at *24 n.41 (S.D.N.Y. Aug. 13, 2001) ("The fact that a Doe Corp. attorney is copied on the document (as well as other Doe Corp. employees) does not transform the document into a confidential communication between an attorney and client"); IBJ Whitehall Bank & Trust Co. v. Cory & Assocs., Inc., 1999 WL 617842, *2 (N.D. Ill. Aug. 12, 1999) ("documents that are routed to an attorney as a matter of routine, or merely for the purpose of asserting a privilege, are not privileged"); see generally Wright & Miller, 24 FEDERAL PRACTICE & PROCEDURE § 5484, at p. 329 (1986) ("corporations should not be allowed to privilege ordinary business records by attaching them to communications to counsel or by organizing their bureaucracy so that routine business communications are routed through the legal department.").

1  communication.  In re Vioxx Prods. Liability Litig., 501 F. Supp. 2d 789, 798 (E.D.

2  La. 2007).  Communications with in-house counsel are not privileged to the extent

3  they "would have been made because of a business purpose," regardless of whether

4  there may have been a "perceived additional interest in securing legal advice."

5  McCaugherty v. Siffermann, 132 F.R.D. 234, 238 (N.D. Cal. 1990).  "[T]he court

6  should sustain an assertion of privilege only when there is a clear evidentiary

7  predicate for concluding that *each* communication in question was made *primarily*

8  for the purpose of generating legal advice."  Id.; see In re CV Therapeutics, Inc.

9  Secs. Litig., 2006 WL 2585038, at *3 (N.D. Cal. Aug. 30, 2006) (rejecting privilege

10 as to documents or communications "sent for simultaneous review and comment by

11 *both* attorneys and nonattorneys") (emphasis in original).   Moreover, even

12 communications solely with in-house counsel are not privileged to the extent that

13 counsel was not acting in a legal capacity; MGA's decision, where it has so chosen,

14 "to channel [non-legal] work through an attorney rather than perform the work with

15 non-legal personnel does not provide the basis for a claim of privilege."  In re

16 Universal Servs. Fund Tel. Billing Practices Litig., 232 F.R.D. 669, 675 (D. Kan.

17 2005).

18         Although the rules against shielding what are primarily business

19 communications by sending them through in-house lawyers are clear, discovering

20 episodes of such shielding from the face of a privilege log is less simple.  "Because

21 an in-house lawyer often has other functions in addition to providing legal advice,

22 the lawyer's role on a particular occasion will not be self-evident as it usually is in

23 the case of outside counsel."  Minebea Co., Ltd. v. Papst, 228 F.R.D. 13, 21 (D.D.C.

24 2005).  Accordingly, "courts impose a higher burden on in-house counsel to 'clearly

25 demonstrate' that advice was given in a legal capacity."  Neuberger Berman Real

26 Estate Income Fund, Inc. v. Lola Brown Trust No. 1B, 230 F.R.D. 398, 411 n.20 (D.

27 Md. 2005) (citation omitted); see also Georgia-Pacific Corp. v. GAF Roofing Mfg.

28 Corp., 1996 WL 29392, at *4 (S.D.N.Y. Jan. 25, 1996) ("the need to apply [the

1  privilege] cautiously and narrowly is heightened in the case of corporate staff
2  counsel, lest the mere participation of an attorney be used to seal off disclosure")
3  (citation omitted); <u>United States v. Chevron Corp.</u>, 1996 WL 264769, at *4 (N.D.
4  Cal. Mar. 13, 1996) ("a corporation must make a *clear showing* that in-house
5  counsel's advice was given in a professional legal capacity") (emphasis in original);
6  <u>AAMCO Transmissions, Inc. v. Marino</u>, 1991 WL 193502, at *3 (E.D. Pa. Sept. 24,
7  1991) (communications with in-house counsel privileged only where a party
8  "clearly demonstrate[s] that the communication in question was made for the
9  express purpose of securing legal not business advice"); Paul K. Rice, 1 ATTORNEY-
10  CLIENT PRIVILEGE IN THE UNITED STATES § 7.1, at 22 (2d ed. 2009) (quoting <u>In re</u>
11  <u>Sealed Case</u>, 737 F.2d 94, 99 (D.C. Cir. 1984) (alterations in original))
12  ("communications to and from in-house counsel can be sheltered 'only upon a clear
13  showing that the [in-house counsel] gave [advice] in a professional legal
14  capacity").[27]

