# EXHIBIT 24

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 25

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES -- GENERAL

Case No.     CV 04-09049 SGL(RNBx)
Title:       CARTER BRYANT -v- MATTEL, INC.                    Date: March 31, 2008
             AND CONSOLIDATED ACTIONS

=================================================================================

PRESENT:  HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

        Jim Holmes                          Theresa Lanza
        Courtroom Deputy Clerk              Court Reporter

ATTORNEYS PRESENT FOR CARTER          ATTORNEYS PRESENT FOR MATTEL:
BRYANT:  Matthew M. Werdegar           Jon D. Corey

ATTORNEYS PRESENT FOR MGA:
Thomas J. Nolan


PROCEEDINGS:   ORDER GRANTING IN PART AND DENYING IN PART MATTEL'S MOTION
               (DOCKET #2386) FOR REVIEW OF DISCOVERY MASTER'S FEBRUARY
               15, 2008, AND FEBRUARY 20, 2008, ORDERS

               ORDER RE USE OF "ATTORNEY EYES ONLY" DOCUMENTS IN
               SETTLEMENT DISCUSSIONS

               ORDER RE UNDER SEAL DOCUMENTS


MINUTES FORM 90
CIVIL -- GEN                            1              Initials of Deputy Clerk: jh
                                                       Time: 00/58

EXHIBIT 25 PAGE 460

## I. Discovery Motion

The Court **GRANTS IN PART AND DENIES IN PART** Mattel's Motion Objecting to Portions of the Discovery Master's February 15 and February 20 Orders.

As to Interrogatories 27-29, the Court leaves undisturbed the Discovery Master's findings regarding burdensomeness. The Court notes, however, that the Discovery Master's conclusion that the interrogatories are overly broad appears to have been based on an erroneous standard of relevancy. By requiring that Mattel "show[] how each and every concept embedded in its multi-faceted definition of 'Bratz invention' is relevant to interpreting the term 'invention' for purposes of enforcing the 'Employee Confidential Information and Inventions Agreement' signed by Bryant," the Discovery Master appears to have applied a higher standard of relevancy than that which should be applied in discovery. See Fed. R. Civ. P. 26(b)(1) (setting forth the discovery relevancy standard). The parties' competing legal arguments regarding the proper interpretation of the Inventions Agreement are yet to be resolved and therefore should not be used to limit discovery on relevant issues.

However, the Court also recognizes that, as the Discovery Master accurately found, responding to these interrogatories is no small undertaking. The interrogatories ask for identification of all Bratz inventions in three different distinct periods of time. The interrogatories themselves broadly define their relevant terms. The interrogatories are made no less burdensome by the requirement that the responding party "identify all personal with knowledge" and identify "all documents which refer or relate to" such facts.

Mattel's offer to limit these interrogatories to alleviate the attendant burden comes too late in the process to be given serious consideration by the Court; the Court's duty at this juncture is to determine whether the Discovery Master's ruling on the interrogatories -- as propounded -- is clearly erroneous or contrary to law.

In the Court's view, the Discovery Master underestimated the weight on the Rule 26(b)(2)(C)(iii) "benefit" side of the scale by applying an inappropriate relevancy standard, but he nevertheless correctly determined that the "burden" side of the scale bears a heavy load. After a re-evaluation by the Court of the benefit of the discovery sought under the discovery relevance standard, seeking to strike the required balance, the Court is led to the same conclusion as was the Discovery Master, and thus finds that the ruling on Interrogatories 27-29 was neither clearly erroneous nor contrary to law.

In light of the financial discovery already produced in these consolidated actions, the Discovery Master's ruling that Interrogatory 39 is cumulative is neither clearly erroneous nor contrary to law.

As to Interrogatory 41, in light of the possibility that casual interactions between MGA and Mattel employees may have constituted "first contact" between former Mattel employees and MGA, the Discovery Master's ruling, which sought to strike a balance between the burden and likely

EXHIBIT 25   PAGE 461

benefit of such discovery, is neither clearly erroneous nor contrary to law.

The Discovery Master's ruling regarding interrogatory 46 is neither clearly erroneous nor contrary to law. With that interrogatory, Mattel seeks discovery regarding MGA's dispute with its former counsel related to this action. Mattel's supposition that such discovery may prove to be relevant is, as counsel conceded at oral argument, speculation.

The Court reserves ruling on Interrogatories 48-50, regarding MGA's trade dress claims against Mattel. As recognized by the parties, this is a Phase 2 issue, and the Court denies this part of Mattel's motion without prejudice. Mattel may raise the issue again at an appropriate time after the Court lifts the stay on Phase 2 discovery.

Based on the discovery provided by Carter Bryant, the Discovery Master concluded that Carter Bryant was in substantial compliance with Interrogatory 47. Upon review, the Court is unable to conclude that the Discovery Master's ruling on this issue is clearly erroneous or contrary to law.

The Court **GRANTS** Mattel's motion as to one issue: That MGA be required to identify documents by Bates number. The Court recognizes that this imposes a significant burden, but in striking the balance between burden and benefit, the Court considers, *inter alia*, "the needs of the case." Fed. R. Civ. P. 26(b)(2)(C)(iii). Here, identification by Bates number the documents in response to any party's contention interrogatory is imperative to narrowing the potential for dispute between the parties at trial as to whether a particular document falls into those "identified" in response to a given contention interrogatory. Accordingly, the Court **GRANTS** Mattel's motion on this limited issue. The remainder of Mattel's motion is **DENIED**.

## II. Use of "Attorney Eyes Only" Documents in Mediation

At the request of the Settlement Officer, the Court invited the parties' comments regarding the use of "Attorney Eyes Only" documents during settlement conference. The Court has reviewed the position statements, and makes the following ruling:

With the exception of forward-looking documents (including documents related to future product development, future marketing strategies, and financial projections) and documents related to Isaac Larian's personal family finances, the Settlement Officer shall have the discretion to use documents previously designated as "Confidential" and/or "Attorney Eyes Only" to further settlement discussions. Absent further Order of the Court, anyone participating in settlement discussions with the Settlement Officer are prohibited from taking notes regarding such documents or removing such documents, in any form, from any settlement discussions, or otherwise disclosing the contents of such documents outside the settlement discussions.

The Settlement Officer shall provide all participants of settlement discussions with notice of this order. A failure to comply with this Order shall be punishable as contempt of court.

EXHIBIT __25__ PAGE __462__

### III. Under Seal Filings

As the Court has noted on a number of occasions, an inordinate amount of documents have been filed under seal in this case. It is the Court's intention, consistent with its duties under the First Amendment, to order that the entire record in this case be unsealed, subject only to certain exceptions identified by the parties and supported by a showing of good cause.

The parties are ordered to prepare a joint report identifying all documents within the Court record that any party contends should remain under seal following the hearing on the parties' motions for partial summary judgment. The report shall set forth all parties' respective positions regarding all identified documents and shall itself be filed under seal no later than April 18, 2008.

Should the Court order that any document remain under seal, in order to prevent inadvertent disclosure, the party requesting that the document remain sealed will be required to file a notice that provides to the Court all locations of such document in the Court's record by providing the date of filing, the docket number of the filing, any relevant exhibit number, and any relevant page number(s).

**IT IS SO ORDERED.**

EXHIBIT _25_ PAGE _403_

# EXHIBIT 26

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 90378)
2    (johnquinn@quinnemanuel.com)
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
     Timothy L. Alger (Bar No. 160303)
5    (timalger@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
6  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
7  Facsimile: (213) 443-3100

8  Attorneys for Mattel, Inc.

9                UNITED STATES DISTRICT COURT

10              CENTRAL DISTRICT OF CALIFORNIA

11                    EASTERN DIVISION

12  CARTER BRYANT, an individual,        CASE NO. CV 04-9049 SGL (RNBx)

13              Plaintiff,               Consolidated with
                                         Case No. CV 04-09059
14       v.                              Case No. CV 05-02727

15  MATTEL, INC., a Delaware             MATTEL, INC.'S FIRST SET OF
    corporation,                         REQUESTS FOR DOCUMENTS AND
16                                       THINGS RE CLAIMS OF UNFAIR
                Defendant.               COMPETITION TO MGA
17                                       ENTERTAINMENT, INC.

18  AND CONSOLIDATED CASES.

19

20

21            Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Mattel,

22  Inc. hereby requests that MGA Entertainment, Inc. ("MGA") respond to these

23  document requests ("Requests") and make available for inspection and copying

24  originals of the following documents within 30 days of service at the offices of

25  Quinn Emanuel Urquhart Oliver & Hedges, LLP, 865 South Figueroa Street, 10th

26  floor, Los Angeles, CA 90017.  MGA shall be obligated to supplement responses to

27  these requests at such times and to the extent required by Rule 26(e) of the Federal

28  Rules of Civil Procedure.

EXHIBIT 26

PAGE 469                                              12-18

          MATTEL'S FIRST SET OF DOCUMENT REQUESTS (UNFAIR COMPETITION)

## I.   DEFINITIONS

For purposes of these Requests, the following definitions apply:

A.   The terms "YOU," "YOUR" and "MGA" mean MGA Entertainment, Inc. and any individual or entity acting directly or indirectly by, through, under or on behalf of MGA Entertainment, Inc., including but not limited to current or former directors, officers, employees, agents, contractors, attorneys, accountants, or representatives of MGA Entertainment, Inc. and any corporation, partnership, association, trust, parent, subsidiary, division, affiliate, predecessor-in-interest and successor-in-interest, and any other PERSON acting on its behalf.

B.   The term "MATTEL" means Mattel, Inc. and all current or former directors, officers, employees, agents, contractors, attorneys, accountants, representatives, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control.

C.   "DOCUMENT" or "DOCUMENTS" means all "writings" and "recordings" as those terms are defined in Rule 1001 of the Federal Rules of Evidence and Rule 34 of the Federal Rules of Civil Procedure and shall include all writings, including but not limited to handwriting, typewriting, printing, image, photograph, photocopy, digital file of any kind, transmittal by (or as an attachment to) electronic mail (including instant messages and text messages) or facsimile, video and audio recordings, and every other means of recording upon any tangible thing, any form of communication or representation, and any record thereby created, regardless of the manner in which the record has been stored, and all non-identical copies of such DOCUMENTS, in the possession, custody, or control of YOU, YOUR counsel, or any other PERSON acting on YOUR behalf.

D.   The term "COMMUNICATION," in the plural as well as the singular, means any transmittal and/or receipt of information, whether such was oral or written, and whether such was by chance, prearranged, formal or informal, and

1    specifically includes, but is not limited to, conversations in person, telephone

2    conversations, electronic mail (including instant messages and text messages),

3    voicemail, letters, memoranda, statements, media releases, magazine and newspaper

4    articles, and video and audio transmissions.

5         E.      "EMBODIMENT" means any representation of the identified

6    product or its retail packaging, whether two-dimensional or three-dimensional, and

7    whether in tangible, digital, electronic or other form, including but not limited to all

8    works, designs, artwork, sketches, drawings, illustrations, representations,

9    depictions, blueprints, schematics, diagrams, images, sculptures, prototypes, models,

10   samples, reductions to practice, developments, inventions and/or improvements, as

11   well as all other items, things and DOCUMENTS in which any of the foregoing are

12   or have been expressed, embodied, contained, fixed or reflected in any manner,

13   whether in whole or in part.

14        F.      "CONTESTED MGA PRODUCTS" means the CONTESTED

15   BRATZ DOLLS PRODUCTS, the CONTESTED BRATZ PETZ PRODUCTS, the

16   CONTESTED BRATZ FUNKY FASHION MAKEOVER HEAD, the

17   CONTESTED 4-EVER BEST FRIENDS PRODUCTS, the CONTESTED

18   MOMMY'S LITTLE DOLL PRODUCTS, and the CONTESTED ALIENRACERS

19   PRODUCTS, and any doll, toy, portion thereof, or version thereof that is now or has

20   ever been known as, or sold, offered for sale, licensed, offered for license or

21   marketed under the name or terms "Bratz," "4-ever Best Friends," "Mommy's

22   Little," "Alienracers," or any derivative thereof, that provides a basis for any claim

23   by YOU against MATTEL, including but not limited to "Bratz Dolls," "Bratz

24   Dogz," "Winter Wonderland," "Bratz Sportz," "Formal Funk," "Sun-Kissed

25   Summer," "Funky Fashion Makeover Head," "Runway Disco," "4-ever Best

26   Friends," "Mommy's Little Patient," and "Alienracers."

27        G.      "CONTESTED BRATZ DOLLS PRODUCTS" means any of

28   the following that provides a basis for any claim by YOU against MATTEL: (i) any


EXHIBIT
PAGE _____

EXHIBIT _____ 26
PAGE _____ 460

-3-

1   EMBODIMENT or project ever known by the name "Bratz" or any derivative

2   thereof (whether in whole or in part and regardless of what such EMBODIMENT or

3   project is or has been also, previously or subsequently called) and any doll or any

4   portion thereof that is now or has ever been known as, or sold, offered for sale,

5   licensed, offered for license or marketed under, the name or term "Bratz" or any

6   derivative thereof (whether in whole or in part and regardless of what such doll is or

7   has been also, previously or subsequently called), and all prototypes, models,

8   samples and versions of such EMBODIMENT, doll or any portion thereof; (ii) any

9   playset and accessory that YOU distribute under the name "Bratz" or any derivative

10  thereof; and/or (iii) any and all other goods, product packaging, advertisements,

11  promotional materials or other thing or item or material manufactured, produced,

12  printed, ordered, marketed, advertised, promoted, displayed, distributed, shipped,

13  imported, exported, licensed, offered for license, sold or offered for sale by YOU or

14  on YOUR behalf under the name "Bratz" or any derivative thereof.

15        H.      "CONTESTED BRATZ PETZ PRODUCTS" means any of the

16  following that provides a basis for any claim by YOU against MATTEL:  (i) any

17  EMBODIMENT or project ever known by the name "Bratz Petz" or any derivative

18  thereof (whether in whole or in part and regardless of what such EMBODIMENT or

19  project is or has been also, previously or subsequently called) and any toy pet or any

20  portion thereof that is now or has ever been known as, or sold, offered for sale,

21  licensed, offered for license or marketed under, the name or term "Bratz" or any

22  derivative thereof (whether in whole or in part and regardless of what such toy pet is

23  or has been also, previously or subsequently called), and all prototypes, models,

24  samples and versions of such EMBODIMENT, toy pet or any portion thereof; (ii)

25  any playset and accessory that YOU distribute under the name "Bratz Petz" or any

26  derivative thereof; and/or (iii) any and all other goods, product packaging,

27  advertisements, promotional materials or other thing or item or material

28  manufactured, produced, printed, ordered, marketed, advertised, promoted,

EXHIBIT _____ 26

PAGE _____ 467

-4-

1  displayed, distributed, shipped, imported, exported, licensed, offered for license,
2  sold or offered for sale by YOU or on YOUR behalf under the name "Bratz Petz" or
3  any derivative thereof.

4        I.   "CONTESTED BRATZ FUNKY FASHION MAKEOVER
5  HEAD" means any of the following that provides a basis for any claim by YOU
6  against MATTEL:  (i) any EMBODIMENT or project ever known by the name
7  "Bratz Funky Fashion Makeover Head" or any derivative thereof (whether in whole
8  or in part and regardless of what such EMBODIMENT or project is or has been
9  also, previously or subsequently called) and any styling head or any portion thereof
10  that is now or has ever been known as, or sold, offered for sale, licensed, offered for
11  license or marketed under, the name or term "Bratz" or any derivative thereof
12  (whether in whole or in part and regardless of what such styling head is or has been
13  also, previously or subsequently called), and all prototypes, models, samples and
14  versions of such EMBODIMENT, styling head or any portion thereof; (ii) any
15  accessory that YOU distribute under the name "Bratz Funky Fashion Makeover
16  Head" or any derivative thereof; and/or (iii) any and all other goods, product
17  packaging, advertisements, promotional materials or other thing or item or material
18  manufactured, produced, printed, ordered, marketed, advertised, promoted,
19  displayed, distributed, shipped, imported, exported, licensed, offered for license,
20  sold or offered for sale by YOU or on YOUR behalf under the name "Bratz Funky
21  Fashion Makeover Head" or any derivative thereof.

22        J.   "CONTESTED 4-EVER BEST FRIENDS PRODUCTS" means
23  any of the following that provides a basis for any claim by YOU against MATTEL:
24  (i) any EMBODIMENT or project ever known by the name "4-ever Best Friends" or
25  any derivative thereof (whether in whole or in part and regardless of what such
26  EMBODIMENT or project is or has been also, previously or subsequently called)
27  and any doll or any portion thereof that is now or has ever been known as, or sold,
28  offered for sale, licensed, offered for license or marketed under, the name or term

EXHIBIT 26
PAGE 468

1  "4-ever Best Friends" or any derivative thereof (whether in whole or in part and
2  regardless of what such doll is or has been also, previously or subsequently called),
3  and all prototypes, models, samples and versions of such EMBODIMENT, doll or
4  any portion thereof; (ii) any playset and accessory that YOU distribute under the
5  name "4-ever Best Friends" or any derivative thereof; and/or (iii) any and all other
6  goods, product packaging, advertisements, promotional materials or other thing or
7  item or material manufactured, produced, printed, ordered, marketed, advertised,
8  promoted, displayed, distributed, shipped, imported, exported, licensed, offered for
9  license, sold or offered for sale by YOU or on YOUR behalf under the name "4-ever
10 Best Friends" or any derivative thereof.

