# Exhibit 51

Page 1

1                    UNITED STATES DISTRICT COURT

2                    CENTRAL DISTRICT OF CALIFORNIA

3                         EASTERN DIVISION

4                            - - -

5          HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6                            - - -

7     MATTEL, INC.,                    )
                                       )
8                        Plaintiff,    )
                                       )
9             vs.                      )   No. CV 04-09049
                                       )
10    MGA ENTERTAINMENT, inc., et. Al.,)
                                       )
11                       Defendants.   )
      _____)   MOTION HEARING
12    AND CONSOLIDATED ACTIONS,        )
                                       )
13

14

15             REPORTER'S TRANSCRIPT OF PROCEEDINGS

16                    Riverside, California

17                 Monday, November 10, 2008

18                         1:05 P.M.

19

20

21

22

23                THERESA A. LANZA, RPR, CSR
               Federal Official Court Reporter
24               3470 12th Street, Rm. 134
               Riverside, California  92501
25                    951-274-0844
                  WWW.THERESALANZA.COM

Exhibit 51 - Page 362

1           THE COURT:  In order for me to decide about that --

2    I've got two binders full of exhibits that are the actual

3    photographs of the merchandise that Mattel is seeking the

4    injunction to.  I can't tell from the verdict form which of

5    these the jury found infringement on.

6           How else can I decide whether or not there should be

7    an injunction without going and conducting that same extrinsic

8    and intrinsic analysis that we presume that the jury did?

9           MR. NOLAN:  Correct.

10          And I'm not going to lateral, but I'm getting the

11   high sign that I should lateral to Mr. Kennedy, because he'll

12   address how I think the Court can, consistent with the jury's

13   finding, address that particular issue.

14          The point that I want to make, though, before I sit

15   down, your Honor, is this:  That in making that determination

16   in the first instance, why should you go through the exercise

17   that Mr. Quinn invited the jury to do, that a jury deliberated

18   and must, by its very verdict and its answer, have rejected the

19   argument that he wants to make that the scope --

20          THE COURT:  Wait a second.

21          How did they reject that?

22          MR. NOLAN:  With respect to the breadth.

23          THE COURT:  With the breadth.

24          MR. NOLAN:  That's the only point.  So all I want to

25   do is address the sweeping comment that Mr. Quinn makes that

Exhibit 51 - Page 363

1    nothing that is going to happen with respect to this between

2    now and that January hearing; that any order the Court issues

3    in the next week or two will go into effect come January, after

4    the holiday season has been completed.

5              That is all I have for right now.

6              Are there any questions on how we're proceeding at

7    this point?  From Mattel?

8              MR. QUINN:  No, your Honor.

9              THE COURT:  From MGA?

10             MR. NOLAN:  No, your Honor.

11             THE COURT:  Very well.  Court is in recess.

12

13

14

15

16                         CERTIFICATE

17

18   I hereby certify that pursuant to section 753, title 28, United

     States Code, the foregoing is a true and correct transcript of

19   the stenographically recorded proceedings held in the above-

     entitled matter and that the transcript page format is in

20   conformance with the regulations of the Judicial Conference of

     the United States.

21

22   _____        _____

     THERESA A. LANZA, CSR, RPR                     Date

23   Federal Official Court Reporter

24

25

Exhibit 51 - Page 364

# Exhibit 52

8069



1            UNITED STATES DISTRICT COURT

2            CENTRAL DISTRICT OF CALIFORNIA

3                 EASTERN DIVISION

4                    - - -

5      HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6                    - - -

7  MATTEL, INC.,                  )
                                  )
8                   Plaintiff,    )
                                  )
9          vs.                    )   No. CV 04-09049
                                  )
10 MGA ENTERTAINMENT, inc., et. Al., )  Trial Day 37
                                  )   morning session
11                 Defendants.    )   Pages 8069-8171
                                  )
12 AND CONSOLIDATED ACTIONS,      )
                                  )
13

14

15      REPORTER'S TRANSCRIPT OF JURY TRIAL PROCEEDINGS

16              RIVERSIDE, CALIFORNIA

17           Wednesday, August 20, 2008

18                 8:33 A.M.

19

20

21

22

23           THERESA A. LANZA, RPR, CSR
             Federal Official Court Reporter
24           3470 12th Street, Rm. 134
             RIVERSIDE, CALIFORNIA  92501
25                 951-274-0844
                 WWW.THERESALANZA.COM

Wednesday, August 20, 2008          Trial Day 37, morning session

Exhibit 52 - Page 365

8135

1    were going.  We knew that Mr. Meyer's methodology was wrong and

2    that if Mr. Larian was caught unaware and answered candidly, he

3    would confirm it.  And sure enough, that's exactly what

4    happened.

5            He testified that in most years since 2000, MGA

6    devoted 30 to 50 percent of its efforts -- remember, we're

7    talking about salaries here; most of these GNA costs are

8    salaries -- to nonBratz products; and, in fact, some years up

9    to 60 to 70 percent.  Mr. Meyer's assumptions were directly

10   contradicted by Mr. Larian's testimony.  And Mr. Wagner's

11   analysis, as it turned out, was very close to Mr. Larian's

12   estimate.

13           You'll recall that Mr. Wagner ran the numbers.  And

14   as he told you, Mr. Meyer understated the profits of Bratz by

15   $200 million under his analysis and understated them by

16   $177 million under Mr. Larian's estimate.  So when you are

17   trying to decide which numbers to use, remember that

18   Mr. Larian's own testimony supports Mattel's approach to the

19   indication of these general and administrative expenses.

20           Mattel is also entitled to prejudgment interest on

21   the profits received from Bratz, both as to MGA and Mr. Larian.

22   The Court has instructed you on this.  So to recap the interest

23   calculation:  MGA's profits from Bratz were $777.9 million.

24   The prejudgment interest, at 7 percent on that, is

25   $226.2 million.  Mattel is also entitled to prejudgment

Wednesday, August 20, 2008              Trial Day 37, morning session

Exhibit 52 - Page 366

8136

```
 1   interest on the amount that Mr. Larian took home.  And that
 2   interest is $93.5 million.  So the total damages that Mattel is
 3   entitled to on the breach of fiduciary duty and other claims,
 4   that wrongdoing that you already found in the first phase, is
 5   $1,004,100,000 as against MGA and $789.5 million against
 6   Mr. Larian.
 7           And I want to take a moment to address a question
 8   that may have occurred to some of you.  Included in MGA's
 9   $777.9 million in profits is money that went to Isaac Larian.
10   You might be concerned that Mattel is trying to double-count by
11   asking for it to be awarded against both Mr. Larian and MGA.
12           Rest assured, as the Court has already indicated, the
13   Court will not let that happen.  Mattel does not seek to
14   recover twice, and Mattel will not be allowed to recover twice.
15   But Mattel is entitled to an accurate judgment against both MGA
16   and Mr. Larian.  The issue of collection, which defendant pays
17   which or how much, is something that you don't need to be
18   concerned about in arriving at your verdict.
19           Everything I've talked to you so far about relates to
20   Mattel's damages on the breach of fiduciary duty and the other
21   wrongdoing that you have already found.  I'm going to turn now
22   to the copyright damages and the copyright issues, which raise
23   some slightly different damages issues.
24           These are the damages that Mattel is seeking because
25   of Mr. Larian and MGA's infringements of Mattel's copyright in
```

Wednesday, August 20, 2008                    Trial Day 37, morning session

Exhibit 52 - Page 367

1    dolls were launched in October 2000, long before the dolls were

2    ever on the market, when only drawings existed.

3            And in the first phase of this trial, Paula Garcia

4    told you that MGA's intention, the exercise, was to create a

5    3-D version of those 2-D drawings.  Do you remember what

6    Ms. Garcia told MGA's branding expert?  She told him that his

7    ability to create this amazing trend was very impressive, that

8    he started the Bratz trend; it all started with his drawings.

9            Now, of course, to avoid infringement, MGA has to

10   deny that the drawings and the dolls are substantially similar

11   in their appearance.  And as they have done throughout this

12   trial, they have told you what they think they need to tell you

13   in order to keep profiting from Mattel's designs in the future,

14   because -- and this is very important -- if MGA is not found to

15   be infringing, that's exactly what they will do:  Attempt to

16   keep profiting from these designs in the future.

