MELINDA HAAG (State Bar No. 132612)
mhaag@orrick.com
ANNETTE L. HURST (State Bar No. 148738)
ahurst@orrick.com
WARRINGTON S. PARKER III (State Bar No. 148003)
wparker@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Tel: (415) 773-5700/Fax: (415) 773-5759

WILLIAM A. MOLINSKI (State Bar No. 145186)
wmolinski@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017
Tel. (213) 629-2020/Fax: (213) 612-2499

THOMAS S. MCCONVILLE (State Bar No. 155905)
tmcconville@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
4 Park Plaza, Suite 1600
Irvine, CA 92614-2258
Tel: (949) 567-6700/Fax: (949) 567-6710

Attorneys for MGA Parties

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | Case No. CV 04-9049-DOC (RNBx) |
| Plaintiff, | Consolidated with: Case No. CV 04-9059 Case No. CV 05-2727 |
| v. | |
| MATTEL, INC., a Delaware corporation, | **[PROPOSED] ORDER TO VACATE RECALL PROVISIONS OF INJUNCTION, TO CLARIFY AND MODIFY SUCH RECALL PROVISIONS AND TO CLARIFY AND LIMIT MONITOR'S AUTHORITY AS AN ADJUDICATIVE OFFICER OF THE COURT** |
| Defendant. | |
| AND CONSOLIDATED ACTIONS | |

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

On November 9, 2009, this Court held a hearing on the Motion of Counter-Defendants MGA Entertainment, Inc., MGA Entertainment HK Ltd., and Isaac Larian (collectively "MGA Defendants" or "MGA") to Vacate Recall Provisions of Injunction, or in the Alternative to Clarify and/or Modify Such Recall Provisions and Motion to Clarify and/or Limit Monitor's Authority as an Adjudicative Officer of the Court.  After full consideration of all submissions of the parties, the evidence presented, and the argument of counsel, the Court hereby makes the following findings of fact and conclusions of law as follows:

[PROPOSED] ORDER GRANTING MOTION TO VACATE RECALL

PROVISIONS OF COPYRIGHT INJUNCTION

**I.     The Orders At Issue And Their Legal Basis**.

1.     On December 3, 2008, the District Court entered an order entitled Order Granting Mattel, Inc.'s Motion for Permanent Injunction ("Copyright Injunction").  Dkt # 4443.  As reflected in the District Court's written order of the same date, which sets out the reasons for the order, the Court granted the Copyright Injunction pursuant to the authority granted by the Copyright Act, 17 U.S.C. § 502. Dkt # 4439 at 13.  On December 3, 2008, the Court also granted Mattel a constructive trust over the worldwide BRATZ trademark portfolio of MGA Entertainment, Inc. and MGA Entertainment HK Ltd. pursuant to Mattel's state law tort claims, and prohibited the MGA Defendants from further use of those marks pursuant to section 17200 of the California Business and Professions Code (the "Constructive Trust").  Dkt # 4441

2.     The Copyright Injunction has three distinct parts.  Paragraphs 1 and 2 of the Copyright Injunction take the form of a prohibitory injunction.  They prohibit and restrain the MGA Defendants from further use of the copyrighted material identified in the Copyright Injunction.  Paragraphs 3 to 9 of the Copyright Injunction take the form of a mandatory injunction.  *See Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009).  They

- 1 -

1   affirmatively require MGA to recall certain dolls and doll products (these

2   paragraphs, when they are specifically referenced, are termed the "Copyright Recall

3   Order").  Paragraphs 10 through 13 of the Copyright Injunction provided for the

4   possibility of appointment of a Special Master to address disputes concerning the

5   Copyright Injunction.  Dkt. # 4443.

6          3.     Specifically with regard to the Copyright Recall Order, paragraphs 3 to

7   9 identify the acts required of the MGA Defendants to effectuate the recall.

8   Paragraph 3 requires the MGA Defendants to deliver the goods and means of

9   manufacture in their possession to "such location in the Central District as counsel

10  for Mattel shall direct."  Paragraph 4 of the Copyright Recall Order directs MGA

11  "to procure the return, and to withdraw and recall, from any and all channels of

12  trade and distribution, including without limitation from retail shelves and from on-

13  line retailers" and states that:  "As to each entity or person returning such dolls and

14  doll products, Defendants shall refund all monies paid by each entity or person in

15  connection with such dolls and doll products and shall reimburse each such entity

16  or person for all associated shipping charges."  Paragraph 5 of the Copyright Recall

17  Order specifies the information that the MGA Defendants are to report to counsel

18  for Mattel concerning the recall.  Paragraph 6 of the Copyright Recall Order

19  identifies the procedures by which the recall is to be conducted.  Specifically, under

20  the terms of paragraphs 4 and 6, the MGA Defendants are to 1) send out notices of

21  the injunction, 2) request a return of the products covered by the Copyright Recall

22  Order, and 3) refund monies paid for the products and to pay the cost of shipping

23  the returned products.  Finally, paragraphs 7, 8 and 9 set up a series of deadlines for

24  compliance and reporting requirements.  *See* Dkt. # 4443

25         4.     The Court found that the Copyright Injunction should issue under the

26  standards set forth in *eBay v. MercExchange*, 547 U.S. 388 (2006), which

27  articulates the standards for the issuance of an injunction.  Dkt # 4439 at 11-14.

