# EXHIBIT 8

RECEIVED
JUL 03 2007
LEK 5:50

DALE M. CENDALI (admitted *pro hac vice*)
DIANA M. TORRES (S.B. #162284)
MICHAEL KEATS (admitted *pro hac vice*)
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071-2899
Telephone: (213) 430-6000
Facsimile: (213) 430-6407
Email: mkeats@omm.com

PATRICIA GLASER (S.B. #55668)
CHRISTENSEN, GLASER, FINK, JACOBS, WEIL & SHAPIRO, LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, CA 90067
Telephone: (310) 553-3000
Facsimile: (310) 557-9815

Attorneys for MGA Entertainment, Inc.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION**

| | |
|---|---|
| CARTER BRYANT, an individual,<br>Plaintiff,<br>v.<br><br>MATTEL, INC., a Delaware Corporation,<br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | Case No. CV 04-09049 SGL (RNBx)<br>(consolidated with CV 04-9059 & 05-2727)<br><br>**DISCOVERY MATTER**<br><br>**MGA ENTERTAINMENT INC.'S MOTION TO COMPEL**<br><br>[To be heard by Discovery Master Hon. Edward Infante (Ret.) Pursuant to the Court's Order of December 6, 2006]<br><br>Discovery Cut-off: October 22, 2007<br>Pre-trial Conference: January 14, 2008<br>Trial Date: February 12, 2008 |

EXHIBIT 8
PAGE 173



07/03/07

MGA Entertainment, Inc. ("MGA") respectfully submits this Memorandum of Law in Support of its Motion to Compel Mattel, Inc. ("Mattel") to Supplement its Responses and Produce Documents Responsive to MGA's First Set of Requests for the Production of Documents and Things dated January 31, 2005 (the "Requests") pursuant to Federal Rules of Civil Procedure 37(a) in the case originally captioned *Mattel, Inc. v. Carter Bryant and MGA Entertainment, Inc.*, 04-9059 NM (RNBx) (the "Bryant Case").

## I. INTRODUCTION.

Mattel refuses to collect and produce documents that go to the heart of its case. Since the beginning, Mattel has stonewalled producing key documents directly relating to its claims and MGA's defenses. It has arrogantly ignored MGA's repeated requests that Mattel clarify its objections and comply with its discovery obligations. It has done so even while filing almost daily motions to compel about all manner of imagined discovery violations in an effort to drive up MGA's defense costs. Apparently, Mattel—a much larger company with vastly greater resources—believes that it can push MGA around by conducting a one-sided discovery program. Discovery, however, is a two-way street, and Mattel cannot simply bat aside MGA's discovery requests because it does not want to produce evidence that is harmful to its case.

MGA's Requests are clear, straightforward and unremarkable—seeking nothing more than those documents directly related to Mattel's claims for breach of contract, breach of fiduciary duty, breach of the duty of loyalty, unjust enrichment, conversion and damages. Nonetheless, Mattel peremptorily refused to produce *a single document* responsive to *any* of MGA's 332 document requests. Instead, Mattel responded with hundreds of pages of confused and disjointed boilerplate objections, including the baseless contention that the Requests as a whole were somehow "duplicative" of the handful of requests propounded *not* by MGA, but by

Carter Bryant. MGA asked for clarification of these objections, but Mattel failed to provide any of the necessary clarifications, explanations and support required of such objections—just as it failed to specifically identify even *one* single Bryant request that previously sought the same materials now demanded by any specific MGA request. Mattel's refusal to produce responsive documents and provide support for its objections was both indefensible and discordant with the cooperative nature and objectives of modern discovery.

Mindful of Mattel's related repeated abuse of the discovery process through unnecessary and hastily filed motions to compel (and the Discovery Master's resulting admonitions for that abuse), MGA first tried to address Mattel's misfeasance and enforce its statutory right to the requested documents in a series of meet and confers over the course of several months. Implacable, Mattel remained uncooperative and unforthcoming—doing little more than nominally supplementing its responses to 48 of the 332 requests and providing a succession of empty promises "to take a look at" a few others—while simultaneously refusing to conduct the required responsiveness review needed for the majority of remaining requests and otherwise withholding entire categories of crucial documents. Mattel then made its position clear at yet another meet and confer on March 27, 2007, declaring that it views its production in this matter to be relatively complete. Such a position suggests, and indeed subsequent productions revealed, Mattel never intends to conduct the required additional review, supplementation and production.

Mattel's refusal to comply with its most basic discovery obligations is frivolous, bordering on the ridiculous. Its misconduct warrants the imposition, at a minimum, of monetary sanctions. Further, unless MGA immediately receives the requested documents and supplementation, it simply cannot prepare in time for trial and will be unduly prejudiced by Mattel's unconscionable gamesmanship. Accordingly, MGA seeks an order compelling Mattel to supplement its responses



(including confirmation it has no additional documents responsive to germane requests), withdraw its improper objections, and immediately produce all responsive documents that it has been withholding improperly for two years.

## II. BACKGROUND.

Each and every one of Mattel's claims and allegations against Bryant, a design consultant for MGA, emanates from Bryant's conception of a fashion doll that MGA ultimately developed into the hugely successful BRATZ product line.[1] Mattel claims Bryant "converted" its intellectual property in creating and developing the BRATZ product line with MGA; and that Bryant breached his employment agreement with—and special duties owed to—Mattel. As MGA's rights to its BRATZ dolls were directly implicated by Mattel's claims and requested relief, MGA intervened. Both Bryant and MGA deny Mattel's assertions and claims, and raise a number of defenses.

MGA then propounded its Requests, pursuant to Federal Rules of Civil Procedure 26(b) (1) and 34, for, *inter alia*: (a) documents relating to Bryant, his employment, the purported Mattel "property" allegedly misappropriated, and Mattel's decision to sue; (b) documents generally concerning the agreements Mattel alleges Bryant breached and the fiduciary duties of similarly situated Mattel employees; (c) MGA's BRATZ dolls—the very subject of the dispute between Mattel and Bryant, including comparisons to Mattel products and any evidence that Bryant created, developed or reduced the BRATZ idea to practice during the course of his Mattel employment; and (d) documents relating to specific allegations in Mattel's complaint—including the alleged damages. (Declaration of Kendall Burr ("Burr Decl."), Ex. 1.) The Requests seek facts and evidence bearing on essential

---

[1] While manifest in its complaint against Bryant, Mattel more plainly delineates this association between its allegations against Bryant and MGA's BRATZ dolls in its amended answer and counterclaims to MGA's complaint in the case originally captioned *MGA Entertainment, Inc. v. Mattel, Inc.*, 05-2727.

elements of Mattel's claims against Bryant and Bryant's corresponding defenses.

Mattel nonetheless refused to produce a single document responsive to any request and instead raised a number of boilerplate or improper general and specific objections. (Burr Decl., Ex. 2.) Over the course of two days in August 2006, MGA challenged Mattel's refusal to produce even a single document and demanded that Mattel clarify, explain and provide the required support for its claimed objections (the "August meet and confers"). (Declaration of B. Jennifer Glad ("Glad Decl.") ¶3.) Mattel ultimately agreed to supplement its responses, produce documents in response to many requests and "revisit" its responses to many others. (Glad Decl. ¶4, Ex. 1.) Five months later in January 2007, Mattel finally provided supplemental responses (the "Supplemental Responses")—but did so only as to 48 of the original 332 requests, and neither supplemented nor produced documents responsive to many of the requests it previously promised to supplement or "revisit." (Burr Decl., Ex. 3.) It was thus unclear whether Matter actually intended to produce the documents promised during the August meet and confers. MGA therefore requested yet another meet and confer in the abiding hope of finally receiving the requested documents without the need for time-consuming, expensive and otherwise unnecessary motions practice. (Burr Decl. ¶5, Ex. 4.)

At the March 27, 2007 meet and confer, Mattel now took the position that its document production in this matter was relatively complete—and did so despite having failed to even provide responses to a large number of non-duplicative, relevant requests. (Burr Decl. ¶6.) Moreover, Mattel also now objected for the first time to the Requests as somehow duplicative of other MGA—rather than Bryant—requests, propounded November 22, 2006, in another consolidated case, originally captioned *MGA Entertainment, Inc. v. Mattel, Inc.*, 05-2727 ("MGA's Affirmative Case"). (Burr Decl. ¶7.) Mattel did not, however, even attempt to identify each request it now thought was duplicative—let alone provide any bases for that belief.



Instead, Mattel offhandedly made passing reference to a few supposed "examples" (without explanation or support)—and then demanded that MGA prove its requests were notduplicative. (Burr Decl. ¶7.) Although aware Mattel's demand effectively inverted the entire discovery process so it would no longer be incumbent on Mattel to prove the requests were duplicative before it could justify refusing to respond, MGA nonetheless agreed to identify whether any of its Bryant Case requests were duplicative of—or subsumed by—*any* other request in the *entire* consolidated case.[2] (Burr Decl. ¶9.) MGA subsequently conducted that review as demanded and again identified all non-duplicative requests in a followup letter to Mattel on March 29, 2007. (Burr Decl. ¶9, Ex. 5.) Despite having made the now-answered demand, Mattel nonetheless has never substantively responded to the resulting review, identification and answer—nor withdrawn its baseless "duplicative" objections. (Burr Decl. ¶9.)

Mattel also indicated at this last meet and confer that it would address the necessary further review and supplementation by "taking another look at" a few requests—and supposedly would do so despite having already reviewed these relatively few requests twice before. (Burr Decl. ¶8.) In response, MGA first asked Mattel to confirm whether it would supplement the responses it had agreed to reconsider by March 30, 2007, (Burr Decl., Ex. 6), then later proposed extending that deadline until April 10, 2007 (Burr Decl. ¶11). Both dates passed, and Mattel has yet to reconfirm its promise to supplement these particular responses without a Court Order. (Burr Decl. ¶11.) Moreover, five months have passed since Mattel provided its anemic Supplemental Responses and MGA has yet to receive the bulk of responsive documents promised therein. (Burr Decl., ¶4.)

Mattel thus has purposely and methodically thwarted MGA's statutory right to discovery for more than two years. And there is every indication Mattel will

[2] The focus of the meet and confer, however, remained document requests in the Bryant Case.

continue to obstruct MGA's discovery efforts going forward. In light of the impending discovery cut-off and trial in this matter, MGA simply cannot wait any longer for these critical responsive documents while Mattel vacillates between promises of "taking another look" and claims of complete compliance with its discovery demands. As such, MGA had no option but to file this motion to compel.

## III. ARGUMENT.

Federal Rule of Civil Procedure 26(b)(1) provides MGA with "the right to discover non-privileged information 'relevant to the claim or defense of any party.'" *See Goodrich Corp. v. Emhart Indus.*, 2005 U.S. Dist. LEXIS 25160, *10 (C. D. Cal. October 6, 2005). "Relevance is broadly construed, and a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party." *Id.* Moreover, a discovery request need only "appear[] reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). It is indisputable that MGA requested legitimate discovery relevant to Mattel's claims and the defenses thereto. To nonetheless resist that discovery, Mattel "has the burden to show that discovery should not be allowed, *and* has the burden of clarifying, explaining, and supporting its objections." *Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 283 (C.D. Cal. 1998) (emphasis added). Mattel never even attempted to meet its burdens—because it cannot—and thus should be compelled to supplement its responses and produce responsive documents.

### A. Boilerplate Objections and Unsupported Claims that Requests Are Duplicative Do Not Abrogate Mattel's Discovery Obligations.

To meet its burden of overcoming MGA's statutory right to discovery, Mattel had to clarify, explain and support it objections. *Oakes*, 179 F.R.D. at 283. Instead, Mattel propounded an array of boilerplate objections to every single request for production, including broad relevancy objections, objections of



"overbroad and unduly burdensome," "vague and ambiguous" and/or "duplicative" and otherwise failed to state, in connection with any specific request, that it would produce responsive documents. (*See* Burr Decl., Ex. 2.) Such an arrogant attempt to circumvent clear discovery obligations should not be countenanced—for if permitted, they render those obligations meaningless and dependant upon nothing more than a party's caprice. After all, MGA is statutorily entitled to know with certainty "the requests for which [Mattel] is producing documents, the requests for which [Mattel] is withholding documents and on what basis, and the requests for which it has no responsive documents." *E&J Gallo Winery v. Cantine Rallo, S.p.A.*, 2006 U.S. Dist. LEXIS 42069, *4-5 (E. D. Cal. June 13, 2006). And Mattel's responses in no measure provide that information.

