# EXHIBIT 11

1
2
3
4
5
6
7
8

9       UNITED STATES DISTRICT COURT

10      CENTRAL DISTRICT OF CALIFORNIA

11      EASTERN DIVISION

| | |
|---|---|
| 12  CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| 13           Plaintiff, | Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727 |
| 14      vs. | |
| 15  MATTEL, INC., a Delaware<br>corporation, | **COURT'S FINAL PRE-TRIAL<br>CONFERENCE ORDER FOR<br>PHASE 1 TRIAL** |
| 16           Defendant. | |
| 17 | |
| 18  AND CONSOLIDATED ACTIONS | |

19
20
21
22
23
24
25
26
27
28

EXHIBIT ___ //___
PAGE ___ **227**

1          Following pretrial proceedings, pursuant to Federal Rule of Civil

2 Procedure 16 and Local Rule 16-1 et seq., and in accordance with the Court's

3 Scheduling Order entered February 22, 2007, IT IS ORDERED:

4

5 **I.**

6 **PARTIES**

7          For purposes of this Phase 1 trial, the parties are:

8          (a)    Plaintiff and Counter-Defendant Mattel, Inc. ("Mattel");

9          (b)    Defendant and Counter-Defendant MGA Entertainment, Inc.

10 ("MGA");

11          (c)    Defendant and Counter-Defendant Isaac Larian;

12          (d)    Defendant and Counter-Defendant MGA Entertainment (HK)

13 Limited ("MGA HK").

14          Each of these parties has been served and has appeared. For purposes

15 of this Phase 1 trial, and the claims and defenses to be tried therein, no party other

16 than those identified above has asserted a claim, been served, or asserted any

17 defense. Because the Court has bifurcated these consolidated cases, the Court will

18 not at this point dismiss any other party, including any Doe defendants.

19          In addition, as a result of the confidential settlement between Mattel

20 and Carter Bryant, Carter Bryant is no longer a party to this case, although Carter

21 Bryant remains bound by all past Orders of this Court and will be bound by any

22 injunctive, declaratory or other non-monetary relief relating to Bratz that the Court

23 enters in the future against the MGA parties.

24          The pleadings that raise the issues in Phase 1 are:

25          (a)    Complaint filed by Mattel, Inc. (Case No. BC314398) on April

26 27, 2004 in the Superior Court of the State of California for the County of Los

27 Angeles (the "Bryant Case");

28

EXHIBIT _11_

PAGE _228_

1        (b)    Answer to Plaintiff's Unverified Complaint filed by Carter
2  Bryant on May 14, 2004;

3        (c)    Defendant/Cross-Complainant Carter Bryant's Cross-Complaint
4  for (1) Unfair Competition; (2) Rescission; (3) Declaratory Relief; and (4) Fraud,
5  filed by Bryant on September 8, 2004 in the Superior Court of the State of
6  California for the County of Los Angeles;

7        (d)    Notice to Federal Court of Removal of Civil Action from State
8  Court Pursuant to 28 U.S.C. Section 1332(a)(1) and 1331, filed by defendant Carter
9  Bryant on November 2, 2004.  That notice removed the case to federal court on
10  November 2, 2004, where it was assigned Case No. 04-9059;

11        (e)    Stipulation Permitting MGA to Intervene as a Party to This
12  Action and Order, dated December 7, 2004, and MGA's Answer in Intervention;

13        (f)    Complaint filed by MGA Entertainment, Inc. (Case No. CV 05-
14  2727 SGL (RNBx)) on April 13, 2005 in the District Court of the Central District of
15  California (the "MGA Case"), as limited by the Court's Order dated August 25,
16  2005, striking allegations regarding the Brawer litigation;

17        (g)    Second Amended Answer and Counterclaims filed by Mattel,
18  Case No. CV 04-9059 SGL (RNBx) on July 12, 2007 in the District Court of the
19  Central District of California;

20        (h)    Amended Answer and Affirmative Defenses of MGA
21  Entertainment Inc., MGA Entertainment (HK) Limited and MGAE de Mexico
22  S.R.L. de C.V. to Mattel, Inc.'s Second Amended Answer and Counterclaims filed
23  by defendants MGA, MGA HK, and MGA Mexico (collectively, the "MGA
24  Defendants") on September 19, 2007 in the District Court of the Central District of
25  California;

26        (i)    Isaac Larian's Amended Answer and Affirmative Defenses to
27  Mattel, Inc.'s Second Amended Answer and Counterclaims filed by Larian on
28  November 8, 2007 in the District Court of the Central District of California.

1          By Order dated June 19, 2006, the Court consolidated the Bryant case

2  and the MGA case with Bryant v. Mattel, Inc., Case No. 04-9049. The matter shall

3  hereafter be referred to as Mattel, Inc., v. MGA Entertainment, Inc., et al., Case No.

4  04-9049-SGL(RNBx).

5          The MGA Parties may file a motion seeking a determination of good

6  faith settlement pursuant to CCP § 877.6. To the extent that Mattel continues to list

7  pleadings that address claims asserted by or against Bryant – and fail to exclude

8  them specifically from the list – the MGA Parties object to Mattel's list of pleadings.

9  Mattel's claims against the MGA parties have been modified by the terms of the

10  Court's Orders re the parties' motions for partial summary judgment dated April 25,

11  2008, May 22, 2008, May 27, 2008, and June 2, 2008.

12

13                        **II.**

14      **ABANDONED CLAIMS, COUNTERCLAIMS AND DEFENSES**

15          The following claims, counter-claims, or defenses have been dismissed

16  or abandoned:

17          By Order dated July 17, 2006, the Court dismissed Defendant/Cross-

18  Complainant Carter Bryant's Cross-Complaint for (1) Unfair Competition; (2)

19  Rescission; (3) Declaratory Relief; and (4) Fraud; and Bryant's Complaint for

20  Declaratory Relief of Copyright Non-Infringement. Bryant was given leave to

21  amend his Complaint and Cross-Complaint, but elected not to do so and the

22  dismissal became final.

23          Bryant's Ninth Affirmative Defense: Failure of Contract was withdrawn

24  by Bryant, by stipulation on October 5, 2007;

25          Bryant's Tenth Affirmative Defense: Duress/Unconscionability was

26  withdrawn by Bryant, by stipulation on October 5, 2007;

27          Bryant's Eleventh Affirmative Defense: Alleged Duties Contrary to

28  Law was withdrawn by Bryant, by stipulation on October 5, 2007;

EXHIBIT //
PAGE 230

1         MGA Defendants' Sixteenth Affirmative Defense: Innocent Intent was

2  withdrawn by MGA Entertainment, Inc., by stipulation on September 5, 2007;

3         Larian's Sixteenth Affirmative Defense: Innocent Intent was

4  withdrawn by MGA Entertainment, Inc., by stipulation on September 5, 2007;

5         MGA Defendants' Ninth Affirmative Defense: Res Judicata was

6  withdrawn by MGA Entertainment, Inc., by stipulation on September 5, 2007;

7         Larian's Ninth Affirmative Defense: Res Judicata was withdrawn by

8  MGA Entertainment, Inc., by stipulation on September 5, 2007;

9         MGA Defendants' Twelfth Affirmative Defense: Lack of Ownership

10  was withdrawn by MGA Entertainment, Inc., by stipulation on September 5, 2007;

11         Unclean Hands Affirmative Defense was withdrawn with respect to

12  Phase 1 claims by the MGA Defendants by Notice on February 15, 2008;

13         Unclean Hands Affirmative Defense was limited by Carter Bryant as to

14  Phase 1 issues by letter dated February 27, 2008.

15         By Order dated April 25, 2008, the Court granted partial summary

16  judgment in favor of Mattel. In particular, the Court ruled that the Employee

17  Confidential Information and Inventions Agreement that Carter Bryant entered into

18  as a Mattel designer is a valid and enforceable contract. It further ruled that, under

19  the Inventions Agreement, Mattel owns "any Bratz-related 'inventions' (including

20  any designs, improvements, ideas, concepts and copyrightable subject matter)" that

21  Carter Bryant "created during the period of his employment with Mattel." The

22  Court found that it was irrelevant whether Bryant performed such work on Bratz

23  during his own time.

24         In its Order granting Mattel partial summary judgment, the Court

25  further ruled that Carter Bryant owed Mattel a duty of loyalty and that Bryant

26  "breached this duty by entering into a contract with Mattel's competitor, while still

27  employed by Mattel, to produce a line of fashion dolls to be marketed in direct

28

EXHIBIT _/_

1  competition with Mattel's products." The Court rejected defendants' claim that such
2  activities were mere "preparations to compete" with Mattel.

3        By virtue of its April 25, 2008, and May 21, 2008, Orders granting
4  Mattel partial summary judgment, the Court ruled that Carter Bryant owed a
5  fiduciary duty to Mattel, but held that there is a triable issue of fact as to Bryant's
6  breach of that duty.

7        Also by Order dated April 25, 2008, the Court granted partial summary
8  judgment in favor of Bryant and the MGA Defendants on Mattel's claims for (1)
9  tortious interference with contractual relations, but only "to the extent that it is based
10  on Mattel's rights to Bratz," such that it remains in the case "as to Mattel's claims for
11  breach of fiduciary duty" (Order at 2); (2) conversion, but only to the extent it is
12  based on conversion of ideas, such that it remains in the case "to the extent it seeks
13  the return of tangible things" (*id.* at 3); (3) common law unfair competition (*id.* at 7);
14  and (4) unjust enrichment (*id.*).

15        By virtue of its Orders dated April 25, 2008, May 22, 2008, and its
16  clarification on May 23, 2008, the Court further ruled that the MGA parties were
17  entitled to partial summary judgment on Mattel's statutory unfair competition
18  claims, except that Mattel's statutory unfair competition claim presented triable
19  issues of fact relating to "whether MGA tortiously interfered with Bryant and
20  Mattel's contractual relationship and whether MGA engaged in commercial
21  bribery."

22        In its orders regarding the statute of limitations affirmative defense,
23  dated May 27, 2008, and June 2, 2008, the Court made rulings regarding the accrual
24  dates of various claims asserted by Mattel. As to defendant MGA only, the Court
25  ruled that Mattel's state-law claims other than tortious interference with contractual
26  relations claim and the conversion claim accrued no earlier than July 18, 2003, and
27  no later than November 23, 2003, but that triable issues of fact precluded a
28  determination as to the exact accrual date.

EXHIBIT ___//

1    As to defendants Isaac Larian and MGA HK, the Court ruled that these

2  state-law claims arose no earlier than the date of Carter Bryant's deposition,

3  November 4, 2004.

4    In these orders, regarding the tortious interference with contractual

5  relations claim and the conversion claim as to all defendants, the Court ruled that the

6  discovery rule was inapplicable to these claims, and that they were therefore time

7  barred unless Mattel establishes a period of fraudulent concealment of sufficient

8  duration.