15         The requirement that a corporation's privilege assertions over in-house
16  counsel communications be "carefully scrutinized" is necessary not only because of
17  the dual roles of in-house attorneys, but also to "ensure that 'in house counsel's law
18  degree and office are not . . . used to create a 'privileged sanctuary for corporate
19  records.'" <u>U.S. v. Davis</u>, 132 F.R.D. 12, 16 (S.D.N.Y. 1990) (reviewing documents
20  *in camera*) (alterations in original). As one court has explained:

21         Many   courts   fear   that   businesses   will   immunize   internal
22         communications from discovery by placing legal counsel in strategic
23

24         [27]   <u>See also</u> <u>B.F.G.</u>, 2001 WL 1414468 at *6 ("there is a particular burden on that
25   corporation to demonstrate why communications [with in-house counsel] deserve
     protection and are not merely business documents"); <u>Rivera v. Kmart Corp.</u>, 190 F.R.D.
26   298, 302 (D.P.R. 2000) ("In cases, such as this one, which involve communications
27   between a corporate client and in-house attorneys, the Court must be especially careful in
     its analysis.").
28

1  corporate positions and funneling documents through counsel (*viz.*

2  **addressing documents to the lawyers with copies being sent to the**

3  **employees with whom communications were primarily intended**).

4  As a result, courts require a clear showing that the attorney was acting

5  in his professional legal capacity before cloaking documents in the

6  privilege's protection.

7  In re Vioxx Prods. Liability Litig., 501 F. Supp. 2d at 797 (quoting Paul K. Rice, 1

8  ATTORNEY-CLIENT PRIVILEGE IN THE UNITED STATES § 7.2 at p. 24-25 (2d ed.))

9  (emphasis added).

10  **III.   *IN CAMERA* REVIEW OF LARIAN'S COMMUNICATIONS WITH**

11  **IN-HOUSE COUNSEL IS WARRANTED**

12  *In camera* review of Larian's communications with in-house counsel is

13  clearly warranted here.

14  Courts frequently conduct *in camera* review of communications with

15  in-house counsel in appropriate circumstances.   See, e.g., Minebea Co., Ltd. v.

16  Papst, 228 F.R.D. 13, 21 (D.D.C. 2005) (ordering communications produced after *in*

17  *camera* review: "Because an in-house lawyer often has other functions in addition

18  to providing legal advice, the lawyer's role on a particular occasion will not be self-

19  evident."); Lafarge N. Am., Inc. v. Matraco-Colorado, Inc., 2008 WL 2474638, at

20  *5 (S.D. Fla. Jun. 19, 2008) (reviewing in-house communications *in camera*);

21  Medtronic Sofamor Danek, Inc. v. Michelson, 2004 WL 2905401, at *1 (W.D.

22  Tenn. Apr. 19, 2004) (affirming special master's order that party "produce 1,700 of

23  the 2,000 in-house documents for *in camera* review") (quotation omitted); U.S. v.

24  Davis, 132 F.R.D. 12, 16 (S.D.N.Y. 1990) ("carefully scrutiniz[ing]" in-house

25  communications *in camera*).

26  MGA and Larian have withheld nearly 1,300 communications with in-

27  house counsel on their privilege logs, claiming they contain or reflect legal advice.

28  They made those very same claims as to the long concealed documents they

1    produced pursuant to Order No. 33 as well—documents that demonstrate exactly the

2    abuses courts use *in camera* review to avoid, where MGA has "funnel[ed]

3    documents through counsel (*viz.* addressing documents to the lawyers with copies

4    being sent to the employees with whom communications were primarily intended)."