11       K.    "CONTESTED MOMMY'S LITTLE DOLL PRODUCTS"
12 means any of the following that provides a basis for any claim by YOU against
13 MATTEL:  (i) any EMBODIMENT or project ever known by the name "Mommy's
14 Little Patient" or similar name or any derivative thereof (whether in whole or in part
15 and regardless of what such EMBODIMENT or project is or has been also,
16 previously or subsequently called) and any doll or any portion thereof that is now or
17 has ever been known as, or sold, offered for sale, licensed, offered for license or
18 marketed under, the name or term "Mommy's Little Patient" or similar name or any
19 derivative thereof (whether in whole or in part and regardless of what such doll is or
20 has been also, previously or subsequently called), and all prototypes, models,
21 samples and versions of such EMBODIMENT, doll or any portion thereof; (ii) any
22 playset and accessory that YOU distribute under the name "Mommy's Little Patient"
23 or similar name or any derivative thereof; and/or (iii) any and all other goods,
24 product packaging, advertisements, promotional materials or other thing or item or
25 material manufactured, produced, printed, ordered, marketed, advertised, promoted,
26 displayed, distributed, shipped, imported, exported, licensed, offered for license,
27 sold or offered for sale by YOU or on YOUR behalf under the name "Mommy's
28 Little Patient" or similar name or any derivative thereof.

L.    "CONTESTED ALIENRACERS PRODUCTS" means any of the following that provides a basis for any claim by YOU against MATTEL: (i) any EMBODIMENT or project ever known by the name "Alienracers" or any derivative thereof (whether in whole or in part and regardless of what such EMBODIMENT or project is or has been also, previously or subsequently called) and any toy vehicle, character, or any portion thereof that is now or has ever been known as, or sold, offered for sale, licensed, offered for license or marketed under, the name or term "Alienracers" or any derivative thereof (whether in whole or in part and regardless of what such toy is or has been also, previously or subsequently called), and all prototypes, models, samples and versions of such EMBODIMENT, toy vehicle, character, or any portion thereof; (ii) any playset and accessory that YOU distribute under the name "Alienracers" or any derivative thereof; and/or (iii) any and all other goods, product packaging, advertisements, promotional materials or other thing or item or material manufactured, produced, printed, ordered, marketed, advertised, promoted, displayed, distributed, shipped, imported, exported, licensed, offered for license, sold or offered for sale by YOU or on YOUR behalf under the name "Alienracers" or any derivative thereof.

M.    "CONTESTED MATTEL PRODUCTS" means the CONTESTED MATTEL MY SCENE DOLLS PRODUCTS, the CONTESTED MATTEL MY SCENE PETS PRODUCTS, the CONTESTED MATTEL MY SCENE STYLING HEAD, the CONTESTED MATTEL WEE-3 PRODUCTS, the CONTESTED MATTEL LITTLE MOMMY DOLL PRODUCTS, and the CONTESTED MATTEL ACCELERACERS PRODUCTS, and any doll, toy, portion thereof, or version thereof that is now or has ever been known as, or sold, offered for sale, licensed, offered for license or marketed under the name or terms "My Scene," "Wee-3," "Little Mommy," "AcceleRacerS," or any derivative thereof, that provides a basis for any claim by YOU against MATTEL, including but not limited to "My Scene Dolls," "My Scene Pets," "My Scene Chillin' Out," "My Scene

EXHIBIT   26
PAGE      470

-7-

Miami Getaway," "My Scene Night on the Town," "My Scene Jammin' in Jamaica,"
"My Scene Guava Gulch Tiki Lounge," "My Scene Sound Lounge," "My Scene
Stylin' Head," "Mattel Wee-3," "Mattel Little Mommy Potty Training Baby Doll,"
and "Mattel Acceleracers."

N.   "CONTESTED MATTEL MY SCENE DOLLS PRODUCTS"
means any of the following that provides a basis for any claim by YOU against
MATTEL: (i) any EMBODIMENT or project ever known by the name "My Scene"
or any derivative thereof (whether in whole or in part and regardless of what such
EMBODIMENT or project is or has been also, previously or subsequently called)
and any doll or any portion thereof that is now or has ever been known as, or sold,
offered for sale, licensed, offered for license or marketed under, the name or term
"My Scene" or any derivative thereof (whether in whole or in part and regardless of
what such doll is or has been also, previously or subsequently called), and all
prototypes, models, samples and versions of such EMBODIMENT, doll or any
portion thereof; (ii) any playset and accessory that MATTEL distributes under the
name "My Scene" or any derivative thereof; and/or (iii) any and all other goods,
product packaging, advertisements, promotional materials or other thing or item or
material manufactured, produced, printed, ordered, marketed, advertised, promoted,
displayed, distributed, shipped, imported, exported, licensed, offered for license,
sold or offered for sale by MATTEL under the name "My Scene" or any derivative
thereof.

O.   "CONTESTED MATTEL MY SCENE PETS PRODUCTS"
means any of the following that provides a basis for any claim by YOU against
MATTEL: (i) any EMBODIMENT or project ever known by the name "My Scene
Pets" or any derivative thereof (whether in whole or in part and regardless of what
such EMBODIMENT or project is or has been also, previously or subsequently
called) and any toy pet or any portion thereof that is now or has ever been known as,
or sold, offered for sale, licensed, offered for license or marketed under, the name or

EXHIBIT   26
PAGE _____471_____

-8-

1  term "My Scene" or any derivative thereof (whether in whole or in part and
2  regardless of what such toy pet is or has been also, previously or subsequently
3  called), and all prototypes, models, samples and versions of such EMBODIMENT,
4  toy pet or any portion thereof; (ii) any playset and accessory that MATTEL
5  distributes under the name "My Scene Pets" or any derivative thereof; and/or (iii)
6  any and all other goods, product packaging, advertisements, promotional materials
7  or other thing or item or material manufactured, produced, printed, ordered,
8  marketed, advertised, promoted, displayed, distributed, shipped, imported, exported,
9  licensed, offered for license, sold or offered for sale by MATTEL under the name
10 "My Scene Pets" or any derivative thereof.
11        P.    "CONTESTED MATTEL MY SCENE STYLING HEAD"
12 means any of the following that provides a basis for any claim by YOU against
13 MATTEL:  (i) any EMBODIMENT or project ever known by the name "My Scene
14 Styling Head" or any derivative thereof (whether in whole or in part and regardless
15 of what such EMBODIMENT or project is or has been also, previously or
16 subsequently called) and any styling head or any portion thereof that is now or has
17 ever been known as, or sold, offered for sale, licensed, offered for license or
18 marketed under, the name or term "My Scene" or any derivative thereof (whether in
19 whole or in part and regardless of what such styling head is or has been also,
20 previously or subsequently called), and all prototypes, models, samples and versions
21 of such EMBODIMENT, styling head or any portion thereof; (ii) any accessory that
22 MATTEL distributes under the name "My Scene Styling Head" or any derivative
23 thereof; and/or (iii) any and all other goods, product packaging, advertisements,
24 promotional materials or other thing or item or material manufactured, produced,
25 printed, ordered, marketed, advertised, promoted, displayed, distributed, shipped,
26 imported, exported, licensed, offered for license, sold or offered for sale by
27 MATTEL under the name "My Scene Styling Head" or any derivative thereof.
28



EXHIBIT  26

PAGE  471

-9-

1   Q.   "CONTESTED MATTEL WEE-3 PRODUCTS" means any of
2   the following that provides a basis for any claim by YOU against MATTEL:  (i) any
3   EMBODIMENT or project ever known by the name "Wee-3" or any derivative
4   thereof (whether in whole or in part and regardless of what such EMBODIMENT or
5   project is or has been also, previously or subsequently called) and any doll or any
6   portion thereof that is now or has ever been known as, or sold, offered for sale,
7   licensed, offered for license or marketed under, the name or term "Wee-3" or any
8   derivative thereof (whether in whole or in part and regardless of what such doll is or
9   has been also, previously or subsequently called), and all prototypes, models,
10  samples and versions of such EMBODIMENT, doll or any portion thereof; (ii) any
11  playset and accessory that MATTEL distributes under the name "Wee-3" or any
12  derivative thereof; and/or (iii) any and all other goods, product packaging,
13  advertisements, promotional materials or other thing or item or material
14  manufactured, produced, printed, ordered, marketed, advertised, promoted,
15  displayed, distributed, shipped, imported, exported, licensed, offered for license,
16  sold or offered for sale by MATTEL under the name "Wee-3" or any derivative
17  thereof.

18  R.   "CONTESTED MATTEL LITTLE MOMMY DOLL
19  PRODUCTS" means any of the following that provides a basis for any claim by
20  YOU against MATTEL:  (i) any EMBODIMENT or project ever known by the
21  name "Little Mommy" or any derivative thereof (whether in whole or in part and
22  regardless of what such EMBODIMENT or project is or has been also, previously or
23  subsequently called) and any doll or any portion thereof that is now or has ever been
24  known as, or sold, offered for sale, licensed, offered for license or marketed under,
25  the name or term "Little Mommy" or any derivative thereof (whether in whole or in
26  part and regardless of what such doll is or has been also, previously or subsequently
27  called), and all prototypes, models, samples and versions of such EMBODIMENT,
28  doll or any portion thereof; (ii) any playset and accessory that MATTEL distributes

1  under the name "Little Mommy" or any derivative thereof; and/or (iii) any and all

2  other goods, product packaging, advertisements, promotional materials or other

3  thing or item or material manufactured, produced, printed, ordered, marketed,

4  advertised, promoted, displayed, distributed, shipped, imported, exported, licensed,

5  offered for license, sold or offered for sale by MATTEL under the name "Little

6  Mommy" or any derivative thereof.

7         S.     "CONTESTED MATTEL ACCELERACERS PRODUCTS"

8  means any of the following that provides a basis for any claim by YOU against

9  MATTEL:  (i) any EMBODIMENT or project ever known by the name

10  "AcceleRacers" or any derivative thereof (whether in whole or in part and regardless

11  of what such EMBODIMENT or project is or has been also, previously or

12  subsequently called) and any toy vehicle, character, or any portion thereof that is

13  now or has ever been known as, or sold, offered for sale, licensed, offered for

14  license or marketed under, the name or term "AcceleRacers" or any derivative

15  thereof (whether in whole or in part and regardless of what such toy is or has been

16  also, previously or subsequently called), and all prototypes, models, samples and

17  versions of such EMBODIMENT, toy vehicle, character, or any portion thereof; (ii)

18  any playset and accessory that MATTEL distributes under the name "AcceleRacers"

19  or any derivative thereof ; and/or (iii) any and all other goods, product packaging,

20  advertisements, promotional materials or other thing or item or material

21  manufactured, produced, printed, ordered, marketed, advertised, promoted,

22  displayed, distributed, shipped, imported, exported, licensed, offered for license,

23  sold or offered for sale by MATTEL under the name "AcceleRacers" or any

24  derivative thereof.

25         T.     The term "PERSON," in the plural as well as the singular, means

26  any natural person, association, partnership, corporation, joint venture, government

27  entity, organization, trust, institution, proprietorship, or any other entity recognized

28  as having an existence under the laws in United States or any other nation.

1    U.    The term "RELATING TO" means any and all of the following

2  terms and their synonyms:  refer to, discuss, constitute, evidence, pertain to,

3  mention, support, contradict, negate, bear on, touch on, contain, embody, reflect,

4  identify, state, deal with, concern, comment on, respond to, relevant to, or describe.

5    V.    "COMPLAINT"  means the Complaint for False Designation of

6  Origin, Affiliation, Association or Sponsorship (15 U.S.C. § 1125(a)); Unfair

7  Competition (15 U.S.C. § 1125(a)); Cal. Bus. & Prof. Code § 17200 *et seq.* and

8  California Common Law); Dilution (15 U.S.C. § 1125(c), Cal Bus. & Prof. Code

9  § 14330 and California Common Law); and Unjust Enrichment, filed by YOU on or

10  about April 13, 2005.

11

12  **II.    INSTRUCTIONS**

13    A.    YOU are to produce all requested DOCUMENTS in YOUR

14  possession, custody or control.

15    B.    If YOU contend that YOU are not required to produce certain

16  DOCUMENTS called for by these Requests on the grounds of a privilege or

17  protection that YOU are not prepared to waive, identify each such DOCUMENT

18  and provide the following information:

19    1.    the date and type of the DOCUMENT, the author(s) and

20      all recipients;

21    2.    the privilege or protection that YOU claim permits YOU

22      to withhold the DOCUMENT;

23    3.    the title and subject matter of the DOCUMENT;

24    4.    any additional facts on which YOU base YOUR claim of

25      privilege or protection; and

26    5.    the identity of the current custodian of the original of the

27      DOCUMENT.

28

EXHIBIT 26
PAGE 475
0792/01383.1

C.   DOCUMENTS shall be produced in their original file folders, or in lieu thereof, any writing on the file folder from which each such DOCUMENT is taken shall be copied and appended to such DOCUMENT and the PERSON for whom or department, division or office for which the DOCUMENT or the file folder is maintained shall be identified.

D.   The DOCUMENTS should be produced in their complete and unaltered form.  Attachments to DOCUMENTS should not be removed.  The DOCUMENTS should not be cut-up, pasted over, redacted or altered in any way for any reason, including alleged nonrelevance.  If emails are produced that had attachments, the attachments shall be attached when produced.

E.   DOCUMENTS in electronic form shall be produced in that form.

F.   In the event that any DOCUMENT called for by these requests has been destroyed or discarded, that DOCUMENT is to be identified by stating:

1.   the date and type of the DOCUMENT, the author(s) and all recipients;

2.   the DOCUMENT's date, subject matter, number of pages, and attachments or appendices;

3.   the date of destruction or discard, manner of destruction or discard, and reason for destruction or discard;

4.   the PERSONS who were authorized to carry out such destruction or discard;

5.   the PERSONS who have knowledge of the content, origins, distribution and destruction of the DOCUMENT; and

6.   whether any copies of the document exist and, if so, the name of the custodian of each copy.

EXHIBIT 26
PAGE 476

## III.  REQUESTS FOR DOCUMENTS AND THINGS

REQUEST FOR PRODUCTION NO. 1:

A sample of each of the CONTESTED MGA PRODUCTS, together with each such product's packaging and all instructions, promotional literature, coupons, bounce-back cards and any other materials inserted in or associated with such packaging.

REQUEST FOR PRODUCTION NO. 2:

A sample of each display, including but not limited to each point-of-purchase or in-store display, prepared, produced, printed, manufactured or used in connection with the CONTESTED MGA PRODUCTS.

REQUEST FOR PRODUCTION NO. 3:

A complete copy of each advertisement or promotional statement prepared, produced, printed, broadcast, made available to anyone in any manner via the Internet, or otherwise used or disseminated in any way in connection with the CONTESTED MGA PRODUCTS.

REQUEST FOR PRODUCTION NO. 4:

A complete copy of each COMMUNICATION, advertisement, promotional statement that provides a basis for any claim by YOU against MATTEL.

REQUEST FOR PRODUCTION NO. 5:

All DOCUMENTS RELATING TO the invention, creation, origin, conception, authorship, and ownership of the CONTESTED MGA PRODUCTS.

EXHIBIT 26
PAGE 471

MATTEL'S FIRST SET OF DOCUMENT REQUESTS (UNFAIR COMPETITION)

07975/1928319.2

**REQUEST FOR PRODUCTION NO. 6:**

All DOCUMENTS RELATING TO the invention, creation, origin, conception, authorship, and ownership of any product packaging that provides a basis for any claim by YOU against MATTEL.

**REQUEST FOR PRODUCTION NO. 7:**

All DOCUMENTS RELATING TO COMMUNICATIONS with any PERSON regarding the invention, creation, origin, conception, authorship, and ownership of the CONTESTED MGA PRODUCTS.

**REQUEST FOR PRODUCTION NO. 8:**

All DOCUMENTS RELATING TO COMMUNICATIONS with any PERSON regarding the invention, creation, origin, conception, authorship, and ownership of all product packaging that provides a basis for any claim by YOU against MATTEL.

**REQUEST FOR PRODUCTION NO. 9:**

All DOCUMENTS RELATING TO the invention, creation, origin, conception, authorship, design, development, production, engineering, manufacture, distribution, sale, and ownership of products and packaging that YOU contend provide a basis for any claim against MATTEL, whether or not such claim is made in the COMPLAINT.