17           But the truth is easy to see.  And we just ask that

18   you trust your own eyes on this.  Let's look at some of the

19   dolls and drawings side by side.

20           First, this is Sasha, who Mr. Bryant had named

21   Hallidae.  On the left is Mr. Bryant's drawing from his pitch

22   to MGA.  Then the second from the left is the final fashion

23   drawing.  The third from the left is the Sasha doll presented

24   at the Hong Kong toy fair in January of 2001.  And on the far

25   right is the final Sasha doll, in packaging, as sold by MGA in

1   2001.

2        As you can see, Mr. Bryant's Sasha drawings are

3   substantially similar to the Sasha doll.  The eyes, the lips

4   the diminished nose; they are all the same, all of those

5   protectable elements that the Court identified to you.  They

6   all have the unique characteristics that were identified in

7   MGA's business plan.

8        And aside from the overall similarities, which are

9   obvious, you can even see that the untied shoelace on the right

10  shoe is the same on the drawing and on the doll; the faces are

11  very similar; the proportions are almost identical.  If you

12  look at the fashions on this work, they are identical to the

13  fashions on the doll as sold by MGA.  MGA can tell you all they

14  want that Mr. Bryant's drawings were simply an inspiration and

15  that they didn't use them in making the dolls, but you can see,

16  trust your own eyes and what your own eyes tell you.  MGA

17  created the dolls directly from Mr. Bryant's drawings, and they

18  are very, very similar.

19       The same is true for the other dolls.  This is Cloe.

20  Next is Jade.  Finally, Yasmin, the doll that Mr. Bryant had

21  named Lupe.  And you can see that these dolls even have the

22  mole on the eye that Mr. Bryant had drawn on Yasmin's eye.

23       Let's take a closer look at the heads.

24       Mr. Bryant's drawings of Cloe's head are

25  substantially similar to the Cloe doll head.  The details of

Wednesday, August 20, 2008            Trial Day 37, morning session

Exhibit 52 - Page 369

1    entitled to deduct those general and administrative expenses

2    from its revenues for purposes of calculating copyright

3    damages.   The Court instructed you on this.

4         If you find that MGA's infringement was not willful,

5    then the profits number you should use is this $777.9 million.

6    But if you find that MGA willfully infringed, then those

7    general and administrative expenses are not deducted, and the

8    number you should use is $1,121,300,000.  And here on the

9    screen, we have put both of those numbers.

10        With regard to Mr. Larian, it doesn't matter whether

11   you find willful infringement, because he doesn't have

12   overhead; he doesn't have those general and administrative

13   expenses.

14        The measure of damages is the value of Mr. Larian's

15   benefits received from Bratz, his distributions and the

16   Bratz-related value of his interest in the company.

17        And remember that we gave Mr. Larian the benefit of

18   the doubt and calculated that value based upon those tens of

19   thousands of documents, late-produced financial documents, that

20   we received after your verdict.

21        So, as to Mr. Larian, the copyright damages are

22   $696 million.

23        **THE COURT:**  Mr. Quinn, I'm sorry to interrupt you,

24   but one of the jurors has indicated a need for a quick break;

25   so we're going to take a brief break here.

```
1

2                           CERTIFICATE

3

4    I hereby certify that pursuant to section 753, title 28, united
     states code, the foregoing is a true and correct transcript of
5    the stenographically recorded proceedings held in the
     above-entitled matter and that the transcript page format is in
6    conformance with the regulations of the judicial conference of
     the united states.
7

8

9    THERESA A. LANZA, RPR, CSR                    8-21-08
     Official COURT Reporter                       Date
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Wednesday, August 20, 2008          Trial Day 37, morning session

Exhibit 52 - Page 371

1          UNITED STATES DISTRICT COURT

2          CENTRAL DISTRICT OF CALIFORNIA

3                    ---

4     **HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING**

5                    ---

6    MATTEL, INC.,                 :   PAGES 8285 - 8298
                                    :
7           PLAINTIFF,             :
                                    :
8       VS.                        :   NO. ED CV04-09049-SGL
                                    :   [CONSOLIDATED WITH
9    MGA ENTERTAINMENT, INC.,      :   CV04-9059 & CV05-2727]
     ET AL.,                       :
10                                  :
            DEFENDANTS.            :
11   _____:

12

13

14

15          REPORTER'S TRANSCRIPT OF PROCEEDINGS

16               RIVERSIDE, CALIFORNIA

17            FRIDAY, AUGUST 22, 2008

18           JURY DELIBERATIONS - DAY 3

19

20

21

22                            MARK SCHWEITZER, CSR, RPR, CRR
                              OFFICIAL COURT REPORTER
23                            UNITED STATES DISTRICT COURT
                              181-H ROYBAL FEDERAL BUILDING
24                            255 EAST TEMPLE STREET
                              LOS ANGELES, CALIFORNIA 90012
25                            (213) 663-3494

**CERTIFIED COPY**

Exhibit 52 - Page 372

1     **Riverside, California; Friday, August 22, 2008**

2                        **3:06 P.M.**

3          THE COURT:  Good afternoon, Counsel.  The Court has

4     received the following note.  Note No. 4 from the jury in

5     Mattel versus MGA.  It's a two-part question.  The first

6     question reads as follows:  "Can we find that the first

7     generation dolls violate the copyright of Mattel but that

8     subsequent generations of dolls do not violate the

9     copyright?"

10          The second question, which I'll preface by saying

11    is not understandable or understood by the Court, reads as

12    follows:  "Our dilemma, colon, appropriation of first

13    generation, $4 million profit."

14          Mr. Holmes will provide each of you a copy of this

15    note.

16          Counsel?  Just so you know, my thoughts start off

17    the answer to the first question is easy enough.  It's simply

18    a yes.  The second one I'd be inclined to indicate that the

19    court does not understand what -- it's not even clear it is a

20    question, I guess, because there's no question mark.  It's

21    just a statement.

22          MR. ROTH:  Okay.  Agreed, your Honor.  I believe

23    that the answer to the first question is yes.  I think the

24    second question may have resulted from the nature of our

25    damages presentation where we offered a -- a chart that had a

Exhibit 52 - Page 373

```
 1  number of columns.
 2         And that chart did not offer up apportionment
 3  percentage for the first generation of dolls.  And that may
 4  be where the jury is at.
 5         THE COURT:  And you think that instead of the word
 6  "appropriation," that they meant "apportionment"?
 7         MR. ROTH:  That's what I'm assuming, obviously
 8  without knowing.
 9         THE COURT:  Okay.  What about the Court's proposal,
10  that I answer the first question yes, and as to the second
11  question, the Court does not understand the question.
12         MR. ROTH:  Perhaps we could ask if they meant
13  apportionment.
14         THE COURT:  But even if they meant apportionment, I
15  still don't understand the question.  Let's say we substitute
16  the word apportionment for appropriation.  What I have is
17  two, our dilemma, colon, apportionment of first generation,
18  $4 million profit.  What does that mean?
19         MR. ROTH:  Granted, your Honor, it doesn't appear
20  to be a question as opposed to a statement of a situation.
21  Again, our view would be that -- our assumption is that they
22  are talking about whether or not the apportionment concept
23  applies to the first generation.  That may go back to our
24  damages presentation, which did not offer an apportionment
25  percentage for that.
```

Exhibit 52 - Page 374

1    going to say?

2              MR. PRICE:  No, your Honor.

3              THE COURT:  All right.  That will be what the Court

4    will write, then.  Carefully review the instructions provided

5    by the Court -- carefully review and consider the applicable

6    instructions provided by the Court.

7              Very well.  I know this is an anxious time for

8    everybody.  Try to have as good a weekend as you can.  And

9    I'll see you here Tuesday.  The jury will resume

10   deliberations at 9:00 A.M.  See you then.  Take care,

11   Counsel.

12

13              (Proceedings concluded at 4:45 P.M.)

14

15                   C E R T I F I C A T E

16

17         I hereby certify that pursuant to Title 28,

18   Section 753 United States Code, the foregoing is a true and

19   correct transcript of the stenographically reported

20   proceedings in the above matter.

21         Certified on Friday, August 22, 2008.

22

23                        _____

24                        MARK SCHWEITZER, CSR, RPR, CRR
                           Official Court Reporter
25                         License No. 10514

Exhibit 52 - Page 375

# Exhibit 53

8285