28  The Court analyzed the propriety of ordering a recall separately and found that a

[PROPOSED] ORDER RE MTN TO VACATE RECALL
PROVISIONS OF INJUNCTION
CV 04-9049 DOC (RNBx)

1  recall was appropriate based on the "scope of infringement" and based on the fact

2  that "the injunction addresses products that directly compete with Mattel's

3  products." The Court cited *CyberMedia, Inc. v. Symantec Corp.*, 19 F. Supp. 2d

4  1070, 1079 (N.D. Cal. 1998), as the legal support for its decision to order a recall.

5  Dkt # 4439 at 14.

6       5.       Following the entry of the Copyright Injunction, the Court issued three

7  orders modifying the Copyright Injunction. On January 7, 2009, the Court stayed

8  both the Copyright Injunction and the Constructive Trust in their entirety and

9  authorized retailers and distributors "to purchase the Spring and Fall 2009 lines of

10  Bratz and Bratz-related products from MGA and MGA licensees, up to and

11  including December 31, 2009." Dkt # 4657 at 1. On April 27, 2009, the Court

12  issued an Order that lifted the stay on the Copyright Injunction. That same Order

13  also confirmed that the MGA Defendants and their licensees could continue to sell

14  Bratz products. Dkt # 5237 at 11. On May 21, 2009, the District Court issued a

15  third order concerning the sales of Bratz products. The May Order extended the

16  date through which the stay would be in effect from December 31, 2009 to January

17  21, 2010, and confirmed that the authorized sales included all Bratz products of any

18  vintage unless the Monitor made a determination to the contrary. Dkt # 5565 at 7.

19       6.       By the May 21, 2009 Order, the District Court also appointed a

20  Monitor to supervise and ensure compliance with the Constructive Trust and the

21  Copyright Injunction and to collect and escrow the net profits from the sale of Bratz

22  products covered by the constructive trust orders. Dkt # 5565 at 9-13. The District

23  Court did not appoint the Monitor pursuant to Federal Rule of Civil Procedure 53.

24  Moreover, the Court has not appointed a Special Master pursuant to Paragraphs 10

25  to 13 of the Copyright Injunction. The Monitor agrees that he has not been

26  appointed as a Special Master.

27

28

[PROPOSED] ORDER RE MTN TO VACATE RECALL
PROVISIONS OF INJUNCTION
CV 04-9049 DOC (RNBx)

**II.     There Has Been A Change In Facts And Law Justifying Modification Of The Copyright Injunction.**

7.     On July 2, 2009, the Ninth Circuit issued its decision in *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009).  In that decision, the Ninth Circuit for the first time enunciated the standard that it will apply to mandatory injunctions requiring product recalls in intellectual property cases.  Adopting the approach taken by the Third Circuit, the Ninth Circuit held in *Marlyn* that a recall order is only appropriate in this Circuit when the party seeking the recall can establish the factors necessary to obtain an ordinary prohibitory injunction—those articulated in *eBay v. MercExchange*, 547 U.S. 388 (2006)—and has prevailed with respect to three additional factors:

> (1) the willful or intentional infringement by the defendant; (2) whether the risk of confusion to the public and injury to the . . . owner  is greater than the burden of the recall to the defendant; and (3) substantial risk of danger to the public due to the defendant's infringing activity.

*Marlyn,* 571 F.3d at 880 (quoting *Gucci Am., Inc. v. Daffy's, Inc.*, 354 F.3d 228, 233 (3d Cir. 2003)).

8.     Having reviewed the record and the reasoning of the District Court when it issued the Copyright Injunction, imposed the Copyright Recall Order, and then issued the January 7, April 27, and May 21 Orders, this Court concludes that the District Court did not have the benefit of the Ninth Circuit's analysis in *Marlyn*, and did not consider the factors set forth in *Marlyn*.  While the District Court did consider the factors set forth in *eBay v. MercExchange*, 547 U.S. 388 (2006), this Court concludes that, in light of *Marlyn*, a recall cannot be ordered upon satisfaction of the *eBay* standards alone.  *Marlyn,* 571 F.3d at 880.