Courts have long held that the general, boilerplate objections—especially when submitted without evidentiary declarations, argument or other appropriate support—are simply improper. *See e.g. A. Farber and Partners, Inc. v. Garber*, 234 F.R.D. 186, 188 (C.D. Cal. 2006) (boilerplate objections—including broad relevancy objections, objections of overly burdensome and harassing, etc.—improper without more); *St. Paul Reinsurance Co., Ltd. v. Commercial Financial Corp.*, 198 F.R.D. 508, 513 (N.D. Iowa 2000) ("The first objection asserted [to the document request] is that it is oppressive, burdensome and harassing. Plaintiffs assert these objections, however, without explaining, much less substantiating, how CFC's request is oppressive, burdensome and harassing."). Yet, that is precisely what Mattel here attempts. For example, Mattel contends the Requests are "unduly burdensome and oppressive" in seeking "all" documents that evidence, refer or relate to a given topic, but does so without providing a single, specific reason as to how or why any given request is so burdensome. (*See e.g.* Mattel's Resp. to MGA's Req. No. 1.) Mattel similarly objects repeatedly to various defined terms as "vague and ambiguous"—*e.g.*, "Mattel further objects to this Request [No. 1] on



the grounds that the term "Bratz Intellectual Property" is vague and ambiguous."—but does so without any explanation or reasoning. (*See e.g. id.*) Devoid of any argument or support, such baseless objections cannot provide the necessary bases for Mattel's refusal to produce documents.

Additionally, Mattel must supplement its responses to provide MGA with the information necessary to understand exactly what documents exist and do not exist, have been produced or otherwise will not be produced. *See e.g. E&J Gallo*, 2006 U.S. Dist. LEXIS 42069 at *4-5 (E. D. Cal. June 13, 2006). The present responses make that impossible. And MGA's flaccid supplementation of 48 of the 332 responses is of little significance, because the vast majority of Mattel's responses still do not allow for any meaningful evaluation. Moreover, Mattel has yet to honor its previous representation that it would produce documents responsive to certain of these requests or "revisit" its responses; responsive documents were not provided and the Supplemental Responses failed to supplement many of those requests. MGA is thus without any means at present to ascertain the state of Mattel's discovery compliance and will remain stymied as to any such assessment unless Mattel properly supplements its deficient responses.

Besides these boilerplate objections, Mattel additionally refused to respond or otherwise produce responsive documents based upon its unsupported contention that the Requests are somehow "duplicative" of requests previously propounded by Bryant. Mattel, however, failed to identify a single previously-propounded Bryant request on which to base its original "duplicative" objection and outright refusal to "re-produce" responsive documents. Then, in the meet-and-confer process, Mattel suddenly argued the Requests are somehow "duplicative" of subsequent requests MGA propounded in MGA's Affirmative Case. Mattel, however, again failed to adequately identify those specific requests it belatedly claimed were "duplicative" of unspecified later requests propounded in MGA's Affirmative Case—despite



having delayed until the most recent meet and confer before even providing this latest supposed bases, nearly three months after providing its Supplemental Responses without any such objections. Mattel's failure to ever provide any actual bases for his "duplicative" claims—*i.e.*, a rundown of each specific request claimed to be "duplicative" and each corresponding request supposedly duplicated—renders these objections as meaningless and ineffectual as any other impermissible boilerplate.[3] *See FDIC v. Garner*, 126 F.3d 1138, 1146 (9th Cir. 1997) (affirming enforcement of subpoenas when appellants failed to provide "specific information" supporting claims requests were duplicative); *Alexander v. FBI*, 194 F.R.D. 299, 302 (D.D.C. 2000) (failure to specify previously produce items constitutes failure to meet burden of substantiating objection that requests were duplicative).

In view of the foregoing, Mattel should be compelled to further supplement its responses and produce documents responsive to MGA's Requests, as more thoroughly outlined below.

1. **Mattel must supplement and provide documents in response to MGA's requests concerning Bryant; Bryant's employment; and Mattel's decision to sue Bryant.**

a. **Requests Nos. 172-174, 188 and 190 seek documents relating to Mattel's decision to sue Bryant and the timing thereof, any Mattel decision *not* to sue Bryant, and any Mattel decision as to the litigation against MGA or involving BRATZ.**

The discovery MGA seeks in connection with these requests—namely, non-privileged documents in Mattel's possession concerning its decision to file suit—will tend to show Mattel's knowledge of Bryant's relationship with MGA and the

[3] Rather than provide the required specific bases for its "duplicative" objections, Mattel instead engaged in unwarranted and unnecessarily costly gamesmanship. After continually changing the supposed bases for its objections and tellingly failing to even include the changed-bases in its Supplemental Responses, Mattel then demanded that MGA prove its Request were not "duplicative" when the burden of proof clearly rested with Mattel. See, e.g., Oakes, 179 F.R.D. at 283. Then, when MGA did so and provided the demanded analysis on March 29, 2007, Mattel not only refused to respond, but also failed to withdraw its now clearly baseless objections.

timing thereof. Thus, at the very least, these documents are relevant to Bryant's and MGA's defenses based on statute of limitations, laches, and waiver—and also are relevant to mitigation of damages.[4] And there can be no doubt that MGA is entitled to discovery tending to support its defenses.

Mattel nonetheless improperly refused to produce any documents responsive to these requests based on an array of improper boilerplate objections including broad relevancy objections, and, with respect to Request Nos. 172 and 188, an objection that they are "duplicative." (Burr Decl., Ex. 2.) Moreover, at the August meet and confers, Mattel indicated it would produce documents responsive to Request Nos. 172-174 and 188. (Glad Decl., Ex. 2.) To date, however, Mattel has neither produced documents nor supplemented its responses to these requests. (Burr Decl. ¶12.) And although MGA indicated in its letter of March 20, 2007, that it continued to demand discovery in response to these requests, Mattel additionally failed to confirm in any subsequent correspondence or discussion with MGA that it would produce the previously promised documents. (Burr Decl., Ex. 4.) Mattel has thus far failed to withdraw its original "duplicative" objections or provide any valid basis for its continued refusal to respond to these requests. It therefore is unclear to MGA whether Mattel intends to produce documents responsive to these requests; once again refuses to produce such documents based upon its original boilerplate objections; or otherwise intends to assert yet another supposed basis for its "duplicative" objections.

As MGA's requests are appropriate and Mattel provided no adequate bases for refusing to respond to them, Mattel should be compelled to supplement its responses, withdraw its improper objections, and produce documents responsive to these requests..

---

[4] Requests Nos. 185, 191-195, 220-223, and 252-253, all of which similarly relate to MGA's defense that Mattel unreasonably delayed in bringing this litigation, will be addressed in a separate motion to compel.

b. **Requests Nos. 180-183 and 258 seek documents pertaining to Bryant's work at Mattel, *e.g.*, the terms of his employment, job duties and responsibilities; his work at Mattel, including the projects he worked on, days and hours worked, with time and data entries; phone records; and vacation and absence records.**

The discovery MGA seeks in connection with these requests is relevant to the nature and scope of Bryant's employment and therefore may support or refute Mattel's claims that Bryant owed any duties to Mattel. Furthermore, these requests seek evidence tending to support or refute Mattel's claims that, during the course of his employment with Mattel, Bryant (1) had access to certain of Mattel's intellectual property that Mattel claims was the basis for BRATZ or (2) otherwise converted, used, sold, assigned or transferred property that Mattel claims that it owns. As these documents pertain to Mattel's stated claims against Bryant, they are relevant and must be produced.

Mattel nonetheless improperly refused to produce any documents responsive to these requests based on the same array of improper objections, including relevancy and "duplicative" claims. (Burr Decl., Ex. 2.) Although Mattel refused to respond to these requests and has never supplemented, it did produce Bryant's personnel file, telephone records through September 2000 and some additional responsive documents. (Burr Decl. ¶14.) Mattel, however, clearly has not produced all responsive documents, such as phone records from October 2000, when Bryant still worked at Mattel. (Burr Decl. ¶14.) And whether any other such responsive documents are being withheld or otherwise do not exist is impossible to ascertain in light of Mattel's inadequate responses.

As MGA's requests are appropriate and Mattel provided no adequate bases for refusing to respond to them, Mattel should be compelled to supplement its responses, withdraw its improper objections, and produce documents responsive to these requests..

**c. Requests Nos. 186-187, 260 seek documents relating to Bryant's involvement with work on BRATZ or for MGA; and relating to any activities of Bryant other than his work for Mattel.**

As the requested documents pertain to Mattel's stated claims against Bryant and Bryant's defenses thereto, they are relevant and must be produced. Yet, Mattel improperly refused to produce any documents responsive to these requests based on the same array of improper boilerplate objections, including broad relevancy and "duplicative" claims. (Burr Decl., Ex. 2.) Although Mattel has never supplemented its responses to these requests, it has produced several documents that appear to be responsive. (Burr Decl. ¶13.) Therefore, it is unclear whether Mattel is withholding any additional responsive documents based on its baseless boilerplate objections, is raising some new "duplicative" claims in connection with these requests, or simply has no further responsive documents.

In light of the foregoing, Mattel's objections should be overruled and Mattel should be compelled to supplement its responses and produce any remaining documents responsive to these requests.

**d. Requests Nos. 270-271 seek documents in Mattel's possession that were exchanged between Bryant and Anne Wang, and between Bryant and MGA.**

Documents in Mattel's possession that were exchanged between Bryant and Anne Wang, his attorney during his early negotiations with MGA, or exchanged between Bryant and MGA at that time, are likely to lead to admissible evidence relating to Mattel's knowledge of Bryant's dealings with MGA and the timing thereof. At the very least, such discovery is relevant to Bryant's defenses based on statute of limitations, laches, and waiver—and to mitigation of damages.

Nonetheless, Mattel again improperly refused to produce any documents responsive to these requests based on the same improper boilerplate objections, including relevancy and "overbroad and unduly burdensome" —and the equally

unfounded "duplicative" claim with respect to Request No. 271. (Burr Decl., Ex. 2.) In response to the "overbreadth" objection, MGA offered to limit the time frame of the requests to the period of Bryant's employment at Mattel. (Glad Decl., Ex. 1.) Despite agreeing at the August meet and confers that it would produce documents responsive to these requests (Glad Decl., Ex. 2), Mattel neither produced documents nor supplemented its responses. (Burr Decl. ¶12.) And although MGA indicated in its letter of March 20, 2007, that it continued to pursue the discovery responsive to these requests, Mattel failed to confirm in any subsequent correspondence or discussion with MGA that it would produce any such documents. (Burr Decl., Ex. 4.) Moreover, Mattel thus far has failed to withdraw its original "duplicative" objections or provide any justifiable basis for its continued refusal to respond. It therefore is again unclear whether Mattel intends to produce responsive documents; again relies upon its original boilerplate objections; or has new "duplicative" claims as the basis for not responding.

In view of the foregoing, Mattel should be compelled to supplement its responses, withdraw its improper objections, and produce responsive documents.

e. **Requests Nos. 224-249 seek communications and documents referring to communications with various specified individuals concerning BRATZ, Bryant's work for MGA, or relating to this litigation, the facts and circumstances giving rise to it, or Bryant's alleged misconduct.**

These requests seek documents relevant to Mattel's claims that Bryant converted, used, sold, assigned or transferred property that Mattel supposedly owns. Such documents would include non-privileged communications with Anna Rhee, an independent contractor who painted the original BRATZ faces, Margaret Leahy, an independent contractor who prepared the original sculpts for BRATZ, and Ms. Leahy's husband, concerning the BRATZ concept and dolls, Bryant's work for MGA and Bryant's alleged misconduct—as well as any non-privileged documents relating to this litigation. Any such document would additionally be highly relevant

to Bryant's defenses based on statute of limitations, laches, and waiver in that they may tend to show Mattel's "knowledge" of Bryant's relationship with MGA or of BRATZ and the timing of any such "knowledge."