9    Additionally, the Court ruled that the copyright claim arose no earlier

10  than November 23, 2003.

11    Finally, the Court ruled that the new claims asserted on November 20,

12  2006, the Court ruled that all claims (except the copyright claim, upon which the

13  Court found it unnecessary to rule) related back to the filing of Mattel's complaint

14  against Carter Bryant in April, 2004.

15    Finally, pursuant to the confidential settlement between Mattel and

16  Carter Bryant and pursuant to the Stipulation entered as part of that settlement, all

17  claims, counterclaims and defenses as between Mattel and Carter Bryant have been

18  dismissed, although Carter Bryant remains bound by all past Orders of this Court

19  and will be bound by any injunctive, declaratory or other non-monetary relief

20  relating to Bratz that the Court enters in the future against the MGA parties.

21

22                              **III.**

23                **JURISDICTION AND VENUE**

24    Federal jurisdiction and venue are invoked upon the following grounds:

25    This Court has diversity jurisdiction over the claims asserted in <u>Mattel</u>

26  <u>v. Bryant</u> pursuant to 28 U.S.C. § 1332, as determined by the Ninth Circuit in <u>Mattel</u>

27

28

EXHIBIT ____11____

PAGE ____233____

-6-          Case No. CV 04-9049 SGL (RNBx)
                FINAL PRE TRIAL CONFERENCE ORDER

07209/2474226.14

1 | v. Bryant, Inc., 446 F.3d 1011, 1013 (9th Cir. 2006).  This Court has supplemental

2 | jurisdiction over Mattel's state law claims in that case pursuant to 28 U.S.C. § 1367.

3 | This Court has federal question jurisdiction over MGA's claims in

4 | MGA Entertainment, Inc. v. Mattel, Inc. pursuant to 15 U.S.C. §§ 1116 and §1121,

5 | 28 U.S.C. §§ 1331, 1338(a), and supplemental subject matter jurisdiction over

6 | MGA's state law claims pursuant to 28 U.S.C. § 1367.

7 | This Court has federal question jurisdiction over Mattel's counterclaims

8 | in MGA Entertainment, Inc. v. Mattel, Inc. pursuant to 28 U.S.C. §§ 1331, 1338(a),

9 | 17 U.S.C. §§ 101 et seq., and 18 U.S.C. § 1964(c).  This court has supplemental

10 | jurisdiction over Mattel's state law counterclaims pursuant to 28 U.S.C. § 1367.

11 | Venue in this Court for MGA Entertainment, Inc. v. Mattel, Inc. is

12 | alleged to be proper pursuant to 28 U.S.C. §§ 1391(b) - (d), 1391(f) and 1400(a) and

13 | 18 U.S.C. § 1965.

14 | **IV.**

15 | **TRIAL ESTIMATE**

16 | The parties understand that the Court has directed each side to complete

17 | the presentation of evidence in Phase 1, including the examination and cross-

18 | examination of witnesses, in 60 hours.  The parties further understand that the 60

19 | hours shall not apply to argument, jury selection, opening statements, or closing

20 | arguments.

21 | Consistent with the express language of the Court's April 7, 2008 Order

22 | [Docket No. 2998], the 60-hour limit may be enlarged "if extraordinary

23 | circumstances warrant such relief."  Apr. 7, 2008 Order, at 2.

24 |

25 | **V.**

26 | **TYPE OF TRIAL**

EXHIBIT __11__
PAGE __234__

27 | The trial is to be a jury trial, except for issues which are not properly

28 | tried to jury.  Pursuant to the Court's Scheduling Order, the parties have already

1 | delivered to the Court (a) a set of Joint Proposed Jury Instructions and (b) a set of
2 | disputed Jury Instructions, along with reasons supporting and opposing each
3 | disputed instruction, and (c) at the Pre-Trial Conference brief proposed voir dire
4 | questions for the jury. The parties shall revise and supplement the jury instructions
5 | and verdict forms on or before June 6, 2008, in light of the Court's May 22 and May
6 | 23 Orders relating to the parties' respective motions for partial summary judgment
7 | and motions *in limine*, as well as the Court's May 22, 2008 Order on the MGA
8 | Parties' motion for reconsideration.

9 |       The Court intends to rule upon the MGA parties' equitable affirmative
10 | defenses at the close of the Phase 1 trial, but will allow evidence as to these defenses
11 | to be presented to the jury. The Court may have the jury answer special
12 | interrogatories as to certain of these equitable defenses so as to establish the
13 | requisite factual findings for the Court to rule upon such defenses.

14 |

15 | **VI.**

16 | **STIPULATED FACTS**

17 |     1.    The following facts have been stipulated, and shall be deemed
18 | established:[1]

19 | **Parties**

20 |     1.    Mattel, Inc. is a corporation formed under the laws of the State of
21 |     Delaware with its headquarters in El Segundo, California.

22 |

23 |   [1]  The parties to this action do not understand the rules to require the recitation
24 | of admissions in the Pre-Trial Conference Order for those admissions to be
25 | introduced at trial. Therefore, admissions are not included herein.
    The parties' lists of facts herein are not exhaustive. The parties reserve the right
26 | to introduce additional evidence in support of their claims — or in opposition to
27 | affirmative defenses — at trial. In addition, the parties intend to introduce expert
evidence not listed below in support of its claims.

28 |

2.    MGA Entertainment, Inc. is a privately held California corporation.

3.    MGA Entertainment (HK) Limited, a Hong Kong company, and MGAE de Mexico, S.R.L. de C.V., a Mexico corporation, are wholly owned subsidiaries of MGA Entertainment, Inc.

4.    Isaac Larian, an individual, is the CEO and majority shareholder of MGA Entertainment, Inc. and is a resident of California.

**Bryant's Employment at Mattel**

5.    Carter Bryant first worked for Mattel in the mainline Barbie group from September 1995 to April 1998.

6.    Bryant signed a document titled "Employee Confidential Information and Inventions Agreement," dated November 6, 1995.

7.    Bryant signed a document titled "Conflict of Interest Questionnaire," dated November 6, 1995.

8.    Bryant left California in December 1997 and moved to Missouri to live with his parents, where he continued to do work for Mattel until April 1998.

9.    In late December 1998, Mattel offered Bryant a position in the Barbie Collectibles group.

10.    Bryant accepted Mattel's offer, moved back to California, and started work at Mattel on January 4, 1999.

11.    Bryant signed a document titled "Employee Confidential Information and Inventions Agreement" dated January 4, 1999.

12.    Bryant signed a document titled "Conflict of Interest Questionnaire," incorrectly dated January 4, 1998, instead of 1999.

EXHIBIT _//_
PAGE _____ **236**

13. Before Bryant left Mattel, he was asked to and did participate in an exit interview.

14. During his exit interview, Bryant signed a document titled "Proprietary Information Checkout," dated October 19, 2000.

15. Carter Bryant, an individual, is a resident of Missouri.

## VII.

## CLAIMS

### A.    MATTEL INC.'S CLAIMS AND COUNTERCLAIMS

Except to the extent already adjudicated in its favor by the Court's Orders re Summary Judgment, and pursuant to the Court's July 5, 2007 Phasing Order, Mattel, Inc. plans to pursue the following claims and counterclaims against the defendants in Phase 1 trial as indicated[2]:

---

[2]   Mattel has claims for misappropriation of trade secrets that are being reserved for Phase II of this litigation.  To the extent defendants seek to raise the issue of trade secrets during Phase I, either as a claim or as an affirmative defense, Mattel reserves its right to argue its misappropriation of trade secrets claim in Phase I. The MGA parties note that the Court gave specific guidance on this issue and expressly limited the type of evidence that Mattel may introduce that falls outside of the scope of Phase I of the trial in ruling on the MGA parties' motion *in limine* number 6.

EXHIBIT _____ 11

PAGE _____ 237

Case No. CV 04-9049 SGL (RNBx)
FINAL PRE TRIAL CONFERENCE ORDER

1           **Claim 1: Intentional Interference with Contract (Against Larian**

2 **and MGA).**

3           **Claim 2: Aiding and Abetting Breach of Fiduciary Duty (Against**

4 **Larian and MGA).**

5           **Claim 3: Aiding and Abetting Breach of Duty of Loyalty (Against**

6 **Larian and MGA).**

7           **Claim 4: Conversion (Against MGA, MGA HK and Larian).**

8           **Claim 5: Statutory Unfair Competition (Against Larian, MGA,**

9 **and MGA HK).**

10           **Claim 6: Declaratory Relief (Against Larian, MGA, and MGA**

11 **HK) (ownership of original Bratz works and associated copyrights allegedly**

12 **created by Bryant while employed by Mattel)**

13           **Claim 7: Copyright Infringement (Against Larian, MGA, and**

14 **MGA HK)**

15           The parties stipulated, and the Court agreed, that contentions of law and

16 fact, were not necessary and would not be productive, in light of the parties'

17 exhaustive briefing of the same issues in their cross-motions for partial summary

18 judgment and the fact that the Court has not yet ruled on certain of those cross-

19 motions.

20

21                                    **VIII.**

22           **DEFENDANTS' AFFIRMATIVE DEFENSES**

23           Relevant to Phase 1 of the Trial, Defendants assert the following

24 affirmative defenses:

25           Affirmative Defense 3: Laches

26           Affirmative Defense 4: Statute of Limitations

27           Affirmative Defense 5 and 6: 205(d)/Bona Fide Purchaser for Value

28           Affirmative Defense 9: Estoppel

EXHIBIT ___//___

PAGE _____ 238

1    Affirmative Defense 10:  Acquiescence

2    Affirmative Defense 11:  Mitigation

3    Affirmative Defense 13:  Waiver

4    Affirmative Defense 14: Abandonment

5    Affirmative Defense 15: *De Minimus* Use

6    Affirmative Defense 17: Privilege/Justification

7    Affirmative Defense 18: Good Faith

8    Affirmative Defense 21: Consent

9  **MGA PARTIES' AFFIRMATIVE DEFENSE TO COPYRIGHT DAMAGES**

10 MGA, MGA (HK), and/or Larian must prove:

11   1. Expenses deductible from gross revenues causally connected to the

12     alleged infringement;

13   2. Elements of defendants' profit attributable to factors other than the

14     copyrighted work.

15

16           **IX.**

17         **DISCOVERY**

18    Phase 1 Discovery is not complete, but will be within two weeks.

19 Counsel have waived any prejudice from commencing trial without completing

20 discovery. Phase 2 discovery has been stayed.  Many Phase 1 discovery motions

21 remain to be heard. The parties are working to complete them as expeditiously as

22 possible.

23

24           **X.**

25         **EXHIBITS**

26    All disclosures under F.R.Civ. P. 26(a)(3) have been made.  The joint

27 exhibit list of the parties has been filed.