5    In re Vioxx Prods. Liability Litig., 501 F. Supp. 2d at 797.[28]

6           Until recently, MGA's practice of withholding non-legal

7    communications with in-house counsel was successful—they all remained shielded.

8    MGA2 0070581-582 (Entry No. 2025) is a case in point.  This document was listed

9    on MGA's privilege log for years as an ████████████████████████████

10   ████████████████████████████,"[29]  When challenged by Mattel during Phase

11   1, MGA certified it to be privileged.[30]  MGA then continued to fight producing it

12   during motion practice in Phase 2, and specifically fought Mattel's request that it be

13   reviewed *in camera*.[31]  MGA finally produced it only after the Discovery Master

14   specifically ordered it submitted *in camera*, and even now MGA's privilege logs

15   *continue* to list two related communications (Entry Nos. 2023 and 2024), which

16   appear to be further communications in the same email chain between the same

17   parties on the same day and with the same description.[32]  Larian's channeling of

18   clearly non-privileged communications through in-house counsel has already

19   impeded discovery, as it was evidently designed to do.

20

21   _____

22   [28]  E.g., MGA2 0070581-582, Krug Decl., Ex. 19; MGA2 0070568-569, Krug Decl., Ex. 21.

23   [29]  Entry No. 2025, Rev. Jan. 23 Log at 234, Krug Decl., Ex. 6.

24   [30]  See *supra* notes 4 & 5.
     [31]  See MGA Opp. re Non-Legal Comms., at 6, Krug Decl., Ex. 12 (" ████████████

25   ████████████████████████████████████████████████████████████████

26   ████████████████████████████████████████████████████████████████

27   ████████████████████").
     [32]  See Entry Nos. 2023 and 2024, Rev. Jan. 23 Log at 234, Krug Decl., Ex. 6.

28

The other communications listed on MGA's privilege logs between Larian and in-house counsel or paralegals[33] have remained, until now, unchallenged by Mattel, shielded by the presence of counsel.  Many of these involve not only counsel, but MGA's business and administrative employees—for example, approximately 180 are communications with Paula Garcia (Treantafelles), MGA's Bratz product manager and a central witness.[34]   Nearly 50 have descriptions expressly related, in some form, to "employment" matters.[35]  To date, Mattel has not challenged MGA's privilege assertions as to these communications given MGA's claims that they were communications with counsel for the purpose of seeking or providing legal advice.  However, in light of the newly discovered evidence of Larian's abusive use of in-house counsel to shield non-privileged documents, these documents can no longer remain shielded.  They should all be ordered submitted for *in camera* review.

Finally, *in camera* review of these communications is particularly warranted given the lack of integrity of MGA's privilege logs more generally.  Even putting aside the grave concerns raised by MGA's demonstrably false certifications which resulted in MGA's withholding of critical evidence during Phase 1, MGA's

---

[33]  MGA's withholding of its communications with paralegals is particularly troubling given its recently articulated position that a paralegal's communications are privileged *regardless* of whether they involved an attorney's legal advice or supervision.  See September 28, 2009 Letter from A. Hurst to R. O'Brien, at 3, Krug Decl., Ex. 26 (stating that based on a paralegal's "many years of experience," MGA "reasonably considered her qualified to perform legal tasks"—including tasks which it admits were "not exclusively pursuant to the supervision of inside and outside counsel.").  That position is unsupported by law.  See HPD Labs., Inc. v. Clorox Co., 202 F.R.D. 410, 415 (D.N.J. 2001) ("Although [the paralegal] may be a skilled advisor . . . , she is not an attorney. Accordingly, when she independently dispensed legal advice, her statements were not privileged.").  Appendix A identifies dozens of Larian-paralegal communications. There are also other MGA paralegal communications that are currently the subject of a meet and confer request by Mattel.  See October 9, 2009 Letter from B. Proctor to A. Hurst, Krug Decl., Ex. 27.

[34]  See Krug Decl. ¶ 3.