**REQUEST FOR PRODUCTION NO. 10:**

All DOCUMENTS RELATING TO the invention, creation, origin, conception, authorship, design, development, production, engineering, manufacture, distribution, sale, and ownership of all products and packaging that YOU contend MATTEL copied or infringed.

07975/1928319.2

EXHIBIT __26__
PAGE __478__

MATTEL'S FIRST SET OF DOCUMENT REQUESTS (UNFAIR COMPETITION)

**REQUEST FOR PRODUCTION NO. 11:**

All DOCUMENTS RELATING TO COMMUNICATIONS with any PERSON regarding the invention, creation, origin, conception, authorship, design, development, production, engineering, manufacture, distribution, sale, and ownership of the CONTESTED MATTEL PRODUCTS and their associated packaging.

**REQUEST FOR PRODUCTION NO. 12:**

All DOCUMENTS RELATING TO COMMUNICATIONS with any PERSON regarding the invention, creation, origin, conception, authorship, design, development, production, engineering, manufacture, distribution, sale, and ownership of all products and packaging that YOU contend MATTEL copied or infringed.

**REQUEST FOR PRODUCTION NO. 13:**

All DOCUMENTS RELATING TO any revision of any CONTESTED MGA PRODUCTS, including but not limited to any proposed alternatives, modifications or changes (whether or not implemented) to such CONTESTED MGA PRODUCTS.

**REQUEST FOR PRODUCTION NO. 14:**

All DOCUMENTS RELATING TO the first date of availability for retail sale of each of the CONTESTED MGA PRODUCTS.

**REQUEST FOR PRODUCTION NO. 15:**

All DOCUMENTS RELATING TO the first date that each of the CONTESTED MGA PRODUCTS was shown to any PERSON not employed by MGA, whether in concept, prototype, or finished form.

EXHIBIT 26
PAGE 479

07975/1928319.2

-16-

1  REQUEST FOR PRODUCTION NO. 16:

2          All head sculptures, including all preliminary head sculptures and all

3  versions of such sculptures, made, produced or prepared in connection with the

4  CONTESTED BRATZ DOLLS PRODUCTS.

5

6  REQUEST FOR PRODUCTION NO. 17:

7          All DOCUMENTS RELATING TO the tooling for any of the

8  CONTESTED BRATZ DOLLS PRODUCTS, including but not limited to all

9  invoices, contracts, sales orders, purchase orders and payment relating thereto and

10  including but not limited to all DOCUMENTS relating to the engineering,

11  preparation, fabrication and creation of the molds and face paint masks used in

12  connection therewith and to the film and/or digital files used in connection with the

13  packaging therefor.

14

15  REQUEST FOR PRODUCTION NO. 18:

16          All DOCUMENTS RELATING TO the marketing, advertising,

17  promotion, licensing, offering for sale or sale of the CONTESTED MGA

18  PRODUCTS, including but not limited to all marketing studies, marketing plans,

19  sales plans, sales forecasts, strategies, surveys and analyses and including but not

20  limited to all catalogs, advertisements, brochures, displays and Internet publications.

21

22  REQUEST FOR PRODUCTION NO. 19:

23          All DOCUMENTS RELATING TO the ownership of any right, title or

24  interest, whether in whole or in part, in or to the CONTESTED MGA PRODUCTS.

25

26  REQUEST FOR PRODUCTION NO. 20:

27          All DOCUMENTS RELATING TO any copyright, patent, design right

28  or any other registration or application for registration of the CONTESTED MGA

EXHIBIT   26
PAGE _____ 480

-17-
MATTEL'S FIRST SET OF DOCUMENT REQUESTS (UNFAIR COMPETITION)

1  PRODUCTS, including but not limited to the complete file history relating thereto,

2  all COMMUNICATIONS relating thereto, and all filings, declarations, affidavits,

3  correspondence, notes and other DOCUMENTS relating thereto.

4

5  REQUEST FOR PRODUCTION NO. 21:

6       Documents sufficient to identify each of the CONTESTED MGA

7  PRODUCTS by internal job or product number, SKU, and bar code number.

8

9  REQUEST FOR PRODUCTION NO. 22:

10       Documents sufficient to identify the individuals who worked on or

11  were involved in any manner with the invention, creation, origin, conception,

12  authorship, or design of the CONTESTED MGA PRODUCTS.

13

14  REQUEST FOR PRODUCTION NO. 23:

15       All DOCUMENTS RELATING TO the display, exhibition,

16  distribution, publication, circulation, or other dissemination of the CONTESTED

17  MGA PRODUCTS to distributors, the media, or the public, including but not

18  limited to toy and trade shows and conventions.

19

20  REQUEST FOR PRODUCTION NO. 24:

21       All DOCUMENTS RELATING TO any contracts or licenses entered

22  into, negotiated, proposed, or requested RELATING TO any of the CONTESTED

23  MGA PRODUCTS.

24

25  REQUEST FOR PRODUCTION NO. 25:

26       All DOCUMENTS RELATING TO any actual, proposed, offered, or

27  requested licensing, sale, or purchase of the CONTESTED MGA PRODUCTS,

28

EXHIBIT __26__

PAGE __401__

-18-

MATTEL'S FIRST SET OF DOCUMENT REQUESTS (UNFAIR COMPETITION)

1   including but not limited to all contracts and proposed or offered contracts relating

2   thereto.

3

4   REQUEST FOR PRODUCTION NO. 26:

5            All DOCUMENTS RELATING TO the target market or potential

6   target market, and the demographics of any actual, potential or prospective

7   consumers, customers, purchasers or licensees of the CONTESTED MGA

8   PRODUCTS.

9

10  REQUEST FOR PRODUCTION NO. 27:

11           All DOCUMENTS RELATING TO the number of units of the

12  CONTESTED MGA PRODUCTS manufactured, produced, ordered, stored in

13  inventory, imported, exported, shipped, sold, or offered for sale by any PERSON,

14  including but not limited to YOU.

15

16  REQUEST FOR PRODUCTION NO. 28:

17           All DOCUMENTS RELATING TO revenues received by YOU in

18  connection with each of the CONTESTED MGA PRODUCTS.

19

20  REQUEST FOR PRODUCTION NO. 29:

21           All DOCUMENTS RELATING TO YOUR costs, including but not

22  limited to YOUR per-unit cost, for each of the CONTESTED MGA PRODUCTS.

23

24  REQUEST FOR PRODUCTION NO. 30:

25           All DOCUMENTS RELATING TO YOUR profits, including but not

26  limited to gross, incremental and net profits, for each of the CONTESTED MGA

27  PRODUCTS.

28

EXHIBIT _26_
PAGE _402_

-19-

MATTEL'S FIRST SET OF DOCUMENT REQUESTS (UNFAIR COMPETITION)

**REQUEST FOR PRODUCTION NO. 31:**

All DOCUMENTS RELATING TO any complaints or dissatisfaction concerning the CONTESTED MGA PRODUCTS, including but not limited to DOCUMENTS recording the returns of, or the number of or rate of defects for, such products.

**REQUEST FOR PRODUCTION NO. 32:**

All DOCUMENTS RELATING TO the belief of any PERSON (whether or not such belief is accurate) as to the origin, affiliation, sponsorship or association of the CONTESTED MGA PRODUCTS, including but not limited to all studies, surveys, interviews, reports, and COMMUNICATIONS regarding any such belief.

**REQUEST FOR PRODUCTION NO. 33:**

All DOCUMENTS RELATING TO the belief of any PERSON (whether or not such belief is accurate) as to the origin, affiliation, sponsorship or association of the CONTESTED MATTEL PRODUCTS, including but not limited to all studies, surveys, interviews, reports and COMMUNICATIONS regarding any such belief.

**REQUEST FOR PRODUCTION NO. 34:**

All DOCUMENTS RELATING TO any potential or actual confusion, any potential or actual mistake or any potential or actual deception of any PERSON as to the origin, affiliation, sponsorship or association of the CONTESTED MGA PRODUCTS, including but not limited to all studies, surveys, interviews, reports and COMMUNICATIONS regarding any such confusion, mistake or deception.

EXHIBIT __26__
PAGE __483__

MATTEL'S FIRST SET OF DOCUMENT REQUESTS (UNFAIR COMPETITION)

**REQUEST FOR PRODUCTION NO. 35:**

All DOCUMENTS RELATING TO any potential or actual confusion, any potential or actual mistake or any potential or actual deception of any PERSON as to the origin, affiliation, sponsorship or association of the CONTESTED MATTEL PRODUCTS, including but not limited to all studies, surveys, interviews, reports and COMMUNICATIONS regarding any such confusion, mistake or deception.

**REQUEST FOR PRODUCTION NO. 36:**

All DOCUMENTS RELATING TO any consumer studies, reports, surveys, interviews or reports regarding the CONTESTED MGA PRODUCTS or the CONTESTED MATTEL PRODUCTS.

**REQUEST FOR PRODUCTION NO. 37:**

All DOCUMENTS RELATING TO the marketing, advertising, promotion, licensing, offering for sale or sale of the CONTESTED MATTEL PRODUCTS, including but not limited to all marketing studies, marketing plans, sales plans, sales forecasts, strategies, surveys and analyses and including but not limited to all catalogs, advertisements, brochures, displays and Internet publications.

**REQUEST FOR PRODUCTION NO. 38:**

All DOCUMENTS RELATING TO the ownership of any right, title or interest, whether in whole or in part, in or to the CONTESTED MATTEL PRODUCTS.

EXHIBIT 26
PAGE 464

1  REQUEST FOR PRODUCTION NO. 39:

2          All DOCUMENTS RELATING TO the invention, creation, origin,

3  conception, authorship, design, and ownership of the CONTESTED MATTEL

4  PRODUCTS.

5

6  REQUEST FOR PRODUCTION NO. 40:

7          All DOCUMENTS RELATING TO the display, exhibition,

8  distribution, publication, circulation, or other dissemination of the CONTESTED

9  MATTEL PRODUCTS to distributors, the media, or the public, including but not

10  limited to toy and trade shows and conventions.

11

12  REQUEST FOR PRODUCTION NO. 41:

13          All COMMUNICATIONS between YOU and any stock analyst,

14  investment analyst, investment bank, institutional lender, or venture capital fund

15  since January 1, 1999.

16

17  REQUEST FOR PRODUCTION NO. 42:

18          All COMMUNICATIONS between YOU and any individual while the

19  individual was employed by MATTEL.

20

21  REQUEST FOR PRODUCTION NO. 43:

22          All COMMUNICATIONS between YOU and MATTEL RELATING

23  TO the CONTESTED MGA PRODUCTS or the CONTESTED MATTEL

24  PRODUCTS.

25

26

27

28

EXHIBIT 26
PAGE 405

07975/1928319.2

-22-

MATTEL'S FIRST SET OF DOCUMENT REQUESTS (UNFAIR COMPETITION)

**REQUEST FOR PRODUCTION NO. 44:**

All COMMUNICATIONS between YOU and any PERSON RELATING TO the claims made in YOUR COMPLAINT or the facts that YOU contend support such claims.

**REQUEST FOR PRODUCTION NO. 45:**

All DOCUMENTS RELATING TO YOUR knowledge of MATTEL's alleged infringement of YOUR claimed EMBODIMENTS.

**REQUEST FOR PRODUCTION NO. 46:**

All DOCUMENTS RELATING TO any unjust enrichment, damage, loss, or injury that YOU claim has been sustained by reason of any act or omission by MATTEL, including but not limited to all DOCUMENTS RELATING TO any alleged lost profits, lost sales, lost opportunity, lost license, price erosion, consequential or incidental damage, information or intellectual property provided to any competitor, or benefit obtained by any competitor, including but not limited to all DOCUMENTS RELATING TO the causation for any such alleged unjust enrichment, damage, loss, or injury.

**REQUEST FOR PRODUCTION NO. 47:**

All DOCUMENTS supporting YOUR contention that MATTEL created, designed, derived, or developed products, packaging, and advertising using concepts, products, or intellectual property owned by YOU.

**REQUEST FOR PRODUCTION NO. 48:**

All DOCUMENTS RELATING TO the copying, reproduction or use of any MATTEL work, product, or EMBODIMENT by YOU or on YOUR behalf.

EXHIBIT 26
PAGE 486

MATTEL'S FIRST SET OF DOCUMENT REQUESTS (UNFAIR COMPETITION)

07975/1928319.2

**REQUEST FOR PRODUCTION NO. 49:**

All DOCUMENTS RELATING TO any similarity or dissimilarity between, on the one hand, any of the CONTESTED MGA PRODUCTS and any other work or product developed, manufactured, or distributed by any other person or entity, including but not limited to MATTEL.

**REQUEST FOR PRODUCTION NO. 50:**

All DOCUMENTS RELATING TO the reasons why consumers purchase any of the CONTESTED MGA PRODUCTS, including but not limited to all consumer surveys, studies and comments pertaining thereto.

**REQUEST FOR PRODUCTION NO. 51:**

All DOCUMENTS RELATING TO the channels of trade or potential or prospective channels of trade for the CONTESTED MGA PRODUCTS.

**REQUEST FOR PRODUCTION NO. 52:**

All DOCUMENTS RELATING TO any similarity or dissimilarity between any of the CONTESTED MGA PRODUCTS and any EMBODIMENTS authored, created, distributed, made, sold or offered for sale by any PERSON other than YOU.

**REQUEST FOR PRODUCTION NO. 53:**

All DOCUMENTS RELATING TO any similarity or dissimilarity between any of the CONTESTED MGA PRODUCTS and any of the CONTESTED MATTEL PRODUCTS.

EXHIBIT __26__
PAGE __481__

07975/1928319.2

-24-

1  REQUEST FOR PRODUCTION NO. 54:

2        All DOCUMENTS RELATING TO any COMMUNICATION by

3  YOU with any news organization regarding the CONTESTED MGA PRODUCTS

4  or the CONTESTED MATTEL PRODUCTS.

5

6  REQUEST FOR PRODUCTION NO. 55:

7        All periodicals, whether they be magazines, newspapers, newsletters, or

8  any other type of periodical, that mention the CONTESTED MGA PRODUCTS that

9  have been published since January 1, 1999.

10

11  REQUEST FOR PRODUCTION NO. 56:

12        All television or radio broadcasts or cablecasts that mention the

13  CONTESTED MGA PRODUCTS that have been disseminated since January 1,

14  1999.

15

16  REQUEST FOR PRODUCTION NO. 57:

17        All Internet postings or COMMUNICATIONS that mention the

18  CONTESTED MGA PRODUCTS that have been disseminated since January 1,

19  1999.

20

21  REQUEST FOR PRODUCTION NO. 58:

22        All DOCUMENTS RELATING TO publicity by YOU or about the

23  CONTESTED MGA PRODUCTS since January 1, 1999, including but not limited

24  to advertising, media releases, and public relations material.

25

26  REQUEST FOR PRODUCTION NO. 59:

27        All DOCUMENTS RELATING TO any effort by YOU to recruit

28  employees or contractors since January 1, 1999, including but not limited to

EXHIBIT 26
PAGE 438

1   advertising, media releases, brochures, articles, catalogs, handbooks, and public

2   relations material.

3

4   REQUEST FOR PRODUCTION NO. 60:

5          All DOCUMENTS RELATING TO the hiring, engagement, or

6   retention by YOU of any current or former MATTEL employee or contractor since

7   January 1, 1999, including but not limited to all employment agreements and

8   agreements RELATING TO confidentiality or the invention, authorship, or

9   ownership of any concept or product.

10

11  REQUEST FOR PRODUCTION NO. 61:

12         All DOCUMENTS RELATING TO any of the CONTESTED

13  MATTEL PRODUCTS that were obtained by YOU before the date that such

14  product was first offered for sale to the general public.

15

16  REQUEST FOR PRODUCTION NO. 62:

17         All DOCUMENTS, since January 1, 1999, RELATING TO YOUR

18  receipt, reproduction, copying, storage, transmission, transfer, retention, destruction,

19  deletion or use of any DOCUMENTS, data and/or information, including but not

20  limited to any compilation of information, that was prepared, made, created,

21  generated, assembled or compiled by or for MATTEL and that was not publicly

22  available at the time of YOUR receipt of such DOCUMENT, data and/or

23  information.

24

25  REQUEST FOR PRODUCTION NO. 63:

26         All DOCUMENTS, since January 1, 1999, RELATING TO YOUR

27  knowledge of any MATTEL product prior to the time that such product had been

28

EXHIBIT   26
PAGE   401

-26-
MATTEL'S FIRST SET OF DOCUMENT REQUESTS (UNFAIR COMPETITION)

announced or disclosed by MATTEL to retailers or the public, including but not limited to the CONTESTED MATTEL PRODUCTS.

REQUEST FOR PRODUCTION NO. 64:

All DOCUMENTS, since January 1, 1999, RELATING TO YOUR receipt, reproduction, copying, storage, transmission, transfer, retention, destruction, deletion or use of any MATTEL line list or other DOCUMENT prepared by MATTEL identifying MATTEL products in the planning, design or development phase.