```
 1              UNITED STATES DISTRICT COURT

 2             CENTRAL DISTRICT OF CALIFORNIA

 3                        ---

 4       HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

 5                        ---

 6   MATTEL, INC.,              :   PAGES 8285 - 8298
                                :
 7            PLAINTIFF,        :
                                :
 8       VS.                    :   NO. ED CV04-09049-SGL
                                :   [CONSOLIDATED WITH
 9   MGA ENTERTAINMENT, INC.,   :   CV04-9059 & CV05-2727]
     ET AL.,                    :
10                              :
             DEFENDANTS.        :
11   _____:

12

13

14

15          REPORTER'S TRANSCRIPT OF PROCEEDINGS

16                 RIVERSIDE, CALIFORNIA

17              FRIDAY, AUGUST 22, 2008

18             JURY DELIBERATIONS - DAY 3

19

20

21

22                              MARK SCHWEITZER, CSR, RPR, CRR
                                OFFICIAL COURT REPORTER
23                              UNITED STATES DISTRICT COURT
                                181-H ROYBAL FEDERAL BUILDING
24                              255 EAST TEMPLE STREET
                                LOS ANGELES, CALIFORNIA 90012
25                              (213) 663-3494
```

**CERTIFIED COPY**

Exhibit 53 - Page 376

1          **Riverside, California; Friday, August 22, 2008**

2                              **3:06 P.M.**

3          THE COURT:  Good afternoon, Counsel.  The Court has

4   received the following note.  Note No. 4 from the jury in

5   Mattel versus MGA.  It's a two-part question.  The first

6   question reads as follows:  "Can we find that the first

7   generation dolls violate the copyright of Mattel but that

8   subsequent generations of dolls do not violate the

9   copyright?"

10         The second question, which I'll preface by saying

11  is not understandable or understood by the Court, reads as

12  follows:  "Our dilemma, colon, appropriation of first

13  generation, $4 million profit."

14         Mr. Holmes will provide each of you a copy of this

15  note.

16         Counsel?  Just so you know, my thoughts start off

17  the answer to the first question is easy enough.  It's simply

18  a yes.  The second one I'd be inclined to indicate that the

19  court does not understand what -- it's not even clear it is a

20  question, I guess, because there's no question mark.  It's

21  just a statement.

22         MR. ROTH:  Okay.  Agreed, your Honor.  I believe

23  that the answer to the first question is yes.  I think the

24  second question may have resulted from the nature of our

25  damages presentation where we offered a -- a chart that had a

Exhibit 53 - Page 377

8290