9.     In addition, the Court finds that, while *Marlyn* is a trademark case, its analysis applies with equal force to a recall ordered pursuant to the Copyright Act. The Supreme Court and Courts of Appeals have consistently applied the same

standards across federal intellectual property laws unless some specific statutory provision unique to the intellectual property at issue calls for a different result. *See eBay, Inc.*, 547 U.S. at 392-93; *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936 (2005); *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 439-40 (1984); *Peter Letterese and Assocs. v. World Institute of Scientology Enterps.*, 533 F.3d 1287, 1323 (11th Cir. 2008); *Christopher Phelps & Assocs. v. Galloway*, 492 F.3d 532, 543 (4th Cir. 2007); *Paulsson Geophysical Servs., Inc. v. Sigmar*, 529 F.3d 303, 312 (5th Cir. 2008); *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1137 (9th Cir. 2006); *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1212 (C.D. Cal. 2007); *Momento, Inc. v. Seccion Amarilla USA*, 2009 WL 1974798 * 3 (N.D. Cal. July 8, 2009). The Court concludes that there is no reason why the *Marlyn* standard is, or must remain, unique to trademark law.

10.     In addition to the foregoing change in law, Mattel has recently acknowledged, in the September 29, 2009 Declaration of Mr. Kilpin, ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

11.     In light of these changes in law and facts, this Court concludes that consideration of the *Marlyn* factors is now warranted, and, for the reasons given below, further concludes that Mattel has not satisfied its burden of establishing the factors necessary to justify a recall.

## III.   Mattel Has Not Met Its Burden Of Establishing The Recall Factors Set Forth In *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*

12.     The Court finds that there is no risk of danger to the public. *Marlyn*, 571 F.3d at 879 (noting that the district court on remand should consider whether "the infringing product causes a substantial risk of danger to the public"). Mattel has not claimed that there is a risk of danger to the public. The Court's independent review of the record reveals no evidence remotely suggesting that there is a risk of danger to the public. This is not a health and safety or product defect recall.

13.    With regard to willfulness, the Court notes that the jury concluded that the copyright infringement that formed the basis for the Copyright Injunction and Copyright Recall Order was not willful.  The Court recently reaffirmed this conclusion in its accounting of profits order.  Dkt # 5740 (Order re Accounting).

14.    After considering the evidence submitted by the parties, the Court also concludes that the burden and harm of the recall to the MGA Defendants far outweighs any conceivable benefit to Mattel.  The facts established by the MGA Defendants support that conclusion.  To comply with the Copyright Recall Order MGA will be required to expend ███████████████████, not including the element of lost revenues and profits to MGA and to those in MGA's chain of distribution.  The cost of the recall will be even greater were the scope of the recall expanded worldwide.  Second, the Court finds that the recall is, and will, harm MGA's relationships with its distributors and retailers who market not merely Bratz, but other non-Bratz MGA products, and who will be less willing, if willing at all, to continue to market any products from MGA.  This harm is consistent with the findings of other courts that have concluded that recalls are disruptive and cause injury to the party ordered to conduct the recall, as well as to third parties.  *Granville v. Suckafree Records, Inc*., 2006 WL 2520909 *7 (S.D. Tex. June 28, 2006) ("To recall and require destruction of the infringing . . . would cause general disruption in the marketplace and inflict burden and expense upon unknown numbers of other persons.").

15.    Additionally, as set forth more fully in paragraph 16 below, were a recall imposed, the evidence establishes that ████████████████████████ ████████████████████████████  In fact, the evidence establishes that there likely will be no Bratz products on the market for a period of time longer than that.  This harms the Bratz brand no matter who owns it, and it deprives consumers of their ability to purchase products of their choosing.

16.    In contrast, the Court finds that there is no material benefit to Mattel

- 6 -

from the recall—or no benefit significant enough to outweigh the burden and harm to the MGA Defendants.  Mattel does not currently have a Bratz product on the market.  Mattel has not affirmatively committed to having a Bratz product on the market, and has refused to produce evidence to MGA demonstrating its ability to bring Bratz product to market.  The evidence provided to this Court indicates only ███████████████████████████████████████████████████████ ███████████   ████████████████████████████████ ████████████████████████████ As established by the evidence, retailers require months to make decisions concerning which products to purchase and how much shelf space to set aside.  Even if this Court fully credits Mattel's statement that it will have a Bratz product on retail shelves ████████████████ the shelves would still sit empty of Bratz product ████████████ This will harm the value of the Bratz intellectual property, not benefit it.

   17.    Courts have uniformly concluded that when the burdens of and injuries caused by a recall, specifically those burdens and injuries set forth above, are outweighed by any benefit to the party seeking a recall, a recall is not an appropriate remedy.  *See, e.g.*, *Marlyn,* 571 F.3d  at 880; *Gucci Am., Inc.*, 354 F.3d at 234-35;; *Jack Lenor Larsen, Inc. v. Dakotah, Inc.*, 452 F. Supp. 99, 99 (S.D.N.Y. 1978); *Primavera Labs., Inc. v. Elizabeth Arden Co.*, 1993 WL 319214 *1 (S.D.N.Y. Aug. 13, 1993); *see also Perfect Fit Indus., Inc. v. Acme Quilting Co.*, 646 F.2d 800, 807 (2d Cir. 1981).  In this case, the burdens and injuries of the recall far outweigh any benefit to Mattel and a recall is not an appropriate remedy.  Accordingly, the Court hereby VACATES all recall provisions of the Copyright Injunction found in paragraphs 3-9 of the December 3, 2008 Order Granting Permanent Injunction.