Yet, Mattel refused to produce documents responsive to these requests based on the same unsupportable and meritless objections, including relevancy and "duplicative" for requests Nos. 224-227 and 230-233. (Burr Decl., Ex. 2.) As MGA's requests are relevant and appropriate, and Mattel has no valid basis for refusing to respond, Mattel should be compelled to supplement its responses, withdraw its improper objections, and produce responsive documents.

f. **Request No. 268 seeks hard drives and backup data for all computers used by Bryant while employed by Mattel.**

Mattel refuses to produce items responsive to this request based on the same boilerplate objections, including relevancy and "duplicative" claims. (Burr Decl., Ex. 2.) Mattel also claims concern about access to trade secrets—although MGA offered to have the hard drives and back up tapes examined by an independent forensic data retrieval company. (Glad Decl., Ex. 1.) Mattel disregarded this solution and continues to refuse to respond to this request or provide the demanded items. (Burr Decl. ¶12.)

Yet, Mattel claims Bryant breached his obligations to Mattel by virtue of allegedly working on BRATZ prior to terminating his employment at Mattel, and, therefore, evidence of his work for Mattel and the amount of time he spent on that work—regardless of its subject matter—is relevant to show Bryant met his obligations to Mattel. And hard drives and back up data are valid forms of discovery, particularly when corporate materials generally are stored, and may be periodically purged from, computer systems. *See e.g, Communications Center, Inc. v. Hewitt*, 2005 U.S. Dist. LEXIS 10891 (E.D. Cal., Apr. 5, 2005) (defendants ordered to provide compact disc containing mirror images of any hard drives of

computers in defendants' possession); *Playboy Enterprises, Inc. v. Welles*, 60 F. Supp. 2d 1050, 1053-54 (S.D. Cal. 1999) (granting request that hard drive be imaged in order to recover deleted emails); *Balboa Threadworks, Inc. v. Stucky*, 2006 U.S. Dist. LEXIS 29265 (D. Kan., Mar. 24, 2006) (granting request for access to mirror image of hard drive). Indeed, Mattel's own efforts to obtain all of the hard drives of Bryant's post-Mattel computers undermines any argument that the hard drive(s) Bryant used while at Mattel are not potentially critical sources of information.

In light of MGA right to discovery tending to support or refute Mattel's claims concerning Bryant's employment with Mattel, and Mattel's failure to provide supportable objections, Mattel should be compelled to supplement its response, withdraw its improper objections, and produce these items.

2. **Mattel must supplement and provide documents in response to MGA's requests concerning the agreements that Mattel alleges were breached by Bryant and the fiduciary duties of persons employed by Mattel in the same or similar capacity as Bryant.**

a. **Requests Nos. 281-282 and 284-285 seek documents from 1997 to the present relating to Mattel's form "Employee Confidential Information and Inventions Agreement" and "Conflict of Interest Questionnaire," and negotiations with any employee or prospective employee concerning those agreements.**

The "Employee Confidential Information and Inventions Agreement" and "Conflict of Interest Questionnaire," and Bryant's purported breach thereof, are central to this case. After all, Mattel contends Bryant breached the "Employee Confidential Information and Inventions Agreement" and "Conflict of Interest Questionnaire." Bryant counters that he did not breach any agreement and, further, that the agreements are unenforceable as a contract of adhesion, unconscionable

and violative of California law. The manner in which Mattel negotiates, interprets, enforces and applies the terms of the aforementioned contracts is thus highly relevant to Mattel's claims and Bryant's defenses. As such, MGA is entitled to discovery tending to support or refute both Mattel's and Bryant's contentions with respect to these agreements. Changes to those agreements over time, particularly at or after the commencement of this lawsuit, are also relevant to Bryant's defenses, as they likely show that the agreement Bryant signed is not only incomprehensible but insufficient to obtain the relief Mattel seeks.

Although Mattel produced several forms actually signed by Bryant and Paula Treantafelles, it nonetheless has otherwise refused to produce other items responsive to these requests based on improper boilerplate objections, including relevancy and "overbroad and unduly burdensome"—as well as "duplicative" claims as to requests Nos. 282 and 284. (Burr Decl., Ex. 2.) And although Mattel agreed during the August meet and confers to review its responses to these requests in light of MGA's offer to significantly limit their scope, to date Mattel has not produced additional responsive documents nor supplemented its responses in any way. (Glad Decl., Ex. 2.)

In view of the foregoing, Mattel should be compelled to supplement its responses, withdraw its improper objections, and produce responsive documents.

b. **Requests Nos. 262-267 seek documents created after January 4, 1999, concerning the activities of any Mattel employee in connection with the creation of any property, doll or toy for anyone other than Mattel; Mattel's employment policies/contracts governing the extent to which part-time or temporary employees may work for himself or other companies while also employed by Mattel.**

In 1998, Bryant worked for Mattel on a part-time basis. Mattel's employment policies concerning part-time and temporary employees (and

restrictions on their abilities to work elsewhere while employed by Mattel) are thus probative of Mattel's contentions that its employees may not work for others while employed by Mattel and relevant to its breach of contract claims against Bryant. Moreover, such documents also are relevant to Bryant's defenses in this case, including, for example, waiver and interpretation of the agreement under which Mattel ostensibly filed its contract-based claim.

Mattel refused to produce documents responsive to these requests based on improper boilerplate objections, including relevancy and "duplicative" claims. (Burr Decl., Ex. 2.) Several responsive documents nonetheless were produced, although Mattel never supplemented its responses. (Burr Decl. ¶13.) It therefore is unclear whether Mattel intends to produce additional documents responsive to these requests; now relies on its original boilerplate objections to withhold additional responsive documents; or otherwise intends to present new "duplicative" claims. Mattel therefore should be compelled to supplement its responses, withdraw its improper objections, and produce any additional responsive documents.

**3. Mattel must supplement and provide documents in response to MGA's requests concerning the BRATZ and the purported Mattel property that forms the basis of its claims.**

**a. Document Requests Nos. , 259, 261 and 269 seek documents concerning BRATZ including any documents relating to the similarities or differences between BRATZ and any Mattel property or any property created by a Mattel employee that it contends served as a source or origin for any BRATZ concept or product.**

Mattel refused to produce documents responsive to these requests based on the same array of improper boilerplate objections, including relevancy and "overbroad and unduly burdensome"—as well as "duplicative" claims. (Burr Decl., Ex. 2.) In response to Mattel's "overbreadth" objections, MGA limited its

requests when possible, and otherwise explained why it could not do so. (Glad Decl., Ex. 1.) Mattel, nevertheless, has thus far continued to object to providing any response to these Requests. But as more fully above, this discovery is directly relevant to Mattel's claims that Bryant converted, used, sold, assigned or transferred property that Mattel claims it owns; damages and causation; and Bryant's defenses, including those based on statutes of limitations, laches, waiver, and unclean hands. As these documents pertain to Mattel's stated claims against Bryant and Bryant's defenses, and Mattel has provided no cognizable bases for withholding them, it should be compelled to produced documents to the extent it has not already done so. If no additional documents exist, Mattel should be required to confirm it has no more responsive documents.

b. **Document Requests Nos. 44-46 seek documents discussing or mentioning Isaac Larian, Paula Treantafelles, or Mercedeh Ward, authored between June 2000 and October 2001 that concern, support or refute Mattel's contentions in this litigation.**

The documents requested are clearly relevant and limited in scope. MGA requested only documents that discuss or mention certain individuals, *e.g.*, Larian—the President and CEO of MGA, Treantafelles—a former Mattel employee who went to work for MGA and later helped develop the BRATZ line, and Ward—another former Mattel employee who worked for MGA on the BRATZ line. MGA also only requested such documents authored during a very specific time frame, and further limited these requests to only those documents concerning Mattel's contentions in this litigation. Any such documents discussing or mentioning these individuals during the specified time period are at the very least relevant to MGA's statute of limitations and laches defenses.

Mattel nonetheless refused to produce any such responsive documents based on the same array of improper boilerplate objections, including relevancy



EXHIBIT 8
PAGE 191

objections and "overbroad and unduly burdensome"—and the same equally improper "duplicative" claims. (Burr Decl., Ex. 2.) In response to Mattel's "overbreadth" objections, MGA had already limited these requests to documents that "concern, support or refute Mattel's contentions in this litigation" and made clear it was not seeking other documents related to Treantafelles' or Ward's employment. (Glad Decl., Ex. 1.) Thereafter, at the August 11 meet and confer, Mattel agreed it would produce responsive documents. (Glad Decl., Ex. 2.) Regardless, Mattel has neither produced documents nor supplemented its responses to these requests, despite MGA indication in its letter of March 20, 2007, that it continued to pursue this responsive discovery. (Burr Decl., Ex. 4 and ¶12.) Mattel also has thus far failed to withdraw its original "duplicative" objection or provide any other basis for its continued refusal to respond. It therefore is unclear whether Mattel intends to produce responsive documents; stands by its original boilerplate objections; or is raising a new "duplicative" claim in connection with these requests.

In view of the foregoing, Mattel should be compelled to supplement its responses and provide documents responsive to these requests.

4. **Mattel must supplement and provide documents in response to MGA's requests concerning specific allegations set forth in its complaint, and demands for related documents.**

a. **Requests Nos. 296, 302-303, 306-307, and 329-330 seek documents supporting, refuting or evidencing specific allegations set forth in Mattel's complaint.**

Mattel refused to produce responsive documents based on the same improper boilerplate objections, including "duplicative" claims. (Burr Decl., Ex. 2.) In addition, Mattel objected to these requests as they relate to matters known to the defendants in this action but "not known to Mattel." This objection is completely incomprehensible. Mattel must know the property to which its own complaint

referred—the alleged "conversion" of which forms the basis of Mattel's action against Bryant. At the August meet and confers, Mattel thus agreed to produce responsive documents. (Glad Decl., Ex. 2.) Although Mattel then selectively produced some such responsive documents, it does not appear to have produced all such documents, nor has Mattel supplemented its responses. (Burr Decl. ¶13.) It is unclear, therefore, whether Mattel is withholding any additional responsive documents based on its original boilerplate objections or some new "duplicative" claim. Mattel thus should be compelled to supplement its responses, withdraw its improper objections, and produce all documents responsive to these requests. In the alternative, Mattel should be compelled to confirm it conducted a diligent search but found no additional responsive documents

MGA also seeks documents related to (a) Mattel's claims that the Employment Agreement and Conflict questionnaire are "valid, enforceable contracts"; (b) Mattel's allegations of damages and harm; and (c) Mattel's allegation that Bryant "used and diverted" Mattel resources and opportunities;— as well as (d) documents depicting the "intellectual property owned by Mattel" and relating to ownership of that property. These subjects are also directly relevant to Mattel's contentions in this litigation. Mattel therefore should also be compelled to supplement its responses, withdraw its improper objections, and produce all documents responsive to these requests—or otherwise confirm it has conducted a diligent search but found no additional responsive documents.

b. **Request Nos. 309, 311, 313, 315, 317, 320, and 323 seek documents evidencing whether persons that are or were employed by Mattel in the same or similar capacity as Bryant are or were subject to the same duties and responsibilities that Bryant was allegedly subject to, as alleged in Mattel's complaint.**

Mattel refused to produce documents responsive to these requests based on the same array of improper boilerplate objections, including relevancy and

"duplicative" claims. (Burr Decl., Ex. 2.) At the August meet and confers, Mattel agreed it would produce documents responsive to these requests. (Glad Decl., Ex. 2.) To date, Mattel neither has produced documents nor supplemented its responses to these requests. (Burr Decl. ¶12.) And in MGA's meet and confer request of March 20, 2007, MGA advised Mattel that it continued to pursue discovery in response to these requests. (Burr Decl., Ex. 4.) Mattel nevertheless has thus far failed to confirm it would produce documents responsive to these requests in accordance with its previous agreement, or substantiate the basis for continuing to withhold any such documents. (Burr Decl. ¶12.) It therefore is unclear whether Mattel intends to produce documents responsive to these requests; again relies on its original boilerplate objections; or is raising a new "duplicative" objection in connection with these requests.