28

EXHIBIT ___11___

PAGE ___239___

# XI.

## WITNESSES

All disclosures under F.R.Civ.P. 26(a)(3) have been made. Witness lists of the parties have been filed with the Court pursuant to the schedule approved by the Court. Each party intending to present evidence by way of deposition testimony has marked such depositions in accordance with L.R. 16-2.7. For this purpose, the following depositions shall be lodged with the Clerk as required by L.R. 32-1: William Ackerman (Art Attacks), Bryant Joseph Armstrong, Nana Ashong, Schuyler Bacon, Ronald Brawer, Kerry Brode, Charnayne Brooks, Carter Bryant, Carter Bryant (Art Attacks), Carter Bryant (Gunther-Wahl), Janet Bryant, Thomas Bryant, Ana Cabrera, Mei Wah (Sarah) Chui, Elise Cloonan, Nick Contreras, Daniel Cooney, Wendy Feinberg, Jeanne Galvano, Paula Garcia, Paula Garcia (Art Attacks), Brooke Gilbert, Kami Gillmour, Daphne Gronich, Sarah Halpern, Esther Han, Rachel Harris, Rebecca Harris (Art Attacks), Amy Hyland, Richard Irmen, Mitchell Kamarck, Samir Khare, Andreas Koch, Susana Kuemmerle, Robert Kullman, Farhad Larian, Isaac Larian, Isaac Larian (Art Attacks), Isaac Larian (Larian v. Larian), Isaac Larian (Ubisoft), Margaret Leahy, Edmond Lee, Steven Linker, Kenneth Lockhart, Jennifer Lynn Maurus (Larian v. Larian), Albert Lyter, David Malacrida, Peter Marlow, Veronica Marlow, Karl Meyer, Beatriz Morales, Amy Myers, Joyce Ng, Victoria O'Connor, Sarah D. Odom, Denise O'Neal, Jacqueline Prince, Jessie Ramirez, Anna Rhee, David Rosenbaum, Lon Ross (Fun4All), Maria Salazar, Shirin Salemnia, Joe Tiongco, Maureen Tkacik, Lisa Tonnu, Anne Wang, Jeffrey Neil Weiss, Spencer Woodman, Mel Woods, and MGA's 30(b)(6) witness regarding Larian v. Larian.

Additional depositions to be lodged: Ronald Brawer, Richard DeAnda, Ann Driskill, Robert Eckert, Kevin Farr, Lissa Freed, Jeanne Galvano, Hoi Hoffman-Briggs, Brian Hooks, Julia Jensen, Alan Kaye, Fred Kawashima, Tim Kilpin, Liliana Martinez, Heather McComb, Ginger McRae, Nicholas Mirzoeff,

EXHIBIT 7
PAGE 240

1  Teresa Newcomb, Jill Nordquist, Ralph Oman, Rodney Palmer, Joni Pratte,
2  Jacqueline Prince, Kathleen Simpson-Taylor, Maureen Tafoya, and Sandra
3  Yonemoto.

4         Furthermore, certain depositions have been recently taken or remain to
5  be taken.  The parties will advise the Court of such transcripts to be lodged as they
6  become available and relevant.

7         Pursuant to ¶ 97 of the Court's Scheduling Order, the parties identify
8  the following expert witnesses to be called:

9         Mattel:  Valery Aginsky, John Alex, Lloyd Cunningham, William
10  Flynn, Frank Keiser, Lee Loetz, Mark Menz, Nicholas Mirzoeff, Ralph Oman,
11  Walter Rantanen, Carol Scott, Bryce Stein, Michael Wagner, Robert Lind, Angel
12  Gomez, Heather McComb, Ginger McRae, Denise Van Patten, and Kenneth
13  Hollander.

14         Defendants:  Mary Bergstein, D. Jan Duffy, Thomas S. Gruca, Erich
15  Joachimstaler, Robert D. Kullman, Albert H. Lyter, Peter Menell, Paul Meyer,
16  Debora Middleton, Robert Tonner, Glenn Vilppu, Douglas Kidder, and Gary Funck.

17         The following law and motion matters and motions in limine have been
18  decided:

19         Mattel has filed the following motions *in limine*:

20         1.     MIL No. 1 to exclude: (1) evidence or argument that Bryant's
21  invention assignment agreements are unfair or unconscionable; (2) evidence of other
22  versions of Mattel's inventions agreements; and (3) expert testimony of D. Jan
23  Duffy;

24         Granted.

25         2.     MIL No. 2 to exclude evidence, argument or reference to
26  Mattel's alleged motive in filing suit or re consequences thereof ;

27         Denied as written.  Will allow late evidence with proper foundation.
28  Consequences of lawsuit to MGA may not be admitted.

1          3.     MIL No. 3 to exclude Phase 1(B) evidence in the Phase 1(A)
2  trial and Phase 2 evidence in the Phase 1 trials or, in the alternative, to permit
3  expedited Phase 2 discovery;

4               Granted insofar as apportionment and responsive evidence is limited to
5               1B; deferred on rest.

6          4.     MIL No. 4 to preclude introduction to jury of evidence and
7  testimony relating to equitable defenses to be tried by court ;

8               Denied.

9          5.     MIL No. 5 to exclude evidence of or argument concerning other
10  lawsuits and other purported bad acts and dismissed defenses;

11              Granted as to Nos. 1-4 and 10; Denied without prejudice to specific
12              objections as to Nos. 5-9.

13         6.     MIL No. 6 to exclude evidence or argument concerning actions
14  taken by or against Mattel employees other than Carter Bryant;

15              Granted in part and denied in part; Evidence is admissible only if such
16              other employees are analogous to Bryant.

17         7.     MIL No. 7 to preclude the MGA Defendants from asserting or
18  relying on an advice of counsel defense;

19              Granted.  However, the MGA Parties can introduce Rosenbaum's
20              testimony relaying his factual conversations not as reliance on any legal
21              advice he gave but as to the fact that he undertook certain actions and had
22              certain conversations, provided otherwise admissible.

23         8.     MIL No. 8 to exclude evidence relating to whether Mattel would
24  have marketed Bratz;

25              Granted as to 1A; Deferred as to 1B.

26         9.     MIL No. 9 to exclude argument, evidence, or expert testimony
27  regarding Barbie and other Mattel dolls;

28              Daubert hearing to be held one day prior to testifying.

EXHIBIT  11
PAGE  242

1           10.    MIL No. 10 to exclude testimony by Glenn V. Vilppu;

2           Daubert hearing to be held one day prior to testifying.

3           11.    MIL No. 11 to preclude Defendants from offering improperly

4 disclosed evidence;

5           Granted as to test project. Deferred on apportionment issues otherwise

6           denied.

7           12.    MIL No. 12 to exclude the testimony of Peter S. Menell;

8           Daubert hearing to be held one day prior to testifying.

9           13.    MIL No. 13 to exclude expert testimony of Mary Bergstein,

10 Robert Tonner, and Debora Middleton;

11           Daubert hearing to be held one day prior to testifying.

12           14.    MIL No. 14 to exclude evidence and argument related to certain

13 discovery matters;

14           Granted.

15           15.    MIL No. 15 for a preclusion order regarding MGA's disqualified

16 expert Christina Tomiyama.

17           Taken under submission. Deferred ruling until Phase 1(b).

18           Defendants filed the following motions in limine:

19           1.    MGA Parties' Notice of Motion and Motion in Limine Number 1

20 to Exclude All Evidence Relating to Litigation or Other Proceedings Between Isaac

21 and Farhad Larian;

22           Denied.

23           2.    MGA Parties' Notice of Motion and Motion in Limine Number 2

24 to Exclude All Evidence Relating to Isaac Larian's Wealth and Assets;

25           Granted in part, denied in part. General evidence regarding Mr. Larian's

26 wealth is inadmissible. Any gain to Larian from Bratz may be introduced only in Phase

27 1b. In Phase 1a, Mattel only may submit evidence of what Larian stood to gain **at the**

28 **time** of any alleged breach, not subsequent gain.

EXHIBIT

PAGE 2 4 3

1          10.    MGA Parties' Notice of Motion and Motion in Limine Number

2  10 to Exclude All References to and Use of Certain "Expert" Testimony Proffered

3  by Mattel Witness Carol A. Scott;

4          Daubert hearing to be held one day prior to testifying.

5          11.    MGA Parties' Notice of Motion and Motion in Limine Number

6  11 to Strike the Expert Rebuttal Report of Robert C. Lind;

7          Daubert hearing to be held one day prior to testifying.

8          12.    MGA Parties' Notice of Motion and Motion in Limine Number

9  12 to Strike Portion of the Expert Report of Lee Loetz;

10          Daubert hearing to be held one day prior to testifying.

11          13.    Motion in Limine Number 13: To exclude evidence and

12  argument regarding alleged spoliation by Bryant;

13          Hearing to be held one day prior to Bryant testifying; hearing to include

14  Bryant and experts; excluded from opening statement.

15          14.    Motion in Limine Number 14: To exclude evidence and

16  argument regarding Bryant's alleged "borrowing" of ideas or concepts from

17  preexisting Mattel projects, including Toon Teens, Diva Starz, the "Swan" line, and

18  Skipper.

19          Denied.

20          The Court ruled upon or otherwise addressed the remaining motions

21  during recent hearings.

22          Bifurcation of the claims and counterclaims was ordered pursuant to

23  the Court's Order of July 2, 2007. The claims and counterclaims to be tried in Phase

24  1 trial are set forth herein. The claims remaining for trial in Phase 2 are set forth on

25  pages 8-9 in Mattel's Memorandum of Trial Structure, filed June 20, 2007, as

26  adopted in the July 2, 2007 Order. At the hearing on May 22, 2008, the Court

27  provided guidance to the parties as to the issues that may be tried as part of Phase 1a

28  versus Phase 1b.

EXHIBIT _____ _//_

PAGE _____ 245

1     The foregoing admissions having been made by the parties, and the

2   parties having specified the foregoing issues of fact and law remaining to be

3   litigated, this Pretrial Conference Order shall supersede the pleadings as they relate

4   to claims or defenses to be tried in Phase 1 and govern the course of the trial of the

5   Phase 1 claims and defense, unless modified to prevent manifest injustice.

6   DATED:  June 07. 2008

7   _S.G.Larson_

8   _____

9   Approved as to form by:

10  QUINN EMANUEL URQUHART OLIVER &
    HEDGES, LLP

11

12  _By /s/ John B. Quinn_____

13       John B. Quinn, Esq.
         Attorneys for Mattel, Inc.

14

15  SKADDEN, ARPS, SLATE, MEAGHER &
    FLOM LLP

16

17

18  _By /s/ Thomas J. Nolan, Esq._____
         Thomas J. Nolan, Esq.
19       Attorneys for MGA Entertainment, Inc.