1   logs have been shown to be unreliable. Non-lawyers have been misidentified as

2   attorneys.[36] Serial reviews have resulted in contradictory assertions, for example,

3   that the same set of handwritten notes was "non-substantive" but then properly

4   withheld as a privileged legal communication.[37] Improperly withheld documents,

5   once finally produced, show not only that they should not have been withheld at all,

6   but also that the basic factual information in MGA's logs is incorrect.[38]

7           These kinds of inaccuracies alone can justify *in camera* review. See,

8   e.g., Hohider v. United Parcel Service, Inc., 257 F.R.D. 80, 84 (W.D. Pa. 2009) (*in*

9   *camera* review is justified where "doubts" are present regarding the assertions and

10  descriptions in a privilege log); In re Teleglobe Communications Corp., 493 F.3d

11  345, 356 (3d Cir. 2007) ("questions about the reliability of the privilege log"

12  justified *in camera* review); DeKalb Genetics Corp. v. Pioneer Hi-Bred Int'l, 2002

13  WL 318129, at *1 (N.D. Ill. Feb. 28, 2002) (ordering *in camera* inspection where

14  party's inconsistencies raised "some doubts as to the validity of [the party's]

15  privilege claims"). But here, MGA's logs are more than simply inaccurate—their

16  basic integrity is in doubt. *In camera* review is not only justified but vital.

17          B.F.G. of Illinois, Inc. v. Ameritech Corp., 2001 WL 1414468 (N.D.

18  Ill. Nov. 13, 2001), is particularly instructive. Like MGA's often revised but never

19

20

21      [35] See Krug Decl. ¶ 3.
        [36] See, e.g., Mattel's Mot. re Non-Legal Comms., at 18-19, Krug Decl., Ex. 12.
22      [37] See Krug Decl. ¶ 2.
        [38] For example, the concealed Larian-O'Connor exchange that prompted the Court's
23  OSC was mistakenly identified as being sent on October 10, 2002 rather than October 23,
24  2002. See Entry No. 381, Rev. Jan. 23 Log at 45, Krug Decl., Ex. 6. Other log
    descriptions have the wrong parties listed as senders and recipients. For example, one
25  entry was described as an email from Francis Choi to Steven Lee. See Entry No. 536, Rev.
    Jan. 23 Log at 63, Krug Decl., Ex. 6. However, as revealed when produced, this
26  communication was an email from Isaac Larian to Daphne Gronich, bcc'ing Stephanie
    Tran, none of whom were listed in the log description. See MGA2 0070289-0070291,
27  Krug Decl., Ex. 28.

28

1 | adequate logs here, the defendants there had produced successive revised privilege
2 | logs that were challenged as failing to substantiate the claimed privileges. Id. at *1-
3 | 2.  There, like here, defendants contested such challenges as unwarranted while
4 | eventually withdrawing their privilege claims over many documents initially
5 | withheld. Id. at *2. There was evidence that the defendant had sought to "shield its
6 | communications" by channeling business communications through in-house
7 | counsel.  Id. at *2-4.  Based on this history, the court ordered *in camera* review
8 | because "plaintiffs would never be able to know . . . from the description on the
9 | defendants' privilege log" that non-privileged documents had been improperly
10 | withheld.  Id.  That is precisely the situation here; only *in camera* review will
11 | resolve the serious doubts Larian has created about the purportedly privileged nature
12 | of his communications with in-house counsel.

### Conclusion

14 | For the foregoing reasons, the Discovery Master should order the
15 | entries from MGA's and Isaac Larian's privilege logs identified in the attached
16 | Appendix A be submitted to the Discovery Master for *in camera* review and, if
17 | appropriate based on such review, order them produced to Mattel.[39]

DATED: October 13, 2009

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By B. Dylan Proctor / 2DK

B. Dylan Proctor
Attorneys for Mattel, Inc.

---

[39]   If the Discovery Master's review reveals further evidence that MGA has "used in-house counsel to apply a veneer of privilege to non-privileged business communications, the court should impose costs on [MGA]." B.F.G., 2001 WL 1414468 at * 7.

MOTION TO COMPEL NON-LEGAL LARIAN COMMUNICATIONS