REQUEST FOR PRODUCTION NO. 65:

Copies of all DOCUMENTS that were seized by Mexican authorities from MGA's office in Mexico City, Mexico.

REQUEST FOR PRODUCTION NO. 66:

All DOCUMENTS RELATING TO the DOCUMENTS, data and/or information that were seized by Mexican authorities from MGA's office in Mexico City, Mexico.

REQUEST FOR PRODUCTION NO. 67:

All DOCUMENTS, including all COMMUNICATIONS, RELATING to the search of MGA's office in Mexico City, Mexico that was conducted by Mexican authorities.

REQUEST FOR PRODUCTION NO. 68:

All DOCUMENTS RELATING TO the email account <plot04@aol.com>, including but not limited to all emails and attachments sent

EXHIBIT 26
PAGE 490

07975/1928319.2

-27-

1   from, sent to, received by, transmitted by way of or through and/or stored in such

2   account in any manner.

3

4   <u>REQUEST FOR PRODUCTION NO. 69</u>:

5         All DOCUMENTS RELATING TO when the email account

6   <plot04@aol.com> was first registered, set up or established.

7

8   <u>REQUEST FOR PRODUCTION NO. 70</u>:

9         All DOCUMENTS identifying each PERSON who registered, set up,

10   established or used the email account <plot04@aol.com>.

11

12   <u>REQUEST FOR PRODUCTION NO. 71</u>:

13         All COMMUNICATIONS between YOU and Carlos Gustavo

14   Machado Gomez ("Machado") prior to April 20, 2004.

15

16   <u>REQUEST FOR PRODUCTION NO. 72</u>:

17         All DOCUMENTS RELATING TO COMMUNICATIONS between

18   YOU and Machado prior to April 20, 2004, including but not limited to all calendar

19   entries, phone logs, phone records and notes reflecting such COMMUNICATIONS.

20

21   <u>REQUEST FOR PRODUCTION NO. 73</u>:

22         All DOCUMENTS, including but not limited to all

23   COMMUNICATIONS with any PERSON, RELATING TO Machado prior to April

24   20, 2004.

25

26

27

28

EXHIBIT 26
PAGE 41

-28-
MATTEL'S FIRST SET OF DOCUMENT REQUESTS (UNFAIR COMPETITION)

1  REQUEST FOR PRODUCTION NO. 74:

2         All DOCUMENTS, including but not limited to all

3  COMMUNICATIONS with any PERSON, RELATING TO Machado's resignation

4  from Mattel.

5

6  REQUEST FOR PRODUCTION NO. 75:

7         All DOCUMENTS, including but not limited to all

8  COMMUNICATIONS with any PERSON, RELATING TO compensation, money

9  or any other item of value paid to Machado, whether directly or indirectly, by YOU.

10

11  REQUEST FOR PRODUCTION NO. 76:

12         All DOCUMENTS received by YOU, directly or indirectly, from

13  Machado RELATING TO any MATTEL product or plan.

14

15  REQUEST FOR PRODUCTION NO. 77:

16         All DOCUMENTS, including but not limited to all

17  COMMUNICATIONS with any PERSON, RELATING TO YOUR receipt,

18  reproduction, copying, storage, transmission, transfer, retention, destruction,

19  deletion or use of any DOCUMENTS, data and/or information, including but not

20  limited to any compilation of information, that was prepared, made, created,

21  generated, assembled or compiled by or for MATTEL and that YOU received,

22  directly or indirectly, from Machado.

23

24  REQUEST FOR PRODUCTION NO. 78:

25         A copy of each personnel file maintained or created by YOU

26  RELATING TO Machado.

27

28

EXHIBIT _26_
PAGE _412_

07975/1928319.2

-29-

MATTEL'S FIRST SET OF DOCUMENT REQUESTS (UNFAIR COMPETITION)

1 REQUEST FOR PRODUCTION NO. 79:

2        All DOCUMENTS, including but not limited to all

3 COMMUNICATIONS, prepared, created, sent or transmitted, whether in whole or

4 in part, by Machado RELATING TO any of the CONTESTED MGA PRODUCTS.

5

6 REQUEST FOR PRODUCTION NO. 80:

7        All DOCUMENTS, including but not limited to all

8 COMMUNICATIONS, prepared, created, sent or transmitted, whether in whole or

9 in part, by Machado RELATING TO any of the CONTESTED MATTEL

10 PRODUCTS.

11

12 REQUEST FOR PRODUCTION NO. 81:

13        All COMMUNICATIONS between YOU and Mariana Trueba Almada

14 ("Trueba") prior to April 20, 2004.

15

16 REQUEST FOR PRODUCTION NO. 82:

17        All DOCUMENTS RELATING TO COMMUNICATIONS between

18 YOU and Trueba prior to April 20, 2004, including but not limited to all calendar

19 entries, phone logs, phone records and notes reflecting such COMMUNICATIONS.

20

21 REQUEST FOR PRODUCTION NO. 83:

22        All DOCUMENTS, including but not limited to all

23 COMMUNICATIONS with any PERSON, RELATING TO Trueba prior to April

24 20, 2004.

25

26

27

28

EXHIBIT __26__
PAGE __413__

1   REQUEST FOR PRODUCTION NO. 84:

2          All DOCUMENTS, including but not limited to all

3   COMMUNICATIONS with any PERSON, RELATING TO Trueba's resignation

4   from Mattel.

5

6   REQUEST FOR PRODUCTION NO. 85:

7          All DOCUMENTS, including but not limited to all

8   COMMUNICATIONS with any PERSON, RELATING TO compensation, money

9   or any other item of value paid to Trueba, whether directly or indirectly, by YOU.

10

11  REQUEST FOR PRODUCTION NO. 86:

12         All DOCUMENTS received by YOU, directly or indirectly, from

13  Trueba RELATING TO any MATTEL product or plan.

14

15  REQUEST FOR PRODUCTION NO. 87:

16         All DOCUMENTS, including but not limited to all

17  COMMUNICATIONS with any PERSON, RELATING TO YOUR receipt,

18  reproduction, copying, storage, transmission, transfer, retention, destruction,

19  deletion or use of any DOCUMENTS, data and/or information, including but not

20  limited to any compilation of information, that was prepared, made, created,

21  generated, assembled or compiled by or for MATTEL and that YOU received,

22  directly or indirectly, from Trueba.

23

24  REQUEST FOR PRODUCTION NO. 88:

25         A copy of each personnel file maintained or created by YOU

26  RELATING TO Trueba.

27

28

07975/1928319.2

EXHIBIT **26**
PAGE **494**

-31-

MATTEL'S FIRST SET OF DOCUMENT REQUESTS (UNFAIR COMPETITION)

REQUEST FOR PRODUCTION NO. 89:

All DOCUMENTS, including but not limited to all COMMUNICATIONS, prepared, created, sent or transmitted, whether in whole or in part, by Trueba RELATING TO any of the CONTESTED MGA PRODUCTS.

REQUEST FOR PRODUCTION NO. 90:

All DOCUMENTS, including but not limited to all COMMUNICATIONS, prepared, created, sent or transmitted, whether in whole or in part, by Trueba RELATING TO any of the CONTESTED MATTEL PRODUCTS.

REQUEST FOR PRODUCTION NO. 91:

All COMMUNICATIONS between YOU and Pablo Vargas San Jose ("Vargas") prior to April 20, 2004.

REQUEST FOR PRODUCTION NO. 92:

All DOCUMENTS RELATING TO COMMUNICATIONS between YOU and Vargas prior to April 20, 2004, including but not limited to all calendar entries, phone logs, phone records and notes reflecting such COMMUNICATIONS.

REQUEST FOR PRODUCTION NO. 93:

All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO Vargas prior to April 20, 2004.

EXHIBIT 26
PAGE 495

**REQUEST FOR PRODUCTION NO. 94:**

All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO Vargas' resignation from Mattel.

**REQUEST FOR PRODUCTION NO. 95:**

All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO compensation, money or any other item of value paid to Vargas, whether directly or indirectly, by YOU.

**REQUEST FOR PRODUCTION NO. 96:**

All DOCUMENTS received by YOU, directly or indirectly, from Vargas RELATING TO any MATTEL product or plan.

**REQUEST FOR PRODUCTION NO. 97:**

All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO YOUR receipt, reproduction, copying, storage, transmission, transfer, retention, destruction, deletion or use of any DOCUMENTS, data and/or information, including but not limited to any compilation of information, that was prepared, made, created, generated, assembled or compiled by or for MATTEL and that YOU received, directly or indirectly, from Vargas.

**REQUEST FOR PRODUCTION NO. 98:**

A copy of each personnel file maintained or created by YOU RELATING TO Vargas.

EXHIBIT _26_
PAGE _491_

07975/1928319.2

-33-

MATTEL'S FIRST SET OF DOCUMENT REQUESTS (UNFAIR COMPETITION)

REQUEST FOR PRODUCTION NO. 99:

All DOCUMENTS, including but not limited to all COMMUNICATIONS, prepared, created, sent or transmitted, whether in whole or in part, by Vargas RELATING TO any of the CONTESTED MGA PRODUCTS.

REQUEST FOR PRODUCTION NO. 100:

All DOCUMENTS, including but not limited to all COMMUNICATIONS, prepared, created, sent or transmitted, whether in whole or in part, by Vargas RELATING TO any of the CONTESTED MATTEL PRODUCTS.

REQUEST FOR PRODUCTION NO. 101:

All COMMUNICATIONS between YOU and Janine Brisbois ("Brisbois") prior to September 27, 2005.

REQUEST FOR PRODUCTION NO. 102:

All DOCUMENTS RELATING TO COMMUNICATIONS between YOU and Brisbois prior to September 27, 2005, including but not limited to all calendar entries, phone logs, phone records and notes reflecting such COMMUNICATIONS.

REQUEST FOR PRODUCTION NO. 103:

All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO Brisbois prior to September 27, 2005.

EXHIBIT __26__
PAGE __497__

07975/1928319.2

-34-

MATTEL'S FIRST SET OF DOCUMENT REQUESTS (UNFAIR COMPETITION)

REQUEST FOR PRODUCTION NO. 104:

All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO Brisbois' resignation from Mattel.

REQUEST FOR PRODUCTION NO. 105:

All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO compensation, money or any other item of value paid to Brisbois, whether directly or indirectly, by YOU.

REQUEST FOR PRODUCTION NO. 106:

All DOCUMENTS received by YOU, directly or indirectly, from Brisbois RELATING TO any MATTEL product or plan.

REQUEST FOR PRODUCTION NO. 107:

All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO YOUR receipt, reproduction, copying, storage, transmission, transfer, retention, destruction, deletion or use of any DOCUMENTS, data and/or information, including but not limited to any compilation of information, that was prepared, made, created, generated, assembled or compiled by or for MATTEL and that YOU received, directly or indirectly, from Brisbois.

REQUEST FOR PRODUCTION NO. 108:

A copy of each personnel file maintained or created by YOU RELATING TO Brisbois.

EXHIBIT __26__
PAGE __418__

07975/1928319.2

-35-

MATTEL'S FIRST SET OF DOCUMENT REQUESTS (UNFAIR COMPETITION)

REQUEST FOR PRODUCTION NO. 109:

All DOCUMENTS, including but not limited to all COMMUNICATIONS, prepared, created, sent or transmitted, whether in whole or in part, by Brisbois RELATING TO any of the CONTESTED MGA PRODUCTS.

REQUEST FOR PRODUCTION NO. 110:

All DOCUMENTS, including but not limited to all COMMUNICATIONS, prepared, created, sent or transmitted, whether in whole or in part, by Brisbois RELATING TO any of the CONTESTED MATTEL PRODUCTS.

REQUEST FOR PRODUCTION NO. 111:

All COMMUNICATIONS between YOU and Ron Brawer ("Brawer") prior to October 2, 2004.

REQUEST FOR PRODUCTION NO. 112:

All DOCUMENTS RELATING TO COMMUNICATIONS between YOU and Brawer prior to October 2, 2004, including but not limited to all calendar entries, phone logs, phone records and notes reflecting such COMMUNICATIONS.

REQUEST FOR PRODUCTION NO. 113:

All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO Brawer prior to October 2, 2004.

EXHIBIT 26
PAGE 499

MATTEL'S FIRST SET OF DOCUMENT REQUESTS (UNFAIR COMPETITION)

1  REQUEST FOR PRODUCTION NO. 114:

2        All DOCUMENTS, including but not limited to all

3  COMMUNICATIONS with any PERSON, RELATING TO Brawer's resignation

4  from Mattel.

5

6  REQUEST FOR PRODUCTION NO. 115:

7        All DOCUMENTS, including but not limited to all

8  COMMUNICATIONS with any PERSON, RELATING TO compensation, money

9  or any other item of value paid to Brawer, whether directly or indirectly, by YOU.

10

11  REQUEST FOR PRODUCTION NO. 116:

12        All DOCUMENTS received by YOU, directly or indirectly, from

13  Brawer RELATING TO any MATTEL product or plan.

14

15  REQUEST FOR PRODUCTION NO. 117:

16        All DOCUMENTS, including but not limited to all

17  COMMUNICATIONS with any PERSON, RELATING TO YOUR receipt,

18  reproduction, copying, storage, transmission, transfer, retention, destruction,

19  deletion or use of any DOCUMENTS, data and/or information, including but not

20  limited to any compilation of information, that was prepared, made, created,

21  generated, assembled or compiled by or for MATTEL and that YOU received,

22  directly or indirectly, from Brawer.

23

24  REQUEST FOR PRODUCTION NO. 118:

25        All DOCUMENTS RELATING TO the existence or extent of

26  competition or substitution between any of the CONTESTED MGA PRODUCTS

27  and any of the CONTESTED MATTEL PRODUCTS.

28

EXHIBIT __26__
PAGE __500__

07975/1928319.2

-37-

MATTEL'S FIRST SET OF DOCUMENT REQUESTS (UNFAIR COMPETITION)

1   **REQUEST FOR PRODUCTION NO. 119:**

2          All DOCUMENTS RELATING TO the facts that YOU contend

3   support the claims for relief in YOUR COMPLAINT.

4

5   **REQUEST FOR PRODUCTION NO. 120:**

6          All DOCUMENTS RELATING TO any claim by YOU that any of the

7   CONTESTED MGA PRODUCTS have acquired secondary meaning or are famous.

8

9   **REQUEST FOR PRODUCTION NO. 121:**

10         All DOCUMENTS RELATING TO any claim by YOU that

11  MATTEL's actions have caused actual dilution.

12

13  **REQUEST FOR PRODUCTION NO. 122:**

14         All DOCUMENTS RELATING TO the allegation in Paragraph 9 of

15  YOUR COMPLAINT that "Mattel has intimidated, coerced and threatened retailers,

16  licensees, suppliers and others in the industry."

17

18  **REQUEST FOR PRODUCTION NO. 123:**

19         All DOCUMENTS RELATING TO the allegation in Paragraph 9 of

20  YOUR COMPLAINT that "Mattel has . . . serially imitated and copy-catted [*sic*] the

21  look of MGA products, trade dress, trademarks, themes, ideas, advertising and

22  packaging."

23

24  **REQUEST FOR PRODUCTION NO. 124:**

25         All DOCUMENTS RELATING TO the allegation in Paragraphs 34

26  and 36 of YOUR COMPLAINT that the Bratz dolls launched in 2001 were "unique

27  and distinctive."

28

EXHIBIT __26__
PAGE __501__

MATTEL'S FIRST SET OF DOCUMENT REQUESTS (UNFAIR COMPETITION)

1  REQUEST FOR PRODUCTION NO. 125:

2         All DOCUMENTS RELATING TO any allegation by YOU that YOU

3  have any legally protected interest in any of the following "themes" or any other

4  Bratz "theme" that you contend was copied by MATTEL:  "Winter Wonderland,"

5  "Bratz Sportz," "Formal Funk," "Sun-Kissed Summer."

6

7  REQUEST FOR PRODUCTION NO. 126:

8         All DOCUMENTS RELATING TO any allegation by YOU that YOU

9  have any legally protected interest in any "color scheme" that you contend was

10  copied by MATTEL.

11

12  REQUEST FOR PRODUCTION NO. 127:

13         All DOCUMENTS RELATING TO the allegation in Paragraph 56 of

14  YOUR COMPLAINT that the press has confused YOUR products with those of

15  MATTEL, or vice versa.

16

17  REQUEST FOR PRODUCTION NO. 128:

18         All DOCUMENTS RELATING TO any allegation by YOU that

19  anyone has confused any commercial for YOUR Funky Fashion Makeover Head

20  with any commercial for MATTEL's My Scene Styling Head.

21

22  REQUEST FOR PRODUCTION NO. 129:

23         All DOCUMENTS RELATING TO any allegation by YOU that

24  MATTEL has used any "tag line" allegedly belonging to YOU, including but not

25  limited to "Passion for Fashion" or any derivative thereof.