```
 1            THE COURT:  So what would you suggest the Court do?
 2   If you disagree, I need some clear answers here.  Do you
 3   disagree with the Court's approach to say the Court does not
 4   understand your second question, and if so, what alternative
 5   language would you propose me sending to the jury?
 6            MR. ROTH:  I disagree with that and wonder if the
 7   Court respectfully would ask if there's a question regarding
 8   apportionment.  Are you -- the question could be is the jury
 9   wondering whether or not apportionment is appropriate for the
10   first generation of dolls.
11            THE COURT:  Okay.  Mr. Price?
12            MR. PRICE:  I think the answer to the first
13   question is yes, obviously.  The second question, I don't
14   think we should be trying to guess or speculate as to what
15   they are getting at.  I think the Court should say we
16   don't -- I don't understand, we don't understand the second
17   question, if indeed it's a question.  Or it might be just
18   saying that's why we're asking the first question.
19   Respectfully.
20            THE COURT:  I do think that that is -- that was the
21   Court's initial inclination, and I think that's the better
22   way to go.  First response, number one, I'm going to write
23   yes.
24            Number two, I'm going to say I do not understand
25   the question.
```

Exhibit 53 - Page 378

8298

1    going to say?

2              MR. PRICE:  No, your Honor.

3              THE COURT:  All right.  That will be what the Court

4    will write, then.  Carefully review the instructions provided

5    by the Court -- carefully review and consider the applicable

6    instructions provided by the Court.

7              Very well.  I know this is an anxious time for

8    everybody.  Try to have as good a weekend as you can.  And

9    I'll see you here Tuesday.  The jury will resume

10   deliberations at 9:00 A.M.  See you then.  Take care,

11   Counsel.

12

13             (Proceedings concluded at 4:45 P.M.)

14

15                   C E R T I F I C A T E

16

17             I hereby certify that pursuant to Title 28,

18   Section 753 United States Code, the foregoing is a true and

19   correct transcript of the stenographically reported

20   proceedings in the above matter.

21             Certified on Friday, August 22, 2008.

22

23

24   _____
     MARK SCHWEITZER, CSR, RPR, CRR
     Official Court Reporter
25   License No. 10514

Exhibit 53 - Page 379

# Exhibit 54

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| | Consolidated with |
| Plaintiff, | Case Nos. CV 04-09059 & CV 05-2727 |
| vs. | [PROPOSED] ORDER GRANTING |
| | MATTEL, INC.'S MOTION FOR |
| MATTEL, INC., a Delaware corporation, | PERMANENT INJUNCTION |
| Defendant. | |
| AND CONSOLIDATED ACTIONS | |

ORDER

Exhibit 54 - Page 380

Having considered Mattel, Inc.'s Motion for Permanent Injunction (the "Motion"), the opposition thereto, and all other papers, evidence and arguments submitted in connection therewith, as well as the evidence admitted at trial and the jury's verdicts in the Phase 1 trial, the Court hereby GRANTS Mattel's Motion against MGA Entertainment Inc. ("MGA"), MGA Entertainment (HK) Ltd. ("MGA Hong Kong"), and Isaac Larian ("Larian") and Carter Bryant ("Bryant") (MGA, MGA Hong Kong, and Larian and Bryant are, collectively, "Defendants"), and hereby ORDERS as follows:

1.      MGA, MGA Hong Kong, and Larian, and Bryant, along with their respective officers, directors, principals, agents, representatives, servants, employees, affiliates, successors or assigns, and any person or entity acting on their behalf or in concert or participation with them, are hereby PERMANENTLY ENJOINED from manufacturing, procuring the manufacture of, making, producing, reproducing, copying, distributing, transferring, displaying, marketing, advertising, shipping, importing, exporting, licensing, offering to license, selling or offering to sell:

        (a)      aAny doll, product or other item that embodies or depicts in whole or in part, or incorporates or uses in any manner, the head and/or body sculpt shown in Exhibit 1 (sometimes known as the "core Bratz fashion doll production sculpt"), which is incorporated herein by this reference;.

        (b)      aAny doll, product or other item that embodies or depicts in whole or in part, or incorporates or uses in any manner, the head and/or body sculpt shown in Exhibit 2 (sometimes known as the "Bratz Movie sculpt"), which is incorporated herein by this reference;.

Exhibit 54 - Page 381

(c)      ~~a~~Any doll shown in Exhibits 3 to 4, inclusive, which are incorporated herein by

this reference~~:~~, except Cloe's younger sister depicted at Exhibit 3, page 277; the

younger version of Yasmin depicted at Exhibit 3, page 278; and the younger

Alicia depicted at Exhibit 4, page 379, if those dolls are packaged separately from

a doll that includes a doll incorporating the core Bratz fashion doll production

sculpt or Bratz Movie sculpt (Exhibits 1 and 2).

(d)      ~~any product~~Any doll or portion of a doll shown in Exhibits 5 to 6, inclusive,

which are incorporated herein by this reference~~:~~, except the dolls depicted at

Exhibit 5, pages 551 through 555, inclusive, and the dolls depicted at Exhibit 6,

pages 556, 557, 558, and 565.

(e)      ~~a~~Any product, packaging or other item that embodies or depicts in whole or in

part, or incorporates or uses in any manner, the artwork shown on the packaging

set forth in Exhibit 7, which is incorporated herein by this reference.

(f)      ~~a~~Any doll, product, packaging or other item that embodies or depicts in whole or

in part, or incorporates or uses in any manner, any of the Jade, Cloe, Yasmin and

Sasha Bratz characters, including without limitation the items shown in Exhibits 3

and 5, which are incorporated herein by this reference~~:~~.

(g)      ~~a~~Any marketing or advertising materials that embody or depict in whole or in

part, or incorporate or use in any manner, any of the dolls, products, items or

other matter described in paragraphs (a) through (f) above, including without

limitation the marketing or advertising materials shown in Exhibits 8 (screen

captures from television commercials) to 9 (print advertisements depicting any

dolls incorporating the core Bratz fashion doll production sculpt or Bratz Movie

Exhibit 54 - Page 382

Case 2:04-cv-09049-SGL-RNB Document 4316~4443 Filed 0912/3003/2008 Page  4 of 13

sculpt (Exhibits 1 and 2), inclusive, which are incorporated herein by this

reference;.

(h) ~~any doll that counterfeits, copies, is substantially similar to or otherwise utilizes the combination of features of Mattel's copyrighted designs, specifically, (i) oversized eyes; (ii) diminutive nose; (iii) oversized or pouty lips; (iv) head that is oversized in proportion to body; and (iv) feet and/or shoes that are oversized in proportion to body.~~

(h) ~~(i) any~~Any doll, product, packaging, advertising or other item or materials that counterfeits, copies or is substantially similar to Mattel's copyright protected head and/or body sculpt shown in Exhibit 10, which is incorporated herein by this reference, including without limitation the Bratz fashion dolls known as Cloe, Yasmin, Sasha, Jade, Ciara, Dana, Diona, Felicia, Fianna, Katia, Kiana, Krysta, Kumi, Lana, Leah, Lela, Liliana, Lilee, Lina, Maribel, May Lin, Meygan, Nevra, Nevaeh, Nona, Nora, Oriana, Peyton, Phoebe, Rina, Roxxi, Sharidan, Sierrna, Sorya, Sunya, Tess, Tiana, Trinity, Vinessa, and Valentina, and any and all other dolls employing a sculpt which is substantially similar to Exhibit ~~10;~~10.

(i) ~~(j) any~~Any doll, product, packaging, advertising or other item or materials that embodies or depicts in whole or in part, or incorporates or uses in any manner, any of the Jade, Cloe, Yasmin and Sasha Bratz characters depicted or described in Exhibit 11, which is incorporated herein by this reference; and

(j) ~~(k) any~~Any doll, product, packaging, advertising or other item or materials that counterfeit, copy or are substantially similar to Mattel's Bratz-related copyrighted

Exhibit 54 - Page 383

Case 2:04-cv-09049-SGL-RNB Document ~~4316~~4443 Filed ~~09~~12/~~30~~03/2008 Page  5 of 13

works, including without limitation such works in Exhibits 11 and 12, inclusive, which are incorporated herein by this reference.

2.     MGA, MGA Hong Kong, and Larian ~~, and Bryant~~, along with their respective officers, directors, principals, agents, representatives, servants, employees, affiliates, successors or assigns, and any person or entity acting on their behalf or in concert or participation with them, are further hereby PERMANENTLY ENJOINED from engaging in any of the following acts:

(a)     Copying, imitating, selling, offering to sell, marketing, distributing, importing, displaying or making any use of the copyrighted works shown in Exhibits 10 to 12, inclusive, which works are owned by Mattel;

(b)     Engaging in any and all further acts of infringement of the copyrighted works shown in Exhibits 10 to 12, inclusive, which works are owned by Mattel;

(c)     Asserting any ownership of rights or any right, title or interest in the copyrighted works shown in Exhibits 10 to 12, inclusive, which works are owned by Mattel;

(d)     Transferring, disposing of, destroying, spoliating or secreting any documents, records, recordings or materials, whether in electronic or non-electronic form, that evidence, relate to or pertain to any aspect of the dolls, products, packaging, items or other materials referred to in paragraphs 1(a) through 1(k) above, inclusive, including without limitation any and all agreements, contracts, correspondence, communications, invoices, purchase orders, sales orders, manufacturing records, import or export records, sales records, ledgers, inventory records and shipping records relating thereto;

Exhibit 54 - Page 384

(e) ~~t~~Transferring, disposing of, destroying, spoliating or secreting any documents, records, recordings or material, whether in electronic or non-electronic form, that in any manner evidence, relate to or pertain to any products, services or activities using or displaying any simulation, counterfeit, reproduction or copy of, or are derived from, Mattel's copyrighted works shown in Exhibits 10 to 12, inclusive, which are incorporated herein by this reference~~:~~.