[PROPOSED] ORDER GRANTING ALTERNATIVE MOTION TO
CLARIFY/MODIFY RECALL PROVISIONS[1]

**IV.    The Copyright Recall Order Requires The MGA Defendants Only To Institute Those Procedures Identified in Paragraphs 3 through 9 of the Recall Order.**

18.    On December 3, 2008, the District Court entered an order entitled Order Granting Mattel, Inc.'s Motion for Permanent Injunction ("Copyright Injunction").  Dkt # 4443.  As reflected in the District Court's written order of the same date, which sets out the reasons for the order, the Court granted the Copyright Injunction pursuant to the authority granted by the Copyright Act, 17 U.S.C. § 502.  Dkt # 4439 at 13.  On December 3, 2008, the Court also granted Mattel a constructive trust over the worldwide BRATZ trademark portfolio of MGA Entertainment, Inc. and MGA Entertainment HK Ltd. pursuant to Mattel's state law tort claims, and prohibited the MGA Defendants from further use of those marks pursuant to section 17200 of the California Business and Professions Code (the "Constructive Trust").  Dkt. # 4441

19.    The Copyright Injunction has three distinct parts.  Paragraphs 1 and 2 of the Copyright Injunction take the form of a prohibitory injunction.  They prohibit and restrain the MGA Defendants from further use of the copyrighted material identified in the Copyright Injunction.  Paragraphs 3 to 9 of the Copyright Injunction take the form of a mandatory injunction.  *See Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009).  They affirmatively require MGA to recall certain dolls and doll products (these paragraphs, when they are specifically referenced, are termed the "Copyright Recall Order").  Paragraphs 10 through 13 of the Copyright Injunction provided for the possibility of appointment of a Special Master to address disputes concerning the Copyright Injunction.  Dkt. # 4443.

---

[1] The provisions of this portion of the [Proposed] Order are drafted independently of the preceding portion.

20.     Specifically with regard to the Copyright Recall Order, paragraphs 3 to 9 identify the acts required of the MGA Defendants to effectuate the recall. Paragraph 3 requires the MGA Defendants to deliver the goods and means of manufacture in their possession to "such location in the Central District as counsel for Mattel shall direct."  Paragraph 4 of the Copyright Recall Order directs MGA "to procure the return, and to withdraw and recall, from any and all channels of trade and distribution, including without limitation from retail shelves and from on-line retailers" and states that: "As to each entity or person returning such dolls and doll products, Defendants shall refund all monies paid by each entity or person in connection with such dolls and doll products and shall reimburse each such entity or person for all associated shipping charges."  Paragraph 5 of the Copyright Recall Order specifies the information that the MGA Defendants are to report to counsel for Mattel concerning the recall.  Paragraph 6 of the Copyright Recall Order identifies the procedures by which the recall is to be conducted.  Specifically, under the terms of paragraphs 4 and 6, the MGA Defendants are to 1) send out notices of the injunction, 2) request a return of the products covered by the Copyright Recall Order, and 3) refund monies paid for the products and to pay the cost of shipping the returned products.  Finally, paragraphs 7, 8 and 9 set up a series of deadlines for compliance and reporting requirements.  *See* Dkt. # 4443

21.     The Court found that the Copyright Injunction should issue under the standards set forth in *eBay v. MercExchange*, 547 U.S. 388 (2006), which articulates the standards for the issuance of an injunction.  Dkt # 4439 at 11-14. The Court analyzed the propriety of ordering a recall separately and found that a recall was appropriate based on the "scope of infringement" and based on the fact that "the injunction addresses products that directly compete with Mattel's products."  The Court cited *CyberMedia, Inc. v. Symantec Corp.*, 19 F. Supp. 2d 1070, 1079 (N.D. Cal. 1998), as the legal support for its decision to order a recall. Dkt # 4439 at 14.

22.    Following the entry of the Copyright Injunction, the Court issued three orders modifying the Copyright Injunction.  On January 7, 2009, the Court stayed both the Copyright Injunction and the Constructive Trust in their entirety and authorized retailers and distributors "to purchase the Spring and Fall 2009 lines of Bratz and Bratz-related products from MGA and MGA licensees, up to and including December 31, 2009."  Dkt # 4657 at 1.  On April 27, 2009, the Court issued an Order that lifted the stay on the Copyright Injunction.  That same Order also confirmed that the MGA Defendants and their licensees could continue to sell Bratz products.  Dkt # 5237 at 11.  On May 21, 2009, the District Court issued a third order concerning the sales of Bratz products.  The May Order extended the date through which the stay would be in effect from December 31, 2009 to January 21, 2010, and confirmed that the authorized sales included all Bratz products of any vintage unless the Monitor made a determination to the contrary.  Dkt # 5565 at 7.