MGA continues to seek these documents in light of Mattel's allegation that Bryant "held a position of trust" at Mattel, "had access to and was entrusted with Mattel's proprietary and confidential information, supervised the work of others, exercised discretion and worked independently many of his job assignments and duties," and "represented Mattel in its dealings with third parties." (Complaint ¶ 22.) In addition to other requests seeking evidence that Bryant himself in fact had each of these duties and responsibilities, MGA propounded these requests in order to obtain the same types of information concerning persons employed by Mattel in the same or similar capacity as Bryant. Such documents are likely to lead to admissible evidence relating to whether Mattel ordinarily views employees in Bryant's position as "fiduciaries," and, in fact, would likely refute Mattel's claim that Bryant owed Mattel a "fiduciary" duty. As such, MGA's requests are relevant and appropriate, and Mattel has no valid basis for refusing to respond thereto. Mattel thus should be compelled to supplement its responses, withdraw its improper objections, and produce documents responsive to these requests.

## IV. MATTEL SHOULD BE SANCTIONED.

Under the Federal Rules, a party bringing a motion to compel is entitled to the "reasonable expenses incurred in making the motion, including attorney's fees, unless the court finds that the motion was filed without the movant's first making a good faith effort to obtain the disclosure or discovery without court action, or that the opposing party's nondisclosure, response or objection was substantially justified . . . ." Fed. R. Civ. P. 37(a)(4). The party being sanctioned has the burden of establishing substantial justification. *Hyde & Drath v. Baker*, 24 F.3d 1162, 1171 (9th Cir. 1994). Independently, sanctions may be imposed pursuant to 28 U.S.C. §1927 when a party "unreasonably and vexatiously" multiplies the proceedings.

Sanctions are appropriate here. Mattel does not have any legitimate basis for its repeated failure to produce clearly responsive documents on matters central to the claims in the matter. Mattel asserted a variety of general and specific objections that have no basis in law or fact, and did so without any support at all. Moreover, Mattel continuously shifts its basis for withholding certain documents, making it virtually impossible for MGA to resolve discovery disputes with Mattel—even with extensive efforts to meet and confer. MGA made every effort to resolve the discovery issues with Mattel, but Mattel had no interest in doing so. As such, Mattel and its counsel should be sanctioned for the fees and costs MGA expended as a result of Mattel's evasions in connection with its document production. MGA requests Mattel be ordered to pay $4,700.00 as partial reimbursement of the fees and costs MGA incurred making this motion. (Burr Decl. ¶22.)

## V. CONCLUSION

WHEREFORE, for the foregoing reasons, MGA respectfully requests that the Court order Mattel to supplement its document responses, produce its documents, and provide MGA such further relief as may be appropriate.

Dated: July 3, 2007

O'MELVENY & MYERS LLP

By: Michael C. Keats
Attorneys for MGA Entertainment, Inc.

EXHIBIT 8
PAGE 126

# EXHIBIT 9

Hon. Edward A. Infante (Ret.)
JAMS
Two Embarcadero Center
Suite 1500
San Francisco, California 94111
Telephone: (415) 774-2611
Facsimile: (415) 982-5287

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant. | CASE NO. C 04-09049 SGL (RNBx)<br>JAMS Reference No. 1100049530<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-2727<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MGA'S MOTION TO COMPEL MATTEL TO SUPPLEMENT RESPONSES AND PRODUCE DOCUMENTS RESPONSIVE TO FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS; DENYING REQUEST FOR SANCTIONS** |
| CONSOLIDATED WITH<br>MATTEL, INC. v. BRYANT and<br>MGA ENTERTAINMENT, INC. v. MATTEL, INC. | |



9-12-07

EXHIBIT 9
PAGE 197

## I. INTRODUCTION

On July 3, 2007, MGA Entertainment, Inc. ("MGA") submitted its "Motion to Compel Mattel, Inc. ("Mattel") to Supplement its Responses and Produce Documents Responsive to MGA's First Set of Requests for the Production of Documents and Things dated January 31, 2005" (the "Requests") in the Mattel v. Bryant case. On July 16, 2007, Mattel submitted an opposition brief and served its Second Supplemental Responses to MGA's Requests. On July 26, 2007, MGA submitted a reply brief.[1] The matter was heard on September 11, 2007. Having considered the motion papers and the comments of counsel at the hearing, MGA's motion to compel is granted in part and denied in part, and the request for sanctions is denied.

## II. BACKGROUND

On January 31, 2005, MGA propounded its Requests, which consisted of 332 separate requests for, *inter alia*, (a) documents relating to Bryant, his employment, the property MGA allegedly misappropriated, and Mattel's decision to sue; (b) documents generally concerning the agreements Mattel alleges Bryant breached and the fiduciary duties of similarly situated Mattel employees; (c) MGA's Bratz dolls, including comparisons to Mattel products and evidence that Bryant created, developed, or reduced the Bratz idea to practice during his employment with Mattel; and (d) documents relating to allegations in Mattel's complaint, including damages. Burr Decl., Ex. 1. Mattel served its responses on March 3, 2005, which consisted entirely of objections. Burr Decl., Ex. 2. Most notably, Mattel objected to many of the Requests as duplicative of requests that Bryant had previously propounded and to which Mattel had already responded to by stating it would produce documents.

---

[1] After MGA filed its reply brief, Mattel filed several "supplemental declarations" in support of its Opposition to MGA's motion to compel, which it contends addressed several arguments raised for the first time in MGA's reply brief. On August 22, 2007, MGA submitted a letter brief requesting that the supplemental declarations be stricken and not considered. The next day, Mattel submitted a letter brief asserting that the request to strike should be denied on procedural and substantive grounds, and in the alternative, requesting leave to file the "supplemental declarations." MGA's request to strike the "supplemental declarations" is denied, and Mattel's request for leave to file the "supplemental declarations" is granted.

Thereafter, the case was stayed while one of the parties pursued an interlocutory appeal. When the stay was lifted, the parties met and conferred regarding the Requests. Although they were not able to resolve all of their disputes, Mattel apparently confirmed to MGA that it "had already produced documents and would continue to produce documents on the subjects that duplicated Bryant's requests in a manner that was consistent with Mattel's earlier responses." Mattel's Opposition at p.9. In January of 2007, Mattel served supplemental responses to 48 Requests ("Supplemental Responses"). Burr Decl., Ex. 3.

MGA and Mattel met and conferred again on March 27, 2007. Mattel reiterated that MGA's Requests were duplicative of Bryant's requests. Mattel also contended that MGA's Requests were duplicative of other MGA requests served on November 22, 2006. A few days later, MGA sent a follow-up letter to Mattel identifying the Requests it contended were not duplicative of other requests. Burr Decl., Ex. 5. MGA also sent another letter asking Mattel to confirm whether it would supplement its responses and proposing that Mattel provide such responses by April 10, 2007. When no response was received, on July 3, 2007, MGA filed the instant motion to compel Mattel to supplement its responses to the Requests.

MGA contends that Mattel's boilerplate objections, including objections based upon relevance, overbreadth and burden, "vague and ambiguous," and/or "duplicative" are all improper because Mattel has failed to provide any explanation for its objections, much less any evidentiary support for its objections. In addition, MGA contends that Mattel has failed to substantiate its objection that certain Requests are purportedly "duplicative" of other requests. Lastly, MGA contends that Mattel has failed to fulfill its obligation to supplement its responses to the Requests with sufficient information for MGA to determine exactly which documents exist, do not exist, have been produced, or otherwise will not be produced. MGA contends that without the required supplementation, it lacks any means to ascertain the state of Mattel's discovery compliance. Therefore, MGA seeks a court order overruling each of Mattel's objections and compelling Mattel to supplement its responses and produce any remaining documents responsive to MGA's Requests.

On July 16, 2007, Mattel submitted its opposition to the instant motion, its Second Supplemental Responses to MGA's Requests, and its Corrected Second Supplemental Responses to MGA's Requests (hereinafter collectively referred to as "Second Supplemental Responses"). Mattel contends that MGA filed the instant motion without completing the meet and confer process and without identifying which responses are purportedly deficient. Mattel contends that in any event, there is no genuine dispute as to many of the Requests that are the subject of MGA's motion to compel. Mattel contends that during the meet and confer process, Mattel told MGA that it had already produced documents and would continue to produce documents on the subjects that duplicated Bryant's requests in a manner that was consistent with Mattel's earlier responses. Mattel represents that it has been producing documents it can locate after a reasonable search, and that its Second Supplemental Responses confirm which documents it has been producing in response to 45 out of the 72 Requests at issue. Mattel also represents that it has produced in excess of 100,000 pages of documents and has offered to make vast quantities of electronic data available for review, inspection, and copying, including electronic data from Mattel's Zeus computer system tapes. As to the remaining Requests at issue, Mattel stands by its objections that they are overbroad and unduly burdensome.

In its reply brief, MGA acknowledges Mattel's Second Supplemental Responses, but contends that they remain inadequate for several reasons. First, MGA contends that Mattel persists in its objections even for those Requests to which Mattel has agreed to produce responsive documents. In particular, MGA takes issue with Mattel's continuing objection that the Requests are "duplicative" of other requests propounded by Bryant or MGA. Therefore, MGA seeks a court order overruling each of Mattel's purportedly baseless objections. Second, MGA contends that Mattel continues to refuse to collect and produce documents in response to 28 Requests that are clearly relevant to the claims and defenses in the case. Third, MGA contends that Mattel improperly refuses to conduct a "reasonable search for documents," including a search of its Zeus file server and backup tapes of the Zeus server. MGA's Reply at p.2. Therefore, MGA seeks an order compelling Mattel to search the Zeus file server and backup tapes for

responsive documents at Mattel's expense. Finally, MGA anticipates that Mattel will withhold responsive documents as long as possible to prejudice MGA's ability to prepare for depositions and trial, and therefore should be ordered to complete its production forthwith.

## III. STANDARDS

Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed.R.Civ.P. 26(b)(1). "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id. Fishing expeditions to discover new claims, however, are not permitted. See Fed.R.Civ.P. 26(b)(1); Rivera v. NIBCO, Inc., 364 F.3d 1057, 1072 (9th Cir. 2004) ("District courts need not condone the use of discovery to engage in 'fishing expeditions.'"); Bernstein v. Travelers Ins. Co., 447 F.Supp.2d 1100, 1102 (N.D. Cal. 2006) (citing Rule 26(b), Advisory Committee's Note to Amendments Effective December 1, 2000) (Congress's changes in the language of Rule 26(c), substituting the words "claim or defense" for the phrase "subject matter involved in the pending action," were intended to prevent discovery that swept far beyond the claims and defenses of the parties and that seemed designed not to fairly litigate the issues presented by the pleadings but to develop new claims or defenses.).

Further, pursuant to Rule 26(b)(2), Fed.R.Civ.P., the court shall limit the frequency or extent of use of the discovery methods if the court determines that "(i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P. 26(b)(2).

//

## IV. DISCUSSION

1. Requests Concerning Bryant, Bryant's Employment, and Mattel's Decision to Sue Bryant

**a. Requests seeking documents relating to Mattel's decision to sue Bryant and the timing thereof, any Mattel decision not to sue Bryant, and any Mattel decision as to the litigation against MGA or involving Bratz (Nos. 172-174, 188 and 190)**

In Request Nos. 172-174, MGA seeks documents related to Mattel's Board of Directors' resolution to litigate regarding Bryant, MGA or Bratz. In Request Nos. 188 and 190, MGA seeks all documents related to "any decision [to sue or not to sue] Bryant."

MGA contends that documents responsive to Request Nos. 172-174, 188, and 190 are relevant to Bryant's and MGA's defenses based upon the statute of limitations, laches, waiver, and mitigation of damages. MGA contends that during the meet and confer process, Mattel agreed to produce documents responsive to Request Nos. 172-174 and 188, however, the documents have not been produced.