20

21

22

23

24

25

26

27       EXHIBIT __11__

28       PAGE ____246____

# EXHIBIT 12

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES -- GENERAL

Case No.   CV 04-09049 SGL(RNBx)                      Date: June 2, 2008
Title:     CARTER BRYANT -v- MATTEL, INC.

Consolidated With Related Actions:
CASE NO. CV 04-09059 SGL(RNBx): MATTEL, INC. v. CARTER BRYANT
CASE NO. CV 05-02727 SGL (RNBx): MGA ENTERTAINMENT, INC. v. MATTEL, INC.
===========================================================================

PRESENT:  HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

          Jim Holmes
          Courtroom Deputy Clerk

ATTORNEYS PRESENT FOR CARTER BRYANT:      ATTORNEYS PRESENT FOR MATTEL:

None Present                              None Present

ATTORNEYS PRESENT FOR MGA AND
ISAAC LARIAN:

None Present

PROCEEDINGS:  **FURTHER AND FINAL ORDER RE STATUTE OF LIMITATIONS DEFENSE**
              **(IN CHAMBERS)**

        In an order dated May 27, 2008, the Court made several rulings regarding the timeliness of
Mattel's claims ("SOL Order"). At that time, the Court invited further, limited briefing from the
parties regarding "what further conclusions regarding the timeliness of each claim should be
drawn" in light of the Court's rulings. The parties filed further briefing in conformity with the Court's
Order, which the Court has reviewed.

        As a result of the briefing, the Court discusses the following issues: (1) Clarification of the
Court's Ruling Regarding the August 2002 Anonymous Letter; (2) Clarification of the Court's
Ruling Regarding Fraudulent Concealment and Mattel's Claims for Intentional Interference with
Contractual Relations and Conversion; and (3) Accrual of Mattel's Copyright Claim.

MINUTES FORM 90                                            Initials of Deputy Clerk: jh
CIVIL -- GEN                          1

EXHIBIT  12
PAGE     247

## I. Clarification of the Court's Ruling Regarding the August 2002 Anonymous Letter

The parties differ on their interpretation of the Court's holding as to the earliest accrual date of Mattel's claims. Although the Court's SOL Order, read as a whole, is most reasonably interpreted as clarified herein, MGA, quite understandably, interprets the Court's Order in a manner more favorable to its position regarding the statute of limitations defense. Accordingly, the Court clarifies its Order as set forth below.

In a key paragraph of the SOL Order, the Court articulates the four possible accrual dates of those state-law claims, asserted by Mattel against Carter Bryant, that are subject to the discovery rule:[1]

> MGA has raised triable issues of fact precluding summary judgment on the statute of limitations issue. Any of the following could be the date upon which MGA claims against Carter Bryant accrued:  The July 18, 2003, Wall Street Journal article; the September 23, 2003, date of receipt of the City World "claim"; the October 17, 2003, date of counsel's letter to Mattel regarding the City World litigation; or the November 24, 2003, date of receipt of the MGA-Bryant agreement that pre-dated Bryant's resignation of his employment.

SOL Order at 7-8.  This portion of the Court's Order implicitly rejects MGA's contention that the August, 2002, letter could give rise to Mattel's claims against Bryant.

As set forth in the SOL Order, a claim accrues where a plaintiff has *knowledge* of at least one of the three generic elements of wrongdoing, causation, and harm. Fox v. Ethicon Endo-Surgery, Inc., 35 Cal.4th 797, 807 (Cal. 2005) (citation omitted). The SOL Order did not explicitly state, as the Court does now, that there is no evidence that Mattel had any *knowledge* of any one of the three generic elements of its claims, and thus no claim accrued, prior to the earliest date identified by the Court, which is July 18, 2003.

MGA's argument that Mattel's claims against Carter Bryant could have accrued in August 2002, is based on a statement made by the Court's regarding when the claims against MGA Entertainment, Inc., accrued:

> The Court rejects the proposition, however, that the claims against both MGA entities did not arise until the date of Carter Bryant's deposition. Whatever the date on which the claims against Carter Bryant arose is ultimately found to be, the August 2002 anonymous letter should have given Mattel a suspicion of that MGA
Entertainment, Inc., participated in any wrongdoing by Carter Bryant. See Zeller Decl. Ex. 63

---

[1]    This portion of the Court's Order does not apply to Mattel's claims for intentional interference with contractual relations and conversion, which are addressed infra, in Section II.

Initials of Deputy Clerk: jh

EXHIBIT __12__
PAGE ___248___

(alleging that Carter Bryant "worked out a deal with MGA that let him collect a large sum of money each year from MGA in exchange for his secrecy about the dolls").

SOL Order at 9. Mattel's understanding of this part of the SOL Order, that the claims against MGA Entertainment, Inc., accrued on the same date as did the claims against Carter Bryant, is correct. See Mattel Supp. Brief at 6 n.4.

## II. Clarification of the Court's Ruling Regarding Fraudulent Concealment and Mattel's Claims for Intentional Interference with Contractual Relations and Conversion

The Court's statute of limitations analysis regarding Mattel's claims for intentional interference with contractual relations and conversion was rather inartfully articulated. The Court's ruling was meant to convey that although the remainder of the state-law claims asserted by Mattel are subject to the discovery rule, these two claims are not. Therefore, the conclusions drawn by the Court regarding the possible accrual dates for the remaining state-law claims do not apply to Mattel's claims for intentional interference with contractual relations and conversion. Instead, these claims, having arisen around the time Bryant resigned from Mattel, are time-barred unless the relevant limitations periods have been extended by a period of fraudulent concealment.

Whether a period of fraudulent concealment exists, as well as the duration of any such period, cannot be determined on the undisputed record and are therefore questions of fact for the jury.

### III. Accrual of Copyright Claim

The supplemental briefing brings into focus an issue not addressed by the SOL Order: The accrual date of Mattel's copyright claim.

MGA refers to two arguments it made in its partial summary judgment papers regarding the statute of limitations and Mattel's copyright claim. First, MGA argues that the date Mattel registered its copyrights impacts upon the Court's application of the relation-back doctrine; second, MGA argues that the "rolling" statute of limitations regarding copyright claims is inapplicable when the gravamen of the claim is a claim of ownership rather than infringement.

Mattel did not address this issue in its supplemental briefing, which was filed concurrently with MGA's supplemental briefing. In its partial summary judgment papers, however, Mattel had responded to these arguments.

In reviewing the supplemental briefs, as well as the relevant portions of the partial summary judgment papers, and reflecting upon the hearings held on this matter, the Court concludes that it need not resolve MGA's two arguments.

In the SOL Order, the Court's analysis equated the accrual of Mattel's copyright claim with

MINUTES FORM 90
CIVIL -- GEN

3

Initials of Deputy Clerk: jh

EXHIBIT ___12___
PAGE ___249___

the accrual with certain of Mattel's state-law claims; as explained below, this analysis overlooks important concepts of copyright law.

As noted by the Court in its order regarding summary judgment, in order to establish copyright infringement, a plaintiff must establish three elements:  (1) ownership of a valid copyright, (2) the defendant's access to the original, and (3) substantial similarity between the copyrighted work and the allegedly infringing work.  Lamps Plus, Inc. v. Seattle Lighting Fixture Co., 345 F.3d 1140, 1144 (9th Cir. 2003).  Here, although the date Mattel received details regarding the City World litigation is in dispute, it is uncontroverted that Mattel did not receive copies of the Bratz drawings prior to November 23, 2003.  Without the drawings, Mattel could not assess the substantial similarity factor to determine whether it could assert a claim that the Bratz dolls infringed Mattel's rights to them.  Accordingly, on the undisputed record, the Court concludes that Mattel's copyright claim did not accrue prior to November 23, 2003.

Therefore, when first asserted on November 20, 2006, Mattel's copyright claim was timely in its own right, and the Court need not resolve MGA's two arguments regarding relation back and the rolling statute of limitations.[2]

**IT IS SO ORDERED.**

---

[2] In accordance with the foregoing, the Court VACATES the following language from the SOL Order:

> The accrual of a copyright claim, as the parties recognize, approximates the state-law standard discussed herein. See Polar Bear Productions, Inc. v. Timex Corp., 384 F.3d 700, 706 (9th Cir. 2004) ("Thus, . . . the statute of limitations does not prohibit recovery of damages incurred more than three years prior to the filing of suit if the copyright plaintiff was unaware of the infringement, and that lack of knowledge was reasonable under the circumstances."). Accordingly, the Court makes the same conclusion regarding the accrual date of Mattel's copyright claim against Carter Bryant as it does regarding the accrual date of Bryant's state-law claims.

SOL Order at 8.

MINUTES FORM 90                                                        Initials of Deputy Clerk: Jh
CIVIL – GEN                                          4

EXHIBIT ____ /2____
                                                                              25th
PAGE ____

# EXHIBIT 13

Case 2:04-cv-09049-DOC-RNB  Document 6988-14  Filed 10/20/09  Page 27 of 43  Page ID
#:236889
Case 2:04-cv-09049-SGL-RNB  Document 4439  Filed 1_3/2008  Page 1 of 17

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES -- GENERAL

Case No.   CV 04-09049 SGL(RNBx)                          Date: December 3, 2008
Title:     MATTEL, INC. V. MGA ENTERTAINMENT, INC., et al.
===========================================================================
PRESENT:  HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

            James Holmes                        None Present
            Courtroom Deputy Clerk              Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:       ATTORNEYS PRESENT FOR DEFENDANTS:

None Present                            None Present

PROCEEDINGS:

**ORDER FINDING IN FAVOR OF MATTEL AS TO THE MGA PARTIES' AFFIRMATIVE
DEFENSES**

**ORDER GRANTING MATTEL'S MOTION FOR DECLARATORY JUDGMENT (DOCKET #4303)**

**ORDER GRANTING MATTEL'S MOTION FOR CONSTRUCTIVE TRUST AND § 17200
INJUNCTIVE RELIEF (DOCKET #4305)**

**ORDER GRANTING MATTEL'S MOTION FOR PERMANENT INJUNCTION (DOCKET #4306)**

**ORDER DENYING AS MOOT MOTION TO STRIKE PORTIONS OF HUTNYAN DECLARATIONS
AND EXHIBITS THERETO (DOCKET #4351)**

**ORDER DENYING MOTION TO STRIKE THE PROCTOR, KEISER, AND HOLLANDER
DECLARATIONS (DOCKET #4352)**

**ORDER DENYING AS MOOT MOTION TO STRIKE MEYER DECLARATION (DOCKET #4377)**

**ORDER STAYING COURT'S ORDER PENDING CONSIDERATION OF THE PARTIES' POST-**

MINUTES FORM 90                                    Initials of Deputy Clerk: jh
CIVIL -- GEN                          1