26

27

28

EXHIBIT __26__
PAGE __502__

07975/1928319.2

-39-

MATTEL'S FIRST SET OF DOCUMENT REQUESTS (UNFAIR COMPETITION)

1   REQUEST FOR PRODUCTION NO. 130:

2         All DOCUMENTS RELATING TO the allegation in Paragraph 61 of

3   YOUR COMPLAINT that retailers have been confused by Bratz Petz and

4   MATTEL's My Scene Pets, including but not limited to YOUR allegation that "even

5   sophisticated retailers . . . have mistakenly merchandised 'My Scene' dogs in the

6   middle of the 'BRATZ' section of a retail display, next to and as if they were part of

7   MGA's 'BRATZ Petz' line."

8

9   REQUEST FOR PRODUCTION NO. 131:

10        All DOCUMENTS RELATING TO the allegation in Paragraph 62 of

11  YOUR COMPLAINT that advertising executives have "expressed concern" about

12  "Bratz" and Mattel's "My Scene," including but not limited to the alleged remarks

13  set forth in Paragraph 62.

14

15  REQUEST FOR PRODUCTION NO. 132:

16        All DOCUMENTS RELATING TO the allegations in Paragraph 63 of

17  YOUR COMPLAINT that the press "has taken notice" of alleged confusion

18  between "Bratz" and Mattel's "My Scene," including but not limited to the alleged

19  remarks set forth in Paragraph 63.

20

21  REQUEST FOR PRODUCTION NO. 133:

22        All DOCUMENTS RELATING TO the allegation in Paragraph 64 of

23  YOUR COMPLAINT that customers have contacted YOU to purchase Mattel's "My

24  Scene" dolls.

25

26

27

28

EXHIBIT __26__
PAGE __503__

1  REQUEST FOR PRODUCTION NO. 134:

2      All DOCUMENTS RELATING TO any allegation by YOU that YOU

3  have a legally protected interest in what YOU describe in Paragraph 71 of YOUR

4  COMPLAINT as "MGA's 'other-worldly' theme."

5

6  REQUEST FOR PRODUCTION NO. 135:

7      All DOCUMENTS RELATING TO the allegation in Paragraph 71 of

8  YOUR COMPLAINT that MATTEL's commercials and product "mimic[] MGA's

9  alien theme and commercials in which MGA's 'AlienRacers' are engaged in a 'race

10 to save the universe.'"

11

12 REQUEST FOR PRODUCTION NO. 136:

13     All DOCUMENTS RELATING TO the allegation in Paragraph 74 of

14 YOUR COMPLAINT that MATTEL has engaged in "strong-arm tactics, and other

15 illegitimate, unfair and anti-competitive means."

16

17 REQUEST FOR PRODUCTION NO. 137:

18     All DOCUMENTS RELATING TO the allegations in Paragraph 75 of

19 YOUR COMPLAINT regarding MATTEL's dealings and COMMUNICATIONS

20 with former employees, including but not limited to all COMMUNICATIONS

21 between YOU and any present or former employees or contractors of MATTEL.

22

23 REQUEST FOR PRODUCTION NO. 138:

24     All COMMUNICATIONS between YOU and any PERSON

25 RELATING TO the departure from MATTEL of any current or former MATTEL

26 employee or contractor.

27

28

EXHIBIT 26
PAGE 504

1  REQUEST FOR PRODUCTION NO. 139:

2          All COMMUNICATIONS between YOU and any PERSON

3  RELATING TO the obligations to MATTEL, including the duty of confidentiality,

4  of any current or former MATTEL employee or contractor.

5

6  REQUEST FOR PRODUCTION NO. 140:

7          All COMMUNICATIONS between YOU and any current or former

8  MATTEL employee or contractor RELATING TO the ownership of any idea,

9  concept, design, or product.

10

11  REQUEST FOR PRODUCTION NO. 141:

12          All COMMUNICATIONS between YOU and any PERSON

13  RELATING TO the retention, destruction, transfer, or use of any information or

14  DOCUMENTS known to or possessed by any current or former MATTEL

15  employee or contractor.

16

17  REQUEST FOR PRODUCTION NO. 142:

18          All DOCUMENTS RELATING TO the "warnings" or "threats" alleged

19  in Paragraph 76 of YOUR COMPLAINT, including but not limited to all

20  COMMUNICATIONS with any present or former licensees of MATTEL.

21

22  REQUEST FOR PRODUCTION NO. 143:

23          All DOCUMENTS RELATING TO the "intimidation" alleged in

24  Paragraph 77 of YOUR COMPLAINT, including but not limited to all

25  COMMUNICATIONS with any present or former distributors and retailers of MGA

26  and MATTEL products.

27

28

07975/1928319.2

EXHIBIT 26
PAGE 505

-42-
MATTEL'S FIRST SET OF DOCUMENT REQUESTS (UNFAIR COMPETITION)

1    REQUEST FOR PRODUCTION NO. 144:

2         All COMMUNICATIONS between YOU and any retailer, wholesaler

3  or distributor RELATING TO the CONTESTED MATTEL PRODUCTS.

4

5    REQUEST FOR PRODUCTION NO. 145:

6         All DOCUMENTS RELATING TO the allegation in Paragraph 78 of

7  YOUR COMPLAINT that MATTEL was responsible for what YOU refer to as a

8  "shortage of doll hair in October 2002."

9

10  REQUEST FOR PRODUCTION NO. 146:

11        All DOCUMENTS RELATING TO the allegation in Paragraph 79 of

12  YOUR COMPLAINT that MATTEL has "manipulated the retail market," including

13  but not limited to all COMMUNICATIONS with any persons RELATING TO

14  YOUR allegation that "Mattel merchandisers have been caught tampering with

15  MGA's retail displays."

16

17  REQUEST FOR PRODUCTION NO. 147:

18        All DOCUMENTS RELATING TO any allegation by YOU that

19  MATTEL has made false statements about YOU or YOUR business practices,

20  including but not limited to the allegations in Paragraph 79 of YOUR

21  COMPLAINT.

22

23  REQUEST FOR PRODUCTION NO. 148:

24        All DOCUMENTS RELATING TO any allegation by YOU that

25  MATTEL has violated any rules or restrictions relating to data provided to

26  subscribers by NPD or engaged in any other wrongful conduct relating to NPD.

27

28

EXHIBIT __26__
PAGE __506__

MATTEL'S FIRST SET OF DOCUMENT REQUESTS (UNFAIR COMPETITION)

1  REQUEST FOR PRODUCTION NO. 149:

2            All DOCUMENTS RELATING TO any COMMUNICATIONS

3  between YOU and NPD, other than periodic reports, between January 1, 2000 and

4  the present.

5

6  REQUEST FOR PRODUCTION NO. 150:

7            DOCUMENTS sufficient to show the status of YOUR NPD

8  subscription between January 1, 2000 and the present.

9

10  REQUEST FOR PRODUCTION NO. 151:

11            All DOCUMENTS RELATING TO the allegation in Paragraph 89 of

12  YOUR COMPLAINT that MATTEL "used its influence . . . to induce CARU to

13  place onerous restrictions on MGA advertisements, and require MGA to amend

14  aspects of commercials that have gone unchallenged in other parties' commercials."

15

16  REQUEST FOR PRODUCTION NO. 152:

17            All DOCUMENTS RELATING TO any COMMUNICATIONS

18  between YOU and CARU between January 1, 2000 and the present.

19

20  REQUEST FOR PRODUCTION NO. 153:

21            All DOCUMENTS RELATING TO any allegation by YOU that

22  MATTEL has exercised improper influence with or within TIA, including but not

23  limited to the procedures for and manner in which the Toy of the Year was selected

24  for 2003.

25

26  REQUEST FOR PRODUCTION NO. 154:

27            All DOCUMENTS RELATING TO any COMMUNICATIONS with

28  TIA RELATING TO Toy of the Year since January 1, 2000.

EXHIBIT 26
PAGE 507

07975/1928319.2

-44-

MATTEL'S FIRST SET OF DOCUMENT REQUESTS (UNFAIR COMPETITION)

1  REQUEST FOR PRODUCTION NO. 155:

2          All DOCUMENTS RELATING TO the allegation in Paragraph 113 of

3  YOUR COMPLAINT that MATTEL has "willfully and maliciously used its power,

4  influence and intimidation to threaten certain retailers, suppliers, licensees,

5  distributors and manufacturers so as to limit, if not prevent, MGA from doing

6  business with these retailers, suppliers, licensees, distributors and manufacturers,

7  using its power and influence to intimidate and manipulate industry bodies."

8

9  REQUEST FOR PRODUCTION NO. 156:

10          All DOCUMENTS RELATING TO the allegation in Paragraph 113 of

11  YOUR COMPLAINT that MATTEL has "used its power and influence to attempt

12  to, if not actually, intimidate and threaten MGA's current and potential employees so

13  as to cause MGA competitive injury."

14

15  REQUEST FOR PRODUCTION NO. 157:

16          YOUR quarterly and annual profit and loss statements (both audited

17  and unaudited) for the years 2000 through the present, inclusive.

18

19  REQUEST FOR PRODUCTION NO. 158:

20          YOUR quarterly and annual financial statements (both audited and

21  unaudited) for the years 2000 through the present, inclusive.

22

23  REQUEST FOR PRODUCTION NO. 159:

24          YOUR annual reports for each of the years 2000 through the present,

25  inclusive.

26

27

28

EXHIBIT __26__
PAGE __508__

1   REQUEST FOR PRODUCTION NO. 160:

2          All DOCUMENTS received from MATTEL (whether directly or

3   indirectly) by YOU at any time since January 1, 1999.

4

5   REQUEST FOR PRODUCTION NO. 161:

6          All DOCUMENTS that YOU have reason to believe were created by or

7   originated from MATTEL, other than MATTEL products that YOU purchased at

8   retail.

9

10  REQUEST FOR PRODUCTION NO. 162:

11         All DOCUMENTS RELATING TO the destruction or retention of any

12  DOCUMENT RELATING TO the CONTESTED MGA PRODUCTS or the

13  CONTESTED MATTEL PRODUCTS.

14

15  REQUEST FOR PRODUCTION NO. 163:

16         All internal MGA COMMUNICATIONS and schedules RELATING

17  TO document retention or destruction between January 1, 1999 and the present.

18

19  REQUEST FOR PRODUCTION NO. 164:

20         All DOCUMENTS RELATING TO any COMMUNICATIONS with,

21  or inquiry or investigation by, any government entity RELATING TO the

22  CONTESTED MGA PRODUCTS or the CONTESTED MATTEL PRODUCTS.

23

24  REQUEST FOR PRODUCTION NO. 165:

25         All DOCUMENTS RELATING TO any COMMUNICATIONS with,

26  or inquiry or investigation by, any toy industry organization, safety compliance, or

27  consumer organization RELATING TO the CONTESTED MGA PRODUCTS or

28  the CONTESTED MATTEL PRODUCTS.

07975/1928319.2

-46-

MATTEL'S FIRST SET OF DOCUMENT REQUESTS (UNFAIR COMPETITION)

EXHIBIT 26
PAGE 509

1   <u>REQUEST FOR PRODUCTION NO. 166</u>:

2         To the extent not produced in response to any other Request for

3 Production, all DOCUMENTS and tangible things upon which YOU intend to rely

4 upon in this action.

5

6 DATED:  December 18, 2006     QUINN EMANUEL URQUHART OLIVER &

7                           HEDGES, LLP

8

9                By_____

10                 Timothy L. Alger

                   Attorneys for Mattel, Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                           EXHIBIT __26__

                                         PAGE __510__

# EXHIBIT 27

**CONFORMED COPY**

CLERK, U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
EASTERN DIVISION
BY:
2007 AUG 14  PM 4: 19
FILED

1  Hon. Edward A. Infante (Ret.)
   JAMS
2  Two Embarcadero Center
   Suite 1500
3  San Francisco, California  94111
   Telephone:    (415) 774-2611
4  Facsimile:    (415) 982-5287

5

6

7            UNITED STATES DISTRICT COURT

7            CENTRAL DISTRICT OF CALIFORNIA

8                  EASTERN DIVISION

9

10

11  CARTER BRYANT, an individual,           CASE NO. C 04-09049 SGL (RNBx)
                                            JAMS Reference No.1100049530
12           Plaintiff,

13       v.                                 Consolidated with
                                            Case No. CV 04-09059
14  MATTEL, INC., a Delaware corporation,   Case No. CV 05-2727

15           Defendant.                     **ORDER GRANTING IN PART AND
                                            DENYING IN PART MATTEL'S
16                                          MOTION TO COMPEL PRODUCTION
                                            OF DOCUMENTS BY MGA;
17                                          DENYING REQUEST FOR
                                            MONETARY SANCTIONS**
18  CONSOLIDATED WITH
    MATTEL, INC. v. BRYANT and
19  MGA ENTERTAINMENT, INC. v. MATTEL,
    INC.
20

21                      I.  INTRODUCTION

22      On June 26, 2007, Mattel, Inc. ("Mattel") submitted its Motion To Compel Production of

23  Documents by MGA Entertainment, Inc. ("MGA") and for Award of Monetary Sanctions.  Mattel

24  seeks an order compelling MGA "to produce documents responsive to Mattel's First Set of

25  Requests for Documents and Things Re Unfair Competition Claims, including, without limitation,

26  Request Nos. 1, 3-10, 12-13, 16-18, 19-20, 26-27, 29-30, 32-40, 42-43, 45, 48-52, 54-56, 58-60,

27

28
    Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

                                    EXHIBIT   27
                                    PAGE      511

8-14

1   65-119, 137-140, 157-161, 164 and 166," and for sanctions in the amount of $4,500, which

2   represents a portion of the costs incurred by Mattel in bringing this motion.  Mattel's Motion at

3   p.1.  On July 3, 2007, MGA submitted its opposition brief, and on July 9, 2007, Mattel submitted

4   a reply brief.  The matter was heard via telephonic conference on August 13, 2007.  Having

5   considered the motion papers and comments of counsel at the hearing, Mattel's motion to compel

6   is granted in part and denied in part, and the request for sanctions is denied.

7                                   II. BACKGROUND

8        This consolidated action includes MGA's claims for unfair competition against Mattel.

9   Among other things, MGA alleges that Mattel has engaged in "serial copycatting" of MGA

10  products, packaging and advertising, including Bratz dolls and other Bratz products, Bratz

11  packaging and Bratz television commercials.  MGA also alleges that Mattel engaged in improper

12  conduct in dealing with retailers, licensees, employees and industry organizations.

13       After MGA filed its claims against Mattel, Mattel sought and was granted leave to file

14  several counterclaims against MGA, including claims for copyright infringement, violation of

15  RICO, conspiracy to violate RICO, misappropriation of trade secrets and unfair competition.

16  Among other things, Mattel alleges that MGA has induced Mattel employees to steal Mattel's

17  trade secrets, confidential information and other property and take it with them to their new

18  employment with MGA.  Mattel also alleges that Bryant conceived, created and developed Bratz

19  designs while he was employed by Mattel as a designer, that he concealed his Bratz work from

20  Mattel, and that he sold Bratz to MGA while he was a Mattel employee.  Mattel alleges that it is

21  the rightful owner of the Bratz designs and that MGA is engaging in copyright infringement of

22  the Bratz designs.

23       On December 18, 2006, Mattel propounded its First Set of Requests for Production of

24  Documents and Things re Claims for Unfair Competition to MGA (the "Requests for

25  Production").  The Requests for Production consist of 166 requests seeking information that

26

27

28
    Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

EXHIBIT ___27___
PAGE ___512___

1   Mattel contends is relevant primarily to MGA's claims for unfair competition and Mattel's

2   defenses thereto.

3        In the meantime, MGA served its initial disclosures related to its unfair competition

4   claims. Mattel immediately filed a motion to compel MGA to provide complete initial

5   disclosures in compliance with Rule 26, Fed.R.Civ.P. Although the initial disclosures were

6   wholly inadequate, the Discovery Master denied the motion to compel, reasoning that it would be

7   more efficient and orderly for the parties to proceed with Mattel's pending Requests for

8   Production.

9        MGA served its responses to Mattel's Requests for Production on January 17, 2007.

10  MGA objected and refused to produce documents responsive to approximately two-thirds of

11  Mattel's requests. As to the remaining requests, MGA agreed to produce "relevant and non-

12  objectionable documents," subject to its General and Specific Objections.

13       Thereafter the parties met and conferred in person and exchanged a few letters. On

14  February 9, 2007, counsel for MGA advised Mattel by letter that MGA, subject to its General and

15  Specific objections, agreed to produce all "relevant and non-objectionable documents" responsive

16  to Request Nos. 1-4, 11, 13-15, 18, 21-26, 28-29, 31-36, 44-51, 53, 61-64, 118, 120-137, 141-156,

17  162-163, 165 and 166. Kidman Decl., Ex. 14. As to Request Nos. 9, 10 and 12, MGA also

18  agreed to produce "documents sufficient to show the timing of, and relevant facts regarding"

19  certain specified products. Id. Counsel for MGA sent another letter on February 16, 2007,

20  advising Mattel that MGA would produce documents responsive to Request Nos. 29 and 30.