(f) ~~t~~Transferring, disposing of, destroying, spoliating, secreting or exporting any products, product packaging, labels, signs, prints, dies, wrappers, receptacles, advertisements or any other tangible items (including without limitation computer files) that in any manner utilize, contain, evidence, reproduce, display, or relate to any simulation, counterfeit, reproduction or copy of, or are derived from, (i) the dolls, products, packaging, items or other materials referred to in paragraphs 1(a) through 1(k) above, inclusive, or (ii) Mattel's copyrighted works shown in Exhibits 10 to 12, inclusive, which are incorporated herein by this reference~~:~~.

(g) ~~t~~Transferring, disposing of, destroying, spoliating, secreting or exporting any plates, molds, matrices, and other means of making or manufacturing (i) the dolls, products, packaging, items or other materials referred to in paragraphs 1(a) through 1(k) above, inclusive, or (ii) any reproduction, counterfeit, copy, substantially similar likeness, or derivative of Mattel's copyrighted works shown in Exhibits 10 to 12, inclusive~~:~~.

(h) ~~a~~Assisting, aiding or abetting any other entity or person in engaging in or performing any of the activities referred to in paragraphs 1(a) through 1(k), inclusive, and/or in paragraphs 2(a) through 2(h), inclusive.

Exhibit 54 - Page 385

3.   At Defendants' expense, Defendants shall deliver to Mattel's counsel for impoundment, at such location in the Central District of California as Mattel's counsel may direct, all dolls, products, product packaging, labels, signs, prints, dies, wrappers, receptacles and advertisements, in the direct or indirect possession, custody or control of Defendants, their officers, directors, principals, agents, servants, employees, successors or assigns, or any person or entity acting on their behalf or in concert or participation with them, that are referred to in paragraphs 1(a) through 1(k), inclusive, and/or in paragraphs 2(a) through 2(h), inclusive, together with all plates, molds, matrices and other means of making the same. Mattel's counsel is hereby appointed substitute custodian for all such items.

4.   Defendants are hereby ORDERED to procure the return, and to withdraw and recall, from any and all channels of trade and distribution, including without limitation from retail shelves and from on-line retailers, all of the dolls and doll products that are referred to in paragraphs 1(a) through 1(k), inclusive, and/or in paragraphs 2(a) through 2(h), inclusive. As to each entity or person returning such dolls and doll products, Defendants shall refund all monies paid by each entity or person in connection with such dolls and doll products and shall reimburse each such entity or person for all associated shipping charges.

5.   Defendants shall hand serve upon Mattel's counsel a declaration, made under oath, that sets forth fully and completely the following information: (a) the identity of each and every doll, product, package or other item manufactured, marketed, displayed, distributed, imported, exported, sold or offered for sale by or for Defendants that are referred to in paragraphs 1(a) through 1(k), inclusive, and/or in paragraphs 2(a) through

Exhibit 54 - Page 386

2(h), inclusive; (b) for each such doll, product, package or other item, the number of units manufactured, marketed, displayed, distributed, shipped, imported, exported, sold or offered for sale by or for Defendants; (c) for each unit of each such doll, product, package or other item, the purchaser, transferee or recipient of each such unit(s), the quantities acquired by such purchaser, transferee or recipient and complete contact information (including limitation the address, telephone number, fax number and email address where known) for each such purchaser, transferee or recipient; (d) for each unit of such doll, product, package or other item, the current or last known location of each such unit, including without limitation the location of all such dolls, products, package or other items in Defendant's inventory; and (v) for each person or entity to whom or which Defendants have promoted, advertised, marketed or offered to sell any doll, product, package or other item that is the subject of this Order, the identity of, and complete contact information for (including limitation the address, telephone number, fax number and email address where known), each such person or entity.

6.  At Defendants' expense, Defendants shall make written contact (either through fax or electronic mail) with (i) each retailer, distributor, wholesaler, importer, exporter, customer, licensee or any other person and entity to or through whom Defendants have shipped, transferred, imported, exported or sold any doll, product or other item that is the subject of this Order; and (ii) each retailer, distributor, wholesaler, licensee, potential licensee, customer, potential customer or any other person and entity who Defendants have contacted (whether by mail, electronic mail, orally or otherwise) within the past ninety (90) days in marketing, promoting or advertising any doll, product or other item that is the subject of this Order, and shall provide each such person and entity with a copy

Exhibit 54 - Page 387

Case 2:04-cv-09049-SGL-RNB Document 4316~4443 Filed 0912/3003/2008 Page 9 of 13

of this Order and with a verbatim copy of the following notice, in legible and

conspicuous print, in its entirety (hereinafter, the "Notice"):

<u>NOTICE PUBLISHED PURSUANT TO ORDER OF THE UNITED STATES DISTRICT
COURT</u>

YOU ARE HEREBY ADVISED as follows:

Recently you may have bought, seen, or been contacted regarding, the sale of
Bratz dolls or other Bratz products.

Pursuant to the rulings of the United States District Court, Mattel is the owner of
Bratz-related copyrights that are infringed by Bratz dolls, products and packaging
manufactured by or for MGA.

The Court has ordered MGA to immediately cease any further manufacture, sale,
promotion, shipment or distribution of Bratz dolls, products and packaging.

In addition, the Court has ordered that Bratz dolls must be returned immediately
to the following address: MGA Entertainment, Inc., Attn: Customer Service,
163000 Roscoe Blvd., Suite 150, Van Nuys, CA 91406.

MGA will refund to you all monies paid by you for these dolls and reimburse you
for all associated shipping charges.

7.    At Defendants' expense, Defendants shall post in legible and conspicuous print a

verbatim copy of the entire Notice set forth in Paragraph 6, above, upon the home page of

MGA's web site at www.mgae.com beginning within twenty-four hours of receipt of

notice of this Order and continuing for a period of no less than one hundred and twenty

(120) days.

8.    Defendants, and any person or entity acting on their behalf or in concert or participation

with Defendants, shall fully comply with Paragraphs 1 and 2 of this Order immediately,

shall fully comply with Paragraph 6 of this Order within two (2) calendar days of the date

of this Order, shall fully comply with Paragraph 5 of this Order within seven (7) calendar

days of the date of this Order and shall fully comply with Paragraphs 3 and 4 of this

Exhibit 54 - Page 388

Order within thirty (30) days of this Order. In the event that any additional doll, product or item that is the subject of this Order subsequently is delivered to or comes within the direct or indirect possession, custody or control of Defendants, Defendants shall deliver such additional doll, product or item to Mattel's counsel within two (2) calendar days in accordance with the terms of Paragraph 3, above.

9.      Within forty (40) calendar days of the date of this Order, Defendants shall file with the Court, and personally serve on counsel for Mattel, a report in writing under oath setting forth the actions taken to comply with the terms herein pursuant to 15 U.S.C. § 1116(a). Such Report shall have appended to it complete, true and accurate copies of each communication ordered to be sent pursuant to Paragraph 6 of this Order.

10.     Pursuant to Federal Rule of Civil Procedure 53, the Court hereby appoints a special master to supervise implementation of the requirements of this Order (the "Special Master"). The parties shall confer on an agreed upon designee to serve as Special Master. Within five (5) calendar days of the date of this Order, the parties shall file either (1) a joint document setting forth their agreed selection of a Special Master and a certification by the selected designee that he or she is willing to serve as Special Master, or (2) if the parties cannot agree on a selection, Mattel on the one hand, and Defendants on the other hand, may each file a list of proposed designees, from which the Court will select the Special Master.

11.     Any and all disputes arising out of this Order and/or motions or applications seeking to enforce the terms of this Order shall be presented to the Special Master for resolution in the first instance, once the Special Master is appointed. The Special Master shall have the authority to set the time, place and manner of hearings and other proceedings he or she

Exhibit 54 - Page 389

will conduct; to preside over hearings, whether telephonic or in person; to take evidence in connection with disputes before the Special Master; to make inspections in connection with the requirements of this Order, including inspections of Defendants' facilities and warehouses; to issue orders resolving motions, applications and matters arising out of this Order and/or seeking to enforce the terms of this Order; to issue orders awarding non-contempt sanctions, including, without limitation, the award of attorney's fees; and to issue reports and recommendations on matters for which the Special Master lacks jurisdiction to issue an order, including, without limitation, reports and recommendations regarding contempt sanctions. In addition to any other filing procedures the Special Master may permit, the Special Master shall permit the filing of ex parte applications to enforce the terms of this Order, which must be heard and adjudicated within ten (10) calendar days of filing. A party may bring an ex parte application for relief pursuant to this provision only upon certifying, as an officer of the Court, that such expedited adjudication is required and could not be avoided in due course. The parties shall file with this Court, contemporaneously, the original of all submissions made to the Special Master such that the Court's Docket shall be complete and include all pertinent submissions. Third parties shall be bound by the Special Master's orders to the same extent as Orders of this Court.