23.    The Copyright Recall Order sets forth the recall procedure to be employed.  Under the terms of paragraphs 4 and 6, the MGA Defendants are to 1) send out notices of the injunction, 2) request a return of the products covered by the Copyright Recall Order, and 3) refund monies paid for the products and to pay the cost of shipping the returned products.  The refund and reimbursement requirements are set forth in paragraph 4 and implemented in paragraph 6.

24.    In connection with the Monitor's supervision of the recall process underway by MGA, several potential issues of ambiguity in the Copyright Recall Order have arisen, and MGA sought clarification regarding those issues in advance in order to avoid assertions of contempt.  Given the Monitor's supervisory authority over MGA and his expressed concerns regarding the scope of the order, there is an adequate legal controversy regarding these issues justifying this Court's intervention to provide clarification regarding the Copyright Recall Order.

25.    The Court rejects as unfounded any interpretation of the Copyright Recall Order that would require the MGA Defendants or anyone at their direction

1  or the direction of the Monitor to "sweep" the shelves of or otherwise physically

2  obtain enjoined Bratz products.

3      26.   The Court's clarification of the Copyright Recall Order is consistent

4  with the language of the Copyright Recall Order and the cases, which do not require

5  the "sweeping" of shelves. *See Benham Jewelry Corp. v. Aron Basha Corp.*, 1997

6  WL 639037 at *19 (S.D.N.Y. Oct. 14, 1997); *Merit Diamond Corp. v. Frederick*

7  *Goldman, Inc.*, 376 F. Supp. 2d 517, 527 (S.D.N.Y. 2005); *see also Perfect Fit*

8  *Indus., Inc.*, 646 F.2d at 807.  In addition, an order to sweep the shelves may well

9  violate the law.  *Societe Civile Succession Richard Guino v. Int'l Found. for*

10  *Anticancer Drug Discovery*, 460 F. Supp. 2d 1105, 1112-13 (D. Ariz. 2006) (noting

11  that "the defendants were required to make reasonable efforts to recall" products

12  from customers but that the Copyright Act "does not permit the impounding of

13  infringing items in the hands of innocent purchasers . . .").

14      27.   Accordingly, MGA is not obligated to purchase the recalled product at

15  retail prices or otherwise directly take action to ensure its removal from the shelves.

16  The language "procure the return" set forth in paragraph 4 of the Copyright Recall

17  Order was not intended to specify any procedure other than that set forth in

18  paragraph 6 of the Order.  Compliance with paragraph 6 of the Order (as modified

19  herein) does not require sweeping the shelves.

20      28.   Accordingly, Paragraph 4 of the Copyright Injunction Order shall be

21  clarified as follows:

22          4.   Defendants are hereby ORDERED to procure the

23          return, and to withdraw and recall, from any and all

24          channels of trade and distribution, including without

25          limitation from retail shelves and from on-line retailers,

26          all of the dolls and doll products that are referred to in

27          paragraphs 1(a) through 1(k), inclusive, and/or in

28          paragraphs 2(a) through 2(h), inclusive (collectively, the

1    "Enjoined Products") by sending the written notice set
2    forth in paragraph 6 below and engaging in such follow
3    up communications as are reasonable under the
4    circumstances to facilitate the voluntary return of the
5    Enjoined Products.  As to each entity or person returning
6    such dolls and doll products, Defendants shall refund all
7    monies paid by each entity or person in connection with
8    such dolls and doll products and shall reimburse each
9    such entity or person for all associated shipping charges.
10   Defendants shall not be required to repurchase Enjoined
11   Products from or otherwise enforce the terms of this
12   Order against any third party that refuses to respond to
13   MGA correspondence or refuses to return Enjoined
14   Products to MGA.  Defendants shall only be required to
15   (i) advise any non-responders that continued sales may
16   constitute contributory infringement and subject them to
17   claims by Mattel and (ii) identify to the Monitor and
18   Mattel any entity that has refused to respond to MGA
19   correspondence or refused to return Enjoined Products to
20   MGA.
21
22   **V.    The Copyright Recall Order Does Not Require A Foreign Recall.**
23        29.    The Court also hereby clarifies the Copyright Recall Order to confirm
24   that it does not require that the recall be conducted on a worldwide basis.
25        30.    The Copyright Act does not authorize this Court to give an injunction
26   "extraterritorial reach."  *Subafilms, Ltd. v. MGM-Pathe Comm'cs Co.*, 24 F.3d
27   1088, 1095 (9th Cir. 1994) (en banc); *Danjaq LLC v. Sony Corp.*, 1998 WL 957033
28   (C.D. Cal. 1998), *aff'd*, 165 F.3d 915 (9th Cir. 1998); *CyberMedia*, 19 F. Supp. 2d

- 12 -

[PROPOSED] ORDER RE MTN TO VACATE RECALL
PROVISIONS OF INJUNCTION
CV 04-9049 DOC (RNBx)

at 1079; *see also* 4 Nimmer, Nimmer on Copyright §17.02 at 17-19 (rev. ed. 2009).