Mattel represents that it has already produced the Board of Directors meeting minutes that are responsive to Request Nos. 172-174, and that other meeting minutes that have been withheld or redacted for privilege have been placed on a privilege log. Mattel's Opposition at p.32. Mattel objects to Request Nos. 188 and 190 on the grounds that they seek information protected by the attorney-client privilege and/or the work product doctrine. Moreover, Mattel contends that the documents are irrelevant, asserting that Mattel's reasons for suing Bryant have no bearing on the merits of Mattel's claims or MGA's defenses thereto. Nevertheless, Mattel acknowledges that documents responsive to Request Nos. 188 and 190 might be relevant to MGA's statute of limitations and laches defenses. Mattel contends, however, that it has "already agreed to produce documents related to the first time Mattel became aware that Bryant was involved with the creation of Bratz" (Mattel's Opposition at p.33), and that these documents are far more relevant than documents responsive to Request Nos. 188 and 190.

In its reply, MGA contends that contrary to Mattel's representations, it has not produced non-privileged documents responsive to Request Nos. 172-174. To ensure production, MGA's

motion is granted as to Request Nos. 172-174. Any responsive documents withheld on the basis of a privilege must be identified on a privilege log.

Like Request Nos. 172-174, Request Nos. 188 and 190 seek documents that are relevant to MGA's defenses, including the statute of limitations and laches because the documents might establish when Mattel first considered taking legal action against Bryant. That Mattel believes it has produced documents that are more relevant to MGA's and Bryant's defenses (regarding when Mattel became of aware of Bryant's involvement with the creation of Bratz) does not excuse Mattel from complying with Request Nos. 188 and 190. If responsive documents are protected by the attorney-client privilege or work product doctrine, Mattel must identify such documents on a privilege log. MGA's motion is granted as to Request Nos. 188 and 190.

**b. Requests seeking documents pertaining to Bryant's work at Mattel, *e.g.*, the terms of his employment, job duties and responsibilities; his work at Mattel, including the projects he worked on, days and hours worked, with time and data entries; phone records; and vacation absence records (Nos. 180-183 and 258)**

In Request No. 180, MGA seeks all documents mentioning, referring or relating to Bryant, including but not limited to Bryant's personnel file and all documents on Mattel's Zeus computer system that mention Bryant. In Request No. 181, MGA seeks all documents constituting, evidencing, referring to, or reflecting Bryant's work at Mattel, including the projects he worked on. In Request No. 182, MGA seeks all documents "evidencing the days and hours Bryant worked for Mattel, including all time entries and data on Mattel's 'P2' computer system, and all records reflecting the days and hours Bryant was on vacation or leave of absence." In Request No. 183, MGA seeks all documents "reflecting records of all phone calls Bryant placed and received and all facsimiles Bryant sent and received during his employment at Mattel." In Request No. 258, MGA seeks all documents relating to Bryant's employment including, without limitation, documents reflecting the period and conditions of the employment, the terms of the employment, and his job duties and responsibilities.

MGA contends that Request Nos. 180-183 and 258 seek information that is clearly relevant to support or refute Mattel's claims, and that Mattel has improperly refused to produce

responsive documents based upon an array of objections. MGA acknowledges, however, that Mattel has produced Bryant's personnel file, telephone records through September 2000 and some additional responsive documents. Despite this production, MGA continues to seek phone records from October 2000, when Bryant was still working at Mattel.

Mattel's Second Supplemental Responses confirm that it will produce documents responsive to all of the Requests in this category except Request No. 180. MGA's motion is granted as to Request Nos. 181-183 and 258 to establish a deadline for completing production.

With respect to Request No. 180, Mattel represents that it has "repeatedly offered to make Zeus backup tapes, and other electronic data, available to MGA on mutually agreeable terms." Mattel's Opposition at p.23. Further, Mattel contends that pursuant to Rule 26(b)(2)(B), Fed.R.Civ.P., it is not required to search its Zeus file server data and backup tapes because such an endeavor would be unduly burdensome and costly. Mattel explains that its Zeus system is an immense computer system consisting of 50 terabytes of electronic files that is largely used by Mattel designers and engineers and overwhelmingly consists of graphical files whose content cannot be searched by keywords. Mattel's Opposition at p.20. Further, Mattel represents that it does not have the necessary hardware to restore or search the Zeus backup tapes. Mattel's Opposition at p.25, n. 98.

In its reply brief, MGA counters that Mattel has mischaracterized its Zeus system. According to MGA, Mattel's 30(b)(6) witness, Julia Marine, testified that Zeus' directory structure is organized with top-level folders and various levels of subfolders; that individual Mattel employees are each given a home folder and can create subfolders; and that when an employee leaves the company, the folders set up by that employee are not deleted by Mattel's IT department. MGA's Reply at p.9. Therefore, MGA believes it is possible to search the Zeus server for responsive documents by simply locating the folders of relevant departments and employees. Furthermore, MGA suspects that Mattel should be able to conduct a keyword search of file names, even if the contents of the files consist of graphical images.

MGA also contends that Mattel has failed to satisfy its burden of showing that a search of

its backup tapes for the Zeus server would be unduly burdensome. Although MGA acknowledges Mattel's representation that it does not have the hardware for searching the backup tapes, MGA contends that Mattel "does not identify any unreasonable cost associated with such a review." MGA's Reply at p.10.

Mattel has failed to make the requisite showing that the information on the Zeus system and backup tapes "is not reasonably accessible because of undue burden or cost." Fed.R.Civ.P. 26(b)(2)(B). MGA has suggested a few reasonable methods for searching the Zeus system based upon the deposition testimony of Julia Marine. For example, Mattel could search its system for folders of relevant departments and employees. Mattel could apply a keyword search to locate file names for potentially responsive documents.[2] Further, Mattel has not attempted to quantify the burden and expense of obtaining the necessary hardware to restore or search the backup tapes, whether in terms of time, financial costs, labor, or otherwise.[3] Therefore, MGA's motion is granted as to Request No. 180.[4]

**c. Documents relating to Bryant's involvement with work on Bratz or for MGA, and relating to any activities of Bryant other than his work for Mattel (Nos. 186-187, 260)**

MGA contends that Request Nos. 186-187 and 260 seek documents relevant to Mattel's claims against Bryant and Bryant's defenses thereto. MGA contends that Mattel has improperly

---

[2] Indeed, in its supplemental submissions, Mattel clarifies that it has conducted searches for Zeus file names by keyword. Supp. Zeller Decl. at ¶3.

[3] Rather, the information Mattel has provided suggests that searching the backup tapes is not unduly burdensome. In a declaration filed after the reply brief, counsel for Mattel, Mr. Zeller, represents that "vendors retained by Mattel's counsel, as well as other electronic discovery vendors I am familiar with, have the hardware and other data needed to read the Zeus backup tapes and in fact can read them." Mattel's Notice of Lodging Regarding Mattel's Opposition to MGA's Motion to Compel, Ex. 2, ¶14. Further, Mr. Zeller states, "[a]s Mattel's 30(b)(6) designee Julia Marine also confirmed, one simply needs to buy the tape drives to read these tapes [citation omitted], which Mattel's vendors have done." Id.

[4] The parties have a general disagreement over whether Mattel has an obligation to search the Zeus system and backup tapes for documents responsive to all of MGA's Requests, not just Request No. 180. See MGA's Reply at pp. 18-20. As explained above, Mattel has failed to carry its burden of proving that searching the Zeus system and backup tapes is unduly burdensome or costly. Therefore, to the extent MGA's motion to compel is granted as to other Requests herein, Mattel shall conduct a reasonable search of the Zeus system and backup tapes to locate responsive documents.



EXHIBIT 9
PAGE 205

refused to produce any responsive documents based upon an array of boilerplate objections. Nevertheless, MGA acknowledges that Mattel "has produced several documents that appear to be responsive." MGA's Motion at p.13. MGA seeks an order overruling Mattel's objections and compelling Mattel to supplement its responses and produce any remaining responsive documents.

Mattel's Second Supplemental Responses confirm that it will produce responsive documents. More specifically, in response to Request Nos. 186-187 and 260, Mattel stated, in pertinent part that "[s]ubject to and without waiving the foregoing general and specific objections, Mattel will produce such responsive, non-privileged documents that are in Mattel's possession, custody or control, if any, that Mattel has been able to locate after a diligent search and reasonable inquiry, to the extent not previously produced." Supp. Zeller Dec., Ex. 4. MGA is entitled to a court order to establish a deadline for production. MGA's motion is granted as to Request Nos. 186-187 and 260.

**d. Documents in Mattel's possession that were exchanged between Bryant and Anne Wang, and between Bryant and MGA (Nos. 270-271)**

In Request Nos. 270-271, MGA seeks production of documents in Mattel's possession that were exchanged between Bryant and Anne Wang, and between Bryant and MGA. Mattel's Second Supplemental Responses confirm that it will produce responsive documents. MGA is entitled to a court order to establish a deadline for completing production. MGA's motion is granted as to Request Nos. 270-271.

**e. Communications and documents referring to communications with various specified individuals concerning Bratz, Bryant's work for MGA, or relating to this litigation, the facts and circumstances giving rise to it, or Bryant's alleged misconduct (Request Nos. 224-249)**

In Request Nos. 224-249, MGA seeks communications with a host of individuals that refer or relate to the Bratz Concept, the First Bratz Dolls or Bryant's work for MGA, or that refer or relate to this litigation, the facts and circumstances giving rise to this litigation, or Bryant's alleged misconduct, and all documents that refer or relate to such communications. For example, Request No. 224 requires production of "[a]ll communications and all documents constituting,

mentioning, describing, discussing, referring or relating to all communications with Anna Rhee that refer or relate to the Bratz concept, the First Bratz dolls or Bryant's work for MGA." Zeller Decl., Ex. 8.

MGA contends that the requested documents are relevant to Mattel's claims that Bryant converted, used, sold, assigned or transferred property that Mattel supposedly owns. Further, MGA contends that the requested documents are relevant to Bryant's defenses based on the statute of limitations, laches, and waiver because the documents could show when Mattel first became aware of Bryant's relationship with MGA. MGA also contends that these Requests are "self-limiting to subject matters of direct relevance to this litigation." MGA's Reply at p.8.

Mattel's Second Supplemental Responses confirm that it will produce responsive documents, with two qualifications. First, Mattel agrees to search for and produce only documents that pertain to matters at issue, and not just because they reference MGA. Mattel's Opposition at p.34. Second, Mattel agrees to produce the communications with the various individuals identified in the Requests, but not all documents referring or relating to all communications. Id.

Request Nos. 224-249 seek information relevant to the claims and defenses in the case. They are limited to communications with certain key individuals (Anna Rhee, Margaret Leahy, Margaret Leahy's husband, Victoria O'Connor, Ramona Prince, Lilly Martinez, Ron Longsdorff, Matt Bosquette, Adrienne Fontanella, Tim Kilpin, Sujata Luther, Alan Kaye, and Veronica Marlowe), as well as limited in subject matter. Documents relating to the communications are also relevant to the claims and defenses in the case, and Mattel has failed to establish that the burden of producing responsive documents outweighs their likely benefit under Rule 26(b)(2), Fed.R.Civ.P. MGA's motion is granted as to Request Nos. 224-249.

**f. Hard drives and backup data for all computers used by Bryant while employed by Mattel (Request No. 268)**

In Request No. 268, MGA seeks "[a]ll hard drives and back-up data, no matter how stored, for all computers used by Bryant while employed by Mattel, to the extent such drives and

back-up data contain data made or accessed by, sent to or received by Bryant." Supp. Zeller Decl., Ex. 4.

Mattel contends that issues regarding Bryant's Mattel computer "have long been settled." Mattel's Opposition at p.16. Mattel explains that Bryant claimed at his deposition that he was "computer illiterate," that he had never created any files on any Mattel computers, and that he did not use them for his design work. Id. Further, Mattel represents that when Bryant requested such hard drives, Mattel told him that it would produce any hard drives for computers used by Bryant while at Mattel that could be located. Id. Mattel asserts that it has yet to identify a computer Bryant has used, and that Bryant and MGA have not offered any meaningful information that would assist Mattel in locating one. Mattel represents that Bryant's computer will be produced if and when it is located.