EXHIBIT 13
PAGE 251

Case 2:04-cv-09049-DOC-RNB  Document 6988-14  Filed 10/20/09  Page 28 of 43  Page ID
#:236890
Case 2:04-cv-09049-SGL-RNB  Document 4439  Filed 1/3/2008  Page 2 of 17

**TRIAL MOTIONS**

**ORDER SETTING FORTH FURTHER BRIEFING SCHEDULE**

**ORDER REGARDING DISCOVERY MASTER PROPOSALS FOR PHASE 2**

**ORDER REGARDING JOINTLY LODGED LAPTOP COMPUTER**

**ORDER REGARDING SERVICE OF PERMANENT INJUNCTION**

**FILED CONCURRENTLY HEREWITH:**

**(1) MATTEL'S PROPOSED ORDER (AS MODIFIED BY THE COURT) GRANTING DECLARATORY JUDGMENT**

**(2) MATTEL'S PROPOSED ORDER (AS MODIFIED BY THE COURT) GRANTING MATTEL'S MOTION FOR CONSTRUCTIVE TRUST AND FOR FINDING LIABILITY AND INJUNCTIVE RELIEF PURSUANT TO CAL. BUS. & PROF. CODE § 17200**

**(3) MATTEL'S PROPOSED ORDER (AS MODIFIED BY THE COURT) GRANTING MATTEL'S MOTION FOR PERMANENT INJUNCTION**

These matters were heard on November 10, 2008, after extensive briefing by the parties. After a two-phase jury trial, the Court considers certain equitable issues (referred to as Phase 1C of the trial) and enters the following Order. Filed concurrently herewith are: (1) Mattel's Proposed Order (as modified by the Court) Granting Declaratory Judgment; (2) Mattel's Proposed Order (as modified by the Court) Granting Mattel's Motion for Constructive Trust and for Finding Liability and Injunctive Relief Pursuant to Cal. Bus. & Prof. Code § 17200; and (3) Mattel's Proposed Order (as modified by the Court) Granting Mattel's Motion for Permanent Injunction.

In reaching the rulings set forth herein, the Court has considered the parties' briefs and exhibits submitted during Phase 1C of the trial, the arguments of counsel, as well as the entire record (including the evidence properly submitted in Phase 1A and Phase 1B of the trial) and its previous Orders.

The Court refers collectively to all defendants herein, including MGA CEO Isaac Larian ("Larian"), as "the MGA parties". MGA Entertainment, Inc., is referred to as "MGAE".

The Court has carefully and deliberately considered the parties' well-presented legal and equitable arguments, authorities, and evidence concerning the motions identified above. In its final analysis, the Court finds, as did the jury, that the preponderance of evidence establishes that Carter Bryant ("Bryant") created and developed the name, the concept, and, together with Margaret Leahy, the prototypical sculpt for the hugely-successful Bratz brand of female fashion

MINUTES FORM 90
CIVIL -- GEN                                    2

Initials of Deputy Clerk: jh

EXHIBIT __/3__
PAGE __252__

Case 2:04-cv-09049-DOC-RNB   Document 6988-14   Filed 10/20/09   Page 29 of 43   Page ID
#:236891
Case 2:04-cv-09049-SG-RNB       Document 4439       Filed 1/3/2008       Page 3 of 17

dolls while working as an employee of Mattel and while bound by the terms of an Inventions Agreement, which provided that all rights to such property, and the property itself, belong to Mattel. Moreover, the Court further finds, as did the jury, that the preponderance of the evidence establishes that Isaac Larian and MGAE intentionally interfered with Bryant's contractual relations with Mattel, aided and abetted Bryant's breach of fiduciary duty to Mattel, aided and abetted Bryant's breach of his duty of loyalty to Mattel, and unlawfully converted certain property of Mattel. Finally, the Court finds, as did the jury, that the preponderance of the evidence establishes that the MGA parties, in further developing, producing, and marketing its Bratz brand of female fashion dolls, are liable to Mattel for copyright infringement.

## I. The MGA Parties' Affirmative Defenses

Through its "Statement of Position Regarding Phase 1C Issues" (docket #4308), the MGA parties seek the Court's verdict in their favor as to their affirmative defenses of laches, estoppel, and waiver. As set forth below, the Court rules in favor of Mattel, and against the MGA parties as to these three remaining affirmative defenses.[1]

### A.    Laches

Laches is an equitable defense that may bar a claim where a defendant establishes "(1) lack of diligence by the plaintiff, and (2) prejudice to the defendant." Grand Canyon Trust v. Tucson Elec. Power Co., 391 F.3d 979, 987 (9th Cir. 2004). The MGA parties establish neither element.

Because the Court has already found that all the claims asserted against the MGA parties were filed within the applicable limitations periods, the Court starts with the presumption that laches is inapplicable. Jarrow Formulas, Inc. v. Nutrition Now, Inc., 304 F.3d 829, 835 (9th Cir. 2002).

Mattel has not delayed in bringing its claims against the MGA parties. The Court has already found, based on the undisputed evidence, that Mattel had no reason to know of its claims against Bryant until November 23, 2003, and that it had no knowledge of its claims against MGA and Larian until Bryant was deposed approximately a year later on November 4, 2004. MGAE intervened in Mattel's suit against Bryant approximately one month later on December 7, 2004. See Dec. 7, 2004, Stip. & Order (04-9059 docket #36) ("MGA[] believes . . . that it has a significantly protectable interest relating to the subject matter of the action, . . . and that MGA's interest is not adequately represented by the existing parties."). Thereafter, the parties briefed Mattel's motion to remand (filed on December 1, 2004, and denied on March 4, 2005), before a stay was entered in the case on May 20, 2005, pending the Ninth Circuit's consideration of an

---

[1]    By advancing only the affirmative defenses of laches, estoppel, and waiver in their Phase 1C brief, the MGA parties have implicitly waived the right to pursue any other affirmative defenses that they have not already expressly waived.

Initials of Deputy Clerk: jh

EXHIBIT _/2_
PAGE _____ 253

interlocutory appeal. After MGAE's intervention and before the stay was entered, the parties, including MGAE, engaged in discovery, and the Court considered certain discovery motions, including a motion to compel the deposition of Isaac Larian filed on March 17, 2005. The stay remained in place until after the Ninth Circuit affirmed the Court's denial of the motion to remand; it was lifted on May 16, 2006. Six months later, on November 17, 2006, Mattel sought leave to file its claims against the MGA parties. On this record, the Court finds no lack of diligence by Mattel.

Nor have the MGA parties shown they suffered resulting prejudice. MGAE was permitted to intervene in the lawsuit filed by Mattel against Carter Bryant only one month after it became evident that its rights could potentially be affected, and it did so with the express purpose of protecting its own rights. The other MGA parties have not shown that they suffered any prejudice unique to them or that the intervention by MGAE was not designed to protect their rights.

Moreover, the record does not support the evidentiary prejudice claimed by the MGA parties, and the record is devoid of any expectation-based prejudice (i.e., evidence of what MGA would have done differently had the claims against them been asserted sooner). Indeed, to the contrary, the record reveals that the MGA entities have continued to promote (and profit from) the Bratz brand during the entire pendency of the current litigation.

Because of the presumption that laches will not bar timely claims, and because the Court finds that the MGA parties have failed to establish either element of laches, the Court finds in favor of Mattel as to the affirmative defense of laches.

## B. Estoppel

For equitable estoppel to preclude Mattel's claims here, the MGA parties must establish four elements:

> (1) [T]he party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel has a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury.

Strong v. County of Santa Cruz, 15 Cal.3d 720, 725 (1975).

The MGA parties cannot establish the first element because, as noted above, the Court has already found, based on the undisputed evidence, that Mattel had no reason to know of its claims against Bryant until November 23, 2003, and that it had no knowledge of its claims against MGA and Larian until Bryant was deposed almost a year later.

The MGA parties have produced no evidence that Mattel intended them to act upon any apparent intention to refrain from asserting any claims against them. To the contrary, MGAE quickly intervened in Mattel's suit against Bryant to protect its interests.

MINUTES FORM 90
CIVIL -- GEN

4

Initials of Deputy Clerk: jh

EXHIBIT   13
PAGE   254

Case 2:04-cv-09049-DOC-RNB   Document 6988-14   Filed 10/20/09   Page 31 of 43   Page ID
#:236893
Case 2:04-cv-09049-SC-RNB   Document 4439   Filed 1/3/2008   Page 5 of 17

Moreover, the MGA parties had no basis upon which to rely on Mattel's conduct. As found by the jury, they had superior knowledge regarding Bryant's creation of the Bratz drawings (and the timing of that creation).

Because the Court finds that the MGA parties cannot establish all the elements of estoppel, the Court finds in favor of Mattel as to the affirmative defense of estoppel.

## C.   Waiver

"Waiver is the intentional relinquishment of a known right with knowledge of its existence and the intent to relinquish it." United States v. King Features Entertainment, Inc., 843 F.2d 394, 399 (1988).

Here, the MGA parties contend that Mattel's tolerance of its employees' "moonlighting" for its competitors was so widespread as to constitute such a relinquishment. Although such implied waivers may be found where a plaintiff's conduct "is so inconsistent with the intent to enforce the right in question as to induce a reasonable belief that such right has been relinquished," Medico-Dental etc. Co. v. Horton & Converse, 21 Cal.2d 411, 432 (1942), no such conduct is present here.

No evidence of record suggests that Mattel tolerated the type of conduct in which Bryant engaged. The Court has previously addressed, and will not belabor here, the distinctions to be made between the limited evidence regarding "moonlighting" in the record and the conduct in which Bryant engaged. The evidence establishes, and the jury found, that while employed by Mattel as a fashion designer, Bryant preliminarily developed designs for and pitched a line of fashion dolls to Mattel's direct competitor. There is no evidence that Mattel has ever tolerated this type of conduct. Instead, several witness testified to their belief that such conduct would result in immediate termination of the offending employees. Indeed, the record is replete with details of the steps taken by Bryant, the MGA parties, and MGA employees to conceal the extent of Bryant's involvement in the Bratz project while he was employed by Mattel.

The Court finds in favor of Mattel as to the affirmative defense of waiver.

## II.   Declaratory Relief Motion (docket #4303)

In its motion for declaratory judgment, Mattel seeks, pursuant to its thirteenth cause of action, a declaration of its rights (and the MGA parties' lack of rights) regarding the Bratz-related works, including certain drawings, sculpts, and ideas.[2] Mattel also seeks imposition of a

---

[2]   The parties and the Court are all equally aware that ideas are not copyrightable. However, they are, as set forth in the Court's summary judgment order, assignable under California state law. As noted in the Court's summary judgment order, such an assignment was made by Bryant to Mattel.