21  Bradley Decl., Ex. 1. On May 21, 2007, MGA advised Mattel by letter that it agreed, in essence,

22  to withdraw its restriction to "relevant and non-objectionable documents" in its responses to the

23  Requests For Production. Bradley Decl., Ex. 3. On May 31, 2007, MGA served supplemental

24  responses to Mattel's Requests for Production, which no longer included the phrase "relevant and

25  non-objectionable." Kidman Decl., Exs. 11 and 16.

26

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT __27__
PAGE _513_

1      In its opening brief, Mattel contends that MGA has improperly refused to produce

2 documents relating to: the creation, origin, timing and ownership of the contested MGA products

3 and packaging, including the contested Bratz products and packaging (Request Nos. 5, 6-8, 16,

4 17, 19, 20, 38, 39, 48); MGA's alleged theft of Mattel's trade secrets and confidential information

5 by, among other things, targeting and recruiting current and former Mattel employees (Request

6 Nos. 42, 59, 60, 65-117, 138-140, 160, 161 and 164); damages (Request Nos. 27, 30 and 157-

7 159); facts MGA contends support its unfair competition claims (Request Nos. 45, 119 and 166).

8 Mattel contends that MGA has no legitimate basis for refusing to produce these categories of

9 documents because they are directly relevant to the claims and defenses in the case. Mattel also

10 contends that MGA has improperly restricted the scope of its document production in response to

11 Request Nos. 1, 3, 4, 13, 18, 29, 49, 52 and 137.

12      MGA contends that Mattel's motion should be denied in its entirety for three reasons.

13 First, Mattel is seeking documents MGA already agreed to produce as a result of the meet and

14 confer process. Second, Mattel is seeking documents that may be precluded by other motions

15 pending before the district court. Third, Mattel is seeking documents that constitute an

16 unreasonable and overbroad fishing expedition.

17      As to the first point, MGA contends that it has already agreed to produce documents

18 responsive to Request Nos. 9, 10, 12, 26, 29, 30, 32-36, 45, 48-51, 118, 137, and 166. Moreover,

19 MGA represents that it has produced more than 110,000 pages of documents, including

20 documents relating to the origin, infringement, design and tooling of Bratz and has also provided

21 Mattel with access to Bratz molds and sculpts. MGA also represents that it is continuing to

22 search for and produce documents responsive to Mattel's requests on a rolling basis.

23      MGA also asserts that it "has revisited certain of Mattel's requests, and so as to avoid

24 further burdening the Court, MGA agrees to produce non-privileged documents in its possession,

25 custody or control, subject to its previously stated General and Specific Objections, that are

26

27

28

EXHIBIT ___21___
PAGE __574__

1  responsive to the following sixteen requests:  5-8, 16-17, 19-20, 27, 37-40, 43, 52, 55-56, and

2  157-159."  MGA's Opposition at p. 3.

3       MGA also represents that it is prepared to produce documents responsive to Mattel's

4  Request Nos. 65-117 and 119 (which seek documents concerning MGA-Mexico and its

5  employees, and other topics relevant to Mattel's counterclaims) now that Judge Larson issued an

6  order denying MGA's motion to dismiss Mattel's trade secret claims.[1]  MGA's Opposition at pp.

7  2 and 6.

8       As to the second point, MGA contends that Mattel's motion to compel is premature with

9  respect to Request Nos. 1, 3, 4, 13 and 18.  MGA explains that these requests seek, among other

10  things, information pertaining to undisclosed and/or unreleased MGA products.  The Discovery

11  Master issued an order compelling MGA to produce such documents in response to other Mattel

12  discovery requests.  MGA appealed the Discovery Master's ruling, which was heard by Judge

13  Larson on July 2, 2007.  MGA contends that it should not be required to produce documents

14  responsive to Request Nos. 1, 3, 4, 13 and 18 until Judge Larson issues a ruling.

15       For the remaining requests, however, MGA stands by its objections.  More specifically,

16  MGA contends that Request Nos. 42, 54, 58-60, 138-140, 160, 161 and 164 are grossly overbroad

17  and unduly burdensome.

18       In its reply brief, Mattel contends that MGA's belated offers to produce responsive

19  documents do not obviate the need for an order compelling production for several reasons.  First,

20  Mattel contends that in many instances, MGA's purported agreements to produce responsive

21  documents are subject to major qualifications.  For example, in response to Request Nos. 9, 10

22  and 12, MGA's meet and confer letter indicates that MGA has limited its production of

23  documents to only "documents sufficient to show the timing of, and relevant facts regarding"

24  certain products.  Kidman Decl., Ex. 14.  Second, Mattel points out that, in some instances, the

25

26  _____

[1]  Judge Larson issued the order on June 27, 2007, a day after Mattel submitted its opening brief.

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT ___27___
PAGE __515__

1   representations in MGA's meet and confer letters conflict with MGA's subsequent May 31, 2007

2   supplemental responses. For example, even though MGA stated earlier in its two meet and confer

3   letters that it would produce documents responsive to Request Nos. 9, 10, 12, 26, 30, 32-36, 45,

4   48, 50, 51, 118 and 166, MGA's May 31, 2007 supplemental responses indicate that MGA

5   objects and refuses to produce documents responsive to these requests. Third, Mattel contends

6   that MGA has acknowledged its responsibility to produce documents responsive to Request Nos.

7   65-117 and 119 in view of Judge Larson's June 27, 2007 order denying MGA's motion to dismiss

8   Mattel's counterclaims, and yet, MGA has failed to do so. Fourth, Mattel points out that MGA's

9   opposition brief is internally inconsistent with respect to Request Nos. 55 and 56, stating both that

10  MGA agrees to produce documents responsive to the requests, and that MGA objects to the

11  requests as overbroad and burdensome. See MGA's Opposition at pp. 3 and 8.

12      Mattel also contends that Request Nos. 1, 3, 4, 13 and 18 are no longer premature because

13  on July 5, 2007, two days after MGA submitted its opposition brief, Judge Larson issued an order

14  upholding the Discovery Master's ruling with respect to undisclosed and/or unreleased MGA

15  products. Accordingly, Mattel requests an order compelling production of documents all

16  documents responsive to Request Nos. 1, 3, 4, 13 and 18 without any limitations, and overruling

17  any objections thereto.

18      With respect to the remaining requests to which MGA continues to object, Mattel reasserts

19  that the requests seek documents relevant to Mattel's trade secret counterclaims. Mattel also

20  contends that MGA has failed to establish that complying with the requests would impose an

21  undue burden.

22                                  III. DISCUSSION

23      Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain

24  discovery regarding any matter, not privileged, that is relevant to the claim or defense of any

25  party." Fed.R.Civ.P. 26(b)(1). Fishing expeditions to discover new claims, however, are not

26  permitted. See Fed.R.Civ.P. 26(b)(1); Rivera v. NIBCO, Inc., 364 F.3d 1057, 1072 (9th Cir.

27

28

EXHIBIT  27
PAGE  576

1  2004) ("District courts need not condone the use of discovery to engage in 'fishing

2  expeditions.'"); Bernstein v. Travelers Ins. Co., 447 F.Supp.2d 1100, 1102 (N.D. Cal. 2006)

3  (citing Rule 26(b), Advisory Committee's Note to Amendments Effective December 1, 2000)

4  (Congress' changes in the language of Rule 26(c), substituting the words "claim or defense" for

5  the phrase "subject matter involved in the pending action," were intended to prevent discovery

6  that swept far beyond the claims and defenses of the parties and that seemed designed not to fairly

7  litigate the issues presented by the pleadings but to develop new claims or defenses.).

8       Further, pursuant to Rule 26(b)(2), Fed.R.Civ.P., the court shall limit the frequency or

9  extent of use of the discovery methods if the court determines that "(i) the discovery sought is

10  unreasonably cumulative or duplicative, or is obtainable from some other source that is more

11  convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample

12  opportunity by discovery in the action to obtain the information sought; or (iii) the burden or

13  expense of the proposed discovery outweighs its likely benefit, taking into account the needs of

14  the case, the amount in controversy, the parties' resources, the importance of the issues at stake in

15  the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P.

16  25(b)(2).

17  Request Nos. 1, 3, 4, 13 and 18

18       Request No. 1 seeks "[a] sample of each of the CONTESTED MGA PRODUCTS,

19  together with each such product's packaging, instructions, promotional materials and other

20  associated packaging materials."  Request No. 3 seeks "[a] complete copy of each advertisement

21  or promotional statement prepared, produced, printed, broadcast, made available to anyone in any

22  manner via the Internet, or otherwise used or disseminated in any way in connection with the

23  CONTESTED MGA PRODUCTS."  Request No. 4 seeks "[a] complete copy of each

24  COMMUNICATION, advertisement, promotional statement that provides a basis for any claim

25  by [MGA] against MATTEL."  Request No. 13 seeks "[a]ll DOCUMENTS RELATING TO any

26  revision of any CONTESTED MGA PRODUCTS, including but not limited to any proposed

27

28

EXHIBIT  27
PAGE  517

1    alternatives, modifications or changes (whether or not implemented) to such CONTESTED MGA

2    PRODUCTS." Request No. 18 seeks "[a]ll DOCUMENTS RELATING TO the marketing,

3    advertising, promotion, licensing, offering for sale or sale of the CONTESTED MGA

4    PRODUCTS, including but not limited to all marketing studies, marketing plans, sales plans,

5    sales forecasts, strategies, surveys and analyses and including but not limited to all catalogs,

6    advertisements, brochures, displays and Internet publications."

7         During the meet and confer process, MGA agreed to produce documents responsive to

8    Request Nos. 1, 3, 4, 13 and 18. Kidman Decl., Ex. 14. In its subsequent supplemental

9    responses, however, MGA responded that it would produce responsive documents "visible to the

10   consuming public at the point of purchase," "made available to the public," or "presented to the

11   consuming public." MGA's Supp. Response, Kidman Decl., Ex. 8 and 16.

12        Mattel contends that the requested documents and items are relevant to MGA's claim of

13   "serial copying," whether or not they are seen by the consuming public. Mattel also contends that

14   the documents it seeks are relevant to any claim by MGA of "post sale confusion." Furthermore,

15   Mattel argues that MGA's restrictions on discovery are unreasonable in light of MGA's own

16   claimed trade dress, which MGA alleges extends to the entirety of MGA's marketing techniques

17   and product appearance. Mattel also contends that Request No. 13 seeks documents that are

18   directly relevant to MGA's claim that Mattel systematically modified its products to increase their

19   similarity to MGA's products over time.

20        In its opposition brief, MGA does not attempt to refute any of Mattel's relevancy

21   arguments above, relying instead on its argument that these requests are premature until Judge

22   Larson issues a ruling. Judge Larson, however, issued an order on July 5, 2007. Accordingly, the

23   requests are no longer premature. The subject requests are relevant and not unduly burdensome.

24   MGA is ordered to produce all non-privileged documents that are responsive to Request Nos. 1,

25   3, 4, 13 and 18.

26   //

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)



EXHIBIT 27
PAGE 518

1  <u>Request Nos. 5-8, 16-17, 19-20, 27, 37-40, 43, 52, 55-56, and 157-159</u>

2         In its opposition brief, MGA agrees to produce documents responsive to Request Nos. "5-

3  8, 16-17, 19-20, 27, 37-40, 43, 52, 55-56, and 157-159." MGA's Opposition at p. 3. Later in its

4  opposition brief, however, MGA contends that Request Nos. 55 and 56 are overbroad and

5  burdensome. See MGA's Opposition at pp. 3 and 8. Request No. 55 seeks production of "[a]ll

6  periodicals, whether they be magazines, newspapers, newsletters, or any other type of periodical,

7  that mention the CONTESTED MGA PRODUCTS that have been published since January 1,

8  1999." Request No. 56 seeks "[a]ll television or radio broadcasts or cablecasts that mention the

9  CONTESTED MGA PRODUCTS that have been disseminated since January 1, 1999." MGA

10  contends that these requests encompass, among other things, every single advertisement MGA

11  ever ran in connection with BRATZ or any of the other products at issue.

12         Mattel contends that Request Nos. 55 and 56 are designed to obtain documents that may

13  contain admissions relevant to various issues in the case, including admissions regarding the

14  origin and timing of the products at issue; the performance of the contested products or MGA as a

15  whole, which may undercut MGA's claims for damages; and statements that might reveal that

16  MGA had access to confidential Mattel information.

17         Although Request Nos. 55 and 56 encompass potentially relevant documents, they are

18  overbroad. They require MGA to produce every single advertisement MGA ever ran in

19  connection with all of the products at issue. The requests are not limited in any respect to the

20  subjects of interest to Mattel, i.e., the origin and timing of the products at issue. Furthermore,

21  Mattel has utilized other document requests and depositions to obtain the type of evidence it now

22  seeks.

23         Accordingly, Mattel's motion is granted as to Request Nos. 5-8, 16-17, 19-20, 27, 37-40,

24  43, 52, and 157-159 to ensure a deadline for production, and denied as to Request Nos. 55 and 56

25  pursuant to Rule 26(b)(2); Fed.R.Civ.P.

26  //

27

28  Bryant v. Mattel, Inc.,
   CV-04-09049 SGL (RNBx)

EXHIBIT __21__
PAGE __519__

1   **Request Nos. 9, 10, 12**

2         Request Nos. 9, 10 and 12 call for "[a]ll DOCUMENTS RELATING TO the invention,

3   creation, origin, conception, authorship, design, development, production, engineering,

4   manufacture, distribution, sale and ownership of products and packaging" "that YOU contend

5   provide a basis for any claim against MATTEL, whether or not such claim is in the

6   COMPLAINT" (No. 9); "that YOU contend MATTEL copied or infringed" (No. 10); and related

7   "COMMUNICATIONS" (No. 12). During the meet and confer process, MGA agreed to produce

8   "documents sufficient to show the timing of, and relevant facts" regarding the following products

9   on the following topics:

10       • "First generation 'Bratz'" line, including packaging – invention, creation, origin,

11       conception, authorship, design, development, sale and ownership;

12       • "Bratz" "Wintertime Wonderland" line, including packaging – invention, creation,

13       origin, conception, authorship, and first sale;

14       • "Bratz" "Sportz" Cloe, including packaging – invention, creation, origin, conception,

15       authorship and first sale;

16       • "Bratz" "Sun-Kissed Summer" line, including packaging and playset – invention,

17       creation, origin, conception, authorship, and first sale;

18       • "Bratz" "Formal Funk" line – invention, creation, origin, conception, authorship, and first

19       sale;

20       • "Bratz" "Runway Disco," including packaging – invention, creation, origin, conception,

21       authorship, and first sale;

22       • "Bratz" "Funky Fashion Makeover Head," including packaging – invention, creation,

23       origin, conception, authorship, and first sale;

24       • "Bratz" "Petz," including packaging – invention, creation, origin, conception,

25       authorship, and first sale;

26

27

28



EXHIBIT __27__
PAGE __520__

1    • "4-Ever Best Friends," including packaging – invention, creation, origin, conception,

2    authorship, and first sale;

3    • "Mommy's Little Patient" – invention, creation, origin, conception, authorship, and first

4    sale;

5    • "AlienRacers," including logo – invention, creation, origin, conception, authorship, and

6    first sale; and

7    • "Bratz" "Diamondz" line – invention, creation, origin, conception, authorship, and first

8    sale.

9  Kidman Decl., Ex. 14.  In response to Request No. 9, MGA also agreed to produce documents

10  containing development, production and sales information for the product(s) affected by the hair

11  shortage allegedly caused by Mattel and "sufficient to show the timing of and relevant facts

12  regarding the shortage and its effect on MGA." Id.  Thereafter, MGA asserted objections to these

13  requests in its May 31, 2007 supplemental responses.  In opposition to Mattel's motion, however,

14  MGA restated that it would produce documents responsive to these requests consistent with its

15  prior meet and confer letter.  MGA's Opposition at p. 5.