12.   The Special Master's orders, reports and recommendations shall be treated as rulings made by a Magistrate Judge of this Court and may be reviewed in the same manner and pursuant to the same procedures as this Court reviews such orders, reports and recommendations of a Magistrate Judge. A court reporter shall transcribe all hearings and proceedings held before the Special Master. The Special Master's fees, and other costs

Exhibit 54 - Page 390

Case 2:04-cv-09049-SGL-RNB Document ~~4316~~4443 Filed ~~09~~12/~~30~~03/2008 Page 12 of 13

incurred in connection with proceedings before the Special Master, including the fees of court reporters, shall be paid one-half by Mattel, Inc. and one-half by MGA Entertainment, Inc. unless, consistent with the Federal Rules of Civil Procedure, the Special Master orders otherwise. The Special Master shall not have ex parte communications with a party or counsel.

13.   The Special Master shall be authorized to receive information designated "CONFIDENTIAL" and "CONFIDENTIAL--ATTORNEY'S EYES ONLY" pursuant to the protective order dated January 4, 2005.

14.   This Court shall have jurisdiction to interpret and enforce the terms of this Permanent Injunction and to determine any issues which may arise concerning this Permanent Injunction.

IT IS SO ORDERED.

DATED: ———————————————— December 03, 2008
————————————————————

Hon. Stephen G. Larson
United States District Judge

Exhibit 54 - Page 391

# Exhibit 55

FILED

UNITED STATES COURT OF APPEALS

JUN 10 2009

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| MATTEL, INC., a Delaware corporation, | No. 09-55673 |
| Defendant-counter-claimant - Appellee | D.C. No. 2:04-cv-09049-SGL |
| v. | Central District of California, |
| MGA ENTERTAINMENT, INC.; et al., | Los Angeles |
| Counter-defendants - Appellants, | |
| CARTER BRYANT, an individual, | |
| Plaintiff-counter-defendant, | |
| CARLOS GUSTAVO MACHADO GOMEZ, an individual; et al., | |
| Counter-defendants, | |
| ANNE WANG, | |
| Third-party-defendant, | |
| OMNI 808 INVESTORS LLC, | |
| Movant. | |

KW/MOATT

Exhibit 55 - Page 392

| | |
|---|---|
| CARTER BRYANT, an individual, | No. 09-55812 |
|   Plaintiff-counter-defendant - Appellee and | D.C. No. 2:04-cv-09049-SGL Central District of California, Los Angeles |
| MGA ENTERTAINMENT, INC.; et al., | |
|       Counter-defendants - Appellees | ORDER |
|   v. | |
| MATTEL, INC., a Delaware corporation, | |
|   Defendant-counter-claimant - Appellant, | |
| CARLOS GUSTAVO MACHADO GOMEZ, an individual; et al., | |
|      Counter-defendants. | |

Before:  KOZINSKI, Chief Judge, PAEZ and TALLMAN, Circuit Judges.

The parties' motions to exceed page limitations are granted.

The parties' motions to seal documents are granted with one exception.  The motion to seal the "Declaration of Isaac Larian in Support of Appellants' Reply" ("Larian Declaration") and "Exhibit A" thereto is denied.  The parties agree that the Larian Declaration and its exhibit no longer need to be filed under seal.

Mattel's objections to Exhibit A to the Larian Declaration, a letter from Sears Holdings, are overruled.  The court has also considered the response by Mattel and supporting Supplemental Declaration of Michael T. Zeller.

KW/MOATT                                             2                                        09-55673

Exhibit 55 - Page 393

MGA Entertainment, Inc., MGA Entertainment HK Ltd. and Isaac Larian's ("MGA's") motion for a stay pending appeal is denied. MGA has not met the prevailing standard to show a substantial likelihood of ultimate success on the merits. *See Hilton v. Braunskill*, 481 U.S. 770, 776 (1987).

MGA's unopposed motion to expedite the briefing and hearing is granted. The following briefing schedule governs these cross-appeals: MGA's principal brief is due July 10, 2009; Mattel's principal/response brief is due August 10, 2009; MGA's response/reply brief is due September 9, 2009; and Mattel's optional reply brief is due within 14 days after service of the response/reply brief. The briefs and all courtesy copies must be received by the court on or before the dates that the briefs are due. These cross-appeals will be calendared before the first available panel following the completion of briefing. The provisions of Ninth Circuit Rule 31-2.2(a) shall not apply to these cross-appeals. Any motions to extend time to file the briefs will be strongly disfavored.

Any pending motions not addressed by this order are referred to the panel that will hear the merits.

Exhibit 55 - Page 394

# Exhibit 56

**Confidential – Attorney's Eyes Only
Filed Under Seal Pursuant to
Protective Order**

Name & Address:
Annette Hurst (SB 148738)
Warrington S. Parker III (SB 148003)
ORRICK HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARTER BRYANT, an individual<br><br>PLAINTIFF(S)<br><br>v.<br><br>MATTEL, INC., a Delaware Corporation<br>DEFENDANT(S). | CASE NUMBER:<br><br>CV 04-9049 DOC (RNBx)<br><br>**NOTICE OF MANUAL FILING** |

PLEASE TAKE NOTICE:

The above-mentioned cause of action has been designated as an electronically filed case. In accordance with General Order 08-02 and Local Rule 5-4 the following document(s) or item(s) will be manually filed. **List Documents:**

1. Motions to Vacate and Clarify; Decls. of: 2. L. Falcon, 3. J. Russell, and 4. N. Pembleton ISO Motion with attached Exhibit 1; 5. Exhs. 56, 58, 59 and 62 to Decl. of A. Hurst ISO Motions; 6. [Proposed] Order; 7. MGA's Ex Parte Application for Relief.

**Document Description:**

☐   Administrative Record

☑   Exhibits

☐   Ex Parte Application for authorization of investigative, expert or other services pursuant to the Criminal Justice Act [see Local Civil Rule 79-5.4, Documents to be excluded, (h)]

☑   Other  (see Document List above)

**Reason:**

☑   Under Seal

☐   Items not conducive to e-filing (i.e., videotapes, CDROM, large graphic charts)

☐   Electronic versions are not available to filer

☐   Per Court order dated _____

☐   Manual Filing required (*reason*):

| | |
|---|---|
| October 19, 2009 | Warrington S. Parker III |
| Date | Attorney Name |
| | MGA Parties |
| | Party Represented |

Note:   File one Notice in each case, each time you manually file document(s).

# Exhibit 57

1                UNITED STATES DISTRICT COURT

2               CENTRAL DISTRICT OF CALIFORNIA

3                          - - -

4       **HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING**

5                          - - -

6    MATTEL, INC.,                  :   PAGES 6363 - 6493
                                     :
7           PLAINTIFF,              :
                                     :
8       VS.                         :   NO. ED CV04-09049-SGL
                                     :   [CONSOLIDATED WITH
9    MGA ENTERTAINMENT, INC.,       :   CV04-9059 & CV05-2727]
     ET AL.,                        :
10                                   :
            DEFENDANTS.             :
11   _____:

12

13

14

15          REPORTER'S TRANSCRIPT OF PROCEEDINGS

16              RIVERSIDE, CALIFORNIA

17            THURSDAY, AUGUST 7, 2008

18              JURY TRIAL - DAY 31

19               AFTERNOON SESSION

20

21

22   MARK SCHWEITZER, CSR, RPR, CRR
     OFFICIAL COURT REPORTER
23   UNITED STATES DISTRICT COURT
     181-H ROYBAL FEDERAL BUILDING
24   255 EAST TEMPLE STREET
     LOS ANGELES, CALIFORNIA 90012
25   (213) 663-3494

CERTIFIED COPY

Exhibit 57 - Page 499

1   **Q.**   And you made that determination sometime during the

2   first quarter of 2008, that Bratz would grow at 2 percent in

3   perpetuity; correct?

4   **A.**   Not in the current model, no, that's not correct.   I've

5   used MGA's actual internal projections of how they are going

6   to do through 2008, and they have actually projected they are

7   going to do 55 percent worse in the second half of this year

8   as they did in 2007.   And I've used that in my model.

9   **Q.**   You used that in your February model?

10   **A.**   No, I didn't have that information.

11   **Q.**   In your February model, you projected they were going to

12   grow at 2 percent in perpetuity.

13   **A.**   I did.   From 2008 forward.

14   **Q.**   Okay.   And you did that during the first quarter of

15   2008.

16   **A.**   I did.

17   **Q.**   And sometime during the second quarter of 2008, you

18   found they weren't going to be growing at 2 percent this

19   year, didn't you?

20   **A.**   No.   That's not true.

21   **Q.**   Well, what did you learn -- what's the --

22   **A.**   I learned it in the third quarter of 2008, to be

23   precise.

24   **Q.**   I stand corrected.   In the third quarter of 2008, you

25   learned that rather than growing at 2 percent a year, they

Exhibit 57 - Page 500

1          MR. NOLAN:  Thank you, your Honor.  See you in the

2    morning.

3

4               (Proceedings concluded at 5:15 P.M.)

5

6

7

8

9                    C E R T I F I C A T E

10

11

12          I hereby certify that pursuant to Title 28,

13    Section 753 United States Code, the foregoing is a true and

14    correct transcript of the stenographically reported

15    proceedings in the above matter.

16          Certified on August 7, 2008.

17

18

19    MARK SCHWEITZER, CSR, RPR, CRR
       Official Court Reporter
20     License No. 10514

21

22

23

24

25

Exhibit 57 - Page 501

# Exhibit 58

**Confidential – Attorney's Eyes Only Filed Under Seal Pursuant to Protective Order**

Name & Address:
Annette Hurst (SB 148738)
Warrington S. Parker III (SB 148003)
ORRICK HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARTER BRYANT, an individual | CASE NUMBER: |
| PLAINTIFF(S) | CV 04-9049 DOC (RNBx) |
| v. | |
| MATTEL, INC., a Delaware Corporation | **NOTICE OF MANUAL FILING** |
| DEFENDANT(S). | |

PLEASE TAKE NOTICE:

The above-mentioned cause of action has been designated as an electronically filed case. In accordance with General Order 08-02 and Local Rule 5-4 the following document(s) or item(s) will be manually filed. **List Documents:**

1. Motions to Vacate and Clarify; Decls. of: 2. L. Falcon, 3. J. Russell, and 4. N. Pembleton ISO Motion with attached Exhibit 1; 5. Exhs. 56, 58, 59 and 62 to Decl. of A. Hurst ISO Motions; 6. [Proposed] Order; 7. MGA's Ex Parte Application for Relief.