31.     That the Order does not use the words "worldwide" or "extraterritorial," particularly in contrast to the Constructive Trust Order which expressly provides that MGA must transfer trademarks obtained "anywhere in the world,"  Dkt # 4441 ¶¶ 1, 2, indicates that the Court did not intend an extraterritorial recall.  Additionally, the sole case cited by the Court in support of the Copyright Recall Order, *CyberMedia*, declined to grant such an order.

32.     Finally, the Court finds that to impose such a burden on the MGA Defendants would run afoul of the recall standards set forth in *Marlyn*.  The evidence establishes that the information necessary to effect an extraterritorial recall can only be obtained at great expense and effort, if it can be obtained at all.

33.     Accordingly, the Court hereby clarifies that Copyright Recall Order requires compliance to effectuate a recall throughout the United States.

**VI.     Modification To Timing Requirements.**

34.     Paragraphs 5 and 6 of the Copyright Recall Order might reasonably be read to require the MGA Defendants to identify, contact, and recall product from every retailer and distributor to whom they have sold Bratz products during the entire eight year history of the brand.

35.     The Court finds that such a reading is not appropriate, however, and therefore modifies the Copyright Recall Order so that Paragraphs 5 and 6 will require the MGA Defendants to identify, contact, and recall product from the entities identified in Paragraphs 5 and 6 that have purchased enjoined products from the MGA Defendants since July 1, 2008 for sale throughout the United States.

36.     Requiring notice to purchasers who purchased product solely prior to July 1, 2008 would be punitive, as it would authorize a double recovery.  Mattel has obtained a jury verdict for copyright damages covering the entire period prior to July 1, 2008.  To recall the same product in addition would be to grant two remedies directed to the same infringement.  Such a result is impermissible.

- 13 -

37.     The Court also find that the Copyright Recall Order was originally drafted with the expectation that the injunction would go into effect immediately and that retailers and distributors would receive no advance notice that they needed to return their products to MGA as quickly as possible.  In light of the year-long stay and deadline modifications, many of the deadlines in the Copyright Recall Order no longer make sense.  Accordingly, the Court adjusts the timing as follows.

38.     Accordingly, paragraph 5 to 9 of the Copyright Recall Order are clarified and modified as follows:

5.     Defendants shall hand serve upon Mattel's counsel a declaration, made under oath, that sets forth fully and completely the following information: (a) the identity of each and every doll, product, package or other item manufactured, marketed, displayed, distributed, imported, exported, sold or offered for sale since July 1, 2008 by or for Defendants that are referred to in paragraphs 1(a) through 1(k), inclusive, and/or in paragraphs 2(a) through 2(h), inclusive; (b) for each such doll, product, package or other item, the number of units manufactured, marketed, displayed, distributed, shipped, imported, exported, sold or offered for sale by or for Defendants; (c) for each unit of each such doll, product, package or other item, the purchaser, transferee or recipient of each such unit(s), the quantities acquired by such purchaser, transferee or recipient and complete contact information (including limitation the address, telephone number, fax number and email address where known) for each such purchaser, transferee or recipient; (d) for each unit of such doll, product, package or other item, the current or last known

- 14 -

1    location of each such unit, including without limitation

2    the location of all such dolls, products, package or other

3    items in Defendant's inventory; and (e) for each person or

4    entity directly contacted by Defendants to whom or which

5    Defendants have promoted, advertised, marketed or

6    offered to sell any doll, product, package or other item

7    that is the subject of this Order since July 1, 2008, the

8    identity of, and complete contact information for

9    (including limitation the address, telephone number, fax

10   number and email address where known), each such

11   person or entity.

12       6.    At Defendants' expense, Defendants shall make

13   written contact (either through fax or electronic mail) with

14   (i) each retailer, distributor, wholesaler, importer,

15   exporter, customer, licensee or any other person and

16   entity to or through whom Defendants have shipped,

17   transferred, imported, exported or sold any doll, product

18   or other item that is the subject of this Order since July 1,

19   2008; and (ii) each retailer, distributor, wholesaler,

20   licensee, potential licensee, customer, potential customer

21   or any other person and entity who Defendants have

22   contacted (whether by mail, electronic mail, orally or

23   otherwise) within the past ninety (90) days since October

24   23, 2009 in marketing, promoting or advertising any doll,

25   product or other item that is the subject of this Order, and

26   shall provide each such person and entity with a copy of

27   this Order and with a verbatim copy of the following

28   notice, in legible and conspicuous print, in its entirety

[PROPOSED] ORDER RE MTN TO VACATE RECALL
PROVISIONS OF INJUNCTION
CV 04-9049 DOC (RNBx)

1    (hereinafter, the "Notice"):

2                    NOTICE PUBLISHED PURSUANT TO

3    ORDER OF THE UNITED STATES DISTRICT COURT

4    YOU ARE HEREBY ADVISED as follows:

5    Recently you may have bought, seen, or been contacted

6    regarding, the sale of Bratz dolls or other Bratz products.