Mattel's Second Supplemental Responses confirm that Mattel will produce Bryant's computer if and when it is located. MGA's motion is granted as to Request No. 268 to ensure Mattel's compliance if and when Bryant's computer is located.

2. Documents concerning the agreements that Mattel alleges were breached by Bryant and the fiduciary duties of persons employed by Mattel in the same or similar capacity as Bryant

**a. Documents from 1997 to the present relating to Mattel's form "Employee Confidential Information and Inventions Agreement" and "Conflict of Interest Questionnaire," and negotiations with any employee or prospective employee concerning those agreements (Nos. 281-282 and 284-285)**

In Request Nos. 281 and 284, MGA seeks all versions of Mattel's form "Employee Confidential Information and Inventions Agreement" and Mattel's form "Conflict of Interest Questionnaire," and all documents referring or relating to these agreements, including documents related to any negotiations regarding these agreements and Mattel's enforcement of such agreements. In Request Nos. 282 and 285, MGA seeks all documents referring or relating to negotiations regarding these agreements.

MGA contends that the documents it seeks are central to Mattel's claim that Bryant breached the two agreements and Bryant's defenses thereto, including Bryant's contention that

the agreements are unenforceable as contracts of adhesion, unconscionable and violate California law. MGA contends that the manner in which Mattel negotiates, interprets, enforces and applies the terms of the two contracts is highly relevant.

Mattel represents that it has produced all iterations of the two agreements, including examples of each version of the agreements that Mattel has used since 1995. Mattel, however, objects to Request Nos. 281-282 and 284-285 as overbroad to the extent MGA seeks all documents "mentioning, discussing, describing, referring or relating to" such agreements and any and all documents involving negotiations concerning these agreements. Mattel contends that any benefits of producing these additional documents are far outweighed by the cost of production. Mattel further contends that the production is unjustified because Mattel has already produced a Rule 30(b)(6) witness to testify regarding the two agreements. According to Mattel, MGA and Bryant asked Mattel's designee how often the agreements changed, the process, if any, by which an employee negotiated the terms of an agreement, and whether signing the agreement was a condition of employment. In addition, Mattel represents that both MGA and Bryant have questioned several designers and other employees about the circumstances under which each signed his or her agreements and whether or not each understood his or her agreements.

In its reply brief, MGA represents that it offered to narrow Request Nos. 281-282 and 284-285 during the meet and confer to the following categories of documents:

> *All documents relating to any form "Employee Confidential Information and Inventions Agreement" or "Conflict of Interest Questionnaire" that Mattel alleges to exist between Mattel and Bryant;
>
> *All documents relating to any discussions or negotiations between Mattel and anyone regarding the terms and conditions of any version of either of those agreements; and
>
> *All documents relating to any instance in which Mattel has taken any action whatsoever to enforce against anyone the same terms of any such agreement that Mattel alleges Bryant violated.

MGA's Reply at p. 16. Apparently, MGA's motion to compel is directed to only the three subsets of responsive documents described above, and not the Requests as originally written. As narrowed, Request Nos. 281-282 and 284-285 seek documents relevant to the claims and defenses

in the case, which Mattel implicitly conceded by producing various iterations of the two agreements. As narrowed, the Requests are not overbroad or unduly burdensome because they no longer call for production of documents "mentioning, discussing, describing, referring or relating to" the two agreements and any and all documents involving negotiations concerning these agreements. That MGA has already deposed a few witnesses regarding the two agreements does not preclude MGA from obtaining documentary evidence on the same subject. Therefore, MGA's motion is granted as to Request Nos. 281-282 and 284-285, as narrowed by MGA.

**b. Documents created after January 4, 1999, concerning the activities of any Mattel employee in connection with the creation of any property, doll or toy for anyone other than Mattel; Mattel's employment policies/contracts governing the extent to which a part-time or temporary employee may work for himself or other companies while also employed by Mattel (Nos. 262-267)**

In Request Nos. 262-263, MGA seeks all documents created after January 4, 1999 that evidence, relate or refer to any activities of any current or former Mattel employee performed, while such person was employed by Mattel, in connection with the conception, creation, design or development of any intellectual property, doll, or toy done for or at the request of any company, entity, or person other than Mattel. In Request Nos. 264-265, MGA seeks all documents that constitute, describe, mention, refer or relate to Mattel's policy regarding part-time or temporary employment at Mattel. In Request Nos. 266-267, MGA seeks all documents that constitute, describe, mention, refer, or relate to Mattel's policy regarding part-time or temporary employment at Mattel including, without limitation, all documents, agreements, and contracts that describe, discuss, govern, control, regulate, or limit how and to what extent a person employed part-time at Mattel is allowed, or not allowed, to work for himself or herself or other companies or entities, including MGA, while employed by Mattel.

MGA contends that Bryant worked for Mattel on a part-time basis in 1998, and that Request Nos. 262-267 seek relevant documents concerning Mattel's employment policies for part-time and temporary employees, including any restrictions on their abilities to work elsewhere while employed by Mattel. MGA contends that the requested documents are directly relevant to Mattel's breach of contract claims against Bryant and Bryant's defenses thereto, and therefore all

responsive documents should be produced.

Mattel represents that it has produced various iterations of agreements and policies applied to part-time and temporary Mattel employees. Mattel contends, however, that each of the Requests in this category is overbroad to the extent they seek any additional documents. For example, Mattel contends that the Requests are broad enough to encompass documents concerning subjects such as health benefits and vacation leave that have no conceivable bearing on the case. Further, Mattel contends that the burden of searching for all responsive documents is outweighed by the marginal benefits of the responsive documents. In fact, Mattel contends that the requested documents are not relevant at all because Bryant claims to have conceived Bratz after he was a part-time employee. Mattel's Opposition at p.30.

Request Nos. 262 and 263 are overbroad. As written, these requests would potentially require Mattel to review documents relating to all of its many thousands of current and former employees in order to find evidence that an employee conceived, created, designed or developed any intellectual property or doll or toy for at the request of any company or person other than Mattel. Even if Mattel succeeded in finding such documents, the burden and expense of conducting such a search outweigh the likely benefit of the documents. Therefore, MGA's motion is denied as to Request Nos. 262 and 263.

In its reply brief, MGA agrees to narrow the remaining Requests in this category as follows:

> Request No. 264: DOCUMENTS sufficient to identify all iterations of MATTEL'S policy regarding part-time employment at MATTEL.
>
> Request No. 265: DOCUMENTS sufficient to identify all iterations of MATTEL'S policy regarding temporary employment at MATTEL.
>
> Request No. 266: All DOCUMENTS, including agreements and contracts, that describe, discuss, govern, control, regulate or limit how and to what extent a person employed part-time at MATTEL is allowed, or not allowed, to work for him or herself or other companies or entities, including MGA, while employed by MATTEL.
>
> Request No. 267: All DOCUMENTS, including agreements and contracts, that describe, discuss, govern, control, regulate or limit how and to what extent a person employed part-time at MATTEL is allowed, or not allowed, to work for him or herself or other companies or entities, including MGA, while employed by MATTEL.



EXHIBIT 9
PAGE 211

MGA's Reply brief at p. 15. As rewritten, these requests target documents that are relevant to Mattel's breach of contract claims against Bryant and Bryant's defenses thereto. MGA anticipates that Mattel could argue at trial that Bryant conceived of Bratz while he was a part-time employee. The documents MGA now seeks through its narrowed requests are relevant to establish Mattel's policies and contracts for part-time and temporary employment. Nor are the Requests unduly burdensome, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the requested documents in resolving the issues. MGA's motion is granted as to Request Nos. 264-267 as rewritten in MGA's reply brief.

3. Documents concerning Bratz and the purported Mattel property that forms the basis of its claims

**a. Documents concerning Bratz including any documents relating to the similarities or differences between Bratz and any Mattel property or any property created by a Mattel employee that it contends served as a source or origin for any Bratz concept or product (Nos. 259, 261, and 269)**

In Request No. 259, MGA seeks production of all documents that evidence, describe, mention, refer, or relate to the similarity of any artwork created by any Mattel employee, including but not limited to Bryant, prior to October 20, 2000, to Bratz. In Request No. 261, MGA seeks all documents created after January 4, 1999 that evidence, relate or refer to any activities of any current or former Mattel employee performed in connection with the conception, creation, design, or development of Bratz or Bratz intellectual property. In Request No. 269, MGA seeks all documents that constitute, evidence, describe, depict, refer or relate to any artwork or other work product by Mattel that it contends Bryant used in connection with his creation of anything for MGA, including without limitation, Bratz or Bratz intellectual property.

MGA contends that Request Nos. 259, 261, and 269 seek documents that are directly relevant to Mattel's claims that Bryant converted, used, sold, assigned, or transferred property that Mattel claims it owns; damages and causation; and Bryant's defenses, including those based on



EXHIBIT 9
PAGE 212

statute of limitations, laches, waiver, and unclean hands.

Mattel's Second Supplemental Responses confirm that it will produce responsive documents. More specifically, Mattel represents that it will produce the "prior art that lead to Bratz." Mattel's Opposition at p.36. Mattel objects, however, to producing documents that do not constitute "prior art," such as marketing, sales planning, engineering, electronics, and programming of the voices of Mattel's Diva Starz line.

In its reply brief, MGA confirms that it is only seeking documents relating to the original artwork or work product that Mattel claims Bryant copied, and is not seeking all documents relating to the Diva Starz line. With this clarification, MGA's motion is granted as to Request Nos. 259, 261, and 269.

**b. Documents discussing or mentioning Isaac Larian, Paula Treantafelles, or Mercedeh Ward, authored between June 2000 and October 2001 that concern, support, or refute Mattel's contentions in this litigation (Nos. 44-46)**

In Request Nos. 44-46, MGA seeks all documents discussing or mentioning Isaac Larian, Paula Treantafelles, or Mercedeh Ward authored between June 2000 and October 2001. Mr. Larian is the President and CEO of MGA, and Ms. Treantafelles and Ms. Ward are former Mattel employees who went to work for MGA and later helped develop the Bratz line. During the meet and confer process, MGA agreed to limit Request Nos. 44-46 to documents that "concern, support or refute Mattel's contentions in this litigation."

MGA contends that the requested documents are, at the very least, relevant to MGA's statute of limitations and laches defenses. Further, MGA contends that Request Nos. 44-46 are limited in scope to only documents authored between June 2000 and October 2001 and concerning Mattel's contentions in this litigation. MGA therefore seeks an order compelling Mattel to supplement its responses and produce responsive documents.

Mattel acknowledges that MGA offered to limit Request Nos. 44-46 to only documents related to the current litigation, but construes MGA's current motion to compel as seeking compliance with the Requests as originally written. Mattel contends that Request Nos. 44-46, as originally written, are overbroad because there are no limitations on subject matter.

MGA's motion papers make clear that it is not seeking compliance with Request Nos. 44-46 as originally written. Instead, MGA stands by its offer during the meet and confer process to limit the Requests to documents that "concern, support or refute Mattel's contentions in this litigation." MGA's Motion at p. 19. As narrowed by MGA, Request Nos. 44-46 seek documents relevant to the claims and defenses in the case and are limited in subject matter as well as in temporal scope. MGA's motion is granted as to Request Nos. 44-46.

4. Documents concerning specific allegations set forth in Mattel's complaint and demands for related documents

**a. Documents supporting, refuting or evidencing specific allegations set forth in Mattel's complaint (Nos. 296, 302-303, 306-307, and 329-330)**

In these Requests, MGA seeks documents supporting, refuting, or evidencing specific allegations in Mattel's complaint, including, among other things, documents related to (a) Mattel's claims that the Employment Agreement and Conflict Questionnaire are valid, enforceable contracts; (b) Mattel's allegations of damages and harm; and (c) Mattel's allegation that Bryant "used and diverted" Mattel resources and opportunities. MGA also seeks documents depicting the intellectual property allegedly owned by Mattel and relating to ownership of that property.