EXHIBIT   /3
PAGE   255

Case 2:04-cv-09049-DOC-RNB  Document 6988-14  Filed 10/20/09  Page 32 of 43  Page ID
#:236894
Case 2:04-cv-09049-SG-RNB    Document 4439    Filed 1\_3/2008    Page 6 of 17

constructive trust as to MGA's copyright registrations in certain Bratz drawings. As detailed in the concurrently filed Order, the Court **GRANTS** Mattel's Motion for Declaratory Judgment (docket #4303).

In opposition, the MGA parties contend that the relief sought by Mattel should not be granted because it is preempted by the Copyright Act. The Court rejects this argument. The Court's ruling regarding preemption is set forth in the Court's summary judgment order, which the Court does not here modify.

Declaratory relief is generally granted "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." Bilbrey by Bilbrey v. Brown, 738 F.2d 1462, 1470 (1984).

Here, considering this legal standard and based on the relationship among the parties, the jury's verdicts, the Court's previous Orders, and the entire record, the Court finds that the declaratory relief sought by Mattel is appropriate.[3] Concurrently herewith, the Court has entered, as modified, Mattel's proposed order for declaratory relief.

## III. Motion for Constructive Trust and § 17200 Injunctive Relief (docket #4505)

As set forth more fully in its Motion, Mattel seeks, pursuant to California state law, imposition of a constructive trust over the trademarks "Bratz" and "Jade." Mattel also seeks, pursuant to its twelfth cause of action, a finding that the MGA parties violated Cal. Bus. & Prof. Code § 17200 on the basis of the jury's findings that the MGA parties converted Mattel's property, tortiously interfered by Mattel's contractual relations, and aided and abetted Bryant's breaches of his fiduciary duty and the duty of loyalty. Pursuant to this finding, and in addition to imposition of a constructive trust as to the Bratz and Jade marks, Mattel seeks an injunction prohibiting the MGA parties from using these marks. As detailed in the concurrently filed Order, the Court **GRANTS** Mattel's Motion for Constructive Trust and § 17200 Injunctive Relief (docket #4305).

### A. Constructive Trust

Cal. Civ. Code § 2223 provides that "[o]ne who wrongfully detains a thing is an involuntary trustee thereof, for the benefit of the owner." Cal. Civ. Code § 2224 explicitly addresses things gained by wrongful acts: "One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he or she has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it." The parties agree on the resulting elements, which may be stated as

---

[3] The appropriateness of the constructive trust remedy is discussed below, in a separate section, but applies equally here.

Initials of Deputy Clerk: jh

EXHIBIT ___13___
PAGE _____256

Case 2:04-cv-09049-DOC-RNB   Document 6988-14   Filed 10/20/09   Page 33 of 43   Page ID
#:236895
Case 2:04-cv-09049-SGL-RNB   Document 4439   Filed 1../3/2008   Page 7 of 17

follows: "(1) the existence of a *res* (property or some interest in property); (2) the right of a complaining party to that *res*; and (3) some wrongful acquisition or detention of the *res* by another party who is not entitled to it. Communist Party v. 522 Valencia, Inc., 35 Cal.App.4th 980, 990 (1995).

Significantly, because the purpose of a constructive trust is to prevent unjust enrichment, enhancement of value is given to the beneficiary of the constructive trust. Haskel Engineering & Supply Co. v. Hartford Acc. & Indem. Co., 78 Cal.App.3d 371, 375 (1978)

Here, the jury found that the MGA parties wrongfully acquired the idea for the name "Bratz" along with the idea and preliminary drawings for a line of fashion dolls. The same is true for the one Bratz character who retained the name given her by Carter Bryant: "Jade."[4]   In addition to wrongfully acquiring them, the MGA parties continue to wrongfully retain them. The MGA parties enhanced the value of the names by acquiring trademark rights to them. California law requires, in this instance, that a constructive trust be imposed as to these marks. Mattel is the beneficiary of the constructive trust and MGA's trademarks in "Bratz" and "Jade" inure to Mattel's benefit.

In making this conclusion, the Court has considered, and rejected, the MGA parties' argument that Mattel has disavowed an intention to seek this remedy or waited too long to seek it. Mattel has conceded that it is not asserting a trademark infringement claim. It cannot, because it has not used the relevant marks in commerce, and one must do so to acquire trademark rights. Conversive, Inc. v. Conversagent, Inc., 433 F.Supp.2d 1079, 1089 (C.D. Cal. 2006) (citing Brookfield Communications, Inc. v. West Coast Entertainment Corp., 174 F.3d 1036, 1046 (9th Cir. 1999)). However, Mattel has not disavowed its intent to seek a constructive trust over the marks that were created by Bryant, with rights thereto acquired by the MGA parties through registration and use in commerce. This remedy is well within the scope of relief that is sought in Mattel's second amended answer and counterclaims, see SAAC at 73 ¶ 9 (Prayer for Relief) (seeking "imposition of a constructive trust over Bratz, including without limitations registrations and applications for registrations relating thereto made or filed by [the MGA parties] and third parties, and all profits, monies, royalties and any other benefits derived or obtained from [the MGA parties'] exercise of ownership, use, sale, distribution and licensing of Bratz"), and the Court has rejected all timeliness challenges to Mattel's claims.

## B.   § 17200 Violation

The record reveals sufficient evidence of injury-in-fact to Mattel to confer standing upon it to assert its § 17200 claim. Specifically, as testified to by Mattel officers (and acknowledged by MGAE officers and attorneys), Mattel has suffered lost market share as a result of the sales of the Bratz dolls. Moreover, the jury was instructed that "harm" to Mattel was a necessary element of a number of state law claims. See Final Jury Instructions as Given [Phase 1A], docket #4115, at

---

[4]   Bryant's other characters were re-named before they were marketed:  Zoe became the now-familiar Cloe, Hallidae became Sasha, and Lupe became Yasmin.

MINUTES FORM 90
CIVIL -- GEN

7

Initials of Deputy Clerk: jh

EXHIBIT  *12*
PAGE  **257**

Case 2:04-cv-09049-DOC-RNB  Document 6988-14  Filed 10/20/09  Page 34 of 43  Page ID
#:236896
Case 2:04-cv-09049-SGL-RNB  Document 4439  Filed 1/3/2008  Page 8 of 17

Instruction Nos. 22, 25-27, and 29 (intentional interference with contractual relations, aiding and abetting breaches of fiduciary duty and the duty of loyalty, and conversion). The jury's finding in favor of Mattel as to those claims necessarily implies a factual finding by the jury as to the specified element of harm to Mattel and, as explained in more detail below, the Court is bound by that implicit factual finding. Los Angeles Police Protective League v. Gates, 995 F.2d 1469, 1473 (9th Cir. 1993) (finding that by awarding damages on a specific claim, the jury implicitly found that the plaintiff had proven one particular element of that claim).

As set forth in a previous Order, this claim is only partially preempted by the Copyright Act. The preempted portion of Mattel's § 17200 claim did not survive summary judgment and is not at issue here.

Based on the jury's findings that the MGA parties converted Mattel's property, tortiously interfered with its contractual relations, and aided and abetted Bryant's breaches of his fiduciary duty and the duty of loyalty, the Court finds that the MGA parties also violated Cal. Bus. & Prof. Code § 17200.

## C.    § 17200 Injunctive Relief

Where a Court finds violation of § 17200, it has broad powers to shape appropriate injunctive relief:

> Any person who . . . has engaged . . . in unfair competition may
> be enjoined in any court of competent jurisdiction. The court may make
> such orders or judgments, . . . as may be necessary to prevent the use
> or employment by any person of any practice which [either] constitutes
> unfair competition, . . . or as may be necessary to restore to any person
> in interest any money or property, real or personal, which may have
> been acquired by means of such unfair competition.

Cal. Bus. & Prof. § 17203.

The injunction sought by Mattel's proposed order (as modified by the Court) is necessary to restore to Mattel the property acquired as a result of the MGA parties' unfair competition.

For the reasons set forth above, concurrently herewith, the Court has entered, as modified, Mattel's proposed order for constructive trust and § 17200 injunctive relief.

## IV. Motion for Permanent Injunction (docket #4306)

### A.    Facts Supporting Injunctive Relief

The present motions, to varying degrees, implicate the question of to what extent a Court trying equitable claims is bound by a jury's factual findings related to the same underlying conduct.

MINUTES FORM 90
CIVIL -- GEN                                        8                      Initials of Deputy Clerk: jh

EXHIBIT  /3
PAGE      258

Case 2:04-cv-09049-DOC-RNB  Document 6988-14  Filed 10/20/09  Page 35 of 43  Page ID
#:236897
Case 2:04-cv-09049-SG RNB      Document 4439      Filed 1 3/2008    Page 9 of 17

The question comes into sharpest focus in Mattel's Motion for Permanent Injunction.

"[W]here legal claims are tried by a jury and equitable claims are tried by a judge, and the claims are based on the same facts, the Seventh Amendment requires the trial judge to follow the jury's implicit or explicit factual determinations." Los Angeles Police Protective League v. Gates, 995 F.2d 1469, 1473 (9th Cir. 1993) (internal quotation marks and citation omitted). In the absence of an express finding, a court must determine whether implicit factual determinations by the jury can be inferred, and should consult the jury's verdict and the jury instructions to make this determination. Id. (finding, based on an examination of the jury instructions and the jury's verdict awarding damages as to a specific claim, that the jury implicitly found that plaintiff had proven one particular element of that claim).

The Court is certainly aware that the jury returned an award of damages that was far less than that sought by Mattel. Moreover, the Court is aware that a controversy exists as to the actual amount of the jury's verdict. See Mattel's Submission Regarding Email from Juror No. 7 and Request to Recall the Jury, docket #4288 (denied by Order dated September 3, 2008, docket #4295).

MGA has argued that the jury has found that only the so-called "first generation" Bratz dolls were infringing. The jury made no express finding on this issue; the general verdict form they were provided did not request such a detailed finding. Thus, in accordance with Gates, the Court looks to the jury instructions to determine any implicit findings.

The jury was instructed that "Mattel is entitled to recover any profits attributed to the infringement." MGA attempts to equate the $10 million figure awarded by the jury for copyright infringement to the amount of profits related to the first generation Bratz dolls. The difficulty with this "equation" is that it is woefully unbalanced. To be sure, MGA's damages expert presented evidence that the first generation Bratz dolls netted approximately $4 million in profits; had the jury awarded this amount as copyright damages, then the Court might be persuaded that the jury implicitly found that the infringement was limited to the first generation Bratz dolls. But that is not the case. The factual finding advanced by MGA cannot be inferred from the jury award.

In making this ruling, the Court is mindful of the jury's note that queried whether they could find infringement as to the first generation dolls and no other dolls. The Court, without objection from counsel, answered that question affirmatively. Although this note reveals that the jury considered limiting their finding of infringement to the first generation, it does not reveal that they ultimately chose that conclusion. Again, had the jury awarded an amount equal to the amount of profits generated by the first generation Bratz dolls, the Court would find, based on the award and the jury's note, that the jury implicitly found infringement as to the first generation Bratz dolls only.