16       Mattel contends that MGA's agreement to produce documents is insufficient because

17  MGA has limited its production to documents "sufficient to show."  MGA's opposition brief fails

18  to address Mattel's argument.  Instead, MGA merely asserts that it agreed to produce documents

19  responsive to Request Nos. 9, 10 and 12 during the meet and confer process, and therefore

20  Mattel's motion should be denied as moot.

21       Request Nos. 9, 10 and 12 clearly seek relevant information, and MGA has failed to

22  justify why its production should be limited to documents "sufficient to show."  Therefore,

23  Mattel's motion is granted as to Request Nos. 9, 10 and 12.

24  <u>Request Nos. 26, 29, 30, 32, 36, 45, 48-51, 118, 137 and 166</u>

25       In its two meet and confer letters MGA agreed to produce, subject to its General and

26  Specific Objections, documents responsive to Request Nos. 26, 29, 30, 32-36, 45, 48-51, 118, 137

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT __27__

PAGE __581__

1   and 166. Kidman Decl., Ex. 14. Mattel points out, however, that MGA's May 31, 2007

2   supplemental responses are inconsistent insofar as the responses indicate that MGA continues to

3   object to some of the requests or otherwise agrees to produce only a limited portion of documents

4   responsive to other requests. Mattel's Reply Brief at p. 7. Nevertheless, in its opposition brief,

5   MGA reaffirms its earlier agreement to produce all responsive documents, and states that it

6   considers Mattel's motion to be moot. See MGA's Opposition at pp. 5-6. Mattel's motion is

7   granted as to this category of requests.

8   **Request Nos. 65-117 and 119**

9        In its opposition brief, MGA agrees to produce documents responsive to Mattel's Request

10   Nos. 65-117 and 119 now that Judge Larson issued an order denying MGA's motion to dismiss

11   Mattel's trade secret claims. MGA's Opposition at pp. 2 and 6. Mattel's motion is granted as to

12   these requests.

13   **Request Nos. 42, 54, 58-60, 138-140, 160-161 and 164**

14        MGA contends that Request Nos. 42, 54, 58-60, 138-140, 160-161 and 164 are overbroad

15   and unduly burdensome. Mattel insists that they are not. More specifically, Mattel contends that

16   the requests seek documents regarding MGA's alleged theft of Mattel's trade secrets, and in

17   particular, the theft of trade secrets through targeting and hiring current and former Mattel

18   employees.

19        Request No. 42 seeks "[a]ll COMMUNICATIONS between [MGA] and any individual

20   while the individual was employed by MATTEL." Although the request may encompass relevant

21   documents, it is overbroad insofar as it requires production of all communications, regardless of

22   subject matter. Furthermore, the request is objectionable to the extent it seeks documents that are

23   equally available to Mattel. Therefore, Mattel's motion is denied as to Request No. 42 pursuant

24   to Rule 26(b)(2), Fed.R.Civ.P.

25        Request No. 54 seeks "[a]ll DOCUMENTS RELATING TO any COMMUNICATION by

26   [MGA] with any news organization regarding the CONTESTED MGA PRODUCTS or the

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT **27**
PAGE **522**

1   CONTESTED MATTEL PRODUCTS." Once again, the request encompasses potentially

2   relevant documents, however it is overbroad, seeking all documents relating to any

3   communications by MGA with any news organization. Furthermore, the request seeks documents

4   that are of relatively minimal relevance to the claims and defenses in the case. Therefore,

5   Mattel's motion is denied as to Request No. 54 pursuant to Rule 26(b)(2), Fed.R.Civ.P.

6        Request Nos. 58 seeks "[a]ll DOCUMENTS RELATING TO publicity by [MGA] or

7   about the CONTESTED MGA PRODUCTS since January 1, 1999, including but not limited to

8   advertising, media releases, and public relations material." This request is also overbroad in that

9   it seeks all documents relating to publicity by MGA about its products at issue in the litigation.

10  Mattel's motion is therefore denied as to Request No. 58 pursuant to Rule 26(b)(2), Fed.R.Civ.P.

11       Request No. 59, asks for "[a]ll DOCUMENTS RELATING TO any effort by [MGA] to

12  recruit employees or contractors since January 1, 1999, including but not limited to advertising,

13  media releases, brochures, articles, catalogs, handbooks, and public relations material." The

14  request is overbroad insofar as it requires production of all documents relating to MGA's

15  recruiting, including for instance, recruiting from competitors other than Mattel. Mattel's motion

16  is therefore denied as to Request No. 59 pursuant to Rule 26(b)(2), Fed.R.Civ.P.

17       Request No. 60 seeks "[a]ll DOCUMENTS RELATING TO the hiring, engagement, or

18  retention by [MGA] of any former or current MATTEL employee or contractor since January 1,

19  1999, including but not limited to all employment agreements and agreements RELATING TO

20  confidentiality or the invention, authorship, or ownership of any concept or product." Request

21  No. 138 seeks "[a]ll COMMUNICATIONS between [MGA] and any PERSON RELATING TO

22  the departure from MATTEL of any current or former MATTEL employee or contractor."

23  Request No. 139 seeks "[a]ll COMMUNICATIONS between [MGA] and any PERSON

24  RELATING TO the obligations to MATTEL, including the duty of confidentiality, of any current

25  or former MATTEL employee or contractor. Request No. 140 seeks "[a]ll

26  COMMUNICATIONS between [MGA] and any current or former MATTEL employee or

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT _____27____

PAGE _523___

1   contractor RELATING TO the ownership of any idea, concept, design, or product.  Unlike the

2   previous requests, Request Nos. 60, 138, 139 and 140 are reasonably tailored to seek documents

3   central to Mattel's allegation that MGA stole its trade secrets through targeting and hiring current

4   and former Mattel employees.  MGA has not carried its burden of establishing that it would be

5   unduly burdensome to comply with these requests.  Accordingly, Mattel's motion is granted as to

6   Request Nos. 60, 138, 139 and 140.

7           Request No. 160 seeks "[a]ll DOCUMENTS received from MATTEL (whether directly

8   or indirectly) by [MGA] at any time since January 1, 1999."  Request No. 161 seeks "[a]ll

9   DOCUMENTS that [MGA has] reason to believe were created by or originated from MATTEL,

10  other than MATTEL products that [MGA] purchased at retail."  Request No. 164 seeks "[a]ll

11  DOCUMENTS RELATING TO any COMMUNICATIONS with, or inquiry or investigation by,

12  any government entity RELATING TO the CONTESTED MGA PRODUCTS or the

13  CONTESTED MATTEL PRODUCTS."  These three requests are also reasonably tailored to seek

14  documents that could support Mattel's allegations of trade secret theft.  MGA has failed to

15  establish that it would be unduly burdensome to comply with these requests.  Mattel's motion is

16  granted as to Request Nos. 160, 161 and 164.

17                                  IV. CONCLUSION

18          For the reasons set forth above, Mattel's motion is granted as to Request Nos. 1, 3-10, 12,

19  13, 16-20, 26, 27, 29, 30, 32-40, 43, 45, 48-52, 60, 65-117, 118, 119, 137-140, 157-161, 164 and

20  166, and denied as to Request Nos. 42, 54-56, 58, 59.  MGA shall produce, without limitation, all

21  non-privileged responsive documents in accordance with this Order no later than August 30,

22  2007.  Mattel's request for sanctions is denied.

23          Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

24  Master, Mattel shall file this Order with the Clerk of Court forthwith.

25  Dated: August /3, 2007

26                                          HON. EDWARD A. INFANTE (Ret.)
                                            Discovery Master

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT __27__
PAGE __524__

# EXHIBIT 28

CONFORMED COPY
LODGED                    FILED

2007 MAY 16  PM 1: 59   2007 MAY 16  PM 2: 00
CLERK U.S. DISTRICT COURT   CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.    CENTRAL DIST. OF CALIF.
RIVERSIDE               RIVERSIDE
BY_____

1   Hon. Edward A. Infante (Ret.)
    JAMS
2   Two Embarcadero Center
    Suite 1500
3   San Francisco, California  94111
    Telephone:    (415) 774-2611
4   Facsimile:    (415) 982-5287

5

6

7                    UNITED STATES DISTRICT COURT

8                    CENTRAL DISTRICT OF CALIFORNIA

9                         EASTERN DIVISION

10

11  CARTER BRYANT, an individual,          CASE NO. C 04-09049 SGL (RNBx)
                                           JAMS Reference No. 1100049530
12              Plaintiff,

13         v.                              Consolidated with
                                           Case No. CV 04-09059
14  MATTEL, INC., a Delaware corporation,  Case No. CV 05-2727

15              Defendant.                 ORDER GRANTING MATTEL'S
                                           MOTION TO COMPEL PRODUCTION
16                                         OF DOCUMENTS AND
                                           INTERROGATORY RESPONSES BY
17  CONSOLIDATED WITH                      MGA
    MATTEL, INC. v. BRYANT and
18  MGA ENTERTAINMENT, INC. v. MATTEL,
    INC.
19

20

21                          I. INTRODUCTION

22         On February 2, 2007, Mattel, Inc. ("Mattel") submitted its Motion To Compel Production

23  of Documents and Interrogatory Answers by MGA Entertainment, Inc. ("MGA").  On February

24  20, 2007, MGA submitted its opposition brief, and on February 26, 2007, Mattel submitted a

25  reply brief.  The matter was heard on March 5, 2007.  Thereafter the motion was taken under

26  submission pending the parties' submission of a proposed protective order, which was received

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT  28
PAGE  585

1  on April 23, 2007.  Having considered the motion papers and comments of counsel at the hearing,

2  Mattel's motion to compel is granted.

3                                       II.  BACKGROUND

4           A.  Requests for Documents

5           In June of 2004, two months after Mattel filed suit against Bryant, and before MGA

6  became a party to the action, Mattel served MGA with an eight-page subpoena for twenty-one

7  categories of documents, to be produced in ten days.  MGA filed a motion to quash, which the

8  court granted because of the short amount of time provided for compliance with the subpoena.

9  The parties met and conferred in July of 2004, and reached an agreement to limit the scope of

10 some of Mattel's requests.  In particular, the parties agreed to limit production to the "first

11 generation" Bratz dolls.  On August 12, 2004, MGA produced documents.

12          In 2005, the parties stipulated to supplementing their document productions on May 16,

13 2005.  Mattel agreed to continue limiting its discovery requests to "first generation" Bratz dolls.

14          In September of 2006, MGA made a supplemental production of documents.  On February

15 5, 2007, MGA produced about 2,300 pages of documents to replace earlier produced documents

16 with legibility problems.  On February 20, 2007, MGA produced an additional 224 pages of

17 documents to replace earlier produced documents with legibility problems.

18          Mattel now moves to compel MGA to produce documents responsive to its requests.  As a

19 preliminary matter, Mattel contends that MGA's production is deficient because it contains

20 redactions and cut-off text.  Further, Mattel contends that MGA's production is incomplete with

21 respect to essentially five categories of documents.  First, Mattel contends that MGA is

22 withholding documents relating to the origins of Bratz and Bryant's work for MGA.  Mattel

23 believes that MGA's production is incomplete based upon its review of documents that have been

24 produced by third party Steven Linker.  According to Mattel, Linker's documents from October

25 of 2000 show that Bratz was much farther along before Bryant left Mattel than MGA or Bryant

26 previously represented.  Mattel also contends that MGA's responses to the document requests

27

28

EXHIBIT  *28*

PAGE  *526*

1   contain inappropriate limitations, such as MGA's statement that it will produce "relevant and

2   responsive non-objectionable documents" or only that it will produce documents "sufficient" to

3   show when certain dates relating to Bratz occurred. Mattel contends that these "carve outs

4   purport to allow MGA to cherry-pick what it will and will not produce to Mattel." Mattel's

5   Separate Statement at 17:11-13. Mattel also contends that the carve-outs fail to provide notice of

6   what is or is not being withheld. Mattel also contends that MGA's objections based upon its

7   confidentiality concerns or the privacy rights of third parties are unwarranted in light of the

8   protective order in place. In addition, Mattel contends that MGA's objection to producing

9   documents relating to activities or conduct in foreign countries is wholly improper because those

10   documents may contain information relevant to Mattel's claims.

11       Second, Mattel seeks documents relating to the origins of Bratz, regardless of whether

12   such documents relate to the "first generation" Bratz dolls. Mattel argues that whether the work

13   ultimately resulted in Bratz dolls that were released at a particular time does not matter for

14   discovery purposes. Mattel contends that the works created by Bryant during his Mattel

15   employment are highly relevant because Mattel owns them, regardless of whether they resulted in

16   a Bratz doll released at a particular time.[1]

17       Mattel next contends that MGA is improperly withholding documents about designs

18   Bryant created on Bratz dolls that were released after June 2001, even though such designs may

19   be derivative of work he did when employed by Mattel. Mattel contends that it is entitled to

20   explore whether such works and the profits from Bratz dolls other than the "first generation"

21   Bratz dolls were derived from works owned by Mattel both for purposes of establishing liability

22   and damages. Furthermore, Mattel asserts that the "first generation" limitation on discovery is

23   improper in light of Bryant's continuing duty not to use Mattel's confidential and proprietary

24   information as well as MGA's unfair competition claims.

25

26       [1] Mattel also reiterates many of the arguments it made previously in connection with its earlier filed motion to compel Bryant to produce documents.

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

3

EXHIBIT ___28___
PAGE ___527___

1    Mattel also asserts that MGA is improperly withholding documents relating to products,

2 services and matters other than those relating to "dolls." According to Mattel, it has evidence that

3 Bryant conceived of marketing and advertising ideas for the Bratz line while he was employed by

4 Mattel. Mattel contends that any such ideas or contributions may belong to it pursuant to the

5 Inventions Agreement.

6    Third, Mattel seeks documents relating to all of MGA's payments to Bryant, and not just

7 payments for the "first generation" Bratz dolls. Mattel asserts that such information is relevant

8 because (1) Mattel seeks all benefits Bryant received as a result of violating his duties to Mattel;

9 (2) under the Copyright Act, Mattel is entitled to all profits from infringement as well as actual

10 damages; and (3) payments may show when and what trade secret information Bryant and other

11 defendants allegedly misappropriated from Mattel.

12    Fourth, Mattel seeks documents relating to MGA's agreements with Bryant. Mattel

13 contends that all agreements between Bryant and MGA are relevant, not just the original

14 September 18, 2000 agreement. In particular, Mattel contends that it is entitled to discover all

15 documents relating to MGA and Bryant's alleged joint defense agreement because such

16 information would be relevant to demonstrate bias and lack of credibility.

17    Fifth, Mattel seeks production of all declarations, affidavits and other sworn written

18 statements from other cases that refer or relate to Bratz or Angel. Mattel contends that such

19 information may reveal relevant information about the date of creation of Bryant's Bratz

20 drawings.

21    In response, MGA denies withholding responsive documents and asserts that it has

22 produced volumes of documents responsive to Mattel's requests. In particular, MGA represents

23 that it has produced all responsive and relevant documents that it was able to locate in response to

24 request nos. 6, 7, 9, 26, 27, 32, 33, 34, 35, 36, 55, 69, and 70. Further, MGA asserts that even

25 before the motion was filed, it had agreed to address the vast majority of the issues raised in this

26 motion. In particular, MGA represents that it is diligently working to produce documents related

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

4

EXHIBIT 28
PAGE 528

1  to Bratz other than "first generation" Bratz in response to request nos. 1, 2, 8, 10, 11, 43, 45, 46,

2  49, 50, 51, 53, 57, 59, 61, 63, 64, 66, 96, 97, 98, 99 and 100.  MGA represents that it informed

3  Mattel that it would produce documents pertaining to subsequent generations of Bratz dolls that

4  have been released on the market. In addition, MGA represents that it has agreed to produce

5  documents relevant to Bratz or Prayer Angels that it received from Union Bank.  More

6  specifically, MGA represents that it agreed to review and produce documents provided to it by

7  Union Bank for the years 1999 – 2001 concerning payments that it could identify as being for

8  Bratz or Prayer Angels.  MGA also represents that it has agreed to produce royalty statements.

9  Therefore, MGA views the motion as unnecessary.

10      MGA next contends that Mattel's motion should be denied for the following additional

11  reasons.  First, MGA contends that Mattel is not entitled to MGA's product design documents for

12  unreleased products.  MGA asserts that its product design documents for its unreleased toy

13  concepts are among its most highly valuable trade secrets.  Furthermore, MGA contends that

14  designs and drawings for products currently under development, over six years after Bryant first

15  created his original Bratz drawings, have no relevance to any of Mattel's claims.  In the event that

16  documents relating to unreleased products are ordered produced, MGA requests a protective order

17  under Rule 26(c), Fed.R.Civ.P., that limits the dissemination of its documents more drastically

18  than the current protective order provides.  In the alternative, MGA requests that any order

19  compelling production of documents relating to unreleased products should essentially be stayed

20  until after MGA's products are publicly released.

21      Second, MGA contends that Mattel is not entitled to information concerning Bryant's

22  attorneys' fees because the information is privileged.  Furthermore, MGA contends that the

23  information is not relevant to demonstrate bias because "there is no dispute that Bryant's interests

24

25

26

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

5



EXHIBIT 28
PAGE 529

1   in this case are aligned with those of MGA, and that Bryant is 'biased' in that sense." MGA's

2   Opposition at 24:9-12.[2]

3        Third, MGA asserts that Mattel is not entitled to review all non-public witness statements

4   and litigation documents concerning Bratz for a variety of reasons, including because Mattel has

5   refused to produce similar types of documents.  More significantly, MGA contends that Mattel's

6   requests for non-public witness statements are "a blatant attempt to avoid the discovery

7   limitations imposed by both the Federal Rules of Civil Procedure and those additional limitations

8   imposed by this Court." MGA's Opposition at 25:6-7.  MGA explains its position as follows.