**Document Description:**

☐ Administrative Record

☑ Exhibits

☐ Ex Parte Application for authorization of investigative, expert or other services pursuant to the Criminal Justice Act [see Local Civil Rule 79-5.4, Documents to be excluded, (h)]

☑ Other  (see Document List above)

**Reason:**

☑ Under Seal

☐ Items not conducive to e-filing (i.e., videotapes, CDROM, large graphic charts)

☐ Electronic versions are not available to filer

☐ Per Court order dated _____

☐ Manual Filing required (*reason*):


October 19, 2009 _____          Warrington S. Parker III _____
Date                                      Attorney Name

                                          MGA Parties _____
                                          Party Represented

Note:   File one Notice in each case, each time you manually file document(s).

# Exhibit 59

## Confidential –
## Filed Under Seal Pursuant to
## Protective Order

Case 2:04-cv-09049-DOC-RNB   Document 6952   Filed 10/19/2009   Page 1 of 1

Name & Address:
Annette Hurst (SB 148738)
Warrington S. Parker III (SB 148003)
ORRICK HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARTER BRYANT, an individual <br><br> PLAINTIFF(S) <br><br> v. <br><br> MATTEL, INC., a Delaware Corporation <br><br> DEFENDANT(S). | CASE NUMBER: <br><br> CV 04-9049 DOC (RNBx) <br><br><br> **NOTICE OF MANUAL FILING** |

PLEASE TAKE NOTICE:

The above-mentioned cause of action has been designated as an electronically filed case. In accordance with General Order 08-02 and Local Rule 5-4 the following document(s) or item(s) will be manually filed. **List Documents:**

1. Motions to Vacate and Clarify; Decls. of: 2. L. Falcon, 3. J. Russell, and 4. N. Pembleton ISO Motion with attached Exhibit 1; 5. Exhs. 56, 58, 59 and 62 to Decl. of A. Hurst ISO Motions; 6. [Proposed] Order; 7. MGA's Ex Parte Application for Relief.

**Document Description:**

☐ Administrative Record

☑ Exhibits

☐ Ex Parte Application for authorization of investigative, expert or other services pursuant to the Criminal Justice Act [see Local Civil Rule 79-5.4, Documents to be excluded, (h)]

☑ Other (see Document List above)

**Reason:**

☑ Under Seal

☐ Items not conducive to e-filing (i.e., videotapes, CDROM, large graphic charts)

☐ Electronic versions are not available to filer

☐ Per Court order dated _____

☐ Manual Filing required (*reason*):


October 19, 2009 _____          Warrington S. Parker III _____
Date                                              Attorney Name

                                                  MGA Parties _____
                                                  Party Represented

Note:  File one Notice in each case, each time you manually file document(s).

# Exhibit 60

**David Rosenbaum**

Sent:            Thursday, September 28, 2000 4:04 PM
To:              'Victoria O'Connor'
Cc:              'Isaac Larian'
Subject:         RE: Carter Bryant

No she did not, but I will call her tomorrow afternoon to follow up.

Regards,
David S. Rosenbaum
Fischbach, Perlstein & Lieberman, LLP
1875 Century Park East, Suite 850
Los Angeles, California 90067
Tel:310-558-1956
Fax:310-558-4617
e-mail: drosenbaum@fpllaw.com

This message is intended for the use of the individual or entity to
which it is addressed and may contain information that is privileged,
confidential and exempt from disclosure under applicable law. If the
reader of this message is not the intended recipient, or the employee or
agent responsible for delivering the message to the intended recipient,
you are hereby notified that any dissemination, distribution or copying
of this communication is strictly prohibited. If you have received this
communication in error, please notify us immediately and return the
original message to us at the above address. Thank you.

-----Original Message-----
From: Victoria O'Connor [mailto:VOConnor@mgae.com]
Sent: Thursday, September 28, 2000 3:32 PM
To: David Rosenbaum
Cc: Isaac Larian
Subject: RE: Carter Bryant

Did she give you an indication on when you would receive comments?

-----Original Message-----
From: David Rosenbaum [mailto:drosenbaum@fpllaw.com]
Sent: Thursday, September 28, 2000 11:55 AM
To: Victoria O'Connor (E-mail)
Subject: Carter Bryant

PRIVILEGED AND CONFIDENTIAL
ATTORNEY - CLIENT COMMUNICATION

Victoria:

I spoke with Carter's lawyer this AM and e-mailed her a copy of the draft
agreement for her review.  I asked her specifically about the Mattel issue
and she said she has reviewed the chronology of the creation of this design

EXHIBIT 28
PAGE 393

DR 00008 R

Exhibit 60 - Page 507

and is satisfied that Carter created this outside the scope of his employment at Mattel. She says she understands the concerns here. Apparently, he conceived this product in 1998 so I recommend that your patent attorney(s) review this project as soon as possible to avoid any time limitations in the patent laws.

I will let you know her comments on the draft as soon as I receive same.

Regards,
David S. Rosenbaum
Fischbach, Perlstein & Lieberman, LLP
1875 Century Park East, Suite 850
Los Angeles, California 90067
Tel:310-556-1956
Fax:310-556-4617
e-mail: drosenbaum@fpllaw.com

This message is intended for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately and return the original message to us at the above address. Thank you.

2

EXHIBIT 28

PAGE 394



DR 00009R

Exhibit 60 - Page 508

# Exhibit 61

# EMPLOYEE CONFIDENTIAL INFORMATION AND INVENTIONS AGREEMENT

I acknowledge that Mattel, Inc. (the "Company") operates in a competitive environment and that it enhances its opportunities to succeed by establishing certain policies, including those included in this Agreement. This Agreement is designed to make clear that: (i) I will maintain the confidentiality of the Company's trade secrets; (ii) I will use those trade secrets for the exclusive benefit of the Company; (iii) inventions that I create will be owned by the Company; (iv) my prior and continuing activities separate from the Company will not conflict with the Company's development of its proprietary rights; and (v) when and if my employment with the Company terminates I will not use my prior position with the Company to the detriment of the Company. In consideration of my employment with the Company and other good and valuable consideration, I agree that:

## 1. Provisions Related to Trade Secrets

(a) I acknowledge that the Company possesses and will continue to develop and acquire valuable Proprietary Information (as defined below), including information that I may develop or discover as a result of my employment with the Company. The value of that Proprietary Information depends on it remaining confidential. The Company depends on me to maintain that confidentiality, and I accept that position of trust.

(b) As used in this Agreement, "Proprietary Information" means any information (including formula, pattern, compilation, device, method, technique or process) that derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use, and includes information on the Company, its customers, suppliers, joint ventures, licensors, licensees, distributors and other persons and entities with whom the Company does business.

(c) I will not disclose or use at any time either during or after my employment with the Company, any Proprietary Information except for the exclusive benefit of the Company as required by my duties for the Company, or as the Company expressly may consent to in writing. I will cooperate with the Company and use my best efforts to prevent the unauthorized disclosure, use or reproduction of all Proprietary Information.

(d) Upon leaving employment with the Company for any reason, I immediately will deliver to the Company all tangible, written, graphical, machine readable and other materials (including all copies) in my possession or under my control containing or disclosing Proprietary Information.

## 2. Ownership of Inventions

(a) I agree to communicate to the Company as promptly and fully as practicable all inventions (as defined below) conceived or reduced to practice by me (alone or jointly by others) at any time during my employment by the Company. I hereby assign to the Company and/or its nominees all my right, title and interest in such inventions, and all my right, title and interest in any patent, copyrights, patent applications or copyright applications based thereon. I will assist the Company and/or its nominees (without charge but at no expense to me) at any time in every proper way to obtain for it and/or their own benefit, patents and copyrights for all such inventions anywhere in the world and to enforce its and/or their rights in legal proceedings.

(b) As used in this Agreement, the term "inventions" includes, but is not limited to, all discoveries, improvements, processes, developments, designs, know-how, data computer programs and formulae, whether patentable or unpatentable.

(c) Any provision in this Agreement requiring me to assign my rights in any invention does not apply to an invention which qualifies under the provision of Section 2870 of the California Labor Code. That section provides that the requirement to assign "shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities or trade secret information except for those inventions that either (1) relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer, or (2) result from any work performed by the employee for the employer." I understand that I bear the burden of proving that an invention qualifies under Section 2870.

(d) I hereby irrevocably designate and appoint the Company and each of its duly authorized officers and agents as my agent and attorney-in-fact to act for and in my behalf and stead to execute and file any document and to do all other lawfully permitted acts to further the prosecution, issuance and enforcement of patents, copyrights and other proprietary rights with the same force and effect as if executed and delivered by me.

## 3. Conflicts with Other Activities

(a) My employment with the Company requires my undivided attention and effort. Therefore, during my employment with the Company, I will fully comply with the Company's Conflict of Interest Policy, as it may be amended from time to time. I shall not, without the Company's express written consent, engage in any employment or business other than for the Company, or invest in or assist (in any manner) any business competitive with the business or future business plans of the Company.

## 4. Miscellaneous

(a) My obligations under this Agreement may not be modified or terminated, in whole or in part, except in writing signed by a Vice-President of the Company. Any waiver by the Company of a breach of any provision of this Agreement will not operate or be construed as a waiver of any subsequent breach.

(b) Each provision of this Agreement will be treated as a separate and independent clause, and the unenforceability of any one provision will in no way impair the enforceability of any other provision. If any provision is held to be unenforceable, such provision will be construed by the appropriate judicial body by limiting or reducing it to the minimum extent necessary to make it legally enforceable.

(c) My obligation under this Agreement will survive the termination of my employment, regardless of the manner of such termination. This Agreement will inure to the benefit of and be binding upon the successors and assigns of the Company.

(d) I understand that the provisions of this Agreement are a material condition to my employment with the Company. I also understand that this Agreement is not an employment contract, and nothing in this Agreement creates any right to my continuous employment by the Company, or to my employment for any particular term.

(e) Any breach of this Agreement likely will cause irreparable harm to the Company for which money damages could not reasonably or adequately compensate the Company. Accordingly, I agree that the Company will be entitled to injunctive relief to enforce this Agreement, in addition to damages and other available remedies.

(f) This agreement will be governed by and interpreted in accordance with the laws of the State of California.

(g) This Agreement contains the complete agreement between the Company and me concerning the subject matter hereof and supersedes all other agreements and understandings. This Agreement may be executed in counterparts. This Agreement will be deemed effective as of the start of Company's employment with the Company.

**CAUTION: THIS AGREEMENT CREATES IMPORTANT OBLIGATIONS OF TRUST AND AFFECTS THE EMPLOYEE'S RIGHTS TO INVENTIONS THE EMPLOYEE MAY MAKE DURING HIS OR HER EMPLOYMENT.**

Employee Signature: _Carter W. Bryant_

Employee Name (print): CARTER H. BRYANT

Date: 01/04/99

MATTEL, INC.

By: _Teresa Newcomb_
Signature

Name of Witness (print): TERESA NEWCOMB

M 0001596

DEPOSITION EXHIBIT
25



# EMPLOYEE CONFIDENTIAL INFORMATION AND INVENTIONS AGREEMENT

I acknowledge that Mattel, Inc. (the "Company") operates in a competitive environment and that it enhances its opportunities to succeed by establishing certain policies, including those included in this Agreement. The Agreement is designed to make clear that: (i) I will maintain the confidentiality of the Company's trade secrets; (ii) I will use those trade secrets for the exclusive benefit of the Company; (iii) inventions that I create will be owned by the Company; (iv) my prior and continuing activities separate from the Company will not conflict with the Company's development of its proprietary rights; and (v) when and if my employment with the Company terminates I will not use my prior position with the Company to the detriment of the Company. In consideration of my employment with the Company and other good and valuable consideration, I agree that:

## 1. Provisions Related to Trade Secrets

(a) I acknowledge that the Company possesses and will continue to develop and acquire valuable Proprietary Information (as defined below), including information that I may develop or discover as a result of my employment with the Company. The value of that Proprietary Information depends on it remaining confidential. The Company depends on me to maintain that confidentiality, and I accept that position of trust.

(b) As used in the Agreement, "Proprietary Information" means any information (including formula, pattern, compilation, device, method, technique or process) that derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use, and includes information on the Company, its customers, suppliers, joint ventures, licensors, licensees, distributors and other persons and entities with whom the Company does business.

(c) I will not disclose or use at any time either during or after my employment with the Company, any Proprietary Information except for the exclusive benefit of the Company as required by my duties for the Company, or as the Company expressly may consent to in writing. I will cooperate with the Company and use my best efforts to prevent the unauthorized disclosure, use or reproduction of all Proprietary Information.

(d) Upon leaving employment with the Company for any reason, I immediately will deliver to the Company all tangible, written, graphical, machine readable and other materials (including all copies) in my possession or under my control containing or disclosing Proprietary Information.

## 2. Ownership of Inventions

(a) I agree to communicate to the Company as promptly and fully as practicable all inventions (as defined below) conceived or reduced to practice by me (alone or jointly by others) at any time during my employment by the Company. I hereby assign to the Company and/or its nominees all my right, title and interest in such inventions, and all my right, title and interest in any patent, copyrights, patent applications or copyright applications based thereon. I will assist the Company and/or its nominees (without charge but at no expense to me) at any time in every proper way to obtain for its and/or their own benefit, patents and copyrights for all such inventions anywhere in the world and to enforce its and/or their rights in legal proceedings.

(b) As used in this Agreement, the term "inventions" includes, but is not limited to, all discoveries, improvements, processes, developments, designs, know-how, data computer programs and formulae, whether patentable or unpatentable.

(c) Any provision in this agreement requiring me to assign my rights in any invention does not apply to an invention which qualifies under the provision of Section 2870 of the California Labor Code. That section provides that the requirement to assign "shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities or trade secret information except for those inventions that either (1) relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or (2) result from any work performed by the employee for the employer." I understand that I bear the burden of proving that an invention qualifies under Section 2870.

(d) I hereby irrevocably designate and appoint the Company and each of its duly authorized officers and agents as my agent and attorney-in-fact to act for and in my behalf and stead to execute and file any document and to do all other lawfully permitted acts to further the prosecution, issuance and enforcement of patents, copyrights and other proprietary rights with the same force and effect as if executed and delivered by me.

## 3. Conflicts with Other Activities

(a) My employment with the Company requires my undivided attention and effort. Therefore, during my employment with the Company, I will fully comply with the Company's Conflict of Interest Policy, as it may be amended from time to time. I shall not, without the Company's express written consent, engage in any employment or business other than for the Company, or invest in or assist (in any manner) any business competitive with the business or future business plans of the Company.

## 4. Miscellaneous

(a) My obligations under this Agreement may not be modified or terminated, in whole or in part, except in writing signed by a Vice-President of the Company. Any waiver by the Company of a breach of any provision of this Agreement will not operate or be construed as a waiver of any subsequent breach.

(b) Each provision of this Agreement will be treated as a separate and independent clause, and the unenforceability of any one provision will in no way impair the enforceability of any other provision. If any provision is held to be unenforceable, such provision will be construed by the appropriate judicial body by limiting or reducing it to the minimum extent necessary to make it legally enforceable.

(c) My obligation under this Agreement will survive the termination of my employment, regardless of the manner of such termination. This Agreement will insure to the benefit of and be binding upon the successors and assigns of the the Company.

(d) I understand that the provisions of this Agreement are a material condition to my employment with the Company. I also understand that this Agreement is not an employment contract, and nothing in this Agreement creates any right to my continuous employment by the Company, or to my employment for any particular term.

# Exhibit 62

## Confidential –
## Filed Under Seal Pursuant to
## Protective Order

Case 2:04-cv-09049-DOC-RNB       Document 6952       Filed 10/19/2009       Page 1 of 1

Name & Address:
Annette Hurst (SB 148738)
Warrington S. Parker III (SB 148003)
ORRICK HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARTER BRYANT, an individual | CASE NUMBER: |
| PLAINTIFF(S) | CV 04-9049 DOC (RNBx) |
| v. | |
| MATTEL, INC., a Delaware Corporation | **NOTICE OF MANUAL FILING** |
| DEFENDANT(S). | |

PLEASE TAKE NOTICE:

The above-mentioned cause of action has been designated as an electronically filed case. In accordance with General Order 08-02 and Local Rule 5-4 the following document(s) or item(s) will be manually filed. **List Documents:**

1. Motions to Vacate and Clarify; Decls. of: 2. L. Falcon, 3. J. Russell, and 4. N. Pembleton ISO Motion with attached Exhibit 1; 5. Exhs. 56, 58, 59 and 62 to Decl. of A. Hurst ISO Motions; 6. [Proposed] Order; 7. MGA's Ex Parte Application for Relief.

**Document Description:**

☐  Administrative Record

☑  Exhibits

☐  Ex Parte Application for authorization of investigative, expert or other services pursuant to the Criminal Justice Act [see Local Civil Rule 79-5.4, Documents to be excluded, (h)]

☑  Other  (see Document List above)

**Reason:**

☑  Under Seal

☐  Items not conducive to e-filing (i.e., videotapes, CDROM, large graphic charts)

☐  Electronic versions are not available to filer

☐  Per Court order dated _____

☐  Manual Filing required (*reason*):

| | |
|---|---|
| October 19, 2009 | Warrington S. Parker III |
| Date | Attorney Name |
| | MGA Parties |
| | Party Represented |

Note:   File one Notice in each case, each time you manually file document(s).