7    Pursuant to the rulings of the United States District Court,

8    Mattel is the owner of Bratz-related copyrights that are

9    infringed by Bratz dolls, products and packaging

10   manufactured by or for MGA.

11   The Court has ordered MGA to immediately that as of

12   January 21, 2010 must cease any further manufacture,

13   sale, promotion, shipment or distribution of Bratz dolls,

14   products and packaging.

15   In addition, the Court has ordered that as of January 21,

16   2010 Bratz dolls can no longer be sold to consumers and

17   must be returned immediately.  You should have been

18   contacted regarding specific procedures for returning your

19   Bratz products and seeking reimbursement.  If you have

20   any questions about returning Bratz dolls or if you have

21   not been contacted, please contact MGA at to the

22   following address: MGA Entertainment, Inc., Attn:

23   Customer Service, 163000 Roscoe Blvd., Suite 150, Van

24   Nuys, CA 91406 or by calling [1-800 number to be

25   provided] or by going to www.[MGA recall

26   website].com.

27   MGA will refund to you all monies paid by you for these

28   dolls and reimburse you for all associated shipping

- 16 -

1    charges.

2          7.      At Defendants' expense, Defendants shall post in

3    legible and conspicuous print a verbatim copy of the

4    entire Notice set forth in Paragraph 6, above, upon the

5    home page of MGA's web site at www.mgae.com

6    beginning on January 1, 2010 within twenty-four house of

7    the receipt of  notice of this Order and continuing for a

8    period of no less than one hundred and twenty (120) days.

9          8.      Defendants, and any person or entity acting on their

10   behalf or in concert or participation with Defendants,

11   shall fully comply with Paragraphs 1 and 2 of this Order

12   immediately by January 21, 2010, shall fully comply with

13   Paragraph 6 of this Order within two (2) calendar days of

14   the date of this Order by January 21, 2010, shall fully

15   comply with Paragraph 5 of this Order within seven (7)

16   twenty-one (21) calendar days of the date of this Order

17   January 21, 2010 and shall fully comply with Paragraphs

18   3 and 4 of this Order within thirty (30) sixty (60) days of

19   this Order January 21, 2010.  In the event that any

20   additional doll, product or item that is the subject of this

21   Order subsequently is delivered to or comes within the

22   direct or indirect possession, custody or control of

23   Defendants, Defendants shall deliver such additional doll,

24   product or item to Mattel's counsel within two (2)

25   fourteen (14) calendar days in accordance with the terms

26   of Paragraph 3, above.

27         9.      Within forty (40) seventy (70) calendar days of the

28   date of this Order January 21, 2010, Defendants shall file

1     with the Court, and personally serve on counsel for

2     Mattel, a report in writing under oath setting forth the

3     actions taken to comply with the terms herein pursuant to

4     15 U.S.C. § 1116(a). Such Report shall have appended to

5     it complete, true and accurate copies of each

6     communication ordered to be sent pursuant to Paragraph 6

7     of this Order.

8     [PROPOSED] ORDER GRANTING MOTION TO CLARIFY SCOPE OF

9     MONITOR'S ADJUDICATIVE AUTHORITY

10    **VII.   The Authority of the Court Monitor.[2]**

11        39.    On December 3, 2008, the District Court entered an order entitled

12   Order Granting Mattel, Inc.'s Motion for Permanent Injunction ("Copyright

13   Injunction").  Dkt # 4443.  As reflected in the District Court's written order of the

14   same date, which sets out the reasons for the order, the Court granted the Copyright

15   Injunction pursuant to the authority granted by the Copyright Act, 17 U.S.C. § 502.

16   Dkt # 4439 at 13.  On December 3, 2008, the Court also granted Mattel a

17   constructive trust over the worldwide BRATZ trademark portfolio of MGA

18   Entertainment, Inc. and MGA Entertainment HK Ltd. pursuant to Mattel's state law

19   tort claims, and prohibited the MGA Defendants from further use of those marks

20   pursuant to section 17200 of the California Business and Professions Code (the

21   "Constructive Trust").  Dkt. # 4441

22        40.    The Copyright Injunction has three distinct parts.  Paragraphs 1 and 2

23   of the Copyright Injunction take the form of a prohibitory injunction.  They prohibit

24   and restrain the MGA Defendants from further use of the copyrighted material

25   identified in the Copyright Injunction.  Paragraphs 3 to 9 of the Copyright

26   Injunction take the form of a mandatory injunction.  *See Marlyn Nutraceuticals,*

27

28   _____

[2] This portion of the Order also is drafted independently of the previous portions.

1    *Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009).  They

2    affirmatively require MGA to recall certain dolls and doll products (these

3    paragraphs, when they are specifically referenced, are termed the "Copyright Recall

4    Order").  Paragraphs 10 through 13 of the Copyright Injunction provided for the

5    possibility of appointment of a Special Master to address disputes concerning the

6    Copyright Injunction.  Dkt. # 4443.

7         41.    Specifically with regard to the Copyright Recall Order, paragraphs 3 to

8    9 identify the acts required of the MGA Defendants to effectuate the recall.

9    Paragraph 3 requires the MGA Defendants to deliver the goods and means of

10   manufacture in their possession to "such location in the Central District as counsel

11   for Mattel shall direct."  Paragraph 4 of the Copyright Recall Order directs MGA

12   "to procure the return, and to withdraw and recall, from any and all channels of

13   trade and distribution, including without limitation from retail shelves and from on-

14   line retailers" and states that: "As to each entity or person returning such dolls and

15   doll products, Defendants shall refund all monies paid by each entity or person in

16   connection with such dolls and doll products and shall reimburse each such entity

17   or person for all associated shipping charges."  Paragraph 5 of the Copyright Recall

18   Order specifies the information that the MGA Defendants are to report to counsel

19   for Mattel concerning the recall.  Paragraph 6 of the Copyright Recall Order

20   identifies the procedures by which the recall is to be conducted.  Specifically, under

21   the terms of paragraphs 4 and 6, the MGA Defendants are to 1) send out notices of

22   the injunction, 2) request a return of the products covered by the Copyright Recall

23   Order, and 3) refund monies paid for the products and to pay the cost of shipping

24   the returned products.  Finally, paragraphs 7, 8 and 9 set up a series of deadlines for

25   compliance and reporting requirements.  *See* Dkt. # 4443

26        42.    The Court found that the Copyright Injunction should issue under the

27   standards set forth in *eBay v. MercExchange*, 547 U.S. 388 (2006), which

28   articulates the standards for the issuance of an injunction.  Dkt # 4439 at 11-14.

The Court analyzed the propriety of ordering a recall separately and found that a recall was appropriate based on the "scope of infringement" and based on the fact that "the injunction addresses products that directly compete with Mattel's products." The Court cited *CyberMedia, Inc. v. Symantec Corp.*, 19 F. Supp. 2d 1070, 1079 (N.D. Cal. 1998), as the legal support for its decision to order a recall. Dkt # 4439 at 14.

43. Following the entry of the Copyright Injunction, the Court issued three orders modifying the Copyright Injunction. On January 7, 2009, the Court stayed both the Copyright Injunction and the Constructive Trust in their entirety and authorized retailers and distributors "to purchase the Spring and Fall 2009 lines of Bratz and Bratz-related products from MGA and MGA licensees, up to and including December 31, 2009." Dkt # 4657 at 1. On April 27, 2009, the Court issued an Order that lifted the stay on the Copyright Injunction. That same Order also confirmed that the MGA Defendants and their licensees could continue to sell Bratz products. Dkt # 5237 at 11. On May 21, 2009, the District Court issued a third order concerning the sales of Bratz products. The May Order extended the date through which the stay would be in effect from December 31, 2009 to January 21, 2010, and confirmed that the authorized sales included all Bratz products of any vintage unless the Monitor made a determination to the contrary. Dkt # 5565 at 7.

44. By the May 21, 2009 Order, the District Court also appointed a Monitor to supervise and ensure compliance with the Constructive Trust and the Copyright Injunction and to collect and escrow the net profits from the sale of Bratz products covered by the constructive trust orders. Dkt # 5565 at 9-13. The District Court did not appoint the Monitor pursuant to Federal Rule of Civil Procedure 53. Moreover, the Court has not appointed a Special Master pursuant to Paragraphs 10 to 13 of the Copyright Injunction. ██████████████████████████ ████████████████████████ Hurst Decl. Ex. 62, Ex. 59; Russell Decl. ¶ 4.

45. The Monitor has not been appointed as a Special Master pursuant to

1    Federal Rule of Civil Procedure 53.  As such, the Monitor does not have the
2    authority to act as a Special Master, including conducting trials or otherwise acting
3    in an adjudicative capacity.  To avoid any further confusion on this point, the Court
4    hereby strikes Paragraphs 10 to 13 of the December 3, 2008 Order Granting
5    Permanent Injunction.
6           It is so ORDERED.
7
8    Dated: _____, 2009
                                            _____
9                                           Hon. David O. Carter, United States District
                                            Court Judge
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28