Mattel's Second Supplemental Responses confirm that it agrees to produce responsive, non-privileged documents. MGA's motion is granted as to Request Nos. 296, 302-303, 306-307, 329-330.

**b. Documents evidencing whether persons who are or were employed by Mattel in the same or similar capacity as Bryant are or were subject to the same duties and responsibilities that Bryant was allegedly subject to, as alleged in Mattel's complaint (Nos. 309, 311, 313, 315, 317, 320, 323)**

In these Requests, MGA seeks all documents evidencing that persons who are or were employed by Mattel in the same or similar capacity as Bryant: hold or held positions of trust and confidence with Mattel (No. 309); had or have access to Mattel's proprietary and confidential

information (No. 311); were or are entrusted with Mattel's proprietary and confidential information (No. 313); supervised or supervise the work of others (No. 315); exercised or exercise discretion in their job assignments and duties (No. 317); worked or work independently in their job assignments and duties (No. 320); and represented or represent Mattel in its dealings with third parties (No. 323).

MGA contends that these Requests are directly relevant to Mattel's allegations in the complaint that Bryant held a position of trust, had access to and was entrusted with Mattel's proprietary and confidential information, supervised the work of others, exercised discretion and worked independently for many of his job assignments and duties, and represented Mattel in its dealings with third parties. Further, MGA contends that documents pertaining to Mattel's employees other than Bryant are likely to lead to admissible evidence relating to whether Mattel ordinarily views employees in Bryant's position as fiduciaries.

Mattel represents that it has already agreed to produce responsive documents insofar as Bryant is concerned. Mattel, however, objects to the Requests as overbroad and unduly burdensome to the extent they require production of documents pertaining to other persons who are or were employed "in the same or similar capacity as Bryant," which Mattel interprets to mean all of its "designers." Mattel represents that in El Segundo, it currently employs over 320 individuals for the Barbie line alone, not including former employees or designers on other dolls or toys. Given the size of Mattel's work force, Mattel contends that the burden of production far outweighs any marginal relevance of the responsive documents.

In its reply brief, MGA contends that Mattel's objections are based upon a strained interpretation of the phrase "same or similar capacity as Bryant." In MGA's view, Bryant was a "low-level, salaried employee" at Mattel. MGA's Reply at p.17. MGA, however, does not offer an alternative definition for persons employed in the "same or similar capacity as Bryant," arguing instead that only Mattel is capable of identifying a narrower group of employees.

MGA's motion is denied as to this last category of Requests. The Requests are overbroad and MGA has not offered to narrow the scope of the Requests to a reasonable number of Mattel

**PROOF OF SERVICE BY E-MAIL**

I, Sandra Chan, not a party to the within action, hereby declare that on September 12, 2007, I served the attached ORDER GRANTING IN PART AND DENYING IN PART MGA'S MOTION TO COMPEL MATTEL TO SUPPLEMENT RESPONSES AND PRODUCE DOCUMENTS RESPONSIVE TO FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS; DENYING REQUEST FOR SANCTIONS in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Michael C. Keats, Esq. | O'Melveny & Myers LLP | mkeats@omm.com |
| Kendall Burr, Esq. | O'Melveny & Myers LLP | kburr@omm.com |
| Melanie Bradley, Esq. | O'Melveny & Myers LLP | mbradley@omm.com |
| Marvin Putnam, Jr., Esq. | O'Melveny & Myers LLP | mputnam@omm.com |
| William Charron, Esq. | O'Melveny & Myers LLP | wcharron@omm.com |
| Marc Feinstein, Esq. | O'Melveny & Myers LLP | mfeinstein@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on September 12, 2007, at San Francisco, California.

Sandra Chan

# EXHIBIT 10

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES – GENERAL

Case No. CV 04-09049 SGL(RNBx) Date: May 27, 2008
Title: CARTER BRYANT -v- MATTEL, INC.

Consolidated With Related Actions:
CASE NO. CV 04-09059 SGL(RNBx): MATTEL, INC., v. CARTER BRYANT,
CASE NO. CV 05-02727 SGL (RNBx): MGA ENTERTAINMENT, INC., v. MATTEL, INC.,

PRESENT: HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

Gina Guzman
Courtroom Deputy Clerk

ATTORNEYS PRESENT FOR CARTER BRYANT:

None Present

ATTORNEYS PRESENT FOR MATTEL:

None Present

ATTORNEYS PRESENT FOR MGA AND ISAAC LARIAN:

None Present

PROCEEDINGS: **ORDER RE STATUTE OF LIMITATIONS DEFENSE**

Each of the remaining parties to this action, Mattel and MGA, seek summary judgment on the issue of statute of limitations. Crucial to resolution of this issue, is application of California's "discovery rule," which can delay the accrual of a claim. Both parties have offered evidence in support of their positions.[1] For its part, Mattel contends that its claims against Carter Bryant arose on November 24, 2003, and that its claims against the MGA entities, including MGA CEO Isaac Larian, arose on November 4, 2004, the date of Carter Bryant's deposition, at which he testified regarding MGA and Larian's involvement in his actions.

---

[1] Although he is no longer a party, the Court discusses at length the timeliness of the claims asserted against Carter Bryant because it is relevant to the Court's relation-back analysis of the claims asserted against MGA.



5/27

EXHIBIT 10
PAGE 218

At oral argument and in its briefs, MGA argues at length that Mattel's claims against Bryant accrued some time shortly after Bryant left Mattel's employ in October, 2000. In support of this argument, MGA offered evidence that Mattel has always believed that it took nine months to bring a doll through the stages of development and to market. From that knowledge, in MGA's view, the sudden appearance of the Bratz dolls at a toy fair in Tokyo in January, 2001, should have aroused their suspicions.

MGA cites to the deposition of Bryant's co-worker, who had suspicions at the time Bryant resigned that Bryant was going to work for a competitor based on her subjective belief that Bryant would not pursue any other vocation other than doll designer.

MGA contends that Mattel could have looked at Bryant's phone records and determined that he had called MGA a number of times during the month pre-dating his resignation.

There is evidence that one of Bryant's co-workers believed it was "common knowledge," sometime in 2001, that Bryant probably designed Bratz.

The undisputed facts establish that in August, 2002, an anonymous letter was sent to Mattel's CEO stating that Bryant had designed Bratz. This letter is the first indication that Bryant may have worked on Bratz during the period of his employment with Mattel. See Zeller Decl. Ex. 63 ("While he was working with Mattel and working to create these dolls he worked out a deal with MGA that let him collect a large sum of money each year from MGA in exchange for his secrecy about the dolls and the fact that they are rightly Mattel dolls.").

The undisputed facts also establish that on July 18, 2003, the Wall Street Journal published an article entitled "Dolled Up: To Lure Older Girls, Mattel Brings In Hip-Hop Crowd." In that article, MGA's CEO Isaac Larian is attributed with a statement that Carter Bryant was the creator of Bratz. The article states:

> Isaac Larian, chief executive of MGA, says he had never heard of a project similar to the Bratz at Mattel. He says he chose Mr. Bryant's idea for Bryant over several others after holding a sort of fashion-doll design contest in late 1999.

Zeller Decl. Ex. 118.

At the close of the second hearing, held on May 19, 2008, MGA offered, for the first time, evidence in the form of a time line that showed that a "claim" from a lawsuit filed in Hong Kong by MGA was received by Mattel on September 23, 2003. See Bogorad Supp. Decl. Ex. 145. A copy of court documents from that litigation shows that MGA claimed ownership of Bratz fashion dolls and that, more specifically, at issue were "17 design drawings of various fashion dolls between the years 1998 and 2000." Id. at Ex. 143. Exhibit 143 is a ten-page document captioned as "STATEMENT OF CLAIM" and appears to the Court to be, under Hong Kong law, the equivalent of a complaint. MGA's ownership to the 17 drawings referenced in the "STATEMENT OF CLAIM"

was based on Bryant's creation of the design drawings during a time period that includes his employment at Mattel. Id.

Also at this time, MGA offered a letter, dated October 17, 2003, from Mattel's Hong Kong counsel to Mattel, that discusses the propriety of providing to Mattel certain documents relating to the City World litigation. Within this letter, certain key details of the "STATEMENT OF CLAIM" were referenced. See Supp. Bogorad Ex. 146 ("One of the exhibits referred to in such Affirmation was a set of coloured drawings described as '17 initial concept and design drawings of the Bratz dolls made by Mr. Carter Bryant in the year 2000.'").

After being given an opportunity to respond to this last-minute evidence, Mattel offered as evidence the documents it received on September 23, 2003, and that evidence did not include the document marked as Ex. 143. See Supp. Moore Decl. Ex. A. The documents Mattel received do not include any reference to Carter Bryant or the dates of creation of the 17 drawings. See id. Instead, it consists of a copy of a "writ of summons" in that same litigation.

In responding to this evidence, counsel for MGA first incorrectly contended that the declaration of in-house counsel, Michael Moore, did not deny receiving a copy of the City World claim setting forth this key language. Compare Reply at 1 ("**Mr. Moore, the only witness offered by Mattel, does *not* deny that Mattel took possession of a copy of the City World claim on or about September 23, 2003**.") (emphasis in the original) with Supp. Moore Decl. ¶ 3 (attaching as Exhibit A all documents received from Mattel's Hong Kong counsel on September 23, 2003; noting that public access to court files in Hong Kong is limited; and verifying that the materials attached as Exhibit A (which does not include the key language regarding Carter Bryant's creation of Bratz drawings) "were the only ones relating to MGA's litigation that Mattel's Hong Kong counsel were allowed to obtain from the Hong Kong court files").

More disturbingly, however, counsel for MGA next lobbed unsubstantiated assaults on Mr. Moore's truthfulness. Counsel states that the documents "appear to have been doctored or manipulated in some fashion." Reply at 2. Counsel does so because the fax itself has an anomalous pagination in the fax header line wherein the first ten pages are numbered "01, 02 . . . 10," and the numbers thereafter are numbered "11/46, 12/46 . . . 46/46." Supp. Moore Ex. A.

This Court has indicated on a number of occasions, most strikingly in connection with its consideration of Mattel's motion to disqualify counsel for MGA, that it will not countenance unsubstantiated dispersions cast upon opposing counsel. Where there is ***evidence*** of unethical behavior, the Court expects to be made aware of that evidence; where, however, there is mere ***speculation*** of such behavior, no legitimate purpose is served by its airing.

Nevertheless, focusing on the additional evidence offered by MGA on May 19, 2008, the time line produced in connection with the Simpson-Taylor deposition makes reference to a City World "claim" that was received by Mattel on September 23, 2003. Although this time line stops short of acknowledging that the document entitled "STATEMENT OF CLAIM" was received in

September, it is nevertheless sufficient to controvert Moore's declaration regarding whether the "STATEMENT OF CLAIM" was in fact received on this date. Moreover, the October 17, 2003, letter raises an inference regarding the full scope of Mattel's pre-November 23, 2003, knowledge of the contents of the "STATEMENT OF CLAIM."

It is uncontroverted that Mattel first received a copy of the Bryant-MGA contract, the effective date of which pre-dated the effective date of Bryant's resignation from Mattel, on November 24, 2003.

Where a plaintiff advances a state-law claim under California law, federal courts apply the California "discovery rule" to determine whether the state-law claim is time-barred. See, e.g., Orkin v. Taylor, 487 F.3d 734, 741 (9th Cir. 2007).

The Court's analysis begins with the unremarkable proposition that "[a] plaintiff must bring a claim within the limitations period after accrual of the cause of action." Fox v. Ethicon Endo-Surgery, Inc., 35 Cal.4th 797, 806 (Cal. 2005) (citation omitted). To apply this unremarkable proposition, however, the Court must determine what the California Supreme Court means by "accrual of the cause of action."

In that regard, the California Supreme Court has stated that, "[g]enerally speaking, a cause of action accrues at the time when the cause of action ***is complete with all of its elements***," id. at 807 (emphasis added) (citation omitted), a phrase which itself must be expounded upon further to ascertain its meaning. When applying the discovery rule, those "elements" are not "specific legal element[s] of a particular cause of action"; rather, they are the "'generic' elements of wrongdoing, causation, and harm." Id. (citation omitted).

The definition of those terms gives a more comprehensive understanding to the California Supreme Court's statement that "the 'discovery rule' . . . postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." Id. (citation omitted). In turn, "[a] plaintiff has reason to discover a cause of action when he or she has reason at least to suspect a factual basis for its elements." Id. (internal quotation marks and citation omitted). Further refined, where a plaintiff has ***knowledge*** of at least one of the three generic elements, and ***suspicion*** of the remaining generic elements, the claim has accrued and the limitations period has begun to run. Id. (citation omitted).

This rule is designed to require plaintiffs to diligently investigate their potential claims. See id. at 808. To that end, in the context of a personal injury action, the California Supreme Court has stated that "plaintiffs are required to conduct a reasonable investigation after becoming aware of an injury, and are charged with knowledge of the information that would have been revealed by such an investigation." Id. Of course, this statement must itself be viewed with the definition of "injury" the California Supreme Court considered: "At common law, the term 'injury,' as used in determining the date of accrual of a cause of action, means both a person's physical condition and its negligent cause. . . . Thus, physical injury alone is often insufficient to trigger the statute of limitations." Id. at 808 n.2 (internal quotation marks and citation omitted).

This requirement of diligence, stated otherwise, prohibits California plaintiffs from passively waiting for the facts supporting their claim to find them and places on them an affirmative requirement to investigate:

> Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, she must decide whether to file suit or sit on her rights. So long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her.

Jolly v. Eli Lilly & Co., 44 Cal.3d 1103, 1111 (Cal.1988).

The Jolly court discussed two examples in explaining this standard. First, it cited to Miller v. Bechtel Corp., 33 Cal.3d 868, 874 (Cal.1983), which held time barred the fraud claim of a plaintiff who had suspicions that the value of her husband's stock was understated at the time of their dissolution agreement, but who failed to assert her claim until years later when the stock was sold. Id. In that case, the plaintiff's lawyer sought information, both before the dissolution and within a few months thereafter, regarding the method by which the stock was valued. Id. at 875. When the response was not forthcoming, the lawyer chose not to pursue this inquiry further, and thus plaintiff was charged with knowledge of the facts the investigation would have uncovered – that the stock was valued by the price attributed to it in the shareholders' agreement rather than by any objective valuation. Id.

Second, the Jolly court cited to Gray v. Reeves, 76 Cal.App.3d 567 (Cal. App.1977), which held that a plaintiff's claim based on his use of a prescription drug arose when the plaintiff understood the nature of his injury (deterioration of the hip socket) and the probable cause thereof (the use of the prescription drug prednisone) as well as the identity of the prescribing doctor and the drug's manufacturer.

Although the discovery rule has been largely developed in tort cases, the rule has also been applied in cases involving contract claims. See e.g., April Enterprises, Inc. v. KTTV, 147 Cal.App.3d 805, 832 (1983) ("Specifically, we hold the discovery rule may be applied to breaches which can be, and are, committed in secret and, moreover, where the harm flowing from those breaches will not be reasonably discoverable by plaintiffs until a future time."); Intermedics, Inc. v. Ventritex, Inc., 775 F.Supp. 1258, 1266-67 (N.D. Cal. 1991).

Thus, California's discovery rule is easily understood in the abstract; moreover, it is often easily applied in particular factual situations. Here, however, this Court's application of the rule in this case is not so clear cut, and the Court must consider the premises underlying the parties' respective analysis of this issue.

In substance, MGA contends that Mattel was on notice as early as February, 2001, of a potential claim that Carter Bryant breached the confidentiality provision of his contract by borrowing from or plagiarizing certain non-public Mattel projects. This date coincides with the display of the Bratz dolls at a New York Toy Fair and "speculation in the media started about

alleged similarities between the BRATZ and Mattel's internal projects." MGA Motion at 18. Alternatively, MGA posits March 15, 2002, the beginning date of an internal Mattel investigation into MGA and Larian's involvement in Bryant's creation and development of Bratz, as the date Mattel's current claims accrued.

Mattel, on the other hand, contends that MGA is essentially arguing that a claim Mattel chose not to bring – that Bratz infringed on the Mattel projects of Toon Teens and Diva Starz – is time barred. Mattel points out that it has previously disavowed, and that it continues to disavow, any intent to assert such a claim. Rather, Mattel contends that it is bringing a different claim, a claim that Mattel has rights to Bratz pursuant to the Inventions Agreement based on Bryant's actions during the period of his employment with Mattel.

In determining, under California law, which of the parties' diametrically opposed positions represent the better approach, the Court is guided by the California Supreme Court case cited above, Fox v. Ethicon Endo-Surgery, Inc., 35 Cal.4th 797, 806 (Cal. 2005). In that case, a plaintiff, suffering from complications following gastric bypass surgery, sued for medical malpractice. Id. at 802. During the course of discovery, she learned, through the testimony provided at the deposition of her surgeon, that she had a potential claim against the manufacturer of a surgical stapler. Id. at 804. Specifically, the plaintiff's surgeon testified that he had found on previous occasions that the particular stapler had caused post-surgery leaks. Id. When the plaintiff amended the complaint to assert a products liability claim, the trial court, on statute of limitations grounds, sustained a demmurrer without leave to amend, reasoning that "when a plaintiff sues based on knowledge or suspicion of negligence, . . . the statute of limitations begins to run as to all defendants, including manufacturers possibly liable under products liability theories." Id.

The Court of Appeal reversed, and the California Supreme Court affirmed the reversal. Id. at 812, 816. In doing so, the California Supreme Court rejected, as inconsistent with its precedent, the so-called "the Bristol-Myers Squibb rule that all claims arising from an injury accrue simultaneously, even if based upon distinct types of wrongdoing, is inconsistent with the generic elements approach . . . . " Id. at 815.

From this discussion, a parallel begins to emerge that MGA's position is like that of the demurring defendant who seeks to dismiss a products liability claim on the basis of plaintiff's discovery of a different claim of medical malpractice, and Mattel's position is like that of the plaintiff who seeks to assert the that products liability claim. In a sense, however, this analogy goes nowhere, as MGA's position is that the claim Mattel asserts in the current action is not different from the potential claim for which it was on notice of in 2001. After all, both would be based on breach of contract and/or copyright claims, both would involve the same defendants, and both would result in the same type of injury.

However, the Fox Court's elaboration on the rule it enunciates convinces the Court that Mattel's position is the stronger one. After discussing the application of its rule in the more narrow situation presented by the overlap of medical malpractice and products liability claims at issue in the case before it, the Fox Court explained:

Bryant accrued: The July 18, 2003, Wall Street Journal article; the September 23, 2003, date of receipt of the City World "claim"; the October 17, 2003, date of counsel's letter to Mattel regarding the City World litigation; or the November 24, 2003, date of receipt of the MGA-Bryant agreement that pre-dated Bryant's resignation of his employment.[3]

The accrual of a copyright claim, as the parties recognize, approximates the state-law standard discussed herein. See Polar Bear Productions, Inc. v. Timex Corp., 384 F.3d 700, 706 (9th Cir. 2004) ("Thus, . . . the statute of limitations does not prohibit recovery of damages incurred more than three years prior to the filing of suit if the copyright plaintiff was unaware of the infringement, and that lack of knowledge was reasonable under the circumstances."). Accordingly, the Court makes the same conclusion regarding the accrual date of Mattel's copyright claim against Carter Bryant as it does regarding the accrual date of Bryant's state-law claims.

As stated earlier, although Bryant is no longer a party to this action, the parties recognize, as does the Court, that the timeliness of the claims asserted against Carter Bryant is relevant because of the potential that Mattel's claims against the MGA entities and Isaac Larian may, pursuant to Fed. R. Civ. P. 15(c), relate back to those claims. Mattel embraces the concept of relation back; MGA rejects it.

Although such distinction has not been particularly important at other points in this litigation, the Court has referred to the MGA entities and Isaac Larian collectively as MGA. More specifically, as to Phase 1, there are two separate MGA entities: MGA Entertainment, Inc. and MGA Entertainment HK Limited. There is also MGA's CEO, Isaac Larian. This distinction is important to the Court's analysis of relation back.

MGA Entertainment, Inc., but not Isaac Larian or the other MGA entity, intervened in this action on December 7, 2004. Therefore, based on the status of MGA Entertainment, Inc., as a party, the standard for whether the claims relate back differs from that governing the relation back of claims against MGA Entertainment HK Limited. See infra. As this Court has noted before, the Phase 1 claims against MGA sought to be asserted by Mattel on November 20, 2006, which arise out of the same factual allegations as do the claims asserted by Mattel against Carter Bryant on April 27, 2004, relate back to the date that complaint was filed. See Court's Jan. 12, 2007, Order at 13-15. The Court does not revisit that issue now.

MGA argues that "some courts have dis-allowed 'relation back' of claims against intervening *defendants*." MGA Opp. at 25 n.21 (emphasis in the original). However, in support of this argument, MGA cites a two-page Texas appellate court decision which does not cite to or interpret Fed. R. Civ. P. 15(c), Davis v. Outdoor Equip. Co., 551 S.W.3d 72, 73 (Tex. Ct. App. 1977), which the Court finds unpersuasive.

As to the new parties sought to be added on November 20, 2006 (MGA Entertainment HK

---

[3] The analysis is slightly different for the conversion claim. See infra at 9-10.

Limited and Isaac Larian), MGA challenges the timeliness of the amendment to add these parties based on whether their identities were known to Mattel at an earlier date. The Court has already held that the claims against them relate back to the April, 2004, complaint. See Court's Jan. 12, 2007, Order at 15-16 n.5. The Court will not revisit that issue either.

The Court rejects the proposition, however, that the claims against both MGA entities did not arise until the date of Carter Bryant's deposition. Whatever the date on which the claims against Carter Bryant arose is ultimately found to be, the August 2002 anonymous letter should have given Mattel a suspicion of that MGA Entertainment, Inc., participated in any wrongdoing by Carter Bryant. See Zeller Decl. Ex. 63 (alleging that Carter Bryant "worked out a deal with MGA that let him collect a large sum of money each year from MGA in exchange for his secrecy about the dolls").

The same is not true as to MGA Entertainment HK Limited and as to Isaac Larian, whom the anonymous letter did not implicate. Therefore, the claims against these defendants arose no earlier than November 4, 2004.

Intentional interference with contractual relations is subject to a two-year statute of limitations. MGA contends that the claim accrues upon the breach of contract, and therefore argues that the claim was untimely before it was asserted against Carter Bryant. They make a similar argument regarding Mattel's conversion claim, which carries with it a three-year statute of limitations.

However, the statute of limitations for breach of contract is tolled during a period of fraudulent concealment. Gryczman v. 4550 Pico Partners, Ltd., 107 Cal.App.4th 1, 5 (2003). The rationale for such tolling easily extends to intentional interference with contractual relations claim, which includes the element of a breach of a contract. The limitations period is likewise tolled during a period of fraudulent concealment as to a conversion claim. AmerUS Life Ins. Co. v. Bank of America, 143 Cal.App.4th 631, 639 (2006) ("To the extent our courts have recognized a 'discovery rule' exception to toll the statute, it has only been when the defendant in a conversion action fraudulently conceals the relevant facts or where the defendant fails to disclose such facts in violation of his or her fiduciary duty to the plaintiff.") Mattel has raised a triable issue of fact as to whether the evidence of the breach and the tortious interference thereof was fraudulently concealed from them before the July 18, 2003, Wall Street Journal article.

The Court will permit further briefing from the parties on the limited issue of what further conclusions regarding the timeliness of each claim should be drawn as a result of this Order. The parties' simultaneous briefs shall be limited to seven pages in length, and shall not re-argue any point upon which the Court has ruled in this Order or its previous two summary judgment Orders. The briefs shall be e-filed no later than 8:30 a.m., Thursday, May 29, 2008, and a courtesy copy must be provided to chambers at the same time. The parties shall also file, as exhibits thereto, their revised proposed special interrogatories on the issue of statute of limitations.

**IT IS SO ORDERED.**