Alternatively, counsel posited at oral argument, that the jury found that a large portion of the

MINUTES FORM 90
CIVIL -- GEN

9

Initials of Deputy Clerk: jh

EXHIBIT  /3
PAGE  259

Bratz dolls infringed Mattel's copyrights, but only in very minute ways.[5] Counsel likened the jury's damage award to a rug that, no matter which way one moved it, simply would not cover the floor. See Nov. 10, 2008, Tr. at 100-101. Counsel explained that the jury's findings led to one conclusion or the other and, regardless of which conclusion was chosen, the jury's finding did not support an injunction:

> The rug is too small for an injunction, regardless of how you allocate
> that money. You either come up with a vanishingly small subset of
> infringing products, or you come up with a vanishingly small percentage
> of infringement by all of the products. And the jury has put that cap for
> us.

Id. Although colorful, counsel's metaphor is not helpful. Assuming that the Court would be bound by a jury's factual finding in a case where only two possible inferences -- both of which would lead the Court to the same conclusion -- were possible, this is not that case.

Where a jury returns a monetary award based on a particular piece of evidence such as an expert report, the Court will infer the factual findings that necessarily flow from it. But where, as here, the Court and the parties are left to hazard various guesses as to the jury's intentions, the Court can make no principled inferences and must therefore engage in its own fact-finding.[6]

The Court has carefully examined each of the exhibits attached to the proposed preliminary injunction, as well as the actual exhibits being stored in Courtroom Four of the U.S. Courthouse in Riverside, and finds that the dolls depicted in Exs. 3 and 4, and the products depicted in Exs. 5 and 6, are, pursuant to the standard set forth in the Court's Orders dated July 24, 2008, and August 15, 2008, substantially similar to Mattel's registered copyrighted drawings and are embodiments of the sculpts depicted in Exs. 1 and 2. In doing so, the Court has first examined the specific expressive elements of the works at issue and has compared them to those found in the exhibits referenced

---

[5] This argument was not raised in the opposition papers filed by the MGA parties, and is rejected for that reason as well. See Opp. at 21 ("Here, the circumstances clearly show that the only reasonable conclusion to draw is that the jury's infringement finding was limited to a small universe of products, specifically the first generation Bratz dolls as clothed and packaged.") (emphasis added).

[6] The MGA parties hazard such a guess in their opposition, wherein they attempt to explain how, in the jury's mind, $4 million in first-generation profits could equate to $10 million total copyright infringement award: "The jury's decision to award $6 million against MGA[E] (and $10 million total) rather than simply the $4 million] argued by MGA as profits for the first generation may be due to the jury believing that MGA's proffer of $4 million in profits on nearly $80 million revenue was a bit low." Opp. at 21 n.30. This guessing game illustrates why no factual findings can be inferred from the jury's copyright infringement award and why the Court is obligated to make its own factual findings.

MINUTES FORM 90
CIVIL -- GEN

10

Initials of Deputy Clerk: jh

EXHIBIT _13_
PAGE _____ 260

Case 2:04-cv-09049-DOC-RNB Document 6988-14 Filed 10/20/09 Page 37 of 43 Page ID
#:236899
Case 2:04-cv-09049-SG∟-RNB Document 4439 Filed 1∟_3/2008 Page 11 of 17

above, and the Court has then further examined the overall similarity of the expression in various
works from the perspective of the ordinary observer. Although the Court recognizes that there are
differences between the works, the Court ultimately finds that those dolls and products set forth in
the above-referenced exhibits are **substantially similar** to Mattel's registered copyrighted
drawings and are embodiments of the sculpts depicted in Exs. 1 and 2. Especially important to the
Court's conclusion is the consistency of the particularized expression of the dolls' heads, lips, eyes,
eyebrows, eye features, noses, as well as the particularized expression of certain anatomical
features relative to others (most notably the doll lips, doll eyes, doll eyebrows, and certain other
doll eye features) and de-emphasis of certain anatomical features (most notably the minimalized
doll nose and thin, small doll bodies). Also important to the Court is the particularized, synergistic
compilation and expression of the human form and anatomy that quite clearly expresses a unique
style and conveys a distinct look or attitude, especially as perceived by the intended consumer
market (7-12 year old girls). The evidence on this latter point is particularly compelling, supported
by both analytical and market analysis. Together, these features clearly give each of the dolls the
particularized expression to which the Court referred in its July 24, 2008, and August 15, 2008,
Orders.

## B. Standard for Awarding Permanent Injunctive Relief

The Supreme Court recently announced the standard for granting a permanent injunction:

> According to well-established principles of equity, a plaintiff
> seeking a permanent injunction must satisfy a four-factor test before a
> court may grant such relief. A plaintiff must demonstrate: (1) that it has
> suffered an irreparable injury; (2) that remedies available at law, such
> as monetary damages, are inadequate to compensate for that injury; (3)
> that, considering the balance of hardships between the plaintiff and
> defendant, a remedy in equity is warranted; and (4) that the public
> interest would not be disserved by a permanent injunction.

eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006).

### 1. Irreparable Injury

The Court begins, then, by looking to whether Mattel has established that it will suffer
irreparable injury if an injunction is not granted.

Prior to the eBay decision, where a plaintiff sought a preliminary injunction, irreparable injury
was presumed in intellectual property cases; in light of the eBay decision, some doubt has been
cast on whether courts should continue to apply that presumption. See Broadcom Corp. v.
Qualcomm Inc., 543 F.3d 683, 702 (Fed. Cir. 2008) (noting that the continuing viability of the
presumption is "an open question").

Mattel has established its exclusive rights to the Bratz drawings, and the Court has found

MINUTES FORM 90
CIVIL -- GEN

11

Initials of Deputy Clerk: jh

EXHIBIT __/3__
PAGE _____ **261**

Case 2:04-cv-09049-DOC-RNB  Document 6988-14  Filed 10/20/09  Page 38 of 43  Page ID
#:236900
Case 2:04-cv-09049-SGL-RNB  Document 4439  Filed 1/3/2008  Page 12 of 17

that hundreds of the MGA parties' products -- including all the currently available core female
fashion dolls Mattel was able to locate in the marketplace -- infringe those rights. The MGA parties
have evinced an intention to continue marketing those dolls. This represents a wholesale inability
on the part of Mattel to enforce its exclusive rights under the Copyright Act, amounting to
irreparable harm.  Taylor Corp. v. Four Seasons Greetings, LLC, 403 F.3d 958, 968 (8th Cir.
2005).

        MGA criticizes Mattel's reliance on Taylor, citing Metro-Goldwyn-Mayer Studios, Inc. v.
Grokster, Ltd., 518 F.Supp.2d 1197, 1211 n.13 (C.D. Cal. 2007) (Wilson, J.). The Grokster case
holds that, in copyright permanent injunction cases, a presumption of irreparable injury is not
permitted in light of eBay. In Grokster, the court rejected the rationale of Taylor, stating:

                [T]his Court is not persuaded by the Eighth Circuit's pre-eBay
                conclusion in Taylor Corp. v. Four Seasons Greetings, LLC, 403 F.3d
                958, 968 (8th Cir. 2005), that because "[a plaintiff] certainly has the right
                to control the use of its copyrighted materials, . . . irreparable harm
                inescapably flows from the denial of that right." In substance, such
                language is nothing more than a disguised presumption, particularly
                with the use of the word "inescapably." After eBay, Plaintiffs cannot rely
                on the pure fact of infringement in order to establish irreparable harm.

Grokster, 518 F. Supp.2d at 1211 n.13. Judge Wilson's point is well-taken. Although the Taylor
court did not purport to apply a presumption of irreparable harm, its use of the word "inescapably"
in this phrase certainly could indicate that it was merely presuming irreparable harm. However, a
review of the Taylor case makes clear that the Eighth Circuit considered the implications of
allowing an infringer to continue to infringe: "[I]n copyright infringement actions, the denial of a
request for injunctive relief could otherwise "amount to a forced license to use the creative work of
another." Taylor Corp., 403 F.3d at 967-68. This rationale removes Taylor further from the
application of a "disguised presumption" of irreparable harm and closer to an actual finding of
irreparable harm.

        At least one district court within the Ninth Circuit is in accord with the Court's decision today,
as it has decided, post-eBay, that a plaintiff who establishes past infringement and the threat of
future infringement amounts to irreparable harm. Designer Skin, LLC v. S & L Vitamins, Inc., 2008
WL 4174882 at *5 (D. Ariz. 2008) (Teilborg, J.). Judge Teilborg's rationale is well articulated:

                Whatever else might be said against the propriety of a rule that holds
                that past infringement plus the threat of future infringement equals
                irreparable harm, it seems clear to this Court that such a rule would not
                run afoul of eBay's directives. First of all, the eBay Court did not
                address the showing necessary to establish "irreparable harm." It
                merely held that the plaintiff has the burden of proving it. Second, this
                two-part test does not resurrect the presumption of irreparable harm
                impliedly laid to rest by the eBay court. It simply recognizes that a

MINUTES FORM 90                                                          Initials of Deputy Clerk: jh
CIVIL -- GEN                                    12

EXHIBIT _____13_____
PAGE _____262_____

Case 2:04-cv-09049-DOC-RNB   Document 6988-14   Filed 10/20/09   Page 39 of 43   Page ID
#:236901
Case 2:04-cv-09049-SGL-RNB     Document 4439      Filed 12/3/2008     Page 13 of 17

> plaintiff meets the burden of proving irreparable harm by making this
> two-part showing. And finally, the two-part test does not represent a
> rule [prohibited by eBay] that an injunction automatically follows a
> determination that a copyright has been infringed. . . . In exercising
> their equitable discretion, courts would still have the freedom to deny
> injunctive relief when the public interest or the balance of hardships
> weighs against such relief.

Designer Skin, 2008 WL 4174882 at *5 (citation omitted).

Indeed, this is not so complex an issue as applied to the facts of this particular case. The statutory directive to the Court is clear: "Any court having jurisdiction of a civil action arising under this title may, . . . grant temporary and final injunctions on such terms as it may deem reasonable **to prevent or restrain infringement of a copyright**." 17 U.S.C. § 502 (emphasis added). The Court can envision no case more appropriate for a finding of irreparable harm. Here, as the record shows and as the jury found, an employee bound by contract and fiduciary duty to communicate to his employer (and keep confidential from all others) all copyrightable works he creates during the term of his employment, not only fails to so communicate but actually secretly purports to convey the rights thereto to a direct competitor of his employer. The rights to those works are actively concealed from their true owner (by both the employee and the competitor) for years while the competitor exploits the works, reaping profits therefrom totaling hundreds of millions of dollars. After millions of pages of discovery are produced, thousands of filings are submitted, scores and scores of motions are decided by the Court, and after months of trial and two jury verdicts in favor of the plaintiff, defendants remain steadfast in their intention to continue to produce their infringing products. Viewed in this light, Mattel has established irreparable injury on the basis of the MGA parties' past infringement and the high probability of continued acts of infringement.

## 2. Inadequate Legal Remedies

Unless MGA is enjoined, Mattel would be forced to sue each retailer and distributor to stop the sale and distribution of the infringing dolls; therefore, the legal remedies are inadequate. See Continental Airlines, Inc. v. Intra Brokers, Inc., 24 F.3d 1099, 1105 (9th Cir. 1994).

## 3. Balance of Equities

Factually, the hardship on MGA weighs very heavily upon the Court. The Court has expressed its concerns in this regard on the record. The evidence at trial showed that, at least historically, Bratz is the brand that has made MGA profitable. And the proposed injunction addresses the core of that brand -- most notably, the female fashion dolls.

However, where, as here, the only hardship that will be suffered is lost profits from the cessation of its infringing activities, the Court, in the final analysis, must afford this very little -- if any -- weight. Triad Systems Corp. v. Southeastern Exp. Co., 64 F.3d 1330, 1338 (9th Cir. 1995) ("Where the only hardship that the defendant will suffer is lost profits from an activity which has

EXHIBIT    /3
PAGE       263

Case 2:04-cv-09049-DOC-RNB  Document 6988-14  Filed 10/20/09  Page 40 of 43  Page ID
#:236902
Case 2:04-cv-09049-SGL-RNB  Document 4439  Filed 1./3/2008  Page 14 of 17

been shown likely to be infringing, such an argument in defense merits little equitable consideration
. . . .") (internal quotation marks and citations omitted), accord, Cadence Design Systems, Inc. v.
Avant! Corp., 125 F.3d 824, 829-30 (9th Cir. 1997) (collecting cases). The balance of equities
favor Mattel.

### 4.    Public Interest

There is a strong economic interest, especially in these troubled economic times, in
maintaining a profitable enterprise as a going concern. However, there is also a strong public
interest in enforcing copyright laws in a uniform manner. Indeed, nothing is more essential to long-
term economic prosperity than the stability provided by the rule of law. Although the MGA parties
raise excellent points in their opposition, in the end, the public interest is served by precluding
defendants from engaging in copyright infringement. The injunction issued by the Court does no
more than that.

### C.    Scope of Injunction

The scope of the permanent injunction is set forth in a separate order. Four issues raised in
the parties' papers warrant the brief discussion that follows.

### 1.    Impoundment and Destruction

As set forth more fully in its motion, Mattel seeks impoundment of Bratz dolls and
destruction of the specialized plates, molds, and matrices used to make them. Impoundment of
existing infringing products and the destruction of the means to make those products are clearly
remedies contemplated by the Copyright Act. See 17 U.S.C. § 503(a). The MGA parties argue
that these remedies are inappropriate because there is no ongoing infringement or, at the very
least, its products infringe very little. In its findings supporting the issuance of a permanent
injunction, the Court has rejected this premise, and the Court finds that the requested
impoundment and destruction is an appropriate remedy.[7]

### 2.    Recall

In light of the scope of infringement found by the Court, and in light of the fact that the
injunction addresses products that directly compete with Mattel's products, the Court has ordered
the recall of infringing products from retailers. See CyberMedia, Inc. v. Symantec Corp., 19
F.Supp.2d 1070, 1079 (N.D. Cal.1998); Patry on Copyright, § 22:81.

---

[7] No party shall destroy any of the implements used to make the Bratz dolls that are the
subject of the permanent injunction absent a specific order of this Court authorizing such
destruction.

MINUTES FORM 90                                                    Initials of Deputy Clerk: jh
CIVIL -- GEN                                14

EXHIBIT ___13___
PAGE ___264___

Case 2:04-cv-09049-DOC-RNB  Document 6988-14  Filed 10/20/09  Page 41 of 43  Page ID
#:236903
Case 2:04-cv-09049-SGL-RNB    Document 4439    Filed 12/3/2008    Page 15 of 17

### 3.   Royalty

The MGA parties argue that the more appropriate remedy to be imposed here is for the Court to order a royalty instead of an injunction. The difficulty in this proposal is that it is premised on the idea that the ongoing infringement, if any, is minute. See Opp. at 29-32 (suggesting a royalty of .3% would be appropriate). As noted above, the Court has rejected this premise. Moreover, although the Court has been hopeful that an out-of-court resolution involving such a remedy may have been obtained, and has gone to great lengths to encourage both sides to pursue such a resolution in good faith, their failure so far to do so underscores the Court's present view, which is based on the evidence and argument of record, that the hostility between these parties is such that this form of remedy is unworkable.

### 4.   Appointment of a Special Master

Mattel suggests that the Court appoint a special master to "monitor implementation of the relief granted by the Court." Motion at 28. The MGA parties have not indicated their position on this issue. The appointment of a special master to monitor implementation of the permanent injunction is warranted; this task could easily overwhelm the Court's resources. Subject to the Court's consideration of any in camera objections submitted to the Court by the parties, the Court will select a Special Master from the list submitted below.

### V. Motion to Strike Portions of Hutnyan Declarations and Exhibits Thereto (docket #4351)

The MGA parties move to strike certain evidence offered by Mattel on the issue of harm suffered by Mattel, contending the evidence is inadmissible. This motion is **DENIED AS MOOT.** Although Mattel has offered additional evidence of harm, the Court has found the evidence of harm to Mattel offered during Phases 1A and 1B sufficient to resolve the issues presented in the current motions.

### VI. Motion to Strike the Proctor, Keiser, and Hollander Declarations (docket #4352)

The motion is **DENIED** as to the Proctor declaration. The declaration is a helpful presentation of appropriate argument and/or observations of counsel for the Court's consideration.

The motion is **DENIED** as to the Keiser declaration. The Keiser declaration authenticates two-dimensional depictions of three-dimensional models he scanned using a sophisticated scanning machine.

The motion is **DENIED** as to the Hollander declaration. This declaration was the subject of extensive briefing in MGA's motion in limine 8, which the Court has reviewed. Hollander's declaration, which presents survey evidence of the target market, is relevant to application of the

EXHIBIT __13__
PAGE ____265__

Case 2:04-cv-09049-DOC-RNB  Document 6988-14  Filed 10/20/09  Page 42 of 43  Page ID
#:236904
Case 2:04-cv-09049-SGL-RNB     Document 4439     Filed 12/3/2008     Page 16 of 17

intrinsic test. The Court, in fact, instructed the jury to consider how girls 7 to 12 would view the Bratz dolls. Hollander's survey attempts to determine just that. The Court has considered the methodological flaws pointed out by MGA in weighing the evidence Hollander presents.

## VII. Motion to Strike Meyer Declaration (docket #4377)

Mattel moves to strike the Meyer declaration. This motion is **DENIED AS MOOT.** This declaration sets forth a calculation justifying the proposed .3% royalty. The Court has rejected the proposal that a royalty be imposed.

## VIII. Stay of this Order

This Order, and the three concurrently filed orders, are stayed pending the Court's consideration of the parties' post-trial motions. This stay shall remain in place until lifted by further Order of this Court.

## IX. Briefing Schedule for Post-Trial Motions

Notwithstanding the Court's earlier order, the motions referred to in ¶ 3 of the Court's September 2, 2008, Order may be filed no later than December 22, 2008. Response briefs may be filed no later than January 12, 2009. Replies may be filed no later than January 19, 2009. A hearing on this matter is set for Wednesday, February 11, 2009, at 10:00 a.m., in Courtroom One of the above-referenced Court.

## X. Discovery Master Proposals for Phase 2

The Court previously stated that it would submit for counsel's consideration the names of potential Discovery Masters for Phase 2 that possess both the resources to handle the scope of the anticipated discovery disputes as well as the personal confidence of this Court. The Discovery Master would serve pursuant to the same terms and conditions of the Phase 1 Discovery Master. In addition, as noted above, the Court also intends to appoint a Special Master to oversee implementation of the permanent injunction. The Court provides for counsels' consideration the following individuals who meet the Court's requirements, and have indicated to the Court a willingness and an ability to serve in one or both of these roles. Counsel are directed to file any objections to any or all of the proposed Masters on or before December 22, 2008. Any such objections are to be submitted *in camera* and under seal with the Court. After considering any objections, as well as any preferences expressed by the parties, the Court will make an appointment at the appropriate time.

MINUTES FORM 90
CIVIL -- GEN

16

Initials of Deputy Clerk: jh

EXHIBIT     /2
PAGE        266

Case 2:04-cv-09049-DOC-RNB   Document 6988-14   Filed 10/20/09   Page 43 of 43   Page ID
#:236905
Case 2:04-cv-09049-SGL-RNB      Document 4439      Filed 12/3/2008    Page 17 of 17

Patrick A. Fraioli, Jr.
Moldo Davidson et al LLP
2029 Century Park East, 21st Fl.
Los Angeles, CA 90067
310-551-3100
pfraioli@mdfslaw.com

Jan L. Handzlik
Howrey LLP
550 S. Hope Street, Suite 1100
Los Angeles, CA 90071
213-892-1802
handzlikj@howrey.com

Kendall H. MacVey
Best Best & Krieger LLP
P.O. Box 1028
Riverside, CA 92502-1028
951-686-1450

David G. Moore
Reid & Hellyer
P.O. Box 1300
Riverside, CA 92502
951-682-1771
dmoore@rhlaw.com

Robert C. O' Brien
Arent Fox LLP
555 W. 5th Street, 48th fl.
Los Angeles, CA 90013
213-629-7400
obrien.robert@arentfox.com

C. Michael Zweiback
Alston & Bird LLP
333 S. Hope Street, 16th Fl.
Los Angeles, CA 90071
213-576-1000
michael.zweiback@alston.com

## XI. Jointly Lodged Laptop Computer

The Court is in possession of a jointly lodged laptop computer used to access the Phases
1A and 1B trial transcripts maintained by the parties. The Court will retain possession of the laptop
computer until after its ruling on the motions referred to in section IX, above, and the parties are
directed to follow the procedure outlined in the Court's September 9, 2008, Order regarding the e-
filing of excerpts of transcripts cited in their anticipated motions.

## XII. Service of Permanent Injunction

The service of Mattel's proposed permanent injunction by the Clerk presents challenges
given the limited resources of the Court. The permanent injunction, for reasons explained by
Mattel on the record, attaches to it approximately 900 color copies. Accordingly, although the
Court directs the Clerk to serve on all parties a copy of the permanent injunction, the Court directs
Mattel, no later than ten days after the entry of this Order, to serve a copy of the permanent
injunction, together with the color exhibits, on all parties.

### IT IS SO ORDERED.

MINUTES FORM 90
CIVIL -- GEN

17

Initials of Deputy Clerk: jh

EXHIBIT __13__
PAGE __267__