9   MGA is involved in litigation against a number of counterfeiters and infringers in Asia.  In 2003,

10  Mattel allegedly began feeding documents concerning "Toon Teens" to those defendants in an

11  attempt to prove that Bryant created Bratz while working at Mattel, even though Mattel

12  abandoned its claims based upon "Toon Teens" in this court.  Thereafter, those defendants took

13  the position that MGA did not own, and therefore could not enforce, the rights to Bratz.  MGA

14  was thus forced to litigate the issue of ownership.  MGA contends that "[i]n effect, by prompting

15  foreign counterfeiters to espouse a theory that Mattel now admits has no merit, Mattel has created

16  a situation in which MGA has been forced to give testimony and provide evidence related to

17  issues in this case that Mattel now seeks to obtain wholesale." MGA's Opposition at 25:5-24.

18       Fourth, MGA contends that Mattel is not entitled to documents concerning a family

19  dispute between MGA's chief executive officer and his brother because such documents are in no

20  way relevant to this lawsuit.  MGA explains that the brothers were involved in an arbitration

21  proceeding relating to MGA's CEO's purchase of his brother's interest in MGA.  Moreover,

22  MGA contends that the brothers were bound by a protective order prohibiting the use of any

23  documents or testimony for any purpose other than the arbitration.

24

25  _____

26       [2]  Nevertheless, MGA represents that it has produced the only non-privileged document responsive to the request.

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

6



EXHIBIT 28
PAGE 580

1    Fifth, MGA contends that Mattel is not entitled to its chief executive officer's personnel

2    files because they contain confidential information and are not relevant to the lawsuit.  Sixth,

3    MGA contends that Mattel is not entitled to obtain documents from MGA that belong to, and are

4    in the possession, custody and control of, its indirect foreign subsidiary, MGA HK Ltd.  Lastly,

5    MGA objects to producing documents relating to any testing performed to determine the date that

6    Bratz documents were created.  MGA contends that such discovery is premature and should not

7    proceed until experts are designated.

8        B. Interrogatories

9        On April 28, 2005, Mattel served its Second Set of Interrogatories.  On May 20, 2005,

10   however, the district court stayed the action.  On May 17, 2006, the district court lifted the stay.

11   On May 30, 2006, MGA responded to the interrogatories.

12       Mattel contends that MGA's responses to the interrogatories were untimely.  Further,

13   Mattel contends that the interrogatory responses to numbers five through eleven are deficient

14   because they lack substantive information and consist almost entirely of objections.  MGA

15   responds that the motion is moot because it is prepared to provide supplemental responses to its

16   interrogatories.  MGA does not otherwise assert any additional grounds for opposing Mattel's

17   motion to compel responses to interrogatories.

18                                    III. DISCUSSION

19       A. Rule 26 of the Federal Rules of Civil Procedure

20       Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain

21   discovery regarding any matter, not privileged, that is relevant to the claim or defense of any

22   party." Fed.R.Civ.P. 26(b)(1).  "Relevant information need not be admissible at trial if the

23   discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id.

24   Discovery shall, however, be limited by the court if it determines that: "(i) the discovery sought is

25   unreasonably cumulative or duplicative, or is obtainable from some other source that is more

26   convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample

27

28


EXHIBIT 28
PAGE 531

1   opportunity by discovery in the action to obtain the information sought; or (iii) the burden or

2   expense of the proposed discovery outweighs its likely benefit, taking into account the needs of

3   the case, the amount in controversy, the parties' resources, the importance of the issues at stake in

4   the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P.

5   26(b)(2).

6          B.  Document Requests

7              1.  Requests re Origins of Bratz and Bryant's Work for MGA (Nos. 6, 26, 27, 32, 33,

8                  34, 35, 51, 53, 55, 64, 69, 96, 97, 98, 99, 100

9          The requests above seek discoverable information regarding the origins of Bratz and

10  Bryant's work for MGA.  MGA represents that it has produced all responsive documents in

11  response to request nos. 6, 26, 27, 32, 33, 34, 35, and 69 (MGA's Opposition at 13:4-5), and is

12  "diligently working to produce documents in response to" request nos. 51, 53, 64, 96, 97, 98, 99,

13  and 100, including documents related to Bratz other than "first generation" (MGA's Opposition at

14  14:1-4 and note 39).  MGA does, however, object to producing design documents for unreleased

15  products and documents from MGA Hong Kong.

16         As a threshold matter, MGA's responses are inadequate to the extent MGA has restricted

17  its production to "relevant and responsive non-objectionable documents" or documents

18  "sufficient" to show when events relating to Bratz occurred.  These restrictions suggest that MGA

19  might be excluding documents that are responsive to the request based upon its unilateral

20  determination of what is "relevant" or "sufficient."  Mattel shall provide the responses to

21  document requests ordered herein without these restrictions.

22                          Design Documents for Unreleased Products

23         MGA's design documents for unreleased products are relevant to Mattel's claims and

24  defenses and must be produced.  See Order Modifying Protective Order.  On April 23, 2007, the

25  parties submitted a stipulation to modify the existing protective order to limit the disclosure of

26  design documents for unreleased products that constitute trade secret information.  See Stipulation

27

28

EXHIBIT  28
PAGE  532

1  to Modify Protective Order; And Proposed Order Thereon ("stipulation").  The parties' stipulation

2  has been approved and entered as an order of the court.  MGA is ordered to produce design

3  documents for unreleased products that are responsive to Mattel's document requests in

4  accordance with the terms of the stipulation and order.

5  <center>Documents from MGA Hong Kong</center>

6  　　　Documents relating to activities or conduct in foreign countries are relevant and

7  discoverable because Mattel has evidence indicating that MGA Hong Kong was involved with

8  Bratz.  Nevertheless, MGA objects to producing documents from Hong Kong unless Mattel

9  provides reciprocal discovery from its subsidiaries.

10  　　　Whether MGA is entitled to discovery from Mattel's subsidiaries has not been briefed in

11  the context of this motion, and therefore is not addressed herein.  MGA is ordered to produce

12  documents from MGA Hong Kong.

13  　　　Mattel's motion is granted with respect to request nos. 6, 26, 27, 32, 33, 34, 35, 51, 53, 55,

14  64, 69, 96, 97, 98, 99, 100.

15  　　　2. Additional Requests re Origins of Bratz (Nos. 7, 8, 9, 10, 11, 12, 13, 36, 46, 57, 59,

16  　　　　61, 63, 66, 67, 70, 88, 90, 91

17  　　　Mattel contends that MGA is improperly limiting its document production to the "first

18  generation" Bratz dolls.  MGA represents, however, that it has agreed to produce subsequent

19  generations of Bratz products (MGA's Opposition at 9:20-25, 13:6-14:1), except design

20  documents for yet unreleased products.

21  　　　As stated previously, design documents for yet unreleased products are relevant and

22  discoverable.  See Order Modifying Protective Order.  Accordingly, MGA is ordered to produce

23  all non-privileged documents that are responsive to request nos. 7, 8, 9, 10, 11, 12, 13, 36, 46, 57,

24  59, 61, 63, 66, 67, 70, 88, 90, and 91.

25  　　　//

26  　　　//

27

28  Bryant v. Mattel, Inc.,
　　CV-04-09049 SGL (RNBx)
                                                                                                9

EXHIBIT __28__
PAGE __533__

3. MGA's Payments to Bryant (Nos.43, 45)

MGA represents that it has already agreed to produce documents related to Bratz, without limiting its production to "first generation" Bratz.  MGA's motion at 13:7-14:3.  Nevertheless, Mattel is entitled to an order compelling production of such documents by a date certain.  Mattel's motion is granted with respect to request nos. 43 and 45.

4. MGA's Agreements with Bryant (Nos. 1, 2, 49, 50)

MGA represents that it has already agreed to produce non-privileged documents responsive to request nos. 1, 2, 49, and 50, even though it believes that such documents are not relevant (MGA's motion at 13:7-14:3).  These requests seek documents relating to fee or indemnity agreements between MGA and Bryant .

Fee or indemnity agreements are relevant to demonstrate bias and lack of credibility.  Accordingly, Mattel's motion is granted with respect to request nos. 1, 2, 49, and 50.  Any responsive documents withheld on the basis of a privilege must be properly identified in a privilege log.

5. Declarations, Affidavits & Other Sworn Written Statements (Nos. 37, 38, 39, 40, 41.

In request nos. 37, 38, 390, 40, and 41, Mattel seeks production of declarations, affidavits, and other sworn written statements from cases that refer or relate to Bratz or Angel.  Mattel anticipates that these documents could provide evidence relating to the conception date for Bratz.

Request nos. 37, 38, 39, 40, and 41 seek relevant information regarding the conception date for Bratz.  MGA admits in its opposition brief that this issue was litigated in its suits against alleged counterfeiters and infringers.[3]  The issue also appears to have been raised in the arbitration proceedings between MGA's chief executive officer, Isaac Larian, and his brother Farhad Larian.  In those proceedings, Farhad Larian alleged that Isaac Larian concealed from him

---

[3]  Although MGA questions the propriety of Mattel providing assistance to the alleged counterfeiters and infringers in raising ownership of Bratz as a defense against MGA's claims, MGA has not cited to any legal authority that prohibits Mattel's conduct.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

10

EXHIBIT 28
PAGE 534

1  that MGA was developing Bratz by early 2000.  Nevertheless, MGA objects to producing

2  documents from the Larians' arbitration on the grounds that the arbitration was governed by a

3  protective order that prohibits the use of any documents or testimony for any purpose other than

4  the arbitration.  MGA, however, has not provided any evidence of the protective order.

5  Accordingly, Mattel's motion to compel is granted as to request nos. 37, 38, 39, 40 and 41.[4]

6        6. <u>Documents Regarding Date-Testing (Request No. 92)</u>

7       Mattel's request no. 92 seeks documents that refer or relate to "any testing of or sampling

8  from any documents that refer or relate to Bratz or Bryant, including without limitation any such

9  testing or sampling in connection with ink, paper or chemical analysis to date any such documents

10  and including without limitation all results and reports relating thereto."  MGA contends that the

11  request is premature, and should proceed in the course of expert discovery.

12       The request calls for relevant discovery and there is no basis for delaying production of

13  responsive documents, other than expert reports.  The timing of expert reports is governed by

14  Rule 26(a)(2)(C), Fed.R.Civ.P.  Accordingly, Mattel's motion is granted as to request no. 92.

15       C. <u>Interrogatories</u>

16       Mattel contends that MGA's responses to interrogatories were untimely, and therefore

17  MGA has waived its objections to the interrogatories.  Pursuant to Rule 33(b)(3), Fed.R.Civ.P.,

18  responses to interrogatories are due thirty days after service.  In this case, Mattel served its

19  interrogatories on April 28, 2005, and responses were initially due May 31, 2005.  The district

20  court, however, issued a stay on May 20, 2005, twenty-two days after the interrogatories were

21  served.  The district court lifted the stay on May 17, 2006.

22

23

24

25

---

26      [4]  In its discussion of the arbitration proceedings, MGA raises an objection to producing Isaac Larian's personnel file based upon privacy grounds.  The personnel file may have documents relevant to Bratz, and therefore

27  should be produced.  The protective order is sufficient to alleviate Mr. Isaac Larian's privacy concerns.

28

11


EXHIBIT **28**
PAGE 535

1    Neither party has cited to any caselaw governing the calculation of the 30-day period

2    when there is an intervening stay in discovery.  In the absence of any caselaw, MGA's responses

3    will be treated as timely in order to preserve any valid objections MGA may have asserted.

4        Interrogatory No. 5 seeks the identity of each and every person who was involved in the

5    conception, origin, creation, design, development, sculpting, engineering, reduction to practice,

6    tooling or painting of, or who otherwise produced or contributed to any embodiment of Bratz

7    before December 31, 2001, including a description of each person's role and the start and end

8    dates of each person's involvement.  In response, MGA asserted numerous objections, but did

9    provide the names of five individuals.

10       The interrogatory clearly seeks information relevant to the claims at issue.  MGA's

11   objections are without merit.  The interrogatory is not vague, ambiguous, compound or overbroad.

12   Nor has MGA carried its burden of establishing that the interrogatory is unduly burdensome, calls

13   for confidential, proprietary or commercially sensitive information, or seeks information

14   protected by the attorney-client privilege.  Furthermore, MGA's response is incomplete insofar as

15   it fails to provide the description of each person's role and the start and end dates of each person's

16   involvement.  Accordingly, MGA is ordered to provide a complete response to Interrogatory No.

17   5 and identify documents in compliance with Rule 33(d), Fed.R.Civ.P.

18       Interrogatory No. 6 seeks the same information as Interrogatory No. 5 with respect to any

19   embodiment of Angel.  MGA is ordered to provide a complete response to Interrogatory No. 6 for

20   the reasons previously discussed in connection with Interrogatory No. 5.

21       Interrogatory No. 7 asks MGA to identify each and every embodiment of Bratz prior to

22   December 31, 2001.  In response, MGA asserted numerous objections and did not provide any

23   substantive information.

24       MGA's objections are without merit.  The interrogatory clearly seeks information relevant

25   to establishing when Bryant first conceived Bratz.  The interrogatory is not vague, ambiguous,

26   compound or overbroad.  Nor has MGA carried its burden of establishing that the interrogatory is

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

12

EXHIBIT   28
PAGE   536

1   unduly burdensome, calls for confidential, proprietary or commercially sensitive information, or

2   seeks information protected by the attorney-client privilege.  Accordingly, MG is ordered to

3   provide a complete response to Interrogatory No. 7.

4     Interrogatory No.8 asks MGA to identify each and every embodiment of Angel.  MGA is

5   ordered to provide a complete response to Interrogatory No. 8 for the reasons previously

6   discussed in connection with Interrogatory No. 7.

7     Interrogatory No. 9 requires MGA to identify each and every sworn statement that refers

8   or relates to the conception, origin, creation, design, development, sculpting, engineering, tooling

9   or painting of Bratz.  In response, MGA asserted numerous objections and did not provide any

10  substantive information.

11    The interrogatory seeks information relevant to establishing when Bryant first conceived

12  Bratz.  Furthermore, MGA's boiler-plate objections are unsubstantiated.  Accordingly, MGA is

13  ordered to provide a complete response to Interrogatory No. 9.

14    Interrogatory No. 10 requires MGA to identify each and every instance in which Bratz

15  was shown, displayed, or exhibited prior to June 1, 2001, including by stating the date(s) on

16  which each such instance occurred, the location of each show or exhibit, and the identity of

17  persons with knowledge of the shows or exhibits.  In response, MGA asserted numerous

18  objections and provided the following information:  Hong Kong Toy Fair in Hong Kong in or

19  about January 2001 and New York Toy Fair, New York, in or about February 2001.

20    Once again, MGA's boiler-plate objections are unsubstantiated.  The information is

21  potentially relevant to establish when Bryant conceived Bratz.  Further, the response is

22  incomplete insofar as it fails to identify any persons with knowledge.  Therefore, MGA is ordered

23  to provide a complete response to Interrogatory No. 10.

24    Interrogatory No. 11 requires MGA to state the "number for each and every telephone,

25  including without limitation each office, home and cell phone number, in the name of, for the

26  benefit of or for the account of Isaac Larian and any other telephone that Isaac Larian used from

27

28

13

EXHIBIT 28
PAGE 537

1    January 1, 1998 through the present, and IDENTIFY each and every carrier (including without

2    limitation any long-distance carrier) for each such number. In response, MGA asserted numerous

3    boiler-plate objections.

4        Once again, MGA has failed to substantiate any of its objections with supporting

5    declarations or legal authorities. Accordingly, all objections are overruled and MGA is ordered to

6    provide a full response to Interrogatory No. 11.

7                   IV. CONCLUSION

8        For the reasons set forth above, Mattel's motion to compel production of documents is

9    granted. MGA shall produce all non-privileged documents that are responsive to the requests

10   identified in this Order. Further, MGA shall produce all documents in un-redacted form, except

11   for redactions that are justified by the attorney-client privilege or work product doctrine. Mattel's

12   motion to compel interrogatory answers is also granted. MGA shall produce documents and

13   provide responses to interrogatories consistent with this Order, and produce a privilege log in

14   compliance with Rule 26(b)(5), Fed.R.Civ.P., no later than May 31, 2007. Mattel's request for

15   sanctions is denied.

16        Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

17   Master, Mattel shall file this Order with the Clerk of Court forthwith.

18

19

20

21   Dated: May 15, 2007

                                          HON. EDWARD A. INFANTE (Ret.)

22                                           Discovery Master

23

24

25

26

27

28

EXHIBIT 28
PAGE 538

# EXHIBIT 29

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER